# Exhibit 3

1          RIVERSIDE, CALIFORNIA; SEPTEMBER 8, 2016

2          BEFORE THE HONORABLE SHARON J. WATERS

3          THE COURT:  Huerta versus Monsanto.

4          MR. PLATT:  Good morning, Your Honor.  Steven Platt for

5     defendants appearing on Court Call.

6          MR. CALHOUN:  Good morning, Your Honor.  Martin Calhoun

7     for defendants on Court Call.

8          MR. LITZENBURG:  Curtis Hoke and Timothy Litzenburg for

9     the plaintiff appearing via Court Call.

10         THE COURT:  I believe it was plaintiff that requested

11    argument.

12         MR. LITZENBURG:  Yes, Your Honor.  And preliminarily,

13    if I may, my name is Tim Litzenburg.  And I had previously

14    applied for admission pro hac vice in this case.  I'm a bit

15    confused and perhaps I bungled the procedure there.  There

16    was -- the motion was previously set for a status conference in

17    July that was vacated.  I was not aware that anything was done

18    with the motion.  But in checking with the clerk yesterday, she

19    said that it appears to have been denied without prejudice.  I

20    was wondering if Your Honor could shed light on that and let me

21    know what I need to do to cure that.  And also if Your Honor

22    would indulge me in allowing me to speak on this today, the

23    subject.  If not, Mr. Hoke is ready to do so.

24         THE COURT:  So if you'll give me a moment, I can look

25    for my -- what my tentative was before.  I don't have it up

26    here.  It was set for hearing on July 7th, I believe.

27         MR. LITZENBURG:  Yes, Your Honor.

28         THE COURT:  Well, I don't know how helpful this is

1    going to be.  My tentative says "the motion fails to conform to

2    the following Rules of Court:  Rule 2.108, 2.109, 2.110, 9.40,

3    Subdivision C-1 and 6, and also does not contain a proper proof

4    of service."

5              MR. LITZENBURG:  I see.  Well, I apologize for all of

6    that, and we'll attempt to cure that immediately.  And, again, I

7    would -- I can represent that my admission is not opposed by the

8    defendants.  If you indulge me, allow me to address these

9    issues, I'm little bit more current on them than Curtis Hoke,

10   but, again, he's prepared to speak if not.

11             THE COURT:  Since those were all issues that I imagine

12   you will be able to correct, if the defense has no objection, I

13   will allow you to make the argument today.

14             Do you have any objections?

15             MR. CALHOUN:  This is Martin Calhoun for the

16   defendants.  Your Honor, we have no objection.

17             THE COURT:  All right.

18             MR. LITZENBURG:  Thank you, Your Honor.  And thank you,

19   Mr. Calhoun.

20             We are -- we read the tentative ruling, and I'll

21   address only very briefly the substance of the motion.  In a

22   sense, Your Honor, for one, the toothpaste is out of the tube,

23   so to speak.  This precise motion has been granted by at least

24   two federal judges, as I believe the defendant has pointed out.

25   But it is also been denied unequivocally by two state judges in

26   Missouri and in -- yesterday in the Philadelphia Court of Common

27   Pleas.

28             The fallout from that, as Your Honor is probably aware,

1    this is a litigation of national scope, and there are cases

2    pending all over the country, many of which are ours at the

3    Miller firm.  In terms of discovery, we are proceeding in a

4    pretty orderly fashion without a lot kerfuffle with defense

5    counsel.

6            But what the decisions shakeout to is we are already

7    getting discovery on the liability issues, the things that

8    Monsanto would ask Your Honor to preclude in this case.  And so

9    what a ruling granting bifurcation would amount to is sort of a

10   bit of a Chinese wall.  I'm not sure exactly how we go about it,

11   but we'll be getting paper discovery -- we already are -- and

12   proceeding on depositions in some of our cases on the general

13   liability subject that the defendant is asking the Court to

14   preclude for now.

15           I would also say that the -- the defendants argue that

16   this is going to be -- going to save everybody time and effort

17   and preserve judicial economy.  And I would argue, Your Honor,

18   this will do precisely the opposite.  What is, in fact, going to

19   happen is that we're going to take depositions this fall of key

20   employees of Monsanto, scientists, executives, spokespeople, and

21   if they are limited to the subject of general causation, which

22   they may well be, then we'll have a hearing, an expert hearing

23   to see if we can carry our burden there.  And then we'll have to

24   go back and take depositions of these folks again next year on

25   subjects that don't arguably have to do with purely causation

26   issues.

27           And I would say, Your Honor, that that is not a

28   possibility of duplicative work, but a mere certainty.  We put

1   this in our brief and I won't belabor it, but the fact that the

2   plaintiffs have to carry the burden of causation in this case is

3   no different than any other product liability case.  It's no

4   different than any personal injury case.  I would say, in fact,

5   here it's potentially stronger than a lot of toxic exposure

6   cases in that the World Health Organization has decreed this

7   agent to be probably human carcinogen.  In other words, it has

8   classified it as a chemical that can and does induce cancer in

9   humans.

10         I think, you know, no surprise here, I guess, for us.

11  But I think that we'll be able to pass expert challenges with

12  ease.  We have one on deck already.  There is a multitude of

13  published peer-reviewed epidemiology showing the link between

14  this chemical and non-Hodgkin's lymphoma.  And there are, of

15  course, many core decisions that are reliable methods for

16  experts to implement and reply upon in reaching general

17  causation opinions.

18         I certainly don't want that hearing to happen today or

19  tomorrow, but we'll be prepared and are confident we'll pass

20  into the second phase.  And then we'll be revisiting a lot of

21  discovery, so I'll rest on that.  But the -- this also has the

22  potential for a lot more discovery disputes before Your Honor, I

23  believe.

24         Because, you know, my opinion of what constitutes

25  general causation materials is most likely a lot more -- a lot

26  broader than what Monsanto's position will be.  E-mails among

27  executives of this company saying, Should we be worried about

28  this?  What do we do to counter this news?  I can envision

1    Monsanto saying that is liability discussion.  We're not going
2    to get into that.  And the latest position will be that they are
3    talking about how to handle whether or not this causes cancer.
4         So, you know, if we are bifurcated and can't touch
5    certain subjects now, I think there will be a lot of disputes
6    about what is in which circle of the Venn Diagram, so to speak,
7    Your Honor.
8         I'll rest on my argument on that and move on briefly to
9    the case management in full, and ask Your Honor to regardless of
10   how you rule on this motion, to set this case for trial and
11   schedule an order in accordance with the Court's normal case
12   management procedures and docket goals for complex personal
13   injury cases.
14        There's no reason that we couldn't be ready for trial,
15   even given bifurcation in this case, in the fall of 2017.  So I
16   ask Your Honor to set a trial regardless of bifurcation,
17   depending on your usual docket management procedures.  And
18   lastly, I would just say in this case, where bifurcation was
19   first granted in Northern District of California case, the
20   plaintiffs will be designating experts in January.  And Judge
21   Chaudhary there said he will be ruling on the *Daubert* issues in
22   May 2017, at which point we'll move into the next phase,
23   assuming we are successful.  That timeframe would certainly
24   allow a trial to occur in late 2017.  So, again, I would just
25   say that the scheduling should be done irrespective of the
26   Court's ultimate ruling on bifurcation.
27        And, again, thank you for letting me speak today.
28        THE COURT:  You're welcome.

1          Response?

2          MR. CALHOUN:   Martin Calhoun for defendants, Your

3    Honor.

4          Plaintiff counsel really has presented nothing new in

5    this oral argument that they hadn't already put into the briefs

6    that Your Honor considered before issuing your tentative ruling.

7    So there is really no good reason to change Your Honor's

8    tentative ruling.

9          Plaintiffs don't deny that general causation is a

10   dispositive issue that is central to all of their claims.   And

11   the only court that has ruled on the issue of whether glyphosate

12   is carcinogenic or not, as set forth in our papers, rejected

13   that -- those allegations as lacking reliable scientific

14   support.

15         So at a minimum one can say that the general causation

16   issue is hotly disputed between the parties, and so, therefore,

17   an early *Sargon* admissibility hearing could save substantial

18   time and expense in resolving this lawsuit.

19         Plaintiff's counsel's suggestion that there will be no

20   savings by doing it this way, Your Honor, just isn't correct.

21   In a normal case if we were proceeding with discovery on all

22   issues, there are several areas where discovery would be

23   occurring that would not be occurring if the first phase is

24   focused on general causation.

25         For example, the plaintiffs themselves, Brenda and

26   James Huerta, we don't see a need to take those depositions if

27   we proceed on general causation first.   There's also a major

28   disputed issue here about the alleged exposure.   These

1    plaintiffs, unlike many of the other plaintiffs who have filed

2    Roundup lawsuits, do not allege that they themselves applied

3    Roundup.  They allege, in essence, secondhand exposure due to

4    living on a sod farms where others allegedly applied Roundup.

5    And those others are allegedly the Superior Sod defendants.

6         So we envision a substantial amount of discovery, Your

7    Honor, on the issue of exposure or alleged exposure and what

8    product the plaintiff Brenda Huerta was exposed to.  All of that

9    would be put to one side if would started off, as Your Honor has

10   already recognized in your tentative ruling, with the issue of

11   general causation.

12        And so for all of those reasons, Your Honor, we think

13   you should stick with your tentative ruling.  You clearly have

14   the discretion and the authority to require that discovery

15   proceed in a phased manner.  And the authorities that we cited

16   support that.  Many of the arguments that plaintiff's counsel

17   has just made were also made in the *Giglio* ruling, to the *Giglio*

18   court before the *Giglio* ruling issued -- before the *Giglio*

19   ruling was issue by the Southern District of California, the

20   notion that there is no -- that there will be duplicative

21   discovery just is not accurate.

22        We have been proceeding with this law firm in terms of

23   other discovery in other cases.  We are not using the

24   bifurcation order in *Hardeman* and *Stevic* and *Giglio* to preclude

25   them from getting the documents of the initial agreed upon

26   document custodians.  We recently produced another large set of

27   documents.  We are now at over 2.5 million documents produced in

28   those other cases.  And those documents will be available, of

1    course, to plaintiffs in this case, as well.  And those are all

2    related to general causation.  And those are from document

3    custodians that have been agreed to between the parties,

4    including the Miller firm.

5         So there's plenty of discovery to be done, even in the

6    first phase, Your Honor.  And we think that for all the reasons

7    set forth in our papers that you should affirm or stick with

8    your tentative ruling.

9         I'll briefly address the case management issue that

10   plaintiff's counsel addressed.  We think their estimate of when

11   a trial should proceed is overly optimistic even with

12   bifurcation, or if not -- bifurcation is not ordered, a trial in

13   the fall of 2017 is too soon.

14        We think it makes more sense, Your Honor, to set

15   interim deadlines for the first phase that Your Honor has

16   ordered.  We've predicted in our papers that the first phase

17   could be completed with a *Sargon* admissibility hearing in about

18   ten months from the date that you issue your order.  That would

19   be in July of 2017.

20        Plaintiff's counsel referred to a May 2017 event in the

21   *Hardeman* and *Stevick* cases which are in the Northern District of

22   California.  And that would be a *Daubert* admissibility hearing

23   in May of 2017.  If we predict a July 2017 hearing before Your

24   Honor, then that would fall in line and occur relatively soon

25   after the *Hardeman Daubert* hearing and the *Giglio Daubert*

26   hearing that is currently scheduled for June 2017.

27        So we think that is -- those are the deadlines that

28   Your Honor should be focusing on at this point, and then a trial

1    date could be set later, if necessary, if plaintiffs satisfy

2    their general causation burden.

3           Unless Your Honor has any questions for me, that's all

4    I have at this time on this matter, Your Honor.

5           THE COURT:  Well, no.  I don't have any questions.  I

6    realize this is not a standard approach in every product

7    liability case, but certainly have had a flavor from both

8    plaintiff and defense papers on this issue that the expert

9    opinion testimony issue, the admissibility under *Sargon*,

10   *Daubert*, whichever case you want to reference, will be hotly

11   contested.

12          There's a chance that my ruling on that could be

13   dispositive, in which case the parties will have saved

14   themselves a lot of unnecessary discovery moving forward to a

15   general trial date.

16          On the other hand, if it ends up that plaintiff is

17   correct and those experts are permitted to testify, it doesn't

18   really set anyone back.  This is all discovery that has to be

19   done, in any event.  As far as the possibility of discovery

20   disputes, you know, would I be surprised if you had discovery

21   disputes?  Of course not.  I just remind you that before any

22   motions are filed, I would want you to have an informal

23   conference with the Court.  Perhaps we can resolve it informally

24   and avoid those motions.  If I'm wrong on that and the motions

25   start getting out of hand, then we'll be having a different

26   discussion, and that is whether I need to appoint a discovery

27   referee.

28          In some ways I'm glad that other courts have ruled

1  differently and that plaintiff is able to move forward with

2  discovery that isn't limited to general causation.  And I would

3  hope that if plaintiff's experts are permitted to testify that

4  the party will be entering into some stipulations allowing for

5  discovery generated in other cases to be used here as is

6  appropriate.

7          The only thing I don't have an answer for is the

8  prospect that certain depositions might need to be taken twice,

9  the first time on general causation issues, subsequently on

10  other issues.  I think when you get to those witnesses, if

11  you -- if plaintiff sees that possibility, that you will

12  approach the defense and perhaps make an exception and allow the

13  witnesses not to be inconvenienced by having their deposition

14  taken twice.  But, yes, there is that risk that certain

15  witnesses will be inconvenienced by a second deposition.  That

16  is the only issue that gave the Court any pause.  And when I

17  factor that in with all the potential benefits, I remain of the

18  view that scheduling and bifurcating general causation discovery

19  has a lot of potential benefit.  So we'll stay with that.

20          I do want to set a date for filing the motion.  I don't

21  want to just have status conferences, although we can talk about

22  the need for that.

23          And I don't recall plaintiff's thought.  Do you think

24  ten months to do this discovery and have the motion filed is too

25  far out?  Is it dramatically different than what the other

26  judges are doing in the federal courts?

27          MR. LITZENBURG:  It is, Your Honor.  Judge Chaudhary

28  who initiated the first ruling re verification, did it in two

1  cases and some courts have followed suit.  He had the plaintiff

2  designating experts, I understand, in January of 2017 on this

3  subject.  And I believe the motion challenging plaintiff's

4  expert would be due in March, and then the hearing in May.

5        And as long as the Court is persuaded to bifurcate the

6  case, I would argue that it would probably be wasteful to stray

7  from that timeline or something extremely similar, because then

8  we don't -- if it truly is general causation, then it has

9  nothing to do with the individual plaintiffs.  So we're going to

10  have expert depositions certainly occurring in February of 2017.

11  We are going to have our experts testifying in this federal

12  court in May of 2017.  And I would suggest that we do this all

13  in the same timeframe so that the expert depositions could be

14  cross noticed and not duplicative, et cetera.

15        THE COURT:  When did that judge make that order?

16        MR. LITZENBURG:  I will have to pull it up.  I believe

17  it was in June of this year.  Let me see if I can find the

18  precise date.

19        MR. CALHOUN:  Your Honor, this is Martin Calhoun for

20  defendant.  If I may make one suggestion, we have worked with

21  the Miller Firm cooperatively, and now that Your Honor has

22  reaffirmed your tentative ruling, it might be appropriate, if

23  Your Honor is okay with it, to give us the chance to confer with

24  plaintiff's counsel with the hope of submitting a proposed

25  agreed upon order for the interim date leading up to and

26  including an admissibility *Sargon* hearing before Your Honor.

27  I'm reasonably confident that we could work something out with

28  Mr. Litzenburg on that front, if Your Honor would allow us to do

1    so.

2              THE COURT:  I don't have any objection to that.  What

3    is plaintiff's thoughts.

4              MR. LITZENBURG:  I think that will be fine, Your Honor.

5    I'll give you a heads up.  You know, there is a slight

6    possibility we won't agree and we'll be submitting dueling ones

7    with the same arguments.  But I'm certainly happy to meet with

8    defense counsel.

9              I would only add to our discussions again with that,

10   the Court should go ahead and set a trial date.  It can

11   certainly be vacated if we're thrown out of court on the

12   science.  But in terms of we're causing prejudice to the parties

13   and trying to avoid the maximum prejudice, and I think Your

14   Honor is attempting to do that with your ruling.  But if a trial

15   date is not even considered to be set until these hurdles are

16   past, I think it's extraordinarily prejudicial to these clients.

17   We're having clients with cancer reoccurrences every day.  So I

18   would just ask that the Court set this on a normal track.

19             THE COURT:  Well, a normal track for a complex case is

20   closer to a three-year time period, but that's usually at the

21   request of the parties.  You're asking for a trial date which

22   would make it about 23 months from date of filing.  I don't know

23   when the defendants appeared in the case.

24             If you are concerned about getting a trial date, that

25   should be the least of your concerns.  I can accommodate just

26   about any trial date.  I can give you a trial date, but I tend

27   to say once it's set, it can only be continued with good cause.

28   And I'm not sure even with all your ongoings in other cases that

```
 1   you necessarily -- and by "you" I mean collectively all the
 2   parties -- have a clear understanding if I deny the defense
 3   motions, what discovery would remain to be done, and how much
 4   time that we'll need.
 5          So I think the first thing we need to do is get the
 6   date set for this motion.  And from there, you each can be
 7   thinking about what -- you know, the worst case scenario for
 8   defense that I deny their motion, and now the case is proceeding
 9   to trial, what is going to remain to be done, how many
10   additional depositions need to be taken, what additional written
11   discovery needs to be done, and contemplate all those, as well
12   as additional expert depositions.  And from that you'll be able
13   to determine whether you can really get ready for trial in
14   November.
15          So what I would like to do is kick the CMC over about
16   20 days.  I don't want to put this issue out too far.  Direct
17   you to meet and confer on the discovery timeline for the general
18   causation.  Hopefully, you will agree on a recommended date for
19   the motion.  If not, I'm used to reading two different parties'
20   views.  That's not a problem if that's what ends up happening.
21          If you want to continue your discussion and, again,
22   assume that the case is going to move forward after that motion
23   is heard and ruled on and discuss, as well, what additional
24   discovery you're going to need to do, and then come in with a
25   proposed trial date, I'm absolutely fine with that.  I have no
26   desire to make people come back multiple times to do nothing
27   except continue hearings.  So whatever you're able to accomplish
28   in the next 20 days will be great.
```

1          So the CMC will be put over to 9/28 at 8:30.  And as

2   far as any pro hoc vice, I expect you'll get that resolved.

3          MR. CALHOUN:  Martin Calhoun.  Your Honor, I

4   unfortunately already have a CMC scheduled in San Francisco in

5   the other California state court Roundup case for the morning of

6   the 28th.  I expect -- and that is a required in-person

7   attendance for me.  Is it possible to set the CMC before Your

8   Honor on another date?

9          THE COURT:  Yes.  I do them five days a week, so it's

10  not a problem with me.

11         Now that you raised that you have a California case,

12  are there any thoughts or discussions about coordination of the

13  two California state actions or however many California actions

14  you have?

15         MR. CALHOUN:  There's only that one other case, Your

16  Honor, and it also involves Mr. Litzenburg's firm.  So we have

17  certainly been in contact with them about these issues, and

18  there's a same motion pending before the San Francisco Superior

19  Court judge regarding bifurcation.  So we expect that we'll have

20  a ruling in that case on or about September 28.

21         THE COURT:  Okay.  So if you want to do it the 29th?

22  Does that work for everybody?

23         MR. CALHOUN:  I'm just trying to think, Your Honor, how

24  quickly I will be back.  I guess are you contemplating the

25  morning or afternoon of the 29th?

26         THE COURT:  Typically we calendar matters at 8:30.

27         MR. LITZENBURG:  Your Honor, this is plaintiff's

28  counsel.  The 29th is the hearing by the JPML on whether to

1   consolidate these cases, not this case obviously, but most of

2   the rest of them, into to an M.D.L.  And I and several members

3   of our firm plan to be in Washington to argue that motion.  It's

4   closely related to this case.  I'd ask for a different date.

5          THE COURT:  As you should.  That's an important

6   hearing.  I agree.  So now we are going to try September 30 at

7   9:30.

8          MR. LITZENBURG:  That should work.

9          MR. CALHOUN:  That works for us, Your Honor.  Martin

10  Calhoun.

11         THE COURT:  All right.  Notice waived?

12         MR. CALHOUN:  Yes, Your Honor, from the defendants.

13  Notice waived.

14         THE COURT:  Plaintiff?

15         MR. LITZENBURG:  Notice waived for plaintiffs, as well.

16         THE COURT:  All right.  Thank you all.

17         UNIDENTIFIED SPEAKER:  One last question, Your Honor.

18  Do you have any preference as to how soon in advance of that

19  case management conference we get our joint submission in to

20  Your Honor?

21         THE COURT:  If you're going to submit them through the

22  clerk's office -- thank you for asking -- it will be five

23  calendar days.  So it would need to be in by Monday.

24         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

25         THE COURT:  Thank you.

26         UNIDENTIFIED SPEAKER:  Thank you.

27         UNIDENTIFIED SPEAKER:  Thank you.

28         (Proceedings concluded.)

```
 1            SUPERIOR COURT - STATE OF CALIFORNIA

 2                    COUNTY OF RIVERSIDE

 3

 4

 5
    BRENDA HUERTA AND JAMES HUERTA,      )
 6                                       )
                        Plaintiffs,      )
 7                                       )
             Vs.                         )  Case No. RIC1600639
 8                                       )
    MONSANTO COMPANY; et al.,            )
 9                                       )
                        Defendants.      )
10    _____   )

11

12        I, KAREN L. BURKS, Certified Shorthand Reporter, No. 7703,

13   do hereby certify:

14        That on September 8, 2016, in the county of Riverside,

15   state of California, I took in stenotype a true and correct

16   report of the testimony given and proceedings had in the

17   above-entitled case, Pages 1 through 15, and that the foregoing

18   is a true and accurate transcription of my stenotype notes,

19   taken as aforesaid, and is the whole thereof.

20

21

22   DATED:  Riverside, California, September 14, 2016

23

24                     /s/ Karen L. Burks
                       _____
                       KAREN L. BURKS, CSR No. 7703
```