

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado and California*
Aimee.Wagstaff@AndrusWagstaff.com

7171 W. Alaska Drive
Lakewood, CO 80226
Office: (303) 376-6360
Fax: (303) 376-63614
Website: www.AndrusWagstaff.com

October 24, 2016

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court, Northern District of California

> RE: <u>*Edwin Hardeman v. Monsanto Company*</u>, *et. al* - Case No: 3:16-cv-00525-VC

To the Honorable Vince Chhabria,

The Parties have reached an impasse with respect to a discovery dispute, and this joint letter is filed pursuant to paragraph 15 of the Court's Standing Order for Civil Cases Before Judge Vince Chhabria.

**Meet and Confer:** Undersigned counsel sent to Monsanto attorneys Joe Hollingsworth and Rosemary Stewart Plaintiff's position, below, on October 16, 2016 and requested a response by Friday, October 21, 2016. That Friday morning, undersigned received an e-mail stating that, "[w]e decline to join your proposed Discovery Dispute Letter with respect to 11 more Monsanto employee custodians." The e-mail continued for two additional paragraphs. Undersigned counsel sent three separate follow up e-mails to Mr. Hollingsworth and Ms. Stewart indicating a desire to file this dispute letter last Friday, October 21, and requesting direction on whether to 'cut and paste' the entire 2 paragraph e-mail as Monsanto's position or instead just indicate that Monsanto declines to join the letter. Undersigned has received no response to any of the three e-mails. After waiting three days for a response, Plaintiff believes it time to file this dispute letter.

**Plaintiff's Position**

Monsanto refuses to produce custodial files for eleven individuals, each of whom possess unique information critical to whether exposure to Roundup® causes cancer, Monsanto's knowledge of that causal link, communications Monsanto made on the issue, and the relevant science[1]. Monsanto's refusal to produce the custodial files is unnecessarily delaying discovery, this Court's current expert disclosure order, and is premised on two arguments; that the requests are untimely and that the requested custodial files are not necessary. *See* Supplemental Case Management Statement, ECF No. 81 at 6. The 'untimely objection' is now moot given the consolidation of the Hardeman case into MDL No. 3:16-md-2741 VC. The 'unnecessary objection' is wrong as the identified custodians have relevant and unique discoverable materials

---

[1] This request was made pursuant to the Court's June 16, 2016 Order that allowed discovery "about whether Monsanto's product can cause non-Hodgkin's lymphoma, about Monsanto's knowledge on the issue, about any communications Monsanto has made on the issue, and about any scientific studies in which Monsanto may have been involved." ECF 66.

that are specifically allowed by this Court's June 16, 2016 Order, the federal rules of civil procedure, and due process. The relevant facts are as follows:

1. Roundup® has been on the market since the 1970s. The organizational charts produced by Monsanto invite more questions than answers with respect to custodial files as they identify hundreds of Monsanto employees involved with the manufacture and sale of Roundup®, and the organizational structure appears to change often over time.

2. Monsanto served Initial Disclosures on May 17, 2016 and identified only four persons – all current employees. Later, Monsanto identified a fifth custodian.

3. On June 16, 2016, this Court specifically denied Monsanto's request to limit its production to the 5 custodial files hand selected by Monsanto. ECF No. 66.

4. Two weeks later, on June 30, 2016, Monsanto made its first production in this matter that consisted of non-custodial, public documents *(i.e.* EPA documents).

5. On August 2, 2016, Monsanto made its first partial production of the 5 custodians that were hand selected by Monsanto. The production of those 5 custodial files was not complete until September 30, 2016.

6. Plaintiff Stevick, through his counsel and without consultation by Mr. Hardeman or his counsel, requested an additional 7 custodial files. Monsanto agreed to produce those custodial files and agreed to produce 5 more files as selected by Mr. Hardeman.

7. After having a reasonable amount of time to review the produced documents, and prior to the completion of the production of **any** custodial file, on September 16, 2016, Mr. Hardeman made his initial request for the production of 11 custodial files. These were the first custodial files requested by Mr. Hardeman. During a meet and confer, Monsanto offered a partial production of 3 custodians by a date past the production deadline. Plaintiff's counsel requested Monsanto's position in writing, which was never received. Mr. Hardeman made an official discovery request on October 1, 2016.

8. On October 13, 2016, Monsanto informed undersigned counsel that it does not intend to produce the 11 custodial files absent direction from the Court. As such, this matter is ripe for judicial assistance. Mindful of the Court's encouragement to keep discovery moving prior to the first MDL hearing, and Monsanto's representation of the laborious process to produce documents, it is appropriate and timely to raise these issues now.

### Custodial Files at Issue

1. **John Acquavella** was Monsanto's chief epidemiologist from 1989 to 2004. Over that period Dr. Acquavella analyzed and responded to the epidemiological studies showing an increased risk of non-Hodgkin's lymphoma caused by Roundup®. Epidemiology is critical to the general causation analysis. Additionally, Dr. Acquavella returned to work as a consultant for Monsanto in October of 2014 to help Monsanto respond to IARC's assessment of glyphosate.

2

Since that time, Dr. Acquavella transitioned to becoming an "independent" expert on Monsanto's Intertek panel that reviewed the work of IARC.

2. **Katherine Carr** has worked at Monsanto since 1982 in various roles. Her last 19 years at Monsanto were spent as an Environmental Assessment Specialist and then Senior Environment Assessment Specialist. As part of her job, she prepared detailed environmental fate, environmental exposure, human exposure, and ecological risk assessment reports to address registration of Roundup®. The environmental fate and human exposure of Roundup® is relevant to general causation.

3. **Eric Haupfear** has been the director of "Process Technology" and "Process Chemistry" at Monsanto since at least 1997. Process technology involves the production of consumer goods from raw material and is vitally important to demonstrating a feasible alternative design as required by some states. Furthermore, the production of glyphosate and surfactants produce byproducts such as formaldehyde and 1,4 dioxane, which are known carcinogens. Access to documents that may reveal the presence of these additional carcinogens in Roundup® is relevant to general causation.

4. **Joel Kronenberg** is a senior scientist and toxicologist. As part of the Food & Chemical Toxicology team, his principle charge is to maintain and enhance worldwide glyphosate business. He holds meetings with the EPA to discuss toxicology profiles; counters allegations that glyphosate is unsafe; meets with outside experts to develop a network of paid consultants to address future issues with glyphosate and surfactants, and has initiated dozens of studies to support glyphosate reregistration. Dr. Kronenberg has worked at Monsanto since at least 2004.

5. **Michael Koch** is a toxicologist, pharmacologist and "new technologies in toxicology lead" who has worked at Monsanto from 2010-present. Michael Koch is currently the vice-chair of the toxicology forum responsible for addressing toxicological issues arising in the safety assessments of Monsanto's products, including Roundup®. He also plays a key role in Monsanto's attempts to counter IARC's safety assessment of glyphosate.

6. **Eric Sachs** is the Science, Technology & Outreach Lead at Monsanto. He has worked at Monsanto for 38 years. His job involves shaping public opinion about Roundup® and IARC, through reaching out to scientists to influence policy makers, opinion leaders and the public. The documents produced so far indicate that he is heavily involved in attempts to manipulate the scientific literature.

7. **Xavier Belvaux** is currently a Regulatory Affairs Lead at Monsanto Europe and has worked at Monsanto from 1992-present. The documents produced thus far demonstrate that research, investigation and suppression of information about the carcinogenicity of Roundup® was occurring both independently in Europe and in connection with U.S. employees. Monsanto also touts the assessments by European regulatory agencies as evidence in favor of the non-carcinogenicity of Roundup®. Additionally, to the extent that Monsanto intends to rely on EFSA, plaintiffs are entitled to view the custodial files of employees' interactions with EFSA.

8. **Richard Garnett** is the Crop Protection Regulatory Affairs Lead for Monsanto Europe from at least 2003 – present. Additionally, he leads the Glyphosate task force in Europe which is a consortium of European companies which manufacture glyphosate and is charged with re-registering glyphosate in Europe through the manufacture of data and through interactions with regulatory authorities.

9. **Christophe Gustin,** has been the Europe, Middle East and Africa (EMEA) crop protection regulatory affairs lead in Europe since 2005. In his current role he is responsible for regulatory affairs related to glyphosate and the Ag-chem formulations. In this role he is

3

responsible for implementing the regulatory aspects of the glyphosate business strategy. In addition, he is responsible for the European re-registration of glyphosate, which is effectuated within a taskforce of currently 25 companies. He is the coordinator of the technical and regulatory activities within this taskforce. From 2000 – 2005, Dr. Gustin worked in St. Louis where he was responsible for Monsanto's exposure and environmental risk assessments.

10. **Manda Sansom** is a technology Development Lead for Monsanto in Ireland and the UK from 1998 to December 2013. Dr. Sansom played a central role in responding to issues raised by European governments related to the safety and toxicity of glyphosate and glyphosate formulations.

11. **Steven Levine** is Monsanto's global lead for ecotoxicology and environmental risk assessment. He has worked for Monsanto since approximately 2000, nearly exclusively in the field of ecotoxicology. Dr. Levine is instrumental in Monsanto's study design and data analysis. Dr. Levine is also involved in Monsanto's external product safety outreach efforts and is a member of Crop Life America's Endocrine disruption Working Group.

## Conclusion

The documents produced thus far demonstrate Monsanto's early knowledge, its lack and/or manipulation of Roundup® testing, and its engagement in scientific misinformation. Upon best information and belief, Monsanto Europe is under the umbrella of the Monsanto worldwide headquarters in St. Louis. Indeed, Monsanto Europe routinely shared information with Monsanto St. Louis, and it was expected to do so. Each one of the requested custodians was carefully selected after reviewing the first batch of documents Monsanto produced, and each one is directly relevant to whether Roundup® causes non-Hodgkin's lymphoma, Monsanto's knowledge on the issue, communications Monsanto has made on the issue, and any scientific studies in which Monsanto may have been involved. As such, Mr. Hardeman requests the Court order production of the same.

## Monsanto's Position

*See* Meet and Confer, above.

Dated: October 24, 2016         Respectfully submitted,

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff, Esq.
ANDRUS WAGSTAFF, PC
7171 W. Alaska Dr.
Lakewood, CO 80226
Email: aimee.wagstaff@andruswagstaff.com