October 27, 2016

<u>Filed via ECF</u>

The Honorable Vince Chhabria
United States District Court, Northern District of California

      Re:    *Hardeman v. Monsanto Co.*, No. 3:16-cv-00525-VC

Dear Judge Chhabria:

      Defendant Monsanto Co. hereby files its Objections to the plaintiff's Discovery Letter Brief, filed on October 24, 2016 (ECF No. 85) ("Pl's Discovery Letter"). While Monsanto's counsel understands that the Court requires "discovery disputes" to be addressed in a short letter in which both parties express their views about the dispute, Monsanto submits that Mr. Hardeman's counsel has not identified a legitimate discovery dispute at all. Instead, plaintiff's counsel is attempting an improper end-run around this MDL Court's initial steps to coordinate discovery on behalf of all plaintiffs in the MDL.

      In Plaintiff's Discovery Letter, Mr. Hardeman's counsel asks that her law firm be allowed to select 11 Monsanto employee custodians before the MDL court even addresses the key question of how many custodians *the entire group of plaintiffs' counsel* should be permitted to select. Counsel claims that these are her "first" selections, Pl's Discovery Letter at 2, but such claim is belied by the June 2016 joint email to the Court from her firm and Mr. Stevick's counsel (MDL ECF No. 9-3), requesting production of the custodial files for seven (7) Monsanto employees, in addition to the five (5) employee custodians identified long ago by Monsanto – and in response to which Monsanto spent months collecting and producing voluminous records. In addition, in an application filed last week with this Court, Ms. Wagstaff said that she and other plaintiffs' counsel have been meeting and working together for a year on the development of many aspects of this litigation, including document review, which presumably entailed discussing possible document custodians. *See* Letter from Aimee Wagstaff Regarding Application for Appointment of Lead Counsel (MDL ECF No. 11) at 1. That Ms. Wagstaff herself now seeks 11 *additional* custodian requests beyond those made by her firm and other plaintiffs' counsel with whom she states she has had a close and "seamless" working relationship prior to creation of the MDL – in addition to any joint requests the MDL Court may later grant to all plaintiffs as a group – is an abuse of the MDL process.

      This is not a discovery dispute unique to the *Hardeman* case, but a ploy designed to obtain an advantage that is unfair to Monsanto as well as contrary to the goals of efficient

The Honorable Vince Chhabria
October 27, 2016
Page 2

coordination, the very reason for the MDL process.  As a result, Monsanto respectfully requests that the Court direct Plaintiff's Discovery Letter to be withdrawn.

### A. Background Facts

Just prior to Monsanto's last document production (now totaling well over 3.5 million pages) in the *Hardeman* and *Stevick* cases – which includes hundreds of thousands of pages of scientific and regulatory files from Monsanto's non-custodial corporate files and millions of pages of custodial files of 12 Monsanto employee custodians – Mr. Hardeman's counsel also requested that Monsanto collect and produce documents from 11 additional custodians.  This request was made without any explanation of these custodians' purported relevance to "general causation," which was the only question at issue in the *Hardeman* stage of discovery.  *See* Order Granting Mot. for Bifurcation, dated June 16, 2016 (ECF No. 66) ("plaintiffs may make any reasonable discovery request of Monsanto about whether Monsanto's product can cause non-Hodgkin's lymphoma . . . .").[1]  Indeed, some of the 11 individuals identified by Ms. Wagstaff have absolutely no relevant knowledge of the science or the testing of glyphosate-based herbicide ("GBH") products related to human health and safety.  As a result, Monsanto objected to this request, noting that the individuals were not appropriate document custodians and that Plaintiffs' counsel had waited until it was too late to collect, review, and produce documents from additional custodians before the then existing deadline of October 15 to produce custodial files.

The timing of Mr. Hardeman's counsel's request for the 11 additional custodians was particularly suspect because the same Plaintiff's counsel had already filed the initial motion seeking consolidation of the Roundup cases into an MDL.  And Plaintiff's October 24 Discovery Letter is equally suspect in attempting to gain an advantage before the commencement of the orderly processes of pretrial activities in the MDL, which is the first objection stated here.  Monsanto also objects on additional grounds, including that discovery from these 11 additional custodians is not likely to produce material relevant to the question of general causation.  In fact, any potentially relevant material is likely to be cumulative and/or duplicative, and the scant merit of such additional material is far outweighed by the expected burden of producing it.

### B. The Identification of and Discovery from Additional Custodians Should Be Determined in the Context of the MDL.

The MDL Court's Pretrial Order No. 1 contemplates the appointment of both a plaintiffs' liaison counsel and a plaintiffs' lead counsel "to coordinate and conduct pretrial activities."

---

[1] Although Plaintiff's Discovery Letter now attempts to explain the relevancy of each of the 11 requested custodians, the stated descriptions are plainly incorrect for several of the individuals.  Moreover, four of the individuals are not employed by the defendant Monsanto Company but by subsidiary corporations located in Europe.  Monsanto's counsel renews their offer made previously to Plaintiff's counsel to discuss the background and experience of additional individuals whom plaintiffs are considering as potential custodians *after* the MDL Court determines the appropriate number of custodians for all plaintiffs and *after* the Court determines which plaintiffs' counsel should be conducting such discussions.

The Honorable Vince Chhabria
October 27, 2016
Page 3

Pretrial Order No. 1 (MDL ECF No. 2) ¶¶ 6-7.  The question of how many additional document custodians *the entire group of plaintiffs' counsel* will be permitted to identify (if any) is exactly the kind of "pretrial activity" that will need to be coordinated in the larger context of the MDL and under the supervision of this Court.  Indeed, it is likely to be one of the key initial issues for this Court to resolve following the parties' submissions and the first MDL hearing on November 16.  It is not an issue that should be addressed now or solely in the context of the *Hardeman* case or solely with one of the many law firms representing plaintiffs in this MDL proceeding.  In its MDL Case Management Statement, filed on October 20, 2016, Monsanto proposed that the parties seek to negotiate reasonable limitations on written discovery and that plaintiffs *as a group* should be limited to selecting no more than 10 additional general causation document custodians. *See* Monsanto Co.'s Case Management Statement (MDL ECF No. 9) at 11, 13.  Yet Mr. Hardeman's counsel filed her October 24 Discovery Letter several days after Monsanto made this proposal to the MDL Court.

The MDL Court's October 6, 2016 Orders encouraged discovery in *Hardeman* and *Stevick* to continue "to the extent possible" and "[t]o the extent the parties conclude it is practical." *Hardeman*/*Stevick* Order Re Discovery Letter (MDL ECF No. 3); Pretrial Order No. 1, ¶ 11.  To that end, Monsanto has proceeded with other appropriate and practical discovery in *Hardeman* and *Stevick*.  For example, on October 15, after the date of the MDL Court's initial Pretrial Orders, and even though previous deadlines had been lifted, Monsanto made its last planned production for 12 employees' custodial files (comprising more than 300,000 pages of additional records), along with a privilege log.  Monsanto also will be responding to the October 12 interrogatories and document requests served in the *Hardeman* case because some of these requests address subjects already discussed and agreed upon earlier between the parties' counsel.  But what Mr. Hardeman's counsel now seeks is not the continuation of existing discovery efforts; nor is it a "practical" request to the defendant.  It is instead a massive expansion of the entire field of general causation discovery, in direct contradiction to the efficient and proportional discovery required by the federal rules.  Further, by issuing their request for 11 custodians *after seeking an MDL* – and filing their Discovery Letter *after the creation of the MDL* – Mr. Hardeman's counsel is attempting to short-circuit the very process she requested: coordination of discovery on behalf of all plaintiffs.

### C. Most of the 11 Additional Custodians Identified by Plaintiff Have No Meaningful or Unique Information with Respect to General Causation.

As cited above, this Court has previously limited discovery in the *Hardeman/Stevick* cases to "whether Monsanto's product can cause non-Hodgkin's lymphoma."  And the only relevant issue for such a general causation inquiry is what the science reveals.[2]  In this case, the

---

[2] *See* Order on J. Mot. for Determination of Disputes Related to the Scope of the Written Discovery Related to Gen. Causation at 2, *In Re: Incretin Mimetics Prods. Liab. Litig.*, No. 3:13-md-02452-AJB-MDD, Doc. 377 (S.D. Cal. Mar. 25, 2014) (agreeing "that general causation . . . is a matter of science, and therefore, scientific documents and/or scientific evidence frame the universe of contemplated discovery").

The Honorable Vince Chhabria
October 27, 2016
Page 4

science is increasingly clear.  For example, just last month, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the description] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment."[3]

Most of the individuals on Plaintiff's list of 11 additional custodians have no meaningful or unique information with respect to general causation, making them inappropriate custodians.[4] Monsanto will be prepared to address the relevancy of proposed custodians in detail at the MDL case management conference – or later with the plaintiffs' designated lead counsel – as the Court desires, but there are many general reasons why the 11 individuals identified by Ms. Wagstaff are inappropriate.  For example, most of the identified custodians have never been responsible for any kind of testing or analysis of the human health safety of glyphosate or GBH products (including Xavier Belvaux, Katherine Carr, Richard Garnett, Christophe Gustin, Eric Haupfear, and Manda Samson).  Not one of the 11 is a medical doctor or scientist who can address the possible cause of non-Hodgkin's lymphoma.  And three of the 11 (Messrs. Belvaux, Garnett, and Gustin) do regulatory (not science) work, relying on the same animal studies already produced to plaintiffs in this litigation – and about which Monsanto is voluntarily producing scientific witnesses to discuss.  Still others (*e.g.*, Michael Koch, Joel Kronenberg, and Eric Sachs) are clearly duplicative of (and less informed than) the "first five" Monsanto employee custodians whose files already have been produced to the plaintiffs and who already have been offered for deposition.

### D. Discovery of the 11 Additional Custodians Is Not Proportional to the Needs of the Case.

For the reasons discussed in the preceding section, Plaintiff has not and cannot meet his burden to establish "that the discovery sought is proportional to the needs of the case." *Gilead*

---

[3] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The OPP's report includes a study-by-study evaluation of each of the three bodies of scientific evidence for glyphosate – epidemiological studies, animal carcinogenicity studies, and genotoxicity studies, and concludes that "[t]he available data at this time do no[t] support a carcinogenic process for glyphosate." *Id.* at 140.  At the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC") in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[4] *See Allen v. Neighborhood Housing Servs. Silicon Valley*, No. 12-1656 PSG, 2012 WL 5954213, at *2 (N.D. Cal. Nov. 28, 2012) (denying motion to compel when plaintiff "cannot establish how the requested information is relevant" to the issues at hand).

The Honorable Vince Chhabria
October 27, 2016
Page 5

*Sciences, Inc. v. Merck & Co., Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016). And for similar reasons, Mr. Hardeman's request is "unreasonably cumulative or duplicative," and seeks information that "can be obtained from some other source that is more convenient" and for which "the burden or expense of the proposed discovery outweighs its likely benefit." *Allen*, 2012 WL 5954213, at *2.

Any relevant documents contained in the files of the 11 additional custodians proposed by Mr. Hardeman's counsel are likely to be duplicative and/or cumulative of the millions of pages Monsanto has already produced from its voluminous non-custodial files and the twelve custodians referenced above, making them inappropriate for compelled disclosure. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C); Fed. R. Civ. P. 34(b)(2)(E)(iii). Requiring Monsanto to engage in the lengthy, laborious, and expensive process of searching for, collecting, processing, reviewing, and producing these 11 custodial files would place an undue burden on the company. Based on Monsanto's experience with production in this litigation so far, the entire process to produce the 11 additional custodial files will consume about three months at an excessive cost.[5] Monsanto already has produced more than plaintiffs' experts could reasonably need to assess the science of whether glyphosate can actually cause non-Hodgkin's lymphoma – the only real question at this stage of the *Hardeman* litigation. Plaintiff's counsel's mere assertions that the 11 custodians possess "unique" and relevant documents are insufficient to justify the tremendous burden of producing these additional files.[6]

Additional considerations weigh against producing files of foreign custodians. As noted above, four of the 11 custodians identified by Plaintiff live and work in Europe, not in the United States. These individuals are employed not by the defendant Monsanto Company, but by subsidiary corporations established under the laws of Belgium and the United Kingdom.[7] Plaintiff has failed to establish that any of these four European custodians possess documents that are relevant to the claims of the plaintiffs in this litigation, who were allegedly exposed to GBH products in the United States.[8] Monsanto Company is based in St. Louis, Missouri, and, as

---

[5] This assumes no discovery from foreign countries, which may be restricted or delayed due to foreign data protection laws if such discovery is permitted. Plaintiff does not allege product exposure outside the United States so such discovery also is irrelevant and unduly burdensome, as discussed herein.

[6] *See Florer v. Johnson-Bales*, No. C06-5561 RJB/KLS, 2010 U.S. Dist. LEXIS 20934, at *16 (W.D. Wash. Feb. 16, 2010) (denying motion to compel production when "[t]he value of the requested documents in helping Plaintiff to prove his claim . . . is questionable" but "the request places considerable time and expense burdens on the Defendants").

[7] The four custodians are: Xavier Belvaux, Richard Garnett, and Christophe Gustin, who work for Monsanto Europe S.A., headquartered in Brussels, and Manda Sansom, a consultant who works for Monsanto UK Ltd. in England.

[8] *See In re Benicar (Olmesartan) Prods. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016 WL 5817262, at *6 (D.N.J. Oct. 4, 2016) ("the Court is skeptical that meaningful discovery regarding any alleged causal connection between defendant's [product] and plaintiffs' symptoms is singularly possessed by [the two German employees], or even Daiichi Europe"); *Bard*, 2016 WL 4943393, at *4 (finding discovery of

The Honorable Vince Chhabria
October 27, 2016
Page 6

described above, the relevant scientific and regulatory files are maintained in non-custodian-based collections in the United States. The potential for discovery of relevant, non-privileged, non-cumulative information in additional custodial files is very small, especially in comparison to the burden – in addition to the general burden of producing 11 additional custodial files – of searching for, collecting, reviewing, and producing four custodial files located in Europe.[9] Plaintiffs' broad-sweep requests – made without even the attempt to identify what specific, relevant, "unique" information each of these four custodians might possess – violate the mandate for proportionality in all pre-trial discovery.[10]

   E. Conclusion

For the reasons outlined above, Monsanto respectfully requests that the Court direct the *Hardeman* plaintiff's counsel to withdraw the October 24 Discovery Letter Brief because it is an inappropriate request in light of the commencement of the MDL for the Roundup litigation of which the *Hardeman* case is clearly a part.

Dated: October 27, 2016         Respectfully submitted,

                                /s/ Rosemary Stewart
                                Rosemary Stewart
                                HOLLINGSWORTH LLP
                                rstewart@hollingsworthllp.com

                                *Counsel to Defendant Monsanto Company*

---

foreign regulatory communications was "only marginally relevant" given that there were "no foreign-based Plaintiffs" and any possible relevance was "more hope than likelihood").

[9] Any disputes regarding whether defendant Monsanto Company has legal control of the requested records of Monsanto Europe S.A. or Monsanto UK Ltd. and, if so, whether European laws such as E.U. privacy laws nevertheless restrict production of those documents, are complex issues that this Court does not need to reach because Mr. Hardeman's counsel's request circumvents the MDL process and, in any event, the four European citizens at issue are not proper custodians.

[10] *See Benicar*, 2016 WL 5817262, at *6 (refusing to compel discovery of foreign affiliate employees and files when "it is likely the bulk of the relevant causation knowledge possessed" by the employees "has or could have been obtained" from prior discovery); *Bard*, 2016 WL 4943393, at *5 (holding defendant Bard "need not search the ESI of foreign Bard entities" because "the burden and expense" of the search "outweighs the benefit of the proposed discovery"); *see also Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 4137847, at *12 (S.D. W.Va. Jul, 8, 2015) (noting that "more focused discovery needed to be completed in North America before a final determination could be made about the need for the parties to collect documents housed overseas").