

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado and California*
Aimee.Wagstaff@AndrusWagstaff.com

7171 W. Alaska Drive
Lakewood, CO 80226
Office: (303) 376-6360
Fax: (303) 376-63614
Website: www.AndrusWagstaff.com

November 15, 2016

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court,
Northern District of California

      RE: Case No: 3:16-md-02741-VC, In re Roundup Products Liability Litigation

To the Honorable Vince Chhabria:

      Plaintiff filed his Discovery Dispute Letter No. 2 on October 24, 2016. Monsanto filed a 6-page Response on October 27, 2016. In their Response, Monsanto argues, among other things, that certain custodial files should not be produced because the custodians live outside of the United States. Below is Plaintiff's supplemental response with respect that issue. Plaintiff sent this Response to Monsanto on November 10, 2016. This letter is also filed pursuant to the Court's November 14, 2016 Order.

## Plaintiff's Position

      In support of its position for general causation phased discovery first, Monsanto touts regulatory decisions from numerous foreign entities including Canada, Germany, Australia, New Zealand, the European Food Safety Authority ("EFSA"), the World Health Organization ("WHO"), and the United Nations Food and Agricultural Organization ("FAO"). Despite claiming those foreign regulatory decisions prove Roundup® is safe, Monsanto now objects to the production of any discovery relating to the foreign custodial files that are in its possession, custody, or control. Defendant asserts that these documents are irrelevant and/or cumulative. Significantly, Monsanto has placed <u>*each custodian*</u> on a legal hold with respect to <u>*this United States litigation*</u>. Monsanto made the independent determination that each custodian has relevant information and also that Monsanto has sufficient control over each custodian to order a custodial legal hold on their files. Specifically, Monsanto refuses production of the following foreign custodial files[1]:

---

[1] Tellingly, based on the anticipated IARC announcement that related to general causation, Monsanto placed three of these individuals on a legal hold up to almost 5 months *prior* to the initial lawsuit being filed. Mr. Garnett was placed on legal hold on April 24, 2015; Mr. Gustin was placed on legal hold three weeks later on May 15, 2015; and Mr. Belvaux was placed on legal hold just before the first lawsuit was filed on September 22, 2015. The final foreign custodian at issue, Manda Sansom, was placed on legal hold on October 23, 2015.

1. **Xavier Belvaux** is the Regulatory Affairs Lead at Monsanto Europe and has worked at Monsanto from 1992 to present. The documents produced thus far demonstrate that research, investigation, and suppression of information about the carcinogenicity of Roundup® occurred in both Europe and in the United States. Monsanto relies on the European regulatory agencies' assessments to support its contention Roundup® has no carcinogenic properties. Additionally, to the extent that Monsanto intends to rely on EFSA, Plaintiffs are entitled to view the custodial files of Monsanto employees' interactions with EFSA.

2. **Richard Garnett** is the Crop Protection Regulatory Affairs Lead for Monsanto Europe from at least 2003 to present. Additionally, Mr. Garnett leads the Glyphosate Task Force in Europe, a consortium of European companies that manufacture glyphosate. The Task Force is charged with re-registering glyphosate in Europe through the manufacture of data and interactions with regulatory authorities.

3. **Christophe Gustin** has been Monsanto's Europe, Middle East, and Africa (EMEA) Crop Protection Regulatory Affairs Lead in Europe since 2005. Mr. Gustin is currently responsible for regulatory affairs related to glyphosate and the Ag-chem formulations. In this role, Mr. Gustin manages the implementation of the regulatory aspects of the glyphosate business strategy, including the European re-registration of glyphosate, which involves a task force of 25 companies. Mr. Gustin coordinates the technical and regulatory activities within this task force. From 2000 through 2005, Mr. Gustin worked in St. Louis where he was responsible for Monsanto's exposure and environmental risk assessments.

4. **Manda Sansom** was a Technology Development Lead for Monsanto in Ireland and the United Kingdom from 1998 through December, 2013. Ms. Sansom played a central role in responding to issues raised by European governments related to the safety and toxicity of glyphosate and glyphosate formulations.

In an attempt to resolve this issue prior to the Case Management Conference, and to preserve the Court's time and resources, Plaintiffs requested a meet and confer with Defendant on the issues set forth above. Indeed, we requested to confer on both October 27 and 28, 2016. Monsanto refused to engage in any discussion of these issues prior to the status conference on November 16, 2016, thus wasting three weeks. *See*, **Exhibit A**.

## Legal Analysis

Monsanto is urging the Court to stage discovery, yet it refuses production of relevant general causation documents. All documents within Monsanto's possession, custody, or control concerning the question of whether Roundup® is carcinogenic are discoverable and should be produced, regardless of their geographic location.

Plaintiffs seek only foreign documents within Monsanto's possession, custody, or control. Rule 34 provides that a party may serve a request for production of any documents relevant to the litigation "in the responding party's possession, custody or control." Fed. R. Civ. P. 34(a). Control is defined as "the legal right to obtain required documents on demand." *United States v. Int'l Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir.1989). There

is nothing in Rule 34 that, on its face, limits its application to documents found only in the United States. As stated in *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 12 (D.D.C. 2007), "[w]ith regard to the Federal Rules of Civil Procedure, the Court is aware of no rule which precludes discovery of ordinarily discoverable material, solely on the basis that it calls for information outside of the United States or involves facts or activities outside of the United States." The logic for avoiding such a limitation is evident here, where, as Monsanto has noted, "common document discovery in this litigation will be entirely electronic...." Monsanto Resp. to Mot. to Transfer at 16, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741 (J.P.M.L. Aug. 18, 016) ECF No. 33. Because each requested custodian is currently under a legal hold for this litigation, the files and ESI are necessarily within Monsanto's custody and control.

Monsanto is a worldwide corporation, and its relevant operations and communications are not limited to St. Louis or even the United States. Monsanto itself relies heavily on the decisions of foreign bodies and documents for its defense. *See* Def's Case Management Statement at 17, ECF No. 9 (Citing to findings from the EFSA, FAO, Health Canada Pest Management Regulatory Agency, the German Federal Institute of Risk Assessment, the Australian Pesticides and Veterinary Medicines Authority, the New Zealand Environmental Protection Authority, and the WHO); *Hardeman v. Monsanto Company*, ECF No. 48, No. 3:16-cv-00525-VC, at 12 (N.D. Cal. Mar. 1, 2016) (touting regulatory findings by EFSA, Canada, and the Germany to support the safety of Roundup®). As such, Plaintiffs have a right to access the full body of Monsanto's knowledge regardless of whether it is gained in the U.S. or abroad. By placing decisions relying upon foreign information before the Court at every conceivable opportunity, including its recently filed Case Management Statement, Monsanto cannot credibly argue that the information relied upon by foreign institutions is irrelevant or cumulative to the issue of general causation. Moreover, it is nonsensical for Monsanto to tout the findings of foreign regulatory agencies while simultaneously arguing that Plaintiffs should be precluded from accessing the data that forms the basis of these decisions. Because documents stored abroad are relevant and accessible to Monsanto, and because Monsanto has but this information at the forefront of the controversy, the production of these documents is critical to a fair adjudication of the issues before the court on general causation.

Monsanto has suggested that "foreign privacy laws *may* preclude or limit the production of records for this civil litigation"; however, Monsanto has not claimed that any foreign laws *actually* preclude the production of any records at issue. Even if foreign laws did pose some barrier to production, whether Monsanto may limit production is determined by the circumstances of this case. *See United States v. Vetco Inc*., 691 F.2d 1281, 1287 (9th Cir. 1981) (The determination depends "upon the circumstances of a given case." (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 78 S. Ct. 1087, 1092 (1958))); *see also United States v. Am. Optical Co*., 39 F.R.D. 580, 587 (N.D.Cal. 1966) ("[T]he fact that the production of documents may involve inconvenience and expense is not alone sufficient reason for refusing discovery which is otherwise appropriate."). Here, Plaintiffs' request is particularly compelling as Monsanto relies on foreign documents in defense of general causation issues. Plaintiffs are entitled to discovery of this information and the custodial files for those individuals identified herein.

Finally, Monsanto implies that foreign documents are irrelevant because all Plaintiffs' purchase of and exposure to Roundup® occurred in the United States. The question of whether Roundup® can cause non-Hodgkin's lymphoma is not restricted by the geographic location of the epidemiological and toxicological data in support of or against general causation. As noted above, Monsanto believes that data and determinations, geographically removed from the location where Plaintiffs used and purchased Roundup®, are relevant to the general causation question. It cannot pick and choose which of these foreign documents it puts before this court. Its refusal to produce similar documents to Plaintiffs is insupportable. Monsanto cannot have it both ways. Even so, Plaintiffs have reason to believe that some of the data and studies used by foreign agencies to make their determinations originated in the United States. Because a substance's carcinogenicity is not related to the geographic region of its purchase or use, documents within Monsanto's possession, custody, or control concerning Roundup®'s carcinogenicity, and Monsanto's knowledge thereof, regardless of location, must be produced.

In closing, the documents at issue are relevant to Plaintiffs' claims, have been put in issue by Monsanto, and are within Defendant's control. Defendant has not provided any credible basis for refusing to produce this information or to engage in a meet and confer. Plaintiffs respectfully request that the Court address this issue at the November 16, 2016 status conference.

Dated: November 15, 2016                    Respectfully submitted,

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff, Esq.

/s/ Michael Miller
Michael Miller, Esq.

/s/ Robin Greenwald
Robin Greenwald, Esq.