

Rosemary Stewart
dir 202 898 5888
rstewart@hollingsworthllp.com

November 16, 2016

*Filed via ECF*

The Honorable Vince Chhabria
United States District Court, Northern District of California

    **Re:**   *In Re Roundup Products Liability Litigation*, No. 3:16-md-02741-VC

Dear Judge Chhabria:

    Monsanto Company ("Monsanto") submits this response and opposition to yesterday's filing by three plaintiff attorneys regarding their request for the production of the custodial files of four employees of foreign subsidiary companies of Monsanto. This letter supplements Monsanto's prior related Response, ECF No. 14.

    Monsanto has declined to negotiate the identity of additional custodians until the appointment of plaintiffs' lead counsel because this is an MDL-wide issue. However, the filing attorneys are correct that Monsanto does not consider the foreign employees to be key custodians for purposes of document production, particularly at this stage of the litigation where the only issue is general causation. *See* Order Re Bifurcation and Agenda for First Case Mgt. Conf., ECF No. 25 ("MDL Bifurcation Order"). Monsanto relies on the same scientific research and studies to support its product registrations world-wide, which are centralized in U.S.-based non-custodial records collections from which Monsanto has already produced hundreds of thousands of pages of records to plaintiffs. In addition, Monsanto has also produced millions of pages of custodial files from the scientists directly involved in studying the safety to humans of Monsanto's glyphosate-containing products. As another federal judge aptly commented: "There simply is no reason in most cases to produce thousands upon thousands of documents from dozens of custodians, simply because they have touched an issue, when the dispute really centers around a handful of key players who will have most (albeit not all) of the documents that are potentially relevant to the case." Hon. Andrew J. Peck and David J. Lender, 10 Key E-Discovery Issues, http://www.metrocorpcounsel.com/articles/13724/10-key-e-discovery-issues-2011-expert-insight-manage-successfully.

    Because plaintiffs' attorneys have not shown that the foreign employees possess non-cumulative records that are both relevant to the general causation inquiry and proportional to the

The Honorable Vince Chhabria  
November 16, 2016  
Page 2



needs of their U.S. clients, none of whom has alleged product exposure or use abroad, the Court should not permit the requested discovery. Further, in considering the potential burden and proportionality, and whether the needs of plaintiffs may be met through less burdensome sources as required by Rule 26, the Court should also take into account that these four custodians are located in countries with strict privacy laws. As the Supreme Court has stated, American courts "should exercise special vigilance" when discovery requests implicate foreign concerns and objections to such discovery "should therefore receive the most careful consideration." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

### A. Plaintiffs Cannot Establish that the Foreign Individuals Possess Relevant, Non-Cumulative Documents.

Monsanto already has produced to plaintiffs well over 3.5 million pages of documents, including from the five "key" custodians identified by Monsanto whose files, outside of the main non-custodial files, would be expected to contain the most responsive information regarding general causation. *See* Fed. R. Civ. P. 26(b)(2)(C).[1] None of the Monsanto European subsidiaries' employees has ever conducted a scientific or medical study about the effect of glyphosate-based herbicides on people or animals. None of these individuals has first-hand or scientific knowledge of the only question now at issue in this litigation: whether glyphosate causes NHL. Indeed, three of the four (Xavier Belvaux, Richard Garnett, and Christophe Gustin) work on the regulatory processes necessary to get Monsanto products registered for use in various European countries. But the plaintiffs in this MDL do not claim to have been exposed to products they bought in Europe, and none of these individuals are scientists or medical doctors who can address the possible cause of NHL. In fact, when making regulatory submissions in Europe, these individuals rely on *the same animal studies already produced to the plaintiffs in this litigation*, which are the same studies relied upon by the U.S. EPA in concluding the human health safety of glyphosate.[2] Plaintiffs' identification of Manda Samson is equally puzzling, as

---

[1] The mere fact that Monsanto Company included the individuals in question on its legal hold list does not mean that they possess non-cumulative records relevant to general causation, which is the only question at issue at this point. *See* MDL Bifurcation Order. Nor does it mean that these individuals possess a sufficient volume of unique, relevant records that would be proportional to the needs of these cases considering the voluminous non-custodial and custodial sources available through less burdensome sources located in the United States.

[2] Plaintiffs also have not explained how communications with foreign regulatory bodies would support their causation claims, and why they suspect these employees withheld material information on general causation from the U.S.-based employees charged with conducting safety evaluations. *See In re Benicar (Olmesartan) Prods. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016

The Honorable Vince Chhabria
November 16, 2016
Page 3



she operates Monsanto-U.K. Ltd.'s technical service helpline, which farmers in the U.K. telephone to ask questions about Monsanto's various products.  Ms. Samson reports that more than 90% of all questions she fields relate to how to apply the products for maximum benefit to the farmer, a few questions relate to Monsanto's seed products, and even fewer relate to questions about what to do if a product has been splashed on or consumed by a user.

### B. The Burdens of Producing the Files of the Foreign Subsidiary Employees Would Outweigh the Small Possibility of Any Non-Cumulative, Relevant Documents.

In light of the lack of showing that these foreign citizens posses unique, relevant records needed for the general causation inquiry before the Court, which they are in fact unlikely to have given the nature of their positions, the burdens of such foreign discovery clearly weighs against production.

### i. Producing the Files of the Foreign Subsidiary Employees Likely Would Violate Privacy Laws of Their Respective Nations and Should Be Denied in the Interests of Comity.

Three of the foreign citizens (Messrs. Belvaux, Garnett, and Gustin) work for Monsanto Europe S.A., headquartered in Brussels, Belgium, and the third, Ms. Sansom, works for Monsanto UK Ltd. in England.  Both Belgium and the United Kingdom have data privacy laws that restrict the transfer of personal data to countries outside the European Union and the purposes for which personal data may be used.[3]

---

WL 5817262, at *6 (D.N.J. Oct. 4, 2016)  ("the Court is skeptical that meaningful discovery regarding any alleged causal connection between defendant's [product] and plaintiffs' symptoms is singularly possessed by [the two German employees], or even Daiichi Europe").

[3] The European Union Data Protection Directive requires EU nations to implement its guidelines into law.  See Council Directive 95/46/EC, 1995 O.J. (L 281) 31 (EC).  Belgium and the UK have their own such laws.  See, e.g.,  Laydon v. Mizuho Bank, Ltd., No. 12 Civ. 3419, 2016 WL 1718387, at *2-*6, *11 (S.D.N.Y. Apr. 29, 2016) (discussing the UK data privacy law and noting that "courts have repeatedly held that European nations bound by the EU Directive have an interest in protecting the privacy rights of their citizens"). See also In re Xarelto (Rivaroxaban) Prods. Liab. Litig., MDL No. 2592, 2016 WL 3923873, at *11 (E.D. La. Jul. 21, 2016) (noting that personal data includes "job titles, and email addresses" and "[b]oth objective and subjective personal data are protected"); id. at *12 ("The European Commission has certified that some non-EU countries provide adequate levels of protection under EC Directive 95, but the United States does not currently qualify.").

The Honorable Vince Chhabria
November 16, 2016
Page 4



"Rule 26 grants the court discretion to limit discovery on several grounds, including international comity." *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007).  Thus, as this Court has stated, "American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state," and "courts are less inclined to ignore a foreign state's concerns where the outcome of the litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence." *Id.*  In light of the wealth of scientific and regulatory information that Monsanto already has provided to plaintiffs, the outcome of this litigation does not "stand or fall" on the small possibility of relevant, unique documents that the four European citizens might possess, and the sweeping production requests, devoid of specificity or limitation, do not promise to yield information that cannot be easily obtained in the existing production.  *See id.* at 1083-84 (denying motion to compel the production of foreign-based documents when plaintiff failed to persuade the Court about the importance of European Commission ("EC") documents to a claim based in the U.S., particularly when plaintiff already had documents from U.S.-based productions which were "likely to be more relevant to [plaintiff] tha[n] the EC documents").

> ii. **The Proportionality Guidelines of the Federal Rules Also Caution Against Ordering Production of the Foreign Subsidiary Employees.**

Federal Rule 26 provides that, in the first instance, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Forcing Monsanto to conduct an expensive and time-consuming search, review, and production of foreign custodial files, in violation of Belgian and British data privacy laws, for the slim chance of recovering documents that are both relevant and non-cumulative, would be the antithesis of proportionality.  *See In re: Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2016 WL 4943393, at *5 (D. Ariz. Sep. 16, 2016) (holding defendant Bard "need not search the ESI of foreign Bard entities" because "the burden and expense" of the search "outweighs the benefit of the proposed discovery"); *see also Benicar*, 2016 WL 5817262, at *7 (refusing to direct defendants to produce documents from Daiichi Europe unless "plaintiffs satisfy the Court that requests are well-grounded, materially relevant and non-cumulative").

Even if the productions could be made, they would necessarily require substantially more time, additional redactions, coordination with foreign personnel, potential foreign-based document review, and other measures that may need to be implemented to minimize the conflict with foreign privacy laws.  If the Court concludes that plaintiffs' requests for these foreign citizens' records – assuming appointed plaintiffs' lead counsel still desires these custodians – requires a more developed record on the relevant foreign laws, Monsanto will of course provide

The Honorable Vince Chhabria
November 16, 2016
Page 5



such information.  However, given the nature of these individuals' positions and the limited scope of discovery for this phase, particularly in light of the voluminous records Monsanto already has and is willing to produce, the time and burdens that developing a record with expert submissions regarding the relevant foreign laws is unnecessary and itself unduly burdensome and disproportionate.  *See, e.g.*, *Laydon*, 2016 WL 1718387, at *6-15 (denying foreign discovery after considering expert submissions and comity analysis of UK and EU privacy law).

    For the reasons stated herein, Monsanto reiterates its request that the Court deny the plaintiffs' request that Monsanto be compelled to produce the custodial files of the four foreign individuals identified herein.

                                                 Respectfully submitted,

                                                 /s/ Rosemary Stewart
                                               Rosemary Stewart
                                               HOLLINGSWORTH LLP
                                               rstewart@hollingsworthllp.com

                                               *Counsel to Defendant Monsanto Company*