1  **THE MILLER FIRM LLC**
   Michael. Miller
2  108 Railroad Avenue
   Orange, Virginia 22960
3  Tel: (540) 672-4224
   Fax: (540) 672-3055
4  mmiller@millerfirmllc.com

5  **WEITZ & LUXENBERG, P.C.**
   Robin L. Greenwald
6  700 Broadway
   New York, NY 10003
7  Tel: (212) 558-5802
   Fax: (646) 293-4921
8  Email: rgreenwald@weitzlux.com

9  **ANDRUS WAGSTAFF, PC**
   Aimee H. Wagstaff (SBN 278480)
10 7171 W. Alaska Drive
   Lakewood, CO 80226
11 Tel: (303) 376-6360
   Fax: (303) 376-6361
12 aimee.wagstaff@andruswagstaff.com

13 *Co-Lead Counsel for Plaintiffs*

14

   **HOLLINGSWORTH LLP**
15 Joe G. Hollingsworth (*pro hac vice*)
   Eric G. Lasker (*pro hac vice*)
16 1350 I Street, N.W.
   Washington, DC  20005
17 Tel:    202-898-5800
   Fax:    202-682-1639
18 Email: jhollingsworth@hollingsworthllp.com
           elasker@hollingsworthllp.com
19
   *Attorneys for Defendant*
20 *MONSANTO COMPANY*

21

22                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA
23

24 IN RE: ROUNDUP PRODUCTS          MDL No. 2741
   LIABILITY LITIGATION
                                    Case No. 3:16-md-02741-VC
25

26 This document relates to:

   ALL ACTIONS
27

28             <u>**JOINT CASE MANAGEMENT STATEMENT**</u>

                              - 1 -

1    Pursuant to the Court's November 22, 2016 Civil Minutes, ECF No. 49, and November

2    23, 2016 Pretrial Order No. 3, ECF No. 47, the parties jointly submit this Joint Case

3    Management Statement in anticipation of the December 21, 2016 Case Management Conference.

4    **I.       DEPOSITIONS OF GROUP A CUSTODIANS**

5    The parties have agreed to the following schedule for the depositions of the Group A

6    custodians:

7    Donna Farmer – January 11, 2017

8    Dan Goldstein – January 18, 2017

9    William Heydens – January 23, 2017

10   Steve Adams – January 26, 2017

11   David Saltmiras – January 31, 2017

12   **II.      DEPOSITIONS OF GROUP B CUSTODIANS**

13   The parties have agreed that plaintiffs will take the depositions of the following Group B

14   custodians: Dan Jenkins, David Heering, and Susan Martino-Catt.  Plaintiffs reserve the right to

15   seek the depositions of the remaining Group B custodians in a later phase of this litigation, and

16   Monsanto reserves all rights to object if such later requests are made.

17   **III.     GROUP D CUSTODIANS**

18   The parties have agreed that Group D will consist of five individuals, who are Richard

19   Garnett, Christophe Gustin, Michael Koch, Joel Kronenberg and Vincent Leopold.  Monsanto is

20   now collecting and reviewing relevant and responsive materials from these individuals, as well

21   as from the Group C Custodians, who are John Acquavella and Eric Haupfear.

22   **IV.      DEPOSITION PROTOCOL**

23   As noted above, the first deposition in this MDL is set for January 11, 2017, with four

24   others to follow by the end of January. The parties hereby propose a deposition protocol to

25   facilitate the efficiency of the discovery.  During the meet and confer process regarding this

26   protocol, the parties reached agreement in some areas, but not in others.  The parties agreed to

27   submit competing protocols.  Monsanto's proposed protocol is attached as **<u>Exhibit A</u>**.  Plaintiffs'

28

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

proposed protocol is attached as **Exhibit B**.  Plaintiffs' version reflects the differences that remain between plaintiffs' proposal and Monsanto's proposal.

### PLAINTIFFS' POSITION

The parties spent a lot of energy working on the deposition protocol, and only five general disputes remain:

1.     **State court coordination**. This deposition protocol relates to the federal Roundup litigation only.  Co-Lead counsel cannot enter into a stipulation that purports, or attempts to purport, to bind state court litigation. Additionally, to date, every state court judge has denied Monsanto's request to phase discovery.  As such, the scope of litigation in state court is substantively different from the litigation in the federal MDL.  MDL Leadership has no intent to conduct duplicate discovery in state court actions and will attempt to coordinate state court discovery when possible, but cannot agree to bind state court discovery to the federal phased discovery Order or to any other MDL discovery limitations.

2.     **Number of deposition examiners and names.** Plaintiffs have agreed to utilize just one examiner for expert depositions and are only requesting that they be allowed to have 2 examiners for corporate witnesses, if needed. When applied, the 2 examiners would switch half way through the corporate deposition at a topical breaking point.  The 2-examiner process is common in MDL practice and rarely objected to by defense counsel.  Here, it makes particular sense because the Parties are operating under an aggressive discovery schedule with a small leadership structure. Monsanto has produced millions of pages of documents, to include custodial files and other corporate documents.  Monsanto adamantly objected to the existence of a PSC, so the work must be split by 6 law firms, and 2 liaison counsel.  To keep up with the aggressive discovery schedule, Plaintiffs may need to split the preparation and deposition responsibility of a particular custodian between two persons or two law firms. Thus, it makes sense to allow 2 examiners per corporate witness.  Monsanto has voiced concern that allowing 2 examiners will be repetitive.  However, Plaintiffs have no incentive to repeat questions as they have agreed to a presumptive 7 hours for each direct examination of each deponent.

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

1    Often, determining who will conduct a particular corporate deposition is a strategic, work

2  product, decision. Requiring Plaintiffs to identify the deposition examiner three days prior to a

3  deposition infringes on work product, and so Plaintiffs object to that request.  However,

4  Plaintiffs do recognize the value of having each side designate a "deposition coordinator" who

5  will work to set the depositions, be available for last minute logistical changes, and coordinate

6  specific issues on a deposition-by-deposition bases and Plaintiffs will designate a particular

7  person for that role should the Court so Order.

8        3.    **Contacting Current and Former Employees.** Plaintiffs' counsel are bound by

9  ethical rules when contacting current and former Monsanto employees and will comply with

10  such rules and obligations.

11        4.    **Expert Discovery Priority.**  Plaintiffs are aware of no rule or law that sets

12  deposition priority, and Monsanto has provided none. It is anticipated that the Parties will

13  designate corresponding experts within the same discipline. Plaintiffs propose that a fair way to

14  conduct expert discovery is that the parties alternate in expert deposition priority. By way of

15  example, if Monsanto deposes Plaintiffs' epidemiologist expert before producing its own

16  epidemiologist expert, Plaintiffs will depose Monsanto's toxicology expert before producing

17  their toxicology expert.  After the completion of expert designations by all Parties, counsel shall

18  meet and confer in good faith to set a schedule that satisfies this provision.

19               **MONSANTO'S POSITION**

20    The purpose of this protocol is to provide the framework before the upcoming

21  depositions so that disputes at the depositions can be avoided wherever possible.  In many

22  instances, Monsanto's proposal includes both provisions in the federal rules and related

23  provisions that are not.  Including both types of provisions in one protocol, easily accessible by

24  all counsel while at the deposition, will promote the efficient conduct of discovery.  The parties'

25  remaining disputes fall mostly within the following categories:

26      **The ability of counsel in the MDL to "re-take" general causation depositions in state**

27  **court or in this MDL:**  Monsanto's proposed Deposition Protocol ensures that the general

28  causation depositions in this MDL will be conducted in an efficient, non-duplicative, and fair

- 4 -

1   manner.  To this end, absent good cause shown or an agreement of the parties, no fact witness

2   should be deposed more than once in any court on general causation issues by counsel involved

3   in this MDL.  Monsanto's Deposition Protocol, Ex. A, at 2; *see also* Pretrial Order No. 4:

4   Conduct of Discovery at 7, *In re Bextra & Celebrex Marketing, Sales Practices, and Prods.*

5   *Liab. Litig.*, No. 3:05-md-01699-CRB (N.D. Cal. Feb. 7, 2006), ECF No. 169 (including similar

6   provision); Order No. 12 (Deposition Protocol) at 5, *In re Mirena IUD Prods. Liab. Litig.*, No.

7   7:13-cv-08785-CS (S.D.N.Y. Dec. 11, 2013), ECF No. 8 (same).

8          Neither the issues relevant to general causation nor a witness's knowledge of those issues

9   differs based on whether the lawsuit is in federal or state court.  The fact that some but not all

10  state courts have bifurcated discovery does not justify the inefficiencies that would result if the

11  same counsel take repeat general causation depositions of the same witnesses.  If the provisions

12  in Monsanto's protocol are entered, all MDL counsel will be properly incentivized to consider

13  and address all relevant general causation issues in a single deposition, avoiding the need to re-

14  depose a witness on general causation issues.  As noted in Monsanto's proposed protocol and by

15  other MDL courts facing similar issues, such orders by MDL courts do not obstruct the state

16  courts' authority to manage their cases.  *See* Order No. 12 (Deposition Protocol) at 5, *In re*

17  *Mirena IUD Prods. Liab. Litig.*, No. 7:13-cv-08785-CS (S.D.N.Y. Dec. 11, 2013), ECF No. 8

18  ("Nothing in this provision shall be construed as an injunctive or equitable order affecting state

19  court proceedings.  Rather, this provision is intended to reflect this Court's desire for voluntary

20  state-federal coordination. However, all counsel with cases in this MDL shall adhere to the

21  guidelines articulated in this Order in all depositions regardless of whether originally noticed in

22  one of the cases in the MDL proceeding or in a state court action."); *see also* Monsanto's

23  Deposition Protocol, Ex. A, at 3 (including similar provision).

24          **Identification of and limitations on the number of questioners for single party:**

25  According to Federal Rule of Civil Procedure 30(c)(1), "[t]he examination and cross-

26  examination of a deponent proceed as they would at trial under the Federal Rules of Evidence,

27  except Rules 103 and 615."  This implicitly limits the deposition to one questioner per party per

28  witness.  The reasons for such a rule are logical – witnesses should not be harassed by multiple

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

1  rounds of questioning by different counsel for the same party and any efforts to do so are

2  inevitably inefficient.

3  Monsanto's proposal includes a provision that only one attorney per side conduct the

4  examination in order to promote a streamlined examination.  *See* Monsanto's Deposition

5  Protocol, Ex. A, at 6; *see also* Case Management Order at 23, *In re Aredia and Zometa Prods.*

6  *Liab. Litig.*, No. 3:06-md-01760 (M.D. Tenn. July 28, 2006), ECF No. 89 (limiting MDL

7  depositions to one examiner per side); Pretrial Order No. 6: Discovery and Other Proceedings

8  Relating to General Causation at 6, *In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No.

9  3:16-md-02691-RS (N.D. Cal. Sept. 26, 2016), ECF No. 102 (limiting MDL plaintiffs to single

10  examiner at depositions, providing for additional examiner only to extent other parties are

11  present).  Plaintiffs' counsel should coordinate with each other so as to conduct a thorough and

12  non-duplicative examination.  Monsanto's provision merely seeks to memorialize this common

13  sense practice.

14  Plaintiffs object, seeking this Court's permission to have multiple plaintiffs' counsel

15  question the same witness during the same deposition on the general causation issue.  Plaintiffs

16  claim this is necessary because some of their counsel are more versed in certain areas of this case

17  than others.  Counsel's lack of information about any aspect of a case is not an excuse for

18  deviating from established practice.  All counsel should be proficient in the facts necessary to

19  take a deposition if they are slated to do so.  Although some MDLs have allowed multiple

20  plaintiffs' counsel to ask questions, that procedure is unneeded and inefficient here.  For

21  example, in MDL cases with two defendants represented by separate counsel and with

22  potentially divergent interests, courts have allowed plaintiffs two examining attorneys to match

23  the number of examining defense counsel.  *See, e.g.*, Pretrial Order No. 4: Conduct of Discovery

24  at 10, *In re Bextra & Celebrex Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 3:05-md-

25  01699-CRB (N.D. Cal. Feb. 7, 2006), ECF No. 169 (allowing defendants to select two

26  examining attorneys "one of whom shall be counsel for a physician or other health care provider

27  Defendant (unless no such counsel wishes to be so designated)," and allowing plaintiffs two

28  examining attorneys as well).  Here, with a single defendant, a single examining attorney will be

- 6 -

1    able to fully represent the interest of his/her client(s) far more efficiently than would two

2    examining attorneys.

3         Monsanto also proposes that three days before a deposition, the parties exchange the

4    names of counsel who will be taking and defending that deposition.  This will allow the attorneys

5    directly involved in the deposition to discuss any last-minute issues with each other directly and

6    efficiently.  Other MDL courts have implemented similar provisions.  Plaintiffs' proposal to

7    appoint "deposition coordinating counsel" to be the point of contact should any issues arise is

8    inefficient, unnecessary, and delays resolution of the issue.

9         **Limiting plaintiffs' counsel's ability to contact current and former employees of**

10   **Monsanto without prior notice to and permission of Monsanto:**  Monsanto proposes that

11   plaintiffs be prohibited from contacting Monsanto's current or former employees without first

12   informing Monsanto's counsel about their intent to do so, and inquiring whether Monsanto has

13   or will be providing counsel to represent former employees.  *See* Monsanto's Deposition

14   Protocol, Ex. A, at 2.  This provision promotes efficiency and the conservation of resources with

15   respect to both groups of employees.

16        Monsanto's counsel presumptively represents all Monsanto current employees.  Should

17   any of those employees become relevant witnesses in this litigation, it is almost certain that

18   Monsanto would provide representation so that those witnesses have the benefit of counsel in

19   any discussions with the plaintiffs' attorneys.  For these reasons, other MDL courts have

20   implemented procedures similar to the one suggested by Monsanto here.  *See, e.g.*, Scheduling

21   Order Relating to Phase I of Discovery at 4, *In re Viagra Prods. Liab. Litig.*, No. 0:06-md-1724-

22   PAM (D. Minn. June 30, 2006), ECF No. 38 ("Plaintiffs shall not contact present employees of

23   Defendant without permission of Defendant's counsel.").

24        Similarly, Monsanto is providing representation to several former employees in this

25   litigation.  To the extent plaintiffs intend to contact former employees, requiring them to consult

26   with Monsanto first to learn if Monsanto will represent those employees as well would avoid

27   confusion and promote efficiency.  Other MDL courts have implemented orders managing

28   contacts with former employees in a variety of ways, and one should be entered here as well.

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

*See, e.g.*, Order Regarding Contact With Former Pfizer Employees, *In re Viagra Prods. Liab. Litig.*, No. 0:06-md-1724-PAM (D. Minn. July 7, 2006), ECF No. 43.

**Specific requirements for videotaping procedures:**   Although Rule 30(b)(3) provides some guidance on the requirements for videotaped depositions, much is left to be resolved by the parties.   Monsanto has suggested common-sense fairness provisions to fill in these gaps, such as limiting the videotaping to show only the deponent, not the dual views of the deponent and the examiner suggested in plaintiffs' proposed provisions.   *See* Monsanto's Deposition Protocol, Ex. A, at 4.   Many of the provisions suggested by Monsanto have been implemented in other MDLs[1] and are efficient measures for reducing the potential disputes at deposition.   *See generally id.* at 3-5.

**Provision of Bates numbers for previously produced documents:**   Document requests often accompany notices of deposition.   The parties agree that deponents are not required to reproduce responsive documents that are identical to those already produced by Monsanto or that are publically available.    However, plaintiffs seek to require the deponent to identify any documents produced by Monsanto by Bates number.   Creating this list of Bates numbers is overly burdensome and time-consuming for deponents, as some of these requests could require the identification of hundreds or potentially thousands of documents.   Further, this procedure is not proportional to the needs of the litigation at this time, particularly because discovery is bifurcated.

**Depositions of plaintiffs' experts should go first:**   Monsanto's proposed protocol includes a provision that Monsanto be entitled to examine plaintiffs' expert in a given area before plaintiffs examine Monsanto's expert in that same area.   Monsanto' Deposition Protocol, Ex. A, at 8-9.   This provision is consistent with the applicable burden of proof under *Daubert*, and has been implemented in other MDLs as well.   *See, e.g.*, Pretrial Order No. 21: General

---

[1] *See, e.g.*, Pretrial Order No. 6: Discovery and Other Proceedings Relating to General Causation at 8-9, *In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No. 3:16-md-02691-RS (N.D. Cal. Sept. 26, 2016), ECF No. 102 (ordering similar provisions); Pretrial Order No. 4: Conduct of Discovery at 12-13, *In re Bextra & Celebrex Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 3:05-md-01699-CRB (N.D. Cal. Feb. 7, 2006), ECF No. 169 (same).

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

1    Causation Expert Discovery and Related Motion Practice Regarding Celebrex at 3, *In re Bextra*

2    *& Celebrex Prods. Liab. Litig.*, No. 3:05-md-01699-CRB (N.D. Cal. Mar. 16, 2007) (entering

3    same provision).

4    **V.      SCIENCE DAY SCHEDULE AND PROTOCOL**

5           The parties jointly suggest that Science Day be held on February 8, 2017 if that date is

6    available on the Court's calendar.  The parties have discussed the protocol for Science Day.

7    Although they agree on several aspects of that protocol, they are unable to agree on whether

8    materials should be exchanged between the parties in advance and whether the courtroom should

9    be closed during Science Day.   The parties' competing proposals are attached hereto as

10   **Exhibit C** (Monsanto's proposal) and **Exhibit D** (Plaintiffs' proposal).

11          **Plaintiffs' Position:**

12          Two disputes remain with respect to the Science Day Protocol: (1) the exchange of

13   information prior to Science Day; and (2) whether the Court should be closed for the proceeding.

14   Plaintiffs will address each one in turn.

15          Science Day is a non-adversarial proceeding designed to educate the Court.  As such, a

16   fair exchange of information between the court and the parties should occur. The exchange of

17   presentations among the parties in advance of Science Day promotes the non-adversarial intent

18   of this tutorial, and ensures that neither party gains a tactical advantage. Additionally, although

19   the scope of science day was ultimately agreed upon, negotiation and comprise in scope was

20   plenty.  Therefore, exchanging power points prior to science day helps ensure that both sides stay

21   within the agreed upon scope and ensures no side will be blindsided.  Next, nothing about the

22   Science Day process warrants the drastic measure of closing the courtroom. Plaintiffs feel

23   strongly that the general information exchange to occur during Science Day shall be held in open

24   court, instead of secretly behind closed doors.

25          **Monsanto's Position:**

26          **Prior exchange of Science Day presentations:**  Monsanto proposes that the parties

27   provide the Court with the as-shown presentations after they are given at Science Day, but not

28   exchanged between the parties prior to Science Day.  This is consistent with a proposal

- 9 -

1    Monsanto made – and the Court expressed agreement with – during the last Case Management

2    Conference.  *See* Nov. 16 Tr. at 138.  Other MDLs have implemented procedures similar to the

3    one proposed by Monsanto.  *See, e.g.*, Order Following Second Status Conference and Staying

4    Submission of Plaintiff Fact Sheets at 2-3, *In re Incretin Mimetics Prod. Liab. Litig.*, No. 13-md-

5    2452 AJB (MDD) (S.D. Cal, Nov. 25, 2013), ECF No. 200 (ordering that parties submit

6    presentation materials to the Court at Science Day, without ordering an exchange or opportunity

7    for objections).[2]  This is the best approach here as well.

8         In contrast, plaintiffs' proposal would require the parties to exchange presentations with

9    each other well in advance of Science Day.  Such a procedure is unnecessary and inappropriate

10   for a non-adversarial proceeding.  If the Court feels either party is exceeding the scope of the

11   information it seeks during Science Day, the Court can limit that discussion.  Leaving this

12   responsibility in the hands of the Court rather than a pre-Science Day exchange that could

13   stimulate last minute objections to proposed presentations makes sense – as discussed above, the

14   point of Science Day is to provide the Court with a foundation to better understand the expert

15   testimony that will be at issue in this MDL, not to create a forum for scientific debate between

16   the parties.

17        **Who may attend Science Day:**  Monsanto proposes that Science Day be open only to

18   the parties, counsel of record, and the presenting witnesses, whereas plaintiffs' proposal includes

19   no such provision.  Monsanto's proposal is consistent with Science Day procedures in other

20   product liability MDLs that have involved off-the-record science days at which attendance is

21   limited to the parties and presenters only.  *See, e.g.*, Entry Regarding Science Day, *In re Cook*

22   *Medical, Inc., IVC Filters Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 1:14-ml-

23

24

25

---

26   [2] *See also* Stipulated Order Granting Defendants' Motion for a Nuvaring "Science Day" at 2, *In re Nuvaring Prods. Liab. Litig.*, No. 4:08-md-01964-RWS (E.D. Mo. July 22, 2009), ECF No.
27   226 (parties provide video of presentation at Science Day, without ordering an exchange or opportunity for objections).

28

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

1    02570-RLY-TAB (S.D. Ind. March 21, 2016), ECF No. 1251 (Science Day "will be conducted

2    as a private and informal pretrial conference" and is "closed to members of the public.").[3]

3         A closed presentation is more consistent with the informational, non-adversarial nature of

4    Science Day.  This Court has repeatedly expressed the view that Science Day be "off the record."

5    *See* Nov. 16 Tr. at 136; Order re Bifurcation and Agenda for First Case Management Conference

6    at 1-2, ECF No. 25 ("The purpose of the tutorial will be to familiarize the Court with the science

7    and to identify which scientific issues are relevant and in dispute. The tutorial will be held off the

8    record, and the parties will not be permitted to use statements made by experts at the tutorial in

9    later depositions or examinations.").  A truly "off-the-record" Science Day will encourage the

10   full presentation of the science at issue without advocacy, something that cannot be achieved if

11   non-parties are in attendance with the opportunity to record or report on the proceedings.

12   **V.    DIRECT FILING.**

13        In Parties have exchanged their written positions on direct filing with each other and are

14   continuing to meet and confer. The issue is not yet ripe for judicial assistance.

15

16

17

18

19

20

---

21   [3] *See also* Stipulated Order Granting Defendants' Motion for a Nuvaring "Science Day" at 2, *In re Nuvaring Prods. Liab. Litig.*, No. 4:08-md-01964-RWS (E.D. Mo. July 22, 2009), ECF No.

22   226 ("individuals who are not parties to this litigation shall not be present" at Science Day, and "[t]he presentations are deemed confidential and subject to the Agreed Protective Order in place

23   in this MDL"); Case Management Order No. 19, *In re Ortho Evra Prods. Liab. Litig.*, No. 1:06-cv-40000-DAK (N.D. Ohio June 12, 2007), ECF No. 124 (Science Day "will be a closed

24   proceeding open only to the counsel of record in this litigation as well as those attorneys who have similar cases pending in federal or state courts and . . . have agreed to the conditions of a

25   protective order approved by this Court."); Order Following Second Status Conference and Staying Submission of Plaintiff Fact Sheets at 2-3, *In re Incretin Mimetics Prod. Liab. Litig.*, No.

26   13-md-2452 AJB (MDD) (S.D. Cal, Nov. 25, 2013), ECF No. 200 ("[A]ll information presented at Science Day will be deemed 'off the record' for all purposes.  Science Day will not be

27   transcribed by a Court Reporter, nor will video cameras be permitted in the courtroom to record the proceedings.").

28

JOINT CASE MANAGEMENT STATEMENT
3:16-md-02741-VC

1    DATED: December 16, 2016                    Respectfully submitted,

2                                                /s/   Mike Miller
                                                 Michael Miller
3                                                mmiller@millerfirmllc.com
                                                 The Miller Firm LLC
4                                                108 Railroad Ave
                                                 Orange VA 22960
5                                                Ph 540 672 4224
                                                 F 540 672 3055

6
                                                 /s/ Aimee Wagstaff
7                                                Aimee Wagstaff
                                                 aimee.wagstaff@andruswagstaff.com
8                                                Andrus Wagstaff, P.C.
                                                 7171 West Alaska Drive
9                                                Lakewood CO 80226
                                                 Ph 303-376-6360
10                                               F 303-376-6361

11                                               /s/ Robin Greenwald
                                                 Robin Greenwald
12                                               rgreenwald@weitzlux.com
                                                 Weitz & Luxenberg
13                                               700 Broadway
                                                 New York NY 10003
14                                               Ph 212-558-5500
                                                 F 212-344-5461
15
                                                 Co-Lead Counsel for Plaintiffs
16

17   DATED: December 16, 2016                    Respectfully submitted,

18                                               /s/ Joe G. Hollingsworth
                                                 Joe G. Hollingsworth (*pro hac vice*)
19                                               (jhollingsworth@hollingsworthllp.com)
                                                 Eric G. Lasker (*pro hac vice*)
20                                               (elasker@hollingsworthllp.com)
                                                 HOLLINGSWORTH LLP
21                                               1350 I Street, N.W.
22                                               Washington, DC  20005
                                                 Telephone:  (202) 898-5800
23                                               Facsimile:  (202) 682-1639

24                                               Attorneys for Defendant
                                                 MONSANTO COMPANY
25

26

27

28
                                           - 12 -