UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>HEARING:  January 27, 2017<br>10:00 a.m.<br>Courtroom 4, 17th Floor, N.D.Cal.<br>San Francisco, California |

### PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF JESS ROWLAND

COME NOW all Plaintiffs, by the Plaintiffs' Executive Committee, and move this Court for an Order compelling the deposition of Jess Rowland, former Deputy Division Director, Health Effects Division, Office of Pesticide Programs (OPP), at the Environmental Protection Agency (EPA). He also chaired the Cancer Assessment Review Committee (CARC), a committee within EPA which authored and "accidentally" leaked a report in May 2016 holding that there was not enough evidence to conclude glyphosate is carcinogenic.

Plaintiffs have complied with EPA's *Touhy* rule for obtaining testimony from a current or former employee; that request has been denied and is ripe for review.

On August 18, 2016, counsel for Plaintiffs contacted EPA and was referred to the Office of General Counsel. Plaintiffs set forth the details of this litigation and the perceived role of Mr. Rowland and the testimony/facts sought in discovery. An EPA attorney, Mark Stilp, responded that "to make a decision and provide a response that properly follows the Agency's '*Touhy*' regulations," the EPA required additional information and a "formal written request (OK to send by email)." Plaintiffs responded with a formal written request on October 6, 2016, stating in part that "[t]he subject of the deposition would be the relationship of EPA's CARC and OPP to Monsanto, and what communications and exchanges occurred in advance of the report on

1  glyphosate that was accidentally leaked, following which Mr. Rowland left the Agency within
2  days."
3        Finally, on December 5, 2016, Wendy Blake, Associate General Counsel for EPA, issued
4  a formal letter from EPA denying permission for testimony from Jess Rowland as "not clearly…
5  in the interests of EPA." Exhibit A.  40 CFR § 2.404 governs requests for testimony from EPA
6  employees and provides that "the General Counsel or his designee… determines whether
7  compliance… would clearly be in the interests of EPA,"  -and following a refusal, that employee
8  need not testify.  Federal courts have held that the formal issuance of a subpoena is not necessary
9  to make the issue ripe for review following a *Touhy* refusal.  *See, e.g., U.S. ex rel. Lewis v.*
10 *Walker,* 2009 WL 2611522 (M.D.Ga. 2009) (rejecting EPA argument that a pending subpoena
11 was necessary for the District Court to compel testimony, where EPA denied a request through
12 General Counsel and *Touhy* procedures; "the lack of a pending federal subpoena is not fatal to
13 the present motion to compel.").
14       Coincidentally, one business day before Monsanto first moved this Court for bifurcation,
15 the EPA OPP "leaked" a glyphosate report marked "final" on April 30, 2016, coincidentally on
16 the day that Monsanto first moved this Court for bifurcation (Exhibit B).  Also coincidentally,
17 Monsanto's litigation counsel almost immediately found the leaked report, brought a copy of it
18 to the May 3, 2016 Hardeman Case Management Conference (such conference scheduled mere
19 hours after Monsanto filed its first Motion to Bifurcate in this court while Plaintiff's counsel was
20 travelling to the courthouse) and utilized it in support of Monsanto's argument for bifurcation.
21 *See* Hardeman May 3, 2016 Case Management Conference transcript, pp 20-21. However, within
22 three days, EPA had retracted the report and stated that the report was "preliminary" and "not
23 final" and that it had been "inadvertently" made available (See Exhibit C).  Also within days of
24 the leak, Mr. Rowland was placed on administrative leave.
25       This is, essentially, the totality of what is known in the public sphere. Monsanto's
26 internal documents reveal, however, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▮
2 ▮
3 ▮
4 ▮

5  The following day, Mr. Jenkins spoke to Mr. Rowland by phone and typed up the
6 conversation for colleagues. He reported that, ▮
7 ▮
8 ▮

9 ▮ The CARC review was purportedly meant to evaluate the
10 exhaustive review and report from IARC on glyphosate. However, the IARC report on
11 glyphosate was not completed until July of 2015; three months after ▮
12 ▮ as Mr. Rowland did in this
13 case, is the epitome of "junk" science.

14  In the same email, Jenkins explained that ▮
15 ▮
16 ▮
17 ▮
18 ▮
19 ▮
20 ▮

21  Indeed, Monsanto has been confident all along that EPA would continue to support
22 glyphosate, whatever happened and no matter who held otherwise. In an internal memo on
23 glyphosate, Monsanto executives wrote ▮
24
25 _____
   [1] ▮
26 ▮
   [2] ▮
27 ▮
28

1
2
3   Dated six months after ▬▬▬▬▬ the report states it is "from"
4   Jess Rowland and carries his signature. The report concludes that glyphosate is "not likely to be
5   carcinogenic to humans" but notes that "the epidemiological evidence at this time is inconclusive
6   for a causal or clear relationship between glyphosate and NHL" though it goes on to cite a
7   number of studies finding such an association.
8   Just before the report's date, Mr. Rowland apparently communicated to Monsanto that he
9   would be retiring within months and Monsanto discussed internally that ▬▬▬▬▬
10  ▬▬▬▬▬ He has indeed since left EPA,
11  departing within weeks of the "leaked" report.
12  Federal courts review an agency's decision for arbitrariness and caprice. *See, e.g. Derby*
13  *v. Department of Homeland Security*, 688 F.Supp.2d 1103 (2009). Unfortunately, the negotiated
14  terms of confidentiality in this action precluded Plaintiffs from providing source documents to
15  the EPA for consideration. In this instance, EPA simply responded that Plaintiffs "failed to
16  explain how and why you believe that granting this voluntary testimony would clearly be in the
17  Agency's interests," and added that the EPA was not a party to the litigation and thus lacked an
18  interest in providing information.
19  Monsanto has made it clear throughout this litigation that it intends to rely on EPA's
20  conclusions in the defense of this case, particularly in this first phase of general causation. Based
21  on these documents alone, it is clear that Monsanto enjoyed considerable influence within the
22  EPA's OPP, and was close with Mr. Rowland, ▬▬▬▬▬
23  ▬▬▬▬▬ coincidentally, a report authored chiefly by him was "accidentally leaked" just at the
24  time of his planned retirement. Monsanto's influence, then, will be crucial to the analysis of the
25  EPA's findings and conclusions even as the parties litigate this first phase of general causation.
26  Plaintiffs are not proposing a "fishing expedition," but rather a narrow deposition of a
27  single former EPA employee whose involvement in glyphosate issues was as important as any of
28  Monsanto's executives, at least in the context of this litigation. The documentary evidence

strongly suggests that Mr. Rowland's primary goal was to serve the interests of Monsanto; EPA acts only through its employees and Mr. Rowland was the primary author of the OPP report on glyphosate, which Monsanto has made clear will be central to its defense of this case, including in this general causation phase. EPA's denial of this request arbitrarily stated that it was unconvinced that the deposition would be in EPA's interests, without providing any reasoning. For Plaintiffs to have to prosecute this case, and counter-defend against this EPA report without being able to discover the presence or extent of Monsanto's untoward influence over the chief author, would work a substantial prejudice and significantly stack the deck against Plaintiffs.

No case is closer to these facts and the analysis required than *U.S. ex rel. Lewis v. Walker, supra*. In that action, to which the EPA was not a party, the plaintiffs alleged that "several EPA employees made misrepresentations to assist… researchers in obtaining federal monies through a cooperative agreement." There, as here, the EPA employee was central to discussions with the defendant, the content of which "will shed light on… the deception in which EPA employees engaged to protect [defendant's interests]." While the aim of the request was certainly not to polish the EPA's public image, the plaintiff argued that it was nonetheless in EPA's interest "because it may help the EPA uncover any improper conduct by EPA employees… and prevent future improper conduct." The court granted the motion to compel and ordered the deposition to take place, based solely on a finding that the witness "likely possesses information that is relevant to [plaintiff's] claims." Like *Lewis*, allowing the deposition of Mr. Rowland here is *in* the EPA's interest. If, as the documents suggest, Monsanto exerted untoward influence over Mr. Rowland, that is information the EPA needs to know so it can, in the future, ferret out such unseemly relationships between its employees and the very industry its charged to regulate.

In conclusion, this Court should compel the testimony of Mr. Rowland, a former EPA employee with information crucial to thousands of current and future plaintiffs.

DATED: January 9, 2017                   Respectfully submitted,

/s Robin Greenwald, Michael Miller and Aimee Wagstaff
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

Aimee Wagstaff
Aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 303-376-6360
F 303-376-6361

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 9, 2017 I electronically filed this Motion to Compel under seal, using the CM/ECF system which will send a notification of such filing to counsel of record.

/s/ Michael Miller