UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| | **PLAINTIFFS' OPPOSITION TO SEALING DOCUMENTS** |
| This document relates to: | |
| ALL ACTIONS | |

## PLAINTIFFS' OPPOSITION TO SEALING PORTIONS OF PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF JESS ROWLAND

> **What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records.**

*In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992).

Plaintiffs have filed a Motion to Compel the Deposition of Jess Rowland, partially under seal in accordance with the parties' protective and confidentiality order[1]. However, public policy and the applicable law, taken with the content of the actual documents at issue, dictate that the

---

[1] Monsanto designated the four documents at issue as "Confidential," which designation requires Plaintiffs to file them under seal.

four documents are not deserving of the confidentiality designation and extraordinary measure of secrecy/sealing, which itself requires a finding of "good cause.".  The documents at issue are:

> MONGLY 00987755
> MONGLY 01665907
> MONGLY 03351983
> MONGLY 00986901[2]

The EPA is currently considering the re-registration of glyphosate, one of the chemicals in Roundup®.  This decision will have an enormous impact on the public health due to the excessive spraying of this chemical on our food, farms and public areas.  The public interest in this decision is paramount and trumps any argument about the confidentiality about ex parte and secret communications between Monsanto and Monsanto's friends at the EPA responsible for this decision.   These secret communications from Monsanto lobbying the EPA cannot be held to be confidential because they 1) applicable law does not confer special status on them; 2) they are illegal; 3) are offensive to public policy; and 4) distort the scientific record.

A.  **The Presumption of Non-Confidentiality is not Overcome by these Documents discussing EPA affairs.**

As a general proposition, "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999).   This presumption can only be overridden by a showing of good cause pursuant to Fed. R. Civ. P. 26(c).  *Id.*; *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 426 (9th Cir. 2011) ("[T]his presumption can be rebutted only by a showing of good cause by the one seeking protection[.]").  To establish good cause, the party seeking protection must show that particular

---

[2] These documents' purported confidentiality have also been challenged in the meet-and-confer process dictated by the Confidentiality Order, along with dozens of others.  Plaintiffs await a response from Monsanto on these documents and will bring disputed items before the Court at a future date. See Exhibits 2 and 3.

harm will occur if no protective order is entered. *See also Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir.2002). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Id.* For each document, a party must show that specific harm or prejudice would result from disclosure of the trade secret or other information deserving protection. *See Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992). Importantly, information or communication is not confidential merely because it would cause embarrassment upon release. *Welsh v. City & Cty. of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995).

Here, the Court entered a Protective Order allowing any Party to designate as "Confidential Material" any information regarded as confidential by the Party that is contained in any document, written discovery response, testimony, or other material produced or provided by that Party or its representative(s) to any other Party, whether provided voluntarily, pursuant to formal discovery procedures, or otherwise. Protective Order ¶ 2. Nonetheless, the Order further stated that "this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the information or items that are entitled to confidential treatment under the applicable legal principles." Protective Order ¶ 2. Pursuant to the Protective Order, once Monsanto designates a document "Confidential," Plaintiffs and their attorneys are prohibited from sharing the information with the public until that designation is removed, either voluntarily by Monsanto or by Court Order.

The burden of proof to maintain the confidentiality of any document is on the party seeking to maintain the confidentiality, here, Monsanto. *Karoun Dairies, Inc. v. Karoun Dairies, Inc.*, 2014 WL 5170800, at *6 (S.D.Cal.,2014) (citing *In re Roman Catholic Archbishop of*

*Portland in Oregon*, 661 F.3d 417, 424 (9th Cir.2011) ("When the protective order 'was a stipulated order and no party ha[s] made a 'good cause' showing,' then 'the burden of proof ... remain[s] with the party seeking protection.' ")).

Monsanto has over-designated tens (if not hundreds) of thousands of documents as "Confidential", thus wrongfully keeping the information from the public. Indeed, according to a rough estimate from our document vendor, Monsanto has designated "Confidential" over 85% of the millions of pages produced in this litigation.  The burden is on Monsanto to establish the confidential nature of these documents and any showing of good cause must be based on a factual demonstration of potential harm.  *See* Fed. R. Civ. P. 26(c); Protective Order ¶ 16.3.

The four documents at issue all concern communications with and regulation by EPA; they do not constitute "trade secrets," rather they illuminate that one of Monsanto's chief business strategies is its secret and untoward influence on EPA.

**Exhibit E (MONGLY01665907-09):**  This document consists entirely of discussion about regulatory agencies.  In addition to setting forth a plan for interaction with EPA (and other agencies), it acknowledges important information that EPA has communicated to Monsanto. There is nothing contained that could be reasonably construed as a "trade secret," nor used to significant deleterious effect against Monsanto in its primary business.  Much of Monsanto's opposition to public disclosure is due to the fact that the document also mentions Dicamba, which is "irrelevant."  But relevance is not part of the sealing/disclosure analysis.  Additionally, the public interest in disclosure of communications between federal agencies and the large corporations they regulate is paramount.

**Exhibit D (MONGLY00987755-58):**  This document is largely a memorialization of verbal conversations between Monsanto and Jess Rowland (an EPA employee).  It discusses how

4

and when EPA's OPP reached the conclusions that were embodied in its later report.  These are, essentially, "minutes" of meetings between Monsanto and EPA, and do not exist in another form. **This communication is not a trade secret or otherwise confidential communication.**

Exhibit F (**MONGLY03351983**):  This email chain is a discussion/summary of published scientific literature.  In addition, it further illuminates communications between EPA/Jess Rowland and Monsanto. **This communication is not a trade secret or otherwise confidential communication.**

Exhibit G (**MONGLY00986901**):  This email chain discusses what EPA employees will be attending IARC, which information clearly came from EPA, and appears to suggest a Monsanto plan/desire to change or influence that group of U.S. government personnel. **This communication is not a trade secret or otherwise confidential communication.**

B. <u>Secret Communications With EPA are Illegal:</u>

Glyphosate is currently under review for re-registration as an approved ingredient to be used in herbicides such as Roundup®.[3]  EPA re-registration reviews are governed by 40 CFR Part 155.40, *et seq.*  Section 155.52, Stakeholder engagement provides the rules for how the EPA may communicate with stakeholders such as Monsanto.   It is not prohibited for Monsanto employees to talk to their friends at the EPA responsible for making a vital decision on public safety, however such communications must be made public.  Section 155.52 provides:

> (a) Minutes of meetings with persons outside of government. Subject to paragraph (c) of this section, if the Agency meets with one or more individuals that are not government employees to discuss matters relating to a registration review, the Agency will place in the docket a list of meeting attendees, minutes of the meeting, and any documents exchanged at the meeting, not later than the earlier of:
>
> (1) 45 days after the meeting; or
>
> (2) The date of issuance of the registration review decision.

---

[3] https://www.regulations.gov/document?D=EPA-HQ-OPP-2009-0361-0001

(b) Exchange of documents or other written material. In the course of a meeting with a person outside of government, the Agency or that person may provide the other with a copy of a document or other written material that has not yet been released to the public. The Agency will place a copy of any such document or other written material in the docket along with the minutes of the meeting where the materials were exchanged.
(c) Confidential business information. The Agency will identify, but not include in the docket, any confidential business information whose disclosure is prohibited by FIFRA section.

The collusion between certain EPA employees and Monsanto to violate these very clear requirements is disturbing, and should not be hidden from the public record.

### C.   Secret Communications With The EPA  Are Offensive To Public Policy:

A hallmark of the integrity of the judicial branch and its dedication to ascertaining truth is the prohibition against ex parte contacts between litigants and judicial officers.  These principles apply with equal force to administrative proceedings. Prohibitions against secret *ex parte* contacts "are to insure open decision-making and the appearance thereof, to preserve the opportunity for effective response, and to prevent improper influences upon agency decision-makers." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1544 (9th Cir. 1993).  A bedrock principle of administrative law "is the inconsistency of secrecy with fundamental notions of fairness implicit in due process and with the ideal of reasoned decision making on the merits." *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 55–56 (D.C. Cir. 1977). "Only through disclosure of *ex parte* communications may we protect the public's 'right to participate meaningfully in the decision making process' and 'the critical role of adversarial comment in ensuring proper functioning of agency decision making and effective judicial review.'" *State of N.C. Envtl. Policy Inst. v. E.P.A.*, 881 F.2d 1250, 1257–58 (4th Cir. 1989) (quoting (*United States Lines, Inc. v. Federal Maritime Comm'n*, 584 F.2d 519, 540, 542 (D.C.Cir.1978)). Disclosure of communications are necessary to "protect against taint of the

proceeding by ex parte communications." *State of N.C. Envtl. Policy Inst. v. E.P.A.,* 881 F.2d 1250, 1258 (4th Cir. 1989).

In the present case, the health and safety of millions of U.S. citizens is at stake. Decisions affecting the public health should not be based on secret conversations between Monsanto and EPA officials.   If Monsanto wants to advocate on behalf of glyphosate to EPA employees, they should have to do it publicly, so that concerned citizens have equal opportunity to advocate for their health and the health of their families.   This issue is too important to allow Monsanto to improperly influence the EPA, and then hide such communication behind an improper "confidential" designation.   Frankly, it is shocking that Monsanto would endeavor to violate federal regulations by secretly communicating with the EPA.   Such actions only serve to taint decisions coming out of the EPA.   Why is Monsanto afraid of having an open and honest debate about the safety of its products?

### D.   <u>Monsanto's Actions Serve To Distort The Scientific Record</u>

In addition to protecting products, Monsanto's secret communications with the EPA are part of an ongoing scheme and intense lobbying effort to undermine the credibility of IARC and improperly taint the scientific record of glyphosate.   In an unprecedented action, IARC was compelled to release an issue paper documenting Monsanto's attempts to intimidate and defame IARC and the scientists who donate their time to participate in the important public safety programs conducted by IARC.   Included, among the numerous actions taken by Monsanto to attack IARC is "privately lobbying the EPA to reject IARC's findings." Exhibit 1. Additionally, Monsanto through its lobbying firm CropLifeAmerica has "misrepresented [IARC] in a letter to US EPA accusing [IARC] of only using partial data and falsely accusing of [IARC]'s scientists of having a biased view" and has "lobbied US EPA about the composition of the expert panel

that will consider glyphosate carcinogenicity." *Id.*  Since Monsanto's communications with the EPA remain secret, these known lobbying efforts are only the tip of the iceberg of Monsanto's collusion with the EPA.

**Conclusion:**

Monsanto's bad acts in violating U.S. regulations through secret communications with the EPA should not by rewarded by allowing them to keep these communications secret by merely stamping them "Confidential."  These documents summarize communications with EPA which are not elsewhere memorialized; they are not trade secrets and the public has a compelling interest in disclosure.

DATED:  January 16, 2017                    Respectfully submitted,

<div style="margin-left: 40%;">

/s Robin Greenwald, Michael Miller and
Aimee Wagstaff
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

Aimee Wagstaff
Aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 303-376-6360

</div>

F 303-376-6361

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 16, 2017 I electronically filed this Opposition using the CM/ECF system which will send a notification of such filing to counsel of record.

/s/ Michael Miller

## DECLARATION PURSUANT TO CIVIL L.R. 7-11(a)

I, Michael Miller, declare:

1. I am a member of the executive committee of MDL 2741. I make this declaration in relation to Plaintiffs' Administrative Motion to File Under Seal, related to the Motion to Compel Deposition of Jess Rowland. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

2. While the documents that are the subject of this Motion were unilaterally marked "confidential" by Monsanto, requiring Plaintiffs to preliminarily submit them under seal, Plaintiffs are opposed to the documents remaining sealed.

 I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of January 2017

/s/ Michael J Miller