Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Rosemary Stewart (*pro hac vice*)
(rstewart@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Attorneys for Defendant,
MONSANTO COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 16-md-02741-VC |
| | MDL No. 2741 |
| This document relates to: | **MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO MAINTAIN CONFIDENTIALITY** |
| ALL ACTIONS | |

## I.      INTRODUCTION

Plaintiffs' Opposition to Sealing Documents (ECF No. 111, "Pls' Opp.") misconstrues both the nature of the documents at issue and the law that supports their continued confidentiality.  The documents are not communications with EPA, and no EPA regulation requires disclosure of the internal company documents as plaintiffs suggest.  Rather, the documents reveal internal strategic processes of Monsanto employees that are properly designated as confidential.  The documents were filed with a non-dispositive discovery motion, and do not inform any substantive decision.  It is not proper for plaintiffs to seek to remove the confidentiality designation of these documents at this early stage of discovery simply to make very select, out-of-context documents available to the public and attempt to try this case in the

press and taint any potential future juries.[1] *See Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV 1191-JLS(KSC), 2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015) (finding that the interest of the public "would not be advanced by the premature release of selected documents for the sole purpose of allowing one party to the litigation to attempt to discredit another in the public arena"); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) (noting that the "selective and out-of-context" disclosure of "segments of a large body of information" could lead to "amplified" prejudice against the defendant).  Good cause exists for the Court to order that the documents remain confidential.

## II.     PLAINTIFFS MISCONSTRUE BOTH THE RIGHT OF PUBLIC ACCESS AND THE CONFIDENTIALITY INTERESTS AT ISSUE

### A.  The Public Does Not Have a Right to Access These Discovery Documents and Documents Filed to Support a Non-Dispositive Discovery Motion.

The public's right to access discovery documents that have not been used to inform the Court's substantive decisions in this litigation is greatly diminished.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (The "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 163 (S.D.N.Y. 2003) ("[M]aterials submitted to a court for its consideration of a discovery motion are actually one step further removed from the trial process than the discovery material themselves, materials that the Supreme Court has said are not subject to the public's right of access." (quotation marks omitted)).  Broad confidentiality designations under the Protective and Confidentiality Order issued by the Court in this litigation were necessary in order for Monsanto to be able to produce well over 7 million pages of documents to plaintiffs in a very short period of time.  *See* Protective and Confidentiality Order, ECF No. 64, ¶ 4 (noting that confidentiality designations "facilitate the flow of discovery

---

[1] Plaintiffs' inflammatory opposition to Monsanto's Motion to Maintain Confidentiality is already the source of media coverage.  *See* Monsanto, EPA Seek to Keep Talks About Glyphosate Cancer Review a Secret, Huffington Post (Jan. 18, 2017), *available at* http://www.huffingtonpost.com/carey-gillam/monsanto-epa-seek-to-keep_b_14250572.html.

1    material").  Only a tiny percentage of the nearly 900,000 documents produced in discovery to

2    plaintiffs will ever be used in this litigation.  Even fewer will be needed to support the Court's

3    substantive decisions.  *See O'Malley v. Vill. of Oak Brook*, No. 07 C 1679, 2008 WL 345607, at

4    *2 (N.D. Ill. Feb. 6, 2008) ("[T]he vast majority of information produced during the discovery

5    process is never used at trial and has no impact whatsoever on the court's decision-making

6    process . . . .  For this reason, it is during this pretrial discovery process that a party's interest in

7    maintaining confidentiality of private information is at its strongest").  That is one reason why

8    there is a lesser standard to maintain the confidentiality of discovery documents as opposed to

9    documents supporting dispositive motions or being used at trial.  Indeed, relevancy disputes over

10   particular documents would be far more common and greatly increase the time and burden on the

11   parties and Court associated with document production.  The showing of good cause

12   demonstrated through the Declaration and other material and argument Monsanto submitted is

13   more than sufficient to maintain the confidentiality of these documents.  *See Kamakana v. City &*

14   *Cnty. of Honolulu*, 447 F. 3d 1172, 1180 (9th Cir. 2006); *Barnes v. Hershey Co.*, No. 3:12-CV-

15   01334-CRB, 2015 WL 1814293, at *3 (N.D. Cal. Apr. 21, 2015).

16       **B.   Documents Revealing a Company's Internal Strategies and Processes – Such as**

17           **the Four Documents at Issue – Are Protected Under the Good Cause Standard.**

18           Plaintiffs mistakenly suggest that only "trade secrets" are protected under the good cause

19   standard.  *See* Pls' Opp. at 4.  But, as the Ninth Circuit has stated, courts have "broad latitude" to

20   "prevent disclosure of materials for many types of information, including, *but not limited to*,

21   trade secrets or other confidential research, development, or commercial information."  *Phillips*

22   *ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F. 3d 1206, 1211 (9th Cir. 2002).  Courts in

23   this Circuit have found good cause to protect many kinds of information, including confidential

24   commercial information such as a company's processes and strategy.  *See, e.g.*, *Clearly Food &*

25   *Beverage Co. v. Top Shelf Beverages, Inc.*, 102 F. Supp. 3d 1154, 1178 (W.D. Wash. 2015)

26   (finding good cause to seal documents which contain strategies and business plans); *Barnes*,

27   2015 WL 1814293, at *3 (granting motion to seal a series of emails containing information

28

1   including business strategies); *Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2014 WL

2   5598222, at *3-4 (N.D. Cal. Nov. 3, 2014) (finding good cause to seal documents that would

3   reveal business policies and practices); *CreAgri, Inc. v. Pinnaclife Inc.*, No. 5:11-CV-06635-

4   LHK, 2014 WL 27028, at *2 (N.D. Cal. Jan. 2, 2014) (finding good cause to seal an email

5   containing discussions "regarding the development of new products"), *aff'd*, 579 F. App'x 1003

6   (Fed. Cir. 2014).

7        As further explained below, plaintiffs mistakenly portray the four documents at issue as

8   revealing "secret communications" between Monsanto and EPA.  *See* Pls' Opp. at 8.  In fact, the

9   documents are all internal, non-public communications between employees at Monsanto, which

10   reflect Monsanto's internal strategizing, processes, and business planning.  *See* Monsanto's

11   Response in Supp. of Pls' Admin. Mot. to File Under Seal (ECF No. 110) at 5 & Buck Decl.

12   Accordingly, they are protected under the good cause standard.

13   **III.   PLAINTIFFS' FOCUS ON EPA REGULATIONS IS A RED HERRING**

14        Plaintiffs attempt to stretch a few emails between Monsanto employees discussing

15   strategy – as well as an internal confidential business planning memo (Plaintiffs' Mot. to Compel

16   Ex. E) – into self-serving and erroneous allegations of alleged collusion with EPA.  This

17   mischaracterization fails for several reasons.  First, despite plaintiffs' assertion of "secret

18   communications" with EPA, they ignore the fact that the only documents Monsanto seeks to

19   keep confidential are *internal* strategic memoranda and emails.  The regulation plaintiffs cite

20   relates to EPA making public certain communications it has with persons outside of government

21   "relating to a registration review," 40 CFR Section 155.52.  *See* Pls' Opp. at 5-6.  As this

22   regulation makes clear, it is not improper or illegal for registrants to have informal

23   communications with an EPA employee.  *See* 40 C.F.R. 155.52 ("[T]he Agency may meet with

24   stakeholders regarding a forthcoming or ongoing registration review.").  Whether EPA is

25   required to make a public record of any such informal conversations (which is not how

26   Monsanto understands EPA's regulation) is irrelevant to the question of whether *Monsanto's*

27

28

1  *internal communications* should remain confidential.[2]  The documents at issue are not

2  communications with EPA about "registration review," and they are not "minutes of meetings";

3  they disclose internal Monsanto strategy and confidential information.  Thus, the EPA regulation

4  provides no basis to claim that Monsanto acted improperly or to remove the confidentiality

5  designation from these documents.[3]

6          Second, "'the relationship between a federal agency and the entity it regulates is

7  inherently federal in character.'"  *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th

8  Cir. 2002) (quoting *Buckman Co. v. Pl.'s Legal Comm.*, 531 U.S. 341, 347 (2001) (holding fraud

9  on the Agency claims are preempted)).  And while unnecessary to reach the issue here, such

10  plaintiff attempts to regulate how the Agency communicates with registrants would be

11  preempted by federal law for similar reasons to those outlined by the U.S. Supreme Court and

12  Ninth Circuit with respect to allegations of registrants allegedly making insufficient disclosures

13  to federal regulators.  *See Buckman*, 531 U.S. at 347-53; *Nathan Kimmel*, 275 F.3d at 1204-08.

---

[2] EPA memoranda going back to at least the Carter Administration recognize that EPA has long delineated between formal meetings where a party seeks to provide information arguably relevant to a decision and informal conversations; it is only the former that EPA must disclose and even then the burden is on EPA to docket such meetings (not the registrant).  *See* Fishbowl Memo (May 19, 1983) ("[A]ny oral communication *regarding significant new factual information or argument affecting a rule*, including a meeting with an interest group, should be summarized in writing and placed in the rulemaking docket for the information of all members of the public." (emphasis added)), *available at* https://www.regulationwriters.com/downloads/EPA-Fishbowl-Memo-05-19-1983-Ruckelshaus.pdf; 1970s memo (requiring recording information "as long as the discussion is significant"), *available at* https://www.regulationwriters.com/downloads/EPA-Memo-Ex-Parte-owm0203.pdf.  Section 155.52 (the antecedent of which was promulgated only two years after the Fishbowl Memo, 50 Fed. Reg. 48998-01, 1985 WL 111074), merely formalized this practice, and nothing in the internal Monsanto emails at issue indicate that the communications were "significant."  It is ultimately EPA's decision which meetings are "significant" and which meetings or conversations qualify for docketing under its regulation.

[3] The cases cited by plaintiffs, Pls' Opp. at 6-7, are not to the contrary (and do not even address the regulation plaintiffs rely upon).  Those decisions (save one) were concerned about ex parte communications in a *formal adversarial* process where there is a hearing (as opposed to the informal communications in the notice-and-comment rule-making context at issue here).  The sole case outside of the adversarial process, *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 55-56 (D.C. Cir. 1977), has been expressly limited by other decisions of the same court.  *See Sierra Club v. Costle*, 657 F.2d 298, 402 (D.C. Cir. 1981) ("Later decisions of this court, however, have declined to apply *Home Box Office* to informal rulemaking of the general policymaking sort involved here").

1    As the Supreme Court reasoned, such claims would "inevitably conflict with the [Agency]'s

2    responsibility to police fraud [or other alleged improper influence on the Agency] consistently

3    with the Administration's judgment and objectives," and "complying with the [Agency]'s

4    detailed regulatory scheme in the shadow of 50 States' tort regimes [would] dramatically

5    increase the burdens facing potential applicants—burdens not contemplated by Congress . . . ."

6    *Buckman*, 531 U.S. at 350.  Such claims also would cause registrants "to fear that their

7    disclosures" or communications with the Agency, "although deemed appropriate by the

8    Administration, will later be judged insufficient [or improper] in state court."  *Id.* at 351.

9           Third, Monsanto did not "hide" these documents from plaintiffs; they were duly

10   produced.  Finally, and most importantly for the Court's determination of "good cause," these

11   documents are tangential at best to the only question currently at issue in this litigation – whether

12   Monsanto's glyphosate-containing products can cause non-Hodgkin's lymphoma – and they

13   need not inform any substantive or dispositive decision in this litigation.  Therefore, any public

14   interest at this point in the litigation is minimal at best.  *See, e.g.*, *Crossfit, Inc.*, 2015 WL

15   12466532, at *7.

16   **IV.    GOOD CAUSE EXISTS TO SEAL THE FOUR DOCUMENTS AT ISSUE**

17          Courts within this District repeatedly find good cause to seal documents that, like the

18   ones at issue in Monsanto's motion, are tangential to the merits of the case and do not inform any

19   substantive decisions.  For example, in *Barnes v. Hershey Co.*, the Court found good cause to

20   seal internal emails where "the public interest in these emails is minimal, as they relate to a

21   technical matter in a discovery order and bear only tangentially, if at all, to the questions at issue

22   in the litigation."  2015 WL 1814293, at *3.  In *G & C Auto Body Inc. v. Geico Gen. Ins. Co.*, the

23   Court found good cause to seal a letter that "is not directly relevant to the legal issues that were

24   raised by GEICO's summary judgment motions or that were resolved by the Court" and

25   "because the DOI does not consider the document public and there is presently no reason related

26   to this litigation to place the document in the public record."  No. C06-04898 MJJ, 2008 WL

27   687372, at *3 (N.D. Cal. Mar. 11, 2008).  Likewise, in *Reilly v. MediaNews Grp. Inc.*, the Court

28

1    noted that "none of the nineteen records in dispute have been relevant to the Court's findings in

2    the underlying case, to this point" and "the public interest in understanding the judicial process is

3    therefore of little to no weight in the face of defendants' concerns."  No. C06-04332 SI, 2007

4    WL 196682, at *4 n.2 (N.D. Cal. Jan. 24, 2007) (internal quotation marks & citation omitted).

5    The Court should follow these examples and maintain confidentiality here.

6    **V.     CONCLUSION**

7            Under the current procedural posture of this litigation and the governing law, good cause

8    exists for the four exhibits at issue in Monsanto's Motion to Retain Confidentiality to remain

9    filed under seal.  Monsanto respectfully reiterates its request that the Court order that Exhibits D,

10   E, F, and G to Plaintiffs' Motion to Compel and the portions of the Motion to Compel that refer

11   to and quote from them be sealed from the public record and remain confidential.

12

13   DATED: January 23, 2017              Respectfully submitted,

14                                        /s/ Rosemary Stewart
                                          Joe G. Hollingsworth (*pro hac vice*)
15                                        (jhollingsworth@hollingsworthllp.com)
                                          Eric G. Lasker (*pro hac vice*)
16                                        (elasker@hollingsworthllp.com)
                                          Rosemary Stewart (*pro hac vice*)
17                                        (rstewart@hollingsworthllp.com)
                                          HOLLINGSWORTH LLP
18                                        1350 I Street, N.W.
                                          Washington, DC  20005
19                                        Telephone:  (202) 898-5800
                                          Facsimile:   (202) 682-1639
20

21                                        Attorneys for Defendant,
                                          MONSANTO COMPANY
22

23

24

25

26

27

28