

February 10, 2017

Joe G. Hollingsworth
dir 202 898 5842
jhollingsworth@hollingsworthllp.com

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court, Northern District of California

Re: *In re Roundup Prod. Liab. Litig.*, No. 3:16-md-02741-VC

To the Honorable Vince Chhabria,

The below discovery dispute is submitted by the parties pursuant to paragraph 15 of the Standing Order for Civil Cases Before Judge Vince Chhabria, which requires that the Parties submit a 5-page discovery dispute letter stating the nature and status of their dispute. The Parties jointly request a 2-page enlargement for this discovery dispute submission.

**Monsanto's Position**

Plaintiffs seek to challenge the confidentiality designations of nearly 200 documents (mostly non-public emails and similar communications as opposed to scientific studies) that Monsanto Company ("Monsanto") had in good faith designated as such pursuant to the Protective Order and advised Monsanto's counsel that additional confidentiality challenges should be expected. While Monsanto will work with plaintiffs to facilitate Court filings consistent with the Court's guidance on sealing, in the interest of efficient and inexpensive litigation, Monsanto requests that the Court otherwise defer confidentiality challenges until there is a litigation need to file documents.

**A. It is Premature to Litigate the Confidentiality of Unfiled Discovery Documents.**

The U.S. Supreme Court has stated that raw discovery materials "are not public components of a civil trial" and, "[t]herefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). The Court noted that such pretrial discovery, which "may be unrelated, or only tangentially related, to the underlying cause of action," *id.* at 33, "also may seriously implicate privacy interests of litigants and third parties" and its public release "could be damaging to reputation and privacy," *id.* at 35. Thus, "while the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records,' the same is not true of materials produced during discovery but not filed with the court." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (analyzing *Seattle Times* and Federal Rules)[1]; *see also In re Oracle Securities*

[1] *Bond* makes clear that a 2000 amendment to Federal Rule of Civil Procedure 5(d), "eliminated any implied right of public access to *unfiled* discovery emanating from the procedural rules." *Id.* at 1076. Plaintiffs' attempt to distinguish *Bond* by noting it involves a third party intevenor after the controversy is complete fails to acknowledge that the same distinction applies to *In re Roman Catholic Archbishop of*

*Litig.*, No. C-01-0988 MJJ, 2005 WL 6768164, at *11 (N.D. Cal. Aug. 5, 2005) ("A mere exchange of documents during pretrial discovery does not implicate the public right of access.").

In a Southern District of California case with a procedural posture similar to this one, the court refused to order the de-designation of unfiled discovery documents where, as here, the sole reason for that plaintiff's request to remove the confidential designation was "to allow the public to see the documents." *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV 1191-JLS(KSC), 2015 WL 12466532, at *1, 4 (S.D. Cal. July 16, 2015). Like here, plaintiff had "not even attempted to identify a legitimate purpose for its request to de-designate these documents and make them accessible to the public at this time." *Id.* at *7. The court found that "specific harm or prejudice" to defendant "will undoubtedly occur" should the documents be de-designated, because "plaintiff seeks to strike the 'confidentiality' designations for an improper purpose – to 'disparage and discredit' defendant in the media." *Id.* Plaintiff's "desire[ ] to try this case in the public arena rather than in a court of law" was an "improper purpose." *Id.* at *7. Therefore, the court held that, "[u]ntil and unless the challenged documents are proffered as evidence on an issue relevant to defendant's liability or some other material issue in this litigation, plaintiff's request for public disclosure of these documents is, at best, premature." *Id.*[2]

The reputational and privacy interests of Monsanto, and its interests in fair and efficient court proceedings, could be damaged if plaintiffs are permitted to use raw discovery material to launch a public, out-of-court attack. *See supra* pp.1-2 (discussing *Seattle Times*, *Bond*, *Crossfit*); *see also* Rule 26(c); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) ("selective and out-of-context disclosure may lead to confusion in the patient community and undeserved reputational harm"). But when Monsanto's counsel proposed to plaintiffs' counsel deferring confidentiality challenges until there is a litigation need, plaintiffs' counsel responded generally that plaintiffs did not want to litigate behind closed doors and that Monsanto could respond in the media. Not only does this potentially force Monsanto to make other internal documents public, but, as the *Crossfit* court noted, this compelled tit-for-tat would "increase[e] the potential for this case to digress into an incivility which would defeat the purpose of our adversarial system, which is intended to 'secure the just, speedy, and inexpensive determination

---

*Portland Oregon*, on which plaintiffs rely. The other Ninth Circuit cases plaintiffs cite were decided before the 2000 rules change. If plaintiffs' argument is that they should be allowed to release any documents produced by Monsanto that have not been filed in Court and determined to be non-confidential that argument is not supported by any public interest.

[2] Plaintiffs attempt to distinguish *Crossfit* by noting that the protective order in that case "required that confidential information can only be used for 'legitimate purposes of this litigation.'" Here, too, the Protective Order states that "Confidential Material shall be used (if otherwise relevant and admissible) solely for the litigation of this action, including any appeals…..Confidential Material shall not be used for any other purpose without separate written agreement of the Party that produced the Confidential Information." ECF No. 64 ¶ 11.

of every action and proceeding.'" *Crossfit*, 2015 WL 12466532, at *7 (quoting Fed. R. Civ. P. 1).[3]

**B. Mass Challenges to the Confidentiality of Unfiled Discovery Documents Absent Any Litigation Need Would Burden the Court and the Parties.**

The Court-approved Protective and Confidentiality Order was entered to facilitate speedy and efficient litigation in this Court – not media release of non-public Monsanto documents that may never be filed with the Court: "Due to the complexity of this action, which is estimated to involve millions of pages of documents, and to facilitate the flow of discovery material, at the time of initial production, the producing party may designate an entire document as 'Confidential' if it believes in good faith that any part of the document is confidential or if the document falls within a category of documents that the designating party believes is likely to contain a large volume of Confidential Material." *Id.* ¶ 4. That is what Monsanto did here, producing nearly 900,000 documents (estimated to total around 10 million pages) in a short period without need for discovery disputes over the relevancy of those documents to this bifurcated proceeding.[4] Very few of these documents will be considered and reasonably relied upon by the yet to be named experts. Although the Protective Order in this litigation allows for challenges to the confidentiality designation of up to 500 documents in a 30-day period, *Id.* ¶ 16.2, the purpose of the order will be upended should plaintiffs have free reign to force a document-by-document re-review of hundreds, perhaps thousands, of duly-designated documents for no purpose other than to release them to public view. The process of resolving confidentiality challenges disconnected from relevance and litigation need inevitably would be time consuming and expensive for the parties and Court.[5] *See* Rule 26(c) (permitting protection from undue burden or expense).

**C. Maintaining the Confidentiality of Unfiled Internal Documents Will Neither Prejudice Plaintiffs Nor Harm Public Interests.**

Plaintiffs are "not prejudiced in any way with the use of the documents" during the course of discovery, in consulting experts, or at trial. *Horner v. Cummings*, No. 1:14-CV-00639, 2015 WL 4590959, at *13 (M.D. Pa. July 29, 2015) (upholding "confidential" designation of

---

[3] It is difficult to square plaintiffs' claim that they are not interested in trying this case in public given their conduct to date and their argument that "there is a strong public interest in getting these documents out from the veil of secrecy."

[4] The bulk of documents Monsanto produced were the result of specific searches of Monsanto employees who are involved in the day-to-day operation of the company and therefore, because they involve such non-public information as internal business strategies and communications with outside consultants, Monsanto believes there is a good faith basis for its confidentiality designations. *See, e.g.*, Monsanto's Response ISO Pls.' Admin. Mot. to File Under Seal (ECF No. 110) at 3-4.

[5] To discuss 60 documents on the plaintiffs' list, it has already taken at least four hours of conference between counsel for the parties spread over two days in addition to many additional hours of attorney time preparing for the conferences, and those conferences left most challenges unresolved.

discovery materials in personal injury products liability litigation).[6] And while plaintiffs claim a "public health and safety" need, the public already is well aware of plaintiffs' allegations in this case – that Roundup allegedly can cause non-Hodgkin's lymphoma.[7] Going forward, the only "public health and safety" interest is whether there is a reliable scientific basis for causation in this case, which will be addressed by the parties' expert filings and arguments that ultimately will inform the decisions of this Court. *See Crossfit*, 2015 WL 12466532, at *7 (the public's interest in the resolution of the litigation on the merits "would not be advanced by the premature release of selected documents for the sole purpose of allowing one party to the litigation to attempt to discredit another in the public arena"); *Johnson v. City and Cnty. of San Francisco*, No. CV 09-5503 JSW, 2012 WL 104635, at *4 (N.D. Cal. Jan. 12, 2012) (noting that a public interest "in the outcome of the lawsuit" does not mean that the public has "an interest in the City's confidential documents").

## Plaintiffs' Position

Secrecy offends the principles of transparency and public oversight undergirding our judicial system. The protective order in this is case is an exception to that imperative. It allows Monsanto to designate as "confidential" those documents Monsanto believes, *in good faith*, constitute trade secrets or proprietary information. It, however, was never meant to allow Monsanto to quell public access to documents affecting the public health by using unsubstantiated and overbroad claims of trade secret. "It is well established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). "[T]his presumption can be rebutted only by a showing of good cause by the one seeking protection." *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417, 426 (9th Cir. 2011). This is why, for *each* document, a party must show that specific harm or prejudice would result from disclosure of trade secret or other information deserving protection. *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (underscore added). Information is not confidential merely because it would cause embarrassment upon release. *Welsh v. City & Cty. of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995). "Indeed, common sense tells us that the greater the motivation a corporation has to shield its operation, the greater the public's need to know." *Brown & Williamson*, 710 F.2d 1165, 1180 (6th Cir. 1983).

Monsanto has produced an estimated 10,000,000 pages of documents in this litigation, and, in doing so, its counsel has stamped roughly 85% of those pages "Confidential[8]." The

[6] Plaintiffs' complaint about the process proposed here is manufactured. The process in fact worked with plaintiffs' Pretrial Order No. 8 submission, because Monsanto was able to provide responses in time for plaintiffs to file even though plaintiffs unreasonably failed to start identifying any confidential documents they might use until nearly noon EST on the day of filing.

[7] For example, a recent Google search of "glyphosate cancer" pulled up nearly 500,000 results.

[8] It is estimated that over 8 million pages have been stamped "Confidential." A review of the documents demonstrates a clear abuse of the "confidentiality" designation which serves nothing other than to impede the progress of this litigation. However, to facilitate the flow of discovery, at this time, Plaintiffs are only proposing that the parties follow the challenge process as set forth in the Protective Order.



parties spent significant time negotiating a process to challenge those confidentiality designations which was entered as an Order of this Court on December 9, 2016. See, ECF Dkt 64, Protective and Confidentiality Order ("Protective Order"). At no time during the negotiations (which negotiations involved filing competing versions of a protective order followed by oral argument in the *Hardeman* matter and multiple hours of meet and confers) did Monsanto ever mention or request that confidentiality challenges be tied to a "litigation need." Now, because Monsanto desires to avoid public disclosure of embarrassing documents, it seeks to shift the burden by adding an undefined "litigation need" as a burden Plaintiff must satisfy prior to asserting a confidentiality challenge. Monsanto's request is not supported by the law, equity, or its prior behavior in this Multi-District Litigation.[9]

**1. The Court Has Already Ordered a Challenge Process and Monsanto Must Demonstrate Good Cause for Maintaining its Designations.**

Here, the Protective Order "does not confer blanket protections on all disclosures or responses to discovery and [] the protection it affords from public disclosure and use extends only to the information or items that are entitled to confidential treatment under the applicable legal principles" Protective Order at ¶ 2 (underscore added). In other words, the Parties have already considered whether non-confidential information will be subject to public disclosure, and the Court ordered in the affirmative. Similarly, by joint request of the Parties, the Court has already considered and ordered a specific process for challenging Monsanto's confidentiality designations, and nowhere does that court-ordered process require, or even mention, that such challenges must be tied to a "litigation need." Protective Order at ¶ 16.

Monsanto primarily relies on the *Seattle Times* and *Crossfit* cases, which are distinguished for three reasons[10]. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984); *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2015 WL 12466532 (S.D. Cal. July 16, 2015). *First*, the Protective Order at issue in *Seattle Times* prohibited disclosure "in any way except where necessary to prepare for and try the case." 467 U.S. at 27. Similarly, in *Crossfit*, the protective order required that confidential information can only be used for "legitimate purposes of this litigation." 2015 WL 12466532, at *7. No such prohibition exists here. In contrast, the Protective Order at issue here specifically contemplates and allows the public disclosure of **non-confidential** information – which confidentiality status is at issue here. Protective Order at ¶ 2.

*Second*, in *Seattle Times*, the United States Supreme Court was considering whether the mere existence of a protective order violated petitioner's rights under the First Amendment, it

[9] Monsanto's offer is disingenuous and there is already a dispute as to the meaning of "litigation need." For example, the United States was forced to file a Response to Plaintiffs' Motion to Compel the Deposition of Jess Rowland without reviewing an un-redacted copy of the motion or reviewing the documents filed under seal because Monsanto refuses to de-designate those documents and its lawyers have never responded to Plaintiffs' 5 separate requests to so provide that information to the United Sates' lawyers. This refusal, after the Court told Monsanto's counsel that it "is very difficult for me to imagine a justification for sealing any of those materials," [Jan 27, 2017 Transcript of Proceedings, 12:6-8], highlights the tactical games Monsanto is playing with its abuse of the Protective Order.

[10] The *Bond* case is equally inapplicable as it considers the standing of a third party intervenor after the controversy is complete and when no parties desire disclosure of the material – distinguishable from the facts here. *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009).

was not considering whether information was properly designated as confidential. Here, the question is more basic: whether Monsanto properly designated certain documents as confidential. As such, any argument between the parties should not be focused on the speculative effects of public disclosure, but should only be limited to whether or not the document was properly designated confidential in the first instance.

*Third*, Monsanto's reliance on *Crossfit* is misplaced. In *Crossfit*, the party asserting confidentiality "identified a specific harm or prejudice that will undoubtedly occur if the Court grants plaintiff's request to de-designate the challenged document[.]" 2015 WL 12466532, at *7. Specifically, the party challenging the documents was a competing exercise company and planned to use the internal documents to drum up business by attacking the defendant on Twitter and other social media. In asserting protection, the defendant provided "specific examples of plaintiff's efforts to attack and discredit defendant in social media" and, indeed, the "plaintiff readily admit[ed that it want[ed to use these documents to publicly discredit defendant in the media[.]" *Id.* None of this applies here—Plaintiffs are not competitors with Monsanto, have not attempted to discredit anyone in social media, and have taken no effort to attack Monsanto to leverage some competitive advantage. Plaintiffs have no plan to "attack and discredit defendant in social media" nor wish to "try [the] case in the public arena rather than in a court of law." *Id.* at *7. *Crossfit*, rather, represents the rare instance when, despite the prevailing view that discovery material be public, a party met its burden of showing that a real and particularized economic harm would come from public disclosure by a competing company. Monsanto has not even come close to meeting that burden here.

Put simply, the Protective Order here was negotiated with the Parties' recognition that many documents, consisting of millions of pages, would be produced in this litigation. In order to facilitate the free flow of information, the Parties would be free to designate whole documents, in good faith, <u>subject to challenge from the other side.</u> Protective Order at ¶¶ 5,16. Once a challenge is made, the "burden of persuasion in any such challenge proceeding shall be on the party asserting privilege or protection." Id. ¶ 17. Here, Monsanto makes no showing of good cause other than asserting general "reputational and privacy interests," which are insufficient as "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are not enough. *Crossfit, Inc.*, 2015 WL 12466532, at *4; *see also supra* p. 4 n. 1. Monsanto's failure to substantively address good cause, instead asserting Plaintiffs have not "even attempted to identify a legitimate purpose for [their] request," simultaneously fails to defend Monsanto's designation and improperly shifts the burden to Plaintiffs to persuade the Court to de-designate.

**2. There is No Requirement for a "Litigation Need."**

The relevant law and Protective Order squarely place the burden on the designating party (here, Monsanto) to prove each document is confidential. Order at ¶ 16; *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d at 426. By requesting Plaintiff prove an undefined "litigation need" for each document prior to even challenging the confidentiality of a document, Monsanto is again attempting to shift its burden. Further, putting aside the ambiguity of a "litigation need," it is unclear <u>when</u> Monsanto wants Plaintiffs to provide a list of "confidential" documents to de-designate. For example, the deadline for both Parties to file their EPA/IARC briefs was February 8, 2017. At 8:24 am PST on February 8, 2017, Plaintiffs sent to Monsanto a list of 8 documents and a section of Dr. Farmer's deposition testimony that they wished to include as exhibits to their brief, each had been marked confidential by Monsanto. Monsanto's

counsel declared our request to de-designate was "troublesome," late, prejudicial, and that they had insufficient time to review the documents. Yet, requiring Plaintiffs to provide Monsanto with a list of documents and proposed deposition testimony days in advance would severely prejudice Plaintiffs and provide Monsanto an unfair advantage. Monsanto can't have it both ways.

Here, challenges to blanket designations are the trade-off for the swift disclosure of information. Plaintiffs are only challenging 199 documents[11] out of "nearly 900,000." The Order allows for challenges to 500 documents every 30 days with no temporal limitation. Protective Order at 2, ¶ 5 (also meaning Plaintiffs' request cannot be "premature"). Not only is Monsanto's argument for a required "litigation need" unsupported by the plain terms of the Protective Order, but the argument that Plaintiffs might "have free reign to force a document-by-document re-review of hundreds, perhaps thousands, of duly designated documents," is specious. The Court will only be over-burdened if Monsanto continues to refuse de-designation.

**3. The Public Health and Safety Interests Outweigh Monsanto's Privacy Interests.**

Assuming *arguendo*, Monsanto was able to demonstrate good cause for its designations, *i.e.*, specific prejudice and harm from de-designating, the Court still must "balance the public and private interests to decide whether [maintaining] a protective order is necessary." *Crossfit, Inc.*, 2015 WL 12466532, at *4. Monsanto's argument that the "only 'public health and safety' interest is whether there is a reliable scientific basis for causation" misses the mark. Many of these documents show that Monsanto has engaged in a longstanding effort to control the science as it relates to its products and that Monsanto employees infiltrated the peer-review boards of scientific journals to "reject" any article that was contrary to Monsanto's business interests. Other documents demonstrate Monsanto's unabashed use of ghostwriting to generate publications, written by Monsanto, but published under supposedly "independent" scientist's names, without any disclosure of Monsanto's involvement. Indeed, some of these documents reveal old fashioned bullying, whereby Monsanto discredits or attacks a scientist if they deign to publish anything unfavorable about glyphosate or Roundup. These gross deviations from basic decency warrant absolutely no confidential protection, let alone this Court's departure from the principles of transparency that govern the judicial process. There is a strong public interest in getting these documents out from the veil of secrecy. Indeed, Monsanto is well aware of the need to get documents concerning its misconduct into the public domain. *In re Agent Orange Prod. Liab. Litig.*, 104 F.R.D. 559, 575 (E.D.N.Y. 1985), *aff'd, Agent Orange I*, 821 F.2d 139 (2d Cir. 1987).

Monsanto's Proposed Order is attached. Plaintiffs do not propose an Order, instead requesting the Court follow the process set forth in the Protective Order.

---

[11] Despite Monsanto's representations, the meet and confer narrowed the challenges. It is unknown at this time how many of the 199 challenges remain because Monsanto prematurely terminated the meet and confer process to file this dispute letter. Within 14 days, Plaintiffs will file a brief to include why 30 of the documents are improperly designated "confidential."

Dated: February 10, 2017

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY

/s/ Aimee Wagstaff, Michael Miller,
Robin Greenwald
Aimee H. Wagstaff, Esq.
ANDRUS WAGSTAFF, PC
7171 W. Alaska Dr.
Lakewood, CO 80226
aimee.wagstaff@andruswagstaff.com

Michael Miller Esq.
THE MILLER FIRM LLC
108 Railroad Ave
Orange, VA 22960
MMiller@millerfirmllc.com

Robin Greenwald, Esq.
WEITZ & LUXENBURG
700 Broadway
New York, NY 100003
RGreenwald@weitzlux.com

Co-Lead Counsel for Plaintiffs