UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEPOSITION OF JESS ROWLAND** |
| | **Date: February 27, 2017** |
| | **Time: 2:00pm** |
| | **Ctrm: 4, 17th floor** |
| | **Hon. Vince Chhabria** |
| This document relates to: ALL ACTIONS | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
DEPOSITION OF JESS ROWLAND**

### Introduction

Plaintiffs respectfully submit this reply brief in support of their Motion to Compel the Deposition of Jess Rowland, a private citizen who formerly served as Monsanto's chief "friend" within the EPA, and left EPA mysteriously within days of an "inadvertent" leak and subsequent retraction of an EPA draft report on the safety of glyphosate, that bore Mr. Rowland's signature.

It is not clear whether EPA has substantive opposition to this Motion; the opposition addresses only perceived procedural defects.  As explained below, there were no procedural defects in connection with the request to depose Mr. Rowland.[1]  Moreover, and of greater importance, it would benefit EPA, and the public as a whole, to learn about a former EPA employee's biases and misconduct and deter such conduct in the future.  Further, the Plaintiffs have a pressing need for Mr. Rowland's testimony to confirm his relationship with Monsanto and EPA's substantial role in protecting the Defendant's business, efforts subsequently embodied in government reports consistently cited by Monsanto in this Court and elsewhere.

### Importance of Discovery Sought

As stated in the original Motion, the circumstances underlying the relationship between Mr. Rowland and Monsanto are highly suspicious.  The exhibits to the original Motion remain under seal, and Plaintiffs will not complicate the record, particularly in light of the Court's comments on sealing,  by adding further exhibits under seal here; but Monsanto's production is replete with internal communication emphasizing an emergent need for the EPA Office of Pesticide Programs to release its report as quickly as possible.  The unreleased report is mentioned repeatedly in the context of ensuring it is released in time to preempt other potential

---

[1] If the Court finds that there were procedural defects, Plaintiffs will correct those defects immediately but contend that such corrections should not delay adjudication of the merits of this motion.

actions or inquiries about the dangers of glyphosate. Similarly troubling is that Monsanto knew in advance of it being leaked that the report would be favorable. The document production is also replete, well beyond the exhibits attached to the Motion, with references to in-person meetings with "Jess" and text messages between Rowland and Monsanto employees, showing Rowland straining, and often breaking, ethics and rules to benefit Monsanto's business.

Marion Copley, D.V.M., a 30-year career EPA scientist and recipient of numerous awards, wrote a letter to Mr. Rowland in March 2013, two years before the public debate about the carcinogenicity of glyphosate began in earnest. Dr. Copley was a senior toxicologist in the EPA's Health Effects Division, and she worked closely with Mr. Rowland. Diagnosed with terminal cancer, she had to retire for health reasons and passed away in January 2014. Before her death, she voiced her serious concerns to Mr. Rowland about his and EPA's handling of glyphosate.

Dr. Copley's dying declaration begins by naming no fewer than fourteen effects of glyphosate known to EPA, all of which are plausible mechanisms of action explaining the increase in lymphoma risk. See Letter dated March 24, 2013 from Dr. Copley to Jess Roland, Exhibit 1. As Dr. Copley notes, "any one of these mechanisms alone listed can cause tumors, but glyphosate causes all of them simultaneously." *Id*. Dr. Copley noted that glyphosate was previously classified by EPA as a "possible human carcinogen," and argued that, in accordance with EPA's knowledge about the chemical, EPA should classify glyphosate as a "probable human carcinogen." *Id*. Unfortunately, Dr. Copley died less than a year later and before IARC, the following year, reached this very conclusion.

Dr. Copley's letter points at corruption within EPA; she asks that Mr. Rowland consider her scientific assertions rather that "play your political conniving games with the science to favor

the registrants [pesticide manufacturers]." Dr. Copley confronts Mr. Rowland with allegations that he and Anna Lowit, who still works at EPA, "intimidated staff on CARC and changed HIARC and HASPOC final reports to favor industry." Dr. Copley's letter closes with an additional accusation toward Ms. Lowit: **"If anyone in OPP is taking bribes, it is her."** She requests that Mr. Rowland "for once do the right thing and don't make decisions based on how it affects your bonus."

Dr. Copley's letter, discovered after the filing of this Motion, substantiates many of Plaintiffs' suspicions regarding EPA's improper relationship with Monsanto. It highlights the need to take the testimony of Mr. Rowland on these issues now. Plaintiffs have explored the issues as much as they can with party witnesses; indeed, several witnesses acknowledge knowing Mr. Rowland but are unable (or unwilling) to provide any details of his relationship with Monsanto.

Dr. Copley's dying request was that Mr. Rowland "for once do the right thing and don't make decisions based on how it affects your bonus. You and Anna Lowit intimidated staff on CARC and changed HIARC and HASPOC final reports to favor industry."

### Service was Proper, Cured or Waived

Turning to the specific procedural defects cited by EPA in its opposition, Plaintiffs respectfully submit they are either inapplicable, have already been cured, or, at worst, would be grounds for a short continuance of this Motion to the next status conference.

EPA states that Plaintiffs have not properly served it with an "unredacted version of the Motion with Exhibits to the EPA" (Opp. at p.4). In fact, the motion and exhibits remain under seal because Defendant has not allowed Plaintiffs to provide an unredacted copy to the Department of Justice, despite Plaintiffs' repeated requests. Plaintiffs are bound by the

protective order; they cannot provide the unredacted motion to the United States Attorney without violating that agreed order. At the January 27, 2017 status conference, on the subject of the sealing of this Motion, the Court stated:

> And the parties, particularly companies, take a completely unreasonable view on what should be confidential and what material would cause them competitive harm. And so I just want to say at the outset, if I see a pattern of frivolous motions to seal, I will start sanctioning people. I'll start sanctioning parties and I will start sanctioning lawyers.

(Transcript at 7:5-10). The Court continued:

> Regarding the motion to seal the materials connected to the Rowland deposition, I've reviewed them. It is very difficult for me to imagine a justification for sealing any of those materials; however, I will -- and I will say that often a company will file a motion to seal materials because the company perceives the material as embarrassing. I do not believe in the vast majority of cases that it is appropriate to seal material merely because it might be embarrassing to the company.

(Id. at 12:5-13). In light of the Court's remarks, Plaintiffs requested that Monsanto voluntarily agree the Motion may be unsealed; that request has been made no less than **five** times in the past two weeks. On February 6, 2016, counsel for Monsanto finally replied "We will let you know by COB tomorrow." Yet, as of this filing, no reply has been forthcoming.

Regarding formal service of the Motion on the United States, the government's arguments are belied by the record. The government did, in fact, contact Plaintiffs and objected to the timing and service of the motion, originally noticed for January 27, 2017. In response, the United States and Plaintiffs negotiated and entered into a Stipulation regarding the briefing and hearing; as noted in that document, entered by the Court (Docket No. 119), "Counsel for the government requested until February 8, 2017 to file a response and … Plaintiffs' counsel agreed

to the request for additional time…. Plaintiffs and the United States have further agreed that, if necessary, a hearing on this Motion shall be held with this Court on February 22, 2017" (now continued by Court to February 27, 2017). Claims of defect in notice or service have been effectively waived by the joint stipulation.

All counsel registered for ECF in the Northern District of California consent to electronic service of all e-filed papers. *See e.g. E & J Gallo Winery v. Encana Energy Servs., Inc.,* No. CV-F-03-5412 AWILJO, 2005 WL 6408198, at *37 (E.D. Cal. July 5, 2005) (rejecting party's argument that emailing a notice of deposition was improper where attorney was registered ECF user under analogous Eastern District of California rules.): https://ecf.cand.uscourts.gov/cand/faq/general/service.htm. Manual service is required only for unregistered counsel and pro se litigants. *Id.* Although Assistant U.S. Attorney Norris had not yet appeared in the case at time of service, she was a registered ECF user in the Northern District of California. To the extent that emailing the motion constituted improper service, the Court may still overlook the procedural defect and rule on the substance of the motion where the party acknowledges receipt of the email service and there is no prejudice." *E&J Gallo* 2005 WL 6408198 at * 38. (Regarding the effects of e-mail service, "Defendants neither formally objected to Mr. Anderssen's February 17, 2005 deposition nor sought a protective order and such failure is commensurate to waiver of notice objections... the key issue is defense counsel's actions on February 16, 2005 to address Mr. Anderssen's deposition.").

### The Issue is Ripe for Decision

EPA also argues that the Touhy process has not been fully satisfied. This too is belied by the applicable law, as well as the specific dealings between the Plaintiffs and the EPA. The undersigned counsel complied fully with the applicable regulations, as directed by the EPA's in-

house counsel. On October 4, 2016, Mark Stilp, Esq., counsel for EPA, provided counsel with the Touhy regulations and stated that additional information was needed "to make a decision and provide a response that properly follows the Agency's 'Touhy' Regulations." Mr. Stilp further stated "the Agency needs additional information and/or a formal written request **(OK to send by email)"**. See email chain between Timothy Litzenburg and Mark Stilp, attached as Exhibit 2. Now, four months later, the United States' claim that Plaintiffs did not "formally" follow these regulations is wrong and indeed was waived by EPA's attorney. *Id*.

Further, it is not required that a subpoena be served for this issue to be ripe for decision. The regulation at issue states "this subpart sets forth procedures to be followed when an EPA employee **is requested or subpoenaed to provide testimony**." *See* Exhibit 2. Based on the regulation, coupled with the Agency's negotiations with counsel in this instance, formal issuance and service of a subpoena was not required here. This is confirmed by the decision in n *U.S. ex re. Lewis v. Walker*, 2009 WL 2611522 (M.D.Ga. 2009), where the District Court decided whether a "motion to compel [testimony by EPA employee] is improper because there is presently no pending federal subpoena as to [the witness.]" The court's ruling was that, given that the EPA followed the "procedures that apply when an employee is subpoenaed" and "contends that the denial was a 'final agency decision'", there was no requirement for the issuance of a subpoena. According to the court, "the lack of a pending federal subpoena is not fatal to the present motion to compel." *Id.* The relevant circumstances in this instance are identical. Nevertheless, at the time of this filing, a subpoena has been executed and is being served upon Mr. Rowland and EPA. See Exhibit 3.

The cases cited by EPA highlighting procedural defects are inapposite. In *Lopez v. Chertoff*, 2009 WL 1575209 (E.D.Cal. 2009), the Court denied a motion to compel because the

litigant had not stated "the nature and relevance of the official information sought," an undisputed *sine qua non* of the Touhy regulations. In the instant case, the United States cannot credibly argue that the Plaintiffs failed to state the nature and relevance of the official information sought, nor any other requirement of its *Touhy* regulations.

### No Separate Action Required nor Appropriate

Finally, EPA asserts that "it is well settled that the proper avenue for review of an agency action is through filing a separate APA action." See Opposition at p.6. That is not accurate. For example, in *Lewis,* the court held that a direct APA action is only necessary when the court hearing the controversy does not have jurisdiction to compel the testimony, such as a state court action that seeks the testimony of employees of federal agencies. *Lewis* held that "the Court sees no reason why it cannot decide as part of the presently pending qui tam action whether the EPA properly declined to permit testimony of its employee." In granting the motion to compel the agency's employee's testimony, the court explained that the EPA employee "likely possesses information that is relevant to [movant's] claims."

The subject is discussed exhaustively in *Ceroni v. 4Front Engineered Solutions, Inc.*(793 F.Supp.2d 1268)(D. Colorado 2011), the court held that a separate APA action is unnecessary and inappropriate <u>when the request pertains to an existing federal action</u> (*citing Watts v. Securities and Exchange Comm.,* 482 F.3d 501, 508 (D.C.Cir.2007); *Linder v. Calero–Portocarrero,* 251 F.3d 178, 181 (D.C.Cir.2001); *United States Environmental Protection Agency v. General Electric,* 197 F.3d 592, 599 (2d Cir.1999); *Johnson v. Folino,* 528 F.Supp.2d 548 (E.D.Penn.2007); all holding same).

**Conclusion:**

Plaintiffs have multiple bases to compel the testimony of Mr. Rowland, a former employee of the EPA who was subject to undue and untoward influence by Monsanto. Mr. Rowland operated under Monsanto's influence to cause EPA's position and publications to support Monsanto's business. Thus, and for all the foregoing reasons, Plaintiffs' Motion to Compel the Deposition of Jess Rowland should be granted.,

DATED:  February 10, 2017            Respectfully submitted,

/s Robin Greenwald, Michael Miller and Aimee Wagstaff
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

Aimee H. Wagstaff
Aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 720-255-7623

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2017 I electronically filed this Opposition using the CM/ECF system which will send a notification of such filing to counsel of record.

/s/ Michael Miller

## DECLARATION

I, Michael Miller, declare:

1. I am a member of of the executive committee of MDL 2741. I make this declaration in relation to Motion to Compel Deposition of Jess Rowland. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of February 2017

/s/ Michael Miller