Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Robert E. Johnston (*pro hac vice*)
(rjohnston@hollingsworthllp.com)
James M. Sullivan (*pro hac vice*)
(jsullivan@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 16-md-02741-VC <br><br> MDL No. 2741 |
| This document relates to: <br><br> ALL ACTIONS | **MONSANTO COMPANY'S RESPONSE IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL AND RELATED MOTION TO MAINTAIN CONFIDENTIALITY** |

Monsanto Company ("Monsanto") seeks to adhere to this Court's guidance that the sealing of documents *properly* attached to court filings should be the exception, rather than the rule. 1/27/17 Case Mgmt. Conf. Tr. at 7:1-13; 12:5-13. Plaintiffs' counsel, however, appear to have interpreted those comments by the Court as *carte blanche* for attaching to discovery and case management filings extraneous documents obtained from Monsanto's internal files that are tangential at most to resolving the merits of this litigation. Plaintiffs' opportunistic approach requires devoting unnecessary resources to the question of sealing documents that may never need to be filed or otherwise presented to the Court. Moreover, plaintiffs' practice is inconsistent with the efficiency and fairness of the Court's Standing Order for Civil Cases, which

1 precludes filing exhibits to a discovery dispute letter unless requested by the Court; is
2 inconsistent with the provision of the Protective Order that "Confidential Material shall be used
3 (if otherwise relevant and admissible) solely for the litigation of this action," *id.* ¶ 11, ECF No.
4 64; and is an end run around the U.S. Supreme Court and other authorities discussed below
5 honoring the private nature of raw discovery material until there is a litigation need to file such
6 material.  It is clear that plaintiffs wish to try this case in the court of public opinion rather than
7 this Court of law, and to go beyond the general causation issues ordered by this Court.
8 Monsanto requests that the Court order that discovery material not be filed as exhibits to any
9 discovery or case management filings unless requested by the Court or that the Court provide
10 other guidance on how it wishes the parties to proceed when there is a disagreement as to the
11 relevancy of confidential discovery documents to a discovery or case management issue that
12 must be briefed.
13      In this instance, the Court asked the parties to brief a purely legal question.  The Court
14 ordered "the parties to submit briefing discussing: (1) whether alleged flaws and/or biases in
15 EPA or IARC methods, studies, reports, or conclusions are relevant to general causation; and (2)
16 if so, what material is needed to assess allegations about those flaws and/or biases."  PTO 8, ECF
17 No. 120.  The Court further clarified the legal nature of the inquiry stating:  "The parties should
18 cite any authority that speaks to these questions, regardless of whether that authority is favorable
19 or unfavorable to their respective positions."  *Id.*  Not only did plaintiffs elect to attach irrelevant
20 discovery documents to their response, they unreasonably delayed until the day that brief was
21 due to request Monsanto's position (via email to counsel) on whether the numerous documents
22 they wished to file should be sealed.  Monsanto timely agreed plaintiffs could file some of the
23 documents publicly in whole or part.  The remaining discovery material not only lacks relevance
24 to the legal positions requested by PTO 8, but these documents also should be sealed for other
25 reasons, including as detailed in the accompanying Declaration.  For example, many of the
26 documents plaintiffs attach to their brief contain commercially sensitive internal company
27 information and involve communications with third-parties not before the Court whose protected
28

personal or commercial interests are potentially compromised if the documents are publicly revealed.

## I. Irrelevant Documents Attached To Tangential, Non-Dispositive Submissions Should Remain Sealed Or Be Stricken From The Court's Docket.

### A. Plaintiffs Cannot Manufacture a Public Right of Access to Discovery Materials.

The multiple internal Monsanto documents plaintiffs propose filing publicly with their PTO 8 brief do not address the legal question "whether alleged flaws and/or biases in EPA or IARC methods, studies, reports, or conclusions are relevant to general causation" under the Court's Federal Rule of Evidence 702 *Daubert* inquiry but, instead, at most relate to the parties' factual disputes over the existence or absence of those alleged flaws and/or biases.[1]  When documents are tangential to the merits of the briefing at issue, they should not be unsealed as public interest is minimal in the release of such documents.  *Barnes v. Hershey Co.*, No. 3:12-CV-01334-CRB, 2015 WL 1814293, at *3 (N.D. Cal. Apr. 21, 2015) (finding good cause to seal where "the public interest in these emails is minimal, as they relate to a technical matter in a discovery order and bear only tangentially, if at all, to the questions at issue in the litigation"); *see also GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 3068638, at *4 (D. Ariz. Jun. 1, 2016) (allowing exhibit to summary judgment motion to be filed under seal where "this information is merely tangentially related to the merits of RPost's motion" so it "will have no impact on the public's need to understand court proceedings"); *G & C Auto Body Inc. v. Geico Gen. Ins. Co.*, No. C06-04898 MJJ, 2008 WL 687372, at *3 (N.D. Cal. Mar. 11, 2008) ("GEICO has adequately established 'good cause' to seal this document because the DOI does not consider the document public and there is presently no reason related to this litigation to place the document in the public record.").

As an alternative to sealing, the Court may exercise its discretion to have the documents stricken from the docket.  *See, e.g.*, *Holloway v. Gilead Scis., Inc.*, No. 16-CV-02320-VC, 2016 WL 3526060, at *2 (N.D. Cal. June 23, 2016) (Chhabria, J.) (striking exhibits after finding the

---

[1] Monsanto does not concede the admissibility or relevancy of the documents for any purpose.

associated brief moot); *Minebea Co. Ltd. v. Papst*, 221 F.R.D. 11, 11-12 (D.D.C. 2004) (striking exhibits filed in support of non-dispositive motion, and directing the parties in the future not to file exhibits to non-dispositive motions without leave of court).

Monsanto seeks to avoid such unnecessary exhibits to discovery and case management filings here and in the future. Plaintiffs' practice is inconsistent with the efficiency and fairness of the Court's Standing Order for Civil Cases Before Judge Vince Chhabria, which precludes filing exhibits to a discovery dispute letter unless requested by the Court. *See id.* at ¶ 15. The filing of such extraneous exhibits also is inconsistent with the provision of the Protective Order that "Confidential Material shall be used (if otherwise relevant and admissible) solely for the litigation of this action," *id.* ¶ 11, ECF No. 64.

Although plaintiffs attempt to coat these documents with the patina of public interest by filing them with a court submission, they are not properly relevant to – or necessary for – the PTO 8 brief, and so no public interest is actually triggered; these private Monsanto documents are instead more like pure discovery documents for which no public right of access applies. As the United States Supreme Court has stated, a litigant's private documents and information do not become public just because they have been turned over in discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Accordingly, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id*. The Court noted that such pretrial discovery of private information, which "may be unrelated, or only tangentially related, to the underlying cause of action," *id.*, "also may seriously implicate privacy interests of litigants and third parties," and its public release "could be damaging to reputation and privacy," *id.* at 35. The Court held that litigants do not have "an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Id.* at 31. Thus, "while the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records,' the same is not true of materials produced during discovery but not filed with the court." *Bond v. Utreras*, 585 F.3d 1061, 1073, 1076 (7th Cir. 2009) (2000 amendment to Federal Rule of Civil Procedure 5(d)

"eliminated any implied right of public access to *unfiled* discovery emanating from the procedural rules"); *see also In re Oracle Sec. Litig.*, No. C-01-0988 MJJ, 2005 WL 6768164, at *11 (N.D. Cal. Aug. 5, 2005) ("A mere exchange of documents during pretrial discovery does not implicate the public right of access."); *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges), courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible.").

### B. Plaintiffs' Practice Appears Aimed at Prematurely Exposing Confidential Documents to the Public.

During the meet and confer process on confidentiality designations, plaintiffs' counsel made it clear that they think the public should see Monsanto's private, internal business documents and communications – whether they have been filed with this Court or not. *See* Jt. Discovery Ltr. Brief on Confidentiality Challenges at 2, ECF No. 140; *id.* at 7 (expressing a desire to "get[ ] these documents out from the veil of secrecy"). Anti-Monsanto groups like U.S. Right to Know and media entities like The Huffington Post are monitoring the docket of this case, looking for the release of cherry-picked confidential materials that purport to advance plaintiffs' narrative. Through previous filings unrelated to the general causation phase of this litigation, plaintiffs' counsel already has provided the press with general descriptions of documents presently marked confidential.[2] Plaintiffs' counsel Robin Greenwald has appeared on the television show "The Ring of Fire" – hosted by an attorney who regularly represents personal injury plaintiffs, Mike Papantonio, and carried on the RT (Russia Today) network – to discuss this case and her desire to get information discovered in the litigation into the public domain.[3]

---

[2] *See, e.g.,* Monsanto, EPA Seek to Keep Talks About Glyphosate Cancer Review a Secret, Jan. 18, 2017, http://www.huffingtonpost.com/carey-gillam/monsanto-epa-seek-to-keep_b_14250572.html (discussing briefing in this Court regarding sealing correspondence between Monsanto and regulatory authorities).

[3] *See* https://www.youtube.com/watch?v=KCOjazEXPww.

Working with these groups and press outlets,[4] plaintiffs' counsel actively and publicly are advancing their preferred theory of the case.

### C. The Premature Release of Selected, Out-Of-Context, Tangential Documents to the Public Would Unfairly Prejudice Monsanto.

#### i. Monsanto Could Suffer Irreparable Competitive Harm.

The release of cherry-picked documents without proper and necessary context "could be potentially prejudicial to defendant's business or operations and to the fairness and efficiency of this litigation." *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV 1191-JLS(KSC), 2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015). For example, many of the documents attached to plaintiffs' filing concern confidential analysis of scientific studies or business strategies of Monsanto. The public release of such documents may cause irreparable competitive harm to Monsanto. *See, e.g., Barnes*, 2015 WL 1814293, at *3 (granting a motion to seal documents regarding sales strategies); *Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2014 WL 5598222, at *4 (N.D. Cal. Nov. 3, 2014) (granting a motion to seal analysis of study results); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 404 (E.D.N.Y. 2007) (noting that documents which reveal "confidential preliminary research, development ideas, commercial information, product planning, and employee training techniques . . . are included within the kind of documents protectable under Rule 26(c)"); Buck Decl. (Ex. 1) ¶ 4 (PTO 8 brief Ex. 5 is a draft PowerPoint outlining in detail a confidential, proposed strategic business plan), ¶ 8 (PTO 8 brief Ex. 11 involves an internal email chain discussing the planning and strategy of a scientific paper), ¶ 9 (PTO 8 brief Ex. 12 is an internal email chain in which Monsanto employees discuss strategy regarding glyphosate), ¶ 10 (PTO 8 brief Ex. 13 is an internal email in which Monsanto employees strategize on what to include in a proprietary scientific study); *see also* Part II *infra*.

---

[4] *See* What Killed Jack McCall? A California Farmer Dies and a Case Against Monsanto Takes Root, May 6, 2016, http://www.huffingtonpost.com/carey-gillam/what-killed-jack-mccall-a_b_9852216.html (quoting Baum Hedlund attorney R. Brent Wisner: "It's going to be a fairly large litigation when it's all said and done. We're confident we'll be able to show that Monsanto controlled research and suppressed science."); https://www.facebook.com/BaumHedlund (plaintiffs' firm's Facebook page announcing a "Press event on Monsanto v. California on listing glyphosate as a carcinogen') (last accessed Feb. 11, 2017).

### ii. Trial by Press Is Improper and Could Taint Potential Future Juries.

Plaintiffs' attempt to force premature release of these documents is harmful also for its potential to taint any possible future juries and have this case tried in the press instead of in this Court. *See House v. Hatch,* 527 F.3d 1010, 1023 (10th Cir. 2008) ("The Supreme Court has determined that intense pretrial publicity may create either presumed prejudice or actual prejudice in a jury pool." (citing *Murphy v. Florida,* 421 U.S. 794 (1975) and listing additional cases)); *see also United States v. Honken,* 438 F. Supp. 2d 983, 987 (N.D. Iowa 2004) (taking measures to close hearing due to "pretrial publicity" and concerns that such publicity could taint the jury pool).  Allowing plaintiffs to file such documents publicly as attachments to procedural, non-merits motions falsely and prematurely manufactures a public dispute and increases the danger that Monsanto will be compelled to address the contents of these irrelevant documents extra-judicially, in the press, to counter the selective release and spin of plaintiffs' counsel and/or their like-minded colleagues.

Litigation in the press is not in the public interest.  *See Crossfit*, 2015 WL 12466532, at *7 (The public's "interest would not be advanced by the premature release of selected documents for the sole purpose of allowing one party to the litigation to attempt to discredit another in the public arena.  In response, the other party might feel compelled to respond in kind, thereby increasing the potential for this case to digress into an incivility which would defeat the purpose of our adversarial system, which is intended to 'secure the just, speedy, and inexpensive determination of every action and proceeding.'  Fed. R. Civ. P. 1.").  As the United States Supreme Court has noted, "freedom of discussion . . . must not be allowed to divert the trial from the very purpose of a court system to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures." *Sheppard v. Maxwell*, 384 U.S. 333, 350–51 (1966) ("(l)egal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."); *see also id.* at 356 (deploring "the manner in which the news media inflamed and prejudiced the public"); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1080 n. 6 (1991) ("The basic premise of our legal system is that law suits should be

tried in court, not in the media."). Other courts have noted the dangers of a case being tried in the media rather than on the merits, in a court of law. *See, e.g., United States v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000) (finding "reasonable" district court's concern that parties "would attempt to use the media to influence the potential jury pool and create a prejudicial media atmosphere"); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 612 (2d Cir. 1988) (noting, in the criminal context, that "a hemorrhage of small leaks of secret grand jury information released to the media" leads to "'trial by newspapers,' . . . and it is the defendant who suffers the 'distorted consequences.'" (quoting *Pennekamp v. Florida,* 328 U.S. 331, 361, 363 (1946) (Frankfurter, J. concurring))); *United States v. Grace*, 401 F. Supp. 2d 1057, 1060-61 (D. Mont. 2005) (acting to "prevent prejudicial pretrial publicity" so the "case will not be tried in the press. It will be tried in the courthouse and nowhere else.").

The above reasons alone are sufficient to support all of Monsanto's sealing requests here.

## II. Good Cause Exists To Seal The Documents Designated By Monsanto As Confidential.

Plaintiffs have filed the sealed documents and deposition transcript excerpts in support of a non-dispositive discovery motion that is at most tangential to the merits of this litigation. "The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Kamakana v. City & Cnty. of Honolulu*, 447 F. 3d 1172, 1179, 1180 (9th Cir. 2006). "In light of the weaker public interest in nondispositive materials," the Ninth Circuit applies "the 'good cause' standard [of Federal Rule of Civil Procedure 26(c)] when parties wish to keep them under seal," at least when as here the filing is unrelated or tangential to the merits. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). Under the "good cause" standard, district courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F. 3d 1206, 1211 (9th Cir. 2002) (citing former Fed. R. Civ. P. 26(c)(7), now codified as Fed. R. Civ. P. 26(c)(1)(G));

1  *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a
2  party or person from annoyance, embarrassment, oppression, or undue burden or expense.").
3  　　　　Courts in this Circuit have found good cause for sealing deposition transcripts and other
4  documents based on business interests in protecting confidential information.  *See, e.g., Clearly*
5  *Food & Beverage Co. v. Top Shelf Beverages, Inc.*, 102 F. Supp. 3d 1154, 1178 (W.D. Wash.
6  2015) (good cause to seal exhibits containing confidential strategies and business plans);
7  *Bohannon*, 2014 WL 5598222, at *3-4 (good cause to seal internal corporate discussions);
8  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 4805332, at *1
9  (N.D. Cal. Sept. 25, 2014) (granting motion to seal portions of deposition transcripts that
10 contained "commercially sensitive, proprietary technical details regarding research and
11 development"); *Clay v. Cytosport, Inc.*, No. 15-CV-00165-L (DHB), 2016 WL 6082314, at *8
12 (S.D. Cal. Oct. 18, 2016) (good cause to seal deposition transcripts containing "sensitive
13 business information that could pose a risk to Defendant if discovered by a competitor"); *see*
14 *also Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. C 12-00747 RS, 2013 WL
15 3656379, at *1 n.1 (N.D. Cal. July 12, 2013) (granting motion to seal partial deposition transcript
16 that contained highly confidential business information regarding products and chemical
17 formulations); *G & C Auto Body Inc. v. Geico Gen. Ins. Co.*, No. C06-04898 MJJ, 2008 WL
18 687372, at *3 (N.D. Cal. Mar. 11, 2008) (good cause to seal document with "proprietary
19 information concerning business practices").
20 　　　　Some of the documents at issue contain information regarding or exchanges with outside
21 consultants or with other companies who are not parties to the dispute.  Courts have acted to
22 protect the privacy and reputational interests of non-parties who are not before them.  *See Chloe*
23 *SAS, et al. v. Sawabeh Info. Servs. Co., et al.*, No. CV1104147MMMMANX, 2015 WL
24 12734004, Slip Op. (C.D. Cal. Feb. 4, 2015) (sealing character evidence concerning plaintiffs'
25 private investigator because "[n]on-party privacy interests, particularly those related to sensitive
26 matters such as are at issue here, are sufficient to satisfy the 'good cause' standard for sealing.");
27 *In re NCAA Student-Athlete Name and Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC),
28

2013 WL 1997252, at *2 (N.D. Cal. May 13, 2013) ("good cause" to seal agreements involving non-parties); *Myhrvold v. Lodsys Grp., LLC*, No. C13-1173RAJ, 2013 WL 5488791, at *4 (W.D. Wash. Sept. 27, 2013) (good cause to maintain confidentiality of license agreements with other companies "which also implicate the interests of absent parties who have had no opportunity to assert their interests"). For the reasons outlined in the attached Declaration, good cause for sealing the documents designated as confidential exists because all the documents concern confidential business information and strategy, because several implicate the privacy and reputational interests of non-parties, and because many or all of the documents are irrelevant to this Court's general causation inquiry.

For the reasons detailed above and in the accompanying Declaration, Monsanto requests that the Court order that these nine documents and select deposition transcript excerpts and the portions of plaintiffs' PTO 8 brief that characterize and quote from them be sealed from the public record and remain confidential. Monsanto also respectfully requests that the Court order that discovery material not be filed as exhibits to any future discovery or case management filings unless requested by the Court, and/or that the Court provide other guidance on how it wishes the parties to proceed when there is a disagreement as to the relevancy of filing confidential discovery documents in support of a discovery or case management issue.

DATED: February 13, 2017                             Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Robert E. Johnston (*pro hac vice*)
(rjohnston@hollingsworthllp.com)
James M. Sullivan (*pro hac vice*)
(jsullivan@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY