**Aimee H. Wagstaff, Esq., SBN 278480**
ANDRUS WAGSTAFF, PC
7171 West Alaska Drive
Lakewood, CO 80226
Tel:     720-255-7623
Email: aimee.wagstaff@andruswagstaff.com

**Robin L Greenwald, Esq. (*pro hac vice*)**
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Tel:     212-558-5802
Email: rgreenwald@weitzlux.com

**Michael J. Miller, Esq. (*pro hac vice*)**
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel:     540-672-4224
Email: mmiller@millerfirmllc.com

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | **MDL No. 2741** |
| | |
| This document relates to all cases | **PLAINTIFFS' REPLY IN OPPOSITION TO ADMINISTRATIVE MOTION TO FILE UNDER SEAL AND RELATED MOTION TO MAINTAIN CONFIDENTIALITY** |

### <u>Introduction</u>

Monsanto needlessly requests relief from this Court to maintain confidentiality over a number of documents attached to Plaintiffs' response to Pretrial Order No. 8 ("PTO 8"). In its February 13, 2017 Response, Monsanto made two requests: (1) that the Court allow nine (9) documents and a portion of Donna Farmer, PhD's deposition testimony to remain under seal; and (2) that the Court enter an order prohibiting Plaintiffs from attaching discovery documents to "motions or other filings" regarding discovery or case management issues absent a specific request from the Court.[1] To be clear, this request by Monsanto even includes documents <u>not</u> designated confidential. Monsanto's request that the Court limit or prohibit Plaintiffs' ability to use documentary evidence to support their prosecution of this matter

---

[1] This Motion violates local rule Civ.L.R. 7-2 and is not properly before the Court.

is offensive, violates Plaintiffs' due process, and is a red herring meant to distract the Court from the real issue: Monsanto has designated over 85% of its documents confidential (thousands of which are wrongfully designated and are embarrassing or demonstrate company misconduct) and Monsanto wants to keep those non-confidential documents hidden from the public. Last week, and in complete contrast to the negotiated Protective Order, Monsanto created the term "litigation need" and filed a discovery letter requesting that Plaintiffs only be allowed to challenge confidentiality designations after proving a "litigation need." Now, Monsanto has taken its request even further and is requesting the Court prohibit Plaintiffs from attaching _any_ documents produced in discovery (whether designated confidential or not and whether produced by Monsanto or not) to _any_ "motion[] or other filing[] regarding discovery or case management issues." See, Proposed Order Dkt. 143-2.  This request is transparent and for the reasons set forth below, this Court should deny both of Monsanto's pleas.

### A.  Plaintiffs' Exhibits Are Not Confidential and Are Directly Responsive to PTO 8

Plaintiffs' use of exhibits to support their response to PTO 8 is specifically responsive to the Court's directive that the parties "submit briefing discussing: (1) whether alleged flaws and/or biases in EPA or IARC methods, studies, reports, or conclusions are relevant to general causation; and (2) if so, what material is needed to assess allegations about those flaws and/or biases."  Dkt. 120.  Thus, Plaintiffs submitted exhibits to support factual statements that, if left uncited, could be considered baseless, thus hindering Plaintiffs' arguments.  Moreover, and contrary to Monsanto's accusations, in deciding to use each exhibit, Plaintiffs considered and accounted for Monsanto's right to maintain confidentiality over trade secrets and other confidential business information.

As set forth fully in Plaintiffs' PTO 8 briefing, the exhibits are directly relevant to bias in EPA's methodology because they show Monsanto engaging in a pattern of selective submission of information, ghostwriting, and other efforts that injected biases or flaws into EPA's review of glyphosate.  On the other hand, Monsanto frames the Court's PTO 8 inquiry as a "purely legal question" despite the fact that

1    the inquiry necessary called for a discussion of alleged "flaws and/or biases" in IARC or EPA's

2    "methods, studies, reports, or conclusions"—proof of which requires a factual showing.

3    Thus, Monsanto reads the Court's inquiry contained in PTO 8 too narrowly. The question

4    presented is whether: "alleged flaws and/or biases in EPA or IARC methods, studies, reports, or

5    conclusions are relevant to general causation . . . ." See, PTO 8. As argued in Plaintiffs' PTO 8 Briefing,

6    IARC's analysis is tantamount to a general causation analysis, while EPA's conclusions are limited to a

7    "risk assessment." Plaintiffs are entitled to explain why they are making this assertion; in fact, the Court

8    specifically requested briefing on this issue. Each and every exhibit attached by Plaintiffs to its PTO 8

9    Briefing is directly relevant to Plaintiffs' argument. Contrary to Monsanto's assertion, Plaintiffs did not

10   opportunistically attach documents for the sole reason of harassing or prejudicing Monsanto; but rather,

11   selectively chose documents in support of their argument. By way of example, Monsanto argues that

12   Plaintiffs' Ex. 9, comprised of two email chains, should remain under seal because they show

13   "employees strategizing regarding a potential meeting with the [EPA]" and "[p]ublic disclosure of this

14   document would cause harm to Monsanto by revealing Monsanto's internal strategies and processes for

15   
16   assessing potential scientific and regulatory actions and its approach to communications with the EPA."

17   
18   Dec. of Robyn D. Buck at 4, ¶ 6 [Dkt. 143-1].

19   Putting aside that communications with a federal agency should not be confidential, and contrary

20   to Monsanto's characterization of Ex. 9, this email chain actually shows that the EPA requested

21   Monsanto submit additional studies regarding glyphosate because the EPA was concerned about flaws

22   in its pesticide registration analysis following IARC's classification of glyphosate as a 2A carcinogen.

23   There is nothing confidential about this request from EPA nor is there any reason to think that public

24   disclosure of any such a request directed toward Monsanto would cause it competitive harm. Here,

25   Monsanto cannot even credibly claim the documents are embarrassing, let alone prejudicial. Most

26   
27   importantly, this document is germane to Plaintiffs' PTO 8 argument that EPA's methodology and

28   conclusions are fundamentally unsound in contrast with those of IARC. As such, the Court should reject

Andrus Wagstaff, P.C.

Monsanto's arguments that documents attached to Plaintiffs' PTO 8 Briefing are "irrelevant" or "tangential." Monsanto's argument that the documents are tangential is especially perplexing given the Court specifically requested the briefing submitted by Plaintiffs. *See* PTO No. 8.

In any event, the legal authority cited by Monsanto in support of these arguments is readily distinguishable as in those cases, the sealed documents were, in fact, tangential to the litigation. *See, e.g., Barnes v. Hershey Co.,* 2015 WL 1814293, at *2 (N.D. Cal. Apr. 21, 2015) (declining to seal certain documents and sealing documents containing confidential, trade secret information because the litigation was centered around an *employment* dispute). In fact, in *Hershey*, the court could find no "compelling reasons" to seal performance reviews and termination decisions as they were central to plaintiff's claims and because the "privacy interests were minimal and [] the public's interest in the disclosure of these documents for the legitimacy of the judicial process [was] heightened." *Id.*

Here, it is clear that Monsanto is opposed to making these documents public because some documents may be embarrassing or evidence company wrongdoing. However, as this Court has noted, that is not enough, and Monsanto is unable to cite a single case in which such a justification, without more, has been accepted by a court. See, January 27, 2017 Transcript of Proceedings, 12:8-13, **Ex. 1**. Rather, as in *Hershey*, documents related to flaws or bias in EPA methodology are central to Plaintiffs' allegations, and are certainly central to the Court's inquiry laid out in PTO 8; and therefore, are not properly shielded from public view. The public's interest in these documents is "heightened." As such, the Court should disregard Monsanto's arguments insofar as they allege Plaintiffs' documents attached to their PTO 8 Briefing are "irrelevant" or "tangential.[2]" These documents are directly related, and necessary, to providing the response requested by the Court.[3]

---

[2]  The "tangential" analysis is not the proper analysis anyway, as the Parties have already stipulated to a de-designation challenge process. *See*, Joint Discovery letter filed on February 10, 2017 regarding the de-designation of "confidential" documents. Plaintiffs incorporate their portion of that joint letter as if fully set forth herein. Dkt. 140.

[3]  Defendants also argue the Court could simply strike Plaintiffs' exhibits. In support of this proposition, they cite a case in which the Court struck exhibits after finding the associated brief *moot*. Def.'s Resp. at 3-4. Here, the Court *sua sponte* requested the PTO 8 briefing, so it is unlikely the Court will determine that the briefing is now

Andrus Wagstaff, P.C.

Finally, Monsanto's reliance upon *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) remains misplaced as the parties have negotiated and agreed to a Protective and Confidentiality Order. No matter how Monsanto attempts to make an end-run around this bargained for agreement, the Court should not allow Monsanto to continue abusing the Protective Order because they now have buyer's remorse. Here, the Protective Order "does not confer blanket protections on all disclosures or responses to discovery and [] ***the protection it affords from public disclosure and use extends only to the information or items that are entitled to confidential treatment under the applicable legal principles***" Protective and Confidentiality Order at ¶ 2 (emphasis added), Dkt. 64. In other words, the parties have already considered whether non-confidential information will be subject to public disclosure, and the Court ordered in the affirmative.

For these reasons, as explained more fully herein, Plaintiffs respectfully request that the Court deny Monsanto's request to keep documents attached to Plaintiffs' PTO 8 briefing under seal.

**B.  Monsanto Is Already Litigating The Case In The Court Of Public Opinion**

A significant portion of Monsanto's brief argues "irreparable harm" if *non-confidential* documents are made public, and accuses Plaintiffs of engaging in 'trial by press.' In truth, it is Monsanto who is attempting to control the media and public opinion through its billion-dollar marketing/lobbying machine.

In response to a formal discovery request from Plaintiffs to Monsanto, Monsanto's attorney provided an incomplete list of website domains Monsanto owns or controls in the United States. **Ex. 2.**[4] Monsanto refused to provide any website domain maintained outside of the United States, even though

---

moot; and therefore, the Court should disregard Monsanto's request to strike the documents. Moreover, Monsanto's additional cited case, *Mineba Co. Ltd. v. Papst*, 221 F.R.D. 11, 11-12 (D.D.C. 2004), is an example where the court had "previously expressed its frustration at the unnecessary volume of paper with which counsel feel compelled to inundated the Court." *Mineba*, 221 F.R.D. at 12. No such circumstances exist here.

[4]  Plaintiffs have yet to receive a response from Monsanto itself.  Monsanto designated this attorney letter as "Confidential" despite the fact the response is primarily a list of publicly accessible website domains, thereby forcing Plaintiffs to file the letter under seal and redact the names of public websites in this Reply. This is illustrative of the more general problem Plaintiffs are facing: Monsanto's continuing and unreasonable refusal to de-designate documents that are not confidential.

such websites can be accessed within the United States. *Id.* On February 15, 2017, undersigned counsel randomly selected the second website domain from the list entitled "███████████████" and viewed contents that were posted to the website after the first Roundup® case was filed on September 22, 2015. From that date forward, ███████████ exemplifies the textbook definition of litigating a case in the press. The entries on ██████████ attack the credibility of IARC's assessment, bolster EPA's conclusions (which, of course, are compromised by Monsanto's intentional efforts to inject biases and flaws into the agency's process), directly address "recent litigation," and accuse Plaintiffs' attorneys of solicitation. *See* **Ex. 3A**, "Here We Go Again: Dr. Oz and Glyphosate" dated September 24, 2015 (alleging "IARC took a very different approach and selectively included and interpreted data to classify glyphosate in Category 2A. The IARC classification conflicts with the overwhelming consensus of regulatory agencies . . . ."); **Ex. 3B**, "Addressing Recent Litigation on Glyphosate" dated October 8, 2015 ("after the classification of glyphosate by IARC in Category 2A in March 2015, plaintiffs' attorneys in the United States began soliciting plaintiff for potential lawsuits . . . we believe glyphosate is safe for human health when used as labeled and that this suit is without merit"); **Ex. 3C**, "Have You Heard That Glyphosate Causes Cancer" dated April 20, 2016 ("You may have heard that glyphosate causes cancer? You may have also heard recently that red meat causes cancer. If you have, it's because last year, a group called the International Agency for Research on Cancer (IARC), decided both are "probable" carcinogens."); **Ex. 3D**, "Monsanto's Continued Concerns About IARC Glyphosate Claims" dated May 12, 2016 ("Given the obvious flaws in its process, the IARC report has spurred much direct criticism from global regulatory agencies and scientific experts . . . ."); and **Ex. 3E**, "Monsanto Responds to Misleading New York Times GMO Article" dated October 31, 2016 ("despite the article's alarmist language about pesticide safety, it is important to note that all pesticides registered for use in the United States have undergone rigorous health and safety evaluations by the U.S. Environmental Protection Agency (EPA)."  Several of these "blog posts" are demonstratively false and only serve to advance Monsanto's litigation position in the court of public opinion.

Exhibits 3A-3E are only a random sampling of blog entries from just one of the website domains owned or controlled by Monsanto out of an incomplete list of 36 websites.  Further, each article contains numerous hyperlinks to other articles conveying a similar message, which then link to other similar articles, and so on, creating a labyrinth of disinformation.  Additionally, Monsanto is a member of several industry organizations that use the media to promote their primary agenda: stopping these lawsuits and this MDL.  One example is the American Chemistry Council, which launched the "Campaign for Accuracy in Public Health Research" ("CAPHR") a few weeks ago on January 25, 2017 (Monsanto is a member of the American Chemistry Council, although that membership is not apparent from CAPHR's website).[5]  The launch of CAPHR was accompanied by considerable media coverage.  Despite its name, CAPHR's primary purpose is to discredit IRAC and IARC's determination that glyphosate is a "probable carcinogen."  Indeed, CAPHR's website currently claims it will seek reform of IARC because "IARC's Monographs Program suffers from persistent scientific and process deficiencies that result in public confusion and misinformed policy-making.[6]"  The CAPHR's campaign to discredit IARC "will be supported by a news website and Twitter handle." *Id.*

Another example is CropLife, of which Monsanto is a primary and influential Member.  On June 17, 2016, CropLife reported that it had:



Emphasis Supplied.  **Ex. 4**, Page 1, Executive Summary.

---

[5]  Monsanto's fingerprint is frequent but often hard to find.  To that end, through formal discovery, Plaintiffs requested a complete list of consultants Monsanto paid for work related to Roundup®, glyphosate, and surfactants.  Monsanto's attorneys refuse to provide that list.
[6]  https://www.americanchemistry.com/Media/PressReleasesTranscripts/ACC-news-releases/ACC-Launches-Campaign-to-Promote-Credibility-in-Public-Health-Research.html, last visited February 16, 2017.
[7]  Dr. Janet Collins is CropLife's Senior Vice President of Science and Regulatory Affairs.  Prior to serving in that capacity, Dr. Collins was Monsanto's long tenured Director and Lead for Global Regulatory Organization.  On August 24, 2016 and again on October 12, 2016, Dr. Collins wrote to the EPA to request that 'unfriendly' scientists be removed from the FIFRA SAP meeting.  **Ex. 5A**-**5B**.  Plaintiffs have issued a Third Party Subpoena to Dr. Collins, and are meeting and conferring with her attorney about her refusal to produce certain documents.

1    CropLife further described its ongoing global network strategy to ███████████
     by:

2    ████████████████████████████████████████████

3    ██████████████████████████████████

4    **Ex. 4**, Page 2, ████████████████████

5

6        On September 4, 2015, the California Office of Environmental Health Hazard Assessment

7    (OEHHA) announced its intention to place glyphosate on California's Proposition 65 list. In response,

8    Monsanto sued OEHHA and headed to the press. Indeed, as stated by Monsanto employee Sam Murphy

9    on January 21, 2016, to ████████████████████████," Monsanto "████████

10   ████████████████████ Emphasis Supplied, **Ex. 6**.

11       In sum, Monsanto has engaged a sophisticated campaign of misinformation meant to discredit

12   Plaintiffs, Plaintiffs' attorneys, IARC, and other third parties that have opined on the carcinogenic nature

13   of glyphosate.

14

15       **C. Monsanto Has Not Demonstrated Good Cause or That Any Minimal Privacy Interest
         Outweighs The Public Interest In Viewing The Documents.**

16

17       In the instant matter, Monsanto understates the public's interest in reviewing documents attached

18   to Plaintiffs' PTO 8 briefing, while overstating the value of these documents as "proprietary" or

19   "containing confidential strategies and business plans." The documents attached to Plaintiffs' PTO 8

20   briefing evidence Monsanto's intentional behavior aimed at obtaining a desired result from EPA, *i.e.*,

21   the documents evidence Monsanto's intentional, and successful, attempts to bias and flaw EPA's

22   methodologies. This constitutes, at best, embarrassing company conduct, but notwithstanding the

23   embarrassment Monsanto may suffer, Monsanto does not cite a single case in which a court held that

24   evidence of a company's intentional interference with the proper functioning of a federal agency

25   constitutes good cause for filing documents under seal.[8]

26

27   ───────────────

28   [8] *See, e.g., Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180-81 (6th Cir. 1983) (refusing to seal records as public had a "strong interest" in obtaining accurate health information related to the levels of tar and nicotine in cigarettes); *Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *6 (E.D.N.Y. Mar. 8, 2010) (refusing to seal documents containing allegations of wrongdoing even though party seeking protection

Andrus Wagstaff, P.C.

Monsanto's argument as to good cause is premised on its misunderstanding of the direct relevance of Plaintiff's filed documents, that is, Monsanto again argues the documents were filed "in support of a non-dispositive discovery motion that is at most tangential to this litigation." Def.'s Resp. at 8. First, it is clear that Plaintiffs' PTO 8 Briefing is not a "discovery motion;" but rather, a brief related to general causation submitted at the request of the Court. Thus, the documents attached to the same are not "tangential" but include information that is currently at the front and center of this litigation. These documents demonstrate that Monsanto has engaged in a longstanding effort to control the science as it relates to its products. These documents show that Monsanto employees secretly infiltrated the peer-review boards of scientific journals to "reject" any article that was contrary to Monsanto's business interests. Other documents demonstrate Monsanto's unabashed use of ghostwriting to generate publications, written by Monsanto, but published under supposedly "independent" scientist's names, without any disclosure of Monsanto's involvement. Indeed, some of these documents reveal old fashioned bullying, whereby Monsanto discredits or attacks a scientist if they deign to publish anything unfavorable about glyphosate or Roundup. And all of these documents culminate to show that Monsanto improperly biased and injected flaws into EPA's methodology.

These gross deviations from basic decency warrant absolutely no confidential protection, let alone this Court's departure from the principles of transparency that govern the judicial process. Assuming *arguendo*, Monsanto could demonstrate good cause to keep Plaintiffs' filed exhibits under seal, *i.e.*, Monsanto could show specific prejudice and harm from making these documents public, the Court still must "balance the public and private interests to decide whether [maintaining] a protective order is necessary." *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2015 WL 12466532, at *4 (S.D. Cal. July 16, 2015). There is a strong public interest in getting these documents out from the veil of secrecy. Indeed, Monsanto is well aware of the need to get documents concerning its misconduct into

alleged it would suffer competitive harm); and *Raytheon Aircraft Co. v. U.S.*, 2007 WL 4300221, at *9 (D. Kan. Dec. 8, 2007) (granting defendant's motion for a protective order because evidence of wrongdoing was absent and noting plaintiff could move to modify if evidence of wrongdoing was located).

Andrus Wagstaff, P.C.

the public domain. *In re Agent Orange Prod. Liab. Litig.*, 104 F.R.D. 559, 575 (E.D.N.Y. 1985), *aff'd*, *Agent Orange I*, 821 F.2d 139 (2d Cir. 1987).

The only other argument asserted by Monsanto in support of good cause is that courts have, at times, protected the privacy rights of third parties, and that "[s]ome of the documents at issue contain information regarding exchanges with outside consultants or with other companies who are not parties to the dispute." Def.'s Resp. at 9. However, Monsanto makes no argument as to how the interests of these consultants or third parties may be impaired. In fact, as a general matter, the mere existence of a third party does not lead to the conclusion that a document must remain confidential and sealed. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("a party must make a particularized showing with respect to any individual document in order to justify sealing the relevant document"). Thus, Monsanto's mere invocation of the words "consultants" and "companies" falls far short of the showing required to keep these documents under seal.

### D. Monsanto Improperly Asks This Court To Adopt A Prejudicial Order That Will Negatively Affect Plaintiffs

The Court should deny Monsanto's improper, and prohibitively broad, request that the Court enter an Order prohibiting Plaintiffs from filing discovery documents as exhibits to motions or other filings regarding discovery or case management issues unless requested by the Court ("Filing Prohibition Order"). See, Proposed Order, Dkt. 143-2. The sole motivation behind this request is Monsanto's wish to hide embarrassing documents from the public and litigate this case in complete secrecy. Not only is Monsanto's proposed Filing Prohibition Order oppressive, prejudicial, and unprecedented, the interpretation of that request is ripe for conflict. For instance, how will the Court know when or what to "request" without reviewing the tens of millions of discovery documents and participating in ***all*** aspects of discovery? The answer is simple: it can't. To be clear, Plaintiffs do not dispute the need to keep confidential documents that are actually confidential, which is why Plaintiffs stipulated to a Protective Order in the first place. But Monsanto's request extends beyond the Protective Order to infringe upon Plaintiffs' due process rights.

Andrus Wagstaff, P.C.

1  Further, Plaintiffs have found no case in which this drastic action was ordered absent prior

2  warnings from a court regarding excessive filings.  That is not the case here.  Accordingly, Monsanto's

3  further request can only be construed as an attempt to avoid its obligations under the Protective and

4  Confidentiality Order, which requires the parties to engage in a specific process for de-designating

5  documents that, after review, do not warrant treatment as confidential.

6  **E.  CONCLUSION**

7  For the reasons stated above, Plaintiffs respectfully submit that the Court deny Monsanto's

8  request to make permanent the sealing of the Exhibits attached to Plaintiffs' PTO 8 briefing.  Plaintiffs

9  further submit that the Court should deny Monsanto's request for an "order that discovery material not

10  be filed as exhibits to any future discovery or case management filings unless requested by the Court"

11  because it is an unreasonable restraint on the parties' due process rights.

Dated: February 17, 2017                              /s/ Aimee Wagstaff, Michael Miller,
                                                                    Robin Greenwald

                                                      ANDRUS WAGSTAFF, PC
                                                      7171 W. Alaska Dr.
                                                      Lakewood, CO 80226
                                                      aimee.wagstaff@andruswagstaff.com

                                                      THE MILLER FIRM LLC
                                                      108 Railroad Ave
                                                      Orange, VA 22960
                                                      MMiller@millerfirmllc.com

                                                      WEITZ & LUXENBURG
                                                      700 Broadway
                                                      New York, NY 100003
                                                      RGreenwald@weitzlux.com

                                                      Co-Lead Counsel for Plaintiffs

Andrus Wagstaff, P.C.

**ECF CERTIFICATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.


DATED: February 17, 2017                     */s/ Aimee Wagstaff*
                                            ANDRUS WAGSTAFF, PC
                                            Aimee H. Wagstaff, SBN 278480
                                            aimee.wagstaff@andruswagstaff.com
                                            7171 West Alaska Drive
                                            Lakewood, CO  80226
                                            Telephone: (303) 376-6360
                                            Facsimile:  (303) 376-6361

1

## **CERTIFICATE OF SERVICE**

2

      I hereby certify that a true and correct copy of the foregoing document was filed with the Court

3

and electronically served through the CM-ECF system which will send a notification of such filing to

4

all counsel of record. .

5

6

7      DATED: February 17, 2017         */s/ Aimee Wagstaff*

                                 ANDRUS WAGSTAFF, PC

8                                   Aimee H. Wagstaff, SBN 278480

                                 aimee.wagstaff@andruswagstaff.com

9                                 7171 West Alaska Drive

                                 Lakewood, CO  80226

10                               Telephone: (303) 376-6360

11                               Facsimile: (303) 376-6361

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andrus Wagstaff, P.C.