**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
Robert E. Johnston (*pro hac vice*)
James M. Sullivan (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Tel:     202-898-5800
Fax:    202-682-1639
Email: jhollingsworth@hollingsworthllp.com
          elasker@hollingsworthllp.com
          rjohnston@hollingsworthllp.com
          jsullivan@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br>ALL ACTIONS | |

**MONSANTO COMPANY'S CONSENT MOTION FOR ORDER RE PRODUCTION OF CUSTODIAL FILES OF DR. MARK MARTENS**

The Court has ordered Monsanto Company ("Monsanto") to produce its custodial files of Dr. Mark Martens.  PTO 14, ECF No. 165.  Dr. Martens is a former employee a foreign subsidiary of Monsanto, and, due to European legal restrictions, special procedures are required before his documents may be collected, processed, and produced in this litigation.

Dr. Martens is a former employee of Monsanto-Europe S.A.  Counsel for Monsanto-Europe S.A. has advised counsel for Monsanto in this MDL that the laws of the European Union and of Belgium (where Dr. Martens worked for Monsanto) restrict the processing and transfer of certain documents outside Europe.  As a result, the parties jointly request that the Court enter the attached Order as soon as possible so that collection and processing of this custodian's documents may commence right away.

The European Law at Issue

In October 1995, the EU Council of Ministers (the "Council") adopted Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995 "on the protection of individuals with regard to the processing of personal data and on the free movement of such data" (the "EU Directive"). The EU Directive is binding on all EU Member States and all EU Member States have implemented domestic legislation giving effect to the EU Directive. The EU Directive has been implemented in Belgium by the Act of 8 December 1992 on Privacy Protection in relation to the Processing of Personal data, as amended by the Act of 11 December 1998 (the "Act").

Under the Act, Monsanto-Europe S.A. likely would be considered the "data controller" of the custodial files plaintiffs seek and collection or production of these records for this litigation would be considered "processing." Ch. I, Art. 1, §§ 2, 4 of the Act, *see* https://www.privacycommission.be/en/privacy-act. "Processing" is broadly defined to include such acts as "collection," "retrieval," "use," "disclosure by means of transmission," and "dissemination or otherwise making available." *Id.* § 2. Under Ch. 1, Art. 1, § 1 of the Act, "'personal data' means ***any information relating to an identified or identifiable natural person***, hereinafter the 'data subject'" (emphasis added). In the present case, where the documents will contain references to many named individuals, including their email addresses, and in some circumstances their employers, job titles, addresses and other personal details, there is no doubt that in most cases the individuals concerned would be considered "identified or identifiable." It should be noted that the applicable definition of personal data is a far broader concept than the concept of "personally identifiable information" which is typically seen in the United States.

The Act also contains numerous restrictions on data controllers' processing documents that contain personal data, including that personal data must be "processed fairly and lawfully" and "adequate, relevant and not excessive in relation to the purposes for which it is collected or further processed." Ch. II, Art. 4, § 1. Here, the use of the parties' negotiated search terms, limiting the number of custodial files and documents to be collected, and Monsanto's further

1 document review after culling, are intended to avoid the "excessive" processing prohibited under
2 the Act.
3     The next section of the Act prohibits processing of personal data unless one of several
4 enumerated exceptions exist.  Ch. II, Art. 5.  With the exception of cases where "the data subject
5 has unambiguously given his consent," each exception requires that the processing be
6 "necessary."  *Id.*  Consent is not an option because the names of thousands of individuals are
7 likely to appear in the custodial files of Dr. Martens, and each referenced natural person is a
8 "data subject" implicating the restrictions on processing.  Under the circumstances of this
9 litigation, redacting all references to natural persons except those whom Monsanto assesses as
10 necessary is not an option, taking into account the volume of records involved, the document
11 review costs that such an effort would incur, the insufficiency of time to be compatible with the
12 existing April 17, 2017 deposition cutoff, the likelihood of errors in such a  human review
13 process, and the impact this could have on the plaintiffs' ability to assess these records in
14 discovery.  The parties agree that instead of massive privacy redactions, all documents produced
15 from the custodial files of Dr. Martens will be produced as "Confidential" under the protective
16 order in this litigation with no requirement to make individual document-by-document
17 confidentiality decisions as Monsanto has been doing for documents collected for U.S.-based
18 custodians.  With the time frame involved and number of records, the risks of human error by the
19 reviewing attorneys regarding confidentiality determinations is reduced substantially by this
20 provision.  Subsequent to production of the files of these foreign custodians, the parties may at
21 any time revisit the confidentiality status of all or parts of particular records.
22     In addition to the limitations on processing any "personal data," which includes names,
23 email addresses, and other information that occur very frequently in custodial files, the Act
24 prohibits "processing of personal data revealing racial or ethnic origin, political opinions,
25 religious or philosophical beliefs or trade-union membership as well as the processing of data
26 concerning sex life." Ch. II, Art. 6.  While understanding who particular employees are and
27 what job positions they hold (personal data) is needed to efficiently and effectively review
28 records during discovery in the circumstances of this litigation, these special categories are less

1  likely to be needed here and should be a smaller subset of the records.  Thus, the "necessary" for
2  discovery exception is less likely to apply.  Monsanto's counsel intends to run targeted searches
3  for this information within the time frame permitted under the Court's schedule and will make
4  redactions as it determines appropriate, and will meet and confer with plaintiffs about those
5  redactions should they have questions.  Capturing all such references before production,
6  however, is not feasible.  The protocols for this litigation have a procedure for providing
7  replacement copies that may be used in those instances and serving this foreign custodian's files
8  designated as confidential will decrease the chances that such information is further disclosed by
9  either party without taking steps to protect such information as appropriate.
10      The next Article of the Act in general prohibits "processing of health-related personal
11  data." Ch. II, Art. 7, § 1.  And the following Article of the Act in general prohibits "[t]he
12  processing of personal data relating to litigation that has been submitted to courts and tribunals
13  as well as to administrative judicial bodies, relating to suspicions, prosecutions or convictions in
14  matters of crime, administrative sanctions or security measures." Ch. II, Art. 8, § 1.  Monsanto
15  also will make an effort before production to search for and evaluate this kind of information for
16  potential redaction and will meet and confer with plaintiffs subsequent to production if necessary
17  to address questions about such redactions.  Producing the foreign custodian's records as
18  confidential also will limit the risks of inadvertent disclosures of this information.
19      Finally, the Act also includes a Chapter VI regarding Transfer of Personal Data to
20  Countries outside of the European Union.  Even if the personal data fits an exception that permits
21  processing in the European Union, it may not fit an exception permitting the data to be sent
22  outside the European Union.  "Personal data being processed after it has been transferred to a
23  country outside the European Community may only be transferred if the country in question
24  ensures an adequate level of protection and if the other provisions of this Act and its
25  implementing decrees have been complied with." Ch. VI, Art. 21, § 1.  And the "personal data"
26  may be transferred if "the transfer is necessary or legally required" by the Court "for the
27  establishment, exercise or defence of legal claims." Ch. VI, Art. 21, § 22.  The proposed order
28

1  includes a specific finding of need for the discovery and additional safeguards intended to

2  balance the interests of the respective legal systems on this issue.

3  <u>Conclusion and Request</u>

4      With an extremely tight schedule in place for document productions, the parties

5  respectfully request that the Court sign and issue right away the proposed Order Regarding

6  Discovery of Custodial Files from Dr. Mark Martens.

8  DATED: February 25, 2017      Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Robert E. Johnston (*pro hac vice*)
(rjohnston@hollingsworthllp.com)
James M. Sullivan (*pro hac vice*)
(jsullivan@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant,*
*MONSANTO COMPANY*