# EXHIBIT A

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA - COUNTY OF FRESNO**<br>**Civil Department - Non-Limited** | Entered by: |
| TITLE OF CASE:<br>**Monsanto Company vs. Office of Environmental Health Hazard Assessment** | |
| **LAW AND MOTION MINUTE ORDER** | Case Number:<br>**16CECG00183** |

| | | | |
|---|---|---|---|
| Hearing Date: | **March 10, 2017** | Hearing Type: | **Demurrer(X2)/ Motion - Judgment on Plead** |
| Department: | **403/Chambers** | Judge/Temp. Judge: | **Culver Kapetan, Kristi** |
| Court Clerk: | **Houston, Dawn** | Reporter/Tape: | **Not Reported** |

**Appearing Parties:**

Petitioner:                                        Respondent:
Counsel:                                          Counsel:

[ ] Continued to   [ ] Set for __ at __ Dept. __ for __

[ ] Submitted on points and authorities with/without argument.    [] Matter is argued and submitted.

[ ] Upon filing of points and authorities.

[ ] Motion is granted    [ ] in part and denied in part.   [ ] Motion is denied  [ ] with/without prejudice.

**[X] Taken out from under advisement**

[ ] Demurrer   [ ] overruled  [ ] sustained  with __ days to [ ] answer [ ] amend

**[ X ] Tentative ruling without modification becomes the order of the court.  No further order is necessary.**

**[ X ] Pursuant to CRC 391(a) and CCP section 1019.5(a), no further order is necessary.  The minute order adopting the tentative ruling serves as the order of the court.**

**[ X ] Service by the clerk will constitute notice of the order.**

**[ X ] See attached copy of the Tentative Ruling.**

[ ] Judgment debtor __ sworn and examined.

[ ] Judgment debtor __ failed to appear.
    Bench warrant issued in the amount of $ __

JUDGMENT:
[ ] Money damages    [ ] Default    [ ] Other __ entered in the amount of:
    Principal $__    Interest $__    Costs $__    Attorney fees $__    Total $__
[ ] Claim of exemption  [ ] granted  [ ] denied. Court orders withholdings modified to $__ per __

FURTHER, COURT ORDERS:
[ ] Monies held by levying officer to be   [ ] released to judgment creditor.  [ ] returned to judgment debtor.
[ ] $__ to be released to judgment creditor and balance returned to judgment debtor.
[ ] Levying Officer, County of __, notified.    [ ] Writ to issue
[ ] Notice to be filed within 15 days.    [ ] Restitution of Premises
[ ] Other: __

03

## Tentative Ruling

Re: **Monsanto Company v. Office of Environmental Health Hazard Assessment, et al.**
Case No. 16 CE CG 00183

Hearing Date: January 27th, 2017 (Dept. 403)

Motion: Respondent/Defendant OEHHA's Motion for Judgment on the Pleadings as to Monsanto's Petition/Complaint

Defendant-Intervenor Sierra Club's Demurrers to Monsanto's Petition/Complaint and Plaintiff-in-Intervention California Citrus Mutual's Complaint in Intervention

**Tentative Ruling:**

To grant the motion for judgment on the pleadings as to Monsanto's petition and complaint, and sustain the demurrers to Monsanto's petition and complaint and California Citrus' complaint in intervention, for failure to state facts sufficient to constitute a cause of action, without leave to amend. (Code Civ. Proc. §§ 430.10, subd. (e); 438.)

**Explanation:**

**Is Monsanto's Petition/Complaint an "As Applied" or Facial Challenge?** First, the parties disagree on the issue of whether petitioner/ plaintiff Monsanto has alleged that the OEHHA's decision to list glyphosate on the Proposition 65 list of chemicals that are known to the state to cause cancer is unconstitutional as applied to glyphosate, or whether Monsanto has attempted to challenge the Labor Code listing mechanism as unconstitutional on its face. However, this issue is not relevant to the court's determination on the demurrers and motion for judgment on the pleadings, since in ruling on the demurrers and motion, the court must evaluate the allegations of the petition/complaint on their face and assume all properly pled allegations are true.

"A motion for judgment on the pleadings is properly granted when the 'complaint does not state facts sufficient to constitute a cause of action against that defendant.' (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. (Code Civ. Proc., § 438, subd. (d).) The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219–1220, internal citation omitted.) The standards for ruling on a general demurrer are the same. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300–301, 58 Cal.Rptr.2d 855.)

Thus, it does not matter at this stage of the proceedings whether Monsanto has raised an "as applied" or "facial" challenge to the OEHHA's decision, as the court cannot weigh facts or take evidence when ruling on the demurrers or motion for judgment on the pleadings.

Also, as Monsanto points out in its opposition, the defendants can only prevail on their motion for JOP and demurrers if they can show that none of Monsanto's theories state a valid cause of action. A general demurrer or motion for JOP will only lie as to an entire cause of action, not as to a particular legal theory within a cause of action or only part of a cause of action. (*Fenimore v. Regents of the University of California* (2016) 245 Cal.App.4th 1339, 1351.) Here, Monsanto has alleged a cause of action for a writ of mandate, as well as claims for declaratory and injunctive relief. (FAC, pp. 31-33.) While Monsanto alleges six different constitutional theories to support its claims, it has only alleged three distinct causes of action based on those theories. Thus, defendants need to show that none of the constitutional theories are insufficiently alleged in order to prevail on their demurrers and motion for JOP.

**Unconstitutional Delegation of Authority:** Monsanto has first alleged that the OEHHA engaged in an unconstitutional delegation of authority by allowing the IARC to determine which chemicals are added to the list of possible cancer-causing agents. (FAC, ¶¶ 100-110.)

"An unconstitutional delegation of authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy." (*Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 190, internal citation omitted.)

"The doctrine prohibiting delegations of legislative power is not violated if the Legislature makes the fundamental policy decisions and leaves to some other body, public or private, the task of achieving the goals envisioned in the legislation." (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 507, internal citation omitted.)

"Several equally well established principles, however, serve to limit the scope of the doctrine proscribing delegations of legislative power. For example, legislative power may properly be delegated if channeled by a sufficient standard. 'It is well settled that the legislature may commit to an administrative officer the power to determine whether the facts of a particular case bring it within a rule or standard previously established by the legislature ....'" (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 375–376, internal citations omitted.)

"A related doctrine holds: 'The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect ....' Similarly, the cases establish that '[w]hile the legislative body cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things upon

which the law makes or intends to make its own action depend.'" (*Id.* at p. 376, internal citations omitted.)

"We have said that the purpose of the doctrine that legislative power cannot be delegated is to assure that 'truly fundamental issues [will] be resolved by the Legislature' and that a 'grant of authority [is] ... accompanied by safeguards adequate to prevent its abuse.' This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions." (*Id.* at pp. 376–377, internal citations omitted.)

In *Kugler*, the California Supreme Court found that a proposed ordinance that would have required the City of Alhambra to set the minimum wages for its firefighters at the same level set by the City of Los Angeles was not an unconstitutional delegation of authority. The Court held that the proposed ordinance had already resolved the fundamental issue of policy, namely that wages for Alhambra firemen should be at least as much as those of Los Angeles firemen. (*Id.* at p. 377.) "[T]he subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation. Thus the decision on the legislative policy has not been delegated; the implementation of the policy by reference to Los Angeles salaries is not the delegation of it." (*Ibid.*)

"Nor does the fact that a third party, whether private or governmental, performs some role in the application and implementation of an established legislative scheme render the legislation invalid as an unlawful delegation." (*Id.* at pp. 379–380.)

Moreover, in a footnote, the Court cited with approval to a decision of the Wisconsin Supreme Court, *State v. Wakeen* (1953) 263 Wis. 401. "In upholding the definition of prohibited drugs by future decision of a recognized private pharmaceutical institution, the Supreme Court of *Wisconsin, in State v. Wakeen* (1953) 263 Wis. 401, 411 [57 N.W.2d 364], held: 'This is not a case of the *delegation* of legislative powers. The publications referred to in the statute are not published *in response* to any delegation of power, legislative or otherwise, by the statute. The compendia are published independently of the statute and not in response to it.' (Italics added.) Similarly, in our case an independent, authoritative source determines the comparable Los Angeles rates, and such decision is made 'independently of the statute and not in response to it.'" (*Id.* at p. 379, fn. 6.)

Likewise, in the present case, the Labor Code listing mechanism does not constitute an unconstitutional delegation of authority to an outside agency, since the voters and the legislature have established the basic legislative scheme and made the fundamental policy decision with regard to listing possible carcinogens under Proposition 65, and then allowed the IARC to make the highly technical fact-finding decisions with regard to which specific chemicals would be added to the list. As noted by the California Supreme Court in *Kugler*, this is not a "delegation of authority", since the state did not delegate the fundamental policy decision regarding the question of whether to create a list of possibly carcinogenic chemicals. (*Kugler, supra*, at p. 379, fn. 6.) The voters and the legislature then used the list independently created by the IARC, an outside agency, to "fill in the blanks" with regard to which chemicals were potential

carcinogens. As Monsanto admits, the IARC's list is not created in response to the Labor Code listing mechanism or Proposition 65, and in fact IARC has stated that it disavows any policy or rulemaking role, and that it does not intend its determinations to carry the force of law. (FAC, ¶ 86.) Thus, much like the City of Alhambra's decision to use the pay scale created by the City of Los Angeles, here the voters and legislature made the decision to use the list of possible carcinogens created by IARC. This does not constitute an unconstitutional delegation of authority. (*Kugler, supra,* at p. 379, fn. 6.)

Monsanto argues that the IARC is an international agency and there are no safeguards or standards to ensure that its decisions are correct, and that it is not accountable to the voters or anyone else in the state. Thus, Monsanto concludes that the delegation of authority to the IARC is unconstitutional, as any such delegation must include safeguards to ensure that the delegatee does not act arbitrarily. (*Wilkinson v. Madera Community Hospital* (1983) 144 Cal.App.3d 436, 442.) Again, however, under *Kugler,* a state agency does not delegate its authority if it makes the fundamental policy decisions regarding a particular piece of legislation and then allows an outside agency to make findings of fact with regard to the details of implementing the legislation. (*Kugler, supra,* at p. 377.) In the present case, the voters and the legislature made the basic policy decisions regarding the creation of the Proposition 65 list and the Labor Code listing mechanism, and then they allowed the IARC to fill in the details regarding the specific chemicals to be listed. Thus, there was no unconstitutional delegation of authority to the IARC.

Monsanto also cites to several cases where the courts found that there was an unconstitutional delegation of authority to an outside entity. (*Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1; *International Assn. of Plumbing etc. Officials v. California Building Standards Commission* (1997) 55 Cal.App.4th 245; *Light v. State Water Resources Control Board* (2014) 226 Cal.App.4th 200; *Plastic Pipe and Fittings Assn. v. California Building Standards Commission* (2004) 124 Cal.App.4th 1390;.) However, the primary concern expressed by the courts in those cases was with allowing members of the regulated industries to have control over the process of making regulations or legislation that affected their businesses. In the present case, on the other hand, there is nothing to indicate that the IARC has any pecuniary or other conflict of interest in creating its list of possible carcinogens. In fact, Monsanto expressly alleges that the IARC does not allow any industry-affiliated members to participate in the working groups that decide which chemicals will be added to its list. (FAC, ¶ 65.) Thus, the concerns expressed by the court in the cases cited by Monsanto do not apply to the voters' decision to use the list created by IARC.

Monsanto has also argued that the OEHHA has unconstitutionally delegated its authority to the IARC because it has no procedure for reviewing the list generated by the IARC, and instead it simply adopts the IARC list without any further consideration as a "ministerial act." However, Monsanto's argument assumes that Labor Code mechanism constitutes a "delegation" of authority to the IARC. Yet, as discussed above, the California Supreme Court in *Kugler* held that there is no delegation of lawmaking authority where the legislature or agency simply uses an outside entity's expertise to fill in factual findings necessary to implement the underlying legislative policy. (*Kugler, supra,* 69 Cal.2d at p. 377.) This is exactly what the OEHHA did here, and what the voters and the legislature authorized when they adopted Proposition 65 and Labor Code section 6382. The voters determined that there should be a list of

cancer-causing chemicals and substances, and the legislature enacted Labor Code section 6382 in order to allow a respected international scientific agency, the IARC, to perform the complex and highly technical fact-finding task of determining which specific substances should be on the list. The list is not made by a private entity with ties to the industries being regulated, so there is no concern that the legislature has allow the "fox to guard the henhouse." Nor has the IARC's list been complied in response to the enactment of Proposition 65 or Labor Code section 6382. Therefore, there is no support for Monsanto's conclusion that the OEHHA has unconstitutionally delegated its rulemaking authority to the IARC. As a result, the court intends to find that Monsanto has not stated facts sufficient to support its theory that the OEHHA has engaged in an unconstitutional delegation of authority.

**Due Process Claim:** Monsanto has also alleged that the Labor Code listing mechanism violates the due process clauses of the California and United States Constitutions because Monsanto's property interest in its Roundup® trademark, its business goodwill, and its reputation will be damaged if glyphosate is listed as a possible cause of cancer based on IARC's decision. Monsanto claims that there are no procedural safeguards in place to protect against an arbitrary decision by IARC, and IARC is not accountable to voters or any government body. (FAC, ¶¶ 113-118.)

However, the OEHHA's decision here is not subject to procedural due process claims because it is a quasi-legislative act. (*Exxon Mobil Corp. v. Office of Environmental Health Hazard Assessment* (2009) 169 Cal.App.4th 1264, 1276, fn. 10.) "[I]t is well established law that once an action is characterized as legislative, procedural due process requirements do not apply." (*Jackson Court Condominiums, Inc. v. City of New Orleans* (5th Cir. 1989) 874 F.2d 1070, 1074, internal citations omitted.) Quasi-legislative decisions are also not subject to due process claims. (*Ibid.*)

"The guarantee of procedural due process applies when a person's liberty or property interests may be curtailed by an adjudicatory or quasi-adjudicatory action. However, when legislation is enacted, procedural due process does not guarantee the affected person a right to a hearing, even though the legislation may have a severe impact on the person or the person's property." (*California Gillnetters Assn. v. Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1160, internal citations omitted.)

Therefore, since Monsanto seeks to challenge the OEHHA's application of the Labor Code listing mechanism on procedural due process grounds which are inapplicable to the OEHHA's quasi-legislative action, the court intends to find that the due process claim cannot support the claims for writ of mandate, injunctive relief, or declaratory relief.

**Article II, Section 12 Claim:** Next, Monsanto alleges that the Labor Code listing mechanism violates Article II, Section 12 of the California Constitution, which states, "No amendment to the Constitution, and no statute proposed to the electors by the Legislature or by initiative, that names any individual to hold any office, or names or identifies any private corporation to perform any function or to have any power or duty, may be submitted to the electors or have any effect." (Cal. Const., art. II, § 12.)

Monsanto alleges that the Labor Code listing mechanism violates Article II, section 12 because it names or identifies IARC by reference to the Labor Code, and that IARC is a "private corporation" within the meaning of the Constitution. (FAC, ¶ 125.) Monsanto further alleges that the Labor Code listing mechanism gives IARC the power to identify chemicals that will be placed on the Proposition 65 list, and thus the listing mechanism violates Article II, section 12. (Id. at ¶¶ 126-127.)

However, Article II, section 12 was enacted "to prevent the initiative from being used to confer special privilege or advantage on specific persons or organizations." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 832.) The California Supreme Court has held that the section applies to non-profit consumer advocacy corporations as well as for-profit corporations. (Id. at pp. 833-834.) The Court in *Calfarm* referred to the Corporations Code to determine that a non-profit corporation was included in the constitutional prohibition. (Ibid.) On the other hand, the Court did not indicate that the prohibition would extend to a non-corporate entity. The Court was primarily concerned with the "danger that supporters of a particular nonprofit organization might seek to obtain through the initiative some special privilege not afforded other organizations." (Id. at p. 834.)

Here, while Monsanto alleges in conclusory fashion that IARC is a "'private corporation' within the meaning of Article II, Section 12 of the California Constitution" (FAC, ¶ 125), it alleges no facts to support this assertion. The court is not required to accept such legal conclusions as true if they are not supported by any facts in the pleading. (*South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 732.) Monsanto has not referenced any portion of the Corporations Code or any other law that would support its conclusion that IARC is a "private corporation" for the purposes of Article II, Section 12. On the contrary, the facts alleged in the first amended complaint indicate that the IARC is an international agency formed by the World Health Organization and funded by the governments of 25 separate countries. (FAC, ¶ 49.) There are no facts that would tend to indicate that it is a "private corporation", or that it would receive any particular advantage from being given the power to name certain chemicals on its list of possible carcinogens.

In addition, the Labor Code listing mechanism does not confer any special power or privilege on the IARC. While the IARC has been designated as the entity to which the OEHHA must refer when it lists carcinogens under Proposition 65, the IARC did not gain any new powers or duties from Proposition 65 or the Labor Code mechanism. The IARC was formed prior to the enactment of Proposition 65, and its duties have always included issuing a list of possible carcinogens. (FAC, ¶¶ 49-51.) There are no facts alleged in the FAC that indicate that the IARC gained any new power as a result of the enactment of Proposition 65, or that it obtained any special privileges or advantages from the Labor Code listing mechanism. The OEHHA simply refers to the IARC's list in order to issue its own list under Proposition 65, but there are no facts indicating that the OEHHA's actions confer any benefit on IARC. Therefore, Monsanto's Article II, Section 12 claim fails to state any facts showing a constitutional violation.

**Guarantee Clause Claim:** Monsanto has also alleged that the Labor Code listing mechanism violates the Guarantee Clause of the United States Constitution. Under Article IV, Section 4 of the U.S. Constitution, "The United States shall guarantee to every State in this Union a Republican Form of Government..." (U.S. Const., Art. IV, § 4.)

However, "Challenges under article IV, section 4 of the United States Constitution have been repeatedly rejected as political questions which are not justiciable. The enforcement of this clause is committed to the Congress, not to the courts." (*California Gillnetters Assn. v. Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1163, internal citations omitted.) "[T]he Court has consistently held that a challenge to state action based on the Guaranty Clause presents no justiciable question..." (*Baker v. Carr* (1962) 369 U.S. 186, 224.)

Monsanto admits that, generally speaking, the Guarantee Clause has been deemed non-justiciable by the courts. However, it argues that there are exceptions to this general rule, citing to *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239. In *Agua Caliente*, the California Supreme Court held that the Fair Political Practices Commission (FPPC) could bring suit under the Tenth Amendment and the Guarantee Clause against an Indian tribe that had allegedly failed to comply with the reporting requirements for campaign contributions under the Political Reform Act. (*Id.* at pp. 258-259.)

However, the Court's decision to allow a *state government* commission to sue a tribe was highly unusual, and does not appear to be analogous to the present situation, where a *private corporation* seeks to enforce the Guarantee Clause against a state agency. There are no unusual circumstances alleged in the FAC that would justify disregarding the general rule of non-justiciability and allowing Monsanto to state a claim against the OEHHA based on its enforcement of the Labor Code listing mechanism. Therefore, the court intends to find that the Guarantee Clause claim is insufficiently alleged.

**Unlawful Amendment of the California Constitution Claim:** Next, Monsanto alleges that the Labor Code listing mechanism violates Article 4, Section 1 of the California Constitution, which states that, "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." (Cal. Const., art. IV, § 1.) Monsanto claims that the Labor Code mechanism violates Article 4, Section 1, by empowering the IARC to make laws applicable to California and delegating the legislative power of the state away from the legislature and the people of California, and that such a delegation can only be accomplished by a constitutional amendment or revision. (FAC, ¶ 132.)

However, the unlawful amendment claim appears to be nothing more than a recasting of the unconstitutional delegation claim. Again, as the California Supreme Court held in *Kugler*, it is not an unconstitutional delegation of authority to designate an outside entity to make highly technical findings of fact to implement a piece of legislation. (*Kugler, supra,* 69 Cal.2d at p. 377.) If it is not unconstitutional to delegate a fact-finding task to an outside entity, then allowing that entity to engage in such fact-finding is also not an act that requires a constitutional revision or amendment. Therefore, the court intends to find that the Article 4, Section 1 claim fails to state facts sufficient to constitute a cause of action.

**Free Speech Claim:** Finally, Monsanto alleges that the listing of glyphosate would violate its right of free speech under the California and United States Constitutions

because the listing would force Monsanto to include a warning label regarding the possible cancerous effects of glyphosate. (FAC, ¶ 135.) Monsanto claims that such a warning would be false and misleading, and would not advance any legitimate or substantial government interest. (*Id.* at ¶ 138.)

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." (*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York* (1980) 447 U.S. 557, 561, internal citation omitted.) "Nevertheless, our decisions have recognized 'the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.' The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." (*Id.* at pp. 562–563, internal citations omitted.)

Where the State seeks to compel a company or person to make a disclosure, as opposed to restricting their right to advertise, the State must show that the disclosure requirements are reasonably related to some substantial state interest. (*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio* (1985) 471 U.S. 626, 651.) Also, "It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" (*Edenfield v. Fane* (1993) 507 U.S. 761, 770, internal citations omitted.)

Here, the OEHHA argues that Monsanto's First Amendment claim is not ripe for adjudication because the mere listing of glyphosate on the Proposition 65 list of chemicals known to cause cancer does not require Monsanto to provide a warning, and that it may never be required to give such a warning. However, Monsanto contends that, under Health and Safety Code section 25249.6, "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." (Health & Safety Code, § 25249.6.)

Also, under Health and Safety Code section 25249.6, a person who violates the warning requirement can be sued for injunctive relief, and can be held liable for civil penalties of $2,500 per day for each violation. In addition, if the suit is brought by a private person, the plaintiff may seek attorney's fees and costs from the defendant. (Health & Safety Code, § 25249.7.) Thus, Monsanto contends that the decision to list glyphosate will expose it to the risk of being sued and held liable for substantial penalties and attorney's fees if it does not place warning labels on its product.

However, the OEHHA also has the discretion to determine that glyphosate poses no significant risk of causing cancer even if glyphosate is placed on the Proposition 65 list. (27 Cal. Code Reg. §§ 25701, subd. (b); 25703; 25707.) Also, Monsanto is not required to give a warning if it can show that glyphosate poses no significant risk of causing cancer in humans. (Health & Safety Code § 25249.5; *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 344.) A business can bring a declaratory relief action in Superior Court to obtain a declaration that its chemical does not pose a

significant risk of causing cancer. (*Baxter Healthcare, supra,* at p. 344.) Therefore, because the adding of glyphosate as a "known carcinogen" to the Proposition 65 list does not necessarily require Monsanto to add a warning label to its products, the issue is not yet ripe for adjudication, and Monsanto has not stated a claim based on the alleged violation of its free speech rights.

As a result, the court intends to grant the motion for judgment on the pleadings and sustain the demurrer as to Monsanto's first amended petition and complaint, as well as sustaining the demurrer to California Citrus' complaint in intervention. The court also intends to deny leave to amend the pleadings, as there does not appear to be any chance that Monsanto or California Citrus can amend their complaints to state valid claims under any of the theories they rely upon.[1]

Pursuant to CRC 3.1312 and CCP §1019.5(a), no further written order is necessary. The minute order adopting this tentative ruling will serve as the order of the court and service by the clerk will constitute notice of the order

**Issued By:** _____ on _____
(Judge's Initials)   (Date)

---

[1] The court intends to deny the moving parties' requests for judicial notice of the various out of state authorities and statutes, as well as the documents related to IARC, as they are unnecessary to the determination of the motion and demurrers.

| SUPERIOR COURT OF CALIFORNIA - COUNTY OF FRESNO<br>Civil Department, Central Division<br>1130 "O" Street<br>Fresno, California 93724-0002<br>(559) 457-2000 | FOR COURT USE ONLY |
|---|---|
| TITLE OF CASE:<br>Monsanto Company vs. Office of Environmental Health Hazard Assessment | |
| **CLERK'S CERTIFICATE OF MAILING** | CASE NUMBER:<br>16CECG00183 |

I certify that I am not a party to this cause and that a true copy of the:

Ruling/Order on Demurrer (2) - Motion for Judgment on Pleading

was placed in a sealed envelope and placed for collection and mailing on the date and at the place shown below following our ordinary business practice. I am readily familiar with this court's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

Place of mailing: Fresno, California   93724-0002
On Date: 03/10/2017          Clerk, by _____, Deputy
                                            D Houston

Trenton H Norris
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center 10th Floor
San Francisco, CA 94111

Adam Keats
Center For Food Safety
303 Sacramento Street 2nd floor
San Francisco, CA 94111

Selena Kyle
Natural Resources Defense Council
20 N. Wacker Drive Suite 1600
Chicago, IL 60606

Stephen P. Berzon
Altshuler Berzon, et al
177 Post St. #300
San Francisco, CA 94108

Laura J Zuckerman
Deputy Attorney General
P.O. Box 70550
Oakland, CA 94612

Ann M Grottveit
Kahn Soares & Conway LLP
1415 L St Ste 400
Sacramento, CA 95814

☐ Clerk's Certificate of Mailing Additional Address Page Attached

TGN-06b R08-06                    CLERK'S CERTIFICATE OF MAILING