UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

MDL No. 2741

Case No. 16-md-02741-VC

HEARING:  January 27, 2017
10:00 a.m.
Courtroom 4, 17th Floor, N.D.Cal.
San Francisco, California

This document relates to:

ALL ACTIONS

## **PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF JESS ROWLAND**

COME NOW all Plaintiffs, by the Plaintiffs' Executive Committee, and move this Court for an Order compelling the deposition of Jess Rowland, former Deputy Division Director, Health Effects Division, Office of Pesticide Programs (OPP), at the Environmental Protection Agency (EPA).   He also chaired the Cancer Assessment Review Committee (CARC), a committee within EPA which authored and "accidentally" leaked a report in May 2016 holding that there was not enough evidence to conclude glyphosate is carcinogenic.

Plaintiffs have complied with EPA's *Touhy* rule for obtaining testimony from a current or former employee; that request has been denied and is ripe for review.

On August 18, 2016, counsel for Plaintiffs contacted EPA and was referred to the Office of General Counsel.  Plaintiffs set forth the details of this litigation and the perceived role of Mr. Rowland and the testimony/facts sought in discovery.  An EPA attorney, Mark Stilp, responded that "to make a decision and provide a response that properly follows the Agency's '*Touhy'* regulations," the EPA required additional information and a "formal written request (OK to send by email)."  Plaintiffs responded with a formal written request on October 6, 2016, stating in part that "[t]he subject of the deposition would be the relationship of EPA's CARC and OPP to Monsanto, and what communications and exchanges occurred in advance of the report on

glyphosate that was accidentally leaked, following which Mr. Rowland left the Agency within days."

Finally, on December 5, 2016, Wendy Blake, Associate General Counsel for EPA, issued a formal letter from EPA denying permission for testimony from Jess Rowland as "not clearly… in the interests of EPA."  Exhibit A.  40 CFR § 2.404 governs requests for testimony from EPA employees and provides that "the General Counsel or his designee… determines whether compliance… would clearly be in the interests of EPA,"  -and following a refusal, that employee need not testify.  Federal courts have held that the formal issuance of a subpoena is not necessary to make the issue ripe for review following a *Touhy* refusal.  *See, e.g., U.S. ex rel. Lewis v. Walker,* 2009 WL 2611522 (M.D.Ga. 2009) (rejecting EPA argument that a pending subpoena was necessary for the District Court to compel testimony, where EPA denied a request through General Counsel and *Touhy* procedures; "the lack of a pending federal subpoena is not fatal to the present motion to compel.").

Coincidentally, one business day before Monsanto first moved this Court for bifurcation, the EPA OPP "leaked" a glyphosate report marked "final" on April 30, 2016, coincidentally on the day that Monsanto first moved this Court for bifurcation (Exhibit B).  Also coincidentally, Monsanto's litigation counsel almost immediately found the leaked report, brought a copy of it to the May 3, 2016 Hardeman Case Management Conference (such conference scheduled mere hours after Monsanto filed its first Motion to Bifurcate in this court while Plaintiff's counsel was travelling to the courthouse) and utilized it in support of Monsanto's argument for bifurcation. *See* Hardeman May 3, 2016 Case Management Conference transcript, pp 20-21. However, within three days, EPA had retracted the report and stated that the report was "preliminary" and "not final" and that it had been "inadvertently" made available (See Exhibit C).  Also within days of the leak, Mr. Rowland was placed on administrative leave.

This is, essentially, the totality of what is known in the public sphere. Monsanto's internal documents reveal, however, a concerted effort by Monsanto and the OPP, Jess Rowland, and his CARC committee, to "kill" the glyphosate/lymphoma issue for the company.  On April 27, 2015, following the IARC pronouncement, Bill Heydens (Group A witness to be deposed on

2

January 23, 2017) wrote to colleagues to suggest "approaching EPA and…. ask if there is anything that would help them defend the situation?" (Exhibit D, MONGLY00987755-58). Dan Jenkins (Group B custodian and deponent) responded: "I think you and I could get on the phone w Jess Rowland and discuss this pretty openly. He'll give us straight talk."[1] *Id.*

The following day, Mr. Jenkins spoke to Mr. Rowland by phone and typed up the conversation for colleagues. He reported that, with regard to the CARC investigation, Mr. Rowland stated "We have enough to sustain our conclusions. Don't need gene tox or epi…..I am the chair of the CARC and my folks are running this process for glyphosate in reg review. I have called a CARC meeting in June." The CARC review was purportedly meant to evaluate the exhaustive review and report from IARC on glyphosate. However, the IARC report on glyphosate was not completed until July of 2015; three months after Mr. Rowland had already made his conclusion. Coming to a conclusion before evaluating data, as Mr. Rowland did in this case, is the epitome of "junk" science.

In the same email, Jenkins explained that Rowland wanted to help Monsanto stop an investigation concerning the carcinogenicity of glyphosate being conducted by The Agency for Toxic Substances and Disease Registry (ATSDR), a federal public health agency of the U.S. Department of Health and Human Services.[2] Since ATSDR is not controlled by the EPA ,according to Mr. Jenkins, Rowland bragged: "If I can kill this I should get a medal." Jenkins cautioned, however, that Monsanto should not "get your hopes up, I doubt EPA and Jess can kill this." *Id.*

Indeed, Monsanto has been confident all along that EPA would continue to support glyphosate, whatever happened and no matter who held otherwise. In an internal memo on glyphosate, Monsanto executives wrote "We know, but cannot say, that EPA's Office of

---

[1] Indeed, Mr. Rowland went to the IARC meeting as an observer for the EPA. Internal communications indicate Monsanto was pleased with Mr. Rowland's attendance since, "we all know Jess." (Exhibit G, MONGLY00986901).

[2] ATSDR serves the public by using the best science, taking responsive public health actions, and providing trusted health information to prevent harmful exposures and diseases related to toxic substances.

Pesticide Program scientists strongly feel that glyphosate does not cause cancer and have defended their written determination internally for months." (Exhibit E).

Dated six months after Rowland's promise to "kill" the issue, the report states it is "from" Jess Rowland and carries his signature. The report concludes that glyphosate is "not likely to be carcinogenic to humans" but notes that "the epidemiological evidence at this time is inconclusive for a causal or clear relationship between glyphosate and NHL" though it goes on to cite a number of studies finding such an association.

Just before the report's date, Mr. Rowland apparently communicated to Monsanto that he would be retiring within months and Monsanto discussed internally that he "could be useful as we move forward with ongoing glyphosate defense." Exhibit F. He has indeed since left EPA, departing within weeks of the "leaked" report.

Federal courts review an agency's decision for arbitrariness and caprice. *See, e.g. Derby v. Department of Homeland Security*, 688 F.Supp.2d 1103 (2009). Unfortunately, the negotiated terms of confidentiality in this action precluded Plaintiffs from providing source documents to the EPA for consideration. In this instance, EPA simply responded that Plaintiffs "failed to explain how and why you believe that granting this voluntary testimony would clearly be in the Agency's interests," and added that the EPA was not a party to the litigation and thus lacked an interest in providing information.

Monsanto has made it clear throughout this litigation that it intends to rely on EPA's conclusions in the defense of this case, particularly in this first phase of general causation. Based on these documents alone, it is clear that Monsanto enjoyed considerable influence within the EPA's OPP, and was close with Mr. Rowland, who promised to try to "kill" the glyphosate issue for them; coincidentally, a report authored chiefly by him was "accidentally leaked" just at the time of his planned retirement. Monsanto's influence, then, will be crucial to the analysis of the EPA's findings and conclusions even as the parties litigate this first phase of general causation.

Plaintiffs are not proposing a "fishing expedition," but rather a narrow deposition of a single former EPA employee whose involvement in glyphosate issues was as important as any of Monsanto's executives, at least in the context of this litigation. The documentary evidence

PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF JESS ROWLAND
16-MD-02741-VC

strongly suggests that Mr. Rowland's primary goal was to serve the interests of Monsanto; EPA acts only through its employees and Mr. Rowland was the primary author of the OPP report on glyphosate, which Monsanto has made clear will be central to its defense of this case, including in this general causation phase. EPA's denial of this request arbitrarily stated that it was unconvinced that the deposition would be in EPA's interests, without providing any reasoning. For Plaintiffs to have to prosecute this case, and counter-defend against this EPA report without being able to discover the presence or extent of Monsanto's untoward influence over the chief author, would work a substantial prejudice and significantly stack the deck against Plaintiffs.

No case is closer to these facts and the analysis required than *U.S. ex rel. Lewis v. Walker, supra.* In that action, to which the EPA was not a party, the plaintiffs alleged that "several EPA employees made misrepresentations to assist… researchers in obtaining federal monies through a cooperative agreement." There, as here, the EPA employee was central to discussions with the defendant, the content of which "will shed light on… the deception in which EPA employees engaged to protect [defendant's interests]." While the aim of the request was certainly not to polish the EPA's public image, the plaintiff argued that it was nonetheless in EPA's interest "because it may help the EPA uncover any improper conduct by EPA employees… and prevent future improper conduct." The court granted the motion to compel and ordered the deposition to take place, based solely on a finding that the witness "likely possesses information that is relevant to [plaintiff's] claims." Like *Lewis*, allowing the deposition of Mr. Rowland here is *in* the EPA's interest. If, as the documents suggest, Monsanto exerted untoward influence over Mr. Rowland, that is information the EPA needs to know so it can, in the future, ferret out such unseemly relationships between its employees and the very industry its charged to regulate.

In conclusion, this Court should compel the testimony of Mr. Rowland, a former EPA employee with information crucial to thousands of current and future plaintiffs.

PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF JESS ROWLAND
16-MD-02741-VC

1

2

3    DATED:  January 9, 2017                Respectfully submitted,

4

5                                          /s Robin Greenwald, Michael Miller and
                                           Aimee Wagstaff
6                                          Robin Greenwald
                                           rgreenwald@weitzlux.com
7                                          Weitz & Luxenberg
                                           700 Broadway
8                                          New York NY 10003
                                           Ph 212-558-5500
9                                          F 212-344-5461

10
                                           Michael Miller
11                                         mmiller@millerfirmllc.com
                                           The Miller Firm LLC
12                                         108 Railroad Ave
                                           Orange VA 22960
13                                         Ph 540 672 4224
                                           F 540 672 3055
14

15                                         Aimee Wagstaff
                                           Aimee.wagstaff@andruswagstaff.com
16                                         Andrus Wagstaff, P.C.
                                           7171 West Alaska Drive
17                                         Lakewood CO 80226
                                           Ph 303-376-6360
18                                         F 303-376-6361

19

20                        **CERTIFICATE OF SERVICE**

21

22           I HEREBY CERTIFY that on January 9, 2017 I electronically filed this Motion to

23   Compel under seal, using the CM/ECF system which will send a notification of such

24   filing to counsel of record.

25

26                                  /s/ Michael Miller

27

28

PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF JESS ROWLAND
16-MD-02741-VC