EXHIBIT 1

Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE: ROUNDUP PRODUCTS          )
LIABILITY LITIGATION             )
                                 )    **NO. 16-md-02741 VC**
                                 )
_____)

San Francisco, California
Friday, January 27, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        THE MILLER FIRM LLC
        108 Railroad Avenue
        Orange, Virginia  22960
    BY:  **MICHAEL J. MILLER, ATTORNEY AT LAW**
        **NANCY G. MILLER, ATTORNEY AT LAW**

        WEITZ & LUXENBERG PC
        700 Broadway
        New York, New York  10003
    BY:  **ROBIN L. GREENWALD, ATTORNEY AT LAW**
        **PEARL A. ROBERTSON, ATTORNEY AT LAW**

        ANDRUS WAGSTAFF PC
        7171 W. Alaska Drive
        Lakewood, Colorado  80226
    BY:  **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
            Official Reporter

1   **APPEARANCES**:  (CONTINUED)

2   For Plaintiffs:

3                   ANDRUS ANDERSON LLP
                  155 Montgomery Street - Suite 900
                  San Francisco, California  94104

4             BY:  **LELAND H. BELEW, ATTORNEY AT LAW**

5                   LAW OFFICES OF TESFAYE W. TSADIK
                  The California Building

6                   1736 Franklin Street - 10th Floor
                  Oakland, California  94612

7             BY:  **TESFAYE W. TSADIK, ATTORNEY AT LAW**

8                   LUNDY, LUNDY, SOILEAU & SOUTH LLP
                  501 Broad Street

9                   Lake Charles, Louisiana  70601
            BY:  **RUDIE R. SOILEAU, JR., ATTORNEY AT LAW**

10

11   For Defendant Monsanto Company:
                  HOLLINGSWORTH LLP
                  1350 I Street NW

12                   Washington, D.C.  20005
            BY:  **JOE G. HOLLINGSWORTH, ATTORNEY AT LAW**

13                   **JAMES M. SULLIVAN, ATTORNEY AT LAW**

14

15   Also Present:         **Jeffrey Messinger (via telephone)**
                  **Heather Pigman (via telephone)**

16                   **Dena Young (via telephone)**

17

18

19

20

21

22

23

24

25

```
 1   Friday - January 27, 2017                    10:05 a.m.

 2                    P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  Calling Case Number 16-md-2741, In Re:

 5   Roundup Products Liability Litigation.

 6      Counsel, please state your appearances for the record.

 7        MR. MILLER:  Good morning, Your Honor.  Michael Miller

 8   on behalf of plaintiffs.

 9        THE COURT:  Good morning.

10        MS. GREENWALD:  Good morning, Your Honor.  Robin

11   Greenwald for plaintiffs.

12        THE COURT:  Good morning.

13        MS. WAGSTAFF:  Good morning, Your Honor.

14   Aimee Wagstaff for the plaintiffs.

15        MR. HOLLINGSWORTH:  Good morning, Your Honor.  Joe

16   Hollingsworth for Monsanto.

17        THE COURT:  Good morning.

18        MR. SULLIVAN:  James Sullivan for Monsanto.

19        THE COURT:  Good morning.

20      Okay.  Today you can talk as fast as you want and

21   interrupt each other as much as you want because we have

22   Jo Ann Bryce as our court reporter, and Jo Ann, if you want to

23   read a little more about her, you can Google "Jo Ann Bryce" and

24   "Wall Street Journal."

25      Okay.  Let me sign onto my iPad here.  Sorry.
```

1    You really should Google "Jo Ann Bryce" and

2  *Wall Street Journal*."  It's an awesome article.

3          **MS. GREENWALD:**  We will.

4          **THE COURT:**  Okay.  So it seems like we don't have that

5  much to talk about today.  On the -- we have some scheduling

6  stuff.  I want to talk a little bit about sealing, and we have

7  the Common Benefit Fund.

8      I guess on the Common Benefit Fund, I don't really see --

9  I guess what struck me -- what jumped out at me is that it's

10  not clear why we need to set a number now, and it strikes me

11  that that number could be very different depending on how

12  Phase I comes out.  So why not wait until then and use

13  Monsanto's language until then?

14          **MS. WAGSTAFF:**  Your Honor, if I may.  Aimee Wagstaff.

15      I think that one of the main reasons to set a number now

16  is so that counsel who participate or want to file in this MDL

17  know sort of what the financial obligations are for them and

18  for their clients; and I think that it's -- the earlier that we

19  can set a number, I think the better for that exact reason.

20      You know, for us and this counsel right here that has

21  participated in the MDL, that may be okay to do, but there are

22  other counsel all around the country that are waiting to see

23  sort of what number is set or what the Court does with respect

24  to the Common Benefit Order in terms of whether or not they

25  want to participate in this or not.

1    **THE COURT:**  But if the number is 4 percent or

2    6 percent or 3 percent or 7 percent, is that really going to

3    affect anybody's decision whether to file a lawsuit?

4    **MS. WAGSTAFF:**  It may.  Well, 3 -- I mean, 3 percent

5    and 4 percent maybe not; but it's not whether or not to file a

6    lawsuit, but it may determine whether or not they go to

7    State Court or Federal Court.

8    **THE COURT:**  Okay.

9    **MS. WAGSTAFF:**  And I think that that is -- you know, I

10   think that the goal -- one of the goals, I think, of Your Honor

11   and I think of sort of the MDL leadership is to keep this MDL

12   as sort of the center of the universe as much as we can and as

13   possible as we can.

14   **THE COURT:**  But wouldn't a higher number -- well, why

15   would a higher -- like, which way would it cut?  If there's a

16   higher number, they're more likely to go to which court?

17   **MS. WAGSTAFF:**  Well, it depends.  It depends on who

18   you're talking about.  And I think that 7 percent, which is a

19   number that we proposed, is very in line with most of the MDLs

20   that are around the country.

21   **THE COURT:**  But if it's a higher or lower number, how

22   does that affect which court somebody might want to go to?

23   **MS. WAGSTAFF:**  If it's -- if you get into the double

24   digits, I think -- so a lot higher, like 10, 11, 12 percent,

25   which a lot of courts have done -- some people who are not

1  going to have an active role in litigating the case may stay

2  away from the MDL.

3      **THE COURT:**  Okay.  But they know you're asking for

4  7 percent.

5      **MS. WAGSTAFF:**  Yeah.  Well, we put it on the record.

6      **THE COURT:**  So we're going to just adopt Monsanto's

7  language and we can revisit it after Phase I.

8      **MS. WAGSTAFF:**  Okay.

9      **THE COURT:**  Okay.  So there is -- let's talk about

10  sealing for a second.  There's a motion to seal portions of the

11  case management statement and portions of Exhibit A to the case

12  management statement.  There hasn't exactly been an

13  opposition -- or, sorry, there hasn't exactly been a

14  declaration in support of that from Monsanto, just a statement

15  that "We want to wait the 30 days -- you know, the standard

16  30-day period."

17      And then the other motion to seal we have is a motion to

18  seal some aspects of the motion to compel the Rowland

19  deposition, the EPA official, or former EPA official; and

20  motion to seal some exhibits to the motion to compel the

21  Rowland deposition, and that is largely e-mail communications,

22  internal Monsanto e-mail communications, about Rowland and

23  about Monsanto's communications with Rowland and sort of

24  Monsanto's strategies for how to deal with the EPA and the

25  federal government.

1     Overall what I will say is that you will find, if you go

2  back and look at my history of ruling on motions to seal, that

3  I probably deny 95 percent of motions to seal.  Most motions to

4  seal are frivolous and I deny them.

5     And the parties, particularly companies, take a completely

6  unreasonable view on what should be confidential and what

7  material would cause them competitive harm.  And so I just want

8  to say at the outset, if I see a pattern of frivolous motions

9  to seal, I will start sanctioning people.  I'll start

10 sanctioning parties and I will start sanctioning lawyers.

11    This is a big case.  There's going to be a lot of

12 material, and I don't want to see a bunch of frivolous motions

13 to seal.

14    With respect to the motion to seal the portions of the

15 case management statement and portions of Exhibit A to the case

16 management statement, I cannot possibly imagine an argument in

17 support of sealing that material.  If you want to make one now,

18 go ahead, otherwise I'll deny that motion to seal right now.

19         **MR. HOLLINGSWORTH:**  Your Honor, I wanted to make an

20 argument about the Rowland documents.

21         **THE COURT:**  Right now I'm talking about the case

22 management statement and the Exhibit A to the case management

23 statement.

24         **MR. HOLLINGSWORTH:**  Okay.  That goes to the

25 objections?

```
 1              THE COURT:  Yes.

 2              MR. HOLLINGSWORTH:  Yes.

 3              THE COURT:  The deposition testimony.

 4                    (Pause in proceedings.)

 5              MR. HOLLINGSWORTH:  Well, Your Honor, the objections

 6    to the deposition testimony were made in connection with a

 7    motion to seal the entire transcript, and the motion to seal

 8    the entire transcript was --

 9              THE COURT:  Wait a minute.  What?

10              MR. HOLLINGSWORTH:  -- what --

11              THE COURT:  I'm sorry.  I don't understand.  The

12    objections --

13              MR. HOLLINGSWORTH:  Maybe I'm confused, but the case

14    management statement has some questions and answers and

15    objections and colloquy.

16              THE COURT:  From deposition testimony.

17              MR. HOLLINGSWORTH:  Yes.

18              THE COURT:  Correct.

19              MR. HOLLINGSWORTH:  That --

20              THE COURT:  And also Exhibit A to the case management

21    statement has excerpts from deposition testimony that is

22    proposed that is right now redacted.

23              MR. HOLLINGSWORTH:  Yes.

24              THE COURT:  Yes.

25              MR. HOLLINGSWORTH:  I'm referring to the -- I'm
```

```
1    referring to the deposition of Dr. Farmer.

2              THE COURT:  Right.

3              MR. HOLLINGSWORTH:  Yes.  We, to be safe because we

4    had designated the entire transcript --

5              THE COURT:  I understand.  I read --

6              MR. HOLLINGSWORTH:  Okay.

7              THE COURT:  -- your statement about it in the case

8    management statement --

9              MR. HOLLINGSWORTH:  Yes.

10             THE COURT:  -- that to be safe you designated the

11   entire transcript confidential.

12             MR. HOLLINGSWORTH:  Yes.

13             THE COURT:  Right now what I'm asking is:  Do you have

14   any argument for why anything in the case management statement

15   or Exhibit A to the case management statement should be under

16   seal?

17             MR. HOLLINGSWORTH:  Well, we did, Your Honor, and we

18   made that argument.  I hear Your Honor's statement and I heard

19   Your Honor's statement that you have denied 95 percent of your

20   motions to seal.

21             THE COURT:  Okay.  What's your argument for why any of

22   this stuff in the case management statement or Exhibit A to the

23   case management statement should be under seal right now?

24             MR. HOLLINGSWORTH:  In light of Your Honor's comments,

25   it's this:  We designated the transcript as confidential in
```

1  accordance with Your Honor's order as we understood it in

2  connection with protective orders and in accordance with the

3  Federal Rules of Civil Procedure, especially Rule 30(c), and we

4  thought that we would have 30 days to look at that transcript

5  after we had received it --

6         **THE COURT:**  Okay.  But --

7         **MR. HOLLINGSWORTH:**  -- at which time --

8         **THE COURT:**  -- you have surely looked at the contents

9  of -- you can take 30 days to look at the deposition

10 transcript.  You have surely looked at the case management

11 statement and Exhibit A to the case management statement.  Do

12 you have any argument for why any of the redacted material in

13 the case management statement or Exhibit A to the case

14 management statement should be under seal?

15        **MR. HOLLINGSWORTH:**  Well, that it's part of a

16 transcript that we designated as under seal at this point, and

17 the 30 days hasn't --

18        **THE COURT:**  What do you mean "designated as under

19 seal"?  You designated it as confidential.

20        **MR. HOLLINGSWORTH:**  That's right.  Excuse me.

21        **THE COURT:**  And the parties' decision to designate

22 something as confidential bears no relationship at all to

23 whether something should be filed under seal.

24        **MR. HOLLINGSWORTH:**  Yes.

25        **THE COURT:**  Now, portions of the transcript that

1   you've designated confidential have now been filed, and so I'm

2   asking you, because your decision to designate something as

3   confidential does not in any way support an argument to seal

4   it, tell me, if you have any substantive reason, why any of the

5   material in the case management statement or Exhibit A should

6   be under seal.

7          MR. HOLLINGSWORTH:  It's part of a transcript that we

8   had designated as confidential, and we haven't gotten to the

9   issue yet of what we would -- what we would attempt to have

10  sealed or continue to have sealed, and we think it should

11  remain confidential pending that sealing.

12         THE COURT:  Okay.  That's not the way to think about

13  sealing.  Anytime something is filed under seal -- so anytime

14  the parties consider filing something under seal or discuss

15  filing something under seal, the fact that something has been

16  designated confidential is not a reason to file it under seal.

17  You need to file a declaration to support filing something

18  under seal.

19      I hate it when things are filed under seal that don't need

20  to be filed under seal.  It creates a lot of work for us.  We

21  have to go through and figure out whether there's any

22  justification for sealing it.  So you need to avoid at all

23  costs filing anything under seal that does not justify filing

24  under seal.

25      The motion to file the portions of this case management

 1    statement and Exhibit A to the case management under seal is

 2    denied.  So the parties will file an unredacted version of that

 3    by the close of business today.

 4          **MR. MILLER:**  Yes, Your Honor.

 5          **THE COURT:**  Regarding the motion to seal the materials

 6    connected to the Rowland deposition, I've reviewed them.  It is

 7    very difficult for me to imagine a justification for sealing

 8    any of those materials; however, I will -- and I will say that

 9    often a company will file a motion to seal materials because

10    the company perceives the material as embarrassing.  I do not

11    believe in the vast majority of cases that it is appropriate to

12    seal material merely because it might be embarrassing to the

13    company.

14          So I have a very difficult time imagining that I would

15    grant a motion to seal any of the material submitted in

16    connection with the motion to compel the Rowland deposition,

17    but I will consider that as I consider the substance of the

18    motion to compel the Rowland deposition and I will rule on it

19    perhaps shortly before I rule on the substance of the motion to

20    compel or in conjunction with the ruling on the motion to

21    compel.

22          With respect to that, I signed a stipulation that would --

23    a stipulation was submitted to have a hearing on the motion to

24    compel the Rowland deposition on the 22nd of February, which

25    was going to be the same day as the case management conference,

 1   and then there's a request to move the case management

 2   conference to March 8th.

 3        Fine to move the case management conference to March 8th.

 4   So we'll go ahead and do that, but I do still want to hear the

 5   motion to compel the Rowland deposition before March 8th.  So

 6   what I was going to propose, though, is that we hear that on

 7   February 27th.

 8             **MR. MILLER:**  That's fine, Your Honor.

 9             **THE COURT:**  Okay.  So the motion to compel the Rowland

10   deposition will be heard on the 27th.

11        And, by the way, I will decide the motion to quash the

12   Texas A & M subpoena or the motion to quash the subpoena by

13   Texas A & M in conjunction with deciding the motion to compel

14   the Rowland deposition.  As you saw from my order the other

15   day, I think this is -- you know, there's kind of a global

16   issue to think about, and I've asked for briefing on that

17   issue, and I'll decide both the motion to quash the Texas A & M

18   subpoena and the motion to compel the Rowland deposition

19   together.

20        I don't need to hear further argument on the Texas A & M

21   subpoena, but I will hold off on deciding it until we have our

22   hearing on the Rowland deposition, which will be on the 27th.

23        And I would also like, and we'll figure out what time in a

24   second, but I would also like to have science day on the 27th

25   because it struck me that, you know, science day could have a

1    relationship to the Rowland -- you know, the question of how

2    much discovery should be allowed relating to whether the EPA's

3    conclusions about glyphosate were biased or flawed and whether

4    the IARC's conclusions about glyphosate were biased or flawed.

5    So would that work to have science day on February 27th?

6              **MR. MILLER:**  From our perspective, that works.

7              **MR. HOLLINGSWORTH:**  We think so, Your Honor.  We need

8    to check with some experts.

9              **THE COURT:**  Okay.  So why don't we schedule that for

10   the 27th for now.

11             **MS. WAGSTAFF:**  Your Honor?

12             **THE COURT:**  Yeah.

13             **MS. WAGSTAFF:**  With respect to science day, at the

14   last conference that we were here with you, there was some --

15   there was an agenda item with respect to the scope of science

16   day, and so that was sort of punted because science day was

17   punted.  Can we -- we aren't prepared, I think both parties, to

18   discuss that today.  Can we get that on a teleconference with

19   you, or something, just so we know how to prepare for science

20   day?

21             **THE COURT:**  Sure.

22             **MS. WAGSTAFF:**  Okay.

23             **THE COURT:**  The overall guidance that I will give you,

24   though, is that I do not want to hear any discussion of which

25   studies are good studies, which studies are bad studies on this

 1   issue.  I want to learn about how to learn about it.  Does that

 2   make sense?

 3         Or, I guess, to put it another way, I want you to -- the

 4   purpose of science day is to try to give me the tools to be

 5   able to examine those studies and examine the expert testimony

 6   about those studies, but not to discuss the studies themselves.

 7         So, in other words, it's more like a college course -- or

 8   for me you should probably treat it more like a high school

 9   course -- just on the general topic of I assume epidemiology

10   and whatever other fields are relevant to examining these

11   studies.  Does that make sense?

12         **MS. WAGSTAFF:**  Yeah.

13         **THE COURT:**  Okay.

14         **MR. HOLLINGSWORTH:**  Yes, Your Honor.

15         **MS. WAGSTAFF:**  Thank you.

16         **THE COURT:**  So I guess what I wouldn't mind doing is

17   having science day first in the morning and then argument on

18   the Rowland deposition in the afternoon, which I think could be

19   helpful probably for the EPA lawyers.  Coming out from D.C., it

20   might be better for them to have it in the afternoon.

21         So science day 9:30.  Plan on going till lunch.  If we

22   need to go longer, we can go longer.  And we'll do argument on

23   the Rowland -- motion to compel the Rowland deposition at, say,

24   2:00 o'clock.

25         Depositions -- oh, yeah.  And then you wanted to sort of

```
 1   calendar February 24th for a possible telephonic argument over

 2   any -- what was that argument going to be about?  Any further

 3   depositions?

 4        MR. MILLER:  No.  I think we're trying to work that

 5   out.  We have a schedule that Your Honor set.  I think what

 6   Ms. Wagstaff was talking about, there may be some debate about

 7   protocol on science day; wasn't it?

 8        MS. WAGSTAFF:  Yeah.  But I think what you're talking

 9   about is the letter that we sent.  So we have Group A -- or

10   Group E, I'm sorry, that we have to designate on the 1st.  And

11   we've been pretty good about sort of narrowing down any

12   disagreements, but we're going to have custodial files from

13   particular I think Group D and then E after the people that we

14   get custodial files.  So we just want to make sure that we

15   can -- if we have any, that we can get on the phone with you

16   and you can sort of tell us which way to go.

17        THE COURT:  Uh-huh.

18        MS. WAGSTAFF:  And if we have it all ironed out and

19   worked out, then we'll just cancel that with you.

20        THE COURT:  That sounds fine.  I'll sign that.  And

21   you already have a stip, I think.

22        MS. WAGSTAFF:  We have a stip, but did we -- yeah, we

23   submitted a stipulation with you too, and it said there the

24   time for the teleconference to be determined by you.  So if you

25   could just add a time for that, we'll join it.
```

1          **THE COURT:**  Okay.  I will do it.

2      But I want to reemphasize, I said it several times, but I

3  want to reemphasize that if you -- you know, on the issue of,

4  you know, adding custodians, taking people's depositions, if

5  there's disagreement, the plaintiffs have to make a detailed

6  written showing in advance of why it's relevant and not

7  duplicative.

8          **MS. WAGSTAFF:**  Yeah.  We hear you.

9          **THE COURT:**  Okay.  I don't think I can say it too many

10 times.

11     So I think what remains, then, is the dispute about the

12 depositions, and my -- I've reviewed the soon-to-be-unsealed

13 excerpts of the deposition exchanges that are contained in the

14 case management statement and Exhibit A to the case management

15 statement, and my reaction is that Monsanto's conduct in those

16 depositions is not unreasonable or overboard.  And in light of

17 that, I'm not prepared to impose the restriction that you're

18 requesting.

19     You know, if Monsanto starts making speaking objections

20 that are more detailed or with greater frequency such that you

21 think you need to come back to me, I'll look at it again.  And

22 if Monsanto does go overboard, I will impose the restriction

23 that you are requesting; but the objections that you included

24 in the case management statement did not seem unreasonable to

25 me.

1            **MR. MILLER:**  Fine, Your Honor.  Thank you.

2            **THE COURT:**  Anything else for us to discuss today?

3            **MR. MILLER:**  I think we have a lot of work to do, but

4    I don't think there's anything left to discuss, Your Honor,

5    honestly.

6            **MR. HOLLINGSWORTH:**  Your Honor, on February 27th we'll

7    do the best we can to make that date.  As I said, we do have to

8    talk to some of our experts.

9         I think February 27th possibly was a date that we

10   suggested before, and we had -- we were under the impression

11   that Your Honor was going to put science day off longer than

12   February -- I was probably wrong about that -- so we released

13   everyone.

14           **THE COURT:**  Yeah.  Yeah.  No.  No.  I apologize.  No,

15   you were right about that and I changed my mind about it

16   because I sort of came to the realization that, you know, in

17   dealing with some of these discovery issues and in particular,

18   you know, the IARC -- the question that I posed in my order the

19   other day about the relevance of IARC bias and EPA bias, it

20   made me realize that science day actually may be helpful in

21   answering those questions.  So that's why I changed track on

22   you, and I apologize for that.

23           **MR. HOLLINGSWORTH:**  So, therefore, can we inform the

24   Court within two or three business days that February 27th is

25   okay?  I notice that the plaintiffs said it's definitely okay

```
 1   with them.  I think it will be okay with us.  And if we've

 2   released people who can't come on the 27th, we'll try our best

 3   to find other people.  So we're going to try real hard for the

 4   27th.

 5            THE COURT:  Okay.  Yeah.  And, you know, again,

 6   keeping in mind it doesn't have to be, you know, your experts

 7   who are testifying on which studies are good and which studies

 8   are bad.

 9            MR. HOLLINGSWORTH:  Right.

10            THE COURT:  It just needs somebody who can sort of

11   teach me how to think about studies.

12            MR. HOLLINGSWORTH:  Right.  Thanks for your comments

13   on that.

14            THE COURT:  All right.  Anything else?

15            MR. MILLER:  No, Your Honor.  Not from plaintiffs.  I

16   don't think so.

17            MR. HOLLINGSWORTH:  No, Your Honor.

18            THE COURT:  All right.  Thanks very much.

19            MR. HOLLINGSWORTH:  Thank you.

20            MS. GREENWALD:  Thank you, Your Honor.

21            MR. MILLER:  Thank you, Your Honor.

22                 (Proceedings adjourned at 10:30 a.m.)

23                          ---oOo---

24

25
```

**CERTIFICATE OF REPORTER**

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Friday, February 3, 2017

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter