UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| | **PLAINTIFFS' MOTION TO STRIKE CONFIDENTIALITY DESIGNATION OF DEPOSITION OF WILLIAM HEYDENS PhD.** |
| | **Date: May 5, 2017** |
| | **Time: 2:00pm** |
| | **Ctrm: 4, 17th floor** |
| | **Hon. Vince Chhabria** |
| This document relates to: ALL ACTIONS | |

**PLAINTIFFS' MOTION TO STRIKE CONFIDENTIALITY DESIGNATION OF WILLIAM HEYDENS PH.D DEPOSITION**

**Introduction**

Monsanto, not Plaintiffs, put forward their "regulatory toxicologist" William Heydens, Ph.D., as being one of the five most important personnel/witnesses on the subject of glyphosate carcinogenicity[1]. Accordingly, his custodial file was produced by Monsanto and his deposition taken by Plaintiffs on January 23 and 24, 2017. Dr. Heydens appears to have spent a great deal of his career ghostwriting "science" papers to protect Roundup, those efforts rivaled in time and scope only by his colleague David Saltmiras, PhD. This has been an important subject of this litigation so far, and is central to general causation; Monsanto relies heavily upon the scientific literature and governmental approvals of glyphosate for its general causation defense; as the Court is aware, however, the discovery process is yielding substantial evidence that Monsanto is often the puppetmaster behind scientific articles that are positive for the company, as well as U.S. EPA deliberations and reports. Several weeks ago, Monsanto Co. published an entry on their website, https://monsantoblog.com, entitled "MONSANTO DID NOT GHOSTWRITE THE WILLIAMS ET AL (2000) GLYPHOSATE PAPER." That article quoted directly from the Heydens deposition, selecting the most helpful portions to Monsanto, in which Dr. Heydens denied ghostwriting. It is rather rich that Monsanto, which accuses Plaintiffs and the World Health Organization constantly of "cherry picking" data and documents, now refuses to permit public disclosure of the rest of this deposition, despite having waived confidentiality with this strategic public posting.

**PROCEDURE**

---

[1] "'These aren't the droids you're looking for.'… 'These aren't the droids we're looking for.'" Star Wars Episode IV: A New Hope, (1977).

Paragraph 16 of this Court's Protective Order (Doc. 64) governs this matter; it directs the parties to meet and confer on challenged confidentiality designations; the parties have done so in good faith on several occasions, by email and telephone. In fact, Plaintiffs have significantly narrowed the scope of the material challenged, but disagreement remains as to the entirety of the Heydens deposition.

The Order goes on to state "the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof."

### CONFIDENTIALITY HAS BEEN WAIVED BY DEFENDANT

Dr. Heydens was heavily involved in the ghostwriting of <u>Safety Evaluation and Risk Assessment of the Herbicide Roundup and its Active Ingredient, Glyphosate, for Humans</u>. Williams GM, Kroes R, Munro IC.; Regul Toxicol Pharmacol. 2000 Apr;31(2 Pt 1):117-65. Indeed, the phrase "ghostwriting" is not an inflammatory accusation made by Plaintiffs here, it is Dr. Heydens' own term for the process of Williams 2000, and his suggestion for how to write what became Williams 2016; see Doc. No. 187-12 p. 4 (email unsealed by Court wherein Dr. Heydens wrote "we ghost-write…..have their names on the publication, but we would be keeping the cost down by us doing the writing and they would just edit & sign their names…Recall that is how we handled Williams Kroes & Munro 2000".)

That publication and the related emails were discussed at great length at deposition. Dr. Heydens could not deny that this discussion had taken place, but said he had difficulty remembering why he wrote "ghostwriting" in 2015, claiming his memory of the 1999-2000 timeframe was much clearer and there had been no ghostwriting of that paper.

*The day after this email was unsealed by this Court*, Monsanto published on the front page of its public website, Monsantoblog.com, a piece called "MONSANTO DID NOT GHOSTWRITE THE WILLIAMS ET AL (2000) GLYPHOSATE PAPER." (Exhibit 1) Not only is that statement a blatant falsity, endangering public health well beyond the bounds of this litigation, but, almost unbelievably, Monsanto quoted directly from the Heydens deposition transcript on its website:

> Although 15 years later Dr. Heydens referred to such fully acknowledged contributions as ghostwriting, he described his actual role in the Williams et al paper under oath as follows: "I made some minor editorial contributions to that 2000 paper that do not mount to the level of a substantial contribution or an intellectual contribution and, thus, I was only recognized in the acknowledgements and not as an author, and that was appropriate for the situation."
>
> He further clarified, "It was things like editing relatively minor things, editing for formatting, just for clarity, really just for overall readability to make it easier for people to read in a more organized fashion."

Prior to this, the Heydens deposition transcript, like all the other depositions taken in this case, was mostly designated "confidential" by Monsanto after it occurred. Indeed, Monsanto had itself *specifically designated some of these portions as confidential, which it then turned around and disclosed publicly.* See Exhibit 2, March 10, 2017 letter with final confidentiality designations (portions quoted on Monsanto website include 417:13-20). Given this disclosure, by Monsanto to the public, of parts of the Heydens deposition that served Monsanto's interests, and mindful of the repeated admonitions by this Court as to what is to be considered confidential and/or filed under seal, Plaintiffs have met and conferred multiple times with Defendants on this issue, who refuse to de-designate any portions of the Heydens deposition, stating that "Monsanto needs to defend itself."

However, Monsanto is again attempting to control this litigation with pressures outside of the courtroom, and making knowingly false claims to the public about Williams 2000; far beyond attempting to influence the outcome of this litigation, this poses an acute danger to public health.  Williams 2000 is but one of many papers written by Monsanto without disclosing authorship.  While the witness had trouble remembering why he said he "ghostwrote" this paper, the documentary evidence has no such shortcomings, and the Plaintiffs have provided that documentation to Defendant in the context of this dispute.

For example, in an April 30, 1999 email between Dr. Heydens and Douglas Bryant (an employee of Cantox, now called Intertek, the organization that Monsanto retained to facilitate both Williams 2000 and Williams 2016 publications), ███████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████

Another source document directly contradicting Monsanto's recent public statements is ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████

The Heydens deposition goes into great detail about the efforts that Monsanto made to control the content and wording of this and other related scientific publications.  While Dr. Heydens denied that Williams 2000 was "ghostwritten", he did remind his colleagues in 2015

that it was ghostwritten, and testified extensively on the subject in the deposition.  Monsanto has chosen their favorite quote from Dr. Heydens denying this, and published it to the world.

According to the "sword and shield" doctrine, the rest of the deposition must now be deemed non-confidential.  Corporations may not trot out advantageous portions of documents or depositions and then claim that the remainder is cloaked in confidentiality or privilege. This doctrine has more often been applied to attorney-client privilege, which privilege confers much stronger protection to documents than "confidential" designations made by Monsanto (pursuant to an agreement intended to promote fluidity and economy in mass discovery).

"Sword and shield" is a subset of subject matter waiver, which has been defined in decisions by this District when "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Century Aluminum Co. v. ACGS Marine Ins. Co*., 285 FRD 468 (N.D.Ca. 2012)(citing FRE 502 advisory committee notes).

More specifically, this type of waiver has been well described as:

[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege.

*Willy v. Admin. Review Bd.,* 423 F.3d 483, 497 (5th Cir. 2005).

This District, along with many others nationwide, has consistently applied the "sword and shield" doctrine to prevent this type of inequity.  In *Marilley v. Bonham*, 2013 WL 896755 (N.D.Cal. 2013), Magistrate Judge Ryu explained its application thusly:

> This breadth of waiver prevents a party from employing the privilege as both a sword and a shield during litigation; "that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones.

And, Federal District Courts in California have applied the doctrine outside of attorney-client privilege as well, stating that disclosure depends on whether the party claiming privilege/confidentiality has put the protected information "at issue." *See Bertram v. Sizelove*, 2012 WL 273083 (applying in contect of protected health information). Indeed, Mag. Judge Cousins had before him a similar waiver issue in the *Century Aluminum* case; the Defendant had chosen to disclose a document that was "probably privileged" but then attempted to maintain privilege protection over related documents. The court rebuffed that attempt and ordered disclosure of all documents within that subject matter, despite the attorney-client privilege. Its holding, specifically, was:

Here, [Defendant] has attempted to use the disclosed document as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation. The Court finds that by voluntarily producing a privileged document concerning "significant development in the weather investigation" drafted by Robb, [Defendant] has waived the attorney-client privilege and work product protection as to all Robb communications concerning defendants' weather investigation.

*Century Aluminum Co., infra.*

The situation at hand differs from that in the *Century Aluminum* case, for example, only in that the "confidentiality" stamp Monsanto puts on nearly all discovery material has significantly less weight than the attorney-client privilege. Plaintiffs seek, as a matter of fairness, the disclosure of the entire Heydens deposition in light of Monsanto's selective disclosures of "confidential" portions of it, used for tactical advantage. This Court has explained to these parties repeatedly its position on secreting materials in this litigation from the public:

> And the parties, particularly companies, take a completely unreasonable view on what should be confidential and what material would cause them competitive harm. And so I just want to say at the outset, if I see a pattern of frivolous motions to seal, I will start sanctioning people. I'll start sanctioning parties and I will start sanctioning lawyers.

(January 27, 2017 hearing tr. at 7:5-10).  Contrary to what Monsanto might say in opposition, Plaintiffs seek disclosure of materials created for/from this litigation: the deposition transcript of Dr. Heydens, who was put forward by Monsanto at the outset of discovery. Plaintiffs do not seek to abstractly disclose "trade secrets" or anything of the sort; and, to the extent Monsanto may argue that disclosure would hurt its business or embarrass it, the Court has made clear its position on those types of argument.  And again, Monsanto chose Dr. Heydens and his custodial files *for this litigation*, not Plaintiffs.

██████████████████  A Review of the Carcinogenic Potential of Glyphosate by Four Independent Expert Panels and Comparison to the IARC Assessment Gary M. Williams, Marilyn Aardema, John Acquavella, et al. Crit. Rev. Toxicology, Vol 24, 2016.  This article has been cited by the EPA in multiple reports, and considered by regulators and scientists all over the world.  The publication contains the following Declaration of Interest:

The Expert Panel Members recruitment and evaluation of the data was organized and conducted by Intertek Scientific & Regulatory Consultancy (Intertek). The Expert Panelists were engaged by, and acted as consultants to, Intertek, and were not directly contacted by the Monsanto Company. Funding for this evaluation was provided to Intertek by the Monsanto Company which is a primary producer of glyphosate and products containing this active ingredient. Neither any Monsanto company employees nor any attorneys reviewed any of the Expert Panel?s manuscripts prior to submission to the journal.

███████████████████████████████████████

████████████████████████████████

██ ████████████████████████████████████

████████████████████

The carcinogenicity of glyphosate has become a public health issue of intense global interest at present. And, Monsanto's ghostwriting has infected the scientific literature. The Williams (2000) paper alone has been cited **by five hundred fifty two (552)** other publications; all without a disclosure that Monsanto wrote it. As but one other real-world example, thirty (30) Members of the European Parliament wrote a letter dated March 24, 2017 to the President of the Executive Branch of the European Union, urging him not to re-approve glyphosate in the EU, and to take a critical look at the existing information and whether it was tainted by Monsanto's undisclosed hand. A short excerpt is instructive of the importance of these documents and depositions to human health globally:

> James Parry, a renowned genotoxicologist Monsanto had worked with, concluded that glyphosate had potential clastogenic effects in vitro and suggested to conduct more specific studies on the potential mutagenic effects of glyphosate. The revealed emails show Monsanto regretted to have worked with Parry and intended not to pursue the suggested studies. James Parry died in 2010.

(Exhibit 5, March 24, 2017 EU Parliament Letter). The 1999 Parry report, alerting Monsanto to the mutagenicity of glyphosate, became available to scientists and regulators <u>only through this Court's Order last month</u>, rejecting Monsanto's argument that it must remain under seal.

As a second example of many, Dr. Williams' medical school was contacted by Science Magazine, perhaps the most esteemed publication in the hard sciences, regarding the

ghostwriting allegations; the school undertook an "investigation" that lasted less than 24 hours and Science then published:

> After a quick investigation, officials at a medical school in New York State say they have found "no evidence" that a faculty member violated the school's prohibition against authoring a paper ghostwritten by others. The statement came one day after *Science* Insider reported that New York Medical College (NYMC) in Valhalla, New York, would examine a researcher who, according to internal documents released last week by a federal court in California, put his name on a 2000 paper partially ghostwritten by employees at Monsanto, the giant agricultural chemicals company based in St. Louis, Missouri. An NYMC spokesperson declined to provide details of how it conducted its investigation, saying in a statement that NYMC "does not disclose details of its internal investigations, but the college does consider the matter in question to be closed." (The school later amended its statement, adding: **"If new information is provided to us, we will evaluate it. If not, we have no further comment."**)

(http://www.sciencemag.org/news/2017/03/medical-school-examine-whether-professor-published-paper-partly-written-chemical).

These are but two brief examples showing that source material in this litigation is impacting human health worldwide. In the context of a blatant waiver of "confidentiality" by Monsanto, the Heydens deposition must not remain secret.

**Conclusion:**

Because Monsanto has selectively placed self-serving portions of the Heydens deposition in the public realm, the Court should deny Monsanto's continued claims of confidentiality over this litigation deposition transcript (Exhibit 6) and its exhibits (combined as Exhibits 7-10).

DATED:  April 6, 2017                              Respectfully submitted,

/s Robin Greenwald, Michael Miller and Aimee Wagstaff
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

Aimee H. Wagstaff
Aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 720-255-7623

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 6, 2017 I electronically filed this Opposition using the CM/ECF system which will send a notification of such filing to counsel of record.

/s/ Michael Miller

## **DECLARATION**

I, Michael Miller, declare:

1. I am a member of of the executive committee of MDL 2741. I make this declaration in relation to Motion to Strike Confidentiality of the Deposition of William Heydens, PhD.. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.
2. Plaintiffs have met and conferred with Monsanto on several occasions on this disagreement, and bring it before the Court only because the parties could not resolve it without intervention.
3. The documents attached hereto as exhibits are true and correct copies of:
    a. Monsanto produced, bates stamped discovery documents (Ex 3, 4)
    b. A public web posting on monsantoblog.com (Ex 1)
    c. A letter from defense counsel to plaintiffs' counsel in this matter (Ex 2)
    d. A letter from members of the European Parliament (Ex 5)
    e. The deposition transcript of William Heydens, PhD. (Ex 6)
    f. The exhibits to said deposition, with stenographers' identifying stickers (Ex 7-10)

I declare under penalty of perjury that the foregoing is true and correct.

Executed this April 6 2017

/s/ Michael Miller