# EXHIBIT B

**PARKER, MILLIKEN, CLARK, O'HARA
& SAMUELIAN, P.C.**
Richard A. Clark (State Bar No. 39558)
Steven R. Platt (State Bar No. 245510)
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
Tel:     213-683-6500
Fax:    213-683-6669
Email: rclark@pmcos.com
          splatt@pmcos.com

**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice* admission
anticipated)
1350 I Street, N.W.
Washington, DC  20005
Tel:     202-898-5800
Fax:    202-682-1639
Email: jhollingsworth@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA PENNIE, *et al.*, | |
|       Plaintiffs, | Case No. 17-cv-1711 |
|   v. | NOTICE OF REMOVAL |
| MONSANTO COMPANY, WILBUR-ELLIS COMPANY, LLC, WILBUR-ELLIS FEED, LLC and DOES 1 through 100 inclusive, | |
|       Defendants. | |

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Monsanto Company ("Monsanto"), with the

consent of Wilbur-Ellis Company, LLC and Wilbur-Ellis Feed, LLC, respectfully removes this

case to the United States District Court for the Northern District of California, from the Superior

Court of the State of California for the County of Alameda, pursuant to 28 U.S.C. §§ 1331,

1441(a), 1442(a)(1) and 1367(a).

This Court has original federal question jurisdiction under 28 U.S.C. § 1331, because the Complaint asserts violations of federal law and presents substantial federal questions. As this Court has original federal question jurisdiction under § 1331, the action is removable under 28 U.S.C. § 1441(a). For a separate, alternative and independent reason, this lawsuit is removable based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiffs' claims invite state court jurors to evaluate whether the federal agency that is required by federal law to regulate Monsanto colluded with Monsanto to maintain federal regulatory approval for the products at issue in this case. In addition, this Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over any claim over which it does not have original federal question jurisdiction, because it forms part of the same case or controversy as those claims over which the Court has original federal question jurisdiction. In support of removal, Monsanto states:

## INTRODUCTION

This lawsuit belongs in federal court. Plaintiffs' Complaint presents a collateral attack on the federal regulatory scheme governing the registration of pesticides and herbicides for use in the United States, as well as the federal officials who administer it. The Complaint alleges that Monsanto and officials from the U.S. Environmental Protection Agency ("EPA") illegally colluded to falsely classify glyphosate – the active ingredient in Monsanto's Roundup®-branded herbicides – as non-carcinogenic and wrongfully maintain federal regulatory approval for these herbicide products. The Complaint also expressly defines the scope of Plaintiffs' state law claims according to the duties and obligations imposed by federal law. Finally, the Complaint directly alleges, on its face, that Monsanto violated federal statutes and federal regulations, and asserts those alleged violations as a predicate for Plaintiffs' state law claims. As a result, every count in the Complaint raises substantial, disputed federal questions within the original jurisdiction of the district courts.

Plaintiffs allege that they (or their decedents) developed Non-Hodgkin's Lymphoma ("NHL") or other cancers as a result of their exposure to glyphosate contained in Roundup® herbicide, an EPA-registered herbicide manufactured and sold by Monsanto. Plaintiffs directly

challenge EPA's registration of Roundup®, contending that Monsanto secured the initial

registration by defrauding and exerting improper influence over EPA and that, more recently,

Monsanto and EPA together illegally have "colluded" to maintain that registration by quashing

investigations into the carcinogenicity of glyphosate by other federal agencies, including the

Agency for Toxic Substances and Disease Registry ("ATSDR"). This alleged more recent

collusive activity purportedly involved the federal officer in EPA's Office of Pesticide Programs,

Jess Rowland, who chaired EPA's Cancer Assessment Review Committee, which was the

committee of EPA scientists who recently assessed the carcinogenicity of glyphosate and

endorsed EPA's existing classification of glyphosate as not likely to be carcinogenic to humans.

Plaintiffs incorporate these allegations of collusion and fraud into every count of their

Complaint. In addition, Plaintiffs expressly predicate their state law claims on Monsanto's

alleged violation of federal statutes and regulations. Plaintiffs affirmatively limit all of their state

law claims to the assertion of duties and obligations that are imposed by federal law. They also

specifically allege several violations of federal law as a basis for their claims.

Although the Complaint purports to plead only state common law and statutory claims,

those claims raise substantial federal questions over which this Court has original federal

question jurisdiction, under 28 U.S.C. § 1331, for three separate reasons. First, Plaintiffs' claims

raise substantial federal questions because they directly challenge the actions of a federal agency

and the conduct of federal agency officials. Plaintiffs allege that EPA's initial registration of

Roundup® was based on fraudulent test results, omissions, and misrepresentations, and that EPA

officials actively colluded with Monsanto to maintain that registration in exchange for their own

personal financial gain. These allegations present substantial federal questions regarding not

only the validity of a federal agency's regulatory decision, but also the propriety of actions taken

by EPA, and the propriety of actions taken by Monsanto in obtaining federal regulatory approval

of its Roundup® products. Those questions are governed entirely by federal law.

Second, every count in the Complaint presents substantial federal questions, because

Plaintiffs have defined the scope of their state law claims according to federal law. With respect

to all counts asserted, Plaintiffs' Complaint alleges: "To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims." Compl. at ¶ 144. As a result, even though the claims are nominally state law claims, it is federal, not state, law that determines the scope of each and every count of the Complaint, and it is federal law that defines all of the duties and obligations Plaintiffs seek to assert in this lawsuit. Indeed, the only way to determine the scope of the state law duties and obligations Plaintiffs seek to assert in each count is to resolve disputed questions of federal law regarding the nature and scope of the duties and obligations imposed by federal law. By limiting their state causes of action to assert *only duties and obligations arising under federal law*, Plaintiffs have made the case thoroughly and almost entirely federal.[1]

Finally, Plaintiffs' claims raise substantial federal questions because Plaintiffs allege multiple violations of federal law on the face of the Complaint. Where violations of federal law are alleged as the basis for the asserted state law claims, the claims "arise under" federal law and fall within the original jurisdiction of the district courts. For each of these reasons, Monsanto is entitled to remove this case to federal court under 28 U.S.C. § 1331.

Monsanto is also entitled to remove this action for the separate and alternative reason that this Court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). When a state court lawsuit satisfies § 1442(a)(1), the case can be removed "despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). Here, as required by § 1442(a)(1), Monsanto has colorable federal defenses (based on the Supremacy Clause and federal preemption principles). The other § 1442(a)(1) requirements are satisfied as well. Plaintiffs' allegations regarding illegal collusion between federal officers and Monsanto with respect to Monsanto's glyphosate-based herbicides show that Plaintiffs contend that Monsanto

---

[1] Monsanto does not concede that all of the federal duties and obligations that Plaintiffs purport to assert have an identical state law counterpart under the common law of the states whose laws apply to Plaintiffs' claims. Nor does Monsanto concede that all duties and obligations arising under federal law are duties that are owed to, or enforceable by private litigants. Thus, Monsanto does not concede that all of the federal duties and obligations Plaintiffs purport to assert can be asserted as a basis for liability in an action, such as this, brought under state law.

has had a special relationship with EPA – namely, Monsanto allegedly acted under the direction of federal officers and a causal connection allegedly existed between that official authority and the Monsanto conduct challenged by Plaintiffs in this lawsuit. Due to Plaintiffs' novel allegations of illegal collusion between federal officers at EPA and the company that the agency was supposed to regulate, this lawsuit should be resolved in federal court to ensure, in accordance with the purposes of the federal officer removal statute, that claims asserted in state courts cannot be used to interfere with a federal agency's efforts to carry out its regulatory responsibilities.

## FACTUAL BACKGROUND

### I. Roundup® Litigation

1. The Complaint purports to join the claims of forty-one (41) Plaintiffs from various counties in California.

2. This lawsuit is one of several filed against Monsanto after the International Agency for Research on Cancer ("IARC") published a report in 2015 classifying glyphosate in Category 2A, which IARC explains "is used when there is limited evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in experimental animals. *Limited evidence* means that a positive association has been observed between exposure to the agent and cancer *but that other explanations for the observations (called chance, bias, or confounding) could not be ruled out.*" IARC Monographs Volume 112: evaluation of five organophosphate insecticides and herbicides (March 20, 2015) (second emphasis added).[2]

3. In the past month alone, Plaintiffs' counsel in this lawsuit and other plaintiffs' attorneys have filed thirteen (13) multi-plaintiff lawsuits against Monsanto in Missouri state court (St. Louis City) that are very similar to this lawsuit. Those complaints include the claims of over one-thousand (1000) plaintiffs, but all individual complaints (except one) include fewer than 100 plaintiffs.

---

[2] Available at: https://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf (last visited 3/22/17).

MONSANTO COMPANY'S NOTICE OF REMOVAL
Case No. 17-cv-1711

4.      Federal lawsuits alleging that Monsanto's Roundup®-branded herbicides cause cancer have been transferred for coordinated multidistrict litigation ("MDL") proceedings to Judge Vince Chhabria of this Court.  *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.).  Over 65 plaintiffs are part of those MDL proceedings.  Judge Chhabria has limited the first phase of those proceedings to determining whether scientifically reliable, admissible evidence exists to establish that glyphosate can cause NHL (*i.e.*, general causation).

## II.      The Federal Regulatory Framework

### A.      Registration of Pesticides

5.      The manufacture, formulation, labeling and distribution of pesticides, such as Monsanto's Roundup®-branded herbicide, are regulated by EPA under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*  Federal law prohibits the sale of pesticides that have not been registered by the EPA, except as permitted by FIFRA.  7 U.S.C. § 136a; 40 C.F.R. § 152.42 ("An application for new registration must be approved by the Agency before the product may legally be distributed or sold, except as provided by § 152.30.").

6.      EPA is permitted to register a pesticide only "if the Administrator determines that, when considered with any restrictions imposed under subsection (d) of this section –

    a.   its composition is such as to warrant the proposed claims for it;

    b.   its labeling and other material required to be submitted comply with the requirements of this subchapter;

    c.   it will perform its intended function without unreasonable adverse effects on the environment; and

    d.   when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5).  The statute defines "unreasonable adverse effects on the environment" to mean:  "(1) any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of pesticide in or on any food inconsistent with the standard under section 346a of Title 21."  7 U.S.C. § 136(bb).

- 6 -

7.     Applicants for registration of a pesticide must complete an application and submit to EPA materials and data specified by FIFRA and its implementing regulations. *See* 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50; 40 C.F.R. § 152.80, *et seq.* The "Administrator shall publish guidelines specifying the kinds of information which will be required to support the registration of a pesticide and shall revise such guidelines from time to time." 7 U.S.C. § 136a(c)(2)(A).

8.     The federal data submission requirements for registration of a pesticide are set out in federal regulations, which "specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products." 40 C.F.R. § 158.1, *et seq.* In addition, "EPA has the authority to establish or modify data needs for individual pesticide chemicals." 40 C.F.R. § 158.30(a).

9.     Before registering a pesticide, EPA may require the submission of data relating to, *inter alia*, product chemistry, product performance, toxicology (humans and domestic animals), hazards to nontarget organisms, applicator and post-application exposure, pesticide spray drift evaluation, environmental fate, and residue chemistry. *See* 40 C.F.R. § 158.130, *et seq.* Ultimately, "[t]he Agency will determine whether the data submitted or cited to fulfill the data requirements specified in this part are acceptable." 40 C.F.R. § 158.70. "The data requirements for registration are intended to generate data and information necessary to address concerns pertaining to the identity, composition, potential adverse effects and environmental fate of each pesticide." 40 C.F.R. § 158.130(a).

10.     EPA has registered Roundup®-branded pesticides for distribution, sale and manufacture in the United States. *See* Compl. at ¶ 85.

11.     Under FIFRA, EPA periodically must re-register previously registered pesticide products to ensure that they continue to meet the standards in FIFRA, 7 U.S.C. § 136a(c)(5). 7 U.S.C. § 136a-1. "EPA accomplishes this reevaluation through its Registration Standards process." Pesticide Registration Standards, 50 FR 48998-01 (Nov. 27, 1985).

**B.     Pesticide Labeling**

12.     Federal law also governs pesticide labeling. FIFRA defines "label" as "the

- 7 -

written, printed, or graphic matter on, or attached to, the pesticide or device or any of its

containers or wrappers," and defines "labeling" as "all labels and all other written, printed or

graphic matter (A) accompanying the pesticide or device at any time; or (B) to which reference is

made on the label or in literature accompanying the pesticide or device…." 7 U.S.C. § 136(p).

13.     "In 40 C.F.R. Part 156, EPA has regulated almost every aspect of pesticide

labeling." *Papas v. Upjohn Co*., 926 F.2d 1019, 1024 (11th Cir. 1991), *rev'd on other grounds*,

505 U.S. 1215 (1992). 40 C.F.R. § 156.10(a)(1) requires that "[e]very pesticide product shall

bear a label containing the information specified by the Act and the regulations in this part."

Under 7 U.S.C. § 136v(b), "State[s] shall not impose or continue in effect any requirements for

labeling or packaging in addition to or different from those required under this subchapter."

## III.     Allegations of the Complaint

14.     In this lawsuit, Plaintiffs allege that they or their decedents developed NHL and

other cancers as a result of exposure to Roundup® herbicides manufactured and sold by

Monsanto. Compl. at ¶¶ 56-57.

15.     The gravamen of Plaintiffs' Complaint is their allegation that Monsanto secured

and maintained EPA's registration of Roundup®-branded products through acts of scientific

fraud, the falsification of test results submitted to EPA, and illegal collusion between EPA

officials and Monsanto. *See, e.g.*, Compl. at ¶¶ 97-103; *id*. at ¶ 103 (citing the alleged "falsity of

the tests that underlie [Roundup®'s] registration"); *id*. at ¶ 105 (alleging "collusion" between

EPA and Monsanto).

16.     Plaintiffs contend that "[o]n two occasions, the EPA found that the laboratories

hired by Monsanto to test the toxicity of its Roundup® products for registration purposes

committed fraud." Compl. at ¶ 98.

17.     Plaintiffs also contend that, "in assessing the safety of glyphosate," EPA relied on

studies that were ghostwritten by Monsanto and that "minimize any safety concerns about the

use of glyphosate." Compl. at ¶ 104. According to the Complaint, "[t]hrough these means

Monsanto has fraudulently represented that independent scientists have concluded that

- 8 -

Glyphosate is safe." *Id.* Similarly, Plaintiffs allege that "Monsanto has also ghostwritten letters by supposed independent scientists submitted to regulatory agencies who are reviewing the safety of glyphosate." *Id.*

18.    Plaintiffs claim that "Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies such as the Agency for Toxic Substances and Disease Registry." Compl. at ¶ 105. Plaintiffs also allege that Monsanto improperly influenced EPA through the "offering of lucrative consulting gigs to retiring EPA officials." *Id.* Plaintiffs' allegations of illegal collusion include Jess Rowland, the EPA Office of Pesticide Programs ("OPP") employee who chaired EPA's Cancer Assessment Review Committee ("CARC") – the committee of EPA scientists who recently assessed whether glyphosate is a carcinogen and endorsed EPA's existing classification of glyphosate as not likely to be carcinogenic to humans. According to a motion to compel Rowland's deposition, there was "a concerted effort by Monsanto and the OPP, Jess Rowland, and his CARC committee to 'kill' the glyphosate/lymphoma issue for the company." Plaintiffs' Motion to Compel the Deposition of Jess Rowland at 2, *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D. Cal. Mar. 14, 2017), ECF No. 189.

19.    Plaintiffs allege that, by pressuring EPA, Monsanto secured a change in EPA's classification of glyphosate, from "possibly carcinogenic to humans" to "evidence of non-carcinogenicity in humans." Compl. at ¶ 97. In broad terms, Plaintiffs claim that "Monsanto championed falsified data and attacked legitimate studies that revealed [Roundup®'s] dangers [and] … led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® was safe." Compl. at ¶ 88.

20.    The Complaint asserts the following counts: (1) strict liability (design defect); (2) strict liability (failure to warn); (3) negligence; (4) fraud; (5) breach of express warranties; and (6) breach of implied warranties.

21.    Under the heading "Limitation on Allegations," the Complaint states: "The

allegations in this pleading are made pursuant to California law. To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims. All claims asserted herein run parallel to federal law…." Compl. at ¶ 144.

## SUBSTANTIVE REQUIREMENTS FOR REMOVAL

**I.  THIS ACTION IS REMOVABLE UNDER 28 U.S.C. §1441(a), AS THIS COURT HAS ORIGINAL FEDERAL QUESTION JURISDICTION OVER PLAINTIFFS' CLAIMS.**

22.  This action is removable to federal court under 28 U.S.C. § 1441(a), because this Court has original federal question jurisdiction under 28 U.S.C. §1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

23.  28 U.S.C. § 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants" to federal court.

24.  Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

25.  A case can be removed on federal question ("arising under") grounds even if the complaint asserts only state law causes of action. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (distinguishing between two different kinds of federal question removal).

26.  As the *Grable* Court held, federal question removal is available when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. *See also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (district courts have jurisdiction under 28 U.S.C. § 1331 where "(1) the right to relief under state law depends on the resolution of a substantial, disputed federal question, and (2) the exercise of jurisdiction will not disrupt the balance between state and federal jurisdiction adopted by Congress.").

- 10 -

MONSANTO COMPANY'S NOTICE OF REMOVAL
Case No. 17-cv-1711

27.     Courts repeatedly have applied *Grable* to allow defendants to remove lawsuits where substantial, disputed federal questions are necessarily raised by state-law claims.  *See, e.g.*, *Pet Quarters, Inc.* 559 F.3d at 779; *Rhode Island Fisherman's Alliance, Inc. v. Rhode Island Dept. of Envtl. Mgmt.*, 585 F.3d 42, 48-52 (1st Cir. 2009); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195-96 (2d Cir. 2005); *Bd. of Comm'rs of Se. Louisiana Flood Protect. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, --F.3d--, 2017 WL 874999 (5th Cir. Mar. 3, 2017); *Hughes v. Chevron Phillips Chem. Co. LP*, 478 Fed. App'x 167 (5th Cir. 2012); *Los Angeles Police Protective League v. City of Los Angeles*, 314 Fed. App'x 72, 72-75 (9th Cir. 2009); *Davis v. J.P. Morgan Chase, N.A.*, 2013 WL 6708765, at *2-3 (E.D. Mo. Dec. 18, 2013) (noting that cases that include challenges to federal agency action support a finding of substantial federal question jurisdiction); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017).

28.     "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed."  *Pet Quarters, Inc.*, 559 F.3d at 779 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

29.     In addition, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

30.     Monsanto is entitled to remove this case to federal court, because Plaintiffs' Complaint raises substantial, disputed questions of federal law for three separate reasons:

a.      First, this Court has original federal question jurisdiction over this action, because Plaintiffs allege that Monsanto secured federal regulatory approval for its Roundup®-branded products by defrauding, improperly influencing, and illegally colluding with EPA officials.  Those allegations raise disputed questions of federal law – *e.g.*, whether EPA officials illegally colluded with Monsanto in violation of federal law, whether Monsanto's interactions with EPA officials complied with federal requirements, whether EPA failed to fulfill its regulatory duties with respect to the registration of

- 11 -

Roundup®, and whether EPA's regulatory decisions regarding Roundup® were the result of improper influence or federal regulatory fraud. These questions are "actually disputed" and "substantial," and their resolution in a federal forum will not disturb the congressionally approved balance of federal and state judicial responsibilities. Challenges to federal agency action present "substantial" federal questions; Congress has granted federal courts jurisdiction over challenges to federal agency action; and a sufficiently small number of state claims are predicated on allegations of illegal collusion between federal regulators and regulated companies that asserting jurisdiction would not materially change the balance of federal and state litigation.

      b.   Second, this Court has original federal question jurisdiction, because Plaintiffs have defined the scope of each of their state law claims according to the scope of the duties and obligations imposed by federal law. As a result, every count necessarily raises questions regarding the scope of the relevant federal duties and obligations. Those federal questions are "actually disputed" and "substantial." The federal interest in these questions is "substantial," because their resolution will guide current and future applicants for pesticide registrations in their interactions with EPA. Resolution of these questions in federal court will not disrupt the congressionally approved balance of state and federal judicial responsibility, because Congress specifically vested the federal district courts with jurisdiction specifically to enforce, and prevent and restrain violations of FIFRA, and to review EPA decisionmaking. And, exercising jurisdiction will not change the balance of federal and state court litigation because it is based on Plaintiffs' unusual decision to limit all of their state claims to the assertion of federal duties.

      c.   Third, this Court has original federal question jurisdiction, because multiple violations of federal law are alleged on the face of the Complaint as a predicate for Plaintiffs' state law claims, and those allegations raise federal questions that are "actually disputed" and "substantial," and their resolution in a federal forum will not disturb the congressionally approved balance of federal and state judicial responsibilities.

For example, Plaintiffs allege that Monsanto violated federal law by submitting third-party testing data to EPA that was later determined to be false. That allegation raises disputed federal questions – *e.g.*, whether applicants for pesticide registrations have a duty under federal law to guarantee the accuracy of third-party testing data they submit to EPA – that are substantial, as their answers may impact the scope of even valid testing data that applicants will make available to the agency going forward. Similarly, Plaintiffs' allegation that Monsanto violated federal regulations by communicating with EPA employees raises substantial federal questions regarding the extent to which applicants may communicate with the agency. The federal interest in that question is substantial, because EPA relies on direct communications with applicants to perform its regulatory function. The fact that Congress gave federal courts jurisdiction over FIFRA enforcement demonstrates that the exercise of jurisdiction over this lawsuit will not disturb the congressionally approved balance of federal and state judicial responsibilities.

31. Finally, this Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over any claim over which it does not have original federal question jurisdiction, because all of the claims asserted form part of the same case or controversy.

### A. Plaintiffs' Allegations that Federal Regulators Colluded with Monsanto in Misrepresenting and Concealing the Health Risks of Glyphosate Raise Substantial Federal Questions within the Court's Original Jurisdiction

32. This Court has original federal question jurisdiction over Plaintiffs' allegations that federal regulators colluded with Monsanto in misrepresenting and concealing the health risks of glyphosate, because they necessarily raise substantial, disputed federal questions for two separate reasons.

33. First, Plaintiffs' allegations necessarily raise substantial, disputed federal questions because they are predicated on allegations that federal regulators illegally colluded with Monsanto to undermine the regulatory process in exchange for their own personal financial gain. The propriety of interactions between EPA and the entities it regulates is inherently federal, and the federal interest in challenges to federal regulatory conduct is substantial.

34.     Second, Plaintiffs' claims necessarily raise substantial, disputed federal questions because they are predicated on allegations that Monsanto's fraudulent acts prevented EPA from properly performing its regulatory function in registering Roundup®.  Allegations that regulatory fraud prevented federal regulators from fulfilling their regulatory duties raise substantial federal questions within the original jurisdiction of the district courts.

> 1.     **Plaintiffs' Allegations of Illegal Collusion Between Federal Regulators and Monsanto Raise Substantial Federal Questions.**

35.     Plaintiffs' Complaint alleges:  "Monsanto … violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies such as the Agency for Toxic Substances and Disease Registry.  Monsanto's close connection with the EPA arises in part from its offering of lucrative consulting gigs to retiring EPA officials."  Compl. at ¶ 105.  These allegations are incorporated into every cause of action asserted into the Complaint.  *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id*. at ¶ 170 (same for Count II); *id*. at ¶ 195 (same for Count III); *id*. at ¶ 215 (same for Count IV); *id*. at ¶ 227 (same for Count V); *id*. at ¶ 246 (same for Count VI); *id*. at ¶ 263 (same for exemplary damages allegations).

36.     Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, in exchange for their personal financial gain, necessarily raises questions of federal law for several reasons:

a.     First, the Complaint directly alleges violations of federal regulations.  *See* Compl. at ¶ 105 ("Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees….").

b.     Second, the relationship between a federal regulatory agency and those it regulates is governed exclusively by federal law.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) ("[T]he relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law.").

- 14 -

c.      Third, the Complaint itself requires that any analysis of these allegations begin with a determination of the duties and obligations imposed by federal law. *See* Compl. at ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims."); *see also* Section I.B., *infra*. Plaintiffs' claims and allegations, therefore, require determination of the relevant federal law standards that might be enforceable via private common law claims.

37.     Thus, Plaintiffs' allegations of unlawful collusion between federal regulators at EPA and Monsanto require a determination of the duties and obligations federal law imposes with respect to interactions between EPA and those it regulates. They also require a determination of the federal duties and obligations relevant to assessing the propriety of any post-employment consulting work by federal regulators. Plaintiffs have not identified the specific federal regulations they allege Monsanto violated in meeting with EPA, but various federal regulations and statutes may be relevant to their collusion allegations. For example:

a.      Various federal regulations address the propriety of interactions between EPA and applicants for pesticide registration, as they relate to obtaining registrations. *See, e.g.*, 40 C.F.R. § 158.30(a) ("The Agency encourages each applicant to consult with EPA to discuss the data requirements particular to its product prior to and during the registration process."); 40 C.F.R. § 158.45(b)(1) ("Applicants are encouraged to discuss a data waiver request with the Agency before developing and submitting supporting data, information, or other materials."); 40 C.F.R. § 158.70 ("Registrants and applicants, however, must consult with the EPA before initiating combined studies."); 40 C.F.R. § 158.80(b) ("Consultation with the Agency should be arranged if applicants are unsure about suitability of such data.").

b.      Various federal regulations also address the propriety of meetings between EPA and pesticide registrants relating to the creation of Registration Standards for pesticide re-registrations. *See, e.g.*, 40 C.F.R. § 155.27 ("The Agency may, however,

- 15 -

meet with registrants to discuss its pending reviews, decisions, or documents, in accordance with the meeting procedures in § 155.30, and the docketing procedures in § 155.32."); 40 C.F.R. § 155.30 ("EPA personnel may, upon their own initiative or upon request by any interested person or party, meet or communicate with persons or parties outside of government concerning a Registration Standard under development. Such meetings or communications will conform to the following policies and procedures…").

c. Federal law also provides standards that may be relevant to Plaintiffs' allegation that Monsanto gained improper influence over EPA by "offering…lucrative consulting gigs to retiring EPA officials," Compl. at ¶ 105. *See, e.g.,* 18 U.S.C. § 201 *et seq.*

38. The federal questions raised by Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, for their own personal financial gain, are also "actually disputed" in the litigation. Monsanto denies any illegal collusion, denies that any alleged meetings between EPA and Monsanto were prohibited by federal law, and denies that any consulting work performed by former EPA officials for Monsanto was improper under federal law.

39. The federal questions raised by Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, in exchange for their personal financial gain, are also substantial:

a. The federal questions raised are substantial because Plaintiffs directly challenge the propriety *and legality* of actions taken by a federal regulatory agency. *See Pet Quarters, Inc.*, 559 F.3d at 779 ("Claim 12 presents a substantial federal question because it directly implicates actions taken by the Commission in approving the creation of the Stock Borrow Program and the rules governing it."). Indeed, "the [Supreme] Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by 'a federal department, agency, or service.'" *Municipality*

- 16 -

*of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc*., 726 F.3d 8, 14 (1st Cir. 2013) (quoting *Empire Healthchoice Assurance*, 547 U.S. 677, 700 (2006)); *see also Lafoy v. Volkswagen Group of Am., Inc*., 2016 WL 2733161, at *4 (E.D. Mo. May 11, 2016) (substantial federal question jurisdiction exists, not only where a state law claim may turn on an interpretation of federal law, but also "where the resolution of the issue has broader significance for the federal government, such as where there is a direct interest of the government for the availability of a federal forum to vindicate its own administrative action.") (citing *Municipality of Mayaguez*, 726 F.3d at 14).

        b.      State law claims challenging federal agency actions raise substantial federal questions and fall within the original jurisdiction of the federal courts. *See, e.g., Grable*, 545 U.S. at 314-15 (state law claim challenging the compatibility of federal agency's action with federal statute supported removal); *Pet Quarters*, *Inc*., 559 F.3d at 779 (claim presents a substantial federal question if it directly implicates actions taken by federal regulators and would control resolution of other cases).

        40.      Finally, resolution of these disputed questions of federal law by this Court will not upset the balance of judicial power approved by Congress. Challenges to federal agency action are routinely decided in federal court. *See, e.g., Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007) ("Moreover, the general jurisdiction statutes confer original jurisdiction over challenges to agency actions to the district courts, or to the Federal Circuit."); *Gallo Cattle Co., v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998) ("a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to agency action as claims arising under federal law, unless a statute expressly precludes review."). The federal interest in the availability of a federal forum to resolve disputes regarding the actions of federal regulators is strong. *See Bender v. Jordan*, 623 F.3d 1128, 1130-31 (D.C. Cir. 2010). Moreover, state-law claims alleging illegal collusion between a federal regulatory agency and a company regulated by the agency are rare, so asserting federal question jurisdiction over this lawsuit "would not materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

- 17 -

**2. Plaintiffs' Allegations that EPA Decisionmaking Was Impaired by Regulatory Fraud Raise Substantial Federal Questions.**

41. Plaintiffs' challenges to EPA's regulatory actions with respect to Roundup®-branded herbicides also raise substantial, disputed federal questions, for the additional reason that Plaintiffs allege that EPA's decision to register Roundup® was based on falsified testing results submitted to EPA in support of the registration, undue influence, and EPA's reliance on studies ghostwritten by Monsanto "which minimize[d] any safety concerns about the use of glyphosate." Compl. at ¶ 104.

42. The Complaint specifically alleges that Monsanto submitted to EPA falsified test results prepared by third-party researchers in support of glyphosate's registration. Compl. at ¶¶ 98-103. The Complaint also alleges that Monsanto "fraudulently represented [to EPA] that independent scientists have concluded that Glyphosate is safe" by "ghostwriting" "[m]ultiple studies" that "minimize any safety concerns about the use of glyphosate" and that were "submitted to and relied upon [by] … EPA in assessing the safety of glyphosate." *Id*. at ¶ 104. Plaintiffs also allege that Monsanto has "ghostwritten letters by supposed independent scientists submitted to regulatory agencies who are reviewing the safety of glyphosate." *Id*. These allegations are incorporated into every cause of action asserted into the Complaint. *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id*. at ¶ 170 (same for Count II); *id*. at ¶ 195 (same for Count III); *id*. at ¶ 215 (same for Count IV); *id*. at ¶ 227 (same for Count V); *id*. at ¶ 246 (same for Count VI); *id*. at ¶ 263 (same for exemplary damages allegations).

43. Plaintiffs' allegations that EPA failed to fulfill its regulatory duties because of Monsanto's alleged regulatory fraud necessarily raise substantial questions of federal law for several reasons:

a. The Complaint itself asserts that Monsanto's alleged deceptions, misrepresentations, and omissions were prohibited by federal law. Compl. at ¶¶ 146, 218.

b. Second, the relationship between a federal regulatory agency and those it regulates is governed exclusively by federal law. *Buckman*, 531 U.S. 347. *See also*

- 18 -

*Bader Farms*, 2017 WL 633815, at *3 ("whether federal regulatory bodies fulfilled their duties with respect to entities they regulate is 'inherently federal in character.'") (quoting *Buckman Co.*, 531 U.S. at 347).

   c. Third, the Complaint itself requires that any analysis of these allegations begin with a determination of the duties and obligations imposed by federal law. *See* Compl. at ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims."); *see also* Section I.B., *infra*. Plaintiffs' claims and allegations, therefore, require determination of the relevant federal law standards that might be enforceable via private common law claims.

  44. Thus, Plaintiffs' allegations that EPA's registration and other regulatory actions taken with respect to Roundup®-branded herbicides were predicated on fraud require a determination of the duties and obligations federal law imposes with respect to applications for pesticide registration and re-registration. Plaintiffs have not identified federal statutory or regulatory sources for all of the duties and obligations they seek to impose, but various federal statutes and regulations may be relevant to their regulatory fraud claims. For example:

   a. Various federal regulations address the information to be included in an application for pesticide registration. *See, e.g.*, 40 C.F.R. § 152.80 *et seq.*, and 40 C.F.R. § 158.1 *et seq.*; § 152.80 ("This subpart E describes the information that an applicant must submit with his application for registration or amended registration to comply… with the provisions of FIFRA sec 3(c)(1)(F)."); § 158.1 ("The purpose of this part is to specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products.").

   b. Various federal statutes and regulations also address the falsification of information relating to the testing of any pesticide, and the falsification of all or part of any application for registration of a pesticide. *See* 7 U.S.C. § 136j(a)(2)(Q) ("It shall be

- 19 -

unlawful for any person…to falsify all or part of any information relating to the testing of any pesticide…"); 7 U.S.C. § 136j(a)(2)(M) ("It shall be unlawful for any person…to knowingly falsify all or part of any application for registration….").

45.     The federal questions raised by Plaintiffs' allegations that the registration of Roundup®-branded herbicides was secured through regulatory fraud are "actually disputed" in the litigation, as Monsanto denies that it omitted material information from EPA relating to the registration of glyphosate, denies that it is responsible for submitting falsified testing results to EPA, and denies that it deceived EPA or violated federal law in any of the other particulars alleged.

46.     The federal questions raised by Plaintiffs' allegations of regulatory fraud are also "substantial," as their resolution will affect the interactions between current and future applicants for pesticide registration and EPA, and may adversely impact future data submissions to EPA. *See Nathan Kimmel, Inc. v. DowElanco,* 275 F.3d 1199, 1206 (9th Cir. 2002).  In addition:

a.     Allegations of fraud on federal regulators (even without allegations of collusion) are substantial and permit removal.  *See Bader Farms, Inc.*, 2017 WL 633815, at *2-3.  In *Bader*, Judge Limbaugh denied the plaintiffs' motion for remand, finding that plaintiffs' claim for fraudulent concealment "presents a substantial federal question."  *Id.* at *2.  The court explained that, because Plaintiffs accused Monsanto of concealing material facts from federal regulators – the U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") – it was "[i]mplicit in plaintiffs' claim … that APHIS would not have deregulated the new seeds had they known of the true risks involved, and that the seeds would not have been approved for sale."  *Id.*  Relying on *Grable*, Judge Limbaugh stated that "the outcome of the fraudulent concealment claim necessarily depends on the interpretation and application of the federal regulatory process under APHIS."  *Id.* at *3.  Focusing on plaintiffs' allegation that Monsanto's concealment of material facts caused APHIS to be unable to perform its task to protect the public, the court stated that, "whether federal regulatory bodies fulfilled their duties with respect to

- 20 -

the entities they regulate is 'inherently federal in character.'" *Id*. (quoting *Buckman Co.*, 531 U.S. at 347).

      b.     Here, Plaintiffs allege that Monsanto illegally concealed important safety information about glyphosate from EPA and otherwise misled EPA such that it failed to fulfill its federal regulatory duties. Indeed, Plaintiffs directly allege that glyphosate was registered by EPA even though it does not meet the risk/benefit test EPA is required to apply. *See, e.g.*, Compl. at ¶¶ 153, 155(e), 159. To prove their claims, Plaintiffs must show that Monsanto committed federal regulatory fraud and that the alleged fraud prevented EPA from performing its federal regulatory duties with respect to glyphosate and Roundup®-branded herbicides. These allegations raise substantial federal questions because they challenge the validity of decisions made by federal regulators. *See Grable*, 545 U.S. at 315 ("The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action….").

     47.     Finally, the disputed and substantial federal questions presented by Plaintiffs' accusations against EPA and Monsanto can be resolved in a federal court "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Federal courts routinely resolve challenges to actions of federal agencies. *See, e.g., Hamilton*, 485 F.3d at 569; *Gallo Cattle Co.,* 159 F.3d at 1198. And Congress specifically vested the federal courts with substantial jurisdiction over challenges to EPA decisionmaking and the enforcement of FIFRA. *See, e.g.*, 7 U.S.C. 136n.

**B.    Every Count in the Complaint Raises Substantial Federal Questions, Because Every Count Requires Determination of the Duties and Obligations Imposed by Federal Law.**

     48.     Every count in the Complaint necessarily raises substantial, disputed federal questions, because Plaintiffs have limited every count to the assertion of duties and obligations that are imposed by federal law. Under the heading "Limitation on Allegations," Plaintiffs' Complaint alleges, for each cause of action, that Plaintiffs are asserting only those state law duties and obligations that are the same as those imposed under federal law. Compl. at ¶ 144

("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims.").

49.    As a result, the only way to determine the scope of the duties and obligations Plaintiffs seek to impose is to resolve questions of federal law – *i.e.*, determine the scope of the duties and obligations federal law imposes relative to each count that might be enforceable via private common law claims. Thus, Plaintiffs' right to relief under state law necessarily depends on the resolution of questions of federal law. Plaintiffs have not identified federal statutory or regulatory sources for all of the duties and obligations they seek to impose, but various federal statutes and regulations may be relevant to their claims. For example:

a.    Plaintiffs' Negligence Count alleges that Monsanto was negligent in "[f]ailing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use…." Compl. at ¶ 205(c). In light of the "Limitation on Allegations," to resolve this claim the Court must determine what duties and obligations federal law imposes with respect to product testing. Various federal statutes and regulations address the federal requirements for product testing. *See, e.g.,* 7 U.S.C. § 136a; 40 C.F.R. § 158.1 *et seq.*, and 40 C.F.R. §152.80 *et seq.*

b.    Similarly, Plaintiffs' Negligence Count alleges that Monsanto was negligent in "[f]ailing to provide adequate instructions, guidelines, and safety precautions to those persons who [Monsanto] could reasonably foresee would use and be exposed to Roundup® products." Compl. at ¶ 205(f). In light of the "Limitation on Allegations, " to resolve this claim the Court must determine what duties and obligations federal law imposes with respect to providing "instructions, guidelines, and safety precautions" for pesticide products. Various federal statutes and regulations address those issues, including 40 C.F.R. § 156.10, which provides federal requirements for pesticide labeling.

c.    Likewise, Plaintiffs' Strict Liability (Design Defect) count asserts that Monsanto's Roundup® products were defective because "the foreseeable risks exceeded

- 22 -

the alleged benefits associated with their design and formulation." Compl. at ¶ 153.[3]  In light of the "Limitation on Allegations," to resolve this claim the Court must determine the scope of the risk/benefit calculus applicable under federal law.  The risks and benefits federal law requires EPA to consider in making registration decisions are set out in 7 U.S.C. § 136a(c)(5) and 7 U.S.C. § 136(bb).  *See also* 40 C.F.R. § 158.1 ("The purpose of this part is to specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 *about the risks and benefits* of pesticide products.") (emphasis added).

        d.      A similar analysis applies with respect to each and every count asserted in the Complaint.  The only way to determine the scope of the duties and obligations Plaintiffs seek to impose for each count is to resolve questions of federal law regarding the nature and scope of the duties and obligations imposed by federal law.

        50.      The federal questions necessarily raised by each count of the Complaint are actually disputed and substantial:

        a.      The scope of the duties and obligations imposed by federal law is actually disputed in this litigation, as Monsanto contends that it satisfied all requirements of federal law in securing EPA's registration of glyphosate, while Plaintiffs allege that it did not.  For example, Monsanto contends that federal law did not require Monsanto to perform additional testing, or to provide different or additional instructions or labeling for its Roundup®-branded herbicide products, while Plaintiffs contend that it did.

        b.      The scope of the duties and obligations imposed by federal law relating to the registration, labeling and sale of pesticides is a "substantial" federal question for three reasons:  (1) it defines the federal regulatory burdens that apply to all current and future pesticide registrants, and will necessarily guide their future interactions with EPA; (2)  the federal government and EPA have a substantial interest in development of a

---

[3] *See also* Compl. at ¶ 159 ("harm caused by . . . Roundup® products far outweighed their benefit"); *id.* at ¶ 155(e) (Roundup® herbicides "present[] a risk of harmful side effects that outweigh any potential utility").

uniform body of federal law relative to pesticide registrations; and (3) it will affect not only the instant action, but numerous other pending cases involving nearly identical claims brought by more than 1000 plaintiffs.

51.     Finally, resolution of the alleged violations of federal law in federal court will not disrupt the congressionally approved balance of federal and state judicial responsibility. First, because federal law defines all of the duties and obligations Plaintiffs seek to impose, the resolution of Plaintiffs' claims in federal court is consistent with the congressionally approved balance of judicial power.  Indeed, resolving alleged violations of federal law is well within the scope of traditional federal jurisdiction.  Second, because Congress specifically vested the federal courts with substantial jurisdiction over challenges to EPA decisionmaking and the enforcement of FIFRA, the exercise of federal jurisdiction over this lawsuit would not disrupt the congressionally approved balance of federal and state judicial responsibility.  *See, e.g.*, 7 U.S.C. 136n.  Finally, because "it will be the rare state [tort] case" that is predicated exclusively on alleged violations of federal duties and obligations, as is the case here, exercising federal jurisdiction over this lawsuit "will portend only a microscopic effect on the federal-state division of labor."  *See Grable*, 545 U.S. at 315.  Plaintiffs' claims are predicated entirely on alleged violations of federal duties and obligations.  Such a lawsuit belongs in federal court.  Allowing Plaintiffs to evade federal jurisdiction simply by alleging (without support) that private litigants may assert those federal duties under the common law of California would undermine the balance of state and federal judicial responsibility approved by Congress.

**C.      This Court Has Federal Question Jurisdiction, because Plaintiffs Allege Violations of Federal Law as a Predicate for Their State Law Claims.**

52.     This Court has original federal question jurisdiction for the additional reason that Plaintiffs' state law claims are expressly predicated on purported violations of federal law, which are directly alleged on the face of the Complaint.  For example:

a.      The Complaint asserts that Roundup®-branded herbicides were "misbranded pursuant to 7 U.S.C. § 136[(q)(1)(G)], and that "[f]ederal law specifically prohibits the distribution of a misbranded herbicide."  Compl. at ¶ 146.  7 U.S.C. §

- 24 -

136(q)(1)(G) provides: "A pesticide is misbranded if – … (G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment."

b.      Plaintiffs also allege that Monsanto submitted false testing data to EPA to support the registration of Roundup® -branded herbicides, Compl. at ¶¶ 99-103, and in doing so violated federal law, Compl. at ¶¶ 146, 218.  Specifically, Plaintiffs allege that "Monsanto violated [7] U.S.C. § 136j," which defines "unlawful acts" under FIFRA. Compl. at ¶ 146.  That section provides, in relevant part, that "It shall be unlawful for any person … (Q) to falsify all or part of any information relating to the testing of any pesticide…submitted to the Administrator, or that the person knows will be furnished to the Administrator or will become a part of any records required to be maintained by this subchapter; [or] (R) to submit to the Administrator data known to be false in support of a registration." 7 U.S.C. § 136j(a)(2).

c.      Plaintiffs also allege that Monsanto violated 40 C.F.R. § 156.10(a)(5), which defines "false or misleading statements" on pesticide labels.  Compl. at ¶ 146.

d.      Finally, Plaintiffs allege that "Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate…."  Compl. at ¶ 105.

53.      Where, as here, the plaintiff's state law claims are expressly predicated, even in part, on violations of federal law, the district courts have original jurisdiction.  As the Eighth Circuit has explained:

> The complaint quite clearly alleges a violation of the federal Constitution at several points.  In particular, paragraph 14, JA 16-17, makes the following assertion:
>
>> The Court order [referring to an order of the County Commission of Newton County, Missouri, purporting to establish the Town of Loma Linda] is further invalid because Relators were not given proper notice of the hearing as required by the Statutes and Constitution of Missouri and the Constitution of the United States of America, including those provisions which prohibit the taking of

- 25 -

> property without due process of law, which process requires proper notice.
>
> The reference to the Constitution of the United States is unequivocal. If the Due Process Clause of the Fourteenth Amendment is given one construction, the claim will prevail; if it is given another, the claim will fail. This is a paradigm case for arising-under jurisdiction.

*Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000). *See also Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) ("When a federal question is present on the face of the complaint, the district court has original jurisdiction and the action may be removed to federal court."); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law."); *Shaw v. Prudential Ins. Co. of Am.*, 2011 WL 1050004, at *1-2 (W.D. Mo. Mar. 21, 2011) (case asserting only state law breach of contract claim was properly removed on federal question grounds where petition invoked ERISA on its face).[4]

54. The same analysis applies here. Plaintiffs have alleged multiple violations of federal law in support of all of their state law claims. *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id.* at ¶ 170 (same for Count II); *id.* at ¶ 195 (same for Count III); *id.* at ¶ 215 (same for Count IV); *id.* at ¶ 227 (same for Count V); *id.* at ¶ 246 (same for Count VI); *see also id.* at ¶ 146 (identifying certain federal law violations "alleged in this pleading").

55. Removal is proper where, as here, "the federal question arises not by way of defense, but on the face of the complaint" and "is part of the plaintiffs' cause of action, as demonstrated by the words they themselves selected." *Country Club Estates,* 213 F.3d at 1003-04 ("A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal district court.").

56. To the extent the *Grable* requirements must be met to support removal even where violations of federal law are alleged on the face of the Complaint, they are here. The

---

[4] The petition at issue in *Shaw* is available at 2010 WL 4362984 (W.D. Mo., July 27, 2010).

questions raised by the alleged violations are actually disputed, as Monsanto denies each and every violation of federal law asserted in the Complaint.

57.     The federal questions raised by those alleged violations are also substantial, because their resolution will impact the way applicants for pesticide registrations interact with EPA.  For example:

        a.     Plaintiffs allege that Monsanto violated federal law by submitting third party testing results to EPA that were later determined to be false.  *See* Compl. at ¶¶ 98-103, 146.  Whether the alleged conduct violates federal law is a "substantial" federal question, because its resolution may significantly increase federal regulatory burdens on applicants, and may lead applicants to limit the scope of testing data they submit to EPA to only that which they can independently verify.  Such limitation on the data provided to EPA may adversely impact its ability to make informed regulatory decisions.

        b.     Plaintiffs' allegation that Monsanto violated federal regulations by communicating with EPA employees also raises substantial federal questions.  The questions are substantial because resolving them may lead those applying for pesticide registrations to limit their communications with EPA in a manner that impairs the effective functioning of the regulatory process.  EPA relies on and encourages direct communications with applicants in performing its regulatory functions.  *See, e.g.*, 40 C.F.R. § 158.30(a) ("The Agency encourages each applicant to consult with EPA to discuss the data requirements particular to its product prior to and during the registration process."); *see also* 40 C.F.R. § 158.45(b)(1); 40 C.F.R. § 158.70; 40 C.F.R. § 158.80(b).

58.     Finally, resolution of these disputed questions of federal law in federal court will not disrupt the balance between federal and state jurisdiction adopted by Congress.  Resolving alleged violations of federal law is well within the scope of traditional federal jurisdiction.  And, because Congress specifically vested the federal courts with jurisdiction over the enforcement of FIFRA, the exercise of federal jurisdiction over this lawsuit will not disrupt the congressionally approved balance of federal and state judicial responsibility.  *See, e.g.*, 7 U.S.C. 136n.

**II. THIS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441(a), BECAUSE PLAINTIFFS' CLAIMS INVITE STATE COURT JURORS TO EVALUATE WHETHER THE FEDERAL AGENCY THAT IS OBLIGATED BY FEDERAL LAW TO REGULATE MONSANTO COLLUDED WITH MONSANTO TO MAINTAIN FEDERAL REGULATORY APPROVAL FOR MONSANTO'S GLYPHOSATE-BASED HERBICIDES.**

59. A separate, alternative, basis for removal exists in this case – namely, federal officer removal. A statute authorizes removal of a civil action that is "against or directed to" the "United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for *or relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). In these circumstances, a lawsuit can be removed from state court "despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431.

60. Courts are required to construe § 1442(a)(1) broadly. "The words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting § 1442(a)(1); *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)'" (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *see also Jacks v. Meridian Resource Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012) (quoting *Watson*, 551 U.S. at 147); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (quoting *Manypenny*, 451 U.S. at 242). Moreover, the statute was amended in 2011 by adding "or relating to" after "for," thereby broadening the reach of the statute. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Assoc. of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015).

61. Courts generally require the following elements for federal officer removal based on § 1442(a)(1): "(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions [at issue in the plaintiff's lawsuit] and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person' within the meaning of the statute." *Jacks*, 701 F.3d at 1230; *see*

- 28 -

*also In re Commonwealth's Motion*, 790 F.3d at 467.  As discussed below, these requirements are satisfied in this case.

62.      ***First***, according to Plaintiffs' allegations, Monsanto acted under the direction of a federal officer by illegally colluding with EPA officials to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides.  Plaintiffs allege that a special relationship existed between EPA officers and Monsanto (which allegations are incorporated by reference into each cause of action):  "Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies such as the Agency for Toxic Substances and Disease Registry.  Monsanto's close connection with the EPA arises in part from its offering of lucrative consulting gigs to retiring EPA officials."  Compl. at ¶ 105; *see also id.* at ¶¶ 147, 170, 195, 215, 227, 246, 263.  "Collusion" is defined as a "secret agreement or cooperation esp[ecially] for an illegal or deceitful purpose," Merriam Webster's Collegiate Dictionary at 226 (10th ed.), so collusion necessarily requires an agreement between two parties.  Thus, Plaintiffs contend that EPA agency power was delegated to Monsanto, so that it could direct agency employees to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides, with lucrative consulting positions paid by Monsanto as the alleged *quid pro quo* for this delegation of agency power.[5]

63.      In the Roundup® Products Liability MDL currently pending before Judge Chhabria in this Court, the plaintiffs are vigorously pursuing discovery regarding the same allegations of collusion between EPA officials and Monsanto.  For example, plaintiffs' attorneys

---

[5] Although Monsanto disputes Plaintiffs' allegations, Monsanto is permitted to rely on the allegations to show that removal of this lawsuit is proper based on § 1442(a)(1) – and then present Monsanto's version of the events at issue later in the federal court proceeding.  *See, e.g.*, *Willingham*, 395 U.S. at 407-09 (explaining that defendants need not admit allegations to remove lawsuits based on § 1442(a)(1)).  Moreover, the fact that Plaintiffs accuse Monsanto and EPA of illegal conduct does not mean that the alleged conduct at issue here falls outside the scope of the § 1442(a)(1) "color of office" requirement.  *See Sun v. Tucker*, 946 F.2d 901, at *1 (10th Cir. 1991) (unpublished op.) (stating that "[w]hether an act was performed under 'color of office' is not dependent on the propriety of the alleged act itself" (citing *Willingham*, 395 U.S. at 409)).

MONSANTO COMPANY'S NOTICE OF REMOVAL
Case No. 17-cv-1711

have moved to compel the deposition of Jess Rowland (a former EPA officer at OPP and the former chair of EPA's CARC), who allegedly colluded with Monsanto. *See* Plaintiffs' Motion to Compel the Deposition of Jess Rowland, *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 189. According to the motion to compel, there was "a concerted effort by Monsanto and the OPP, Jess Rowland, and his CARC committee to 'kill' the glyphosate/lymphoma issue for the company." *Id.* at 2. The motion also asserts that the CARC report was "leaked" and then retracted by EPA because it was not final, *id.* at 2; that "Rowland wanted to help Monsanto stop an investigation concerning the carcinogenicity of glyphosate being conducted by [another federal agency,] [t]he Agency for Toxic Substances and Disease Registry (ATSDR)," *id.* at 3; and that "Rowland bragged: 'If I can kill this [the ATSDR investigation,] I should get a medal,'" *id.* Plaintiffs' allegations of illegal collusion between Monsanto and federal officers employed by EPA have received significant attention in the press.

64.     As shown above, Plaintiffs' allegations about Monsanto's "close connection" with EPA and about collusion between EPA and Monsanto regarding Monsanto's glyphosate-based herbicides are very different than "the usual regulator/regulated relationship," *Watson*, 551 U.S. at 157, which the *Watson* Court held did not suffice to satisfy the acting-under-the-direction-of-a-federal-officer requirement of § 1442(a)(1). In *Watson*, the Court held that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." 551 U.S. at 153. Thus, Monsanto does not contend that the federal regulatory environment in which it has operated for many years under close EPA supervision regarding glyphosate-based herbicides gives rise to removal based on § 1442(a)(1). Unlike in *Watson*, where the Supreme Court explained its conclusion that removal was not proper by pointing out the lack of a "special relationship" between the regulated company and the federal regulatory agency, 551 U.S. at 157, in this case Plaintiffs do allege a special relationship between the regulated company (Monsanto) and the federal regulatory agency (EPA). Plaintiffs' allegations – that Monsanto and EPA colluded to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides and that Monsanto has a "close connection" with EPA by "offering lucrative consulting gigs to

1   retiring EPA officials," Compl. at ¶ 105 – are materially different than the usual relationship

2   between a federal regulator and a regulated company addressed in *Watson*. In sum, Plaintiffs'

3   allegations about a collusive scheme between Monsanto and EPA satisfy the first element of

4   § 1442(a)(1) in this case.

5       65.    ***Second***, the causal nexus requirement, which is a "low" hurdle, *Isaacson v. Dow*

6   *Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008), is satisfied here as well. Plaintiffs' allegations of

7   illegal collusion between Monsanto and EPA show that a causal connection exists between the

8   Monsanto conduct that is challenged in this case and "the official authority," *Jacks*, 701 F.3d at

9   1230, because Plaintiffs assert claims "for ***or relating to***," § 1442(a)(1) (emphasis added),

10  Monsanto's alleged collusion with EPA to maintain federal regulatory approval for Monsanto's

11  glyphosate-based herbicides, *see* Compl. at ¶ 105; *see also id.* at ¶¶ 147, 170, 195, 215, 227, 246,

12  263. Plaintiffs' entire lawsuit is based on the theory that the herbicides are carcinogenic; that

13  Monsanto is liable for covering up, and failing to warn about, the risk of cancer; that this cover-

14  up scheme was perpetrated through illegal collusion between Monsanto and specific EPA

15  officers; and that Plaintiffs would not have developed cancer if EPA had fulfilled its federal

16  regulatory obligations by not allowing Monsanto to sell its glyphosate-based herbicides at all –

17  or by precluding Monsanto from selling these herbicides without a cancer warning. In these

18  circumstances, the causal nexus requirement of § 1442(a)(1) is satisfied.

19      66.    ***Third***, the Supremacy Clause of the United States Constitution and preemption

20  principles based on the Supremacy Clause give Monsanto at least two colorable federal defenses

21  that it will raise in a motion for summary judgment at the appropriate time. "For a defense to be

22  considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that

23  a defense will be successful before removal is appropriate." *U.S. v. Todd*, 245 F.3d 691, 693 (8th

24  Cir. 2001); *see Jefferson County*, 527 U.S. at 431 (stating that removing defendant is not

25  required "virtually to win his case before he can have it removed" (quotation marks and citation

26  omitted)); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (stating that "a colorable

27  federal defense need only be plausible, . . . and that a district court is not required to determine

28

- 31 -

MONSANTO COMPANY'S NOTICE OF REMOVAL
Case No. 17-cv-1711

its validity at the time of removal" (citations omitted)).  Monsanto's federal defenses easily meet this requirement.

67.     Monsanto's first federal defense is based on the well-established principle that a state-law claim alleging that a regulated company defrauded or misled a federal regulatory agency conflicts with, and therefore is ***impliedly preempted***, by federal law.  *See*, *e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (claims alleging that defendant misled federal Food and Drug Administration are impliedly preempted by federal law); *Nathan Kimmel*, 275 F.3d 1199 (9th Cir. 2002) (same; EPA); *Giglio v. Monsanto Co.*, Case No.: 15cv2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016) (claims alleging that Monsanto "negligently failed to adequately warn the EPA of the dangers of Roundup and concealed information from and/or misrepresented information to the EPA concerning the severity of the risks and dangers of Roundup," which are "directly based on the propriety of disclosures made by [Monsanto] to the EPA, are preempted by FIFRA" (citing *Nathan Kimmel*, 275 F.3d at 1207)).  Like the *Giglio* plaintiff, Plaintiffs here repeatedly allege that Monsanto, when dealing with EPA regarding Roundup®-branded herbicides, concealed information from EPA, made misrepresentations to EPA, and failed to provide adequate warnings to EPA regarding the risks and dangers of those products.  *See, e.g.*, Compl. at ¶¶ 98-105, 147, 155,170, 176-77, 183, 195, 205, 215, 218, 221, 227, 229, 235, 246, 263.  In these circumstances, Monsanto's federal defense that these claims are impliedly preempted is far more than colorable.

68.     Monsanto's second federal defense is based on the ***express preemption*** provision set forth in FIFRA, which preempts state-law claims based on allegedly inadequate herbicide warnings that would "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]," 7 U.S.C. § 136v(b).  In this case, it is plausible that Plaintiffs' state-law claims based on Monsanto's alleged failure to warn that glyphosate poses a cancer risk satisfy both parts of § 136v(b) and therefore are preempted by FIFRA.  The claims at issue here satisfy the "requirements for labeling or packaging" part of § 136v(b).  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005) (holding that "fraud

- 32 -

and negligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging'" (citing § 136v)).

69.     Moreover, it is plausible that the other part of § 136v(b) is satisfied because Plaintiffs' state-law warnings-based claims revolve around the contention that Monsanto's glyphosate-based herbicides should have included a cancer warning, which means that Plaintiffs' claims would impose requirements "in addition to or different from those required under [FIFRA]," § 136v(b), because EPA repeatedly made FIFRA-based regulatory determinations that glyphosate does not pose a cancer risk,[6] which have informed EPA's repeated FIFRA approvals of labeling for Roundup®-branded herbicides without any cancer warning for many years, including as recently as March 2016.[7]  In these circumstances, FIFRA's express preemption provision gives Monsanto a colorable federal defense to Plaintiffs' warnings-based claims.  *See, e.g.*, 7 U.S.C. § 136v(b); *Bates,* 544 U.S. 431; *Mirzaie v. Monsanto Co.*, No. 15-cv-04361-DDP, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016).[8]

---

[6] *See* EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094 ("[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment.") (attached as Exhibit 2); Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. EPA, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014 (endorsing EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans") (attached as Exhibit 3); Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180) ("EPA has concluded that glyphosate does not pose a cancer risk to humans."); Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180) ("There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."); Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180) ("Glyphosate has no carcinogenic potential."); Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180) ("No evidence of carcinogenicity."); EPA, *Reregistration Eligibility Decision Document: Glyphosate*, 14 (Sept. 1993), https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_PC-417300_1-Sep-93.pdf ("On June 26, 1991, the Agency classified glyphosate in Group E (evidence of non-carcinogenicity for humans), based on a lack of convincing evidence of carcinogenicity in adequate studies with two animal species.") (attached as Exhibit 4).

[7] *See* March 10, 2016 EPA Letter (with approved labeling for Roundup®-branded herbicide), https://www3.epa.gov/pesticides/chem_search/ppls/071995-00051-20160310.pdf (attached as Exhibit 5); March 10, 1992 EPA Letter (with approved labeling for Roundup®-branded herbicide), https://www3.epa.gov/pesticides/chem_search/ppls/000524-00452-19920310.pdf (attached as Exhibit 6).

[8] Although courts have denied Monsanto's motions to dismiss based upon express preemption in other Roundup® lawsuits, *see, e.g.*, *Giglio*, 2016 WL 1722859, at *1-3; *Hernandez v. Monsanto Co.*, Case No. CV 16-1988-DMG

*(Footnote continued)*

70.     **Fourth**, the "person" element is satisfied.  Monsanto is a corporation, so it is a "person" for purposes of § 1442(a)(1).  *See Jacks*, 701 F.3d at 1230 n.3; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *see also* 1 U.S.C. § 1.

71.     In addition to satisfying the elements discussed above, removal is appropriate in this case because it would comport with the purpose of the federal officer removal statute by ensuring that claims asserted in state courts cannot be used to interfere with a federal agency's efforts to carry out its regulatory responsibilities.  As the Supreme Court has recognized, one of the primary purposes of the federal officer removal statute was to have federal defenses litigated in federal courts.  *See Willingham*, 395 U.S. at 407; *Kinetic Sys., Inc. v. Federal Financing Bank*, 895 F. Supp. 2d 983, 991 (N.D. Cal. 2012) (citing *Willingham*, 395 U.S. at 406-07).  In other words, "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum."  *Willingham*, 395 U.S. at 407; *see Durham*, 445 F.3d at 1252 (stating that "Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830s" and that

---

(Ex), 2016 WL 6822311 (C.D. Cal. July 12, 2016), that does not mean that Monsanto's express preemption defense is not colorable for purposes of federal officer removal.  Determining whether a defense is colorable (or plausible) for purposes of federal officer removal is different than determining whether the defense requires a court to grant a motion to dismiss.  Prior motion-to-dismiss rulings regarding Monsanto's express preemption defense do not mean that is not plausible that the defense will prevail at a later stage of the litigation when presented in a different context – for example, by motion for summary judgment, based on a different factual and legal record than the record before the courts that issued prior motion-to-dismiss rulings.  In *Giglio* and *Hernandez*, both courts acknowledged the limitations imposed by ruling on a motion to dismiss.  *Giglio*, 2016 WL 1722859, at *3 ("[Monsanto] argues that Roundup in fact is not carcinogenic and that the EPA has made determinations that this is the case.  However, a motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they were relying on, and what effect their statements have on the issues before the Court."); *Hernandez*, 2016 WL 6822311,, at *8 ("Monsanto's argument could also be construed as an offer of proof that the EPA's factual findings are evidence that Roundup is not, in fact, carcinogenic.  Such arguments, which require the Court to weigh evidence and make factual determinations, are not appropriate at the motion to dismiss stage.").  The difference between evaluating a defense for purposes of determining removability and evaluating the defense for other purposes is illustrated by the Supreme Court's *Jefferson County* opinion, where the Court held that the federal defense was colorable for purposes of making the case removable, but then proceeded to reject the defense.  *See Jefferson County*, 527 U.S. at 431 (holding that federal officer removal was proper because defendants presented "a colorable federal defense" – "although we ultimately reject [the defense]"); *see also Kinetic Sys., Inc.*, 895 F. Supp. 2d at 987 (denying plaintiff's remand motion and denying defendant's motion to dismiss; holding that, although defendant's federal defenses are "'colorable' for purposes of removal, they are not meritorious").

"the Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since" (citation omitted).[9]

72.     In light of Plaintiffs' novel allegations of illegal collusion between a federal regulatory agency and a company it was supposed to regulate, this lawsuit belongs in federal court. For the foregoing reasons, § 1442(a)(1) federal officer removal is proper in this case.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

73.     Monsanto has satisfied all procedural requirements for removal.

74.     On March 17, 2017, Plaintiffs filed their Complaint captioned *Loretta Pennie, et al. v. Monsanto Company, et al.*, in the Superior Court of the State of California for the County of Alameda, Case Number RG17853420 ("State Court Action"), which is attached hereto as part of composite Exhibit 1.

75.     Defendant Monsanto was served on March 20, 2017. Because this Notice of Removal is filed within 30 days of the date of service, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

76.     Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a). The Superior Court of the State of California for the County of Alameda is located within the Northern District of California, *see* 28 U.S.C. § 84(a), and venue is proper in this Court under 28 U.S.C. § 1441(a).

77.     The complete state file is attached as composite Exhibit 1.

78.     A copy of this Notice of Removal is being served upon counsel for Plaintiffs, and a copy is being contemporaneously filed in the State Court Action.

79.     Defendants Wilbur-Ellis Company, LLC and Wilbur-Ellis Feed, LLC consent to this removal and will file their consent contemporaneously herewith and within 30 days of being served with process. By requesting and/or providing this consent, no Defendant concedes that

---

[9] Although plaintiffs contend that EPA's and Monsanto's collusive conduct was illegal, that does not preclude federal officer removal because that issue should be resolved by a federal court, not a state court. *See Isaacson*, 517 F.3d at 138 ("Indeed, whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal – not state – courts to answer." (citing *Willingham*, 395 U.S. at 409)); *Bennett*, 607 F.3d at 1088 (citing *Isaacson*, 517 F.3d at 138).

either Wilbur-Ellis Company, LLC or Wilbur-Ellis Feed, LLC is properly joined as a defendant in this action.

WHEREFORE, Defendant Monsanto respectfully removes this action from the Superior Court of the State of California for the County of Alameda, Case Number RG17853420, to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442(a)(1), and 1367(a).


DATED:  March 28, 2017                         Respectfully submitted,

                                               /s/ Steven R. Platt
                                               Steven R. Platt
                                               State Bar No. 245510
                                               (splatt@pmcos.com)
                                               Richard A. Clark
                                               State Bar No. 39558
                                               (rclark@pmcos.com)
                                               PARKER, MILLIKEN, CLARK, O'HARA
                                               & SAMUELIAN, P.C.
                                               555 S. Flower Street, 30th Floor
                                               Los Angeles, CA 90071
                                               Telephone: (213) 683-6500
                                               Facsimile:  (213) 683-6669

                                               Joe G. Hollingsworth (*pro hac vice* admission
                                               anticipated)
                                               (jhollingsworth@hollingsworthllp.com)
                                               HOLLINGSWORTH LLP
                                               1350 I Street, N.W.
                                               Washington, DC  20005
                                               Telephone:  (202) 898-5800
                                               Facsimile:  (202) 682-1639

                                               Attorneys for Defendant
                                               MONSANTO COMPANY

1  **PARKER, MILLIKEN, CLARK, O'HARA**
   **& SAMUELIAN, P.C.**
2  Richard A. Clark (State Bar No. 39558)
   Steven R. Platt (State Bar No. 245510)
3  555 S. Flower Street, 30th Floor
   Los Angeles, CA 90071
4  Tel:    213-683-6500
   Fax:   213-683-6669
5  Email: rclark@pmcos.com
          splatt@pmcos.com
6
7  **HOLLINGSWORTH LLP**
   Joe G. Hollingsworth (*pro hac vice* admission
   anticipated)
8  1350 I Street, N.W.
   Washington, DC  20005
9  Tel:    202-898-5800
   Fax:    202-682-1639
10 Email: jhollingsworth@hollingsworthllp.com

11 *Attorneys for Defendant*
   *MONSANTO COMPANY*
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16 LORETTA PENNIE, *et al.*,

17          Plaintiffs,                      | Case No. 17-cv-1711

18      v.                                   | NOTICE OF REMOVAL

19 MONSANTO COMPANY, WILBUR-ELLIS
   COMPANY, LLC, WILBUR-ELLIS FEED,
   LLC and DOES 1 through 100 inclusive,
20
21          Defendants.

22                      <u>**NOTICE OF REMOVAL**</u>

23         PLEASE TAKE NOTICE that Defendant Monsanto Company ("Monsanto"), with the

24 consent of Wilbur-Ellis Company, LLC and Wilbur-Ellis Feed, LLC, respectfully removes this

25 case to the United States District Court for the Northern District of California, from the Superior

26 Court of the State of California for the County of Alameda, pursuant to 28 U.S.C. §§ 1331,

27 1441(a), 1442(a)(1) and 1367(a).

28
                                      - 1 -

This Court has original federal question jurisdiction under 28 U.S.C. § 1331, because the Complaint asserts violations of federal law and presents substantial federal questions. As this Court has original federal question jurisdiction under § 1331, the action is removable under 28 U.S.C. § 1441(a). For a separate, alternative and independent reason, this lawsuit is removable based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiffs' claims invite state court jurors to evaluate whether the federal agency that is required by federal law to regulate Monsanto colluded with Monsanto to maintain federal regulatory approval for the products at issue in this case. In addition, this Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over any claim over which it does not have original federal question jurisdiction, because it forms part of the same case or controversy as those claims over which the Court has original federal question jurisdiction. In support of removal, Monsanto states:

## INTRODUCTION

This lawsuit belongs in federal court. Plaintiffs' Complaint presents a collateral attack on the federal regulatory scheme governing the registration of pesticides and herbicides for use in the United States, as well as the federal officials who administer it. The Complaint alleges that Monsanto and officials from the U.S. Environmental Protection Agency ("EPA") illegally colluded to falsely classify glyphosate – the active ingredient in Monsanto's Roundup®-branded herbicides – as non-carcinogenic and wrongfully maintain federal regulatory approval for these herbicide products. The Complaint also expressly defines the scope of Plaintiffs' state law claims according to the duties and obligations imposed by federal law. Finally, the Complaint directly alleges, on its face, that Monsanto violated federal statutes and federal regulations, and asserts those alleged violations as a predicate for Plaintiffs' state law claims. As a result, every count in the Complaint raises substantial, disputed federal questions within the original jurisdiction of the district courts.

Plaintiffs allege that they (or their decedents) developed Non-Hodgkin's Lymphoma ("NHL") or other cancers as a result of their exposure to glyphosate contained in Roundup® herbicide, an EPA-registered herbicide manufactured and sold by Monsanto. Plaintiffs directly

challenge EPA's registration of Roundup®, contending that Monsanto secured the initial

registration by defrauding and exerting improper influence over EPA and that, more recently,

Monsanto and EPA together illegally have "colluded" to maintain that registration by quashing

investigations into the carcinogenicity of glyphosate by other federal agencies, including the

Agency for Toxic Substances and Disease Registry ("ATSDR").  This alleged more recent

collusive activity purportedly involved the federal officer in EPA's Office of Pesticide Programs,

Jess Rowland, who chaired EPA's Cancer Assessment Review Committee, which was the

committee of EPA scientists who recently assessed the carcinogenicity of glyphosate and

endorsed EPA's existing classification of glyphosate as not likely to be carcinogenic to humans.

Plaintiffs incorporate these allegations of collusion and fraud into every count of their

Complaint.  In addition, Plaintiffs expressly predicate their state law claims on Monsanto's

alleged violation of federal statutes and regulations.  Plaintiffs affirmatively limit all of their state

law claims to the assertion of duties and obligations that are imposed by federal law.  They also

specifically allege several violations of federal law as a basis for their claims.

Although the Complaint purports to plead only state common law and statutory claims,

those claims raise substantial federal questions over which this Court has original federal

question jurisdiction, under 28 U.S.C. § 1331, for three separate reasons.  First, Plaintiffs' claims

raise substantial federal questions because they directly challenge the actions of a federal agency

and the conduct of federal agency officials.  Plaintiffs allege that EPA's initial registration of

Roundup® was based on fraudulent test results, omissions, and misrepresentations, and that EPA

officials actively colluded with Monsanto to maintain that registration in exchange for their own

personal financial gain.  These allegations present substantial federal questions regarding not

only the validity of a federal agency's regulatory decision, but also the propriety of actions taken

by EPA, and the propriety of actions taken by Monsanto in obtaining federal regulatory approval

of its Roundup® products.  Those questions are governed entirely by federal law.

Second, every count in the Complaint presents substantial federal questions, because

Plaintiffs have defined the scope of their state law claims according to federal law.  With respect

to all counts asserted, Plaintiffs' Complaint alleges: "To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims." Compl. at ¶ 144. As a result, even though the claims are nominally state law claims, it is federal, not state, law that determines the scope of each and every count of the Complaint, and it is federal law that defines all of the duties and obligations Plaintiffs seek to assert in this lawsuit. Indeed, the only way to determine the scope of the state law duties and obligations Plaintiffs seek to assert in each count is to resolve disputed questions of federal law regarding the nature and scope of the duties and obligations imposed by federal law. By limiting their state causes of action to assert *only duties and obligations arising under federal law*, Plaintiffs have made the case thoroughly and almost entirely federal.[1]

Finally, Plaintiffs' claims raise substantial federal questions because Plaintiffs allege multiple violations of federal law on the face of the Complaint. Where violations of federal law are alleged as the basis for the asserted state law claims, the claims "arise under" federal law and fall within the original jurisdiction of the district courts. For each of these reasons, Monsanto is entitled to remove this case to federal court under 28 U.S.C. § 1331.

Monsanto is also entitled to remove this action for the separate and alternative reason that this Court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). When a state court lawsuit satisfies § 1442(a)(1), the case can be removed "despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). Here, as required by § 1442(a)(1), Monsanto has colorable federal defenses (based on the Supremacy Clause and federal preemption principles). The other § 1442(a)(1) requirements are satisfied as well. Plaintiffs' allegations regarding illegal collusion between federal officers and Monsanto with respect to Monsanto's glyphosate-based herbicides show that Plaintiffs contend that Monsanto

---

[1] Monsanto does not concede that all of the federal duties and obligations that Monsanto purport to assert have an identical state law counterpart under the common law of the states whose laws apply to Plaintiffs' claims. Nor does Monsanto concede that all duties and obligations arising under federal law are duties that are owed to, or enforceable by private litigants. Thus, Monsanto does not concede that all of the federal duties and obligations Plaintiffs purport to assert can be asserted as a basis for liability in an action, such as this, brought under state law.

- 4 -

has had a special relationship with EPA – namely, Monsanto allegedly acted under the direction of federal officers and a causal connection allegedly existed between that official authority and the Monsanto conduct challenged by Plaintiffs in this lawsuit.  Due to Plaintiffs' novel allegations of illegal collusion between federal officers at EPA and the company that the agency was supposed to regulate, this lawsuit should be resolved in federal court to ensure, in accordance with the purposes of the federal officer removal statute, that claims asserted in state courts cannot be used to interfere with a federal agency's efforts to carry out its regulatory responsibilities.

**FACTUAL BACKGROUND**

**I.      Roundup® Litigation**

1.      The Complaint purports to join the claims of forty-one (41) Plaintiffs from various counties in California.

2.      This lawsuit is one of several filed against Monsanto after the International Agency for Research on Cancer ("IARC") published a report in 2015 classifying glyphosate in Category 2A, which IARC explains "is used when there is limited evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in experimental animals.  *Limited evidence* means that a positive association has been observed between exposure to the agent and cancer *but that other explanations for the observations (called chance, bias, or confounding) could not be ruled out*."  IARC Monographs Volume 112: evaluation of five organophosphate insecticides and herbicides (March 20, 2015) (second emphasis added).[2]

3.      In the past month alone, Plaintiffs' counsel in this lawsuit and other plaintiffs' attorneys have filed thirteen (13) multi-plaintiff lawsuits against Monsanto in Missouri state court (St. Louis City) that are very similar to this lawsuit.  Those complaints include the claims of over one-thousand (1000) plaintiffs, but all individual complaints (except one) include fewer than 100 plaintiffs.

---

[2] Available at:  https://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf (last visited 3/22/17).

4. Federal lawsuits alleging that Monsanto's Roundup®-branded herbicides cause cancer have been transferred for coordinated multidistrict litigation ("MDL") proceedings to Judge Vince Chhabria of this Court. *See In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.). Over 65 plaintiffs are part of those MDL proceedings. Judge Chhabria has limited the first phase of those proceedings to determining whether scientifically reliable, admissible evidence exists to establish that glyphosate can cause NHL (*i.e.*, general causation).

## II. The Federal Regulatory Framework

### A. Registration of Pesticides

5. The manufacture, formulation, labeling and distribution of pesticides, such as Monsanto's Roundup®-branded herbicide, are regulated by EPA under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* Federal law prohibits the sale of pesticides that have not been registered by the EPA, except as permitted by FIFRA. 7 U.S.C. § 136a; 40 C.F.R. § 152.42 ("An application for new registration must be approved by the Agency before the product may legally be distributed or sold, except as provided by § 152.30.").

6. EPA is permitted to register a pesticide only "if the Administrator determines that, when considered with any restrictions imposed under subsection (d) of this section –

    a. its composition is such as to warrant the proposed claims for it;

    b. its labeling and other material required to be submitted comply with the requirements of this subchapter;

    c. it will perform its intended function without unreasonable adverse effects on the environment; and

    d. when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). The statute defines "unreasonable adverse effects on the environment" to mean: "(1) any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of pesticide in or on any food inconsistent with the standard under section 346a of Title 21." 7 U.S.C. § 136(bb).

- 6 -

Case 3:17-cv-01711-VC Document 53-3 Filed 03/28/17 Page 44 of 75

7.      Applicants for registration of a pesticide must complete an application and submit to EPA materials and data specified by FIFRA and its implementing regulations.  *See* 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50; 40 C.F.R. § 152.80, *et seq*.  The "Administrator shall publish guidelines specifying the kinds of information which will be required to support the registration of a pesticide and shall revise such guidelines from time to time."  7 U.S.C. § 136a(c)(2)(A).

8.      The federal data submission requirements for registration of a pesticide are set out in federal regulations, which "specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products."  40 C.F.R. § 158.1, *et seq*.  In addition, "EPA has the authority to establish or modify data needs for individual pesticide chemicals."  40 C.F.R. § 158.30(a).

9.      Before registering a pesticide, EPA may require the submission of data relating to, *inter alia*, product chemistry, product performance, toxicology (humans and domestic animals), hazards to nontarget organisms, applicator and post-application exposure, pesticide spray drift evaluation, environmental fate, and residue chemistry.  *See* 40 C.F.R. § 158.130, *et seq*.  Ultimately, "[t]he Agency will determine whether the data submitted or cited to fulfill the data requirements specified in this part are acceptable."  40 C.F.R. § 158.70.  "The data requirements for registration are intended to generate data and information necessary to address concerns pertaining to the identity, composition, potential adverse effects and environmental fate of each pesticide."  40 C.F.R. § 158.130(a).

10.     EPA has registered Roundup®-branded pesticides for distribution, sale and manufacture in the United States.  *See* Compl. at ¶ 85.

11.     Under FIFRA, EPA periodically must re-register previously registered pesticide products to ensure that they continue to meet the standards in FIFRA, 7 U.S.C. § 136a(c)(5).  7 U.S.C. § 136a-1.  "EPA accomplishes this reevaluation through its Registration Standards process."  Pesticide Registration Standards, 50 FR 48998-01 (Nov. 27, 1985).

**B.      Pesticide Labeling**

12.     Federal law also governs pesticide labeling. FIFRA defines "label" as "the

1   written, printed, or graphic matter on, or attached to, the pesticide or device or any of its

2   containers or wrappers," and defines "labeling" as "all labels and all other written, printed or

3   graphic matter (A) accompanying the pesticide or device at any time; or (B) to which reference is

4   made on the label or in literature accompanying the pesticide or device…." 7 U.S.C. § 136(p).

5        13.    "In 40 C.F.R. Part 156, EPA has regulated almost every aspect of pesticide

6   labeling." *Papas v. Upjohn Co*., 926 F.2d 1019, 1024 (11th Cir. 1991), *rev'd on other grounds*,

7   505 U.S. 1215 (1992). 40 C.F.R. § 156.10(a)(1) requires that "[e]very pesticide product shall

8   bear a label containing the information specified by the Act and the regulations in this part."

9   Under 7 U.S.C. § 136v(b), "State[s] shall not impose or continue in effect any requirements for

10  labeling or packaging in addition to or different from those required under this subchapter."

11  **III.    Allegations of the Complaint**

12       14.    In this lawsuit, Plaintiffs allege that they or their decedents developed NHL and

13  other cancers as a result of exposure to Roundup® herbicides manufactured and sold by

14  Monsanto. Compl. at ¶¶ 56-57.

15       15.    The gravamen of Plaintiffs' Complaint is their allegation that Monsanto secured

16  and maintained EPA's registration of Roundup®-branded products through acts of scientific

17  fraud, the falsification of test results submitted to EPA, and illegal collusion between EPA

18  officials and Monsanto. *See, e.g.*, Compl. at ¶¶ 97-103; *id*. at ¶ 103 (citing the alleged "falsity of

19  the tests that underlie [Roundup®'s] registration"); *id*. at ¶ 105 (alleging "collusion" between

20  EPA and Monsanto).

21       16.    Plaintiffs contend that "[o]n two occasions, the EPA found that the laboratories

22  hired by Monsanto to test the toxicity of its Roundup® products for registration purposes

23  committed fraud." Compl. at ¶ 98.

24       17.    Plaintiffs also contend that, "in assessing the safety of glyphosate," EPA relied on

25  studies that were ghostwritten by Monsanto and that "minimize any safety concerns about the

26  use of glyphosate." Compl. at ¶ 104. According to the Complaint, "[t]hrough these means

27  Monsanto has fraudulently represented that independent scientists have concluded that

28

Glyphosate is safe." *Id.*  Similarly, Plaintiffs allege that "Monsanto has also ghostwritten letters by supposed independent scientists submitted to regulatory agencies who are reviewing the safety of glyphosate." *Id.*

18.  Plaintiffs claim that "Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies such as the Agency for Toxic Substances and Disease Registry."  Compl. at ¶ 105.  Plaintiffs also allege that Monsanto improperly influenced EPA through the "offering of lucrative consulting gigs to retiring EPA officials."  *Id.*  Plaintiffs' allegations of illegal collusion include Jess Rowland, the EPA Office of Pesticide Programs ("OPP") employee who chaired EPA's Cancer Assessment Review Committee ("CARC") – the committee of EPA scientists who recently assessed whether glyphosate is a carcinogen and endorsed EPA's existing classification of glyphosate as not likely to be carcinogenic to humans.  According to a motion to compel Rowland's deposition, there was "a concerted effort by Monsanto and the OPP, Jess Rowland, and his CARC committee to 'kill' the glyphosate/lymphoma issue for the company."  Plaintiffs' Motion to Compel the Deposition of Jess Rowland at 2, *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D. Cal. Mar. 14, 2017), ECF No. 189.

19.  Plaintiffs allege that, by pressuring EPA, Monsanto secured a change in EPA's classification of glyphosate, from "possibly carcinogenic to humans" to "evidence of non-carcinogenicity in humans."  Compl. at ¶ 97.  In broad terms, Plaintiffs claim that "Monsanto championed falsified data and attacked legitimate studies that revealed [Roundup®'s] dangers [and] … led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup® was safe."  Compl. at ¶ 88.

20.  The Complaint asserts the following counts:  (1) strict liability (design defect); (2) strict liability (failure to warn); (3) negligence; (4) fraud; (5) breach of express warranties; and (6) breach of implied warranties.

21.  Under the heading "Limitation on Allegations," the Complaint states:  "The

- 9 -

allegations in this pleading are made pursuant to California law. To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims. All claims asserted herein run parallel to federal law…." Compl. at ¶ 144.

<u>**SUBSTANTIVE REQUIREMENTS FOR REMOVAL**</u>

**I.     THIS ACTION IS REMOVABLE UNDER 28 U.S.C. §1441(a), AS THIS COURT HAS ORIGINAL FEDERAL QUESTION JURISDICTION OVER PLAINTIFFS' CLAIMS.**

22.     This action is removable to federal court under 28 U.S.C. § 1441(a), because this Court has original federal question jurisdiction under 28 U.S.C. §1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

23.     28 U.S.C. § 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants" to federal court.

24.     Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

25.     A case can be removed on federal question ("arising under") grounds even if the complaint asserts only state law causes of action. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (distinguishing between two different kinds of federal question removal).

26.     As the *Grable* Court held, federal question removal is available when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. *See also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (district courts have jurisdiction under 28 U.S.C. § 1331 where "(1) the right to relief under state law depends on the resolution of a substantial, disputed federal question, and (2) the exercise of jurisdiction will not disrupt the balance between federal and state jurisdiction adopted by Congress.").

- 10 -

27. Courts repeatedly have applied *Grable* to allow defendants to remove lawsuits where substantial, disputed federal questions are necessarily raised by state-law claims. *See, e.g.*, *Pet Quarters, Inc.* 559 F.3d at 779; *Rhode Island Fisherman's Alliance, Inc. v. Rhode Island Dept. of Envtl. Mgmt.*, 585 F.3d 42, 48-52 (1ˢᵗ Cir. 2009); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195-96 (2d Cir. 2005); *Bd. of Comm'rs of Se. Louisiana Flood Protect. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, --F.3d--, 2017 WL 874999 (5ᵗʰ Cir. Mar. 3, 2017); *Hughes v. Chevron Phillips Chem. Co. LP*, 478 Fed. App'x 167 (5ᵗʰ Cir. 2012); *Los Angeles Police Protective League v. City of Los Angeles*, 314 Fed. App'x 72, 72-75 (9ᵗʰ Cir. 2009); *Davis v. J.P. Morgan Chase, N.A.*, 2013 WL 6708765, at *2-3 (E.D. Mo. Dec. 18, 2013) (noting that cases that include challenges to federal agency action support a finding of substantial federal question jurisdiction); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017).

28. "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc.*, 559 F.3d at 779 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

29. In addition, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

30. Monsanto is entitled to remove this case to federal court, because Plaintiffs' Complaint raises substantial, disputed questions of federal law for three separate reasons:

a. First, this Court has original federal question jurisdiction over this action, because Plaintiffs allege that Monsanto secured federal regulatory approval for its Roundup®-branded products by defrauding, improperly influencing, and illegally colluding with EPA officials. Those allegations raise disputed questions of federal law – *e.g.*, whether EPA officials illegally colluded with Monsanto in violation of federal law, whether Monsanto's interactions with EPA officials complied with federal requirements, whether EPA failed to fulfill its regulatory duties with respect to the registration of

- 11 -

Roundup®, and whether EPA's regulatory decisions regarding Roundup® were the result of improper influence or federal regulatory fraud. These questions are "actually disputed" and "substantial," and their resolution in a federal forum will not disturb the congressionally approved balance of federal and state judicial responsibilities. Challenges to federal agency action present "substantial" federal questions; Congress has granted federal courts jurisdiction over challenges to federal agency action; and a sufficiently small number of state claims are predicated on allegations of illegal collusion between federal regulators and regulated companies that asserting jurisdiction would not materially change the balance of federal and state litigation.

b.  Second, this Court has original federal question jurisdiction, because Plaintiffs have defined the scope of each of their state law claims according to the scope of the duties and obligations imposed by federal law. As a result, every count necessarily raises questions regarding the scope of the relevant federal duties and obligations. Those federal questions are "actually disputed" and "substantial." The federal interest in these questions is "substantial," because their resolution will guide current and future applicants for pesticide registrations in their interactions with EPA. Resolution of these questions in federal court will not disrupt the congressionally approved balance of state and federal judicial responsibility, because Congress specifically vested the federal district courts with jurisdiction specifically to enforce, and prevent and restrain violations of FIFRA, and to review EPA decisionmaking. And, exercising jurisdiction will not change the balance of federal and state court litigation because it is based on Plaintiffs' unusual decision to limit all of their state claims to the assertion of federal duties.

c.  Third, this Court has original federal question jurisdiction, because multiple violations of federal law are alleged on the face of the Complaint as a predicate for Plaintiffs' state law claims, and those allegations raise federal questions that are "actually disputed" and "substantial," and their resolution in a federal forum will not disturb the congressionally approved balance of federal and state judicial responsibilities.

For example, Plaintiffs allege that Monsanto violated federal law by submitting third-party testing data to EPA that was later determined to be false. That allegation raises disputed federal questions – *e.g.*, whether applicants for pesticide registrations have a duty under federal law to guarantee the accuracy of third-party testing data they submit to EPA – that are substantial, as their answers may impact the scope of even valid testing data that applicants will make available to the agency going forward. Similarly, Plaintiffs' allegation that Monsanto violated federal regulations by communicating with EPA employees raises substantial federal questions regarding the extent to which applicants may communicate with the agency. The federal interest in that question is substantial, because EPA relies on direct communications with applicants to perform its regulatory function. The fact that Congress gave federal courts jurisdiction over FIFRA enforcement demonstrates that the exercise of jurisdiction over this lawsuit will not disturb the congressionally approved balance of federal and state judicial responsibilities.

31.     Finally, this Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over any claim over which it does not have original federal question jurisdiction, because all of the claims asserted form part of the same case or controversy.

### A. Plaintiffs' Allegations that Federal Regulators Colluded with Monsanto in Misrepresenting and Concealing the Health Risks of Glyphosate Raise Substantial Federal Questions within the Court's Original Jurisdiction

32.     This Court has original federal question jurisdiction over Plaintiffs' allegations that federal regulators colluded with Monsanto in misrepresenting and concealing the health risks of glyphosate, because they necessarily raise substantial, disputed federal questions for two separate reasons.

33.     First, Plaintiffs' allegations necessarily raise substantial, disputed federal questions because they are predicated on allegations that federal regulators illegally colluded with Monsanto to undermine the regulatory process in exchange for their own personal financial gain. The propriety of interactions between EPA and the entities it regulates is inherently federal, and the federal interest in challenges to federal regulatory conduct is substantial.

- 13 -

34.     Second, Plaintiffs' claims necessarily raise substantial, disputed federal questions because they are predicated on allegations that Monsanto's fraudulent acts prevented EPA from properly performing its regulatory function in registering Roundup®.  Allegations that regulatory fraud prevented federal regulators from fulfilling their regulatory duties raise substantial federal questions within the original jurisdiction of the district courts.

### 1.     Plaintiffs' Allegations of Illegal Collusion Between Federal Regulators and Monsanto Raise Substantial Federal Questions.

35.     Plaintiffs' Complaint alleges:  "Monsanto … violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies such as the Agency for Toxic Substances and Disease Registry.  Monsanto's close connection with the EPA arises in part from its offering of lucrative consulting gigs to retiring EPA officials."  Compl. at ¶ 105.  These allegations are incorporated into every cause of action asserted into the Complaint.  *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id*. at ¶ 170 (same for Count II); *id*. at ¶ 195 (same for Count III); *id*. at ¶ 215 (same for Count IV); *id*. at ¶ 227 (same for Count V); *id*. at ¶ 246 (same for Count VI); *id*. at ¶ 263 (same for exemplary damages allegations).

36.     Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, in exchange for their personal financial gain, necessarily raises questions of federal law for several reasons:

a.     First, the Complaint directly alleges violations of federal regulations.  *See* Compl. at ¶ 105 ("Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees….").

b.     Second, the relationship between a federal regulatory agency and those it regulates is governed exclusively by federal law.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) ("[T]he relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law.").

- 14 -

c.  Third, the Complaint itself requires that any analysis of these allegations begin with a determination of the duties and obligations imposed by federal law. *See* Compl. at ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims."); *see also* Section I.B., *infra*. Plaintiffs' claims and allegations, therefore, require determination of the relevant federal law standards that might be enforceable via private common law claims.

37.  Thus, Plaintiffs' allegations of unlawful collusion between federal regulators at EPA and Monsanto require a determination of the duties and obligations federal law imposes with respect to interactions between EPA and those it regulates. They also require a determination of the federal duties and obligations relevant to assessing the propriety of any post-employment consulting work by federal regulators. Plaintiffs have not identified the specific federal regulations they allege Monsanto violated in meeting with EPA, but various federal regulations and statutes may be relevant to their collusion allegations. For example:

a.  Various federal regulations address the propriety of interactions between EPA and applicants for pesticide registration, as they relate to obtaining registrations. *See, e.g.*, 40 C.F.R. § 158.30(a) ("The Agency encourages each applicant to consult with EPA to discuss the data requirements particular to its product prior to and during the registration process."); 40 C.F.R. § 158.45(b)(1) ("Applicants are encouraged to discuss a data waiver request with the Agency before developing and submitting supporting data, information, or other materials."); 40 C.F.R. § 158.70 ("Registrants and applicants, however, must consult with the EPA before initiating combined studies."); 40 C.F.R. § 158.80(b) ("Consultation with the Agency should be arranged if applicants are unsure about suitability of such data.").

b.  Various federal regulations also address the propriety of meetings between EPA and pesticide registrants relating to the creation of Registration Standards for pesticide re-registrations. *See, e.g.*, 40 C.F.R. § 155.27 ("The Agency may, however,

- 15 -

meet with registrants to discuss its pending reviews, decisions, or documents, in accordance with the meeting procedures in § 155.30, and the docketing procedures in § 155.32."); 40 C.F.R. § 155.30 ("EPA personnel may, upon their own initiative or upon request by any interested person or party, meet or communicate with persons or parties outside of government concerning a Registration Standard under development.  Such meetings or communications will conform to the following policies and procedures…").

c. Federal law also provides standards that may be relevant to Plaintiffs' allegation that Monsanto gained improper influence over EPA by "offering…lucrative consulting gigs to retiring EPA officials," Compl. at ¶ 105.  *See, e.g.,* 18 U.S.C. § 201 *et seq*.

38. The federal questions raised by Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, for their own personal financial gain, are also "actually disputed" in the litigation. Monsanto denies any illegal collusion, denies that any alleged meetings between EPA and Monsanto were prohibited by federal law, and denies that any consulting work performed by former EPA officials for Monsanto was improper under federal law.

39. The federal questions raised by Plaintiffs' allegations that EPA officials colluded with Monsanto in an unlawful scheme to prevent proper safety evaluations of glyphosate-based herbicides, in exchange for their personal financial gain, are also substantial:

a. The federal questions raised are substantial because Plaintiffs directly challenge the propriety *and legality* of actions taken by a federal regulatory agency.  *See Pet Quarters, Inc.*, 559 F.3d at 779 ("Claim 12 presents a substantial federal question because it directly implicates actions taken by the Commission in approving the creation of the Stock Borrow Program and the rules governing it.").  Indeed, "the [Supreme] Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by 'a federal department, agency, or service.'" *Municipality*

- 16 -

*of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (quoting *Empire Healthchoice Assurance*, 547 U.S. 677, 700 (2006)); *see also Lafoy v. Volkswagen Group of Am., Inc.*, 2016 WL 2733161, at *4 (E.D. Mo. May 11, 2016) (substantial federal question jurisdiction exists, not only where a state law claim may turn on an interpretation of federal law, but also "where the resolution of the issue has broader significance for the federal government, such as where there is a direct interest of the government for the availability of a federal forum to vindicate its own administrative action.") (citing *Municipality of Mayaguez*, 726 F.3d at 14).

        b.     State law claims challenging federal agency actions raise substantial federal questions and fall within the original jurisdiction of the federal courts. *See, e.g., Grable*, 545 U.S. at 314-15 (state law claim challenging the compatibility of federal agency's action with federal statute supported removal); *Pet Quarters, Inc.*, 559 F.3d at 779 (claim presents a substantial federal question if it directly implicates actions taken by federal regulators and would control resolution of other cases).

        40.     Finally, resolution of these disputed questions of federal law by this Court will not upset the balance of judicial power approved by Congress. Challenges to federal agency action are routinely decided in federal court. *See, e.g., Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007) ("Moreover, the general jurisdiction statutes confer original jurisdiction over challenges to agency actions to the district courts, or to the Federal Circuit."); *Gallo Cattle Co., v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998) ("a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to agency action as claims arising under federal law, unless a statute expressly precludes review."). The federal interest in the availability of a federal forum to resolve disputes regarding the actions of federal regulators is strong. *See Bender v. Jordan*, 623 F.3d 1128, 1130-31 (D.C. Cir. 2010). Moreover, state-law claims alleging illegal collusion between a federal regulatory agency and a company regulated by the agency are rare, so asserting federal question jurisdiction over this lawsuit "would not materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

- 17 -

### 2. Plaintiffs' Allegations that EPA Decisionmaking Was Impaired by Regulatory Fraud Raise Substantial Federal Questions.

41. Plaintiffs' challenges to EPA's regulatory actions with respect to Roundup®-branded herbicides also raise substantial, disputed federal questions, for the additional reason that Plaintiffs allege that EPA's decision to register Roundup® was based on falsified testing results submitted to EPA in support of the registration, undue influence, and EPA's reliance on studies ghostwritten by Monsanto "which minimize[d] any safety concerns about the use of glyphosate." Compl. at ¶ 104.

42. The Complaint specifically alleges that Monsanto submitted to EPA falsified test results prepared by third-party researchers in support of glyphosate's registration. Compl. at ¶¶ 98-103. The Complaint also alleges that Monsanto "fraudulently represented [to EPA] that independent scientists have concluded that Glyphosate is safe" by "ghostwriting" "[m]ultiple studies" that "minimize any safety concerns about the use of glyphosate" and that were "submitted to and relied upon [by] … EPA in assessing the safety of glyphosate." *Id*. at ¶ 104. Plaintiffs also allege that Monsanto has "ghostwritten letters by supposed independent scientists submitted to regulatory agencies who are reviewing the safety of glyphosate." *Id*. These allegations are incorporated into every cause of action asserted into the Complaint. *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id*. at ¶ 170 (same for Count II); *id*. at ¶ 195 (same for Count III); *id*. at ¶ 215 (same for Count IV); *id*. at ¶ 227 (same for Count V); *id*. at ¶ 246 (same for Count VI); *id*. at ¶ 263 (same for exemplary damages allegations).

43. Plaintiffs' allegations that EPA failed to fulfill its regulatory duties because of Monsanto's alleged regulatory fraud necessarily raise substantial questions of federal law for several reasons:

    a. The Complaint itself asserts that Monsanto's alleged deceptions, misrepresentations, and omissions were prohibited by federal law. Compl. at ¶¶ 146, 218.

    b. Second, the relationship between a federal regulatory agency and those it regulates is governed exclusively by federal law. *Buckman*, 531 U.S. 347. *See also*

- 18 -

*Bader Farms*, 2017 WL 633815, at *3 ("whether federal regulatory bodies fulfilled their duties with respect to entities they regulate is 'inherently federal in character.'") (quoting *Buckman Co.*, 531 U.S. at 347).

          c.      Third, the Complaint itself requires that any analysis of these allegations begin with a determination of the duties and obligations imposed by federal law. *See* Compl. at ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims."); *see also* Section I.B., *infra*. Plaintiffs' claims and allegations, therefore, require determination of the relevant federal law standards that might be enforceable via private common law claims.

      44.      Thus, Plaintiffs' allegations that EPA's registration and other regulatory actions taken with respect to Roundup®-branded herbicides were predicated on fraud require a determination of the duties and obligations federal law imposes with respect to applications for pesticide registration and re-registration. Plaintiffs have not identified federal statutory or regulatory sources for all of the duties and obligations they seek to impose, but various federal statutes and regulations may be relevant to their regulatory fraud claims. For example:

          a.      Various federal regulations address the information to be included in an application for pesticide registration. *See, e.g.*, 40 C.F.R. § 152.80 *et seq.*, and 40 C.F.R. § 158.1 *et seq.*; § 152.80 ("This subpart E describes the information that an applicant must submit with his application for registration or amended registration to comply… with the provisions of FIFRA sec 3(c)(1)(F)."); § 158.1 ("The purpose of this part is to specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products.").

          b.      Various federal statutes and regulations also address the falsification of information relating to the testing of any pesticide, and the falsification of all or part of any application for registration of a pesticide. *See* 7 U.S.C. § 136j(a)(2)(Q) ("It shall be

- 19 -

unlawful for any person…to falsify all or part of any information relating to the testing of any pesticide…"); 7 U.S.C. § 136j(a)(2)(M) ("It shall be unlawful for any person…to knowingly falsify all or part of any application for registration….").

45.     The federal questions raised by Plaintiffs' allegations that the registration of Roundup®-branded herbicides was secured through regulatory fraud are "actually disputed" in the litigation, as Monsanto denies that it omitted material information from EPA relating to the registration of glyphosate, denies that it is responsible for submitting falsified testing results to EPA, and denies that it deceived EPA or violated federal law in any of the other particulars alleged.

46.     The federal questions raised by Plaintiffs' allegations of regulatory fraud are also "substantial," as their resolution will affect the interactions between current and future applicants for pesticide registration and EPA, and may adversely impact future data submissions to EPA. *See Nathan Kimmel, Inc. v. DowElanco,* 275 F.3d 1199, 1206 (9th Cir. 2002).  In addition:

        a.     Allegations of fraud on federal regulators (even without allegations of collusion) are substantial and permit removal.  *See Bader Farms, Inc.*, 2017 WL 633815, at *2-3.  In *Bader*, Judge Limbaugh denied the plaintiffs' motion for remand, finding that plaintiffs' claim for fraudulent concealment "presents a substantial federal question." *Id.* at *2.  The court explained that, because Plaintiffs accused Monsanto of concealing material facts from federal regulators – the U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") – it was "[i]mplicit in plaintiffs' claim … that APHIS would not have deregulated the new seeds had they known of the true risks involved, and that the seeds would not have been approved for sale." *Id.*  Relying on *Grable*, Judge Limbaugh stated that "the outcome of the fraudulent concealment claim necessarily depends on the interpretation and application of the federal regulatory process under APHIS." *Id.* at *3.  Focusing on plaintiffs' allegation that Monsanto's concealment of material facts caused APHIS to be unable to perform its task to protect the public, the court stated that, "whether federal regulatory bodies fulfilled their duties with respect to

- 20 -

the entities they regulate is 'inherently federal in character.'" *Id*. (quoting *Buckman Co.*, 531 U.S. at 347).

b.  Here, Plaintiffs allege that Monsanto illegally concealed important safety information about glyphosate from EPA and otherwise misled EPA such that it failed to fulfill its federal regulatory duties.  Indeed, Plaintiffs directly allege that glyphosate was registered by EPA even though it does not meet the risk/benefit test EPA is required to apply.  *See, e.g.*, Compl. at ¶¶ 153, 155(e), 159.  To prove their claims, Plaintiffs must show that Monsanto committed federal regulatory fraud and that the alleged fraud prevented EPA from performing its federal regulatory duties with respect to glyphosate and Roundup®-branded herbicides.  These allegations raise substantial federal questions because they challenge the validity of decisions made by federal regulators.  *See Grable*, 545 U.S. at 315 ("The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action…..").

47.  Finally, the disputed and substantial federal questions presented by Plaintiffs' accusations against EPA and Monsanto can be resolved in a federal court "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.  Federal courts routinely resolve challenges to actions of federal agencies. *See, e.g., Hamilton*, 485 F.3d at 569; *Gallo Cattle Co.,* 159 F.3d at 1198.  And Congress specifically vested the federal courts with substantial jurisdiction over challenges to EPA decisionmaking and the enforcement of FIFRA. *See, e.g.*, 7 U.S.C. 136n.

**B.  Every Count in the Complaint Raises Substantial Federal Questions, Because Every Count Requires Determination of the Duties and Obligations Imposed by Federal Law.**

48.  Every count in the Complaint necessarily raises substantial, disputed federal questions, because Plaintiffs have limited every count to the assertion of duties and obligations that are imposed by federal law.  Under the heading "Limitation on Allegations," Plaintiffs' Complaint alleges, for each cause of action, that Plaintiffs are asserting only those state law duties and obligations that are the same as those imposed under federal law.  Compl. at ¶ 144

- 21 -

("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims.").

49.     As a result, the only way to determine the scope of the duties and obligations Plaintiffs seek to impose is to resolve questions of federal law – *i.e.*, determine the scope of the duties and obligations federal law imposes relative to each count that might be enforceable via private common law claims.  Thus, Plaintiffs' right to relief under state law necessarily depends on the resolution of questions of federal law.  Plaintiffs have not identified federal statutory or regulatory sources for all of the duties and obligations they seek to impose, but various federal statutes and regulations may be relevant to their claims.  For example:

a.     Plaintiffs' Negligence Count alleges that Monsanto was negligent in "[f]ailing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use…."  Compl. at ¶ 205(c).  In light of the "Limitation on Allegations," to resolve this claim the Court must determine what duties and obligations federal law imposes with respect to product testing.  Various federal statutes and regulations address the federal requirements for product testing.  *See, e.g.,* 7 U.S.C. § 136a; 40 C.F.R. § 158.1 *et seq.*, and 40 C.F.R. §152.80 *et seq.*

b.     Similarly, Plaintiffs' Negligence Count alleges that Monsanto was negligent in "[f]ailing to provide adequate instructions, guidelines, and safety precautions to those persons who [Monsanto] could reasonably foresee would use and be exposed to Roundup® products."  Compl. at ¶ 205(f).  In light of the "Limitation on Allegations, " to resolve this claim the Court must determine what duties and obligations federal law imposes with respect to providing "instructions, guidelines, and safety precautions" for pesticide products.  Various federal statutes and regulations address those issues, including 40 C.F.R. § 156.10, which provides federal requirements for pesticide labeling.

c.     Likewise, Plaintiffs' Strict Liability (Design Defect) count asserts that Monsanto's Roundup® products were defective because "the foreseeable risks exceeded

- 22 -

the alleged benefits associated with their design and formulation." Compl. at ¶ 153.[3]  In light of the "Limitation on Allegations," to resolve this claim the Court must determine the scope of the risk/benefit calculus applicable under federal law.  The risks and benefits federal law requires EPA to consider in making registration decisions are set out in 7 U.S.C. § 136a(c)(5) and 7 U.S.C. § 136(bb).  *See also* 40 C.F.R. § 158.1 ("The purpose of this part is to specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 *about the risks and benefits* of pesticide products.") (emphasis added).

        d.      A similar analysis applies with respect to each and every count asserted in the Complaint.  The only way to determine the scope of the duties and obligations Plaintiffs seek to impose for each count is to resolve questions of federal law regarding the nature and scope of the duties and obligations imposed by federal law.

      50.      The federal questions necessarily raised by each count of the Complaint are actually disputed and substantial:

        a.      The scope of the duties and obligations imposed by federal law is actually disputed in this litigation, as Monsanto contends that it satisfied all requirements of federal law in securing EPA's registration of glyphosate, while Plaintiffs allege that it did not.  For example, Monsanto contends that federal law did not require Monsanto to perform additional testing, or to provide different or additional instructions or labeling for its Roundup®-branded herbicide products, while Plaintiffs contend that it did.

        b.      The scope of the duties and obligations imposed by federal law relating to the registration, labeling and sale of pesticides is a "substantial" federal question for three reasons:  (1) it defines the federal regulatory burdens that apply to all current and future pesticide registrants, and will necessarily guide their future interactions with EPA; (2) the federal government and EPA have a substantial interest in development of a

---

[3] *See also* Compl. at ¶ 159 ("harm caused by . . . Roundup® products far outweighed their benefit"); *id.* at ¶ 155(e) (Roundup® herbicides "present[] a risk of harmful side effects that outweigh any potential utility").

uniform body of federal law relative to pesticide registrations; and (3) it will affect not only the instant action, but numerous other pending cases involving nearly identical claims brought by more than 1000 plaintiffs.

51.     Finally, resolution of the alleged violations of federal law in federal court will not disrupt the congressionally approved balance of federal and state judicial responsibility. First, because federal law defines all of the duties and obligations Plaintiffs seek to impose, the resolution of Plaintiffs' claims in federal court is consistent with the congressionally approved balance of judicial power.  Indeed, resolving alleged violations of federal law is well within the scope of traditional federal jurisdiction.  Second, because Congress specifically vested the federal courts with substantial jurisdiction over challenges to EPA decisionmaking and the enforcement of FIFRA, the exercise of federal jurisdiction over this lawsuit would not disrupt the congressionally approved balance of federal and state judicial responsibility.  *See, e.g.*, 7 U.S.C. 136n.  Finally, because "it will be the rare state [tort] case" that is predicated exclusively on alleged violations of federal duties and obligations, as is the case here, exercising federal jurisdiction over this lawsuit "will portend only a microscopic effect on the federal-state division of labor."  *See Grable*, 545 U.S. at 315.  Plaintiffs' claims are predicated entirely on alleged violations of federal duties and obligations.  Such a lawsuit belongs in federal court.  Allowing Plaintiffs to evade federal jurisdiction simply by alleging (without support) that private litigants may assert those federal duties under the common law of California would undermine the balance of state and federal judicial responsibility approved by Congress.

**C.     This Court Has Federal Question Jurisdiction, because Plaintiffs Allege Violations of Federal Law as a Predicate for Their State Law Claims.**

52.     This Court has original federal question jurisdiction for the additional reason that Plaintiffs' state law claims are expressly predicated on purported violations of federal law, which are directly alleged on the face of the Complaint.  For example:

a.     The Complaint asserts that Roundup®-branded herbicides were "misbranded pursuant to 7 U.S.C. § 136[(q)(1)(G)], and that "[f]ederal law specifically prohibits the distribution of a misbranded herbicide."  Compl. at ¶ 146.  7 U.S.C. §

- 24 -

136(q)(1)(G) provides: "A pesticide is misbranded if – … (G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment."

b.      Plaintiffs also allege that Monsanto submitted false testing data to EPA to support the registration of Roundup® -branded herbicides, Compl. at ¶¶ 99-103, and in doing so violated federal law, Compl. at ¶¶ 146, 218. Specifically, Plaintiffs allege that "Monsanto violated [7] U.S.C. § 136j," which defines "unlawful acts" under FIFRA. Compl. at ¶ 146. That section provides, in relevant part, that "It shall be unlawful for any person … (Q) to falsify all or part of any information relating to the testing of any pesticide…submitted to the Administrator, or that the person knows will be furnished to the Administrator or will become a part of any records required to be maintained by this subchapter; [or] (R) to submit to the Administrator data known to be false in support of a registration." 7 U.S.C. § 136j(a)(2).

c.      Plaintiffs also allege that Monsanto violated 40 C.F.R. § 156.10(a)(5), which defines "false or misleading statements" on pesticide labels. Compl. at ¶ 146.

d.      Finally, Plaintiffs allege that "Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate…." Compl. at ¶ 105.

53.      Where, as here, the plaintiff's state law claims are expressly predicated, even in part, on violations of federal law, the district courts have original jurisdiction. As the Eighth Circuit has explained:

> The complaint quite clearly alleges a violation of the federal Constitution at several points. In particular, paragraph 14, JA 16-17, makes the following assertion:
>
> > The Court order [referring to an order of the County Commission of Newton County, Missouri, purporting to establish the Town of Loma Linda] is further invalid because Relators were not given proper notice of the hearing as required by the Statutes and Constitution of Missouri and the Constitution of the United States of America, including those provisions which prohibit the taking of

- 25 -

> property without due process of law, which process requires proper notice.
>
> The reference to the Constitution of the United States is unequivocal. If the Due Process Clause of the Fourteenth Amendment is given one construction, the claim will prevail; if it is given another, the claim will fail. This is a paradigm case for arising-under jurisdiction.

*Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000). *See also Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) ("When a federal question is present on the face of the complaint, the district court has original jurisdiction and the action may be removed to federal court."); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law."); *Shaw v. Prudential Ins. Co. of Am.*, 2011 WL 1050004, at *1-2 (W.D. Mo. Mar. 21, 2011) (case asserting only state law breach of contract claim was properly removed on federal question grounds where petition invoked ERISA on its face).[4]

54.     The same analysis applies here. Plaintiffs have alleged multiple violations of federal law in support of all of their state law claims. *See* Compl. at ¶ 147 (incorporating all preceding paragraphs into Count I); *id*. at ¶ 170 (same for Count II); *id*. at ¶ 195 (same for Count III); *id*. at ¶ 215 (same for Count IV); *id*. at ¶ 227 (same for Count V); *id*. at ¶ 246 (same for Count VI); *see also id*. at ¶ 146 (identifying certain federal law violations "alleged in this pleading").

55.     Removal is proper where, as here, "the federal question arises not by way of defense, but on the face of the complaint" and "is part of the plaintiffs' cause of action, as demonstrated by the words they themselves selected." *Country Club Estates,* 213 F.3d at 1003-04 ("A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal district court.").

56.     To the extent the *Grable* requirements must be met to support removal even where violations of federal law are alleged on the face of the Complaint, they are here. The

---

[4] The petition at issue in *Shaw* is available at 2010 WL 4362984 (W.D. Mo., July 27, 2010).

questions raised by the alleged violations are actually disputed, as Monsanto denies each and every violation of federal law asserted in the Complaint.

57.      The federal questions raised by those alleged violations are also substantial, because their resolution will impact the way applicants for pesticide registrations interact with EPA.  For example:

       a.      Plaintiffs allege that Monsanto violated federal law by submitting third party testing results to EPA that were later determined to be false.  *See* Compl. at ¶¶ 98-103, 146.  Whether the alleged conduct violates federal law is a "substantial" federal question, because its resolution may significantly increase federal regulatory burdens on applicants, and may lead applicants to limit the scope of testing data they submit to EPA to only that which they can independently verify.  Such limitation on the data provided to EPA may adversely impact its ability to make informed regulatory decisions.

       b.      Plaintiffs' allegation that Monsanto violated federal regulations by communicating with EPA employees also raises substantial federal questions.  The questions are substantial because resolving them may lead those applying for pesticide registrations to limit their communications with EPA in a manner that impairs the effective functioning of the regulatory process.  EPA relies on and encourages direct communications with applicants in performing its regulatory functions.  *See, e.g.*, 40 C.F.R. § 158.30(a) ("The Agency encourages each applicant to consult with EPA to discuss the data requirements particular to its product prior to and during the registration process."); *see also* 40 C.F.R. § 158.45(b)(1); 40 C.F.R. § 158.70; 40 C.F.R. § 158.80(b).

58.      Finally, resolution of these disputed questions of federal law in federal court will not disrupt the balance between federal and state jurisdiction adopted by Congress.  Resolving alleged violations of federal law is well within the scope of traditional federal jurisdiction.  And, because Congress specifically vested the federal courts with jurisdiction over the enforcement of FIFRA, the exercise of federal jurisdiction over this lawsuit will not disrupt the congressionally approved balance of federal and state judicial responsibility.  *See, e.g.*, 7 U.S.C. 136n.

**II. THIS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441(a), BECAUSE PLAINTIFFS' CLAIMS INVITE STATE COURT JURORS TO EVALUATE WHETHER THE FEDERAL AGENCY THAT IS OBLIGATED BY FEDERAL LAW TO REGULATE MONSANTO COLLUDED WITH MONSANTO TO MAINTAIN FEDERAL REGULATORY APPROVAL FOR MONSANTO'S GLYPHOSATE-BASED HERBICIDES.**

59.     A separate, alternative, basis for removal exists in this case – namely, federal officer removal.  A statute authorizes removal of a civil action that is "against or directed to" the "United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for *or relating to* any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  In these circumstances, a lawsuit can be removed from state court "despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431.

60.     Courts are required to construe § 1442(a)(1) broadly.  "The words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting § 1442(a)(1); *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)'" (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *see also Jacks v. Meridian Resource Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012) (quoting *Watson*, 551 U.S. at 147); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (quoting *Manypenny*, 451 U.S. at 242).  Moreover, the statute was amended in 2011 by adding "or relating to" after "for," thereby broadening the reach of the statute.  *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Assoc. of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015).

61.     Courts generally require the following elements for federal officer removal based on § 1442(a)(1):  "(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions [at issue in the plaintiff's lawsuit] and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person' within the meaning of the statute." *Jacks*, 701 F.3d at 1230; *see*

- 28 -

1   *also In re Commonwealth's Motion*, 790 F.3d at 467.  As discussed below, these requirements

2   are satisfied in this case.

3        62.    ***First***, according to Plaintiffs' allegations, Monsanto acted under the direction of a

4   federal officer by illegally colluding with EPA officials to maintain federal regulatory approval

5   for Monsanto's glyphosate-based herbicides.  Plaintiffs allege that a special relationship existed

6   between EPA officers and Monsanto (which allegations are incorporated by reference into each

7   cause of action):  "Monsanto has also violated federal regulations in holding secret ex parte

8   meetings and conversations with certain EPA employees to collude in a strategy to re-register

9   glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal

10  agencies such as the Agency for Toxic Substances and Disease Registry.  Monsanto's close

11  connection with the EPA arises in part from its offering of lucrative consulting gigs to retiring

12  EPA officials."  Compl. at ¶ 105; *see also id.* at ¶¶ 147, 170, 195, 215, 227, 246, 263.

13  "Collusion" is defined as a "secret agreement or cooperation esp[ecially] for an illegal or

14  deceitful purpose," Merriam Webster's Collegiate Dictionary at 226 (10th ed.), so collusion

15  necessarily requires an agreement between two parties.  Thus, Plaintiffs contend that EPA

16  agency power was delegated to Monsanto, so that it could direct agency employees to maintain

17  federal regulatory approval for Monsanto's glyphosate-based herbicides, with lucrative

18  consulting positions paid by Monsanto as the alleged *quid pro quo* for this delegation of agency

19  power.[5]

20       63.    In the Roundup® Products Liability MDL currently pending before Judge

21  Chhabria in this Court, the plaintiffs are vigorously pursuing discovery regarding the same

22  allegations of collusion between EPA officials and Monsanto.  For example, plaintiffs' attorneys

23  _____

24  [5] Although Monsanto disputes Plaintiffs' allegations, Monsanto is permitted to rely on the allegations to show that
    removal of this lawsuit is proper based on § 1442(a)(1) – and then present Monsanto's version of the events at issue

25  later in the federal court proceeding.  *See, e.g.*, *Willingham*, 395 U.S. at 407-09 (explaining that defendants need not
    admit allegations to remove lawsuits based on § 1442(a)(1)).  Moreover, the fact that Plaintiffs accuse Monsanto and

26  EPA of illegal conduct does not mean that the alleged conduct at issue here falls outside the scope of the
    § 1442(a)(1) "color of office" requirement.  *See Sun v. Tucker*, 946 F.2d 901, at *1 (10th Cir. 1991) (unpublished

27  op.) (stating that "[w]hether an act was performed under 'color of office' is not dependent on the propriety of the
    alleged act itself" (citing *Willingham*, 395 U.S. at 409)).

28

have moved to compel the deposition of Jess Rowland (a former EPA officer at OPP and the former chair of EPA's CARC), who allegedly colluded with Monsanto. *See* Plaintiffs' Motion to Compel the Deposition of Jess Rowland, *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 189. According to the motion to compel, there was "a concerted effort by Monsanto and the OPP, Jess Rowland, and his CARC committee to 'kill' the glyphosate/lymphoma issue for the company." *Id.* at 2. The motion also asserts that the CARC report was "leaked" and then retracted by EPA because it was not final, *id.* at 2; that "Rowland wanted to help Monsanto stop an investigation concerning the carcinogenicity of glyphosate being conducted by [another federal agency,] [t]he Agency for Toxic Substances and Disease Registry (ATSDR)," *id.* at 3; and that "Rowland bragged: 'If I can kill this [the ATSDR investigation,] I should get a medal,'" *id.* Plaintiffs' allegations of illegal collusion between Monsanto and federal officers employed by EPA have received significant attention in the press.

64. As shown above, Plaintiffs' allegations about Monsanto's "close connection" with EPA and about collusion between EPA and Monsanto regarding Monsanto's glyphosate-based herbicides are very different than "the usual regulator/regulated relationship," *Watson*, 551 U.S. at 157, which the *Watson* Court held did not suffice to satisfy the acting-under-the-direction-of-a-federal-officer requirement of § 1442(a)(1). In *Watson*, the Court held that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." 551 U.S. at 153. Thus, Monsanto does not contend that the federal regulatory environment in which it has operated for many years under close EPA supervision regarding glyphosate-based herbicides gives rise to removal based on § 1442(a)(1). Unlike in *Watson*, where the Supreme Court explained its conclusion that removal was not proper by pointing out the lack of a "special relationship" between the regulated company and the federal regulatory agency, 551 U.S. at 157, in this case Plaintiffs do allege a special relationship between the regulated company (Monsanto) and the federal regulatory agency (EPA). Plaintiffs' allegations – that Monsanto and EPA colluded to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides and that Monsanto has a "close connection" with EPA by "offering lucrative consulting gigs to

- 30 -

retiring EPA officials," Compl. at ¶ 105 – are materially different than the usual relationship

between a federal regulator and a regulated company addressed in *Watson*.  In sum, Plaintiffs'

allegations about a collusive scheme between Monsanto and EPA satisfy the first element of

§ 1442(a)(1) in this case.

65.  ***Second***, the causal nexus requirement, which is a "low" hurdle, *Isaacson v. Dow*

*Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008), is satisfied here as well.  Plaintiffs' allegations of

illegal collusion between Monsanto and EPA show that a causal connection exists between the

Monsanto conduct that is challenged in this case and "the official authority," *Jacks*, 701 F.3d at

1230, because Plaintiffs assert claims "for ***or relating to***," § 1442(a)(1) (emphasis added),

Monsanto's alleged collusion with EPA to maintain federal regulatory approval for Monsanto's

glyphosate-based herbicides, *see* Compl. at ¶ 105; *see also id*. at ¶¶ 147, 170, 195, 215, 227, 246,

263.  Plaintiffs' entire lawsuit is based on the theory that the herbicides are carcinogenic; that

Monsanto is liable for covering up, and failing to warn about, the risk of cancer; that this cover-

up scheme was perpetrated through illegal collusion between Monsanto and specific EPA

officers; and that Plaintiffs would not have developed cancer if EPA had fulfilled its federal

regulatory obligations by not allowing Monsanto to sell its glyphosate-based herbicides at all –

or by precluding Monsanto from selling these herbicides without a cancer warning.  In these

circumstances, the causal nexus requirement of § 1442(a)(1) is satisfied.

66.  ***Third***, the Supremacy Clause of the United States Constitution and preemption

principles based on the Supremacy Clause give Monsanto at least two colorable federal defenses

that it will raise in a motion for summary judgment at the appropriate time.  "For a defense to be

considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that

a defense will be successful before removal is appropriate."  *U.S. v. Todd*, 245 F.3d 691, 693 (8th

Cir. 2001); *see Jefferson County*, 527 U.S. at 431 (stating that removing defendant is not

required "virtually to win his case before he can have it removed" (quotation marks and citation

omitted)); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (stating that "a colorable

federal defense need only be plausible, . . . and that a district court is not required to determine

its validity at the time of removal" (citations omitted)).  Monsanto's federal defenses easily meet this requirement.

67.     Monsanto's first federal defense is based on the well-established principle that a state-law claim alleging that a regulated company defrauded or misled a federal regulatory agency conflicts with, and therefore is ***impliedly preempted***, by federal law.  *See*, *e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (claims alleging that defendant misled federal Food and Drug Administration are impliedly preempted by federal law); *Nathan Kimmel*, 275 F.3d 1199 (9th Cir. 2002) (same; EPA); *Giglio v. Monsanto Co.*, Case No.: 15cv2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016) (claims alleging that Monsanto "negligently failed to adequately warn the EPA of the dangers of Roundup and concealed information from and/or misrepresented information to the EPA concerning the severity of the risks and dangers of Roundup," which are "directly based on the propriety of disclosures made by [Monsanto] to the EPA, are preempted by FIFRA" (citing *Nathan Kimmel*, 275 F.3d at 1207)).  Like the *Giglio* plaintiff, Plaintiffs here repeatedly allege that Monsanto, when dealing with EPA regarding Roundup®-branded herbicides, concealed information from EPA, made misrepresentations to EPA, and failed to provide adequate warnings to EPA regarding the risks and dangers of those products.  *See, e.g.*, Compl. at ¶¶ 98-105, 147, 155,170, 176-77, 183, 195, 205, 215, 218, 221, 227, 229, 235, 246, 263.  In these circumstances, Monsanto's federal defense that these claims are impliedly preempted is far more than colorable.

68.     Monsanto's second federal defense is based on the ***express preemption*** provision set forth in FIFRA, which preempts state-law claims based on allegedly inadequate herbicide warnings that would "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]," 7 U.S.C. § 136v(b).  In this case, it is plausible that Plaintiffs' state-law claims based on Monsanto's alleged failure to warn that glyphosate poses a cancer risk satisfy both parts of § 136v(b) and therefore are preempted by FIFRA.  The claims at issue here satisfy the "requirements for labeling or packaging" part of § 136v(b).  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005) (holding that "fraud

- 32 -

and negligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging'" (citing § 136v)).

69.    Moreover, it is plausible that the other part of § 136v(b) is satisfied because Plaintiffs' state-law warnings-based claims revolve around the contention that Monsanto's glyphosate-based herbicides should have included a cancer warning, which means that Plaintiffs' claims would impose requirements "in addition to or different from those required under [FIFRA]," § 136v(b), because EPA repeatedly made FIFRA-based regulatory determinations that glyphosate does not pose a cancer risk,[6] which have informed EPA's repeated FIFRA approvals of labeling for Roundup®-branded herbicides without any cancer warning for many years, including as recently as March 2016.[7]  In these circumstances, FIFRA's express preemption provision gives Monsanto a colorable federal defense to Plaintiffs' warnings-based claims.  *See, e.g.*, 7 U.S.C. § 136v(b); *Bates,* 544 U.S. 431; *Mirzaie v. Monsanto Co.*, No. 15-cv-04361-DDP, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016).[8]

---

[6] *See* EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094 ("[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment.") (attached as Exhibit 2); Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. EPA, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014 (endorsing EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans") (attached as Exhibit 3); Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180) ("EPA has concluded that glyphosate does not pose a cancer risk to humans."); Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180) ("There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."); Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180) ("Glyphosate has no carcinogenic potential."); Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180) ("No evidence of carcinogenicity."); EPA, *Reregistration Eligibility Decision Document: Glyphosate*, 14 (Sept. 1993), https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_PC-417300_1-Sep-93.pdf ("On June 26, 1991, the Agency classified glyphosate in Group E (evidence of non-carcinogenicity for humans), based on a lack of convincing evidence of carcinogenicity in adequate studies with two animal species.") (attached as Exhibit 4).

[7] *See* March 10, 2016 EPA Letter (with approved labeling for Roundup®-branded herbicide), https://www3.epa.gov/pesticides/chem_search/ppls/071995-00051-20160310.pdf (attached as Exhibit 5); March 10, 1992 EPA Letter (with approved labeling for Roundup®-branded herbicide), https://www3.epa.gov/pesticides/chem_search/ppls/000524-00452-19920310.pdf (attached as Exhibit 6).

[8] Although courts have denied Monsanto's motions to dismiss based upon express preemption in other Roundup® lawsuits, *see, e.g.*, *Giglio*, 2016 WL 1722859, at *1-3; *Hernandez v. Monsanto Co.*, Case No. CV 16-1988-DMG

*(Footnote continued)*

70.    ***Fourth***, the "person" element is satisfied.  Monsanto is a corporation, so it is a "person" for purposes of § 1442(a)(1).  *See Jacks*, 701 F.3d at 1230 n.3; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *see also* 1 U.S.C. § 1.

71.    In addition to satisfying the elements discussed above, removal is appropriate in this case because it would comport with the purpose of the federal officer removal statute by ensuring that claims asserted in state courts cannot be used to interfere with a federal agency's efforts to carry out its regulatory responsibilities.  As the Supreme Court has recognized, one of the primary purposes of the federal officer removal statute was to have federal defenses litigated in federal courts.  *See Willingham*, 395 U.S. at 407; *Kinetic Sys., Inc. v. Federal Financing Bank*, 895 F. Supp. 2d 983, 991 (N.D. Cal. 2012) (citing *Willingham*, 395 U.S. at 406-07).  In other words, "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum."  *Willingham*, 395 U.S. at 407; *see Durham*, 445 F.3d at 1252 (stating that "Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830s" and that

_____

(Ex), 2016 WL 6822311 (C.D. Cal. July 12, 2016), that does not mean that Monsanto's express preemption defense is not colorable for purposes of federal officer removal.  Determining whether a defense is colorable (or plausible) for purposes of federal officer removal is different than determining whether the defense requires a court to grant a motion to dismiss.  Prior motion-to-dismiss rulings regarding Monsanto's express preemption defense do not mean that is not plausible that the defense will prevail at a later stage of the litigation when presented in a different context – for example, by motion for summary judgment, based on a different factual and legal record than the record before the courts that issued prior motion-to-dismiss rulings.  In *Giglio* and *Hernandez*, both courts acknowledged the limitations imposed by ruling on a motion to dismiss.  *Giglio*, 2016 WL 1722859, at \*3 ("[Monsanto] argues that Roundup in fact is not carcinogenic and that the EPA has made determinations that this is the case.  However, a motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they were relying on, and what effect their statements have on the issues before the Court."); *Hernandez*, 2016 WL 6822311,, at \*8 ("Monsanto's argument could also be construed as an offer of proof that the EPA's factual findings are evidence that Roundup is not, in fact, carcinogenic.  Such arguments, which require the Court to weigh evidence and make factual determinations, are not appropriate at the motion to dismiss stage.").  The difference between evaluating a defense for purposes of determining removability and evaluating the defense for other purposes is illustrated by the Supreme Court's *Jefferson County* opinion, where the Court held that the federal defense was colorable for purposes of making the case removable, but then proceeded to reject the defense.  *See Jefferson County*, 527 U.S. at 431 (holding that federal officer removal was proper because defendants presented "a colorable federal defense" – "although we ultimately reject [the defense]"); *see also Kinetic Sys., Inc.*, 895 F. Supp. 2d at 987 (denying plaintiff's remand motion and denying defendant's motion to dismiss; holding that, although defendant's federal defenses are "'colorable' for purposes of removal, they are not meritorious").

"the Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since" (citation omitted)).[9]

72.     In light of Plaintiffs' novel allegations of illegal collusion between a federal regulatory agency and a company it was supposed to regulate, this lawsuit belongs in federal court.  For the foregoing reasons, § 1442(a)(1) federal officer removal is proper in this case.

### ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

73.     Monsanto has satisfied all procedural requirements for removal.

74.     On March 17, 2017, Plaintiffs filed their Complaint captioned *Loretta Pennie, et al. v. Monsanto Company, et al.*, in the Superior Court of the State of California for the County of Alameda, Case Number RG17853420 ("State Court Action"), which is attached hereto as part of composite Exhibit 1.

75.     Defendant Monsanto was served on March 20, 2017.  Because this Notice of Removal is filed within 30 days of the date of service, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

76.     Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a).  The Superior Court of the State of California for the County of Alameda is located within the Northern District of California, *see* 28 U.S.C. § 84(a), and venue is proper in this Court under 28 U.S.C. § 1441(a).

77.     The complete state file is attached as composite Exhibit 1.

78.     A copy of this Notice of Removal is being served upon counsel for Plaintiffs, and a copy is being contemporaneously filed in the State Court Action.

79.     Defendants Wilbur-Ellis Company, LLC and Wilbur-Ellis Feed, LLC consent to this removal and will file their consent contemporaneously herewith and within 30 days of being served with process.  By requesting and/or providing this consent, no Defendant concedes that

---

[9] Although plaintiffs contend that EPA's and Monsanto's collusive conduct was illegal, that does not preclude federal officer removal because that issue should be resolved by a federal court, not a state court.  *See Isaacson*, 517 F.3d at 138 ("Indeed, whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal – not state – courts to answer." (citing *Willingham*, 395 U.S. at 409)); *Bennett*, 607 F.3d at 1088 (citing *Isaacson*, 517 F.3d at 138).

1   either Wilbur-Ellis Company, LLC or Wilbur-Ellis Feed, LLC is properly joined as a defendant

2   in this action.

3           WHEREFORE, Defendant Monsanto respectfully removes this action from the

4   Superior Court of the State of California for the County of Alameda, Case Number

5   RG17853420, to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442(a)(1), and 1367(a).

6

7   DATED:  March 28, 2017                    Respectfully submitted,

8                                            /s/ Steven R. Platt
                                             Steven R. Platt
9                                            State Bar No. 245510
                                             (splatt@pmcos.com)
10                                           Richard A. Clark
                                             State Bar No. 39558
11                                           (rclark@pmcos.com)
                                             PARKER, MILLIKEN, CLARK, O'HARA
12                                           & SAMUELIAN, P.C.
                                             555 S. Flower Street, 30th Floor
13                                           Los Angeles, CA 90071
                                             Telephone: (213) 683-6500
14                                           Facsimile:  (213) 683-6669

15                                           Joe G. Hollingsworth (*pro hac vice* admission
16                                           anticipated)
                                             (jhollingsworth@hollingsworthllp.com)
17                                           HOLLINGSWORTH LLP
                                             1350 I Street, N.W.
18                                           Washington, DC  20005
                                             Telephone:  (202) 898-5800
19                                           Facsimile:  (202) 682-1639

20                                           Attorneys for Defendant
21                                           MONSANTO COMPANY

22

23

24

25

26

27

28
                                          - 36 -
                       MONSANTO COMPANY'S NOTICE OF REMOVAL
                                   Case No. 17-cv-1711

1

## PROOF OF SERVICE

2

### Pennie, et al. vs. Monsanto Company, et al.

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 South Flower Street, 30th Floor, Los Angeles, California 90071.

4

5

On March 28, 2017 I served the documents described as **NOTICE OF REMOVAL; EXHIBITS 1-6; CIVIL COVER SHEET** as follows:

6

### SEE ATTACHED SERVICE LIST

7

8

☐ (BY HAND): By giving a true copy(ies) thereof in sealed envelope(s) to (name of service) for hand delivery to the office of the party(ies) listed on ATTACHED SERVICE LIST.

9

10

11

12

☒ (BY MAIL) By placing a true copy in envelope(s) addressed as referenced on ATTACHED SERVICE LIST. The envelope(s) were then sealed and deposited for collection and mailing in accordance with my employer's normal procedures. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service, with all postage prepaid, at Los Angeles, California, on the same day in the ordinary course of business.

13

14

15

16

☐ (BY OVERNIGHT DELIVERY) By placing a true copy in envelope(s) addressed as listed on ATTACHED SERVICE LIST. The envelopes were then sealed and deposited for collection and delivery in accordance with my employer's normal procedures. I am readily familiar with the firm's practice for collection and processing correspondence for overnight delivery. Under that practice it would be placed in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents.

17

18

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the foregoing is true and correct.

19

20

Executed on March 28, 2017 at Los Angeles, California.

21

22

Marianne Hendrix

23

24

25

26

27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

PROOF OF SERVICE

Service List
Pennie, et al. v. Monsanto Company, et al.

Michael L. Baum, Esq.
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq.
rbwisner@baumhedlundlaw.com
Frances M. Phares, Esq.
fphares@baumhedlundlaw.com
BAUM HEDLUND, ARISTEI, &
GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025


Robert F. Kennedy, Jr., Esq.
rkennedy@kennedymadonna.com
Kevin J. Madonna, Esq.
kmadonna@kennedymadonna.com
KENNEDY & MADONNA, LLP
48 Dewitt Mills Road
Hurley, New York 12443

Nicholas R. Rockforte, Esq.
nrockforte@pbclawfirm.com
Christopher L. Coffin, Esq.
ccoffin@pbclawfirm.com
Jonathan E. Chatwin, Esq.
PENDLEY, BAUDIN & COFFIN, LLP
1515 Poydras Street, Suite 1400
New Orleans, LA 70112