UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**PLAINTIFFS' MOTION TO COMPEL RESPONSES FROM DEPONENT JESUDOSS ROWLAND**<br><br>**Date: May 25, 2017**<br>**Time: 2:00pm**<br>**Ctrm: 4, 17th floor**<br>**Hon. Vince Chhabria** |
| This document relates to:<br><br>ALL ACTIONS | |

**PLAINTIFFS' MOTION TO COMPEL RESPONSES FROM DEPONENT JESUDOSS ROWLAND**

In the absence of scientific evidence to support its claim that Roundup does not cause non Hodgkin lymphoma, Monsanto has relied overwhelmingly on the conclusions of the EPA, specifically a report engineered and authored by Jesudoss Rowland, a former employee within the Office of Pesticide Programs (OPP).  Mr. Rowland is not a medical doctor, has no PhD., was not trained in nor worked in the fields of epidemiology or toxicology, and did not include any medical doctors in his review process and report on Glyphosate.  As is now a matter of public record, this was leaked two weeks prior to Mr. Rowland's retirement.

Plaintiffs deposed Mr. Rowland on April 24, 2017, after nearly a year of correspondence, negotiation and litigation on the subject.   At deposition, Mr. Rowland refused to answer the simple question of whom he has been working for post-EPA departure.

Plaintiffs filed a request for the Court to compel testimony from Mr. Rowland during the deposition.   Following the Court's ruling, the witness was compelled to, and did, identify  three companies for whom he performs "consulting" work since his May 2016 retirement from the government.  Plaintiffs now seek answers to the follow-up questions, which he refused to answer; undersigned counsel asserts that Mr. Rowland's connection to Monsanto is only just beginning to come to light.  Plaintiffs, and the public, have a right to determine if there was an explicit, or implicit quid pro quo between Monsanto or its associates and Mr. Rowland, as the documents suggest.  As but one example, on March 14, 2015 (the day Mr. Rowland communicated the classification of IARC to CropLife and

1   Monsanto, in direct contravention to IARC rules and information embargo), Monsanto
2   executive Jennifer Listello wrote internally ███████████████████████████ (Ex
3   1, MONGLY03293245 et seq., at MONGLY03293247)

4   At the outset of the deposition, lead counsel for the witness, William Lawler, Esq.
5   instructed him not to answer the question "What is the name of the contractor?"(Ex. 2,
6   rough draft of Rowland transcript, at 10:22-25).  Mr. Lawler then stated on the record a
7   "proffer:"

10   **…as we proffered it's unrelated to the chemical industry, we're not**
11   **going to let him answer those.**

13   (Id. at 11:15-18) .The Court joined the deposition telephonically and heard Mr.
14   Lawler's argument and ruled "I don't agree with that.  So I'm ordering Mr. Rowland
15   to identify the companies for whom he's doing consulting work."  Id. at 209:13-16.
16   Following the call, the Court issued Pre-Trial Order No. 19: "Mr. Rowland is
17   ordered to answer questions about the identities of the companies for which he
18   has done consulting work since leaving the EPA and questions eliciting a very
19   general description of the projects he has worked on."

21   Following the Court's ruling, Plaintiffs again asked Mr. Rowland the
22   identities of the entities he consults for. Almost unbelievably, he immediately

1  named ***three chemical companies***, and confirmed that his work for them
2  concerned chemicals:
3
⬛           3     Q.    Is your work with ⬛
5                 ⬛          concerning a chemical?
6           5     A.    Yes.
7           6     Q.    And is your work with ⬛
8           7  regarding a chemical?
9           8     A.    Yes.
10          9     Q.    I'm sorry, can't hear you?
11         10     A.    Yes.
12         11     Q.    And is your work with ⬛
13         12  regarding a chemical?
14         13     A.    Yes. .
15  (Id. at 249:3-13).
16
17         Mr. Rowland's counsel was well aware of these facts and yet represented
18  to all parties that Mr. Rowland's work was "unrelated to the chemical industry."
19  The three companies for which the witness now works are close associates of
20  Monsanto ⬛.  In light of this
21  misrepresentation and the witness' refusal to answer follow-up questions directly
22  related to the purpose underlying the Rowland deposition, , Plaintiffs request that
23  Mr. Rowland be compelled to answer the questions he continued to refuse to

1  answer following the Court's ruling that day. Given the misrepresentations made

2  in this matter, the Court will understand Plaintiff's difficulty in trusting Mr. Rowland's

3  conclusory answers about his work.  Furthermore, he refused to answer some

4  questions in direct contravention of the Court's Order that day.

5

6   The questions are set forth below.

7

8

9       22    Q.   And when did you start working

10           23    for ███████

11           24         MR. LAWLER:  I think the

12           25     work -- I'll object the Court order's

13            2    says that the names of the -- the

14            3    identities of the companies and

15            4    questions listing a very general

16            5    description of the projects he's

17            6    worked on.

18            7         MR. MILLER:  You're instructing

19            8    the witness not to answer when he

20            9    started working at ███████

21           10         MR. LAWLER:  Yep.

22  (Id at 243:22-244:10)

23

```
 1   9     Q.   I didn't ask, but I'm asking
 2       10   you is for a new product or a product that's
 3       11   already on the market?
 4       12        MR. LAWLER:  I'm going to
 5       13   instruct you not to answer that.
 6  (Id. at 245:4-13)
 7
 8   5    Q.   And when did you start working
 9        6   for ▮▮▮▮
10        7        MR. LAWLER:  I'm going to
11        8   instruct you not to answer that.
12
13  (Id. at 246:5-8)
14
15   Q.   And what is a general
       15   description of your work for ▮▮▮▮
17   ▮▮   ▮▮▮▮
18       17    A.   I review studies, not
19       18   glyphosate.
20       19    Q.   Studies concerning chemicals
21       20   that they make?
22       21        MR. LAWLER:  I'm going to
23       22   instruct you not to answer that.
```

(Id. at 246:14-22)

Q. What is a general description
14  of the work you do for ▮▮▮▮▮
15   A.   Providing guidance or
16  registration process.
17   Q.   On registration process for
18  what?  A chemical?
19       MR. LAWLER:  Instruct not to
20  answer that.  Does it have anything to
21  do with glyphosate.
22       THE WITNESS:  No, it's not
23  glyphosate.
24       MR. MILLER:  That's exactly
25  what the Court ruled you cant do so
 2  we're going back on a motion to
 3  compel.

(Id at 247:14-248:3)

 3  Q.   Yeah, we're on the same page.
 4  The ▮▮▮▮▮

```
 5    member companies, ██████████,
 6    that's the company that you work for now,
 7    right?
 8            MR. LAWLER:  Objection to
 9    foundation.  He testified he has
10    worked for them.  He hasn't testified
11    he's currently doing it.
12    QUESTIONS BY MR. MILLER:
13    Q.    Let me rephrase.
14            Have you worked for ████
15    ████████ since you left EPA in May
16    of 2015?
17            MR. COPLE:  Objection.  Asked
18    and answered.
19            MR. LAWLER:  Have you?
20            THE WITNESS:  Yes.
21    QUESTIONS BY MR. MILLER:
22    Q.    Okay. ████████████████████
      ████████████████████████████████████
20    ██ ████████
25            Do you see that?
 2            MR. COPLE:  Objection.  Lacks
 3    foundation.
```

1  4    MR. LAWLER: It's just what you
2  5  see.
3  6    THE WITNESS: Yeah, I see this.
4  7 QUESTIONS BY MR. MILLER:
5  8  Q.  How did ████████████
6  9 find out you were available for employment?
7  10   MR. COPLE: Objection.
8  11  Argumentative.
9  12   MR. LAWLER: Yeah, objection.
10 13  He wasn't answer that.
11 14   MR. MILLER: You instruct him
12 15  not to answer?
13 16   MR. LAWLER: I do.
14 (Id at 264:24-265:24)
15
16 8  Q.  Do you bill by the hour for
17  9 your employment for these three companies?
18 10  A.  Yes.
19 11  Q.  And how much an hour do you
20 12 bill?
21 13   MR. LAWLER: Object. Instruct
22 14  not to answer.
23 (Id. at 273:8-14)

The purpose of this deposition was to examine the propriety of the Office of Pesticide Programs', and Mr. Rowland's specifically, relationship with Monsanto and assessment of glyphosate. Monsanto's production of documents suggests that Mr. Rowland went out of his way to benefit Monsanto's business. The remaining questions that the witness refused to answer are relevant to the reasons why EPA engaged in this relationship.

Plaintiffs must be permitted to explore further the nature of this work and how he came into it. Undersigned counsel requests an Order compelling Mr. Rowland to answer the foregoing questions, as well as related questions about the nature of this work, when he was first contacted about this work, by whom, how much he has been paid, and other basic factual inquiries, which are violative of no privilege. Without that information, Plaintiffs will still be fighting Monsanto's "EPA defense" with two hands tied behind their backs.

DATED: April 28, 2017							Respectfully submitted,

                                                          /s Robin Greenwald, Michael Miller and Aimee Wagstaff
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

Aimee H. Wagstaff
Aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 720-255-7623

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2017 I electronically filed this Opposition using the CM/ECF system which will send a notification of such filing to counsel of record.

                                        /s/ Michael Miller