Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC |
| | MDL No. 2741 |
| This document relates to: | **MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND THE CASE TO STATE COURT** |
| *Pennie v. Monsanto Co.*, Case No. 3:17-cv-01711-VC | **Hearing Date:  June 1, 2017**<br>**Time:  10:00 a.m.** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.      THE COURT HAS FEDERAL QUESTION JURISDICTION OVER
        PLAINTIFFS' CLAIMS. ................................................................................................. 1

        A.      The Complaint Presents Substantial Federal Questions Within The Original
                Jurisdiction Of This Court. ................................................................................. 2

        B.      The Allegations That Monsanto Defrauded And Colluded With EPA And
                Otherwise Violated Federal Law Are Critical To Plaintiffs' Theory Of
                The Case – Not Mere Background Or Context That Can Be Ignored When
                Deciding The Remand Motion .............................................................................. 7

II.     Federal Officer Removal Is Proper Because Plaintiffs' Claims Require State
        Court Jurors To Evaluate Whether The Federal Agency Obligated By Federal Law
        To Regulate Monsanto Colluded With Monsanto To Maintain Federal Regulatory
        Approval For Monsanto's Glyphosate-Based Herbicides. ............................................. 10

        A.      All Requirements For Federal Officer Removal Are Satisfied In This Case. ....... 10

        B.      Plaintiffs Do Not Present Any Persuasive Arguments For Rejecting Federal
                Officer Removal In This Case. ............................................................................ 14

CONCLUSION .......................................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*625 3rd Street Assoc. LP v. Alliant Credit Union*,
No. C 09-00564 WHA, 2009 WL 1139592 (N.D. Cal. Apr. 28, 2009)................................8

5

*Bader Farms, Inc. v. Monsanto Co.*,
6
Case No. 1:16-CV-299 SNLJ, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017)..............3, 5, 6, 8

7

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005)........................................................................................13, 14

8

9

*Bennett v. MIS Corp.*,
607 F.3d 1076 (6th Cir. 2010) ........................................................................12, 15

10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)..........................................................................................3, 13

11

12

*Burrell v. Bayer Corp.*,
Docket No. 1:17-cv-00032-MOC-DSC, 2017 WL 1032504 (W.D.N.C. Mar.
13
17, 2007) .....................................................................................................4, 7, 8

14

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to
Defender Ass'n*,
15
790 F.3d 457 (3d Cir. 2015)....................................................................................11

16

*Country Club Estates, L.L.C. v. Town of Loma Linda*,
17
213 F.3d 1001 (8th Cir. 2000) ................................................................................6

18

*Cuomo v. Crane*,
771 F.3d 113 (2d Cir. 2014)..................................................................................14

19

20

*Durham v. Lockheed Corp.*,
445 F.3d 1247 (9th Cir. 2006) ..............................................................................10

21

*Gallo Cattle Co. v. U.S. Dept. of Agriculture*,
22
159 F.3d 1194 (9th Cir. 1998) ................................................................................4

23

*Giglio v. Monsanto Co.*,
Case No.: 15cv2279 BTM (NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29,
24
2016) .....................................................................................................13, 14

25

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
26
545 U.S. 308 (2005)........................................................................................2, 4, 5

27

*Hamilton v. Gonzales*,
485 F.3d 564 (10th Cir. 2007) ................................................................................4

28

*Hernandez v. Monsanto Co.*,
  Case No. CV 16-1988-DMG (Ex), 2016 WL 6822311 (C.D. Cal. July 12,
  2016) ...................................................................................................................14

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008).............................................................................12, 15

*Jacks v. Meridian Resource Co.*,
  701 F.3d 1224 (8th Cir. 2012) ...........................................................10, 11, 12, 14

*Jefferson Cty., Ala. v. Acker*,
  527 U.S. 423 (1999).................................................................................1, 13, 14

*Kinetic Sys., Inc. v. Federal Financing Bank*,
  895 F. Supp. 2d 983 (N.D. Cal. 2012) ...............................................................14

*Kircher v. Putnam Funds Tr.*,
  547 U.S. 633 (2006).............................................................................................10

*Lundeen v. Canadian Pacific Ry. Co.*,
  342 F. Supp. 2d 826 (D. Minn. 2004)...............................................................6, 8

*Mesa v. California*,
  489 U.S. 121 (1989).............................................................................................10

*Mirzaie v. Monsanto Co.*,
  Case No. CV 15-04361 DDP, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016).......14

*Nathan Kimmel, Inc. v. DowElanco*,
  275 F.3d 1199 (9th Cir. 2002) ............................................................................13

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016).................................................................................6

*Organic Consumers Ass'n v. Gen. Mills, Inc.*,
  Civil Action No. 1:16-cv-1921-ESH, 2017 WL 706168 (D.D.C. Feb. 22,
  2017) .....................................................................................................................5

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
  559 F.3d 772 (8th Cir. 2009) ............................................................................2, 4

*Rains v. Criterion Systems, Inc.*,
  80 F.3d 339 (9th Cir. 1996) ..................................................................................9

*Romano v. Kazacos*,
  609 F.3d 512 (2d Cir. 2010)..................................................................................9

*Ruppel v. CBS Corp.*,
  701 F.3d 1176 (7th Cir. 2012) .............................................................................12

*Shanks v. Dressel*,
    540 F.3d 1082 (9th Cir. 2008) ........................................................................................... 2

*U.S. v. Todd*,
    245 F.3d 691 (8th Cir. 2001) ........................................................................................... 13

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007) .......................................................................................... 1, 10, 12, 15

*Williams v. Costco Wholesale Corp.*,
    471 F.3d 975 (9th Cir. 2006) ............................................................................................. 8

*Williams v. Ragnone*,
    147 F.3d 700 (8th Cir. 1998) ............................................................................................. 6

**Statutes**

7 U.S.C. § 136(q)(l)(F) ...................................................................................................... 6, 7

7 U.S.C. § 136a ...................................................................................................................... 5

7 U.S.C. § 136j(a)(2) ............................................................................................................. 7

7 U.S.C. § 136v(b) ......................................................................................................... 13, 14

28 U.S.C. § 1331 .................................................................................................................... 1

28 U.S.C. § 1367(a) ............................................................................................................... 1

28 U.S.C. § 1441(a) ............................................................................................................... 1

28 U.S.C. § 1442(a)(1) ........................................................................................................... 1

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* .......................................... 5

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* .................... *passim*

**Other Authorities**

40 C.F.R. 158.1 *et seq.* .......................................................................................................... 5

40 C.F.R. § 152.80 *et seq.* ..................................................................................................... 5

40 C.F.R. § 155.27 ................................................................................................................. 4

40 C.F.R. § 155.30 ................................................................................................................. 4

40 C.F.R. § 155.32 ................................................................................................................. 4

40 C.F.R. §156.10(i) *et seq.* ................................................................................................... 7

40 C.F.R. § 156.10(a)(1)(vii) ................................................................................................. 7

40 C.F.R. § 156.60(a)(l) ...................................................................................................7

40 C.F.R. § 158.1 ............................................................................................................5

40 C.F.R. § 158.30(a) ......................................................................................................4

Merriam Webster's Collegiate Dictionary (10th ed. ) ..................................................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

The Court should deny Plaintiffs' Motion to Remand the Case to State Court ("Remand Motion"), ECF No. 18.  Monsanto Company ("Monsanto") has satisfied all requirements for removal under 28 U.S.C. §§ 1331, 1441(a), 1442(a)(1) and 1367(a).

***First***, this case raises substantial, disputed questions of federal law, so removal was proper pursuant to 28 U.S.C. §§ 1441(a).  According to the Complaint, Monsanto secured Environmental Protection Agency ("EPA") registration for its glyphosate-based herbicides by submitting falsified testing results to EPA and concealing that glyphosate causes cancer.  Plaintiffs also explicitly allege that EPA colluded with Monsanto, in violation of federal law, to retain that registration by preventing proper safety evaluations of glyphosate.  In addition to these collusion and fraud-on-the-EPA allegations, Plaintiffs assert other violations of federal law as predicates for their purportedly state law claims.

***Second***, because Plaintiffs' claims require state court jurors to evaluate whether EPA – the federal agency that is obligated by federal law to regulate Monsanto – colluded with Monsanto to maintain regulatory approval for its glyphosate-based herbicides, removal also was proper pursuant to the federal officer statute, § 1442(a)(1).  Section 1442(a)(1), which "must be liberally construed," *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quotation marks omitted), authorizes removal  "despite the nonfederal cast of the complaint," if, as here, "the defense depends on federal law," *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

# ARGUMENT

## I.   THE COURT HAS FEDERAL QUESTION JURISDICTION OVER PLAINTIFFS' CLAIMS.

A defendant is allowed to remove any state court civil case for which the federal district courts "have original jurisdiction."  § 1441(a).  As applicable here, federal district courts have original jurisdiction of civil actions "arising under" the laws of the United States.  § 1331.

As the Supreme Court stated, "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal

1    issues…." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

2    This is particularly true in cases challenging federal regulatory action, because the federal

3    government "has a direct interest in the availability of a federal forum to vindicate its own

4    administrative action." *Id.* at 315.  Thus, a case can be removed on federal question grounds

5    even if the complaint asserts only state law claims.  *See id.* at 312.

6        *Grable* permits federal question removal when "a state-law claim necessarily raise[s] a

7    stated federal issue, actually disputed and substantial, which a federal forum may entertain

8    without disturbing any congressionally approved balance of federal and state judicial

9    responsibilities." *Id.* at 314; *see Shanks v. Dressel*, 540 F.3d 1082, 1093-94 (9th Cir. 2008)

10    (applying *Grable*); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779

11    (8th Cir. 2009) (same).  There is no "single, precise, all-embracing test for jurisdiction over

12    federal issues embedded in state law claims." *Grable*, 545 U.S. at 314 (quotation marks

13    omitted).  However, "if even one claim in the complaint involves a substantial federal question,

14    the entire matter may be removed." *Pet Quarters*, 559 F.3d at 779.

15    **A.  The Complaint Presents Substantial Federal Questions Within The Original**
16    **Jurisdiction Of This Court.**

17        Plaintiffs' Complaint raises substantial, disputed questions of federal law, which can be

18    resolved in federal court without disrupting the balance of federal and state judicial responsibility

19    approved by Congress.  Plaintiffs' allegations – that Monsanto secured EPA registration of its

20    Roundup®-branded herbicides by defrauding federal regulators; that EPA officials and Monsanto

21    colluded, in violation of federal law, to prevent proper safety evaluations of those herbicides; that

22    those herbicides are "misbranded" under federal law; and that Monsanto violated other federal

23    statutes and regulations – all raise substantial, disputed questions of federal law.  In fact, every

24    single claim, despite being dressed in state law clothing, is defined entirely by the duties federal

25    law imposes, as Plaintiffs expressly allege that they are asserting no state law duties except those

26    that match federal duties.  Therefore, this case begins and ends with the duties and obligations

27    that federal law imposes on Monsanto with respect to its Roundup®-branded herbicides.  When

28    federal law defines the duties at issue, the claims are federal and belong in federal court.

**1. Plaintiffs' allegations that Monsanto defrauded EPA and colluded with EPA officers present substantial federal questions.**

The Complaint expressly challenges EPA's decision to approve Monsanto's glyphosate-based herbicides, claiming that the registration was based on fraudulent test results and maintained through EPA-Monsanto collusion.  Plaintiffs allege that federal law prohibits EPA from registering pesticides for sale unless it determines that they do not present an unreasonable risk to humans.  Compl. ¶¶ 90-92.  They allege that EPA wrongly registered glyphosate for sale, notwithstanding that it causes cancer.  *Id*. ¶¶ 57, 65, 93.  According to Plaintiffs, EPA reached the wrong conclusion because Monsanto defrauded EPA by submitting falsified testing results, *id*. ¶¶ 98-103, and concealing or falsely minimizing adverse test results, *id*. ¶ 104.  Plaintiffs also allege that Monsanto "violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies…."  *Id*. ¶ 105.  Moreover, Plaintiffs allege that EPA officials did so in exchange for "lucrative consulting gigs" offered by Monsanto "to retiring EPA officials."  *Id*.  Those allegations underlie, and are expressly incorporated into, all of Plaintiffs' causes of action, *id*. ¶¶ 147, 170, 195, 215, 227, 246, 263, and they raise substantial federal questions.

The Supreme Court has held that challenges to a federal agency's performance of its regulatory duties not only implicate, but depend entirely on, federal law.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) ("[T]he relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law."); *Bader Farms, Inc. v. Monsanto Co.*, Case No. 1:16-CV-299 SNLJ, 2017 WL 633815, *3 (E.D. Mo. Feb. 16, 2017) ("whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is 'inherently federal in character'" (quoting *Buckman,* 531 U.S. at 347)).  Here, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, and its implementing regulations govern and define the relationship between EPA and applicants for pesticide registrations.  Various federal regulations address the propriety of interactions between

1    EPA and applicants.  *See, e.g.*, 40 C.F.R. §§ 158.30(a); 158.45(b)(1); 158.70; 158.80(b).  Federal

2    regulations also govern meetings between EPA and pesticide registrants relating to the creation

3    of Registration Standards for re-registrations.  *See, e.g.*, 40 C.F.R. §§ 155.27, 155.30, 155.32.

4          Where, as here, claims brought under state law include a challenge to actions of federal

5    regulators, federal law supplies the rules of decision, and removal is proper.  *See, e.g.*, *Grable*,

6    545 U.S. at 314-15 (state law claim challenging the compatibility of agency's action with federal

7    statute supported removal); *Pet Quarters,* 559 F.3d at 779 (claim directly implicating actions

8    taken by federal regulators was properly removed); *Burrell v. Bayer Corp.*, Docket No. 1:17-cv-

9    00032-MOC-DSC, 2017 WL 1032504, at *4 (W.D.N.C. Mar. 17, 2007) (removal was proper

10   where "[t]he crux" of the Complaint "was that the [FDA-approved] medical device was *not safe*

11   [and plaintiffs] … were not warned of the attendant risks" (emphasis in original)).

12         Here, the question of whether EPA was defrauded by or colluded with Monsanto or

13   instead properly performed its regulatory functions in registering glyphosate – "one of the

14   world's largest herbicides by sales volume," according to Plaintiffs, Compl. ¶ 111 – is wholly a

15   matter of federal law, is a matter of significant federal concern, and is unquestionably put at issue

16   by the Complaint.  The federal interest in having that issue litigated in federal court can scarcely

17   be overstated, given that Plaintiffs contend that EPA officials willfully abdicated their federal

18   regulatory functions – resulting in significant harm to many Americans – in exchange for the

19   officials' own financial gain.

20         Moreover, exercising federal jurisdiction over these federal issues will not disrupt the

21   balance between federal and state jurisdiction adopted by Congress.  Federal district courts

22   routinely hear cases involving claims that federal agencies failed to perform their regulatory

23   duties.[1]  And a products liability lawsuit that alleges collusion between a defendant and the

24   federal agency tasked with regulating the defendant's product is exceedingly rare.  Therefore, a

25   ruling that this case presents federal questions that should be resolved by a federal court would

26   not create the kind of opening-the-litigation-floodgates problem addressed in *Grable*.  *See*

27

28   [1] *See, e.g.*, *Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007); *Gallo Cattle Co. v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998).

1   *Grable*, 545 U.S. at 319 ("[I]t is the rare state quiet title action that involves contested issues of

2   federal law.  Consequently, jurisdiction over actions like Grable's would not materially affect, or

3   threaten to affect, the normal currents of litigation" (citation omitted)).[2]

4          Plaintiffs also allege that Monsanto committed fraud on the EPA in connection with the

5   original registration of its Roundup®-branded herbicides.  Claims that a company committed

6   fraud on a federal regulatory agency raise questions of federal law.  *Bader Farms*, 2017 WL

7   633815, at *3 ("[a]ll of these state-law proof requirements" for a fraud claim are determined by

8   federal law when fraud on a federal agency is alleged).  Every element of Plaintiffs' fraud-on-

9   the-EPA claims – duty owed to the Agency, materiality of submissions or omissions, reliance by

10  the Agency, causation in the grant or maintenance of the product registration – is governed by

11  federal law.[3]  Because the fraud-on-the-EPA claims require this Court to decide how a federal

12  agency would construe federal statutes and regulations, those claims arise under federal law, and

13  this Court has jurisdiction.  *See Bader Farms*, 2017 WL 633815, at *3 (denying remand because

14  ─────────────────

    [2] Plaintiffs tentatively argue that "granting federal jurisdiction over strictly state law claims
15  potentially sets a precedent for federal courts to entertain all manner of state-court claims, ***merely
    because a plaintiff's complaint references federal issues***." Pls.' Mem. in Supp. of Remand Mot.
16  ("Pls.' Mem.") at 10 (emphasis added), ECF No. 18-1.  But of course Plaintiffs' Complaint does
    not "merely … reference[] federal issues"; to the contrary, it leads with and is permeated with
17  federal issues, including the highly unusual allegations central to Plaintiffs' theory of the case –
    that Monsanto achieved federal regulatory approval for the product at issue here by defrauding
18  EPA and then maintained regulatory approval by colluding with the very federal officers at EPA
    who were supposed to regulate the product.  This is a materially different case than a run-of-the-
19  mill personal injury lawsuit alleging state law claims in a complaint that mentions federal issues
    in passing.  The bi-lateral collusion allegations and fraud-on-the-EPA allegations at issue here
20  also materially distinguish this case from *Organic Consumers Ass'n v. Gen. Mills, Inc.*, Civil
    Action No. 1:16-cv-1921-KBJ, 2017 WL 706168 (D.D.C. Feb. 22, 2017), which was removed to
21  federal court based on the defendant's contention that the lawsuit required "the determination of
    whether certain food products are adulterated, unsafe, and mislabeled due to the alleged presence
22  of a chemical pesticide residue, a matter governed by a comprehensive, uniform national
    regulatory scheme promulgated under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.
23  § 301 *et seq*.," *id*. at *2 (quotation marks omitted).  Thus, Plaintiffs' hopeful assertion that
    Monsanto's removal argument "is almost identical to the failed argument in *Organic*
24  *Consumers*," Pls.' Mem. at 8 n.22, is false, and their reliance on that remand ruling is misplaced.

25  [3] For example, the scope of Monsanto's duty to disclose information to EPA in its application for
    registration of Roundup®-branded herbicides is governed by federal law.  *See, e.g.*, 7 U.S.C.
26  § 136a; 40 C.F.R. § 152.80 *et seq*., and 40 C.F.R. 158.1 *et seq*.; 152.80 ("This subpart E
    describes the information that an applicant must submit with his application for registration or
27  amended registration….").  Similarly, what information EPA considers to be material in making
    registration decisions is governed by federal law.  40 C.F.R. § 158.1 ("The purpose of this part is
28  to specify the kinds of data and information EPA requires in order to make regulatory judgments
    under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products.").

─────────────────

"the outcome of the fraudulent concealment claim necessarily depends on the interpretation and application of the federal regulatory process").

The court's reasoning in *Bader Farms* compels denial of the Remand Motion.  Here, just as in *Bader Farms*, the fraud claim is predicated on allegations that Monsanto defrauded federal regulators responsible for making determinations regarding Monsanto's products:  "Implicit in plaintiffs' claim is that [EPA] would not have [registered the pesticide] had [the agency] known of the true risks involved, and that the [pesticide] would not have been approved for sale."  *Id.* at *2.  And here, as in *Bader Farms*, "the outcome of the fraudulent concealment claim necessarily depends on the interpretation and application of the federal regulatory process under [the federal agency at issue]."  *Id.* at *3.

### 2.  Plaintiffs' allegations that Monsanto violated federal statutes, including the federal misbranding statute, raise substantial federal questions.

This Court has federal question jurisdiction for another reason – Plaintiffs' state law claims are expressly predicated on alleged violations of federal law, some of which are directly alleged in the Complaint.  Where, as here, a complaint alleges violations of federal law on its face, a district court has original federal question jurisdiction.  *See New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law."); *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000) ("A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal district court."); *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) ("When a federal question is present on the face of the complaint, the district court has original jurisdiction and the action may be removed to federal court."); *Lundeen v. Canadian Pacific Ry. Co.*, 342 F. Supp. 2d 826, 829 (D. Minn. 2004) (allegation in complaint that defendant "violated applicable state law … as well as United States law" permitted removal).

For example, Plaintiffs allege that Monsanto's Roundup®-branded herbicides were "misbranded pursuant to 7 U.S.C. § 136[(q)(1)(G)]," and that "[f]ederal law specifically prohibits the distribution of a misbranded herbicide."  Compl. ¶ 146.  To prove this allegation,

which is the predicate for several claims in the Complaint, *see, e.g.*, *id*. ¶¶ 172, 177, 204, 205(f),

218, Plaintiffs must establish that EPA would consider that Monsanto failed to comply with

federal requirements for pesticide labeling.[4]  Thus, the allegation that Roundup®-branded

herbicides are "misbranded" under federal law falls within this Court's federal question

jurisdiction.

Plaintiffs also allege that Monsanto "violated [7] U.S.C. [§] 136j," Compl. ¶ 146, which

defines "unlawful acts" under FIFRA.  That section states, *inter alia*, that "[i]t shall be unlawful

for any person … (Q) to falsify all or part of any information relating to the testing of any

pesticide … submitted to the Administrator, or that the person knows will be furnished to the

Administrator …; [or] (R) to submit to the Administrator data known to be false in support of a

registration."  7 U.S.C. § 136j(a)(2).  Moreover, the Complaint makes clear that every claim

alleged by Plaintiffs is predicated solely on the violation of duties imposed by federal law.  *See*

Compl. ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that

exceeds those required by federal law, Plaintiffs do not assert such claims.  All claims asserted

herein run parallel to federal law….").  Therefore, removal was proper in this case.  *See Burrell*,

2017 WL 1032504, at *4 (removal was proper where plaintiffs alleged parallel duties, such "that

the failure to meet relevant federal obligations violated state law").

**B. The Allegations That Monsanto Defrauded And Colluded With EPA And Otherwise Violated Federal Law Are Critical To Plaintiffs' Theory Of The Case – Not Mere Background Or Context That Can Be Ignored When Deciding The Remand Motion.**

When confronted with the propriety of removal based on the federal issues raised by the

Complaint, Plaintiffs try two gambits to secure remand, but both of them fail.

*First*, Plaintiffs ask the Court to ignore, for purposes of the remand analysis, the very

---

[4] Under FIFRA, a pesticide is misbranded if, *inter alia*, "the labeling accompanying it does not contain directions for use which … are adequate to protect health and the environment," 7 U.S.C. § 136(q)(l)(F), or if "the label does not contain a warning or caution statement which may be necessary and if complied with … is adequate to protect heath and the environment," 7 U.S.C. § 136(q)(l)(G).  EPA regulations include specific requirements for content, placement, type size, and prominence of warnings and cautionary statements.  *See, e.g.*, 40 C.F.R. §§ 156.10(a)(1)(vii); 156.10(a)(2)(i)-(ii).  The text required on the front panel of the pesticide's label is determined by the Toxicity Category of the pesticide.  40 C.F.R. §§ 156.60(a)(l); 156.62; 156.64(a)(l)-(4).  Pesticides also must contain specific and detailed instructions and directions for use.  *See generally* 40 C.F.R.§156.10(i) *et seq*.

1   federal issues that they raised in the Complaint.  Plaintiffs disavow the allegations regarding

2   violations of federal law, claiming them "merely relevant to understanding Plaintiffs' theory of

3   their case," Pls.' Mem. at 8, and "serv[ing] to explain and conceptualize the history, background

4   and theory of their state-law claims," *id*. at 7.  They effectively want to amend their Complaint

5   after removal, but, as the Ninth Circuit has held, the propriety of removal is determined based on

6   the state court pleadings, and "post-removal amendments to the pleadings cannot affect whether

7   a case is removable."  *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).

8   And just as "post-removal pleadings have no bearing on whether the removal was proper," *id*.,

9   Plaintiffs' attempts to explain away the federal issues raised by the Complaint have no bearing

10  on whether removal was proper here:  "Plaintiffs' counsel cannot argue away the words written

11  in the Complaint."  *Lundeen*, 342 F. Supp. 2d at 830.

12          ***Second***, Plaintiffs present a generic list of "elements" of claims asserted in the Complaint

13  and contend that none requires them to prove Monsanto's duties under federal law.  *See* Pls.'

14  Mem. at 5-6.  But deciding whether a case was properly removed to federal court requires more

15  than reviewing a list of elements that are completely disembodied from the facts alleged in the

16  Complaint.  Instead, the facts alleged and a plaintiff's theory of the case must be considered

17  when determining whether removal was proper.  *See, e.g.*, *Bader Farms*, 2017 WL 633815, at

18  *2-3 (considering facts and theory of case; denying remand); *Burrell*, 2017 WL 1032504, at *2,

19  4 (same); *625 3rd Street Assoc. LP v. Alliant Credit Union*, No. C 09-00564 WHA, 2009 WL

20  1139592, at *1, 3-4 (N.D. Cal. Apr. 28, 2009) (same).

21          Here, removal is predicated on the facts alleged in the Complaint and Plaintiffs' theory of

22  the case – that Plaintiffs would not have developed cancer if EPA had not colluded with

23  Monsanto and instead had precluded it from selling Roundup®-branded herbicides or had

24  required Monsanto to provide a cancer warning for those herbicides.  Indeed, allegations of fraud

25  by Monsanto and collusion with EPA are so important to this litigation that plaintiffs' lawyers

26  with leadership roles in this MDL have doggedly pursued discovery in an effort to prove those

27  allegations.  One telling example is their effort to obtain deposition testimony from former EPA

28  official Jess Rowland, first by petitioning EPA itself and then filing a motion to compel his

1   deposition.  *See* Pls.' Mot. to Compel, ECF No. 189.  According to that motion, evidence

2   regarding "Monsanto's influence [on EPA] … will be ***crucial*** to the analysis of the EPA's

3   findings and conclusions even as the parties litigate this first phase of [the MDL on issues of]

4   general causation."  *Id*. at 4 (emphasis added).  As the motion stated:  "***For Plaintiffs to have to***

5   ***prosecute this case, and counter-defend against this EPA report without being able to discover***

6   ***the presence or extent of Monsanto's untoward influence over the chief author, would work a***

7   ***substantial prejudice and significantly stack the deck against Plaintiffs*.**"  *Id*. at 5 (emphasis

8   added).[5]  In accordance with this Court's order, Mr. Rowland has been deposed, and plaintiffs'

9   counsel could not be more clear in placing EPA's conduct at the center of their own theory of the

10   case as they pursue further discovery regarding EPA's alleged collusion with Monsanto.  *See*

11   Pls.' Mot. to Compel Responses from Deponent Jesudoss Rowland at 10, ECF No. 261-1.

12        Plaintiffs' allegations about Monsanto colluding with and defrauding EPA also are a

13   necessary predicate to Monsanto's alleged fraud on consumers.  *See, e.g.*, Compl. ¶ 88

14   ("Monsanto assured ***the public*** that Roundup® was harmless.  ***In order to prove this***, Monsanto

15   championed falsified data and … led a prolonged campaign of misinformation to ***convince***

16   ***government agencies***, farmers and the general population that Roundup® was safe." (emphasis

17   added)); *id*. ¶ 104 (alleging that fraudulent studies have been "used to convince regulators to

18   allow the sale of Roundup®" and "to convince customers to use Roundup®"); *id*. ¶¶ 103-04

19   (alleging that Monsanto marketed Roundup®-branded herbicides despite regulatory fraud

20   involved in obtaining EPA registration).  In light of EPA's control over the registration, sale, and

21   labeling of Monsanto's Roundup®-branded herbicides, Plaintiffs' extensive, explicit, and

22   intentional allegations regarding Monsanto's fraud on and collusion with EPA are crucial

23   predicates to their claims, not mere context or background information.[6]

---

[5] District courts are permitted to consider materials outside the pleadings to determine their subject matter jurisdiction.  *See, e.g.*, *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

[6] Plaintiffs' reliance on *Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir. 1996), *see* Pls.' Mem. at 4, is misplaced.  *Rains* states that federal question jurisdiction does not attach when a claim "can be supported by ***alternative and independent theories*** – one of which is a state law theory and one of which is a federal law theory."  *Rains*, 80 F.3d at 346 (emphasis added).  Here, the federal issues alleged in the Complaint permeate, and are inextricably intertwined with, the state-law-based claims, so the federal and state law theories are not alternative and independent.

Finally, Plaintiffs' efforts to sweep aside the violations of federal law alleged in the Complaint are contrary to the Complaint itself, which states that Plaintiffs are asserting **only** state law duties that **match duties imposed by federal law**. *See* Compl. ¶ 144. Plaintiffs thereby expressly elected to make the duties allegedly imposed by federal law crucial to the relief they seek. For example, the allegation that Monsanto's Roundup®-branded herbicides are "misbranded" under federal law defines the scope of Plaintiffs' purported state law challenges to the packaging and labeling of these herbicides entirely. Because federal law completely defines the scope of the duties that Plaintiffs contend were breached, the fact that they purport to assert those duties *via* state law claims does not eliminate their federal nature.

## II. Federal Officer Removal Is Proper Because Plaintiffs' Claims Require State Court Jurors To Evaluate Whether The Federal Agency Obligated By Federal Law To Regulate Monsanto Colluded With Monsanto To Maintain Federal Regulatory Approval For Monsanto's Glyphosate-Based Herbicides.

The federal officer removal statute authorizes removal of a civil action that is "against or directed to" the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." § 1442(a)(1). Section 1442(a)(1) "must be 'liberally construed'" to avoid frustrating the policy favoring removal. *Watson*, 551 U.S. at 147 ("The words 'acting under' are broad…." (quoting § 1442(a)(1); *Colorado v. Symes*, 286 U.S. 510, 517 (1932))); *see Durham v. Lockheed Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) ("the Supreme Court has mandated a generous interpretation of the federal officer removal statute").

### A. All Requirements For Federal Officer Removal Are Satisfied In This Case.

Federal officer removal is proper where, as here: (1) the removing party "is a 'person' within the meaning of the statute"; (2) "there is a causal nexus between [the party's] actions, taken pursuant to a federal officer's directions, and plaintiff's claims"; and (3) the party "can assert a colorable federal defense." *Durham*, 445 F.3d at 1251 (quotation marks omitted); *see Jacks v. Meridian Resource Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).[7] A 2011 amendment

---

[7] The requirements of § 1442(a)(1) "overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 136 (1989); *see Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006).

broadened the "causal connection" element of § 1442(a)(1) by adding "or relating to" after "for." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n*, 790 F.3d 457, 467 (3d Cir. 2015).

**1. "Person":**  Monsanto is a corporation, so it is a "person" for purposes of § 1442(a)(1). *See Jacks*, 701 F.3d at 1230 n.3.

**2. Nexus; Actions Taken Under Federal Officer:**  Plaintiffs allege that EPA illegally colluded with Monsanto to maintain federal agency approval for Monsanto's glyphosate-based herbicides.  They allege that a special relationship existed between EPA officers and Monsanto (which allegations are incorporated by reference into each claim):

> Monsanto has also violated federal regulations in holding secret ex parte meetings and conversations with certain EPA employees to ***collude in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies*** such as the Agency for Toxic Substances and Disease Registry.  Monsanto's close connection with the EPA arises in part from its offering of lucrative consulting gigs to retiring EPA officials.

Compl. ¶ 105 (emphasis added); *see also id.* ¶¶ 147, 170, 195, 215, 227, 246.  Plaintiffs thus contend that EPA and Monsanto entered into a "secret agreement or cooperation esp[ecially] for an illegal or deceitful purpose," Merriam Webster's Collegiate Dictionary (10th ed. ) at 226 (defining "collusion"), such that Monsanto could direct agency employees to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides, with lucrative consulting positions paid by Monsanto as the alleged *quid pro quo* for this delegation of agency power.

Plaintiffs' allegations of collusion are important to their theory of the case.  This Court may consider, for example, the motion to compel the deposition of ex-EPA officer Jess Rowland:

- There was "a concerted effort by Monsanto and the OPP [EPA's Office of Pesticide Programs], Jess Rowland, and his CARC [Cancer Assessment Review Committee] . . . to 'kill' the glyphosate/lymphoma issue for the company."  Pls.' Mot. to Compel the Dep. of Jess Rowland at 2, ECF No. 189.

- "Rowland wanted to help Monsanto stop an investigation concerning the carcinogenicity of glyphosate being conducted by [a separate federal agency,] t]he Agency for Toxic Substances and Disease Registry (ATSDR)."  *Id.* at 3.

- "Rowland bragged: 'If I can kill this [ATSDR investigation,] I should get a medal.'"  *Id.*

Plaintiffs' claims of gross misconduct by EPA and unlawful delegation of the federal

agency's obligation to regulate Monsanto could not be more explicit – though they are outrageous and will be contested and defeated:

- "[I]t would benefit EPA, and the public as a whole, to learn about a former EPA employee's biases and misconduct and deter such conduct in the future." Pls.' Reply in Supp. of Mot. to Compel Dep. of Jess Rowland at 2, ECF No. 141.

- "Plaintiffs have a pressing need for Mr. Rowland's testimony to confirm his relationship with Monsanto and EPA's substantial role in protecting the Defendant's [Monsanto's] business, efforts subsequently embodied in government reports consistently cited by Monsanto in this Court and elsewhere." Id.

- Plaintiffs propose to rely on a former EPA scientist to "substantiate[] many of Plaintiffs' suspicions regarding EPA's improper relationship with Monsanto." Id. at 4.

- Plaintiffs advance the claim of "corruption within EPA" and wish to rely on one former EPA scientist to accuse EPA of "'play[ing] your political conniving games with the science to favor the registrants.'" Id. at 3-4.

- Plaintiffs advance through one former EPA scientist an additional accusation toward current EPA employee Anna Lowit: **"If anyone in OPP is taking bribes, it is her."** Id. at 4 (emphasis in original).[8]

The allegations in this case go far beyond "the usual regulator/regulated relationship." Watson, 551 U.S. at 157. Plaintiffs allege a special – indeed, extraordinary and illegal – relationship between the regulated company (Monsanto) and the federal regulatory agency (EPA). See id. (in federal officer removal case, considering "special relationship" between the federal agency and the defendant to differentiate "from the usual regulator/regulated relationship"). The allegation that Monsanto and EPA colluded to maintain federal regulatory approval for Monsanto's glyphosate-based herbicides is materially different than the usual relationship between a federal regulator and a regulated company – and fulfills the exceptional case addressed in Watson.

Moreover, the causal-or-related-nexus requirement – which is a "quite low" hurdle, Isaacson v. Dow Chem. Co., 517 F.3d 129, 137 (2d Cir. 2008); Jacks, 701 F.3d at 1230 n.3 – also is satisfied here. Plaintiffs' entire case is based on the theory of illegal collusion between Monsanto and specific EPA officers, i.e., that Plaintiffs would not have developed cancer if EPA

---

[8] Courts are allowed to consider information beyond the four corners of a complaint when deciding whether federal officer removal was proper. See Ruppel v. CBS Corp., 701 F.3d 1176, 1184-86 (7th Cir. 2012); Bennett v. MIS Corp., 607 F.3d 1076, 1087 & n.11 (6th Cir. 2010).

1   had not participated in the alleged special relationship with Monsanto but instead had fulfilled

2   EPA's federal regulatory obligations by not allowing Monsanto to sell its glyphosate-based

3   herbicides – or by precluding Monsanto from selling these herbicides without a cancer warning.

4       **3. Colorable Federal Defense:**  Monsanto has at least two colorable federal defenses that

5   will be raised in a summary judgment motion.  "For a defense to be considered colorable, it need

6   only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful

7   before removal is appropriate."  *U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001); *see Jefferson*

8   *Cty.*, 527 U.S. at 431 (stating that removing defendant is not required "virtually to win his case

9   before he can have it removed" (quotation marks and citation omitted)).

10      Monsanto's first federal defense is based on the well-established principle that a state-law

11  claim alleging that a regulated company defrauded or misled a federal regulatory agency

12  conflicts with, and therefore is impliedly preempted, by federal law.  *See Buckman Co. v.*

13  *Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d

14  1199 (9th Cir. 2002); *Giglio v. Monsanto Co.*, Case No.: 15cv2279 BTM(NLS), 2016 WL

15  1722859 (S.D. Cal. Apr. 29, 2016).  Plaintiffs repeatedly allege that Monsanto, when dealing

16  with EPA regarding Roundup®-branded herbicides, concealed information from EPA, made

17  misrepresentations to EPA, and failed to provide adequate warnings to EPA regarding the risks

18  and dangers of those herbicides.  *See* Compl. ¶¶ 98-105, 147, 155, 170, 176, 177, 183, 195, 205,

19  215, 217, 227, 232, 235, 264.

20      Monsanto's second federal defense is based on the FIFRA provision that expressly

21  preempts state-law claims based on allegedly inadequate herbicide warnings that would "impose

22  or continue in effect any requirements for labeling or packaging in addition to or different from

23  those required under [FIFRA]," 7 U.S.C. § 136v(b); *see Bates v. Dow Agrosciences LLC*, 544

24  U.S. 431, 446 (2005) (holding that "fraud and negligent-failure-to-warn claims are premised on

25  common-law rules that qualify as 'requirements for labeling or packaging'" (citing § 136v)).

26  Plaintiffs' claims improperly would impose requirements "in addition to or different from those

27  required under [FIFRA]," § 136v(b), because EPA repeatedly made FIFRA-based regulatory

28  determinations that glyphosate does not pose a cancer risk, which have informed EPA's repeated

1    FIFRA approvals of labeling for Roundup®-branded herbicides without any cancer warning for

2    many years, including as recently as March 2016.  Removal Notice ¶ 69 & notes 6-7 (citing

3    exhibits); *see, e.g.*, § 136v(b); *Bates,* 544 U.S. 431; *Mirzaie v. Monsanto Co.*, Case No. CV 15-

4    04361 DDP (FFMx), 2016 WL 146421 (C.D. Cal. Jan. 12, 2016).[9]

5           In addition to satisfying the elements discussed above, Monsanto's removal comports

6    with the purpose of the federal officer removal statute by ensuring that claims asserted in state

7    court cannot be used to interfere with a federal agency's efforts to carry out its regulatory duties.

8    In light of Plaintiffs' extraordinary allegations of illegal collusion between a federal regulatory

9    agency and the company it was supposed to regulate, public policy strongly favors denial of

10   remand.

11          **B.  Plaintiffs Do Not Present Any Persuasive Arguments For Rejecting Federal
              Officer Removal In This Case.**

12

13          Plaintiffs' efforts to defeat federal officer removal are flawed because Plaintiffs fail to

14   _____

15   [9] Although this Court and other courts have denied Monsanto's FIFRA express preemption
     arguments at the motion-to-dismiss stage, it nevertheless is plausible that the defense will prevail

16   later, when presented in a different context – for example, a summary judgment motion based on
     a full factual and legal record.  Two courts that denied Monsanto's express preemption

17   arguments in motion-to-dismiss findings noted the limitations and constraints imposed by the
     procedural context in which those rulings were issued.  *See Giglio v. Monsanto Co.*, Case No.:
     15cv2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016) ("[Monsanto] argues

18   that Roundup in fact is not carcinogenic and that the EPA has made determinations that this is
     the case.  However, a motion to dismiss is not the proper vehicle to delve into the import of EPA

19   classifications or what EPA representatives have said in the past, what information they were
     relying on, and what effect their statements have on the issues before the Court."); *Hernandez v.*

20   *Monsanto Co.*, Case No. CV 16-1988-DMG (Ex), 2016 WL 6822311, at *8 (C.D. Cal. July 12,
     2016) ("Monsanto's argument could also be construed as an offer of proof that the EPA's factual

21   findings are evidence that Roundup is not, in fact, carcinogenic.  Such arguments, which require
     the Court to weigh evidence and make factual determinations, are not appropriate at the motion

22   to dismiss stage."); *see also Jacks*, 701 F.3d at 1235 (holding that removing defendant had
     colorable federal defenses, including "that [plaintiff's] claims are preempted"; stating that,

23   "[w]hile these defenses are indeed colorable, we make no determination as to their merits").  At
     this stage, the inquiry "is purely jurisdictional."  *Cuomo v. Crane*, 771 F.3d 113, 116 (2d Cir.

24   2014).  The difference between evaluating a defense to determine removability and evaluating
     the defense for other purposes is illustrated by the *Jefferson County* opinion, where the Supreme

25   Court held that the federal defense was sufficiently colorable to justify federal officer removal,
     even though the Court rejected the defense on its merits.  *See Jefferson Cty.*, 527 U.S. at 431

26   (holding that defendants presented "a colorable federal defense" – "although we ultimately reject
     [the defense]"); *see also Kinetic Sys., Inc. v. Federal Financing Bank*, 895 F. Supp. 2d 983, 987

27   (N.D. Cal. 2012) (denying plaintiff's remand motion and denying defendant's motion to dismiss;
     holding that, although defendant's federal defenses are "'colorable' for purposes of [federal

28   officer] removal, they are not meritorious").

1   heed the admonition that § 1442(a)(1) must be liberally construed in favor of federal officer

2   removal.  *See supra* page 10 (citing cases).  For instance, Plaintiffs contend that the Supreme

3   Court's *Watson* ruling does not support federal officer removal here, *see* Pls.' Mem. at 11, but

4   they ignore that they have postured this case exactly to the exception that *Watson* identified:  this

5   lawsuit is based on an alleged special relationship between EPA and Monsanto, not merely a run-

6   of-the-mill relationship between a federal regulatory agency and a regulated company.

7         Plaintiffs also widely miss the mark by contending that the illegality of EPA's and

8   Monsanto's collusive conduct precludes federal officer removal.  *See* Pls.' Mem. at 11-12.

9   Plaintiffs' claim of unlawful conduct by a federal agency is precisely the kind of dispute that

10  must be resolved in federal court.  *See Isaacson*, 517 F.3d at 138 ("Indeed, whether the

11  challenged act was outside the scope of Defendants' official duties, or whether it was specifically

12  directed by the federal Government, is one for the federal – not state – courts to answer." (citing

13  *Willingham*, 395 U.S. at 409)); *Bennett*, 607 F.3d at 1088 (citing *Isaacson*, 517 F.3d at 138).

### CONCLUSION

14

15        For the foregoing reasons, the Court should deny the Remand Motion.[10]

16

17  DATED: May 5, 2017               Respectfully submitted,

18                            /s/ Joe G. Hollingsworth

19                            Joe G. Hollingsworth (*pro hac vice*)
      (jhollingsworth@hollingsworthllp.com)

20                            Eric G. Lasker (*pro hac vice*)
      (elasker@hollingsworthllp.com)

21                            HOLLINGSWORTH LLP
      1350 I Street, N.W.

22                            Washington, DC  20005
Telephone:  (202) 898-5800

23                            Facsimile:   (202) 682-1639

24                            *Attorneys for Defendant Monsanto Company*

25

26                

[10] The Court also should deny Plaintiffs' request for fees and costs because, as shown above and in the Notice of Removal, federal issues permeate the Complaint to such a significant extent that Monsanto had an objectively reasonable basis for removal in this case.  *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").

27

28