**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:  202-898-5800
Facsimile:   202-682-1639
Email: jhollingsworth@hollingsworthllp.com
          elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
|---|---|
| This document relates to all cases. | |

**MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SLIDES OF KIDNEY TISSUE FROM MICE IN STUDY BDN-77-420**

Plaintiffs provide no explanation for waiting until the final weeks of general causation fact discovery to request pathology review of more than 1,000 kidney tissue slides that they have known about since before this MDL was created.[1]  And before serving this last-minute discovery request, plaintiffs gave no notice to Monsanto Company ("Monsanto") or the Court that they would seek this pathology review despite many opportunities to do so.  If this discovery truly was important to plaintiffs, they would have raised it sooner.  Plaintiffs' delay appears to have no purpose other than to thwart the Court's schedule.  The pathology review they seek would require weeks of additional fact discovery during the expert phase of this bifurcated proceeding, as both parties' experts would need an opportunity to review the slides.  These reviews in turn would likely lead to additional expert reports and other

---

[1]  Plaintiffs waited to serve this discovery request so that Monsanto's response or objections would be due on Friday, April 14, 2017, one business day before the end of general causation fact discovery.

1
MONSANTO'S OPP'N TO PLFS' MOTION TO COMPEL KIDNEY TISSUE SLIDES
MDL NO. 2741 & CASE NO. 16-MD-02741-VC

proceedings. Further, review of the slides at issue is duplicative and unnecessary – plaintiffs already have access to the findings from prior reviews of the same slides, including by the U.S. EPA and individuals not employed by Monsanto, which is a less burdensome source of discovery. Plaintiffs' speculation that additional review might yield materially different interpretations than the prior reviews is therefore baseless and does not justify the disruption and burden imposed by their gamesmanship.

For these reasons, as discussed further below, the Court should deny Plaintiffs' Motion to Compel the Production of All Original and Re-cut Slides of Kidney Tissue from Mice in Study BDN-77-420, ECF No. 257 ("Plfs' Motion"). Monsanto also objects to plaintiffs' continued unilateral filings on discovery issues outside of the Court's joint letter procedure.[2]

## I.     The Court Should Deny Plaintiffs' Discovery Request Based On Plaintiffs' Unjustified Delay And Gamesmanship, And The Court's Schedule.

Plaintiffs' unjustified delay in requesting an additional review of the kidney slides in Study BDN-77-420 is a transparent attempt to disrupt the Court's schedule for efficiently and promptly resolving whether plaintiffs can meet their *Daubert* burden on the threshold general causation question in this litigation. A court "must" limit discovery when a party "has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii); *see* Fed. R. Civ. P. 26(b)(1). Plaintiffs have known about the kidney slides at issue since the inception of this litigation, including from the July 2015 IARC Monograph on which they rely so heavily in their initial complaints. Nevertheless, plaintiffs decided not to request that Monsanto make these slides available for review until March 15, 2017, just weeks before the close of fact discovery. *See* Request for Production of Documents and

---

[2] Responding to plaintiffs' same day notice of their intent to file this dispute as a Motion to Compel, Monsanto's counsel responded: "[W]e object to plaintiffs' unilateral filing of a motion on this discovery issue. The proper procedure before Judge Chhabria would be a joint discovery letter. Plaintiffs again waited until the day of plaintiffs' planned filing to send us a list of documents that total well over 500 pages. Plaintiffs have known about these slides since the beginning of this litigation."

Tangible Things, Mar. 15, 2017 (Ex. 1). The timing of plaintiffs' request ensured that Monsanto's response would be due immediately before the close of fact discovery, and there would be inadequate time remaining within the Court's fact discovery period to identify the slides of interest, negotiate a protocol for review and safeguarding of the slides,[3] and to then complete the review of the more than 1,000 kidney slides at a selected facility.[4]

      The current discovery schedule has been in place since November 23, 2016. If plaintiffs considered these slides to be important discovery, they had every opportunity to request them in a timely fashion. Plaintiffs' months-long silence regarding the slides they now claim to urgently need demonstrates that the timing of this request was a strategic decision aimed at disrupting this Court's phase I schedule. As other courts have found, such efforts should be rejected. For example, in *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* the U.S. District Court for the Central District of California quashed a deposition subpoena served six weeks before the discovery cutoff date. 300 F.R.D. 406, 411-12 (C.D. Cal. 2014). The court explained that the requesting party knew of the requested deponent's involvement in the allegations at issue when filing the complaint, and thus the "late service of the subpoena . . . at the *end* of the time allotted for discovery, undermines any claim that her testimony is essential." *Id.* Delaying the request until the end of discovery made it even more burdensome, particularly where there was no allegation that the additional discovery would yield new, relevant information, and where the requestor had access to other less burdensome discovery on the same issues. *See id.*

      These considerations also cut against allowing the additional discovery plaintiffs seek here. Plaintiffs could have included a request for the slides in the original discovery plan for

---

[3] Sound scientific principles and various EPA regulatory requirements require that the slides be kept at all times in specified conditions. *See* 40 C.F.R. § 160.195(b)(1). Therefore, unlike documents which can be scanned and transmitted, the "production" of pathology slides requires a detailed protocol. Although plaintiffs claim they will agree to a suitable protocol, the timing of their request left inadequate time to negotiate and implement that protocol.

[4] Plaintiffs move to compel only the kidney pathology slides. They have dropped their initial request to also produce hundreds of additional slides from different tissues.

this case, but did not.  *See* Plfs' Case Management Statement at 19-20, ECF No. 18.  Alternatively, plaintiffs could have served the same request at any earlier time in the discovery period, but did not.  Further, at least five current or former Monsanto employees testified that the long-term rodent carcinogenicity studies show no carcinogenic effect.  At the March 8, 2017 Case Management Conference, the parties and the Court addressed the discovery planned for the final weeks of fact discovery.  At that time, plaintiffs neglected to mention that they intended to serve an additional, massive discovery request.  *See* Transcript of Proceedings at 4:20-5:9, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Mar. 8, 2017).  Instead, they waited seven more days before requesting the slides for a private pathology/carcinogenicity review.

If plaintiffs intended to challenge the pathology results of the 1983 mouse study at issue, they had ample opportunity to do so, but chose not to.  Nothing in plaintiffs' motion justifies their delay in seeking this discovery, or provides good cause to extend the fact discovery period, which would be necessary to permit the requested production and review.  *See* Fed. R. Civ. P. 16(b)(4) (requiring a showing of good cause in order to change a court's schedule); *see also Amini Innovation Corp.,* 300 F.R.D. at 411 ("Had McFerran truly considered [the proposed deponent] a critical witness, it is unlikely that it would have waited until just six weeks before the close of discovery to serve the subpoena.").

Instead of acknowledging that their request would require an extension of time for fact discovery, as well as the expert discovery and *Daubert* briefing schedule that has been in place for months, plaintiffs' Motion to Compel attempts to characterize the April 17, 2017 discovery cutoff as merely "the deadline to complete the depositions of identified fact witnesses," *see* Plfs' Motion at 4.  There is no question that the time for fact discovery in the general causation phase of this litigation concluded on April 17, 2017.  Under Northern District of California Local Rule 37-3, "a 'discovery cut-off' is the date by which all responses to written discovery are due and by which all depositions must be concluded."  At the March 8, 2017 CMC, the Court confirmed that the April 17th deadline was in fact the

4

1  close of general causation fact discovery.  *See* Transcript of Proceedings at 6:12-15, *In re*
2  *Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Mar. 8, 2017) (the Court
3  discussing scheduling of next CMC relative to "the cutoff" on Apr. 17, 2017); *id.* at 4:18-19
4  (ordering that a deposition take place "before the discovery cutoff").

5        Indeed, plaintiffs' counsel themselves referred to April 17 as the "close of discovery"
6  in discussing the upcoming schedule.  *Id.* at 5:25-6:3 (an unidentified speaker for plaintiffs
7  proposing that the next CMC be scheduled for "right at the end of the close of discovery,"
8  noting that "[w]e have a lot to do between now and April 17th, so it might make sense to do it
9  right after that").  The fact that plaintiffs are now changing course and attempting to
10 characterize this date as only the deadline to complete depositions further demonstrates the
11 gamesmanship behind their request.

12       Permitting fact discovery relating to general causation to continue while the parties
13 are submitting their expert reports and briefing *Daubert* and other motions is illogical,
14 inefficient, and prejudicial.  The requested production consists of over 1,000 slides, such that
15 expert review would take weeks.  Plaintiffs' suggestion that their expert reports could be
16 supplemented after their review of the slides, *see* Plfs' Motion at 5, ignores that Monsanto's
17 experts would also need time for such review and report supplementation.  As plaintiffs have
18 acknowledged, expert reports must be final before further expert-related work can proceed.
19 *See* Transcript of Proceedings at 90:4-5, 7-10, *In re Roundup Prods. Liab. Litig.*, No. 3:16-
20 md-02741-VC (N.D. Cal. Dec. 21, 2016) ("Ms. Greenwald: . . . I've never done an expert
21 depo until all the reports are in. . . .  Otherwise – they need the full set of information before
22 depositions would take place.  Otherwise, there would be a request for a second one.").
23 Allowing expert discovery to proceed simultaneously with fact discovery also would almost
24 certainly result in repeat depositions – one before and one after the slide review.  Indeed,
25 even in non-bifurcated cases, fact discovery typically concludes before the exchange of
26 expert reports.

27

28

In short, plaintiffs' request is yet another attempt to derail this Court's efficient bifurcated schedule and their motion should be denied.

## II.     Plaintiffs' Request Is Duplicative Of Information Already Available Through Less Burdensome Sources.

Plaintiffs' request is just the latest example of plaintiffs treating discovery in this MDL as a fishing expedition.  *See* Transcript of Proceedings at 20:17-22, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Feb. 24, 2017) ("The Court: . . . It seems like what you're trying to do here is sort of root through Monsanto as much as you can . . . to discern evidence, discovery evidence, of Monsanto manipulating or unduly influencing the science.").  They have often unsuccessfully sought repeat discovery covering the same areas already explored when prior discovery did not yield information they liked.  *See, e.g.*, *id.* at 18:6-22:17 (questioning plaintiffs regarding what information their requested deponents would provide "that you haven't already gotten from somebody else"); *see also* Pretrial Order No. 14: Plaintiffs' Request for Additional Discovery, ECF No. 165 (denying plaintiffs' request for additional deponents).

Here, again, plaintiffs are seeking discovery that is duplicative of information already available to them from more convenient sources, and seek to impose a burden on Monsanto that is not proportional to the issues at hand in this first phase of discovery.  *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(C) (a court "must limit the frequency or extent of discovery otherwise allowed" by the Federal Rules if the discovery sought "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . .").[5]

---

[5] *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* 301 F.R.D. 449, 455 (N.D. Cal. 2014) (protective order granted as to interrogatories because responding would require party to undergo "a lengthy and expensive process" of reviewing its records, and there was no basis to conclude that discovery would yield significant, new information); *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.,* 212 F.R.D. 567, 571 (E.D. Cal. 2002) (denying motion to compel and granting protective order because discovery sought was burdensome and cumulative of "the broad reach of the discovery already conducted by [plaintiffs] in this action," including numerous discovery requests and depositions); *Schaffer v. CC Investments, LDC,* 205 F.R.D. 158, 159-60 (S.D.N.Y. 2002) (affirming

Moreover, any contrary opinion that plaintiffs' experts may seek to offer based on a review of the slides when the results of the study are already well-known and have been established for decades would be of diminished significance, if admitted at all, under *Daubert* because the opinion would be developed expressly for the purpose of testifying in litigation. *See, e.g.*, *Shalaby v. Irwin Indus. Toll Co.*, No. 07-cv-2107-MMA-BLM, 2009 WL 7452756, at *8 (S.D. Cal. July 28, 2009), *aff'd sub nom. Shalaby v. Newell Rubbermain, Inc.*, 379 F. App'x 620 (9th Cir. 2010); *Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1317 (9th Cir. 1995) (fact that expert developed opinion for purposes of testifying is "very significant" factor that weighs against its admissibility).[6]

The kidney slides at issue here meet all of these criteria. They have been the subject of multiple independent reviews and hundreds of pages of analysis, all of which has been produced by Monsanto or is publicly available. For example, at EPA's request, the kidney slides were reviewed by a Pathology Work Group ("PWG") comprised of five independent experimental pathologists, some of whom were long-term government employees. The PWG's examination followed established scientific procedures, included reviewing slides without knowledge of the treatment (dose) group from which they came in order to eliminate a potential source of bias. The PWG members reached the following conclusion:

> This PWG firmly believes and unanimously concurs with the original pathologist and reviewing pathologist that the incidences of renal tubular-cell neoplasms in this study are not compound related.

---

order precluding additional discovery because, in light of its "doubtful relevance" to the court's order limiting discovery to specific issues, "Plaintiff has not shown that production of voluminous individual trade records is necessary where Defendants have produced summaries of that trading activity.").

[6] This is especially true in light of the fact that long-term mouse carcinogenicity studies conducted by other registrants failed to produce any compound-related neoplastic kidney tumors. *See* Helmut Greim et al., *Evaluation of carcinogenic potential of the herbicide glyphosate, drawing on tumor incidence data from fourteen chronic/carcinogenicity rodent studies*, 45 Critical Reviews in Toxicology 185 (2015).

EPA Memo at 7-9 (emphasis in original).  EPA then convened a Scientific Advisory Panel made up of independent scientists; that panel also agreed with this assessment.  *See* EPA Scientific Advisory Panel Recommendations ("EPA 1986 SAP") at 2 (Feb. 24, 1986), *found at* https://archive.epa.gov/pesticides/chemicalsearch/chemical/foia/web/pdf/103601/103601-209.pdf ("The vast majority of the pathologists, who examined the proliferative lesion in the male control animal, agreed that the lesion represented a renal adenoma.  Therefore, statistical analysis of the data should utilize this datum").

After reviewing the enormous amount of additional data gained since the original study report, which found no carcinogenic effect in the first instance, EPA concurred with the PWG and others that the renal tubular neoplasms were not compound-related due to a lack of statistical significance,[7] along with other quantitative and qualitative toxicological considerations.[8]  Based on the conclusions of this study and others, EPA found that glyphosate is not likely to be carcinogenic to humans.  Second Peer Review at 14, 18-19.  EPA has repeatedly stood by these conclusions.  *See* EPA Cancer Assessment Review Committee Report at 53 (Oct. 1, 2015), *found at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014 ("Overall, the Peer Review Committee did not consider the renal tumors to be treatment-related.  The CARC reaffirmed the CPRC conclusion and rationale.  Also, the lack of increased renal tumors in multiple other mouse studies in the same strain provides additional evidence for lack of an actual carcinogenic response in the kidneys."); EPA Glyphosate Issue Paper at 85-87 (Sept. 12, 2016), *found at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094 ("[T]he agency concurs with the PWG conclusion, following a thorough examination of all kidney sections, that the renal tubular neoplasms are not treatment-related

---

[7] EPA, Reregistration Eligibility Decision Document: Glyphosate, 14 (Sept. 1993) ("EPA RED"), https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_PC-417300_1-Sep-93.pdf

[8] *See* EPA Second Peer Review ("Second Peer Review") at 14, 18-19 (Oct. 30, 1991), *found at* https://archive.epa.gov/pesticides/chemicalsearch/chemical/foia/web/pdf/103601/103601-265.pdf.

1   with a lack of statistical significance in the trend and pairwise tests"). These results are also
2   fully supported by the full glyphosate rodent carcinogenicity data set. *Id.*; *see also* Greim,
3   *supra.*[9]

4   Courts routinely deny discovery requests where, as here, the proponent fails to
5   demonstrate that the discovery sought will generate relevant information above and beyond
6   what is already available. For example, in *Dodd v. Workman*, the court denied petitioner's
7   request to re-test a towel found near a murder scene because the towel had been previously
8   tested by the State and by another entity on petitioner's behalf. No. Civ-06-140-D, 2011 WL
9   3298996, *1, 3-4 (W.D. Okla. Aug. 1, 2011). The court found the petitioner failed to
10  demonstrate good cause that the re-test would yield beneficial evidence that would entitle
11  him to relief. *Id.; see also Amini Innovation Corp.,* 300 F.R.D. at 411-12 (quashing
12  deposition subpoena served at end of discovery period in part because there was no basis to
13  expect the discovery to yield new, relevant information, and discovery had already been
14  allowed on the same issue through other sources).

15  Delaying discovery to determine whether plaintiffs' experts can gin up additional
16  tumors is inefficient, unnecessary, and improper, particularly at this stage of the litigation.
17  Plaintiffs' request is of dubious benefit and does not justify the burden on Monsanto of
18  producing the kidney slides for review or the disruption to the current schedule. *See also,*
19  *e.g.*, Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 16(b)(4); *Prime Healthcare Centinela, LLC v.*
20  *Kimberly-Clark Corp.,* No. 14-CV-8390-DMG (PLAx), 2016 WL 7045608, at *2-3 (C.D.
21  Cal. Mar. 23, 2016) (denying motion to compel response to interrogatory because requesting
22  party failed to show it would provide more than a speculative benefit or was "anything more
23  than a fishing expedition"); *Nelson v. Capital One Bank*, 206 F.R.D. 499, 501 (N.D. Cal.
24  2001) (quashing requests for admission that sought information that "is tangential at best and,
25  in any event, could be obtained much more efficiently and directly" through other discovery,

---

[9] The delay discussed in Section I is further highlighted by the EPA statements and literature discussed in this paragraph, which have been known to plaintiffs throughout these MDL proceedings.

9

MONSANTO'S OPP'N TO PLFS' MOTION TO COMPEL KIDNEY TISSUE SLIDES
MDL NO. 2741 & CASE NO. 16-MD-02741-VC

explaining that "burdensome discovery should not be permitted based on mere speculation" that relevant information would be obtained); *Situ v. O'Neill,* No. 11-CV-01225 (GAG), 2014 WL 6974575, *6 (D.P.R. Dec. 9, 2014) (denying plaintiffs' motion to extend discovery deadline so plaintiffs' expert could perform testing on samples of gas pipe from explosion site, where plaintiffs waited until the final week of discovery to arrange inspection of the pipe, testing was not necessary for opposing summary judgment, and defendants would be prejudiced by reopening discovery which would require creation of a new protocol for testing; removal and testing of the sample; amendment to expert report and rebuttal reports; potential additional deposition of an expert; and potential additional issues to resolve by motion).

Accordingly, the Court should deny plaintiffs' Motion to Compel.

DATED:  May 5, 2017                                Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*