Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Telephone: (540) 672-4224

Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>Hearing: May 12, 2017<br>Time: 2:00 P.M.<br>Courtroom 4, 17th Floor<br>Hon. Vince Chhabria |
| This document relates to:<br><br>ALL ACTIONS | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL RESPONSES FROM DEPONENT JESUDOSS ROWLAND**

**"From first to last I had nothing to hide, and for that reason I had nothing to fear."**

**- Upton Sinclair, The Brass Check, 1919.**

Mr. Rowland's 19-page Opposition to the Plaintiffs' Motion to Compel further factual testimony regarding influence by Monsanto on EPA and possible quid pro quo offered to him, is revealing in two respects. First, it fails to acknowledge (or rebut in any way) the fact that Mr. Rowland, through his counsel, knowingly misrepresented on the record that his post-EPA work was "unrelated to the chemical industry" when refusing to answer basic factual questions. Second, the opposition relies mostly on an insistence that Plaintiffs did not meet and confer with Rowland's counsel prior to filing their motion to compel; such a contention is incorrect given the stenographic record.

Mr. Lawler, Mr. Rowland's chief counsel, stated early in the deposition "as we proffered, it's [his consulting work] unrelated to the chemical industry, [and] we're not going to let him answer those." Rowland tr. at 17:24-18:2. Nothing could be further from the truth. As set forth in the Motion, after the Court intervened during the deposition and compelled this testimony, Mr. Rowland then listed three chemical companies for which he has worked post-EPA, two of which are among Monsanto's closest associates, and the third of which is a shell company and a mystery.

After naming these three companies, Mr. Rowland refused to answer additional questions, such as when he began working for each of these three chemical companies. In the midst of these refusals, Plaintiffs' attorney conferred with Mr. Lawler on the record:

> "Mr. Miller: You're instructing the witness not to answer when he started working…?
> Mr. Lawler: Yep.
> Mr. Miller: Okay, well we're going to move to compel that later, so you know. I'm probably not going to bother the Court now, but we will be compelling."

Id. at 247:23-248:6. Plaintiffs' counsel stated five additional times on the record that he would move to compel answers to these questions, noting that the refusal to answer was in

contravention of the Court's ruling just minutes before. Plaintiffs' meet and confer occurred in good faith on the record. Particularly following the misrepresentation that Mr. Rowland's post-EPA work was not related to the chemical industry, additional meeting and conferring in the days following the deposition would have been futile and a waste of the parties' time. Plaintiffs certify that their efforts at Mr. Rowland's deposition constituted a good faith conference with counsel, and that because no reasonable compromise appeared possible, Court intervention is the only alternative available.

Mr. Rowland could have answered these straightforward factual questions in a matter of minutes at his deposition; as is clear from his Opposition, the requested information is not covered by any privilege and instead Mr. Rowland attempts to unilaterally set the scope of fact discovery in this case. As the Court ordered during deposition, "Mr. Rowland is ordered to answer questions about the identities of the companies for which he has done consulting work since leaving the EPA and questions eliciting a very general description of the projects he has worked on." (PTO 19, ECF No. 260). Mr. Rowland identified only the names of the companies (and one only by its technical corporate registration name, not its much more well-known trading name), and as to the description of projects, stated only that it was work "on a chemical" that was "not glyphosate."

Monsanto's chief defense in this litigation has been the blessing of the EPA's approval of glyphosate. The Court has ordered that discovery be permitted into the EPA and IARC, ordering as recently as April 18, 2017 that Monsanto be permitted to question Drs. Jameson and Ross about the IARC process and conclusions (PTO 16, ECF No. 242). Thus, the relevancy of Mr. Rowland's ties to the EPA, Monsanto and the chemical industry as a whole, is information essential to Plaintiffs' ability to prepare their case.

The answers to the proposed additional questions are not privileged, and fall well within

the scope of the Court's Orders and FRCP 26. Indeed, with dozens of Plaintiffs in this Court alone suffering from lymphoma after Roundup® use, and many hundreds more nationwide, the answers to these questions, such as when Mr. Rowland began to work for these companies, how much he has been paid, and how he came into the work, are plainly relevant to any party's claim or defense and proportional to the needs of the case. Considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, the Court should order the requested evidence . FRCP 26(b)(1).

Company 1[1] is a close associate of Monsanto and serves on Monsanto's chief industry group, CropLife America's "Human Health Risk Assessment Committee," which is Monsanto's answer to IARC. HARC has contacted Mr. Rowland's direct superior at EPA, Jack Housenger, multiple times in recent years on behalf of these companies, including with respect to glyphosate's human health risks. Company 1 has served in a leading role on the "**Joint Glyphosate Task Force,"** a group created at Monsanto's headquarters, since its inception in 2010. Company 1 also serves in a leading role on the **"Joint Surfactant Task Force,"** another Monsanto alter-ego created to influence government and science with respect to the synergistic effect of surfactants and glyphosate on cancer in humans. Company 1 has performed metabolic studies on glyphosate for Monsanto, as well as field studies for Monsanto on glyphosate

---

[1] Plaintiffs are mindful of the Court's direction as to filing under seal and redaction, and redacted deposition quotes quite conservatively in the Motion, revealing no confidential or sensitive information to the public (though Plaintiffs disagree this should remain sealed). In an effort to prevent further complication of the docket, for this Reply, Plaintiffs will refrain from filing this brief under seal and instead refer to Mr. Rowland's consulting jobs after leaving the EPA as Companies 1, 2 and 3.

residue. Mr. Rowland departed EPA on May 20, 2016, and only after being compelled by the Court did Mr. Rowland identify his subsequent employment with Monsanto's close ally. Mr. Rowland refused to testify regarding when he was contacted by Company 1, how he was contacted by Company 1, when he began work for Company 1, or how much compensation he is receiving from Company 1.

Company 2 serves on the HARC committee as well, and owns the patent or license to a pesticide sold to it by Monsanto. Company 2 is a standing member of CropLife's committee regarding "EPA Risk Assessment and Bystander Exposure." Company 2 also serves on the Agricultural Handler Exposure Task Force, LLC (AHETF) with Monsanto. Indeed, Companies 1 and 2, as members of the AHETF, *met with Mr. Rowland in his official position at EPA* in October 2014, attempting to convince EPA that agricultural exposure to pesticides was unrelated to any health risks. Once again, only after being compelled by the Court, did Mr. Rowland identify his subsequent employment with Monsanto's close ally, Company 2. In addition, Mr. Rowland refused to testify regarding when he was contacted by Company 2, how he was contacted by Company 2, when he began work for Company 2, or how much compensation he is receiving from Company 2.

Company 3 has no website and little information is available about the entity. However, it, too, has worked for Monsanto on risk assessment of glyphosate-related products in recent years for submission to EPA.

Even viewing the above facts and testimony in the most positive light to Mr. Rowland, he made knowing misrepresentations about his work before the Court intervened at deposition. And now he has expended much of the parties' (and his own) time and resources in attempting to hide further information that could have been disclosed in mere minutes during his deposition.

In light of the coupling of the timing of Mr. Rowland's Monsanto friendly consulting jobs immediately following the leaking of the CARC report he authored and his retirement in May 2016. It would be an unlikely coincidence if he came into this work, for members of the Joint Glyphosate Task Force, Joint Surfactant Task Force, and Agricultural Handlers Exposure Task Force, without the hand of Monsanto. The fact that Monsanto clearly acknowledged that Mr. Rowland could be "very useful" to glyphosate defense after his retirement, dictates that he should be directed to answer additional simple, factual questions regarding how he obtained those positions.

Should the "CARC Report" or any EPA action be allowed into trial as evidence for Monsanto's defense, these simple facts that Mr. Rowland is attempting to hide will be germane and central to his bias and motive. Mr. Rowland should be required to sit for deposition to answer these basic questions.

Dated: May 10, 2017

Respectfully Submitted,

*/s/ Michael Miller*
Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055

*/s/ Aimee Wagstaff*
Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360
Facsimile: (303) 376-6361

*/s/ Robin Greenwald*
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway

New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

*Co-Lead Plaintiffs' Counsel
For MDL 2741*

**ECF CERTIFICATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to the document.

DATED: May 10, 2017

*/s/ Michael Miller*

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed with the Court and electronically served through the CM-ECF system which will send a notification of such filing to all counsel of record. .

DATED: May 10, 2017

*/s/ Michael Miller*

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055