# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:
Dkt. Nos. 2002, 2267, 2443, 2445, 2599,
2627, 2738, 2814, 2816, 2826, 2829, 2832
_____/

MDL No. 2672 CRB  (JSC)

**ORDER GRANTING STATES'
MOTIONS TO REMAND**

Currently before the Court are 12 motions to remand, respectively filed by the State

Attorneys General of Alabama, Illinois, Maryland, Minnesota, Missouri, Montana, New

Hampshire, New Mexico, Ohio, Oklahoma, Tennessee, and Vermont (the "States").  Each State

filed a complaint in state court, alleging that Volkswagen violated state law by using a defeat

device in certain model TDI diesel engine vehicles.  Volkswagen removed the cases, asserting

federal question subject-matter jurisdiction under 28 U.S.C. § 1331.

As the removing party, Volkswagen bears the burden of demonstrating that this Court has

jurisdiction over the States' cases.  Volkswagen contends that the States' complaints support

"arising under" jurisdiction under § 1331 because: (1) at least some of the statutes reference EPA

regulations; (2) all of the States' factual allegations rely on Volkswagen's use of a "defeat device,"

a term defined only in EPA regulations; and (3) many of the States' claims conflict with the Clean

Air Act's division of enforcement authority between states and the federal government.

Ultimately, none of these grounds supports "arising under" jurisdiction.  While some of the

state statutes at issue do reference EPA regulations, and the States' factual allegations do rely on

Volkswagen's use of a defeat device, the mere presence of these federal components—which are

not disputed and in most instances are not elements of the States' claims—is insufficient to

support "arising under" jurisdiction.  Further, irrespective of the merit of Volkswagen's argument that the States' claims conflict with the Clean Air Act, this argument is a preemption defense, which does not give rise to federal subject-matter jurisdiction.  For these reasons, the Court GRANTS the States' motions to remand.

## BACKGROUND

### I.    Factual Background

Between 2009 and 2015, Volkswagen sold nearly 600,000 Volkswagen-, Audi-, and Porsche-branded TDI "clean diesel" vehicles in the United States, which it marketed as being environmentally friendly, fuel efficient, and high performing.  Unbeknownst to consumers and regulatory authorities, Volkswagen installed a software defeat device in these cars that allows the vehicles to evade United States Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") emissions test procedures.  The defeat device senses whether the vehicle is undergoing emissions testing or being operated on the road.  During emissions testing, the defeat device produces regulation-compliant results.  When the vehicle is on the road, the defeat device reduces the effectiveness of the vehicles' emissions control systems.  Only by installing the defeat device in its vehicles was Volkswagen able to obtain Certificates of Conformity from EPA and Executive Orders from CARB for its 2.0- and 3.0-liter TDI diesel engine vehicles; in fact, these vehicles release nitrogen oxides (NOx) at a factor of up to 40 times permitted limits.

### II.    Procedural Background

The public learned of Volkswagen's deliberate use of a defeat device in the fall of 2015.  Litigation quickly ensued, and many of those actions were consolidated and assigned to this Court as a multidistrict litigation ("MDL").  Among the lawsuits assigned to this Court were 17 cases filed by State Attorneys General, asserting violations of state law and naming as defendants Volkswagen AG; Volkswagen Group of America, Inc.; Audi AG; Porsche AG; and Porsche Cars of North America, Inc., and in some cases also Audi of America LLC; Volkswagen Group of America Chattanooga Operations, LLC; and Martin Winterkorn, former CEO of Volkswagen AG (collectively, "Volkswagen" or "Defendants").  Sixteen of the State cases were originally filed in

United States District Court
Northern District of California

state court and later removed by Volkswagen. The seventeenth was filed by the Wyoming Attorney General in the United States District Court, District of Wyoming, and later transferred to this Court. (*See* Case No. 3:16-cv-06646-CRB.)

After Volkswagen removed 16 of the State cases, Attorneys General of some of those States filed motions to remand. On July 7, 2016, however, this Court stayed all remand motions until after the fairness hearing regarding the 2.0-liter class action settlement. (*See* Pretrial Order No. 22, Dkt. No. 1643.) On January 5, 2017, the Court lifted the stay and set January 31, 2017 as the deadline for all opening briefs. (Dkt. No. 2640.) On or before January 31, the Attorneys General of the 16 States that originally filed complaints in state court filed or joined briefs in support of their motions to remand. Four of the States (Maine, Massachusetts, New York, and Pennsylvania) subsequently entered into a settlement with Volkswagen that resolved their claims, leaving the Court with 12 outstanding remand motions.[1] (Dkt. No. 3126.)

The States can be divided into two groups. The first includes States that have not adopted CARB emissions standards. These States refer to themselves as "Non-177 States"—signifying that they have chosen not to follow CARB standards in lieu of EPA standards, as permitted by Section 177 of the Clean Air Act. (*See* Dkt. No. 2834.) The Non-177 States are Alabama, Illinois, Minnesota, Missouri, Montana, New Hampshire, Ohio, Oklahoma, and Tennessee. The second group of States includes those that have adopted CARB standards (the "177 States"). (Dkt. No. 2832.) Maryland and Vermont are the only pure 177 States, while New Mexico is a hybrid 177 State—having adopted CARB emissions standards, but only during a limited time period statewide, and during a more extensive time period in Bernalillo County. (Dkt. No. 2829.)

| Category | States |
|---|---|
| Non-177 States | Alabama, Illinois, Minnesota, Missouri, Montana, New Hampshire, Ohio, Oklahoma, Tennessee |
| 177 States | Maryland, New Mexico (hybrid), Vermont |

---

[1] Vermont is also a party to the settlement agreement. The agreement, however, resolved only environmental claims, and Vermont continues to bring consumer-protection claims against Volkswagen. (*See* Dkt. No. 3114 at 2-3.)

United States District Court
Northern District of California

3

### III.   Claims Background

#### A.   Exclusively Non-177 State Claims

The Non-177 States' claims can be divided into four categories: (1) anti-tampering; (2) inspection and maintenance (I&M); (3) environmental; and (4) consumer-protection claims.

##### 1.   Anti-Tampering Claims

Seven of nine Non-177 States bring claims against Volkswagen under state statutes that prohibit tampering with vehicle emission control systems. As an example, Alabama law provides that:

> No person shall cause, suffer, allow, or permit the removal, disconnection, and/or disabling of . . . [an] exhaust emission control system . . . which has been installed on a motor vehicle.

ADEM Admin. Code R. 335-3-9-.06. In its complaint, Alabama asserts that Volkswagen violated this provision by installing a defeat device in its vehicles, which caused each vehicle's exhaust emission control systems—*e.g.*, its diesel particulate filters—to be disconnected or disabled "each and every time the subject vehicle was operating outside of dyno testing conditions." (Dkt. No. 2834-2 at 15, 28.)

The other Non-177 States' anti-tampering statutes are materially the same as Alabama's, although some also rely in part on federal motor vehicle standards. For example, Illinois law provides that:

> Except as permitted or authorized by law, no person shall . . . remove, dismantle or otherwise cause to be inoperative any equipment or feature constituting an operational element of the air pollution control systems or mechanisms of a motor vehicle *as required by rules or regulations of the Board and the United States Environmental Protection Agency* to be maintained in or on the vehicle.

35 Ill. Adm. Code § 240.102 (emphasis added). In its complaint, Illinois contends that, by installing a defeat device in its vehicles, Volkswagen rendered inoperative air pollution control systems that were required to be maintained in order for its vehicles to comply with the EPA's Tier 2 and Tier 3 NOx emissions standards. (Dkt. No. 2834-2 at 153.)

##### 2.   Tennessee's Inspection and Maintenance Claim

In addition to an anti-tampering claim, Tennessee brings a claim against Volkswagen

under its I&M laws.[2]  Generally, I&M laws require vehicles to undergo periodic emissions testing to ensure they are being properly maintained.  In this case, Tennessee contends that Volkswagen violated an I&M provision that prohibits any person from "knowingly . . . [f]alsif[ying], tamper[ing] with, or render[ing] inaccurate any monitoring device or method required to be maintained or followed[.]"  Tenn. Code Ann. § 68-201-112(a)(3).  Tennessee alleges that Volkswagen violated this provision by using a defeat device in its vehicles, which falsified, tampered with, or rendered inaccurate each vehicle's "on-board diagnostics system[s']" assessment of true emissions performance during annual I&M testing.  (Dkt. No. 2834-2 at 68, 73-74.)

### 3.  Missouri's Environmental Claims

Missouri filed two claims against Volkswagen under its environmental protection laws.[3]  The first is for violation of a Missouri regulation providing that:

> No person shall cause or permit the installation or use of any device or any means which, without resulting in reduction in the total amount of air contaminant emitted, conceal or dilute an emission or air contaminant which violates a rule of the Missouri Air Conservation Commission.

10 CSR § 10-6.150.  In its complaint, Missouri asserts that Volkswagen violated this regulation by installing a device in its vehicles that concealed NOx emission levels greater than those permitted by the Missouri Air Conservation Commission.  (Dkt. No. 2834-2 at 115.)  Missouri's NOx standards mirror the EPA's NAAQS standards.  (*See generally id.* at 86-95.)

Missouri's second claim is for unlawful emission of an air contaminant.  The relevant statute provides that:

> It is unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source located in Missouri, in violation of sections 643.010 to 643.190, or any rule promulgated by the commission.

---

[2] Volkswagen contends that Missouri also filed an I&M claim.  While Missouri does discuss its I&M program in the background section of its complaint, neither of its two causes of action are actually for violations of that program.  (*See* Dkt. No. 2834-2 at 115-16.)

[3] Volkswagen contends that Ohio also filed claims against it under state environmental laws. (Dkt. No. 2988 at 20.)  While Ohio does bring claims under its Air Pollution Control Statute, the claims are anti-tampering not environmental claims.  (*See* Dkt. No. 2834-2 at 140-44.)

5

United States District Court
Northern District of California

United States District Court
Northern District of California

Mo. Rev. Stat. § 643.151. Missouri asserts that Volkswagen violated this provision by installing a defeat device in its vehicles, which concealed emissions during vehicle inspections, but "caused or permitted an elevation in the level of NOx, a regulated air contaminant, that discharged from the [vehicles] during normal on-road operation." (Dkt. No. 2834-2 at 116.)

### B.        Exclusively 177 State Claims

#### 1.        CARB Emissions Standards Claims

Maryland and New Mexico bring claims against Volkswagen for violation of CARB emissions standards. They allege that Volkswagen violated CARB standards by delivering to, and offering for sale in their respective states, vehicles equipped with a defeat device, which rendered invalid the vehicles' CARB certifications and caused the vehicles to emit excess emissions. (Dkt. No. 3116-3 at 50-55 (N.M. Compl.); Dkt. No. 2858 at 84-91 (Md. Compl.).)

New Mexico, as noted above, is a hybrid 177 State and consequently bases its CARB emissions claims on only a subset of the TDI diesel vehicles Volkswagen sold in the State. In 2007, New Mexico adopted CARB standards statewide to be applied to vehicle model year 2011 and later. But in 2010, New Mexico repealed the statewide CARB standards, effective January 31, 2011. *See* N.M. Admin. Code § 20.2.88.101 (adopting California standards statewide starting with model year 2011); *id.* § 20.2.88.14 (waiving "all requirements of this part" through January 1, 2016); N.M. Register, Vol. XXIV, No. 23 (Dec. 13, 2013) (repealing Statewide Emissions Standards). In 2008, however, the State's Environmental Improvement Board separately adopted CARB standards for vehicles sold in Bernallilo County (which includes the city of Albuquerque), starting with model year 2011. CARB standards remain in effect Bernalillo County. (*See* Dkt. No. 3116-3 at 52.)

### C.        Consumer Protection Act Claims

New Mexico (Hybrid 177 State), Oklahoma (Non-177 State), and Vermont (177 State) also bring consumer-protection claims against Volkswagen. In their complaints, they allege that Volkswagen advertised and marketed its TDI diesel engine vehicles as "clean diesels" and as environmentally friendly, when in fact Volkswagen knew—because of its use of a defeat device— that its vehicles emitted NOx at rates well above applicable emissions standards. (*See* Dkt. No.

2816-3 at 37-39 (Okla. Compl.); Dkt. No. 3116-3 at 62-66 (N.M. Compl.); Dkt. No. 2832-5 at 83-85 (Vt. Compl.).)  Volkswagen's actions, the States assert, were unfair and deceptive, and violated various enumerated provisions of their respective consumer protection acts.  (*See* Dkt. No. 2816-3 at 37 (citing 15 Okla. Stat. § 753(5), (7), (8) & (20)); Dkt. No. 3116-3 at 62-66 (citing N.M. Stat. § 57-12-2); Dkt. No. 2832-5 at 83-84 (citing V.S.A. § 2453(a)).)

**D.    Common Law Nuisance Claim**

New Mexico also brings a common law nuisance claim.  It alleges that, by selling vehicles that emitted NOx in excess of allowed limits, Volkswagen "unreasonably interfere[d] with the public's common right to clean air, and clean water, and thus [committed a] common law public nuisance."  (Dkt. No. 3116-3 at 67.)

**E.    Remedies**

All of the States (Non-177 and 177) seek monetary penalties from Volkswagen for violation of their state laws.  The amount of penalties sought varies by state, but as examples, Alabama and Ohio each seek penalties of up to $25,000 for each day of each violation of their anti-tampering laws.  (Dkt. No. 2834-2 at 28 (Ala. Compl.), *id.* at 145 (Ohio Compl.).)  Oklahoma seeks penalties of up to $10,000 per violation of its consumer protection act.  (Dkt. No. 2816-3 at 40.)  And New Mexico seeks $15,000 in penalties for each violation of its incorporated CARB emissions standards.  (Dkt. No. 3116-3 at 62.)

A number of the States also seek injunctive relief.  For example, Maryland seeks to enjoin Volkswagen from selling into the state any new vehicle equipped with a defeat device or not eligible for sale pursuant to Maryland's emissions and environmental standards (which mirror CARB standards).  (Dkt. No. 2858 at 90.)  Illinois and Montana seek to enjoin future violations of their anti-tampering laws.  (Dkt. No. 2834-2 at 154 (Ill. Compl.); *id.* at 197 (Mont. Compl.).)  Oklahoma and Vermont seek to enjoin Volkswagen from engaging in the conduct they allege violates their respective consumer protection acts, including the use of a defeat device to mislead consumers with respect to environmental benefits, and (in the case of Vermont) delivering or offering vehicles for sale that are not covered by a CARB Executive Order.  (Dkt. No. 2816-3 at 39 (Okla. Compl.); Dkt. No. 2832-5 at 86-87 (Vt. Compl.).)  And other States seek equitable relief

United States District Court
Northern District of California

as deemed appropriate by the Court.  (*See, e.g.*, Dkt. No. 2834-2 at 29 (Ala. Compl.); Dkt. No. 2834-2 at 53(N.H. Compl.).)

| Claims | States | 177/Non-177 |
|---|---|---|
| Anti-Tampering | Alabama, Illinois, Minnesota, Montana, New Hampshire, Ohio, Tennessee | Non-177 States |
| Inspection and Maintenance (I&M) | Tennessee | Non-177 State |
| Environmental | Missouri | Non-177 State |
| CARB Emissions | Maryland, New Mexico | 177 and Hybrid 177 State |
| Consumer Protection Act | New Mexico, Oklahoma, Vermont | 177, Hybrid 177, and Non-177 State |
| Common Law Nuisance | New Mexico | Hybrid 177 State |

## LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  And once removed, the defendant "has the burden to establish that removal is proper." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).

A party may file an action originally in federal court if the diversity requirements are established, or if the claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  For statutory purposes, a case can "aris[e] under" federal law in two ways. First, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013).  Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

This latter form of "arising under" jurisdiction recognizes that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal interests." *Grable*, 545 U.S. at 312.  In *Grable*, for example, the plaintiff filed a state action to quiet title to

real property, which he asserted had been seized and sold by the IRS without proper notice. *Id.* at 310-11. In affirming the lower court determinations that removal was proper, the Supreme Court reasoned that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315. The Court also reasoned that whether the plaintiff received adequate notice under the tax code was "an essential element of [his] quiet title claim;" indeed, "it appear[ed] to be the only . . . issue contested in the case." *Id.*

The Supreme Court has since noted that *Grable* and cases like it are exceptional, as only a "special and small category" of state-law claims give rise to federal-question jurisdiction. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). In other words, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). In determining which state-law claims trigger federal-question jurisdiction, courts must bring a "'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process that picks the substantial causes out of the web and lays the other ones aside.'" *Grable*, 545 U.S. at 313 (alteration in original) (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117-18 (1936)).

Whatever difficulty may be involved in determining whether a state-law claim gives rise to federal jurisdiction, it is clear that "arising under" jurisdiction cannot be established "on the basis of a federal defense, including the defense of pre-emption." *Caterpillar*, 482 U.S. at 393. This is so "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* Only in the rare instance in which an area of state law has been completely preempted by a federal statute does preemption provide a key to federal court. In such circumstances, the court is "obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014).

## DISCUSSION

Volkswagen argues that federal-question jurisdiction exists because the States' "state-law claims . . . implicate significant federal issues." *Grable*, 545 U.S. at 312. The claims do not, or to

United States District Court
Northern District of California

the extent they do, the federal issues Volkswagen identifies are federal defenses that do not give

rise to federal-question jurisdiction.

**I.      Applying *Grable* to the States' Claims**

       **A.      The Exclusively Non-177 State Claims**

            **1.      Anti-Tampering Claims**

Volkswagen contends that the States' anti-tampering claims raise three federal issues.

Specifically, that the court hearing these claims will need to: (1) interpret the term "defeat device,"

which is defined only by federal law; (2) interpret EPA emissions regulations, which are

incorporated into some of the States' anti-tampering statutes; and (3) determine whether the claims

are permitted under the Clean Air Act.  None of these alleged federal issues supports federal-

question jurisdiction.

          **a)      *Interpreting the term "defeat device"***

Volkswagen is correct that "defeat device" is defined only in federal regulations.  *See* 40

C.F.R. § 86.1803-01.  But its focus on this term misconstrues the anti-tampering claims.  A

"defeat device" is not an element under any of the States' anti-tampering statutes.  The Alabama

law, for example, provides only that:

> No person shall cause, suffer, allow, or permit the removal, disconnection, and/or
> disabling of . . . [an] exhaust emission control system . . . which has been installed
> on a motor vehicle.

ADEM Admin. Code R. 335-3-9-.06.  (Dkt. No. 2834-2 at 29.)

Absent is a requirement that the "removal, disconnection, and/or disabling" of an emission

control system be performed by a "defeat device."  Rather, the act triggering liability could, for

example, be performed by someone using their hands to physically disconnect a vehicle's

emission control system.  *See United States v. Econ. Muffler & Tire Ctr., Inc.*, 762 F. Supp. 1242,

1244 (E.D. Va. 1991) (anti-tampering violation where repair shop replaced factory-installed three-

way catalytic converters with two-way catalytic converters).  Thus, even though the States' claims

are based on factual allegations that Volkswagen used a defeat device in its vehicles, to prevail the

States do not need to prove that the defeat device qualifies as a "defeat device" under the Clean

Air Act.  Instead, the States simply need to demonstrate that Volkswagen installed a device,

1  whether or not a "defeat device" under federal law, and that the device had the effect of removing,

2  disconnecting, or disability an emission control system.  Volkswagen's "defeat device" argument

3  therefore fails under the first *Grable* prong, as it does not "necessarily raise a stated federal issue."

4  545 U.S. at 314.

### b)  *Interpreting EPA emissions regulations*

6  Volkswagen contends that a court would also need to interpret EPA emissions regulations

7  to resolve the States' anti-tampering claims.  As noted above, some of the States' anti-tampering

8  statutes do incorporate EPA regulations.  For example, Illinois law requires the tampering to affect

9  an air pollution control system installed on a motor vehicle "as required by rules or regulations of

10  the . . . United States Environmental Protection Agency."  35 Ill. Adm. Code § 240.102.  But this

11  argument fails under *Grable*'s second and third prongs—the issue identified is not actually

12  disputed or substantial.  545 U.S. at 314.

13  Within the context of *Grable*, a federal issue is disputed if it is "the primary focus of the

14  Complaint," not "merely . . . a peripheral issue."  *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d

15  842, 853 (D. Haw. 2006); *see also Grable*, 545 U.S. at 315 (the federal issue "appear[ed] to be the

16  only legal or factual issue contested in the case"); *Gunn*, 133 S. Ct. at 1065 (the federal issue was

17  "the central point of dispute"); *R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt.*, 585

18  F.3d 42, 51 (1st Cir. 2009) (the federal issue was "hotly contested").  Here, Volkswagen has not

19  identified *any* actual dispute, much less one of primary importance, with respect to whether its

20  defeat device interfered with emissions control systems installed on a motor vehicle "as required

21  by the rules or regulations of the . . . [EPA]."  35 Ill. Adm. Code § 240.102.

22  Relatedly, the "substantiality inquiry looks to the importance of the issue to the federal

23  system as a whole."  *Gunn*, 133 S. Ct. at 1066.  A federal issue may be substantial, for example,

24  where: (1) the "state adjudication would undermine the development of a uniform body of

25  [federal] law," *id.* at 1067; or, (2) where the case presents "a nearly pure issue of law . . . that

26  could be settled once and for all and thereafter govern numerous [federal] cases," as opposed to "a

27  fact-bound and situation-specific" one.  *Empire*, 547 U.S. at 700-01 (internal quotation marks

28  omitted).  Determining whether Volkswagen's air pollution control systems were installed "as

United States District Court
Northern District of California

required by rules or regulations of the . . . [EPA]" would be "fact-bound and situation-specific," *id.* at 701, as it would involve comparing the particular control systems at issue to the relevant EPA regulations. As a result, it is difficult to see how such an inquiry could "settle[] once and for all" a "nearly pure issue of law." *Id.* at 700.

The district court in *Lougy v. Volkswagen Group of America, Inc.*, No. 16-cv-1670, 2016 WL 3067686 (D.N.J. May 19, 2016), came to a similar conclusion in determining that a claim by New Jersey under the State's Air Pollution Control Act (based on Volkswagen's use of a defeat device) did not support "arising under" jurisdiction.[4] There, the court reasoned that "even assuming that a violation of a federal regulation were a necessary element of [New Jersey's] NJAPCA claim as [Volkswagen] argue[s], if the question is only whether [Volkswagen] abided by the regulation and *interpretation* of the federal regulation is not in dispute, there is no *Grable* jurisdiction." 2016 WL 3067686, at *3 (emphasis in original) (internal quotation marks omitted). The same holds true here. Volkswagen has not identified any issue, much less a substantial one, requiring interpretation of EPA regulations.[5]

### c) *Determining whether the anti-tampering claims are permitted under the Clean Air Act*

Volkswagen finally argues that the States' anti-tampering claims give rise to federal-question jurisdiction because a court will need to resolve whether these claims are permitted under the Clean Air Act.

As background, Section 209 of the Clean Air Act prohibits states—except those that adopt California's CARB standards—from adopting or attempting to enforce "any standard relating to

---

[4] Because the New Jersey district court remanded the State's case, it was not transferred to this Court as part of the MDL.

[5] The Non-177 States argue that, because the federal issues Volkswagen identifies would be fact-bound and situation-specific, the Court does not need to even apply *Grable*, which they contend is a test to be applied only when there is a pure issue of law. (Dkt. No. 2834 at 18-19.) This goes too far. That a fact-bound and situation-specific federal issue may not be substantial enough to support *Grable* jurisdiction does not mean that the Court should not even conduct the *Grable* analysis. *Empire*, the case the Non-177 States cite for this point, does not hold as much. Rather, the Court there reasoned only that, because a federal issue was fact-bound and situation-specific, it was distinguishable from the federal issue in *Grable*. *See Empire*, 547 U.S. at 699-701.

United States District Court
Northern District of California

United States District Court
Northern District of California

the control of emissions from **new motor vehicles**." 42 U.S.C. § 7543(a) (emphasis added); *see also id.* § 7507 (setting forth the California exception). Section 209 "was intended to have a broad preemptive effect" and to foreclose state-law claims "relating to" emissions by new vehicles. *In re Office of Attorney Gen. of State of N.Y.*, 269 A.2d 1, 8-10 (N.Y. App. Div. 2000). The Clean Air Act also specifies, however, that states are not denied "the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles." 42 U.S.C. § 7543(d). In other words, the federal government generally regulates "new" motor vehicles, while the states regulate "in-use" motor vehicles. *See, e.g.*, *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1463 n.8 (11th Cir. 1989) ("[S]ection 7543(d) of the Clean Air Act further indicates Congress's intent to exclusively enforce federal emission standards relating to new automobiles before their initial sale because the statute specifically allows the state to regulate automobile use and operation subsequent to the initial sale.").

Relying on the Clean Air Act's division of enforcement power, Volkswagen argues that the States' anti-tampering claims, as applied, are an attempt to regulate new motor vehicles. Specifically, Volkswagen contends that the act that gave rise to the States' anti-tampering claims was Volkswagen installing a defeat device in its new vehicles—which occurred before those vehicles left the manufacturer. Because states are permitted to impose only "in-use" regulations on motor vehicles, Volkswagen contends that the court hearing these claims will need to determine "whether the CAA allows an 'in-use' claim to be predicated on a 'defeat device' installed at the time of manufacture." (VW Op., Dkt. No. 2988 at 19-20.)

The Non-177 States disagree with Volkswagen's interpretation of their anti-tampering claims. They contend that the act that ultimately gave rise to their claims was not the installation of the defeat device, but rather the operation of the defeat device while the vehicles were in use. That is, each and every time the vehicles at issue operated outside of a testing environment, the defeat device disconnected or disabled the vehicles' emission control systems, which constituted tampering. (*See* Non-177 States' Reply, Dkt. No. 3113 ("This 'tampering' occurs when the defeat device switches off the emissions control system during normal driving conditions—*i.e.* while a registered vehicle is in use.").)

Putting aside the merits of the States' and Volkswagen's arguments, it is clear that Volkswagen's argument is a federal defense. Volkswagen is essentially arguing that Section 7543 of the Clean Air Act preempts the States' anti-tampering claims. However, "[t]he well-pleaded complaint rule means that 'a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption.'" *Retail Prop. Trust*, 768 F.3d at 947 (emphasis in original) (quoting *Caterpillar*, 482 U.S. at 393). And while the doctrine of complete preemption provides an exception to this rule, *see id.*, Volkswagen does not argue that the Clean Air Act completely preempts the States' claims.

The New Jersey district court in *Lougy*, 2016 WL 3067686, rejected a similar argument made by Volkswagen in support of removal of New Jersey's anti-tampering and emissions-based claims. Volkswagen argued there that, "by seeking to bring claims predicated on [its] alleged installation of defeat devices causing the subject vehicles to circumvent new-car emissions regulations—conduct the CAA directly prohibits—Plaintiffs' action necessarily requires resolution of the predicate federal question whether this kind of suit has been authorized by Congress and the EPA to be enforced by New Jersey, rather than the EPA." *Id.* at *2. In rejecting this argument, the district court held that, even assuming Volkswagen's argument had merit, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id.* at 3 (emphasis in original).

The Court agrees with the reasoning in *Lougy*. Volkswagen's argument that the States' anti-tampering claims are barred by the Clean Air Act is a preemption defense and does not give rise to federal-question jurisdiction.

### 2. Tennessee's Inspection and Maintenance Claim

Volkswagen's arguments for why Tennessee's I&M claim gives rise to federal-question jurisdiction are the same as those it puts forward for the anti-tampering claims. It contends that (1) because Tennessee's I&M claim is based on Volkswagen's use of a "defeat device," the claim implicates federal law; and (2) a court will need to decide if the I&M statute, as applied, is an "in-use" or a "new" vehicle regulation under the Clean Air Act.

As with the anti-tampering claims, the use of a "defeat device" is not an element of

14

United States District Court
Northern District of California

1  Tennessee's I&M statute, which prohibits any person from "knowingly . . . [f]alsif[ying],

2  tamper[ing] with, or render[ing] inaccurate any monitoring device or method required to be

3  maintained or followed[.]"  Tenn. Code Ann. § 68-201-112(a)(3).  (Dkt. No. 2834-2 at 73.)

4  Although Tennessee alleges that Volkswagen tampered with its vehicles' on-board diagnostics

5  systems by using a defeat device, the State will not need to prove that the device Volkswagen used

6  was in fact a "defeat device" as that term is defined by federal regulations.  Rather, the State needs

7  to demonstrate only that, by installing a device in its vehicles—whether qualifying as an EPA

8  defined "defeat device" or not—Volkswagen tampered with a vehicle monitoring device or

9  method required to be maintained.

10  Further, whether Tennessee's I&M claim, as applied, is preempted by Section 209 of the

11  Clean Air Act, as a "new" vehicle regulation, is a federal defense that does not give rise to federal-

12  question jurisdiction.  *Retail Prop. Trust*, 768 F.3d at 947.  Tennessee's I&M claim therefore does

13  not "raise a stated federal issue," much less one that is actually in dispute.  *Grable*, 545 U.S. at

14  314.

15  **3.      Missouri's Environmental Claims**

16  Missouri's claims are different from the other Non-177 States' anti-tampering claims, in

17  that Missouri's claims target emissions of certain contaminants, rather than tampering with

18  emission control systems.  In its first claim, Missouri argues that Volkswagen violated a state

19  regulation by installing a defeat device in its vehicles, which concealed that the vehicles were

20  emitting NOx at levels above those permitted by the Missouri Air Conservation Commission.

21  (Dkt. No. 2834-2 at 115 (citing 10 CSR § 10-6.150).)  And in its second claim, Missouri similarly

22  asserts that Volkswagen violated a state statute by installing a device designed to conceal or dilute

23  emissions during vehicle inspections, which "caused or permitted an elevation in the level of NOx,

24  a regulated air contaminant, that discharged from the [vehicles] during normal on-road operation."

25  (Dkt. No. 2834-2 at 116 (citing Mo. Rev. Stat. § 643.151).)

26  Missouri's NOx standards mirror the EPA's NAAQS standards, (s*ee* Mo. Compl., Dkt. No.

27  2834-2 at 86-95), and the Clean Air Act permits states to create "enforceable emissions limitations

28  and other control measures . . . as may be necessary or appropriate" to meet the NAAQS

standards.  42 U.S.C. § 7410(a)(2)(A)-(B).  What Volkswagen challenges is not the standards

generally, but their alleged application to "new" motor vehicles in violation of Section 7543's

preemption provision.  *See id.* § 7543(a) ("No State . . . shall adopt *or attempt to enforce* any

standard relating to the control of emissions from *new motor vehicles* . . . ." (emphasis added)).  In

other words, the federal issue identified by Volkswagen with respect to Missouri's claims is

materially the same as the one discussed above.  It is a federal defense, because the adjudication of

Missouri's claims will only *require* answering the preemption question *if* Volkswagen raises it as

a defense.  As a federal defense, Volkswagen's argument does not support "arising under"

jurisdiction.  *Caterpillar*, 482 U.S. at 393.

     *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996), a case cited by Volkswagen,

does not lead to a different conclusion.  There, a manufacturer brought a claim in federal court

against an electric utility company, asserting that under the parties' agreement the manufacturer

was a "participating owner" of the utility company's pollution-emitting units under Section 408(i)

of the Clean Air Act.  *Id.* at 803.  Because the court needed to "interpret both the Act and the

contract" to decide whether the manufacturer was an owner as defined in the Act, it concluded that

"arising under" jurisdiction existed.  *Id.* at 807.  To resolve Missouri's environmental claims here,

however, a court does not need to interpret federal law unless Volkswagen raises preemption as a

defense.

### B.    Exclusively 177 State Claims

#### 1.    CARB Emissions Standards Claims

     Only Maryland and New Mexico bring claims against Volkswagen for violation of CARB

emissions standards.  And Volkswagen does not argue that Maryland's CARB-based claims raise

federal issues.  Unlike Non-177 States, the Clean Air Act permits states that have adopted

California's standards to adopt and enforce their own "new motor vehicle" emission standards, so

long as those standards are "identical to the California standards."  42 U.S.C. § 7507.  As a result,

Volkswagen's "in use" versus "new vehicle" preemption defense would not apply to Maryland's

United States District Court
Northern District of California

claims.[6]

Volkswagen does, however, challenge New Mexico's CARB-based claims. The basis for its challenge stems from the fact that New Mexico did not adopt CARB standards uniformly, statewide, for all of the vehicles at issue. Volkswagen contends that New Mexico's partial adoption of CARB standards raises, as a federal issue, whether the Clean Air Act permits a subdivision of a state (like Bernalillo County) to adopt CARB's new-vehicle standards, while the State applies EPA standards everywhere else. (Dkt. No. 2987 at 15.)

Volkswagen's argument is essentially that New Mexico's law—adopting CARB standards only in Bernalillo County—is invalid under the Clean Air Act. But this is again a federal defense, and consequently not grounds for removal. *See Caterpillar*, 482 U.S. at 393; *Retail Prop. Trust*, 768 F.3d at 947.

*Fishermen's Alliance*, 585 F.3d 42, a First Circuit case cited by Volkswagen, is distinguishable, because there the plaintiffs' state-law claim had an embedded federal question. The state law provided that "retroactive control dates are prohibited . . . unless expressly required by federal law." *Id.* at 49 (quoting R.I. Gen. Laws § 20-2.1-9). In concluding that a claim under this statute necessarily raised a federal issue, the First Circuit reasoned that "it is not logically possible for the plaintiffs to prevail . . . without affirmatively answering the embedded question of whether federal law . . . 'expressly required' the use of retroactive control dates." *Id.* Here, in contrast, New Mexico's state law provides only that "no motor vehicle manufacturer . . . shall deliver for sale . . . [a] new passenger car . . . unless the vehicle is certified to California standards." (Dkt. No. 3116-3 at 60 (quoting N.M.A.C. § 20.2.88.101.A).) Only if Volkswagen asserts as a defense that New Mexico's law violates the Clean Air Act will a federal question be raised.

### C.      Consumer Protection Act Claims

Volkswagen also contends that New Mexico and Oklahoma's consumer-protection claims raise federal issues supporting "arising under" jurisdiction. As noted above, these States allege

---

[6] Volkswagen does, however, challenge the remedies sought by Maryland, as well as the other States. (*See infra* at 20-22.)

United States District Court
Northern District of California

1   that Volkswagen advertised and marketed its TDI diesel engine vehicles as "clean diesels" and as

2   environmentally friendly, when in fact Volkswagen knew—because of its use of a defeat device—

3   that its vehicles emitted NOx at rates well above applicable emissions standards.  (*See* Dkt. 2816-3

4   at 37-39 (Okla. Compl.); Dkt. No. 3116-3 at 62-66 (N.M. Compl.).)  Volkswagen's actions, the

5   States assert, were unfair and deceptive, and violated their respective consumer protection acts.

6   (*See* Dkt. No. 2816-3 at 37 (citing 15 Okla. Stat. § 753(5), (7), (8) & (20)); Dkt. No. 3116-3 at 62-

7   66 (citing N.M. Stat. § 57-12-2).)

8         Volkswagen contends that these claims depend in part on a finding that its vehicles emitted

9   NOx at rates above applicable emission standards.  And because Oklahoma is a Non-177 State,

10  and New Mexico is a Hybrid-177 State, Volkswagen contends that the "applicable emission

11  standards" for Oklahoma (and for parts of New Mexico) are federal EPA standards.  Thus,

12  Volkswagen argues that a court will need to determine if Volkswagen's conduct did in fact violate

13  EPA standards, which raises a federal question.

14        While Oklahoma and New Mexico's claims refer to "applicable emission standards,"

15  proving that Volkswagen violated these standards is not an element of their consumer-protection

16  claims.  Rather, the States' statutes generally prohibit unfair and deceptive practices, such as

17  knowingly making false representations as to the characteristics or benefits of particular goods.

18  (*See id.*)  And here, the States allege that Volkswagen represented that its diesel cars were "clean

19  diesel," "green," "environmentally-friendly," and "eco-friendly," when in fact Volkswagen knew

20  that its vehicles produced high levels of NOx.  (Dkt. No. 3116-3 at 64 (N.M. Compl.); *see also*

21  Dkt. 2816-3 at 38 (Okla. Compl.).)  That the levels of NOx produced exceeded EPA standards is

22  undoubtedly evidence that Volkswagen's vehicles were not environmentally friendly, but the

23  States would not be required to make that showing to succeed on their claims.  Instead, for

24  example, the States could call an expert witness who could review the vehicles' emissions data,

25  compare that data to that of other vehicles, and opine as to whether Volkswagen's vehicles would

26  reasonably be considered "clean diesel" or "eco-friendly" vehicles.  Whether Volkswagen's

27  representations were unfair or deceptive is the ultimate question, not whether Volkswagen's

28  vehicles violated EPA emissions regulations.

United States District Court
Northern District of California

The district court in *Arizona ex rel. Brnovich v. Volkswagen AG*, 193 F. Supp. 3d 1025 (D. Ariz. 2016), came to the same conclusion in granting Arizona's motion to remand a consumer-protection claim that was based on Volkswagen's use of a defeat device. Arizona alleged that Volkswagen "had engaged in deceptive and unfair business practices by creating and installing defeat devices in its Clean Diesel vehicles," and that "the advertising, marketing, selling, and leasing of vehicles as 'Clean Diesels' violated the [Arizona] Consumer Fraud Act." *Id.* at 1027 (internal quotation marks omitted). In rejecting Volkswagen's argument that Arizona's state-law claim supported *Grable* jurisdiction, the court reasoned that "Arizona could prevail on [its] claim even if it were to drop all mentions of federal law, regulations, and standards from its complaint," because "Arizona might prevail simply by comparing the Clean Diesel vehicles to gasoline powered vehicles and proving . . . Volkswagen's advertisements and statements were misleading." *Id.* at 1029. The same is true here. New Mexico and Oklahoma do not need to prove that Volkswagen's vehicles violated EPA emissions standards to prove that Volkswagen made deceptive representations about the environmental characteristics of its cars. The States' consumer-protection claims therefore do not "necessarily raise" a federal issue. *Grable*, 545 U.S. at 314.

Not only do the States' consumer-protection claims not raise a federal issue, but even if they did, the issue would not be substantial or disputed. *See Gunn*, 133 S. Ct. at 1066; *Empire*, 547 U.S. at 700-01. As with the States' anti-tampering claims, determining whether Volkswagen's vehicles' NOx emissions violated EPA emissions standards would be a "fact-bound and situation-specific" inquiry that would be unlikely to "settle[] once and for all" a "nearly pure issue of law." *Empire*, 547 U.S. at 700; *see also Lougy*, 2016 WL 3067686 at \*3. And similar to the States' anti-tampering claims, Volkswagen has not identified any actual dispute with respect to whether its vehicles violated EPA regulations. Because Oklahoma and New Mexico's consumer-protection claims do not necessarily require resolution of a substantial and disputed federal issue, they do not support "arising under" jurisdiction. *Grable*, 545 U.S. at 315.

**D.    Common Law Nuisance Claim**

Volkswagen's argument for why New Mexico's common law nuisance claim gives rise to

federal-question jurisdiction is the same as the one it makes for New Mexico and Oklahoma's consumer-protection claims: that a court will need to interpret EPA regulations to resolve the claim. This is not so. As with the consumer-protection claims, EPA non-compliant emissions are not an element of New Mexico's nuisance claim. Rather, New Mexico needs to prove only that Volkswagen's emissions (EPA compliant or not) "interfere[d] with the public's common right to clean air, and clean water." (Dkt. No. 3116-3 at 67.) EPA non-compliant emissions may be good evidence of that, but they are not the only possible evidence. The claim therefore does not "necessarily raise a stated federal issue." *Grable*, 545 U.S. at 314.

### E.    Remedies

Finally, Volkswagen argues that "arising under" jurisdiction is independently proper because the monetary penalties and injunctive relief sought by the States (both Section 177 and Non-177) seek to remedy federal violations or conflict with the Clean Air Act's regulatory scheme. (Dkt. No. 2988 at 36-47.)

#### 1.    Monetary Penalties

Volkswagen contends that the requested monetary penalties "uniformly exceed the penalties imposed by the EPA or that are even permitted under California's standards," and that the States' demands "would enmesh state courts in the resolution of federal questions as to whether the penalty demands are consistent with, or permissible under, the federal scheme." (Dkt. No. 2988 at 41.)

While the potential size and range of penalties the States seek may be a legitimate concern for Volkswagen, Volkswagen has not cited any authority that supports that its argument is anything other than a federal defense. Volkswagen relies on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959), for the proposition that a state can disrupt a federal scheme just as much "through an award of damages as through some form of preventative relief," and on *Wisconsin Department of Industry, Labor and Human Relations v. Gould*, 475 U.S. at 288-89 (1986), where the Court held that a state labor law sanction "diminishe[d] the [National Labor Relations] Board's control over enforcement of [the NLRA]." In neither case, however, did the Court hold that a state claim gave rise to federal-question jurisdiction because a state penalty

scheme conflicted with federal law.

In *Gould*, Wisconsin prohibited state procurement agents from purchasing products sold by firms included on a list of labor-law violators. A Delaware corporation placed on Wisconsin's list filed an action in federal court for injunctive and declaratory relief, arguing that Wisconsin's scheme was preempted by the National Labor Relations Act. 475 U.S. at 284-85. Preemption was the basis for relief, not a federal defense asserted in response to a state-law claim.

In *Garmon*, the Supreme Court addressed on direct review whether a *state* court had jurisdiction to award damages arising from union activity, the oversight of which was delegated to the National Labor Relations Board by the NLRA. 359 U.S. at 238-39. The Court in *Garmon* had no reason to consider whether a federal court would have jurisdiction over a state-law claim based upon a federal defense with respect to a state-law penalty scheme.

Because Volkswagen's argument against the States' penalty schemes is a federal defense, it cannot serve as the basis for removal. *See Caterpillar*, 482 U.S. at 393; *Retail Property Trust*, 768 F.3d at 947-48.

## 2. Injunctive Relief

Volkswagen contends that the States' requested injunctive relief would permanently inject state courts into assessing whether Volkswagen's future vehicles contain "defeat devices," emit "excessive" NOx, or otherwise comply with emissions standards, and would disrupt the federal system by creating the risk that state courts would impose standards or requirements differing from the federal and California standards. (Dkt. No. 2988 at 39.)

As an initial matter, it is not clear that the States' requested relief would lead to these results. Maryland, as a 177 State, seeks to enforce standards that are identical to California's, and the Clean Air Act expressly empowers 177 States to "enforce" CARB emissions standards under their own state laws. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y. State Dept. of Envtl. Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996) ("Although the 'piggyback' provision [of Section 177] requires states to adopt standards identical to those in place in California to avoid preemption, there is no such identicality requirement for the mechanism employed to enforce those standards."). As for the Non-177 States, such as Illinois and Montana, the injunctions they

21

United States District Court
Northern District of California

1  seek are to prevent future violations of their state anti-tampering statutes, which, as noted above,

2  do not raise federal issues.

3  Nonetheless, even if Volkswagen correctly characterizes the States' requests for injunctive

4  relief, its argument again is a preemption defense—specifically, that the Clean Air Act prohibits

5  the States from enjoining conduct that the EPA or California are given authority to enforce.

6  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), a case Volkswagen relies on, does not

7  support a different conclusion.  There, the Supreme Court reaffirmed the holding of *Ex parte*

8  *Young*, 209 U.S. 123 (1908), that, notwithstanding the Eleventh Amendment, "federal jurisdiction

9  [exists] over a suit against a state official when that suit seeks only prospective injunctive relief in

10  order to end a continuing violation of federal law."  *Seminole Tribe*, 517 U.S. at 73.  The States'

11  cases here are not against state officials; nor do the States' claims affirmatively seek to end

12  continuing violations of federal law.  *Seminole Tribe* therefore does not advance Volkswagen's

13  opposition to remand.

14  **F.  The fourth *Grable* factor**

15  Because Volkswagen has not established that the States' claims "necessarily raise a stated

16  federal issue, actually disputed and substantial," it has not demonstrated that this Court has federal

17  subject-matter jurisdiction under 28 U.S.C. § 1331.  *Grable*, 545 U.S. at 314.  Having failed to

18  establish the first three prongs of *Grable*, the Court need not consider the fourth, which is whether

19  "a federal forum may entertain [the state-law claim] without disturbing any congressionally

20  approved balance of federal and state judicial responsibilities."  *Id.*  This prong serves as a

21  "possible veto" to federal jurisdiction, which does not need to be applied here.  *Id.* at 313.

22  *    *    *

23  In light of the foregoing analysis, the Court concludes that none of the States' claims

24  support federal-question jurisdiction.  While some of the state statutes at issue reference EPA

25  regulations, and the States' factual allegations are premised on Volkswagen's use of a defeat

26  device, the mere presence of these federal components is insufficient to support "arising under"

27  jurisdiction, given that the applicability of these components is not disputed and in most instances

28  these components are not elements of the States' claims.  Further, Volkswagen's argument that the

States' claims conflict with the Clean Air Act is a preemption defense, which does not give rise to federal subject-matter jurisdiction.  Because subject-matter jurisdiction is lacking, the Court GRANTS the States' motions to remand.

## II.      Attorneys' Fees

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal."  28 U.S.C § 1447(c).  At least some States argue that the Court should award attorneys' fees here under § 1447.  (*See, e.g.*, Dkt. No. 2816 at 16-17 (Okla. Compl.).)

The Supreme Court has held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  That is, even if a removing party's arguments are determined to be "losers," they are "not objectively unreasonable solely because [they] lack merit."  *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).  Here, almost all of the arguments Volkswagen makes for federal jurisdiction are federal defenses, or rely on federal regulations that are not in dispute. Nonetheless, courts have recognized that "[c]ases [analyzing *Grable* jurisdiction] require courts to venture into a murky jurisprudence," *Fishermen's Alliance*, 585 F.3d at 45, and there was no precedent on point that unquestionably foreclosed Volkswagen's claims.  Under these circumstances, the Court concludes that Volkswagen's removal of the States' complaints was not objectively unreasonable and therefore does not award fees.


**IT IS SO ORDERED.**

Dated: May 23, 2017

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California