Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br><br>MDL No. 2741<br><br>**MONSANTO COMPANY'S SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF REMAND**<br><br>Hearing Date:  June 15, 2017<br>Time:  10:00 a.m. |
| This document relates to:<br><br>*Pennie v. Monsanto Co.*, Case No. 3:17-cv-01711-VC | |

1    In accordance with the Court's May 24, 2017 Order Granting Motion for Leave to File
2    Surreply ("Surreply Order"), ECF No. 30, Monsanto Company ("Monsanto") files this surreply.

3    **I.    The Court Should Not Be Misled By Plaintiffs' Reply And Should Deny Remand.**

4    Plaintiffs mischaracterize arguments presented by Monsanto; misrepresent this Court's
5    Pretrial Order No. 15; cite outdated case law that has been superseded by more recent Supreme
6    Court case law; and make arguments that otherwise lack merit.  The Court should not be misled
7    and should deny remand.

8    *First,* Plaintiffs' late re-casting of this case as a "run-of-the-mill" lawsuit "alleging that a
9    federally-regulated product caused an injury," Pls.' Reply in Support of Remand ("Reply"), ECF
10   No. 24-1, is demonstrably false.  Instead, Plaintiffs here (and in several related Roundup® cases
11   filed recently in state court) have made a calculated and extraordinary choice to focus not on a
12   product but on the actions of the United States Environmental Protection Agency ("EPA").
13   Plaintiffs allege that EPA officials colluded with Monsanto for personal, monetary gain; that, in
14   doing so, EPA engaged in misconduct in dereliction of its federal regulatory obligations; and that
15   EPA's failure to fulfill its federal regulatory duty led to Plaintiffs' cancers.  Plaintiffs
16   characterize the alleged EPA misconduct at issue as so significant that "the health and safety of
17   millions of U.S. citizens is at stake."  Pls.' Opp'n to Sealing Portions of Pls.' Mot. to Compel
18   Dep. of Jess Rowland at 6, ECF No. 111; *see also, e.g.,* Pls.' Discovery Letter Brief re Dep. of
19   Jess Rowland at 2 (stating that former EPA official Jess Rowland "is a crucial fact witness" in
20   pursuing an "understanding [of] his bias, and thus the EPA's, toward Monsanto"), ECF No. 259;
21   Pls.' Mot. to Compel Responses from Deponent Jesudoss Rowland at 2, ECF No. 261-1
22   ("Plaintiffs, and the public, have a right to determine if there was an explicit, or implicit quid pro
23   quo between Monsanto or its associates and Mr. Rowland, as the documents suggest."); *id*. at 10
24   ("The purpose of this deposition was to examine the propriety of the [EPA's] Office of Pesticide
25   Programs', and Mr. Rowland's specifically, relationship with Monsanto and assessment of
26   glyphosate.  Monsanto's production of documents suggests that Mr. Rowland went out of his

way to benefit Monsanto's business.").[1]  Not a single case cited by Plaintiffs offers anything close to comparable allegations.

Plaintiffs' choice has consequences under federal law.  Both removal grounds invoked by Monsanto, *see* 28 U.S.C. §§ 1331 & 1441(a); 28 U.S.C. § 1442(a)(1), are proper because Plaintiffs' claims, as pursued by Plaintiffs themselves, would require a state court to adjudicate whether EPA – the agency obligated by federal law to regulate Monsanto and its Roundup®-branded herbicides – colluded with Monsanto to maintain regulatory approval for those herbicides.  Indeed, federal officer removal would be proper in these circumstances even if the federal issue was discrete and minor,[2] but here Plaintiffs have targeted EPA so as to make the federal issues inextricably intertwined with their case – and to make the federal issues substantial and disputed within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), so therefore federal question removal is proper as well.  No matter how hard they try, Plaintiffs cannot escape the impact of the allegations that they chose to include in the Complaint by disavowing or arguing away the words in the Complaint.  *See* Monsanto's Opp'n at 8 (citing cases).  Nor can Plaintiffs avoid removal by re-characterizing the Complaint as one arising solely under state law or disclaiming any intent to present a federal question in this case.  *See, e.g.*, *Redman v. A.W. Chesterton*, No. 08-03013 JSW, 2008 WL 4447729, at *3 (N.D. Cal. Sept. 30, 2008) (denying remand and rejecting plaintiffs' attempted disclaimer of claims giving rise to federal jurisdiction:  "Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither plaintiffs' disclaimer nor its characterization of

---

[1] Other would-be state court plaintiffs are pursuing the direct challenge to EPA across *fora*, as explained below in Section II.  For example, The Miller Firm, LLC recently filed a Freedom of Information Act ("FOIA") lawsuit seeking to force EPA to disclose documents allegedly relevant to the Roundup® litigation.  *See infra* at 8-9 & Exhibit 3.

[2] *See Durham v. Lockheed Corp.*, 445 F.3d 1247, 1251, 1253 (9th Cir. 2006) (discussing differences between federal officer removal based on § 1442(a)(1) and others types of removals based on § 1441; stating that § 1442(a)(1) must be broadly construed in favor of removal and that removing party "must demonstrate that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense" (quotation marks omitted); stating that federal officer removal is available "even if the plaintiff couldn't have filed the case in federal court in the first instance").

their claims are determinative." (quotation marks omitted)); *Buice v. Buford Broadcasting, Inc.*, 553 F. Supp. 388, 390 (N.D. Ga. 1983) ("This court is of course not bound by the plaintiff's own characterization of his complaint as one arising under state law, and removal may be permitted even if the plaintiff expressly denies any intent to present a federal question in this lawsuit.").[3]

***Second,*** Plaintiffs claim that "Monsanto appears to argue that this case raises a federal question because Monsanto intends to raise a preemption defense," Reply at 1, but Monsanto made no such argument.  Section I of Monsanto's Opposition, which addresses federal question removal, never once uses the words "preempt" or "preemption" (or any variant of those words).  *See* Monsanto's Opp'n to Pls.' Motion to Remand at 1-10 ("Monsanto's Opposition"), ECF No. 22.  Monsanto's federal question argument does cite *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), *see* Monsanto's Opp'n at 3, for the proposition that a challenge to a federal agency's performance of its regulatory duties implicates and depends entirely on federal law, *see Buckman*, 531 U.S. at 347 (2001) ("[T]he relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law.").  This aspect of *Buckman* unquestionably supports *Grable* federal question removal where a lawsuit alleges fraud on a federal regulatory agency.  *See Bader Farms, Inc. v. Monsanto Co.*, Case No. 1:16-CV-299 SNLJ, 2017 WL 633815, *3 (E.D. Mo. Feb. 16, 2017) (denying remand motion because one of plaintiffs' claims presented a substantial federal question within meaning of *Grable*; stating that

---

[3] Plaintiffs' recent reliance via Notice of Supplemental Authority on the remand order issued in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practice, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal. May 23, 2017) ("*Volkswagen* Order"), fails to acknowledge at all the dispositive difference that allegations of collusion and federal agency misconduct are entirely missing there.  Moreover, Volkswagen removed state law cases filed by **State Attorneys General** (not cases filed by private individual plaintiffs).  Using removal to drag a sovereign State's lawsuit into federal court in such circumstances presents special federalism concerns and issues of comity between sovereigns, *see, e.g.*, *West Virginia v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178-79 (4th Cir. 2011), that are not presented by Monsanto's removal in this case.  In short, the "selective process" using a "common-sense accommodation of judgment," *Grable*, 545 U.S. at 313 (quotation marks omitted), that this Court is required to apply here leads inexorably to the conclusion that important federal issues are inextricably intertwined with Plaintiffs' state law claims – and that this lawsuit "necessarily raise[s] . . . stated federal issue[s], actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *id*. at 314.

"whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is 'inherently federal in character'" (quoting *Buckman,* 531 U.S. at 347)).  Tellingly, Plaintiffs' eleven-page Reply completely ignores *Bader Farms*, even though that ruling is prominently discussed in Monsanto's Opposition.

It is true that Monsanto does have colorable defenses of federal preemption, and Monsanto intends to develop the evidentiary record for same and present its preemption defenses to the Court should these cases proceed beyond the *Daubert* general causation phase of this litigation.  That fact is relevant not to federal question removal but to Monsanto's independent basis for removal under the federal officer removal statute.  Indeed, one of the requirements for federal officer removal is that the removing party "can assert a colorable federal defense." *Durham*, 445 F.3d at 1251 (quotation marks omitted).[4]

***Third,*** Plaintiffs make the astonishing – and demonstrably false – assertion that "here, there are no allegations involving fraud on any federal agency," Reply at 2.  In fact, the Complaint has an entire section about Monsanto securing its product registrations from EPA based on alleged "Scientific Fraud," Compl. at 17, via falsified test results allegedly submitted to EPA, as well as fraudulent representations allegedly made to EPA about "ghostwritten" studies that were submitted to and relied upon by EPA for the proposition that independent scientists have concluded that glyphosate is safe, *id*. ¶¶ 98-104.  These allegations are incorporated by reference into every cause of action asserted in the Complaint.  *Id*. ¶¶ 147, 170, 195, 215, 227, 246.  Moreover, Plaintiffs seek punitive damages based on the fraud-on-the-Agency premise that Monsanto was able to sell Roundup®-branded herbicides "through a comprehensive scheme of selective fraudulent research and testing."  *Id*. ¶ 265.  Plaintiffs are stuck with the allegations discussed above and cannot argue away the words used in the Complaint.

***Fourth***, Plaintiffs misrepresent what this Court said in Pretrial Order No. 15 ("PTO 15"). According to Plaintiffs, "the Court has held that issues relating to the EPA and the unseemly

---

[4] Appropriately, but not germane to this case despite Plaintiffs' recent citation, the *Volkswagen* court rejected Volkswagen's arguments that offered preemption defenses (or other federal defenses) as bases for *Grable* federal question removal.  *See Volkswagen* Order at 14-17, 20-23.

relationship between Monsanto and EPA officials, while relevant are *secondary*." Reply at 4 & n.15 (citing PTO 15) (emphasis in original). But PTO 15 addresses disputes about third-party discovery sought by the parties during the general causation/*Daubert* phase regarding certain reports issued by IARC and EPA. The order says that "[a]ny expert testifying about general causation will, for his opinion to be admissible, almost certainly need to account for conclusions reached by these agencies." PTO 15, at 2. The order goes on to state that "[t]his does not mean, however, that the IARC and EPA reports are central to the general causation question; it means only that they are relevant" and that "[t]he opinions of the IARC and EPA about what the studies show, while important, are secondary." *Id*. Thus, PTO 15 addresses a *Daubert* admissibility issue and a general causation discovery issue – not any of the liability issues regarding alleged EPA-Monsanto collusion and alleged EPA misconduct in dereliction of its federal regulatory duties that are addressed in the Complaint, Monsanto's Notice of Removal, and Monsanto's Opposition. Those allegations are central to Plaintiffs' theory of the case – however misguided and wrongly motivated that theory may be. Without Plaintiffs' distortion of PTO 15, there is no basis for Plaintiffs to contend that PTO 15 supports their remand arguments.

*Fifth*, Plaintiffs misleadingly cite outdated case law that has been superseded by more recent Supreme Court case law, namely *Grable* itself. According to Plaintiffs, a federal private right of action is a necessary condition for removal: "The Supreme Court has held that unless Congress created a federal private right of action under the federal law implicated by the lawsuit, 'the presence of the federal issue as an element of the state tort . . . is insufficiently "substantial" to confer federal-question jurisdiction." Reply at 2 & n.5 (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986) (alteration in original)). This argument is contrary to *Grable*, which directly addresses that part of the *Merrell Dow* opinion cited by Plaintiffs and holds that *Merrell Dow* "***cannot*** be read" to "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317 (footnote omitted) (emphasis added). Though it seems superfluous to say, post-*Grable* case law makes clear that Plaintiffs are wrong. For example, in *Burrell v. Bayer Corp.*, Docket No. 1:17-cv-00032-MOC-DSC, 2017 WL 1032504 (W.D.N.C. Mar. 17, 2007) (denying remand motion in

1  products liability lawsuit) – cited in Monsanto's Opposition, but ignored by Plaintiffs – plaintiff
2  argued that federal question removal was unavailable because Congress had declined to create a
3  federal private right of action, but the *Burrell* court held that removal was proper based on
4  *Grable*.  As the *Burrell* court explained:  "If the Supreme Court *actually* intended there to be two
5  pathways to federal question jurisdiction (federally-created or 'arising from' federal law), it
6  simply cannot be that the lack of a federal cause of action would foreclose the second pathway."
7  *Burrell*, 2017 WL 1032504, at *3 (emphasis in original).

8  ***Sixth,*** Plaintiffs complain that Monsanto "collapses" two elements [of federal officer
9  removal], 'acting under direction' and 'causal connection' into a single analysis," Reply at 9, but
10  Monsanto correctly set forth the elements of the federal officer removal test as stated by the
11  Ninth Circuit in *Durham*, *see* Monsanto's Opp'n at 10 (quoting *Durham*, 445 F.3d at 1251).
12  Instead of addressing the Ninth Circuit's three-part test for federal officer removal, Plaintiffs
13  address a four-part test from a footnote in an Eighth Circuit case.  *See* Reply at 8 & n.31 (citing
14  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967 n.2 (8th Cir. 2007)).

15  ***Seventh,*** Plaintiffs try to evade the decisive impact of the Complaint's collusion
16  allegations by mischaracterizing the Supreme Court's federal officer removal opinion in *Watson*
17  *v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007).  Plaintiffs assert that, in *Watson*, Philip
18  Morris' argument was "based on collusion between one of its lawyers and an FTC official" and
19  that this argument "did not satisfy the delegation requirement of Section 1442(a)(1)."  Reply at 9
20  n.34.  That is false.  Although *Watson* discusses a letter from the cigarette manufacturers' lawyer
21  to an FTC official, *see Watson*, 551 U.S. at 156-57, the *Watson* Court did not characterize the
22  letter as "collusion" (or anything comparable to collusion) – and did not say or imply that Philip
23  Morris' federal officer removal argument was based on an express allegation of collusion
24  between Philip Morris and a federal regulatory official.  Instead, the Court held that "a highly
25  regulated firm cannot find a statutory basis for [federal officer] removal in the fact of federal
26  regulation alone" and that a "private firm's compliance (or noncompliance) with federal laws,
27  rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting
28  under' a federal 'official.'"  *Id*. at 153.  The Court found "nothing that warrants treating the

1  FTC/Philip Morris relationship as distinct from the usual regulator/regulated relationship" and
2  accordingly held that this relationship "cannot be construed as bringing Philip Morris within the
3  terms of the [federal officer removal] statute." *Id*. at 157.  Here, by sharp contrast, Plaintiffs'
4  own allegations take this case far outside the realm of mere regulatory "compliance" and make
5  this case "distinct from the usual regulator/regulated relationship."[5]

### II. The Two Grounds For Removal At Issue Here Are Also At Issue In The Roundup® Cases That Are Pending In The Eastern District of Missouri After Monsanto Removed Them From Missouri State Court.

The Court ordered Monsanto to "explain to what extent its grounds for removal would apply to any other state-court cases factually related to this MDL."  Surreply Order.  Monsanto removed twelve cases from Missouri state court and the *Pennie* case from California state court (and not other state court Roundup® lawsuits) based on the same grounds of (1) *Grable* federal question removal and (2) federal officer removal because the extraordinary allegations in these thirteen cases – Monsanto-EPA collusion and misconduct by EPA in dereliction of its federal regulatory obligations – should be adjudicated in federal court.

Counsel representing the *Pennie* plaintiffs (the Baum, Hedlund firm) also represent plaintiffs in three of the removed Missouri mass actions.  Other law firms represent plaintiffs in the nine other removed mass actions, including two firms with lead roles in these MDL proceedings, The Miller Firm LLC and Weitz & Luxenberg.

Although remand motions have been filed in all twelve of the Missouri mass actions, briefing on those motions has not been completed in all of the cases because stay orders were issued in some of the cases, pending transfer by the Judicial Panel on Multidistrict Litigation to this Court.  Given that the same two removal grounds are at issue in all twelve of those cases and in this *Pennie* lawsuit, many of the issues raised (or to be raised) in the thirteen cases are

---

[5] Even Plaintiffs' request for fees and costs relies on law that has been superseded.  *Compare* Reply at 10 & nn.39-40 (asserting that "fees may be awarded even where the removal was 'fairly supportable'" and that the Court should make "'an equitable determination as to whether Plaintiff should be forced to bear its own costs, or whether costs should be shifted, in whole or in part, to the Defendant'" (quoting *Braco v. MCI Worldcom Commc'ns, Inc.*, 138 F. Supp. 2d 1260, 1266, 1270 (C.D. Cal. 2001)) *with Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").

1  essentially the same.  However, the remand briefing will not be identical across all thirteen cases,
2  as certain plaintiffs have raised remand arguments not raised in *Pennie*.  For example, in several
3  of the Eastern District of Missouri lawsuits, plaintiffs have tried to argue the merits of
4  Monsanto's FIFRA express preemption arguments that implicate federal officer removal.  *See,*
5  *e.g.*, Pls.' Mem. in Support of Mot. to Remand at 12-13, *Turner v. Monsanto Co.*, No. 4:17-cv-
6  01102 (E.D. Mo. Apr. 4, 2017), ECF No. 17 ("*Turner* Remand Mem.").  In several cases,
7  plaintiffs also challenge Monsanto's removals as untimely based on 28 U.S.C. § 1446(b)(3).
8  *See, e.g.*, *Turner* Remand Mem. at 19.
9          Moreover, in certain cases Monsanto has additional evidentiary support to illustrate the
10 extent to which plaintiffs' counsel (not counsel in *Pennie*) have made, and are continuing to
11 make, alleged EPA misconduct the central theme of their prosecution of these Roundup® cases.
12 *See, e.g.*, Holly Yan, *Patients: Roundup Gave Us Cancer As EPA Official Helped The Company*,
13 CNN.com (May 15, 2017), http://www.cnn.com/2017/05/15/health/roundup-herbicide-cancer-
14 allegations/index.html (quoting and summarizing internal Monsanto documents regarding EPA
15 official Mr. Rowland; plaintiffs' counsel Timothy Litzenburg stating that those documents
16 "'seem to show an inappropriately close relationship' between Monsanto and the former EPA
17 official" (at pdf page 14)) (attached as Exhibit 1); Mike Papantonio, *Papantonio: Monsanto*
18 *Knowingly Sold Human Carcinogen To Consumers* (May 23, 2017),
19 https://trofire.com/2017/05/23/papantonio-monsanto-knowingly-sold-human-carcinogen-to-
20 consumers/ ("What these lawsuits are uncovering shows an effort both on the part of Monsanto
21 and the US government to minimize the message about the dangers of Roundup in relation to
22 human cancer. . . . [¶] With government, corporate controlled media, and even the White House
23 pulling every string to protect Monsanto, it appears that the only place this story will be fully be
24 [*sic*] told is in court rooms in front of juries.  That's the only way that this story will ever be told.
25 For a jury to hear the story and make a decision about how bad the conduct is, both of Monsanto
26 and the U.S. government in this deadly cover-up that has cost thousands of lives throughout
27 America and worldwide.") (attached as Exhibit 2); Complaint for Injunctive Relief, *The Miller*
28 *Firm, LLC v. U.S. Environmental Protection Agency*, Civil Action No. 3-17-cv-00035-GEC

(W.D. Va. May 22, 2017), ECF No. 1 (FOIA lawsuit asking federal court to force EPA to disclose documents allegedly relevant to Roundup® litigation; discussing "subpoena served on a former EPA employee with close ties to Monsanto" (¶ 7); alleging that "[t]he public, and Petitioner [The Miller Firm, LLC], have a right to know the goings-on of their government with respect to this deadly product [Monsanto's Roundup®-branded herbicides]" and that "the lives of many could depend on the release of these documents (¶¶ 21-22)) (attached as Exhibit 3).

*       *       *       *

In conclusion, for the reasons set forth above and in Monsanto's Opposition, the Court should deny remand.

DATED: May 29, 2017                     Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant Monsanto Company*