Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br><br>MDL No. 2741<br><br>**MONSANTO COMPANY'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' REMAND MOTION**<br><br>**Hearing Date:  June 15, 2017**<br>**Time:  10:00 a.m.** |
| This document relates to:<br><br>*Pennie v. Monsanto Co.*, Case No. 3:17-cv-01711-VC | |

Plaintiffs' counsel initiated the Roundup® litigation in 2015 with a series of product liability lawsuits filed in various federal and state courts. Declaration of Joe Hollingsworth ¶ 2 ("Hollingsworth Decl.") (attached as Exhibit 1). All of the complaints allege that glyphosate, the active ingredient in Roundup®-branded herbicides, causes cancer. *Id*. ¶ 3. Monsanto has litigated on both fronts (federal and state court) since 2015, including pressing applicable federal defenses that arise from Roundup®-branded herbicides' status as products approved by and regulated by the United States Environmental Protection Agency ("EPA"). *Id*. ¶ 4.

On September 12, 2016, EPA – re-stating its earlier assessments and pursuant to its regulatory authority and obligations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et seq.* – declared glyphosate "'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment." Hollingsworth Decl. ¶ 5 (quoting EPA's Office of Pesticide Programs ("OPP") Report at 141).[1]

In response to these EPA reports affirming glyphosate's safety and to support their foundational burden of establishing general causation, Plaintiffs' counsel made the conscious and unprecedented decision to turn their sights directly on the EPA. The *Pennie* Complaint and fourteen complaints filed on behalf of approximately 1,100 plaintiffs in Missouri state court (St. Louis City) added a series of allegations directly attacking EPA and its officials, contending that EPA officials had acted corruptly and in collusion with Monsanto to maintain federal regulatory approval for Roundup®-branded herbicides in violation of FIFRA and related EPA regulations. Hollingsworth Decl. ¶ 7. Monsanto is not aware of any other personal injury litigation involving such extraordinary allegations of federal officer misconduct – and Plaintiffs have not cited any such cases in their Supplemental Brief in Support of Remand ("Pls.' Suppl. Brief"), ECF No. 38, or any other remand briefing.[2]

---

[1] As part of the docket for the EPA OPP Report, EPA also made public an earlier analysis by EPA's 13-person Cancer Assessment Review Committee ("CARC Report"), chaired by long-time EPA veteran Jess Rowland, which likewise endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans." Hollingsworth Decl. ¶ 6 (quoting CARC Report at 10, 77).

[2] Plaintiffs' most recent submission relies heavily on the remand ruling in *Sangimino v. Bayer Corp.*, No. 3:17-cv-01488-WHA (N.D. Cal. June 9, 2017), *see* Pls.' Suppl. Brief at 4-5, but that reliance is misplaced, because *Sangimino* is materially different than this case. First, *Sangimino*

1
MONSANTO'S SUPPL. BRIEF IN OPP'N TO PLS.' REMAND MOTION (3:16-md-02741-VC)

Plaintiffs' litigation choice had consequences, one of which was that the newly-pleaded cases were removable. The allegations in the newly-filed state court cases raise important federal issues that will require courts and juries to decide: (a) whether EPA's interactions with Monsanto were consistent with federal law or amounted to collusion in violation of FIFRA and EPA regulations; (b) whether EPA approval for Roundup®-branded herbicides under FIFRA was tainted by alleged Monsanto-EPA collusion; and (c) whether the personal injuries alleged in these cases would have been avoided if EPA – instead of colluding with Monsanto – had fulfilled its federal regulatory obligations pursuant to FIFRA by not allowing Monsanto to sell its Roundup®-branded herbicides at all, or by requiring Monsanto to provide a carcinogenicity warning when selling the herbicides. These are affirmative allegations that support Plaintiffs' theory of the case and their effort to impose liability on Monsanto, not allegations that merely anticipate Monsanto's potential defenses. Furthermore, the allegations that Monsanto and Mr. Rowland colluded – *i.e.*, worked hand-in-hand – in maintaining federal regulatory approval for Roundup®-branded herbicides under FIFRA makes this case removable based on the federal officer removal statute. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (stating that federal officer removal has been approved in cases involving "defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government").

---

involves "garden-variety California negligence, products liability, warranty, and fraud claims without reference to federal law." *Sangimino* Order at 4. That case does not involve allegations – like the ones at issue here – that federal regulatory approval for the product at issue was maintained through collusion between the federal regulatory agency and the regulated company. Second, the *Sangimino* ruling is based in part on Judge Alsup's conclusion that the defendants were relying on a preemption defense to support removal but were precluded from doing so. *Id.* at 3. Here, by contrast, Monsanto's *Grable* federal question removal is ***not*** based on a preemption defense (although Monsanto has asserted preemption defenses as required in support of its independent removal argument based on the federal officer removal statute). *See* Monsanto's Surreply at 3-4 (discussing distinction between two removal grounds invoked by Monsanto), ECF No. 31. Finally, the *Sangimino* ruling is based in part on the conclusion that plaintiffs pleaded alternative theories – based on state law and on federal law – so remand was required based on *Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir. 1996). *See Sangimino* Order at 4. Here, however, the Complaint itself forecloses the argument that proof of federal law violations are not essential to Plaintiffs' ability to recover. *See* Compl. ¶ 144. Rather, the Complaint affirmatively pleads that it asserts only claims for violations of federal law, though it labels them under state law. *Id.* Thus, the federal and state law theories are not "alternative and independent," *Rains*, 80 F.3d at 346.

In sum, it is this Court's role as a federal court to address these important federal issues rather than allowing Plaintiffs to pursue such unfounded but serious accusations of federal agency misconduct in state courts.

### Responses To Questions Presented In The June 9 Order

**1. Plaintiffs' Assertion That Monsanto Violated FIFRA Amounts to Asserting a Federal Claim And Renouncing That Claim At This Stage Would Not Justify Remand.**

The Complaint explicitly asserts that Monsanto distributed a misbranded herbicide in violation of FIFRA and its associated regulations that set federal misbranding standards.  Compl. ¶ 146 (citing 7 U.S.C. §§ 136(q)(1)(g),[3] 136j; 40 C.F.R. § 156.10(a)(5)); ¶ 218 (alleging in fraud count that misrepresentations and omissions constitute federal misbranding under FIFRA).  In addition to asserting this purported violation of federal law within their fraud count, Plaintiffs also incorporate their allegations of federal misbranding into each claim alleged against Monsanto, Compl. ¶¶ 147, 170, 195, 215, 227, 246, and their request for punitive damages, *id*. ¶ 263.  This assertion of federal misbranding under FIFRA amounts to the assertion of a federal claim.  *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1003 (8th Cir. 2000) ("A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal court."); *see also New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,* 824 F.3d 308, 315 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law.").  Plaintiffs contend that this alleged violation of federal law does "not confer federal jurisdiction because the federal issue is not necessary for Plaintiffs to prevail on their state law claims."  Pls.' Suppl. Brief at 1.  But Plaintiffs are exactly wrong.  The Complaint itself makes proof of the federal law violation necessary.  *See* Compl. ¶ 144 ("To the extent California law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiffs do not assert such claims.").  Here, Plaintiffs admit that the exclusive path to proving their state law claims is by proving a

---

[3] The Complaint cites 7 U.S.C. § 136(g), but it appears that Plaintiffs instead intended to cite 7 U.S.C. § 136(q)(1)(g), which states that a "pesticide is misbranded if . . . the label does not contain a warning or caution statement which may be necessary and if complied with . . . is adequate to protect health and the environment."

1  violation of federal law.  Thus, despite the label Plaintiffs have given it, the claim is entirely
2  federal.  Plaintiffs' argument that they can avoid federal jurisdiction because they have clothed
3  those violations of federal law in state law clothing is unavailing.  If the Court were to accept
4  Plaintiffs' argument, a plaintiff could *always* avoid a federal forum simply by claiming the
5  asserted violation of federal law also amounts to negligence under state law, and then giving the
6  cause of action that state common law title.  Federal jurisdiction cannot be so easily manipulated.
7  Where, as here, federal law completely defines the claim purportedly asserted under state law,
8  the claim is federal for purposes of federal "arising under" jurisdiction.  To hold otherwise would
9  elevate form over substance and contravene the intentions of Congress.

10  Plaintiffs cannot avoid this result through a post-removal abandonment of their FIFRA
11  violation claims.  As the Ninth Circuit stated:  "We have long held that post-removal
12  amendments to the pleadings cannot affect whether a case is removable, because the propriety of
13  removal is determined solely on the basis of the pleadings filed in state court."  *Williams v.*
14  *Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006); *Sparta Surgical Corp. v. Nat'l Ass'n*
15  *of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("[Plaintiff] directs our attention to an
16  amended complaint it filed after removal in which most references to exchange rule violations
17  [upon which federal question removal was based] were deleted.  This is of no moment to us,
18  however, for jurisdiction must be analyzed on the basis of the pleadings filed at the time of
19  removal without reference to subsequent amendments." ), *abrogated on other grounds*, *Merrill*
20  *Lynch, Pierce, Fenner & Smith Inc.*, 136 S. Ct. 1562 (2016); *Southern Pac. Co. v. Haight*, 126
21  F.2d 900, 903 (9th Cir. 1942) (when a lawsuit "has been properly removed, jurisdiction over it
22  will not be defeated by later changes or developments in the suit").  "[P]ost-removal pleadings
23  have no bearing on whether the removal was proper," *Williams*, 471 F.3d at 976, so "a plaintiff
24  may not compel remand by amending a complaint to eliminate the federal question upon which
25  removal was based," *Sparta Surgical Corp.*, 159 F.3d at 1213.  Thus, even if Plaintiffs were to
26  dismiss or renounce the FIFRA violation claim asserted in the Complaint, their remand motion
27
28

nevertheless should be denied.[4]

**2. Plaintiffs' Fraud Claim Is Premised On An Alleged FIFRA Violation – And On Alleged EPA-Monsanto Collusion And Monsanto's Alleged Fraud On The EPA – So The Fraud Claim Presents Substantial Federal Issues That Make *Grable* Federal Question Removal Proper.**

Alternatively, the Court should deny remand because the fraud claim is premised on a FIFRA violation, giving rise to federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). The issue for the Court under *Grable* is whether these alleged violations of FIFRA and related EPA regulations "necessarily raise" federal issues that are "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In answering this question, the Court should not limit its consideration solely to the express references to FIFRA in the Complaint, but should consider also the allegations that further explain and define Plaintiffs' claims,[5] namely Plaintiffs' extraordinary allegations, *see* Compl. ¶¶ 104-05, that EPA officials acted corruptly in violation of their obligations under FIFRA (and EPA regulations) and in collusion with Monsanto to maintain federal approval for the continued marketing and labeling of Monsanto's glyphosate-based herbicides. The Court's "common sense" assessment of the Complaint should be informed as well by the fact that these allegations were added to the Complaint in response to the EPA OPP Report and the CARC Report.

By explicitly alleging that Monsanto violated FIFRA and EPA regulations regarding misbranding through improper collusion with EPA officials who failed to comply with their

---

[4] *Compare Sparta Surgical Corp.*, 159 F.3d at 1213 (rejecting plaintiff's effort to defeat removal via post-removal amendment to disavow pleaded claims) *with Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465-69 (6th Cir. 2002) (holding that removal was proper based in part on extra-complaint evidence submitted by defendant); *see also* Monsanto's Notice of Removal ¶¶ 18, 63 (relying on extra-complaint evidence to illustrate scope and depth of matters involved once Plaintiffs put at issue EPA's regulatory oversight pursuant to FIFRA), ECF No. 1; Monsanto's Opp'n to Pls.' Motion to Remand the Case to State Court at 8-9, 11-12 (same), ECF No. 22; Monsanto's Surreply at 1-2 & n.1, 8-9 (same), ECF No. 31.

[5] *See Grable*, 545 U.S. at 313 ("a request to exercise federal-question jurisdiction over a state action calls for a common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue . . . ." (quotation marks omitted; alteration in original)).

1  federal regulatory obligations, Plaintiffs have injected substantial federal issues into this lawsuit
2  that justify *Grable* federal question removal.  *See Mikulski v. Centerior Energy Corp.*, 501 F.3d
3  555, 570 (6th Cir. 2007) (en banc) (evaluating "substantiality" element of *Grable* test by
4  considering, *inter alia*, whether case involved any "question of whether a government agency
5  has complied with a statute or regulation").  As now alleged, Plaintiff's failure-to-warn claim
6  rests upon the theory that Monsanto sold a "misbranded" product through direct violations of
7  FIFRA (and EPA regulations) secured by a corrupt bargain with EPA officials.  *See Bates v.*
8  *Dow Agrosciences LLC*, 544 U.S. 431, 454 (2005) (a "manufacturer should not be held liable
9  under a state labeling requirement subject to [7 U.S.C.] § 136v(b) ***unless the manufacturer is***
10 ***also liable for misbranding as defined by FIFRA***" (emphasis added)).  These federal issues are
11 "actually disputed," *Grable*, 545 U.S. at 314, because Monsanto denies that Roundup®-branded
12 herbicides were misbranded and denies Plaintiffs' heated accusations of EPA misconduct and
13 collusion in the labeling of these products.  Finally, Congress gave federal courts jurisdiction to
14 enforce FIFRA and to police EPA actions regarding FIFRA, *see* 7 U.S.C. § 136n.  Unlike
15 garden-variety product liability claims with no such claims of collusion and federal officer
16 misconduct, this case raises uniquely federal issues that "a federal forum may entertain without
17 disturbing any congressionally approved balance of federal and state judicial responsibilities,"
18 *Grable*, 545 U.S. at 314.
19        Plaintiffs' Complaint necessarily requires a court and a jury to determine whether a
20 federal regulatory agency violated its own statutory duties in granting Monsanto authorization to
21 market federally-misbranded glyphosate-based herbicides.  Those and other substantial federal
22 questions presented in this case clearly support *Grable* federal question removal.  *See Burrell v.*
23 *Bayer Corp.*, Docket No. 1:17-cv-00032-MOC-DSC, 2017 WL 1032504, at *4 (W.D.N.C. Mar.
24 17, 2007) (removal was proper where plaintiffs alleged parallel duties, such "that the failure to
25 meet relevant federal obligations violated state law"); *Bader Farms, Inc. v. Monsanto Co.*, Case
26 No. 1:16-CV-299 SNLJ, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017) (removal was proper
27 where plaintiffs' fraudulent concealment claim required court to interpret federal regulations and
28 determine whether federal agency's regulatory decision was correct); *Dooley v. Medtronic, Inc.*,

39 F. Supp. 3d 973, 985 (W.D. Tenn. 2014) (removal was proper where plaintiffs alleged that defendants' acts were "illegal under federal law . . . and parallel state law" (quotation marks omitted)); *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (removal was proper where plaintiff alleged that defendant violated federal regulations by marketing prescription drug for uses that had not been approved by federal regulatory agency). Likewise, this Court should deny remand here as well.[6]

The fraud claim (Count IV) asserted by Plaintiffs purports to advance their new fanciful theory of the case – that, but for some combination of EPA-Monsanto collusion and Monsanto's submission of falsified test results and "ghostwritten" studies to EPA, they would not have been exposed to Roundup®-branded herbicides and would not have developed cancer. *See* Compl. ¶¶ 98-105 (alleging that Monsanto submitted fraudulent test results to EPA; alleging that Monsanto submitted "ghostwritten studies" to EPA to "fraudulently represent that independent scientists have concluded that Glyphosate is safe"; alleging that Monsanto and EPA illegally colluded "in a strategy to re-register glyphosate and to quash investigations into the carcinogenicity of glyphosate by other federal agencies"); *id.* ¶ 215 (incorporating by reference prior allegations of Complaint into fraud claim); *id.* ¶ 217 ("Defendant Monsanto misrepresented and/or failed to disclose, *inter alia*, that glyphosate and its major metabolite . . . AMPA . . . could cause cancer; . . . exposure to glyphosate and AMPA is causally associated with non-Hodgkin

---

[6] Although Monsanto pointed out that the part of *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), that could be read to suggest that a federal private right of action is a necessary condition for removal has been superseded by *Grable*, *see* Monsanto's Surreply at 5-6, Plaintiffs persist in erroneously arguing to the contrary, *see* Pls.' Suppl. Brief at 6 (quoting *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083 (9th Cir. 2007) (quoting *Merrell Dow*, 478 U.S. at 817)). This Court should not be misled by Plaintiffs' argument. If their argument were correct, then the Supreme Court could not have held that the removal at issue in *Grable* was proper. After all, as the Court noted, there was no federal private right of action available to plaintiff in that case. *See Grable*, 545 U.S. at 317. Thus, the lack of a private right of action for a FIFRA violation **does not** preclude *Grable* removal and does not deprive this Court of federal question jurisdiction. *See Grable*, 545 U.S. at 317 (stating that *Merrell Dow* ruling "did not mean to make a federal right of action mandatory" for federal question removal); *McReady v. White*, 417 F.3d 700, 702-03 (7th Cir. 2005) ("Although some language in *Merrell Dow* . . . might have been read to imply that the existence of a private right of action under federal law is essential to jurisdiction, the opinion in *Grable* . . ., puts the kibosh on that possibility." (citations omitted)); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 82 (D. Mass. 2006) ("While the presence of a federal cause of action is a welcome mat, its absence is not a deadbolt [for federal question jurisdiction].").

1 lymphoma; and the laboratory tests attesting to the safety of glyphosate were flawed and/or
2 fraudulent."); *id*. ¶ 218 (alleging that "[d]ue to *these* misrepresentations and omissions, at all
3 times relevant to this litigation, Defendant's Roundup® was misbranded under 7 U.S.C. §
4 136[(q)(1)(g)]⁷ and its distribution . . . was a violation of 7 U.S.C. § 136j and 40 C.F.R. §
5 156.10(a)(5)" (emphasis added)); *id*. ¶ 219 ("Plaintiffs relied on the Defendant's
6 misrepresentations and/or material omissions regarding the safety of Roundup® and its active
7 ingredient glyphosate in deciding whether to purchase and/or use the product.").

8       This fraud claim presents important federal issues that are "necessarily raise[d]" and
9 "substantial," *Grable*, 545 U.S. at 314, including whether the EPA-approved labeling for
10 Roundup®-branded herbicides actually resulted in the herbicides being misbranded in violation
11 of federal law, *see supra* page 6 (quoting *Bates*, 544 U.S. at 454); whether EPA colluded with
12 Monsanto in violation of federal law or properly discharged its federal regulatory obligations by
13 allowing Monsanto to sell Roundup®-branded herbicides; and whether Monsanto defrauded EPA
14 to obtain regulatory approval for those herbicides.  Of course, these federal issues are "actually
15 disputed," *Grable*, 545 U.S. at 314, because Monsanto denies that Roundup®-branded herbicides
16 were misbranded; contends that it complied with applicable federal law governing the
17 distribution and labeling of those herbicides; and denies that it colluded with EPA or defrauded
18 EPA.  Federal courts have exclusive jurisdiction to enforce FIFRA and review EPA's FIFRA-
19 based determinations, *see* 7 U.S.C. § 136n, and it is well established that the "relationship
20 between a federal agency and the entity it regulates is inherently federal in character because the
21 relationship originates from, is governed by, and terminates according to federal law," *Buckman*
22 *Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).  Therefore, Plaintiffs' fraud claim can
23 be adjudicated in federal court "without disturbing any congressionally approved balance of
24 federal and state judicial responsibilities," *Grable*, 545 U.S. at 314.

25       In sum, Plaintiffs' fraud claim presents important federal issues that make *Grable* federal
26 question removal proper in this case.  *See Bader Farms*, 2017 WL 633815, at *3 (E.D. Mo. Feb.
27 16, 2017) (holding that removal was proper based on fraudulent concealment claim that required

---

28 ⁷ *See supra* note 3.

1  interpreting federal law and determining whether federal agency's regulatory decision was correct); *supra* pages 6-7 (citing cases).

**3.  Removal Was Objectively Reasonable, So Attorney's Fees Should Not Be Awarded.**

In light of Plaintiffs' decision to present several substantial federal issues in their Complaint – including alleged Monsanto-EPA collusion regarding federal regulatory approval for Roundup®-branded herbicides; alleged fraud on the EPA regarding that federal regulatory approval; and the alleged FIFRA violations addressed in the June 9 Order – Monsanto's removal was not only correct as a matter of federal policy but also was "objectively reasonable," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005), so attorney's fee should not be awarded.  *See also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal. May 23, 2017) (Breyer, J.) (denying attorney's fees because "courts have recognized that '[c]ases [analyzing *Grable* jurisdiction] require courts to venture into a murky jurisprudence,' and there was no precedent on point that unquestionably foreclosed [defendant's removal arguments]") (quoting *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 45 (1st Cir. 2009) (first and second alterations in original), Pls.' Notice of Suppl. Authority, ECF No. 29.

\*             \*             \*             \*

For the reasons set forth above and in Monsanto's prior briefing, the Court should deny Plaintiffs' motion for remand.

DATED: June 13, 2017              Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant Monsanto Company*