Pages 1 - 18

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

| | | |
|---|---|---|
| IN RE ROUNDUP PRODUCTS LIABILITY LITIGATION, | ) ) ) | MDL No. 2741 Case No. 16-md-02741-VC |
| | ) | |
| LORETTA I. PENNIE, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 3:17-cv-01711-VC |
| | ) | |
| THE MONSANTO COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | San Francisco, California |
| | ) | Thursday, June 15, 2017 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:03 a.m. - 10:24 a.m. =  21 minutes

**APPEARANCES**:

For Plaintiffs Pennie, et al.:

> Baum Hedlund Aristei Goldman, PC
> 12100 Wilshire Boulevard, Suite 950
> Los Angeles, California  90025
> BY:  **ROBERT BRENT WISNER, ESQ.**
> **PEDRAM ESFANDIARY, ESQ.**

For Plaintiffs:        The Miller Firm
> 108 Railroad Avenue
> Orange, Virginia  22960
> BY:  **MICHAEL MILLER, ESQ.**
> (by telephone - listening only)

(Appearances continued on following page.)

Transcribed by:        Leo T. Mankiewicz, Transcriber
> leomank@gmail.com
> (415) 722-7045

**APPEARANCES**:  (cont.)

For Defendant Monsanto Company:

Hollingsworth, LLP
1350 I Street NW #900
Washington, D.C.  20005
BY:  **JOE G. HOLLINGSWORTH, ESQ.**

1    <u>Thursday, June 15, 2017</u>

2                                                    10:03 a.m.

3                    P R O C E E D I N G S

4         **THE CLERK:**  All rise.  Court is now in session, the

5    honorable Vince Chhabria presiding.  Please be seated.

6              Calling case number 16-MD-2741, Roundup Product

7    Liability Litigation, and 17-CV-1711, Pennie, et al., versus

8    Monsanto Company, et al.

9              Counsel, please step forward and state your

10   appearances for the record.  To the podiums, please, thank you.

11        **MR. WISNER:**  Good morning, your Honor.  Brent Wisner

12   on behalf of the plaintiff.  With me is my associate Pedram

13   Esfandiary.

14        **THE COURT:**  Good morning.

15        **MR. HOLLINGSWORTH:**  Good morning, your Honor.  Joe

16   Hollingsworth on behalf of Monsanto Company.

17        **THE COURT:**  Good morning.  So we -- I think we can

18   have a kind of a brief discussion.

19              Mr. Hollingsworth, maybe I'll start with you.

20   I think that, you know, you've argued against remand on a

21   couple of bases that I think are unreasonable, right?  I mean,

22   they have not stated a claim, they're not pursuing a claim

23   under FIPRA, there's no reasonable argument that there was

24   federal officer removal, and I don't think we need to discuss

25   those.

1    I think the one question is the question I raised in

2  the supplemental brief -- in the request for supplemental

3  briefs, which is the *Grable* question, and it seems to me that

4  you're right that adjudication of this federal question is

5  necessary to adjudicate the state law claims, fraud and

6  probably failure to warn too, I would think, but -- and it's

7  certainly disputed.

8    So the two parts of that test I think are met, but

9  the question becomes, I guess, whether you could meet the third

10  and the fourth parts of the test, whether it's a substantial

11  federal question, in the context of things, and whether, from a

12  prudential standpoint, it would somehow upset, you know,

13  Congress' understanding of the appropriate federal/state

14  balance for these claims to be adjudicated in state court.

15    And on that, I guess -- I think you probably have an

16  uphill battle, mainly because Congress has said there's not

17  going to be a private federal cause of action under FIPRA for

18  misbranding or mislabeling, but there can be state law causes

19  of action that assert -- as long as they're sort of

20  co-extensive with FIPRA and state law doesn't try to outlaw

21  something that FIPRA would allow.

22    So that seems to me to reflect a contemplation by

23  Congress that these claims will be adjudicated in state court.

24  So I guess it's hard for me to see how you win on the third and

25  fourth parts of the test.

1    **MR. HOLLINGSWORTH:**  Well, as to -- let's start with

2    substantial, your Honor.  As to substantial, given that the

3    court has to take the Complaint as it's stated, we didn't write

4    the Complaint, the plaintiffs did.  As to substantial, there

5    are a number of issues that they have pleaded here and that

6    your Honor has called out in his order, and I don't know

7    whether I need to go back to the specific --

8        **THE COURT:**  No, you don't.

9        **MR. HOLLINGSWORTH:**  -- provisions of the

10   Complaint --

11       **THE COURT:**  No, I've read them.

12       **MR. HOLLINGSWORTH:**  -- a number of substantial

13   issues --

14       **THE COURT:**  But that goes -- it seems to me that

15   that goes to whether it's necessary to adjudicate a federal

16   question in the context of the state law claims.  They may

17   disagree.  I think it is, and I think that the language in

18   their Complaint kind of reflects a concession that it is, that

19   the -- you know, state law has to be co-extensive with what

20   FIPRA requires and doesn't require, allows/doesn't allow.

21       They might disagree with me on that, but I don't

22   think it matters, because I don't see how that language goes to

23   the third and fourth parts of the test, and the third and

24   fourth parts of the test, as I understand it at least, are much

25   more about, you know, sort of how important this question is in

1  the grand scheme of the case and how weird would it be to have

2  this federal question adjudicated in state court.

3           **MR. HOLLINGSWORTH:**  I think your Honor --

4           **THE COURT:**  And this doesn't seem weird.

5           **MR. HOLLINGSWORTH:**  I think your Honor needs to

6  accept that it's important because they've pled it as

7  important, and they've argued some of those facts to your Honor

8  before in connection with other proceedings in front of this

9  Court.  Your Honor knows how serious it is.

10          The pleadings make the involvement of the federal

11 officer absolutely necessary to the claims that they've made in

12 the case, because --

13          **THE COURT:**  Well, but if there was no -- I don't

14 agree with that, and I don't think that if -- if they stated in

15 their Complaint that, you know, proving that there was

16 collusion between Monsanto and the EPA is essential to our

17 case, I don't think we'd have to defer to that.  I mean, the

18 reality is that it's not, right?

19          I mean, whether there was collusion between Monsanto

20 and EPA or not, they could still win their case, and it's not

21 clear to me how important -- I mean, it seems, in the grand

22 scheme of things, relatively unimportant whether there was

23 collusion between Monsanto and EPA, because they don't need

24 that to win their case.

25          And as we've discussed in the context of discovery

1    disputes that we've had in these cases, the EPA's conclusion

2    about glyphosate is relevant.  It's not the most important

3    thing to whether glyphosate causes cancer or whether the case

4    should go to the jury on whether glyphosate causes cancer.

5    It's not the most important thing.  It's relevant, but the

6    EPA's conclusion would have that level of relevance regardless

7    of whether there was collusion between Monsanto and EPA

8    officials.

9              So I don't -- yeah, they make a lot of noise about

10   collusion, I guess because it's, you know, good atmospherics

11   for them, but that doesn't mean that it's a very important part

12   of their case.

13             **MR. HOLLINGSWORTH:**  Well, two things, your Honor, in

14   response.  One is that *Grable* says that your Honor should use a

15   commonsense approach to the kaleidoscopic things that can

16   happen when federal issues arise, and I've never seen a case

17   like this.  In my 44th year, I've never had to deal with

18   allegations like this.  They seem to be proper for a federal

19   court to be deciding, and not for a state court to be deciding.

20   That's number one.

21             Number two goes to the way the Court has treated the

22   importance of EPA thus far, and that, your Honor, with all due

23   respect, is only in the context --

24             **THE COURT:**  You mean in our cases here?

25             **MR. HOLLINGSWORTH:**  Yes.

1     **THE COURT:**  Okay.

2     **MR. HOLLINGSWORTH:**  Yes, that's only in the context

3  of general causation proof.  I can almost guarantee your Honor

4  that when Mike Miller gets in front of a jury here, if he ever

5  does, pray tell, the first thing that he's going to be talking

6  about is the collusion between EPA and Monsanto, and the

7  illegality of it and the illegality of the actions of a federal

8  officer.

9     That is the reason that *Grable* says that your Honor

10 needs to --

11    **THE COURT:**  Mr. Miller's bluster is not going to be

12 tolerated in any trial that takes place in this court.  So

13 I don't think that Mr. Miller's bluster is a helpful argument

14 for you here in this -- in connection with this remand motion.

15    **MR. HOLLINGSWORTH:**  Well, let me back up, then, from

16 that.  The issue of the secondary nature of whatever it is EPA

17 did in connection with these plaintiffs' proof of claims is

18 something that your Honor has addressed so far, as far as I'm

19 aware of, only in the context of the proof of general

20 causation, the general causation aspect of this claim.

21    All of the liability issues -- let's leave

22 Mr. Miller out of it.  All of the liability issues in this case

23 will bring all that stuff right back to the floor your Honor,

24 right here or in some kind of a forum, be it federal or state.

25    **THE COURT:**  Well, it sounds like we might have to

have a motion *in limine* about that and, you know, in state

court there can be a motion *in limine* about how much, you know,

how much focus can be placed on allegations of collusion

between EPA and Monsanto, if there is even enough evidence on

that issue to go to a jury at all.

        **MR. HOLLINGSWORTH:**  Well, they have made the

allegations, and there are a number of places in the Complaint

where they make these allegations.  I think there are nine or

ten specific paragraphs that I counted in preparing for this

argument.

        Taking those at face value, I think based on the

commonsensical approach that *Grable* talks about, which is a

different approach than was ever taken before to questions of

whether or not a case arises under federal law, as your Honor

is aware, is a different approach.

        It seems to me, based on this extraordinary, unique

Complaint, that this Court ought to accept the removal of these

cases from a state jurisdiction, so that this Court can apply

the uniformity and in the sense that federal courts can bring

to litigation of issues that involve the interpretation of so

many federal questions.

        Just the -- going back to the issue of misbranding,

just the issue of whether misbranding is an equivalent claim to

a state law failure to warn claim is a really complicated issue

that I think, in itself, presents a federal question under

1  *Grable*, your Honor.  So that's one.

2  THE COURT:  Sorry, go ahead.

3  MR. HOLLINGSWORTH:  So that's part one of my answer

4  to your introductory comments.

5  Part two would have to do with the fourth element of

6  *Grable*.  I don't think that -- I think this case deserves to be

7  in federal court for the reasons that the fourth element

8  addresses, and I don't think that -- I think this case is so

9  unique and extraordinary that we're not talking about opening

10  the floodgates here, because we have a case that involves

11  collusion, i.e., an agreement --

12  THE COURT:  Well, that's really what --

13  MR. HOLLINGSWORTH:  I looked up collusion, and --

14  THE COURT:  That's really what your -- I mean, you

15  are really hanging your hat on these allegations about

16  collusion between EPA and Monsanto, and the reason this case is

17  so different from any number of other cases, fraud or failure

18  to warn cases out there, is because of this allegation of

19  collusion between EPA and Monsanto.  That is really what you're

20  hanging your hat on.

21  MR. HOLLINGSWORTH:  Well, the Complaint makes proof

22  of a federal claim essential to their case in the first place.

23  I'm not sure that I'm taking your Honor's questions in order

24  here, but they have asserted a federal claim that Monsanto's

25  product, Roundup, containing glyphosate, is misbranded, and

1    then they go on in the same paragraph of that Complaint and say

2    that to the extent California law imposes a duty or obligation

3    on defendants that exceeds those required by federal law,

4    plaintiffs do not assert them.

5           So that, it seems to me, puts them in -- that answer

6    is your Honor's --

7           **THE COURT:**  But you're going back to, like, the

8    first --

9           **MR. HOLLINGSWORTH:**  The first question, yes.

10          **THE COURT:**  -- the first part of the test.

11          **MR. HOLLINGSWORTH:**  Yes.

12          **THE COURT:**  And I'm telling you that I'm giving you

13   the first part of the test.

14          **MR. HOLLINGSWORTH:**  Okay.  I didn't completely

15   understand that.

16          Well, then, in response to the fourth part of the

17   test, your Honor, I don't think that your Honor's decision to

18   deny the motion to remand opens up any floodgates that

19   interferes with the careful balance that --

20          **THE COURT:**  Because you are hanging your hat

21   exclusively on the allegations they make about collusion

22   between the EPA and Monsanto.

23          **MR. HOLLINGSWORTH:**  That is part of it, and the

24   other part of it is that they've made a specific allegation

25   that they can't make their case on failure to warn under

California law without proving --

**THE COURT:**  But that opens the floodgates.

**MR. HOLLINGSWORTH:**  -- the federal law involving misbranding.

**THE COURT:**  That part of your argument does open the floodgates.

**MR. HOLLINGSWORTH:**  Well --

**THE COURT:**  That means any state law claim that implicates FIPRA has to be adjudicated in federal court.

**MR. HOLLINGSWORTH:**  No, any state law claim where plaintiff says that they can't make their case without proving this federal misbranding --

**THE COURT:**  But that's effectively the law, right? I mean, if it turns out that something -- if a representation is allowed under FIPRA, it cannot be unlawful under state law. So it doesn't matter whether they say that in their Complaint or not, it's the law.  It's not a factual allegation they included in their Complaint, it's a statement about the law.

So that -- and that is true whether it's in the Complaint or not, and if that's your reason for -- if that's the basis for your insistence that this case needs to be in federal court, you're saying that any state law claim that implicates FIPRA has to be adjudicated in federal court, which is pretty weird --

**MR. HOLLINGSWORTH:**  No.

1    **THE COURT:**  -- because Congress said there's no

2    federal private cause of action under FIPRA, but it's -- any

3    state law claim that is co-extensive with FIPRA can be pursued,

4    and without saying that it has to be in federal court.

5    **MR. HOLLINGSWORTH:**  No, that's what the Supreme

6    Court said, interpreting Congress' language, of course, in

7    *Bates*, as your Honor well knows.  Your Honor is very familiar

8    with *Bates*, but *Bates* points out that the -- that it left to

9    the Fifth Circuit to decide whether federal misbranding -- an

10   allegation involving federal misbranding that was so seriously

11   taken in that case, and it is here, I think, really was

12   equivalent to Texas state law and failure to warn.  That's just

13   one issue.

14   The collusion issue, the illegal agreement issue, is

15   another one.  I looked up what agreement -- what "collusion"

16   means in Black's Law Dictionary, taking a page from Judge

17   Scalia's book, and it said what I expected.  It's an agreement

18   to do something illegal.

19   So sure, that's part of this Complaint.  You know,

20   we have the cleanest bureaucracy in the history of the earth in

21   the United States.  It's very, very rare that an allegation

22   like this gets made.  I've never heard of it before.

23   **THE COURT:**  But I'm just not --

24   **MR. HOLLINGSWORTH:**  So it's not a --

25   **THE COURT:**  I just don't understand how that relates

1    to this motion.  I do understand your argument, I get it.

2              I want to turn to the plaintiffs, and I only have

3    one question for you, which is about your request for

4    attorneys' fees.

5              It's very tempting to award costs and attorneys'

6    fees to you, because the bases they did assert for removal

7    seems to me unreasonable, okay?  But there does seem to be an

8    argument for removal that they didn't make, that I think it is

9    probably a loser, but may not be unreasonable.

10             So in a circumstance like that, you know, what is

11   the answer on whether I should award your costs and attorneys'

12   fees?  I mean, it seems to me that the standard is not based on

13   which reasons they assert for removal.  The standard is whether

14   there's an objectively reasonable basis for removal.  Right?

15        **MR. WISNER:**  Well, it can't be, because the fees and

16   costs that we're seeking to recover are in response to the

17   unreasonable reasons laid out in the Notice of Removal.

18        **THE COURT:**  Do you have any cases that -- any case

19   that stands for the proposition that if there are some bases

20   for removal that are objectively unreasonable and other

21   arguments for removal that might be within the range of

22   reasonableness, that the plaintiff who files a motion to remand

23   should get all or part of its costs or attorneys' fees because

24   it had to deal with responding to unreasonable arguments for

25   removal?

1      **MR. WISNER:**  I did look for the sort of piecemeal

2   concept for fees, and I did not find any case law directly on

3   point.  But I would just go to the general -- just a reading of

4   the fee shifting statute, right?  The purpose of the fee

5   shifting is to compensate the lawyers who had to brief, argue,

6   research, conduct all the work, responding to the arguments

7   that they made.

8          Now, if the Court were to say, well, okay, but when

9   I ordered supplemental briefing, I was really raising the

10   reasonable argument there, and then you brief that issue and

11   now I've decided, based on that briefing, fine, maybe we don't

12   get fees for that portion because that related to the

13   reasonable argument that was raised.

14          But I mean, a large portion of our briefing related

15   to the federal officer jurisdiction, which is -- I don't mean

16   to be rude, but it's quite preposterous.  I mean, Monsanto is

17   not a federal officer.  It's ridiculous.

18          We spent a lot of time working on that and, you

19   know -- "we" meaning myself and my associate --

20      **THE COURT:**  If it's so ridiculous, why did you have

21   to spend so much time working on it?

22      **MR. WISNER:**  Well, I mean, because we hold ourselves

23   to a certain standard of litigation and briefing in federal

24   court as well as state court.  We pride ourselves in being good

25   lawyers, your Honor.

1     **THE COURT:**  Did they bring -- I can't remember -- in

2     their Notice of Removal, did they raise the *Grable* issue at

3     all?

4     **MR. WISNER:**  Oh, absolutely.  I mean, in those

5     rules, I think upwards of 40 pages, it covers everything under

6     the sun, but that's not what we argued about.  We argued -- and

7     I mean, I know you didn't want me to get into the merits a

8     little bit, but I just want to point out that we're really

9     talking about two different issues.  Right?  The collusion

10    issue and the FIPRA issue, and I think it's pretty clear that

11    the FIPRA issue, the Court feels is necessary -- we disagree,

12    and we've argued that in our briefing, I won't repeat it now --

13    is not necessary, but it would upset the balance of state

14    court, because it would essentially make every failure to warn

15    case involving an EPA product removable.

16          But the second issue is collusion, and I think

17    there, collusion is not a necessary element of our case.  And

18    I think it's going to be sort of interesting, when we do get to

19    trail and we have that motion *in limine* where they seek to

20    exclude any reference to the collusion that we say occurred

21    between Jess Rowland and Monsanto, we're going to be pulling up

22    these briefs and saying, well, he said it was the most

23    important issue in the case.  They can't argue it's not

24    relevant now.

25          I mean, it's going to be sort of amusing when

1  that -- if and when that comes up.

2  **THE COURT:**  Well, no, but the difference is that

3  they may --

4  **MR. WISNER:**  I know.

5  **THE COURT:**  -- they are referring to your

6  allegations of collusion, and then they will say that, A, it's

7  not -- even if it were an important question, they didn't come

8  up with any evidence.

9  **MR. WISNER:**  And at the end of the day, it doesn't

10  really matter what we say, it matters what the Court believes

11  is relevant and admissible, depending whether it's in state or

12  federal court.

13  So -- and I recognize that, but I'm just saying, you

14  know, that issue is not necessary, so that issue doesn't get

15  past the first element, but the issue of FIPRA, which you

16  believe does make it to the second or third, doesn't pass that,

17  because that would fundamentally upset the balance.

18  **THE COURT:**  Yeah, I really just wanted to know if

19  you had any case law in support of your argument for all or

20  part of your attorneys' fees.

21  **MR. WISNER:**  I only checked in the Ninth Circuit.

22  If you'd like, I could take a look and submit a supplemental --

23  like just an order --

24  **THE COURT:**  That's okay, I already asked for

25  supplemental briefing on the question.

1   **MR. WISNER:**  Fair enough.

2   **THE COURT:**  So you had your chance.  Okay, thank you

3   all.  I'll --

4   **MR. WISNER:**  Your Honor, I want to point out one

5   option on the table, and that is, you know, while we do want

6   our fees, maybe there's a possibility that if Monsanto agrees

7   to withdraw its opposition to all the removals --

8   **THE COURT:**  I don't want to get into that settlement

9   negotiation.

10  **MR. WISNER:**  Okay.

11  **THE COURT:**  That's for you to talk to them about.

12  So I will issue a ruling very shortly on this.  Thank you very

13  much.

14  **MR. WISNER:**  Thank you, your Honor.

15                                           <u>10:24 a.m.</u>

16                      ---o0o---

17

18

19

20

21

22

23

24

25

1

2

3 **CERTIFICATE OF TRANSCRIBER**

4

5          I, Leo Mankiewicz, certify that the foregoing is a

6 true and correct transcript, to the best of my ability, of the

7 above pages of the official electronic sound recording provided

8 to me by the U.S. District Court, Northern District of

9 California, of the proceedings taken on the date and time

10 previously stated in the above matter.

11          I further certify that I am neither counsel for,

12 related to, nor employed by any of the parties to the action in

13 which this hearing was taken; and, further, that I am not

14 financially nor otherwise interested in the outcome of the

15 action.

16

17 _Leo T. Mankiewicz_ ____ 06/17/2017

18          Signature of Transcriber          Date

19

20

21

22

23

24

25