DAVID G. OTT (Mo. Bar No. 30449MO)
JOHN F. COWLING (Mo. Bar No. 30929MO)
SCOTT T. JANSEN (Mo. Bar No. 57393MO)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Facsimile: 314.621.5065
dott@armstrongteasdale.com
jcowling@armstrongteasdale.com
sjansen@armstrongteasdale.com

Attorneys for Defendants
OSBORN & BARR COMMUNICATIONS, INC. and
OSBORN & BARR HOLDINGS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br>MDL No. 2741 |
| This document relates to:<br><br>*Smith, et al. v. Monsanto Co., et al.*, Case No. 3:17-cv-02142-VC | **OSBORN & BARR DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**JURY TRIAL DEMANDED**<br><br>**HEARING DATE: August 31, 2017**<br>**10:00 A.M.** |

COME NOW Defendants Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc. (collectively, the "Osborn & Barr Defendants"), by and through counsel, and pursuant to Civil L.R. 7-4 provide their Memorandum in Support of their Motion to Dismiss for Failure to State a Claim.

**I. Table of Contents.**

I. TABLE OF CONTENTS. 2

II. TABLE OF AUTHORITIES. 3

III. STATEMENT OF THE ISSUES TO BE DECIDED. 4

IV. STATEMENT OF THE RELEVANT FACTS. 4

V. ARGUMENT. 4

A. Standard on this Motion to Dismiss. 5

B. Plaintiffs' claims against the Osborn & Barr Defendants fail on their face because they have not pled any duty under which an advertising agency could be liable for personal injuries caused by someone else's product. 5

C. The misrepresentation claims against the Osborn & Barr Defendants fail to state claims upon which relief could be granted. 7

1. For the claims premised on fraud, Rule 9 of the Federal Rules of Civil Procedure requires plaintiffs to plead their claims with specificity, which they have not done. 7

(a) The common law fraudulent misrepresentation claims fail. 8

(b) The "consumer fraud act" claims likewise fail. 10

2. Even under Rule 8's pleading requirements, the negligent misrepresentation claims fail. 11

D. The loss of consortium and wrongful death claims fail. 14

VI. CONCLUSION. 14

## II. Table of Authorities.

### Cases

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) .................................... 8

*Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957 (8th Cir. 2015) .......................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 11, 13, 14

*Bank of Texas, N.A. v. Glenny*, 405 S.W.3d 310 (Tex. App.-Dallas 2013) ................................. 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 5, 11, 13, 14

*Benson v. Stafford*, 941 N.E.2d 386 (Ill. App. Ct. 2010) .......................................................... 13

*Cornelius v. DeLuca*, 2009 WL 2568044 (E.D. Mo. Aug. 18, 2009) .......................................... 13

*Gilmore v. DJO, Inc.*, 663 F.Supp.2d 856 (D. Az. 2009) ..................................................... 12, 13

*H.C. Duke & Sons, LLC v. Prism Marketing Corporation*, 2013 WL 5460209 (C.D. Ill. Sept. 30, 2013) ........................................................................................................................ 13, 14

*Harmon v. National Auto Parts Association*, 720 F. Supp. 79 (N.D. Miss. 1989) ........................ 6

*Lewis v. Lead Industries Association, Inc.*, 793 N.E.2d 869, 876 (Ill. App. Ct. 2003) ................ 13

*McClinton v. Carson*, 2015 WL 851330 (E.D. Mo. Feb. 26, 2015) ............................................. 5

*Nestle Purina PetCare Co. v. Blue Buffalo Co., Ltd.*, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) .................................................................................................................. 10, 11, 14

*Robbins v. Oklahoma*, 419 F.3d 1242 (10th Cir. 2008) ................................................................ 5

*U.S. ex rel. Costner v. U.S.*, 317 F.3d 883 (8th Cir. 2003) ........................................................... 8

*U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552 (8th Cir. 2006) ................................. 8

*VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073 (E.D. Ca. 2009) ..... 9, 10

### Other Authorities

RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 20 cmt. g. ........................................... 6

### Rules

Fed R. Civ. P. Rule 8 ........................................................................................................ 11, 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 4

Fed. R. Civ. P. 9 ........................................................................................................................ passim

Fed. R. Civ. P. Rule 20 .......................................................................................................... 10

**III. Statement of the Issues to Be Decided.**

Whether Plaintiffs' Complaint states cognizable claims against the Osborn & Barr Defendants, a St. Louis advertising agency and subsidiary corporation, under Fed. R. Civ. P. 12(b)(6) for purported misrepresentations by them in advertising and marketing Monsanto Company's Roundup products.

**IV. Statement of the Relevant Facts.**

This is one of the Monsanto glyphosate herbicide cases within the Multi-District Litigation. It was originally filed in the Circuit Court of the City of St. Louis, Missouri, then was removed by Monsanto to the U.S. District Court for the Eastern District of Missouri. Monsanto tagged this case for transfer to the MDL, and the Joint Panel issued a Conditional Transfer Order which was not contested by Plaintiffs, resulting in transfer to this Court. This is the first of the Roundup cases in the MDL to include the Osborn & Barr Defendants as parties.

In this case, 104 different plaintiffs from 23 different states purport to bring claims against the Osborn & Barr Defendants for some combination of: (i) state common law misrepresentation, (ii) "violation of consumer fraud acts" of the Plaintiffs' various states (iii) loss of consortium, and (iv) wrongful death. Seventy-four plaintiffs claim they developed non-Hodgkin's Lymphoma as a result of exposure to Roundup products. Twenty-three spouses claim lost consortium of someone who developed non-Hodgkin's Lymphoma. Although the Complaint is unclear as to the particulars, it appears that six plaintiffs are representatives for people who professedly died from non-Hodgkin's Lymphoma.

**V. Argument.**

Every single claim in the Complaint is premised on the underlying assertion that glyphosate, an ingredient in Monsanto's Roundup products, causes non-Hodgkin's Lymphoma. Plaintiffs apparently contend that the Osborn & Barr Defendants somehow misrepresented or concealed this "fact" from the consuming public.

That is, however, about as specific as the Plaintiffs get. The Complaint is a jumbled hodgepodge of vagaries, ambiguities, and contradictions. It does not set out any real facts. There is nothing from which any legitimate inference can be drawn. Even under the most liberal pleading standard, it falls well short of being sufficient and should be dismissed for failure to state a claim.

**A. Standard on this Motion to Dismiss.**

"For a pleading to state a claim for relief it must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015). "The complaint must contain facts sufficient to state a claim that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

As part of this inquiry, the court "must identify the allegations in the complaint that are not entitled to the assumption of truth." *McClinton v. Carson*, 2015 WL 851330, *2 (E.D. Mo. Feb. 26, 2015). "These include legal conclusions and threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." *Id*. If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 419 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Plaintiffs' claims against the Osborn & Barr Defendants fail on their face because they have not pled any duty under which an advertising agency could be liable for personal injuries caused by someone else's product.**

Although cast in terms of "misrepresentations" in an advertising campaign, Plaintiffs' claims against the Osborn & Barr Defendants are really nothing more than an attempt to hold an advertising agency liable for bodily injuries supposedly incurred as a result of exposure to a

defective product manufactured by an entirely different company. In other words, Plaintiffs are asserting product liability claims against a company that did nothing more than promote the allegedly defective product. There is no such cause of action. Even if there were, Plaintiffs have not plead anything resembling a duty on the part of the Osborn & Barr Defendants to independently verify the manufacturer's scientific data regarding a technical, complex product over two decades of providing service.

"[T]here is apparently no state which extends liability for injuries caused by defective products to those who merely devised the marketing or advertising scheme under which the product is promoted." *Harmon v. National Auto Parts Association*, 720 F. Supp. 79, 81 (N.D. Miss. 1989). "Persons assisting or providing services to product distributors, while indirectly facilitating the commercial distribution of products, are not subject to liability under the rules of [the Restatement (Third) of Torts]." RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 20 cmt. g. "Thus, commercial firms engaged in advertising products are outside the rules of this Restatement[.]" *Id*. As Plaintiffs concede that the Osborn & Barr Defendants did not manufacture Roundup, their attempt to impose liability on them for an alleged product defect must fail.

In an effort to get around this obvious and dispositive deficiency, Plaintiffs attempt to draw a nexus to the product liability claims against Monsanto by couching their claims against the Osborn & Barr Defendants as being premised on "misrepresentations" in undescribed advertising campaigns for Roundup. Plaintiffs allege that Osborn & Barr falsely asserted unspecified things and suppressed unspecified information about the "safety" of Roundup. While the woefully insufficient nature of those allegations are reason enough to dismiss the Complaint, it suffers from a broader defect; Plaintiffs fail to plead any duty on the part of an advertising agency to independently verify the "safety" of a product prior to or while promoting it. The Complaint asserts that the Osborn & Barr Defendants provided advertising services to Monsanto "until approximately 2012[,]" *see Complaint* at ¶ 86, but it does not allege a single fact that would establish such a duty on the part of an ad agency when promoting what is obviously a

scientifically complex, technical, and multifaceted product. Plaintiffs do not mention anything that the Osborn & Barr Defendants should have done when they purportedly began advertising for Monsanto, or anything they should have done at any other time up to 2012. Absent any supporting facts whatsoever – absent even a single substantive reference to any *law* whatsoever – Plaintiffs want this Court to declare that under the laws of 23 separate states, an advertising agency is obligated to undertake a massive, independent, on-going scientific evaluation of every product it promotes. That notion is absurd. Notwithstanding this glaring defect, there are multiple other reasons the Complaint is fatally defective.

**C. The misrepresentation claims against the Osborn & Barr Defendants fail to state claims upon which relief could be granted.**

Count IV of the Petition is entitled "Fraud, Misrepresentation, and Suppression." It generally alleges that the Osborn & Barr Defendants "fraudulently, intentionally and/or negligently" misrepresented unspecified things about the "safety of Roundup products," and that they likewise "concealed, suppressed or omitted" unspecified information. *See Complaint* at ¶¶ 220-221 . The claim appears to jumble together assertions of both negligent and intentional misrepresentation.

Count V is entitled "Violation of the Consumer Fraud Acts." It alleges the exact same things as Count IV, except it allows for "innocent misrepresentations" and purports that the Defendants' "deception caused injury to Plaintiff [sic] in violation of the Consumer Fraud Act of the Plaintiffs' home states which create private rights of action by Plaintiffs." *See id.* at ¶ 231. Count VI alleges "loss of consortium" for spouses, while Count VII alleges "wrongful death" due to use of Roundup. *Id.* at ¶¶ 242-251. The Complaint is so vague and ambiguous with respect to its claims that it fails to state any legitimate claim for relief.

**1. For the claims premised on fraud, Rule 9 of the Federal Rules of Civil Procedure requires plaintiffs to plead their claims with specificity, which they have not done.**

Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with

particularity. "Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quotations omitted). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Id.* "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id*; *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). The Complaint must be specific enough to give the defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge, and "not just deny that they have done anything wrong." *U.S. ex rel. Costner v. U.S.*, 317 F.3d 883, 889 (8th Cir. 2003).

**(a) The common law fraudulent misrepresentation claims fail.**

Plaintiffs have not pled anything in their Complaint with the requisite specificity, including what the alleged misrepresentations are. The Osborn & Barr Defendants have no way of inferring or discerning in any way what representations any given plaintiff supposedly saw or heard, or when they saw or heard anything. These are vitally important pieces of information, because the Osborn & Barr Defendants' involvement with Roundup products was limited to a certain context and a certain time period; they were not the only advertising agency doing work for Monsanto. For instance, the Osborn & Barr Defendants did not have any role in marketing or advertising Roundup products outside of the commercial agriculture field. So, any plaintiff who claims they bought and used Roundup based on advertisements for 'home and garden' use at a store like Wal-Mart would not have seen or heard anything that involved the Osborn & Barr Defendants. Therefore, permitting plaintiffs to make exceedingly generic assertions that the Osborn & Barr Defendants misrepresented the "safety" of Roundup "through advertisements,

packaging, sales aids, furtive public relations efforts, and other marketing and promotional pieces[,]" *see Complaint* at ¶ 226, fails to give them notice of their supposed fraud, and limits them to merely "deny[ing] that they have done anything wrong." *See U.S. ex rel. Costner*, 317 F.3d at 889.

Furthermore, it is not even apparent within the Complaint what product each plaintiff or decedent used, or what products the Osborn & Barr Defendants supposedly marketed. All of the Plaintiffs merely say that they used "Roundup and/or other Monsanto glyphosate-containing products[,]" while the Osborn & Barr Defendants are alleged to have been "responsible for marketing Roundup and related Monsanto products" until 2012. *See Complaint* at ¶¶ 2-81, 86. If a plaintiff cannot even identify what product they actually used, and cannot say whether the Osborn & Barr Defendants ever actually marketed that product, then they have not pled their claim with the specificity called for by Rule 9. Indeed, those sort of scattershot allegations are the antithesis of specificity.

*VP Racing Fuels, Inc. v. General Petroleum Corp.*, from the Eastern District of this Court, is instructive. In that case, the plaintiff brought claims, under various California laws, asserting that the defendant had misrepresented the octane rating of racing fuel. *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073, 1076 (E.D. Ca. 2009). The Court determined that Rule 9(b)'s heightened pleading standard for fraud applied to the claims. *Id*. at 1085-86. The alleged misrepresentations in the Complaint were that "Defendant, 'in its labeling, marketing and product displays, has misrepresented the nature, characteristics, or qualities of its product by falsely informing consumers that they are purchasing 100 Octane fuel, when in fact they are actually purchasing 97 or less Octane[,]'" and that Defendant was "making or condoning the posting of signage, placards, displays, and other public outcries or proclamations that misrepresent the true octane level of the products they sold and/or caused to be sold to the public." *Id*. at 1088. The Court dismissed Plaintiff's false advertising claim, holding:

> Plaintiff has not identified any advertisements by Defendant but has merely asserted conclusory allegations that Defendant made

> false statements in its advertising. The Court need not accept these conclusory allegations as true. Plaintiff has not alleged any facts as to the substance or even existence of these labeling, marketing and product displays. Therefore, the Court finds that Plaintiff has not satisfied the heightened pleading standard.

*Id*. In this case, the same is true. While Plaintiffs make reference to "marketing" and "advertising," they never say what misrepresentations any given plaintiff ever saw, where they saw it, who said it, or when it was said. All of Plaintiffs' claims in Count IV premised on fraudulent misrepresentation fail.[1]

**(b) The "consumer fraud act" claims likewise fail.**

Plaintiffs' claims under Count V, which are necessarily grounded in fraud, all fail for the same reason as those in Count IV – failure to plead the nature of the misrepresentations with any specificity. They also fail from the sheer generality of the claim, which parrots the allegations of the common law fraud count, but adds that the "deception caused injury to Plaintiff [sic] in violation of the Consumer Fraud Act of the Plaintiffs' home states which create private rights of action by the Plaintiffs." *See Complaint* at ¶ 231.

The Eastern District of Missouri recently dealt with a similar deficient pleading in *Nestle Purina PetCare Co. v. Blue Buffalo Co., Ltd.*, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015). As Judge Sippel explained:

> In Count IX, Blue Buffalo alleges that the counterclaim defendants 'have engaged in misleading, unfair or deceptive acts or practices in the conduct of trade or commerce throughout the United States.' Blue Buffalo then summarily lists citations to statutes of twenty-

[1] These 104 plaintiffs may be in a single lawsuit by virtue of Rule 20(a)'s permissive joinder provision, but that does not relieve each of them of the responsibility to plead facts in support of the essential elements of their own individual claims.

> six different states. It is not clear, on the face of the complaint, which violations the counterclaim defendants are alleged to have committed, what the elements of those violations are, or how any of the factual allegations in the [complaint] constitute a violation under those state statutes. As a result, I cannot say that the claims are plausible or provide the counterclaim defendants with notice of the claims against them. **This type of vague pleading is surely insufficient under the standards of *Iqbal* and *Twombly*.**

*Id*. at *13 (emphasis added). In this case, plaintiffs have not even cited any state statutes, and the Court is left to guess at what "consumer fraud acts" might even apply, or what the elements or limitations of those "acts" might be. Plaintiffs' Complaint is undoubtedly the exact kind of "vague pleading" that fails to pass muster. Therefore, Count V must be dismissed.

**2. Even under Rule 8's pleading requirements, the negligent misrepresentation claims fail.**

The Complaint is so vague and ambiguous that, even without the heightened pleading standard of Rule 9(b), it still fails to state any cognizable claims against the Osborn & Barr Defendants. Under Rule 8(a)(2), a pleading must contain a short and plain statement of the claim, showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs do not make any real distinction between their claims premised on fraud and their claims premised on negligence; everything is just jumbled together. Nonetheless, the allegations are so conclusory that they do not satisfy even Rule 8's requirement. Plaintiffs merely allege that the Osborn & Barr Defendants "misrepresented . . . the safety of Roundup

products" and "concealed, suppressed, or omitted material, adverse information regarding the safety of Roundup[,] *see Complaint* at ¶ 220; that they "misrepresented and concealed, suppressed and omitted that there had been inadequate testing of the safety and efficacy of Roundup, and that prior studies, research, reports, and/or testing had been conducted linking the use of the drug [sic] with serious health events, including non-Hodgkin lymphoma[,]" *see id.* at ¶ 224; and that they "were in a position to know the true facts concerning Roundup while Plaintiffs were not in a position to know the true facts because Defendants overstated the benefits and safety of Roundup and downplayed the risk of lymphoma," *see id.* at ¶ 228. Many of these allegations are downright contradictory and nonsensical – for instance, that one could "conceal" or "suppress" studies, research, reports and testing that are already in the scientific community, or "downplay" the risk of lymphoma prior to 2012 when Plaintiffs claim such "risk" was not announced until 2015 – and was based on all of those same studies, research, reports and testing. More importantly for purposes of this motion, these allegations lack any factual content.

*Gilmore v. DJO, Inc.* is analogous. In that case, the plaintiff claimed he was injured by a pain pump designed to inject a local anesthetic into his shoulder. *Gilmore v. DJO, Inc.*, 663 F.Supp.2d 856, 858 (D. Az. 2009). Among his claims was negligent misrepresentation against AstraZeneca. *Id*. He alleged that the defendants concealed "the true facts known by [them] concerning the safety and efficacy of pain pumps following shoulder surgery[;]" and that they "represented to [plaintiff] and/or his physicians that their products were safe, effective, and would not harm or adversely affect Plaintiff's health[.]" *Id*. at 861. The District Court held that these were only "conclusory allegations that lack the requisite factual information to suggest that plaintiffs' claims are facially plausible." *Id*. There were no factual allegations "as to what misstatements were made by the AstraZeneca defendants, who at AstraZeneca made such statements, to whom the statements were made and when, and why plaintiffs believe any misstatements were made knowingly." *Id*. The complaint was "little more than blanket recitations of legal conclusions, which is not sufficient under the *Twombly/Iqbal* standard." *Id*. Plaintiff had "done little more than allege that the AstraZeneca defendants caused [him] harm,

and under *Twombly* and *Iqbal*, that is not sufficient to withstand a motion to dismiss." *Id*. at 862. The court dismissed these non-fraud claims because they failed to meet even Rule 8's pleading standard. *Id*.

The same result is compelled here. Plaintiffs have not offered any actual factual allegations to support their wholly conclusory allegations. All they have done is exactly what the *Gilmore* plaintiff did – assert ambiguous "misrepresentations" about the "safety" of a product. Plaintiffs' negligent misrepresentation claims must be dismissed.

Furthermore, the Plaintiffs' conclusory reference to the laws of their "home states" is insufficient to state a claim. They are required to plead facts – not mere conclusions – in support of each of the essential elements of their causes of action. *See Cornelius v. DeLuca*, 2009 WL 2568044, at *2, 5 (E.D. Mo. Aug. 18, 2009). They have not done so.

The thirteen Plaintiffs who hail from Illinois provide a perfect example. In Illinois, in order to state a claim for fraud by the intentional concealment of a material fact, "the plaintiff must show the existence of a special or fiduciary relationship with the defendant which would give rise to a duty to speak." *Lewis v. Lead Industries Association, Inc.*, 793 N.E.2d 869 (Ill. App. Ct. 2003). Absent a fiduciary or other legal relationship existing between the parties, a defendant does not have any duty to speak. *Id*. The requisite relationship arises only when plaintiff and defendant are in a fiduciary or confidential relationship, or in a situation where plaintiff places "trust and confidence" in defendant, thereby placing the defendant in a position of influence and superiority over plaintiff. *Benson v. Stafford*, 941 N.E.2d 386, 402 (Ill. App. Ct. 2010). The "trust and confidence" standard "is very similar to the standard for creation of a fiduciary relationship[.]" *Id*. However, "[s]tate and federal courts in Illinois rarely find such an informal relationship to exist in the absence of a formal fiduciary relationship." *H.C. Duke & Sons, LLC v. Prism Marketing Corporation*, 2013 WL 5460209, *4 (C.D. Ill. Sept. 30, 2013). Run-of-the-mill business transactions are not sufficient to establish a fiduciary relationship. *Benson*, 941 N.E.2d at 397. "The bar is high: the party accused of fraudulent concealment must exercise overwhelming influence over the defendant." *H.C. Duke & Sons, LLC*, 2013 WL

5460209 at *4. Yet nowhere in the Petition does any Illinois plaintiff allege a fiduciary relationship with the Osborn & Barr Defendants, or anything that even remotely resembles a fiduciary relationship.

Another example of the pleading deficiencies can be seen with the five Plaintiffs who hail from Texas. In Texas, an essential element of negligent misrepresentation is that "the defendant supplies 'false information' for the guidance of others **in their business**." *Bank of Texas, N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.-Dallas 2013) (emphasis added). Yet not a single one of the Texas Plaintiffs has alleged that they purchased Roundup (or whatever glyphosate-containing product they used) in a business.

These are just two examples, but they demonstrate the applicability of Judge Sippel's observation in the *Nestle Purina* case, that "[t]his type of vague pleading is surely insufficient under the standards of *Iqbal* and *Twombly*." *See Nestle Purina PetCare Co.*, 2015 WL 1782661, at * 13. Plaintiffs' negligent misrepresentation claims against the Osborn & Barr Defendants in count IV must be dismissed because they do not state cognizable claims.

**D. The loss of consortium and wrongful death claims fail.**

Because counts VI (loss of consortium) and VII (wrongful death) against the Osborn & Barr Defendants are premised entirely on these same misrepresentation claims in counts IV and V, they suffer the same defects and must likewise be dismissed for failure to state a claim.

**VI. Conclusion.**

Plaintiffs' Complaint against the Osborn & Barr Defendants does not meet the pleading requirements of either Rule 8 or Rule 9(b). It is devoid of facts; everything is just boilerplate conclusions, with no reference to, or facts supporting, the essential elements of 23 different states' common and statutory laws. As a result, all claims against the Osborn & Barr Defendants must be dismissed for failure to state a claim.

WHEREFORE Defendants Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc. request an Order of the Court dismissing Counts IV, V, VI and VII against them; and for such other relief as the Court deems just in the premises.

Respectfully submitted,

Dated: July 19, 2017

ARMSTRONG TEASDALE LLP

By: /S/ SCOTT T. JANSEN

DAVID G. OTT
(Mo. Bar No. 30449MO)
JOHN F. COWLING
(Mo. Bar No. 30920MO)
SCOTT T. JANSEN
(Mo. Bar No. 57393MO)
7700 Forsythe Blvd., Ste. 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile: (314) 621-5065

Attorneys for Defendants

OSBORN & BARR COMMUNICATIONS, INC. and OSBORN & BARR HOLDINGS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed using the ECF system on this 19th day of July, 2017.

/s/ Scott T. Jansen

-15-

Case No. 3:17-cv-02142-CV
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)

Memorandum in Support of Motion to Dismiss for Failure to State a Claim