DAVID G. OTT (MO. BAR NO. 30449MO)
JOHN F. COWLING (MO. BAR NO. 30929MO)
SCOTT T. JANSEN (MO. BAR NO. 57393MO)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:     314.621.5070
Facsimile:     314.621.5065
dott@armstrongteasdale.com
jcowling@armstrongteasdale.com
sjansen@armstrongteasdale.com

Attorneys for Defendants
OSBORN & BARR COMMUNICATIONS, INC. and
OSBORN & BARR HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This document relates to:<br><br>*Montaigne, et al. v. Monsanto Co., et al.*,<br>Case No. 3:17-cv-03756-VC | Case No. 3:16-md-02741-VC<br>MDL No. 2741<br><br>**OSBORN & BARR DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**JURY TRIAL DEMANDED**<br><br>**HEARING DATE:  August 31, 2017**<br><br>**10:00 A.M.** |

COME NOW Defendants Osborn & Barr Communications, Inc. and Osborn & Barr Holdings, Inc. (collectively, the "Osborn & Barr Defendants"), by and through counsel, and pursuant to Civil L.R. 7-4 provide their Memorandum in Support of their Motion to Dismiss for Failure to State a Claim.

# I.   Table of Contents.

I.      TABLE OF CONTENTS............................................................................2

II.     TABLE OF AUTHORITIES......................................................................3

III.    STATEMENT OF THE ISSUES TO BE DECIDED. .................................4

IV.     STATEMENT OF THE RELEVANT FACTS. ........................................4

V.      ARGUMENT. ............................................................................................4

        A.      Standard on this Motion to Dismiss................................................5

        B.      Plaintiffs' claims against the Osborn & Barr Defendants fail on
                their face because they have not pled any duty under which an
                advertising agency could be liable for personal injuries caused by
                someone else's product.....................................................................5

        C.      The misrepresentation claims against the Osborn & Barr
                Defendants fail to state claims upon which relief could be
                granted................................................................................................7

                1.      For the claims premised on fraud, Rule 9 of the Federal
                        Rules of Civil Procedure requires plaintiffs to plead their
                        claims with specificity, which they have not done. ...........7

                        (a)     The common law fraudulent misrepresentation
                                claims fail........................................................8

                        (b)     The "consumer fraud act" claims likewise fail.....10

                2.      Even under Rule 8's pleading requirements, the negligent
                        misrepresentation claims fail. ..........................................11

        D.      The loss of consortium and wrongful death claims fail.................14

VI.     CONCLUSION.......................................................................................14

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)

Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1

## II.   Table of Authorities.

2

**Cases**

3

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).....................................8

4

*Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957 (8th Cir. 2015) ...........................................5

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 11, 13, 14

6

*Bank of Texas, N.A. v. Glenny*, 405 S.W.3d 310 (Tex. App.-Dallas 2013) ...............................14

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................5, 11, 13, 14

8

*Benson v. Stafford*, 941 N.E.2d 386 (Ill. App. Ct. 2010) ...........................................................13

9

*Cornelius v. DeLuca*, 2009 WL 2568044 (E.D. Mo. Aug. 18, 2009).........................................13

10

*Gilmore v. DJO, Inc.*, 663 F.Supp.2d 856 (D. Az. 2009) .....................................................12, 13

11

*H.C. Duke & Sons, LLC v. Prism Marketing Corporation*, 2013 WL 5460209 (C.D. Ill. Sept. 30,

12

2013) ...................................................................................................................................13, 14

13

*Harmon v. National Auto Parts Association*, 720 F. Supp. 79 (N.D. Miss. 1989).......................6

14

*Lewis v. Lead Industries Association, Inc.*, 793 N.E.2d 869, 876 (Ill. App. Ct. 2003) ...............13

15

*McClinton v. Carson*, 2015 WL 851330 (E.D. Mo. Feb. 26, 2015) .............................................5

16

*Nestle Purina PetCare Co. v. Blue Buffalo Co., Ltd.*, 2015 WL 1782661 (E.D. Mo. Apr. 20,

17

2015) ..........................................................................................................................10, 11, 14

18

*Robbins v. Oklahoma*, 419 F.3d 1242 (10th Cir. 2008)...............................................................5

19

*U.S. ex rel. Costner v. U.S.*, 317 F.3d 883 (8th Cir. 2003) .........................................................8

20

*U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552 (8th Cir. 2006)...............................8

21

*VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073 (E.D. Ca. 2009)..... 9, 10

22

**Other Authorities**

23

RESTATEMENT (THIRD) OF TORTS:  PRODUCT LIABILITY § 20 cmt. g. ...........................................6

24

**Rules**

25

Fed R. Civ. P. Rule 8 ............................................................................................................ 11, 14

26

Fed. R. Civ. P. 12(b)(6)................................................................................................................4

27

Fed. R. Civ. P. 9 ............................................................................................................... passim

28

Case No. 3:17-cv-03756-VC                                        Memorandum in Support of Motion to Dismiss for
(MDL No. 2741, from the E.D. Mo.                                                     Failure to State a Claim
In Re: Roundup Product Liability Litigation)

Fed. R. Civ. P. Rule 20 .......................................................................................... 10

### III.    Statement of the Issues to Be Decided.

Whether Plaintiffs' Complaint states cognizable claims against the Osborn & Barr Defendants, a St. Louis advertising agency and subsidiary corporation, under Fed. R. Civ. P. 12(b)(6) for purported misrepresentations by them in advertising and marketing Monsanto Company's Roundup products.

### IV.    Statement of the Relevant Facts.

This is one of the Monsanto glyphosate herbicide cases within the Multi-District Litigation.  It was originally filed in the Circuit Court of the City of St. Louis, Missouri, then was removed by Monsanto to the U.S. District Court for the Eastern District of Missouri.  Monsanto tagged this case for transfer to the MDL, and the Joint Panel issued a Conditional Transfer Order which was not contested by Plaintiffs, resulting in transfer to this Court.

In this case, 76 different plaintiffs from 18 different states purport to bring claims against the Osborn & Barr Defendants for some combination of:  (i) state common law misrepresentation, (ii) "violation of consumer fraud acts" of the Plaintiffs' various states (iii) loss of consortium, and (iv) wrongful death.  Forty-five plaintiffs claim they developed non-Hodgkin's Lymphoma as a result of exposure to Roundup products.  Twenty-six spouses claim lost consortium of someone who developed non-Hodgkin's Lymphoma.  Although the Complaint is unclear as to the particulars, it appears that five plaintiffs are representatives for people who professedly died from non-Hodgkin's Lymphoma.

### V.    Argument.

Every single claim in the Complaint is premised on the underlying assertion that glyphosate, an ingredient in Monsanto's Roundup products, causes non-Hodgkin's Lymphoma.  Plaintiffs apparently contend that the Osborn & Barr Defendants somehow misrepresented or concealed this "fact" from the consuming public.

That is, however, about as specific as the Plaintiffs get.  The Complaint is a jumbled

1  hodgepodge of vagaries, ambiguities, and contradictions.  It does not set out any real facts.

2  There is nothing from which any legitimate inference can be drawn.  Even under the most liberal

3  pleading standard, it falls well short of being sufficient and should be dismissed for failure to

4  state a claim.

5          **A.**       **Standard on this Motion to Dismiss.**

6      "For a pleading to state a claim for relief it must contain a short and plain statement of the

7  claim showing that the pleader is entitled to relief.  *Ash v. Anderson Merchandisers, LLC*, 799

8  F.3d 957, 960 (8th Cir. 2015).  "The complaint must contain facts sufficient to state a claim that

9  is plausible on its face."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual

10  content that allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged."  *Id*.

12      As part of this inquiry, the court "must identify the allegations in the complaint that are

13  not entitled to the assumption of truth."  *McClinton v. Carson*, 2015 WL 851330, *2 (E.D. Mo.

14  Feb. 26, 2015).  "These include legal conclusions and threadbare recitals of the elements of a

15  cause of action that are supported by mere conclusory statements."  *Id*.  If the allegations in the

16  complaint are "so general that they encompass a wide swath of conduct, much of it innocent,

17  then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"

18  *Robbins v. Oklahoma*, 419 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v.*

19  *Twombly*, 550 U.S. 544, 570 (2007)).

20          **B.**       **Plaintiffs' claims against the Osborn & Barr Defendants fail on their**

21                       **face because they have not pled any duty under which an advertising**

22                       **agency could be liable for personal injuries caused by someone else's**

23                       **product.**

24      Although cast in terms of "misrepresentations" in an advertising campaign, Plaintiffs'

25  claims against the Osborn & Barr Defendants are really nothing more than an attempt to hold an

26  advertising agency liable for bodily injuries supposedly incurred as a result of exposure to a

27  defective product manufactured by an entirely different company.  In other words, Plaintiffs are

28

-5-

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)       Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1   asserting product liability claims against a company that did nothing more than promote the

2   allegedly defective product.  There is no such cause of action.  Even if there were, Plaintiffs have

3   not plead anything resembling a duty on the part of the Osborn & Barr Defendants to

4   independently verify the manufacturer's scientific data regarding a technical, complex product

5   over two decades of providing service.

6          "[T]here is apparently no state which extends liability for injuries caused by defective

7   products to those who merely devised the marketing or advertising scheme under which the

8   product is promoted." *Harmon v. National Auto Parts Association*, 720 F. Supp. 79, 81 (N.D.

9   Miss. 1989).  "Persons assisting or providing services to product distributors, while indirectly

10  facilitating the commercial distribution of products, are not subject to liability under the rules of

11  [the Restatement (Third) of Torts]."  RESTATEMENT (THIRD) OF TORTS:  PRODUCT LIABILITY § 20

12  cmt. g.  "Thus, commercial firms engaged in advertising products are outside the rules of this

13  Restatement[.]"  *Id*.  As Plaintiffs concede that the Osborn & Barr Defendants did not

14  manufacture Roundup, their attempt to impose liability on them for an alleged product defect

15  must fail.

16          In an effort to get around this obvious and dispositive deficiency, Plaintiffs attempt to

17  draw a nexus to the product liability claims against Monsanto by couching their claims against

18  the Osborn & Barr Defendants as being premised on "misrepresentations" in undescribed

19  advertising campaigns for Roundup.  Plaintiffs allege that Osborn & Barr falsely asserted

20  unspecified things and suppressed unspecified information about the "safety" of Roundup.

21  While the woefully insufficient nature of those allegations are reason enough to dismiss the

22  Complaint, it suffers from a broader defect; Plaintiffs fail to plead any duty on the part of an

23  advertising agency to independently verify the "safety" of a product prior to or while promoting

24  it.  The Complaint asserts that the Osborn & Barr Defendants provided advertising services to

25  Monsanto "until approximately 2012[,]" *see Complaint* at ¶ 56, but it does not allege a single fact

26  that would establish such a duty on the part of an ad agency when promoting what is obviously a

27  scientifically complex, technical, and multifaceted product.  Plaintiffs do not mention anything

28

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                    Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1  that the Osborn & Barr Defendants should have done when they purportedly began advertising

2  for Monsanto, or anything they should have done at any other time up to 2012.  Absent any

3  supporting facts whatsoever – absent even a single substantive reference to any *law* whatsoever –

4  Plaintiffs want this Court to declare that under the laws of 18 separate states, an advertising

5  agency is obligated to undertake a massive, independent, on-going scientific evaluation of every

6  product it promotes.  That notion is absurd.  Notwithstanding this glaring defect, there are

7  multiple other reasons the Complaint is fatally defective.

8            **C.**      **The misrepresentation claims against the Osborn & Barr Defendants**

9                      **fail to state claims upon which relief could be granted.**

10        Count IV of the Petition is entitled "Fraud, Misrepresentation, and Suppression."  It

11  generally alleges that the Osborn & Barr Defendants "fraudulently, intentionally and/or

12  negligently" misrepresented unspecified things about the "safety of Roundup products," and that

13  they likewise "concealed, suppressed or omitted" unspecified information.  *See Complaint* at ¶¶

14  189-198.  The claim appears to jumble together assertions of both negligent and intentional

15  misrepresentation.

16        Count V is entitled "Violation of the Consumer Fraud Acts."  It alleges the exact same

17  things as Count IV, except it allows for "innocent misrepresentations" and purports that the

18  Defendants' "deception caused injury to Plaintiff [sic] in violation of the Consumer Fraud Act of

19  the Plaintiffs' home states which create private rights of action by Plaintiffs."  *See id.* at ¶ 200.

20  Count VI alleges "loss of consortium" for spouses, while Count VII alleges "wrongful death"

21  due to use of Roundup.  *Id.* at ¶¶ 212-219.  The Complaint is so vague and ambiguous with

22  respect to its claims that it fails to state any legitimate claim for relief.

23            **1.**      **For the claims premised on fraud, Rule 9 of the Federal Rules**

24                      **of Civil Procedure requires plaintiffs to plead their claims with**

25                      **specificity, which they have not done.**

26        Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with

27  particularity.  "Rule 9(b)'s  particularity requirement demands a higher degree of notice than that

28

-7-

1   required for other claims, and is intended to enable the defendant to respond specifically and

2   quickly to the potentially damaging allegations." *U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*,

3   441 F.3d 552, 556 (8th Cir. 2006) (quotations omitted).  "To satisfy the particularity requirement

4   of Rule 9(b), the complaint must plead such facts as the time, place and content of the

5   defendant's false representations, as well as the details of the defendant's fraudulent acts,

6   including when the acts occurred, who engaged in them, and what was obtained as a result." *Id*.

7   "Put another way, the complaint must identify the 'who, what, where, when, and how' of the

8   alleged fraud." *Id*; *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir.

9   2001).  The Complaint must be specific enough to give the defendants notice of the particular

10  misconduct which is alleged to constitute the fraud charged so that they can defend against the

11  charge, and "not just deny that they have done anything wrong." *U.S. ex rel. Costner v. U.S.*,

12  317 F.3d 883, 889 (8th Cir. 2003).

13              a)      **The common law fraudulent misrepresentation claims**

14                      **fail.**

15          Plaintiffs have not pled anything in their Complaint with the requisite specificity,

16  including what the alleged misrepresentations are.  The Osborn & Barr Defendants have no way

17  of inferring or discerning in any way what representations any given plaintiff supposedly saw or

18  heard, or when they saw or heard anything.  These are vitally important pieces of information,

19  because the Osborn & Barr Defendants' involvement with Roundup products was limited to a

20  certain context and a certain time period; they were not the only advertising agency doing work

21  for Monsanto.  For instance, the Osborn & Barr Defendants did not have any role in marketing or

22  advertising Roundup products outside of the commercial agriculture field.  So, any plaintiff who

23  claims they bought and used Roundup based on advertisements for 'home and garden' use at a

24  store like Wal-Mart would not have seen or heard anything that involved the Osborn & Barr

25  Defendants.  Therefore, permitting plaintiffs to make exceedingly generic assertions that the

26  Osborn & Barr Defendants misrepresented the "safety" of Roundup "through the advertisements,

27  packaging, sales aids, furtive public relations efforts, and other marketing and promotional

28

-8-

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                                    Memorandum in Support of Motion to Dismiss for
                                                                                 Failure to State a Claim

1  pieces[,]" *see Complaint* at ¶ 195, fails to give them notice of their supposed fraud, and limits

2  them to merely "deny[ing] that they have done anything wrong." *See U.S. ex rel. Costner*, 317

3  F.3d at 889.

4         Furthermore, it is not even apparent within the Complaint what product each plaintiff or

5  decedent used, or what products the Osborn & Barr Defendants supposedly marketed.  All of the

6  Plaintiffs merely say that they used "Roundup and/or other Monsanto glyphosate-containing

7  products[,]" while the Osborn & Barr Defendants are alleged to have been "responsible for

8  marketing Roundup and related Monsanto products" until 2012.  *See Complaint* at ¶¶ 2-51, 56.

9  If a plaintiff cannot even identify what product they actually used, and cannot say whether the

10  Osborn & Barr Defendants ever actually marketed that product, then they have not pled their

11  claim with the specificity called for by Rule 9.  Indeed, those sort of scattershot allegations are

12  the antithesis of specificity.

13         *VP Racing Fuels, Inc. v. General Petroleum Corp.*, from the Eastern District of this

14  Court, is instructive.  In that case, the plaintiff brought claims, under various California laws,

15  asserting that the defendant had misrepresented the octane rating of racing fuel.  *VP Racing*

16  *Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073, 1076 (E.D. Ca. 2009).  The Court

17  determined that Rule 9(b)'s heightened pleading standard for fraud applied to the claims.  *Id.* at

18  1085-86.  The alleged misrepresentations in the Complaint were that "Defendant, 'in its labeling,

19  marketing and product displays, has misrepresented the nature, characteristics, or qualities of its

20  product by falsely informing consumers that they are purchasing 100 Octane fuel, when in fact

21  they are actually purchasing 97 or less Octane[,]'" and that  Defendant was "making or

22  condoning the posting of signage, placards, displays, and other public outcries or proclamations

23  that misrepresent the true octane level of the products they sold and/or caused to be sold to the

24  public."  *Id.* at 1088.  The Court dismissed Plaintiff's false advertising claim, holding:

25         Plaintiff has not identified any advertisements by Defendant but

26         has merely asserted conclusory allegations that Defendant made

27         false statements in its advertising.  The Court need not accept these

28

1          conclusory allegations as true.  Plaintiff has not alleged any facts

2          as to the substance or even existence of these labeling, marketing

3          and product displays.  Therefore, the Court finds that Plaintiff has

4          not satisfied the heightened pleading standard.

5  *Id*.  In this case, the same is true.  While Plaintiffs make reference to "marketing" and

6  "advertising," they never say what misrepresentations any given plaintiff ever saw, where they

7  saw it, who said it, or when it was said.  All of Plaintiffs' claims in Count IV premised on

8  fraudulent misrepresentation fail.[1]

9              **b)**        **The "consumer fraud act" claims likewise fail.**

10        Plaintiffs' claims under Count V, which are necessarily grounded in fraud, all fail for the

11  same reason as those in Count IV – failure to plead the nature of the misrepresentations with any

12  specificity.  They also fail from the sheer generality of the claim, which parrots the allegations of

13  the common law fraud count, but adds that the "deception caused injury to Plaintiff [sic] in

14  violation of the Consumer Fraud Act of the Plaintiffs' home states which create private rights of

15  action by the Plaintiffs."  *See Complaint* at ¶ 200.

16        The Eastern District of Missouri recently dealt with a similar deficient pleading in *Nestle*

17  *Purina PetCare Co. v. Blue Buffalo Co., Ltd.*, 2015 WL 1782661 (E.D. Mo. Apr. 20, 2015).  As

18  Judge Sippel explained:

19          In Count IX, Blue Buffalo alleges that the counterclaim defendants

20          'have engaged in misleading, unfair or deceptive acts or practices

21          in the conduct of trade or commerce throughout the United States.'

22          Blue Buffalo then summarily lists citations to statutes of twenty-

23          six different states.  It is not clear, on the face of the complaint,

24

25

26  [1] These 76 plaintiffs may be in a single lawsuit by virtue of Rule 20(a)'s permissive joinder

27  provision, but that does not relieve each of them of the responsibility to plead facts in support of

28  the essential elements of their own individual claims.

-10-

1   which violations the counterclaim defendants are alleged to have

2   committed, what the elements of those violations are, or how any

3   of the factual allegations in the [complaint] constitute a violation

4   under those state statutes.  As a result, I cannot say that the claims

5   are plausible or provide the counterclaim defendants with notice of

6   the claims against them.  **This type of vague pleading is surely**

7   **insufficient under the standards of *Iqbal* and *Twombly*.**

8   *Id*. at *13 (emphasis added).  In this case, plaintiffs have not even cited any state statutes, and the

9   Court is left to guess at what "consumer fraud acts" might even apply, or what the elements or

10  limitations of those "acts" might be.  Plaintiffs' Complaint is undoubtedly the exact kind of

11  "vague pleading" that fails to pass muster. Therefore, Count V must be dismissed.

12          **2.      Even under Rule 8's pleading requirements, the negligent**

13                  **misrepresentation claims fail.**

14          The Complaint is so vague and ambiguous that, even without the heightened pleading

15  standard of Rule 9(b), it still fails to state any cognizable claims against the Osborn & Barr

16  Defendants.  Under Rule 8(a)(2), a pleading must contain a short and plain statement of the

17  claim, showing that the pleader is entitled to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78

18  (2009).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

19  allegations,' but it demands more than unadorned, the-defendant-unlawfully-harmed-me

20  accusation."  *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A

21  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

22  of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).

23          Plaintiffs do not make any real distinction between their claims premised on fraud and

24  their claims premised on negligence; everything is just jumbled together.  Nonetheless, the

25  allegations are so conclusory that they do not satisfy even Rule 8's requirement.  Plaintiffs

26  merely allege that the Osborn & Barr Defendants "misrepresented . . . the safety of Roundup

27  products" and "concealed, suppressed, or omitted material, adverse information regarding the

28

-11-

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                                    Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1   safety of Roundup[,] *see Complaint* at ¶ 189; that they "misrepresented and concealed,

2   suppressed and omitted that there had been inadequate testing of the safety and efficacy of

3   Roundup, and that prior studies, research, reports, and/or testing had been conducted linking the

4   use of the drug [sic] with serious health events, including non-Hodgkin lymphoma[,]" *see id.* at ¶

5   193; and that they "were in a position to know the true facts concerning Roundup while Plaintiffs

6   were not in a position to know the true facts because Defendants overstated the benefits and

7   safety of Roundup and downplayed the risk of lymphoma," *see id.* at ¶ 197.  Many of these

8   allegations are downright contradictory and nonsensical – for instance, that one could "conceal"

9   or "suppress" studies, research, reports and testing that are already in the scientific community,

10  or "downplay" the risk of lymphoma prior to 2012 when Plaintiffs claim such "risk" was not

11  announced until 2015 – and was based on all of those same studies, research, reports and testing.

12  More importantly for purposes of this motion, these allegations lack any factual content.

13          *Gilmore v. DJO, Inc.* is analogous.  In that case, the plaintiff claimed he was injured by a

14  pain pump designed to inject a local anesthetic into his shoulder.  *Gilmore v. DJO, Inc.*, 663

15  F.Supp.2d 856, 858 (D. Az. 2009).  Among his claims were negligent misrepresentation against

16  AstraZeneca.  *Id*.  He alleged that the defendants concealed "the true facts known by [them]

17  concerning the safety and efficacy of pain pumps following shoulder surgery[;]" and that they

18  "represented to [plaintiff] and/or his physicians that their products were safe, effective, and

19  would not harm or adversely affect Plaintiff's health[.]"  *Id*. at 861.  The District Court held that

20  these were only "conclusory allegations that lack the requisite factual information to suggest that

21  plaintiffs' claims are facially plausible."  *Id*.  There were no factual allegations "as to what

22  misstatements were made by the AstraZeneca defendants, who at AstraZeneca made such

23  statements, to whom the statements were made and when, and why plaintiffs believe any

24  misstatements were made knowingly."  *Id*.  The complaint was "little more than blanket

25  recitations of legal conclusions, which is not sufficient under the *Twombly/Iqbal* standard."  *Id*.

26  Plaintiff had "done little more than allege that the AstraZeneca defendants caused [him] harm,

27  and under *Twombly* and *Iqbal*, that is not sufficient to withstand a motion to dismiss."  *Id*. at 862.

28

-12-

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                              Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1   The court dismissed these non-fraud claims because they failed to meet even Rule 8's pleading

2   standard.  *Id*.

3            The same result is compelled here.  Plaintiffs have not offered any actual factual

4   allegations to support their wholly conclusory allegations.  All they have done is exactly what the

5   *Gilmore* plaintiff did – assert ambiguous "misrepresentations" about the "safety" of a product.

6   Plaintiffs' negligent misrepresentation claims must be dismissed.

7            Furthermore, the Plaintiffs' conclusory reference to the laws of their "home states" is

8   insufficient to state a claim.  They are required to plead facts – not mere conclusions – in support

9   of each of the essential elements of their causes of action.  *See Cornelius v. DeLuca*, 2009 WL

10   2568044, at *2, 5 (E.D. Mo. Aug. 18, 2009).  They have not done so.

11           The six Plaintiffs who hail from Illinois provide a perfect example.  In Illinois, in order to

12   state a claim for fraud by the intentional concealment of a material fact, "the plaintiff must show

13   the existence of a special or fiduciary relationship with the defendant which would give rise to a

14   duty to speak."  *Lewis v. Lead Industries Association, Inc.*, 793 N.E.2d 869 (Ill. App. Ct. 2003).

15   Absent a fiduciary or other legal relationship existing between the parties, a defendant does not

16   have any duty to speak.  *Id*.  The requisite relationship arises only when plaintiff and defendant

17   are in a fiduciary or confidential relationship, or in a situation where plaintiff places "trust and

18   confidence" in defendant, thereby placing the defendant in a position of influence and superiority

19   over plaintiff.  *Benson v. Stafford*, 941 N.E.2d 386, 402 (Ill. App. Ct. 2010).  The "trust and

20   confidence" standard "is very similar to the standard for creation of a fiduciary relationship[.]"

21   *Id*.  However, "[s]tate and federal courts in Illinois rarely find such an informal relationship to

22   exist in the absence of a formal fiduciary relationship."  *H.C. Duke & Sons, LLC v. Prism*

23   *Marketing Corporation*, 2013 WL 5460209, *4 (C.D. Ill. Sept. 30, 2013).  Run-of-the-mill

24   business transactions are not sufficient to establish a fiduciary relationship.  *Benson*, 941 N.E.2d

25   at 397.  "The bar is high:  the party accused of fraudulent concealment must exercise

26   overwhelming influence over the defendant."  *H.C. Duke & Sons, LLC*, 2013 WL 5460209 at *4.

27   Yet nowhere in the Petition does any Illinois plaintiff allege a fiduciary relationship with the

28

-13-

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                    Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

1   Osborn & Barr Defendants, or anything that even remotely resembles a fiduciary relationship.

2       Another example of the pleading deficiencies can be seen with the nine Plaintiffs who

3   hail from Texas.  In Texas, an essential element of negligent misrepresentation is that "the

4   defendant supplies 'false information' for the guidance of others **in their business**." *Bank of*

5   *Texas, N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.-Dallas 2013) (emphasis added).  Yet not

6   a single one of the Texas Plaintiffs has alleged that they purchased Roundup (or whatever

7   glyphosate-containing product they used) in a business.

8       These are just two examples, but they demonstrate the applicability of Judge Sippel's

9   observation in the *Nestle Purina* case, that "[t]his type of vague pleading is surely insufficient

10  under the standards of *Iqbal* and *Twombly*."  *See Nestle Purina PetCare Co.*, 2015 WL 1782661,

11  at * 13.  Plaintiffs' negligent misrepresentation claims against the Osborn & Barr Defendants in

12  count IV must be dismissed because they do not state cognizable claims.

13                  **D.    The loss of consortium and wrongful death claims fail.**

14       Because counts VI (loss of consortium) and VII (wrongful death) against the Osborn &

15  Barr Defendants are premised entirely on these same misrepresentation claims in counts IV and

16  V, they suffer the same defects and must likewise be dismissed for failure to state a claim.

17          **VI.    Conclusion.**

18       Plaintiffs' Complaint against the Osborn & Barr Defendants does not meet the pleading

19  requirements of either Rule 8 or Rule 9(b).  It is devoid of facts; everything is just boilerplate

20  conclusions, with no reference to, or facts supporting, the essential elements of 18 different

21  states' common and statutory laws.  As a result, all claims against the Osborn & Barr Defendants

22  must be dismissed for failure to state a claim.

23       WHEREFORE Defendants Osborn & Barr Communications, Inc. and Osborn & Barr

24  Holdings, Inc. request an Order of the Court dismissing Counts IV, V, VI and VII against them;

25  and for such other relief as the Court deems just in the premises.

26                                  Respectfully submitted,

27

28

Case No. 3:17-cv-03756-VC
(MDL No. 2741, from the E.D. Mo.
In Re: Roundup Product Liability Litigation)                    Memorandum in Support of Motion to Dismiss for
Failure to State a Claim

Dated:  July 19, 2017                          ARMSTRONG TEASDALE LLP


                                               /S/ SCOTT T. JANSEN
                                          By:  DAVID G. OTT
                                               (Mo. Bar No. 30449MO)
                                               JOHN F. COWLING
                                               (Mo. Bar No. 30920MO)
                                               SCOTT T. JANSEN
                                               (Mo. Bar No. 57393MO)
                                               7700 Forsythe Blvd., Ste. 1800
                                               St. Louis, Missouri 63105
                                               Telephone: (314) 621-5070
                                               Facsimile:  (314) 621-5065


                                               Attorneys for Defendants

                                               OSBORN & BARR COMMUNICATIONS,
                                               INC. and OSBORN & BARR HOLDINGS,
                                               INC.



                          **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that the foregoing was filed using the ECF system on

this 19th day of July, 2017.


                                               /s/ Scott T. Jansen