R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 2741<br><br>**NOTICE OF MOTION AND MOTION TO CLARIFY RULINGS RELATED TO CONFIDENTIALITY OF DOCUMENTS** |

## NOTICE OF MOTION

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, September 21, 2017, at 10:00 a.m. in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiffs in the above captioned case will move for an order clarifying the scope of Pretrial Orders ("PTOs") Nos. 15 & 20. The Motion will be based on this Notice, the memorandum in support, as well as the pleadings, records, and files in this action, and such other further evidence and argument as may be presented at the time of the hearing.

DATED:  August 1, 2017                                  Respectfully submitted,

                                                                              BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.

                                                                              By: */s/ R. Brent Wisner*
                                                                              R. Brent Wisner, Esq. (SBN: 276023)
                                                                              rbwisner@baumhedlundlaw.com
                                                                              12100 Wilshire Blvd., Suite 950
                                                                              Los Angeles, CA 90025
                                                                              Telephone:  (310) 207-3233
                                                                              Facsimile:  (310) 820-7444

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION ........................................................................................................................1

TABLE OF CONTENTS ..................................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................................... ii

INTRODUCTION ...............................................................................................................................1

BACKGROUND .................................................................................................................................2

    I.    Procedure for Correcting Over-Designation of Documents ...........................................2

    II.    Shortly after PTO No. 20 and the Courts Admonishment of Plaintiffs, Monsanto Begins Selectively Giving Deposition Testimony to the Press .....................................4

    III.    Consistent with the Court's Procedure for Challenging Confidentiality, Plaintiffs Identified 84 Documents Which Were Improperly Designated "Confidential" and Are Relevant to the General Causation Phase of this Litigation ...........................................5

    IV.    Monsanto Tells Plaintiffs to, Literally, "Go Away" and Refuses to Engage in Any Document by Document Meet-and-Confer Regarding the Confidentiality of the Challenged Documents .....................................................................................................7

    V.    Monsanto Waived Any Claim to Confidentiality to the Challenged Documents by Failing to File a Motion Pursuant to Paragraph 16.3 of the Protective Order ................7

ARGUMENT .......................................................................................................................................8

    I.    To the Extent PTO No. 15 Imposes a Requirement that Plaintiffs Demonstrate that a Document Is "Relevant" before Being Subject to a Confidentiality Challenge, the Order Violates Rule 26(c) and Should Be Vacated .......................................................8

    II.    To the Extent PTO No. 20 Requires Plaintiffs to Demonstrate that a Document Serves a "Litigation Need" before Being Subject to a Confidentiality Challenge It Violates Rule 26(c) and Should be Vacated ................................................................................10

    III.    To the Extent PTO Nos. 15 & 20 Impose Blanket Restrictions about Which Documents Will be Protected from Public Disclosure, such a Restriction Is an Unconstitutional Prior Restraint ..................................................................................11

CONCLUSION ..................................................................................................................................14

# TABLE OF AUTHORITIES

Pages

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ................................................................................................9, 12, 13

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*,
    178 F.3d 943 (7th Cir. 1999) ..............................................................................................................12

*Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
    No. 14CV 1191-JLS(KSC), 2015 WL 12466532, at *4 (S.D. Cal. July 16, 2015) ........................9

*First National Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978) ..............................................................................................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) .............................................................................................9, 10, 12

*Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*,
    860 F.3d 1244, No. 14-35086, 2017 WL 2766091 (9th Cir. June 27, 2017) ..............................12

*Humboldt Baykeeper v. Union Pac. R. Co.*,
    244 F.R.D. 560 (N.D. Cal. 2007) ...................................................................................................10, 14

*In re Halkin*,
    598 F.2d 176 (D.C. Cir. 1979) .......................................................................................................8, 12

*In re Roman Catholic Archbishop of Portland in Oregon*,
    661 F.3d 417 (9th Cir. 2011) ...........................................................................................................8, 11

*Kennedy v. Monsanto Company*,
    16CM-CC00001 (Mo. Cir. Ct.) ...............................................................................................................4

*Levine v. U.S. Dist. Court*,
    764 F.2d 590 (9th Cir. 1985) ............................................................................................................13

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
    No. C-06-1066 PHJ EMC, 2007 WL 4169628 (N.D. Cal. Nov. 20, 2007) ....................................9

*Phillips v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ...................................................................................................8, 10

*Pub. Citizen v. Liggett Grp.*, Inc.,
    858 F.2d 775 (1st Cir. 1988)..............................................................................................................13

*Sampson v. City of El Centro*,
    No. 14CV1807-L (DHB), 2015 WL 11658713 (S.D. Cal. Aug. 31, 2015)...................................11

*San Jose Mercury News, Inc. v. U.S. Dist. Court*,
    187 F.3d 1096 (9th Cir. 1999) ..................................................................................................8, 13

# INTRODUCTION

Throughout the confidentiality process, Monsanto has essentially refused to participate in any meaningful meet-and-confer regarding documents designated as confidential, telling Plaintiffs' counsel recently, literally, to "go away" and citing this Court's PTO Nos. 15 & 20 as a basis for refusing to cooperate. At the outset of this litigation, Plaintiffs attempted to follow the procedures outlined in the Court's Protective Order by identifying specific documents that should be de-designated and attempting to meet-and-confer with Monsanto. At almost every turn, Monsanto refused to go through each document and explain, as required by the Protective Order, why each document was entitled to protection under Rule 26(c). Instead, Monsanto forced Plaintiffs to file motions, limited to this Court's joint letter process, with no exhibits or extensive legal argument. This had the practical result of shifting the burden of going through these documents to determine whether they actually contain confidential information away from Monsanto, as required by the Protective Order, and onto this Court in the context of a motion to seal. In response, the Court erected new "requirements" concerning confidentiality—requirements designed to limit the ability of Plaintiffs to challenge documents. Specifically, according to Monsanto, PTO Nos. 15 & 20 modified the Protective Order by requiring Plaintiffs to show that any challenged document was (1) relevant and (2) served a litigation need. And, according to Monsanto, there is no need to justify confidentiality designations unless the document was both relevant and served a litigation need. Monsanto's subjective view of the challenged documents has revealed that no document is relevant or serves a litigation need.

Plaintiffs do not believe that the Court intended PTO Nos. 15 & 20 to give Monsanto *carte blanche* over the confidentiality of documents. Nor do Plaintiffs believe that the Court's orders were issued with the benefit of complete briefing. However, unless the Court provides clarification, Plaintiffs are hamstrung and Monsanto will continue to tell Plaintiffs to "go away."

Substantively, to the extent that PTO Nos. 15 & 20 did erect new barriers, as discussed below, those new requirements are legally invalid. Requiring Plaintiffs to demonstrate that a document unilaterally designated as confidential is "relevant" or serves "a litigation need" before being

1

PLAINTIFFS' MOTION TO CLARIFY RULINGS RELATED TO CONFIDENTIALITY OF DOCUMENTS

challenged, violates Rule 26(c) by giving protection to discovery material without a showing (by Monsanto) and a finding (by the Court) of good cause. Ninth Circuit case law is clear—as soon as a document is challenged, regardless of whether that document is relevant or serves a litigation need, it can only be protected from public disclosure with a particularized showing *and* finding of good cause. Any order that allows for the protection of documents without good cause is *per se* invalid.

Moreover, if PTO Nos. 15 & 20 are interpreted the way Monsanto claims, then the orders are also unconstitutional. Plaintiffs and their counsel have a First Amendment right to share discovery material with anyone they see fit. Any order restricting that right must serve a substantial government interest and not be overly restrictive. If PTO Nos. 15 & 20 are construed the way Monsanto claims, the orders do not serve a substantial government interest and are not sufficiently tailored to avoid needless suppression of free speech. As interpreted by Monsanto, PTO Nos. 15 & 20 qualify as unconstitutional prior restraint and must be vacated.

Plaintiffs respectfully request that this Court clarify that (1) to the extent that PTO Nos. 15 & 20 modified the Protective Order, they are vacated; (2) Plaintiffs are permitted to challenge the confidentiality of documents under the Protective Order, regardless of whether the document is relevant or serves a litigation need; and (3) Monsanto must start acting in good faith and provide, document-by-document, justification for the confidentiality of documents when challenged by Plaintiffs under the terms of the Protective Order.

## BACKGROUND

### I. Procedure for Correcting Over-Designation of Documents

This Court entered the Protective Order governing this litigation on December 9, 2016 (Dkt. 64). Under the Protective Order, the parties stipulated "that this Order ***does not confer blanket protections on all disclosures or responses to discovery*** and that the protection it affords from public disclosure and use ***extends only*** to the information or items that are entitled to confidential treatment under the applicable legal principles." Protective and Confidentiality Order ("PO") ¶ 2 (Dec. 9, 2016, Dkt. 64) (emphasis added). Additionally, the parties stipulated that "[d]ue to the complexity of this action . . . and to facilitate the flow of discovery material . . . the producing party may designate

an entire document as 'Confidential' if it believes in good faith that any part of the document is confidential or if the document falls within a category of documents that the designating party believes is likely to contain a large volume of Confidential material." *Id.* ¶ 4.  Recognizing the importance of expediting discovery, the parties agreed that "[i]f it comes to the designating party's attention that information or items that it designated for protection do not qualify for protection, that designating party *must* promptly notify all other Parties that it is withdrawing its mistaken designation." *Id.* ¶ 5 (emphasis added).  Thus, by the express terms of the Protective Order, each side is charged with an affirmative duty to correct over-designations promptly.

Sections 16.2 and 16.3 of the Protective Order outline the process for challenging the confidentiality of documents.  It starts with the challenging party issuing a letter specifying "each designation it is challenging and describing the basis for each challenge." *Id.* ¶ 16.2.  Once that letter is issued, the parties "shall attempt to resolve each challenge in good faith . . . by conferring directly . . . within 14 days[.]" *Id.*  During that meet-and-confer, "the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation." *Id.*  If the parties reach an impasse, then it goes to the Court.  Specifically, the designating party must file a motion to maintain confidentiality within 30 days of the initial notice or else "automatically waive the confidentiality designation for each challenged designation." *Id.* ¶ 16.3.  Additionally, "the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause[.]" *Id.*  Importantly, "[t]he burden of persuasion in any such challenge proceeding shall be on the Designating Party[.]" *Id.*

On March 13, 2017, the Court entered Pretrial Order No. 15, which stated that "the Court will not entertain any challenge by the plaintiffs to a confidentiality designation unless they can explain why the document is likely to be relevant in the litigation." PTO No. 15 at 4 (Dkt. 21).  As discussed below, Monsanto claims that this order supplanted the Protective Order by requiring Plaintiffs to demonstrate why a document is relevant before being challenged.

1  On May 1, 2017, the Court entered Pretrial Order No. 20. As part of the order, the Court was concerned that "the plaintiffs have adopted a practice of attempting to get documents publicly released by attaching them to motions unnecessarily, then hoping the Court will deny requests to seal documents that shouldn't have been filed in the first place." PTO No. 20 at 1-2 (Dkt. 266).[1] The Court instructed Plaintiffs that confidentiality challenges should be done through the procedure outline in Section 16.2, not by attaching unrelated documents to motions.[2] The Court stated:

> [T]he Court has erred on the side of requiring Monsanto to produce more rather than less information, and because it has required Monsanto to produce that information at a rapid pace,[3] Monsanto will be forgiven if it, in turn, errs on the side of caution in designating discovery material as confidential. In this phase of the MDL, the proper remedy for overdesignation is to correct the discrete instances of overdesignation that require correction given the needs of the litigation. The plaintiffs will not be permitted to use this lawsuit as a means of feeding the media documents that aren't actually relevant to the lawsuit.

*Id.* at 2. Monsanto has interpreted this language as modifying the confidentiality-challenging scheme, adding an additional requirement and burden on Plaintiffs to establish why any particular document's de-designation serves a "litigation need."

**II.  Shortly after PTO No. 20 and the Courts Admonishment of Plaintiffs, Monsanto Begins Selectively Giving Deposition Testimony to the Press**

Shortly after this Court admonished Plaintiffs (but not Monsanto) for "litigating in the media[,]" Monsanto gave portions of the deposition of Aaron Blair, a member of the IARC working group, to

---

[1] Plaintiffs' counsel do not agree that they attached documents to motion for non-litigation purposes.
[2] Plaintiffs used the sealing process as a method of challenging document because Monsanto refused to go through each identified document, one by one, and work out a compromise. The only way to get Monsanto to take an actual position with regard to confidentiality was to force the issue through a motion to seal. Clearly this approach backfired, and consistent with this Court's comments, Plaintiffs will not attach unrelated documents to future Court filings.
[3] The factual basis of this assertion by Monsanto is unclear. The Court accepted Monsanto's excessive over-designation of documents (over 85% of all produced documents) because the Court believes it forced Monsanto to produce those documents at a rapid pace. The problem, however, is that the vast majority of documents produced in this litigation were produced by Monsanto in a different case, *Kennedy v. Monsanto Company*, 16CM-CC00001 (Mo. Cir. Ct.), *nine* months before this Court even entered a protective order in this MDL, Dkt. 64 (Dec. 9, 2016) or ordered Monsanto to produce significant discovery in the MDL. And, most of the documents that have been the subject of confidentiality challenge recently, were produced on August 1, 2016, four months before this Court entered the governing protective order.

numerous news organizations including Reuters.[4]  *See* Kate Kelland, *Cancer agency left in the dark over glyphosate evidence*, Reuters (June 14, 2017) available at https://www.reuters.com/investigates/special-report/glyphosate-cancer-data/ ("Previously unreported court documents reviewed by Reuter . . . In a sworn deposition given in March this year in connection with the case . . ."); *but see* Carey Gilliam, *Monsanto Spin Doctors Target Cancer Scientist in Flawed Reuters Story*, Huffington Post (June 16, 2017) (discussing the blatant factual errors in the Reuters article) *available at* http://www.huffingtonpost.com/entry/monsanto-spin-doctors-target-cancer-scientist-in-flawed_us_594449eae4b0940f84fe2e57. What makes Monsanto's conduct unsettling, however, is that while Monsanto unilaterally gave the Blair deposition to Reuters and other news organizations, it failed to disclose the deposition of Dr. Mathew Ross, which had been designated as confidential by Monsanto at that time, another member of the IARC working group who offered contradicting and clarifying testimony.[5]  Thus, by dictating which testimony sees the light of day, Monsanto "feeds" the media using litigation documents and testimony it chooses to de-designate.  And yet, in the same breath, Monsanto accuses Plaintiffs of feeding the press and then uses this "fact" as grounds for preventing Plaintiffs from challenging designation of documents.

**III.  Consistent with the Court's Procedure for Challenging Confidentiality, Plaintiffs Identified 84 Documents Which Were Improperly Designated "Confidential" and Are Relevant to the General Causation Phase of this Litigation**

---

[4] Monsanto also submitted the deposition of Dr. Blair, and nearly all of the accompanying exhibits, to the Office of Environmental Health Hazard Assessment (OEHHA), arguing that his testimony discredited IARC's glyphosate determination and that the state should reconsider listing glyphosate as a substance known to the state of California to cause cancer.  *See* Exh. D, Letter from Phillip W. Miller, Vice President of Global Affairs, Monsanto Company to Carol Monahan-Cummings, Chief Counsel of OEHHA, at 1-4 (June 20, 2017) *available at* https://oehha.ca.gov/media/downloads/proposition65/crnr/comments/monsantopetition06202017.pdf.  OEHHA rejected the bid.  Exh. E, Letter from Allan Hirsch, Chief Deputy Director, OEHHA, to Dr. Phillip W. Miller, Vice President of Global Corporate Affairs, Monsanto at 1-2 (Jul. 26, 2017), *available at* https://oehha.ca.gov/media/downloads/proposition-65/crnr/comments/letterphilipmiller06262017.pdf.

[5] It should also be noted, that at the beginning of the Blair deposition, which was a third party, Monsanto designated the entire transcript and all exhibits as confidential. Monsanto does this because it needs 30 days to evaluate the transcript for confidentiality. However, mid-way through the deposition, and before it was even completed, Monsanto de-designated entire transcript and the exhibits (except for questions relating to one exhibit). The purpose was clear: they intended to give it to the media.

5
PLAINTIFFS' MOTION TO CLARIFY RULINGS RELATED TO CONFIDENTIALITY OF DOCUMENTS

On June 30, 2017, Plaintiffs sent a letter, pursuant to Section 16.2 of the Protective Order, challenging Monsanto's confidentiality designations of 84 documents. Exh. A, Letter from R. Brent Wisner to Joe Hollingsworth et al at 1-2 (June 30, 2017). Attached to the letter was a 28-page chart, listing out each document, summarizing the relevant portions, and explaining why the specific document was relevant to the issue of general causation. *Id.* at 3-30. Additionally, Plaintiffs redacted all personal information from the documents and sent a hyperlink of the documents to Monsanto to facilitate review. *Id.* at 2. In the letter, Plaintiffs stressed:

> As you know, in the Court's Pre-Trial Order 20, the Court stated that "[i]n this phase of the MDL, the proper remedy for overdesignation is to correct the discrete instances of overdesignation that require correction given the needs of the litigation" and instructed the Parties to comply with the meet-and-confer process outlined in Section 16.2 of the Protective Order. . . . [T]his letter and the requested meet-and-confer is your chance to address a discrete set of documents, identified in the attached chart, and correct Monsanto's overdesignations. It is my sincere hope that through the meet-and-confer process we can avoid burdening the Court with having to review these documents and this confidentiality dispute can be resolved without Court intervention.
>
> . . . [Y]ou have fourteen (14) days to conduct a good-faith review of these documents and let us know whether you will be withdrawing these confidentiality designations, thus avoiding the need for any motion.

*Id.*

In response to the letter, Monsanto agreed to meet-and-confer on July 13, 2017, exactly fourteen days after Plaintiffs' served the letter. Concerned that Monsanto might not be fully prepared to discuss each document to determine whether the confidentiality designation should be retracted, Plaintiffs' counsel sent a follow-up email on July 10, 2017, stating:

> The date of our meet and confer (Thursday July 13) falls on the eve of the 14 day meet and confer deadline. Thus, we expect that you will have reviewed the challenges and determined which documents have been inappropriately designated confidential and which you still contend are confidential and why. To facilitate your review, please find attached the challenged documents chart with two additional columns where you may indicate your position with respect to each challenge. If you agree that a specific document will be de-designated, simply check the "Agree" box, or if you disagree with the challenge, please provide an explanation in the "Disagree" box.

Exh. B, Email Exchanges at 1. Plaintiffs were ready to do exactly what this Court repeatedly instructed the parties to do—go through each document and see if, through compromise and common

sense, the parties could resolve the confidentiality issue without Court intervention.

### IV. Monsanto Tells Plaintiffs to, Literally, "Go Away" and Refuses to Engage in Any Document by Document Meet-and-Confer Regarding the Confidentiality of the Challenged Documents

The parties met by phone on July 13, 2017. And, consistent with its practice of dictating the terms of confidentiality challenges, Monsanto refused to discuss any document or explain why any document was properly designated confidential, i.e., contained trade secret information or any other propriety information. Instead, Monsanto stated it was not required to review these documents because there was no "litigation need" and that reviewing the 84 documents for confidentiality would be too burdensome. To bolster this argument, Monsanto stated that it reviewed the 84 documents to see if any of them were cited in Plaintiffs' expert reports (but not to see if they contain any confidential information). And, since none of them were cited in Plaintiffs' expert reports, Monsanto claimed that none of the documents could be challenged. Monsanto literally told Plaintiffs' counsel to "go away" and explained that the Court empowered Monsanto to take that position.[6] When pressed about what Monsanto thought qualified as a legitimate "litigation need" such that Monsanto would be willing to meet-and-confer about the confidentiality of documents, Monsanto refused to answer, only stating that these documents and Plaintiffs' challenge did not qualify.

Plaintiffs inquired whether Monsanto could put aside the issue of "litigation need," and at least discuss whether the original confidentiality designations for the 84 documents were appropriate. Monsanto refused.

### V. Monsanto Waived Any Claim to Confidentiality to the Challenged Documents by Failing to File a Motion Pursuant to Paragraph 16.3 of the Protective Order

Pursuant to Paragraph 16.3 of the Protective Order, Monsanto was required to file a motion seeking continued protection of those documents challenged by the Plaintiffs' June 30, 2017 letter within 30 days. Failure to file such motion within 30 days, i.e., July 31, 2017, "automatically waive[s] the confidentiality designation for each challenged designation." *Id.* ¶ 16.3. Remarkably,

---

[6] Indeed, surprised by Monsanto's brazen refusal to discuss the challenged documents, Plaintiffs' counsel asked if Monsanto's counsel could be quoted as saying "go away;" counsel said yes.

Monsanto did not file any motion seeking continued protection of the documents and, thus, waived any confidentiality over the documents. That said, this motion is still needed because Plaintiffs should not have to rely on Monsanto waiving confidentiality before it can get documents de-designated. Moving forward, Plaintiffs need clarification of PTO Nos. 15 & 20, which are being used by Monsanto in state cases to seek modified version of this MDL's protective order.

## ARGUMENT

### I. To the Extent PTO No. 15 Imposes a Requirement that Plaintiffs Demonstrate that a Document Is "Relevant" before Being Subject to a Confidentiality Challenge, the Order Violates Rule 26(c) and Should Be Vacated

The public is permitted "access to litigation documents and information ***produced during discovery.***" *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (emphasis added). Indeed, "[i]t is well-established that the fruits of ***pretrial discovery*** are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (emphasis added); *see In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 433 (9th Cir. 2011) ("[T]he public's right of access to documents ***produced in litigation*** is long established and has been given great weight from the time of the equity courts in England." (emphasis added)). The only way a Court may limit pretrial discovery from public disclosure is pursuant to Rule 26, which permits the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Roman Catholic*, 661 F.3d at 424 (quoting Fed. R. Civ. P. 26); *see In re Halkin*, 598 F.2d 176, 188 (D.C. Cir. 1979) ("The implication [of Rule 26] is clear that without a protective order materials obtained in discovery may be used by a party for any purpose, including dissemination to the public.").

However, a blanket protective order, permitting any party to unilaterally designate documents as confidential, does not meet the "good cause" requirements of Rule 26 once those documents are challenged. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("[B]ecause the protective order was a stipulated blanket order, International never had to make a 'good cause' showing under Fed. R. Civ. P. 26(c) . . . in the first place. . . . Thus, International has never made the

showing necessary to justify continued protection of the transcripts."). As soon as a document designated as "confidential" is challenged, whether that document was filed in the context of a motion or not, the Court *must* require the designating party, i.e., Monsanto, to make an actual showing of good cause. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Now that the Private Intervenors **have challenged** the contention that the ***unfiled discovery documents belong under seal***, the district court ***must require State Farm to make an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c)***." (emphasis added)); *e.g.*, *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PHJ EMC, 2007 WL 4169628, at *1 (N.D. Cal. Nov. 20, 2007) (J. Chen) (***"Upon challenge, the designating party must justify each document by showing good cause and demonstrate that specific prejudice or harm will result if the . . . documents . . . are disclosed.***" (emphasis added)). Otherwise, the Court would effectively be protecting documents from public disclosure, in contravention of the "presumptively public" nature of discovery material, without a particularized, i.e., document by document, finding of good cause.[7] Not requiring Monsanto to make an actual showing of good cause for challenged documents' continued confidentiality is contrary to Ninth Circuit law. *See, e.g.*, *Foltz*, 331 F.3d at 1131; *Beckman*, 966 F.2d at 476. As one court explains:

> Rule 26(c) gives some precedence to one particular value: ***freedom to use discovered information in any lawful manner that the discovering party chooses.*** That precedence is reflected in the Rule's demand that trial courts not issue protective orders unless the proponent of the order first makes a showing of good cause. ***Without such a showing, no such order can issue.***

*Humboldt Baykeeper v. Union Pac. R. Co.*, 244 F.R.D. 560, 562 (N.D. Cal. 2007) (emphasis added).

Requiring Plaintiffs to explain the relevancy of certain documents in advance of challenging confidentiality violates Rule 26. First, because Plaintiffs are not seeking to invoke Rule 26(c)'s

---

[7] *See Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV 1191-JLS(KSC), 2015 WL 12466532, at *4 (S.D. Cal. July 16, 2015) ("Once a party challenges whether documents produced during discovery are entitled to continuing protection under a stipulated protective order, the Court must require 'an actual showing of good cause' under Rule 26(c) and 'identify and discuss the factors it considered in its 'good cause' examination.'" (quoting *Foltz*, 331 F.3d at 1130-31)).

9
PLAINTIFFS' MOTION TO CLARIFY RULINGS RELATED TO CONFIDENTIALITY OF DOCUMENTS

protection, they cannot be charged with any burden of persuasion or proof—Monsanto, not Plaintiffs, bears the burden of making a particularized showing of "good cause." Second, Rule 26(c) does not contemplate the subjective relevancy of challenged documents, i.e., it does not permit the entry of a protective order without a particularized showing of good cause simply because the document is irrelevant. Relevance is not grounds for protection under Rule 26(c). By forcing Plaintiffs to make a threshold showing of "relevance" before Monsanto is required to make a particularized showing of good cause, the Court effectively enters a protective order for all documents Monsanto believes is are not relevant without a particularized finding of good cause—even documents challenged under the terms of the Protective Order. Such a ruling is, under Ninth Circuit precedent, impermissible. *Foltz*, 331 F.3d at 1130 ("Any such order, however, requires that the court's determination 'identify and discuss the factors it considered in its 'good cause' examination[.]'" (quoting *Phillips*, 307 F.3d at 1212)). Before this Court can protect a challenged document, it must engage in a two part analysis: "First, it must determine whether 'particularized harm will result from disclosure of information to the public" and "Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *Sampson v. City of El Centro*, No. 14CV1807-L (DHB), 2015 WL 11658713, at *4 (S.D. Cal. Aug. 31, 2015) (quoting *In re Roman Catholic*, 661 F.3d at 424). The scheme, as interpreted by Monsanto, does not provide for this and is, making clarification of the Court's orders necessary.

II. **To the Extent PTO No. 20 Requires Plaintiffs to Demonstrate that a Document Serves a "Litigation Need" before Being Subject to a Confidentiality Challenge It Violates Rule 26(c) and Should be Vacated**

As an initial matter, Plaintiffs do not believe that the Court's ruling in PTO No. 20 modified or affected the operative Protective Order in any way. The Court's criticisms of Plaintiffs' counsel were aimed at whether it was appropriate to attach certain documents to a motion that the Court found not particularly relevant and then force Monsanto to explain why those documents should be sealed, effectively circumventing Monsanto's refusal to participate in the meet-and-confer process outlined in the Protective Order. The Court felt that the parties should use the procedures in the Protective

1  Order, not the sealing process, to deal with confidential designations.  And, that point was well met, as illustrated by Plaintiffs attempting to implement the challenge process outlined in the Protective Order with the challenged 84 documents discussed above.

Monsanto has taken a different view of PTO No. 20.  According to Monsanto, it is not even required to participate in any meet-and-confer to address, document by document, those specific documents Plaintiffs believe were over-designated unless Monsanto believes the identified documents serve a "litigation need."  During the July 13, 2017 meet-and-confer, Monsanto refused to explain what qualified as a "litigation need" but stated that the 84 challenged documents did not qualify.  Thus, according to Monsanto, PTO No. 20 allows it to dictate when and if documents can be challenged based on whether Monsanto agrees that they serve a "litigation need."

For the same reasons a "relevance" restriction violates Rule 26(c), so does a "litigation need" restriction.  Absent a particularized, document by document, showing of "good cause" by Monsanto and a particularized finding by this Court, Rule 26(c) does not permit the protection of documents.  *See Foltz*, 331 F.3d at 1131; *Beckman*, 966 F.2d at 476.  An order predetermining protection of documents because they are not related to a particular phase of the litigation is *per se* invalid because it fails to require Monsanto to demonstrate good cause and avoids this Court reviewing those particularized assertions and explaining the basis for them.  *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 , No. 14-35086, 2017 WL 2766091, at *13 (9th Cir. June 27, 2017) ("[T]he district court should have engaged in this two-step analysis[.]"); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The order is so loose that it amounts, as we suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret.  Such an order is invalid.").  Thus, to the extent that PTO No. 20 implements this additional requirement, as argued by Monsanto, it is invalid and should be vacated.

**III. To the Extent PTO Nos. 15 & 20 Impose Blanket Restrictions about Which Documents Will be Protected from Public Disclosure, such a Restriction Is an Unconstitutional Prior Restraint**

"The inherent value of speech in terms of its capacity for informing the public does not turn on

how or where the information was acquired." *In re Halkin*, 598 F.2d at 187 (citing *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778-783 (1978)).  "A party's right to disseminate information is far stronger for discovery materials than for information that has been stolen or obtained in breach of contract." *Id.*  To be sure, "courts have significant discretion to constrain litigants from disseminating information obtained through litigation." *Ground Zero*, 2017 WL 2766091, at *11.  Courts "have applied relaxed First Amendment scrutiny to district courts' restrictions of litigants' speech given 'the relationship between [them] and the court system.'" *Id.* (quoting *Levine v. U.S. Dist. Court*, 764 F.2d 590, 595-96 (9th Cir. 1985)).  That said, "the Supreme Court has noted that parties have general [F]irst [A]mendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit."[8] *Pub. Citizen v. Liggett Grp.*, Inc., 858 F.2d 775, 780 (1st Cir. 1988) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-36 (1984)); *see San Jose Mercury News*, 187 F.3d at 1101 (citing *Pub. Citizen* with approval); *Beckman*, 966 F.2d at 476 (same).  And, the Supreme Court has held that "[i]t is, of course, clear that information obtained through civil discovery authorized . . . would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court" even if that right can be restrained.  *Seattle Times*, 467

---

[8] There is substantial public interest in the proceedings of this litigation—a fact made all too clear by the letter from members of the European parliament requesting access to discovery materials to help in its consideration of whether to renew the license for glyphosate in the European Union.  Letter from Bart Staes, et al (July 4, 2017), Dkt. 385.  There are, for example, ongoing investigations by EPA's Office of Inspector General's Office into potential illegal collusion between Monsanto and EPA officials.  Exh. C, Letter from Authur Elkins to Hon. Ted Lieu (May 31, 2017), *available at* https://www.documentcloud.org/documents/3853786-EPA-OIG-Letter-to-Ted-Lieu.html.  The Office of Environmental Heath Hazzard Assessment for the State of California recently listed glyphosate as a substance known to cause cancer and is presently considering whether to implement a safe harbor level for glyphosate exposure and is actively seeking guidance and information from Plaintiffs' counsel.  *See* OEHHA, *Glyphosate Listed Effective July 7, 2017, as Known to the State of California to Cause Cancer* (Jul. 7, 2017), *available at* https://oehha.ca.gov/proposition-65/crnr/glyphosate-listed-effective-july-7-2017-known-state-california-cause-cancer; OEHHA, Notice of Public Hearing − Proposed Specific Regulatory Level Chemical Causing Cancer: Glyphosate (June 7, 2017), *available at* https://oehha.ca.gov/proposition-65/events/notice-public-hearing-proposed-specific-regulatory-level-chemical-causing.  Plaintiffs' counsel have been contacted by all of these regulatory and government entities to provide documents—none of which contain trade secrets or other confidential information—and the only thing preventing disclosure is this Court's Protective Order and Monsanto's refusal to even discuss de-designation of documents.

U.S. at 31; *In re Halkin*, 598 F.2d at 190 ("A prohibition on what plaintiffs may say about information once they have obtained it, however, directly implicates the First Amendment."). After all, "attorneys and other trial participants do not lose their constitutional rights at the courthouse door." *Levine*, 764 F.2d at 595.

To the extent this Court limits disclosure of discovery material because those documents are not relevant to the litigation or do not serve a "litigation need," such limitations are overbroad and constitute unconstitutional prior restraint. "Even in the presence of sufficient justification for curtailing certain first amendment utterances, an order must be drawn narrowly so as not to prohibit speech which will not have an effect on the fair administration of justice along with speech which will have such an effect." *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970). In determining whether a protective order limiting dissemination of pretrial discovery material violates the First Amendment, "(1) the prohibitions imposed by protective orders must further an important or substantial governmental interest that is unrelated to the suppression of expression, and (2) the limitations imposed by the orders on freedom of expression must be no greater than is necessary or essential to protect 'the particular governmental interest involved.'" *Humboldt Baykeeper*, 244 F.R.D. at 561 (quoting *Seattle Times*, 467 U.S. at 32).

The first prong of the *Seattle Times* test, i.e., a substantial government interest, is satisfied by showing good cause under Rule 26(c). *Id.* After all, "a showing of 'good cause' has real meaning—a real meaning that, among other things, ensures that a protective order will not issue unless the party asking the court to issue it demonstrates that the order would advance or protect some legitimate interest other than suppression of expression." *Id.* This is why "[t]he proponent of the order must demonstrate that the order would reduce a real risk of significant harm to an interest that is ***entitled to protection under the law*** and that is independent of the proponent's (or the court's) desire simply to keep the discovered information out of public view or inaccessible to the authorities." *Id.* at 562 (emphasis added). And, as discussed above, the imposition of a threshold showing of "relevance" or "litigation need" allows speech to be suppressed without recourse to any showing of good cause, i.e., without any showing of a substantial governmental interest in suppressing that speech. The original

Protective Order, before PTO Nos. 15 & 20 supposedly modified it, did require such a showing as soon as a document was challenged, thus making any restriction on speech serve a substantial governmental interest. However, PTO Nos. 15 & 20, to the extent they inhibit Plaintiffs' and their counsels' speech, go too far and allow for suppression of speech without a concurrent showing of a substantial governmental interest.

Under the second prong, "a protective order could be vulnerable to constitutional attack on the ground that the prohibitions it imposes reach appreciably farther than would be necessary to secure the important public ends that are proffered in support of issuance of the order." *Id.* And here, a restriction of confidentiality challenges to documents that are "relevant" or serve a "litigation need" broadly protects millions of pages of documents from being discussed—most of which have no basis for being designated confidential in the first place. The Court's suppression of the Plaintiffs' and their counsels' freedom of speech goes appreciably farther than would be necessary to secure the proper and orderly administration of justice, or any other valid interest. This is particularly true since the original Protective Order did not impose such overbroad restrictions but, instead, required Monsanto to make an affirmative demonstration of good cause, document by document, when challenged by the Plaintiffs. If PTO Nos. 15 & 20 modified the Protective Order as Monsanto claims, then it modified it in a way that violates the Constitution.

Thus, in light of these two prongs, to the extent the Court accepts Monsanto's interpretation of PTO Nos. 15 & 20, they constitute unconstitutional prior restraint on Plaintiffs' and their counsels' freedom of speech and must be vacated.

## **CONCLUSION**

Plaintiffs respectfully request that the Court enter an order:

(1) Clarifying that, to the extent that PTO Nos. 15 & 20 modified the Protective Order, they are vacated;

(2) Clarifying that Plaintiffs are permitted to challenge the confidentiality of documents under the Protective Order, regardless of whether the document is subjectively "relevant" or serves a "litigation need"; and

(3) Directing Monsanto to act in good-faith by providing document-by-document justifications for the confidentiality of documents when challenged by Plaintiffs under the terms of the Protective Order.

DATED: August 1, 2017                    Respectfully submitted,

By: /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

Aimee Wagstaff
aimee.wagstaff@andruswagstaff.com
ANDRUS WAGSTAFF, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 303-376-6360
F 303-376-6361

Robin Greenwald
rgreenwald@weitzlux.com
WEITZ & LUXENBERG, P.C.
700 Broadway
New York NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
THE MILLER FIRM, LLC
108 Railroad Ave
Orange VA 22960
Telephone: (540) 672 4224
Facsimile: (540) 672-3055

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, R. Brent Wisner, hereby certify that, on August 1, 2017, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ R. Brent Wisner
R. Brent Wisner