Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br>MDL No. 2741 |
| | **MONSANTO COMPANY'S APPLICATION FOR EMERGENCY RELIEF** |
| This document relates to:<br><br>ALL ACTIONS | |

1

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................... 8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

## **TABLE OF AUTHORITIES**

3

Page(s)

4

**Cases**

5
*In re Establishment Inspection of Hern Iron Works, Inc.*,
   881 F.2d 722 (9th Cir.1989) ...........................................................................9

6
7
*GTE Sylvania, Inc. v. Consumers Union*,
   445 U.S. 375 (1980)........................................................................................9

8
*Pasadena City Bd. of Educ. v. Spangler*,
   427 U.S. 424 (1976)........................................................................................9

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Monsanto Company ("Monsanto") files this application for emergency relief in response to plaintiffs' counsel's flagrant violation of this Court's Orders and their complete disregard for the procedures this Court has established to resolve confidentiality disputes.  Plaintiffs' counsel recklessly and intentionally released 86 documents designated as confidential under the terms of the Court's Protective and Confidentiality Order despite Monsanto's clear statements in meet-and-confer discussions that plaintiffs did not have proper grounds to seek de-designation of the documents' confidential standing.  These 86 documents include 24 documents that this Court expressly refused to de-designate in response to an earlier plaintiffs' challenge.  Moreover, in what now appears to have been a deliberate attempt to mislead Monsanto, plaintiffs' counsel engaged in this misconduct after telling Monsanto that it would either file a joint letter or motion with the Court or elect to drop their confidentiality challenge and just four days after advising Monsanto's counsel that plaintiffs had decided **_not_** to submit a joint letter to the Court about the confidentiality dispute.  Instead of seeking Court review of the confidentiality designations or clarification of the Court's Orders, plaintiffs' counsel willfully released these documents and conducted a media campaign with the press, proclaiming in the New York Times that: "Now the world gets to see these documents that would otherwise remain secret."  *See* Danny Hakim, *Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer*, N.Y. Times (Aug. 1, 2017) (quoting Brent Wisner) (attached as Exhibit 7 to Declaration of Gary I. Rubin in Support of Monsanto's Emergency Request Application ("Rubin Decl.") (attached hereto as Exhibit A)).  Plaintiffs' counsel also falsely told the New York Times reporter, among others, that Monsanto's lawyers "didn't properly take action to preserve the confidentiality of these documents."  *Id.* (quoting Wisner).  Then, in a post hoc attempt to justify their contumacious actions, plaintiffs filed last night a motion with the Court to "clarify" or alternatively vacate the very same Orders they had just so brazenly violated, claiming the Court surely did not intend its prior Orders to mean what they say or, if it did, that those Orders are improper and unconstitutional.

Such conduct is prohibited and sanctionable.  Plaintiffs' latest gambit to try their case in the press is part of a longstanding pattern that has resulted in repeated and pointed admonitions and instructions from the Court.  In the most recent hearing with the Court addressing these issues, the Court told plaintiffs' counsel in no uncertain terms that it was improper for them to use this litigation "as a vehicle to conduct a PR campaign.  It's obvious to me that that is what you've been trying to do, and that is going to stop."  Hr'g Tr. at 20 (May 11, 2017) (cited excerpts attached hereto as Exhibit B).  Through PTO 15 and PTO 20, the Court also put procedures in place to prevent plaintiffs from seeking to de-designate any confidential documents without first making a showing of relevance and litigation need.

Plaintiffs' counsel have blatantly disregarded the Court's Orders, and once again are seeking to try their case in the press through out-of-context disclosures of documents and misleading spin.  Because the Court's clear Orders have proven insufficient to stop plaintiffs' counsel's improper conduct, Monsanto seeks emergency relief requiring plaintiffs' counsel to immediately remove the confidential Monsanto documents from its website, inform in writing each of the media outlets who have now received these documents that plaintiffs' counsel released them in violation of this Court's Orders, and include a public statement on their firm website likewise announcing their violation of the Court's Orders.  Monsanto also requests that this Court order additional sanctions and relief as it deems appropriate, including removal of the responsible plaintiffs' law firms from the Plaintiffs' Executive Committee and discovery into the nature of the plaintiffs' counsel's improper contact with media outlets regarding the confidential documents.[1]

### BACKGROUND

On December 9, 2016, this Court entered a Protective and Confidentiality Order, which requires, among other things, that "Confidential Material shall be treated by the Parties and their counsel as being confidential and private."  Protective and Confidentiality Order ¶ 11, ECF No.

---

[1] Pursuant to the Court's Standing Order regarding Emergency Applications, Monsanto has advised plaintiffs' counsel of its intention to seek emergency relief and informed the Courtroom Deputy, by email and phone, that it intended to file this motion.  *See* Standing Order for Civil Cases Before Judge Vince Chhabria ¶¶ 2-4.

64 ("Protective Order").  As this Court has explained, the Protective Order was issued in part to facilitate the very rapid production by Monsanto of "a ton of documents" to meet the Court's scheduling order leading to an evidentiary *Daubert* hearing on the issue of general causation in 2017.  Hr'g Tr. at 52-55 (Feb. 27, 2017) (cited excerpts attached as Exhibit 3C to Rubin Decl.).  As originally issued, the Protective Order included a provision whereby Plaintiffs' counsel could challenge the designation of discovery documents as confidential through a dispute resolution process.  Protective Order ¶ 16.  This provision quickly became the focus of dispute, however, when plaintiffs' counsel sought to use the provision to challenge the confidentiality of nearly 200 documents without any showing that these documents were relevant to the general causation issue currently pending before the Court.  Plaintiffs' misuse of this provision resulted in protracted meet-and-confer efforts in which they sought to compel Monsanto to provide a document-by-document justification for each confidentiality designation.  *See* Joint Discovery Letter Brief on Confidentiality Challenges at 3 n.5 (Feb. 10, 2017), ECF No. 140 (discussing four hour meet-and-confer conference spread over two days not including the many additional hours of attorney time spent preparing for the conferences).

Pursuant to this Court's Standing Order, a joint letter was submitted on February 10, 2017, in which the parties presented their competing views of the proper procedure for any such confidentiality challenges going forward.  *See id.*  Monsanto requested that all such challenges to confidentiality designations be deferred until and unless plaintiffs' counsel could show a specific litigation need for de-designation of a challenged document.  *See id.*  Plaintiffs, in opposition, argued that the dispute resolution provision of the protective order should remain as is, contending that "because Monsanto desires to avoid public disclosure of embarrassing documents, it seeks to shift the burden by adding an undefined 'litigation need' as a burden Plaintiff must satisfy prior to asserting a confidentiality challenge."  *Id.* at 5.

The Court heard argument on the parties' letter brief on February 27, 2017, and ruled in favor of Monsanto.  At this hearing, the Court expressly limited the use of the Protective Order's

¶ 16 dispute resolution process to documents for which plaintiffs' counsel first made a showing

of litigation need:

> I don't want this process and the protective order to be used to dedesignate them, *unless they really are going to have – be used in the litigation*. . . . But the bottom line is I think it is appropriate for Monsanto to say that if these documents – they may not, you know, technically meet the definition of confidential in the protective order, but there's – they don't – they're not going to be used in this litigation, so leave us alone.  I think that is appropriate, okay.
>
> …
>
> And I don't know if the protective order needs to be modified for that purpose or if we can just operate under that understanding.  But I think it is appropriate – you know, I think we have a problem – I have a problem with Monsanto because it's – it is insisting that stuff be filed under seal that should not be filed under seal.  But I have a problem with the idea of, you know, calling Monsanto on its confidentiality designations and making that – you know, asking them to dedesignate documents that are not reasonably likely to be used in the litigation. *And I would like us all to operate under those principles.*
>
> [Plaintiffs' counsel]:  Okay.

Feb. 27, 2017 Hr'g Tr. at 54-55 (emphasis added).  The Court further explained that because of

the massive size of the document production and the need to produce as quickly as possible,

Monsanto had been required to produce documents without the normal opportunity for disputes

over relevancy and that it "has to err on the side of designating certain things as confidential, and

I don't think Monsanto should be faulted for that."  *Id.* at 54.

The Court formalized its ruling in Pretrial Order No. 15, holding that the "dispute

[regarding the designation of confidential documents] is resolved in favor of Monsanto.  As

explained at the [February 27] hearing, the Court will not entertain any challenge by the

plaintiffs to a confidentiality designation unless they can explain why the document is likely to

be relevant in the litigation."  Pretrial Order No. 15, at 4 (Mar. 13, 2017), ECF No. 186.

Through this ruling, the Court specifically denied plaintiffs' motion to de-designate 24 of the 86

documents that plaintiffs now have fed to the media.  *See* Rubin Decl. ¶ 5.

Following PTO 15, plaintiffs' counsel sought to challenge the confidentiality of documents by attaching them en masse to court filings, in an attempt to force Monsanto to file motions to keep the documents under seal.  The Court made clear that this attempted end-run around PTO 15 was not acceptable.  In Pretrial Order No. 20, the Court reiterated its prior ruling that it "will not entertain any challenge by the plaintiffs to a confidentiality designation unless they can explain why the document is likely to be relevant in the litigation."  Pretrial Order No. 20, at 1 (May 1, 2017), ECF No. 266 (quoting Pretrial Order No. 15, at 4).  The Court went on to recognize that plaintiffs were seeking to de-designate documents in order to litigate their case in the media and chastised them for doing so: "In this phase of the MDL, the proper remedy for overdesignation is to correct the discrete instances of overdesignation that require correction given the needs of the litigation.  *The plaintiffs will not be permitted to use this lawsuit as a means of feeding the media documents that aren't actually relevant to the lawsuit*."  *Id.* at 2 (emphasis added).

In a subsequent Court hearing on May 11, 2017, the Court repeatedly admonished plaintiffs' counsel for their repeated improper efforts to litigate this case in the press:

- "[Y]ou cannot use these proceedings to include as part of the court file documents that you would like to see released to the public if they're not relevant to the motion that you're filing."  May 11, 2017 Hr'g Tr. at 16.

- "[T]he order that I issued on an unrelated matter . . . made clear that I was going to start sanctioning you if you continued in your effort to file documents that were not related to the motions you were filing in an effort to get them released to the public."  *Id.* at 17.

- "Neither of those concerns relates to the concern that I have, which is you using this litigation as a vehicle to conduct a PR campaign.  It's obvious to me that that is what you've been trying to do, and that is going to stop."  *Id.* at 20.

- "[G]iven the concern I have about the plaintiffs using this litigation as a vehicle to conduct a PR campaign, I'm going to be, you know, scrutinizing this much more

closely, and you need to be much more careful about what you're submitting and what you're not." *Id.* at 21.

Plaintiffs' counsel were undeterred.  On June 30, 2017, plaintiffs' counsel Brent Wisner of Baum Hedlund notified Monsanto that he had been appointed by the Plaintiffs' Leadership in the MDL to challenge the confidentiality of some 86 documents pursuant to the Protective Order's ¶ 16 dispute resolution process.  Rubin Decl. ¶¶ 3-4.  On July 13, 2017, the parties took part in a nearly 40 minute meet-and-confer conference call.  *Id.* ¶ 7.  Monsanto's counsel reminded plaintiffs' counsel of their burden of establishing a litigation need under PTO 15 and PTO 20 and set forth its position that plaintiffs had failed to satisfy their burden, noting in particular that not a single one of the 86 challenged documents had even been cited in any of the plaintiffs' expert reports on general causation, the sole issue presently before the Court. *Id.* ¶¶ 7-9.  Monsanto explained that if plaintiffs disagreed with Monsanto's position regarding the requirements of PTO 15 and PTO 20 and this Court's comments, the parties would need to raise the issue with the Court through a joint letter, seeking clarification of the confidentiality review process.  *Id.* ¶ 11.  Plaintiffs' counsel said they would take that approach under consideration, but that they might instead file a stand-alone motion or drop the matter. *Id.* ¶¶ 11-12.  In light of this conversation Monsanto began preparing its half of a joint letter, but on July 27, 2017, plaintiffs' counsel emailed counsel for Monsanto to state that they had decided not to file a joint discovery letter with the Court concerning the confidentiality designations challenged in their June 30 letter.  *Id.* ¶ 13.  Neither in this email nor in any communication did plaintiffs' counsel state that they would simply release the confidential documents.

At 2:16 am PDT on August 1, 2017, Monsanto received an e-mail from Carey Gillam, a blogger with U.S. Right to Know and with whom plaintiffs' counsel previously have collaborated, asking if Monsanto wished to comment on an article on the 86 documents that she had *already published* in Huffington Post.  *See* Email from Carey Gillam to Charla Lord (Aug. 1, 2017) (attached as Exhibit 6 to Rubin Decl.).  The timing of this contact is noteworthy.  In her article, Ms. Gillam quoted plaintiffs' counsel Brent Wisner of Baum Hedlund, who claimed that

Monsanto somehow had waived the confidentiality of the 86 documents at midnight on August 1, 2017, because Monsanto had not filed within 30 days of plaintiffs' original notice letter a motion with the Court to prevent the documents' disclosure, as provided in the original December 2015 Protective Order.  This waiver argument was meritless following the Court's clear ruling during the February 27, 2017 hearing about how the Protective and Confidentiality Order was to operate going forward, *see supra* at 4, the Court's subsequent issuance of PTO 15 and PTO 20, Monsanto's clear opposition to de-designation of these documents during the parties' meet-and-confer discussions, and plaintiffs' counsel's representations at and following the meet-and-confer.  And the article made no mention either of when the documents had been provided to Ms. Gillam, although it seems apparent from the depth of discussion of the documents in the article that Ms. Gillam had been provided the documents well before the purported "waiver."  Carey Gillam, *New 'Monsanto Papers' Add to Questions of Regulatory Collusion, Scientific Mischief*, HuffPost (Aug. 1, 2017), http://www.huffingtonpost.com/entry/newly-released-monsanto-papers-add-to-questions-of_us_597fc800e4b0d187a5968fbf?ncid=engmodushpmg00000003 (attached as Exhibit 5 to Rubin Decl.).  Ms. Gillam's article included a link to each of the 86 confidential Monsanto documents.

Over the following 24 hours, plaintiffs' counsel's improper gambit has once again advanced the PR campaign this Court made abundantly clear had to stop.  The Gillam article and perhaps subsequent disclosures of the same documents to other reporters has led to further media coverage.  *See* Rubin Decl.  ¶ 17.

Remarkably, at 3:51 pm PDT on August 1, plaintiffs' counsel filed an after-the-fact motion with the Court requesting "clarification" of the very same pretrial orders (15 and 20) they had so recklessly and intentionally violated earlier that morning.  In fact, this is exactly the issue that Monsanto suggested that the parties raise in a joint letter to the Court, a suggestion plaintiffs rejected.  Monsanto will respond to that motion in a separate opposition, at the appropriate time under the Court's rules.  For present purposes though, plaintiffs' motion leaves no question that plaintiffs' counsel understood Monsanto's position, understood the Court's Orders required

1    plaintiffs to seek relief from the Court if they wanted to modify PTO 15 and PTO 20, and

2    understood that they could not publicly release any confidential documents in this litigation

3    without the Court's say so.  The plaintiffs' direct and willful violation of the Court's Orders

4    requires an immediate response from the Court.

5                                        **ARGUMENT**

6            This Court has repeatedly instructed plaintiffs' counsel against the misuse of confidential

7    discovery documents for purposes of a strategy to try their case in the media.  That campaign has

8    resulted in published accounts of plaintiffs' allegations, for example, against a former EPA

9    employee, that the Court, following its own review, has noted is based upon plaintiffs' counsel's

10   "mischaracterizing the evidence."  May 11, 2017 Hr'g Tr. at 11.  The Court likewise has warned

11   counsel that plaintiffs' continued efforts to try their case in the media would result in sanctions.

12   *Id.* at 17.  Because plaintiffs' recent efforts are the result of their flagrant violation of the Court's

13   orders and a total disregard for the procedures the Court has established, the time for sanctions is

14   now at hand.

15           Plaintiffs' counsel made the conscious decision to violate the Court's orders knowing

16   that, by the time Monsanto could object, the damage would be done.  In fact, their filing of the

17   Motion to Clarify Rulings Regarding Confidentiality of Documents *after* releasing these

18   documents to the press demonstrates their awareness that their conduct was in violation of

19   various Court Orders.  *See, e.g.*, Notice of Motion and Motion to Clarify Rulings Regarding

20   Confidentiality of Documents, at 1 (Aug. 1, 2017), ECF No. 415 ("[A]ccording to Monsanto,

21   PTO Nos. 15 & 20 modified the Protective Order by requiring Plaintiffs to show that any

22   challenged document was (1) relevant and (2) served a litigation need.").  Indeed, plaintiffs

23   assert that "unless the Court provides clarification, Plaintiffs are hamstrung."  So rather than

24   seeking appropriate relief from the Court, plaintiffs simply elected to ignore the Court's prior

25   rulings, violate the Court's Orders, and thereby achieve a result that they previously had been

26   unable to obtain from the Court.  *Id.*  It should go without saying that if plaintiffs disagreed with

27   the Court's Orders or somehow believed that circumstances had changed, they should have filed

28

their motion *before* violating the Orders.  What plaintiffs cannot do is violate the Court's Orders

and then claim they are "legally invalid."  *Id.*; *see, e.g.*, *Pasadena City Bd. of Educ. v.*

*Spangler,* 427 U.S. 424, 439 (1976) ("[D]isobedience of such an outstanding order of a federal

court subjects the violator to contempt even though his constitutional claim might be later

upheld."); *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 386 (1980) ("persons subject

to an injunctive order . . . are expected to obey . . . even if they have proper grounds to object to

the order"); *In re Establishment Inspection of Hern Iron Works,  Inc.*, 881 F.2d 722, 725-

26 (9th Cir. 1989) ("The contemnor cannot ordinarily raise the invalidity of the judicial order as

a defense to a contempt charge.").

Monsanto respectfully suggests that absent a clear and strong message from the Court in

the form of meaningful sanctions, plaintiffs' counsel is likely to make the same decision again

whenever complying with the Court's Orders proves to be inconvenient or at odds with their

desires.  Monsanto accordingly requests that the Court issue an Order imposing the following

sanctions, which are designed to finally put an end to this improper conduct, along with any

other relief the Court deems necessary and appropriate:

1.  Order plaintiffs' counsel to issue a Court-approved statement to all media outlets in
    which the documents have been or in the future are discussed that plaintiffs' counsel
    recklessly and intentionally violated the Protective Order and PTO 15 and PTO 20 in
    releasing the documents to the press and that Monsanto did not waive the confidentiality
    of these documents.

2.  Order that the 86 documents be removed from the Baum Hedlund website and that Baum
    Hedlund, in its place, post the Court's sanction order with a clear statement on its website
    that it was found in violation of the Protective Order and PTO 15 and PTO 20 and that
    Monsanto did not waive the confidentiality of these documents.

3.  Remove Baum Hedlund from the Plaintiffs' Executive Committee of MDL 2741.

4.  Remove Weitz & Luxenberg, Andrus Wagstaff, and the Miller Firm as co-leads for plaintiffs in MDL 2741 based upon the appointment of Baum Hedlund to act on their behalf in releasing the 86 documents to the media.

5.  Order discovery including, but not limited to, production of all plaintiffs' counsel's (including all lawyers and other individuals in plaintiffs' counsel's law firms) (1) internal emails and other correspondence among and between plaintiffs' counsel concerning Carey Gillam, public entities such as the Huffington Post, the U.S. Right to Know, and/or any and all other media outlets, and (2) emails and other correspondence between plaintiffs' counsel and Carey Gillam, public entities such as the Huffington Post, the U.S. Right to Know, and/or any and all other media outlets.

6.  In light of the continuing abuse by plaintiffs' counsel of confidentiality challenges, modify the Protective and Confidentiality Order to:

    a.  Preclude plaintiffs from any future challenges to confidentiality of discovery documents;

    b.  Alternatively, require plaintiffs to support any future such challenges by presenting the Court with clear and convincing evidence of a litigation need before any such documents may be released.

7.  Order that the 86 improperly released documents here at issue may not be used by plaintiffs in any future proceedings in this or any other court.

8.  Impose monetary sanctions in the amount the Court deems reasonable and necessary in light of the willful violation of Court orders to deter future misconduct.

DATED: August 2, 2017

Respectfully submitted,


/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*