# Exhibit 3A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | **PRETRIAL ORDER NO. 15: THIRD-PARTY DISCOVERY AND PENDING MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 102, 105, 106, 132, 140, 148, 150 |

This ruling addresses several disputes regarding discovery and several disputes regarding Monsanto's ability to keep certain documents under seal.

Throughout this litigation the plaintiffs have trumpeted the conclusion of the International Agency for Research on Cancer ("IARC") that glyphosate is a "probable carcinogen." As a result, Monsanto is conducting third-party discovery in the hope of finding fault with the IARC's conclusion.

In turn, Monsanto has trumpeted reports generated by the Environmental Protection Agency ("EPA") concluding that glyphosate is not hazardous. As a result, the plaintiffs are conducting third-party discovery (and have made Freedom of Information Act requests) in the hope of finding fault with the EPA's reports.

This raises a general question: whether the reports prepared by agencies like the IARC and EPA are relevant to the first phase of this multi-district litigation. In this phase, which is limited to "general causation," the Court will decide only whether there is sufficient admissible evidence that glyphosate and/or Roundup is capable of causing cancer (specifically, Non-

Hodgkin's Lymphoma) in humans.

Although Monsanto has taken inconsistent positions on this issue, at the most recent hearing it conceded that the IARC and EPA reports are relevant. Any expert testifying about general causation will, for his opinion to be admissible, almost certainly need to account for the conclusions reached by these agencies.

This does not mean, however, that the IARC and EPA reports are central to the general causation question; it means only that they are relevant. The IARC and EPA reports analyze studies that were previously conducted on the carcinogenicity of glyphosate. The experts in this case will need to do the same thing – that is, they will need to analyze the studies themselves and offer opinions about what they show. The opinions of the IARC and EPA about what the studies show, while important, are secondary. This means that although the parties may conduct some third-party discovery relating to the conclusions drawn by the IARC and the EPA, any such discovery will be limited so that it does not take on an outsized role relative to its importance. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

The Court will use this guidepost to consider the plaintiffs' efforts to take Jess Rowland's deposition and to compel production of documents relating to his work. Accordingly, the Court is of the tentative view that the testimony and documents the plaintiffs seek from Rowland would be appropriate, but that further discovery from EPA officials would not be. However, the Court will consider any further arguments from the EPA in a motion to quash (to be filed no later than March 28, 2017) before making a final decision. In the event of a motion to quash, the Court will also consider any arguments regarding the application or validity of the EPA's *Touhy* regulation.

The same guidepost applies to third-party discovery by Monsanto relating to the IARC report. Accordingly, Texas A&M's motion to quash the subpoena to Dr. Ivan Rusyn is granted. *See* Dkt. No. 1, *Hardeman v. Monsanto Co.*, 16-mc-80232. Dr. Rusyn was but one of many participants in the IARC's glyphosate review. Although the documents in Rusyn's possession

2

relating to the review may have some relevance, they are not central enough to the litigation to justify the burden such discovery would place on him and the university.[1] Moreover, the parties have informed the Court that the chair of the IARC committee that studied glyphosate has agreed to sit for deposition (as he ought to). The ability of the parties to take discovery from the chair of the committee makes discovery of Rusyn's materials even less important. This terminates action 16-mc-80232.

Monsanto's request to seal the documents submitted in connection with the motion to compel Rowland's deposition is denied, with the exception of one document. As previously mentioned, the EPA reports are important to this litigation. Therefore, to support its sealing request, Monsanto must present compelling reasons for concealing documents relating to the EPA reports from the public. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-03 (9th Cir. 2016). Potential embarrassment to Monsanto (or to Jess Rowland) is not enough. And although the documents contain communications about Monsanto's efforts to influence agencies, there is no credible argument that they reveal some sort of "trade secret" about how to do so. Therefore, except for the single page of Exhibit E dealing with dicamba – an herbicide unrelated to this litigation – the motion to seal brought in connection with the motion to compel the Rowland deposition is denied. *See* Dkt. No. 105-6 at 2; *see also* Civil L.R. 79-5(f)(3). For the same reason, Monsanto's requests to seal documents submitted in connection with the briefing on EPA and IARC relevance are denied, in their entirety. *See* Dkt. Nos. 132, 148.

Monsanto also seeks to seal documents submitted in connection with the plaintiffs' motion to compel further depositions and document productions – an issue discussed at the telephonic conference on February 24, 2017 and resolved in Pretrial Order No. 14. *See* Dkt. No. 150. Monsanto's request is denied except as to the following exhibits and excerpts of exhibits:

---

[1] To the extent Monsanto is seeking drafts of the IARC monograph that remain in Dr. Rusyn's possession, Monsanto is almost certainly seeking IARC property, which would be immune from subpoena in any event. 22 U.S.C. § 288a(b); *see also Garcia v. Sebelius*, 919 F. Supp. 2d 43, 46-47 (D.D.C. 2013).

- Exhibit 1, Dkt. No. 150-5: The first paragraph of page 1 and the final paragraph of page 13 will be redacted.

- Exhibit 5, Dkt. No. 150-9: Pages 39-61 will be redacted.

- Exhibit 6, Dkt. No. 150-10: The transcript will be refiled with all unnecessary pages removed. *See* Buck Decl. (Dkt. No. 166-1) at 5. The refiled transcript will be redacted at 161:13 and 164:5-9.

- Exhibit 10, Dkt. No. 150-14.

- Exhibit 15, Dkt. No. 150-21.

- Exhibit 19, Dkt. No. 150-23.

- Exhibit 23, Dkt. No. 150-27: Pages 2-36 will be redacted.

- Exhibit 24, Dkt. No. 150-28.

- Exhibit 25, Dkt. No. 150-29: The document will be redacted as Monsanto has proposed. *See* Buck Decl. (Dkt. No. 166-1) at 12.

- Exhibit 27, Dkt. No. 150-31.

- Exhibit 30, Dkt. No. 150-34: The transcript will be refiled with all unnecessary pages removed.

- Exhibit 34, Dkt. No. 150-38.

- Exhibit 35, Dkt. No. 150-39.

Finally, the parties have submitted a discovery letter regarding Monsanto's practice of designating a high percentage of documents produced in discovery as "confidential" in accordance with the protective order. That dispute is resolved in favor of Monsanto. As explained at the hearing, the Court will not entertain any challenge by the plaintiffs to a confidentiality designation unless they can explain why the document is likely to be relevant in the litigation. It bears repeating, however, that Monsanto's decision to designate a document as "confidential" in discovery has no bearing on whether that document, if it ends up being filed in court, should be filed under seal. When possible, the parties should confer in advance of court filings about whether documents previously designated confidential truly need that designation.

4

When that's not practical, and when the plaintiffs provisionally file documents under seal based on Monsanto's confidentiality designation, Monsanto must undertake a good-faith review of the documents and inform the Court whether they should remain under seal. For the remainder of the general causation phase, Monsanto will have 10 court days to file the responsive declarations required by Civil Local Rule 79-5(e). This should be ample time to properly tailor and adequately support future sealing requests. If Monsanto continues to file unreasonable or unsubstantiated declarations, it will be sanctioned. *See* Fed. R. Civ. P. 11(b). The Court notes that a blanket declaration that disclosure "implicates European privacy laws" is insufficient. *See, e.g.*, Buck Decl. (Dkt No. 166-1) at 3.

  **IT IS SO ORDERED.**

Dated: March 13, 2017

                 VINCE CHHABRIA
                 United States District Judge

# Exhibit 3B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | **PRETRIAL ORDER NO. 20: DENYING MOTION TO DE-DESIGNATE HEYDENS DEPOSITION**<br><br>Re: Dkt. Nos. 226, 226-2, 238, 246, 262 |

The plaintiffs' motion to de-designate is denied for failure to follow the established de-designation process. *See* Protective and Confidentiality Order (Dkt. No. 64) at §§ 16.2, 16.3; Opp. (Dkt. No. 238) at 2. If the plaintiffs determine they need relief from the Court after following that process, they may seek relief consistent with Pretrial Order No. 15, which makes clear that "the Court will not entertain any challenge by the plaintiffs to a confidentiality designation unless they can explain why the document is likely to be relevant in the litigation." PTO 15 (Dkt. No. 186) at 4.

Undoubtedly, certain portions of the Heydens deposition are relevant to the general causation question. *See id.* at 1-2. However, in light of the plaintiffs' recent filings, the Court is concerned that the plaintiffs may be drifting away from the merits and into petty squabbles over the public's impression of their case. For example, in arguing that Monsanto's blog posts prejudice them in some way, the plaintiffs seem to be conflating litigating in court with litigating in the media. *See* Motion (Dkt. No. 226-2) at 5-6. And in furtherance of their effort to litigate their case in the media, it appears that the plaintiffs have adopted a practice of attempting to get

documents publicly released by attaching them to motions unnecessarily, then hoping the Court will deny requests to seal documents that shouldn't have been filed in the first place. *See, e.g.*, Dkt. Nos. 226-10 to 226-13. For this reason, Monsanto's motions to strike are granted in full, *see* Dkt. Nos. 238, 262, and the plaintiffs are cautioned that attaching hundreds of pages of irrelevant material to an administrative motion is no less a sanctionable abuse of the sealing process than Monsanto's filing of unsupported responsive declarations. If the plaintiffs reach an impasse on de-designation after complying with section 16.2 of the protective order, they may refile their stricken exhibits in connection with a renewed motion – but only to the extent those exhibits will be helpful in adjudicating the dispute.

Finally, although this has been discussed previously, it apparently bears repeating that because the Court has erred on the side of requiring Monsanto to produce more rather than less information, and because it has required Monsanto to produce that information at a rapid pace, Monsanto will be forgiven if it, in turn, errs on the side of caution in designating discovery material as confidential. In this phase of the MDL, the proper remedy for overdesignation is to correct the discrete instances of overdesignation that require correction given the needs of the litigation. The plaintiffs will not be permitted to use this lawsuit as a means of feeding the media documents that aren't actually relevant to the lawsuit.

**IT IS SO ORDERED.**

Dated: May 1, 2017

_____
VINCE CHHABRIA
United States District Judge

# Exhibit 3C

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)  2/27/2017  1:31:00 PM

Pages 1 - 64

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE:  ROUNDUP PRODUCTS     )

LIABILITY LITIGATION,       )

                              )   NO. C 16-2741 VC

                              )

San Francisco, California

Monday, February 27, 2017

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:

        ANDRUS WAGSTAFF, PC

        7171 W. Alaska Drive

        Lakewood, Colorado 80226

    BY:  AIMEE H. WAGSTAFF

        ATTORNEY AT LAW

        THE MILLER FIRM, LLC

        108 Railroad Avenue

        Orange, Virginia 22960

    BY:  MICHAEL J. MILLER

        TIMOTHY LITZENBURG (by phone)

        ATTORNEYS AT LAW

         LUXENBERG, PC

        700 Broadway

        New York, NY 10003

    BY:  ROBIN GREENWALD

        PEARL ROBERTSON (by phone)

        ATTORNEYS AT LAW

    (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:     Rhonda L. Aquilina, CSR #9956, RMR, CRR

        Official Court Reporter

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)  2/27/2017  1:31:00 PM

APPEARANCES:  (CONTINUED)

For Defendant Monsanto Company:

HOLLINGSWORTH LLP

1350 I Street NW

Washington, D.C. 20005

BY:  ERIC GORDON LASKER

JOE HOLLINGSWORTH

HEATHER PIGMAN

ATTORNEYS AT LAW

For Respondent:  USA

US ATTORNEYS OFFICE

Civil Division

450 Golden Gate Avenue

San Francisco, CA 94102

BY:  RAVEN MARIE NORRIS

ASSISTANT US ATTORNEY

Monsanto - IARC / Glyphosate                                                                                              Page  -

Case 3:16-md-02741-VC   Document 416-4   Filed 08/02/17   Page 13 of 19

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)   2/27/2017 1:31:00 PM

1  no -- you're not prevented from submitting any documents that

2  have been designated confidential.

3      MS. GREENWALD:  That's what they're requesting.

4  That's what Monsanto is requesting.

5      THE COURT:  You're only prevented from filing them

6  publicly while they are designated confidential.

7      MS. GREENWALD:  Correct.  But Monsanto has filed a

8  request with Your Honor.  And what I understood Mr. Lasker to

9  just say is that he would like it to be a new order of the

10 court that plaintiffs cannot attach documents to filings.

11 Maybe I misunderstood him, but...

12     THE COURT:  I didn't understand him to say that.

13     MS. GREENWALD:  Is that what you were saying?

14     MR. LASKER:  Well, I mean, my proposal was, with

15 respect to having Your Honor decide whether we needed the

16 documents to make a decision, certainly they have -- first of

17 all, there's some documents that are public.  But to the extent

18 that there's a document that's confidential, there's two

19 approaches:  They could either file it under seal and they have

20 to go through this, or they could make a proffer saying these

21 are the types of documents you want to file, and if Your Honor

22 says that's relevant to my decision, then again that is burden

23 is on us.

24     THE COURT:  That's not really a workable approach for

25 a variety of reasons, one of which is that, you know, I mean,

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)  2/27/2017  1:31:00 PM

1   you have a filing deadline, and you're putting all this

2   together at the last minute and trying to meet the filing

3   deadline, and it's just not practical to have a meet and confer

4   about which documents should be filed under seal and which

5   shouldn't.  Sometimes it's practical, but other times it's not

6   practical to do that.

7       ==I think the -- you know, on the other hand, it -- you==

8   ==know, Monsanto is having to turn over a ton of documents, and==

9   ==the only way to do that in -- I assume the only way to do that==

10  ==in a remotely efficient way is to err a little bit on the side==

11  ==of designating stuff confidential.==  And that's okay, like

12  that's -- you know, otherwise we wouldn't be able to have the

13  Daubert hearing, I suspect until, you know, 2020; right?

14      So what I want to try to figure out is if there's a way,

15  you know, if there's a way to -- if there's a solution that we

16  could come up with which recognizes that it is difficult often

17  for the plaintiffs to sort of front documents in advance, and

18  difficult for Monsanto to avoid over designating documents

19  confidential.

20      I mean, I think there's no question that Monsanto has over

21  designated, but that is not a criticism, that's just sort of a

22  reality of litigation with massive amounts of documents, I

23  think.

24      MS. GREENWALD:  Your Honor, I think the protective

25  order actually has a process in place for that.  We have

1   targeted a way to dedesignate documents so that we can do that

2   simultaneous to litigating this case, and that's in fact what

3   we did.  We sent a letter requesting to dedesignate 200

4   documents, and we followed the procedures set forth in the

5   protective order, which was why we negotiated that way, and why

6   I suspect Your Honor entered it that way, and then therefore

7   those documents would be de designated so when we had a filing,

8   we could attach them as exhibits, they wouldn't have to be

9   under seal, and we could go forward that way.

10      And the 200 documents that we chose, if you look at it,

11   track exhibits we've used in depositions; they track documents

12   that we think are hot documents, or documents that we think

13   that will be used as exhibits in motions or discovery motions,

14   and that is a process we can use, and that's what we have been

15   using, and that's already in place.

16      MR. LASKER:  Your Honor --

17      THE COURT:  But I think that -- you know, I am a

18   little bit concerned about -- as I said, Monsanto has to turn

19   over tons of documents.  A lot of the documents that

20   Monsanto -- and the practicalities are such that Monsanto kind

21   of has to err on the side of designating certain things

22   confidential, and I don't think that Monsanto should be faulted

23   for that.

24      So Monsanto is turning over tons of documents, many of

25   which will not be relevant to the litigation, many of which

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)  2/27/2017  1:31:00 PM

1   will not be used in the litigation.  And I don't see why you

2   all should be spending time fighting over the designation of

3   most of those documents, because most of the documents will not

4   be used in the litigation.

5       And so, you know, I do think that it is appropriate in

6   this context for you to be able to have an explanation, if you

7   want documents dedesignated, for you to be able to have an

8   explanation why they're relevant to the litigation.  I don't

9   want this to be a process by which you're getting tons of

10  documents from Monsanto that are not going to be relevant to

11  the litigation that you want to make public.  And so you're

12  availing yourself of this mechanism in the protective order to

13  make them public because they don't -- shouldn't truly meet the

14  definition of confidential.

15      I mean, a lot of these documents, arguably, if we had more

16  time and we searched more narrowly, and we, you know, proceeded

17  with more precision, a lot of these documents you would never

18  be getting in the first place, probably.  And so the fact that

19  you're getting them -- I mean, I don't want this process and

20  the protective order to be used to dedesignate them, unless

21  they really are going to have -- be used in the litigation.

22      Do you think there's a realistic possibility that they

23  could be used in the litigation?

24          MS. GREENWALD:  Right.  And I understand, Your Honor,

25  and that's why I mentioned that the letter that we sent tracked

Case 3:16-md-02741-VC   Document 416-4   Filed 08/02/17   Page 17 of 19

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)  2/27/2017  1:31:00 PM

1   the exhibits that we've been using.  And I would -- I haven't

2   actually looked back at the 38 documents, or however many

3   documents are at issue now, but I would guess that a hundred

4   percent, if not 95 percent of them are on that list.

5        And part of the problem --

6            THE COURT:  When you say, "on that list," what do you

7   mean?

8            MS. GREENWALD:  The list of 200.  We sent 199 -- a

9   list of 199 documents to be designated to Monsanto a couple --

10  maybe a month or five weeks ago, or something or like that.

11  And I would suspect that all of the -- all or most of the

12  documents that are issued now under seal are probably on that

13  list, because we tracked that list through exhibits.

14       Now, I haven't compared that, so if I'm wrong --

15           MR. LASKER:  We have done the comparison, Your Honor.

16  If there was -- of the recent case management statement, there

17  were 32 documents attached.  Eight of those were on the list of

18  199.

19           THE COURT:  Wait.  Wait.  Hold on a second.  I'm

20  getting a little confused now.

21       Okay.  So you sent them -- pursuant to this procedure in

22  the protective order, you sent them a list of 200 documents,

23  okay.  Now, these Rowland documents, the documents --

24           MS. GREENWALD:  They were on there, yes.

25           THE COURT:  They were on there, okay.  And the

Case 3:16-md-02741-VC   Document 416-4   Filed 08/02/17   Page 18 of 19

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)   2/27/2017  1:31:00 PM

1  documents that were filed in connection with the briefing on

2  the relevance of the EPA and IARC --

3      MS. GREENWALD:  I would suspect they are, because

4  those are very important documents, and I would suspect that we

5  used those in depositions.

6      And what Mr. Lasker is telling me, that of the 34 that we

7  filed last week, only eight of them are, and there's probably

8  an explanation for that.

9      THE COURT:  Only eight -- of the 34 that you filed

10  last week --

11      MS. GREENWALD:  Eight.

12      THE COURT:  In connection with Friday's motion, the

13  Friday motion we'll call it, okay, of the 34 that you filed

14  under seal last week in connection with the Friday motion,

15  eight of them are on the list of 200.

16      MR. LASKER:  That would be accurate, Your Honor.

17      THE COURT:  But here's the bottom line.  I don't care

18  that much about that.  ==But the bottom line is I think it is==

19  ==appropriate for Monsanto to say that if these documents -- they==

20  ==may not, you know, technically meet the definition of==

21  ==confidential in the protective order, but there's -- they==

22  ==don't -- they're not going to be used in this litigation, so==

23  ==leave us alone.  I think that is appropriate, okay.==

24      ==So if you don't have understanding of how a document is==

25  ==likely to be used in litigation, I think you need to leave==

(Hearing) Monsanto MDL (In Re Roundup Prods. Liability Lit.)   2/27/2017   1:31:00 PM

1    ==Monsanto alone regarding its confidentiality designations.==

2    ==That's what I think.==

3        MS. GREENWALD:  Okay.  And, obviously, what you think

4    matters more than what I think with regard to this.

5        And I would also say that --

6        THE COURT:  And I don't know if the protective order

7    needs to be modified for that purpose or if we can just operate

8    under that understanding.

9        But I think it is appropriate -- you know, I think we have

10   a problem -- I have a problem with Monsanto, because it's -- it

11   is insisting that stuff be filed under seal that should not be

12   filed under seal.  ==But I have a problem with the idea of, you==

13   ==know, calling Monsanto on its confidentiality designations and==

14   ==making that -- you know, asking them to dedesignate documents==

15   ==that are not reasonably likely to be used in the litigation.==

16   ==And I would like for us all to operate under those principles.==

17       MS. GREENWALD:  Okay.

18       THE COURT:  So I will issue an order on that so that

19   everybody has something in writing.

20       And then on the -- so there are only 34 documents under

21   seal.  I think, rather than having you redo it, in connection

22   with the Friday order, Friday motion, I think I'll -- we'll

23   just look through these, and we'll decide what should be sealed

24   and when shouldn't be sealed.

25       What I will say, though, is that I will -- you know, I