Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlund.com
**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 2741<br><br>**OPPOSITION TO MONSANTO COMPANY'S APPLICATION FOR EMERGENCY RELIEF** |

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

BACKGROUND .............................................................................................................................3

    I.      Procedure for Correcting Over-Designation of Documents ............................................3

    II.     Consistent with the Procedure for Challenging Confidentiality, Plaintiffs Identified 86 Documents Improperly Designated "Confidential" and Relevant to this Litigation ......4

    III.    Monsanto Refuses to Engage in A Meaningful Meet-and-Confer ................................4

    IV.    Monsanto Waived Any Claim to Confidentiality Pursuant to Section 16.3 of the PO...5

    V.     Counsel, R. Brent Wisner, Sends the Declassified Documents to Regulatory Agencies and Provides access to the Documents through Baum Hedlund's Website....................5

    VI.    Shortly After PTO 20, Monsanto Selectively Gave Deposition Testimony to the Press 6

ARGUMENT ...................................................................................................................................7

    II.     Monsanto's Application Is Procedurally Flawed ............................................................8

    III.    PTOs 15 and 20 Do Not Relieve Monsanto of Section 16.3 Requirements ....................8

    IV.    Plaintiffs' Are Not Litigating This Case in the Media .......................................................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Pages

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ......................................................................................... 7, 8

*First National Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978) ........................................................................................................ 7

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ........................................................................................ 7

*Humboldt Baykeeper v. Union Pac. R. Co.*,
  244 F.R.D. 560 (N.D. Cal. 2007) .................................................................................... 7

*In re Halkin*,
  598 F.2d 176 (D.C. Cir. 1979) ........................................................................................ 7

*Phillips v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ........................................................................................ 7

*Pub. Citizen v. Liggett Grp.*, Inc.,
  858 F.2d 775 (1st Cir. 1988) ........................................................................................... 8

*San Jose Mercury News, Inc. v. U.S. Dist. Court*,
  187 F.3d 1096 (9th Cir. 1999) ..................................................................................... 7, 8

**INTRODUCTON**

Monsanto defends this case, in part, based on the action (or inaction) of regulatory bodies. As of July 7, 2017, glyphosate is listed on California's Prop 65 list, meaning glyphosate is a chemical known by California to cause cancer. Monsanto, in response, has sought to attempt to obtain "safe harbor" status, which would alleviate the need for sellers of Roundup to provide a cancer warning adjacent to the product. The Office of Environmental Health Hazard Assessment (OEHHA) is charged with determining the safe harbor status; through a FOIA request, Plaintiffs learned that Monsanto met *privately* with OEHAA on October 7, 2015 to provide OEHHA self-serving documents to support a "safe harbor" determination.

On May 8, 2017, on behalf of MDL Plaintiffs, several MDL counsel requested that OEHAA hold a public hearing on glyphosate's safe harbor status. That same day, undersigned counsel sent Monsanto a request to declassify 42 documents—none of which contained confidential information—so they could be given to OEHAA as part of its safe harbor determination for glyphoste. *See* Exh. B, Letter from Aimee Wagstaff at 1 (May 8, 2017). The letter specified both the documents' relevance to the MDL and the urgency of the request. Monsanto ignored the letter, despite two follow up emails. Yet, on June 20, 2017, Monsanto submitted Dr. Blair's deposition transcript and select exhibits to OEHAA, arguing that his testimony discredited IARC's glyphosate determination and requesting that OEHHA not list glyphosate as a known carcinogen.[1] Thus, OEHAA only received the MDL discovery information Monsanto wanted it to see by ignoring Plaintiffs' valid requests to release documents.

Because the May 8 challenge did not contain the triggering language of paragraph 16.2 of the Protective Order (Dec. 9, 2016, Dkt. 64) ("PO"), on June 30, Plaintiffs re-challenged those same 42 documents, and others, invoking PO paragraph 16.2.

The MDL's PO, *stipulated to* by the parties and entered by the Court, outlines the procedural rules for the parties in the event a meet-and-confer fails to resolve the confidentiality dispute.

---

[1] *See* Exh. D, Letter from Phillip W. Miller, Vice President of Global Affairs, Monsanto Company to Carol Monahan-Cummings, Chief Counsel of OEHHA, at 1-4 (June 20, 2017).

Specifically, the Designating Party "***shall*** file and serve a motion to retain confidentiality…***within 30 days***…[f]ailure by the Designating Party to make such a motion…***shall automatically waive*** the confidentiality designation for each challenged designation." PO ¶ 16.3 (emphasis added).[2] Neither Pretrial Orders (PTOs) Nos. 15 nor 20 modifies that procedure—in fact, PTO No. 20 specifically directs Plaintiffs to utilize Section 16.2 of the PO. At most, those PTOs amend the standard by which this Court would consider confidentiality challenges *after* a motion is filed.

It is *undisputed* that (1) on June 30, 2017, Plaintiffs sent a detailed, 30-page letter, providing specific confidentiality challenges to 86 documents that also identified the relevancy of each document to this litigation; (2) on July 13, 2017, the parties met-and-conferred, wherein Monsanto refused to explain each document's "confidential" designation, and refused to confer with Plaintiffs' counsel; (3) between June 30, 2017 and July 31, 2017, Monsanto failed to seek continued protection of the challenged documents or request additional time to prepare such a motion; and (4) because Monsanto failed to file any motion to retain confidentiality of the challenged documents by midnight on July 31, 2017, under the terms of the PO, Monsanto "automatically waive[d] the confidentiality designation for each challenged designation."

The PO is unambiguous. Notwithstanding, Monsanto asks this Court to impose a litany of harsh sanctions against Plaintiffs' counsel for considering Monsanto to have waived confidentiality over these documents. In other words, Monsanto asks this Court to impose sanctions against Plaintiffs' counsel for *following* the PO's procedures and causing no identified harm. The fact is that Monsanto made a mistake by failing to take required action to preserve the confidentiality of these documents. Instead of accepting responsibility for its mistake, Monsanto takes aim directly at Plaintiffs' counsel, making a host of unsupportable accusations, innuendo, and personal attacks. And in the midst of these outbursts, Monsanto's fails to even articulate any Rule or statute that provides a basis for their application and highly unorthodox sanctions.

---

[2] *See* Model Stipulated Protective Order for Standard Litigation at ¶ 6.3, *available at* http://www.cand.uscourts.gov/filelibrary/407/ CAND_StandardProtOrd.pdf.   It is the standard procedure in this Court.

Notably, Monsanto does not even discuss or mention section 16.3 of the PO, or explain how PTOs 15 and 20 amend the PO so as to no longer require Monsanto to file a motion seeking continued confidentiality of challenged documents.  Instead, the application contains *ad hominem* attacks on Plaintiffs' counsel. It would be fundamentally improper to punish Plaintiffs' counsel for exercising their First Amendment right to talk about non-confidential material, especially given that Monsanto has been actively involved in providing deposition segments that it decides to "de-designate" when it suits its message, and sharing those cherry-picked documents with the press to malign witnesses in this case.  Monsanto has gone so far as to publicly and baselessly accuse Dr. Blair, a well-respected and neutral scientist who graciously agreed to be deposed in this case, of committing "scientific vandalism," and post that on its website.[3] The First Amendment should apply equally to the Plaintiffs.

Counsel is mindful that this Court has expressed disagreement with what it perceives as attempts to attach documents to court filings to cause the documents to become publicly available. What happened here, however, is different.  Plaintiffs did not attempt an end-around the procedures outlined by the Court.  In fact, Plaintiffs applied those procedures, to the letter.  The fact that Monsanto failed to take measures to maintain confidentiality of the documents, as the Protective Order requires, lies with Monsanto alone.  Monsanto's request for sanctions should be denied in full.

## BACKGROUND

### I. Procedure for Correcting Over-Designation of Documents

The Court entered the PO on December 9, 2016 (Dkt. 64). In it, the parties stipulated "that this Order ***does not confer blanket protections on all disclosures or responses to discovery*** and that the protection it affords from public disclosure and use ***extends only*** to the information or items that are ***entitled*** to confidential treatment under the applicable legal principles."  PO ¶ 2 (Dec. 9, 2016, Dkt. 64) (emphasis added). Recognizing the importance of expediting discovery, the parties agreed that "[i]f it comes to the designating party's attention that information or items that it designated for

---

[3] *See* https://www.hollingsworthllp.com/news/monsanto-cancer-study-suppression-is-scientific-vandalism.

protection do not qualify for protection, that designating party *must* promptly notify all other Parties that it is withdrawing its mistaken designation." *Id.* ¶ 5 (emphasis added). By the express terms of the PO, each side is charged with an affirmative duty to correct over-designations promptly.

Paragraphs 16.2 and 16.3 outline the process for challenging the confidentiality of documents. It starts with the challenging party issuing a letter specifying "each designation it is challenging and describing the basis for each challenge." *Id.* ¶ 16.2. Once that letter is issued, the parties "shall attempt to resolve each challenge in good faith . . . by conferring directly . . . within 14 days[.]" *Id.* During that meet-and-confer, the challenging party must explain its basis for challenging the designation, while the designating party shall review the challenged materials and offer a justification for the designation. *Id.* If the parties reach an impasse, then the designating party must file a motion to maintain confidentiality within 30 days of the initial notice or else "automatically waive the confidentiality designation for each challenged designation." *Id.* ¶ 16.3. Importantly, "[t]he burden of persuasion in any such challenge proceeding shall be on the Designating Party[.]" *Id.*

**II. Consistent with the Procedure for Challenging Confidentiality, Plaintiffs Identified 86 Documents Improperly Designated "Confidential" and Relevant to this Litigation**

On June 30, 2017, Plaintiffs sent a letter, pursuant to Section 16.2, challenging Monsanto's confidentiality designations of 86 documents.[4] Attached to the letter was a 28-page chart, listing each document, summarizing the relevant portions, and explaining why the specific document *was relevant*. *Id.* at 3-30. Plaintiffs stressed:

> As you know, in the Court's Pre-Trial Order 20, the Court stated that "[i]n this phase of the MDL, *the proper remedy for overdesignation is to correct the discrete instances of overdesignation that require correction* given the needs of the litigation" and instructed the Parties to comply with the meet-and-confer process outlined in Section 16.2 of the Protective Order. . . . [T]his letter and the requested meet-and-confer is *your chance to address a discrete set of documents, identified in the attached chart, and correct Monsanto's overdesignations.*

*Id.* (emphasis added). Monsanto agreed to meet-and-confer on July 13, 2017.

**III. Monsanto Refuses to Engage in A Meaningful Meet-and-Confer**

The parties met by phone on July 13, 2017. Monsanto refused to discuss any document or

---

[4] Exh. A, Letter from R. Brent Wisner to Joe Hollingsworth et al at 1-2 (June 30, 2017).

explain why any document was properly designated confidential. Instead, Monsanto stated it was not required to review these documents because there was no "litigation need" and that reviewing the 86 documents for confidentiality would be too burdensome. Plaintiffs disagreed. Monsanto also stated that it reviewed the 86 documents to determine if any of them were cited in Plaintiffs' expert reports (but not to determine if they contained confidential information). Since none were cited in the expert reports, Monsanto claimed the documents did not warrant de-designation. When pressed about what Monsanto thought qualified as a legitimate "litigation need," Monsanto refused to answer. Plaintiffs inquired whether Monsanto could put aside the issue of "litigation need," and at least discuss whether the original confidentiality designations for the 86 documents were appropriate. Monsanto refused, telling Plaintiffs' counsel to, literally, "go away." On July 27, 2017, Mr. Wisner emailed Monsanto informing them that Plaintiffs did not intend to file a join discovery letter with the Court concerning the challenged confidentiality designations, signaling to Monsanto that it was under the clock to take action.

### IV. Monsanto Waived Any Claim to Confidentiality Pursuant to Section 16.3 of the PO

Pursuant to Section 16.3 of the PO, Monsanto was required to file a motion seeking continued protection of those documents challenged by July 31, 2017 or else "automatically waive the confidentiality designation for each challenged designation." *Id.* ¶ 16.3. Monsanto did not file a motion, nor did it seek an extension of time. Thus, pursuant to the Court's Protective Order, the documents were automatically declassified after 30 days.

### V. Counsel, R. Brent Wisner, Sends the Declassified Documents to Regulatory Agencies and Provides access to the Documents through Baum Hedlund's Website[5]

---

[5] Co-lead counsel authorized Baum Hedlund to proceed with the process of de-designating documents pursuant to the Protective Order but *did not* appoint, authorize, or direct the posting of the documents on Baum Hedlund's website or anywhere else. The decision to make the documents publicly available was made by Baum Hedlund, not the MDL Leadership. That said, the law in the Ninth Circuit is very clear—nothing prevents a litigant or attorney from discussing or distributing non-confidential material with the public, especially since none of the documents contain any confidential information and Monsanto clearly waived any assertion of confidentiality by failing to take action to keep the documents confidential. *See, e.g.*, *Humboldt Baykeeper*, 244 F.R.D. at 562 (holding that non-confidential documents cannot be kept secret simply because of the "the proponent's (or the court's) desire simply to keep the discovered information out of public view or inaccessible to the authorities.").

As a preliminary matter, there is a litigation need for each of the 86 documents at issue, and plaintiffs painstakingly outlined that in the letter that began the de-designation process. The litigation need is legitimate and timely: Monsanto routinely argues before this Court (and in the press) that glyphosate is safe, in large part, because regulatory agencies such as the EPA and the European Union have not banned Roundup. Monsanto has not provided the 86 documents to these regulatory agencies, yet they go the heart of the scientific debate about data underlying Roundup's safety.

Further, there is substantial public interest in the proceedings of this litigation—illustrated most recently by the letter to the Court from members of the European Parliament earlier this month. *See* Dkt. 385. For example, there are ongoing investigations by EPA's Office of Inspector General into potential collusion between Monsanto and EPA officials.[6] As stated above, OEHHA recently listed glyphosate as a substance known to cause cancer and is presently considering whether to implement a safe harbor level for glyphosate exposure. Because Baum Hedlund had been contacted by these regulatory entities to provide documents, the firm waited for the 30-day waiver period to expire before sharing the documents with each of the above named agencies.

The day before Baum Hedlund posted the documents, Mr. Wisner spoke with Carey Gillam as part of an already-scheduled meeting for the two to discuss her anticipated testimony before the European Parliament scheduled for October 2017. While Mr. Wisner told Ms. Gillam that certain documents might be de-designated in the next 24 hours, he did not share documents with her nor did he discuss the contents of any documents, prior to de-designation.

**VI.  Shortly After PTO 20 Was Issued, Monsanto Selectively Gave Deposition Testimony to the Press**

Monsanto's request for sanctions is ironic in light of its recent media disclosures. Monsanto gave portions of the deposition of Dr. Blair, the Chair of the IARC working group that evaluated glyphosate, to numerous news organizations including Reuters.[7] Sharing the deposition testimony of

---

[6] Exh. C, Letter from Arthur A. Elkins, Jr. to Hon. Ted Lieu (May 31, 2017).
[7] *See* Kate Kelland, *Cancer agency left in the dark over glyphosate evidence*, Reuters (June 14, 2017) *available at* https://www.reuters.com/investigates/ special-report/glyphosate-cancer-data/ ("Previously unreported court documents reviewed by Reuter . . . In a sworn deposition given in March this year in connection with the case . . .").

1  Dr. Blair was the first time in this case where discovery material, unfiled on the public docket, was
2  given to a reporter to support a story line. By dictating which testimony sees the light of day,
3  Monsanto uses unfiled litigation material to influence the media for its own gain.

## ARGUMENT

### I. Law Concerning Public Disclosure of Discovery Material

Monsanto's real dispute with Plaintiffs is not that Plaintiffs deems Monsanto to have waived the designations; rather, it is that the documents were posted on a firm website. There is no prohibition to posting non-classified information on a firm website; Monsanto does it routinely. Monsanto cites no law about the public nature of discovery material. The public is permitted "access to litigation documents and information ***produced during discovery.***" *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (emphasis added). "It is well-established that the fruits of ***pretrial discovery*** are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (emphasis added). The only way a Court may limit pretrial discovery from public disclosure is pursuant to Rule 26, which permits the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26; *see In re Halkin*, 598 F.2d 176, 188 (D.C. Cir. 1979) ("[M]aterials obtained in discovery may be used by a party for any purpose, including dissemination to the public."). A protective order, permitting any party to unilaterally designate documents confidential, coupled with a procedure for seeking de-designation, does not meet the "good cause" requirements of Rule 26. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Once plaintiffs challenged the documents, Monsanto was legally obligated to make an actual showing of good cause to preserve confidentiality. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003):

> Rule 26(c) gives some precedence to one particular value: ***freedom to use discovered information in any lawful manner that the discovering party chooses.*** That precedence is reflected in the Rule's demand that trial courts not issue protective orders unless the proponent of the order first makes a showing of good cause. ***Without such a showing, no such order can issue.***

*Humboldt Baykeeper v. Union Pac. R. Co.*, 244 F.R.D. 560, 562 (N.D. Cal. 2007) (emphasis added).

It failed to do so.[8]

## II. Monsanto's Application Is Procedurally Flawed

As an initial matter, Monsanto's application is procedurally flawed because it does not specify the Rule or authority under which it seeks to impose sanctions. Further, the three cases cited relate to a different issue. Different standards apply to different requests for sanctions, both from a legal and procedural standpoint. Without a clear explanation of the legal basis for imposing these extreme sanctions, Plaintiffs cannot meaningfully address the merits of the requested relief.[9]

## III. PTOs 15 and 20 Do Not Relieve Monsanto of Section 16.3 Requirements

Under Section 16.3, Monsanto automatically waived confidentiality of the 86 challenged documents by failing to file a motion within 30 days. Remarkably, Monsanto never discusses this language in its application. Instead, it quotes excerpts from Case Management Conferences (CMCs), in an attempt to support its argument that section 16.3 was somehow modified. But there is, of course, no order, or statement from the Court nullifying or superseding paragraph 16.3 of the PO.

Monsanto relies on the Court's statement, at the February 27, 2017 Hearing, that unless Plaintiffs "have understanding of how a document is likely to be used in litigation, I think you need to leave Monsanto alone regarding its confidentiality designations." Feb. 27, 2017 Hr'g Tr. at 57:24-58:1. The Court specifically refused to modify the PO but asked the Parties to "operate under that

---

[8] There are also important First Amendment considerations at play here: "The inherent value of speech in terms of its capacity for informing the public does not turn on how or where the information was acquired." *In re Halkin*, 598 F.2d at 187 (citing *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778-783 (1978)). "A party's right to disseminate information is far stronger for discovery materials than for information that has been stolen or obtained in breach of contract." *Id.* And even though some Courts apply relaxed First Amendment scrutiny to restrictions on litigant speech, "the Supreme Court has noted that parties have general [F]irst [A]mendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." *Pub. Citizen v. Liggett Grp.*, Inc., 858 F.2d 775, 780 (1st Cir. 1988) (citation omitted); *see San Jose Mercury News*, 187 F.3d at 1101 (citing *Pub. Citizen* with approval); *Beckman*, 966 F.2d at 476 (same); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-36 (1984) ("[I]nformation obtained through civil discovery . . . would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court[.]").

[9] Moreover, the motion is styled as an Application for Emergency Relief, typically reserved for temporary restraining orders. *See* Standing Order for Civil Cases before Judge Vince Chhabria at ¶¶ 2-4. The application does not state the elements required for such relief. *Teespring, Inc. v. Puetz*, No. 15-CV-04149-VC, 2017 WL 956633, at *3 (N.D. Cal. Mar. 13, 2017) (J. Chhabria) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). This defect is fatal to Monsanto's motion.

understanding." *Id.* at 58:6-8.  In its written order, the Court stated, "As explained at the hearing, the Court will not entertain any challenge by the plaintiffs to a confidentiality designation unless they can explain why the document is likely to be relevant in the litigation."  PTO 15 at 5.  Thus, Plaintiffs provided Monsanto with a 30-page letter detailing why they believe the 86 documents would likely be used in litigation, but Monsanto refused to discuss these issues.

In a separate motion, filed August 2, 2017, Plaintiffs explain why this "requirement" violates Rule 26(c) and the First Amendment and requests clarification of the Court's order. However, despite Plaintiffs' disagreement with PTO No. 15, Plaintiffs complied with it.[10] *See* Exh. A, 3-30 (column "Relevance").  The descriptions express Plaintiffs' "understanding of how a document is likely to be used in litigation," in accordance with PTO 15.[11]  Monsanto was obligated to take action to protect the documents' confidentiality. When it didn't take action, Monsanto waived confidentiality.

**IV.  Plaintiffs' Are Not Litigating this Case in the Media**

Monsanto spends most of its application accusing Plaintiffs of trying this case in the media.  Indeed, Monsanto boldly claims that Plaintiffs "once again are seeking to try their case in the press through out-of-context disclosures of documents and misleading spin."  App. at 2.  There are, however, two problems with this attack.  First, it is simply not accurate.  Baum Hedlund made the 86 documents publicly available.  Any media that resulted was not coordinated or prompted by Plaintiffs or Baum Hedlund.  There have been no press releases, press conferences, or media briefings.[12]

---

[10] Monsanto claims that this motion is an after-the-fact attempt to justify public disclosure of the documents. To the contrary, the motion seeks to clarify or modify PTOs15 & 20 to the extent they impose invalid or unconstitutional requirements for challenging the confidentiality of documents in court. As the motion explains, this motion is still needed because Plaintiffs should not have to rely on Monsanto waiving confidentiality before it can get documents de-designated." Dkt. 415 at 7-8.

[11] Monsanto argues that 24 of the 86 documents being challenged "this Court expressly refused to de-designate in response to an earlier plaintiffs' challenge."  App. at 1.  This is misleading.  In PTO 15, the Court rejected the wholesale de-designation of 200 documents, explaining that Plaintiffs first needed to determine and explain which documents were relevant to the litigation.  PTO 15 at 5. The Court, however, never reviewed those 200 documents, nor did it make a substantive or "express" determination about their content. Of those 200 documents, 24 were resubmitted with this recent challenge, with the accompanying explanations of relevance.  Monsanto's claim that this Court already refused to de-designate 24 of 86 of these documents is inaccurate.

[12] The descriptions of the documents on the website are verbatim from the letter sent to Monsanto on June 30, 2017.

Indeed, there have only been a handful of articles written by the media about these document, as listed in Mr. Rubin's declaration. There is no "media campaign" at play, other than Monsanto's bald claims to the contrary.

What is more, these documents are no-longer protected. There was nothing in them to warrant confidentiality to begin with and any confidentiality that may have existed was automatically waived. Plaintiffs have common law and constitutional rights to freely discuss non-confidential material with the public, especially since the only "harm" thus far identified by Monsanto appears to be embarrassment. This Court, however, is not permitted to restrict otherwise valid free speech simply because one party does not like what is being said. *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970) ("Even in the presence of sufficient justification for curtailing certain first amendment utterances, an order must be drawn narrowly so as not to prohibit speech which will not have an effect on the fair administration of justice along with speech which will have such an effect."). At this point, unless Monsanto articulates a valid reason for this Court to suppress otherwise protected speech, making declassified documents available to the public has nothing to do with the proceedings in this Court. *Humboldt Baykeeper*, 244 F.R.D. at 562 ("The proponent of the order must demonstrate that the order would reduce a real risk of significant harm to an interest that is entitled to protection under the law and that is independent of the proponent's (or the court's) desire simply to keep the discovered information out of public view or inaccessible to the authorities."). The Court should reject Monsanto's invitation to be a censor.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Monsanto's Emergency Application in its entirety. Plaintiffs' counsel followed the exact letter of this Court's orders. Punishing such conduct would be unjust and improper.

/ / /

/ / /

/ / /

DATED: August 4, 2017                    Respectfully submitted,

By:  /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

Aimee Wagstaff
Aimee.wagstaff@andruswagstaff.com
ANDRUS WAGSTAFF, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 303-376-6360
F 303-376-6361

Robin Greenwald
rgreenwald@weitzlux.com
WEITZ & LUXENBERG, P.C.
700 Broadway
New York NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
THE MILLER FIRM, LLC
108 Railroad Ave
Orange VA 22960
Telephone: (540) 672 4224
Facsimile: (540) 672-3055

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, R. Brent Wisner, hereby certify that, on August 4, 2017, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

                                            /s/ R. Brent Wisner
                                                R. Brent Wisner