Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

Attorneys for Defendant,
MONSANTO COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 16-md-02741-VC |
| | MDL No. 2741 |
| This document relates to: ALL ACTIONS | **MONSANTO COMPANY'S REPLY IN SUPPORT OF APPLICATION FOR EMERGENCY RELIEF** |

1      Plaintiffs' counsel seek to excuse their egregious misconduct by claiming that Monsanto
2  Company "waived" its confidentiality designations.  Plaintiffs' argument is baseless.  In PTOs
3  15 and 20, this Court unambiguously ruled that a party seeking to challenge confidentiality
4  designations bears the burden of moving the Court and demonstrating relevance and litigation
5  need.  Plaintiffs' counsel understood the Court's previous rulings and simply chose to disregard
6  them.  Not only did plaintiffs' counsel ignore the Court's Orders, they did so while fully aware
7  that Monsanto was contesting the confidentiality of the documents, as evidenced by counsel's
8  own letters written in conjunction with their improper disclosures:

> On June 30, 2017, our firm, working in collaboration with the Plaintiffs' Steering Committee assigned to spearhead the federal litigation against Monsanto, sent a letter to Monsanto (attached) challenging the confidential designation of the documents that we are now turning over to you.  *Monsanto met with us and stated it would not retract claims of confidentiality over the documents we specifically challenged*.

13 Letter from R. Brent Wisner *et al.* to Members of the European Parliament at 1 (Aug. 1, 2017)
14 (emphasis added) (Ex. 1).[1]
15      Plaintiffs' Opposition does nothing but confirm that the release of the documents was a
16 knowing violation of the Protective Order as modified by PTO 15 and PTO 20.  The timeline of
17 key events – acknowledged in plaintiffs' Opposition – tells the tale:  Once the Court issued PTO
18 15, plaintiffs knew to, and did, initiate their challenges by letter to Monsanto, followed by a
19 meet-and-confer, followed either by plaintiffs' submission or a joint submission of the issue to
20 the Court or a decision by plaintiffs to drop the challenge.  Plaintiffs followed this process in the
21 first two post-PTO 15 challenges, with the first resulting in PTO 20 and the second in plaintiffs'
22 dropping their challenge.  The current disclosure issue was proceeding similarly when, with no
23 notice to Monsanto and with no application to the Court by plaintiffs, a member-firm of the
24 MDL executive committee (acting unilaterally according to plaintiffs' co-lead counsel) – in
25 flagrant violation of the Court's rulings and plaintiffs' own representations to Monsanto –

---

[1] These same statements appear in other letters plaintiffs' counsel sent that same day to OEHHA and the EPA's Office of the Inspector General.  Letter from R. Brent Wisner to OEHHA (Aug. 1, 2017) (Ex. 2); Letter from R. Brent Wisner to Office of the Inspector General, EPA (Aug. 1, 2017) (Ex. 3).  The letters were sent with links to the documents.

released the documents to a friendly press outlet.  As evidenced by its letters, Baum Hedlund was well aware when it disclosed the documents that Monsanto was not retracting the confidentiality designations and knew Monsanto's position that plaintiffs had not fulfilled their burden of demonstrating relevance and litigation need.  *See* Rubin Decl. ¶¶ 8-9; Exhibits 1-3.

It is also undisputed that Mr. Wisner told Monsanto's counsel that plaintiffs would either join in a joint letter process, file their own motion, or let the matter drop.  *See id.* ¶ 12.[2]  Nonetheless, in shocking disregard of this Court's Orders and their own representations, Baum Hedlund did none of the above and without notice to Monsanto simply released these documents to the public, including coordinating the publication of a media story that appeared only a few hours after the alleged "waiver."  The Court should not countenance such behavior and should issue stern sanctions against each of plaintiffs' counsel who were complicit in disregarding the Court's orders.[3]

There can be no question about the meaning and import of the Court's previous Orders regarding confidentiality challenges.  PTO 15 itself resulted from a dispute about plaintiffs' misuse of the confidentiality challenge provisions of the Protective Order in effect at that time.  Monsanto asked the Court to preclude plaintiffs from initiating challenges for documents that were not then relevant and that may never be used in the litigation, consistent with the purposes of the Protective Order.  *See* ECF No. 140 at 1.  The Court resolved the dispute "in favor of Monsanto," PTO 15 at 4, and stated:  "But the bottom line is I think it is appropriate for Monsanto to say . . . they're not going to be used in this litigation, so leave us alone."  ECF No. 416-4, at 57.  PTO 15 explicitly placed the burden on plaintiffs to bring confidentiality challenges while limiting the circumstances in which they may do so.  PTO 15 at 4 ("As explained at the hearing, the Court will not entertain any challenge by the plaintiffs to

---

[2] Plaintiffs do not dispute the facts set forth in the Rubin Declaration.

[3] The unauthorized disclosure also harms third parties as the documents contain, among other things, an employee performance evaluation and competitive financial information such as amounts paid to particular consultants including their hourly rates.

1  confidentiality designation unless they can explain why the document is likely to be relevant in
2  the litigation.").
3        The plaintiffs' conduct post-PTO 15 demonstrates that they knew the Court required
4  them to bring any confidentiality disputes to the Court.[4] Thus, after a subsequent meet-and-
5  confer failed to achieve a resolution, in accordance with PTO 15, plaintiffs filed a motion
6  seeking (unsuccessfully) to de-designate Dr. Heydens' deposition and the exhibits thereto. The
7  result was PTO 20, which not only confirmed the relevant requirements of PTO 15 but also
8  limited the scope of plaintiffs' permissible challenges to those "discrete instances of
9  overdesignation that require correction given the needs of the litigation," and not for "means of
10 feeding the media documents that aren't actually relevant to the lawsuit." PTO 20 at 1-2.
11       Plaintiffs again adhered to the Court's mandated protocol with respect to a confidentiality
12 dispute they raised on May 8, 2017, regarding 42 documents that they wished to disclose to the
13 OEHHA. *See* 5/8-10/17 Email Chain (Ex. 4). Monsanto did not need to, and did not, repeat its
14 confidentiality claims by *pro forma* response letter. And recognizing their obligations to then
15 seek relief from the Court before making any disclosure, plaintiffs' counsel Aimee Wagstaff
16 wrote on May 9, 2017: "Hearing nothing [from Monsanto agreeing to disclosure], we need to
17 seek judicial assistance" and stated that plaintiffs would prepare their half of a "discovery letter."
18 *See id.* Ultimately, no discovery letter or motion was submitted to the Court on the May
19 OEHHA dispute.
20       Plaintiffs appeared to be following the Court-ordered process with regard to the
21 documents now at issue. At the July 13 meet-and-confer, Monsanto's counsel told plaintiffs'
22 counsel that they again had not met their Court-ordered burdens, and plaintiffs' counsel stated
23 that they would either seek relief from the Court or drop their challenge (which seemed a likely

---

[4] Plaintiffs' complaint about Monsanto's disclosure of portions of the deposition of Dr. Blair is not relevant because none of his released deposition testimony was designated confidential by any party. Opp'n at 6-7; *see also* http://www.wmnf.org/womens-show-83-lgbt-transgender-title-vii-trump-russian-connections-monsantoroundup-lawsuit/ (hereinafter "Gillam Interview") (audio interview with Carey Gillam, a blogger in regular contact with plaintiffs' counsel, stating at 51:45 that release of documents at issue was in retaliation for release of Blair testimony).

1  outcome because there was no relevance or litigation need for these documents).  *See* Rubin

2  Decl. ¶ 9-12.[5]  Instead, plaintiffs' counsel incredibly ignored the Court's Orders and their own

3  representations, laid in wait, and then simply released the documents, and in a remarkable and

4  belated attempt to justify their flagrant misconduct, they filed a motion seeking "clarification" of

5  the Court's unambiguous Orders raising a last-resort claim of "unconstitutionality."[6]  Thus, even

6  if PTO 15 and all subsequent orders relating thereto did not exist, as plaintiffs appear to desire,

7  plaintiffs' waiver argument would still be meritless in light of the reprehensible facts.  *See, e.g.*,

8  *Mente Chevrolet Oldsmobile, Inc. v. GMAC*, 451 F. App'x 214, 217-18 (3d Cir. 2011) (denying

9  party's claim of waiver under unclean hands doctrine where that party's misrepresentations

10  motivated opposing party to waive legal rights).[7]

---

[5] Plaintiffs' characterization that Monsanto's counsel essentially refused to meet and confer, Opp'n at 5, is belied by the fact of the approximately 40-minute conference that was held.  *See* Rubin Decl. ¶ 7.

[6] Plaintiffs' First Amendment argument, Opp'n at 7-8 & n.8, is irrelevant because a party cannot violate a court order and then raise such a constitutional challenge.  *See* Emergency Motion at 8 (citing cases).  Plaintiffs' belated First Amendment claims are, in any event, inconsistent with the Supreme Court's holding in *Seattle Times* recognizing that a litigant's private documents are not subject to disclosure by a party opponent just because they are produced in discovery.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984).  Plaintiffs not only fail to cite *Seattle Times*, but the main case on which they rely for their First Amendment argument, *Halkin*, was overruled by that decision.  *See E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996) (holding that *Seattle Times* overturned *Halkin*).

[7] Mr. Wisner even admits that he "discussed" these documents with a friendly blogger the day before the "waiver" – apparently in sufficient detail to enable a full story, with in-depth descriptions of the documents, to be published only a few hours after the alleged "waiver" had occurred, Opp'n at 6; *see also* Gillam Interview (statement by the blogger at 31:45 that she was "up and waiting for those" documents and spent "hours and hours and hours" with them).  Mr. Wisner's inflammatory quotes in myriad articles also belie plaintiffs' claim that they did not release these documents as part of a media campaign.  Opp'n at 9-10; *see, e.g.*, Danny Hakim, *Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer*, NY Times (Aug. 1, 2017) ("Now the world gets to see these documents that would otherwise remain secret.") (Ex. 5); Yves Herman, *Monsanto Leaks Suggest It Tried To 'Kill' Cancer Research About Notorious Weed Killer*, Russia Today (Aug. 3, 2017) ("'This is a look behind the curtain,' attorney Brent Wisner said. 'This show[s] that Monsanto has deliberately been stopping studies that look bad for them, ghostwriting literature and engaging in a whole host of corporate malfeasance.'") (Ex. 6).  The viral spread of Monsanto's private property has even made its way to Russia Today ("RT").  *See id.*; https://trofire.com/2017/08/06/new-monsanto-documents-may-point-criminality-big-picture/ (interview on RT with plaintiffs' attorney Mike Papantonio).

1    In *Salmeron v. Enterprise Recovery Systems*, 579 F.3d 787 (7th Cir. 2009), the court
2 rejected a plaintiff's counsel's similar efforts to deceive the other side.  There, the plaintiff's
3 attorney leaked a document to the press after agreeing to keep it confidential during negotiation
4 of an anticipated protective order, and, in response, the district court *dismissed* the case *with*
5 *prejudice*.  *Id.* at 789.  As the Seventh Circuit held in affirming that decision, plaintiff's
6 "argument essentially boils down to faulting [the defense] lawyers for not protecting their client
7 from an adversary who might not be trustworthy.  We cannot accept that assertion."  *Id.* at 796.
8 The court refused to even examine whether the documents were, in fact, confidential because
9 they were released in violation of counsel's agreement.  *See id.* at 795 n.3.

10   In the opposition to Monsanto's motion, the triumvirate of co-lead counsel for the
11 plaintiffs in this MDL attempted to disassociate themselves from the actions of Baum Hedlund,
12 providing further evidence that at least some plaintiffs' counsel are aware of the significance of
13 the deviation from the strictures of PTO 15 and 20.  Given that Mr. Wisner at Baum Hedlund
14 claims he was expressly given authority by the full executive committee to pursue this
15 confidentiality challenge, discovery is appropriate to determine the involvement of these other
16 firms in this course of conduct.  As requested in Monsanto's motion, the Court should expel
17 Baum Hedland and any other complicit plaintiffs' counsel from any leadership role in the cases,
18 including reconstituting the executive committee and lead counsel roles with new members
19 acceptable to Monsanto and approved by the Court.[8]

---

[8] A district court has inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also* Fed. R. Civ. P. 16, 37; *Plaintiffs' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 807 (8th Cir. 2005) (affirming removal of member of Plaintiffs' Steering Committee); *Koch v. Greenberg*, 2011 WL 4485975, at *4 (S.D.N.Y. Sept. 28, 2011) (precluding further use of documents released in violation of protective order).

DATED: August 7, 2017

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant,*
*MONSANTO COMPANY*