# EXHIBIT A

Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, CO  80226
Telephone: (303) 376-6360
Facsimile:  (303) 376-6361

*MDL Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| | HEARING:  August 24, 2017<br>TIME: 10:00 A.M.<br>Courtroom 4, 17th Floor, N.D.Cal.<br>San Francisco, California |
| This document relates to:<br><br>ALL ACTIONS | |

**<u>AIMEE H. WAGSTAFF, ESQ. – DECLARATION</u>**

Declaration of Aimee H. Wagstaff, Esq.

   I am over the age of 18, and if called to testify, have personal knowledge of the following:

1. I am an attorney licensed to practice law in the States of California and Colorado and I am admitted to practice before this Court. I am a co-founder and shareholder of the Denver based law firm Andrus Wagstaff, PC and I am counsel of record for several MDL 2741 Plaintiffs.

2. On December 7, 2016, this Court appointed me as Co-Lead counsel of MDL 2741- *In Re: Roundup Products Liability Litigation* ("Co-Lead Appointment") and appointed Michael Baum of the law firm Baum Hedlund Aristei & Goldman, P.C. ("Baum Hedlund") as a member of the Executive Committee.

- 1 -
AIMEE H. WAGSTAFF, ESQ.'S DECLARATION
3:16-md-02741-VC

3. Prior to, and since that Co-Lead Appointment, I have had first-hand experience working with the Baum Hedlund law firm and its attorney, Mr. Brent Wisner. During that time, I have observed both Baum Hedlund and, specifically, Brent Wisner, to practice with integrity and high ethical standards. At no time have I witnessed any bad faith or deceptive behavior by Baum Hedlund or Brent Wisner. Further, in my opinion, both the Baum Hedlund law firm and Brent Wisner enjoy a long standing reputation of zealous advocacy and ethical behavior.

4. I do not believe it was Baum Hedlund or Brent Wisner's intent to deceive Monsanto or its lawyers and I do not believe either acted in bad faith. It is evident from the competing papers that confusion existed, but I believe that confusion resulted from bad communication rather than bad faith.

5. The MDL Protective Order was adopted from member case *Hardeman v. Monsanto Co.*, 3:16-CV-00525-VC, United States District Court for the Northern District of California. I am lead counsel of record for Mr. Hardeman and I negotiated the terms of the Hardeman Protective Order with Monsanto's lawyers. I have specific memories of telling Monsanto's lawyers during the negotiation process that the challenge process needed to be clear because Andrus Wagstaff intended to aggressively challenge confidentiality over-designations. Meaning, Monsanto knew our intent to challenge when the challenge process was negotiated and submitted to this Court as a stipulation. The negotiation process was comprehensive and contentious and our disputes were included in a Hardeman Case Management Conference Statement. Eventually, the Parties found common ground and submitted a stipulated Protective Order to the Court, which eventually became the MDL Protective Order.

6. I do not believe the MDL Protective Order, in connection with PTOs 15 and 20, was violated. However, because the Court's PTO 28 requested that we put that issue aside for the moment, I merely incorporate Plaintiffs' Opposition to Monsanto's Application for Emergency Relief herein as support of why the Protective Order was not violated. *See*, Opposition to Monsanto Company's Application for Emergency Relief, ECF No. 430.

    o In response to the Court's concern that the pace of MDL document production has resulted in an over-production of documents that the MDL Plaintiffs would not otherwise have access to, it is worth noting that almost half of the documents in this MDL litigation were produced to state court plaintiffs ***prior*** to the formation of this MDL. Further, the documents produced since the creation of MDL 2741 are also produced for all state court cases too, several cases of which are not bifurcated. Monsanto does not – and cannot – argue that Plaintiffs are not entitled to these 86 documents, or any of the documents Plaintiffs have challenged in the MDL.

7. On May 8, 2017, I sent to the Hollingsworth firm a letter challenging 42 documents that were improperly stamped confidential. *See*, Ex. 1, May 8, 2017 Challenge Letter. In the challenge letter, I stated my desire to provide the documents to California's Office of Environmental Health Hazard Assessment (OEHHA) for consideration in determining Roundup's "safe harbor" status. Not one of the forty-two (42) documents contained confidential information, and since our challenge, Monsanto has never so claimed. As I

wrote in the May 8 challenge letter, at that time I believed the deadline to submit documents to OEHHA was May 22 – merely two weeks from the challenge letter. *See*, Ex. 1, Paragraph 1. That OEHHA deadline was subsequently moved to June 22, 2017, which extension I communicated to Monsanto on May 10. Either way, it was clear to me that we did not have the luxury of time to go through the Protective Order's challenge process which includes a 30-day meet and confer, followed by motion practice. Feeling the press of the OEHHA deadline, I followed up with Monsanto's counsel on May 9 and again on May 10. On May 10, I informed Monsanto that we would be filing a joint letter brief[1]. Incredibly, however, we never received a response from Monsanto. In fact, it was not until Monsanto's Emergency Relief Reply brief filed on August 7 (some 60 days later) that I had confirmation that anyone at the Hollingsworth firm even *received* the challenge letter and subsequent e-mails[2].

8. The following day, on May 11, 2017, the Court held an MDL status conference. During that conference, the Court appeared unhappy with certain aspects of the MDL litigation process. After that hearing, Plaintiffs made the decision to hold off on submitting a joint letter brief. Moreover, because Plaintiffs never received the courtesy of a response from Monsanto regarding the confidentiality of the documents, we did not believe we needed to let them know about our decision.

9. A few weeks passed and on June 20, 2017 – two days before the new OEHHA deadline to submit comments and documents - Monsanto injected MDL discovery into the debate by submitting Dr. Blair's MDL deposition transcript along with Monsanto-friendly exhibits to OEHHA, arguing in the submission that Dr. Blair's testimony discredited IARC's glyphosate determination and requesting that OEHHA not list glyphosate as a known carcinogen. *See*, Ex. 2, Letter from Phillip W. Miller, Vice President of Global Affairs, Monsanto Company to Carol Monahan-Cummings, Chief Counsel of OEHHA (June 20, 2017).

10. After Monsanto's June 20, 2017 letter, MDL leadership revisited our May 8 challenge. Although a colorable argument could be made that Monsanto's failure to respond to the May 8, 2017 challenge acted as a waiver of the confidential designations, in an abundance of caution, we decided we needed to re-challenge the documents and use the triggering language from PTO paragraph 16.2 as well as add a "relevancy" description for each challenged document to comply with PTO 15. Co-Lead counsel appointed Brent Wisner to the task of challenging the documents on behalf of MDL leadership through the Protective Order challenge process.

---

[1] Notably, the decision to use the joint letter brief over the Protective Order process was simply due to time constraints, not because I believed that was our sole recourse as Monsanto claims in its Reply brief on Page 3, lines 14-15.

[2] In its Reply, Monsanto claims it did not respond to the May 8 challenge letter because, "Monsanto did not need to, and did not, repeat its confidentiality claims by *pro forma* response letter." Reply, Page 3, 13-14. I am not sure what that means, and, why, then, did Monsanto feel it needed to respond to the June 30, 2017 challenge?

- 3 -

AIMEE H. WAGSTAFF, ESQ.'S DECLARATION
3:16-md-02741-VC

11. On June 30, 2017, Mr. Wisner re-challenged the 42 documents, plus 44 additional documents (86 documents in total). The challenge included a 28-page chart with a PTO 15 relevancy description for each document. *See*, Ex. 3, June 30, 2017 Challenge Letter and Relevancy Chart.  This time, because the letter contained the triggering language from paragraph 16.2 of the PO and also included the PTO 15 relevancy requirement, Monsanto responded.  Because Monsanto never responded to my previous challenge of the exact same documents, I believed that Monsanto viewed this challenge differently and now knew we were operating within the Protective Order challenge process and, therefore, knew it had an obligation to file a motion to maintain confidentiality within 30 days.  To further my belief, in referencing the 14-day meet and confer requirement from the Protective Order, Monsanto's attorneys' made themselves available on the afternoon of the 13th day and the parties engaged in a meet a confer on July 13, 2017.

    o In its Application for Emergency Relief, Monsanto declares that the "86 documents include 24 documents that this Court expressly refused to de-designate in response to an earlier attempt by Plaintiff." *See,* ECF No. 416, Page 1:7-8. That statement is misleading.  I assume Monsanto is referring to the language in PTO 15 which states that Plaintiffs' challenge "dispute is resolved in favor of Monsanto" and then purports to add a relevancy requirement to future challenges. If that is what Monsanto is referencing, the Court did not actually review the 24 documents for relevance or confidentiality.  Instead, the Court instructed Plaintiffs that they needed to explain why the documents are relevant in this litigation before it would entertain a challenge by Plaintiffs – a requirement that Plaintiffs complied with in the June 30, 2017 challenge by including an additional column on the spreadsheet describing each documents relevance. *See,* PTO 15, Page 4.

12. I participated in the July 13, 2017 telephonic meet and confer.  Despite the fact that Plaintiffs had provided a 28-page document detailing the relevancy of each challenged document to the MDL litigation, during the meet and confer, Monsanto's attorneys were not prepared and/or not willing to discuss the substance of any particular document; neither the relevancy nor confidentiality. I did not authorize the meet and confer to be recorded, and I do not believe it was recorded. To the best of my recollection,

    o Prior to ending the call, Mr. Wisner told Monsanto that he believed the <u>Plaintiffs</u> had two choices: (1) file a joint letter brief; or (2) file a Motion as set forth in the Protective Order.  Monsanto wanted Plaintiffs to file a joint letter brief so that exhibits would be prohibited, and thus the sealing process would not be involved. With almost a laugh in his voice, Mr. Wisner then said another option is that Plaintiffs' could drop the challenge but stated that wasn't likely to happen. It was clear on the call that Plaintiffs were not going to drop their confidentiality challenge and any argument that Monsanto's attorneys believed Plaintiffs would drop their confidentiality challenge seems to me as disingenuous.

    o If Plaintiffs elected to file a Motion, they did not need to coordinate further with Monsanto.  However, if Plaintiffs agreed to a joint letter brief, further coordination with Monsanto would be required. Mr. Wisner told Monsanto's attorneys he would caucus with Plaintiffs' leadership and let them know what course of action

- 4 -

AIMEE H. WAGSTAFF, ESQ.'S DECLARATION
3:16-md-02741-VC

    Plaintiffs' decided regarding a joint letter brief versus a Motion. At no point did Mr. Wisner, or anyone on the meet and confer, tell Monsanto's attorneys that Monsanto's obligations under the Protective Order were dependent on Plaintiffs' decision. At no time during the meet and confer did Monsanto's attorneys state that they believed Monsanto's obligations contained in the Protective Order were dependent on Plaintiffs' decisions/actions or otherwise waived. Because Monsanto's attorneys were, in fact, following the Protective Order challenge process, I believed everyone was operating pursuant to the same deadlines – the ones imposed by the Protective Order.

13. On July 27, 2017, I was carbon copied on an e-mail Mr. Wisner sent to Mr. Gary Rubin (Monsanto's point of contact on this challenge) stating,

    "We have discussed the issue internally, and Plaintiffs have decided that we will not be filing a joint discovery letter with the Court concerning the confidentiality designations challenged in my June 30, 2017 letter." *See*, Ex. 4, July 27, 2017 E-mail from Brent Wisner to Gary Rubin.

14. I believed in good faith that the July 27, 2017 e-mail was sufficient notice to let Monsanto's attorneys know they needed to file a Motion. I did not – and do not - believe this e-mail was sent with the intent to deceive Monsanto or its attorney. At no point in this challenge process did Monsanto's attorneys state that they believed they did not need to file a Motion, and at no time did they request extra time to file a motion.

15. Importantly, and in support of my good faith belief, prior internal correspondence between myself and Mr. Wisner demonstrates that Mr. Wisner did not send the July 27, 2017 e-mail to Mr. Rubin as an attempt to trick or deceive Monsanto but instead sent that e-mail for the exact opposite reason – to alert Monsanto that it was on the clock to file something pursuant to the Protective Order.

16. At no time did I believe that Monsanto thought it was relieved of its obligation to file a motion to maintain confidentiality. And, at no time did I believe Plaintiffs' counsel had engaged in any behavior to make Monsanto believe it didn't have to file a motion to maintain confidentiality. In fact, when I went to bed on July 31, 2017, I believed I would wake up to a motion to maintain confidentiality filed by Monsanto relating to the 86 documents. I was surprised no motion was filed.

17. While it was, and remains, my belief that Monsanto waived confidentiality by failing to follow the Protective Order challenge process, I did not appoint, authorize, or direct the posting of the documents on Baum Hedlund's website or anywhere else. Even so, I do not believe Baum Hedlund or Brent Wisner acted in bad faith by publishing the documents on the Baum Hedlund website.

18. My intention is to attend the August 24, 2017 hearing, and I will be prepared to answer any further questions the Court may have.

Dated: August 14, 2017          Respectfully Submitted,

*/s/ Aimee Wagstaff*
Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360

*Co-Lead Plaintiffs' Counsel*
*For MDL 2741*

- 6 -

AIMEE H. WAGSTAFF, ESQ.'S DECLARATION
3:16-md-02741-VC