# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 2741<br><br>**DECLARATION OF ROBIN GREENWALD IN RESPONSE TO PTO 28: ORDER TO SHOW CAUSE DATED AUGUST 9, 2017** |

I, Robin L. Greenwald, submit this declaration in response to the Court's Pretrial Order No. 28: Order to Show Cause (OTSC), dated August 9, 2017. Doc. 442. I am submitting this declaration in my individual capacity, as a co-lead counsel of this MDL, and on behalf of the law firm of Weitz & Luxenberg (WL or the Firm). For the reasons explained below, neither I nor any other counsel at the Firm participated in, or had advance knowledge or notice of, the online posting or any other publication of the challenged documents. Monsanto Company (Monsanto) has not produced a single piece of evidence or information, or reason to believe, that I or members of the Firm engaged in the conduct that is the subject of the OTSC. In further response, I state the following.

1. On August 2, 2017, Monsanto filed an Application for Emergency Relief (Emergency App.). Doc. 416. Plaintiffs submitted an opposition to that motion on August 4, 2017. Doc. 430. Monsanto submitted a reply on August 7, 2017. Doc. 435. On August 9, 2017, this Court held a telephonic hearing on Monsanto's emergency motion, and I appeared via telephone at the hearing. On that same date, this Court issued Pretrial Order No. 28: Order to Show Cause; Order re De-Designation.

2. Without any evidence, Monsanto accused WL, and me, of acting against this Court's rules by giving permission to an Executive Committee Firm member to publish documents that were the subject of a confidentiality de-designation process pursuant to the Protective Order that governed this multi-district litigation (MDL) at the time. Doc. 64. Such an accusation, without any knowledge or information to support its accuracy, is improper. Monsanto had no good faith basis to make that accusation.

3. I have had numerous conversations with Monsanto counsel during the course of this litigation. Indeed, during the time it was presumably drafting its

Emergency App., I had at least one conversation with counsel for Monsanto regarding deposition scheduling (although, of course, I do not know whether that counsel knew about the Emergency App.). I was also on the August 1, 2017 meet and confer telephone call initiated by Monsanto following the posting of the documents but prior to Monsanto filing the Emergency App. During these discussions, Monsanto's counsel never asked me if I, or anyone at WL, knew that the challenged documents were going to be made public at the conclusion of the challenge period. Had Monsanto's counsel asked me, I would have answered "no." That Monsanto signed a pleading with this Court that accuses me and/or WL of acting in bad faith, without confirming the accuracy of what is, in fact, a false accusation is inexcusable.

4. To make the record clear regarding what I and WL understand transpired regarding the 86 documents that are the underlying subject of the OTSC, I state the following:

5. On June 23, 2017, Brent Wisner asked me whether I would support an effort to pursue de-designation of certain documents. According to his email, he had already communicated with other co-lead counsel about his request to pursue de-designation of the documents. Following discussions with co-lead counsel, co-lead counsel agreed that Mr. Wisner and Baum Hedlund would engage the meet and confer process related to confidentiality of the documents.

6. I supported the effort to seek de-designation of the 86 documents based on my belief that it was prudent to pursue de-designation of select documents in July as compared to pursuing de-designation during expert depositions and *Daubert* and summary judgment motions in the fall. As the Court is aware, expert depositions are underway and

*Daubert* and summary judgment motions quickly follow: expert depositions end on September 22, 2017, followed by Monsanto's *Daubert* and summary judgment motions on October 6, 2017, and Plaintiffs' oppositions to those motions and affirmative motions are due 21 days later. I believe that the documents are relevant to Plaintiffs' *Daubert* and summary judgment motions and are likely to be utilized by the Plaintiffs when those motions are briefed. Accordingly, Plaintiffs sought to de-designate these documents in advance of the relevant briefing period so that Plaintiffs' papers would be publicly filed, rather than filed under seal. The Ninth Circuit has a strong presumption for public access to filings in litigation, especially documents filed in support of or in opposition to motions for summary judgment.[1] Further, not only does the Ninth Circuit disfavor sealed filings, but as this Court is aware, the process of filing documents under seal is laborious and time consuming and requires an inordinate amount of time and effort from the Court's staff. Had Plaintiffs waited to initiate the de-designation process, however, it would have been impossible to ensure the documents were appropriately de-designated by the time of summary judgment and *Daubert* briefing.

7. While there are many more documents than the 86 challenged documents at issue here that might be relevant to the *Daubert* and/or summary judgment briefing, I believed the 86 selected documents would be relevant to our upcoming motion practice, particularly as Monsanto has been involved in a global media campaign against Plaintiffs based, in part, on its assertion that regulatory agencies around the world have not found Roundup® to be unsafe. In fact, Monsanto raises this argument with the Court often.

---

[1] *See, e.g., The Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016) (9th Cir. 2016); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003).

Thus, Plaintiffs reasonably believe that Monsanto will use regulatory decisions to support its summary judgment motion. But, by and large, regulatory agencies only receive what information Monsanto provides to them. Making a good faith effort to meet and confer with Monsanto to de-designate these documents prior to the upcoming motion practice, in my judgment, was in the best interest of the Plaintiffs. The extra time to address these issues was a strategic litigation decision, which I stand behind.

8. The de-designation process that co-lead counsel authorized Mr. Wisner to undertake followed the procedures of the Court's orders in this case. Mr. Wisner wrote a letter to Monsanto's counsel, identifying the 86 documents for which we sought de-designation and, for each and every document, he identified the document's relevance to general causation and the litigation need for de-designation. Thus, as a co-lead, I believed and believe today that the process we undertook for de-designation followed the rules and served the Plaintiffs whom we are charged to represent. Service and duty to those we represent has always been my driving force in this case.

9. In contrast, Monsanto did not negotiate in good faith. While I was not on the July 13, 2017 meet and confer, my colleague Pearl Robertson was on the call and informed me that Monsanto refused to discuss the confidential designation of even a single document. That is contrary to the rules of this Court and the MDL.

10. I learned about the posting of the documents that are the subject of this OTSC on the morning of August 1, 2017, via an email "carbon copy" from Mr. Wisner. I did not know before that time that anyone—including Mr. Wisner, any other attorney at Baum Hedlund or anyone else—planned to post the documents on a website or otherwise publish them when the 30-day time period for asserting continued designation expired, or

at any other time. I was not on any email communication in which any counsel stated, suggested or otherwise implied that the documents would be published.

11.    As is evident from a Google search—which Monsanto's counsel seemingly did not bother to undertake—neither I, nor anyone else from the Firm, talked to reporters at any time about the 86 documents. Nor did my firm, or I, publish or otherwise release any of the documents.

12.    Replacing the Firm or me from leadership in this case would be unjust both to the Plaintiffs and to the Firm and me. The Firm and I, along with co-lead counsel, have been working tirelessly to prepare the general causation phase of this case. Since December 2016, co-lead counsel has taken 14 depositions, served six expert reports, defended one expert deposition, reviewed hundreds of thousands of documents in preparation for the upcoming *Daubert* and summary judgment motions and hearing, and much more. Counsel is scheduled to defend another five expert depositions and to prepare for and to take seven Monsanto expert depositions by September 22, 2017. Removing the Firm or me, or for that matter other co-counsel, would cause irreparable harm to the Plaintiffs, in the midst of expert discovery and with *Daubert*/summary judgment motions occurring in only two months.

13.    My colleagues and I have acted in good faith throughout our representation of Plaintiffs. Specifically, all counsel of the Firm have acted respectfully and cooperatively in this case with counsel for Monsanto in all dealings. I believe that, if asked, Monsanto counsel would state this to be true. For example, our Firm has been the sole lead on and engaged in respectful and productive privilege log challenges, evidenced by the fact that the parties have not brought a single challenge to the Court. We have

handled *all* of the document production issues (ESI). Indeed, the February and March productions had an inordinate number of corrupt files and other production issues that required substantial coordination and cooperation among the Firm, counsel for Monsanto, and the parties' document vendors. Again, the Firm was able to resolve those issues with Monsanto counsel professionally and, I believe, Monsanto counsel would agree with this as well. Moreover, I have been the main point of contact regarding expert scheduling, and that process has been relatively seamless; again, I believe Monsanto's counsel would agree if asked. These are but a few examples. In fact, there are no situations in which the Firm or I have acted in any way other than professionally with all counsel. There is no basis for removal of the Firm or me based on bad faith.

14. Finally, the Court's OTSC requests counsel to address the following statement: "the Court is tentatively inclined to require the plaintiffs to initiate de-designation requests by filing a motion with this Court, after which a special master (hired at the plaintiffs' expense) will review the plaintiffs' motion to determine whether the disputed documents are relevant to the general causation phase of this litigation." Plaintiffs have not abused the de-designation process; they have attempted to de-designate documents consistent with their professional duties and responsibilities that they in good faith believe are relevant to general causation. In contrast, Monsanto has not been willing—and has refused—to engage in a dialogue about its confidentiality designation of any documents. Litigation is a series of negotiations and compromises, and in the de-designation process at issue here, putting aside the publication of the documents, the Plaintiffs set forth in detail why they believed the documents were relevant to general causation and their litigation need. Plaintiffs followed the rules

governing de-designation. Monsanto did not. To punish Plaintiffs, and cause them to expend money on a special master, when Plaintiffs followed the rules by requesting de-designation of documents that they reasonably believe are necessary and relevant to defending against Monsanto in upcoming summary judgment and *Daubert* motions, would be unjust. Such a sanction would essentially give a license to Monsanto to use the documents in their briefing to tell their side of the story and prevent Plaintiffs from telling theirs with Monsanto documents. It would further incentivize Monsanto not to participate in the de-designation process according the Court's order, thus rewarding Monsanto's decision not to engage in the meet and confer process for the 86 documents at issue here. Finally, as a practical matter, with 21 days between when Monsanto's filing is due and when Plaintiffs' opposition and affirmative motions are due, there would be no meaningful opportunity to brief these issues before the Court, have a special master review and decide the issues, and then timely file Plaintiffs' responses. It would ensure that *Daubert* and summary judgment motions would be filed, in part, in secret. Coupled with requiring Plaintiffs to pay for the full expense of that endeavor, such an order would be unfair and materially compromise Plaintiffs' right to seek justice and fairly litigate their case.

15. I will be in Court on August 24, 2017, to answer any additional questions the Court might have regarding the de-designation process, the publication of the documents or any other matter relating to this MDL.

Dated: August 14, 2017

Robin L. Greenwald