R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 2741<br><br>**R. BRENT WISNER'S AND BAUM HEDLUND'S RESPONSE TO PRE-TRIAL ORDER NO. 28: ORDER TO SHOW CAUSE**<br><br>HON. VINCE CHHABRIA<br><br>HEARING:    AUGUST 24, 2017<br>TIME:          10:00 A.M.<br>LOCATION:  COURTROOM 4 |

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS...................................................................................................... i

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    I.    Procedure for Correcting Over-Designation of Documents ......................................... 2

    II.    Consistent with the Court's Procedures for Challenging Confidentiality, Plaintiffs Identified 86 Documents Which Were Overdesignated "Confidential" and Challenged them Pursuant to the Protective Order and PTOs 15 and 20 ............. 3

    III.    Monsanto Tells Plaintiffs to, Literally, "Go Away" and Refuses to Engage in Any Document-by-Document Meet-and-Confer ............................................................ 4

    IV.    Monsanto Waived Any Claim to Confidentiality to the Challenged Documents by Failing to File a Motion Pursuant to Section 16.3 of the Protective Order ........... 5

    V.    Plaintiffs' Counsel, R. Brent Wisner, Sends the Declassified Documents to the Office of Inspector General for the Environmental Protection Agency, Members of the European Parliament, and the State of California's Office of Environmental Heath Hazzard Assessment, and Posts Everything on His Law Firm's Website ............................................................................................................ 6

LEGAL STANDARDS ........................................................................................................ 6

    I.    The Law Regarding the Public Disclosure of Discovery Material ............................. 6

    II.    The Law Regarding Sanctions ................................................................................. 8

ARGUMENT ....................................................................................................................... 8

    I.    Mr. Wisner and Baum Hedlund Did Not Act in Bad Faith by Making the 86 Documents Public Because There Was No Longer a Live Dispute as of August 1, 2017 ......................................................................................................................... 8

    II.    The Record Indicates that Monsanto's Counsel, Not Mr. Wisner or Baum Hedlund, Violated the Requirement that Lawyers Work with Opposing Counsel in Good Faith ....................................................................................................... 13

    III.    Sanctions Are Inappropriate Here Because There Has Been No Release of Information Warranting Confidential Protection ...................................................... 14

    IV.    Should the Court Impose Sanctions, Those Sanctions Should Be Limited to Mr. Wisner, Not Baum Hedlund or the MDL Leadership ............................................... 15

CONCLUSION .................................................................................................................. 15

# **INTRODUCTION**

Imposing sanctions against Brent Wisner, Baum Hedlund, or the MDL leadership would be unfair and improper.  Mr. Wisner did not act in bad faith in dealing with Monsanto's counsel.  In fact, Mr. Wisner repeatedly went beyond what was required under the Protective Order and in PTOs 15 and 20 by facilitating the discussion and review of the 86 challenged documents.  And yet, at each step of the way, Mr. Wisner was either ignored or told to "go away" by Monsanto's counsel.  The only bad faith in this dispute came from Monsanto, not Plaintiffs.

Mr. Wisner was not obliged to file a motion with this Court.  The duty to file a motion when the parties reach an impasse rests exclusively with the Designating Party, as specifically stated in the Protective Order.  It is a duty that has its roots in Ninth Circuit case law and the traditions of this Courthouse.  Failure to take action to justify a confidentiality designation results in waiver.  Period.  And, once those documents lost their confidentiality, Mr. Wisner was fully within his rights to make them available to the public.

Despite Monsanto's accusations to the contrary, Mr. Wisner did not trick or deceive Monsanto's counsel.  From the beginning, Mr. Wisner was frank and honest with Monsanto's counsel about applying the procedures set forth in Paragraph 16 of the Protective Order.  And, while Mr. Wisner did not directly advise Monsanto's counsel about their obligation to file a motion within 30 days, the language of the Protective Order that Mr. Wisner cited to and relied on in his June 30, 2017 letter is clear and unambiguous:  "Failure by the Designating Party to make such a motion including the required declaration within 30 days . . . shall automatically waive the confidentiality designation for each challenged designation."  Thus, by August 1, 2017, 31 days had elapsed without Monsanto having filed the required motion and there was no longer, per the Protective Order, a live dispute regarding the confidentiality of the documents.  Confidentiality was waived.

Put simply, Mr. Wisner violated no order and followed the Court's Protective Order and PTOs 15 and 20 to the letter.  At every step of the way, Mr. Wisner gave Monsanto an opportunity to take some action to explain why any of the 86 challenged documents were properly designated confidential.  And, after a month of inaction by Monsanto, the built-in penalties of the Protective

1    Order kicked in. Therefore, when Mr. Wisner made the documents publicly available, there was no

2    longer any live dispute that required Court intervention.

3                                                    **BACKGROUND**

4    **I.      Procedure for Correcting Over-Designation of Documents**

5            The Court entered the Protective Order on December 9, 2016 (Dkt. 64).  In it, the parties

6    stipulated "that this Order ***does not confer blanket protections on all disclosures or responses to***

7    ***discovery*** and that the protection it affords from public disclosure and use ***extends only*** to the

8    information or items that are ***entitled*** to confidential treatment under the applicable legal principles."

9    PO ¶ 2 (Dec. 9, 2016, Dkt. 64) (emphasis added).  Recognizing the importance of expediting

10   discovery, the parties agreed that "[i]f it comes to the designating party's attention that information or

11   items that it designated for protection do not qualify for protection, that designating party ***must***

12   promptly notify all other Parties that it is withdrawing its mistaken designation."  *Id.* ¶ 5 (emphasis

13   added).  Thus, by the express terms of the Protective Order, each side is charged with an affirmative

14   duty to correct over-designations promptly.

15           Sections 16.2 and 16.3 of the Protective Order outline the process for challenging the

16   confidentiality of documents.  It starts with the challenging party issuing a letter specifying "each

17   designation it is challenging and describing the basis for each challenge."  *Id.* ¶ 16.2.  Once that letter

18   is issued, the parties "shall attempt to resolve each challenge in good faith . . . by conferring directly .

19   . . within 14 days[.]"  *Id.*  During that meet-and-confer, "the Challenging Party must explain the basis

20   for its belief that the confidentiality designation was not proper and must give the Designating Party

21   an opportunity to review the designated material, to reconsider the circumstances, and, if no change

22   in designation is offered, to explain the basis for the chosen designation."  *Id.*  If the parties reach an

23   impasse, then it goes to the Court.  Specifically, the designating party must file a motion to maintain

24   confidentiality within 30 days of the initial notice or else "automatically waive the confidentiality

25   designation for each challenged designation."  *Id.* ¶ 16.3.  Additionally, "the Challenging Party may

26   file a motion challenging a confidentiality designation at any time if there is good cause[.]"  *Id.*

27   Importantly, "[t]he burden of persuasion in any such challenge proceeding shall be on the

                                                           2

1    Designating Party[.]" *Id.*

2         Prior to the issuance of PTO 28, there had been no amendments or alterations to the procedures

3    set forth in the Protective Order.  PTOs 15 & 20 did not alter the procedure for challenging

4    documents beyond adding a requirement that Plaintiffs demonstrate that each challenged document is

5    also relevant to the litigation.  Indeed, in PTO 20, the Court specifically explained that "In this phase

6    of the MDL, the proper remedy for overdesignation is to correct the discrete instances of

7    overdesignation that require correction given the needs of the litigation."  PTO 20 at 2 (Dkt. 266).

8    **II.    Consistent with the Court's Procedures for Challenging Confidentiality, Plaintiffs
          Identified 86 Documents Which Were Overdesignated "Confidential" and Challenged**
9    **them Pursuant to the Protective Order and PTOs 15 and 20**

10        In light of PTO 20, Mr. Wisner began drafting a letter designed to challenge a discrete set of

11   documents that directly related to this phase of the litigation.  Wisner Decl. ¶¶ 19-20.  On June 30,

12   2017, Mr. Wisner sent a letter, pursuant to Section 16.2 of the Protective Order, challenging

13   Monsanto's confidentiality designations of 86 documents.  Wisner Decl. ¶¶ 22-27.  Attached to the

14   letter was a 28-page chart, listing out each document, summarizing relevant portions, and explaining

15   why the specific document was relevant to the litigation pursuant to PTOs 15 and 20.  Wisner Decl. ¶

16   25. In the letter, Mr. Wisner specifically quoted the Court's various orders and explained the purpose

17   of the document challenge:

18        This challenge is made pursuant to Paragraph 16.2 of the December 9, 2016
          Protective and Confidentiality Order.  . . . We have reviewed each document
19        individually and selected only documents, listed out in detail on the attached chart,
          that do not contain trade secrets, sensitive commercial information, privileged
20        material, or that are otherwise entitled to "confidential" protection under the law.

21        In compliance with the Court's Pre-Trial Order 15 (PTO-15), clear reasons are set
          forth in the attached chart for why each challenged document is relevant to the
22        general causation stage of this litigation.  . . . ***All of the documents challenged in
          this letter are reasonably likely to be used in this litigation and relate to this phase***
23        ***of litigation.***

24        As you know, in the Court's Pre-Trial Order 20, the Court stated that "[i]n this
          phase of the MDL, ***the proper remedy for overdesignation is to correct the discrete***
25        ***instances of overdesignation that require correction*** given the needs of the
          litigation" and instructed the Parties to comply with the meet-and-confer process
26        outlined in Section 16.2 of the Protective Order.  . . . [T]his letter and the requested
          meet-and-confer is ***your chance to address a discrete set of documents, identified***
27        ***in the attached chart, and correct Monsanto's overdesignations.*** It is my sincere

hope that through the meet-and-confer process we can avoid burdening the Court
with having to review these documents and this confidentiality dispute can be
resolved without Court intervention.

Wisner Decl. ¶ 23 (emphasis added).  The letter asked Monsanto, pursuant to the Protective Order, to

"to conduct a good-faith review of these documents and let us know whether you will be withdrawing

these confidentiality designations[.]"  Wisner Decl. ¶ 24.

As a courtesy to Monsanto, Mr. Wisner redacted the personal information from each document,

i.e., phone numbers, email addresses, etc., and sent Monsanto's counsel a hyperlink to a repository of

the redacted challenged documents.  Wisner Decl. ¶ 25.

On July 6, 2017, Monsanto's counsel sent an email to Mr. Wisner, arranging for a meet-and-

confer on July 13, 2017—just within 14 days after the June 30 letter was served.  Wisner Decl. ¶ 30.

### III. Monsanto Tells Plaintiffs to, Literally, "Go Away" and Refuses to Engage in Any Document-by-Document Meet-and-Confer

Prior to the meet-and-confer, Mr. Wisner grew concerned that Monsanto's counsel might not be

ready to actually review each document on the July 13, 2017 call.  Wisner Decl. ¶ 32.  So, Mr.

Wisner's associate sent Monsanto's counsel an email clarifying:

> The date of our meet and confer (Thursday July 13) falls on the eve of the 14 day
> meet and confer deadline. Thus, *we expect that you will have reviewed the*
> *challenges and determined which documents have been inappropriately*
> *designated confidential and which you still contend are confidential and why.* To
> facilitate your review, please find attached the challenged documents chart with two
> additional columns where you may indicate your position with respect to each
> challenge. If you agree that a specific document will be de-designated, simply
> check the "Agree" box, or if you disagree with the challenge, please provide an
> explanation in the "Disagree" box. Please fill out the chart so that we can have an
> informal discussion about each document and decide how to proceed before
> expiration of the two week meet and confer period.

Wisner Decl. ¶ 32.  Attached to the email was a Word document listing all the challenged documents

with an additional two columns whereby Monsanto's counsel could easily fill in their objections or

simply check a box to waive confidentiality.  Wisner Decl. ¶¶ 32-33.  This is a similar process used

by Mr. Wisner's firm in other confidentiality challenges.  Wisner Decl. ¶ 33.

The parties met by phone on July 13, 2017.  The details of the phone conversation are described

in Mr. Wisner's Declaration at paragraphs 35-36.

1    During the call, Monsanto refused to discuss any document or explain why any document was

2    properly designated confidential, i.e., contained trade secret information or other proprietary

3    information.  Wisner Decl. ¶¶ 36(A)-(D).  Instead, Monsanto stated it was not required to review

4    these documents because there was no "litigation need" and that reviewing the 86 documents for

5    confidentiality would be too burdensome.  Wisner Decl. ¶ 36(B).  Monsanto stated that it reviewed

6    the 86 documents to see if any of them were cited in Plaintiffs' expert reports (but not to see if they

7    contained any confidential information).  Wisner Decl. ¶ 36(D).  And, since none of them were cited

8    in Plaintiffs' expert reports, Monsanto claimed that none of the documents warranted de-designation.

9    Mr. Wisner explained that the documents would be used beyond our expert witness reports, e.g. in

10   opposing summary judgment.  Wisner Decl. ¶ 36(E).  Monsanto literally told Plaintiffs' counsel to

11   "go away" and explained that the Court empowered Monsanto to take that position.  Wisner Decl. ¶

12   36(F).  When pressed about what Monsanto thought qualified as a legitimate "litigation need"

13   Monsanto refused to answer.  Wisner Decl. ¶¶ 36(G)-(H).  Plaintiffs inquired whether Monsanto

14   could put aside the issue of "litigation need," and at least discuss whether the original confidentiality

15   designations for the 86 documents were appropriate.  Monsanto refused.

16       At no time did Plaintiffs *ever* state that Monsanto was not required to comply with procedures

17   outlined in the Protective Order or that Plaintiffs would be withdrawing the challenge. Wisner Decl.

18   ¶¶ 36(M)-(N).  In fact, on July 27, 2017, worried that Monsanto might think that it was not under the

19   clock to file a motion because "Plaintiffs' would be filing something," Plaintiffs' counsel sent an

20   email clarifying that "Plaintiffs have decided that we will not be filing a joint discovery letter with the

21   Court concerning the confidentiality designations challenged in the June 30, 2017 letter."  Wisner

22   Decl. ¶¶ 40-45.

23   **IV.  Monsanto Waived Any Claim to Confidentiality to the Challenged Documents by Failing
         to File a Motion Pursuant to Section 16.3 of the Protective Order**

24       As of August 1, 2017, Monsanto had not filed any motion to protect the confidentiality of the

25   challenged documents.  Accordingly, per the Protective Order at paragraph 16.3, the documents were

26   automatically declassified.

27

**V.     Plaintiffs' Counsel, R. Brent Wisner, Sends the Declassified Documents to the Office of Inspector General for the Environmental Protection Agency, Members of the European Parliament, and the State of California's Office of Environmental Health Hazzard Assessment, and Posts Everything on His Law Firm's Website**

There is substantial public interest in the proceedings of this litigation—a fact made all too clear by the letter from members of the European Parliament earlier this month.  *See* Dkt. 385.  There are ongoing investigations by EPA's Office of Inspector General into potential collusion between Monsanto and EPA officials.[1]  The Office of Environmental Heath Hazzard Assessment for the State of California recently listed glyphosate as a substance known to cause cancer and is presently considering whether to implement a safe harbor level for glyphosate exposure.  *See* OEHHA, Glyphosate Listed Effective July 7, 2017, as Known to the State of California to Cause Cancer (Jul. 7, 2017); OEHHA, Notice of Public Hearing – Proposed Specific Regulatory Level Chemical Causing Cancer: Glyphosate (June 7, 2017).  Plaintiffs' counsel have been contacted by *all* of these regulatory and government entities to provide documents.  So, when the 86 documents were declassified, Plaintiffs' counsel sent them to the OIG, European Parliament, and OEHHA, and specifically copied Mr. Hollingsworth on the letters.  Wisner Decl. ¶¶ 46-49.  Additionally, Plaintiffs posted the letters, documents, meet-and-confer letter, and Protective Order online.  Wisner Decl. ¶ 49.  To protect privacy, Plaintiffs redacted phone numbers, email addresses, and personal information in all the released documents.

## LEGAL STANDARDS

### I.     The Law Regarding the Public Disclosure of Discovery Material

The public is permitted "access to litigation documents and information ***produced during discovery.***"  *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (emphasis added).  Indeed, "[i]t is well-established that the fruits of ***pretrial discovery*** are, in the absence of a court order to the contrary, presumptively public."  *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d

---

[1] Among the 86 documents, for instance, is additional correspondence in documents 55-57 regarding Monsanto's interaction with EPA's Jack Housenger to stall or stop an analysis by Health and Human Services Agency for Toxic Substances and Disease Registry that Monsanto feared would echo the IARC carcinogenicity findings.

1096, 1103 (9th Cir. 1999) (emphasis added).  The only way a Court may limit pretrial discovery

from public disclosure is pursuant to Rule 26, which permits the Court "for good cause, [to] issue an

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26; *see In re Halkin*, 598 F.2d 176, 188 (D.C. Cir. 1979) ("[M]aterials

obtained in discovery may be used by a party for any purpose, including dissemination to the

public.").  However, a blanket protective order, permitting any party to unilaterally designate

documents as confidential, does not meet the "good cause" requirements of Rule 26 once those

documents are challenged.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.

1992).  As soon as a document is challenged, Monsanto must make an actual showing of good cause.

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003):

> Rule 26(c) gives some precedence to one particular value: ***freedom to use
> discovered information in any lawful manner that the discovering party chooses.***
> That precedence is reflected in the Rule's demand that trial courts not issue
> protective orders unless the proponent of the order first makes a showing of good
> cause.  ***Without such a showing, no such order can issue.***

*Humboldt Baykeeper v. Union Pac. R. Co.*, 244 F.R.D. 560, 562 (N.D. Cal. 2007) (emphasis added).

There are also important First Amendment considerations at play here: "The inherent value of

speech in terms of its capacity for informing the public does not turn on how or where the

information was acquired."  *In re Halkin*, 598 F.2d at 187 (citing *First National Bank of Boston v.

Bellotti*, 435 U.S. 765, 778-783 (1978)).  "A party's right to disseminate information is far stronger

for discovery materials than for information that has been stolen or obtained in breach of contract."

*Id.*  And even through some Courts apply relaxed First Amendment scrutiny to restrictions on litigant

speech, "the Supreme Court has noted that parties have general [F]irst [A]mendment freedoms with

regard to information gained through discovery and that, absent a valid court order to the contrary,

they are entitled to disseminate the information as they see fit." *Pub. Citizen v. Liggett Grp.*, Inc., 858

F.2d 775, 780 (1st Cir. 1988) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-36 (1984)); *see

San Jose Mercury News*, 187 F.3d at 1101 (citing *Pub. Citizen* with approval); *Beckman*, 966 F.2d at

476 (same).  "[I]nformation obtained through civil discovery . . . would rarely, if ever, fall within the

classes of unprotected speech identified by decisions of this Court[.]"  *Seattle Times*, 467 U.S. at 31.

## II.     The Law Regarding Sanctions

"For a sanction to be validly imposed, the conduct in question must in fact be sanctionable under the authority relied upon." *United States v. Stoneberger*, 805 F.2d 1391, 1392 (9th Cir. 1986). This means an actual rule, statute, or order must have been violated. *See Moore v. Millennium Acquisitions, LLC*, No. SAB114CV01402DADSAB, 2016 WL 8730780, at *2 (E.D. Cal. Feb. 5, 2016) ("[S]anctions pursuant to the court's inherent power must not be contrary, and in fact, should be consistent with the Federal Rules and with other statutes."). The Ninth Circuit has held that imposing sanctions on attorneys is "an extraordinary remedy, one to be exercised with extreme caution. . . courts must use care to exercise the sanctioning power only when they are legally authorized to do so." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996).

"Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)). This is, according to the Ninth Circuit, "a high threshold." *Id.* at 649. A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan*, 78 F.3d at 436 (citation omitted). A party also demonstrates bad faith by "delaying or disrupting the litigation or hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978).

## ARGUMENT

## I.     Mr. Wisner and Baum Hedlund Did Not Act in Bad Faith by Making the 86 Documents Public Because There Was No Longer a Live Dispute as of August 1, 2017

The Court's Order to Show Cause appears focused on Mr. Wisner's intent in publicly disclosing the 86 documents on August 1,2017: "Putting aside the question of whether releasing the documents violated this Court's orders, releasing the documents under these particular circumstances appears at least to have violated the requirement that lawyers work with opposing counsel in good faith." PTO 28 at 1 (Dkt. 442). During the telephonic hearing on August 9, 2017, the Court elaborated further:

1
2
3

Mr. Wisner was aware of this dispute that was pending and made the decision --
and was aware that Monsanto took the position that the documents could not be
dedesignated, or, that is to say, the documents could not be released without
involvement of the Court.
. . .

4
5
6

**What's clear is that there was a live dispute over whether those documents
could be released and whether they could be released without first submitting
a joint letter to the Court about the release of those documents.** And Mr.
Wisner, it appears to me, operated in bad faith in releasing the documents without
coming to Court ***first***.

7

Tr. of Tel. Proceedings at 4:24-5:19 (Aug. 9, 2017) (emphasis added).

8       Prior to August 1, 2017, there was a "live" dispute that could have required the Court's

9   intervention.  Plaintiffs had challenged the confidentiality designations of 86 documents and

10  Monsanto refused to discuss or explain why those documents warranted a confidentiality designation,

11  telling Plaintiffs' counsel to, literally, "go away."  The agreed-to Protective Order *specifically*

12  contemplates how to deal with such live disputes.  It states "[i]f the parties cannot resolve a challenge

13  ***without court intervention***, the Designating party ***shall*** file and serve a motion to retain

14  confidentiality under Civil Local Rule 7 . . . within 30 days of the initial notice of challenge[.]"

15  Protective Order ¶ 16.3 (emphasis added).  Thus, by the terms of the Protective Order that Monsanto

16  agreed to follow, the onus of seeking Court intervention when a live dispute exists rests *exclusively*

17  with the Designating Party, i.e., Monsanto.  By using the words "shall" the Protective Order is

18  unequivocal on this point.  This is further highlighted by the same paragraph of the protective order,

19  which provides that "the Challenging Party **may** file a motion challenging a confidentiality

20  designation at any time if there is good cause for doing so[.]"  *Id.* (emphasis added).  The ability of

21  Plaintiffs to file a motion is limited to situations involving "good cause" and, even then, the

22  Protective Order makes it clear that filing such a motion is *optional*, not mandatory.  Once the parties

23  reached an impasse during the July 13, 2017 meet-and-confer, the responsibility to seek this Court's

24  intervention rested with Monsanto, not Plaintiff.[2]

25
26
27

_____

[2] Nothing in PTO 15 or 20 changed this aspect of the Protective Order.  In PTO 15 and 20, the Court
merely explained that, in addition to explaining why a designation was improper, Plaintiffs would
also be required to explain why that specific document was relevant to the litigation.  See PTO 15 at

9

WISNER & BAUM HEDLUND RESPONSE TO PTO NO. 28

This division of responsibility in the Protective Order, which is taken from the Northern District of California's model protective order, is based on longstanding Ninth Circuit precedent and common sense.  *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Now that the Private Intervenors have challenged the contention that the unfiled discovery documents belong under seal, the district court must require State Farm to make an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c)."); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PHJ EMC, 2007 WL 4169628, at *1 (N.D. Cal. Nov. 20, 2007) ("Upon challenge, the designating party must justify each document by showing good cause and demonstrate that specific prejudice or harm will result if the . . . documents . . . are disclosed.").  It is specifically designed to deter inaction by vesting the responsibility to act in the party benefiting from the confidential designation.

To that end, the Protective Order has an enforcement mechanism.  It provides that "[f]ailure by the Designating Party to make such a motion . . . within 30 days . . . ___**shall**___ automatically waive the confidentiality designation for each challenged designation."  Protective Order ¶ 16.3 (emphasis added).  The purpose of this provision is two-fold.  First, it creates an automatic, undisputable punishment for failing to take action to resolve a live dispute.   Dragging your feet has consequences—it *automatically* resolves the dispute in favor of the Challenging Party.  Indeed, the Protective Order specifically empowers the Challenging Party to treat documents as non-confidential once confidentiality is waived.  *Id.* ("Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protective to which it is entitled[.]").  Second, it forces a Designating Party to articulate, under the specter of Rule 11, *why* a particular document actually warrants a confidentiality designation.  This limits tedious and frivolous assertions of confidentiality.

CITE; PTO 20 at 2.  And, there is no dispute that Mr. Wisner specifically did that in the June 30, 2017 letter, stating for each document, over the span of 28 single-spaced pages, why the document was relevant to the litigation.

Thus, as of August 1, 2017, when Monsanto failed to file a motion to preserve the confidentiality of documents, there was no longer a live dispute. Any action taken to disclose the documents after that date could not, by definition, have been in "bad faith" since any dispute over the documents was resolved, *automatically*, in Plaintiffs' favor. For this Court to hold otherwise, i.e., that Mr. Wisner acted in bad faith, the Court would need to conclude that Mr. Wisner's reading of the Protective Order and PTOs 15 and 20 was deliberately disingenuous. But, a careful reading of the operative orders makes it clear that Mr. Wisner's interpretation was not only genuine, but correct.

**Did Mr. Wisner or Baum Hedlund act in bad faith by not filing a motion with Court prior to releasing the documents?** No. As of August 1, 2017, there was no need to file a motion, the issue was resolved by paragraph 16.3 of the Protective Order. Moreover, there was no obligation by Plaintiffs to file such a motion prior to August 1, 2017. The duty to seek Court intervention rested *exclusively* with Monsanto once the documents' confidentiality was appropriately challenged, pursuant to Paragraph 16.2 of the Protective Order. Plaintiffs, as the Challenging Party, were under no obligation to bring this issue to the Court's attention—indeed paragraph 16.3's requirements are designed to avoid unnecessary motions practice. To impose sanctions, the Court would need to conclude that Mr. Wisner's failure to file a motion constituted bad faith, even though the operative Protective Order specifically vested the responsibility to file motions to resolve disputes in the Designating Party.

**Did Mr. Wisner and Baum Hedlund act in bad faith by not advising Monsanto of the need to file a motion to preserve confidentiality?** No. It would be strange to sanction an attorney for not advising opposing counsel how to practice law. Mr. Wisner had no obligation to advise Monsanto that it needed to take action—the Protective Order was clear and unequivocal. Indeed, as explained in Mr. Wisner's declaration, such advice would have been unethical and violated Mr. Wisner's duty of loyalty to his clients. Wisner Decl. ¶ 43. The duty to act in good faith with opposing counsel does not abrogate the obligations of an attorney to faithfully represent their client. Indeed, under the Model Rules of Professional Conduct, "[a] lawyer is required to be truthful when dealing with others on a client's behalf, but generally has ***no affirmative duty to inform an opposing party of relevant***

*facts*." Model Rules of Prof'l Conduct r. 4.1 cmt.[1] (emphasis added).  Mr. Wisner owed no affirmative duty to inform Monsanto's counsel about their deadlines under the Protective Order.  Mr. Wisner's June 30, 2017 letter specifically cited paragraph 16.2 of the Protective Order, clearly placing Monsanto on notice of their obligations.  And, Monsanto demonstrated its awareness and understanding of the Protective Order's deadlines during the meet-and-confer.

**Did Mr. Wisner and Baum Hedlund trick Monsanto's Counsel into not filing a motion to preserve confidentiality?**  No.  This appears to be a disputed issue of fact.  Monsanto claims that Mr. Wisner told its counsel that Monsanto would not need to take any action to preserve confidentiality and that Plaintiffs would either file a motion or drop the issue altogether.  This is untrue.  Mr. Wisner never told Monsanto that Plaintiffs were withdrawing their confidentiality challenges or that Monsanto would not need to take action to preserve the confidentiality of documents.  Wisner Decl. ¶¶ 36(M)-(N).  Indeed, Monsanto claims that it started to prepare a joint letter to submit to the Court following the meet-and-confer—why would Monsanto begin preparing anything if Mr. Wisner indicated that Plaintiffs would be potentially withdrawing their confidentiality challenges? It does not make any sense. Conversely, if Monsanto believed its obligations under the Protective Order were somehow abrogated by something Mr. Wisner said during the meet-and-confer, then why didn't Monsanto's counsel reach out to clarify after Mr. Wisner's July 27, 2017 email?  There are two possibilities.  Either Monsanto strategically recognized they had no legitimate basis for continuing to assert confidentiality and that if it were to go ahead and file a motion, it would not be able to make a non-frivolous claim of confidentiality under Rule 11 or submit the required declaration,[3] or Monsanto's counsel simply forgot about their obligations under the Protective Order and are now blaming Mr. Wisner, Baum Hedlund, and the MDL leadership for their mistake. It appears that the latter is most likely as evidenced by Monsanto arguing that it did not believe it was

---

[3] And, considering this Court had previously warned Monsanto about making frivolous assertions of confidentiality, that was no idle risk. *See* PTO 15 at 5 ("If Monsanto continues to file unreasonable or unsubstantiated declarations, it will be sanctioned.").

obligated to file a motion to preserve confidentiality.[4]   It begs the question, however, how could Mr. Wisner trick Monsanto into not filing a motion that Monsanto claims it did not need to file?

That said, even if Mr. Wisner had advised Monsanto that it did not need to take action during the meet-and-confer on July 13, 2014—a fact Mr. Wisner and numerous witnesses dispute—Mr. Wisner did not have the authority to unilaterally amend the procedures outlined in the Protective Order. The Protective Order explicitly states that "[i]f the Designating Party moves the Court for additional time to file the brief, the confidentiality designation of the documents at issue ***remain subject*** to the (e.g., 21/30 days) timelines in this paragraph ***unless and until*** the court enter an order granting the extension." Protective Order ¶ 16.3 (emphasis added).  Only the Court has the authority, under the protective order, to release Monsanto of its obligation to file a motion to retain confidentiality within 30 days.

**Did Mr. Wisner and Baum Hedlund act in bad faith by making the 86 documents publicly available on August 1, 2017?**  No.  Once the documents were declassified, the documents were no longer entitled to any protection and Mr. Wisner was free to make them available to the public.  *See Phillips*, 307 F.3d at 1210.  "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc.*, 187 F.3d at 1103.  Making them available to the public did not constitute bad faith because Monsanto waived any assertion of confidentiality by failing to file a motion before August 1, 2017.

## II. The Record Indicates that Monsanto's Counsel, Not Mr. Wisner or Baum Hedlund, Violated the Requirement that Lawyers Work with Opposing Counsel in Good Faith

The Protective Order makes two references to "good faith."  The first relates to the designation of material as confidential: "the producing party may designate an entire document as 'Confidential'

---

[4] Monsanto's attorneys failed to take the proper action to preserve confidentiality.  Monsanto's counsel, therefore, needs to blame someone for their *own* inaction.  And, in that vein, they have concocted a completely unfounded argument that Mr. Wisner somehow lulled Monsanto's counsel into inaction.  However, nothing could be farther from the truth.  During the meet-and-confer on July 13, 2017, Mr. Wisner challenged Monsanto's refusal to participate in a meaningful meet-and-confer and repeatedly attempted to engage Monsanto's counsel about the documents.  The hubris that prompted Monsanto's Counsel to tell Mr. Wisner to "go away" appears to be the same hubris that led Monsanto's Counsel to believe they did not have to do anything to preserve confidentiality.

if it believes in **good faith** that any part of the document is confidential[.]"  Protective Order ¶ 4 (emphasis added).  The second states that "[t]he parties shall attempt to resolve each challenge in **good faith** and must begin the process by conferring directly . . . within 14 days[.]"  *Id.* ¶ 16.2 (emphasis added).  Thus, the Protective Order specifically requires that designations of material as "confidential" and any review of those challenges be done in good faith.  Indeed, this requirement of good faith is supported by the affirmative duty of both parties to promptly correct any inappropriate designation of material. *Id.* ¶ 5.

Here, Monsanto failed to exercise good faith on both counts.  First, Monsanto did not designate material as confidential in good faith from the beginning.  This Court has excused this misconduct citing the fast-paced discovery schedule in this case, but that excuse is largely a red herring.  Most of the documents produced by Monsanto and labeled "confidential" were produced long before this Court even opened discovery.  The documents were produced in the regular course of litigation in a different case, not because of anything this Court did.

Second, Monsanto never attempted "in good faith" to resolve Plaintiffs' document challenges.  Despite repeated attempts by Mr. Wisner and Baum Hedlund to engage in a meaningful discussion of the documents at issue, Monsanto's counsel refused to participate, even going so far as to tell Mr. Wisner and Plaintiffs' counsel to "go away."  If this Court is concerned about whether Mr. Wisner "violated the requirement that lawyers work with opposing counsel in good faith," PTO 28 at 2, then the Court should also be concerned with Monsanto's Counsel's conduct.

### III.  Sanctions Are Inappropriate Here Because There Has Been No Release of Information Warranting Confidential Protection

Putting aside, for a moment, whether Mr. Wisner or Baum Hedlund acted in bad faith, there is a fundamental problem with imposing sanctions here.  None of the released documents contain information warranting confidentiality.  There are no trade secrets or proprietary information.  Monsanto does not even attempt to make a colorable argument as to why these documents were confidential—instead, Monsanto's counsel elected to just tell Plaintiffs' to "go away."  The fact is that Monsanto's decision to designate these documents as "confidential" was improper in the first

instance, even if it was justified due to the Court's fast-paced discovery.  Thus, the release of these documents into the public domain was ultimately harmless.  They should have been public in the first place.  Indeed, had Plaintiffs or Monsanto filed a motion prior to August 1, 2017, the result would have been the same—the documents would have been declassified by the Court.  Imposing sanctions in such a situation, where there was no actual harm to any party, would seem at odds with the purpose of sanctions and the longstanding tradition of transparency in this circuit.  This is particularly true when, as here, the alleged misconduct does not appear to have violated any Court order or rule.

## IV.   Should the Court Impose Sanctions, Those Sanctions Should Be Limited to Mr. Wisner, Not Baum Hedlund or the MDL Leadership

If the Court's still believes there is sufficient cause to impose sanctions on Mr. Wisner, then it should not remove Baum Hedlund from the Executive Committee.  Such a sanction would permanently tarnish Baum Hedlund's reputation and likely impact the ability of Baum Hedlund, as a firm, from participating in other multidistrict litigation proceedings.  Removal from a position of leadership is extremely harsh.  And here, such a sanction would be grossly disproportional to the harm caused by any misconduct by Mr. Wisner in making these 86 documents—none of which contain trade secrets or proprietary information—public.   This is particularly true since it appears, by all measures, that Mr. Wisner violated no Rule or Court order.

Moreover, any sanction should not be levied against the MDL leadership.  It would undermine this MDL, with expert discovery in progress and *Daubert* imminent.  The decision to post the 86 documents to the Internet after Monsanto waived their confidentiality was made by Mr. Wisner, consistent with Baum Hedlund's practice of making de-designated documents publicly available.  Punishing attorneys in the MDL leadership, who did not participate in that decision, would be jarringly unfair, especially since the grounds for imposing sanctions on Mr. Wisner are, themselves, not well founded.

## CONCLUSION

For the foregoing reasons, Mr. Wisner and Baum Hedlund ask that the Court refrain from imposing sanctions.

1    DATED:  August 14, 2017                    Respectfully submitted,

2

3                                              By:  /s/ R. Brent Wisner
                                               R. Brent Wisner, Esq. (SBN: 276023)
4                                              rbwisner@baumhedlundlaw.com
                                               Michael L. Baum, Esq. (SBN: 119511)
5                                              mbaum@baumhedlundlaw.com
                                               BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
6                                              12100 Wilshire Blvd., Suite 950
                                               Los Angeles, CA 90025
7                                              Telephone:  (310) 207-3233
                                               Facsimile:  (310) 820-7444
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

WISNER & BAUM HEDLUND RESPONSE TO PTO NO. 28

1

## **CERTIFICATE OF SERVICE**

2

3      I, R. Brent Wisner, hereby certify that, on August 14, 2017, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

4

5                                    /s/ R. Brent Wisner
                                        R. Brent Wisner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27