1    Joe G. Hollingsworth (*pro hac vice*)
     (jhollingsworth@hollingsworthllp.com)
2    Eric G. Lasker (*pro hac vice*)
     (elasker@hollingsworthllp.com)
3    HOLLINGSWORTH LLP
     1350 I Street, N.W.
4    Washington, DC  20005
     Telephone:   (202) 898-5800
5    Facsimile:    (202) 682-1639

6    Attorneys for Defendant,
     MONSANTO COMPANY
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10   IN RE:  ROUNDUP PRODUCTS          Case No. 16-md-02741-VC
     LIABILITY LITIGATION
11                                     MDL No. 2741

12                                     **MONSANTO COMPANY'S
                                       RESPONSE TO PLAINTIFFS'**
13   This document relates to:         **COUNSEL'S RESPONSES TO ORDER
                                       TO SHOW CAUSE**
14   ALL ACTIONS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### TABLE OF CONTENTS

2                                                                                                          Page

3   1.  Plaintiffs' papers and the undisputed record show Mr. Wisner and Baum Hedlund
        acted in bad faith. ..................................................................................................... 2

4

    2.  Plaintiffs' papers show that plaintiffs' leadership team acted in bad faith and
5       abandoned their supervisory role. ............................................................................ 5

6       a.  Plaintiffs' papers show that Ms. Wagstaff actively participated in Mr. Wisner's
            bad faith conduct. ............................................................................................... 5

7

        b.  Plaintiffs' papers indicate that Mr. Miller and Ms. Greenwald ignored their
8           responsibilities as co-lead counsel. .................................................................. 6

9   3.  The Court should enter appropriate sanctions at this time, including reconstituting the
        leadership committee, amending the existing protective order, awarding monetary
10      sanctions, and ordering additional discovery. .......................................................... 7

11      a.  The Court should remove plaintiffs' counsel from their leadership positions based
            on their bad faith conduct. ................................................................................. 7

12

        b.  The Court should enter the proposed amended protective order. ...................... 9

13

        c.  The Court should impose monetary sanctions. ................................................ 10

14

        d.  Monsanto requests that the Court permit discovery into these issues. ............. 10

15

CONCLUSION .................................................................................................................... 11

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
 Case No. CV 11-01846 LHK, 2013 WL 9768650 (N. D. Cal. Oct. 2, 2013) ...............................11

*Barrera v. Monsanto Co.*,
 C.A. No. 15C-10-118 VLM (Del. Super. Ct. June 22, 2017) ..........................................................9

*In re Baycol Prods. Lit.*,
 Case Mp/ 0:01-md-01431-MJD-SER (D. Minn. June 16, 2003)..................................................11

*In re Baycol Prods. Litig.*,
 No. MDL 1431 (MJD/JGL), 2004 WL 1052968 (D. Minn. Apr. 12, 2004)................................11

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ..................................................................................................................7, 10

*City of Laredo v. Nat. Bank*,
 775 S.W.2d 729 (Tex. Ct. App. 1989) ..........................................................................................4

*Dotson v. Bravo*,
 321 F.3d 663 (7th Cir. 2003)........................................................................................................10

*Fink v. Gomez*,
 239 F.3d 989 (9th Cir. 2001).........................................................................................................7

*Hamblen v. Diamante Crossroads Plaza, LLC*,
 No. CV 08-00561-PHX-JAT, 2008 WL 5082184 (D. Ariz. Nov. 26, 2008)..................................4

*Kopitar v. Nationwide Mut. Ins. Co.*,
 266 F.R.D. 493 (E.D. Cal. 2010) .................................................................................................10

*Parker v. Upsher-Smith Laboratories, Inc.*,
 No. 3:06-cv-0518-ECR (VPC), 2009 WL 418596 (D. Nev. Feb. 18, 2009) .................................4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 No. Civil Action No. 01-12257-PBS, 2008 WL 53278 (D. Mass. Jan. 3, 2008).......................7, 8

*Plaintiffs' Baycol Steering Committee v. Bayer Corp.*,
 419 F.3d 794 (8th Cir. 2005).........................................................................................................8

*Salmeron v. Enter. Recovery Sys.*,
 579 F.3d 787 (7th Cir. 2009).....................................................................................................4, 10

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*,
    107 Cal. App. 4th 54 (Cal. Ct. App. 2003) .......................................................................4

*In re Zyprexa Injunction*,
    474 F. Supp. 2d 385 (E.D.N.Y. 2007) ...........................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 16.............................................................................................7

Federal Rule of Civil Procedure 37.............................................................................................7

Manual for Complex Litigation, § 10.21 ....................................................................................8

Manual for Complex Litigation, § 10.22 ....................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MONSANTO'S RESPONSE TO PLAINTIFFS' SHOW CAUSE RESPONSES
3:16-md-02741-VC

1    Mr. Wisner's decision to release Monsanto's confidential-designated documents in the

2    middle of the night after giving advance notice to certain media about his intent to do so is clear

3    evidence of bad faith. This decision is even more troubling given the admissions by plaintiffs that

4    they knew Monsanto maintained these documents' confidentiality designations but also believed that

5    plaintiffs' challenge was contrary to the requirements of three applicable Court Orders (and

6    particularly PTOs 15 and 20). Yet most egregious is that prior to releasing the documents, Mr.

7    Wisner rejected Monsanto's offer to seek joint resolution of the dispute by the Court, and, as Ms.

8    Wagstaff's declaration states, the release contradicted his own representation to Monsanto – made,

9    with Ms. Wagstaff on the line, at the requisite meet-and-confer – that "he believed the Plaintiffs had

10   two choices: (1) file a joint letter brief; or (2) file a Motion" (or perhaps that "Plaintiffs' [sic] could

11   drop the challenge"). Wagstaff Decl. ¶ 12, ECF 449-1. Plaintiffs' counsel did none of these, instead

12   releasing the documents and then asking the Court for "clarification" of the Orders they seemingly

13   believed were clear just hours earlier. Such gamesmanship should not be tolerated by this Court. In

14   light of this record, it is perhaps unsurprising that Mr. Wisner's response to this Order to Show

15   Cause once again seeks to shift the focus from his own bad faith conduct with irrelevant arguments

16   about the proper interpretation and validity of this Court's Orders.

17   Mr. Wisner and his firm are not the only ones who acted. Although none of the plaintiffs'

18   counsel admit their express prior knowledge of Mr. Wisner's document release, Mr. Miller's

19   response points out (what none of the other counsel mention) that prior to releasing the confidential

20   documents over Monsanto's known objection, Mr. Wisner sent an e-mail to Ms. Wagstaff and eight

21   other attorneys "advising that he planned to make these documents publicly available." Miller Resp.

22   ¶ 8, ECF No. 451. Without further discovery as suggested by Monsanto in its Application for

23   Emergency Relief and again herein, the extent of what the other members of plaintiffs' leadership

24   team knew and what they did in response is unknown. (Mr. Miller disclaims actual knowledge of the

25   contents of the email, prior to the documents' release. *Id.*) Tellingly, no one claims they told Mr.

26   Wisner not to proceed, and, at a minimum, the co-lead counsel (Ms. Wagstaff, Mr. Miller, and Ms.

27   Greenwald) failed to fulfill the responsibilities of their MDL supervisory roles.

28

1    The Court has ample authority to sanction this egregious conduct and should impose those

2  sanctions proposed in Monsanto's Application for Emergency Relief ("Emergency App."), at 9-10,

3  ECF No. 416, including to (1) reconstitute the plaintiffs' leadership, (2) amend the Protective and

4  Confidentiality Order, and (3) impose substantial monetary or other sanctions sufficient to deter such

5  conduct in the future. The Court also should order discovery regarding plaintiffs' co-lead counsel's

6  knowledge of Mr. Wisner's plan to release the documents and weigh additional sanctions in light of

7  that discovery.

8    **1. Plaintiffs' papers and the undisputed record show Mr. Wisner and Baum Hedlund**

9    **acted in bad faith.**

10   Mr. Wisner makes numerous admissions that demonstrate he acted in bad faith:

11   - He knew Monsanto wanted to maintain these documents' confidentiality designation.
12   *See* J. Brent Wisner's and Baum Hedlund's Response to Pre-Trial Order No. 28:
     Order to Show Cause ("Wisner Resp.") at 5, ECF No. 452 ("Monsanto claimed that
     none of the documents warranted de-designation."). This knowledge was also
13   reflected in a blog post on the Baum Hedlund website (accompanying the
     documents); *Monsanto Secret Documents*, Baum Hedlund Aristei Goldman PC
14   Website Screenshots (Ex. 1) ("In a meeting to discuss the matter, Monsanto told the
     plaintiffs' attorneys to 'go away'[1] and that the company **would not voluntarily**
15   **agree to de-designate any documents**." (emphasis added)), and in letters sent in
     connection with the improper disclosure: "Monsanto met with us and stated it **would**
16   **not retract claims of confidentiality over the documents we specifically**
     **challenged**."[2]

17

18   - He knew that Monsanto maintained that the confidentiality challenges were
     premature as there was no litigation need for any of these documents[3] and plaintiffs
     had therefore not complied with the threshold requirements of PTOs 15 and 20.[4]

19

20   _____

     [1] The "go away" statement was made in the context of Monsanto's counsel's explaining its
21   understanding of PTO 15 by referencing the Court's remarks prior to the entry of that Order: "But
     the bottom line is I think it is appropriate for Monsanto to say that if these documents – they may
22   not, you know, technically meet the definition of confidential in the protective order, but there's –
     they don't – they're not going to be used in this litigation, **so leave us alone. I think that is**
23   **appropriate, okay**." 2/27/17 Hr'g Tr. at 57 (emphasis added). That the meet-and-confer lasted
     almost 40 minutes, Rubin Decl. ¶ 7, ECF No. 416-1, belies any claim that Monsanto refused to
24   confer.

25   [2] Letter from R. Brent Wisner *et al.* to Members of the European Parliament at 1 (Aug. 1, 2017)
     (emphasis added), ECF No. 435-1; *see also* Letter from R. Brent Wisner to OEHHA (Aug. 1, 2017)
26   (same), ECF No. 435-2; Letter from R. Brent Wisner to Office of the Inspector General, EPA (Aug.
     1, 2017) (same), ECF No. 435-3.

27
     [3] *See, e.g.*, Wisner Resp. at 5 ("Monsanto stated it was not required to review these documents
28   because there was no 'litigation need'" and "none of them were cited in Plaintiffs' expert reports");

MONSANTO'S RESPONSE TO PLAINTIFFS' SHOW CAUSE RESPONSES
3:16-md-02741-VC

- He knew that Monsanto proposed a joint letter to the Court to resolve the dispute over the meaning of the Court's Orders. *See, e.g.*, Wisner Decl. ¶ 36(L) ("Mr. Rubin then asked whether I would consider filing a joint discovery letter, as opposed to a full-fledged motion.").

Knowing that the parties disagreed, Mr. Wisner stated at the meet-and-confer that "we could either anticipate a motion or a letter brief or, if someone talks me into it, dropping it altogether." Rubin Decl. ¶ 12. Although Mr. Wisner claims that Mr. Rubin's Declaration is "false," Wisner Decl. ¶ 36(M), Mr. Rubin's recollection is confirmed by Mr. Wisner's co-counsel, Ms. Wagstaff. *See* Wagstaff Decl. ¶ 12 ("Mr. Wisner told Monsanto that he believed the Plaintiffs had two choices: (1) file a joint letter brief; or (2) file a Motion" or perhaps that "Plaintiffs' [sic] could drop the challenge"). Furthermore, Mr. Wisner does not dispute that he discussed plaintiffs filing a motion, *see* Wisner Decl. ¶ 36(L), and he does not deny that he mentioned the possibility that plaintiffs may drop the challenge altogether. The proper next step in light of the disagreement and Mr. Wisner's representation should have been to go to the Court. But rather than take that step jointly with Monsanto or individually as he represented plaintiffs may do during the parties' lengthy meet-and-

---

*see also* Wisner Decl. ¶ 36(C) (Monsanto's counsel "explained that if this case was defeated at summary judgment, any confidentiality challenges would be mooted"), ECF No. 452-1; *id.* ¶ 36(E) (Mr. Wisner stated that "we *had* explained why each of the documents were relevant to this phase of the litigation in the document chart, but [defense counsel] disagreed"); *see also* Rubin Decl. ¶¶ 7-8 (stating that Monsanto's counsel told plaintiffs' counsel at the July 13 meet-and-confer that the purported challenges were "premature" and not a "litigation need" including because "none of plaintiffs' causation experts cited to or relied upon any of the 86 documents"), ECF No. 416-1.

[4] *See, e.g.*, Wisner Decl. ¶ 36(F) (stating that defense counsel "told me that I needed to 'go away' and explained that the Court empowered him to take that position in PTOs 15 and 20"); Notice of Motion and Motion to Clarify Rulings Related to Confidentiality of Documents at 1, ECF No. 415 (filed by Mr. Wisner, stating: "according to Monsanto, PTO Nos. 15 & 20 modified the Protective Order by requiring Plaintiffs to show that any challenged document was (1) relevant and (2) served a litigation need" and "unless the Court provides clarification, Plaintiffs are hamstrung and Monsanto will continue to tell Plaintiffs to 'go away'"); *id.* at 3 ("Monsanto claims that this order [PTO 15] supplanted the Protective order by requiring Plaintiffs to demonstrate why a document is relevant before being challenged."); *see also* Rubin Decl. ¶ 7 (defense counsel explained "to plaintiffs' counsel that their challenge to the 86 documents was not only premature but also in violation of this Court's PTO 15 and PTO 20 and directions the Court gave to both parties at the February 27, 2017 hearing that preceded PTO 15 concerning the timing of challenges to documents Monsanto designated as confidential").

1   confer process, Mr. Wisner chose to release the documents and then attempt to manage the fall-out

2   after the fact. This is a course of action designed in and grounded by bad faith.[5]

3      Any doubts about Mr. Wisner's gamesmanship and premeditated intent to claim a purported

4   "waiver" are erased by the final run-up to the July 31 document release:

5     &bull; On July 30, Mr. Wisner emailed Ms. Wagstaff and eight other plaintiffs' attorneys to tell
       them "that he planned to make these documents publicly available." Miller Resp. ¶ 8.

6

7     &bull; On July 31, Mr. Wisner spoke with Carey Gillam, a blogger with U.S. Right to Know,
       and informed her that "certain documents might be de-designated in the next 24 hours."
       Opp'n to Monsanto Co's Application for Emergency Relief ("Opp'n Mot.") at 6, ECF

8      No. 430.

9     &bull; By July 31, Baum Hedlund was preparing letters to notify regulatory agencies of the
       documents' release.[6]

10

11    &bull; Sometime before August 1, Baum Hedlund undoubtedly began drafting its motion to
       clarify this Court's orders, a motion it filed only after releasing the documents and
       despite knowing that the parties' interpretations of those orders differed in meaningful

12     ways impacting the documents at issue.

13  Mr. Wisner and his firm actively misled Monsanto's counsel to achieve their desired outcome – the

14  release of documents designated as confidential without seeking or obtaining a decision from this

15  Court.[7] Given the Court's repeated prior rulings regarding the proper processes for confidentiality

16  ───────────────

17  [5] In *Parker v. Upsher-Smith Laboratories, Inc.*, counsel's actions that were "intended to eviscerate
    the effect of this court's order" and counsel's failure to discuss their concerns about the order with
    opposing counsel or raise them with the court, though not technically in violation of the order,

18  constituted "bad faith or conduct tantamount to bad faith." No. 3:06-cv-0518-ECR (VPC), 2009 WL
    418596, at *7-8 (D. Nev. Feb. 18, 2009). Counsel in that case improperly "took it upon himself to

19  unilaterally decide how the court's ruling should be implemented" and his later-filed motion for a
    stay of the order did not excuse the prior misconduct. *Id.* at 7; *see also Hamblen v. Diamante

20  Crossroads Plaza, LLC*, No. CV 08-00561-PHX-JAT, 2008 WL 5082184, at *2 (D. Ariz. Nov. 26,
    2008) (Though not a violation of the letter of any rule, waiting to file an amended complaint until the

21  eve of a hearing challenging the prior complaint "demonstrated a level of unprofessionalism toward
    opposing counsel that support[ed] a finding of bad faith").

22

23  [6] Baum Hedlund's letter to OEHHA, sent August 1, is dated July 31 on all pages other than the first.
    *See* Letter from R. Brent Wisner to OEHHA (Aug. 1, 2017).

24  [7] It is not a defense to bad faith conduct that opposing counsel "ought to have been more wary of the

25  opposition." *See, e.g.*, *Salmeron v. Enter. Recovery Sys.*, 579 F.3d 787, 796 (7th Cir. 2009)
    ("Salmeron's argument essentially boils down to faulting USA Funds's lawyers for not protecting

26  their client from an adversary who might not be trustworthy. We cannot accept that assertion."); *see
    Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 72 (Cal.

27  Ct. App. 2003) ("[W]here one does speak he must speak the whole truth to the end that he does not
    conceal any facts which materially qualify those stated…."); *City of Laredo v. Nat. Bank*, 775

28  S.W.2d 729, 730-31 (Tex. Ct. App. 1989) ("A party should not be allowed to lull an opposing party

1    challenges, significant sanctions are now necessary to protect the orderly and fair judicial process

2    and deter counsel from making calculated decisions in the future to circumvent the Court.

3       **2.  Plaintiffs' papers show that plaintiffs' leadership team acted in bad faith and**

4          **abandoned their supervisory role.**

5          Responsibility for the bad faith demonstrated here extends well beyond Mr. Wisner and his

6    law firm. Pursuant to PTO 4, plaintiffs' co-lead counsel (Ms. Wagstaff, Ms. Greenwald, and Mr.

7    Miller) direct the Executive Committee (which includes Baum Hedlund) "in all aspects of the

8    MDL." PTO No. 4, ECF No. 62, at 3 (Dec. 7, 2016). In exercising these responsibilities, co-lead

9    counsel "authorized Baum Hedlund to proceed with the process of de-designating documents."

10   Opp'n Mot. at 5 n.5, ECF No. 430; *see also* Letter from R. Brent Wisner to Joe Hollingsworth, *et al.*

11   at 1 (June 30, 2017) ("I have been appointed by the Plaintiffs' Leadership in the MDL to work on

12   this issue with you."), ECF No. 416-2. None of the members of plaintiffs' leadership team fulfilled

13   their responsibilities to prevent the misconduct. By failing to stop Mr. Wisner's planned release

14   despite admitting that they knew of the pending confidentiality dispute, and instead opting to sign

15   the motion seeking to clarify or invalidate this Court's Orders following the document release, ECF

16   No. 415, it is clear that the bad faith conduct at issue here is not limited to Mr. Wisner or his firm.

17       **a.  Plaintiffs' papers show that Ms. Wagstaff actively participated in Mr. Wisner's bad**

18          **faith conduct.**

19          Ms. Wagstaff attempts to disclaim responsibility because she did not directly instruct Mr.

20   Wisner to post the documents to his website. Wagstaff Decl. ¶ 17. However, plaintiffs' counsel's

21   declarations clearly show that Ms. Wagstaff knew of Mr. Wisner's statement that plaintiffs would

22   either go to the Court (with or without Monsanto) or drop their challenge, *see id.* ¶ 12, and that Mr.

23   Wisner intended to release the documents, Miller Resp. ¶ 8, but she seemingly did nothing to stop it.

24          Her involvement in this saga goes back at least to the July 13 meet-and-confer in which she

25   was a participant. *See* Wagstaff Decl. ¶ 12. She also consulted with Mr. Wisner on his July 27 email

26

27   into a belief that an agreement has been made upon which the opposing party can rely and,
     subsequently, renege on the agreement.").

28

1   to Mr. Rubin, *see id.* ¶ 15; Wisner Decl. ¶ 44, and, along with Ms. Greenwald, was copied on it, *see*

2   Wagstaff Decl. ¶ 13; ECF No. 416-5. Ms. Wagstaff agreed to keep this email purposefully vague,

3   despite admitting that at the meet-and-confer Mr. Wisner had discussed either going to the Court for

4   clarification (with or without Monsanto) or withdrawing the challenge. *See* Wisner Decl. ¶ 44;

5   Wagstaff Decl. ¶ 12. Ms. Wagstaff claims that her internal correspondence with Mr. Wisner

6   demonstrates that the July 27 email was not meant to deceive, Wagstaff Decl. ¶ 15, but she failed to

7   file the correspondence that allegedly supports this assertion. Ms. Wagstaff knew of the history of

8   plaintiffs' prior confidentiality challenges, including the dropping of one such challenge in May

9   2017, *see id.* ¶ 8 (following May 11 hearing, "Plaintiffs made the decision to hold off submitting a

10  joint letter brief"), making it clear she understood (as is her job as a member of the leadership group)

11  the practice the parties had been following to this point. Even worse, Mr. Wisner emailed Ms.

12  Wagstaff and others on July 30, 2017, telling her that he intended to make these documents publicly

13  available. Miller Resp. ¶ 8. Ms. Wagstaff's own declaration fails to mention this communication or

14  claim that she told Mr. Wisner not to do so in response.[8] Ms. Wagstaff was well aware of

15  Monsanto's position throughout this dispute and Mr. Wisner's planned course of action. That she

16  seemingly did nothing to stop his reckless and bad faith conduct renders her equally culpable.

17       **b.  Plaintiffs' papers indicate that Mr. Miller and Ms. Greenwald ignored their**

18           **responsibilities as co-lead counsel.**

19       Plaintiffs' other two lead counsel also abdicated their responsibilities. Mr. Miller asserts that

20  he unequivocally recommended against engaging in further de-designation efforts beginning in May

21  2017. Miller Resp. ¶ 4. However, rather than monitoring the continuing de-designation efforts of his

22  co-counsel or stopping their efforts, he turned a blind eye and "declined absolutely to participate in

23  any such efforts thereafter." *Id.* On July 30, Mr. Miller was copied on the email that Mr. Wisner sent

24  to Ms. Wagstaff stating "that he planned to make these documents publicly available." *Id.* ¶ 8. Mr.

25  Miller admits that he knew the subject of the email, *see id.*, yet he ignored it for over 30 hours.

26

27  [8] The Court should order production of, among other things, Ms. Wagstaff's July 27 and Mr.
    Wisner's July 30 emails as well as any responses to them. *See also infra* Section 3.d.

28

1   Ms. Greenwald likewise seemingly made no effort to inform herself of the dispute discussed

2   at the July 13 meet-and-confer or to monitor Mr. Wisner's subsequent plan. She admits that a

3   member of her firm attended the meet-and-confer in her stead, Greenwald Decl. ¶ 9, ECF No. 450-1,

4   meaning that she impliedly knew or at the least had the opportunity to know what transpired if she

5   wished to. Ms. Greenwald's claim that she had no notice that Mr. Wisner planned to release the

6   documents, *id*. ¶ 10, appears to conflict with Mr. Miller's declaration regarding Mr. Wisner's July 30

7   email, which either Ms. Greenwald or a member of her firm likely received, though Mr. Miller did

8   not name all addressees. Regardless, Ms. Greenwald failed to exercise her supervisory

9   responsibilities.

10   **3. The Court should enter appropriate sanctions at this time, including reconstituting the**

11   **leadership committee, amending the existing protective order, awarding monetary**

12   **sanctions, and ordering additional discovery.**

13   A district court has inherent power "to fashion an appropriate sanction for conduct which

14   abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Sanctions under

15   the court's inherent power are available if the court finds "bad faith or conduct tantamount to bad

16   faith," and "are available for a variety of types of willful actions, including recklessness when

17   combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*

18   *v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). The district court also has authority to enforce its

19   orders under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 16, 37. Monsanto reiterates its

20   request that the Court impose those sanctions suggested in its Emergency Application, Emergency

21   App. at 9-10, including those discussed below.

22   **a. The Court should remove plaintiffs' counsel from their leadership positions based**

23   **on their bad faith conduct.**

24   Removing Baum Hedlund and Andrus Wagstaff from leadership positions is appropriate to

25   ensure the integrity of the MDL litigation. "Complex litigation requires particularly professional

26   conduct from attorneys, as judges are especially dependent on the assistance of counsel." *In re*

27   *Pharm. Indus. Average Wholesale Price Litig.*, No. Civil Action No. 01-12257-PBS, 2008 WL

28

1   53278, at *2 (D. Mass. Jan. 3, 2008) (citing *Manual for Complex Litigation* § 10.21, at 22-23 (4th

2   ed. 2004)). In selecting MDL leadership, courts are encouraged to "ensure that counsel appointed to

3   leading roles are qualified and responsible, that they will fairly and adequately represent all of the

4   parties on their side, and that their charges will be reasonable. Counsel designated by the court also

5   assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in

6   the interests of all parties and parties' counsel." *Id.* at *1-2 (quoting *Manual for Complex Litigation*

7   § 10.22, at 24); *see also id.* ("Counsel need to fulfill their obligations as advocates in a manner that

8   will foster and sustain good working relations among fellow counsel and with the court." (quoting

9   *Manual for Complex Litigation* § 10.22, at 23)). In *Plaintiffs' Baycol Steering Committee v. Bayer*

10  *Corp.*, for example, the Eighth Circuit found an attorney's removal from the PSC "reasonable" when

11  his improper handling of confidential documents "demonstrate[d] that [he] is not qualified to

12  perform the duties of a PSC member with the zeal and integrity" required. 419 F.3d 794, 807 (8th

13  Cir. 2005).

14          Further, the court should replace the other members of plaintiffs' leadership due to their

15  complicity in the bad faith conduct of Baum Hedlund. Although it is not apparent exactly which

16  attorneys received Mr. Wisner's July 30 email – and this email should be produced – it is clear that

17  others were informed of his planned course of conduct. Not one of the declarations provides any

18  indication that any of the plaintiffs' attorneys attempted to re-direct him or explains how explicit any

19  such directions were. Presumably the various counsel's responses are meant to demonstrate that

20  some individuals were unaware of what exactly was transpiring, but that is exactly the burden that a

21  leadership group agrees to undertake. Their failure to do so warrants reconstituting the leadership

22  structure in this MDL. *See, e.g.*, *Plaintiffs' Baycol Steering Committee*, 419 F.3d at 807 ("Although

23  Moll may not have been the only attorney responsible for the release of confidential documents . . .,

24  or even the attorney mostly at fault, this does not mean Moll did not engage in sanctionable

25  conduct.").

26          When plaintiffs' counsel first revealed their planned governing structure in this MDL, Ms.

27  Greenwald acknowledged that "if it turns out that it just isn't working and it's become a problem, I

28

1  think all of us would agree that Monsanto can come back into court and say, Your Honor, those

2  pledges they made in court didn't work." Nov. 16, 2016 Hr'g Tr. at 12 (relevant excerpts attached as

3  Ex. 2). That time has come.

4          **b.  The Court should enter the proposed amended protective order.**

5          Although plaintiffs' counsel now claim some confusion regarding the Protective Order and

6  this Court's subsequent rulings, the root of the problem is their bad faith. To the extent the Court

7  believes the current rules and appropriate procedures should be collected in a single Order that also

8  prevents plaintiffs' counsel from again engaging in improper conduct, Monsanto attaches a proposed

9  amended protective order. (Attachment No. 1.) This proposed order incorporates the requirements

10  set forth in PTO 15 and PTO 20, i.e., restricting confidentiality challenges to situations where the

11  documents at issue are likely to be relevant to the current phase of the litigation and requiring that

12  challenges be limited to discrete instances needed for the litigation. The proposed order also removes

13  the superseded waiver provision and language that plaintiffs' counsel have used to attempt to force

14  challenges for non-litigation purposes. If the parties are unable to agree on whether the threshold

15  requirements of "relevance" and "litigation need" have been met, the burden would rest on the

16  challenging party to bring the challenge to the court, which is the process currently in place in all

17  Roundup® state court litigation in which a protective order has been issued involving the same

18  plaintiffs' counsel that comprise the MDL leadership group.[9] A protective order incorporating the

19  above requirements, based on PTOs 15 and 20, was adopted in June by a state court in Delaware

20  overseeing coordinated, bifurcated Roundup-NHL cases. Protective and Confidentiality Order,

21  *Barrera v. Monsanto Co.*, C.A. No. 15C-10-118 VLM (Del. Super. Ct. June 22, 2017) (Ex. 3).[10]

22

23  [9] In the event the Court decides to appoint a special master to determine whether the disputed
documents are relevant to the general causation phase of this litigation, Monsanto agrees with the

24  suggestion in the Show Cause Order that the special master be paid for by plaintiffs' counsel, in light
of the circumstances that have required such an appointment. Monsanto also requests the opportunity

25  to suggest a special master, subject to Court approval.

26  [10] Ms. Greenald, Ms. Wagstaff, and Mr. Miller represent plaintiffs in Delaware. Plaintiffs proposed
the original MDL protective order, modified to conform to Delaware procedures. Plfs' Mot. for

27  Entry of a Protective & Confidentiality Order, *Barrera v. Monsanto Co.*, C.A. No. 15C-10-118 VLM
at 1 (Del. Super. Ct. June 9, 2017) (Ex. 4). Monsanto responded that "plaintiffs' proposed order [did]

28  not incorporate the MDL court's modification of its protective order due to abuses by plaintiffs'

1    **c.   The Court should impose monetary sanctions.**

2    This Court asked in PTO 28 whether it should award monetary sanctions. Monsanto suggests

3    this is appropriate as an additional sanction, and whatever monetary sanctions are imposed should be

4    substantial enough to have deterrent effects. A slap on the wrist or sanction that is seen as the cost of

5    doing business in high stakes litigation would not have deterrent effect. *Salmeron*, 579 F.3d at 797

6    ("[A] district court's inherent power to sanction for violations of the judicial process is permissibly

7    exercised not merely to remedy prejudice to a party, but also to reprimand the offender and 'to deter

8    future parties from trampling upon the integrity of the court.'" (quoting *Dotson v. Bravo,* 321 F.3d

9    663, 668 (7th Cir. 2003))); *see also Chambers*, 501 U.S. at 56 (holding that full sanctions imposed

10   by District Court under court's inherent power to sanction were appropriate "due to the frequency

11   and severity of Chambers' abuses of the judicial system and the resulting **need to ensure that such**

12   **abuses were not repeated**" (emphasis added)); *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D.

13   493, 500 (E.D. Cal. 2010) (stating that in determining appropriate sanction under inherent power,

14   courts should seek to impose sanctions that – among other objectives – "deter parties from engaging

15   in the sanctioned conduct" (citations omitted)).

16   **d.   Monsanto requests that the Court permit discovery into these issues.**

17   Plaintiffs' counsel's responses to the Show Cause Order raise numerous questions about the

18   extent of their bad faith surrounding Mr. Wisner's release of the documents. The Court should order

19   discovery to investigate the inconsistencies, omissions, and references to unfiled communications, in

20   order to determine what further sanctions may be appropriate. Monsanto attaches proposed

21   discovery for the Court's consideration. (Attachment No. 2.)

22   It is clear that plaintiffs' counsel have selectively omitted important facts. Ms. Wagstaff, for

23   example, fails to mention that Mr. Wisner consulted with her prior to sending the July 27 email to

24

25   counsel." Monsanto's Response to Plfs' Mot. for Protective & Confidentiality Order, *Barrera v. Monsanto Co.*, C.A. No. 15C-10-118 VLM at 1 (Del. Super. Ct. June 19, 2017) (Ex. 5). Monsanto

26   further explained that "[t]he procedure in the MDL protective order, requiring, under threat of waiver, that the producing party file a motion to retain confidentiality within a specific time period"

27   had "led to improper challenges and unnecessary motions that the MDL court shut down" in PTO 15. *Id.* at 6.

28

1    Mr. Rubin and fails to mention that Mr. Wisner sent her an email on July 30 discussing his plan to

2    release the documents. (Mr. Wisner also fails to mention this email.) She also states that she did not

3    "appoint, authorize, or direct the posting of the documents," Wagstaff Decl. ¶ 17, but does not deny

4    that she knew they were going to be posted ahead of time. Ms. Greenwald states only that she was

5    told that Monsanto refused to discuss the confidential designations, but does not say whether she was

6    told about Monsanto's position or whether she received Mr. Wisner's July 30 email. Greenwald

7    Decl. ¶ 9. The declarations also fail to attach a number of communications that they discuss, most

8    notably, Ms. Wagstaff's July 27 email and Mr. Wisner's of July 30.

9          As courts have recognized, the full scope of bad faith conduct may only be known when

10   discovery occurs. In *Apple Inc. v. Samsung Electronics Co., Ltd.*, the court ordered discovery in

11   connection with Apple's motion for sanctions for violation of a protective order. Case No.: CV 11-

12   01846 LHK, 2013 WL 9768650, at *2 (N. D. Cal. Oct. 2, 2013). "[L]etting Samsung and its counsel

13   investigate this situation without any court supervision is unlikely to produce satisfactory results.

14   Rarely is the fox is [sic] permitted to investigate without supervision the disappearance of chickens

15   at the henhouse." *Id.* Similarly, in the *Baycol* litigation, the court granted Bayer's motion to conduct

16   discovery into potentially sanctionable conduct. Stipulated Order Docket Entry, *In re Baycol Prods.*

17   *Lit.*, Case No. 0:01-md-01431-MJD-SER (D. Minn. June 16, 2003), ECF No. 3602 (Ex. 6); *In re*

18   *Baycol Prods. Litig.*, No. MDL 1431 (MJD/JGL), 2004 WL 1052968, at *1 (D. Minn. Apr. 12,

19   2004); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 406 (E.D.N.Y. 2007) (ordering

20   discovery against consultant who had conspired to release confidential documents in violation of

21   protective order). Discovery should occur here to determine the full contours of plaintiffs' counsel's

22   misconduct, and the Court should consider further sanctions and, if necessary, further discovery in

23   light of what is revealed.

24                                              **CONCLUSION**

25         For the reasons set forth above, Monsanto respectfully requests that the Court issue the

26   sanctions requested above and in Monsanto's Application for Emergency Relief and any other

27   sanctions the Court deems appropriate.

28

1

2     DATED: August 17, 2017                    Respectfully submitted,

3                                               /s/ Joe G. Hollingsworth
                                                Joe G. Hollingsworth (*pro hac vice*)
4                                               (jhollingsworth@hollingsworthllp.com)
                                                Eric G. Lasker (*pro hac vice*)
5                                               (elasker@hollingsworthllp.com)
                                                HOLLINGSWORTH LLP
6                                               1350 I Street, N.W.
                                                Washington, DC  20005
7                                               Telephone:   (202) 898-5800
                                                Facsimile:   (202) 682-1639
8

9                                               *Attorneys for Defendant,*
                                                *MONSANTO COMPANY*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO'S RESPONSE TO PLAINTIFFS' SHOW CAUSE RESPONSES
3:16-md-02741-VC