Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlund.com
**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 2741<br><br>**R. BRENT WISNER'S AND BAUM HEDLUND'S POST-HEARING SUPPLEMENTAL BREIF**<br><br>Hon. Vince Chhabria |

The hearing on August 24, 2017 revealed two important points.

*First*, imposing sanctions on R. Brent Wisner or Baum Hedlund would constitute an abuse of discretion.  Mr. Wisner's adherence to the processes for de-designation ordered by this Court, coupled with his sincere belief that the "live" dispute over the 86 documents was resolved by the self-executing provisions of the Protective Order, eviscerates any notion of bad-faith.  His conclusion that the dispute was over was not only reasonable in light of Paragraph 16.3 of the Protective Order, it is the *only* reasonable reading.  And, while there may have still been a dispute between the parties about whether Plaintiffs had an obligation to demonstrate that each document was relevant to the issue of causation, the Protective Order's 30-day self-executing provision had not been modified and was still

in effect. As of August 1, 2017, Mr. Wisner genuinely believed that Monsanto had cried "uncle"[1] in disputing the documents. Mr. Wisner's decision to make those documents available to the public, at that point, was not done in the face of a "live" dispute, it was *intentionally done **after*** the "live" dispute was dead, resolved in favor of the non-designating party, the Plaintiffs, by operation of the Protective Order.

The *only* way this Court could impose sanctions would be to make a factual finding that Mr. Wisner's belief was arrived at in bad-faith, i.e., with deceptive or dishonest intent. But, there is no actual evidence of that. This Court heard and saw Mr. Wisner speak on August 24, 2017. His detailed recounting of the chronology of his actions were accurate, straight forward, passionate, truthful, and reasonable. Indeed, Monsanto is not able to credibly contest any of Mr. Wisner's statements. Punishing Mr. Wisner for doing his job and getting these documents into the public domain would only empower companies like Monsanto and law firms like Hollingsworth to keep their malfeasance in the shadows. Mr. Wisner not only acted in good-faith, but with diligence in getting the shroud of secrecy surrounding these documents removed—a shroud that should never have been placed around these documents in the first place.[2] Any other conclusion would be a

---

[1] Indeed, pursuant to the Protective Order, Monsanto would have been required to file a non-frivolous claim of confidentiality with the Court including a supporting declaration. Even this Court recognized any such motion would have likely warranted costs for not being substantially justified. *See* Tr. of Proceedings at 6:21-7:5 (Aug. 24, 2017). And, in PTO 15, this Court made it very clear: "If Monsanto continues to file unreasonable or unsubstantiated declarations, it will be sanctioned. *See* Fed. R. Civ. P. 11(b)." PTO 15 at 5. Considering these facts, there is no way Monsanto could have even filed a motion with the Court that would not have, itself, violated Rule 11. Mr. Wisner's belief that the issue was dead because of Monsanto's inaction, therefore, was rational and justified.

[2] Take for example an article written by Henry Miller, a scientist of the Hoover Institute at Stanford University, criticizing IARC's assessment of glyphosate. The article was published in Forbes. *See* Henry Miller, *March Madness from the United Nations*, Forbes (Mar. 20, 2015), *available at* https://web.archive.org/web/20170220012554/https://www.forbes.com/sites/henrymiller/2015/03/20/march-madness-from-the-united-nations/#21e081ee2e9. Turns out this article was authored, word for word, by Monsanto as part of Monsanto's campaign to discredit IARC, but Mr. Miller never disclosed that fact to Forbes (or the public) before publishing it. Once these 86 documents were released, and the New York Times reported on them, "Forbes removed the story from its website . . . and said that it ended its relationship with Mr. Miller amid the revelations. . . . a Forbes spokesperson, said in a statement . . . 'When it came to our attention that Mr. Miller violated these terms, we removed his blog from Forbes.com and ended our relationship with him.'" Danny Hakim, *Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer*, NY TIMES, at B5 (Aug. 2, 2017). This just one example of how lifting the veil of secrecy fights against fake news and the disinformation tactics used by Monsanto.

perversion of the facts.  And, on this point alone, the Court should immediately vacate the Order to Show Cause.

***Second***, Monsanto's counsel has little allegiance to the truth.  One clear, undisputable example occurred during the hearing.  The Court specifically asked Mr. Hollingsworth: "In any of those filings, did you rely on any of these reports that we now know were ghostwritten by Monsanto?"  Tr. of Proceedings at 48:3-4 (Aug. 24, 2017).  Mr. Hollingsworth stated, without hesitation, "No.  You're referring to – you're referring to the 2000 article by Williams and others." *Id.* at 48:5-6.  However, in the first case filed before this case, *Hardeman v. Monsanto Co.*, 3:16-cv-525-VC, Monsanto explicitly relied on that Williams article to support the claim: "As documented in numerous scientific analyses, glyphosate is not toxic to humans or animals."  Monsanto's Motion and Memo ISO of Motion to Dismiss, 3:16-cv-525-VC, Dkt. 18 at 10 of 22, (pg. 3).[3]  Mr. Hollingsworth made a patently false statement to the Court.[4]  This, quite literally, is the definition of bad faith.[5]  And yet, where is the accountability?  Monsanto's counsel appear to have free reign in making things up, including this entire "live" dispute controversy.  This needs to stop.  Had Monsanto's lawyers actually discussed, in good faith, the bases for asserting confidentiality over the challenged documents, there would not have been no need for Court intervention.  This entire "live dispute" controversy is based on Monsanto's false, after-the-fact assertion that Mr. Wisner somehow tricked Monsanto during the meet-and-confer. It is nothing more than a *post-hoc* justification for their own failure to file a motion and supporting declaration.  The truth is simpler:  Knowing it could not defend

---

[3] Indeed, this Williams article is also cited and relied on by three of Monsanto's recently disclosed experts, indicating that even now, Monsanto is still relying on ghostwritten literature to support its "scientific" position.

[4] If Mr. Hollingsworth did not recall whether Monsanto relied on ghostwritten articles—as he will surely claim—he should have said, "I don't recall" not "No." As a seasoned litigator, it would be absurd to suggest that Mr. Hollingsworth is unaware of this distinction or its importance.

[5] "Dishonesty of belief, purpose, or motive[.]" BAD FAITH, Black's Law Dictionary (10th ed. 2014).  The Court should recall that it was also Mr. Hollingsworth who previously delayed state cases by removing them to this Court pursuant, in part, to a claim of federal officer jurisdiction.  Mr. Wisner briefed and argued the motion to remand.  During the briefing, which Mr. Hollingsworth repeatedly tried to delay, one of Mr. Wisner's clients passed away.  Monsanto, at that time, was not sanctioned for this "baseless" removal even though Monsanto could not articulate a reasonable, albeit unavailing, basis for removal.

its frivolous refusal to release the 86 documents without being sanctioned, Monsanto's counsel used hyperbole, distraction, and dishonesty to paint itself as a victim and Mr. Wisner as a villain. And worse, this Court's willingness to entertain this as a basis for sanctions will only incite further abuses.

Put simply, this Court appears to have accepted the word of Monsanto, over the word of Mr. Wisner and his colleagues, even though it is clear, as recently as August 24, 2017, that Monsanto's relationship with truth is, at best, strained. Until some punitive action is taken against Monsanto, as we head into *Daubert*, the misconduct will only get worse. It is easy to forget that (1) none of these documents should have been designated confidential and Monsanto's refusal to de-designate them after their challenge was vexatious and frivolous (*see, e.g.*, Tr. of Proceedings at 6:21-7:5; 10:1-11); (2) they are all relevant to general causation, and (3) the only reason this issue is even before the Court, wasting everyone's time, is because of *Monsanto's inaction*, not Mr. Wisner's. On this record, the Court should not only vacate the Order to Show Cause, but should strike Monsanto's filings from the record—filings riddled with vitriol and *ad hominem* attacks—and make Monsanto respond to an Order to Show Cause. That Mr. Wisner is being asked to explain himself for *following* a Court order, while Monsanto ignored that very order and thus uses its failure to effect personal attacks and engage in a misinformation campaign is disturbing and, itself, a miscarriage of justice.

However, Mr. Wisner and Baum Hedlund recognize that this dispute has consumed substantial time and resources. Spending more time and energy fending off Monsanto's baseless accusation through additional discovery and briefing is not productive at this point, particularly since the parties are in the throes of expert discovery. Mr. Wisner and Baum Hedlund did nothing improper by relying on the language of the Protective Order's self-executing provision in paragraph 16.3 and releasing these documents that were no longer (and were never properly) confidential. If this Court were to impose sanctions, that decision would be appealed immediately and, we believe, reversed. That said, this case is not about the lawyers, and to the extent these proceedings become about the lawyers and not the thousands of people suffering from non-Hodgkin lymphoma because of Monsanto's Roundup products, it is a distraction that does not serve the interests of the people who put their faith in us to get *them* justice. To that end, and with the that neither Mr. Wisner nor Baum Hedlund did anything wrong, Baum Hedlund will agree to voluntarily withdraw from the Executive

Committee following completion of the first phase of this litigation.

## CONCLUSION

Mr. Wisner and Baum Hedlund respectfully request that the Court:

(1) Vacate the pending Order to Show Cause; and

(2) Strike the following documents: Dkts. 416, 435, 457, and the first paragraph of 442.

DATED: August 28, 2017                 Respectfully submitted,

By: /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

**CERTIFICATE OF SERVICE**

    I, R. Brent Wisner, hereby certify that, on August 28, 2017, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

                                              /s/ R. Brent Wisner
                                                R. Brent Wisner