Michael J. Miller
The Miller Firm LLC
108 Railroad Ave.
Orange, VA 22960
Phone (540) 672-4224
Fax (540) 672-3055
mmiller@millerfirmllc.com

*MDL Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>HEARING: October 5, 2017<br>TIME: 10:00 A.M.<br>Courtroom 4, 17th Floor, N.D.Cal.<br>San Francisco, California |

**PLAINTIFFS' OPPOSITION TO NON-PARTY JESUDOSS ROWLAND'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

I.   Plaintiff's Motion Was Reasonable, the Request Should be Denied. ................................. 1

II.  Procedural Background ........................................................................................................ 2

III. FACTUAL BACKGROUND: ............................................................................................. 6

    a.   Jess Rowland Makes Predetermined Conclusion on CARC Review and Fails to Follow EPA Guidelines in Assessing Glyphosate. ..................................... 7

    b.   Jess Rowland Attempts to Kill Another Agency's Review of Glyphosate. ............ 8

IV.  ARGUMENT ........................................................................................................................ 9

    a.   Plaintiffs Were Substantially Justified in Filing a Motion to Compel. ................... 9

    b.   The Attorney Fees Requested by Mr. Rowland's Counsel Are Not Reasonable. .............................................................................................................. 12

V.   Conclusion ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 JW HRL, 2007 WL 1815472, at *1 (N.D. Cal. June 20, 2007) .......... 10

*Couture v. Anderson*, 2012 WL 1190259, at *4 (D.S.D. April 9, 2012) .......... 12

*Edmonds v. Seavey*, 2009 WL 1598794, at *1 (S.D.N.Y. June 5, 2009) .......... 12

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). .......... 12

*Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136, 126 S. Ct. 704, 708, 163 L. Ed. 2d 547 (2005) .......... 1

*Montesa v. Schwartz*, 2015 WL 13173166, at *3-4 (S.D.N.Y. Oct. 13, 2015) .......... 12

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988) .......... 1

*Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) .......... 10

**Rules**

Rule 37(a)(5)(B) .......... 10

**Regulations**

40 CFR 155.52 .......... 10

I. **Plaintiff's Motion Was Reasonable, the Request Should be Denied.**

The Court should deny Jesudoss Rowland's second request for attorney fees because there was a reasonable basis to move to compel Mr. Rowland to answer questions related to his post EPA employment with chemical companies. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988) (substantial justification is equivalent to "reasonable basis both in law and fact"). In fact, since the deposition of Mr. Rowland, the EPA's Office of Inspector General has launched its own investigation into allegations of collusion between Monsanto and EPA staffers, including Mr. Rowland. Exhibit A (May 31, 2017 letter from the Office of Inspector General to Congressman Ted Lieu). For the reasons set forth below, the Court should deny the request in total; however, because the Miller Firm filed the motion to compel, the motion should be directed solely towards The Miller Firm and not towards the other Co-Lead Counsel.

Although the Court suggested at the May 11, 2017 hearing that the motion to compel was "probably a little bit of overreaching," such dicta does not merit the award of attorney fees. Indeed, the Court previously declined to award attorney fees under a reasonableness standard, in connection with Monsanto's removal petition, even where Monsanto proffered "baseless" and "flimsy" theories" of removal, and where supplemental briefing demonstrated the impropriety of removal. Order Granting Motion To Remand, Doc 377; *see also Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136, 126 S. Ct. 704, 708, 163 L. Ed. 2d 547 (2005) ("attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal.").

Additionally, this is now the second time Mr. Rowland's attorneys have requested that this Court award attorney fees against moving to compel answers to questions regarding Mr. Rowland's work with chemical companies after his retirement from the EPA. Mr. Rowland first requested attorney fees on this issue in its May 9, 2017 response to this post-deposition motion to compel.

- 1 -

The Court did not award Mr. Rowland's request for attorney fees at the May 11, 2017 hearing. Doc. 282, p. 13.  Then, instead of raising the instant request at the hearing, the two law firms representing Mr. Rowland waited three months and charged him an additional $10,000.00 to repeat the previously briefed arguments on attorney fees.

II.     **Procedural Background**

On January 9, 2017, Plaintiffs filed a motion to compel the deposition of Mr. Rowland to ask questions related to whether "Monsanto exerted untoward influence over Mr. Rowland." Doc. 102.  On March 13, 2017 the Court indicated that "the testimony and documents the plaintiffs seek from Rowland would be appropriate." PTO-15, p. 2.  Based on the Court's guidance, the parties agreed to a deposition of Mr. Rowland to occur on April 24, 2017.  Attorneys for the EPA agreed that the deposition could cover five categories including "Mr. Rowland's departure from EPA in or around May 2016 and subsequent activities working for or communicating with the chemical industry."  Exhibit B, (3/27/17 Email re: Deposition of Jess Rowland)**.**  Mr. Rowland's counsel agreed that communications with the chemical industry were fair game for the deposition.  Exhibit C, (Dep. Tr. Jess Rowland at 204:19-20)

Despite that agreement, at the deposition, Mr. Rowland's counsel instructed him not to answer certain questions about his post-EPA employment:

1   ****

[redacted]

*Id.* at 16:22-18:24, *emphasis supplied*.[1]  Mr. Rowland was then asked [redacted] *Id.* at 27:17-20.   The Plaintiffs were forced to stop the deposition and seek court intervention. Graciously, the Court entertained argument from counsel on the dispute, and, then, ordered Mr. Rowland to identify the names of the companies for whom he worked. [redacted]

*Id.* at 252:18-253:3.

As noted in Plaintiffs' Motion to Compel Reply brief, [redacted]. Doc. 284, pp. 4-5.

---

[1] At the time of Plaintiffs' Motion to Compel only the Rough Draft Transcript was available, which led to some confusion as to the page citations since the formatting of the rough draft did not coordinate the transcript page number with page number of the physical document.

[2] [redacted]

- 3 -
OPPOSITION TO MOTION FOR ATTORNEY FEES
3:16-md-02741-VC

[Redacted lines 1-5]

Only after the Court ordered Mr. Rowland to answer certain questions, was it revealed that Mr. Rowland was, indeed, consulting for the chemical industry. Plaintiffs therefore proceeded to ask about communications with the chemical industry – a topic previously agreed to by Mr. Rowland's counsel. In line with that agreed upon category of questioning, plaintiffs asked how these chemical companies came to contact Mr. Rowland. Exhibit C, 268:9-269:10. Mr. Rowland's Counsel instructed him not to answer these questions.

Prior to the deposition, the Plaintiffs had requested all documents related to payments by chemical companies. Mr. Rowlands' counsel did not produce any such documents. Exhibit L. Instead they stated, "And as you know, we produced documents -- well, we didn't -- there were no documents to produce because one of the document requests was documents related to payments by the chemical industry, and there are none." *Id.* at 29:9-15. We now know that is not true. Thus, having now established that Mr. Rowland did indeed bill for his hours working with the chemical industry, Plaintiffs asked Mr. Rowlands how much he billed. Mr. Rowland's counsel instructed him not to answer. *Id.* at 276:3-9.

The Court also allowed Plaintiffs to inquire into the general nature of Mr. Rowland's



1
2
3

employment with the three chemical companies, including the time spent on such work. *Id.* at 217:1-21.  To determine the amount of time Mr. Rowland spent working with the companies, Plaintiffs naturally asked for the start date of his employment:



10

*Id.* at 247:14-248:6

11
12

As far as a general description of his work for these chemical companies, Mr. Rowland would only provide vague answers.

13
14
15
16
17

. at 251:6-11.

18
19
20
21
22
23
24
25
26
27
28

Based on Mr. Rowlands' refusal to answer questions, Plaintiffs told Mr. Rowland's counsel four times on the record that they would file a motion to compel.  *Id.* at 248:1-6, 249:3-5, 250:15-16, 251:16-19.  Even so, Mr. Rowland now claims in his request for fees that Plaintiffs did not confer with him about filing the motion to compel.   Plaintiffs proceeded to file their motion to compel on April 28, 2017 on the aforementioned categories of questions.  ECF Doc. No. 261.  Mr. Rowland filed his opposition to Plaintiffs' motion on May 5, 2017 and asked the court to consider whether attorney fees should be awarded at the hearing on the motion to compel. ECF Doc. 282, p. iii.  A hearing was held on May 11, 2017, wherein the Court denied Plaintiffs' motion to compel, but did not raise the issue of attorney fees.  Mr. Rowland's counsel likewise did not take the

opportunity to raise the issue of attorney fees at the May 11 hearing.

### III.  FACTUAL BACKGROUND:

There is more than a reasonable basis to believe that Jess Rowland had an inappropriate relationship with Monsanto and that his current post-retirement consulting with the chemical industry is a reward for his services to Monsanto. There is now an Office of Inspector General Investigation into this very issue. Further, the evidence demonstrates that Jess Rowland favored Monsanto in conducting his glyphosate assessment. Four years ago, Marion Copley, D.V.M., a 30-year career EPA scientist and recipient of numerous awards, sent Mr. Rowland a letter detailing her concerns about the carcinogenicity of glyphosate.  Exhibit D, (Letter dated March 24, 2013 from Dr. Copley to Jess Rowland). In her letter, Dr. Copley opined that the EPA should classify glyphosate as a "probable human carcinogen" and highlighted corruption within the EPA. *Id.* Specifically, Dr. Copley confronts Mr. Rowland with allegations that he and Anna Lowit (who still works at EPA) "intimidated staff on CARC and changed HIARC and HASPOC final reports to favor industry."  *Id.* Underscoring her deep concerns, Dr. Copley begs Mr. Rowland to actually consider her scientific concerns rather that "play [his] political conniving games with the science to favor the registrants [pesticide manufacturers]." *Id.*  As near as we can tell, Mr. Rowland chose the latter.

As noted above, ███████████████████████████████████████████████████████████████████. This an unfortunately common practice by Monsanto.  In fact, one former EPA employee, Mary Manibusan, cited her work with Mr. Rowland as a reason that Monsanto should give her consulting work, stating, "While in the Office of Pesticide Programs, I have had the opportunity to serve as lead toxicologist on a global pesticide review, co-chair the CARC with Jess Rowland and serve on multiple internal review...If I can offer any assistance to support Monsanto product registrations and registration reviews, please do not hesitate in

- 6 -

contacting me." Exhibit E (MONGLY01179968).

### a. Jess Rowland Makes Predetermined Conclusion on CARC Review and Fails to Follow EPA Guidelines in Assessing Glyphosate.

On April 27, 2015, following the IARC pronouncement that glyphosate was a probable human carcinogen, Bill Heydens of Monsanto wrote to colleagues to suggest "approaching EPA and…. ask if there is anything that would help them defend the situation?" Exhibit F, (MONGLY00987755-58). The following day, a different Monsanto employee, Mr. Jenkins spoke to Mr. Rowland by phone and circulated his notes of that conversation to his Monsanto colleagues. In his note taking, Mr. Jenkins reported that, with regard to the CARC investigation, Mr. Rowland had "enough to sustain [EPA] conclusions. Don't need gene tox or epi…..I am the chair of the CARC and my folks are running this process for glyphosate in reg review. I have called a CARC meeting in June." *Id.* Because this conversation occurred before IARC actually released the glyphosate monograph detailing their assessment of IARC, Jess Rowland's confidence that IARC was wrong is curious.

On September 2, 2015, Monsanto employees noted that "Jess will be retiring from EPA in -5-6 mos and could be useful as we move forward with ongoing glyphosate defense." Exhibit G (MONGLY03351983).   One month later, in October of 2015, Rowland completed his written assessment of glyphosate – concluding  glyphosate is *un*likely to cause cancer in humans.  Mr. Rowland's conclusion was not shared by other scientists in the EPA.  In fact, in a recently released internal EPA email, the Office of Research and Development ("ORD") was asked by the Office of Pesticide Programs ("OPP") (Jess Rowland's division) to review Jess Rowlands' CARC review. The ORD <u>*disagreed*</u> with Rowland's assessment stating, "Bottom line: Based on glyphosate discussions to date among ORD scientists – where we have not formally discussed a classification – I believe we would be split between 'Likely to be carcinogenic' and 'suggestive evidence.'"

Exhibit H (EPAHQ_000204). The ORD further noted that its epidemiologist "tried to communicate the nuance evaluation of the epidemiology, but that OPP insisted on dichotomizing this to be either 'causal' or 'not causal.'" *Id.*

Senior management at the EPA agreed with the ORD's assessment and decided that the October 2015 CARC report should not be released and that Jess Rowland would no longer be involved with the review. Nonetheless, the flawed CARC report was released on April 28, 2016 -- timed perfectly for a court hearing in the pre-MDL *Hardeman v. Monsanto* case before this Court. In a May 4, 2016 internal EPA email between Assistant Administrator Jim Jones, a political appointee who presided over the OPP and EPA Administrator Gina McCarthy discussing the leaked CARC report. Mr. Jones stated, "We're trying to understand how the glyphosate assessment was even in que[ue] for posting as we decided last fall that the assessment was not consistent with the Agency's guidelines and we would convene a new group to reevaluate." Exhibit I (EELI_0000037). Jones noted that "Monsanto saw it and put out a release saying EPA had confirmed glyphosate is not carcinogenic. We pulled down the glyphosate paper as soon as we learned about it. We're working with OPA on a statement which says we are in the middle of our cancer review and we will peer review it this fall before finalizing." *Id.*

b. **Jess Rowland Attempts to Kill Another Agency's Review of Glyphosate.**

In the same April 27, 2015 email, Dan Jenkins of Monsanto conveyed his conversation with Jess Rowland on another point. The Agency for Toxic Substances and Disease Registry (ATSDR) was initiating a review of glyphosate's toxicity. The ATSDR, "is a federal public health agency of the U.S. Department of Health and Human Services. ATSDR protects communities from harmful health effects related to exposure to natural and man-made hazardous substances."[8] Desperate to

---

[8] https://www.atsdr.cdc.gov/

- 8 -
OPPOSITION TO MOTION FOR ATTORNEY FEES
3:16-md-02741-VC

prevent the ATSDR review, Monsanto panics that, "we're trying to do everything we can to keep from having a domestic IARC occur w this group." Exhibit I (MONGL Y03293246). In connection with this review of glyphosate Jenkins stated:

> Jess called to ask for a contact name at ATSDR. I passed on Jesslyn's email. He told me no coordination is going on and he wanted to establish some saying '**If I can kill this I should get a medal'**. However, don't get your hopes up, I doubt EPA and Jess can kill this; but its good to know they are going to actually make the effort now to coordinate due to our pressing and their shared concern that ATSDR is consistent in its conclusions w EPA.

Exhibit F.

New FOIA documents also establish coordination between the EPA and Monsanto on the ATSDR issue. On May 19, 2015, Monsanto employee Michael Sykes wrote an e-mail to EPA employee Jim Jones, stating that "[w]e discussed briefly at the Ag Committee hearing the glyphosate review by the HHS Agency that was reviewing glyphosate and you were not aware of their review. Did you learn anything more about their efforts?" Exhibit J (EPAHQ_0006003)**.** Jones forwarded the email to Jack Housenger, head of OPP, adding "Monsanto thinks atsdr is doing a glyphosate Assessment. Could you guys run that down?" *Id.* Housenger responded stating, "Jess checked with them. They are. It is on the agenda for the general. It has been difficult to get information." *Id.* Housenger then reached out himself and was eventually able to get the ATSDR to postpone the glyphosate review. Housenger reported back to Monsanto "Dan, here is everyone I talked to [at ATSDR]. Henry was the one who ended up saying that they would put glyphosate on hold holding the OPP risk assessment release. Hope this helps." Exhibit K (MONGLY03064695)

### IV.  ARGUMENT

#### a. Plaintiffs Were Substantially Justified in Filing a Motion to Compel.

Under Rule 37(a)(5)(B), "the court must not order" attorney fees "if the motion was substantially justified or other circumstances make an award of expenses unjust." As the Supreme

- 9 -

Court has explained, "substantially justified" does not mean " 'justified to a high degree,' but rather [means] 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In order to assess whether a motion to compel was "...'substantially justified,' the court looks to whether reasonable people could differ as to whether it was appropriately raised." *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 JW HRL, 2007 WL 1815472, at *1 (N.D. Cal. June 20, 2007).

Plaintiffs had a reasonable basis in both law and fact in filing a motion to compel Mr. Rowland to answer the questions asked at his deposition. Monsanto has relied heavily on the October 2015 CARC report authored by Mr. Rowland in this litigation, as well as relying on the absence of other reviews of U.S. Government agencies on the toxicology of glyphosate. Mr. Rowland, was a central figure in supporting Monsanto on both fronts. Additionally, the conversations that Mr. Rowland had with Monsanto violated federal regulations since they were not publicly reported. Pursuant to 40 CFR 155.52, "if the Agency meets with one or more individuals that are not government employees to discuss matters relating to a registration review, the Agency will place in the docket a list of meeting attendees, minutes of the meeting, and any documents exchanged at the meeting." Mr. Rowland failed to place in the docket minutes of these meetings related to the registration review of glyphosate.

It is reasonable to inquire whether there has been a *quid pro quo* where Mr. Rowland would help Monsanto in exchange for some lucrative consulting jobs after his retirement at the EPA. This is particularly true in light of the facts set forth above and where Monsanto noted that his impending retirement would make him useful for glyphosate defense.

There were therefore three categories of questions that Plaintiffs asked of Mr. Rowland which were the subject of the motion to compel. The first category was about communications

with the chemical industry generally, which was an agreed topic. This issue was not raised during the Court's intervention at the deposition, because Mr. Rowland and his counsel represented that Mr. Rowland was not consulting for the chemical industry. After █████████ ████████████, ████████████████████████████████████████ ████████████████████████████████████. Therefore, Plaintiffs asked how and when those companies made contact with Mr. Rowland, which would shine light on whether Monsanto was involved. Mr. Rowland refused to answer. Plaintiffs were reasonable to believe that such questions did not go into specifics about the nature of his work. The questions went solely to how he acquired that work.

The second category of questions was related to billing records for the chemical industry. Plaintiffs requested these documents in its subpoena of Mr. Rowlands. Rather than object to the request, Mr. Rowland claimed that such records did not exist. After the Court's intervention, ███ ████████████████████████████████ thus, ████ ████████ ████████████ ████████████ ████████████████████████. ████ ████████████████████████████████████ ████████████████████████████████████ ████?

- 11 -
OPPOSITION TO MOTION FOR ATTORNEY FEES
3:16-md-02741-VC

███████████████████████████████
███████████████████████████████████
████████████████████████████

Exhibit C, Tr. at 254:1-11.

████████████████████████████████████████
█████████████████████
████████████████████████████
██████████████████████████████

Exhibit C, Tr. at 250:6-14. Plaintiffs had a reasonable basis to expect more than five words to get a general overview of the work that Mr. Rowland conducted with these chemical companies.

### b. The Attorney Fees Requested by Mr. Rowland's Counsel Are Not Reasonable.

In addition to the request for attorneys' fees being unreasonable, the amount of fees being requested are unreasonable. It is within the Court's discretion to determine the "reasonableness" of requested fees. *See, e.g., Montesa v. Schwartz*, 2015 WL 13173166, at *3-4 (S.D.N.Y. Oct. 13, 2015) (ordering that time preparing for depositions was not reasonable as this spent-time was not "caused" by the late cancellation of the depositions). Thus, one element of whether requested fees are reasonable is whether or not the incurred cost was "[]necessary." *See Edmonds v. Seavey*, 2009 WL 1598794, at *1 (S.D.N.Y. June 5, 2009). More broadly, courts are "charged with excluding from awards of attorneys fees hours that were not 'reasonably expended.'" *Couture v. Anderson*, 2012 WL 1190259, at *4 (D.S.D. April 9, 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). When considering whether hours were reasonably expended, Courts may consider various factors such as: cases may be overstaffed; the skill and experience of lawyers may vary; and hours may be excessive, redundant, or "<u>otherwise unnecessary</u>." *Hensley*, 461 at 434 (underscore added). Mr. Rowland, as the party seeking fees, bears the burden of demonstrating the fees incurred were reasonable. *Montesa*, 2015 WL 13173166, at *2.

Here, Mr. Rowland defends the reasonableness of the incurred fees in a cursory fashion:

"[t]he amount of hours worked on the motion to compel were reasonable, particularly so given that Plaintiffs' counsel cited no cases or court rules in its Motion to Compel . . . the time spent on this Motion for Fees was reasonable and necessary to help Mr. Rowland recoup a portion of the financial burden on him . . . [and] these tasks were staffed with an eye toward minimizing legal fees and delegating assignments to attorneys with lower billing rates when possible." Dkt. 453 at 9-10 (Non-Party Jesudoss Rowland's Motion for Attorneys' Fees and Memorandum of Law in Support).[9] These types of conclusory allegations as to reasonableness fall short of the necessity that "due process requires, at a minimum, that . . . the party seeking to be compensated provide competent evidence, such as a sworn affidavit of its claimed attorney's fees and expenses . . . ." *Montesa*, 2015 WL 13173166, at *3. Mr. Rowland failed to do so as any affidavits attached to his Motion are primarily directed at establishing the reasonableness of his attorneys' *rates,* not how they spent their time. As an initial matter, it is not clear why Mr. Rowland hired two separate law firms when both law firms hold themselves as leaders in the field. Is the suggestion that neither law firm could handle the defense alone or that one law firm has a specialty the other does not? Of course, Mr. Rowland can hire as many lawyers and law firms as he desires to represent his interests, but it is unreasonable to request that Plaintiffs reimburse Mr. Rowland for unnecessary duplication. Without further information, neither Plaintiffs nor the Court can properly address these fees.

      Moreover, when the itemized billing statements attached to Mr. Rowland's Motion are scrutinized, there are many instances of duplicative, excessive or unnecessary fees. For the sake of clarity, a sampling of the duplicative, excessive or unnecessary fees are summarized in the chart below. The dated time entries reference Dkt. 453-3 (Invoice from Vinson & Elkins LLP)

---

[9] Plaintiffs note Mr. Rowland focuses primarily on establishing the reasonableness of the requested hourly rate, which is also his burden. Plaintiffs do not dispute that Mr. Rowland's attorneys are seeking a reasonable rate based on experience, locality, and this District's prior fee awards; notwithstanding, Mr. Rowland still must demonstrate the fees were *incurred* in a reasonable manner.

- 13 -

(hereinafter "V&E") and Dkt. 453-4 (Invoice from Jacobs Law Firm PLLC) (hereinafter "JLF"). Plaintiffs respectfully request all fees sought from Plaintiffs by Mr. Rowland, as described in the chart below, be denied or reduced.

| Date | Description of Fees | Unreasonable Nature of Fees |
|---|---|---|
| May 1, 2017 | V&E and JLF both expended 1.0 hours (for a total 2.0 hours) on a conference call to discuss Plaintiffs' "Motion to Compel." | Mr. Rowland did not require two law firms, both with experienced and competent counsel, to review a Motion to Compel that, as described in Mr. Rowland's Motion, "did not cite a single case or other legal precedent." Dkt. 453 at 6. |
| May 2, 2017 | JLF spent 2.0 hours to "review FRCP and local rules re: motions and responses . . . review draft declaration . . . and call with AStewart." | Without further clarification, it appears unreasonable for an experienced attorney to spend two hours reviewing procedural rules on motions and reviewing a draft declaration that a separate individual drafted. |
| May 5, 2017 | JLF spent 0.7 hours, in part, on "letters to former employer." | Any "letters to former employer" sent on behalf of Mr. Rowland could not have related to the Plaintiffs' Motion to Compel or Mr. Rowland's instant motion. |
| May 4-5, 2017 | V&E spent 14.80 hours to "Draft opposition brief." | Without further clarification, it appears unreasonable to spend nearly 15 hours drafting an opposition brief to Plaintiff's Motion to Compel that, as described in Mr. Rowland's Motion, "did not cite a single case or other legal precedent." Dkt. 453 at 6. |
| May 5, 2017 | JLF spent 1.5 hours on "call with AStewart re: notification letters, revise letters, email letters to companies." | Plaintiffs are unaware as to what these "notification letters" reference; let alone their relevance to the instant dispute. |
| May 7, 2017 | JLF spent 5.9 hours to "draft history section of Opposition." | Without further clarification, it appears unreasonable to have expended 4.5 hours to draft a "history section" of a brief, especially given that Mr. Rowland did so in approximately one (1) page in his Motion for Fees. |
| May 8, 2017 | JLF spent 1.5 hours to "review | Plaintiffs do not know what a |

| | | |
|---|---|---|
| | Section 7 database for REDACTED draft and send email re: producer verification . . . ." | "Section 7 database" is nor can any connection between any such "database" or "producer verification" be reasonably inferred as connected to this dispute. |
| May 8, 2017 | V&E spent 2.5 hours on "Work, telephone conferences and correspondence regarding opposition to Motion to Compel." | Plaintiffs are unable to discern the nature of "Work," let alone its relation to the instant dispute. |
| May 10, 2017 | V&E spent 3.5 hours on "Prepare for motion hearing" and related tasks. | It is not readily apparent how V&E required 3.5 hours to complete this task while JLF spent 0.5 hours on the same task on the same day. In addition to be being excessive, this time is duplicative. |
| May 11, 2017 | V&E spent 5.0 hours to attend a telephonic hearing on Plaintiff's Motion to Compel as well as discussing the hearing with Mr. Rowland. | On the same day, JLF spent 2.5 hours attending the same hearing and "debrief[ing]" after the same. Therefore, this time was excessive, duplicative, and unnecessary. |
| May 11, 2017 | JLF spent 0.9 hours on "prepare bullets on the Section 7 database; confirm coverage with EPA/WCED attorney; send to trial team." | Plaintiffs do not know what a "Section 7 database" is nor can any connection between any such "database" or "EPA/WCED attorney" be reasonably inferred as connected to this dispute. |
| June 8, 2017 | JLF spent 2.0 hours on "complete review of JKeeney draft petition; review RGreene draft petition." | Plaintiffs do know what the "JKeeney" or "RGreene" petitions are, let alone their relation to the instant dispute. |
| July 5, 2017 | V&E spent 1.5 hours, in part, on "correspondence with plaintiffs' counsel regarding [motion for fees]." | By the time V&E consulted with Plaintiffs' counsel regarding their planned "motion for fees," V&E and JLF had already incurred 11.4 hours, combined, drafting their motion. Dkt 453-3 at 6 and Dkt. 453-4 at 8. Had counsel for Mr. Rowland conferred earlier, these hours and fees could have been reduced. |

**V.     Conclusion**

For the Reason set forth above, Mr. Rowland's second request for attorney fees should be

- 15 -

OPPOSITION TO MOTION FOR ATTORNEY FEES
3:16-md-02741-VC

1  denied in total.

2  Dated: August 29, 2017                    Respectfully Submitted,

3                                            /s/ Michael J. Miller

4                                            Michael J. Miller
                                             The Miller Firm LLC
5                                            108 Railroad Ave.
                                             Orange, VA 22960
6                                            Phone (540) 672-4224
                                             Fax (540) 672-3055
7                                            mmiller@millerfirmllc.com

8

9                                            *Co-Lead Plaintiffs' Counsel*
                                             *For MDL 2741*
10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2017, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system, which will send notification of such filing to the email addresses on the Electronic Mail Notice List. Also on August 29, 2017, I caused an unredacted version of Mr. Rowland's Opposition Brief to be sent via electronic mail to counsel for Monsanto and Mr. Rowland.

/s/ Michael J. Miller

Michael J. Miller
The Miller Firm LLC
108 Railroad Ave.
Orange, VA 22960
Phone (540) 672-4224
Fax (540) 672-3055
mmiller@millerfirmllc.com