

Joe G. Hollingsworth
dir 202 898 5842
jhollingsworth@hollingsworthllp.com

September 26, 2017

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court, Northern District of California

    Re: *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

To the Honorable Vince Chhabria,

    The following discovery dispute is being submitted by the parties pursuant to paragraph 15 of the Standing Order for Civil Cases Before Judge Vince Chhabria, which requires that the Parties submit a discovery dispute letter stating the nature and status of their dispute. The parties jointly request a 2-page enlargement for this discovery dispute submission.

## MONSANTO'S POSITION

    On August 21, 2017, Monsanto issued a Notice of Deposition and Subpoena *Duces Tecum* for plaintiffs' expert witness, Dr. Dennis D. Weisenburger, setting September 1, 2017 as the date of production. Monsanto's Notice to Take Oral and Videotaped Deposition of Dr. Dennis D. Weisenburger, Ex. A. Plaintiffs' counsel served objections and responses on September 2, 2017, stating as to each item that they would produce "any other documents upon which [Dr. Weisenburger] relied or considered in connection with his expert report in MDL 2741 to the extent they are responsive, properly discoverable, non-privileged and are not publicly available." The day before the deposition, on September 10, 2017, plaintiffs' counsel sent Monsanto a list of additional materials considered by Dr. Weisenburger that contained 45 citations to scientific articles and other documents.

**A.**    **Dr. Weisenburger testified at his deposition that he had drafts, emails, and other documents that he relied upon and did not produce or disclose in a timely manner.**

    At his deposition, Dr. Weisenburger testified as to the following. First, when asked whether he had any North American Pooled Project ("NAPP") draft publication(s) on glyphosate and non-Hodgkin's lymphoma ("NHL") as Monsanto requested in its subpoena, Dr. Weisenburger testified that he had drafts from 2016 and 2017 as well as emails and other documents. Deposition of Dr. Weisenburger, M.D. at 143:10-11 (Sept. 11, 2017) (hereinafter "Weisenburger Dep.") (Q: "Do you have drafts from 2016 and 2017?" A: "I do."); *Id.* at 146:3-4 (Q: "You have drafts with these tables in them?" A: "I do."); *Id.* at 157:16-23 (Q: "Yes, sir. So you do have e-mails with some other people on our list that you're calling group e-mails that pertain to the exchanges about the draft of the NAPP; is that right?" A: "I do as well.").

    Second, Dr. Weisenburger admitted *multiple times* that he relied upon the NAPP for the bases of his opinion that the epidemiological evidence on glyphosate shows an association between glyphosate and NHL. In fact, Dr. Weisenburger claimed that in his opinion, it was one of the two statistically significant epidemiology studies for glyphosate and superseded other



Honorable Vince Chhabria
September 26, 2017
Page 2

studies that it pooled that he had listed in his expert report. Weisenburger Dep. at 75:25-76:23 ("And although I don't have it listed here, if you look at the NAPP study, that shows a statistically significant increase[d] risk for NHL and for diffuse large B-cell lymphoma that is adjusted for other pesticides"); *Id.* at 77:3-7 (Q: "The two that are significant in your view are De Roos, Item 3 on your chart, and the NAPP study that you didn't actually list on your chart; is that right?" A: "Right."); *Id.* at 122:18-123:2 (testifying that the NAPP superseded the two publications that it pooled "and used the data in [a] bigger, more powerful study"). When asked why he decided not to use the NAPP, Dr. Weisenburger claimed it was merely an "arbitrary decision." *Id.* at 77:10-19. When questioned about a draft of the NAPP study produced by Aaron Blair at his deposition, Dr. Weisenburger (and plaintiffs' counsel) repeatedly questioned its validity because more recent drafts in Dr. Weisenburger's possession purportedly differ in important ways, such as the inclusion of data tables not in drafts available to Monsanto. *Id.* at 141:17-22 (A: "[A]pparently it's an accurate description of the data from this early version of the manuscript"); *Id.* at 143:20-144:7 (A: "It may have changed in subsequent manuscripts"); *Id.* at 144:21-145:6 (A: "So that should actually be reflected in table 2 of the manuscript here which you don't provide"); *Id.* at 146:1-2 (Ms. Forgie: "Objection, he's already stated there's tables missing from Exhibit 13.").

With regard to the list of 45 scientific studies and other documents disclosed to Monsanto by plaintiffs' counsel on Sunday, September 10, the day before Dr. Weisenburger's deposition (and while counsel taking the deposition was already en route to Los Angeles for the deposition), Dr. Weisenburger testified that he had reviewed the materials therein long before the day they were disclosed to Monsanto, and that at least some of them were important enough that he would have referenced them in his expert report had he been aware of them at the time he created it. *Id.* at 170:3-171:1 ("So there was a list of manuscripts that I relied on that I would have referenced in my . . . report"); *Id.* at 173:25-174:18 (stating he spent 100 hours since April 19, 2017 reviewing the 45 scientific studies on his additional materials considered list).

The examining attorney, Kirby Griffis, adjourned the deposition with one hour and twenty minutes remaining, in order to provide some time to question Dr. Weisenburger about the undisclosed and late-disclosed materials upon reconvening of the deposition.

Following Dr. Weisenburger's deposition, Monsanto wrote to plaintiffs' counsel on September 12, 2017 demanding production of the documents that Dr. Weisenburger testified that he had in his possession and failed to timely disclose in violation of Pretrial Orders Nos. 7 and 16. Letter from Kirby T. Griffis to Kathryn Forgie (Sept. 12. 2017). Ms. Forgie responded that they would not produce the documents, claiming that they are "protected by academic privilege as well as the right of privacy" and that she would also not instruct Dr. Weisenburger to preserve the documents. Letter from Kathryn Forgie to Heather A. Pigman (Sept. 15, 2017). On September 19, 2017, Monsanto sent plaintiffs' counsel a copy of the letter brief. Email from Heather A. Pigman to Kathryn Forgie (Sept. 19, 2017). On Monday, September 25, 2017 instead of sending their portion, plaintiffs' counsel indicated instead that they were going to recommend



Honorable Vince Chhabria
September 26, 2017
Page 3

to Dr. Weisenburger "that he produce drafts of the NAPP." Email from Aimee H. Wagstaff to Kirby T. Griffis (Sept. 25, 2017). The next day, plaintiffs' counsel informed Monsanto that the "NAPP senior author" would not agree to release any drafts and therefore, Dr. Weisenburger would not be providing drafts to Monsanto, or agree to a litigation hold, absent a court order. Email from Robin Greenwald to Heather Pigman (Sept. 26, 2017).

**B.**     **"Academic privilege" and assertions of confidentiality are not valid bases for an expert to withhold his reliance materials.**

The "academic privilege" invoked by plaintiffs' counsel refers to a tradition that draft publications are not normally publicly disclosed. Weisenburger Dep. at 41:7-13 (A: "The draft of the manuscript or substantial data from the manuscript should not be made available for public review or use until the manuscript is actually accepted for publication"). Even if that tradition in fact creates a *privilege* – as opposed to a trade custom of *confidentiality* – that would be immaterial to its discoverability: courts routinely require expert witnesses to disclose data and other information upon which the expert's opinion is based, including documents protected by privilege. *See, e.g.*, *United States v. Sierra Pacific Inds.*, No. CIV S-09-2445 KJM EFB, 2011 WL 5508864, at *3 (E.D. Cal. Nov. 8, 2011) ("Rule 26(a)(2)(B) 'trumps' any assertion of work product or privilege . . . [o]nce an expert is designated, the expert must disclose all information and data considered in forming the expert's opinions") (quoting *In re Commercial Money Ctr., Inc.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008)); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, No. 1:05-cv-00707-AWI, SMS, 2008 WL 2509735, at *1 (E.D. Cal. June 23, 2008) ("[T]he better view . . . is that all things communicated to the expert and considered by the expert in forming an opinion must be disclosed even if it constitutes opinion otherwise protected as work product"). In fact, even in cases involving witnesses unrelated to the litigation, courts have ordered the disclosure of underlying academic data to allow for effective cross-examination. For example in *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984), decided two years *after Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1274-76 (7th Cir. 1982), the court granted defendant access to documents and data created and maintained by the University of Chicago to allow the defendant to prepare its defense. Similarly, in *Kennedy v. State of Connecticut Department of Public Safety*, 115 F.R.D. 497, 499, 501 (D. Conn. 1987), the court denied the third party's motion to quash and allowed discovery of *confidential research information even though it was undergoing revision*. Dr. Weisenburger and his colleagues could, if they wish, demand that the documents be treated as confidential and thus invoke the protections of the MDL confidentiality agreement. But a mere claim of confidentiality, including by third parties, is not sufficient to withhold reliance material that Dr. Weisenburger has in his possession from Monsanto in this litigation.

If plaintiffs continue to want to rely upon Dr. Weisenburger's opinions in this case, they must disclose the documents and communications at issue and allow Monsanto to re-open Dr. Weisenburger's deposition to question him on the previously undisclosed material and the additional materials considered list provided just one day before the deposition while Monsanto's



Honorable Vince Chhabria
September 26, 2017
Page 4

counsel traveled across the country. Otherwise, they should be precluded from using Dr. Weisenburger's opinions against Monsanto for failure to timely disclose the bases of his expert opinions. *See* PTO 7 at 9 (requiring that "[a]t least ten days prior to the deposition, the expert shall produce all files, documents, and reliance materials subject to discovery under the Federal Rules that are not publicly or otherwise available to the noticing party"); PTO 16 (stating that neither party "will be permitted to rely in these proceedings on documents they have withheld from the other side"); *see also Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (granting defendant's motion to strike on the grounds that the expert did not timely disclose the bases for his opinions leaving the defendant unable to fully depose plaintiff's expert); *United States v. Batchelor-Robjohns,* No. 03-20164-CIV, 2005 WL 1761429, at *4 (S.D. Fla. June 3, 2005) (excluding opinions of plaintiff's valuation expert because he refused to produce documents and information upon which his opinions were based).

For the foregoing reasons, the Court should order production and preservation of the documents and allow Monsanto to re-open Dr. Weisenburger's deposition. Monsanto asks that the documents be produced within five days of an Order by the Court and that dates be promptly provided for the completion of Dr. Weisenburger's deposition. Alternatively, the Court should strike Dr. Weisenburger as an expert witness and not allow plaintiffs to rely upon his opinions.

**PLAINTIFFS' POSITION**

Dr. Dennis Weisenburger, a Los Angeles physician and chair at City of Hope's Department of Pathology, specializing in the study of diseases of the hematopoietic and immune systems with a specialty in non-Hodgkin lymphoma, is an expert witness in MDL 2741. Dr. Weisenburger is a co-participant in the North American Pooled Project ("NAPP"); however, as explained in his deposition, he did not rely or cite to the NAPP study.  The NAPP study is a pooled study that uses individual case control studies that are otherwise relied upon, cited, and evaluated by Dr. Weisenburger.  The data compiled by NAPP seeks to pool data from these case control studies; though this project is not yet complete.  Monsanto demanded production of various communications and drafts related to the NAPP study through its Notice of Deposition and Subpoena *Duces Tecum*.  Plaintiffs' counsel served objections and partial productions on September 2, 2017, in response to the Notice of Deposition and Subpoena *Duces Tecum.* Monsanto did not respond or otherwise voice concern over Dr. Weisenburger's objections or productions.  However, Monsanto now attempts to use Dr. Weisenburger's expert deposition to access unpublished, draft versions of the NAPP study – which Dr. Weisenburger and his co-authors deem highly confidential and inappropriate for distribution – and to re-open Dr. Weisenburger's deposition.  Put simply, Dr. Weisenburger is not a fact witness and his deposition and deposition testimony should not be treated as a fact-finding mission.  Monsanto has had adequate opportunity to depose Dr. Weisenburger on these issues and, in fact, did so on September 11, 2017.  Dr. Weisenburger complied with the Notice of Deposition and Subpoena *Duces Tecum* and there is no legitimate basis to re-open this deposition. The Court should not disrupt the expert discovery schedule to placate Monsanto's meritless request.



Honorable Vince Chhabria
September 26, 2017
Page 5

### Production of Draft Manuscripts and Materials Not Relied Upon or Considered

Defendant served a Subpoena *Duces Tecum* in which Defendant sought, *inter alia*, "all documents provided to you, or that you have, related to the Roundup®/glyphosate litigation that are not publicly or otherwise available." Plaintiffs timely objected to the scope of this and other requests and noted that Dr. Weisenburger would produce documents that he relied upon or considered in connection with his expert report . . . to the extent they are responsive, properly discoverable, non-privileged and are not publicly or otherwise available." Monsanto now seeks drafts and materials outside the scope of Rule 26.

As a threshold matter, Dr. Weisenburger and his colleagues recognize the importance of the scholar's privilege. [1] *See e.g.*, *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1274-76 (7th Cir. 1982)(recognizing a researcher's privilege to not have the results of his or her research disclosed prematurely). In *Dow*, the Court found that the risks associated with premature release of the data were significant and the probative value of the data, if any, was minimal. Specifically, the Court found that premature disclosure could interfere with the publication and peer review of the data. *Id*. The Ninth Circuit has not yet considered the issue of a scholar's privilege. However, the analysis in *Dow* is equally compelling here where the manuscript and analysis are not yet complete and it is unknown whether additional drafts will take form prior to the peer review and publication. Indeed, Dr. Weisenburger's colleagues, and specifically the senior author of the study, do not consent to disclosure of the draft manuscript and will not provide this information, even to Plaintiffs' counsel, absent a Court Order.[2] Plaintiffs maintain that the draft manuscript falls outside the scope of Rule 26, particularly since Dr. Weisenburger did not consider or rely upon it. However, to the extent that the Court deems the draft appropriate for production,

---

[1] Weisenburger at 77:10-19. (Q: "Could you tell us briefly why you chose not to include that in your expert report?" A: "Yeah. It was an arbitrary decision. I felt like I would be sort of using it twice because the NAPP study is based on the McDuffie study and De Roos study. It's a pooling of that data. So it's really the same data. So I decided – and the fact that it – it has not been published, I decided not to use it."). Weisenburger Dep. at 227:11-16 ("Q: Sir, you don't have any problem philosophically with unpublished as opposed to published data, do you? A: "I personally think that all data that's considered should be published and peer reviewed."). Weisenburger Dep. at 259:7-17. (Q: "Did you provide me any draft manuscripts of the NAPP study?" A: "No." Q: "Why is that?" A: "Because it wouldn't have been ethical or correct or academically correct… [I]t's not academic practice to make preliminary publications available for public use.").
[2] *See* email from Dr. Harris to Dr. Weisenburger, attached as Exhibit B. Dr. Weisenburger believes the decision whether to produce the draft rests with the senior author, not himself.



Honorable Vince Chhabria
September 26, 2017
Page 6

Plaintiffs request an Order that provides additional protections and safeguards to protect the academic and proprietary interest of the study authors.[3]

With respect to the e-mails referenced in Defendant's Letter Brief, Dr. Weisenburger's testimony speaks for itself.  He did not recall communications with the individuals identified in Defendant's Request No. 11, other than limited correspondence with Dr. Portier and certain group emails regarding the draft NAPP materials. Weisenburger Dep. at 33:25-34:10; 156:6-158:24. Dr. Weisenburger further testified that he was uncertain as to whether the communications existed and/or were in his possession because his practice necessitates routine purging of his email.  Weisenburger Dep. at 36:4-18. Notwithstanding, Monsanto had in its possession and marked as deposition exhibits various email between Dr. Weisenburger, Aaron Blair and Dr. Portier.[4]  Monsanto had ample opportunity to, and did, fully examine Dr. Weisenburger on these emails, despite the fact that they are beyond the scope of his expert opinion.  Plaintiffs object to Monsanto's litigation hold request (i.e., all email containing the word "glyphosate") as this request is overbroad, unduly burdensome, and disrupts Dr. Weisenburger's usual business practices.  Plaintiffs further object to the extent this request seeks information concerning draft NAPP manuscripts and/or information upon which Dr. Weisenburger did not rely for his opinions and expert report – and which his colleagues deem highly confidential based on the scholar's privilege discussed above. However, to the extent that the Court determines that a litigation hold on experts' email accounts is appropriate, Plaintiffs respectfully request that any preservation protocol be mutually applicable to experts for both Plaintiffs <u>and</u> Monsanto.

### There is no legitimate basis to disrupt the *Daubert* schedule and re-open Dr. Weisenburger's deposition.

Even if the items currently in dispute justified re-opening of the deposition, which they do not, Monsanto has already inquired about these topics and fully explored the significance, if any, on Dr. Weisenburger's opinions and report.[5]  Thus, the additional testimony would not only

---

[3] Dr. Weisenburger has testified that he is only one of the co-authors of the study and it is unknown when the study will be final.  Weisenburger Dep. 26:24-28:19; 39:23-41:24.  Dr. Weisenburger also testified that he was unsure whether he possessed any of the subsequent study drafts (other than what is already in Monsanto's possession).  Weisenburger Dep. 158:4-6.

[4] Weisenburger Dep. 151:23-153:1, Exh. 16-14 (August 26, 2015 email from Aaron Blair to Dr. Weisenburger and others regarding IARC); 153:2-154:20, Exh. 16-15 (August 27, 2015 email from Aaron Blair to Dr. Weisenburger and others regarding IARC); 154:21-156:10, Exh. 16-16 (November 2014 email regarding draft NAPP manuscript); 161:15-161:21, Exh. 16-17 (August 2016 email with Dr. Portier regarding EU).

[5] Dr. Weisenburger testified about NAPP and provided abstracts and slides from NAPP presentations prior to his deposition which afforded Monsanto ample opportunity to review and



Honorable Vince Chhabria
September 26, 2017
Page 7

be unreasonably cumulative and duplicative - but unduly burdensome on Dr. Weisenburger and Plaintiffs.  *See* Rule 30(a)(2)(A)(ii) and Rule 26(b)(2).  For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's request in its entirety.


| | |
|---|---|
| DATED: September 26, 2017 | Respectfully submitted, |
| | /s/Joe G. Hollingsworth<br>Joe G. Hollingsworth (*pro hac vice*)<br>(jhollingsworth@hollingsworthllp.com)<br>Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>HOLLINGSWORTH LLP<br>1350 I Street, N.W.<br>Washington, DC  20005<br>Telephone:  (202) 898-5800<br>Facsimile:  (202) 682-1639 |
| | Attorneys for Defendant<br>MONSANTO COMPANY |
| DATED: September 26, 2017 | Respectfully submitted, |
| | /s/ Michael Miller<br>Michael Miller<br>mmiller@millerfirmllc.com<br>The Miller Firm LLC<br>108 Railroad Ave<br>Orange VA 22960<br>Ph 540 672 4224<br>F 540 672 3055 |
| | /s/ Aimee Wagstaff<br>Aimee Wagstaff<br>aimee.wagstaff@andruswagstaff.com |

---

address the NAPP data during the course of this deposition.  Weisenburger Dep. 31:24-32:7; 77:21. Monsanto also inquired extensively about Dr. Weisenburger's views on the draft manuscripts, a meta-analysis of NAPP, his views regarding other experts' opinions on the unpublished NAPP data, and the anticipated timing for publication.  *See, e.g*., Weisenburger Dep. 138:3-14; 216:12-218:25.  Dr. Weisenburger also testified that the publicly available literature did not impact his expert opinions.  Weisenburger Dep. at 172:6-11; 259:18 – 260:8.



Honorable Vince Chhabria
September 26, 2017
Page 8

                                    Andrus Wagstaff, P.C.
                                    7171 West Alaska Drive
                                    Lakewood CO 80226
                                    Ph 303-376-6360
                                    F 303-376-6361

                                    <u>/s/ Robin Greenwald</u>
                                    Robin Greenwald
                                    rgreenwald@weitzlux.com
                                    Weitz & Luxenberg
                                    700 Broadway
                                    New York NY 10003
                                    Ph 212-558-5500
                                    F 212-344-5461

                                    Co-Lead Counsel for Plaintiffs