**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
                 elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br> Case No. 3:16-md-02741-VC |
| This document relates to: <br><br> *Edwin Slominski v. Monsanto Co.*, <br> Case No. 3:17-cv-05481-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff Edwin Slominski's Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1, Monsanto admits that it discovered the herbicidal properties of glyphosate and that it has manufactured Roundup®-branded herbicides.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations concerning plaintiff's use

1    of and/or exposure to Roundup®-branded products and therefore denies those allegations.

2    Monsanto denies the remaining allegations in paragraph 1.

3            2.      Monsanto lacks information or knowledge sufficient to form a belief as to the

4    truth of the allegations in paragraph 2 and therefore denies those allegations.

5            3.      In response to the allegations in paragraph 3, Monsanto denies that any exposure

6    to glyphosate-based herbicides or Roundup®-branded products can cause diffuse B-cell non-

7    Hodgkins lymphoma ("NHL") or other serious illnesses.  Monsanto lacks information or

8    knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3

9    and therefore denies those allegations.

10           4.      In response to the allegations in paragraph 4, Monsanto admits that the World

11   Health Organization's International Agency for Research on Cancer ("IARC") issued a

12   monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate

13   under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer

14   hazard assessment around the world or that IARC based its evaluation on a complete or accurate

15   assessment of the scientific research regarding glyphosate.  Monsanto further denies that the

16   members of the panel were "renowned scientists" or that they were free from conflicts of

17   interest.  In response to the allegations in the final sentence of paragraph 4, Monsanto admits that

18   the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it

19   was required to add glyphosate to California's Proposition 65 list of chemicals in a process that

20   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

21   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

22   was not based upon any independent scientific analysis of glyphosate but instead was in response

23   to a provision of a California ballot proposition triggering such action based solely upon the

24   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

25   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

26   pose a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was

27   required to list glyphosate violates the United States Constitution and the California Constitution;

28   Monsanto has sued to block OEHHA's action and is currently engaged in briefing on this issue

1    before the California Court of Appeal.  The remaining allegations in the final sentence of

2    paragraph 4 set forth conclusions of law for which no response is required.  Monsanto denies the

3    remaining allegations in paragraph 4.

4           5.      Monsanto admits the allegations in the first sentence of paragraph 5.  In response

5    to the allegations in the second sentence of paragraph 5, Monsanto admits that glyphosate, the

6    active ingredient in Roundup®-branded herbicides, is a non-selective herbicide and that certain

7    Roundup®-branded herbicides are used to kill weeds that commonly compete with growing

8    crops.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of

9    the specific numbers and statistics cited in the remaining sentences of paragraph 5 and therefore

10   denies those allegations.

11          6.      In response to the allegations in the first sentence of paragraph 6, Monsanto

12   admits that it has stated, and continues to state, that Roundup®-branded products are safe when

13   used in accordance with the products' labeling.  Monsanto denies that any exposure to

14   glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious

15   illnesses.  Monsanto denies the remaining allegations in paragraph 6.

16          7.      Monsanto lacks information or knowledge sufficient to form a belief as to the

17   truth of the allegations in paragraph 7 and therefore denies those allegations.

18          8.      Monsanto admits the allegations in the first sentence of paragraph 8.  In response

19   to the allegations in the second sentence of paragraph 8, Monsanto admits that it discovered the

20   herbicidal properties of glyphosate.  Monsanto lacks information or knowledge sufficient to form

21   a belief as to the truth of the remaining allegations in the second sentence of paragraph 8 and

22   therefore denies those allegations.

23          9.      The allegations in paragraph 9 set forth conclusions of law for which no response

24   is required.  To the extent that a response is deemed required, Monsanto admits the allegations in

25   paragraph 9 based upon the allegations in plaintiff's Complaint.

26          10.     The allegations in paragraph 10 set forth conclusions of law for which no

27   response is required.

28          11.     Monsanto denies the allegations in paragraph 11.

12.     In response to the allegations in paragraph 12, Monsanto denies any "omissions" and certain events giving rise to plaintiff's claim.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding where certain other events giving rise to plaintiff's claim occurred and therefore denies those allegations.  The remaining allegations in paragraph 12 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits that venue is proper in the District of New Mexico based upon the allegations in plaintiff's Complaint.

13.     In response to the allegations in paragraph 13, Monsanto admits that glyphosate is a non-selective herbicide and is the active ingredient in various herbicides, including Roundup®-branded products.

14.     Monsanto admits the allegations in the first sentence of paragraph 14.  Monsanto denies the allegations in the second sentence of paragraph 14 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the final sentence of paragraph 14 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the United States Environmental Protection Agency ("EPA").

15.     Monsanto admits the allegations in paragraph 15.

16.     In response to the allegations in paragraph 16, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 16.

17.     The allegations in paragraph 17 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 17.

18.     In response to the allegations in paragraph 18, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve

1  the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining

2  allegations in paragraph 18 set forth conclusions of law for which no response is required.

3        19.     The allegations in paragraph 19 set forth conclusions of law for which no

4  response is required.

5        20.     In response to the allegations in paragraph 20, Monsanto admits that EPA requires

6  registrants of herbicides to submit extensive data in support of the human health and

7  environmental safety of their products and further admits that EPA will not register or approve

8  the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

9  states that the term "the tests" in the final sentence of paragraph 20 is vague and ambiguous, and

10 Monsanto therefore denies the same.  The remaining allegations in paragraph 20 set forth

11 conclusions of law for which no response is required.

12       21.     Monsanto denies the allegations in paragraph 21 to the extent they suggest that

13 EPA only evaluates the safety of pesticide products on the date of their initial registration.

14 Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

15 products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

16 of the allegations in paragraph 21 regarding such pesticide products generally and therefore

17 denies those allegations.  The remaining allegations in paragraph 21 set forth conclusions of law

18 for which no response is required.

19       22.     In response to the allegations in paragraph 22, Monsanto admits that EPA has

20 undertaken a regulatory review of glyphosate and further admits that that EPA has not released

21 its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

22 Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

23 concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

24 humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

25 ―――――――――――――――
[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic*
26 *Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"),
https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP
27 Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on
glyphosate's carcinogenic potential.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1   posted an October 2015 final report by its standing Cancer Assessment Review Committee

2   ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

3   to be Carcinogenic to Humans."[2]  Monsanto lacks information or knowledge sufficient to form a

4   belief as to the truth of the remaining allegations in paragraph 22 and therefore denies these

5   allegations.

6        23.    In response to the allegations in paragraph 23, Monsanto admits that an EPA

7   review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

8   changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

9   evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

10  that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with

11  respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded

12  that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the

13  EPA OPP Report and the EPA CARC Final Report discussed above, other specific findings of

14  safety include:

15  - "In June 1991, EPA classified glyphosate as a Group E [carcinogen] — one that
      shows evidence of non-carcinogenicity for humans — based on the lack of
16    convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate:
      Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993),
17    http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

18  - "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg.
      60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).
19

20  - "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69
      Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

21  - "There is [an] extensive database available on glyphosate, which indicate[s] that
      glyphosate is not mutagenic, not a carcinogen, and not a developmental or
22    reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586,
      73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).
23

24  - "EPA has concluded that glyphosate does not pose a cancer risk to humans."
      Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be
25    codified at 40 C.F.R. pt. 180).

26  ---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
27  U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the
    Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
28  Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1

2

3

4

5

6

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20 ("EPA 2015 Desk Statement").

7   Monsanto denies the remaining allegations in paragraph 23.

8        24.     In response to the allegations in paragraph 24, Monsanto admits that it – along

9   with a large number of other companies and governmental agencies – was defrauded by two

10   chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

11   testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct

12   toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any

13   glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies.  To

14   the extent that the allegations in paragraph 24 are intended to suggest that Monsanto was

15   anything other than a victim of this fraud, such allegations are denied.

16        25.     In response to the allegations in paragraph 25, Monsanto admits that IBT

17   Laboratories was hired to conduct toxicity studies in connection with the registration of a

18   Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is

19   based upon any fraudulent or false IBT studies.

20        26.     Monsanto denies the allegations in paragraph 26 to the extent they suggest that

21   EPA performed an inspection of IBT Laboratories solely or specifically in connection with

22   studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT

23   Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in

24   connection with services provided to a broad number of private and governmental entities and

25   that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

26   one of several pesticide manufacturers who had used IBT test results.  The audit found some

27   toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

28   Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

1   Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

2   based upon any invalid IBT studies.  To the extent that the allegations in paragraph 26 are

3   intended to suggest that Monsanto was anything other than a victim of this fraud, such

4   allegations also are denied.

5          27.      In response to the allegations in paragraph 27, Monsanto admits that three IBT

6   employees were convicted of the charge of fraud, but Monsanto denies that any of the

7   individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

8   herbicides.

9          28.      In response to the allegations in paragraph 28, Monsanto admits that it – along

10  with numerous other private companies – hired Craven Laboratories as an independent

11  laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further

12  admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

13  studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations

14  in paragraph 28 are intended to suggest that Monsanto was anything other than a victim of this

15  fraud, such allegations are denied.

16         29.      In response to the allegations in paragraph 29, Monsanto admits that Roundup®-

17  branded products are highly valued by its customers because of their efficacy and safety.

18  Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

19  remaining allegations in paragraph 29 are vague and conclusory and comprise attorney

20  characterizations and are accordingly denied.

21         30.      In response to the allegations in paragraph 30, Monsanto admits that following the

22  development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

23  are now widely used by farmers in the United States and worldwide.  Monsanto lacks

24  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

25  cited in paragraph 30 and accordingly denies those allegations.  The remaining allegations in

26  paragraph 30 are vague and conclusory and comprise attorney characterizations and are

27  accordingly denied.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

31.     In response to the allegations in paragraph 31, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 31 and accordingly denies the same.  The remaining allegations in paragraph 31 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

32.     In response to the allegations in paragraph 32, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts of paragraph 32 purport to quote a document, the document speaks for itself and thus does not require any further response.  The remaining allegations in paragraph 32 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

33.     In response to the allegations in paragraph 33, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 33 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

34.     Monsanto denies the allegations in paragraph 34.

35.     In response to the allegations in paragraph 35, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 35 to the extent they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 35.

36.     In response to the allegations in paragraph 36, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 36, which are not limited as of any specified date, and accordingly denies the same.

37. In response to the allegations in paragraph 37, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 37.

38. Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 and therefore denies those allegations.

39. Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 and therefore denies those allegations.

40. Monsanto denies the allegations in paragraph 40 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

41. In response to the allegations in paragraph 41, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 41.

42. In response to the allegations in paragraph 42, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted

looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

43.     The allegations in paragraph 43 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

44.     In response to the allegations in paragraph 44, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 44 are denied.

45.     In response to the allegations in paragraph 45, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

46.     In response to the allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the allegations in paragraph 46 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

47.     In response to the allegations in paragraph 47, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 47.

48.     In response to the allegations in paragraph 48, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

49.     In response to the allegations in the first sentence of paragraph 49, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  In response to the allegations in the second sentence of paragraph 49, Monsanto states that the cited document speaks for itself and does not require a response.  In response to the allegations in the final sentence of paragraph 49 and in footnote 1, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 49.

50.     In response to the allegations in paragraph 50, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 50.

51.     In response to the allegations in paragraph 51, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 51.

52.     In response to the allegations in paragraph 52, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

53.     In response to the allegations in paragraph 53, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 10, 24 (D.D.C. 2013).

55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products, including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales).  Monsanto further admits that the French government has announced that beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, will be prohibited with certain exceptions.  Monsanto denies the remaining allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1   scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

2   denies the remaining allegations in paragraph 61.

3       62.    In response to the allegations in paragraph 62, Monsanto admits that the

4   California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was

5   required to add glyphosate to California's Proposition 65 list of chemicals in a process that

6   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

7   weight or quality of the evidence considered by IARC. Monsanto further states that this decision

8   was not based upon any independent scientific analysis of glyphosate but instead was in response

9   to a provision of a California ballot proposition triggering such action based solely upon the

10  IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

11  its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

12  pose a cancer hazard to humans." Monsanto contends that OEHHA's decision that it was

13  required to list glyphosate violates the United States Constitution and the California Constitution;

14  Monsanto has sued to block OEHHA's action and is currently engaged in briefing on this issue

15  before the California Court of Appeal. The remaining allegations in paragraph 62 set forth

16  conclusions of law for which no response is required.

17      63.    In response to the allegations in paragraph 63, Monsanto admits that 96

18  individuals signed a letter sent by Dr. Christopher Portier to the EU Health Commissioner

19  (hereinafter "the Portier letter").  Monsanto states that Dr. Portier has been disclosed as an expert

20  witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto.

21  Monsanto denies that Dr. Portier or the other signatories to his letter are "prominent experts."

22  Monsanto admits that certain members of the IARC working group assigned to glyphosate

23  signed on to the Portier letter but states that Monsanto lacks information or knowledge sufficient

24  to form a belief as to whether those individuals or the other signatories were aware at the time

25  that Dr. Portier was working as a consultant for plaintiffs' counsel.  Monsanto admits that, in this

26  letter, Dr. Portier urged the EU Health Commissioner to disregard the conclusion that glyphosate

27  is not carcinogenic found by the European Food Safety Authority ("EFSA") and by the German

28  Federal Institute for Risk Management ("BfR").

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

64.     In response to the allegations in paragraph 64, Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 64 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 64.

65.     Monsanto incorporates by reference its responses to paragraphs 1 through 64 in response to paragraph 65 of plaintiff's Complaint.

66.     The allegations in paragraph 66 set forth conclusions of law for which no response is required.  To the extent that the allegations in paragraph 66 assert that Monsanto violated state or federal laws, Monsanto denies such allegations.

67.     The allegations in paragraph 67 sets forth conclusions of law for which no response is required.

68.     Monsanto denies the allegations in the first sentence of paragraph 68.  The second sentence in paragraph 68 sets forth a conclusion of law for which no response is required. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

69.     Monsanto incorporates by reference its responses to paragraphs 1 through 68 in response to paragraph 69 of plaintiff's Complaint.

70.     In response to the allegations in the first sentence of paragraph 70, Monsanto admits that plaintiff purports to bring a claim for strict liability defective design, but Monsanto denies any liability to plaintiff. In response to the allegations in paragraph 70, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 70.

71.     Monsanto denies the allegations in paragraph 71.

72.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 72 and therefore denies those allegations.

73.     Monsanto denies the allegations in paragraph 73.

74.     Monsanto denies the allegations in paragraph 74.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1        75.     Monsanto denies the allegations in paragraph 75.

2        76.     Monsanto denies the allegations in paragraph 76 and each of its subparts.

3        77.     Monsanto lacks information or knowledge sufficient to form a belief as to the

4    truth of the allegations in paragraph 77 concerning plaintiff's claimed use of Roundup®-branded

5    products and therefore denies those allegations.  Monsanto denies the remaining allegations in

6    paragraph 77, including that Roundup®-branded products have "dangerous characteristics."

7        78.     Monsanto lacks information or knowledge sufficient to form a belief as to the

8    truth of the allegations in paragraph 78 concerning plaintiff's claimed use of Roundup®-branded

9    products and therefore denies those allegations.  Monsanto denies the remaining allegations in

10   paragraph 78, including that Roundup®-branded products have "dangerous characteristics."

11       79.     Monsanto denies the allegations in paragraph 79.

12       80.     Monsanto denies the allegations in paragraph 80.

13       81.     Monsanto denies the allegations in paragraph 81.

14       82.     Monsanto denies the allegations in paragraph 82.

15       83.     Monsanto denies the allegations in paragraph 83.

16       84.     Monsanto denies the allegations in paragraph 84.

17       85.     Monsanto denies the allegations in paragraph 85.

18       86.     Monsanto denies the allegations in paragraph 86.

19       87.     Monsanto denies the allegations in paragraph 87.

20       In response to the allegations in the "WHEREFORE" paragraph following paragraph 87,

21   Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's

22   Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and

23   reasonable attorney's fees as allowed by law and such further and additional relief as this Court

24   may deem just and proper.

25       88.     Monsanto incorporates by reference its responses to paragraphs 1 through 87 in

26   response to paragraph 88 of plaintiff's Complaint.

27       89.     In response to the allegations in paragraph 89, Monsanto admits that plaintiff

28   purports to bring a claim for strict liability failure to warn, but denies any liability to plaintiff.

90.     Monsanto denies the allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff or other persons or entities purchased or used Roundup®-branded products and therefore denies that allegation.  Paragraph 91 also sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 91.

92.     The allegations in paragraph 92 set forth conclusions of law for which no response is required.

93.     Monsanto denies the allegations in paragraph 93.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in paragraph 95.

96.     Monsanto denies the allegations in paragraph 96.

97.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 97 and therefore denies those allegations.

98.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 98 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 98, including that Roundup®-branded products have "dangerous characteristics."

99.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 99 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 99, including that Roundup®-branded products have "dangerous characteristics."

100.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph 100 and therefore denies those

allegations.  Monsanto denies the remaining allegations in paragraph 100.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

101.    Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    In response to the allegations in paragraph 103, Monsanto denies that there is any risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to Roundup®-branded products and glyphosate.  The allegations in the second sentence of paragraph 103 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 103.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all applicable laws and regulations.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto denies the allegations in paragraph 105.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in paragraph 107.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

108.    Monsanto denies the allegations in paragraph 108.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 108, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

109.    Monsanto incorporates by reference its responses to paragraphs 1 through 108 in response to paragraph 109 of plaintiff's Complaint.

110.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 110 regarding the specific products allegedly used by

- 19 -

1    plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore

2    denies the allegations in paragraph 110.

3         111.    The allegations in paragraph 111 set forth conclusions of law for which no

4    response is required.

5         112.    The allegations in paragraph 112 set forth conclusions of law for which no

6    response is required.

7         113.    Paragraph 113 sets forth conclusions of law for which no response is required.

8         114.    Monsanto denies the allegations in paragraph 114.

9         115.    Monsanto denies the allegations in paragraph 115.

10        116.    Monsanto denies the allegations in paragraph 116.  All labeling of Roundup®-

11   branded products has been and remains EPA-approved and in compliance with all federal

12   requirements under FIFRA.

13        117.    Monsanto denies the allegations in paragraph 117.

14        118.    Monsanto denies the allegations in paragraph 118.

15        119.    In response to the allegations in paragraph 119, Monsanto denies that Monsanto's

16   promotional activities were not honest.  The remaining allegations in paragraph 119 set forth

17   conclusions of law for which no response is required.

18        120.    Monsanto denies the allegations in paragraph 120.

19        121.    Monsanto denies the allegations in paragraph 121, including each of its subparts.

20        122.    Monsanto denies the allegations in paragraph 122.

21        123.    Monsanto lacks information or knowledge sufficient to form a belief as to the

22   truth of the allegations in paragraph 123 regarding plaintiff's knowledge and therefore Monsanto

23   denies those allegations.  Monsanto denies the remaining allegations in paragraph 123, including

24   that intended use of and/or exposure to Roundup®-branded products causes any injuries.

25        124.    Monsanto denies the allegations in paragraph 124.

26        125.    Monsanto denies the allegations in paragraph 125.

27        126.    Monsanto denies the allegations in paragraph 126.

28

1      In response to the allegations in the "WHEREFORE" paragraph following paragraph

2  126, Monsanto demands that judgment be entered in its favor and against plaintiff; that

3  plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit

4  and reasonable attorney's fees as allowed by law and such further and additional relief as this

5  Court may deem just and proper.

6      127.    Monsanto incorporates by reference its responses to paragraphs 1 through 126 in

7  response to paragraph 127 of plaintiff's Complaint.

8      128.    Monsanto denies the allegations in paragraph 128.

9      129.    Monsanto denies the allegations in paragraph 129. All labeling of Roundup®-

10  branded products has been and remains EPA-approved and in compliance with all federal

11  requirements under FIFRA.

12      130.    Monsanto denies the allegations in paragraph 130.  All labeling of Roundup®-

13  branded products has been and remains EPA-approved and in compliance with all federal

14  requirements under FIFRA.

15      131.    Monsanto lacks information or knowledge sufficient to form a belief as to the

16  truth of the allegations in paragraph 131 regarding plaintiff's claimed purchase and use of

17  Roundup®-branded products and plaintiff's knowledge or reliance and therefore denies those

18  allegations.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-

19  branded products can cause cancer or other serious illnesses.  All labeling of Roundup®-branded

20  products has been and remains EPA-approved and in compliance with all federal requirements

21  under FIFRA.  Monsanto states, however, that the scientific studies upon which IARC purported

22  to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto

23  denies the remaining allegations in paragraph 131.

24      132.    Monsanto lacks information or knowledge sufficient to form a belief as to the

25  truth of the allegations in paragraph 132 regarding plaintiff's knowledge or reliance and

26  therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 132.

27  In addition, Monsanto states that the scientific studies upon which IARC purported to base its

28  evaluation of glyphosate were all publicly available before March 2015.

1      133.    Monsanto denies the allegations in paragraph 133.

2      134.    Monsanto denies the allegations in paragraph 134.

3      135.    Monsanto denies the allegations in paragraph 135.

4      136.    Monsanto denies the allegations in paragraph 136.

5          In response to the allegations in the "WHEREFORE" paragraph following paragraph

6  136, Monsanto demands that judgment be entered in its favor and against plaintiff; that

7  plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit

8  and reasonable attorney's fees as allowed by law and such further and additional relief as this

9  Court may deem just and proper.

10     137.    Monsanto incorporates by reference its responses to paragraphs 1 through 136 in

11 response to paragraph 137 of plaintiff's Complaint.

12     138.    Monsanto denies the allegations in paragraph 138.  Additionally, the final

13 sentence of paragraph 138 sets forth conclusions of law for which no response is required.

14     139.    The allegations in paragraph 139 and each of its subparts set forth conclusions of

15 law for which no response is required.

16     140.    In response to the allegations in paragraph 140, Monsanto denies that it has failed

17 to properly disclose risks associated with Roundup®-branded products.  The remaining

18 allegations in paragraph 140 are vague and conclusory and comprise attorney characterizations,

19 and are accordingly denied.

20     141.    In response to the allegations in Paragraph 141, Monsanto admits that it has sold

21 glyphosate based herbicides in accordance with their EPA-approved labeling.  Monsanto further

22 states that paragraph 141 sets forth conclusions of law for which no response is required.

23 Monsanto denies the remaining allegations in paragraph 141.

24     142.    Monsanto denies the allegations in the first and second sentences of paragraph

25 142.  All labeling of Roundup®-branded products has been and remains EPA-approved and in

26 compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence

27 of paragraph 142 sets forth conclusions of law for which no response is required.

28

143.     The allegations in paragraph 143 set forth conclusions of law for which no response is required.

144.     Monsanto denies the allegations in paragraph 144.

145.     Monsanto denies the allegations in paragraph 145 and each of its subparts.

146.     Monsanto states that the allegation in paragraph 146 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 146 and therefore denies those allegations.

147.     Monsanto denies the allegations in paragraph 147.

148.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 148 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 148.

149.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 149 and therefore denies those allegations.

150.     Monsanto denies the allegations in paragraph 150.

151.     Monsanto denies the allegations in paragraph 151.

In response to the allegations in the "WHEREFORE" paragraph following paragraph 151, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

152.     Monsanto incorporates by reference its responses to paragraphs 1 through 151 in response to paragraph 153 of plaintiff's Complaint.

153.     Monsanto denies the allegations in paragraph 153.

154.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 154 concerning plaintiff's claimed use of exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 154 set forth conclusions of law for which no response is required.

1     155.   Monsanto denies the allegations in paragraph 155.  All labeling of Roundup®-

2     branded products has been and remains EPA-approved and in compliance with all federal

3     requirements under FIFRA.

4     156.   The allegations in paragraph 156 set forth conclusions of law for which no

5     response is required.

6     157.   Monsanto lacks information or knowledge sufficient to form a belief as to the

7     truth of the allegations in paragraph 157 and therefore denies those allegations.

8     158.   Monsanto lacks information or knowledge sufficient to form a belief as to the

9     truth of the allegations in paragraph 158 concerning the claimed use of Roundup®-branded

10    products by plaintiff and others and therefore denies those allegations.  The remaining

11    allegations in paragraph 158 set forth conclusions of law for which no response is required.

12    159.   Monsanto lacks information or knowledge sufficient to form a belief as to the

13    truth of the allegations in paragraph 159 regarding plaintiff's claimed use of or exposure to

14    Roundup®-branded products and therefore denies those allegations. Monsanto denies the

15    remaining allegations in paragraph 159.

16    160.   Monsanto lacks information or knowledge sufficient to form a belief as to the

17    truth of the allegations in paragraph 160 concerning the condition of any Roundup®-branded

18    product allegedly used by plaintiff or about plaintiff's alleged use of such product or plaintiff's

19    claimed reliance and therefore denies the allegations in paragraph 160.

20    161.   Monsanto denies that there is any risk of serious injury associated with or linked

21    to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.

22    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

23    allegations in paragraph 161 concerning plaintiff's knowledge about Roundup®-branded products

24    and therefore denies the remaining allegations in paragraph 161.

25    162.   Monsanto denies the allegations in paragraph 162.

26    163.   Monsanto denies the allegations in paragraph 163.

27    164.   Monsanto denies the allegations in paragraph 164.

28

- 24 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1    In response to the allegations in the "WHEREFORE" paragraph following paragraph

2  164, Monsanto demands that judgment be entered in its favor and against plaintiff; that

3  plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit

4  and reasonable attorney's fees as allowed by law and such further and additional relief as this

5  Court may deem just and proper.

6    165.   Monsanto incorporates by reference its responses to paragraphs 1 through 164 in

7  response to paragraph 165 of plaintiff's Complaint.

8    166.   Monsanto denies the allegations in paragraph 166.

9    167.   Monsanto denies the allegations in paragraph 167.

10    168.   Monsanto denies the allegations in paragraph 168.

11    The section entitled "JURY TRIAL DEMAND," sets forth a conclusion of law for which

12  no response is required.

13    In response to the section entitled "PRAYER FOR RELIEF," Monsanto demands that

14  judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed,

15  with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as

16  allowed by law and such further and additional relief as this Court may deem just and proper.

17    Every allegation in the Complaint that is not specifically and expressly admitted in this

18  Answer is hereby specifically and expressly denied.

19    **SEPARATE AND AFFIRMATIVE DEFENSES**

20    1.   The Complaint, in whole or part, fails to state a claim or cause of action against

21  Monsanto upon which relief can be granted.

22    2.   Plaintiff's claims are barred in whole because plaintiff cannot proffer any

23  scientifically reliable evidence that the products at issue were defective or unreasonably

24  dangerous.

25    3.   Any alleged negligent or culpable conduct of Monsanto, none being admitted,

26  was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of

27  plaintiff's alleged injuries.

28

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

7.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

8.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

9.      Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

10.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

11.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

12.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

13.     If plaintiff suffered injury or damages as alleged, which is denied, such injury or damage resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC

1    liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative

2    degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that

3    are not related or connected with any product sold, distributed, or manufactured by Monsanto.

4    Such acts or omissions on the part of others or diseases or causes constitute an independent,

5    intervening and sole proximate cause of plaintiff's alleged injury or damages.

6          14.    Monsanto had no legal relationship or privity with plaintiff and owed no duty to

7    him by which liability could be attributed to it.

8          15.    Monsanto made no warranties of any kind or any representations of any nature

9    whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies,

10   then plaintiff failed to give notice of any breach thereof.

11         16.    Plaintiff's claims are preempted in whole or part by the Freedom of Speech

12   Clause of the First Amendment of the U.S. Constitution.

13         17.    Plaintiff's claims for punitive damages are barred because such an award would

14   violate Monsanto's due process, equal protection and other rights under the United States

15   Constitution, the New Mexico Constitution, and/or other applicable state constitutions.

16         18.    Plaintiff's claims for punitive damages are barred because plaintiff has failed to

17   allege conduct warranting imposition of punitive damages under New Mexico law and/or other

18   applicable state laws.

19         19.    Plaintiff's claims for punitive damages are barred and/or limited by operation of

20   state and/or federal law.

21         20.    Plaintiff's claims are barred in whole or in part by plaintiff's own

22   contributory/comparative negligence.

23         21.    Plaintiff's claims are barred in whole or in part by plaintiff's own failure to

24   mitigate damages.

25         22.    Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

26         23.    Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has

27   received and/or will receive from collateral sources.

28

1        24.     If plaintiff has been injured or damaged, no injury or damages being admitted,

2  such injuries were not caused by a Monsanto product.

3        25.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims

4  that are governed by the laws of a state that does not recognize or limit such claims.

5        26.     Monsanto hereby gives notice that it intends to rely upon such other defenses as

6  may become available or apparent during the course of discovery and thus reserves its right to

7  amend this Answer to assert such defenses.

8        **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

9  plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such

10  other relief as the Court deems equitable and just.

11                              **JURY TRIAL DEMAND**

12        Monsanto demands a jury trial on all issues so triable.

13

14  DATED:  October 19, 2017                    Respectfully submitted,

15

16                                             /s/ Joe G. Hollingsworth
                                               Joe G. Hollingsworth (*pro hac vice*)
17                                             (jhollingsworth@hollingsworthllp.com)
                                               Eric G. Lasker (*pro hac vice*)
18                                             (elasker@hollingsworthllp.com)
                                               HOLLINGSWORTH LLP
19                                             1350 I Street, N.W.
                                               Washington, DC  20005
20                                             Telephone:  (202) 898-5800
                                               Facsimile:   (202) 682-1639
21
                                               *Attorneys for Defendant*
22                                             *MONSANTO COMPANY*

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:17-cv-05481-VC