# EXHIBIT 43

**HEYDENS, WILLIAM F [AG/1000]**

| | |
|---|---|
| **From:** | Thomas Sorahan ███████████████ |
| **Sent:** | Saturday, March 14, 2015 6:18 AM |
| **To:** | FARMER, DONNA R [AG/1000]; Strupp Christian; Mette K. Jensen |
| **Cc:** | HEYDENS, WILLIAM F [AG/1000] |
| **Subject:** | RE: EPA openly discussed IARC findings at a CLA meeting on Thursday |

Dear Donna

I understand your concerns about early release of information. We can
discuss the issues you raise in more detail on Monday, but here are
some immediate responses.

I do know of instances where observers at IARC felt they had been
treated rudely or brusquely at Monograph meetings. That was not the
case for me at Vol 112. I found the Chair, sub-chairs and invited
experts to be very friendly and prepared to respond to all comments I
made. Indeed, I think questions the epi sub-panel asked me about my
recent multiple myeloma paper (Sorahan, 2015) were instrumental in not
having multiple myeloma included on the charge sheet.

In my opinion the meeting followed the IARC guidelines. Dr Kurt
Straif, the Director of the Monographs programme, has an intimate
knowledge of the IARC rules and insists these are followed.

As you say, there are background sections in the Monograph preambles
and presumably on the IARC website as to how the IARC process is
supposed to work. The recent EHP paper you have by Pearce et al (the
124 author effort) is also good for describing how things are supposed
to work (about the only thing it is good for).

I suppose the main difference between IARC evaluations and most
national agency guidelines is that IARC has nothing to say (directly)
about potency and appropriate exposure limits.

As you know, the Working Group (WG) only has four choices for
evaluating the human data (evidence of no carcinogenicity [in
practice, protective effect], inadequate, limited, sufficient). The WG
chose limited for NHL and glyphosate, but it is not clearly laid down
what is the difference between the upper band of inadequate and the
lower band of limited. As far as I can see, this is left to each WG to
decide on its own.

1

Confidential - Produced Subject to Protective Order

These remarks are all confidential and I do not wish to be referenced in any document from your PA/PR people. But I am happy to assist in formulating statements that you may wish to make (eg "The company does not accept there is credible evidence that glyphosate use can cause NHL. Indeed in the single most important study into the health of pesticide applicators (the AHS) there is no excess of NHL in all applicators when compared to State cancer incidence rates, no excess in glyphosate users compared to non-users, and no trend of NHL increasing with extent of use"). I'm sure Elizabeth Delzell will be going into some detail in comparing the NHL findings from the case-control studies and from the AHS, in her proposed meta-analysis.

Tom

-----Original Message-----
From: FARMER, DONNA R [AG/1000]
Sent: 14 March 2015 02:25
To: Thomas Sorahan; Strupp Christian; Mette K. Jensen
Cc: HEYDENS, WILLIAM F [AG/1000]
Subject: EPA openly discussed IARC findings at a CLA meeting on Thursday

Tom, Christian and Mette,

One of our colleagues was on a CLA call with other companies, EPA and PRMA for the Residue Experts Work Group at the DOW office yesterday. The EPA person opened the meeting by telling the group that an EPA Observer (Jess Rowland) was in the meeting, reported back to EPA Staff that IARC classified 3 pesticides as 2a and then he named diazinon, malathion and glyphosate.  When asked by our colleague that it was our understanding that that information was under embargo wasn't that his understanding as well...he said he was not told to keep the information embargoed.  The EPA person said the EPA is not IARC, he was providing this report, without comment.  The subject was not on the agenda; he offered up without asking.

2

Confidential - Produced Subject to Protective Order