

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado and California*
Aimee.Wagstaff@AndrusWagstaff.com

7171 W. Alaska Drive
Lakewood, CO 80226
Office: (303) 376-6360
Fax: (303) 376-63614
Website: www.AndrusWagstaff.com

**February 5, 2018**

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court, Northern District of California

     RE:   *In re Roundup Prod. Liab. Litig.*, No. 3:16-md-02741-VC

Dear Judge Chhabria:

     The parties were unable to reach agreement on all matters related to the schedule for presentation of witnesses at the *Daubert* hearing, scheduled for the week of March 5th, in the above-referenced multi-district litigation. Plaintiffs proffered six general causation experts for this phase of the litigation; and Monsanto proffered seven experts. The Parties also may call two non-retained experts by video deposition. Thus, the hearing will involve arranging and managing the schedules of up to thirteen expert witnesses. As such, the Parties share a mutual desire to have a schedule in place.

     During the meet and confers on a proposed hearing schedule, we reached agreement on the following three areas:

1. Plaintiffs will produce all of their expert witnesses prior to Monsanto producing its expert witnesses;
2. The Parties will exchange an exhibit list on February 12, 2018 and file a final exhibit list on February 20, 2018 with written objections, if any;
3. The expert testimony can and should be completed within five (5) court days.

     With respect to the remainder of the *Daubert* hearing schedule, the Parties have reached an impasse and, therefore, seek the Court's guidance. Each party's position is below. The parties also provide their availability during weeks of March 12 and March 19, 2018, the dates specified by the Court as possibilities for oral argument.

**Plaintiffs' Position**

     During the November 9, 2017 Case Management Conference, the Court proposed a thirty-minute time limit of 'narrative style' direct testimony for each witness, followed by cross-examination and re-direct. *See*, Nov. 9, 2017 CMC Transcript at 24:2-23, 25:15-18. Using this format, Plaintiffs propose a general framework that is equally fair to both parties as follows: each live witness will testify on direct examination for a maximum of one hour; forty-five minutes for cross-examination; and fifteen minutes for re-direct examination. This proposal allows for a maximum of two hours for each live witness. Further the video testimony of the two non-

retained witnesses should be limited to thirty minutes, per witness, per side.

Because the party proffering the specific witness carries the burden for that witness, allowing more time on direct examination is fair and makes sense. Monsanto's suggestion of a "chess clock" is particularly unfair to plaintiffs. Most importantly, it will remain unknown to Plaintiffs (but not to Monsanto) until after Plaintiffs proffer their witnesses which experts Monsanto will actually present at the *Daubert* hearing. Therefore, Plaintiffs will have to guess how much time to reserve for Monsanto's witnesses. Monsanto, on the other hand, will have an unfair advantage, knowing who it is unlikely to call and, as a result, having substantially more time for cross-examination.  Thus, the "chess clock" substantially favors Monsanto, a result that is particularly unfair in light of the fact that the Plaintiffs bear the burden of proof in this case. It is also not in keeping with the comments the Court has made in the past regarding how the *Daubert* hearing should proceed.

The Court is also reminded that Monsanto has now deposed each of Plaintiffs' expert <u>two times</u> and Dr. Jameson <u>three times</u>, at Monsanto's request, as well as filing 90-pages of *Daubert* briefing.  Also, Plaintiffs have twice deposed two of Monsanto's expert witnesses.   In other words, the parties have had ample opportunity to elicit the expert opinions of each others' general causation expert witnesses. Limiting the parties cross examination to 45-minutes is reasonable and appropriate.

Additionally, given the breadth of the scientific testimony and the global impact of this case, Plaintiffs propose each side be awarded an Opening Statement of fifteen minutes prior to the testimony of expert witnesses.  Plaintiffs' proposal is set forth below.  For the reasons set forth herein, it is fair and makes sense to limit the time "by expert" rather than "by side" and to allow Opening Statement.  Plaintiffs request the Court enter the proposed schedule attached as **Exhibit A.**

## Monsanto's Position

**I.     Scheduling Proposal**

Plaintiffs offer six live expert witnesses to support their allegation that exposure to glyphosate and/or glyphosate-based herbicides can cause non-Hodgkin's lymphoma ("NHL") in humans.  As the proponent of the testimony, plaintiffs have the burden of proving that it is admissible under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny.  *See, e.g.*, *Bldg. Indus. Ass'n v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).  To satisfy this burden, plaintiffs "must" show that each expert individually is: (1) qualified to opine on the issues addressed in his report, (2) offering testimony that is based on a scientifically reliable methodology, and (3) testifying about issues that have "a valid scientific connection to the pertinent inquiry."  *Daubert*, 509 U.S. at 591-92. Plaintiffs' burden is affirmative, meaning that they may not satisfy it by lobbing attacks against Monsanto, and they are not entitled to any inferences in their favor.  *See generally* Monsanto's Memorandum of Points and Authorities in Support of Monsanto Company's *Daubert* and Summary Judgment Motion Based on Failure of General Causation Proof, ECF. No. 545, at 7 (filed Oct. 6, 2017).

For the *Daubert* hearing, Monsanto proposes a "chess clock" format, in which each party is allotted 15 hours to use as it sees fit in conducting direct and cross-examination of witnesses. Plaintiffs object to this format, claiming that because the party proffering the witness carries the burden, allowing more time on direct examination is fair. This objection lacks merit. All experts have presented lengthy reports, and direct examinations can be choreographed and made to fit a schedule. But as described in detail in *Glastetter v. Novartis Pharm. Corp.*, it is cross-examination which exposes the potential flaws in plaintiffs' experts' methodology that the Court must assess to determine admissibility. 107 F. Supp. 2d 1015, 1025 n.5 (E.D. Mo. 2000) (excluding experts after *Daubert* hearing based on finding that plaintiff's expert's "conclusions come apart under cross-examination")), *aff'd* 252 F.3d 986 (8th Cir. 2001). (By way of example, the court in *Glastetter* relied directly on testimony elucidated during defendant's cross-examination of plaintiffs' experts at least six times explicitly (and many others implicitly) in excluding the experts' opinions under *Daubert*.)

"Cross-examination of experts is very important in determining whether their testimony is reliable or relevant." *Id.* at 1024. Cross-examination during a live *Daubert* hearing is "particularly instructive" in assisting the Court in the rigorous analysis that "must" be conducted under *Daubert* because it can demonstrate an opposing expert's "frequent episodes of poor or selective memory" and focus in on "answers [that], when challenged, demonstrate the unreliability of [the expert's] conclusions." *Id.* at 1024-25. Monsanto expects cross-examination here will elicit those failings and a variety of other methodological flaws in plaintiffs' experts' ever-shifting, litigation-driven opinions. It is therefore imperative that adequate time for cross-examination of each witness be allowed within any hearing schedule. This Court recognized as much in noting that it considered starting with cross-examination and allowing no time for direct examination. *See* Nov. 9, 2017 CMC Transcript at 24:7-11. Although Monsanto agrees with the Court's later conclusion that some amount of direct examination may be helpful to the Court in making the rigorous evaluation required by *Daubert*, the focus here must be on cross-examination of plaintiffs' experts.

Adopting plaintiffs' proposal would result in extreme unfair prejudice to Monsanto. Cross-examination of an expert witness can be messy; it is not a "one size fits all" concept as plaintiffs suggest. As this Court no doubt knows, the time needed for cross-examination – especially to the extent counsel will be required to impeach witnesses from the extensive record – will vary by witness. The depositions in this case exemplify this obvious fact, with some taken by both parties lasting a full seven hours and others lasting far less. Further, under Monsanto's proposed format, plaintiffs could do exactly what they suggest – spend one hour and 15 minutes questioning their own witnesses and 45 minutes questioning any witnesses called by Monsanto. Therefore, adopting Monsanto's proposal does not prejudice plaintiffs in any way.

Plaintiffs' suggestion that the time for cross-examination be rigidly limited is a poorly concealed effort to shelter their main witnesses – those who offer the most detailed opinions on key issues – from thorough cross-examination exposing their testimony as unreliable and/or irrelevant. Adoption of any schedule permitting that to happen contravenes the basic tenets of *Daubert*. Instead, flexibility is key and particularly important here given that, as explained more fully in Monsanto's existing and upcoming *Daubert* briefing, plaintiffs' experts' opinions differ in content, depth, and detail, including to the point where they often contradict each other. In short, although this Court has stated it will decide Monsanto's challenges to plaintiffs' experts' qualifications to opine in some areas on the papers, Monsanto is entitled to adequate time at the

3

upcoming hearing to establish the many flaws in methodology and the lack of fit of several opinions plaintiffs' experts offer.

Finally, the flexibility inherent in Monsanto's proposal is essential to ensure the Court has the opportunity to understand the full complement of opinions being offered (and their respective methodological flaws), regardless of counsel's strategy decisions on which experts to call at the hearing and what opinions to proffer. Plaintiffs named six expert witnesses and Monsanto named seven, but it is not certain that all experts for either party will testify. For example, plaintiffs' oncology expert Dr. Nabhan recently testified at deposition that he has no plans to appear at the *Daubert* hearing, despite the fact that plaintiffs' proposal contains a fixed slot for him.

Relatedly, to ensure both efficiency and flexibility, Monsanto proposes that each party disclose the witness(es) it intends to call the following day by 9:00 AM the day prior to that witness's testimony. For example, the witnesses plaintiffs will call on Monday, March 5, 2018, the first day of the *Daubert* hearing, must be disclosed to Monsanto no later than 9:00 AM on Sunday, March 4, 2018. Monsanto would provide the same disclosure at the appropriate time for its own witnesses. Instead of a hard disclosure deadline so that each side will know precisely what witnesses to expect the following day, plaintiffs propose that "best efforts" be made to do so. Such a procedure is both administratively difficult to enforce and unnecessary. The experts will need dates certain in order to travel to San Francisco. There is no reason not to disclose that information 24 hours ahead of the day of the expert's testimony.

Monsanto also suggests that any deposition testimony from the two non-retained expert witnesses named by both parties occur after all live witnesses have testified. This will better allow each party to evaluate what, if any, testimony is necessary from the non-retained experts, allow the parties an opportunity to exchange designations, and have those portions of the video prepared. The video time for each party's designations, if any, would count against that party's 15 hour allotment.

## II.   Exhibit list

The parties agree that they will exchange witness lists with each other on February 12, 2017, and submit final exhibit lists to the Court on February 20, 2018, along with written objections, if any. Monsanto further suggests that at 8:00 AM on the day of a witness's testimony, each party provide the Court with an external drive containing courtesy copies of each document that party reasonably anticipates using with that witness on direct or cross examination. Upon completion of the testimony, the parties would provide the Court electronic copies of the exhibits actually used with the exhibit numbers affixed.

## III.   Availability for oral argument

The Court indicated that oral argument will be held during the week of March 12 or March 19. Counsel for Monsanto is available any day within that period.

5

Dated: February 5, 2018                    Respectfully submitted,

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff, Esq.
ANDRUS WAGSTAFF, PC
7171 W. Alaska Dr.
Lakewood, CO 80226
Email: aimee.wagstaff@andruswagstaff.com

/s/ Robin Greenwald
WEITZ & LUXENBERG
700 Broadway
New York, NY 10003
Email: rgreenwald@weitzlux.com

/s/ Michael Miller
THE MILLER FIRM LLC
108 Railroad Ave
Orange, VA 22960
Email: mmiller@millerfirmllc.com

*Co-Counsel for MDL 2741 Plaintiffs*

/s/ Eric Lasker
HOLLINGSWORTH, LLP
1350 I Street NW
Washington D.C. 80005
Email: elasker@hollingsworthllp.com

*Counsel for Monsanto Company*