**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
E-Mail:       jhollingsworth@hollingsworthllp.com
              elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Warren Ahrent, et al. v. Monsanto Co.*<br>Case No. 3:18-cv-00065-VC | |

<u>**MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT**</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Warren and Vicki Ahrent's Complaint ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.       Monsanto admits the allegations in the first and second sentences of paragraph 1. Monsanto also admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 1 and therefore denies those allegations.

1       2.      In response to the allegations in paragraph 2, Monsanto admits that the World

2  Health Organization's International Agency for Research on Cancer ("IARC") issued a

3  monograph relating to glyphosate in 2015 and that an IARC working group classified

4  glyphosate under Group 2A, but denies that the IARC Monograph is the authoritative standard

5  for cancer hazard assessment around the world or that IARC based its evaluation on a complete

6  or accurate assessment of the scientific research regarding glyphosate.  In response to the

7  allegations in the final sentence of paragraph 2, Monsanto admits that the California Office of

8  Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add

9  glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself

10  considers "ministerial" and "automatic" without any role for consideration of the weight or

11  quality of the evidence considered by IARC.  Monsanto further states that this decision was not

12  based upon any independent scientific analysis of glyphosate but instead was in response to a

13  provision of a California ballot proposition triggering such action based solely upon the IARC

14  classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its

15  own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose

16  a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was required to

17  list glyphosate violates the United States Constitution and the California Constitution;

18  Monsanto is involved in litigation (at the trial court level and on appeal) to block OEHHA's

19  action.  The remaining allegations in paragraph 2 set forth conclusions of law for which no

20  response is required.  To the extent that a response is deemed required, Monsanto denies the

21  remaining allegations in paragraph 2.

22       3.      In response to the allegations in the first sentence of paragraph 3, Monsanto

23  admits that it has stated, and continues to state, that Roundup®-branded products are safe when

23  used in accordance with the products' labeling.  Monsanto denies that any exposure to

24  glyphosate-based herbicides or Roundup®- branded products can cause cancer or other serious

25  illnesses.  Monsanto denies the remaining allegations in paragraph 3.

26

27

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00065-VC

4.      Monsanto denies that exposure to Roundup®-branded products did or could have caused plaintiff's alleged non-Hodgkin's lymphoma.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

5.      Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri and that it conducts business throughout the United States, including the State of Tennessee.

6.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies those allegations.

7.      The allegations in paragraph 7 comprise attorney characterizations and are accordingly denied.  Monsanto states that its Roundup®-branded products have a variety of separate and distinct uses and formulations.

8.      The allegations in paragraph 8 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in paragraph 8 based upon the allegations in plaintiffs' Complaint.

9.      The allegations in paragraph 9 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 9.

10.      In response to the allegations in paragraph 10, Monsanto denies any "omissions" and certain events giving rise to plaintiffs' claims.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 regarding where certain other events giving rise to plaintiffs' claims occurred and plaintiff's state of residence and therefore denies those allegations.  The remaining allegations in paragraph 10 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits that venue is proper in the in the Eastern District of Tennessee based upon the allegations in plaintiffs' Complaint.

11.     In response to the allegations in paragraph 11, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 11.

12.     In response to the allegations in the first sentence of paragraph 12, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in the first sentence of paragraph 12 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to their truth and therefore denies them.  In response to the allegations in the second and third sentences of paragraph 12, Monsanto admits that plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions and fruit, where it interferes with the plants' ability to form aromatic amino acids necessary for protein synthesis.   Monsanto denies the allegations in the fourth sentence of paragraph 12 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the fifth sentence of paragraph 12 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the United States Environmental Protection Agency ("EPA").

13.     Monsanto admits the allegations in the first sentence of paragraph 13 and admits that at all relevant times it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  Monsanto denies the remaining allegations in paragraph 13.

14.     Monsanto admits the allegations in paragraph 14.

15.     In response to the allegations in paragraph 15, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 15 set forth conclusions of law for which no response is required.

16.     The allegations in paragraph 16 set forth conclusions of law for which no response is required.

17.     In response to the allegations in paragraph 17, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the tests" in the final sentence of paragraph 17 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 17 set forth conclusions of law for which no response is required.

18.     Monsanto denies the allegations in paragraph 18 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 18 regarding such pesticide products generally.  The remaining allegations in paragraph 18 set forth conclusions of law for which no response is required.

19.     In response to the allegations in paragraph 19, Monsanto admits that EPA has undertaken a review of glyphosate for purposes of regulatory review and that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.epa.gov/sites/production/files/2017-12/documents/revised_glyphosate_issue_paper_evaluation_of_carcinogenic_potential.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00065-VC

Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 and therefore denies those allegations.

20.     In response to the allegations in paragraph 20, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 20 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

21.     In response to the allegations in paragraph 21, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 21 and accordingly denies those allegations.  The remaining allegations in paragraph 21 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

22.     In response to the allegations in paragraph 22, Monsanto admits that glyphosate-containing products are one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 22 and accordingly denies the same.  The remaining allegations in paragraph 22 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

23.     In response to the allegations in paragraph 23, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 23, which are not limited as of any specified date, and accordingly denies the same.

24.     In response to the allegations in paragraph 24, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 24.

25.     Monsanto denies any suggestion that IARC reviewed the full body of all scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 25 and therefore denies those allegations.

26.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and therefore denies those allegations.

27.     Monsanto denies the allegations in paragraph 27 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

28.     In response to the allegations in paragraph 28, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 28.

29.     In response to the allegations in paragraph 29, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

30.     The allegations in paragraph 30 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

31.     In response to the allegations in paragraph 31, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 31 are denied.

32.     In response to the allegations in paragraph 32, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

33.     In response to the allegations in paragraph 33, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that

the allegations in paragraph 33 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

34.    In response to the allegations in paragraph 34, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 34.

35.    In response to the allegations in paragraph 35, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

36.    In response to the allegations in the first sentence of paragraph 36, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  In response to the allegations in the second sentence of paragraph 36, Monsanto states that the cited document speaks for itself and does not require a response.  In response to the allegations in the final sentence of paragraph 36, Monsanto denies that any exposure to glyphosate based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 36.

37.    In response to the allegations in paragraph 37, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 37.

38.     In response to the allegations in paragraph 38, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

40.     In response to the allegations in paragraph 40, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 40.

41.     In response to the allegations in paragraph 41, Monsanto admits that the California OEHHA decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role or consideration of the weight or quality of the evidence considered by IARC. Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution; Monsanto is involved in litigation (at the trial court

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00065-VC

level and on appeal) to block OEHHA's action.  The remaining allegations in paragraph 41 set forth conclusions of law for which no response is required.

42.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore denies those allegations.

43.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 43 and therefore denies those allegations.

44.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 44 and therefore denies those allegations.

45.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 45 and therefore denies those allegations.

46.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 46 and therefore denies those allegations.

47.     Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses and therefore denies those allegations in paragraph 47.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 and therefore denies those allegations.

48.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies the allegations in paragraph 48.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

49.     Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and therefore denies the allegations in paragraph 49.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

50.     Monsanto incorporates by reference its responses to paragraphs 1 through 49 in response to paragraph 50 of plaintiffs' Complaint.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00065-VC

51.     In response to the allegations in paragraph 51, Monsanto admits that plaintiffs purport to bring a claim for strict liability design defect, but denies any liability as to that claim.

52.     In response to the allegations in paragraph 52, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiff used Roundup®-branded products and therefore denies that allegation.  Monsanto denies the remaining allegations in paragraph 52.

53.     Monsanto denies the allegations in paragraph 53.

54.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 54 concerning the condition of any Roundup®-branded product allegedly used by plaintiff or about plaintiff's alleged uses of such product and therefore denies those allegations.  The remaining allegations in paragraph 54 set forth conclusions of law for which no response is required.

55.     Monsanto denies the allegations in paragraph 55.

56.     Monsanto denies the allegations in paragraph 56.

57.     Monsanto denies the allegations in paragraph 57.

58.     Monsanto denies the allegations in paragraph 58 and each of its subparts.

59.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 59 concerning plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 59, including that Roundup®-branded products have "dangerous characteristics."

60.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 60 concerning plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 60, including that Roundup®-branded products have "dangerous characteristics."

61.     Monsanto denies the allegations in paragraph 61.

62.     Monsanto denies the allegations in paragraph 62.

63.     Monsanto denies the allegations in paragraph 63.

1   64.     Monsanto denies the allegations in paragraph 64.

2   65.     Monsanto denies the allegations in paragraph 65.

3   66.     Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 66 and therefore denies those allegations.

5   67.     In response to the allegations in paragraph 67, Monsanto demands that judgment

6   be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with

7   prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

8   by law and such further and additional relief as this Court may deem just and proper.

9   68.     Monsanto incorporates by reference its responses to paragraphs 1 through 67 in

10  response to paragraph 68 of plaintiffs' Complaint.

11  69.     In response to the allegations in paragraph 69, Monsanto admits that plaintiffs

12  purport to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

13  70.     Monsanto denies the allegations in paragraph 70.

14  71.     In response to the allegations in paragraph 71, Monsanto lacks information or

15  knowledge sufficient to form a belief as to the truth of the allegation that plaintiff or other

16  entities identified purchased or used Roundup®-branded products and therefore denies that

17  allegation.  The allegations in paragraph 71 also set forth conclusions of law for which no

18  response is required.  Monsanto denies the remaining allegations in paragraph 71.

19  72.     The allegations in paragraph 72 set forth conclusions of law for which no

20  response is required.

21  73.     Monsanto denies the allegations in paragraph 73.  All labeling of Roundup®-

22  branded products has been and remains EPA-approved and in compliance with all federal

23  requirements under FIFRA.

23  74.     Monsanto denies the allegations in paragraph 74.

24  75.     Monsanto denies the allegations in paragraph 75.

25  76.     Monsanto denies the allegations in paragraph 76.

26

27

77.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 77 and therefore denies those allegations.

78.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 78 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 78, including that Roundup®-branded products have "dangerous characteristics."

79.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 79 concerning plaintiff's alleged use and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 79, including that Roundup®-branded products have "dangerous characteristics."

80.     Monsanto denies the allegations in paragraph 80.

81.     Monsanto denies the allegations in paragraph 81.

82.     Monsanto denies the allegations in paragraph 82.

83.     Monsanto denies the allegations in paragraph 83.

84.     Monsanto denies the allegations in paragraph 84.

85.     Monsanto denies the allegations in paragraph 85.

86.     Monsanto denies the allegations in paragraph 86.

87.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 87 and therefore denies those allegations.

88.     In response to the allegations in paragraph 88, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

89.     Monsanto incorporates by reference its responses to paragraphs 1 through 88 in response to paragraph 89 of plaintiffs' Complaint.

90.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 90 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 90.

91.     The allegations in paragraph 91 set forth conclusions of law for which no response is required.

92.     The allegations in paragraph 92 set forth conclusions of law for which no response is required.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in paragraph 95.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

96.     Monsanto denies the allegations in paragraph 96.

97.     Monsanto denies the allegations in the first sentence of paragraph 97.  In response to the second sentence of paragraph 97, Monsanto denies that Monsanto's promotional activities were not honest.  The remaining allegations in paragraph 97 set forth conclusions of law for which no response is required.

98.     Monsanto denies the allegations in paragraph 98.

99.     Monsanto denies the allegations in paragraph 99, including each of its subparts.

100.    Monsanto denies the allegations in paragraph 100.

101.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 101 regarding plaintiff's knowledge and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 101, including that intended use and/or exposure to Roundup®-branded products causes any injuries.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 105 and therefore denies those allegations.

106.    In response to the allegations in paragraph 106, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

107.    Monsanto incorporates by reference its responses to paragraphs 1 through 106 in response to paragraph 107 of plaintiffs' Complaint.

108.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 108 and therefore denies those allegations.

109.    Monsanto denies that exposure to Roundup®-branded products did or could have caused plaintiff's spouse's alleged injuries and losses.  Monsanto denies the remaining allegations in paragraph 109.

110.    Monsanto denies the allegations in paragraph 110.

111.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 111 and therefore denies those allegations.

112.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 and therefore denies those allegations.

113.    Monsanto denies the allegations in paragraph 113.

114.    In response to the allegations in paragraph 114, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

115.    Monsanto demands a jury trial on all issues so triable.

In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.    Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

4.    Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.    Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.    Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

7.    Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

8.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

9.      Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

10.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims against Monsanto in whole or in part.

11.     Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

12.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

13.     If plaintiffs suffered injury or damages as alleged, which is denied, such injury or damage resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injury or damages.

14.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

15.     Plaintiffs' claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

16.     Plaintiffs' claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the

United States Constitution, the Tennessee Constitution, and/or other applicable state constitutions.

17.    Plaintiffs' claims for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Tennessee law and/or other applicable state laws.

18.    Plaintiffs' claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law, including Tenn. Code Ann. § 29-39-104.

19.    Plaintiffs' claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

20.    Plaintiffs' claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

21.    Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

22.    To the extent that plaintiffs recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

23.    If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Monsanto product.

24.    Plaintiffs' claims are barred to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize or limit such claims.

25.    Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

26.    Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

1

## **JURY TRIAL DEMAND**

2

Monsanto demands a jury trial on all issues so triable.

3

4    DATED:  February 12, 2018                Respectfully submitted,

5                                             /s/ Joe G. Hollingsworth
                                              Joe G. Hollingsworth (*pro hac vice*)
6                                             (jhollingsworth@hollingsworthllp.com)
                                              Eric G. Lasker (*pro hac vice*)
7                                             (elasker@hollingsworthllp.com)
                                              HOLLINGSWORTH LLP
8                                             1350 I Street, N.W.
                                              Washington, DC  20005
9                                             Telephone:   (202) 898-5800
                                              Facsimile:   (202) 682-1639
10

11                                            *Attorneys for Defendant*
                                              MONSANTO COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

23

24

25

26

27

- 21 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00065-VC