

Joe G. Hollingsworth
dir 202 898 5842
jhollingsworth@hollingsworthllp.com

February 20, 2018

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court, Northern District of California

Re: *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

To the Honorable Vince Chhabria,

The Parties submit this letter brief in compliance with PTO No. 37 regarding the exchange of exhibit lists between the Parties in advance of the *Daubert* Hearing presently set for March 5 – March 9, 2018. On February 12, 2018, the Parties exchanged preliminary exhibit lists. Plaintiffs' initial exhibit list totaled 252 listed items, and Defendant, Monsanto Company (Monsanto), listed more than 1,000 total items. The Parties engaged in a meet and confer on February 16, 2018 in an effort to resolve differences. Explained fully below are the remaining differences between the Parties.

**MONSANTO'S POSITION**

It is clear under Federal Rule of Civil Procedure 26 that "[p]arties wishing to rely on expert opinions must disclose those opinions and the facts or data considered in forming them at the times and in the sequence that the court orders." *Green v. City & Cty. of S.F.*, No. 10-CV-02649-RS (MEJ), 2015 WL 1738025, at *1-2 (N.D. Cal. Apr. 8, 2015) (citing Fed. R. Civ. P. 26(a)(2)(D)) (internal quotations omitted). The rule is intended to prevent surprise or ambush during an expert's testimony. *KFD Enters., Inc. v. City of Eureka*, No. 08–4571 MMC (JSC), 2013 WL 2384236, at *2 (N.D. Cal. May 30, 2013). The inclusion of the term "considered" has been broadly interpreted to mean that an expert must not only produce a statement of his or her opinions and the material relied upon, but also any information consulted even if not relied upon and any material provided by counsel. *United States v. Dish Network, L.L.C.*, 297 F.R.D. 589, 592-593 (C.D. Ill. 2013). This requirement is based, in part, on the fact that "such materials often contain effective ammunition for cross examination." *Fid. Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (citing Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2); *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633 (N.D. Ind. 1996)).

Failure to comply with Rule 26's disclosure requirements is addressed in Federal Rule of Civil Procedure 37, which states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence ***on a motion, at a hearing,*** or at a trial, unless the failure was substantially



justified or is harmless." *See R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (emphasis added); *Yeti by Molly, Ltd. v. Deckers Outdoor Co.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting Rule 37 is an "automatic" and "self-executing" sanction to give "teeth" to Rule 26's disclosure requirements) (quoting Committee Notes to 1993 Amendments to Fed. R. Civ. P. 37). When taken together, "under the normal operation of Rules 26 and 37 of the Federal Rules of Civil Procedure an expert may not extend his or her direct testimony beyond the opinions and bases disclosed in the Rule 26(a)(2)(B) report, and may not, on direct examination, cover new work done thereafter." *Amtel Corp. v. Info Storage Devices, Inc.*, 189 F.R.D. 410, 411 (N.D. Cal 1999).

Plaintiffs' contention that Rules 26 and 37 do not apply here is absurd. Although this Court has great discretion under Federal Rule of Evidence ("FRE") 104 in what evidence it considers when resolving the preliminary question of admissibility under *Daubert*, that discretion does not equate to an abandonment of limitations on expert opinions as stated in Rules 26 and 37. In short, plaintiffs cannot hide behind FRE 104 in their efforts to turn this hearing into one of ambush and surprise when it comes to the very expert testimony at issue. *See Rimbert v. Eli Lilly & Co.*, No. CIV 06-0874 JCH/LFG, 2009 WL 2208570, at *17 (D.N.M. July 21, 2009) ("Not only are materials not considered by the expert in preparing her report largely irrelevant to the Court's evaluation of her methodology, but allowing a party . . . to combat a *Daubert* challenge using such materials, including those which raise new theories and issues, would unfairly encumber the opponent in . . . [the] presentation of its *Daubert* challenge."), *aff'd*, 647 F.3d 1247 (10th Cir. 2011).

Plaintiffs cite no case that permits a party, after the close of discovery, to feed testifying experts additional materials so that the expert can divulge his or her new opinions for the first time during a *Daubert* hearing. In fact, such tactics are exactly what Rules 26 and 37 are designed to prevent. This Court should join others in rejecting that approach. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 677 (D. Kan. 1997) (court refused to consider exhibits supporting expert testimony at *Daubert* hearing that were identified to opposing party one week prior to the *Daubert* hearing and were not identified in any timely exchanged expert report or timely supplement).

Monsanto objects to plaintiffs' effort to shift the focus of this hearing away from their experts' unsupported, litigation-driven opinions and on to non-*Daubert* issues. Monsanto requests that this Court enter an order prohibiting plaintiffs from using a document on direct examination that was not properly disclosed in that expert's report. Contrary to plaintiffs' letter, Monsanto does not agree that objections to relevance should be reserved and raised throughout the *Daubert* hearing as necessary. Monsanto has no intent to show its own witnesses documents upon which they did not rely or consider in formulating their opinions on direct, and therefore has no objection to abiding by the same rule.

Moreover, exhibits that are not relevant to whether glyphosate or glyphosate-based herbicides ("GBHs") can cause cancer in humans at relevant exposure levels and/or are unrelated to the methodology applied by plaintiffs' experts in reaching their opinions have no place in the upcoming *Daubert* proceeding. The question before this Court is all about the science, and more

HollingsworthLLP

specifically whether plaintiffs have met their burden of showing that their experts are qualified to offer opinions in the multiple scientific disciplines addressed in their reports, and, in doing so, that each employs a scientifically reliable methodology that culminates in an admissible opinion with a "valid scientific connection to the pertinent inquiry." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993); *Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).

The science at issue consists of actual studies and data, not conjecture and speculation. Yet, plaintiffs' exhibit list is littered with carefully selected, out-of-context, e-mails, memoranda, and other internal Monsanto documents which, according to plaintiffs' allegations in their briefing, show purported ghostwriting of review articles (not original studies themselves) or allegedly improper corporate conduct. *See* Plfs' (1) Resp. in Opp'n to Monsanto Co.'s *Daubert* & Summ. J. Mot. Based on Failure of General Causation Proof and (2) *Daubert* Mot. To Strike Certain Ops. of Monsanto Co.'s Expert Witnesses at 14-15, ECF. No. 647. The lack of relevance of such documents is further confirmed by the fact that the vast majority are not referenced by any of plaintiffs' experts.

Monsanto also requests that this Court require plaintiffs to provide Monsanto with sufficient advance notice if they intend to use a currently confidential document not included on their exhibit list. As this Court knows, millions of pages have been produced and there has been considerable discussion and multiple court proceedings and orders on how challenges to confidentially must occur. Nevertheless, plaintiffs' exhibit list contains multiple documents that are confidential and which plaintiffs did not challenge through the prescribed procedures. With one exception (see below), the parties have reached agreements on the status of those documents. However, plaintiffs' list has a broad catch-all provision for "other documents needed for impeachment." The risk of this catch-all being used as a tool to violate this Court's orders regarding confidentially challenges and to require valuable hearing time be wasted on resolving confidentiality issues is great and results in severe prejudice to Monsanto. An order requiring that Monsanto be given adequate time to address confidentiality issues is therefore necessary and appropriate.

Finally, plaintiffs' exhibit list includes an entry for "Knezevich & Hogan, a Chronic Feeding Study of Glyphosate (Roundup Technical) in Mice Bio Dynamics, Inc. (1983)." Monsanto produced that over 3,500-page study to plaintiffs on April 29, 2016. Despite having nearly two years to do so, plaintiffs never raised a confidentiality challenge prior to including the entire study on their exhibit list. In addition to demonstrating the non-carcinogenic nature of glyphosate, the study is also commercially sensitive business information. If released in full, other potential registrants could use the study without compensation to Monsanto in order to obtain approval for competitor products. Counsel for Monsanto asked whether plaintiffs would narrow their request to portions of the study both in response to this Court's admonitions that only the pages needed be assessed in confidentiality challenges and to determine whether those portions plaintiffs intend to use could be released without violating Monsanto's rights and disclosing the entirety of its commercially sensitive business information as it relates to the 1983 study.



Plaintiffs refused to narrow their request. This refusal is identical to conduct this Court prohibited in Pre-Trial Order 20, where it held that by seeking to de-designate more material than needed, plaintiffs are "drifting away from the merits" and instead seeking to use the litigation as a vehicle for abuse of the discovery process. Pre-Trial Order 20 at 1 (filed May 1, 2017), ECF No. 266; *see also* Pre-Trial Order 30 at 10 (filed Sept. 6, 2017), ECF No. 519 ("Where exhibits to court filings are needed, the parties shall file only the pages necessary for its argument unless the Court requests additional material."); Pre-Trial Order 15 at 4 (filed Mar. 3, 2017), ECF No. 186 (requiring plaintiffs to refile unsealed exhibit with only those pages needed). Given their refusal to comply with Court orders and participate in good faith in discussions regarding whether the confidentiality issues can be narrowed or resolved without judicial intervention as to this exhibit, Monsanto therefore asks the Court to prohibit plaintiffs from using any part of this study.

**PLAINTIFFS' POSITION**

**1. Use of Relevant Exhibits**

Rather than engage in a tedious exercise of disputing each entry, the Parties agreed to a general objection to the use of exhibits that are not relevant to whether glyphosate/GBFs can cause cancer and/or are unrelated to methodology employed by the experts in this case; however, they disagree on which documents are considered "not relevant." Such objections are reserved and will be raised during the *Daubert* Hearing as deemed necessary.

**2. Applicability of Rule 26**[1]

Plaintiffs' experts are academics, scientists, and clinicians. They are not professional litigation experts and they did not cease reviewing materials that may be pertinent to their opinions and the Court's *Daubert* inquiry simply because their expert reports had been served and their depositions concluded. To the contrary, Plaintiffs' experts continue to review and consider materials related to this case. Because their review is ongoing, there are supplemental materials considered that are included in Plaintiffs' exhibit list. Additionally, Plaintiffs intend to serve supplemental materials considered lists for each expert on Friday, February 23rd.

It is Plaintiffs' position that disclosure of these materials is not merely consistent with the Federal Rules; rather, it is required. *S.E.C. v. Reyes,* No. C06-04435 CRB, 2007 WL 963422, at *1 n.1 (N.D. Cal. Mar. 30, 2007) ("This Court concurs in the 'majority view' that Rule 26(a)(2)(B) requires the disclosure of all materials considered by, presented to, or relied upon by a testifying expert in forming his or her opinions...") (citations omitted); *Apple Inc. v. Amazon.com, Inc*., No. 11-1327 PJH JSC, 2013 WL 1320760, at *1 (N.D. Cal. Apr. 1, 2013) ("Courts have read the term 'considered' to include information that an expert reviews or generates, ***'regardless of whether the experts actually rely on those materials as a basis for their opinions.'***") (citations omitted) (emphasis added). Indeed, excluding materials reviewed by experts subsequent to their reports and depositions flies in the face of the plain language and spirit of the Rules. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 26(e).

[1] Many, if not most, of the additional items on Plaintiffs' exhibit list were included as potential impeachment materials and do not implicate Fed. R. Civ. P. 26 at all.

All exhibits on Plaintiffs' exhibit list were considered and reviewed by Plaintiffs' experts, and it is Plaintiffs' position that all items are relevant to the subject matter of the upcoming *Daubert* hearing. As the Court is well aware, substantive review of new publications is ongoing for the Parties' experts. Accordingly, additional, non-listed materials are wholly relevant to the *Daubert* proceeding. For example, following her supplemental deposition on January 21, 2018, Plaintiffs' expert Dr. Beate Ritz conducted numerous PubMed searches as a result of questioning by defense counsel.[2] Similar searches were conducted by Plaintiffs' other experts following their depositions and in preparation for the *Daubert* hearing. Although these materials are directly related to the litigation and warrant inclusion in the *Daubert* hearing, the review of additional reliance materials has not resulted in any material change to any of Plaintiffs' experts' opinions, resulted in the development of any new or novel theories, or caused any substantial change in testimony that could be considered prejudicial to Monsanto. Moreover, it is perplexing that none of Monsanto's experts—outside of Drs. Mucci and Rider who drafted new reports in response to this Court's Order—has, in the five months since the close of expert discovery, considered any new materials that might be relevant to their opinions.[3]

**3. Identification of Specific Pages within the Controversial Mouse Study**

Monsanto objects to Plaintiffs' use of the entirety of the Knezevich and Hogan 1983 mouse study. During the Parties' meet and confer, Monsanto explained that because the mouse study contains confidential business information, there is a need for Plaintiffs to identify those portions of the study they intend to present at *Daubert* so a per-hearing determination can be made with regard to the confidentiality of the study.

At this time, Plaintiffs are unable to identify those portions of the mouse study they intend to use at the *Daubert* hearing as requested by Monsanto because (1) Plaintiffs use of the Knezevich and Hogan study at the *Daubert* Hearing is likely to include several different portions of the study; and (2) preparation for the hearing is ongoing such that specific portions or pages

---

[2] Plaintiffs have always maintained that these proceedings should not be halted for the inevitable publication of new scientific articles. See Nov. 9, 2017 CMC Transcript at 12:6-11, "[T]here will always be new studies coming out. Science is evolving. If the defendants are going to get a continuance every time a new piece of science comes out, we will never have a *Daubert* hearing."

[3] Should the Court give serious consideration to Monsanto's request, the Court must limit the opinions of Monsanto's epidemiologist Dr. Jennifer Rider for failing to comply with Rule 26's disclosure requirement. Dr. Rider failed to disclose important materials considered in her Supplemental Expert Report pursuant to PTO 34. *See* Rider Supp. Dep. 74:6:12; 75:4-5 (Admitting that an article on glyphosate use patterns was not included in her supplemental materials considered list, despite Dr. Rider basing portions of her testimony upon that very article.); Rider Supplemental Report, Exhibit A Supplemental Materials Considered List. Moreover, to date Dr. Rider has not corrected this failure. Accordingly, if any exhibits or opinions are to be excluded under Fed. R. Civ. P. 26, Dr. Rider must not be permitted to testify on the changing use patterns of glyphosate to the extent her testimony implicates articles that were not disclosed.



are not yet finalized. The Knezevich and Hogan study is the only study listed in full on Plaintiffs' exhibit list, it is listed by both Parties' experts, and is known as a key study in this litigation. Requiring Plaintiffs to identify portions of the study that will be used at the hearing will result in requiring Plaintiffs to show work-product and litigation strategy in advance of the hearing. The purpose and use of the Knezevich and Hogan study is unlike the scenario that gave rise to PTOs 15, 20, and 30, and they are thusly inapplicable. Finally, Plaintiffs' discussion of the Knezevich and Hogan study and whether or not portions, as compared to the whole, could be identified were conducted in good faith.

**4. Identification of Impeachment Materials**

Monsanto's letter brief asks this Court to require Plaintiffs to identify and pre-notice Monsanto of impeachment materials if those materials are Company documents not yet de-designated as non-confidential. Of note, during the meet and confer, this issue was not raised. Further, following the meet and confer, this issue was not memorialized in any email as an issue between the parties. Nonetheless, Plaintiffs' address the topic here, based on Monsanto's written position.

To require Plaintiffs to advise Monsanto over impeachment materials is highly prejudicial and not contemplated within the rules – irrespective of Monsanto's accusatory foreshadowing. Plaintiffs' "catch all" provision was included in an abundance of caution, as impeachment materials are not required when exchanging exhibit lists.[4] As the Court well knows, it is not always possible to capture impeachment materials *in* advance of live testimony – by their very nature, such materials are the result of conflicting testimony. Monsanto seems to have raised this issue in the eleventh hour, in the absence of discussion, which is directly contrary to the meet and confer process. Plaintiffs should not be prejudiced because of Monsanto's liberal use of confidential designations throughout their document production.

DATED: February 20, 2018

Respectfully submitted,
/s/Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005

[4] Notably, Plaintiffs' Exhibit List included this entry in advance of the meet and confer call. On the other hand, Monsanto sent its supplemented Exhibit List to Plaintiffs the morning of February 20, 2018, which includes entry No. 1022, "Documents and literature used to impeach the testimony of plaintiffs' witnesses."

Telephone: (202) 898-5800
Facsimile: (202) 682-1639
Attorneys for Defendant
MONSANTO COMPANY

DATED: February 20, 2018

Respectfully submitted,
/s/ Michael Miller

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Ph 540 672 4224
F 540 672 3055

/s/ Aimee Wagstaff

Aimee Wagstaff
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Ph 303-376-6360
F 303-376-6361

/s/ Robin Greenwald

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York NY 10003
Ph 212-558-5500
F 212-344-5461

Co-Lead Counsel for Plaintiffs