# Exhibit A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHEAT GROWERS; NATIONAL CORN GROWERS ASSOCIATION; UNITED STATES DURUM GROWERS ASSOCIATION; WESTERN PLANT HEALTH ASSOCIATION; IOWA SOYBEAN ASSOCIATION; SOUTH DAKOTA AGRI-BUSINESS ASSOCIATION; NORTH DAKOTA GRAIN GROWERS ASSOCIATION; MISSOURI CHAMBER OF COMMERCE AND INDUSTRY; MONSANTO COMPANY; ASSOCIATED INDUSTRIES OF MISSOURI; AGRIBUSINESS ASSOCIATION OF IOWA; CROPLIFE AMERICA; AND AGRICULTURAL RETAILERS ASSOCIATION, | CIV. NO.  2:17-2401 WBS EFB <br><br> MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |
|    Plaintiffs, | |
|  v. | |
| LAUREN ZEISE, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT; and XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
|    Defendants. | |

1

1                              ----oo0oo----

2          Before the court is plaintiffs' Motion for Preliminary

3    Injunction.  (Docket No. 29.)  The court held a hearing on the

4    motion on February 20, 2018.

5    I.   Factual and Procedural History

6          This case concerns a challenge to California's listing

7    of glyphosate[1] as a chemical known to the State of California to

8    cause cancer, as well as a challenge to California's warning

9    requirements that accompany that listing.  Plaintiffs claim,

10   among other things, that the listing and warning requirements

11   violate the First Amendment by compelling them to make false,

12   misleading, and highly controversial statements about their

13   products, and they seek a preliminary injunction on this basis.[2]

14         Under Proposition 65, the Safe Drinking Water and Toxic

15   Enforcement Act of 1986, Cal. Health & Safety Code §§ 25249.5-

16   25249.14 ("Proposition 65"), the Governor of California is

17   required to publish a list of chemicals known to the State to

18   cause cancer, as determined by, inter alia, certain outside

19   entities, including the United States Environmental Protection

20         [1]   Glyphosate is a widely-used herbicide used to control
21   weeds in various settings and is an active ingredient in
     defendant Monsanto Company's ("Monsanto") product Roundup.
22   Plaintiffs or their members sell glyphosate-based herbicides, use
     glyphosate in their cultivation of crops that are incorporated
23   into food products sold in California, or process such crops into
     food products sold in California.  (Am. Compl. ¶¶ 9-22.)
24
25         [2]   Plaintiffs also claim that (1) the listing and warning
     requirements conflict with the Federal Food, Drug, and Cosmetic
26   Act, 21 U.S.C. §§ 343(a) and 346a(n) ("FDCA"), and are thus
     preempted by federal law, and (2) these requirements violate the
27   Due Process Clause of the Fourteenth Amendment, though they do
     not seek a preliminary injunction on these other grounds, and the
28   court expresses no opinion as to those allegations.

                                  2

1  Agency ("EPA"), the United States Food and Drug Administration

2  ("FDA"), and the International Agency for Research on Cancer

3  ("IARC").[3]  AFL-CIO v. Deukmejian, 212 Cal. App. 3d 425, 431-34

4  (3d Dist. 1989) (citing, inter alia, Cal. Labor Code 6382(b)(1));

5  see also Cal. Code Regs. tit. 27 §§ 25306(m), 25904(b)[4] ("A

6  chemical or substance shall be included on the list [of chemicals

7  known to the state to cause cancer] if it is classified by the

8  International Agency for Research on Cancer" as "carcinogenic to

9  humans" or "[p]robably carcinogenic to humans" and there is

10  "sufficient evidence of carcinogenicity in experimental

11  animals.").[5]

12      Proposition 65 also prohibits any person in the course

13  of doing business from knowingly and intentionally exposing

14  anyone to the listed chemicals without a prior "clear and

15  _____

16  [3]   The IARC was founded in 1965 as the cancer research arm
of the United Nations' World Health Organization, and exists to

17  "promote international collaboration in cancer research."
(Zuckerman Decl., Ex. G at 5-6 (Docket No. 49-7).)  The United

18  States was a founding member of the IARC and remains a member.
(Id. at 27.)  The IARC publishes, in the form of "Monographs,"

19  "critical reviews and evaluations of evidence on the
carcinogenicity of a wide range of human exposures." (Zuckerman

20  Decl., Ex. H at 10 (Docket No. 49-8).)

21      The other two outside entities named under the
Proposition 65 regulations are the National Institute for

22  Occupational Safety and Health, which is part of the Centers for
Disease Control, and the National Toxicology Program, which is

23  part of the National Institutes of Health.  Cal. Code Regs. tit.
27 § 25306(m).

24

25  [4]   Several new regulations implementing Proposition 65
take effect August 30, 2018.  This opinion refers to the current

26  versions of the regulations unless otherwise noted.

27  [5]   The Office of Environmental Health Hazard Assessment
("OEHHA") is the agency responsible for implementing Proposition

28  65.  Cal. Code Regs. tit. 27 div. 4 ch. 1 Preamble.

1   reasonable" warning, with this prohibition taking effect 12

2   months after the chemical has been listed.  Cal. Health & Safety

3   Code § 25249.6; Deukmejian, 212 Cal. App. 3d at 431-34.  Failure

4   to comply may result in penalties up to $2,500 per day for each

5   failure to provide an adequate warning, and enforcement actions

6   may be brought by the California Attorney General, district

7   attorneys, certain city attorneys and city prosecutors, and

8   private citizens who may recover attorney's fees.  Cal. Health &

9   Safety Code § 25249.7(b), Cal. Code Regs. tit. 11 § 3201.

10        In 2015, the IARC classified glyphosate as "probably

11   carcinogenic" to humans based on evidence that it caused cancer

12   in experimental animals and limited evidence that it could cause

13   cancer in humans.  (Zuckerman Decl. (Docket No. 49), Ex. H,

14   Preamble (Docket No. 49-8), and Ex. O, IARC Glyphosate, from

15   Monograph 112 (Docket No. 49-15).)  However, several other

16   organizations, including the EPA and other agencies within the

17   World Health Organization, have concluded that there is no

18   evidence that glyphosate causes cancer.  (Prins Decl., Exs. E-L

19   (Docket Nos. 29-8 through 29-15).)[6]  As a result of the IARC's

20   classification of glyphosate as probably carcinogenic, the OEHHA

21   _____

22        [6]   Although defendants do not object to plaintiffs'
     attachment of several glyphosate studies, defendants object to
23   several declarations provided by plaintiffs, arguing that they
     are speculative and/or contain inadmissible hearsay.  (Defs.'
24   Objs. (Docket No. 46).)  However, as defendants concede, evidence
     in support of a preliminary injunction application need not meet
25   normal evidentiary standards, and the court may consider and give
     weight to inadmissible evidence in considering preliminary
26   relief.  See Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188
     (10th Cir. 2003); Johnson v. Couturier, 572 F.3d 1067, 1083 (9th
27   Cir. 2009).  The court therefore OVERRULES defendants'
     objections.
28

1    issued a Notice of Intent to List Glyphosate in November 2015.

2    (Zuckerman Decl., Ex. Q (Docket No. 49-17).)

3         The OEHHA listed glyphosate as a chemical known to the

4    state of California to cause cancer on July 7, 2017, and thus the

5    attendant warning requirement takes effect on July 7, 2018.

6    (Zuckerman Decl., Ex. T, OEHHA Chemicals Known to the State to

7    Cause Cancer or Reproductive Toxicity List (December 28, 2017)

8    (Docket No. 49-20).)

9    II. Discussion

10         Injunctive relief is "an extraordinary and drastic

11   remedy, one that should not be granted unless the movant, by a

12   clear showing, carries the burden of persuasion." Mazurek v.

13   Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).  In order

14   to obtain a preliminary injunction, the moving party must

15   establish (1) it is likely to succeed on the merits, (2) it is

16   likely to suffer irreparable harm in the absence of preliminary

17   relief, (3) the balance of equities tips in its favor, and (4) an

18   injunction is in the public interest.  Winter v. Nat. Res. Def.

19   Council, Inc., 555 U.S. 7, 20 (2008).

20        A.   Ripeness

21         Before the court examines the merits of plaintiffs'

22   First Amendment claim, the court will consider whether this claim

23   is ripe.  "Ripeness is peculiarly a question of timing, designed

24   to prevent the courts, through avoidance of premature

25   adjudication, from entangling themselves in abstract

26   disagreements."  Thomas v. Anchorage Equal Rights Comm'n, 220

27   F.3d 1134, 1138 (9th Cir. 2000) (citations and internal

28   punctuation omitted).  Courts must examine whether a case is ripe

1  because their role "is neither to issue advisory opinions nor to

2  declare rights in hypothetical cases, but to adjudicate live

3  cases or controversies consistent with the powers granted the

4  judiciary in Article III of the Constitution."  Id.

5       The ripeness inquiry includes both "constitutional" and

6  "prudential" components.  Id.  Under the constitutional component

7  of standing, courts consider "whether the plaintiffs face a

8  realistic danger of sustaining direct injury as a result of the

9  statute's operation or enforcement, or whether the alleged injury

10  is too imaginary or speculative to support jurisdiction."  Id.

11  (citations and internal quotations omitted).  Under the

12  prudential component, courts consider (1) the fitness of the

13  issues for judicial decision and (2) the hardship to the parties

14  of withholding court consideration.  Id. at 1142.  For the

15  reasons discussed below, the court finds that plaintiffs' First

16  Amendment challenge is ripe under both the constitutional and

17  prudential inquiries.

18       First, defendants argue that plaintiffs' First

19  Amendment challenge is unripe because plaintiffs may not have to

20  provide any warning if their products' glyphosate levels are

21  below the "safe harbor" level that will likely be adopted by the

22  State before the warnings are required.  However, regardless of

23  the State's possible enactment of a safe harbor level, plaintiffs

24  still face a significant risk of injury.  The court recognizes

25  that (1) Proposition 65 provides that no warning is required for

26  a product where an exposure poses no significant risk assuming

27  lifetime exposure at the level in question, Cal. Health & Safety

28  Code § 25249.10; (2) the OEHHA has set specific safe harbor

1    levels for several chemicals, and no warnings are required if the

2    daily exposure caused by a product is below that safe harbor

3    level, Cal. Code Regs. tit. 27 § 25705; and (3) the OEHHA has

4    proposed a safe harbor level of 1,100 micrograms per day for

5    glyphosate, and the corresponding regulation setting that level

6    is expected to be completed by July 1, 2018, (Fernandez Decl. ¶ 9

7    (Docket No. 48)).

8         Nevertheless, assuming plaintiffs' products were tested

9    and found to contain concentrations of glyphosate below the safe

10   harbor level as set by Cal. Code. Regs. tit. 27 § 25705,

11   plaintiffs would still have no reasonable assurance that they

12   would not be subject to enforcement action.  Plaintiffs have

13   provided evidence that private plaintiffs have brought

14   enforcement actions for various chemicals notwithstanding a

15   defense of compliance with the safe harbor level for those

16   chemicals, including where the California Attorney General said a

17   proposed enforcement suit had no merit.[7]  Thus, plaintiffs, who

18   _____

19   [7]    (See, e.g., Norris Decl. ¶¶ 8-10 (Docket No. 66-7)
     (discussing lawsuit lasting for 6 years brought against

20   McDonald's Corporation and other restaurants based on allegations
     that their cooked chicken exposed Californians to the listed

21   carcinogen "PHIP," despite a California Attorney General
     determination that the level of PHIP in cooked chicken fell far

22   below the level that would require a warning under Proposition
     65); Norris Decl. ¶¶ 28-31 (discussing Proposition 65 actions

23   brought against restaurants and food companies notwithstanding
     safe harbor level for acrylamide set in 1990).)  See also

24   Sciortino v. PepsiCo, Inc., 108 F. Supp. 3d 780, 786 (N.D. Cal.
     2015) (denying motion to dismiss where parties disputed whether

25   defendant's products exceeded the safe harbor level); Envtl. Law
     Found. v. Beech-Nut Nutrition Corp., 235 Cal. App. 4th 307, 314

26   (1st Dist. 2015) (discussing Proposition 65 enforcement action
     where safe harbor defense was litigated at trial and noting that

27   defendants had the burden of showing that the level of chemicals
     in their products did not exceed the safe harbor); CKE Rests.,

28

1   have stated they intend to give no warning based on their

2   constitutional right against compelled speech, face a credible

3   threat of enforcement as a result of exercising such right,

4   regardless of the possible enactment of a safe harbor level for

5   glyphosate.[8]

6          Defendants claim that enforcement actions would be

7   unlikely in the event that a product did not exceed the safe

8   harbor level for glyphosate, citing both the steps required to

9   file suit (which require 60 days' notice and the filing of a

10  certificate of merit) and the fact that the Attorney General will

11  likely inform the private enforcer that (1) there was no

12  violation, (2) an action was not in the public interest, and (3)

13  the action would not warrant civil penalties and fees.

14  Defendants also note that if the private enforcer refused to

15  withdraw its notice of violation, the Attorney General would then

16  post a letter on the Attorney General website stating that there

17  _____

    Inc. v. Moore, 159 Cal. App. 4th 262, 265 (2d Dist. 2008)
18  (dismissing suit seeking declaration that private party could not
    initiate Proposition 65 litigation because safe harbor level was
19  not exceeded).

20      [8]   Plaintiffs have also provided evidence of likely lost
    sales if they do not provide Proposition 65 warnings on their
21  products, regardless of whether the state establishes a safe
    harbor level for glyphosate.  At least one major retailer has
22  explained that it will no longer carry glyphosate-based
    herbicides without any Proposition 65 warning and will remove
23  these herbicides by July 8, 2018, regardless of any safe harbor
    level that may be set by California.  (Martin Decl. ¶ 3 (Docket
24  No. 66-15).)  Businesses who wish to comply with Proposition 65's
    warning requirement are also faced with the costs of compliance
25  in advance of the July 7, 2018 deadline in the event that a safe
    harbor level is not established by that deadline.  See, e.g.,
26  Core-Mark Int'l v. Mont. Bd. of Livestock, 701 F. App'x 568, 571
27  (9th Cir. 2017) (cost to separately package, label, and inventory
    milk destined for sale in Montana were concrete injuries).
28

1   was no merit to the proposed enforcement action.  Notwithstanding

2   these purported barriers, one California Court of Appeal has

3   explained that the instigation of Proposition 65 enforcement

4   actions is "easy – and almost absurdly easy at the pleading stage

5   and pretrial stages."  See Consumer Def. Grp. v. Rental Hous.

6   Indus. Members, 137 Cal. App. 4th 1185, 1215 (4th Dist. 2006).

7          Further, in order to take advantage of the safe harbor,

8   plaintiffs would be required to test their products to determine

9   whether their products exceeded the safe harbor level, incurring

10  the attendant costs, which in itself is a cognizable injury.

11  See, e.g., Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139,

12  154-55 (2010) (farmers seeking injunctive relief had standing

13  based on, inter alia, the cost of testing crops that would be

14  required if injunction was not granted).[9]

15         Second, defendants argue that plaintiffs' First

16  Amendment challenge is unripe because even if their products

17

18         [9]    (See also Inman Decl. ¶¶ 7-9; Novak Decl. ¶¶ 4-6; Hurst
    Decl. ¶¶ 5-7; Mehan Decl. ¶¶ 4-6; Stoner Decl. ¶¶ 6-9; Kessel
19  Decl. ¶ 4; Jackson Decl. ¶¶ 5-10; McCarty Decl. ¶¶ 11-13;
    Brinkmeyer Decl. ¶¶ 5-6; Martinson Decl. ¶¶ 5-9; Heering Decl. ¶¶
20  37, 39-41; and Wogsland Decl. ¶¶ 5-9 (Docket Nos. 29-52 through
    29-59 and 29-61 through 29-63) (explaining that testing
21  requirement or change in production to avoid testing requirements
    would cause significant changes to farmers' operations, increase
22  costs, and put them at a competitive disadvantage); Supp. Stoner
    Decl. ¶¶ 7-8; Supp. Jackson Decl. ¶6; Supp. Hurst Decl. ¶¶ 5-7;
23  and Supp. Inman Decl. ¶¶ 7-9 (Docket No. 66-12 through 66-16)
    (farmers stating that they do not test their crops for glyphosate
24  and were not required to do so by the EPA); Heering Decl. ¶ 10
    (Docket No. 66-6) (explaining that farmers do not have to
25  separately test crops for herbicide residue under federal law
    because herbicide labeling laws already require that herbicides,
26  if used according to the labeling instructions, will not result
    in an exposure that exceeds the EPA's tolerance for a given
27  crop).)

28

1  exceed the safe harbor level plaintiffs may defend any

2  enforcement action by showing their products do not pose a

3  significant cancer risk.  However, that would merely be an

4  affirmative defense which plaintiffs would have to assert once

5  the enforcement action is brought against them,[10] and facing

6  enforcement actions, or even the possible risk of enforcement

7  actions, are cognizable injuries.  See, e.g., Italian Colors

8  Rest. v. Becerra, 878 F.3d 1165, 1173 (9th Cir. 2018) (party had

9  standing because "even if the Attorney General would not enforce

10  the law, [the statute under review] gives private citizens a

11  right of action to sue for damages").

12       Third, defendants argue that plaintiffs' First

13  Amendment challenge is unripe because it has not been determined

14  what any required warning would have to say.  However, as

15  discussed in detail below in the court's discussion of the

16  likelihood of success on the merits, any warning which plaintiffs

17  might be able to devise consistent with defendants' demands under

18  the regulations interpreting Proposition 65 would be inconsistent

19  with plaintiffs' First Amendment rights.

20       [10]   See, e.g., Consumer Def. Grp., 137 Cal. App. 4th at
    1214 (explaining that the burden shifting provisions of
21  Proposition 65 "make it virtually impossible for a private
    defendant to defend a warning action on the theory that the
22  amount of carcinogenic exposure is so low as to pose 'no
    significant risk' short of actual trial") (citing Cal. Health &
23  Safety Code § 25349.10(c)) (warning requirement shall not apply
    to "[a]n exposure for which the person responsible can show that
24  the exposure poses no significant risk assuming lifetime exposure
    at the level in question . . . based on evidence and standards of
25  comparable scientific validity to the evidence and standards
    which form the scientific basis for the listing of such
26  chemical," and "[i]n any action brought to enforce [the warning
    requirement], the burden of showing that an exposure meets the
27  criteria of this subdivision shall be on the defendant.").

28

B.   Likelihood of Success on the Merits

As in initial matter, plaintiffs have not shown a likelihood of success on the merits of their claim that the listing of glyphosate violates the First Amendment, because the listing is government speech, not private speech.  "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009).  California's listing of chemicals it purportedly knows to cause cancer is neither a restriction of private speech nor government-compelled private speech.  The fact that the listing triggers Proposition 65's warning requirement does not transform the listing itself into government-compelled speech.  Indeed, glyphosate has been listed by California since July 2017, and plaintiffs have not been required to provide any warnings.  It is only the upcoming July 2018 deadline for providing the Proposition 65 warning that compels private speech.  Thus, plaintiffs have not shown a likelihood of success on the merits of their claim that the listing of glyphosate violates the First Amendment.

Similarly, plaintiffs have not shown a likelihood of irreparable harm should the court fail to enjoin the listing of glyphosate, because any harm that plaintiffs might suffer is caused by the warning requirements of Proposition 65, rather than the listing itself.  Notably, plaintiffs do not claim that they have already suffered any injury as a result of the listing, but only allege that they will suffer injury as the warning requirement deadline approaches and takes effect.  In other words, any alleged irreparable injury could be prevented directly

1  by enjoining the warning requirement.  Accordingly, the court

2  will deny a preliminary injunction based on plaintiffs' claim

3  that the glyphosate listing violates the First Amendment.

4       A different analysis is required for the warning

5  requirement, as it compels commercial speech.  In Zauderer v.

6  Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S.

7  626, 651 (1985), the Supreme Court held that the government may

8  require commercial speakers to disclose "purely factual and

9  uncontroversial information" about commercial products or

10  services, as long as the "disclosure requirements are reasonably

11  related" to a substantial government interest and are neither

12  "unjustified [n]or unduly burdensome."  See also CTIA-The

13  Wireless Ass'n v. City of Berkeley, 854 F.3d 1105, 1118 (9th Cir.

14  2017).

15       The State has the burden of demonstrating that a

16  disclosure requirement is purely factual and uncontroversial, not

17  unduly burdensome, and reasonably related to a substantial

18  government interest.  See Zauderer, 471 U.S. at 658-59; Ibanez v.

19  Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy, 512

20  U.S. 136, 146 (1994).  The dispute in the present case is over

21  whether the compelled disclosure is of purely factual and

22  uncontroversial information.  In this context, "uncontroversial"

23  "refers to the factual accuracy of the compelled disclosure, not

24  to its subjective impact on the audience."  CTIA, 854 F.3d at

25  1117-18.  Further, "a statement may be literally true but

26  nonetheless misleading and, in that sense, untrue" and therefore

27  unconstitutionally compelled private speech under Zauderer.  Id.

28  at 1119; see also Am. Meat Inst. v. U.S. Dep't of Agric., 760

1  F.3d 18, 27 (D.C. Cir. 2014) (recognizing possibility that

2  required factual disclosures "could be so one-sided or incomplete

3  that they would not qualify as 'factual and uncontroversial'")

4  (citation omitted).

5       Defendants argue that any warning for glyphosate that

6  incorporates the current safe-harbor warning language "known to

7  the state of California to cause cancer" or ("known to cause

8  cancer") will be truthful and not misleading because Proposition

9  65 and its implementing regulations state that chemicals are

10 "known" to the State to cause cancer when, inter alia, they are

11 classified by the IARC as "[p]robably carcinogenic to humans" and

12 there is "sufficient evidence of carcinogenicity in experimental

13 animals."  See Cal. Code Regs. tit. 27 § 25904(b).  Because the

14 IARC classified glyphosate as a probable carcinogen and there was

15 sufficient evidence of carcinogenicity in animals, defendants

16 argue that California does in fact "know" that glyphosate causes

17 cancer under the applicable regulations, and its warning is

18 factually accurate.

19       While it may be literally true that California "knows"

20 that glyphosate causes cancer as the State has defined that term

21 in the statute and regulations, the required warning would

22 nonetheless be misleading to the ordinary consumer.  See, e.g.,

23 CTIA-The Wireless Ass'n v. City and County of San Francisco, 827

24 F. Supp. 2d 1054, 1062-63 (9th Cir. 2011), aff'd, 494 F. App'x

25 752 (9th Cir. 2012) (granting preliminary injunction in part

26 because required fact sheet was misleading because it failed "to

27 explain the limited significance of the WHO 'possible carcinogen'

28 classification," which implied that radiofrequency energy from

13

1   cell phones was "more dangerous than it really is," and

2   explaining that the fact sheet should state that "RF Energy has

3   been classified by the World Health Organization as a possible

4   carcinogen rather than as a known carcinogen or a probable

5   carcinogen and studies continue to assess the potential health

6   effects of cell phones.").

7           Ordinary consumers do not interpret warnings in

8   accordance with a complex web of statutes, regulations, and court

9   decisions, and the most obvious reading of the Proposition 65

10  cancer warning is that exposure to glyphosate in fact causes

11  cancer.  A reasonable consumer may understand that if the warning

12  says "known to cause cancer," there could be a small minority of

13  studies or experts disputing whether the substance in fact causes

14  cancer.  However, a reasonable consumer would not understand that

15  a substance is "known to cause cancer" where only one health

16  organization had found that the substance in question causes

17  cancer and virtually all other government agencies and health

18  organizations that have reviewed studies on the chemical had

19  found there was no evidence that it caused cancer.  Under these

20  facts, the message that glyphosate is known to cause cancer is

21  misleading at best.

22          The court also rejects defendants' arguments that the

23  warning requirement is permissible under Zauderer because (1)

24  Proposition 65 does not require plaintiffs to use the language

25  "known to the state of California to cause cancer," and (2)

26  plaintiffs may not have to provide warnings if their products

27  fall below the safe harbor level that will likely be adopted.

28  Under the applicable regulations, in order for a warning to be

1   per se clear and reasonable, the warning must state that the

2   chemical is *known* to cause cancer.  California regulations also

3   discourage, if not outright prohibit, language that calls into

4   doubt California's knowledge that a chemical causes cancer.[11]

5   Notably, defendants provide no example of a more detailed warning

6   explaining the debate regarding glyphosate's carcinogenicity that

7   would pass muster under Proposition 65 and the applicable

8   regulations; and at oral argument, defense counsel repeatedly

9   rejected various alternative warnings proposed by the court which

10  would provide more context or use more accurate language.

11  Defendants have the burden of showing that the speech they wish

12  to compel is factually accurate and uncontroversial.  <u>See</u>

13  <u>Zauderer</u>, 471 U.S. at 658-59; <u>Ibanez</u>, 512 U.S. at 146.[12]

14          On the evidence before the court, the required warning

15  for glyphosate does not appear to be factually accurate and

16  uncontroversial because it conveys the message that glyphosate's

17  carcinogenicity is an undisputed fact, when almost all other

18  regulators have concluded that there is insufficient evidence

19  that glyphosate causes cancer.  For example, the EPA has reviewed

20  studies regarding the carcinogenicity of glyphosate multiple

21          [11]   <u>See</u> Cal. Health & Safety Code § 25249.6; Cal. Code

22  Regs. tit. 27 §§ 25601 and 25603.2; Cal. Code Regs. tit. 11 §
    3202(b).

23

24          [12]   Indeed, it is not clear that there is any warning which
    would provide the necessary context regarding glyphosate's
25  possible cancer risk, given that California's regulations appear
    to make it impossible for plaintiffs to explain in the warning
26  that the IARC's determination is contrary to that reached by
    other organizations, or that the IARC did not find that
27  glyphosate causes cancer in humans, but that it found that
    glyphosate was probably carcinogenic based on sufficient evidence
28  in experimental animals and limited evidence in humans.

times and has determined each time that there was no or

insufficient evidence that glyphosate causes cancer, most

recently in September 2016.[13]  Several international agencies have

likewise concluded that there is insufficient evidence that

glyphosate causes cancer, including the European Commission's

Health and Consumer Protection Directorate-General, multiple

divisions of the World Health Organization besides the IARC, and

Germany's lead consumer health and safety regulator.  (Prins

Decl., Exs. I, J, K, L (Docket Nos. 29-12, 29-13, 29-14, 29-

15).)[14]

      It is inherently misleading for a warning to state that

a chemical is known to the state of California to cause cancer

based on the finding of one organization (which as noted above,

only found that substance is probably carcinogenic), when

apparently all other regulatory and governmental bodies have

found the opposite, including the EPA, which is one of the bodies

---

[13]   (See Prins Decl., Ex. E (Docket No. 29-8) (EPA renewal
of glyphosate registration under the Federal Insecticide,
Fungicide, and Rodenticide Act); Prins Decl., Ex. F (Docket No.
29-9) (2014 EPA review of more than 55 epidemiological studies
concluding that "that this body of research does not provide
evidence to show that glyphosate causes cancer, and it does not
warrant any change in EPA's cancer classification for
glyphosate."); (Prins Decl., Ex. P (Docket No. 29-20) (EPA's
Office of Pesticide Programs 228-page paper considered "23
epidemiological studies, 15 animal carcinogenicity studies, and
nearly 90 genotoxicity studies for the active ingredient
glyphosate" and concluded that "[t]he available data at this time
do no[t] support a carcinogenic process for glyphosate").)

[14]   Notably, in 1997 and 2007, California's own OEHHA
examined studies of glyphosate to set public health goals for
drinking water, both times determining that glyphosate did not
pose a cancer risk.  (Prins. Decl., Exs. G, H (Docket Nos. 29-10,
29-11).)

1    California law expressly relies on in determining whether a

2    chemical causes cancer.  The court expresses no opinion as to

3    whether a statement that a chemical is known to cause cancer is

4    factually accurate and uncontroversial where there is stronger

5    evidence in support of the chemical's carcinogenicity.  However,

6    here, given the heavy weight of evidence in the record that

7    glyphosate is not in fact known to cause cancer, the required

8    warning is factually inaccurate and controversial.  See CTIA, 854

9    F.3d at 1119; Am. Meat Inst., 760 F.3d at 27.

10       The court's First Amendment inquiry here boils down to

11   what the state of California can compel businesses to say.

12   Whether Proposition 65's statutory and regulatory scheme is good

13   policy is not at issue.  However, where California seeks to

14   compel businesses to provide cancer warnings, the warnings must

15   be factually accurate and not misleading.  As applied to

16   glyphosate, the required warnings are false and misleading.

17   Plaintiffs have thus established a likelihood of success on the

18   merits of their claim that the warning requirement violates their

19   First Amendment rights.[15]

20       C.    Irreparable Harm

21       The Ninth Circuit has explained that "[i]rreparable

22   harm is relatively easy to establish in a First Amendment Case."

23   CTIA, 854 F.3d at 1123.  "[A] party seeking preliminary

24   injunctive relief in a First Amendment context can establish

25

26       [15]    Because the court finds that warning requirement
     violates plaintiffs' First Amendment rights on this ground, the
27   court does not reach the issue of whether the warning is
     reasonably related to a substantial government interest or
28   imposes an undue burden.

1    irreparable injury . . . by demonstrating the existence of a

2    colorable First Amendment claim." Id. (quoting Sammartano v.

3    First Judicial Dist. Court, 303 F.3d 959, 973 (9th Cir. 2002)).

4    Moreover, "[t]he loss of First Amendment freedoms, for even

5    minimal periods of time, unquestionably constitutes irreparable

6    injury." Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 828 (9th

7    Cir. 2013) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).

8    Here, because plaintiffs have established that they are likely to

9    succeed on their First Amendment claim as to Proposition 65's

10   warning requirement, they have also established that they will

11   likely suffer irreparable harm if the warning requirement is not

12   enjoined as to glyphosate.[16]

13        D.   Balance of Equities and Public Interest

14        When the government is a party, the balance of equities

15   and public interest factors merge. Drakes Bay Oyster Co. v.

16   Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v.

17   Holder, 556 U.S. 418, 435 (2009)). To determine the balance of

18   equities, the court must "balance the interests of all parties

19   and weigh the damage to each." Stormans, Inc. v. Selecky, 586

20   F.3d 1109, 1138 (9th Cir. 2009) (citation omitted).

21        While the court recognizes that the state has a

22   significant interest in protecting its citizens and informing

23   _____

24        [16]  Plaintiffs also claim that the warning requirement will
     cause several other harms including damage to the reputation and
25   goodwill of plaintiffs and their products, loss of customers, the
     cost and burden of testing, and disruption to supply chains and
26   existing business practices. Because the court finds that
     plaintiffs have shown a likelihood of irreparable harm based on
27   the likely infringement of their First Amendment rights, the
     court expresses no opinion as to the likelihood of these other
28   injuries or whether any such alleged harms are irreparable.

them of possible health risks, the Ninth Circuit has consistently "recognized the significant public interest in upholding First Amendment principles." Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014) (quoting Sammartano, 303 F.3d at 974).  Further, California "has no legitimate interest in enforcing an unconstitutional" law.  See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1272 (11th Cir. 2006).  Providing misleading or false labels to consumers also undermines California's interest in accurately informing its citizens of health risks at the expense of plaintiffs' First Amendment rights.  Accordingly, the balance of equities and public interest weigh in favor of enjoining Proposition 65's warning requirement for glyphosate.

As plaintiffs have shown that they are likely to succeed on the merits of their First Amendment claim, are likely to suffer irreparable harm absent an injunction, and that the balance of equities and public interest favor an injunction, the court will grant plaintiffs' request to enjoin Proposition 65's warning requirement for glyphosate.

IT IS THEREFORE ORDERED that plaintiffs' Motion for a Preliminary Injunction (Docket No. 29) be, and the same hereby is, GRANTED IN PART.  Plaintiffs' request for a preliminary injunction enjoining defendants from listing glyphosate as a chemical known to the State of California to cause cancer under California Health & Safety Code § 25249.8 is DENIED.  Plaintiffs' request for a preliminary injunction enjoining the warning requirement of California Health & Safety Code § 25249.6 as to glyphosate is GRANTED.  Pending final resolution of this action,

defendants, their agents and employees, all persons or entities in privity with them, and anyone acting in concert with them are hereby ENJOINED from enforcing as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs, California Health & Safety Code § 25249.6's requirement that any person in the course of doing business provide a clear and reasonable warning before exposing any individual to glyphosate.

Dated:   February 26, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE