**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
E-Mail:        jhollingsworth@hollingsworthllp.com
                  elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *Anthony and Donna Berlin, et al. v. Monsanto Co* Case No. 3:18-cv-00815-VC | |

## <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Complaint, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Although many paragraphs in the Complaint refer only to "Plaintiff," Monsanto nevertheless responds to the allegations in those paragraphs as if brought by any of the plaintiffs.  Silence as to any allegations shall constitute a denial.

1.      Monsanto admits that plaintiffs purport to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiffs.  Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in paragraph 2.

3.      Monsanto denies the allegations in paragraph 3.

4.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations.

6.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies those allegations.

7.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies those allegations.

8.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 8 and therefore denies those allegations.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies those allegations.

13.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies those allegations.

14.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies those allegations.

15.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies those allegations.

16.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC

1       17.     Monsanto lacks information or knowledge sufficient to form a belief as to the

2   truth of the allegations in paragraph 17 and therefore denies those allegations.

3       18.     Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 18 and therefore denies those allegations.

5       19.     Monsanto lacks information or knowledge sufficient to form a belief as to the

6   truth of the allegations in paragraph 19 and therefore denies those allegations.

7       20.     Monsanto lacks information or knowledge sufficient to form a belief as to the

8   truth of the allegations in paragraph 20 and therefore denies those allegations.

9       21.     Monsanto lacks information or knowledge sufficient to form a belief as to the

10   truth of the allegations in paragraph 21 and therefore denies those allegations.

11       22.     Monsanto lacks information or knowledge sufficient to form a belief as to the

12   truth of the allegations in paragraph 22 and therefore denies those allegations.

13       23.     Monsanto lacks information or knowledge sufficient to form a belief as to the

14   truth of the allegations in paragraph 23 and therefore denies those allegations.

15       24.     Monsanto lacks information or knowledge sufficient to form a belief as to the

16   truth of the allegations in paragraph 24 and therefore denies those allegations.

17       25.     Monsanto lacks information or knowledge sufficient to form a belief as to the

18   truth of the allegations in paragraph 25 and therefore denies those allegations.

19       26.     Monsanto lacks information or knowledge sufficient to form a belief as to the

20   truth of the allegations in paragraph 26 and therefore denies those allegations.

21       27.     Monsanto lacks information or knowledge sufficient to form a belief as to the

22   truth of the allegations in paragraph 27 and therefore denies those allegations.

23       28.     Monsanto lacks information or knowledge sufficient to form a belief as to the

23   truth of the allegations in paragraph 28 and therefore denies those allegations.

24       29.     Monsanto lacks information or knowledge sufficient to form a belief as to the

25   truth of the allegations in paragraph 29 and therefore denies those allegations.

26

27

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC

30.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore denies those allegations.

31.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore denies those allegations.

32.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 32 and therefore denies those allegations.

33.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 33 and therefore denies those allegations.

34.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 34 and therefore denies those allegations.

35.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 35 and therefore denies those allegations.

36.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 36 and therefore denies those allegations.

37.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 37 and therefore denies those allegations.

38.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 and therefore denies those allegations.

39.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 39 and therefore denies those allegations.

40.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40 and therefore denies those allegations.

41.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 41 and therefore denies those allegations.

42.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore denies those allegations.

43.     In response to the allegations in the first sentence of paragraph 43, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.  The remaining allegations in the first sentence of paragraph 43 are conclusions of law for which no response is required.  The allegations in the last sentence of paragraph 43 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

44.     In response to the allegations in paragraph 44, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.

45.     In response to the allegations in paragraph 45, Monsanto denies that it engaged in "fraudulent misrepresentations and fraudulent concealment."  The remaining allegations in paragraph 45 set forth conclusions of law for which no response is required.

46.     Monsanto admits the allegations in the first and second sentences of paragraph 46. Monsanto also admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 46 and therefore denies those allegations.

47.     In response to the allegations in paragraph 47, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 47.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto

lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 47 and therefore denies those allegations.

48.     In response to the allegations in paragraph 48, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 48.

49.     Monsanto admits the allegations in the first sentence of paragraph 49.  Monsanto denies the allegations in the second sentence of paragraph 49 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

50.     Monsanto admits the allegations in the first sentence of paragraph 50.  Monsanto denies the allegations in the second sentence of paragraph 50.

51.     In response to the allegations in paragraph 51, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 51.

52.     Monsanto denies the allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 53 alleges that Monsanto has labeled

glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

54.     The allegations in paragraph 54 set forth conclusions of law for which no response is required.  To the extent that a response is required, Monsanto admits the allegations in paragraph 54 based upon the allegations in plaintiffs' Complaint.

55.     Monsanto admits the allegations in paragraph 55.

56.     The allegations in paragraph 56 set forth conclusions of law for which no response is required.

57.     The allegations in the first sentence of paragraph 57 set forth conclusions of law for which no response is required.  Monsanto admits the allegations in the second sentence of paragraph 57.  In response to the allegations in the final sentence of paragraph 57, Monsanto denies certain events giving rise to plaintiffs' claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiffs' claim occurred and therefore denies those allegations.

58.     In response to the allegations in paragraph 58, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 58 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 and therefore denies those allegations.

59.     Monsanto admits the first sentence of paragraph 59.  Monsanto denies the allegations in the second sentence of paragraph 59 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the third sentence of paragraph 59 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

60.     In response to the allegations in paragraph 60, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 60.

61.     Monsanto admits the allegations in the first two sentences of paragraph 61 and admits that at all relevant times it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto denies the remaining allegations in paragraph 61.

62.     Monsanto admits the allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 63 set forth conclusions of law for which no response is required.

64.     The allegations in paragraph 64 set forth conclusions of law for which no response is required.

65.     In response to the allegations in paragraph 65, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States, including in Missouri and Illinois.  Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 66 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 66 set forth conclusions of law for which no response is required.

67.     Monsanto denies the allegations in paragraph 67 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 67 regarding such pesticide products generally.  The remaining allegations in paragraph 67 set forth conclusions of law for which no response is required.

68.     In response to the allegations in paragraph 68, Monsanto admits that EPA has undertaken a review of glyphosate for purposes of regulatory review and that EPA has not released its final findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December  2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.epa.gov/sites/production/files/2017-12/documents/revised_glyphosate_issue_paper_evaluation_of_carcinogenic_potential.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC

1    belief as to the truth of the remaining allegations in paragraph 68 and therefore denies those

2    allegations.

3         69.      In response to the allegations in paragraph 69, Monsanto admits that an EPA

4    review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

5    changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

6    evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

7    that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with

8    respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded

9    that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the

10   two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings

11   of safety include:

12   - "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

15   - "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

16   - "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

18   - "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

20   - "EPA has concluded that glyphosate does not pose a cancer risk to humans."  Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

22   - "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20 ("EPA 2015 Desk Statement").

27

Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 70 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

71.     In response to the allegations in paragraph 71, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

72.     Monsanto denies the allegations in paragraph 72 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 72 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

73.     In response to the allegations in paragraph 73, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

74.     In response to the allegations in paragraph 74, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 74 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

75.     Monsanto denies the allegations in paragraph 75.

76.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 76 regarding alleged reliance by the public and EPA and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 76.

77.     Monsanto denies the allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that in March 2015, the Joint Glyphosate Task Force issued a press release, which speaks for itself.  Monsanto denies the remaining allegations in paragraph 78.

79.     Monsanto admits the allegations in the first sentence of paragraph 79.  Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution; Monsanto is involved in litigation (at the trial court level and on appeal) to block OEHHA's action.  The remaining allegations in paragraph 80 set forth conclusions of law for which no response is required.

81.    In response to the allegations in paragraph 81, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 81 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

82.    In response to the allegations in paragraph 82, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 82 and accordingly denies those allegations.  The remaining allegations in paragraph 82 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

83.    In response to the allegations in paragraph 83, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 83 and accordingly denies the same.  Monsanto denies the allegations in the

last two sentences of paragraph 83.  The remaining allegations in paragraph 83 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

84.     In response to the allegations in paragraph 84, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 84 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

85.     In response to the allegations in paragraph 85, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 85 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

86.     Monsanto denies the allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 88, which are not limited as of any specified date, and accordingly denies the same.

89.     In response to the allegations in paragraph 89, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.  Monsanto denies the remaining allegations in paragraph 89.

90.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 90 and therefore denies those allegations.

91.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 and therefore denies those allegations.

92.     Monsanto denies the allegations in paragraph 92 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

93.     In response to the allegations in paragraph 93, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 93.

94.     In response to the allegations in paragraph 94, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach

conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

95.     The allegations in paragraph 95 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

96.     In response to the allegations in paragraph 96, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 96 are denied.

97.     In response to the allegations in paragraph 97, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

98.     Monsanto denies the allegations in paragraph 98.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

99.     In response to the allegations in paragraph 99, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

100.     In response to the allegations in paragraph 100, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 100.

101.     In response to the allegations in paragraph 101, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 101.

102.     In response to the allegations in paragraph 102, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 102.

103.     In response to the allegations in paragraph 103, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 103.

104.     In response to the allegations in paragraph 104, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 104.

1

105.    In response to the allegations in paragraph 105, Monsanto admits that EPA has a

2    technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

3    Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

4    should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

5    finding that glyphosate does not pose any cancer risk to humans.

6

106.    In response to the allegations in paragraph 106, Monsanto admits that the

7    Complaint accurately quotes from the identified document, which should be read in context of

8    EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not

9    pose any cancer risk to humans.

10

107.    In response to the allegations in paragraph 107, Monsanto admits that the

11    Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

12    Coalition provides any reliable basis for any conclusions regarding potential health risks from

13    glyphosate.  Monsanto notes that a federal district court has characterized this same publication

14    as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928

15    F. Supp. 2d 10, 24 (D.D.C. 2013).

16

108.    In response to the allegations in paragraph 108, Monsanto admits that the IARC

17    working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing

18    discussions in certain countries regarding the sale of glyphosate-based herbicides, including the

19    Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and

20    denies that there is any scientific basis for the concerns raised by the improper IARC

21    classification.  Monsanto denies the remaining allegations in paragraph 108.

22

109.    In response to the allegations in paragraph 109, Monsanto admits that the IARC

23    working group classification led an individual government attorney in Brazil to write a letter to

23    the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the

24    remaining allegations in paragraph 109.

25

110.    In response to the allegations in paragraph 110, Monsanto admits that following

26    the IARC working group classification, in France, all non-professional plant protection products,

27

- 18 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC

including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales).  Monsanto further admits that the French government has announced that beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, is prohibited with certain exceptions.  Monsanto denies the remaining allegations in paragraph 110.

111.    In response to the allegations in paragraph 111, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 111.

112.    In response to the allegations in paragraph 112, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 112.

113.    In response to the allegations in paragraph 113, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 113.

114.    Monsanto incorporates by reference its responses to paragraphs 1 through 113 in response to paragraph 114 of plaintiffs' Complaint.

115.     In response to the allegations in paragraph 115, Monsanto admits that plaintiffs purport to bring a claim for strict liability design defect, but denies any liability as to that claim.

116.     In response to the allegations in paragraph 116, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs and/or plaintiffs' decedents used Roundup®-branded products and therefore denies that allegation. Monsanto denies the remaining allegations in paragraph 116.

117.     Monsanto denies the allegations in paragraph 117.

118.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 118 concerning the condition of any Roundup®-branded product allegedly used by plaintiffs and/or plaintiffs' decedents or about plaintiffs' and/or plaintiffs' decedents' alleged uses of such product and therefore denies those allegations.  The remaining allegations in paragraph 118 set forth conclusions of law for which no response is required.

119.     Monsanto denies the allegations in paragraph 119.

120.     Monsanto denies the allegations in paragraph 120.

121.     Monsanto denies the allegations in paragraph 121.

122.     Monsanto denies the allegations in paragraph 122 and each of its subparts.

123.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 concerning plaintiffs' and/or plaintiffs' decedents' claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 123, including that Roundup® branded products have "dangerous characteristics."

124.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 124 concerning plaintiffs' and/or plaintiffs' decedents' claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 124, including that Roundup®-branded products have "dangerous characteristics."

1    125.    Monsanto denies the allegations in paragraph 125.

2    126.    Monsanto denies the allegations in paragraph 126.

3    127.    Monsanto denies the allegations in paragraph 127.

4    128.    Monsanto denies the allegations in paragraph 128.

5    129.    Monsanto denies the allegations in paragraph 129.

6    130.    Monsanto denies the allegations in paragraph 130.

7    131.    Monsanto denies the allegations in paragraph 131.

8    132.    Monsanto denies the allegations in paragraph 132.

9    In response to the "WHEREFORE" paragraph following paragraph 132, Monsanto

10   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

11   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

12   fees as allowed by law and such further and additional relief as this Court may deem just and

13   proper.

14   133.    Monsanto incorporates by reference its responses to paragraphs 1 through 132 in

15   response to paragraph 133 of plaintiffs' Complaint.

16   134.    In response to the allegations in paragraph 134, Monsanto admits that plaintiffs

17   purport to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

18   135.    Monsanto denies the allegations in paragraph 135.

19   136.    In response to the allegations in paragraph 136, Monsanto lacks information or

20   knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs, plaintiffs'

21   decedents, or other entities identified purchased or used Roundup®-branded products and

22   therefore denies that allegation.  The allegations in paragraph 136 also set forth conclusions of

23   law for which no response is required.  Monsanto denies the remaining allegations in paragraph

23   136.

24   137.    The allegations in paragraph 137 set forth conclusions of law for which no

25   response is required.

26

27

138.     Monsanto denies the allegations in paragraph 138.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

139.     Monsanto denies the allegations in paragraph 139.

140.     Monsanto denies the allegations in paragraph 140.

141.     Monsanto denies the allegations in paragraph 141.

142.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 142 and therefore denies those allegations.

143.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 143 concerning plaintiffs' and/or plaintiffs' decedents' alleged use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 143, including that Roundup®-branded products have "dangerous characteristics."

144.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 144 concerning plaintiffs' and/or plaintiffs' decedents' alleged use and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 144, including that Roundup®-branded products have "dangerous characteristics."

145.     Monsanto denies the allegations in paragraph 145.

146.     Monsanto denies the allegations in paragraph 146.

147.     Monsanto denies the allegations in paragraph 147.

148.     Monsanto denies the allegations in paragraph 148.

149.     Monsanto denies the allegations in paragraph 149.

150.     Monsanto denies the allegations in paragraph 150.

151.     Monsanto denies the allegations in paragraph 151.

152.     Monsanto denies the allegations in paragraph 152.

153.     Monsanto denies the allegations in paragraph 153.

1    In response to the "WHEREFORE" paragraph following paragraph 153, Monsanto

2    demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

3    dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

4    fees as allowed by law and such further and additional relief as this Court may deem just and

5    proper.

6    154.    Monsanto incorporates by reference its responses to paragraphs 1 through 153 in

7    response to paragraph 154 of plaintiffs' Complaint.

8    155.    Monsanto lacks information or knowledge sufficient to form a belief as to the

9    truth of the allegations in paragraph 155 regarding the specific products allegedly used by

10   plaintiffs and/or plaintiffs' decedents or any advertising or marketing allegedly seen or

11   considered by plaintiffs and/or plaintiffs' decedents and therefore denies the allegations in

12   paragraph 155.

13   156.    The allegations in paragraph 156 set forth conclusions of law for which no

14   response is required.

15   157.    The allegations in paragraph 157 set forth conclusions of law for which no

16   response is required.

17   158.    Monsanto denies the allegations in paragraph 158.

18   159.    Monsanto denies the allegations in paragraph 159.

19   160.    Monsanto denies the allegations in paragraph 160.  All labeling of Roundup$^{®}$-

20   branded products has been and remains EPA-approved and in compliance with all federal

21   requirements under FIFRA.

22   161.    Monsanto denies the allegations in paragraph 161.

23   162.    Monsanto denies the allegations in paragraph 162.

23   163.    Monsanto denies the allegations in paragraph 163, including each of its subparts.

24   164.    Monsanto denies the allegations in paragraph 164.

25   165.    Monsanto lacks information or knowledge sufficient to form a belief as to the

26   truth of the allegations in paragraph 165 regarding plaintiffs' and/or plaintiffs' decedents'

27

1    knowledge and therefore Monsanto denies those allegations.  Monsanto denies the remaining

2    allegations in paragraph 165, including that intended use and/or exposure to Roundup®-branded

3    products causes any injuries.

4         166.    Monsanto denies the allegations in paragraph 166.

5         167.    Monsanto denies the allegations in paragraph 167.

6         168.    Monsanto denies the allegations in paragraph 168.  All labeling of Roundup®-

7    branded products has been and remains EPA-approved and in compliance with all federal

8    requirements under FIFRA.

9         In response to the "WHEREFORE" paragraph following paragraph 168, Monsanto

10   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

11   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

12   fees as allowed by law and such further and additional relief as this Court may deem just and

13   proper.

14        169.    Monsanto incorporates by reference its responses to paragraphs 1 through 168 in

15   response to paragraph 169 of plaintiffs' Complaint.

16        170.    Monsanto denies the allegations in paragraph 170.

17        171.    Monsanto denies the allegations in paragraph 171.

18        172.    Monsanto denies the allegations in paragraph 172.

19        173.    Monsanto denies the allegations in paragraph 173.

20        174.    Monsanto denies the allegations in paragraph 174.

21        175.    Monsanto denies the allegations in paragraph 175.

22        176.    Monsanto denies the allegations in paragraph 176.

23        177.    Monsanto denies the allegations in paragraph 177.

23        178.    Monsanto denies the allegations in paragraph 178.

24        179.    Monsanto denies the allegations in paragraph 179.

25        In response to the "WHEREFORE" paragraph following paragraph 179, Monsanto

26   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

27

1   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

2   fees as allowed by law and such further and additional relief as this Court may deem just and

3   proper.

4          180.    Monsanto incorporates by reference its responses to paragraphs 1 through 179 in

5   response to paragraph 180 of plaintiffs' Complaint.

6          181.    Monsanto denies the allegations in paragraph 181.

7          182.    Monsanto denies the allegations in paragraph 182.

8          183.    Monsanto denies the allegations in paragraph 183.

9          184.    Monsanto denies the allegations in paragraph 184.

10         185.    Monsanto denies the allegations in paragraph 185.

11         186.    Monsanto denies the allegations in paragraph 186.

12         187.    Monsanto denies the allegations in paragraph 187.

13         188.    Monsanto lacks information or knowledge sufficient to form a belief as to the

14   truth of the allegations in paragraph 188 regarding plaintiffs' and/or plaintiffs' decedents'

15   actions, and therefore Monsanto denies those allegations.  Monsanto denies the remaining

16   allegations in paragraph 188.

17         189.    Monsanto denies the allegations in paragraph 189.

18         190.    Monsanto denies the allegations in paragraph 190.  All labeling of Roundup$^{®}$-

19   branded products has been and remains EPA-approved and in compliance with all federal

20   requirements under FIFRA.

21         191.    Monsanto denies the allegations in paragraph 191.

22         In response to the "WHEREFORE " paragraph following paragraph 191, Monsanto

23   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

23   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

24   fees as allowed by law and such further and additional relief as this Court may deem just and

25   proper.

26

27

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC

192.    In response to the allegations in paragraph 192, Monsanto denies that it violated the laws of plaintiffs' and/or plaintiffs' decedents' home states or federal law and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 192 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

193.    The allegations in paragraph 193 set forth conclusions of law for which no response is required.

194.    Monsanto denies the allegations in the first sentence of paragraph 194.  The second sentence of paragraph 194 sets forth a conclusion of law for which no response is required.

In response to the "WHEREFORE" paragraph following paragraph 194, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.    Venue in the Eastern District of Missouri may be inconvenient for plaintiffs' claims.

3.    Plaintiffs' claims are improperly joined and should be severed.

4.    Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

5.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' and/or plaintiffs' decedents' alleged injuries.

6.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

7.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

8.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

10.      Plaintiffs have failed to allege fraud with sufficient particularity.

11.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

12.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

13.      Plaintiffs' claims are barred, in whole or in part, because plaintiffs' and/or plaintiffs' decedents' injuries, if any, were the result of conduct of plaintiffs, plaintiffs' decedents, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening

and superseding causes of the alleged injuries, including but not limited to plaintiffs' and/or

plaintiffs' decedents' pre-existing medical conditions.

14.    The doctrines contained in Restatement (Second) of Torts § 402A, comments j

and k, bar plaintiffs' claims against Monsanto in whole or in part.

15.    Applicable statutes of limitations, repose, and/or prescriptive periods bar

plaintiffs' claims in whole or in part.

16.    Plaintiffs' and/or plaintiffs' decedents' misuse or abnormal use of the product or

failure to follow instructions bar plaintiffs' claims in whole or in part.

17.    If plaintiffs and/or plaintiffs' decedents suffered injury or damages as alleged,

which is denied, such injury or damage resulted from: (a) acts or omissions of persons or entities

for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to

an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from

diseases and/or causes that are not related or connected with any product sold, distributed, or

manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes

constitute an independent, intervening and sole proximate cause of plaintiffs' and/or plaintiffs'

decedents' alleged injury or damages.

18.    Monsanto had no legal relationship or privity with plaintiffs and/or plaintiffs'

decedents and owed no duty to them by which liability could be attributed to it.

19.    Plaintiffs' claims are preempted in whole or part by the Freedom of Speech

Clause of the First Amendment of the U.S. Constitution.

20.    Plaintiffs' claims for punitive, exemplary, aggravated, and/or treble damages are

barred because such an award would violate Monsanto's due process, equal protection and other

rights under the United States Constitution, the Alabama Constitution, the Arizona Constitution,

the California Constitution, the Florida Constitution, the Illinois Constitution, the Iowa

Constitution, the Kansas Constitution, the Kentucky Constitution, the Louisiana Constitution, the

Michigan Constitution, the Minnesota Constitution, the Mississippi Constitution, the Missouri

Constitution, the New York Constitution, the Ohio Constitution, the Oklahoma Constitution, the

Oregon Constitution, the Pennsylvania Constitution, the South Carolina Constitution, the Tennessee Constitution, the Texas Constitution, the Utah Constitution, the Virginia Constitution, the Washington Constitution, the Wisconsin Constitution, and/or other applicable state constitutions.

21.     Plaintiffs' claims for punitive, exemplary, aggravated, and/or treble damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Alabama law, Arizona law, California law, Florida law, Illinois law, Iowa law, Kansas law, Kentucky law, Louisiana law, Michigan law, Minnesota law, Mississippi law, Missouri law, New York law, Ohio law, Oklahoma law, Oregon law, Pennsylvania law, South Carolina law, Tennessee law, Texas law, Utah law, Virginia law, Washington law, Wisconsin law, and/or other applicable state laws.

22.     Plaintiffs' claims for punitive, exemplary, aggravated and/or treble damages are barred and/or limited by operation of state and/or federal law, including Michigan law; ARIZ. REV. STAT. § 12-689; Fla. Stat. § 768.73; La. R.S. 9:2800.52, *et seq.*; Miss. Code Ann. § 11-1-65; Missouri Revised Statute § 510.265.1; Ohio Rev. Code Ann. § 2315.21; S.C. Code Ann. § 15-32-530; Tenn. Code. Ann. § 29-39-104; and Tex. Civ. Prac. & Rem. Code Ann. §§ 41.004(a), 41.008(b); Va. Code Ann. § 801-38.1.  Monsanto would further show that under the facts of this case, however, an award of punitive damages consistent with the maximum awards permitted under Fla. Stat. § 768.73 would be a violation of Monsanto's state and federal constitutional rights.

23.     Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiffs, plaintiffs' decedents, and/or the safety of the public.  Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability.  In fact, Monsanto exercised reasonable care at all times alleged in the Petition, and plaintiffs have failed to clearly establish any entitlement to exemplary and/or aggravated damages based on their allegations.

24.     Plaintiffs' claims are barred in whole or in part by plaintiffs' and/or plaintiffs' decedents' own contributory/comparative negligence.  Plaintiffs' recovery should be reduced in proportion to plaintiffs' or plaintiffs' decedents' fault and any recovery by plaintiffs should be barred if plaintiffs' or plaintiffs' decedents' fault is equal to or greater than the total of all persons against whom a claim is made.  Kan Stat. Ann. § 60-258a.  Alternatively, plaintiffs' right to recover, no fault being admitted, is diminished in an amount based upon plaintiffs' and or plaintiffs' decedents' individual relative degree of fault. Or. Rev. Stat. § 31.600.

25.     If plaintiffs or plaintiffs' decedents have been injured or damaged, no injury or damages being admitted, plaintiffs' claims for damages are barred and/or limited by operation of state and/or federal law, including Kan. Stat. Ann. § 16-19a02(b)(1)-(2).

26.     Plaintiffs' claims are barred in whole or in part by plaintiffs' and/or plaintiffs' decedents' own failure to mitigate damages.

27.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

28.     To the extent that plaintiffs and/or plaintiffs' decedents recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Fla. Stat. § 768.76; Missouri Revised Statute § 490.715; and NY CPLR § 4545.

29.     If plaintiffs and/or plaintiffs' decedents have been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Monsanto product.

30.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

31.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize or limit such claims.

32.     Plaintiffs' strict liability claims are barred in whole or in part, because Michigan and Virginia do not recognize a cause of action for strict liability in tort, and by the Alabama Extended Manufacturer's Liability Doctrine.

33.     Plaintiffs' claims are barred, in whole or in part, by application of Fla. Stat. § 768.1256; Mich. Com. Laws § 600.2946 (4); KAN. STAT. ANN. § 60-3304(a); and TEX. CIV. PRAC. & REM. CODE ANN. § 82.008; Wis. Stat. 895.047(3)(b).

34.     Plaintiffs' common law claims are barred, in whole or in part, by application of the Kan. Stat. Ann. § 60-3302(c), *et seq.*; the Kentucky Product Liability Act, Ky. Rev. Stat. § 411.300, *et seq.*; the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann § 9:2800.51, *et seq*; the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63 (1993); the Ohio Products Liability Act ("OPLA"), OHIO REV. CODE ANN. §§ 2307.71-2307.80; the Tenn. Code Ann. § 29-28-102(6), *et seq.*; and the Wash. Rev. Code §§ 7.72.010-.060.

35.     In accordance with FLA. STAT. § 768.1257, plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

36.     Monsanto hereby preserves any and all defenses under *Tincher v. Omega Flex, Inc.*, 104 A. 3d 328 (Pa. 2014).

37.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED:  February 28, 2018

Respectfully submitted,

/s/ Joe G. Hollingsworth

Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
MONSANTO COMPANY

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:18-cv-00815-VC