

RECEIVED
AUG 28 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES COURT of APPEALS
for the NINTH CIRCUIT
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

RALPH A. APPLEGATE
    PETITIONER

                         CASE :16-MDL-02741-VC
versus                CASE : 3:18-CV-03363-VC
                        CASE : 18-72281

MONSANTO COMPANY
    RESPONDENT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of CALIFORNIA
    RESPONDENT

## MORE CHRONOLOGICAL EDUCATION EVIDENCE

1. " High standards " seemingly have started to fail, because since 1999 there was scientific consensus that single active substance approach (In studies) to risk assessment was flawed . Studies before 1999 should have been discounted .

2. By 2008 , more evidence on this specific surfactant was mounting . A paper by J.M.Brausch , et. al. in 2007[ix] " found all Polyethoxylated Tallow Amine formulations to be extremely toxic ."

3. In 2010 that German Federal Institute for Risk Assessment (BfR) carried out its own toxicological evaluation of glyphosate -Polyethoxylated formulation , after a German forestry worker developed chest pain with rapidly

increasing severe respiratory distress and fever up to approximately 38 degrees Centigrade .

4. Gilles Seralini , and many more scientists , before ,in 2012, or after , concluded that Polyethoxylated Tallow Amine then , but , later ,it had been stated that Polyethoxylated Tallow Amine was 1200 to 2000 times more toxic than Glyphosate , alone . Even in Respondent judge opinion which stated that " Viewed in its(Glyphosate)totality ,seems too equivocal to support any conclusion " , that Glyphosate causes NHL , Appellant does not know actual date , where , and when , this opinion was made by Respondent judge , but appellant believes that Respondent judge was absolutely correct , even though Respondent judge gave no " basis " for this opinion . Opinion appeared in what was claimed to be internet " RT News " , August 15, 2018 .

5 . Because of more accurate evidence it is inferred that appellee is correct in claiming that it is not Glyphosate which "caused " NHL,unless Polyethoxylated Tallow Amine in Roundup contributed to Glyphosate toxicity .

6 .On September 12, 2014 , German government agents "outlawed " Polyethoxylated Tallow Amine . Germany , at that time ,alone, had forbidden use of this most dangerous surfactant , but was keeping its evidence secret . It appears as though those German government agents ,then , stated " A proper

p.2

health-oriented regulatory system must look at synergistic effects of chemical mixtures, and on that basis what we have at present falls far short." Agents were claiming not enough "proof" for their outlawing of Polyethoxylated Tallow Amine. But whilst active substances(Glyphosate) are tested and regulated on a European level, pesticide formulations, such as Roundup are not. For Glyphosate to work efficiently it needed additional chemicals called surfactants.

7. On April 8, 2016. Appellee announced to media that " Monsanto transitions away from 'tallow amine' in products." Somewhere appellee claimed it was doing this because of "commercial" reasons.

8. Almost 2 years later than September 12. 2014, on July 11, 2016, European Commission also "outlawed" Polyethoxylated Tallow Amine. European Commission member States, on that same day, backed a proposal by European Commission to put limits on use of weed-killer Glyphosate in 28-nation bloc, including a ban on one co-formulant called POE-tallowamine, euractiv.com(Another news source) has learned.

9. Why, in 2018, based on Respondent judge opinion, would Respondent judge in a July 10, 2018 Daubert Summary Judgment Order permit three(3) " Shaky "so-called expert witnesses to testify ? They were not expert.

10. Respondent judge reported earlier than July 10, 2018,

that MDL-02741-VC plaintiff lawyers expert witnesses were "shaky" in connection with glyphosate testimony , and even so, allowed those witnesses to testify .

11. As of , but likely much before July 26, 2018 , appellee in its own internet statement stated " It is a known fact that Ministry of Agriculture and Rural Development (United Kingdom )has withdrawn all glyphosate -based plant protection products containing Polyethoxylated Tallow Amine ." Appellee admitting it had removed Polyethoxylated Tallow Amine by July 26, 2018 , but not stating exactly when ? Following Polyethoxylated Tallow Amine withdrawal , "it" was substituted in European Union by three(3)main booster groups :

   A. Alkyl phosphate ester(APE),
   B. Alkyl polyglycoside (APG) ,
   C. and Alkyl Betaine(AB) . No "Safety " record was stated, nor was there an appellee safety study plan stated . Appellee back to its old ways of no safety studies . This is inferred "proof" that Roundup , at least up to July 26 , 2018 , was highly toxic with Polyethoxylated Tallow Amine still in Roundup formulant , and that appellees knew that fact .

12 . Appellent has received ,about August 13 , 2018 ,from his son-in-laws father from Germany, a retired hog farmer ,another " inference " with respect to Germany's "outlawing " Polyethoxylated  Tallow Amine before , in 2014 , or after September  12, 2014 . Appellant is inquiring, after August 13 ,2018

p.4

into obtaining that "regulation", or "law " from one particular bank in Germany which is still in existence, but , in 2014 had also included a " Farmer's Market " . Appellant's son -in-law has direct connections with that bank , he banks there . It was that Farmer's Market that advised local farmers (Customers for Roundup), then , because of German law ,that that Farmer's Market was no longer permitted to sell Roundup , it is not exactly known because appellant does not have , yet , that " regulation ", or does not know if that bank still has that document . Time is of an essence . Searching will require looking elsewhere .

12. Appellant needs copy of a Johnson v. Monsanto jury ruling so that appellant may discuss important aspects of that ruling . Appellant had been refused a Pacer contract and has not gotten a copy of Johnson ruling as of Tuesday, August 21 , 2018.

13 . Cause and effect continues to be relevant .

14 . Johnson jury award of August 10, 2018 ,likely oversized Johnson's compensatory damages(Medical plus anguish and pain ). Plaintiff Johnson lawyers, it has been claimed ,argued that $39,200,000. compensatory damages were necessary even though questionable .Even if Johnson's lawyers claimed that Johnson's medical damages were $1,125,000. per year ,for 4 years ,or $4,500,000. ,except for possible excessive drug prices ,and Johnson's anguish and pain came to $4,500,000., Johnson's total compensatory damages at $9,000,000. could reach a punitive

damage amount of $36,000,000. at $9,000,000. plus three(3) times $9,000,000 , if three(3) times compensatory is acceptable in California .

15. Appellants medical damages for 6 years treatment was about $1,500,000. for 6 years , or about $250,000. per year , except appellant had been in 2 medicine trials, PCI32765 ,now Imbruvica , and ThRiL, which included Revlimid , and Thalomid , manufacturer Celgene , and another familiar medicine appellant does not recall its name . Revlimid is a medicine which could still save Johnson's life , and was $500. per day in 2016, or $182,500 per year .

16. Dewayne Lee Johnson , so far , could not have been on more than( needs verified )about 4 years treatment . Appellant has received 9 years treatment , last three(3) years have been in Ohio since 2015 when appellant's IgM began averaging about 1200 mg./dL , down from 10289 mg.dL , in 2010 . Appellant had tried to reach Dewayne Johnson for his diagnosis IgM .

17. Respondent judge was asked by appellant in early 2018 to discover those , it was 4904 then , plaintiff's consecutive days of exposure , appellants was 7 days ,Johnson's was 2.5 days , 30 per year / 12 months " , and " those 5000 plaintiff's diagnostically excessive IgM's , appellant's was 8980 mg./dL, and Johnson's IgM was not known to have been asked and answered " or whether Johnson's complaint stated his diagnosis IgM . This discovery would

p.6

have buried appellees to an extent that appellees could not have possibly recovered . That evidence would have accumulated . Appellant may not be able to require how many of 5000, or 45 plaintiff's in MDL-02741-VC to appear in Ohio for a trial , as this discovery was required , by MDL1407 , to have been done at pretrial in San Francisco .

18 .Those 5000 plaintiff's addresses , telephones , and e-mail's were secretly withheld by their 57 law firms from appellant such that appellant could not inquire of that evidence from now 5200 plaintiff's . Appellant had asked in pleadings that Respondent judge conduct this discovery , but to no avail . Respondent judge could have been overwhelmed .

19 . In a final statement ,appellee shows , absolutely, no further concern for Roundup safety ,whatsoever , only concern for Roundup weed killing efficiency .

Respectfully submitted
Signed *Ralph A. Applegate*
Ralph A. Applegate ,
PETITIONER, Pro Se
1544 Zettler Road
Columbus ,Ohio 43227
rapplegate48@gmail.com
9144101568

Respondent attorney
David P. Strup
Shoemaker, Loop &Kendrick, L.L.P.
1000 Jackson Street
Toledo , Ohio 43604
dstrup@slk-law.com

Respondent Co-Counsel
Heather Pigman
Hollingsworth LLP
1350 I. Street NW
Washington ,DC 20005
HPigman@hollingsworthllp.com

Certificate of Service

Appellant certifies that one copy each of MORE CHRONOLOGICAL EDUCATION EVIDENCE, was certified mailed , return receipt requested , to Clerk of U.S. District Court, Northern District of California ,and Respondent judge ,and regular mailed to Clerk , 9th Circuit Court of Appeals , and to Respondent Co-Counsel Pigman , ~~and to Clerk , MDL Panel~~, on August 24 , 2018 .

Ralph A
1544 Ze
Colum

7012 2920 0001 0883 7594

CERTIFIED MAIL

Clerk,
U.S. District Court
North. Dist. of California.
450 Golden Gate Ave.,
San Francisco, Cal.
94102

U.S. POSTAGE PAID
FCM LETTER
COLUMBUS, OH
43209
AUG 22, '18
AMOUNT
$5.66
R2305M148722-13