**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
Email: rgreenwald@weitzlux.com

**THE MILLER FIRM LLC**
Michael Miller
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: mmiller@millerfirmllc.com

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Email: aimee.wagstaff@andruswagstaff.com

*Co-Lead Counsel for Plaintiffs*

**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC 20005
Tel: (202)-898-5800
Fax: (202)-682-1639
Email: jhollingsworth@hollingsworthllp.com
         elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

1

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: ALL ACTIONS | |

## JOINT CASE MANAGEMENT STATEMENT

The parties respectfully submit the below case management statement in advance of the September 13, 2018 case management conference.  Because the current status of state cases impacts the issues the Court asked the parties to address, the statement begins with a status report of the non-MDL cases, followed by responses to the three issues the Court asked the parties to address.

**1.  Status of Non-MDL cases:**

The parties set forth the status of Roundup cases in several other courts because the status of those cases relate to the issues the Court asked the parties to address in Pretrial Order No. 47. Since our last conference, as Your Honor knows, there has been a trial in the first Roundup case in San Francisco County Court in *Johnson v. Monsanto*.  The Miller Law Firm and Baum Hedlund Aristei & Goldman tried the case for the plaintiff.  The jury returned a unanimous verdict in Mr. Johnson's favor, including a finding of punitive damages.  Monsanto will be moving for JNOV or, in the alternative, a new trial.

There are other Roundup trials scheduled in 2019 as well.  In the Circuit Court for the City of St. Louis, there are two trials currently scheduled in 2019 relating to Roundup.  The first case, *Jeff Hall v. Monsanto Company, et al*., is a single-plaintiff trial scheduled to begin in February 2019.  The second trial is in October 2019 and is brought by 15 plaintiffs who will be tried together.  Monsanto moved for reconsideration of the trial setting as a multiple-plaintiff trial, but withdrew that motion with leave to refile later this month.  In two other cases, the court had scheduled single-plaintiff trials, one in October 2018 and the other in January 2019, but recently vacated those orders at plaintiffs' counsel's request.  Plaintiffs will be seeking multiple-plaintiff trials in these cases and asking for trial dates in 2019/2020.   Monsanto will be opposing these requests.

In the Circuit Court for the County of St. Louis, there are currently three trials scheduled in 2019 relating to Roundup.   They are scheduled in April, June and September, and each is a single-plaintiff trial.

In the St. Louis cases, both in the City and County, liability and specific causation discovery is underway and ongoing.

In the JCCP, general causation discovery is continuing, as well as liability discovery. The Sargon/general causation summary judgment motion is due 10/30/18 and the hearing is scheduled for 1/25/19.  No trial date has been set yet, however, on August 30, 2018, a motion for trial preference was filed in one of the cases pursuant to California Code of Civil Procedure 36. The plaintiffs Alva and Alberta Pilliod, a husband and wife that were both diagnosed with non-Hodgkin's lymphoma, seek an expedited trial due to their advanced age and health condition. Monsanto disputes the need for an expedited trial and the applicability of the statute to the case.

### 2. Leadership structure and composition for next phase of the MDL

**Plaintiffs' Position:**

Plaintiffs believe the structure and composition of the MDL should remain the same for the next phase of the MDL.[1]  As to structure, at the outset of the MDL, the plaintiffs requested a larger leadership structure, and in particular a Plaintiffs Steering Committee (PSC) in addition to the co-lead and executive committee structure, given the large volume of documents plaintiffs had to review and the phasing of the discovery, with general discovery to proceed first.  That required the Plaintiffs to review millions of pages of documents and to prepare general causation experts in a short period of time.   The leadership believed that the time and  expense required for this first phase of the MDL would be benefited by a PSC.  Monsanto objected to Plaintiffs' request and the Court denied leadership's request for the appointment of a PSC.

The MDL is now in a different posture than it was in November 2016, such that a PSC is no longer needed.   In particular, as explained above, because the law firms that comprise the MDL leadership are already engaged in liability discovery and trial preparation in state court proceedings, there is no longer a need for a PSC.  Specifically, the co-lead and executive committee member firms are in the midst of propounding additional liability discovery and

---

[1] Michael Baum, of Baum, Hedlund, Aristei & Goldman, PC, is currently part of the Court-appointed Executive Committee.  However, Mr. Baum previously agreed to withdraw from the Executive Committee following the completion of the general causation phase.  Mr. Baum is prepared to withdraw, as agreed.  However, Mr. Baum would like to remain on the Executive Committee, and all members of the MDL leadership believe that his continued participation would benefit the plaintiffs in the MDL.  His law firm was instrumental in preparing and presenting witnesses at the *Daubert* proceeding and continues to contribute substantially to the MDL.  Mr. Baum's partner, R. Brent Wisner, was trial counsel, along with the Miller Law Firm, in the recent verdict against Monsanto in San Francisco Superior Court and is currently one of the lead attorneys in the ongoing JCCP proceeding before the Hon. Ioana Petrou in Alameda Superior Court.

taking additional depositions on liability issues and specific causation. The liability issues, of course, are the same in the MDL as they relate, *inter alia*, to Monsanto's decisions regarding issues such as packaging, labeling, marketing, and advertising; formulations; warnings and more. The only MDL-specific discovery will relate to specific causation for trial plaintiffs; that discovery will not even begin until trial plaintiffs are selected. That process will take time as explained below.

### Monsanto's Position:

Monsanto objects to any effort to reinstate the law firm of Baum Hedlund based on the Court's recognition that "the kind of conduct that we saw on the part of Mr. Wisner and potentially on the part of other members of the plaintiffs' leadership committee is not the kind of conduct that we can have in a case like this, which is already very complicated and very difficult to manage." 8-24-2017 Hearing Transcript at 39:19-23.

Otherwise, Monsanto has no objection to the existing leadership structure and composition.

**3. Plaintiff Fact Sheets and Defendant Fact Sheets: Should they be required and if so for which MDL plaintiffs**

### Plaintiffs' Position:

Plaintiffs believe that plaintiff fact sheets (PFSs) should be required only for plaintiffs whose cases may be tried in the Northern District of California. This is because the parties have not waived *Lexecon*; thus, this Court can only try cases that are filed either in the Northern District of California or, perhaps, in other federal district in the state of California. The parties believe, however, that the issue of inter-district California trials taking place in the Northern

District of California, when the parties have not waived *Lexecon*, requires further research.[2]  The

parties propose that they submit simultaneous briefs to the Court on the issue of this Court's

authority to try cases from other California federal districts by October 12, 2018.

The main reason for PFSs is to learn about the plaintiffs in the MDL for potential trial

selection.  Thus, there is no reason for plaintiffs other than those who can be tried in the MDL to

complete them.[3]  As a result, only plaintiffs who were filed in the Northern District of California,

and possibly also the Eastern, Central and Southern Districts of California, should complete

PFSs.

As to the form of the PFS, the parties negotiated a PFS in the St. Louis City cases that has

been used now for hundreds of plaintiffs.  Plaintiffs propose that the same or a substantially

similar PFS be used here as well.  Finally, timing for completion of the PFSs should await the

briefing and decision regarding whether plaintiffs filed in other California federal districts can be

tried in the Northern District of California.   The parties thus propose that decision regarding

PFSs, including the form and who must complete them, be considered at the next case

management conference.

Should the Court agree with Monsanto that all MDL plaintiffs complete a PFS, even for

those plaintiffs who will never be tried here, the Plaintiffs submit that the procedures Monsanto

proposes are absurdly overbroad.  What is more, Monsanto provided their proposal to Plaintiffs'

counsel at 12:41 pm EDT today; there has been no meaningful opportunity to meet and confer

and/or to respond fully to its proposal here.  Without waiving other arguments, which Plaintiffs

---

[2]      At this time, the Plaintiffs Executive Committee is not waiving *Lexecon* on behalf of any Plaintiff in this MDL.

[3]      As further discussed below, Plaintiffs believe that plaintiffs in the MDL who were filed outside of California cannot be tried in the MDL and should be remanded now to the federal court from which they were transferred.

request the opportunity to brief with sufficient time, Plaintiffs submit it would be nonsensical for every plaintiff in the MDL to complete a full, comprehensive PFS.  If history repeats itself, the parties will spend inordinate time fighting over alleged PFS deficiencies for cases that will never be in a discovery pool.  In other mass tort cases in which courts have ordered non-discovery plaintiffs to submit facts to the defendant in the MDL, the courts require such plaintiffs only to complete a simple, one-page plaintiff profile form with basic information.  Moreover, it is wrong for Monsanto to ask that the PFSs be notarized for any of the plaintiffs; the plaintiffs are sick – and some are dying, and it is unnecessarily burdensome for them to have to notarize their PFSs.  Furthermore, the time frames that Monsanto sets forth below for completing PFSs need to be longer, given the number of plaintiffs that would be impacted if all have to complete some form of a PFS or plaintiff profile form.  These and other issues to which Plaintiffs object illustrate why the parties should meet and confer before bringing these issues to the Court.  Thus, Plaintiffs submit that any decisions regarding, for example, the contents or timing of PFSs, or sanctions for failing to fully respond to a PFS or profile form, should be negotiated first between the parties and, if no agreement is reached, the parties should present competing positions for the Court to decide.

Plaintiffs also disagree with Monsanto's position regarding the appropriateness of multiple-plaintiff trials. Plaintiffs' submit, however, that the issue should be briefed by the parties at the appropriate time.  Again, Monsanto provided no advance notice to Plaintiffs that it was raising this issue now.

Finally, plaintiffs believe that Monsanto should also be required to complete a Defendant Fact Sheet ("DFS") for the cases to be tried in the Northern District of California. The DFS will provide initial disclosures necessary for the selection of representative cases to serve as

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

bellwether trials. Plaintiffs propose that the parties meet-and-confer regarding the form and content of the DFS and submit a joint proposed DFS, or competing requests, by October 12, 2018.

**Monsanto's Position:**

The most efficient path forward during this second phase of the MDL starts with basic discovery designed to elicit key facts about the inventory of cases in the MDL.  Right now, the only information available to Monsanto is contained in the complaints.  The allegations in many complaints are insufficient to allow any meaningful assessment of the inventory, including, for example, the types of cases that may be representative of the MDL inventory as a whole, the appropriate trial venues for the cases, which multi-plaintiff complaints should be severed, and which cases should be dismissed from the MDL.

Monsanto therefore requests that the Court issue an Order governing the form and schedule for service of Plaintiff Fact Sheets ("PFS") and executed Authorizations for the release of records to be completed by plaintiffs in all cases that were or will be: (1) transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to its Order of October 4, 2016; (2) subsequently transferred to this Court by the JPML pursuant to Rule 7.4 of the Rules of Procedure of that Panel; and (3) originally filed in this Court or transferred or removed to this Court.

Monsanto agrees with plaintiffs that the parties should attempt to negotiate a PFS in the 30 days following the upcoming case management conference on September 13, and if agreement cannot be reached, submit competing versions for resolution by this Court.  Monsanto

would also be willing to discuss a defendant's Fact Sheet to see if agreement can be reached.  If not, that dispute would be simultaneously submitted.

Monsanto requests that plaintiffs in the first 50% of the cases existing in the MDL as of the date of the PFS order (the "existing cases") would have 90 days to complete in all respects and serve upon Monsanto a PFS and Authorization for Release of Records of all healthcare providers and other sources of information and records (e.g. pharmacies, employers, etc.), in the form agreed upon by counsel.  Plaintiffs in the second half of the existing cases would submit their completed PFS packet 90 days after the deadline for the first batch.

When the JPML transfers additional cases into MDL 2741, Plaintiffs' MDL Co-Lead Counsel or their designee shall serve plaintiffs and counsel in newly transferred cases in those cases with a copy of the Court's Order, including the PFS and all attached authorizations, with a notification to Monsanto's counsel that service has occurred.  Completed PFSs must then be served on Monsanto within 90 days of the date of transfer.

The information contained in the PFS shall be verified under oath.  Plaintiffs' responses shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and requests for production of documents under Fed. R. Civ. P. 34 and must be supplemented in accordance with Fed. R. Civ. P. 26.  The questions and requests for production contained in the PFS are non-objectionable and shall be answered without objection.

Where any plaintiff has failed to comply materially with his or her obligations under the Court's Order to submit a complete and verified PFS and signed and dated Authorizations within the timelines established, Monsanto's counsel shall, within 45 days of receipt of the PFS, send to counsel for the plaintiff in question a letter confirming the failure to timely file and/or explaining the material deficiency in the PFS.  This deficiency letter will notify the plaintiff that he or she

9

will have 30 days to cure the alleged material deficiencies, or Monsanto may thereafter move the Court for dismissal of plaintiff's complaint.[4]

Monsanto's use of the PFS and Authorizations shall be without prejudice to Monsanto's right to serve additional discovery.

Upon completion of the PFS process, the Court should hear Monsanto's motion to sever the existing multi-plaintiff complaints in this MDL. As of September 4, 2018, there are 24 multi-plaintiff cases in the MDL with a total of 412 plaintiffs, averaging approximately 17 plaintiffs per multi-plaintiff complaint. Two of those 24 cases have over 70 plaintiffs involved and nine cases have a range of 11 to 45 plaintiffs.

Plaintiffs have indicated an intent to seek multi-plaintiff trials. Consolidation of bellwether cases for trial is generally disfavored and would defeat the purpose of the bellwether process at this stage of the litigation – *i.e.* to advance broad resolution of the MDL through truly representative cases.[5] Multi-plaintiff trials are especially disfavored for complex product

---

[4] *See* Fed. R. Civ. P. 41(b) (authorizing a district court to dismiss an action or claim if a plaintiff fails to comply with a court order); Fed. R. Civ. P. 37(b)(2) (empowering a district court to impose sanctions on parties who disobey a discovery order); *In re Prempro Prod. Liab. Litig.*, No. MDL 403-CV-1507-WRW, 2009 WL 511116, at *2 (E.D. Ark. Feb. 27, 2009) ("Plaintiffs' counsel have 45 days within which to serve a reasonably adequate Fact Sheet in each case, and if such Fact Sheet is not submitted, the case will be dismissed with prejudice.").

[5] *See, e.g.*, *In re E. I. Du Pont De Nemours*, 204 F. Supp. 3d 962, 973 (S.D. Ohio 2016) (agreeing with defendant that multi-plaintiff MDL trials "are inherently prejudicial, create confusion for the jurors and, under the circumstances of this case, the unfair prejudice that results substantially outweighs the minimal judicial economy that would be obtained by consolidated proceedings."); *Leeds v. Matrixx Initiatives, Inc.*, No. 2:10CV199DAK, 2012 WL 1119220, at *3 (D. Utah Apr. 2, 2012) (denying request for consolidation by two plaintiffs in an MDL because "the potential for prejudice to defendants and jury confusion" outweighed the "judicial economy that may be gained through consolidation"); *see also* Manual for Complex Litigation § 22.314, at 359 (4th ed. 2004) ("If there are few prior verdicts, judgments, or settlements, additional information may be needed to determine whether aggregation is appropriate. The need for such information may lead a judge to require a number of single-plaintiff, single-defendant trials, or other small trials."); Duke Law Center for Judicial Studies, *Standards and Best Practices for Large and Mass Tort MDLS*, at 29 (2014) (an MDL Judge "should view any proposal for consolidated bellwether trials with skepticism. At the bellwether stage, the goal should be to achieve

---

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

liability cases like this one, where, "[u]nlike a mass tort action arising out of a single accident," such as an airplane crash, "the factual and legal issues . . . differ dramatically from individual to individual because there is no common cause of injury."  *In re Am. Med. Sys.*, 75 F.3d 1069, 1084 (6th Cir. 1996).[6]

If plaintiffs decline to sever multi-plaintiff complaints that did not conform with the requirements of 28 U.S.C. § 1391 (venue) or Fed. R. Civ. P. 20 (permissive joinder), Monsanto will seek a severance order from the Court pursuant to Fed. R. Civ. P. 21.  The Ninth Circuit has held that severance of individual plaintiffs from multi-plaintiff complaints is proper in an MDL where the plaintiffs do not seek relief arising from the same transaction or occurrence.[7]  Further, the Ninth Circuit has held that an MDL court did not abuse its discretion in requiring each

---

valid tests (not strive to achieve verdicts as to large inventories of claims) and consolidation can tilt the playing field, undermining the goal of producing representative verdicts.").

[6] *See, e.g., In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (reversing consolidation where injuries encompass "a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants); *Michael v. Wyeth, LLC*, No. CIV.A. 2:04-0435, 2011 WL 1527581, at *3 (S.D. W. Va. Apr. 20, 2011) (rejecting request to consolidate the trials of three plaintiffs in personal injury actions because consolidation "would create a significant risk of jury confusion and prejudice to defendants"); *Sapiro v. Sunstone Hotel Investors, L.L.C.*, No. CV 03 1555 PHX SRB, 2006 WL 898155, at *3 (D. Ariz. Apr. 4, 2006) (denying motion to consolidate two personal injury actions based on alleged exposure to Legionnaires' Disease at the same resort because of the "prejudice and confusion that could be created"); *Guenther v. Novartis Pharm. Corp.*, No. 6:08-CV-456-ORL-31, 2012 WL 5398219, at *2 (M.D. Fla. Oct. 12, 2012), report and recommendation adopted, No. 6:08-CV-456-ORL-31, 2012 WL 5305995 (M.D. Fla. Oct. 29, 2012) (denying motion to consolidate the trials of two plaintiffs alleging the same injury due to exposure to defendant's product because the "benefits of consolidation do not override the substantial risk of prejudice and confusion"); *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 447 (D.N.J. 1998) ("A consolidated trial of these fourteen cases would compress critical evidence of specific causation and marketing to a level which would deprive [defendant] of a fair opportunity to defend itself.").

[7] *In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1244 (9th Cir. 2006) (holding that it was proper of district court in MDL to sever multi-plaintiff complaints); *see also, e.g., In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651-54 (S.D. Tex. 2005) (severing cases and noting that "[t]hese Fact Sheets show what is apparent from all of the Fact Sheets—that these Plaintiffs have no relevant connection to each other"); *In re Accutane Prods. Liab. Litig.*, MDL No. 8:04-md-2523, 2012 WL 12012431, at *1 (M.D. Fla. Sept. 20, 2012) (granting defendants' motion to sever and noting that "the law is clear that large multi-plaintiff complaints are improper under Fed. R. Civ. P. 20(a)").

plaintiff to file and serve individual new complaints where cases were improperly joined, and upheld the MDL judge's dismissal of certain plaintiffs' actions with prejudice for a delay of between five and twelve weeks in complying with the Case Management Order.[8]

Plaintiffs' repeated complaints that Monsanto has surprised them with these issues and raised them late are unfounded: for example, plaintiffs raised the issue of multi-plaintiff trials for the first time just a few days ago in a brief telephonic meet-and-confer (and was immediately told that Monsanto disagreed), and cannot profess surprise that Monsanto has now responded further in writing.

### 4. Bellwether Trials and Remand Procedure

**<u>Plaintiff's Position</u>:**

For the reasons stated above, Plaintiffs submit that decisions relating to the selection of plaintiffs for bellwether trials should await this Court's decision relating to which plaintiffs are eligible for trial before the MDL court. Plaintiffs propose that the Court set another case management conference in November 2019 after the parties have briefed the issue. Awaiting that decision is important because it will govern the number of plaintiffs who may be tried here. If the Court may try only Northern District of California plaintiffs, there might not be a need for a bellwether trial selection process. Finally, regardless of the size of the pool of trial plaintiffs, at the appropriate time plaintiffs will be asking the court to order multiple-plaintiff trials. Monsanto has estimated that there are approximately 8,000 cases currently filed against it relating to Roundup. Trying one plaintiff at a time would be inefficient and ineffective.

---

[8] *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1244.

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

Plaintiffs believe that all plaintiffs in the MDL who filed their cases outside of California, and thus cannot be tried in the MDL, should be remanded to the federal court from which they were transferred.  The plaintiffs are sick, and indeed some plaintiffs have already passed away, and they are in need of trial schedules.  And because this Court cannot try cases outside of California and general causation is resolved, the case specific discovery in those cases might be best addressed in the context of a trial schedule in the federal district that will be trying the case. The district courts to which these cases will be remanded will have the benefit of this Court's omnibus *Daubert* ruling as well as the various other opinions issued by this and other courts nationwide relating to Roundup litigation.

Furthermore, the attorneys representing those plaintiffs, to the extent they are not part of the MDL leadership, will have the benefit of the trial materials from the *Johnson* trial, and the upcoming 2019 trials in St. Louis City and St. Louis County.

There is no reason to conduct individual plaintiff discovery for plaintiffs who will not be tried in this Court.  Again, however, Plaintiffs submit that this issue be briefed and not decided at the conference when the Plaintiffs only received Monsanto's position this afternoon and have not had an opportunity to present their argument.  Many issues are impacted by Monsanto's argument that full discovery of all plaintiffs should proceed in the MDL, and the case management statement is not the proper submission to address these issues when the Plaintiffs had no advance notice that Monsanto would be presenting the argument.

Further, while Plaintiffs do not address all of Monsanto's points below, as they are largely inappropriate for the case management statement submission and provided too late, Plaintiffs wish to make clear the underpinning of Monsanto's out-of-context statement that Plaintiffs rejected Monsanto's request for coordination.  That request was made in a Missouri

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

state case with a then-pending trial date, seven weeks after plaintiffs served a request for production of documents.  Monsanto asked Plaintiffs in the Missouri case essentially to halt discovery and wait for a discovery schedule to be set in the JCCP.  Plaintiffs' counsel did not refuse to coordinate discovery overall and, in fact, made clear that if and when appropriate they would make best efforts to do so.  At the same time, Plaintiffs have made clear that they cannot and will not be hampered in trial preparation in cases that are set for trial.

Moreover it is simply absurd for Monsanto to ask this Court to require Plaintiffs to serve all liability discovery on Monsanto in the MDL in the next 30 days.  That request should be summarily rejected.

**Monsanto's Position:**

Bellwether selection is premature at this time.  Monsanto lacks basic information about cases in the MDL and cannot assess which cases are properly within this Court's jurisdiction to try and which are not.[9]  Monsanto does not waive *Lexecon* at this time for any case.

Monsanto suggests that the Court set a status conference at the completion of PFS, discovery of Monsanto, and severance issues to discuss the bellwether selection process. Monsanto expects that process to include identification of cases representative of the entire MDL inventory.  The purpose of bellwether trials is to "produce a sufficient number of representative verdicts" to "enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the

---

[9] MDL courts often limit discovery initially to bellwether cases that could be tried by the transferee court.  *See*, *e.g.*, *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, *3 n.3 (M.D. Ga. Mar. 3, 2010) ("The Court is restricted [in bellwether cases] . . . to trying only cases over which that Court would have original jurisdiction, unless the parties otherwise consent."); Eldon E. Fallon et al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2347-48 (2008).

cases may have if resolution is attempted on a group basis."[10]  Therefore, only when a "representative . . . range of cases" is selected may "individual trials . . . produce reliable information about other mass tort cases."[11]  Before the parties and the Court have a full understanding of the range of cases—including, for example, the differences among plaintiffs, proper trial venues, and injuries alleged—there is insufficient information to determine which cases are truly most representative or how the bellwether selection process can be most efficiently handled.

There should therefore be full discovery of all cases in this Court's trial pool.  Similarly, it may be most efficient for fact discovery in cases triable elsewhere to also proceed through case-specific discovery in the MDL for pre-trial consistency.  This discovery would be required after remand.  Plaintiffs sought out this MDL because "centralization is the only way to ensure consistent pretrial rulings and efficient use of judicial resources."  *See* Pls.' Brief in Support of Pls.' Mtn. for Transfer of Actions Pursuant to  28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings at 8, *In re: Roundup Prod. Liab. Litig.* (JPML No. 2741).  They cannot be allowed to backtrack now.

**Monsanto's position regarding remand:**

This MDL was created for, *inter alia,* the coordination of discovery and other pretrial issues common to the cases therein.  Plaintiff's counsel is now claiming that such work is

---

[10] Manual for Complex Litigation (Fourth) § 22.315 (2004); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM(KSC), 2012 WL 3637278, at *3 (S.D. Cal. Aug. 21, 2012) ("The bellwether cases should be representative cases that will best produce information regarding value ascertainment for settlement purposes or to answer causation or liability issues common to the universe of plaintiffs.").

[11] Manual for Complex Litigation (Fourth) § 22.315 (2004).

effectively complete while simultaneously pursuing very extensive corporate discovery which they intend to apply to the litigation as a whole in state courts.  This Court should retain the MDL case inventory and take charge of the remaining litigationwide discovery as well, as its role contemplates.  Monsanto's proposal for this procedure is set forth below.

Only once this process is complete—and plaintiffs' counsel's purported need to conduct litigationwide corporate discovery satisfied—should the parties address appropriate procedures for remand of cases, including possible criteria by which cases or waves of cases might be selected for remand.

*Prior Document Productions and Written Discovery:*

On November 14, 2016, the Court bifurcated this MDL proceeding, with the first phase addressing solely the issue of general causation.  In connection with the general causation phase, Monsanto produced documents for designated custodians and made categorical document productions, including Monsanto's EPA registration and correspondence files related to glyphosate-based herbicides ("GBH"), Monsanto's files of scientific studies and literature related to the safety of GBH to people and other mammals, materials safety data sheets regarding Monsanto GBH, labels for Monsanto GBH, and public communications by Monsanto regarding the safety of its GBH.  Those productions amounted to more than 875,000 documents (estimated to total over 10 million pages).  The custodians (18 identified by plaintiffs and 5 identified by Monsanto) primarily consisted of scientists and regulatory personnel.

The search terms used in producing documents from scientists and regulatory personnel also yielded many emails and other documents reflecting communications with personnel with jobs related to marketing, sales, and other business aspects of Monsanto.  Thus, the MDL document productions generated many documents that plaintiffs may seek to use on non-general

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

causation issues.  For example, in deposing a former national manager of certain sales/field representatives in a non-bifurcated state court lawsuit, plaintiffs' counsel used an email between Steve Adams (MDL custodian – EPA registrations) and certain sales/field representatives of Monsanto.

Following MDL phase one discovery, substantial additional discovery has been pursued through state court lawsuits, including in cases where there is no bifurcation of discovery. Monsanto has now produced documents for an additional 25 custodians whose job responsibilities collectively span a broad range of roles including marketing, advertising, sales, and other business roles.  Each of those custodians was requested, and productions were made, in cases where the plaintiffs' counsel include either Robin Greenwald of Weitz & Luxenberg, Mike Miller of the Miller Firm, or Aimee Wagstaff of Andrus Wagstaff, the three co-lead counsel for this MDL.  The search terms used to make those productions are the same terms Monsanto negotiated with plaintiffs in the MDL, which was done by agreement in those cases without prejudice to plaintiffs proposing additional terms in the future.  Through those Missouri and California state court lawsuits, Monsanto has also made a number of additional non-custodian based document productions.  Monsanto, in state court lawsuits and the MDL, also responded to many interrogatories, requests for production of documents, and requests for admission.

To date, Monsanto has produced more than 1.2 million documents to plaintiffs (estimated to total over 15 million pages) who allege that they developed NHL from alleged exposure to Monsanto GBH.  All of those documents are available to plaintiffs in this MDL, who are sharing a common document database with those state court plaintiffs, and who are represented by overlapping counsel.

*Prior Depositions:*

17

Through the MDL, excluding expert depositions, there were 10 depositions of current/former employees of Monsanto or its European subsidiary, which primarily involved scientists and regulatory personnel.  There were also three fact depositions of non-parties.  There have also been 8 depositions in state court cases where the plaintiffs are likewise alleging NHL from alleged exposure to Monsanto GBH.  Those depositions have included, for example, the depositions of three area sales/field representatives for Industrial Turf & Ornamental Grass (IT&O), an employee who served as national manager of the sales/field representatives for IT&O, an employee who served as U.S. Roundup Marketing Manager for Agriculture and IT&O GBH products, and a corporate representative on marketing of GBH.

*Upcoming Additional Discovery:*

Additional document production and depositions are planned in the state court cases that will also be available to the MDL plaintiffs.   In the JCCP, a deposition of former Monsanto employee Eric Sachs and an additional deposition of current Monsanto employee Donna Farmer are also scheduled to occur later this month.

Another corporate representative deposition set for later this month will occur in a Missouri state court case.  The parties have set two days for that deposition, which spans a broad range of issues that include marketing, advertising, public relations, labeling, safety data sheets, and packaging standards in the Lawn & Garden segment of Monsanto's GBH business.

The parties in a Missouri court lawsuit have also negotiated an agreement through Robin Greenwald, for voluminous additional document productions expected to occur over the next several months.  Monsanto also is currently preparing responses and objections to additional interrogatories, document requests, and requests for admissions served in Missouri state court lawsuits.  Monsanto has sought agreement from plaintiffs' counsel to coordinate discovery in

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

Missouri state court litigation with separate document requests by overlapping plaintiffs' counsel in state court JCCP litigation in California, but plaintiffs' counsel have refused to coordinate their efforts, notwithstanding the fact that discovery obtained in all of these case is made available to all counsel pursuant to prior orders from this Court.

The discovery already taken vastly exceeds what plaintiffs need to try these lawsuits. Illustrative of the adequacy of the records already available to plaintiffs, and the overbreadth of plaintiffs' seemingly never ending requests for production, a jury trial against Monsanto was just completed in a California state court lawsuit.  In that trial that spanned multiple months, fewer than 70 documents produced by Monsanto were admitted at trial.  That is well under .01% of the documents to which the plaintiff had access through Monsanto's document productions.

As the Court is aware from prior hearings, and the earlier phase of this litigation, document production and other discovery is both time consuming and burdensome.  See, e.g., Declaration of Samuel Merritt, Esq., Senior Portfolio Manager NightOwl Discovery (dated August 19, 2018) (discovery vendor assisting Monsanto in this litigation).  Monsanto requests that any additional discovery through the MDL should reflect the additional discovery that has been completed, and remains ongoing through the state court lawsuits, with appropriate coordination to avoid conflicting discovery demands.

*Proposal for Completion of Corporate Discovery*

The JPML has held that the purpose of centralizing cases in multidistrict litigation is "to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary."  In re Inter-OP Hip Prosthesis Prods. Liab. Litig., 149 F. Supp. 2d 931, 933 (J.P.M.L. 2001).   Monsanto therefore requests that the

Court issue an Order governing the completion of corporate discovery with the following provisions:

- Within 30 days of the entry of the Court's order granting this request, plaintiffs shall serve upon Monsanto all remaining discovery requests demanded on liability issues (i.e., those issues not addressed during general causation discovery). Plaintiffs' document requests, if any, shall be reasonably tailored to permit document production and depositions to be completed within nine months following the Order Entry Date.

- Any objections to plaintiffs' discovery requests shall be served within 30 days after receipt of the requests. The parties shall meet and confer regarding any objections to the discovery requests. If the parties are unable to resolve a discovery dispute, the parties shall comply with this Court's discovery dispute procedures.

## 5.  § 1292(b) Appeal
### Plaintiff's Position:

Plaintiffs oppose the Defendants' belated request for an interlocutory appeal. Plaintiffs were first presented with Monsanto's argument this afternoon; Monsanto should not be allowed to thwart the purpose of case management statements, especially since the parties discussed issues they would be raising in the statement on a call last week and Monsanto did not mention this issue. Nevertheless, Plaintiffs submit below the reasons why Monsanto cannot seek appellate review of this Court's *Daubert* and summary judgment ruling. The Plaintiffs would like the opportunity to brief the issue fully if the Court intends to entertain Monsanto's request.

As stated above, Monsanto's first mention of this topic was literally hours before this letter is due to the court and fifty-six days after the Court's *Daubert* ruling. Defendant's reliance upon §1292 is misplaced. In the first instance, §1292 requires the district court to make a finding in the order in writing that "an immediate appeal from the order may materially advance the ultimate determination of the litigation he shall so state in writing in such order". In the Court's *Daubert* order of July 10, 2018, the court made no such finding that an immediate appeal would

materially advance the litigation.  Defendants request is untimely.  The Court of Appeals would only have jurisdiction if "application is made to it within ten days after the entry of the order" §1292.

Whether or not a motion for certification was timely filed is a threshold question for a district court in deciding whether to certify an interlocutory order. *Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F. 3d 674, 75 (7th Cir. 2000) (Posner, C.J.) (stating that "[t]here is also a non-statutory requirement" for certification under § 1292(b) that "the petition ... be filed in the district court within a reasonable time after the order sought to be appealed").  Although there is no strict time period within which parties must seek certification, parties "should not confuse flexibility by the court with blanket permission to extend the time within which a party may seek certification." *Abbey v. U.S.,* 89 Fed. Cl. 425, 430 (Fed. Cl. 2009).  In the context of requests for interlocutory appeals, "timely requests for certification are calculated in days, not months." *Fabricant v. Sears Roebuck & Co*., 2001 WL 883303 (S.D. Fla. Jan. 29, 2001).  Any further delay is permissible "only if there is a reason for the delay." Weir v. Propst, 915 F. 2d 283, 287 (7th Cir. 1990).  Accordingly, district courts across the country have exercised their discretion to deny motions for certification deemed untimely. *See Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010)(denying motion for certification as there was no justification for a two and a half month delay); *Fabricant v. Sears Roebuck & Co*., 2001 WL 883303 (S.D. Fla. Jan. 29, 2001)(denying motion to certify as untimely after forty-six day delay); *Morton College Bd. of Trustees v. Town of Cicero*, 25 F.Supp.2d 882, 883 (N.D.Ill.1998) (thirty day delay was untimely); *Green v. City of New York*, No. 05 CV 0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (denying motion for certification due to "defendants' more than two-month delay in requesting certification");

*Teladoc, Inc. v. Texas Med. Bd*., No. 1:15-CV-343-RP, 2016 WL 4362208, at *3 (W.D. Tex. Aug. 15, 2016).

The cases cited by Monsanto support Plaintiff's opposition. "Permission to allow interlocutory appeal should be granted sparingly and with discrimination" *Larson v. Tyson Fresh Meals, Inc*. 2005 WL 6038741. See also *Travelers Property & Gas Corp. v. General Electric Co.,* 15 F. Supp 2d 360 (2001) (Requiring party seeking interlocutory appeal to petition the district court within two weeks of the *Daubert* Order for permission to seek interlocutory appeal).

**Monsanto's Position:**

In addition to the activities described above, Monsanto intends to seek interlocutory appeal of this Court's decision to admit plaintiffs' experts' general causation opinions under *Daubert*.  As your honor is aware, 28 U.S.C. § 1292(b) gives district courts discretion to certify a non-final order for interlocutory review where 1) the order subject to review involves a controlling question of law; 2) as to which there is a substantial ground for difference of opinion; and 3) an immediate appeal from the order may materially advance the ultimate termination of litigation.  We believe that all three elements of § 1292(b) are met here.

First, *Daubert* determinations are questions of law, not fact.  *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014); *see also United States v. Harris*, 863 F.2d 887, at *1 (9th Cir. 1988) ("Admissibility of evidence is a question of law for the court to decide.").  In particular here, the Court stated that its *Daubert* ruling was guided by what it viewed as a more liberal view of expert admissibility in the Ninth Circuit than in other Circuits and explained that "[t]his is a difference that could matter in close cases."  7/10/2018 *Daubert* Op. at 8-9.

Second, there is substantial ground for disagreement on the underlying merits of the *Daubert* challenge here.  This Court's opinion itself notes that Monsanto's motion presented a "close question" or a "very close question" no fewer than seven times.  Op. 1, 3, 48, 51, 67.  Immediate review would enable the Ninth Circuit to clarify its interpretation of *Daubert* in a case where its perceived difference with other Circuits is likely dispositive.

Finally, review of the general causation decision would materially advance the ultimate termination of the litigation.  Again, your honor explained that without general causation experts, "none of the plaintiffs' cases may proceed."  Op. 1.  For this same reason, other courts in serial litigation have certified *Daubert* rulings for interlocutory review.  *See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co*., 150 F. Supp. 2d 360, 368-69 (D. Conn. 2001) (certifying 1292(b) review of *Daubert* ruling that could resolve 23 cases); *Larson v. Tyson Fresh Meats, Inc.*, No. 8:00CV529 et al., 2005 WL 6038741, at *5 (D. Neb. May 4, 2005) (same; 12 cases).  In the context of an MDL proceeding involving many hundreds of plaintiffs, the utility of obtaining final determination on cross-cutting *Daubert* issues is even stronger.

Dated: September 6, 2018                          Respectfully Submitted,

                                                /s/ Robin L. Greenwald
                                                Robin L. Greenwald
                                                rgreenwald@weitzlux.com
                                                Weitz & Luxenberg
                                                700 Broadway
                                                New York NY 10003
                                                Phone: 212-558-5802

                                                /s/ Aimee H. Wagstaff
                                                Aimee H. Wagstaff
                                                aimee.wagstaff@andruswagstaff.com
                                                Andrus Wagstaff, P.C.
                                                7171 West Alaska Drive

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC

Lakewood CO 80226
Phone: 303-376-6360

/s/ Michael J. Miller
Michael J. Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange VA 22960
Phone: 540-672-4224

*Co-Lead Counsel for Plaintiffs*

Respectfully submitted,

/s/Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

JOINT CASE MANAGEMENT STATEMENT
3:16-MD-02741-VC