# Exhibit 1

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

| | |
|---|---|
| EARL NEAL, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MONSANTO COMPANY,<br><br>　　　　Defendant. | Case No. 1722-CC10733<br><br>Division 1 |

**DECLARATION OF SAMUEL MERRITT**

I, Samuel Merritt, Esq., hereby declare as follows:

1.　　I am a Senior Portfolio Manager for NightOwl Discovery, which has been contracted by Monsanto Company ("Monsanto") under confidential terms to provide certain services related to the production of documents in this lawsuit and other lawsuits alleging that Monsanto's glyphosate-containing herbicides caused plaintiffs to develop non-Hodgkin's lymphoma (hereinafter "Roundup® NHL lawsuits"). I make this declaration based on my personal knowledge and, if called as a witness, I would and could testify competently to these matters.

2.　　Since 2016, Monsanto has produced in Roundup® NHL lawsuits more than 1.2 million keyword searchable documents (consisting of tiff images and native files), which I estimate to exceed more than 15 million pages of records. Monsanto's prior productions contain more than 85,000 documents that contain the term "marketing," more than 17,500 documents that contain the term "advertising," more than 110,000 documents that contain the term "labeling," and more than 275,000 documents that contain the term "formulation." Monsanto's productions include more than 45,000 documents that hit on one or more of the proposed search

1

terms identified in the July 31, 2018 email of plaintiffs' attorney Robin Greenwald of Weitz & Luxenberg. For example, the term "quality assurance" appears in more than 22,000 previously produced documents. The general phrase "market research" appears in more than 11,000 previously produced documents.

   3. Monsanto's document productions were provided to plaintiffs' documents vendor, Crivella West, and are available to plaintiffs for use in this case. Based on statistical sampling of records, I estimate that the average length of documents produced in this litigation exceeds 13 pages per document. Based on the reports from Relativity, for this litigation, the average pace of first pass review of these documents has ranged from 20 to 50 documents per hour (approximately 1-3 minutes per document). Additional time is needed for review of documents identified as potentially privileged and for other quality control review.

   4. I have been involved in coordination of and am familiar with the document collection protocols used by Monsanto and its scanning vendors. Monsanto's practice includes identifying the custodian of the document, preserving family relationships (i.e., keeping an email with its attachments), identifying the file name and file path from which the documents were obtained (where those apply), and providing various other information about the documents consistent with the November 20, 2017 Joint Stipulation and Order Governing Protocol for Discovery of Electronically Stored Information ("ESI Order"), provided that information exists in the usual course of business. For hard copy documents, the protocol for Monsanto's vendors included scanning of documents to their lowest binding element as they are kept at Monsanto (e.g., staple, binder clip), and capturing the name of the file from which the document came if there was a file name. Plaintiffs received this information and other information identified in the ESI Order when the documents were produced. For email, Monsanto collected and produced

emails together with their attachments along with metadata about the documents that include: To, From, Cc, Bcc, Date Sent, Email Subject, and various other information identified in the ESI Order. For other types of electronic documents (e.g., Word documents stored on an employee's computer), Monsanto collected and produced the documents along with metadata about that documents that include: Author, Title, Date Created, and Date Modified, and various other information identified in the ESI Order.

5. Since 2016, in Roundup® NHL lawsuits, Monsanto has in addition to making non-custodian based productions (e.g., from Monsanto's EPA registration and correspondence files) also made custodian-based productions for 45 current or former Monsanto employees and 3 current or former employees of Monsanto Europe S.A. Twenty-two of those current/former employee productions were made in response to requests in this case and the *Kane* case in this Court (thirteen of which were requested in this case with some overlap with requests in *Kane*), another twenty-three were made for custodians in the MDL before Judge Chhabria, and three were made in response to requests in the *D. Johnson* case in California state court. The search terms used to cull the document collections of custodians before attorney review are listed in a November 28, 2016 email of James M. Sullivan of Hollingsworth LLP to plaintiffs' attorney Ms. Greenwald and other plaintiffs' attorneys.

6. Monsanto has been making document productions in this case involving review of hundreds of thousands of pages of documents. During the last six months, Monsanto has produced more than 200,000 documents (estimated to total over 2 million pages) in *Neal* and *Kane*. On February 24, 2018, Monsanto produced more than 25,000 documents for the following custodians: Dan Schulz, Tim Ford, and Jack Conroy. On March 25, 2018, Monsanto produced more than 70,000 documents for the following custodians: Jim Guard (requested in

*Kane* only), Mathew Helms, Brian Naber, and Scott Kuschmider (requested in *Kane* only). On April 20, 2018, Monsanto produced more than 38,000 documents for the following custodians: Brian Adams (requested in *Kane* only), George Gough, Kevin Holloway (requested in *Kane* only), Bryan Hurley (requested in *Kane* only), Julio Negreli, Scott Partridge, Patrick Quinn, Pam Strifler (requested in *Kane* only), Jeremy Stump (requested in *Kane* only), Jim Tobin, Cole Waggoner, Thomas Wilson (requested in *Kane* only), and Jim Zimmer (requested in *Kane* only). On May 25, 2018, Monsanto produced more than 31,000 documents for the following custodians: Brian Adams, George Gough, Kevin Holloway, Bryan Hurley, Julio Negreli, Scott Partridge, Pam Strifler, Jeremy Stump, Jim Tobin, Cole Waggoner, Thomas Wilson, and Jim Zimmer. On July 15, 2018, Monsanto produced more than 50,000 documents from its state registration files. Monsanto is currently working on collection, processing, and review of additional documents with its next production of documents scheduled for August 31, 2018. That production relates to custodians Samuel Murphey and Kimberly Link for whom Monsanto agreed on July 27, 2018 to make certain productions in response to plaintiffs' requests of June 27, 2018.

7. For a group of 5 to 10 custodians, based on my experience with these lawsuits and others, the process of collecting the documents and preparing them to be reviewed by attorneys can take up to 30 days to complete. Sometimes that process may only take a couple of weeks, and other times certain collections of documents will take longer due to unpredictable variables involved (e.g., limits of technology, locations of the documents involved, and schedules of custodians).

8. After documents are collected, the documents are made keyword searchable and exact duplicates of documents are removed consistent with the ESI Order. NightOwl Discovery

used state of the art technology to remove exact duplicates before the documents were loaded into the document review database (Relativity) consistent with what the parties agreed upon. The ESI Order states that "[d]e-duplication shall not break apart families and shall be performed at a family level." *Id.* at § 2(b)(2)(m). Thus, for example, there are multiple copies of some of the same studies in the productions (e.g., the same study may be attached to different email chains). In addition, the ESI Order allowed only for removal of "exact duplicates based on the files' MD5 or SHA-1 hash value," *id.*, such that the technology at times will recognize certain documents as not being "exact duplicates" that contain no substantive differences; this often occurs for example when dealing with scans of hard copy documents. Documents are reviewed before production with their families, and all produced documents were reviewed by attorneys.

9. Because a group of 5 or more custodians can involve collection and processing of millions of documents, this can take a couple of weeks to complete. The time, burden, and expense would increase substantially if the group of custodians were much larger. After the documents have completed this initial processing, documents intended for attorney review are then loaded into a database (Relativity) that attorneys can access to review the documents and identify on a document-by-document basis which should be produced, which are confidential, which are privileged in whole or part, and which should be redacted. The attorneys also are able to mark locations within documents for redaction. There are also costs to Monsanto or any party for processing and hosting large amounts of data as has been required for the Roundup® NHL lawsuits.

10. After attorneys finish reviewing documents in Relativity, additional processing is needed in order to prepare the documents for transmission to the plaintiffs' documents vendor, which typically takes 2-3 days when producing tens of thousands of documents as has been the

case for many of Monsanto's productions in the Roundup® NHL lawsuits. At this point, confidentiality legends and Bates numbers are added to documents being produced as tiff images according to the ESI order, needed redactions identified by attorneys are incorporated onto the production copies, and the various metadata, load files, and logs described in the ESI Order are assembled and packaged.

11.     Some of the same technology resources are used to process newly received documents to get them ready for attorney review and to finalize them for production after attorney review. Because of the steps involved with processing of documents, and the quality control and personnel involved in those processes, inefficiencies and complications can arise when there are competing document processing and production demands. This includes when documents are requested to be produced at frequent intervals. Document productions every 60 or 90 days are more efficient than more frequent productions. Competing processing and production demands would be even more problematic if each Roundup® NHL lawsuit were to result in different processing and production deadlines even though all of the documents end up being shared across the jurisdictions. The technologies used to process and produce documents for the Roundup® NHL lawsuits also are needed to process documents for unrelated litigations such that the resources needed to complete the productions will not always be available to all cases at the same time.

12.     I also tested the search terms proposed in Ms. Greenwald's July 31, 2018 email looking in the same document for at least one of those terms plus either the term glyphosate or Roundup. This search was run against the document collections made for 45 of the 48 previously produced custodians (the 3 European custodians were not included). Limited to those 45 custodians, the documents that hit those search criteria plus their families would require

attorney review of more than 180,000 additional documents (estimated to total millions of additional pages).

I hereby declare under penalty of perjury that the facts set forth herein are true and correct. Executed this 19th day of August 2018.

_____
Samuel Merritt, Esq.