**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Tel.:     (202) 898-5800
Fax:     (202) 682-1639
Email:  jhollingsworth@hollingsworthllp.com
            elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br>ALL ACTIONS | |

### MONSANTO COMPANY'S RESPONSE TO QUESTIONS POSED IN PRETRIAL ORDER NO. 49

Monsanto submits the following in response to the questions posed in Pre-Trial Order 49 regarding the Plaintiff Fact Sheet ("PFS") process and other issues regarding the progression of the MDL cases.

**I.   MONSANTO HAS NO OBJECTIONS TO THE PROPOSED PFS, BUT REQUESTS A HANDFUL OF ADDITIONS**

Monsanto does not have any objection to the Court's proposed PFS attached to Pre-Trial Order 49.  However, Monsanto suggests the following revisions which will facilitate the efficient gathering of needed information without increasing the burden of completing the PFS for any plaintiff.

- Section IV. B (p. 5) – Monsanto suggests adding the following additional risk factors to this chart: ulcers, celiac disease, hepatitis C, eczema, radiation, and smoking. Each of these conditions has been identified as potentially associated with the development of non-Hodgkin's lymphoma ("NHL").

- Section V. D (p. 5) – Monsanto suggests modifying the existing Question D of Section V to ask the plaintiff to specify the city and state of diagnosis in addition to the name of the individual making the diagnosis. This geographic information will assist the parties in efficiently collecting records from the correct health care providers and in assessing the proper trial venue of each plaintiff's claims.

- Section VII. C (p. 10) – Monsanto suggests adding a column to this chart, to the right of the "usage" column, allowing plaintiffs to select the type of usage from a list of three categories: (1) Residential (i.e., using the product in your lawn, garden, or place of residence); (2) Industrial, Turf, and Ornamental ("IT&O") (i.e., using the product in areas such as golf courses, nurseries, roadsides, or for turf management or landscaping); or (3) Agricultural (i.e., using the product to assist with farming or harvesting crops). Categorizing the different types of usage into three main categories followed by the existing field for narrative explanation will allow parties and the Court to more easily classify and determine which types of usage are most representative of the existing plaintiff population. This will be particularly helpful if the on-line submission protocol suggested below is adopted.

Exhibit 1 contains these proposed revisions in redlined format, and Exhibit 2 is a clean version of the same revised PFS with the changes accepted and relevant authorizations attached. Based on the parties meet and confer, it appears there is agreement regarding the addition of the last two suggestions. Should any objection be made to the additional risk factors, Monsanto urges that it be rejected – determining whether a plaintiff has medical conditions associated with the development of NHL is a crucial aspect of discovery and appropriate for the PFS format.

To the extent that plaintiffs object to any portions of the Court's Proposed PFS that were not already in use in other jurisdictions, the Court's format changes and additions are necessary to assist and enable the parties and the Court to determine, among other things, the presence of potential risk factors for NHL, the details of plaintiffs' alleged product use, and other key facts that will assist in effieicnt discovery in this matter. The Court's proposed PFS is almost identical in substance to the PFS already used in Roundup litigation in both Missouri state courts and the JCCP. There is no reason to narrow or limit the scope of this compact document being used in hundreds of other cases in other jurisdictions.

## II. MONSANTO'S PROPOSAL FOR ONLINE COMPLETION OF PFSs

The parties jointly agree that contracting with BrownGreer, a third party vendor that hosts a data management platform called MDL Centrality, would efficiently enable plaintiffs to complete the PFS online. "MDL Centrality creates an instant, real time database of Fact Sheet responses that you can use to monitor submissions, select [initial trials], and review Fact Sheet responses for completeness."[1] The program allows plaintiffs to fill out fact sheets in an easy-to-use online questionnaire form that is kept in a secure online portal.[2] Plaintiffs who do not have a computer or who lack internet access may provide a PFS to their attorneys or to BrownGreer for data entry.[3] Monsanto may also use the platform to generate deficiency notices.

MDL Centrality has been utilized in several MDLs, including but not limited to: *In re Xarelto Prods. Liab. Litig.*, MDL No. 2592 (E.D. La.), *In re Zofran Prods. Liab. Litig.*, MDL No. 2657 (D. Mass.), and *In re Taxotere Prods. Liab. Litig.*, MDL No. 2740 (E.D. La.). The program also allows the Court or the parties to "call upon BrownGreer to run reports, statistics, and queries," such as running reports on the number of plaintiffs who have submitted fact sheets, the number of plaintiffs currently in the MDL, the number of plaintiffs who used a particular type of Monsanto product, or various other queries that may be helpful in assessing the full plaintiff population or determining at a later point in time which cases may be ready for remand.[4] The costs of utilizing MDL Centrality would be split between the parties and, according to representations by the vendor, will be approximately $25 per party per fact sheet.

The parties have agreed to set up a call with BrownGreer if the Court grants this proposal to begin setting up this online portal. BrownGreer has represented to the parties that it will take approximately two weeks to create, test, and finalize the on-line form to the approval of the

---

[1] BrownGreer, *The Answer to Your Litigation Management Needs,* https://www.browngreer.com/mdl-centrality.html.
[2] *Id.*
[3] BrownGreer, *MDL Centrality FAQs*, https://www.browngreer.com/mdl-centrality-faqs.html.
[4] *See* Pretrial Order No. 24 at 4, *In re Taxotere Prods. Liab. Litig.*, MDL No. 2740 (E.D. La. Mar. 13, 2017).

parties. This timing is feasible for all but the first set of potential MDL trial plaintiffs. In those cases, in which fact sheets are due in 28 days from entry of an order finalizing the PFS, Monsanto requests that those PFSs be submitted as Microsoft Word documents, and that the medical records authorizations be submitted after 10 days from this Court's order. Submission in that order and format to Monsanto's attorneys will ensure that Monsanto can immediately proceed with fact discovery while allowing the PFSs to be easily entered into the MDL Centrality system once it is operational.

Plaintiffs intend to request that the deadlines for the submission of the PFSs for those plaintiffs whose PFSs are due in 60 and 120 days to commence only after BrownGreer finalizes the program. For example, if MDL Centrality is running in 10 days, plaintiffs whose PFSs are due in 60 days would then have 70 days to complete their fact sheets. Monsanto does not believe that this additional time is necessary given that the approximate two week timeframe that BrownGreer requires to get the program running will not "take away" any time from plaintiffs as they will still have 40 days to complete their PFSs. Plaintiffs may file a hard copy PFS directly with BrownGreer should they desire to submit their PFS within the first few days of receiving the Court's Order with the finalized PFS.

### III. MONSANTO'S PROPOSED TRIAL AND PRETRIAL SCHEDULE FOR THE FIRST FOUR NORTHERN DISTRICT OF CALIFORNIA PLAINTIFFS

Monsanto agrees with this Court that the first trial should occur in February. In order to meet a February trial date, Monsanto proposes the following schedule.

| Date | Event |
| --- | --- |
| 9/24/18 | PFS order entered |
| 10/4/18 | Completed and executed authorizations due for the first four plaintiffs[5] |
| 10/22/18 | First four PFSs due |
| 10/22/18 | All requests for discovery of Monsanto due |
| 10/26/18 | Deficiency letter(s) sent |
| 10/22/18-11/21/18 | Fact discovery period (including medical records collection and fact |

---

[5] Plaintiff's counsel has notified the Court and Monsanto that Mr. Penrod "may be" dismissing his claims. That dismissal has not yet occurred. Even if it does, that would not alter the time needed to collect medical records in the three remaining cases or the other parameters of this schedule.

| | |
|---|---|
| | witness depositions) |
| 11/2/18 | Deadline to cure deficiencies or file letter brief regarding any disputes about whether a deficiency exists |
| 11/7/18 | Monsanto's objections to discovery requests due |
| 11/21/18 | Deadline to submit letter brief(s) regarding any requests for discovery from Monsanto |
| 11/27/18 | CMC to discuss trial case selection |
| 11/27/18 | Plaintiffs' expert reports due |
| 12/7/18 | Monsanto's expert reports due |
| 12/12/18 | Plaintiffs' rebuttal reports due |
| 12/13/18-1/4/19 | Expert discovery period |
| 1/4/19 | Close of corporate discovery |
| 1/11/19 | *Daubert*, summary judgment, and MILs due |
| 1/21/19 | Oppositions to *Daubert*, summary judgment, and MILs due |
| 1/28/19 | Replies regarding *Daubert*, summary judgment, and MILs due |
| 2/4-6/19 | *Daubert* evidentiary hearing and oral argument |
| 2/25/19 | Trial |

In addition to deadlines related to the first four cases, Monsanto also proposes a hearing be set to discuss how cases not eligible for trial in this district will proceed. Monsanto believes that after full discovery in the MDL and rulings on Monsanto's anticipated motions to sever multi-plaintiff complaints, these cases should be returned to the transferor jurisdictions for motions practice regarding proper trial venue (if necessary) and *in limine*, dispositive and *Daubert* motions. To ensure this process remains on track, Monsanto suggests that a case management conference be held sometime after submission of the PFSs of the entire MDL plaintiff population.

## IV. MONSANTO'S PROPOSED ORDER OUTLINING PROCEDURES FOR COMPLETING PLAINTIFF FACT SHEETS

Monsanto's proposal is attached as Exhibit 3. Monsanto requests that this order apply only to PFSs after those of the first four plaintiffs identified for initial trial work-up unless otherwise specified in the proposed order.

Monsanto objects to any effort to automatically extend the periods for completeion of the PFS to plaintiffs who fail to provide a good faith response to the PFS within the specified time frames. Automatic extensions defeat the purpose of imposing deadlines for PFS submission altogether. Instead, Monsanto proposes that the parties meet and confer on such issues in individual cases, and if agreement cannot be reached, the Court require that each plaintiff

requesting an extension to file a motion with the Court, within the time frames specified in the attached Exhibit 3, to explain why the plaintiff needs additional time to complete the PFS.

### V. NO DEFENDANT FACT SHEET IS NEEDED

As explained in Monsanto's portion of the September 6 Joint Case Management Statement (ECF No. 1695), and discussed at the September 13 Case Management Conference, a DFS is ill-suited for the facts and status of this case, particularly in light of the high volume of discovery completed and ongoing.  Monsanto's proposed schedule for the trial cases contains deadlines for any remaining corporate discovery plaintiffs intend to request, and an additional DFS requirement would be unnecessary and unduly burdensome for Monsanto.  Plaintiffs have not identified any compelling rationale for a DFS, nor did they respond to Monsanto's three-page recapitulation of the discovery Monsanto has already produced in this litigation.[6]  In addition, Monsanto believes it likely that many of plaintiffs' requests for information or documents have already been produced.

Furthermore, DFSs are not being used in any other litigation involving Roundup in jurisdictions across the United States.  DFSs are typically used only in pharmaceutical or medical device cases where the defendant has contact with the plaintiffs' physicians.[7]  Here, the chances of Monsanto having had communications with the plaintiffs' medical providers are slim.

---

[6] *See* September 6 Joint Case Management Statement (ECF No. 1695), at pp. 16-19.

[7] *See, e.g.*, Pretrial Order No. 6, *In re: Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, MDL No. 1699 (N.D. Cal. Feb. 13, 2006); MDL Order No. 12 Concerning Defendant Fact Sheets, *In re: Zofran (Ondansetron) Prods. Liab. Litig.*, MDL No. 2657 (D. Mass. May 26, 2016).

DATED: September 20, 2018

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY

**PROOF OF SERVICE**

I hereby certify that on September 20, 2018, a true and copy of the foregoing was served electronically upon all counsel of record.

DATED: September 20, 2018

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY