Pages 1 - 51

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

IN RE ROUNDUP PRODUCTS          )
LIABILITY LITIGATION            )   Case No. 16-md-02741
_____)

                                San Francisco, California
                                Monday, September 24, 2018
                                Beginning at 11:44 a.m.

**TRANSCRIPT OF PROCEEDINGS (PARTIAL)**

**TELEPHONIC APPEARANCES**:

For Plaintiffs:
                    WEITZ & LUXENBERG, P.C.
                    700 Broadway
                    New York, New York 10003
              BY:   **ROBIN L. GREENWALD, ESQ.**

                    ANDRUS ANDERSON LLP
                    7171 West Alaska Drive
                    Lakewood, Colorado 80226
              BY:   **AIMEE WAGSTAFF, ESQ.**

                    ANDRUS ANDERSON LLP
                    155 Montgomery Street, Suite 900
                    San Francisco, California 94104
              BY:   **LELAND H. BELEW, ESQ.**

                    BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
                    12100 Wilshire Boulevard, Suite 950
                    Los Angeles, California 90025
              BY:   **R. BRENT WISNER, ESQ.**
                    **MICHAEL L. BAUM, ESQ.**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RPR, CRR
               Official Reporter - U.S. District Court

**TELEPHONIC APPEARANCES (CONTINUED):**

For the Plaintiffs:

THE MILLER FIRM LLC
108 Railroad Avenue
Orange, Virginia  22960
BY: **MICHAEL J. MILLER, ESQ.**

LUNDY, LUNDY, SOILEAU AND SOUTH, LLP
501 Broad Street
Lake Charles, Louisiana 70601
BY: **HUNTER WILLIAM LUNDY, ESQ.**

MILLER DELLAFERA PLC
3420 Pump Road, PMB 404
Henrico, Virginia 23233
BY: **PETER A. MILLER, ESQ.**

LAW OFFICES OF TESFAYE TSADIK
1736 Franklin Street 10th Floor
Oakland, California 94612.
BY: **TESFAYE WOLDE TSADIK, ESQ.**

FULMER SILL PLLC
1101 N. Broadway Avenue, Suite 102
Oklahoma City, Oklahoma 73103
BY: **TARA T. TABATABAIE, ESQ.**

BAUM HEDLUND ARISTEI AND GOLDMAN
12100 Wilshire Boulevard, Suite 950
Los Angeles, California 90025
BY: **PEDRAM ESFANDIARY, ESQ.**

For Defendant:

HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
BY: **JOE G. HOLLINGSWORTH, ESQ.**
**ERIC G. LASKER, ESQ.**
**HEATHER ANN PIGMAN, ESQ.**
**JESSICA BOYLAND, ESQ.**

1   <u>Monday, September 24, 2018</u>

2                       **P-R-O-C-E-E-D-I-N-G-S**

3                           **---oOo---**

4        (Following is a partial Transcript of Proceedings,

5   containing the telephonic proceedings which were reported by

6   the official reporter beginning at 11:44 a.m.   FTR recording

7   transcribed separately.)

8             **THE COURT:**  -- 14 days in which they answer the series

9   of questions.

10        One is, you know, did you use Roundup in the Northern

11   District of California?

12        Two is, were you diagnosed and/or treated in the Northern

13   District of California?

14        Three is, do you have any other allegations about -- you

15   know, do you believe there's any other nexus between your case

16   and the Northern District of California?

17        And four is, would you consent?  And it may be you would

18   waive *Lexecon* or whatever.

19        It may be that the answer to that last question is

20   meaningless because Monsanto is not going to waive; right?  And

21   that's fine.  But why not have them just file something which

22   answers those four questions, and then we'll have a little more

23   information about whose cases could potentially be folded into

24   Group 1.

25             **MR. WISNER:**  Your Honor, this is Brent Wisner again.

1   And maybe this ship has already sailed since we've been saying

2   this repeatedly, but I don't believe *Lexecon* applies to

3   defendant.

4       I mean, if you read the *Lexecon* decision carefully it's

5   about the plaintiffs' choice of venue.  It has nothing to do

6   with the defendant's choice.  They have no constitutional right

7   to have a trial in the venue of their choice.  It's literally

8   the plaintiffs.

9       And my reading of *Lexecon*, and I believe this issue has

10  been briefed in various MDL --

11      **THE COURT:**  Hold on.  Then you can include that in

12  your letter that you're filing tomorrow.

13      **MR. WISNER:**  Thank you, Your Honor.

14      **THE COURT:**  That's certainly inconsistent with my

15  understanding of it.  But you're free to include that in your

16  letter that you're filing tomorrow.

17      **MR. WISNER:**  Thank you, Your Honor.

18      **THE COURT:**  Okay.  So, Mr. Lasker, what would be wrong

19  with just having the plaintiffs in Group 2 file something along

20  those lines within 14 days?

21      **MR. LASKER:**  That would be fine, Your Honor.  I do,

22  again, though -- if there are individuals within Group 2 who

23  assert venue in Northern District of California so that their

24  cases are going to be transferred out, we would like them

25  transferred out with a completed Fact Sheet, the known facts

1   provided for as well.

2       **THE COURT:**  I think that probably makes sense.  But,

3   in any event -- okay.  So we will -- can you-all -- can the

4   plaintiffs -- Ms. Wagstaff, as you propose, could you please

5   draft those four questions that would be posed?

6       **MS. WAGSTAFF:**  Yeah.  I'll do that right after we get

7   off the telephone conference.  And I will send them to

8   Mr. Lasker for his edit to our agreement.  And then we will

9   send it to you.

10      **THE COURT:**  Okay.  Why don't you file that -- send

11  that to me tomorrow as well.  Okay?

12      **MS. WAGSTAFF:**  Okay.  Thanks.

13      **THE COURT:**  So that will be due tomorrow.

14      Okay.  So -- and I think we will -- the draft order that I

15  put out this morning will -- I'll add this concept that we have

16  been discussing into that, into that order so that -- so that

17  the plaintiffs in Group 2 -- first of all, we tweak the order

18  to identify and define Group 1, 2, 3 and 4.  And we'll order

19  the plaintiffs in Group 2 to make this filing within 14 days of

20  the filing of the order regarding Fact Sheets.

21      So that's that.  What should we talk about next?  Should

22  we go through the Fact Sheet and see if there's anything else

23  to discuss?

24      **MR. LASKER:**  That will be fine, Your Honor.  On behalf

25  of the defendant, we only have one issue we'd like to raise

1    with the proposed defendant Fact Sheet.

2             **THE COURT:**  Okay.  Go ahead.

3             **MR. LASKER:**  Section IV B.

4             **THE COURT:**  Okay.

5             **MR. LASKER:**  And what we're concerned about is

6    probably that this has been (inaudible), is that we would not

7    cover general practitioners, family doctors, whoever provided

8    general healthcare.  And those are the professionals who

9    generally have, you know, sort of potential files who will have

10   mental history, that would reflect treatment by specialists,

11   and would allow us to be able to work backward with

12   information.

13        So what we would propose is that in section B, where it

14   says "Where you have received treatment over the last 25 years,

15   including cancer, including NHL, or any conditions or

16   procedures or listed above," that we add to that so that it

17   read "to any type of cancer, including NHL for general medical

18   care or any other conditions or features listed in the chart

19   directly above."

20        And then just so that there's no confusion because it

21   refers to conditions, procedures, or medication, we suggest

22   that the language in part B also be "conditions, procedures, or

23   medication."

24             **THE COURT:**  I didn't understand.  I had a hard time

25   understanding the last part of what you said.  But to the

1    extent you're saying we should also ask them to list their

2    primary care providers over the past 25 years, I think that

3    probably makes sense.  Might even want to have that in a

4    separate question just so it makes the question less confusing

5    and less compound.

6            **MR. LASKER:**  Right.  That makes sense.

7            **THE COURT:**  So personal medical history, A, could be

8    you know, list your primary care providers over the past 25

9    years.  B could, be please indicate whether your medical

10   history includes any of the following conditions.  And C could

11   be, to the best of your ability please list all healthcare

12   providers where you've received treatment for any of the above

13   conditions.

14           **MR. LASKER:**  Right.

15           **THE COURT:**  That -- I think that makes sense.  But

16   then you were saying something else about medications or

17   something that I didn't understand.

18           **MR. LASKER:**  Yeah.

19           **THE COURT:**  I mean I didn't properly hear whatever it

20   was you were trying to say.

21           **MR. LASKER:**  Okay.  The second -- what I was

22   indicating was that what is currently B is referring to

23   conditions or procedures listed in the chart directly above.

24   And the chart directly above has conditions, procedures, or

25   medication.

1          **THE COURT:**  Oh, okay.

2          **MR. LASKER:**  So "medication" to make it consistent.

3          **THE COURT:**  Okay.  That sounds fine.

4      Do the plaintiffs have any concerns about that change?

5          **MS. WAGSTAFF:**  Yes, that's fine, Your Honor, as long

6  as it's primary care providers rather than general medical

7  treating, because that's too big.  We're fine with that.

8          **THE COURT:**  Okay.  Okay.  So that's the -- that's

9  what -- and then anything else from the plaintiffs on the Fact

10  Sheet?

11          **MS. WAGSTAFF:**  No, Your Honor.  We have some comments

12  on the order but not on the Fact Sheet.  The Fact Sheet is

13  fine.

14          **THE COURT:**  Okay.  All right.  So then we'll make that

15  change to the Fact Sheet and that will be done.

16      And then, okay, so let's then turn to the order.  As I

17  mentioned, we'll sort of identify the groups of plaintiffs a

18  little more clearly than they're currently identified as Group

19  1, 2, 3 and 4.  We will add the concept of plaintiffs in Group

20  2 filing something about venue in 14 days.

21      And what else regarding the order?

22          **MS. GREENWALD:**  So, Your Honor, this is Robin

23  Greenwald.

24      In number 4 of your proposed order, when we spoke to

25  BrownGreer, we the plaintiffs, they said it would take them 7

to 10 days, no more than 14, to put the questionnaire -- the
plaintiffs actually didn't start into an online product because
they'll have drop-down menus, so they'll make it so it's in a
more suitable format for all parties, including the Court.

        **THE COURT:**  Right.  And you're going to say that we
should have the deadlines run from the time that the system is
up and running, fully up and running.  And I don't think that
that's necessary.  I think that people can spend those seven to
ten days before the system is up and running gathering
information.

        **MS. GREENWALD:**  Okay.

        **THE COURT:**  Anything else on the order?

        **MS. GREENWALD:**  Yes, yes.  In paragraph 7 --

        **THE COURT:**  Before you get to paragraph 7, I had a
question about paragraph 5.

        Paragraph 5 says, "Except as set forth herein, Counsel for
plaintiff, or each pro se plaintiff, shall be permitted to
review, search and download on MDL Centrality only those
materials submitted by that plaintiff and not materials
submitted by or relating to other plaintiffs."

        When I read that I wrote a comment, a question, because I
couldn't remember if later in the order it specifies that lead
counsel has access to all of it.

        If it doesn't -- later in the order, if it doesn't specify
that lead counsel has access to all of it, shouldn't it specify

 1  that?

 2          **MS. GREENWALD:**  Actually -- this is Robin Greenwald

 3  again -- we were going to mention that at the very end.

 4      Yes, we believe that needs to be added because otherwise

 5  it's very difficult for us to do our job if we don't know

 6  what's happening, whether things are being done on time.  We

 7  have no ability to remind people of upcoming dates and also

 8  just to know the pool of plaintiffs.  So we would ask that that

 9  be added.

10          **THE COURT:**  So I'll add that.  Why not just add that

11  in paragraph 5?  Why not just say, Counsel for each plaintiff

12  shall be permitted to view only their stuff; lead counsel shall

13  be permitted to view everything.

14          **MS. GREENWALD:**  That would be perfect.

15          **THE COURT:**  Okay.  So we'll add that.

16      And then were you going to say something about paragraph

17  7?

18          **MS. GREENWALD:**  Yes.  You asked a question in

19  paragraph 7, whether the plaintiff should be allowed to sign

20  the authorizations electronically.  And we believe yes because

21  that's how these usually work, these online questionnaires.

22          **THE COURT:**  Not the question -- the questionnaire we

23  already established --

24          **MS. GREENWALD:**  You're right.

25          **THE COURT:**  -- signed electronically.  We're talking

 1   about the authorizations here.

 2          **MS. GREENWALD:**  So sometimes these entities will take

 3   authorizations electronically; sometimes they won't.  And I

 4   think we can work with Monsanto.  They can probably tell us

 5   when it does not work.

 6          **THE COURT:**  But maybe in an abundance of caution --

 7          (Unreportable simultaneous colloquy.)

 8          **MS. GREENWALD:**  -- the data.

 9          **THE COURT:**  Maybe in an abundance of caution those

10   should just be signed.

11          **MR. LASKER:**  Your Honor, if I could, we certainly

12   agree with that, just add a delay otherwise.

13          Also, a practical piece of information, at least from what

14   we've understood from the vendor in this case, is that they

15   don't allow electronic signatures in any event.  Even for the

16   plaintiff Fact Sheet, the vendor requires original.  And

17   generally that has to be scanned and sent in and then also sent

18   in hard copy.

19          **THE COURT:**  Just the signature page?

20          **MR. LASKER:**  Yeah, the signature page has to be signed

21   originally, and scanned and then sent to the vendor, and send

22   us hard copies from what they told us.

23          **THE COURT:**  There is no way you can get the vendor to

24   make the leap to the 21st century on that?

25          **MR. LASKER:**  No.  They do a lot of these, Your Honor.

1    And I don't understand all the reasons why they're there.   We

2    asked them about that, and that's what we were told as to what

3    that procedure is and what they require.

4            **THE COURT:**   Okay.

5            **MS. WAGSTAFF:**   Your Honor, this is -- they didn't tell

6    us that.   And I have worked with BrownGreer in other cases.

7        So I think we need to clarify that, Eric.   I have not had

8    that in other cases.

9        (Unreportable simultaneous colloquy.)

10           **THE COURT:**   What I'm going to do in my order is I'm

11   just going to say that -- I'm going to express a preference for

12   electronic signatures to the extent the vendor is able to do

13   so, and then you-all can work that out.   Okay?

14           **MR. LASKER:**   That would be fine for the plaintiff Fact

15   Sheet.   For the authorization we would (inaudible).

16           **THE COURT:**   Right.   Okay.   That's fine.

17       Okay.   Anything else?

18           **MS. WAGSTAFF:**

19           **MS. GREENWALD:**   So our next issue was number 8.   I

20   have a couple more.

21       Number 8, we were wondering why the plaintiffs who didn't

22   have computers wouldn't have their Fact Sheet sent to their

23   attorneys, who would then upload the information rather than

24   BrownGreer.

25       Just because we're going to be working with the

1    plaintiffs, obviously, they're not just going to fill it out

2    and send it without us looking at them.  So it would make sense

3    if it came to us for the lawyers.  They would have the option.

4    In other cases I worked on we had an online questionnaire.  You

5    can choose to have the vendor upload it, but it usually costs

6    quite a bit more than if the plaintiffs' lawyer does it.  It

7    could be an option.

8            **THE COURT:**  Isn't that the way it's drafted now?

9            **MS. GREENWALD:**  It looks to me as though they would

10   provide the hard copy to the attorneys or BrownGreer, but

11   BrownGreer would actually upload it.

12       It says, "The hard copy must be submitted to BrownGreer by

13   the deadline specified in the order."  I think it's vague.  I

14   think it's vague.  I'm not sure.  I read, actually, that

15   BrownGreer was supposed to upload it.

16           **THE COURT:**  What paragraph?

17           **MS. GREENWALD:**  This is paragraph 8.  Paragraph 8.

18           **THE COURT:**  "Plaintiffs who do not have access to or

19   who are unable to use the computer may provide a hard copy of

20   the Fact Sheet either to their attorney, who must then submit

21   the Fact Sheet to BrownGreer, or to BrownGreer directly.  The

22   hard copy must be submitted to BrownGreer by the deadline

23   specified in this order."

24       So what you're saying is you want -- it's not clear that

25   this gives the attorney the opportunity to submit the

```
 1    information electronically?

 2            MS. GREENWALD:  Yes.

 3            THE COURT:  I see.

 4            MS. GREENWALD:  I understood that you wanted all the

 5    Fact Sheets to be electronic so that if there's a plaintiff,

 6    for example, who doesn't have a computer, that it would be the

 7    plaintiff's attorney's job to make sure that the information is

 8    transmitted from a paper copy onto an online questionnaire.

 9         Maybe I'm misreading.  We were having Internet problems,

10    so we just got this maybe 45 minutes before the hearing today.

11            THE COURT:  That's right.  But the plaintiffs -- the

12    plaintiff would still need to sign a hard -- if the plaintiff

13    is not using a computer, I assume they would need to sign a

14    hard copy Fact Sheet, so that we have a signed Fact Sheet from

15    the plaintiff.  And then the attorney would submit -- would --

16    could then transmit that information from the hard copy signed

17    Fact Sheet to the -- into the system.

18         Is that what you're envisioning?

19            MS. GREENWALD:  Yes, sir.  Yes, that's exactly right.

20            THE COURT:  That's fine.  If the language needs to be

21    tweaked to make that clear, I'll do that.

22            MS. GREENWALD:  Okay.

23         And then so one other just -- this is sort of overall, not

24    an actual paragraph.  But one aspect of this order on

25    plaintiffs who failed to submit any Fact Sheet on time, the one
```

provision we would ask that the Court consider is a mechanism
for a plaintiff's lawyer to inform the Court prior to the
deadline if that lawyer had the unique situation with a
plaintiff who is undergoing -- if there's a unique circumstance
that I can't envision right now, but a plaintiff who truly
can't make the deadline, if there could be an opportunity for a
plaintiff's lawyer to be able to make a submission before the
date and explain to the Court.

Maybe you'll never have one.  I don't know.  But just some
mechanism given the fact that there may be a plaintiff or two
here who is undergoing some treatment that really makes it
almost impossible to finalize all this information in a timely
fashion.

Again, it would be under --

**THE COURT:**  Well, why wouldn't it --

**MS. GREENWALD:**  -- (inaudible) order to show cause.

**THE COURT:**  Why wouldn't it just be baked into
paragraph 15?

In other words, paragraph 15 says that if the plaintiff
doesn't submit a Fact Sheet, Monsanto provides notice to lead
counsel and to the plaintiff's counsel, and gives seven days to
submit the Fact Sheet.  And then if plaintiff has not submitted
a completed Fact Sheet within those seven days, Monsanto may
move immediately to dismiss that plaintiff's case with
prejudice.

1          So presumably there's an opportunity to articulate this

2     issue with Monsanto, and Monsanto may offline agree to delay

3     its motion to dismiss.  If it doesn't, the plaintiff will have

4     an opportunity to explain what the unique circumstances are in

5     response to Monsanto's motion to dismiss.

6               **MS. GREENWALD:**  That would work too.  That's fine.

7               **THE COURT:**  Okay.  It seems to me that -- I don't

8     like -- I like to try to avoid over -- you know,

9     overcomplicating things with too much process.

10              **MS. GREENWALD:**  That's fair.  That works.

11         And then I think that, Ms. Wagstaff, I'm going to hand the

12    phone over to -- oh, great.  I'm sorry.

13         Number 18, I think that we're not certain we're reading

14    this correctly.  I just want to make sure that Monsanto

15    wouldn't have the right to have full-fledged discovery as to

16    all plaintiffs in the MDL right now unless those plaintiffs are

17    going to be in the trial pool.

18         I understand maintaining the reservation of rights.

19              **THE COURT:**  Right.

20              **MS. GREENWALD:**  This isn't waiving their rights.  But

21    I just want to make sure it's clear that this isn't an

22    invitation that we're going to get 850 -- all the plaintiffs

23    are going to get, very soon, interrogatories, document

24    requests, and other such discovery requests.

25         So we just wanted to have that clarification that this

would be not waiving rights down the road, but that right now

open discovery would only be for the trial plaintiff.

      **THE COURT:**  I assume that's Mr. Lasker's understanding

as well.  And we can maybe just say "as permitted by the Court

and the Federal Rules of Civil Procedure," just to make that a

little extra clear.

    Any problem with that, Mr. Lasker?

      **MR. LASKER:**  No, Your Honor.  That's fine.

      **THE COURT:**  And, by the way, we're now on the record

again.  We've been on the record again for about 10 minutes

now, I think.

    So we'll change that to "as permitted by the Court and the

Federal Rules of Civil Procedure."

    Is that okay?

      **MS. GREENWALD:**  That's fine with plaintiffs, Your

Honor.

      **THE COURT:**  Okay.  Anything else?

      **MS. WAGSTAFF:**  Okay.  This is Amy Wagstaff.  The last

one that I just wanted to seek clarification with the Court on

is obviously 19, the last paragraph.

    And this has been a discussion in all of the (inaudible).

Plaintiffs counsel obviously believes that the defendant gets

relevant information.

    I just want to make sure this order is not requiring

plaintiffs to go out and download -- hire a service to download

their social media and print it out if plaintiffs have been on

Facebook or something for -- I think Facebook has been around

for 15 years or something like that.  So to print that out

would be pretty laborious.

And also just recognizing to the Court that, you know,

while they would do their best to preserve the data, these

platforms often allow other people to post on them and remove

those posts, and so they can't control everything that is

preservable.

But I know my law firm, and I'm assuming every other law

firm has sent data preservation letters to their plaintiff.

And so while you we do have here (inaudible) statements of the

law and court rules, I just want to make sure that this isn't a

rule and order requiring plaintiffs to go out and download this

and hire a service to do that or print them out.

**THE COURT:**  I will be honest that this came from

Monsanto's proposed order.  And I hadn't given too much thought

to precisely what this requires of plaintiffs right now.

So, Mr. Lasker, if you want to address that.

**MR. LASKER:**  Sure.  I mean, obviously this is a much,

much bigger task for Monsanto preserving records than for

plaintiffs.  But the plaintiffs have filed lawsuits, and they

are under an obligation to preserve their records and

documents.

The order as written provides that it's an option for them

to do that.  And it doesn't -- doesn't dictate which means they use, subject to the Court's later determination if they didn't happen to preserve those records.

**THE COURT:**  Right.  I mean, so I'm sort of wondering, as I sit here, why -- why do we have this paragraph in this order about plaintiffs' Fact Sheets; right?

There are rules that govern document preservation in every lawsuit.  Those rules apply here obviously.  As Ms. Wagstaff said, I'm sure every plaintiff's lawyer has given their client instructions about document preservation.

This paragraph seems a little out of place here.  I mean, I'm obviously happy to entertain issuing an order regarding document preservation if need be, but -- and if Monsanto believes there's something specific that needs to be addressed. But I am kind of now scratching my head about why this is in this particular order, which is about plaintiffs' Fact Sheets and the procedure for filling them out and submitting them and all that.

**MR. LASKER:**  Our understanding of that -- I don't remember, frankly, the case management order on discovery for the MDL as a whole.  But this order strikes us as being the first order that is specific to the individual plaintiffs and their discovery obligations.

We have an order, I believe, that imposes that on Monsanto in the MDL.

1          **THE COURT:**  I'm -- sorry to cut you off, but I'm happy

2    to entertain action on the issue of document preservation if

3    it's necessary.

4          And so I'll let you go ahead and confer with the

5    plaintiffs about that.  And if you-all want to propose an order

6    regarding document preservation, or if you have a dispute

7    regarding that and you want to tee it up pursuant to our

8    process for resolving discovery disputes, you can do that.

9          But I'm going to take this paragraph out of this order

10   because I think it's just not germane to what we're talking

11   about right now.  So paragraph 19 will come out.

12         Anything else --

13         **MS. WAGSTAFF:**  Thank you, Your Honor.

14         **THE COURT:**  Anything else regarding the order?

15         **MR. LASKER:**  We do have one issue, Your Honor.

16         **THE COURT:**  Okay.

17         **MR. LASKER:**  This is paragraph 2.

18         **THE COURT:**  Okay.

19         **MR. LASKER:**  And in particular let me -- just to

20   provide the Court with context, the way that the collection of

21   medical records has been working to what we've seen in the

22   cases already is when -- in MDL (inaudible) is that the medical

23   records are collected and then they go to the vendor.

24         So the vendor actually has the collection in their system.

25   And then both parties have access to the medical records, equal

1   access at the same time.

2       So the provision here that has been added that we,

3   Monsanto, shall provide plaintiffs' counsel with records,

4   that's not necessary in this case.  The plaintiffs' lawyers

5   have that access to the third-party vendor.

6       And so we can ask.  We can have -- in lieu of this last

7   sentence I suppose we can have a sentence stating that, you

8   know, medical records obtained through authorization shall

9   reside with a third-party vendor and be accessible to both

10  parties.

11          THE COURT:  Sounds fine to me.  As a practical matter,

12  there's not much difference there.

13          MS. WAGSTAFF:  Your Honor --

14      (Unreportable simultaneous colloquy.)

15          THE COURT:  Sorry, Mr. Lasker, go ahead.

16          MR. LASKER:  Yes.  This suggests that Monsanto had an

17  obligation to provide, you know, send documents, send records

18  to plaintiffs' counsel; that we have to do something beyond

19  just seek them through medical authorization.

20      The way the process works (inaudible) authorization go

21  straight to the vendor.  Monsanto doesn't have to do anything

22  to make them available for plaintiff.  They are available.

23  That's the way the system is set up.

24          THE COURT:  Right.  You're talking now about the

25  documents that are submitted by the medical provider, or

```
 1   whoever, in response to the authorization.

 2        You're saying that those documents will go to the vendor

 3   and will -- will be put into the system so the plaintiffs will

 4   automatically have access to it that way.  Is that what you're

 5   saying?

 6            MR. LASKER:  Right.  Correct.

 7            MS. WAGSTAFF:  Your Honor --

 8            THE COURT:  Go ahead.

 9            MS. WAGSTAFF:  Before you go off that point, there's a

10   very important part Mr. Lasker is leaving out that involves

11   that.

12        Plaintiffs' counsel is required to pay -- or to send to

13   Monsanto our documents that we have.  And the part that

14   Mr. Lasker is leaving out is that that medical vendor then

15   charges plaintiff for those records.  And so often plaintiff

16   will have to pay thousands of dollars for these records when

17   Monsanto has them electronically and could then send them to

18   us.

19        So while, yes, they have been -- we do have access through

20   the vendor, it's not as if we get them and just have them

21   readily available.  We have to pay for those records from that

22   vendor when Monsanto could just electronically send them to us

23   as we are sending them to Monsanto.

24            MR. LASKER:  Well, I mean, my firm doesn't get the

25   records for free.  We also have to pay for them.  I'm not sure
```

```
 1    for how that (inaudible) plaintiffs that's a different
 2    situation.
 3            THE COURT:  Mr. Lasker, I can't understand you.  I'm
 4    not understanding you.
 5            MR. LASKER:  I'm sorry.  Monsanto also pays the
 6    vendor.
 7            MS. WAGSTAFF:  I guess my point is, is that --
 8    twofold.  One, when Monsanto has those electronically, I don't
 9    think the plaintiffs should be charged to access something that
10    they have about the plaintiff.
11        Similar to the records that us plaintiffs attorneys
12    have -- have retrieved either prior to filing the lawsuit or
13    after filing the lawsuit.  And we have had to pay for those.
14    And we just give them to Monsanto.  We do not charge Monsanto
15    for them.
16        And so we think what's fair is fair and that Monsanto
17    should return the records that they have gathered, to us.  And
18    we should not be charged for those and the plaintiff should not
19    be charged for those.  We think there's inequity there.
20            THE COURT:  There's a piece of information that I
21    think I'm probably missing.
22        Are you saying that -- so sounds like what Mr. Lasker is
23    saying is that these documents, you know, the -- in response to
24    receiving the authorization, the medical providers provide the
25    records to the vendor.
```

1      The vendor uploads them, and then -- and then, as a result

2  of that, Monsanto and the plaintiffs have access to the records

3  through the vendor.

4      Is that what you're saying, Mr. Lasker?

5          **MR. LASKER:**  Correct.

6          **THE COURT:**  And --

7          **MS. WAGSTAFF:**  So --

8          **THE COURT:**  And does the -- so is the problem that

9  whenever somebody new accesses the records they have to pay the

10 vendor more money?

11         **MS. WAGSTAFF:**  Yes, Your Honor.

12     So the Hollingsworth law firm has chosen to hire a vendor,

13 which is common, to collect records.  And because of that they

14 pay for that vendor's services.  And then we, to get those

15 records, are now being forced to use that vendor and pay for

16 those vendor services as well.

17     For example, my law firm, when we collect records, we have

18 people in my office who send out authorizations so we don't pay

19 for medical record vendors and so that expense is not passed

20 through to our clients.

21     In this circumstance, what Mr. Lasker is talking about is

22 that if we -- you know, he's saying that it's going to be

23 difficult for Monsanto to send us the records, but really it's

24 not.  They could send them in a click of a button.  And so I

25 think that that's sort of an illusory burden on Monsanto.

1     I think the financial burden on plaintiffs to have to pay

2     for Monsanto's medical record vendor outweighs any burden

3     Monsanto has to send us the electronic records.

4          **MR. LASKER:**  Just so the record is clear, it's not our

5     medical records.  It's the medical records necessary to the

6     case.

7     We are paying the vendor.  I think that counsel is asking

8     that we subsidize them in the collection of these documents.

9     We got a medical vendor.  The medical vendor sends out the

10    authorization and receives the documents.

11         **THE COURT:**  Okay.

12         **MR. LASKER:**  (Inaudible)

13         **THE COURT:**  I understand the issue and will ponder it

14    and make a final decision before issuing this order.

15         **MS. WAGSTAFF:**  Thank you, Your Honor.

16         **THE COURT:**  Anything else?

17         **MR. LASKER:**  Your Honor, no.

18         **THE COURT:**  So we've gotten through the Fact Sheet and

19    we've gotten through my draft order regarding the Fact Sheet.

20    Now, the schedule for the bellwether group.  Honestly, I

21    didn't look -- so each side presented a schedule.  I didn't do

22    a side-by-side comparison to figure out how -- the extent to

23    which these deadlines differed from each side.

24    Do you-all -- have you-all done any meeting and conferring

25    since then and agreeing upon dates and whatnot?

1          **MS. WAGSTAFF:**  Your Honor, I have a side-by-side

2    comparison on an Excel spreadsheet that I could email to the

3    Court and Mr. Lasker right now.  We have not had further

4    communications.

5          **THE COURT:**  I don't know if we'll need it, but go

6    ahead and email it right now just in case we do.

7          What I would propose is that we create a schedule for

8    these -- these four plaintiffs.  There are now four plaintiffs.

9    We're assuming there will be three.  But we create a schedule

10   for these four plaintiffs which culminates in all of them going

11   to trial on February 25th.  Okay.

12         Now, we know as a practical matter that they will not all

13   go to trial on February 25th.  But let's get them all ready for

14   trial by February 25th.

15         And at a later time we can decide who -- if there are

16   still more than one plaintiff left from that group, we can

17   decide who will actually go to trial on the 25th and who will

18   go to trial on May 5th.  But let's -- I want to put them all on

19   a schedule for trial on February 25th.

20         So I don't think it's necessary to adopt a separate

21   schedule for a May -- for a May trial.

22         Looks like you have -- is it May 6th?  Have I been

23   misspeaking when I said May 5th?

24         (Unreportable simultaneous colloquy.)

25         **THE COURT:**  Yeah, Kristen, is telling me it's May 6th.

 1          In any event, I want to adopt only one schedule for these

 2     four plaintiffs.

 3          (Inaudible)

 4          **THE COURT:**  What?  Did somebody say something?  Okay.

 5          So, I mean, some of these dates I don't care very much

 6     about; others I care a lot about.

 7          Maybe there's one conceptual issue I should raise with you

 8     about the schedule.  I want to ask you what you-all think about

 9     having the hearings -- having the summary judgment slash

10     *Daubert* hearings kind of in conjunction with the pretrial

11     conference.  Do that all at the same time.  You know, two or

12     three weeks before the trial date.

13          **MR. LASKER:**  Your Honor, this is Eric Lasker.

14          I think the timing of that is fine.  We do propose in our

15     schedule that we set aside three days for a *Daubert* evidentiary

16     hearing so that Your Honor can hear testimony from the

17     non-general causation experts and make the same *Daubert*

18     analysis that -- or the same opportunity to make a *Daubert*

19     analysis that the Court made on general causation.

20          So our schedule does have a proposed time period in early

21     February, February 4th, to set for a *Daubert* evidentiary

22     hearing and oral argument and (inaudible) add the pretrial --

23     the pretrial conference issues to that here.

24          **THE COURT:**  Okay.  Yeah.  Or, you know, we could -- we

25     could do -- we could do that during -- we could do the *Daubert*

1   evidentiary hearings and summary judgment oral argument around

2   that time, February 4th through the 6th, and then do the

3   pretrial conference the following week.  That would also be

4   fine.  It might make sense to break it up a little bit in that

5   way.

6           **MR. LASKER:**  That would be fine, Your Honor.

7           **THE COURT:**  All right.  So what if we -- what if we --

8   I'm going to propose we do it this way:  Let's -- let's adopt

9   the key dates, at least the key dates from my perspective, and

10  then we can work back and fill in the blanks.

11       So trial for these four plaintiffs will be the 25th of

12  February.  The final pretrial conference will be a week or two

13  before then.

14       Kristen?

15          **THE CLERK:**  Wednesday, February 13th.

16          **THE COURT:**  Wednesday, February 13th sounds good.  I

17  think we should probably do it at 10:30.  So 10:30 a.m.,

18  February 13th, will be the final pretrial conference.

19       And then the week of the 4th -- pull out my calendar here.

20       (The Court confers off the record with the courtroom

21  deputy.)

22          **THE COURT:**  So I think that we should do -- I think

23  that we should do -- President's Day is the 18th.  So I think

24  we should do our pretrial conference -- okay.  Jury selection.

25  I think we probably should do jury selection on the 20th;

 1    right, Kristen?

 2              **THE CLERK:**  Yes.

 3              **THE COURT:**  So we'll do jury selection on the 20th.

 4    Let's do the final pretrial conference -- Kristen, let's block

 5    the 14th.  Let's block the civil law and motion calendar that

 6    day.  And let's do the final pretrial conference that day.

 7              **MS. WAGSTAFF:**  Your Honor, I'm having trouble.  Did

 8    you say the final pretrial is going to be on February 13th or

 9    14th?

10              **THE COURT:**  What I'm proposing is the 14th, because

11    I'm going to have a trial wrapping up.  And I want to minimize

12    the risk of bleeding into that trial.

13         We'll do the 14th, at 10:00 a.m.  And we'll have no civil

14    law and motion calendar that day.

15         Now, I don't know.  Maybe we're just going to need to move

16    that, don't you think?

17         (Discussion held off the record.)

18              **THE COURT:**  Okay.  Scratch that.

19         So the pretrial conference will be on the 13th, at 10:30.

20    And the *Daubert* slash summary judgment week will be the week of

21    the 4th.  Dates to be determined at a later time.

22         We'll block out the week of the 4th for -- actually, why

23    don't we schedule it right now?  Why don't we schedule it for

24    *Daubert* slash -- *Daubert* hearings would be the 4th and the 6th.

25    Right?

```
 1            THE CLERK:  And then block that Thursday.

 2            THE COURT:  And then Thursday the 7th could also be

 3    additional evidentiary hearings and argument on the afternoon,

 4    on Thursday afternoon.

 5        So we'll block out the 4th, the 6th, and the 7th for

 6    Daubert hearings and oral argument.  And we'll have no civil

 7    law and motion calendar on the 7th.

 8        Did everybody get that?

 9            MS. WAGSTAFF:  Got it, Your Honor.

10            THE COURT:  Okay.  Now, I don't care that much about

11    any of the other dates.  So those other dates -- the only

12    thing -- the only other thing, I guess, I wanted to say is

13    that, at least looking at Monsanto's calendar -- proposed

14    schedule, it looks like Monsanto is contemplating that we would

15    select which case would go to trial on November 27th.

16        Is that right, Mr. Lasker?  Or somewhere thereabouts.

17        Are you still there, Mr. Lasker?

18            MR. LASKER:  I'm sorry, I put you on mute.

19        Yes, correct.

20            THE COURT:  So what I was contemplating is that we

21    would not make that decision until much later.  Because we say,

22    all right, if we get together on November 27th and we say,

23    okay, this case is going to trial, such and such plaintiff is

24    going to trial on February 25th, then we've -- you know, we've

25    set a trial date, we've cleared the decks, and then all the
```

sudden that plaintiff's case goes away and we're not going to

trial, all of a sudden we're not going to trial on the 25th.

So I would envision kind of not deciding whose case goes

to trial until much later, and probably *Daubert* week.

MR. LASKER:  I'm not -- well, I don't think we had

necessarily envisioned that we would decide finally which

trial -- which case plaintiff's lawyer is going to trial, but

to have some maybe sequence or something like that.  So go one,

two, three.  If one drops out, person two, something along

those lines.

THE COURT:  Okay.  That sounds good.  And then I also

want -- I want to schedule a time for deciding who -- who from

Group 1 we could possibly -- excuse me, who from Group 2 we

could possibly fold into Group 1 and schedule for trial on

May 6th.

So how should we incorporate that into this schedule?

Should that be -- should it be around November when we're

making those decisions, too, or should it be earlier?

MR. LASKER:  Well, we would need -- I guess it would

depend in part on the timing -- I was trying to think.  Under

the Court's procedure, the Group 2 cases would be transferred

out and then transferred back in.  I just don't know what the

timing would be on that.

MS. WAGSTAFF:  Your Honor, this is Amy Wagstaff.

I just want to do a little side note.  I sent you the

```
 1    spreadsheet.  I sent a draft by accident the first time, so I
 2    was trying to do it and participate in the conference.  So
 3    please don't open the first spreadsheet I sent.  I just
 4    re-sent the right version.
 5              THE COURT:  Okay.
 6              MS. WAGSTAFF:  The first version had some commentary
 7    on there that is not offensive but probably not appropriate to
 8    send to the Court.  If you could not open that one --
 9              THE COURT:  No problem.
10              MR. LASKER:  I will delete it.
11              MS. WAGSTAFF:  Thank you, Mr. Lasker.
12         Secondly, plaintiffs reserve the right to ask for a
13    multi-plaintiffs trial.  I think we've been very clear about
14    that.
15              THE COURT:  I didn't hear.  I'm sorry, I didn't --
16         (Unreportable simultaneous colloquy.)
17              MS. WAGSTAFF:  -- moving the Court to try all three
18    together.
19              THE COURT:  I'm sorry.  You said "plaintiffs reserve
20    the right to," and I didn't hear what you said after that.
21              MS. WAGSTAFF:  Okay.  Request a multi-plaintiffs
22    trial.  And at the appropriate time we will be filing a motion
23    to try three cases together.
24              THE COURT:  Okay.  Yeah.  I think I mentioned that I'm
25    sort of sceptical that that's a good idea.  But I'm happy to
```

```
1    entertain a motion on it.
2         And so when should we get together to figure out -- to
3    sort out these -- to sort out the -- to figure out whether any
4    of the plaintiffs from Group 2 can be moved into Group 1?
5    We'll have a filing from the plaintiffs 14 days from my filing
6    of the order regarding the Fact Sheets.
7         Does Monsanto want to file any sort of written response on
8    that?
9              MR. LASKER:  No, I don't -- I don't believe
10   (inaudible) obviously we're not going to know anything about
11   (inaudible).
12        I mean, as I understand it, we'd get that, we'd get the
13   (inaudible) doc sheets, and they would get sent back to their
14   home for extension.
15        We could schedule something sometime mid November,
16   perhaps, to see where we are.  I just don't know what we'll
17   have back from those other courts at that time.
18             THE COURT:  Okay.  So --
19        (Unreportable simultaneous colloquy.)
20             THE COURT:  -- in your schedule you proposed a CMC to
21   discuss trial case selection on November 27th.
22             MR. LASKER:  Right.
23             THE COURT:  I would suggest maybe we have that meeting
24   a little bit earlier and we include --
25             MR. LASKER:  Okay.
```

1          **THE COURT:**  You know, we include which -- what order

2     that we're going to put the Group 1 plaintiffs in.  And we also

3     include a discussion of how -- how, if at all, to fold

4     plaintiffs from Group 2 into Group 1 for trial on May 6th.

5          Does that make sense?

6          **MS. WAGSTAFF:**  So, Your Honor, if we are to get you

7     the questions for your order tomorrow, which is Tuesday the

8     25th, and let's say that you enter the order this week, by

9     Friday at the latest, that means that the responses would be

10    due October 12th, which is a Friday, and give us a week to

11    collect the responses.

12         Because, as we discussed, they're going to be coming in in

13    60 difference or 70 different filings that we'll need to

14    download and digest into one spreadsheet.

15         I think the only response that Monsanto would need to file

16    is that the plaintiffs had no nexus to the Northern District

17    but still consented to try their cases there.  Then, you know,

18    under some theory of *Lexecon* Monsanto would need to consent to

19    that as well.

20         **THE COURT:**  Right.  But -- and Monsanto may also want

21    to do discovery on some of the assertions contained in the

22    responses that will be filed by the plaintiffs regarding venue;

23    right?

24         **MS. WAGSTAFF:**  Well, presumably that's what the

25    plaintiffs' Fact Sheets are for.

1        And as Your Honor put in, in your order, that these are

2   considered, you know, interrogatories, so they are -- they will

3   get discovery on them.  And worse case scenario we can -- you

4   know, these cases could be remanded once they're worked out if

5   it's discovered -- I mean, they could even -- I guess under

6   some theories they could even challenge venue for these three

7   that are set for trial right now.

8        **THE COURT:**  Right.

9        **MR. LASKER:**  So, your Honor, if I understand correctly

10  (inaudible) we would have the plaintiffs' Fact Sheets.  Those

11  cases would be remanded back to their original -- depending on

12  where they were filed.  And then, at that point, we would be

13  seeking venue discovery from the judges in those cases, so that

14  those judges can decide venue.

15       **THE COURT:**  Yeah.  Or maybe we would do venue

16  discovery on those cases here.

17       **MR. LASKER:**  And then send it back.

18       **THE COURT:**  Yeah.

19       **MR. LASKER:**  Right.  For the Court to decides that.

20  But we would need to have discovery either way, in either case.

21       **MS. WAGSTAFF:**  And, Your Honor, I guess, plaintiffs

22  have thought that the plaintiff Fact Sheet is venue discovery.

23  We are now doing written discovery interrogatory responses that

24  have been highly negotiated by the Court, Monsanto, and

25  plaintiffs' counsel.  We're going to be signing them under

1  oath, describing their nexus.

2      **THE COURT:**  I understand.  But it may be that the

3  plaintiffs want to test -- I mean, that Monsanto wants to test

4  some of those factual assertions.  And it may be appropriate

5  for them to do that.

6      So what I would propose is that we try to get back

7  together earlier than the 27th.  I would propose that we get

8  back together more like, I don't know, late October or

9  something, to -- just to talk about this issue and to talk

10  about what is, you know, next steps on this issue.  And also,

11  you know, any other issues that anybody wants to talk about.

12      **MR. LASKER:**  Your Honor, Eric Lasker.

13      We're fine with having a hearing then to see where we are.

14  I think under both parties' schedules, given the time it takes

15  after we get the authorizations in our proposal we have

16  particularly with regard to the first four plaintiffs that we

17  have those authorizations by October 4th so (inaudible)

18  quickly.

19      So given the time it does take to get the medical records,

20  we will not have had the opportunity to conduct fact discovery

21  of the plaintiffs and depositions by late October.

22      Our proposal has fact discovery going from October 22nd to

23  November 21st.  I don't remember now what plaintiffs' proposal

24  is, but somewhat similar, I think.

25      **THE COURT:**  Right.  I understand --

```
 1          (Unreportable simultaneous colloquy.)

 2          THE COURT:  That's fine.

 3      We can have a case management conference on November 27th,

 4  or thereabouts, as you propose.  But I think we should also

 5  have one in late October to talk about -- to continue --

 6  primarily to continue this discussion about moving Group 2

 7  plaintiffs into Group 1, and also, of course, discuss anything

 8  else that you all want to discuss.

 9          MR. LASKER:  That's fine.

10          THE COURT:  And that could be the week of

11  October 29th.  Let's make that in person, okay.

12      So what I -- what I would propose, if this is okay with

13  you-all, is we -- we figured out when our trial is going to be

14  or our trials are going to be.  We figured out the pretrial

15  conference.  We figured out jury selection.  We figured out

16  Daubert slash summary judgment.  We've concluded that we're

17  going to have a case management conference the week of

18  October 29th and the week of November 26th.

19      We're in trial that week, so we may need to tweak the date

20  or the time somewhat.  But what I was going to suggest is,

21  beyond that can you-all just get together and put together a

22  schedule and submit it to us?  Or are there any other

23  significant issues or differences that you need me to help you

24  resolve on this call?

25          MR. LASKER:  The only one I believe on our side, Your
```

1   Honor, is we do have the request for completed and executed

2   authorizations for the first four plaintiffs by October 4th.

3   (Inaudible) would still be due on October 22nd.

4       But for us to be able to start that process as quickly as

5   possible gathering the medical records, if we could have

6   their -- the due dates for the authorizations for those four

7   plaintiffs would be October 4th, that would be very helpful.

8       **THE COURT:**  Yeah, I don't see why we should not have

9   that.

10      Any objection from the plaintiffs?

11      **MS. WAGSTAFF:**  We have no objection, Your Honor.

12      **THE COURT:**  Okay.  So this order that you're going to

13  put together, this schedule you're going to put together is a

14  schedule for Group 1; right?  It's a trial schedule for Group

15  1.

16      And you can include dates that we just discussed.  You can

17  include that authorizations are due by October 4th.  And then

18  you can work together and hammer out the remaining dates to the

19  extent anything else needs to be hammered out, and you can

20  submit that to me tomorrow.

21      Is there anything else that you need help from me on, any

22  differences that you need help resolving, or anything like

23  that?

24      **MR. LASKER:**  Not from Monsanto's side, no.

25      **MS. WAGSTAFF:**  I can't think of anything with respect

1    to the dates right now.  We literally didn't even get a chance

2    to meet and confer, really, before filing this.  So it would be

3    helpful to have time to do that.

4          **THE COURT:**  Okay.  Why don't you submit a stipulated

5    schedule for Group 1, including all the dates that we've just

6    discussed and any other dates that you want to discuss, that

7    you want to set.  And I'll presumably sign that.

8       Might tweak it a little bit.  Might tweak the times and

9    might tweak a date here and there to fit our schedule.

10         **MS. WAGSTAFF:**  Your Honor, I don't know if you just

11    said "tomorrow."  But I'm actually in Aspen, Colorado right

12    now, hosting a -- I'm the sole host of a meeting of 200 lawyers

13    all day -- the rest of today and tomorrow.  And this is sort of

14    my project.  If we could maybe do it and submit it to you by

15    Thursday, that would be great.

16         **THE COURT:**  Sure.

17         **MS. WAGSTAFF:**  And I don't think there's going to be

18    any prejudice by waiting two days.

19       Okay.  Thank you.

20         **THE COURT:**  Thursday sounds fine.

21       Okay.  Is there anything else for us to discuss today?  I

22    guess there was the defendant's Fact Sheet.  Is there anything

23    else, other than that, to discuss?

24        (Unreportable simultaneous colloquy.)

25         **THE COURT:**  Sorry, you were both talking.  Anything

1    else from the plaintiffs?

2         MR. WISNER:  Your Honor, this is Mark Wisner.

3         A quick request.  The letter brief you requested for

4    tomorrow, would it be okay if we got it to you Wednesday?  I

5    have a similar schedule issue.  I'm flying out to St. Louis for

6    a deposition today, and I don't really have time to prepare

7    that by tomorrow.

8         THE COURT:  Sure.  You can have it filed by Wednesday,

9    and Monsanto's response can be Thursday.

10        MR. WISNER:  Thank you, Your Honor.

11        THE COURT:  Okay.  Let me look at this Fact Sheet

12   issue.  Give me a second here.

13        So I have a clarification question on the issue of the

14   defendant's Fact Sheet.  When you're asking for a defendant's

15   Fact Sheet are you asking for information from the defendant

16   regarding a particular plaintiff?  Or are you asking for

17   general information from the defendant?

18        MS. WAGSTAFF:  Your Honor, we are asking for

19   information on -- as it relates to a particular plaintiff.  And

20   the --

21        THE COURT:  Okay.  So the only -- the purpose --

22        (Unreportable simultaneous colloquy.)

23        MS. WAGSTAFF:  -- Exhibit B.

24        THE COURT:  Okay.  Yeah.  I haven't looked at the

25   exhibit.  I just looked at your description of it.  But the

purpose of it is to get information from the defendant that is specific to the particular plaintiff?

  **MS. WAGSTAFF:**  That's correct.  And defendants actually (inaudible) are fairly common in consolidated proceedings.

  And if you look at the Fact Sheet, it is specific information that relates to the Roundup formulation used by the plaintiffs; the ingredients of that formulation; the labeling that was used with that plaintiff; the sales representatives or managers that were used; some of the distribution channels.

  And it's information that we believe we need as leadership in the MDL -- especially in light of Your Honor's desire to complete all of this case-specific discovery here in this MDL -- to tally that up and give information back to the plaintiffs about their case.

  And we can tailor our liability discovery based on the composition of the MDL.  And it will help Your Honor make discovery rulings as well.

  And it's triggered off of the service of the PSF.  And we could also do this through MDL (inaudible) as well.

  **THE COURT:**  Okay.  So I don't know that the best thing for me to look at is the actual Fact Sheet you're proposing or your description of the kind of information you want, which is in your case management statement.

  At the moment, I'm looking at the case management

 1   statement.  But adjustments to formulations -- so item A, as

 2   you describe it in the case management statement, is Roundup

 3   product formulations, adjustments to formulations, and then

 4   surfactants that are used.

 5        I didn't hear anything about different formulations

 6   mattering, or surfactants mattering at the general causation

 7   phase.  I was sort of expecting to hear that.  I thought that

 8   the plaintiffs had kind of previewed that a little bit.  But I

 9   didn't hear anything about that.  Or at least I don't recall

10   hearing anything about that.

11        Is there going to be anything about that at all in these

12   cases?  I mean, so far, as far as I can tell in this case, and

13   I think as far as I can tell in -- from the trial that happened

14   across the street, although I may have missed something in the

15   reports on that trial, I didn't see anything about surfactants

16   or how a particular product was formulated.

17        Am I wrong about that?

18        **MS. WAGSTAFF:**  This is Amy Wagstaff.

19        Yes.  I don't know if you're wrong about that, but

20   surfactants and the ingredients of a particular type of Roundup

21   that was used will be brought up in the trials.

22        **THE COURT:**  Was that an issue --

23        **MS. WAGSTAFF:**  Mr. Wisner is on the phone.  He was

24   co-lead counsel for that trial.  And he can tell you the role

25   that that played in the Johnson trial, if you would like.

1      We previously -- if you recall, Your Honor made some

2  rulings on the discovery we could get in the general causation

3  phase.  And we motioned to get the custodial files of people

4  that were in charge of surfactants or POEAs.

5      And we were not able to convince Your Honor that that was

6  relevant to general causation.  And so we have tried -- we have

7  mined the documents we have, and we have defined a bigger role

8  every day in the formation of our trial.  And it plays a role

9  in specific causation of a trial, and it plays a role in what

10  our experts want to say when they talk about, you know, how

11  this particular formulation caused this in the plaintiffs.  And

12  it's certainly being discovered pretty heavily in St. Louis.

13  And I believe Mr. Wisner is going to lead (inaudible) into that

14  discovery.

15      But if Mr. Wisner has anything to add, I invite you to

16  please speak up.

17      **THE COURT:**  Hold on a second.  I think the answer here

18  may be that I may not be fully prepared to address the issue of

19  the defendant's Fact Sheet yet.

20      I will tell you that I'm fully amenable to the idea of

21  requiring Monsanto to submit Fact Sheets that are specific to

22  individual plaintiffs to make this process easier.  But I'm not

23  sure -- so we're meeting again.  We're going to meet again in

24  the last week of October.

25      Could we -- could we hammer out the defendant's Fact Sheet

```
 1    at that time?

 2          MR. LASKER:  That would be fine, Your Honor.  We do

 3    have, obviously, many issues we raised with this, but if we're

 4    going to do it the end of October we can meet and confer on

 5    those.

 6          THE COURT:  I mean, I will tell you that, you know, my

 7    pretty strong inclination is that, you know, for each -- for

 8    each plaintiff let's err on the side of caution and require

 9    Monsanto to submit information in a Fact Sheet.

10       It's not clear to me at the end of the day whether all of

11    this stuff that the plaintiffs want will be relevant in trial,

12    but I think given the accelerated schedule we're on, you know,

13    at least for Groups 1 and 2, you know, certainly for Group 1

14    and quite possibly for Group 2, as well, I think -- I think it

15    would be worth -- very much worth doing.

16       And, by the way, if we're talking about Groups 1 and 2,

17    and we're talking about exposure in California and residency in

18    California, I assume the information that Monsanto will be

19    providing in these Fact Sheets will overlap a great deal --

20          MR. LASKER:  I think --

21          THE COURT:  -- on marketing materials and contact with

22    physicians and stuff like that.  A lot of it would be cutting

23    and pasting, I assume.

24          MS. WAGSTAFF:  Your Honor --

25          (Unreportable simultaneous colloquy.)
```

1          **MR. LASKER:**  I'm sorry.

2      We had proposed the schedule of discovery against

3  Monsanto.  And I believe that that -- some of the issues that

4  are being raised in the context of the defendant's Fact Sheet

5  would be crosscutting as opposed to individual -- each

6  individual plaintiff obviously (inaudible) formulation.

7          There are (inaudible) formulations, (inaudible) labels.

8  We will have produced all those documents to plaintiff in

9  general discovery.

10          **THE COURT:**  What's the problem with --

11          (Unreportable simultaneous colloquy.)

12          **THE COURT:**  It's essentially -- I mean, you're

13  essentially being asked to collate it; right?

14          **MR. LASKER:**  I suppose part of the problem we have --

15  and this is something that we can work on as individual cases

16  go to trial.

17          But a lot of information that, for example, in St. Louis

18  city, where we have plaintiff's Fact Sheet, and then we have

19  discovery of the individual plaintiff, it's really the

20  deposition of the individual plaintiff that we get the

21  information that would even allow us to respond.  Because their

22  testimony often differs from their Fact Sheet, for example, as

23  far as what formulations they used, when exactly they used it.

24          We certainly agree there would be part of discovery going

25  up to trial to get -- I'm not going to speak specifically to

each of these requests, but to have discovery regarding

products used and labeling, and what not.  And we think that's

appropriate.

          And so we're happy to talk about that at the --

          **THE COURT:**  I mean, if you can come up with a way to

provide, you know, a comprehensive document that, you know, for

the -- say, for the State of California or something, that

identifies all your communications with physicians and all your

marketing materials and all the different formulations and, you

know, labels them by date or something like that, in lieu of

individual Fact Sheets, maybe that's fine.

          But it seems to me that the kind of information they are

requesting is potentially relevant.  And at this stage I would

be reluctant not to allow them to get it in some usable form.

          But responding to what you're saying about -- you know,

about the problems that you might run into with individual

plaintiffs' Fact Sheets and variations between what's in their

Fact Sheet and, you know, their deposition testimony, or

whatever, I mean, it strikes me that you might be able to put

together one comprehensive document which identifies all the

formulations, all the marketing materials, all the contacts

with physicians in California or, you know, something along

those lines that might accomplish the same goal.

          So why don't you all work on that, and that will be

another topic for us to discuss at the next case management

1   conference.

2        So at the next -- you should be prepared to come away with

3   a -- from the next case management conference with a Fact Sheet

4   that can be -- that is near final.

5        **MR. LASKER:**  (Inaudible), Your Honor.  Hopefully so

6   that you're aware of it (inaudible) next month, we have already

7   produced labels and formulations, master formulation documents

8   for all requests. (Inaudible) certified.

9        **THE COURT:**  Yeah, but I think there's --

10       (Unreportable simultaneous colloquy.)

11       **THE COURT:**  But I think there's value in sifting

12   through that stuff and attaching it, figuring out a way to

13   easily attach it to particular plaintiffs.

14       Whether that is through one master document or individual

15   Fact Sheets for particular plaintiffs, I'm not sure.  But I

16   think that Monsanto -- I am going to require Monsanto to

17   collate that information in some way.

18       **MR. LASKER:**  We can discuss that, Your Honor.

19       Another issue, so you're aware, is we don't have -- this

20   is not like a pharma case, so we're not having communications

21   with medical doctors, don't have sales representatives who are

22   visiting those doctors.  And so we can talk further, as well,

23   with plaintiffs' counsel.

24       There are, in some cases, although it's pretty rare -- and

25   did happen in the case I was trying in San Francisco this

```
 1    summer -- that individual plaintiffs might contact Monsanto

 2    through one of many different means.

 3         And so we talked with plaintiffs about, you know, if a

 4    plaintiff has contacted Monsanto and lets us know, then we can

 5    have the possibility to try to track that down.  But this is

 6    not a pharmaceutical case where you have --

 7              THE COURT:  Right.

 8         MR. LASKER:  -- the standard means of communicating

 9    with Monsanto.  They could have called any different number of

10    entities to try to reach out to Monsanto.

11         But we can work that out with plaintiffs.

12              THE COURT:  Yeah.

13         (Unreportable simultaneous colloquy.)

14              THE COURT:  That definitely makes sense to me.  And I

15    was -- I was assuming that there would be very few instances

16    where plaintiffs reached out to Monsanto in response to some

17    sort of event in the way that Mr. Johnson did.

18         And so that should be accounted for in putting together

19    this process for defendant's Fact Sheet.  It's doesn't -- you

20    know, it's not creating a bunch of unnecessary work.

21         MS. WAGSTAFF:  Your Honor, speaking of unnecessary

22    work, it has occurred to me that, you know, we're requiring the

23    plaintiffs, Group 1 plaintiffs, to complete these Fact Sheets.

24         Monsanto has standard interrogatories that it serves on

25    plaintiffs.  I know this because they have served them on about
```

1    700 plaintiffs.  And so it may seem like extra work if we are

2    requiring Group 1 plaintiffs to fill out this Fact Sheet and

3    then Monsanto is going to serve interrogatories next week that

4    covers much of the same information.

5       So I would request that the Group 1 plaintiffs either be

6    released from filing -- from filling out the Fact Sheets and

7    Monsanto go ahead and serve its, sort of, standard

8    interrogatories, or the interrogatories that we get are not

9    duplicative of the plaintiff's Fact Sheet.

10       THE COURT:  I mean, I would assume that it should be

11   the latter; right?  That Monsanto needs to go through its

12   standard interrogatories and take out anything that's already

13   covered by the Fact Sheets.

14       MR. LASKER:  We agree with that.  We don't have time

15   to be having duplicative questions.

16       MS. WAGSTAFF:  Okay.  Excellent.  Thank you.

17       THE COURT:  Okay.  Is there anything that we can --

18   anything else that we should be discussing right now?

19       MR. LASKER:  Nothing from Monsanto, Your Honor.

20       MS. WAGSTAFF:  Nothing for plaintiffs, Your Honor.

21       THE COURT:  Okay.  Very good.  So I'll get to work on

22   tweaking this order.  I'll look forward to receiving your

23   filings.  And we'll go from there.

24       And I'll see you all here in person -- should we at least

25   maybe identify the date and time of the CMC that we're going to

```
 1    have -- in-person CMC we're going to have in mid-October?

 2        What do you say, Kristen?  29th.  All right.  Let's do

 3    29th, at 10:30.

 4              MR. LASKER:  October 29, 10:30.

 5              THE COURT:  10:30, yeah.

 6              MR. LASKER:  Okay.  Thank you, Your Honor.

 7              THE COURT:  So put that in the schedule.  And we'll

 8    see you then.  Thank you.

 9              MR. LASKER:  Thank you.

10              MS. WAGSTAFF:  Thank you, Your Honor.

11              THE COURT:  Sorry, one other thing.

12        Case management -- what is easier -- so I want a case

13    management statement for that.  You know, in anticipation of

14    that -- the case management conference that we'll have on the

15    29th.  What's easiest for you?  Is it joint or separate?

16              MR. LASKER:  This is Eric Lasker for Monsanto.

17        I'm not sure everybody is still on the line.

18              MS. WAGSTAFF:  Plaintiff is still on the line.

19              MR. LASKER:  Oh, okay.  We can do a joint provision,

20    Your Honor.

21              THE COURT:  Joint is better for me because then you're

22    actually responding to each other as opposed to talking past

23    each other.

24        So why don't we have a joint case management statement be

25    due on the 27th.  And you should make sure, of course, --
```

1          MR. LASKER:  That will be fine.

2          THE COURT:  -- to address the defendant's fact -- the

3    issues regarding the defendant's Fact Sheet, issues regarding

4    folding, you know, Group 2 -- plaintiffs in Group 2 into Group

5    1, and anything else that you need to discuss.

6          MR. LASKER:  That will be fine, Your Honor.

7          THE COURT:  Okay.  Thanks very much.  Have a good day.

8          MR. LASKER:  Thank you.

9          MS. WAGSTAFF:  Thank you, Your Honor.

10       (At 1:01 p.m. the proceedings were adjourned.)

11                           -  -  -  -

12

13

14                     CERTIFICATE OF REPORTER

15        I certify that the foregoing is a correct transcript

16    of all words that I was able to decipher from the telephonic

17    proceedings in the above-entitled matter.

18

19    DATE:   Thursday, September 27, 2018

20

21

22                    _Katherine Sullivan_

23    _____

24        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                    U.S. Court Reporter

25