```
1                                           PAGES 1 - 21

2                     UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4                 BEFORE THE HONORABLE VINCE CHHABRIA

5
    IN RE: ROUNDUP PRODUCTS              )
6   LIABILITY LITIGATION,               ) NO. C 16-2741 VC
                                        ) SAN FRANCISCO, CALIFORNIA
7   _____)

8                                       MONDAY, SEPTEMBER 24, 2018

9
```

10 **TRANSCRIPT OF TELEPHONIC PROCEEDINGS OF THE OFFICIAL ELECTRONIC**

11      **SOUND RECORDING  11:06 A.M. - 11:35 A.M.**

12
**APPEARANCES**:

13
**FOR PLAINTIFFS**          WEITZ AND LUXENBERG, P.C.
14                          700 BROADWAY
                            NEW YORK, NEW YORK 10003
15                 **BY:   ROBIN L. GREENWALD, ESQUIRE**

16                          ANDRUS WAGSTAFF, PC
                            7171 W. ALASKA DRIVE
17                          LAKEWOOD, COLORADO 80226
                   **BY:   AIMEE WAGSTAFF, ESQUIRE**
18

19  (FURTHER APPEARANCES ON FOLLOWING PAGE)

20

21  *TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                    *RETIRED OFFICIAL COURT REPORTER, USDC*
22

23

24

25

1    **(APPEARANCES CONTINUED):**

2

3    **FOR PLAINTIFFS**          BAUM HEDLUND ARISTEI AND GOLDMAN PC
                                 12100 WILSHIRE BOULEVARD SUITE 950
                                 LOS ANGELES, CALIFORNIA 90025-7106
4                          BY:  **ROBERT BRENT WISNER, ESQUIRE**
                                 **MICHAEL LIN BAUM, ESQUIRE**
5                                **PEDRAM ESFANDRARY, ESQUIRE**

6                                THE MILLER FIRM LLC
                                 108 RAILROAD AVENUE
7                                ORANGE, VIRGINIA 22960
                           BY:  **MICHAEL J. MILLER, ESQUIRE**
8
                                 MILLER DELLAFERA, PLC
9                                3420 PUMP ROAD
                                 HENRICO, VIRGINIA 23233
10                         BY:  **PETER A. MILLER, ESQUIRE**

11                               LUNDY, LUNDY, SOILEAU & SOUTH LLP
                                 501 BROAD STREET
12                               LAKE CHARLES, LOUISIANA 70601
                           BY:  **HUNTER W. LUNDY, ESQUIRE**
13
                                 LAW OFFICES OF TESFAYE W. TSADIK
14                               THE CALIFORNIA BUILDING
                                 1736 FRANKLIN STREET - 10TH FLOOR
15                               OAKLAND, CALIFORNIA 94612
                           BY:  **TESFAYE W. TSADIK, ESQUIRE**
16
                                 FULMER SILL PLLC
17                               1101 N. BROADWAY AVENUE, SUITE 102
                                 OKLAHOMA CITY, OKLAHOMA 73103
18                         BY:  **TARA T. TABATABAIE, ESQUIRE**

19

20   **FOR DEFENDANT MONSANTO**   HOLLINGSWORTH LLP
     **COMPANY:**                 1350 I STREET NW
                                 WASHINGTON, D.C. 20005
21                         BY:  **JOE HOLLINGSWORTH, ESQUIRE**
                                 **JESSICA BOYLAN, ESQUIRE**
22                               **ERIC G. LASKER, ESQUIRE**
                                 **HEATHER ANN PIGMAN, ESQUIRE**
23

24

25

```
 1   MONDAY, SEPTEMBER 24, 2018                    11:06 A.M.

 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

 5                        ---O0O---

 6                       PROCEEDINGS

 7        THE CLERK:  CALLING CASE NO. 16-MD-2741, IN RE:

 8   ROUNDUP PRODUCTS LIABILITY LITIGATION.

 9        I HAVE THE LIST OF WHO IS ATTENDING BY PHONE, SO NO

10   APPEARANCES ARE NEEDED.

11        THE COURT:  OKAY.  HI EVERYBODY.

12        SO WE NEED TO TALK ABOUT THE FACT SHEET ONE LAST

13   TIME.  WE NEED TO TALK ABOUT THE DRAFT ORDER.  WE NEED TO TALK

14   ABOUT THE SCHEDULE FOR THE BELLWETHER GROUP.  AND THERE ARE A

15   NUMBER OF SMALL ISSUES WITHIN THOSE THREE CATEGORIES THAT WE'LL

16   NEED TO GET INTO, BUT ARE THERE ANY OTHER ISSUES WE NEED

17   DISCUSS OTHER THAN THOSE THREE?

18        PLAINTIFFS, ANY ADDITIONS TO THAT LIST?  YOU ALL

19   TEXTING EACH OTHER RIGHT NOW?  IS THE SYSTEM WORKING?  ALL

20   RIGHT.

21        MR. LASKER:  THIS IS ERIC LASKER FOR DEFENDANTS.  I

22   CAN HEAR YOU.

23        THE COURT:  OKAY.  SO, MR. LASKER, ANY ADDITION TO

24   THAT LIST FROM YOUR END?

25        MR. LASKER:  NOT FROM OUR END, NO, YOUR HONOR.
```

1            **MS. WAGSTAFF:**  ERIC LASKER, CAN YOU HEAR ME?

2            **MR. LASKER:**  I CAN NOW, BUT THERE'S ALSO SOMEBODY

3    WHO -- THERE'S A LOT OF BACKGROUND NOISE (INDISCERNIBLE) SO

4    THAT PERSON SHOULD PROBABLY GO ON MUTE.

5            **MS. WAGSTAFF:**  OKAY.  JUDGE CHHABRIA, CAN YOU HEAR

6    ME?  THIS IS AIMEE WAGSTAFF.

7            **THE COURT:**  YES.

8            **MS. WAGSTAFF:**  OKAY.  FROM THE PLAINTIFFS' POINT OF

9    VIEW, WE WOULD WANT TO INCLUDE DISCUSSION ON THE DEFENSE FACT

10   SHEET (INDISCERNIBLE).

11           **THE COURT:**  RIGHT.  OKAY.  ANYTHING ELSE?

12           **MS. WAGSTAFF:**  OTHER THAN THAT --

13           **THE COURT:**  OKAY.  ALL RIGHT.  I GOT THAT ON OUR --

14   ON THE LIST.

15           SO ONE COMMENT -- ONE WAY IN WHICH I WANT TO CHANGE

16   THE ORDER, THE DRAFT ORDER THAT I SENT OUT THIS MORNING, IS I

17   THINK WE SHOULD LABEL THESE PLAINTIFFS IN GROUPS LIKE -- AND

18   FOR PURPOSES OF DISCUSSION TODAY, I THINK THAT WILL MAKE IT

19   EASIER.

20           SO GROUP 1 WILL BE THE FOUR PLAINTIFFS WHO FILED

21   THEIR CASES IN THE NORTHERN DISTRICT OF CALIFORNIA.  GROUP 2

22   WILL BE THE PEOPLE WHO RESIDE IN CALIFORNIA.  AND YOU'LL SEE

23   THAT I -- YOU SAW, PROBABLY, THAT I PROPOSED TWEAKING THAT

24   GROUP A LITTLE BIT SO THAT IT INCLUDES BOTH PEOPLE WHO RESIDE

25   IN CALIFORNIA AND PEOPLE WHO FILED THEIR CASES IN CALIFORNIA

1    WHETHER OR NOT THEY CURRENTLY RESIDE IN CALIFORNIA.

2            DOES THAT -- DOES THAT TWEAK OF THAT GROUP MAKE SENSE

3    TO YOU ALL?  MS. WAGSTAFF?

4            **MS. GREENWALD:**  THIS IS ROBIN GREENWALD.  YES, YOUR

5    HONOR, IT DOES MAKE SENSE.

6            **THE COURT:**  AND MR. LASKER?

7            **MR. LASKER:**  THAT'S FINE WITH US, YOUR HONOR.

8            **THE COURT:**  OKAY.  AND THEN GROUP 3 WOULD BE ANYBODY

9    WHO HAS ALREADY FILED A CASE BUT WHO DOESN'T MEET THE

10   DEFINITION OF GROUP 2; THAT IS, THEY DON'T LIVE IN CALIFORNIA

11   AND THEY DIDN'T FILE THEIR CASE IN CALIFORNIA.  AND THEN

12   GROUP 4 WOULD BE ANYBODY WHO HASN'T YET FILED THEIR CASE, OR AT

13   LEAST WHO HASN'T YET HAD THEIR CASE TRANSFERRED TO US.  SO

14   THOSE WOULD BE THE FOUR GROUPS OF PEOPLE, AND I THINK WE SHOULD

15   SPEAK ABOUT IT IN THOSE TERMS.

16           MR. LASKER, LET ME ASK YOU.  I THINK THAT YOU SAID AT

17   OUR LAST MEETING THAT YOU WERE GOING TO TRY TO FIGURE OUT

18   WHETHER ANYBODY ELSE WHO WE ARE CURRENTLY DESCRIBING AS IN

19   GROUP 2 COULD BE -- COULD BE CONSIDERED PART OF GROUP 1 BECAUSE

20   THE CASE IS PROPERLY -- COULD BE PROPERLY VENUED HERE.

21           **MR. LASKER:**  WELL, I DID NOT LOOK BACK -- NOW THAT

22   GROUP 2 HAVE BEEN REDEFINED, I'M NOT SURE IF I HAVE THE LIST OF

23   THE PEOPLE WHO FILED IN CALIFORNIA OR STATEWIDE.

24           **THE COURT:**  OKAY.

25           **MR. LASKER:**  SO I'M HAPPY TO GO BACK AND LOOK AT

```
 1    THAT, BUT I ASSUME THAT WOULD BE EASY.  THERE ARE LIST OF
 2    PEOPLE WHO FIT IN THAT CATEGORY AND (INDISCERNIBLE) GUESS
 3    THEY'RE THE SAME.
 4              THE COURT:  BUT --
 5              MR. LASKER:  I'M NOT -- IS THAT YOUR QUESTION?
 6              THE COURT:  OF THE PEOPLE WHO RESIDE IN CALIFORNIA,
 7    HAVE YOU LOOKED AT THOSE PEOPLE TO SEE IF THERE'S ANY
 8    INDICATION THAT THEY COULD BE PROPERLY VENUED IN THE NORTHERN
 9    DISTRICT?
10              MR. LASKER:  MY UNDERSTANDING IS I DON'T HAVE THAT
11    INFORMATION IN THE COMPLAINT AT ALL.  ALL WE HAVE IS THE STATE
12    OF RESIDENCE.
13              THE COURT:  OKAY.  ONE OF THE THINGS I WANT TO DO --
14    I DON'T KNOW IF IT MAKES SENSE TO DISCUSS THIS NOW OR LATER,
15    BUT ONE OF THE THINGS I WANT TO DO IS FIGURE OUT A PROCESS FOR
16    MOVING -- POTENTIALLY MOVING SOME OF THE PEOPLE FROM GROUP 2
17    INTO GROUP 1; THAT IS, YOU KNOW, OF THE PEOPLE WHO, YOU KNOW,
18    FILED THEIR CASES IN CALIFORNIA OR RESIDE IN CALIFORNIA, AND
19    IT'S NOT YET CLEAR TO US WHETHER THEY COULD BE PROPERLY VENUED
20    IN THE NORTHERN DISTRICT OF CALIFORNIA, IF WE CAN DETERMINE
21    EARLY ON THAT THEY ARE PROPERLY VENUED IN THE NORTHERN DISTRICT
22    OF CALIFORNIA, OR COULD BE PROPERLY VENUED IN THE NORTHERN
23    DISTRICT OF CALIFORNIA, I WOULD WANT TO EXPLORE FOLDING THEM
24    INTO GROUP 1; THAT IS, THE GROUP OF PLAINTIFFS WHO COULD
25    POTENTIALLY GO TO TRIAL IN FEBRUARY OR MAY, BECAUSE I'M
```

1    CONCERNED THAT GROUP 1 RIGHT NOW IS KIND OF TOO SMALL, AND

2    THERE'S AT LEAST SOME RISK THAT, YOU KNOW, ALL THE CASES IN --

3    YOU KNOW, THERE ARE FOUR -- THERE ARE FOUR PLAINTIFFS IN

4    GROUP 1 RIGHT NOW; THAT IS, PLAINTIFFS WHO HAVE THE POTENTIAL

5    TO GO TO TRIAL ON FEBRUARY 25TH OR MAY 5TH.  ONE OF THEM, IT

6    SOUNDS LIKE, IS GOING TO DISMISS THEIR CASE.  SO THAT LEAVES

7    THREE.  AND, YOU KNOW, I'M CONCERNED THAT WITH SUCH A SMALL

8    GROUP 1, WE COULD END UP WITH ZERO PLAINTIFFS BY THE TIME

9    FEBRUARY 25TH ROLLED AROUND.

10            SO I THINK WE SHOULD TRY TO -- I THINK WE SHOULD MAKE

11   AN EFFORT TOWARDS THE FRONT END OF THIS PROCESS TO GET MORE

12   PEOPLE INTO GROUP 1, PEOPLE WHO COULD END UP GOING TO TRIAL ON

13   FEBRUARY 25TH OR MAY 5TH -- EXCUSE ME -- YEAH, FEBRUARY 25TH OR

14   MAY 5TH.

15            DOES THAT MAKE SENSE FROM THE PLAINTIFF'S STAND?

16        **MS. WAGSTAFF:**  YOUR HONOR, THAT DOES MAKE SENSE.

17   THIS IS AIMEE WAGSTAFF.  SINCE OUR LAST HEARING I HAD A -- LET

18   ME BACK UP A MINUTE.

19            I'M NOT SURE --

20        **THE COURT:**  COULD YOU SPEAK UP A LITTLE BIT?

21        **MS. WAGSTAFF:**  SURE.  I'M NOT SURE THAT *LEXECON*

22   DOESN'T PREVENT YOUR HONOR FROM TRYING CASES IN OTHER

23   CALIFORNIA DISTRICTS.  WE ENCOUNTERED THIS QUESTION IN *VAGINAL*

24   *MESH* OUT IN WEST VIRGINIA WITH JUDGE GOODWIN, AND IT WAS NEVER

25   RESOLVED BECAUSE HE ENDED UP JUST TRYING SOUTHERN DISTRICT OF

1   WEST VIRGINIA CASES.

2            SO THAT IS SOMETHING I'M NOT SURE IS CLEAR CUT.  AND

3   I THINK MONSANTO PRIOR TO THE LAST HEARING AGREED THAT'S SORT

4   OF UP IN THE AIR.

5            THAT BEING SAID, AFTER THE LAST HEARING, A COUPLE OF

6   COUNSEL APPROACHED ME AND SAID THAT WHETHER WAIVER OF *LEXECON*

7   IS NEEDED OR NOT, THAT THERE ARE CALIFORNIA CASES IN OTHER

8   DISTRICTS BESIDES THE NORTHERN THAT WOULD CONSENT TO TRIAL IN

9   YOUR COURTHOUSE.  AND WHETHER OR NOT MONSANTO WOULD NEED TO

10  WAIVE *LEXECON* ON THOSE, I'M NOT SURE.  AND I'M THINKING

11  SPECIFICALLY OF A SOUTHERN DISTRICT OF CALIFORNIA CASE AND A

12  CENTRAL DISTRICT OF CALIFORNIA CASE.

13           ANOTHER THING THAT WE HAVE -- THAT I'VE DONE IN THE

14  PAST (INDISCERNIBLE) IS, YOU KNOW, YOUR HONOR COULD ENTER AN

15  ORDER REQUIRING THAT EVERYONE STATE THE PROPER VENUE, AND THAT

16  THEN COUNSEL FOR DEFENDANTS AND MYSELF AND ROBIN --

17  MS. GREENWALD AND MR. MILLER COULD WORK OUT A VENUE SORT OF

18  GRID OR CHART SO YOUR HONOR WOULD KNOW AND THAT WOULD HELP A

19  REMAND WHEN AND IF IT WAS EVER APPROPRIATE AS WELL.

20           **THE COURT:**  IN OTHER WORDS, NOT WAIT FOR THE FACT

21  SHEETS TO BE SUBMITTED, JUST ON A MORE ACCELERATED BASIS

22  REQUIRE SUBMISSION OF SOMETHING SOLELY REGARDING VENUE?

23           **MS. WAGSTAFF:**  YES.  IF YOUR HONOR WANTS TO INCLUDE

24  THEM IN GROUP 1 WITH A FEBRUARY TRIAL DATE, I THINK THAT COULD

25  HAPPEN.

1          **THE COURT:**  YOU'RE FADING OUT.  I'M HAVING TROUBLE

2   HEARING YOU.

3          **MS. WAGSTAFF:**  I'M SORRY.

4          IF YOUR HONOR WANTS TO MOVE PLAINTIFFS FROM GROUP 2

5   TO GROUP 1 WITH A FEBRUARY TRIAL DATE, WHICH IS IN, OBVIOUSLY,

6   FOUR OR FIVE MONTHS, YOU KNOW, WE CAN'T WAIT UNTIL THE PFS

7   COMES OUT, BUT YOUR HONOR COULD ENTER AN ORDER SAYING, YOU

8   KNOW, WITHIN 14 OR 21 DAYS THAT THEY SUBMIT TO SOMEBODY WHAT

9   THEY BELIEVE TO BE THE PROPER VENUE FOR THEIR CASE, AND THEY

10  COULD SUBMIT WHETHER OR NOT THEY HAVE ANY CONNECTION WITH THE

11  NORTHERN DISTRICT SUCH THAT VENUE WOULD BE PROPER THERE.

12          AND, AGAIN, THIS IS AN EXERCISE WE WOULD EVENTUALLY

13  HAVE TO DO ANYWAY.

14          **THE COURT:**  SO WE WOULD MAKE THE GROUP TWO PLAINTIFFS

15  DO THAT, SAY, WITHIN 14 DAYS OF OUR ORDER, MAKE THE GROUP TWO

16  PLAINTIFFS SUBMIT SOMETHING ON VENUE.  AND I GUESS -- I GUESS

17  THE MOST -- THE MOST IMPORTANT QUESTION TO ASK IS NOT WHERE

18  THEY THINK VENUE IS PROPER, BUT, YOU KNOW, DO THEY THINK VENUE

19  IS PROPER IN THE -- WOULD BE PROPER IN THE NORTHERN DISTRICT OF

20  CALIFORNIA.  AND, IF SO, WHAT ARE THE FACTS THAT WOULD SUPPORT

21  THAT.  RIGHT?  BECAUSE A CASE CAN BE PROPER -- VENUE CAN BE

22  PROPER IN MORE THAN ONE DISTRICT, POTENTIALLY.

23          **MS. WAGSTAFF:**  WELL, I'M TRYING TO THINK, YOUR HONOR,

24  IF THAT'S THE BEST WAY TO ACCOMPLISH WHAT I THINK WE'RE TRYING

25  TO ACCOMPLISH.

1          SO IF THERE'S A SOUTHERN DISTRICT OF CALIFORNIA CASE,

2     ENTERING AN ORDER SAYING, WHAT'S YOUR NEXUS TO THE NORTHERN

3     DISTRICT, I THINK THAT THERE WILL BE FOLKS WHO WILL CONSENT TO

4     TRIAL IN YOUR COURT.

5          AND IT MIGHT BE WORTH HAVING THE ATTORNEYS BRIEF

6     WHETHER OR NOT *LEXECON* EVEN APPLIES TO OTHER CALIFORNIA CASES.

7     WE HAD PROPOSED THAT, I BELIEVE, IN OUR SUBMISSION FOR THE LAST

8     HEARING, AND I THINK THAT JUST SORT OF FELL OFF THE RADAR OF

9     BOTH THE COURT AND COUNSEL WHEN WE WERE IN YOUR COURTROOM.

10          **THE COURT:**  WELL, I THINK --

11          **MS. WAGSTAFF:**  I'M NOT CERTAIN --

12          **THE COURT:**  I THINK PART OF THE PROBLEM WAS THAT NONE

13     OF US COULD THINK OF A RATIONALE FOR WHY *LEXECON* WOULD NOT

14     APPLY TO A CASE THAT WAS FILED IN THE SOUTHERN DISTRICT OF

15     CALIFORNIA.  I MEAN, I THOUGHT WHERE WE LEFT IT WAS THAT -- YOU

16     KNOW, I WAS WONDERING, YOU KNOW, WHY WOULD IT MATTER FOR

17     *LEXECON* PURPOSES WHETHER A CASE WAS FILED IN THE SOUTHERN

18     DISTRICT OF CALIFORNIA OR THE DISTRICT OF NEVADA?

19          I MEAN, MY RECOLLECTION IS THAT THERE'S NOTHING ABOUT

20     *LEXECON* THAT INVOLVES STATE LINES, RIGHT?  IT'S ABOUT -- IT'S

21     ABOUT WHETHER VENUE IS PROPER, WHETHER A CASE COULD PROPERLY BE

22     TRIED IN A PARTICULAR JUDICIAL DISTRICT.

23          SO I DON'T -- I MEAN, MAYBE I'M WRONG.  MAYBE I'M

24     MISSING.  THAT'S ENTIRELY POSSIBLE.  BUT I THOUGHT -- YOU KNOW,

25     AND I ASKED THAT QUESTION LAST TIME, AND MR. LASKER AGREED WITH

1    ME THAT THE *LEXECON* ISSUE IS THE SAME WHETHER IT'S -- WHETHER A

2    CASE WAS FILED IN THE SOUTHERN DISTRICT OF CALIFORNIA OR THE

3    DISTRICT OF NEVADA, AND I DIDN'T -- I THOUGHT WE -- EVERYBODY

4    KIND OF CAME AWAY FROM THE LAST DISCUSSION ASSUMING THAT THAT'S

5    TRUE.

6           BUT IF YOU -- I MEAN, I GUESS WHAT I'LL ASK YOU IS:

7    IF YOU HAVE AUTHORITY FOR THE PROPOSITION THAT THERE IS A

8    DIFFERENCE BETWEEN A CASE -- FOR *LEXECON* PURPOSES BETWEEN A

9    CASE FILED IN THE SOUTHERN DISTRICT OF CALIFORNIA AND A CASE

10   FILED IN THE DISTRICT OF NEVADA, CAN YOU PLEASE TELL ME WHAT

11   THAT IS?

12          **MS. WAGSTAFF:**  I CAN'T TELL YOU AS WE SIT RIGHT HERE

13   ON THE CALL, BUT I COULD ASK MY TEAM TO GET THAT TO ME

14   (INDISCERNIBLE).  I JUST KNOW THAT IT'S NOT AS CLEAR CUT AS WE

15   MAY THINK IT IS, AND I CAN PROVIDE THAT TO YOU TOMORROW.

16          **THE COURT:**  OKAY.  WHY DON'T YOU GO AHEAD AND DO

17   THAT?  WHY DON'T YOU FILE A LETTER BRIEF BY TOMORROW, WHICH --

18   IF YOU BELIEVE THAT THERE IS A DIFFERENCE BETWEEN CASES FILED

19   IN OTHER DISTRICTS IN CALIFORNIA AND CASES FILED OUTSIDE OF

20   CALIFORNIA FOR *LEXECON* PURPOSES, EXPLAIN -- EXPLAIN WHY THAT IS

21   AND IDENTIFY THE AUTHORITY THAT SUPPORTS THAT.

22          **MS. WAGSTAFF:**  OKAY.  WE WILL DO THAT.

23          **MR. LASKER:**  AND, YOUR HONOR, JUST FOR THE RECORD --

24   THIS IS ERIC LASKER AGAIN.

25          **THE COURT:**  CAN YOU PLEASE -- I NEED YOU TO SPEAK UP

1    ALSO.

2           **MR. LASKER:**  I'M SORRY.  THIS IS ERIC LASKER AGAIN.

3           I DID GET BACK AND LOOK AT *LEXECON*, AND I THINK THERE

4    IS SOME -- THERE WILL BE SOME DIFFICULTIES IN TRYING A CASE IN

5    YOUR COURT THAT WAS NOT FILED IN YOUR COURT UNDER *LEXECON*.  BUT

6    PLAINTIFF'S COUNSEL DID MENTION THEY THOUGHT THERE'S SOME CASE

7    LAW OUT THERE BEFORE.  WE'VE NOT FOUND IT, BUT WE'RE HAPPY TO

8    LOOK AT IT.

9           **THE COURT:**  OKAY.  THEN I'LL ASK -- I'LL ASK MONSANTO

10   TO RESPOND, FILE A RESPONSE TO THE LETTER BRIEF THE NEXT DAY.

11   SO WEDNESDAY.

12          **MR. LASKER:**  OKAY.

13          **THE COURT:**  BUT WHAT I THINK COULD HAPPEN

14   POTENTIALLY, RIGHT, IS THAT LET'S ASSUME FOR THE SAKE OF

15   DISCUSSION, THAT IF A CASE WAS FILED IN THE SOUTHERN DISTRICT

16   OF CALIFORNIA AND COULD HAVE BEEN FILED IN THE NORTHERN

17   DISTRICT OF CALIFORNIA, BUT WASN'T, I THINK THE SOLUTION TO

18   THAT WOULD BE TO TRANSFER -- FOR ME TO REMAND THE CASE BACK TO

19   THE SOUTHERN DISTRICT OF CALIFORNIA, BUT THEN THE JUDGE WHO

20   RECEIVES IT WOULD TRANSFER THE CASE BACK TO THE NORTHERN

21   DISTRICT OF CALIFORNIA UNDER 1404(A) FOR TRIAL.

22          **MR. LASKER:**  I THINK THAT WOULD BE RIGHT, YOUR HONOR.

23   THERE WOULD BE, THOUGH, A NEED (INDISCERNIBLE) FOR DISCOVERY ON

24   VENUE ISSUES.  I JUST DON'T KNOW HOW QUICKLY THAT COULD TAKE

25   PLACE.

1       **THE COURT:**  RIGHT.  AND SO PART OF IT DEPENDS ON

2   WHETHER THERE'S GOING TO BE AGREEMENT -- YOU KNOW, WHETHER

3   THERE'S -- YOU KNOW, IT SOUNDS TO ME LIKE THAT PROCESS OF

4   GETTING THOSE KINDS OF CASES TEED UP FOR TRIAL HERE COULD

5   EITHER BE EASY OR DIFFICULT DEPENDING ON HOW THE PARTIES

6   APPROACH IT, AND SO -- BUT IT WOULD JUST BE A QUESTION OF HOW

7   LONG IT TAKES.  IT WOULDN'T REALLY BE A QUESTION OF WHETHER

8   THOSE CASES END UP GETTING TRIED HERE, I SUSPECT.

9       SO -- BUT WE DO NEED TO START THAT PROCESS.  WE NEED

10  TO START THE PROCESS OF IDENTIFYING CASES THAT COULD HAVE BEEN

11  BROUGHT HERE EVEN IF THEY WEREN'T BROUGHT HERE.  AND I'M OPEN

12  TO SUGGESTIONS ABOUT THAT.  I MEAN, MAYBE -- MAYBE THOSE

13  CASES -- MAYBE WHAT MAKES THE MOST SENSE IS THOSE CASES ARE

14  CANDIDATES TO GO TO TRIAL ON MAY 5TH, AS OPPOSED TO

15  FEBRUARY 25TH.  I MEAN, MAYBE, YOU KNOW, THE THREE CASES THAT

16  ARE IN GROUP 1 RIGHT NOW -- OR THE FOUR CASES THAT ARE IN

17  GROUP 1 -- BY THE WAY, WHAT'S THE UPDATE -- THERE WAS SOME

18  INDICATION THAT ONE OF THE CASES IN GROUP 1 WAS GOING TO BE

19  DISMISSED.  DO WE HAVE ANY UPDATE ON THAT?

20       **MR. MILLER:**  YOUR HONOR, MICHAEL MILLER HERE.  AND NO

21  UPDATE.  THE CLIENT HAS STOPPED RESPONDING, AND WE'RE DOING

22  EVERYTHING WE CAN TO (INDISCERNIBLE) WE EXPECT THAT TO OCCUR,

23  BUT IT HAS NOT OCCURRED YET.

24       **THE COURT:**  OKAY.  SO THAT CASE WILL BE IN GROUP 1

25  UNTIL IT'S DROPPED, BUT, AS A PRACTICAL MATTER, I GATHER THAT

1   WHAT THAT MEANS IS THAT WE HAVE THREE CASES IN GROUP 1 RIGHT

2   NOW.  I THINK WE SHOULD JUST PLAN ON ALL OF THOSE TO GO -- YOU

3   KNOW, WE SHOULD PUT ALL THREE OF THOSE ON A SCHEDULE TO GO TO

4   TRIAL IN FEBRUARY -- ON FEBRUARY 23RD -- 25TH, WITH THE

5   UNDERSTANDING THAT, YOU KNOW, ONLY ONE OF THOSE WILL END UP

6   GOING TO TRIAL ON FEBRUARY 25TH AND ONE OTHER ONE WILL GO TO

7   TRIAL ON MAY 5TH.  BUT WE SHOULD TRY TO GET MORE PLAINTIFFS

8   INTO GROUP 1, AND THOSE WILL BE ADDITIONAL CANDIDATES TO GO TO

9   TRIAL ON MAY 5TH.

10          AND SO I GATHER THAT WHAT MS. WAGSTAFF IS PROPOSING

11   IS THAT THE CASES THAT ARE CURRENTLY IN WHAT WE ARE CALLING

12   GROUP 2 WOULD FILE SOMETHING WITHIN, SAY, 14 DAYS OF MY ORDER,

13   WHICH WILL PROBABLY GO OUT TOMORROW, OR MAYBE THE NEXT DAY,

14   TAKING A POSITION ON -- I GUESS, WOULD IT JUST BE EXPLAINING

15   WHETHER ANY EXPOSURE OCCURRED IN THE NORTHERN DISTRICT OF

16   CALIFORNIA?  IS THAT REALLY WHAT IT WOULD BOIL DOWN TO?

17          **MS. WAGSTAFF:**  WELL, YOUR HONOR, SINCE WE'VE BEEN ON

18   THE PHONE WITH YOU --

19          **THE COURT:**  AND WHETHER YOU -- AND I GUESS WHETHER

20   YOU WOULD -- A, WAS THERE ANY EXPOSURE IN THE NORTHERN DISTRICT

21   OF CALIFORNIA, AND, B, DO YOU CONSENT TO HAVING YOUR -- IF NOT,

22   DO YOU CONSENT TO HAVING YOUR CASE TRIED IN THE NORTHERN

23   DISTRICT OF CALIFORNIA?

24          **MS. WAGSTAFF:**  SO SINCE WE'VE BEEN TALKING WITH

25   YOU -- THIS IS AIMEE WAGSTAFF -- WE (INDISCERNIBLE) TWO QUICK

1    QUESTIONS -- AND THIS IS OBVIOUSLY JUST SINCE WE'VE BEEN ON THE

2    PHONE WITH YOU.  BUT THE FIRST ONE IS:  DID YOU USE ROUNDUP IN

3    THE NORTHERN DISTRICT OF CALIFORNIA; IF YES, WHAT'S THE DATES?

4    TWO, WERE YOU DIAGNOSED WITH OR TREATED FOR YOUR NHL IN THE

5    NORTHERN DISTRICT OF CALIFORNIA; YES OR NO.

6          I GUESS ANOTHER QUESTION WOULD BE -- AND I MENTIONED

7    THIS EARLIER -- THERE'S BEEN A FEW PLAINTIFFS' COUNSEL WHO HAVE

8    REACHED OUT TO ME AND SAID THAT THEY WOULD CONSENT TO THEIR

9    SOUTHERN DISTRICT AND CENTRAL DISTRICT PLAINTIFFS BEING TRIED

10   IN YOUR COURT.  I GUESS THEN WOULD MONSANTO NEED TO CONSENT TO

11   THAT AS WELL?  I'M NOT CERTAIN.  IT SOUNDS LIKE MR. LASKER

12   PROBABLY HAS AN OPINION ON THAT.

13         **THE COURT:**  WELL, IT SOUNDS LIKE MONSANTO MAY, BUT

14   YOU CAN -- THAT'S WHAT YOU WILL ADDRESS.  THEY NEED TO CONSENT,

15   BUT THAT'S WHAT YOU'LL ADDRESS IN YOUR BRIEF, RIGHT?

16         **MS. WAGSTAFF:**  CORRECT.  SO ONE THING WE COULD DO IS

17   I COULD SEND THOSE QUESTIONS IN WRITTEN FORM THAT I JUST READ

18   TO YOU OVER TO MR. LASKER WITHIN A FEW MINUTES AFTER THIS

19   HEARING ENDS, AND WE CAN AGREE ON WHAT QUESTIONS WOULD BE

20   ASKED, AND WE COULD FORWARD THEM TO YOUR HONOR TO PUT IN AN

21   ORDER AND SEND OUT TO THE GROUP TO PLAINTIFFS.

22         **THE COURT:**  I HADN'T THOUGHT ABOUT WHETHER DIAGNOSIS

23   OR TREATMENT IN THE NORTHERN DISTRICT -- EVEN IF YOU WEREN'T

24   EXPOSED IN THE NORTHERN DISTRICT, IF DIAGNOSIS OR TREATMENT IN

25   THE NORTHERN DISTRICT WOULD CREATE VENUE IN THE NORTHERN

1    DISTRICT.

2          DO YOU HAVE ANY -- DO YOU HAVE A THOUGHT ABOUT THAT,

3    MR. LASKER?

4          **MR. LASKER:**  THERE ACTUALLY WAS A CASE WHERE THIS WAS

5    ADDRESSED, A CASE CALLED *RUBIO*, EARLY ON IN THE LITIGATION

6    WHEREIN I BELIEVE THE CENTRAL DISTRICT OF CALIFORNIA -- WHERE

7    THERE WAS A VENUE ANALYSIS CONDUCTED AND VENUE ANALYSIS DID

8    LOOK AT PLACES OF EXPOSURE AND PLACES OF DIAGNOSIS AS WELL IN

9    MAKING THAT ANALYSIS, BUT I DO THINK THOSE WOULD BE -- WOULD BE

10   RELEVANT AS WELL.

11         **THE COURT:**  OKAY.

12         **MR. LASKER:**  I GUESS THE OTHER ISSUE THAT WE WOULD

13   HAVE AND HAS NOT YET BEEN DISCUSSED IS, IF WE'RE GOING TO HAVE

14   THESE CASES REMANDED OR POTENTIALLY REMANDED TO HOME VENUES, WE

15   WOULD WANT THOSE REMANDS TO BE WITH PLAINTIFF FACT SHEETS SO

16   THAT MONSANTO HAS THEIR EQUAL INFORMATION OR SOME INFORMATION

17   ABOUT THE CASE WHEN THEY GO OUT OF THE MDL.

18         **THE COURT:**  OKAY.  BUT, I MEAN, AT THIS EARLY STAGE,

19   I WOULDN'T BE -- I WANT TO BE VERY CLEAR.  I MEAN, YOU KNOW, I

20   DON'T THINK IT IS TIME TO BE REMANDING ANY CASES TO HOME

21   DISTRICT FOR TRIAL.  I DON'T THINK IT WOULD BE APPROPRIATE FOR

22   ME TO BE REMANDING CASES AT THIS TIME TO HOME DISTRICTS TO

23   ADJUDICATE, YOU KNOW, SUMMARY JUDGMENT MOTIONS ON SPECIFIC

24   CAUSATION OR ANYTHING LIKE THAT.  I VIEW THAT AS BEING MY JOB

25   TO DEAL WITH THOSE PRETRIAL ISSUES.

```
 1            THE ONLY WAY I WOULD REMAND CASES TO HOME DISTRICTS

 2   TO BE PERFECTLY, YOU KNOW, STRAIGHTFORWARD ABOUT IT, IS WITH

 3   THE IDEA THAT THEY WOULD BE TRANSFERRED BACK HERE FOR

 4   CONVENIENCE FOR THE PURPOSE OF CONDUCTING THE TRIAL HERE.  SO I

 5   WANT TO MAKE THAT VERY CLEAR.

 6            BUT IT SOUNDS LIKE THAT MIGHT BE -- WHAT MS. WAGSTAFF

 7   IS PROPOSING WOULD BE A PRODUCTIVE APPROACH, WITHIN 14 DAYS

 8   REQUIRE ALL THE PLAINTIFFS IN GROUP 2 TO MAKE A FILING -- I

 9   DON'T KNOW IF IT WOULD BE A COURT FILING; I THINK IT PROBABLY

10   SHOULD BE A COURT FILING -- SAYING WHETHER -- SAYING WHETHER

11   THEY USED ROUNDUP IN THE NORTHERN DISTRICT OF CALIFORNIA,

12   WHETHER THEY WERE DIAGNOSED OR TREATED WITH NHL IN THE NORTHERN

13   DISTRICT OF CALIFORNIA, AND IF THE ANSWER IS "NO" TO BOTH OF

14   THOSE QUESTIONS, WOULD THEY CONSENT TO THEIR CASES BEING TRIED

15   IN THE NORTHERN DISTRICT OF CALIFORNIA.

16            MS. WAGSTAFF:  YOUR HONOR?

17            THE COURT:  YEAH.

18            MS. WAGSTAFF:  MR. WISNER FROM PLAINTIFFS' COUNSEL

19   WANTS TO ADDRESS SOMETHING WITH RESPECT TO VENUE.

20            THE COURT:  OKAY.

21            MR. WISNER:  YOUR HONOR, BRENT WISNER HERE.

22            THERE'S ALSO ANOTHER POTENTIAL ISSUE FOR VENUE, AND

23   THAT IS -- AND THIS RELATES SPECIFICALLY TO THE JCCP PROCEEDING

24   WHERE WE HAVE BEEN FILING OUR CASES IN SAN FRANCISCO SUPERIOR

25   COURT AND THEN HAVING THEM TRANSFERRED TO ALAMEDA COUNTY.  AND
```

```
1   THE BASIS OF FILING IN SAN FRANCISCO IS THE ALLEGATION THAT THE
2   PRIMARY DISTRIBUTOR FOR ROUNDUP PRODUCTS IN CALIFORNIA IS BASED
3   OUT OF SAN FRANCISCO, AND WE HAVE -- WE HAVE DOCUMENTS AND
4   EVIDENCE TO SUPPORT THAT.  AND SO THERE IS A POTENTIAL WAY OF
5   HAVING VENUE IN THE NORTHERN DISTRICT OF CALIFORNIA BECAUSE
6   DISTRIBUTION AND CONDUCT, OR ACTUALLY GETTING THE PRODUCT OUT,
7   STEMS ALL FROM SAN FRANCISCO FOR THE ENTIRE STATE OF
8   CALIFORNIA.
9         THE COURT:  OKAY.  AND I GATHER THAT'S -- SO
10  THAT'S -- FOR A WHILE THERE IT WAS A MYSTERY TO ME WHY ALL OF
11  THOSE CASES WERE IN CALIFORNIA AND HADN'T BEEN REMOVED TO
12  FEDERAL COURT, BUT THE REASON IS IN THE CALIFORNIA CASES, YOU
13  NAMED THAT DISTRIBUTOR AS A DEFENDANT; IS THAT RIGHT?
14        MR. WISNER:  THAT'S CORRECT, YOUR HONOR.
15        THE COURT:  AND THAT DEFEATED DIVERSITY.  BUT IN
16  THESE FEDERAL CASES, THAT DISTRIBUTOR HASN'T -- HAS NOT BEEN
17  NAMED AS A DEFENDANT IN ANY OF THEM, RIGHT?
18        MR. WISNER:  THAT'S CORRECT, ALTHOUGH I DON'T BELIEVE
19  THE VENUE STATUTE REQUIRES THEM TO BE A NAMED DEFENDANT FOR
20  THEIR CONDUCT CREATES VENUE.
21        THE COURT:  I SEE.  OKAY.  YEAH, THAT IS --
22        UNIDENTIFIED SPEAKER:  (INDISCERNIBLE) YOUR HONOR --
23        THE COURT:  MAYBE THAT'S PART OF THE -- PART OF --
24  YOU KNOW, PART OF THE ANSWER IN YOUR LETTER -- YOU KNOW, THAT
25  YOU'LL SET OUT IN YOUR LETTER BRIEF.  AND THAT'S INTERESTING.
```

1    OBVIOUSLY, THAT'S NOT SOMETHING I'VE THOUGHT ABOUT.

2          BUT HOW WOULD THAT AFFECT THE FILING THAT THE

3    PLAINTIFFS -- THAT THESE PLAINTIFFS WOULD MAKE ON -- IN 14

4    DAYS?

5          **MR. WISNER:**  WELL, YOUR HONOR, IN THAT FILING IF EACH

6    PLAINTIFF COULD, TO THE EXTENT THAT THEY CAN, MAKE AN

7    ALLEGATION OR AN ASSERTION ABOUT SOME CONNECTION OR NEXUS TO

8    THE NORTHERN DISTRICT OF CALIFORNIA THROUGH THAT ARGUMENT, THEN

9    I THINK THAT COULD CREATE VALID VENUE.  AND, YOUR HONOR, THAT

10   ACTUALLY LEADS TO A SECOND PROBLEM THAT WE HAVEN'T REALLY

11   ADDRESSED.  AND, OF COURSE, WE CAN THINK ABOUT IT.  WE DON'T

12   HAVE TO MAKE A DECISION NOW.

13         BUT AN ALTERNATIVE TO SENDING THE CASE BACK TO THE

14   HOME DISTRICT IN CALIFORNIA AND THEN REMANDING IT BACK AGAIN

15   UNDER 1404(A) WOULD BE TO SIMPLY TOLL THE STATUTE OF

16   LIMITATIONS FOR THOSE PLAINTIFFS THAT ARE IN CALIFORNIA SO THAT

17   THEY CAN JUST REFILE IN THE NORTHERN DISTRICT OF CALIFORNIA,

18   AND IT WOULD ELIMINATE TRANSFER ISSUE ALL TOGETHER.

19         THE ONLY REASON WHY WE WOULDN'T DO THAT, IF WE WERE

20   OTHERWISE TO CONSENT, WOULD SIMPLY BE A STATUTE OF LIMITATIONS

21   ISSUES, BUT THE COURT HAS BROAD TOLLING ABILITY UNDER EQUITABLE

22   TOLLING.

23         SO THERE'S A LOT OF DIFFERENT WAYS WE CAN DO THIS.  I

24   JUST WANT TO THROW IT OUT THERE AS ANOTHER POSSIBILITY.

25         **THE COURT:**  RIGHT.  WELL IF BOTH SIDES --

1          **UNIDENTIFIED SPEAKER:**  YOUR HONOR --

2          **THE COURT:**  IF BOTH SIDES CONSENT TO THE CASE BEING

3    TRIED IN THE NORTHERN DISTRICT OF CALIFORNIA, THEN NONE OF THIS

4    DISCUSSION MATTERS, RIGHT?  YOU CAN WAIVE VENUE.  YOU CAN

5    CONSENT TO YOUR CASE BEING TRIED IN THE NORTHERN DISTRICT OF

6    CALIFORNIA.  SO ANY PLAINTIFF WHO WANTS THEIR CASE TRIED IN THE

7    NORTHERN DISTRICT OF CALIFORNIA CAN HAVE IT TRIED IN THE

8    NORTHERN DISTRICT OF CALIFORNIA AS LONG AS EITHER MONSANTO ALSO

9    CONSENTS OR THEIR, YOU KNOW, VENUE -- THE CASE COULD HAVE BEEN

10   BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.

11          SO UNLESS I'M MISSING SOMETHING, I'M NOT SURE THERE

12   WOULD EVER BE A REASON TO GO THROUGH THE PROCESS OF HAVING A

13   TOLLING AGREEMENT AND DISMISSING THE CASE AND FILING A NEW CASE

14   IN THE NORTHERN DISTRICT OF CALIFORNIA.

15          AM I -- WHAT AM I MISSING, MR. WISNER?

16          **MR. WISNER:**  OH, IT WOULD JUST BE AN ALTERNATIVE TO

17   DOING THE DOUBLE TRANSFER.

18          **THE COURT:**  BUT WHY WOULDN'T --

19          (SIMULTANEOUS COLLOQUY.)

20          **THE COURT:**  BUT WHY WOULDN'T -- WHY WOULDN'T -- I

21   MEAN, WHY WOULDN'T MONSANTO JUST CONSENT TO THAT?  I MEAN, IF

22   IT'S GOING TO CONSENT TO TOLLING THE STATUTE OF LIMITATIONS FOR

23   THE PURPOSE OF THIS SORT OF CONVOLUTED PROCESS, WHY WOULDN'T IT

24   JUST CONSENT TO THE CASE BEING TRIED IN THE NORTHERN DISTRICT

25   IN THE FIRST PLACE?

1                (AT WHICH POINT, THE FTR RECORDING SYSTEM FAILED, AND

2            OFFICIAL REPORTER KATHERINE SULLIVAN WAS BROUGHT IN

3            TO REPORT THE PROCEEDINGS.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF TRANSCRIBER**

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                    *JMColumbini*

16                    JOAN MARIE COLUMBINI

17                     SEPTEMBER 28, 2018

18

19

20

21

22

23

24

25

**JOAN MARIE COLUMBINI, CSR, RPR**
**RETIRED OFFICIAL COURT REPORTER, USDC**
**510-367-3043**