**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:    (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Lynda K. Patterson v. Monsanto Co.*, Case No. 3:16-cv-05787-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff Lynda K. Patterson's Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      Monsanto admits the allegations in the first sentence of paragraph 1.  In response to the allegations in the second sentence of paragraph 1, Monsanto admits that glyphosate, the active ingredient in Roundup®-branded herbicides, is a non-selective herbicide and that certain Roundup®-branded herbicides are used to kill weeds that commonly compete with growing crops.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of

the specific numbers and statistics cited in the remaining sentences of paragraph 1 and therefore denies those allegations.

2.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in the first sentence of paragraph 2 and therefore denies those allegations.  In response to the allegations in second sentence of paragraph 2, Monsanto admits that Roundup®-branded products are safe when used in accordance with the products' labeling; that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world; and that Monsanto has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  To the extent that the second sentence of paragraph 2 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.  Monsanto denies the remaining allegations in paragraph 2.

3.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 3 and therefore denies those allegations.

4.      In response to the allegations in paragraph 4, Monsanto admits that the World Health Organization's International Agency for Research on Cancer ("IARC") issued a monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer hazard assessment around the world or that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.  Monsanto further denies that the members of the panel were "renowned scientists" or that they were free from conflicts of interest.  Monsanto denies the remaining allegations in paragraph 4.

5.      In response to the allegations in paragraph 5, Monsanto admits that it has stated, and continues to state, that Roundup®-branded products are safe when used in accordance with the products' labeling.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 5.

6.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 6 and therefore denies those allegations.

7.      Monsanto admits the allegations in the first and second sentences of paragraph 7. In response to the allegations in the final sentence of paragraph 7, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the final sentence of paragraph 7 and therefore denies those allegations.

8.      The allegations in paragraph 8 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 8 based upon the allegations in plaintiff's Complaint.

9.      The allegations in paragraph 9 set forth conclusions of law for which no response is required.

10.      Monsanto denies the allegations in paragraph 10.

11.      In response to the allegations in paragraph 11, Monsanto denies any "omissions" and certain events giving rise to plaintiff's claim and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 regarding where certain other events giving rise to plaintiff's claim occurred and therefore denies those allegations.  The remaining allegations in paragraph 11 set forth conclusions of law for which no response is required.

12.      In response to the allegations in paragraph 12, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 12 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 and therefore denies those allegations.

13.      Monsanto admits the allegations in the first sentence of paragraph 13.  Monsanto denies the allegations in the second sentence of paragraph 13 because the impact of glyphosate

on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the final sentence of paragraph 13 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the United States Environmental Protection Agency ("EPA").

14. Monsanto admits the allegations in paragraph 14.

15. In response to the allegations in paragraph 15, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 15.

16. Monsanto denies the allegations in paragraph 16.

17. The allegations in paragraph 17 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 17.

18. In response to the allegations in paragraph 18, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 18 set forth conclusions of law for which no response is required.

19. The allegations in paragraph 19 set forth conclusions of law for which no response is required.

20. In response to the allegations in paragraph 20, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the tests" in the final sentence of paragraph 20 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 20 set forth conclusions of law for which no response is required.

21.     Monsanto denies the allegations in paragraph 21 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 21 regarding such pesticide products generally and therefore denies those allegations.  The remaining allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     In response to the allegations in paragraph 22, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 22 and therefore denies those allegations.

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto further states that, in December  2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[4]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and therefore denies those allegations.

24.     In response to the allegations in paragraph 24, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] — one that shows evidence of non-carcinogenicity for humans — based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05787-VC

reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 24.

25.     In response to the allegations in paragraph 25, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 25 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

26.     In response to the allegations in paragraph 26, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product, but Monsanto denies the allegations to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 26 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

27.     In response to the allegations in paragraph 27, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

28.     In response to the allegations in paragraph 28, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 28 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

29.     In response to the allegations in paragraph 29, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 29 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

30.     In response to the allegations in paragraph 30, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for

1    itself and thus does not require any further answer.  The remaining allegations in paragraph 30

2    are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

3         31.    Monsanto denies the allegations in paragraph 31.

4         32.    In response to the allegations in paragraph 32, Monsanto admits that IARC was

5    created in 1965.  The remaining allegations in paragraph 32 are vague and conclusory and

6    comprise attorney characterizations, and are accordingly denied.

7         33.    Monsanto denies the allegations in the first and second sentences of paragraph 33.

8    Monsanto admits the allegations in the final sentence of paragraph 33.

9         34.    In response to the allegations in paragraph 34, Monsanto denies that IARC

10   follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

11   or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

12   paragraph 34, which are not limited as of any specified date, and accordingly denies the same.

13        35.    In response to the allegations in paragraph 35, Monsanto admits that IARC sets

14   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

15   Monsanto denies the remaining allegations in paragraph 35.

16        36.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

17   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

18   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

19   a belief as to the truth of the remaining allegations in paragraph 36 and therefore denies those

20   allegations.

21        37.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

22   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

23   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

24   a belief as to the truth of the remaining allegations in paragraph 37 and therefore denies those

25   allegations.

26        38.    Monsanto denies the allegations in paragraph 38 to the extent that they suggest

27   that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

28   glyphosate as a Group 2A agent in March 2015.

39.     In response to the allegations in paragraph 39, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."

40.     In response to the allegations in paragraph 40, Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 40.

41.     In response to the allegations in paragraph 41, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

42.     The allegations in paragraph 42 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

43.     In response to the allegations in paragraph 43, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that

document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 43.

44.     In response to the allegations in paragraph 44, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

45.     In response to the allegations in paragraph 45, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the allegations in paragraph 45 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

46.     In response to the allegations in paragraph 46, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.  Monsanto denies the remaining allegations in paragraph 46.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

47.     In response to the allegations in paragraph 47, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 47.

48.     In response to the allegations in paragraph 48, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in

community residents reported to be exposed to glyphosate, but Monsanto denies that the study

supports such a conclusion or that the authors of the study reached such a conclusion.

49.     In response to the allegations in the first sentence of paragraph 49, Monsanto

admits that certain studies have reported that glyphosate and glyphosate-based formulations

induced oxidative stress under artificial experimental conditions.  Monsanto denies that these

studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce

oxidative stress in humans or animals under real-world exposure conditions.  In response to the

allegations in the second sentence of paragraph 49, Monsanto states that the cited document

speaks for itself and does not require a response.  In response to the allegations in the final

sentence of paragraph 49 and in footnote 1, Monsanto denies that any exposure to glyphosate-

based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.

Monsanto denies the remaining allegations in paragraph 49.

50.     In response to the allegations in paragraph 50, Monsanto admits that the IARC

working group purported to make these findings, but denies that the cited studies provide any

reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or

persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 50.

51.     In response to the allegations in paragraph 51, Monsanto admits that the working

group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but

denies that the working group characterized that study as supporting an association between

glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

51.

52.     In response to the allegations in paragraph 52, Monsanto admits that the

referenced studies were published, but denies that the studies show any scientifically reliable

findings.

53.     In response to the allegations in paragraph 53, Monsanto denies that the cited

study provides any reliable basis for a finding that any meaningful levels of glyphosate are

present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 54.  Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  The remaining allegations in paragraph 54 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products,

1   including but not limited to glyphosate-based products, will be sold behind locked counters (no

2   free sales).  Monsanto further admits that the French government has announced that beginning

3   on January 1, 2019, the sale of non-professional lawn and garden products, including but not

4   limited to non-professional use glyphosate-based products, is prohibited with certain exceptions.

5   Monsanto denies the remaining allegations in paragraph 58.

6          59.    In response to the allegations in paragraph 59, Monsanto admits that some

7   employees of Bermuda's government announced an intention to suspend the importation of

8   glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of

9   the allegations about whether this suspension took effect and accordingly denies the same.

10  Monsanto denies the remaining allegations in paragraph 59.

11         60.    In response to the allegations in paragraph 60, Monsanto admits that the IARC

12  monograph appears to be the alleged basis for the Sri Lankan government's actions, including

13  the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

14  allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations

15  regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 60.

16         61.    In response to the allegations in paragraph 61, Monsanto denies the alleged basis

17  for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

18  explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

19  ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

20  concerns.  As of April 2016, the government of Colombia has resumed manual application of

21  glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs'

22  expert testimony purporting to link these same aerial eradication operations with cancer as

23  scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

24  denies the remaining allegations in paragraph 61.

25         62.    In response to the allegations in paragraph 62, Monsanto admits that 96

26  individuals signed a letter sent by Dr. Christopher Portier to the EU Health Commissioner

27  (hereinafter "the Portier letter").  Monsanto states that Dr. Portier has been disclosed as an expert

28  witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto.

1    Monsanto denies that Dr. Portier or the other signatories to his letter are "prominent experts,"

2    and Monsanto lacks information or knowledge sufficient to form a belief as to whether the other

3    signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a

4    retained expert for plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU

5    Health Commissioner to disregard the conclusion that glyphosate is not carcinogenic found by

6    the European Food Safety Authority ("EFSA") and by the German Federal Institute for Risk

7    Management ("BfR").

8          63.     In response to the allegations in paragraph 63, Monsanto denies that the self-

9    labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

10    extent that paragraph 63 characterizes the scientific evidence regarding the safety of glyphosate-

11    based herbicides, Monsanto denies the remaining allegations in paragraph 63.

12          64.     Monsanto admits that, in June 2016, the European Union continued to consider

13    the reregistration of glyphosate.  Monsanto also states that the allegations are out of date and that

14    the European Union has approved glyphosate for another five years.  Monsanto further notes

15    that, in March 2017, the European Chemical Agency ("ECHA") announced that its Committee

16    for Risk Assessment concluded that the available scientific evidence did not meet the criteria to

17    classify glyphosate as a carcinogen.  *See* ECHA, *Glyphosate not classified as a carcinogen by*

18    *ECHA*, https://echa.europa.eu/-/glyphosate-not-classified-as-a-carcinogen-by-echa.  Monsanto

19    denies the remaining allegations in paragraph 64.

20          65.     Monsanto lacks information or knowledge sufficient to form a belief as to the

21    truth of the allegations asserted in paragraph 65 and therefore denies those allegations.

22          66.     Monsanto lacks information or knowledge sufficient to form a belief as to the

23    truth of the allegations asserted in paragraph 66 and therefore denies those allegations.

24          67.     In response to the allegations in paragraph 67, Monsanto denies that any exposure

25    to Roundup®-branded products can cause NHL and other serious illnesses.  Monsanto lacks

26    information or knowledge sufficient to form a belief as to the truth of the remaining allegations

27    asserted in paragraph 67 and therefore denies those allegations.

28

68.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 68 and therefore denies those allegations.

69.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 69 and therefore denies those allegations.

70.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 70 and therefore denies those allegations.

71.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 71 and therefore denies those allegations.

72.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies the allegations in paragraph 72.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

73.     Monsanto incorporates by reference its responses to paragraphs 1 through 72 in response to paragraph 73 of plaintiff's Complaint.

74.     In response to the allegations in paragraph 74, Monsanto denies that it violated the laws of Illinois or federal law and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 74 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

75.     Monsanto denies the allegations in the first sentence of paragraph 75.  The second sentence in paragraph 75 sets forth a conclusion of law for which no response is required. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

76.     Monsanto incorporates by reference its responses to paragraphs 1 through 75, in response to paragraph 76 of plaintiff's Complaint.

77.     In response to the allegations in paragraph 77, Monsanto admits that plaintiff purports to bring a claim for defective design, but Monsanto denies any liability as to that claim.

78.     Monsanto denies the allegations in the first and second sentences of paragraph 78.

1  In response to the last sentence of paragraph 78, Monsanto lacks information or knowledge

2  sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to

3  Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

4  remaining allegations in paragraph 78.

5       79.    Monsanto denies the allegations in paragraph 79.

6       80.    Monsanto denies the allegations in paragraph 80.

7       81.    Monsanto denies the allegations in paragraph 81.

8       82.    Monsanto denies the allegations in paragraph 82.

9       83.    Monsanto lacks information or knowledge sufficient to form a belief as to the

10  truth of the allegations in paragraph 83 concerning the condition of any Roundup®-branded

11  product allegedly used by plaintiff or about plaintiff's alleged uses of such product and therefore

12  denies those allegations.  The remaining allegations in paragraph 83 set forth conclusions of law

13  for which no response is required.

14      84.    Monsanto denies the allegations in paragraph 84.

15      85.    Monsanto denies the allegations in paragraph 85.

16      86.    Monsanto lacks information or knowledge sufficient to form a belief as to the

17  truth of the allegations in paragraph 84 concerning plaintiff's claimed use of Roundup®-branded

18  products and therefore denies those allegations.  Monsanto denies the remaining allegations in

19  paragraph 86, including that Roundup®-branded products have "dangerous characteristics."

20      87.    Monsanto lacks information or knowledge sufficient to form a belief as to the

21  truth of the allegations in paragraph 87 concerning plaintiff's claimed use of Roundup®-branded

22  products and therefore denies those allegations.  Monsanto denies the remaining allegations in

23  paragraph 87, including that Roundup®-branded products have "dangerous characteristics."

24      88.    Monsanto denies the allegations in paragraph 88.

25      89.    Monsanto denies the allegations in paragraph 89.

26      90.    Monsanto denies the allegations in paragraph 90.

27      91.    Monsanto denies the allegations in paragraph 91.

28      92.    Monsanto denies the allegations in paragraph 92.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05787-VC

93.     In response to the allegations in paragraph 93, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

94.     Monsanto incorporates by references its responses to paragraphs 1 through 93 in response to paragraph 94 of plaintiff's Complaint.

95.     In response to the allegations in paragraph 95, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

96.     Monsanto denies the allegations in paragraph 96.

97.     In response to the allegations in paragraph 97, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiff or other individuals purchased or used Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph 97 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 97.

98.     The allegations in paragraph 98 set forth conclusions of law for which no response is required.

99.     Monsanto denies the allegations in paragraph 99.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

100.    Monsanto denies the allegations in paragraph 100.

101.    Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 103 and therefore denies those allegations.

104.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

1   remaining allegations in paragraph 104, including that Roundup®-branded products have

2   "dangerous characteristics."

3        105.    Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 105 concerning plaintiff's alleged use of and exposure to

5   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

6   remaining allegations in paragraph 105, including that Roundup®-branded products have

7   "dangerous characteristics."

8        106.    Monsanto lacks information or knowledge sufficient to form a belief as to the

9   truth of the allegations in the second sentence of paragraph 106 and therefore denies those

10  allegations.  Monsanto denies the remaining allegations in paragraph 106.

11       107.    Monsanto denies the allegations in paragraph 107.

12       108.    In response to the allegations in paragraph 108, Monsanto denies that there is any

13  risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to

14  Roundup®-branded products and glyphosate.  The allegations in the second sentence of

15  paragraph 108 set forth conclusions of law for which no response is required.  Monsanto denies

16  the remaining allegations in paragraph 108.  All labeling of Roundup®-branded products has

17  been and remains EPA-approved and in compliance with all applicable laws and regulations.

18       109.    Monsanto denies the allegations in paragraph 109.

19       110.    Monsanto lacks information or knowledge sufficient to form a belief as to the

20  truth of the allegations in paragraph 110 concerning plaintiff's alleged use of Roundup®-branded

21  products and therefore denies those allegations.  Monsanto denies the remaining allegations in

22  paragraph 110.

23       111.    Monsanto denies the allegations in paragraph 111.

24       112.    Monsanto denies the allegations in paragraph 112.  All labeling of Roundup®-

25  branded products has been and remains EPA-approved and in compliance with all federal

26  requirements under FIFRA.

27       113.    Monsanto denies the allegations in paragraph 113.

28

114.     In response to the allegations in paragraph 114, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

115.     Monsanto incorporates by references its responses to paragraphs 1 through 114 in response to paragraph 115 of plaintiff's Complaint.

116.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 116 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 116.

117.     The allegations in paragraph 117 set forth conclusions of law for which no response is required.

118.     The allegations in paragraph 118 set forth conclusions of law for which no response is required.

119.     Monsanto denies the allegations in paragraph 119.

120.     Monsanto denies the allegations in paragraph 120.

121.     Monsanto denies the allegations in paragraph 121.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

122.     Monsanto denies the allegations in paragraph 122.

123.     Monsanto denies the allegations in paragraph 123.

124.     Monsanto denies the allegations in paragraph 124.

125.     Monsanto denies the allegations in paragraph 125, including each of its subparts.

126.     Monsanto denies the allegations in paragraph 126.

127.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 127 regarding plaintiff's knowledge and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 127, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

1      128.    Monsanto denies the allegations in paragraph 128.

2      129.    Monsanto denies the allegations in paragraph 129.

3      130.    In response to the allegations in paragraph 130, Monsanto demands that judgment

4  be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

5  prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

6  by law and such further and additional relief as this Court may deem just and proper.

7      131.    Monsanto incorporates by references its responses to paragraphs 1 through 130 in

8  response to paragraph 131 of plaintiff's Complaint.

9      132.    Monsanto denies the allegations in paragraph 132.

10     133.    Monsanto denies the allegations in paragraph 133.  All labeling of Roundup®-

11  branded products has been and remains EPA-approved and in compliance with all federal

12  requirements under FIFRA.

13     134.    Monsanto denies the allegations in paragraph 134.  All labeling of Roundup®-

14  branded products has been and remains EPA-approved and in compliance with all federal

15  requirements under FIFRA.

16     135.    Monsanto lacks information or knowledge sufficient to form a belief as to the

17  truth of the allegations in paragraph 135 regarding plaintiff's knowledge about Roundup®-

18  branded products and therefore denies those allegations in paragraph 135.  Monsanto denies the

19  remaining allegations in paragraph 135.

20     136.    Monsanto lacks information or knowledge sufficient to form a belief as to the

21  truth of the allegations in paragraph 136 regarding plaintiff's knowledge about Roundup®-

22  branded products and therefore denies those allegations in paragraph 136.  Monsanto denies the

23  remaining allegations in paragraph 136.

24     137.    Monsanto lacks information or knowledge sufficient to form a belief as to the

25  truth of the allegations in paragraph 137 regarding plaintiff's knowledge about Roundup®-

26  branded products and therefore denies those allegations in paragraph 137.  Monsanto denies the

27  remaining allegations in paragraph 137.

28

138.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 138 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies those allegations in paragraph 138.  Monsanto denies the remaining allegations in paragraph 138.

139.     Monsanto denies the allegations in paragraph 139.

140.     Monsanto denies the allegations in paragraph 140.

141.     Monsanto denies the allegations in paragraph 141.

142.     Monsanto denies the allegations in paragraph 142.

143.     In response to the allegations in paragraph 143, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

144.     Monsanto incorporates by references its responses to paragraphs 1 through 143 in response to paragraph 144 of plaintiff's Complaint.

145.     Monsanto denies the allegations in paragraph 145.

146.     Monsanto denies the allegations in paragraph 146.

147.     Monsanto denies the allegations in paragraph 147.

148.     The allegations in paragraph 148 set forth a conclusion of law that does not require a response.

149.     In response to the allegations in paragraph 149, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.      Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05787-VC

1   independent, intervening and superseding causes of the alleged injuries, including but not limited
2   to plaintiff's pre-existing medical conditions.

3         11.    The doctrines contained in Restatement (Second) of Torts § 402A, comments j
4   and k, bar plaintiff's claims against Monsanto in whole or in part.

5         12.    Applicable statutes of limitations, prescriptive periods, and/or statutes of repose
6   bar plaintiff's claims in whole or in part.

7         13.    Plaintiff's misuse or abnormal use of the product or failure to follow instructions
8   bar plaintiff's claims in whole or in part.

9         14.    If plaintiff suffered injury or damages as alleged, which is denied, such injury or
10   damage resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither
11   liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative
12   degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that
13   are not related or connected with any product sold, distributed, or manufactured by Monsanto.
14   Such acts or omissions on the part of others or diseases or causes constitute an independent,
15   intervening and sole proximate cause of plaintiff's alleged injury or damages.

16         15.    Monsanto had no legal relationship or privity with plaintiff and owed no duty to
17   plaintiff by which liability could be attributed to it.

18         16.    Monsanto made no warranties of any kind or any representations of any nature
19   whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies,
20   then plaintiff failed to give notice of any breach thereof.

21         17.    Plaintiff's claims are preempted in whole or part by the Freedom of Speech
22   Clause of the First Amendment of the U.S. Constitution.

23         18.    Plaintiff's claims for exemplary and/or punitive damages are barred because such
24   an award would violate Monsanto's due process, equal protection and other rights under the
25   United States Constitution, the Illinois Constitution, and/or other applicable state constitutions.

26         19.    Plaintiff's claims for exemplary and/ or punitive damages are barred because
27   plaintiff has failed to allege conduct warranting imposition of punitive damages under Illinois
28   law and/or other applicable state laws.

20.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

23.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

25.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize or limit such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Monsanto demands a jury trial on all issues so triable.

DATED: October 17, 2018

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05787-VC