**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-cv-05660-VC |
| This document relates to: | |
| *Mark Scheffer v. Monsanto Co.*, Case No. 3:16-cv-05660-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff Mark Scheffer's Amended Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1, Monsanto admits that it discovered the herbicidal properties of glyphosate and that it has manufactured Roundup®-branded herbicides.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations concerning plaintiff's use

- 1 -

1    of and/or exposure to Roundup®-branded products and therefore denies those allegations.

2    Monsanto denies the remaining allegations in paragraph 1.

3         2.      Monsanto lacks information or knowledge sufficient to form a belief as to the

4    truth of the allegations in paragraph 2 and therefore denies those allegations.

5         3.      In response to the allegations in paragraph 3, Monsanto denies that any exposure

6    to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious

7    illnesses.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of

8    the remaining allegations in paragraph 3 and therefore denies those allegations.

9         4.      In response to the allegations in paragraph 4, Monsanto admits that the World

10   Health Organization's International Agency for Research on Cancer ("IARC") issued a

11   monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate

12   under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer

13   hazard assessment around the world or that IARC based its evaluation on a complete or accurate

14   assessment of the scientific research regarding glyphosate.  Monsanto further denies that the

15   members of the panel were "renowned scientists" or that they were free from conflicts of

16   interest.  In response to the allegations in the final sentence of paragraph 4, Monsanto admits that

17   the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it

18   was required to add glyphosate to California's Proposition 65 list of chemicals in a process that

19   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

20   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

21   was not based upon any independent scientific analysis of glyphosate but instead was in response

22   to a provision of a California ballot proposition triggering such action based solely upon the

23   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

24   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

25   pose a cancer hazard to humans."[1]  Monsanto contends that OEHHA's decision that it was

26   required to list glyphosate violates the United States Constitution and the California Constitution.

27   _____

[1] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),

28   https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

1    On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

2    warning labels for glyphosate as unconstitutional. The remaining allegations in the final sentence

3    of paragraph 4 set forth conclusions of law for which no response is required.  To the extent a

4    response is deemed required, Monsanto denies the remaining allegations in paragraph 4.

5        5.     Monsanto admits the allegations in the first sentence of paragraph 5.  In response

6    to the allegations in the second sentence of paragraph 5, Monsanto admits that glyphosate, the

7    active ingredient in Roundup®-branded herbicides, is a non-selective herbicide and that certain

8    Roundup®-branded herbicides are used to kill weeds that commonly compete with growing

9    crops.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of

10   the specific numbers and statistics cited in the remaining sentences of paragraph 5 and therefore

11   denies those allegations.

12       6.     In response to the allegations in the first sentence of paragraph 6, Monsanto

13   admits that it has stated, and continues to state, that Roundup®-branded products are safe when

14   used in accordance with the products' labeling.  Monsanto denies that any exposure to

15   glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious

16   illnesses.  Monsanto denies the remaining allegations in paragraph 6.

17       7.     Monsanto lacks information or knowledge sufficient to form a belief as to the

18   truth of the allegations in paragraph 7 and therefore denies those allegations.

19       8.     Monsanto admits the allegations in the first and second sentences of paragraph 8.

20   In response to the allegations in the final sentence of paragraph 8, Monsanto admits that it was

21   the entity that discovered the herbicidal properties of glyphosate and that Monsanto

22   manufactures Roundup®-branded products that have glyphosate as the active ingredient, but

23   notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides..

24   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

25   remaining allegations in the final sentence of paragraph 8 and therefore denies those allegations.

26       9.     The allegations in paragraph 9 set forth conclusions of law for which no response

27   is required.  To the extent that a response is deemed required, Monsanto admits the allegations in

28   paragraph 9 based upon the allegations in plaintiff's Complaint.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

10.     The allegations in paragraph 10 set forth conclusions of law for which no response is required.

11.     Monsanto denies the allegations in paragraph 11.

12.     In response to the allegations in paragraph 12, Monsanto denies any "omissions" and certain events giving rise to plaintiff's claim and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding where certain other events giving rise to plaintiff's claim occurred and therefore denies those allegations.

13.     In response to the allegations in paragraph 13, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 13 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 13 and therefore denies those allegations.

14.     Monsanto admits the allegations in the first sentence of paragraph 14.  Monsanto denies the allegations in the second sentence of paragraph 14 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the final sentence of paragraph 14 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the United States Environmental Protection Agency ("EPA").

15.     Monsanto admits the allegations in paragraph 15.

16.     In response to the allegations in paragraph 16, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 16.

17.     The allegations in paragraph 17 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 17.

18.     In response to the allegations in paragraph 18, Monsanto admits that EPA requires

1    registrants of herbicides to submit extensive data in support of the human health and

2    environmental safety of their products and further admits that EPA will not register or approve

3    the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining

4    allegations in paragraph 18 set forth conclusions of law for which no response is required.

5          19.     The allegations in paragraph 19 set forth conclusions of law for which no

6    response is required.

7          20.     In response to the allegations in paragraph 20, Monsanto admits that EPA requires

8    registrants of herbicides to submit extensive data in support of the human health and

9    environmental safety of their products and further admits that EPA will not register or approve

10    the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

11    states that the term "the tests" in the final sentence of paragraph 20 is vague and ambiguous, and

12    Monsanto therefore denies the same.  The remaining allegations in paragraph 20 set forth

13    conclusions of law for which no response is required.

14          21.     Monsanto denies the allegations in paragraph 21 to the extent they suggest that

15    EPA only evaluates the safety of pesticide products on the date of their initial registration.

16    Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

17    products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

18    of the allegations in paragraph 21 regarding such pesticide products generally and therefore

19    denies those allegations.  The remaining allegations in paragraph 21 set forth conclusions of law

20    for which no response is required.

21          22.     In response to the allegations in paragraph 22, Monsanto admits that EPA has

22    undertaken a regulatory review of glyphosate and that EPA has not released its findings.

23    Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs

24    ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that

25    "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses

26    relevant to human health risk assessment"[2]; and (b) at the same time, EPA posted an October

27

28

---

[2] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"),

*(Footnote continued)*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

1    2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which

2    CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic

3    to Humans."[3]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed,

4    lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion

5    that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[4]

6    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

7    remaining allegations in paragraph 22 and therefore denies these allegations.

8          23.      In response to the allegations in paragraph 23, Monsanto admits that EPA posted

9    the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the

10    website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the

11    EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not

12    Likely to be Carcinogenic to Humans."  Monsanto further states that, in December  2017, EPA's

13    OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that

14    reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be

15    carcinogenic to humans'."[5]  Monsanto lacks information or knowledge sufficient to form a belief

16    as to the truth of the remaining allegations in paragraph 23 and therefore denies those allegations.

17          24.      In response to the allegations in paragraph 24, Monsanto admits that an EPA

18    review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

19    changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

20    evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

21

22    ───────────────
   https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP

23    Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

24    [3] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the*

25    *Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

26    [4] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/

27    document?D=EPA-HQ-OPP-2016-0385-0528.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

that plaintiff has accurately quoted from one passage in an EPA document in 1991 with

respect to the designation of an agent as Group E, but states that EPA repeatedly has

concluded that glyphosate does not pose any cancer risk to humans.  In addition to the

conclusions in the two EPA OPP Reports and the EPA CARC Final Report discussed

above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] — one that shows evidence of non-carcinogenicity for humans — based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 24.

25.      In response to the allegations in paragraph 25, Monsanto admits that it – along

with a large number of other companies and governmental agencies – was defrauded by two

chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct

toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any

- 7 -

1   glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies.  To

2   the extent that the allegations in paragraph 25 are intended to suggest that Monsanto was

3   anything other than a victim of this fraud, such allegations are denied.

4           26.     In response to the allegations in paragraph 26, Monsanto admits that IBT

5   Laboratories was hired to conduct toxicity studies in connection with the registration of a

6   Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is

7   based upon any fraudulent or false IBT studies.

8           27.     Monsanto denies the allegations in paragraph 27 to the extent they suggest that

9   EPA performed an inspection of IBT Laboratories solely or specifically in connection with

10   studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT

11   Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in

12   connection with services provided to a broad number of private and governmental entities and

13   that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

14   one of several pesticide manufacturers who had used IBT test results.  The audit found some

15   toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

16   Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

17   Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

18   based upon any invalid IBT studies.  To the extent that the allegations in paragraph 27 are

19   intended to suggest that Monsanto was anything other than a victim of this fraud, such

20   allegations also are denied.

21           28.     In response to the allegations in paragraph 28, Monsanto admits that three IBT

22   employees were convicted of the charge of fraud, but Monsanto denies that any of the

23   individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

24   herbicides.

25           29.     In response to the allegations in paragraph 29, Monsanto admits that it – along

26   with numerous other private companies – hired Craven Laboratories as an independent

27   laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further

28   admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

1    studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations

2    in paragraph 29 are intended to suggest that Monsanto was anything other than a victim of this

3    fraud, such allegations are denied.

4            30.    In response to the allegations in paragraph 30, Monsanto admits that Roundup®-

5    branded products are highly valued by its customers because of their efficacy and safety.

6    Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

7    remaining allegations in paragraph 30 are vague and conclusory and comprise attorney

8    characterizations and are accordingly denied.

9            31.    In response to the allegations in paragraph 31, Monsanto admits that following the

10   development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

11   are now widely used by farmers in the United States and worldwide.  Monsanto lacks

12   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

13   cited in paragraph 31 and accordingly denies those allegations.  The remaining allegations in

14   paragraph 31 are vague and conclusory and comprise attorney characterizations and are

15   accordingly denied.

16           32.    In response to the allegations in paragraph 32, Monsanto admits that glyphosate is

17   one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

18   is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

19   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

20   cited in paragraph 32 and accordingly denies the same.  The remaining allegations in paragraph

21   32 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

22           33.    In response to the allegations in paragraph 33, Monsanto admits that the New

23   York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

24   advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

25   admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

26   General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

27   the subparts of paragraph 33 purport to quote a document, the document speaks for itself and

28   thus does not require any further response.  The remaining allegations in paragraph 33 are vague

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

1    and conclusory and comprise attorney characterizations, and are accordingly denied.

2         34.     In response to the allegations in paragraph 34, Monsanto admits it entered into an

3    assurance of discontinuance with the New York Attorney General.  The assurance speaks for

4    itself and thus does not require any further answer.  The remaining allegations in paragraph 34

5    are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

6         35.     Monsanto denies the allegations in paragraph 35.

7         36.     In response to the allegations in paragraph 36, Monsanto admits that the French

8    court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

9    that it "left the soil clean," but denies the allegations in paragraph 36 to the extent they suggest

10   that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.

11   Monsanto denies the remaining allegations in paragraph 36.

12        37.     In response to the allegations in paragraph 37, Monsanto admits that IARC was

13   created in 1965.  The remaining allegations in paragraph 37 are vague and conclusory and

14   comprise attorney characterizations, and are accordingly denied.

15        38.     Monsanto denies the allegations in the first and second sentences of paragraph 38.

16   Monsanto admits the allegations in the final sentence of paragraph 38.

17        39.     In response to the allegations in paragraph 39, Monsanto denies that IARC

18   follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

19   or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

20   paragraph 39, which are not limited as of any specified date, and accordingly denies the same.

21        40.     In response to the allegations in paragraph 40, Monsanto admits that IARC sets

22   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

23   Monsanto denies the remaining allegations in paragraph 40.

24        41.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

25   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

26   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

27   a belief as to the truth of the remaining allegations in paragraph 41 and therefore denies those

28   allegations.

42.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43.     Monsanto denies the allegations in paragraph 43 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

44.     In response to the allegations in paragraph 44, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."

45.     In response to the allegations in paragraph 45, Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

47.     The allegations in paragraph 47 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

48.     In response to the allegations in paragraph 48, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 48.

49.     In response to the allegations in paragraph 49, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

50.     In response to the allegations in paragraph 50, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the allegations in paragraph 50 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

51.     In response to the allegations in paragraph 51, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.  Monsanto denies the remaining allegations in paragraph 51.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

52.     In response to the allegations in paragraph 52, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

54.     In response to the allegations in the first sentence of paragraph 54, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  In response to the allegations in the second sentence of paragraph 54, Monsanto states that the cited document speaks for itself and does not require a response.  In response to the allegations in the final sentence of paragraph 54 and in footnote 1, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses. Monsanto denies the remaining allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

- 13 -

between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

58.     In response to the allegations in paragraph 58, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 59.  Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  The remaining allegations in paragraph 59 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

60.     In response to the allegations in paragraph 60, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

1   classification.  Monsanto denies the remaining allegations in paragraph 61.

2       62.     In response to the allegations in paragraph 62, Monsanto admits that the IARC

3   working group classification led an individual government attorney in Brazil to write a letter to

4   the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the

5   remaining allegations in paragraph 62.

6       63.     In response to the allegations in paragraph 63, Monsanto admits that following the

7   IARC working group classification, in France, all non-professional plant protection products,

8   including but not limited to glyphosate-based products, will be sold behind locked counters (no

9   free sales).  Monsanto further admits that the French government has announced that beginning

10  on January 1, 2019, the sale of non-professional lawn and garden products, including but not

11  limited to non-professional use glyphosate-based products, will be prohibited with certain

12  exceptions.  Monsanto denies the remaining allegations in paragraph 63.

13      64.     In response to the allegations in paragraph 64, Monsanto admits that some

14  employees of Bermuda's government announced an intention to suspend the importation of

15  glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of

16  the allegations about whether this suspension took effect and accordingly denies the same.

17  Monsanto denies the remaining allegations in paragraph 64.

18      65.     In response to the allegations in paragraph 65, Monsanto admits that the IARC

19  monograph appears to be the alleged basis for the Sri Lankan government's actions, including

20  the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

21  allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations

22  regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 60.

23      66.     In response to the allegations in paragraph 66, Monsanto denies the alleged basis

24  for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

25  explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

26  ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

27  concerns.  As of April 2016, the government of Colombia has resumed manual application of

28  glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs'

1   expert testimony purporting to link these same aerial eradication operations with cancer as

2   scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

3   denies the remaining allegations in paragraph 66.

4         67.     In response to the allegations in paragraph 67, Monsanto admits that 96

5   individuals signed a letter sent by Dr. Christopher Portier to the EU Health Commissioner

6   (hereinafter "the Portier letter").  Monsanto states that Dr. Portier has been disclosed as an expert

7   witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto.

8   Monsanto denies that Dr. Portier or the other signatories to his letter are "prominent experts,"

9   and Monsanto lacks information or knowledge sufficient to form a belief as to whether the other

10  signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a

11  retained expert for plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU

12  Health Commissioner to disregard the conclusion that glyphosate is not carcinogenic found by

13  the European Food Safety Authority ("EFSA") and by the German Federal Institute for Risk

14  Management ("BfR").

15        68.     In response to the allegations in paragraph 68, Monsanto denies that the self-

16  labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

17  extent that paragraph 68 characterizes the scientific evidence regarding the safety of glyphosate-

18  based herbicides, Monsanto denies the remaining allegations in paragraph 68.

19        69.     Monsanto admits that, in June 2016, the European Union continued to consider

20  the reregistration of glyphosate.  Monsanto also states that the allegations are out of date and that

21  the European Union has approved glyphosate for another five years.  Monsanto further notes

22  that, in March 2017, the European Chemical Agency ("ECHA") announced that its Committee

23  for Risk Assessment concluded that the available scientific evidence did not meet the criteria to

24  classify glyphosate as a carcinogen.  *See* ECHA, *Glyphosate not classified as a carcinogen by*

25  *ECHA*, https://echa.europa.eu/-/glyphosate-not-classified-as-a-carcinogen-by-echa.  Monsanto

26  denies the remaining allegations in paragraph 69.

27        70.     In response to the allegations paragraph 70, Monsanto denies that any exposure to

28  Roundup®-branded products can cause NHL and other serious illnesses.  Monsanto lacks

1   information or knowledge sufficient to form a belief as to the truth of the remaining allegations
2   in paragraph 70 and therefore denies those allegations.

3        71.     Monsanto lacks information or knowledge sufficient to form a belief as to the
4   truth of the allegations in paragraph 71 and therefore denies those allegations.

5        72.     Monsanto lacks information or knowledge sufficient to form a belief as to the
6   truth of the allegations in paragraph 72 and therefore denies those allegations.

7        73.     Monsanto lacks information or knowledge sufficient to form a belief as to the
8   truth of the allegations in paragraph 73 and therefore denies those allegations.

9        74.     Monsanto incorporates by reference its responses to paragraphs 1 through 73 in
10  response to paragraph 74 of plaintiff's Complaint.

11       75.     In response to the allegations in paragraph 72, Monsanto denies that it violated the
12  laws of Massachusetts or federal law and states that it complied with all applicable law regarding
13  Roundup®-branded products.  The remaining allegations in paragraph 72 set forth conclusions of
14  law for which no response is required.  To the extent that a response is deemed required,
15  Monsanto denies all such allegations.

16       76.     The allegations in paragraph 76 set forth conclusions of law for which no
17  response is required.

18       77.     Monsanto denies the allegations in the first sentence of paragraph 77.  The second
19  sentence in paragraph 77 sets forth a conclusion of law for which no response is required. All
20  labeling of Roundup®-branded products has been and remains EPA-approved and in compliance
21  with all federal requirements under FIFRA.

22       78.     Monsanto admits the Dr. Scheffer sent Monsanto a demand letter on August 9,
23  2016, but states that the letter speaks for itself and does not require any further response.

24       79.     Monsanto admits that it responded to Dr. Scheffer's demand letter by letter dated
25  September 7, 2016, but states that Monsanto's letter speaks for itself and does not require any
26  further response.

27       80.     Monsanto incorporates by reference its responses to paragraphs 1 through 79 in
28  response to paragraph 80 of plaintiff's Complaint.

81.     In response to the allegations paragraph 81, Monsanto admits that plaintiff purports to bring a claim for strict liability defective design, but Monsanto denies any liability as to that claim.

82.     Monsanto denies the allegations in the first and second sentences of paragraph 82. In response to the last sentence of paragraph 82, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 82.

83.     Monsanto denies the allegations in paragraph 83.

84.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 84 concerning the condition of any Roundup®-branded product allegedly used by plaintiff or about plaintiff's alleged uses of such product and therefore denies those allegations.  The remaining allegations in paragraph 84 set forth conclusions of law for which no response is required.

85.     Monsanto denies the allegations in paragraph 85.

86.     Monsanto denies the allegations in paragraph 86.

87.     Monsanto denies the allegations in paragraph 87.

88.     Monsanto denies the allegations in paragraph 88 and each of its subparts.

89.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 89 concerning plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 89, including that Roundup®-branded products have "dangerous characteristics."

90.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 90 concerning plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 90, including that Roundup®-branded products have "dangerous characteristics."

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92.

1    93.    Monsanto denies the allegations in paragraph 93.

2    94.    Monsanto denies the allegations in paragraph 94.

3    95.    Monsanto denies the allegations in paragraph 95.

4    96.    Monsanto denies the allegations in paragraph 96.

5    97.    Monsanto denies the allegations in paragraph 97.

6    98.    Monsanto denies the allegations in paragraph 98.

7    99.    Monsanto denies the allegations in paragraph 99.

8    100.    Monsanto denies the allegations in paragraph 100.

9    101.    In response to the allegations in paragraph 101, Monsanto demands that judgment

10   be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

11   prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

12   by law and such further and additional relief as this Court may deem just and proper.

13   102.    Monsanto incorporates by reference its responses to paragraphs 1 through 101 in

14   response to paragraph 102 of plaintiff's Complaint.

15   103.    In response to the allegations in paragraph 103, Monsanto admits that plaintiff

16   purports to bring a claim for strict liability failure to warn, but denies any liability as to that

17   claim.

18   104.    Monsanto denies the allegations in paragraph 104.

19   105.    In response to the allegations in paragraph 105, Monsanto lacks information or

20   knowledge sufficient to form a belief as to the truth of the allegations that plaintiff or other

21   persons or entities purchased or used Roundup®-branded products and therefore denies those

22   allegations.  The allegations in paragraph 105 also set forth conclusions of law for which no

23   response is required.  Monsanto denies the remaining allegations in paragraph 105.

24   106.    The allegations in paragraph 106 set forth conclusions of law for which no

25   response is required.

26   107.    Monsanto denies the allegations in paragraph 107.  All labeling of Roundup®-

27   branded products has been and remains EPA-approved and in compliance with all federal

28   requirements under FIFRA.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto denies the allegations in paragraph 109.

110.    Monsanto denies the allegations in paragraph 110.

111.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 111 and therefore denies those allegations.

112.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 112, including that Roundup®-branded products have "dangerous characteristics."

113.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 113 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 113, including that Roundup®-branded products have "dangerous characteristics.

114.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 114 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 114.

115.    Monsanto denies the allegations in paragraph 115.

116.    Monsanto denies the allegations in paragraph 116.

117.    In response to the allegations in paragraph 117, Monsanto denies that there is any risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to Roundup®-branded products and glyphosate.  The allegations in the second sentence of paragraph 117 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 117.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all applicable laws and regulations.

118.    Monsanto denies the allegations in paragraph 118.

1    119.    Monsanto lacks information or knowledge sufficient to form a belief as to the

2    truth of the allegations in paragraph 119 concerning plaintiff's alleged use of Roundup®-branded

3    products and therefore denies those allegations.  Monsanto denies the remaining allegations in

4    paragraph 119.

5    120.    Monsanto denies the allegations in paragraph 120.

6    121.    Monsanto denies the allegations in paragraph 121.  All labeling of Roundup®-

7    branded products has been and remains EPA-approved and in compliance with all federal

8    requirements under FIFRA.

9    122.    Monsanto denies the allegations in paragraph 122.

10    123.    Monsanto denies the allegations in paragraph 123.

11    124.    In response to the allegations in paragraph 124, Monsanto demands that judgment

12    be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

13    prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

14    by law and such further and additional relief as this Court may deem just and proper.

15    125.    Monsanto incorporates by reference its responses to paragraphs 1 through 124 in

16    response to paragraph 125 of plaintiff's Complaint.

17    126.    Monsanto lacks information or knowledge sufficient to form a belief as to the

18    truth of the allegations in paragraph 126 regarding the specific products allegedly used by

19    plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore

20    denies the allegations in paragraph 126.

21    127.    The allegations in paragraph 127 set forth conclusions of law for which no

22    response is required.

23    128.    The allegations in paragraph 128 set forth conclusions of law for which no

24    response is required.

25    129.    Monsanto denies the allegations in paragraph 129.

26    130.    Monsanto denies the allegations in paragraph 130.

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC

131.    Monsanto denies the allegations in paragraph 131.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

132.    Monsanto denies the allegations in paragraph 132.

133.    Monsanto denies the allegations in the first sentence of paragraph 133.  In response to the allegations in the second sentence of paragraph 133, Monsanto denies that Monsanto's promotional activities were not honest.  The remaining allegations in paragraph 133 set forth conclusions of law for which no response is required.

134.    Monsanto denies the allegations in paragraph 134.

135.    Monsanto denies the allegations in paragraph 135, including each of its subparts.

136.    Monsanto denies the allegations in paragraph 136.

137.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 137 regarding plaintiff's knowledge and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 137, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

138.    Monsanto denies the allegations in paragraph 138.

139.    Monsanto denies the allegations in paragraph 139.

140.    Monsanto denies the allegations in paragraph 140.

141.    Monsanto denies the allegations in paragraph 141.

142.    In response to the allegations in paragraph 142, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

143.    Monsanto incorporates by reference its responses to paragraphs 1 through 142 in response to paragraph 143 of plaintiff's Complaint.

144.    Monsanto denies the allegations in paragraph 144.

145.     Monsanto denies the allegations in paragraph 145. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

146.     Monsanto denies the allegations in paragraph 146. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

147.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 147 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies those allegations in paragraph 147. Monsanto denies the remaining allegations in paragraph 147.

148.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 148 and therefore denies those allegations.

149.     Monsanto denies the allegations in paragraph 149.

150.     Monsanto denies the allegations in paragraph 150.

151.     Monsanto denies the allegations in paragraph 151.

152.     Monsanto denies the allegations in paragraph 152.

153.     Monsanto denies the allegations in paragraph 153.

154.     In response to the allegations in paragraph 154, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

155.     Monsanto incorporates by reference its responses to paragraphs 1 through 154 in response to paragraph 155 of plaintiff's Complaint.

156.     Monsanto denies the allegations in paragraph 156. Additionally, the last sentence of paragraph 156 sets forth conclusions of law for which no response is required.

157.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 157 concerning plaintiff's claimed use of Roundup®-branded

1   products and therefore denies those allegations.  The remaining allegations in paragraph 157 set

2   forth conclusions of law for which no response is required.

3       158.    Monsanto denies the allegations in paragraph 158.  All labeling of Roundup®-

4   branded products has been and remains EPA-approved and in compliance with all federal

5   requirements under FIFRA.

6       159.    The allegations in paragraph 159 set forth conclusions of law for which no

7   response is required.

8       160.    Monsanto lacks information or knowledge sufficient to form a belief as to the

9   truth of the allegations in paragraph 160 and therefore denies those allegations.

10      161.    Monsanto lacks information or knowledge sufficient to form a belief as to the

11  truth of the allegations in paragraph 161 concerning the claimed use of Roundup®-branded

12  products by plaintiff and others and therefore denies those allegations.  The remaining

13  allegations in paragraph 161 set forth conclusions of law for which no response is required.

14      162.    Monsanto lacks information or knowledge sufficient to form a belief as to the

15  truth of the allegations in paragraph 162 regarding plaintiff's claimed use of or exposure to

16  Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph

17  162 regarding Monsanto's implied warranties sets forth conclusions of law for which no

18  response is required.  Monsanto denies the remaining allegations in paragraph 162.

19      163.    Monsanto lacks information or knowledge sufficient to form a belief as to the

20  truth of the allegations in paragraph 163 regarding plaintiff's claimed use of Roundup®-branded

21  products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in

22  paragraph 163 regarding Monsanto's implied warranty sets forth conclusions of law for which no

23  response is required.

24      164.    Monsanto denies that there is any risk of serious injury associated with or linked

25  to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.

26  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

27  allegations in paragraph 164 regarding plaintiff's knowledge about Roundup®-branded products

28  and therefore denies the remaining allegations in paragraph 164.

1    165.    Monsanto denies the allegations in paragraph 165.

2    166.    Monsanto denies the allegations in paragraph 166.

3    167.    Monsanto denies the allegations in paragraph 167.

4    168.    In response to the allegations in paragraph 168, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

169.    Monsanto incorporates by reference its responses to paragraphs 1 through 168 in response to paragraph 169 of plaintiff's Complaint.

170.    Monsanto denies the allegations in paragraph 170.

171.    Monsanto denies the allegations in paragraph 170, including each of its subparts.

172.    The allegations in paragraph 172 set forth a conclusion of law for which no response is required.

In response to the section entitled "PRAYER FOR RELIEF," Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.     Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.     Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.     Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.     Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

- 26 -

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injury or damages as alleged, which is denied, such injury or damage resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to him by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.     Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

19.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

20.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

21.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has received and/or will receive from collateral sources.

22.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

23.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize or limit such claims.

24.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

25.     Plaintiffs' strict liability claims are barred because Massachusetts does not recognize a cause of action for strict liability in tort.

26.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

### JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED:  October 17, 2018                    Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05660-VC