**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:        jhollingsworth@hollingsworthllp.com
              elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*David Means v. Monsanto Co.*,<br>Case No. 3:16-cv-05753-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff David Means' Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1, Monsanto admits that it discovered the herbicidal properties of glyphosate and that it has manufactured Roundup®-branded herbicides.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations concerning plaintiff's use

1    of and/or exposure to Roundup®-branded products and therefore denies those allegations.

2    Monsanto denies the remaining allegations in paragraph 1.

3         2.      Monsanto lacks information or knowledge sufficient to form a belief as to the

4    truth of the allegations in paragraph 2 and therefore denies those allegations.

5         3.      In response to the allegations in paragraph 3, Monsanto denies that any exposure

6    to glyphosate-based herbicides or Roundup®-branded products can cause non-Hodgkin's

7    lymphoma ("NHL") or other serious illnesses.  Monsanto lacks information or knowledge

8    sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore

9    denies those allegations.

10        4.      In response to the allegations in paragraph 4, Monsanto admits that the World

11   Health Organization's International Agency for Research on Cancer ("IARC") issued a

12   monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate

13   under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer

14   hazard assessment around the world or that IARC based its evaluation on a complete or accurate

15   assessment of the scientific research regarding glyphosate.  Monsanto further denies that the

16   members of the panel were "renowned scientists" or that they were free from conflicts of

17   interest.  In response to the allegations in the final sentence of paragraph 4, Monsanto admits that

18   the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it

19   was required to add glyphosate to California's Proposition 65 list of chemicals in a process that

20   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

21   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

22   was not based upon any independent scientific analysis of glyphosate but instead was in response

23   to a provision of a California ballot proposition triggering such action based solely upon the

24   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

25   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

26   pose a cancer hazard to humans."[1]  Monsanto contends that OEHHA's decision that it was

27   _____

[1] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
28   https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1   required to list glyphosate violates the United States Constitution and the California Constitution.

2   On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

3   warning labels for glyphosate as unconstitutional. The remaining allegations in the final sentence

4   of paragraph 4 set forth conclusions of law for which no response is required.  To the extent a

5   response is deemed required, Monsanto denies the remaining allegations in paragraph 4.

6         5.     Monsanto admits the allegations in the first sentence of paragraph 5.  In response

7   to the allegations in the second sentence of paragraph 5, Monsanto admits that glyphosate, the

8   active ingredient in Roundup®-branded herbicides, is a non-selective herbicide and that certain

9   Roundup®-branded herbicides are used to kill weeds that commonly compete with growing

10   crops.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of

11   the specific numbers and statistics cited in the remaining sentences of paragraph 5 and therefore

12   denies those allegations.

13         6.     In response to the allegations in the first sentence of paragraph 6, Monsanto

14   admits that it has stated, and continues to state, that Roundup®-branded products are safe when

15   used in accordance with the products' labeling.  Monsanto denies that any exposure to

16   glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious

17   illnesses.  Monsanto denies the remaining allegations in paragraph 6.

18         7.     Monsanto lacks information or knowledge sufficient to form a belief as to the

19   truth of the allegations in paragraph 7 and therefore denies those allegations.

20         8.     Monsanto admits the allegations in the first and second sentences of paragraph 8.

21   In response to the allegations in the final sentence of paragraph 8, Monsanto admits that it was

22   the entity that discovered the herbicidal properties of glyphosate and that Monsanto

23   manufactures Roundup®-branded products that have glyphosate as the active ingredient, but

24   notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides..

25   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

26   remaining allegations in the final sentence of paragraph 7 and therefore denies those allegations.

27         9.     The allegations in paragraph 9 set forth conclusions of law for which no response

28   is required.  To the extent that a response is deemed required, Monsanto admits the allegations in

1   paragraph 9 based upon the allegations in plaintiff's Complaint.

2          10.     The allegations in paragraph 10 set forth conclusions of law for which no

3   response is required.

4          11.     Monsanto denies the allegations in paragraph 11.

5          12.     In response to the allegations in paragraph 12, Monsanto denies any "omissions"

6   and certain events giving rise to plaintiff's claim.  Monsanto lacks information or knowledge

7   sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding where

8   certain other events giving rise to plaintiff's claim occurred and therefore denies those

9   allegations.  The remaining allegations in paragraph 12 set forth conclusions of law for which no

10  response is required.

11         13.     In response to the allegations in paragraph 13, Monsanto admits that glyphosate is

12  an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in

13  paragraph 13 are vague and ambiguous and Monsanto lacks information or knowledge sufficient

14  to form a belief as to the truth of the remaining allegations in paragraph 13 and therefore denies

15  those allegations.

16         14.     Monsanto admits the allegations in the first sentence of paragraph 14.  Monsanto

17  denies the allegations in the second sentence of paragraph 14 because the impact of glyphosate

18  on treated plants varies depending upon the amount of glyphosate applied and the type of plant.

19  Monsanto denies the allegations in the final sentence of paragraph 14 to the extent that they

20  suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well

21  within regulatory safety levels, as determined by the United States Environmental Protection

22  Agency ("EPA").

23         15.     Monsanto admits the allegations in paragraph 15.

24         16.     In response to the allegations in paragraph 16, Monsanto admits that farmers have

25  safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining

26  allegations in paragraph 16.

27         17.     The allegations in paragraph 17 set forth conclusions of law for which no

28  response is required.  To the extent that a response is deemed required, Monsanto admits the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1    allegations in paragraph 17.

2         18.    In response to the allegations in paragraph 18, Monsanto admits that EPA requires

3    registrants of herbicides to submit extensive data in support of the human health and

4    environmental safety of their products and further admits that EPA will not register or approve

5    the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining

6    allegations in paragraph 18 set forth conclusions of law for which no response is required.

7         19.    The allegations in paragraph 19 set forth conclusions of law for which no

8    response is required.

9         20.    In response to the allegations in paragraph 20, Monsanto admits that EPA requires

10   registrants of herbicides to submit extensive data in support of the human health and

11   environmental safety of their products and further admits that EPA will not register or approve

12   the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

13   states that the term "the tests" in the final sentence of paragraph 20 is vague and ambiguous, and

14   Monsanto therefore denies the same.  The remaining allegations in paragraph 20 set forth

15   conclusions of law for which no response is required.

16        21.    Monsanto denies the allegations in paragraph 21 to the extent they suggest that

17   EPA only evaluates the safety of pesticide products on the date of their initial registration.

18   Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

19   products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

20   of the allegations in paragraph 21 regarding such pesticide products generally and therefore

21   denies those allegations.  The remaining allegations in paragraph 21 set forth conclusions of law

22   for which no response is required.

23        22.    In response to the allegations in paragraph 22, Monsanto admits that EPA has

24   undertaken a regulatory review of glyphosate and that EPA has not released its findings.

25   Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs

26   ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that

27   "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses

28

relevant to human health risk assessment"[2]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[3]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[4]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 22 and therefore denies these allegations.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[5]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and therefore denies those allegations.

24.     In response to the allegations in paragraph 24, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

---

[2] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[3] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[4] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1  changed its classification of glyphosate to Group E based upon a full evaluation of the

2  scientific evidence, including but not limited to three animal carcinogenicity studies.

3  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA

4  document in 1991 with respect to the designation of an agent as Group E, but states that

5  EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.

6  In addition to the conclusions in the two EPA OPP Reports and the EPA CARC Final

7  Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] — one that shows evidence of non-carcinogenicity for humans — based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20 ("EPA 2015 Desk Statement").

25  Monsanto denies the remaining allegations in paragraph 24.

26          25.      In response to the allegations in paragraph 25, Monsanto admits that it – along

27  with a large number of other companies and governmental agencies – was defrauded by two

28  chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies.  To the extent that the allegations in paragraph 25 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

26.     In response to the allegations in paragraph 26, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

27.     Monsanto denies the allegations in paragraph 27 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 27 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

28.     In response to the allegations in paragraph 28, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

29.     In response to the allegations in paragraph 29, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent

1    laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further

2    admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

3    studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations

4    in paragraph 29 are intended to suggest that Monsanto was anything other than a victim of this

5    fraud, such allegations are denied.

6           30.    In response to the allegations in paragraph 30, Monsanto admits that Roundup®-

7    branded products are highly valued by its customers because of their efficacy and safety.

8    Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

9    remaining allegations in paragraph 30 are vague and conclusory and comprise attorney

10   characterizations and are accordingly denied.

11          31.    In response to the allegations in paragraph 31, Monsanto admits that following the

12   development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

13   are now widely used by farmers in the United States and worldwide.  Monsanto lacks

14   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

15   cited in paragraph 31 and accordingly denies those allegations.  The remaining allegations in

16   paragraph 31 are vague and conclusory and comprise attorney characterizations and are

17   accordingly denied.

18          32.    In response to the allegations in paragraph 32, Monsanto admits that glyphosate is

19   one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

20   is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

21   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

22   cited in paragraph 32 and accordingly denies the same.  The remaining allegations in paragraph

23   32 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

24          33.    In response to the allegations in paragraph 33, Monsanto admits that the New

25   York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

26   advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

27   admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

28   General's allegations related in any way to a purported or alleged risk of cancer.  The remaining

1  allegations in paragraph 32 are vague and conclusory and comprise attorney characterizations,

2  and are accordingly denied.

3      34.     To the extent that paragraph 34 purports to quote a document, the document

4  speaks for itself and thus does not require any further response.

5      35.     To the extent that paragraph 35 purports to quote a document, the document

6  speaks for itself and thus does not require any further response.

7      36.     To the extent that paragraph 36 purports to quote a document, the document

8  speaks for itself and thus does not require any further response.

9      37.     To the extent that paragraph 37 purports to quote a document, the document

10  speaks for itself and thus does not require any further response.

11      38.     To the extent that paragraph 38 purports to quote a document, the document

12  speaks for itself and thus does not require any further response.

13      39.     To the extent that paragraph 39 purports to quote a document, the document

14  speaks for itself and thus does not require any further response.

15      40.     To the extent that paragraph 40 purports to quote a document, the document

16  speaks for itself and thus does not require any further response.

17      41.     To the extent that paragraph 41 purports to quote a document, the document

18  speaks for itself and thus does not require any further response.

19      42.     To the extent that paragraph 42 purports to quote a document, the document

20  speaks for itself and thus does not require any further response.

21      43.     To the extent that paragraph 43 purports to quote a document, the document

22  speaks for itself and thus does not require any further response.

23      44.     In response to the allegations in paragraph 44, Monsanto admits it entered into an

24  assurance of discontinuance with the New York Attorney General.  The assurance speaks for

25  itself and thus does not require any further answer.  The remaining allegations in paragraph 44

26  are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

27      45.     The assurance of discontinuance with the New York Attorney General speaks for

28  itself and thus does not require any further answer.  The remaining allegations in paragraph 45

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1    are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

2         46.    The assurance of discontinuance with the New York Attorney General speaks for

3    itself and thus does not require any further answer.  The remaining allegations in paragraph 46

4    are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

5         47.    The assurance of discontinuance with the New York Attorney General speaks for

6    itself and thus does not require any further answer.  The remaining allegations in paragraph 47

7    are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

8         48.    The assurance of discontinuance with the New York Attorney General speaks for

9    itself and thus does not require any further answer.  The remaining allegations in paragraph 48

10   are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

11        49.    The assurance of discontinuance with the New York Attorney General speaks for

12   itself and thus does not require any further answer.  The remaining allegations in paragraph 49

13   are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

14        50.    The assurance of discontinuance with the New York Attorney General speaks for

15   itself and thus does not require any further answer.  The remaining allegations in paragraph 50

16   are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

17        51.    Monsanto denies the allegations in paragraph 51.

18        52.    In response to the allegations in paragraph 52, Monsanto admits that the French

19   court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

20   that it "left the soil clean," but denies the allegations in paragraph 52 to the extent they suggest

21   that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.

22   Monsanto denies the remaining allegations in paragraph 52.

23        53.    In response to the allegations in paragraph 53, Monsanto admits that IARC was

24   created in 1965.  The remaining allegations in paragraph 53 are vague and conclusory and

25   comprise attorney characterizations, and are accordingly denied.

26        54.    Monsanto denies the allegations in the first and second sentences of paragraph 54.

27   Monsanto admits the allegations in the final sentence of paragraph 54.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1    55.    In response to the allegations in paragraph 55, Monsanto denies that IARC

2   follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

3   or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

4   paragraph 55, which are not limited as of any specified date, and accordingly denies the same.

5    56.    In response to the allegations in paragraph 56, Monsanto admits that IARC sets

6   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

7   Monsanto denies the remaining allegations in paragraph 56.

8    57.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

9   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

10   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

11   a belief as to the truth of the remaining allegations in paragraph 57 and therefore denies those

12   allegations.

13    58.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

14   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

15   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

16   a belief as to the truth of the remaining allegations in paragraph 58 and therefore denies those

17   allegations.

18    59.    Monsanto denies the allegations in paragraph 59 to the extent that they suggest

19   that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

20   glyphosate as a Group 2A agent in March 2015.

21    60.    In response to the allegations in paragraph 60, Monsanto admits that IARC issued

22   its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the

23   monograph was prepared by a "working group" of individuals selected by IARC who met over a

24   one week period in March 2015 to consider glyphosate along with a number of other substances.

25   Monsanto denies the allegation that all members of the working group are "experts."

26    61.    In response to the allegations in paragraph 61, Monsanto denies that the working

27   group or anyone at IARC conducted a one-year review of the scientific evidence related to

28   glyphosate or that the working group's findings reflected a comprehensive review of the latest

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1    available scientific evidence.  Monsanto also denies that the working group considered all

2    information available in the scientific literature and all data from government reports that are

3    publicly available.  Monsanto denies the remaining allegations in paragraph 61.

4         62.    In response to the allegations in paragraph 62, Monsanto denies that the IARC

5    working group considered all of the data in the numerous studies that have been conducted

6    looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

7    that it reliably considered the studies that it purports to have reviewed, which frequently reach

8    conclusions directly contrary to those espoused by the IARC working group.  To the extent the

9    allegations purport to characterize statements made in the IARC monograph for glyphosate, the

10   statements in that document speak for themselves, but Monsanto lacks information or knowledge

11   sufficient to form a belief as to the accuracy of the source of said information and accordingly

12   denies the allegations.

13        63.    The allegations in paragraph 63 are vague and conclusory.  To the extent they

14   purport to characterize statements made in the IARC monograph for glyphosate, the statements

15   in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

16   to form a belief as to the accuracy of the source of said information and accordingly denies the

17   allegations.

18        64.    In response to the allegations in paragraph 64, to the extent the allegations purport

19   to characterize statements made in the IARC monograph for glyphosate, the statements in that

20   document speak for themselves, but to the extent that this paragraph means that more than *de*

21   *minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 64.

22        65.    In response to the allegations in paragraph 65, Monsanto admits that the IARC

23   working group identified a number of case control studies of populations with exposures to

24   glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

25   health concern from such exposures.

26        66.    In response to the allegations in paragraph 66, Monsanto denies that the IARC

27   working group considered all of the data in the numerous studies that have been conducted

28   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

1    that it reliably considered the studies that it purports to have reviewed, which frequently reach

2    conclusions directly contrary to those espoused by the IARC working group.  To the extent that

3    the allegations in paragraph 66 purport to characterize statements made in the IARC monograph

4    for glyphosate, the statements in that document speak for themselves.

5         67.    In response to the allegations in paragraph 67, Monsanto admits that the IARC

6    working group identified a number of case control studies of populations with exposures to

7    glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

8    health concern from such exposures.  Monsanto denies the remaining allegations in paragraph

9    67.  The IARC working group concluded that there was only limited evidence of carcinogenicity

10   in epidemiologic studies, which, per IARC's guidelines, means that the working group could not

11   rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

12        68.    In response to the allegations in paragraph 68, Monsanto admits that the IARC

13   working group purported to make these findings, but denies that the animal carcinogenicity

14   studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any

15   of the identified tumors.  Monsanto further states that regulatory agencies around the world have

16   reviewed the same animal studies and concluded that they do not provide evidence that

17   glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 68.

18        69.    In response to the allegations in paragraph 69, Monsanto admits that the working

19   group cited to a study that it concluded provided evidence of chromosomal damage in

20   community residents reported to be exposed to glyphosate, but Monsanto denies that the study

21   supports such a conclusion or that the authors of the study reached such a conclusion.

22        70.    In response to the allegations in the first sentence of paragraph 70, Monsanto

23   admits that certain studies have reported that glyphosate and glyphosate-based formulations

24   induced oxidative stress under artificial experimental conditions.  Monsanto denies that these

25   studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce

26   oxidative stress in humans or animals under real-world exposure conditions.  In response to the

27   allegations in the second sentence of paragraph 70, Monsanto states that the cited document

28   speaks for itself and does not require a response.  In response to the allegations in the final

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

1    sentence of paragraph 70 and in footnote 1, Monsanto denies that any exposure to glyphosate-

2    based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.

3    Monsanto denies the remaining allegations in paragraph 70.

4         71.    In response to the allegations in paragraph 71, Monsanto admits that the IARC

5    working group purported to make these findings, but denies that the cited studies provide any

6    reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or

7    persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 71.

8         72.    In response to the allegations in paragraph 72, Monsanto admits that the working

9    group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but

10   denies that the working group characterized that study as supporting an association between

11   glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

12   between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

13   72.

14        73.    In response to the allegations in paragraph 73, Monsanto admits that the

15   referenced studies were published, but denies that the studies show any scientifically reliable

16   findings.

17        74.    In response to the allegations in paragraph 74, Monsanto denies that the cited

18   study provides any reliable basis for a finding that any meaningful levels of glyphosate are

19   present or persist in human blood or urine.  Monsanto denies the remaining allegations in

20   paragraph 74.

21        75.    In response to the allegations in paragraph 75, Monsanto denies that any exposure

22   to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies

23   the allegations in the first and fourth sentences of paragraph 75.  Monsanto admits that certain

24   Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as

25   inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded

26   herbicides do not pose an unreasonable risk to human health.  The remaining allegations in

27   paragraph 75 are vague and conclusory and comprise attorney characterizations, and are

28   accordingly denied.

76.     In response to the allegations in paragraph 76, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products, including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales).  Monsanto further admits that the French government has announced that beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, will be prohibited with certain exceptions.  Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto admits that 96 individuals signed a letter sent by Dr. Christopher Portier to the EU Health Commissioner (hereinafter "the Portier letter").  Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto. Monsanto denies that Dr. Portier or the other signatories to his letter are "prominent experts," and Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the conclusion that glyphosate is not carcinogenic found by the European Food Safety Authority ("EFSA") and by the German Federal Institute for Risk Management ("BfR").

84.     In response to the allegations in paragraph 84, Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 84 characterizes the scientific evidence regarding the safety of glyphosate-

based herbicides, Monsanto denies the remaining allegations in paragraph 84.

85.     Monsanto admits that, in June 2016, the European Union continued to consider the reregistration of glyphosate.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.  Monsanto further notes that, in March 2017, the European Chemical Agency ("ECHA") announced that its Committee for Risk Assessment concluded that the available scientific evidence did not meet the criteria to classify glyphosate as a carcinogen.  *See* ECHA, *Glyphosate not classified as a carcinogen by ECHA*, https://echa.europa.eu/-/glyphosate-not-classified-as-a-carcinogen-by-echa.  Monsanto denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause non-Hodgkin's lymphoma (NHL) or other serious illnesses.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 86 and therefore denies those allegations.

87.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 87 and therefore denies those allegations.

88.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL, and other serious illnesses and therefore denies the allegations in paragraph 88.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

89.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL, and other serious illnesses and therefore denies the allegations in paragraph 89.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

90.      Monsanto incorporates by reference its responses to paragraphs 1 through 89 in response to paragraph 90 of plaintiff's Complaint.

91.     In response to the allegations in paragraph 92, Monsanto denies that it violated the laws of Kentucky or federal law and states that it complied with all applicable law regarding

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

Roundup®-branded products.  The remaining allegations in paragraph 92 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

92.     The allegations in paragraph 92 set forth conclusions of law for which no response is required.

93.     Monsanto denies the allegations in the first sentence of paragraph 93.  The second sentence in paragraph 93 sets forth a conclusion of law for which no response is required. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

94.     Monsanto incorporates by reference its responses to paragraphs 1 through 93 in response to paragraph 94 of plaintiff's Complaint.

95.     In response to the allegations in paragraph 95, Monsanto admits that plaintiff purports to bring a claim for strict liability defective design, but Monsanto denies any liability as to that claim.

96.     Monsanto denies the allegations in the first and second sentences of paragraph 96. In response to the last sentence of paragraph 96, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 96.

97.     Monsanto denies the allegations in paragraph 97.

98.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 98 concerning the condition of any Roundup®-branded product allegedly used by plaintiff or about plaintiff's alleged uses of such product and therefore denies those allegations.  The remaining allegations in paragraph 98 set forth conclusions of law for which no response is required.

99.     Monsanto denies the allegations in paragraph 99.

100.     Monsanto denies the allegations in paragraph 100.

101.     Monsanto denies the allegations in paragraph 101.

1    102.    Monsanto denies the allegations in paragraph 102.

2    103.    Monsanto denies the allegations in paragraph 103.

3    104.    Monsanto denies the allegations in paragraph 104.

4    105.    Monsanto denies the allegations in paragraph 105.

5    106.    Monsanto denies the allegations in paragraph 106.

6    107.    Monsanto denies the allegations in paragraph 107.

7    108.    Monsanto denies the allegations in paragraph 108.

8    109.    Monsanto denies the allegations in paragraph 109.

9    110.    Monsanto denies the allegations in paragraph 110.

10   111.    Monsanto lacks information or knowledge sufficient to form a belief as to the

11   truth of the allegations in paragraph 111 concerning plaintiff's claimed use of Roundup®-branded

12   products and therefore denies those allegations.  Monsanto denies the remaining allegations in

13   paragraph 111, including that Roundup®-branded products have "dangerous characteristics."

14   112.    Monsanto lacks information or knowledge sufficient to form a belief as to the

15   truth of the allegations in paragraph 112 concerning plaintiff's claimed use of or exposure to

16   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

17   remaining allegations in paragraph 112, including that Roundup®-branded products have

18   "dangerous characteristics."

19   113.    Monsanto denies the allegations in paragraph 113.

20   114.    Monsanto denies the allegations in paragraph 114.

21   115.    Monsanto denies the allegations in paragraph 115.

22   116.    Monsanto denies the allegations in paragraph 116.

23   117.    Monsanto denies the allegations in paragraph 117.

24   118.    Monsanto denies the allegations in paragraph 118.

25   119.    Monsanto denies the allegations in paragraph 119.

26   120.    Monsanto denies the allegations in paragraph 120.

27   121.    Monsanto denies the allegations in paragraph 121.

28   122.    Monsanto denies the allegations in paragraph 122.

123.     In response to the allegations in paragraph 123, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

124.     Monsanto incorporates by reference its responses to paragraphs 1 through 123 in response to paragraph 124 of plaintiff's Complaint.

125.     In response to the allegations in paragraph 125, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

126.     Monsanto denies the allegations in paragraph 126.

127.     In response to the allegations in paragraph 127, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff or other persons or entities purchased or used Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph 127 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 127.

128.     The allegations in paragraph 128 set forth conclusions of law for which no response is required.

129.     Monsanto denies the allegations in paragraph 129.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

130.     Monsanto denies the allegations in paragraph 130.

131.     Monsanto denies the allegations in paragraph 131.

132.     Monsanto denies the allegations in paragraph 132.

133.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 133 and therefore denies those allegations.

134.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 134 concerning plaintiff's alleged use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

1   remaining allegations in paragraph 134, including that Roundup®-branded products have

2   "dangerous characteristics."

3       135.   Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 135 concerning plaintiff's alleged use of and exposure to

5   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

6   remaining allegations in paragraph 135, including that Roundup®-branded products have

7   "dangerous characteristics."

8       136.   Monsanto lacks information or knowledge sufficient to form a belief as to the

9   truth of the allegations in the second sentence of paragraph 136 and therefore denies those

10   allegations.  Monsanto denies the remaining allegations in paragraph 136.

11       137.   Monsanto denies the allegations in paragraph 137.

12       138.   Monsanto denies the allegations in paragraph 138.

13       139.   In response to the allegations in paragraph 139, Monsanto denies that there is any

14   risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to

15   Roundup®-branded products and glyphosate.  The allegations in the second sentence of

16   paragraph 139 set forth conclusions of law for which no response is required.  Monsanto denies

17   the remaining allegations in paragraph 139.  All labeling of Roundup®-branded products has

18   been and remains EPA-approved and in compliance with all applicable laws and regulations.

19       140.   Monsanto denies the allegations in paragraph 140.

20       141.   Monsanto lacks information or knowledge sufficient to form a belief as to the

21   truth of the allegations in paragraph 141 concerning plaintiff's alleged use of Roundup®-branded

22   products and therefore denies those allegations.  Monsanto denies the remaining allegations in

23   paragraph 141.

24       142.   Monsanto denies the allegations in paragraph 142.

25       143.   Monsanto denies the allegations in paragraph 143.  All labeling of Roundup®-

26   branded products has been and remains EPA-approved and in compliance with all federal

27   requirements under FIFRA.

28       144.   Monsanto denies the allegations in paragraph 144.

1       145.    Monsanto denies the allegations in paragraph 145.

2       146.    In response to the allegations in paragraph 146, Monsanto demands that judgment

3   be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

4   prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

5   by law and such further and additional relief as this Court may deem just and proper.

6       147.    Monsanto incorporates by reference its responses to paragraphs 1 through 146 in

7   response to paragraph 147 of plaintiff's Complaint.

8       148.    Monsanto lacks information or knowledge sufficient to form a belief as to the

9   truth of the allegations in paragraph 148 regarding the specific products allegedly used by

10  plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore

11  denies the allegations in paragraph 148.

12      149.    The allegations in paragraph 149 set forth conclusions of law for which no

13  response is required.

14      150.    The allegations in paragraph 150 set forth conclusions of law for which no

15  response is required.

16      151.    Monsanto denies the allegations in paragraph 151.

17      152.    Monsanto denies the allegations in paragraph 152.

18      153.    Monsanto denies the allegations in paragraph 153.  All labeling of Roundup$^{®}$-

19  branded products has been and remains EPA-approved and in compliance with all federal

20  requirements under FIFRA.

21      154.    Monsanto denies the allegations in paragraph 154.

22      155.    Monsanto denies the allegations in the first sentence of paragraph 155.  In

23  response to the allegations in the second sentence of paragraph 155, Monsanto denies that

24  Monsanto's promotional activities were not honest.  The remaining allegations in paragraph 155

25  set forth conclusions of law for which no response is required.

26      156.    Monsanto denies the allegations in paragraph 156.

27      157.    Monsanto denies the allegations in paragraph 157, including each of its subparts.

28      158.    Monsanto denies the allegations in paragraph 158.

1   159.   Monsanto lacks information or knowledge sufficient to form a belief as to the

2   truth of the allegations in paragraph 159 regarding plaintiff's knowledge and therefore Monsanto

3   denies those allegations.  Monsanto denies the remaining allegations in paragraph 159, including

4   that intended use of and/or exposure to Roundup®-branded products causes any injuries.

5   160.   Monsanto denies the allegations in paragraph 160.

6   161.   Monsanto denies the allegations in paragraph 161.

7   162.   Monsanto denies the allegations in paragraph 162.

8   163.   Monsanto denies the allegations in paragraph 163.

9   164.   In response to the allegations in paragraph 164, Monsanto demands that judgment

10   be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

11   prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

12   by law and such further and additional relief as this Court may deem just and proper.

13   165.   Monsanto incorporates by reference its responses to paragraphs 1 through 164 in

14   response to paragraph 165 of plaintiff's Complaint.

15   166.   Monsanto denies the allegations in paragraph 166.  Additionally, the last sentence

16   in paragraph 166 sets forth a conclusion of law for which no response is required.

17   167.   Monsanto lacks information or knowledge sufficient to form a belief as to the

18   truth of the allegations in paragraph 167 concerning plaintiff's claimed use of Roundup®-branded

19   products and therefore denies those allegations.  The remaining allegations in paragraph 167 set

20   forth conclusions of law for which no response is required.

21   168.   Monsanto denies the allegations in paragraph 168.  All labeling of Roundup®-

22   branded products has been and remains EPA-approved and in compliance with all federal

23   requirements under FIFRA.

24   169.   The allegations in paragraph 169 set forth conclusions of law for which no

25   response is required.

26   170.   Monsanto lacks information or knowledge sufficient to form a belief as to the

27   truth of the allegations in paragraph 170 and therefore denies those allegations.

28

171.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 171 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations.  The remaining allegations in paragraph 171 set forth conclusions of law for which no response is required.

172.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 172 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 172 regarding Monsanto's implied warranties sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 172.

173.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 173 regarding plaintiff's claimed use of Roundup®-branded products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in paragraph 173 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

174.     Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 174 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 174.

175.     Monsanto denies the allegations in paragraph 175.

176.     Monsanto denies the allegations in paragraph 176.

177.     Monsanto denies the allegations in paragraph 177.

178.     In response to the allegations in paragraph 178, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

179.     Monsanto incorporates by reference its responses to paragraphs 1 through 178 in response to paragraph 179 of plaintiff's Complaint.

180.    Monsanto denies the allegations in paragraph 180.

181.    Monsanto denies the allegations in paragraph 181.

182.    Monsanto denies the allegations in paragraph 182.

183.    The allegations in paragraph 183 set forth a conclusion of law for which no response is required.

184.    In response to the allegations in paragraph 184 and each of its subparts, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.    Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.    Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injury or damages as alleged, which is denied, such injury or damage resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.

Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

15.    Monsanto had no legal relationship or privity with plaintiff and owed no duty to him by which liability could be attributed to it.

16.    Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.    Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.    Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Kentucky Constitution, and/or other applicable state constitutions.

19.    Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of exemplary and punitive damages under Kentucky law and/or other applicable state laws.

20.    Plaintiff's claims for punitive damages and/or exemplary are barred and/or limited by operation of state and/or federal law.

21.    Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

22.    Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

23.    Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.    Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has received and/or will receive from collateral sources.

25.    Plaintiff's common law claims are barred, in whole or part by application of the Kentucky Product Liability Act, Ky. Rev. Stat. § 411.300

1    26.    If plaintiff has been injured or damaged, no injury or damages being admitted,

2  such injuries were not caused by a Monsanto product.

3    27.    Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims

4  that are governed by the laws of a state that does not recognize or limit such claims.

5    28.    Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws

6  of states that do not govern plaintiff's claims.

7    29.    Monsanto hereby gives notice that it intends to rely upon such other defenses as

8  may become available or apparent during the course of discovery and thus reserves its right to

9  amend this Answer to assert such defenses.

10    **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

11  plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such

12  other relief as the Court deems equitable and just.

13  <u>**JURY TRIAL DEMAND**</u>

14    Monsanto demands a jury trial on all issues so triable.

15

16  DATED:  October 17, 2018                    Respectfully submitted,

17

18                    <u>/s/ Joe G. Hollingsworth</u>
                    Joe G. Hollingsworth (*pro hac vice*)
19                    (jhollingsworth@hollingsworthllp.com)
                    Eric G. Lasker (*pro hac vice*)
20                    (elasker@hollingsworthllp.com)
                    HOLLINGSWORTH LLP
21                    1350 I Street, N.W.
                    Washington, DC  20005
22                    Telephone:  (202) 898-5800
                    Facsimile:   (202) 682-1639

23                    *Attorneys for Defendant*
                    *MONSANTO COMPANY*

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:16-cv-05753-VC