# Exhibit F

AIMEE H. WAGSTAFF (SBN 278480)
aimee.wagstaff@andruswagstaff.com
**ANDRUS WAGSTAFF, PC**
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone:   (720) 255-7623

*ATTORNEY FOR PLAINTIFF*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**PLAINTIFF'S FIFTH SET OF DISCOVERY TO MONSANTO – AMENDED - OCTOBER 18, 2018** |
| This document relates to:<br><br>*Hardeman v. Monsanto Co., et al.*<br>Case No. 3:16-cv-00525-VC | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Civil Local Rule 34, Plaintiff Edwin Hardeman ("Plaintiff") requests that Defendant Monsanto Company ("Defendant") respond to this written discovery within thirty (30) days of the service of this discovery request. **Pursuant to FRCP 26(e), if Monsanto learns that any response is incomplete or incorrect, it is under a continuing duty to supplement or correct its responses.**

### DEFINTIONS

1.   "Documents" and "Documentation" as used in this Request is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules.  Consistent with the above

definition, the term Document shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, correspondence and communications (as defined below) of any type (including but not limited to video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of You or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of You, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on Your behalf.

2. "Identify" means to completely identify, to the extent known or ascertainable by you, your associates or your attorneys, and includes, without limitation, a request for the following information:

    a. With respect to persons, "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment;

    b. With respect to documents, "identify" means (i) to state the title, description, and date of each such document; (ii) to state the name, title, and address of each author or signatory and each other person receiving a copy thereof; and (iii) to state the present location and the name and address of the present custodian of each such document;

    c. With respect to a statement, "identify" means the exact language or nature of the statement and the person who made the statement.

3. Glyphosate" or "Glyphosate Products" or "glyphosate containing products" means any product containing *N*-(phosphonomethyl) glycine and/or $C_3H_8NO_5P$. Such term includes but is not limited to Roundup®-branded products.

4. "Relating to", "relate to", "referring to", "refer to", "reflecting", "reflect", "concerning", or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

- 3 -

PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC

5.      "Or" and "and" will be used interchangeably, either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed as outside the scope.

6.      Unless otherwise indicated, the "relevant time period" for the information sought is the date you first engaged in any activity that resulted in your eventual design, manufacture, testing, marketing, or sale of the Roundup product(s), or from January 1, 1974 to the present, whichever date is earlier.

7.      "Monsanto" or "You" shall mean Monsanto Company or any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, and every company affiliated with each such company by common ownership or control.

## INSTRUCTIONS

**1.      This discovery not only calls for your knowledge, but also for all knowledge that is available to you through reasonable inquiry of your employees, representatives, and agents.**

2.      In answering this discovery, you are requested to answer each request and subdivision thereof fully, completely, and separately in writing, after exercising reasonable diligence to secure the information to do so.

3.      If any request is deemed to call for the identification of privileged or otherwise protected information or materials, you must provide the following information in a written response, designating and identifying the information withheld from production on grounds of privilege:

   a.   The nature of the privilege asserted;

- 4 -
PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC

    b. The reason for withholding the information including a statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure, with sufficient particularity to enable the court to rule upon it;

    c. A brief description of the Document, including:

        i. The date of the Document;
        ii. The number of pages, attachments, and appendices;
        iii. The name(s) of its author(s) or preparer(s) and identification by employment and title of each such person;
        iv. The name of each person who was sent, shown, or copied on the Document, or has had access to or custody of the Document, together with an identification of each such person;
        v. The present custodian;
        vi. The subject matter of the Document, including a brief summary of the substance of the communication, and in the case of any Document relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine propriety of any claim of privilege.

4. If you cannot answer any of the following requests in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions, and to the best of your knowledge the names, addresses and telephone numbers of all persons and organizations where such information is, will be or is believed to be.

**5. This discovery imposes a continuing obligation upon you. If after producing information responsive to this discovery additional information becomes available to you, you are required to produce such additional information. FRCP 26(e).**

6. If you answer a Request by reference to documents, compilations, abstracts, or other records, please attach the same to your responses to these Requests, or refer to the specific Bates page numbers of documents you disclosed previously, along with answering these Requests, or at any other time.

# INTERROGATORIES

**Prior to the formation of MDL 2741, Mr. Hardeman served discovery on June 30, 2016, October 1, 2016, October 12, 2016, and October 28, 2016. Monsanto remains under an obligation to supplement its responses pursuant to FRCP 26(e).**

1. Please identify who is responding to this Discovery on behalf of Monsanto.

2. Identify by date the first time you sought legal counsel regarding the allegations contained in this lawsuit.

3. Identify any and all insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments to satisfy the judgment. FRCP 26(a)(1)(iv).

4. Identify the name, and if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that you may use to support your allegations and defenses, unless the use would be solely for impeachment.

5. Identify the name, and if known, the address and telephone number of current and former Monsanto employees who have information in support of Plaintiff's allegations or in contrast to your defenses.

6. Identify all persons who will or may provide testimony in this lawsuit for Monsanto. For each person identified, state the name, address, phone number, occupation, place of employment, relationship to Monsanto, and the general nature of the subject matter upon which each witness will testify.

7. Have you received a statement, or otherwise interviewed any person(s) identified in response to Interrogatories 3-6 (above) regarding the allegations in this lawsuit? Have you received a statement, or otherwise interviewed any person(s) not identified in response to Interrogatories 3-6 (above) regarding the allegations in this lawsuit?

8. Have you reported Mr. Hardeman's allegations to the U.S. EPA or any other regulatory

agency? If so, when. If not, why not.

9. Give the basis for your belief that exposure to Glyphosate Products did not cause or substantially contribute to Mr. Hardeman's injuries.

10. Identify all documents that support your belief that exposure to Glyphosate Products did not cause or substantially contribute to Mr. Hardeman's injuries.

11. List all potential factors or confounders that you believe are potential contributing causes to the development of Mr. Hardeman's cancer.

12. Identify all documents by name or Bates Label that support your list of potential factors or confounders that you believe are potential contributing causes to the development of Mr. Hardeman's cancer.

13. When do you contend that Mr. Hardeman developed non-Hodgkins lymphoma?

14. When do you contend that Mr. Hardeman developed Hepatitis C?

15. Do you contend that Mr. Hardeman's injuries, as set forth in the Amended Complaint, were caused in whole or in part by the actions, omissions, and/or negligence of some person or persons other than Monsanto? If your answer is in the affirmative, please identify the following:

   a. Identify all person or persons that you allege caused Mr. Hardeman's injuries in whole or in part;
   b. Describe each act or omission by which you contend such person or persons caused injuries to Mr. Hardeman.

16. Do you contend that Mr. Hardeman was actually exposed to less Roundup than he alleges? If so, please set forth the specific facts in support of this contention.

17. You denied Paragraph 42 of Plaintiff's First Amended Complaint. Please state each reason for that denial and list each state wherein you did in fact alter your advertising as discussed in Paragraphs 42 other than New York, and the date in which it was altered.

18. Identify all facts and evidence to support your "Separate and Affirmative Defenses,"

- 7 -

including but not limited to, Nos. 9, 11, 12, 13, 20, 21. Specifically,

   a. **No. 9**: Identify all facts and evidence regarding your allegations that Mr. Hardeman's non-Hodgkin's lymphoma diagnosis is the result of (1) his conduct; (2) independent third parties' conduct (to include an identification of the independent third parties); (3) extraordinary events, not foreseeable in the normal course of events; (4) independent, intervening and superseding causes of alleged injuries, including but not limited to Mr. Hardeman's pre-existing injuries.

   b. **No. 11**: Identify all facts and evidence in support of your allegation that Mr. Hardeman failed to timely file his lawsuit.

   c. **No. 12**: Identify all facts and evidence in support of your allegation that Mr. Hardeman misused or engaged in abnormal use of Glyphosate Products or failed to follow Your instructions.

   d. **No. 13**: Identify all facts and evidence in support of your allegation that Mr. Hardeman's non-Hodgkin's lymphoma diagnosis resulted from acts or omissions or persons or entities for which you are not liable or responsible or resulted from a disease and/or causes that are not related or connected with any Monsanto product. Please include an identification of the person or entity of which you reference.

   e. **No. 20**: Identify all facts and evidence regarding your allegation that Mr. Hardeman contributed to his injuries.

   f. **No. 21**: Identify all facts and evidence regarding your allegation that Mr. Hardeman failed to mitigate his damages.

19.   Throughout the course of this litigation, you have asserted the defense that "regulators world wide" have found glyphosate to be safe and not carcinogenic. Please list every worldwide regulator or regulating entity that has regulated glyphosate and/or Roundup since 1970. In your response, please identify:

   a. The regulating body and geographic location;
   b. The date(s) or time period(s) of the regulation;
   c. The effect of the regulation (*i.e.,* whether the regulation was a finding of safety, carcinogenicity, etc.);
   d. Whether the regulation pertained to glyphosate or Roundup;
   e. Monsanto's belief as to whether the regulatory body made a finding on safety or a finding pertaining to glyphosate and/or Roundup's carcinogenic potential;
   f. Generally describe Monsanto's role in that particular regulation process (*i.e.,* provide the regulatory body with information or studies);

      g. Identify each Monsanto office and person that interacted with each regulatory body at issue.

20. Do you contend that regulatory activity and/or decisions by any non-US entity, including but not limited to, EFSA, ECHA, Australia, New Zealand, or the German BfR authority, is evidence that glyphosate is safe? If yes, please identify the activity or decision.

21. Do you contend that regulatory activity and/or decisions by any non-US entity, including but not limited to, EFSA, ECHA, Australia, New Zealand, or the German BfR authority, is evidence that glyphosate is not a carcinogen to humans? If yes, please identify the activity or decision.

22. Do you contend that regulatory activity and/or decisions by any non-US entity, including but not limited to, EFSA, ECHA, Australia, New Zealand, or the German BfR authority, is evidence that Roundup is safe? If yes, please identify the activity or decision.

23. Do you contend that regulatory activity and/or decisions by any non-US entity, including but not limited to, EFSA, ECHA, Australia, New Zealand, or the German BfR authority, is evidence that Roundup is not a carcinogen to humans? If yes, please identify the activity or decision.

24. Please identify every adverse regulatory action or decision regarding glyphosate and/or Roundup.

25. Do you contend that regulatory activity and/or decisions by the U.S. EPA is evidence that glyphosate is safe? If yes, please identify the activity or decision.

26. Do you contend that regulatory activity and/or decisions by the U.S. EPA is evidence that glyphosate is not a carcinogen to humans? If yes, please identify the activity or decision.

27. Do you contend that regulatory activity and/or decisions by the U.S. EPA is evidence that Roundup is safe? If yes, please identify the activity or decision.

28. Do you contend that regulatory activity and/or decisions by the U.S. EPA is evidence that Roundup is not a carcinogen to humans? If yes, please identify the activity or decision.

29. Mr. Hardeman used Roundup and Roundup Concentrate from 1986-2013, identify the surfactants used in these formulations and please describe the source of the surfactant.

30. Mr. Hardeman used Roundup and Roundup Concentrate from 1986-2013. Identify all marketing material including but not limited to television commercials, print advertisements, store displays and other forms of advertisement/marketing/promotion for these products, during this the frame. If such materials were included in the General Production, provide the specific Bates numbers identifying such documents. Also, please identify all marketing material for the Roundup formulations available in Plaintiff's area of residence (Northern District of California) during the timeframe of purchase and usage.

31. Provide the name and business address of any regional Sales Representative and his or her employer or company (if they differ) that was responsible for the sale or distribution of Roundup and Roundup Concentrate in the Northern District of California between 1986-2013.

32. Provide the name and address of the Distributor that was responsible for the sale and/or distribution of Roundup and/or Roundup Concrete in the Northern District of California between 1986-2013.

33. For every Request for Admission, below, that you do not admit in total, state:

    a. The specific part of the Request for Admission that you deny; and

    b. The bases for that denial.

## REQUEST FOR ADMISSION

1. Admit that glyphosate in not synonymous with Roundup.

2. Admit that Mr. Hardeman was exposed to glyphosate containing products.

3. Admit that Mr. Hardeman was diagnosed with non-Hodgkin's lymphoma.

4. Admit that Mr. Hardeman was diagnosed with non-Hodgkin's lymphoma after he was exposed to glyphosate containing products.

5. Admit that Mr. Hardeman was diagnosed with the NHL subtype, diffuse large B-cell.

6. Admit that Mr. Hardeman was diagnosed with the NHL subtype, diffuse large B-cell after he was exposed to glyphosate containing products.

7. Admit that family medical history did not contribute to Mr. Hardeman's non-Hodgkin's lymphoma diagnosis.

8. Admit that Mr. Hardeman does not have a genetic predisposition for developing non-Hodgkin's lymphoma.

9. Admit that Mr. Hardeman does not have a genetic predisposition for developing cancer.

10. Admit that Mr. Hardeman's basal cell carcinoma diagnosis did not cause or contribute to his non-Hodgkin's lymphoma diagnosis.

11. Admit that Mr. Hardeman's melanoma in situ diagnosis did not cause or contribute to his non-Hodgkin's lymphoma diagnosis.

12. Admit that not everyone who is diagnosed with Hepatitis C later contracts cancer.

13. Admit that not everyone who is diagnosed with Hepatitis C later contracts non-Hodgkin's lymphoma.

## REQUEST FOR PRODUCTION

1. Mr. Hardeman used Roundup and Roundup Concentrate from 1986-2013. Produce all labeling for Roundup and Roundup Concentrate between 1986-2013, including all drafts.

2. In Response to Interrogatories Nos. 19-23, you identify non-US regulatory activity or decisions that you contend evidence the safety or non-carcinogenicity of glyphosate and/or Roundup. Produce all communication between You and each of those regulatory entities or persons with respect to each activity or decision.

3. On or about August 23, 2018, Bayer and Monsanto held a "Conference Call to Discuss Glyphosate Litigation." The conference call was open to the public and included a "Q & A Session." Please produce all documents and communication related to that conference call, including preparation documents and communication as well as documents and communication during and after that conference call. Please include a privilege log for responsive documents withheld for privilege.

4. Produce all documents relating to the Sales Representative and/or his or her employer or company identified in Interrogatory No.25, above ("Sales Representative Documents").

   a. The Sales Representative Documents should include be limited in temporal scope to 1981-2013 (five years prior to Mr. Hardeman's use through end of his use):

      i. Scheduling documents including schedules, scheduling calendars, date books, and/or other documents that record the Sales Representative's schedule as it relates to the Roundup

      ii. Any notes relating to a communication with Mr. Hardeman, field reports, notes of the Roundup product's health risks (or lack thereof) and recommended manner of application and other documents provided to the Sales Representative, prepared by the Sales Representative, and/or prepared at the request of the Sales Representative identified response to Interrogatory No. 25;

      iii. Communications from the Distributor (identified in response to Interrogatory No. 26) and/or Defendant to the Sales Representative identified in Interrogatory 25, concerning the Roundup products, including but not limited to health risks (or lack thereof) and recommended manner of application, marketing materials, incident reports, sales data, budgetary and sales information.

      iv. Training materials provided to the Sales Representative identified in Interrogatory No. 25 concerning his or her position, job requirements, standards (whether Monsanto internal or external) and/or regulations and data concerning Roundup's health risks (or lack thereof) and recommended manner of application), promotion, distribution, product sales, including reporting requirements and preservation requirements including incident event reporting.

5. Produce documents by and between the Distributor identified in Interrogatory No. 26, above ("Distributor Documents"), limited in temporal scope to 1981-2013 (five years prior to Mr. Hardeman's use through end of his use):

- 12 -

PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC

    a. The Distributor Documents should include:

        i. Any notes relating to a communication with Mr. Hardeman, field reports, notes of the Roundup product's health risks (or lack thereof) and recommended manner of application and any and all other Documents prepared by the Distributor or at the request of the Distributor identified in Interrogatory No. 26;

        ii. Communications from the Sales Representative and/or Defendant to the Distributor identified in Interrogatory No. 26. concerning the Roundup products, including but not limited to health risks (or lack thereof) and recommended manner of application (or lack thereof), marketing materials, incident reports, sales data, budgetary information.

        iii. Training materials provided to the Distributor identified in Interrogatory No. 26 concerning their position, job requirements, standards (whether Monsanto Company internal or external), and/or regulations and data concerning Roundup product's the health risks (or lack thereof) and recommended manner of application promotion, distribution, device sale, including reporting requirements and preservation requirements including incident event reporting.

        iv. Files pertaining to the Distributor identified in Interrogatory No. 26, including but not limited to any sales data, complaint data, training data, data concerning the Roundup product's health risks (or lack thereof) and recommended manner of application, and contract and related documentation between and among Monsanto and the Distributor.

6. Produce Communications between the Defendant, the Sales Representative, the Sales Representative's employer or company, and/or the Distributor (as identified in Interrogatories Nos. 25-26 above) about Roundup, including but not limited to letters, telephone or email contacts, or meetings.

7. Produce any communication that references, mentions, or pertains to Mr. Hardeman.

8. Produce documents that reflect financial compensation, things of value and promotional items provided by Defendant, the Sales Representative, the Sales Representative's employer or company, and/or the Distributor identified in Interrogatories 25-26, above, to Plaintiff's Health

Care Providers (as identified in the Plaintiff Fact Sheet[1]). Please include all fees, expenses, honoraria, royalties, grants, gifts, travel (i.e., airfare, hotel etc.), and any other payments or things of value given.

9. Produce Communications between the Defendant, the Sales Representative, the Sales Representative's employer or company, and/or the Distributor identified in Interrogatories 25-26, above, and Plaintiff pertaining to Roundup, including but not limited to letters, telephone or email contacts, or meetings.

10. Produce documents that relate in a reasonably direct manner to relationships, if any, between Defendant and any of Plaintiff's Health Care Providers (as identified in the Plaintiff Fact Sheet) to conduct any pre-clinical, clinical, post-marketing surveillance, or other study or trial concerning the safety of pesticides, including but not limited to Roundup.

11. Produce documents that reflect financial compensation, things of value, and/or promotional items provided by Defendant, the Sales Representative, the Sales Representative's employer or company, and/or the Distributor identified in Interrogatories 25-26, above, to Plaintiff's Health Care Providers (as identified in the Plaintiff Fact Sheet). Please include all fees, expenses, honoraria, royalties, grants, gifts, travel (i.e., airfare, hotel etc.), and any other payments or things of value given.

12. Produce any communication by and between Defendant, the Sales Representative, the Sales Representative's employer or company, and/or the Distributor identified in Interrogatories 25-26, above, and Plaintiff's Health Care Providers as identified in the Plaintiff Fact Sheet.

13. Produce any communication about Plaintiff's Health Care Providers as identified in the Plaintiff Fact Sheet.

---

[1] Plaintiff is naming Drs. Ye, Turk and Turley in his Plaintiff Fact Sheet due October 22, 2018.

- 14 -

PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | DATED: October 18, 2018 | Respectfully Submitted |
| 4 | | ANDRUS WAGSTAFF, P.C. |
| 5 | | /s/ Aimee H. Wagstaff |
| 6 | | Aimee H. Wagstaff SBN 278480<br>ANDRUS WAGSTAFF, P.C. |
| 7 | | 7171 W. Alaska Dr.<br>Lakewood, Colorado 80226 |

- 15 -
PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC

Certificate of Service

I hereby certify that I sent a copy of this Fifth Set of Written Discovery to Monsanto attorneys Heather Pigman via e-mail and U.S. Mail on October 17, 2018.
ELasker@Hollingsworthllp.com & HPigman@Hollingsworthllp.com;
Hollingsworth LLP, 1350 I Street N.W., Washington, DC 20005

/s/ Aimee H. Wagstaff

- 16 -
PLAINTIFF'S FIFTH SET OF WRITTEN DISCOVERY - AMENDED
3:16-md-02741-VC