1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>ALL ACTIONS | Hon. Vince Chhabria<br><br>**PLAINTIFF'S BRIEF ABOUT WHETHER EXPOSURE TO NEWS ABOUT THE LITIGATION SHOULD DISQUALIFY A PROSPECTIVE JUROR** |

Pursuant to discussions held during the October 29, 2018 case-management conference and subsequent Pretrial Order No. 54 ("PTO No. 54"), Plaintiffs respectfully submit the following brief on the issue of "whether exposure to news about the litigation against Monsanto should disqualify a prospective juror" from participating on the Hardeman jury.  PTO No. 54; *see also* 10/29/18 Trns. of Proceed. at 61:7-11.

The short answer is ***no***—exposure to news about the litigation against Monsanto, including the *Johnson* verdict, is insufficient to automatically disqualify prospective jurors.  Rather, any potential juror's exposure to such information should be explored through the *voir dire* process.  Depending on the nature and extent of such exposure and, critically, provided such juror is capable of considering the evidence in this case impartially, and not consider any such information in determining this case, she should not be excused from the venire for cause because no prejudice exists.

## I.      There Is No Presumed Prejudice

"The Constitution guarantees both criminal and civil litigants a right to an impartial jury." *Warger v. Shauers*, 135 S. Ct. 521, 528 (2014).  There mere existence of pretrial publicity, however, does not, itself, erase a presumption of impartiality within a *venire*.  *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976) ("pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.").  Indeed, the Supreme Court rejected the "proposition that juror

exposure to information about a … defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process." *Murphy v. Fla.*, 421 U.S. 794, 799 (1975). In *Murphy*, the Court examined the "totality of the circumstances" of *voir dire* in evaluating the fairness of a criminal trial. *Id.* The Court concluded the criminal defendant had been granted due process notwithstanding widespread local media coverage of the trial and the defendant's crimes:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court…'

*Id.* at 800 (quoting *Irvin v. Dowd*, 366 U.S. 717, 721 (1961)); *see Hayes v. Ayers*, 632 F.3d 500, 511 (9th Cir. 2011) ("Our task is to 'determine if the jurors demonstrated actual partiality or hostility…that could not be laid aside.'").

Accordingly, a "'presumption of prejudice' because of adverse press coverage 'attends only the extreme case.'" *Hayes*, 632 F.3d at 508 (quoting *Skilling v. United States*, 561 U.S. 358, 381 (2010)). This is particularly true "in a large metropolitan area[,]" *In re Dan Farr Prods.*, 874 F.3d 590, 595 (9th Cir. 2017), and when "media accounts were primarily factual," which "tend to be less prejudicial than inflammatory editorials or cartoons." *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir.), *opinion amended on denial of reh'g*, 152 F.3d 1223 (9th Cir. 1998) (citing *Harris v. Pulley*, 885 F.2d 1354, 1362 (9th Cir. 1988)).

*Patton v. Yount* illustrates the high bar for suspending the presumption of *venire* impartiality due to pre-trial publicity. 467 U.S. 1025 (1984). In *Patton*, the defendant was tried and convicted of first degree murder for killing an eighteen-year-old female student. *Id.* at 1029. The conviction, however, was set aside by the Pennsylvania Supreme Court and the case was remanded for a new trial. *Id.* at 1029. Press coverage reported not only the facts of the crime but broadcasted a sensational account of the defendant's prior confession, a prior plea of temporary insanity, and the fact of prior conviction. *Id.* The Supreme Court held that such publicity, by itself, did not rise to the level of creating a presumption of prejudice for the second trial, even though all but 2 of 163 members of the venire panel acknowledged that they had heard about the case and that 126 of them

(77%) admitted that they would carry an opinion into the jury box based on pre-existing knowledge of the case. *Id.*; *see also Hayes*, 632 F.3d at 510 (discussing *Patton*). Indeed, the mere fact that jurors had heard of the earlier trial was "essentially irrelevant. The relevant question is not whether the community remembered the case, but whether the jurors at Yount's trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton*, 467 U.S. at 1035.

Here, media coverage concerning the *Johnson* case, and general Roundup litigation, does not rise to the level of concern to create a presumption of prejudice for the *Hardeman* venire.

First, this trial will take place in a large metropolitan area and will draw jurors from areas covered by the wide geographic region of the Northern District of California. The likelihood of such a large draw being uniformly contaminated with prejudice based on media reports is implausible.

Second, the media reports surrounding the *Johnson* verdict and overall Roundup litigation have been largely factual. There is scant evidence of inflammatory media reports designed to prejudice the jury—a least from the Plaintiffs' side. For example, unlike the defendant in *Patton*, no confession has been broadcast, no admission of liability by Monsanto has been public—that a jury found against Monsanto, a verdict Bayer/Monsanto have loudly and publicly decried, does not even approach the level of *potential* contamination in *Patton*, where the Supreme Court held a presumption was unwarranted.

Third, much of the media concerning the *Johnson* verdict has come *from* Monsanto and Bayer and has been prejudicial *against* Plaintiffs. For example, Scott Partridge, Bayer's current U.S. General Counsel, and formerly Monsanto's Vice President of Global Strategy, took to the airways shortly after the *Johnson* verdict and started spreading falsehoods, the most egregious being an appearance on the BBC where he claimed that there are no negative studies, that IARC is a discredited organization with an agenda, and that the trial Judge in *Johnson* voted against the jury while taking the verdict because she understood the science better:

> Partridge:    There are 800 plus scientific medical peer-reviewed published studies that demonstrate that glyphosate is safe. There is not a single scientific test / study that says to the contrary. … The World Health Organization absolutely did not find glyphosate to be a carcinogen. I think what you are referring to is the discredited agency out of Lyon France, the International Agency for Research on Cancer … This outfit has an agenda, it's an activist agenda, that is the only evidence put forward at trial … There will be post-trial motions to this judge

… The Judge herself, at the end of trial, when the jury verdict was read, the judge polled the jury and while the jury was unanimous the judge recorded the verdict as 12 to 1.  Under California law, the Judge acts as the 13th juror.  In this instance, on all points of liability where the jury found in favor of the plaintiff, the Judge found in favor of Monsanto. And, I think that is a reflection about the quality of the scientific and factual evidence that went into trial.

Reporter:    Well hang on, are you saying that the jury didn't understand the scientific evidence and the judge did?

Partridge:    Essentially that is what I am saying.

*World Business Report*, BBC World Service, Aug. 13, 2018 (starts at 6:22 – 15:50), *available at* https://www.bbc.co.uk/sounds/play/w172w47k419s26y.  Claiming there are *no* negative studies and that IARC is "discredited" is, itself, misleading, but the story about the trial judge voting against the jury is just *complete* nonsense.

Moreover, there is evidence that Monsanto has been directing Internet readers, including prospective jurors, to paid "news" articles spouting Monsanto's position.  For example, during jury selection in *Johnson*, numerous prospective jurors raised concerns that a paid-for article "about a judge declaring glyphosate safe in California" was being promoted heavily on Reddit and other news streams.  *See* Exh. A, *Johnson v. Monsanto*, Excerpts of *Voir Dire* at 578; *see also id.* at 1077.  ("[Q]. [H]ad you heard anything about Monsanto coming into trial? … [A].  Other than that same headline flashing up on my feed every time I go on Reddit, no."). This prejudicial media, presumably paid for by Monsanto and targeting the Bay Area,[1] could easily have contaminated the jury against the Plaintiffs.  However, though the *voir dire* process, both sides were able to impanel a jury that was, as Monsanto's attorney put it:

[A] special group because you walked into the jury room and you saw what it was like, you heard how many people say they couldn't be fair to my client, couldn't be fair to Monsanto. They couldn't put prejudice aside. They couldn't put bias aside. They couldn't put sympathy aside. But you are the ones that all said you could do that. You could put sympathy aside. You could put prejudice against Monsanto, its products, whatever, aside. And you could decide the case fairly and on the facts, applying the law that Her Honor has told you and the facts as you see them in this

---

[1] Plaintiffs are currently engaging in discovery to determine if, in fact, Monsanto was attempting to covertly contaminate the jury pool during the *Johnson* trial by promoting misleading news articles at Bay Area residents.  Depending on what Plaintiffs discover, Plaintiffs may seek special relief from the Court to enjoin any attempt to tamper with the jury in *Hardeman*.

PLAINTIFFS' BRIEF REGARDING JUROR EXPOSURE TO PRE-TRIAL PUBLICITY
16-MD-02741-VC

courtroom and no place else. And we really appreciate your ability to do that and
we know you'll continue to do that.

Exh. B, *Johnson v. Monsanto*, Excerpt of Tr. at 5222:7-21 (Aug. 7, 2018).

Overall, media surrounding the Roundup litigation and *Johnson* verdict does not rise to the
level of creating a presumption of prejudice. Thus, as described below, any consideration of
prejudice should be done through a *voir dire* process.

## II.     Any Potential Prejudice Can Be Explored in *Voir Dire*

The discretion exercised by the Court to screen the *venire* for prejudice is afforded substantial
deference by a reviewing court. *Hayes*, 632 F.3d at 512; *see United States v. Yepiz*, 718 F. App'x
456, 464 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1340 (2018) ("A trial court's finding of impartiality
may be overturned only for manifest error."). And, "[i]t is well accepted that bias may be presumed
only in 'extreme' or 'extraordinary' cases … courts answering this question should hesitate before
formulating categories of relationships which bar jurors from serving in certain types of trials.
Instead of formal categorization … '[t]he prime safeguard is *voir dire*." *Fields v. Brown*, 503 F.3d
755, 772 (9th Cir. 2007) (quoting *Tinsley v. Borg*, 895 F.2d 520, 527-28 (9th Cir. 1990)); *see also
Narten v. Eyman*, 460 F.2d 184, 187 (9th Cir. 1969) ("The effect of pretrial publicity can be 'better
determined after the *voir dire* examination of the jurors.'" (quotations omitted)). *Voir dire*, not
categorical exclusion, is the proper method of ensuring an impartial jury.

This point was emphasized in *Hayes*, where a defendant was convicted and sentenced to
death. 632 F.3d at 506. The defendant sought *habeas* relief, arguing that the *venire* had been
prejudiced by pretrial publicity. *Id.* at 508. The Ninth Circuit, however, rejected the petition, noting
that "[w]here circumstances are not so extreme as to warrant a presumption of prejudice," the
"inquiry focuses on the nature and extent of the *voir dire* examination and prospective jurors'
responses to it." *Id.* at 510-11. The question is whether "the jurors demonstrated actual partiality or
hostility [toward the defendant] that could not be laid aside." *Id.* And, even though a majority of
questioned jurors expressed some familiarity with pretrial press, the court admonished that "juror
impartiality ... *does not require ignorance*." *Id.* (quoting *Skilling*, 130 S.Ct. at 2914–15). Instead,
"[e]ven where a prospective juror displays some prior knowledge of the facts and issues involved in a
case, it is his ability to 'lay aside his impression or opinion and render a verdict based on the evidence

PLAINTIFFS' BRIEF REGARDING JUROR EXPOSURE TO PRE-TRIAL PUBLICITY
16-MD-02741-VC

presented in court' that is crucial." *Id.* at 211.  The district court in *Hayes* was confident the jury could render a fair verdict because, during *voir dire*, the jury's "statements regarding either the limited amount of publicity that they have been exposed to or the fact that they will disregard it and it has not in any way caused them to form any opinions" was sufficient.  *Id.*  The Ninth Circuit accepted the district court's analysis.

Thus, the extent to which the *venire* may have been influenced by pretrial publicity can be explored during *voir dire* (where a party seeking to disqualify a prospective juror must establish actual prejudice that cannot be laid aside).  This does not mean, however, that *voir dire* should "exclude[] from the jury all citizens who have read or heard about the case and who keep abreast of current events[.]"  *In re Dan Farr Prods.*, 874 F.3d at 595 (quoting *Nebraska Press*, 427 U.S. at 552).  Rather, *voir dire* should screen "out 'those with *fixed opinions* as to guilt or innocence'" that cannot set aside any partiality.  *Id.* (emphasis in original).  And, like counsel were able to do in the *Johnson* trial, thorough *voir dire* accomplishes that aim.

## III. Proposed Jury Questionnaire

Plaintiffs propose having the *venire* complete a short juror questionnaire prior to the commencement of *voir dire*.  The juror questionnaire used in the *Johnson* trial is attached as Exhibit C.  That questionnaire, however, is far too long and is unnecessary.[2]  Instead, Plaintiffs propose a shorter, more-direct questionnaire, attached as Exhibit D.  Plaintiffs propose that the *venire* complete this questionnaire and the Parties receive those responses by Friday, February 22, 2019—giving both Parties the weekend to review them before jury selection.  This should allow for a more streamlined *voir dire* process and, hopefully, allow for opening statements by Tuesday, February 26, 2019.


DATED:  November 30, 2018            Respectfully submitted,

                                     By:  /s/ Aimee Wagstaff
                                     Aimee Wagstaff
                                     Aimee.wagstaff@andruswagstaff.com
                                     ANDRUS WAGSTAFF, P.C.
                                     7171 West Alaska Drive

---

[2] Indeed, because of the length of the *Johnson* questionnaire and unrestricted leave to question the *venire*, jury selection in the *Johnson* trial was needlessly long.

1   Lakewood CO 80226
    Telephone: (303) 376-6360
2   Facsimile:  (303) 376-6361

3   Robin Greenwald
    rgreenwald@weitzlux.com
4   WEITZ & LUXENBERG, P.C.
    700 Broadway
5   New York NY 10003
    Telephone: (212) 558-5500
6   Facsimile: (212) 344-5461

7   Michael Miller
    mmiller@millerfirmllc.com
8   THE MILLER FIRM, LLC
    108 Railroad Ave
9   Orange VA 22960
    Telephone: (540) 672 4224
10  Facsimile:  (540) 672-3055

11  *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' BRIEF REGARDING JUROR EXPOSURE TO PRE-TRIAL PUBLICITY
16-MD-02741-VC

**CERTIFICATE OF SERVICE**

     I certify that I have served a copy of the foregoing PLAINTIFFS' BRIEF REGARDING JUROR EXPOSURE TO PRE-TRIAL PUBLICITY upon all opposing counsel of record by electronic mail and/or by placing a copy of same in the U.S. Mail, first class, postage prepaid, this 9th day of November, 2018.

    By:  /s/ R. Brent Wisner
    R. Brent Wisner, Esq. (SBN: 276023)
    rbwisner@baumhedlundlaw.com
    BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
    10940 Wilshire Boulevard, 17th Floor
    Los Angeles, CA 90024
    Telephone:  (310) 207-3233
    Facsimile:  (310) 820-7444

PLAINTIFFS' BRIEF REGARDING JUROR EXPOSURE TO PRE-TRIAL PUBLICITY
16-MD-02741-VC