**BAUM  HEDLUND  ARISTEI  GOLDMAN** PC
— CONSUMER ATTORNEYS —

Washington, D.C. Office
2101 L Street, N.W.
Suite 800
Washington, D.C. 20037-1526
Office (202) 466-0513
Fax (202) 466-0527

10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Office (310) 207-3233
Fax (310) 820-7444
www.baumhedlundlaw.com

Philadelphia Office
1500 Market Street
12th Floor East Tower
Philadelphia, PA 19102-2100
Office (215) 665-5659
Fax (215) 569-8228

December 4, 2018

<u>VIA CM/ECF</u>

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC
      Discovery Letter Regarding Topics of a Rule 30(b)(6) Deposition

Dear Judge Chhabria:

On November 9, 2018, Plaintiffs served a Rule 30(b)(6) deposition notice on Monsanto, listing twenty-six topics for questioning. A copy of the deposition notice is attached as Exhibit A. After meeting and conferring, the Parties were able to agree on, narrow, or withdraw various topics. However, the Parties have reached an impasse on topics 11, 12, 18, 19, and 26. The Parties, with leave of Court, intend to complete this deposition in January 2019.

Topic 11: Monsanto's interaction with members and staffers of the United States Congress regarding GBFs, both directly and vis-à-vis third-party liaisons, including but not limited to FTI Consulting.

Topic 12: Monsanto's interaction with members and staffers of the United States Congress regarding IARC, both directly and vis-à-vis third-party liaisons, including but not limited to FTI Consulting.

Topic 18: Monsanto's knowledge, positions, and conduct related to the "Let Nothing Go" campaigns and/or initiatives.

Topic 19: Monsanto's knowledge, positions, and conduct related to interactions with the media and press related to IARC's classification of GBFs as a probable human carcinogen.

Topic 26: Monsanto's promotional efforts on the internet, including but not limited to paid searches designed to steer people to specific news articles. This topic includes any and all efforts by Monsanto to target people living in San Francisco and the Bay Area either directly or through an intermediary law firm / company.

BAUM HEDLUND ARISTEI GOLDMAN PC
— CONSUMER ATTORNEYS —

December 4, 2018
Page 2

**Plaintiffs' Position**

**Topics 11 &12:** These topics relate to Monsanto's efforts to use its contacts and influence in the U.S. Congress to put pressure on the International Agency for Research on Cancer ("IARC") and other scientific institutions like the National Cancer Institute ("NCI"). By agreement, Plaintiffs have limited the time scope of this topic from October 2014 to the present.

For example, following the deposition of Dr. Aaron Blair, Monsanto enlisted a Reuters journalist, Kate Kelland, to write an attack piece on IARC and Dr. Blair. That article, based on presentations given to Ms. Kelland by Monsanto, was published in June 2017. Kate Kelland, *Cancer Agency Left in the Dark Over Glyphosate Evidence*, Reuters (June 14, 2017). The article suggests that Dr. Blair deliberately concealed the results from the Agricultural Health Study ("AHS") during the IARC meeting on glyphosate and that his machinations caused IARC to reach its 2A classification. Then, Monsanto used the Reuters article—filled with Monsanto's falsehoods—to exert political pressure on the NCI to rush out the AHS data. For example, in May 2016, Monsanto employees edited a letter to be sent to the NCI director Susan Collins from Congressman Robert Aderholt, questioning NCI's support for the IARC monograph program because of its classification of glyphosate. Additionally, at the behest of Monsanto's lobbying powerhouse FTI Consulting, on August 8, 2017, various congressmen from the House Committee on Oversight and Government Reform sent a letter to the NCI claiming Dr. Blair "withheld information that could change" the IARC assessment, citing the Reuters article as its only source. The letter queried "why the NCI did not publish the AHS results on glyphosate" and demanded a response by August 22, 2017.

As if on cue, on August 22, 2017, researchers from the NCI submitted the follow-up results on glyphosate from the AHS to the Journal of the National Cancer Institute (a privately-owned journal, not controlled by the NCI or the federal government). The journal conducted its peer-review and accepted the article for publication in record time, August 22, 2017 – October 6, 2017. And, as if also on cue, the article was published online—the print version was not slated for publication until 2018—on November 9, 2017, the day before Monsanto's *Daubert* Reply brief was due, leading to a whole new round of briefing and depositions just on the AHS.

There is also a significant number of internal Monsanto documents showing that Monsanto was lobbying Congress to cut U.S. funding for the IARC monograph program in retaliation for its classification of glyphosate. Indeed, Congress held hearings about this issue and the primary basis for these accusations was, again, the Reuters article.

These topics are reasonably calculated to lead to admissible information. *See, e.g.*, *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044333, at *3 (D. Conn. Nov. 14, 2013) (discovery related" to lobbying efforts" about "issues at the heart of this litigation were discoverable). Whether this testimony will ever be admitted is impossible to know beforehand. That said, it is *calculated* to lead to admissible testimony because Monsanto's actions raise questions about the reliability and impartiality of the recently published AHS study—a centerpiece of Monsanto's general causation defense—and it helps explain why the AHS was rushed to publication, riddled with the errors. Additionally,

BAUM HEDLUND ARISTEI GOLDMAN PC
— CONSUMER ATTORNEYS —

December 4, 2018
Page 3

Monsanto's conduct relative to IARC is relevant to showing malice. Instead of engaging in better science or a more comprehensive investigation, Monsanto attempted to discredit and attack IARC using its political influence to defund the organization.

Finally, Monsanto attempts a "goose-gander" argument, claiming that these topics would open up a "side show" of discovery concerning Plaintiffs' PR activities. This is a deeply disingenuous argument considering Monsanto has subpoenaed Plaintiffs' counsel's PR firms and other third-parties, including activists, seeking this very type of information. And, frankly, if there were any evidence to suggest that "pivotal" science like the AHS was influenced or corrupted by Plaintiffs, then Monsanto would not hesitate to seek that discovery—as it attempted to do through its harassment of Dr. Aaron Blair. Monsanto is threatening "side show" discovery to avoid otherwise valid discovery. The Court should reject it.

**Topic 18:** As part of Monsanto's global "Freedom to Operate" ("FTO") program—a corporate strategy designed to prevent limits on Monsanto's ability to sell its pesticides—Monsanto operates a "Let Nothing Go" ("LNG") campaign. The exact nature of this campaign is unclear, but it appears to be a systematic effort by Monsanto to attack or discredit any researcher, reporter, activist, or politician that seeks to restrict or challenge Monsanto's FTO. Monsanto claims this program was limited to Europe. And, while that may be true, Plaintiffs have uncovered numerous documents showing that the LNG program was being supervised by U.S.-based Monsanto personnel and was being used to attack IARC globally. Plaintiffs would like to obtain testimony from Monsanto about this program.

**Topic 19:** This topic seeks to explore communications made by high-level Monsanto employees to the media about the IARC classification. Like Topics 11 & 12, Plaintiffs have limited the time scope of this topic from October 2014 to the present. Monsanto's employees have repeatedly made allegations against IARC, for example claiming that the organization "has an agenda" and is "discredited." World Business Report, BBC World Service, Aug. 13, 2018 (starts at 6:22 – 15:50). We know, from internal documents, that Monsanto intended to "orchestrate outcry" against IARC, even before Monsanto knew what IARC's classification would be. Indeed, on its website, Monsanto makes factual claims, such as "there have been more than 800 scientific studies and reviews that prove glyphosate is safe[,]" that "IARC is the same organization that determined beer, meat, cell phones, and coffee cause cancer[,]" and that "[i]nvestigative reports by Reuters [discussed above] … have uncovered that IARC members reviewing glyphosate concealed important scientific data, edited out the conclusions of key studies, and were closely aligned with U.S. trial lawyers." Monsanto, *IARC's Report on Glyphosate* (Apr. 21, 2017). These statements are largely false, and numerous Monsanto talking heads have repeated these accusations to the media.

**Topic 26:** This topic focuses on efforts by Monsanto to direct internet traffic to specific articles and explores whether that conduct has been directed to Bay Area residents. As explained in Plaintiffs' Jury Selection brief, Dkt. 2220, during the *Johnson* trial numerous San Francisco prospective jurors indicated that they were being inundated with paid ads to articles favorable to Monsanto. Indeed, for a period of time, someone was paying to direct Google searches related to Roundup and cancer to the Reuters article discussed above. Plaintiffs contacted Reuters and they

BAUM HEDLUND ARISTEI GOLDMAN PC
— CONSUMER ATTORNEYS —

December 4, 2018
Page 4

indicated that the paid search was not being done by them. When Plaintiffs' counsel inquired with Google, Google would not disclose who was paying for the search, but indicated it was a law firm. Plaintiffs wish to explore this issue with Monsanto and obtain testimony about whether these paid searches were part of an effort to "orchestrate outcry" with IARC or, worse, influence the Bay Area jury pool.

**Monsanto's Position**

Putting aside that plaintiffs' letter brief distorts and mischaracterizes Monsanto's conduct, the contested discovery that plaintiffs seek has no bearing on causation, failure to warn, or any other relevant issue in this litigation. Monsanto has agreed to produce testimony to cover most of the 26 topics included in Plaintiffs' exhaustive 30(b)(6) notice. But the remaining disputed Rule 30(b)(6) deposition topics at issue here revolve around Monsanto's efforts to communicate with legislative bodies and/or the media about the safety of glyphosate-based herbicides ("GBHs") – activities that are protected by the First Amendment and most of which occurred *after* the three remaining Group 1 plaintiffs (Hardeman, Stevick, and Gebeyehou) were no longer being exposed to GBHs.[1] Through their attorneys and pro-plaintiff reporters, plaintiffs in this Roundup MDL have engaged in extensive public relations campaigns to promote their litigation positions and attempt to influence governmental agencies. Monsanto's First Amendment activity is no more relevant than plaintiffs' First Amendment activities – and if the Court allows discovery into these types of activities, it would lead to side-shows that are far afield from the true issues in this litigation. As discussed below, the Court should preclude plaintiffs from seeking deposition testimony from Monsanto regarding the topics at issue here because they are not "relevant to any party's claim or defense" and are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

**Topics 11 & 12:** Topic 11 and Topic 12 are not relevant to any claims or defenses and are not proportional to the needs of this case because these topics stray way too far afield from the issues in this case. Plaintiffs' effort to tie the timing of the release of the Agricultural Health Study published by Andreotti, *et al.* to their claims or Monsanto's defenses lacks merit. It is simply absurd for plaintiffs to contend that a study as comprehensive and complex as the Andreotti JNCI study could be rushed to completion between August 8 and August 22, 2017. Nor does the asserted lobbying of Congress concerning IARC after it released its report bear any relevance to the litigation, let alone the claims of the Group 1 Plaintiffs. The 2013 District of Connecticut case cited by plaintiffs (*A & R Body Specialty & Collision Works*) is inapposite and uses the outdated Rule 26 standard for discoverability (whether a disputed discovery request is reasonably calculated to lead to the discovery of admissible evidence), as opposed to the more stringent standard that applies here – relevance and proportionality – after the 2015 amendments

---

[1] *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (discussing First-Amendment-based protections provided by *Noerr-Pennington* doctrine for conduct that involves petitioning government agencies); *People ex. rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 964 (2008) ("The *Noerr-Pennington* doctrine has been extended to preclude virtually all civil liability for a defendant's petitioning activities before not just courts, but also before administrative and other governmental agencies.").

BAUM HEDLUND ARISTEI GOLDMAN PC
CONSUMER ATTORNEYS

December 4, 2018
Page 5

to Rule 26.  *See Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (discussing December 2015 amendments to Rule 26 and stating: "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence.  In fact, the old language to that effect is gone.").  Topic 11 and Topic 12 do not meet the current Rule 26(b)(1) standard.

Moreover, plaintiffs have engaged in extensive public relations activities in support of their litigation positions – through attorneys and pro-plaintiff journalists – including publicizing documents obtained during discovery and lobbying regulators and legislative bodies in this country and in Europe.  The discovery sought in Topic 11 and Topic 12 is no more relevant than plaintiffs' public relations and lobbying activities.  Plaintiffs try to justify the topics at issue here by claiming that Monsanto harassed Dr. Blair, but that argument misses the mark.  In fact, Monsanto took his deposition pursuant to an order by this Court and elicited important, relevant testimony from him that revealed significant flaws in IARC's assessment of glyphosate.  In any event, the issue now before this Court is the appropriate scope of discovery going forward in this MDL.  If this door is opened, Monsanto would be entitled to extensive discovery of plaintiffs' counsel because they are the parties or agents for the parties engaging in media, governmental, or other related conduct.  To keep discovery within appropriate bounds and avoid side-shows, the Court should reject plaintiffs' efforts to seek Rule 30(b)(6) testimony regarding Topic 11 and Topic 12.

**Topic 18:**  As discussed during the 2/22/17 deposition of Monsanto employee David Heering, the "Let Nothing Go" media outreach campaign operated in Europe – not in this country.  Topic 18 is not an appropriate Rule 30(b)(6) deposition topic because this media campaign is far removed from the issues relevant to this litigation, and there is no basis to conclude that it affected the Group 1 plaintiffs.  Plaintiffs are free to question Monsanto's corporate employees during fact depositions to determine what they may know about this European media campaign (including showing those fact witnesses any documents in depositions that may relate to this issue), but Monsanto should not be required to present a Rule 30(b)(6) witness to address this European media outreach campaign.

**Topic 19:**  For similar reasons discussed above by Monsanto with respect to Topic 11 and Topic 12, the Court also should preclude plaintiffs from seeking Rule 30(b)(6) testimony on Topic 19.  These First Amendment activities by Monsanto – communicating its position regarding GBHs to the media after IARC announced its assessment of glyphosate – do not satisfy the relevance and proportionality standard of Rule 26(b)(1).  Moreover, plaintiffs repeatedly have conducted (through counsel and others) wide-ranging public relations and media campaigns designed to promote plaintiffs' litigation positions.  Monsanto's First Amendment activities do not satisfy the Rule 26(b)(1) standard any more than plaintiffs' First Amendment activities, so the Court should reject plaintiffs' efforts to elicit deposition testimony from Monsanto on Topic 19.

**Topic 26:**  In Topic 26, plaintiffs seek discovery regarding similar issues relating to internet searching.  The Court should again preclude that discovery because Topic 26 addresses issues that are not relevant to any claims or defenses and do not satisfy the proportionality

BAUM HEDLUND ARISTEI GOLDMAN PC
— CONSUMER ATTORNEYS —

December 4, 2018
Page 6

standards of Rule 26(b)(1).  In fact, Google searches for "Roundup" and "glyphosate" lead directly to the websites of plaintiffs' lawyers (and other intermediaries working with the plaintiffs' bar) regarding the Roundup litigation.  Those websites seek to generate further lawsuits against Monsanto and try to influence the views of the public – including potential jurors – in favor of plaintiffs' litigation positions.  However, Monsanto has not sought discovery regarding those issues.  Discovery should remain focused on the core issues important to this litigation – not the kind of side-shows that the 2015 amendments to Rule 26 were intended to avoid.

Sincerely,

By:  /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

Aimee Wagstaff
Aimee.wagstaff@andruswagstaff.com
ANDRUS WAGSTAFF, P.C.
7171 West Alaska Drive
Lakewood CO 80226
Telephone: (303) 376-6360
Facsimile:  (303) 376-6361

Robin Greenwald
rgreenwald@weitzlux.com
WEITZ & LUXENBERG, P.C.
700 Broadway
New York NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
THE MILLER FIRM, LLC
108 Railroad Ave
Orange VA 22960
Telephone: (540) 672 4224
Facsimile:  (540) 672-3055

*Attorneys for Plaintiffs*

**BAUM HEDLUND ARISTEI GOLDMAN** PC
———— CONSUMER ATTORNEYS ————

December 4, 2018
Page 7

/s/ Brian L. Stekloff
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Kirby T. Griffis (*pro hac vice*)
(kgriffis@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY