**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Andrew Solow (*pro hac vice*)
(Andrew.Solow@arnoldporter.com)
250 West 55th Street
New York, NY 10019
Tel: 212-836-7740
Fax: 212-836-6776

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC | **MONSANTO COMPANY'S MOTION TO REVERSE BIFURCATE THE GROUP 1 TRIALS** |
| *Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC | |
| *Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT .................................................................................................................................4

      I.      Standard of Review ...............................................................................................4

      II.     The Court Should Reverse Bifurcate The Group 1 Trials. ...................................5

            1.      Reverse Bifurcation Avoids Undue Prejudice And Jury Confusion .........6

            2.      Reverse Bifurcation Promotes Judicial Economy ....................................8

      III.    Both Phases Should Be Tried To The Same Jury. ................................................9

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Alabama v. Blue Bird Body Co.*,
    573 F.2d 309 (5th Cir. 1978) ..................................................................................................9

*Allstate Ins. Co. v. Breeden*,
    410 F. App'x 6 (9th Cir. 2010)......................................................................................4, 5, 8

*Angelo v. Armstrong World Indus., Inc.*,
    11 F.3d 957 (10th Cir. 1993) ........................................................................................1, 5, 6, 9

*Buttram v. Owens-Corning Fiberglas Corp.*,
    16 Cal. 4th 520 (1997) ..............................................................................................................1

*Counts v. Burlington N. R.R. Co.*,
    952 F.2d 1136 (9th Cir. 1991) ................................................................................................4

*Exxon Co. v. Sofec, Inc.*,
    54 F.3d 570 (9th Cir. 1995), *aff'd*, 517 U.S. 830 (1996) .......................................................4

*Gasoline Prods. Co. v. Champlin Ref. Co.*,
    283 U.S. 494 (1931)................................................................................................................10

*Greenleaf v. Garlock, Inc.*,
    174 F.3d 352 (3d Cir. 1999)....................................................................................................5

*Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*,
    573 F.3d 947 (10th Cir. 2009) .............................................................................................10

*In re Bendectin Litig.*,
    857 F.2d 290 (6th Cir. 1988) ..............................................................................................1, 5

*In re Beverly Hills Fire Litig.*,
    695 F.2d 207 (6th Cir. 1982), *cert. denied*, 461 U.S. 929 (1985)................................2, 5

*In Re Diet Drugs Prods. Liab. Litig.*,
    123 F. App'x 465 (3d Cir. 2005) ...........................................................................................2

*In re Diet Drugs Prods. Liab. Litig.*,
    369 F.3d 293 (3rd Cir. 2004) ...............................................................................................2

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    --- F. App'x ----, 2018 WL 3720027 (9th Cir. Aug. 6, 2018)............................................5

*In re: Mass Tort & Asbestos Programs*
    (C.P. Phila. Cty. Feb. 15, 2012) ............................................................................................6

*Jinro Am. Inc. v. Secure Invs., Inc.*,
    266 F.3d 993 (9th Cir. 2001) ..................................................................................................4

*Jones v. Johns-Manville Corp.*,
    22 Phila. Cty. Rptr. 91 (C.P. Phila. Cty. 1991)...................................................................1

*Kirk v. Raymark Indus, Inc.*,
    61 F.3d 147 (3d Cir. 1995)..................................................................................................1, 5

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ........................................................................................4

*Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    703 F.2d 1152 (10th Cir. 1981), *cert. denied*, 464 U.S. 824 (1983)................................10

*Mason v. Texaco, Inc.*,
    948 F.2d 1546 (10th Cir. 1991), *cert. denied*, 504 U.S. 910 (1992)...............................10

*Sears v. S. Pac. Co.*,
    313 F.2d 498 (9th Cir. 1963) ........................................................................................10

*Shetterly v. Raymark Indus., Inc.*,
    117 F.3d 776 (4th Cir. 1997) ......................................................................................1, 5

*United Air Lines, Inc. v. Wiener*,
    286 F.2d 302 (9th Cir. 1961),  *cert. denied*, 366 U.S. 924 (1961)...................................10

*White v. Ford Motor Co.*,
    500 F.3d 963 (9th Cir. 2007) ........................................................................................10

*White v. Owens-Corning Fiberglas, Corp.*,
    668 A.2d 136 (Pa. Super. Ct. 1995)..................................................................................1

*Williamson v. Plant Insulation Co.*,
    23 Cal. App. 4th 1406(1994) ...........................................................................................1

**RULES**

Federal Rule of Civil Procedure 42(b) ....................................................................................1, 4

**REGULATIONS**

Gen. Court Regulation No. 2012-01, *In re: Mass Tort & Asbestos Programs*
   (C.P. Phila. Cty. Feb. 15, 2012) .........................................................................................6

Monsanto respectfully requests that the Court reverse bifurcate the Group 1 trials into two phases—a first phase focused on medical causation (*i.e.*, did the product at issue cause the specific plaintiff's injury), and, if necessary, a second phase to address Monsanto's liability and the assessment of any damages.  Applying Federal Rule of Civil Procedure 42(b) (or equivalent state court rules), courts throughout the country have reverse bifurcated trials in personal injury litigations where juries have been asked to resolve complex and dispositive issues of causation, including in cases involving:

- **Asbestos,** *see, e.g.*, *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997); *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 152 (3d Cir. 1995); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964-65 (10th Cir. 1993); *Buttram v. Owens-Corning Fiberglas Corp.*, 16 Cal. 4th 520, 526 (1997); *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406, 1412 (1994); *White v. Owens-Corning Fiberglas, Corp.*, 668 A.2d 136, 139 (Pa. Super. Ct. 1995); *Jones v. Johns-Manville Corp.*, 22 Phila. Cty. Rptr. 91, 93-94 (C.P. Phila. Cty. 1991).

- **Bendectin,** *see In re Bendectin Litig.*, 857 F.2d 290, 309 (6th Cir. 1988).

- **DES,** *see, e.g.*, *In re N.Y. Cty. DES Litig.*, 621 N.Y.S.2d 332, 333 (N.Y. App. Div. 1995) (affirming DES trial with "reverse-bifurcated proceeding").

- **Diet Drugs,** *see, e.g.*, Order, *Stafford v. Wyeth Corp.*, No. CIV-02-1118-L (W.D. Okla. Jan. 13, 2006); Order, *Bristley v. Wyeth*, No. H-02-4264 (S.D. Tex. May 27, 2005); Hr'g Tr. at 3-16, *Hines v. Am. Home Prods. Corp.*, No. DD001645 (Cal. Super. Ct. Oct. 12, 2004); Hr'g Tr. at 37:1-11, *Granillo v. Wyeth, Inc.*, No. D-0101-CV-200400361 (N.M. Dist. Ct. Oct. 6, 2005); Hr'g Tr. at 42:3-4, *Fazzini v. Wyeth, Inc.*, No. 1775 (C.P. Phila. Cty. Feb. 16, 2005); Order Regarding Reverse Bifurcation, *Hoyt v. Wyeth Inc.*, No. 3781 (C.P. Phila. Cty. Feb. 10, 2005); Order, *Dupree v. Wyeth*, No. 2429 (C.P. Phila. Cty. Oct. 13, 2004); Hr'g Tr. at 4:14-17, *Archer v. Wyeth, Inc.*, No. 2595 (C.P. Phila. Cty. Sept. 20, 2004); Order, *Hansen v. Am. Home Prods. Corp.*, No. 1063 (C.P. Phila. Cty. Sept. 15, 2004); Order Regarding Bifurcation, *Danielson v. Wyeth*, No. 3968 (C.P. Phila. Cty. Sept. 15, 2004); Hr'g Tr. at 13, *Berntson v. Wyeth*, No. 2304 (C.P. Phila. Cty. Aug. 17, 2004); Hr'g Tr. at 55:12-14, *Downard v. Wyeth*, No. 170 (C.P. Phila. Cty. Aug. 16, 2004); Order Granting Wyeth's Mot. for Reverse Bifurcation of Tr., *Castereno v. Wyeth*, No. 18463 (Tex. Dist. Ct. Jan. 12, 2006); Order Granting Wyeth's Mot. for Reverse Bifurcation of Tr., *Pence v. Wyeth*, No. 18028 (Tex. Dist. Ct. Jan. 12, 2006); Order, *Bradford v. Wyeth*, No. 8154 (Tex. Dist. Ct. Jan. 10, 2006); Order Granting Wyeth's Mot. for Reverse Bifurcation of Tr., *Rogers v. Wyeth*, No. 03-05-19169 (Tex. Dist. Ct. Jan. 3, 2006); Order Granting Wyeth's Mot. for Reverse Bifurcation of Tr.,

*Haley v. Wyeth*, No. 03-05-19179 (Tex. Dist. Ct. Jan. 3, 2006) (attached hereto collectively as Exhibit 1).[1]

- **Hormone Replacement Therapy,** *see, e.g.*, Order Granting Phased Tr., *Buxton v. Wyeth Pharm., Inc.*, No. 202 (C.P. Phila. Cty. July 12, 2010) (attached hereto as Exhibit 2) (ordering reverse bifurcation in hormone replacement therapy case); Pretrial Conference Hr'g Tr. at 5, 7-8, *Barton v. Wyeth Pharm., Inc.*, No. 6301 (C.P. Phila. Cty. Sept. 9, 2009) (attached hereto as Exhibit 3) (same); Pretrial Conference Hr'g Tr. at 27-33, *Nelson v. Wyeth Pharm., Inc.*, No. 1670 (C.P. Phila. Cty. Sept. 5, 2006) (attached hereto as Exhibit 4) (same).

- **Other personal injuries,** *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982) (affirming reverse bifurcation in personal injury trial arising from hotel fire), *cert. denied*, 461 U.S. 929 (1985).

That approach is particularly appropriate here because it will allow the jury to evaluate causation based on the actual scientific studies and evidence, and avoid potential confusion or distraction created by the assessments of that evidence by regulators and IARC, and by arguments about the methods and motives of those bodies.

As this Court made clear in its *Daubert* opinion, the issue of causation turns on the underlying scientific studies that have been conducted on glyphosate and glyphosate-based formulations. It also involves analysis of whether Plaintiffs' experts can reliably use a "differential diagnosis" to opine that Roundup in fact caused a particular plaintiff's NHL, in light of the plaintiff's specific medical history and potential alternative risk factors or causes. While evidence of the longstanding, worldwide regulatory approval of glyphosate (and IARC's apparent dissent from that consensus) may be relevant not only to causation but also to Monsanto's good faith in marketing its product, evidence of these regulatory approvals and IARC's divergent findings raises concerns under Rule 403 because it could confuse and distract the jury from the central scientific evidence. What the actual regulatory bodies and IARC have said about the science is not a substitute for the jury's own evaluation of the science. But the temptation would be great for lay jurors to simply assume that either the

---

[1] Reverse bifurcation in the *Diet Drug* litigation occurred following an initial national settlement that barred punitive damages in opt-out cases, but the fundamental principle of trying medical causation before liability was endorsed by the Third Circuit. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 318 (3rd Cir. 2004); *see also In Re Diet Drugs Prods. Liab. Litig.*, 123 F. App'x 465, 470-72 (3d Cir. 2005) (subsequent decision affirming a state court's discretion to utilize reverse bifurcation).

- 2 -

expert regulators or IARC are correct and end their analysis there, particularly given that the regulators and IARC have reached such disparate conclusions.

The risk of confusion and distraction regarding the threshold causation issues is all the greater in light of Plaintiff's counsel's recent assertions about his trial strategy: Plaintiff's counsel stated at the last hearing that he believes IARC's classification is central to the causation inquiry, notwithstanding this Court's holding that IARC does *not* answer that question. *Compare* Dec. 5, 2018 CMC Hr'g Tr. at 59:6-10 (Plaintiffs' counsel: "'Roundup has been on the market for 40 years. It has a demonstrated record of safety.' And there's so much untruth about that that we have to unpack. We will do that with evidence, but a lot of it involves IARC because what IARC did is it's the change in the narrative."), *with* PTO 45, at 2 ("[T]he hazard assessment IARC undertakes is too limited and too abstract to fully serve the plaintiffs' purposes here. A substance could be cause for concern, such that it can and should trigger preventive public health measures and further study, even when it is not so clearly dangerous as to allow a verdict in favor of a plaintiff.").[2] Reverse bifurcation would ensure that the jury's decision on causation is driven by the scientific evidence regarding causation.

Moreover, reverse bifurcation is consistent with the principles of judicial economy that courts have considered in applying Rule 42. If the jury were to rule in Monsanto's favor on causation, there would be no need for further trial proceedings. And there is little to no overlap in the potential witnesses that would testify in each phase of the trial: The experts who have assessed the epidemiological evidence, animal studies, alleged genotoxicity, and the Plaintiff's medical history would need to testify only in Phase 1, and corporate and regulatory witnesses could potentially testify in Phase 2 if needed.

Finally, in response to this Court's question about the timing of the two phases of trial, Monsanto respectfully submits that the safest course would be to try the phases in order before

---

[2] *See also* PTO 45 at 12 ("But it's enough at this point to say that IARC's hazard assessment considers the evidence for a different purpose, and without the attention to the effects of current human exposure the Court must pay here."); *id.* ("A 'hazard assessment,' as IARC and other public health bodies define that inquiry, is not what the jury needs to conduct when deciding whether glyphosate actually causes NHL in people at past or current exposure levels.").

- 3 -

the same jury. Both phases could be tried in under three weeks total, avoiding undue burden on the Court and potential jurors. Trying the phases in succession would allow for a more efficient presentation of evidence in Phase 2 (if it is necessary) before a jury already familiar with many of the underlying facts. And this approach would avoid any potential constitutional issues that could be created if different juries were to make different factual determinations about the same issues in the same case.

## ARGUMENT

### I.    Standard of Review

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). *See generally Allstate Ins. Co. v. Breeden*, 410 F. App'x 6, 9 (9th Cir. 2010);[3] *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005); *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995), *aff'd*, 517 U.S. 830 (1996).

"Under Rule 42(b), the district court has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). The Ninth Circuit reviews the district court's decision to bifurcate a trial for abuse of discretion and has routinely affirmed the use of bifurcated trials. *Id.*; *Exxon Co.*, 54 F.3d at 575-76; *Counts v. Burlington N. R.R. Co.*, 952 F.2d 1136, 1139 (9th Cir. 1991). Recently, in *Allstate Insurance Company v. Breeden*, the Ninth Circuit affirmed a district court's *sua sponte* bifurcation of liability and damages, holding that "Allstate's liability under the disputed insurance policy was a dispositive issue; the jury's verdict on Allstate's misrepresentation claim obviated the need for a jury trial on Breeden's claims for damages, which properly served the goals of Rule 42(b)." 410 F. App'x at 9.

---

[3] *Cf.* 9th Cir. R. 36-3(b) ("Unpublished dispositions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1.").

- 4 -

1  **II.  The Court Should Reverse Bifurcate The Group 1 Trials.**

2  Courts throughout the country have commonly employed reverse bifurcation in cases involving potentially dispositive issues of medical causation, including toxic torts, asbestos, pharmaceuticals, and other mass torts.  *See, e.g.*, *supra* at 1-2 (collecting cases).  The Advisory Committee Notes to Rule 42 state:  "While separation of issues is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth."[4]  As noted above, the experiences from mass tort litigations involving asbestos, Bendectin, DES, diet drugs, and hormone replacement therapy amply demonstrate the worth of reverse bifurcation.

Indeed, numerous federal appellate courts applying Rule 42(b) have upheld a trial procedure like the one Monsanto suggests here, where in the first phase, the jury focused on "whether the plaintiff [had] a disease that was caused by [the alleged product]," and (if necessary) in the second phase, the jury considered "what warnings the defendants should have given . . . and whether the products to which the plaintiff was exposed were the defendants'."  *Angelo*, 11 F.3d at 965; *see also Shetterly*, 117 F.3d at 782 (affirming reverse bifurcation in asbestos trial); *In re Bendectin Litig.*, 857 F.2d at 309 (affirming district court decision to try the issue of causation in a first phase and the issue of liability in a later phase in action alleging that the anti-nausea drug Bendectin caused plaintiffs' birth defects); *accord In re Beverly Hills Fire Litig.*, 695 F.2d at 216 (affirming reverse bifurcation in hotel fire case).[5]

The Tenth Circuit's seminal decision in *Angelo* affirmed a similar phased trial procedure for reasons that well apply here.  The plaintiffs in *Angelo*, like here, argued that the district court abused its discretion by using the reverse bifurcation format because it was prejudicial to them and because the issues in the trial were inseparable.  11 F.3d at 964-65.

---

[4] The Manual for Complex Litigation, which has been acknowledged by this District "as a resource for managing complex cases" (http://www.cand.uscourts.gov/complexlitmanual), notes that "[i]n pursuing traditional or test case trials, the judge may conduct a unitary trial, bifurcate liability and damages, or create other helpful trial structures."  Manual For Complex Litig. (Fourth) at 465, § 22.93 (2004) (footnote omitted).  *Cf. In re W. States Wholesale Nat. Gas Antitrust Litig.*, --- F. App'x ----, 2018 WL 3720027, at *2 (9th Cir. Aug. 6, 2018) (citing with approval the Manual for Complex Litigation (Fourth)).

[5] *See also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 356 (3d Cir. 1999) (noting without disapproval that asbestos products trial with a single plaintiff "proceeded in a reverse bifurcated format" with "damages . . . considered in Phase I and liability in Phase II"); *Kirk*, 61 F.3d at 152 (same).

- 5 -

The Tenth Circuit disagreed, holding that while bifurcation would be "improper if the issues [were] not separable," the phase one issues of damages and causation and the phase two issues of liability and punitive damages were "clearly separable." *Id.* The court explained:

> The first phase considers only whether the plaintiff has a disease that was caused by asbestos, and what damages the plaintiff suffered as a result. The evidence therefore concentrates on the plaintiff's health history, the extent of his exposure to asbestos, the possible causes of his illness, and the losses he has suffered from his illness. The second phase, on the other hand, concentrates on what warnings the defendants should have given in light of the "state of the art" and whether the products to which the plaintiff was exposed were the defendants'. Punitive damages are also decided in the second phase, because they also focus on the defendants' conduct.

*Id.* at 965. The Tenth Circuit also held that reverse bifurcation was efficient and economical because at the time of the district court's bifurcation order, "[plaintiffs'] claim was one of more than 600 asbestos cases on" the Northern District of Oklahoma's docket. Under those circumstances, reverse bifurcation would "obviously save[] time and money by eliminating some cases after the first phase, thus avoiding trial of the defendants' liability." *Id.* at 964.[6]

### 1. Reverse Bifurcation Avoids Undue Prejudice And Jury Confusion.

As in *Angelo*, and consistent with Rule 42, Monsanto's proposal would involve separating the trial into two phases involving distinct issues. Phase One would focus on the scientific evidence of causation, and involve testimony from witnesses who have assessed the epidemiological and other studies, as well as the plaintiff's medical history. Phase Two, by contrast, could involve the regulatory history, Monsanto's responses to that history, the reasonableness of its decisions to market and sell a product with universal regulatory approval, and any other issues relevant to damages.

This approach would have the benefit of avoiding undue prejudice to the parties and juror confusion on the issue of causation. As noted above, reverse bifurcation would ensure

---

[6] The administrative decision of the Pennsylvania state court in Philadelphia County to stop the practice of reverse bifurcation absent consent of the parties does not change the rationale for or acceptance of the practice by federal appellate courts under Rule 42. *Cf.* Gen. Court Regulation No. 2012-01 at 2, *In re: Mass Tort & Asbestos Programs* (C.P. Phila. Cty. Feb. 15, 2012), *available at* https://www.courts.phila.gov/pdf/regs/2012/cpajgcr2012-01.pdf.

that the jury focuses on the central evidence regarding causation, such as the epidemiological and other studies and the particular plaintiff's medical history.  At the same time, bifurcation would avoid the risk that the jury becomes distracted or misled by extraneous evidence of corporate conduct or by the complex regulatory record.  The jury should conduct its own assessment of the key causation evidence without the risk of confusion from various third-party evaluations of that evidence (especially because regulators and IARC apply different statutory or other criteria in their evaluations), or of distraction by arguments regarding the reliability and credibility of IARC or the EPA and other worldwide regulatory agencies.

Reverse bifurcation also makes good sense in light of Plaintiff's counsel's statements that he intends to focus on, and improperly bolster, the IARC classification of glyphosate as central to their "narrative" in the causation case:

> "'Roundup has been on the market for 40 years.  It has a demonstrated record of safety.'  And there's so much untruth about that that we have to unpack.  We will do that with evidence, but a lot of it involves IARC because what IARC did is it's the change in the narrative."

Dec. 5, 2018 CMC Hr'g Tr. at 59:6-10; *see also id.* at 70:25-71:4 ("[F]or what it's worth, IARC in the realm of academics is like the Blue Blood of scientists, you know.  So it's, like, the fact that our guys have all been on panels and they were there, I mean, that's really an important part of the gravitas of their opinion.").  The Court has already made clear that "[a] 'hazard assessment,' as IARC and other public health bodies define that inquiry, is not what the jury needs to conduct when deciding whether glyphosate actually causes NHL in people at past or current exposure levels." PTO 45 at 12.  And while IARC and all other regulatory assessments and approvals may be relevant in the case, the Rule 403 prejudice concerns are significant on the issue of causation.  Allowing all of the regulatory evidence to come in subject to a limiting instruction does not cure that prejudice—there is a clear risk, exemplified by the verdict in the *Johnson* case and apparently invited by the Plaintiffs here, that the jury would be tempted to simply adopt one side of the alleged debate between regulators and IARC rather than undertaking the necessary job of independently assessing the scientific evidence to

- 7 -

determine whether the plaintiff has satisfied his or her legal burden of proving causation. Reverse bifurcation eliminates that risk and replaces it with a trial proceeding that properly focuses the jury's attention on the scientific evidence.

### 2. Reverse Bifurcation Promotes Judicial Economy.

Reverse bifurcation also encourages judicial efficiency, one of the bedrocks of Rule 42(b). If the jury finds in Monsanto's favor on causation, it "obviat[es] the need for a jury trial on" liability or punitive damages and saves time and money, "which properly serve[s] the goals of Rule 42(b)." *Allstate Ins. Co.*, 410 F App'x at 9. The Court itself has alluded to this possibility, observing that general causation is a "close . . . question," and that "plaintiffs appear to face a daunting challenge at the next phase" "which will involve an attempt by individual plaintiffs to present enough evidence to warrant a jury trial on whether glyphosate caused the NHL they developed." PTO 45 at 3. Bifurcation could avoid the presentation of days of company conduct and regulatory evidence through multiple witnesses that might prove unnecessary if the jury finds for Monsanto on either of the "close" questions of causation.

Nor would the proposed bifurcation prolong the overall length of the complete trial—as noted above, the issues of causation and compensatory damages are separate and distinct from Monsanto's alleged negligence and company conduct and would involve testimony from different witnesses. Even accepting Plaintiffs' position that Monsanto's response to IARC,[7] the U.S. EPA, and foreign regulators is relevant to liability and punitive damages,[8] that evidence would have no relevance to the proposed phase one issue of causation, and thus there is no risk of duplicative testimony across the two phases. *See, e.g.*, *Angelo*, 11 F.3d at 964-65 (holding that evidence relating to causation and damages, which would "concentrate[] on the

---

[7] *See, e.g.*, Dec. 5, 2018 CMC Hr'g Tr. 59:15-19 (Plaintiffs' counsel: "The simple fact is IARC was a game changer; right? It was the first time a group of independent scientists -- this is our viewpoint; you don't have to agree -- looked at it with no dog in the fight and made a decision, and that's why -- and the way they responded to it and the way they generated junk science."); *see also id.* at 60:22-25 ("And so the context and quality of the science and whether or not it is supported by an authority is part of the case, and I don't think looking at it in isolation can possibly work or be fair to us or them.").

[8] *See, e.g.*, *id.* at 58:1-5 ("Monsanto's conduct following the IARC monograph or even before it came out is very clear evidence of punitive intent. It shows a desire to manipulate scientists to orchestrate – I mean, it's our position. I'm sure they disagree. I'm just giving our pitch.").

plaintiff's health history, the extent of his exposure to [the product], the possible causes of his illness, and the losses he has suffered from his illness," is clearly separable from liability evidence, which would "concentrate[] on what warnings the defendants should have given," punitive damages, and other issues regarding the defendants' conduct).

### III.    Both Phases Should Be Tried To The Same Jury.

Monsanto's motion is premised on the proposal that if Plaintiffs prove the initial threshold requirement of causation, the Court could then conduct a second phase trial of liability and damages before the same jury.  This approach will avoid undue delay in resolving this case and will also allow for a more efficient presentation of the evidence in Phase 2 before an informed jury, should a second phase be necessary.  Further, as noted by the Manual of Complex Litigation (Fourth), "[g]enerally, when issues are severed for separate trials, they should be tried before the same jury unless they are entirely unrelated." *Id.* at 122, § 11.632. While the issue of causation is separable and distinct enough that it can be separated from liability and damages for purposes of reverse bifurcation under Rule 42(b), the issues are not "entirely unrelated," and so trying the second phase before a different jury could create the risk of a possible Seventh Amendment violation.

The Seventh Amendment does not permit a trial to be structured such that one jury might reconsider the factual determinations of a prior jury.  It guarantees the "right of a litigant to have only one jury pass on a common issue of fact." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318, 328 (5th Cir. 1978) (reversing certification of antitrust liability class premised on improperly bifurcated trial where damages would be decided by a second, separate jury). Moreover, the Seventh Amendment's Reexamination Clause and the Fifth Amendment's Due Process Clause prohibit courts from having a second jury decide a discrete issue unless that issue is "so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931).

While Monsanto is not seeking a separate trial limited to punitive damages, case law addressing a partial retrial limited to punitive damages is instructive on how the Seventh

- 9 -
MONSANTO'S MOTION TO REVERSE BIFURCATE GROUP 1 TRIALS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-5813-VC

Amendment applies to bifurcated trials.  In that context, the courts have focused on the question whether issues of liability and punitive damages are so interwoven as to preclude submission of those issues to separate juries.  *See, e.g.*, *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) (upholding a district court's decision upon reversal of a punitive damages award to retry the entire case, including both liability and punitive damages, because "a punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case"), *cert. denied*, 504 U.S. 910 (1992).[9]  The Ninth Circuit, while declining to adopt a bright-line rule, has likewise held that when determining if damages could "be tried separately, by separate juries" after a first jury tried liability, "the issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issues may be had without injustice."  *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 304, 306 (9th Cir. 1961), *cert. denied*, 366 U.S. 924 (1961).[10]

As set forth above, the reverse bifurcation proposed here does not present the exact same concerns because the evidence relevant to causation and compensatory damages is in fact separate from the evidence relevant to liability and punitive damages.  Nonetheless, because the issues of causation and liability are not "entirely unrelated," Monsanto believes the proper course is to try both phase 1 causation and phase 2 liability/damages, if necessary,

---

[9] *See, e.g.*, *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 966-67 (10th Cir. 2009) (reaffirming broad view of the Seventh Amendment's protections and refusing to remand case for a damages-only retrial by a second jury); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1177-78 (10th Cir. 1981) (en banc) (holding that, if the plaintiff refused to accept remittitur of a punitive damages award, "there should be a new trial on all issues since we feel that a new trial on less than all the issues could not be had without confusion and uncertainty, which would amount to a denial of a fair trial"), *cert. denied*, 464 U.S. 824 (1983).

[10] The Ninth Circuit further explained that "[t]he question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial."  *United Air Lines*, 286 F.2d at 306; *cf. Sears v. S. Pac. Co.*, 313 F.2d 498, 503 (9th Cir. 1963) (determining that, "because the evidence [on liability and damages] would largely be the same, a jury should be permitted to consider and apply it, with the aid of the court's instructions, to all issues rather than the isolated one of damages"); *White v. Ford Motor Co.*, 500 F.3d 963, 974 (9th Cir. 2007) ("In a typical case, the same jury would award both compensatory and punitive damages.  Here, because of this case's unique procedural history, the jury empaneled to award punitive damages was unfamiliar with the original jury's verdict and the amount of compensatory damages it awarded.  Without knowing the amount of those damages, the punitive damages jury could not have come to a reasoned conclusion as to the amount of additional damages necessary to deter Ford from similar conduct in the future.").

1  before the same jury.  This approach will avoid any potential constitutional issues and will also
2  allow for a more efficient presentation of the evidence.

## CONCLUSION

4      For the reasons set forth above, the Court should grant Monsanto's Motion to Reverse
5  Bifurcate the Group 1 trials of the *Hardeman*, *Stevick*, and *Gebeyehou* cases.

|   |   |   |
|---|---|---|
| 1 | DATED: December 10, 2018 | Respectfully submitted, |
| 2 |   | /s/ Brian L. Stekloff |

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Andrew Solow (*pro hac vice*)
(Andrew.Solow@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
250 West 55th Street
New York, NY 10019
Tel: 212-836-7740
Fax: 212-836-6776

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of December 2018, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff