# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PATRICIA A. STAFFORD,            )
                                 )
                    Plaintiff,   )
                                 )
v.                               )        No. CIV-02-1118-L
                                 )
WYETH CORPORATION,               )
                                 )
                    Defendant.   )

# O R D E R

This matter is before the court on Defendant Wyeth's Motion for Reverse

Bifurcation of Trial.

> A court may order a separate trial of any claim or separate
> issue "in furtherance of convenience or to avoid prejudice,
> or when separate trials will be conducive to expedition and
> economy." Bifurcation is not an abuse of discretion if such
> interests favor separation of issues and the issues are
> clearly separable.      Regardless of efficiency and
> separability, however, bifurcation is an abuse of discretion
> if it is unfair or prejudicial to a party.

Angelo v. Armstrong World Industries, Inc., 11 F.3d 957, 964 (10th Cir. 1993)

(citations omitted).  Pursuant to this standard, the court has carefully reviewed the

parties' briefs and finds reverse bifurcation is warranted in this action.  Although

plaintiff claims the issues of causation and damages are so interwoven with the

issue of liability that they cannot be tried separately, she offers no concrete

examples of the interwoven nature of the evidence.  It is not enough that the same

witnesses may testify in both phases, because the issues and their testimony differ.

See Angelo, 11 F.3d at 965.  Likewise, plaintiff has not demonstrated any prejudice she would incur as result of the reverse bifurcation process.  Finally, the court finds reverse bifurcation will clearly promote judicial economy and ensure compliance with the National Class Action Settlement Agreement.

Defendant Wyeth's Motion for Reverse Bifurcation (Doc. No. 54) is therefore GRANTED.  Trial of this matter will be conducted in two phases.  In the first phase, the following issues will be tried to verdict: (1) whether plaintiff's aortic heart valve has been injured; (2) whether that injury was caused in fact by defendant's medicine; and (3) the amount of damages that will compensate plaintiff for that injury.  If a verdict is rendered for plaintiff on each of these issues, the same jury will then consider the issue of liability on the claims asserted by plaintiff, including whether defendant's conduct or product defect was the direct cause of the injury found by the jury in phase one.

It is so ordered this 13th day of January, 2006.

TIM LEONARD
United States District Judge

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Courts
Southern District of Texas
ENTERED

MAY 2 7 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| JUDITH B. BRISTLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-02-4264 |
| | § | |
| WYETH f/k/a AMERICAN HOME | § | |
| PRODUCTS CORPORATION; WYETH | § | |
| PHARMACEUTICALS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Upon remand of this case to this Court from the MDL, and understanding the National Class Action Settlement Agreement and its effect on this intermediate opt-out case, the Court finds that the trial of this matter should be conducted in two phases.  In the first phase, the following issues will be tried to verdict:  1) whether the Plaintiff's aortic heart valve has been injured; 2) if so, whether that injury was caused in fact by Defendant's medication; and 3) if so, the amount of compensatory damages to which Plaintiff is entitled.  If a verdict is rendered for Plaintiff on each of those issues, then in the second phase the same jury will consider the issue of liability on the causes of action asserted, including the issue of whether Defendant's conduct and/or product defect was the proximate and/or producing cause of the injuries found in the first phase.

Signed this 27h day of May, 2005.

_____
Lee H. Rosenthal
United States District Judge



E-SERVED
11/19/04
03:45 PM ET

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT SE D                    HON. DANIEL SOLIS PRATT, JUDGE

LARRY R. HINES,                         )
                                        )
                    PLAINTIFF,          )
                                        )
        VS.                             )   NO. DD001645
                                        )
AMERICAN HOME PRODUCTS CORPORATION,     )
                                        )
                    DEFENDANT.          )
────────────────────────────────────────)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, OCTOBER 12, 2004

WEDNESDAY, OCTOBER 13, 2004

APPEARANCES:

FOR PLAINTIFFS:          BARON & BUDD, P.C.
                         BY:  ELLEN A. PRESBY, ESQ.
                              AMY M. CARTER, ESQ.

                         NEMEROFF LAW FIRM
                         BY:  RICK NEMEROFF, ESQ.

**COPY**                 MARY ALEXANDER & ASSOCIATES,
                         P.C.
                         BY:  MARY E. ALEXANDER, ESQ.

                         HACKARD & HOLT
                         BY:  PETER T. HOLT, ESQ.
                              DAVID E. SMITH, ESQ.

            (APPEARANCES CONTINUED ON NEXT PAGE.)

                         SHARON M. LOPEZ, CSR #5154
                         OFFICIAL REPORTER

2

1   AND GEORGIA AND ELSEWHERE AND WILL BE TRYING THIS CASE WITH
2   US.  WE DIDN'T FILE A FORMAL PRO HAC VICE MOTION BECAUSE
3   IT'S COVERED BY YOUR GENERAL ORDER NO. 1, BUT I WOULD ASK
4   YOU TO ADMIT MR. BLEAKLEY FOR PURPOSES OF THIS CASE.
5       THE COURT:  SURE.  THAT'S FINE.  I WOULD BE HAPPY TO.
6       MR. BLEAKLEY:  THANK YOU, YOUR HONOR.
7       MS. CUMMINGS:  JENNIFER CUMMINGS FOR WYETH.
8       MR. LE BERTHON:  GOOD MORNING, YOUR HONOR.  ADAM LE
9   BERTHON FOR WYETH.
10      MR. STANLEY:  DAVID STANLEY FOR WYETH.
11      MR. HOLT:  GOOD MORNING, YOUR HONOR.  PETER HOLT FOR
12  PLAINTIFFS.
13      THE COURT:  OKAY.  OBVIOUSLY, I HAVE BEEN THROUGH
14  EVERYTHING, AND UNLESS ANYBODY FEELINGS DIFFERENTLY, I THINK
15  THE MOST OBVIOUS PLACE TO START IS ON THE MOTION FOR REVERSE
16  BIFURCATION UNLESS FOR SOME REASON YOU WANT TO HEAR ALL THE
17  DECISIONS ON EVERYTHING AND THEN GET TO THAT, BUT I THINK
18  THAT WOULD BE KIND OF BACKWARDS.
19      MR. KIESEL:  ACTUALLY, YESTERDAY WHEN MR. SPOONER AND I
20  MET, WE HAD DISCUSSED TAKING UP THE REVERSE BIFURCATION
21  MOTION FIRST, AND WHAT WE ACTUALLY FELT, ALTHOUGH I PROPOSED
22  DOING IT FIRST, WAS THAT THE COURT TAKE UP THE SECONDARY
23  ISSUE, WHICH TO WYETH'S MIND HAS SOME BEARING ON THAT ISSUE,
24  AND THAT RELATES TO THE PPH EVIDENCE.  SO DEPENDING UPON THE
25  COURT'S --
26      THE COURT:  SO WHAT ARE YOU SAYING?  TAKE UP THE REVERSE
27  BIFURCATION AND THEN THE PPH EVIDENCE?
28      MR. KIESEL:  ACTUALLY, IT WOULD BE THE REVERSE.  IF THE

E-SERVED
11/19/04
03:45 PM ET
NINE 240 Dist Ct/4

3

1   COURT WANTS TO GIVE US ITS TENTATIVE ON THE REVERSE

2   BIFURCATION, WE CAN JUST ARGUE OR NOT ARGUE AND THEN DEAL

3   WITH THE ISSUE OF PPH AS THE SECOND ISSUE OR REVERSE IT AND

4   HAVE IT BE THE FIRST ISSUE THE COURT DEALS WITH AND THEN

5   HAVE THE MOTION TO BIFURCATE AT SOME POINT AFTER THAT.

6       MR. SPOONER:  I MEAN THAT WAS OUR FEELING AS WELL, YOUR

7   HONOR.  THESE ISSUES ARE, OBVIOUSLY, INTERCONNECTED, AND

8   WHETHER YOU FORMERLY TAKE UP BIFURCATION FIRST AND THE PPH

9   ISSUE SECOND DOESN'T SO MUCH MATTER, BUT OUR PREFERENCE

10  WOULD BE THAT THEY BE CONSIDERED TOGETHER.

11      THE COURT:  WELL, THIS IS OUR FIRST DISAGREEMENT.  I

12  JUST THINK IT MAKES MORE SENSE TO DO THE REVERSE BIFURCATION

13  FIRST, AND IT MAKES IT A LOT EASIER ON ME.

14      MR. KIESEL:  FINE.  SO YOU GET TO CONTROL THAT ONE, YOUR

15  HONOR.

16      THE COURT:  WHICH I'M SEEKING TO DO AT THIS POINT IN

17  TIME.

18          ALL RIGHT.  ON THE REVERSE BIFURCATION, DOES

19  ANYBODY ELSE WANT TO BE FURTHER HEARD?  AND FEEL FREE IF YOU

20  WANT TO.

21      MR. SPOONER:  WE STATED ALL OUR ARGUMENTS LAST TIME,

22  YOUR HONOR, AND, UNLESS YOU HAVE QUESTIONS, WE WILL REST ON

23  THE PAPERS AND THE ARGUMENT WE MADE BEFORE.

24      MR. KIESEL:  I THINK THE ONLY THING I WILL ADD, YOUR

25  HONOR, BECAUSE I DON'T KNOW IF THIS WAS BROUGHT TO YOUR

26  ATTENTION, IS THAT LAST WEEK THERE WAS A VERDICT IN

27  PENNSYLVANIA ON A REVERSE BIFURCATION WHERE THE DEFENDANTS

28  ARE IN FACT GOING NOW, AFTER THERE'S BEEN A VERDICT, TO THE

E-SERVED
11/19/04
03:45 PM ET
N.Y. No. 240 Dist DWB

4

1  LIABILITY PHASE, AND SO THEY'RE ACTUALLY -- BEFORE THERE HAD

2  BEEN A REVERSE BIFURCATION AND THAT APPARENTLY ENDED THE

3  TRIALS.  NOW, THERE WAS A SIGNIFICANT PLAINTIFF'S VERDICT.

4  THEY ARE GOING TO BE GOING TO THE SECOND ROUND, THE

5  LIABILITY ROUND.

6      THE COURT:  I READ OF ONE THAT I THOUGHT HAD SETTLED.

7  IS THIS A DIFFERENT ONE?

8      MR. KIESEL:  YES, YOUR HONOR.  IT HAPPENED LAST WEEK.

9  THERE WAS A $2.1 MILLION VERDICT THAT MR. ROSEMOND'S FIRM

10 GOT IN PENNSYLVANIA, AND THE DEFENDANTS ARE NOW PROCEEDING

11 TO THE SECOND ROUND, WHICH IS STARTING OCTOBER 25TH FOR

12 LIABILITY.

13     THE COURT:  OKAY.  I THINK THAT ACTUALLY HELPS ME WITH

14 THE DECISION.  I WANT YOU TO KNOW I THOUGHT ABOUT -- I

15 HAVEN'T THOUGHT ABOUT REVERSE BIFURCATION.  THAT WAS KIND OF

16 NEW TO ME, BUT I HAD THOUGHT ABOUT HOW I WAS GOING TO DEAL

17 WITH ALL THIS EVIDENCE PREVIOUSLY, AND IT IS A 352 SITUATION

18 AND IT'S NOT EASY, BUT WHAT MADE IT EASIER WAS JUST KNOWING

19 THAT AT THIS POINT IN TIME WE DON'T HAVE PUNITIVE DAMAGES.

20 I WAS CONCERNED -- AND I AM MIXING THE TWO MOTIONS AT THIS

21 TIME, BUT I WANT YOU TO KNOW I WAS CONCERNED ABOUT THE

22 INFLAMMATORY NATURE OF THAT EVIDENCE.  WHEN WE WERE IN PHASE

23 I, IT WAS A DIFFERENT SITUATION.  PUNITIVE DAMAGES WERE

24 THERE, AND AFTER GOING THROUGH EVERYTHING I FELT THAT IT WAS

25 RELEVANT, AND THE RELEVANCY, YOU KNOW, CLEARLY OUTWEIGHED

26 EVERYTHING ELSE AT THAT POINT IN TIME.

27     I HAVE COME TO THE CONCLUSION THAT I THINK, AND

28 AFTER READING EVERYTHING, I FEEL PRETTY STRONGLY AT THIS



5

1  POINT IN TIME THAT REVERSE BIFURCATION IS THE WAY TO HANDLE
2  IT, AND I WANT YOU TO HEAR WHY.  I THINK I OWE IT TO
3  EVERYBODY TO HEAR WHY I CAME TO THAT CONCLUSION.  AND I
4  DIDN'T COME TO THE CONCLUSION UNTIL I FINISHED ALL THE
5  MOTIONS IN LIMINE, BUT WHEN YOU GO THROUGH THE MOTIONS IN
6  LIMINE AND SEE ALL THE EVIDENCE, AND IT'S DIFFICULT
7  EVIDENCE, AND IT'S DIFFICULT EVIDENCE JUST TO SAY NO, I'M
8  GOING TO KEEP IT OUT ON A 352 BASIS, BECAUSE IT IS VERY
9  RELEVANT EVIDENCE, AND I THOUGHT -- I MEAN THERE ARE ANY
10 NUMBER OF MOTIONS THAT I THOUGHT I AM GOING TO BE WALKING A
11 TIGHTROPE THE WHOLE TIME TRYING TO ALLOW A CERTAIN AMOUNT IN
12 THAT I THINK IS RELEVANT AND TRYING TO KEEP OUT WHAT I FEEL
13 MIGHT BE INFLAMMATORY FROM MY POINT OF VIEW, AND IT CLEARLY
14 WAS, AND I JUST DID NOT FEEL THAT I COULD MANAGE THE
15 ATTORNEYS BECAUSE I THINK TO THE ATTORNEYS -- WELL, I KNOW
16 IT'S A VERY, VERY, VERY IMPORTANT CASE AND IT'S AN IMPORTANT
17 DECISION AND I KNOW WHAT THESE CASES MEAN.
18      SO WHEN I WENT THROUGH EVERYTHING, I FELT THE
19 BIFURCATION, ESPECIALLY IN LIGHT OF EVERYTHING THAT I READ
20 NATIONWIDE, WAS THE BEST WAY TO HANDLE IT.  AND, IF THERE
21 WAS A $2.1 MILLION VERDICT LAST WEEK, THEN I AM EVEN MORE
22 COMFORTABLE WITH IT AT THIS POINT IN TIME.
23      I THINK IT'S A BETTER WAY FOR ME TO HANDLE
24 EVERYTHING.  IT'S A BETTER WAY FOR ME TO KEEP EVERYTHING
25 UNDER CONTROL.  ANY NUMBER OF REASONS THAT I COULD GO INTO.
26 THE TRIALS WILL BE CLEANER.  I'M NOT SO CONCERNED ABOUT THE
27 TRIALS BEING SHORTER.  I HONESTLY FEEL --- AND I HAVE NOTHING
28 TO BACK THIS UP.  IT'S JUST A FEELING.  I HONESTLY FEEL

E-SERVED
11/19/04
03:45 PM ET
JAMS No. 240 Dist Ct(?)

6

1  THAT, IF WE TRY FOUR OR FIVE OR TEN -- I AM GUESSING
2  PROBABLY TEN -- GOOD CASES AND GET GOOD VERDICTS, WE ARE
3  GOING TO BE ABLE TO RESOLVE THESE CASES, AND THAT'S MY HOPE.
4         IF I DON'T DO A BIFURCATION PROCESS AND I HAVE TO
5  FIGHT MY WAY THROUGH THE WHOLE CASE, I DON'T THINK THE
6  VERDICTS WILL BE GOOD, AND WHAT I'M TALKING ABOUT -- I AM
7  LOOKING AT BOTH SIDES NOW -- AND THE PERCEPTION THAT'S
8  GIVEN, BECAUSE I THINK THE PERCEPTION IS VERY, VERY
9  IMPORTANT, AND THAT'S WHAT I'M STRUGGLING FOR.
10        LET ME MAKE SURE I HAVE SAID EVERYTHING THAT I
11 WANTED TO.  I THINK THAT PRETTY MUCH COVERS EVERYTHING.  I
12 WANT EVERYBODY TO KNOW THE REASON I AM MAKING THIS DECISION,
13 THE BIG PART OF THE REASON IS I FEEL IT'S EASIER TO CONTROL,
14 AND I THINK IT GIVES ME THE OPPORTUNITY TO HAVE BETTER
15 VERDICTS.
16        MR. KIESEL:  OKAY.  SO LET ME RESPOND AND ASK YOU TO
17 KEEP REALLY AN OPEN MIND WHEN I GO ABOUT THIS BECAUSE I
18 THINK THAT CONCEPTUALLY REVERSE BIFURCATION WILL NOT PRODUCE
19 THE RESULTS THAT WE WANT IN TERMS OF A VERDICT THAT GOES
20 FROM A TO Z AND THAT THE JURY IS GOING TO EVALUATE ALL OF
21 THE EVIDENCE IN AWARDING THEIR DAMAGES AND DOING A
22 TRADITIONAL TRIAL, AND THIS REVERSE BIFURCATION CONCEPT
23 WHERE THE JURY DOESN'T HAVE THE CONTEXT, FOR EXAMPLE, OF
24 NOTICE, WHICH GOES TO THE FAILURE TO WARN, WHICH IS AN
25 IMPORTANT COMPONENT OF WHETHER OR NOT THE PLAINTIFF WOULD
26 HAVE EVEN TAKEN THE DRUG HAD THE WARNINGS BEEN MADE AND
27 NOTICE BEEN GIVEN, AND THAT'S CRITICAL TO THE FINDING OF
28 CAUSATION THAT WILL BE A PART OF OUR CASE IN CHIEF.  AND

E-SERVED
11/19/04
03:45 PM ET
No. 240D of DWB

1  IT'S VERY DIFFICULT TO PARSE OUT WHAT'S CAUSATION AND

2  DAMAGES AND WHAT'S LIABILITY WHEN YOU'RE DEALING WITH STRICT

3  LIABILITY, FAILURE TO WARN, WHAT THE NOTICES WERE, WHEN THEY

4  HAD THE NOTICE, AND WHAT THIS PLAINTIFF WOULD HAVE DONE HAD

5  NOTICE BEEN PROPERLY GIVEN.  SO FOR THAT REASON I THINK IT

6  BECOMES VERY PROBLEMATIC FROM AN EVIDENTIARY STANDPOINT TO

7  BIFURCATE, BUT I WANT TO ADDRESS THE BIGGER PICTURE.

8      THE COURT:  PLEASE, AT LEAST FOR PURPOSES OF YOUR

9  ARGUMENT, ASSUME THAT I THOUGHT OF ALL THESE THINGS IN

10  ARRIVING AT THE DECISION.

11      MR. KIESEL:  FAIR ENOUGH.

12      THE COURT:  AND I MEAN THAT SINCERELY.

13      MR. KIESEL:  I KNOW YOU DO.

14      THE COURT:  I MEAN I WEIGHED THIS, AND THE LAST WEEK

15  I'VE READ AND REREAD EVERYTHING AGAIN AND REWEIGHED IT AND

16  TRIED TO ARRIVE AT THE FAIREST VERDICT OR THE FAIREST

17  DECISION WITH THE UNDERSTANDING THAT I COULD ARRIVE AT AN

18  AREA WHERE WE ARE GOING TO HAVE THE BIGGEST IMPACT ON THESE

19  CASES.  SO KEEP THAT IN MIND.

20          AND, BELIEVE ME, I APPRECIATE WHAT YOU ARE TALKING

21  ABOUT BECAUSE I WENT THROUGH IT IN MY MIND.  IF I'M A

22  PLAINTIFF, WHAT AM I GOING TO HAVE TO DO?  AND IT'S SO

23  FOREIGN TO ALL OF US.  I HAVE NEVER DONE THIS BEFORE EITHER.

24      MR. KIESEL:  SO THE REASON WHY YOU WANT TO DO IT -- THE

25  REASON WHY YOU WANT TO DO IT IS BECAUSE YOU WANT TO PREVENT

26  HAVING TO BE A REFEREE IN SOME MEASURE BETWEEN WHAT EVIDENCE

27  IS GOING TO BE ADMITTED --

28

8

1    THE COURT:   THAT IS ONE OF THE REASONS.

2    MR. KIESEL:   OKAY.   RECOGNIZING THAT FROM THE COURT'S

3    PERSPECTIVE EACH SIDE IS GOING TO TRY TO PUSH THE ENVELOPE

4    BECAUSE YOU KNOW WHAT WE ARE TRYING TO DO AND YOU KNOW WHAT

5    THEY ARE TRYING TO DO --

6    THE COURT:   THAT MAY HAVE OCCURRED TO ME AS WELL.

7    MR. KIESEL:   RIGHT.   AND I MUST TELL YOU THAT YESTERDAY

8    WE SPENT A GOOD DEAL OF TIME EVALUATING THIS VERY ISSUE, AND

9    THE APPROACH THAT WE CAME TO, YOUR HONOR, WAS TO REALLY --

10   THIS WAS WHAT WE WERE GOING TO SUGGEST TO YOU.   IRRESPECTIVE

11   OF THE REVERSE BIFURCATION ISSUE THAT YOU ARE NOW RAISING, I

12   THINK IT SOLVES THE PROBLEM.   HERE'S WHAT IT IS.   WE WERE

13   GOING TO PROPOSE THAT THE COURT CAREFULLY LIMIT THE EVIDENCE

14   AS IT RELATES TO, FOR EXAMPLE, PPH WHERE THE DOCUMENTS THAT

15   WE WOULD SEEK TO BE ADMITTED YOU'D LOOK AT, WHERE THE

16   TESTIMONY WE WOULD SEEK TO HAVE ADMITTED YOU WOULD HAVE IN

17   ADVANCE.   THE COURT WOULD SPECIFICALLY SCRIPT AND WE WOULD

18   NOT GO BEYOND THE BOUNDARY OF WHERE THE COURT SET THE LINE,

19   AND THAT WAY YOU NEEDN'T BE A REFEREE.   WE ARE NOT TRYING TO

20   INFLAME THE JURY OR CREATE A PUNITIVE DAMAGES ENVIRONMENT.

21   WE WERE GOING TO PROPOSE THAT YOU DO AN INSTRUCTION AT THE

22   BEGINNING OF THE TRIAL THAT THERE WILL BE NO PUNITIVE

23   DAMAGES.   THERE WOULD BE AN INSTRUCTION AT THE END OF THE

24   TRIAL THAT THERE ARE TO BE NO PUNITIVE DAMAGES.   THAT WE

25   CAREFULLY HAVE THE COURT AND RECOGNIZE THAT WE AS GOOD

26   COUNSEL WILL FOLLOW CAREFULLY THE COURT'S GUIDELINES ON NOT

27   MAKING YOU BE THE REFEREE BUT DOING THESE HEARINGS PRETRIAL,

28   402.   YOU WILL KNOW PRECISELY WHAT IT IS THE COURT ITSELF

E SERVED
11/19/04
03:45 PM ET
No. 240 Dist Ct.

9

1   HAS ALLOWED US TO INTRODUCE, IF ANYTHING, BUT NOT TRY TO GO

2   TO A CONTORTED PROCESS OF TRIAL, WHICH REALLY IS A VERY

3   DIFFICULT TASK TO TRY TO PARSE OUT THE EVIDENCE MERELY FOR

4   THE SAKE OF THE COURT, AND IT'S AN IMPORTANT CONSIDERATION,

5   NOT ALLOWING US TO INTRODUCE EVIDENCE THAT WOULD PREJUDICE

6   THE DEFENDANTS AND VICE VERSA.

7          I THINK THAT WE CAN DO THAT, YOUR HONOR, BY REALLY

8   WORKING WITH THE COURT TO CAREFULLY MEASURE THE EVIDENCE AND

9   THE TESTIMONY THAT WOULD BE ADMITTED ON ANY AREAS OF DISPUTE

10  RATHER THAN -- I MEAN, AND YOU HAVE THOUGHT ABOUT THIS, BUT

11  FROM OUR STANDPOINT IT'S DEVASTATING.  WHAT DOES THE JURY DO

12  WHEN --

13      THE COURT:  I WISH YOU WOULDN'T USE THAT WORD.

14      MR. KIESEL:  "DEVASTATING"?

15      THE COURT:  YES.

16      MR. KIESEL:  OKAY.  IT'S DIFFICULT FOR THE JURY WHERE

17  THE JURY IS IN THE POSITION OF SAYING, WELL, I'M GIVING YOU

18  TWO TO THREE WEEKS OF MY TIME, BUT IT'S GOING TO BE A TWO-

19  PHASE TRIAL -- YOU KNOW ALL THAT.

20      THE COURT:  I HAVE DONE ALL THAT BEFORE.  THAT CAN BE

21  TAKEN CARE OF.

22      MR. KIESEL:  SO IF THE COURT'S PRIMARY CONCERN IS TO

23  LIMIT THE SCOPE OF THE EVIDENCE THAT WOULD COME IN ON AREAS

24  WHERE THE COURT FEELS THAT THERE WOULD BE A DISPUTE, WE

25  WOULD PROPOSE, RATHER THAN DOING A REVERSE BIFURCATION,

26  WHICH IS NOT AN EFFECTIVE USE OF TIME -- THERE'S A LOT OF

27  REASONS.  YOU KNOW THEM ALL.  BUT I THINK THAT WE CAN SOLVE

28  THAT PROBLEM BY REALLY CAREFULLY WORKING WITH THE COURT IN A

E-SERVED
11/19/04
03:45 PM ET
JNL No. 240 Dist DUI

10

1   COOPERATIVE WAY TO HAVE THE TESTIMONY OR EVIDENCE ADMITTED.
2   THAT SOLVES THE COURT'S CONCERN ABOUT ANY EVIDENTIARY
3   ISSUES.

4           THERE MAY BE SOME OTHER FACTORS THE COURT IS
5   CONSIDERING IN TERMS OF THE TIME OF THE TRIALS.
6           THE COURT:   IT WAS A COMBINATION OF THINGS.   I DID NOT
7   ARRIVE AT THIS DECISION LIGHTLY.   I DIDN'T START OFF WITH
8   THIS DECISION IN MIND WHEN I STARTED READING EVERYTHING.   I
9   DIDN'T START OFF THAT WAY, AND I DIDN'T MAKE UP MY MIND
10  UNTIL I WENT THROUGH ALL THE MOTIONS IN LIMINE.

11          YOU KNOW, I HATE TO USE THE WORD, BUT IT'S THE
12  TOTALITY OF THE CIRCUMSTANCES.   WHEN I LOOKED AT
13  EVERYTHING -- YOU KNOW, PART OF MY JOB IS TO TRY TO GET THE
14  CLEANEST VERDICTS THAT WE CAN IN THIS SITUATION; VERDICTS
15  THAT ARE GOING TO BE EFFECTIVE.   I HAVE MENTIONED IT BEFORE,
16  AND I WILL MENTION IT AGAIN.   I AM NOT TRYING THREE OR FOUR
17  THOUSAND CASES OR WHATEVER WE HAVE.   THAT'S NOT MY GOAL
18  HERE.   MY GOAL IS TO GET SOME REPRESENTATIVE VERDICTS, THE
19  BEST POSSIBLE VERDICTS THAT WE CAN GET WITH THE BEST
20  POSSIBLE MESSAGE THAT IS SENT, WHATEVER IT MIGHT BE.

21          I WENT THROUGH EVERYTHING.   I HAVE WEIGHED
22  EVERYTHING.   I KNEW EXACTLY WHAT I WAS GOING TO CONFRONT,
23  BUT I TRIED TO MAKE THE FAIREST DECISION THAT I COULD BASED
24  ON THE EVIDENCE THAT WAS BEFORE ME.   I DON'T KNOW HOW ELSE
25  TO SAY IT.   I WENT THROUGH EVERYTHING.   I LOOKED AT
26  EVERYTHING.   I WENT BACK AND FORTH ON IT, BUT I WILL TELL
27  YOU IT WASN'T SO MUCH -- I MEAN THE PART ABOUT BEING A
28  REFEREE IS IMPORTANT BECAUSE, YOU KNOW, I DON'T WANT TO HAVE

E-SERVED
11/19/04
3:45 PM ET
MDL No. 240 Defendant

11

1    A PITCHED BATTLE THROUGH THE WHOLE TRIAL, BUT THE SINGLE
2    FACTOR THAT CHANGED MY MIND WAS, IF I'M LOOKING AT THESE
3    CASES FROM ACROSS THE COUNTRY, WHAT KIND OF VERDICTS DO THEY
4    HAVE?  WHAT KIND OF EVIDENCE WAS PRESENTED?
5           AND I READ WHAT JUDGE BARTLE WROTE, AND IT WAS VERY
6    PERSUASIVE.  AND I READ, I THINK IT WAS, THE THIRD CIRCUIT.
7    I READ THAT OPINION AS WELL.  I READ THOSE SEVERAL TIMES
8    BECAUSE THEIR VIEW OF IT IS A LITTLE LARGER THAN MY VIEW OF
9    IT, AND I WANTED TO HAVE THAT VIEW WHEN I WAS MAKING THIS
10   DECISION.  IF I WERE TRYING ONE OR TWO CASES --- I WILL TELL
11   YOU RIGHT NOW, IF I WERE TRYING ONE OR TWO CASES AND THAT
12   WAS IT, I WOULD BE DOING IT DIFFERENTLY, BUT THAT'S NOT WHY
13   I ARRIVED AT THAT DECISION.  THE BIGGEST SINGLE FACTOR WAS
14   THE PERCEPTION IN TERMS OF THE VERDICTS.
15        MR. KIESEL:  SO TWO QUESTIONS.  ONE IS IS THERE ANYTHING
16   I MIGHT BE ABLE TO SAY OTHER THAN TO PRESERVE A RECORD WHICH
17   MIGHT ENCOURAGE YOU TO RECONSIDER THIS DECISION?
18        THE COURT:  NO.  AND I MEAN THAT SINCERELY IN THE NICEST
19   POSSIBLE WAY, AND I AM SERIOUS ABOUT IT.  IF YOU DON'T THINK
20   THAT I THOUGHT ABOUT THIS AROUND THE CLOCK FOR THE LAST
21   SEVEN OR EIGHT DAYS, JUST ASK MY WIFE.  I THOUGHT ABOUT IT
22   CONSTANTLY, AND I DIDN'T DECIDE THIS UNTIL ABOUT FOUR OR
23   FIVE DAYS AGO.  AND I HAVE A HABIT OF SLEEPING ON A DECISION
24   AND SEEING IF I CAN CHANGE MY OWN MIND, AND I DIDN'T.  IN
25   FACT, AS I GOT CLOSER TO IT, I FELT MORE COMFORTABLE WITH
26   IT, AND THE REASON I FEEL MORE COMFORTABLE IS THE MESSAGE
27   THAT IT SENDS.
28          I THINK THAT'S WHY I'M HERE.  I KNOW THAT'S WHY I'M

E-SERVED
11/19/04
03:45 PM ET
NO. 240 Dist Court

1  HERE.  AND I COMPARED IT TO THE LAST TIME -- I CAN'T

2  REMEMBER WHO'S CITING ME TO MYSELF.  I SAW THAT ON THE

3  HAROUTOUNIAN DECISION, AND I REMEMBER WHEN I WENT THROUGH

4  THAT DECISION THAT WAS A VERY DIFFICULT DECISION AT THE

5  TIME.  I DIDN'T KNOW THE IMPACT IT WOULD HAVE, BUT IT WAS A

6  TOUGH DECISION BECAUSE I WAS TRYING TO WALK A FINE LINE.

7  BUT WHAT FINALLY SWAYED ME THERE IS WE HAD PUNITIVES, AND I

8  WAS REAL CONCERNED WITH THE 352 SITUATION WHERE PUNITIVES

9  WERE PRESENT.

10        AND I'M NOT SAYING THIS EVIDENCE ISN'T RELEVANT.

11  WE ALL KNOW IT'S RELEVANT.  IT'S A BALANCING TEST THAT I'M

12  DOING, AND IT'S A 352 AND THE PERCEPTION THAT WE ARE SENDING

13  NATIONWIDE, BECAUSE I WANT TO SETTLE THESE CASES.  THAT'S MY

14  GOAL IS TO SETTLE THESE CASES; NOT TO TRY THREE OR FOUR

15  THOUSAND CASES.  IT'S AS SIMPLE AS THAT.

16        AND DON'T THINK THAT I DIDN'T THINK WHAT IT MEANS

17  TO EVERYBODY ON BOTH SIDES.  I WENT THROUGH EVERYTHING.  YOU

18  CAN TELL.  YOU EDUCATE YOURSELF WHEN YOU GO THROUGH THE

19  MOTIONS IN LIMINE.  I AM JUST PRESERVING MYSELF NOW.  I WANT

20  YOU TO KNOW WHAT I WENT THROUGH.  I WENT THROUGH IT VERY,

21  VERY CAREFULLY; NOT THAT I CAN GO THROUGH IT AND STATE THEM

22  VERBATIM TO YOU.  I WENT THROUGH IT VERY, VERY CAREFULLY,

23  AND I CAN SEE WHAT BOTH SIDES ARE TRYING TO DO, AND I KNEW

24  THAT.  AND I THINK IT'S IMPORTANT FROM MY POINT OF VIEW --

25  I'M MANAGING THREE OR FOUR THOUSAND CASES.  I THINK IT'S

26  VERY IMPORTANT FROM MY POINT OF VIEW TO HAVE THE BEST

27  VERDICTS THAT I CAN POSSIBLY HAVE.

28        NOW, THAT DOESN'T MEAN THAT, IF WE GET TO A PHASE



13

1    II, THAT THIS EVIDENCE WON'T COME IN.  I THINK IT DOES COME

2    IN.  I THINK THERE'S A REAL GOOD CHANCE IT COMES IN IN A

3    PHASE II, AND THAT WAS PART OF THE REASON FOR MY DECISION.

4          I SEE MR. BRADFORD HOLDING HIS BREATH NOW, BUT, YOU

5    KNOW, I GAVE IT AS MUCH THOUGHT AS I CAN.  I DON'T KNOW WHAT

6    ELSE TO TELL YOU TO JUSTIFY MYSELF.  I GAVE IT AS MUCH

7    THOUGHT AS I COULD.  I FEEL COMFORTABLE WITH THE DECISION.

8    WHEN I TELL YOU I'M NOT GOING TO CHANGE MY MIND, AT LEAST

9    RIGHT NOW AS I SIT HERE I MEAN IT.  I FEEL GOOD WITH IT, AND

10   I WEIGHED EVERYTHING, AND I THINK IT'S THE BEST DECISION I

11   COULD HAVE MADE, AS MR. KERRY SAYS, WITH THE INFORMATION HE

12   HAD AT THE TIME.

13         MR. KIESEL:  MY ONLY FINAL REMARK IS THIS, YOUR HONOR.

14   THE WHOLE PURPOSE OF OUR EMBARKING ON THIS PROCESS THAT WE

15   HAVE SET OUT FOR OURSELVES FOR OVER A YEAR, SELECTING RANDOM

16   CASES, HAVING THOSE CASES SELECTED AND WINNOWED DOWN AND

17   THEN TRYING THOSE INDIVIDUAL CASES, WAS THE IDEA THAT BY

18   HAVING SOME INDIVIDUAL VERDICTS THAT THAT WOULD PROVIDE THE

19   BASIS FOR A RESOLUTION ON THE ENTIRE CALIFORNIA DOCKET.  THE

20   REVERSE BIFURCATION THAT HAS BEEN ONGOING IN SOME COURTS IN

21   PHILADELPHIA HAS NOT RESULTED, EVEN THOUGH THERE HAS BEEN

22   THAT REVERSE BIFURCATION, IN A RESOLUTION OF THOSE CASES.

23   THEY ARE JUST TEEING THEM UP AND TEEING THEM UP, AND SO MY

24   POINT BEING, YOUR HONOR --

25         THE COURT:  I UNDERSTAND THAT, AND I GAVE IT SOME

26   THOUGHT AS WELL BECAUSE I SAW THAT PATTERN AS WELL TO THIS

27   POINT.  ALL I CAN TELL YOU IS FROM MY POINT OF VIEW, AT

28   LEAST HISTORICALLY, CALIFORNIA HAS BEEN BELLWETHER.  I CAN'T

14

1  MAKE ANYBODY DO ANYTHING, BUT CALIFORNIA HAS BEEN BELL-
2  WETHER, AND I WANT TO HAVE THE BEST VERDICTS POSSIBLE.
3      IF THE COMPANY FOR WHATEVER REASON CHOOSES NOT TO
4  DO ANYTHING, I CAN'T MAKE THEM DO IT, BUT I CAN TELL YOU
5  THIS.  I AM GOING TO HAVE THE BEST TRIALS THAT I CAN HAVE --
6  THAT I CAN HUMANLY HAVE SOME INFLUENCE OVER THEM, AND THEN
7  AFTER THAT -- AND I WILL STATE THIS, AND I AM NOT GOING TO
8  CHANGE MY MIND.  I'M NOT TRYING 3,000 CASES.  IF WE HAVE
9  THAT PROBLEM, THEY WILL BE GOING OUT ALL OVER THE STATE.  I
10  WON'T BE DOING THEM FOR THE NEXT THREE YEARS.
11      MR. KIESEL:  WHICH IS WHY WE FELT THAT BY HAVING A
12  COUPLE OF TRIALS -- AND I THINK IT'S IMPORTANT AT LEAST IN
13  CALIFORNIA THAT WE GIVE THIS A SHOT BECAUSE THE COURT CAN
14  ALWAYS CHOOSE AN ALTERNATIVE PATH EITHER WAY, I SUPPOSE, AS
15  WE GET BEYOND THESE INITIAL --
16      THE COURT:  THE ARGUMENT GOES BOTH WAYS.
17      MR. KIESEL:  CORRECT.  BUT THAT WE GIVE THE INDIVIDUAL
18  CASE TRIAL AN OPPORTUNITY TO SEE WHAT IMPACT THAT DOES HAVE
19  IN THE REST OF THE COUNTRY AS WE TRY A COUPLE OF THESE CASES
20  IN A TRADITIONAL MANNER, AND, OBVIOUSLY, IN OUR VIEW WE
21  THINK THAT IS THE APPROPRIATE APPROACH.
22      IN LIGHT OF THE COURT'S RULING HERE, I THINK WHAT
23  MIGHT BE BENEFICIAL IS IF WE AS A PLAINTIFF COMMUNITY MIGHT
24  USE THE JURY ASSEMBLY ROOM.
25      THE COURT:  THAT'S FINE.  I THOUGHT THAT WOULD PROBABLY
26  BE A GOOD IDEA.  AND I DON'T KNOW, ONCE YOU DISCUSS IT, ON
27  THE REMAINING MOTIONS IN LIMINE, I DON'T KNOW HOW MANY OF
28  THOSE I HAVE TO GO THROUGH OR MAYBE YOU CAN TALK AND LET ME



1    HEAR WHAT YOU WANT ME TO DO ON THOSE AS WELL.  I'VE GOT
2    TENTATIVES ON EVERYTHING, BUT I THINK THIS DOES CHANGE A FEW
3    THINGS, AND MAYBE AFTER YOU TALK, YOU AND MR. SPOONER AND
4    MR. BRADFORD CAN GET TOGETHER A LITTLE BIT.
5        MR. KIESEL:   RIGHT.   THERE ARE A LOT OF ISSUES IF THE
6    COURT CHOOSES TO GO WITH THE REVERSE BIFURCATION.
7        THE COURT:   I DON'T MEAN TO SOUND THE WAY THIS IS GOING
8    TO SOUND.  I HAVE MADE MY DECISION.
9        MR. KIESEL:   SO WITH THE COURT'S DECISION IN PLACE,
10   THERE MAY BE OTHER OPTIONS WE WANT TO EXPLORE WITH WYETH.
11       MS. PRESBY:   BEFORE WE BREAK, YOUR HONOR, MAYBE THIS IS
12   NOT THE APPROPRIATE TIME.  MAYBE WE WILL TALK ABOUT IT A
13   LITTLE BIT LATER.  BUT IN LIGHT OF THE COURT'S DECISION --
14       THE COURT:   I WON'T KNOW UNTIL YOU TELL ME, SO GO AHEAD.
15       MS. PRESBY:   THERE YOU GO, AND THAT'S WHAT I WILL DO.
16          WHAT I AM WONDERING IS HOW WE ARE PLANNING OR HOW
17   THE COURT, HAVING THOUGHT THROUGH THIS, IS PLANNING TO
18   HANDLE THE ISSUE WITH THE JURY.  OUR CONCERN AND WHAT WE
19   HAVE SEEN IN THE CASES WE'VE BEEN INVOLVED IN AND THE ONE
20   THAT WE'VE TRIED IS THAT IN FACT THERE IS A MESSAGE CONVEYED
21   FROM THE DEFENDANT TO THE JURY THAT THEY DON'T COME BACK IF
22   THEY JUST SAY NO.
23       THE COURT:   WELL, I TYPICALLY IN THE PAST, AND I CAN'T
24   REMEMBER EVER DOING A CIVIL CASE, BUT, WHEN I TRIED CRIMINAL
25   CASES, WE BIFURCATED ALL THE TIME, AND I JUST DIDN'T TELL
26   THEM.  I AM GOING TO TIME QUALIFY THEM FOR WHAT I THINK IT
27   WILL LAST PHASE I AND PHASE II.  WHY DO THEY HAVE TO BE TOLD
28   PERIOD?  I MEAN, REALLY, WHY DO THEY HAVE TO BE TOLD?  I



E-SERVED
11/19/04
03:45 PM ET
No. 240 Dist Ctrg

16

1   DON'T THINK THEY HAVE TO BE TOLD, AND THAT'S GOING TO BE THE

2   ORDER I'M GOING TO MAKE.  WE ARE NOT GOING TO TALK PHASE I

3   AND PHASE II TO THE JURY.  IT'S NOT EVEN GOING TO BE

4   IMPLIED.  I CAN TELL YOU THAT RIGHT NOW, AND THAT'S A

5   DECISION I HAVE MADE AS WELL.

6       MS. PRESBY:  THE ONLY ISSUE THAT THAT RAISES, YOUR

7   HONOR, IS THE ISSUE THAT I AM SURE YOU NOTED IN THE THIRD

8   CIRCUIT OPINION, WHICH IS THE CONCERN THAT THE PLAINTIFF

9   ACTUALLY IS NOT PERMITTED IN A REVERSE BIFURCATION CASE TO

10  SHOW THE FULL CONTEXT OF THE DAMAGES, AND THE JURY MAY BE

11  DISINCLINED TO AWARD DAMAGES IF THEY HAVE HEARD NOTHING

12  ABOUT WHAT AN ENTITY HAS DONE WRONG, AND I DON'T KNOW HOW TO

13  COUNTER THAT.

14      THE COURT:  I DON'T KNOW HOW TO RESPOND TO YOU.  YES, I

15  DID THINK ABOUT IT.  I'M JUST REPEATING MYSELF AT THIS POINT

16  IN TIME.  I THOUGHT ABOUT IT A GREAT DEAL.  I WEIGHED IT.

17  YOU KNOW.

18      MS. PRESBY:  OKAY, AND I APPRECIATE THE COURT'S TIME IN

19  THIS.

20      THE COURT:  I FEEL LIKE I AM DEFENDING MYSELF AT THIS

21  POINT, AND I DON'T WANT TO.  I MADE THE DECISION.  I FEEL

22  GOOD ABOUT IT.

23      MS. PRESBY:  RIGHT, AND WE CERTAINLY APPRECIATE THE TIME

24  YOU PUT INTO IT, CLEARLY.

25      THE COURT:  ANYWAY, WHY DON'T YOU TALK, AND TAKE YOUR

26  TIME.  WE ARE IN NO HURRY.  AND THEN, WHEN YOU ARE DONE,

27  MAYBE TALK TO EACH OTHER, AND THEN LET ME KNOW WHEN YOU ARE

28  READY.

```
 1   STATE OF NEW MEXICO
     COUNTY OF SANTA FE
 2   FIRST JUDICIAL DISTRICT COURT

 3                No. D-0101-CV-200400361

 4   ANNETTE GRANILLO, TAMMY BOWER,
     ELIZABETH CREASON, ISABEL ARAGON,
 5   DONALD MOCK, LARRAINE OLIVER,
     JEANIE STARKEY, VICTORIA WIECK,
 6            Plaintiffs,

 7   vs.

 8   WYETH, INC., (formerly known as
     American Home Products Corporation,
 9   Wyeth Pharmaceuticals, A.H. Robbins Company,
     Inc., and Wyeth-Ayerst Laboratories); and
10   FRANCISCO M. ANAYA,
              Defendants.
11   _____

12   STATE OF NEW MEXICO
     COUNTY OF SANTA FE
13   FIRST JUDICIAL DISTRICT COURT

14                No. D-0101-CV-200400488

15   DELFINA VEGA, LORILEA BAINTER,
     SUZANNE DAWSON, KAREN GALLOWAY,
16   DONNA GORCYZCA, LINDA KEATING,
     AUDREY LEHR, and BARBARA YOUNG,
17            Plaintiffs,

18   vs.

19   WYETH, INC., (formerly known as
     American Home Products Corporation,
20   Wyeth Pharmaceuticals, A.H. Robbins Company,
     Inc., and Wyeth-Ayerst Laboratories); and
21   FRANCISCO M. ANAYA,
              Defendants.
22

23              TRANSCRIPT OF PROCEEDINGS

24        On the 6th day of October 2005, at approximately 10:30

25   a.m., this matter came on for hearing on DEFENSE PENDING
```

1    MOTIONS, before the HONORABLE JAMES A. HALL, Judge of the First

2    Judicial District, State of New Mexico, Division II.

3              The Plaintiffs, ANNETTE GRANILLO, et al., and DELFINA

4    VEGA, et al., appeared by Counsel of Record, E. ARMISTEAD

5    EASTERBY, The Williams Bailey Law Firm, L.L.P., Attorneys at

6    Law, 8441 Gulf Freeway, Suite 600, Houston, Texas  77017-5001;

7    and MARK J. CARUSO, Caruso Law Offices, P.C., Attorneys at Law,

8    4302 Carlisle Boulevard, Northeast, Albuquerque, New Mexico

9    87107.

10             The Defendant, WYETH, INC., appeared by Counsel of

11   Record, WALTER J. MELENDRES, Montgomery & Andrews, P.A.,

12   Attorneys at Law, Post Office Box 2307, Santa Fe, New Mexico

13   87504-2307; and ANDREW G. SCHULTZ, Rodey Law Firm, Attorneys at

14   Law, P.O. Box 1888, Albuquerque, New Mexico 87103; and GEORGE E.

15   McDAVID and DANIEL K. WINTERS, Reed Smith, L.L.P., Attorneys at

16   Law, 136 Main Street, Suite 250, Princeton, New Jersey  08540;

17   and J. SCOTT NABERS, Blizzard, McCarthy & Nabers, L.L.P.,

18   Attorneys at Law, 440 Louisiana, Ste. 1710, Houston, Texas

19   77002-1689.

20

21

22

23

24

25

TR-2

BRENDA CASIAS, CCR No. 119
Official Court Reporter
First Judicial District Court

1          At which time the following proceedings were had:

2                 * * * * * * * * * * * * *

3          THE COURT:  District Court is in session.

4    We're on the record in *Granillo vs. Wyeth*, Santa Fe 2004-361

5    Civil, and *Vega vs. Wyeth*, Santa Fe 2004-488 Civil.  Counsel,

6    enter your appearances for the record, please.  For the

7    Plaintiffs?

8          MR. EASTERBY:  Armistead Easterby with the

9    Williams Bailey Law Firm for the Plaintiffs, Your Honor.

10          MR. NABERS:   Scott Nabers with the Law Firm of

11    Blizzard, McCarthy & Nabers on behalf of Plaintiffs, Your Honor.

12          MR. CARUSO:  Mark Caruso from Albuquerque also

13    for the Plaintiffs, Your Honor.

14          THE COURT:  For the Defendants?

15          MR. MELENDRES:   Walter Melendres for Defendant

16    Wyeth.

17          MR. McDAVID:   George McDavid and Daniel

18    Winters from ReedSmith for Wyeth, Your Honor.

19          MR. SCHULTZ:  And Andrew Schultz for the

20    Defendant, Your Honor.

21          THE COURT:  We're scheduled to hear a number of

22    motions pending in both of these actions, and I will say this:

23    I did not go back to look at the Court file.  I think from

24    Mr. Melendres' office I was given a notebook regarding the

25    motions pending.  I am relying on the idea that notebook

TR-3

1   bifurcated way.  And that's the truth.  The cases that I tried

2   in a reverse bifurcation, the monetary amounts and awards to the

3   Plaintiffs was far greater.  But if Your Honor wants to try Ms.

4   Oliver in the mitral cases in the first setting, I would agree

5   to reverse bifurcation for that setting.

6            THE COURT:  One last question, since I'm

7   talking about 13 here.  I'll stick with these 13 right now.  It

8   seems to me that if they were tried in a reverse bifurcation

9   manner, those Plaintiffs that prevailed in the first setting,

10  the second portion of it seems to me the issues are all common

11  at that point.  Is there any Court who has approached this in

12  the fashion of addressing reverse bifurcation, trying those in

13  some sort of manageable number, and then for those that

14  prevailed, bring them back together for the subsequent trial?

15           MR. NABERS:   My experience has been that's

16  exactly what has happened.  I haven't lost one, but all of the

17  ones that I won came back and were tried together in the second

18  phase.

19           THE COURT:  I am going to hear from the

20  Defendants, but right now I am looking at the trial groupings,

21  opt out eligibility and reverse bifurcation.

22           MR. McDAVID:   Your Honor, there is a lot of

23  ground to cover here.

24           THE COURT:  And we're running out of time.

25           MR. McDAVID:   First of all, with respect to --

                                                          TR-28

1    I am not sure where the record is on this last colloquy about

2    phase one and phase two and regrouping.  I also have tried cases

3    in Philadelphia, and I have tried reverse bifurcated cases, and

4    I have tried cases on all issues.  I looked at the -- my firm is

5    in Philadelphia, and we try many of these cases, and we have

6    tried many cases against the Williams Bailey firm.  They have

7    tried seven cases, six of them reverse bifurcated.  There are

8    about four Plaintiffs or sometimes two or five in each case.

9    Phase one takes about four to six trial days.  One trial took

10   eight.

11                    THE COURT:  For both parties?

12                    MR. McDAVID:    Yes.  Of those six cases, which

13   were reverse bifurcated, only one case went to a second phase.

14   That second phase took six days.  The first phase of that trial

15   took six days.  Every other time it's been reverse bifurcated,

16   the case has resolved with these folks without the second phase.

17   The one case that they tried that was an all-issues case took 11

18   days.  I don't know what Your Honor's evidentiary rulings are,

19   but I will tell you that in Philadelphia where this universal

20   case is from, there is no evidence permitted about primary

21   pulmonary hypertension, and that issue itself can make the trial

22   even longer.  I think that, based on my experience and based on

23   what I understand their experience is, if we try five cases,

24   we're talking about somewhere between five and eight days,

25   depending on Your Honor's evidentiary rulings, that is if

TR-29

1    they're reverse bifurcated.

2              The second phase of the trial, and this is the

3    part I was unclear about, the experience in Philadelphia where

4    these things are reverse bifurcated is that after the first

5    phase of the trial, if there is a Plaintiff's verdict and it

6    doesn't resolve, then the case is then tried, the same group of

7    Plaintiffs.  They don't bring in different Plaintiffs to try it.

8    I don't know what Your Honor was contemplating, if you were

9    trying two or three groups in phase one and then bringing the

10   successful Plaintiffs in phase one for a phase two for trial,

11   that has not occurred.  I don't think that it's contemplated in

12   Philadelphia that would occur.

13             THE COURT:  Why wouldn't I do that, especially

14   when I have a setting and I have two cases that have seven and

15   six Plaintiffs, and I think 13 is too many to try at once, and I

16   decide that reverse bifurcation is appropriate?  It seems to me

17   the second phase the issues are all common.

18             MR. McDAVID:   I don't think the issues are at

19   all common.  I think that depending on the theories of liability

20   they pursue, and I assume they will pursue strict liability on

21   an evidence case, the evidence is particularized.  Is there

22   negligence on behalf of the Plaintiff?  The Plaintiff's

23   prescriber prescribed the drugs irrespective of what they deemed

24   to be the appropriate warning.  So you will need individualized

25   testimony.  I also think that some of the phase one evidence is

TR-30

```
 1    appropriate to be heard in the phase two case.  So you would
 2    want to either try the case before the same Jury, or if you are
 3    going to impanel a new Jury, and in your scenario I think you
 4    would have to impanel a new Jury, and then there would be a
 5    modicum of evidence to this new Jury, which was heard by the
 6    first Jury.  I don't think it would be a lot and I think you
 7    could do it, but if you decide that, I think that's the rubric,
 8    and counsel is nodding his head, so he agrees with me.
 9              THE COURT:  If you tried five Plaintiffs, in
10    your experience, you're saying to try those five Plaintiffs
11    under reverse bifurcation theory, it would take five or six
12    days?
13              MR. McDAVID:   At least five days, maybe eight.
14              THE COURT:  How long would phase two take if
15    all the Plaintiffs prevail?
16              MR. McDAVID:   I think five to seven days.  I
17    know their experience in the Hansen case, that case was four
18    Plaintiffs and it took two days on the second phase.  I think
19    the liability issues were similar.  I think in Pennsylvania, the
20    only theory they have is negligence.  They don't have a strict
21    liability to pursue which would add more time, and it would also
22    depend on Your Honor's evidentiary rulings.  I think if we try
23    five cases, I think we're talking about five to eight first
24    phase and five to eight second phase.  Total ten to 14 maybe,
25    something like that.  On Ms. Oliver, the problem with -- the
```

TR-31

1   issue with her is that the only difference between Ms. Oliver

2   and any of the rest of these Plaintiffs, with respect to the

3   medicine, is that her treating physician says she at some point

4   in the future is going to need surgery.  She's taken blood

5   pressure medications and many of these Plaintiffs have taken

6   blood pressure medications.  It's not medically that different

7   except from that perspective, but that little thing, I think, is

8   something that's potentially prejudicial to my client in this

9   case.

10          The reason why Mr. Nabers was unable to

11  identify, at your request, after Oliver the next worse cases is,

12  is because there aren't.  They're all the same.  Oliver is the

13  outlier.  He's suggesting that you will resolve these cases by

14  trying the outlier.  I think human experience is to the

15  contrary, Your Honor.  If you want to try cases, try the most

16  representative cases.  That's more likely to resolve these.  In

17  addition, I think if there is a phase two, if you bifurcate it

18  and you have Oliver in and they prevail on Oliver, the phase two

19  evidence on that one will be a little different and prolong the

20  trial on phase two on these other cases.

21          Let me address this issue about the eligibility

22  challenges, which seems like a long time ago now.  Maybe it was.

23  Judge Garcia, in fact, did review these cases, the eligibility

24  challenges, and did, in fact, set aside one of the cases because

25  he thought it did not meet the eligibility challenge.

TR-32

1            THE COURT:  What was the record that he did

2    that on?  An affidavit?

3            MR. McDAVID:   Yes, Your Honor.  To suggest

4    that no one has ever looked behind at this is not true.  It is

5    true that Judge Walsh in New Jersey does just this in

6    Philadelphia, and I think the order related to the Philadelphia

7    procedure is in the paper we submitted, so very clearly that

8    jurisdiction will hold eligibility challenges, they'll hold

9    hearings on them, they have made arrangements for the

10   appointment of a special master.  So these issues are being

11   considered around the country, but to get to the knot of the

12   issue, Mr. Easterby suggests that all they have to do get a

13   doctor who says there is regurgitation and they win.  That

14   wasn't the settlement.  The parties contemplated they couldn't

15   bring just any old case, that they had to make a certain showing

16   on these echocardiograms.  It is not true that all they had to

17   do was produce an echocardiogram timely and produce a

18   cardiologist.  The interpretation of that echocardiogram had to

19   be done according to certain scientific means.  The agreement

20   between these people and Wyeth specifically cited at least three

21   text in the same paper, the Flaggenboun Cardiology Textbook, and

22   the Waymen Cardiology Textbook.  So it is clearly contemplated

23   by the parties that Wyeth wasn't going to have to defend cases

24   which didn't meet scientific standards.

25            All we are asking you to do is apply those

TR-33

1   scientific standards and to function here as a gatekeeper, so if

2   Your Honor finds that they meet the scientific standards and are

3   medically reasonable, fine, but if not, Wyeth shouldn't be

4   required to defend these, they shouldn't go to a Jury, and they

5   shouldn't suffer the expense and risk of defending them.   Your

6   Honor, Mr. Melendres points out to me that among the group that

7   you and Mr. Nabers discussed were two people whose eligibility

8   we challenged, and that would be Ms. Vega and Ms. Young.   So

9   perhaps Your Honor wants to try the four unchallenged mitral

10   cases initially.

11                    THE COURT:   That's Aragon, Keating, Bower and

12   Dawson?   Is that the four?

13                    MR. McDAVID:   Yes, sir.   I am not suggesting

14   that.   I realized that two of these four were challenged.   It

15   may affect your thinking.   That's all.

16                    THE COURT:   Anything else on these matters?

17                    MR. McDAVID:   No, Your Honor.

18                    THE COURT:   Anything else from the Plaintiff,

19   talking about the matters related to trial grouping, opt out and

20   reverse bifurcation?

21                    MR. NABERS:   Just one with regard to the trial

22   grouping.   I wanted to make sure in the past when I tried these

23   cases we did have the same Jury for phase one and phase two.

24   From the Plaintiffs' perspective, we would want to keep that

25   same Jury, because there is a lot of education that goes into

TR-34

1  phase one that makes it a lot easier and a lot shorter trial for

2  the same Jury to deal with phase two.

3           THE COURT:  I understand that, but I don't know

4  how I will be able to do that because one of the things you say

5  is that many of these cases after phase one settle.  It's

6  impossible for me to hold a Jury and hold days open that would

7  be unusable to the Court.  So, in other words, it's impossible

8  for me to say to a Jury the total trial will take 15 days, and

9  we get them set up, try the first part, you prevail, and the

10  case settles.  I can't have cases settling during trial.  I know

11  that happens from time to time.  My docket is too full for that

12  to happen.  My expectation is if the case starts, that means you

13  all are taking it to the Jury.  I simply don't have time to do

14  that, and I'm worried that I don't have 15 days.  And two, if I

15  were to set aside 15 days and you tell me, "Good news, Judge,

16  you've got the next seven days off," the conventional wisdom of

17  a lawyer is if they come to the Judge right beforehand and say

18  that it settled, that the Judge will react positively to that.

19  That's not the case with me.  They don't understand why I get

20  mad.  It's because I can't control the remainder of my cases.

21  I'm worried about that, and I don't know how to address it.

22           MR. NABERS:  We would be happy to start phase

23  two right after phase one, or if the Court needed some time,

24  because I know you have to bring the Jury back.  I unfortunately

25  can't control whether the cases will settle.  I mean, obviously

TR-35

1    we are going to be talking about them and working towards

2    resolving these cases before we get further down this road, but

3    I have been in the experience that you are talking about where

4    the cases have settled in the middle of trial.

5              THE COURT:  Don't do that, or carefully select

6    which one of you will come tell me that.

7              MR. McDAVID:   I think the rule is the guy who

8    gets the money talks to the Judge.  Your Honor, on this brief

9    point about trying the case before the Jury, and the way I

10   appreciate this is it's your concern that you will try this

11   case, phase one, before a Jury, and because of your docket that

12   you will not be able to try phase two immediately?

13             THE COURT:  That's my concern.

14             MR. McDAVID:   Not in this litigation, but in

15   other litigations in which I have been involved in which we

16   reverse bifurcated cases, we have not been able to try -- we got

17   a verdict in phase one because of various reasons, because of

18   the Court's problems, because of lapse of time, because of juror

19   unavailability.  We didn't try the case in front of the same

20   Jury and picked a new jury, which is not optimal, but I think

21   the amount of evidence which overlaps here is really quite

22   minimal, and I think if Your Honor were to contemplate trying

23   two or three groups of these cases phase one, and then if phase

24   two is necessary, trying all of them before a second phase,

25   before a new Jury, I think that would be a workable plan.

TR-36

1          THE COURT:  We'll find out.  Here's what I do:

2     First, in terms of the reverse bifurcation, I grant the motion.

3     We'll address the cases that are proceeding to trial in a

4     reverse bifurcation format.  I'll ask counsel to confer.  At

5     this point, I don't see a feasible way logistically to have the

6     same Jury try phase one and phase two if they become necessary,

7     but if you can come up with some sort of plan that can do that

8     in an expeditious way, I'll consider it; but at this point, I

9     grant the Motion for Reverse Bifurcation.  At a minimum, phase

10    one of the trial will occur as outlined in that particular

11    motion.

12          I regroup the Plaintiffs in the two cases.  The

13    Plaintiffs that will proceed to trial scheduled in November will

14    be Ms. Aragon, Ms. Keating, Ms. Vega, Ms. Young and Ms. Oliver.

15    So those five will be scheduled for trial in the initial setting

16    in November.  The remaining Plaintiffs regretably will have to

17    be reset in another trial docket.

18          In terms of opt out eligibility, first to the

19    extent there is a summary judgment motion filed based upon Dr.

20    Shadoff's affidavit in an attempt to show that on its face

21    establishes that the Plaintiffs may not bring this claim based

22    upon the settlement, I conclude that summary judgment is not

23    appropriate, that there are disputed issues of fact and,

24    therefore, that's not a basis to conclude that those Plaintiffs

25    should not be able to proceed.  Likewise, I deny the request for

TR-37

Page 1

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL-TRIAL DIVISION

- - -

| | | |
|---|---|---|
| CHERYL FAZZINI & THOMAS | ) | November Term 2002 |
| RICHARD FAZZINI, | ) | |
|     Plaintiffs | ) | |
| | ) | |
|   vs. | ) | |
| | ) | |
| WYETH, INC., | ) | |
| WHETH PHARMACEUTICALS, INC., | ) | |
| WYETH-AYERST INTERNATIONAL, | ) | NO. 001775 |
| INC. | | |

- - -

February 16, 2005

- - -

Courtroom 612 - City Hall

Philadelphia, Pennsylvania

- - -

BEFORE HONORABLE R.C. JACKSON

and a Jury

- - -

REPORTED BY:  CATRINA G. MULLER, RPR, CRR

Catrina G. Muller, RPR, CRR 215.683.8035 - fx. 215.683.8005

Page 38

```
 1          C O L L O Q U Y
 2   Honor, the plaintiff's fact sheet, which I
 3   can provide Your Honor, has both of those
 4   echocardiograms --
 5          THE COURT:  Paragraph 5, in
 6   connection with this report, I reviewed the
 7   following records and adhered to as exhibit
 8   C.
 9          MR. NAPOLI:  Yes, and those
10   include Dr. Metkus's --
11          THE COURT:  Echocardiogram report
12   dated 4/25/2002; she doesn't mention '99 and
13   '04.
14          MR. NAPOLI:  '99 and '04 are
15   included, and this is the testimony of
16   Dr. Norris -- are included in Dr. Norris's
17   medical records and Dr. Barr's medical
18   records and in the fact sheet. They are
19   actually part of Miss Fazzini's file.
20          THE COURT:  Then why does
21   Dr. Landolfo say, I reviewed the
22   echocardiogram 4/25/2002?
23          MR. NAPOLI:  Because the Case
24   Management Order requires that you
25   specifically spell out in the report the
```

Page 39

```
 1          C O L L O Q U Y
 2   echos that were conducted at the direction
 3   of an attorney. That's a requirement. So we
 4   complied with the requirement of the
 5   echocardiograms on the CMO, and we have told
 6   them.  They have notice because Dr. Norris,
 7   and I don't think Mr. McConnell will stand
 8   up and say that Dr. Norris's records did not
 9   contain Falcone's report and did not contain
10   Metkus's report, because you will hear the
11   testimony from Dr. Norris and Dr. Barr that
12   they were included in the report and they
13   commented on them in their reports, in their
14   depositions.
15          MR. McCONNELL:  But if she has
16   opinions to render on the '99 and '04 echos,
17   which is what I'm hearing, that they're not
18   good echos, those opinions belong in the
19   report.  That's Pennsylvania law, forget
20   about the CMO.
21          THE COURT:  Not only that, she did
22   not mention that she reviewed the '99 and
23   '04 reports.
24          MR. McCONNELL:  That's right.
25          THE COURT:  It says it right in
```

Page 40

```
 1          C O L L O Q U Y
 2   paragraph 5.
 3          MR. McCONNELL:  If you go on,
 4   underneath the section you've got in front
 5   of you, there's actually a discussion now
 6   about the echocardiogram, and she starts
 7   rendering opinions on it. So she renders
 8   opinions. She knows how to render opinions,
 9   and the plaintiff's lawyers know how to
10   write them up.  There are extensive opinions
11   on the echocardiogram. Nothing on '99 and
12   '04. She shouldn't be allowed to mention
13   them in her testimony.
14          THE COURT:  That motion is
15   granted, Gentlemen.
16          MR. NAPOLI:  Your Honor, to the
17   extent that I pose hypotheticals to the
18   witness based on testimony as an expert, I'm
19   not precluded --
20          THE COURT:  I will rule on that at
21   the time that it comes up, if it does come
22   up.
23          MR. NAPOLI:  Okay. Thank you.
24          THE COURT:  Anything further,
25   Counsel?
```

Page 41

```
 1          C O L L O Q U Y
 2          MR. McCONNELL:  Just one thing, I
 3   think we have an understanding, but we had
 4   objected to reference in the opening
 5   statement, or for that matter throughout the
 6   case, to mitral regurgitation because that's
 7   not an issue. I think we want to be clear.
 8          MR. NAPOLI:  We are clear on that.
 9          THE COURT:  No mention of mitral
10   regurgitation.
11          MR. NAPOLI:  Just that we're going
12   to talk about showing the four valves but
13   not --
14          THE COURT:  As that being a
15   problem in this case.
16          MR. NAPOLI:  That's right.
17          THE COURT:  Are we ready to begin?
18   I'm advised that one juror is
19   missing. How do you wish to handle that?
20          MR. NAPOLI:  I think we can
21   proceed with seven. Your Honor, we have
22   Dr. Landolfo here today and she has to go
23   back to teach this afternoon -- tonight.  So
24   we're going to try to get her on today.
25          THE COURT:  We have to have an
```

Page 42

```
          C O L L O Q U Y
1
2    agreement as to whether we are going to
3    proceed with seven, and I understand this is
4    a reverse bifurcation. Damages first.
5         MR. McCONNELL:  Just for
6    clarification, Your Honor, my understanding
7    is that when we were going with eight
8    jurors, that it took six to make a verdict;
9    right? Seven. So now if we have seven, we
10   need six. I think we would rather wait for
11   the 8th juror.
12        THE CRIER:  You're not going to
13   get him.
14        THE COURT:  If you go with seven,
15   you need six. We tried to telephone the
16   juror, he was here earlier today, 8 o'clock
17   this morning.
18        MR. NAPOLI:  If they want to wait,
19   then I'm ready to pick another juror.
20        MR. McCONNELL:  Is that Mr.
21   Swendon?
22        THE CRIER:  Robert Patterson.
23        THE COURT:  What is your pleasure,
24   Gentlemen?
25        MR. McCONNELL:  I don't think we
```

Page 43

```
          C O L L O Q U Y
1
2    can agree to reducing to seven.  I think
3    it's prejudicial to the client.
4         MR. NAPOLI:  Because we have a
5    witness problem, we're going to have to ask
6    for a mistrial unless we can pick another
7    juror right now, and we would demand and
8    request we bring five jurors up here, we
9    each get one challenge, and we pick a juror
10   right now and proceed.
11        THE COURT:  Sounds reasonable.
12        MR. McCONNELL:  That's preferable
13   to dropping a juror. Sure.
14        THE COURT:  Okay. Now what happens
15   if jury selection does not have five over
16   there to give us.
17        (Whereupon, a discussion was held
18   off the record at this time.)
19        THE COURT:  We're going to take a
20   brief recess while we go over and get eight
21   more. You requested five.
22        MR. NAPOLI:  Whatever the court
23   clerk thinks is appropriate.
24        THE CRIER:  I'm going to bring
25   eight people. That's all I can get. I will
```

Page 44

```
          C O L L O Q U Y
1
2    bring the eight. Especially when I tell them
3    three weeks.
4         THE COURT:  So will you advise
5    counsel which room you're going to go in?
6         THE CRIER:  Yeah, 636. I will have
7    it unlocked for you.
8         THE COURT:  You can advise Mr.
9    Napoli what we're going to do. Because of
10   the juror problem, we're going to -- his
11   witness, I think he said has to be out by 1
12   o'clock, two o'clock?
13        You say your witness has to go on
14   today?
15        MR. NAPOLI:  She is here now. She
16   is ready to go right after openings.
17        THE COURT:  Right after openings,
18   we will go straight through the day and we
19   should be finished by 2 o'clock, no later
20   than 3 o'clock.
21        MR. McCONNELL:  Your Honor, just
22   to respond to that, I raised this issue,
23   given what Carolyn Landolfo covers, I've got
24   a long cross and I'm concerned that I'm not
25   going to be able to finish today. I know she
```

Page 45

```
          C O L L O Q U Y
1
2    has got a difficult schedule, but what I
3    don't want is a situation where they say,
4    oh, yeah, she gets to come back during my
5    case. That I don't want. So I don't know how
6    we address the scheduling issue, but I hope
7    we can work it out.
8         THE COURT:  Since counsel will not
9    agree with going with seven, I'm not going
10   to force you to go ahead with seven, we're
11   going to have the -- select that one, it
12   should be done by 11:30, then we're ready
13   for opening statements.  I will limit
14   opening statements to how many minutes.
15        MR. NAPOLI: I will say 30 minutes.
16        THE COURT:  Thirty minutes is too
17   long, we will limit opening statement time
18   to, say, 20 minutes. By that time -- we have
19   four opening statements.
20        MR. NAPOLI:  No, there is only
21   two.
22        THE COURT:  So by that time, we
23   will start taking testimony around noon, I
24   will explain to the jurors that we're going
25   to go straight through and take a late
```

12 (Pages 42 to 45)

CLC                    2156865197              02/10/05  05:45pm  P. 003

| | |
|---|---|
| MELINDA HOYT, | COUNTY OF PHILADELPHIA |
| Plaintiff, | COURT OF COMMON PLEAS |
| v. | December Term, 2002 |
| WYETH INC., WYETH PHARMACEUTICALS INC., and WYETH-AYERST INTERNATIONAL INC., | No. 3781 |
| Defendants. | |

DOCKETED
COMPLEX LIT CENTER
FEB 1 0 2005
J. STEWART

## ORDER REGARDING REVERSE BIFURCATION

AND NOW, this 9th day of Feb, 2005, it is hereby ORDERED, ADJUDGED, and DECREED that Wyeth's Motion for Reverse Bifurcation is GRANTED. Trial shall proceed on a reverse bifurcation basis with Phase I addressing whether Plaintiff has suffered a compensable injury resulting from her use of diet drugs and, if so, the amount of compensatory damages; Phase II, if necessary, will address whether Wyeth was negligent in a manner causally related to Plaintiff's use of the drugs.

BY THE COURT:

_____ J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b).
FEB 1 0 2005
FIRST JUDICIAL DISTRICT OF PA
C......I..D..

IDA D. DUPREE,             )      COUNTY OF PHILADELPHIA
               Plaintiff,    )      COURT OF COMMON PLEAS
                     )
          v.             )      December Term, 2002
                     )
WYETH, INC., et al.,        )      No. 2429
                     )
                     )
             Defendants.  )
                     )
                     )

**DOCKETED**
**COMPLEX LIT CENTER**

OCT 1 3 2004

**J. STEWART**

## ORDER

AND NOW, this 13th day of Oct., 2004, upon consideration of the Wyeth Defendants' Motion for Reverse Bifurcation, and any response thereto, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the Motion is **GRANTED.** In Phase I, the issues of whether Plaintiff has suffered a compensable injury resulting from the use of diet drugs and, if so, the amount of compensatory damages, shall be tried. In Phase II, which shall take place only if Plaintiff prevails in Phase I and the Wyeth Defendants then elect to contest negligence, the issue of whether the Wyeth Defendants were negligent in a manner causally related to Plaintiff's use of the drugs shall be tried.

BY THE COURT:

ACKERMAN, J.

```
 1              IN THE COURT OF COMMON PLEAS
 2          FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
 3                  CIVIL TRIAL DIVISION
 4                      - - - - - -
 5   VINESSA ARCHER and        : NOVEMBER TERM, 2002
     CARLTON DWIGHT ARCHER     :
 6                             :
                               :
 7            vs.              :
                               :
 8   WYETH, INC. et al.        : NO. 02595

 9                      - - - - - -

10   JUNE KOHLER               : DECEMBER TERM, 2002
                               :
11        vs.                  :
                               :
12   WYETH, INC., et al.       : NO. 3790

13                      - - - - - -

14                  September 20, 2004

15                      - - - - - -

16                Room 453 City Hall
17             Philadelphia, Pennsylvania
                        - - - - - -
18   BEFORE:
19       THE HONORABLE NITZA I. QUINONES ALEJANDRO, J.
         And a Jury
20
21
22
23
24
                        - - - - - -
25                      VOLUME ONE
                        - - - - - -
```

Page 2

```
1   APPEARANCES:
2     NEMEROFF FIRM
        BY:  RICK NEMEROFF, ESQ.
3          295 Madison Avenue, 35th Floor
           New York, NY  10017
4     Attorney for Plaintiffs Archer
5     BARON & BUDD, P.C.
        BY:  AMY M. CARTER, ESQ.
6          The Centrum, 3102 Oak Lawn Avenue
           Suite 1100
7          Dallas, TX 75219-4281
      Attorney for Plaintiffs Archer
8
      FLEMING & ASSOCIATES, L.L.P.
9       BY:  RAND P. NOLEN, ESQ.
             ADAM D. PEAVY, ESQ.
10           LAURA V. YAEGER, ESQ.
           1330 Post Oak Boulevard, Suite 3030
11         Houston, TX  77056-3019
      Attorneys for Plaintiff Kohler
12
      REED SMITH, LLP
13      BY:  MICHAEL T. SCOTT, ESQ.
             WILLIAM J. McDONOUGH, ESQ.
14           ELIZABETH ABRAMS, ESQ.
           2500 One Liberty Place
15         1650 Market Street
           Philadelphia, PA  19103
16    Attorneys for Defendants
17
18
19
20
21
22
23
24
25
```

Page 3

```
1              Archer and Kohler v. Wyeth
2         THE COURT:  Good morning everyone.
3     Okay.  We're here on the matters of
4     Archer v. Wyeth and Kohler vs. Wyeth.  Archer
5     is November Term 2002, No. 2595, and Kohler is
6     December Term 2002, No. 3790.
7         I have, I think, 60-some Motions In
8     Limine.
9         MR. NOLEN:  Your Honor, Rand Nolen.
10    I represent Miss Kohler.  I'm with the firm
11    Fleming & Associates and I actually have some
12    good news for the Court.
13        THE COURT:  Okay.  I like good news.
14        MR. NOLEN:  We did confer with
15    opposing counsel and we agreed on a number of
16    Motions In Limine either to withdraw them
17    since the case has already been bifurcated
18    because they're just not going to be relevant
19    to the Phase 1 of the case.
20        THE COURT:  Okay.
21        MR. NOLEN:  And others we've agreed
22    on various ones to actually withdraw on both
23    sides.
24        THE COURT:  Okay.
25        MR. NOLEN:  So I think the Court is
```

Page 4

```
1              Archer and Kohler v. Wyeth
2     down, at least with regard to Ms. Kohler, I
3     think there are only three remaining for the
4     plaintiff.
5         MR. PEAVY:  I believe only one left.
6         MR. NOLEN:  I think only one left
7     from Wyeth, so we went from 60 to four on
8     those.
9         THE COURT:  Okay.  What we'll do is
10    then, as I go through them, you let me know if
11    these are the ones that have been withdrawn or
12    these are the ones that have been agreed upon
13    or whatever the situation may be.
14        With regards to the first Motion In
15    Limine, which is the Motion to bifurcate,
16    reverse bifurcation, control No. 082550, as
17    you know, I have granted that Motion.
18        MR. NEMEROFF:  And, Your Honor, not
19    to be outdone by Fleming lawyers, Rick
20    Nemeroff and Amy Carter on behalf of Miss
21    Archer and her family.
22        We, too, have reduced the amount of
23    Motions In Limine significantly.  Miss Carter
24    met with the Wyeth lawyers yesterday and I
25    think we're down -- I can't do as well as they
```

Page 5

```
1              Archer and Kohler v. Wyeth
2     did.  I think we're down to six or so issues
3     overall, but I think we're certainly far below
4     double digits at this point.
5         THE COURT:  It's also good news.
6     Unfortunately, I have to go through all of
7     them since I have to sign them and you have to
8     bear with me.  I was being stubborn and kept
9     both last names, so it takes a while to sign
10    them.
11        This is Kohler's Motion to bifurcate
12    or, rather --
13        MR. NEMEROFF:  Wyeth.
14        THE COURT:   -- Wyeth's Motion, but
15    it is Kohler's response.  It is Control No.
16    082551.  The Motion has been granted, so I'm
17    just making sure I'm signing all the Orders.
18        Okay.  Plaintiff's Motion In Limine,
19    this is Archer's.  I think I'm going to be
20    doing Archer's first and then Kohler's.
21        This is the Motion to -- it's
22    control No. 083120 to preclude defendants from
23    mentioning any studies performed by any
24    experts without first having timely disclosed
25    those results to opposing counsel.
```

*R 9/20/04*

*Cc: Brown Green*
*Barb Binis*
*Sarah Bonifant*
*Louis Scheck*

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

CIVIL TRIAL DIVISION

LUCY HANSEN                    :        DECEMBER TERM, 2002
                               :
          vs.                  :
                               :
AMERICAN HOME PRODUCTS         :
CORPORATION, ET AL.            :        NO. 1063

ORDER

AND NOW, this 14th day of September, 2004, it is hereby ORDERED,

ADJUDGED, and DECREED that the Wyeth Defendants' Motion for Reverse

Bifurcation of trial of the above-captioned matter is GRANTED.  Trial shall proceed on a

reverse bifurcation basis with Phase I addressing whether plaintiff has suffered a

cognizable and compensable injury caused by his use of diet drugs, and, if so, the amount

of compensatory damages and Phase II addressing whether Wyeth was negligent.

BY THE COURT:

_____

MARK I. BERNSTEIN, J.

COPIES SENT
PURSUANT TO Pa. R.C.P. 236(b)

SEP 1 5 2004

First Judicial District of Pa.
User I.D.: _____

DOCKETED

SEP 1 5 2004

K. GALLAGHER

VICKI DANIELSON,                        )
                                        )    COURT OF COMMON PLEAS
              Plaintiff,                )    PHILADELPHIA COUNTY
                                        )
                                        )    December Term, 2002
    v.                                  )
                                        )    No. 3968
WYETH, et al.,                          )
                                        )
              Defendants.               )
                                        )
                                        )

## ORDER REGARDING BIFURCATION

AND NOW, this _____ day of _____, 2004, it is hereby **ORDERED**,

**ADJUDGED**, and **DECREED** that the Wyeth Defendants' Motion for Reverse Bifurcation of trial of

the above-captioned matter is **GRANTED**.  Trial shall proceed on a reverse bifurcation basis with

Phase I addressing whether plaintiff has suffered a cognizable and compensable injury resulting from

their use of diet drugs, and, if so, the amount of compensatory damages and Phase II addressing

whether Wyeth was negligent in a manner causally related to plaintiff's use of the drugs.

DOCKETED
COMPLEX LIT CENTER

SEP 1 5 2004

L. RYANT-DAVIS

BY THE COURT:

ACKERMAN, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

SEP 1 5 2004

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

- - -

LINDA C. BERNTSON   : DECEMBER TERM, 2002
           :
    vs.      :
           :
WYETH f/k/a AMERICAN HOME :
PRODUCTS CORPORATION,   :
WYETH PHARMACEUTICALS,  :
A Division Of WYETH   : NO. 2304

- - -

JANICE L. CONNELL, ET VIR : DECEMBER TERM, 2002
DAVID L. CONNELL     :
           :
    vs.      :
           :
WYETH f/k/a AMERICAN HOME :
PRODUCTS CORPORATION,   :
WYETH PHARMACEUTICALS,  :
A Division Of WYETH   : NO. 2454

- - -

Tuesday, August 17, 2004

- - -

Courtroom 475
City Hall
Philadelphia, Pennsylvania

- - -

BEFORE:  HONORABLE ALFRED J. DiBONA, JR., J.,
   and a Jury

- - -

MORNING SESSION

- - -

Page 2

APPEARANCES:

PROVOST UMPRHEY
BY:  JAMES A. MORRIS, JR., ESQUIRE
     STEVE FARIES, ESQUIRE
COUNSEL FOR THE PLAINTIFFS

PETROFF & ASSOCIATES
BY:  KIP PETROFF, ESQUIRE
COUNSEL FOF THE PLAINTIFFS

DECHERT, LLP
BY:  ANDREW R. GADDES, ESQUIRE
     JENNIFER E. DUBAS, ESQUIRE
     EZRA D. ROSENBURG, ESQUIRE
COUNSEL FOR THE DEFENDANT

Page 3

INDEX

PAGE

JUDGES OPENING CHARGE          21

OPENING STATEMENTS

  MR. MORRIS                   28
  MR. ROSENBERG                66

Page 4

```
 1            - - -
 2       (The following occurred in open court
 3   outside the presence of the jury:)
 4            - - -
 5       THE COURT:  We're a little late
 6   getting started.  Counsel has been advised that
 7   I went to a viewing this morning.  I was back
 8   here by 9:40.  We have a few problems with our
 9   jury, and we'll have to resolve those first
10   before we talk about any motions that counsel
11   may have.
12       I want to direct your attention to
13   Juror Number 10, Marcella Rhoades.  We were
14   advised after jury selection that Ms. Rhoades
15   had raised an issue in reference to her father
16   having Alzheimer's disease and that she would
17   be required to leave court every day at 3:30.
18       I will not tolerate that.  But I did
19   call her, and I spoke to her Thursday
20   afternoon, and she assured me that sitting from
21   4:00 or 4:30 will not be a problem for her.
22   So, therefore, she will remain on our jury.
23       Well, let me mention her anyway.
24   Juror Number 7, Carmen Jaquez, did not show up
25   as of, I guess, 9:45 or so.  Our court officer
```

Page 5

```
 1   went to the courtroom where everyone
 2   participated in jury selection.  Bob also went
 3   to Mary McGovern's office, and we also called
 4   the jury assembly room trying to locate her.  I
 5   have just been advised that she is now present.
 6   So that solves that problem with Number 7.
 7       That leaves us with Juror Number 4,
 8   Manuel Cordero.  He called at 8:20 this morning
 9   and advised the court officer, Bob Corcoran,
10   that he was sick.  He didn't feel well.  He
11   didn't know whether he had a bug or a virus or
12   food poisoning.  And Bob said, Well, I have no
13   authority to excuse you, you'll have to come
14   in.  He did come in.
15       So we're going to have to question him
16   to see what his condition is and whether or not
17   he can continue as a member of this jury.  So
18   why don't we start off by bringing in Mr.
19   Cordero?
20       Good morning, Mr. Cordero.  How do you
21   feel this morning?
22       JUROR NUMBER 4:  Not well.
23       THE COURT:  Tell me what's your
24   problem.
25       THE WITNESS:  Stomach virus or food
```

Page 6

1  poisoning.  I'm not sure.
2        THE COURT:  I won't ask you what you
3  ate in the last couple days.  I'll leave that
4  up to you.  What kind of work do you do?
5        JUROR NUMBER 4:  I'm a baker.
6        THE COURT:  Bakers can't get food
7  poisoning.  You have a lot of people out there
8  to take care of.
9        When did this illness come on?
10       JUROR NUJMBER 4:  Yesterday.
11       THE COURT:  Yesterday.  Were you able
12 to work yesterday?
13       JUROR NUMBER 4:  No.
14       THE COURT:  Does counsel have any
15 questions?
16       MR. MORRIS:  No, we don't.
17       MR. ROSENBURG:  No, we don't.
18       THE COURT:  Counsel have any objection
19 to my excusing him?
20       MR. ROSENBURG:  No objection, Your
21 Honor.
22       MR. MORRIS:  No.
23       THE COURT:  Fine.  Okay.  Hope you
24 feel better.
25       JUROR NUMBER 4:  Thank you.

Page 7

1        THE COURT:  What do you bake?
2        JUROR NUMBER 4:  All kinds of cakes,
3  pastries.
4        THE COURT:  Pastry person.  You're the
5  guy that has all the calories.  We appreciate
6  your effort.  Thanks a lot.
7        Therefore, we will move Juror Number
8  9; although, sometimes what I do in a situation
9  like this, I leave it up to the juror to
10 determine if he or she wants to take seat
11 Number 9 or seat Number 4.  Of course, we know
12 that Number 9 is now Number 4, and that would
13 be Marva Smith Hankins.
14       All right.  I have before me a list of
15 witnesses who may testify during this trial.  I
16 saw a Dr. Cherlo, all right.  Deposition, but
17 not video deposition?
18       MR. MORRIS:  Correct.
19       THE COURT:  Do you have designations
20 for me to read?
21       MR. MORRIS:  Yes, I believe we do.
22       THE COURT:  Cause I read these
23 designations, just like I read transcripts.
24       MR. MORRIS:  I'm sorry.  We have Dr.
25 Cherlo by video, Your Honor, I'm sorry.

Page 8

1        THE COURT:  Okay.  He's a treater.
2  What's the length of the video?
3        MR. MORRIS:  Length of the video,
4  maybe 10 minutes.  Seven minutes.
5        THE COURT:  Seven?
6        MR. MORRIS:  Yes, sir.
7        MR. ROSENBERG:  Your Honor, I think it
8  might be a little longer than that, because
9  we're playing both.
10       THE COURT:  First of all, where's the
11 transcript, because I read transcript, because
12 I do not watch videos.  Let me have the
13 transcript from Dr. Cherlo.
14       Next, I have Dr. Schaeffer.
15       MR. MORRIS:  Yes, Dr. Louis Schaeffer,
16 that's also by video.
17       THE COURT:  How long is his video?
18       MR. MORRIS:  Once again, maybe 10
19 minutes.
20       THE COURT:  All right.  Give the
21 transcript to our court officer.
22       And then we have Dr. Reeves.
23       MR. MORRIS:  Once again, by video.
24       THE COURT:  And how long?
25       MR. MORRIS:  Ten minutes, at most.

Page 9

1        THE COURT:  Well, you know, with these
2  videos being as short as they are, I may watch
3  them.  I normally read transcripts, especially
4  if there are objections, but because of the
5  shortness of these videos, I will watch them.
6        Then we go to Mrs. Connell live and
7  Mrs. Berntson, and then you have an expert Dr.
8  Faulkner, he's live, and then defense has Dr.
9  Stoddard, also live.
10       Now, let me alert you to another
11 problem.  I have an assignment tomorrow
12 afternoon.  Accordingly, we're going to have an
13 unusual day tomorrow.  I've been doing it in
14 other cases also.  We will start tomorrow at
15 nine o'clock.  We will recess at one o'clock.
16 We'll take two ten-minute recesses during the
17 morning session, but there will be no lunch,
18 and everyone is free to do whatever you want to
19 do at one o'clock tomorrow.
20       I know you will go back to your office
21 and work, but there may be some others out
22 there that may have an opportunity to enjoy the
23 afternoon, at least I hope so.  That's the only
24 problem I have in relation to scheduling.
25       Now, is it my understanding that this

Page 10

```
 1  jury was told this case would last about a
 2  week?
 3       MR. MORRIS:  Yes, Your Honor.
 4  Actually, here's our trial schedule.  We
 5  anticipate --
 6       THE COURT:  Good, fine.
 7       MR. MORRIS:  We anticipate --
 8       THE COURT:  Gentlemen, please, do me a
 9  favor, sit down.  I'm not as formal as some of
10  my colleagues, and I do that for a reason.  I
11  want everybody to relax, okay?  I'm not saying
12  we're here to have fun, but I want everybody to
13  relax.  You'll be surprised how much tension it
14  relieves.
15       MR. ROSENBURG:  That's appreciated.
16  If we jump up, it's only out of habit, Your
17  Honor.
18       THE COURT:  You're doing that out of
19  respect.  I have no problem with that either.
20       MR. MORRIS:  Your Honor, James Morris
21  for the plaintiff.  What we intend to do in
22  terms of our trial schedule is today, we
23  anticipated opening statements and then putting
24  on the plaintiffs this afternoon, and we hope
25  to get both plaintiffs on and off.  If that
```

Page 11

```
 1  happens, great.  If it doesn't, we understand.
 2       Tomorrow morning, we will begin with
 3  Dr. Faulkner, and I anticipate --
 4       THE COURT:  Dr. Faulkner, Wednesday
 5  a.m.
 6       MR. MORRIS:  Dr. Faulkner, Wednesday
 7  a.m.  We anticipate finishing Dr. Faulkner
 8  tomorrow morning.  Even with Your Honor's
 9  limitation at one o'clock, I believe we'll be
10  able to get him on and off.
11       THE COURT:  Okay.
12       MR. MORRIS:  I anticipate the defense
13  will call Dr. Stoddard on Thursday.  And, once
14  again, we may be able to get him on and off in
15  the morning, maybe early afternoon.  When we
16  get him off, and then I anticipate the case
17  will be closed then, and we can either do final
18  arguments on Thursday afternoon or Friday
19  morning, as the Court pleases.
20       THE COURT:  Well, if we have time
21  Thursday afternoon, I would like to do
22  closings.  But let's hold that off.  We don't
23  know, for example, how long Dr. Stoddard may be
24  on the stand.  We have to play that by ear.
25       What about Phase 2?  Is this jury
```

Page 12

```
 1  advised of Phase 2?
 2       MR. ROSENBURG:  They've just been told
 3  there's a trial.  They have not been advised
 4  that it's a phase trial.  Our hopes, of course,
 5  is that Phase 1, one way or the other, takes
 6  care of it.  Of course, one doesn't know for
 7  sure.  Even if it doesn't, we're still going to
 8  be finished with Phase 1 by Thursday, or
 9  Friday.
10       MR. MORRIS:  Your Honor, may I speak
11  to that, also?
12       THE COURT:  Sure.
13       MR. MORRIS:  I recently tried a case
14  in front of Judge Glazer over in criminal
15  courts building, a reverse bifurcated fen-phen
16  case last month.  What Judge Glazer did at the
17  initiation of the trial is explain to the jury
18  that this is going to be reverse bifurcated.
19  That means that we're not going to be concerned
20  about liability right now.  That's later.
21  That's after this first phase.
22       He gave them an instruction, so they
23  wouldn't be in the dark wondering why they're
24  not hearing about the conduct of the company or
25  the conduct of the plaintiffs.
```

Page 13

```
 1       THE COURT:  I will explain that in my
 2  preliminary remarks to the jury.
 3       What I did in the first fen-phen
 4  trial, I chose to go straight through.  That
 5  was my decision.  I have now realized that my
 6  colleagues are correct.  So, hereafter, any
 7  cases in this courtroom will be by reverse
 8  bifurcation.
 9       I don't know, for example, if Judge
10  Ackerman is going to issue a global ruling to
11  that effect, but I will be one of the judges
12  who will do reverse bifurcation.  So we're
13  talking about damages.
14       In fact, if you would be kind enough,
15  Mr. Morris, to share Judge Glazer's verdict
16  sheet with counsel.  And if it's not available,
17  I have it.  My verdict sheet will be very
18  simple.  It will be very simple.
19       MR. MORRIS:  All right.
20       THE COURT:  In fact, what I'll do,
21  I'll show you.  Even though, even though I went
22  straight through, I did announce towards the
23  end of the trial that we were going to be
24  talking about whether or not these people had
25  the valvular heart disease.  So, therefore, I
```

```
 2    IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
         FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
 3                    CIVIL TRIAL DIVISION
 4                        - - -
 5
 6
BECKY DOWNARD                  :   DECEMBER TERM, 2002
 7
      VS                       :
 8
WYETH, WYETH-AYERST,           :
 9   PHARMACEUTICALS, INC.,
WYETH AYERST INTERNATIONAL,    :
10   INC., AND WYETH
PHARMACEUTICALS, DIVISION OF   :
11   WYETH                     :   NO. 00170
12                        - - -
13   JOYCE C. DRAGE            :   DECEMBER TERM, 2002
14
      VS                       :
15
WYETH, WYETH-AYERST,           :
16   PHARMACEUTICALS, INC.,
WYETH AYERST INTERNATIONAL,    :
17   INC., AND WYETH
PHARMACEUTICALS, DIVISION OF   :
18   WYETH                     :   NO. 001068
19                        - - -
20   BONNIE J. FINSTER         :   DECEMBER TERM, 2002
21
      VS                       :
22
WYETH, WYETH-AYERST,           :
23   PHARMACEUTICALS, INC.,
WYETH AYERST INTERNATIONAL,    :
24   INC., AND WYETH
PHARMACEUTICALS, DIVISION OF   :
25   WYETH                     :   NO. 001602
```

Page 2

3  JUDY K. GRIEVE          : DECEMBER TERM, 2002
4
   VS                     :
5
WYETH, WYETH-AYERST,      :
6  PHARMACEUTICALS, INC.,
WYETH AYERST INTERNATIONAL, :
7  INC., AND WYETH
PHARMACEUTICALS, DIVISION OF :
8  WYETH              : NO. 001067
9          - - -
10  JODI STOFFERS        : DECEMBER TERM, 2002
11
   VS                    :
12
WYETH, WYETH-AYERST,      :
13  PHARMACEUTICALS, INC.,
WYETH AYERST INTERNATIONAL, :
14  INC., AND WYETH
PHARMACEUTICALS, DIVISION OF :
15  WYETH             : NO. 000998
16          - - -
17        AUGUST 16, 2004
        COURTROOM 453, CITY HALL
18       PHILADELPHIA, PENNSYLVANIA
19          - - -
20
BEFORE: HONORABLE N.I. QUINONES ALEJANDRO, J.
21          - - -
22
23
24
25

      JODI PITTA - R.P.R.   (215)683-8013

---

Page 3

2
APPEARANCES:
4
      BLIZZARD, MCCARTHY & NABERS, LLP
5        BY:  EDWARD F. BLIZZARD, ESQUIRE
      FOR THE PLAINTIFFS
6
7      CURRAN & BYRNE, P.C.
      BY:  ROBERT E.J. CURRAN, ESQUIRE
8        FOR THE PLAINTIFFS
9      WILLIAMS & BAILEY
      BY JOHN T. BOUNDAS, ESQUIRE
10        E. ERICK ROSEMOND, ESQUIRE
      FOR THE PLAINTIFFS
11
12      MILLER & ASSOCIATES
      BY:  MICHAEL MILLER, ESQUIRE
13        FOR THE PLAINTIFF STOFFERS
14      DECHERT, LLP
      BY:  DIANE P. SULLIVAN, ESQUIRE
15        PHILIP N. YANNELLA, ESQUIRE
      FOR THE DEFENDANTS
16
17
18
19
20
21
22
23
24
25

      JODI PITTA - R.P.R.   (215)683-8013

---

Page 4

1      (DOWNARD, ET AL VS. WYETH)
2          THE COURT:  ARE WE READY TO
3   START?
4          WELL, SINCE THE DEFENSE WASN'T
5   HERE WITH ME LAST TIME, IT'S SORT OF YOUR
6   OBLIGATION TO TURN THE AIR CONDITIONERS
7   OFF BECAUSE YOU'RE CLOSEST TO THEM, BUT
8   WE'LL LET THE GENTLEMAN DO THAT.
9          WE'RE GOING TO DO OUR MOTIONS,
10  AND LET ME JUST GET MYSELF SITUATED HERE.
11  I'M NOT QUITE SURE WHICH ORDER THEY ARE SO
12  I'LL JUST PICK UP A BATCH.
13          MR. BLIZZARD:  YOUR HONOR,
14  BEFORE WE GET STARTED WITH THE MOTIONS,
15  CAN I JUST RAISE A CONCERN THAT I HAVE
16  ABOUT TODAY'S NEWSPAPER STORY.
17          THE COURT:  TODAY'S NEWSPAPER
18  STORY?
19          MR. BLIZZARD:  YES.
20          THE COURT:  I HAVEN'T READ THE
21  PAPER.
22          MR. BLIZZARD:  IN TODAY'S
23  PHILADELPHIA INQUIRER, THE HEADLINE
24  STORY -- AND I'LL PASS IT UP TO THE
25  COURT -- THE HEADLINE STORY IN THE LOCAL

---

Page 5

1      (DOWNARD, ET AL VS. WYETH)
2   NEWS SECTION IS ABOUT THE RESULTS FROM THE
3   TRIALS A COUPLE WEEKS AGO.
4          THIS APPEARS TO ME TO BE
5   STRAIGHT OUT OF WYETH'S PUBLIC RELATIONS
6   MACHINE.  IT HAS ALL OF THEIR THEMES IN
7   IT, THIS THEME OF OUT OF STATE PEOPLE COME
8   HERE WITHOUT DOCUMENTED INJURIES TO TRY TO
9   MAKE RECOVERY FOR SOMETHING THAT IS COMMON
10  IN THE GENERAL POPULATION.
11          THEY ALSO TALK ABOUT THEY COULD
12  HAVE STAYED IN THE SETTLEMENT AND RECEIVED
13  $6,000 AND A GUARANTEE OF MEDICAL CARE.
14  ESSENTIALLY EVERYONE OF THEIR THEMES IS IN
15  THIS NEWS STORY.  IT WOULD BE DIFFICULT
16  FOR US TO IMAGINE A SITUATION WHERE NO
17  JUROR HAS SEEN THIS.  BUT IT CERTAINLY IS
18  POSSIBLE.
19          AND SO I'M NOT REALLY ASKING FOR
20  ANY REMEDY AT THIS POINT IN TIME.  I
21  WANTED TO BRING IT TO THE COURT'S
22  ATTENTION AND THEN PERHAPS AFTER THE COURT
23  HAS AN OPPORTUNITY TO READ IT, LET --
24  MAYBE CONSIDER WHAT REMEDIES, IF ANY, ARE
25  IN ORDER.

Page 54

(DOWNARD, ET AL VS. WYETH)

1    THE COURT: IT'S WITHIN THE FOUR
2    CORNERS OF HIS FIRST REPORT THOUGH. I
3    MEAN IT'S WITHIN THE FOUR CORNERS, IS IT
4    NOT?
5       MS. SULLIVAN: NO, YOUR HONOR.
6    IT WOULD BE OUR POSITION THE FIRST REPORT
7    HAS NO MENTION OF SYMPTOMS WHATSOEVER.
8    AND IT WAS ONLY IN RESPONSE TO THE GIFFEAR
9    MOTION THAT BELATEDLY DR. TRIAL DR.
10   DEVAUGHN OPINES ABOUT SYMPTOMS.
11      THE COURT: WHEN DID YOU GET
12   THIS SUPPLEMENTAL REPORT?
13      MS. SULLIVAN: IT WAS IN
14   RESPONSE TO OUR GIFFEAR MOTION, SO IT
15   WOULD HAVE BEEN APPROXIMATELY THREE WEEKS
16   AGO.
17      THE COURT: WHAT PREJUDICE HAVE
18   YOU SUFFERED?
19      MS. SULLIVAN: OUR EXPERT HAS
20   BEEN ON VACATION. HE'S NOT YET HAD A
21   CHANCE TO REVIEW THE NEW REPORT. IT
22   CHANGES TRIAL PREPARATION, IT CHANGES
23   CROSS-EXAMINATION PREPARATION.
24      THE COURT: HAVING HEARD THE

Page 55

(DOWNARD, ET AL VS. WYETH)

1    ARGUMENTS ON THIS MOTION, THE MOTION IS
2    DENIED.
3       I THINK I'M COMING DOWN TO THE
4    MORE DIFFICULT ONES.
5       THIS IS DEFENDANT'S MOTION IN
6    LIMINE TO PRECLUDE THE EXPERT TESTIMONY OF
7    PAUL GENECIN, G-E-N-E-C-I-N.
8       MR. MILLER: WE'RE NOT GOING TO
9    CALL DR. GENECIN SO THAT IS MOOT.
10      THE COURT: OKAY.
11      I THINK THE NEXT ONE IS WYETH
12   MOTION REQUESTING REVERSE BIFURCATION
13   WHICH THE COURT HAS ALREADY GRANTED.
14      DO WE NEED A BREAK, FIVE MINUTE
15   BREAK?
16      MS. SULLIVAN: I'M FINE.
17      THE COURT: WELL, I DO. LET'S
18   TAKE A FIVE MINUTE BREAK.
19      MR. ROSEMOND: I JUST WANT TO
20   MAKE SURE, I KNOW I ASKED THIS BEFORE BUT
21   DO YOU HAVE A COPY OF OUR WILLIAMS
22   BAILEY'S MOTION IN LIMINE BECAUSE WE DID
23   IT LIKE LAST TIME. WE HAD ABOUT 60 SOME
24   ODD ONES. THEY'RE SEPARATE MOTIONS BUT

Page 56

(DOWNARD, ET AL VS. WYETH)

1    THEY'RE WITHIN A VERY LARGE DOCUMENT.
2       THE COURT: I THINK IT'S THIS
3    ONE.
4       - - -
5       (SHORT RECESS WAS TAKEN.)
6       - - -
7       THE COURT: I THINK I AM NOW ON
8    PLAINTIFFS' MOTIONS. I THINK.
9       MR. YANNELLA: WE HAD --
10      MR. ROSEMOND: WAS THAT FILED
11   THROUGH CURRAN AND BYRNE? BECAUSE THEN IT
12   WOULD BE OURS.
13      MR. YANNELLA: YOUR HONOR,
14   THERE'S ACTUALLY A COUPLE MORE WYETH
15   MOTIONS.
16      THE COURT: I KNOW THERE ARE. I
17   JUST SEE THEM RIGHT HERE.
18      MR. YANNELLA: OKAY.
19      THE COURT: WE'LL GET THEM ALL.
20      WYETH MOTION FOR SEPARATE TRIAL.
21   I THOUGHT I JUST DID ALL THESE.
22      MR. YANNELLA: THAT ONE WE DID.
23      MR. ROSEMOND: THOSE WERE THE
24   FIRST ONES.

Page 57

(DOWNARD, ET AL VS. WYETH)

1       THE COURT: WE TRIED TO PUT THEM
2    ALTOGETHER, AND THIS MAY HAVE JUST ENDED
3    UP BY ITSELF.
4       I'VE ALREADY DENIED THE
5    PROGRESSION ONES; IS THAT CORRECT?
6       MS. SULLIVAN: YES, YOUR HONOR.
7       THE COURT: I'M SORRY.
8       MS. SULLIVAN: YES.
9       MR. YANNELLA: THAT IS CORRECT,
10   YOUR HONOR.
11      MR. ROSEMOND: YES.
12      THE COURT: THE MOTIONS FOR
13   SUMMARY JUDGMENT, PLAINTIFFS' RESPONSES.
14      THOSE ARE JURY INSTRUCTIONS.
15      DEFENDANT'S MOTION TO EXCLUDE
16   INFLAMMATORY EVIDENCE.
17      MR. YANNELLA: YES, YOUR HONOR.
18   WE HAVE AN AGREEMENT TO ALL BUT ONE OF THE
19   DOCUMENTS. AND THE DOCUMENT IN DISPUTE IS
20   THE 1998 CONSIDINE MEMO WHICH ACTUALLY
21   YOUR HONOR RULED ON THIS LAST MONTH AND AT
22   THE TRANSCRIPT IT'S PAGES 23 TO 27. YOU
23   PRECLUDED THE DOCUMENT, BUT I UNDERSTAND
24   THE PLAINTIFFS WANT TO REVISIT THE ISSUE.

MASTER FILE NO. M-00-001-A

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| SEVENTH ADMINISTRATIVE | § | TOM GREEN COUNTY, TEXAS |
| JUDICIAL REGION CONSOLIDATED | § | |
| DIET DRUG LITIGATION | § | 51ST JUDICIAL DISTRICT |

CAUSE NO. 18,463

| | | |
|---|---|---|
| ROSA CASTERENO, et al. | § | IN THE DISTRICT COURT OF |
|    Plaintiffs,[1] | § | |
| | § | |
| v. | § | NOLAN COUNTY, TEXAS |
| | § | |
| WYETH, et al. | § | |
|    Defendants. | § | 32ND JUDICIAL DISTRICT |

**ORDER GRANTING WYETH'S MOTION**
**FOR REVERSE BIFURCATION OF TRIAL**

Came on to be heard on this _12_ day of _January_ 2006, Wyeth's Motion for

Reverse Bifurcation of Trial. After considering the arguments of counsel and evidence

presented, the Court, based upon the National Class Action Settlement Agreement and its effect

on this intermediate opt-out case, finds that the trial of this matter should be conducted in two

phases before the same jury and GRANTS the motion. In the first phase, the following issues

will be tried to verdict: 1) whether the Plaintiff's heart valve has been injured; 2) if so, whether

that injury was caused in fact by Defendant's medication; and 3) if so, the amount of

compensatory damages to which Plaintiff is entitled. If a verdict is rendered for Plaintiff on each

of those issues, then in the second phase the same jury will consider the issues of liability on the

causes of action asserted, including the issues of whether Defendant's conduct and/or product

SIGNED this _12_ day of

HONORABLE BARBARA L. WALTHER

---

Plaintiffs Castereno and Calzada have dismissed their cases; only Plaintiff Ortiz remains.

MASTER FILE NO. M-00-001-A

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| SEVENTH ADMINISTRATIVE | § | TOM GREEN COUNTY, TEXAS |
| JUDICIAL REGION CONSOLIDATED | § | |
| DIET DRUG LITIGATION | § | 51ST JUDICIAL DISTRICT |

CAUSE NO. 18028

| | | |
|---|---|---|
| DIANNE PENCE, | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| v. | § | CALLAHAN COUNTY, TEXAS |
| | § | |
| WYETH, and RAUL N. CALVO, Jr., | § | |
| Defendants | § | 42nd JUDICIAL DISTRICT |

## ORDER GRANTING WYETH'S MOTION
## FOR REVERSE BIFURCATION OF TRIAL

Came on to be heard on this _12_ day of _January_ 2006, Wyeth's Motion for

Reverse Bifurcation of Trial. After considering the arguments of counsel and evidence

presented, the Court, based upon the National Class Action Settlement Agreement and its effect

on this intermediate opt-out case, finds that the trial of this matter should be conducted in two

phases before the same jury and GRANTS the motion. In the first phase, the following issues

will be tried to verdict: 1) whether the Plaintiff's heart valve has been injured; 2) if so, whether

that injury was caused in fact by Defendant's medication; and 3) if so, the amount of

compensatory damages to which Plaintiff is entitled. If a verdict is rendered for Plaintiff on each

of those issues, then in the second phase the same jury will consider the issues of liability on the

causes of action asserted, including the issues of whether Defendant's conduct and/or product

defect was the proximate and/or producing cause of the injuries found in the first phase.

SIGNED this _12_ day of _January_, 2006.

HONORABLE BARBARA L. WALTHER

Jones,Flygare,Brown&Whar                              ☒002/002

# 121ˢᵀ DISTRICT COURT
500 W. Main, Rm. 302W
Brownfield, Texas 79316-4335

Kelly G. Moore
Presiding Judge

Phone (806)637-7742
Fax (806)637-8011

Email Ninthregion@aol.com



Court Coordinator
Claudette Burke
(806)637-7742

Court Reporter
Jamie Jackson
(806)637-6958

Terry*Yoakum

January 10, 2006

James L. Wharton
Jones, Flygare, Brown & Wharton
P.O. Box 2426
Lubbock, Texas 79408-2426

Kenneth J. Ferguson
Clark, Thomas & Winters
P.O. Box 1148
Austin, Texas 78767

Adam Peavy
Fleming & Associates, L.L.P.
1330 Post Oak Blvd., Suite 3030
Houston, Texas 77056

Re: Cause No. 8154 in the 121ˢᵗ District Court of Yoakum County, Texas; Sally H. Bradford vs. Wyeth

Counsel:

The court, after considering DEFENDANT'S MOTION FOR REVERSE BIFURCATION OF TRIAL is of the opinion that the granting of the Motion is appropriate in this case.  Defendant is directed to prepare and submit an order to the court.

Sincerely,

Kelly G. Moore
KGM/cb

cc:    District Clerk

received
FIT
1210

01/11/2006 WED 11:33 [TX/RX NO 8499] ☒002

CAUSE NO. 03-05-19169

| | | |
|---|---|---|
| MARGARET ROGERS, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 286TH JUDICIAL DISTRICT |
| | § | |
| WYETH AND CRAIG SCOTT | § | |
| BRADLEY, M.D. | § | HOCKLEY COUNTY, TEXAS |

## ORDER GRANTING WYETH'S MOTION
## FOR REVERSE BIFURCATION OF TRIAL

Come to be heard on this 21st day of December 2005, Wyeth's Motion for Reverse

Bifurcation of Trial. After considering the arguments of counsel and evidence presented, the

Court, based upon the National Class Action Settlement Agreement and its effect on this

intermediate opt-out case, finds that the trial of this matter should be conducted in two phases

before the same jury and GRANTS the motion. In the first phase, the following issues will be

tried to verdict: 1) whether the Plaintiff's heart valve has been injured; 2) if so, whether that

injury was caused in fact by Defendant's medication; and 3) if so, the amount of compensatory

damages to which Plaintiff is entitled. If a verdict is rendered for Plaintiff on each of those

issues, then in the second phase the same jury will consider the issues of liability on the causes of

action asserted, including the issues of whether Defendant's conduct and/or product defect was

the proximate and/or producing cause of the injuries found in the first phase.

SIGNED this 3rd day of Jan. , 2006

Original Signed By
Judge Harold Phelan

_____
HONORABLE HAROLD PHELAN
Judge, 286th Judicial District Court of
Hockley County, Texas

FILED at 4:05 o'clock M
1-3-06
DENNIS PRICE
District Court Clerk, Hockley Co., TX
By_____Deputy

NO. 03-05-19179

| | | |
|---|---|---|
| CHERYL A. HALEY AND<br>RHONDA C. ROGERS-TUE, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | HOCKLEY COUNTY, T E X A S |
| | § | |
| WYETH, DR. MICHAEL G. BAILEY<br>AND DR. CRAIG BRADLEY, | § | |
| | § | |
| | § | |
| Defendants. | § | 286TH JUDICIAL DISTRICT |

## ORDER GRANTING WYETH'S MOTION
## FOR REVERSE BIFURCATION OF TRIAL

Come to be heard on this 21st day of December 2005, Wyeth's Motion for Reverse

Bifurcation of Trial. After considering the arguments of counsel and evidence presented, the

Court, based upon the National Class Action Settlement Agreement and its effect on this

intermediate opt-out case, finds that the trial of this matter should be conducted in two phases

before the same jury and GRANTS the motion. In the first phase, the following issues will be

tried to verdict: 1) whether the Plaintiff's heart valve has been injured; 2) if so, whether that

injury was caused in fact by Defendant's medication; and 3) if so, the amount of compensatory

damages to which Plaintiff is entitled. If a verdict is rendered for Plaintiff on each of those

issues, then in the second phase the same jury will consider the issues of liability on the causes of

action asserted, including the issues of whether Defendant's conduct and/or product defect was

the proximate and/or producing cause of the injuries found in the first phase.

SIGNED this 3rd day of _____Jan._____, 2006.

Original Signed By
Judge Harold Phelan

HONORABLE HAROLD PHELAN
Judge, 286th Judicial District Court of
Hockley County, Texas

FILED at 4:08 o'clock P M
DENNIS PRICE
District Court Clerk, Hockley Co., TX
By_____Deputy

1-3-06