# EXHIBIT 4

```
 1
 2            THE COURT OF COMMON PLEAS OF PHILADELPHIA
               FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
 3                     CIVIL TRIAL DIVISION
                            -  -  -
 4
 5
 6   JENNIE B. NELSON and            : JANUARY TERM, 2004
     LAWRENCE NELSON, w/h,           :
 7                   Plaintiffs,     :
                                     :
 8              vs.                  :
                                     :
 9   WYETH PHARMACEUTICALS, INC.,    :
     et al.,                         :
10                   Defendants.     : NO. 1670
11
12
                            -  -  -
13                   Pretrial Conference
                            -  -  -
14
                     Tuesday, September 5, 2006
15                   Commencing at 1:30 p.m.
16                          -  -  -
                     Courtroom 646, City Hall
17                   Philadelphia, Pennsylvania
                            -  -  -
18
19   BEFORE:  THE HONORABLE NORMAN ACKERMAN, JUDGE
20                          -  -  -
21
22
23
24
25
       REPORTED BY:  Bernadette Black Berardinelli, RMR, CRR
```

```
 1
 2     APPEARANCES:
 3
 4
           TOBIAS MILLROOD, ESQUIRE
 5         Schiffrin & Barroway, LLP
               Three Bala Plaza East, Suite 400
 6             Bala Cynwyd, PA  19004
                        - and -
 7         KENNETH M. SUGGS, ESQUIRE
           Janet, Jenner & Suggs, LLC
 8             500 Taylor Street
               Columbia, SC 29201
 9                      - and -
           ROBERT K. JENNER, ESQUIRE
10         Janet, Jenner & Suggs, LLC
               1829 Reisterstown Road, Suite 320
11             Baltimore, MD 21208
                        - and -
12         ERIK B. WALKER, ESQUIRE
           Hissey, Kientz & Herron, P.L.L.C.
13             16800 Imperial Valley Drive, Suite 130
               Houston, TX 77060
14
               For the Plaintiffs;
15
16
           MICHAEL T. SCOTT, ESQUIRE
17         ANDREW J. TREVELISE, ESQUIRE
           TRACY G. WEISS, ESQUIRE
18         AMY M. VANNI, ESQUIRE
           Reed Smith, LLP
19             2500 One Liberty Place
               1650 Market Street
20             Philadelphia, Pennsylvania 19103
21               Counsel for the Defendants.

22                      - - -

23
24
25
```

1

2      Walker of Hissey, Kientz & Herron prepared to

3      address this issue on reversion bifurcation, if

4      I may.

5              MR. WALKER:  Actually, you stated most

6      of our positions.  I will probably be a little

7      repetitive.

8              THE COURT:  I didn't mean to do that.

9      I have been in this position before in the mass

10     tort program.  How long did I do that?  Four

11     years as mass tort judge?

12             MR. WALKER:  I am glad you did.  I am

13     afraid you stated it better than I will right

14     now.

15             Our ultimate feeling is that reverse

16     bifurcations goals would not be achieved in a

17     tort that has not even had its first lawsuit

18     yet.

19             THE COURT:  Why not?

20             MR. WALKER:  Because the goals of

21     reverse bifurcation, at least two principal

22     goals from the case law I've seen are to

23     promote efficiencies in the trial of cases and

24     to facilitate settlement.  And neither of those

25     goals would be realized in a litigation that

1

2          has not yet had any liability evidence

3          presented to any jury.

4                  THE COURT:  They are our goals in

5          every type of case, whether they're mass tort

6          cases or other cases that I've had some

7          experience handling, mostly medical mal cases.

8          When I was one of the team leaders before I

9          became coordinating Judge for the mass tort

10         program, their goals each and every time is to

11         sit here in front of a jury or if you sit here

12         in front of Judge Ackerman and we're getting

13         ready for trial -- in many instances during my

14         pretrial conference, I would talk to counsel

15         about the ultimate -- which is the settlement

16         of the case.

17                 But you might have missed what I said:

18         Sympathy is also a reason.  To avoid

19         sympathy -- and you will hear the judge, in my

20         remarks to the jury, tell them what their

21         duties and responsibilities are once they are

22         sworn as jurors in this litigation.  And

23         they'll have to find the facts in this case,

24         find the true facts from the evidence that is

25         being submitted just here in this courtroom.

1

2      And those facts must be determined without

3      sympathy for, prejudice against any of the

4      litigants.

5             So when I talk about sympathy, I am

6      talking about a jury making a determination on

7      a very important issue of causation, medical

8      causation, without having heard any testimony

9      concerning the conduct of the defendant.

10            Am I afraid of that?  Well it is not a

11     question of being afraid.  Maybe I used the

12     wrong term.  But I'm suspicious to the point

13     that if the jury determines conduct the member

14     of Plaintiffs Bar feel that there is, conduct

15     which would justify the imposition of damages

16     in excess of compensatory damages in this

17     litigation, then I'm concerned about the jury

18     rendering a determination on the issue of

19     medical causation by taking into consideration

20     the conduct for which the testimony has already

21     been introduced.

22            And this Court wants to make certain

23     that all of the issues are determined without

24     any recourse, sympathy, or prejudice, and

25     consequently would not, in my judgment -- in

1

2          the past one of the reasons, main reasons, was

3          to allow the jury to determine the issue of

4          medical causation without hearing anything that

5          could cause them to determine it other than on

6          the bases of the facts in this case.  You may

7          not like the conduct, but that should have no

8          basis in the determination of whether or not

9          the taking of this hormone therapy drug was a

10         factual cause in the injuries sustained by

11         Plaintiff.

12                 How do you respond to that, Counsel?

13                 MR. WALKER:  Well, certainly, Judge,

14         there always is an interest in reducing

15         prejudice.  That is an interest that exists in

16         any case, even cases that do not involve toxic

17         torts, cases that don't involve any kind of

18         scientific causation issues.  That issue is

19         always prevalent in any case where liability is

20         to be decided.  But it did not result in

21         reverse bifurcation in every case because we do

22         have confidence in the ability of juries to

23         follow court's instructions and obey the

24         Court's instructions.

25                 In addition, in this case, the

1

2       Defendants' attempt to kind of break the

3       evidence down into causation evidence and

4       liability evidence is destined to fail, just by

5       way of example.

6               One of the big issues will be

7       epidemiological evidence, of the relationship

8       between hormone therapy and breast cancer.

9       That evidence is undeniably relevant to prove

10      causation.  But it is also relevant to prove

11      the defendants' duty to warn and duty to test

12      to obtain an adequate warning.

13              So we will present evidence in both

14      phases of the trial if it is bifurcated.  But

15      certainly to prove both liability and

16      causation, we will introduce evidence of what

17      the science showed at various points in time --

18              THE COURT:  Well, you certainly have a

19      right to do so.  And you certainly would have a

20      right to do so even if I bifurcated that

21      without requiring you to know duplicity of

22      testimony.  Because in the second phase, you

23      could testify what you're talking about, which

24      is relevant to the issue of medical causation,

25      which very well might also be necessary for you

 1

 2          to argue about a duty on the part of the

 3          defendant in the second phase of litigation.

 4                    The jury won't take a blind ear to

 5          that.

 6                    But you also have to understand and

 7          realize what success we have had here in

 8          Philadelphia County.  I am not saying you

 9          should -- my son-in-law practices in Baltimore.

10          And I respect the attorneys in Baltimore and

11          the Judges in Baltimore.  But I have no idea as

12          to whether or not they had a mass tort program

13          in that part of Maryland, and I have no idea

14          what those judges' personal histories as to

15          whether or not it has been successful as far as

16          reverse bifurcation is concerned.

17                    While you indicate that reverse

18          bifurcation shouldn't be necessary in this type

19          of case, it also has helped in reducing the

20          amount of time that a trial will occur.

21          Because if counsel is correct for Defendants,

22          and the jury finds no damage, then this would

23          be the end of the trial.  There wouldn't be any

24          reason to go ahead and have a second phase of

25          litigation.  And in my judgment, the first

```
 1

 2        phase probably, if it is similar to the cases

 3        in our other mass tort program, we'll finish

 4        the first phase in no longer than ten days or

 5        two weeks.  So we can save trial time for three

 6        weeks if the jury makes a determination in

 7        favor of defense.

 8              I've been through all of these

 9        arguments.  And I want to you say sympathy is

10        not the only reason.  I think it has been

11        justified in our system.  I think our system

12        has been successful with handling reverse

13        bifurcation.  And while I did not make it

14        global, because I felt it is the responsibility

15        of the trial judge to make that decision, I at

16        no time during my stay as coordinating judge

17        wanted to influence any of my colleagues or

18        state that they should do it because Judge

19        Ackerman is doing it.  I think that all of

20        them, after their first handling in the

21        traditional fashion, agreed with this Court and

22        held that reverse bifurcation was the

23        appropriate way to go.

24              And I am going to enter an Order

25        granting the motion for reverse bifurcation
```

1

2          this 5th day of September, trial shall proceed

3          on a reverse bifurcated basis with Phase I

4          addressing whether Plaintiff suffered a

5          compensable injury resulting from her use of

6          hormone replacement therapy; Phase II, if

7          necessary, will address the issues of statue of

8          limitations, liability and punitive damages.

9                And let me make a note, Counselor, if

10         we get to Phase II, if we get to Phase II, the

11         last question would be for the jury to

12         determine whether the conduct of Defendant is

13         outrageous before we get into the wealth of

14         reasons of why.

15               MR. SCOTT:  That is agreed with us

16         certainly, Your Honor.

17               THE COURT:  That is what this Court

18         has done in many of our cases, even prior to my

19         being coordinated judge of Complex Litigation

20         Center.

21               With that, the Court will enter the

22         order dated 9/5/2006.

23               MR. MILLROOD:  Your Honor, will you,

24         of course, just note plaintiffs' exceptions.

25               THE COURT:  You get automatic

1

2      exceptions in Pennsylvania, unless that has

3      changed, Counsel.

4              Sally, will you, at the end of the

5      day, take this to Jan, have it docketed, and

6      copies sent to counsel?

7              All right.  That being said, let's go

8      over your list.  First of all, I am going to

9      ask you which ones are being pressed and which

10     ones haven't been.  And then I want you to tell

11     me which are necessary for Phase I.  Because I

12     am not going to go into 47 motions if some of

13     them are not necessary for Phase I, which we're

14     going to start.

15             MR. SCOTT:  Just a second, Your Honor.

16     I am scrolling down this list.  If you could

17     give us a minute.

18             THE COURT:  Let me just say, which

19     ones are unopposed?  And I received a letter

20     from Wyeth indicating -- I count four.  They

21     said five.

22             Plaintiffs' Motion in Limine No. 5 is

23     granted as unopposed.  If I am wrong, you tell

24     me I am wrong.

25             MR. SCOTT:  You're right, Your Honor.