UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>**PRETRIAL ORDER NO. 61 RE: BIFURCATION**<br>Dkt. No. 2282, 2302 |

Monsanto's request to bifurcate the three bellwether trials, with the first phase to address causation only and the second phase to address all remaining liability and damage issues, is granted. Although this type of bifurcation is unusual and should be done with caution – both generally and in the context of MDL bellwether trials – it is warranted here. A significant portion of the plaintiffs' case involves attacks on Monsanto for attempting to influence regulatory agencies and manipulate public opinion regarding glyphosate. These issues are relevant to punitive damages and some liability questions. But when it comes to whether glyphosate caused a plaintiff's NHL, these issues are mostly a distraction, and a significant one at that.

The plaintiffs assert that this type of bifurcation is unfair because jurors will be left wondering, during the causation phase, how glyphosate could possibly be dangerous if it has gone largely unregulated for decades. But this relatively minor concern is best addressed by an instruction to jurors that they must not defer to regulatory agencies, and must instead reach their own judgment based on the evidence presented at trial. This concern is further obviated by the likelihood that jurors will learn during the causation phase that IARC has classified glyphosate as a probable carcinogen. In arguing against bifurcation, the plaintiffs assume that evidence of the IARC classification would be inadmissible during the causation phase. Although the Court will reserve final judgment on this question until the pretrial conference, it seems likely that jurors will,

during the causation phase, need to receive at least some limited information about the IARC classification through expert testimony (albeit with an appropriate instruction about its limited utility in this context). In addition, if the plaintiffs have evidence that Monsanto manipulated the outcome of scientific studies, as opposed to agency decisions or public opinion regarding those studies, that evidence may well be admissible at the causation phase. Any such evidence will likely overlap with evidence of liability, but it will not be impossible, as the plaintiffs contend, to separate evidence of causation from evidence of liability.[1]

The plaintiffs also assert that bifurcating causation from the remaining issues limits the informational value of the bellwether trials. But a trial court's primary goal, even in an MDL bellwether, should be to conduct the fairest trial possible for the parties who are actually at trial. Moreover, the plaintiffs are likely wrong, at least in the context of this particular MDL, that bifurcation would diminish the informational value of the bellwethers. Monsanto has already lost a $78.5 million judgment in state court, in a trial that was not bifurcated. If Monsanto were also to lose on the causation question in a bifurcated trial in federal court, the parties would learn a great deal about Monsanto's chances of success (or lack thereof) in all future cases, however structured. And even if a jury found for Monsanto on causation, that would still offer the parties another data point (in addition to the state court trial from 2018 and the anticipated state court trials in 2019) as they attempt to value the cases for settlement purposes.

**IT IS SO ORDERED.**

Date: January 3, 2019

_____
VINCE CHHABRIA
United States District Judge

---

[1] If bifurcation turns out to be more difficult than the Court assumes, the matter can be revisited in advance of the second bellwether trial. But absent further notice, all three bellwether trials will be bifurcated, because the Court has concluded that this is the fairest way to proceed in a trial addressing the carcinogenicity of glyphosate.