**BAUM  HEDLUND  ARISTEI  GOLDMAN** PC
———— CONSUMER ATTORNEYS ————

Washington, D.C. Office
2101 L Street, N.W.
Suite 800
Washington, D.C. 20037-1526
Office (202) 466-0513
Fax (202) 466-0527

10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Office (310) 207-3233
Fax (310) 820-7444
www.baumhedlundlaw.com

Philadelphia Office
1500 Market Street
12th Floor East Tower
Philadelphia, PA 19102-2100
Office (215) 665-5659
Fax (215) 569-8228

January 3, 2019

*VIA CM/ECF*
Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**   *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC: Discovery Letter

Dear Judge Chhabria:

The Parties have reached an impasse on issues related to certain of Monsanto's Responses to Plaintiffs' First Set of General Requests for Admission (RFAs) and First Set of General Interrogatories (Roggs). Plaintiffs' Requests along with Monsanto's responses are attached as Exhibits A & B.

**Plaintiffs' Position**

For all issues below, Plaintiffs request additional or supplemental responses by January 14, 2019, so that they can be used as part of the Rule 30(b)(6) deposition set for January 23, 2019.

**ISSUE # 1:  Interrogatory Responses Prior to Monsanto's Deposition**
Monsanto refuses to provide substantive responses to Roggs 1, 2, and 12.  Instead, Monsanto states that Plaintiffs may ask about these topics at the upcoming Rule 30(b)(6) deposition.  But, this is not a valid reason to avoid providing a response.  Written discovery is specifically designed to focus issues prior to oral discovery.  Plaintiffs want written responses to use *as part* of the deposition.  Indeed, Monsanto consistently demands written responses to discovery prior to taking any Plaintiff deposition.

**ISSUE # 2:  Non-Responsive and Improper "Clarification" in RFAs (Exhibit C)**
Rule 36(a)(4) provides that in answering an RFA, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Nothing in the Rule allows an answering party to inject non-responsive argument into an RFA response. The Rule explains that "[a] denial must fairly respond to the substance of the matter; and when *good faith* requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.* (emphasis added).  Thus, adding qualification is only permitted when, in good faith, that additional information is needed to admit or deny the request.  If a party does not comply with this Rule, "the court may order either that the matter is admitted or that an amended answer be served."  *Id.* at 36(a)(6).

In responding to RFAs 4, 5, 6, and 7, Monsanto has injected "clarification" that is neither in good faith nor responsive.  A list of the requests and Monsanto's responses are listed on Exhibit C.  Plaintiffs have identified the extraneous language in **Red** and the responsive language in **Blue**.  Plaintiffs request the

Court either strike the Red language or order Monsanto to provide a proper response without it.

- **RFA No. 4:** This request asks Monsanto to admit "that Monsanto has not conducted a long-term animal carcinogenicity study on glyphosate since 1991." Monsanto proceeds to provide a substantive response and then, out of nowhere, notes that other glyphosate manufacturers have conducted such studies and then claims "that regulators reviewing these [other] studies have concluded that they do not support a finding that glyphosate causes cancer in humans." Exh. C at 1. This language is non-responsive to the request. Plaintiffs did not ask about other glyphosate manufacturers or regulatory agencies.
- **RFA No. 5:** This request asks Monsanto to admit "that Monsanto has never conducted a long-term animal carcinogenicity study on any glyphosate formulation." Monsanto proceeds to provide a substantive response and then injects argument about standard industry practices—an issue never raised in the RFA. Exh. C at 1. This is non-responsive argument.
- **RFA No. 6:** This request asks Monsanto to admit "that Monsanto is not precluded by any applicable law, regulation, or ordinance from conducting a long-term animal carcinogenicity study [on] a glyphosate formulation." Exh. C at 2. Monsanto admits this and then adds an argument about the significance of this admission. This is not responsive to the RFA. If Monsanto wants to argue the significance of an admission, it can so at trial, not here.
- **RFA No. 7:** This request asks Monsanto to admit "that Monsanto has never conducted a long-term animal carcinogenicity study on any surfactant used in a glyphosate formulated product." Monsanto provides a responsive answer and even a responsive qualification. *See* Exh. C at 2-3. But then, Monsanto inserts nearly a page of non-responsive argumentation. It is completely non-responsive as C*carcinogenicity* of surfactants.

**ISSUE # 3: Insufficient Response to RFA No. 8**
RFA No. 8 asks Monsanto to admit "that Monsanto has never conducted an epidemiology study on glyphosate or any glyphosate-based formulation to determine whether there is an association between exposure and non-Hodgkin lymphoma." Monsanto denies this, citing the Farm Family Exposure Study (FFES). Exh. A at 7. A copy of the FFES is attached as Exhibit D. Monsanto then makes an argument that additional epidemiology studies by Monsanto were not necessary because other researchers did some—even though the RFA never asked about other researchers. This response is insufficient, and the Court should deem this RFA admitted pursuant to Fed. R. Civ. P. 36(a)(6). First, the FFES is not an epidemiology study. "Epidemiology is 'the field of public health and medicine that studies the incidence, distribution, and etiology of disease in human populations.'" *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2018 WL 3368534, at *7 (N.D. Cal. July 10, 2018) (citation omitted). The FFES, as its name suggests, looked at *exposure*, it did not assess the "incidence, distribution, and etiology of" any disease, let alone NHL, as was specifically asked in the RFA. Second, even if the FFES was used in the Agricultural Health Study (AHS)—a spurious claim considering it was never cited or referenced in the AHS publications related to glyphosate (De Roos 2005 or Andreotti 2018)—it is still not an epidemiological study. Third, even if one considered the FFES an epidemiological study, there is no dispute that the FFES did not look at or even consider whether glyphosate is associated with NHL, as the RFA specifically asks. NHL is never mentioned in the publication. Moreover, Monsanto's discussion of the AHS—a study Monsanto did not conduct—is completely non-responsive to the RFA and is just argument. Monsanto did not add this information in good faith. Monsanto should either be ordered to properly respond to the RFA or the Court should simply deem it admitted.

**BAUM HEDLUND ARISTEI GOLDMAN** PC
CONSUMER ATTORNEYS

January 3, 2019
Page 3

**ISSUE # 4: Managing Agent Discovery, RFAs 43-107**
Under California law, before a Court can impose punitive damages against a corporation, the conduct allowing for the punitive damages, i.e., malice, fraud, or oppression, must have been done by, authorized by, known about by, or ratified by a managing agent. *See, e.g.*, Judicial Council Of California Civil Jury Instruction ("CACI") 3948. And, under California law, managing agents are "those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573, 981 P.2d 944, 951 (Cal. 1999). In the *Johnson* case, Monsanto argued to the Court and the jury that the individuals identified by the plaintiffs were not managing agents and, thus, their conduct could not be imputed to Monsanto.

To address this issue through discovery, Plaintiffs served RFAs asking Monsanto to admit or deny that specific individuals, i.e., the custodians searched by Monsanto for responsive documents— "exercise[] and/or exercised substantial discretionary authority over decisions that ultimately determined Monsanto's policies as it relates to glyphosate and GBFs." Exh. A at 22-46. Similarly, Plaintiffs served Rogg No. 10, which asked Monsanto to "Please identify those individuals within Monsanto, between 1970 and the present, that exercised substantial discretionary authority over decisions that ultimately determined Monsanto's policies as it relates to glyphosate and GBFs, including but not limited to those individuals who have been deposed in this MDL and other Roundup-cancer litigation." In response to Plaintiffs' RFAs, Monsanto denied each one. During the meet-and-confer, Monsanto's counsel clarified that these denials were not substantive, but were denials because the RFAs are "hopelessly overbroad" in addition to its other objections. Regarding Rogg No. 10, Monsanto refuses to provide any substantive answer. *See* Exh. B at 13. This discovery is relevant—it goes to a specific element of punitive damages. The burden associated with these requests is not substantial nor disproportional to the needs of the case. Monsanto should know whether these individuals, or which individuals, were managing agents. If it does not know, then it should say so.

**ISSUE # 5: List of Governments in the United States that Have Banned or Restricted GBFs**
Rogg No. 19 asks Monsanto to "identify all governmental entities in the United States, including states, municipalities, school districts, park districts, etc., that have banned, restricted the use, or required carcinogenicity warnings for glyphosate-based herbicides, and specify the date when that went into effect." Exh. B at 20-21. Monsanto refuses to respond to this Rogg citing various objections. None of these are availing. This list is clearly relevant, especially if Monsanto plans to argue to the jury that governments around the world have determined that GBFs are safe. If numerous governments have limited or restricted GBFs, it is relevant to notice, i.e., Monsanto's knowledge of a risk, and the credibility of those witnesses and/or institutions (IARC) that have agreed that GBF's pose a health risk. Monsanto, with its comprehensive Freedom to Operate (FTO) program, is uniquely suited to identify those governments within the United States that have restricted or banned GBFs.

**Monsanto's Position**

**MONSANTO'S RESPONSE TO ISSUE # 1: ROG No. 1** asks Monsanto to "Please describe and define Freedom to Operate (FTO) and how Monsanto uses or implements FTO as it relates to glyphosate and glyphosate-based formulations." **ROG No. 2** asks Monsanto to "Please describe and define Let Nothing Go (LNG) and how Monsanto uses or implements LNG as it relates to glyphosate and glyphosate-based formulations." **ROG No. 12** asks Monsanto to "Please describe what efforts, if any, that Monsanto directly, or through an intermediary, has undertaken to direct internet searches to news

BAUM HEDLUND ARISTEI GOLDMAN PC
CONSUMER ATTORNEYS

January 3, 2019
Page 4

articles, including but not limited paid listings on Reddit and Google.  Please describe whether this activity has been directed toward residents living in the San Francisco Bay area and, if so, why."

Plaintiffs' Notice of Rule 30(b)(6) Deposition seeks testimony on these very same topics , and Interrogatory No. 12 is duplicative of RFA No. 37 ("Admit that Monsanto has paid money to steer internet searches to specific news articles.").  Monsanto's Rule 30(b)(6) Corporate Deponent will be prepared to address each of these interrogatories at the deposition currently scheduled for January 23, 2019.  Plaintiffs' unsupported contention that this is "not a valid reason to avoid providing a response" fails under both the Federal Rules and case law.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (The Court "must limit the frequency or extent of discovery…[if it] can be obtained from some other source that is more convenient, less burdensome, or less expensive."); *Buehrle v. City of O'Fallon, Mo.*, 2011 WL 529922, at *3 (E.D. Mo. Feb. 8, 2011) (finding a "thoroughly educated Rule 30(b)(6) deponent" is a more useful and convenient discovery tool than "producing documents and responding to written discovery").  Plaintiffs' contention that they are entitled to written answers on duplicative topics for use in examining a Rule 30(b)(6) witness is similarly without merit.[1]  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (The Court "must limit the frequency or extent of discovery…if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative[.]); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2009 WL 2921310, at *2 (D. Del. Sept. 8, 2009) (finding "repetitive and duplicative discovery" is "not appropriate").  Monsanto therefore requests that this Court limit these duplicative discovery requests strictly to seeking deposition testimony on these Topics from Monsanto's Rule 30(b)(6) Witness.

**MONSANTO'S RESPONSE TO ISSUE # 2:**  Plaintiffs' complaints about **RFA Nos. 4-7** are also unfounded.  Monsanto admitted these requests and, in good faith, appropriately qualified those admissions, because the RFAs wrongly assume the predicate fact that such studies are scientifically feasible and should have been conducted by Monsanto.  Qualifications of this kind are permitted by the Federal Rules.  *See* Fed. R. Civ. P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and qualify or deny the rest."); *Harris v. Koenig*, 271 F.R.D. 356, 374 (D.D.C. 2010) ("Given that it is unreasonable to expect that one party can always accept the other party's characterization of an event, [FRCP 36(4)] permits a party to qualify its answer.").  In fact, Monsanto is not aware of any pesticide or surfactant manufacturer that has conducted these types of studies and there are no regulatory guidelines by which such studies could be conducted and submitted.  Even more, Plaintiffs concede that Monsanto's responses were "responsive," but purportedly take issue with the "clarification" Monsanto provided.  Monsanto's qualifications are necessary to neutralize any improper inferences plaintiffs may draw from Monsanto's admissions.  *See Climco Coils Co. v. Siemens Energy & Automation, Inc.*, 2006 WL 850969, at *1 (N.D. Ill. Mar. 28, 2006) (finding when a request is "technically true," but an explanation is needed to "cure improper inferences," the responding party may in good faith qualify their response.).  Plaintiffs' assertion that Monsanto's response contains "non-responsive argument" or "clarification" should be rejected.

Additionally, Monsanto requests that the Court deny plaintiffs' request for relief as to **RFA No. 4** because it is not ripe for resolution.  Plaintiffs' December 22, 2018 Letter does not raise any issue with

---

[1] Plaintiffs' reference to Monsanto's use of written discovery to obtain documents and information, including medical records, in advance of "taking any Plaintiff deposition" is not analogous in any way to plaintiffs' efforts to try and obtain concessions to their legal and jury arguments from Monsanto, given the millions of pages of documents already in plaintiffs' possession, and because plaintiffs have already taken numerous depositions of current and former employees of Monsanto.

BAUM HEDLUND ARISTEI GOLDMAN PC
CONSUMER ATTORNEYS

January 3, 2019
Page 5

Monsanto's response to **RFA No. 4**, nor did the parties discuss this RFA at the December 28, 2018, telephonic meet and confer.  Monsanto likewise requests that this Court strike plaintiffs' Exhibits C and D, because their attachment to this filing violates this Court's Standing Order regarding discovery letter briefs.  *See* Standing Order for Civil Cases Before Judge Vince Chhabria at 6 ("No exhibits may be submitted with the letter other than any discovery request or response that is the subject of the letter.").

**MONSANTO'S RESPONSE TO ISSUE # 3:**  Monsanto denied **RFA No. 8** because it *has* conducted the Farm Family Exposure Study ("FFES").  Monsanto's in-house epidemiologist at the time, John Acquavella, testified the FFES was conducted per Monsanto's desire to "contribute to the epidemiology literature on glyphosate" in response to early case-control studies that used crude exposure metrics in analyzing potential associations between GBHs (and other pesticides) and NHL.  Dep. Tr. of John Acquavella (In Re: Roundup Prods Liability Lit), Vol. 1 at 45:6-11.  Dr. Acquavella presented his findings to the Agricultural Health Study investigators, who conducted and published similar biomonitoring studies as part of their AHS investigation and used the results of these biomonitoring studies in developing a more accurate intensity-weighted measure of exposure.  Plaintiffs' contention that that FFES is not an epidemiology study is based on an overly-narrow definition of epidemiology.  The World Health Organization, for example, defines epidemiology as the "study of the distribution and determinants of health-related states or events (including disease), and the application of this study to the control of diseases and other health problems." https://www.who.int/topics/epidemiology/en/ (Accessed Jan. 3, 2019).  The study of "determinants" of disease includes the study of human exposures.

**MONSANTO'S RESPONSE TO ISSUE # 4:   RFA Nos. 43 - 107** asks Monsanto to admit that over 60 different employees "exercises and/or exercised substantial discretionary authority over decisions that ultimately determined Monsanto's policies as it relates to glyphosate and GBFs."  Monsanto denied these requests because *plaintiffs* bear the burden of establishing whether an employee is a "managing agent" for the purpose of assessing punitive damages upon the corporation.  *See Kelsey v. Allstate Ins. Co.*, 2005 WL 1773302, at *11 (N.D. Cal. July 26, 2005); Judicial Council Of California Civil Jury Instruction ("CACI") 3948 ("You may also award punitive damages…if [plaintiff] proves [one of] the following…"  They cannot meet this burden by simply requiring Monsanto to admit the legal conclusion.  In addition, plaintiffs concede these RFAs target "a specific element of punitive damages," which is a hotly disputed issue.  *See James v. Maguire Corr. Facility*, 2012 WL 3939343, at *4 (N.D. Cal. Sept. 10, 2012) ("Requests for admissions should not be used to establish facts which are obviously in dispute … [or] to demand that the other party admit the truth of a legal conclusion, even if the conclusion is attached to operative facts.") (citations and quotations omitted); *People of State of Cal. v. The Jules Fribourg*, 19 F.R.D. 432, 435 (N.D. Cal. 1955) ("Requests for admissions are designed to eliminate from the case issues which are not really in dispute between the parties…").  Further, "[w]hether an employee is a managing agent is a factual question for a jury," and therefore inappropriately targeted by a lengthy series of repetitive, identical requests for admission.  *Hamilton v. Costco Wholesale Corp.*, 2011 WL 3714778, at *9 (C.D. Ca. Aug. 24, 2011).  These RFAs also fail to specify any meaningfully restricted time period, are overly broad in seeking information regarding authority over policies that have nothing to do with GBF safety or sales and, indeed, would extend to issues like Roundup-ready crops that are far afield of anything relevant to this litigation, and fail to define the phrase "exercised substantial discretionary authority."  Rather than pose a series of admissions for legal conclusions for more than 60 employees, plaintiffs should instead be required to identify specific actions or statements of the individuals named in the RFAs for whom they seek to rely on for proving punitive damages.  As noted by plaintiffs, **ROG No. 10** is duplicative of RFA Nos. 43-

107. *See Intel Corp.,* 2009 WL 2921310, at *2 (duplicative discovery is "not appropriate"). It therefore fails from the same deficiencies as the RFAS, and is subject to the same objections.

**MONSANTO'S RESPONSE TO ISSUE # 5:** Even if **ROG No. 19** was relevant, Monsanto explained to plaintiffs during the Meet and Confer on December 29, 2018, that it does not maintain a central list of information pertaining to localities that have banned, restricted, or required warnings for glyphosate-based herbicides, and the burden of compiling this information is the same for plaintiffs as it would be for Monsanto. *See Scherbakovskiy v. Da Caop Al Fine, Ltd.,* 490 F.3d 130, 138 (2nd Cir. 2007) ("[A] party is not obligated to produce, at the risk of sanctions, documents [or information] that it does not possess or cannot obtain."); *Ashanti v. CA Dept. of Corrections*, 2006 WL 2695337, at *7 (E.D. Cal. Sept. 20, 2006) ("Defendants are not required to produce documents that they do not have within their custody, possession or control…"); *Travillion v. Allegheny Cty. Bureau of Corrections*, 2009 WL 1457720, at *1 (W.D. Pen. May 22, 2009) ("Defendants have no duty to produce documents they do not possess."). Courts have been clear that only a reasonable effort to search for information is required to adequately respond to interrogatories. *See United States v. $209,814 in United States Currency*, 2015 WL 1927431, at *4 (N.D. Cal. Apr. 28, 2015)(requiring only "reasonable effort," not "extensive research," in responding to interrogatories when responding party is not in possession of the sought-after documents).; *Tobacco and Allied Stocks v. Transamerica Corp.*, 16 F.R.D. 537, 541 (D. Del. 1954) (defendant need not perform "an independent research" to acquire information requested via interrogatories). Further, Monsanto's access to such information is equal to plaintiffs, who purport to have already compiled such a list from public sources. *See* https://www.baumhedlundlaw.com/toxic-tort-law/monsanto-roundup-lawsuit/where-is-glyphosate-banned/ (Accessed Jan. 3, 2019).

Sincerely,

By: /s/ R. Brent Wisner
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

Aimee Wagstaff
Aimee.wagstaff@andruswagstaff.com
ANDRUS WAGSTAFF, P.C.
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360
Facsimile:  (303) 376-6361

Robin Greenwald
rgreenwald@weitzlux.com
WEITZ & LUXENBERG, P.C.
700 Broadway

**BAUM HEDLUND ARISTEI GOLDMAN** PC
———— CONSUMER ATTORNEYS ————

January 3, 2019
Page 7

New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
THE MILLER FIRM, LLC
108 Railroad Ave
Orange, VA 22960
Telephone: (540) 672 4224
Facsimile:  (540) 672-3055

*Attorneys for Plaintiffs*

/s/ Brian L. Stekloff
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Kirby T. Griffis (*pro hac vice*)
(kgriffis@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY