**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) ) **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF MR. JAMES A. MILLS** |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC  *Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC  *Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | |

- 1 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JAMES MILLS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE THAT** beginning on February 4, 2018, in Courtroom 4 of the

3  United States District Court, Northern District of California, located at 450 Golden Gate

4  Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company

5  ("Monsanto") will present its Motion to Exclude the Testimony of Mr. James A. Mills.

6  Monsanto seeks an order excluding Mr. Mills under the Federal Rules of Evidence and *Daubert*

7  *v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

9  DATED: January 3, 2019

10                                   Respectfully submitted,

11                                   /s/ *Brian L. Stekloff*

12                                   Brian L. Stekloff (*pro hac vice*)
13                                   (bstekloff@wilkinsonwalsh.com)
                                 Rakesh Kilaru (*pro hac vice*)
14                                   (rkilaru@wilkinsonwalsh.com)
                                 WILKINSON WALSH + ESKOVITZ LLP
15                                   2001 M St. NW
                                 10th Floor
16                                   Washington, DC 20036
17                                   Tel:    202-847-4030
                                 Fax:   202-847-4005
18

19                                   Pamela Yates (CA Bar No. 137440)
                                 (Pamela.Yates@arnoldporter.com)
20                                   ARNOLD & PORTER KAYE SCHOLER LLP
                                 777 South Figueroa St., 44th Floor
21                                   Los Angeles, CA 90017
                                 Tel: 213-243-4178
22                                   Fax: 213-243-4199

23                                   Eric G. Lasker (*pro hac vice*)
24                                   (elasker@hollingsworthllp.com)
                                 HOLLINGSWORTH LLP
25                                   1350 I St. NW
                                 Washington, DC 20005
26                                   Tel: 202-898-5843
                                 Fax: 202-682-1639
27

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JAMES MILLS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**INTRODUCTION**

The Court should exclude Plaintiffs' economic expert James A. Mills, whose putative role in this litigation is to "testify about Monsanto's financial condition, net worth, and its ability to pay punitive damages." *See* Stekloff Decl., Ex. 1, Pls.' 11/20/18 Expert Disclosure Ltr. at 5. By Mr. Mills's own admission, his "methods" require no specialized economic training or knowledge, and involve little more than transcribing numbers and figures from Monsanto's publicly available financial statements and press releases to suggest to the jury possible amounts of punitive damages. Because a jury is perfectly capable of conducting such analysis on its own, courts throughout the country have routinely excluded testimony similar to what Plaintiffs seek to elicit from Mr. Mills. The Court should follow suit and preclude Mr. Mills from testifying under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993).

**BACKGROUND**

On November 20, 2018, Plaintiffs disclosed Mr. Mills in the *Hardeman*, *Stevick*, and *Gebeyehou* cases as an economist "who will testify about Monsanto's financial condition, net worth, and its ability to pay punitive damages." Stekloff Decl., Ex. 1 at 5.[1] Mr. Mills's report consists of a 1.5-page letter from Mr. Mills to Plaintiffs' counsel in which he states that his "primary task was to frame, in economic terms, the financial condition of Monsanto Company," which "encompasses the areas of financial health, wealth and economic status." Stekloff Decl., Ex. 3, Mills Rpt. at 1. Those terms are not further defined in Mr. Mills's report. The letter then lists the data Mr. Mills considered, which consist solely of publicly-available financial documents: (1) Monsanto's Fiscal Year 2014-2017 Forms 10-K; (2) Monsanto's 2/28/18 Form 10-Q; (3) Monsanto's 2017 Proxy Statement; (4) Monsanto's 6/2/18 8-K Report; and (5) "Monsanto and Bayer News Releases." *Id.* The report also features an attached 17-page slide deck that lists a series of financial figures lifted straight from those public documents, such as

---

[1] Although Plaintiffs also disclosed Mr. Mills's colleague, Robert W. Johnson, as an expert to testify as to the same topics, Mr. Mills confirmed at his deposition that Mr. Johnson would not testify about their joint report. *See* Stekloff Decl., Ex. 2, Mills Dep. Tr. 26:1-15.

- 1 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JAMES MILLS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

Monsanto's net sales for the years 2013-2017 (slide 3); Monsanto's net worth for the years 2013-2017 and for the second quarter of 2018 (slide 5); and Monsanto's research and development expenditures for the years 2013-2017 (slide 12). *Id.* at 8, 10, 17.

Monsanto deposed Mr. Mills on December 12, 2018. Mr. Mills testified that he has never met Mr. Hardeman, Ms. Stevick, or Mr. Gebeyehou, has not reviewed their financial records, and knows nothing about their respective medical histories. Stekloff Decl., Ex. 2, at 12:14-14:11. He also testified that he has been deposed approximately 500 times and that, in the "vast majority" of cases (estimated to be "90, 95 percent"), he is retained or designated as the economic expert by plaintiffs as opposed to the defense. *Id.* at 7:21-25; 19:17-20:3. As to the scope of his opinions in this case, Mr. Mills agreed that:

- He is not opining on the economic damages allegedly suffered by any particular plaintiff, and he did not perform any calculation of Mr. Hardeman's, Ms. Stevick's, or Mr. Gebeyehou's purported damages. *Id.* at 27:15-28:9.

- In preparing his report, he only reviewed publicly available documents. *Id.* at 28:21-30:9.

- He will not provide any particular dollar amount to the jury but may offer an opinion "that there are amounts that would be available to pay" in punitive damages. *Id.* at 32:2-12.

- Notwithstanding his statement that he might identify amounts "that would be available to pay," he repeatedly agreed that the vast majority of figures listed in his report do *not* necessarily represent amounts that could be used to pay a judgment. *E.g., id.* at 32:2-12, 39:3-7 ("Q. So a net income figure does not necessarily reflect money that the company has immediately available to pay a judgment, right? A. Correct.").

- He is not offering an opinion that punitive damages are actually warranted in this case. *Id.* at 32:13-15.

- He is not offering an opinion on Monsanto's conduct. *Id.* at 32:16-18.

As to the financial figures included in his slide deck, Mr. Mills admitted that all of them were reported in Monsanto's publicly available documents and that no economic training was required to arrive at those numbers. *See id.* at 33-66. He also conceded that he performed *no* mathematical calculations to arrive at the numbers in his slide deck, save for the free cash flow

- 2 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JAMES MILLS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

number, which he described as "very simple math" and which is itself a reported financial figure. *Id.* at 50:14-51:8.

## ARGUMENT

To be admissible, expert testimony must: (1) come from a witness "qualified as an expert by knowledge, skill, experience, training, or education;" (2) be derived from "scientific, technical, or other specialized knowledge"; and (3) "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Moreover, an expert's conclusions are not admissible if they are based on an unreliable foundation or methodology. *Daubert*, 509 U.S. at 592-95. Factors to consider in evaluating reliability are (1) whether the expert's opinion is susceptible to testing and has been subjected to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the scientific community. *Id.* at 593-94. Mr. Mills's punitive damages opinion fails all of these standards.

To begin, Mr. Mills's testimony does not "help the trier of fact" because he did nothing the jury cannot do on its own. He simply pulled financial figures from Monsanto's public filings, an exercise he concedes does not require economics knowledge or training and that the jury could likewise perform. *See* Stekloff Decl., Ex. 2 at 33:4-19 (net sales), 37:24-38:10 (net income), 39:21-40:12 (net worth), 42:15-43:4 (cash on hand), 46:15-47:2 (cash flow), 48:2-16 (capital expenditures), 50:14-51:8 (free cash flow), 52:19-53:6 (dividends), 54:16-55:1 (stock repurchases), 57:15-58:3 (R&D expenditures), 59:10-24 (advertising expenditures), 61:12-25 (audit fees), 63:7-15 (CEO compensation), 64:23-65:9 (CEO termination/change in control payment), 66:6-24 (acquisition price). Assembling financial figures is not the subject of proper expert testimony. Indeed, one court excluded nearly identical testimony on this precise basis:

> Of particular relevance, Federal Rule of Evidence 702 requires, among other things, that the expert testimony must in some way assist the trier of fact. … [T]he punitive damages report would not assist the trier of fact in any particular way because the jury could quite simply review the same financial information relied upon by [the expert] and determine for itself the possible ranges of damages.

- 3 -

*Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 464 (D.N.J. 1999). As the court in that case explained, *no expert* "is more qualified than the average juror to make a straightforward determination whether to punish [defendant] and if so, to what extent." *See id*.

It follows that Mr. Mills's proposed testimony would improperly invade the jury's role. The assessment of a punitive damage award is solely within the province of the jury. *See, e.g., Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991); *Gagnon v. Continental Casualty Co.*, 211 Cal. App. 3d 1598, 1602 (1989). For this reason, courts across the country have barred expert testimony on the proper amount of punitive damages. *See, e.g., Salinas v. State Farm Fire & Cas. Co.*, No. B-10-194, 2012 WL 5187996, at *5 (S.D. Tex. Feb. 23, 2012) (excluding plaintiffs' expert who planned to opine on defendant's net worth using financial data because "[d]espite plaintiffs' attempts to characterize [the expert's] testimony, his methods and calculations are merely a way to suggest a specific amount of punitive damages to the jury."); *Hayes v. Wal-Mart Stores, Inc.*, 294 F. Supp. 2d 1249, 1250-51 (E.D. Okla. 2003) (excluding expert offered to opine that "a punitive damage award equal to or less than dividends paid would financially punish, but not irreparably harm" the corporate defendant, because the "proposed testimony would invade the province of the jury and would not be helpful to that body"); *Voilas*, 73 F. Supp. 2d at 468 ("The Court is satisfied that the trier of fact in the present matter is the proper, and only, quantifier of punitive damages; in essence, there is no science or methodology to awarding such damages where the jury can evaluate for itself [defendant's] financial records and determine how to punish accordingly."). The jury can determine the right amount of punitive damages (if any) and does not need Mr. Mills to suggest an amount to them.

Further, Mr. Mills lacks any identifiable expertise that he could bring to bear on Monsanto's ability to pay punitive damages, even if he sought to offer such opinions. Indeed, Mr. Mills repeatedly admitted at his deposition that the vast majority of the figures listed in his report *do not* represent dollar amounts available to Monsanto with which it could pay a judgment:

- Q. So a net income figure does not necessarily reflect money that the company has immediately available to pay a judgment, right? A. Correct. Stekloff Decl., Ex. 2 at 39:3-7.

- Q. You're not suggesting that the net worth figure is an amount that would be immediately available to Monsanto to pay a judgment, right? A. Correct. *Id.* at 41:19-22.

- Q. [C]apital expenditures are, by definition, money out the door, right? A. That's right, correct. *Id.* at 49:25-50:2.

- Q. [Y]ou're not saying that amount of money [dividend payments] is available to the company to pay a damages figure, right? A. Right. In other words, the dividends that have been paid, have been paid. *Id.* at 54:3-8.

- Q. And you agree that the figures listed on your slide on stock repurchases, that money is no longer available to the company, it's already been spent? A. That money was spent. *Id.* at 56:14-18.

- Q. And the figures listed on your slide for R&D expenditures are money the company has already spent, right? A. Correct. Q. These specific figures are not available to the company in order to pay a judgment, right? A. Correct. *Id.* at 58:17-23.

- Q. So these dollar amounts [advertising expenditures] are not amounts that Monsanto has available to it to pay a judgment? A. Those past amounts, that's correct." *Id.* at 60:20-23.

- Q. You're not suggesting that the figures listed here [audit fees] is money the company has available to it to pay a judgment, right? A. Correct. *Id.* at 62:19-22.

Ultimately, all Mr. Mills has done is list a series of figures from publicly-available documents to suggest to the jury that it should award a large amount of punitive damages. That exercise is neither reliable nor the stuff of expert testimony.

Finally, there is no other basis for allowing Mr. Mills to relay evidence of Monsanto's financial condition to the jury, even if that evidence were relevant to its ability to pay.[2] Mr. Mills cannot introduce the numbers in his report as facts underlying an expert opinion because he has no valid expertise and, moreover, reporting of figures in publicly-available documents

---

[2] Although California allows financial-condition evidence as proof of ability to pay, there is no set formula or method for demonstrating financial condition. *See, e.g.*, *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165, 194 (2015) ("[T]here is no one particular type of financial evidence a plaintiff must obtain or introduce to satisfy its burden of demonstrating the defendant's financial condition. Evidence of the defendant's net worth is the most commonly used, but that metric is too susceptible to manipulation to be the sole standard for measuring a defendant's ability to pay.").

- 5 -

requires no expertise. Nor could he be characterized as a fact witness. Mr. Mills admitted at his deposition that his knowledge of Monsanto's financial condition begins and ends with what he found in reviewing Monsanto's public documents. *See, e.g.*, Stekloff Decl. Ex. 2, at 55:23-56:13. For instance, Mr. Mills testified that he has "no idea" how many products fall under the Roundup brand; cannot name any products other than "seeds" that Monsanto sells; does not know what property, plants, or equipment would be included in Monsanto's assets; and does not know who Monsanto's shareholders were. *Id.* at 34:24-35:23, 41:4-13, 54:13-15. Mr. Mills also has no idea how much the Roundup portfolio of products impacted most numbers in his report. *Id*. at 34:12-35:14 (net sales), 37:12-21 (revenues per day), 39:8-18 (net income), 42:6-12 (net worth), 46:2-12 (cash on hand), 47:17-48:1 (cash flow), 50:3-13 (capital expenditures), 52:8-18 (free cash flow), 56:19-57:14 (stock repurchases), 60:24-61:11 (advertising expenditures), 62:23-63:1 (audit fees), 65:18-66:3 (CEO termination/change in control payment), 68:9-12 (acquisition price). In sum, the jury does not need an "expert" to testify about publicly available financial information. As other courts have found, the jury is quite capable of conducting that evaluation on its own.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Mr. James A. Mills.

- 6 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF JAMES MILLS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

| | | |
|---|---|---|
| 1 | DATED: January 3, 2019 | Respectfully submitted, |
| 2 | | /s/ Brian L. Stekloff |
| 3 | | |
| | | Brian L. Stekloff (*pro hac vice*) |
| 4 | | (bstekloff@wilkinsonwalsh.com) |
| | | Rakesh Kilaru (*pro hac vice*) |
| 5 | | (rkilaru@wilkinsonwalsh.com) |
| | | WILKINSON WALSH + ESKOVITZ LLP |
| 6 | | 2001 M St. NW, 10th Floor |
| | | Washington, DC 20036 |
| 7 | | Tel: 202-847-4030 |
| | | Fax: 202-847-4005 |
| 8 | | |
| | | Pamela Yates (CA Bar No. 137440) |
| 9 | | (Pamela.Yates@arnoldporter.com) |
| | | ARNOLD & PORTER KAYE SCHOLER |
| 10 | | 777 South Figueroa St., 44th Floor |
| | | Los Angeles, CA 90017 |
| 11 | | Tel: 213-243-4178 |
| 12 | | Fax: 213-243-4199 |
| 13 | | |
| | | Eric G. Lasker (*pro hac vice*) |
| 14 | | (elasker@hollingsworthllp.com) |
| | | HOLLINGSWORTH LLP |
| 15 | | 1350 I St. NW |
| | | Washington, DC 20005 |
| 16 | | Tel: 202-898-5843 |
| | | Fax: 202-682-1639 |
| 17 | | |
| 18 | | Michael X. Imbroscio (*pro hac vice*) |
| | | (mimbroscio@cov.com) |
| 19 | | COVINGTON & BURLING LLP |
| | | One City Center |
| 20 | | 850 10th St. NW |
| | | Washington, DC 20001 |
| 21 | | Tel: 202-662-6000 |
| 22 | | |
| | | Attorneys for Defendant |
| 23 | | MONSANTO COMPANY |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                  /s/ Brian L. Stekloff_____