**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:     202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>———————————————————<br>*Hardeman v. Monsanto Co., et al.*,<br>3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*,<br>3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*,<br>3:16-cv-5813-VC<br>———————————————————  | ) MDL No. 2741<br>)<br>) Case No. 3:16-md-02741-VC<br>)<br>) **MONSANTO COMPANY'S NOTICE OF**<br>) **MOTION AND MOTION TO EXCLUDE**<br>) **TESTIMONY OF DR. CHARLES**<br>) **BENBROOK ON *DAUBERT* GROUNDS**<br>)<br>) **Hearing dates: February 4, 6, and 11, 2019**<br>) **Time: 9:30AM**<br>) |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on February 4, 2018, in Courtroom 4 of the

United States District Court, Northern District of California, located at 450 Golden Gate Avenue,

- 1 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

1   San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company

2   ("Monsanto") will present its *Daubert* Motion to Exclude the Testimony of Dr. Charles

3   Benbrook.   Monsanto seeks an order excluding Benbrook under *Daubert v. Merrell Dow*

4   *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

5

6   DATED:  January 3, 2019

7                                          Respectfully submitted,

8                                          /s/ *Brian L. Stekloff*_____

9                                          Brian L. Stekloff (*pro hac vice*)
                                           (bstekloff@wilkinsonwalsh.com)
10                                         Rakesh Kilaru (*pro hac vice*)
                                           (rkilaru@wilkinsonwalsh.com)
11                                         WILKINSON WALSH + ESKOVITZ LLP
                                           2001 M St. NW
12                                         10th Floor
                                           Washington, DC 20036
13                                         Tel:     202-847-4030
                                           Fax:     202-847-4005
14

15                                         Pamela Yates (CA Bar No. 137440)
                                           (Pamela.Yates@arnoldporter.com)
16                                         ARNOLD & PORTER KAYE SCHOLER
                                           777 South Figueroa St., 44th Floor
17                                         Los Angeles, CA 90017
                                           Tel: 213-243-4178
18                                         Fax: 213-243-4199

19
                                           Eric G. Lasker (*pro hac vice*)
20                                         (elasker@hollingsworthllp.com)
                                           HOLLINGSWORTH LLP
21                                         1350 I St. NW
                                           Washington, DC 20005
22                                         Tel: 202-898-5843
                                           Fax: 202-682-1639
23

24

25                                         Michael X. Imbroscio (*pro hac vice*)
                                           (mimbroscio@cov.com)
26                                         COVINGTON & BURLING LLP
                                           One City Center
27                                         850 10th St. NW

28

Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.     Dr. Benbrook Is Not Qualified to Offer Expert Testimony in this Case.............................................................................................................. 3

    II.    Dr. Benbrook's Summaries and Narration of Corporate and EPA Documents Do Not Constitute Admissible Expert Testimony, and He Should Not Be Permitted To Offer Opinions About Monsanto's Intent, Motives, or State of Mind........................................................... 5

        A.    Dr. Benbrook Should Not Be Permitted To Narrate Company Documents. ............................................................................ 6

        B.    Dr. Benbrook Should Not Be Permitted To Speculate About Monsanto's Motive, Intent, or State of Mind, or To Offer His Personal "Interpretation" of Documents Based on Such Speculation.......................................................................... 8

        C.    Dr. Benbrook Should Not Be Permitted To Testify About His Opinions as to Monsanto's Ethics or Compliance With Ethical Obligations. ........................................................................ 10

    III.   Dr. Benbrook's Opinions on Legal or Regulatory Duties Should Be Excluded ........................................................................................ 12

        A.    Dr. Benbrook's Opinions Regarding Monsanto's Compliance With Legal Duties and EPA Regulations Are Improper......................... 12

        B.    Dr. Benbrook Improperly Speculates About What Monsanto Should Have Done Differently and About the Customs and Practice of EPA, Including What Warnings or Labeling Might Have Been Accepted by EPA. ................................................. 13

        C.    Dr. Benbrook's Opinions that Monsanto Defrauded or Misled the EPA Are Inadmissible and Preempted by Federal Law.................... 14

CONCLUSION.................................................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States*,
    No. 03-0049-E-BLW, 2009 WL 1324231 (D. Idaho May 8, 2009) .......................................10

*Baldonado v. Wyeth*,
    2012 WL 1802066 (N.D. Ill. May 17, 2012) ...........................................................................7

*In re Bard IVC Filters Prods. Liab. Litig.*,
    No. MDL 15-02641-PHX DGC, 2018 WL 495187 (D. Ariz. Jan. 22, 2018) ........................11

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001).................................................................................................................15

*In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
    MDL No. 2187, 2018 WL 4212409 (S.D. W.Va. Sept. 4, 2018) ..............................................8

*City of New York v. FedEx Ground Package Sys., Inc.*,
    No. 13 Civ. 9173 (ER), 2018 WL 2941455 (S.D. N.Y. Oct. 10, 2018).....................................7

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ....................................................................................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)...............................................................................................................2, 3

*Deutsch v. Novartis Pharm. Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y. 2011) ......................................................................................8

*Eltiste v. Ford Motor Co.*,
    167 S.W.3d 742 (Mo. App. 2005) .............................................................................................8

*Fisher v. Halliburton*,
    No. H-05-1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ................................................8

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009).......................................................................................8

*Giglio v. Monsanto Co.*,
    No. 15-cv-22792016 WL 1722859, (S.D. Cal. Apr. 29, 2016) ...............................................15

*In re Heparin Prod. Liab. Litig.*,
    MDL No. 1953, 2011 WL 1059660 (N.D. Ohio Mar. 21, 2011) ..............................................8

*Hines v. Wyeth*,
    No. 2:04-0690, 2011 WL 2680842 (S.D. W. Va. July 8, 2011) ................................................8

- ii -

*Johnson v. Monsanto Co.*,
 No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) ...........................................................1, 2, 3

*Lopez v. I-Flow Inc.*,
 No. CV 08-1063-PHX-SRB, 2011 WL 1897548 (D. Ariz. Jan. 26, 2011) ..............................8

*Lukov v. Schindler Elevator Corp.*,
 No. 5:11-cv-00201 EJD, 2012 WL 2428251 (N.D. Cal. June 26, 2012)................................12

*Nathan Kimmel, Inc. v. DowElanco*,
 275 F.3d 1199 (9th Cir. 2002) .............................................................................................15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
 No. 16-cv-01393-JST, 2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)....................................8

*In re Prempro Prods. Liab. Litig.*,
 554 F. Supp. 2d 871 (E.D. Ark. 2008) ...................................................................................7

*Pritchett v. I-Flow Corp.*,
 No. 09-cv-02433-WJM-KLM, 2012 WL 1059948 (D. Colo. Mar. 28, 2012)..........................7

*In re Rezulin Prods. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004)..........................................................................6, 7, 11

*Sanchez v. Boston Sci. Corp.*,
 No. 2:12-CV-05762, 2014 WL 4851989 (S.D. W. Va. Sept. 29, 2014)..................................7

*Sargon Enters., Inc. v. Univ. of S. Cal.*,
 288 P.3d 1237 (Cal. 2012) ....................................................................................................2

*Scentsational Techs., LLC v. Pepsi, Inc.*,
 No. 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018), *appeal
 docketed*, No. 18-2091 (Fed. Cir. June 19, 2018)..............................................................6, 8

*In re Seroquel Prods. Liab. Litig.*,
 No. 6:06-md-1769-Orl-22DAB, 2009 WL 3806436 (M.D. Fla. July 20, 2009) .....................8

*United States v. Smith*,
 573 F.3d 639 (8th Cir. 2009) ...............................................................................................12

*White v. Ford Motor Co.*,
 312 F.3d 998 (9th Cir. 2002) .................................................................................................3

**Statutes**

FIFRA § 6(a)(2) ............................................................................................................4, 12, 13

**Rules**

Fed. R. Evid. 702 ................................................................................................................2, 3

- iii -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Plaintiff has designated Dr. Charles Benbrook, an agricultural economist, to testify on a topic that is not the proper subject of expert testimony—whether "Monsanto's conduct as a pesticide manufacturer and registrant, comport with its obligations and stewardship responsibilities."  Stekloff Decl. Ex. 1, Expert Report of Charles Benbrook at ¶ 3 (Nov. 10, 2018) ("Benbrook Rpt.").  Dr. Benbrook was designated as an expert, and largely excluded from testifying, in *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.).  There is no basis for a different outcome here.

Indeed, Dr. Benbrook offers the same types of opinions that were excluded in *Johnson*. He purports to review company documents and opine on the intent, state of mind, and motives of Monsanto employees, EPA, and others.  He also seeks to offer opinions about Monsanto's moral, ethical, legal, and regulatory obligations.  For multiple reasons, Dr. Benbrook's opinions do not meet the threshold standards for admissibility and should be excluded.

*First*, Dr. Benbrook does not have the requisite expertise to testify on any of those topics. He of course has no particular expertise in reading other people's emails in order to determine intent or motives—that is a quintessential jury function.  He is not a legal expert, nor does he have any particular or relevant regulatory expertise.  *Second*, qualifications aside, it is well-established that an expert may not act as a storyteller for a plaintiff to narrate a defendant's documents or speculate about a defendant's state of mind, intent, or knowledge.  To allow a witness to testify as to his personal opinion about a party's intent or state of mind—under the guise of "expert" opinions—would invade the jury's function.  *Third*, it is the role of the judge, not a purported "expert," to instruct the jury about the law and the company's obligations under the law.  Dr. Benbrook's opinions amount to nothing more than improper speculation based on his own subjective beliefs.  He should not be allowed to present them to the jury.

1

## BACKGROUND

2

Dr. Benbrook sought to offer these same opinions in *Johnson*, and Judge Karnow held

3

that the vast majority of Dr. Benbrook's purported "expert" opinions were inadmissible.[1]  After a

4

hearing, Judge Karnow severely limited Dr. Benbrook's proposed testimony, allowing him to

5

testify only "as to the general framework of the EPA regulatory decision making process," but

6

*prohibiting* him from testifying about the following subjects—all of which Plaintiffs seek to have

7

Dr. Benbrook offer in this case:

8

    1.  Dr. Benbrook may not opine about the "proper interpretation of documents, such as
emails, or to argue that inferences of knowledge or intent can be derived from those

9

        documents[,]" as his "opinions about the knowledge and intent of Monsanto and other
actors invade the province of the jury and are often speculative."

10

    2.  Dr. Benbrook "may not opine on Monsanto's legal obligations."

11

    3.  Dr. Benbrook "may not relate case-specific facts asserted in hearsay statements unless

12

        they are independently proven by competent evidence or are covered by a hearsay
exception."

13

    4.  Dr. Benbrook "may not offer an opinion as to whether the EPA would have approved

14

        an amendment to the Roundup label[,]" as he "has no specific expertise pertaining to
the EPA's approval of amended label[s]."

15

    5.  Dr. Benbrook "may not testify Monsanto misled the EPA," as he "brings no relevant

16

        expertise to the table on that issue."

17

Stekloff Decl. Ex. 2, *Johnson* Order at 30.  For the reasons set forth in Judge Karnow's *Johnson*

18

Order, as well as those set forth below, Dr. Benbrook's opinions offered in this case should

19

likewise be excluded under the Federal Rules of Evidence and *Daubert*.

20

## LEGAL STANDARD

21

A proposed expert witness must possess "knowledge, skill, experience, training, or

22

education" sufficient to qualify him as an expert on the subject to which his testimony relates.

23

Fed. R. Evid. 702.  When an expert's field of expertise is not related to the subject on which he

24

25

[1] *See* Stekloff Decl. Ex. 2, Order on Monsanto's Omnibus *Sargon* Mot., *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty. May 17, 2018) ("*Johnson* Order").  Under

26

California law, expert opinion testimony must be excluded if it is "(1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on

27

which the expert relies, or (3) speculative." *Sargon Enters., Inc. v. Univ. of S. Cal.*, 288 P.3d 1237, 1252 (Cal. 2012).

28

seeks to offer testimony, such testimony is inadmissible.  *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) ("A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion.").

Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliable to the facts of the case.  Fed. R. Evid. 702.  The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See*, *e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## ARGUMENT

## I.   Dr. Benbrook Is Not Qualified to Offer Expert Testimony in this Case.

Dr. Benbrook lacks the qualifications of an expert in the areas for which he is proffered to testify.  As a threshold matter, Dr. Benbrook brings very little relevant expertise to this matter. He has no education or degree in any physical science.  *See* Stekloff Decl. Ex. 3, Dep. of Charles Benbrook at 19:3-6, Feb. 8, 2018, *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) ("Benbrook *Johnson* Dep.").[2]  He is not trained in any field of medicine.  *Id.* at 18:13-19.  He has no training or degree in toxicology and has never designed or conducted a toxicology study.  *Id.* at 18:23-5; 119:17-120:1; Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 35:23-36:3, 36:18-21, 112:7-11.  He has never investigated the toxicity of pesticides through scientific experiment.  *See* Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 72:25-73:2.  And he

---

[2] At the outset of Dr. Benbrook's deposition in this case, Plaintiff's counsel noted that Dr. Benbrook had testified in prior Roundup depositions and asked Monsanto's counsel not to repeat questions that had been asked in those prior depositions. *See* Ex. 4, Dep. of Charles Benbrook, at 7:1-7, Dec. 28, 2018, *Hardeman v. Monsanto Co.*, 3:16-cv-0525-VC, *Stevick v. Monsanto Co.*, and *Gebeyehou v. Monsanto Co.*, 3:16-cv-5813-VC (N.D. Cal.) ("*Hardeman* Dep.").  Dr. Benbrook also testified that he stands by the testimony he gave in those prior depositions. *Id.* at 10:20-22

1    has no education or training in epidemiology, nor has he ever designed or conducted an

2    epidemiology study.  *See* Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 18:20-22, 69:2-7.

3         This lack of expertise is especially evident when considering the decidedly non-expert

4    topics he has been offered to present.  First, Dr. Benbrook seeks to testify about Monsanto's

5    ethical, legal and regulatory duties, but he has never worked at EPA or any regulatory body, and

6    he has never been employed by a pesticide, chemical or agricultural company subject to EPA

7    regulations.  *See* Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at  32:7-15.  Dr. Benbrook has

8    never conducted a pesticide label review with or for EPA.  *Id*. at 102:18-23.  He has no training

9    or experience regarding preparing herbicide labels for EPA review.  *See* Stekloff Decl. Ex. 3,

10   Benbrook *Johnson* Dep. at 367:5-13, 365:3-9.  He has never published anything in peer-reviewed

11   literature on the labeling requirements for herbicides under the Federal Insecticide, Fungicide,

12   and Rodenticide Act ("FIFRA").  *Id*. at 367:15-19.  Dr. Benbrook also has never participated in a

13   registration review of a pesticide for EPA.  *See* Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at

14   42:10-12.  He has never been involved with a submission to EPA for registration of an herbicide.

15   *Id.* at 86:20-88:2.  Moreover, Dr. Benbrook is not trained in the law or legal interpretation or

16   enforcement of federal regulations.  *Id.* at 35:13-19.  He has never been involved in advising the

17   EPA in its enforcement of FIFRA § 6(a)(2)'s "adverse effects" reporting, nor in assessing

18   whether adverse effects reporting requirements have been met.  *See* Stekloff Decl. Ex. 3,

19   Benbrook *Johnson* Dep. at 42:13-17, 131:7-9; Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at

20   155:10-15.  He has never worked at the EPA on any FIFRA § 6(a)(2) adverse effects reporting

21   issues.  *See* Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 429:10-16.  He has never

22   participated in an EPA enforcement review for violations of any regulations under FIFRA.  *See*

23   Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 42:10-17.  Dr. Benbrook recently admitted: "I

24   really don't know the details of the regs [regulations] well enough to say whether [Monsanto]

25   would be obligated to submit" a final version of a certain study report to the EPA.  Stekloff Decl.

26   Ex. 4, Benbrook *Hardeman* Dep. at 163:2-11.  Although he once held a legislative position with

27   a House Subcommittee in the early 1980s, he admits he had no direct responsibility for

28

- 4 -

regulating pesticides in that decades-old position.  Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 85:9-11

Second, Dr. Benbrook lacks any qualifications to testify about the proper interpretation of Monsanto documents and whatever inferences about Monsanto's state of mind, motives, and intent that should be drawn from those documents.  Even if there were such a thing as an expert qualified to offer opinions on a company's alleged intent (there is not—*see infra* Section II.B.), Dr. Benbrook is not it. He has never been employed by an herbicide or chemical company.  *Id.* at 41:21-42:4.  He is not an expert in reading or interpreting other people's emails.  *See* Stekloff Decl. Ex. 5, 5/10/2018 *Johnson* Hearing Tr. at 59:5-18 (recognizing that Dr. Benbrook is "[s]urely not" an "expert in email reading").  Nor is he an expert in whether a company acted ethically.  He does not have a degree in corporate ethics.  Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 41:14-19.  Rather, his supposed expertise is "self-taught." *Id.* at 41:21-42:4.  He bases his opinions about what a reasonable pesticide company would do on his review of internal documents and his claimed "expert[ise] in honesty" based on his "long personal experience" providing "as solid a foundation to judge the honesty of actions of a pesticide company, a regulator, or a non-governmental organization as anyone currently active in the field."  Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 431:5-432:5.  Such subjective beliefs and opinions do not qualify him as an expert and invade the province of the jury to judge Monsanto's conduct.

Judge Karnow found that "Dr. Benbrook's background does not demonstrate much familiarity with the EPA or Monsanto's internal knowledge or regulatory compliance" and thus excluded and limited his proposed opinions accordingly. Stekloff Decl. Ex. 2, *Johnson* Order at 30.  Here, too, Dr. Benbrook lacks the qualifications and expertise necessary to offer his proffered opinions.

## II.    Dr. Benbrook's Summaries and Narration of Corporate and EPA Documents Do Not Constitute Admissible Expert Testimony, and He Should Not Be Permitted To Offer Opinions About Monsanto's Intent, Motives, or State of Mind.

Dr. Benbrook generated the majority of his opinions using a supposed "methodology" of reading internal Monsanto corporate documents and EPA communications, and then speculating

- 5 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

as to the intent of their authors and recipients.  An expert may not offer opinions that are no more than (1) storytelling or advocacy on behalf of a party, (2) speculation about a party's intent, state of mind, or motives, or (3) personal opinions about a company's ethics.  Dr. Benbrook's proposed testimony violates all three of these principles.

### A.   Dr. Benbrook Should Not Be Permitted To Narrate Company Documents.

It is well-settled that an expert witness may not serve as an advocate or storyteller for a party without bringing relevant expertise to bear on facts actually at issue in the case.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).  In other words, an expert who merely reads or summarizes documents for the jury is not providing helpful testimony because the jury is capable of reading and reaching conclusions on its own.  *See id.* Yet, Dr. Benbrook repeatedly provides his opinion about what corporate documents written by or to Monsanto employees mean to *him* based on his personal opinion:

> Q:  So you reviewed these corporate documents with the MONGLY Bates- numbering in order to inform yourself what they say and then to tell us in your expert report **what they mean to you,** correct?
>
> A:  Yes, sir.
>
> Q:  And when you do that, you also, in your report in many places, characterize what **you believe in your personal opinion** is the conduct of Monsanto or its employees or its consultants and whether **you in your personal opinion** believe the conduct is acceptable is some way, correct?
>
> A:  Sure. Correct.

Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 37:4-16 (emphasis added).  Even a cursory review of Dr. Benbrook's report demonstrates that it consists largely of wholesale recitation of select company documents, pieced together to paint a narrative that Plaintiffs' counsel would like to present to the jury. *See*, *e.g.*, Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶¶ 254-268, 281-342, 444-475, 480-496, 524-537.

Reading and interpreting e-mails and memoranda does not require any specialized knowledge or skill outside the ken of the layman.  As such, Dr. Benbrook brings to the jury no relevant expertise.  As one Court recently noted, "mere narration fails to fulfill Daubert's most basic requirements." *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 WL

1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *appeal docketed*, No. 18-2091 (Fed. Cir. June 19, 2018).

Federal courts regularly exclude experts that offer an advocacy-based recitation of documents.  In *Baldonado v. Wyeth*, the Northern District of Illinois precluded an expert from testifying to "narrative histories" summarizing a pharmaceutical company's promotion of a hormone therapy drug because the testimony did not involve any "scientific, technical or other specialized knowledge."  No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012). The court, citing similar rulings, reasoned that:

> [A]llowing an expert to provide summary testimony "based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself."  *United States v. Vance*, No. 07–CR–351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011) (citing *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.")).

*Id.*  The court in *In re Rezulin Products* also barred a "narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence."  309 F. Supp. 2d at 551.  It also invades the jury's core function to review the evidence and make factual determinations. *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 2941455, at *4 (S.D. N.Y. Oct. 10, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury traditionally relies upon to answer the sort of questions that a jury traditionally answers.").  Other courts agree that such narrative testimony of company and regulatory documents is inadmissible.[3]  Dr. Benbrook's testimony reflects nothing more than improper narration of documents under the guise of expertise and should be excluded.

---

[3] *See also In re Prempro Prods. Liab. Litig.,* 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008)  ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"); *Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate documents, which is not helpful to the jury."); *Pritchett v. I-Flow Corp.*, No. 09-cv-02433-WJM-KLM, 2012 WL 1059948, at *7 (D. Colo. Mar. 28, 2012) ("The Court must recognize the inherent power of expert testimony in determining whether to allow an expert to

*(Footnote continued)*

### B. Dr. Benbrook Should Not Be Permitted To Speculate About Monsanto's Motive, Intent, or State of Mind, or To Offer His Personal "Interpretation" of Documents Based on Such Speculation.

Even a qualified expert may not opine as to the intent, motive, or state of mind of a corporation or its employees. *See, e.g., Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 746 (Mo. App. 2005); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind" because such testimony "would be merely substituting the expert's judgment for the jury's."); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2018 WL 4212409, at *3 (S.D. W.Va. Sept. 4, 2018) (defendant's "knowledge, state of mind, or other matters related to corporate conduct are not appropriate subjects of expert testimony"); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 467 (E.D.N.Y. 2011) ("'[O]pinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.'") (quoting *In re Rezulin Prods.*, 309 F. Supp. 2d at 546).[4] As those

---

summarize documents that the jury could just as easily summarize itself. Allowing an expert witness to do so may imprint the documents with 'a tilt favoring a litigant,' which hinders impartial adjudication of the merits instead of promoting it." (citing *In re Prempro*, 554 F. Supp. 2d at 887)); *Scentsational Techs., LLC*, 2018 WL 1889763, at *4 (holding that expert cannot opine on a party's state of mind or narrate documents; it is "inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story'"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("Plaintiffs' counsel may not simply use these expert witnesses to provide a narrative history of [the defendant's] marketing and labeling practices ...."); *Lopez v. I-Flow Inc.*, No. CV 08-1063-PHX-SRB, 2011 WL 1897548, at *10 (D. Ariz. Jan. 26, 2011).

[4] *See also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding proffered expert conclusions about company's motivations, intent, and state of mind because expert could not demonstrate "the ability to read minds"); *Lopez*, 2011 WL 1897548, at *11 (because an expert can have "no knowledge of the state of mind, intent or motivation[]" of a company, an expert's opinions as to such information "lacks reliability and helpfulness" and should be excluded); *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) ("An expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind.") (alteration in original); *In re Heparin Prod. Liab. Litig.*, MDL No. 1953, 2011 WL 1059660, at *8-9 (N.D. Ohio Mar. 21, 2011) (precluding expert from testifying about "the state of mind, intent, knowledge, purposes, or motivations of" the defendant); *Hines v. Wyeth*, No. 2:04-0690, 2011 WL 2680842, at *7 (S.D. W. Va. July 8, 2011) (expert's opinions "regarding defendants' state of mind and knowledge based on her own reading of their internal documents" is inadmissible);

---

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

authorities recognize, an expert who purports to divine the thoughts of a company or its employees is speculating, and such testimony would not be helpful to the jury.

Dr. Benbrook himself recognizes that it is not possible to glean a person's intent or motive merely from reading an email:

> Q:      So it's not possible to review the e-mail and understand exactly what was said or what people's intent or motivation was; correct?
>
> A:      Correct.

Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 340:23-341:2 (objection omitted). Nonetheless, his expert report and deposition testimony are replete with his personal opinions as to the motives and state of mind of Monsanto and third parties based on his personal interpretation of company and EPA documents that he did not author or receive.  For example:

- "The record (including text message exchanges) shows a close, deferential, and supportive relationship in communications from Housenger to Monsanto." Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 469.[5]

- "In this circumstance, it would have been entirely routine for Healy to write back to the Editor and ask for permission to conduct the review with assistance from two Monsanto colleagues who have deep expertise on the subject matter of the paper. The Editor would have almost certainly approved Healy's request, and thanked him in advance for taking on the assignment." Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 576.

- "Then, Chassy alleges that 'The paper in question has not been peer reviewed,' a claim he no doubt knew was false." *Id.* at ¶ 601.

- "Q: How do you know that TNO would have deleted the findings?

  A: **How do I know? Well, I guess I don't**. I'm not part of their organization. I don't know what their policies are…"  Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 172:10-20 (emphasis added; objection omitted).

- "It is also my opinion that if the Editor of the *CRT* and Taylor and Francis ever come to understand the full degree to which Monsanto controlled the production of these five papers, as documented in this report, they will retract all the papers and issue an apology to its readers." Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 707.

---

[5] *See also* Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 233:18-21 ("The record shows some unusually close an inappropriate communications between Jess Rowland and Monsanto on the general topic of OPP's evaluation of glyphosate oncogenicity."); *id.* at 234:16-235:17 (testifying that he found an e-mail "very curious and suggestive" which "tipped [him] off" to "perhaps an undue influence" by Monsanto on members of a committee).

- "EPA could have initiated a cancellation action for Monsanto's failure to comply with a requirement in the 1986 registration standard.... [T]hey did not do it because they felt that it was not a significant enough of a concern to entail the administrative and political cost of trying to cancel a widely-used herbicide." Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 182:23- 183:6.

- "My review of the discovery record leads me to conclude unequivocally that the actions and activities of Monsanto's Third Party Network of scientists were not focused on deepening scientific understanding of Roundup risks, nor on finding the best ways to avoid possibly high-risk applications. The Network was managed and deployed to reinforce Monsanto talking points and science judgments . . . ." Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 99.

Dr. Benbrook has been admonished before for precisely this sort of impugning of a company's motives based on a tale spun from internal documents:

> Dr. Benbrook has never worked inside DuPont nor done any consulting work for the company.  He claims he has become an expert on DuPont by reading documents produced in this litigation.  But that is akin to studying the Grand Canyon by looking at its depiction in an old-fashioned peeping-type Easter egg. **The view is sharp only because it is so narrow.**  It is not enough to make Dr. Benbrook an expert on DuPont.

*Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 1324231, at *1 (D. Idaho May 8, 2009) (emphasis added) (holding that "Dr. Benbrook cannot testify about DuPont's corporate intent"). Likewise, Dr. Benbrook's speculation about what Monsanto or its employees knew, thought, or intended is not admissible expert testimony in this case.

## C. Dr. Benbrook Should Not Be Permitted To Testify About His Opinions as to Monsanto's Ethics or Compliance With Ethical Obligations.

Dr. Benbrook also should not be permitted to offer his opinions about Monsanto's corporate ethics or compliance with ethical obligations. *See, e.g.*, Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 16.  For example, Dr. Benbrook admits that Monsanto had no legal obligation under EPA regulations to place an oncogenicity warning on its Roundup labels, yet he nonetheless opines that Monsanto had a "moral and ethical obligation" to do so. *See* Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 239:1-24. *See also id.* at 241:10-242:4. *See also id.* at 279:20-22 ("Monsanto has not done as much as it should have to discourage overstatements of the safety of glyphosate-based herbicides."); *id.* at 237:3-11 (testifying as to his opinion about what a

- 10 -

"prudent company" would have done).  Remarkably, Dr. Benbrook has claimed that he should be

allowed to so opine because he is a self-professed "expert in honesty":

> Q:    You've also commented a number of times both in your report and now
>        again today at least once, about whether a particular individual or
>        company, whether it be Monsanto or anybody else at the agency, is
>        honest.  Are you claiming you're an expert in honesty?
>
> A:    Yes.  Yes.  I'm an expert in honesty.

Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 430:25-431:7.  Dr. Benbrook is no more an

"expert in honesty" than the jurors who will decide this case, and his testimony that the EPA or

Monsanto acted unethically or otherwise inappropriately could carry undue weight and thus

prejudice Monsanto. *See*, *e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-

PHX DGC, 2018 WL 495187, at *3 (D. Ariz. Jan. 22, 2018) ("Personal views on proper

corporate behavior are not appropriate expert opinions."); *In re Rezulin Prods. Liab. Litig.*, 309

F. Supp. 2d at 542-43 ("The opinions of plaintiffs' witnesses, however distinguished these

individuals may be as physicians and scientists, concerning the ethical obligations of

pharmaceutical companies and whether the defendants' conduct was ethical are inadmissible

….").

Dr. Benbrook's opinions about Monsanto's moral obligations also are not based on a

reliable or scientific methodology.  For example, he claims that Monsanto has different (and

greater) obligations than other pesticide manufacturers simply because it has greater market

share. Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 257:5-19.  He also admits that his

personal opinions regarding ethical guidelines for authorship credit in peer-reviewed literature

differ from the guidelines set forth by the International Committee of Medical Journal Editors

(ICMJE). *Id.* at 262:2-265:6.  Dr. Benbrook's personal views about Monsanto's "moral and

ethical obligations" have no bearing to the relevant *legal* questions in this case, and they

certainly should have no impact on the *factual* questions the jury will ultimately decide.

*         *         *

Plaintiff is not entitled to have a partisan "expert" with the Court's imprimatur narrate

company documents and place his own spin on them.  Judge Karnow rightfully excluded Dr.

1    Benbrook's attempt to opine on "proper interpretation of documents, such as emails, or to argue

2    that inferences of knowledge or intent can be derived from those documents[,]" as his "opinions

3    about the knowledge and intent of Monsanto and other actors invade the province of the jury and

4    are often speculative."  Stekloff Decl. Ex. 2, *Johnson* Order at 30.  The same result is warranted

5    here.

6    **III.    Dr. Benbrook's Opinions on Legal or Regulatory Duties Should Be Excluded.**

7            Dr. Benbrook also seeks to offer his opinion that Monsanto failed to comply with its legal

8    or regulatory obligations. In addition to Dr. Benbrook's lack of relevant qualifications (*see*

9    Section I, *supra*), these opinions should be excluded because they lack the necessary foundation

10   and invade the province of this Court to instruct on the law, and of the jury to decide Monsanto's

11   compliance with that law. *See* Stekloff Decl. Ex. 2, *Johnson* Order at 30.

12           **A.    Dr. Benbrook's Opinions Regarding Monsanto's Compliance With Legal**
13                   **Duties and EPA Regulations Are Improper.**

14           Dr. Benbrook seeks to opine that Monsanto violated federal law and EPA regulations,

15   including FIFRA § 6(a)(2)'s "adverse effects" reporting regulations, and that Monsanto "failed

16   to meet [its] obligation by failing to warn about the risks of oncogenicity, genotoxicity, and most

17   recently, carcinogenicity." Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶¶ 13, 17, 736.  *See also*

18   Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 141-143 (opining as to Monsanto's legal

19   reporting obligations and Monsanto's alleged failure to meet them).[6]  These are legal conclusions

20   that are not appropriate for expert testimony.  *See*, *e.g.*, *Lukov v. Schindler Elevator Corp.*, No.

21   5:11-cv-00201 EJD, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (excluding expert

22   testimony on legal issue); *United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) ("Moreover,

23   it is 'the judge and not a witness' that 'is to instruct the fact finder on the applicable principles of

24   law.'").

25   _____

26   [6] *See also*, *e.g.*, Stekloff Decl. Ex. 1, Benbrook Rpt. at ¶ 16 ("Monsanto's zeal in protecting
     glyphosate's FTO directly conflicts with health-protection obligations imposed by federal law
27   ....."); *Id.* at ¶ 17 ("Monsanto failed to meet obligations imposed on it by federal law and EPA
     regulations."); Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 170:24-171:2, 177:4-22.

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

1    Dr. Benbrook has no real expertise on FIFRA § 6(a)(2), his opinions are derived from a

2    selective review of corporate emails, and his opinions as to Monsanto's compliance with

3    regulations and federal law are not the proper subject of expert testimony.  Judge Karnow thus

4    held that Dr. Benbrook "may not opine on Monsanto's legal obligations." Stekloff Decl. Ex. 2,

5    *Johnson* Order at 30.  The same result should follow here.

6    **B.**   **Dr. Benbrook Improperly Speculates About What Monsanto Should Have Done Differently and About the Customs and Practice of EPA, Including What Warnings or Labeling Might Have Been Accepted by EPA.**

7

8

9    Dr. Benbrook also should not be permitted to testify as to what he thinks Monsanto

10   should have done differently—such as conducting different or additional testing or providing

11   different warnings—or whether EPA would have accepted such warnings.[7]  His report and past

12   deposition testimony is rife with speculation about what warnings should have been included and

13   the EPA's warnings practices and/or customs, often dating back decades:

14   ▪ "Monsanto could have peripherally put a statement on its label that there's some
        evidence of potential to cause oncogenic risk from one of the studies submitted, and
15       in an abundance of caution, we've added additional PPE.  And I am quite certain that
        OPP would not object to the addition of such language on a label."  Stekloff Decl. Ex.
16       3, Benbrook *Johnson* Dep. at 473:15-24.

17   ▪ "In my opinion, by or about 1986, Monsanto could have and should have added a
        warning to Roundup labels alerting applicators that heavy and/or sustained exposures
18       to Roundup might contribute to the risk of certain cancers." Stekloff Decl. Ex. 1,
        Benbrook Rpt. at ¶ 11.

19   Dr. Benbrook lacks the qualifications necessary to opine about what warnings should have been

20   included under EPA regulations or what warnings EPA may or may not have accepted.  As

21   Judge Karnow noted, "Dr. Benbrook's background does not demonstrate much familiarity with

22   EPA or…regulatory compliance."  Stekloff Decl. Ex. 2, *Johnson* Order at 30.

23   ---
     [7] Although Dr. Benbrook purported to offer an opinion on general causation in an earlier case,
24   *see* Stekloff Decl. Ex. 6, Dep. of Dr. Charles Benbrook, May 23, 2018 and Aug. 14, 2018, *Hall v. Monsanto Co.*, No. 1622-CC01071 ("Benbrook Hall Dep."), at 603:24-604:8, Plaintiff's
25   counsel has represented that "Dr. Benbrook is not being offered on causation." *See* Stekloff Decl. Ex. 1, Benbrook Rpt.; Stekloff Decl. Ex. 4, Benbrook *Hardeman* Dep. at 238:7-8.  To the extent
26   Dr. Benbrook does attempt to offer a general causation opinion, such opinion must be excluded because (1) Dr. Benbrook does not have the qualifications to opine regarding these scientific
27   issues; and (2) Dr. Benbrook's general causation opinion falls well outside the scope of his expert report in this case.  *See* Stekloff Decl. Ex. 1, Benbrook Rpt.

28

- 13 -

1    Moreover, Dr. Benbrook's labeling and warning opinions are contrary to the repeated

2  EPA determinations that glyphosate is not carcinogenic to humans, and contrary to his own

3  testimony that label directions and precautions are intended to translate risk assessments of the

4  EPA's Office of Pesticide Programs. Stekloff Decl. Ex. 3, Benbrook *Johnson* Dep. at 400:18-

5  401:4.   For example, Dr. Benbrook agreed that the EPA, as recently as December 2017,

6  determined that glyphosate-based herbicides are not genotoxic, and agreed that EPA could, at

7  any time, demand that Monsanto conduct further genotoxicity testing on its glyphosate-based

8  herbicides, but it has never done so. *See id.* at 466:5-13, 481:4-16. Dr. Benbrook also admitted

9  that Monsanto has satisfied *all* EPA-required toxicology data requirements. *See, e.g.*, *id.* at

10  128:21-130:2; Stekloff Decl. Ex. 6, Benbrook *Hall* Dep. at 110:24-111:5, 115:23-116:2.

11    Dr. Benbrook should not be permitted to present these opinions to the jury, as they

12  suggest that Monsanto had legal or other obligations to act differently, and they invade the role

13  of the Court to instruct the jury on the law.   These opinions also amount to speculation and

14  improperly invade the jury's role as the decision-maker on the adequacy of Monsanto's actions

15  under applicable law. *See also* Stekloff Decl. Ex. 2, *Johnson* Order at 30 (ruling that Dr.

16  Benbrook "may not offer an opinion as to whether the EPA would have approved an amendment

17  to the Roundup label," as he "has no specific expertise pertaining to the EPA's approval of

18  amended labels").

19    **C.    Dr. Benbrook's Opinions that Monsanto Defrauded or Misled the EPA Are
20          Inadmissible and Preempted by Federal Law.**

21    To the extent Dr. Benbrook seeks to opine that Monsanto defrauded or misled the EPA,

22  such testimony should be excluded because he "brings no relevant expertise to the table on that

23  issue." Stekloff Decl. Ex. 2, *Johnson* Order at 31; *see also* Section I, *supra.*   Moreover, Dr.

24  Benbrook has admitted that he is not aware of the EPA ever finding that Monsanto

25  misrepresented anything regarding the safety of its GBHs.  Stekloff Decl. Ex. 6, Benbrook *Hall*

26

27

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

Dep. at 150:11-15.   Additionally, any claims that Monsanto defrauded or misled the EPA are preempted by federal law.[8]

## CONCLUSION

Dr. Benbrook seeks to offer the same opinions in this case that were excluded in *Johnson*. He attempts to substitute his personal opinions for the opinion of the jury, under the guise of "expertise" that he does not possess.   The jury is fully capable of reviewing and interpreting the documents in this case and reaching their own conclusions about those documents and Monsanto's actions in light of the applicable law as instructed by this Court.   Dr. Benbrook's proffered expert testimony should be excluded.

---

[8] *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (holding that state-law fraud-on-the-FDA claims were impliedly preempted); *see also Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205, 1208 (9th Cir. 2002) (finding that the "rationale articulated by the Supreme Court in *Buckman* applies" to EPA "cases involving fraud-on-the-agency labeling allegations"); *Giglio v. Monsanto Co.*, No. 15-cv-2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016) ("Plaintiff's claims based on failure to warn the EPA of dangers of Roundup are preempted.").

1    DATED: January 3, 2019                    Respectfully submitted,

2                                              /s/ Brian L. Stekloff

3                                              Brian L. Stekloff (*pro hac vice*)
                                               (bstekloff@wilkinsonwalsh.com)
4                                              Rakesh Kilaru (*pro hac vice*)
                                               (rkilaru@wilkinsonwalsh.com)
5                                              WILKINSON WALSH + ESKOVITZ LLP
                                               2001 M St. NW, 10th Floor
6                                              Washington, DC 20036
                                               Tel: 202-847-4030
7                                              Fax: 202-847-4005

8                                              Pamela Yates (CA Bar No. 137440)
                                               (Pamela.Yates@arnoldporter.com)
9                                              ARNOLD & PORTER KAYE SCHOLER
10                                             777 South Figueroa St., 44th Floor
                                               Los Angeles, CA 90017
11                                             Tel: 213-243-4178
                                               Fax: 213-243-4199
12
13                                             Eric G. Lasker (*pro hac vice*)
                                               (elasker@hollingsworthllp.com)
14                                             HOLLINGSWORTH LLP
                                               1350 I St. NW
15                                             Washington, DC 20005
                                               Tel: 202-898-5843
16                                             Fax: 202-682-1639

17
                                               Michael X. Imbroscio (*pro hac vice*)
18                                             (mimbroscio@cov.com)
                                               COVINGTON & BURLING LLP
19                                             One City Center
                                               850 10th St. NW
20                                             Washington, DC 20001
                                               Tel: 202-662-6000
21
22                                             Attorneys for Defendant
                                               MONSANTO COMPANY
23

24

25

26

27

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 3rd day of January 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

               /s/ Brian L. Stekloff_____

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF CHARLES BENBROOK
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC