# EXHIBIT 5

**Pages 1 - 96**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS ) <br> LIABILITY LITIGATION. ) <br> ) <br> _____ ) <br> ) <br> EMANUEL RICHARD GIGLIO, ) <br> ) <br>        Plaintiff, ) <br> ) <br>  VS. ) <br> ) <br> MONSANTO COMPANY, ) <br> ) <br>        Defendant. ) <br> _____ ) | **NO. 16-md-02741 VC** <br><br><br><br><br><br><br> **NO. C 16-05658 VC** |

San Francisco, California
Wednesday, December 5, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        ANDRUS WAGSTAFF PC
        7171 W. Alaska Drive
        Lakewood, Colorado  80226
   **BY:** **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
        **DAVID J. WOOL, ATTORNEY AT LAW**

        ANDRUS WAGSTAFF PC
        6315 Ascot Drive
        Oakland, California  94611
   **BY:** **KATHRYN M. FORGIE, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
             Official Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Plaintiffs:
                         WEITZ & LUXENBERG PC
 3                       700 Broadway
                         New York, New York  10003
 4               BY:     ROBIN L. GREENWALD, ATTORNEY AT LAW

 5                       THE MILLER FIRM LLC
                         108 Railroad Avenue
 6                       Orange, Virginia  22960
                 BY:     MICHAEL J. MILLER, ATTORNEY AT LAW
 7                       BRIAN BRAKE, ATTORNEY AT LAW
                         NANCY G. MILLER, ATTORNEY AT LAW
 8
                         LAW OFFICES OF TESFAYE W. TSADIK
 9                       The California Building
                         1736 Franklin Street - 10th Floor
10                       Oakland, California  94612
                 BY:     TESFAYE W. TSADIK, ATTORNEY AT LAW
11
                         AUDET & PARTNERS LLP
12                       711 Van Ness Avenue - Suite 500
                         San Francisco, California  94102
13               BY:     MARK E. BURTON, ATTORNEY AT LAW

14                       LUNDY, LUNDY, SOILEAU & SOUTH LLP
                         501 Broad Street
15                       Lake Charles, Louisiana  70601
                 BY:     RUDIE R. SOILEAU, JR., ATTORNEY AT LAW
16
                         BAUM HEDLUND ARISTEI GOLDMAN PC
17                       12100 Wilshire Blvd. - Suite 950
                         Los Angeles, California  90025
18               BY:     ROBERT BRENT WISNER, ATTORNEY AT LAW

19   For Plaintiff Emanuel Richard Giglio:
                         GOMEZ TRIAL ATTORNEYS
20                       655 West Broadway - Suite 1700
                         San Diego, California  92101
21               BY:     JOHN H. GOMEZ, ATTORNEY AT LAW
                         KRISTEN K. BARTON, ATTORNEY AT LAW
22

23

24

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:
                         HOLLINGSWORTH LLP
 3                       1350 I Street NW
                         Washington, D.C.  20005
 4                BY:    KIRBY T. GRIFFIS, ATTORNEY AT LAW
                         ERIC G. LASKER, ATTORNEY AT LAW
 5
                         ARNOLD & PORTER KAYE SCHOLER LLP
 6                       777 S. Figueroa Street - 44th Floor
                         Los Angeles, California  90017
 7                BY:    PAMELA YATES, ATTORNEY AT LAW

 8                       ARNOLD & PORTER KAYE SCHOLER LLP
                         250 West 55th Street
 9                       New York, New York  10019
                  BY:    ANDREW K. SOLOW, ATTORNEY AT LAW
10
                         WILKINSON  WALSH ESKOVITZ LLP
11                       2001 M Street, NW - 10th Floor
                         Washington, D.C.  20036
12                BY:    BRIAN L. STEKLOFF, ATTORNEY AT LAW

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   specific causation"?
 2           MS. YATES:  Yes, as it relates to Mr. Hardeman, the
 3   foundation for her case-specific opinions at trial.
 4           THE COURT:  But why wouldn't the foundation for her
 5   case-specific opinions be given by the general causation
 6   experts who you put up at Phase I?
 7           MS. YATES:  Because, candidly, I'm not sure I'd like
 8   to call an epidemiologist unless I want my jurors sleeping.
 9   That's as honest as I can be, Your Honor.
10           THE COURT:  But the point of Phase I was for the
11   parties to put up their experts on general causation --
12           MS. YATES:  Right.
13           THE COURT:  -- and give them an opportunity to have at
14   each other to determine if any of them would be excluded.
15           MS. YATES:  Right.
16           THE COURT:  And there was a motion to exclude their
17   experts and there was a motion to exclude your experts, and we
18   adjudicated those motions and we decided whose experts general
19   causation testimony would be allowed at trial and whose expert
20   causation testimony would not be allowed at trial -- whose
21   general causation testimony would not be allowed at trial.
22         And now you're telling me that you have somebody else who
23   you want to come in and testify on general causation who was
24   not put to the test at Phase I, and that's I guess what I'm not
25   understanding.
```

```
 1          I thought we all understood that the purpose of Phase I is
 2   to figure out who would be able to testify about general
 3   causation.  So that's the assumption I was operating under.
 4          MS. YATES:  And I think that's correct within certain
 5   parameters.
 6          I don't believe we ever intended for our general experts
 7   to then carry that forward at trial.  We understand a Daubert
 8   hearing, Your Honor.  We understand that we have to -- if we're
 9   going to put our experts on, "Dr. Levine, you understand this
10   Court has found, now explain your methodology as to why that's
11   not correct in Mr. Hardeman," but how much general causation
12   evidence and which witnesses I put on at trial is a vastly
13   different decision.
14          THE COURT:  So who are the experts that you've
15   designated for the Hardeman trial?
16          MS. YATES:  So there's Dr. Alexandra Levine.
17      Hold on a second, Your Honor, because we have three cases
18   and somewhat different experts.
19      So we have Dr. Levine, Dr. Arbor.
20          THE COURT:  Arbor?
21          MS. YATES:  Yes.
22          THE COURT:  Okay.
23          MS. YATES:  We have Dr. Grossbard.
24          THE COURT:  Gross what?
25          MS. YATES:  Bard, B-A-R-D.
```

1       We have -- and, I'm sorry, this is for all cases.  I don't
2  have them designated by case name.  If you give me a moment,
3  Your Honor, I'll find my specifics.
4            **THE COURT:**  Sure.
5            **MS. YATES:**  Because there are different types of NHL.
6  So, for example, Dr. Bello is case-specific in the Stevick
7  case.  So let me know if you would like that detail.  I'll
8  go --
9            **THE COURT:**  Sure, I would.
10           **MS. WAGSTAFF:**  And, Your Honor, while she's looking
11 for that, I would just like to take a moment to respond to
12 that.
13      And, of course, plaintiffs completely oppose new general
14 causation experts --
15      I'm sorry about that.  That was my fault.
16           **THE COURT:**  I think you've just got to avoid getting
17 too close.  The microphones are terrible in here, but you've
18 just got to avoid getting too close or too far from them.
19           **MS. WAGSTAFF:**  Okay.  So, you know, as you recall,
20 Monsanto asked for this bifurcation and here we are two years
21 later; and if Dr. Levine is to give general causation opinions,
22 we're going to have to put her through a full *Daubert* and do
23 this whole thing all over again.  And I ask the Court:  What
24 was the purpose of the last two years?
25      And you're absolutely right that all the parties were

1  operating under the assumption that no general causation
2  testimony would be given anew, and that's what we decided again
3  at the last hearing.
4       So I think that what Ms. Yates is trying to do is
5  circumvent what we've been doing for the last couple years, and
6  she's trying to get in new general causation testimony because
7  she doesn't like the testimony that her experts currently are
8  giving.
9            **MS. YATES:**  No, Your Honor, that's actually simply not
10 the case.
11           **THE COURT:**  Yeah, I doubt that's the case.  But can I
12 get a list?
13           **MS. YATES:**  Yes, of course.
14           **THE COURT:**  So Levine, Arbor, Grossbard?
15           **MS. YATES:**  Steidl, S-T-E-I-D-L; and Al-Khatib, A-L
16 hyphen K-H-A-T-I-B.  Those are Hardeman.
17           **THE COURT:**  So those are the only experts you've
18 designated for Hardeman?
19           **MS. YATES:**  And I think there's a Dr. Sullivan as
20 well.
21           **MS. WAGSTAFF:**  Those are the only case-specific.  They
22 designated about six or seven other experts.
23           **THE COURT:**  So you're saying you didn't designate
24 Mucci and like the other epidemiologists who you put up at
25 Phase I?

1       **MS. YATES:**  Yes, Your Honor.  These are case specific,
2  yes.
3       **THE COURT:**  Those are the case-specific ones.
4       **MS. YATES:**  Yes.
5       **THE COURT:**  I was asking who you designated, all the
6  witnesses.
7       **MS. YATES:**  All of them.  I'm sorry.  So I'm going
8  with depositions and I don't have our designations.  But, yes,
9  we designated Dr. Mucci and we may or may not call him.
10      **MS. WAGSTAFF:**  So, Your Honor --
11      **THE COURT:**  Well, I think you better because I don't
12 think there's any other way you can get in general causation
13 testimony.
14      **MS. YATES:**  Well, let me slow this down a little bit,
15 Your Honor, because I feel as if we're talking a little bit in
16 a vacuum here.
17      I would like you to see the reports because I think it's
18 been a little bit out of context in terms of what they have in
19 terms of general causation, and I'm very concerned that we're
20 getting pushed into this quagmire that when you see the
21 reports, we don't need to go there.
22      **THE COURT:**  Okay.
23      **MS. YATES:**  It's not starting over.  It's not anew.
24 It's the foundation for their case-specific methodology, which
25 is based on a differential diagnosis.  How do you rule things

1  in?  How do you rule things out?
2       And I think if we take a step back, I think you'll see
3  that we take very seriously what went on and we take those
4  rulings seriously.  We fully understand the Court's opinion as
5  to what our experts will say at a *Daubert* hearing.  And then I
6  think you will see -- once you see the reports, you'll
7  understand what our goals are with them being case specific at
8  trial.
9       **THE COURT:**  Well, that statement is fine for now, but
10 the idea that you -- I'm skeptical of the idea that you will be
11 able to do much in the way of general causation without
12 bringing to trial experts who testify on general causation.
13      If you don't bring any of the experts you used at
14 Phase I on general causation, then I think you are going to
15 have -- if you are operating under the assumption that you
16 could pull that off, I'm telling you now that I think you're
17 going to have a problem because it would seem, then, that you
18 would be planning to bring in through other witnesses' perhaps,
19 you know, testimony that seeks to rebut what Dr. Weisenburger
20 testifies to on the general causation front.
21      **MS. YATES:**  Your Honor, if I'm bringing in an expert
22 to really get into the general science, I understand what the
23 Court is saying.  Why can't I put on a defense that is just one
24 case-specific expert with the foundation for that testimony?
25      **THE COURT:**  Well, you could, but -- you certainly

1  could, but if it's -- as long as it is not using the
2  case-specific experts who were not put to the test at
3  Phase I to get in testimony that is similar to the testimony we
4  considered at Phase I.
5         **MS. YATES:**  I understand, but at the same time the
6  ruling went against us in Phase I and clearly if I call someone
7  at trial, they're not going to abide by your Phase I ruling
8  because they are going to say "no general cause" at trial.
9         **THE COURT:**  I don't understand what you're saying.
10        **MR. LASKER:**  Your Honor, I just want to make one point
11 because I'm a bit confused.
12     With a differential diagnosis, let's posit it this way,
13 there are numerous risk factors.  Okay?  And let's say you're
14 selecting among risk factors and saying which is more likely,
15 and let's say that there is one risk factor that has an arch
16 ratio of five.  A specific causation expert, for example, on
17 the defense would have to discuss what they understand about
18 the Actel study and the epidemiology with respect to glyphosate
19 in order to explain how they make a differential.
20     So to that extent, it's impossible, frankly, to be able to
21 testify to a differential diagnosis without providing that type
22 of testimony, and that's the issue I think that's confusing
23 things.
24        **THE COURT:**  Right.  And I was assuming that it would
25 be impossible to have a strict delineation between the concept

1  of general causation and the concept of specific causation.
2      I suppose you could just call somebody, as they apparently
3  plan to do, to testify only about general causation --
4  right? -- and just not get into Hardeman, but I understand the
5  concept that when you're testifying about specific causation,
6  you know, concepts from general causation are going to bleed
7  into it; right?
8      But if -- and this is not something we're going to resolve
9  now, but it's just important for me that you know the concerns
10 that I have about this discussion.  If you're going to put up a
11 specific causation expert and they're going to testify about
12 the different risk factors and they're going to get to the risk
13 factor of glyphosate and as part of explaining why they don't
14 think glyphosate caused Mr. Hardeman's cancer, they're going to
15 do a repeat of everything that Dr. Mucci said, that's not
16 appropriate.
17     **MR. LASKER:**  Right.
18     **THE COURT:**  Because you should have had that person
19 testify to that at the Phase I proceeding.
20     **MR. LASKER:**  Right.  I don't think -- I think that may
21 be where the confusion is.  I don't think we have --
22     **THE COURT:**  Or even half of what Dr. Mucci said.
23     **MR. LASKER:**  I'm sorry.  I misspoke.
24     **THE COURT:**  If they spent half the time saying what
25 Dr. Mucci said.

1    **MR. LASKER:**  No, I understand that.  I don't think we
2    have an expert who, for instance, is going to be talking about
3    all the issues of epidemiology or an expert talking about all
4    the issues of avenue, all that stuff.  That's not the issue
5    with our experts.
6        **MS. YATES:**  And apparently I'm just not being very
7    clear.
8        **THE COURT:**  You're not going to bring somebody to
9    testify about -- what was it?  The vault?  Where one of your
10   experts went to, like --
11       **MR. LASKER:**  Yes.  Right.
12       **THE COURT:**  What was that room called?  It wasn't the
13   vault.
14       **MR. LASKER:**  It was a glyphosate --
15       **MS. WAGSTAFF:**  The glyphosate reading room.
16       **MR. LASKER:**  The reading room in Europe, yes.
17   Dr. Steidl is not going to --
18       **THE COURT:**  That's like up there with the
19   Eiffel Tower.
20       **MS. YATES:**  Yeah.  No, Your Honor.  No, Your Honor.
21   And I do think that --
22       **THE COURT:**  Glyphosate reading room.  I forgot -- I
23   went to Spain in the spring.  I forgot to go to the glyphosate
24   reading room.
25       **MR. LASKER:**  You missed that one, Your Honor.