# Exhibit 9

timely notice of intent and extension request consistent with 98.234(f)(8)(ii) can automatically use best available monitoring method through June 30, 2012, for the specific parameters identified in their notification of intent and best available monitoring methods request regardless of whether the best available monitoring methods request is ultimately approved. Owners or operators that submit a notice of intent but do not follow up with a best available monitoring methods request by March 30, 2012 cannot use best available monitoring methods in 2012. For 2012, when an owner or operator has submitted a notice of intent and a subsequent best available monitoring method extension request, use of best available monitoring methods will be valid, upon approval by the Administrator, until the date indicated in the approval or until December 31, 2012, whichever is earlier. For reporting years after 2012, a new request to use best available monitoring methods must be submitted by June 30th of the year prior to the reporting year for which use of best available monitoring methods is sought.

\* \* \* \* \*

[FR Doc. 2013–10184 Filed 4–30–13; 8:45 am]
**BILLING CODE 6560–50–P**

# ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 180**

**[EPA–HQ–OPP–2012–0132; FRL–9384–3]**

## Glyphosate; Pesticide Tolerances

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** This regulation establishes tolerances for residues of glyphosate in or on multiple commodities which are identified and discussed later in this document. Interregional Research Project Number 4 (IR–4) requested these tolerances under the Federal Food, Drug, and Cosmetic Act (FFDCA).

**DATES:** This regulation is effective May 1, 2013. Objections and requests for hearings must be received on or before July 1, 2013, and must be filed in accordance with the instructions provided in 40 CFR part 178 (see also Unit I.C. of the **SUPPLEMENTARY INFORMATION**).

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA–HQ–OPP–2012–0132, is available at *http://www.regulations.gov* or at the Office of Pesticide Programs Regulatory Public Docket (OPP Docket) in the Environmental Protection Agency Docket Center (EPA/DC), EPA West Bldg., Rm. 3334, 1301 Constitution Ave. NW., Washington, DC 20460–0001. The Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the OPP Docket is (703) 305–5805. Please review the visitor instructions and additional information about the docket available at *http://www.epa.gov/dockets.*

**FOR FURTHER INFORMATION CONTACT:** Andrew Ertman, Registration Division, Office of Pesticide Programs, Environmental Protection Agency, 1200 Pennsylvania Ave. NW., Washington, DC 20460–0001; telephone number: (703) 308–9367; email address: *ertman.andrew@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. General Information

### A. Does this action apply to me?

You may be potentially affected by this action if you are an agricultural producer, food manufacturer, or pesticide manufacturer. The following list of North American Industrial Classification System (NAICS) codes is not intended to be exhaustive, but rather provides a guide to help readers determine whether this document applies to them. Potentially affected entities may include:

• Crop production (NAICS code 111).
• Animal production (NAICS code 112).
• Food manufacturing (NAICS code 311).
• Pesticide manufacturing (NAICS code 32532).

### B. How can I get electronic access to other related information?

You may access a frequently updated electronic version of EPA's tolerance regulations at 40 CFR part 180 through the Government Printing Office's e-CFR site at *http://www.ecfr.gov/cgi-bin/text-idx?&c=ecfr&tpl=/ecfrbrowse/Title40/40tab_02.tpl.*

### C. How can I file an objection or hearing request?

Under FFDCA section 408(g), 21 U.S.C. 346a, any person may file an objection to any aspect of this regulation and may also request a hearing on those objections. You must file your objection or request a hearing on this regulation in accordance with the instructions provided in 40 CFR part 178. To ensure proper receipt by EPA, you must identify docket ID number EPA–HQ–OPP–2012–0132 in the subject line on the first page of your submission. All objections and requests for a hearing must be in writing, and must be received by the Hearing Clerk on or before July 1, 2013. Addresses for mail and hand delivery of objections and hearing requests are provided in 40 CFR 178.25(b).

In addition to filing an objection or hearing request with the Hearing Clerk as described in 40 CFR part 178, please submit a copy of the filing (excluding any Confidential Business Information (CBI)) for inclusion in the public docket. Information not marked confidential pursuant to 40 CFR part 2 may be disclosed publicly by EPA without prior notice. Submit the non-CBI copy of your objection or hearing request, identified by docket ID number EPA–HQ–OPP–2012–0132, by one of the following methods:

• *Federal eRulemaking Portal: http://www.regulations.gov.* Follow the online instructions for submitting comments. Do not submit electronically any information you consider to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute.
• *Mail:* OPP Docket, Environmental Protection Agency Docket Center (EPA/DC), (28221T), 1200 Pennsylvania Ave. NW., Washington, DC 20460–0001.
• *Hand Delivery:* To make special arrangements for hand delivery or delivery of boxed information, please follow the instructions at *http://www.epa.gov/dockets/contacts.html.* Additional instructions on commenting or visiting the docket, along with more information about dockets generally, is available at *http://www.epa.gov/dockets.*

## II. Summary of Petitioned-For Tolerance

In the **Federal Register** of May 2, 2012 (77 FR 25954) (FRL–9346–1), EPA issued a document pursuant to FFDCA section 408(d)(3), 21 U.S.C. 346a(d)(3), announcing the filing of a pesticide petition (PP 2E7979) by IR–4, 500 College Rd. East, Suite 201 W, Princeton, NJ 08540. The petition requested that 40 CFR 180.364 be amended by establishing tolerances for residues of the herbicide glyphosate *N*-(phosphonomethyl) glycine in or on the raw agricultural commodity teff, forage and teff, hay at 100 parts per million (ppm) and oilseed crops, group 20 at 40 ppm. The petition also requested amendments to the tolerances in 40 CFR 180.364 as follows: Vegetable, root and tuber, group 1, except sugar beet, from 0.2 ppm to 6.0 ppm; vegetable, bulb, group 3 at 0.2 ppm to

glyphosate tolerances in 40 CFR 180.364. EPA assessed dietary exposures from glyphosate in food as follows:

i. *Acute exposure.* Quantitative acute dietary exposure and risk assessments are performed for a food-use pesticide, if a toxicological study has indicated the possibility of an effect of concern occurring as a result of a 1-day or single exposure.

No such effects were identified in the toxicological studies for glyphosate; therefore, a quantitative acute dietary exposure assessment is unnecessary.

ii. *Chronic exposure.* In conducting the chronic dietary exposure assessment EPA used food consumption information from the United States Department of Agriculture (USDA) National Health and Nutrition Examination Survey, What We Eat in America, (NHANES/WWEIA). This dietary survey was conducted from 2003 to 2008. As to residue levels in food, EPA assumed tolerance level residues and 100 percent crop treated (PCT) for both proposed and existing commodities.

iii. *Cancer.* Based on the data summarized in Unit III.A., EPA has concluded that glyphosate does not pose a cancer risk to humans. Therefore, a dietary exposure assessment for the purpose of assessing cancer risk is unnecessary.

iv. *Anticipated residue and percent crop treated (PCT) information.* EPA did not use anticipated residue and/or PCT information in the dietary assessment for glyphosate. Tolerance level residues and/or 100 PCT were assumed for all food commodities.

2. *Dietary exposure from drinking water.* The Agency used both a screening level water exposure model (surface water) as well as monitoring data (ground water) in the dietary exposure analysis and risk assessment for glyphosate in drinking water. The simulation model takes into account data on the physical, chemical, and fate/transport characteristics of glyphosate. Further information regarding EPA drinking water models used in pesticide exposure assessment can be found at *http://www.epa.gov/oppefed1/models/water/index.htm.*

Based on the Pesticide Root Zone Model/Exposure Analysis Modeling System (PRZM/EXAMS) and monitoring data from the National Water-Quality Assessment Program (NAWQA), the estimated drinking water concentrations (EDWCs) of glyphosate for chronic exposures are estimated to be 8.11 parts per billion (ppb) for surface water and 2.03 ppb for ground water.

Modeled estimates of drinking water concentrations were directly entered into the dietary exposure model. For chronic dietary risk assessment, the water concentration of value 8.11 ppb was used to assess the contribution to drinking water.

3. *From non-dietary exposure.* The term ''residential exposure'' is used in this document to refer to non-occupational, non-dietary exposure (e.g., for lawn and garden pest control, indoor pest control, termiticides, and flea and tick control on pets).

Glyphosate is currently registered for the following uses that could result in residential exposures: Turf (including golf courses and residential lawns) and for aquatic application. EPA assessed residential exposure using the following assumptions:

Based on the registered residential use patterns, there is a potential for short-term dermal and inhalation exposures to homeowners who mix and apply products containing glyphosate (residential handlers). However, since short- and intermediate-term dermal or inhalation endpoints were not selected, a quantitative exposure risk assessment was not completed.

Based on the registered use patterns, children 1–2 years old may have short-term post-application incidental oral exposures from hand-to-mouth behavior on treated lawns and swimmers (adults and children 3–6 years old) may have short-term post-application incidental oral exposures from aquatic uses. Based on the soil half-life for glyphosate, intermediate-term soil ingestion was also considered for children 1<2 years old. The incidental oral scenarios for the turf assessment (i.e., hand-to-mouth, object-to-mouth, and soil ingestion) should be considered inter-related and it is likely that they occur interspersed amongst each other across time. Combining these scenarios would be overly conservative because of the conservative nature of each individual assessment. Therefore, none of the incidental oral scenarios were combined.

Further information regarding EPA standard assumptions and generic inputs for residential exposures may be found at *http://www.epa.gov/pesticides/trac/science/trac6a05.pdf.*

4. *Cumulative effects from substances with a common mechanism of toxicity.* Section 408(b)(2)(D)(v) of FFDCA requires that, when considering whether to establish, modify, or revoke a tolerance, the Agency consider ''available information'' concerning the cumulative effects of a particular pesticide's residues and ''other substances that have a common mechanism of toxicity.''

EPA has not found glyphosate to share a common mechanism of toxicity with any other substances, and glyphosate does not appear to produce a toxic metabolite produced by other substances. For the purposes of this tolerance action, therefore, EPA has assumed that glyphosate does not have a common mechanism of toxicity with other substances. For information regarding EPA's efforts to determine which chemicals have a common mechanism of toxicity and to evaluate the cumulative effects of such chemicals, see EPA's Web site at *http://www.epa.gov/pesticides/cumulative.*

*D. Safety Factor for Infants and Children*

1. *In general.* Section 408(b)(2)(C) of FFDCA provides that EPA shall apply an additional tenfold (10X) margin of safety for infants and children in the case of threshold effects to account for prenatal and postnatal toxicity and the completeness of the database on toxicity and exposure unless EPA determines based on reliable data that a different margin of safety will be safe for infants and children. This additional margin of safety is commonly referred to as the Food Quality Protection Act Safety Factor (FQPA SF). In applying this provision, EPA either retains the default value of 10X, or uses a different additional SF when reliable data available to EPA support the choice of a different factor.

2. *Prenatal and postnatal sensitivity.* There is no quantitative or qualitative evidence of increased susceptibility of rat or rabbit fetuses to *in utero* exposure in developmental studies. A focal tubular dilation of the kidneys was observed in an older 3-generation reproductive study on rats at the 30-mg/kg/day level (HDT); however, a 2-generation reproductive study on rats did not observe the same effect at the 1,500 mg/kg/day level (HDT), nor were any adverse reproductive effects observed at any dose level. A clear NOAEL was established and the cRfD was set at a level well below this effect. Therefore, the endpoints selected for risk assessment are protective of the effects seen in the 3-generation rat reproduction study.

3. *Conclusion.* EPA has determined that reliable data show the safety of infants and children would be adequately protected if the FQPA SF were reduced to 1X. That decision is based on the following findings:

i. The toxicity database for glyphosate is complete.