# EXHIBIT 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROUNDUP PRODUCTS MDL No. 2741

LIABILITY LITIGATION

_______________________ Case No. 16-md-02741-VC

This document relates

to:

Stevick v Monsanto Co., et al.

Case No. 3:16-cv-2341-VC

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEO DEPOSITION OF

CHADI NABHAN, M.D.

December 14, 2018

2:50 p.m.

Chicago Marriott O'Hare

8835 West Higgins Road, Park Ridge, Illinois

Deanna Amore, CRR, CSR, RPR, 084-003999
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Chadi Nabhan, M.D.

APPEARANCES OF COUNSEL

On Behalf of the Plaintiff, ELAINE STEVICK:

ANDRUS WAGSTAFF
MS. KATHRYN M. FORGIE
1901 Harrison Street
Suite 1101
Oakland, California 94612
(310) 339-8214
kathryn.forgie@andruswagstaff.com
- and -
WEITZ & LUXENBERG, P.C.
MS. ROBIN L. GREENWALD
700 Broadway
New York, New York 10003
(313) 800-4170
rgreenwald@weitzlux.com
- and -
THE MILLER FIRM, LLC
MR. BRIAN BRAKE (via telephone)
108 Railroad Avenue
Orange, Virginia 22960
(540) 672-4224
bbrake@millerfirmllc.com

On Behalf of the Defendant, MONSANTO COMPANY:

ARNOLD & PORTER KAYE SCHOLER, LLP
MR. BERT L. SLONIM
250 West 55th Street
New York, New York 10019-971
(212) 836-8572
bert.slonim@arnoldporter.com
- and -
WILKINSON WALSH + ESKOVITZ
MS. CALI COPE-KASTEN
2001 M Street, NW
10th Floor
Washington, D.C. 20036
(202) 847-4030
ccope-kasten@wilkinsonwalsh.com

ALSO PRESENT:
Anthony Micheletto, Videographer

* * * *

I N D E X

WITNESS — EXAMINATION
CHADI NABHAN, M.D.
EXAMINATION BY MR. SLONIM — 7
EXAMINATION BY MS. GREENWALD — 57

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Innovative Oncology Consulting, LLC Invoice for Services Rendered in Stevick v Monsanto; NABHANMDLGROUP1000058 | 8 |
| Exhibit 2 | 11.20.2018 Expert Report of Dr. Chadi Nabhan | 9 |

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 3 | World Health Organization Classification of Tumours of Haematopoietic and Lymphoid Tissues | 19 |
| Exhibit 4 | 9.6.2018 The Permanente Medical Group Kaiser Foundation Hospitals Medical Record for Elaine M. Stevick; Confidential-Stevick-EStevick-KPNValley-MD-00010 | 31 |

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 5 | 3.12.2015 The Permanente Medical Group Kaiser Foundation Hospitals Medical Record for Elaine M. Stevick; Confidential-Stevick-EStevick-KPNValley-MD-002173 | 31 |
| Exhibit 6 | 11.9.2018 Excerpt of the Deposition of Elaine Stevick | 33 |

THE VIDEOGRAPHER: We are now on the record.
My name is Anthony Micheletto, videographer for Golkow Litigation Services.
Today's date is December 14, 2018. The time is 2:50 p.m. as indicated in the video screen.
This video deposition is being held in Chicago, Illinois, in the matter of Stevick versus Monsanto Corporation, et al., Case No. 3:16-cv-2341 in the United States District Court, Northern District of California.
The deponent today is Chadi Nabhan, MD, MBA.
Will counsel please identify themselves for the video record?
MS. GREENWALD: Robin Greenwald for the plaintiff.
MS. FORGIE: Kathryn Forgie of Andrus Wagstaff for the plaintiff.
MR. SLONIM: Bert Slonim with Arnold & Porter, on behalf of Monsanto.
MS. COPE-KASTEN: Cali Cope-Kasten, Wilkinson Walsh, on behalf of Monsanto.
MR. BRAKE: This is Brian Brake on behalf of the plaintiffs.
THE VIDEOGRAPHER: Our court reporter today is Deanna Amore. Please swear in the witness.

(Whereupon, the witness was duly sworn.)
THE WITNESS: I do.
MR. SLONIM: Good afternoon, Mr. Nabhan. Would you please state your name and full business address for the record?
THE WITNESS: Sure. First name is Chadi, C-h-a-d-i, last name is Nabhan, N-a-b-h-a-n. Current business address is 3651 Birchwood Avenue in Waukegan, Illinois 60085.
CHADI NABHAN, M.D.,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
EXAMINATION
BY MR. SLONIM:
Q. And you are a medical doctor; correct?
A. Yes.
Q. I am going to mark as Deposition Exhibit No. 1 a record that's been produced to us reflecting your invoice in this matter.

A. Sure.
(Whereupon, Exhibit 1 (Stevick) was marked for identification.)
BY MR. SLONIM:
Q. Does this reflect the amount of time you've spent working on the Stevick case?
A. Until December 3rd. There are additional hours I spent that I have not written in this report.
Q. Okay. I don't think you totaled these up. If I did the arithmetic correctly -- and you are welcome to check me -- it looks to me like this was 30 hours of time that was spent up and through December 3, 2018; is that correct?
A. Correct.
Q. And you bill your time at $550 an hour; correct?
A. I do.
Q. And then --
A. I have not billed this yet, but that's what I plan on billing.
Q. Okay. What's your best estimate of additional time that you have spent on this matter subsequent to December 3?
A. Maybe 10 to 15 at most.

Q. So you would estimate 40 to 55 hours total on the Stevick matter?
A. 40 to 45. Less than 50. I would say between 40 and 50.
Q. Thank you. I misadded.
A. Sure.
Q.
(Whereupon, Exhibit 2 (Stevick) was marked for identification.)
BY MR. SLONIM:
Q. I've marked this Deposition Exhibit No. 2, your expert report in this matter.
(Discussion off the record.)

BY MR. SLONIM:
Q. Can you identify this as your report regarding Ms. Stevick?
A. It is.
Q. And is that your signature on the last page?
A. Yes, it is.
Q. Did you personally author all of the substantive statements in this report?
A. I have.
Q. And does this disclose all of the opinions that you intend to offer in this matter?
A. Yes, unless something new happens between now and trial.
Q. And does this also disclose all of the bases for your opinions?
A. Yes.
Q. And you do not intend to offer any opinions regarding Ms. Stevick that are not disclosed in your expert report; correct?
A. I don't.

Page 14

[redacted]

Page 15

[redacted]

Page 16

[redacted]

Page 17

[redacted]

[redacted]

[redacted]

Q. I am going to mark as Deposition Exhibit No. 3 the World Health Organization classification of tumors of hematopoietic and lymphoid tissues. And it's a big document and --
A. Is that the paper by Swerdlow and colleagues?
Q. That's the -- that is the treatise by Swerdlow and colleagues that runs several hundred pages, but what I've done is just excerpted out the few pages that deal with [redacted]
(Whereupon, Exhibit 3 (Stevick) was marked for identification.)
BY MR. SLONIM:
Q. We've marked that as Deposition Exhibit No. 3. I'm going to hand it to you.
A. Thank you.

Q. Doctor, do you recognize this as the World Health Organization classification of non-Hodgkin lymphoma, among other types of tumors?
A. I'm just trying to see the date of this publication. What date is it?
Q. When I asked my legal assistants to copy it, I asked them to copy that.
A. I mean, that's fine. Nothing drastic has changed, but the last classification was published in 2016. I just want to make sure this is the last one. I can't see a date on it. But we can talk about it -- that's fine -- but there is no date here.
Q. Doctor, you are correct, and that was my fault.
A. That's okay.
Q. This is supposed to have been -- this should be the most recent classification. I think it's the -- is it the fourth edition?
A. So, yeah, the last paper that came out on the WHO classification was published sometime in the spring or summer of 2016. So it's about two and a half years ago. So -- and this was published in the journal "Blood," which I actually reference in my expert report. I believe this is coming from

a textbook that references this WHO classification. I just want make sure that this is the latest iteration of the classification because these do change a lot.
Q. Okay. Fair enough. If I have the opportunity, maybe we can 100 percent confirm that.

[redacted]

Page 22

[redacted]

[redacted]

[redacted]

BY MR. SLONIM:

Q. You know that there are studies of Roundup and the risk of non-Hodgkin lymphoma that look at various subtypes of non-Hodgkin lymphoma; correct?

A. Some studies have attempted to look at the subtypes as the subtypes were known at the time of particular analysis and depends on the number of cases that you are looking at. Because ultimately it's a matter of numbers of how many patients with

Page 24

this particular subtype, and I think you and I know that the ability to diagnose a particular subtype in the early 2000s is very different than the ability to do so in 2018, and that's really why the limitation of every study being able to look at these subtypes. But some studies did.

[redacted]

Page 25

[redacted]

Page 26

Page 27

Page 28

Page 29

Page 30

[redacted]

Page 31

[redacted] e

Page 32

[redacted]

Page 33

[redacted]

Page 34

.

Page 35

t

Page 36

Q.

Page 37

her

Page 38

[redacted]

[redacted]

Page 40

[redacted]

Page 41

[redacted]

[redacted]r.

[redacted].

[redacted]

[redacted]

Q. You don't have any evidence of synergistic risk factors for non-Hodgkin lymphoma; do you?

A. Not in that -- not in what you're talking about. It has not been looked at, but more on a molecular level, we have that.

Q. You can't cite me to any medical literature that states that risk factors for non-Hodgkin lymphoma have any kind of synergistic effect, can you?

A. Not necessarily synergistic effect but could be, again, an additional effect. I mean, when you talk synergy, you are meaning the -- both mechanisms of action are being synergized, and they are adding to either other. But at the same time, there is nothing in the medical literature that I'm aware of that says diabetes and hypertension are synergistic to cardiac disease, but we know -- we know that they are both risk factor; right?

I mean they may cause -- hypertension could cause problems with the arteries, and diabetes could add the problem to the arteries, all of these things. But on -- I think having several risk factors for a particular disease is well known, whether synergy is established or not.

Page 46

Sometimes you could have synergy; sometimes you don't. But you could have more than one risk factor for a particular disease. That's what I'm trying to say.
Q. I just want to make sure. I appreciate the fact you're an oncologist, and you're here testifying as an expert on oncology.
Is it your testimony that there is not medical evidence of synergistic effects for heart disease as between diabetes and hypertension?
A. That's not what I said. What I said is sometimes you could have two causal factors to a particular disease. Occasionally, you see synergy between them; sometimes you don't. Just because you can't establish synergy does not mean that two factors cannot cause a particular disease at the same time.
Q. Let's focus in on non-Hodgkin lymphoma.
A. Sure.
Q. And let's take -- let's separate it out. Can you cite any medical literature that says risk factors for non-Hodgkin lymphoma are synergistic?
A. Right now I can't.
Q. Can you cite any medical literature that says that risk factors for non-Hodgkin lymphoma are

Page 47

additive?
A. Okay. Do you want to explain to me what you mean by synergistic versus additive so I make sure we are speaking the same language?
Q. You tell me. What's it mean to you?
MS. GREENWALD: Objection. Form. You used it.
THE WITNESS: I need to understand your definition so I can answer your question properly. You brought it up. So I'm trying to -- to answer your question, can you explain to me?
BY MR. SLONIM:
Q. Do you have any basis -- do you have any basis to say that a person that has one risk -- that has multiple risk factors for non-Hodgkin lymphoma has -- is at an increased risk as compared with a person who has only one risk factor?
A. To me that's common sense. I mean, again, this is -- you know, again, there are certain things that you don't need a trial or a study for every single answer or every single question. Unfortunately, we'd love to answer any question with a citation or with literature, but if you have one risk factor versus three risk factors, if you ask a hundred oncologists, a hundred of them will say that somebody who has three risk factors is at

Page 48

higher risk than somebody who has one risk factor. We don't need a study for that. We don't need a citation for that. It's common sense.

Page 49



BY MR. SLONIM:

Q. How many days of exposure did the people that were in the Adreotti study have?

A. Is that relevant to this -- to Ms. Stevick's case specifically?

I'm just asking because I realize that we're doing case specific as opposed to general

causation. So I'm trying to link that question to this. Is this --

Q. Can you answer my question?

A. I am trying to remember. If you have the paper -- I think probably 40 -- I don't want to say something wrong. I believe it was a median of 48, but I apologize if I'm plus or minus a few days here and there. I believe it was 48, but I may be off by a couple of days.

[redacted]

[redacted]

MR. SLONIM: Why don't we take a break?
THE VIDEOGRAPHER: We are off the record at 3:53 p.m.
(A short break was taken.)
THE VIDEOGRAPHER: We are back on the record at 4:06 p.m.
BY MR. SLONIM:
Q. Dr. Nabhan, I don't have further questions at this time.
MR. SLONIM: I pass the witness.
MS. GREENWALD: I have a couple of questions.
MR. SLONIM: Oh, I'm so sorry. I was overanxious.
BY MR. SLONIM:
Q. Dr. Nabhan, while we were on the break, I was able to pull up, on a computer, the lengthy document from which the WHO classification system had been excerpted. That document is 592 pages, and when my legal assistants copied the beginning, they didn't get to page 5, unfortunately. Page 5 indicates that this is from the revised fourth edition, which was published by IARC in 2017. With that representation, is it your belief that this is the most current classification?
A. Yes, it is.

Q. Thank you.
MR. SLONIM: No further questions.
EXAMINATION
BY MS. GREENWALD:
[redacted]

[redacted]

[redacted]

MS. GREENWALD: I don't have any other questions.

MR. SLONIM: Nothing.

THE WITNESS: Thank you.

MR. SLONIM: Thank you very much, Mr. Nabhan.

THE VIDEOGRAPHER: We are off the record at 4:10 p.m. This includes concludes the video deposition of Chadi Nabhan MD, MBA.

C E R T I F I C A T E

I, DEANNA AMORE, a Shorthand Reporter and notary public, within and for the State of Illinois, County of DuPage, do hereby certify:

That CHADI NABHAN, M.D., the witness whose examination is hereinbefore set forth, was first duly sworn by me and that this transcript of said testimony is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of December 2018.

______________________________

Deanna M. Amore, CSR, RPR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROUNDUP PRODUCTS MDL No. 2741
LIABILITY LITIGATION
_________________________ Case No. 16-md-2741-VC
This document relates
to:
Stevick v Monsanto Co., et al.
Case No. 3:16-cv-2341-VC

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the entire transcript of my deposition taken in the above-captioned matter or the same has been read to me and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the ______ day of
______________, 20__.

___________________________________

CHADI NABHAN, M.D.

ERRATA SHEET

CORRECTIONS:

Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to_____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to_____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________
Page _____ Line _____ Reason _____
From _______________________ to _____________________