# EXHIBIT A

ANDRUS WAGSTAFF, PC
Aimee H. Wagstaff (SBN 278480)
Aimee.wagstaff@andruswagstff.com
7171 W. Alaska Drive
Lakewood, Colorado 80226
Telephone: 303-376-6360

**Attorneys for Plaintiffs**

### THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

### IN AND FOR THE COUNTY OF ALAMEDA

| ROUNDUP PRODUCTS CASES | ) JCCP 4953 – IN RE: Roundup Products |
|---|---|
| | ) |
| | ) JUDGE: Hon. Winifred Smith |
| | ) |
| | ) **PLAINTIFFS' AMENDED NOTICE OF** |
| THIS DOCUMENT RELATES TO: | ) **TAKING DEPOSITION OF EXPONENT,** |
| | ) **INC.'S PERSON(S) MOST QUALIFIED** |
| ALL ACTIONS | ) **AND REQUEST FOR PRODUCTION OF** |
| | ) **DOCUMENTS AND TANGIBLE** |
| | ) **THINGS AT DEPOSITION** |
| | ) |
| | ) Deposition Date: January 31, 2018 |
| | ) Time: 9:00 A.M. PT |
| | ) Location: The Westin Palo Alto |
| | ) 675 El Camino Real |
| | ) Palo Alto, CA 94301 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs in the above-captions action, pursuant to CCP § 2025.010 et seq., will take the deposition of Exponent Inc.'s Person(s) Most Qualified about the categories of testimony herein, on January 31, 2019 at The Westin Palo Alto, 675 El Camino Real, Palo Alto, CA 94301. The deposition will be taken before a certified court reporter and be videotaped, and shall continue from day to day, until complete.

1

PLEASE TAKE FURTHER NOTICE that the deponent is also required to produce for inspection and copying the DOCUMENTS requested in Attachment A hereto.

Dated: January 9, 2019

By: *(signature)*
Aimee H. Wagstaff
**Andrus Wagstaff, P.C.**
7171 W. Alaska Dr.
Lakewood, CO 80226
Tel: 720-208-9403
Fax: 303-376-6361
Aimee.wagstaff@andruswagstaff.com

# ATTACHMENT A

**SUBP-020**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Pedram Esfandiary, Esq. (SBN: 312569)<br>BAUM HEDLUND, ARISTEI, & GOLDMAN, P.C.<br>10940 Wilshire Blvd. 17th Floor<br>Los Angeles, CA 90024<br>TELEPHONE NO.: (310) 207-3233   FAX NO. *(Optional)*: (310) 820-7444<br>E-MAIL ADDRESS *(Optional)*: Pesfandiary@baumhedlundlaw.com<br>ATTORNEY FOR *(Name)*: Attorneys for JCCP Plaintiffs | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1221 Oak Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: County Administration Building

PLAINTIFF/PETITIONER: JCCP Plaintiffs
DEFENDANT/RESPONDENT: Monsanto Company; Superior Sod, LLC, et. al.

| **DEPOSITION SUBPOENA**<br>**FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS** | CASE NUMBER:<br>JCCP NO. 4953 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known)*:
Exponent, Inc.'s Person Most Qualified c/o Its Agent for Service of Process Richard L. Schlenker, 149 Commo

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS** in this action at the following date, time, and place:

Date: Dec 18, 2018    Time: 9:00 a.m. PT    Address: 625 El Camino Real, Palo Alto, Ca 94301

   a. [✓] As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)
   b. [✓] You are ordered to produce the documents and things described in item 3.
   c. [✓] This deposition will be recorded stenographically    [ ] through the instant visual display of testimony.
      and by [ ] audiotape    [✓] videotape.
   d. [✓] This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:

   See Attachment 3

   [✓] Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:

   See Attachment 4

   [✓] Continued on Attachment 4.

5. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

6. At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: November 8, 2018

*(signed)*

Pedram Esfandiary    Attorneys for JCCP Plaintiffs
(TYPE OR PRINT NAME)    (Proof of service on reverse)    (TITLE)    Page 1 of 2

## ATTACHMENT 3

## DEFINITIONS

A. "DOCUMENT(S)" shall be understood to include any record or communication which would be a "writing" within the meaning of Section 250 of the Evidence Code of the State of California or Rule 1001(1) of the Federal Rules of Evidence, and shall include, without limitation, any and all papers, photographs, films, records, memoranda, books, records, accounts, communications, e-mails, instant messages, writings, letters, telegrams, correspondence, notes of meetings or of conversations or of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writing or upon any mechanical or electronic or electrical recording devices, notes, accountants' statements or summaries, appraisals, work papers, reports, projects, tabulations, purchase orders, invoices, canceled checks or check stubs, receipts, studies, services, legal opinions, vouchers, minutes of meetings, designs, drawings, manuals, notebooks, work sheets, contracts, agreements, bills of lading, warehouse receipts, time sheets, promissory notes, diaries, desk calendars, circulars, charts, ledgers, schedules, licenses, financial statements, appointment books, payment records, stenographers' notebooks, punch cards, computer data bases and computer printout sheets, articles of incorporation, articles of association, bylaws, minutes, rules, written news, directives, hotel charges, telephone bills, stock transfer books, proposals, prospectuses, offers, orders, logs, and all drafts, revisions, and differing versions of any of the foregoing whether denominated formal, informal or otherwise, as well as all copies of any of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the originals, and all other documents or tangible things as those terms are used in Section 2031.010 of the Code of Civil Procedure.

B. The terms "YOU," "YOUR," or "EXPONENT" means Exponent, Inc. and shall include its affiliated corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, attorneys, accountants, employees, representatives,

representatives, as well as its predecessors in interest or name. Exponent, Inc. shall specifically include, but not be limited to include, "Failure Analysis Associates" and "ChemRisk."

    C.    "ALL" means "any and all" and the word "any" means "any and all."

    D.    The terms "CONCERNING," "RELATING," and/or "REGARDING" mean containing, alluding to, responding to, commenting upon, discussing, explaining, mentioning, analyzing, constituting, memorializing, comprising, repeating, incorporating, confirming, listing, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

    E.    The term "INCLUDING" means "including, but not limited to."

    F.    The term "COMMUNICATION" means and refers to every method and manner of transmitting or receiving data, opinions, thoughts, inquiries, representations and other information, whether orally, in writing, electronically, or otherwise, between two or more persons or entities.  Communications include drafts and other written information intended for communicating to another person, even if not ultimately transmitted to or received by another person.

    G.    "MONSANTO" means Defendant Monsanto Company and includes its respective affiliated corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives, as well as its predecessors in interest or name.

    H.    If not expressly stated, "CONTROL" means in your possession, custody, or control and under your direction, and includes in the possession, custody or control of those under the direction of your employee(s), subordinate(s), counsel, accountant(s), consultant(s), expert(s), parent(s) or affiliated corporation(s), and any person(s) purporting to act on your behalf.

    I.    The singular should be deemed to include the plural, and the masculine gender to include the feminine or neuter, where the context or circumstances so require or permit. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

J. "RELEVANT TIME PERIOD", unless otherwise indicated is January 1976 to the present and applies to all identified deposition topics and document requests.

K. The words "AND" and "OR" shall, where the circumstances so permit, be construed either conjunctively or disjunctively to bring within the scope of these document requests any information which might otherwise be construed to be outside their scope.

L. "MEDICAL LITERATURE" shall mean the common sense definition and shall include all abstracts, summaries, articles, literature, letters to the author or other written commentary, whether peer reviewed or not.

M. "Glyphosate-Based Formulations" ("GBFs") refers to the chemical glyphosate and all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate-based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

   N. "POEA" shall mean polyethoxylated tallow amine and refers to a type of surfactant used in Monsanto's GBFs.

   O. "AMPA" shall mean aminomethylphosphonic acid and refers to a metabolite of glyphosate.

   P. "TEST" or "TESTING" shall mean and refer to any kind of test as the term is understood and defined, shall be construed broadly, and includes examinations, experiments, trials, test, scientific analysis, examination, inspection, investigation or other activity in which data or information is acquired for the purpose of analysis or understanding. The term shall include, without limitation, tests which were contemplated or proposed but never undertaken or completed, and tests which are completed, ongoing or still in progress. The term includes "study" as defined herein.  Any Request for information concerning a test or testing shall be construed as including, without limitation, the following: The protocol for the conduct of the tests, the statement or description of the conditions under which the test was conducted, documents requesting the test and documents indicating how, why and when the testing shall be performed; documents containing the original raw test data, the written test report, and all attachments thereto; the test specifications including any criteria, including pass-fail criteria, and any summary, abstract, recommendation, charts, abstract, analysis, compilation, evaluation or interpretation and any video or audio. This definition includes all tests, or testing, regardless of whether the activity or conduct took place inside the United States or not.

   Q. "STUDY" or "STUDIES" shall mean and refer to any kind of research, inquiry, analysis or test as the terms are understood and defined, shall be construed broadly, and include, without limitation, any investigation or other activity in which data and information are gathered for analysis, reporting or understanding, regardless of the original intention of the study. The term shall include any study, including, without limitation, studies which are completed, ongoing or still in progress, and shall include all responsive studies, whether the activity took place in the United States or not.

**REQUESTED DOCUMENTS:**

NOTICE IS FURTHER GIVEN that the Person(s) Most Qualified shall produce the following documents and tangible things within twenty days of service of this Notice of Deposition to Kathryn Forgie, Esq., at 1901 Harrison Street, Suite 1100, Oakland, CA 94612. As an alternative, Undersigned will accept electronic service or will come to a reasonable place most convenient to Exponent to either pick up the documents or to make copies.

With respect to any documents withheld for privilege, please provide a privilege log in compliance with California law. With respect to each requested Document that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, please provide the following information separately as to each such Document: (a) A general description of the subject matter, author(s), sender(s), recipient(s), date; (b) The identity of each person who has received a copy or had an opportunity to receive a copy thereof; (c) The last custodian of the Document or copies thereof; and (d) The full particulars or circumstances whereby the Document was disposed of, destroyed, or otherwise lost.

1. All agreements or contracts by and between Monsanto and Exponent that relate to GBFs, AMPA, surfactants including but not limited to POEA, to include drafts and correspondence related to same;

2. Payment history of Monsanto and Exponent, Inc., to include all billing invoices or records and correspondence related to same;

3. Communications and documents related to the IARC Monograph 112;

4. Communications and documents related to claims or litigation alleging exposure to GBFs, AMPA, and/or surfactants including but not limited to POEA caused physical injury, including cancer;

5. All communications and documents related GBFs, AMPA, and/or surfactants including but not limited to POEA.  This specifically includes, but is not limited to, drafts of testing, medical literature or scientific analyses, memorandums, and/or letters to editors.

6. Drafts of medical and/or scientific journal articles concerning GBFs, AMPA, and/or surfactants including but not limited to POEA, whether prepared by any agent of Exponent or not;

7. All communications between Exponent and any agent of Monsanto which relate to testimony before any federal agency including the Environmental Protection Agency;

8. All communications between Exponent and any federal agency including the Environmental Protection Agency, that concern GBFs, AMPA, and/or surfactants including but not limited to POEA;

9. Any marketing material concerning GBFs, AMPA, or surfactants including but not limited to POEA, whether prepared by Exponent or not.  This request includes drafts;

10. Exponents position regarding whether GBF exposure can cause cancer and why;

11. Documents relied on or reviewed to prepare for this Deposition of Exponent's Person Most Qualified.

# **ATTACHMENT 4**

## **DEFINITIONS**

A. "DOCUMENT(S)" shall be understood to include any record or communication which would be a "writing" within the meaning of Section 250 of the Evidence Code of the State of California or Rule 1001(1) of the Federal Rules of Evidence, and shall include, without limitation, any and all papers, photographs, films, records, memoranda, books, records, accounts, communications, e-mails, instant messages, writings, letters, telegrams, correspondence, notes of meetings or of conversations or of telephone calls, interoffice memoranda or written communications of any nature, recordings of conversations either in writing or upon any mechanical or electronic or electrical recording devices, notes, accountants' statements or summaries, appraisals, work papers, reports, projects, tabulations, purchase orders, invoices, canceled checks or check stubs, receipts, studies, services, legal opinions, vouchers, minutes of meetings, designs, drawings, manuals, notebooks, work sheets, contracts, agreements, bills of lading, warehouse receipts, time sheets, promissory notes, diaries, desk calendars, circulars, charts, ledgers, schedules, licenses, financial statements, appointment books, payment records, stenographers' notebooks, punch cards, computer data bases and computer printout sheets, articles of incorporation, articles of association, bylaws, minutes, rules, written news, directives, hotel charges, telephone bills, stock transfer books, proposals, prospectuses, offers, orders, logs, and all drafts, revisions, and differing versions of any of the foregoing whether denominated formal, informal or otherwise, as well as all copies of any of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the originals, and all other documents or tangible things as those terms are used in Section 2031.010 of the Code of Civil Procedure.

B. The terms "YOU," "YOUR," or "EXPONENT" means Exponent, Inc. and shall include its affiliated corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, attorneys, accountants, employees, representatives,

representatives, as well as its predecessors in interest or name. Exponent, Inc. shall specifically include, but not be limited to include, "Failure Analysis Associates" and "ChemRisk."

   C. "ALL" means "any and all" and the word "any" means "any and all."

   D. The terms "CONCERNING," "RELATING," and/or "REGARDING" mean containing, alluding to, responding to, commenting upon, discussing, explaining, mentioning, analyzing, constituting, memorializing, comprising, repeating, incorporating, confirming, listing, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

   E. The term "INCLUDING" means "including, but not limited to."

   F. The term "COMMUNICATION" means and refers to every method and manner of transmitting or receiving data, opinions, thoughts, inquiries, representations and other information, whether orally, in writing, electronically, or otherwise, between two or more persons or entities.  Communications include drafts and other written information intended for communicating to another person, even if not ultimately transmitted to or received by another person.

   G. "MONSANTO" means Defendant Monsanto Company and includes its respective affiliated corporations, parents, subsidiaries, divisions, subdivisions, managers, directors, officers, employees, agents, representatives, as well as its predecessors in interest or name.

   H. If not expressly stated, "CONTROL" means in your possession, custody, or control and under your direction, and includes in the possession, custody or control of those under the direction of your employee(s), subordinate(s), counsel, accountant(s), consultant(s), expert(s), parent(s) or affiliated corporation(s), and any person(s) purporting to act on your behalf.

   I. The singular should be deemed to include the plural, and the masculine gender to include the feminine or neuter, where the context or circumstances so require or permit. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

J. "RELEVANT TIME PERIOD", unless otherwise indicated is January 1976 to the present and applies to all identified deposition topics and document requests.

K. The words "AND" and "OR" shall, where the circumstances so permit, be construed either conjunctively or disjunctively to bring within the scope of these document requests any information which might otherwise be construed to be outside their scope.

L. "MEDICAL LITERATURE" shall mean the common sense definition and shall include all abstracts, summaries, articles, literature, letters to the author or other written commentary, whether peer reviewed or not.

M. "Glyphosate-Based Formulations" ("GBFs") refers to the chemical glyphosate and all formulations of Monsanto's Roundup products that contain glyphosate, surfactants, adjuvants, and inert ingredients, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to- Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to-Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other glyphosate-based formulations developed, designed, distributed, licensed, manufactured, marketed or sold by Monsanto Company.

N.       "POEA" shall mean polyethoxylated tallow amine and refers to a type of surfactant used in Monsanto's GBFs.

O.       "AMPA" shall mean aminomethylphosphonic acid and refers to a metabolite of glyphosate.

P.       "TEST" or "TESTING" shall mean and refer to any kind of test as the term is understood and defined, shall be construed broadly, and includes examinations, experiments, trials, test, scientific analysis, examination, inspection, investigation or other activity in which data or information is acquired for the purpose of analysis or understanding. The term shall include, without limitation, tests which were contemplated or proposed but never undertaken or completed, and tests which are completed, ongoing or still in progress. The term includes "study" as defined herein.  Any Request for information concerning a test or testing shall be construed as including, without limitation, the following: The protocol for the conduct of the tests, the statement or description of the conditions under which the test was conducted, documents requesting the test and documents indicating how, why and when the testing shall be performed; documents containing the original raw test data, the written test report, and all attachments thereto; the test specifications including any criteria, including pass-fail criteria, and any summary, abstract, recommendation, charts, abstract, analysis, compilation, evaluation or interpretation and any video or audio. This definition includes all tests, or testing, regardless of whether the activity or conduct took place inside the United States or not.

Q.       "STUDY" or "STUDIES" shall mean and refer to any kind of research, inquiry, analysis or test as the terms are understood and defined, shall be construed broadly, and include, without limitation, any investigation or other activity in which data and information are gathered for analysis, reporting or understanding, regardless of the original intention of the study. The term shall include any study, including, without limitation, studies which are completed, ongoing or still in progress, and shall include all responsive studies, whether the activity took place in the United States or not.

## CATEGORIES OF TESTIMONY

NOTICE IS FURTHER GIVEN that Plaintiffs will depose EXPONENT'S Person(s) Most Qualified concerning the following categories of testimony, and Exponent shall designate one or more officers, directors, managing agents, employees, ex-employees, or other sufficiently knowledgeable person(s) to testify concerning the following topics. The requested topical information may require more than one person to be designated.

1. Nature, scope and history of Exponent's business(es) and operations;

2. Exponent's corporate structure;

3. The relationship between Exponent, "Failure Analysis Associates," "ChemRisk," and their predecessors;

4. The relationship between Exponent and Monsanto;

5. Exponent's marketing materials distributed to Monsanto, as well as the services offered;

6. Exponent's document retention policies, procedures and/or programs;

7. Compensation received by Exponent or its agents from Monsanto or its agents;

8. The process whereby Exponent selects authors and or participants for its tests, studies, research, and/or or medical literature;

9. The process whereby Exponent designs its test, studies, medical literature and/or other research, including but not limited to the process to design testing protocol;

10. All tests, studies, research, and/or medical literature regarding GBFs, AMPA, or surfactants including but not limited to POEA of which Exponent participated in any way. This specifically includes the information on who requested the test, study, research or literature and every person, company, or institution who funded the test, study, research, or medical literature in any way;

11. Exponent's communications with Monsanto during the Relevant Time Period as such correspondence relates to GBFs, AMPA, and/or surfactants including but not limited to POEA;

12. All communications relating to any claim or allegation (including lawsuits or IARC Monograph 112) in which injury is alleged after exposure to GBFs, AMPA, and/or surfactants including but not limited to POEA. The term "claim" shall be construed in its broadest form. The response shall specifically include, but not be limited to, correspondence by and between Exponent and Monsanto;

13. Exponent's role and conduct in generating a response to IARC Monograph 112;

14. Exponent's role in responding and/or generating communication related to GBFs, AMPA, or surfactants including but not limited to POEA;

15. Final raw data results of any studies performed that relate to GBFs, AMPA, and/or surfactants including but not limited to POEA;

16. Draft and final protocols for any studies or tests performed that relate to GBFs, AMPA, and/or surfactants including but not limited to POEA;

17. All versions of the draft literature related to any study or test conducted or organized by Exponent that relates to GBFs, AMPA, and/or surfactants including but not limited to POEA. This includes studies or tests that did not get published;

18. Any agreements retaining Exponent or any predecessor division of that company, which contain, as any part of their subject matter, consulting services with Monsanto;

19. Communications between Exponent and any agent of Monsanto which relate to testimony before any federal or state agency including the Environmental Protection Agency;

20. Billing records submitted by Exponent to Monsanto at any time for work performed on any GBFs, AMPA, or surfactants including but not limited to POEA;

21. Billing records submitted by Exponent to any attorney, or other agent, representing Monsanto at any time for work performed on any GBFs, AMPA, and/or surfactants including but not limited to POEA;

22. Communications, memos, meeting minutes, and documents concerning medical and/or scientific journal articles prepared by Exponent concerning GBFs, AMPA, or surfactants including but not limited to POEA;

23. Drafts of medical and/or scientific journal articles prepared by Exponent concerning GBFs, AMPA, and/or surfactants including but not limited to POEA;

24. Communications prepared by Exponent which contain, as any part of their subject matter, GBFs, AMPA, and/or surfactants including but not limited to POEA;

25. The content and collection of documents produced in response to this Notice of Deposition.