# EXHIBIT 3

Andrei Shustov, M.D.

01

                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

_____

IN RE:  ROUNDUP PRODUCTS                )

LIABILITY LITIGATION                    )

_____         )

                                        ) MDL No. 2741

This document relates to:               )

                                        ) Case No. 16-md-02741-VC

Stevick v. Monsanto Co., et al.         )

Case No. 3:16-cv-2341-VC                )

                                        )

                                        )

                                        )

_____

        VIDEOTAPED DEPOSITION OF ANDREI SHUSTOV, M.D.

                    December 16, 2018

                    Seattle, Washington

Case 3:16-md-02741-VC Document 2478-5 Filed 01/14/19 Page 3 of 24
Case 3:16-md-02741-VC Document 2478-5 Filed 01/14/19 Page 3 of 24
Andrei Shustov, M.D.

---

Page 2

1
2 APPEARANCES

3 For the Plaintiff:

4 R. BRENT WISNER, ESQ.
  Baum, Hedlund, Aristei & Goldman
5 10940 Wilshire Boulevard
  17th Floor
6 Los Angeles, California 90024
  310.207.3233
7 rbwisner@baumhedlundlaw.com

8 For Defendant Monsanto Co.:
9   AARON H. LEVINE, ESQ.
    DAVID KERSCHNER, ESQ.
10  Arnold & Porter Kaye Scholer, LLP
    250 West 55th Street
11  New York, New York 10019
    212.836.8000
12  aaron.levine@arnoldporter.com
    david.kerschner@arnoldporter.com
13
14 For Defendant Bayer:
15   LINDLEY J. BRENZA, ESQ.
     Bartlit Beck, LLP
16   1801 Wewatta Street
     Suite 1200
17   Denver, Colorado 80202
     303.592.3100
18   lindley.brenza@bartlitbeck.com
19
   Also present: Allison Borgida, videographer
20
21
22
23
24
25

---

Page 3

1        EXAMINATION INDEX
2 EXAMINATION BY:              PAGE NO.
3 Mr. Brenza              6
4 Mr. Wisner              80
5
6        EXHIBIT INDEX
7 EXHIBIT NO.   DESCRIPTION        PAGE NO.
8 Exhibit No. 36   Monsanto Company's Notice to    4
                   Take Oral and Videotaped
9                  Deposition of Dr. Andrei
                   Shustov.
10
   Exhibit No. 37   Expert Report of Dr. Andrei    4
11                  R. Shustov.
12 Exhibit No. 38   Expert Report of Dr. Chadi     18
                    Nabhan.
13
   Exhibit No. 39   Clinical Summary for Elaine    56
14                  M. Stevick dated 9/6/2018.
                    Labeled
15                  Confidential-Stevick-EStevick
                    -KPNValley-MD-000010.
16
   Exhibit No. 40   Decision/Reason, dated         60
17                  7/14/2016.  Labeled
                    Confidential-Stevick-EStevick
18                  -PPR-000158.
19 Exhibit No. 41   Office visit for Elaine M.     62
                    Stevick dated 8/2/2018.
20                  Labeled
                    Confidential-Stevick-EStevick
21                  -KPNValley-MD-005067.
22
23
24
25

---

Page 4

1      BE IT REMEMBERED that on Sunday,
2 December 16, 2018, at 1900 Fifth Avenue, Seattle,
3 Washington, at 2:35 p.m., before JOHN M.S. BOTELHO,
4 Certified Court Reporter, appeared ANDREI SHUSTOV,
5 M.D., the witness herein;
6      WHEREUPON, the following
7 proceedings were had, to wit:
8
9           <<<<<< >>>>>>
10
11      (Exhibit Nos. 36 and 37
12       marked for identification.)
13
14      THE VIDEOGRAPHER:  We are on record
15 at 2:35 p.m. on Sunday, December 16, 2018, in the
16 matter of Stevick vs. Monsanto.  The deponent today
17 is Dr. Andrei Shustov.
18     Will counsel and -- counsel please identify
19 themselves for the record, and then the court
20 reporter may swear in the witness.
21      MR. WISNER:  Brent Wisner on behalf
22 of the deponent and the plaintiffs in this case.
23      MR. BRENZA:  Lin Brenza with
24 Bartlit Beck on behalf of Bayer.
25      MR. KERSCHNER:  David Kerschner

---

Page 5

1 from Arnold & Porter on behalf of Monsanto.
2      MR. LEVINE:  Aaron Levine from
3 Arnold & Porter on behalf of Monsanto.
4      MR. WISNER:  Technically Bayer is
5 not a party to this case.
6      MR. BRENZA:  I don't know.
7      MR. WISNER:  Okay.
8      MR. BRENZA:  I'll be on behalf of
9 Monsanto if you want me to be.
10     MR. WISNER:  Okay.
11     MR. BRENZA:  So -- I'm sorry.  Go
12 ahead.
13
14 ANDREI SHUSTOV, M.D.,    having been first duly sworn
15            by the Certified Court
16            Reporter, deposed and
17            testified as follows:
18
19     MR. WISNER:  Before you begin, sir,
20 just the same objections as last time.  He's being
21 offered for a specific cause only, not general cause,
22 and this is related specifically to Mrs. Stevick's
23 case.
24 ////
25 ////

Case 3:16-md-02741-VC   Document 2478-5   Filed 01/11/19   Page 4 of 24
Case 3:16-md-02741-VC   Document 2468-2   Filed 01/03/19   Page 4 of 24
Andrei Shustov, M.D.



Page 6

1          EXAMINATION
2      BY MR. BRENZA:
3   Q   Doctor, I know it's been long, a long --
4   A   Yes, it has been.
5   Q   -- two days.  We're -- hopefully we're getting near
6       the end here.  We have one more plaintiff to talk
7       about.  It's Ms. Stevick.
8

Page 7

1

Page 8

1

Page 9

1



Page 13

16  Q  We'll get back to your report in a minute.  I just
17     want to just deal with some of the other housekeeping
18     items.
19        I've handed you your deposition notice for this
20     deposition, marked as Exhibit 36.  Do you see that?
21  A  It is notice of deposition.  Is that what you're
22     asking?
23  Q  Yes.
24  A  Yeah.
25  Q  And have you had a chance to look at that before the



Page 14

1   deposition?
2   A  I did.
3   Q  And I'll ask you the same questions.  Have you
4      provided all the documents to your counsel that are
5      responsive to the documents requested in this notice?
6          MR. WISNER:  Objection.  Answer
7      that question to the extent that doesn't disclose
8      privileged communications with counsel.
9          THE WITNESS:  To the best of my
10     ability, yes.
11  Q  (By Mr. Brenza)  And like the -- well, let me strike
12     that.
13         Was the list of materials that you relied on the
14     same list that we've previously marked in depositions
15     that we've taken today and yesterday?  Do you need me
16     to --
17  A  Can I verify?
18  Q  Yeah.  It's going to be in --
19  A  Exhibit 4.
20  Q  -- that stack.  It's Exhibit 4.
21  A  It's for previous case or for...?
22  Q  It's a previ -- we marked it previously, so I'm --
23  A  Is it --
24  Q  -- asking if we need to remark another copy or if
25     it's the same exact copy and we'll just -- you can

Page 15

1   just say that.
2          MR. WISNER:  Are the medical
3      records listed on there?  Is that --
4          MR. BRENZA:  No.
5          MR. WISNER:  Oh.
6          MR. BRENZA:  It's maybe in the
7      supplemental one, but then this one -- it's --
8          MR. LEVINE:  --
9          MR. BRENZA:  It's just articles and
10     expert reports.
11         THE REPORTER:  What was that,
12     Mr. Levine, you said?
13         MR. LEVINE:  I said medical records
14     are not in the supplemental either.
15  Q  (By Mr. Brenza)  Do you have Exhibit 4?
16  A  Yes.  That's what I'm looking for, looking at.
17  Q  You're just verifying.  Okay.  Good.
18  A  Do you -- do you have the actual list for this case?
19     I want to verify something.
20  Q  I may.
21         MR. LEVINE:  There wasn't a list
22     for this case other than the expert reports you
23     reviewed.
24         MR. WISNER:  That's right.  I'm
25     thinking of the expert disclosures that we did.

Page 16

1          MR. BRENZA:  It was one -- it was
2      one for all, wasn't it?
3          MR. WISNER:  Yeah, it was one for
4      all, and then we stated plus any references cited in
5      the expert report.
6          MR. LEVINE:  Right.
7          MR. WISNER:  This is what we said.
8          MR. LEVINE:  Yeah.
9          MR. BRENZA:  Okay.  So --
10         MR. LEVINE:  That's -- I'm just
11     clarifying that also.
12         MR. WISNER:  Yeah.
13         MR. LEVINE:  Yeah.
14         THE WITNESS:  Okay.
15
16
17
18
19
20
21
22
23
24         MR. WISNER:  Exactly.
25         THE WITNESS:  Okay.  So that --

Page 17

1      that answers my question.
2   Q  (By Mr. Brenza)  So if you'll look at Paragraph 6 of
3      your -- oh, we haven't marked your report.  So I've
4      previously handed you what I've marked as Exhibit 37.
5   A  36.  There we go.
6          MR. WISNER:  It's in your hand.
7          THE WITNESS:  Yeah.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Andrei Shustov, M.D.



Page 18

1            (Exhibit No. 38 marked for

2              identification.)

3

4    Q  (By Mr. Brenza)  And I also have marked, I think it

5       says 38.  Dr. Nabhan's report --

6    A  Mm-hmm.

7    Q  -- in the Stevick case.  Do you see that?

8    A  I do.

9    Q  And is this -- do we have the same situation here

10      where you borrowed language from Dr. Nabhan's report

11      and used it in your report for Ms. Stevick?

12   A  I see the same language in general causation section

13      that I used.

14

Case 3:16-md-02741-VC   Document 2478-5   Filed 01/11/19   Page 8 of 24
Case 3:16-md-02741-VC   Document 2478-5   Filed 01/11/19   Page 8 of 24
Andrei Shustov, M.D.



Case 3:16-md-02741-VC Document 2478-5 Filed 01/11/19 Page 9 of 24
Case 3:16-md-02741-VC Document 2478-5 Filed 01/11/19 Page 9 of 24

Andrei Shustov, M.D.









ly



Page 46

Page 47

Page 48

Page 49

5  Q  Okay.  I see it.
6  A  Could I request a bathroom break?
7  Q  Sure.
8  A  Okay.
9          THE VIDEOGRAPHER:  All right.
10  We're going off record.  The time is 3:48 p.m.
11              (Pause in proceedings.)
12              (The following held off the
13              videotape record.)
14
15          MR. WISNER:  At this time the
16  plaintiffs designate this deposition, the one before,
17  and the one before that, all related to Dr. Shustov,
18  as confidential pursuant to the protective order.
19              (The following held on the
20              videotape record.)
21
22          THE VIDEOGRAPHER:  We are back on
23  record.  The time is 4:03 p.m.
24





Page 54

Page 56

Page 55

2  Q  (By Mr. Brenza)  Have you ever used Roundup?

3  A  No.

4  Q  Do you know that Roundup is commonly used?

5          MR. WISNER:  Objection; beyond the

6  scope, speculation.

7          THE WITNESS:  I don't know how

8  widely it's used.  I've seen walls of Roundup at

9  Lowe's when I go shopping there.  But I don't know

10  how extensively -- what the -- what the sales are or

11  how extensively used.

12

Page 57





Page 62

Page 63

Page 64

```
 7        THE VIDEOGRAPHER:  All right.
 8    We're going off record.  The time is 4:25 p.m.
 9             (Pause in proceedings.)
10
11        THE VIDEOGRAPHER:  We are back on
12    record.  The time is 4:33 p.m.
13 Q  (By Mr. Brenza)  Coming down the homestretch.  If you
14    would take out Exhibit 37, your expert report in the
15    Stevick matter, please.  And I just want to verify
16    which sections you borrowed from you borrowed from
17    Dr. Nabhan and which sections you were the original
18    author of.
19        Can we go page by page and you just tell me
20    whether you authored them or you borrowed them from
21    Dr. Nabhan?
22 A  Okay.  I would like to say I -- I'm an author of this
23    report, and I used the language from Dr. Nabhan's for
24    some of the statements to save me time, but I stand
25    by the statement, and I -- I feel I authored this
```

Page 65

```
 1    report.  And it's not uncommon practice in even our
 2    academic world to borrow each other's slides to save
 3    time.  So it does not undermine my standing behind
 4    any word in this report.
 5 Q  So which -- are the portions of your report that you
 6    used Dr. Nabhan's language for the parts that have to
 7    do with general causation?
 8 A  That's correct.
 9
```



Page 70

1   asking.
2           MR. WISNER:  I believe it's memory.
3   See if my memory is...
4           THE WITNESS:  Give me a moment to
5   find that report.
6      It is 10, is it?
7           MR. WISNER:  No.  It's 13, the
8   highlight.
9           THE WITNESS:  13.  Sorry.
10          MR. WISNER:  It's nice to have a
11  eidetic memory.
12          THE WITNESS:  I have it.
13          MR. WISNER:  So, Dr. Shustov, what
14  I would do is I would take this one and then look at
15  yours and just kind of go through them.
16          THE WITNESS:  Take this and this?
17          MR. WISNER:  Yeah.  And just
18  compare them.  And just for what it's worth, he just
19  wants to know if the general causation section in
20  your report is the portion that has the information.
21  And if so, then I think that would satisfy you.
22          MR. BRENZA:  Yeah, I meant, let's
23  start with that and see if -- what he says.
24          THE WITNESS:  Yes, it is in the
25  section on general causation that I see the overlap,

Page 71

1   yes.
25  off the record while --





Page 74

Page 75

Page 76

Page 77

8   Q   I have one more line of questioning on the substance
9       of your report.  This has to do with Page 6, your --
10      your opinions that are expressed concerning the
11      meta-analysis by Schinasi and Leon.  Do you see that
12      paragraph?
13              MR. WISNER:  The first bulleted
14      paragraph?
15              MR. BRENZA:  Correct.
16              THE WITNESS:  Yeah, I see it.
17  Q   (By Mr. Brenza)  Okay.  And do you see -- at the end
18      of that paragraph, you state, "Furthermore, I have
19      observed that several of the case control studies
20      cited above adjusted for other pesticides as
21      potential confounding factors; whereas some did not.
22      I have taken this issue into account in my analysis."
23          Do you see that?
24  A   I do.
25  Q   How did you take the issue of confounding pesticides

Page 78

1   in the studies relied on in the Schinasi
2   meta-analysis, how did you take that into account in
3   your analysis?
4   A  I gave to go again.  It's -- at the time of writing,
5   I had -- I decided that this was the, again, proper
6   way of state how I adjusted my impression from those
7   studies.
8   Q  Are you done?
9   A  I don't -- what?
10  Q  You still answering, or...?
11  A  Yes, I'm trying to still think how to answer your
12  question.
13  Q  Okay.
14  A  I can't tell you specifics how exactly I adjusted
15  that without, again, opening discussion of those
16  publications.  'Cause I don't explain specifically
17  how I did it.
18  Q  And you don't remember, as you sit here now, how you
19  took account of whether they control or didn't
20  control for confounding pesticides?
21  A  I don't recall my train of thought at the time.
22  Q  Do you recall your analysis, how you took it into
23  account in your analysis?
24  A  As we discussed before for general causation
25  analysis, I performed very brief review of the

Page 79

1   literature that we went over several times and looked
2   at the limited amount of information in tables, and
3   without having a deep dive into general causation,
4   that really is not my area of expertise.  So I
5   don't -- I can't give you specifically, without
6   looking at the studies again in area of general
7   causation, what specific terms or what specific
8   factors I looked at.
9   Q  Do you remember what method you used to conduct your
10  analysis?
11  A  I read the papers.  Again, for general causation, I
12  used as a reference just to familiarize myself with
13  general causation.
14  Q  Did you do any mathematics or anything to satisfy
15  yourself that you could rely on studies that didn't
16  adjust for other pesticide use?
17  A  I didn't do any calculations on my own.
18  Q  Did you receive calculations from anyone else?
19  A  No.
20  Q  Do you remember anything else about the method you
21  used?
22  A  Method of...?
23  Q  Of taking into account whether the studies did or
24  didn't adjust for confounding pesticides.
25  A  Again, I've taken into consideration reading the

Page 80

1   paper.  I did not do any specific considerations or a
2   specific analysis on...
3                 MR. BRENZA:  Okay.  That's all I
4   have.  Thank you.  Pass the witness.
5                 MR. WISNER:  Thank you.
6
7
8                 EXAMINATION
9   BY MR. WISNER:
10  Q  Couple quick questions, Doctor.  We'll get you out of
11  here.  It's been a long --
12  A  Sure.
13  Q  -- couple of days.
14  A  Appreciate it.
15  Q  The first is on the confounding issue that we were
16  just talking about.  When you say "taking into
17  account," does that just mean you looked and see if
18  those studies did adjust or did not adjust?
19  A  At the level that I looked at those papers, I did not
20  do any specific analysis on general causation papers.
21  Q  Sure.  And yesterday I believe we actually discussed
22  one of the articles.  It was De Roos 2003.  I believe
23  it was Exhibit 20?
24  A  I remember the paper.  I don't remember the number of
25  exhibit.

Page 81

1   Q  Okay.  It was Exhibit 20.  And that was the study
2   where they adjusted for 47 other pesticides.  Do you
3   recall?
4   A  I remember that.
5   Q  Okay.  And you remember we discussed there's language
6   in there showing that these other pesticides, for
7   example, didn't confound.  Do you recall?
8   A  I do remember that.
9   Q  Okay.  The phrase "idiopathic causes," is that a
10  cogent sentence or phrase?
11  A  In a way, "idiopathic causes" is kind of an oxymoron
12  because it means we don't know the cause.  We use
13  this kind of liberally just to say we don't know the
14  cause.  It's kind of, I'd say, almost inappropriate
15  to call it "the cause" because we don't know the
16  cause.  I -- you know, we can call it unidentified --
17  uni -- unidentifiable causes, but the "idiopathic
18  causes," it's kind of nonsensical, but it's very
19  frequently used.
20  Q  Is it possible to rule out an unknown cause?
21  A  Well, technically you cannot rule out something you
22  don't know what you're ruling out.
23  Q  Okay.
24  A  So if...
25  █████████████████████████████████████



[redacted]

[redacted]

[redacted]

MR. WISNER: Okay. Pass the witness.

MR. BRENZA: Nothing further.

THE VIDEOGRAPHER: All right. That concludes the video deposition of Dr. Andrei Shustov. We're now going off record at 5:09 p.m.

(Signature reserved.)

(Deposition concluded at 5:09 p.m.)

STATE OF WASHINGTON ) I, John M.S. Botelho, CCR, RPR,
) ss a certified court reporter
County of Pierce ) in the State of Washington,
do hereby certify:

That the foregoing deposition of ANDREI SHUSTOV, M.D., was taken before me and completed on December 16, 2018, and thereafter was transcribed under my direction; that the deposition is a full, true and complete transcript of the testimony of said witness, including all questions, answers, objections, motions and exceptions;

That the witness, before examination, was by me duly sworn to testify the truth, the whole truth, and nothing but the truth, and that the witness reserved the right of signature;

That I am not a relative, employee, attorney or counsel of any party to this action or relative or employee of any such attorney or counsel and that I am not financially interested in the said action or the outcome thereof;

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of December, 2018.

______________________________

John M.S. Botelho, CCR, RPR
Certified Court Reporter No. 2976
(Certification expires 5/26/19.)

Case 3:16-md-02741-VC Document 2478-5 Filed 01/11/19 Page 24 of 24
Case 3:16-md-02741-VC Document 2460-28 Filed 01/03/19 Page 24 of 24
Andrei Shustov, M.D.

Page 86

1          CERTIFICATE OF DEPONENT

2

3          I hereby certify that I have read and examined the
foregoing transcript, and the same is a true and accurate
record of the testimony given by me.

4

           Any additions or corrections that I feel are necessary,
5    I will attach on a separate sheet of paper to the original
transcript.

6

     _____

7          Andrei Shustov, M.D.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 87

1    WITNESS:  Andrei Shustov, M.D.

2    DATE:    December 16, 2018

3    CASE:     Stevick v. Monsanto Co., et al.

4    Please note any errors and the corrections thereof on this

5    errata sheet.  The rules require a reason for any change or

6    correction.  It may be general, such as "To correct

7    stenographic error," or "To clarify the record," or "To

8    conform with the facts."

9

10   PAGE  LINE  CORRECTION          REASON FOR CHANGE

11   ____  ____  _____   _____

12   ____  ____  _____   _____

13   ____  ____  _____   _____

14   ____  ____  _____   _____

15   ____  ____  _____   _____

16   ____  ____  _____   _____

17   ____  ____  _____   _____

18   ____  ____  _____   _____

19   ____  ____  _____   _____

20   ____  ____  _____   _____

21   ____  ____  _____   _____

22   ____  ____  _____   _____

23   ____  ____  _____   _____

24   ____  ____  _____   _____

25   ____  ____  _____   _____