# EXHIBIT 2



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

May-17-2018  3:09 pm

Case Number: CGC-16-550128

Filing Date: May-17-2018 3:09

Filed by:  DANIAL LEMIRE

Image: 06341094

ORDER

DEWAYNE JOHNSON VS. MONSANTO COMPANY ET AL

001C06341094

**Instructions:**
Please place this sheet on top of the document to be scanned.

# FILED

San Francisco County Superior Court

MAY 1 7 2018

CLERK OF THE COURT

BY: _____

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| DEWAYNE JOHNSON, ET AL.<br><br>Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY, ET AL.<br><br>Defendants. | Case No. CGC – 16-550128<br><br>**ORDER ON DEPOSITION DESIGNATIONS AND CERTAIN PROPOSED JURY INSTRUCTIONS** |

On May 16, 2018 I heard argument on certain of the parties' proposed jury instructions and the admissibility of their deposition designations. I had earlier provided a written tentative on all these issues. As I stated then, the rulings below are in effect *in limine*, and so subject to review by the trial judge as the trial progresses. *Chen v. L.A. Truck Centers, LLC*, 7 Cal. App. 5th 757, 768 (2017), *pet.rev.gntd*. March 29, 2017 ("In limine rulings are not binding; they are subject to reconsideration upon full information at trial. [Citation] … by their very nature, motions in limine are subject to reconsideration at any time prior to the submission of the cause").

I first discuss the jury instructions and then (on page 17) discuss the deposition designations.

I.      Jury Instructions

I adhere to two basic principles: (A) parties should use CACI when possible; (B) "a trial court has no duty to modify or edit an instruction offered by either side in a civil case and if there is error in the charge proposed, the court may reject the entire instruction," *Green v. Cty. of Riverside*, 238 Cal. App. 4th 1363, 1370 (2015); *Eng v. Brown*, 21 Cal. App. 5th 675, 704 (2018).

### A.      Johnson's Proposed Instructions

#### 1.      Consumer Expectations Test

Johnson asks for CACI 1203 on design defect under the consumer expectations test. Johnson's Proposed Instructions, 1.  Monsanto objects, incorporating its briefing in connection with Johnson's MIL No. 1.  Monsanto's Proposed Instructions, 15.  In that briefing, the parties disputed this action should be evaluated under the consumer expectations test or the risk-benefit test.  *See id.*; *see also* Order of April 3, 2018, 3 (declining to resolve whether Johnson must proceed on either a consumer expectations test or a risk-benefit test to resolve the motion). Consistent with its previous position, Monsanto argues that the Court should give CACI 1204 on design defect under the risk-benefit test.  Monsanto's Proposed Instruction, 15.  In the alternative, Monsanto argues that the CACI 1204 instruction should be given as an alternative instruction if the CACI 1203 instruction is given.  *Id.*, citing CACI 1203; *Demara v. The Raymond Corp.*, 13 Cal.App.5th 545, 554 (2017).

*Demara* explained the methods by which a plaintiff may establish a design defect for the purposes of a strict liability claim. *Demara*, 13 Cal.App.5th at 553-54.

> A plaintiff may prove a design defect under either of two alternative tests—
> the consumer expectations test or the risk-benefit test. [Citations] Under the
> consumer expectations test, the plaintiff may prove the existence of a defect
> by showing that "the product failed to perform as safely as an ordinary
> consumer would expect when used in an intended or reasonably foreseeable

manner." [Citations] Under the risk-benefit test, the plaintiff need establish only a prima facie case of causation, i.e., evidence that a design feature of the product was a substantial factor in causing the plaintiff's injuries. Once the plaintiff makes this showing, the burden shifts to the defendant to establish that, given certain factors, "on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." [Citations]

The two theories are not mutually exclusive, and depending on the facts and circumstances of the case, *both* may be presented to the trier of fact in the same case. [Citations] Indeed, the two theories are true alternative tests, since (1) the consumer expectation test applies only in cases where the trier of fact can evaluate a product's safety design based on "the everyday experience of the product's users" [Citations], and (2) a finding that the product's design is not defective under the risk-benefit test does not negate liability under the consumer expectation test [Citations] [risk-benefit test *not* a "counterweight" or " 'defense' " to consumer expectation test] ).

*Id.* (emphasis in original; footnote omitted).

In *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal.App.4th 1220 (2010), the trial court

refused to give a proposed instruction that was based on CACI 1203 because it was "not

applicable in this type of situation," but elected to give an instruction based on CACI 1204

instead. *Saller*, 187 Cal.App.4th at 1229-30. The Court of Appeal reversed. *See id.* at 1236-37,

1241. *Saller* explained the applicability of the consumer expectations test:

The rationale of the consumer expectations test is that "[t]he purposes, behaviors, and dangers of certain products are commonly understood by those who ordinarily use them." (*Soule, supra,* 8 Cal.4th at p. 566, 34 Cal.Rptr.2d 607, 882 P.2d 298.) Therefore, in some cases, ordinary knowledge of the product's characteristics may permit an inference that the product did not perform as safely as it should. "If the facts permit such a conclusion, and if the failure resulted from the product's design, a finding of defect is warranted without any further proof," and the manufacturer may not defend by presenting expert evidence of a risk/benefit analysis. (*Ibid.*) The consumer expectations test is reserved for cases in which the everyday experience of the products' users permits a conclusion that the product's design violated minimum safety assumptions, and is "defective regardless of expert opinion about the merits of the design." (*Id.* at p. 567, 34 Cal.Rptr.2d 607, 882 P.2d 298.) Therefore, if the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer should expect. Nonetheless, the inherent complexity of the product itself is not controlling on the issue of whether the consumer expectations test applies; a complex product "may perform so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers." (*Id.* at p. 569, 34 Cal.Rptr.2d 607, 882 P.2d 298.)

*Id.* at 1232.

With respect to jury instructions in particular, the *Saller* Court stated:

> Whether the jury should be instructed on either the consumer expectations test or the risk/benefit test depends upon the particular facts of the case. (*McCabe*, *supra*, 100 Cal.App.4th at p. 1122, 123 Cal.Rptr.2d 303.) In a jury case, the trial court must initially determine as a question of foundation, within the context of the facts and circumstances of the particular case, whether the product is one about which the ordinary consumer can form reasonable minimum safety expectations. (*Id.* at p. 1126, fn. 7, 123 Cal.Rptr.2d 303.) "If the court concludes it is not, no consumer expectation instruction should be given.... If, on the other hand, the trial court finds there is sufficient evidence to support a finding that the ordinary consumer can form reasonable minimum safety expectations, the court should instruct the jury, consistent with Evidence Code section 403, subdivision (c), to determine whether the consumer expectation test applies to the product at issue in the circumstances of the case [or] to disregard the evidence about consumer expectations unless the jury finds that the test is applicable. If it finds the test applicable, the jury then must decide whether the product failed to perform as safely as an ordinary consumer would expect when the product is used in an intended or reasonably foreseeable manner." (*Ibid.*, citation omitted.)

*Id.* at 1233-34.

Monsanto's chief argument against the use of the consumer expectations test in this case is that Johnson is "a licensed pesticide applicator who claims injury based on the use of products marketed for use by professionals." Monsanto Proposed Instruction, 15. But the fact that the "ordinary consumer" may be a "professional" does not foreclose the application of the consumer expectations test. *Saller*, 187 Cal.App.4th at 1237 ("Saller's work experience and exposure to the regular and systematic use of asbestos insulation could permit the jury to draw conclusions about whether the insulation performed as safely as an ordinary consumer (in this case a refinery worker) would expect"). To the extent Monsanto intends to raise a sophisticated user defense,[1] such a defense is not properly adjudicated now. Johnson is entitled to an instruction on the consumer expectations test, provided he makes the foundational evidentiary showing discussed

---

[1] *See* Monsanto's Proposed Instructions, 15. In short, the sophisticated user defense, if applicable, exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential safety hazards. *Johnson v. American Standard, Inc.*, 43 Cal.4th 56, 65 (2008). "Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware." *Id.* It seems unlikely Monsanto would argue that Johnson was aware of the cancer risks Monsanto says did not exist.

in *Saller* during trial and the evidence and argument at trial does not foreclose such an instruction.[2]

Monsanto's request for an alternative instruction in the form set forth in CACI 1204 is denied without prejudice. The consumer expectations test and the risk-benefit tests are alternative tests. *See Demara v. Raymond Corp.*, 13 Cal.App.5th at 553-54. Johnson may elect whichever theory of liability he prefers. Monsanto may not defend a claim under the consumer expectations test by relying on the risk-benefit test. *Sparks v. Owens-Illinois, Inc.*, 32 Cal.App.4th 461, 473 (1995); *see also Soule*, 8 Cal.4th at 572 ("A party is entitled upon request to correct, nonargumentative instructions on every theory of the case *advanced by him* which is supported by substantial evidence") (emphasis added). While Johnson has taken action inconsistent with an intent to rely on the risk-benefit test in filing his MIL No. 1, there is no record of any stipulation or judicial determination foreclosing Johnson from proceeding under the risk-benefit test. If Johnson later attempts to, and is permitted to, pursue such a theory, an instruction based on CACI 1204 may be proper.

### 2.   FIFRA

Johnson asks the Court to give an instruction that identifies FIFRA, discusses misbranding under FIFRA, and discusses other obligations FIFRA imposes on Monsanto.

---

[2] In its opposition to Johnson's MIL No. 1, Monsanto argued that the consumer expectations test was also inapplicable because of the complexity of its product. *See* Monsanto Opposition to Johnson MIL No. 1, 5. Complexity does not necessarily defeat reliance on the consumer expectations test. *Saller*, 187 Cal.App.4th at 1232. Indeed, the consumer expectations test has been applied to a design defect claim arising out of residential use of a pesticide. *See Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 725, 727 (2001) (distinguishing *Soule v. General Motors Corp.*, 8 Cal.4th 548 (1994), an automobile case, and stating that the "consumer expectations test is not foreclosed simply because expert testimony may be necessary to explain the nature of the alleged defect or the mechanism of the product's failure"). To be sure, Monsanto has argued that *Trejo v. Johnson & Johnson*, 13 Cal.App.5th 110 (2017) points to a different result. *See* Monsanto Opposition to Johnson MIL No. 1, 5. Whether Johnson's theory of liability is simply not amenable to the application of the consumer expectations test, such that his claim fails, cannot be determined now. *Trejo*, 13 Cal.App.5th at 159-60 (in over the counter drug case, consumer who suffered idiosyncratic reaction could not satisfy the test simply because she used the product and did not expect to be injured – an analysis of the feasibility, practicality, risk, and benefit of an alternative design that eliminated the risk was necessary).

Johnson Proposed Instructions, 2.  Monsanto objects on the ground that Johnson is not pursuing

a claim on the basis that Monsanto violated FIFRA.  Monsanto Proposed Instructions, 15.[3]

The FIFRA instruction is refused because Johnson is not pursuing a claim for violation of

FIFRA and there is no other apparent need for this instruction.

Perhaps Johnson seeks the instruction because of Monsanto's preemption affirmative

defense.  Johnson's Proposed Instruction, 2:20-22.  But by separate order on Johnson's summary

adjudication motion, the issue has been removed from this case.  Or perhaps Johnson thinks it

necessary to clarify Monsanto's proposed EPA registration instruction.  Johnson's Proposed

Instructions, 4.  But I will refuse that instruction too.

### 3.   EPA Registration

Johnson asks the Court to advise the jury that "[t]he EPA's registration of a pesticide

does not provide a defense to a violation of FIFRA.  Governmental action (or inaction) is not

controlling on the question of product safety."  Johnson's Proposed Instructions, 3.  Monsanto

objects because (1) Johnson is not pursuing a claim under FIFRA and (2) Monsanto disagrees

with the substance of the proposed instruction.  Monsanto's Proposed Instructions, 15-16.

Monsanto provisionally proposes an alternate instruction on preemption that would instruct the

jury to find that Johnson's claims are barred if it is highly probable that the EPA would not have

approved a cancer warning on the relevant product labels.  *Id.* at 17.

Under FIFRA, registration of an article is not "a defense for the commission of any

offense" under FIFRA, but, as long as no cancellation proceedings are in effect, "registration of a

pesticide is prima facie evidence that the pesticide, its labeling and packaging comply with the

registration provisions of" FIFRA.  7 U.S.C. § 136a(f).  As Johnson is not pursuing a FIFRA

claim, the only obvious other relevance of Johnson's instruction is to preemption.  Monsanto's

---

[3] Monsanto does not take issue with the substantive content of the proposed instruction.

alternative instruction explicitly addresses preemption.  But the preemption affirmative defense is no longer in the case and so neither of these instructions is needed.

Johnson's proposed instruction may be necessary to clarify Monsanto's proposed EPA registration instruction.  Johnson's Proposed Instructions, 4. For now, Monsanto's proposed instruction is refused.

**B.      Monsanto's Proposed Instructions**

**1.      EPA Registration**

Monsanto proposes an instruction that discusses the EPA's role in regulating pesticide labeling and advises jurors that they "may consider compliance with EPA requirements as relevant evidence about the issue of whether Monsanto has provided adequate warnings." Monsanto's Proposed Instructions, 1.  Johnson objects, arguing that the instruction is incomplete, argumentative, and improper.  Johnson's Proposed Instructions, 4.

Under FIFRA, registration of an article is not "a defense for the commission of any offense" under FIFRA, but, as long as no cancellation proceedings are in effect, "registration of a pesticide is prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of" FIFRA.  7 U.S.C. § 136a(f).  State law rules are preempted by FIFRA if two conditions are met:  (1) the state law must be a requirement "for labeling or packaging," rules governing the design of a product are not preempted; and (2) the state law must impose a labeling or packaging requirement that is "in addition to or different from those required under this subchapter." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005).  Putting the two together, evidence that a product is registered with the EPA is prima facie evidence that the labeling complies with California law.  But evidence that a product is registered with the EPA does not mean that the product complies with California law.

1    Monsanto's proposed instruction is not accurate– it is vague in its reference to "EPA

2    requirements" and does not state that registration is "prima facie evidence that the pesticide, its

3    labeling and packaging comply with" federal registration requirements.

4    Second, I am concerned that the instruction has the judge highlight evidence favorable to

5    Monsanto and so is prejudicial to Johnson.

6    The instruction is refused.

7    **2.    Causation – Medical Probability**

8    Monsanto submits an instruction that would require the jury to find that its products

9    "medically caused" his mycosis fungoides to "a reasonable degree of medical probability."

10   Monsanto's Proposed Instructions, 3.  Johnson responds that a "substantial factor" instruction

11   based on CACI 430 should be used instead.[4]

12   The parties cite cases that together stand for the proposition that a plaintiff must have

13   evidence that the alleged cause was more likely than not a substantial factor in causing the

14   plaintiff's injury to make out a prima facie case.  *Uriell v. Regents of University of California*,

15   234 Cal.App.4th 735, 746 (2015); *Simmons v. West Covina Medical Clinic*, 212 Cal.App.3d 696,

16   702-03 (1989); *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 402-03 (1985);

17   *Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal.App.4th 555, 593-94 (2015) (expert

18   could conclude it was more likely than not that product exposure caused the plaintiff's bladder

19   cancer).  But the burden that a plaintiff must meet to establish a prima facie case does not mean

20   there is a heightened standard of causation, nor do they warrant divergence from CACI 430.

21   *Uriell*, 234 Cal.App.4th at 746; *Cooper*, 239 Cal.App.4th at 595-96.  An instruction based on

22   CACI 430 is better than Monsanto's proposed instruction.

---

[4] CACI 430 provides only a definition of "substantial factor."

There may be disagreement as to whether the bracketed final sentence of the CACI 430 instruction should be given ["Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." CACI 430.] Johnson might argue that "but for" causation does not apply here because this is a case in which there may have been concurrent independent causes that would have been sufficient by themselves to bring about the harm. *See* CACI 430 Directions for Use; Johnson's Proposed Instructions, 5.  First, the substantial factor standard generally subsumes the "but for" test while reaching beyond it to address other situations, such as independent or concurrent causes in fact. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953, 969 (1997).  Second, for example, a defendant is entitled to an instruction that a product defect is not a substantial factor if the injury would have occurred regardless if it puts on substantial evidence to support that theory. *Soule*, 8 Cal.4th at 573.  At this point, the parties' positions are unclear, and the issue is for trial.

### 3.    Causation – Failure to Warn

Monsanto submits an instruction that, in the first sentence, sets forth a "substantial factor" standard and, in the second sentence, states that Johnson is required to prove that he would not have developed mycosis fungoides if Monsanto gave a different warning.  Monsanto's Proposed Instructions, 4.  The instruction does not state a level of proof.  Johnson again urges a "substantial factor" instruction based on CACI 430.  Johnson's Proposed Instructions, 6.

Monsanto provides no reason to diverge from CACI 430.  CACI 430 sets forth the standard clearly.  Monsanto's instruction is refused.  CACI 430 should be used.

It again appears that there may be a dispute as to whether the bracketed sentence of CACI 430 should be included.  See discussion immediately above on that issue.

### 4.    Causation – Relative Risk Ratios

Monsanto seeks an instruction to the effect that its products were only a substantial factor in causing Johnson's injury if "the weight of the epidemiology studies support a relative risk level greater than 2.0." Monsanto's Proposed Instructions, 5. Johnson objects. Johnson's Proposed Instructions, 7.

The instruction is refused. First, the instruction would erroneously require Johnson to prove causation by epidemiological studies. *See, e.g., Monroe v. Zimmer U.S. Inc.*, 766 F.Supp.2d 1012, 1029-30 (E.D. Cal. 2011) (epidemiological or in vivo research would be unethical, so failure to produce an epidemiological or in vivo study was not fatal to the plaintiff's claim).[5] Second, the instruction conflates expert admissibility with the substantial factor analysis. *See Cooper*, 239 Cal.App.4th at 593-96.

### 5.    Punitive Damages – Compliance with Legal, Regulatory, or Industry Standards

Monsanto seeks an instruction that (1) advises the jury that it "should" consider any good faith effort to comply with federal regulations, industry customs, or standards; and (2) prohibits the jury from punishing Monsanto for any conduct that complied with federal or state law, or

---

[5] In *Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal.App.4th 555 (2015), the California Court of Appeal adopted the reasoning of a Ninth Circuit opinion applying California law, stating that epidemiological studies become admissible to prove that a product was more likely than not the cause of a person's disease if, and only if, the relative risk is greater than 2.0. *Cooper*, 239 Cal.App.4th at 593. The *Cooper* Court explained that a relative risk factor of 2.0 implies a 50% chance that a specific person's disease was caused by the product. *Id.* This means that a relative risk factor of 50% or above permits a conclusion that the product was more likely than not the cause of the disease. *Id.* at 593-94. As a result, the *Cooper* Court held that an expert opinion that the defendant's product was more probably than not the cause of the plaintiff's injury was admissible where it was based on epidemiological studies showing a relative risk factor of greater than 2.0 and ruled out other possible causes. *Id.* In the present case, Johnson's experts may, if this case proceeds to trial, rely on relative risk ratios of lower than 2.0 and other considerations in support of their conclusion that Johnson's mycosis fungoides was caused by occupational exposure to Monsanto's products. Nothing in *Cooper* forecloses such an approach (*i.e.*, Cooper did not find an expert opinion insufficient because the risk ration was lower than 2.0 even though there were other consideration that supported a specific causation opinion).

was otherwise lawful where it occurred.  Monsanto's Proposed Instructions, 6.  Johnson objects

that this proposal is without legal support.  Johnson's Proposed Instructions, 8.

Monsanto cites five cases.

(1) *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408 (2003):  The

Campbells secured a punitive damages award against State Farm that was based on in-state and

out-of-state conduct.  *See State Farm*, 538 U.S. at 422.  The Campbells did not dispute that much

of the out-of-state conduct was lawful where it occurred.  *Id*.  The Supreme Court stated that

lawful out-of-state conduct may be probative when it demonstrates deliberateness and culpability

of the defendant's action in the state where it is tortious, but that conduct must have a nexus to

the specific harm suffered by the plaintiff.  *Id*.  Moreover, the Court stated that the "jury must be

instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a

defendant for action that was lawful in the jurisdiction where it occurred."  *Id*.  The Court held

that the Utah courts erred by awarding punitive damages for conduct that bore no relation to the

Campells' harm.  *Id*.

(2) *Lusardi Construction Co. v. Aubry*, 1 Cal.4th 976, 996 (1992):  Equitable

consideration precluded imposition of statutory civil penalties against a public work contractor

for failing to pay the prevailing wage where the contractor relied on a public entities'

representations that the project was not subject to the prevailing wage law.  This case does not

involve the imposition of punitive damages.

(3) *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 891 (2000) (Stevens, J., dissenting):

In passing, Justice Stevens cited an opinion from the Western District of Oklahoma wherein the

District Judge held that substantial compliance with a regulatory scheme did not bar an award of

punitive damages but that a good faith belief in, and efforts to comply with, all government

regulations would be evidence inconsistent with the mental state requisite for punitive damages under state law.

(4) *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993):  Under Georgia law, compliance with the law will not preclude a finding that business activities constitute a nuisance but it does tend to show that there is no clear and convincing evidence of "willful [sic] misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences[,]" especially in "a commercial enterprise the operation of which is accompanied by a certain amount of unpleasant but unavoidable effects or byproducts."

(5) *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1198 (4th Cir. 1982):  Evidence that Tiffin followed industry standards and complied with the state of the art while designing a motor home was admissible because it was probative on the issue of wantonness, willfulness, and maliciousness of Tiffin's acts.

As drafted, the first sentence of the proposed instruction is unduly prejudicial to Johnson. While evidence of efforts to comply with the law may be relevant to Monsanto's mental state for the purposes of punitive damages, the Court should not give an instruction that highlights one piece of evidence that Monsanto intends to produce and advise the jury to consider that piece of evidence.  Better and more even-handed is a generic instruction that advises the jury to consider all of the evidence is appropriate.  *See* CACI 200.

As drafted, the second sentence of the proposed instruction is broader than can be supported by Monsanto's authority.  Monsanto's authority supports an instruction that the jury "may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred[,]" although lawful out-of-state conduct may be probative

1   when it demonstrates deliberateness and culpability of the defendant's action in the state where it

2   is tortious.  *See State Farm*, 538 U.S. at 422.

3          The present instruction is refused.

4                  **6.      Punitive Damages – Authorization by Management**

5          Monsanto proposes a jury instruction that details the circumstances on which a

6   corporation may be held liable for punitive damages.  Monsanto's Proposed Instructions, 8.

7   CACI 3945 provides an appropriate and neutral discussion of the law.  Monsanto's proposed

8   special instruction appears to be biased in Monsanto's favor in that it underscore themes

9   Monsanto intends to develop at trial.

10                 **7.      Punitive Damages – Relevant Conduct**

11         Monsanto proposes a jury instruction that would limit the jury to considering "conduct by

12  Monsanto that you believe caused [Johnson's] injuries[,]" to the exclusion of evidence

13  "regarding conduct that was not a cause of [Johnson's] injuries" as a basis for a finding that

14  punitive damages may be imposed.  Monsanto's Proposed Instructions, 9.  Johnson objects and

15  proposes an alternative instruction that (1) discusses the purposes of punitive damages; (2) states

16  that punitive damages may not be used to punish Monsanto for the impact of its misconduct on

17  persons other than Johnson; and (3) advises the jury that it may consider Monsanto's wrongful

18  conduct towards others in fixing the amount of the punitive damages award.  Johnson's Proposed

19  Instructions, 10.

20         Instead of these proposals, CACI 3945 should be given, including its final sentence.

21         First, conduct that did not harm Johnson may be considered in deciding whether

22  Monsanto is liable for punitive damages to the extent that it bears on Monsanto's mental state.

23  *See State Farm*, 538 U.S. at 422 ("Lawful out-of-state conduct may be probative when it

demonstrates the deliberateness and culpability of the defendant's action in the State where it is
tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff"). The
fact that conduct did not cause Johnson's injuries does not mean that it is "independent from the
acts upon which liability is premised." *Compare id.* ("A defendant's dissimilar acts, independent
from the acts upon which liability was premised, may not serve as the basis for punitive
damages"). Monsanto's instruction should be refused.

Second, the first sentence of Johnson's proposed instruction duplicates language in CACI
3945, it should not be given if CACI 3945 is given.

Third, the balance of Johnson's proposal is likely to confuse a jury. In California,
"imposing punishment for harm caused to others, which is prohibited, is separate and distinct
from determining the degree of reprehensibility by considering evidence of harm caused to
others, which is permitted." *Bullock v. Philip Morris USA, Inc.*, 159 Cal.App.4th 655, 693
(2008).[6] The law is adequately reflected in CACI 3945, including the final bracketed sentence.

### 8.   Punitive Damages – Not Compensation

Monsanto proposes an instruction that explains that punitive damages are not
compensatory damages. *See* Monsanto Proposed Instructions, 10. Johnson objects, arguing that
CACI 3945 adequately explains the purpose of punitive damages and that it can be contrasted
with CACI 3900, which describes compensatory damages in tort cases. Johnson Proposed
Instructions, 11. As a fall back, Johnson proposes that a sentence be added to CACI 3945 that
explains that punitive damages are not awarded to compensate for the injuries a plaintiff
suffered.

---

[6] Johnson argues that *Bullock* held that any instruction that identifies the purposes of punitive damages, as does
CACI 3945, must include a qualification "that evidence of harm caused to others could be considered to determine
the reprehensibility of [the defendant's] conduct." Johnson's Proposed Instructions, 10. *Bullock* holds the opposite.
*Bullock*, 159 Cal.4th at 693-94.

First, Monsanto's separate instruction is unnecessary in light of CACI 3945.  Second, to address Monsanto's concern, adoption of the alternative proposed by Johnson as a fallback position is appropriate.

### 9.      Punitive Damages – Remote Misconduct

Monsanto proposes an instruction that explains that the jury may conclude that misconduct that occurred in the distant past need no longer be punished or that it should be punished less severely than recent misconduct.  Monsanto's Proposed Instructions, 11.

Monsanto's instruction is refused.  Monsanto relies solely on the purposes of punitive damages to support this instruction.  Those purposes are provided in CACI 3945.  Further, Monsanto has no authority for the proposition that misconduct that occurred "in the distant past" is exempt from punishment because punishing such conduct "may [have] no deterrent or punitive" effect.  On the contrary, repeated conduct may be more reprehensible.  *See Bullock*, 159 Cal.App.4th at 691 (repeated actions are worse than, and can be punished more severely than, conduct limited to an isolated incident).

### 10.     Punitive Damages – Mitigating Evidence

Monsanto proposes an instruction that directs the jury to consider mitigating evidence in assessing whether to impose punitive damages and the appropriate amount of any such damages.  Monsanto's Proposed Instructions, 12.  Johnson objects, arguing that CACI 3945 together with CACI 200, which directs the parties to consider all of the evidence presented by the parties, is appropriate and that Monsanto's instruction is not entirely correct.  Johnson's Proposed Instructions, 13.  Monsanto's special instruction is refused.  CACI 3945 is adequate.

Monsanto's authority reveals some instances where courts determined that there was evidence that mitigated the reprehensibility of the defendant's conduct.  *See Rosener v. Sears,*

1    *Roebuck & Co.*, 110 Cal.App.3d 740, 753-54 (1980); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891,

2    904 (9th Cir. 1994); *see also State Farm*, 538 U.S. at 419 (discussing factors that should be

3    considered in evaluating reprehensibility with no discussion of mitigating factors).

4        CACI 3945 does not separately address mitigating evidence.  Rather, it lists several

5    factors that should be considered.  Of course, any evidence that weighs against one of the factors

6    could be considered mitigating evidence.  Accordingly, Monsanto's proposed instruction is

7    unnecessary.  As with Monsanto's other proposed instructions, it appears designed to prime the

8    jury for Monsanto's evidence rather than provide neutral guidance.

9

10            **11.     Punitive Damages – No Greater Award than Necessary**

11       Monsanto proposes an instruction that informs the jury that any award of punitive

12   damages "should be no greater than the amount that you find necessary to punish Monsanto."

13   Monsanto's Proposed Instructions, 13.  Johnson objects, arguing that this factor is already

14   encompassed within CACI 3945, which should be given instead.  Johnson's Proposed

15   Instructions, 14.

16       Monsanto's proposed instruction is refused. Monsanto cites no California law in support

17   of its instruction.  Monsanto's instruction is inconsistent with its own authority, which

18   recognizes the purposes of punishment and deterrence.  Moreover, CACI 3945 addresses the

19   factors for awarding punitive damages, including Monsanto's financial condition, the

20   reprehensibility of Monsanto's conduct, and the reasonable relationship between the harm and

21   the amount of punitive damages.  A CACI 3945 instruction should be given rather than

22   Monsanto's proposed instruction.

**12.     Punitive Damages – Reasonable Relationship**

Monsanto proposes an instruction that informs the jury that there must be a reasonable relationship between any punitive damages award and any compensatory damages awarded. Monsanto's Proposed Instructions, 14.  Johnson objects, arguing that this instruction misstates the standard and that the proper standard is contained in CACI 3945.  Johnson's Proposed Instructions, 15.

Monsanto's instruction is refused.  The relationship between the punitive damages and the compensatory damages is a factor that courts may consider post-verdict to evaluate whether there is a disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award.  *Nickerson v. Stonebridge Life Ins. Co.*, 63 Cal.4th 363, 37172, 374-75 (2016). This law for the jury is better reflected by CACI 3945 than by Monsanto's instruction.

**13.     Preemption**

These are refused.

II.     Deposition Designations

*Preliminary comments*

Many of the objections to the deposition designations are futile; they were apparently made simply because they could be, not because a ruling would make much of a difference.  As indicated below, the  parties have frequently invoked objections to questions which are useful before the answer is known, but which are not useful in the present context when the answer is known.

- All colloquy between counsel, including objections and arguments (much of which puts counsel in a poor light) should be deleted from designations read to or viewed by the jury.

For just a few of many example, see Farmer 49:5 ff.; 254:8 ff.; 258:17-259:2; 265:2 ff.; Heydens 118; Goldstein 14-15.

- It is not clear that all the designations were made in the good faith expectation of reading them to the jury at trial, because it does not appear there will be time to do so.

- Objections to multiple pages- i.e. to a wide variety of statements- are overruled unless all the statements are subject to the objection, which is almost never the case. E.g., Acquavella 92-95, 104-113 (9 pages), 278-286 (8 pages); Farmer 178-187.  See e.g. M Ross 272-277: the objection is not valid as to every statement in all those pages, and hence it is overruled. Same: Saltmiras 213-219.

- Objections such as at Daubert 800-804 are too numerous and apply to too many pages to allow the judge to figure the evidentiary issue with respect to any given statement, and according these objections cannot be sustained.

- It is a waste of time to object on the basis of for example "calls for a legal conclusion" when the witness responds that he does not know.  E.g., D. Jenkins 70. (It is also of course pointless to designate the passage.)

- "Asked and answered" (e.g. Neugut 180) is not useful because it requires the judge to review an undetermined number of prior pages of the deposition (or perhaps other materials) to determine the validity of the objections.

- "Misstates record"  is not useful, and generally cannot be ruled on, for the same reason.

- "Mischaracterizes" (e.g. Neugut 222) is a vague objection (what is being mischaracterized, and in what way, is not stated) and generally cannot be ruled on, for the same reason.

- "Compound," while occasionally useful at deposition and at trial, is not useful in this present context where the answer is evident, unless the *answer* is itself ambiguous (which is not the case in these transcripts). E.g., Neugut 290.

- "Calls for speculation," while an objection that can be useful at trial, almost never makes sense in the present context because the answer will actually reveal whether the witness does in fact know the answer, in which case the objection is no good, or that she does not know, in which case the proponent is wasting his time to use it at trial (unless the fact of ignorance is material).

- "Vague and ambiguous" is generally useless in the present context for the same reasons: while suitable at trial, it is not after the answer has already been given unless there is something about the *answer* which is ambiguous. E.g. Neugut 330.

- E.C. § 352 issues are generally reserved for the trial judge; because usually they require a weighing of relevance and prejudicial value, which in turn depends on the materiality of the topic and whether it has been or will be addressed at trial in some other way; thus the issues are (with a few exceptions) difficult or impossible to handle at this pretrial stage.

- A "relevance" objection is rarely sustained because it is usually difficult for the judge to know whether there is the slightest modicum of relevance to a question, and if there is not, it is usually just a waste of time for the proponent to use it—but harmless (the § 352 issues, such as a waste of time, are reserved for the trial judge).

- The objection "incomplete," without more, cannot be sustained, because it's not clear in what respect the answer or the question is 'incomplete'. E.g. Neugut 71

- The objection "facts not in evidence" (Neugut 125) is virtually never useful in this context because it is impossible pretrial to know if the "facts" at issue (themselves usually not clear from the objection) will be in evidence by the time the designation is presented to the jury.

- There are no rulings on whether testimony is within the scope of expertise or expert designations (among other things, the parties have not provided the necessary information on which such rulings could be made). E.g., Acquavella 352 ff., 357; Goldstein 317.

- "Not calculated to lead to admissible evidence" is a particularly pointless objection in this context. E.g., Jameson 124, 131, 133

- "Document not authenticated" (e.g. Farmer 286, 426) is not ruled on because the issue in this context is not the admissibility of a document. See also e.g., J. Rowland 106.

- "Improper designation" is an objection which I do not understand. Wiesenberger 181.

*Rulings*

Objections noted below are sustained, otherwise they are overruled.

**Acquavella**

102, 120, 157-9, 213, 234, 236, 241, 247, 309:6-9, 311

**Azevedo**

6, 52, 59-60, 61-62

**Blair**

254

**Daubert**

No ruling on general objections.

**Farmer**

48:7-22; 58:4-18; 63:18-64:4; 119, 130, 140:1-3, 174-177:2, 191, 290:14-20, 394, 397:6-17, 398:14-25 (same for quotations at 400, 401-404.  Other objections are overruled as when the deponent adopts the statement, e.g. 414-15, 416); 504:18-22; 511, 514:22-516

**Goldstein**

14:2-6, 28:12-16, 44:3-19, 46:8-9, 46:23- 47:2, 58:4-7, 61:22-25, 97,[7] 125, 129, 134, 137:3-138:8, 160:16-21, 161:11-162:25, 163: 16-164:11, (no ruling in 165:17-166:23); 167-169, 171: overruled if plaintiff's questions on Proposition 65 are admitted and otherwise sustained; 186, 198: 17-20, 202:24-203:1; 209:25-212:2

**S Gould**

62:13-25

**D. Heering**

107, 162-167

**Heydens**

36, 40, 97, 100, 170, 331 (hearsay), 420:10-11, 426:11-18, 434

**C Jameson**

None

**D Jenkins**

None

**A. Neugut**

11- no ruling

**Ofodile**

240:17-243:11; 245:18-248:13

---

[7] The material testimony here likely commences at p.99 line 1.

**M Ross**

None

**J. Rowland**

90:14-94:10 [*except that the following portions are not excluded: 91:10 (to extract the name Jess Rowland, to allow the next section to be understood); 91:13-23; 93:14-17*]; 97-98:10

**D Saltmiras**

251

**Weisenburger**

None

Dated: May **16**, 2018

_____

Curtis E.A. Karnow
Judge Of The Superior Court

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP 1010.6(6) & CRC 2.260(g))

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On    MAY 17 2018    , I electronically served THE ATTACHED DOCUMENT via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:    MAY 17 2018

T. Michael Yuen, Clerk

By: _____

DANIAL LEMIRE, Deputy Clerk