# EXHIBIT 3

Case 3:16-md-02741-VC Document 2479-2 Filed 01/11/19 Page 2 of 24
Case 3:16-md-02741-VC Document 2499-21 Filed 01/03/19 Page 2 of 24
Andrei Shustov, M.D.

01

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

_____

IN RE:  ROUNDUP PRODUCTS                    )

LIABILITY LITIGATION                        )

_____             )

                                            ) MDL No. 2741

This document relates to:                   )

                                            ) Case No. 16-md-02741-VC

Stevick v. Monsanto Co., et al.             )

Case No. 3:16-cv-2341-VC                     )

                                            )

                                            )

                                            )

_____

VIDEOTAPED DEPOSITION OF ANDREI SHUSTOV, M.D.

December 16, 2018

Seattle, Washington

Page 2

APPEARANCES

For the Plaintiff:

R. BRENT WISNER, ESQ.
Baum, Hedlund, Aristei & Goldman
10940 Wilshire Boulevard
17th Floor
Los Angeles, California 90024
310.207.3233
rbwisner@baumhedlundlaw.com

For Defendant Monsanto Co.:
AARON H. LEVINE, ESQ.
DAVID KERSCHNER, ESQ.
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, New York 10019
212.836.8000
aaron.levine@arnoldporter.com
david.kerschner@arnoldporter.com

For Defendant Bayer:
LINDLEY J. BRENZA, ESQ.
Bartlit Beck, LLP
1801 Wewatta Street
Suite 1200
Denver, Colorado 80202
303.592.3100
lindley.brenza@bartlitbeck.com

Also present: Allison Borgida, videographer

---

Page 3

EXAMINATION INDEX
EXAMINATION BY:                          PAGE NO.
Mr. Brenza                          6
Mr. Wisner                          80

EXHIBIT INDEX
EXHIBIT NO.   DESCRIPTION                    PAGE NO.
Exhibit No. 36   Monsanto Company's Notice to      4
                 Take Oral and Videotaped
                 Deposition of Dr. Andrei
                 Shustov.

Exhibit No. 37   Expert Report of Dr. Andrei       4
                 R. Shustov.
Exhibit No. 38   Expert Report of Dr. Chadi       18
                 Nabhan.

Exhibit No. 39   Clinical Summary for Elaine      56
                 M. Stevick dated 9/6/2018.
                 Labeled
                 Confidential-Stevick-EStevick
                 -KPNValley-MD-000010.

Exhibit No. 40   Decision/Reason, dated           60
                 7/14/2016.  Labeled
                 Confidential-Stevick-EStevick
                 -PPR-000158.
Exhibit No. 41   Office visit for Elaine M.       62
                 Stevick dated 8/2/2018.
                 Labeled
                 Confidential-Stevick-EStevick
                 -KPNValley-MD-005067.

---

Page 4

BE IT REMEMBERED that on Sunday,
December 16, 2018, at 1900 Fifth Avenue, Seattle,
Washington, at 2:35 p.m., before JOHN M.S. BOTELHO,
Certified Court Reporter, appeared ANDREI SHUSTOV,
M.D., the witness herein;

WHEREUPON, the following
proceedings were had, to wit:

<<<<<< >>>>>>

(Exhibit Nos. 36 and 37
marked for identification.)

THE VIDEOGRAPHER:  We are on record
at 2:35 p.m. on Sunday, December 16, 2018, in the
matter of Stevick vs. Monsanto.  The deponent today
is Dr. Andrei Shustov.

Will counsel and -- counsel please identify
themselves for the record, and then the court
reporter may swear in the witness.

MR. WISNER:  Brent Wisner on behalf
of the deponent and the plaintiffs in this case.

MR. BRENZA:  Lin Brenza with
Bartlit Beck on behalf of Bayer.

MR. KERSCHNER:  David Kerschner

---

Page 5

from Arnold & Porter on behalf of Monsanto.

MR. LEVINE:  Aaron Levine from
Arnold & Porter on behalf of Monsanto.

MR. WISNER:  Technically Bayer is
not a party to this case.

MR. BRENZA:  I don't know.

MR. WISNER:  Okay.

MR. BRENZA:  I'll be on behalf of
Monsanto if you want me to be.

MR. WISNER:  Okay.

MR. BRENZA:  So -- I'm sorry.  Go
ahead.

ANDREI SHUSTOV, M.D.,      having been first duly sworn
               by the Certified Court
               Reporter, deposed and
               testified as follows:

MR. WISNER:  Before you begin, sir,
just the same objections as last time.  He's being
offered for a specific cause only, not general cause,
and this is related specifically to Mrs. Stevick's
case.
////
////

Case 3:16-md-02741-VC Document 2479-3 Filed 01/11/19 Page 4 of 24
Case 3:16-md-02741-VC Document 2479-3 Filed 01/11/19 Page 4 of 24
Andrei Shustov, M.D.



Page 6

1          EXAMINATION
2     BY MR. BRENZA:
3     Q   Doctor, I know it's been long, a long --
4     A   Yes, it has been.
5     Q   -- two days.  We're -- hopefully we're getting near
6         the end here.  We have one more plaintiff to talk
7         about.  It's Ms. Stevick.

Page 8

Page 7

Page 9



Page 10

Page 11

Page 12

Page 13

16  Q  We'll get back to your report in a minute.  I just
17     want to just deal with some of the other housekeeping
18     items.
19         I've handed you your deposition notice for this
20     deposition, marked as Exhibit 36.  Do you see that?
21  A  It is notice of deposition.  Is that what you're
22     asking?
23  Q  Yes.
24  A  Yeah.
25  Q  And have you had a chance to look at that before the

Case 3:16-md-02741-VC  Document 2479-3  Filed 01/11/19  Page 6 of 24
Case 3:16-md-02741-VC  Document 2459-3  Filed 01/03/19  Page 6 of 24
Andrei Shustov, M.D.

Page 14

1 deposition?
2 A  I did.
3 Q  And I'll ask you the same questions.  Have you
4 provided all the documents to your counsel that are
5 responsive to the documents requested in this notice?
6        MR. WISNER:  Objection.  Answer
7 that question to the extent that doesn't disclose
8 privileged communications with counsel.
9        THE WITNESS:  To the best of my
10 ability, yes.
11 Q  (By Mr. Brenza)  And like the -- well, let me strike
12 that.
13     Was the list of materials that you relied on the
14 same list that we've previously marked in depositions
15 that we've taken today and yesterday?  Do you need me
16 to --
17 A  Can I verify?
18 Q  Yeah.  It's going to be in --
19 A  Exhibit 4.
20 Q  -- that stack.  It's Exhibit 4.
21 A  It's for previous case or for...?
22 Q  It's a previ -- we marked it previously, so I'm --
23 A  Is it --
24 Q  -- asking if we need to remark another copy or if
25 it's the same exact copy and we'll just -- you can

Page 15

1 just say that.
2        MR. WISNER:  Are the medical
3 records listed on there?  Is that --
4        MR. BRENZA:  No.
5        MR. WISNER:  Oh.
6        MR. BRENZA:  It's maybe in the
7 supplemental one, but then this one -- it's --
8        MR. LEVINE:  --
9        MR. BRENZA:  It's just articles and
10 expert reports.
11        THE REPORTER:  What was that,
12 Mr. Levine, you said?
13        MR. LEVINE:  I said medical records
14 are not in the supplemental either.
15 Q  (By Mr. Brenza)  Do you have Exhibit 4?
16 A  Yes.  That's what I'm looking for, looking at.
17 Q  You're just verifying.  Okay.  Good.
18 A  Do you -- do you have the actual list for this case?
19 I want to verify something.
20 Q  I may.
21        MR. LEVINE:  There wasn't a list
22 for this case other than the expert reports you
23 reviewed.
24        MR. WISNER:  That's right.  I'm
25 thinking of the expert disclosures that we did.

Page 16

1        MR. BRENZA:  It was one -- it was
2 one for all, wasn't it?
3        MR. WISNER:  Yeah, it was one for
4 all, and then we stated plus any references cited in
5 the expert report.
6        MR. LEVINE:  Right.
7        MR. WISNER:  This is what we said.
8        MR. LEVINE:  Yeah.
9        MR. BRENZA:  Okay.  So --
10        MR. LEVINE:  That's -- I'm just
11 clarifying that also.
12        MR. WISNER:  Yeah.
13        MR. LEVINE:  Yeah.
14        THE WITNESS:  Okay.
15 
24        MR. WISNER:  Exactly.
25        THE WITNESS:  Okay.  So that --

Page 17

1 that answers my question.
2 Q  (By Mr. Brenza)  So if you'll look at Paragraph 6 of
3 your -- oh, we haven't marked your report.  So I've
4 previously handed you what I've marked as Exhibit 37.
5 A  36.  There we go.
6        MR. WISNER:  It's in your hand.
7        THE WITNESS:  Yeah.

Case 3:16-md-02741-VC  Document 2479-2  Filed 01/11/19  Page 7 of 24
Case 3:16-md-02741-VC  Document 2023-2  Filed 08/13/18  Page 7 of 24
Andrei Shustov, M.D.



Page 18

1          (Exhibit No. 38 marked for
2           identification.)
3
4    Q   (By Mr. Brenza)  And I also have marked, I think it
5        says 38.  Dr. Nabhan's report --
6    A   Mm-hmm.
7    Q   -- in the Stevick case.  Do you see that?
8    A   I do.
9    Q   And is this -- do we have the same situation here
10       where you borrowed language from Dr. Nabhan's report
11       and used it in your report for Ms. Stevick?
12   A   I see the same language in general causation section
13       that I used.
14

Page 19

Page 20

Page 21





Case 3:16-md-02741-VC Document 2479-3 Filed 01/11/19 Page 10 of 24
Case 3:16-md-02741-VC Document 2479-3 Filed 01/11/19 Page 10 of 24





Case 3:16-md-02741-VC Document 2479-3 Filed 01/11/19 Page 12 of 24







Page 46

Page 47

Page 48

Page 49

5    Q   Okay.  I see it.
6    A   Could I request a bathroom break?
7    Q   Sure.
8    A   Okay.
9               THE VIDEOGRAPHER:  All right.
10   We're going off record.  The time is 3:48 p.m.
11               (Pause in proceedings.)
12               (The following held off the
13               videotape record.)
14
15               MR. WISNER:  At this time the
16   plaintiffs designate this deposition, the one before,
17   and the one before that, all related to Dr. Shustov,
18   as confidential pursuant to the protective order.
19               (The following held on the
20               videotape record.)
21
22               THE VIDEOGRAPHER:  We are back on
23   record.  The time is 4:03 p.m.
24





Page 54

Page 56

Page 55

Q   (By Mr. Brenza)  Have you ever used Roundup?

A   No.

Q   Do you know that Roundup is commonly used?

          MR. WISNER:  Objection; beyond the

scope, speculation.

          THE WITNESS:  I don't know how

widely it's used.  I've seen walls of Roundup at

Lowe's when I go shopping there.  But I don't know

how extensively -- what the -- what sales are or

how extensively used.

Page 57





Page 62

Page 63

Page 64

7      THE VIDEOGRAPHER:  All right.
8  We're going off record.  The time is 4:25 p.m.
9          (Pause in proceedings.)
10
11     THE VIDEOGRAPHER:  We are back on
12  record.  The time is 4:33 p.m.
13  Q  (By Mr. Brenza)  Coming down the homestretch.  If you
14  would take out Exhibit 37, your expert report in the
15  Stevick matter, please.  And I just want to verify
16  which sections you borrowed from you borrowed from
17  Dr. Nabhan and which sections you were the original
18  author of.
19     Can we go page by page and you just tell me
20  whether you authored them or you borrowed them from
21  Dr. Nabhan?
22  A  Okay.  I would like to say I -- I'm an author of this
23  report, and I used the language from Dr. Nabhan's for
24  some of the statements to save me time, but I stand
25  by the statement, and I -- I feel I authored this

Page 65

1  report.  And it's not uncommon practice in even our
2  academic world to borrow each other's slides to save
3  time.  So it does not undermine my standing behind
4  any word in this report.
5  Q  So which -- are the portions of your report that you
6  used Dr. Nabhan's language for the parts that have to
7  do with general causation?
8  A  That's correct.
9



Page 66

Page 68

Page 67

Page 69

17      MR. BRENZA:  Those will be in the
18  exact.
19          MR. WISNER:  Exhibit 13.
20          MR. LEVINE:  Exhibit 10.
21          MR. WISNER:  13.
22          MR. LEVINE:  Oh.  13?
23          MR. BRENZA:  Every exhibit we
24  talked about yesterday is in this stack.
25          THE WITNESS:  Okay.  That's why I'm



Page 70

1    asking.
2            MR. WISNER:  I believe it's memory.
3    See if my memory is...
4            THE WITNESS:  Give me a moment to
5    find that report.
6      It is 10, is it?
7            MR. WISNER:  No.  It's 13, the
8    highlight.
9            THE WITNESS:  13.  Sorry.
10           MR. WISNER:  It's nice to have a
11   eidetic memory.
12           THE WITNESS:  I have it.
13           MR. WISNER:  So, Dr. Shustov, what
14   I would do is I would take this one and then look at
15   yours and just kind of go through them.
16           THE WITNESS:  Take this and this?
17           MR. WISNER:  Yeah.  And just
18   compare them.  And just for what it's worth, he just
19   wants to know if the general causation section in
20   your report is the portion that has the information.
21   And if so, then I think that would satisfy you.
22           MR. BRENZA:  Yeah, I meant, let's
23   start with that and see if -- what he says.
24           THE WITNESS:  Yes, it is in the
25   section on general causation that I see the overlap,

Page 71

1    yes.

25   off the record while --

Case 3:16-md-02741-VC   Document 2479-3   Filed 01/11/19   Page 21 of 24
Case 3:16-md-02741-VC   Document 2463-23   Filed 01/03/19   Page 21 of 24
Andrei Shustov, M.D.



Page 74

Page 75

Page 76

Page 77

8    Q   I have one more line of questioning on the substance
9        of your report.  This has to do with Page 6, your --
10       your opinions that are expressed concerning the
11       meta-analysis by Schinasi and Leon.  Do you see that
12       paragraph?
13              MR. WISNER:  The first bulleted
14       paragraph?
15              MR. BRENZA:  Correct.
16              THE WITNESS:  Yeah, I see it.
17   Q  (By Mr. Brenza)  Okay.  And do you see -- at the end
18       of that paragraph, you state, "Furthermore, I have
19       observed that several of the case control studies
20       cited above adjusted for other pesticides as
21       potential confounding factors; whereas some did not.
22       I have taken this issue into account in my analysis."
23         Do you see that?
24   A   I do.
25   Q   How did you take the issue of confounding pesticides

Page 78

1    in the studies relied on in the Schinasi
2    meta-analysis, how did you take that into account in
3    your analysis?
4  A  I gave to go again. It's -- at the time of writing,
5    I had -- I decided that this was the, again, proper
6    way of state how I adjusted my impression from those
7    studies.
8  Q  Are you done?
9  A  I don't -- what?
10  Q  You still answering, or...?
11  A  Yes, I'm trying to still think how to answer your
12    question.
13  Q  Okay.
14  A  I can't tell you specifics how exactly I adjusted
15    that without, again, opening discussion of those
16    publications. 'Cause I don't explain specifically
17    how I did it.
18  Q  And you don't remember, as you sit here now, how you
19    took account of whether they control or didn't
20    control for confounding pesticides?
21  A  I don't recall my train of thought at the time.
22  Q  Do you recall your analysis, how you took it into
23    account in your analysis?
24  A  As we discussed before for general causation
25    analysis, I performed very brief review of the

Page 79

1    literature that we went over several times and looked
2    at the limited amount of information in tables, and
3    without having a deep dive into general causation,
4    that really is not my area of expertise. So I
5    don't -- I can't give you specifically, without
6    looking at the studies again in area of general
7    causation, what specific terms or what specific
8    factors I looked at.
9  Q  Do you remember what method you used to conduct your
10    analysis?
11  A  I read the papers. Again, for general causation, I
12    used as a reference just to familiarize myself with
13    general causation.
14  Q  Did you do any mathematics or anything to satisfy
15    yourself that you could rely on studies that didn't
16    adjust for pesticide use?
17  A  I didn't do any calculations on my own.
18  Q  Did you receive calculations from anyone else?
19  A  No.
20  Q  Do you remember anything else about the method you
21    used?
22  A  Method of...?
23  Q  Of taking into account whether the studies did or
24    didn't adjust for confounding pesticides.
25  A  Again, I've taken into consideration reading the

Page 80

1    paper. I did not do any specific considerations or a
2    specific analysis on...
3        MR. BRENZA: Okay. That's all I
4    have. Thank you. Pass the witness.
5        MR. WISNER: Thank you.
6
7
8            EXAMINATION
9  BY MR. WISNER:
10  Q  Couple quick questions, Doctor. We'll get you out of
11    here. It's been a long --
12  A  Sure.
13  Q  -- couple of days.
14  A  Appreciate it.
15  Q  The first is on the confounding issue that we were
16    just talking about. When you say "taking into
17    account," does that just mean you looked and see if
18    those studies did adjust or did not adjust?
19  A  At the level that I looked at those papers, I did not
20    do any specific analysis on general causation papers.
21  Q  Sure. And yesterday I believe we actually discussed
22    one of the articles. It was De Roos 2003. I believe
23    it was Exhibit 20?
24  A  I remember the paper. I don't remember the number of
25    exhibit.

Page 81

1  Q  Okay. It was Exhibit 20. And that was the study
2    where they adjusted for 47 other pesticides. Do you
3    recall?
4  A  I remember that.
5  Q  Okay. And you remember we discussed there's language
6    in there showing that these other pesticides, for
7    example, didn't confound. Do you recall?
8  A  I do remember that.
9  Q  Okay. The phrase "idiopathic causes," is that a
10    cogent sentence or phrase?
11  A  In a way, "idiopathic causes" is kind of an oxymoron
12    because it means we don't know the cause. We use
13    this kind of liberally just to say we don't know the
14    cause. It's kind of, I'd say, almost inappropriate
15    to call it "the cause" because we don't know the
16    cause. I -- you know, we can call it unidentified --
17    uni -- unidentifiable causes, but the "idiopathic
18    causes," it's kind of nonsensical, but it's very
19    frequently used.
20  Q  Is it possible to rule out an unknown cause?
21  A  Well, technically you cannot rule out something you
22    don't know what you're ruling out.
23  Q  Okay.
24  A  So if...
25



**Page 84**

4  MR. WISNER: Okay. Pass the
5  witness.
6  MR. BRENZA: Nothing further.
7  THE VIDEOGRAPHER: All right. That
8  concludes the video deposition of Dr. Andrei Shustov.
9  We're now going off record at 5:09 p.m.
10  (Signature reserved.)
11  (Deposition concluded at
12  5:09 p.m.)

**Page 85**

1  STATE OF WASHINGTON )  I, John M.S. Botelho, CCR, RPR,
   ) ss a certified court reporter
2  County of Pierce    )  in the State of Washington,
                          do hereby certify:
3
4  That the foregoing deposition of ANDREI SHUSTOV,
5  M.D., was taken before me and completed on December 16,
   2018, and thereafter was transcribed under my direction;
6  that the deposition is a full, true and complete transcript
   of the testimony of said witness, including all questions,
7  answers, objections, motions and exceptions;
8  That the witness, before examination, was by me
   duly sworn to testify the truth, the whole truth, and
9  nothing but the truth, and that the witness reserved the
   right of signature;
10
   That I am not a relative, employee, attorney or
11  counsel of any party to this action or relative or employee
   of any such attorney or counsel and that I am not
12  financially interested in the said action or the outcome
   thereof;
13
   IN WITNESS WHEREOF, I have hereunto set my hand
14  this 18th day of December, 2018.
15
16
17
18
19
20  _____
    John M.S. Botelho, CCR, RPR
21  Certified Court Reporter No. 2976
    (Certification expires 5/26/19.)
22
23
24
25

Andrei Shustov, M.D.

Page 86

```
1              CERTIFICATE OF DEPONENT

2

3          I hereby certify that I have read and examined the
      foregoing transcript, and the same is a true and accurate
      record of the testimony given by me.

4

           Any additions or corrections that I feel are necessary,
5     I will attach on a separate sheet of paper to the original
      transcript.

6

           _____

7          Andrei Shustov, M.D.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 87

```
1     WITNESS:  Andrei Shustov, M.D.

2     DATE:    December 16, 2018

3     CASE:     Stevick v. Monsanto Co., et al.

4     Please note any errors and the corrections thereof on this

5     errata sheet.  The rules require a reason for any change or

6     correction.  It may be general, such as "To correct

7     stenographic error," or "To clarify the record," or "To

8     conform with the facts."

9

10    PAGE  LINE  CORRECTION         REASON FOR CHANGE

11    ____  ____  _____    _____

12    ____  ____  _____    _____

13    ____  ____  _____    _____

14    ____  ____  _____    _____

15    ____  ____  _____    _____

16    ____  ____  _____    _____

17    ____  ____  _____    _____

18    ____  ____  _____    _____

19    ____  ____  _____    _____

20    ____  ____  _____    _____

21    ____  ____  _____    _____

22    ____  ____  _____    _____

23    ____  ____  _____    _____

24    ____  ____  _____    _____

25    ____  ____  _____    _____
```