

2001 M STREET NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
—
A LIMITED LIABILITY PARTNERSHIP

January 15, 2019

**VIA ECF**

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    *In re Roundup Prods. Liab. Litig.*, **No. 3:16-md-02741-VC**

Dear Judge Chhabria:

**Monsanto's Position:**

Consistent with the Court's guidance at the January 4, 2019 CMC, Monsanto respectfully submits that the following pieces of evidence should be excluded from Phase 1:

1. November 29, 2001 e-mail from Dr. Farmer regarding the published abstract for the 2001 McDuffie exploratory epidemiological study (Ex. 1, MONGLY00890492). This email contains an initial reaction from Dr. Farmer, shared only with other Monsanto employees, to the final publicized abstract of an epidemiological study. While the study (however flawed it may be) may be admissible in Phase 1, Monsanto's internal discussions of that study are not. As the Court has recognized, internal company commentary about the science does not bear on the causation question that will be the focus of Phase 1. *See, e.g.*, Ex. 4, Jan. 4 CMC Tr. at 21:15-17.

Plaintiffs concede this e-mail should not be admitted in Phase 1. That should end the inquiry. Plaintiffs' attempt to introduce yet another set of emails on a different—albeit tangentially related—subject, therefore, should not be countenanced. If the Court would like to address these additional emails, Monsanto will be prepared to do so at the hearing addressing this letter.

2. February 26, 2015 e-mail from Dr. Goldstein regarding the American Council on Science and Health ("ACSH") (Ex. 2, MONGLY02649473). This email involves an internal company discussion of possible work with ACSH, a scientific consumer-advocacy organization, in response to IARC's 2015 classification of glyphosate. Monsanto's response to IARC has nothing to do with the scientific evidence regarding causation, which consists primarily of the "independent studies done" on glyphosate and Roundup. Ex. 4, Jan. 4 CMC Tr. 25:23-24. Confirming the point, no causation expert on either side relies on any ACSH work product in assessing whether glyphosate is carcinogenic. If the experts all agree that ACSH is irrelevant to

causation, then emails about it are not part of the science on which the jury must focus.  *See id.* at 22:18-19.

3. An August 2015 email chain between Intertek employees and Monsanto employees regarding studies on the formulated product (Ex. 3, MONGLY01183933). This email involves internal commentary by Dr. Heydens about the "role" surfactants play in the formulated product. Once again, Monsanto's internal discussions of the science—and Plaintiffs' mischaracterizations of them—have no bearing on what the science actually shows about causation.

Moreover, Plaintiffs acknowledge below that they can make science-based criticisms of studies through the testimony of their general causation experts without delving into company documents. Indeed, both sides can examine experts about the significance of the *George* study or any other studies without the need to inject company documents intended to introduce issues other than causation into Phase 1. Plaintiffs' response only confirms that their intent is to "spin" company documents.

**Plaintiffs' Position:**

Ex. 1, MONGLY00890492

Plaintiffs do not intend to present evidence of Dr. Farmer celebrating the fact that "glyphosate is no longer mentioned in the abstract" of the McDuffie (2001) study (which would make it less likely for regulators, researcher, the public and physicians to pick up on the positive findings of the study) during the Phase 1 causation proceedings, unless the door is opened by Monsanto. However, Plaintiffs do intend to present this evidence during Phase 2. Even so, discussions between Dr. Acquavella and Dr. McDuffie regarding Monsanto's proposed collaboration on glyphosate research, and Dr. McDuffie's conduct of the study, *see, e.g.*, P-Ex. 1, MONGLY02628626, are relevant to Phase 1 issues for the purpose of, *inter alia*, challenging the credibility of Monsanto's general causation arguments and supporting the credibility of Plaintiffs' causation arguments.

Ex. 2, MONGLY02649473

Plaintiffs do not intend to proffer this document during Phase 1 *unless* Monsanto in any way relies on the ACSH's junk science positions regarding the carcinogenicity of GBFs or attacks on IARC's classification of glyphosate. *See*, *e.g.*, P-Ex. 2, Goldstein Dep. at 124:4-18 (testifying that the ACSH has "plenty of warts" and that he disagrees with the ACSH's scientific positions on other major chemicals and products such as lead and tobacco). Monsanto's decision to pay for the flawed scientific judgement of an organization which promoted the safety of known carcinogens in the past goes to the weight afforded by the jury to the bases for Monsanto's claim that there is no cancer-risk associated with GBFs. That said, the document is relevant for Phase 2 issues

Ex. 3, MONGLY01183933

Dr. Heydens' email is discussing the study results of George *et al.* (2010), which observed a statistically significant increase of tumors on the skin of rodents following exposure to the formulated Roundup product. The study is relied upon by Plaintiffs' general causation experts. *See, e.g.*, P-Ex. 3, Portier Rev. Rept at 44-45 ("This study supports the overall concept that

glyphosate can have an impact on tumor incidence."). Importantly, George, *et al*. (2010) examined the effects of the formulated Roundup to which Plaintiffs were exposed, as opposed to just technical glyphosate. Dr. Heydens draws attention to this fact by explaining that the tumors observed in the study are likely to be related to one of the components in the formulated product, namely the surfactant. MONGLY01183933 at *3 ("surfactant in the formulation will come up in the tumor promotion skin study because we think it played a role there."). Thus, the conclusion of Plaintiffs' experts regarding the tumor-promoting effects of GBFs is supported by Monsanto's party admission that it thinks the cancer-related effects of Roundup in the study are related to one of the product's components.

Moreover, Dr. Heydens made this statement when discussing a concern raised by one of Monsanto's consultants who was part of the Intertek Expert Panel ("Expert Panel") organized by Monsanto to conduct a weight-of-the-evidence analysis of the literature. *Id*. ("[Keith] asked if we need to give any consideration to exposures of formulants in the commercial product…"). Dr. Heydens explained that there was no need for the Expert Panel to give consideration to the components of the formulated product because the "focus of this is what is the carcinogenic potential of glyphosate." *Id*. Thus, the Expert Panel did not consider the results of George, *et al*. (2010). Monsanto's general causation experts relied upon the bioassay manuscript published by the Expert Panel. *See, e.g.*, P-Ex. 4, Foster Rep at 46 (citing Williams, *et al*. (2016)). The jury should know the reasons why the Expert Panel omitted consideration of George *et al*. (2010) so that it can properly assess the weight to be given to Monsanto's experts' opinion, which relied upon the conclusions of the Expert Panel. Also, the opinions of Monsanto's general causation experts regarding the results of George *et al*. (2010) conflict with the view of Monsanto's own scientists regarding the study, another fact to be considered by the jury when assessing the weight of Monsanto's scientific evidence. Lastly, Monsanto cannot claim that the scientific evidence for causation is insufficient while refusing to address studies, such as George *et al*. (2010), which actually did evaluate the formulated product.

Respectfully submitted,

/s/ Brian L. Stekloff

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER

777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (pro hac vice)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

Cc: Counsel of Record (via ECF)

4