**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (pro hac vice)
Brian K. Brake (pro hac vice)
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: *Hardeman v. Monsanto Co., et al,* 3:16-cv-0525-VC *Stevick v. Monsanto Co., et al* 3:16-cv-02341-VC *Gebeyehou v. Monsanto Co., et al* 3:16-cv-5813-VC | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR DAUBERT MOTION TO STRIKE CERTAIN OPINIONS OF MONSANTO COMPANY'S EXPERT WITNESSES** |

1

Plaintiffs, *Hardeman, Stevick, and Gebeyehou*, by counsel, respectfully provide the following brief in support of their Daubert Motion to Strike Certain Opinions of Monsanto Company's Expert Witnesses:

## ARGUMENT

### I. Monsanto's Case Specific Experts Offer Inadmissible General Causation Opinions

Ultimately, Monsanto cannot inject reliability into the flawed methodologies of its case-specific experts' opinions, none of whom properly applied a differential methodology because, in part, none have proffered admissible general causation opinions as a basis for ruling in exposure to GBFs.

First, Monsanto attempts to shore-up Dr. Grossbard's cursory opinion by reciting the ostensible steps he took before reaching a case-specific opinion. Mtn. 16-17. But, the reality is that Dr. Grossbard summarized four case-control studies and the AHS in brief paragraphs spanning just over a page without meaningfully discussing the strengths and weaknesses of the data or why he chose to ignore the flaws of the AHS compared to the case-control studies. *See* Grossbard Rept. at 7-8. The best Monsanto can offer is that Dr. Grossbard relied on the AHS for not ruling in exposure to GBFs as a potential cause of Mr. Hardeman's cancer based solely on the AHS' size, but Dr. Grossbard does not offer any explanation – based on "clinical judgement" or otherwise – why this feature of the AHS is the most important to consider. Mtn. at 16-17. If such conclusory comments on the data are all it takes to back-door in a general causation opinion, this Court and Plaintiffs would not have needed to spend over two years and substantial resources litigating what constitutes reliable general causation testimony based on the available science. Apparently, Dr. Grossbard considered "all of the relevant risk factors" without ever properly considering whether Roundup itself may be capable of causing cancer. And, the crux of Dr. Grossbard's opinion, that there is "nothing unusual" about Mr. Hardeman's NHL, cannot circumvent the step of seriously considering exposure to GBFs as a potential cause, which Dr. Grossbard woefully fails to do.

Similar to Monsanto's other experts, Dr. Grossbard makes the fallacious observation that "there is no biomarker, test, or any diagnostic protocol that can identify Roundup as causing or contributing to the disease[,]", but fails to give any consideration to the fact that, besides being able

to identify DLBCL tumors and the presence of ▮▮▮▮▮▮▮▮, no such "biomarker" or "genetic signature" can establish that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *caused* Mr. Hardeman's cancer.  Grossbard Rept at 10; *see also* Levine Rept at 15 (expressing same fallacy).  For the reasons set forth in Plaintiffs' affirmative Motion, Dr. Grossbard's differential methodology – along with that of Monsanto's other case-specific experts, is an inadequate attempt to rely on inadmissible general causation opinions and should be excluded accordingly.

The rest of Monsanto's experts' opinions do not fare better than Dr. Grossbard's.  Although Monsanto's experts discuss the individual case histories of Plaintiffs for identifying risk factors and other potential causes of Plaintiffs' NHL, they never properly rule in Roundup using an adequate general causation methodology to then be able to rule it out by performing the steps of a valid differential methodology.  *See Cavallo v. Star Enterprises*, 892 F. Supp. 756 (E.D. Va. 1995), aff'd in relevant part, 100 F.3d 1150 (4th Cir. 1996) ("the expert must 'rule in' the suspected cause as well as 'rule out' other possible causes. And, of course, expert opinion on this issue of *'general causation' must be derived from a scientifically valid methodology*.") (emphasis added).  This requirement cannot be overcome by Monsanto contending that its experts' flawed and un-vetted opinions on general causation are merely to put into "perspective why they do not believe Roundup or glyphosate are established risk factors that must be ruled out." Mtn. at 17.  The problem is that Monsanto's experts never properly ruled in exposure to GBFs to then be able to reliably rule it out following a consideration of Plaintiffs' individual case histories – they went straight to ruling out exposure to GBFs based on improper general causation opinions.  Contrary to what Monsanto asserts, this does not amount to shifting the burden on Monsanto to disprove causation.

As the Reference Manual makes clear, "before a competing cause should be considered relevant to a differential diagnosis, there must be adequate evidence that it is a cause of the disease." *Id*. at 618, n. 213 (citing *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 202 (4th Cir. 2001)).  Plaintiffs' contention is not that Monsanto's case-specific experts have to assume general causation, but that they have not reliably stated the *basis* for why they think that there is insufficient evidence to conclude that Plaintiffs' exposure to GBFs can be ruled in as a potential cause.  At best, the opinions of Monsanto's experts on this point amounts to a "literature review, at times supplemented by [their] own commentary and states a conclusion." *Burst v. Shell Oil Co.,*No. CIV.A. 14109, 2015 WL

3755953, at *16 (E.D.La. June 16, 2015). And, Monsanto's experts' fail to explain why their reasons for not ruling in exposure to GBFs after a review of Plaintiffs' individual case histories would not equally apply to the other risk factors and potential causes identified. *See, e.g.*, Arber Hardeman Rept at 5 (failing to explain why he places less weight on Mr. Hardeman's exposure to GBFs as a potential cause when Mr. Hardeman's tumors are also seen in patients without ▮▮▮▮). Accordingly, the opinions of Monsanto's experts' case specific opinions should be excluded because: 1) they rely upon impermissible general causation opinions as a basis for their specific-causation opinions; and 2) their differential specific-causation methodologies fail to adequately account for exposure to GBFs before concluding that other factors substantially contributed to Plaintiffs' NHL.

## II. Defense Experts, Dr. Al-Khatib and Dr. Sullivan, Utilized a Flawed Methodology in Forming their Opinions in this Case and, Therefore, Both Experts Should be Excluded from Testifying at Trial.

The methodology used by Dr. Kasim Al-Khatib and Dr. Michael Sullivan, specifically the on-site inspection of the property *six years after* the relevant time period, is unreliable. Both Dr. Al-Khatib and Dr. Sullivan admit that they rely upon the property inspection in forming their opinions. As such, their opinions necessarily require speculation as to the condition of the property prior to 2012 and do not assist the trier of fact in determining the ultimate issues in this case. If there is any probative value to these opinions, which Plaintiffs dispute there is, it is substantially outweighed by prejudice to the Plaintiffs, particularly, the risk of confusion and misleading the jury.

First, relying on a less-than-one-hour site inspection *in 2018* to speculate as to the condition of the property from 1988 through 2012, is inherently unreliable. The Hardeman's sold the property in 2012. A trial court's discretion to test reliability should be based on "the particular circumstances of the particular case." *Premiant v. Cook*, 598 F.3d 558 (9th Cir. 2010). Here, it is undisputed that the landscape of the property has changed over the past six years, given the geographical and topographical changes that occur naturally due to weather, erosion, and natural disasters. Neither Dr. Al-Khatib nor Dr. Sullivan account for these changes and only speculate as to the condition of the property prior to 2012 – these assumptions are unsubstantiated and, therefore, unreliable. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (opinion based on unsubstantiated and undocumented information is the antithesis of scientifically reliable expert opinion). Even worse, Dr.

Al-Khatib does not detail the testing he performed such that it could be retested. *See City of Pomona v. SQM North America Corp.*, 750 F.3d 1036 (9th Cir. 2014) ("Testability assures the opponent or proffered evidence the possibility of meaningful cross-examination (should he or someone else undertake the testing).").

Likewise, relying on the current unnamed property owner, rather than performing a thorough inspection, is not the type of data "reasonably relied upon by experts in the field" and Defendant has presented no evidence to the contrary. *United States v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002). "Experts are permitted to rely on hearsay, **including the opinions of other experts, if proper foundation is laid that others in the field would likewise rely on them**." *Misrun v. Hagos*, No. 03-02182, 2005 WL 5956612, at *18 (C.D. Cal. 2005) (*citing, inter alia, Calva-Siqueira v. United States*, 281 F. Supp.2d 279, 300 (D.D.C. 2003)) (emphasis added). Here, Defendant's experts rely on the say-so of the unnamed current property owner, not an expert. Accordingly, this testimony is unreliable and would serve only to mislead the jury if admitted.

### III. Monsanto Fails to Address Any of Dr. Welch's Methodological Shortcomings

Monsanto does not respond in any meaningful way to Plaintiffs' critique of Dr. Welch. Dr. Welch's lack of familiarity with the weight of the evidence methodology renders her opinions inadmissible because without being familiar with this methodology—which Dr. Welch is not—it is impossible to reliably opine that EPA correctly evaluated glyphosate. But this is exactly what Dr. Welch intends to do. Welch Dep at 183:20-23. Accordingly, and for the reasons stated in Plaintiff's opening brief, Dr. Welch must be excluded in total.

### CONCLUSION

For the forgoing reasons, Plaintiffs' motion to exclude Monsanto's expert testimony under *Daubert* must be granted.

DATED: January 22, 2019                    Respectfully submitted,

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff (SBN 278480)
**ANDRUS WAGSTAFF, PC**
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

/s/ Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

/s/ Michael J. Miller
Michael J. Miller (pro hac vice)
Brian K. Brake (pro hac vice)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com

bbrake@millerfirmllc.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of January 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Aimee H. Wagstaff