Case 3:16-md-02741-VC   Document 2558-3   Filed 01/25/19   Page 1 of 20

# EXHIBIT 4

| | |
|---|---|
| 1 | Sandra A. Edwards SBN 154578 |
|   | FARELLA BRAUN + MARTEL LLP |
| 2 | 235 Montgomery Street, 17th Floor |
|   | San Francisco, CA 94104 |
| 3 | Telephone:  (415) 954-4400 |
|   | Facsimile:   (415) 954-4480 |
| 4 | Email:        sedwards@fbm.com |
| 5 | Richard A. Clark SBN 39558 |
|   | Steven R. Platt SBN 245510 |
| 6 | PARKER, MILLIKEN, CLARK, |
|   | O'HARA & SAMUELIAN, A P.C. |
| 7 | 555 S. Flower Street, 30th Floor |
|   | Los Angeles, CA 90071-2440 |
| 8 | Telephone:  (213) 683-6500 |
|   | Facsimile:   (213) 683-6669 |
| 9 | Email:        rclark@pmcos.com |
|   |                    splatt@pmcos.com |

10  Joe G. Hollingsworth (appearance *pro hac vice*)
11  Eric G. Lasker (appearance *pro hac vice*)
    Martin C. Calhoun (appearance *pro hac vice*)
12  HOLLINGSWORTH LLP
    1350 I Street, N.W.
13  Washington, DC 20005
    Telephone:  (202) 898-5800
14  Facsimile:   (202) 682-1639
    Email:        jhollingsworth@hollingsworthllp.com
15                     elasker@hollingsworthllp.com
                       mcalhoun@hollingsworthllp.com
16
17  Attorneys for Defendants MONSANTO COMPANY

18  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

19  **FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| DEWAYNE JOHNSON, | Case No. CGC-16-550128 |
| Plaintiff, | **DEFENDANT MONSANTO COMPANY'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS** |
| v. | |
| MONSANTO COMPANY, | **Hon. Judge Curtis E.A. Karnow** |
| Defendant. | |

**CONTAINS CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER SPECIFICALLY ON PAGE 5, LINE 24 THROUGH PAGE 6, LINE 3**

1  PROPOUNDING PARTY:  Plaintiff DEWAYNE JOHNSON

2  RESPONDING PARTY:     Defendant MONSANTO COMPANY

3  SET NO.:     ONE

4   Monsanto Company ("Monsanto") hereby responds pursuant to California Code of Civil
5  Procedure § 2033.010, *et seq.*, to plaintiff's First Requests for Admissions ("Requests").

## GENERAL OBJECTIONS

7   1.   Monsanto's responses and objections to plaintiff's Requests are made solely for
8  the purposes of discovery in this action.  Each response, if any, is subject to any and all
9  objections as to competence, relevance, materiality, propriety, and admissibility, and any and all
10 objections and grounds that would require the exclusion from evidence of any statement or other
11 matter contained in any response.  All objections and grounds are hereby reserved and may be
12 interposed at the time of trial.

13   2.   Monsanto objects to plaintiff's Requests to the extent they call for the disclosure
14 of information protected by the attorney-client privilege and/or attorney work product doctrine.
15 Monsanto will construe all Requests as extending only to information and documentation that are
16 not protected by the attorney-client privilege and/or the work product doctrine.

17   3.   Monsanto's Responses to plaintiff's Requests are made without waiving the right,
18 at any time and for any reason, to revise, supplement, correct, add to, or clarify these Responses.

19   4.   Monsanto objects to the extent plaintiff demands Monsanto respond prior to the
20 deadlines provided by the California Code of Civil Procedure.  Pursuant to the California Code
21 of Civil Procedure, Monsanto's Responses are not due "within thirty (30) days from the date of
22 service hereof" as plaintiff asserts, but are due on October 16, 2017.  *See* Cal. Civ. Proc. Code §
23 2016.050 ("[s]ection 1013 applies to any method of discovery or service of a motion provided
24 for in this title" which includes requests for admission); Cal. Civ. Proc. Code § 1013(a) (when
25 served by mail and "either the place of mailing or the place of address is outside the State of
26 California but within the United States," a response deadline is extended by 10 calendar days).

5. Monsanto objects to these Requests to the extent that they seek to impose a burden or requirements beyond what the California Code of Civil Procedure requires.

6. Monsanto objects to these Requests as unreasonably cumulative and/or duplicative of discovery already permitted.

7. These General Objections apply to all of the following Responses to specific Requests and are incorporated by reference therein.

**PLAINTIFF'S REQUESTS FOR ADMISSIONS AND MONSANTO'S RESPONSES**

1. Admit that, on or about September 4, 1985, EPA's Hazard Evaluation Division concluded that the renal tubule adenomas found in the mid- and high-dose group animals in study BDN-77-420 are rare. (MONGLY04276047) [This Request is listed as No. 9 in Plaintiffs' Amended and Supplemental Requests for Admissions (June 29, 2017)].

**RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full. Monsanto **DENIES** that the statements made in the cited document occurred on or about September 4, 1985. Monsanto **ADMITS** that the cited memorandum dated 9/4/84 from William Dykstra, Ph.D., Toxicology Branch, EPA Hazard Evaluation Division, MONGLY04276044-47, states, "Renal tubule adenomas occurred in . . . male mice 4029, 4032 and 4041 of the high-dose, and male 3023 of the mid-dose group" and that "Glyphosate was oncogenic in male mice producing a dose-related increase in renal tubule adenomas, a rare tumor." Monsanto **DENIES** that the cited document is a formal agency determination of EPA. Monsanto otherwise **DENIES** this Request.

2. Admit that EPA's Hazard Evaluation Division, on or about September 4, 1985, concluded that the renal tubule adenomas reported in the mid- and high-dose animals of study BDN-77-420 were compound-related. (MONGLY04276044) [This Request is listed as No. 11 in Plaintiffs' Amended and Supplemental Requests for Admissions (June 29, 2017)].

1  **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as
2  if restated in full.  Monsanto **DENIES** that the statements made in the cited document
3  occurred on or about September 4, 1985.  Monsanto **ADMITS** that the cited memorandum
4  dated 9/4/84 from William Dykstra, Ph.D., Toxicology Branch, EPA Hazard Evaluation
5  Division, MONGLY04276044-47, states "Renal tubule adenomas occurred in . . . male
6  mice 4029, 4032 and 4041 of the high-dose, and male 3023 of the mid-dose group" and
7  that "[t]hese tumors are rare, dose related and considered compound-related."  Monsanto
8  **DENIES** that the cited document is a formal agency determination of EPA.  Monsanto
9  otherwise **DENIES** this Request.

11  3.  Admit that EPA informed Monsanto on July 29, 1985, that after EPA's
12  preliminary scientific review and evaluation of study BDN-77-420, that glyphosate
13  appeared oncogenic.  (MONGLY04269006-07) [This Request is listed as No. 12 in
14  Plaintiffs' Amended and Supplemental Requests for Admissions (June 29, 2017)].
15  **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
16  restated in full.  Monsanto **DENIES** this Request as written.  Monsanto **ADMITS** that the cited
17  document states "Glyphosate appears to be oncogenic in male mice causing renal tubule
18  adenomas, a rare tumor, in a dose-related manner."  Monsanto **DENIES** that the cited document
19  is a formal agency determination of EPA.  Monsanto otherwise **DENIES** this Request.

21  4.  Admit that after receipt of EPA's July 29, 1985 letter, Monsanto stated that EPA's
22  determination that glyphosate was oncogenic "would have serious negative economic
23  repercussions."  (MONGLY00233281)  [This Request is listed as No. 14 in Plaintiffs' Amended
24  and Supplemental Requests for Admissions (June 29, 2017)].
25  **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
26  restated in full.  Monsanto **DENIES** this Request as written.  Monsanto **ADMITS** that the cited
27  document dated March 13, 1985, states, "Monsanto is concerned that even the initiation of

1  formal regulatory action would have serious negative economic repercussions which we believe
2  are not justified by the scientific evidence." Monsanto **DENIES** that this document was created
3  after Monsanto received EPA's July 29, 1985 letter (MONGLY04269006-07). Monsanto
4  otherwise **DENIES** this Request.

6      5.    Admit that the 1983 pathology report conducted by Bio/dynamics for Study BDN-
7  77-420, did not report a kidney tumor for control animal No. 1028. [This Request is listed as No.
8  19 in Plaintiffs' Amended and Supplemental Requests for Admissions (June 29, 2017)].
9      **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
10  restated in full. Monsanto **ADMITS** that the 1983 pathology report of the study BDN-77-420
11  conducted by Bio/dynamics does not report a kidney tumor for control animal No. 1028.

13      6.    Admit that EPA classified glyphosate as a Group C – possible human carcinogen
14  – chemical in 1985. [This Request is listed as No. 25 in Plaintiffs' Amended and Supplemental
15  Requests for Admissions (June 29, 2017)].
16      **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as
17  if restated in full. **DENIED.**

19      7.    Admit that Monsanto conducted no animal chronic toxicity studies on
20  glyphosate between 1991 through 2017. [This Request is listed as No. 27 in Plaintiffs'
21  Amended and Supplemental Requests for Admissions (June 29, 2017)].
22      **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
23  restated in full. Monsanto objects to the phrase "chronic toxicity study" as vague, because
24  plaintiff purports to define the term by citing a five-page background document that does not
25  contain a precise definition of the phrase and references a variety of toxicity
26  studies. Notwithstanding Monsanto's objection, Monsanto **ADMITS** that, after reasonable
27  inquiry into the information that is known or readily obtainable, it has not identified any 12

28

1   month or longer animal chronic toxicity studies that it has conducted on glyphosate between

2   1991 through 2017.  To the extent that plaintiff suggests that there was no research or

3   evaluations being done by Monsanto during the 1991 through 2017 period involving animal

4   chronic toxicity studies on glyphosate, Monsanto **DENIES** this Request; Monsanto's animal

5   chronic toxicity studies on glyphosate (all 12-months or longer) used in the later research and

6   evaluations were conducted before 1991 and other registrants of glyphosate-based herbicides

7   conducted independent animal chronic toxicity studies on glyphosate between 1991 and 2017,

8   which were submitted to regulatory agencies in the United States and other countries.  Monsanto

9   otherwise **DENIES** this Request.

[Lines 10-27: content redacted]

5
MONSANTO CO.'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS
34812\6261383.1

1 ███████████████████████████████████████████████████
2 ███████████████████████████████████████████████████
3 ██████████████████████████████
4
5     10.    Admit that Monsanto has not conducted a chronic toxicity study of any of the
6 glyphosate containing formulations sold in the United States as of June 29, 2017. [This Request
7 is listed as No. 33 in Plaintiffs' Amended and Supplemental Requests for Admissions (June 29,
8 2017)].
9     **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
10 restated in full.  Monsanto objects to the phrase "chronic toxicity study" as vague, because
11 plaintiff purports to define the term by citing a five-page background document that does not
12 contain a precise definition of the term and references a variety of toxicity
13 studies.  Notwithstanding Monsanto's objections, Monsanto **ADMITS** that, after reasonable
14 inquiry into the information that is known or readily obtainable, it has not identified any 12
15 month or longer chronic toxicity studies that it has conducted on glyphosate containing
16 formulations that were available for sale in the United States as of June 29, 2017, but **DENIES**
17 that Monsanto has not conducted toxicity studies of shorter durations, genotoxicity studies, and
18 other tests on formulated glyphosate containing products sold in the United States as of June 29,
19 2017.  Monsanto also **DENIES** the request to the extent it suggests that Monsanto has not
20 conducted chronic toxicity studies on glyphosate.  Monsanto otherwise **DENIES** this Request.
21
22   █ ████████████████████████████████████████████████
23 █████████████████████████████████████████
24 ███████████████████████████████████████████
25   █████████████████████████████████████████
26 ███████████████████████████████████████████████████
27 ███████████████████████████████████████████████████
28
          6
MONSANTO CO.'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS
34812\6261383.1

1  ███████████████████████████████████████████

2

3       12.    Admit that Monsanto has never conducted an epidemiological study to study the
4 association between glyphosate containing formulations and non-Hodgkin lymphoma.

5       **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
6 restated in full. **DENIED**. Monsanto has conducted epidemiological studies on glyphosate
7 containing formulations, including the Farm Family Exposure Study. Monsanto **ADMITS** that it
8 has not conducted a study designed to examine specifically whether an association exists
9 between glyphosate-containing formulations and non-Hodgkin's lymphoma, however multiple
10 published studies conducted by others show no association.

11

12       13.    Admit that Monsanto has never warned any consumers that glyphosate-containing
13 products can cause non-Hodgkin lymphoma.

14       **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
15 restated in full. **ADMITTED**. Monsanto **DENIES** that its glyphosate-containing products can
16 cause non-Hodgkin's lymphoma.

17

18       14.    Admit that Monsanto never warned Dewayne Johnson prior to August 2014 that
19 glyphosate-containing products could cause cancer.

20       **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
21 restated in full. **ADMITTED**. Monsanto **DENIES** that its glyphosate-containing products can
22 cause cancer.

23

24       15.    Admit that Monsanto will be required in California to warn users of glyphosate
25 containing formulations that glyphosate is a chemical known to the state of California to cause
26 cancer under Proposition 65.

27

28

  **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full.  Monsanto objects to this Request to the extent it is not limited to the time period relevant to the issues in this lawsuit.  Plaintiff filed this lawsuit in January 2016 regarding alleged injury and product exposure that occurred before that date.  Any future obligation under Proposition 65 is irrelevant.  Monsanto also objects because Proposition 65, if it applies at all, relies on unreliable and inadmissible hearsay statements of IARC and does not require warnings where the "exposure poses no significant risk assuming lifetime exposure at the level in question." *See*, Cal. Health & Safety Code § 25249.10.  **DENIED.**

  16. Admit that on July 7, 2017, glyphosate was added to the list of chemicals known to the state of California to cause cancer pursuant to Proposition 65.

  **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full.  Monsanto objects to this Request to the extent it is not limited to the time period relevant to the issues in this lawsuit.  Plaintiff filed this lawsuit in January 2016 regarding alleged injury and product exposure that occurred before that date.  Monsanto objects that this Request addresses irrelevant actions under Proposition 65 that allegedly occurred more than a year after plaintiff filed this lawsuit.  Monsanto objects because Proposition 65, if it applies at all, relies on unreliable and inadmissible hearsay statements of IARC.  Notwithstanding Monsanto's objections, Monsanto **ADMITS** that pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986, on July 7, 2017, the Governor of California revised and republished the Chemicals Known to the State to Cause Cancer or Reproductive Toxicity and that it listed glyphosate based solely on the unreliable and inadmissible hearsay statements of IARC in an improper process that is currently being challenged by Monsanto under the U.S. and California Constitutions.

8
MONSANTO CO.'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS
34812\6261383.1

17. Admit that the International Agency for Research on Cancer ("IARC") is considered an authoritative source for determining which chemicals cause cancer under proposition 65.

**RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full. Plaintiff filed this lawsuit in January 2016 regarding alleged injury and product exposure that occurred before that date. Therefore, Monsanto objects to this Request as irrelevant because there is no Proposition 65 listing that is relevant to this case. Monsanto objects to this Request because Proposition 65, if it applies at all, relies on unreliable and inadmissible hearsay statements of IARC. Monsanto objects to the phrase "considered an authoritative source" as vague as to who and/or what considers it to be authoritative or for what purpose. Notwithstanding Monsanto's objections, Monsanto **DENIES** that IARC is an authoritative source for determining whether glyphosate causes cancer. Monsanto **ADMITS** that a California regulation, Cal. Code Regs. tit. 27, § 25306, states that "[t]he following have been identified as authoritative bodies for the identification of chemicals as causing cancer" and that the California regulation includes the "International Agency for Research on Cancer" in that list but that regulation has not been invoked with respect to glyphosate and is therefore irrelevant. Furthermore, there are statutory exemptions, *see, e.g.*, Cal. Health & Safety Code § 25249.10, which eliminates any obligation to warn where the "exposure poses no significant risk assuming lifetime exposure at the level in question," which is relevant because neither IARC findings nor Proposition 65 listings consider whether chemicals are capable of causing cancer to humans in real world exposure scenarios, *see id.* Monsanto otherwise **DENIES** this Request.

18. Admit that under California's Proposition 65 the regulations provide that "[a] chemical or substance shall be included on the [Proposition 65] list if it is classified by [IARC] in its IARC Monographs series on the Evaluation of Carcinogenic Risks to Humans . . . as: . . . (2) Probably carcinogenic to humans (Group 2A) with sufficient evidence of carcinogenicity in experimental animals. . . ."

9
MONSANTO CO.'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS
34812\6261383.1

1 **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
2 restated in full.  Plaintiff filed this lawsuit in January 2016 regarding alleged injury and product
3 exposure that occurred before that date.  This Request addresses irrelevant actions under
4 Proposition 65 that allegedly occurred more than a year after plaintiff filed this lawsuit.
5 Monsanto objects because Proposition 65, if it applies at all, relies on unreliable and inadmissible
6 hearsay statements of IARC.  Monsanto objects to the quotation based on Cal. Evid. Code § 356.
7 Notwithstanding Monsanto's objections, Monsanto **ADMITS**  that under California's
8 Proposition 65 regulations "[a] chemical or substance shall be included on the list if it is
9 classified by the International Agency for Research on Cancer (IARC) in its IARC Monographs
10 series on the Evaluation of Carcinogenic Risks to Humans (most recent edition), or in its list of
11 Agents Classified by the IARC Monographs, as: (1) Carcinogenic to humans (Group 1), or (2)
12 Probably carcinogenic to humans (Group 2A) with sufficient evidence of carcinogenicity in
13 experimental animals, or (3) Possibly carcinogenic to humans (Group 2B) with sufficient
14 evidence of carcinogenicity in experimental animals. A chemical or substance for which there is
15 less than sufficient evidence of carcinogenicity in experimental animals and classified by IARC
16 in Group 2B shall not be included on the list." Cal. Code Regs. tit. 27, § 25904.  Monsanto is
17 currently challenging the legality of this process under the U.S. and California Constitutions.
18 Furthermore, there are statutory exemptions, *see, e.g.*, Cal. Health & Safety Code § 25249.10,
19 which eliminates any obligation to warn where the "exposure poses no significant risk assuming
20 lifetime exposure at the level in question," which is relevant because neither IARC findings nor
21 Proposition 65 listings consider whether chemicals are capable of causing cancer to humans in
22 real world exposure scenarios, *see id.*  Monsanto otherwise **DENIES** this Request.

24     19.    Admit that the U.S. Department of Labor's Occupational Safety and Health
25 Administration ("OSHA") relies on IARC assessments when requiring manufactures to warn of
26 the potential carcinogenicity of chemicals on material safety data sheets.

1 **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full. Monsanto objects to this Request to the extent it is not limited to materials that plaintiff actually saw, heard, read, or was exposed to before or while deciding to use the Ranger PRO® Herbicide or any Roundup® products he used. Any material safety data sheets that plaintiff did not see, hear, or read before or while deciding to use Ranger PRO® Herbicide or any Roundup® product could have no bearing on his decision to use these products and are not relevant to any issues in this lawsuit. Monsanto objects to the word "relies" as vague. Notwithstanding Monsanto's objections, Monsanto **DENIES** this Request as written. Monsanto **ADMITS** that OSHA requires "the hazards of all chemicals produced or imported [to be] classified, and that information concerning the classified hazards is transmitted to employers and employees," and that "health hazard means a chemical which is classified as posing one of the following hazardous effects: . . . carcinogenicity." 29 C.F.R. § 1910.1200. Monsanto **ADMITS** that 29 C.F.R. § 1910.1200, App. A, states the criteria for determining whether a chemical is classified as a health hazard, states, "Chemical manufacturers, importers and employers evaluating chemicals may treat the following sources as establishing that a substance is a carcinogen or potential carcinogen for hazard communication purposes in lieu of applying the criteria described herein: A.6.4.1.1 National Toxicology Program (NTP), 'Report on Carcinogens' (latest edition); A.6.4.1.2 International Agency for Research on Cancer (IARC) 'Monographs on the Evaluation of Carcinogenic Risks to Humans' (latest editions)." Monsanto otherwise **DENIES** this Request.

20. Admit that U.S. Department of Labor's Occupational Safety and Health Administration Regulations requires Monsanto to include IARC's finding that glyphosate is probably carcinogenic to humans on material safety data sheets for glyphosate containing products.

**RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full. Monsanto objects to this Request to the extent it is not limited to materials that

plaintiff actually saw, heard, read, or was exposed to before or while deciding to use the Ranger PRO® Herbicide or any Roundup® products he used. Any material safety data sheets that plaintiff did not see, hear, or read before or while deciding to use Ranger PRO® Herbicide or any Roundup® product could have no bearing on his decision to use these products and are not relevant to any issues in this lawsuit. Notwithstanding Monsanto's objections, Monsanto **DENIES** this Request as written. Monsanto **ADMITS** that OSHA regulations call for a manufacturer to include on material safety data sheets in section 11, the Toxicological information section "whether the hazardous chemical is listed in the National Toxicology Program (NTP) Report on Carcinogens (latest edition) or has been found to be a potential carcinogen in the International Agency for Research on Cancer (IARC) Monographs (latest edition), or by OSHA." 29 C.F.R. § 1910.1200, App. D. Monsanto **ADMITS** that OSHA regulations require all chemical manufacturers to make a determination of whether a manufactured chemical is a health hazard, including whether it is carcinogenic, and "identify and consider the full range of available scientific literature and other evidence concerning the potential hazards," 29 C.F.R. § 1910.1200(d)(2), and that such health hazards must be listed in section 2, the Hazard identification section. Monsanto **DENIES** that IARC's classification requires Monsanto to list glyphosate as a health hazard in section 2. Monsanto **ADMITS** that based on the above OSHA regulations, Monsanto has placed the following on its safety data sheets for glyphosate-containing products under section 11: "Not carcinogenic in rats or mice. Listed as Category 2A by the International Agency for Research on Cancer (IARC) but our expert opinion is that the classification as a carcinogen is not warranted." Monsanto **DENIES** that there is any constitutionally enforceable requirement to include IARC's classification of glyphosate on material safety data sheets for glyphosate containing products. Monsanto otherwise **DENIES** this Request.

1  ██████████████████████████████████████████████████████
2  ████████████
3        ████████████████████████████████████████████████
4  ██████████████████████████████████████████████████████████
5  ██████████████████████████████████████████████████████████
6  ██████████████████████████████████████████████████████████
7  ██████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████
9  ██████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████
13 ██████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████████
17 ████████████████████████████████████

19     22.     Admit that Monsanto contracted with TNO Nutrition and Food Research, Netherlands in 2001 to perform dermal uptake studies (in vitro dermal penetration) on three different glyphosate formulations, MON 2139, MON 8717 and MON 35012.

**RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full.  Monsanto objects that this Request is compound.  Monsanto **DENIES** this Request as written.  Monsanto **ADMITS** that it contracted with TNO Nutrition and Food Research, Netherlands in 2002 to perform an *in vitro* dermal penetration study on MON 35012 and MON 0139.  Monsanto otherwise **DENIES** this Request.

1    23.    Admit that Monsanto employee Dr. William Heydens caveated further pursuit of
2  the TNO in vitro dermal penetration study based upon concerns of "the potential risk for this
3  work to blow Roundup risk evaluations (getting a much higher dermal penetration than we've
4  ever seen before)." *See* MONGLY03738295.

5    **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
6  restated in full.  Monsanto objects that the quotation in this Request is incomplete, inaccurate,
7  and misrepresents the record.  Monsanto objects to the partial quotation based on Cal. Evid.
8  Code § 356.  Monsanto **DENIES** this Request as written.  Monsanto **ADMITS** that in the cited
9  document, Monsanto employee Dr. Heydens states, "[m]y primary concern is with the
10 glyphosate in terms of the potential for this work to blow Roundup risk evaluations (getting a
11 much higher dermal penetration than we've ever seen before [sic]" and states that this quotation
12 must be read in the context of the full cited email chain, in which Dr. Heydens is responding to
13 an email from Monsanto employee Fabrice Broeckaert stating "[p]reliminary results with rat skin
14 are not acceptable," and that "due to very bad reproducibility that TNO cannot explain, they
15 proposed to repeat the study in parallel with the human skin study."   Monsanto otherwise
16 **DENIES** this Request.

17

18   24.    Admit that Monsanto employee Richard Garnett confirmed that the TNO
19 glyphosate program would be abandoned because "a further study was not likely to help us meet
20 the project objective[.]"    *See* MONGLY03737014.

21    **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
22 restated in full.  Monsanto objects that the quotation in this Request is incomplete, inaccurate,
23 and misrepresents the record.  Monsanto objects to the partial quotation based on Cal. Evid.
24 Code § 356.  Monsanto **DENIES** this Request as written.  Monsanto **ADMITS** that in the cited
25 document, Monsanto employee Richard Garnett states, "[w]e dropped the programme for
26 glyphosate because a further study was not likely to help us meet the project objective: we
27 initiated the studies from a regulatory angle to help meet the requirements for operator exposure,
28

1   given that the Annex I end point for dermal absorption for glyphosate was set at 3%, which we
2   believed was a high value based on a weight of evidence approach.  [T]he results of the rat skin
3   studies show levels of absorption for glyphosate of a similar order to the Annex I end point; also
4   confirm our expectation that surfactant concentration affects the dermal absorption[.]
5   [T]herefore, from the regulatory angle, there is no point in pursuing the studies further (even
6   though it would be interesting to show that the unusual results on a few skin samples were an
7   artifact of the experimental work)[.]  [G]iven that we need to do additional studies on triallate it
8   seems a sensible use of budget and of TNO's time to replace the glyphosate studies with
9   additional work on triallate[.]"  Monsanto otherwise **DENIES** this Request.

11       25.    Admit that the International Agency for Research on Cancer determined that
12  glyphosate and glyphosate containing formulations were probable human carcinogens in March
13  of 2015.
14      **RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if
15  restated in full.  Monsanto objects to this Request because plaintiff developed the alleged non-
16  Hodgkin's lymphoma at issue in this lawsuit before IARC came to any conclusion about the
17  alleged carcinogenicity of glyphosate so this Request is irrelevant to this action.  Monsanto
18  objects because it refers to unreliable and inadmissible hearsay statements of
19  IARC.  Notwithstanding Monsanto's objections, Monsanto **DENIES** this Request as written.
20  Monsanto **DENIES** that IARC made any determination for glyphosate-containing formulations.
21  Monsanto **ADMITS** that in March 2015, the International Agency for Research on Cancer
22  classified glyphosate as Group 2A: "probably carcinogenic to humans," which is used when
23  under IARC's standards, an IARC working group concludes that "there is limited evidence of
24  carcinogenicity in humans and sufficient evidence of carcinogenicity in experimental animals"
25  and that limited evidence of carcinogenicity means "[a] positive association has been observed
26  between exposure to the agent and cancer for which a causal interpretation is considered by the
27  Working Group to be credible, but chance, bias or confounding could not be ruled out with

reasonable confidence." IARC, *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans Preamble*, 22 (Jan. 2006), http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php. Monsanto otherwise **DENIES** this Request.

26. Admit that Monsanto never submitted the reports written by Dr. James Parry in 1999 on behalf of Monsanto regarding the genotoxicity of glyphosate and glyphosate containing products to the U.S. EPA.

**RESPONSE:** Monsanto incorporates by reference General Objections 1-6 here as if restated in full. Monsanto objects to the phrases "on behalf of Monsanto" and "regarding the genotoxicity of glyphosate and glyphosate containing formulations" as vague and ambiguous. Monsanto objects that this Request does not identify the documents it references. To the extent that this Request references MONGLY01312093-104 and MONGLY01314233-83, Monsanto **ADMITS** that, after reasonable inquiry into the information that is known or readily obtainable, it has not identified any documentary evidence that the referenced reports were submitted to U.S. EPA. To the extent that this Request references other documents, Monsanto cannot respond. Monsanto otherwise **DENIES** this Request.

Dated: October 16, 2017                                   FARELLA BRAUN + MARTEL LLP

By: _____
    Sandra Edwards
    Attorney for Defendant
    MONSANTO COMPANY

# **VERIFICATION**

San Francisco County Court Case No. CGC-16-550128

Christopher A. Martin states that he is Assistant Secretary for Monsanto Company; that he verifies the foregoing "**Monsanto Company's Responses to Plaintiff's First Requests For Admission**" in the above-styled cause of action, for and on behalf of Monsanto Company and is duly authorized to do so; that some or all of the facts and matters set forth therein are not within his personal knowledge; that the facts and matters set forth therein have been assembled by authorized employees and counsel of Monsanto Company, using records maintained in the company's ordinary course of business; and that he is informed that the facts and matters set forth therein are true.

Executed on the ____ day of October 2017, at _____.

Christopher A. Martin

# PROOF OF SERVICE

**Dewayne Johnson v. Monsanto Company**
**San Francisco Superior Court Action No. CGC-16-550128**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 235 Montgomery Street, 17th Floor, San Francisco, CA 94104.

On October 16, 2017, I served true copies of the following document(s) described as

**DEFENDANT MONSANTO COMPANY'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS**

on the interested parties in this action as follows:

### SERVICE LIST

| | |
|---|---|
| Timothy Litzenburg, Esq. | Attorneys for Plaintiff |
| Curtis G. Hoke, Esq. | Tel: 540-672-4224 |
| The Miller Firm, LLC | Fax: 540-672-3055 |
| 108 Railroad Avenue | tlitzenburg@millerfirmllc.com |
| Orange, VA  22960 | choke@millerfirmllc.com |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Farella Braun + Martel LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 16, 2017, at San Francisco, California.

Susan C. Hunt