# EXHIBIT 28

Confidential - Subject to Protective Order

```
 1              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2

 3    IN RE: ROUNDUP            )
      PRODUCTS LIABILITY        )   MDL No. 2741
 4    LITIGATION                )
      _____   )   Case No.
 5    THIS DOCUMENT RELATES     )   16-md-02741-VC
      TO ALL CASES              )
 6

 7          WEDNESDAY, JANUARY 11, 2017
 8      CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
 9                      - - -
10          Videotaped deposition of Donna
11    Farmer, Ph.D., Volume I, held at the offices
12    of HUSCH BLACKWELL, L.L.C., 190 Carondelet
13    Plaza, Suite 600, St. Louis, Missouri,
14    commencing at 9:04 a.m., on the above date,
15    before Carrie A. Campbell, Registered
16    Diplomate Reporter, Certified Realtime
17    Reporter, Illinois, California & Texas
18    Certified Shorthand Reporter, Missouri &
19    Kansas Certified Court Reporter.
20                      - - -
21
              GOLKOW TECHNOLOGIES, INC.
22       877.370.3377 ph | 917.591.5672 fax
                 deps@golkow.com
23

24

25
```

Confidential - Subject to Protective Order

```
 1   employed?
 2        A.    Monsanto Company.
 3        Q.    And how long have you, Donna
 4   Farmer, been employed by Monsanto Company?
 5        A.    Since September of 1991.
 6        Q.    Okay.  Don't make me do the
 7   math.
 8              How many years have you been
 9   with Monsanto?
10        A.    25 years.
11        Q.    25 years continuously employed
12   with Monsanto?
13        A.    Yes.
14        Q.    And as we sit here today, still
15   employed by Monsanto?
16        A.    Yes, I am.
17        Q.    Okay.  And what would you
18   describe your title as?
19        A.    I'm a toxicol --
20              MR. JOHNSTON:  Objection.
21        Vague.
22              Go ahead.
23              THE WITNESS:  I'm a
24        toxicologist in our product safety
25        center.
```

Confidential - Subject to Protective Order

1  QUESTIONS BY MR. MILLER:
2          Q.     Would you -- is it fair to say
3  that you're the lead spokesperson for
4  Monsanto and Roundup?
5          A.     I have been one of the
6  spokesperson for the safety of Roundup when
7  it comes to the toxicology.
8          Q.     Ma'am, who is Christophe
9  Gustin?
10         A.     Christophe Gustin is the head
11 of our regulatory affairs for chemical
12 products in Europe.
13         Q.     And how long, approximately,
14 has he been with the company?
15         A.     I don't know.  I've known him
16 for many years.
17         Q.     And you work together with him
18 as the job requires?
19         A.     Yes.
20                (Farmer Exhibit 1-1 marked for
21         identification.)
22 QUESTIONS BY MR. MILLER:
23         Q.     Okay.  Let's look at the first
24 exhibit.  We've been produced documents from
25 your custodial file.

Confidential - Subject to Protective Order

1           Vague.
2                   THE WITNESS:  I have been
3           involved with glyphosate since 1996,
4           so as this indicated, I had a lot of
5           knowledge.  And so based on that in
6           depth knowledge for over those many
7           years, yes, I was asked to be -- help
8           defend glyphosate.
9      QUESTIONS BY MR. MILLER:
10          Q.    Okay.  And that's your job,
11     defend Roundup, right?
12          A.    No, that's not my job.  I
13     wouldn't agree with that.
14                My job is to make sure as a
15     regulatory toxicologist for glyphosate that
16     we meet all the requirements by the
17     regulators.  And then there are times when
18     there are questions that are asked about the
19     molecule that we need to do responses for.
20                So it's more than just, as you
21     say, defending the molecule.
22          Q.    But part of your job is to
23     defend glyphosate, true?
24          A.    It's a part -- yes, it is, and
25     it's to respond to questions or allegations

1   have him commenting on it, and so I think
2   it's very open and very transparent.
3       Q.   And this was -- Dr. Belle's
4   comments we've been discussing were published
5   in a Journal of Toxicology and Environmental
6   Health?
7       A.   Yes.
8       Q.   A peer-reviewed journal?
9            MR. JOHNSTON:  Objection.
10      Misstates -- lack of foundation.
11  QUESTIONS BY MR. MILLER:
12      Q.   Are you aware that that's a
13  peer-reviewed journal, Dr. Farmer?
14      A.   This would have been the same
15  journal that Williams would have submitted
16  in.  I do believe it is peer reviewed.
17           But as we talked about, again,
18  peer review is not always the same.  It's
19  very different these days.  Too many
20  journals, and lots of variety of levels of
21  quality of peer review.
22      Q.   Ma'am, your name originally
23  appeared on the Williams article as an
24  author, the Amy Williams article, and then it
25  was struck out before it was published.

Confidential - Subject to Protective Order

1              Are you aware of that?
2       A.     Yes, I was.  I told him that I
3  didn't do anything on it and my name
4  shouldn't be on it.  I had made some edits,
5  but it was not at a level where I was -- not
6  to be an author.
7       Q.     You knew that if your name was
8  on it, it would be plain as day that it was
9  written by Monsanto, and you didn't want your
10 name on it, right?
11             MR. JOHNSTON:  Objection.
12        Argumentative.
13             THE WITNESS:  That's why I
14        didn't want my name on it, because I
15        didn't write it.  And it's fully
16        known, as they acknowledge, that
17        Monsanto helped support it and that we
18        provided documents to them.
19 QUESTIONS BY MR. MILLER:
20      Q.     You added a section to the
21 article on genotoxicity.
22      A.     I'm sure that I did contribute
23 some to this, yes.  As I said, I didn't write
24 the whole thing, but I did add some comments.
25             (Farmer Exhibit 1-18 marked for

Confidential - Subject to Protective Order

1   see these kinds of responses, it's secondary
2   to cytotoxicity, not a primary oxidative
3   response.
4        Q.    He recommended on page 2104,
5   paragraph B at the top there, ma'am, "an
6   assessment of the individual components of
7   Roundup mixture to determine whether there is
8   any components which act synergistically to
9   increase the potential genotoxicity of
10  glyphosate," right?
11       A.    He did, and it was a basis for
12  a study that we actually did.
13       Q.    What study?
14       A.    It was with Heydens, et al.
15       Q.    Can you spell that, please?
16       A.    It was Bill Heydens,
17  H-e-y-d-e-n-s.
18       Q.    Oh, your boss?
19       A.    Uh-huh.
20       Q.    And he did the study?
21       A.    No, there was a group of us.
22  We had some -- because we are not in a
23  laboratory.  We worked with some laboratory
24  people to look at this exact question
25  because, again, we did not believe that these

Confidential - Subject to Protective Order

```
 1   studies Parry suggests."
 2              This was marching orders from
 3   your boss, wasn't it?
 4       A.     Well, that may be what he said
 5   then, but we did do the studies.  So again, I
 6   would have you look at that Heydens
 7   publication.
 8       Q.     What Mark Martens said about
 9   the Parry report, that it simply wasn't
10   suitable for defense of the product.
11              You're aware of that, right?
12       A.     As we just talked about, we
13   didn't agree with Dr. Parry's interpretation
14   of all the data.  We thought it was secondary
15   to cytotoxicity and irrelevant routes of
16   exposure, and we obviously had a disagreement
17   with him.
18              And, sure, if we have someone
19   who doesn't agree with the way we interpret
20   the data, we're not going to obviously have
21   them out there being spokespeople for us.
22       Q.     In fact, when Monsanto sent
23   Mark Martens over to meet with Parry, he was
24   irritated at Monsanto because of the pressure
25   that was being put on him.
```

Confidential - Subject to Protective Order

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2

 3    IN RE: ROUNDUP            )
      PRODUCTS LIABILITY        )   MDL No. 2741
 4    LITIGATION                )
      _____   )   Case No.
 5    THIS DOCUMENT RELATES     )   16-md-02741-VC
      TO ALL CASES              )
 6

 7           THURSDAY, JANUARY 12, 2017
 8    CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
 9                      - - -
10           Videotaped deposition of Donna
11    Farmer, Ph.D., Volume II, held at the offices
12    of HUSCH BLACKWELL, L.L.C., 190 Carondelet
13    Plaza, Suite 600, St. Louis, Missouri,
14    commencing at 9:07 a.m., on the above date,
15    before Carrie A. Campbell, Registered
16    Diplomate Reporter, Certified Realtime
17    Reporter, Illinois, California & Texas
18    Certified Shorthand Reporter, Missouri &
19    Kansas Certified Court Reporter.
20                      - - -
21
              GOLKOW TECHNOLOGIES, INC.
22       877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com
23

24

25
```

Confidential - Subject to Protective Order

1  It's just what it says.  It's a national
2  toxicology program.  They conduct toxicology
3  studies and look at toxicology of various
4  substances.
5      Q.    And you found out that the
6  National Toxicology Program in the summer
7  of 2016 was going to look in and investigate
8  this finding that IARC had made that Roundup
9  was a probable human carcinogen.
10           You found out about the NTP
11 going to do their own investigation, didn't
12 you?
13     A.    I know the NTP was going to do
14 some investigations, but I don't think it was
15 directly related to exactly what you said.  I
16 think there was some more specific studies
17 that they were going to conduct.
18     Q.    And you and Monsanto went all
19 the way to Capital Hill to stop that, didn't
20 you?
21     A.    I didn't go to Capital Hill to
22 stop that.
23          (Farmer Exhibit 1-66 marked for
24      identification.)
25

Confidential - Subject to Protective Order

1  QUESTIONS BY MR. MILLER:
2      Q.   Let's take a look at this last
3  exhibit that I have.
4           Exhibit 1-66, which I hope will
5  be the last exhibit to your deposition here
6  in the two days, a series of e-mails with you
7  and others about the National Toxicology
8  Program, and let's take a look at it.
9           Let me know when you're ready,
10 I have a few questions.  I have one more
11 exhibit after this, and then we'll wrap up.
12          Okay.  Have you had a chance to
13 look at it?
14     A.   Uh-huh.
15     Q.   And the whole line of e-mail,
16 and which you're included in a lot of them,
17 we'll look at which ones, are about -- and
18 from September of 2016.  Subject matter NTP
19 will be evaluating glyphosate now,
20 exclamation point.
21          Do you see that?
22     A.   Uh-huh.
23     Q.   Okay.  So it was important
24 enough at least for your colleague from
25 CropLife to put an exclamation point behind

Confidential - Subject to Protective Order

1  the concept that the National Toxicology
2  Program was going to be looking into the fact
3  that IARC had concluded Roundup was a
4  probable human carcinogen.
5              It was an important issue,
6  wasn't it?
7       A.    They -- yes, they indicate that
8  they think it is an important issue, yes.
9       Q.    And so she e-mails you and
10 says, "This is something that is going to
11 need some communication at the 'Hill' level."
12             She's talking about Capital
13 Hill, isn't she?
14      A.    I would assume so.  Again, I'm
15 not a government affairs person, I'm the
16 toxicologist, and so she would be working
17 with that.  So I assume that's what she's
18 referring to.
19      Q.    Well, whatever she did at the
20 Hill, the National Toxicology Program
21 abandoned its research and its study on that
22 issue.
23             You're aware of that, aren't
24 you?
25             MR. JOHNSTON:  Objection.