**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax:  (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to:<br>*Hardeman v. Monsanto Co., et al.,*<br>3:16-cv-0525-VC;<br>*Stevick v. Monsanto Co., et al.,*<br>3:16-cv-02341-VC;<br>*Gebeyehou v. Monsanto Co., et al.,*<br>3:16-cv-5813-VC | **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 1 TO EXCLUDE ANY EVIDENCE OR REFERENCE THAT COMPARES THE AMOUNT OF ROUNDUP USE TO NHL INCIDENCE OVER TIME TO DISPROVE CAUSATION** |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on February 13, 2019 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiffs will move in *limine* to exclude any evidence or reference that compares the amount of Roundup use to NHL incidence over time to disprove causation. A supporting memorandum is filed herewith.

Dated: 1/30/2019                                        Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Legal Standard.**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  The court has broad discretion to rule on evidentiary questions raised in motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  A court should grant a motion *in limine* excluding evidence when the movant shows that the evidence is "'clearly inadmissible on all potential grounds.'" *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV160084FMOAJWX, 2017 WL 2929376, at *1 (C.D. Cal. May 12, 2017).

Moreover, rulings on motions *in limine* are, by definition, preliminary, and the trial judge may adjust the court's ruling on a motion *in limine* during the course of a trial as the case unfolds.  *Ohler v. United States*, 529 U.S. 753, 758 n. 3, 120 S.Ct. 1851, 1854 n. 3 (2000).  Accordingly, the parties may renew their objections at trial as appropriate.  That said, rulings *in limine* help the parties understand what is likely to be admissible at trial, which facilitates trials and preparation.

**II.     Argument.**

Some of Monsanto's experts rely on data which, according to these experts, render association between exposure to glyphosate based formulations ("GBFs") and non-Hodgkin's lymphoma ("NHL") implausible because of a stabilization and eventual decline of the incidence of NHL with increased use of GBFs over time.  *See*, *e.g.*, First Fleming Rept. at 7 (looked at glyphosate use in the U.S. and "compared this to the overall incidence of NHL (SEER9) from 1975 through 2014."); Levine Rept. at 12 (stating in conclusory terms, without more, that "[i]f glyphosate were the cause of NHL…the incidence of these lymphomas would have increased statistically between 2004 and the present time.").  This purported expert testimony is irrelevant,

1

misleading, scientifically unreliable, and unduly prejudicial and confusing when weighed against its probative value because it may lead the jury to believe that a speculative correlation demonstrates lack of causation. As one commentator notes, such arguments "bear[] a remarkable resemblance to that put forward by tobacco companies in the 1960s – that deaths from respiratory and cardiac causes had been falling from 1900 through to the 1960s and life expectancy rising, all during a period when cigarette consumption was on the rise."[1]

Plaintiffs will establish at trial that epidemiological, genotoxicity, and toxicological studies, when viewed in totality and with application of the Bradford Hill factors, demonstrate association between exposure to GBFs and NHL, with increased risk following larger quantity/duration of exposure. Monsanto's proffered evidence regarding stabilization or decrease in national NHL incidence with increased use of GBFs does nothing to "make the existence of [this] fact . . . more probable or less probable than it would be without the evidence" or "assist the trier of fact to understand evidence or to determine a fact in issue." Fed. R. Evid. 702. It amounts to nothing more than demonstration of a correlation, failing to bridge the wide gap between a correlated fact and a causal one.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" an expert "may testify thereto." Fed. R. Civ. Proc. 702. "Scientific" implies a grounding in the methods and procedures of science. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786, 589-590 (1993). The word "knowledge" connotes more than subjective belief or unsupported speculation. *Id.* Here, Monsanto's experts' inference of a lack of association between exposure to GBFs and NHL

---

[1] *See* Tobacco and the Health of the Nation at http://legacy.library.ucsf.edu/cgi/getdoc?tid=dxb34f00&fmt=pdf&ref=results and Smoking and Health Proposal at http://legacy.library.ucsf.edu/tid/rgy93f00, 690010954 ("Doubt is our product since it is the best means of competing with the 'body of facts' that exists in the mind of the general public. It is also the means of establishing a controversy…").

2
PLAINTIFFS' MOTION IN *LIMINE* NO. 1 TO EXCLUDE ANY EVIDENCE OR REFERENCE THAT COMPARES THE AMOUNT OF ROUNDUP USE TO NHL INCIDENCE OVER TIME TO DISPROVE CAUSATION

based on ecological data is sheer speculation and, thus, inadmissible. As the Reference Manual states, "ecological studies of exposure and disease are 'far from conclusive' because of lack of data on confounding variables as well as…possible aggregation bias… such studies rarely provide definitive causal answers" at 266, fn. 130, 561 (internal quotations omitted). Even "less reliable" are specific types of ecological data such as "secular-trend studies (also known as time-line studies)" which "compare disease rates over time and focus on disease rates before and after a point in time when some even of interest took place." Reference Manual at 562.

For example, Monsanto's expert, Dr. William Fleming, merely compared the "estimated agricultural use for glyphosate" up to the year 2000 with the NHL incidence rate by U.S. county between 2008 and 2012. *See* First Fleming Rept. at 8. Dr. Fleming did not consider the demographic differences between the geographical regions which impact the rate of NHL, the effect on NHL rates (decline) precipitated by management of the AIDS crisis, and failed to control for any other variable in his visual comparison of two maps. *See* Fleming Depo. at 90:10-12 ("I didn't control for variables.").[2] Moreover, without any reliable basis, Dr. Fleming assumed that the latency for NHL is between 8 and 12 years when generating his two maps demonstrating Roundup use (up to 2000) and NHL incidence (2008-2012), respectively. *See id*. at 173:9-17 (*stating* that the basis for his latency opinion was that it was "not unreasonable."). Only speculation can tie such an analysis to an opinion regarding causation. In any event, such a conclusion is scientifically unsupportable since it reflects a correlation, not a basis for deriving any *causal* conclusions. *Peters v. AstraZeneca LP*, 224 F. App'x 503, 507 (7th Cir. 2007) (*citing* with approval case from Fifth Circuit which upheld "exclusion of expert causation testimony based solely upon studies showing a mere correlation between defendant's product and

---

[2] The very charts relied upon by Dr. Fleming in his report demonstrate the dip in NHL incidence following successful treatment of the AIDS virus. *See* First Fleming Rept. at 4. However, Dr. Fleming utterly failed to consider this variable in his "analysis."

3
PLAINTIFFS' MOTION IN *LIMINE* NO. 1 TO EXCLUDE ANY EVIDENCE OR REFERENCE THAT COMPARES THE AMOUNT OF ROUNDUP USE TO NHL INCIDENCE OVER TIME TO DISPROVE CAUSATION

plaintiff's injury."); Reference Manual at 561-62 (discussing the use of ecological studies as a starting point for further research, and not a basis for deriving conclusions regarding causation).

Because this "evidence" does not and cannot prove, and is not even probative of, non-causation (or causation for that matter), the evidence is irrelevant. It is akin to arguing that, during the period in which NHL incidence declined, Starbucks consumption increased; ergo Starbucks consumption decreases risk of NHL. It is nothing more than correlation—and there are correlations everywhere. Such evidence and testimony should not be given to the jury which may be inclined to indulge this logical fallacy in the presence of "expert" testimony. This is precisely the type of "evidence" contemplated by the rules as appropriate for exclusion. The probative value of this "evidence" is small given that no scientifically reliable conclusion can be drawn from it; however, it could hold great weight with the jury. Accordingly, Plaintiffs respectfully request that the Court enter an order barring Monsanto from presenting any argument, testimony, or evidence that national NHL rates decreased with greater use of GBFs or that NHL rates were increasing at a time when use of GBFs was not as prominent.

**III.   Conclusion.**

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order granting this motion *in limine* and excluding any evidence or reference that compares the amount of Roundup use over time to NHL incidence to disprove causation.

Dated: 1/30/2019                                    Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com

5

PLAINTIFFS' MOTION IN *LIMINE* NO. 1 TO EXCLUDE ANY EVIDENCE OR REFERENCE THAT COMPARES THE AMOUNT OF ROUNDUP USE TO NHL INCIDENCE OVER TIME TO DISPROVE CAUSATION