**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE ANY EVIDENCE OR REFERENCE THAT COMPARES THE AMOUNT OF ROUNDUP USE TO NHL INCIDENCE OVER TIME TO DISPROVE CAUSATION** |

## INTRODUCTION

Plaintiffs provide no valid basis for excluding ecological data demonstrating that, notwithstanding the substantial increase in the use of glyphosate in the 1990s, the incidence of NHL in the U.S. population has shown no measurable increase. Ecological data "focuses on a comparison of groups, rather than the individuals as is the case in other types of epidemiological studies." *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1098 (D. Colo. 2006). Here, two of Defendant's oncology experts, Dr. Alexandra Levine and Dr. William Fleming, have reviewed ecological data tracking incidence rates of NHL and glyphosate use, and based on that data, reached a reasoned scientific judgment that if the use of glyphosate contributed to the development of NHL, the incidence of NHL would have increased as glyphosate use became increasingly common. Plaintiffs' motion cites no legal authority supporting exclusion of these conclusions and the underlying data, which is unsurprising—ecological data is generally accepted in the scientific community and routinely admitted in civil jury trials. Plaintiffs' criticism of this data—and the experts' reliance on it—may be a potential basis for cross-examination, but is not a justification for excluding evidence that is both relevant and probative on the question of whether Roundup caused Plaintiff's NHL. Plaintiffs' motion should be denied.

## ARGUMENT

Two of Defendant's oncology experts, Dr. Alexandra Levine and Dr. William Fleming, relied on ecological data about NHL and glyphosate use in reaching their ultimate opinions in this case. Dr. Levine compared the incidence of NHL to the amount of glyphosate applied in the United States. Expert Report of Dr. Alexandra Levine at 12 (Ex. 1). During a time period in which "Roundup use increased substantially," Dr. Levine observed that NHL incidence rose only "modestly" and eventually "plateaued" by 2004. *Id.* Based on that data, as well as on her comprehensive review of Mr. Hardeman's medical records and the literature regarding both glyphosate and acknowledged risk factors for NHL, Dr. Levine concluded that Mr. Hardeman's NHL could not be attributed to his use of Roundup. *Id.* at 9-20. Commenting on the ecological data in particular, Dr. Levine reasoned that "[i]f glyphosate were the cause of NHL . . . the incidence of these lymphomas would have increased statistically between 2004 and the present time. This is not the case." *Id.* at 12. Dr. Fleming took a similar tack. He reviewed a wide array

1

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

of information in reaching his conclusions. Expert Report of Dr. William at 2-3, 5-6, 9-11 (Ex. 2). But as to the ecological data, he found that the historical rate of NHL incidence is "the opposite of the anticipated result if total glyphosate use was associated with an increased risk of developing NHL." *Id.* at 7.

Courts routinely permit such reliance on ecological studies. In *Cook v. Rockwell Intern. Corp.*, the court rejected an argument "that ecological studies are inherently unreliable and therefore inadmissible," and found to the contrary that such studies "are one of several methods of epidemiological study that are well-recognized and accepted in the scientific community." 580 F. Supp. 2d 1071, 1097-98 (D. Colo. 2006). Any "relative weakness as to causation goes to the weight to be accorded ecological studies . . . and does not render these studies or opinions based on them *per se* inadmissible as a matter of science or law." *Id.* In the MDL context, courts have likewise declined invitations to exclude expert opinions based on ecological data. *See In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712, 726, 743 (N.D. Ohio 2011) (ecologic studies are one of many "recognized and accepted scientific methodologies[] used for assessing the possible side-effects and hazards associated with particular drugs and the causes of disease"); *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507, 2007 WL 5521248, at *2 (E.D. Ark. Nov. 9, 2007) (denying motion to exclude expert whose opinion relied on ecological and other epidemiological data). In fact, other courts have observed that ecological data can be particularly useful for ruling out an alleged causal association, which is what in line with what Dr. Levine and Dr. Fleming did here. *See Krenik v. Sec'y of Dep't of Health & Human Servs.*, No. 03-2755V, 2014 WL 4387219, at *11 (Fed. Cl. July 25, 2014) (finding that "[a]n ecological study is helpful if it rules out a causal connection"); *Dwyer ex rel. Dwyer v. Sec'y of Health & Human Servs.*, No. 03-1202V, 2010 WL 892250, at *66 (Fed. Cl. Mar. 12, 2010) (same) (finding that "[a]n ecological study can rule out a causal connection in the aggregate").

Plaintiffs' motion does not cite any contrary authority—they identify no cases about ecological data, or even the admissibility of expert testimony. Beyond cases setting forth general standards applicable to motions *in limine* and *Daubert*, Plaintiffs cite just one case—*Peters v. AstraZeneca LP*, 224 F. Appx. 503 (7th Cir. 2007)—which is inapposite in several respects. In *Peters*, the Seventh Circuit evaluated whether summary judgment was properly granted against a plaintiff whose sole evidence of

causation was that "a small percentage (.1% to .2%) of users of prescription Prilosec claimed to have experienced taste loss." *Id.* at 507. Here, neither Defendant nor Drs. Levine and Fleming are relying solely on a low incidence rate of complaints. Instead, the experts relied on ecological data, along with multiple other sources of relevant information, in concluding that Roundup was not a substantial factor in Mr. Hardeman's NHL. Plaintiffs identify no authority suggesting that this use of ecological data is flawed.[1]

On the contrary, Plaintiffs' own causation expert, Dr. Dennis Weisenburger, has relied on similar data in past cases. *See Ruff v. Ensign-Bickford Industries, Inc.*, 168 F. Supp. 2d 1271, 1281-82 (D. Utah 2001). In *Ruff*, Dr. Weisenburger concluded that nitrates caused the plaintiffs' NHL, and he conducted an ecological study purportedly "show[ing] that counties in Nebraska subject to high fertilizer (nitrate) usage . . . had a high incidence of NHL." *Id.* at 1282. The defense and its expert attacked Dr. Weisenburger's reliance on the study, arguing that "ecological studies are correlational studies and generally provide relatively weak evidence for establishing a conclusive cause and effect relationship." *See id.* The court held that the criticisms "may be developed on cross-examination" but did not warrant excluding Dr. Weisenburger's proffered testimony. *Id.* 1283. Even if ecological studies cannot "establish[] a conclusive cause and effect relationship," the court wrote, "they are valuable for generating strong causation hypotheses linking a particular substance to an illness." *Id.* at 1282, 1275 n.3. Further, the court noted that the findings of the ecological study were "confirmed five years later in a case-control study funded by the National Cancer Institute." *Id.* at 1282.

The same approach is warranted here. Just as in *Ruff*, Plaintiffs' criticisms of ecological data go to the weight and not admissibility of Dr. Levine's and Dr. Fleming's opinions, and—as with all of the

---

[1] Importantly, Plaintiffs do not contest the validity of the data on which Dr. Levine's and Dr. Fleming's opinions are based, nor could they given that the overall NHL incidence data comes from the National Cancer Institute's Surveillance, Epidemiology, and End Results Program ("SEER") data, on which several Plaintiffs' experts rely. *See* Expert Report of Dr. Chadi Nabhan (*Hardeman*) at 5 (Ex. 3); Expert Report of Dr. Beate Ritz at 21 (Ex. 4). Plaintiffs' experts also have relied on publicly available data about the amount of glyphosate used or applied in the United States, which is the other piece of ecological data that matters for Dr. Levine's and Dr. Fleming's analyses. *See, e.g.*, Ritz Report at 21-22 (Ex. 4).

scientific studies and data in this case—can be raised on cross-examination. 168 F. Supp. 2d at 1281-83; *see In re Heparin*, 803 F. Supp. 2d at 753; *Cook*, 580 F. Supp. 2d at 1103. Dr. Levine's and Dr. Fleming's opinions that Roundup does not cause NHL are properly grounded in ecological data. *See Krenik*, 2014 WL 4387219, at *11 (ecological studies are "helpful" to "rule[] out a causal connection"); *Dwyer*, 2010 WL 892250, at *66 (same).

## **CONCLUSION**

The Court should allow Defendant's experts to share with the jury that NHL incidence has remained constant in the face of a dramatic increase in Roundup application in the United States. Plaintiffs' motion to exclude ecological data should be denied.

DATED: January 30, 2019

                                        Respectfully submitted,

                                        /s/ *Brian L. Stekloff*

                                        Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005

4

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

5

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.

/s/ Brian L. Stekloff