# EXHIBIT 7

## Page 1

Pages 1 - 96

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
IN RE ROUNDUP PRODUCTS        )
LIABILITY LITIGATION.         )
                              )   NO. 16-md-02741 VC
                              )
_____)
EMANUEL RICHARD GIGLIO,       )
                              )
        Plaintiff,            )
                              )
   VS.                        )   NO. C 16-05658 VC
                              )
MONSANTO COMPANY,             )
                              )
        Defendant.            )
_____)
```

San Francisco, California
Wednesday, December 5, 2018

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiffs:
    ANDRUS WAGSTAFF PC
    7171 W. Alaska Drive
    Lakewood, Colorado 80226
  BY: AIMEE H. WAGSTAFF, ATTORNEY AT LAW
     DAVID J. WOOL, ATTORNEY AT LAW

    ANDRUS WAGSTAFF PC
    6315 Ascot Drive
    Oakland, California 94611
  BY: KATHRYN M. FORGIE, ATTORNEY AT LAW

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY: Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
        Official Reporter

## Page 2

APPEARANCES: (CONTINUED)

For Plaintiffs:
    WEITZ & LUXENBERG PC
    700 Broadway
    New York, New York 10003
  BY: ROBIN L. GREENWALD, ATTORNEY AT LAW

    THE MILLER FIRM LLC
    108 Railroad Avenue
    Orange, Virginia 22960
  BY: MICHAEL J. MILLER, ATTORNEY AT LAW
     BRIAN BRAKE, ATTORNEY AT LAW
     NANCY G. MILLER, ATTORNEY AT LAW

    LAW OFFICES OF TESFAYE W. TSADIK
    The California Building
    1736 Franklin Street - 10th Floor
    Oakland, California 94612
  BY: TESFAYE W. TSADIK, ATTORNEY AT LAW

    AUDET & PARTNERS LLP
    711 Van Ness Avenue - Suite 500
    San Francisco, California 94102
  BY: MARK E. BURTON, ATTORNEY AT LAW

    LUNDY, LUNDY, SOILEAU & SOUTH LLP
    501 Broad Street
    Lake Charles, Louisiana 70601
  BY: RUDIE R. SOILEAU, JR., ATTORNEY AT LAW

    BAUM HEDLUND ARISTEI GOLDMAN PC
    12100 Wilshire Blvd. - Suite 950
    Los Angeles, California 90025
  BY: ROBERT BRENT WISNER, ATTORNEY AT LAW

For Plaintiff Emanuel Richard Giglio:
    GOMEZ TRIAL ATTORNEYS
    655 West Broadway - Suite 1700
    San Diego, California 92101
  BY: JOHN H. GOMEZ, ATTORNEY AT LAW
     KRISTEN K. BARTON, ATTORNEY AT LAW

## Page 3

APPEARANCES: (CONTINUED)

For Defendant:
    HOLLINGSWORTH LLP
    1350 I Street NW
    Washington, D.C. 20005
  BY: KIRBY T. GRIFFIS, ATTORNEY AT LAW
     ERIC G. LASKER, ATTORNEY AT LAW

    ARNOLD & PORTER KAYE SCHOLER LLP
    777 S. Figueroa Street - 44th Floor
    Los Angeles, California 90017
  BY: PAMELA YATES, ATTORNEY AT LAW

    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, New York 10019
  BY: ANDREW K. SOLOW, ATTORNEY AT LAW

    WILKINSON WALSH ESKOVITZ LLP
    2001 M Street, NW - 10th Floor
    Washington, D.C. 20036
  BY: BRIAN L. STEKLOFF, ATTORNEY AT LAW

## Page 4

**Wednesday - December 5, 2018**              1:36 p.m.

**P R O C E E D I N G S**

---o0o---

THE CLERK: Calling Case Numbers 16-md-2741, In Re Roundup Products Liability Litigation and 16-cv-5658, Giglio versus Monsanto Company.

Counsel, please step forward and state your appearances for the record.

MS. WAGSTAFF: Good afternoon, Your Honor. Aimee Wagstaff on behalf of MDL plaintiffs and plaintiff Giglio.

THE COURT: Good afternoon.

MS. GREENWALD: Good afternoon, Your Honor. Robin Greenwald for the plaintiffs.

MR. MILLER: Good afternoon, Your Honor. Michael Miller on behalf of the plaintiffs.

THE COURT: Mr. Miller.

If somebody wants to introduce everyone, they're perfectly welcome to.

MR. BRAKE: Good afternoon. Brian Brake for the plaintiffs. Pleasure to be here.

MR. WOOL: Good afternoon, Your Honor. David Wool on behalf of plaintiffs and Mr. Giglio.

THE COURT: Hello.

MR. GOMEZ: Good afternoon, Your Honor. John Gomez

25

1  operating under the assumption that no general causation
2  testimony would be given anew, and that's what we decided again
3  at the last hearing.
4      So I think that what Ms. Yates is trying to do is
5  circumvent what we've been doing for the last couple years, and
6  she's trying to get in new general causation testimony because
7  she doesn't like the testimony that her experts currently are
8  giving.
9      MS. YATES:  No, Your Honor, that's actually simply not
10 the case.
11     THE COURT:  Yeah, I doubt that's the case.  But can I
12 get a list?
13     MS. YATES:  Yes, of course.
14     THE COURT:  So Levine, Arbor, Grossbard?
15     MS. YATES:  Steidl, S-T-E-I-D-L; and Al-Khatib, A-L
16 hyphen K-H-A-T-I-B.  Those are Hardeman.
17     THE COURT:  So those are the only experts you've
18 designated for Hardeman?
19     MS. YATES:  And I think there's a Dr. Sullivan as
20 well.
21     MS. WAGSTAFF:  Those are the only case-specific.  They
22 designated about six or seven other experts.
23     THE COURT:  So you're saying you didn't designate
24 Mucci and like the other epidemiologists who you put up at
25 Phase I?

26

1      MS. YATES:  Yes, Your Honor.  These are case specific,
2  yes.
3      THE COURT:  Those are the case-specific ones.
4      MS. YATES:  Yes.
5      THE COURT:  I was asking who you designated, all the
6  witnesses.
7      MS. YATES:  All of them.  I'm sorry.  So I'm going
8  with depositions and I don't have our designations.  But, yes,
9  we designated Dr. Mucci and we may or may not call him.
10     MS. WAGSTAFF:  So, Your Honor --
11     THE COURT:  Well, I think you better because I don't
12 think there's any other way you can get in general causation
13 testimony.
14     MS. YATES:  Well, let me slow this down a little bit,
15 Your Honor, because I feel as if we're talking a little bit in
16 a vacuum here.
17     I would like you to see the reports because I think it's
18 been a little bit out of context in terms of what they have in
19 terms of general causation, and I'm very concerned that we're
20 getting pushed into this quagmire that when you see the
21 reports, we don't need to go there.
22     THE COURT:  Okay.
23     MS. YATES:  It's not starting over.  It's not anew.
24 It's the foundation for their case-specific methodology, which
25 is based on a differential diagnosis.  How do you rule things

27

1  in?  How do you rule things out?
2      And I think if we take a step back, I think you'll see
3  that we take very seriously what went on and we take those
4  rulings seriously.  We fully understand the Court's opinion as
5  to what our experts will say at a *Daubert* hearing.  And then I
6  think you will see -- once you see the reports, you'll
7  understand what our goals are with them being case specific at
8  trial.
9      THE COURT:  Well, that statement is fine for now, but
10 the idea that you -- I'm skeptical of the idea that you will be
11 able to do much in the way of general causation without
12 bringing to trial experts who testify on general causation.
13     If you don't bring any of the experts you used at
14 Phase I on general causation, then I think you are going to
15 have -- if you are operating under the assumption that you
16 could pull that off, I'm telling you now that I think you're
17 going to have a problem because it would seem, then, that you
18 would be planning to bring in through other witnesses' perhaps,
19 you know, testimony that seeks to rebut what Dr. Weisenburger
20 testifies to on the general causation front.
21     MS. YATES:  Your Honor, if I'm bringing in an expert
22 to really get into the general science, I understand what the
23 Court is saying.  Why can't I put on a defense that is just one
24 case-specific expert with the foundation for that testimony?
25     THE COURT:  Well, you could, but -- you certainly

28

1  could, but if it's -- as long as it is not using the
2  case-specific experts who were not put to the test at
3  Phase I to get in testimony that is similar to the testimony we
4  considered at Phase I.
5      MS. YATES:  I understand, but at the same time the
6  ruling went against us in Phase I and clearly if I call someone
7  at trial, they're not going to abide by your Phase I ruling
8  because they are going to say "no general cause" at trial.
9      THE COURT:  I don't understand what you're saying.
10     MR. LASKER:  Your Honor, I just want to make one point
11 because I'm a bit confused.
12     With a differential diagnosis, let's posit it this way,
13 there are numerous risk factors.  Okay?  And let's say you're
14 selecting among risk factors and saying which is more likely,
15 and let's say that there is one risk factor that has an arch
16 ratio of five.  A specific causation expert, for example, on
17 the defense would have to discuss what they understand about
18 the Actel study and the epidemiology with respect to glyphosate
19 in order to explain how they make a differential.
20     So to that extent, it's impossible, frankly, to be able to
21 testify to a differential diagnosis without providing that type
22 of testimony, and that's the issue I think that's confusing
23 things.
24     THE COURT:  Right.  And I was assuming that it would
25 be impossible to have a strict delineation between the concept

29

1  of general causation and the concept of specific causation.
2       I suppose you could just call somebody, as they apparently
3  plan to do, to testify only about general causation --
4  right? -- and just not get into Hardeman, but I understand the
5  concept that when you're testifying about specific causation,
6  you know, concepts from general causation are going to bleed
7  into it; right?
8       But if -- and this is not something we're going to resolve
9  now, but it's just important for me that you know the concerns
10 that I have about this discussion.  If you're going to put up a
11 specific causation expert and they're going to testify about
12 the different risk factors and they're going to get to the risk
13 factor of glyphosate and as part of explaining why they don't
14 think glyphosate caused Mr. Hardeman's cancer, they're going to
15 do a repeat of everything that Dr. Mucci said, that's not
16 appropriate.
17      MR. LASKER:  Right.
18      THE COURT:  Because you should have had that person
19 testify to that at the Phase I proceeding.
20      MR. LASKER:  Right.  I don't think -- I think that may
21 be where the confusion is.  I don't think we have --
22      THE COURT:  Or even half of what Dr. Mucci said.
23      MR. LASKER:  I'm sorry.  I misspoke.
24      THE COURT:  If they spent half the time saying what
25 Dr. Mucci said.

30

1       MR. LASKER:  No, I understand that.  I don't think we
2  have an expert who, for instance, is going to be talking about
3  all the issues of epidemiology or an expert talking about all
4  the issues of avenue, all that stuff.  That's not the issue
5  with our experts.
6       MS. YATES:  And apparently I'm just not being very
7  clear.
8       THE COURT:  You're not going to bring somebody to
9  testify about -- what was it?  The vault?  Where one of your
10 experts went to, like --
11      MR. LASKER:  Yes.  Right.
12      THE COURT:  What was that room called?  It wasn't the
13 vault.
14      MR. LASKER:  It was a glyphosate --
15      MS. WAGSTAFF:  The glyphosate reading room.
16      MR. LASKER:  The reading room in Europe, yes.
17 Dr. Steidl is not going to --
18      THE COURT:  That's like up there with the
19 Eiffel Tower.
20      MS. YATES:  Yeah.  No, Your Honor.  No, Your Honor.
21      And I do think that --
22      THE COURT:  Glyphosate reading room.  I forgot -- I
23 went to Spain in the spring.  I forgot to go to the glyphosate
24 reading room.
25      MR. LASKER:  You missed that one, Your Honor.

31

1       THE COURT:  Sorry.
2       MS. YATES:  That's why I think the reports will make
3  clear what we're doing.  I am not going to have my
4  case-specific expert adopt, repeat, say what Dr. Mucci said.
5  If I feel I need that part of the science, Your Honor, in front
6  of a jury, we will call Dr. Mucci.  There won't be.  And I
7  think the reports will clear this up.  It's part of their
8  differential diagnosis, their methodology.
9       THE COURT:  Okay.  Well, I think, nonetheless, this
10 discussion was worth having so that it sort of lays a marker
11 for what I assume will be future discussions.
12      MS. YATES:  Would you like me to continue down the
13 list of experts, Your Honor?
14      THE COURT:  I mean, I don't know.  You listed to me
15 your case-specific experts.
16      MS. YATES:  Yes.
17      THE COURT:  You designated some of the general
18 causation experts.
19      MS. YATES:  Yes, many of whom you'll be familiar with,
20 Your Honor.
21      THE COURT:  That's probably all I need to know at this
22 point.
23      MS. YATES:  Okay.  Okay.
24      THE COURT:  Okay.  But, anyway, so there will be, you
25 know --

32

1       MS. WAGSTAFF:  Your Honor, before we move past this
2  topic, could we have a little bit more guidance on the live
3  testimony that you have on February 4th, 6th, and 11th?
4       THE COURT:  Uh-huh.
5       MS. WAGSTAFF:  You know, we put in our papers that
6  we're not planning on bringing anyone.  Between now and then,
7  they are going to be -- Monsanto will be deposing every single
8  one of these experts.  They've deposed several of them before.
9       So if we could have a deadline of when they declare
10 whether or not we need to bring them.  Scheduling the experts
11 is not just like a phone call.  It takes a lot of coordination,
12 and so we'd like some flexibility on if we can bring them on
13 the 4th, the 6th, or the 11th; or we'd like some guidelines how
14 long you're going to let each one -- Monsanto cross-examine
15 each one, or is it going to be similar format as the last time.
16 Or whatever Your Honor is thinking, I'd like some guidance.
17      THE COURT:  Well, I mean, I guess I would be inclined
18 to use an approach somewhat similar to the approach we used
19 last time where we give each side a certain number of hours.  I
20 guess it will be -- you know, we will -- it will be -- you
21 know, it will be full days, I assume, on those three days and
22 each side will have a certain number of hours, and you can kind
23 of decide how to use those hours.
24      How many hours should we assume in a court day, Kristen,
25 for these purposes?  Like, six?