1  **ANDRUS WAGSTAFF, PC**
   Aimee H. Wagstaff (SBN 278480)
2  7171 W. Alaska Drive
3  Lakewood, CO  80226
   Tel: (303) 376-6360
4  Fax: (303) 376-6361
   Aimee.wagstaff@andruswagstaff.com
5
6  **WEITZ & LUXENBERG, P.C.**
   Robin L. Greenwald
7  700 Broadway
   New York, NY 10003
8  Tel: (212) 558-5802
9  Fax:  (646) 293-4921
   rgreenwald@weitzlux.com
10
11 **THE MILLER FIRM, LLC**
   Michael J. Miller (*pro hac vice*)
12 Brian K. Brake (*pro hac vice*)
   108 Railroad Ave.
13 Orange, VA  22960
   Telephone: (540) 672-4224
14 Facsimile: (540) 672-3055
15 mmiller@millerfirmllc.com
   bbrake@millerfirmllc.com
16
17 *Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE** |
| *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC; | |
| *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC; | |
| *Gebeyehou v. Monsanto Co., et al.,* 3:16-cv-5813-VC | |

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on February 13, 2019 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiffs will present their Motion in *Limine* to Exclude any Evidence and Testimony Regarding the Efficacy and Benefits of Glyphosate. A supporting memorandum is filed herewith.

Dated: 1/30/2019                              Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

2

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

**MEMORANDUM OF POINTS AND AUTHORITIES**

On November 27, 2018, Monsanto designated Dr. Bradley D. Hanson and Dr. Kassim Al-Khatib[1] to testify about Glyphosate efficacy. Testimony regarding glyphosate's efficacy or benefits to agriculture, however, is wholly irrelevant to the issues of this case and has no tendency to make a fact more or less probable than it would be without the evidence. FRE 401. Further, any probative value of evidence relating to the benefits of glyphosate is substantially outweighed by the probability that its admission will necessitate undue consumption of time, confusion, and unnecessarily mislead the jury. FRE 403. Accordingly, all evidence and testimony on glyphosate's efficacy or benefits and/or impact on the economy, food and crop production, environment, natural resources, public, and/or protection of human and animal health must be excluded.

**I.   ANY EVIDENCE OR TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE SHOULD BE EXCLUDED FROM THE TRIAL.**

Only relevant evidence is admissible. Relevant evidence is evidence that has "any tendency to make a fact more or less probative that it would be without the evidence and the fact is of consequence in determining the action." FRE 401. At trial, Plaintiffs intend to assert causes of action specifically related to Roundup causing cancer and Monsanto's failure to warn of these risks. The jury would not benefit from testimony regarding whether glyphosate is effective and beneficial to the environment as that is completely irrelevant to the material issues in this case.

**A.   The Consumer Expectation Test[2] is Appropriate In This Case to Prove Strict Product Liability Design Defect.**

Monsanto will likely argue that the benefit evidence is relevant due to Plaintiffs' design defect claims, but such evidence is not relevant under the consumer expectation test. California courts have defined product defects in three alternative and independent categories: manufacturing defect, design defects, and warning defects. *Anderson v. Owens-Corning*

---

[1] Dr. Al-Khatib's report is entitled "Glyphosate Uses and Its Contribution to Agriculture, Environment, Natural Resources and Protection of Human and Animal Health." (*See* Ex. 1.)  Dr. Hanson's report also touts the benefits of glyphosate saying that it is "a one in a century herbicide." (*See* Ex. 2, p. 37.)
[2] Judge Bolanos granted an instruction in the *Johnson* case incorporating the Consumer expectation test. (*See* Ex. 3.)

1

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

*Fiberglas Corp.,* (1991) 53 Cal.3d 987, 995; *Rivas v. Safety-Kleen Corp.* (2002) 98 Cal.App.4th 218, 229. Within the design defect category, a product may be proven defective under two alternative tests: consumer expectations and risk-benefit. *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 432; *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559, 1569 (risk-benefit weighing is not a defense to consumer expectation test); *Bacisco v. Beech Aircraft Corp.* (1984) 159 Cal.App.3d 1101, 1107.

The consumer expectations test applies when "[t]he purposes, behaviors, and dangers of [the] products are commonly understood by those who ordinarily use them." *Saller v. Crown Cork and Seal Co., Inc.*, (2010) 187 Cal.App. 4th 1220, 1232. The "consumer expectation test" recognizes that "implicit in a product's presence on the market is a representation that it is fit to do safely the job for which it was intended." *Johnson v. United States Steel Corp.,* (2015) 240 Cal.App.4th 22, 32 (internal citations omitted). Succinctly put, "[w]here the product is one of 'common experience,' encountered generally in everyday life, the jury can rely on its own expectations of safety in applying the test." *Id.* at 32.

Courts have expressly rejected that the consumer expectation test is improper whenever the claim involves a complex product or technical questions of causation. "[T]he inherent complexity of the product itself is not controlling on the issue of whether the consumer expectations test applies; a complex product 'may perform so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers.'" *Saller*, 187 Cal.App.4th at 1232; *Soule v. General Motors Corp.*, 8 Cal.4th 548, 569. "The critical question is whether the 'circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers.' " *McCabe*, *supra*, 100 Cal.App.4th at p. 1122; *Soule*, *supra*, 8 Cal.4th at pp. 568–69.

Here, Plaintiffs' defect theory does not require an understanding of technical and mechanical detail regarding the manufacturing process. Instead, the alleged design defect arises from exposure to carcinogens during the routine and relatively straightforward use and

maintenance of Defendant's products. In this manner, this case is nearly identical to *Arnold v. Dow Chemical Co.,* (2001) 91 Cal.App.4th 698, 110 Cal.Rptr.2d 722, where the court held that the consumer expectations test was properly applied in a design defect claim brought against a manufacturer of pesticides by those injured from exposure to the product. *Id.* at p. 727, 110 Cal.Rptr.2d 722. In holding both the manufacturer of the finished product and the supplier of the chemical component allegedly causing the harmful effects to be potentially liable, the court noted that a pesticide, like asbestos insulation, is "within the ordinary experience and understanding of a consumer" and a consumer may "reasonably believe that pesticides are designed to eliminate pests within homes occupied by humans, without causing significant harm to the humans." *Id.* at p. 717, 110 Cal.Rptr.2d 722; *see also Sparks v. Owens-Illinois, Inc.*, (1995) 32 Cal. App. 4th 461 (holding that consumer expectations test applies in asbestos-related injury cases); *Saller v. Crown Cork & Seal Co. Inc.*, (2010) 187 Cal. App. 4th 1220 (same); *West v. Johnson & Johnson Prods., Inc.* (1985) 174 Cal. App. 3d 831 (*applying* consumer expectations test to case claiming tampons caused toxic shock syndrome).

The fact that lay persons require expert testimony to understand how exposure to the glyphosate-containing products causes cancer has to do with causation, not design defect. As the court explained in *Saller*:

> The fact that expert testimony was required to establish legal causation for plaintiffs' injuries does not mean than an ordinary user of the product would be unable to form assumptions about the safety of the products. The consumer expectations test does not require inquiry into how exposure to a particular level of asbestos may lead to the development of cancer.

*Id*. at 1235.

Plaintiffs were ordinary consumers of Monsanto's glyphosate-containing products. They used these products for their intended purpose:  as an herbicide to kill common weeds. The circumstances under which they used Roundup is no different than any of the other consumers who purchase, mix, and/or spray Roundup at home or in the workplace.  Further, the

3

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

circumstances of the alleged product failure are also straightforward as people using herbicides for their intended purpose do not expect that routine use will cause cancer. Ordinary consumers do not require technical expertise to form an opinion regarding whether the product's design performed below the legitimate and commonly accepted minimum safety assumptions. *See Saller*, (2010) 187 Cal.App.4th at 1234 (finding that it was a reasonable inference from the evidence that the emission of toxins capable of causing a fatal disease after a long latency period was a product failure beyond the legitimate, commonly accepted safety assumptions of its ordinary consumers). Accordingly, the consumer expectations test may be properly applied in this case.

**B. Plaintiffs' Election To Submit Their Design Defect Claims to the Jury on The Consumer Expectation Test Requires Preclusion of Evidence and Testimony Related to the Benefits of the Product's Design.**

In cases where the consumer expectation applies, "evidence of the relative risks and benefits of the design is irrelevant and inadmissible." *Sparks v. Owens-Illinois, Inc*., (1995) 32 Cal.App.4th 461, 473. A manufacturer simply cannot "defend a claim that a product's design failed to perform as safely as its ordinary consumers would expect by presenting expert evidence of the design's relative risks and benefits." *Soule*, *supra*, 8 Cal. 4th at 566, 34 Cal. Rptr. 2d 607. Thus, a trial court should properly exclude a defendant's risk-benefit evidence following a determination that the consumer expectations applies. *Romine v. Johnson Controls, Inc.*, (2014) 224 Cal. App. 4th 990, 1004-05; *Mansur v. Ford Motor Co*., (2011) 197 Cal. App. 4th 1365, 1375, (*finding* that "expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect" under the consumer expectations test). Here, Monsanto may not defend the claims that its products' design failed to perform as safely as ordinary consumers would expect by presenting expert evidence of the benefits of glyphosate.

**C. Whether Glyphosate is Effective or Beneficial Is Irrelevant to Plaintiffs' Failure To Warn Claims.**

"Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products." *Johnson, supra,* 43 Cal.4th at p. 64, 74 Cal.Rptr.3d 108, 179 P.3d 905;

4

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

*Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 181, 370 P.3d 1022, 1030 (2016). California law recognizes separate failure to warn claims under strict liability and negligence theories. A product seller will be *strictly liable* for failure to warn if a warning was feasible and the absence of a warning caused the plaintiff's injury. *Blackwell v. Phelps Dodge Corp.,* (1984) 157 Cal.App.3d 372, 377, 203 Cal.Rptr. 706; *see Anderson supra,* at p. 1002. Unlike claims for negligent failure to warn, reasonableness of the seller's failure to warn is immaterial in the strict liability context. *Anderson,* at pp. 1002–1003, 281 Cal.Rptr. 528, 810 P.2d 549. The focus of both theories of liability is on the manufacturer's knowledge of the dangerous propensities of its product and whether the manufacturer adequately warned of the known risk. The efficacy of a product "is not relevant to a failure to warn claim." *LaBarre v. Bristol-Myers Squibb Co.*, 544 Fed. Appx 120, 125 (3d Cir. 2013); *Solomon v. Bristol-Myers Squibb, Co.*, 916 F. Supp. 2d 556, 564 (D. N.J. 2013) (*finding* that evidence regarding efficacy is not relevant to the adequacy of warnings with respect to Plaintiff's health condition.); *Needham v. White Labs., Inc.*, 639 F.2d 394, 402 (7th Cir. 1981) (evidence of efficacy or inefficacy of drug is irrelevant because "the dispositive issue . . . is whether [defendant] should be held liable for its failure to warn of the risk of cancer").

### D. **The Probative Value of Allowing Evidence of the Benefits of Glyphosate is Substantially Outweighed by the Danger of Undue Prejudice and Jury Confusion.**

The fundamental issues in these cases are not whether the growth of weeds are detrimental to society or whether glyphosate is an effective herbicide. Even if it can be shown that evidence regarding glyphosate's benefits may somehow be relevant, any probative value of such evidence is far outweighed by the unfair prejudice, confusion, and delay that would result from allowing its admission into evidence. Fed. R. Evid. 403. Opening the door to issues such as whether glyphosate is good for the environment opens the door to host of other issues and creates a trial within a trial. Monsanto is expected to elicit considerable testimony from Dr. Al-Khatib on efficacy. Although Dr. Al-Khatib's testimony will not aid the jury in its determination in any way, Plaintiffs would need to sufficiently cross-examine Dr. Al-Khatib and potentially call a rebuttal expert to minimize the prejudicial effect of his testimony.

5

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order granting this motion *in limine*.

6

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE

Dated: 1/30/2019 　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Aimee Wagstaff
　　　　　　　　　　　　　　　　　　　　　Aimee H. Wagstaff (SBN 278480)
　　　　　　　　　　　　　　　　　　　　　aimee.wagstaff@andruswagstaff.com
　　　　　　　　　　　　　　　　　　　　　Andrus Wagstaff, P.C.
　　　　　　　　　　　　　　　　　　　　　7171 W. Alaska Drive
　　　　　　　　　　　　　　　　　　　　　Lakewood, CO  80226
　　　　　　　　　　　　　　　　　　　　　Tel: (303) 376-6360

　　　　　　　　　　　　　　　　　　　　　/s/ Robin Greenwald
　　　　　　　　　　　　　　　　　　　　　Robin L. Greenwald
　　　　　　　　　　　　　　　　　　　　　rgreenwald@weitzlux.com
　　　　　　　　　　　　　　　　　　　　　Weitz & Luxenberg
　　　　　　　　　　　　　　　　　　　　　700 Broadway
　　　　　　　　　　　　　　　　　　　　　New York, NY 10003
　　　　　　　　　　　　　　　　　　　　　Tel: (212) 558-5802

　　　　　　　　　　　　　　　　　　　　　/s/ Michael J. Miller
　　　　　　　　　　　　　　　　　　　　　Michael J. Miller (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Brian K. Brake (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　mmiller@millerfirmllc.com
　　　　　　　　　　　　　　　　　　　　　bbreake@millerfirmllc.com
　　　　　　　　　　　　　　　　　　　　　The Miller Firm LLC
　　　　　　　　　　　　　　　　　　　　　108 Railroad Ave.
　　　　　　　　　　　　　　　　　　　　　Orange, VA  22960
　　　　　　　　　　　　　　　　　　　　　Telephone: (540) 672-4224

　　　　　　　　　　　　　　　　　　　　　*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

　　　I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

　　　　　　　　　　　　　　　　　　　　　/s/ Aimee Wagstaff_____
　　　　　　　　　　　　　　　　　　　　　Aimee H. Wagstaff (SBN 278480)
　　　　　　　　　　　　　　　　　　　　　aimee.wagstaff@andruswagstaff.com

7

PLAINTIFFS' MOTION IN *LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE