**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY REGARDING THE EFFICACY AND BENEFITS OF GLYPHOSATE** |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC <br> *Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC <br> *Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | |

## I. INTRODUCTION

Plaintiffs' MIL No. 3 seeks to preclude a broad array of scientific evidence, including even evidence of how glyphosate works, on the flawed theory that evidence of Roundup's benefits and efficacy is irrelevant. But Roundup's benefits are relevant to many of the material issues in this case, including the jury's assessment of Plaintiffs' putative exposure and causation, design-defect claims, negligence claims, request for punitive damages, and contention that Monsanto employees acted with improper motives. For these reasons, the Court in *Johnson v. Monsanto Co.* considered and denied a motion nearly identical to the one submitted by MDL Plaintiffs, which seeks to preclude evidence of the benefits and efficacy of Roundup. Plaintiffs here offer little more than the recycled argument that efficacy and benefits evidence should be excluded because the consumer-expectation test applies to Plaintiffs' strict-liability design-defect claim. But as the *Johnson* court correctly concluded, that evidence is relevant and admissible even if Plaintiffs are correct about that test (and they are not). There is no basis to exclude that evidence from trial.

## II. ARGUMENT

At the outset, it is important to clarify that Plaintiffs have pleaded four claims in this case: strict product liability for design defect, negligence, failure to warn, and breach of warranty. This point matters because Plaintiffs' arguments for why the benefits of glyphosate are irrelevant largely turn on their claim that they are entitled to proceed with the consumer-expectation test for claims of strict product liability for design defect. Mot. at 1-4. As to that claim, Monsanto contends that this Court should instead apply the risk-benefit test. But at this stage, the Court need not resolve the legal dispute over which test applies in order to rule on Plaintiffs' motion. As Judge Karnow ruled in the *Johnson* matter, the benefits of glyphosate, including its properties and efficacy, are essential background information, and are relevant affirmative and/or rebuttal evidence for causation and a host of additional issues, regardless of which test applies:

> Evidence regarding the benefits and efficacy of glyphosate may be relevant at least as (1) background information, (2) perhaps pertaining to punitive damages, and (3) pertaining to its tendency to "drift" or not (i.e. whether the spray at issue is low volatility) because that pertains to plaintiff's theory of causation and exposure. This is true whether plaintiff proceeds on a risk/benefit theory or not; there is no reason

1

MONSANTO'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3
RE: EFFICACY AND BENEFITS OF GLYPHOSATE
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

in this context to decide whether plaintiff may proceed under either the consumer expectation test or the risk-benefit test. At argument plaintiff's counsel suggested that the issues were perhaps best presented in the context of *Sargon* motions.

*See* Stekloff Decl., Ex. 1 at 3 (4/3/18 Order Denying Monsanto's Motion for Continuance of Trial Date and Re: Motions *in Limine*).

### A. Evidence of Glyphosate's Properties Is Relevant to Causation.

The efficacy and qualities of glyphosate are directly relevant to Plaintiffs' claims of exposure, and thus pertain to issues that will be before the Court in Phase 1. Plaintiffs claim they were exposed to "drift" of glyphosate as a result of spraying, as well as contact from spillage. *See* Stekloff Decl., Ex. 2, Hardeman Dep. Tr. 200:14-201:2, 267:15-268:19; Stekloff Decl., Ex. 3, Stevick Dep. Tr. 119:8-120:13; Stekloff Decl., Ex. 4, Gebeyehou Dep. Tr. 101:13-22; Stekloff Decl., Ex. 5, Sawyer Rpt. at 12. Dr. Al-Khatib, however, explains that the volatility of glyphosate, and its capacity for drift, is very low, which directly rebuts Plaintiffs' claims that they achieved the level of exposure upon which their experts base their opinions. *See* Stekloff Decl., Ex. 6, Al-Khatib *Hardeman* Rpt. at 25 ("[T]he commercial formulations of glyphosate have low volatility—that is, they have a low tendency to vaporize—meaning they can be applied to an area with little risk of vapor drift . . . ."). He also explains the properties of glyphosate that make glyphosate-based products easy and safe to load into sprayers. *Id.* at 23.

Further, glyphosate's properties also serve to rebut the opinion of Dr. Ritz, an epidemiologist who alleges that the persistence of glyphosate in soil is a bad thing, and speculates about the "possibility of exposure to glyphosate due to drift," and "a possibility of contaminated water supplies." Stekloff Decl., Ex. 7, Ritz Rpt. at 22. Dr. Al-Khatib (who, unlike Dr. Ritz, possesses expertise on these questions) explains that Dr. Ritz's supposition is incorrect: Glyphosate's ability to bind to the soil is a positive characteristic that means it does not leach into the groundwater and thus is much less likely to cause any exposure in the manner that Plaintiffs' experts speculate. *See* Stekloff Decl., Ex. 6, Al-Khatib *Hardeman* Rpt. at 26 ("[G]lyphosate has a higher soil-binding potential as compared to several other herbicides commonly used . . . [and that] provides another

reason that it will not contaminate groundwater.").[1] Plaintiffs' motion improperly would exclude this evidence that is directly relevant to medical causation and therefore should be permitted in Phase 1.

### B. Evidence of Glyphosate's Benefits Is Relevant to Plaintiffs' Negligence Claim.

Evidence of glyphosate's benefits is also relevant to Plaintiffs' negligence claim. The California Supreme Court has explained that a products-liability claim sounding in negligence involves application of risk-benefit principles. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479-80 (2001).[2] In *Merrill*, the Court compared the nature of proof in a design-defect case sounding in negligence to one sounding in strict liability. *Id.* The Court observed that negligence implicates the question of whether "a reasonable person would conclude that the magnitude of the reasonably foreseeable harm as designed outweighed the utility of the product as so designed." *Id.* at 479 (quoting Prosser & Keeton On The Law of Torts § 96, at 688 (5th ed. 1984)). Consequently, the proof of negligent design requires an analysis similar to that of strict product liability based on the "risk-benefit" test, in which the alleged risks of glyphosate are balanced against its broader benefits. *See id.* at 480 (comparing the two standards). Indeed, the Court observed that "'most of the evidentiary matters' relevant to applying the risk/benefit test in strict liability cases 'are similar to the issues typically presented in a negligent design case.'" *Id.* (quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 431 (1978)).

### C. Evidence of Glyphosate's Benefits Is Relevant to Rebut Allegations of Corporate Misconduct.

Should trial reach Phase 2, glyphosate's benefits also help to explain the motives and behavior

---

[1] Dr. Hanson also addresses, among other topics, the concept of "drift" as it relates to Plaintiffs' claims of exposure, as well as the use of personal-protection equipment pursuant to label instructions to reduce exposure. *See* Stekloff Decl., Ex. 8, Hanson *Stevick* Rpt. at 21-26.

[2] Monsanto assumes the parties will submit further briefing on whether the jury ultimately will be instructed on the risk-benefit or consumer-expectation test, as Plaintiffs' complaint appears to proceed under both theories. *See Hardeman* First Am. Compl. at ¶ 138 ("more dangerous than an ordinary consumer would expect"), ¶ 137 ("the foreseeable risks exceeded the benefits").

of Monsanto and its employees in response to Plaintiffs' claims of misconduct. Plaintiffs' theory essentially is that glyphosate is an evil chemical, and that Monsanto's employees engaged in misconduct by defending glyphosate publicly in a variety of ways in order to advance the company's profit motives. *See, e.g.*, Stekloff Decl., Ex. 9, Benbrook Rpt. at Table of Contents. Indeed, Plaintiffs' central company-conduct witness, Dr. Benbrook, asserts in a 150+ page expert report that Monsanto engaged in misconduct by overstating the benefits of Roundup and understating possible risks. *See id.* at 159.

These allegations directly implicate the benefits of glyphosate, and the jury cannot evaluate Plaintiffs' claim that Monsanto overstated Roundup's benefits without hearing what those benefits are. Further, and contrary to Plaintiffs' assertions, the societal benefits of glyphosate explain why Monsanto has so vigorously presented science-based arguments about glyphosate in response to public attacks. Monsanto's attention to the public and scientific discourse about glyphosate cannot be understood properly unless its actions are placed into the context of glyphosate's beneficial role in weed control, including in modern agriculture. The jury cannot be permitted to hear only Plaintiffs' accusations without the necessary context of the actual motives behind Monsanto's defense of glyphosate.

Courts repeatedly have held that the benefits of a product are relevant to a jury's assessment of conduct underlying a punitive-damages claim. *See*, *e.g.*, *Musgrave v. Breg, Inc.*, No. 2:09-cv-01029, 2011 WL 4620767, at *6 (S.D. Ohio 2011) (denying the plaintiffs' motion *in limine* to preclude a pain-pump manufacturer from offering evidence to rebut punitive damages "that it is a 'good corporate citizen' that benefits society by making products that are life-saving or improve the quality of peoples' lives"); *Schubkegel v. Gordino*, 56 Cal. App. 2d 667, 675 (1943) (citing *Fleet v. Tichenor*, 156 Cal. 343 (1909) and affirming its holdings that first, the trial court had erred in sustaining objections to questions posed to the defendant to show his absence of malice and rebut plaintiff's claim for punitive damages and second, that a defendant is entitled to present evidence as to the intent with which he did a certain act, when the intent is material to the action). That Monsanto's products like Roundup contain glyphosate, "the most important herbicide" available today, *see* Stekloff Decl.,

4

Ex. 10 (S. Duke and S. Powles, Glyphosate: A Once-in-a-Century Herbicide, 64 Pest Manag. Sci. 319, 319 (2008)), and permit farmers to protect crops and feed the world population, is core evidence relevant to rebutting Plaintiffs' punitive damages claims. *See, e.g.*, Cal. Civ. Code § 3294(a) (requiring punitive-damages plaintiff to prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice").

### D. Evidence of Glyphosate's Benefits Presents No Risk of Undue Prejudice or Jury Confusion.

Plaintiffs also offer the unexplained assertion that evidence of glyphosate's benefits would be a waste of time or confuse the jury. Mot. at 5. In *Johnson v. Monsanto*, however, the Court permitted Dr. Al-Khatib's testimony regarding glyphosate's benefits, which was relevant, circumscribed, and did not actually invite Plaintiffs' claimed "trial within a trial." Ultimately, this is an insufficient basis to exclude evidence that is central to the jury's understanding of multiple issues.

### III. CONCLUSION

Plaintiffs' overly broad request to exclude evidence that goes to the heart of Plaintiffs' claims, as well as Monsanto's defense, should be denied.

DATED: January 30, 2019

        Respectfully submitted,

        /s/   *Brian L. Stekloff*

        Brian L. Stekloff (*pro hac vice*)
        (bstekloff@wilkinsonwalsh.com)
        Rakesh Kilaru (*pro hac vice*)
        (rkilaru@wilkinsonwalsh.com)
        WILKINSON WALSH + ESKOVITZ LLP
        2001 M St. NW, 10th Floor
        Washington, DC 20036
        Tel: (202) 847-4030
        Fax: (202) 847-4005

        Pamela Yates (CA Bar No. 137440)
        (Pamela.Yates@arnoldporter.com)
        ARNOLD & PORTER KAYE SCHOLER

1 | 777 South Figueroa St., 44th Floor
2 | Los Angeles, CA 90017
  | Tel: (213) 243-4178
3 | Fax: (213) 243-4199

4 | Eric G. Lasker (*pro hac vice*)
  | (elasker@hollingsworthllp.com)
5 | HOLLINGSWORTH LLP
  | 1350 I St. NW
6 | Washington, DC 20005
  | Tel: (202) 898-5843
7 | Fax: (202) 682-1639

8 | Michael X. Imbroscio (*pro hac vice*)
  | (mimbroscio@cov.com)
9 | COVINGTON & BURLING LLP
  | One City Center
10 | 850 10th St. NW
   | Washington, DC 20001
11 | Tel: (202) 662-6000

12 | *Attorneys for Defendant*
   | *MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.

/s/   *Brian L. Stekloff*