# EXHIBIT 1

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| DEWAYNE JOHNSON, ET AL.<br><br>Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY, ET AL.<br><br>Defendants. | Case No. CGC – 16-550128<br><br>ORDER DENYING MONSANTO'S MOTION FOR CONTINUANCE OF TRIAL DATE AND RE: MOTIONS IN LIMINE |

    Plaintiff Dewayne Johnson brought this products liability action against Monsanto alleging that he contracted non-Hodgkin lymphoma as a result of his exposure to glyphosate, which is contained in Monsanto's herbicides. Johnson was diagnosed with non-Hodgkin lymphoma in 2014.

    On July 21, 2017, Johnson filed a motion for trial preference pursuant to C.C.P. § 36(d)-(e) on the ground that there was substantial medical doubt that he would live more than six months. Defendants opposed the motion. On August 21, 2017, before the motion was heard, the parties entered a stipulation pursuant to which: (1) Johnson dismissed all of the Defendants except for Monsanto; (2) Johnson withdrew his motion for trial preference; (3) Monsanto agreed not to remove this action to federal court; (4) Johnson and Monsanto agreed that the trial date would be set for June 2018, even if Johnson passes away prior to that date; (5) Johnson and Monsanto agreed to request that trial be set on this Department's calendar; and, if a June 2018

trial date in this Department is not feasible, (6) Johnson and Monsanto agreed to request that this lawsuit be referred to the presiding judge for assignment to another judge for trial in June 2018.

Today I heard argument on defendant's motion to continue trial date and motions in limine.

**Sealing**

The parties must now promptly file in the public file unredacted versions of all materials not the subject of a motion to seal, if this has not yet occurred.

**Motion for Continuance**

The court has substantial discretion reading trial continuances. *People v. Conagra Grocery Prods. Co.*, 17 Cal.App.5th 51, 153-54 (2017); *Taylor v. Bell*, 21 Cal.App.3d 1002, 1007 (1971); CRC 3.1332.

Monsanto requests a continuance of the June 18, 2018 trial date to the next available date on the Department 304 calendar. The primary relief sought is a trial in this Department. Monsanto will not be prejudiced if the trial goes forward as scheduled whereas Johnson will likely be prejudiced by a continuance. Although Johnson's likely life expectancy is disputed, his disease can be both incapacitating and terminal. Calhoun Decl., Ex. 1 at 55:20-56:18 (at her January 23, 2018 deposition, Johnson's treating physician testified that more than 80% of Johnson's body was covered by lesions, but that his condition was improving after he started receiving pralatrexate in November 2017), 151:19-152:20 (refusing to rule out the possibility that Johnson will be cured while also stating that he may die from the disease). Further, the current arrangement, with a trial out of the Presiding Judge's department and trial date of June 18, were all set by stipulation with a variety of terms beneficial to one side or the other, and I am disinclined to in effect delete one of those benefits leaving others unaffected.

The motion is denied.

**Motions in Limine**

Rulings on motions in limine are by definition not binding and subject to reconsideration at trial. *Chen v. L.A. Truck Centers, LLC,* 7 Cal.App.5th 757 (2017), p*et.rev.gtd* 3/29/17. This is especially true when, as is the case for some of the motions below, there is no apparent foundation for the contested evidence.

**Plaintiff's Motion in Limine No. 1**

Johnson moves to exclude evidence regarding the efficacy and benefits of glyphosate. The motion is not directed at specific pieces of evidence and is denied as overbroad. Evidence regarding the efficacy and benefits of glyphosate may be relevant at least as (1) background information, (2) perhaps pertaining to punitive damages, and (3) pertaining to its tendency to "drift" or not (i.e. whether the spray at issue is low volatility) because that pertains to plaintiff's theory of causation and exposure. This is true whether plaintiff proceeds on a risk/benefit theory or not; there is no reason in this context to decide whether plaintiff may proceed under either the consumer expectation test or the risk-benefit test. At argument plaintiff's counsel suggested that the issues were perhaps best presented in the context of *Sargon* motions. For now, the motion is denied.

**Plaintiff's Motion in Limine No. 2**

Johnson moves to exclude evidence regarding foreign regulatory actions and decisions by governmental agencies in foreign countries (Actions). The Actions, in brief, concluded that no harm comes from the use of glyphosate. While it remains unclear precisely how the Actions will be presented to the jury, it is (at least on the present record) possible that these will properly be a part of the basis for expert opinion. It remains unclear if their use in that context would require,

as plaintiff suggests, wasteful detours on the means by which the Actions were reached or determined. Monsanto also argues that it will present evidence that it was aware of these Actions, and in conducting itself in accordance with their findings, will demonstrate that its actions are not worthy of punitive damages. Accordingly, plaintiff's broadly worded motion is denied.

**Monsanto's Motion in Limine No. 1**

As a result of a 1996 enforcement action, Monsanto entered an agreement with the New York Attorney General by which it refrained from making certain statements in its advertising and agreed to pay $50,000.00, Monsanto specifically denied any violation of law. Monsanto moves to preclude Johnson from referencing the enforcement action because Monsanto asserts that Johnson will improperly ask the jury to infer that Monsanto's advertising violated California law. Johnson responds that the NYAG action demonstrates that Monsanto was on notice that its California advertisements were misleading but failed to change them. Opposition, 3. Monsanto replies that the issues involved in the 1996 enforcement action are so far removed in geography and time that they have no relevance and, even if they did have relevance, introducing such evidence would require the parties to waste a great amount of time explaining the circumstances of the enforcement action.

Even after argument it remains unclear on why plaintiff contends the New York agreement is relevant. There is apparently no evidence that plaintiff here, or someone he relied on, relied on the New York ads. Further, the 1996 agreement was based on what then known about glyphosate, and much has since changed—New York (or any state) might not have an issue with the ads now, depending on whether one follows the studies offered by defendant or by plaintiff. It would be a waste of time to explain all this to jury, and there is real risk that the

New York agreement would simply be seen as evidence that defendant is a bad actor, all of which suggests that under § 352 this evidence is inadmissible.

But more strongly, the evidence has no apparent relevancy since it appears causally unconnected with plaintiff's injuries. The motion is granted.

**Monsanto's Motion in Limine No. 2**

Monsanto moves to exclude evidence of labeling, warnings, and advertising that Monsanto used after Johnson stopped using its products, as well as any other labeling, warnings, and advertising that Johnson did not see, hear, or rely on. The motion extends to labeling, warnings, and advertising that pertained to products other than those used by Johnson and any labeling, warnings, and advertising used by other companies. Further, the motion extends to any labeling, warnings, and advertising that post-date Johnson's last exposure to glyphosate in January 2016.

Again, plaintiff does not explain how any of the ads or labels at issue in this motion caused his injuries in some way. Following up on a comment by plaintiff's counsel at argument, it is theoretically possible that pervasive advertisements created a general widespread belief such that plaintiff, or people (such an employer or trainer) advising plaintiff, believed something about glyphosate which was untrue and this in turn led plaintiff to do something which increased his risk of injury. But there seems to be no such foundation for this argument.[1] If plaintiff does intend to present such a foundation, and the ads and labels are otherwise admissible, he should seek leave from the trial judge to introduce the ads and labels. For now the motion is granted.

---

[1] For example, while Johnson refers to advertisements depicting people administering Roundup without wearing protective gear, this does appear to relate to this case, because Johnson did wear protective gear.

- 5 -

**Monsanto's Motion in Limine No. 3**

Monsanto seeks exclusion of mention of all other litigation involving Monsanto. While some 4000 cases have been filed,[2] it appears from argument that there were about 6 or 7 of them filed before Johnson's last exposure to Monsanto's glyphosate which alleged the sort of injury suffered by Johnson. Whether substantiated or not, these complaints could be treated as notice to Monsanto of the alleged connection between glyphosate and the injury at issue in this case. Monsanto at argument said that as a result of other studies (i.e. the IARC study), it was already aware of the allegation, but this shouldn't block plaintiffs from also introducing the facts of the filing of the 6 or 7 cases to show notice. Monsanto may propose to the trial judge a short limiting instruction that makes it clear the fact of the filing of the complaints does not establish the truth of any of the allegations in them.

The motion is denied.

**Monsanto's Motion in Limine No. 4**

Defendant moves for an order excluding any evidence or argument about the presence of glyphosate in breast milk, food, or other sources unrelated to Johnson's alleged route of exposure. Monsanto contends that references to other potential sources of glyphosate exposure will inflame the jury against Monsanto based on their own fear that they may have been exposed.

First, evidence relating to glyphosate exposure through breast milk should be excluded. There is no allegation or argument that Johnson was exposed to glyphosate through breast milk.

Second, evidence relating to exposure through the other means alleged in the complaint should not be excluded. If and to the extent his expert bases his or her opinion on Johnson's total

---

[2] Mentioning the total—4000--would plainly create a substantial risk of undue prejudice that outweighs any probative value. E.C. § 352.

intake of glyphosate including by way of food, Johnson may properly introduce evidence of such intake.

**Monsanto's Motion in Limine No. 5**

Monsanto seeks to exclude evidence about Monsanto's corporate activities after January 2016, when Johnson last used on of Monsanto's glyphosate. This includes Monsanto's investigation of the International Agency for Research on Cancer's (IARC) decision-making process and Monsanto's lawsuit against California's Office of Environmental Health Hazard Assessment (OEHHA).

Johnson responds that evidence of some action taken by Monsanto after January 2016 is relevant, such as the asserted fact that Monsanto ghost-wrote articles relating to the safety of glyphosate from at least 2000 through 2016, including three Intertek CRT Articles published in 2016, one of which is cited by Monsanto's expert in this case. Monsanto has no clear reply to this, and the motion in limine regarding this is denied.

Even after argument, plaintiff's position on Monsanto's IARC investigation and suit against OEHHA is unclear. Plaintiff's counsel assert that Monsanto quietly lobbied politicians and other third parties to attack the IARC study, portraying all this as evidence of Monsanto's continuing efforts to obscure the asserted truth about glyphosate. The same is said of the lawsuit against OEHHA. At argument, plaintiff's counsel may have suggested he had no intention of getting into the details of these events. In any event, responding to these sorts of arguments will be an undue consumption of time; and risk serious prejudice: first the parties will wrangle on whether Monsanto's actions were in fact in bad faith or motivated by a desire to cover up the

truth,[3] and then the jury will be asked to infer from that to Monsanto's pre-2016 actions which assertedly caused plaintiff's injuries.

The motion as to ghost-written articles is denied.[4] As to Monsanto's investigation of IARC and the suit against OEHHA, it is granted.

Dated: April 3, 2018

_____
Curtis E.A. Karnow
Judge Of The Superior Court

---

[3] This is particularly fraught when it comes to a lawsuit which has not been adjudicated in bad faith or a malicious prosecution.
[4] Whether the evidence ultimately is admitted depends on events at trial- if Monsanto's experts never in fact rely on them they may not be relevant.

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On APR 3 - 2018, I electronically served THE ATTACHED DOCUMENT via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: APR 3 - 2018

T. Michael Yuen, Clerk

By: _____
DANIAL LEMIRE, Deputy Clerk