# EXHIBIT 3

Elaine Stevick

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
 4    IN RE: ROUNDUP PRODUCTS     )
      LIABILITY LITIGATION        )
 5                                )  Case No.
                                  )  3:16-md-02741-VC
 6                                )
      This Document Relates to:   )
 7                                )  MDL No.  2741
      Stevick v. Monsanto Co.,    )
 8    et al.,                     )
      Case No. 3:16-cv-02341-VC   )
 9                                )
                                  )
10
11
12                       - - - -
13                      VIDEOTAPED
14            DEPOSITION OF ELAINE STEVICK
15
16       Held at the Offices of Litigation Services
17         3510 Unocal Place, Santa Rosa, California
18           Friday, November 9, 2018, 9:24 a.m.
19                       - - - -
20
21
22
23
24    REPORTED BY:  ELAINA BULDA-JONES, CSR #11720
25
```

Elaine Stevick

|  | Page 118 |
|---|---|

1 weed or plant killing or were you always precise?
2     A.   Yes, sometimes the roses would get a
3 little -- I would notice that the roses were -- were
4 dying where they weren't supposed to be.  But I
5 never killed a rose, I don't think.
6     Q.   Okay.  You'd just quickly rinse it off
7 and --
8     A.   Yes.
9     Q.   Okay.  But other than -- how many times
10 did that happen?
11     A.   Six times, I don't know, something very
12 rarely.
13     Q.   Okay.  So you were generally very careful
14 not to get it where you didn't want it to go?
15     A.   Correct.
16     Q.   Because these are tight spaces we're
17 talking about, right?
18     A.   It's a tight space and it's a powerful --
19 powerful thing.
20     Q.   Right.  And so over the 25 years maybe six
21 times you got a little bit on a rose, but it didn't
22 kill the rose.  You didn't get enough on it to kill
23 it?
24     A.   I don't know in 25 years.  It must be more
25 than that.  I'm sure it's more than that.

|  | Page 119 |
|---|---|

1     Q.   Okay.  But right now, sitting here today,
2 your best recollection is about six times?
3     A.   If I were to really think about it, I
4 think it would probably be more like 15 times
5 because it's too many years, again.
6     Q.   Okay.
7     A.   I couldn't have been that good.
8     Q.   When you were spraying, did you ever get
9 any on yourself?
10     A.   Occasionally, sure.
11     Q.   How would that happen?
12     A.   Well, either the -- a breeze would come up
13 and would blow back.  There's -- it's bound to
14 happen, that there's some breeze.
15     Q.   And where would it get?  Where would it
16 land on you?
17     A.   Mostly on my hands.
18     Q.   Okay.  But you're aiming down and the
19 breeze would come from the earth upwards?
20     A.   Well, just the side.  You know, sometimes
21 you're -- you're spraying.  If I'm using the bigger
22 spray, like on the driveway, if the breeze came that
23 would come -- that doesn't have to come from the
24 ground.  That's just coming across.
25     Q.   Okay.  And -- okay.  How many times do you

|  | Page 120 |
|---|---|

1 recall that happening?
2     A.   Almost every time that I would use it, you
3 know, there's a chance that the breeze would come.
4 That's all I can tell you in terms of odds.  I -- I
5 can't say I could count ten times or 15 or 20 or 30
6 times.  When you're using it, it will -- the wind
7 blows and it would get -- you would get wet.
8     Q.   How much?
9     A.   How much?
10     Q.   Yeah.  How much would you get on your
11 hands?
12     A.   Just a -- a spray.  You know, it's light.
13 It's a light mist.
14     Q.   Very light.  And then would you wash your
15 hands immediately afterwards?
16     A.   Not immediately.
17     Q.   I mean -- sorry, immediately after you
18 were done?
19     A.   When I was done, if it got on me, then I
20 would wash.
21     Q.   And it didn't get on you every time, did
22 it?
23     A.   No.
24     Q.   About what percentage of the time would
25 you say it got on you?

|  | Page 121 |
|---|---|

1     A.   I would say about 10 to 20 percent of the
2 time.
3     Q.   Okay.  And when it did, within an hour you
4 would -- at least within an hour you would wash your
5 hands?
6     A.   Yes.
7     Q.   I'm sorry.  At most within an hour you
8 would wash your hands?
9     A.   Yes, if it got on me or if I felt wet.  If
10 I felt wet.
11     Q.   And you occasionally wore gloves when you
12 were doing this?
13     A.   Very rarely because it -- you can't.
14 Those garden gloves are so thick you can't
15 manipulate the sprayer that way.
16     Q.   About what percentage of the time did you
17 wear gloves?
18     A.   I would say less than five percent.
19     Q.   Okay.  And did you ever get any anywhere
20 other than your hands?
21     A.   My legs, perhaps.  I can remember that,
22 that it drifted on to my legs.
23     Q.   Were you wearing pants?
24     A.   Very rarely I would wear shorts, but most
25 of the time I would wear long jeans.

Elaine Stevick

Page 370

INSTRUCTIONS TO WITNESS

1    INSTRUCTIONS TO WITNESS
2
3         Please read your deposition over carefully
4    and make any necessary corrections.  You should
5    state the reason in the appropriate space on the
6    errata sheet for any corrections that are made.
7         After doing so, please sign the errata
8    sheet and date it.
9         You are signing same subject to the
10   changes you have noted on the errata sheet, which
11   will be attached to your deposition.
12        It is imperative that you return the
13   original errata sheet to the deposing attorney
14   within thirty (30) days of receipt of the deposition
15   transcript by you.  If you fail to do so, the
16   deposition transcript may be deemed to be accurate
17   and may be used in court.
18
19
20
21
22
23
24
25

Page 372

ACKNOWLEDGMENT OF DEPONENT

1    ACKNOWLEDGMENT OF DEPONENT
2
3
4
5         I,_____, do hereby certify
6    that I have read the foregoing pages, and that the
7    same is a correct transcription of the answers given
8    by me to the questions therein propounded, except
9    for the corrections or changes in form or substance,
10   if any, noted in the attached Errata Sheet.
11
12
13   _____  _____
14   ELAINE STEVICK          DATE
15
16
17
18
19
20
21
22
23
24
25

Page 371

ERRATA SHEET

1    ERRATA SHEET
2
3    PAGE  LINE   CHANGE
4    ____  ____ _____
5         REASON:_____
6    PAGE  LINE   CHANGE
7    ____  ____ _____
8         REASON:_____
9    PAGE  LINE   CHANGE
10   ____  ____ _____
11        REASON:_____
12   PAGE  LINE   CHANGE
13   ____  ____ _____
14        REASON:_____
15   PAGE  LINE   CHANGE
16   ____  ____ _____
17        REASON:_____
18   PAGE  LINE   CHANGE
19   ____  ____ _____
20        REASON:_____
21   PAGE  LINE   CHANGE
22   ____  ____ _____
23        REASON:_____
24
25

Page 373

1    STATE OF CALIFORNIA  )
2    COUNTY OF YOLO     )
3         I, ELAINA BULDA-JONES, a Certified Shorthand
4    Reporter of the State of California, duly authorized
5    to administer oaths pursuant to Section 2025 of the
6    California Code of Civil Procedure, do hereby
7    certify that
8              ELAINE STEVICK,
9    the witness in the foregoing deposition, was by me
10   duly sworn to testify the truth, the whole truth and
11   nothing but the truth in the within-entitled cause;
12   that said testimony of said witness was reported by
13   me, a disinterested person, and was thereafter
14   transcribed under my direction into typewriting and
15   is a true and correct transcription of said
16   proceedings.
17        I further certify that I am not of counsel or
18   attorney for either or any of the parties in the
19   foregoing deposition and caption named, nor in any
20   way interested in the outcome of the cause named in
21   said deposition dated the  _____ day of
22   _____, 2018.
23
24
25   ELAINA BULDA-JONES, RPR, CSR 11720