**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | **MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4 RE: FOREIGN REGULATORY DECISIONS** |

## I. INTRODUCTION

Plaintiffs ask this Court to exclude all evidence regarding findings and conclusions of foreign regulatory agencies, while at the same time seeking to rely heavily on the conclusions of IARC, an international organization with no regulatory authority. Plaintiffs cannot have it both ways. Both regulatory and non-regulatory organizations throughout the world have evaluated the data concerning glyphosate, and IARC essentially stands alone in its conclusions. Plaintiffs, however, want the jury to hear only about the conclusions reached by IARC while preventing the jury from hearing about conclusions reached by foreign health and regulatory entities that have evaluated the same (and frequently more) data, and who have the actual responsibility for regulating these products in their respective jurisdictions. Although Monsanto does not believe any such evidence is necessary or appropriate in Phase 1, if the IARC classification is admitted, fundamental fairness dictates that the determinations made by other entities, including foreign regulatory bodies, must also be admitted. In Phase 2, evidence regarding the actions and conclusions of foreign regulatory bodies may be relevant to Monsanto's knowledge, and thus the reasonableness and adequacy of its actions and warnings. A critical relevant inquiry in Phase 2 will be whether Monsanto actions at the relevant time were reasonable and adequate *in light of* the scientific knowledge that was generally accepted at that time. Risk assessments concerning glyphosate performed by foreign regulatory entities directly bear on that issue.

## II. BACKGROUND

The current litigation concerning glyphosate largely exists because of IARC's 2015 determination that glyphosate is "probably carcinogenic to humans." Indeed, IARC's determination is central to Plaintiffs' theory in this case.[1] This determination contradicted decisions regarding glyphosate safety made by EPA and many other international regulatory and non-regulatory bodies. After IARC's determination, EPA and other scientific regulatory

---

[1] *See* Stekloff Decl., Ex. 1, Dec. 5, 2018 CMC Hr'g Tr. at 59:6-10 (Plaintiffs' counsel: "'Roundup has been on the market for 40 years. It has a demonstrated record of safety.' And there's so much untruth about that that we have to unpack. We will do that with evidence, but a lot of it involves IARC because what IARC did is it's the change in the narrative.")

- 1 -

1  organizations independently re-determined that glyphosate was safe, often explicitly rejecting
2  IARC's conclusion in the process.
3      Plaintiffs want to present the jury with an incomplete and misleading picture of the state
4  of the scientific knowledge regarding glyphosate—one that elevates IARC's conclusion above
5  numerous competing conclusions and paints glyphosate as unequivocally and indisputably
6  unsafe.  But that would give the jury a false and inaccurate impression both of the scientific
7  realities and of Monsanto's understanding of the state of scientific knowledge and consensus that
8  informed its decisions regarding product safety.
9      Monsanto has moved *in limine* to exclude evidence regarding IARC's classification in
10 Phase 1.  *See* Monsanto's MIL No. 1.  If evidence of IARC's classification is admitted, however,
11 conclusions of regulatory organizations likewise must also be admitted to ensure the jury is
12 presented with a complete picture of the state of the scientific knowledge.  In those
13 circumstances, Monsanto has proposed a limiting instruction.  *See* Monsanto's MIL No. 1. at 5.
14 In Phase 2, evidence regarding actions and conclusions of regulatory organizations is highly
15 probative of the issues the jury will be asked to assess and should not be excluded.

16 **III.     ARGUMENT**

17     **A.     Plaintiffs Should Not Be Permitted to Cherry-Pick One Foreign
18 Determination Favorable to Their Theory While Shielding All Other Foreign
Determinations From the Jury's View.**

19     Plaintiffs' motion is logically inconsistent and unfairly prejudicial to Monsanto.  It
20 attempts to present the jury with limited evidence that paints an incomplete picture of the state of
21 the scientific knowledge.  Plaintiffs want the Court to admit IARC's conclusions, while at the
22 same time exclude determinations by scientific bodies that reviewed the data considered by
23 IARC (and more) and came to the opposite conclusion.  Such a one-sided approach would
24 unduly prejudice Monsanto and result in a lopsided presentation of the evidence.
25     Plaintiffs claim that admission of foreign regulatory actions would "mislead[] the jury
26 and confus[e] the issues."  Pls.' MIL 4 at 6.  In fact, allowing Plaintiffs to present IARC's
27 conclusion in a vacuum—devoid of the overwhelming number of scientific and regulatory bodies
28

that have rejected that conclusion—is the very epitome of misleading.  If the jury is permitted to hear about one analysis of the state of the science, it must also hear about other and more complete analyses, especially given that IARC's classification stands in stark contrast to the conclusions reached by other non-regulatory and regulatory organizations throughout the world.  Indeed, just in the past month, two major health authorities have rejected IARC's conclusion and reaffirmed their views that Roundup has not been shown to be carcinogenic.[2]

Thus, if the Court allows the introduction of IARC's conclusions in Phase 1, the Court should also deny this motion.

### B. Foreign Regulatory Conclusions Are Relevant to the State of the Scientific Knowledge and Monsanto's Knowledge, and Should Be Admitted in Phase 2.

Plaintiffs seek to exclude evidence of every worldwide regulatory entity that evaluated glyphosate data and reached a conclusion on its safety.  But the evaluations of glyphosate data throughout the world—including those by regulatory entities—are probative of the overall state of scientific knowledge and Monsanto's understanding of glyphosate safety, which will be critical issues in Phase 2.  To meet their burden of proof on their strict liability claim in Phase 2 of the trial, plaintiffs must establish, *inter alia*, that glyphosate's potential risks were known or

---

[2] Health Canada this month reaffirmed its non-carcinogenic conclusion in the wake of IARC's determination: Allegations of glyphosate's carcinogenicity "could not be scientifically supported when considering the entire body of relevant data." *Statement from Health Canada on Glyphosate*, Health Canada (Jan. 11, 2019), https://www.canada.ca/en/health-canada/news/2019/01/statement-from-health-canada-on-glyphosate.html (describing the regulator's finding that objections raised to its 2017 re-evaluation decision that glyphosate was non-carcinogenic "did not create doubt or concern regarding the scientific basis for the 2017 re-evaluation decision for glyphosate" and reiterating that "[n]o pesticide regulatory authority in the world currently considers glyphosate to be a cancer risk to humans at the levels at which humans are currently exposed").  In December, the EPA's Office of Pesticide Programs, describing its independent reevaluation of its glyphosate risk assessment, with more than two dozen staff members across more than ten disciplines, reiterated "confiden[ce] in its conclusion that glyphosate is not likely to be carcinogenic to humans. Stekloff Decl., Ex. 2, Letter from Richard P. Keigwin, Director, U.S. EPA Office of Pesticide Programs, to Jane Thompson, Committee Secretary, Australian Senate Standing Committee on Rural and Regional Affairs and Transport (Dec. 21, 2018).  As Mr. Keigwin points out in his letter, EPA's "conclusion is consistent with other countries and regulatory authorities including the Canadian Pest Management Regulatory Agency, Australian Pesticide and Veterinary Medicines Authority, European Food Safety Authority, the European Chemicals Agency, German Federal Institute for Occupational Safety and health, The Joint FAO/WHO Meeting on Pesticide Residues, the New Zealand Environmental Protection Authority, and Food Safety Commission of Japan." *Id.* at 5.

1  knowable "**in light of the scientific knowledge that was generally accepted in the scientific
2  community**" at the time the product was manufactured and sold.  *See* CACI 1205 (emphasis
3  added).  Thus, the adequacy of Monsanto's warning, and an evaluation of Monsanto's conduct,
4  squarely depend upon the state of scientific knowledge, and the conclusions of the relevant
5  regulatory agencies – both foreign and domestic -- provide a strong indication of what was
6  generally accepted in the scientific community.  Where alleged knowledge of a product
7  manufacturer is relevant, as it is here under Plaintiffs' theory, then foreign regulatory evidence
8  sheds light on the company's knowledge.  *See*, *e.g.*, *Coordination Proceeding Special Title v.*
9  *Actos Prod. Liab. Cases*, 2013 WL 2302015, at *10 (Cal. Super. Ct. Feb. 11, 2013) ("evidence of
10 foreign regulatory action" is relevant and admissible to show the defendant's "knowledge of the
11 alleged carcinogenic properties of [the product]." (emphasis removed)); *In re Depakote*, 87
12 F.Supp.3d 916, 926 (S.D. Ill. 2015) (evidence of foreign regulatory actions "is relevant on the
13 issue of [the defendant]'s knowledge during a relevant time period…" (emphasis removed)).

14        In defending the safety of Roundup, Monsanto relied on the overall body of scientific
15 evidence, including foreign regulatory determinations that glyphosate does not cause cancer.  To
16 properly evaluate Monsanto's conduct, the jury is entitled to hear evidence regarding the
17 evaluations of glyphosate's risks that were generally accepted in the worldwide scientific
18 community—a community that includes foreign regulatory organizations.  Because foreign
19 regulatory evidence contributed to the overall state and understanding of the scientific
20 knowledge, it is directly relevant to the issues in this case.[3]

21        To support their position that IARC's classification should be admitted while foreign
22 regulatory actions should be excluded, Plaintiffs summarily proclaim that IARC conclusions are
23 "far different" than regulatory conclusions because they "are not dictated by foreign laws,
24 regulations, and standards that are different from what is required under California law."  *See*
25 Pls. MIL 4 at 7.  But Monsanto is not suggesting that its conduct is dictated by foreign regulatory

---

[3] Monsanto also notes that foreign regulatory evidence is not excludable as hearsay.  *See United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) ("public records and reports of foreign governments" are within scope of Federal Rule of Evidence 803(8)).

standards in place of California law.  Rather, the determinations reached by these bodies contributed to and thus are directly relevant to the overall state of the scientific knowledge, which is what Monsanto's duties stem from and what its conduct is judged against under California law.  *See*, *e.g.*, CACI 1205.

If anything, it is IARC's standards that are distinct from California law and not relevant here.  First, in reaching its determination, IARC reviewed only a portion of the scientific data available rather than the full body of available scientific evidence, as the foreign regulatory bodies have done and certainly as California law compels.  Second, IARC's review produced only a "hazard assessment," which considers the preliminary question of whether there is evidence that a substance can cause cancer under any circumstances, rather than the foreign regulatory entities' "risk assessments," which consider real-world human exposure and risk probabilities and thus far more aligned with California law.  *See* PTO 45 at 12A ("A 'hazard assessment' . . . is *not what the jury needs to conduct* when deciding whether glyphosate actually causes NHL in people at past or current exposure levels." (emphasis added).

If the Court permits IARC's conclusions to be admitted in Phase 2, then basic notions of fairness dictate that the jury hear about the scientific determinations made by the foreign health authorities with actual responsibility for assessing user safety.  Such admission would be neither confusing nor misleading.

**IV.    CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion *in limine* to exclude all evidence of foreign regulatory actions and determinations.

| | |
|---|---|
| DATED: January 30, 2019 | Respectfully submitted, |
| | /s/ Brian L. Stekloff |
| | |
| | Brian L. Stekloff (*pro hac vice*) |
| | (bstekloff@wilkinsonwalsh.com) |
| | Rakesh Kilaru (*pro hac vice*) |
| | (rkilaru@wilkinsonwalsh.com) |
| | WILKINSON WALSH + ESKOVITZ LLP |
| | 2001 M St. NW, 10th Floor |
| | Washington, DC 20036 |
| | Tel: 202-847-4030 |
| | Fax: 202-847-4005 |
| | |
| | Pamela Yates (CA Bar No. 137440) |
| | (Pamela.Yates@arnoldporter.com) |
| | ARNOLD & PORTER KAYE SCHOLER |
| | 777 South Figueroa St., 44th Floor |
| | Los Angeles, CA 90017 |
| | Tel: 213-243-4178 |
| | Fax: 213-243-4199 |
| | |
| | Eric G. Lasker (*pro hac vice*) |
| | (elasker@hollingsworthllp.com) |
| | HOLLINGSWORTH LLP |
| | 1350 I St. NW |
| | Washington, DC 20005 |
| | Tel: 202-898-5843 |
| | Fax: 202-682-1639 |
| | |
| | Michael X. Imbroscio (*pro hac vice*) |
| | (mimbroscio@cov.com) |
| | COVINGTON & BURLING LLP |
| | One City Center |
| | 850 10th St. NW |
| | Washington, DC 20001 |
| | Tel: 202-662-6000 |
| | |
| | Attorneys for Defendant |
| | MONSANTO COMPANY |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of January 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff