# EXHIBIT 1

```
                                                                    1
Pages 1 - 96
            UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
Before The Honorable Vince Chhabria, Judge

IN RE ROUNDUP PRODUCTS      )
LIABILITY LITIGATION.       )
                            )   NO. 16-md-02741 VC
                            )
_____)
EMANUEL RICHARD GIGLIO,     )
                            )
          Plaintiff,        )
                            )
    VS.                     )   NO. C 16-05658 VC
                            )
MONSANTO COMPANY,           )
                            )
          Defendant.        )
_____)

                     San Francisco, California
                     Wednesday, December 5, 2018

              TRANSCRIPT OF PROCEEDINGS
APPEARANCES:

For Plaintiffs:
                    ANDRUS WAGSTAFF PC
                    7171 W. Alaska Drive
                    Lakewood, Colorado  80226
              BY:   AIMEE H. WAGSTAFF, ATTORNEY AT LAW
                    DAVID J. WOOL, ATTORNEY AT LAW

                    ANDRUS WAGSTAFF PC
                    6315 Ascot Drive
                    Oakland, California  94611
              BY:   KATHRYN M. FORGIE, ATTORNEY AT LAW


        (APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter
```

```
                                                                    2
 1   APPEARANCES:  (CONTINUED)
 2   For Plaintiffs:
 3                     WEITZ & LUXENBERG PC
                       700 Broadway
 4                     New York, New York  10003
               BY:     ROBIN L. GREENWALD, ATTORNEY AT LAW
 5
                       THE MILLER FIRM LLC
 6                     108 Railroad Avenue
                       Orange, Virginia  22960
 7             BY:     MICHAEL J. MILLER, ATTORNEY AT LAW
                       BRIAN BRAKE, ATTORNEY AT LAW
 8                     NANCY G. MILLER, ATTORNEY AT LAW

 9                     LAW OFFICES OF TESFAYE W. TSADIK
                       The California Building
10                     1736 Franklin Street - 10th Floor
                       Oakland, California  94612
11             BY:     TESFAYE W. TSADIK, ATTORNEY AT LAW

12                     AUDET & PARTNERS LLP
                       711 Van Ness Avenue - Suite 500
13                     San Francisco, California  94102
               BY:     MARK E. BURTON, ATTORNEY AT LAW
14
                       LUNDY, LUNDY, SOILEAU & SOUTH LLP
15                     501 Broad Street
                       Lake Charles, Louisiana  70601
16             BY:     RUDIE R. SOILEAU, JR., ATTORNEY AT LAW

17                     BAUM HEDLUND ARISTEI GOLDMAN PC
                       12100 Wilshire Blvd. - Suite 950
18                     Los Angeles, California  90025
               BY:     ROBERT BRENT WISNER, ATTORNEY AT LAW
19
     For Plaintiff Emanuel Richard Giglio:
20                     GOMEZ TRIAL ATTORNEYS
                       655 West Broadway - Suite 1700
21                     San Diego, California  92101
               BY:     JOHN H. GOMEZ, ATTORNEY AT LAW
22                     KRISTEN K. BARTON, ATTORNEY AT LAW
23
24
25
```

```
                                                                    3
 1   APPEARANCES:  (CONTINUED)
 2   For Defendant:
                       HOLLINGSWORTH LLP
 3                     1350 I Street NW
                       Washington, D.C.  20005
 4             BY:     KIRBY T. GRIFFIS, ATTORNEY AT LAW
                       ERIC G. LASKER, ATTORNEY AT LAW
 5
                       ARNOLD & PORTER KAYE SCHOLER LLP
 6                     777 S. Figueroa Street - 44th Floor
                       Los Angeles, California  90017
 7             BY:     PAMELA YATES, ATTORNEY AT LAW

 8                     ARNOLD & PORTER KAYE SCHOLER LLP
                       250 West 55th Street
 9                     New York, New York  10019
               BY:     ANDREW K. SOLOW, ATTORNEY AT LAW
10
                       WILKINSON  WALSH ESKOVITZ LLP
11                     2001 M Street, NW - 10th Floor
                       Washington, D.C.  20036
12             BY:     BRIAN L. STEKLOFF, ATTORNEY AT LAW
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                    4
 1   Wednesday - December 5, 2018                         1:36 p.m.
 2                       P R O C E E D I N G S
 3                             ---o0o---
 4          THE CLERK:   Calling Case Numbers 16-md-2741, In Re
 5   Roundup Products Liability Litigation and 16-cv-5658, Giglio
 6   versus Monsanto Company.
 7          Counsel, please step forward and state your appearances
 8   for the record.
 9          MS. WAGSTAFF:   Good afternoon, Your Honor.
10   Aimee Wagstaff on behalf of MDL plaintiffs and plaintiff
11   Giglio.
12          THE COURT:   Good afternoon.
13          MS. GREENWALD:   Good afternoon, Your Honor.  Robin
14   Greenwald for the plaintiffs.
15          MR. MILLER:   Good afternoon, Your Honor.  Michael
16   Miller on behalf of the plaintiffs.
17          THE COURT:   Mr. Miller.
18          If somebody wants to introduce everyone, they're perfectly
19   welcome to.
20          MR. BRAKE:   Good afternoon.  Brian Brake for the
21   plaintiffs.  Pleasure to be here.
22          MR. WOOL:   Good afternoon, Your Honor.  David Wool on
23   behalf of plaintiffs and Mr. Giglio.
24          THE COURT:   Hello.
25          MR. GOMEZ:   Good afternoon, Your Honor.  John Gomez
```

57

1   the EPA documents and, in fact, that was the bulwark of their
2   testimony. So it would be hard to see how it unbuckles.
3       The problem that I would see --
4       THE COURT: Why? I mean, when we did the general
5   causation phase, it seemed to me certainly it came up. You
6   know, certainly it was part of everybody's testimony, but the
7   bulk of the testimony was about the studies themselves. And,
8   you know, we didn't -- and I excluded expert testimony whose
9   methodology was "I adopt the analysis of the IARC"; right? I'm
10  sure you disagree with that, but I excluded it. It would,
11  therefore, be excluded -- such testimony would, therefore, not
12  be admissible at trial.
13      And so I guess I'm thinking back to the testimony that,
14  like, Dr. Ritz provided, Dr. Portier provided, Dr. Mucci
15  provided; and I'm thinking, well, if the EPA and the IARC were
16  off limits to them, they would have given substantially the
17  same testimony.
18      MR. WISNER: Absolutely.
19      THE COURT: Their testimony would not have been that
20  different, and so that makes me wonder why we should be getting
21  into it at all.
22      MR. WISNER: Because the case is not just does this
23  cause cancer. There's a lot more involved in the liability
24  context. And let me give you some very specific examples;
25  right?

58

1       Monsanto's conduct following the IARC monograph or even
2   before it came out is very clear evidence of punitive intent.
3   It shows a desire to manipulate scientists to orchestrate -- I
4   mean, it's our position. I'm sure they disagree. I'm just
5   giving our pitch.
6       And it shows --
7       THE COURT: Hold on. I think I understand all those
8   arguments.
9       MR. WISNER: Okay.
10      THE COURT: So you and I are pretty much on the same
11  page here, but then the question is: Why not bifurcate the
12  trial?
13      MR. WISNER: So --
14      THE COURT: And why not do a punitive damages phase,
15  if necessary, after the jury conducts an inquiry into causation
16  that is not muddied up by all of this stuff that you are
17  talking about right now?
18      MR. WISNER: So there's a couple of important parts of
19  this; right? So, for example, the IARC participation,
20  Dr. Portier is an important part of the cross-examination.
21  They tried to impeach his credibility saying he went there to
22  influence IARC so he wanted to make money as a plaintiffs'
23  lawyer -- expert; right? There's a whole bunch of sideshows
24  that are part of it; but I think the core issue, Your Honor, is
25  this statement.

59

1       THE COURT: Let's assume for the sake of argument that
2   I said you can't cross-examine Dr. Portier about that.
3       MR. WISNER: So this is a statement that's the
4   problem. The first words that will come out in opening
5   statement -- and I know this because this is what happened in
6   the Johnson case -- "Roundup has been on the market for 40
7   years. It has a demonstrated record of safety." And there's
8   so much untruth about that that we have to unpack. We will do
9   that with evidence, but a lot of it involves IARC because what
10  IARC did is it's the change in the narrative.
11      Because every single juror that I've interviewed, and
12  we've done a lot of jury science, they go, "Well, it's been on
13  the market for 40 years. It must be safe." They said the same
14  thing about tobacco. They said the same thing about asbestos.
15      The simple fact is IARC was a game changer; right? It was
16  the first time a group of independent scientists -- this is our
17  viewpoint; you don't have to agree -- looked at it with no dog
18  in the fight and made a decision, and that's why -- and the way
19  they responded to it and the way they generated junk science.
20  Science, by the way, that their experts rely upon; for example,
21  the Intertek manuscripts; for example, these are all sort of
22  integrated into the case.
23      And if we did this sort of hermetic look at just does it
24  generally cause cancer, I think that really creates a lot of
25  problems. We'd have to bring back the experts afterwards. For

60

1   example, Dr. Jameson. He's one of our experts. He's also a
2   fact witness and so is Dr. Portier; right? He was at IARC.
3       And part of his process of understanding the science was
4   the science that he had to do, the discussions he had with his
5   fellow scientists at the IARC monograph program, his in-depth
6   analysis that he's done after the fact looking at the tumors
7   and all the rodent studies. I mean, it's unbelievable the
8   amount of work that he's done. And all of that really is
9   framed around IARC. If it's not, then it looks like he's just
10  out there just doing all this crazy stuff by himself, and he
11  isn't. He's actually joined by hundreds of scientists that
12  support his position.
13      And under California law, the jury instruction
14  specifically contemplates whether or not the science was
15  generally knowable at the time when the warning should have
16  been given. And so that --
17      THE COURT: You're talking about on the issue of
18  punitive damages?
19      MR. WISNER: No. That's just general failure to warn
20  liability.
21      THE COURT: Okay.
22      MR. WISNER: And so the context and quality of the
23  science and whether or not it is supported by an authority is
24  part of the case, and I don't think looking at it in isolation
25  can possibly work or be fair to us or them.

1
2
3           **CERTIFICATE OF REPORTER**
4       I certify that the foregoing is a correct transcript
5   from the record of proceedings in the above-entitled matter.
6
7   DATE:   Saturday, December 8, 2018
8
9
10
11   
12      Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
             U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25