Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, CO  80226
Telephone: (303) 376-6360
Facsimile:  (303) 376-6361

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Telephone: (212) 558-5500
Facsimile:  (212) 344-5461

Michael Miller (*pro hac vice*)
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA  22960
Telephone: (540) 672-4224
Facsimile:  (540) 672-3055

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document relates to:<br>*Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | **PLAINTIFFS' RESPONSE TO MIL NO. 2 RE: "GHOSTWRITING"** |

**PLAINTIFFS' RESPONSE TO MIL NO. 2 "GHOSTWRITING"**

This Court already found issues relating to ghostwriting relevant to, indeed highly probative of, the question whether glyphosate causes non-Hodgkin's lymphoma ("NHL"):

> But the internal e-mails reflect that Monsanto has been ghostwriting reports. And those reports have been portrayed as independent. And you -- I mean, your whole presentation thus far has been about how all the independent science supports a conclusion that glyphosate doesn't cause non-Hodgkin's lymphoma. So, you know, *I don't understand how you could have taken the position that the issue of Monsanto drafting reports for allegedly independent experts on whether glyphosate causes non-Hodgkin's lymphoma could be irrelevant to the question of whether there's evidence that glyphosate causes non-Hodgkin's lymphoma. I just don't understand how you could take that position.*

Exhibit ("Ex.") A at 43:4-16 (emphasis added). Monsanto's counsel has admitted that Monsanto ghostwriting is germane. Ex. A at 46:15-25. And Monsanto's own scientists acknowledge that they have ghostwritten papers that were "invaluable assets to regulatory reviews" and for purposes of "product defense." *See infra.* Monsanto's Motion should be denied.

Because of the relevance of evidence of ghostwriting to the integrity of science,[1] courts routinely deny efforts by defendants to exclude such evidence. *See, e.g., Kammerer v. Wyeth*, 2012 U.S. Dist. LEXIS 10905, at *4 (D. Neb. Jan 31, 2012) (court finds no basis to exclude evidence of Wyeth-supported, ghostwritten literature); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 2011 U.S. Dist. LEXIS 147935, at *25 (S.D. Ill. Dec. 22, 2011) ("[i]n the context of this case and *the issue of adequate warning, in particular,* [evidence of ghostwriting] is particularly relevant for the fact finder to consider with all the other evidence in the case"); *Torkie-Tork v. Wyeth*, 2010 U.S. Dist. LEXIS 121804 at *4 (E.D. Va. Nov. 15, 2010) (ghostwriting "evidence is probative of (i) defendant's failure to warn the medical community of the risks of taking Prempro; (ii) defendant's disregard for such

---

[1] Courts describe ghostwriting as "polluting the scientific literature." *Barton v. Wyeth Pharm., Inc.*, No. 694 EDA 2010, 2012 WL 112613, at *11 (Pa. Super. Ct. Jan. 3, 2012). The World Association of Medical Editors issued this statement regarding ghostwriting: "The integrity of the published record of scientific research depends not only on the validity of the science but also on honesty in authorship." http://www.wame.org/policy-statements.

risks, as that disregard may bear on the appropriateness of punitive damages . . . "); *In Re Seroquel Products Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB2009 WL 223140 at *3 (M.D. Fla. Jan 30, 2009).

Judge Karnow in *Johnson* found Monsanto's ghostwriting germane to the issue of Monsanto's awareness that glyphosate poses a cancer risk (Ex. B):

> The internal correspondence noted by Johnson could support a jury finding that Monsanto has long been aware of the risk that its glyphosate-based herbicides are carcinogenic, and more dangerous than glyphosate in isolation, but has continuously sought to influence the scientific literature to prevent its internal concerns from reaching the public sphere and to bolster its defenses in products liability actions.

Monsanto tries to hide behind its admission of ghostwriting – a term **Monsanto** repeatedly uses in internal emails – by suggesting that its conduct is somehow not ghostwriting, MIL No. 2 at 2, and, even if it is, evidence of ghostwriting is somehow not relevant because the data discussed in the ghostwritten articles comes from studies not conducted by Monsanto. *Id*. at 1. Its arguments are nonsensical. Scientific evidence is developed not only from studies themselves but also from analyses of those studies. Monsanto's argument is nothing more than its concern that its ghostwriting makes the company look bad or suspicious. If or when the underlying facts are presented to the jury, Monsanto will have the opportunity to explain its actions and the jury will decide. But while ghostwriting may impact the jury's view of Monsanto, FRE 403 does not preclude its admission given the importance of the integrity of independent scientific reviews and studies and its highly probative value to the causation question, as well as other trial issues.

Monsanto's employees' contemporaneous language undercuts its argument that ghostwriting is Plaintiffs' "spin." *See* MIL No. 2 at 4. For example, in a February 19, 2015 email, Monsanto's toxicologist William Heydens, writes that Monsanto should ghostwrite an article on the heels of the expected IARC decision:

> A less expensive/more palatable approach might be to involve experts only for the areas of contention, epidemiology and possibly MOA (depending on what comes out of the IARC meeting), and **we ghost-write the Exposure Tox & Genetox sections**. . . . [W]e would be keeping the cost down by **us doing the writing and they would just edit & sign** their names so to speak. Recall **that is how we handled Williams Kroes & Munro, 2000**.

Ex. C at 4.  As Monsanto orchestrated and ghostwrote, the article rejects, *inter alia*, that glyphosate causes direct DNA damage or health risk to humans. The Williams article has been cited hundreds of times in separate journal articles.[2] The email reference to Williams 2000 is also telling, as that ghostwritten article had significant impact on scientific literature.[3] In the 2010 PowerPoint describing Williams as an "invaluable asset", Monsanto notes that it is facing "regulatory reviews" with an increased "focus on claims in the peer-reviewed literature" and that "Williams has served us well in toxicology over the last decade," but they need a "stronger arsenal of robust papers scientific papers." Ex. D, p. 17.  Accordingly, in November 2010 Monsanto starts ghostwriting sections of the Williams (2012) paper, shown by the Donna Farmer email to a listed author:  "Attached is the first 46 pages.  I added a section in genotox... am working on a section for gasiner in the mechanistic section...Also we cut and pasted in summaries of the POEA surfactant studies." Ex. E.  Farmer confirms that her name was removed from the list of authors before it was published. Ex. F, Farmer Depo. 118:22-119:06. The new registration reviews for glyphosate prompted yet another round of ghostwritten articles.  One example, the Kier and Kirkland study was originally written by Monsanto's David Saltmiras as "a valuable resource in future product defense against claims that

---

[2] Citation Report from Google Scholar. https://scholar.google.com/scholar?cites=965770000498629891&as_sdt=5,47&sciodt=0,47&hl=en

[3] Williams (2000) infects the scientific literature.  For example, at the Johnson trial, Monsanto expert Dr. Mucci, also its expert in the MDL, only reviewed the *summary* of studies contained "in the epidemiologic studies in reaching her opinions. Johnson Trial Transcript at 4318:1-5 (7/31/2018), Ex. I.  This is a problem.  Similarly, in De Roos (2003), which shows a statistically significant doubling of the risk of NHL with glyphosate, the results were muted by citation to the Williams (2000) article as evidence that glyphosate is "non-carcinogenic and non-genotoxic." *Id.* at 1888:7-11 (7/12/2018), Ex.  J.

glyphosate is mutagenic or genotoxic." Ex. G. After drafting the manuscript Monsanto felt that it "turned into such a large mess of studies reporting genotoxic effects, that the story as written stretched the limits of credibility among less sophisticated audiences." Ex. H. Therefore, Monsanto concluded that a way to "help enhance credibility is to have an additional author on the papers who is a renowned specialist in the area of genotoxicity. Monsanto chose Dr. David Kirkland as the manuscript author and removed Saltmiras's name. *Id.*

Moreover, even if ghostwriting evidence were not directly related to the science – which it is – it is also admissible to counter Monsanto's statements, through their corporate employees, that Monsanto considers human health a high priority in the development and sale of its products. Evidence of unethical conduct via, *inter alia*, manipulation of scientific publications, is thus relevant and admissible as impeachment evidence. It is also relevant to punitive damages. *In re Prempro Prods. Liab. Litig. (Scroggin v. Wyeth)*, 586 F.3d 547, 557 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3467 (U.S. 2010); *Wyeth v. Rowatt,* 244 P.3d 765, 784 (Nev. 2010), *cert. denied*, 131 S.Ct. 3028 (June 20, 2011) (affirming jury's punitive damages award based, in part, on "Wyeth's strategy to undermine scientific studies linking an increased risk of breast cancer to estrogen-progestin hormone therapy [to] ghostwriting multiple articles.").

There is no doubt that Monsanto's ghostwriting was intended to upend the IARC 2A classification of glyphosate. Our system of justice permits Plaintiffs to present that evidence to the jury to counter Monsanto's defense at trial that glyphosate does not cause cancer generally or the Plaintiffs' NHL specifically. Evidence of Monsanto's ghostwriting goes to the heart of Plaintiffs' case, including causation, and rebuttal of Monsanto's defense.          For the above stated reasons, plaintiffs respectfully request that the Court deny Monsanto's Motion *in limine* No. 2.

Dated: January 30, 2019

Respectfully submitted,

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003

/s/ Aimee Wagstaff
Aimee Wagstaff
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood, CO 80226

/s/ Mike Miller
Michael Miller (*pro hac vice*)
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960

*Co-Lead Counsel for Plaintiffs
in MDL No. 2741*

### CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com