# EXHIBIT 2

**45-SEP Trial 24**

**Trial**
September, 2009

**Damage**
David Ball [a1]

Copyright © 2009 by the American Association for Justice; David Ball

# DAMAGES AND THE REPTILIAN BRAIN

*The 'reptilian brain' governs our survival responses. Tort 'reformers' have long used these responses dishonestly to their advantage. This introduction to a new kind of advocacy will help you show jurors that the real danger is from the defendant's misconduct.*

**F**or nearly four years, three attorneys--Don Keenan of Atlanta; James Fitzgerald of Cheyenne, Wyoming; and Gary Johnson of Pikeville, Kentucky--and I have been investigating a part of the brain neuroscientists call the R-complex, or "reptilian," brain and how it affects the kinds of decisions jurors are called on to make.

Our impetus came from a beach where Don Keenan has a home. Soon after moving in, Don discovered that his next-door neighbor is Karl Rove, one of the plaintiff bar's archenemies. During what Rove probably thought was casual conversation, Keenan got him talking about persuasion. Rove particularly praised the work of marketing guru Clotaire Rapaille. [1]

Soon after hearing about Rapaille, Keenan propelled us into the adventure of our lives. It took us through evolutionary science, neuroscience, and an extensive series of participant-centered research projects across the country.

We began, as good research demands, with deep skepticism. And we had reason for skepticism: Although Rapaille and other marketers had long demonstrated that enlisting the reptilian brain is marketing's most persuasive tool, and although Karl Rove and company are only the latest in a line of persuaders who have empirically proved the principle over thousands of years, marketers need to persuade only a few percent of the population. And political persuaders such as Rove need only a bare majority.

But trial lawyers need to persuade 75 percent to 100 percent of the jurors in a case. Could the reptilian brain get us there? The mere possibility seemed worth the effort of finding out.

Rapaille's techniques provided our starting point. They derive from the work of National Institute of Mental Health neuroscientist Paul MacLean, who developed the concept of the three-part (triune) brain in humans. MacLean called the most primitive part "reptilian" because it is identical to the full brain of modern reptiles. [2]

The reptilian part of the brain--which my colleagues and I simply and affectionately call "the reptile"--runs our autonomic life functions. She (an arbitrarily chosen pronoun) creates, directs, and motivates our survival drives, such as hunger, sex, and danger **\*25** avoidance. She has no emotion, thought, or memory but enlists those services from other parts of the brain to fight for your--and your genes'--survival chances.

Whenever anything can potentially affect those chances of survival--even a little--this most primitive thing in your head grabs full control of the entire brain. This includes control of your logical, emotional, and other decision-making resources. As soon as a survival danger crops up, the reptile rearranges the brain's priorities, placing the reptile's only concern--survival--on top.

Lineages in which survival concerns took a lower priority could not have survived the unforgiving macro and micro forces of evolution.[3] Lions' primary survival traits are claws. Cheetahs: speed. Skunks: big stink. Humans: the ability to make decisions using complex input and abstract analysis. This is how we survived eons of precipitously changing environments and hungry creatures stronger and faster than us.

The human brain can perceive, store, gather, weigh, and analyze information. Those sophisticated IT functions enable the reptile to select the safest available decision, which she'll then force us into.

We like to believe that we base our decisions on rationality and logic. Sorry. Logic is but a fragment of our brains' functioning. It controls little.

When it comes to survival, logic is subservient to the reptile. When the two conflict, logic either adapts to the reptile's needs or is ignored. When people make survival-related decisions, they obey the reptile--not logic, emotion, intuition, or abstract notions such as justice.

And the reptile's imperative is that safer--even just a little safer--is the only acceptable choice.

**Enlisting the reptile**

Not only rock-solid logic but also facts, stories, bias-battling, pleas for justice, emotion, and speaking eloquence all are easily defeated unless you get the reptile on your side. To do that, you need to show the reptile two things.

First, you need to show that the reptile is in danger. When she detects a survival danger, the reptile protects her genes by impelling the juror to protect himself or herself and the community.

In your case, the defendant's misconduct represents a danger that connects to the juror and his or her family.

The second thing you need to show the reptile is that a full and fair damages verdict will diminish the danger for the juror and his or her family--that the proper verdict will enhance community safety by discouraging that kind of dangerous behavior and, conversely, that an improper verdict will not only allow but also encourage it.

The result: The reptile sees a proper damages verdict as her best available choice for survival, *even if it affects her survival by only a very small amount*. So the reptile helps us in "small" cases as much as she does in "large" ones.

Our research has shown

• the source of antiplaintiff attitudes and biases and how to remove them from the decision-making process

• how to develop new and effective litigation and advocacy techniques the defense cannot fight

• why reptilian trial advocacy throws out little of what you already do. Instead, it focuses and redirects you, like adding a telescopic laser-sight to a rifle.

For just one example, our research revealed that showing physical pain as an element of damages is nowhere near as effective as showing how the injury has interfered with mobility and resulted in loneliness and isolation. This is because over the course of evolution, pain actually helps us survive, while lack of mobility and being alone are among the leading causes of death.

We usually feel sorry for other people's physical pain, but we never actually feel their pain. In contrast, we often share the specific feeling of someone's impaired mobility (can't get home or can't escape danger, for example) or loneliness (a lover leaves or dies, the good guy becomes a social outcast, or someone faces the rest of his or her life alone). Shared feeling is immeasurably stronger than feeling sorry, and the two derive from very different parts of the brain.

Remember this when you're researching and framing your next case. This principle is basic to plays and movies (few center on physical pain) and should be to trials as well.

Reptilian techniques--dishonestly and cynically deployed--are almost alone responsible for the sickening success of tort "reform" in courtrooms and legislatures. The tort "reform" campaign has persuaded a third of the public-- and that proportion is growing--that lawsuits and trial lawyers endanger every family's medical care, jobs, and safety. These are survival dangers. So until you get the reptile on your side, she will implacably drive the juror to fight you.

Years ago, the work of David Wenner and Gregory Cusimano confirmed that a number of common biases hurt our cases. [4] For example, many jurors blame our clients for failing in their personal responsibility, as in, "She should have gotten a second opinion." We have found ways to partly offset this bias, such as by talking about corporate accountability instead.

But even when this works, the tort-"reformed" reptile simply substitutes a different bias or some other equally effective motivating force to control the *26 juror's decision. As Rapaille says, the reptile never loses. She will instantly deploy five other biases, attitudes, misperceptions, and fears for each one you counter.

Fortunately, the reptile deploys those weapons against you only when she considers a verdict for your side to be a threat to her. As soon as she perceives that a defense verdict would cause a greater or more immediate threat, she deactivates those weapons.

This is true even about experience-based and situation-based attitudes, the deepest of feelings, and core values. The reptile deploys such things only when they help her. She abandons them when they don't. They are not continual conditions like hunger.

After all, the reptile did not survive evolution by allowing attitudes, biases, and core values to interfere with her survival. To the reptile, the only core value is survival, and it trumps everything else.

This is why tort-"reformed" jurors can love *Erin Brockovich*. It's why a white supremacist forgets his racism when he and a black man need each other to get themselves out of danger (as dramatized in *The Defiant Ones*). The racism is not cured; it is merely suspended when it interferes with survival.

Understand this clearly: An attitude, bias, or core value (even the drive for justice) exists solely as a defense mechanism. When it can interfere with survival, the reptile drops it like a hot potato. We saw this surprising phenomenon in session after session of our research, and now we have been seeing it in trial after trial.

**Revealing danger**

At the heart of all this lies fear. Without tort "reform" having profoundly scared a third of the jury pool about their own survival issues, the second-rate defense "experts" and defense lawyers with bogus cases would not so easily outdo excellent plaintiff lawyers with good cases and highly respected experts. Verdicts would be full and fair, not tokens.

But unlike the purveyors of tort "reform," we have truth on our side. For example, here's one of an endless number of truths we can make effective reptilian use of: The national death rate from medical error is 15 times higher than the national murder rate, vastly outweighing the supposed survival dangers the tort "reform" movement has fabricated.[5] Obviously, knowledge of this fact would influence what the reptile would do in a med-mal case.

Without violating the "golden rule" stricture, reptilian advocacy shows that the kind of misconduct that hurt your client is an immediate and ongoing danger to the juror--a danger that can be diminished by a full and fair verdict. The plaintiff's use of the reptile in this way is exclusive, because the defense has no way to offer refuge from immediate or ongoing danger. In every case, we--and only we--can. And to the reptile, immediate dangers always trump midterm and long-term dangers, including those fabricated by tort "reformers."

Once you have enlisted the reptile to your side, the defense has only one practical tactic: attempting to make the judge prevent you from using reptilian methods. For example, some venues in Florida bar community-safety arguments. In such circumstances, you can simply refrain from being explicit, or you can shift to other, equally effective reptilian techniques.

One focus of our ongoing research is to expand the arsenal of admissible reptilian techniques. So, for example, our adaptations of Rick Friedman's and Pat Malone's landmark *Rules of the Road*[6] provide the basis of one approach (even in stipulated negligence cases) to use the reptile without transgressing local limitations. Properly used, the rules will implicitly and easily elevate defendant error or mistake to a rule violation that endangers the community.

We call one primary technique "spreading the tentacles of danger." This technique closely connects the defendant's dangerous conduct to each juror. It keeps jurors from seeing the danger as relevant only to other people. Your client's injuries become the concrete manifestation of the community danger represented by the defendant's violation. The injuries show the jury that such a danger is among us.

Here are a couple of ways to spread the tentacles of danger:

> **Q:** Dr. My Expert, not everyone has experience with childbirth. Could you please explain how violating the rule that the defendant violated in the delivery room is a dangerous way to practice medicine?

> **\*27 A:** Let me explain by using the example of an older person reporting chest pains to the emergency room staff .... [Then have the expert provide examples of how the rule works in additional areas of medicine. This makes the danger a community danger, rather than just a danger to babies and mothers during childbirth.[7]

Or:

> **Q:** Mr. Driver's Ed Teacher, the defense told the jury that a low-speed crash can't cause serious harm. What do you teach your students about that?

**A:** I show them the state's statistics of how many people in cars are permanently injured every year in collisions at speeds under 12 mph. And I explain that the same impact could easily maim or kill pedestrians, and it does all the time.

This helps show that low-speed collisions cause harm to people in cars and that everyone is at lethal risk from low-speed impact. So violating the rule requiring drivers to see what is there to be seen is a community menace. This impels the reptile to use fair compensation to protect herself, even when you are not allowed to make that explicit argument.

Examples for closing: "It's up to you to decide how far someone has to go in breaking the community's safety rules before you--as the community's representatives--decide he must pay full and fair compensation for the harm he's done."

Or (where allowed): "If you give this defendant a pass for what he did, what do you think will happen next? What will others do in this community when they see what this defendant got away with?"

Raleigh attorney and Duke law professor Donald Beskind points out that almost every venue has a case specifying that public-policy tort law expresses, at least in part, the social need for community safety. This is precisely why the reptile is our ally.

And here is how the reptile and the law are in total agreement: No one exercising ordinary care needlessly endangers anyone. It is not prudent to needlessly endanger. For the same reason, there is no such thing as a standard of care that needlessly endangers. Jurors insist on this, and so does the law.

Even the defense has to agree.

So to both the law and the reptile, the only acceptable choice for any particular goal is the available choice that carries the least unnecessary danger. The second-safest choice, no matter how safe, is negligent, because it carries more danger than the safest. When there's a safer way, any danger is needless.

That is the imperative by which our species (and our laws) evolved and survived. So when a defendant claims that his or her second-safest choice was "safe enough," your proper use of the law in this way should give you a strong negligence win, along with the impetus for a fair verdict.

This is just one of the many reptilian techniques that totally alter the playing field.

Once you have mastered reptilian advocacy, every case--even the smallest-- becomes important to the reptile, whose only priority is survival. The reptile will have no survival reason to buy into bogus testimony from independent medical examiners, to deploy antiplaintiff attitudes, or to do anything else that has been blocking your client's path to full justice. The shaky hat pegs on which the defense hangs its theories fail because they no longer offer the juror safety.

Instead, safety will lie solely in a full and fair verdict.

We've all been through the long night of tort "reform" together. Now, working together, we are speaking truth to power in ways that power cannot survive. In a democracy, that is the very definition of justice.

**How to learn more**

The substantial repertoire of reptilian methods is expanding almost daily from our continuing research and new ideas being shared with us by trial lawyers. Here's how you can learn more and be part of the development of new reptilian strategies.

• Read the book I wrote with Don Keenan, *Reptile: The 2009 Manual of the Plaintiffs' Revolution* (Balloon Press 2009).

• Log on to www.ResearchExchangePartners.com. Rick Friedman, Don Keenan, and I--along with Gary Johnson, Jim Fitzgerald, Debra Miller, and Artemis Malekpour--will bring you into the process and keep you up to date on new developments, strategies, and trial experiences.

Many of AAJ's finest trial lawyers are already involved. We want you to participate, too, so that we can all share in this new advocacy's development.

David Ball

Footnotes

| | |
|---|---|
| a1 | DAVID BALL *is a jury researcher and trial consultant in the Durham, North Carolina, trial consulting firm of Miller Malekpour & Ball*. Reptile: The 2009 Manual of the Plaintiffs' Revolution, *by Ball and Don Keenan, was released recently by Balloon Press. Ball is also the author of* David Ball on Damages: The Essential Update (*2d ed., Natl. Inst. Tr. Advoc. 2005*), *which will soon be in its third edition*. |
| 1 | *See e.g.* Clotaire Rapaille, *The Culture Code* (Broadway Books 2007). |
| 2 | Paul D. MacLean, *The Triune Brain in Evolution: Role in Paleocerebral Functions* (Springer 1990). |
| 3 | *See* George C. Williams, *Adaptation and Natural Selection* (Princeton U. Press 1967); Richard Dawkins, *The Selfish Gene* (Oxford U. Press 2006). If you prefer, instead of evolution, you can think in terms of intelligent design, as long as you understand my explanation of the nature of the design. |
| 4 | Wenner and Cusimano created the Jury Bias Model. *See* www.jurybias.com. |
| 5 | *See* FBI, *Uniform Crime Reports*, www.fbi.gov/ucr/ucr.htm; HealthGrades, Inc., *Fourth Annual Patient Safety in American Hospitals Study* (2007), www.healthgrades.com/media/DMS/pdf/PatientSafetyInAmericanHospitalsStudy200. |
| 6 | Rick Friedman & Patrick Malone, *Rules of the Road* (Trial Guides 2007). This book is required reading for every plaintiff attorney--in business, intellectual property, and every other area. See also my and Don Keenan's extension of it in *Reptile: The 2009 Manual of the Plaintiffs' Revolution* ch. 6 (Balloon Press 2009). |
| 7 | You need not make an overt community safety argument for this technique to be effective. You are simply educating jurors about how the danger works by analogy to situations they are more familiar with. Analogy is always an acceptable means of explaining concepts. |

45-SEP JTLATRIAL 24

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.