**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY  10003
Tel: (212) 558-5802
Fax:  (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' OPPOSITION TO MONSANTO COMPANY'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING PROPOSITION 65** |
| *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC *Gebeyehou v. Monsanto Co., et al.,* 3:16-cv-5813-VC | |

1

**INTRODUCTION**

For similar reasons that IARC is relevant to Phase 1 because it supports Plaintiffs' experts' opinions, California's listing of glyphosate as a chemical known to the state to cause cancer pursuant to the mandate of Proposition 65 ("Prop 65") is relevant for reinforcing the credibility of IARC.[1] As discussed below, the state relies on IARC for the initial Prop 65 listing of a chemical because the state considers IARC to be the foremost authority on the identification of potentially carcinogenic substances. And, as Judge Curtis Karnow recognized in taking judicial notice of Prop 65 in the JCCP, the listing also lends weight to the credibility of Plaintiffs' experts' opinion to the extent that they also considered the importance of IARC in reaching their independent causation conclusions.

However, contrary to Monsanto's inaccurate assertions, Prop 65 is more than just an automatic listing mechanism that goes into effect as soon as IARC classifies a chemical. Following the Prop 65 listing of glyphosate, the California Office of Environmental Health Hazard Assessment ("OEHHA") developed a No Significant Risk Level ("NSRL") for glyphosate after independently evaluating the underlying literature considered by IARC and applying a methodology of comparable scientific standard to that of IARC. Notably, OEHHA concluded, although it was not required to, that the mouse data demonstrated a significant positive trend in tumor incidence and also agreed with IARC's conclusion regarding the genotoxic potential of GBFs. To be sure, this lends weight to the reliability of not just IARC, but some of the very data considered by Plaintiffs' experts pre-dating the IARC classification.

Prop 65 is equally relevant to Phase 2, namely for the jury's assessment of punitive damages. During the liability portion of trial, Plaintiffs will introduce evidence evincing Monsanto's efforts to "invalidate the relevance of IARC" as a means to defending against a potential Prop 65 listing. As discussed below, and as recognized by Judge Karnow, such evidence may form the basis for a jury's conclusion that Monsanto sought to influence the scientific literature and regulatory process for the purposes of defending against prospective products liability lawsuits.

---

[1] Plaintiffs do not intend to offer evidence or argument regarding the warning requirement of Prop 65.

Evidence regarding Prop 65 also provides a counterweight to Monsanto's rote mantra that IARC is an outlier with no regulatory support. If Monsanto is permitted to argue to the jury that the EPA, EFSA, and Health Canada all disagree with IARC, Plaintiffs should be permitted to shore up the credibility of the IARC classification by introducing evidence of the state of California recognizing the prestige and reliability of the IARC process on an issue that is in dispute.

## BACKGROUND

In November 1986, California voters overwhelmingly adopted Proposition 65, the Safe Drinking Water and Toxic Enforcement Act (Prop 65). *See* Cal. Health & Safety Code §§ 25249.5-6. Prop 65's warning requirement and discharge prohibition are only triggered after a chemical is added to a list of chemicals "known to the state to cause cancer or reproductive toxicity." The list is to be established by California's Governor, administratively represented by OEHHA. The law established four distinct procedures for adding chemicals to the list.[2] At a minimum, the list must include substances already identified as carcinogens by the National Toxicology Program (NTP) and IARC. *Id*. § 25249.8(a). Additionally, under the "Authoritative Bodies" process, the State's qualified experts are authorized to designate regulatory agencies or scientific organizations they consider authoritative on carcinogenesis or reproductive toxicity. *Id*. § 25249.8(b). IARC is incorporated into the Prop 65 listing by both the Labor Code and Authoritative Bodies procedures. Glyphosate's addition to the Prop 65 list was triggered by the 2015 IARC decision.[3] Monsanto attempted, albeit unsuccessfully in federal district court, California superior court, the Court of Appeals, and the California Supreme Court, to stop the listing.[4] Accordingly, glyphosate was added to the Prop 65 list effective July 7, 2017.[5]

---

[2] *See* https://oehha.ca.gov/proposition-65/how-chemicals-are-added-proposition-65-list.
[3] https://oehha.ca.gov/proposition-65/crnr/notice-intent-list-tetrachlorvinphos-parathionmalathion-glyphosate.
[4] *See Monsanto Co. v. Office of Environmental Health Hazard Assessment*, 22 Cal.App.5th 534 (2018) *review denied* (Aug. 15, 2018). In *Nat'l Ass'n of Wheat Growers v. Zeise*, a federal court held that Monsanto has "not shown a likelihood of success on the merits of their claim that the listing of glyphosate violates the First Amendment." No. CV 2:17-2401 WBS EFB, 2018 WL 1071168, at *5 (E.D. Cal. Feb. 26, 2018). The federal court only granted an injunction with respect to specific language required in the warning and did not hear or consider any qualified expert testimony.
[5] https://oehha.ca.gov/proposition-65/crnr/glyphosate-listed-effective-july-7-2017-known-statecalifornia-cause-cancer.

3

PLAINTIFFS' OPPOSITION TO MONSANTO MOTION IN *LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING PROPOSITION 65

## ARGUMENT

**I.  Prop 65 is Relevant to Phase 1 Because it Lends Weight to the IARC Classification and the Opinions of Plaintiffs' Experts.**

As explained in Plaintiffs' opposition to Monsanto's Motion *in Limine* No. 1, IARC is relevant to Phase 1, in part, because it supports the opinions of Plaintiffs' experts. And, as Judge Karnow noted in taking judicial notice of Prop 65 when denying Monsanto's summary judgment motion in *Johnson v. Monsanto*, Prop 65 "bolster[s] *Johnson's* experts to the extent they, like the state of California, give weight to IARC's determination that glyphosate is a probable carcinogen…" Ex. 1, Johnson *Sargon* Order at 3. Thus, contrary to Monsanto's argument, Prop 65 would not be proffered to prove causation. Instead, the legislative mandate of the state of California to identify carcinogenic chemicals based on IARC's classification—due to the agency's scientific prestige—lends weight to the credibility of IARC, and importantly, shores up the bases for the opinions of Plaintiffs' experts.

Moreover, Monsanto pays lip service to the fact that, in determining the appropriate NSRL for glyphosate, OEHHA conducted an exhaustive, *independent* analysis of the underlying data considered by IARC, with the reasons for OEHHA's conclusions published in a 48-page memorandum.[6] Per statute, OEHHA's glyphosate NSRL development process was required to use comparable scientific *methods* as those employed by IARC in identifying glyphosate as a probable carcinogen.[7] IARC itself does not develop NSRLs. The scientific process for developing an NSRL has two components: cancer potency estimation and risk-specific intake level calculation. OEHHA's Initial Statement of Reasons documents how the significant decisions in each of these components were made independently by OEHHA staff in accordance with established California regulatory guidance.[8] Significantly, after reviewing the underlying animal bioassays and genotoxicity studies,

---

[6] https://oehha.ca.gov/media/downloads/crnr/glyphosatensrlfsor041018.pdf.
[7] Cal. Code Regs. tit. 27, § 25701 (NSRLs "shall be based on evidence and standards of comparable scientific validity to the evidence and standards which form the scientific basis for the listing of the chemical as known to the state to cause cancer.").
[8] https://oehha.ca.gov/media/downloads/public-information/press-release-proposition-65/glyphosatepress032817.pdf.

OEHHA concluded that the results exhibited a significant positive trend in tumor incidence, no data were available to suggest glyphosate's mechanism of action was not relevant to humans, and agreed with IARC that the genotoxic evidence is "strong." [9] Thus, Monsanto is factually incorrect in implying that 1) the entire Prop 65 mechanism is "ministerial"; and 2) asserting that OEHHA's NSRL is merely a "safe harbor" which does not reflect a cancer risk. *See* Mtn. at 3, n. 3. Indeed, the glyphosate NSRL was specifically designed to identify a threshold—1100 micrograms per day—above which there *is* an increased risk of cancer.

OEHHA's reliance on IARC for the initial Prop 65 listing of glyphosate, and subsequent independent review of the underlying data considered by IARC, using comparable standards as that employed by IARC in developing the glyphosate NSRL, are facts which strengthen the credibility of IARC's scientific process and classification, a piece of evidence relied upon by Plaintiffs' experts as part of reaching their causation opinions. Monsanto is free to challenge the basis of the initial Prop 65 listing—IARC—as it is bound to do through the cross-examination of Plaintiffs' experts. However, Plaintiffs should be permitted to shore up the credibility of IARC, and the grounds for Plaintiffs' experts' opinion, by proffering evidence that a state government considers IARC sufficiently authoritative to rely on the agency's process and judgment. Any ostensible risk of the jury considering the Prop 65 listing as evidence of causation can easily be mitigated with a limiting instruction and appropriate admonishments by the Court.

**II.     The Prop 65 Listing Does Not Post-Date Plaintiffs' Exposure to GBFs.**

The crux of Monsanto's argument has been that Prop 65 is irrelevant because it was a ministerial act based on the 2015 IARC classification. Yet, Monsanto proceeds to assert that the Prop 65 decision post-dates Plaintiffs' exposure because the listing was not made final until 2017 due to Monsanto holding up the agency in litigation for two years, litigation which Monsanto ultimately lost. This is a complete red-herring argument of form over substance. What matters is that the initial

---

[9] Cal EPA, Office of Environmental Health Hazard Assessment. Final Statement of Reasons – Title 27, California Code of Regulations – Section 25705(b) Specific Regulatory Levels Posing No Significant Risk – Glyphosate. (2018) at 9, 7, 23, available at https://oehha.ca.gov/media/downloads/crnr/glyphosatensrlfsor041018.pdf.

listing *decision* was based on the 2015 IARC classification (which Monsanto does not dispute), a decision which, as discussed above, is relevant for supporting the credibility of IARC's classification and reinforcing the fact Plaintiffs' experts' employed generally accepted and reliable methodologies.[10]  Monsanto's arguments are meritless and should be put aside.

**III.    Prop 65 is Relevant for Rebutting Monsanto's Reliance on Regulatory Decisions and Phase 2 Issues Such as Punitive Damages.[11]**

It would be highly prejudicial to allow Monsanto to present evidence of EPA or Health Canada to argue that IARC is an outlier with no regulatory support, yet preclude Plaintiffs from presenting California's position on IARC to a California federal jury.  Additionally, delving into the complicated procedures of an agency such as ECHA, for which Monsanto has no sponsoring witness, would create more of a sideshow than presenting the argument that the state of California considers IARC sufficiently authoritative so as to rely upon IARC's process for identifying carcinogens.

That said, Prop 65 is probative of the punitive damages inquiry of Phase 2.  Evidence will be proffered during Phase 2 indicating that Monsanto attempted to "invalidate the relevance" of IARC for purposes of defending against a Prop 65 listing.  *See*, *e.g*., Ex. 2, MONGLY03316369 at *1; Ex. 3, MONGLY01228576 at 2.  As Judge Karnow recognized with a nod towards the jury instructions on punitive damages, such evidence "could support a jury finding that Monsanto…has continuously sought to influence the scientific literature to prevent its internal concerns from reaching the public sphere and to bolster its defenses in products liability actions." Ex. 1, Johnson *Sargon* Order at 45.  By invalidating IARC, Monsanto also sought to prevent California from listing glyphosate as a carcinogen.  The jury should be presented with a complete picture of the evidence for assessing the extent to which Monsanto sought to preemptively influence the scientific and regulatory process with an eye towards defending against litigation.[12]

---

[10] And, as discussed above, the subsequent glyphosate NSRL was based on an independent evaluation of literature and data preceding the IARC decision.
[11] Plaintiffs are currently in the process of obtaining deposition testimony from Monsanto on the issue of Prop 65.  The Court may be guided by this discovery before ruling on the Prop 65 motion *in limine*.
[12] Lastly, unless Monsanto opens the door, Plaintiffs will not present evidence or argument regarding Monsanto's lawsuits against OEHHA to stop the Prop 65 listing.

## CONCLUSION

For the foregoing reasons, the Court should deny Monsanto's request to exclude any evidence, argument, or reference to Proposition 65.

Dated: 1/30/2019

Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com

PLAINTIFFS' OPPOSITION TO MONSANTO MOTION IN *LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING PROPOSITION 65