# EXHIBIT 1

```
 1        SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                 COUNTY OF SAN FRANCISCO
 3
 4   DEWAYNE JOHNSON,
 5            Plaintiff,
 6   vs.                          Case No. CGC-16-550128
 7   MONSANTO COMPANY, et al.,
 8            Defendants.
 9   _____
10
11                       VOLUME II
12
13      Proceedings June 20, 2018, at 10:22 a.m.
14   before the Honorable Suzanne R. Bolanos.
15
16
17
18
19
20
21
22
23   REPORTED BY:
24   Mary Hogan, CSR No. 05386
25
```

Page 86

```
 1   APPEARANCES:
 2
 3   For the Plaintiff:
 4          MICHAEL L. BAUM, ESQ.
 5          R. BRENT WISNER, ESQ.
 6          PEDRAM ESFANDIARY, ESQ.
 7          BAUM, HEDLUND, ARISTEI, GOLDMAN PC
 8          12100 Wilshire Boulevard, Suite 950
 9          Los Angeles, CA   90025
10          310-207-3233
11
12          DAVID DICKENS, ESQ.
13          TIMOTHY LITZENBURG, ESQ.
14          THE MILLER FIRM, LLC
15          108 Railroad Avenue
16          Orange, VA   22960
17          540-672-4224
18
19          MARK BURTON, ESQ.
20          AUDET & PARTNERS
21          711 Van Ness Avenue, Suite 500
22          San Francisco, CA   94102
23          415-568-2555
24
25
```

Page 87

```
 1
 2   For the Defendant:
 3           SANDRA A. EDWARDS, ESQ.
 4           FARELLA BRAUN + MARTEL LLP
 5           235 Montgomery Street
 6           San Francisco, CA  94104
 7           415-954-4400
 8
 9           GEORGE C. LOMBARDI, ESQ.
10           JAMES M. HILMERT, ESQ.
11           WINSTON & STRAWN LLP
12           35 West Wacker Drive
13           Chicago, IL  60601
14           312-558-5969
15
16           KIRBY T. GRIFFIS, ESQ.
17           GRANT HOLLINGSWORTH, ESQ.
18           HOLLINGSWORTH LLP
19           1350 I Street, N.W.
20           Washington, DC  20005
21           202-898-5800
22
23
24
25
```

```
 1   thinking actually is very similar to what Judge
 2   Karnow's thinking is, at least based on my review
 3   of the transcript of the discussion in front of
 4   him.
 5              I think the statement is potentially
 6   relevant and comes in as a party admission to the
 7   hearsay exception so the motion here is denied.
 8              All right.  Turning to motion in
 9   limine Number 13, this is Defendant's motion to
10   exclude introduction, argument or reference to the
11   Seralini study and any information therein.
12              So my first question, I understand the
13   Seralini study was published and then retracted
14   and then it was published some place else.
15              I understand that at least one of -- I
16   know the Defense experts are critical of the
17   study, I think at least one of the Plaintiff's
18   experts is critical of the study, but let me start
19   by asking Plaintiff's, are there any experts who
20   are going to testify that they relied on the
21   Seralini study in reaching their conclusions?
22              MR. WISNER:  Yes, Your Honor.
23              THE COURT:  Who's that?
24              MR. WISNER:  At the very least,
25   Dr. Benbrook is going to discuss it.  It goes to
```

```
 1   the scientific information that was available at
 2   the time.
 3               THE COURT:  Dr. Benbrook is your
 4   expert that's going to talk about the EPA
 5   regulatory framework and the process --
 6               MR. WISNER:  That's right.
 7               THE COURT:  -- that a company goes
 8   through in getting products approved, et cetera?
 9               MR. WISNER:  That's right.
10               THE COURT:  What exactly is he going
11   to say about the Seralini study?
12               MR. WISNER:  It not entirely clear
13   yet.  We need to kind of work through that with
14   our expert, how it would come in.
15               Where this testimony will come in is
16   actually in the depositions, video testimony of
17   Monsanto's employees who helped orchestrate the
18   retraction of the Seralini study through ghost
19   writing letters to the editor and working with
20   paid consultants to pressure the editor.  That's
21   where this all comes in.
22               It really doesn't come in from an
23   expert perspective, it's coming in from the
24   context of Monsanto's conduct specifically to
25   attack a scientist that published a peer review
```

Page 132

1   journal article showing that when you use the
2   formulated product in mice it causes severe
3   tumors.
4              And so the quality of the scientific
5   study itself is not really the issue of why it's
6   relevant, but the issue is primarily how Monsanto
7   responded to the scientific study and the conduct
8   that it did that was against, quite frankly,
9   ethical norms of any chemical or scientific
10  contributor.
11             THE COURT:  Except that with regard to
12  this particular study, isn't it true that the
13  experts on both sides agree that it is not a valid
14  study?
15             MR. WISNER:  That's not correct,
16  Your Honor.
17             Dr. Portier, one of our experts, has
18  been critical of it, but our other experts have
19  cited it.
20             It is a piece of evidence in the
21  overall scope and body of science.
22             Sure, it gets less weight due to some
23  of the problems with the study, but in and of
24  itself it is a peer review journal article that
25  has been approved twice now by two different

```
 1   journals and submitted for publication.
 2              THE COURT:  The one journal that
 3   approved it retracted it so it's really only
 4   approved by one journal.
 5              MR. WISNER:  Well, it was originally
 6   approved by a journal and then after Monsanto had
 7   its paid consultants exert pressure on the
 8   journal's editor did it get retracted, and that's
 9   actually the really relevant story.  It's how
10   Monsanto deals with negative scientific
11   information.
12              One of the things you're going to hear
13   about in the testimony, Your Honor, is something
14   called let nothing go.  It's actually a budgetary
15   line item on their marketing and science budget,
16   and it's to attack any scientist that says
17   anything bad about glyphosate or Roundup,
18   irrespective of whether or not the science the
19   valid.
20              Obviously, they are going to say
21   that's my spin.  And fair enough, I'm a lawyer, I
22   guess I do spin, but we have the documents and the
23   evidence showing that.
24              That's where the Seralini comes into
25   play.  It's not so much being used as a scientific
```

Page 134

1   study, although, it is, part of it, but it's not
2   really the purpose.
3              Where the objection is coming into is
4   the back story of how Monsanto and its employees
5   orchestrated outright.  Just for Your Honor's
6   information, Seralini sued them in France for this
7   conduct and won.
8              So this is not like some, you know,
9   off the wall thing.  It shows punitive conduct and
10  shows a company that really has no interest in
11  testing and where there is things showing a signal
12  they played the whack-a-mole, I believe is the
13  quote in the emails.
14             THE COURT:  Who wishes to respond?
15             MR. GRIFFIS:  I do.
16             THE COURT:  I'm sorry, Counsel.  Are
17  you Mr. Hilmert?
18             MR. GRIFFIS:  I am Kirby Griffis.
19  Seralini study has been universally canned.  I
20  know of no science expert who accepts it as
21  reliable for any proposition whatsoever.
22             Dr. Benbrook, who has a Ph.D. in
23  economics and not in any scientific field, he's no
24  scientist, said that it did not meet antigenicity
25  requirements, so it doesn't meet the standards for

Page 135

1  a study that can be considered by regulators in
2  considering whether cariogenicity exists.
3              Even Dr. Benbrook doesn't rely on it
4  for science in any way.
5              Dr. Portier said it's underpowered,
6  poorly presented, and poorly analyzed.  That's a
7  quote from the Daubert hearing.
8              Working Group 112 of IARC rejected it.
9  They said it's inadequate for evaluation.
10             And we have similar statements from
11 European regulators, from EPA, from everybody
12 who's considered it.  Nobody thinks this study is
13 any good.
14             So I welcome what I think I heard from
15 Mr. Wisner, that they don't intend to actually put
16 in the study as -- for its scientific merits.
17             One problem with the study is it
18 includes a lot of sensationalist pictures of rats
19 with tumors.  That's not something you ordinarily
20 do in an antigenicity study, and the reason that
21 you don't is the pictures of rats with tumors
22 prove nothing.
23             The control animals, you are going to
24 have animals with tumors and animals in various
25 exposure groups are going to have animals with

1  tumors, and that's if you're testing a completely
2  benign substance.
3              What matters is sophisticated
4  statistical analyses of where those tumors are,
5  how consistently tumors are distributed across
6  multiple animal studies in male and female rats,
7  across species, across tests, et cetera, not
8  here's a picture of a rat with a tumor, which is
9  the sort of import of this study.
10             So we certainly think that there
11 should be no showing of the study or the pictures
12 therein.
13             As to Monsanto's actions with regard
14 to this study, we feel that they are irrelevant,
15 Your Honor.
16             This study is not something that has
17 any connection to Mr. Johnson.  It's no evidence
18 in anyone's view, and therefore, any actions that
19 Monsanto is supposed, with or without a spin, to
20 have taken with regard to it has no connection to
21 Mr. Johnson's injury.
22             It's a huge rabbit hole we could all
23 get into and spend a lot of time fighting about
24 but it shouldn't be in this case.  It's a waste of
25 time.

1               There is other evidence that actually
2    does have scientific merit that we can be debating
3    instead.
4               THE COURT:  Okay. so Mr. Wisner, it
5    sounds like you are not proposing to bring this
6    study in for any scientific -- to promote any
7    scientific argument.
8               None of your experts are going to say,
9    I relied on all of these studies including the
10   Seralini study to reach my conclusion that
11   Mr. Johnson's exposure to the Roundup led to his
12   cancer or was a substantial factor in developing
13   the cancer?
14              MR. WISNER:  That's correct
15   Your Honor.
16              THE COURT:  So it's not coming in for
17   the scientific findings of the study?
18              MR. WISNER:  That's correct.
19              THE COURT:  You are only seeking to
20   essentially talk about or introduce into evidence
21   Monsanto's actions in response to the study once
22   it came out?
23              MR. WISNER:  That's correct.  For
24   example, the editor who ended up retracting it,
25   they made a substantial financial payment to him

1  after it was retracted.  That's an example of what
2  we're talking about.
3           The instructions on punitive damages
4  specifically identify trickery and deceit in
5  patterns of conduct, and this fits into a fairly
6  in depth record we have of what we call ghost
7  writing, for another motion in limine, but
8  writing, scientific manipulation, scientific
9  suppression of bad data, that this is part of that
10 story.
11          And so if we can break a compromise,
12 we will not show pictures of those rats, those
13 poor little mice with these tumors.  It's pretty
14 inflammatory.  We won't show that.
15          We will not submit the journal article
16 for the purposes of saying, hey, this is
17 scientific proof that it causes cancer, but the
18 testimony that has already been admitted by Judge
19 Karnow related to the actions that Monsanto took
20 around it, we do want to present that.
21          And so if we can kind of cut that
22 middle ground, I think we would be fine with
23 limiting how will we use the Seralini study at
24 trial.
25          THE COURT:  So whose testimony is it

Page 139

1  that was already reviewed and ruled upon by Judge
2  Karnow?  Is that Benbrook's?
3              MR. WISNER:  No.  It was a Monsanto
4  employee, the last name is Sultmerus.  He was sort
5  of in charge of orchestrating this retraction
6  effort.
7              In fact, he actually brags about it in
8  his performance review, how he accomplished that.
9              So we have testimony that's been
10 admitted by Judge Karnow related to that.  And
11 that's the extent we want to discuss the Seralini
12 study.  We do not want to use it as scientific
13 proof that it causes cancer in animals or humans.
14             THE COURT:  Anything further,
15 Mr. Griffis, on that point?
16             MR. GRIFFIS:  Only, Your Honor, that
17 if no one on the face of the earth thinks that
18 it's evidence that glyphosate or Roundup causes
19 cancer in humans, then it can have no connection
20 to Mr. Johnson's injury and it is just a waste of
21 time to hear about it, whatever Monsanto did about
22 it.
23             THE COURT:  Well, since none of the
24 experts are relying on the study, the study itself
25 cannot come in and none of the photographs may

Page 140

1  come in.
2              With regard to this one Monsanto
3  employee that testifies that he wrote letters or
4  took whatever actions he took in response to the
5  study, I will allow that testimony to remain.
6              All right.  The next is motion in
7  limine Number 16.
8              MR. LOMBARDI:  And, Your Honor, this
9  will be Mr. Hilmert from Monsanto.
10             THE COURT:  Okay.  Welcome,
11 Mr. Hilmert.
12             MR. HILMERT:  Good morning,
13 Your Honor.
14             THE COURT:  Good morning.
15             Number 16 is Defendant's motion to
16 exclude any evidence, argument or reference to
17 trace impurities in Roundup Pro or Ranger Pro, and
18 what is it here exactly that you are seeking to
19 exclude?
20             In other words, is Plaintiff going to
21 be arguing that the impurities play a role in
22 causing the cancer?
23              MR. HILMERT:  What the concern is, is
24 that Plaintiff might suggest that impurities in
25 Roundup could cause cancer, but there is no

```
 1                I, the undersigned, a Certified
 2    Shorthand Reporter of the State of California, do
 3    hereby certify:
 4                That the foregoing proceedings were
 5    taken before me at the time and place herein set
 6    forth; that any witnesses in the foregoing
 7    proceedings, prior to testifying, were duly sworn;
 8    that a record of the proceedings was made by me
 9    using machine shorthand which was thereafter
10    transcribed under my direction; that the foregoing
11    transcript is a true record of the proceedings.
12                I further certify that I am neither
13    financially interested in the action nor a
14    relative or employee of any attorney or party to
15    this action.
16                IN WITNESS WHEREOF, I have this date
17    subscribed my name.
18
19                Dated: June 20, 2018
20
21
22                <%signature%>
23                Mary Hogan
24                CSR No. 05386
25
```

Page 239