**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY  10003
Tel: (212) 558-5802
Fax:  (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Hardeman v. Monsanto Co., et al.,*<br>3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.,*<br>3:16-cv-02341-VC<br>*Gebeyehou v. Monsanto Co., et al.,*<br>3:16-cv-5813-VC | **PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION *IN LIMINE* NO. 10: INTRODUCTION, ARGUMENT, OR REFERENCE TO THE SERALINI STUDY AND ANY INFORMATION THEREIN** |

## INTRODUCTION

To this day, Monsanto has never conducted a long-term carcinogenicity study on a formulated Roundup product, even though numerous independent scientists, including one specifically hired by Monsanto, repeatedly raised concerns that the formulated Roundup product appears to be more genotoxic than pure, technical glyphosate. As it stands, the only person to ever attempt to conduct such a study was a group of eight researchers led by Gilles-Eric Seralini. And, the results of his study showed that 80% of rats who ingested formulated Roundup developed tumors—with many rats developing numerous large tumors. This result was in sharp contrast to only 30% of rats developing tumors in the control group. As explained below, in response to this study, Monsanto engaged in a coordinated plan to get the article retracted, using its relationship with the journal's editor, a Monsanto consultant on glyphosate.

First, this study is relevant to the first phase of trial because it supports the proposition that the formulated Roundup product, *i.e.*, the product actually used by the Plaintiffs, is significantly more carcinogenic than pure, technical glyphosate. It is also relevant because it is evidence that Monsanto engaged in scientific manipulation. Second, this study is relevant to the liability phase, because it shows misconduct by Monsanto, failure to test, and malicious conduct designed to suppress scientific data about Roundup's ability to cause cancer.[1]

Plaintiffs are currently deposing numerous witnesses about this study, including the editor of the journal, Monsanto, and various other scientists connected with this study. The testimony elicited in those depositions will be highly relevant to this issue, and until the Court has an opportunity to review that testimony, Plaintiffs request that the Court refrain from ruling on this Motion in a vacuum. For example, just today (January 23, 2019), Plaintiffs obtained alarming testimony from Monsanto's corporate representative about the Seralini study, but that testimony is not yet finalized, nor is the deposition complete.

## BACKGROUND

**I.    Monsanto Refuses to Conduct Long-term Carcinogenicity Studies on Roundup.**

---

[1] It should be noted that Monsanto falsely states that the court in Johnson excluded the Seralini study. In truth, Plaintiffs stipulated to its exclusion because, at that time, the entire story surrounding Monsanto's attack on the study was unknown and undeveloped.

In obtaining approval from the Environmental Protection Agency ("EPA"), Monsanto was not required to conduct long-term animal carcinogenicity studies on the formulated Roundup product; it only studied pure glyphosate. Starting in the late 1990s, independent scientists began raising questions about the safety of the formulated Roundup product, as opposed to just pure glyphosate. For example, in 1997, Dr. Claudia Bolognesi, along with seven other scientists, published an article titled "Genotoxic Activity of Glyphosate and Its Technical Formulation Roundup," which attempted to assess the genotoxicity of not just glyphosate, but Roundup. Exh. 1 at *1954. The researchers concluded: "[t]he higher activity of technical formulations in inducing toxic and genotoxic damage in different experimental systems suggests a role of the surface active agents and/or coformulants in the potentiation of the effects" and recommended that "the risk assessment process of commercial technical formulations has to be considered of primary importance." *Id.* at 1964. Dr. Bolognesi's study, among others, prompted Monsanto to engage a genotoxicologist, James Parry, to review these studies and provide his opinion. Exh. 2 at 4 ("Mark Martens would contact Dr. Parry and ask him for a written review the articles by Rank, Bolognesi, Peluso & Lioi.). And, when Dr. Parry submitted his review, he specifically noted that "[t]he unique positive result in mouse kidney with Roundup mixture suggests a synergistic effect of some component of the mixture." Exh. 3 at 10. Monsanto then gave him access to the complete database. *See* Exh. 4 at 4. His second report reiterated his previous opinion, noting "[i]n view of the absence of adequate data no evaluation of the clastogenic potential in vitro of glyphosate mixtures is possible. … The studies of Bolognesi et al (1997) suggests that glyphosate mixtures may be capable of inducing oxidative damage in vivo." Exh. 5 at 12. In conclusion, Dr. Parry stated "it would be advisable to determine whether there are exposed individuals and groups within the human population. If such individuals can be identified then the extent of exposure should be determined and their lymphocytes analysed for the presence of chromosome aberrations." *Id.* at 35.

This point is underscored by Dr. Donna Farmer's 2003 email, where she acknowledges the limitations of Monsanto's testing: "[t]he terms glyphosate and Roundup cannot be used interchangeably nor can you use 'Roundup' for all glyphosate-based herbicides any more. For example you cannot say that Roundup is not a carcinogen … we have not done the necessary testing

on the formulation to make that statement. The testing on the formulations are not anywhere near the level of the active ingredient." Exh. 6 at 1-2.  She restates this point, again, in 2009. Exh. 7 at 1.

## II. The Seralini Publication

On September 19, 2012, the Seralini paper was published. Exh. 8 at 4221. This study was the first one to ever review the toxicity of rodents exposed to formulated Roundup for a full two years, *i.e.*, the typical length of a long-term chronic study using rats. The study also examined what, if any, long-term effects were observed on rats that consumed genetically modified corn, produced by Monsanto and treated with Roundup. *Id.* Included within the study were an assortment of photographs, depicting the histopathological slides of various rodents and actual pictures of rats within the treatment groups. *Id.* at 4226-27. These rats were deformed, riddled with tumors. Indeed, one of the study's observations was that rats treated with Roundup and/or GMOs had larger (30% to 130%) tumors. *Id.* at 4221. These pictures helped display that finding.

## III. The Seralini Attack

Immediately following the publication, Monsanto orchestrated an attack on the paper. Monsanto asserts "Plaintiffs have a conspiracy theory that Monsanto was behind the journal's retraction, but they have no evidence that the rejection was not on the merits." MIL at 3. Not true. There is a mountain of evidence.

Initially, Monsanto had hired the editor of the journal, Wallace Hayes, as a consultant for Monsanto relating to glyphosate toxicology. Exh. 10 at 2-3. After the Seralini article was published, Dr. Hayes' primary contact, Dr. David Saltmiras, continued to interface with him. Exh. 9 at 2. At this same time, Monsanto helped "independent" scientists, like Henry Miller, write scathing "scientific" opinion pieces, like "Scientists Smell A Rat In Fraudulent Rat Study."[2] *See, e.g.*, 14 at 4-6 (with redline edits by Monsanto employee). But these non-scientific opinion pieces were not enough. Dr. Hayes told Dr. Saltmiras as much, on September 26, 2012: "Wally Hayes (FCT Editor

---

[2] Incidentally, Henry Miller's conduct was exposed by Plaintiff's release of documents, leading to his termination with Forbes for failing to disclose Monsanto's involvement in his publications.  Danny Hakim, *Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer*, NY Times (Aug. 1, 2017), *available at* https://www.nytimes.com/2017/08/01/business/monsantos-sway-over-research-is-seen-in-disclosed-emails.html (Forbes removed the story from its website and said that it ended its relationship with Mr. Miller amid the revelations.)

in Chief) called me this morning in response to my voice mail yesterday. He expressed concern that to date he has only received links to blogs, web postings, media releases, etc. and no formal letters to the Editor. … he urgently needs rational, objective and authoritative formal letters to the Editor." Exh. 9 at 2.  Indeed, Dr. Saltmiras specified "I believe he would like such letters TODAY!" *Id.* at 3. So, the next day, the industry group CropLife America, a group which Monsanto was a member, sent out an email titled "Help Take Action AGAINST Seralini Study -- Write to Journal Editor TODAY" which stated "[i]t has come to our attention that … Editor Dr. Wally Hayes has indicated that he is prepared to take immediate action on the Seralini paper, but in order to do so, he needs more letters and voices who suggest, support, or demand a retraction and/or criticize the paper's publication of the study. These letters mu[st] be received TODAY … I encourage you to write today to Dr. Hayes asking that the paper be retracted[.]" Exh. 11 at 2-3.  Dr. Saltmiras sent this email to Dr. Hayes.[3]  *Id.* at 1.

Ultimately, the journal retracted the article.  *See* Exh. 12.  The editor explained that "[v]ery shortly after the publication of this article, the journal received Letters to the Editor expressing concerns about the validity of the findings it described, the proper use of animals, and even allegations of fraud" and noted "[m]any of these letters called upon the editors of the journal to retract the paper."  *Id.*  And, so, the editor reviewed all of the raw data underlying the article, noting "[u]nequivocally, the Editor-in-Chief found no evidence of fraud or intentional misrepresentation of the data" and that Dr. Seralini "supplied all material that was requested" and "acknowledge[d] the co-operation of the corresponding author in this matter, and commend[ed] him for his commitment to the scientific process."  *Id.*  Ultimately, the editor concluded that "the results presented (while not incorrect) are inconclusive, and therefore do not reach the threshold of publication" and stressed that "[t]he retraction is only on the inconclusiveness of this one paper."  *Id.*  Very shortly thereafter, the article was republished in another peer-reviewed journal.  *See* Exh. 13.

The new publication, like the original, concludes "[o]ur findings imply that long-term (2 year)

---

[3] A year later, Dr. Saltmiras would boast in a performance review that he "[s]uccessfully facilitated numerous third party expert letters to the editor" and "[t]hroughout the late 2012 Seralini rat cancer publication and media campaign, I leveraged my relationship the Editor i[n] Chief of the publishing journal[.]"  Exh. 14 at 3, 6.

feeding trials need to be conducted to thoroughly evaluate the safety of GM foods and pesticides in their full commercial formulations." Exh. 12 at 1. However, in discussing whether Monsanto would ever conduct such studies, Monsanto's head of Product Safety stated:

> If we conduct a chronic study in response to Seralini's efforts, there is a significant risk that one study on one product would not end the debate. … Given the lack of scientific need, the time required to complete (3 yrs including reporting), the significant financial investment ($1.5 M) the Toxicology team considers conduct of such studies *a dangerous precedent* to be avoided.

Exh. 15 at 2 (emphasis added).

## ARGUMENT

**I.  The Seralini Paper Is Relevant to Causation Because It Is the Only Long-Term Rodent Study that Has Been Conducted on Formulated Roundup, Published in a Peer-Reviewed Journal.**

Animal toxicology is relevant to causation. The Seralini study was peer-reviewed, published (twice) in an academic journal, and was validated by the editor in chief as being both accurate and correct. And, although Plaintiffs' experts do not rely on this study to form their opinions, it is a study that is helpful for the jury—especially in crossing Monsanto's witnesses and experts. Moreover, the story surrounding the Seralini study is relevant to showing the manipulation of science—a fact that is relevant to the credibility of any science generated by Monsanto. Indeed, even Dr. Portier specifically published an article criticizing the propriety of the Seralini retraction—a publication he issued before he was retained as an expert in this litigation. *See* Exh. 16 at 1. The entire Seralini saga falls squarely within the gambit this Court contemplated, *i.e.*, evidence of manipulated science.

**II.  The Seralini Article Is Relevant to Liability.**

Clearly, the Seralini publication and Monsanto's conduct related to it, are relevant to liability. First, it shows deliberate manipulation of science—an issue relevant to punitive damages. Second, it shows that Monsanto had an obligation to conduct a long-term rodent carcinogenicity study on formulated Roundup, and instead of simply doing the study despite repeated indications from Monsanto's own scientists and other academics, Monsanto attacked the one researcher that attempted to do it. This goes straight to liability under failure to test and punitive damages. Finally, the Seralini affair is relevant to the credibility of Monsanto's witnesses.

**III.   The Photo from the Study Is Probative of the Veracity of the Study's Results, and Any Prejudice from Such Photos Is Speculative at Best.**

Monsanto takes issue with the photograph in the study showing a rat that ingested Roundup for two years and developed significant tumors. Monsanto believes this photo is too prejudicial. It is unclear why that is—the photo is of an animal that was part of an experiment. This fact will be explained to the jury. If Monsanto believes that the photo does not accurately reflect what occurred in the study, it is welcome to make that argument to the jury. Monsanto's concern that the photo will inflame the jury is simply speculation. So is its bald assertion that the photos were designed to "provoke an emotional reaction." There is absolutely no evidence to support that claim. It is just Monsanto continuing its campaign to attack Dr. Seralini. And, more importantly, Monsanto has not explained how any speculated and unfounded prejudice *substantially* outweighs it probative value. *See* Fed. R. Evid. 403. The photos specifically help refute Monsanto's central contention that the study is "debunked" or false because they show what the author's claim, *i.e.*, that the Roundup treated rats had larger and more numerous tumors. Moreover, the photo helps explain why Monsanto believed conducting these studies would be a "dangerous precedent."

Dated: 1/30/2019                                                            Respectfully submitted,


/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com