Law Offices of
**TESFAYE W. TSADIK**
**PHONE (510) 839-3922** **ATTORNEY AT LAW** **FAX (510) 444-1704**
**1736 FRANKLIN STREET, 9TH FLOOR**
**OAKLAND, CALIFORNIA 94612**

February 12, 2019

Honorable Vince Chhabria
Judge of United States District Court
Federal Court House, Courtroom 4 - 17th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

*Re:* *In Re: Roundup Products Litigation*
*MDL Case No. 16-md-0241 VC*
*Sioum Gebeyhou V. Monsanto*
*3:16-cv-05813 VC*

Dear Honorable Vince Chhabria:

I represent Plaintiff Gebeyheou in the above-captioned matter. In response to your Pretrial Order#73 of February 7, 2019 directing Plaintiff to produce a list of California cases where plaintiff could not be deemed on notice for purposes of the statute of limitations despite starting to investigate whether the defendant caused the injuries, I point out to *Duncan v. Spivak,* 114 Cal. Rptr. 2d 166 (2001) (unpublished case, cited only as persuasive authority) and *Kitzig v. Nordquist,* 81 Cal. App. 4th 1384 (2000), also attached with this letter.

## ANALYSIS

In both cases the California court of appeals[1] holds that the plaintiffs were not on notice for the purposes of triggering the discovery rule when their suspicions were allayed by objective medical

[1] Fifth District and Fourth District, Division 1 respectively

opinions. In other words, the statute of limitations did not begin to run at the point of plaintiffs' initial suspicion and investigation into the cause of their injuries. *Duncan* is submitted only as persuasive authority because it is an unpublished/noncitable[2] case for which we are seeking judicial notice.[3]

The facts of *Duncan* are illustrative. In 1996 Duncan had surgery for a hernia, and staples were employed to help it heal. Duncan felt worse after the surgery, and became "suspicious" that his pain was the result of medical malpractice. A few months later, Duncan consulted a lawyer who sent a preliminary notice of intention to commence an action against the Doctor. In the meantime Duncan consulted several other doctors, which led to an exploratory surgery, revealing scar tissue. The doctor's "objective medical opinion" blaming the pain on the scar tissue "allayed" Duncan's initial suspicion that the doctor committed malpractice at the 1996 surgery. In turn, this extinguished Duncan's suspicion/discovery of the medical malpractice, and Duncan's lawyer withdrew from the case. However, in 1998, a second exploratory surgery revealed that a surgical staple was left from the 1996 surgery. At

[2] The Civil Local Rules of the Northern District of California restricts citation to unpublished opinions:
Civil L.R. 3-4. Papers Presented for Filing
(e) Prohibition of Citation to Uncertified Opinion or Order. Any order or opinion that is designated: "NOT FOR CITATION," pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel.
Civil L.R. 7-14. Designation Not for Citation
It is within the sole discretion of the issuing Judge to determine whether an order or opinion issued by that Judge shall not be citable. Any order or opinion which the issuing Judge determines shall not be citable shall bear in the caption before the title of the Court "NOT FOR CITATION."

[3] Rule 201. Judicial Notice of Adjudicative Facts
(a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
(1) is generally known within the trial court's territorial jurisdiction; or
(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
(c) Taking Notice. The court:
(1) may take judicial notice on its own; or
(2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
(d) Timing. The court may take judicial notice at any stage of the proceeding.
(e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.
(f) Instructing the Jury. In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

that point Duncan discovered that his doctor negligently leaving the staple inside his body was indeed the cause of his pain all along. Accordingly, this is when the statute of limitations began to run. The *Duncan* Court refused to conclude, as a matter of law, that the initial suspicion that was allayed by an objective medical opinion automatically triggers the limitations period.

Likewise, in *Kitzig* the Plaintiff experienced issues with her dental implants and became "suspicious" that the dentist may have committed malpractice, and she sought a second opinion. The second dentist's "objective medical opinion" assuring her that everything looked okay "allayed" her initial suspicion. In turn, this extinguished Kitzig's suspicion/discovery of the malpractice, and Plaintiff returned to the defendant for continuous treatment. Later, Plaintiff's oral surgeon found that six of Kitzig's seven implants were failing and were infected. At that point Kitzig discovered that her dentist's malpractice was indeed the cause of her pain all along. Accordingly, this is when the statute of limitations began to run. The *Kitzig* Court refused to conclude that, as a matter of law, the initial suspicion that was allayed by an objective medical opinion automatically triggers the limitations period.

The California courts do not consider the initial suspicion to automatically trigger the statute of limitations as a matter of law. In fact, the *Kitzig* Court explains, "[n]othing in *Norgart*[4] supports a conclusion that the limitations period is triggered as a matter of law where both the malpracticing doctor and a consulting professional continue to reassure the plaintiff that everything is fine, the plaintiff subjectively relies on these reassurances while continuing treatment with her doctor, and this reliance is reasonable." *Id.* at 1395. Likewise, the *Duncan* Court holds that the action "is not necessarily time-barred immediately upon a suspicion of wrongdoing where he subsequently receives objective medical advice to allay those suspicions." *Id.* at 181.

---

4 *Norgart v. Upjohn Co.,* 21 Cal. 4th 383(1999), holding "[a]n exception is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Id.* at 389.

Instead, whether the initial suspicion triggers the statute of limitations is a question of fact for the jury to determine. In fact, the *Duncan* Court says, "the analysis set forth in *Kitzig* nevertheless supports our conclusion that a jury could reasonably conclude that a subjective suspicion of malpractice may not be adequate to accrue the one-year period set forth in section 340.5[5] where the evidence shows the plaintiff also had objective evidence to allay those suspicions upon his diligent attempts to confirm them." *Id.* at 182.

Moreover, the California courts make clear that an initial suspicion only triggers a duty to investigate; it does not automatically trigger the statute of limitations. In fact, the *Duncan* Court distinguishes a California case[6] where the plaintiff's claim was time-barred, explaining that it was only "because the evidence showed she had a suspicion of wrongdoing and yet did not take any affirmative action to confirm her suspicions." *Id.* at 183. The Court further reasons that "[t]he court[7] did not conclude that the suspicion alone triggered the one-year period, rather it implied that the suspicion triggered a duty to pursue facts to support that suspicion." *Id.* In fact, when the Defendant in *Duncan* cites to cases where the courts hold that suspicion triggers discovery, the *Duncan* Court distinguishes the cases by pointing out that, "[n]one of these cases, however, address the medical malpractice situation where a plaintiff's suspicions are allayed by subsequent objective medical opinions." *Id.* at 181. Likewise, the *Kitzig* Court explains, "[n]othing in *Norgart*[8] supports a conclusion that the limitations period is triggered as a matter of law where both the malpracticing doctor and a consulting professional continue to reassure the plaintiff that everything is fine, the plaintiff subjectively relies on these reassurances while continuing treatment with her doctor, and this reliance is reasonable." *Id.* at 1395.

[5] Even though *Duncan* and *Kitzig* deal with the medical malpractice statute of limitations, § 340.5. Nevertheless, we are invoking the cases for their discussion of the discovery rule. In fact, both cases cite to the seminal California discovery rule cases.

[6] *Rose v. Fife,* 207 Cal. App. 3d 760 (Ct. App. 1989).

[7] *Id.*

[8] *Norgart v. Upjohn Co.,* 21 Cal. 4th 383(1999), holding "[a]n exception is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." *Id.* at 389.

Similar to the plaintiffs in *Duncan* and *Kitzig*, Mr. Gebeyehou saw an episode of the Dr. Oz[9] show that raised his "suspicion" that Roundup® use could cause cancer. He conducted Internet research and found a Rodale[10] article linking cancer and Roundup® use. He sent[11] the article to his oncologist, Dr. Pai, asking if his Roundup® use could have caused his NHL. Dr. Pai responded to Mr. Gebeyehou's email about other matters, but did not respond to or address Mr. Gebeyehou's comment about Roundup® and NHL.[12] Indeed, Dr. Pai later explained to Mr. Gebeyehou that there wasn't any obvious link and highlighted the difference between association and causation.[13] Dr. Pai did not even tell Mr. Gebeyehou to stop using Roundup®.[14] In sum, Dr. Pai's "objective medical opinion" "allayed" Mr. Gebeyehou's initial suspicions to the point that he even continued to use Roundup®. In turn, this extinguished Mr. Gebeyehou's September 24, 2014 suspicion/discovery.

Therefore, the policy behind *Duncan* and *Kitzig* applies to the instant case. Mr. Gebeyehou satisfied his duty to investigate by raising it with Dr. Pai whose objective medical opinion reasonably allayed his suspicion. Gebeyhou continued to use Roundup on his property. (Exhibit 80. Gebeyheou Depo, to plaintiff's response 126:19-25) This is in line with the *Duncan* Court's holding that the action "is not necessarily time-barred immediately upon a suspicion of wrongdoing where he subsequently receives objective medical advice to allay those suspicions." *Id.* at 181. Therefore, Mr. Gebeyehou's initial suspicion/discovery was extinguished, which, in turn, stopped the statute of limitations until Mr. Gebeyehou later discovered the causal connection between his Roundup® use and NHL diagnosis. In

---

[9] On September 22, 2014 he watched a show without scientific showing.
[10] The publisher of the article, was a health and wellness magazine that is no longer in business. It was not a scientific journal, the article was not written by a doctor or scientific researcher, and there are no citations to the papers referenced in the article for Mr. Gebeyehou to access and review.
[11] On September 24, 2014
[12] Ex.79 *Pai* Dep. at 48:15-49:5
[13] Ex. 79 *Pai* Dep. at 50:8-13
[14] Ex. 79 *Pai* Dep. at 51:19-21

fact, it was not until March 2016 when his physician friend sent him an email about the IARC Monograph 112.[15] [16] Accordingly, this is when the statute of limitations began to run.[17]

Respectfully Submitted

*/s/Tesfaye W. Tsadik*
Tesfaye W. Tsadik, Esq.
Attorney for Plaintiff
SIOUM GEBEYHEOU

[15] Ex 80. *Gebeyehou* Dep. 55:1-6

[16] While many of the genotox and epi studies predated 2014, they were dispersed and no scientist had put them together to thread the needle as IARC did in 2015. Also, it was not until IARC that people had access to the findings of industry's rodent data, which is strong evidence of glyphosate's carcinogenicity. And then the publication of the data by industry in the Greim paper after IARC. In addition, if he had sued in 2014 and had to produce expert reports in 2014, it would have been without toxicological data for Glyphosate. Even the court acknowledges the high relevance of that evidence to general causation.

[17] Or, at the very least, it was not until IARC's classification of glyphosate as a 2A carcinogen on March 20, 2015.