**Volume 1**
                                 **Pages 1 - 100**

                      UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE: ROUNDUP PRODUCTS          )
LIABILITY LITIGATION             )
                                 )      **NO. 16-md-02741 VC**
                                 )
_____   )


                            San Francisco, California
                            Friday, February 15, 2019

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiffs:

                      MOORE LAW GROUP
                      1473 South 4th Street
                      Louisville, Kentucky  40208
                **BY:  JENNIFER MOORE, ATTORNEY AT LAW**

                      AUDET & PARTNERS LLP
                      711 Van Ness Avenue - Suite 500
                      San Francisco, California  94102
                **BY:  MARK E. BURTON, ATTORNEY AT LAW**

For Defendant:

                      WILKINSON WALSH ESKOVITZ LLP
                      2001 M Street, NW - 10th Floor
                      Washington, D.C.  20036
                **BY:  BRIAN L. STEKLOFF, ATTORNEY AT LAW**
                      **RAKESH N. KILARU, ATTORNEY AT LAW**
                      **TAMARRA MATTHEWS JOHNSON, ATTORNEY AT LAW**
                      **JULIE RUBENSTEIN, ATTORNEY AT LAW**

Also Present:         **Sonia Chopra, Plaintiffs' Jury Consultant**
                      **Reiko Hasuike, Defense Jury Consultant**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1  **Friday - February 15, 2019**                    **12:35 p.m.**

2                          **P R O C E E D I N G S**

3                              **---000---**

4         **THE CLERK:**  Calling Case Number 16-md-2741, In Re

5  Roundup Products Liability Litigation.

6      Counsel, please state your appearances for the record.

7  And the mics at counsel table are turned off.

8         **MS. MOORE:**  Good afternoon, Your Honor.  Jennifer

9  Moore for the plaintiff, and with me today is Mark Burton.  And

10 if the Court would so indulge, we'd ask permission that Sonia

11 Chopra, who is our jury consultant, sit at counsel table.

12        **THE COURT:**  Sure.  That's fine.

13        **MS. MOORE:**  Okay.

14        **THE COURT:**  And I think we should do this with you-all

15 at counsel table, and just speak up and make sure Jo Ann can

16 hear you.

17        **MS. MOORE:**  Thank you, Your Honor.

18        **THE COURT:**  Or if we can get the mics on or whatever

19 because it's a lot easier for you to do while you're sitting

20 down.

21        **MR. STEKLOFF:**  Good afternoon, Your Honor.  Brian

22 Stekloff on behalf of Monsanto.  Along with me today are

23 Tamarra Matthews Johnson, Rakesh Kilaru, Julie Rubenstein, and

24 we also have Reiko Hasuike who is our jury consultant.

25        **THE COURT:**  Hello, everybody.

1    (Discussion off the record about microphones at counsel table.)

2         **THE COURT:**  Okay.  So at some point I want to talk

3    about sealing today just a little bit more, so please don't let

4    me forget about that.  The deadline for refiling stuff is going

5    to be Thursday of next week.  By Thursday of next week I want

6    everything refiled properly.

7         I think we've already talked about what that means for the

8    plaintiffs.  If you have any clarification questions or

9    anything, I'm happy to discuss it; and I'll have a little bit

10   to discuss with Monsanto.

11        **MS. MOORE:**  That's fine, Your Honor.

12        **THE COURT:**  So with respect to these questionnaires,

13   what I would propose to do is -- first of all, are we in

14   agreement -- you saw my order that I put out just a little bit

15   ago.  Are we in agreement about the jurors that you-all have

16   stipulated to excusing on hardship grounds?

17        **MS. MOORE:**  Yes, Your Honor.  We had a very productive

18   meet and confer yesterday, and we came up with 27 that we would

19   agree to excuse for hardship.

20        **THE COURT:**  And are those the ones that -- I correctly

21   identified them in the order?

22        **MS. MOORE:**  Yes, it is, Your Honor.

23        **THE COURT:**  Okay.

24        **MR. STEKLOFF:**  Yes, Your Honor.

25        **THE COURT:**  So those will be excused for hardship.

 1   We're done with that pile.

 2        Now, what I would propose that we do with the remainder is

 3   we first go through the additional people who I proposed we

 4   excuse for hardship, and see if you have any objections; then

 5   we go through the additional people that I have proposed to

 6   excuse for cause; and then after we're done doing that, then we

 7   can go through any additional jurors who you want to discuss.

 8   Okay?

 9        **MS. MOORE:**  That's fine.  Thank you, Your Honor.

10        **THE COURT:**  So the additional people who I proposed to

11   excuse for hardship, any objection?

12        **MS. MOORE:**  Yes, Your Honor, and it's solely on the

13   grounds that the questionnaire alone, there are some questions

14   as to whether or not they do truly have a hardship.

15        And, you know, again if they come Wednesday and it's clear

16   they have a hardship, then we would likely not object.  Of

17   course, we don't want to put a hardship on anyone.

18        Number 17, the first one, it appeared to us -- and we had

19   a meet-and-confer about this yesterday -- that, you know, if

20   the medical issue of Juror 17 is hearing, that that could be

21   resolved with an assistive device in the courtroom.  And so if

22   that's what it is, then I don't think it would be a hardship

23   excuse.

24        **THE COURT:**  Okay.  I took this to mean -- reading the

25   questionnaire in its totality, I took this to be a situation

1   where the person -- Juror Number 17 has difficulty with English

2   and has difficulty understanding English just looking at his

3   responses overall and his response to Question Number 2 and

4   that he also has medical issues.  And so it struck me that

5   between those two, that this person should be excused.

6        So what's Monsanto's view on that?

7        **MR. STEKLOFF:**  Your Honor, we agree with what you just

8   said and would add, I know this is not a hardship issue, but

9   would add that given some of the statements made about his

10  mother's cancer, that sort of factored in for us as well, to

11  Question 17 and Question 23.  And so in totality, we think this

12  is an appropriate strike.

13       **THE COURT:**  Yes, I think that's a good point.  You

14  know, if somebody -- if that was the only -- the kind of

15  response that he gave to Number 17, if that was the only thing,

16  I'm not sure I would excuse him on the papers at least.  I

17  would want to have him in and probe that with him a little

18  more; but I think the totality of it, when you add that, and I

19  didn't notice that, I think those three issues I think are

20  enough to excuse him on the papers.

21       **MS. MOORE:**  Okay.  And, Your Honor, the response to

22  17d where Juror 17 says "Give me sadness if I remembered my

23  mom," that is not a hardship excuse.  And if we are excusing

24  him on hardship, I want to make sure --

25       **THE COURT:**  But it also helps show that he has English

1   issues.

2        **MS. MOORE:**  Possibly.  It would be better to see him

3   in person and hear him and see if he can articulate and

4   understand your questions, Your Honor, and counsel's questions.

5   I think an oral *voir dire* is better than just basing on how

6   someone may have answered a written response.

7        **THE COURT:**  Okay.  I understand the argument.  I'm

8   going to excuse him for hardship and cause.

9        **MS. MOORE:**  And, Your Honor, please note my objection

10  of him being excused for cause based solely on the written

11  response.

12       **THE COURT:**  Okay.

13     All right.  Any other objections?  What about 39?  Any

14  objections?

15       **MR. STEKLOFF:**  I will say that we have no objections

16  to any of your hardship proposals, Your Honor.

17       **THE COURT:**  Okay.

18       **MS. MOORE:**  Your Honor, our objection to Juror

19  Number 39 is that he states that he's leaving on Saturday,

20  February 16th, but he doesn't state when the return date is,

21  and that's why we did not stipulate to hardship.  Because if

22  he's back in time for the trial, then there's no hardship

23  there.

24       **THE COURT:**  Well, jury selection is on Wednesday.  I

25  think if he's going to Mexico, the overwhelming likelihood is

that he's still going to be in Mexico by Wednesday, which means
we can't even call him in to ask him how long he's going to be
in Mexico because he'll probably still be in Mexico.  And if we
don't excuse him now, then we put him in this terrible position
where if he is scheduled to be in Mexico until Wednesday, then
he's going to need to violate a court order to come back.

**MS. MOORE:**  I understand what you're saying,
Your Honor, and the only reason we didn't stipulate is because
we don't know what the return date is.

**THE COURT:**  Okay.  I'm going to excuse this person for
hardship.  This is Juror Number 39.

Okay.  Number 82.

**MS. MOORE:**  Your Honor, we object on excusing for
hardship because in her answer Juror 82 says, "I have some
financial concerns."  And then she does state that one employer
will be reimbursing her for one week of jury duty.  And with
her having some concerns, I don't think that's sufficient on a
hardship excuse.  I think that should be explored more by the
Court in person on Wednesday.

**THE COURT:**  Okay.  So she's 70 years old.  She has to
drive from Point Reyes Station, which is kind of a harrowing
drive.  She expressed financial concerns.  And the two jobs
that she has is she helps adult individuals with developmental
disabilities and she assists a teacher and special ed students
at a school.

1    So I think knowing all of that, I think it would be a

2   hardship to require this person to serve on a five-week jury

3   trial in San Francisco, and I'm going to excuse her for

4   hardship.

5        And at this point we're probably getting to people who are

6   not going to be called in any way.

7            MS. MOORE:  I understand, Your Honor.

8            THE COURT:  So should we -- do you want to discuss

9   105, 106, and 115?

10           MS. MOORE:  Your Honor, we won't object to 105 and we

11  won't object to -- for hardship.  We won't object to 105 on the

12  basis of hardship, Your Honor, where the juror states

13  "Financial family responsibilities for the mother and

14  grandmother."

15           THE COURT:  Okay.  And 106?

16           MS. MOORE:  106, Your Honor, it just wasn't clear to

17  me -- when Juror 106 says "Business travel plan," it just

18  wasn't clear to me if that would actually interfere with the

19  trial.

20           THE COURT:  I agree with you that that is a little bit

21  sketchy, but since this person is almost certainly not going to

22  be required to come in on Wednesday anyway because he's at the

23  end of the list, I'll just go ahead and excuse him for hardship

24  now.

25           MS. MOORE:  And then the last one, Your Honor, 115, I

1  wasn't sure because they checked "No" to the answer on hardship

2  on Number 3.

3          **THE COURT:**  Let me remind myself here what I was

4  thinking.

5                    (Pause in proceedings.)

6          **THE COURT:**  What number was it again?

7          **MS. MOORE:**  115, Your Honor.

8          **THE COURT:**  I think I might have accidentally put this

9  in the hardship pile where it was meant to be in the cause

10  pile.  Let me see.

11                    (Pause in proceedings.)

12          **THE COURT:**  Yeah, I think that's right.  So let's move

13  that -- for now let's move Number 115 into the cause pile, and

14  we'll get back to them.

15          **MS. MOORE:**  Okay.  Thank you, Your Honor.

16      The only other issue that we had on hardship was Juror 27.

17          **THE COURT:**  Okay.  Give me one quick second to make

18  sure I have my own records in order here.

19                    (Pause in proceedings.)

20          **THE COURT:**  Okay.  So we said that 105 and 106 will

21  also be excused for hardship, so let me put those aside.

22      And then you said you had one other hardship?

23          **MS. MOORE:**  Yes, Your Honor.  Number 27.

24          **THE COURT:**  Okay.  Give me one second.

25                    (Pause in proceedings.)

```
 1              THE COURT:  Okay.

 2              MS. MOORE:  She didn't check "Yes" to Number 3 but,

 3   Your Honor, if you could turn to page 8 of her questionnaire,

 4   her response to Number 30 she checks "Yes."

 5              THE COURT:  Okay.  Let's see.

 6              MS. MOORE:  And she says she's in the middle of a

 7   three-month internship which determines her future employment

 8   at the company, and she's concerned about being absent for an

 9   entire month.

10              THE COURT:  What company does she work for?

11              MS. MOORE:  Let's see...  It says Veeva Systems,

12   Your Honor, and she lists herself as an intern there, and it

13   appears the internship started in January.  And so she says, "I

14   don't think I can be absent for an entire month out of the

15   three months."

16                        (Pause in proceedings.)

17              THE COURT:  Any comment from Monsanto?

18              MR. STEKLOFF:  Just, Your Honor, that we weren't --

19   it's not clear on its face sort of when -- you know, how many

20   days a week her internship is or the hours, and so we thought

21   maybe more information from her might be appropriate.  If she

22   can't miss a month out of three months, after talking to her

23   quickly, we would have no objection to a hardship challenge,

24   but it doesn't seem entirely clear from this answer.

25          She seemed pretty thorough in her questionnaire, and she
```

1    put "No" to Question 3 was part of our thinking.

2              **THE COURT:**  Almost as if she started to have second

3    thoughts by the time she got to --

4              **MR. STEKLOFF:**  She might have even more second

5    thoughts if you bring her in on Wednesday.

6              **THE COURT:**  I think we'll go ahead and excuse her for

7    hardship now.

8              **MS. MOORE:**  Thank you, Your Honor.

9              **THE CLERK:**  That's Juror Number 27?

10             **THE COURT:**  That's Juror Number 27.

11             **MS. MOORE:**  Your Honor, with your permission, I'm

12   going to move to the table.

13             **THE COURT:**  What?

14             **MS. MOORE:**  With your permission, I'm going to move to

15   the table.

16             **THE COURT:**  Sure.

17             **MS. MOORE:**  Thank you.

18             **MR. STEKLOFF:**  And, Your Honor, if we're doing

19   hardship now, what I would say is I think we have some -- I

20   think at the end I will have additional jurors to raise with

21   you, and it might be sort of the totality argument where they

22   reference --

23             **THE COURT:**  Oh, yeah.  That's fine.

24             **MR. STEKLOFF:**  Okay.

25             **THE COURT:**  Why don't we do my proposed cause

1   excusals, and then we can go through the rest; and whether it's

2   hardship or cause or some combination of the two, we can do

3   those.

4            **MR. STEKLOFF:**  I will flag, Your Honor, that for the

5   now 9 jurors in the cause category, we have no objections to

6   any of them.  I will only say that I suspect that 66 should be

7   56 because --

8            **MS. MOORE:**  66 should be what?  I'm sorry.

9            **MR. STEKLOFF:**  66 should be 56 because 66 there's

10  nothing obvious to me on its face, but 56 may have been the

11  number one candidate that we would have moved on.

12           **MS. MOORE:**  Your Honor, on 66, this is the juror whose

13  husband had non-Hodgkin's lymphoma.

14           **THE COURT:**  Oh, yeah.  No, it was -- I meant for this

15  person to be excused.

16           **MR. STEKLOFF:**  Okay.  No problem.  That's fine.

17           **THE COURT:**  Because I think if your husband had

18  non-Hodgkin's lymphoma, that's just too close, and I think that

19  somebody in that situation should be excused for cause.

20           **MR. STEKLOFF:**  I have no objection to that.  There's

21  another person whose sister had non-Hodgkin's lymphoma that

22  I'll flag later, but I have no objection then to 66.

23           **THE COURT:**  Okay.

24           **MR. STEKLOFF:**  So I'll separately raise 56 later.

25           **THE COURT:**  So what about the plaintiffs?  Do the

1    plaintiffs have any objections to my additional jurors who I

2    think should be excused for cause on the papers?

3            **MS. MOORE:**  Yes, Your Honor, we do.

4            **THE COURT:**  Okay.

5            **MS. MOORE:**  Starting with Number 4.

6            **THE COURT:**  Okay.

7            **MS. MOORE:**  We don't see a basis to strike her for

8    cause strictly based on the written questionnaire.  As the

9    Court is likely aware of the *People versus Stewart* case, and I

10   have a copy for the Court if you would like it --

11           **THE COURT:**  The what case?

12           **MS. MOORE:**  *People versus Stewart*.  It's a California

13   Supreme Court case.  I think it is instructive on striking for

14   cause based solely on written responses, Your Honor.  The cite

15   to it is 33 Cal.4th 425.

16       And in that case, Your Honor, what happened, it was a

17   death penalty case and -- let me -- may I, Your Honor?

18           **THE COURT:**  Haven't you learned from Monsanto that

19   it's not a good idea to be citing criminal cases in a civil

20   jury selection?

21           **MS. MOORE:**  I understand.  I understand, Your Honor,

22   but I do think that the language is applicable.

23       What happened in that case was that the trial judge

24   excused five prospective jurors for cause over the defense

25   attorney's objection based solely on written responses to a

 1  questionnaire, and the California Supreme Court held that that

 2  was reversible error and they returned it to redo the penalty

 3  phase of the trial.

 4      What they found was that the answers when either ambiguous

 5  or unclear to determine the state of mind of the prospective

 6  juror whether they can actually follow the law or listen to the

 7  judge's instructions, that what the better course was to bring

 8  them in for oral *voir dire*, and that it would have just taken a

 9  few minutes to clear up and determine what their state of mind

10  is.

11      And that's why the Court reversed it and sent it back.  I

12  think it's instructive for those purposes.  I understand it's a

13  death penalty case, Your Honor, but here --

14          **THE COURT:**  And it's a state court case.

15      **MS. MOORE:**  I understand, Your Honor.  I understand.

16  I'm not saying --

17          **THE COURT:**  I don't disagree with that general

18  proposition.  It's just that this person has said that her

19  father used many chemicals in farming and gardening.  She

20  believes that "Some of these chemicals contributed to his

21  cancer, and I don't know all the chemicals he used but I do

22  know that he did use Roundup."

23      So I don't know.  I mean, that's --

24          **MS. MOORE:**  But, Your Honor, that doesn't answer the

25  question as to whether Juror 4 would be able to serve and

 1  follow this Court's instructions notwithstanding any personal

 2  views that she may have with respect to cancer.

 3      And so what we're asking for --

 4      THE COURT:  Well, then, she says in response to

 5  Question Number 23 "Do you have any opinions or feelings about

 6  Monsanto that may make it difficult for you to fairly evaluate

 7  the evidence in a trial where an individual is claiming that

 8  the company's product caused their cancer," and she answers

 9  "Yes," and she says "Negative feelings about Roundup due to my

10  father's experience."

11      MS. MOORE:  But, Your Honor, that does not say that

12  she would not be able to follow Your Honor's instructions and

13  follow the law in this case; and all we're asking is that we

14  bring her in on Wednesday and we be given an opportunity,

15  either by the Court or by counsel, to ask if she would still be

16  able to follow the law notwithstanding any personal views.

17      I mean, negative feelings about Roundup is not the basis

18  for a strike for cause.  It doesn't say that she wouldn't be

19  able to follow the law or the Court's instructions.

20      THE COURT:  I understand your argument.  I'm going to

21  excuse her for cause.

22      Any other objections?

23      MS. MOORE:  Your Honor, I believe I stated the

24  objections.

25      THE COURT:  No.  On any of the other jurors that I

1    identified.

2              **MS. MOORE:**  Oh, I'm sorry.

3         Yes, Your Honor.  The next one on Juror Number 6 --

4              **THE COURT:**  Yes.  So my thinking -- let me just tell

5    you my thinking here before you state your objections.

6              **MS. MOORE:**  Okay.

7              **THE COURT:**  To me this is kind of a combination.  This

8    person says on two different occasions that she's not going to

9    be prompt because she's coming from the East Bay and there are

10   traffic and BART delays.

11        Now, the answer to that might be "Get here on time just

12   like anybody else who is coming from the East Bay, such as

13   Kristen."

14             **MS. MOORE:**  For example.

15             **THE COURT:**  But then you start looking at -- let me

16   see --

17             **MS. MOORE:**  Your Honor, can I say one thing about

18   that?

19             **THE COURT:**  Yes.

20             **MS. MOORE:**  Because we have a number of prospective

21   jurors who are either going to be coming over the Golden Gate

22   Bridge or the Bay Bridge --

23             **THE COURT:**  I understand that.  I'm saying it's a

24   combination of that and her statement that -- she says, "I

25   won't use Roundup anymore because of the known cancer risks."

1    And then she says, you know, "Why is Roundup still on the

2    shelves?  I won't buy it now."

3       I know there are -- you know, there are gradations of

4    concern that people express and if people express some level of

5    concern on the paper, we bring them in and we talk to them

6    further about the concern.

7       But this seems like such a strong level of concern and

8    this person already seems like they're going to be a problem

9    juror by virtue of the fact that they're announcing that

10   they're going to be late, that I don't think it's worth

11   bringing this person in.

12          **MS. MOORE:**  But, Your Honor, we would object strongly

13   to that because it's ambiguous and unclear as to whether or not

14   she'd be able to follow the Court's instructions and follow the

15   law.  It's our position that it's worth a few minutes of time

16   to bring her in on Wednesday and to really see and explore with

17   her, and that could be either by the Court or counsel, as to

18   whether or not she can follow the Court's instructions and

19   notwithstanding any type of written response she may have given

20   here.  She never says that she would not follow the law in her

21   questionnaire.

22          **THE COURT:**  I understand your argument.  I'm excusing

23   her for cause.

24       Any other objections to any of those other jurors?

25          **MS. MOORE:**  Yes, Your Honor.  Number 53.

```
 1              THE COURT:  All right.

 2              MS. MOORE:  And if you want, Your Honor, I can wait

 3    for you to review it and let me know.

 4              THE COURT:  Yes.  Give me one quick sec.

 5         Oh, yeah.  You object to 53?  "Pay the man."

 6              MS. MOORE:  Oh.

 7              THE COURT:  Three words:  "Pay the man."

 8              MS. MOORE:  That is in response, Your Honor, to any

 9    opinions regarding awarding money damages.  Again, that doesn't

10    say that they cannot follow the law.  It doesn't mean that

11    they're going to --

12              THE COURT:  Wait.  Sorry.

13              MS. MOORE:  Sorry.

14              THE COURT:  Six words:  "Pay the man.  Treble damages,

15    please."

16              MS. MOORE:  This is in response to a question that

17    says "Do you have any opinions about awarding money damages in

18    a personal injury lawsuit to compensate someone for mental

19    suffering, emotional distress, and loss of enjoyment of life?"

20         In no way does this question ask that is this --

21              THE COURT:  12 more words:  "Big companies like

22    Monsanto need to be held accountable for and focus on being

23    healthy, like Whole Foods."

24              MS. MOORE:  Again, Your Honor, this is not in response

25    to any question that would ask whether the juror,
```

```
 1    notwithstanding any of these statements in their written

 2    questionnaire, would still not be able to follow this Court's

 3    instructions, and that's why we object to any kind of excuse

 4    solely based on the questionnaire.

 5              THE COURT:  Okay.  I understand.  This person will be

 6    excused on the questionnaire for cause.

 7              MS. MOORE:  Okay.  Your Honor, plaintiffs object to

 8    Juror 66 being excused for cause solely based on the

 9    questionnaire.

10              THE COURT:  But --

11              MS. MOORE:  No.  I'm sorry.  I've got it in the stack,

12    Your Honor.  That's the -- sorry.

13              MR. STEKLOFF:  That's the one --

14              MS. MOORE:  That's the one we've already discussed.

15              THE COURT:  That's the woman whose husband has

16    non-Hodgkin's lymphoma.

17              MS. MOORE:  Yes.  I'm sorry, Your Honor.  I'm going

18    through my stack and I'm trying to roll through.

19              THE COURT:  Oh, I understand.

20              MS. MOORE:  We've already talked about that one.

21              THE COURT:  I know it's difficult.

22        Okay.  So no objection to excusing 66?

23              MS. MOORE:  Based on the papers, no, Your Honor.

24              THE COURT:  Okay.

25              MS. MOORE:  Okay.  All right.
```

1          **THE COURT:**  Anyone else from that pile?

2          **MS. MOORE:**  Yes, Your Honor.

3      Oh, Your Honor, I skipped 41.  I apologize, Your Honor.

4          **THE COURT:**  41?

5          **MS. MOORE:**  Yes.

6          **THE COURT:**  All right.  Let's go back to that.

7      All right.  Let me see.  Give me one moment here.

8                    (Pause in proceedings.)

9          **THE COURT:**  Okay.  Number one, this person has

10     flooding on her mind and she's 68 years old, and she expresses

11     concern about driving from the town of Sonoma.  I don't know if

12     that on its own would be enough, but she also talks about how

13     her father's cancer was caused by exposure to radiation and how

14     her father's decline was long, slow, and exceedingly painful.

15     I took that to mean that it would be a painful experience for

16     her to go through a trial about somebody with cancer.

17         And then she says, "I follow environmental news" -- this

18     is not a big deal, but it supports the point that I made

19     earlier about foreign regulators.  She says, "I follow

20     environmental news on the Internet.  I know that Roundup has

21     been banned in several European countries," which is incorrect.

22         And then she says later on, "I'm aware that Roundup is a

23     powerful herbicide that is also killing insects.  I would like

24     to see its main ingredient banned in my country.  Monsanto has

25     fought all attempts to regulate it."

1    So why isn't the totality of that enough to excuse her for

2  cause on the papers?  And sort of a combination of cause and

3  hardship because I take what she says about her father to be a

4  hardship issue as well as potentially a cause issue.

5        **MS. MOORE:**  Your Honor, if we were going to excuse

6  everyone who may have said they have some kind of cancer, we

7  might not have many left.  And so -- but we object on excusing

8  her merely on the papers.  Again, if we could take a few

9  minutes and explore that with her on Wednesday, I think that's

10  worth the time.

11        **THE COURT:**  I understand that every objection you make

12  today is just an objection to merely excusing somebody on the

13  papers, and you want to take a few minutes to talk to them on

14  Wednesday.  I understand that.  That objection applies to every

15  objection you make today --

16        **MS. MOORE:**  Thank you, Your Honor.

17        **THE COURT:**  -- so you don't need to repeat it.

18        **MS. MOORE:**  Thank you, Your Honor.

19        **THE COURT:**  But do you have anything specific

20  regarding this juror that you want to say that you think I'm

21  missing?

22        **MS. MOORE:**  Your Honor, again, in response to those

23  questions that you pointed out, in particular Number 23, it

24  does not address whether or not she would still be able to

25  follow this Court's instructions.  And the question itself says

1    "Do you have any opinions or feelings about Monsanto or any

2    chemical company that may make it difficult?"  It doesn't say

3    that you would not follow the law.  That's what --

4            **THE COURT:**  I'm not focusing on the question.  I'm

5    focusing on the answer that she gave, which is far more

6    important, I would think, than the question.

7            **MS. MOORE:**  Well, whether she wants to have it banned

8    in her county does not have anything to do with whether or not

9    she can follow the evidence in this case.

10           **THE COURT:**  Oh, county, not country.  I'm sorry.  I

11   missed it.

12           **MS. MOORE:**  But whether she wants to have it banned in

13   her county or not, that doesn't have anything to do with her

14   duties as a juror, and I think that's worth asking her those

15   questions.  And it may turn out, Your Honor, that you're right

16   and I'm wrong and we'll agree on that on Wednesday, but I'd

17   like the opportunity to ask her those questions.

18           **THE COURT:**  Okay.  I understand, but I'm going to

19   excuse her for cause.

20           **MS. MOORE:**  All right.  The next --

21           **THE COURT:**  I'm going to say it's a combination of

22   cause and hardship because of what I said earlier.

23           **MS. MOORE:**  Okay.  Thank you, Your Honor.

24       On Juror Number 67, we object on this one.

25           **THE COURT:**  Okay.  Let me turn to that.

1          Oh, the epidemiologist.  Okay.  So, let's see, so this is

2   Number 67 is an epidemiologist, and...

3                      (Pause in proceedings.)

4          **THE COURT:**  So one question we can discuss is whether

5   being an epidemiologist in itself disqualifies you.  I'm not

6   sure that it does, but she says here, "I would use my expertise

7   in epidemiology to evaluate the quality and persuasiveness of

8   the evidence."  That, I guess, raises a concern that, you know,

9   she might bring in outside knowledge, but I guess I will say

10  that alone wouldn't disqualify her on the papers because we

11  would want to have a conversation with her about that.

12         "Had a sudden reaction to a freshly opened roll of tape

13  once.  My husband was exposed to Agent Orange in Vietnam as a

14  pilot and has a nodule in his lung that has been investigated

15  by the VA."

16         Then she says, "I believe they," Monsanto, "have been

17  implicated in the past for pushing ahead to develop products

18  without regard for long-term health effects.  I think my

19  ex-husband did a PBS documentary about them that covered

20  Silent Spring and so forth, and I helped him sift through

21  documents for this."

22         Then she says, "I'm suspicious that Monsanto is hiding the

23  truth or suppressing research."

24         **MS. MOORE:**  But then she continues, Your Honor, and

25  states, and this is in response to Question 23, "However, I

1   would do my best to weigh the evidence in an impartial manner."

2   And that's why we believe that excusing her for cause merely on

3   the papers would not be proper, and we ask that she be brought

4   in on Wednesday.

5           THE COURT:  But, then -- and I -- and so now I'm

6   looking at the answer to Number 25, and I think this is what

7   did it for me.  She says, "I think it is similar to

8   Agent Orange" -- saying I think Roundup is similar to

9   Agent Orange -- "which my husband was exposed to in Vietnam as

10  a pilot, and he thinks it may have led to his son's disability

11  as well as a nodule of some kind in my husband's lung."

12      So you're saying that we should not excuse for cause an

13  epidemiologist who believes that Roundup is similar to

14  Agent Orange?

15          MS. MOORE:  Well, what I'm saying is based on the

16  papers alone that we shouldn't do that.  And, again, obviously

17  this case is not about Agent Orange, Your Honor, and that's

18  something that the Court is going to instruct the jury, that

19  you should only consider the evidence that's presented before

20  you.

21      She states in response to 23 she would do her best to

22  weigh the evidence and in an impartial manner, and I think a

23  follow-up question to judge her state of mind is appropriate.

24                  (Pause in proceedings.)

25          THE COURT:  Any response?

1          **MR. STEKLOFF:**  We agree with Your Honor's position on

2     this.  Not only is she an epidemiologist, which I think we

3     could debate whether that is enough to strike someone for

4     cause, I think it's not ideal, I think it's a macro issue.

5          I'll just flag, Your Honor, we have over 100 jurors.  Even

6     with the strikes you're doing, we agree that 40 is a good

7     number to bring in on Wednesday.  I mean, there are 40 sort of

8     clean slates here.  I'm not saying the other ones couldn't

9     serve as jurors, but I think just practically, as a practical

10    matter, favorable -- if we can find people generally, and I'm

11    not -- I mean, I'm not going to try to overpush on cause

12    challenges.

13         **THE COURT:**  Before we get to this individual, I will

14    say that I disagree with you on that general point.

15         **MR. STEKLOFF:**  Okay.

16         **THE COURT:**  I don't think that's the way to approach

17    jury selection.  We don't say, "Eh, we have plenty of jurors

18    here and so let's resolve doubts about a particular juror in

19    favor of excusing them."  I don't think that's appropriate.  I

20    don't think that would be an appropriate way to conduct jury

21    selection.

22         And so I'm really looking here only to excuse people who

23    make it pretty clear that they are not going to be a fair juror

24    based on their questionnaire responses.

25         **MR. STEKLOFF:**  That's fair enough, and I won't raise

1  it again, Your Honor.

2      But I think she has an epidemiology background, a

3  psychopathology and psychology background that she also

4  references later in her answers.

5          THE COURT:  Yeah, but I don't think that --

6      MR. STEKLOFF:  She says that she was involved in a

7  PBS -- she thinks she was involved in her ex-husband's PBS

8  documentary that covered Monsanto-related issues and that she

9  may have helped him sift through some of the documents.  So she

10  maybe brings some background about Monsanto into the case.

11         THE COURT:  And since it's a PBS documentary, we can

12  assume it was not a favorable one to Monsanto.

13     MR. STEKLOFF:  I would think so.  I don't know what it

14  was about, but it was called "Silent Spring," which also

15  doesn't sound -- just probably doesn't sound favorable.

16     MS. MOORE:  And, Your Honor, if I may, just for that

17  Question 21, we're assuming what her relationship with her

18  ex-husband is.  We're assuming that she agreed with him about

19  the PBS documentary.  We're assuming that she may remember any

20  of these documents.  I just don't think that's fair.

21         THE COURT:  Yeah, but in the end -- I think we can get

22  bogged down in the details, but the bottom line is we have an

23  epidemiologist who thinks Roundup is like Agent Orange, and I

24  don't think we can have that person on our jury.  So I'm going

25  to excuse her for cause.

```
 1        Anybody else in my pile?
 2             MS. MOORE:  Yes, Your Honor.  Number 71.
 3             THE COURT:  Okay.
 4             MS. MOORE:  And I wasn't sure the basis of striking
 5   this person for cause on the papers only.
 6             THE COURT:  Yes.  So I think it was language, but let
 7   me flip through it to refresh my recollection.
 8                     (Pause in proceedings.)
 9             THE COURT:  Yes, it was language.  And this person,
10   you know, she says, "I have trouble understanding new
11   vocabulary at times."  There's going to be a lot of new
12   vocabulary in this case so I don't think -- I think somebody in
13   that situation -- you know, maybe if it's a civil case
14   involving, you know, a more accessible issue, that would be one
15   thing, but I don't think -- I think that answer disqualifies
16   her.
17             MS. MOORE:  Okay.
18             THE COURT:  Okay.
19             MS. MOORE:  And then the next one, Your Honor,
20   plaintiff objects to Juror Number 84 being struck solely on the
21   papers.
22             THE COURT:  This is the one who said "Pay the man"?
23   Did we already discuss -- oh, this is somebody different?
24             MS. MOORE:  Yeah, this is different.
25             THE COURT:  Okay.  84?
```

 1          **MS. MOORE:**  Yes, Your Honor.

 2          **THE COURT:**  Okay.

 3                    (Pause in proceedings.)

 4          **THE COURT:**  Oh, yes.  This person, my -- okay.  So

 5  this person got a B.A. in 2015 from U.C. Berkeley on molecular

 6  and cell biology with an infectious disease emphasis, is a

 7  laboratory manager in an immunology lab.

 8          **MS. MOORE:**  And, Your Honor, as you pointed out on the

 9  last juror, just simply because of that degree, where she was

10  an epidemiologist --

11          **THE COURT:**  Right.

12          **MS. MOORE:**  Yeah.

13                    (Pause in proceedings.)

14          **THE COURT:**  I guess I'm mildly surprised that you're

15  objecting to this.  So I might have expected Monsanto to object

16  to excusing this person.

17      Number 84 says, "I wrote 'yes,'" saying that I wrote that

18  I can fairly evaluate the evidence, "but from my background,

19  this would require overwhelming evidence.  Cancer development

20  requires many steps so saying one causative agent created the

21  cancer would be tough to prove but possible."

22      Then this is our favorite response, which is in response,

23  and it's not a reason to excuse --

24          **MS. MOORE:**  Which question are you looking at,

25  Your Honor?

1            **THE COURT:**  I'm looking at 18.

2            **MS. MOORE:**  Okay.

3            **THE COURT:**  This is not a reason to excuse the person.

4    Actually it makes me want them on the juror.  It says "Have you

5    or anyone close to you experienced side effects from exposure

6    to a chemical?"

7            "Well, that is a bad question because everything is a

8    chemical so, yes."  Then he says, "Personally I've worked with

9    chemically mutated mice."

10           Let's see, what else was there?  Just as an aside, we may

11   end up talking about this later, but a number of jurors

12   expressed concerns about Monsanto generally as a company or

13   specifically with respect to the issue of GMOs or seed patents

14   and soybeans and the like.  I did not think that those people

15   should be excused for cause --

16           **MS. MOORE:**  Okay.

17           **THE COURT:**  -- because I think that they should be

18   asked, at least on the papers and probably not at all, of

19   course depending on their responses to follow-up questions.  So

20   that's just a side note there.

21           **MS. MOORE:**  Thank you, Your Honor.

22       I guess where we were it was on 23 and, again --

23           **THE COURT:**  Hold on.

24           **MS. MOORE:**  Oh, I'm sorry.

25           **THE COURT:**  Yes.  23 is "I'm probably biased.  I have

1   a background in cancer work.  I dislike the previous practices

2   from Monsanto.  I believe that I could give a fair evaluation,

3   but I do have background in this sort of case."

4        So my thinking was that this person might just be too

5   close to the field.  It's a combination of two things really:

6   Being too close to the field and having a bias against

7   Monsanto.  Where maybe one of those things in isolation

8   wouldn't be enough, but in combination maybe it should cause

9   this person to be excused.

10        **MS. MOORE:**  And our position, Your Honor, is just on

11  23 when they went back and they actually -- it looks like they

12  reread their answer and they inserted "believe that I could

13  give a fair evaluation," that, alone, we believe, justifies

14  bringing them back in and not excusing them on the papers

15  alone.

16        **THE COURT:**  Okay.  Any response on that one?

17        **MR. STEKLOFF:**  We agree with Your Honor.  I think it

18  is the combination.  I think it's the expertise not only in

19  toxicology but also in 23 this juror mentions cancer work.  So

20  it's a combined expertise.

21        **THE COURT:**  Yes.

22        **MR. STEKLOFF:**  And then I think the bias that -- the

23  bias that we see against Monsanto, it more seems like on the

24  seed side but there is a bias against Monsanto and the

25  combination.

1    **THE COURT:**  I actually think that this one -- I mean,

2 particularly when you look back at his answer, the one that I

3 read at the outset about how he thinks it's hard to prove that

4 any particular thing caused cancer, I actually think, like,

5 when you consider his answers in their totality, maybe it's not

6 obvious that this person should be excused.

7   So I'm actually not going to excuse Juror Number 84 on the

8 papers for cause.  I'm going to leave -- we're going to call

9 him back -- call him in.  So let me put him back in a different

10 pile here.

11    **THE CLERK:**  So just for clarification of my records,

12 everybody that you list in this order except for Juror

13 Number 84 in the cause challenge section is excused?

14    **THE COURT:**  That's correct.

15    **THE CLERK:**  Thank you.

16   **MS. MOORE:**  And then, Your Honor, I believe --

17    **THE COURT:**  So far.

18    **THE CLERK:**  Right.  Just in this.

19    **THE COURT:**  Yes.

20   **MS. MOORE:**  Yes.

21   And, Your Honor, I believe that you moved 115 in your

22 order from the hardship section to the cause section.  So it

23 would follow 84.

24    **THE COURT:**  Right.

25   **MS. MOORE:**  So if we wanted to address that one now.

1          **THE COURT:**  Okay.

2          **MS. MOORE:**  And plaintiffs object, Your Honor, for the

3   reasons I've stated as to striking for cause based on the

4   papers.

5          **THE COURT:**  Well, and this person said it's likely

6   toxic.  Okay, yeah.

7       Well, first of all, I'll go ahead and excuse this person

8   for cause just as a matter of expediency because we know that

9   this person is going to get dropped off the list anyway because

10  she's Juror Number 115.  We're not going to be calling her in

11  Wednesday anyway.  So just so that I don't have to switch her

12  and move her to a different pile, I will go ahead and excuse

13  her for cause.  But actually, for the record, I think she

14  should be excused for cause based on what she said about

15  Roundup.

16      Okay.  So that's it, right, from my pile?

17         **MR. STEKLOFF:**  Yes, Your Honor.

18         **MS. MOORE:**  Yes, Your Honor.

19         **THE COURT:**  Okay.  So, then, from my pile we are

20  excusing Number 4 for cause.

21      Sorry.  This will take a minute.  I'm just doing my list.

22      Number 6, Number 41, Number 53, Number 66, Number 67,

23  Number 71, and Number 115.

24      Okay.  So those are all the ones that I thought should be

25  excused on the papers.  I assume you will have more.

1    By the way, just while it's on my mind, what we'll do is

2   we are going to ask the jury office to produce a new list --

3   Kristen, correct me if I'm wrong about this -- we're going to

4   ask the jury office to produce a new list after today's

5   proceedings are done so that everybody has a new number.

6   They're going to stay in the same order, but it's going to be 1

7   through 40; or if you think it should be more, it can be

8   1 through -- we can talk about that.

9        **MS. MOORE:**  Okay.  But they won't be re-randomized?

10  They'll just be shifted up?

11       **THE COURT:**  They will not be re-randomized.  They will

12  remain in the same order.

13       **MS. MOORE:**  Thank you, Your Honor.

14       **THE CLERK:**  So you want them 1 through 40 then?  I was

15  going to have them move the people but still keep their

16  original number so as not to confuse the record later where

17  Juror Number 3 is now Juror Number 1.

18       **THE COURT:**  Well, what I was thinking is that we're

19  going to be -- when we're doing jury selection on Wednesday, it

20  would be pretty weird to be -- I mean, we're going to need to

21  put them in their seats; right?  And that's the seat for Juror

22  Number 1, and it would be pretty weird to be, like, Juror

23  Number 37, Juror Number 63.  Maybe no based on the look that

24  you're giving me.

25       Well, either way.  We'll do it one of those two ways, but

1     we'll --

2            MS. MOORE:  Well, and I think Ms. Mellen's point too

3     is that later --

4            THE COURT:  Oh, you're siding with her?

5            MS. MOORE:  Well --

6            THE CLERK:  That's a smart thing to do.

7            MS. MOORE:  I can't win on this one, I really can't,

8     but probably.

9        It's just for the record today we've been referring to

10    these juror numbers, and so it could get confusing, you know,

11    if someone ends up with -- because one of the ones that you

12    struck for cause was Juror 4, Your Honor, and then there will

13    be another 4, and I don't know how we'd be able to tell which

14    one's which later.

15           THE COURT:  Hmm.  Well --

16           MS. MOORE:  Is that what you're saying?

17           THE COURT:  You could.  I mean, it can be done either

18    way, but I'll give some more thought to --

19           MS. MOORE:  I don't have strong feelings on it, but --

20           THE COURT:  Yeah.  I want to just -- we can certainly

21    do it either way.  I want to give some more thought to what is

22    going to be easier in terms of managing the jury selection on

23    Wednesday.

24           MS. MOORE:  I understand, Your Honor.

25           THE COURT:  Because we can always file something that

 1  gives cross-references to the numbers.

 2          **MS. MOORE:**   That make sense because I agree with you,

 3  it would seem weird Juror 45 sitting here and --

 4          **THE COURT:**   Yeah.   And, for example, we have somebody

 5  passing around the mic, and if somebody says "Juror Number 8,"

 6  you know, then you know to go to that seat --

 7          **MS. MOORE:**   Right.

 8          **THE COURT:**   -- which is where Juror Number 8 sits;

 9  right?   And, you know, so it doesn't make the process more

10  efficient.

11          **MS. MOORE:**   Is that how you number, Your Honor?   Do

12  you start Juror 1 there (indicating)?

13          **THE COURT:**   Juror 1 will be in the back closest to me.

14          **MS. MOORE:**   Okay.

15          **THE COURT:**   1 through 7 will go on the back row, and

16  then 8 through 14 will go on the next row, and then they start

17  in the front row on this side.   All the jurors will stay on

18  this side of the courtroom.   And if I recall correctly, Juror

19  Number 15 is closest to the aisle.

20          **THE CLERK:**   Right.

21          **THE COURT:**   And then we go down and then start again

22  on the next row closest to the aisle.

23          **MS. MOORE:**   Okay.

24          **THE COURT:**   It will probably be, like, two rows I'm

25  guessing.

1          **MS. MOORE:**  Okay.  Thank you, Your Honor.

2     Okay.  So do you want to start going through other --

3     let's go in numerical order of the remaining jurors and if

4     anybody has anybody for cause or hardship, why don't we start

5     with -- why don't we start with Monsanto because I've been

6     talking to the plaintiffs for a long time.  I'll take a break

7     from them and go to you.

8          **MR. STEKLOFF:**  I think I will have more during this

9     portion.

10         **THE COURT:**  Why don't we go through yours and then

11    we'll go through theirs.

12         **MR. STEKLOFF:**  Okay.  Someone will pass me up a note

13    if I miss one.

14    But the first I would like to start with, Your Honor, is

15    Number 9.

16         **THE COURT:**  Okay.

17    All right.  And what do you want to draw my attention to?

18         **MR. STEKLOFF:**  I would like to draw your attention to

19    first sort of a combination of answers starting with Number 21.

20    This juror says, "Monsanto produces Roundup, which contains

21    chemicals that have been shown to be toxic -- I don't have a

22    reference but this is my best recollection -- to humans and/or

23    mice.  As a master gardener trained through U.C., we recommend

24    less toxic methods first before using products that could harm

25    the environment."

1      So this person comes in with some beliefs about the

2    toxicology of Roundup.

3         **THE COURT:**  This is a little bit ambiguous, though,

4    because it's in response to the question "Have you heard, read,

5    or seen any news reports about Monsanto?"  So it's not clear

6    whether this person is saying she believes -- he or she, I

7    can't remember -- believes that Roundup contains chemicals that

8    are toxic to humans and/or mice or whether she's read reports

9    suggesting that or reports reporting those allegations.

10        **MR. STEKLOFF:**  And I think we see in her further

11   answers that she might shine some light on that, Your Honor.

12   Specific to that question in Number 25, she does say that she

13   has used Roundup but she hand pulls first the table, but then

14   says, "I'm aware of some of the studies done to show Roundup's

15   toxicity."  So she's saying that she's aware of -- she herself

16   is aware not through news reports but it sounds like through

17   studies.  And if you look at 23, while it is caveated and

18   there's no check box on "Yes" or "No," she says she perhaps --

19   she answers "Perhaps" to that question about her opinions or

20   feelings.

21        And so -- and then, you know, her answer to 28 while

22   probably not by itself is not -- I think is, again, part of the

23   totality where she's even saying I think clearly she would

24   award money but then is expressing so much sympathy for people,

25   that she's saying, "That's not enough because how could you

ever give money to someone -- how could you give enough money

for suffering?"

And then in 30 she says, "As a scientist, I would do,"

this one is a little vague but, "I would do research on the

product Roundup and review what I've been taught via U.C.

master gardeners."

She does admit clearly, to be clear, that she won't look

up the case or other cases.

So this one just as a totality, given the gardening

backgrounds, elements of where she has looked at studies that

she thinks show Roundup toxicity, and her answer which I think

expresses a high level of sympathy for people who are harmed,

we would move for cause on her.

THE COURT:  Yeah.  I mean, I think, you know, then she

goes on on her explanation sheet to say that she wouldn't do --

"I wouldn't do further research."  And she said, "In

conclusion, I feel I have common sense and would do best not to

be biased during a trial."

I think this is the kind of person you want in.  I mean,

it raises kind of -- reraises the more general philosophical

discussion we had earlier about whether you want -- you know,

whether the point of jury selection is to eradicate any

prospective juror -- eradicate the jury pool of anyone who

reads the newspaper or has any knowledge about what's going on

in the world, and I think the answer to that question is no.

1          And if somebody has been reading articles about Monsanto

2     or Roundup or has some -- you know, or uses it in gardening, is

3     careful with it, I don't think that's enough on its own to

4     excuse somebody.

5          So I will -- I understand your objection, but I don't

6     think this person should be excused on the papers.

7               MR. STEKLOFF:  The next one, Your Honor, is Number 18.

8     This is, I believe, a student.  So starting -- I'd like to draw

9     your attention to a few answers.  Again, I think most of my

10    arguments will be totality arguments to be clear, Your Honor.

11         So starting with Question 20, she notes that her --

12              THE COURT:  She went to the seed lecture; right?

13              MR. STEKLOFF:  Yes.

14              THE COURT:  Oh, this is the one --

15              MR. STEKLOFF:  Right.  She's the one who went to the

16    seed -- some sort of environmental lecture.

17              THE COURT:  Yes.  Yes.

18              MR. STEKLOFF:  But also she notes that her uncle

19    worked for Monsanto before being fired.

20              THE COURT:  Yes.

21              MR. STEKLOFF:  Then she went to a lecture that talks

22    about the harm that is caused by chemicals and now they've

23    tried to change countries' laws about seed patients so that

24    they can get more money --

25              THE COURT:  I think -- I'm guessing she means seed

1    patents.

2              **MR. STEKLOFF:**  I think that's right.

3         -- so that they can get more money and a monopoly.

4         And then in response to Number 23, again --

5              **THE COURT:**  Which, by the way, there's nothing

6    inaccurate about that, is there?

7              **MR. STEKLOFF:**  I'm not --

8              **THE COURT:**  Monsanto has seed patents so that it can

9    have more money and a monopoly; right?

10             **MR. STEKLOFF:**  I haven't looked into that issue to be

11   able to tell you, Your Honor.

12        Number 23, she talks about, again, this environmental

13   lecture that just happened; and then --

14             **THE COURT:**  Yeah.  It seemed like she's saying it

15   happened yesterday.  Like, so she went on Tuesday?

16             **MR. STEKLOFF:**  That is how I read it.

17             **THE COURT:**  Yes.

18             **MR. STEKLOFF:**  And then it seems like at that

19   environmental lecture, the *Johnson* case was discussed.  She

20   goes on to say, "I have also learned about the environmental

21   effects of the chemicals in my environmental classes."

22        And so this --

23             **THE COURT:**  Where is the indication that the

24   *Johnson* -- oh, "Including a trial" --

25             **MR. STEKLOFF:**  -- "where someone won."

1              THE COURT:  Okay.

2              MR. STEKLOFF:  So, you know, again, to me this is a

3    totality issue where I think she's hearing a lot about

4    chemicals, is seeking out -- this isn't just someone who's

5    being aware of the news.  She's actively going to environmental

6    lectures where these issues are being discussed, including the

7    *Johnson* trial; and is expressing in 23 that she has opinions or

8    feelings about Monsanto or chemical companies, but I think

9    she's clearly talking about Monsanto in her prior answers, that

10   may make it difficult for her to fairly evaluate the case.

11             THE COURT:  Okay.

12             MS. MOORE:  Your Honor, if you back up to the page

13   before, page 5, in response to 22 "Have you heard, read, or

14   seen anything about a recent trial in San Francisco involving

15   Monsanto," she checked "No."  And that alone -- the plaintiffs'

16   position is that that alone, if they had heard of the trial

17   last summer, is not enough to strike someone for cause.

18        We would object to the defendant's motion to strike Juror

19   Number 18 for cause because there is nothing on the papers

20   alone that says that she will not follow the Court's

21   instruction or follow the law in this case simply because she

22   went to an environmental lecture.

23             THE COURT:  Well, what about the fact that she checked

24   "Yes" to Question 23?

25             MS. MOORE:  I don't think checking "Yes" to

1   Question 23 is sufficient to strike for cause.

2       **THE COURT:**  For the record, to make clear for the rest

3   of our discussion, I agree with you on that, that merely

4   checking "Yes" to a question like that on its own is not

5   enough.  So the question is whether that plus her substantive

6   answers in their totality should disqualify her.

7       **MS. MOORE:**  I understand, Your Honor.  In her answer

8   she doesn't say anything that she wouldn't be able to follow

9   the instructions of the Court.  She says she's heard some

10  stories, and then she talks about the environmental lecture

11  that she attended.  She doesn't say what it was.  Monsanto's

12  attorney said this clearly tells us.  It does not clearly tell

13  us.

14      Again, we're saying bring her in.  Let's ask her some

15  follow-up questions.  Then let's revisit whether or not she's

16  appropriate for a cause strike.

17      **THE COURT:**  All right.  I think she's -- I had her as

18  a definite maybe.  I mean, this was almost strike on the

19  papers, but let's bring her in.

20      **MS. MOORE:**  Thank you, Your Honor.

21      **MR. STEKLOFF:**  The next one, Your Honor, is Number 25.

22      First, Number 25, Your Honor, in the hardship question

23  says that she has preplanned and paid work travel every week

24  beginning February 20th through March 30th.

25      Then in addition --

1          THE COURT:  Oh, yeah.

2          MR. STEKLOFF:  Then in addition to that, Juror 25, and

3     I understand the comments you made previously about seeds, but

4     in Question 21 talks about Monsanto's, in her words, "bullying

5     reputation in the agricultural world."

6          In 23 checks "Yes" and says, "I have general negative

7     feelings toward Monsanto as an agricultural monopoly that seems

8     to put profits above all else."

9          In 28 says, "Most companies" -- describes this as sort of

10    a David and Goliath situation.

11         So --

12         MS. MOORE:  It does feel like that sometimes,

13    Your Honor, I tell you.

14         THE COURT:  I mean, I think the only possible reason

15    we would excuse this person on the papers is because of the

16    scheduling issues.  And my feeling about that was I generally

17    don't have a lot of sympathy for executives who consider

18    themselves very important and need to travel a lot, and I

19    generally do not -- you know, especially executives who work

20    for big companies that have a lot of money and can presumably

21    deal with the inconvenience of having one of their people serve

22    on a jury, and I think this person might fit that description,

23    at least it's possible.  So I thought -- I didn't think that

24    was a reason to excuse her, and I don't think the other

25    comments she made are a reason to excuse her on the papers.

1          **MR. STEKLOFF:**  Juror Number 30, Your Honor, is a juror

2     who, I believe, while it's in remission -- I am not -- I just

3     think based on the comment you made about a spouse earlier

4     having non-Hodgkin's lymphoma -- I believe this is a she -- her

5     sister -- in Question 17, it is in remission but her sister had

6     non-Hodgkin lymphoma.

7          So --

8          **THE COURT:**  Yeah, I wouldn't -- I mean, based on the

9     comment that I made, there's a little bit of a difference

10    between a spouse and a sister but not much.  I think probably

11    this person should be excused.

12         **MS. MOORE:**  Your Honor, and I would just object on the

13    basis of the objections I raised earlier about excusing her

14    only on the papers.  She doesn't really answer very much.  Her

15    responses don't tell us very much at all about her.

16         **THE COURT:**  Yeah, but you agreed that the spouse -- so

17    you're saying when your spouse has non-Hodgkin's, you should be

18    excused; but when your sister has non-Hodgkin's, they shouldn't

19    be?

20         **MS. MOORE:**  The difference, Your Honor, in those two

21    papers is the one for the spouse she went in and explained on

22    17d and she had a written response on that.  This woman did

23    check -- yes, it is a woman -- this woman did check, Juror 30,

24    on 17d "Yes," but -- well, and there's no reason I guess for

25    her to explain it there, but there's not much information

```
 1   there.

 2        So on the papers alone, I'm not saying she wouldn't be

 3   struck for cause, you know, when we're here Wednesday, but on

 4   the papers --

 5            THE COURT:  I'm going to excuse Number 30 for cause

 6   based on that, based on the sister having non-Hodgkin's

 7   lymphoma.

 8            MR. STEKLOFF:  I'm going to try to be very efficient

 9   with these, Your Honor.

10            THE COURT:  That's okay.

11            MR. STEKLOFF:  31.  I've heard what you've said about

12   prior knowledge of the Johnson trial.  In Question 22, there

13   was just a level of detail that we didn't see in any other.  I

14   think this had the most level of detail as compared to any

15   other questionnaire.  Not only, you know, she knows it's a

16   school custodian but what really jumped out to me was the

17   reference to PPE; and so given that --

18            THE COURT:  PPE?

19            MR. STEKLOFF:  That's the personal -- I might get this

20   wrong.  So that's the personal protective equipment where we've

21   been talking about gloves and other things and Tyvek suits.

22            THE COURT:  Yes.

23            MR. STEKLOFF:  And so that level of detail --

24            MS. MOORE:  Well, the problem is -- I'm sorry.

25            MR. STEKLOFF:  -- that is also expressed in 24.
```

1          **THE COURT:**  Well, that person probably knows that

2    acronym from their job.  And I understand your point, but this

3    person -- the fact that this person describes what they read in

4    the paper in a more articulate way than some of the others is,

5    if anything, a reason to have them on the jury, not a reason to

6    excuse them as long as they make clear that they can be fair

7    notwithstanding what they've read in the papers.

8          **MR. STEKLOFF:**  The next, Your Honor, is 35, I believe.

9          **THE COURT:**  Okay.

10          **MR. STEKLOFF:**  Juror Number 35, first, in the hardship

11    question says that she is the primary driver for both children

12    to and from school.  Her husband just started a new position

13    with a 5:45 a.m. start time every day.  So I assume that makes

14    it difficult for her.

15          **THE COURT:**  And she lives in Rohnert Park, which is

16    quite a ways away.

17          **MR. STEKLOFF:**  Uh-huh, yes.

18          **THE COURT:**  I would be inclined to excuse that person

19    on hardship alone.

20          **MS. MOORE:**  And, Your Honor, our objection is that she

21    lists that she's the primary driver so that, to me, it's

22    unclear that means there's someone else who could drive.

23       I would also note that her children -- her oldest is 16.

24    It's unclear whether or not the 16-year-old is driving to

25    school, and so that's why we would object for excusing for

 1   hardship on the papers alone.

 2                    (Pause in proceedings.)

 3        **THE COURT:**  Okay.  You were going to mention something

 4   else about her.

 5        **MR. STEKLOFF:**  Yes.  First of all, just they have a

 6   16-year-old and a 14-year-old who go to two different high

 7   schools.  So whether the 16-year-old is driving, I don't -- it

 8   seems clear that she is expressing that she is at least driving

 9   the 14-year-old to high school every day.

10        But in Question 23, again, you know, this is in the

11   question about opinions or feelings about Monsanto or any

12   chemical company, she talks to -- about her sympathy and about

13   having worked with cancer patients.  And so I think the

14   hardship is a stronger basis, but I do think that that is

15   relevant.

16        And then in 31 she also mentions Dr. Richard Turley, who

17   is one of the treating physicians for Mr. Hardeman, whose

18   testimony I expect will be played during trial.  He was the

19   ear, nose, and throat doctor who biopsied Mr. Hardeman's tumor

20   which led to his diagnosis of non-Hodgkin's lymphoma, and he

21   does work at Kaiser.  So I assume that's him.

22        **THE COURT:**  Okay.

23        **MS. MOORE:**  Your Honor, we would object to move to

24   strike -- for the cause strike for Juror 35 on the papers

25   alone.

 1          Starting backwards, Dr. Turley was the ENT who performed

 2    the biopsy.  I believe that Mr. Hardeman saw him once and had a

 3    communication with him by e-mail on the diagnosis, but he's not

 4    been his treating physician.  Dr. Turk is his primary care

 5    physician.  So I don't think that alone would be the basis to

 6    strike for cause.

 7          And then with respect to sympathy, sympathy is not a basis

 8    to strike someone for cause, Your Honor, and so we would object

 9    to that.

10          And then I believe those are the only cause arguments that

11    defense raised, and so that's why we believe it would be

12    inappropriate to strike her for cause.

13          With respect to the hardship issue, again, we would just

14    ask that she be brought in, you know, for jury selection on

15    Wednesday and we could explore that a little bit more.

16          **THE COURT:**  Okay.  But I see now that it's two

17    different schools and between the fact that she worked with

18    somebody who is a witness in the case, however important or

19    unimportant the witness is, and given the hardship issue, I'm

20    going to excuse her for both hardship and cause.  That's Juror

21    Number 35.

22          **MS. MOORE:**  Your Honor, I understand your ruling but I

23    will just point out in 31 she says "possible."  So she's not

24    even sure so I don't think that should be a basis, and --

25          **THE COURT:**  Yeah, but we're sure because we just

```
 1   identified that it's the same person.
 2       Okay.  Next?
 3           MR. STEKLOFF:  Yes, Your Honor.  Number 46.
 4       Number 46 I would draw your attention, Your Honor, to
 5   Question 24.  This is not, I think, mere knowledge of the
 6   Johnson trial and verdict but at the end of his description of
 7   that --
 8           THE COURT:  This was the "He was just doing his job."
 9           MR. STEKLOFF:  Exclamation point.
10           THE COURT:  Yeah.  That was a definite maybe for me
11   too.  I think this one was very close.
12           MR. STEKLOFF:  And then I also would note on
13   Question 28 he checked "Yes" and then wrote "There is no amount
14   of money -- there is no amount of money can bring someone
15   back," and then crossed it out.
16       And then Question 29 goes on to, again even though it is
17   not the -- whether it's responsive or not to the question,
18   again brings up Mr. Johnson and says "He was doing his job" and
19   believes there will be no damage when using the product.  So in
20   response to that question, it is again referencing the Johnson
21   trial.
22           THE COURT:  And I think that this person -- you know,
23   we talked about how we might break out the group of people who
24   were exposed to the Johnson verdict and have a separate
25   conversation about that with them, and he would be in this
```

1  group and we would need to seek assurance from him that

2  regardless of what he read in the papers, that he would be able

3  to, you know, not prejudge the case and consider it based only

4  on the evidence that comes in in the courtroom, and we would

5  want to see how he answers that.

6      So I agree it's close, but I'm not going to excuse him on

7  the papers.

8      **MR. STEKLOFF:**  Okay.  Next, Your Honor -- sorry.  I

9  need to switch binders, which means we're past 50 so that's

10  good.

11                 (Pause in proceedings.)

12      **MR. STEKLOFF:**  Yes.  So the next one is --

13      **THE COURT:**  You know what, since you switched binders,

14  maybe this is a good time to take a little break.  Why don't we

15  take a -- why don't we come back at 2:00 o'clock.  Take a

16  little break, come back at 2:00.  Okay?

17      **MS. MOORE:**  Thank you, Your Honor.

18      **MS. MATTHEWS JOHNSON:**  Thank you, Your Honor.

19      **THE CLERK:**  Court is in recess.

20                 (Recess taken at 1:45 p.m.)

21              (Proceedings resumed at 2:03 p.m.)

22      **THE COURT:**  Since you-all are now in the business of

23  resolving disputes between me and Kristen, Kristen thinks we

24  should have 10 jurors.  What do you-all think?

25      **MS. MOORE:**  Your Honor, we would object to that

```
 1   number.  We think that's too high.

 2            MR. STEKLOFF:  I think that's a good idea, Your Honor.

 3            MS. MOORE:  And, Your Honor, I guess, maybe -- I'm

 4   sorry.  I didn't hear what Defense said.

 5            THE COURT:  He said it's a good idea.  So he agrees

 6   with Kristen and you agree with me.

 7            MS. MOORE:  See, sometimes, Your Honor, I go back and

 8   forth.

 9        So I guess maybe if I could ask the Court to explain.  So

10   yesterday -- or, no, two days ago when we were here, you had

11   said that you would have 9 in the box.  Would that be 9 that

12   then would deliberate?

13            THE COURT:  Absolutely.  You have to do that.

14            MS. MOORE:  Okay.  Well, I just didn't know if you

15   would excuse any before deliberations or not.

16        Okay.  Then we would object to 10.  We have the burden of

17   proof and now that's raised us from 9 to 10.  I will tell you

18   in the Johnson case -- of course, they had 12 jurors -- they

19   had three alternates, which it was state court, so they had 15

20   members that sat through that entire trial and no one ever, you

21   know, asked to be excused.

22        So --

23            THE COURT:  It was the summertime, though.  I mean,

24   it's wintertime now and, you know, flu has been going around

25   and all that.
```

1              **MS. MOORE:**  Well, I understand.  I think they even

2    broke because of the Fourth of July; right, Mr. Burton?

3              **MR. BURTON:**  Yeah, we had sick jurors.

4              **MS. MOORE:**  They had sick jurors.  One of them

5    actually came and, like, coughed and sneezed throughout the --

6    I know.  Well, I mean, I think they were dedicated.  The point

7    is they're dedicated.

8         I mean, that would greatly increase our burden to have 10

9    unanimous jurors versus 9.  So we would ask for 9 and the Court

10   stay with where it was on Wednesday.

11             **THE COURT:**  Okay.  I'll think about it a little bit

12   more, but assume 9 for now unless you hear otherwise.

13             **MS. MOORE:**  Okay.  Thank you, Your Honor.

14             **THE COURT:**  Okay.  Do you want to continue?

15             **MR. STEKLOFF:**  Yes, Your Honor.

16        Let me just make a proposal.  I have taken your guidance.

17   I'm not saying you're going to agree with me on the rest, but

18   I've taken your guidance.

19        So I have six challenges between 50 and 90, and what I

20   would propose is maybe -- I don't want to waive challenges past

21   90, but if I stop there and Ms. Moore raises any challenges she

22   has up through 90, I suspect we can count and there will be

23   enough left.  Wherever you land on, whether you want to bring

24   in 40 or more, we will have enough at that point.  So just for

25   purposes of efficiency.

1          **THE COURT:**  That's a good idea.

2          **MS. MOORE:**  That's fine, Your Honor.

3          **MR. STEKLOFF:**  So the first, Your Honor, that I have

4    is Number 54.

5          **MS. MOORE:**  Which number, Counsel?

6          **MR. STEKLOFF:**  54.

7          **MS. MOORE:**  Thank you.

8          **THE COURT:**  Okay.

9          **MR. STEKLOFF:**  Juror 54 in Question 17 says, "It's

10   almost certain that the cause of cancer is linked to some

11   product exposure."

12         **THE COURT:**  Okay.

13         **MR. STEKLOFF:**  In Question 21 says, "I have not heard

14   positive reports regarding Monsanto.  They are repeatedly

15   called out for irresponsible farming."

16         **THE COURT:**  Okay.

17         **MR. STEKLOFF:**  In Number 23 checks "Yes" to that

18   question we've discussed and talks about how it is chemical

19   causing -- it is more generic about chemical companies, but

20   talks about that they are responsible for causing sickness in

21   individuals who are exposed and that they pay politicians to

22   push through their agenda.

23       24 talks about Roundup being linked to negative health

24   effects from exposure.

25       And so given the totality of those answers, we think this

1    is a juror that has expressed bias that should not be brought

2    in on Wednesday.

3        **THE COURT:**  Okay.  I understand, but I think we'll

4    bring them in on Wednesday and see what they say.

5        **MR. STEKLOFF:**  The next is 56.  56 writes in

6    Question 19, "Have you heard of Monsanto?"  "Yes."  And puts

7    "Evil" in all caps with an exclamation point.

8        **THE COURT:**  Is there any aspect of that that you

9    dispute?

10        **MR. STEKLOFF:**  That one I have researched, and I do

11    dispute that one, Your Honor.

12        She says that in 20 she boycotts their products.

13        In 21 she talks about GMO, you know, proprietary seeds.

14        In 22 when just asked about the recent trial, she says

15    "Roundup is poison that kills" with an exclamation point.

16        **THE COURT:**  Okay.  I get your point.

17        **MR. STEKLOFF:**  Yeah.

18        **THE COURT:**  I didn't look through this one, but I've

19    now looked through this whole one, and it seems pretty clear

20    that this person needs to be excused.

21        **MS. MOORE:**  And, Your Honor, plaintiffs would object

22    to excusing her for cause based solely on the papers for the

23    reasons that we stated this afternoon, that these questions do

24    not ask whether they can follow the Court's instructions and

25    follow the law, and we would ask for the opportunity to ask

those questions of her.

          THE COURT:  Okay.  And, by the way, all of these
questionnaires will be contained in the record so I don't need
to repeat all of her answers out loud right now, but it's very
obvious that this person needs to be excused for cause based on
her answers.

          MR. STEKLOFF:  Number 62, Your Honor, is my next one.
This one I am moving for cause but, you know, I'm only pointing
you to Question 23.  I think there's some knowledge in
Question 25 and Question 21 about Roundup and the litigation,
and Question 22 as well.

     And in Question 23 when you add in those --

          THE COURT:  Wait.  I may be looking at the wrong one.
Which number are you pointing me to?

          MR. STEKLOFF:  I hope I said 62.

          THE COURT:  62?  I had 61 in my hand.  Sorry.

          MR. STEKLOFF:  No problem.

                    (Pause in proceedings.)

          MR. STEKLOFF:  I guess I shouldn't say I'm only
pointing you to 23.

     62 is a breast cancer survivor in Question 17.

     62 is aware of the Roundup case, although not specifically
in Question 21.

     But then in 22 seems to be aware of more than what is
expressed in Question 21 because then some details about the

1    *Johnson* case are laid out.

2        And then in Question 23 says "Yes" to that question with

3    the answer that you can read about super polluters and profits

4    over people, which actually, I would speculate, might be an

5    exact theme that we hear from plaintiffs' counsel in this case.

6    Maybe not in Phase I but in Phase II.

7        And then Question 24 goes on, Question 25.

8        So there's just a lot of questions that, again, this is a

9    totality argument we think demonstrate this is not a juror that

10   should be brought in.

11           **THE COURT:**  Okay.  I disagree.  I think they should be

12   brought in, and I don't think -- I certainly don't think this

13   person should be excused for cause on the papers.

14           **MR. STEKLOFF:**  Next is 63, Your Honor.

15           **THE COURT:**  Okay.

16           **MR. STEKLOFF:**  And it's really Question 24.  And I'll

17   acknowledge Question 23 the answer is "No"; but then

18   Question 24 says, "I know that I read enough to know how

19   horrible it is for our environment and water and anyone who has

20   direct contact with it.  I am 100 percent against the use of

21   Roundup."

22        That seems like a bias that cannot be put aside even if

23   this person says that she can listen to the evidence and follow

24   the law.  And so that is the basis for our position on Question

25   Number -- on Juror Number -- sorry -- 63.

1        **THE COURT:**  I think that probably disqualifies her.

2    What's your position?

3        **MS. MOORE:**  Your Honor, we would object to cause

4    strike on the papers because on Number 23, "Do you have any

5    opinions or feelings about Monsanto that may make it

6    difficult," she answered "No."  And so I think that the

7    difference between 23 and 24 creates ambiguity that would

8    require her to come in for *voir dire* and then we can actually

9    explore that with her.

10        **THE COURT:**  It doesn't seem particularly ambiguous to

11    me.  I'm going to excuse her for cause.

12        **MR. STEKLOFF:**  And two to go, Your Honor, under my

13    proposal.

14      Juror 75 is next.

15        **THE COURT:**  Okay.

16        **MR. STEKLOFF:**  Starting at 75 -- sorry, starting at

17    Question 21, Juror 75 is an avid gardener who won't use

18    Roundup.

19        **THE COURT:**  Okay.

20        **MR. STEKLOFF:**  And then has talked to other people --

21    indicates in that answer that she has talked to other people

22    who won't use Roundup.

23      In Question 22 does have knowledge of the *Johnson* case,

24    although admittedly not the exact amount for the verdict, a

25    much lower number.

1          **THE COURT:**  Wishful thinking on your part.

2          **MR. STEKLOFF:**  Question 23 answers "Yes" and again

3   says, "I won't use Roundup or allow my gardener to use it."

4   And then talks about a friend who expresses views that -- who

5   worked for Monsanto who views them as dangerous.

6          And so based on that, again, understanding that she might

7   come in and say she could listen to the evidence, that seems

8   like a pretty strong bias against Roundup specifically, and we

9   would move for cause on her.

10          **MS. MOORE:**  Your Honor, it's not clear.  We would

11   object to any type of strike cause on the papers alone.  The

12   language actually says "claims," and again --

13          **THE COURT:**  Sorry?  What?  I didn't get the language.

14   What?

15          **MS. MOORE:**  On Number 22 --

16          **THE COURT:**  Yes.

17          **MS. MOORE:**  -- he's talking about that he claims he

18   used the Roundup, causes cancer.  The jury found Monsanto

19   responsible awarding him a lot of money, somewhere over a

20   million dollars.  That's completely inaccurate factually.

21          So, again, you know, whether he has knowledge of the

22   *Johnson* trial, whether it's accurate or inaccurate, is not

23   grounds enough to strike him for cause.  And there's several

24   people on here that have knowledge of the *Johnson* trial even if

25   they don't have it accurate.

1              (Pause in proceedings.)

2        **MS. MOORE:**  And this goes back to what the Court was

3   saying earlier about generally negative feelings toward

4   Monsanto is not sufficient for a cause strike, and that's what

5   this really is.

6        I mean, I understand why they want to move to strike him

7   for cause, and I will say that almost everyone who's been

8   struck for cause today is because they have some negativity

9   toward Monsanto with the exception of the two people with the

10  experience with NHL.  And so, again, striking this person for

11  cause on the papers alone, we would object.

12       **MR. STEKLOFF:**  This goes beyond Monsanto, though,

13  Your Honor.  It goes specifically to Roundup and --

14       **MS. MOORE:**  But that is Monsanto's product.

15       **THE COURT:**  Just let me peruse the questionnaire for a

16  minute.

17              (Pause in proceedings.)

18       **THE COURT:**  I think the combination of saying "Yes, it

19  would be difficult for me to be fair to Monsanto" with the

20  content of the responses means that this person should be

21  excused for cause so I will excuse this person for cause on the

22  papers.  That's Juror Number 75.

23       **MS. MOORE:**  Your Honor, just for point of

24  clarification, where does he say that he would not be fair to

25  Monsanto?  I may have missed that, but I don't see it.

1          **THE COURT:**  They answered "Yes" to 23 saying it would

2    be difficult to be fair to Monsanto.

3          **MS. MOORE:**  Well, the question is "may make it

4    difficult for you to fairly evaluate."

5          **THE COURT:**  I said it was the combination of the

6    response to Number 23 saying "Yes" and the content of the

7    responses that I think justifies excusing that person for cause

8    on the papers.  That's my final ruling on that.

9        Next?

10         **MR. STEKLOFF:**  This is my last one, Your Honor.

11   Number 81.

12       Number 81, if you look, first of all, at his employment --

13   and I'm not suggesting that this alone is sufficient --

14   implements and coordinates the local Storm Water Pollution

15   Prevention Program for the city" -- for a city.  I won't go

16   into specifics.

17       And then starting at Question 21 has a lot of knowledge

18   about the *Johnson* case.  I mean, I will say that this is not --

19   this is not as anti-Monsanto as some of the other ones that

20   we've discussed but does seem to have a lot of knowledge both

21   about Roundup, Monsanto, chemicals, if you continue on through

22   23 where he says, "Yes"; if you look at 21, 22, and 25.

23       And so that's really our basis, is just the combination of

24   sort of unique knowledge of the product.

25         **THE COURT:**  Okay.  And I think that in contrast to the

1    last one, even though this person answered "Yes" to 23, the

2    content of the responses don't justify excusing this person for

3    cause on the papers.

4         So that's it for Monsanto up to Number 90?

5              **MR. STEKLOFF:**  Yes, Your Honor.  Thank you.

6              **THE COURT:**  Okay.  And then why don't we go through

7    whatever remaining ones the plaintiffs have.

8              **MS. MOORE:**  Okay.  Thank you, Your Honor.

9         Number 7.

10             **THE COURT:**  Okay.  Who is the last person we excused?

11   Was it Number 75?

12             **THE CLERK:**  Yes.

13             **MR. STEKLOFF:**  Yes, Your Honor.

14             **THE COURT:**  Okay.  I just want to make sure my records

15   were up to date.

16        All right.  Number 7?

17             **MS. MOORE:**  Yes, Your Honor.  Juror Number 7 has a

18   personal experience where they lost their child at age 4 and

19   filed a lawsuit, and he discusses in here that --

20             **THE COURT:**  Where are you?

21             **MS. MOORE:**  I'm sorry.

22        If you turn, Your Honor, to the bottom of page 2.

23             **THE COURT:**  Okay.

24             **MS. MOORE:**  He explains the basis of the malpractice

25   lawsuit.  And then if you continue over, Your Honor -- and I'll

 1   note he's -- well, I won't note that.

 2        If you continue over, Your Honor, to the damages question

 3   on Number 28 on page 7, that is where he talks about the

 4   malpractice caps in California being 250,000 and not having

 5   been changed since the 1970s.  And he talks about at the end

 6   that life isn't fair.

 7        This one to me is more personal than someone whose sister

 8   has non-Hodgkin's lymphoma and would impact his ability to be

 9   fair in this case given his own personal experience where he

10   believes that the system was unfair to him and his family.  We

11   would move to strike him for cause based on that.

12        **THE COURT:**  Yeah, I mean, I just -- I don't think I

13   can do that given that he says "Life is not fair but I can be

14   an impartial juror."  You're entitled to ask him more questions

15   about it, obviously.  We'll do that privately with him because

16   he marked it on his questionnaire, but I'm not excusing him on

17   the papers.

18        **MS. MOORE:**  Okay.  Thank you, Your Honor.

19        The next one is Number 8.

20        **THE COURT:**  Okay.

21        **MS. MOORE:**  And on this one if you turn, Your Honor,

22   over on page 4, Number 17d, in the last sentence there Juror 8

23   writes, "I'd be very hard-pressed to find any single causative

24   factor unless dosage" -- I think "were" -- I can't read what

25   that says -- "to extreme limits beyond normal range."  So he

uses the word "extreme."

And then if you go on, Your Honor, to the next page on Number 21 --

**THE COURT:**  Wait.  Hold on.

**MS. MOORE:**  I'm sorry.

**THE COURT:**  Let me read that whole answer.

**MS. MOORE:**  Go ahead.

**THE COURT:**  "There are many factors and it would be very hard to attribute cancer to a single other party. Additionally, food toxicology has made me keen about toxicity levels; and concerning Monsanto, I'd be very hard-pressed to find any single causative factor unless dosage were taken" -- maybe --

**MS. MOORE:**  I believe so, Your Honor.

**THE COURT:**  -- "to extreme limits beyond normal usage."

Okay.

**MS. MOORE:**  And so we think that's a bias against the plaintiffs in this case, Your Honor, and would increase the burden of proof that we're required to meet under the law.

The next page on his response to 21 is referring, I believe, there to the *Johnson* case, and he says, "A man sued for Roundup glyphosate as the causative agent of his cancer." He said, "He won not because it was the causative factor but, rather, because the jury believed it may be a contributing

 1    factor," which was a lone reason, but that's --

 2          **THE COURT:**  Yeah.  In other words, he seems clearly to

 3    have prejudged this particular issue.  I tend to agree that

 4    this person should be excused for cause.

 5          **MS. MOORE:**  Absolutely, Your Honor.  That's our basis

 6    for our motion to strike for cause.

 7          **MR. STEKLOFF:**  I mean --

 8          **THE COURT:**  I mean, given all the people I just

 9    excused for Monsanto --

10          **MR. STEKLOFF:**  I will not fight it, Your Honor.

11          **THE COURT:**  Okay.  All right.

12          **MS. MOORE:**  Okay.  And next, Your Honor, is Number 42.

13    And on this one, Your Honor, plaintiffs move to strike for

14    cause.  I'll first start toward the back of the questionnaire,

15    and this is on Number 29.  And this juror believes that "for

16    punitive damages should be only done where conform is" -- I

17    think that that's what it says -- "is criminally negligent."

18          And so they're confounding the standard there, and so

19    they've prejudged that we would have to show that Monsanto was

20    criminally negligent in order to be awarded punitive damages.

21          **THE COURT:**  Obviously the response to that is "Would

22    you be able to follow the instructions," and we don't know

23    what -- that may be their opinion, but can they follow the

24    instructions that I give them.

25          So do you have anything else in that questionnaire?

1           **MS. MOORE:**  Yes, Your Honor.  In response to Number 23

2    on page 6, he checked "Yes" to that question; and then he says

3    in there that "Feels that chemical exposure is difficult to

4    prove that it has no effect on humans.  On the other hand, is

5    difficult to prove one human gets cancer while others don't

6    despite exposure to the same chemical and that chemical is

7    responsible."

8         So, again, it goes back to prejudging on this one.

9           **THE COURT:**  Anything else on that one?

10          **MS. MOORE:**  No, Your Honor.  That's the basis for our

11   motion.

12          **THE COURT:**  Okay.  I don't think that is reason to

13   excuse this person for cause.

14        Next.

15          **MS. MOORE:**  The next one, Your Honor, is Juror 70, and

16   if I could direct the Court's attention to 17d.  This is

17   another person whose family member -- it's actually his wife,

18   so it's a spouse -- had Hodgkin's.

19        And then he also goes on --

20          **THE COURT:**  What is the difference between Hodgkin's

21   and non-Hodgkin's lymphoma?  I never actually stopped to

22   research that question.

23          **MS. MOORE:**  I'm probably not the best person to

24   explain that, Your Honor, but it is -- non-Hodgkin's lymphoma

25   and Hodgkin's, it's two different things.  I'm not sure, you

1 know, which one is here.  I don't know if it really makes a

2 difference for our trial purposes.

3          **THE COURT:**  Why not?  I mean, if they're two different

4 diseases, then in one instance the person has a loved one who

5 has the actual disease that the plaintiff has and in the other

6 instance, they don't.  That seems like a big difference.

7          **MS. MOORE:**  I understand, Your Honor.  That's not the

8 sole basis of our motion to strike for cause.  If you continue

9 down to 17d, he's talking about his father-in-law and he says

10 there "He always told me how" -- I think he's supposed to say

11 "how" -- "safe Roundup is.  I believe him."

12          **THE COURT:**  Uh-huh.

13          **MS. MOORE:**  So he has prejudged that Roundup is safe,

14 and I think the totality of that --

15          **THE COURT:**  I actually think there was something else

16 in this --

17          **MS. MOORE:**  It's Number 23, Your Honor.

18          **THE COURT:**  -- questionnaire that said something

19 similar.

20          **MS. MOORE:**  If you go to 23, he checked "Yes," and he

21 says, "I feel they," meaning Monsanto, "typically are very

22 honest and helpful to society."

23      And 25 also, and he believes it's a safe and effective

24 product when used as labeled.

25          **THE COURT:**  I didn't think anyone in the Bay Area felt

1    that way about --

2          **MS. MOORE:**   I didn't either, Your Honor, but

3    apparently we found him out of 100-and-something people.

4          I think the totality of that, that he thinks it's a safe

5    and effective product, he thinks they're honest and helpful to

6    society.

7          **THE COURT:**   Yeah.   I mean, I did take a close look at

8    this questionnaire before we came out here, and I had it marked

9    as a definite maybe, but I think it doesn't quite rise to the

10   level of excusal for cause on the papers.

11         And, you know, I'll just say that I -- you know, as with

12   every jury selection, you know, you have people with different

13   opinions and you have somebody saying that the cops are all

14   corrupt and you have somebody saying that the cops are all

15   wonderful, and we have a nice discussion about that in open

16   court; and at the end of the day, we pick a jury that's not

17   biased.

18         **MS. MOORE:**   And I understand that, Your Honor, and I

19   agree with that.

20         I will note that the strikes for cause by Monsanto, which

21   typically is about, you know -- I know why they did it, it's

22   because those jurors don't particularly -- you know, there's

23   some feelings about Monsanto in there.

24         This one is definitely prejudicial against the plaintiff.

25   They've already made up their mind that Roundup is a safe and

1  effective product, and they obviously put some weight into

2  their father-in-law who's deceased and made an effort to put on

3  their questionnaire that "He always told me it's safe and I

4  believe him."

5      And so I think for those reasons that it's clear on the

6  papers that he is coming to this biased and with a prejudge.

7                    (Pause in proceedings.)

8          **THE COURT:**  I think this is likely somebody who will

9  have to be excused for cause, but I'm not certain enough.  I

10  don't think it's quite likely enough to excuse them on the

11  papers.

12          **MS. MOORE:**  Thank you, Your Honor.

13      The next one -- well, it's above 90 so I don't know if we

14  want to go there or not.

15          **THE COURT:**  I don't think it's necessary.

16          **MS. MOORE:**  Okay.

17          **MR. STEKLOFF:**  I think -- my count might be off, but I

18  think we have approximately 50 in the first 90 who are left at

19  this point.

20          **THE COURT:**  Okay.  Well, why don't we count that.  Let

21  me take -- let me look at my list -- take a moment to look at

22  my list here.

23          **MR. STEKLOFF:**  My count is bad.  I'm hearing 65,

24  Your Honor.

25          **THE COURT:**  Hey, Kristen, the other -- I guess the

1  argument for keeping the numbering the way it is is that the

2  number is already attached to their questionnaire.  So I'll

3  give that a little bit more thought.  I want to think about the

4  mechanics of selection on Wednesday.

5      How have we been doing it in our criminal cases because

6  we've been using a questionnaire for a couple years now in our

7  criminal cases?

8          **THE REPORTER:**  Do you want this on the record,

9  Your Honor?

10          **THE COURT:**  No.  This doesn't have to be on the

11  record.

12              (Discussion held off the record.)

13          **THE COURT:**  We're going to do it Kristen's way on

14  Wednesday.  So we're going to keep the same numbers.

15          **MS. MOORE:**  Thank you, Your Honor.

16      I think there's 55 approximately left in the first 90.  So

17  we would be fine with the first 40.

18          **THE COURT:**  Do you guys both agree that the first 40

19  sounds about right?

20          **MR. STEKLOFF:**  I mean --

21          **THE COURT:**  We have 9 jurors, possibly 10, plus 6

22  peremptory challenges.  So if that's 15, then we bring in 40,

23  that leaves us 25 people who would need to be excused for cause

24  or hardship before we have a problem.  It seems very unlikely

25  that we're going to be excusing 25 people.

1          I mean, I'm fine -- do you want to call in 45 just to be

2     safe?

3          MR. STEKLOFF:  I was going to throw out 50,

4     Your Honor, just -- I mean, I'm not trying to waste people's

5     time, but why -- you know, we all know that people come up with

6     extra hardships and then you will probably push them and say

7     "Why didn't you raise that in your questionnaire?"  But I

8     just --

9          THE COURT:  Yeah.

10          MR. STEKLOFF:  I don't know why we would risk not

11     getting a jury on Wednesday.

12          THE COURT:  But usually by the time we've vetted

13     people and they've done a questionnaire, we're left with a

14     group of people who are very -- almost want to serve on a jury

15     or particularly interested in it.

16          MS. MOORE:  And we've gotten -- Your Honor, based on

17     the Court's decisions today, I mean, that's almost -- that's

18     35, roughly, people who have been struck.  So I think we've

19     vetted it.  I think 40 should be sufficient.

20          MR. STEKLOFF:  To me bringing in 5 to 10 extra people,

21     Your Honor, just -- I understand that that's making them come

22     in for half to two thirds of a day, but I think I would rather

23     be safe than sorry.  So, I mean, there's been a lot of planning

24     so we can go forward on the 25th, and I think that makes sense.

25          THE COURT:  Yeah.  Give me one second to just go

1    through this list here.

2                        (Pause in proceedings.)

3          **THE COURT:**  Let's go ahead and bring in 45 people,

4    which I think, if my math is correct, the last person who would

5    be on that list would be Juror Number 79.  Even if I'm wrong

6    about that --

7          **MS. MOORE:**  That's 45.

8          **THE COURT:**  -- let's bring in the first 45 people on

9    the list.  That will be fine.  That will be plenty.

10         **MS. MOORE:**  All right.  Thank you, Your Honor.

11         **MR. STEKLOFF:**  Okay.  Thank you, Your Honor.

12         **THE COURT:**  Is there anything else you want to discuss

13   regarding jury selection right now or any questions that you

14   have?

15         **MS. MOORE:**  Your Honor, do you permit any type of

16   mini-opening for jury selection?

17         **THE COURT:**  No.

18         **MS. MOORE:**  Okay.  And then we have 45.  I assume,

19   then, it would be 14 here, and then starting with the remainder

20   in the gallery.  And Your Honor would start with your

21   questions; is that --

22         **THE COURT:**  Yeah.  So --

23         **MS. MOORE:**  Can you walk us through the process?

24         **THE COURT:**  Yes.

25         **MS. MOORE:**  Thank you.

1          **THE COURT:**  Let's talk it through now and because of

2     the nature of this trial, we may tweak my normal process a

3     little bit, including separating out people who know about the

4     *Johnson* verdict.

5          Let me just say again regarding the *Johnson* verdict, I do

6     not believe it is necessary or required to separate out the

7     subset of prospective jurors who indicated on the questionnaire

8     that they had heard about the *Johnson* verdict.  I do not

9     believe that's necessary.

10         I believe it would be appropriate, particularly in a civil

11    trial, for all of us to have a discussion about that in the

12    room.  And I think there is an argument, even thinking about it

13    from Monsanto's standpoint, that it would be beneficial to

14    Monsanto if that discussion about how the jurors are not

15    supposed to substitute their judgment for the jury in the

16    *Johnson* case, for that discussion to be in front of all the

17    prospective jurors.  I think that arguably could be beneficial

18    to Monsanto.

19         I don't think that there's a requirement to separate

20    anybody out.  However, if Monsanto wants, I will do a separate

21    discussion of the *Johnson* case and I will leave it up to

22    Monsanto who the jurors are, who should be separated out, and

23    who should not be separated out.

24         But I will say that if something comes up inadvertently

25    about the *Johnson* case or if somebody makes brief mention about

 1    the *Johnson* case in front of the whole group, I don't think

 2    that's problematic at all.

 3         And, you know, everybody will get an instruction that

 4    they're not supposed to consider, once they're a member of the

 5    jury, anything they heard during *voir dire* so I don't think

 6    that's a big deal and I don't think it's going to be a reason

 7    to stop the jury selection or anything like that.

 8         But if you want, you know, Monsanto can come with a list

 9    of people that we want to have a separate group discussion with

10    about the *Johnson* case.  Okay?

11         So here is the way I think it will go.  We'll bring the 45

12    people in.  We'll welcome them.  You-all can introduce

13    yourselves.  I'll give them the blurb -- you know, repeat the

14    blurb on what the case is about, and then I will do hardships

15    with them.  I'll ask about hardships.  Presumably that will not

16    take much time at all.  There may be one or two people who have

17    hardships.

18         **MS. MOORE:**  Do you do that while they sit in the seat

19    or do you bring them up for that, Your Honor?

20         **THE COURT:**  While they sit in the seat.  We'll have

21    somebody passing a -- we'll have an intern passing a microphone

22    around to people.

23         **MS. MOORE:**  Okay.

24         **THE COURT:**  And -- I'm sorry.  I'm going back now to

25    this issue of whether to renumber the jurors or not.  Because

what happens is -- okay.  Let's say that person over there raises their hand.  Okay?  I usually know that that's Juror Number 10.

        **MS. MOORE:**  Right.

        **THE COURT:**  And so I can quickly go to my list and I can quickly pull them out -- pull their questionnaire out.  But when they raise their hand in this circumstance, I'm not going to know what number they are so I'm going to have to wait until they say their name.

    I guess they just say their name and their jury number and I'll flip to their questionnaire.  That will be fine.  That will be fine.

        **MS. MOORE:**  Okay.  We could also bring stickers, Your Honor, if you want.

        **THE COURT:**  What?

        **MS. MOORE:**  They could wear a sticker that has their number on it or a button or something.

        **THE COURT:**  It will be fine.

    So I'll do hardships with them.  Then I will ask each of them to answer a handful of questions orally, and I'll -- and, you know, we have our usual list of 10 questions that we give civil jurors.  I think we'll probably pare that down.  For example I don't think we need them to answer again whether they've been on a jury before and what kind of jury.  So I'll take a look at that questionnaire.

1          In fact, why don't we look at it together right now and

2    figure that out so that will be good for your planning

3    purposes.

4               MS. MOORE:  That's fine.

5               THE COURT:  Is that questionnaire on our website,

6    Kristen?

7               THE CLERK:  Yes.

8               MS. MOORE:  I believe it's attached to your standing

9    order, Your Honor, on civil trials.

10              THE COURT:  Okay.  Great.  Let me pull that up.

11              MS. MOORE:  It's Appendix A.

12                        (Pause in proceedings.)

13              THE COURT:  Standing order for civil trials.  It's

14   long.

15         Okay.  What's your name?  How old are you?  What city do

16   you live in?  Where were you born?  Job?  How long you worked

17   in it?  Who's your employer?

18         Why don't we do, like -- why don't we do the first 9.

19              MS. MOORE:  Your Honor, I do believe all those were

20   covered in the written questionnaire.

21              THE COURT:  Oh, I know, but the point is to just give

22   people a chance to introduce themselves.

23              MS. MOORE:  That's fine.  I have no objection to that,

24   Your Honor.

25              THE COURT:  So I was just thinking do the first 9 just

```
 1   to give people a chance to introduce themselves a little bit.
 2           MS. MOORE:  Can we also suggest, Your Honor, Number 12
 3   just with regard to English just to make sure?
 4           THE COURT:  Sure.
 5           MS. MOORE:  And then we haven't asked anyone in the
 6   questionnaire about military service.
 7           THE COURT:  Do you-all want to ask that question?
 8           MR. STEKLOFF:  I'm neutral on military service,
 9   Your Honor.
10           MS. MOORE:  Sure.
11           MR. STEKLOFF:  I actually think 11, even though we
12   have that information, just to hear from people, it's not a
13   long answer, would be helpful.
14       And I don't know -- oh, we do have -- I would be fine
15   skipping 10, but I would ask for 11 and I am neutral on 12 and
16   13.
17           THE COURT:  Okay.  So let's do 1 through 9 and 11 and
18   12 and 13.
19           MS. MOORE:  That's fine, Your Honor.
20           THE COURT:  And we'll have them answer those questions
21   verbally.  So we'll go through and we'll do that.
22       And then what I propose we do after that --
23           MS. MOORE:  Your Honor, would that just be for the
24   ones in the box or for all 45?
25           THE COURT:  For everybody.
```

1          MS. MOORE:  For everybody.  Okay.

2          THE COURT:  Yes, we'll do everybody at the same time.

3          MS. MOORE:  Thank you.

4          THE COURT:  Then what I propose we do after that is go

5     straight to the *Johnson* people probably, and I'll be

6     transparent with them about why we have separated them out.

7          MS. MOORE:  And, Your Honor, if I could note, we

8     object to any separation of those people.  I mean, in my

9     experience, what you usually can do is just say "Has anyone

10    ever heard of any other matters they believe are related to

11    this?  Does anyone think they have any preconceived notions?

12    Have you read about this in the paper?"  And just make it

13    really general because some people may have heard that, and

14    then we can determine that.

15         But, you know, I wouldn't want to really separate those

16    people out.  That makes them -- I don't know.  It seems strange

17    and we would object to that.

18         I also find that sometimes other people realize that they

19    have heard of it too when they hear other people talking about

20    it so I would rather have it be a full discussion.

21         THE COURT:  Well, that's true and maybe that will end

22    up happening; and if it does, that's too bad.  But I'm happy to

23    try to make an effort for Monsanto, if it believes that it's

24    truly in its interest, to separate out the people who have

25    heard about the *Johnson* trial and have a conversation with them

1    separately, and I don't see how that can possibly be harmful to

2    the plaintiffs in any way.

3         **MS. MOORE:**  And going into that, Your Honor, it's not

4    the Court's position that those people would be automatically

5    struck for cause just because they've heard about the case?  I

6    mean, right?  I mean, there's just -- to me, just because

7    they've heard about the *Johnson* verdict or they think they've

8    heard about it --

9         **THE COURT:**  If I thought they should automatically be

10   struck for cause, why would I be bringing them in?

11        **MS. MOORE:**  I understand, Your Honor.  I understand.

12   I just note our objection to separating them.

13        **THE COURT:**  Okay.  But if you actually have any basis

14   for asserting that it would be somehow harmful to the

15   plaintiffs to separate them, please articulate that now.

16        **MS. MOORE:**  Well, again, as I stated, I think that

17   separating the jury and having some people over here and some

18   people over here, it automatically creates preconceived notions

19   that these people have different information than the other

20   people.  And so if you get a mix on the jury of Group A and

21   Group B, Group B may look to Group A as experts because they

22   may know more information.

23        **THE COURT:**  They have no idea what we're going to be

24   talking about.

25        **MS. MOORE:**  Okay.

1          **THE COURT:**  Anyway, so after everybody -- after all

2    the prospective jurors introduce themselves by answering those

3    questions, we will separate out the jurors who have heard about

4    the *Johnson* case.

5        Monsanto, why don't you file a list of people who you want

6    separated out.  Why don't you file that just by juror number.

7          **MS. MOORE:**  Can that be filed tomorrow so I can have a

8    chance to look at it, Your Honor?  Or not tomorrow.  That's

9    Saturday.

10         **THE COURT:**  Tuesday.

11         **MS. MOORE:**  Tuesday?  Okay.  Thank you.

12         **THE COURT:**  Tuesday at 10:00 a.m.

13         **MS. MOORE:**  Thank you, Your Honor.

14         **THE COURT:**  And then we'll plan to separate out those

15   people.

16       I will spend some time with them giving them a speech

17   about how it's their -- you know, they have to exercise their

18   own judgment and it doesn't matter what happened in any other

19   case.

20       And then I will give each side a bit of time to follow-up,

21   probably like 15 minutes each.  So I'll spend a little time

22   with those jurors.  I'll give each side 15 minutes to follow-up

23   with each prospective juror on that specific issue, limited to

24   that issue.

25       Then we'll bring -- we'll give those people a break.

```
 1   We'll bring everybody back in at a certain time, and then we'll
 2   do regular *voir dire* and you can ask anybody anything, but
 3   obviously don't ask -- you should not ask follow-up questions
 4   of the separate group about any -- any further questions about
 5   the *Johnson* verdict.  Is that --
 6        MS. MOORE:  Okay.
 7        MR. STEKLOFF:  And do you know approximately how long
 8   you'll give us for that second half?
 9        THE COURT:  I'm going to see how -- I'm going to see
10   how things are going, but I'm going to guess, I think we can
11   estimate that you'll each have another half hour to do
12   *voir dire*.
13        MR. STEKLOFF:  And I think the parties submitted
14   proposed *voir dire* questions.  Just to clarify, you will not be
15   asking any -- other than the questions we just went over in
16   your -- sort of the background questions, you will not --
17        THE COURT:  I will probably also ask some general --
18   so I have to confess, I forgot to look at your proposed
19   *voir dire* questions.  Are there any proposed *voir dire*
20   questions that you-all submitted where you're objecting to the
21   other person's?
22        MS. MOORE:  Yes, Your Honor, there are.  What we did
23   is we broke it up in the sheet where we have the joint ones and
24   then we have plaintiffs and defense, and we actually I think
25   noted what the objection was.  Some of it was one of us thought
```

```
 1    the other it was duplicative or --

 2            THE COURT:  Right.  Right.  Right.

 3            MS. MOORE:  -- but I think it's pretty

 4    self-explanatory when you see it.

 5            MR. STEKLOFF:  It also was not a long list.  I mean,

 6    both of us I think asked -- tried to narrow it.  I think it was

 7    10 questions each, maybe 15, but we didn't ask a hundred

 8    questions.

 9            THE COURT:  That's fine.

10            MS. MOORE:  I'm sorry.  I don't have that with me.

11            THE COURT:  For the most part, you know, usually what

12    happens is I get a list of proposed voir dire questions.  I

13    say, "All of these seem fine.  Some of them seem dumb and I

14    can't imagine why you would want to ask those questions, but

15    it's your precious time and if you want to ask dumb questions

16    of the jury, I'm not going to stop you."

17        But I will -- before Wednesday, I will look at the

18    questions and if I have any problem with any particular

19    question that I want to prohibit you from asking, I will let

20    you know.

21            MS. MOORE:  Like, I know one, Your Honor, on the joint

22    list is "Do you know someone who has hepatitis?"  Like, that's

23    one.  So it's very generic on the joint list; and then on the

24    other one I don't think it's anything -- I just don't think we

25    felt comfortable agreeing to the others on those, but I don't
```

```
 1    think there's anything in particular -- well, I just can't
 2    remember at this moment so I won't state -- I will just rest
 3    with my objections on the paper.
 4            MR. STEKLOFF:  I have a question just to clarify.  Are
 5    we limited in our voir dire to what was submitted to you?
 6            THE COURT:  No.
 7            MR. STEKLOFF:  Okay.  I didn't think so.
 8            THE COURT:  No.  You can conduct your voir dire.
 9    Obviously I will -- I'm not shy about interjecting and shutting
10    you down and, you know, scolding you in front of the jury if
11    you do something --
12            MS. MOORE:  Oh, thank you, Your Honor.
13            THE COURT:  -- if you do something inappropriate.
14        But what I think I was going to say, and maybe haven't
15    said yet, is that I will do a few initial, like,
16    raise-your-hand questions about following the law.
17            MS. MOORE:  Okay.
18            THE COURT:  Is there anything else you want to tell us
19    about your views that we might want to know?  You know, like a
20    few -- I'll probably do a few raise-your-hand questions like
21    that.
22            MS. MOORE:  Okay.
23            THE COURT:  I think what I'll probably do is first
24    we'll focus on the Johnson people.  And then we'll take a
25    break, we'll bring everybody back in, I'll ask a few more
```

```
 1   general raise-your-hand questions of everybody, and then I'll
 2   turn it over to you.  So that's basically how it will go.
 3           MS. MOORE:  Okay.
 4           THE COURT:  And I would expect -- you know, I think
 5   this will probably go a little bit longer than a typical civil
 6   jury selection, but not a lot given the work we've done on the
 7   questionnaires, and I wouldn't be surprised if we had a jury
 8   by, you know, 1:00 o'clock, or something like that, or even a
 9   little bit earlier.
10           MS. MOORE:  Okay.
11           MR. STEKLOFF:  Okay.
12           MS. MOORE:  All right.  Thank you, Your Honor.
13                       (Pause in proceedings.)
14           MS. MOORE:  Your Honor, just for planning purposes, do
15   you have any idea of how many would be in each row in the
16   gallery?  I know you said we started with 15.
17           THE CLERK:  It's tough to say.  I think I've had
18   anywhere from, like, eight to ten but we can just limit it to,
19   like, seven just to be safe.
20           MS. MOORE:  That would be great.  If we could just
21   know ahead of time.
22           THE COURT:  Planning in advance?
23           MS. MOORE:  Yes.
24           THE COURT:  Just seven people per row.
25           MS. MOORE:  Okay.  Thank you, Your Honor.
```

1          **THE COURT:**  Seems like a lot of space for seven

2     people.  Go eight?  Let's say, what does it look like?  What do

3     these people look like out here?  One, two, three, four, five,

4     six, seven.  I think seven is probably all right, yeah.  15,

5     22, 29.  Yeah, that's fine.

6          **MS. MOORE:**  Okay.

7          **THE CLERK:**  Just for safe purposes, I think we should

8     probably just call out in the record who's been excused

9     specifically.  While I was following along, I got to 45 jurors

10    as Juror Number 78 so I think I'm missing somebody somewhere.

11         **MS. MOORE:**  That would be helpful, Your Honor, just to

12    make sure.

13         **THE COURT:**  Okay.  So you should stop me and interrupt

14    me if I've forgotten somebody.

15         **MS. MOORE:**  Okay.

16         **THE COURT:**  Okay?

17       Should I just list the numbers of the people who have not

18    been excused or have been excused?

19         **THE CLERK:**  Either way.

20         **THE COURT:**  Let's go not been excused.  So feel free

21    to jump in, interrupt me if I'm missing something.

22       So here are the people who will be coming in, and stop me

23    also when I get to 45 if you can.  Can somebody do that?

24         **MR. STEKLOFF:**  Yes, Your Honor.

25         **THE COURT:**  Okay.

```
 1          1, 2, 3, 5, 7, 9, 10, 11, 13, 15, 16, 18, 20, 22, 24, 25,

 2     26, 28, 29, 31, 32, 38, 40, 42, 43, 44, 45, 46, 47, 48, 52, 54,

 3     58, 59, 60, 61, 62, 64, 65, 68, 70, 74, 76, 77, 78.
```

 4          **MR. STEKLOFF:**  Stop.

 5          **THE COURT:**  That's 45?

 6          **MR. STEKLOFF:**  That's what I have.

 7          **THE CLERK:**  Okay.  Good.  Then I had them all.

 8          **THE COURT:**  What?

 9          **THE CLERK:**  I had them all.

10          **THE COURT:**  You had them all, okay.

11     So 78 is the last person who's coming in, which is too bad

12     because 79 is the CEO of a cannabis company.  Welcome to

13     California.

14          All right.  A quick note on sealing.  Oh, so is that it

15     on -- is there anything else you wish to talk about for jury?

16          **MS. MOORE:**  The only other question I had, Your Honor,

17     regarding process, is that --

18          **THE COURT:**  Oh, yeah.  I'm sorry.  I didn't finish

19     going through the process.  I apologize.

20     So we'll do the *Johnson*-only people if Monsanto still

21     wants that.  Then we'll call people back.  I'll do some general

22     raise-your-hand questions, and then turn them over to you-all.

23     You each get about half an hour.  And then after that, we can

24     go back into the jury room -- maybe you should each designate a

25     limited number of people to bring back there just so it's not

1   too crowded -- and you can make your cause challenges and then

2   you can do your peremptory challenges, and we'll come back and

3   we'll have a jury.

4        And I will read -- on Wednesday, after we pick the jury,

5   I'll read them a couple of -- I'll give them a couple of the

6   instructions.  They always immediately want to know if they can

7   take notes so I'll talk to them about taking notes.

8        **MS. MOORE:**  What is your position on that, Your Honor?

9        **THE COURT:**  Oh, I tell them that there will be a

10  notebook --

11       **MS. MOORE:**  Great.

12       **THE COURT:**  -- and a pen for them and that they're

13  free to take notes, but I give them a little speech about not,

14  you know, taking too many notes because it will distract them

15  from the actual evidence.

16       And I'll give them the instructions.  You know, I'll

17  instruct them, obviously, on their conduct as jurors and remind

18  them that, you know, when you guys don't look at them in the

19  hallway, it's not because you're being rude to them.

20       And then on the instructions about, you know, what is

21  evidence and what is not evidence and the preponderance of the

22  evidence and all that stuff, I'll give that to them on Monday

23  morning before opening statements.

24       But if you want, we could do it one of two ways.  I could

25  file something, which is a reflection of the instructions that

 1  I'm going to give them, or I can just tell you right now going
 2  into the Ninth Circuit Model Jury Instructions.
 3          **MS. MOORE:**  That would be fine, Your Honor, if you
 4  could tell us.
 5          **THE COURT:**  All right.  Let me just pull those up.
 6                          (Pause in proceedings.)
 7          **THE COURT:**  While I pull those up, did you still have
 8  a question?
 9          **MS. MOORE:**  I did, Your Honor.  It went to cause.  So
10  during *voir dire* if we're asking -- for example, if I'm asking
11  questions and it's very apparent that it's someone who should
12  be struck for cause, am I correct in understanding that you
13  want us to wait and do that when we go back to the jury room
14  with counsel and Your Honor?
15          **THE COURT:**  Generally speaking, yes; but if there is a
16  problem juror, if there's somebody -- you know, every once in a
17  while you get somebody who raises their hand in response to
18  every question and says something ridiculous in response to
19  every question --
20          **MS. MOORE:**  Right.
21          **THE COURT:**  -- and if it looks like there's going to
22  be one of those people and you want to call a sidebar or I want
23  to call a sidebar and tell you, you know.
24          And sometimes I will tell you -- even if it's not somebody
25  we need to excuse right away, sometimes I will find occasion to

1    tell you "You don't need to bother asking that person any more

2    questions."  I'm not going to kick them out right now, but it's

3    obvious that that person is going to be excused for cause so

4    you don't need to spend any more of your time.

5             MS. MOORE:  Well, and that's my concern, Your Honor,

6    because with jury selection with us only being allotted the

7    30 minutes, at what point am I going to know that I've met my

8    burden to strike that person for cause?  That's my concern.

9             THE COURT:  Well, and, you know, you should only do

10   it -- you should only assume that if it's pretty obvious.

11            MS. MOORE:  Okay.

12            THE COURT:  But I will also say I'm telling you

13   30 minutes, but if I think it's appropriate -- if I feel like

14   you're using your time efficiently and it would be valuable to

15   have you continue to probe jurors, I'm not going to be --

16            MS. MOORE:  Okay.

17            THE COURT:  -- real tight about it.  Okay?

18            MS. MOORE:  Thank you.  Because if we get one of those

19   problem jurors, it could eat up some of the time.

20            THE COURT:  Right.  I understand.

21            MS. MOORE:  Thank you, Your Honor.

22            THE COURT:  So let me pull up model instructions.

23                     (Pause in proceedings.)

24            THE COURT:  I'm having trouble finding them.

25                     (Pause in proceedings.)

1          **THE COURT:**  Oh, here we go.

2      Yeah, so just from Chapter 1 and Chapter 2, you know.  And

3  I give them the duty of -- you know, I give them the duty of

4  the jury instruction, of course.

5      I don't -- you know, burden of proof, preponderance of the

6  evidence, 1.9, 1.10.  I don't give 1.11 at the beginning.

7          **MS. MOORE:**  Is that something you do right before the

8  jury goes to -- well, I guess when you do the jury instructions

9  before closing?

10         **THE COURT:**  I'm guessing at Phase I we're not going to

11 really have any evidence for a limited purpose but if we do,

12 I'll give it to them at that time or at the end.

13         **MS. MOORE:**  Okay.  Thank you.

14         **THE COURT:**  1.12.  I usually add to 1.12 an

15 illustrative example.  You know, if you wake up in the morning

16 and you see that the ground is wet, that's circumstantial

17 evidence that it was raining the night before; and if you wake

18 up in the middle of the night and you see that it's raining or

19 you hear that it's raining, that's direct evidence.

20     1.13, 1.14, 1.15.

21     Publicity during trial.  Yeah, 1.16, of course.

22         **MR. STEKLOFF:**  Can I pause on that one, Your Honor?

23         **THE COURT:**  Yes.

24         **MR. STEKLOFF:**  I will concede I don't have 1.16 in

25 front of me, but given the circumstances of this trial, I would

1  request that in your own way if you're willing to give the most

2  stern warning especially because we have a break between

3  Wednesday and Monday.

4          **THE COURT:**  I would.

5          **MR. STEKLOFF:**  I would ask for that every day, I mean,

6  given the publicity of this.

7          **THE COURT:**  I'm happy to do that.

8          **MR. STEKLOFF:**  Okay.

9          **THE COURT:**  I will certainly do that on Wednesday.  I

10  will do it strongly and I will do it every -- I'm happy to do

11  it every day.

12          **MR. STEKLOFF:**  Thank you, Your Honor.

13          **THE COURT:**  1.17, 1.18, and that's about it.  That's

14  what I'll give them at the beginning.

15          **MS. MOORE:**  Okay.

16          **THE COURT:**  And then -- let me see, let me look at

17  Chapter 2.  Let me see if there's anything I usually give them

18  in the beginning.

19                      (Pause in proceedings.)

20          **THE COURT:**  No.  All that stuff I'll give -- from

21  Chapter 2 I'll just give on an as-needed basis as the trial

22  goes along.

23          **MS. MOORE:**  Okay.

24      Your Honor, along those same lines of 1.16 on publicity

25  and not, you know, giving weight to any of that, we did have a

1    meet-and-confer with the defense about whether we were going to

2    file a temporary restraining order to prohibit Monsanto from

3    any kind of geofencing or targeting jurors through social media

4    or pay-per-click ads.  And so I would just ask that that not be

5    done.  We're not doing it on our side, but I just don't want

6    any targeting of jurors, their social media or Internet means.

7              THE COURT:  Isn't it, like -- doesn't it go without

8    saying that it would be totally inappropriate?

9              MS. MOORE:  I agree with Your Honor.  I think there

10   were --

11             THE COURT:  20th floor -- I mean, not even 20th floor

12   stuff, but like --

13             MS. MOORE:  I knew you were going to say 20th floor

14   again today at some point.

15             THE COURT:  -- but not even 20th floor, like, you

16   know, solitary-confinement-type of stuff to do that?

17             MS. MOORE:  I agree with Your Honor.  And I would

18   never accuse Mr. Stekloff of that.  That is not what I'm trying

19   to do by any means.  We've had extensive meet and confers about

20   this.  It's more about directing that to Monsanto, to his

21   client.  And I think there were some allegations by DeWayne

22   Johnson that there was some geofencing; and if you ask me to

23   explain more about geofencing, I can't.  But I just want to

24   make sure it's really clear on the record.  We just want to

25   make sure there's not any kind of targeting of the jurors

```
 1   through social media or Internet.
 2          THE COURT:  Obviously nobody on either side -- nobody
 3   within a hundred miles of either side may attempt to target any
 4   juror or prospective juror with any sort of messaging.
 5          MS. MOORE:  Okay.  Thank you, Your Honor.
 6        The only other thing I had, Your Honor, is --
 7          MR. STEKLOFF:  I just only -- I apologize.
 8          MS. MOORE:  Go ahead.
 9          MR. STEKLOFF:  Only on that issue, we have had
10   discussions but no issues have been raised formally.  I
11   understand that they may have allegations, but I'm not
12   accepting those allegations.  So I just want to -- I mean, if I
13   didn't say that on the record, to be very clear --
14          MS. MOORE:  I understand.
15          MR. STEKLOFF:  -- I understand what you have said,
16   Your Honor, and of course we will abide by that, but I just
17   want to be very clear about what's happened in the past as
18   well.
19          MS. MOORE:  I understand.  And I wasn't making any
20   allegations towards Mr. Stekloff.
21          MR. STEKLOFF:  And that is also not directed at
22   Ms. Moore in any way.
23          MS. MOORE:  The only thing I had, Your Honor,
24   regarding the equipment that we can bring in, our tech person
25   has a conflict on the 19th, and I wanted to see if it was okay
```

```
 1   with Ms. Melen's schedule if he could come the afternoon of the
 2   21st to set up equipment.  And I just saw the order noted the
 3   19th so I just wanted to bring that to the Court's attention.
 4            THE COURT:  That's up to Kristen.
 5            MS. MOORE:  Okay.
 6            THE CLERK:  So the 21st?
 7            MS. MOORE:  Yes.
 8            THE CLERK:  In the afternoon?  We have court starting
 9   at 12:30 and then I have to leave by 4:00.
10            MS. MOORE:  Okay.
11            THE CLERK:  So you'll be extremely limited on time.
12   The reason I set the 19th is because I have unlimited time.
13            MS. MOORE:  Okay.  So -- well, we can talk about this
14   offline or something.
15            THE CLERK:  Yeah.
16            MS. MOORE:  Okay.
17       All right.  If Your Honor doesn't have any objection, I
18   can talk to Ms. Melen and try to work it out offline.
19            THE COURT:  Of course.
20            MS. MOORE:  Okay.  Thank you, Your Honor.
21            THE COURT:  So sealing, what did I say?  What's the
22   deadline?  Thursday --
23            MS. MOORE:  Thursday.
24            THE COURT:  -- for fixing sealing?  And you don't have
25   any questions about how -- the plaintiffs don't have any
```

1   questions about how they need to fix their filings?

2        **MS. MOORE:**  No, Your Honor.

3        **THE COURT:**  Okay.  So that includes all the, like,

4   expert reports and the expert testimony and all of that.

5   Virtually all of it will be unredacted; right?

6        For Monsanto --

7        **MS. MOORE:**  Your Honor, can I ask one thing?  I do

8   have one question on that.

9        And, you know, again I understand there's a lot going on,

10  but it would be helpful for the purposes of determining what

11  should be unsealed, any idea on the rulings for the

12  *motions in limine* or *Daubert*?  There's some --

13       **THE COURT:**  You mean what --

14       **MS. MOORE:**  Yes.

15       **THE COURT:**  Sorry.  I don't -- are you asking me when

16  the rulings will be issued?

17       **MS. MOORE:**  Yes, just approximately because I think

18  some of the rulings on *motions in limine* I think we have a good

19  idea on most of them, but I think a lot of things were sealed

20  for Mr. Hardeman's medical records, which we understand how to

21  deal with that because of the rulings on three of the

22  *motions in limine*.  So that's easy.  But there might be some

23  other things that I'm just not thinking off the top of my head

24  and so that's why I was asking.

25       **THE COURT:**  I'm having a hard time thinking of any

1   relationship between the rulings on the *motions in limine* and

2   sealing.  I mean, however the ruling comes out on the

3   *motions in limine*, I think the answer is that you have to

4   unseal everything except for personal identifying -- like,

5   Social Security numbers and other personal identifying

6   information and the information about the cause of hep C.

7          **MS. MOORE:**  Right.

8          **THE COURT:**  And I think that's it.

9          **MS. MOORE:**  Hep C and B, yeah.  Okay.

10          **THE COURT:**  Yeah.

11          **MS. MOORE:**  Okay.

12          **THE COURT:**  And then for Monsanto, let's see, there's

13   a paragraph -- I don't know how much of this affects you before

14   trial.  I don't know how much of this -- I mean, any unsealing

15   needs to be done before trial, but how much of this affects

16   you.  There was -- I know there was a paragraph from the

17   Benbrook report, paragraph 637 --

18          **MR. STEKLOFF:**  Okay.

19          **THE COURT:**  -- that cannot be sealed.

20          **MR. STEKLOFF:**  Okay.

21          **THE COURT:**  So you have to unseal that.  And I don't

22   need to hear any argument on it.

23    There are perhaps two other categories of documents for

24   Monsanto.  One is documents reflecting different formulations.

25   So, like, you know, in '92 Roundup Ready to Use had X percent

```
 1   glyphosate, X percent water, X percent potassium hydroxide,
 2   et cetera, it's not obvious to me why that needs to be sealed.
 3         MR. STEKLOFF:  I will -- I mean, I -- this is not an
 4   issue I will concede I have not focused on; but just hearing
 5   it, I suspect that one could argue that there's proprietary
 6   information about that.  At the same time I think that might
 7   potentially come out in the trial related to the background of
 8   Roundup.
 9         THE COURT:  Right.
10         MR. STEKLOFF:  So if it's okay, I will check.  I
11   suspect we would be willing to unseal that, but --
12         THE COURT:  Yeah, you can check and file any
13   objections you have by Tuesday --
14         MR. STEKLOFF:  Okay.
15         THE COURT:  -- but the order is that you unseal all of
16   that.
17         MR. STEKLOFF:  Yes, a presumption.
18         THE COURT:  Presumptive order.
19         MR. STEKLOFF:  Yes, I understand.  That's fine,
20   Your Honor.
21         THE COURT:  And then --
22         MR. STEKLOFF:  And just -- if you don't have it, we
23   will obviously find it.  Were you referring to any specific
24   document with respect to that information?
25         THE COURT:  I mean, I think there are a number of
```

```
 1    examples.

 2          MR. STEKLOFF:  Okay.  We'll track it down and assuming

 3    we're not challenging it, we'll make sure we find them.

 4          THE COURT:  If it's helpful, one of the examples is

 5    from the Sawyer report, Table 8.

 6          MR. STEKLOFF:  Okay.  Thank you, Your Honor.

 7          THE COURT:  That's on page 36, 37.  It probably

 8    appears elsewhere as well.

 9          MR. STEKLOFF:  Yes.  We'll check that, Your Honor.

10          THE COURT:  Let's see...  Oh, yeah, there were some

11    names that were redacted, again, like, as an example from the

12    Sawyer report, based on, like -- redacted based on, like,

13    European law or something like that.

14          MR. STEKLOFF:  Yeah.  And there are European privacy

15    laws, that I think we would be violating European -- again, I

16    have not dug in on this.  My understanding is that those were

17    redacted only because of European privacy laws, and that we

18    would be violating European privacy laws if we -- Monsanto

19    could get in trouble in Germany if they unredacted that

20    information here.

21          THE COURT:  Well, it may be that that's just not a big

22    enough deal.  It's so peripheral to the case that probably I'll

23    allow you to keep that under seal --

24          MR. STEKLOFF:  Okay.

25          THE COURT:  -- even though I question whether European
```

1  privacy laws could prevent me from ordering disclosure of

2  information that's relevant to a trial.

3        **MR. STEKLOFF:**  I'm not suggesting it could prevent you

4  from ordering something.  I'm just trying to explain the basis

5  for why it was redacted.

6        **THE COURT:**  But given the relative lack of importance,

7  I think, you know, it's probably not worth putting you-all

8  through the trouble and heartache of dealing with that.

9        By the way, I should say, you know, I mentioned

10  paragraph 637, which references a consulting agreement between

11  Acquavella and Farmer, so it may be that there are other

12  references to similar consulting agreements that you've sealed

13  that need to be unsealed as well.

14        **MR. STEKLOFF:**  Okay.

15        **THE COURT:**  And then another example of stuff that

16  you've sealed is what I think you've described as proprietary

17  research and an example is, again from the Sawyer report,

18  page 59, discussing the Maibach study, the 1983 Maibach study.

19  It's not appropriate to seal this and it's not appropriate to

20  seal similar research, and so all of that has to be unsealed by

21  Thursday.

22        **MR. STEKLOFF:**  Understood, Your Honor.

23        **THE COURT:**  Okay.  So you'll receive new lists with

24  the 45 people.

25        Is there anything else you want to discuss now?

1          **MS. MOORE:**  I don't think so, Your Honor.  Thank you

2     for your time.

3          **THE COURT:**  Okay.  We'll see you Wednesday morning.

4          **MR. STEKLOFF:**  Thank you very much, Your Honor.

5          **MS. MOORE:**  And we should be here at 8:00 a.m. on

6     Wednesday?

7          **THE COURT:**  Yes.  That way -- you'll be here at 8:00.

8     I'll be here at 8:00.  That way if there's any last-minute

9     issues you want to discuss with me before we bring the

10    prospective jurors in, we can do that.

11         And we will expect the prospective jurors in here at about

12    8:30; is that right, Kristen?

13         **THE CLERK:**  That's right.

14         **THE COURT:**  Okay.

15         **MR. STEKLOFF:**  The questionnaire said 7:30.  So I just

16    want to make -- that was intentional so they don't -- because

17    people are always late?  Okay.  That's a good idea.

18         **THE COURT:**  And I think they also go in there and they

19    get shown, like, a rah-rah video or something like that.

20         **MR. STEKLOFF:**  Understood, Your Honor.

21         **THE CLERK:**  They already got the rah-rah, but --

22         **THE COURT:**  They already got the rah-rah video?

23         **THE CLERK:**  Yes.  It's just to make sure they're

24    actually here.

25         **MR. STEKLOFF:**  Okay.

1      **MS. MOORE:**  Thank you, Your Honor.

2      **THE COURT:**  Thank you.

3      **MS. MATTHEWS JOHNSON:**  Thank you, Your Honor.

4              (Proceedings adjourned at 3:12 p.m.)

5                      ---oOo---

6

7

8              <u>**CERTIFICATE OF REPORTER**</u>

9          I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   DATE:   Friday, February 15, 2019

13

14

15

16   _____

17          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                  U.S. Court Reporter
18

19

20

21

22

23

24

25