UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PRETRIAL ORDER NO. 81:** |
| ALL ACTIONS | **RULING ON MOTIONS IN LIMINE** |

<u>Monsanto's Motions in Limine</u>

1. Monsanto's motion in limine 1 to exclude IARC's classification is granted in part. The fact of the classification is admissible at both phases. However, the Monograph itself will not be admitted as an exhibit. During Phase 1, the expert witnesses may use the brief discussion of IARC's independent meta-analysis, *see* Dkt. No. 2610-11 at 30, but they may not use the portions of the Monograph that merely reflect review and analysis of other studies. The jury will also be instructed on how IARC's inquiry differs from the causation inquiry in a civil trial.

Particularly during Phase 1, discussion of the IARC classification will be restricted under Rule 403 to avoid wasting time or misleading the jury, as the primary inquiry is what the scientific studies show, not what IARC concluded they show. Witnesses who participated in IARC may testify that they were members of the IARC Committee, and may further explain how that membership supports their credibility, but they must limit their scientific testimony to their own independent conclusions. And, as discussed at the hearing, Dr. Jameson will not be permitted to testify as a fact witness during Phase 1. The Court will revisit how the evidence surrounding IARC's classification may be used during Phase 2 of the trial.

2. Monsanto's motion in limine 2 to exclude references to ghostwriting is granted for Phase 1 but denied for Phase 2. This evidence is not relevant (or, at best, is marginally relevant) to causation, so its admission during Phase 1 would be unduly prejudicial and would waste the

jury's time. During Phase 2, however, this evidence is far more relevant, and its admission would not be unduly prejudicial, particularly in light of the term's use by Monsanto employees.

3. Monsanto's motion in limine 3 to exclude marketing materials is granted for both phases under Rule 401. This ruling will be revisited if Monsanto opens the door during Phase 2 by arguing, for example, that the plaintiffs' non-Hodgkin's lymphoma could have been prevented by wearing protective gear. This ruling will also be revisited prior to Stevick's trial, because she, unlike Hardeman or Gebeyehou, testified that she saw Roundup advertising.

4.1. Monsanto's motion in limine 4.1 to exclude comparisons to the tobacco industry is granted for both phases under Rule 401. Even if this evidence were marginally relevant, it would be excluded under Rule 403.

4.2. Monsanto's motion in limine 4.2 to exclude appeals to the jury regarding Monsanto's wealth is granted for both phases, except to the extent it is either relevant to punitive damages or necessary to rebut the suggestion that it would have been cost-prohibitive for Monsanto to conduct certain studies.

4.3. Monsanto's motion in limine 4.3 to exclude references to the common good and appeals to the jury to send Monsanto a message is granted for Phase 1 but denied for Phase 2. While not relevant to causation, this line of argument is appropriate for punitive damages.

5.1. Monsanto's motion in limine 5.1 to exclude references to other pending litigation is granted for both phases, except to the extent necessary for the experts to answer questions about their compensation. On that issue, the parties will make an effort to stipulate to how expert compensation will be addressed at trial.

5.2. Monsanto's motion in limine 5.2 to exclude discussion of other Monsanto products is granted for both phases, without prejudice to the plaintiffs' making an offer of proof regarding a specific product that they believe is relevant to their design defect claim during Phase 2.

5.3. Monsanto's motion in limine 5.3 to exclude evidence surrounding Bayer's acquisition of Monsanto is granted for both phases, except as necessary to explain Monsanto's financial condition during Phase 2.

6. Monsanto's motion in limine 6 to exclude evidence of the company's public-relations activities is granted for Phase 1 but denied as overbroad for Phase 2. Non-cumulative evidence of Monsanto's public-relations activities relating to glyphosate will generally be relevant and admissible during Phase 2. If there is particular evidence that Monsanto nonetheless believes should be excluded, it may bring a more targeted motion before the beginning of Phase 2. Conversely, evidence of public-relations activities by counsel for the plaintiffs will likely never be admissible, but Monsanto may make an offer of a proof regarding specific statements it believes are necessary to avoid misleading the jury.

7. Monsanto's motion in limine 7 to exclude evidence of company conduct that post-dates the plaintiffs' use of Roundup is granted for both phases under Rules 401 and 403, subject to a limited exception for evidence of Monsanto's alleged efforts to influence the outcome of a study that Monsanto relies on at trial.

8. Monsanto's motion in limine 8 to exclude evidence surrounding Proposition 65 is granted for both phases under Rule 403. Even if otherwise admissible, evidence of Monsanto's response to Proposition 65 would be excluded as post-use conduct under Monsanto's motion in limine 7.

9. Monsanto's motion in limine 9 to exclude evidence of adverse event reports is granted for both phases under Rules 401 and 403, without prejudice to the plaintiffs' making an offer of proof regarding a specific adverse event report that they believe is relevant to Phase 2.

10. Monsanto's motion in limine 10 to exclude discussion of the Seralini study is granted for both phases under Rule 403. Even if otherwise admissible, evidence of Monsanto's response to the Seralini study would be excluded with respect to Hardeman as post-use conduct under Monsanto's motion in limine 7.

11.1. Monsanto's motion in limine 11.1 to exclude "magic tumor" references is denied for both phases, but the parties are on notice that this type of argumentative description may not be used during opening statements.

11.2. Monsanto's motion in limine 11.2 to exclude discussion of studies conducted by IBT and/or Craven Laboratories is granted for Phase 1 and granted as unopposed with respect to Craven Laboratories for Phase 2. By February 25, 2019, the plaintiffs will file a supplemental

opposition to Monsanto's motion explaining precisely what evidence regarding IBT Laboratories they believe should be admitted during Phase 2. Monsanto's reply is due by March 4, 2019.

11.3. Monsanto's unopposed motion in limine 11.3 to exclude the Marion Copley letter is granted for both phases.

11.4. Monsanto's motion in limine 11.4 to exclude discussion of Monsanto-related publications such as *Whitewash* by Carey Gillam is granted for both phases, without prejudice to the plaintiffs' making an offer of proof as to a particular publication that they believe is relevant to Phase 2.

11.5. Monsanto's motion in limine 11.5 to exclude evidence of Roundup's other alleged health effects is granted for both phases under Rule 401 and, alternatively, Rule 403.

12. Monsanto's unopposed motion in limine 12 to exclude evidence of glyphosate in food, breast milk, and other unrelated sources is granted for both phases.

13. Monsanto's motion in limine 13 to exclude evidence of the company's lobbying activities is granted under Rule 401 and, alternatively, Rule 403 for Phase 1. The motion is denied for Phase 2, but the time spent on this evidence during Phase 2 will be restricted under Rule 403.

14. Monsanto's motion in limine 14 to exclude from Phase 1 Dr. Farmer's November 29, 2001, email regarding the absence of glyphosate in the published abstract for the 2011 McDuffie study is granted. The August 24, 2000, email from Dr. Acquavella regarding Monsanto's potential collaboration with Dr. McDuffie is also excluded from Phase 1. *See* Dkt. No. 2586.

15. Monsanto's unopposed motion in limine 15 to exclude from Phase 1 Dr. Goldstein's February 26, 2015, email regarding Monsanto's possible work with the American Council on Science and Health is granted. *See* Dkt. No. 2586.

16. Monsanto's motion in limine 16 to exclude from Phase 1 the August 6, 2015, email from Dr. Heydens addressing whether the Intertek Expert Panel should consider the effects of surfactants in the formulated product is granted under Rule 403. Given the ambiguity in Dr. Heydens' statement regarding the 2010 George study and the tangential relevance of his

comment to causation, it would waste time and be unduly prejudicial to allow the plaintiffs to introduce this evidence. *See* Dkt. No. 2586.

Plaintiff's Motions in Limine

1. The plaintiffs' motion in limine 1 to exclude discussion of ecological studies is denied. The plaintiffs' challenges to these studies go to their weight rather than their admissibility.

2. The plaintiffs' motion in limine 2 to exclude new general causation experts and opinions is largely granted. In October 2018, the Court stated, without objection, that only the experts whose opinions were put to the test at Phase 1 would be permitted to present opinions on general causation at trial. *See* Dkt. No. 2121 at 41. Yet in November 2018, Monsanto disclosed reports from specific causation experts that effectively included opinions on general causation – that is, that Roundup is simply not a risk factor for NHL. These opinions are in large part excluded. Monsanto's experts may attack the decisions by the plaintiffs' experts to exclude other risk factors, such as hepatitis C. They may also testify that, even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL given the strength of the risk factor and/or the presence of other risk factors. But they may not offer an analysis of the epidemiological literature to support an opinion that Roundup is not a risk factor for NHL, because they offered no such analysis at Phase 1. To the extent this creates challenges for Monsanto, it is in part a product of Monsanto's desire to bifurcate general and specific causation. As discussed at the hearing, Monsanto may submit language that they believe allows their experts to provide a brief basis for their opinions on Roundup without wading into general causation; the plaintiffs will have a chance to respond before the Court rules.

3. The plaintiffs' motion in limine 3 to exclude "feed-the-world" arguments surrounding the efficacy and benefits of glyphosate is granted for both phases under Rule 401 and, alternatively, Rule 403. This ruling does not preclude Monsanto from introducing limited background information on glyphosate.

4. The plaintiffs' motion in limine 4 to exclude decisions by foreign regulators is granted for Phase 1, subject to the limited exception that Monsanto may briefly cross-examine Dr. Portier on his efforts to convince European regulators to ban Roundup (in a way that reveals that his

efforts have thus far been unsuccessful). This limited exception is appropriate to allow Monsanto to probe Dr. Portier's objectivity, and to allow Monsanto to counter any erroneous assumption by jurors that glyphosate is banned in Europe. The motion is denied for Phase 2, but Monsanto may only introduce evidence of regulatory decisions that were in effect at the time the plaintiffs were using Roundup, and the amount of evidence that can be introduced will be restricted under Rule 403 to avoid wasting time or misleading the jury.

5. The plaintiffs' motion in limine 5 to exclude certain EPA documents is granted in part for both phases. As with the IARC Monograph, the fact of EPA approval is admissible at both phases, but the documents themselves are not. Particularly during Phase 1, discussion of EPA approval will be restricted under Rule 403 to avoid wasting time or misleading the jury, because the primary inquiry is what the scientific studies show, not what the EPA concluded they show. The Court will revisit how evidence surrounding the EPA may be used during Phase 2.

6. The plaintiffs' motion in limine 6 to exclude evidence of conduct linked to Hardeman's hepatitis is granted for both phases in light of the agreement among the experts regarding the time period when Hardeman likely contracted hepatitis.

7. The plaintiffs' motion in limine 7 to exclude evidence of Hardeman's other medical conditions is denied as to basal cell carcinoma, but otherwise granted as unopposed. Evidence regarding basal cell carcinoma is not sufficiently prejudicial or confusing to warrant exclusion under Rule 403.

8. The plaintiffs' motion in limine 8 to exclude evidence of criminal history or prior "bad acts" is granted as unopposed for both phases.

9. The plaintiffs' motion in limine 9 to exclude evidence of smoking is granted as unopposed for both phases.

10. The plaintiffs' motion in limine 10 to exclude evidence of collateral source payments is granted as unopposed for both phases. *See* Dkt. No. 2613.

11. The plaintiffs' motion in limine 11 to exclude evidence surrounding how Hardeman contracted hepatitis C is granted for both phases in light of the agreement among the experts regarding when this likely occurred.

12. The plaintiffs' motion in limine 12 to exclude evidence surrounding Hardeman's exposure to hepatitis B is granted for both phases in light of the agreement among the experts regarding when this likely occurred.

13. The plaintiffs' motion in limine 13 to exclude evidence about attorney retention or attorney advertising is granted as unopposed for both phases.

14. The plaintiffs' motion in limine 14 to introduce during Phase 1 Dr. Acquavella's July 22, 1997, memo criticizing the Agricultural Health Study is granted for the purpose of impeaching any Monsanto experts who rely on the AHS at trial.

15. The plaintiffs' motion in limine 15 to introduce Dr. Parry's second evaluation of the genotoxicity of glyphosate, which concluded that glyphosate is potentially genotoxic, is denied for Phase 1 under Rule 403. While the studies underlying Dr. Parry's evaluation are admissible, Dr. Parry's review, and his communications with Monsanto surrounding that review, are likely to confuse the issues and waste time. However, if Monsanto presents expert testimony on the genotoxicity of glyphosate, or otherwise opens the door through cross-examination on, for example, the EPA's conclusions about the genotoxicity of glyphosate, then this evaluation could become admissible on redirect.

16. The plaintiffs' motion in limine to present evidence during Phase 1 surrounding the re-review of the 1983 Knezevich & Hogan mouse study – including Monsanto's role in pushing for a reevaluation of the tumor slides based on its concern about the regulatory consequences of that study – is granted. It appears that the plaintiffs will be able to convey this information (through evidence, stipulation, or some combination of the two) without introducing the February 22, 1985, memo from Lyle Gingerich or other similar internal documents, which are likely to waste time and distract the jury under Rule 403. The parties are ordered to confer about this before the start of trial. If the plaintiffs are unable to convey the relevant information without such documents, the Court will reevaluate whether they may be introduced.

**IT IS SO ORDERED.**

Date: February 18, 2019

Honorable Vince Chhabria
United States District Court