# EXHIBIT 62

Message

| | |
|---|---|
| **From:** | Moore, Kristina [Kristina.Moore@fticonsulting.com] |
| **Sent:** | 8/8/2017 2:37:39 PM |
| **To:** | RANDS, TODD [AG/1000] [/O=MONSANTO/OU=NA-1000-01/cn=RECIPIENTS/cn=645915] |
| **CC:** | Core Project Spruce [███████████@fticonsulting.com] |
| **Subject:** | OGR Letter |
| **Attachments:** | 2017-08-08 TG BF SR to Collins-NIH - Aaron Blair due 8-22.pdf |

Kristina Moore
Managing Director
Global Energy and Natural Resources Sector

FTI Consulting
Strategic Communications
███████ direct
███████ cell
███████@fticonsulting.com

1101 K Street NW
9th Floor
Washington, DC 20005
www.fticonsulting.com

Confidentiality Notice:
This email and any attachments may be confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If you have received this email in error, please notify us immediately by replying to the sender and then delete this copy and the reply from your system. Thank you for your cooperation.

TREY GOWDY, SOUTH CAROLINA
CHAIRMAN

ONE HUNDRED FIFTEENTH CONGRESS

ELIJAH E. CUMMINGS, MARYLAND
RANKING MINORITY MEMBER

# Congress of the United States
## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515-6143

MAJORITY  (202) 225-5074
MINORITY  (202) 225-5051

http://oversight.house.gov

August 8, 2017

The Honorable Francis S. Collins, M.D., Ph.D.
Director
National Institutes of Health
9000 Rockville Pike
Bethesda, MD  20892

Dear Dr. Collins:

      Recent media reports indicate that an epidemiologist associated with the National Cancer Institute (NCI) possibly withheld information that could change the International Agency for Research on Cancer's (IARC) conclusion that the widely used herbicide glyphosate is "probably carcinogenic."[1]  Specifically, Dr. Aaron Blair of the NCI acted as a senior researcher on the Agricultural Health Study (AHS), which examined the effect of pesticides, including glyphosate, on thousands of American farmers.[2]  In 2013, Dr. Blair and other researchers working on the AHS prepared and reviewed papers showing no evidence that glyphosate caused cancer.[3]  Nonetheless, according to the report, NCI did not publish this finding.[4]  The decision to withhold this information raises a number of questions.  Dr. Blair subsequently led IARC's review of glyphosate, which did not consider the AHS finding on glyphosate allegedly because they were unpublished.[5]

      The Committee wrote to you on September 26, 2016,[6] and January 12, 2017,[7] regarding issues about the National Institutes of Health's funding and association with IARC.  The Committee is concerned about these new revelations, especially given Dr. Blair's apparent admission that the AHS study was "powerful," and would alter IARC's analysis of glyphosate.[8]  According to new media reports, AHS researchers published "numerous studies" from the data collected.[9]  The Committee is seeking more information on why the NCI did not publish the AHS results on glyphosate.

---

[1] Kate Kelland, *Cancer agency left in the dark over glyphosate evidence*, REUTERS, Jun. 14, 2017, http://www.reuters.com/investigates/special-report/glyphosate-cancer-data/.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Letter from Hon. Jason Chaffetz, Chairman, H. Comm. on Oversight and Gov't Reform, to Hon. Francis Collins, Dir., Nat'l Inst. of Health (Sept. 26, 2016).
[7] Letter from Hon. Jason Chaffetz, Chairman, H. Comm. on Oversight and Gov't Reform, to Hon. Francis Collins, Dir., Nat'l Inst. of Health (Jan. 12, 2017).
[8] Kelland, *supra* note 1.
[9] *Id.*

Confidential - Produced Subject to Protective Order

MONGLY07585582

The Honorable Francis S. Collins, M.D., Ph.D.
August 8, 2017
Page 2

Please provide the Committee with a briefing on these issues as soon as possible, but no later than August 22, 2017. Please also produce the following documents and information as soon as possible, but by no later than 5:00 p.m. on August 22, 2017:

1. All documents and communications referring or relating to the decision whether to publish the AHS findings on glyphosate; and

2. All documents and communications to or from Dr. Aaron Blair referring or relating to the AHS findings regarding glyphosate.

When producing documents to the Committee, please deliver production sets to the Majority staff in room 2157 of the Rayburn House Office Building and the Minority staff in room 2471 of the Rayburn House Office Building. The Committee prefers, if possible, to receive all documents in electronic format. An attachment to this letter provides additional information about responding to the Committee's request.

Please contact Drew Feeley of the Committee staff at (202) 225-5074 with any questions about this request. Thank you for your prompt attention to this matter.

Sincerely,

Trey Gowdy
Chairman

Blake Farenthold
Chairman
Subcommittee on the Interior,
Energy, and Environment

Steve Russell
Member of Congress

Enclosure

cc:   The Honorable Elijah E. Cummings, Ranking Minority Member

The Honorable Stacey E. Plaskett, Ranking Minority Member
Subcommittee on the Interior, Energy, and Environment

Confidential - Produced Subject to Protective Order                              MONGLY07585583

**Responding to Committee Document Requests**

1. In complying with this request, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf.  You should also produce documents that you have a legal right to obtain, that you have a right to copy or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.  Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization or individual denoted in this request has been, or is also known by any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic format should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

    (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

    (b) Document numbers in the load file should match document Bates numbers and TIF file names.

    (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    (d) All electronic documents produced to the Committee should include the following fields of metadata specific to each document;

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT,CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6. Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

Confidential - Produced Subject to Protective Order                                                           MONGLY07585584

7. Documents produced in response to this request shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when the request was served.

8. When you produce documents, you should identify the paragraph in the Committee's schedule to which the documents respond.

9. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

10. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production.

12. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

13. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

14. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you are required to produce all documents which would be responsive as if the date or other descriptive detail were correct.

15. Unless otherwise specified, the time period covered by this request is from January 1, 2009 to the present.

16. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

17. All documents shall be Bates-stamped sequentially and produced sequentially.

18. Two sets of documents shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2471 of the Rayburn House Office Building.

Confidential - Produced Subject to Protective Order

19. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email (desktop or mobile device), text message, instant message, MMS or SMS message, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

Confidential - Produced Subject to Protective Order                                        MONGLY07585586

5. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.

7. The term "employee" means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, subcontractor, or any other type of service provider.

Confidential - Produced Subject to Protective Order                                                                                                        MONGLY07585587

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM
U.S. HOUSE OF REPRESENTATIVES
115TH CONGRESS

NOTICE OF APPEARANCE OF COUNSEL

**Counsel submitting:** _____

**Bar number:** _____   **State/District of admission:** _____

**Attorney for:** _____

**Address:** _____

**Telephone: (** _____ **)** _____ **-** _____

**Pursuant to Rule 16 of the Committee Rules, notice is hereby given of the entry of the undersigned as counsel for** _____ **in (select one):**

- ● All matters before the Committee
- ○ The following matters (describe the scope of representation):

    _____
    _____

**All further notice and copies of papers and other material relevant to this action should be directed to and served upon:**

    **Attorney's name:** _____

    **Attorney's email address:** _____

    **Firm name (where applicable):** _____

    **Complete Mailing Address:** _____

    _____

**I agree to notify the Committee within 1 business day of any change in representation.**

_____     _____
**Signature of Attorney**                                    **Date**

Confidential - Produced Subject to Protective Order                                    MONGLY07585588