

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado and California*
Aimee.Wagstaff@AndrusWagstaff.com

7171 W. Alaska Drive
Lakewood, CO 80226
Office: (303) 376-6360
Fax: (303) 376-63614
Website: www.AndrusWagstaff.com

March 5, 2019

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court,
Northern District of California

RE: *Hardeman v. Monsanto*, Case No: 3:16-cv-00525-VC

To the Honorable Vince Chhabria:

Earlier today, Monsanto requested leave to ask certain questions of its two case-specific experts who were not disclosed as "General Causation" experts in Phase 1 of this MDL: Dr. Arber and Dr. Levine. Mr. Hardeman responds as follows:

### Dr. Arber

1. What, if any, role does Roundup play in your clinical practice as a pathologist?

**Response:** Plaintiff needs more clarification as to the basis of this question.

### Dr. Levine

At Monsanto's request, and over Plaintiffs' strong objection, the Court bifurcated MDL 2741, and the parties spent almost two years and millions of dollars litigating general causation. During that process, the experts' opinions were thoroughly challenged, subjected to multiple depositions, and a week-long *Daubert* hearing. The Plaintiffs ultimately prevailed, and now that we are finally in trial, Monsanto asks the Court – once again –  for permission to bring new general causation opinions from general causation experts not disclosed in the Phase 1 MDL proceedings. The request has been recycled and denied several times.  Once again, Mr. Hardeman responds as follows.

During the October 29, 2018 hearing, it became clear that Monsanto intended to use its "specific causation" experts to proffer general causation opinions—even suggesting it may not call a single general causation expert from the general causation phase to the February trial. The Court rejected this proposal:

> [T]he answer to that question is basically no. You cannot add general causation experts. If there is an emergency-type situation, if Lorelei Mucci has a medical emergency or, you know, something like that, and you want to seek permission to sub somebody in to provide, you know, substantially the same testimony, I will entertain it. I'm not saying I will grant it, but I will entertain it. But the basic answer is, no, I don't think it's

appropriate, given everything we've been through already as a team, to be adding general causation experts.

Ex. 1, Tr. of Proceedings at 41:8-18 (Oct. 29, 2018). Monsanto did not object.

After further briefing, the court stated, "only the experts whose opinions were put to the test at Phase 1 would be permitted to present opinions on general causation at trial." *See* PTO 74, ECF Dkt. No. 2682. Then, again, in PTO 81 (ECF Dkt. No. 2799), the Court held:

"…Monsanto disclosed reports from specific causation experts that effectively included opinions on general causation – that is, that Roundup is simply not a risk factor for NHL. These opinions are in large part excluded. Monsanto's experts may attack the decisions by the plaintiffs' experts to exclude other risk factors, such as hepatitis C. They may also testify that, even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL given the strength of the risk factor and/or the presence of other risk factors. But they may not offer an analysis of the epidemiological literature to support an opinion that Roundup is not a risk factor for NHL, because they offered no such analysis at Phase 1. To the extent this creates challenges for Monsanto, it is in part a product of Monsanto's desire to bifurcate general and specific causation."

Monsanto declared that the only general causation expert it intends to bring to trial is its epidemiologist, Dr. Mucci, and that its new expert, Dr. Levine, will provide specific causation testimony. Because Dr. Levine was not disclosed in Phase 1 of the MDL and her epidemiological opinions on general causation were not tested, many of the questions proffered below are improper. Indeed, rather than offer her own new – untested – opinion on the epidemiological evidence regarding general causation, Dr. Levine must build her specific causation opinion from Monsanto's admissible general causation opinions (*i.e.*, Dr. Mucci). *See* PTO 85, ECF Dkt No. 2799, Page 2 ("as the Court has previously ruled, the specific causation experts are permitted to build from [] admissible general causation opinions). Said another way, Pursuant to the bifurcated rules that Monsanto requested, Dr. Levine must adopt Dr. Mucci's general causation opinion as the basis of her specific causation opinion. As the Court previously held, Dr. Levine cannot offer a new general causation opinion. The questions below appear to be a back door attempt to do so.

**Proposed Questions**

1. Have you reviewed the epidemiological literature regarding Roundup and NHL?

**Response:** Object. Dr. Levine was not disclosed as a General Causation expert in Phase 1 of the MDL and her epidemiological opinions have not been tested. Therefore, as set forth above, Dr. Levine must build her specific causation opinion upon Dr. Mucci's analysis of the epidemiological literature. Asking this question invites improper expert testimony. If the Court allows this question, Mr. Hardeman should be allowed to elicit testimony on cross examination that: (1) although she reviewed the epidemiological literature regarding Roundup and NHL, she is not relying on that review as a basis of her specific causation opinion; and (2) she is instead relying on Dr. Mucci's testimony as the basis for her specific causation opinion. Further, Dr.

Levine should not be permitted to provide the jury with her own analysis of the epidemiological literature.

2. Have you also reviewed Dr. Mucci's report?

**Response:** No objection to asking Dr. Levine if she has reviewed Dr. Mucci's report.

3. Are you relying on Dr. Mucci's explanation of the epidemiology to the jury so you can focus on a discussion of Mr. Hardeman?

**Response:** Pursuant to the bifurcation rules, Dr. Levine must not only rely on Dr. Mucci's explanation of the epidemiology, but also on Dr. Mucci's analysis of that literature. Plaintiff objects to any insinuation that Dr. Levine's reliance on Dr. Mucci's explanation is to save time.

4. Is. Dr. Mucci's analysis consistent with your own professional and clinical experience as a practicing hematologist- oncologist?

**Response:** Mr. Hardeman needs further clarification from Defendant before lodging any possible objection.

5. Based on your clinical practice, do you have an opinion on whether there is an association between Roundup and NHL?

**Response**: Because Dr. Levine was not disclosed as a General Causation expert in Phase 1 of the MDL, she must adopt Dr. Mucci's opinion on this question. If Dr. Levine does anything but adopt Dr. Mucci's opinion on this question, it would become a new general causation opinion that is inadmissible because it was not tested through the two-year *Daubert* process. Further, this opinion was not disclosed in Dr. Levine's expert report.

6. What, if any, opinion do you have on whether Roundup is a risk factor for NHL?

**Response:** Because Dr. Levine was not disclosed as a General Causation expert in Phase 1 of the MDL, she must adopt Dr. Mucci's opinion on this question. If Dr. Levine does anything but adopt Dr. Mucci's opinion on this question, it would become a new general causation opinion that is inadmissible because it was not tested through the two-year *Daubert* process.

7. What, if any, opinion do you have on whether Roundup can cause NHL?

**Response:** Because Dr. Levine was not disclosed as a General Causation expert in Phase 1 of the MDL, she must adopt Dr. Mucci's opinion on this question. If Dr. Levine does anything but adopt Dr. Mucci's opinion on this question, it would become a new general causation opinion that is inadmissible because it was not tested through the two-year *Daubert* process.

Dated: March 5, 2019                     Respectfully submitted,

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff, Esq. (SBN 278480)
ANDRUS WAGSTAFF, PC
7171 W. Alaska Dr.
Lakewood, CO 80226
Email: aimee.wagstaff@andruswagstaff.com

/s/ Jennifer A. Moore
Jennifer A. Moore, Esq. (SBN 206779)
401 W. Main St. Suite 1810
Louisville, KY  40208
Telephone: 502-657-7111
Email: jennifer@moorelawgroup.com