**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
MONSANTO COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Hardeman v. Monsanto Co., et al.*, | **DEFENDANT'S MEMORANDUM REGARDING INAPPLICABILITY OF CONSUMER EXPECTATIONS TEST** |
| 3:16-cv-0525-VC | |

**INTRODUCTION**

If the Court charges the jury on a design defect theory, the Court should instruct on the risk-benefit test and not the consumer expectations test because the facts and circumstances of Roundup's alleged design defect are too complex to allow an ordinary consumer to form minimum safety expectations based on their ordinary experiences. As this Court acknowledged, Mr. Hardeman's claims rest upon complicated (albeit "shaky") expert testimony regarding complex scientific matters, including epidemiological studies that "leave certain questions unanswered," and "[e]vidence that glyphosate causes damage to the genetic material in cells (genotoxicity) or an imbalance between the production of reactive oxygen species and antioxidant defenses in a cell (oxidative stress)." *In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC, 2018 WL 3368534, at *1, *17, *36 (N.D. Cal. July 10, 2018). Mr. Hardeman cannot simply rely on his expectation that using the product would not cause cancer. *See Trejo v. Johnson & Johnson*, 220 Cal. Rptr. 3d 127, 168–69 (Ct. App. 2017) ("If this were the end of the inquiry, the consumer expectations test always would apply and every product would be found to have a design defect."). In this case, the complexity surrounding the circumstances of Mr. Hardeman's claims and the technical expert proofs necessary to support them militate against the application of the consumer expectations test. *See, e.g.*, *Trejo*, 220 Cal. Rptr. 3d 127, 168–69 (Ct. App. 2017) (applying risk-benefit test where "expert testimony was required to explain plaintiff's theory of how Motrin caused his injury"); *Soule v. Gen. Motors Corp.*, 882 P.2d 298, 310 (Cal. 1994) (applying risk-benefit test where "quite complicated design considerations were at issue, and . . . expert testimony was necessary to illuminate these matters").

California recognizes two tests for proving a design defect: the consumer expectations test and the risk-benefit test. *See, e.g.*, *Trejo*, 220 Cal. Rptr. 3d at 154. The tests are not mutually exclusive; a plaintiff may proceed under either or both theories, but cannot proceed under an expectations theory where it does not apply. *McCabe v. American Honda Motor Co.*, 123 Cal. Rptr. 2d 303, 315 (Ct. App. 2002).

Under the consumer expectations test, a plaintiff must demonstrate that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably

foreseeable manner." *Trejo*, 220 Cal. Rptr. 3d at 154 (citation omitted). This test "is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert opinion about the merits of the design*." *Id.* (citing *Soule*, 882 P.2d at 308. In determining whether to apply the consumer expectations test, "[t]he critical question is . . . whether the product, in the context of the facts and circumstances of its failure, is one about which the ordinary consumer can form minimum safety expectations." *Id.* (citing *Pannu v. Land Rover N. Am., Inc.*, 120 Cal. Rptr. 3d 605, 615 (Ct. App. 2011)). As one court has explained, the consumer expectations test best applies to "res-ipsa like" cases where the fact of the product defect can be readily inferred by an ordinary consumer from the very nature of the injury. *See Pruitt v. Gen. Motors Corp.,* 86 Cal. Rptr. 2d 4, 6 (Ct. App. 1999) (citing commentary from the reporters of the Third Restatement summarizing California law). The trial court is tasked with answering this critical legal question "within the context of the facts and circumstances of the particular case." *Saller v. Crown Cork & Seal Co., Inc.*, 115 Cal. Rptr. 3d 151, 162 (Ct. App. 2010).

In contrast, the risk-benefit test applies "when the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk, and benefit." *Trejo*, 220 Cal. Rptr. 3d at 169 (citing *Soule*, 882 P.2d at 305). Under this test, "the plaintiff may establish the product is defective by showing that its design proximately caused his injury and the defendant then fails to establish that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design." *Saller*, 115 Cal. Rptr. 3d at 161 (citing *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 456 (Cal. 1978)). In its deliberation, a jury "must evaluate the product's design by considering" factors such as the gravity of the potential harm, the likelihood of harm, and the benefits of the product's design, among others. *Id.* (citing *Barker*, 573 P.2d at 455).

## ARGUMENT

### I. The Complex Circumstances of Roundup's Alleged Failure Dictate Application of the Risk-Benefit Test.

The consumer expectations test does not apply because the circumstances of Roundup's alleged defect are too complex for ordinary consumers to formulate minimum safety expectations

based on their everyday experience with the product. While the consumer expectations test can apply to complex products, it applies "*only* where the circumstances of the product's failure are relatively straightforward." *Morson v. Superior Court*, 109 Cal. Rptr. 2d 343, 355–56 (Ct. App. 2001) (emphasis added). The classic cases where the consumer expectations test applies include "automobiles that explode while idling at a stoplight or roll over and catch fire in a two-mile-per-hour collision." *Id.* at 351 (citing *Soule*, 882 P.2d at 308). In such cases, no specialized knowledge or technical expertise is necessary to understand the fact and nature of the product's failure. Courts have likewise applied the consumer expectations test in cases where the "overall design [of the product] is technical and complex," but the "circumstances that resulted in [the plaintiff's] injury . . . are *not* overly technical." *Demara v. The Raymond Corp.*, 221 Cal. Rptr. 3d 102, 117 (Ct. App. 2017) (applying consumer expectations test where plaintiff's foot was crushed by a forklift because the wheel was missing a protective guard and the warning light was not visible) (emphasis added).

Cases involving airbag failures illustrate how the circumstances of the product's failure, rather than the complexity of the product itself, is what matters. Regardless of an airbag's complexity, an ordinary consumer can form minimum safety expectations that it will deploy in a frontal collision and that it will not deploy in a low-speed, rear-end collision and injure the passenger. *See McCabe*, 123 Cal. Rptr. 2d at 314 ("McCabe provided sufficient evidence for a jury to infer that the nondeployment of an air bag, in the context of the high speed, 'head-on' collision described by McCabe, violates minimum safety expectations of the ordinary consumer."); *Bresnahan v. Chrysler Corp.*, 38 Cal. Rptr. 2d 446, 451–52 (Ct. App. 1995) ("[O]rdinary experience may well advise a consumer what measure of safety to expect from her car's side windshield assembly and air bag in a minor rear-end collision.") But, when the airbag deploys in a frontal collision, performing as an ordinary consumer would expect, and injures a passenger, it raises questions about "tradeoffs involving complex technical issues" and the risk-benefit test must apply. *Pruitt,* 86 Cal. Rptr. 2d at 6.

In contrast to "relatively straightforward" circumstances, courts have held that the consumer expectations test should not apply where "the alleged circumstances of the product's failure involve technical and mechanical details about the operation of the manufacturing process, and then the

effect of the product upon an individual plaintiff's health." *Morson*, 109 Cal. Rptr. 2d at 356; *see also Soule*, 882 P.2d at 310 ("Plaintiff's theory of design defect was one of technical and mechanical detail. It sought to examine the precise behavior of several obscure components of her car under the complex circumstances of a particular accident."); *Trejo*, 220 Cal. Rptr. 3d at 169 (holding that risk-benefit test applies in case of allergic reaction to over-the-counter medication); *Akkerman v. Mecta Corp.*, 247 F. App'x 895, 898 (9th Cir. 2007) (applying risk-benefit test to electroconvulsive therapy machine); *Bispo v. GSW, Inc.*, 361 F. App'x 834, 836 (9th Cir. 2010) (applying risk-benefit because "ordinary consumers have no firm expectations regarding the gas pressure that safety valves should withstand."). *Trejo* and *Morson* are particularly relevant here because they involve products that allegedly injured plaintiffs through a complex biochemical mechanism that was not readily apparent and that required expert testimony to establish.

In *Morson*, the plaintiffs suffered an allergic reaction to the defendant's manufactured latex gloves. The plaintiffs argued that the consumer expectation test should apply because the ordinary consumer's expectation "was generally that [p]laintiffs would not sustain injury from wearing or being around those who were wearing latex gloves, in the context of normal professional usage." 109 Cal. Rptr. 2d at 357. The court rejected this argument largely because it failed to consider how plaintiffs' case depended on the specifics of the product's chemical composition and the specialized knowledge surrounding it. *Id.* As the court explained, plaintiffs erred by viewing the latex product "as a simple one that can give rise to simple consumer expectations of safety *that have nothing to do with the chemical composition of the material from which the product is manufactured, or any other design characteristics for which specialized knowledge is required for understanding or taking appropriate precautions*." *Id.* (emphasis added). In fact, plaintiffs' actual theory was "a complex one" that depended on showing that "exposure to the natural substance of latex may make [plaintiffs'] dormant, incipient, or developing allergies worse than they would otherwise have been." *Id. See also Howard v. Omni Hotels Management Corp*, 136 Cal. Rptr. 3d 739, 757 (Ct. App. 2012) (consumer expectations theory inapplicable to claim that a tub was too slippery: "The manufacturing methods for bathtubs and the application of nonslip coatings are matters 'plainly beyond the common experience of both judges and jurors.' . . . .").

Similarly, the plaintiff in *Trejo* suffered a rare reaction to the medication Motrin, and the California Court of Appeal held that the trial court erred in applying the consumer expectations test. 220 Cal. Rptr. 3d at 169. The plaintiff argued that the consumer expectations test applied because the ordinary consumer did not expect to contract a rare disease from taking over-the-counter Motrin. *Id.* at 167. Unpersuaded, the court explained that "it could be said that any injury from the intended or foreseeable use of a product is not expected by the ordinary consumer." *Id.* If not expecting an illness sufficed to apply the consumer expectations test, then it "always would apply and every product would be found to have a design defect." *Id.* Instead, the court found that "[t]he circumstances of Motrin's failure involve technical details and expert testimony regarding 'the effect of the product upon an individual plaintiff's health,'" and required balancing the product's risks and benefits. *Id.* at 169 (quoting *Morson*, 109 Cal. Rptr. 2d at 356). Therefore, the consumer expectations test "should not have been applied." *Id.*

The Court should not apply the consumer expectations test here because, as in *Trejo*, the circumstances of Roundup's alleged failure involve technical details and expert testimony about the effect of the product on the plaintiff's health. Mr. Hardeman cannot just argue that he did not expect the product would cause cancer because, as the court explained in *Trejo*, "[i]f this were the end of the inquiry, the consumer expectations test always would apply and every product would be found to have a design defect." *Id.* at 167. As he acknowledges, the circumstances of Roundup's alleged failure are far more complex. His theory relies on technical details about the product's chemical composition, how it interacts with the surfactant, and how the product might be absorbed by a user. *See, e.g.,* Ex. 1, Transcript of Proceedings (Opening Statement) February 25, 2019 at 325:15–24 ("[T]hey have a surfactant in there which actually you will hear testimony helps sort of reduce the surface tension of the glyphosate and sort of adhere it to the plant . . . . [a]nd then you are going to hear testimony that water is in Roundup, and then you are going to hear testimony that there are other contaminants, other sort of byproducts in Roundup."). Thus, his claims involve "the chemical composition of the material from which the product is manufactured," which weighs in favor of balancing the risks and benefits of the product's design. *Morson*, 109 Cal. Rptr. at 357.

- 5 -
DEFENDANT'S MEMORANDUM REGARDING INAPPLICABILITY OF CONSUMER EXPECTATIONS TEST

And in addition to relying on such technical details about the "chemical composition" of Roundup, Mr. Hardeman relies on "expert testimony regarding the effect of the product upon" his health. *Trejo*, 220 Cal. Rptr. 3d at 168–69. This case presents the polar opposite of the "res ipsa-like case" to which the consumer expectation test should be limited. *See Pruitt*, 86 Cal. Rptr. 2d at 6. As this Court has extensively documented, Plaintiff's mechanism theories are complex and need complicated scientific testimony for the jury to understand: "plaintiffs identify two possible mechanisms they contend are supported by the scientific literature: genotoxicity and oxidative stress." *In re Roundup*, 2018 WL 3368534, at *17. Even more to the point, the overall evidence was, in the Court's view, "shaky" and presented a "close question whether to admit the expert opinions of Dr. Portier, Dr. Ritz, and Dr. Weisenburger that glyphosate can cause NHL at human-relevant doses." *Id.* at *36. It follows that if allowing expert testimony about these highly technical issues was a "close question" because the experts' opinions were "shaky," then the facts and circumstances of Mr. Hardeman's case could not possibly allow an ordinary, lay juror to form minimum safety assumptions about Roundup. *Id.* Instead, the testimony about Roundup's effect on Mr. Hardeman's health, and the testimony's reliability and credibility, supports instructing the jury to weigh Roundup's benefits against its alleged potential harm and this alleged potential harm's likelihood. *See Trejo*, 220 Cal. Rptr. 3d at 169.

**II.   The Johnson Court Erroneously Applied the Consumer Expectations Test Based on Distinguishable Case Law That Is Inconsistent With Binding California Supreme Court Precedent.**

The trial court in *Johnson v. Monsanto Co.* instructed the jury on the consumer expectations test, but acknowledged that the basis for doing so was "thin." Ex. 2, *Johnson v. Monsanto Co.*, CGC-16-550128 (Cal. Super. Ct.), Transcript, August 6, 2018, at 4904:14–16. The judge's decision followed the plaintiff's incorrect reliance on *Arnold v. Dow Chemical Company*, where the Court of Appeal reversed a grant of summary judgment on preemption grounds in a pesticide case. 110 Cal. Rptr. 2d 722 (Ct. App. 2001).

The *Arnold* case focused principally on FIFRA preemption and whether plaintiff had viable non-warnings-based claims that could survive preemption. The Court of Appeal agreed that the warnings-based claims were preempted, but held that the design defect claims were not preempted.

But the precise issue here—whether a jury should be charged on the consumer expectations test—was not presented in *Arnold*. Indeed, the Court of Appeal quoted the plaintiff's description of his design defect claim as it stood, which articulated **both** a consumer expectations theory and a risk-benefit theory. *See id.* at 715–16 (quoting interrogatory response describing design defect claim asserting **both** that the products "failed to perform as safely as an ordinary consumer would expect" and that "there existed a risk of danger inherent in the design . . . which outweighed the benefits of that design . . . .").

At the end of its extensive discussion about the scope of preemption, *Arnold* rejected an argument defendant "raised for the first time on appeal" that plaintiffs' consumer expectations claim was improper because it involved a product that was too "complex" to apply the consumer expectations test. *Id.* at 727. In its brief discussion addressing this argument, the court cited an asbestos case to support its conclusion that a consumer expectation claim was viable. *Id.* (citing *Sparks v. Owens-Illinois, Inc.*, 38 Cal. Rptr. 2d 739, 746–47 (Ct. App. 1995)). But California courts have made clear that asbestos injury cases are somewhat sui generis and "of limited value here due to the problem of comparing apples and oranges in such fact-specific circumstances." *Morson*, 109 Cal. Rptr. 2d at 351 (applying risk-benefit test to latex gloves that produced an allergic reaction). Moreover, the circumstances surrounding asbestos defects are not similar to Roundup, and *Arnold*'s reliance on an asbestos case is unpersuasive here. *See, e.g.*, *Saller*, 187 Cal. App. 4th at 1232-1233 (observing that "it was well known by the 1970's that asbestos was a health risk" such that an ordinary consumer in 2005 could rely on their "everyday experience" to conclude that products exposing persons to asbestos are unreasonably dangerous); *Sparks*, 32 Cal. Rptr. 2d at 747 (finding a jury could determine whether insulation "made of friable material that had to be cut and shaped to perform its insulating function on irregularly-shaped objects" thereby releasing toxins violated an ordinary product user's minimum safety expectations).

The asbestos cases should not be construed to expand the consumer expectations test inconsistently with California Supreme Court precedent in *Soule*, as well as the Court of Appeal opinions discussed above. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its

1  pronouncement is to be accepted by federal courts as defining state law unless it has later given
2  clear and persuasive indication that its pronouncement will be modified, limited or restricted."); s*ee*
3  *also Pruitt,* 86 Cal. Rptr. 2d at 7 (declining to follow expansive view of consumer expectations test
4  articulated by another court because it "conflicts with our Supreme Court's discussion of the
5  applicability of the test in *Soule*"). *Soule* makes clear that in the majority of cases in which expert
6  testimony is needed to establish the dangers of a product, the risk-benefit test-and not the consumer
7  expectations test-applies. 34 Cal. Rptr. 2d at 617 ("the consumer expectations test is reserved for
8  cases in which the *everyday experience* of the product's users permits a conclusion that the
9  product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert*
10 *opinion about the merits of the design*"). That principle is particularly true where, as here, expert
11 opinion is needed not just to establish that Monsanto's products *caused* plaintiffs' injuries, but also
12 to establish the very nature of the products' alleged defects. Because a jury cannot form a safety
13 expectation about Roundup based on their everyday experience using the product, and expert
14 testimony is the *only* way for a jury to reach the conclusion that Monsanto's herbicides are
15 defective, the consumer expectations instruction is not appropriate as a matter of law.

## CONCLUSION

17     Given the complexity of Plaintiff's medical claim, similar to latex and Motrin, Mr.
18 Hardeman has not established that "the facts and circumstances of [his] particular case" imply that
19 the product is "one about which the ordinary consumer can form reasonable minimum safety
20 expectations." *Saller*, 115 Cal. Rptr. 3d at 162. Accordingly, the Court should instruct the jury on
21 the risk-benefit test only, and not the consumer expectations test.

DATED: March 7, 2019

Respectfully submitted,

*/s/ Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson *(pro hac vice)*
tmatthewsjohnson@wilkinsonwalsh.com
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/  Brian L. Stekloff*
