UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: ALL ACTIONS | **PRETRIAL ORDER NO. 101: ORDER RE MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON NON-CAUSATION GROUNDS** |

Beyond its motion for summary judgment on causation, Monsanto moved for summary judgment against the three bellwether plaintiffs on four other grounds. Specifically, Monsanto contended that: (i) the plaintiffs' claims are expressly preempted by federal law; (ii) the plaintiffs' claims are impliedly preempted; (iii) the evidence is insufficient to support a jury verdict for the plaintiffs on their failure-to-warn claims; and (iv) the evidence is insufficient to support a punitive damages award. The Court previously informed the parties that Monsanto's motion on these issues would be denied; this ruling now explains why.

Monsanto also seeks summary judgment against one specific plaintiff, Gebeyehou, for the additional reason that his claims are barred by the statute of limitations. The Court will rule on that motion following the completion of supplemental briefing.

I.

The Court previously rejected Monsanto's argument that the plaintiffs' failure-to-warn claims are expressly preempted by the Federal Insecticide, Fungicide, and Rodenticide Act. *See Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037, 1038-39 (N.D. Cal. 2016). States are permitted to impose their own pesticide labeling requirements as long as those requirements are

not "in addition to or different from" those mandated by FIFRA. 7 U.S.C. § 136v(b). Thus, state labeling schemes that are "equivalent to, and fully consistent with, FIFRA's misbranding provisions" do not run afoul of preemption. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005). As relevant here, FIFRA requires manufacturers to provide a warning that "may be necessary and if complied with . . . is adequate to protect health." 7 U.S.C. § 136(q)(1)(G). California law – which asks whether a risk is known or knowable (for strict liability) or reasonably should have been known (for negligence) – is consistent with this requirement. *See Hardeman*, 216 F. Supp. 3d at 1038; *see also Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 101-02 (2008).

Monsanto now raises a different express preemption theory: it contends that FIFRA requires that a label provide warnings only for "widespread and commonly recognized" uses of a product, while California law imposes a broader requirement to warn of risks from any use that is "reasonably foreseeable." Monsanto's argument reflects a misreading of the statute. The phrase "widespread and commonly recognized" comes not from the misbranding provision, § 136(q)(1)(G), but rather from the cross-referenced registration provision, § 136a(d). When determining whether a pesticide should be registered for restricted versus general use, the EPA must consider the effects a pesticide will have "when applied in accordance with its directions for use, warnings and cautions and for the uses for which it is registered, or for one or more of such uses, or in accordance with a *widespread and commonly recognized* practice." 7 U.S.C. §§ 136a(d)(1)(B), (C) (emphasis added). But while a label must specify a product's use classification, nothing in the statute suggests that warnings should be limited to those relevant to the "widespread and commonly recognized" uses of a product. *See* 40 C.F.R. § 156.10(a)(1)(ix). Indeed, FIFRA's misbranding provision states that labels must include health warnings "*together*

2

*with* any requirements imposed under section 136a(d)." 7 U.S.C. § 136(q)(1)(G) (emphasis added). California law is not preempted by the additional federal requirement that pesticide labels specify their use classification.

## II.

Monsanto argues that even if the plaintiffs' claims are not expressly preempted, they are barred under the doctrine of impossibility preemption. Relying on a trio of cases involving the Federal Food, Drug, and Cosmetic Act, Monsanto contends that the plaintiffs' warning and design defect claims are preempted because Monsanto cannot change Roundup's label or design without first obtaining approval from the EPA. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011); *Wyeth v. Levine*, 555 U.S. 555 (2009). In the event the plaintiffs prevail, Monsanto believes it will be trapped between a state obligation not to sell the existing version of Roundup and a federal obligation not to sell an altered version of Roundup without prior agency approval. *See Mut. Pharm. Co.*, 570 U.S. at 480 (explaining that "the Court has found state law to be impliedly pre-empted where it is 'impossible for a private party to comply with both state and federal requirements'" (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990))).

To begin, Monsanto's implied preemption theory is difficult – if not impossible – to square with *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005). *See Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1281-82 (D. Haw. 2015). In *Bates*, the Supreme Court outlined the scope of FIFRA's express preemption provision with respect to state failure-to-warn claims, and further held that FIFRA did not preempt state claims for defective design and breach of warranty. Although the decision centered on the scope of FIFRA's express preemption provision, the implied preemption question was also before the court. *See* Brief for Respondent,

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) (No. 03-388), 2004 WL 2758217, at *36; *see also Ansagay*, 153 F. Supp. 3d at 1281-82. Moreover, in reversing the lower court's conclusion that the plaintiffs' claims had been preempted, the Court necessarily rejected the possibility of implied preemption. *See Bates*, 544 U.S. at 459 (Thomas, J., concurring in part and dissenting in part) (noting that the majority decision "comports with th[e] Court's increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption").

Even if not foreclosed by *Bates*, Monsanto's argument fails on the merits. In relying on a line of FDCA cases, Monsanto elides a critical aspect of FIFRA's statutory scheme: FIFRA allows states to regulate or ban pesticides that have been federally approved. 7 U.S.C. § 136v(a); *see also Bates*, 544 U.S. at 446 (noting that "a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe"). Monsanto acknowledges this fact, but nevertheless argues that while California can ban Roundup, it cannot impose any duties that might indirectly prevent Monsanto from selling Roundup in California (even temporarily). *See Mut. Pharm. Co.*, 570 U.S. at 488 (noting, in the context of the FDCA, "that an actor seeking to satisfy both his federal- and state-law obligations it not required to cease acting altogether in order to avoid liability"). But if California can stop Monsanto from selling Roundup entirely, surely it can impose state-law duties that might require Monsanto to seek EPA approval before selling an altered version of Roundup in California. By contrast, nothing in the FDCA allows a state to ban a drug. *See Zogenix, Inc. v. Patrick*, No. 14-11689-RWZ, 2014 WL 1454696, at *2 (D. Mass. Apr. 15, 2014) (concluding that if the State "were able to countermand the FDA's determinations and substitute its own requirements, it would undermine the FDA's ability to make drugs available to promote and protect the public health"); *cf. PLIVA, Inc.*, 564

4

U.S. at 626 (refusing to "distort the Supremacy Clause in order to create similar pre-emption across a dissimilar statutory scheme").

III.

Putting aside preemption, Monsanto argues that it is entitled to summary judgment on the failure-to-warn claim because the plaintiffs have failed to present "competent evidence" that any risk from glyphosate was "known or knowable" by the scientific community at the time the plaintiffs used Roundup. *See Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1483-84 (1999). Monsanto relies almost entirely on the epidemiological data to make this claim. Even granting Monsanto's argument that epidemiology provides the most reliable evidence of causation, it is certainly not the only evidence of causation in this case. Moreover, the epidemiology is far from undisputed. To take just one example, the De Roos (2003) study supports a conclusion that glyphosate is a risk factor for NHL, yet Monsanto fails to mention it in its motion. Monsanto cannot prevail on a motion for summary judgment by simply ignoring large swaths of evidence.

It is difficult to see how there could be no evidence that the risks of glyphosate were "knowable" given the Court's denial of Monsanto's motion to exclude the plaintiffs' causation experts. Of course, the *Daubert* causation inquiry is not identical to the question of whether there was a "known or knowable" risk from glyphosate. But the Court previously determined that the plaintiffs' experts offered reliable opinions that glyphosate causes NHL, and they did so relying almost entirely on scientific evidence that existed when the plaintiffs were using Roundup. Moreover, the plaintiffs have presented a great deal of evidence that Monsanto has not taken a responsible, objective approach to the safety of its product. Thus, assuming a jury finding that Roundup causes NHL, there is sufficient evidence for the plaintiffs to argue that Monsanto could

5

have reached this conclusion on its own had it investigated the issue responsibly and objectively.

IV.

For similar reasons, the plaintiffs presented sufficient evidence at summary judgment to support a punitive damages award against Monsanto. Although the evidence that Roundup causes cancer is quite equivocal, there is strong evidence from which a jury could conclude that Monsanto does not particularly care whether its product is in fact giving people cancer, focusing instead on manipulating public opinion and undermining anyone who raises genuine and legitimate concerns about the issue.

**IT IS SO ORDERED.**

Date:   March 7, 2019

Honorable Vince Chhabria
United States District Court