**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S MEMORANDUM REGARDING INAPPLICABILITY OF CONSUMER EXPECTATIONS TEST** |
| *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC; | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. The Consumer Expectation Test[1] is Appropriate In This Case to Prove Strict Product Liability Design Defect.**

The consumer expectations test and not the risk benefit test is applicable to this case. California courts have defined product defects in three alternative and independent categories: manufacturing defect, design defects, and warning defects. *Anderson v. Owens-Corning Fiberglas Corp.,* (1991) 53 Cal.3d 987, 995; *Rivas v. Safety-Kleen Corp.* (2002) 98 Cal.App.4th 218, 229. Within the design defect category, a product may be proven defective under two alternative tests: consumer expectations and risk-benefit. *Barker v. Lull Engineering Co.* (1978)

---

[1] Judge Bolanos granted an instruction in the *Johnson* case incorporating the Consumer expectation test. (*See* Ex. 1.)

20 Cal.3d 413, 432; *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559, 1569 (risk-benefit weighing is not a defense to consumer expectation test); *Bacisco v. Beech Aircraft Corp.* (1984) 159 Cal.App.3d 1101, 1107.

The consumer expectations test applies here and is applicable when "[t]he purposes, behaviors, and dangers of [the] products are commonly understood by those who ordinarily use them." *Saller v. Crown Cork and Seal Co., Inc.*, (2010) 187 Cal.App. 4th 1220, 1232. The "consumer expectation test" recognizes that "implicit in a product's presence on the market is a representation that it is fit to do safely the job for which it was intended." *Johnson v. United States Steel Corp.,* (2015) 240 Cal.App.4th 22, 32 (internal citations omitted). Succinctly put, "[w]here the product is one of 'common experience,' encountered generally in everyday life, the jury can rely on its own expectations of safety in applying the test." *Id.* at 32.

Courts have expressly rejected that the consumer expectation test is improper whenever the claim involves a complex product or technical questions of causation.  "[T]he inherent complexity of the product itself is not controlling on the issue of whether the consumer expectations test applies; a complex product 'may perform so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers.'" *Saller*, 187 Cal.App.4th at 1232; *Soule v. General Motors Corp.*, 8 Cal.4th 548, 569. "The critical question is whether the 'circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers.' " *McCabe*, *supra*, 100 Cal.App.4th at p. 1122; *Soule*, *supra*, 8 Cal.4th at pp. 568–69.

Here, Mr. Hardeman's defect theory does not require an understanding of technical and mechanical detail regarding the manufacturing process. Instead, the alleged design defect arises from exposure to carcinogens during the routine and relatively straightforward use and maintenance of Defendant's products. In this manner, this case is nearly identical to *Arnold v. Dow Chemical Co.,* (2001) 91 Cal.App.4th 698, 110 Cal.Rptr.2d 722, where the court held that the consumer expectations test was properly applied in a design defect claim brought against a

manufacturer of pesticides by those injured from exposure to the product. *Id.* at p. 727, 110 Cal.Rptr.2d 722. In holding both the manufacturer of the finished product and the supplier of the chemical component allegedly causing the harmful effects to be potentially liable, the court noted that a pesticide, like asbestos insulation, is "within the ordinary experience and understanding of a consumer" and a consumer may "reasonably believe that pesticides are designed to eliminate pests within homes occupied by humans, without causing significant harm to the humans." *Id.* at p. 717, 110 Cal.Rptr.2d 722; *see also Sparks v. Owens-Illinois, Inc.*, (1995) 32 Cal. App. 4th 461 (holding that consumer expectations test applies in asbestos-related injury cases); *Saller v. Crown Cork & Seal Co. Inc.*, (2010) 187 Cal. App. 4th 1220 (same); *West v. Johnson & Johnson Prods., Inc.* (1985) 174 Cal. App. 3d 831 (*applying* consumer expectations test to case claiming tampons caused toxic shock syndrome). Here, Mr. Hardeman easily meets this standard.

The fact that lay-persons require expert testimony to understand how exposure to the glyphosate-containing products causes cancer has to do with causation, not design defect. As the court explained in *Saller*:

> The fact that expert testimony was required to establish legal causation for plaintiffs' injuries does not mean than an ordinary user of the product would be unable to form assumptions about the safety of the products. The consumer expectations test does not require inquiry into how exposure to a particular level of asbestos may lead to the development of cancer.

*Id.* at 1235.

Mr. Hardeman was an ordinary consumer of Monsanto's glyphosate-containing products. He used these products for their intended purpose: as an herbicide to kill common weeds, namely poison oak. The circumstances under which he used Roundup is no different than any of the other consumers who purchase, mix, and/or spray Roundup at home or in the workplace. Further, the circumstances of the alleged product failure are also straightforward as people using herbicides for their intended purpose do not expect that routine use will cause cancer. Ordinary

consumers do not require technical expertise to form an opinion regarding whether the product's design performed below the legitimate and commonly accepted minimum safety assumptions. *See Saller*, 187 Cal.App.4th at 1234 (finding that it was a reasonable inference from the evidence that the emission of toxins capable of causing a fatal disease after a long latency period was a product failure beyond the legitimate, commonly accepted safety assumptions of its ordinary consumers). Accordingly, the consumer expectations test may be properly applied in this case.

In cases where the consumer expectation applies, "evidence of the relative risks and benefits of the design is irrelevant and inadmissible." *Sparks v. Owens-Illinois, Inc*., (1995) 32 Cal.App.4th 461, 473. A manufacturer simply cannot "defend a claim that a product's design failed to perform as safely as its ordinary consumers would expect by presenting expert evidence of the design's relative risks and benefits." *Soule*, *supra*, 8 Cal. 4th at 566, 34 Cal. Rptr. 2d 607.

**B. <u>Trejo v. Johnson & Johnson Does Not Support Departure from the Consumer Expectations Test</u>**

The issue in *Trejo v. Johnson & Johnson* revolved around the complexity of what a consumer should reasonably expect with respect to safety and not around the complexity of causation generally, holding "[t]hat causation for a plaintiff's injuries was proved through expert testimony does not mean that an ordinary consumer would be unable to form assumptions about the product's safety." 220 Cal. Rptr. 3d 127. The Court noted that "allegations of allergic and/or idiosyncratic reactions" warrant special consideration because of deeply technical issues in the design of the product with respect to allergies and the difficulty for a manufacturer to take account and foresee the multitude of possible and unpredictable allergic reactions unique to certain individuals. *Id.* at 158. The *Trejo* holding is limited to cases where a consumer suffers an individual, rare, idiosyncratic reaction to a particular product. Precluding the application of the consumer expectations test in cases involving unusually rare idiosyncratic reactions reflects an understanding that the injured party typically cannot show

that his or her injury was sufficiently common to render the injury causing product dangerous to an extent beyond that which the ordinary consumer would contemplate. Thus, the plaintiff with a specific allergic reaction would be required to offer technical details regarding the effect of the product upon [the] individual plaintiff's health." *Trejo*, 13 Cal.App.5th at 160. In other words, the design defect is not common to all consumers, but rather, is highly specific to the plaintiff based on their "unusual reaction" to the product. The side effect identified in *Trejo* is excessively rare. *Id.* at 160 ("The prevalence of TEN from all causes is estimated to be only between .4 and 1.2 cases per million users of the drug, and what fraction of that slight probability is due to ibuprofen is unknown and may be zero.")

Here, NHL is not an idiosyncratic and/or allergic reaction. The carcinogenicity of a product is an issue where an ordinary consumer can make assumptions about the product's safety, and in fact the carcinogenicity of pesticides is typically included on product labels. There are even animal studies designed to specifically look at the carcinogenicity of a product. Every consumer who uses glyphosate sufficiently is at an increased risk of NHL and there are currently thousands of individuals alleging that they developed NHL as a result of using glyphosate.

As explained in *Arnold v. Dow Chem. Co.*, injuries from pesticides do not require an overly technical review of the manufacturing process:

> respondents argue that the consumer expectations claim fails for a third, independent reason. *Citing Soule v. General Motors Corp.*, supra, 8 Cal.4th at pages 566-567, respondents urge that when the product at issue and the plaintiff's claims are complex, the consumer expectation test is inapplicable. That case, however, involved a theory of design defect of an automobile, which demanded an understanding of technical and mechanical detail and how safely an automobile's design should perform under the esoteric circumstances of the collision at issue. This case is more like *Sparks v. Owens-Illinois, Inc*., supra, 32 Cal.App.4th at pages 474-475, in which the First District determined that the product at issue, asbestos-containing block insulation, was within the ordinary experience and understanding of a consumer. Similarly, in *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559, 1568 [38 Cal.Rptr.2d 446], we found that the alleged technical novelty of the airbag does not preclude resort to the consumer expectations test. We stated that "The consumer expectations test is not foreclosed simply because expert testimony may be necessary to explain the nature of the alleged

defect or the mechanism of the product's failure." 91 Cal. App. 4th 698, 727 (2001).

Thus, the court in *Arnold* rejected the very arguments made by Monsanto here, and determined that the consumer expectations test is applicable in cases involving injuries arising from pesticides. Accordingly, the Court should instruct the jury on the consumer expectations test rather than the risk benefit test.

Dated: March 7th, 2019                                    Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360


*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff