

2001 M STREET NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
—
A LIMITED LIABILITY PARTNERSHIP

March 14, 2019

**VIA ECF**

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

Dear Judge Chhabria:

  Monsanto respectfully submits this letter brief in response to Pretrial Order No. 112 concerning Monsanto's anticipated risk-benefit defense in Phase 2. The difficulty with figuring out which test to apply to Plaintiff's design defect claim stems from the fact that this is a failure to warn case, not a design defect case.

  Plaintiff's case, and the proof he has developed, is not about the "design" of Roundup. Glyphosate is a chemical, and cannot by definition be defectively designed. *See, e.g.*, *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 184 (2016) ("[A] basic raw material . . . cannot be defectively designed." (quoting Restatement (Third) Torts § 5, com. c)); *Maxton v. W. States Metals*, 203 Cal. App. 4th 81, 88 (2012) (same). Even if the jury were to conclude that glyphosate caused Plaintiff's NHL, that would not establish a design defect on its own, because categorical design defect liability for alleged carcinogens is improper. *See Poosh v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025–26 (N.D. Cal. 2012) ("[t]aken to its logical conclusion, the argument . . . would mean that the only remedy for this alleged design defect would be a ban on the manufacture and sale of any cigarettes containing nicotine."). Not surprisingly, therefore, Plaintiff has not developed any evidence that glyphosate's design could somehow be altered to affect its alleged carcinogenicity. Nor does any expert for Plaintiff advocate that Roundup should be removed from the market (which itself would have serious preemption implications). *See, e.g.*, Testimony of Dr. Sawyer, Johnson trial, Tr. July 26, 2018, at 3601:14-21 ("Q. Now, to be clear, Doctor, you don't believe that Roundup or Ranger Pro needs to be taken off the market for all purposes; correct? A. No. If there were proper warnings, if an individual knew that they were dealing with a carcinogen and it was used in a limited fashion without producing what we call aerosol, that is aerosol that drifts and gets all over the body, it could be used.").

  Given the evidence in this case, Monsanto believes that the jury should be charged solely on a failure to warn theory. However, if a design defect claim is allowed to proceed, the appropriate test the jury should be instructed to apply is the risk-benefit test, for reasons

Monsanto has already set forth.  Although that test still assumes the possibility of a redesign in a product that is in reality immutable, it at least requires the jury to consider whether there actually is a defect in Roundup's design, and if so, to evaluate the benefits of Roundup, the likelihood of harm, and the availability and comparative effectiveness and safety of potential alternatives, including other herbicides.  *See Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 155 (Ct. App. 2017) ("Under California's risk-benefit test, the considerations include 'the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.'") (quotation omitted).  In a Phase II, Monsanto would highlight the absence of any proof that there is a remediable defect in Roundup's design.  *Id.* at 154 ("A product . . . is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor.") (citing Restatement).

Monsanto would also introduce evidence of Roundup's benefits in its current form, including:

- Roundup is a "once-in-a-century herbicide" that revolutionized agriculture. (Reeves Phase II; 770:21-771:5);

- Roundup enables users to control a broad spectrum of weeds, enabling more efficient and productive crop yields than other pesticides. (Reeves Phase II; 774:9-775:21);

- Roundup is absorbed by the soil and then broken down by bacteria or fungus in the soil; as a result, glyphosate does not leach into groundwater, does not accumulate in the food chain, and does not build up in people or the environment. (Reeves Phase I; 767:2-15);

- Roundup was a "scientific breakthrough" for farmers because it would kill the weeds without having "to kill the corn or the soybeans because they were resistant." (Weisenburger Tr. 1102:16-22);

- Roundup enables no till or reduced till agriculture, which reduces erosion and drying out of the soil.  (Reeves Phase II; 771:21-773:23);

- Roundup reduces the amount of fuel and emissions required to farm. (Reeves Phase II; 771:21-773:23);

- Roundup does not accumulate into the environment like other pesticides.  (Reeves Phase I; 767:2-15); and

- Roundup has a low toxicity profile.  (Reeves Phase I; 768:9-16).

Ultimately, though, the foregoing analysis only underscores why Plaintiff's design defect claim should not be allowed to proceed.  Glyphosate is a raw material that cannot be redesigned, and there is no basis for thinking that alterations in Roundup would make its design safer.  That is no doubt why this case has been litigated as a failure to warn case, and that is the only theory that the jury should be allowed to consider in the event it finds for Plaintiff on causation.

Respectfully submitted,

/s/ Brian L. Stekloff

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Cc: Counsel of Record (via ECF)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff_____