

2001 M STREET NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
—
A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, D.C.  |  LOS ANGELES

March 14, 2019

**VIA ECF**

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:     *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

Dear Judge Chhabria:

Monsanto respectfully submits this response to Plaintiff's letter regarding his design defect claim.

At today's hearing, Plaintiff presented two potential theories in support of their design defect claim: (1) that Roundup should be banned outright for residential users, *see* Tr. 2106:1-3; and (2) after initially disavowing this theory, *see* Tr. 2107:22-25 ("No, that's not Plaintiffs' claim."), that "the Roundup formulations in the United States – particularly those with tallow amine surfactants – are more dangerous than, say, European formulations," Tr. 2118:7-10.  The Court asked Plaintiff to provide "case law to support your ability to proceed on these theories under a design defect claim," Tr. 2125:8-13; and as to the second theory, to highlight the evidence supporting his claim, *see* Tr. 2125:2-7.

Plaintiff has failed to meet the Court's requests.  They have cited no case law supporting either theory of liability.  Their citation to *Barker v. Lull Engr. Co.*, 20 Cal. 3d 413 (Cal. 1978), is question-begging, because—as Plaintiff acknowledges—the decision requires Plaintiff to first "make a prima facie showing that the injury was proximately caused by *the product's design*," *id.* at 431.  This case provides no support for Plaintiff's position that their theories of liability actually constitute a *defect in design* as a matter of California law.  Nor does Plaintiff's invocation of the consumer-expectations test contribute to the analysis.  Monsanto has already explained why that test does not apply, and *Barker* itself confirms the point, by stating that the risk-benefit test is applicable where (as here), the consumer "would have no idea how safe the product could be made."  *Id.* at 430 (quotations omitted).

Plaintiff's effort to distinguish *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009 (N.D. Cal. 2012) likewise fails.  Arguments about whether FIFRA preempts Plaintiff's design defect claim are beside the point for present purposes—the Court's question was whether California design defect law permits a "ban the product" theory, even for some class of users.  And

as *Pooshs* confirms, it does not.  *See id.* at 1025.[1]  As the court explained in *Pooshs,* "regardless of whether the risk-benefit test or the consumer expectations test is being employed, a plaintiff must prove that there was a design defect, which actually caused the injury." *Id.* at 1025 (emphasis added).  Merely alleging that a product causes cancer does not prove a design defect. *Id.* (finding "no evidence that the design of defendants' cigarettes—as opposed to plaintiff's smoking of cigarettes—was a substantial factor in causing her lung cancer").

Plaintiff also fails in his effort to provide evidence that there are alternative formulations of Roundup that would be safer.  Plaintiff cites a single email regarding European formulations of Roundup, but the email does not provide evidence that other formulations are less carcinogenic than any formulation Plaintiff may have used, nor does Plaintiff have any expert testimony to support this claim, as would be required to submit it to a jury. *See Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 702, 11 Cal. Rptr. 3d 807, 863 (2004), *as modified on denial of reh'g* (Apr. 29, 2004) ("That gap must be filled by expert testimony, not jury speculation.").  Specifically, Plaintiff has not identified an expert witness who would testify to a reasonable degree of scientific certainty that "were the suggested design changes made" Mr. Hardeman would have had less exposure to glyphosate, the alleged carcinogen.  As the record stands now, any such conclusion would be based on the type of speculation that cannot form a basis for a jury verdict. *See id.* ("The jury could only speculate that the design, manufacture and marketing of 'safer' cigarettes would have resulted in Whiteley ingesting fewer carcinogens or quitting smoking altogether.")

Respectfully submitted,

/s/ Brian L. Stekloff

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Cc: Counsel of Record (via ECF)

---

[1] Notably, Plaintiff offers no response at all to *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 184 (2016) or *Maxton v. W. States Metals*, 203 Cal. App. 4th 81, 88 (2012), which likewise show that banning a chemical or carcinogen entirely is not a valid design defect theory.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of March 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff_____