1

**WILKINSON WALSH + ESKOVITZ LLP**
2
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
3
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
4
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
5
2001 M St. NW
10th Floor
6
Washington, DC 20036
Tel:    202-847-4030
7
Fax:    202-847-4005

8

**HOLLINGSWORTH LLP**
9
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
10
1350 I St. NW
Washington, DC 20005
11
Tel: 202-898-5843
Fax: 202-682-1639
12

13
*Attorneys for Defendant*
*MONSANTO COMPANY*
14

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

15
UNITED STATES DISTRICT COURT

16
NORTHERN DISTRICT OF CALIFORNIA

17

18
IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION
19

20

21
*Hardeman v. Monsanto Co.,*
3:16-cv-0525-VC
22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MDL No. 2741

Case No. 3:16-md-02741-VC

**MONSANTO'S PROPOSED PHASE 2 JURY INSTRUCTIONS AND VERDICT FORM**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Introduction**

Defendant Monsanto Company ("Monsanto") respectfully submits the following proposed instructions.  On January 3, 2019, the Court granted Monsanto's request to bifurcate this trial into two phases:  one for causation and the other for liability.  (Docket No. 2406).  The following instructions are limited to the second phase.  In addition, Monsanto is submitting draft instructions relating to a potential design defect claim, but as indicated in the prior filings and colloquy with the Court, Monsanto does not believe that such a claim is viable as a matter of law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 1

### (Opening Guidance/Overview of Phase Two)

In the first phase of this trial, you determined that Roundup was a substantial factor in causing Mr. Hardeman's Non-Hodgkin Lymphoma, also known as NHL. That does not mean Monsanto is liable to Mr. Hardeman.  You will now be asked, in the second phase of this trial, to determine whether Monsanto is legally responsible for any harm that Mr. Hardeman suffered because of his use of Roundup, and if so, whether he is entitled to any damages.  Mr. Hardeman claims that Monsanto should have provided a warning about the risk of NHL at the time he used the product, and that if Monsanto had warned about the risk, he would not have used Roundup.  [In addition, Mr. Hardeman claims that Roundup was defectively designed, and that the allegedly defective design caused him to develop NHL.]

**JURY INSTRUCTION NO. 2**

**(Failure to Warn)**

Mr. Hardeman claims that Monsanto's failure to adequately warn about the risk of developing NHL with the use of Roundup caused his NHL.  To establish this claim, Mr. Hardeman must prove all of the following:

1. That Monsanto manufactured, distributed, or sold Roundup;

2. That at the time Mr. Hardeman used Roundup, Monsanto knew or reasonably should have known, based on the scientific and medical knowledge that was generally accepted in the scientific community at the time, that there was an actual risk that Roundup could cause NHL when used in accordance with widespread and commonly recognized practice;

3. That ordinary consumers would not have recognized the risk that Roundup could cause NHL;

4. That Monsanto did not adequately warn of the risk that Roundup could cause NHL; and

5. That Mr. Hardeman would not have used Roundup, and therefore would not have developed NHL, if Monsanto had provided an adequate warning.

Sources: CACI 1205 (modified).  The "when used in accordance with widespread and commonly recognized practice" language from the Federal Insecticide Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136a(c)(5), has been substituted for "when used or misused in a reasonably foreseeable manner" in light of *Bates v. Dow Agrosciences LLC*.  *See* 544 U.S. 431, 447 (2005) ("[A] state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions.").  The CACI model instruction is also erroneous absent modification because it allows tort liability to be based on "potential" risks.  This formulation is not consistent with the California Supreme Court's articulation of the legal standard as involving a duty to warn of an actual

"risk," not merely a potential, hypothetical, or speculative risk.  *See T.H. v. Novartis Pharm. Corp.*, 4 Cal. 5th 145, 164, 407 P.3d 18, 28 (Cal. 2017) ("The manufacturer has no duty to warn of risks that are "merely speculative or conjectural, or so remote and insignificant as to be negligible.") (quoting *Carlin v. Super. Ct.*, 56 Cal. Rptr. 2d 162, 920 P.2d 134 (Cal 1996)).

Additionally, Plaintiff must prove that an adequate warning would have prevented the alleged injury to succeed on a failure to warn claim.  *See Motus v. Pfizer, Inc.*, 358 F.3d 659, 660–61 (9th Cir. 2004) ("We agree with the Second Circuit that a product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician."); *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) ("A plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury."); *Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 555–56, 863 P.2d 167, 177 (Cal 1993) ("Plaintiff's mother, who administered the SJAC to plaintiff, neither read nor obtained translation of the product labeling. Thus, there is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."); *Corbo v. Taylor-Dunn Mfg. Co.*, No. A135393, 2014 WL 576268, at *7 (Cal. Ct. App. Feb. 14, 2014), *as modified on denial of reh'g* (Mar. 7, 2014) ("Our review of the evidence leads us to the same conclusion the trial court reached. It remains undisputed that there is no direct evidence that the absence of these warnings caused this accident to happen."); *see also Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1018 (10th Cir. 2001) ("In the duty to warn context, assuming that plaintiffs have established both duty and a failure to warn, plaintiffs must further establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." (citation omitted)); *Riley v. Am. Honda Motor Co.,* 259 Mont. 128, 133,

1    856 P.2d 196, 199 (Mont. 1993) ("Our review of the record indicates that Riley failed

2    to establish a causal relationship between the lack of a warning and his injury. . .

3    Riley did not testify that he would have altered his conduct had he been warned of the

4    motorcycle's alleged propensity to wobble[.]").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 3
### (EPA Registration)

The Environmental Protection Agency (referred to as "EPA") regulates pesticides and pesticide labeling.  In order for a pesticide to be sold in the United States, it must be registered by the EPA, who must approve the labeling for the pesticide.  Before the EPA may register a pesticide, the EPA must conclude that using the pesticide according to the label requirements will not cause any unreasonable risk to humans or the environment.  EPA may decline to register a pesticide.  EPA's decision to register a pesticide and approve its label is subject to revision as new relevant data is reported.  EPA may suspend or cancel registration of a pesticide or reclassify its use based on new data or studies.  EPA also retains authority to cancel, deny or modify pesticide labels.  You may consider compliance with EPA requirements as relevant evidence about the issue of whether Monsanto has provided adequate warnings.

Source: *See Jeffers v. Wal-Mart Stores, Inc.*, 171 F. Supp. 2d 617, 624 (S.D. W. Va. 2001) ("FIFRA authorizes EPA to require additional data to maintain an existing registration (§ 136a(c)(2)(B)); to change a classification to prevent unreasonable adverse effects (§ 136a(d)(2)), and to conduct re-registration review (§ 136a(g)). EPA also retains authority to cancel, deny or modify registration or labels.  7 U.S.C. § 136d(b).  By its regulation, 40 C.F.R. § 152.125, EPA requires a registrant who 'receives or becomes aware of any factual information regarding unreasonable adverse effects' to provide it to EPA.  The regulations require post-registration submission of studies and data, including 'incidents affecting humans,' dealing with toxicology or adverse effects.  40 C.F.R. §§ 159.152-195 (2001).  These and other provisions make clear that EPA's decision to register a pesticide and approve its label is subject to revision as new relevant data is reported.  (*See also* 40 C.F.R. § 152.164(b)(classification reviews) and Part 154 (special review procedures)).  EPA

may suspend or cancel registration or reclassify its use based on new data or studies."); *Etcheverry v. Tri-Ag Serv., Inc.*, 22 Cal. 4th 316, 321, 993 P.2d 366, 368 (Cal. 2000) ("In the registration application, manufacturers must submit draft label language addressing a number of different topics, including ingredients, directions for use (40 C.F.R. § 152.50 (1999)), and any information of which they are aware regarding 'unreasonable adverse effects of the pesticide on man or the environment.' (40 C.F.R. § 152.50(f)(3).) Prior to registering a pesticide, the EPA must find that its labeling complies with FIFRA's requirements. (§ 136a(c)(5)(B).) . . . In addition, the EPA must find that the pesticide, when used in accordance with its labeling, 'will perform its intended function without unreasonable adverse effects on the environment.' (§ 136a(c)(5)(C).)  'Unreasonable adverse effects on the environment' are defined as 'any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide.' (§ 136(bb).)"); *see also Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1114–15, 920 P.2d 1347 (Cal. 1996) (observing that "evidence of compliance with FDA requirements is admissible as relevant evidence in a strict tort liability case on the issue whether a pharmaceutical manufacturer failed to provide adequate warnings") (citing *Hatfield v. Sandoz-Wander, Inc.* 124 Ill. App. 3d 780, 787, 464 N.E.2d 1105, 1109 (Ill. App. Ct. 1984)).

## [JURY INSTRUCTION NO. 5

### (Design Defect)

Mr. Hardeman also claims that Roundup had a design defect that caused his NHL.  You have already determined that Mr. Hardeman's use of Roundup was a substantial factor in causing his NHL.  However, you must now determine whether there was a defect in Roundup's design that was a substantial factor in causing Mr. Hardeman's NHL.

If you find Mr. Hardeman has proved that a defect in Roundup caused his NHL, then your decision on this claim must be for Mr. Hardeman unless Monsanto has proved that the benefits of Roundup's design outweighed the risks of the design. In deciding whether the benefits outweighed the risks, you should consider the following:

a)  The gravity of the potential harm resulting from the use of Roundup;

b)  The likelihood that this harm would occur;

c)  The feasibility of an alternative safer design at the time of manufacture;

d)  The cost of an alternative design;

e)  The disadvantages of an alternative design;

f)  The benefits of the design of Roundup; and

g)  The risks associated with the use of other pesticides.

Source: CACI 1204, adding additional factor (g) as invited by CACI 1204's bracketed language "[Other relevant factors]".  This instruction has also been modified to account for causation being decided in phase one.]

[As discussed above, Monsanto does not believe the jury should be charged on a design defect theory.]

## JURY INSTRUCTION NO. 5

### (Compensatory Damages)

If you decide that Monsanto is legally responsible for causing Mr. Hardeman's NHL, you must decide how much money will reasonably compensate Mr. Hardeman for the harm arising from his illness.  This compensation is called "damages."  The amount of damages must include an award for each item of harm that Mr. Hardeman suffered as a result of Roundup causing his NHL, even if the particular harm could not have been anticipated.

Mr. Hardeman does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mr. Hardeman:

1.      Past and future medical expenses.  To recover damages for past medical expenses, Mr. Hardeman must prove the reasonable cost of reasonably necessary medical care that he has received.  To recover damages for future medical expenses, Mr. Hardeman must prove the reasonable cost of reasonably necessary medical care that he is reasonably certain to need in the future.

2.      Past lost earnings.  To recover damages for past lost earnings, Mr. Hardeman must prove the amount of income that he has lost to date.

3.      Physical pain and mental suffering.  No fixed standard exists for deciding the amount of these noneconomic damages.  You must use your judgment to decide a reasonable amount based on the evidence and your common sense.  To recover for future pain and suffering, Mr. Hardeman must prove that he is reasonably certain to suffer that harm.

Source: CACI 3900; 3903A; 3903C; 3905A (all modified).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 6

### (Clear and Convincing Proof)

Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof.  This means the party must persuade you that it is highly probable that the fact is true.  This standard of proof applies to the issue of punitive damages, on which I will instruct you next.

<u>Source</u>: CACI 201 (modified).

## JURY INSTRUCTION NO. 7

### (Punitive Damages)

If you decide that Monsanto's conduct caused Mr. Hardeman's harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Monsanto only if Mr. Hardeman proves that Monsanto engaged in the conduct that caused his injuries with malice or oppression. To do this, Mr. Hardeman must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice or oppression was committed by one or more officers, directors, or managing agents of Monsanto, who acted on behalf of Monsanto; or

2. That the conduct constituting malice or oppression was authorized by one or more officers, directors, or managing agents of Monsanto; or

3. That one or more officers, directors, or managing agents of Monsanto knew of the conduct constituting malice or oppression and adopted or approved that conduct after it occurred.

"Malice" means that Monsanto acted with intent to cause injury or that Monsanto's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Monsanto's conduct was despicable and subjected Mr. Hardeman to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

In deciding whether Monsanto is liable for punitive damages, you may consider only conduct by Monsanto up until 2012 that you believe caused Mr. Hardeman's injuries. Any evidence you may have heard regarding conduct that was not a cause of Mr. Hardeman's injuries cannot be a basis for a finding that punitive damages may be imposed.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

a) How reprehensible was Monsanto's conduct? In deciding how reprehensible Monsanto's conduct was, you may consider, among other factors:

    1. Whether the conduct caused physical harm;

    2. Whether Monsanto disregarded the health or safety of others;

    3. Whether Mr. Hardeman was financially weak or vulnerable and Monsanto knew Mr. Hardeman was financially weak or vulnerable and took advantage of him;

    4. Whether Monsanto's conduct involved a pattern or practice.

b) Is there a reasonable relationship between the amount of punitive damages and Mr. Hardeman's harm?

c) In view of Monsanto's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Monsanto has substantial financial resources.

Punitive damages may not be used to punish Monsanto for the impact of its alleged misconduct on persons other than Mr. Hardeman.

Punitive damages are not intended to compensate Mr. Hardeman.  If you awarded compensatory damages to Mr. Hardeman, your award will have fully compensated him for any loss, harm, or damage that he has incurred or may in the future incur as a result of Monsanto's conduct.  Accordingly, you must not include in an award of punitive damages any amount intended as compensation for loss, harm, or damage that Mr. Hardeman has incurred or may incur.

There must be a reasonable relationship between any amount of punitive damages you award and the amount of compensatory damages you have awarded.

In determining the amount of punitive damages, if any, you should take into consideration any mitigating evidence.  Mitigating evidence is evidence that may demonstrate that there is no need for punitive damages or that a reduced amount of punitive damages should be imposed against Monsanto.

In determining whether to impose punitive damages and the amount of any such damages, you should consider whether Monsanto made any good-faith effort to comply with federal regulations or industry customs or standards.  You may not punish Monsanto for any conduct that complied with federal or state law, or was otherwise lawful where it occurred.

Source:  CACI 3945 (modified); CACI 201 (modified).  The proposed instruction deletes any reference to "fraud," and "trickery or deceit," which is outside the scope of the pleadings in this case.

California law requires that there be a reasonable relationship between the amount of punitive and compensatory damages.  *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580–82 (1996) ("The principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree."); *Gagnon v. Cont'l Cas. Co.*, 211 Cal. App. 3d 1598, 1602, 260 Cal. Rptr. 305, 307 (Ct. App. 1989) ("Concerning the actual harm to the plaintiff, California has long

followed the rule that punitive damages must bear a reasonable relation to the actual injury suffered.").  In determining the amount of punitive damages, the jury should also take into consideration any mitigating evidence.  *See, e.g.*, *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 904 (9th Cir. 1994) ("[I]n calculating punitive damages, the court must consider the reprehensibility of the defendant's actions as well as any mitigating conduct."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."); *Rosener v. Sears, Roebuck & Co.*, 110 Cal. App. 3d 740, 753–54, 168 Cal. Rptr. 237, 245 (Ct. App. 1980) (considering mitigating factors in finding exemplary damages award excessive).

Moreover, the amount awarded in punitive damages should be no greater than the amount the jury finds necessary to punish Monsanto.  *See, e.g.*, *Campbell*, 538 U.S. at 419 ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence . . . While we do not suggest there was error in awarding punitive damages based upon State Farm's conduct toward the Campbells, a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives, and the Utah court should have gone no further.").

It is not appropriate to award punitive damages as compensation.  *See, e.g.*, *id.* at 416 ("Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'  By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution.") (internal citations omitted)).

The jury should also consider whether Monsanto made any good-faith effort to comply with federal regulations or industry customs or standards, and may not punish

Monsanto for any conduct that complied with federal or state law. *Id.* at 421–22 ("A State cannot punish a defendant for conduct that may have been lawful where it occurred . . . A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred."); *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 996–97, 824 P.2d 643, 655 (Cal. 1992) ("[C]ourts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions."); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 893 (2000) ("In addition, if Honda were ultimately found liable, such compliance would presumably weigh against an award of punitive damages.") (Stevens, J., dissenting); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1198 (4th Cir. 1982) ("Clearly, whether or not Tiffin followed industry standards and complied with the state of the art while designing the motor home is probative on the issue of the wantonness, willfulness and maliciousness of their acts, including the placement of the auxiliary gas tank."); *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993) ("Stone Man's compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages; indeed, punitive damages, the purpose of which is to 'punish, penalize or deter' are, as a general rule, improper where a defendant has adhered to environmental and safety regulations.").

Finally, any evidence regarding conduct that was not a cause of Mr. Hardeman's injuries cannot be a basis for finding that punitive damages may be imposed. *Campbell*, 538 U.S. at 422–23 ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."); *Holdgrafer v. Union Oil. Co.*, 160 Cal. App. 4th 907, 929–30, 73 Cal. Rptr. 3d 216, 235 (Ct. App. 2008) (citing *Campbell*); *Medo v. Super. Ct.*, 205 Cal. App. 3d 64, 68, 251 Cal. Rptr. 924, 926 (Ct. App. 1988) ("Punitive damages are not simply recoverable in the abstract.

They must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case.").

## Verdict Form

### Failure to Warn

We answer the questions submitted to us as follows:

1. During the time Mr. Hardeman used Roundup, did Mr. Hardeman prove that
   Monsanto knew or should have known, based on the scientific and medical
   knowledge that was generally accepted in the scientific community at the time,
   that there was an actual risk that Roundup could cause NHL when used in
   accordance with widespread and commonly recognized practice?

   _____ Yes       _____ No

   If your answer to question 1 is yes, then answer question 2.  If you answered
   no, proceed to question 4.

2. Did Mr. Hardeman prove that Monsanto failed to adequately warn of the risk
   that Roundup could cause NHL?

   _____ Yes       _____ No

   If your answer to question 2 is yes, then answer question 3.  If you answered
   no, proceed to question 4.

3. Did Mr. Hardeman prove that he would not have used Roundup if Monsanto
   had provided an adequate warning?

   _____ Yes       _____ No

   Proceed to question 4.

**Design Defect**

We answer the questions submitted to us as follows:

    4.  Did Mr. Hardeman prove that a defect in Roundup's design was a substantial factor in causing his NHL?

       \_\_\_\_\_ Yes     \_\_\_\_\_ No

    If your answer to question 4 is yes, then answer question 5.  If you answer no, then stop here, answer no further questions, and have the presiding juror sign and date this form, unless you answered yes to question 3.  If you answered yes to question 3, proceed to question 6.

    5.  Did Monsanto prove that the benefits of Roundup's design outweigh the risks of the design?

       \_\_\_\_\_ Yes     \_\_\_\_\_ No

    If your answer to question 5 is yes, then stop here, answer no further questions, and have the presiding juror sign and date this form, unless you answered yes to question 3.  If you answered yes to question 3, or no to question 5, proceed to question 6.

[As discussed above, Monsanto does not believe the jury should be charged on a design defect theory.]

**Compensatory Damages**

6.  What are Mr. Hardeman's damages?

    a.  Past medical expenses:        $_____

    b.  Future medical expenses:     $_____

    c.  Past lost earnings:           $_____

    d.  Physical pain and mental suffering:  $_____

TOTAL:                   $_____

Proceed to question 7.

**Punitive Damages**

We answer the questions submitted to us as follows:

    7.  Did Mr. Hardeman prove, by clear and convincing evidence, that Monsanto acted with malice or oppression in the conduct that caused Mr. Hardeman's injuries?

        \_\_\_\_\_ Yes      \_\_\_\_\_ No

If your answer to question 7 is yes, then answer question 8.  If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    8.  Did Mr. Hardeman prove, by clear and convincing evidence, that the conduct constituting malice or oppression was committed, ratified, or authorized by one or more officers, directors, or managing agents of Monsanto?

        \_\_\_\_\_ Yes      \_\_\_\_\_ No

If your answer to question 8 is yes, then answer question 9. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    9.  What amount of punitive damages, if any, do you award Mr. Hardeman?

      $_____

Please have the presiding juror sign and date this form.

Signed: _____

           Presiding Juror

Dated: _____

       After the verdict form has been signed, notify the clerk that you are ready to present your verdict in the courtroom.

1

2      DATED: March 14, 2019                    Respectfully submitted,

3                                               /s/ Brian L. Stekloff_____

4                                               Brian L. Stekloff (*pro hac vice*)
                                                (bstekloff@wilkinsonwalsh.com)
5                                               Tamarra Matthews Johnson (*pro hac vice*)
                                                (tmatthewsjohnson@wilkinsonwalsh.com)
6                                               Rakesh Kilaru (*pro hac vice*)
                                                (rkilaru@wilkinsonwalsh.com)
7                                               WILKINSON WALSH + ESKOVITZ LLP
                                                2001 M St. NW, 10th Floor
8                                               Washington, DC 20036
                                                Tel: 202-847-4030
9                                               Fax: 202-847-4005

10                                              Pamela Yates (CA Bar No. 137440)
                                                (Pamela.Yates@arnoldporter.com)
11                                              ARNOLD & PORTER KAYE SCHOLER LLP
                                                777 South Figueroa St., 44th Floor
12                                              Los Angeles, CA 90017
                                                Tel: 213-243-4178
13                                              Fax: 213-243-4199

14
                                                Eric G. Lasker (*pro hac vice*)
15                                              (elasker@hollingsworthllp.com)
                                                HOLLINGSWORTH LLP
16                                              1350 I St. NW
                                                Washington, DC 20005
17                                              Tel: 202-898-5843
                                                Fax: 202-682-1639
18

19                                              Michael X. Imbroscio (*pro hac vice*)
20                                              (mimbroscio@cov.com)
                                                COVINGTON & BURLING LLP
21                                              One City Center
                                                850 10th St. NW
22                                              Washington, DC 20001
                                                Tel: 202-662-6000
23

24                                              Attorneys for Defendant
                                                MONSANTO COMPANY
25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I HEREBY CERTIFY that on this 14th day of March 2019, a copy of the foregoing was

3    filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all

4    appearing parties of record.

5                                                                      /s/ Brian L. Stekloff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28