**Volume 15**

**Pages 2149 - 2161**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| EDWARD HARDEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS.                  ) | **NO. C 16-00525 VC** |
| ) | |
| MONSANTO COMPANY, ) | |
| ) | |
| Defendant.  ) | |

San Francisco, California
Monday, March 18, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        ANDRUS WAGSTAFF PC
        7171 W. Alaska Drive
        Lakewood, Colorado  80226
  BY:  **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
        **DAVID J. WOOL, ATTORNEY AT LAW**

        MOORE LAW GROUP
        1473 South 4th Street
        Louisville, Kentucky  40208
  BY:  **JENNIFER MOORE, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:   Marla F. Knox, RPR, CRR
              Official Reporter

1  **APPEARANCES**: (CONTINUED)

2  For Defendant:

3                              WILKINSON  WALSH ESKOVITZ LLP
                               2001 M Street, NW - 10th Floor
4                              Washington, D.C.  20036
                         BY:   **BRIAN L. STEKLOFF, ATTORNEY AT LAW**
5                              **RAKESH N. KILARU, ATTORNEY AT LAW**
                               **TAMARRA MATTHEWS JOHNSON, ATTORNEY AT LAW**
6                              **JULIE RUBENSTEIN, ATTORNEY AT LAW**
                               **CALI COPE-KASTEN, ATTORNEY AT LAW**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  Monday - March 18, 2019                              8:47 a.m.
 2                      P R O C E E D I N G S
 3                            ---oOo---
 4      (The following proceedings were heard in open court:)
 5          THE COURT:  Nothing to talk about before we bring in
 6  the jury?
 7          MR. STEKLOFF:  No, Your Honor.
 8          THE COURT:  We are going to do it in, like, 20-minute
 9  increments; 20 minutes, five-minute break, 20 minutes,
10  five-minute break.
11          MS. MOORE:  Okay.
12      (Proceedings were heard in the presence of the jury:)
13          THE COURT:  Good morning, everybody.  You asked to
14  hear read back of Mr. Hardeman's testimony.  So we will provide
15  that to you now courtesy of Marla.  We will do it in about --
16  the testimony is about an hour long.  We will do it in roughly
17  20 minute intervals; 20 minutes, five-minute break, 20 more
18  minutes, five-minute break.  So, Marla, take it away.
19      (Record read of Mr. Hardeman's testimony as requested
20       by the Jury.)
21          THE COURT:  You can head back to the jury room and
22  resume your deliberations.  See you soon, maybe.
23      (Proceedings were heard out of presence of the jury:)
24          MS. WAGSTAFF:  Before we start opening statement -- if
25  they are necessary -- I have a few comments to go over with
```

1  you.  I don't know if now is a good time or you want to --
2          **THE COURT:**  Sure.
3          **MS. WAGSTAFF:**  Just a few brief comments.  First is
4  there is an e-mail that is -- if I may hand it to you, we would
5  like to use this e-mail in Phase Two and in our opening
6  statement.  The date of it is 2015, which post-dates his use.
7  However, the reason why we would like to use this is on page 2,
8  which ends in 598, it is Bill Heydens talking about the way
9  that they ghostwrote the Williams' article.  You have seen this
10 e-mail throughout the litigation.  The only reason I'm bringing
11 it to your attention is because it post-dates his use.  So that
12 is the reason we would like to use his e-mail.  I think it
13 relates to pre-use conduct because the Williams' article was
14 drafted in 2000.  He quit using Roundup in 2012.  So I just
15 wanted to run this by the Court so there wasn't any confusion
16 on whether or not I could use this document.
17         **THE COURT:**  Okay.  So what you are saying is that this
18 document post-dates Mr. Hardeman's use, but it reflects
19 ghostwriting that took place while Mr. Hardeman was still using
20 Roundup?
21         **MS. WAGSTAFF:**  Correct.
22         **THE COURT:**  If that's what it reflects, then I would
23 assume it would be okay.  I haven't read the e-mail yet.
24         **MS. WAGSTAFF:**  I can direct you specifically to what
25 in the e-mail we want to be using.  If you look to the

```
 1   cascade -- the second page where it says Donna at the top.
 2            THE COURT:  Yeah.
 3            MS. WAGSTAFF:  Are you there?  This is from
 4   Dr. Heydens.  If you look down in the -- sort of the biggest
 5   paragraph starting with "for the overall plausibility," it
 6   talks about a less expensive, more palatable approach might be
 7   to involve experts only for the area of contingent; and then it
 8   goes on and then it talks about ghostwriting.  At the very end
 9   it says, Recall this is how we handled Williams, Kroes and
10   Munro 2000.
11      So to the extent there is pushback from Monsanto that the
12   Williams' article was ghostwritten, the article says above that
13   black line, We ghostwrote the exposure tox and geno sections.
14   So it relates back to the 2000 Williams' article.
15            THE COURT:  I assume that the -- it would depend on
16   whether there is other evidence of ghostwriting the Williams,
17   Kroes and Munro article, right?  I mean, if -- if there is --
18   if this is how you are able to prove that the -- that that
19   article was ghostwritten, then I would think that it would be
20   appropriate to figure out a way, somehow, to get this in.  But
21   I'm sort of assuming that you have other evidence that that
22   article was ghostwritten, and you are trying to get this in to
23   show that subsequent articles were ghostwritten.  That's what
24   it seems to me.
25            MS. WAGSTAFF:  Well --
```

1 **THE COURT:** Do you not have other evidence that the
2 Williams, Kroes and Munro article was ghostwritten?
3 **MS. WAGSTAFF:** We believe this is actually a party
4 admission that is some of our best evidence that it was
5 ghostwritten. I will go back and compare this to other
6 evidence we have that was ghostwritten. We can revisit this.
7 I just wanted to bring this to your attention now.
8 **THE COURT:** I mean, do you agree with the framework
9 that I established for whether this would be admissible given
10 that I have ruled that evidence of ghostwriting is admissible
11 and given that I have ruled that evidence of post-use conduct
12 is not admissible?
13 **MR. STEKLOFF:** Yes. They have testimony of
14 Dr. Heydens that they believe would help establish that the
15 article was ghostwritten. And so, therefore, I don't think
16 they need this e-mail which --
17 **THE COURT:** It would depend how strong that evidence
18 is, right? And it would depend -- you know, it would depend --
19 you know, whose testimony it is, based on what documents and,
20 you know, so if that's -- if it is in dispute whether that 2000
21 article was ghostwritten; and this is additional evidence that
22 it was, then I would think this would be -- this probably would
23 be admissible. That would be my sense. So -- but the burden
24 is on you to show that it is admissible so, you know, given my
25 ruling about post-use conduct.

1    So you need to kind of put in front of me what the other
2    evidence is, and you need to explain to me why this is in
3    dispute and, you know -- if it is something that Monsanto is
4    disputing and there is evidence going both ways, then I would
5    think that this potentially would be admissible.
6         **MS. WAGSTAFF:**  Okay.  So I will bring this -- I will
7    go weigh all that evidence.  It is in dispute.  As you have
8    heard throughout the entire litigation, that it is in dispute.
9         **THE COURT:**  Well, I mean, I'm asking whether it is in
10   dispute in this trial.
11        **MS. WAGSTAFF:**  It is in dispute.  Maybe it's not.
12        **MR. STEKLOFF:**  What is not -- what is in dispute,
13   I guess, is that in the Williams' article itself -- in the
14   acknowledgment sections -- it specifically lists the role of
15   several Monsanto scientists.  So I guess to the extent -- so to
16   the extent that --
17        **THE COURT:**  Does it say that Monsanto scientists
18   drafted the article and then the listed authors just edited and
19   signed their names?
20        **MR. STEKLOFF:**  No, it doesn't; but I'm not so sure
21   that that's what happened either.
22        **THE COURT:**  That's what this says, right?  That's what
23   this says happened for -- with Williams, Kroes and Munro,
24   right?
25        **MR. STEKLOFF:**  Understood, Your Honor.

**THE COURT:** So if you are disputing that, then it sounds like this evidence would be admissible, I would think. There would be a question of how to -- which aspects of it are admissible and, you know, is it the whole thing or is there some way to redact it pursuant to Rule 403 that still allows the Plaintiffs to make that point.

**MR. STEKLOFF:** I think it also depends on -- I haven't gone back to specifically check the Heydens' deposition -- but what the testimony is from Dr. Heydens I think.

**THE COURT:** As of now it is not admissible. However, I'm guessing that the Plaintiffs are going to be able to sort of establish its admissibility by making a presentation about the other evidence relating to this issue.

**MS. WAGSTAFF:** Okay. We will do that next time we are in front of you, Your Honor.

**THE COURT:** And then -- which reminds me, I want to review opening slides for both sides. So when am I going to get those?

**MS. WAGSTAFF:** I have a copy for you right now if you would like.

**THE COURT:** Okay.

**MS. WAGSTAFF:** Before I hand that to you, another thing about this -- this e-mail that you have in front of you, we have -- we don't have an agreement on whether or not we should redact European names simply because of European privacy

1   laws.  I think you had sort of opined on that earlier at the
2   beginning of the litigation.
3            **THE COURT:**  If I recall, my opinion was that -- well,
4   maybe you can remind me.  I think my opinion was I don't see
5   how European law could require us in this trial to redact those
6   names; but if it's not terribly important who it is -- if it is
7   not particularly important who the person is, I wouldn't -- you
8   know, I would be open to redacting just to avoid that
9   complication; but if it is important that it was X person
10  rather than Y person saying something in a document, I would --
11  you know, my pretty strong inclination would be that their name
12  shouldn't be redacted.
13           **MS. WAGSTAFF:**  Sure.  We think it is important
14  especially when you take Mark Martens, for example -- who is
15  one of our depositions, and then he has -- he basically lays
16  out the Parry story from start to finish -- and then you have
17  e-mails that look like this or even worse -- just black bolds
18  everywhere -- and it is his own name.  So they are watching
19  deposition testimony of Mark Martens; reading e-mails that he
20  wrote that are all blacked out.  So in circumstances like that,
21  we -- I would assume the burden would be on Monsanto to further
22  redaction, but I just wanted to bring that to the Court's
23  attention.
24           **THE COURT:**  I would say that is correct.
25           **MR. STEKLOFF:**  So my -- not an expert in European

1  privacy laws -- my understanding is that if there is a European
2  citizen, then while the name -- so let's just use Dr. Martens
3  as an example.  There are portions of the deposition where the
4  questioner asks Mr. Martens -- I think it is actually
5  Ms. Wagstaff -- reads portions of an e-mail and can use --
6  let's say Dr. Martens' name is in an e-mail, that portion is
7  actually read out loud.  That part we are not redacting, say,
8  from a playback of a video where his name was used.
9       But my limited understanding of European privacy law is
10 that if we don't redact the name in the document -- as opposed
11 to say in the oral testimony -- then that could potentially --
12 or is in violation of European privacy law.
13      I, again, as when we discussed this before, I think --
14 don't think there are any limitations about what Your Honor
15 could order, but I think we can't just voluntarily unredact
16 that name.
17      That is sort of the circumstance we are in now.  We have
18 redacted names of European citizens or residents who are
19 living.  If they are deceased, then it is actually not an
20 issue.  So Dr. Parry's name, I think, has not been redacted
21 and -- but we are not objecting to say where an e-mail is read
22 and then the name is used.  We could either keep the
23 redactions; explain to the jury that they are there.
24           **THE COURT:**  Well, no.  Here is my order.
25           **MR. STEKLOFF:**  Okay.

1  **THE COURT:** It is not regarding any specific document
2  or any specific name, but my order is that if it is not
3  particularly consequential who the person is, then I'm allowing
4  you to redact it.  If it is consequential who the person is, it
5  may not be redacted.  That is my order.  I will require you to
6  meet and confer on that.  If there are any disputes on that,
7  then you can bring that up with me.
8     The point is -- to put it another way -- if the actual
9  name of the person has evidentiary value in the trial, then it
10 cannot be redacted.
11     **MR. STEKLOFF:** With that order, then I think I will
12 not get in trouble in European privacy laws.
13     **THE COURT:** I hope not.
14     **MR. STEKLOFF:** We are not trying to redact the names
15 to be clear.  I'm just trying to comply --
16     **THE COURT:** I understand.
17     **MS. WAGSTAFF:** My understanding is once you have an
18 order from the Court, that takes care of the problem.
19     **THE COURT:** If you need a written order repeating what
20 I just said, that is fine too.
21     **MR. STEKLOFF:** We can use that transcript.  Then we
22 can coordinate on easily on unredacting, say, Dr. Martens' name
23 and --
24     **THE COURT:** Anything else?  Opening slides?
25     **MS. WAGSTAFF:** So one more thing.  When we had given

1  some request for admission over the years, they have come with
2  a lot of sort of fluff and extra language.  And so I gave
3  Mr. Stekloff the requests that we intend to use with the direct
4  language of what they are actually admitting, and I told him
5  which set of requests for admissions they are.  So in my slides
6  I have the language that I think he will agree to which is
7  reflective of what was actually admitted in the RFA.
8        **MR. STEKLOFF:**  I just received it, so I have to go
9  back and see.  Obviously at the beginning, as you know, of our
10 phase, often there are a lot of objections.  I don't think that
11 would have to be played.  I don't know how the rest of it has
12 been edited.  I just have to go look back through that
13 language.
14       **THE COURT:**  So the upshot is that you have given him
15 the slides where you use those or you have given him --
16       **MS. WAGSTAFF:**  I have given him a memo that lists,
17 Here are the RFAs we plan to use in Phase Two with the language
18 we plan to use.  We would say, Admit that you have never warned
19 about cancer.  And they would say, Objection -- seven
20 sentences -- and then admitted.  So I just took out sort of all
21 of the objections.
22       **THE COURT:**  Okay.
23       **MR. STEKLOFF:**  I will verify that.  I also -- my
24 opening dec is ready.  I don't have a copy here.  I will go
25 print it and have it brought to Ms. Melen.

1  **THE COURT:** Great.

2  **MS. WAGSTAFF:** That's all. I just -- I have that
3  slide in there we just talked about. So obviously I won't use
4  it if we don't prove to you that we can't --

5  **THE COURT:** Okay. What I would say for now is take it
6  out of your opening.

7  **MS. WAGSTAFF:** Yeah, yeah. I just printed it before I
8  came in.

9  **THE COURT:** And, you know, even if you don't use it in
10 opening, that doesn't preclude you from using it as long as you
11 can make that showing. Okay. Thank you.

12 **MS. MOORE:** Thank you, Your Honor.

13 **THE CLERK:** Court is in recess.

14              (Recess taken at 9:49 a.m.)

15           (Jurors left for the day at 3:00 p.m.)

16                       ---oOo---

**CERTIFICATE OF REPORTERS**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Monday, March 18, 2019

_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter