**Volume 16**

**Pages 2162 - 2195**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
EDWARD HARDEMAN,              )
                             )
          Plaintiff,          )
                             )
  VS.                         )     NO. C 16-00525 VC
                             )
MONSANTO COMPANY,             )
                             )
          Defendant.          )
_____)
```

San Francisco, California
Tuesday, March 19, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

            ANDRUS WAGSTAFF PC
            7171 W. Alaska Drive
            Lakewood, Colorado  80226
        BY: **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
            **DAVID J. WOOL, ATTORNEY AT LAW**

            MOORE LAW GROUP
            1473 South 4th Street
            Louisville, Kentucky  40208
        BY: **JENNIFER MOORE, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, RPR, CRR
              Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporters

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant:

3                       WILKINSON  WALSH ESKOVITZ LLP
                        2001 M Street, NW - 10th Floor
4                       Washington, D.C.  20036
                BY:   **BRIAN L. STEKLOFF, ATTORNEY AT LAW**
5                     **RAKESH N. KILARU, ATTORNEY AT LAW**
                      **TAMARRA MATTHEWS JOHNSON, ATTORNEY AT LAW**
6                     **JULIE RUBENSTEIN, ATTORNEY AT LAW**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **I N D E X**

2    Tuesday, March 19, 2019 - Volume 16

3                                                        **PAGE**   **VOL.**

4    Verdict                                            2192    16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>**Tuesday - March 19, 2019**</u>                                    <u>**8:32 a.m.**</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | **---oOo---** |
| 4 | (Proceedings were heard out of the presence of the jury:) |
| 5 | **THE COURT:**  Okay.  Couple things I want to discuss |
| 6 | with you-all.  The first is the opening slides.  It struck me |
| 7 | that one of the Plaintiff's opening slides was potentially |
| 8 | problematic.  I'm not certain yet.  You-all know the evidence |
| 9 | better than I do, but it is the slide that says Dr. Parry's |
| 10 | second report, August 1999. |
| 11 | **MS. WAGSTAFF:**  Okay, Your Honor. |
| 12 | **THE COURT:**  You know, I don't know if we should |
| 13 | resolve this now or whether you should just give a copy of that |
| 14 | slide to Monsanto and sort of allow them to check it, but there |
| 15 | is a statement on the slide that says Dr. Parry concludes |
| 16 | glyphosate is carcinogenic, and my understanding on the |
| 17 | evidence is that that's not -- that is a misstatement.  But |
| 18 | I -- it is possible that I'm -- I don't have a full |
| 19 | understanding of the evidence. |
| 20 | **MS. WAGSTAFF:**  So your concern is over the verb |
| 21 | "concludes." |
| 22 | **THE COURT:**  Yes. |
| 23 | **MS. WAGSTAFF:**  Okay.  So I will look back at the |
| 24 | actual document and I will use whatever word is in the |
| 25 | document. |

1        **THE COURT:**  And show a copy of the slide -- disclose a

2  copy of the slide to the Defense.

3        **MS. WAGSTAFF:**  Sure.

4        **THE COURT:**  Okay.  All right.  So that's one.

5      The other housekeeping matters, we -- I only just noticed

6  we have a motion to remand one of these cases on calendar for

7  Thursday.  Is anybody aware of that?  One of the MDL cases.

8  So -- yeah, I wasn't aware of it until yesterday either.  Saw

9  it on the calendar.  So I don't think any of us should be

10  worrying about that right now.

11      So I think what we will do is push it back, but there is

12  something that I wanted to say about it, which is it seems to

13  be one of those cases where a number -- a whole bunch of

14  Plaintiffs are joined in the same complaint.  And we do have --

15  I think there are a large number of complaints where multiple

16  Plaintiffs are joined.  Obviously we need to dive into the

17  issue, but my initial reaction is that all of those -- all of

18  those Plaintiffs are improperly joined; that they probably all

19  need to be individual lawsuits.  So that's something that I

20  want to put on the agenda for working out after this trial is

21  over.

22        **MS. WAGSTAFF:**  Sure, Your Honor.  And I'm not sure

23  what case it is or how it came before you to be -- have a

24  motion to remand, but if it is a state court case that got

25  removed --

PROCEEDINGS

1      **THE COURT:** It is.

2      **MS. WAGSTAFF:** Okay. Then it was -- may have been

3   properly joined in the venue in -- it is probably from

4   St. Louis, I'm guessing, where they are properly joined as

5   multi-plaintiff complaints.

6      **THE COURT:** Oh, that's interesting. So there will be

7   an interesting issue of -- if they are properly -- excuse me if

8   they are properly joined -- according to the rules of the state

9   court -- and then it comes here and then under the Federal

10  Rules, they shouldn't be Plaintiffs in the same case --

11     **MS. WAGSTAFF:** Right. I'm just putting a note for you

12  to think about that. That is probably the case.

13     **THE COURT:** The question is whether they should be

14  severed after they are removed --

15     **MS. WAGSTAFF:** And if they are properly removed --

16     **THE COURT:** -- remanded.

17     **MS. WAGSTAFF:** Yeah.

18     **THE COURT:** Because a lot of -- you know, one issue is

19  that, you know, you have -- you have a number of Plaintiffs who

20  are joined -- and perhaps they are properly joined in -- under

21  the state court rules -- but the fact that the Plaintiffs are

22  altogether causes there to be diversity jurisdiction. Where,

23  if they were split into individual cases, there would not be

24  diversity jurisdiction for some of those cases; and some of

25  those cases would need to go back to state court.

 1          So anyway, none of this is -- we don't need to get into

 2     this now.  But I just wanted to say that that -- so I will push

 3     back that remand motion probably until, like, late April or

 4     something, and that will be an occasion not for -- not only for

 5     us to deal with that but to deal with the larger question of

 6     whether we have -- whether a number of the lawsuits here have

 7     Plaintiffs who are improperly joined.

 8               **MS. WAGSTAFF:**  All right.

 9               **THE COURT:**  And then lastly, this -- the e-mail that

10     we were talking about yesterday, so I was going over the e-mail

11     more closely and thinking about our conversation about it; and

12     I was also going over the opening slides, and it made me -- so

13     there is -- I want to talk further about this e-mail, but it

14     also made me realize that we should probably have further

15     discussion about the parameters that were created by my ruling

16     on the motion in limine about post-use conduct because it may

17     be that we -- it may be that we don't -- it may be that we

18     understand that ruling differently, and that may be because I

19     didn't provide enough detail in my ruling on that.  I think my

20     ruling may have created a misimpression on your part that

21     certain evidence is excluded that I didn't intend to exclude.

22          So, first, let's talk about the e-mail.  So after reading

23     the e-mail more closely and after reviewing the opening slides,

24     which admittedly only gives me an incomplete picture of this,

25     it seems like this should be admitted.  Unless they have sort

1  of other evidence that -- unless the Plaintiffs have other

2  evidence from, you know, pre-2012 that suggests -- as clearly

3  as this e-mail does -- that the Williams, Kroes and Munro study

4  was ghostwritten, I think this has to come in because it is

5  relevant to, you know, post-2012 conduct.

6     So I guess I would ask somebody to suggest to address

7  whether there is other comparable evidence from pre-2012 that

8  suggests as strongly as this does that the Williams, Kroes and

9  Munro study was ghostwritten.

10     **MS. RUBENSTEIN:**  Your Honor, we -- we think there is

11  evidence from pre-2012 related to the allegations about the

12  Williams 2000 paper.  And, in fact, Plaintiffs have designated

13  portions of Dr. Heydens' testimony directly related to the

14  Williams 2000 paper that include e-mails from the time period

15  during which Mr. Hardeman was using Roundup and around the time

16  of the Williams 2000 paper that speak to this issue.  I would

17  be happy to hand you up those sections.

18     **THE COURT:**  Sure.

19     **MS. RUBENSTEIN:**  So it is testimony -- and the yellow

20  highlighting are the portions that the Plaintiffs have

21  designated.

22     **MS. WAGSTAFF:**  Do you have a copy for me?

23     **MS. RUBENSTEIN:**  I do.

24     So Exhibit 26 to the deposition is an e-mail from November

25  '99.

**PROCEEDINGS**

1      **THE COURT:**  So can you point me to the part of the

2   deposition testimony here that sort of constitutes evidence

3   that is comparable to this -- this e-mail in the way it

4   characterizes the Williams paper?

5      **MS. RUBENSTEIN:**  I can.  Give me one second.

6      (A brief pause was had.)

7      **MS. RUBENSTEIN:**  So on page 206 it is talking about a

8   contemporaneous e-mail.  The bottom of page 206, I'm reading at

9   line 21:  Bill has proposed completing the quality assurance

10  changes, and then sending the edited form of the manuscript

11  back to CanTalk.

12     So that whole section discusses Dr. Heydens'

13  participation.

14     **THE COURT:**  And then it sounds like there is an

15  exhibit that you are -- that is being discussed in there.  You

16  want to show me that?

17     **MS. RUBENSTEIN:**  I don't have copies with me at the

18  moment, Your Honor; but I would be happy to have them printed

19  and we can submit them this afternoon.

20     **THE COURT:**  Okay.  I mean, it doesn't -- this -- it's

21  not -- at least from the testimony alone, it's not clear to me

22  that this testimony stands for the same proposition that is

23  articulated -- or at least stands for quite the same

24  proposition that is articulated in this e-mail, which is -- one

25  option is that we ghostwrite the exposure talks and genotox

1    sections.   An option would be to add blank and CAER or blank,

2    to have their names on the publication, but we would be keeping

3    the costs down by doing the writing; and they would just edit

4    and sign their names, so to speak.   Recall that is how we

5    handled Williams, Kroes and Munro 2000.

6        So two things about that.   One is if that characterization

7    of what happened with Williams, Kroes and Munro is in dispute,

8    then it seems to me that this is further evidence in support of

9    the Plaintiff's version.   So even if they already have some

10   evidence to support that, if it is in dispute, then this likely

11   should come in.

12       But the secondary point, I guess, is that, you know, from

13   the witness testimony that you are giving me, it doesn't as

14   clearly suggest what the e-mail suggested.

15           MS. RUBENSTEIN:   I understand, Your Honor, and it

16   certainly is in dispute.   So to that extent, you are correct.

17           THE COURT:   Okay.

18           MS. RUBENSTEIN:   But I would -- our position is there

19   is almost no way to allow them to bring in the 2015 e-mail and

20   the associated testimony without getting into the events of

21   2015, which Your Honor has clearly excluded under the

22   post-use --

23           THE COURT:   Well, but then maybe there needs to be a

24   limiting instruction.   I mean, and this sort of gets to the

25   point that I previewed a little bit earlier, which is that we

1    need to have a further conversation about post-use conduct,

2    because I think -- I didn't do a good enough job of explaining

3    what I meant when I was -- when I said that I was granting

4    Monsanto's motion on that.

5        But let's put that aside for a second.

6            MS. RUBENSTEIN:   Sure.  If I could point you to, in

7    the snippet I handed you, page 217, this is another

8    contemporaneous e-mail that discusses Dr. Heydens'

9    participation in the Williams 2000 paper refers to finally --

10   sorry -- page 217, reading from line 15:  And you say in an

11   e-mail that you sent to him, finally attached are the text,

12   tables and references.  I've ascribed several new gray hairs

13   during the writing of this thing, but as best I can tell at

14   least they have stayed attached to my head.

15       Obviously very tongue in cheek, but we think that speaks

16   to --

17           THE COURT:   It is an admission that he drafted the

18   paper.

19           MS. RUBENSTEIN:   Well, I certainly would not put it

20   that way, but that is probably the Plaintiff's interpretation

21   of that.

22           MS. WAGSTAFF:   I think that is Donna Farmer talking

23   about the gray hair.  I could be wrong.

24           THE COURT:   Oh, okay.  Well, either way, right?

25           MS. RUBENSTEIN:   So -- and there is another -- towards

**PROCEEDINGS**

1  the end of this section I handed you, there is an e-mail that

2  refers to -- actually, I think that perhaps -- perhaps the best

3  thing to do is for us to print you the e-mails that are

4  referred to in this section of the testimony so Your Honor can

5  see exactly what they say.

6      But with respect to the 2015 e-mail, I don't -- you know,

7  unless the e-mail were heavily redacted -- and I know

8  Ms. Wagstaff had proposed to me yesterday a way of redacting

9  the 2015 e-mail to get in the portion that they want to get

10  in -- but we think that there needs to be even more redactions

11  if that e-mail were to come in at all because it is very

12  difficult not to bring in evidence of what was going on in 2015

13  while allowing them the portion that they want from the 2015

14  e-mail.

15      **THE COURT:**  While allowing the jury to understand what

16  it is, right?  I mean, that's the problem is it is so

17  intertwined with what Monsanto was doing in 2015, that it makes

18  it hard; but it seems to me that that is probably your problem.

19  And -- and the solution is probably that the jury needs to be

20  instructed something to the effect of -- and I assume the

21  Plaintiffs would object to this for the same reason that they

22  objected to my post-use conduct ruling in the first place --

23  but I would think the jury -- it might be appropriate with

24  evidence like this coming in for the jury to be instructed

25  that, you know -- you know, that you are only -- I'm just

1   speaking off the top of my head now, so I'm not -- obviously we

2   would play with it but, you know, conduct past 2012, you know,

3   can only be considered to the extent it helps to prove what was

4   going on prior to 2012, and not, you know -- other than that,

5   you should not be -- you know, it should not enter your

6   calculation, either for the -- you know, for the -- for

7   liability or damages, something along those lines, if Monsanto

8   wanted that.

9        And I think -- like I said, I think this discussion brings

10  up a larger issue, which is -- you know, I went back and I --

11  in the -- in the motion -- in the order granting Monsanto's

12  motion in limine on post-use conduct, I pretty much just said

13  the motion is granted.  And I probably should have provided

14  some further explanation because it seems to have created an

15  impression that certain things are excluded when they should

16  not necessarily be excluded and -- and this e-mail -- this

17  e-mail is an example of that, right?

18       To the extent Monsanto -- Monsanto was doing something

19  post 2015 -- post-2012, that sheds light on what it was doing

20  pre-2012, then I think it is admissible.  So one obvious

21  example is the Rowland stuff, right?  You know, the -- and I

22  noticed I realize that Monsanto in its brief argued that the

23  Rowland stuff is simply inadmissible because it was post-2012,

24  but that's not entirely true, right?  And that was something I

25  should have clarified in my order.

1      I mean, the -- as I recall it -- and I haven't gone back

2    and looked at it carefully -- but as I recall it, the Rowland

3    evidence is evidence that Monsanto thought that it had a guy in

4    EPA, and that guy was in EPA and presumably communicating with

5    Monsanto in the way that he communicated with him later

6    pre-2012.

7      So, you know, to the extent that Monsanto is arguing, Hey,

8    the EPA approved this; you know, this was approved all the way

9    up through 2012 so how could Monsanto have known that there was

10   a problem with glyphosate?  I mean, I don't understand why --

11   you know, the -- I don't understand why Monsanto's apparently

12   cozy relationship with Rowland pre-2012, if there is evidence

13   of that, would be -- would not be admissible.

14          **MS. RUBENSTEIN:**  So, Your Honor, I think the issue

15   is -- I understand what you are saying about evidence post-2012

16   shedding light on pre-2012.  I understand that.  But the issue

17   is when the two are so intertwined that you can't extricate the

18   two -- and I think that is exactly what the problem is with

19   this 2015 e-mail chain, unless as I said, it is heavily

20   redacted.  If Your Honor rules that this is admissible, I think

21   we have some proposals for how to get around the redaction

22   issue, but I think that's the problem.  It is when the two are

23   so intertwined, that it would necessarily mean the jury is

24   exposed to Monsanto's conduct post-2012 --

25          **THE COURT:**  Right.

1    **MS. RUBENSTEIN:**  -- and then that is unduly

2  prejudicial.

3    **THE COURT:**  Well, I think that is a concern.  But I

4  think if you have a -- you know, a real dispute about what

5  happened pre-2012, and there is evidence of Monsanto's conduct

6  post-2012 that is sort of inter -- sheds light on the dispute

7  about what happened pre-2012, the answer is a limiting

8  instruction, I think.

9    **MR. STEKLOFF:**  I think one problem, Your Honor -- put

10  aside the 2015 e-mail about the Williams article.  I think that

11  is separate.  But let's just use Jess Rowland as an example.

12  If there is pre-2012 evidence of Jess Rowland, I think that

13  would come in regardless of any clarification today.  It would

14  come in under your order.

15    If there is post-2012 evidence of Jess Rowland, I don't

16  know why that would shed light on things pre-2012 --

17    **THE COURT:**  Well, and I'm not sure it does, but I was

18  sort of using that as an example.  And it depends on what that

19  actual evidence is, and I don't recall what details of that

20  evidence is.  But my recollection of it from last time I looked

21  at it, which was a while ago, was that, you know, there were

22  these e-mail -- internal Monsanto e-mail exchanges, which

23  strongly suggested that Monsanto felt that it had somebody on

24  the inside, kind of.  And if I recall correctly, that person

25  was on the inside for decades, right?

1      So, you know, I don't know why it wouldn't be -- I mean,

2   based on my admittedly vague recollection of the evidence, I

3   don't know why it wouldn't be appropriate for the Plaintiffs to

4   say, Look, you know, Monsanto is saying, Hey, EPA approved

5   this.  It was -- was approving this all the way through 2012

6   and beyond.  And, you know, and they -- and Monsanto is telling

7   you that that's why it should not be held to have known about

8   the dangers or why the jury shouldn't conclude that it should

9   have known about the dangers, but Monsanto was -- had, you

10   know, captured the EPA or captured part of the EPA.

11      I mean, why is that -- why isn't the Rowland evidence --

12   Rowland stuff, you know, potential evidence that Monsanto had,

13   you know, partially captured the EPA?

14      **MR. STEKLOFF:**  Well, if it is pre-2012, I think it is

15   probably fair game.  The problem with opening up the door

16   post-2012 is Jess Rowland -- just to use him specifically --

17   leaves the EPA, and now the EPA has repeatedly reaffirmed that

18   glyphosate is not carcinogenic after Jess Rowland, as has the

19   rest of the world.  And so we have relied -- I think we have

20   very close -- I mean, we have not gone past 2012.  We didn't --

21   we also used -- followed your ruling, for example, in examining

22   Dr. Portier.

23      And so to then now tell us that all of a sudden

24   post-2012 -- I'm not including the Williams e-mail -- but to

25   tell us that other -- especially as it relates to this state of

1   our -- state of our knowledge of Monsanto -- I mean, you have

2   now seen our opening deck for Phase Two, so I suspect that's

3   probably playing into this a little bit -- but to then say that

4   we can't then tell the full regulatory story, I think is

5   extremely prejudicial to us where we relied on your ruling.

6          Because Jess Rowland leaves the EPA in the last year,

7   including with respect to Dr. Portier, has said, We disagree

8   glyphosate -- we don't believe that the overall totality of the

9   evidence shows that glyphosate is -- we think it is not

10   carcinogenic based on our regulations and standards.

11          And so that has nothing to do with Jess Rowland.  That is

12   a completely different group of people.  That happened to be

13   clear, you know, I think in 2016.  I think it happened again --

14   so there is a whole spectrum of events where those -- where the

15   safety of glyphosate is reaffirmed by the EPA and other

16   regulators.  So that, I think, is the concern of sort of trying

17   to -- trying to, you know -- allow, I think, some post-2012

18   evidence.

19          **THE COURT:**  I understand what you are saying, and I

20   want to make clear I'm not -- you know, I'm not making a ruling

21   on the Rowland stuff.  I was just sort of throwing it out as an

22   example of a way in which my ruling, perhaps, has been

23   construed as more restrictive than I intended it to be

24   construed.

25          And so -- I mean, here is the guidance I want to provide

1   you now -- and it may be that we need to have further

2   discussion about specific pieces of evidence, right, but here

3   is the additional guidance that I want to provide about this

4   ruling about this post-use conduct:

5        One, obviously -- I mean, it has to be appropriate for the

6   Plaintiffs to establish that it is still on the market, right?

7   I mean, everybody kind of knows that, I think.  But it has to

8   be appropriate for the Plaintiffs to be able to say this is

9   still being sold.  It has to be appropriate for the Plaintiffs

10  to establish that there still is no warning.  Am I right that

11  there is still no warning?

12        **MS. WAGSTAFF:**  Correct.

13        **THE COURT:**  Okay.  And still no instructions about

14  protective equipment.

15        And I also think it would be appropriate for the

16  Plaintiffs to say -- because this is consistent with the law on

17  punitive damages -- you need to put a -- you know, you need to

18  put a stop to this.  The jury needs to put a stop to this.  I

19  think that is all fair game.  So I wanted to make that clear.

20        And then, lastly -- and perhaps this is the more

21  complicated part -- you know, conduct that occurred post-2012

22  that sheds light on what was happening pre-2012 should

23  generally be admissible, potentially subject to a limiting

24  instruction if Monsanto wants it.

25        Now, there may be other reasons -- even if it is relevant,

**PROCEEDINGS**

1    right?  Even if post-2012 conduct sheds light on what was

2    happening pre-2012, there may be other reasons to exclude it.

3    There may be 403 reasons to exclude it.  Maybe Jess Rowland is

4    an example of that.  I don't know, but the ruling on post-use

5    conduct, the pretrial ruling on post-use conduct does not

6    itself answer the question whether a piece of evidence like

7    that is inadmissible.

8        Does that -- does that make sense -- does that make sense?

9    I mean, I'm not saying do you agree with it.  I'm just saying

10   do you understand what I'm saying?

11           **MS. WAGSTAFF:**  I understand, Your Honor.

12           **MR. STEKLOFF:**  I understand.  I think "sheds light"

13   will become a very disputed term.

14           **THE COURT:**  Yes.

15           **MR. STEKLOFF:**  But I understand what you are saying.

16           **THE COURT:**  Yeah, and it seems to me that we are going

17   to need to, you know, kind of tee that up; and we should tee it

18   up sooner rather than later.

19       So everybody should go back and ponder that and think

20   about that and try to identify the pieces of evidence that you

21   think there will be a dispute about.

22           **MS. WAGSTAFF:**  One more thing.  I was just listening

23   to Mr. Stekloff talk about how it is extremely prejudicial to

24   not be able to tell the whole story because of their motion.

25   Obviously Plaintiffs feel the same way.  So I would invite

PROCEEDINGS

1  Monsanto to withdraw that motion in limine if they would like.

2          **MR. STEKLOFF:**  I decline the polite offer.

3          **THE COURT:**  So, I mean, on this e-mail I think -- you

4  know, the challenge is going to be, you know -- I mean, it is

5  fine to redact stuff, but it has to -- it still has to be

6  understandable.

7          **MS. WAGSTAFF:**  So, Your Honor, the way we offered to

8  redact -- if you look at the cascade, the way that it is

9  printed, the bottom of the cascade, the first page starts with

10  the William Heydens.  Do you see that?

11          **THE COURT:**  Yeah.

12          **MS. WAGSTAFF:**  So we would move that to the top and

13  sort of make that the first portion of the e-mail.  We would

14  leave Donna there so that you could tell who he was writing to.

15  And we offered to redact the first three paragraphs and the

16  fifth paragraph, and just leave it to where the paragraph for

17  the overall plausibility paper, if you look at that, it does

18  make sense as a stand-alone paragraph.

19      And then we would just leave Any other thoughts welcome,

20  Bill.  And then we would redact the end portion of the e-mail.

21      If you read that alone, it makes sense and it gets in the

22  evidence we want to get in.

23          **THE COURT:**  Why don't we -- give me a second to kind

24  of read it with an eye towards that, and let me make sure I

25  understand what you are saying.

1    It would just be the e-mail from Heydens to Donna Farmer

2    and Koch and others on Thursday, February 19 at 7:53 a.m.?

3         **MS. WAGSTAFF:**  Correct.

4         **THE COURT:**  And you would redact the first three

5    paragraphs entirely?

6         **MS. WAGSTAFF:**  Correct.  Uh-huh.

7         **THE COURT:**  And then you would redact the fifth

8    paragraph entirely?

9         **MS. WAGSTAFF:**  Correct.

10        **THE COURT:**  Okay.

11       (A brief pause was had.)

12        **THE COURT:**  Another possibility I suppose -- I mean,

13   I'm not sure this would work; but another possibility could be

14   to just have the part that starts, A less expensive/more

15   palatable approach might be to involve, and go down to the end

16   of that paragraph.

17        **MS. WAGSTAFF:**  Well, I think we need the sentence --

18   if we went full bore involving experts from all the major

19   areas, epitox, genotox, mechanism, match and exposure -- not

20   sure -- we need that sentence, I think, for context in the

21   rest.

22       The first sentence is probably less important, but it is

23   also not very harmful -- I mean, it is just sort of a random

24   sentence there.

25        **MS. RUBENSTEIN:**  Your Honor, I agree with you that the

1  better approach is to start it with that sentence.  I don't

2  understand why Plaintiffs would need in the first two

3  sentences.  They are clearly talking about publications in

4  2015.

5       There is no reason why the jury needs to hear about --

6  about those, but I would suggest if you are going to let in the

7  sentence, A less expensive/more palatable approach, I think we

8  would ask that the parenthetical be redacted because it

9  expressly references IARC.

10       **THE COURT:**  Because then we are getting into the whole

11  issue of Monsanto just preparing to attack IARC or criticize

12  IARC.

13       **MS. RUBENSTEIN:**  That's right.  And in your -- in

14  PTO 114 you ruled that Plaintiffs would not be allowed to get

15  into that.

16       **THE COURT:**  Yeah, and I was thinking about, you know,

17  this issue and wondering how it would apply to the attacks on

18  IARC.  And I think that, you know, that, it seems is still

19  excluded by the post-use conduct ruling because that doesn't

20  shed light on any disputed factual issue from pre-2012.

21       **MS. WAGSTAFF:**  And, Your Honor, we would be fine with

22  taking out that parenthetical; but I do think that Your Honor

23  was recognizing earlier that we do need to give some context to

24  the jury on what is going on here with this e-mail.  I think

25  that, like I said, the second sentence where it is discussing

1    what is going on needs to be there for context.

2         **THE COURT:**  Well, I think the -- the reason why this

3    second -- that sentence is so good for you is that it feeds

4    into your argument that, you know, Monsanto has never --

5         **MS. WAGSTAFF:**  That you need more than epi?

6         **THE COURT:**  Well, that's one -- that's one.

7         And two is that Monsanto has never -- yeah, I mean, I

8    think I was going to say the same thing but in a longer way,

9    which is that it -- Monsanto has never really endeavored to do

10   the full bore review of all of the evidence.

11        **MS. RUBENSTEIN:**  Well, whether that is true or not in

12   2015 just isn't relevant.

13        **THE COURT:**  Right.

14        **MS. RUBENSTEIN:**  And because of that it is extremely

15   prejudicial.

16        **THE COURT:**  Right.  I think that's right.

17        So I think that you can -- I'm -- you know, let me just

18   read it one more time to make sure I'm not missing anything;

19   but I think even if you redact those first two sentences, you

20   can still adequately make your point with that -- with that

21   language.

22        And, you know, it is appropriate to say, There is stuff

23   here that is not -- there is stuff in this e-mail that is

24   redacted because it is not relevant to what you are

25   considering, but here, what this shows is that they ghostwrote,

1    you know, the Williams paper.

2        (A brief pause was had.)

3        **MS. WAGSTAFF:**  Your Honor, I would view that second

4    sentence also as a party admission to something that is

5    completely in dispute in this litigation.  They are exactly the

6    conversation that you and I just had.  They are -- Monsanto is

7    disputing that those are major areas of science that need to be

8    explored.  This is a party admission that they are major areas

9    that --

10       **THE COURT:**  I don't agree with that because they are

11   preparing to go after IARC.  And just the fact that they are

12   going after IARC on IARC's conclusions about genotox and animal

13   studies -- yeah, genotox and animal studies doesn't mean they

14   agree that those topics are, you know, important to explore.

15   It just means they are going after IARC on those.  Hold on.

16   Let me just read --

17       (A brief pause was had.)

18       **THE COURT:**  Yeah, I think under 403 it makes more

19   sense to redact those first two sentences, and I think that

20   that will still allow you to make your point.  And those names

21   are going to be unredacted; is that correct?

22       **MS. WAGSTAFF:**  Yes, Your Honor.  We sent you a

23   proposed order --

24       **THE COURT:**  Yeah.

25       **MS. WAGSTAFF:**  -- yesterday.

PROCEEDINGS

```
 1            THE COURT:  I'm making some revisions to it, and I
 2   will file it today.
 3            MS. WAGSTAFF:  One set is entered.  These will be
 4   unredacted.
 5            THE COURT:  Okay.  And who are these names again?
 6            MS. WAGSTAFF:  I don't even remember.  Do you have an
 7   unredacted copy?
 8            MS. RUBENSTEIN:  I do.
 9        And, Your Honor, I can hand you an unredacted copy.
10            THE COURT:  That's okay.
11            MS. WAGSTAFF:  Grime is the first one, and Kirkland is
12   the second one.
13            THE COURT:  Okay.  So that will be the ruling as to
14   this document, is that it can come in in the way that we just
15   described, which is -- beginning with The less expensive/more
16   palatable approach, and ending at the end of that paragraph.
17        I understand that it is slightly more understandable if
18   you included the previous couple of sentences, but I think
19   under 403 under the circumstances, we will keep those out.
20            MS. RUBENSTEIN:  And, Your Honor, just to be totally
21   clear, also we can redact the parenthetical that refers to
22   IARC?
23            THE COURT:  Yeah.
24            MS. RUBENSTEIN:  Okay.  And as to -- I think
25   Ms. Wagstaff already agreed to this, but as to the e-mail
```

1   header, we can redact the subject that says IARC planning?

2        **THE COURT:**  I think that's appropriate.

3        **MS. RUBENSTEIN:**  Okay.  And, you know, also as to the

4   date, I don't know why we need to say that it is 2015, but --

5        **THE COURT:**  Well, I think the date should stay in

6   there.

7        **MS. RUBENSTEIN:**  Okay.

8        **THE COURT:**  Because it speaks to -- I mean, I'm not

9   sure why you would want it out frankly, because to the extent

10  you are contesting that this was really ghostwritten in a way

11  that Heydens describes, you know, I assume that part of your

12  effort might be to say he was writing about something that

13  happened, what, five years ago or something -- oh, 15 years

14  ago.

15       So that will be the ruling with respect to this document.

16  That's my clarification with respect to post-use conduct.  And

17  you-all should start identifying areas -- oh, and Monsanto

18  should propose a limiting instruction for evidence that fits

19  this category and file that -- why don't you file that by 5:00

20  today.  You know, if the jury comes back right now and you have

21  to start with opening statements, I can push that deadline

22  back; but why don't you file that by 5:00 today, and that way

23  the Plaintiffs can look at it and respond if necessary.

24       **MS. RUBENSTEIN:**  We will do that, Your Honor.

25       And with respect to the -- yeah.  And with respect to the

 1   documents that are in Dr. Heydens' testimony that I was

 2   referring to earlier, the contemporaneous e-mails that don't

 3   post date 2012, does Your Honor still want to see those or is

 4   this sort of --

 5        **THE COURT:**  No, I think that's okay.  I mean, I think

 6   given the fact that this is something that is in dispute means

 7   that, you know, this subsequent characterization of what

 8   happened is admissible regardless.

 9        **MS. RUBENSTEIN:**  Thanks, Your Honor.

10        **MR. STEKLOFF:**  Your Honor, can I raise one other

11   issue?

12        **THE COURT:**  Yes.

13        **MR. STEKLOFF:**  As you will recall, Ms. Wagstaff handed

14   me a titled Monsanto Request For Admissions.  So they were

15   admissions -- RFAs that the Plaintiffs intend on introducing

16   during Phase Two, and I haven't seen the opening slides; but I

17   suspect that the -- some of the opening slides contain language

18   as characterized in this piece of paper that I received.

19        **THE COURT:**  Yes.

20        **MR. STEKLOFF:**  So my understanding of how RFAs should

21   be read into evidence is that the actual Request For Admission

22   in terms of exactly what was requested should be read, and then

23   you strike the -- sort of we have all these objections, and

24   then it says, Subject to these objections, and then there is an

25   answer.  And in this case there are admissions.  Then the

1    actual admission plus any additional language is what should be

2    read to the jury.

3        So my concern about what I have been handed is that it

4    re-characterizes the RFAs themselves and then just says,

5    Monsanto admits -- which is not what is actually true in the

6    actual RFAs.  You also may recall there was some discovery -- a

7    discovery dispute about some of this with Your Honor.  You

8    ruled that we had to strike some of what was deemed, I think,

9    extraneous language, but some language was allowed to remain.

10            **THE COURT:**  I do recall that.

11            **MR. STEKLOFF:**  So my concern -- it is one thing in

12   closing I think to sort of try to characterize the RFAs with

13   the caveat that what lawyers argue is not evidence, but I think

14   in opening to just say Monsanto admits something without -- I

15   mean, I think they should have to abide by the actual RFAs and

16   the actual language, the actual admission that we gave and/or

17   denial and/or additional language in opening and obviously when

18   it is read to the jury.

19       So that's my concern as sort of a general matter with

20   everything that I was handed.  It doesn't fairly characterize

21   what the actual RFAs reflect and what the discovery was in this

22   case.

23            **THE COURT:**  Okay.

24            **MS. MOORE:**  Your Honor, what we did -- first of all,

25   we didn't re-characterize any of their answers.  But, for

1   example, almost every time they respond to an RFA, they state

2   that they are incorporated by reference, their general

3   objections, as if restated in full.  We don't think that is

4   necessary to put in there.

5          First of all, general objections are improper.

6              **THE COURT:**  I don't think he was saying that was.

7              **MR. STEKLOFF:**  I'm agreeing that that could come out.

8              **MS. MOORE:**  Okay.  Then they say Monsanto denies or

9   Monsanto admits, and then they qualify that admission or denial

10  after that.  And, again, I don't think that's proper for a

11  request for admission.

12             **THE COURT:**  Well, I remember -- as I said, I remember

13  there was a discovery dispute about this.

14             **MS. MOORE:**  Yes.

15             **THE COURT:**  I remember -- I don't remember the details

16  of what I struck and what I didn't strike, but whatever I

17  struck and didn't strike, that's how we are going to proceed at

18  trial.

19         And so -- but I guess I just don't -- you know, I mean, in

20  opening statements lawyers describe the evidence, and they

21  often don't present the whole picture of the evidence; and they

22  describe the evidence that is most favorable to them.

23         So when they say, for example, Monsanto admits that it did

24  not conduct any further long-term carcinogenicity animal

25  studies on glyphosate after 1991, for example, why -- I mean, I

1   don't have your -- the responses to the Requests For Admission,

2   but assuming that you actually did admit that, you know, why

3   isn't it -- it is evidence in the case and, you know, lawyers

4   cherrypick evidence in their opening statements all the time.

5   I mean, you obviously can, you know, do what you want with

6   that.

7          MR. STEKLOFF:  And I haven't seen the slides.  So if

8   they are sort of --

9          THE COURT:  As I just read it to you.  So there are

10  like four like this, which, you know, just say Monsanto

11  admission, Monsanto admits that it did not conduct any further

12  long-term carcinogenicity animal studies on glyphosate after

13  1991.

14         MR. STEKLOFF:  And --

15         THE COURT:  There are four like that.

16         MR. STEKLOFF:  And as long as we understand exactly

17  how the RFAs will be read in -- and now having seen that they

18  are not trying to claim that they are exactly quoting an RFA or

19  something like that, I'm comfortable with that.  But I just

20  wanted to raise the issue because there -- so there is no

21  misunderstanding of they don't get to just get up and say that,

22  that was not what actually occurred in the discovery that took

23  place that Your Honor in part has weighed in on.

24         THE COURT:  That's right.

25         MS. MOORE:  I mean, on that one they actually answered

PROCEEDINGS

1  it notwithstanding Monsanto's objections, Monsanto admits it

2  has not conducted a long-term animal carcinogenicity study on

3  any formulated pesticide products.

4        **THE COURT:**  And the answer?

5        **MS. MOORE:**  Then they say, Monsanto otherwise denies

6  this request, you know.

7        **THE COURT:**  Uh-huh.  So, yeah, so you should all

8  prepare the -- you know, the RFAs and the responses for me to

9  read them.

10       **MS. MOORE:**  Okay.

11       **THE COURT:**  Or if you-all -- is it preferable that

12  you-all read them, or that I read them?  I mean, either way is

13  fine with me.

14       **MS. MOORE:**  We can come up with a little -- we will

15  make a list, and we will confer with them.

16       **THE COURT:**  Okay.

17       **MS. MOORE:**  Thank you, Your Honor.

18       **THE COURT:**  All right.

19       **THE CLERK:**  Court is in recess.

20              (Recess taken at 9:15 a.m.)

21            (Proceedings resumed at 2:08 p.m.)

22       (Proceedings were heard out of the presence of the jury:)

23       **THE COURT:**  Okay.  I've been told the jury has reached

24  a verdict.

25       Do you want to go ahead and bring the jury in?

1     (Proceedings were heard in the presence of the jury:)

2         **THE COURT:**  Okay.  Welcome back.

3     Ms. Cunningham, I understand you are the presiding juror,

4  and I understand that you've reached a verdict; is that

5  correct?

6         **JUROR CUNNINGHAM:**  Correct.

7         **THE COURT:**  Okay.  Why don't you go ahead and hand

8  that to Kristen, and she'll hand it up to me.

9             (Pause in proceedings.)

10        **THE COURT:**  Okay.  I will read the verdict.

11                        **VERDICT**

12        **THE COURT:**  Question 1:  Did Mr. Hardeman prove by a

13  preponderance of the evidence that his exposure to Roundup was

14  a substantial factor in causing his non-Hodgkin's lymphoma?

15     Answer:  Yes.

16     Okay.  So would anybody like the jury polled on that

17  question?

18        **MR. STEKLOFF:**  Yes, Your Honor.

19        **THE COURT:**  Okay.  So I will go through and ask each

20  one of you whether I read that correctly and whether that

21  accurately reflects your verdict in this case.

22     So I'll start with Juror Number 1.  Ms. Cunningham, does

23  that accurately reflect your verdict in this case?

24        **JUROR CUNNINGHAM:**  Yes, it does.

25        **THE COURT:**  Okay.  Juror Number 2, Ms. Visweswaran?

PROCEEDINGS

```
 1    Sorry if I got that wrong.

 2              JUROR VISWESWARAN:  Yes, it does.

 3              THE COURT:  Juror Number 3, Ms. Lee?

 4              JUROR LEE:  Yes.

 5              THE COURT:  Okay.  Juror Number 4, Mr. Rieder?

 6              JUROR RIEDER:  Yes, it does.

 7              THE COURT:  Juror Number 5, Ms. Alford?

 8              JUROR ALFORD:  Yes.

 9              THE COURT:  And Juror Number 6, Ms. Brown?

10              JUROR BROWN:  Yes.

11              THE COURT:  Okay.  Thank you very much.  Very much

12    appreciate the obvious attention and care that you gave to this

13    matter.

14        We will now move on to Phase II of the trial, not until

15    tomorrow.  You're going to be free to go for today.

16        Phase II will be the final phase in the trial, and the

17    issues that you will be considering are whether Monsanto is

18    legally liable for the harm caused to Mr. Hardeman and, if so,

19    what the damages should be.  So those are the issues that you

20    will begin considering tomorrow.

21        We are, more or less, on the schedule that I gave you at

22    the beginning of the case.  We'll talk a little bit more about

23    scheduling, you know, in the coming days.

24        But for now, let me just please remind you to be even more

25    careful than you ever have been before not to expose yourself
```

 1  to any outside information, any media reports, any reports on

 2  the radio or on TV about the case, not to conduct any of your

 3  own research.  Keep your head down, keep your ears closed, and

 4  you'll be back tomorrow to consider the remainder of the

 5  evidence in the case.

 6      Thank you very much.

 7      (Proceedings were heard out of the presence of the jury:)

 8      **THE COURT:**  Okay.  So we'll begin at 8:30 sharp

 9  tomorrow with opening statements.  And is there anything that

10  needs to be discussed right now before we break for the day?

11      **MS. WAGSTAFF:**  Yes, Your Honor.  This morning while I

12  was waiting for the verdict, I changed my opening slides quite

13  a bit.  I don't think there's anything that's too controversial

14  in there, but when you see a different version, I didn't want

15  you to be surprised.  So I can e-mail it to you later or go up

16  and print out a copy.

17      **THE COURT:**  Yes, I would like to -- or if you can

18  flag --

19      **MS. WAGSTAFF:**  I changed them pretty significantly.

20      **THE COURT:**  Yes, I can flip through them.  It's not a

21  big deal.

22      **MS. WAGSTAFF:**  E-mail is okay?

23      **THE COURT:**  E-mail is fine.

24      **MS. WAGSTAFF:**  Okay.

25      **THE COURT:**  Okay.  Very good.  Thank you.  We'll see

PROCEEDINGS

1    you tomorrow.

2            **MS. MOORE:**  Thank you, Your Honor.

3            (Proceedings adjourned at 2:13 p.m.)

4                    ---oOo---

5

6

7            **CERTIFICATE OF REPORTERS**

8        I certify that the foregoing is a correct transcript

9    from the record of proceedings in the above-entitled matter.

10

11   DATE:   Tuesday, March 19, 2019

12

13

14

15        _____

16        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              U.S. Court Reporter

17

18

19        _____

20           Marla F. Knox, RPR, CRR
              U.S. Court Reporter

21

22

23

24

25