**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Hardeman v. Monsanto Co.,* 3:16-cv-0525-VC | **MONSANTO'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR DIRECTED VERDICT** |

1

## **TABLE OF CONTENTS**

2

**Page**

3
TABLE OF AUTHORITIES ..................................................................................................ii

4
INTRODUCTION ...............................................................................................................1

5
LEGAL STANDARD..........................................................................................................2

6
ARGUMENT ......................................................................................................................3

7
I.      Plaintiff has failed to articulate or establish a valid design defect claim. ...............3

8
II.     The Court should enter judgment as a matter of law on Plaintiff's failure to warn
        claims. ...................................................................................................................6

9

10
        A.      Plaintiff presented no competent evidence regarding the content and
                timing of any warning that allegedly should have been added to the
                Roundup lable. ...........................................................................................6

11

12
        B.      Monsanto is entitled to judgment as a matter of law on Plaintiff's
                negligent failure to warn claim because Plaintiff presented no evidence
                about the reasonably prudent manufacturer. ..............................................10

13

14
III.    The Court should grant judgment as a matter of law on several categories of
        claimed damages. ..................................................................................................11

15
        A.      Plaintiff still has not established a right to seek punitive damages...........11

16
        B.      Plaintiff has presented insufficient evidence to establish future medical
                expenses. ...................................................................................................12

17

18
        C.      Plaintiff has presented inadequate evidence to establish past lost earnings..............13

19
IV.     Monsanto is entitled to judgment as a matter of law for all of the reasons
        previously asserted in this case. ............................................................................14

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Owens-Corning Fiberglas Corp.*,
    810 P.2d 549 (Cal. 1991) ..................................................................................... 6, 10

*Browne v. McDonnell Douglas Corp.*,
    698 F.2d 370 (9th Cir. 1982).................................................................................. 4

*Campbell v. Gen. Motors Corp.*,
    649 P.2d 225 (Cal. 1982) ....................................................................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
    43 F.3d 1311 (9th Cir. 1995).................................................................................. 8

*Dumas v. Stocker*,
    262 Cal. Rptr. 311 (Ct. App. 1989)........................................................................ 14

*Egan v. Mutual of Omaha Ins. Co.*,
    24 Cal. 3d 809 (1979) ............................................................................................ 11

*Ehrhardt v. Brunswick, Inc.*,
    186 Cal. App. 3d 734 (Ct. App. 1986) ................................................................... 12

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
    69 P.3d 965 (Cal. 2003) ......................................................................................... 13

*Henderson v. Harnischfeger Corp.*,
    527 P.2d 353 (Cal. 1974) ....................................................................................... 5

*Hernandez ex rel. Telles-Hernandez v. United States*,
    665 F. Supp. 2d 1064 (N.D. Cal. 2009) ................................................................. 10

*In re Human Tissue Prod. Liab. Litig.*,
    582 F. Supp. 2d 644 (D.N.J. 2008) ........................................................................ 9

*J.C. by & through Michelle C. v. Pfizer, Inc.*,
    814 S.E.2d 234 (W. Va. 2018) ............................................................................... 8, 10

*J.P. v. Carlsbad Unified Sch. Dist.*,
    181 Cal. Rptr. 3d 286 (Ct. App. 2014) ................................................................... 13

*Kamerik v. Depuy Orthopaedics, Inc.*,
    No. CV 11-06920 MMM, 2013 WL 12322041 (C.D. Cal. Jan. 28, 2013) ............ 10

*Kennedy v. United States*,
    No. CV08-02988GAFOPX, 2009 WL 3348404 (C.D. Cal. Oct. 13, 2009), *as amended* (Jan. 18, 2011) ......................................................................................... 13

*Krumpelbeck v. Breg, Inc.*,
   759 F. Supp. 2d 958 (S.D. Ohio. 2010) ................................................................ 8

*Leto v. Amrex Chem. Co.*,
   926 N.Y.S.2d 697 (2011) ...................................................................................... 13

*Mariscal v. Graco, Inc.*,
   52 F. Supp. 3d 973 (N.D. Cal. 2014) ..................................................................... 6

*McCabe v. American Honda Motor Co.*,
   123 Cal. Rptr. 2d 303 (Ct. App. 2002) ................................................................. 5

*McSherry v. City of Long Beach*,
   423 F.3d 1015 (9th Cir. 2005), *as amended* (Oct. 27, 2005) ................................ 2

*Miller v. Los Angeles Cty. Flood Control Dist.*,
   505 P.2d 193 (Cal. 1973) ....................................................................................... 9

*Mock v. Michigan Millers Mut. Ins. Co.*,
   4 Cal. App. 4th 306 (Ct. App. 1992) ................................................................... 12

*Monroe v. Zimmer U.S. Inc.*,
   766 F. Supp. 2d 1012 (E.D. Cal. 2011) ......................................................... *passim*

*Pooshs v. Philip Morris USA, Inc.*,
   904 F. Supp. 2d 1009 (N.D. Cal. 2012) ...................................................... 1, 3, 4, 5

*Potter v. Firestone Tire & Rubber Co.*,
   863 P.2d 795 (Cal. 1993) ..................................................................................... 13

*Roby v. McKesson Corp.*,
   219 P.3d 749 (Cal. 2009), *as modified* (Feb. 10, 2010) ...................................... 11

*Soule v. Gen. Motors Corp.*,
   882 P.2d 298 (Cal. 1994) .................................................................................... 3, 5

*Todd v. Stryker Corp.*,
   No. 2:09-CV-01509-JAM, 2012 WL 2922727 (E.D. Cal. May 1, 2012) .................... 8

*Waterhouse v. R.J. Reynolds Tobacco Co.*,
   368 F. Supp. 2d 432 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006) ............ 8

*Webb v. Special Elec. Co.*,
   370 P.3d 1022 (Cal. 2016) .................................................................................. 1, 4

*White v. Ultramar, Inc.*,
   981 P.2d 944 (Cal. 1999) ..................................................................................... 11

*Whiteley v. Philip Morris Inc.*,
   11 Cal. Rptr. 3d 807 (Ct. App. 2004), *as modified on denial of reh'g* (Apr. 29,
   2004) ................................................................................................................. 4, 5

*Williamson v. Prida*,
    89 Cal. Rptr. 2d 868 (Ct. App. 1999), *as modified* (Nov. 18, 1999)............................................ 10

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................................................... 14

**Statutes**

Cal. Civ. Code § 3294(b) ................................................................................................................ 11

Cal. Civ. Code § 3294(c)(1)............................................................................................................ 12

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136v(b) ....................................... 14

**Other Authorities**

CACI No. 1205 ............................................................................................................................... 6

CACI No. 1222 ......................................................................................................................... 6, 10

CACI No. 3903C ............................................................................................................................ 13

Fed. R. Civ. P. 50(a)(1)................................................................................................................... 2

Fed. R. Civ. P. 50(a)(2)................................................................................................................... 2

Federal Rules of Civil Procedure, Rules and Commentary Rule 50.................................................... 3

Restatement (Third) of Torts: Prod. Liab. § 5, com. c ...................................................................... 4

MONSANTO'S RULE 50(a) MOTION FOR JUDGMENT AS A
MATTER OF LAW AND FOR DIRECTED VERDICT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Monsanto respectfully submits this motion for judgment as a matter of law. Beyond preserving all of its arguments for relief on all of Plaintiff's claims, Monsanto highlights the following legal and factual deficiencies in Plaintiff's efforts to establish liability in Phase 2 of this trial:

- **Design Defect:** Pursuant to PTO 116 (ECF No. 3051), Plaintiff has abandoned all potential design defect claims but one—that Roundup is defectively designed under the consumer expectations test because it should never have been sold to residential users. As a factual matter, this theory must fail because *no witness*—and certainly no expert—has testified that Roundup is categorically unsafe for residential users. Indeed, none of Plaintiff's experts (including the ones he elected not to call at this trial) endorse this extraordinary position. Further, despite repeated invitations from the Court, Plaintiff has failed to provide *any legal authority* supporting that theory of liability. As Monsanto has explained, the consumer expectations test does not apply in cases like this one, involving complex and evolving science rather than (for example) an obvious defect such as an airbag that fails to deploy. But even beyond that threshold failing, if Plaintiff's design claim stems from the presence of glyphosate in Roundup, it cannot proceed under California law because raw materials cannot be defectively designed. *Webb v. Special Elec. Co.*, 370 P.3d 1022, 1032 (Cal. 2016). And if Plaintiff's claim is instead that something about the combination of glyphosate and surfactants renders Roundup defective, the claim cannot go to the jury because Plaintiff has not provided any expert testimony establishing that defect, or that any such defect rendered the product unfit for residential use. *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025 (N.D. Cal. 2012). Nor has Plaintiff proven that the design of Roundup, as opposed to his mere use of Roundup, was a substantial factor in causing his injury. *Id.*

- **Failure To Warn:** Plaintiff has failed to provide any proof regarding *what warning* Monsanto should have included in the Roundup label, and *when* that warning was justified by the available scientific evidence. In a case like this one, involving complex and evolving science, a plaintiff is required to present expert testimony about the timing and content of a warning. *See, e.g., Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1033 (E.D. Cal. 2011). Plaintiff

has failed to provide such testimony—or any testimony at all—on these essential elements. Moreover, the available expert testimony *refutes* their claim:  Dr. Portier, Plaintiff's retained expert, testified that he did *not* believe glyphosate was carcinogenic prior to 2013.  Portier Phase 2 Tr. 817:8–818:9; 819:6–8:20:16 ("Q. In that period, there was no time in that period where you came to the judgment that glyphosate was a cause of cancer, true? A. That is true."). The law is clear that a plaintiff does not state a valid cause of action by asserting that he would have heeded a cancer warning in the label (notwithstanding his limited review of the label) and then presenting lawyer argument about the science.

- **Punitive Damages:**  Plaintiff failed to present any evidence or elicit any testimony establishing which Monsanto employees he considers to be "officers, directors, or managing agents" whose conduct could subject the company to punitive damages.  Nor has he established that any such employee acted with malice, as required by law.  Accordingly, Plaintiff is not entitled to punitive damages.

- **Compensatory Damages:**  Plaintiff presented no evidence, let alone expert testimony, about the cost of future medical expenses he may incur.  Likewise, he presented no evidence regarding his past lost earnings.  Accordingly, there is no basis for the jury to award these types of damages.

## LEGAL STANDARD

A district court may grant a motion for judgment as a matter of law under Rule 50(a) before submitting a case to the jury if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  Thus, the standard for granting judgment as a matter of law is "identical" to that for granting a motion for summary judgment.  *McSherry v. City of Long Beach*, 423 F.3d 1015, 1020 (9th Cir. 2005), *as amended* (Oct. 27, 2005).  Motions "for judgment as a matter of law may be made at any time before submission of the case to the jury." Fed. R. Civ. P. 50(a)(2).  A court need not resolve an entire case in ruling on a Rule 50(a) motion; rather, it may grant a judgment as a matter of law on discrete issues as it sees fit. Fed. R. Civ. Proc., Rules and Commentary Rule 50 ("The court's ruling eliminates that issue from the trial, but the trial then continues as to the remaining unresolved issues.")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.      Plaintiff has failed to articulate or establish a valid design defect claim.**

Pursuant to PTO 116 (ECF No. 3051), Plaintiff's only design defect theory is that Roundup is unsafe for residential use under the consumer expectations test.[1]  But Plaintiff has presented *no testimony*, expert or otherwise, that Roundup should not be sold to residential users.  Not even his retained experts—including those he did not call in Phase 2 (such as Drs. Benbrook and Sawyer)—have staked out such an extreme and untenable position.  For that reason alone, Plaintiff's design defect claim must fail.  Lawyer argument about hypothetical causes of action is no substitute for actual proof at trial.

Moreover, this claim cannot survive as a legal matter for several independent reasons, beyond the inapplicability of the consumer expectations test. *See* Def.'s Memo Regarding Inapplicability of Consumer Expectations Test (ECF No. 2935).  A plaintiff raising a design defect claim cannot prevail simply by establishing that he used a product and that the product caused his injury.  Instead, the law requires a plaintiff to prove that there was actually a defect in the product's design, and that the *defect* caused his or her injury.  As the court explained in *Pooshs*, "regardless of whether the risk-benefit test or the consumer expectations test is being employed, a plaintiff must prove that there *was* a design defect, *which actually caused the injury*."  *Pooshs*, 904 F. Supp. 2d at 1025 (emphasis added); *see also Soule v. Gen. Motors Corp.*, 882 P.2d 298, 308 (Cal. 1994) (explaining that the consumer expectation test only allows a finding of defect "*if* the failure *resulted* from the product's design." (emphasis added)).

Plaintiff has not satisfied either of these requirements.  First, Plaintiff has not identified any aspect of Roundup's *design* that makes it defective.  Plaintiff cannot argue that the use of glyphosate in Roundup is a design defect, because under California law, raw materials like glyphosate cannot be

---

[1] Plaintiff has abandoned any design defect claim predicated on Monsanto's failure to implement other theoretical designs of Roundup—such as pure glyphosate or glyphosate combined with other surfactants.  *See* PTO 116 (ECF No. 3051) at 2 ("This argument seems more consistent with the risk-benefit theory.  The Court assumes that, if the jury is only given the consumer expectations instruction, Hardeman's only design defect theory will be that Roundup is simply unsafe for residential use.").  Plaintiff never advised the Court of any contrary view.  *See id.*

1    defectively designed.  *Webb*, 370 P.3d at 1032 ("[A] basic raw material such as sand, gravel, or

2    kerosene cannot be defectively designed.") (quoting Restatement (Third) of Torts: Prod. Liab. § 5,

3    com. c).  Nor can Plaintiff argue that the combination of glyphosate with surfactants renders Roundup

4    defective, because he has failed to provide the requisite expert testimony supporting this argument,

5    let alone any testimony that this alleged defect should have precluded Roundup from being sold to

6    residential customers.  *See Pooshs*, 904 F. Supp. 2d at 1025 (explaining that a "plaintiff must prove

7    that there *was* a design defect, which actually caused the injury. . . . through expert testimony," and

8    granting summary judgment where plaintiff failed to provide expert testimony about cigarette design

9    (citations omitted)); *Whiteley v. Philip Morris Inc.*, 11 Cal. Rptr. 3d 807, 863 (Ct. App. 2004), *as*

10   *modified on denial of reh'g* (Apr. 29, 2004) ("That cigarette smoking generally has a 'dose-response

11   relationship' with lung cancer risk, does not answer the question whether the design defects identified

12   in this case were more likely than not a 'substantial factor' contributing to Whiteley's developing the

13   disease. That gap must be filled by expert testimony, not jury speculation.").  Indeed, Plaintiff did not

14   call *any* expert qualified to discuss Roundup's design at trial.  *See Pooshs*, 904 F. Supp. 2d at 1017–

15   20 (epidemiologist with expertise in tobacco products was not qualified to testify regarding cigarette

16   design and stating "his test testimony would not assist the trier of fact in understanding or determining

17   whether the design of defendants' cigarettes was in fact defective"); *id.* at 1020–23 (chemist with

18   extensive experience in tobacco industry could not testify about cigarette design).[2]

19        Second, Plaintiff has failed to prove that any defect in Roundup's design caused his injury.  A

20   "design defect does not become an issue for the jury in a strict liability action unless causation first is

21   established."  *Browne v. McDonnell Douglas Corp.*, 698 F.2d 370, 371 (9th Cir. 1982) (affirming

22   summary judgment in favor of defendants because "a reasonable jury could not find by a

23   preponderance of the evidence that the [airplane's] design was a substantial factor in preventing the

24

25   _____

26   [2] Dr. Weisenburger's discussion, in Phase 1, of cell studies allegedly suggesting that formulated
     Roundup is more toxic than pure glyphosate does not come close to satisfying this requirement.  Dr.
     Weisenburger did not offer any conclusions about Roundup's design, nor is he qualified to do so.  *See*

27   *Pooshs*, 904 F. Supp. 2d at 1017–20.  In any event, arguments that formulated Roundup is more
     dangerous than pure glyphosate are the type of alternative-design arguments that Plaintiff has

28   forfeited.  *See* PTO 116 (ECF No. 3051).

crew from seeing the [other airplane] in time to avoid the collision"); *Soule*, 882 P.2d at 308 (consumer expectation test only allows a finding of defect "*if* the failure *resulted* from the product's design.") (emphasis added); *see also Pooshs*, 904 F. Supp. 2d at 1025 ("[R]egardless of whether the risk-benefit test or the consumer expectations test is being employed, a plaintiff must prove that there *was* a design defect, *which actually caused the injury*.") (emphasis added).

As case law makes clear, mere use of an allegedly defective product does not establish legal causation. *Pooshs* is instructive. There, the evidence showed that "plaintiff smoked cigarettes manufactured by the defendants, and that she developed lung cancer." *Pooshs*, 904 F. Supp. 2d at 1025. The court deemed that proof insufficient because there was "no evidence that the design of defendants' cigarettes—as opposed to plaintiff's smoking of cigarettes—was a substantial factor in causing her lung cancer." *Id.* Although cigarettes "may be considered generally harmful in the sense that smoking cigarettes can contribute to the development of various diseases, including lung cancer," the court concluded that plaintiff had not shown "that it was the particular design of defendants' cigarettes that caused her lung cancer." *Id.*; *see also Henderson v. Harnischfeger Corp.*, 527 P.2d 353, 361 (Cal. 1974) ("[A] product defect may or may not exist even though the product fails to be accident proof."); *Whiteley*, 11 Cal. Rptr. 3d at 863 ("Plaintiff's expert witnesses did not attempt to quantify the likelihood that the asserted design defects of cigarettes, as distinguished from smoking cigarettes in general, contributed to Whiteley's developing lung cancer."). Just so here. Plaintiff has provided no evidence that Roundup's *design*, as opposed to his mere *use* of Roundup, was a substantial factor in causing his NHL. Nor has he shown that the "particular design" of Roundup caused his cancer. And ultimately, he has not shown that Roundup, given the complexity of the facts and circumstances surrounding its alleged failure, did not meet ordinary consumer expectations.

Normally, plaintiffs raising design defect claims satisfy this proximate causation requirement by showing that the product had an obvious and unexpected malfunction (e.g. the non-deploying airbag) or by highlighting the absence of some safety device or feature on a product. *See, e.g.*, *McCabe v. American Honda Motor Co.*, 123 Cal. Rptr. 2d 303, 314 (Ct. App. 2002) ("McCabe provided sufficient evidence for a jury to infer that the nondeployment of an air bag, in the context of the high speed, 'head-on' collision described by McCabe, violates minimum safety expectations of

the ordinary consumer."); *Campbell v. Gen. Motors Corp.*, 649 P.2d 225, 233 (Cal. 1982) (finding sufficient evidence that a bus's lack of a handrail was the proximate cause of plaintiff's accident).  In *Mariscal v. Graco*, for example, the plaintiff showed that a sprayer "did not contain a pressure gauge to otherwise indicate that pressure existed in the system," and "[b]elieving that the system was not under pressure, he very slowly loosened the hose, as instructed, and was injured by escaping debris." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 986 (N.D. Cal. 2014).  But here, Plaintiff has not identified an obvious defect in Roundup (given the complexity of the science), and he has forfeited any claim that Roundup could have been designed in some safer way.  *See* PTO 116 (ECF No. 3051).  And the only safety feature he has claimed is missing is a warning of the alleged cancer risk from use of Roundup.  These straightforward facts confirm what the law dictates—that this is a failure to warn case, not a design defect case under the consumer expectations test.  The Court should therefore enter judgment for Monsanto on Plaintiff's design defect claim.

## II.     The Court should enter judgment as a matter of law on Plaintiff's failure to warn claims.

### A.      Plaintiff presented no competent evidence regarding the content and timing of any warning that allegedly should have been added to the Roundup label.

Plaintiff failed to present any evidence—let alone the expert testimony required by law—regarding *what warning* Monsanto should have placed on Roundup's label, and *when* that warning should have been added.  These failures preclude the jury from considering his failure to warn claims.

The law requires Plaintiff to prove both the content and timing of his proposed warning.  In order to prevail on his strict liability claim, Plaintiff must prove that Monsanto "did not adequately warn of *a particular risk* that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge *available at the time of manufacture and distribution*." *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 558 (Cal. 1991) (emphasis added); CACI No. 1205.  Similarly, Plaintiff's negligent failure to warn claim requires proof that Monsanto "knew or should have known about" the risk of NHL "*at the time* the product was distributed." *Monroe*, 766 F. Supp. 2d at 1033 (emphasis added); CACI No. 1222.

But Plaintiff did not present any testimony, let alone expert testimony, regarding the warning that allegedly should have been included on the label.  Plaintiff's testimony that he would have heeded

a warning that Roundup causes cancer is not evidence that the particular warning he discussed was required. No testimony was presented on that latter point. Plaintiff initially indicated that such testimony might be provided by Dr. Charles Benbrook, who was described as testifying about "the sufficiency of the Roundup label during all relevant times." Pl.'s Expert Designations, Nov. 20, 2018, at 5. But when asked by the Court to limit the scope of Dr. Benbrook's testimony, Plaintiff attempted to have him instead focus on company conduct, *see* Pl.'s Resp. to PTO 111 (ECF No. 2992), and then withdrew him altogether when the Court largely rejected that proposal.

Similarly, Plaintiff failed to present any testimony, let alone expert testimony, regarding *when* the undetermined warning should have been added to the label. The available testimony actually confirms that a warning was *not* justified prior to 2012. Plaintiff's own expert, Dr. Portier, testified that he spent much of his thirty-year career looking at causes of cancer, but was unable to conclude as of his retirement in 2013 that glyphosate causes cancer. Portier Phase 2 Tr. 817:8–818:9; 819:6– 8:20:16 ("Q. In that period, there was no time in that period where you came to the judgment that glyphosate was a cause of cancer, true? A. That is true."). Dr. Portier went on to say that "no one really thought [glyphosate] was carcinogenic until after the IARC review," *id.* at 822:22–823:3, which was released in 2015, and that "all of the health agencies that [he knew of that] had looked [in]to the data," prior to his retirement in 2013 and prior to the IARC review in 2015, "had concluded that glyphosate was not carcinogenic." *Id.* at 847:14–848:4; 848:7–12.

Plaintiff's failure to present expert testimony supporting his position is not a mere technicality—it is an essential and well-established requirement in cases like this one involving complex and evolving science. In *Monroe*, the plaintiff asserted that the defendants, the producers of a "pain pump," had a duty to warn that use of the pump carried a risk of developing chondrolysis "based on existing medical literature." 766 F. Supp. 2d at 1033. The plaintiff "cited nine articles published between 1983 and 2006" in support of this assertion, but did not present expert testimony about what these articles cumulatively established at a particular point in time or whether these articles represented the consensus opinion in the scientific and medical literature. *Id.* at 1033. That deficiency required entry of judgment for the defendants. *Id.* at 1033–34; *see also Waterhouse v. R.J. Reynolds Tobacco Co.*, 368 F. Supp. 2d 432, 437 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006)

(granting summary judgment in favor of defendant on failure to warn claim) ("The Court holds that expert testimony is required with respect to the state of common knowledge of smoking hazards during the smoking career of a plaintiff and that that testimony must be rendered by competent experts.  Waterhouse has not met that requirement here.").  Without such testimony, the jury could base a finding for Plaintiff only on impermissible speculation and conjecture.  *See J.C. by & through Michelle C. v. Pfizer, Inc.*, 814 S.E.2d 234, 240–47 (W. Va. 2018) (affirming grant of summary judgment on failure to warn claim where plaintiff failed to offer expert testimony regarding adequacy of Zoloft label, especially considering FDA had "repeatedly approved" the label and "numerous independent organizations ha[d] concluded that the evidence d[id] not support a causal link between Zoloft and birth defects").

Nor is it permissible to allow Plaintiff to submit his claim to the jury based solely on the scientific literature, or counsel's arguments about it.  *Monroe* is again instructive.  In granting summary judgment in defendants' favor, the court explained that the plaintiff could not fill the gaps in his case with his "*counsel's* interpretation of the medical literature," or counsel's independent determination "that the medical literature triggered defendants' alleged duty to . . . warn of [the] risk."  *Monroe*, 766 F. Supp. 2d at 1034; *Todd v. Stryker Corp.*, No. 2:09-CV-01509-JAM, 2012 WL 2922727, at *6 (E.D. Cal. May 1, 2012) (finding "counsel's bald advocacy about the significance of complex medical literature" insufficient to sustain failure to warn claim); *see also Krumpelbeck v. Breg, Inc.,* 759 F. Supp. 2d 958, 968 (S.D. Ohio. 2010) ("[T]his Court is particularly troubled by Plaintiff's failure to provide any expert testimony supporting counsel's bald [and seemingly inaccurate] conclusion that there was relevant literature available prior to March 2005. . . . [T]he Court is not willing to rely on counsel's interpretation of the literature.").  Simply put, "the examination of a scientific study by a cadre of lawyers is not the same as its examination by others trained in the field of science or medicine."  *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)).  Lawyer argument "cannot fill in the gaps" where scientific expertise is required.  *In re Human Tissue Prod. Liab. Litig.*, 582 F. Supp. 2d 644, 667 (D.N.J. 2008).  Here, expert testimony was required to explain what the complex scientific literature showed and to "draw [the] connection between the literature and a duty to warn," *Monroe*, 766 F. Supp. 2d at 1034; *see*

1    *also Miller v. Los Angeles Cty. Flood Control Dist.*, 505 P.2d 193, 202 (Cal. 1973) (holding expert

2    testimony necessary when the issue is "not within the common knowledge of laymen").   That

3    testimony was not offered.

4            Finally, the jury's finding at Phase 1 does not automatically require submission of Plaintiff's

5    warning claims to the jury.   In Phase 1, the jury found that—as of March 2019—there was sufficient

6    evidence to conclude that Roundup was a substantial factor in causing Plaintiff's NHL.   (The Court

7    had previously determined that the evidence of causation was "barely" enough proceed to trial in

8    2018, and that Plaintiff's expert testimony was "shaky."   *See* PTO 45 (ECF No. 1596)).   Nothing

9    about the jury's finding answers the relevant questions in Phase 2:   Was there sufficient evidence as

10   of 2012—before IARC published its monograph, and before many of the studies and meta-analyses

11   presented to the jury were released[3]—to trigger a duty to warn for Monsanto, and if so, what should

12

13   ────────────────────

14   [3] Some examples of post-2012 scientific evidence include:   Jasmine George & Yogeshwer Shukla,
     *Emptying of Intracellular Calcium Pool and Oxidative Stress Imbalance Are Associated with the
     Glyphosate-Induced Proliferation in Human Skin Keratinocytes HaCaT Cells*, ISRN Dermatology
     (2013); Carlos Alvarez-Moya, et al., *Comparison of the in vivo and in vitro genotoxicity of glyphosate
     isopropylamine salt in three different organisms*, Genet Mol Biol (2014); Gabriela Chaufan, et al.,
     *Glyphosate commercial formulation causes cytotoxicity, oxidative effects, and apoptosis on human
     cells: differences with its active ingredient*, Int J Toxicol (2014); Marta Kwaitkowska, et al., *The effect
     of metabolites and impurities of glyphosate on human erythrocytes (in vitro)*, Pesticide Biochemistry
     & Physiology (2014); International Agency for Research on Cancer, *Some Organophosphate
     Insecticides and Herbicides*, Vol. 112, at 312 (2015); Ellen Chang & Elizabeth Delzell, *Systematic
     review and meta-analysis of glyphosate exposure and risk of lymphohematopoietic cancers*, J Environ
     Sci Health (2016); L. Luo, et al., *In vitro cytotoxicity assessment of roundup (glyphosate) in L-02
     hepatocytes*, J Environ Sci Health (2017); Vilena Kasuba, et al., *Effects of low doses of glyphosate on
     DNA damage, cell proliferation and oxidative stress in the HepG2 cell line*, Environ Sci Pollut Res
     (2017); Michelle Townsend, et al., *Evaluation of various glyphosate concentrations on DNA damage
     in human Raji cells and its impact on cytotoxicity*, Regul Toxicol Pharmacol (2017); Marta
     Kwaitkowska, et al., *DNA damage and methylation induced by glyphosate in human peripheral blood
     mononuclear cells (in vitro study)*, Food Chem Toxicol (2017); Ewelina Wozniak, *The mechanism of
     DNA damage induced by Roundup 360 PLUS, glyphosate and AMPA in human peripheral blood
     mononuclear cells - genotoxic risk assessment*, Food Chem Toxicol (2018); Alfredo Santovito, et al.,
     *In vitro evaluation of genomic damage induced by glyphosate on human lymphocytes*, Environ Sci
     Pollut Res (2018); L. K. S. De Almeida, et al., *Moderate levels of glyphosate and its formulations
     vary in their cytotoxicity and genotoxicity in a whole blood model and in human cell lines with
     different estrogen receptor status*, 3Biotech (2018); George Anifandis, et al., *The Effect of Glyphosate
     on Human Sperm Motility and Sperm DNA Fragmentation*, Int. J. Environ. Res. Public Health (2018);
     Zhang L, et al., *Exposure to Glyphosate-Based Herbicides and Risk for Non-Hodgkin Lymphoma: A
     Meta-Analysis and Supporting Evidence*, Mutation Research-Reviews in Mutation Research (2019).

- 9 -

1   the warning have said?   Like the plaintiff in *Monroe*, Plaintiff failed to provide expert evidence

2   answering these questions by connecting the evolving literature with Monsanto's duty to warn at

3   some point between 1986 and 2012.  Monsanto accordingly is entitled to judgment on these claims.

   **B.    Monsanto is entitled to judgment as a matter of law on Plaintiff's negligent**
4          **failure to warn claim because Plaintiff presented no evidence about the**
5          **reasonably prudent manufacturer.**

6          There is an additional, related reason why the Court should find Plaintiff's negligent failure

7   to warn claim inadequate as a matter of law: He presented no evidence about the appropriate standard

8   of care.  To succeed on his negligent failure to warn claim, Plaintiff was required to show that

9   Monsanto "did not warn of a particular risk for reasons which fell below the acceptable standard of

10  care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Anderson*,

11  810 P.2d at 558; *see also* CACI No. 1222.  To meet this element, Plaintiff was required to present

12  evidence "regarding the appropriate standard of care" and whether Monsanto's "alleged failure to

13  warn fell below that standard." *Kamerik v. Depuy Orthopaedics, Inc.*, No. CV 11-06920 MMM

14  (MANX), 2013 WL 12322041, at *6 (C.D. Cal. Jan. 28, 2013).  "Absent such evidence, []he cannot

15  prove negligent failure to warn." *Id.*  Plaintiff failed to present any evidence regarding the appropriate

16  standard of care, much less expert testimony, which is required in cases like this one involving

17  complex questions of science and regulation. *Hernandez ex rel. Telles-Hernandez v. United States*,

18  665 F. Supp. 2d 1064, 1076 (N.D. Cal. 2009) ("[E]xpert testimony is required to 'prove or disprove

19  that the defendant performed in accordance with the standard of care' unless the negligence is obvious

20  to a layperson." (citation omitted)); *Williamson v. Prida*, 89 Cal. Rptr. 2d 868, 872 (Ct. App. 1999),

21  *as modified* (Nov. 18, 1999) *see also J.C.*, 814 S.E.2d at 245–47.  The record is similarly bare of any

22  analysis regarding whether Monsanto's decision not to provide a warning on its Roundup products

23  fell below the relevant standard of care.  Without this expert analysis, Plaintiff's negligent failure to

24  warn claim fails as a matter of law.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.     **The Court should grant judgment as a matter of law on several categories of claimed damages.**

A.     **Plaintiff still has not established a right to seek punitive damages.**

Monsanto maintains its position, set forth in its Motion for Summary Judgment on Non-Causation Grounds (ECF No. 2419), that Plaintiff has not demonstrated a right to seek punitive damages in this case.  Monsanto hereby incorporates by reference all its prior briefing and argument on this subject.  Plaintiff's trial evidence, however, is lacking in several particularly salient ways that necessitate a directed verdict.

First, Plaintiff has failed to present any evidence or elicit any testimony as to managing agent liability.  Under California law, an employer is only liable for the actions of an employee if the employer "authorized or ratified the wrongful conduct" on which the damages claim is based.  Cal. Civ. Code § 3294(b).  For a corporate defendant, the "authorization, [or] ratification . . . must be on the part of an officer, director, or managing agent of the corporation."  *Id.*  The California Supreme Court has defined "managing agent" under section 3294(b) to be an employee with "broad discretion" that "determines corporate policy."  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 822–23 (1979).  He or she must "exercise[] substantial discretionary authority over significant aspects of a corporation's business."  *White v. Ultramar, Inc.*, 981 P.2d 944, 954 (Cal. 1999).  Plaintiff has not presented any evidence on this issue with regard to any of the witnesses whose depositions were played during their case.  Nothing about Hugh Grant's deposition testimony entitles Plaintiff to punitive damages.  As to the other witnesses, at the summary judgment stage Plaintiff identified Donna Farmer, William Heydens, and Daniel Jenkins as employees who acted as "managing agents." But at trial, Plaintiff presented no evidence regarding Daniel Jenkins at all and no evidence that would establish Dr. Farmer and Dr. Heydens are officers or directors of Monsanto, or that they have such broad authority that their actions determine Monsanto's corporate policy.  Plaintiff cannot simply skip this step—punitive damages are not appropriate when a plaintiff has only presented evidence of the "isolated actions of a single supervisor."  *Roby v. McKesson Corp.*, 219 P.3d 749, 767 (Cal. 2009), *as modified* (Feb. 10, 2010).

- 11 -

Second, Plaintiff has failed to present clear and convincing proof that its alleged "managing agents" acted with malice. The California Code defines malice as "conduct which is *intended* by the defendant to cause injury to the plaintiff or *despicable conduct* which is carried on by the defendant with a *willful and conscious disregard of the rights or safety of others*." Cal. Civ. Code § 3294(c)(1) (emphasis added). Despicable conduct, in turn, is conduct that is so "vile, base, contemptible, miserable, wretched or loathsome" that decent, ordinary people would look down upon and despise it. *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 331 (Ct. App. 1992). And to prove "conscious disregard" of the rights or safety of others, the plaintiff must prove that there was "actual knowledge" and "in the face of that knowledge, [the defendant] fail[ed] to take steps it knows will reduce or eliminate the risk of harm." *Ehrhardt v. Brunswick, Inc.*, 186 Cal. App. 3d 734, 742 (Ct. App. 1986). Nothing the jury heard satisfies this extreme evidentiary requirement. The jury did not hear evidence that Dr. Farmer or Dr. Heydens intended to cause harm or consciously disregarded Plaintiff's safety. Rather, the jury heard that these individuals did not believe, and do not believe, that Roundup causes NHL based on the sum of available scientific literature available through 2012. The jury also heard testimony that these and other Monsanto employees use Roundup and have used Roundup for decades. *See, e.g.*, Farmer Phase 2 Tr. at 558:1–16 (twenty-five years of regular residential Roundup use). Moreover, regulatory agencies around the world continue to approve Roundup for residential use *to this day*, even after learning about all of the scientific evidence Plaintiff presented. Where major regulatory agencies have repeatedly looked at the science and concluded Roundup is not carcinogenic, a Monsanto employee cannot be said to have acted "with malice" in promoting that product based on his or her sincerely held beliefs in that product's safety.

### B.   Plaintiff has presented insufficient evidence to establish future medical expenses.

"To recover damages for future medical expenses," Plaintiff must prove:

a. the reasonable value of each of the expected future medical expenses,

b. that the future medical care, services and supplies are reasonably certain to be needed and given in treatment of the injury, and

c. that the condition requiring the future medical care is causally connected to the injuries inflicted by defendant.

*Kennedy v. United States*, No. CV08-02988GAFOPX, 2009 WL 3348404, at *11 (C.D. Cal. Oct. 13, 2009), *as amended* (Jan. 18, 2011).  Plaintiff has failed, at Phase 2, to establish the first requirement. Specifically, Plaintiff presented no evidence regarding the "reasonable *value* of each of [his] expected future medical expenses."  *Id.* (emphasis added).  Typically, plaintiffs submit proof of the "actual costs" of future medical care through "expert testimony in the form of a physician's opinion." Specific Items of Compensatory Damages, Cal. Prac. Guide Pers. Inj. Ch. 3-C (citing *inter alia J.P. v. Carlsbad Unified Sch. Dist.*, 181 Cal. Rptr. 3d 286, 302–04 (Ct. App. 2014)).  But the only witness who addressed future medical monitoring was Dr. Nabhan, and Plaintiff elicited no testimony about the cost of that monitoring.

Nor does anything else in the record inform the jury of the "specific dollar cost" of such monitoring.  *See Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 825 (Cal. 1993).  The stipulation regarding past medical expenses changes nothing on this front.  That stipulation sets forth only a lump sum of past expenses and does not indicate the value of any individual service Plaintiff received, let alone the price of similar services provided in the future.  *See Leto v. Amrex Chem. Co.*, 926 N.Y.S.2d 697, 702 (2011) ("However, there was no evidence regarding how much these tests and medications had already cost plaintiff or would cost in the future.  Contrary to plaintiffs' contention, the stipulated past medical expenses award cannot be projected forward to determine these future costs.  In the absence of competent proof of the cost of plaintiff's anticipated medical costs, he is not entitled to an award for future medical expenses." (citations omitted)).  Accordingly, Plaintiff is not entitled to an award of future medical expenses.  *See Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 69 P.3d 965, 971 (Cal. 2003) ("[D]amages may not be based upon sheer speculation or surmise." (citation omitted)).

### C.     Plaintiff has presented inadequate evidence to establish past lost earnings.

Under California law, a tort plaintiff seeking lost earnings must prove the amount of those earnings.  CACI No. 3903C.  A plaintiff can "testify to the earnings he or she had been drawing" prior to the injury "and to the time lost from work."  Specific Items of Compensatory Damages, Cal. Prac. Guide Pers. Inj. Ch. 3-C.  A plaintiff can also document this information "with payroll

records, such as employer check stubs and payroll books, and similar documentation." *Id.*  Plaintiff

has presented *none* of this evidence, and there is accordingly no basis for him to seek lost earnings.

*Dumas v. Stocker*, 262 Cal. Rptr. 311, 316 (Ct. App. 1989) ("In the compensatory damages arena, it

is well established that plaintiff has the burden to prove the amount to which he is entitled with

reasonable certainty. . . . [T]he rule preclud[es] recovery based on speculative (or, as here,

nonexistent) evidence.").

## IV.    Monsanto is entitled to judgment as a matter of law for all of the reasons previously asserted in this case.

As noted above, Monsanto expressly preserves its other arguments for judgment as a matter

of law, including, but not limited to:

1. The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v(b),

preempts Plaintiff's warning-based claims because those claims impose "requirements" that are "in

addition to or different from" FIFRA's misbranding requirements for misuse labeling.  Specifically,

there is a conflict between California's broad common law requirement that Monsanto warn against

risks based on uses (and misuses) that are "reasonably foreseeable," and FIFRA's more narrow

requirement to provide warnings against risks based on uses that are "in accordance with widespread

and commonly recognized practice."

2.    Plaintiff's warning-based and design-based claims are preempted as a matter of

impossibility preemption because U.S. EPA specifically requires preapproval before Monsanto can

either change Roundup's formulation or change the "precautionary statements" on Roundup's label.

Further, there is now "clear evidence" in the record that EPA would have rejected the formulation or

label changes Plaintiffs seek.  *Wyeth v. Levine*, 555 U.S. 555, 571 (2009).

3.    Plaintiff presented insufficient general causation evidence.

4.    Plaintiff failed to present sufficient reliable evidence that Roundup was a substantial factor

in causing his NHL because he presented just one specific causation expert, Dr. Weisenburger, whose

opinion was based purely on his subjective beliefs, an untested methodology, and inadequate science.

5.    Plaintiff's warning based claims fail because he did not establish that the alleged cancer

risks he asserts Monsanto should have warned about were known or knowable in light of the generally

1    recognized and prevailing best scientific and medical knowledge as of 2012, the last time Plaintiff

2    used Roundup.

3         6.  Plaintiff is not entitled to punitive damages on any of his claims as a matter of California

4    law because he has not proven that any of Monsanto's "officers, directors or managing agents" acted

5    with "malice."  All of Plaintiff's evidence of "bad conduct" involves lower level employees who did

6    not shape Monsanto's corporate policy.  Moreover, punitive damages are not justified because, given

7    the scientific and regulatory consensus about Roundup and glyphosate through 2012, the evidence

8    does not show these employees knew or consciously disregarded any potential safety risk.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2    DATED: March 25, 2019          Respectfully submitted,

3                                /s/  Brian L. Stekloff

4

5                                Brian L. Stekloff (*pro hac vice*)
                                (bstekloff@wilkinsonwalsh.com)

6                                Tamarra Matthews Johnson (*pro hac vice*)
                                (tmatthewsjohnson@wilkinsonwalsh.com)

7                                Rakesh Kilaru (*pro hac vice*)
                                (rkilaru@wilkinsonwalsh.com)

8                                WILKINSON WALSH + ESKOVITZ LLP
                                2001 M St. NW, 10th Floor

9                                Washington, DC 20036

10                              Tel: 202-847-4030
                                Fax: 202-847-4005

11                              Pamela Yates (CA Bar No. 137440)

12                              (Pamela.Yates@arnoldporter.com)
                              ARNOLD & PORTER KAYE SCHOLER

13                              777 South Figueroa St., 44th Floor
                              Los Angeles, CA 90017

14                              Tel: 213-243-4178

15                              Fax: 213-243-4199

16                              Eric G. Lasker (*pro hac vice*)
                              (elasker@hollingsworthllp.com)

17                              HOLLINGSWORTH LLP
                              1350 I St. NW

18                              Washington, DC 20005

19                              Tel: 202-898-5843
                              Fax: 202-682-1639

20                              Michael X. Imbroscio (*pro hac vice*)

21                              (mimbroscio@cov.com)
                              COVINGTON & BURLING LLP

22                              One City Center
                              850 10th St. NW

23                              Washington, DC 20001

24                              Tel: 202-662-6000

25                              Attorneys for Defendant
                              MONSANTO COMPANY

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of March 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff

MONSANTO'S RULE 50(a) MOTION FOR JUDGMENT AS A
MATTER OF LAW AND FOR DIRECTED VERDICT