UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION | MDL No. 2741 |
|---|---|
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| *Hardeman v. Monsanto*, 3:16-cv-00525-VC | **PRETRIAL ORDER NO. 139: FINAL PHASE 2 INSTRUCTIONS** |

The final Phase 2 jury instructions are included below.

**IT IS SO ORDERED.**

Date:   March 26, 2019

Honorable Vince Chhabria
United States District Court

**INSTRUCTION NO. 1:**
**CLAIMS FOR PHASE TWO AND DUTY OF THE JURY**

Now that you have heard all of the evidence for the second (and final) phase, it is my duty to instruct you on the law that applies to that phase. Each of you will receive a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

In the first phase of the trial, you determined that Roundup was a substantial factor in causing Mr. Hardeman's non-Hodgkin's lymphoma (NHL). You are now being asked to determine whether Monsanto is legally responsible for the harm caused to Mr. Hardeman by Roundup, and if so, what damages should be awarded. Specifically, Mr. Hardeman claims that: (1) Roundup's design was defective; (2) Roundup lacked sufficient warning of potential risks; and (3) Monsanto was negligent by not using reasonable care to warn about the risks posed by Roundup. Mr. Hardeman has the burden of proving these claims, which Monsanto denies.

It is your duty to find the facts from all the evidence in this case. You may consider the evidence from both phases in deciding the facts in Phase 2. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies.  You will recall that you took an oath to do so.

You must follow all of these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 2:**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits that are admitted into evidence; and

3.  Any facts to which the lawyers have agreed.

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## INSTRUCTION NO. 3:
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements made by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections made by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to make your decision solely on the evidence received in court.

**INSTRUCTION NO. 4:**
**EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**INSTRUCTION NO. 5:**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## INSTRUCTION NO. 6:
## REQUESTS FOR ADMISSION

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**INSTRUCTION NO. 7:**
**CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## INSTRUCTION NO. 8:
## CREDIBILITY OF WITNESSES

In reaching your decision, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

1.  The opportunity and ability of the witness to see, hear, or know the things testified to;

2.  The witness's memory;

3.  The witness's manner while testifying (although keep in mind that different people react differently to testifying in court):

4.  The witness's interest in the outcome of the case, if any;

5.  The witness's bias or prejudice, if any;

6.  Whether other evidence contradicted the witness's testimony;

7.  The reasonableness of the witness's testimony in light of all the evidence; and

8.  Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify to that fact. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 9:**
**EXPERT OPINION**

You have heard testimony from a number of expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of those witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### INSTRUCTION NO. 10:
### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

With the exception of punitive damages, Mr. Hardeman's burden of proof for all his claims is called "a preponderance of the evidence." When a party has the burden of proving a claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. (Mr. Hardeman has a higher burden of proof for his punitive damages claim, which will be discussed later.)

## INSTRUCTION NO. 11:
## STRICT LIABILITY DESIGN DEFECT

To establish his design defect claim, Mr. Hardeman must prove all of the following:

1.  That Monsanto manufactured, distributed, or sold Roundup;

2.  That Roundup, in the context of the facts and circumstances of this particular case, is a product about which an ordinary consumer can form reasonable minimum safety expectations;

3.  That the Roundup used by Mr. Hardeman did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way; and

4.  That Roundup's failure to perform safely was a substantial factor in causing Mr. Hardeman's harm.

**INSTRUCTION NO. 12:**
**STRICT LIABILITY – FAILURE TO WARN**

Mr. Hardeman also claims that Roundup lacked sufficient warnings of the risk of NHL.

To establish this claim, Mr. Hardeman must prove all of the following:

1.  That Monsanto manufactured, distributed, or sold Roundup;

2.  That Roundup's NHL risk was known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time that Mr. Hardeman was using Roundup;

3.  That the risk of NHL presented a substantial danger when Roundup was used or misused in an intended or reasonably foreseeable way;

4.  That ordinary consumers would not have recognized the risk of NHL;

5.  That Monsanto failed to adequately warn of the risk of NHL; and

6.  That Monsanto's failure to warn about the risk of NHL was a substantial factor in causing Mr. Hardeman's harm.

**INSTRUCTION NO. 13:**
**NEGLIGENCE – FAILURE TO WARN**

Mr. Hardeman also claims that Monsanto was negligent by not using reasonable care to warn about Roundup's NHL risk. To establish this claim, Mr. Hardeman must prove all of the following:

1. That Monsanto manufactured, distributed, or sold Roundup;

2. That Monsanto knew or reasonably should have known that Roundup posed a risk of NHL when used or misused in a reasonably foreseeable manner;

3. That Monsanto knew or reasonably should have known that users would not realize the risk of NHL;

4. That Monsanto failed to adequately warn of the risk;

5. That a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the risk; and

6. That Monsanto's failure to warn about the risk of NHL was a substantial factor in causing Mr. Hardeman's harm.

**INSTRUCTION NO. 14:**
**EPA, EUROPEAN REGULATORS, AND IARC**

In Phase 1, you were instructed not to substitute the judgment of the Environmental Protection Agency (EPA), various European regulatory bodies, or the International Agency for Research of Cancer (IARC) for your own independent assessment of the evidence. That remains true in Phase 2. However, the conclusions of these entities are relevant to the issues you are considering in Phase 2.

**INSTRUCTION NO. 15:**
**COMPENSATORY DAMAGES**

If you decide that Monsanto is legally responsible for the harm Roundup caused Mr. Hardeman, you must decide how much money will reasonably compensate him for that harm. This compensation is called "compensatory damages."

Mr. Hardeman seeks damages from Monsanto under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories allowed.

The compensatory damages claimed by Mr. Hardeman for the harm caused by Monsanto fall into two categories called economic damages and noneconomic damages. If you find for Mr. Hardeman, the parties have stipulated that the amount of economic damages is $200,967.10, and you will be asked to determine what amount of non-economic damages should be awarded.

The amount of damages must include an award for each item of harm that was caused by Monsanto's wrongful conduct, even if the particular harm could not have been anticipated. Mr. Hardeman does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of noneconomic damages claimed by Mr. Hardeman: physical pain; mental suffering; loss of enjoyment of life; physical impairment; inconvenience; grief; anxiety; humiliation; and emotional distress. No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for *future* mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress, Mr. Hardeman must prove that he is reasonably certain to suffer that harm. For future non-economic damages, determine the amount in current dollars paid at the time of judgment that will compensate Mr. Hardeman for these future noneconomic damages.

**INSTRUCTION NO. 16:**
**CLEAR AND CONVINCING PROOF**

As noted earlier, Mr. Hardeman must prove punitive damages by clear and convincing evidence, which is a higher burden of proof than the preponderance of the evidence standard. Under the clear and convincing evidence standard, a party attempting to prove a fact must persuade you that it is highly probable that the fact is true.

## INSTRUCTION NO. 17:
## PUNITIVE DAMAGES

If you decide that Monsanto is legally liable for the harm that Roundup caused Mr. Hardeman, you must decide whether Monsanto's conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Monsanto only if Mr. Hardeman proves that Monsanto engaged in that conduct with malice or oppression. To do this, Mr. Hardeman must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice or oppression was committed by one or more officers, directors, or managing agents of Monsanto, who acted on behalf of Monsanto; or

2. That the conduct constituting malice or oppression was authorized by one or more officers, directors, or managing agents of Monsanto; or

3. That one or more officers, directors, or managing agents of Monsanto knew of the conduct constituting malice or oppression and adopted or approved that conduct after it occurred.

"Malice" means that Monsanto acted with intent to cause injury or that Monsanto's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Monsanto's conduct was despicable and subjected Mr. Hardeman to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Monsanto's conduct? In deciding how reprehensible Monsanto's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Monsanto disregarded the health or safety of others;

3. Whether Mr. Hardeman was financially weak or vulnerable and Monsanto knew Mr. Hardeman was financially weak or vulnerable and took advantage of him;

4. Whether Monsanto's conduct involved a pattern or practice; and

5. Whether Monsanto acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Mr. Hardeman's harm or between the amount of punitive damages and potential harm to Mr. Hardeman that Monsanto knew was likely to occur because of its conduct?

(c) In view of Monsanto's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an

amount that is otherwise appropriate merely because Monsanto has substantial financial resources.

When deciding whether to award punitive damages, you should only consider Monsanto's conduct through summer 2012, which is when Mr. Hardeman stopped using Roundup. However, any evidence you may have heard regarding events that occurred after 2012 can be considered in determining the amount of punitive damages.

Punitive damages are not intended to compensate Mr. Hardeman. If you awarded compensatory damages to Mr. Hardeman, your award will have fully compensated him for any loss, harm, or damage that he has incurred or may in the future incur as a result of Monsanto's conduct. Accordingly, you must not include in an award of punitive damages any amount intended as compensation for loss, harm, or damage that Mr. Hardeman has incurred or may incur. In addition, punitive damages may not be used to punish Monsanto for the impact of its alleged misconduct on persons other than Mr. Hardeman.

In determining the amount of punitive damages, if any, you should take into consideration any mitigating evidence. Mitigating evidence is evidence that may demonstrate that there is no need for punitive damages or that a reduced amount of punitive damages should be imposed against Monsanto.

**INSTRUCTION NO. 18:**
**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You must diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## INSTRUCTION NO. 19:
## CONSIDERATION OF THE EVIDENCE – CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on

these instructions, I remind you that you must not be exposed to any other information about the

case or to the issues it involves.

Do not communicate with anyone in any way and do not let anyone else communicate

with you in any way about the merits of the case or anything to do with it. This includes

discussing the case in person, in writing, by phone or electronic means, via email, via text

messaging, in any internet chat room, or on any blog, website or application, including but not

limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other form of

social media. This applies to communicating with your family members, your employer, the

media or press, and the people involved in the trial. If you are asked or approached in any way

about your jury service or anything else about this case, you must respond that you have been

ordered not to discuss the matter and then report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case

or anything to do with it; do not do any research, such as consulting dictionaries, searching the

Internet, or using other reference materials; and do not investigate or in any other way try to learn

about the case on your own. Do not visit or view any place discussed in this case, and do not use

Internet programs or other devices to search for or view any place discussed during the trial.

Also, do not do any research about this case, the law, or the people involved – including the

parties, the witnesses and the lawyers – until you have been excused as jurors. If you happen to

read or hear anything touching on this case in the media, turn away and report it to me as soon as

possible.

These rules protect each party's right to have this case decided based only on the evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow them.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTION NO. 20:**
**TRANSCRIPT OF TRIAL NOT AVAILABLE**

You will not have a transcript of the trial in the jury room. If, during your deliberations, you determine that you want to review the testimony of a witness again, you can request to have that witness's testimony, or a portion of that witness's testimony, read back to you in the courtroom, with all of us present. It is up to me whether to permit a readback, and I may require that more of the witness's testimony be read back into the record, rather than just the portion that you requested. The readback could contain errors. The readback will not reflect the witness's demeanor, tone of voice, or other aspects of the live testimony. The way you remember and understand the live testimony controls. Finally, in your exercise of judgment, the testimony read back cannot be considered in isolation, but must be considered in the context of all the evidence presented.

**INSTRUCTION NO. 21:**
**COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed note. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including me or the Courtroom Deputy – how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or been discharged.

**INSTRUCTION NO. 22:**
**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.