**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:   202-898-5843
Fax:  202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:   202-942-5000
Fax: 202-942-5999

S. Zachary Fayne (CA Bar No. 307288)
(zachary.fayne@arnoldporter.com)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:  415-471-3100
Fax: 415-471-3400

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741<br>)<br>) Case No. 3:16-md-02741-VC<br>) |
| THIS DOCUMENT RELATES TO:<br><br>*Samantha Taylor, et al. v. Monsanto Co., et al.*, Case No. 3:19-cv-01030-VC | ) **DEFENDANT MONSANTO COMPANY'S**<br>) **OPPOSITION TO PLAINTIFFS' MOTION**<br>) **TO REMAND THE *TAYLOR* CASE**<br>)<br>) Date:  May 22, 2019<br>) Time: 10:00 a.m.<br>) Courtroom:  4 |

# TABLE OF CONTENTS

Page

ISSUES TO BE DECIDED ........................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 2

ARGUMENT ............................................................................................................................. 4

    I.      Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse
           Defendants Were Fraudulently Joined ........................................................... 4

    II.     Following The JCCP Court's Severance Order, The Removed Plaintiffs
           Cannot Rely On The Claims Of The Severed Plaintiffs To Defeat
           Diversity Jurisdiction ................................................................................... 6

    III.    The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-
           Joinder-Based Removal Lack Merit ............................................................. 10

          A.     The JCCP Severance Order Precludes Plaintiffs' Argument that
                Plaintiffs are not Misjoined ............................................................. 10

          B.     Plaintiffs' Arguments about the Timing of Monsanto's Removal
                Lack Merit ....................................................................................... 12

          C.     Plaintiffs' Reliance on the Voluntary-Involuntary Rule Lacks
                Merit ............................................................................................... 14

          D.     Plaintiffs' Argument Regarding Doe Defendants is Specifically
                Foreclosed by a Provision in the Removal Statute ...................... 16

CONCLUSION .......................................................................................................................... 17

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*Aronis v. Merck & Co.*,
   No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005)............................ 6

5

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
   261 F. Supp. 2d 483 (E.D. Va. 2003)................................ 8

6

7

*Boles v. Eli Lilly & Co.*,
   No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015) ........................ 11

8

*Boschert v. Pfizer, Inc.*,
   No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009)................................ 11

9

*Bugman v. Chemlawn Corp.*,
   No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa. June 17, 1988) ................................ 11

10

11

*Caldwell v. State Farm Gen. Ins. Co.*,
   No. C 16-03479 JSW, 2016 WL 10907158 (N.D. Cal. Aug. 16, 2016) ................................ 16

12

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010)................................ 6, 7

13

14

*Cooke-Bates v. Bayer Corp.*,
   No. 3:10-CV-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010)................................ 9

15

*Corley v. Google, Inc.*,
   316 F.R.D. 277 (N.D. Cal. 2016) ................................ 11

16

17

*Cuviello v. Feld Entm't, Inc.*,
   304 F.R.D. 585 (N.D. Cal. 2015)................................ 8, 12

18

*Dunbar v. Medtronic, Inc.*,
   No. CV 14-01529-RGK, 2014 WL 3056081 (C.D. Cal. June 25, 2014)................................ 11

19

20

*Fehlman v. McCaffrey*,
   No. CV-10-122-ST, 2010 WL 1959534 (D. Or. Apr. 14, 2010) (magistrate judge
   report and recommendation), *adopted by*, 2010 WL 1977950 (D. Or. May 12,
   2010) ................................ 13

21

22

*Granny Goose Foods, Inc. v. Teamsters*,
   415 U.S. 423 (1974)................................ 6, 7

23

24

*Great N. Ry. v. Alexander*,
   246 U.S. 276 (1918)................................ 15, 16

25

*Heather v. Medtronic Inc.*,
   No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014)........................ 11

26

27

28

- ii -

*In re Accutane Prods. Liab. Litig.*,
   No. 8:04-md-2523-T-30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012) .......................... 11

*In re: Baycol Prods. Liab. Litig.*,
   MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002) .................................................... 11

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
   No. Civ. A. 98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999) ............................................ 11

*In re: Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018) ............................................ 8

*In re Johnson & Johnson Cases*,
   No. 2:15-cv-05311-JGB, 2015 WL 5050543 (C.D. Cal. Aug. 24, 2015) ............................ 14, 15

*In re: Rezulin Prods. Liab. Litig.*,
   168 F. Supp. 2d 136 (S.D.N.Y. 2001) .................................................................................. 8, 11

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ...................................................................................... 11

*Jenkins v. Commonwealth Land Title Ins. Co.*,
   95 F.3d 791 (9th Cir. 1996) ................................................................................................... 6, 7

*Joseph v. Baxter Int'l, Inc.*,
   614 F. Supp. 2d 868 (N.D. Ohio 2009) ...................................................................................... 9

*Kirkland v. Legion Ins. Co.*,
   343 F.3d 1135 (9th Cir. 2003) .................................................................................................... 7

*Koehler v. Dodwell*,
   152 F.3d 304 (4th Cir. 1998) ...................................................................................................... 8

*Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   No. CV-15-106-GF-BMM, 2016 WL 81234 (D. Mont. Jan. 7, 2016) ......................................... 4

*LeBlanc v. Cleveland*,
   248 F.3d 95 (2d Cir. 2001) ....................................................................................................... 12

*Martinez v. McKesson Corp.*,
   No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) .................................... 5

*Mayfield v. London Women's Care, PLLC*,
   No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015) .................................................... 9

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ................................................................................................. 4, 9

*Mullin v. General Motors LLC*,
   No. CV 15-7668-DMG, 2016 WL 94235 (C.D. Cal. Jan. 7, 2016) ..................................... 14, 15

*Nguyen v. CTS Elecs. Mfg. Solutions Inc.*,
   301 F.R.D. 337 (N.D. Cal. 2014) ..................................................................................... 7, 10, 11

*Rubio v. Monsanto Co.*,
   181 F. Supp. 3d 746 (C.D. Cal. 2016) ........................................................................ 11

*Sams v. Beech Aircraft Corp.*,
   625 F.2d 273 (9th Cir. 1980) ...................................................................................... 8

*Self v. Gen. Motors Corp.*,
   588 F.2d 655 (9th Cir. 1978) ............................................................................... 15, 16

*Skelton v. Johnson & Johnson*,
   No. CV 15-5385 PA (Ex), 2015 WL 13236734 (C.D. Cal. Oct. 16, 2015) .......... 14, 15

*Sullivan v. Calvert Mem'l Hosp.*,
   117 F. Supp. 3d 702 (D. Md. 2015) ............................................................................ 8

*Todd v. Tempur-Sealy Int'l, Inc.*,
   No. 13-cv-04984-JST, 2017 WL 2840272 (N.D. Cal. June 30, 2017) ...................... 11

*Tucker v. McKesson Corp.*,
   No. C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) .......................... 5

*Unterleitner v. BASF Catalysts LLC*,
   No. 16-cv-00818-JSC, 2016 WL 805167 (N.D. Cal. Mar. 2, 2016) .................... 15, 16

*Visendi v. Bank of Am., N.A.*,
   733 F.3d 863 (9th Cir. 2013) ...................................................................................... 7

*Vu v. Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 (N.D. Cal. 2009) ...................................................................... 6

*Wade v. Johnson & Johnson*,
   54 F. Supp. 3d 1247 (W.D. Okla. 2014) .................................................. 12, 13, 15, 16

*Whitcomb v. Smithson*,
   175 U.S. 635 (1900) .................................................................................................. 15

**STATUTES AND RULES**

28 U.S.C. § 1441 ............................................................................................... 4, 9, 16

28 U.S.C. § 1446 ......................................................................................... 4, 9, 12, 13

Fed. R. Civ. P. 19 ...................................................................................................... 11

Fed. R. Civ. P. 20 ................................................................................................... 8, 11

Fed. R. Civ. P. 21 ................................................................................................ 1, 7, 8

**OTHER AUTHORITIES**

7 Wright & Miller, *et al.*,
   *Federal Practice and Procedure* § 1685 (3d ed.) ..................................................... 8, 9

## ISSUES TO BE DECIDED

Six of the plaintiffs at issue here ("the Removed Plaintiffs") fraudulently joined claims against California defendants to defeat federal jurisdiction.  Plaintiffs initially sought to evade removal by filing mass complaints, including numerous unrelated plaintiffs and two local distributor defendants.  But two developments in state court have now made clear that federal jurisdiction exists over the Removed Plaintiffs' claims.  First, each of the Removed Plaintiffs served Fact Sheets establishing that they (or their decedents) had not been exposed to Roundup®-branded herbicides distributed by the local defendants.  Second, the state court ordered the multi-plaintiff complaint severed into single-plaintiff complaints, which precluded the Removed Plaintiffs from piggy-backing on other plaintiffs' claims against the non-diverse parties and which allows for diversity jurisdiction to be assessed on a plaintiff-by-plaintiff basis.  In light of these developments, Monsanto Company ("Monsanto") properly removed their claims to this Court.

In their Motion to Remand, ECF No. 16, plaintiffs do not dispute either of these developments.  Instead, plaintiffs argue that because the state court (at plaintiffs' request) provided plaintiffs an extension of time to file individual complaints, their claims remain joined for jurisdictional purposes and Monsanto's removal was premature.  These arguments are unavailing and would require this Court to disregard the plain language and intent of the state court's severance order.  Contrary to plaintiffs' arguments, the Court need not find fraudulent misjoinder here because the state court has *already* ordered the cases severed.  This Court need only implement that order, as it plainly has authority to do under Federal Rule of Civil Procedure 21.  Moreover, Monsanto properly filed its Notice of Removal within 30 days of the severance order and within one year of the filing of the Complaint, so plaintiffs' arguments about the timing of Monsanto's removal lack merit.  Plaintiffs' reliance on the "voluntary-involuntary" rule fails as well because that rule does not apply here, for several reasons discussed below.  Finally, plaintiffs' argument that the California citizenship of fictitiously named (Doe) defendants destroys diversity is specifically foreclosed by a provision in the removal statute that requires courts to disregard the citizenship of Doe defendants in assessing diversity jurisdiction.

In sum, Monsanto has satisfied its burden of establishing that removal is proper for the Removed Plaintiffs' claims, so the Court should deny the Motion to Remand in part and retain jurisdiction over those claims.[1]

**<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>**

Ten unrelated plaintiffs commenced this lawsuit in the Superior Court of the State of California for San Francisco County by filing a Complaint, captioned *Taylors, et al. v. Monsanto Company, et al.*, Case No. CGC-18-565066, on March 19, 2018 (the "State Court Action").  Notice of Removal ¶ 5, ECF No. 1.  One of the plaintiffs (Michael Ferguson) voluntarily dismissed his claims before Monsanto filed its Notice of Removal, *id.* ¶ 24, so nine plaintiffs are at issue here.

Plaintiffs sued Monsanto and two California-based companies, Wilbur-Ellis Company LLC ("Wilbur-Ellis Company") and Wilbur-Ellis Feed, LLC ("Wilbur-Ellis Feed").  Notice of Removal ¶ 6.  The Complaint asserts various product liability claims against all three defendants (strict liability, negligence) and seeks damages for non-Hodgkin's lymphoma allegedly caused by Monsanto's Roundup®-branded herbicides, which plaintiffs claim were distributed by Wilbur-Ellis Company and Wilbur-Ellis Feed.  *Id.* ¶ 7.  The Complaint asserts other claims only against Monsanto (fraud, breach of express and implied warranties).  *Id.*

The Complaint lumps Wilbur-Ellis Company and Wilbur-Ellis Feed together and refers to them collectively as "Wilbur-Ellis."  Pls.' Complaint ¶¶ 35-36, ECF No. 1-1.  The Complaint alleges that "Wilbur-Ellis is a main distributor of Roundup®, and, *upon information and belief*, distributed Roundup® used by Plaintiffs."  *Id.* ¶ 36 (emphasis added); *see also id.* ¶ 113 ("*On information and belief*, Wilbur-Ellis was one of the distributors providing Roundup® and other glyphosate-containing products actually used by the Plaintiffs." (emphasis added)).

---

[1] The remand motion at issue here is almost identical to four other remand motions that were filed the same day (March 27, 2019) by the same law firm that filed this remand motion.  *See* Pls.' Mot. to Remand, ECF No. 16, *Gonzalez v. Monsanto Co.*, No. 3:19-cv-01020-VC (N.D. Cal.); Pls.' Mot. to Remand, ECF No. 16, *Kast v. Monsanto Co.*, No. 3:19-cv-01031-VC (N.D. Cal.); Pls.' Mot. to Remand, ECF No. 16, *Rabbers v. Monsanto Co.*, No. 3:19-cv-01023-VC (N.D. Cal.); Pls.' Mot. to Remand, ECF No. 16, *Rivas v. Monsanto Co.*, No. 3:19-cv-01024-VC (N.D. Cal.).  On this same date, Monsanto is filing oppositions to those motions that are almost identical to this opposition.

The State Court Action was added to a Judicial Council Coordinated Proceeding ("JCCP") – *Roundup Products Cases*, JCCP No. 4953, in the Superior Court of the State of California for Alameda County – and was transferred to that court for coordinated proceedings with other lawsuits involving personal injuries allegedly caused by Roundup®-branded herbicides.  Notice of Removal ¶ 9.  The Honorable Winifred Smith is presiding over JCCP No. 4953.  *Id.*

As in this MDL, the JCCP plaintiffs are required to serve defendants with "Fact Sheets" including, among other things, information about their alleged exposure to Roundup®-branded herbicides.  Each of the Removed Plaintiffs specified in their Fact Sheets that their (or their decedents') exposures to Roundup®-branded herbicides involved residential/personal use – and not work-related use – of the products.  As set forth below, Wilbur-Ellis Feed has never distributed ***any*** Roundup®-branded herbicides, and Wilbur-Ellis Company has never distributed Roundup®-branded herbicides for residential use.  The remaining plaintiffs did not allege solely personal/residential use of Roundup®-branded herbicides.  The other two markets for Roundup®-branded herbicides – the agricultural market and the industrial, turf, and ornamental ("IT&O") market – have been serviced historically by Wilbur-Ellis Company.

On January 25, 2019, Judge Smith issued an order requiring, *inter alia*, severance of previously filed multi-plaintiff complaints.  January 25, 2019 Order (hereinafter, "JCCP Severance Order") (Request for Judicial Notice ("RJN"), Exhibit 1).[2]  In response to plaintiffs' request based on claimed administrative burdens, Judge Smith allowed plaintiffs substantial additional time to effectuate the JCCP Severance Order through the filing of individual complaints.[3]

---

[2] In Paragraph 1 of the JCCP Severance Order, Judge Smith cited with approval two misjoinder/severance orders that were issued in the summer of 2017 in two other Roundup® multi-plaintiff lawsuits (filed in Alameda County Superior Court before JCCP No. 4953 was created) – a July 14, 2017 Order issued in *Billings v. Monsanto Company* (RJN, Exhibit 2) and a July 26, 2017 Order issued in *Woodbury v. Monsanto Company* (RJN, Exhibit 3).  In both orders, the Alameda County Superior Court sustained Monsanto's demurrers to the complaints for misjoinder of plaintiffs and held that plaintiffs "are not properly joined under CCP 378(a)(1)."  *Billings* Order at 3; *Woodbury* Order at 3.

[3] *Compare* JCCP Severance Order ¶ 2 *with* Judge Smith's Tentative Ruling ¶ 2 (RJN, Exhibit 4); *see* January 25, 2019 Hr'g Tr. 10:6-13:6 (plaintiffs' counsel discussing administrative burdens that would be imposed by tentative ruling and requesting that Judge Smith give plaintiffs six months to file single-plaintiff complaints) (Declaration of Martin Calhoun, Exhibit 1).

1    Monsanto timely filed its Notice of Removal of this multi-plaintiff complaint on February

2    25, 2019, within 30 days after the JCCP Severance Order was filed.  Monsanto chose not to wait for

3    the filing of individual complaints required under that order because plaintiffs would no doubt argue

4    that further delay would render those removals too late under the "one year bar" set forth in

5    28 U.S.C. § 1446(c).  Instead, this Court should now effectuate severance of these unrelated claims,

6    sustain federal jurisdiction over the claims of the six Removed Plaintiffs, and remand the claims of

7    the remaining plaintiffs for whom federal jurisdiction has not been established at this time.

8                                        **ARGUMENT**

9    **I.    Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse Defendants
           Were Fraudulently Joined.**

10

11    Monsanto removed this lawsuit based on the six Removed Plaintiffs' fraudulent joinder of

12    the non-diverse defendants (Wilbur-Ellis Company and Wilbur-Ellis Feed).  An "exception to the

13    requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"

14    *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Fraudulent joinder applies

15    when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is

16    obvious according to the settled rules of the state."  *Id.* (quotation marks omitted).  The fraudulently

17    joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the

18    court has jurisdiction based on diversity of citizenship.  *Id.*  Fraudulent joinder also renders the so-

19    called "forum defendant rule" inapplicable because that statutory provision applies only to

20    "properly joined" defendants.  28 U.S.C. § 1441(b)(2); *see, e.g.*, *Leaphart v. Nat'l Union Fire Ins.*

21    *Co of Pittsburgh.*, No. CV-15-106-GF-BMM, 2016 WL 81234, at *1 (D. Mont. Jan. 7, 2016).

22    As established in Monsanto's Notice of Removal and the supporting declarations, the

23    Removed Plaintiffs sued the in-forum defendants Wilbur-Ellis Company and Wilbur-Ellis Feed in

24    an attempt to prevent removal due to lack of diversity jurisdiction and/or due to the forum defendant

25    rule.  However, in their Fact Sheets, each of the six Removed Plaintiffs state that they (or their

26    decedents) used Roundup®-branded herbicides for personal/residential use and not for work-related

27    reasons.  Notice of Removal ¶ 34 (citing Plaintiff's Fact Sheets).  Because neither of the in-forum

28

- 4 -

1   defendants ever distributed Roundup®-branded herbicides for personal/residential use, the Removed

2   Plaintiffs fail to state viable causes of action against those defendants and cannot rely on those

3   defendants to defeat diversity jurisdiction.  Tellingly, plaintiffs offer no substantive argument to the

4   contrary.[4]

5        Wilbur-Ellis Company is (and has been) in the business of distributing and selling only

6   certain categories of Monsanto glyphosate-based herbicide products – namely, herbicides designed

7   for the agricultural market and herbicides designed for the IT&O/professional market.  Notice of

8   Removal ¶ 30 (citing Declaration of Steven Gould ("Gould Declaration") ¶ 6, ECF No. 1-6;

9   Declaration of Scott Hushbeck ("Hushbeck Declaration") ¶ 7, ECF No. 1-4).  Wilbur-Ellis

10  Company does not sell (and has never sold) Monsanto glyphosate-containing herbicides that have

11  been created and designed for the residential-lawn-and-garden market.  *Id.* ¶ 31 (citing Gould Decl.

12  ¶ 6; Hushbeck Decl. ¶ 7).  For example, Wilbur-Ellis Company has never played any role in the

13  chain of distribution leading to Monsanto's glyphosate-based, lawn-and-garden herbicides being

14  sold at national retail stores like Home Depot, Lowe's, Target, Walmart, Costco, or Ace Hardware.

15  *Id.* (citing Hushbeck Decl. ¶ 7; Gould Decl. ¶ 6).  Wilbur-Ellis Company also has never designed or

16  manufactured Monsanto's glyphosate-based herbicides.  *Id.* ¶ 33 (citing Hushbeck Decl. ¶ 9; Gould

17  Decl. ¶ 8).

18       Thus, the Removed Plaintiffs do not have any viable claims against Wilbur-Ellis Company.

19  *See, e.g.*, *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal.

20  Apr. 7, 2016) (holding that California defendant was fraudulently joined because it did not

21  manufacture Mirena and did not distribute ***plaintiff's*** Mirena); *Tucker v. McKesson Corp.*, No.

22  C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) (holding that California defendant

23

24  ────────────────
    [4] *See* Mem. in Support of Pls.' Mot. to Remand ("Remand Memorandum") at 9-10, ECF No. 17

25  (declining to contest Monsanto's fraudulent joinder argument regarding Wilbur-Ellis Feed and
    stating that, "[e]ven if Wilbur-Ellis Feed LLC has been named erroneously in this action, presence

26  of Wilbur-Ellis Company LLC in the case defies complete diversity of citizenship in the case"); *id.*
    at 10 (stating that, "[e]ven if some of the Plaintiffs did not buy or use Roundup products distributed

27  by Wilbur Ellis, Wilbur Ellis distributed the Roundup products used" by the three plaintiffs for
    whom Monsanto cannot make a fraudulent joinder showing on the current record).

28

was fraudulently joined because it did not distribute morphine tablets to pharmacy where decedent obtained morphine tablets at issue in lawsuit); *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) (holding that California defendant was fraudulently joined because plaintiff alleged merely that defendant was a major distributor of Vioxx without connecting defendant to plaintiff's injuries).

Plaintiffs likewise have no viable claims against Wilbur-Ellis Feed because that company has never designed, manufactured, distributed, or sold Roundup®-branded herbicides or any other herbicides in *any* market.  Notice of Removal ¶ 27 (citing Declaration of George Arkoosh, ("Arkoosh Declaration") ¶ 7, ECF No. 1-2); *see Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1154-55 (N.D. Cal. 2009) (holding that California defendant was fraudulently joined because she did not market or distribute Children's Tylenol Plus Multi-Symptom Cold medicine); *see also supra* pages 5-6 (citing fraudulent joinder cases).  Rather, Wilbur-Ellis Feed is (and has been) in the business of ensuring that animals receive customized, high-quality, dependable nutrients.  Notice of Removal ¶ 27 (citing Arkoosh Decl. ¶ 7).  Moreover, Wilbur-Ellis Feed did not come into existence as a corporate entity until September 2015, Notice of Removal ¶ 26 (citing Arkoosh Decl. ¶ 7), well after the alleged exposure period of one of the Removed Plaintiffs, Joseph Rykert, *id*. (citing Compl. ¶ 15).

Accordingly, the six Removed Plaintiffs fraudulently joined both California defendants.

## II.     Following The JCCP Court's Severance Order, The Removed Plaintiffs Cannot Rely On The Claims Of The Severed Plaintiffs To Defeat Diversity Jurisdiction.

The Removed Plaintiffs try to defeat removal by asking this Court to ignore the JCCP Severance Order.  This Court should not do so.  It is well established that, "'[a]fter removal, the federal court takes the case up where the State court left it off.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974)); *see Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996) (quoting *Granny Goose Foods*, 415 U.S. at 436).  The federal court "treats everything that occurred in the state court as if it had taken place in federal court," *Carvalho*, 629 F.3d at 887

1   (quotation marks omitted), so "an order entered by a state court should be treated as though it had

2   been validly rendered in the federal proceeding," *id*. (quotation marks omitted); *Nguyen v. CTS*

3   *Elecs. Mfg. Solutions Inc.*, 301 F.R.D. 337, 345 (N.D. Cal. 2014) ("Following this precedent

4   [*Granny Goose Foods*, *Carvalho*, *Jenkins*, and other cases], courts in this Circuit have routinely

5   adopted state court rulings on particular issues when those issues were subsequently raised again

6   after removal to federal court.").

7        Here, Judge Smith issued the JCCP Severance Order, which requires that multi-plaintiff

8   lawsuits be turned into single-plaintiff lawsuits by dismissing "all plaintiffs except one per case"

9   and requiring each of the other plaintiffs to file his or her "own individual complaint."  JCCP

10  Severance Order ¶ 2.  This is completely consistent with what the Ninth Circuit has recognized as

11  the remedy for misjoinder.  *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 871 (9th Cir. 2013)

12  ("courts can remedy misjoinder by dismissing the claims of all but the first named plaintiff without

13  prejudice to the filing of individual actions"); *see also Nguyen*, 301 F.R.D. at 341 (stating that,

14  when a court severs misjoined plaintiffs, "the court may generally dismiss all but the first named

15  plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs").

16  Moreover, as discussed above, when Judge Smith ordered the filing of single-plaintiff complaints in

17  this part of the JCCP Severance Order, she cited with approval certain misjoinder/severance rulings

18  that had been issued in other multi-plaintiff Roundup® lawsuits in 2017, before JCCP No. 4953 was

19  created.  *See supra* note 2.

20        Plaintiffs seek to leverage Judge Smith's accommodation to their request for additional time

21  to file individual complaints to argue that this Court must treat the plaintiffs' claims as properly

22  joined for purposes of removal.  But federal courts repeatedly have stated that they are authorized to

23  use Rule 21 to perfect their diversity jurisdiction by dropping a nondiverse, dispensable party, and

24  that is particularly appropriate here given the state court's severance ruling.[5]  *See Kirkland v. Legion*

25  *Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) ("[Rule 21] is viewed as a grant of 'discretionary

26

27  _____

    [5] Rule 21 states:  "On motion or on its own, the court may at any time, on just terms, add or drop a
28  party.  The court may also sever any claim against a party."

1    power [to the federal court] to perfect its diversity jurisdiction by dropping a nondiverse party

2    provided the nondiverse party is not indispensable to the action under Rule 19 [of the Federal Rules

3    of Civil Procedure].'" (quoting *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980)));

4    *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (discussing Rule 21 and

5    stating that, "[i]n some cases, severance clearly will be warranted to preserve federal diversity

6    jurisdiction"), *cert. denied*, 138 S. Ct. 1288 (2018); *Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir.

7    1998) (construing Rule 21 and stating that "a party or claim whose presence deprives the court of

8    jurisdiction may be dropped or severed from the action"); *Cuviello v. Feld Entm't Inc.*, 304 F.R.D.

9    585, 593-94 (N.D. Cal. 2015) (relying on Rule 21 to order dismissal without prejudice of

10   dispensable nondiverse party to "perfect [the court's] diversity jurisdiction"); *see also* 7 Charles

11   Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1685 (3d ed.) ("Courts

12   frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse

13   party if the party's presence in the action is not required under Rule 19.").

14         Even absent a state court severance ruling, district courts repeatedly have relied on Rule 21

15   to sever nondiverse parties in removed cases and assert diversity jurisdiction over the remaining

16   parties.  For example, one court denied a remand motion, holding that a diversity-destroying

17   plaintiff "was improvidently joined" and dismissing that plaintiff "as a misjoined party under Rule

18   21." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 490 (E.D. Va.

19   2003).  Likewise, a district court presiding over products liability cases in multidistrict litigation

20   proceedings relied on Federal Rule of Civil Procedure 20 to hold that diversity-destroying plaintiffs

21   were misjoined and Rule 21 to sever those plaintiffs from their diverse co-plaintiffs, thereby

22   "preserv[ing] the defendants' right to removal" with respect to the claims asserted by the diverse

23   plaintiffs.  *In re: Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144-48, 153 (S.D.N.Y. 2001).

24   Other district courts have exercised their Rule 21 discretion in similar fashion to retain jurisdiction

25   over certain parties and claims while severing other parties and claims.  *See, e.g.*, *Sullivan v. Calvert*

26   *Mem'l Hosp.*, 117 F. Supp. 3d 702, 704, 707 (D. Md. 2015) (stating that "[t]he court has discretion,

27   under Federal Rule of Civil Procedure 21, to drop nondiverse parties to achieve complete diversity";

28

severing and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendants); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *3, 5-6 (E.D. Ky. May 28, 2015) (stating that "[i]t is well-settled that Rule 21 can be used to sever a dispensable, nondiverse party in order to preserve federal jurisdiction"; severing and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendant); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010) (stating that "district courts have considerable discretion to sever parties under Rule 21"; severing and remanding claims asserted against nondiverse defendant and retain jurisdiction over remaining claims); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 872-75 (N.D. Ohio 2009) (ordering severance based on Rule 21 and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendant); *see also* 7 Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1685 (3d ed.) (stating that "courts also have used Rule 21 to drop a party who was joined in an action for the purpose of preventing removal to a federal court").

Here, when plaintiffs are properly severed in accordance with the JCCP Severance Order, complete diversity of citizenship exists for each of the six Removed Plaintiff's lawsuits, *see* Notice of Removal ¶¶ 17-23, 25, 39, because those plaintiffs fraudulently joined the two California defendants, which means that they must be disregarded, *see Morris*, 236 F.3d at 1067; 28 U.S.C. § 1441(b)(2). Moreover, Monsanto established that plaintiffs seek damages in excess of $75,000, exclusive of interest and costs, *see* Notice of Removal ¶ 36 – a showing that plaintiffs do not dispute – so the jurisdictional amount-in-controversy requirement is also satisfied here. Thus, the Court should retain jurisdiction over the Removed Plaintiffs.[6]

---

[6] Wilbur-Ellis Company and Wilbur-Ellis Feed are not required to consent to removal because those defendants have not been "properly joined." 28 U.S.C. § 1446(b)(2)(A). In any event, they both have consented to removal. Notice of Removal ¶ 43 (citing Hushbeck Decl. ¶ 10; Arkoosh Decl. ¶ 8). By requesting and/or providing this consent, no defendant concedes that either Wilbur-Ellis Company or Wilbur-Ellis Feed is properly joined as a defendant in this lawsuit.

1

2

**III.     The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-Joinder-Based Removal Lack Merit.**

3

4

5

The Removed Plaintiffs make various arguments in an effort to persuade this Court to countenance their fraudulent joinder of Wilbur-Ellis Company and Wilbur-Ellis Feed.  However, their arguments lack merit, as discussed below.

6

7

**A.     The JCCP Severance Order Precludes Plaintiffs' Argument that Plaintiffs are not Misjoined.**

8

9

10

11

12

13

14

15

16

17

18

Remarkably, notwithstanding the JCCP Severance Order, the Removed Plaintiffs assert that their personal injury claims "are not misjoined," Remand Mem. at 7, with those of the other plaintiffs, so that the Removed Plaintiffs can piggy-back on those plaintiffs' claims against the local defendants Wilbur-Ellis Company and Wilbur-Ellis Feed.  However, as discussed above, the JCCP Severance Order has already ordered the plaintiffs' claims severed, citing with approval prior misjoinder/severance orders issued in 2017 in two other Roundup® lawsuits (each of which holding that plaintiffs "***are not properly joined under CCP 378(a)(1)***.").  *Billings* Order at 3 (emphasis added); *Woodbury* Order at 3 (emphasis added).  Both of those earlier orders held that the claims of the different plaintiffs "do not belong together because they do not arise from the same transaction or occurrence or series of transactions or occurrences," as required by § 378(a)(1) (California's permissive joinder provision).  *Billings* Order at 2; *Woodbury* Order at 2.

19

20

21

22

23

24

25

26

27

The JCCP Severance Order already requires plaintiffs to file separate complaints, so there is no need to revisit that ruling.  Judge Koh's ruling under similar circumstances in *Nguyen* is instructive.  In that case, a California state court issued a severance and dismissal ruling, but plaintiffs filed an amended complaint that "did nothing to address the issue of misjoinder of Plaintiffs."  *Nguyen*, 301 F.R.D. at 344.  After removal, Judge Koh declined to revisit the misjoinder ruling issued in state court and gave effect to the severance order.  *See id*. ("The Court need not reach or analyze the merits of [Defendant's] motion to sever because this Court gives effect to the state court's decision to sustain [Defendant's] demurrer to sever Plaintiffs' claims.").  As Judge Koh explained, her ruling to "give[] effect to the state court's decision to sever Plaintiffs' claims" was

28

1    based on "principles of comity" and the need to "prevent[] . . . inconsistent rulings."  *Id.* at 345.

2    Likewise, this Court should give effect to the JCCP Severance Order.

3          Yet in any case, severance would also be proper under federal law.  The "single transaction

4    or occurrence requirement [of Rule 20] is not met where plaintiffs would have to prove their claims

5    or defendants would have to litigate their defenses on an individualized basis."  *Corley v. Google,*

6    *Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. 2016); *see Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-

7    JST, 2017 WL 2840272, at *2 (N.D. Cal. June 30, 2017) (quoting *Corley*, 316 F.R.D. at 284).  In

8    Roundup® lawsuits, as this Court well knows, each plaintiff is required to prove his claims on an

9    individualized basis and Monsanto is required to present its defenses on an individualized basis.

10   Each Roundup® case involves a separate set of facts and circumstances, including different

11   durations and amounts of exposure, different sets of diagnoses and treating physicians, and different

12   potential alternative causes.  "Joinder 'of several plaintiffs who have no connection to each other in

13   no way promotes trial convenience or expedites the adjudication of asserted claims.'"  *In re Rezulin*,

14   168 F. Supp. 2d at 146 (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*

15   *Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999)).  Thus,

16   federal courts – including courts presiding over multidistrict litigation proceedings – repeatedly

17   have ordered severance of multi-plaintiff complaints filed in products liability cases.[7]

18         Finally, the JCCP Severance Order is also consistent with Rule 19 because each plaintiff

19   clearly is not an indispensable party for any other plaintiff's claims.  As this Court stated, "[a] party

20   is indispensable when, in equity and good conscience, the action should not be allowed to proceed

21

22   ───────────────
     [7] *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746 (C.D. Cal. 2016) (severing plaintiffs in
23   Roundup® lawsuit); *Bugman v. Chemlawn Corp.*, No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa.
     June 17, 1988) (severing plaintiffs alleging injuries from exposure to Chemlawn pesticides); *see*
24   *also, e.g., Boles v. Eli Lilly & Co.*, No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind.
     Oct. 19, 2015); *Heather v. Medtronic Inc.*, No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093
25   (C.D. Cal. June 9, 2014); *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK (AJWx), 2014 WL
     3056081 (C.D. Cal. June 25, 2014); *In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-
26   30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012); *Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714
     CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d
27   563 (S.D. Tex. 2005); *In re: Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D.
     Minn. July 5, 2002).
28

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND THE *TAYLOR* CASE
3:16-md-2741-VC & 3:19-cv-01030-VC

without that party." *Cuviello*, 304 F.R.D. at 593 (quotation marks omitted).  Here, as shown by the JCCP Severance Order, each single-plaintiff lawsuit can proceed separately without any other plaintiff's claims.  Each plaintiff's rights "are not inexorably intertwined" with any other plaintiff's rights, and each plaintiff can "recover completely" in his own lawsuit in the absence of any other plaintiff, which makes each plaintiff dispensable to each other plaintiff's lawsuit.  *LeBlanc v. Cleveland*, 248 F.3d 95, 98 (2d Cir. 2001).

### B. Plaintiffs' Arguments about the Timing of Monsanto's Removal Lack Merit.

Plaintiffs complain that Monsanto's Notice of Removal "suffers from untimeliness," Remand Mem. at 13, and then assert that Monsanto's removal was "premature," *id*. at 14.  It was neither.

*First*, the case only became removable upon entry of the JCCP Severance Order on January 25, 2019, when the claims of the Removed Plaintiffs were severed from those of the remaining plaintiffs.  It was only then that the Removed Plaintiffs became unable to rely on the potentially viable claims against Wilbur-Ellis Company brought by the remaining three plaintiffs (whose claims allegedly involve use of Roundup®-branded herbicides other than exclusively personal/residential use) to avoid diversity jurisdiction.  Pursuant to 28 U.S.C. § 1446(b)(3), Monsanto thereafter had thirty days to file the Notice of Removal, which it did.

The JCCP Severance Order falls squarely within the scope of the "order or other paper" language in § 1446(b)(3).  Plaintiffs' suggestion that Monsanto was required to wait for a final order to remove is without merit.  As one court stated, the "statutory language itself does not require that the 'order or other paper' be a final appealable order," so the court declined to "read a term into the statute that does not exist."  *Wade v. Johnson & Johnson*, 54 F. Supp. 3d 1247, 1250 (W.D. Okla. 2014).  After noting that the removal statute "does not expressly exclude interlocutory orders from its scope," *id*., the *Wade* court explained why such a restriction it is inappropriate and contrary to the language of the statute:

> ***A defendant would often lose the right to remove if it waited until the court issued a final appealable order.***  To require a final, appealable order before removability may first be ascertained runs contrary to the language of the statute itself.  The statute's language that a notice of removal may be filed

1

2

3

> within 30 days after receipt of, among other things, an order or other paper
> from which "it may first be ascertained that the case is one which is or has
> become removable[,]" is not consistent with the requirement that the "order or
> other paper" be a final, appealable order.

4   *Id.* (emphasis added).  The same reasoning applies here because Monsanto would have lost the right

5   to remove if it had waited for a final appealable order.

6         **Second**, Monsanto's removal was not premature.  The JCCP Severance Order is a self-

7   executing, formal court order that did not require any further action by Judge Smith to go into

8   effect.[8]  Moreover, because the Complaint at issue here was filed in March 2018, Monsanto could

9   not wait until after the courtesy extension of time that Judge Smith gave plaintiffs to file individual

10  complaint without potentially running afoul of the one-year-limitation-on-removal provision in

11  28 U.S.C. § 1446(c).

12        Plaintiffs would impose upon Monsanto the Hobson's choice of waiting for plaintiffs to

13  comply with the JCCP Severance Order before filing its removal notices – and risk losing the

14  important right of removal on timeliness grounds – or filing a removal notice earlier but not being

15  permitted to rely on the JCCP Severance Order.  The Court should not countenance such

16  gamesmanship.  Plaintiffs requested and received an administrative accommodation from Judge

17  Smith, which gave them a substantial amount of time – more than five months – to carry out the

18  dismissals required by the JCCP Severance Order.  *See supra* page 3 & note 3.  They should not be

19  allowed to take advantage of that extension to pervert Judge Smith's ruling so as to claim that

20  Monsanto's Notice of Removal was premature.

21

22  _____

[8] The distinction between a self-executing formal court order requiring no further action by a judge
23  and something issued by a court that requires further judicial action to become a formal order is
    illustrated by the state court's "letter opinion" at issue in *Fehlman v. McCaffrey*, No. CV-10-122-
24  ST, 2010 WL 1959534, at *3 (D. Or. Apr. 14, 2010) (magistrate judge report and recommendation),
    *adopted by*, 2010 WL 1977950 (D. Or. May 12, 2010).  In that case, the court held that the letter
25  opinion was not an "order" within the meaning of § 1446(b) because the letter opinion "expressly
    warned that it was not a formal order by directing defendants' counsel to 'prepare an appropriate
26  form of order,'" *id.* at *3, and because the state court judge subsequently "sent another letter to the
    parties . . ., which again emphasized that an order needed to be entered," *id.* at *4.  Here, by
27  contrast, Judge Smith did not need to take any further action to turn the JCCP Severance Order into
    a formal court order.

28

1

**C.  Plaintiffs' Reliance on the Voluntary-Involuntary Rule Lacks Merit.**

2

Plaintiffs' argument that Monsanto's removal violated the voluntary-involuntary rule fails

3

for several reasons.

4

*First*, the voluntary-involuntary rule does not apply to the JCCP Severance Order because

5

the Removed Plaintiffs – who lack any viable claims against the in-forum defendants – "never had

6

the power to determine the removability of this action . . . by the allegations in [their] complaint,"

7

so "[t]his basic premise of the 'voluntary-involuntary' rule is wholly absent." *In re Johnson &*

8

*Johnson Cases*, No. 2:15-cv-05311-JGB (SPx) (and numerous other case numbers), 2015 WL

9

5050543, at *6 (C.D. Cal. Aug. 24, 2015).  In the *Johnson & Johnson Cases*, Judge Bernal denied

10

remand motions filed by 64 non-New-Jersey plaintiffs whose product liability lawsuits were

11

removed by a New Jersey defendant after a state court severed the claims of a few non-diverse New

12

Jersey plaintiffs.  Judge Bernal rejected the voluntary-involuntary-rule argument because, to the

13

extent that each plaintiff had "the 'power' to defeat removal," each plaintiff "***did not possess that***

14

***power in her own right***."  *Id.* at *6 (emphasis added).  Instead, Judge Bernal explained, such a

15

power "was merely derivative of the rights of other plaintiffs in the action – specifically, those

16

plaintiffs who are citizens of New Jersey.  It would be more accurate to say that Plaintiff was the

17

incidental beneficiary of a power to defeat removal possessed by the New Jersey plaintiffs."  *Id.*  As

18

Judge Bernal stated, any "'power' to determine the removability of" the multi-plaintiff lawsuit

19

"relied from the outset on conditions outside Plaintiff's control.  If the New Jersey plaintiffs had

20

refused to join [the multi-plaintiff lawsuit] and instead insisted on instituting their own action,

21

Plaintiff could not have defeated removal of [the multi-plaintiff lawsuit] by her own allegations."

22

*Id.*; *see Skelton v. Johnson & Johnson*, No. CV 15-5385 PA (Ex), 2015 WL 13236734, at *1 (C.D.

23

Cal. Oct. 16, 2015) (rejecting voluntary-involuntary-rule argument made in a post-severance

24

removed case; relying on *Johnson & Johnson Cases* and stating that "the Court finds Judge

25

Bernal's reasoning persuasive").[9]

26

27

28

---

[9] Plaintiffs' reliance on *Mullin v. General Motors LLC*, No. CV 15-7668-DMG (RAOx), 2016 WL
94235 (C.D. Cal. Jan. 7, 2016), is misplaced because that case involved a state court's *forum non*

*(Footnote continued)*

**Second**, the voluntary-involuntary rule does not apply because the JCCP Severance Order did not go the merits of the lawsuit.  As the Supreme Court has articulated the rule, a lawsuit that is not removable when commenced cannot be converted into a removable lawsuit "by an order of the court upon any issue *tried upon the merits*."  *Great N. Ry. v. Alexander*, 246 U.S. 276, 281 (1918) (emphasis added).  Likewise, in the *Self* case cited by plaintiffs, the Ninth Circuit focused on the fact that a state court order was "a decision made on the merits of the case" when the Ninth Circuit decided to apply the voluntary-involuntary rule and ordered remand to state court.  *Self v. Gen. Motors Corp.*, 588 F.2d 655, 660 (9th Cir. 1978) ("In the instant case, a final judgment against Prior [the in-forum, nondiverse defendant] removed him from the proceedings.  A final judgment is an order by the court and is classically a decision made on the merits of the case."); *see id*. at 658 ("'This [the directed verdict] was a ruling on the merits . . . .  It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable . . . .'" (quoting *Whitcomb v. Smithson*, 175 U.S. 635, 638 (1900)) (brackets in original)).  This Court and other district courts repeatedly have made the same point.  *See, e.g.*, *Unterleitner v. BASF Catalysts LLC*, No. 16-cv-00818-JSC, 2016 WL 805167, at *2 (N.D. Cal. Mar. 2, 2016) ("[W]here the dismissal of a diversity-defeating defendant occurs involuntarily, such as dismissal on the merits over the plaintiff's opposition, that action does not become removable." (citing *Self*, 588 F.2d at 659)); *In re Johnson & Johnson Cases*, 2015 WL 5050543, at *3 (discussing voluntary-involuntary rule and stating that "the dismissal of [a non-diverse] defendant on the merits does not render the action removable"); *Wade*, 54 F. Supp. 3d 1251 (stating that "the actual claims of all the plaintiffs remain intact and have not been modified or dismissed on the merits by the [state] court"; holding that voluntary-involuntary rule did not apply because, *inter alia*, "the state court judge's order . . . was not on the merits").

---

*conveniens* dismissal ruling, whereas here the state court issued a severance ruling.  In any event, the defendant in *Mullin* failed to cite *Johnson & Johnson Cases* (or *Skelton*) in its opposition to the remand motion, and the *Mullin* court accordingly did not address the fact that the remaining, diverse plaintiffs in *Mullin* never had the power in their own right to determine the removability of their lawsuit, making the voluntary-involuntary rule irrelevant in that case.

- 15 -

1   ***Finally***, the voluntary-involuntary rule focuses on whether the plaintiff voluntarily

2   dismissed one or more ***defendants*** whose presence in the lawsuit prevented removal.  *See Self*, 588

3   F.2d at 659 (a case that "is not removable because of joinder of defendants" can only be converted

4   into a removable lawsuit "by the voluntary dismissal or nonsuit by him of a party or of parties

5   defendant" (quoting *Alexander*, 246 U.S. at 281)).  Accordingly, in a removal context similar to

6   Monsanto's removal at issue here, the *Wade* court rejected plaintiffs' voluntary-involuntary-rule

7   argument in part because the state court order – which dismissed certain ***plaintiffs*** from multi-

8   plaintiff complaints for lack of personal jurisdiction – "did not result in the dismissal of a non-

9   diverse ***defendant***."  *Wade*, 54 F. Supp. 3d at 1251 (emphasis added); *see also Unterleitner*, 2016

10  WL 805167, at *2 ("Voluntary action [for purposes of the voluntary-involuntary rule] exists where

11  the plaintiff voluntarily amends his pleadings or where the plaintiff agrees to voluntary dismissal or

12  nonsuit of the nondiverse defendants." (citing *Self*, 588 F.2d at 659)).  Severance of different

13  ***plaintiffs'*** claims therefore does not implicate the rule.

14          **D.  Plaintiffs' Argument Regarding Doe Defendants is Specifically Foreclosed by a**
15              **Provision in the Removal Statute.**

16          In a last-ditch effort to evade this Court's jurisdiction, plaintiffs contend that the Doe

17  defendants are California citizens who destroy complete diversity of citizenship.  *See* Remand

18  Mem. at 11-13.  However, this argument is specifically foreclosed by a provision in the removal

19  statute:  "In determining whether a civil action is removable on the basis of the jurisdiction under

20  section 1332(a) of this title, the citizenship of defendants sued under fictitious names ***shall be***

21  ***disregarded***."  28 U.S.C. § 1441(b)(1) (emphasis added).  This provision means what it says.  *See,*

22  *e.g.*, *Caldwell v. State Farm Gen. Ins. Co.*, No. C 16-03479 JSW, 2016 WL 10907158, at *2 (N.D.

23  Cal. Aug. 16, 2016) (denying motion to remand; relying on § 1441(b)(1) to disregard Doe

24  defendants' citizenship and rejecting argument that they destroyed diversity).  Thus, § 1441(b)(1)

25  requires this Court to disregard the citizenship of any Doe defendants.

26

27

28

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand with respect to the claims of the six Removed Plaintiffs (Taylor, Garcia, King, Rykert, Salgado, and Smith).

DATED: April 17, 2019                              Respectfully submitted,


/s/ Eric G. Lasker
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel:   202-898-5843
Fax:  202-682-1639

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:   202-942-5000
Fax:  202-942-5999

S. Zachary Fayne (CA Bar No. 307288)
(zachary.fayne@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:   415-471-3100
Fax:  415-471-3400

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:  202-847-4005

Attorneys for Defendant
MONSANTO COMPANY