**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

S. Zachary Fayne (CA Bar No. 307288)
(zachary.fayne@arnoldporter.com)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:  415-471-3100
Fax: 415-471-3400

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) |
| THIS DOCUMENT RELATES TO: | ) **DEFENDANT MONSANTO COMPANY'S** ) **OPPOSITION TO PLAINTIFFS' MOTION** |
| *Jeffrey Baum, et al. v. Monsanto Co., et al.*, Case No. 3:19-cv-01018-VC | ) **TO REMAND THE** *BAUM* **CASE** ) ) Date:  May 22, 2019 ) Time: 10:00 a.m. ) Courtroom:  4 |

1

## TABLE OF CONTENTS

2

Page

3      ISSUES TO BE DECIDED ............................................................................................ 1

4      FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

5      ARGUMENT ............................................................................................................... 4

6          I.      Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse
                    Defendants Were Fraudulently Joined. ........................................................ 4
7

8          II.     Following The JCCP Court's Severance Order, The Removed Plaintiffs
                    Cannot Rely On The Claims Of The Severed Plaintiffs To Defeat
9                   Diversity Jurisdiction. ................................................................................. 6

10         III.    The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-
                    Joinder-Based Removal Lack Merit .............................................................. 9
11
                   A.      The JCCP Severance Order Precludes Plaintiffs' Argument that
12                         Plaintiffs are not Misjoined. ............................................................ 10
13
                   B.      Plaintiffs' Arguments about the Timing of Monsanto's Removal
                           Lack Merit ........................................................................................ 12
14
                   C.      Plaintiffs' Reliance on the Voluntary-Involuntary Rule is
15                         Precluded by § 1447(c) and Otherwise Lacks Merit ......................... 15

16                 D.      Plaintiffs' Argument Regarding Doe Defendants is Specifically
                           Foreclosed by a Provision in the Removal Statute. .......................... 18
17      CONCLUSION .......................................................................................................... 19

18

19

20

21

22

23

24

25

26

27

28

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**CASES**

4

*Aronis v. Merck & Co.*,
   No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005)............................5

5

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
   261 F. Supp. 2d 483 (E.D. Va. 2003)....................................................................8

6

*Boles v. Eli Lilly & Co.*,
   No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015)............................12

7

8

*Boschert v. Pfizer, Inc.*,
   No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009)....................................12

9

*Bugman v. Chemlawn Corp.*,
   No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa. June 17, 1988)......................................12

10

11

*Caldwell v. State Farm Gen. Ins. Co.*,
   No. C 16-03479 JSW, 2016 WL 10907158 (N.D. Cal. Aug. 16, 2016)..................................19

12

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010)....................................................................6, 7

13

14

*Cooke-Bates v. Bayer Corp.*,
   No. 3:10-CV-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010)..........................................9

15

*Corley v. Google, Inc.*,
   316 F.R.D. 277 (N.D. Cal. 2016)...................................................................11

16

17

*Cornell v. That Certain Instrument Entitled "Deed of Trust"*,
   No. CIV. 2:12-330 WBS CKD, 2013 WL 5719524 (E.D. Cal. Oct. 18, 2013)............................15

18

*Cuviello v. Feld Entm't, Inc.*,
   304 F.R.D. 585 (N.D. Cal. 2015)................................................................8, 12

19

20

*Dunbar v. Medtronic, Inc.*,
   No. CV 14-01529-RGK, 2014 WL 3056081 (C.D. Cal. June 25, 2014)..................................12

21

*Fehlman v. McCaffrey*,
   No. CV-10-122-ST, 2010 WL 1959534 (D. Or. Apr. 14, 2010) (magistrate judge
   report and recommendation), *adopted by* 2010 WL 1977950 (D. Or. May 12, 2010) ...............14

22

23

*Granny Goose Foods, Inc. v. Teamsters*,
   415 U.S. 423 (1974)............................................................................6, 7

24

25

*Great N. Ry. v. Alexander*,
   246 U.S. 276 (1918)...........................................................................17, 18

26

*Heather v. Medtronic Inc.*,
   No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014)............................12

27

28

ii

*Hoffman v. Metro. Ins. & Annuity Co.*,
  No. 12-2303, 2012 WL 3185953 (D.N.J. Aug. 2, 2012) .......................................................... 15

*In re Accutane Prods. Liab. Litig.*,
  No. 8:04-md-2523-T-30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012).......................... 12

*In re: Baycol Prods. Liab. Litig.*,
  MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002).................................................... 12

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
  No. Civ. A. 98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999)............................................ 12

*In re: Howmedica Osteonics Corp.*,
  867 F.3d 390 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018) ............................................ 8

*In re Johnson & Johnson Cases*,
  No. 2:15-cv-05311-JGB, 2015 WL 5050543 (C.D. Cal. Aug. 24, 2015)....................... 16, 17, 18

*In re: Rezulin Prods. Liab. Litig.*,
  168 F. Supp. 2d 136 (S.D.N.Y. 2001) ...................................................................................... 8, 12

*In re Silica Prods. Liab. Litig.*,
  398 F. Supp. 2d 563 (S.D. Tex. 2005) ........................................................................................ 12

*Jenkins v. Commonwealth Land Title Ins. Co.*,
  95 F.3d 791 (9th Cir. 1996)....................................................................................................... 6, 7

*Jones v. CMM of Indiana, LLC*,
  No. Civ.A. 05-4039, 2006 WL 120085 (E.D. La. Jan. 17, 2006) ............................................... 16

*Joseph v. Baxter Int'l, Inc.*,
  614 F. Supp. 2d 868 (N.D. Ohio 2009) ........................................................................................ 9

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
  346 F.3d 1190 (9th Cir. 2003) ..................................................................................................... 13

*Kirkland v. Legion Ins. Co.*,
  343 F.3d 1135 (9th Cir. 2003)........................................................................................................ 7

*Koehler v. Dodwell*,
  152 F.3d 304 (4th Cir. 1998) ......................................................................................................... 8

*Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  CV-15-106-GF-BMM, 2016 WL 81234 (D. Mont. Jan. 7, 2016) ............................................ 4, 5

*LeBlanc v. Cleveland*,
  248 F.3d 95 (2d Cir. 2001) .......................................................................................................... 12

*Lewis v. Langenfelder & Son, Jr., Inc.*,
  Nos. 2:01cv804 & 2:02cv622, 2003 WL 23957117, 2004 A.M.C. 2250 (E.D. Va.
  Dec. 19, 2003)............................................................................................................................... 16

*Lively v. Wild Oats Mkts., Inc.*,
  456 F.3d 933 (9th Cir. 2006)........................................................................................................ 15

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND THE *BAUM* CASE
3:16-md-2741-VC & 3:19-cv-01018-VC

*Maniar v. FDIC*,
    979 F.2d 782 (9th Cir. 1992)..................................................................................................... 13

*Martinez v. McKesson Corp.*,
    No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) .................................... 5

*Mayfield v. London Women's Care, PLLC*,
    No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015)...................................................... 8

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001)............................................................................................... 4, 9

*Mullin v. Gen. Motors LLC*,
    No. CV 15-7668-DMG, 2016 WL 94235 (C.D. Cal. Jan. 7, 2016)............................................. 17

*Nguyen v. CTS Elecs. Mfg. Solutions Inc.*,
    301 F.R.D. 337 (N.D. Cal. 2014)....................................................................................... 6, 7, 11

*Rubio v. Monsanto Co.*,
    181 F. Supp. 3d 746 (C.D. Cal. 2016) ..................................................................................... 12

*Sams v. Beech Aircraft Corp.*,
    625 F.2d 273 (9th Cir. 1980)...................................................................................................... 7

*Self v. Gen. Motors Corp.*,
    588 F.2d 655 (9th Cir. 1978)............................................................................................... 17, 18

*Skelton v. Johnson & Johnson*,
    No. CV 15-5385 PA (Ex), 2015 WL 13236734 (C.D. Cal. Oct. 16, 2015) ............................... 17

*Smith v. Mylan Inc.*,
    761 F.3d 1042 (9th Cir. 2014).................................................................................................. 13

*Sullivan v. Calvert Mem'l Hosp.*,
    117 F. Supp. 3d 702 (D. Md. 2015) ........................................................................................... 8

*Sync Labs LLC v. Fusion Mfg.*,
    Civ. No. 11-3671 (WHW)(CLW), 2017 WL 2577543 (D.N.J. June 13, 2017),
    *appeal dismissed*, 2017 WL 6879991 (3d Cir. Aug. 9, 2017) ...................................................... 15

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-cv-04984-JST, 2017 WL 2840272 (N.D. Cal. June 30, 2017) ....................................... 11

*Tucker v. McKesson Corp.*,
    No. C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011)........................................... 5

*Unterleitner v. BASF Catalysts LLC*,
    No. 16-cv-00818-JSC, 2016 WL 805167 (N.D. Cal. Mar. 2, 2016)..................................... 17, 18

*Visendi v. Bank of Am., N.A.*,
    733 F.3d 863 (9th Cir. 2013)...................................................................................................... 7

*Vu v. Ortho-McNeil Pharm., Inc.*,
    602 F. Supp. 2d 1151 (N.D. Cal. 2009) ..................................................................................... 6

*Wade v. Johnson & Johnson*,
    54 F. Supp. 3d 1247 (W.D. Okla. 2014) ........................................................................ 13, 14, 18

*Whitcomb v. Smithson*,
    175 U.S. 635 (1900) ........................................................................................................................... 17

**STATUTES AND RULES**

28 U.S.C. § 1441 ........................................................................................................................ 4, 9, 19

28 U.S.C. § 1446 ................................................................................................................... 3, 9, 13, 14

28 U.S.C. § 1447(c) ............................................................................................................... 13, 15, 16

Fed. R. Civ. P. 19 ................................................................................................................................ 12

Fed. R. Civ. P. 20 ....................................................................................................................... 8, 11

Fed. R. Civ. P. 21 ....................................................................................................................... 1, 7, 8

**OTHER AUTHORITIES**

7 Wright & Miller, *et al.*,
    *Federal Practice and Procedure* § 1685 (3d ed.) ...................................................................... 8, 9

**ISSUES TO BE DECIDED**

Ten of the plaintiffs at issue here ("the Removed Plaintiffs") fraudulently joined claims against California defendants to defeat federal jurisdiction. Plaintiffs initially sought to evade removal by filing mass complaints, including numerous unrelated plaintiffs and two local distributor defendants. But an important development in state court has now made clear that federal jurisdiction exists over the Removed Plaintiffs' claims. The state court ordered the multi-plaintiff complaint severed into single-plaintiff complaints, which precluded the Removed Plaintiffs – who had not been exposed to Roundup®-branded herbicides distributed by the local defendants – from piggy-backing on other plaintiffs' claims against the non-diverse parties and which allows for diversity jurisdiction to be assessed on a plaintiff-by-plaintiff basis. In light of this development, Monsanto Company ("Monsanto") properly removed their claims to this Court.

In their Motion to Remand, ECF No. 17, plaintiffs do not dispute these points. Instead, they argue that because the state court (at plaintiffs' request) provided plaintiffs an extension of time to file individual complaints, their claims remain joined for jurisdictional purposes and Monsanto's removal was premature. These arguments are unavailing and would require this Court to disregard the plain language and intent of the state court's severance order. Contrary to plaintiffs' arguments, the Court need not find fraudulent misjoinder here because the state court has *already* ordered the cases severed. This Court need only implement that order, as it plainly has authority to do under Federal Rule of Civil Procedure 21. Moreover, Monsanto properly filed its Notice of Removal within 30 days of the severance order and within one year of the filing of the Complaint, so plaintiffs' arguments about the timing of Monsanto's removal lack merit. Plaintiffs' reliance on the "voluntary-involuntary" rule fails as well because plaintiffs waived that argument by filing their Motion to Remand more than 30 days after Monsanto filed its Notice of Removal and because, even absent plaintiffs' waiver, the voluntary-involuntary rule would not apply here, for several reasons discussed below. Finally, plaintiffs' argument that the California citizenship of fictitiously named (Doe) defendants destroys diversity is specifically foreclosed by a provision in the removal statute that requires courts to disregard the citizenship of Doe defendants in assessing diversity jurisdiction.

- 1 -

1    In sum, Monsanto has satisfied its burden of establishing that removal is proper for the

2    Removed Plaintiffs' claims, so the Court should deny the Motion to Remand in part and retain

3    jurisdiction over those claims.

4                    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

5    Twenty unrelated plaintiffs commenced this lawsuit in the Superior Court of the State of

6    California for San Francisco County by filing a Complaint, captioned *Baum, et al. v. Monsanto*

7    *Company, et al.*, Case No. CGC-18-570508, on October 12, 2018 (the "State Court Action").

8    Notice of Removal ¶ 5, ECF No. 1.

9    Plaintiffs sued Monsanto and two California-based companies, Wilbur-Ellis Company LLC

10   ("Wilbur-Ellis Company") and Wilbur-Ellis Feed, LLC ("Wilbur-Ellis Feed").  Notice of Removal

11   ¶ 6.  The Complaint asserts various product liability claims against all three defendants (strict

12   liability, negligence) and seeks damages for non-Hodgkin's lymphoma allegedly caused by

13   Monsanto's Roundup®-branded herbicides, which plaintiffs claim were distributed by Wilbur-Ellis

14   Company and Wilbur-Ellis Feed.  *Id*. ¶ 7.  The Complaint asserts other claims only against

15   Monsanto (fraud, breach of express and implied warranties).  *Id*.

16   The Complaint lumps Wilbur-Ellis Company and Wilbur-Ellis Feed together and refers to

17   them collectively as "Wilbur-Ellis."  Compl. ¶¶ 89-90, ECF No. 1-1.  The Complaint alleges that

18   "Wilbur-Ellis is a main distributor of Roundup®, and, ***upon information and belief***, distributed

19   Roundup® used by Plaintiffs."  *Id*. ¶ 90 (emphasis added); *see also id*. ¶ 168 ("***On information and***

20   ***belief***, Wilbur-Ellis was one of the distributors providing Roundup® and other glyphosate-

21   containing products actually used by the Plaintiffs." (emphasis added)).

22   The State Court Action was added to a Judicial Council Coordinated Proceeding ("JCCP") –

23   *Roundup Products Cases*, JCCP No. 4953, in the Superior Court of the State of California for

24   Alameda County – and was transferred to that court for coordinated proceedings with other lawsuits

25   involving personal injuries allegedly caused by Roundup®-branded herbicides.  Notice of Removal

26   ¶ 9.  The Honorable Winifred Smith is presiding over JCCP No. 4953.  *Id*.

27   Each of the Removed Plaintiffs admitted in the Complaint that their exposures to Roundup®-

28

branded herbicides involved residential/personal use – and not work-related use – of the products. As set forth below, Wilbur-Ellis Feed has never distributed *any* Roundup®-branded herbicides, and Wilbur-Ellis Company has never distributed Roundup®-branded herbicides for residential use.  The remaining plaintiffs did not allege solely personal/residential use of Roundup®-branded herbicides. The other two markets for Roundup®-branded herbicides – the agricultural market and the industrial, turf, and ornamental ("IT&O") market – have been serviced historically by Wilbur-Ellis Company.

On January 25, 2019, Judge Smith issued an order requiring, *inter alia*, severance of previously filed multi-plaintiff complaints.  January 25, 2019 Order (hereinafter, "JCCP Severance Order") (Request for Judicial Notice ("RJN"), Exhibit 1).[1]   In response to plaintiffs' request based on claimed administrative burdens, Judge Smith allowed plaintiffs substantial additional time to effectuate the JCCP Severance Order through the filing of individual complaints.[2]

Monsanto timely filed its Notice of Removal of this multi-plaintiff complaint on February 25, 2019, within 30 days after the JCCP Severance Order was filed.  Monsanto chose not to wait for the filing of individual complaints required under the JCCP Severance Order because plaintiffs would no doubt argue that further delay would render those removals too late under the 30-day deadline set forth in 28 U.S.C. § 1446(b)(3).

On April 23, 2019, more than 30 days after Monsanto filed its Notice of Removal, Plaintiffs filed their Motion to Remand.

As discussed below, this Court should now effectuate severance of these unrelated claims,

---

[1] In Paragraph 1 of the JCCP Severance Order, Judge Smith cited with approval two misjoinder/severance orders that were issued in the summer of 2017 in two other Roundup® multi-plaintiff lawsuits (filed in Alameda County Superior Court before JCCP No. 4953 was created) – a July 14, 2017 Order issued in *Billings v. Monsanto Company* (RJN, Exhibit 2) and a July 26, 2017 Order issued in *Woodbury v. Monsanto Company* (RJN, Exhibit 3).  In both orders, the Alameda County Superior Court sustained Monsanto's demurrers to the complaints for misjoinder of plaintiffs and held that plaintiffs "are not properly joined under CCP 378(a)(1)."  *Billings* Order at 3; *Woodbury* Order at 3.

[2] *Compare* JCCP Severance Order ¶ 2 *with* Judge Smith's Tentative Ruling ¶ 2 (RJN, Exhibit 4); *see* January 25, 2019 Hr'g Tr. 10:6-13:6 (plaintiffs' counsel discussing administrative burdens that would be imposed by tentative ruling and requesting that Judge Smith give plaintiffs six months to file single-plaintiff complaints) (Declaration of Martin Calhoun, Exhibit 1).

sustain federal jurisdiction over the claims of the ten Removed Plaintiffs, and remand the claims of

the remaining plaintiffs for whom federal jurisdiction has not been established at this time.

## ARGUMENT

**I.     Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse Defendants Were Fraudulently Joined.**

Monsanto removed this lawsuit based on the ten Removed Plaintiffs' fraudulent joinder of

the non-diverse defendants (Wilbur-Ellis Company and Wilbur-Ellis Feed).  An "exception to the

requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Fraudulent joinder applies

when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is

obvious according to the settled rules of the state." *Id.* (quotation marks omitted).  The fraudulently

joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the

court has jurisdiction based on diversity of citizenship. *Id.*  Fraudulent joinder also renders the so-

called "forum defendant rule" inapplicable because that statutory provision applies only to

"properly joined" defendants.  28 U.S.C. § 1441(b)(2); *see, e.g.*, *Leaphart v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh.*, CV-15-106-GF-BMM, 2016 WL 81234, at *1 (D. Mont. Jan. 7, 2016).

As established in Monsanto's Notice of Removal and the supporting declarations, the

Removed Plaintiffs sued the in-forum defendants Wilbur-Ellis Company and Wilbur-Ellis Feed in

an attempt to prevent removal due to lack of diversity jurisdiction and/or due to the forum defendant

rule.  However, each of the ten Removed Plaintiffs have admitted in the Complaint that they used

Roundup®-branded herbicides for personal/residential use and not for work-related reasons.  Notice

of Removal ¶ 33 (citing Complaint ¶¶ 31-32, 35, 38, 48-49, 52-53, 72, 75-76, 79-80, 83, 86).

Because neither of the in-forum defendants ever distributed Roundup®-branded herbicides for

personal/residential use, the Removed Plaintiffs fail to state viable causes of action against those

defendants and cannot rely on those defendants to defeat diversity jurisdiction.  Tellingly, plaintiffs

1    offer no substantive argument to the contrary.[3]

2          Wilbur-Ellis Company is (and has been) in the business of distributing and selling only

3    certain categories of Monsanto glyphosate-based herbicide products – namely, herbicides designed

4    for the agricultural market and herbicides designed for the IT&O/professional market.  Notice of

5    Removal ¶ 29 (citing Declaration of Steven Gould ("Gould Declaration") ¶ 6, ECF No. 1-5;

6    Declaration of Scott Hushbeck ("Hushbeck Declaration") ¶ 7, ECF No. 1-4).  Wilbur-Ellis

7    Company does not sell (and has never sold) Monsanto glyphosate-containing herbicides that have

8    been created and designed for the residential-lawn-and-garden market.  *Id.* ¶ 30 (citing Gould Decl.

9    ¶ 6; Hushbeck Decl. ¶ 7).  For example, Wilbur-Ellis Company has never played any role in the

10   chain of distribution leading to Monsanto's glyphosate-based, lawn-and-garden herbicides being

11   sold at national retail stores like Home Depot, Lowe's, Target, Walmart, Costco, or Ace Hardware.

12   *Id.* (citing Hushbeck Decl. ¶ 7; Gould Decl. ¶ 6).  Wilbur-Ellis Company also has never designed or

13   manufactured Monsanto's glyphosate-based herbicides.  *Id.* ¶ 32 (citing Hushbeck Decl. ¶ 9; Gould

14   Decl. ¶ 8).

15         Thus, the Removed Plaintiffs do not have any viable claims against Wilbur-Ellis Company.

16   *See, e.g.*, *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal.

17   Apr. 7, 2016) (holding that California defendant was fraudulently joined because it did not

18   manufacture Mirena and did not distribute ***plaintiff's*** Mirena); *Tucker v. McKesson Corp.*, No.

19   C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) (holding that California defendant

20   was fraudulently joined because it did not distribute morphine tablets to pharmacy where decedent

21   obtained morphine tablets at issue in lawsuit); *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS

22   DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) (holding that California defendant was

23

---

24   [3] *See* Mem. of Points and Authorities in Support of Pls.' Mot. to Remand ("Remand
     Memorandum") at 10, ECF No. 18 (declining to contest Monsanto's fraudulent joinder argument

25   regarding Wilbur-Ellis Feed and stating that, "even if Wilbur-Ellis Feed LLC has been named
     erroneously in this action, the presence of Wilbur-Ellis Company LLC in the case defies complete

26   diversity of citizenship in the case"); *id.* (stating that, "[e]ven if some of the Plaintiffs did not buy
     products distributed by Wilbur-Ellis Company, Wilbur-Ellis Company distributed the Roundup®

27   products used" by the plaintiffs for whom Monsanto cannot make a fraudulent joinder showing on
     the current record).

28

1    fraudulently joined because plaintiff alleged merely that defendant was a major distributor of Vioxx

2    without connecting defendant to plaintiff's injuries).

3            Plaintiffs likewise have no viable claims against Wilbur-Ellis Feed because that company

4    has never designed, manufactured, distributed, or sold Roundup®-branded herbicides or any other

5    herbicides in *any* market.  Notice of Removal ¶ 26 (citing Declaration of George Arkoosh,

6    ("Arkoosh Declaration") ¶ 7, ECF No. 1-2); *see Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d

7    1151, 1154-55 (N.D. Cal. 2009) (holding that California defendant was fraudulently joined because

8    she did not market or distribute Children's Tylenol Plus Multi-Symptom Cold medicine); *see also*

9    *supra* pages 5-6 (citing fraudulent joinder cases).  Rather, Wilbur-Ellis Feed is (and has been) in the

10   business of ensuring that animals receive customized, high-quality, dependable nutrients.  Notice of

11   Removal ¶ 26 (citing Arkoosh Decl. ¶ 7).  Moreover, Wilbur-Ellis Feed did not come into existence

12   as a corporate entity until September 2015, Notice of Removal ¶ 25 (citing Arkoosh Decl. ¶ 7), well

13   after the alleged exposure period of four of the Removed Plaintiffs, Kathryn Dufore, Terrence

14   O'Neill, Anita Richardson, and Lee Rosichan, *id*. (citing Compl. ¶¶ 35, 72, 75-76, 79-80).

15           Accordingly, the ten Removed Plaintiffs fraudulently joined both California defendants.

16   **II.    Following The JCCP Court's Severance Order, The Removed Plaintiffs Cannot Rely
17   On The Claims Of The Severed Plaintiffs To Defeat Diversity Jurisdiction.**

18           The Removed Plaintiffs try to defeat removal by asking this Court to ignore the JCCP

19   Severance Order.  This Court should not do so.  It is well established that, "'[a]fter removal, the

20   federal court takes the case up where the State court left it off.'"  *Carvalho v. Equifax Info. Servs.,*

21   *LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S.

22   423, 436 (1974)); *see Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir.

23   1996) (quoting *Granny Goose Foods*, 415 U.S. at 436).  The federal court "treats everything that

24   occurred in the state court as if it had taken place in federal court," *Carvalho*, 629 F.3d at 887

25   (quotation marks omitted), so "an order entered by a state court should be treated as though it had

26   been validly rendered in the federal proceeding," *id*. (quotation marks omitted); *Nguyen v. CTS*

27   *Elecs. Mfg. Solutions Inc.*, 301 F.R.D. 337, 345 (N.D. Cal. 2014) ("Following this precedent

28

[*Granny Goose Foods*, *Carvalho*,  *Jenkins*, and other cases], courts in this Circuit have routinely adopted state court rulings on particular issues when those issues were subsequently raised again after removal to federal court.").

Here, Judge Smith issued the JCCP Severance Order, which requires that multi-plaintiff lawsuits be turned into single-plaintiff lawsuits by dismissing "all plaintiffs except one per case" and requiring each of the other plaintiffs to file his or her "own individual complaint."  JCCP Severance Order ¶ 2.  This is completely consistent with what the Ninth Circuit has recognized as the remedy for misjoinder.  *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 871 (9th Cir. 2013) ("courts can remedy misjoinder by dismissing the claims of all but the first named plaintiff without prejudice to the filing of individual actions"); *see also Nguyen*, 301 F.R.D. at 341 (stating that, when a court severs misjoined plaintiffs, "the court may generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs").  Moreover, as discussed above, when Judge Smith ordered the filing of single-plaintiff complaints in this part of the JCCP Severance Order, she cited with approval certain misjoinder/severance rulings that had been issued in other multi-plaintiff Roundup® lawsuits in 2017, before JCCP No. 4953 was created.  *See supra* note 1.

Plaintiffs seek to leverage Judge Smith's accommodation to their request for additional time to file individual complaints to argue that this Court must treat the plaintiffs' claims as properly joined for purposes of removal.  But federal courts repeatedly have stated that they are authorized to use Rule 21 to perfect their diversity jurisdiction by dropping a nondiverse, dispensable party, and that is particularly appropriate here given the state court's severance ruling.[4]  *See Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) ("[Rule 21] is viewed as a grant of 'discretionary power [to the federal court] to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19 [of the Federal Rules of Civil Procedure].'" (quoting *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980)));

---

[4] Rule 21 states:  "On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."

*In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (discussing Rule 21 and stating that, "[i]n some cases, severance clearly will be warranted to preserve federal diversity jurisdiction"), *cert. denied*, 138 S. Ct. 1288 (2018); *Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir. 1998) (construing Rule 21 and stating that "a party or claim whose presence deprives the court of jurisdiction may be dropped or severed from the action"); *Cuviello v. Feld Entm't, Inc.*, 304 F.R.D. 585, 593-94 (N.D. Cal. 2015) (relying on Rule 21 to order dismissal without prejudice of dispensable nondiverse party to "perfect [the court's] diversity jurisdiction"); *see also* 7 Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1685 (3d ed.) ("Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under Rule 19.").

Even absent a state court severance ruling, district courts repeatedly have relied on Rule 21 to sever nondiverse parties in removed cases and assert diversity jurisdiction over the remaining parties.  For example, one court denied a remand motion, holding that a diversity-destroying plaintiff "was improvidently joined" and dismissing that plaintiff "as a misjoined party under Rule 21."  *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 490 (E.D. Va. 2003).  Likewise, a district court presiding over products liability cases in multidistrict litigation proceedings relied on Federal Rule of Civil Procedure 20 to hold that diversity-destroying plaintiffs were misjoined and Rule 21 to sever those plaintiffs from their diverse co-plaintiffs, thereby "preserv[ing] the defendants' right to removal" with respect to the claims asserted by the diverse plaintiffs.  *In re: Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144-48, 153 (S.D.N.Y. 2001).  Other district courts have exercised their Rule 21 discretion in similar fashion to retain jurisdiction over certain parties and claims while severing other parties and claims.  *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 704, 707 (D. Md. 2015) (stating that "[t]he court has discretion, under Federal Rule of Civil Procedure 21, to drop nondiverse parties to achieve complete diversity"; severing and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendants); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *3, 5-6 (E.D. Ky. May 28, 2015) (stating that "[i]t is well-settled

that Rule 21 can be used to sever a dispensable, nondiverse party in order to preserve federal jurisdiction"; severing and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendant); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010) (stating that "district courts have considerable discretion to sever parties under Rule 21"; severing and remanding claims asserted against nondiverse defendant and retain jurisdiction over remaining claims); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 872-75 (N.D. Ohio 2009) (ordering severance based on Rule 21 and remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims asserted against removing defendant); *see also* 7 Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1685 (3d ed.) (stating that "courts also have used Rule 21 to drop a party who was joined in an action for the purpose of preventing removal to a federal court").

Here, when plaintiffs are properly severed in accordance with the JCCP Severance Order, complete diversity of citizenship exists for each of the ten Removed Plaintiff's lawsuits, *see* Notice of Removal ¶¶ 17-25, 39, because those plaintiffs fraudulently joined the two California defendants, which means that they must be disregarded, *see Morris*, 236 F.3d at 1067; 28 U.S.C. § 1441(b)(2). Moreover, Monsanto established that plaintiffs seek damages in excess of $75,000, exclusive of interest and costs, *see* Notice of Removal ¶ 36 – a showing that plaintiffs do not dispute – so the jurisdictional amount-in-controversy requirement is also satisfied here.  Thus, the Court should retain jurisdiction over the Removed Plaintiffs.[5]

## III.   The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-Joinder-Based Removal Lack Merit.

The Removed Plaintiffs make various arguments in an effort to persuade this Court to countenance their fraudulent joinder of Wilbur-Ellis Company and Wilbur-Ellis Feed.  However,

---

[5] Wilbur-Ellis Company and Wilbur-Ellis Feed are not required to consent to removal because those defendants have not been "properly joined." 28 U.S.C. § 1446(b)(2)(A).  In any event, they both have consented to removal.  Notice of Removal ¶ 43 (citing Hushbeck Decl. ¶ 10; Arkoosh Decl. ¶ 8).  By requesting and/or providing this consent, no defendant concedes that either Wilbur-Ellis Company or Wilbur-Ellis Feed is properly joined as a defendant in this lawsuit.

- 9 -

1  their arguments lack merit, as discussed below.

2  **A. The JCCP Severance Order Precludes Plaintiffs' Argument that Plaintiffs are not
3  Misjoined.**

4  Remarkably, notwithstanding the JCCP Severance Order, the Removed Plaintiffs assert that

5  their personal injury claims "are not misjoined," Remand Mem. at 7, with those of the other

6  plaintiffs, so that the Removed Plaintiffs can piggy-back on those plaintiffs' claims against the local

7  defendants Wilbur-Ellis Company and Wilbur-Ellis Feed.  However, as discussed above, the JCCP

8  Severance Order has already ordered the plaintiffs' claims severed, citing with approval prior

9  misjoinder/severance orders issued in 2017 in two other Roundup® lawsuits (each of which holding

10  that plaintiffs "***are not properly joined under CCP 378(a)(1)***.").  *Billings* Order at 3 (emphasis

11  added); *Woodbury* Order at 3 (emphasis added).  Both of those earlier orders held that the claims of

12  the different plaintiffs "do not belong together because they do not arise from the same transaction

13  or occurrence or series of transactions or occurrences," as required by § 378(a)(1) (California's

14  permissive joinder provision).  *Billings* Order at 2; *Woodbury* Order at 2.

15  As shown by those orders, Monsanto repeatedly sought severance of multi-plaintiff

16  complaints on misjoinder grounds in the Alameda County Roundup® litigation, and judges

17  repeatedly ordered severance.  When the Roundup® litigation was re-assigned to Judge Petrou,

18  plaintiffs tried to avoid the impact of the prior severance rulings, but Monsanto reiterated its prior

19  objections to multi-plaintiff complaints and sought severance.  *See* October 26, 2017 Case

20  Management Conference Statement (RJN, Exhibit 5).  Rejecting plaintiffs' arguments, Judge Petrou

21  issued an order stating that the prior severance orders "remain in full force and effect" and directing

22  plaintiffs in another multi-plaintiff Roundup® lawsuit to "file new, separate single-plaintiff

23  complaints."  November 9, 2017 Order at 1, 2 (RJN, Exhibit 6).  During much of the time that

24  Judge Petrou was assigned to the JCCP, she focused on the threshold issue of whether plaintiffs'

25  experts had admissible general causation opinions.  Instead of the parties engaging in piece-meal

26  briefing as various lawsuits were being added to the JCCP, Judge Petrou issued a case management

27  order that deferred any obligation for Monsanto to file responses of any type – including answers,

28

- 10 -

1   motions, or demurrers – to complaints in "multi-plaintiff lawsuits that have been or will be added to

2   JCCP 4953 . . . until a date to be determined by the Court."  September 6, 2018 Order (RJN, Exhibit

3   7).  The JCCP Severance Order was a culmination of repeated prior severance rulings issued in the

4   Alameda County Roundup® litigation in response to Monsanto's repeated objections to multi-

5   plaintiff complaints.  Plaintiffs' suggestions to the contrary are misleading and fail to take into

6   account the history of the Alameda County Roundup® litigation that Judge Smith was aware of

7   when she issued the JCCP Severance Order.

8        Moreover, the JCCP Severance Order already requires plaintiffs to file separate complaints,

9   so there is no need for this Court to revisit that ruling.  Judge Koh's ruling under similar

10  circumstances in *Nguyen* is instructive.  In that case, a California state court issued a severance and

11  dismissal ruling, but plaintiffs filed an amended complaint that "did nothing to address the issue of

12  misjoinder of Plaintiffs."  *Nguyen*, 301 F.R.D. at 344.  After removal, Judge Koh declined to revisit

13  the misjoinder ruling issued in state court and gave effect to the severance order.  *See id.* ("The

14  Court need not reach or analyze the merits of [Defendant's] motion to sever because this Court

15  gives effect to the state court's decision to sustain [Defendant's] demurrer to sever Plaintiffs'

16  claims.").  As Judge Koh explained, her ruling to "give[] effect to the state court's decision to sever

17  Plaintiffs' claims" was based on "principles of comity" and the need to "prevent[] . . . inconsistent

18  rulings."  *Id.* at 345.  Likewise, this Court should give effect to the JCCP Severance Order.

19       Yet in any case, severance would also be proper under federal law.  The "single transaction

20  or occurrence requirement [of Rule 20] is not met where plaintiffs would have to prove their claims

21  or defendants would have to litigate their defenses on an individualized basis."  *Corley v. Google,*

22  *Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. 2016); *see Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-

23  JST, 2017 WL 2840272, at *2 (N.D. Cal. June 30, 2017) (quoting *Corley*, 316 F.R.D. at 284).  In

24  Roundup® lawsuits, as this Court well knows, each plaintiff is required to prove his claims on an

25  individualized basis and Monsanto is required to present its defenses on an individualized basis.

26  Each Roundup® case involves a separate set of facts and circumstances, including different

27  durations and amounts of exposure, different sets of diagnoses and treating physicians, and different

28

- 11 -

potential alternative causes.  "Joinder 'of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims.'"  *In re Rezulin*, 168 F. Supp. 2d at 146 (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999)).  Thus, federal courts – including courts presiding over multidistrict litigation proceedings – repeatedly have ordered severance of multi-plaintiff complaints filed in products liability cases.[6]

Finally, the JCCP Severance Order is also consistent with Rule 19 because each plaintiff clearly is not an indispensable party for any other plaintiff's claims.  As this Court stated, "[a] party is indispensable when, in equity and good conscience, the action should not be allowed to proceed without that party."  *Cuviello*, 304 F.R.D. at 593 (quotation marks omitted).  Here, as shown by the JCCP Severance Order, each single-plaintiff lawsuit can proceed separately without any other plaintiff's claims.  Each plaintiff's rights "are not inexorably intertwined" with any other plaintiff's rights, and each plaintiff can "recover completely" in his own lawsuit in the absence of any other plaintiff, which makes each plaintiff dispensable to each other plaintiff's lawsuit.  *LeBlanc v. Cleveland*, 248 F.3d 95, 98 (2d Cir. 2001).

## B.  Plaintiffs' Arguments about the Timing of Monsanto's Removal Lack Merit.

Plaintiffs complain that Monsanto's Notice of Removal was "untimely," Remand Mem. at 13, and then assert that Monsanto's removal was "premature," *id*. at 14.  It was neither.

*First*, plaintiffs waived their untimeliness objection by failing to file a timely remand motion within 30 days after Monsanto filed its Notice of Removal.  "A motion to remand the case on the

---

[6] *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746 (C.D. Cal. 2016) (severing plaintiffs in Roundup® lawsuit); *Bugman v. Chemlawn Corp.*, No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa. June 17, 1988) (severing plaintiffs alleging injuries from exposure to Chemlawn pesticides); *see also, e.g.*, *Boles v. Eli Lilly & Co.*, No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015); *Heather v. Medtronic Inc.*, No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014); *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK (AJWx), 2014 WL 3056081 (C.D. Cal. June 25, 2014); *In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012); *Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex. 2005); *In re: Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002).

basis of *any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c) (emphasis added). As the Ninth Circuit has held, the 30-day deadline set by 28 U.S.C. § 1446(b) for a defendant to file a notice of removal is merely a procedural requirement that does not affect a court's subject matter jurisdiction. *See Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014); *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190 (9th Cir. 2003); *see also Maniar v. FDIC*, 979 F.2d 782, 784 (9th Cir. 1992) (holding that "untimely removal is a procedural defect and not jurisdictional"). Thus, plaintiffs' objection that Monsanto's Notice of Removal was untimely is not a jurisdictional objection and has been waived by plaintiffs' failure to file their Motion to Remand within 30 days after Monsanto filed its Notice of Removal. *See, e.g.*, *Kelton Arms*, 346 F.3d at 1192-93 (holding that objections to procedural requirements, including § 1446(b) 30-day deadline for defendant to file removal notice, can be waived if plaintiff does not file timely remand motion as required by § 1447(c)).

Even if the Court were to hold that plaintiffs did not waive the untimeliness argument, it lacks merit. This case only became removable upon entry of the JCCP Severance Order on January 25, 2019, when the claims of the Removed Plaintiffs were severed from those of the remaining plaintiffs. It was only then that the Removed Plaintiffs became unable to rely on the potentially viable claims against Wilbur-Ellis Company brought by the remaining plaintiffs (whose claims allegedly involve use of Roundup®-branded herbicides other than exclusively personal/residential use) to avoid diversity jurisdiction. Pursuant to § 1446(b)(3), Monsanto thereafter had 30 days to file the Notice of Removal, which it did.

The JCCP Severance Order falls squarely within the scope of the "order or other paper" language in § 1446(b)(3). Plaintiffs' suggestion that Monsanto was required to wait for a final order to remove is without merit. As one court stated, the "statutory language itself does not require that the 'order or other paper' be a final appealable order," so the court declined to "read a term into the statute that does not exist." *Wade v. Johnson & Johnson*, 54 F. Supp. 3d 1247, 1250 (W.D. Okla. 2014). After noting that the removal statute "does not expressly exclude interlocutory orders from

its scope," *id.*, the *Wade* court explained why such a restriction it is inappropriate and contrary to the language of the statute:

> ***A defendant would often lose the right to remove if it waited until the court issued a final appealable order.*** To require a final, appealable order before removability may first be ascertained runs contrary to the language of the statute itself. The statute's language that a notice of removal may be filed within 30 days after receipt of, among other things, an order or other paper from which "it may first be ascertained that the case is one which is or has become removable[,]" is not consistent with the requirement that the "order or other paper" be a final, appealable order.

*Id.* (emphasis added). The same reasoning applies here because Monsanto would have lost the right to remove if it had waited for a final appealable order.

**Second**, Monsanto's removal was not premature. The JCCP Severance Order is a self-executing, formal court order that did not require any further action by Judge Smith to go into effect.[7] Moreover, because the JCCP Severance Order was filed on January 25, 2019, Monsanto could not wait until after the courtesy extension of time that Judge Smith gave plaintiffs to file individual complaints without potentially running afoul of the 30-day deadline in 28 U.S.C. § 1446(b)(3).[8]

Plaintiffs would impose upon Monsanto the Hobson's choice of waiting for plaintiffs to comply with the JCCP Severance Order before filing its removal notices – and risk losing the important right of removal on timeliness grounds – or filing a removal notice earlier but not being

---

[7] The distinction between a self-executing formal court order requiring no further action by a judge and something issued by a court that requires further judicial action to become a formal order is illustrated by the state court's "letter opinion" at issue in *Fehlman v. McCaffrey*, No. CV-10-122-ST, 2010 WL 1959534, at *3 (D. Or. Apr. 14, 2010) (magistrate judge report and recommendation), *adopted by* 2010 WL 1977950 (D. Or. May 12, 2010). In that case, the court held that the letter opinion was not an "order" within the meaning of § 1446(b) because the letter opinion "expressly warned that it was not a formal order by directing defendants' counsel to 'prepare an appropriate form of order,'" *id.* at *3, and because the state court judge subsequently "sent another letter to the parties . . ., which again emphasized that an order needed to be entered," *id.* at *4. Here, by contrast, Judge Smith did not need to take any further action to turn the JCCP Severance Order into a formal court order.

[8] Plaintiffs assert that Monsanto made an argument based on the one-year-limitation-on-removal provision in 28 U.S.C. § 1446(c), *see* Remand Mem. at 14-15 (citing Notice of Removal ¶ 14), but their assertion is false. In this case, Monsanto did not make a § 1446(c) argument but instead addressed the ***30-day*** removal deadline set by 28 U.S.C. § 1446(b)(3). Notice of Removal ¶ 14.

- 14 -

permitted to rely on the JCCP Severance Order.  The Court should not countenance such

gamesmanship.  Plaintiffs requested and received an administrative accommodation from Judge

Smith, which gave them a substantial amount of time – more than five months – to carry out the

dismissals required by the JCCP Severance Order.  *See supra* page 3 & note 2.  They should not be

allowed to take advantage of that extension to pervert Judge Smith's ruling so as to claim that

Monsanto's Notice of Removal was premature.

### C. Plaintiffs' Reliance on the Voluntary-Involuntary Rule is Precluded by § 1447(c) and Otherwise Lacks Merit.

Plaintiffs' argument that Monsanto's removal violated the voluntary-involuntary rule, *see*

Remand Mem. at 8-9, fails for several reasons.

*First*, plaintiffs waived the voluntary-involuntary-rule argument by failing to file a timely

remand motion.  As discussed above, § 1447(c) requires that a motion to remand a case for any

defect other than lack of subject matter jurisdiction must be filed within 30 days after the defendant

filed its removal notice, so an untimely remand motion waives any arguments involving procedural

defects.  As courts repeatedly have held, violation of the voluntary-involuntary rule is a procedural

defect that is waived if that argument is not asserted in a timely remand motion.  *See Sync Labs LLC*

*v. Fusion Mfg.*, Civ. No. 11-3671 (WHW)(CLW), 2017 WL 2577543, at *2 (D.N.J. June 13, 2017)

("[T]he voluntary-involuntary rule plays no role in the determination of this [remand] motion, as

removal in violation of the voluntary-involuntary rule is a procedural defect, which must be raised

within thirty days of removal."), *appeal dismissed*, 2017 WL 6879991 (3d Cir. Aug. 9, 2017);

*Cornell v. That Certain Instrument Entitled "Deed of Trust"*, No. CIV. 2:12-330 WBS CKD, 2013

WL 5719524, at *2 n.4 (E.D. Cal. Oct. 18, 2013) (holding that § 1447(c) precluded plaintiff from

objecting that removal violated voluntary-involuntary rule because plaintiff's remand motion was

filed more than 30 days after removal notice was filed (citing *Lively v. Wild Oats Mkts., Inc.*, 456

F.3d 933, 942 (9th Cir. 2006) "(holding that a procedural defect in removal 'constitutes a waivable

non-jurisdictional defect subject to the 30-day time limit imposed by § 1447(c)')")); *Hoffman v.*

*Metro. Ins. & Annuity Co.*, No. 12-2303, 2012 WL 3185953, at *5 (D.N.J. Aug. 2, 2012) (holding

1    that remand motion filed more than 30 days after removal notice was filed "waived [plaintiff's]

2    objection to the removal process based on a violation of the voluntary-involuntary rule" because

3    "removal in violation of the voluntary-involuntary rule is a procedural defect" that does not affect

4    subject matter jurisdiction); *Jones v. CMM of Indiana, LLC*, No. Civ.A. 05-4039, 2006 WL 120085,

5    at *2 n.2 (E.D. La. Jan. 17, 2006) ("Because the voluntary/involuntary rule is one of removal

6    procedure rather than subject matter jurisdiction, it is deemed waived if not raised within 30 days of

7    removal." (citing § 1447(c))); *Lewis v. Langenfelder & Son, Jr., Inc.*, Nos. 2:01cv804 & 2:02cv622,

8    2003 WL 23957117, 2004 A.M.C. 2250, 2253-54 (E.D. Va. Dec. 19, 2003) (holding that voluntary-

9    involuntary rule is not jurisdictional and that "plaintiff needed to move this court to remand on the

10   basis of the voluntary-involuntary rule within thirty days of removal as required by 28 U.S.C.

11   § 1447(c)").

12        **Second**, even if plaintiffs did not waive this argument, the voluntary-involuntary rule would

13   not apply to the JCCP Severance Order because the Removed Plaintiffs – who lack any viable

14   claims against the in-forum defendants – "never had the power to determine the removability of this

15   action . . . by the allegations in [their] complaint," so "[t]his basic premise of the 'voluntary-

16   involuntary' rule is wholly absent." *In re Johnson & Johnson Cases*, No. 2:15-cv-05311-JGB (SPx)

17   (and numerous other case numbers), 2015 WL 5050543, at *6 (C.D. Cal. Aug. 24, 2015).  In the

18   *Johnson & Johnson Cases*, Judge Bernal denied remand motions filed by 64 non-New-Jersey

19   plaintiffs whose product liability lawsuits were removed by a New Jersey defendant after a state

20   court severed the claims of a few non-diverse New Jersey plaintiffs.  Judge Bernal rejected the

21   voluntary-involuntary-rule argument because, to the extent that each plaintiff had "the 'power' to

22   defeat removal," each plaintiff "***did not possess that power in her own right***." *Id.* at *6 (emphasis

23   added).  Instead, Judge Bernal explained, such a power "was merely derivative of the rights of other

24   plaintiffs in the action – specifically, those plaintiffs who are citizens of New Jersey.  It would be

25   more accurate to say that Plaintiff was the incidental beneficiary of a power to defeat removal

26   possessed by the New Jersey plaintiffs." *Id.*  As Judge Bernal stated, any "'power' to determine the

27   removability of" the multi-plaintiff lawsuit "relied from the outset on conditions outside Plaintiff's

28

control.  If the New Jersey plaintiffs had refused to join [the multi-plaintiff lawsuit] and instead insisted on instituting their own action, Plaintiff could not have defeated removal of [the multi-plaintiff lawsuit] by her own allegations."  *Id.*; *see Skelton v. Johnson & Johnson*, No. CV 15-5385 PA (Ex), 2015 WL 13236734, at *1 (C.D. Cal. Oct. 16, 2015) (rejecting voluntary-involuntary-rule argument made in a post-severance removed case; relying on *Johnson & Johnson Cases* and stating that "the Court finds Judge Bernal's reasoning persuasive").[9]

    ***Third***, even absent plaintiffs' waiver, the voluntary-involuntary rule would not apply because the JCCP Severance Order did not go the merits of the lawsuit.  As the Supreme Court has articulated the rule, a lawsuit that is not removable when commenced cannot be converted into a removable lawsuit "by an order of the court upon any issue ***tried upon the merits***."  *Great N. Ry. v. Alexander*, 246 U.S. 276, 281 (1918) (emphasis added).  Likewise, in the *Self* case cited by plaintiffs, the Ninth Circuit focused on the fact that a state court order was "a decision made on the merits of the case" when the Ninth Circuit decided to apply the voluntary-involuntary rule and ordered remand to state court.  *Self v. Gen. Motors Corp.*, 588 F.2d 655, 660 (9th Cir. 1978) ("In the instant case, a final judgment against Prior [the in-forum, nondiverse defendant] removed him from the proceedings.  A final judgment is an order by the court and is classically a decision made on the merits of the case."); *see id*. at 658 ("'This [the directed verdict] was a ruling on the merits . . . .  It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable . . . .'" (quoting *Whitcomb v. Smithson*, 175 U.S. 635, 638 (1900)) (brackets in original)).  This Court and other district courts repeatedly have made the same point. *See, e.g.*, *Unterleitner v. BASF Catalysts LLC*, No. 16-cv-00818-JSC, 2016 WL 805167, at *2 (N.D. Cal. Mar. 2, 2016) ("[W]here the dismissal of a diversity-defeating defendant occurs involuntarily,

---

[9] Plaintiffs' reliance on *Mullin v. General Motors LLC*, No. CV 15-7668-DMG (RAOx), 2016 WL 94235 (C.D. Cal. Jan. 7, 2016), is misplaced because that case involved a state court's *forum non conveniens* dismissal ruling, whereas here the state court issued a severance ruling.  In any event, the defendant in *Mullin* failed to cite *Johnson & Johnson Cases* (or *Skelton*) in its opposition to the remand motion, and the *Mullin* court accordingly did not address the fact that the remaining, diverse plaintiffs in *Mullin* never had the power in their own right to determine the removability of their lawsuit, making the voluntary-involuntary rule irrelevant in that case.

- 17 -

such as dismissal on the merits over the plaintiff's opposition, that action does not become removable." (citing *Self*, 588 F.2d at 659)); *In re Johnson & Johnson Cases*, 2015 WL 5050543, at *3 (discussing voluntary-involuntary rule and stating that "the dismissal of [a non-diverse] defendant on the merits does not render the action removable"); *Wade*, 54 F. Supp. 3d 1251 (stating that "the actual claims of all the plaintiffs remain intact and have not been modified or dismissed on the merits by the [state] court"; holding that voluntary-involuntary rule did not apply because, *inter alia*, "the state court judge's order . . . was not on the merits").

**Finally**, the voluntary-involuntary rule focuses on whether the plaintiff voluntarily dismissed one or more **defendants** whose presence in the lawsuit prevented removal.  *See Self*, 588 F.2d at 659 (a case that "is not removable because of joinder of defendants" can only be converted into a removable lawsuit "by the voluntary dismissal or nonsuit by him of a party or of parties defendant" (quoting *Alexander*, 246 U.S. at 281)).  Accordingly, in a removal context similar to Monsanto's removal at issue here, the *Wade* court rejected plaintiffs' voluntary-involuntary-rule argument in part because the state court order – which dismissed certain **plaintiffs** from multi-plaintiff complaints for lack of personal jurisdiction – "did not result in the dismissal of a non-diverse **defendant**."  *Wade*, 54 F. Supp. 3d at 1251 (emphasis added); *see also Unterleitner*, 2016 WL 805167, at *2 ("Voluntary action [for purposes of the voluntary-involuntary rule] exists where the plaintiff voluntarily amends his pleadings or where the plaintiff agrees to voluntary dismissal or nonsuit of the nondiverse defendants." (citing *Self*, 588 F.2d at 659)).  Severance of different **plaintiffs'** claims therefore does not implicate the rule.

### D. Plaintiffs' Argument Regarding Doe Defendants is Specifically Foreclosed by a Provision in the Removal Statute.

In a last-ditch effort to evade this Court's jurisdiction, plaintiffs contend that the Doe defendants are California citizens who destroy complete diversity of citizenship.  *See* Remand Mem. at 12-13.  However, this argument is specifically foreclosed by a provision in the removal statute:  "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names **shall be**

*disregarded.*" 28 U.S.C. § 1441(b)(1) (emphasis added).  This provision means what it says.  *See, e.g.*, *Caldwell v. State Farm Gen. Ins. Co.*, No. C 16-03479 JSW, 2016 WL 10907158, at *2 (N.D. Cal. Aug. 16, 2016) (denying motion to remand; relying on § 1441(b)(1) to disregard Doe defendants' citizenship and rejecting argument that they destroyed diversity).  Thus, § 1441(b)(1) requires this Court to disregard the citizenship of any Doe defendants.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand with respect to the claims of the ten Removed Plaintiffs (Davie, Dufore, Dunbar, Kalfayan, Krupinski, O'Neill, Richardson, Rosichan, Smith, and Winch).

DATED:  May 7, 2019                                        Respectfully submitted,

/s/ Eric G. Lasker

William Hoffman (*pro hac vice*)          Eric G. Lasker (*pro hac vice*)
(william.hoffman@arnoldporter.com)        (elasker@hollingsworthllp.com)
Daniel S. Pariser (*pro hac vice*)        Martin C. Calhoun (*pro hac vice*)
(daniel.pariser@arnoldporter.com)         (mcalhoun@hollingsworthllp.com)
ARNOLD & PORTER KAYE SCHOLER LLP          HOLLINGSWORTH LLP
601 Massachusetts Avenue, NW              1350 I Street, NW
Washington, DC 20001                      Washington, DC 20005
Tel:  202-942-5000                        Tel:  202-898-5843
Fax:  202-942-5999                        Fax:  202-682-1639

S. Zachary Fayne (CA Bar No. 307288)      Brian L. Stekloff (*pro hac vice*)
(zachary.fayne@arnoldporter.com)          (bstekloff@wilkinsonwalsh.com)
ARNOLD & PORTER KAYE SCHOLER LLP          Rakesh Kilaru (*pro hac vice*)
Three Embarcadero Center, 10th Floor      (rkilaru@wilkinsonwalsh.com)
San Francisco, CA 94111-4024              WILKINSON WALSH + ESKOVITZ LLP
Tel:  415-471-3100                        2001 M Street, NW, 10th Floor
Fax:  415-471-3400                        Washington, DC 20036
                                          Tel:  202-847-4030
                                          Fax:  202-847-4005

Attorneys for Defendant MONSANTO COMPANY