**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5843
Fax:  202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax:  202-942-5999

S. Zachary Fayne (CA Bar No. 307288)
(zachary.fayne@arnoldporter.com)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:  415-471-3100
Fax:  415-471-3400

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) |
| THIS DOCUMENT RELATES TO: | ) ) **DEFENDANT MONSANTO COMPANY'S** |
| *Mimia Conyers, et al. v. Monsanto Co., et al.*, Case No. 3:19-cv-02001-VC | ) **OPPOSITION TO PLAINTIFFS' MOTION** ) **TO REMAND THE *CONYERS* CASE** ) ) Date:  May 22, 2019 ) Time: 10:00 a.m. ) Courtroom:  4 |

# TABLE OF CONTENTS

Page

ISSUES TO BE DECIDED ................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

ARGUMENT ..................................................................................................................... 4

    I.     Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse Defendants Were Fraudulently Joined. ......................................................... 4

    II.    Following The JCCP Court's Severance Order, The Removed Plaintiffs Cannot Rely On The Claims Of The Severed Plaintiffs To Defeat Diversity Jurisdiction. ....................................................................................................... 6

    III.    The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-Joinder-Based Removal Lack Merit. ............................................................... 9

        A.    The JCCP Severance Order Precludes Plaintiffs' Argument that Plaintiffs are not Misjoined. .............................................................. 10

        B.    Plaintiffs' Arguments about the Timing of Monsanto's Removal Lack Merit. ........................................................................................ 12

        C.    Plaintiffs' Reliance on the Voluntary-Involuntary Rule Lacks Merit. ............................................................................................... 14

        D.    Plaintiffs' Argument Regarding Doe Defendants is Specifically Foreclosed by a Provision in the Removal Statute. ...................... 17

CONCLUSION ............................................................................................................... 18

<u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Aronis v. Merck & Co.*,
    No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) ........................... 5

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
    261 F. Supp. 2d 483 (E.D. Va. 2003) ........................... 8

*Boles v. Eli Lilly & Co.*,
    No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015) ........................... 12

*Boschert v. Pfizer, Inc.*,
    No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009) ................................... 12

*Bugman v. Chemlawn Corp.*,
    No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa. June 17, 1988) ........................... 12

*Caldwell v. State Farm Gen. Ins. Co.*,
    No. C 16-03479 JSW, 2016 WL 10907158 (N.D. Cal. Aug. 16, 2016) ................................... 17

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ........................... 6, 7

*Cooke-Bates v. Bayer Corp.*,
    No. 3:10-CV-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010) ........................... 9

*Corley v. Google, Inc.*,
    316 F.R.D. 277 (N.D. Cal. 2016) ........................... 11

*Cuviello v. Feld Entm't, Inc.*,
    304 F.R.D. 585 (N.D. Cal. 2015) ........................... 8, 12

*Dunbar v. Medtronic, Inc.*,
    No. CV 14-01529-RGK, 2014 WL 3056081 (C.D. Cal. June 25, 2014) ................................... 12

*Fehlman v. McCaffrey*,
    No. CV-10-122-ST, 2010 WL 1959534 (D. Or. Apr. 14, 2010) (magistrate judge
    report and recommendation), *adopted by* 2010 WL 1977950 (D. Or. May 12, 2010) ............... 14

*Granny Goose Foods, Inc. v. Teamsters*,
    415 U.S. 423 (1974) ........................... 6, 7

*Great N. Ry. v. Alexander*,
    246 U.S. 276 (1918) ........................... 16, 17

*Heather v. Medtronic Inc.*,
    No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014) ........................... 12

*In re Accutane Prods. Liab. Litig.*,
    No. 8:04-md-2523-T-30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012) ........................... 12

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND THE *CONYERS* CASE
3:16-md-2741-VC & 3:19-cv-02001-VC

*In re: Baycol Prods. Liab. Litig.*,
   MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002) ................................... 12

*In re Diet Drugs (Phentermine, Fenfluramin, Dexfenfluramine) Prods. Liab. Litig.*,
   No. Civ. A. 98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999) ........................... 12

*In re: Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018) ......................... 8

*In re Johnson & Johnson Cases*,
   No. 2:15-cv-05311-JGB, 2015 WL 5050543 (C.D. Cal. Aug. 24, 2015) ............... 15, 16

*In re: Rezulin Prods. Liab. Litig.*,
   168 F. Supp. 2d 136 (S.D.N.Y. 2001) ................................................................. 8, 12

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ...................................................................... 12

*Jenkins v. Commonwealth Land Title Ins. Co.*,
   95 F.3d 791 (9th Cir. 1996) .................................................................................. 6, 7

*Joseph v. Baxter Int'l, Inc.*,
   614 F. Supp. 2d 868 (N.D. Ohio 2009) ...................................................................... 9

*Kirkland v. Legion Ins. Co.*,
   343 F.3d 1135 (9th Cir. 2003) ..................................................................................... 7

*Koehler v. Dodwell*,
   152 F.3d 304 (4th Cir. 1998) ...................................................................................... 8

*Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   No. CV-15-106-GF-BMM, 2016 WL 81234 (D. Mont. Jan. 7, 2016) ........................ 4

*LeBlanc v. Cleveland*,
   248 F.3d 95 (2d Cir. 2001) ........................................................................................ 12

*Martinez v. McKesson Corp.*,
   No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) .................... 5

*Mayfield v. London Women's Care, PLLC*,
   No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015) ................................... 8

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ................................................................................ 4, 9

*Mullin v. Gen. Motors LLC*,
   No. CV 15-7668-DMG, 2016 WL 94235 (C.D. Cal. Jan. 7, 2016) ........................... 16

*Nguyen v. CTS Elecs. Mfg. Solutions Inc.*,
   301 F.R.D. 337 (N.D. Cal. 2014) ...................................................................... 6, 7, 11

*Rubio v. Monsanto Co.*,
   181 F. Supp. 3d 746 (C.D. Cal. 2016) ...................................................................... 12

*Sams v. Beech Aircraft Corp.*,
   625 F.2d 273 (9th Cir. 1980) ..................................................................................... 7

*Self v. Gen. Motors Corp.*,
   588 F.2d 655 (9th Cir. 1978) ............................................................................... 16, 17

*Skelton v. Johnson & Johnson*,
   No. CV 15-5385 PA (Ex), 2015 WL 13236734 (C.D. Cal. Oct. 16, 2015) ................ 16

*Sullivan v. Calvert Mem'l Hosp.*,
   117 F. Supp. 3d 702 (D. Md. 2015) ........................................................................... 8

*Todd v. Tempur-Sealy Int'l, Inc.*,
   No. 13-cv-04984-JST, 2017 WL 2840272 (N.D. Cal. June 30, 2017) ....................... 11

*Tucker v. McKesson Corp.*,
   No. C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011).......................... 5

*Unterleitner v. BASF Catalysts LLC*,
   No. 16-cv-00818-JSC, 2016 WL 805167 (N.D. Cal. Mar. 2, 2016)..................... 16, 17

*Visendi v. Bank of Am., N.A.*,
   733 F.3d 863 (9th Cir. 2013) .................................................................................... 7

*Vu v. Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 (N.D. Cal. 2009) ...................................................................... 6

*Wade v. Johnson & Johnson*,
   54 F. Supp. 3d 1247 (W.D. Okla. 2014) ............................................................... 13, 17

*Whitcomb v. Smithson*,
   175 U.S. 635 (1900).................................................................................................. 16

## STATUTES AND RULES

28 U.S.C. § 1441 ............................................................................................. 4, 9, 17, 18

28 U.S.C. § 1446 ............................................................................................. 4, 9, 13, 14

Fed. R. Civ. P. 19 ....................................................................................................... 12

Fed. R. Civ. P. 20 ..................................................................................................... 8, 11

Fed. R. Civ. P. 21 ............................................................................................... 1, 7, 8, 9

## OTHER AUTHORITIES

7 Wright & Miller, *et al.*,
   *Federal Practice and Procedure* § 1685 (3d ed.) ..................................................... 8, 9

### ISSUES TO BE DECIDED

Six of the plaintiffs at issue here ("the Removed Plaintiffs") fraudulently joined claims against California defendants to defeat federal jurisdiction.  Plaintiffs initially sought to evade removal by filing mass complaints, including numerous unrelated plaintiffs and two local distributor defendants.  But an important development in state court has now made clear that federal jurisdiction exists over the Removed Plaintiffs' claims.  The state court ordered the multi-plaintiff complaint severed into single-plaintiff complaints, which precluded the Removed Plaintiffs – who had not been exposed to Roundup®-branded herbicides distributed by the local defendants – from piggy-backing on other plaintiffs' claims against the non-diverse parties and which allows for diversity jurisdiction to be assessed on a plaintiff-by-plaintiff basis.  In light of this development, Monsanto Company ("Monsanto") properly removed their claims to this Court.

In their Motion to Remand, ECF No. 11, plaintiffs do not dispute these points.  Instead, they argue that because the state court (at plaintiffs' request) provided plaintiffs an extension of time to file individual complaints, their claims remain joined for jurisdictional purposes and Monsanto's removal was premature.  These arguments are unavailing and would require this Court to disregard the plain language and intent of the state court's severance order.  Contrary to plaintiffs' arguments, the Court need not find fraudulent misjoinder here because the state court has ***already*** ordered the cases severed.  This Court need only implement that order, as it plainly has authority to do under Federal Rule of Civil Procedure 21.  Moreover, Monsanto properly filed its Notice of Removal within 30 days of the date when this lawsuit became subject to the severance order, so plaintiffs' arguments about the timing of Monsanto's removal lack merit.  Plaintiffs' reliance on the "voluntary-involuntary" rule fails as well because that rule does not apply here, for several reasons discussed below.  Finally, plaintiffs' argument that the California citizenship of fictitiously named (Doe) defendants destroys diversity is specifically foreclosed by a provision in the removal statute that requires courts to disregard the citizenship of Doe defendants in assessing diversity jurisdiction.

In sum, Monsanto has satisfied its burden of establishing that removal is proper for the Removed Plaintiffs' claims, so the Court should deny the Motion to Remand in part and retain

jurisdiction over those claims.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ten unrelated plaintiffs commenced this lawsuit in the Superior Court of the State of California for San Francisco County by filing a Complaint, captioned *Conyers, et al. v. Monsanto Company, et al.*, Case No. CGC-19-572706, on January 10, 2019 (the "State Court Action"). Notice of Removal ¶ 5, ECF No. 1.

Plaintiffs sued Monsanto and two California-based companies, Wilbur-Ellis Company LLC ("Wilbur-Ellis Company") and Wilbur-Ellis Feed, LLC ("Wilbur-Ellis Feed"). Notice of Removal ¶ 6. The Complaint asserts various product liability claims against all three defendants (strict liability, negligence) and seeks damages for non-Hodgkin's lymphoma allegedly caused by Monsanto's Roundup®-branded herbicides, which plaintiffs claim were distributed by Wilbur-Ellis Company and Wilbur-Ellis Feed. *Id.* ¶ 7. The Complaint asserts other claims only against Monsanto (fraud, breach of express and implied warranties). *Id.*

The Complaint lumps Wilbur-Ellis Company and Wilbur-Ellis Feed together and refers to them collectively as "Wilbur-Ellis." Compl. ¶¶ 72-73, ECF No. 1-1. The Complaint alleges that "Wilbur-Ellis is a main distributor of Roundup®, and, ***upon information and belief***, distributed Roundup® used by Plaintiffs." *Id.* ¶ 73 (emphasis added); *see also id.* ¶ 151 ("***On information and belief***, Wilbur-Ellis was one of the distributors providing Roundup® and other glyphosate-containing products actually used by the Plaintiffs." (emphasis added)).

The State Court Action was added to a Judicial Council Coordinated Proceeding ("JCCP") – *Roundup Products Cases*, JCCP No. 4953, in the Superior Court of the State of California for Alameda County – and was transferred to that court for coordinated proceedings with other lawsuits involving personal injuries allegedly caused by Roundup®-branded herbicides. Notice of Removal ¶ 11. The Honorable Winifred Smith is presiding over JCCP No. 4953. *Id.* ¶ 9.

Each of the Removed Plaintiffs admitted in the Complaint that their exposures to Roundup®-branded herbicides involved residential/personal use – and not work-related use – of the products. As set forth below, Wilbur-Ellis Feed has never distributed ***any*** Roundup®-branded herbicides, and

1    Wilbur-Ellis Company has never distributed Roundup®-branded herbicides for residential use.  The

2    remaining plaintiffs did not allege solely personal/residential use of Roundup®-branded herbicides.

3    The other two markets for Roundup®-branded herbicides – the agricultural market and the

4    industrial, turf, and ornamental ("IT&O") market – have been serviced historically by Wilbur-Ellis

5    Company.

6         On January 25, 2019, Judge Smith issued an order requiring, *inter alia*, severance of

7    previously filed multi-plaintiff complaints.  January 25, 2019 Order (hereinafter, "JCCP Severance

8    Order") (Request for Judicial Notice ("RJN"), Exhibit 1).[1]   In response to plaintiffs' request based

9    on claimed administrative burdens, Judge Smith allowed plaintiffs substantial additional time to

10   effectuate the JCCP Severance Order through the filing of individual complaints.[2]

11        On March 14, 2019, the State Court Action was added to JCCP No. 4953 for coordinated

12   proceedings with other lawsuits involving personal injuries allegedly caused by Roundup®-branded

13   herbicides.  March 14, 2019 Order (RJN, Exhibit 6).  Judge Smith issued that order pursuant to a

14   joint request by plaintiffs and defendants, as set forth in their stipulation and proposed order.  March

15   12, 2019 Stipulation and Proposed Order (RJN, Exhibit 5).

16        Monsanto timely filed its Notice of Removal of this multi-plaintiff complaint on April 15,

17   2019, within 30 days after the State Court Action was added to JCCP No. 4953 and therefore

18   became subject to the JCCP Severance Order.  Monsanto chose not to wait for the filing of

19   individual complaints required under the JCCP Severance Order because plaintiffs would no doubt

20

21

22   [1] In Paragraph 1 of the JCCP Severance Order, Judge Smith cited with approval two
     misjoinder/severance orders that were issued in the summer of 2017 in two other Roundup® multi-

23   plaintiff lawsuits (filed in Alameda County Superior Court before JCCP No. 4953 was created) – a
     July 14, 2017 Order issued in *Billings v. Monsanto Company* (RJN, Exhibit 2) and a July 26, 2017

24   Order issued in *Woodbury v. Monsanto Company* (RJN, Exhibit 3).  In both orders, the Alameda
     County Superior Court sustained Monsanto's demurrers to the complaints for misjoinder of

25   plaintiffs and held that plaintiffs "are not properly joined under CCP 378(a)(1)."  *Billings* Order at
     3; *Woodbury* Order at 3.

26   [2] *Compare* JCCP Severance Order ¶ 2 *with* Judge Smith's Tentative Ruling ¶ 2 (RJN, Exhibit 4);
     *see* January 25, 2019 Hr'g Tr. 10:6-13:6 (plaintiffs' counsel discussing administrative burdens that

27   would be imposed by tentative ruling and requesting that Judge Smith give plaintiffs six months to
     file single-plaintiff complaints) (Declaration of Martin Calhoun, Exhibit 1).

28

argue that further delay would render those removals too late under the 30-day deadline set forth in 28 U.S.C. § 1446(b)(3).  Instead, this Court should now effectuate severance of these unrelated claims, sustain federal jurisdiction over the claims of the six Removed Plaintiffs, and remand the claims of the remaining plaintiffs for whom federal jurisdiction has not been established at this time.

## ARGUMENT

### I.  Plaintiffs Do Not Dispute Monsanto's Showings That The Non-Diverse Defendants Were Fraudulently Joined.

Monsanto removed this lawsuit based on the Removed Plaintiffs' fraudulent joinder of the non-diverse defendants (Wilbur-Ellis Company and Wilbur-Ellis Feed).  An "exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Fraudulent joinder applies when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."  *Id.* (quotation marks omitted).  The fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship.  *Id.*  Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that statutory provision applies only to "properly joined" defendants.  28 U.S.C. § 1441(b)(2); *see, e.g.*, *Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV-15-106-GF-BMM, 2016 WL 81234, at *1 (D. Mont. Jan. 7, 2016).

As established in Monsanto's Notice of Removal and the supporting declarations, the Removed Plaintiffs sued the in-forum defendants Wilbur-Ellis Company and Wilbur-Ellis Feed in an attempt to prevent removal due to lack of diversity jurisdiction and/or due to the forum defendant rule.  However, each of the Removed Plaintiffs have admitted in the Complaint that they used Roundup®-branded herbicides for personal/residential use and not for work-related reasons.  Notice of Removal ¶ 34 (citing Compl. ¶¶ 15, 20, 25-26, 37-38, 48-49, 54).  Because neither of the in-forum defendants ever distributed Roundup®-branded herbicides for personal/residential use, the Removed Plaintiffs fail to state viable causes of action against those defendants and cannot rely on

- 4 -

1  those defendants to defeat diversity jurisdiction.  Tellingly, plaintiffs offer no substantive argument

2  to the contrary.[3]

3        Wilbur-Ellis Company is (and has been) in the business of distributing and selling only

4  certain categories of Monsanto glyphosate-based herbicide products – namely, herbicides designed

5  for the agricultural market and herbicides designed for the IT&O/professional market.  Notice of

6  Removal ¶ 30 (citing Declaration of Steven Gould ("Gould Declaration") ¶ 6, ECF No. 1-6;

7  Declaration of Scott Hushbeck ("Hushbeck Declaration") ¶ 7, ECF No. 1-5).  Wilbur-Ellis

8  Company does not sell (and has never sold) Monsanto glyphosate-containing herbicides that have

9  been created and designed for the residential-lawn-and-garden market.  *Id.* ¶ 31 (citing Gould Decl.

10  ¶ 6; Hushbeck Decl. ¶ 7).  For example, Wilbur-Ellis Company has never played any role in the

11  chain of distribution leading to Monsanto's glyphosate-based, lawn-and-garden herbicides being

12  sold at national retail stores like Home Depot, Lowe's, Target, Walmart, Costco, or Ace Hardware.

13  *Id.* (citing Hushbeck Decl. ¶ 7; Gould Decl. ¶ 6).  Wilbur-Ellis Company also has never designed or

14  manufactured Monsanto's glyphosate-based herbicides.  *Id.* ¶ 33 (citing Hushbeck Decl. ¶ 9; Gould

15  Decl. ¶ 8).

16        Thus, the Removed Plaintiffs do not have any viable claims against Wilbur-Ellis Company.

17  *See, e.g.*, *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal.

18  Apr. 7, 2016) (holding that California defendant was fraudulently joined because it did not

19  manufacture Mirena and did not distribute ***plaintiff's*** Mirena); *Tucker v. McKesson Corp.*, No.

20  C 10-2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) (holding that California defendant

21  was fraudulently joined because it did not distribute morphine tablets to pharmacy where decedent

22  obtained morphine tablets at issue in lawsuit); *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS

23  DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) (holding that California defendant was

---

[3] *See* Mem. of Points and Authorities in Support of Pls.' Mot. to Remand ("Remand Memorandum") at 10, ECF No. 12 (declining to contest Monsanto's fraudulent joinder showing regarding Wilbur-Ellis Company); *id.* (declining to contest Monsanto's fraudulent joinder argument regarding Wilbur-Ellis Feed and stating that, "even if Wilbur-Ellis Feed LLC has been named erroneously in this action, the presence of Wilbur-Ellis Company LLC in the case defies complete diversity of citizenship in the case").

fraudulently joined because plaintiff alleged merely that defendant was a major distributor of Vioxx without connecting defendant to plaintiff's injuries).

Plaintiffs likewise have no viable claims against Wilbur-Ellis Feed because that company has never designed, manufactured, distributed, or sold Roundup®-branded herbicides or any other herbicides in *any* market.  Notice of Removal ¶ 27 (citing Declaration of George Arkoosh, ("Arkoosh Declaration") ¶ 7, ECF No. 1-2); *see Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1154-55 (N.D. Cal. 2009) (holding that California defendant was fraudulently joined because she did not market or distribute Children's Tylenol Plus Multi-Symptom Cold medicine); *see also supra* pages 5-6 (citing fraudulent joinder cases).  Rather, Wilbur-Ellis Feed is (and has been) in the business of ensuring that animals receive customized, high-quality, dependable nutrients.  Notice of Removal ¶ 27 (citing Arkoosh Decl. ¶ 7).  Moreover, Wilbur-Ellis Feed did not come into existence as a corporate entity until September 2015, Notice of Removal ¶ 26 (citing Arkoosh Decl. ¶ 7), well after the alleged exposure period of two of the Removed Plaintiffs, Mimia Conyers and Lisa Vale-Lang, *id*. (citing Compl. ¶¶ 15, 54).

Accordingly, the six Removed Plaintiffs fraudulently joined both California defendants.

## II.   Following The JCCP Court's Severance Order, The Removed Plaintiffs Cannot Rely On The Claims Of The Severed Plaintiffs To Defeat Diversity Jurisdiction.

The Removed Plaintiffs try to defeat removal by asking this Court to ignore the JCCP Severance Order.  This Court should not do so.  It is well established that, "'[a]fter removal, the federal court takes the case up where the State court left it off.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974)); *see Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996) (quoting *Granny Goose Foods*, 415 U.S. at 436).  The federal court "treats everything that occurred in the state court as if it had taken place in federal court," *Carvalho*, 629 F.3d at 887 (quotation marks omitted), so "an order entered by a state court should be treated as though it had been validly rendered in the federal proceeding," *id*. (quotation marks omitted); *Nguyen v. CTS Elecs. Mfg. Solutions Inc.*, 301 F.R.D. 337, 345 (N.D. Cal. 2014) ("Following this precedent

[*Granny Goose Foods*, *Carvalho*, *Jenkins*, and other cases], courts in this Circuit have routinely adopted state court rulings on particular issues when those issues were subsequently raised again after removal to federal court.").

Here, Judge Smith issued the JCCP Severance Order, which requires that multi-plaintiff lawsuits be turned into single-plaintiff lawsuits by dismissing "all plaintiffs except one per case" and requiring each of the other plaintiffs to file his or her "own individual complaint." JCCP Severance Order ¶ 2. This is completely consistent with what the Ninth Circuit has recognized as the remedy for misjoinder. *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 871 (9th Cir. 2013) ("courts can remedy misjoinder by dismissing the claims of all but the first named plaintiff without prejudice to the filing of individual actions"); *see also Nguyen*, 301 F.R.D. at 341 (stating that, when a court severs misjoined plaintiffs, "the court may generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"). Moreover, as discussed above, when Judge Smith ordered the filing of single-plaintiff complaints in this part of the JCCP Severance Order, she cited with approval certain misjoinder/severance rulings that had been issued in other multi-plaintiff Roundup® lawsuits in 2017, before JCCP No. 4953 was created. *See supra* note 1.

Plaintiffs seek to leverage Judge Smith's accommodation to their request for additional time to file individual complaints to argue that this Court must treat the plaintiffs' claims as properly joined for purposes of removal. But federal courts repeatedly have stated that they are authorized to use Rule 21 to perfect their diversity jurisdiction by dropping a nondiverse, dispensable party, and that is particularly appropriate here given the state court's severance ruling.[4] *See Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) ("[Rule 21] is viewed as a grant of 'discretionary power [to the federal court] to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19 [of the Federal Rules of Civil Procedure].'" (quoting *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980)));

---

[4] Rule 21 states: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

1   *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (discussing Rule 21 and

2   stating that, "[i]n some cases, severance clearly will be warranted to preserve federal diversity

3   jurisdiction"), *cert. denied*, 138 S. Ct. 1288 (2018); *Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir.

4   1998) (construing Rule 21 and stating that "a party or claim whose presence deprives the court of

5   jurisdiction may be dropped or severed from the action"); *Cuviello v. Feld Entm't, Inc.*, 304 F.R.D.

6   585, 593-94 (N.D. Cal. 2015) (relying on Rule 21 to order dismissal without prejudice of

7   dispensable nondiverse party to "perfect [the court's] diversity jurisdiction"); *see also* 7 Charles

8   Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1685 (3d ed.) ("Courts

9   frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse

10  party if the party's presence in the action is not required under Rule 19.").

11          Even absent a state court severance ruling, district courts repeatedly have relied on Rule 21

12  to sever nondiverse parties in removed cases and assert diversity jurisdiction over the remaining

13  parties.  For example, one court denied a remand motion, holding that a diversity-destroying

14  plaintiff "was improvidently joined" and dismissing that plaintiff "as a misjoined party under Rule

15  21."  *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 490 (E.D. Va.

16  2003).  Likewise, a district court presiding over products liability cases in multidistrict litigation

17  proceedings relied on Federal Rule of Civil Procedure 20 to hold that diversity-destroying plaintiffs

18  were misjoined and Rule 21 to sever those plaintiffs from their diverse co-plaintiffs, thereby

19  "preserv[ing] the defendants' right to removal" with respect to the claims asserted by the diverse

20  plaintiffs.  *In re: Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144-48, 153 (S.D.N.Y. 2001).

21  Other district courts have exercised their Rule 21 discretion in similar fashion to retain jurisdiction

22  over certain parties and claims while severing other parties and claims.  *See, e.g.*, *Sullivan v. Calvert*

23  *Mem'l Hosp.*, 117 F. Supp. 3d 702, 704, 707 (D. Md. 2015) (stating that "[t]he court has discretion,

24  under Federal Rule of Civil Procedure 21, to drop nondiverse parties to achieve complete diversity";

25  severing and remanding claims asserted against nondiverse defendants and retaining jurisdiction

26  over claims asserted against removing defendants); *Mayfield v. London Women's Care, PLLC*, No.

27  15-19-DLB, 2015 WL 3440492, at *3, 5-6 (E.D. Ky. May 28, 2015) (stating that "[i]t is well-settled

28

1  that Rule 21 can be used to sever a dispensable, nondiverse party in order to preserve federal

2  jurisdiction"; severing and remanding claims asserted against nondiverse defendants and retaining

3  jurisdiction over claims asserted against removing defendant); *Cooke-Bates v. Bayer Corp.*, No.

4  3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010) (stating that "district courts have

5  considerable discretion to sever parties under Rule 21"; severing and remanding claims asserted

6  against nondiverse defendant and retain jurisdiction over remaining claims);  *Joseph v. Baxter Int'l,*

7  *Inc.*, 614 F. Supp. 2d 868, 872-75 (N.D. Ohio 2009) (ordering severance based on Rule 21 and

8  remanding claims asserted against nondiverse defendants and retaining jurisdiction over claims

9  asserted against removing defendant); *see also* 7 Charles Alan Wright, Arthur R. Miller, *et al.*,

10  *Federal Practice and Procedure* § 1685 (3d ed.) (stating that "courts also have used Rule 21 to drop

11  a party who was joined in an action for the purpose of preventing removal to a federal court").

12        Here, when plaintiffs are properly severed in accordance with the JCCP Severance Order,

13  complete diversity of citizenship exists for each of the Removed Plaintiff's lawsuits, *see* Notice of

14  Removal ¶¶ 17-25 & 39, because those plaintiffs fraudulently joined the two California defendants,

15  which means that they must be disregarded, *see Morris*, 236 F.3d at 1067; 28 U.S.C. § 1441(b)(2).

16  Moreover, Monsanto established that plaintiffs seek damages in excess of $75,000, exclusive of

17  interest and costs, *see* Notice of Removal ¶ 36 – a showing that plaintiffs do not dispute – so the

18  jurisdictional amount-in-controversy requirement is also satisfied here.  Thus, the Court should

19  retain jurisdiction over the Removed Plaintiffs.[5]

20
21  **III.  The Removed Plaintiffs' Arguments To Defeat Monsanto's Fraudulent-Joinder-Based Removal Lack Merit.**

22        The Removed Plaintiffs make various arguments in an effort to persuade this Court to

23  countenance their fraudulent joinder of Wilbur-Ellis Company and Wilbur-Ellis Feed.  However,

24
25
26  [5] Wilbur-Ellis Company and Wilbur-Ellis Feed are not required to consent to removal because those defendants have not been "properly joined."  28 U.S.C. § 1446(b)(2)(A).  In any event, they both have consented to removal.  Notice of Removal ¶ 43 (citing Hushbeck Decl. ¶ 10; Arkoosh Decl. ¶ 8).  By requesting and/or providing this consent, no defendant concedes that either Wilbur-Ellis Company or Wilbur-Ellis Feed is properly joined as a defendant in this lawsuit.

27

28

1  their arguments lack merit, as discussed below.

2  **A. The JCCP Severance Order Precludes Plaintiffs' Argument that Plaintiffs are not
   Misjoined.**

3

4  Remarkably, notwithstanding the JCCP Severance Order, the Removed Plaintiffs assert that

5  their personal injury claims "are not misjoined," Remand Mem. at 7, with those of the other

6  plaintiffs, so that the Removed Plaintiffs can piggy-back on those plaintiffs' claims against the local

7  defendants Wilbur-Ellis Company and Wilbur-Ellis Feed.  However, as discussed above, the JCCP

8  Severance Order has already ordered the plaintiffs' claims severed, citing with approval prior

9  misjoinder/severance orders issued in 2017 in two other Roundup® lawsuits (each of which holding

10  that plaintiffs "*are not properly joined under CCP 378(a)(1)*").  *Billings* Order at 3 (emphasis

11  added); *Woodbury* Order at 3 (emphasis added).  Both of those earlier orders held that the claims of

12  the different plaintiffs "do not belong together because they do not arise from the same transaction

13  or occurrence or series of transactions or occurrences," as required by § 378(a)(1) (California's

14  permissive joinder provision).  *Billings* Order at 2; *Woodbury* Order at 2.

15  As shown by those orders, Monsanto repeatedly sought severance of multi-plaintiff

16  complaints on misjoinder grounds in the Alameda County Roundup® litigation, and judges

17  repeatedly ordered severance.  When the Roundup® litigation was re-assigned to Judge Petrou,

18  plaintiffs tried to avoid the impact of the prior severance rulings, but Monsanto reiterated its prior

19  objections to multi-plaintiff complaints and sought severance.  *See* October 26, 2017 Case

20  Management Conference Statement (RJN, Exhibit 7).  Rejecting plaintiffs' arguments, Judge Petrou

21  issued an order stating that the prior severance orders "remain in full force and effect" and directing

22  plaintiffs in another multi-plaintiff Roundup® lawsuit to "file new, separate single-plaintiff

23  complaints."  November 9, 2017 Order at 1, 2 (RJN, Exhibit 8).  During much of the time that

24  Judge Petrou was assigned to the JCCP, she focused on the threshold issue of whether plaintiffs'

25  experts had admissible general causation opinions.  Instead of the parties engaging in piece-meal

26  briefing as various lawsuits were being added to the JCCP, Judge Petrou issued a case management

27  order that deferred any obligation for Monsanto to file responses of any type – including answers,

28

motions, or demurrers – to complaints in "multi-plaintiff lawsuits that have been or will be added to JCCP 4953 . . . until a date to be determined by the Court." September 6, 2018 Order (RJN, Exhibit 9). The JCCP Severance Order was a culmination of repeated prior severance rulings issued in the Alameda County Roundup® litigation in response to Monsanto's repeated objections to multi-plaintiff complaints. Plaintiffs' suggestions to the contrary are misleading and fail to take into account the history of the Alameda County Roundup® litigation that Judge Smith was aware of when she issued the JCCP Severance Order.

Moreover, the JCCP Severance Order already requires plaintiffs to file separate complaints, so there is no need for this Court to revisit that ruling. Judge Koh's ruling under similar circumstances in *Nguyen* is instructive. In that case, a California state court issued a severance and dismissal ruling, but plaintiffs filed an amended complaint that "did nothing to address the issue of misjoinder of Plaintiffs." *Nguyen*, 301 F.R.D. at 344. After removal, Judge Koh declined to revisit the misjoinder ruling issued in state court and gave effect to the severance order. *See id.* ("The Court need not reach or analyze the merits of [Defendant's] motion to sever because this Court gives effect to the state court's decision to sustain [Defendant's] demurrer to sever Plaintiffs' claims."). As Judge Koh explained, her ruling to "give[] effect to the state court's decision to sever Plaintiffs' claims" was based on "principles of comity" and the need to "prevent[] . . . inconsistent rulings." *Id.* at 345. Likewise, this Court should give effect to the JCCP Severance Order.

Yet in any case, severance would also be proper under federal law. The "single transaction or occurrence requirement [of Rule 20] is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis." *Corley v. Google, Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. 2016); *see Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2017 WL 2840272, at *2 (N.D. Cal. June 30, 2017) (quoting *Corley*, 316 F.R.D. at 284). In Roundup® lawsuits, as this Court well knows, each plaintiff is required to prove his claims on an individualized basis and Monsanto is required to present its defenses on an individualized basis. Each Roundup® case involves a separate set of facts and circumstances, including different durations and amounts of exposure, different sets of diagnoses and treating physicians, and different

- 11 -

potential alternative causes.  "Joinder 'of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims.'"  *In re Rezulin*, 168 F. Supp. 2d at 146 (quoting *In re Diet Drugs (Phentermine, Fenfluramin, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999)).  Thus, federal courts – including courts presiding over multidistrict litigation proceedings – repeatedly have ordered severance of multi-plaintiff complaints filed in products liability cases.[6]

Finally, the JCCP Severance Order is also consistent with Rule 19 because each plaintiff clearly is not an indispensable party for any other plaintiff's claims.  As this Court stated, "[a] party is indispensable when, in equity and good conscience, the action should not be allowed to proceed without that party."  *Cuviello*, 304 F.R.D. at 593 (quotation marks omitted).  Here, as shown by the JCCP Severance Order, each single-plaintiff lawsuit filed by a plaintiff can proceed separately without any other plaintiff's claims.  Each plaintiff's rights "are not inexorably intertwined" with any other plaintiff's rights, and each plaintiff can "recover completely" in his own lawsuit in the absence of any other plaintiff, which makes each plaintiff dispensable to each other plaintiff's lawsuit.  *LeBlanc v. Cleveland*, 248 F.3d 95, 98 (2d Cir. 2001).

### B.  Plaintiffs' Arguments about the Timing of Monsanto's Removal Lack Merit.

Plaintiffs complain that Monsanto's Notice of Removal was "untimely," Remand Mem. at 13, and then assert that Monsanto's removal was "premature," *id*. at 14.  It was neither.

*First*, the case only became removable after the State Court Action was added to JCCP No. 4953 on March 14, 2019, and therefore became subject to the JCCP Severance Order, which meant

---

[6] *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746 (C.D. Cal. 2016) (severing plaintiffs in Roundup® lawsuit); *Bugman v. Chemlawn Corp.*, No. CIV. A. 88-1061, 1988 WL 65808 (E.D. Pa. June 17, 1988) (severing plaintiffs alleging injuries from exposure to Chemlawn pesticides); *see also, e.g.*, *Boles v. Eli Lilly & Co.*, No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015); *Heather v. Medtronic Inc.*, No. 2:14-CV-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014); *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK (AJWx), 2014 WL 3056081 (C.D. Cal. June 25, 2014); *In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-30TBM, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012); *Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex. 2005); *In re: Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002).

1    that the claims of the Removed Plaintiffs were severed from those of the remaining plaintiffs.  It

2    was only then that the Removed Plaintiffs became unable to rely on the potentially viable claims

3    against Wilbur-Ellis Company brought by the remaining plaintiffs (whose claims allegedly involve

4    use of Roundup®-branded herbicides other than exclusively personal/residential use) to avoid

5    diversity jurisdiction.  Pursuant to 28 U.S.C. § 1446(b)(3), Monsanto thereafter had 30 days from

6    March 14, 2019 to file the Notice of Removal, which it did.

7         The March 14, 2019 Order adding the State Court Action to JCCP No. 4953 – and thereby

8    making the State Court Action subject to the JCCP Severance Order – falls squarely within the

9    scope of the "order or other paper" language in § 1446(b)(3).  Plaintiffs' suggestion that Monsanto

10   was required to wait for a final order to remove is without merit.  As one court stated, the "statutory

11   language itself does not require that the 'order or other paper' be a final appealable order," so the

12   court declined to "read a term into the statute that does not exist."  *Wade v. Johnson & Johnson*, 54

13   F. Supp. 3d 1247, 1250 (W.D. Okla. 2014).  After noting that the removal statute "does not

14   expressly exclude interlocutory orders from its scope," *id.*, the *Wade* court explained why such a

15   restriction is inappropriate and contrary to the language of the statute:

16       ***A defendant would often lose the right to remove if it waited until the court***
         ***issued a final appealable order.***  To require a final, appealable order before
17       removability may first be ascertained runs contrary to the language of the
         statute itself.  The statute's language that a notice of removal may be filed
18       within 30 days after receipt of, among other things, an order or other paper
         from which "it may first be ascertained that the case is one which is or has
19       become removable[,]" is not consistent with the requirement that the "order or
         other paper" be a final, appealable order.
20

21   *Id.* (emphasis added).  The same reasoning applies here because Monsanto would have lost the right

22   to remove if it had waited for a final appealable order.

23       **Second**, Monsanto's removal was not premature.  Both the March 14, 2019 Order and the

24   JCCP Severance Order are self-executing, formal court orders that did not require any further action

25   by Judge Smith to go into effect.[7]  Moreover, because the order that made the State Court Action

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] The distinction between a self-executing formal court order requiring no further action by a judge
28   and something issued by a court that requires further judicial action to become a formal order is

                                                                                    *(Footnote continued)*

1    subject to the JCCP was filed on March 14, 2019, Monsanto could not wait until after the courtesy

2    extension of time that Judge Smith gave plaintiffs to file individual complaints without potentially

3    running afoul of the 30-day deadline in 28 U.S.C. § 1446(b)(3).[8]

4            Plaintiffs would impose upon Monsanto the Hobson's choice of waiting for plaintiffs to

5    comply with the JCCP Severance Order before filing its removal notices – and risk losing the

6    important right of removal on timeliness grounds – or filing a removal notice earlier but not being

7    permitted to rely on the JCCP Severance Order.  The Court should not countenance such

8    gamesmanship.  Plaintiffs requested and received an administrative accommodation from Judge

9    Smith, which gave them a substantial amount of time – more than five months – to carry out the

10   dismissals required by the JCCP Severance Order.  *See supra* page 3 & note 2.  They should not be

11   allowed to take advantage of that extension to pervert Judge Smith's ruling so as to claim that

12   Monsanto's Notice of Removal was premature.

13           **C.  Plaintiffs' Reliance on the Voluntary-Involuntary Rule Lacks Merit.**

14           Plaintiffs' argument that Monsanto's removal violated the voluntary-involuntary rule, *see*

15   Remand Mem. at 8-9, fails for several reasons.

16           ***First***, plaintiffs cannot invoke the voluntary-involuntary rule here because they ***voluntarily***

17   subjected their claims to the JCCP Severance Order.  Judge Smith issued that order on January 25,

18   2019 (RJN, Exhibit 1).  More than six weeks later, on March 12, 2019, plaintiffs agreed to file a

19   stipulation and proposed order – signed by plaintiffs' counsel and defendants' counsel – in which

20

21   illustrated by the state court's "letter opinion" at issue in *Fehlman v. McCaffrey*, No. CV-10-122-
     ST, 2010 WL 1959534, at *3 (D. Or. Apr. 14, 2010) (magistrate judge report and recommendation),
22   *adopted by* 2010 WL 1977950 (D. Or. May 12, 2010).  In that case, the court held that the letter
     opinion was not an "order" within the meaning of § 1446(b) because the letter opinion "expressly
23   warned that it was not a formal order by directing defendants' counsel to 'prepare an appropriate
     form of order,'" *id*. at *3, and because the state court judge subsequently "sent another letter to the
24   parties . . . which again emphasized that an order needed to be entered," *id.* at *4.  Here, by contrast,
     Judge Smith did not need to take any further action to turn the March 14, 2019 Order or JCCP
25   Severance Order into a formal court order.

26   [8] Plaintiffs assert that Monsanto made an argument based on the one-year-limitation-on-removal
     provision in 28 U.S.C. § 1446(c), *see* Remand Mem. at 14-15 (citing Notice of Removal ¶ 15), but
27   their assertion is false.  In this case, Monsanto did not make a § 1446(c) argument but instead
     addressed the ***30-day*** removal deadline set by 28 U.S.C. § 1446(b)(3).  Notice of Removal ¶ 15.

28

plaintiffs and defendants jointly asked Judge Smith to add the *Conyers* lawsuit to JCCP No. 4953. *See* March 12, 2019 Stipulation and Proposed Order (RJN, Exhibit 5).  Moreover, that stipulation specifically cited Judge Smith's January 25, 2019 Order in one of the "WHEREAS" clauses.  *Id*. at 1 (citing Paragraph 7 of the Court's January 25, 2019 Order).  By asking Judge Smith in that stipulation and proposed order to add the *Conyers* lawsuit to JCCP No. 4953 – which she did in her March 14, 2019 Order (RJN, Exhibit 6) – plaintiffs voluntarily agreed to severance of their claims in accordance with the JCCP Severance Order.  For this reason, plaintiffs' reliance on the voluntary-involuntary rule is misplaced.

   ***Second***, the voluntary-involuntary rule does not apply to the JCCP Severance Order (which governed the State Court Action once it was added to JCCP No. 4953 by Judge Smith's March 14, 2019 Order) because the Removed Plaintiffs – who lack any viable claims against the in-forum defendants – "never had the power to determine the removability of this action . . . by the allegations in [their] complaint," so "[t]his basic premise of the 'voluntary-involuntary' rule is wholly absent."  *In re Johnson & Johnson Cases*, No. 2:15-cv-05311-JGB (SPx) (and numerous other case numbers), 2015 WL 5050543, at *6 (C.D. Cal. Aug. 24, 2015).  In the *Johnson & Johnson Cases*, Judge Bernal denied remand motions filed by 64 non-New-Jersey plaintiffs whose product liability lawsuits were removed by a New Jersey defendant after a state court severed the claims of a few non-diverse New Jersey plaintiffs.  Judge Bernal rejected the voluntary-involuntary-rule argument because, to the extent that each plaintiff had "the 'power' to defeat removal," each plaintiff "***did not possess that power in her own right***."  *Id.* at *6 (emphasis added).  Instead, Judge Bernal explained, such a power "was merely derivative of the rights of other plaintiffs in the action – specifically, those plaintiffs who are citizens of New Jersey.  It would be more accurate to say that Plaintiff was the incidental beneficiary of a power to defeat removal possessed by the New Jersey plaintiffs."  *Id.*  As Judge Bernal stated, any "'power' to determine the removability of" the multi-plaintiff lawsuit "relied from the outset on conditions outside Plaintiff's control.  If the New Jersey plaintiffs had refused to join [the multi-plaintiff lawsuit] and instead insisted on instituting their own action, Plaintiff could not have defeated removal of [the multi-plaintiff lawsuit] by her own

1  allegations." *Id.*; *see Skelton v. Johnson & Johnson*, No. CV 15-5385 PA (Ex), 2015 WL

2  13236734, at *1 (C.D. Cal. Oct. 16, 2015) (rejecting voluntary-involuntary-rule argument made in a

3  post-severance removed case; relying on *Johnson & Johnson Cases* and stating that "the Court

4  finds Judge Bernal's reasoning persuasive").[9]

5         **Third**, the voluntary-involuntary rule does not apply because the JCCP Severance Order

6  (and the March 14, 2019 Order) did not go the merits of the lawsuit.  As the Supreme Court has

7  articulated the rule, a lawsuit that is not removable when commenced cannot be converted into a

8  removable lawsuit "by an order of the court upon any issue ***tried upon the merits***."  *Great N. Ry. v.*

9  *Alexander*, 246 U.S. 276, 281 (1918) (emphasis added).  Likewise, in the *Self* case cited by

10  plaintiffs, the Ninth Circuit focused on the fact that a state court order was "a decision made on the

11  merits of the case" when the Ninth Circuit decided to apply the voluntary-involuntary rule and

12  ordered remand to state court.  *Self v. Gen. Motors Corp.*, 588 F.2d 655, 660 (9th Cir. 1978) ("In the

13  instant case, a final judgment against Prior [the in-forum, nondiverse defendant] removed him from

14  the proceedings.  A final judgment is an order by the court and is classically a decision made on the

15  merits of the case."); *see id*. at 658 ("'This [the directed verdict] was a ruling on the merits . . . .  It

16  was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate

17  to make the cause then removable . . . .'" (quoting *Whitcomb v. Smithson*, 175 U.S. 635, 638 (1900))

18  (brackets in original)).  This Court and other district courts repeatedly have made the same point.

19  *See, e.g.*, *Unterleitner v. BASF Catalysts LLC*, No. 16-cv-00818-JSC, 2016 WL 805167, at *2 (N.D.

20  Cal. Mar. 2, 2016) ("[W]here the dismissal of a diversity-defeating defendant occurs involuntarily,

21  such as dismissal on the merits over the plaintiff's opposition, that action does not become

22  removable." (citing *Self*, 588 F.2d at 659)); *In re Johnson & Johnson Cases*, 2015 WL 5050543, at

23

24  _____

[9] Plaintiffs' reliance on *Mullin v. General Motors LLC*, No. CV 15-7668-DMG (RAOx), 2016 WL

25  94235 (C.D. Cal. Jan. 7, 2016), is misplaced because that case involved a state court's *forum non*
     *conveniens* dismissal ruling, whereas here the state court issued a severance ruling.  In any event,

26  the defendant in *Mullin* failed to cite *Johnson & Johnson Cases* (or *Skelton*) in its opposition to the
     remand motion, and the *Mullin* court accordingly did not address the fact that the remaining, diverse

27  plaintiffs in *Mullin* never had the power in their own right to determine the removability of their
     lawsuit, making the voluntary-involuntary rule irrelevant in that case.

28

1   *3 (discussing voluntary-involuntary rule and stating that "the dismissal of [a non-diverse]

2   defendant on the merits does not render the action removable"); *Wade*, 54 F. Supp. 3d 1251 (stating

3   that "the actual claims of all the plaintiffs remain intact and have not been modified or dismissed on

4   the merits by the [state] court"; holding that voluntary-involuntary rule did not apply because, *inter*

5   *alia*, "the state court judge's order . . . was not on the merits").

6       **Finally**, the voluntary-involuntary rule focuses on whether the plaintiff voluntarily

7   dismissed one or more ***defendants*** whose presence in the lawsuit prevented removal.  *See Self*, 588

8   F.2d at 659 (a case that "is not removable because of joinder of defendants" can only be converted

9   into a removable lawsuit "by the voluntary dismissal or nonsuit by him of a party or of parties

10  defendant" (quoting *Alexander*, 246 U.S. at 281)).  Accordingly, in a removal context similar to

11  Monsanto's removal at issue here, the *Wade* court rejected plaintiffs' voluntary-involuntary-rule

12  argument in part because the state court order – which dismissed certain ***plaintiffs*** from multi-

13  plaintiff complaints for lack of personal jurisdiction – "did not result in the dismissal of a non-

14  diverse ***defendant***."  *Wade*, 54 F. Supp. 3d at 1251 (emphasis added); *see also Unterleitner*, 2016

15  WL 805167, at *2 ("Voluntary action [for purposes of the voluntary-involuntary rule] exists where

16  the plaintiff voluntarily amends his pleadings or where the plaintiff agrees to voluntary dismissal or

17  nonsuit of the nondiverse defendants." (citing *Self*, 588 F.2d at 659)).  Severance of different

18  ***plaintiffs'*** claims therefore does not implicate the rule.

19
        **D. Plaintiffs' Argument Regarding Doe Defendants is Specifically Foreclosed by a
20          Provision in the Removal Statute.**

21      In a last-ditch effort to evade this Court's jurisdiction, plaintiffs contend that the Doe

22  defendants are California citizens who destroy complete diversity of citizenship.  *See* Remand

23  Mem. at 12-13.  However, this argument is specifically foreclosed by a provision in the removal

24  statute:  "In determining whether a civil action is removable on the basis of the jurisdiction under

25  section 1332(a) of this title, the citizenship of defendants sued under fictitious names ***shall be***

26  ***disregarded***."  28 U.S.C. § 1441(b)(1) (emphasis added).  This provision means what it says.  *See,*

27  *e.g.*, *Caldwell v. State Farm Gen. Ins. Co.*, No. C 16-03479 JSW, 2016 WL 10907158, at *2 (N.D.

28

- 17 -

Cal. Aug. 16, 2016) (denying motion to remand; relying on § 1441(b)(1) to disregard Doe

defendants' citizenship and rejecting argument that they destroyed diversity).  Thus, § 1441(b)(1)

requires this Court to disregard the citizenship of any Doe defendants.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand with respect

to the claims of the six Removed Plaintiffs (Conyers, Fulcher, Lee, Pena, Ruano, and Vale-Lang).

DATED:  May 7, 2019                                      Respectfully submitted,


                                                         /s/ Eric G. Lasker
William Hoffman (*pro hac vice*)                         Eric G. Lasker (*pro hac vice*)
(william.hoffman@arnoldporter.com)                       (elasker@hollingsworthllp.com)
Daniel S. Pariser (*pro hac vice*)                       Martin C. Calhoun (*pro hac vice*)
(daniel.pariser@arnoldporter.com)                        (mcalhoun@hollingsworthllp.com)
ARNOLD & PORTER KAYE SCHOLER LLP                         HOLLINGSWORTH LLP
601 Massachusetts Avenue, NW                             1350 I Street, NW
Washington, DC 20001                                     Washington, DC 20005
Tel:  202-942-5000                                       Tel:  202-898-5843
Fax: 202-942-5999                                        Fax: 202-682-1639

S. Zachary Fayne (CA Bar No. 307288)                     Brian L. Stekloff (*pro hac vice*)
(zachary.fayne@arnoldporter.com)                         (bstekloff@wilkinsonwalsh.com)
ARNOLD & PORTER KAYE SCHOLER LLP                         Rakesh Kilaru (*pro hac vice*)
Three Embarcadero Center, 10th Floor                     (rkilaru@wilkinsonwalsh.com)
San Francisco, CA 94111-4024                             WILKINSON WALSH + ESKOVITZ LLP
Tel:  415-471-3100                                       2001 M Street, NW, 10th Floor
Fax: 415-471-3400                                        Washington, DC 20036
                                                         Tel:  202-847-4030
                                                         Fax: 202-847-4005


Attorneys for Defendant MONSANTO COMPANY