Brian K. Brake (pro hac vice)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, VA 22960
Tel : (540) 672-4224
Fax : (540) 672-3055
Email : bbrake@millerfirmllc.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-2741-VC |
| This document relates to:<br><br>*George Chupa, et al, vs. Monsanto Company, et al., Case No. 3:19-cv-01589-VC* | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND** |

# TABLE OF CONTENTS

Introduction ...................................................................................................................1

Argument ......................................................................................................................1

I.      Monsanto Never Challenged the Propriety of Plaintiffs' Joinder
        and Judge Smith Never Ruled on the Issue. ......................................................1

II.     In the Absence of Misjoinder, Severance Is Unwarranted. ...............................2

III.    Monsanto Cannot Escape the Fact that Its Removal Is Premature. ...................4

IV.     Monsanto Fails Its Burden of Proving Fraudulent Joinder
        Against Wilbur-Ellis Company.........................................................................6

V.      Monsanto's Interpretation of the Voluntary-Involuntary Rule Is Incorrect........7

        A.      There Is No Restriction on the Application of the
                Voluntary-Involuntary Rule to Courts' Orders.......................................8

        B.      The Voluntary-Involuntary Rule Applies to All Cases
                Where Removability Is Not Created by A Voluntary Act of Plaintiff ..................11

        C.      Cases Relied Upon by Monsanto Have No Precedential
                Authority and Are Distinguishable on Facts........................................12

VI.     Monsanto's Argument regarding Doe Defendants' Citizenship Misses the Point. ...........14

Conclusion ...................................................................................................................15

i

## **TABLE OF AUTHORITIES**

### **Cases**

*B.C. v. Blue Cross of Cal.*, 2012 WL 12782 (C.D. Cal. Jan.3, 2012)................................6

*Beck v. Starbucks Corp.*, 2008 WL 4298575 (N.D. Cal. 2008)......................................8

*Blasco v. Atrium Med. Corp.*, 2014 WL 12691051 (N.D. Cal. Oct. 30, 2014) ................4

*Busch v. Jakov Dulcich & Sons LLC*, 2015 WL 3792898 (N.D. Cal. June 17, 2015)....................8

*City of S. Lake Tahoe v. Safeco*, 2000 WL 550050 (N.D. Cal. Apr. 26, 2000) ...........................11

*Dunkin v. A.W. Chesterson Co.*, 2010 WL 1038200 (N.D. Cal. Mar. 19, 2010)...........................5

*Edsall v. Merck & Co., Inc.*, 2005 WL 1867730 (N.D. Cal. Aug. 4, 2005) ...........................10, 11

*Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir.2000)..........................................3, 4

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ........................................5, 7, 13, 15

*Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769 (9th Cir. 1986)........................... 4-6, 8, 12

*Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018) ........................ 6-8

*Graybill-Bundgard v. Standard Ins. Co.*, 793 F. Supp. 2d 1117 (N.D. Cal. 2011) .......................8

*Great N. Ry. Co. v. Alexander*, 246 U.S. 276 (1918)................................................ 9-10, 13

*Guerrero v. General Motors Corp.*, 392 F. Supp. 2d 1133 (N.D. Cal. 2005) ...........................4, 5

*Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203 (9th Cir. 2007)..........................7

*Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204 (D. Nev. 2018) ...............................4

*Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009) ..........................................6

*In re Johnson & Johnson Cases*, 2015 WL 5050543 (C.D. Cal. Aug. 24, 2015)....................13, 14

*In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*,
    2014 WL 257831 (S.D. Ill. Jan. 23, 2014)........................................................3

*Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*
    215 U.S. 246 (1909)...........................................................................10

*Lewis v. Time. Inc.*, 83 F.R.D. 455 (E.D.Cal.1979), *aff'd* 710 F.2d 549 (9th Cir. 1983) ................6

*Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979) .....................................5

*Lopez v. Pfeffer*, 2013 WL 5367723 (N.D. Cal. Sept. 25, 2013) ..........................................4

*Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116 (N.D. Cal. 2002).........................7

*Moore v. McKesson Corp.*, 2012 WL 5828718 (W.D. Wis. Nov. 16, 2012) ...............................3

*Mullin v. Gen. Motors LL*, 2016 WL 94235 (C.D. Cal. Jan. 7, 2016) ...........................................14

*Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166 (E.D. Cal. 2011) ...............................6

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337 (N.D. Cal. 2014) ...................................2, 3

*Parson, et al. v. Johnson & Johnson, et al.*, 749 F.3d 879 (10th Cir.2014) .................................13

*People of State of Cal. By & Through Lungren v. Keating*,
    986 F.2d 346, 348 (9th Cir. 1993) .............................................................................8, 12

*Perry v. Luu*, 2013 WL 3354446 (E.D. Cal. July 3, 2013) ..............................................................3

*Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005 (N.D. Cal. 2001)...........................7

*Price trustee of Vivian Price Family Tr. v. AMCO Ins. Co.*, 2017 WL 4511062
    (E.D. Cal. Oct. 10, 2017) ................................................................................................13

*Roberts v. A.W. Chesterton Co.*, 2008 WL 782569 (N.D. Cal. 2008) ...........................................5

*Saylor v. General Motors Corp.*, 416 F. Supp. 1173 (E.D. Ky. 1976) ..........................................5

*Self v. Gen. Motors Corp.*, 588 F.2d 655 (9th Cir. 1978) ................................................ 8, 9, 11-14

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941) ....................................5

*Sipl for Sipl v. United Ben. Life Ins. Co.*, 30 B.R. 40 (CD. Cal. 1983)........................................8

*Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129 (9th Cir. 2002 ................................4

*Thee Sombrero, Inc. v. Murphy,* 2015 WL 4399631 (C.D. Cal. July 17, 2015)............................3

*Universal Ins. Co. v. Hartford Fire Ins. Co.*, 556 F. Supp. 2d 68 (D.P.R. 2008)..........................6

*Visendi v. Bank of Am., N.A.,* 733 F.3d 863 (9th Cir. 2013) ..........................................................3

*Wade v. Johnson & Johnson,* 54 F. Supp. 3d 1247 (W.D. Okla. 2014) ............................. 9, 13-14

*Whitcomb v. Smithson*, 175 U.S. 635 (1900) ..............................................................................10

*Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 23 F. Supp. 2d 1151 (N.D. Cal. 1998) .................3

## Statutes

28 U.S.C. § 1446(d) .......................................................................................................................5

Cal. Code Civ. P. § 378(a) .............................................................................................................2

Cal. Code Civ. P. §404...................................................................................................................2

Cal. Code Civ. P. §1048.................................................................................................................2

Cal. Code Civ. P. §1048(a) ............................................................................................................2

**<u>Other Authorities</u>**

C. Wright, A. Miller & et al. 14C Fed. Prac. & Proc. Juris. (Rev. 4th ed.) § 3723
    *Removal Based on Diversity of Citizenship and Alienage Jurisdiction*.............................4

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 2:672
    (The Rutter Group 1998) .....................................................................................6

**<u>Rules</u>**

Fed. R. Civ. P. 21 ...............................................................................................1, 4

1

2

## **INTRODUCTION**

Monsanto's Opposition to Remand ("Opp.") confirms that it cannot satisfy its heavy burden of establishing federal jurisdiction. Monsanto's arguments in support of its unwarranted removal turn the Ninth Circuit's removal jurisprudence on its head: Where the law requires that all the doubts regarding the propriety of removal be resolved against removal, it asks this Court to resolve the many deficiencies of its removal scheme in favor of removal. Where the law sets forth certain requirements for removability that Monsanto's removal clearly does not meet, it asks the Court to simply disregard them so that Monsanto would not be deprived of its so-called," important right to removal." Where the law defers to plaintiffs' choice of forum, state or federal, Monsanto asks the Court to use Rule 21 severance to create federal jurisdiction in defiance of that choice. And where the law emphasizes that the presumption against removal jurisdiction is "strong" and the party supporting it bears a heavy burden to prove its propriety, Monsanto attempts to improperly shift the burden of proof to Plaintiffs. These unwarranted efforts should be rejected by the Court.

## **ARGUMENT**

### I.   **Monsanto Never Challenged the Propriety of Plaintiffs' Joinder and Judge Smith Never Ruled on the Issue**.

Monsanto cannot cite to Judge Smith's Case Management Order ("CMO") of January 25, 2019 as proof of Plaintiffs' misjoinder as it raises the issue of misjoinder for the first time on removal.[1]   As a result, neither Judge Smith's CMO of January 25, 2019, nor any of her other orders in the JCCP No. 4953, dealt with propriety of joinder of these Plaintiffs.  Judge Smith's CMO considered the issue of **consolidation of these cases for trial** in the context of Plaintiffs' motion for multi-plaintiff bellwether trials. As noted by her, requirements for consolidation for trial are **distinct** from those of joinder and governed by different statutes.   Consolidation is governed by Cal. Code Civ. P. §§404 & 1048, whereas joinder of plaintiffs is controlled by Cal. Code Civ. P. §

---

[1] Monsanto filed demurrers claiming that cases of the individual plaintiffs were improperly joined and moved for their severance in two earlier cases prior to the establishment of the JCCP No. 4953, *Woodbury v. Monsanto* and *Billings v. Monsanto*.  No such demurrers were filed by Monsanto in the present cases.

1

378(a).  *Id*. Judge Smith's CMO relied on Cal. Code Civ. P. §1048, and **did not consider or rule on the misjoinder of Plaintiffs**.

She noted that, "[i]n considering a motion to consolidate under CCP 1048(a), the court evaluates whether the cases have common issues *and **whether undue confusion or prejudice will likely to result from the proposed consolidation***." *Id*. (emphasis added). It was the latter issue, *i.e*. the potential for undue confusion or prejudice as a result of trial consolidation, that formed the basis of Judge Smith's order of severance in the case. That CMO provided no basis for Monsanto's arguments regarding misjoinder.

The fact that Judge Smith made a mention of two rulings by Judge Hernandez does not change the analysis.  Judge Hernandez's severance orders in *Woodbury v. Monsanto* and *Billings v. Monsanto* were issued **in response to** demurrers filed by Monsanto claiming that cases of the individual plaintiffs were improperly joined and moving for their severance.   That does not change the fact that **Monsanto did not challenge the propriety of the joinder of Plaintiffs in the state court** and Judge Smith's CMO did not touch the issue of misjoinder.   Judge Smith's January 25 CMO set the stage for the selection of potential bellwether plaintiffs and that is all that it did. Monsanto's argument to the contrary lacks merit and should be rejected by the Court.

## II.   In the Absence of Misjoinder, Severance Is Unwarranted.

The Court should decline Monsanto's request to apply Federal Rule of Civil Procedure 21 to sever Plaintiffs' claims in order to perfect its diversity jurisdiction. To begin with, as detailed in the Remand Motion, there is no basis for Monsanto's arguments regarding fraudulent misjoinder or even misjoinder of Plaintiffs.  Monsanto claims that Judge Smith's order directing the Plaintiffs to refile their lawsuits as individual lawsuits "is completely consistent with what the Ninth Circuit has recognized as the remedy for misjoinder." Opp. at 7.  But this is a logical fallacy—that severance is typically prescribed as the remedy for misjoinder does not mean that there was a prior finding of misjoinder here.[2]

---

[2] As support for its claim that the Court should sever Plaintiffs' claims, Monsanto cites to a selection of cases concerning misjoinder but this authority is inapplicable. Opp. at 7. In *Nguyen v. CTS Elecs. Mfg. Sols. Inc*., 301 F.R.D. 337, 341 (N.D. Cal. 2014), the federal court simply upheld the prior state court's finding, pursuant to a motion by defendant, that the plaintiffs were not properly

Second, courts are reluctant to use Rule 21 "to contort the pleadings of a lawsuit merely to confer federal jurisdiction." *Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 23 F. Supp. 2d 1151, 1157 (N.D. Cal. 1998).  In *Perry v. Luu*, a case removed based on, *inter alia*, fraudulent misjoinder, the Eastern District of California denied defendants' request to sever the non-diverse defendant's case. 2013 WL 3354446 (E.D. Cal. July 3, 2013).  It held, "[t]he Court is confounded by the concept's circular logic in that it requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction. However, the authority to sever misjoined claims or defendants under Rule 20 *presumes* the Court has jurisdiction to act." *Id.* at *5 (emphasis in original). As the court in *Thee Sombrero, Inc. v. Murphy* noted, "[i]t makes little sense for a court to first sever part of the case under Rule 20 [joinder], 'and only then find it has jurisdiction.'" 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015) (quoting *Perry*, 2013 WL 3354446 at *5).

Thus, contrary to Monsanto's assertions, in the absence of strong and convincing evidence of misjoinder, Rule 21 should not be used to create an otherwise lacking federal jurisdiction.

> With regard to [defendant's] request for the Court to use Rule 21 to sever or drop a party, the Court notes that **severance under this Rule is typically applied in cases originally brought in federal court**. It is questionable whether Rule 21 may be used when a case is removed or if it can be used to "create" federal jurisdiction. Arguably, **using Rule 21 in this manner would contravene Federal Rule of Civil Procedure 82 (warning against construing the Federal Rules of civil Procedure in a manner that extends or limits the jurisdiction of the district courts**).

*In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2014 WL 257831, at *2 n. 2 (S.D. Ill. Jan. 23, 2014) (emphasis added); *see also*, *Moore v. McKesson Corp.,* 2012 WL 5828718, at *2 (W.D. Wis. Nov. 16, 2012) ("Further, the court of appeals suggested that it would be inappropriate for a federal court to sever plaintiffs from a case in order to make the case removable in diversity."); *Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407, 410 (7th Cir.2000) ("Neither § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order

---

joined because their claims were based on different transactions or occurrences. That is not the case here. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) concerns claims by 137 plaintiffs against 25 different financial institutions with extreme factual disparities: "This case involves over 100 distinct loan transactions with many different lenders. These loans were secured by separate properties scattered across the country, and some of the properties, but not all, were sold in foreclosure."  Moreover, the case was removable under the Class Action Fairness Act (CAFA), an issue not present here. *See id*. at 871. Those decisions are inapposite here.

1    to make controversies removable.").

2        Courts in this Circuit have repeatedly rejected defendants' requests to create federal

3    jurisdiction by severing the cases. *See* e.g., *Lopez v. Pfeffer*, 2013 WL 5367723, at *5 (N.D. Cal.

4    Sept. 25, 2013) ("The Court will not sever claims when AMS has not established that it has federal

5    subject matter jurisdiction."); *Blasco v. Atrium Med. Corp.,* 2014 WL 12691051, at *4–5 (N.D. Cal.

6    Oct. 30, 2014) (refusing to "determine the severability of some of the claims in the complaint

7    without first determining the propriety of [its] own jurisdiction over the complaint"); *Hampton v.*

8    *Insys Therapeutics, Inc.,* 319 F. Supp. 3d 1204, 1213 (D. Nev. 2018) (declining to exercise

9    jurisdiction by severing plaintiffs' case and holding, "the undersigned declines to sanction its

10   'removing first and answering questions later' approach."). Monsanto's request for the Court to use

11   Rule 21 to sever Plaintiffs' cases as the sole basis of federal jurisdiction lacks both legal and factual

12   merit and should be rejected by this Court.

13   **III.    Removal Is Premature.**

14       Notwithstanding all the smoke and mirror created by Monsanto, the fact remains that

15   Plaintiffs' cases were joined when removed and Monsanto's removal was premature. In requesting

16   that the Court sanction its premature removal, Monsanto asks it to deviate from the Ninth Circuit's

17   guidance in that regard. "When an action is removed based on diversity, **complete diversity must**

18   **exist at removal**." *Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 773 (9th Cir. 1986). "As

19   a general rule, diversity jurisdiction requires complete diversity of citizenship both at the time the

20   action was commenced in state court and at the time of removal." *Strotek Corp. v. Air Transport*

21   *Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). That is clearly not the case here. Plaintiffs'

22   operative complaint both when the action was commenced **_and_** at the time of removal was devoid

23   of complete diversity. Premature removal is improper removal and should not be permitted.

24       "A party whose presence in the action would destroy diversity must be dropped formally, as

25   a matter of record, to permit removal, however." C. Wright, A. Miller & et al. 14C Fed. Prac. &

26   Proc. Juris. (Rev. 4th ed.) § 3723 *Removal Based on Diversity of Citizenship and Alienage*

27   *Jurisdiction*. Courts have repeatedly rejected premature removals as improper. *See Guerrero v.*

28   *General Motors Corp.*, 392 F. Supp. 2d 1133, 1135 (N.D. Cal. 2005) (remanding the case where

4

court approval of settlement agreements involving non-diverse defendant had not occurred); *Roberts v. A.W. Chesterton Co.*, 2008 WL 782569 at *2 (N.D. Cal. 2008) (ordering remand where court record did not establish all non-diverse defendants had been *formally* eliminated from state court action); *B.C. v. Blue Cross of Cal.,* 2012 WL 12782, *7 (C.D. Cal. Jan.3, 2012); *Universal Ins. Co. v. Hartford Fire Ins. Co*., 556 F. Supp. 2d 68 (D.P.R. 2008); *Saylor v. General Motors Corp*., 416 F. Supp. 1173, 1175 (E.D. Ky. 1976)  (removal was improper since the court order dismissing the resident defendant was interlocutory and there had been no final elimination of the resident defendant in the state court); *Dunkin v. A.W. Chesterson Co*., 2010 WL 1038200, at *3 (N.D. Cal. Mar. 19, 2010) ("Courts within this District have . . . ruled that a settlement is insufficient to confer removal jurisdiction where the formal dismissal of the non-diverse defendant has not yet been entered.").

In asking the Court to sanction its unwarranted conduct, Monsanto wants the Court to simply disregard Ninth Circuit's repeated admonitions regarding removal: "[R]emoval statutes are strictly construed against removal." *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).

Even if Judge Smith's CMO could be used as a basis for removability by severing the cases, *which it could not*, the cases were *never* severed. The fact that the deadline for severance may have been set by Judge Smith at June 30, 2019 as a courtesy extension to Plaintiffs, does by no means change that conclusion.  If anything, by its rush to remove, Monsanto kept the CMO from taking effect because the state court has now been divested of jurisdiction and is prohibited from proceeding any further with the case. 28 U.S.C. § 1446(d) (after removal, state courts "shall proceed no further unless and until the case is remanded").

Monsanto further claims that, "Plaintiffs would impose upon Monsanto the Hobson's choice of waiting for plaintiffs to comply with the JCCP Severance Order before filing its removal notices – and risk losing the important right of removal on timeliness grounds – or filing a removal notice earlier but not being permitted to rely on the JCCP Severance Order." Opp. at 14. That assertion is

5

bizarre. Monsanto's complained-about "Hobson's choice" is not imposed by Plaintiffs.  It is imposed by the weight of precedent in the Ninth Circuit. *Gould*, 790 F.2d at 773.  Monsanto's request that the Court disregard that precedent should be rejected.

### IV.   Monsanto Fails Its Burden of Proving Fraudulent Joinder Against Wilbur-Ellis Company.

Even in the unlikely event that the Court resolves the severance issue in Monsanto's favor, Monsanto still fails to meet its burden in proving that Wilbur-Ellis Company was fraudulently joined by Plaintiffs.[3] Monsanto has the heavy burden of establishing that Plaintiffs have *no possible claim* against Wilbur-Ellis Company.  "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).

"[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d 1039, 1046 (emphasis in the original).  "In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011).  "[T]he question is simply whether there is *any possibility* that plaintiff will be able to establish liability against the party in question." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 2:672 (The Rutter Group 1998) (citing *Lewis v. Time. Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979), *aff'd* 710 F.2d 549 (9th Cir.1983)); *see also Macey v. Allstate Prop. & Cas. Ins. Co.,* 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

Monsanto's sole basis for the claim of fraudulent joinder of Wilbur-Ellis Company by Plaintiffs who used Roundup for residential purposes is that this company distributes and sells

---

[3] If Monsanto is correct in characterizing the business activities of Wilbur-Ellis Feed, Plaintiffs admit that they do not have any colorable claims against that entity. However, that admission is contingent upon independent verification of those facts by Plaintiffs' Counsel.

6

Roundup products marketed for use by landscaping companies, golf courses, schools, or state and local government agencies. According to Monsanto, in their Fact Sheets, "Removed Plaintiffs state that they (or their decedents) used Roundup®-branded herbicides for personal/residential use and not for work-related reasons. Because neither of the in-forum defendants ever distributed Roundup®-branded herbicides for personal/residential use, the Removed Plaintiffs fail to state viable causes of action against those defendants." Opp. at 5 (internal citations omitted).

Thus, Monsanto is claiming, and is asking this Court to accept this as a fact, that none of those Plaintiffs could have obtained their Roundup product from an outlet covered by Wilbur-Ellis Company's business activity. Monsanto does not provide *any proof* in that regard, only a conclusion, based only on the premise that these Plaintiffs used Roundup for residential purposes.

The law on removal, however, requires much more than that. "Fraudulent joinder **must be proven by clear and convincing evidence,**" *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007) (emphasis added). "We have upheld such rulings [fraudulent joinder] where a defendant presents **extraordinarily strong evidence or arguments** that a plaintiff could not *possibly* prevail on her claims against the allegedly fraudulently joined defendant." *Grancare,* 889 F.3d at 548 (emphasis added).

Monsanto's general claims regarding Wilbur-Ellis Company's scope of distribution fail to meet this heavy burden. Moreover, all doubts, all disputed questions of fact, and any ambiguities in the controlling state law in that regard must be resolved in favor of the non-removing party. *See Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005 (N.D. Cal. 2001); *Gaus,* 980 F.2d at 566. Monsanto cannot prove that there is *no possibility* that Plaintiffs obtained the product from an outlet in Wilbur-Ellis's distribution network. Its general averments in that regard fail far short of the high threshold of proving fraudulent joinder.

## V.   Monsanto's Interpretation of the Voluntary-Involuntary Rule Is Incorrect.

Monsanto's efforts to insert artificial limitations into the voluntary-involuntary rule, mischaracterizes this rule and goes against the weight of precedent in the Ninth Circuit. The voluntary-involuntary rule has been applied to numerous cases involving various factual scenarios in this Circuit. *See e.g., Graybill-Bundgard v. Standard Ins. Co.,* 793 F. Supp. 2d 1117, 1119 (N.D.

Cal. 2011) ("Even if the order sustaining the [non-diverse defendant's] demurrer had been a final order for removal purposes, the dismissal was not a voluntary act by Plaintiff, and therefore under the voluntary/involuntary rule, the case was not removable."); *Busch v. Jakov Dulcich & Sons LLC*, 2015 WL 3792898, at *4 (N.D. Cal. June 17, 2015) ("In the instant case, Defendants have failed to identify any voluntary action by Plaintiff that would have converted a nonremovable case to a removable case"); *Sipl for Sipl v. United Ben. Life Ins. Co.*, 30 B.R. 40 (CD. Cal. 1983) (removal improper after discharge of claim against the non-diverse defendant in bankruptcy); *Beck v. Starbucks Corp.*, 2008 WL 4298575 (N.D. Cal. 2008) (removal improper after issuance of California Supreme Court decision establishing non-liability of non-diverse defendant).

The law in this Circuit is clear: "[O]nly a voluntary act by a plaintiff could create diversity removal jurisdiction where none existed from the complaint." *Gould*, 790 F.2d at 773. "[W]hen an event occurring after the filing of a complaint gives rise to federal jurisdiction, the ability of a defendant to remove is not automatic; instead, removability is governed by the "'voluntary/involuntary rule.'" *People of State of Cal. By & Through Lungren v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993). It is settled law that the "conversion [of a nonremovable case] *can only be accomplished* by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the *voluntary dismissal* or nonsuit by him of the party or of parties defendant." *Self v. Gen. Motors Corp.*, 588 F.2d 655, 659 (9th Cir. 1978) (emphasis added).

There is no question that Plaintiffs' Complaint, with its lack of complete diversity, did not give rise to federal jurisdiction. *See* Remand Motion, Ex. 1. And Monsanto cannot point to *any act* by Plaintiffs that can be construed as voluntarily creating such jurisdiction. Monsanto's attempts to evade this fact amounts to nothing more than smoke and mirrors.

### A. There Is No Restriction on the Application of the Voluntary-Involuntary Rule to Courts' Orders.

Monsanto's claim that voluntary-involuntary rule applies only to court orders that go to the merit of the case is meritless. Opp. at 15. In fact, this interpretation of the rule simply defies logic. In the scenario proposed by Monsanto, in the absence of a voluntary act by plaintiff, a final, on the merit decision by Judge Smith — for instance a summary judgment order dismissing the non-diverse

8

defendant, Wilbur-Ellis − *could not* render the case removable. ***But***, under this scenario*, an* interlocutory, procedural order by Judge Smith, such as the CMO in question here, would do that, notwithstanding a still glaring lack of a voluntary act by the Plaintiffs.  The absurdity of that result cannot be lost on Monsanto.

The crux of the voluntary-involuntary rule is whether a *voluntary act* by plaintiff (or lack thereof) gave rise to removability.

> [T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that **whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, In invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings** in the case as it progresses towards a conclusion. Thus, the determination of whether federal subject-matter jurisdiction exists depends only upon plaintiff's complaint and the context in which it is found.

*Self*, 588 F.2d at 658–59 (emphasis added).  It thus defies logic to claim that where, in the absence of a voluntary act by plaintiff, even a final, on the merits order of the court *cannot* create removability, an interlocutory order, issued on procedural grounds, *would accomplish* that feat.  This untenable position depletes the voluntary-involuntary rule of any meaning and goes against both the spirit and letter of the law in this Circuit and should be rejected by the Court.[4]

Interestingly, in support of its position, Monsanto quotes the U.S. Supreme Court *in Great N. Ry. Co. v. Alexander*, 246 U.S. 276 (1918). "As the Supreme Court has articulated the rule, a lawsuit that is not removable when commenced cannot be converted into a removable lawsuit 'by an order of the court upon any issue ***tried upon the merits***.'" Opp. at 15-16 (quoting *Alexander*, 246 U.S. at 282) (emphasis in original).  What Monsanto conveniently leaves out is the next clause of the sentence in that opinion, which directly contradicts the limitation it reads into the ruling: "***but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings*** in the case as it progresses towards a conclusion." 246 U.S. at 282 (emphasis added).[5]

_____

[4] The only case cited by Monsanto in support of its position, *Wade v. Johnson & Johnson*, 54 F. Supp. 3d 1247, 1250 (W.D. Okla. 2014) is devoid of any precedential authority on this Court and was not correctly decided.

[5] The full quote reads: "It is also settled that a case, arising under the laws of the United States, nonremovable on the complaint, when commenced, cannot be converted into a removable one by

9

Indeed the decisions of the U.S. Supreme Court make it clear that in addressing the voluntary-involuntary rule, the notion of a court's "decision on the merits" is used to set such ruling apart from a court's decision "on the question of jurisdiction"  and not — as Monsanto claims  — orders that do not go to the merits of the case. *See Whitcomb v. Smithson,* 175 U.S. 635, 638 (1900); *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.* 215 U.S. 246, 251 (1909). In *Whitcomb*, the Supreme Court found that the lower court's directed verdict in favor of the non-diverse defendants did not render the case removable, noting that: "This [the directed verdict] was **a ruling on the merits, and not a ruling on the question of jurisdiction**." 175 U.S. at 638 (emphasis added). Similarly, in *Lathrop*, in holding that in an action brought against a resident and a non-resident defendant, the dismissal of the resident defendant did not entitle the non-resident defendant to remove the cause to the federal court, the Court noted:

> The joint liability [of diverse and non-diverse defendants] was insisted on here to the close of the trial, and the nonliability of the railway company [non-diverse defendant] was ruled *in invitum*. . . . **This was a ruling on the merits, and not a ruling on the question of jurisdiction**. It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable, and thereby to enable the other defendants to prevent plaintiff from taking a verdict against them.'

215 U.S. at 251. Thus, the notion of a decision on the merits in *Whitcomb* and the line of cases that followed it, including *Self*, acts to distinguish such decisions from decisions made on "the question of jurisdiction," and not, as Monsanto claims, interlocutory, procedural decisions such as the CMO in question here.

Several decisions by this District Court confirm the conclusion that the voluntary-involuntary rule applies to Court orders irrespective of their finality or nature. For instance, in *Edsall v. Merck & Co., Inc.*, the court found that a state court's order severing plaintiffs' claims against the diverse defendant from those against the non-diverse co-defendants could not serve as a basis for removal: "As there is nothing in [defendant's] notice of removal to suggest that plaintiffs did anything to bring about the severance of their claims . . . the state court's order severing those claims

---

evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant."

cannot serve as a basis for removing plaintiffs' state court action " 2005 WL 1867730, at *3 (N.D. Cal. Aug. 4, 2005). Similarly, in a case involving a default judgement against the non-diverse defendant, the court held, "[t]he court finds that obtaining a default judgment against Daylight Construction, the local defendant, did not constitute a voluntary dismissal by plaintiff of the case against that defendant. Therefore, there is no diversity of citizenship." *City of S. Lake Tahoe v. Safeco*, 2000 WL 550050, at *1 (N.D. Cal. Apr. 26, 2000). The same result is warranted here.

### B. The Voluntary-Involuntary Rule Applies to All Cases Where Removability Is Not Created by A Voluntary Act of Plaintiff.

Fully aware that its removal violates the voluntary-involuntary rule, Monsanto tries to speciously limit the reach of this rule. It claims, "the voluntary-involuntary rule focuses on whether the plaintiff voluntarily dismissed one or more ***defendants*** whose presence in the lawsuit prevented removal," and claims that "[s]everance of different ***plaintiffs'*** claims therefore does not implicate the rule." Opp. at 16-17 (emphasis in original). That is a misrepresentation of the rule as explained by the Ninth Circuit, time and time again.   While an involuntary dismissal of a non-diverse ***defendant*** has been mentioned due to specific facts involved in a given case, a review of the Ninth Circuit cases in this regard show that the rule does indeed have a much broader scope.

The Ninth Circuit has held: "A complaint that is not initially removable due to the presence of a non-diverse defendant may become removable where diversity arises due to a plaintiff's 'voluntary action.'"  *Self*, 588 F.2d at 659. In *Self*, plaintiff brought a suit in state court against two defendants, a diverse defendant (General Motors) and a non-diverse defendant. After a trial and final judgment against both defendants, General Motors was granted a new trial. *Id.*  General Motors removed the case to federal court, claiming that because of the final judgment against the non-diverse defendant, there was complete diversity in the case at that point. The Ninth Circuit disagreed. It held that a case could become removable **"**only . . . by the voluntary amendment of pleadings by the plaintiff **or**, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant." *Id.* at 659 (internal citations omitted) (emphasis added). The inclusion of the term "**or**" between the two clauses in the above statement leaves no doubt that "the voluntary dismissal or non-suit of defendants" is **only**

**one of the scenarios** in which the voluntary-involuntary rule is implicated.

The Ninth Circuit has reaffirmed its holding in *Self* in later cases.  *See Gould*, 790 F.2d 769 ("In *Self v. General Motors,* we discussed the rule that only a voluntary act by a plaintiff could create diversity removal jurisdiction where none existed from the complaint."); *Keating*, 986 F.2d 346.  In *Keating*, the court observed that, "this case was transformed into an action 'arising under' federal law not by the voluntary action of the plaintiff, but instead by action of a defendant." 986 F.2d at 348.  In finding the removal improper, the court held, "[s]ince a voluntary act by the plaintiff has not rendered the case removable, it must remain in state court." *Id*.  Thus, while the factual scenarios in cases may have differed, the voluntary-involuntary rule, as elucidated by the Ninth Circuit, is both a clear *and* a general one. The limitations Monsanto tries to insert into it are meritless.

"The dispositive fact in the court's view [in *Self*] was that the non-diverse defendant remained a formal party to the case at the time of removal: whether a case becomes removable depends 'solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion.'" *Price trustee of Vivian Price Family Tr. v. AMCO Ins. Co.,* 2017 WL 4511062, at *2 (E.D. Cal. Oct. 10, 2017) (quoting *Self*, 588 F.2d at 659).  There is no question that the non-diverse Defendants in this case, the Wilbur-Ellis entities, remained "formal parties to the case at the time of removal." *Id*. Removal in this case violates the voluntary-involuntary rule.

### C. Cases Relied Upon by Monsanto Have No Precedential Authority and Are Distinguishable on Facts.

In the face of overwhelming precedent to the contrary, Monsanto offers only two cases in support of its claim that removal of the present case does not violate the voluntary-involuntary rule. Neither of those two cases, one from the Central District of California, and the other from the Western District of Oklahoma have any precedential authority in this case. Moreover, even if the two cases presented binding authority, there are substantial differences in the factual scenarios leading to removal between those cases and the case at hand that foreclose any applicability of those decisions in the present case.

In both cases, the remand motions were granted on the defendants' second attempt at removal. *In re Johnson & Johnson Cases*, 2015 WL 5050543 (C.D. Cal. Aug. 24, 2015); *Wade*, 54 F. Supp. at 1248.  In both cases, which included plaintiffs from various states, complete diversity was lacking due to the presence of some plaintiffs who were non-diverse from defendants. In both cases, defendants initially attempted to remove the cases of still-joined plaintiffs to federal court on the basis of misjoinder, asking the district courts to sever the plaintiffs' cases and retain jurisdiction. That request was **rejected** in both cases, and the cases were remanded. In *Wade,* the remand was affirmed by the Tenth Circuit. *Parson, et al. v. Johnson & Johnson, et al.,* 749 F.3d 879 (10th Cir.2014).  It was only *after* severance of the cases by the state court per the defendant's motion in *Jonson & Johnson*, and dismissal of non-Oklahoma plaintiffs including the non-diverse plaintiffs, for lack of **personal** jurisdiction, by the state court in *Wade* that defendants were able to successfully remove these cases. *Johnson & Johnson*, 2015 WL 5050543, at *1; *Wade*, 54 F. Supp. 3d at, 1248–49.

To begin with, both *Johnson & Johnson* and *Wade* decisions stand in stark opposition to the Supreme Court's statement in *Alexander* where the Court held that:

> [I]n the absence of a fraudulent purpose to defeat removal, **the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case** . . . **when it is commenced**, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case nonremovable when commenced shall afterwards become removable depends . . . solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case.

246 U.S. at 282 (emphasis added).  When plaintiffs decide to join their cases to avoid removability, this admonition applies with the same force to all those plaintiffs, and not just the group for whom federal jurisdiction *would not have been an option* from the start. Furthermore, the decisions by the *Johnson & Johnson* and *Wade* courts disregard an essential tenet of removal jurisprudence: that all doubts with regard to removability should be resolved in the favor of remand and against removal. *Gaus,* 980 F.2d at 566. By going beyond the allegations in plaintiffs' original complaint, the court in *Johnson & Johnson* disregards the Ninth Circuit's guidance in *Self*: "Thus, the determination of whether federal subject-matter jurisdiction exists depends only upon plaintiff's complaint and the context in which it is found." 588 F.2d at 659.

13

Second, in both *Johnson & Johnson* and *Wade* plaintiffs were from different states, including some who were non-diverse from defendants. Thus, severance of plaintiffs' cases automatically led to creation of diversity between diverse plaintiffs and defendants. That is not the case here. In this case, Monsanto claims fraudulent joinder by Plaintiffs, all California residents, of Wilbur-Ellis. However, as noted *supra* in **Section IV**, even if Plaintiffs' cases are severed, proving fraudulent joinder of Wilbur-Ellis Company is a heavy burden that Monsanto fails to meet.

And finally, there is an even more glaring difference between the present case and *Johnson & Johnson*, the case mainly relied upon by Monsanto. 2015 WL 5050543. In *Johnson & Johnson*, the court ruled on removal for the second time *after* the case was **officially severed** into individual cases in the state court, with each given their own case numbers. "On June 22, 2015, [defendant's] motion to sever was granted [by the state court]. [Plaintiffs' case] was severed into 67 separate actions. Upon severance of the claims into individual actions, the 64 actions that did not have a plaintiff from New Jersey were removed to this Court." *Id*. at *1.

Contrary to that situation, Plaintiffs' cases here **remain joined**, and complete diversity is lacking in the case as it stands. Thus, unlike the situation in *Johnson & Johnson*, the only way for this Court to exercise jurisdiction is to find that these cases are misjoined and sever them as Monsanto requests. **That is what courts in both *Johnson & Johnson* and *Wade* refused to do when defendants first removed the cases**, as they correctly found that severance by the federal court was improper. Therefore, if anything, in its current posture, the present case resembles the factual scenario of both those cases following their first removal when the cases were remanded. That is why in a similar situation, the court in *Mullin v. Gen. Motors LL,* correctly rejected the removal as improper and remanded the case. 2016 WL 94235, at *3-4 (C.D. Cal. Jan. 7, 2016). The same outcome is warranted here.

## VI.    Monsanto's Argument regarding Doe Defendants' Citizenship Misses the Point.

Monsanto's arguments regarding the "Doe Defendants" named in Plaintiffs' original Complaint attack a strawman, as at least one Doe Defendant has now been identified in the JCCP Master Complaint. As noted in the Remand Motion, the Doe Defendants are not hypothetical. Plaintiffs named Doe Defendants in their complaint out of necessity because they are not privy to

14

most of the relevant information regarding Monsanto's network of collaborators, marketers, and distributors of Roundup products in California. That information is solely in Monsanto's control. However, what Monsanto fails to acknowledge in its Opposition is the fact that, as noted in the Remand Motion, in the Master Complaint, being prepared per Judge Smith's January 25, 2019 CMO in the JCCP, at least one of the Doe Defendants has been identified as Chevron Corporation, a California resident. *See* Remand Motion, Ex. 4.  Thus, there is no reason for the Court to disregard the citizenship of this Defendant.

Indeed, the Master Complaint, to be filed per Judge Smith's CMO, precludes Monsanto's argument that severance of Plaintiffs in the JCCP per the CMO creates individual *removable* cases, as each severed case would be re-filed with an operative Master Complaint naming not only Wilbur Ellis, but Chevron, two non-diverse Defendants. This fact further refutes any claim Monsanto might have regarding the removability of these cases pursuant to Judge Smith's CMO.

Monsanto's arguments in its Removal Notice and its Opposition fail the burden of establishing federal jurisdiction. The removal of this case was both premature *and* improper.  The Court should remand this case in accordance with the guidelines set forth by the Ninth Circuit. *Gaus* 980 F.2d at 566.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Remand.

Dated:  May 15, 2019

**THE MILLER FIRM, LLC**

By:  */s/ Brian K Brake*
Brian K. Brake (pro hac vice)
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel : (540) 672-4224
Fax : (540) 672-3055
Email : bbrake@millerfirmllc.com
Attorneys for Plaintiffs

15