**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, Colorado 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, New York 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
Email: rgreenwald@weitzlux.com

**THE MILLER FIRM LLC**
Michael J. Miller
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Daniel Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington DC  20001-3743
Tel: (202) 942-6216

*Attorneys for Defendant*
*MONSANTO COMPANY*
(Additional Counsel Listed Below)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This document relates to:<br>ALL ACTIONS<br><br>_____ | ) MDL No. 2741<br>)<br>) Case No. 3:16-md-02741-VC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT CASE MANAGEMENT STATEMENT

Pursuant to Pretrial Order ("PTO") No. 141, the parties submit this joint case management statement in advance of the May 22, 2019 Case Management Conference.

## I.   REMAND PLANS

### A.   Plaintiffs' Proposal

**Plaintiffs' Proposal for a Three-Step Consolidation and Remand Process Advances the Orderly and Efficient Administration of this Litigation.**

1. ***Step 1**: California Consolidations and Remands.*
2. ***Step 2**: Ninth Circuit Consolidations and Remands.*
3. ***Step 3**: Eastern District of Missouri Remand Plan.*

*Consolidation is Proper.*

The Court should consolidate California and other Ninth Circuit cases as set forth below and remand them for trial. Here, consolidated trials are proper and timely. "Rule 42 permits consolidation and a single trial of several cases on the court's docket, or of issues within those cases…" 9A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 2381 (3d. ed. 2008) Rule 42(a) provides the following:

> **(a) Consolidation.**  If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in   the   actions;   (2)   consolidate   the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

The district court enjoys broad discretion under Rule 42 to consolidate cases pending in the same district.  *Bower v. Wright Med. Tech. Inc.*, No. 217CV03178CASKSX, 2018 WL 294521, at *2 (C.D. Cal. Jan. 3, 2018); *Investors Research Co. v. United States District Court for the Central District of California,* 877 F.2d 777 (9thCir. 1989); *Imran v. Vital Pharm., Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *9 (N.D. Cal. Apr. 5, 2019); *Arnold v. E. Air Lines, Inc.* 681 F.2d 186, 192 (4th Cir. 1982) ("The decision whether to sever or to consolidate whole actions or sub-units for trial is necessarily committed to trial court discretion."); *Henderson v. United States*, No. 6:07-cv-00009, 2008 WL 1711404, at *5 (W.D.

- 2 -

1

2

Va. Apr. 11, 2008) ("The decision to consolidate is committed to Court's discretion and consolidation may be initiated *sua sponte*.").

3

4

5

6

7

8

9

10

11

In determining whether to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc*., 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Sw. Marine, Inc. v. Triple A Machine Shop, Inc*., 720 F. Supp. 805, 806-07 (N.D. Cal. 1989)); *see also Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

"In determining whether to consolidate, a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Ferguson Corinthian Colleges Inc*., No. 11-cv-0127-DOC, 2011 WL 1519352, at *2 (C.D. Cal. Apr. 15, 2011) (quotation marks omitted); *see also Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause"). "[T]ypically, consolidation is favored." *Ho Keung Tse v. Apple, Inc*., No. 12-cv02653-SBA, 2013 WL 451639, at *3 (N.D. Cal. Feb. 5, 2013). Generally, under Rule 42(a), when two causes of action involve common witnesses, identical evidence and similar issues, judicial economy will generally favor consolidation.  *See, Johnson v. Celotex Corp.,* 899 F. 2d 1281, 1284-85 (2d. Cir. 1990).  Consolidation of actions involving common questions of law and fact also avoids the risk of inconsistent judgments. *Switzenbaum v. Orbital Scic Corp*., 187 F.R.D. 246, 248 (E.D. Va. 1999).

28

1

2        In this MDL, all plaintiffs have one disease – NHL.  While not an exclusive list, the vast

3   majority of the issues relevant to all cases involve the same questions of law and principally

4   the same issues of fact, including (1) all plaintiffs used Roundup made by the single defendant

5   – Monsanto; (2) all plaintiffs allege their NHL was caused by their Roundup use; (3)

6   glyphosate is the active ingredient in all of the Roundup products plaintiffs used; (4) all

7   plaintiffs allege that Monsanto failed to warn them of the risks of using Roundup without

8   adequate protection; and (5) Monsanto has admitted it never warned any consumer that

9   exposure to Roundup can cause cancer.  The MDL cases involve identical evidence, common

10  witnesses, and similar issues; consolidation favors judicial economy.  The Fourth Circuit

11  recently held that the vaginal mesh MDL Court, "was well within its discretion in

12  consolidating [] four cases for trial. To hold otherwise would be to sacrifice the substantial

13  savings of time and money that consolidation offers. Both plaintiffs and defendants benefit

14  from lessened litigation costs and the reduced need for expert testimony. Witnesses benefit

15  from reduced demands on their time by limiting the need for them to provide repetitive

16  testimony. The community as a whole benefits from reduced demands on its resources,

17  including reduced demand for jurors. The judicial system benefits from the freedom

18  consolidation affords judges to conscientiously resolve other pending cases." *See*, **Exhibit E**,

19  *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70 (4th Cir. 2018).

20      In  MDL  2326,  *In Re Boston Scientific Corporation Pelvic Repair System Products*

21  *Liability  Litigation*,  the  Honorable  Judge  Goodwin  (Southern  District  of  West  Virginia)

22  consolidated eleven (11) West Virginia residents for one trial ("Tyree trial") and five (5) Florida

23  residents for another trial ("Eghnayem trial") – both trials to commence on the same day.  See,

24  **Exhibits A & B**.  The day before jury selection began for both trials, Judge Goodwin transferred

25

26

27

28
- 4 -

the *Tyree* trial from MDL 2326 to Judge Irene C. Berger in the Southern District of West Virginia and the Eghnayem trial to the Southern District of Florida. Judge Goodwin traveled to Miami and conducted the consolidated Eghnayem trial pursuant to an inter-circuit transfer. See, **Exhibits C & D.** Both consolidated cases were tried to verdict, and the Fourth and Eleventh Circuits, respectively, upheld the decision to consolidate the cases. See, **Exhibits E & F**.

### *Step 1: California Consolidations and Remands.*

The Court should begin the process of remanding cases to the jurisdictions where they can be tried. Plaintiffs suggest an orderly remand process, with the first set of cases to be remanded being (1) cases filed in other federal districts in California and (2) cases filed in districts within the Ninth Circuit Court of Appeals. These cases are fully ready for remand now. Regarding federal California cases, this Court and other California state courts have already done the majority of the work necessary before remand. There are now three verdicts rendered in California cases, all based on California law. Thus, judges in California district courts not only have the benefit of this Court's *Daubert* and summary judgment rulings but they also have relevant jury instructions and other pretrial materials.

Plaintiffs specifically propose the following remand plan for the remaining California cases:

1. ***Stevick v. Monsanto* is trial ready**. 3:16-cv-02341-VC. Ms. Stevick is properly venued in the Northern District of California and is represented by MDL Co-Lead Mike Miller. Plaintiffs request an immediate trial date.

2. ***Giglio v. Monsanto,* 3:16-cv-05658-VC.** Mr. Giglio is dying from his cancer and has filed three requests for a trial date, the most recent on April 15, 2019. ECF. 75. Pursuant to PTO 71, Mr. Giglio has been deposed and his case is ready for discovery to commence. Mr. Giglio's case was filed in the Southern District of California and is believed to be the second oldest case in the country. Mr. Giglio has consented to trial in the Northern District of California. Mr. Giglio is represented by MDL Co-Lead Aimee Wagstaff, and Plaintiffs request a trial date for Mr. Giglio within 90 days.

3. **Central District of California.** There are ten (10) MDL 2741 cases pending in the Central District of California:

    a. *Teri McCall v. Monsanto* (2:16-cv-01609);
    b. *Ines Hernandez* v. Monsanto (2:16-cv-01988);
    c. *Peter Johansing v. Monsanto* (2:16-cv-05035);
    d. *John D. Sanders v. Monsanto* (5:16-cv-00726);
    e. *Matteo Russo v. Monsanto* (2:16-cv-07386);
    f. *Goldie Perkins v. Monsanto* (8:15-cv-01410);
    g. *Karen Wooten v. Monsanto* (5:17-cv-00477);
    h. *William R. Malin v. Monsanto* (5:18-cv-00052);
    i. *Armando Vargas Chavez v. Monsanto* (2:18-cv-05970); and
    j. *Jerald Carriere v. Monsanto* (2:18-cv-07604).

Plaintiffs request these ten (10) cases be consolidated, set for trial, and remanded to the Central District of California for trial.

4. **Eastern District of California.** There are two (2) MDL 2741 case pending in the Eastern District of California:

    a. *Yolanda Mendoza v. Monsanto* (1:16-cv-00406); and
    b. *Paul Galvan v. Monsanto* (2:17-cv-00208).

Plaintiffs request these two (2) cases be consolidated, set for trial, and remanded to the Eastern District of California for trial.

5. **Southern District of California.** Other than the *Giglio* case referenced above, there are two (2) MDL 2741 cases pending in the Southern District of California:

    a. *Anthony Harris v. Monsanto* (3:16-cv-02275); and
    b. *Rubin Hernandez v. Monsanto* (3:17-cv-02009-CAB-JLB).

Plaintiffs request these two (2) cases be consolidated, set for trial, and remanded to the Southern District of California for trial.

### ***Step 2**: Ninth Circuit Consolidations and Remands.*

Other cases before this Court filed in states within the Ninth Circuit also should be remanded, immediately following remand of the California cases, for many of the same reasons.   The Ninth Circuit cases are the most advanced. Indeed, at Monsanto's request, this MDL spent almost 2 years on general causation *Daubert* issues that this Court analyzed according to Ninth Circuit precedent. The *Hardeman* case was also tried to verdict before this

Court, and thus the issues that arose during that trial were decided according to Ninth Circuit law.  What is more, approximately 27.5% of the MDL lawsuits are Ninth Circuit cases (second only to the Eighth Circuit which has 45% of the MDL lawsuits, primarily because Monsanto's home venue – Eastern District of Missouri – has 364 lawsuits).  Finally, Monsanto requested this MDL to be situated in the Ninth Circuit, and it has refused to waive *Lexicon* or otherwise try non-Northern District of California cases in this Court.

Based on the March 2019 MDL Participating case list, the MDL breakdown by Circuit generally and Ninth Circuit specifically is as attached hereto as **Exhibit G.**  Plaintiffs propose the following remand schedule for the Ninth Circuit cases:

6.  **District of Hawaii**. There are two (2) MDL 2741 cases pending in the District of Hawaii:

    a.  *Christine Sheppard v. Monsanto* (1:16-cv-00043); and
    b.  *Aaron Johnson v. Monsanto* (1:16-cv-00075).

Plaintiffs request these two (2) cases be consolidated and remanded to the District of Hawaii for trial.

7.  **District of Idaho**. There are two (2) MDL 2741 cases pending in the District of Idaho:

    a.  *Lynda Wolters v. Monsanto* (1:17-cv-00078-BLW); and
    b.  *Arnold Borreson v. Monsanto* (1:18-cv-00442).

Plaintiffs request these two (2) cases be consolidated and remanded to the District of Idaho for trial.

8.  **District of Montana**. There are three (3) MDL 2741 cases pending in the District of Montana:

    a.  *Robert Sobrepena v. Monsanto* (2:18-cv-00027);
    b.  *Patricka Poythress v. Monsanto* (4:18-cv-00099); and
    c.  *Bartholomew Cesaro v. Monsanto* (9:18-cv-00129).

Plaintiffs request these three (3) cases be consolidated and remanded to the District of Montana for trial.

- 7 -

9. **District of Oregon**. There are two (2) MDL 2741 cases pending in the District of Oregon:

    a. *Phillip Skundrick v. Monsanto* (1:17-cv-01887); and
    b. *Aileen Trappen v. Monsanto* (3:18-cv-00526).

Plaintiffs request these two (2) cases be consolidated and remanded to the District of Oregon

for trial.

10. **Eastern District of Washington**. There are two (2) MDL 2741 cases pending in the Eastern District of Washington:

    a. *Janice Hubson v. Monsanto* (1:18-cv-03119); and
    b. *Klaus v. Monsanto* (2:18-cv-00335).

Plaintiffs request these two (2) cases be consolidated and  remanded to the Eastern District

of Washington for trial.

11. **Western District of Washington**. There are twelve (12) MDL 2741 cases pending in the Western District of Washington:

    a. *William White v. Monsanto* (3:16-cv-05756);
    b. *Kenneth Braasch v. Monsanto* (3:18-cv-05538);
    c. *Gordon A. Monten, Jr. v. Monsanto* (3:18-cv-05539);
    d. *Ceceilia Ayon v. Monsanto* (2:19-cv-00187);
    e. *J.Y. Cash v. Monsanto* (2:18-cv-01000)
    f. *Christiansen v. Monsanto (2:19-cv-00443)*
    g. *Cohen v. Monsanto (2:19-cv-00459);*
    h. *Delsur v. Monsanto (2:19-cv-00461);*
    i. *Liggins v. Monsanto (2:19-cv-00264);*
    j. *Mazzeo v. Monsanto (2:19-cv-00504)*
    k. *Tierney v. Monsanto (2:19-cv-00245); and*
    l. *White v. Monsanto (3:16-cv-05756.*

Plaintiffs request these twelve (12) cases be consolidated and remanded to the Western

District of Washington for trial.  Monsanto's counsel advised undersigned that the *Monten v.*

*Monsanto* case may have been dismissed.

12. **District of Arizona.** There are almost two hundred MDL 2741 cases pending in the District of Arizona. Plaintiffs request that the 15 oldest cases be consolidated and remanded to the District of Arizona for trial. Those 15 cases are:

a. *Camarena v. Monsanto* (3:17-cv-04264);
b. *Anderson v. Monsanto* (3:17-cv-04265);
c. *Andrews, et. al. v. Monsanto* (3:17-cv-04266);
d. *Bauman et. al. v. Monsanto* (3: -cv- 04268);
e. *Benenati v. Monsanto* (3:17-cv-04269);
f. *Bothof et. al. v. Monsanto* (3:17-cv-04271);
g. *Beste v. Monsanto* (3:17-cv-04272);
h. *Dourisseau et. al. v. Monsanto* (3:17-cv-04274);
i. *Carlucci v. Monsanto* (3:17-cv-04276);
j. *Goularte et. al. v. Monsanto* (3:17-cv-04281);
k. *Gruenhagen et. al. v. Monsanto* (3:17-cv- 04282);
l. *Henderson v. Monsanto* (3:17-cv-04284);
m. *Johnson et. al. v. Monsanto* (3:17-cv-04286);
n. *Jolly v. Monsanto* (3:17-cv-04287); and
o. *Kilmek v. Monsanto* (3:17-cv-04267).

### *Step 3: Eastern District of Missouri Remand Plan.*[1]

Simultaneously with the remand of all of the above cases, the Court should schedule a hearing to discuss what, if anything, the MDL court should decide before remanding cases filed in any federal district in the state of Missouri.  Before the end of 2019, there will have been at least three Roundup cases tried in Missouri state court.  Missouri state court follows *Daubert*. Thus, by the time the Missouri federal cases are remanded to their home jurisdiction and plaintiff specific discovery is complete, the state court will have ruled on *Daubert*, summary judgment and jury instructions that apply to these cases.

### B.    Monsanto's Proposal

As detailed further below, Monsanto's proposal is to remand groups of 50 cases back to their home districts on a "first-in, first-out" basis.  This commonly-used "FIFO" approach is fair and efficient, and will help ensure remand of a sufficient number of representative cases to evaluate the litigation properly.  Further, Monsanto submits that remands should occur after

---

[1] Plaintiffs expressly reserve their arguments in favor of, and do not seek to wave any argument in favor of, consolidation in the Eastern District of Missouri or elsewhere.

1    case-specific discovery is complete, but before case-specific motions are resolved.  This

2    approach is consistent with the general purpose of an MDL: centralizing discovery and

3    resolving litigation-wide questions (such as general causation) before transferring cases back

4    to their original jurisdictions for further proceedings.

5          Plaintiffs' proposal, by contrast, would not materially advance the litigation.  An initial

6    remand phase consisting only of California cases would serve little informational purpose

7    given that there have already been three verdicts from the Northern California Bay Area.

8    Suggesting that the next groups of cases be remanded only to the Ninth and Eighth Circuits—

9    where consolidated state-court proceedings are already well underway—likewise ignores the

10   need for representative cases from the diversity of jurisdictions that compose the MDL.

11        1.   <u>Remanding cases from a variety of different jurisdictions will help move this</u>
12             <u>litigation forward.</u>

13         The parties have received three jury verdicts from the Northern California Bay Area

14   and multiple rounds of general and case-specific motions have been decided under Ninth

15   Circuit *Daubert* law and California state law.  Therefore, the parties have ample information

16   about the value of the California cases in the MDL, as well as how the issues in the litigation

17   are perceived by California jurors and judges.  The MDL, however, comprises 66 jurisdictions,

18   including some with dozens of cases.  Moving the litigation forward requires obtaining

19   information from proceedings in these myriad other jurisdictions.

20         The need for a diversity of law and trial jurisdictions in serial litigation is well

21   recognized.  One purpose of early trials is to "produce a sufficient number of representative

22   verdicts" to "enable the parties and the court to determine the nature and strength of the

23   claims, whether they can be fairly developed and litigated on a group basis, and what range of

24   values the cases may have if resolution is attempted on a group basis."  Manual for Complex

25   Litigation (Fourth) § 22.315 (2004).  Representative verdicts and legal decisions must be just

26   that—representative of the broader group of all pending cases, not a microcosm of verdicts

27   and decisions from one locale.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-

28

- 10 -

md-2087 BTM(KSC), 2012 WL 3637278, at *3 (S.D. Cal. Aug. 21, 2012) (early trial cases must be "representative" of the larger group of cases pending in MDL).[2]  It therefore follows that the verdicts and decisions of cases remanded from an MDL cannot simply come from one jurisdiction.  As one MDL court noted, it is "critical" to a successful early trial case plan "that an honest representative sampling of cases be achieved."  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practice & Prods. Liab. Litig.*, MDL No. 2100, 2010 U.S. Dist. LEXIS 108107, at *4, *6-7 (S.D. Ill. Oct. 8, 2010).

    2.  <u>The Court should remand cases in groups of 50 based on a "first in, first out" method of selection upon completion of all case-specific discovery but before resolution of case-specific *Daubert* and other motions.</u>

Monsanto proposes that the Court remand cases in staggered waves of 50 cases based on earliest date of filing (i.e., "first in, first out" or "FIFO") immediately upon completion of all case-specific discovery according to a schedule set by this Court.

First, a 50-case remand group (which here would include 55 plaintiffs because a few of the cases include multiple plaintiffs) is within the range typically seen in MDLs.  *See, e.g.*, MDL Pretrial Order for Remanded Cases and Suggestion of Remand, *In re: Prempro Prods. Liab. Litig.*, MDL No. 1507, ECF No. 2208 (E.D. Ark. Feb. 23, 2010) (suggesting remand of cases in groups of approximately 10-130 cases); Pretrial Order No. 1824, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, ECF No. 151571 (E.D. Pa. July 27, 1999) (suggesting remand of cases in groups of approximately 7-100+ cases).  Remanding groups of 50 cases also strikes the balance between not overwhelming transferor courts by having dozens or hundreds of cases returned at the same time, while still allowing the litigation to progress at an efficient and steady pace.

---

[2] *See also, e.g.*, Case Mgmt. Order No. 20, *In re E.I. Du Pont De Nemours*, MDL No. 2433, 204 F. Supp. 3d 962, 968 (S.D. Ohio Aug. 30, 2016) (noting that initial trial cases were selected "for a special purpose that all parties and this Court recognized—information gathering that would facilitate valuation of cases to assist in global settlement"); *In re General Motors LLC Ignition Switch Litig.*, MDL No. 2543, 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) (noting that the "primary purpose" of initial trial cases "is to provide data points for settlement discussions with respect to the universe of cases" and the process should not allow selection of cases "likely to result in victory for one side or the other").

1    Second, remanding cases on a FIFO basis is one of the most common remand options

2    suggested by transferee judges.  *See*, *e.g.*, Pretrial Order No. 206, *In re Ethicon, Inc. Pelvic*

3    *Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, ECF No. 1790 (S.D.W. Va. Nov. 20, 2015

4    (setting pretrial schedule for a first "wave" of 200 of the oldest cases in the MDL to be

5    prepared first for trial and remand); Order, *In re Fosamax Prods. Liab. Litig.*, MDL No. 1789,

6    ECF No. 1473 (S.D.N.Y. Oct. 3, 2013) (ordering remand of oldest cases first); Pretrial Order

7    No. 1120, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, ECF No. 150858

8    (E.D. Pa. Oct. 21, 1997) (noting that the Court "will soon suggest to the Judicial Panel on

9    Multidistrict Litigation a remand to transferor courts of a substantial number of cases" and that

10   "the oldest cases will be suggested for remand first with later filed cases to follow"); Order

11   No. 22 and Suggestion for Remand, *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*

12   (No. II), MDL No. 865, ECF No. 716 (D.S.C. Jan. 7, 1993) (remanding cases in six waves

13   "chronologically in the order their transfer was received in this court").

14        The FIFO principle makes good sense.  It is efficient to implement—each complaint

15   has an initial filing date that can be easily tracked by the Court and the parties.  It is

16   evenhanded and fair, resulting in a cross-section of MDL cases from different jurisdictions

17   without regard for either party's perceived "favorites."  FIFO also helps correct for the

18   imbalance in discovery that currently exists.  Even with the completion of a fact sheet by each

19   plaintiff, Plaintiffs' counsel have far more information than Monsanto about specific plaintiffs'

20   medical conditions and exposure.  That said, it is notable that Monsanto's proposal would fold

21   in 10 cases into the first remand group that are also in Plaintiffs' proposal, including *Giglio*.[3]

22        Third, completing case-specific discovery in the MDL before remand is a commonly-

23   used practice that promotes efficiencies in discovery, one of the main reasons cases are

24   centralized in the first instance.  *See In re Nuvaring Prods. Liab. Litig.*, MDL No. 1964, 2009

25   WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009) ("The primary purpose behind assigning

26

27   [3] Cases on Plaintiffs' proposed remand list that would be included in Monsanto's proposed
     initial FIFO wave of 50 cases include *Giglio*, *McCall*, *Hernandez, Johansing*, *Sanders*, *Matteo*
28   *Russo*, *Perkins*, *Wooten*, *Mendoza*, and *Harris*.

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery.") (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997)); *accord Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998) ("[W]hen the deposition and discovery is completed, then the original litigation is remanded to the transferor district for the trial.") (quoting legislative history of 28 U.S.C. § 1407).  Although cases in some other MDLs have been remanded for case-specific discovery, Monsanto notes that this Court's experience and expertise in managing those issues is of great benefit to the parties and should continue.

Fourth, and finally, Monsanto respectfully submits that the proper path forward is to remand cases before case-specific pretrial motions are resolved.  It is common MDL practice for cases to be remanded to transferor courts after discovery and resolution of cross-cutting "generic" issues, but prior to resolution of case-specific pretrial or dispositive motions.  For example, in *In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. MDL 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998), cases were remanded after resolution of "case-wide issues," including fact discovery on liability and damages, as well as all discovery on "generic experts."  *Id.* at *6; *id.* at *1 ("[T]he court has generally considered only case-wide motions and has reserved case-specific motions for disposition by the various transferor courts."); *id. at* *9 (finding expert qualified to render opinions in the field of orthopedics but that "the 'finer' determinations concerning which of [an expert's] opinions are subject to inclusion or exclusion are more appropriately made by the ultimate trial court after remand or transfer") (internal quotations omitted).  Similarly, in *In re Meridia Products Liability Litigation*, the Sixth Circuit limited its inquiry in the MDL court to general causation.  *See* 328 F. Supp. 2d 791, 799 (N.D. Ohio 2004), *aff'd sub nom. Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. 2006), ("Indeed, other MDL cases have reserved specific causation questions to cases that are remanded.").  An MDL judge from the Northern District of California likewise suggested remand of cases after *Daubert* motions that pertained to experts common to all cases in the MDL:

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

1
2
3
4

> The Court concludes that the purposes behind consolidating these related actions in this Court have now been served.  The Court has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding, including *Daubert* motions involving experts common to the cases to be tried in this Court and the cases that will be remanded.  No further pretrial motions raising common questions are pending in these three cases, and remand to the transferor court appears to be in the interest of judicial efficiency.

5
6
7
8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2014 WL 4729556, at *1 (N.D. Cal. Sept. 22, 2014).  Several other recent MDLs have remanded cases so that case-specific motions, including case-specific *Daubert* and other dispositive motions, occur after remand.[4]

9
10
11
12
13
14
15
16
17

   As MDL courts have recognized, it is especially appropriate to remand the issue of specific causation to the transferor courts.  *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 165 (2d Cir. 1987) ("By its nature, specific causation is not common to all plaintiffs.  Rather, it involves a determination [that] is highly individualistic, and depends upon the characteristics of individual plaintiffs.") (internal quotations omitted); *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, 2004 WL 2034587, at *1-2 (W.D. Wash. Sept. 3, 2004) (noting that making "case-specific rulings are neither the purpose, nor the forte, of a court presiding over a multi-district litigation" and that "the transferee court typically does not rule on cumbersome, case-specific legal issues").[5]

18
19
20
21
22

---

[4] *See, e.g.*, *In re Levaquin Prods. Liab. Litig.*, MDL No. 1943, 2014 WL 11395078, at *11–12 (D. Minn. Nov. 21, 2014) (explaining that cases where plaintiffs "completed generic discovery of Defendants" were ripe for remand because the cases "will require case-specific depositions of the plaintiff, treating physician(s), case-specific expert designations, and pretrial motions, all of which can be addressed by the transferor courts.  Certain other case-specific issues are addressed below.").

23
24
25
26
27
28

[5] *See also*, *e.g.*, *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000) ("Clearly, the Panel has the discretion to remand a case when everything that remains to be done is case-specific. This does not mean that consolidated proceedings have concluded at the point that only case-specific proceedings remain; rather, the court can at that point exercise its discretion to remand 'before the conclusion of pretrial proceedings.'") (citing 28 U.S.C. § 1407(a)); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Our experience from the *PPA* litigation is that a single judge can resolve collective issues expeditiously and, then, suggest Section 1407 remand of actions to transferor courts for more individual discovery and trial, if necessary.").

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

1    Remanding the cases prior to resolution of case-specific motions makes particularly

2    good sense in this litigation.  Many of the case-specific motions for summary judgment will

3    turn on the particulars of state law.  *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685,

4    699 n.12 (9th Cir. 2011) ("[A] transferee federal court . . . applies the substantive state law,

5    including choice-of-law rules, of the jurisdiction in which the action was filed.") (quoting

6    *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)).  State law is highly variable on (among

7    other things) the elements and other requirements for failure to warn and design defect claims,

8    and it would be inefficient and burdensome on the Court to learn and apply the law of 50

9    different states.  *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997

10   WL 109595, at *2 (E.D. Pa. Mar. 7, 1997) (declining to rule on summary judgment motions

11   that implicated various states' laws because "efficiency would not be promoted" and the

12   transferee court "would be putting itself in the shoes of the transferor courts"); *In re State St.*

13   *Bank & Trust Co. Fixed Income Funds Inv. Litig.*, MDL No. 1945, 2011 WL 1046162, at *7

14   (S.D.N.Y. Mar. 22, 2011) (suggesting remand and noting that "adjudication of the summary

15   judgment motions in these cases . . . depends on the facts and applicable law particular to each

16   case and requires case-specific rulings . . . [defendant's] argument fails to show that further

17   coordinated proceedings with respect to the summary judgment motions promote judicial

18   economy").[6]

19   
20   [6] *See also In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, 840 F.
     Supp. 2d 1193, 1201 (D. Minn. 2012) (suggesting remand of cases prior to case-specific
21   motions practice because the court had not "obtained any particular expertise . . . from
     supervising this litigation that would render it more capable than the transferor courts of
22   disposing of the pending Motions . . . which can easily be presented to and determined by
     [transferor courts]") (internal citations and quotations omitted); *In re Orthopedic Bone Screw*
23   *Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *3 (declining to rule on summary
     judgment motions involving state law claims due to the "monumental" task of determining the
24   various states' law and noting that "the transferor court would be better equipped to render a
     decision in accordance with its forum state's 'choice of law' law and, if applicable, its forum
25   state's substantive law . . . ."); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, No.
     IP 00-9374-C-B/S, 2011 WL 6890672, at *5 (S.D. Ind. Dec. 30, 2011) (after "[c]ore
26   discovery, including core expert discovery" had closed, MDL judge "decided not to make
     rulings on issues relating to expert qualifications and the admissibility of expert testimony
27   pursuant to Federal Rule of Evidence 702 (including determinations pursuant to *Daubert* and
     its progeny), believing those matters are better addressed in case-specific contexts by the
28   transferor courts.").

- 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The same principle applies to *Daubert* motions on the issue of specific causation.  As this Court has recognized, different interpretations of *Daubert* exist across circuits.  *See* PTO 45 at 8-9 (noting that the Ninth Circuit's case law leaves "more room for deference to experts in close cases than might be appropriate in some other Circuits . . . . This is a difference that could matter in close cases."); PTO 85 at 4-5 ("District courts in the Ninth Circuit must be more tolerant of borderline expert opinions than in other circuits."). Under those circumstances, it would make little sense to have the issue of specific causation—which will be germane in every remaining case—be resolved litigation-wide under Ninth Circuit law. Further, and as this Court's experience reflects, addressing case-specific motions would provide transferor courts with much needed familiarity with the relevant science, the main witnesses, and the key issues to be resolved in a particular plaintiff's trial before jury selection begins.  *See In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, MDL No. 1945, 2011 WL 1046162, at *6 ("[I]t would not be in the interests of judicial economy for this Court to rule on the pending motions for summary judgment when these cases must ultimately be remanded to the transferor courts for trial"); *id* at *9 ("[D]eterminations about the exclusion of expert testimony, to the extent the need for them remains after the summary judgment motions, are best made after *in limine* motions are filed before the court that will actually oversee the trial of these cases . . ."); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 1357234, at *2 (D. Kan. May 12, 2009) ("[E]videntiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context.").[7]

3.  The Court should not consolidate cases, but if anything should sever multi-plaintiff

---

[7] *See also In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000) (remanding cases despite pending pretrial motions and noting that pretrial proceedings can "best be managed . . . [by the transferor judge] who . . . must preside over any eventual [] trial"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 704702, at *9 (E.D. Pa. Aug. 22, 1997) ("[T]he 'finer' determinations concerning which of [an expert's] opinions are subject to inclusion or exclusion are more appropriately made by the ultimate trial court after remand or transfer.") (internal quotations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>complaints prior to suggesting remand.</u>

Plaintiffs' suggestion that this MDL Court should "consolidate" and set for trial the California cases should be rejected. The Court's apparent skepticism about multi-plaintiff trials is well-founded. *See, e.g.*, *Hardeman* Trial Tr. 2165:5-21; September 24, 2018 CMC Tr. 32:12-15.  "Consolidating" cases throughout California that were transferred from different courts and judges within the State would be a clear violation of *Lexecon*.  *See Lexecon*, 523 U.S. at 40.  MDL cases must be remanded to the Court from which they were transferred. Similarly, as previously briefed and argued in response to Plaintiffs' motion to set an expedited trial in the *Giglio* case, this Court cannot set a trial date now for a case in a different court that has yet to be remanded; scheduling of remand trials will be within the province of the transferor courts.

In any event, trying multiple-plaintiff cases would be inefficient and fundamentally unfair.  Each Plaintiff's claims in this litigation differs substantially: They allegedly used different Roundup®-formulated products during different time periods; employed different methods of product application that can result in different types and degrees of product exposure; and suffered different alleged injuries involving different subtypes of NHL, with each having distinct risk factors, prognoses, and treatments.   Holding a trial with multiple plaintiffs would therefore require testimony from multiple case specific witnesses including experts, plaintiffs, and treating physicians.  Far from promoting efficiency, a multi-plaintiff trial would be extraordinarily lengthy and complex, and overwhelm jurors with a mountain of separate medical and factual evidence and distinct specific causation and exposure expert for each plaintiff.

In addition, holding multi-plaintiff trials would be unduly prejudicial to Monsanto as it would conflate the plaintiffs' claims, confuse the jury, and obscure the weaknesses of individual cases.  *See, e.g.*, *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 758 (C.D. Cal. 2016) ("[B]y trying the two claims together, one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case."); *Miller v. Bayer*

*Healthcare Pharms., Inc.*, Case No. 4:14-cv-00652-SRB, 2017 WL 2313287, at *1 (W.D. Mo. Mar. 6, 2017) (severing cases for trial "[d]ue to the fact-intensive and individualized nature of each cause of action, and with each Plaintiff presenting evidence that could unfairly influence the jury's liability and damages verdicts as to the other Plaintiff").   The recent talc verdict in the City of St. Louis vividly illustrates this problem of evidence "spillover."   *See Ingham v. Johnson & Johnson*, No. 1522-CC10417 (Mo. Cir. Ct. St. Louis City July 12, 2018).  There a jury awarded identical compensatory damages of $25 million to each of the 15 plaintiffs despite myriad differences among them.  Plaintiffs' proposed "consolidation" is accordingly an invitation for cumbersome, impractical trials which would exponentially increase the likelihood of reversible error.

If the Court wishes to address joinder issues, Monsanto proposes instead that this Court sever all cases involving more than one cancer plaintiff prior to suggesting remanding cases to transferor courts.  Indeed, splitting up consolidated cases before remand is a far more common outcome than creating multi-plaintiff cases out of individually-filed actions.  *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1225 (9th Cir. 2006) (noting that MDL court entered case management orders (1) "directing each plaintiff in a multi-plaintiff case to file and serve an individual, new complaint within 30 days" and (2) ordering "dismissal with prejudice of all jointly-filed complaints, including those plaintiffs for whom a timely filed individual severed complaint was not filed, as of the effective date of the order").  There are countless more examples to the same effect.[8]

---

[8] *See also* Case Mgmt. Order No. 7, *In re Benicar (Olmesartan) Prods. Liab. Litig.*, MDL No. 2606, ECF No. 67 (D.N.J. July 1, 2015) (ordering "that multi-plaintiff complaints shall not be filed in this litigation without leave of the Court and for good cause shown" and directing the clerk of court "to sever all existing multi-plaintiff complaints," thereby requiring plaintiffs' counsel to "serve a separate complaint and pay a new filing fee for each severed complaint"); Order, *In re Accutane Prods. Liab. Litig.*, MDL No. 1626, ECF No. 1105 (M.D. Fla. Sept. 20, 2012) (severing multi-plaintiff case and noting in collecting cases that "[t]he law is clear that large multi-plaintiff complaints are improper under Fed. R. Civ. P. 20(a).  Many federal courts hold that product liability cases are generally inappropriate for multi-plaintiff joinder because such cases involve highly individualized facts and '[l]iability, causation, and damages will . . . be different with each individual plaintiff.'") (citing *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1059-60 (E.D. Ark. 2006); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651-54 (S.D. Tex. 2005); *Jones v. Nastech Pharm.*, 319 F. Supp. 2d 720, 728 (S.D. Miss.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    4.   <u>Plaintiffs' remand proposal is a forum-shopping effort rather than an effort to materially advance the litigation as a whole.</u>

    Plaintiffs' jurisdiction-based remand proposal represents an effort to prioritize jurisdictions they perceive as favorable, rather than to help provide useful information to guide this litigation forward.  Initially, Plaintiffs' calculations about which Circuits have the most cases are based on the incorrect assumption that all cases are properly venued.  But even assuming, for the sake of argument only, that their calculations are correct, Plaintiffs provide no reason why cases from California district courts other than the Northern District of California should be remanded first.  Apart from *Giglio*, which is only slightly more advanced, all non-Group 1 MDL cases have progressed equally in terms of discovery.  Because of its filing date, *Giglio* is part of the first wave of cases that Monsanto proposes to have remanded for trial.  And for reasons set forth above, having the next wave of trials take place exclusively in California—where every jury verdict to date has occurred—does not provide meaningful information about the litigation as a whole.

    Steps 2 and 3 of Plaintiffs' proposed remand plan (to remand cases from the Ninth Circuit and then the Eighth Circuit only) are equally unsupportable.[9]  Depending on how post-trial motions in *Hardeman* are resolved, the Ninth Circuit may have an opportunity to weigh in on the issues in this litigation in the near future.  And as Plaintiffs themselves note, there are several trials currently set in Missouri state court within the August through October 2019

2004); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003); *In re Baycol Prods. Liab. Litig.*, No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. Jan. 1, 2003); *In re Baycol Prods. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 145-47 (S.D.N.Y. 2001)).

[9] Plaintiffs seem to suggest that the fact that several *Daubert* rulings have already occurred or will occur in California and Missouri should have an impact on the order in which cases are remanded.  However, any concern that transferor courts in other jurisdictions might have difficulty understanding the Court's prior rulings can be addressed with a remand packet to assist transferor courts in understanding the procedural history of the MDL and its prior rulings, including the general causation *Daubert* ruling.  *See, e.g.*, Order Summarizing MDL 1760 Proceedings Upon Suggestion of Remand, *In re Aredia and Zometa Prods. Liab. Litig.*, MDL No. 1760, ECF No. 4695 (M.D. Tenn. June 3, 2011); Final Pretrial Order and Suggestion of Remand, *In re: Seroquel Prods. Liab. Litig.*, MDL No. 1769, ECF No. 1640 (M.D. Fla. May 13, 2010).

- 19 -

1    time frame, which presumably will provide the parties with significant information about the

2    Missouri-based cases (as many of the MDL cases that would be remanded to the Eighth

3    Circuit were originally filed in Missouri).  Plaintiffs may believe that the Eighth and Ninth

4    Circuits are favorable jurisdictions for them, as evidenced by the high volume of cases filed in

5    those jurisdictions.  But adopting a remand plan that prioritizes jurisdictions that already have

6    verdicts or cases set for trial and utterly ignores the many other jurisdictions in the MDL does

7    nothing to materially advance the resolution of this litigation.

8    **II.    *EMANUEL GIGLIO v. MONSANTO.***

9         **A.    Plaintiffs' Position**

10        In their remand proposals, both Plaintiffs and Monsanto propose Mr. Giglio's case be

11   remanded.  Based on his health, Mr. Giglio requests his case be set for trial within 90 days in

12   the Northern District or remand the case to the Southern District of California for trial.

13   Importantly, despite opposing this request, Monsanto's "FIFO 50" remand proposal includes

14   Mr. Giglio's lawsuit.

15        Mr. Giglio is dying. In fact, his treating oncologist submitted sworn testimony that "Mr.

16   Giglio has substantially less than 6 months left to live as a result of the recurrence of his Stage

17   IV Diffuse Large B-Cell Non-Hodgkin's Lymphoma." *See*, Redfern Declaration, Para. 11, ECF

18   Docket No. 2185-4.  For this reason, counsel requested a preference trial date on November 16,

19   2018 and renewed that request on January 25, 2019. The court denied both requests. We are

20   now months closer to the end of Mr. Giglio's life expectancy—which is currently measured in

21   months, not years—and undersigned counsel again renew Mr. Giglio's request for a trial date

22   so that he can have his day in court before he dies.

23        Mr. Giglio filed his lawsuit against Monsanto in the United States District Court for the

24   Southern District of California on October 9, 2015.  Upon best information, Mr. Giglio's case

25   is the second oldest case in this multidistrict litigation – meaning that there is only one individual

26   who has waited longer that Mr. Giglio for their day in Court against Monsanto.

27

28

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

1

### B.     Monsanto's Position

2

The Court has already denied Plaintiffs' request to set an expedited trial date in *Giglio*,

3

*see* PTO 71, and Plaintiffs' repeated requests for reconsideration have provided no new

4

medical evidence or other basis for changing course.  As noted above, the decision to set the

5

case for trial is for the transferor court to make upon remand.  As Plaintiffs note, *Giglio* is part

6

of the first wave of cases for remand under Monsanto's proposal, and Mr. Giglio's testimony

7

has already been preserved for trial.  No further acceleration of the timetable is warranted.

8

### III.    TRIAL PRESERVATION DEPOSITIONS OF PLAINTIFFS' EXPERTS.

9

### A.     Plaintiffs' Position

10

Before remanding any case, Plaintiffs would like to take the videotaped trial

11

depositions of Drs. Beate Ritz, Dennis Weisenberger, William Jameson, and William

12

Sawyer—Dr. Christopher Portier is not included because his video trial deposition was

13

previously taken in the *Hardeman* trial.  The procedure would be similar to Dr. Portier's video

14

trial deposition in the *Hardeman* trial.  This should occur regardless of the remand plan

15

entered by the Court. These experts have opinions regarding general scientific issues related to

16

glyphosate and Roundup that could be admissible in any remanded case.  Getting their

17

testimony preserved prior to remand—consistent with the Court's *Daubert* rulings—will

18

further the interests of all cases and promote judicial economy.  When the Court remands the

19

cases in this MDL, hundreds of cases will proceed quickly to trial.  There is no practicable

20

way for these experts to testify live in each case.  However, if their testimony is preserved by

21

videotaped deposition, trial courts will be able to rely on this Court's

22

comprehensive *Daubert* order and focus on the case-specific evidentiary issues on

23

remand.  Plaintiffs propose taking these trial depositions in the period between June and

24

August 2019.

25

26

27

28

- 21 -

Monsanto objects to this proposal, arguing that these experts are not "unavailable" under Fed. R. Civ. P. 32(a)(4) and, thus, must present live to testify at any trial.  That argument, however, is premature.  Only after remand, when the trial court has a firm trial date, will the unavailability of any witness be determined—and, even then, it will be at the discretion of the trial court, which is given broad discretion to allow deposition testimony when "exceptional circumstances make it desirable" and it is "in the interest of justice[.]"  Fed. R. Civ. P. 32(a)(4)(E).  In other words, the issue of unavailability need not be decided now.  Rather, the most prudent approach would be to allow the preservation depositions to go forward now and let the Parties litigate the issue after it is remanded to the trial court.  Plaintiffs do not oppose having the same testimony preserved for Monsanto's general causation experts as well.

### B.      Monsanto's Position

Permitting Plaintiffs to fix the testimony of their general causation experts makes little legal or practical sense.  As an initial matter, absent consent, videotaped "preservation depositions" of Plaintiffs' experts will not be admissible at all future trials because there is no indication that the expert witnesses are "unavailable."  *See* Fed. R. Civ. P. 32(a)(4), 32(a)(4)(E); *G.E.J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 755 (9th Cir. 1962) ("Depositions may only be used where the witness is unavailable or where exceptional circumstances necessitate their use. Rule 26(d) contemplates such use and was not intended to permit depositions to substitute at the trial for the witness himself.").  Plaintiffs' experts have made themselves available for every trial thus far, and there is no basis for deeming them proactively unavailable in every case going forward.  Plaintiffs effectively acknowledge that their proposal puts the cart before the horse—the topic of trial preservation becomes relevant, if at all, *after* a witness has been deemed unavailable, not before.  In any event, courts have

- 22 -

1   routinely held that neither cost nor inconvenience to a witness (the stated justifications here)

2   constitutes exceptional circumstances.[10]

3          Plaintiffs' proposal is also highly prejudicial given the nature of the testimony of some

4   of their experts and the evolving science surrounding glyphosate.  As this Court knows from

5   its experience in this litigation, new scientific studies regarding glyphosate are published

6   regularly.  If Plaintiffs can permanently fix the testimony of their general causation experts, it

7   will be impossible for Monsanto to meaningfully cross-examine them on any additional

8   science that may arise.  *See In re Viagra Prods. Liab. Litig.*, 572 F. Supp. 2d 1071, 1082 (D.

9   Minn. 2008) ("In this MDL matter, it is imperative that the transferor courts retain complete

10  discretion over the ultimate admissibility of [an expert's] testimony . . . [Defendant] must be

11  afforded meaningful opportunity for cross-examination in each individual case.").  Indeed, in

12  the *Hardeman* trial alone, Plaintiffs themselves used, with each of their general causation

13  experts, the Zhang meta-analysis published in 2019 on which Monsanto had no prior

14  opportunity for cross-examination.  And since that trial, EPA has published a new

15  reaffirmation of glyphosate's safety that Monsanto should be permitted to use in the future.

16  Further, Drs. Weisenburger and Sawyer have purported to offer case-specific testimony in

17  some cases, which they would have to forgo in any preservation setting, and Dr. Sawyer was

18  not even disclosed in the general causation phase.

19         Finally, while Monsanto opposes Plaintiffs' preservation proposal in its entirety, it is

20  important to note that there is no merit to Plaintiffs' suggestion that Dr. Portier's preservation

21  deposition from *Hardeman* can be used in future trials.  That deposition was held in the

22  *Hardeman* case only, and the premise for the deposition was Dr. Portier's unavailability to

23  travel to the United States to testify in *Hardeman* for health reasons.  That premise has no

---

[10] *See, e.g.*, *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 963-64 (10th Cir. 1993) (holding that trial court correctly refused to admit prior deposition testimony given lack of "exceptional circumstances" where doctor witness claimed that he was "extremely busy"); *Hegwood v. Ross Stores, Inc.*, No. 3:04-CV-2674-BH (G), 2007 WL 102994, *2-3 (N.D. Tex. Jan. 16, 2007) (finding no "exceptional circumstances" to allow introduction of prior deposition testimony despite doctor's busy schedule, inconvenience to patients, and cost of approximately $10,000 where the amount in controversy was over $300,000).

1   validity going forward, as Dr. Portier has since testified live in the *Pilliod* trial.  Plaintiffs

2   should not be permitted to permanently fix—in an already-outdated, case-specific deposition,

3   no less—the testimony of a now-available witness they have characterized as "important" and

4   the Court has characterized as "largely like the centerpiece of their causation presentation."

5   *See* Jan. 28, 2019 Tr. at 80:1; 81:16-18.

6

7   **IV.     APPEAL BOND IN *HARDEMAN***

8       **A.     Plaintiffs' Position**

9       Mr. Hardeman requests the Court require Monsanto to post a bond sufficient to cover

10  the total verdict, billable costs, pre judgment interest, and post judgment interest of at least 4

11  years.

12      **B.     Monsanto's Position**

13      Monsanto requests that the Court approve a bond of $100,334,542.63, or 1.25 times the

14  judgment, and stay enforcement of the judgment through the resolution of any appeals in this

15  case.

16      Federal Rule of Civil Procedure 62 allows parties at "any time after judgment" to

17  "obtain a stay as a matter of right by posting a supersedeas bond acceptable to the court."  *See*

18  Fed. R. Civ. P. 62(b); *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir.

19  1977).  Courts in the Ninth Circuit have routinely approved bonds equal to 1.25 times the

20  judgment.  *See Clark v. Hidden Valley Lake Ass'n*, No. 16-CV-02009-SI, 2018 WL 2412136,

21  at *1 (N.D. Cal. May 29, 2018); *C.B. v. Sonora Sch. Dist.*, 819 F. Supp. 2d 1032, 1057 (E.D.

22  Cal. 2011), *rev'd on other grounds*, 730 F.3d 816 (9th Cir. 2013); *Cotton ex rel. McClure v.

23  City of Eureka*, 860 F. Supp. 2d 999, 1029 (N.D. Cal. 2012).

24      In this case, on May 3, 2019, the Court entered a judgment for plaintiff in the amount

25  of $80,267,634.10.  ECF No. 3604 (PTO 145) at 1.  That amount multiplied by 1.25 equals

26  $100,334,542.63.  Monsanto proposes $100,334,542.63 as the bond in this case because, as the

27  cases above reflect, it would sufficiently "protect plaintiff's interest while defendant pursues

28

- 24 -

its appeal." *See Clark*, 2018 WL 2412136, at *4.  Monsanto further requests that after it posts

bond, the Court approve the bond amount and stay the judgment pending the resolution of any

appeals, including to the U.S. Supreme Court.

Executed this 15th day of May 2019.


/s/ *Aimee Wagstaff*
Aimee H. Wagstaff (SBN 278480)
**ANDRUS WAGSTAFF, PC**
7171 W. Alaska Drive
Lakewood, Colorado 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, New York 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
Email: rgreenwald@weitzlux.com

**THE MILLER FIRM LLC**
Michael J. Miller
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

/s/ *Brian Stekloff*
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
**WILKINSON WALSH + ESKOVITZ
LLP**
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Daniel Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington DC  20001-3743
Tel: (202) 942-6216


**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant
MONSANTO COMPANY*

- 25 -

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Aimee H. Wagstaff*

MONSANTO'S CASE MANAGEMENT STATEMENT FOR MAY 22, 2019 MDL HEARING
3:16-cv-02741-VC