**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:    (202) 847-4030
Fax:    (202) 847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

MDL No. 2741

Case No. 3:16-md-02741-VC

This document relates to:

*Hardeman v. Monsanto Co., et al.*,
3:16-cv-0525-VC

**MONSANTO COMPANY'S NOTICE OF MOTIONS AND MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will and hereby does move the Court for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59.

DATED:  May 31, 2019

                                                 Respectfully submitted,

                                               */s/ Brian L. Stekloff*

                                               Brian L. Stekloff (*pro hac vice*)
     (bstekloff@wilkinsonwalsh.com)
     Tamarra Matthews Johnson (*pro hac vice*)
     (tmatthewsjohnson@wilkinsonwalsh.com)
     Rakesh Kilaru (*pro hac vice*)
     (rkilaru@wilkinsonwalsh.com)
     WILKINSON WALSH + ESKOVITZ LLP
     2001 M St. NW, 10th Floor
     Washington, DC 20036
     Tel: (202) 847-4030
     Fax: (202) 847-4005

     Pamela Yates (CA Bar No. 137440)
     (Pamela.Yates@arnoldporter.com)
     ARNOLD & PORTER KAYE SCHOLER LLP
     777 South Figueroa St., 44th Floor
     Los Angeles, CA 90017
     Tel: (213) 243-4178
     Fax: (213) 243-4199

     Eric G. Lasker (*pro hac vice*)
     (elasker@hollingsworthllp.com)
     HOLLINGSWORTH LLP
     1350 I St. NW
     Washington, DC 20005
     Tel: (202) 898-5843
     Fax: (202) 682-1639

     Michael X. Imbroscio (*pro hac vice*)

(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

    I.       INTRODUCTION ........................................................................................ 1

    II.      LEGAL STANDARDS ................................................................................. 2

    III.     ARGUMENT .............................................................................................. 3

           A.     Monsanto is Entitled to Relief Because Plaintiff Did Not Present Any Admissible Scientific Evidence of Causation. ............................................ 3

           B.     Plaintiffs' Claims Are Preempted. ............................................................ 5

           C.     Monsanto is Entitled to Relief Due to Insufficiency of the Evidence on Various Issues. ........................................................................................ 6

           D.     Monsanto is Entitled to Relief Because Plaintiff Failed to Prove Entitlement to Punitive Damages, And in Any Event, Remittitur Is Required. ............................................................................................... 14

           E.     Monsanto Is Entitled to Relief Due to Errors in Jury Instructions and Verdict Form. ......................................................................................... 17

           F.     Monsanto Is Entitled to a New Trial Due to the Improper Excusal of Juror No. 4. ............................................................................................ 18

           G.     Monsanto Is Entitled to Relief Due to Improper Evidentiary Rulings and Insufficient Policing of Previously-Issued Rulings. ............................... 20

    IV.     CONCLUSION ........................................................................................ 29

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Owens-Corning Fiberglas Corp.*,
    810 P.2d 549 (Cal. 1991) ...............................................................................9, 11

*Bakkie v. Union Carbide Corp.*,
    No. A116231, 2007 WL 4206739 (Cal. Ct. App. Nov. 29, 2007).........................13

*Barnes v. Arden Mayfair, Inc.*,
    759 F.2d 676 (9th Cir. 1985) ...................................................................................2

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)............................................................................................5, 18

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)...............................................................................................14

*Boeken v. Philip Morris, Inc.*,
    26 Cal. Rptr. 3d 638 (Ct. App. 2005)................................................................16, 19

*Buell-Wilson v. Ford Motor Co.*,
    46 Cal. Rptr. 3d 147 (Ct. App. 2006)....................................................................12

*Buell-Wilson v. Ford Motor Co.*,
    187 P.3d 887 (Cal. 2008) .......................................................................................16

*Castro v. County of Los Angeles*,
    833 F.3d 1060 (9th Cir. 2016) .................................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)..............................................................................................3, 4

*Daubert v. Merrell Dow Pharms. Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................11

*Delos v. Farmers Grp., Inc.*,
    155 Cal. Rptr. 843 (Ct. App. 1979) .......................................................................16

*Emblaze Ltd. v. Apple Inc.*,
    No. 11-c-01079-PSG, 2015 WL 396010 (N.D. Cal. Jan. 29, 2015)........................2

*Estate of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014) ...................................................................................2

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
    762 F.3d 829 (9th Cir. 2014) ...............................................................................2, 3

*Finjan, Inc. v. Sophos, Inc.*,
   244 F. Supp. 3d 1016 (N.D. Cal. 2017) ...............................................................2

*Garcia v. Duro Dyne Corp.*,
   67 Cal. Rptr. 3d 100 (Ct. App. 2007).................................................................13

*Garcia v. Spokane Cty.*,
   745 F. App'x 730 (9th Cir. 2018) ......................................................................19

*Garza v. Asbestos Corp.*,
   74 Cal. Rptr. 3d 359 (Ct. App. 2008).................................................................13

*Harris v. Folk Const. Co.*,
   138 F.3d 365 (11th Cir. 1998) ...........................................................................20

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1995) .............................................................19, 20, 21

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) .............................................................11

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ...............................................................11

*Jet Source Charter, Inc. v. Doherty*,
   55 Cal. Rptr. 3d 176 (Ct. App. 2007).................................................................15

*Lakeside-Scott v. Multnomah County*,
   556 F.3d 797 (9th Cir. 2009) ...............................................................................2

*Loth v. Truck-A-Way Corp.*,
   70 Cal. Rptr. 2d 571 (Ct. App. 1998).................................................................13

*Major v. W. Home Ins. Co.*,
   87 Cal. Rptr. 3d 556 (Ct. App. 2009).................................................................12

*Mansur v. Ford Motor Co.*,
   129 Cal. Rptr. 3d 200 (Ct. App. 2011)................................................................7

*Merck Sharp & Dohme Corp. v. Albrecht*,
   No. 17-290, 2019 WL 2166393 (U.S. May 20, 2019)........................................6

*Modisette v. Apple Inc.*,
   241 Cal. Rptr. 3d 209 (Ct. App. 2018)..............................................................17

*Monroe v. Zimmer U.S. Inc.*,
   766 F. Supp. 2d 1012 (E.D. Cal. 2011).........................................................9, 11

- iii -

*Oltz v. St. Peter's Cmty. Hosp.*,
  861 F.2d 1440 (9th Cir. 1988) .................................................................2, 4

*Pacific Mut. Life Ins. Co. v. Haslip*,
  499 U.S. 1 (1991).........................................................................................15

*Peacock v. Bd. of Regents of Universities & State Coll. of Ariz.*,
  597 F.2d 163 (9th Cir. 1979) .........................................................................3

*Pliva, Inc. v. Mensing*,
  564 U.S. 604 (2011).......................................................................................6

*Reese v. County of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) .......................................................................2

*Remmer v. United States*,
  347 U.S. 227 (1954).....................................................................................20

*Roby v. McKesson Corp.*,
  219 P.3d 749 (Cal. 2009) .......................................................................15, 19

*Seffert v. L.A. Transit Lines*,
  364 P.2d 337 (Cal. 1961) .............................................................................12

*Simon v. San Paolo U.S. Holding Co.*,
  113 P.3d 63 (Cal. 2005) ...............................................................................15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)................................................................................14, 15

*Stevens v. Owens-Corning Fiberglas Corp.*,
  57 Cal. Rptr. 2d 525 (Ct. App. 1996)...........................................................16

*Therasense, Inc. v. Becton, Dickinson & Co.*, No. C,
  04-02123 WHA, 2008 WL 2037732 (N.D. Cal. May 12, 2008) ....................4

*Trejo v. Johnson & Johnson*,
  220 Cal. Rptr. 3d 127 (Ct. App. 2017)...........................................................8

*United States v. 4.0 Acres of Land*,
  175 F.3d 1133 (9th Cir. 1999) .......................................................................2

*United States v. Jones*,
  747 F. App'x 348 (6th Cir. 2018) .................................................................19

*United States v. Quintero-Barraza*,
  78 F.3d 1344 (9th Cir. 1995) ..................................................................20, 23

*United States v. Reese,*
    33 F.3d 166 (2d Cir. 1994)..............................................................................19

*Valentine v. Baxter Healthcare Corp.,*
    81 Cal. Rptr. 2d 252 (Ct. App. 1999)...............................................................9

*Walker v. Farmers Ins. Exch.,*
    63 Cal. Rptr. 3d 507 (Ct. App. 2007).............................................................15

*Wyeth v. Levine,*
    555 U.S. 555 (2009)...........................................................................................6

*Xavier v. Philip Morris USA Inc.,*
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..........................................................17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) .........................................................................21

**STATUTES**

7 U.S.C. § 136j(a)(1)(E)..........................................................................................16

7 U.S.C. § 136v(b) ....................................................................................................5

Cal. Health & Safety Code § 25249.7......................................................................16

**RULES**

Fed. R. Civ. P. 47(c)................................................................................................19

Rule 50 .......................................................................................................................2

**REGULATIONS**

40 C.F.R. § 19.4.......................................................................................................16

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Monsanto respectfully requests that the Court enter judgment for Monsanto as a matter of law on all of Plaintiff's claims, or in the alternative order a new trial.  As Monsanto has explained in its prior briefing—which it expressly incorporates into this filing—there are a number of flaws in the Plaintiff's case that, alone and together, warrant relief.  Among other issues, Plaintiff offered no admissible expert testimony at trial on either general causation or specific causation, and his sole specific causation expert offered the jury only an undisclosed, untested, and subjective methodology that cannot satisfy scrutiny under *Daubert*.  Further, Plaintiff failed to offer any admissible evidence at trial of causation, and his failure to warn and design defect claims were both legally invalid and unsupported by any evidence.  And a number of procedural and evidentiary issues undermined the fairness and integrity of the trial, including the improper exclusion of a juror without any questioning and based on pure hearsay, and inconsistent rulings on scientific and regulatory evidence that prejudiced Monsanto

At minimum, the Court should reduce the extraordinary damages award in this case.  The jury's non-economic damages award was unsupported by any evidence and was over twenty-five times the amount of economic damages awarded to Plaintiff, which is excessive and improper under California law.  The punitive damages reward also requires reversal, or at least remittitur.  There is no clear and convincing evidence that Monsanto acted with the requisite malice, oppression, or fraud to justify punitive damages under California law, especially given the consistent and widespread worldwide regulatory approval of glyphosate.  An award of punitive damages that was over fifteen times the already-excessive compensatory damages award is facially unconstitutional and cannot stand.

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## II.   LEGAL STANDARDS

A Rule 50 renewed motion for judgment as a matter of law properly is granted where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Reese v. County of Sacramento*, 888 F.3d 1030, 1036 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)).   A reasonable conclusion "cannot be supported by only threadbare conclusory statements," a mere scintilla, or speculation, "instead of significant probative evidence." *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985)).   Where there is "an absence of substantial evidence—meaning relevant evidence that a reasonable mind would accept as adequate to support a conclusion—to support the jury's verdict," the verdict should be set aside. *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1043 (N.D. Cal. 2017) (quoting *Emblaze Ltd. v. Apple Inc.*, No. 11-c-01079-PSG, 2015 WL 396010, at *3 (N.D. Cal. Jan. 29, 2015)).

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (citation omitted).   Thus, even where a verdict is supported by substantial evidence, "[t]he trial court may grant a new trial, . . . if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir. 1988)).   A new trial may be granted where a district court has erroneously admitted or excluded prejudicial evidence, *see Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014) (en banc) (remanding for a new trial because the district court abused its discretion and erroneously admitted expert

testimony), or "where the trial court finds the awarded compensation to be excessive." *Peacock v. Bd. of Regents of Universities & State Coll. of Ariz.*, 597 F.2d 163, 165 (9th Cir. 1979). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice," and its decision to do so will be "afford[ed] considerable deference." *Experience Hendrix*, 762 F.3d at 842.

## III.    ARGUMENT

### A.  Monsanto is Entitled to Relief Because Plaintiff Did Not Present Any Admissible Scientific Evidence of Causation.

1.    Plaintiffs failed to present any admissible expert testimony on the issue of causation, and so Monsanto is entitled to judgment notwithstanding the verdict or, at minimum, a new trial.  Monsanto expressly incorporates all of its prior briefing and argument on these issues, including the briefing and argument specifically mentioned below.

2.    As Monsanto argued in its *Daubert* motion regarding Plaintiffs' general causation experts, Plaintiffs failed to bring forth any admissible expert testimony regarding whether Roundup is generally capable of causing NHL.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  In its order on this issue, the Court excluded some experts (such as Dr. Nabhan) and portions of the testimony of others (such as the "misleading 'Forest Plot' from Dr. Ritz's report"), *see* Pretrial Order No. 45: Summ. J. and *Daubert* Mots. at 50, 63, ECF No. 1596, but the Court should have excluded all of Plaintiffs' experts' "shaky" opinions in their entirety. *See id.* at 67.  Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Def.'s Mem. Supp. General Causation *Daubert* and Summ. J., ECF No. 545; Def.'s Reply Mem. Supp. General Causation *Daubert* and Summ. J and Opp'n to Pls.' *Daubert* Mot., ECF No. 681;  Def.'s Suppl. Mem. Supp. General Causation *Daubert* and Summ. J., Feb. 16, 2018, ECF No. 1137; Def.'s Notice of Suppl. Authority Supp. General Causation *Daubert* and Summ. J., Feb. 27, 2018, ECF No. 1158; Hr'g Tr., March 14, 2018, ECF No. 1219;

1    Def.'s Notice of Suppl. Authority Supp. General Causation *Daubert* and Summ. J., June 12,

2    2018, ECF No. 1508; Def.'s Mot. for Directed Verdict, March 12, 2019, ECF No. 2975.

3         3.    Plaintiff also failed to bring forth any admissible expert testimony on the issue of

4    specific causation.  *Daubert*, 509 U.S. at 592.  The Court excluded some aspects of Plaintiffs'

5    experts' testimony, but should have excluded all of Plaintiffs' experts in their entirety.

6    Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject

7    including Def.'s Mot. To Exclude Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr.

8    Denis Weisenburger on *Daubert* Grounds, ECF No. 2420; Def.'s Reply Supp. Mot. To Exclude

9    Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr. Dennis Weisenburger on *Daubert*

10   Grounds, ECF No. 2525; Hr'g Tr., Feb. 13, 2019, ECF No. 2763.

11        4.    At trial, Plaintiff presented one specific causation expert, Dr. Weisenburger.  The

12   opinions he offered reflected a purely subjective methodology that had never before been

13   disclosed and were inconsistent with the opinions offered in his reports and depositions.  *See*

14   *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2037732, at *4

15   (N.D. Cal. May 12, 2008) (referring to the "paramount rule that all experts will be limited on

16   direct examination to the four corners of their report").  His methodology at trial, like the

17   methodology in his report, was untested, is not commonly used by pathologists or other medical

18   professionals, and was made purely for this litigation.  *See* Trial Tr. vol. 9, 1220:25–1221:10,

19   March 6, 2019 (admission that Dr. Weisenburger has never used methodology before); Trial Tr.

20   vol. 11, 1595:21–1596:20, March 11, 2019 (Dr. Levine testimony that Dr. Weisenburger's

21   methodology is untested and scientifically invalid); *id.* at 1785:8–1787:22 (same from Dr.

22   Arber).  His testimony also specifically violated the Court's prohibition on his asserting that

23   "Mr. Hardeman's risk of developing NHL more than doubled."  Pretrial Order No. 85: Denying

24   Monsanto's Mot. for Summ. J. on Specific Causation 8, ECF No. 2799; *see* Trial Tr. vol. 9,

25   1213:9–11, March 6, 2019 ("[P]eople with high exposure to Roundup have a significantly

26   increased risk for non-Hodgkin's lymphoma of at least twofold . . . ."); *see also infra* at ¶¶ 26–

27   27, 52–54, 63.

28

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

1      5.    Dr. Weisenburger's litigation- and results-driven methodology was not admissible

2  and without it, Plaintiff had no specific causation case.  *See* Def.'s Mot. for Directed Verdict ¶¶

3  3–10, ECF No. 2975.

4      **B. Plaintiffs' Claims Are Preempted.**

5      6.    Plaintiffs' claims are preempted by federal law, and so Monsanto is entitled to

6  judgment notwithstanding the verdict or, at minimum, a new trial.  Monsanto expressly

7  incorporates all of its prior briefing and argument on these issues, including but not limited to

8  Def.'s Mot. to Dismiss, Hardeman v. Monsanto Co., 216 F. Supp. 3d 1037 (N.D. Cal. 2016)

9  (No. 16-00525), ECF No. 18; Def.'s Reply Supp. Mot. to Dismiss, *Hardeman*, 216 F. Supp. 3d

10  1037 (No. 16-00525), ECF No. 30; Def.'s Mot. Summ. J. on Non-Causation Grounds, ECF No.

11  2419; Def.'s Reply Supp. Mot. Summ. J. on Non-Causation Grounds and Exclusion of Drs.

12  Benbrook, Sawyer, and Mills, ECF No. 2634; Def.'s Rule 50(A) Mot. for J. as a Matter of Law

13  and for Directed Verdict, March 25, 2019, ECF No. 3157; and Ex. 1, Hr'g Tr., April 7, 2016.

14      7.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C.

15  § 136v(b), expressly preempts Plaintiff's warning-based claims because those claims impose

16  "requirements" that are "in addition to or different from" FIFRA's misbranding requirements

17  for misuse labeling. Specifically, there is a conflict between California's broad common law

18  requirement that Monsanto warn against risks based on uses (and misuses) that are "reasonably

19  foreseeable," and FIFRA's more narrow requirement to provide warnings against risks based on

20  uses that are "in accordance with widespread and commonly recognized practice."

21      8.    To the extent *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), suggests that

22  Plaintiff's warning-based claims are not preempted, *Bates* is incorrect and inconsistent with

23  federal preemption principles.

24      9.    Plaintiff's warning-based and design-based claims are preempted as a matter of

25  impossibility preemption because the U.S. EPA specifically requires preapproval before

26  Monsanto can either change Roundup's formulation or change the "precautionary statements"

27

28

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

on Roundup's label.  As such, Monsanto cannot independently do under federal law what state law (by virtue of this tort suit) would require Monsanto to do (provide a warning about NHL).  *See Pliva, Inc. v. Mensing*, 564 U.S. 604, 620 (2011) ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it.") (citing *Wyeth v. Levine*, 555 U.S. 555, 573 (2009)).  Moreover, permitting liability, including for punitive damages, for conduct in compliance with EPA approval also frustrates the purposes of the regulatory scheme.

10.     Further, there is now "clear evidence" in the record that EPA would have rejected the formulation or label changes Plaintiffs seek. *Wyeth*, 555 U.S. at 571; *see also Merck Sharp & Dohme Corp. v. Albrecht*, No. 17-290, 2019 WL 2166393 (U.S. May 20, 2019).  Indeed, as recently as April 30, 2019—only a month after the trial of this matter and after the *Johnson* trial—the EPA concluded, in its Proposed Interim Registration Review Decision ("PID"), that glyphosate is not a carcinogen and there are no risks to human health when glyphosate is used in accordance with its current label. *See Proposed Interim Registration Review Decision*, Environmental Protection Agency (2019), https://www.epa.gov/sites/production/files/2019-04/documents/glyphosate-pid-signed.pdf.  Such unequivocal conclusions satisfy the "clear evidence" standard and warrant judgment notwithstanding the verdict or, at minimum, a new trial.

## C. Monsanto is Entitled to Relief Due to Insufficiency of the Evidence on Various Issues.

### a. Design Defect

11.     The Court should not have allowed Plaintiff's design defect claim to go to the jury.  Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Monsanto's Mem. re: Inapplicability of Consumer Expectations Test, ECF No. 2935; Letter from B. Stekloff re: Design Defect Claim, March 14, 2019, ECF No. 2991; Letter from B. Stekloff re: Design Defect Claim, March 14, 2019, ECF No. 2996; Def.'s Rule 50(A) Mot., ECF No. 3157; Letter from B. Stekloff re: Objections to Revised Phase 2 Jury

Instructions, ECF No. 3189; and Def.'s Mot. to Dismiss, *Hardeman*, 216 F. Supp. 3d 1037 (No. 16-00525), ECF No. 18.

12.     The Court should not have allowed Plaintiff's design defect claim to go to the jury because Roundup is a glyphosate-based product, and glyphosate is a raw material that cannot be defectively designed.

13.     The Court should not have allowed Plaintiff's design defect claim to go to the jury because Plaintiff did not present a valid theory of liability supporting the claim.  *See Mansur v. Ford Motor Co*., 129 Cal. Rptr. 3d 200, 208 (Ct. App. 2011) ("The general rule regarding jury instructions is that 'a party is entitled to have the jury instructed as to his theory of the case provided (1) that he requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory.'") (citation omitted).

14.     Plaintiff presented an impermissible design defect theory to the jury after the Court limited his theory to arguing that Roundup is unsafe for residential use.  After prolonged efforts to clarify Plaintiff's design defect theory, the Court granted Plaintiff's request to issue the consumer expectations test instruction subject to one caveat: "Mr. Hardeman's only design defect theory will be that Roundup is simply unsafe for residential use."  Pretrial Order No. 116: Order re Design Defect Claim 2, ECF No. 3015.  Monsanto maintains that this ruling was erroneous to the extent it allowed any claim to go forward under the consumer expectations test. But making matters worse, *after* the Court issued the jury instructions, Plaintiff's counsel impermissibly argued to the jury that Roundup's design defect stems from the composition of the formulated product.  Trial Tr. vol. 20, 2797:6–10, March 26, 2019. ("The formulation does the damage.  The formulation is Roundup.  And that's why we ask that you check yes to Question Number 1.  It is a defective design.").  In other words, Plaintiff presented to the jury a theory that even the Court had recognized was improper.

15.     Plaintiff's design defect case was a disguised failure to warn case that should have never reached the jury because, as the Court itself remarked, Plaintiff's design defect theory

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

amounted to trying to fit a square peg into a round hole.  Trial Tr. vol. 13, 2122:17–19, March 15, 2019.

16.    The Court's instruction to the jury on Plaintiff's design defect claim was based on the consumer expectations test, but that test does not apply as a matter of law because under California law, ordinary consumers cannot form minimum expectations about Roundup's safety.

17.    The consumer expectations test jury instruction created an impossible "liability per se" standard.  As Plaintiff's counsel argued, it allowed the jury to find that if Plaintiff did not expect to contract cancer from using Roundup, then Roundup did not satisfy ordinary consumer expectations and Monsanto was liable.  Trial Tr. vol. 19, 2604:21–24, March 25, 2019 (Plaintiff's counsel: "It requires the jury to make a finding that the product is one that an ordinary consumer would form reasonable minimum safety expectations—in other words, they don't expect to get cancer from using Roundup . . . .").  California courts, however, disavow this reasoning and have made clear that such arguments are impermissible.  *See Trejo v. Johnson & Johnson*, 220 Cal. Rptr. 3d 127, 168–69 (Ct. App. 2017) ("If this were the end of the inquiry, the consumer expectation test always would apply and every product would be found to have a design defect.").

18.    Plaintiff waived proceeding under the risk-benefit test, and because the consumer expectations test did not apply as a matter of law, Plaintiff's design defect claim should not have reached the jury.  *See* Pretrial Order No. 116 at 2 (ordering Plaintiff to inform the Court if it disagreed with issuing only the consumer expectations test instruction).

19.    Plaintiff presented no testimony, expert or otherwise, that Roundup should not be sold to residential users, or that Roundup's design caused Plaintiff's injury.

       *b.  Failure to Warn*

20.    Plaintiff's failure to warn claim fails as a matter of law.  Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Def.'s Mot. to

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

Dismiss, *Hardeman*, 216 F. Supp. 3d 1037 (No. 16-00525), ECF No. 18; Def.'s Mot. Summ. J. on Non-Causation Grounds, ECF No. 2419; and Def.'s Rule 50(A) Mot., ECF No. 3157.

21.     Plaintiff failed to present competent evidence showing that Roundup's alleged cancer risks were "known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge at the time of manufacture and distribution." *See Valentine v. Baxter Healthcare Corp.*, 81 Cal. Rptr. 2d 252, 263 (Ct. App. 1999) ( "The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.") (quoting *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 558 (Cal. 1991) (en banc)).

22.     Plaintiff failed to present any evidence at trial—let alone the expert testimony required by law—regarding *what warning* Monsanto should have placed on Roundup's label, and *when* that warning should have been added.  *See Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1034 (E.D. Cal. 2011).

23.     Plaintiff's failure to present expert testimony about what the scientific literature showed "*at the time the product was distributed*" meant he had no evidence establishing the requisite connection between the scientific literature available while he was using Roundup and any duty to warn.  *Id.* at 1033 (emphasis added).

24.     Neither Plaintiff's counsel's biased and litigation-created interpretation of scientific literature nor claims by counsel "that the medical literature triggered defendants' alleged duty to . . . warn of [the] risk" is an acceptable substitute for expert testimony.  *Id.* at 1034 (citations and internal quotation marks omitted).

        *c.   General and Specific Causation*

25.     Plaintiff presented insufficient general causation evidence.  Specifically, Plaintiff failed to present sufficient evidence at trial to support a finding that Roundup or glyphosate is

capable of causing NHL.  Monsanto hereby adopts and incorporates its briefing and argument on this subject, including the arguments and briefing identified *supra* at ¶ 2.

26.   Plaintiff also failed to present sufficient evidence at trial of specific causation— *i.e.*, that Roundup or glyphosate was a substantial factor in causing Plaintiff's NHL.  Plaintiff's sole specific causation expert to testify at trial, Dr. Weisenburger, offered testimony based purely on his subjective beliefs, an undisclosed and invalid methodology, and inadequate science.  As set forth previously *supra* at ¶¶ 3–5, which Monsanto adopts and incorporates herein, Dr. Weisenburger's opinion fails to provide a sufficient basis to support the jury verdict because, among other reasons: (1) Dr. Weisenburger employed an untested, never-before-used, and litigation-driven methodology to opine on the cause of Plaintiff's NHL; (2) Dr. Weisenburger failed to adequately consider whether Plaintiff's NHL was idiopathic; (3) Dr. Weisenburger relied on inadequate and unreliable epidemiological studies to support his conclusions, particularly regarding his opinions on dose response; (4) Dr. Weisenburger's reliance on De Roos 2003 was improper and it was not permissible for it to be the only information upon which Dr. Weisenburger based his specific causation opinion; (5) Dr. Weisenburger's reliance on NAAP was inadequate and impermissible; (6) Dr. Weisenburger had no reliable basis for his dose-response opinion; and (7) Dr. Weisenburger failed to reliably rule out Plaintiff's other causative risk factors, including hepatitis B and hepatitis C.

27.   Moreover, Dr. Weisenburger's opinion was based on an assumption about Plaintiff's exposure to Roundup and/or glyphosate that was not supported by the evidence introduced at trial.  At trial, Dr. Weisenburger based his finding that Roundup was a substantial factor in Plaintiff's NHL based on Plaintiff's alleged high exposure to Roundup over many years. *See, e.g.*, Trial Tr. vol. 8, 1152:23–24, 1153:22–23, March 5, 2019.  In particular, Dr. Weisenburger testified that Plaintiff sprayed "up to 20 gallons at one—at one time in one day," *id.* at 1153:3–4, and that, based on information from Plaintiff's deposition, Plaintiff was "exposed to Roundup over 300 times" and "used around 5,900 gallons of Roundup" over the course of 26 years.  *Id.* at 1153:9–14.  Plaintiff's own testimony did not support Dr.

Weisenburger's calculations.  Plaintiff testified that between 1986 and 1988 he used only 8 to 12 ounces of Roundup concentrate once a month between May and September or October (or at most 18 times).  *Id.* at 1011:15–17; 1012:22–1013:3.  Plaintiff also testified that, between late 1989 and 2012, he used Roundup only on limited portions of his second property from May to September or October (or at most 144 times).  *Id.* at 1023:7–9; 1024:2–10; 1034:7–1035:3; 1036:16–19.  When spraying on this second property, Plaintiff used a two-gallon pump-up sprayer for between three to four hours on long walks, though some days he would spray more and some days he would spray less—and he never offered testimony about having refilled the sprayer.  *Id.* at 1024:11–14; 1024:20–23; 1026:3–6; 1026:21–25.  This testimony falls well short of the calculations that gave rise to Dr. Weisenburger's conclusion, and Plaintiff offered no admissible testimony that Plaintiff's actual Roundup exposure was a substantial factor in causing his NHL.  The Court permitted Plaintiff's specific causation experts to testify in part because they "relied heavily on the plaintiffs' exposure levels in drawing their conclusions."  Pretrial Order No. 85 at 6.  But the expert testimony Plaintiff offered to the jury was instead premised on a fabricated level of exposure to Roundup well above that actually experienced by Plaintiff, which cannot justify a verdict in Plaintiff's favor.

28.     Finally, as Monsanto argued in its motion to exclude Plaintiffs' specific-causation experts, Def.'s Mot. To Exclude Testimony, ECF No. 2420, and its reply in support of that motion, Def.'s Reply To Exclude Testimony, ECF No. 2525, Plaintiff's experts failed to point to any peer-reviewed, published data demonstrating a reliable odds ratio, or relative risk, for Roundup over 2.0.  Under Ninth Circuit precedent, reliance upon epidemiological data with a relative risk of less than 2.0 is insufficient to establish specific causation as a matter of law.  *See Daubert v. Merrell Dow Pharms. Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995) ("For an epidemiological study to show causation under a preponderance standard, the relative risk . . . will, at a minimum, have to exceed 2.") (citation and quotation marks omitted)); *see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1172 (N.D. Cal. 2007); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 893 (C.D.

Cal. 2004).  Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Def.'s Mot. for Directed Verdict, ECF No. 2975; Def.'s Mot. To Exclude Testimony, ECF No. 2420; Def.'s Reply To Exclude Testimony, ECF No. 2525; and its briefing for summary judgment and *Daubert* on general causation, Def.'s General Causation *Daubert*, ECF No. 545;  Def.'s Reply General Causation *Daubert*, ECF No. 681; Def.'s Suppl. Mem. Regarding New Opinions Disclosed at *Daubert* Hearing, ECF No. 1354.

### d.   Compensatory Damages

29.    Plaintiff's noneconomic damages award of $5,066,667.00 is not supported by the evidence and is based on speculation.  Per the jury instructions on future noneconomic damages, Plaintiff had to prove that "he is reasonably certain to suffer that harm." Trial Tr. vol. 20, 2699:6–7, March 26, 2019.  But the limited evidence introduced at trial established the contrary: Dr. Nabhan testified that Plaintiff's prognosis "is very good" and "it is extremely unlikely" his DLBCL will recur. Trial Tr. vol. 18, 2370:1–7, March 22, 2019.  Moreover, although Dr. Nabhan testified that Plaintiff faces an increased risk of other cancers, *id.* at 2371:9–12, this conclusion is speculative and not "reasonably certain."

30.    Plaintiff's award for noneconomic damages is excessive. "In determining whether the noneconomic damages award is excessive, [California appellate courts] compare the amount of that award to the economic damages award, to see if there is a reasonable relationship between the two." *Major v. W. Home Ins. Co.*, 87 Cal. Rptr. 3d 556, 572 (Ct. App. 2009); *see also Buell-Wilson v. Ford Motor Co.*, 46 Cal. Rptr. 3d 147, 172 (Ct. App. 2006) (reducing noneconomic award to amount "proportionate to the economic damages award" from fourteen to four times the economic damages), *vacated on other grounds*, 550 U.S. 931 (2007).  Plaintiff's total noneconomic damages ($5,066,667.00) is twenty-five times larger than his economic damages ($200,967.10), which is grossly excessive and disproportionate.

31.    Plaintiff's noneconomic damages award exceeds amounts awarded for similar injuries with graver long-term consequences. *See Seffert v. L.A. Transit Lines*, 364 P.2d 337,

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

343 (Cal. 1961) (holding that appellate courts "should consider the amounts awarded in prior cases for similar injuries"); *see also*, *e.g.*, *Garza v. Asbestos Corp.*, 74 Cal. Rptr. 3d 359,  364 (Ct. App. 2008) (affirming $500,000 noneconomic damages award for asbestosis where plaintiff "can walk only about half a block, can't do even small things without getting exhausted, and his view of the future is 'bleak'"); *Garcia v. Duro Dyne Corp.*, 67 Cal. Rptr. 3d 100, 104 (Ct. App. 2007) (affirming noneconomic damages award of $750,000 where expert stated plaintiff with mesothelioma would likely die from complications).

32.    Plaintiff's counsel improperly told the jury to consider his life expectancy and calculate noneconomic damages "by some mathematical formula" in violation of the Court's Pretrial Order 138 and California law.  *See Loth v. Truck-A-Way Corp.*, 70 Cal. Rptr. 2d 571, 576–78 (Ct. App. 1998) ("[A] plaintiff may not supply . . . her own formula for computing such damages."); *Bakkie v. Union Carbide Corp.*, No. A116231, 2007 WL 4206739 at *25 (Cal. Ct. App. Nov. 29, 2007) (holding the verdict "was affected by the improper argument about 28.2 years of life expectancy" and could not "be allowed to stand"); Pretrial Order No. 138: Instructions on Noneconomic Damages, March 26, 2019, ECF No. 3191 ("The Court sees no reason why life expectancy would be relevant to the calculation of noneconomic losses in a personal injury action, but not in a wrongful death action.").  Here, Plaintiff's counsel instigated the jury to apply a mathematical formula: award "a million dollars a year for every year that he has suffered in the past for the last almost four years and for the next 15 years."  Trial Tr. vol. 20, 2740:22–2741:2, March 26, 2019.  Plaintiff's counsel's invitation to assume he will suffer for fifteen more years was a veiled attempt to reference life expectancy—it is within months of the life expectancy figures that Plaintiff unsuccessfully sought to introduce.  See Trial Tr. vol. 19, 2663:6–9, March 25, 2019 ("THE COURT: Okay. Is that right? 14.3 [years]?  MS. MOORE: Yes.").

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

### D. Monsanto is Entitled to Relief Because Plaintiff Failed to Prove Entitlement to Punitive Damages, And in Any Event, Remittitur Is Required.

33.     Plaintiff has not demonstrated a right to seek punitive damages in this case, because the evidence fails to show the requisite malice, oppression or fraud under California law. Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Def.'s Mot. to Dismiss, *Hardeman*, 216 F. Supp. 3d 1037 (No. 16-00525), ECF No. 18; Def.'s Mot. Summ. J. on Non-Causation Grounds, ECF No. 2419; and Def.'s Rule 50(A) Mot., ECF No. 3157.

34.     Monsanto's conduct also does not reach the degree of reprehensibility necessary to justify Plaintiff's punitive damages award under Supreme Court precedent. "[T]he record in this case discloses no deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 579 (1996). Instead, Monsanto was guided by the scientific consensus—reflected in the views of virtually all regulatory agencies—in believing that Roundup was safe and promoting it as such. Permitting punitive damages under these circumstances violates due process. *Id.* (noting that "BMW could reasonably rely on state disclosure statutes for guidance" in determining "the appropriate line between presumptively minor damage [to vehicles] and damage requiring disclosure to purchasers").

35.     Monsanto's punitive damages should at minimum be reduced given the absence of evidence of reprehensibility, the absurd almost fifteen-to-one ratio between the compensatory and punitive damages award, and a comparison between the punitive damages awarded in this case and civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (instructing courts to consider "the degree of reprehensibility of the defendant's misconduct).

36.     The almost fifteen-to-one ratio between punitive and compensatory damages is excessive, especially given the substantial award of noneconomic damages. "[A] ratio of one to one might be the federal constitutional maximum in a case involving, as here, relatively low

- 14 -

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

reprehensibility and a substantial award of noneconomic damages." *Roby v. McKesson Corp.*, 219 P.3d 749, 769 (Cal. 2009) (citing *State Farm*, 538 U.S. at 425). A substantial compensatory award for noneconomic harm "may be based in part on indignation at the defendant's act and may be so large as to serve, itself, as a deterrent," thus lessening the need for punitive damages. *Id.* (citation omitted). Even when more than a one-to-one ratio is appropriate, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. Accordingly, the California Supreme Court established a presumption that "ratios between the punitive damages award and the plaintiff's actual or potential compensatory damages significantly greater than 9 or 10 to 1 are suspect." *Simon v. San Paolo U.S. Holding Co.*, 113 P.3d 63, 77 (Cal. 2005). Awards with a higher ratio require "special justification" like "extreme reprehensibility or unusually small, hard-to-detect or hard-to-measure compensatory damages." *Id.* But even much smaller ratios cause concern, as the Supreme Court has been clear that even "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425 (2003) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991)).

37. The ratio between punitive and noneconomic damages here is almost fifteen to one. Given the substantial noneconomic damages award of $5,066,667, a one-to-one ratio is appropriate under *Roby*. 219 P.3d at 770 (finding $1.9 million compensatory award "substantial"); *see also Walker v. Farmers Ins. Exch.*, 63 Cal. Rptr. 3d 507, 513 (Ct. App. 2007) (holding $1.5 million in noneconomic damages was substantial and applying one-to-one ratio); *Jet Source Charter, Inc. v. Doherty*, 55 Cal. Rptr. 3d 176, 183 (Ct. App. 2007) (finding $6.5 million award was substantial and reducing $26 million in punitive damages to no more than $6.5 million). The double-digit ratio selected by the jury also exceeds the one-to-one ratio applied by the judge in the *Johnson* case, *see* Ex. 2, Order Denying Monsanto Co.'s Motion for Judgment Not Withstanding the Verdict and Conditionally Denying Monsanto's Motion for New Trial, Johnson v. Monsanto Co., No. CGC-16-550128 (Cal. Super. Ct. Oct. 22, 2018).

- 15 -

38.     The punitive damages award should also be reduced because of prior and future punitive damage awards from other Roundup cases.  Punitive damages should be reduced "where there is the likelihood of several jury-imposed punitive damage awards, each of which is sufficient to punish in the entirety for the misconduct involved." *Delos v. Farmers Grp., Inc.*, 155 Cal. Rptr. 843, 859 (Ct. App. 1979).  Both past awards and the likelihood of future punitive damages are relevant in calculating the adequate amount of punitive damages.  *Stevens v. Owens-Corning Fiberglas Corp.*, 57 Cal. Rptr. 2d 525, 535 (Ct. App. 1996) ("Punitive damages previously imposed for the same conduct are relevant in determining the amount of punitive damages required to sufficiently punish and deter. The likelihood of future punitive damage awards may also be considered, although it is entitled to considerably less weight." (citations omitted)).[1]  In *Johnson*, No. CGC-16-550128 (Cal. Super. Ct. 2018), and *Pilliod v. Monsanto Co.*, Case No. RG17862702 (Cal. Super. Ct. 2019), juries imposed substantial punitive damages against Monsanto for the same claims involved here.  The fact that thousands of Roundup cases are pending further warrants reducing the jury's award in this case.

39.     The $75 million punitive damages award also exceeds the civil fines available for failure to adequately warn of a product's risks under FIFRA, *see* 7 U.S.C. § 136j(a)(1)(E); 40 C.F.R. § 19.4, the California Health and Safety Code, *see* Cal. Health & Safety Code § 25249.7, and the largest punitive award upheld in California of which Monsanto is aware, *see Buell-Wilson*, 73 Cal. Rptr. 3d at, 342 ($55 million), *review granted and opinion superseded*, 187 P.3d 887 (Cal. 2008); *Boeken v. Philip Morris, Inc.*, 26 Cal. Rptr. 3d 638, 687 (Ct. App. 2005) ($50 million).

---

[1] The court in *Stevens* held that evidence of past punitive damages must be shown to the jury based on reasoning that is easily distinguishable from Plaintiff's case.  While the defendant in *Stevens* argued that "it should not be required to give the jury 'highly inflammatory evidence' of other punitive damage awards," the court rejected this argument because the case was bifurcated to assess liability and damages separately. 57 Cal. Rptr. 2d at 535.  Thus, the defendant could have introduced evidence of prior awards in phase 2 without inflaming the jury.  Here, liability and damages were assessed together, and Monsanto could not be expected to show the jury the amount of punitive damages imposed in *Johnson* without risking substantial prejudice.

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

40.    Accordingly, even if the Court does not grant judgment to Monsanto on the issue of punitive damages, it should reduce the punitive damages award to a one-to-one ratio, or at the very minimum a constitutionally permissible ratio.

### E.  Monsanto Is Entitled to Relief Due to Errors in Jury Instructions and Verdict Form.

41.    Monsanto hereby adopts and incorporates all its prior briefing and argument on this subject, including Mem. re: The "Substantial Factor" Test and "But For" Causation, ECF No. 2573; Mem. re: Inapplicability, ECF No. 2935; Letter re: Design Defect, ECF No. 2991; Letter re: Design Defect, ECF No. 2996; Def.'s Rule 50(A) Mot., ECF No. 3157; Letter re: Objections, ECF No. 3189; and Def.'s Mot. to Dismiss, *Hardeman*, 216 F. Supp. 3d 1037 (No. 16-00525), ECF No. 18.

42.    Because this case did not involve concurrent independent causes, the Court should have given an unmodified CACI 430 causation instruction with the bracketed "but for" sentence included.  *See Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1080 (N.D. Cal. 2011) ("The 'substantial factor' test California adopted from the Second Restatement applies the traditional 'but for' cause in most circumstances, but provides an exception for use if concurrent independent causes are present." (citation omitted)); *Modisette v. Apple Inc.*, 241 Cal. Rptr. 3d 209, 224 n.14 (Ct. App. 2018), *reh'g denied* (Jan. 9, 2019) ("Because this case does not involve concurrent independent causes, 'the 'but for' test governs questions of factual causation." (citation and internal quotation marks omitted)).

43.    The Court's modification of CACI 430 was improper and lowered Plaintiff's burden of proof, because it invited the jury to decide only whether either Roundup or hepatitis C caused Plaintiff's NHL without considering other causes or the possibility of an unknown cause.  Trial Tr. vol. 11, 1865:1–11, March 11, 2019.  The Court's modification of CACI 430 also improperly suggested that Monsanto had the burden of proving that hepatitis C was the sole cause of Plaintiff's NHL instead of Roundup.  *Id.* at 1829:19–22.

44.    The Court's modification of CACI 430 also lowered Plaintiff's burden of proof because it invited the jurors to find for Plaintiff if they believed the causation evidence between Roundup and hepatitis C weighed the same. *Id.* at 1846:2–8.  This was improper, since Plaintiff bore the burden of proving that Roundup more likely than not caused his NHL.

45.    The design defect instruction was deficient because it instructed the jury under the consumer expectations test, did not identify Plaintiff's theory of liability, and allowed the jury to find liability on a theory other than that allowed by the Court:  "that Roundup is simply unsafe for residential use."  Pretrial Order No. 116 at 2; Trial Tr. vol. 19, 2606:16–22, March 25, 2019.

46.    The Court erred in its negligent and strict liability failure to warn instructions because in light of *Bates v. Dow Agrosciences LLC*,  544 U.S. 431, 447 (2005), the Court should have instructed the jury to consider whether Monsanto knew or reasonably should have known that "there was an actual risk that Roundup could cause NHL when used in accordance with widespread and commonly recognized practice."

47.    The Court should not have listed the amount of stipulated damages in the verdict form because it improperly suggested to the jury that it should award noneconomic damages after Plaintiff's counsel had agreed that the amount could be omitted.  Trial Tr. vol. 19, 2653:8–12, March 25, 2019; *see also* Letter re: Objections, ECF No. 3189.

### F.  Monsanto Is Entitled to a New Trial Due to the Improper Excusal of Juror No. 4.

48.    Monsanto is entitled to a new trial due to the Court's excusal of Juror No. 4, which occurred absent any judicial inquiry of anyone regarding her ability to be impartial or follow the Court's instructions, was based solely on multiple levels of hearsay, and improperly eased Plaintiff's evidentiary burden at trial.[2]  On February 27, 2019, the third day of testimony, the Court informed the parties that a juror had communicated with the Courtroom Deputy regarding the conduct of another juror, Juror No. 4.  Specifically, the reporting juror conveyed that Juror No. 4 had (1) expressed—in the presence of other jurors, but outside the presence of the Court

---

[2] Plaintiff's counsel did not object to proceeding with eight jurors.

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

or counsel—a preference for one party's attorneys over the other party's attorneys, and (2) stated that she knew how she was ultimately going to vote on the case.  Trial Tr. vol. 5, 788:6–789:2, February 27, 2019.  The Court also disclosed that the Courtroom Deputy had spoken with "a couple of other jurors" to corroborate the allegations regarding Juror No. 4.  *Id.* at 788:19–21; 789:8–13.

49.    Upon recounting the allegations to counsel at sidebar, the Court initially indicated that if counsel "wanted to conduct further investigation, [it] probably wouldn't be opposed to it," but then expressed its decision that, in light of the allegations and the Courtroom Deputy's conversations with the additional jurors, it felt it "ha[d] to excuse [Juror No. 4], unfortunately." *Id.* at 789:2–5.  After the Court provided time for additional consideration of the issue, Monsanto requested that the Court engage in an *ex parte* discussion with Juror No. 4 to determine whether she had made the reported comments and whether she would be willing to listen to the evidence and instructions, participate in deliberations, and not express views until she had heard all of the evidence and law.  *Id.* at 792:14–21; 793:2–12.  The Court declined to conduct such a discussion and dismissed Juror No. 4 without any inquiry at all.  *Id.* at 793:25–794:19.

50.    The Court erred in excusing Juror No. 4 without first conducting an inquiry on the record as requested by Monsanto.  Although the Court has discretion to "excuse a juror for good cause" during trial or deliberation, Fed. R. Civ. P. 47(c), "prudent exercise of discretion" dictates the trial court have "sufficient information to make an informed decision."  *United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994); *United States v. Jones*, 747 F. App'x 348, 356 (6th Cir. 2018).  Here, the Court lacked sufficient information to properly exercise the discretion granted by Rule 47(c).  The Court declined to question Juror No. 4 on the record before conducting any inquiry into her ability to continue, a process often conducted by courts and requested specifically by Monsanto in this circumstance.  *See, e.g.*, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220–21 (9th Cir. 1995); *Garcia v. Spokane Cty.*, 745 F. App'x 730, 731 (9th Cir. 2018).  Indeed, the Court declined to make any inquiry at all, including questioning the other jurors, and reached its conclusion solely based on off-the-record conversations between

- 19 -

the Courtroom Deputy and three jurors other than Juror No. 4 that involved multiple layers of hearsay. *Cf. Harris v. Folk Const. Co.*, 138 F.3d 365, 371–72 (11th Cir. 1998) (noting that "in investigating allegations of jury misconduct, trial courts 'should not decide and take final action *ex parte* on information . . . , but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, *in a hearing with all interested parties permitted to participate*" (quoting *Remmer v. United States*, 347 U.S. 227, 229–30 (1954)).

51.   This approach was particularly problematic given the default presumption of validity of the "oath taken by [jurors] given the absence of any stated intention to disregard it." *United States v. Quintero-Barraza*, 78 F.3d 1344, 1350 (9th Cir. 1995); *see also Image Tech. Servs.*, 125 F.3d at 1221 (citing *Quinter-Barraza* favorably and finding "no reason to . . . disregard [the juror's] oath to judge the evidence fairly and obey the court's instructions"). Here, there was no "stated intention" by Juror 4—other than pure hearsay—to abandon her oath to decide the evidence fairly and obey the Court's instructions. Dismissing her absent further inquiry improperly eased the task for Plaintiff at trial and thus prejudiced Monsanto.

### G.  Monsanto Is Entitled to Relief Due to Improper Evidentiary Rulings and Insufficient Policing of Previously-Issued Rulings.

Monsanto is entitled to a relief based on several erroneous evidentiary rulings, that taken in isolation or together, prejudiced Monsanto.

#### a.  Improper Rulings as to Pathology Opinions

52.   Monsanto is entitled to a new trial due to the Court's approach to undisclosed opinions, the result of which was to permit Plaintiff's specific causation expert to offer undisclosed opinions to the jury but to then preclude Monsanto's specific causation experts from rebutting those opinions. In addition to the previously undisclosed methodology described above, the Court improperly—and over Monsanto's objection—allowed Dr. Weisenburger to testify as to his previously undisclosed review of Plaintiff's pathology. *See* Trial Tr. vol. 19, 1216:14–1217:22, March 6, 2019. Indeed, Dr. Weisenburger had failed to even *review* the relevant pathology slides until just before he testified at trial, giving Monsanto no opportunity

to question him about it. *Id.* at 1216:19-1217:22. The Court also permitted Dr. Weisenburger to offer previously undisclosed opinions about genetic mutations associated with hepatitis C and to opine (again, over Monsanto's objection) that any genetic mutations caused by Plaintiff's hepatitis C would have been eliminated by his treatment over a decade before his NHL diagnosis. *See, e.g.*, *id.* at 1205:23–1211:22. Specifically, the Court allowed Dr. Weisenburger to offer an opinion about the Zuckerman article (TX 1599), Ex. 3, and its application to Plaintiff, which did not appear in his report, his prior deposition testimony, or his prior *Daubert* testimony. *Id.* Finally, Dr. Weisenburger was permitted to testify that his review of Plaintiff's pathology records—which actually identified certain genetic mutations—did not change his opinion in any way. *Id.* at 1216:13–1217:22. Taken together, this previously undisclosed testimony gave the jury the impression that Dr. Weisenburger conclusively could rule out hepatitis C as a cause of Plaintiff's NHL in part based on his review of the pathology. Dr. Weisenburger should not have been permitted to offer any of these new and undisclosed opinions. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (holding that even where party introducing undisclosed opinions "never violated an explicit court order to produce" those opinions, "and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)").

53.   The prejudice caused by this error was compounded by the Court's rejection of Monsanto's attempt to rebut Dr. Weisenburger's testimony. The Court rightly recognized that any limitations on Monsanto's experts' testimony should "depend[] on what Weisenburger says, of course." Trial Tr. vol. 7, 925:17–18, March 4, 2019. But the Court nevertheless prohibited Drs. Arber and Levine from offering certain opinions responsive to Dr. Weisenburger's. Specifically, Monsanto sought to and was prohibited from introducing testimony by Dr. Arber that Plaintiff's 2015 pathology report was "positive for BCL6 (3q27) rearrangement in 29% of cells,"—that is, that the pathology report revealed a mutation of the BCL6 gene—and that BCL6 abnormalities are associated with hepatitis C. *See* Trial Tr. vol. 6, 904:12-907:3, March 1, 2019; Trial Tr. vol. 7, 922:2–928:16, March 4, 2019; Trial Tr. vol. 9, 1379:5–1382:8, March 6, 2019;

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

Pretrial Order No. 104: Scope of Dr. Arber's Testimony, ECF NO. 2942; *see also* Ex. 4, TX 1191, Arber Expert Report 4 ¶ 18.  Dr. Arber and Dr. Levine were both prohibited from explaining to the jury that in the scientific literature BCL6 genetic abnormalities are associated with hepatitis C but not with Roundup use.  *See* Trial Tr. vol. 6,  904:12–907:3, March 1, 2019; Trial Tr. vol. 7, 927:2–928:16, March 4, 2019; Trial Tr. vol. 10, 1437:6–1438:19, March 8, 2019; Pretrial Order No. 104.

54.   The Court's rulings thus applied an improper double-standard to the pathology: Dr. Weisenburger was allowed to offer previously undisclosed opinions that (in his telling) ruled out hepatitis C as a cause of Plaintiff's NHL, while Dr. Arber was precluded from rebutting those precise opinions based on his timely and disclosed review of the pathology.

### b.   Improper Specific Causation Rulings

55.   The Court also compounded the disclosure errors by precluding Dr. Levine from testifying in any detail about the basis for her opinions that glyphosate does not cause NHL. Even though Dr. Levine disclosed those opinions in her report, the Court deemed such testimony related to general causation and excluded it, notwithstanding Pretrial Order No. 7. Ex. 5, TX 1190, Levine Expert Report at 3-4, 9-12, 20-23; Pretrial Order No. 7: Deposition Protocol, ECF No. 103.  Dr. Levine, for example, was not permitted to explain the analysis contained in her report of why Roundup is not generally a carcinogen, and could only (inaccurately) say that she relied on Dr. Mucci's general causation opinion.  *See, e.g.*, Trial Tr. vol. 10, 1389:5–23, March 8, 2019.[3]  Witnesses should not be required to provide testimony that is untrue based on their disclosed opinions, especially in a trial where the Plaintiff was, by virtue of the Court's rulings, not subject to an affirmative disclosure requirement for opinions offered at trial.  Nor would Dr. Levine's testimony have required revisiting the Court's prior rulings on general causation—the Court determined, well before trial, that there was a jury question on whether Roundup generally is capable of causing NHL, and nothing about that ruling would have been disturbed by

---

[3] *See also* Letter from B. Stekloff Re: Drs. Arber and Levine, March 5, 2019, ECF No. 2921.

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

permitting Monsanto to introduce a new expert to contradict that point.  That is especially true given that Plaintiff had an opportunity to depose Dr. Levine (which he chose not to use).

56.    The Court also improperly permitted Plaintiff's counsel unfairly to use those limitations to attack those experts' credibility.  It is one thing to require experts to offer testimony that does not accurately reflect their methods and reasoning.  It is another to permit Plaintiff's counsel to then attack the expert for the inaccuracy forced upon them.  On cross examination, and over Monsanto's objection, Plaintiff's counsel was permitted to mischaracterize Dr. Levine's reliance on Dr. Mucci in a manner that undermined Dr. Levine's credibility by suggesting that she had not performed any independent work.  *See* Trial Tr. vol. 11, 1640:22–1642:14, March 11, 2019 ("Q. And for the epidemiology, you are relying solely on Dr. Mucci's testimony from last Friday that I understand you've read; is that correct?").  Allowing Monsanto's counsel to set the record straight on redirect did not cure the prejudice from questions Plaintiff's counsel should never have been able to ask.  *See id.* at 1697:7–1700:25, 1760:6–1761:7.

c.   *Improper Exclusion of Evidence Regarding Worldwide Regulatory Approvals of Glyphosate*

57.    Monsanto is entitled to relief based on the Court's selective admission of evidence regarding the global regulatory consensus about glyphosate's safety, which gave the jury a skewed view of the volume and scope of evidence reinforcing Monsanto's view of the science.  As a general matter, the Court properly excluded evidence of Monsanto's corporate conduct after Plaintiff stopped using Roundup. Pretrial Order No. 81: Rulings on Mot. in Lim. 3, ECF No. 2775.  But in both phases of trial, the Court permitted evidence of IARC's classification of glyphosate, which occurred post-use.  *Id.* at 1.  Once the Court permitted that evidence to be admitted, fairness and completeness required that Monsanto be allowed to introduce the overwhelming evidence of regulators' reaffirmations of glyphosate's safety after, and often in response to, IARC.  The Court, however, permitted only limited evidence of post-use regulatory findings as impeachment of Dr. Portier.  Specifically, because Dr. Portier attempted to convince

the EPA, EFSA, and EChA that glyphosate is likely carcinogenic to humans, the Court permitted the top-line conclusions of those regulators, in response to both IARC and Dr. Portier, that glyphosate is likely *not* carcinogenic. *See id.* at 5–6. But the Court precluded Monsanto throughout trial from offering evidence about those regulators' more specific conclusions on epidemiology, animal, and genotoxicity studies. *See* Pretrial Order No. 96: Evidentiary Rulings on Dr. Portier's Testimony on Cross-Examination at 2, ECF No. 2838 (sustaining Plaintiff's objections to Monsanto's designations of Portier Tr. 349–351, 351–353, 431–437, 439, 442–443, 451, 455, 456–457); Pretrial Order No. 114: Order Regarding Outstanding Evidentiary Issues from PTO 81 at 1, ECF No. 2987. The Court also restricted Monsanto from offering the post-IARC conclusions of other regulators, such as Health Canada, the Japanese Food Safety Commission, the New Zealand Environmental Protection Authority, and the Australian Pesticides and Veterinary Medicines Authority. Indeed, the Court did not permit other foreign regulatory evidence at all in Phase 1, Pretrial Order No. 81 at 5, and limited Monsanto to regulatory findings pre-dating 2013 during Phase 2 even though Plaintiff was allowed to discuss IARC, *id.* at 5–6; Pretrial Order No. 114 at 1; Pretrial Order No. 128: Ruling on Monsanto's Additional Phase 2 Designations for Dr. Portier, ECF No. 3148. These restrictions meant the jury did not see the full picture of the robust worldwide regulatory consensus that glyphosate does not cause NHL.

### d. Uneven Treatment of EPA Exhibits

58. Monsanto is also entitled to relief based on the Court's treatment of EPA documents. Plaintiff moved *in limine* to exclude certain EPA reports as inadmissible hearsay, *see* Pls.' Mot. in Lim. No. 5 To Exclude Certain U.S. EPA Documents Relating to Glyphosate's Carcinogenicity, ECF No. 2596, and the Court granted that request in part as to Phase 1, holding that "the fact of EPA approval is admissible at both phases, but the documents themselves are not." Pretrial Order No. 81 at 6. Nevertheless, Plaintiff admitted in Phase 1 documents from the EPA through the video testimony of Dr. Bill Reeves. Specifically, Plaintiff was permitted

to admit the EPA's March 4, 1985 memorandum titled, "Consensus Review of Glyphosate" (TX 505), Ex. 6; the EPA's December 12, 1985 memorandum titled, "Roundup; Glyphosate; Pathology Report on Additional Kidney Sections" (TX 512), Ex. 7; and the EPA's June 1986 EPA Guidance for the Reregistration of Pesticide Products Containing Glyphosate as the Active Ingredient (TX 514), Ex. 8.  *See* Trial Tr. vol. 11, 1574:12–16, March 11, 2019.  Plaintiff likewise admitted EPA documents through Dr. Reeves in Phase 2 of trial, including the EPA's April 3, 1985 memorandum titled, "Glyphosate; EPA Reg. #524-308; mouse oncogenicity study" (TX 503), Ex. 9; and the EPA's January 5, 1988 glyphosate Guidance Document (TX 516), Ex. 10.  *See* Trial Tr. vol. 19, 2529:11–13, March 25, 2019.

59.     Under a straightforward application of the Court's *in limine* ruling, TXs 503, 505, 512, 514, and 516 should never have been admitted in the first place.  But when Monsanto sought to admit key EPA regulatory approvals in Phase 2 through the testimony of Donna Farmer, the Court precluded their admission.  Specifically, the Court precluded:  the EPA's 1993 Re-registration Eligibility Determination ("RED") (TX 481), Ex. 11, and the EPA's April 3, 2009 memorandum on Alkyl Amine Polyalkoxylate surfactants (TX 482), Ex. 12.  *See* Trial Tr. vol. 19, 2538:5–2540:15, March 25, 2019.  The Court also precluded admission of similar non-EPA regulatory approvals, including the European Commission's January 21, 2002 "Review report for the active substance glyphosate" (TX 483), Ex. 13, and the 2004 JMPR Report on Pesticide Residues in Food (TXs 484–85), Exs. 14–15.  *See id.*  The Court based that exclusion, in part, on "the way the parties have been treating these kinds of documents throughout the trial." Trial Tr. vol. 19, 2540:3–4, March 25, 2019.  But as the foregoing makes clear, the EPA documents were not treated the same throughout trial.  Plaintiff was permitted to introduce EPA documents to tell his version of the Knezevich & Hogan story, yet Monsanto was precluded from introducing EPA and other regulatory documents in order to demonstrate the wealth of regulatory approvals of glyphosate.

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

e.   *Plaintiff's Violations of Pretrial Order No. 85*

60.    Monsanto is also entitled to relief based on Plaintiff's violation of Pretrial Order No. 85, which circumscribed the testimony and argument Plaintiff could to present about his preferred epidemiological studies.  In Pretrial Order No. 85, the Court made clear that experts "may not testify that the McDuffie and Eriksson studies stand for the proposition that if someone uses Roundup more than two days per year or more than ten days in their lifetime, their risk of developing NHL doubles," as such testimony would be "inaccurate, misleading, and untethered to any sound scientific method."  Pretrial Order No. 85: Denying Monsanto's Mot. for Summ. J. on Specific Causation 7, ECF No. 2799  The Court similarly excluded testimony "that Mr. Hardeman's risk of developing NHL more than doubled because he used Roundup far more than the threshold of ten lifetime days set by the Eriksson and McDuffie studies."  *Id.* at 8.

61.    Mr. Hardman's counsel crossed that line repeatedly throughout trial.  For instance, during opening statements, Plaintiff's counsel argued that *McDuffie* "found there was a 212 percent increased risk if you were exposed to Roundup over two days a year" and *Eriksson* concluded "if you are exposed to Roundup more than ten days, you have a 202 percent chance— I'm sorry—you have a 236 percent chance if you are exposed to more than ten days in your life. 236 percent chance."  Trial Tr. vol. 3, 336:6–14, Feb. 25, 2019.  In response, the Court reiterated that Pretrial Order No. 85 precluded an "opinion that those numbers stand for this sort of quantitative proposition," *id.* at 431:17–18, and explained that the experts "can say what the numbers stand for," but must offer the qualification "that these are unadjusted numbers and also the overall numbers of the subjects in the studies are very low."  *Id.* at 431:22–25.  The Court did instruct the jury that opening statements are not evidence, but Plaintiff then compounded the prejudice with his presentation of evidence.

62.    For example, as set forth in Monsanto's letter brief during trial, Letter from B. Stekloff re: Curative Instruction at 2, Feb. 25, 2019, ECF No. 2814, which Monsanto adopts and incorporates herein, Dr. Ritz's trial testimony contravened these limitations.   During her

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

testimony, Dr. Ritz made the following statements about *McDuffie* and *Eriksson* that offered impermissible quantifications of the risk absent any of the qualifications required by the Court:

- *McDuffie*: "The pattern I see is, yeah, there's no risk increase if you use glyphosate for a day or two; but look at what happens when you're using it regularly, *more than two days a year*. That's where all of the risk is, and it's *more than twofold* and it's statistically significant but still unadjusted for other pesticides." Trial Tr. vol. 3, 484:6–11, Feb. 25, 2019 (emphasis added).

- *Eriksson*: "So this is a new study, new cases that arrived later in time. More of them were exposed, which makes a lot of sense because glyphosate use increased. Right? So we now have actually a lot more data to base our opinion on, and we see again a *twofold risk increase* and we would call this statistically significant because it excludes the 1; right? It's on that side of the 1, 1.1." *Id.* at 492:10–16 (emphasis added).

- *Eriksson*: "And as you can see, the risk is different if you're using a little bit, maybe 69 percent risk increase but we can't say. The confidence interval is wide; right? But definitely the ones *using more than 10 days, they are more than twofold risk increased.*" *Id.* at 494:10–14 (emphasis added).

- *Eriksson*: "Yes. So, again, it means if you were exposed *10 days or more* in the past, then *your risk is more than twofold*, and in this case statistically significant." *Id.* at 496:17–19 (emphasis added).

63.     Moreover, on his second day of testimony, Dr. Wiesenberger asserted that "people with high exposure to Roundup have a significantly increased risk for non-Hodgkin's lymphoma of at least twofold . . . ." *See* Trial Tr. vol. 9, 1213:9–11, March 6, 2019.  He underscored this problematic testimony with a chart reflecting this point—which is the exact testimony the Court deemed to be inadmissible. *Id.* at 1213:14–20.  Although the Court

sustained an objection to the proffered testimony and requested that Dr. Weisenburger take down the chart, *id.* at 1213:12–20, in light of Dr. Weisenburger's direct contravention of the limitations placed on his testimony, Monsanto requested a curative instruction in addition to striking the testimony. *Id.* at 1213:24–1214:4. The Court denied Monsanto's request. *Id.* at 1214:5–9.

64.    Plaintiff's counsel returned to this point in closing, arguing that in *McDuffie*, there "was a doubling of the risk that was statistically significant" and that "you've got here a dose-response, doubling of the risk, statistically significant." Trial Tr. vol. 12, 2003:9–16, March 12, 2019. Counsel continued, noting that in *Eriksson* there was a "226 percent chance of increased risk," *id.* at 2004:10–13, and that the North American Pooled Project found "almost a doubling of the risk, statistically significant." *Id.* at 2005:1–3.

65.    Monsanto was prejudiced by Plaintiff's repeated violations of the Court's sound ruling without any meaningful consequence or indication to the jury that the evidence they were hearing was "inaccurate, misleading, and untethered to any sound scientific method." Pretrial Order No. 85 at 7. As a result, the testimony presented by Plaintiff's experts and statements made by his counsel warrant a new trial.

    *f.  Exclusion of Agricultural Benefits*

66.    The Court erred in excluding, in both phases of trial, evidence regarding the agricultural benefits of glyphosate—or what the Court termed Monsanto's "feed the world arguments." *See* Pretrial Order No. 81 at 5; *see also* Monsanto Co.'s Opp. to Pls.' Mot. in Lim. No. 3 to Exclude Any Evidence and Testimony Regarding the Efficacy and Benefits of Glyphosate, ECF No. 2593. That ruling was improper because evidence of glyphosate's benefits (including its agricultural benefits) was relevant to and probative of a number of issues that came up at trial. Among other things, evidence of glyphosate's agricultural benefits, including the so-called "feed the world" argument, is relevant to punitive damages and Monsanto's ability to rebut allegations of corporate misconduct. Monsanto Co.'s Opp. to Pls.' Mot. in Lim. No. 3 at

3–5, ECF No. 2593.  At trial, Plaintiff was permitted to present theories that Monsanto cares only about profits and not about consumers and that Monsanto "combatted" negative glyphosate science to bolster its business.  *See, e.g.*, Trial Tr. vol. 20, 2745:18–21, March 26, 2019 (Ms. Moore closing argument) ("[N]othing has stopped this company, and that's because the only thing that matters to them is their greed. The only thing that matters is that bottom line, the profit."); Ex. 16, TX 969 at 144:5–152:8 (Plaintiff's designations of Dr. Reeves testifying about a Dr. Farmer email stating "Here's is there bottom line, how do we combat this?").  But that narrative—divorced from the entire context of glyphosate's benefits—painted a misleading and prejudicial picture for the jury.  Monsanto's attention to and actions regarding the public and scientific discourse about glyphosate cannot be understood properly absent consideration of glyphosate's beneficial role in weed control, including in modern agriculture. Those benefits help further explain why Monsanto did not pull Roundup from the market or add a cancer warning given the absence of any scientific support for doing so.  But the jury was permitted to hear only Plaintiff's accusations without any further context.

## IV.     CONCLUSION

Monsanto respectfully requests that the Court grant judgment as a matter of law in its favor, or, in the alternative, a new trial.


DATED:  May 31, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP

2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

- 30 -

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of May 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Brian L. Stekloff*

MONSANTO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL