# Exhibit 1

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

PAGES 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

EDWIN HARDEMAN,              )

                             )

        PLAINTIFF,        )

                             )

 VS.                  ) NO. C 3:16-CV-00525-VC

                             )

MONSANTO COMPANY AND JOHN        )

DOES 1-50,                )

                             )  SAN FRANCISCO, CALIFORNIA

        DEFENDANTS.        )  THURSDAY

                        )  APRIL 7, 2016

_____)

  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND

        RECORDING  10:02 A.M. - 10:38 A.M.

APPEARANCES:

FOR PLAINTIFF        ANDRUS WAGSTAFF, PC

            7171 W. ALASKA DRIVE

            LAKEWOOD, COLORADO  80226

        BY:  DAVID J. WOOL, ESQUIRE

FOR DEFENDANTS        HOLLINGSWORTH, LLP

            1350 I STREET NW

            WASHINGTON, D.C.  20005

        BY:  ERIC G. LASKER, ESQUIRE

REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR

        RETIRED OFFICIAL COURT REPORTER, USDC

1    THURSDAY, APRIL 7 , 2016                    10:02 A.M.

2                PROCEEDINGS

3                ---O0O---

4        THE CLERK:  CALLING CASE NUMBER 16-CV-00525, HARDEMAN

5    VERSUS MONSANTO COMPANY, ET AL.

6        COUNSEL, PLEASE STEP FORWARD AND STATE YOUR

7    APPEARANCES FOR THE RECORD.

8        MR. LASKER:  ERIC LASKER FOR THE DEFENDANT

9    NOVARTIS -- I MEAN MONSANTO.  SORRY.

10        THE COURT:  HARD TO KEEP THOSE COMPANIES STRAIGHT.

11        MR. WOOL:  AND DAVID WOOL FOR THE PLAINTIFF, EDWARD

12    HARDEMAN.

13        THE COURT:  GOOD MORNING.  SO I GUESS I THINK THAT

14    PERHAPS YOUR STRONGEST ARGUMENT AT THE PLEADING STAGE, ANYWAY,

15    WHICH I THINK YOU PROBABLY STILL LOSE ON --

16        MR. LASKER:  YES.

17        THE COURT:  -- IS YOUR ARGUMENT THAT THE EPA HAS

18    DETERMINED THAT ROUNDUP OR -- WHAT'S THE CHEMICAL CALLED?

19        MR. LASKER:  GLYPHOSATE.

20        THE COURT:  -- GLYPHOSATE DOESN'T CAUSE CANCER.

21        AND, I MEAN, I THINK -- I THINK YOU TEND TO OVERSTATE

22    A LITTLE BIT SOME OF THE STATEMENTS THAT EPA HAS MADE ABOUT

23    GLYPHOSATE, BUT MORE IMPORTANTLY, SOME OF THE LESS EQUIVOCAL

24    STATEMENTS THAT THE EPA HAS MADE ABOUT GLYPHOSATE DON'T COME IN

25    THE CONTEXT OF IMPLEMENTING OR INTERPRETING FIFRA.

1       AND SO I'M NOT SURE HOW THOSE STATEMENTS COULD

2      HAVE -- COULD GIVE RISE TO FIFRA PREEMPTION.  I SORT OF THINK

3      IT MIGHT BE DIFFERENT -- IT WAS CURIOUS.  HAS ANYBODY -- I

4      WOULD THINK IN A SITUATION LIKE THIS THAT SOME INTEREST GROUP

5      WOULD GO TO EPA AND PETITION EPA TO REQUIRE MONSANTO TO PUT A

6      WARNING ON ITS LABEL ABOUT ROUNDUP BEING CARCINOGENIC.

7       AND I WOULD THINK THAT IF THAT HAPPENED AND EPA SAID,

8      NO, YOU KNOW, WE'VE LOOKED AT THE EVIDENCE, AND WE MADE A

9      DETERMINATION THAT MONSANTO DOESN'T NEED TO PUT THAT TYPE OF

10     LABEL ON ITS -- ON ROUNDUP, THEN, AT LEAST POTENTIALLY, I MIGHT

11     EVEN SAY PROBABLY, THAT WOULD CREATE A PREEMPTION PROBLEM FOR

12     THE PLAINTIFFS.  BUT IT DOESN'T SEEM TO ME THAT IN -- AT LEAST

13     IN THE MATERIAL YOU SUBMITTED TO US ABOUT WHAT EPA HAS SAID

14     ABOUT GLYPHOSATE AND ROUNDUP -- AND/OR ROUNDUP, THAT YOU HAVE

15     ANYTHING LIKE THAT HERE.  SO I DON'T SEE HOW THERE WOULD BE

16     FIFRA PREEMPTION.

17      MR. LASKER:  WELL, YOUR HONOR, I THINK THAT ACTUALLY

18     WE HAVE SUBMITTED SOMETHING THAT'S VERY SIMILAR TO THAT.  AND

19     IF YOU LOOK AT, IN PARTICULAR, THE DOCUMENTS WE ATTACHED FOR

20     JUDICIAL NOTICE -- AND THIS WILL BE SPECIFICALLY WITH RESPECT

21     TO -- I'M SORRY -- THE 2002 REGULATORY FINDING, AND THAT WOULD

22     BE IN OUR NOTICE.

23      THE COURT:  EXHIBIT C?

24      MR. LASKER:  I BELIEVE IT'S C, YES.

25      THE COURT:  NO, NO.  THAT WAS FOR 2004.

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1       MR. LASKER:  NO.  I'M SORRY.  IT'S EXHIBIT B.

2       THE COURT:  EXHIBIT B.

3       MR. LASKER:  "B" AS IN BOY.

4       THE COURT:  OKAY.

5       MR. LASKER:  AND IF YOU LOOK AT THE SECOND PAGE IN

6   THAT DOCUMENT ON THE LEFT-HAND SIDE, THE TOP, RESPONSE TO

7   COMMENTS.

8       THE COURT:  RIGHT.

9       MR. LASKER:  THERE IS DISCUSSION OF THE NORTHWEST

10  COALITION FOR ALTERNATIVES TO PESTICIDES, AND THIS IS ONE OF

11  THOSE GROUPS THAT YOU -- OF THE TYPE YOU WERE TALKING ABOUT

12  THAT HAS BEEN ARGUING ABOUT CARCINOGENICITY OF GLYPHOSATE AND

13  ROUNDUP FOR MANY YEARS, BACK INTO THE 1990S.

14      AND IN CONNECTION WITH THIS REGULATORY ACTION -- AND

15  JUST TO STEP BACK, WHEN THE EPA'S REQUIREMENT TO LOOK AT THE

16  SAFETY OF GLYPHOSATE IN CONNECTION WITH RESIDUES IS ALSO -- IT

17  IS DONE THROUGH THE FDA REGULATIONS, BUT THEN ALSO FEEDS INTO

18  WHETHER YOU CAN LABEL THE PRODUCT UNDER FIFRA.

19      THE COURT:  OKAY.  BUT THIS REGULATION -- I'M

20  SORRY -- I MEAN, I -- I'M SORRY TO INTERRUPT YOU, BUT I --

21      MR. LASKER:  SURE.

22      THE COURT:  I JUST WANT TO SORT OF ESTABLISH AT THE

23  OUTSET THAT THIS -- THIS RULE INVOLVES IMPLEMENTATION OF THE

24  FOOD, DRUG, AND COSMETIC ACT, AND TOLERANCES OF GLYPHOSATE IN

25  VARIOUS CONTEXTS UNDER THE FOOD, DRUG, AND COSMETIC ACT.

1       SO I'M STILL INTERESTED IN YOU POINTING ME TO THE

2    LANGUAGE IN THIS RULE THAT SORT OF STANDS FOR THE PROPOSITION

3    THAT THE EPA'S MADE A FINAL DETERMINATION THAT GLYPHOSATE IS

4    NOT CARCINOGENIC.  BUT EVEN IF YOU POINT ME TO THAT, I REALLY

5    WONDER IF A RULE ENACTED PURSUANT TO THE FOOD, DRUG, AND

6    COSMETIC ACT COULD SERVE AS THE BASIS FOR A CONCLUSION THAT A

7    STATE LAW CLAIM IS PREEMPTED BY FIFRA.

8       MR. LASKER:  RIGHT.  I UNDERSTAND, YOUR HONOR.

9       AND I THINK THE CONNECTION THERE, YOUR HONOR, IS THAT

10   EPA, ALTHOUGH IT -- ALTHOUGH THE REGULATION DOES COME IN UNDER

11   THE FDA, UNDER THE FOOD, DRUG, AND COSMETIC ACT, THE STATUTE

12   HAS PROVIDED THAT INSTEAD EPA MAKES THAT ASSESSMENT BECAUSE

13   IT'S EPA THAT THEN WILL BE MAKING REGULATORY DETERMINATIONS

14   WITH RESPECT TO THE PESTICIDE, INCLUDING THE LABELING

15   DETERMINATIONS.

16      AND AS YOU POINTED OUT, YOUR HONOR, IT'S WELL

17   ESTABLISHED EPA HAS APPROVED THE LABEL OF ALL THE ROUNDUP

18   PRODUCTS FOR 25 YEARS, INCLUDING AS RECENTLY AS THIS PAST YEAR.

19   AND THEY ARE REQUIRED, UPON APPROVING THE LABEL, TO MAKE A

20   SAFETY AND HEALTH ASSESSMENT, AND THAT HAS TO BE INCORPORATED

21   IN THE LABEL.

22      THE COURT:  THEN YOU GET BACK TO THE FIFRA STATUTE,

23   WHICH SAYS THAT EPA APPROVAL DOESN'T PRECLUDE A LAWSUIT BY A

24   PRIVATE ENTITY FOR VIOLATION OF THE STATUTE.

25      MR. LASKER:  WELL, NO, I DON'T THINK IT SAYS THAT.

1    WHAT THE STATUTE SAYS --

2         THE COURT:  OR BATES INTERPRETATION OF THE STATUTE.

3         MR. LASKER:  WHAT THE STATUTE STATES IS THAT

4    REGISTRATION ALONE IS NOT A DEFENSE, BECAUSE THERE'S A

5    CONTINUING OBLIGATION.

6         BUT IT ALSO STATES THAT APPROVAL --

7         THE COURT:  DOES IT SAY BECAUSE THERE'S A CONTINUING

8    OBLIGATION, OR DOES IT JUST SAY BECAUSE THERE'S A DEFENSE, AND

9    THEN YOU'VE ADDED THE WORD -- IT JUST SAYS IT'S NOT A DEFENSE,

10   AND YOU'VE ADDED THE WORDS, "BECAUSE THERE'S A CONTINUING

11   OBLIGATION."

12        MR. LASKER:  WELL, THAT IS HOW BATES INTERPRETS IT

13   WHEN BATES TALKS ABOUT THE FACT THAT THERE IS CONTINUING

14   OBLIGATIONS ON THE APPLICANT THAT GIVES RISE TO THE MISBRANDING

15   STANDARD.  THAT'S HOW IT'S INTERPRETED IN BATES.  AND WHAT

16   FIFRA STATUTE STATES IS THAT UNLESS THERE IS A REVOCATION

17   PROCEEDING GOING ON, THE APPROVAL REMAINS PRIMA FACIE EVIDENCE

18   OF APPROVAL.  SO THERE'S THIS UNDERSTANDING THAT WHAT THE

19   OBLIGATION IS, WHICH MAKES SENSE, IS THAT --

20        THE COURT:  AND SO MAYBE THE APPROVAL, GIVEN IT'S

21   PRIMA FACIE EVIDENCE OF LEGITIMACY OR PRIMA FACIE EVIDENCE THAT

22   THE LABEL DOESN'T VIOLATE THE FIFRA STATUTE, MAYBE THAT'S GOING

23   TO BE VERY HELPFUL FOR YOU AT SUMMARY JUDGMENT.  BUT I DON'T

24   SEE, WHEN GIVEN THEIR ALLEGATIONS, WHICH WE HAVE TO ACCEPT AS

25   TRUE, I DON'T SEE HOW THAT HELPS YOU AT THE PLEADING STAGE.

1    MR. LASKER: WELL, YOUR HONOR, I WOULD SAY THAT IT IS

2    PRIMA FACIE EVIDENCE THAT IT CONTINUES TO BE VALID. WHEN THERE

3    IS AN APPROVAL OF THE LABEL AT THE TIME OF THE APPROVAL,

4    THOUGH, EPA CANNOT APPROVE A LABEL AND WILL NOT APPROVE A LABEL

5    UNLESS IT DETERMINES THAT LABEL DOES NOT CONSTITUTE

6    MISBRANDING.

7        SO THERE'S TWO POSSIBLE SCENARIOS HERE.

8        YOU COULD HAVE A SCENARIO WHERE A LABEL WAS APPROVED.

9    AS OF THE TIME IT WAS APPROVED, EPA DETERMINES THAT'S NOT

10   MISBRANDING, AND THAT FINDING REMAINS PRIMA FACIE EVIDENCE

11   GOING FORWARD.

12       BUT IN THIS SITUATION, WE ARE FACED WITH EPA APPROVAL

13   OF THE LABEL THAT POSTDATES THE EXPOSURE, THAT POSTDATES THE

14   INJURY, AND AS OF THE DATE OF THOSE APPROVALS, EPA HAS MADE THE

15   DETERMINATION THIS LABEL IS NOT -- IS NOT MISBRANDED. SO AS OF

16   THE TIME --

17       THE COURT: AND THAT'S PRIMA FACIE EVIDENCE THAT IT'S

18   NOT A VIOLATION. I MEAN, I THINK THAT'S THE ANSWER. IT'S

19   PRIMA FACIE EVIDENCE, BUT IT'S NOT -- IT'S NOT PROOF THAT IT'S

20   NOT A VIOLATION. IT'S NOT --

21       MR. LASKER: WELL --

22       THE COURT: I MEAN --

23       MR. LASKER: I GUESS I WOULD DIFFER, YOUR HONOR. IT

24   GOES BACK TO SOME OF THE ANALYSES I KNOW THAT YOU'VE MADE IN

25   SOME OTHER CASES WITH PREEMPTION. THE ISSUE IS WHETHER OR NOT

1    THE REQUIREMENT THAT WOULD BE IMPOSED UNDER STATE LAW HERE IS

2    DIFFERENT OR IN ADDITION TO FEDERAL REQUIREMENTS UNDER -- UNDER

3    FIFRA.  AND SO THERE WOULD HAVE TO BE A FINDING HERE THAT IT IS

4    MISBRANDING UNDER THE FIFRA STATUTE.

5         THE COURT:  AND YOU AGREE IT CAN HAPPEN EVEN WHEN THE

6    EPA HAS APPROVED A LABEL, RIGHT?  YOU HAVE TO AGREE WITH THAT.

7         MR. LASKER:  I WOULD NOT AGREE THAT IT CAN HAPPEN AS

8    OF THE TIME OF EPA APPROVES THE LABEL.

9         THE COURT:  WHAT ABOUT THE NEXT DAY?

10        MR. LASKER:  IF IT'S NEXT DAY, YES, IF THERE'S MORE

11   INFORMATION THAT'S COME FORWARD.

12        BUT WHAT WE HAVE HERE IS A LABEL THAT WAS APPROVED

13   AFTER ALL THE EXPOSURE TOOK PLACE.

14        THE COURT:  SEE, I DON'T THINK THAT'S WHAT THAT

15   LANGUAGE IN THE STATUTE MEANS.  I MEAN, I DON'T -- WHERE IN THE

16   STATUTE -- WHERE IN THE STATUTE OR WHERE IN BATES DOES IT SAY

17   THAT IT'S ONLY THAT -- THAT APPROVAL OF A LABEL IS A DEFENSE

18   FOR ANYTHING THAT HAPPENED PRIOR TO APPROVAL OF THE LABEL?

19        MR. LASKER:  YOUR HONOR --

20        THE COURT:  WHERE DOES IT SAY THAT IN BATES OR IN THE

21   STATUTE?

22        MR. LASKER:  YOUR HONOR, AGAIN, I WOULD CITE TO 40

23   CFR SECTION 152.112(F), WHICH IS A STATUTORY PROVISION --

24        THE COURT:  SAY IT ONE MORE TIME.

25        MR. LASKER:  I'M SORRY.  40 CFR SECTION 152.112(F).

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1      THE COURT:  OKAY.

2      MR. LASKER:  AND THE STATEMENT THERE IS THAT:

3          (AS READ) "IF THE AGENCY HAS

4      DETERMINED THAT THE PRODUCT IS NOT MISBRANDED

5      AS THAT TERM IS DEFINED IN FIFRA AND ITS

6      LABELING AND PACKAGING COMPLY WITH THE

7      APPLICABLE REQUIREMENTS OF THE ACT."

8      NOW, THAT IS EPA'S DETERMINATION THAT.

9      THE COURT:  COULD YOU READ -- COULD YOU READ THAT --

10     MR. LASKER:  SURE.

11     THE COURT:  -- ONE MORE TIME.

12     MR. LASKER:  "EPA WILL APPROVE A PESTICIDE

13     APPLICATION ONLY IF 'THE AGENCY' HAS DETERMINED THAT

14     THE PRODUCT IS NOT MISBRANDED AS THAT TERM IS DEFINED

15     IN FIFRA, AND ITS LABELING AND PACKAGING COMPLY WITH

16     THE APPLICABLE REQUIREMENTS OF THE ACT."

17     AND THAT'S THE KEY TERM HERE.

18     THE COURT:  RIGHT.  BUT I GUESS THE STATUTE

19  CONTEMPLATES THAT EVEN IF THE AGENCY APPROVES A LABEL, SOMEONE

20  CAN STILL BRING SUIT TO SAY THAT THE LABEL IS -- INVOLVES

21  MISBRANDING, SO --

22     MR. LASKER:  I WOULD NOT AGREE WITH SOMEBODY CAN

23  BRING SUIT.  IT ALLOWS EPA TO COME BACK AND MAKE A

24  DETERMINATION.  THERE'S NOTHING IN THE STATUTE THAT SAYS A

25  PLAINTIFF --

1        THE COURT:  BUT IT SAYS THE APPROVAL IS NOT A

2    DEFENSE.  RIGHT?  SO THE FEDS COULD SUE DIRECTLY UNDER FIFRA

3    OR -- AND WE KNOW BECAUSE OF THE PREEMPTION PROVISION THAT

4    PRIVATE INDIVIDUALS CAN SUE UNDER STATE LAW.

5        MR. LASKER:  BUT THERE WOULD HAVE TO BE A FEDERAL

6    REQUIREMENT -- ONCE EPA HAS MADE -- AND, AGAIN, THE LANGUAGE IS

7    A REQUIREMENT -- EPA HAS MADE THIS DETERMINATION THAT THE LABEL

8    COMPLIES WITH THE REQUIREMENTS OF THE ACT -- AND THIS IS AFTER

9    THE EXPOSURE HERE.

10       AND PLAINTIFFS ARE ALLEGING AT THAT TIME, NO, THAT

11   VIOLATES STATE LAW, THE REQUIREMENTS OF STATE LAW, WHEN EPA, A

12   FEDERAL AGENCY, HAS DETERMINED IT DOES NOT VIOLATE THE

13   REQUIREMENTS OF THIS ACT.  THAT'S WHERE YOU HAVE -- WHERE YOU

14   HAVE A CONFLICT.  AND THAT'S EXACTLY THE CONFLICT THAT IS SET

15   FORTH IN THE PREEMPTION PROVISION.

16       IF THAT WERE NOT THE CASE, THEN THERE WOULD NOT BE

17   ANY REQUIREMENTS UNDER THE ACT AT ALL.  YOU WOULD NEVER HAVE

18   PREEMPTION.  WE KNOW THAT'S WRONG.  BATES CLEARLY MAKES CLEAR

19   THERE ARE CLAIMS THAT WILL BE PREEMPTED.

20       SO THAT ARGUMENT, YOUR HONOR, IT PROVES TOO MUCH.  IT

21   BASICALLY TAKES PREEMPTION OUT OF THE PICTURE ALL TOGETHER, AND

22   THAT'S CLEARLY CONTRARY TO WHAT BATES HOLDS.

23       THE COURT:  I MEAN, THE LABEL THAT WAS APPROVED IN

24   BATES, I MEAN, WOULDN'T THAT -- WOULDN'T THE SAME ARGUMENT

25   APPLY THAT UNDER THE REGULATION THAT YOU JUST CITED TO ME, THAT

1    EPA MADE A DETERMINATION THAT THE LABEL DIDN'T VIOLATE THE ACT,

2    AND, THEREFORE, THERE COULD NOT BE -- WOULDN'T THE SUPREME

3    COURT HAVE HAD TO CONCLUDE THAT THE STATE LAW CLAIM IN THAT

4    CASE WAS PREEMPTED BASED ON THE REGULATION YOU JUST CITED TO

5    ME?

6        MR. LASKER:  WELL, WHAT THE SUPREME COURT IS REMANDED

7    ON THAT QUESTION, BECAUSE THE EVIDENCE HADN'T -- THE ARGUMENT

8    HADN'T BEEN PRESENTED.  ON THE FAILURE-TO-WARN CLAIM, THE --

9    AND ON THE FRAUD -- MISREPRESENTATION CLAIM, THE SUPREME COURT

10   REMANDED --

11       THE COURT:  NO.  THE COURT REMANDED ON THE SCOPE OF

12   THE STATE LAW CLAIM, LIKE HOW BROAD IS THE STATE LAW CLAIM AND

13   DOES IT EXCEED THE SCOPE OF FIFRA.  IT DIDN'T REMAND ON THE

14   QUESTION OF WHETHER THAT REGULATION THAT YOU QUOTED TO ME

15   REQUIRES A CONCLUSION THAT THE STATE LAW CLAIMS ARE PREEMPTED.

16       I THINK THE ARGUMENT THAT YOU JUST MADE TO ME IS

17   DIRECTLY CONTRARY TO BATES, BECAUSE THE SUPREME COURT IN BATES

18   WOULD HAVE HAD TO APPLY YOUR REGULATION TO CONCLUDE THAT THE

19   LABEL IN BATES WAS -- WAS CONSISTENT WITH FIFRA AND THEN THE

20   STATE LAW CLAIM ATTACKING IT WAS PREEMPTED.  RIGHT?

21       MR. LASKER:  IT WOULD HAVE, YOUR HONOR, IF IT WERE

22   REPRESENTED TO THE SUPREME COURT, AS THERE IS IN THIS CASE,

23   THAT EPA HAD REVIEWED THE LABEL, REVIEWED THE ISSUE, THE

24   LABELING CLAIM AT ISSUE IN THAT CASE, WHICH THE SUPREME COURT

25   HELD IN BATES WAS -- HAD NOT HAPPENED BECAUSE IT WAS AN

1    EFFICACY CLAIM, AND EPA DOES NOT DO EFFICACY ISSUES.  THAT WAS

2    PART OF THE BATES FINDING AS WELL.

3         BUT IF THERE HAD BEEN A RECORD IN BATES THAT EPA HAD

4    REVIEWED THIS LABELING CLAIM AND HAD APPROVED IT, THEN, YES,

5    YOUR HONOR, I THINK UNDER BATES, THAT CASE, THE CLAIM WOULD

6    HAVE BEEN PREEMPTED.  THE SUPREME COURT DID NOT HAVE THAT

7    RECORD.

8         THE COURT:  HOW DID THE LABEL EXIST IF EPA HADN'T

9    REVIEWED AND APPROVED IT?

10         MR. LASKER:  WELL, THE ISSUE IN -- THE LABEL WAS

11    APPROVED AT SOME POINT IN TIME, BUT THE QUESTION IS:  WHAT IS

12    WITHIN THE SCOPE OF WHAT EPA HAS IMPOSED AS REQUIREMENTS UNDER

13    THAT LABEL?  OKAY?

14         SO EPA DOES NOT REVIEW -- SO, FOR EXAMPLE, YOU DEALT

15    WITH ISSUES, FOR EXAMPLE, ON WHETHER OR NOT A PRODUCT IS ALL

16    NATURAL, RIGHT?  UNDER THE FOOD, AND, DRUG, AND COSMETIC ACT.

17    AND IF THE FDA DOESN'T REACH THAT ISSUE, THEN THERE IS NO FDA

18    FINDING -- THEY'VE APPROVED THE LABEL, BUT THEY DON'T ADDRESS

19    THAT ISSUE OF ALL NATURAL, THEY DON'T REACH THAT ISSUE, AND,

20    THEREFORE, THERE'S NO FEDERAL REQUIREMENT.

21         HERE WE'RE DEALING WITH A SITUATION THAT IS SQUARELY

22    WITHIN THE SCOPE OF WHAT THE EPA IS DETERMINING.  WHETHER OR

23    NOT THERE IS A CANCER RISK IS SPECIFICALLY PART OF EPA'S CHARGE

24    IN APPROVING THE LABELING.  AND SO THAT IS SOMETHING THAT THEY

25    DIRECTLY ADDRESS AND HAVE DIRECTLY ADDRESSED REPEATEDLY.

1      AND, ALSO -- AND WE'LL GET BACK TO THIS, YOUR HONOR,

2    IN RESPONSE TO A CITIZEN PETITION, ARGUMENT FROM THIS NORTHWEST

3    COALITION IN WHICH THAT GROUP BROUGHT TOGETHER -- BROUGHT

4    FORWARD ALL THE EVIDENCE THAT THEY ARGUED POINTED TO

5    CARCINOGENICITY.  EPIDEMIOLOGY STUDIES, YOU KNOW, TOXICOLOGY

6    STUDIES, ALL THE EVIDENCE, THEY SAID, EPA, LOOK AT THIS, THIS

7    SHOWS IT'S A CARCINOGEN, AND EPA LOOKED AT IT AND SAID, NO, IT

8    DOESN'T, WE DISAGREE WITH YOU.  SO THE EXACT SORT OF FACT

9    PATTERN YOU WERE SAYING.

10      AND IN THIS CASE, BECAUSE THE PLAINTIFF IS ALLEGING

11    EXPOSURES FROM 1980'S FORWARD, THAT EPA DETERMINATION IN 2002

12    POSTDATED, AT LEAST AS FAR AS WE KNOW, ALL THE EXPOSURES IN

13    THIS CASE.

14      SO THERE IS A SPECIFIC EPA FINDING UNLIKE IN BATES,

15    UNLIKE IN THE ALL NATURAL --

16      THE COURT:  WHERE'S THE FINDING IN EXHIBIT B?

17      MR. LASKER:  OKAY.  SO IF WE GO TO EXHIBIT B, THERE

18    ARE A NUMBER OF DISCUSSIONS.  SO IF YOU GO TO THE THIRD PAGE

19    THEN -- OR, ACTUALLY, ON THE SAME PAGE.  WE'LL START ON THE

20    SAME THAT YOU WERE --

21      THE COURT:  IS THIS WHOLE THING ABOUT GLYPHOSATE?

22      MR. LASKER:  YES.

23      THE COURT:  OKAY.  THIS WHOLE THING IS ABOUT

24    GLYPHOSATE?

25      MR. LASKER:  YES.

1      THE COURT:  ALL RIGHT.

2      MR. LASKER:  AND IT IS FOR A VARIETY OF DIFFERENT

3  USES.  IN GRASS, ACTUALLY.

4      SO THE ISSUE ON -- FEDERAL REGISTER AT 60935, THE

5  SAME PAGE WE WERE ON.

6      THE COURT:  OKAY.

7      MR. LASKER:  BUT NOW WE'RE IN THE RIGHT-HAND COLUMN.

8      THE COURT:  OKAY.

9      MR. LASKER:  THE VERY RIGHT-HAND SIDE COLUMN.

10     THERE IS AN ISSUE OF GENOTOXICITY AND MUTAGENICITY.

11  AND THE PLAINTIFFS IN THIS CASE POINT TO GENOTOXICITY AS PART

12  OF THEIR EVIDENCE THAT'S IN THEIR COMPLAINT -- OF VARIOUS

13  STUDIES.

14     AND SO THE COMMENT IS THE NORTHWEST COALITION END CAP

15  ARGUMENTS ABOUT HOW THERE ARE ALL THESE OTHER STUDIES THAT

16  POINT TO GENOTOXICITY.  AND IF YOU GO DOWN THE LIST AND IF YOU

17  KEEP READING DOWN THIS COLUMN, IT'S THE SAME STUDIES, MANY OF

18  THE SAME STUDIES THAT ARE EVEN MENTIONED IN THE COMPLAINT IN

19  THIS CASE, THAT THE -- THAT END CAP SAYS:  THIS SHOWS

20  GENOTOXICITY.

21     AND EPA GOES THROUGH ALL OF THOSE STUDIES AND EXPLAIN

22  WHY THEY REJECT THE ARGUMENT THAT THIS -- THAT THIS SHOWS

23  GENOTOXICITY, WHICH END CAP AND PLAINTIFFS HERE ARGUE IS

24  EVIDENCE ALSO OF CARCINOGENICITY.

25     LET ME KNOW WHEN YOU'RE DONE.  I'LL TAKE YOU TO THE

1    NEXT SECTION.

2         THE COURT:  GIVE ME ONE QUICK SECOND.

3         MR. LASKER:  OKAY.

4         THE COURT:  I MEAN, IF YOU LOOK -- IF YOU LOOK AT THE

5    PARAGRAPH, THE FINAL PARAGRAPH IN SECTION 2, IT SEEMS TO BE

6    SAYING THAT, YOU KNOW, THESE STUDIES HAVE NOT DONE ENOUGH TO

7    ALLOW US TO CONCLUDE THAT ROUNDUP MIGHT BE CARCINOGENIC, BUT IS

8    THERE A DEFINITIVE -- IS THERE A DEFINITIVE STATEMENT --

9         MR. LASKER:  YES, YOUR HONOR.

10        THE COURT:  -- BY THE EPA THAT IT'S NOT CARCINOGENIC?

11        MR. LASKER:  YES, YOUR HONOR.  IN THIS DOCUMENT ON

12   PAGE 60943, IN THE TABLE, THE BOTTOM BLOCK TO THE RIGHT --

13        THE COURT:  NO EVIDENCE OF CARCINOGENICITY.

14        MR. LASKER:  NO EVIDENCE OF CARCINOGENICITY.

15        THE COURT:  BUT TO SAY NO EVIDENCE, I MEAN, THAT SORT

16   OF BEGS THE QUESTION, RIGHT?  I MEAN, IT DEPENDS ON THE QUALITY

17   OF THE STUDIES.  I MEAN, THERE COULD BE NO EVIDENCE OF -- THAT

18   SOMETHING CAUSES CANCER BECAUSE WE HAVEN'T HAD THE TIME TO DO

19   SUFFICIENT LONGITUDINAL STUDIES YET.  THERE COULD BE -- OR IT

20   COULD BE THERE'S NO EVIDENCE AFTER COMBING THROUGH, YOU KNOW, A

21   BUNCH OF RELIABLE DATA.

22        SO THAT STATEMENT ON ITS OWN -- YOU KNOW, IN ADDITION

23   TO THE FACT THAT IT'S IN A DOCUMENT THAT IS IMPLEMENTING OR

24   ADMINISTERING A DIFFERENT STATUTE --

25        MR. LASKER:  RIGHT.

1       THE COURT:  -- YOU KNOW, AT LEAST BEGS THE QUESTION A

2   LITTLE BIT, YOU KNOW.

3       MR. LASKER:  YES, YOUR HONOR, ALTHOUGH I WOULD SAY

4   THAT THE ISSUE IS NOT -- AND THE REASON WE'RE SUBMITTING THIS

5   IS NOT THAT EPA HAS ESTABLISHED THAT GLYPHOSATE CANNOT CAUSE

6   CANCER.  WE BELIEVE THAT'S TRUE AND THE SCIENCE WILL SHOW THAT.

7       THE ISSUE HERE, THOUGH, IS:  IS THERE EVIDENCE BY

8   WHICH EPA WOULD REQUIRE A LABEL, AND IF EPA SAYS THERE'S NO

9   EVIDENCE THAT WILL MAKE US A REQUIRE A LABEL, THERE'S NO

10  SUFFICIENT EVIDENCE FOR US TO MAKE THIS FINDING, THAT'S THE

11  ISSUE HERE.  IT DOESN'T HAVE TO BE EPA SAYING IT CANNOT --

12      THE COURT:  HAS ANYBODY GONE -- HAS THERE BEEN ANY

13  PROCEEDING IN EPA WHERE SOMEBODY'S GONE AND SAID, YOU NEED TO

14  MAKE MONSANTO LABEL IT ITS PRODUCT AS CARCINOGENIC?

15      MR. LASKER:  WELL, THAT HAS HAPPENED ORIGINALLY IN

16  THE ORIGINAL REGISTRATION WHERE THEY WENT THROUGH THAT PROCESS

17      THE COURT:  IN THE WHAT?

18      MR. LASKER:  IN THE ORIGINAL REGISTRATION WHEN THEY

19  WENT THROUGH THAT PROCESS.

20      THERE'S AN ONGOING REVIEW RIGHT NOW, YOUR HONOR, IN

21  WHICH EPA IS ALSO LOOKING AT THAT, AND THE OTHER REGULATORY

22  AGENCIES AROUND THE WORLD HAVE BEEN LOOKING AT THAT.

23      THE COURT:  THERE'S AN ONGOING REVIEW WITHIN EPA OF

24  WHETHER ROUNDUP IS CARCINOGENIC?

25      MR. LASKER:  YEAH, THAT'S GOING ON RIGHT NOW.  IT'S

1    NOT -- IT'S NOT --

2        THE COURT:  IF THEY'D ALREADY CONCLUDED IT'S NOT

3    CARCINOGENIC, WHY WOULD THEY BE IN THE MIDDLE OF A REVIEW TO

4    DECIDE WHETHER ROUNDUP IS CARCINOGENIC?

5        MR. LASKER:  IT'S PART OF THE STATUTE, AND IT'S NOT

6    SPECIFIC TO GLYPHOSATE, YOUR HONOR.  ALL PESTICIDES ARE GOING

7    THROUGH A REREVIEW PROCESS.  THEY HAVE TO GO THROUGH IT AT A

8    CERTAIN PERIOD OF TIME.  AND SO GLYPHOSATE IS IN THAT PROCESS

9    NOW, AS IT'S NOT UNIQUE TO GLYPHOSATE.

10       THE COURT:  AND IT'S -- IS THAT SORT OF IN THE FIFRA

11   CONTEXT?

12       MR. LASKER:  YES.

13       THE COURT:  OR IN THE CONTEXT OF HOW PEOPLE SHOULD BE

14   LABELING THESE PRODUCTS?

15       MR. LASKER:  THAT IS IN THE FIFRA CONTEXT.

16       BUT, AGAIN, YOUR HONOR, EVERY TIME THAT MONSANTO

17   FORMULATES A NEW PRODUCT -- AND THIS MAKES THIS DIFFERENT, FOR

18   EXAMPLE, A PHARMACEUTICAL.  YOU HAVE A PHARMACEUTICAL, YOU GET

19   LABEL APPROVAL, IT'S A ONE-TIME DEAL.

20       WITH ROUNDUP, EVERY TIME THEY CHANGE THE

21   FORMULATION -- AND THEY'VE DONE THIS DOZENS OF TIMES -- THEY

22   HAVE TO SUBMIT AN APPLICATION TO EPA TO GET APPROVAL OF THE NEW

23   LABEL.  AND TO THE EXTENT EPA REQUIRES ANY ADDITIONAL SAFETY

24   INFORMATION WITH RESPECT TO THAT FORMULATION, IT HAS TO SUBMIT

25   NEW SAFETY INFORMATION.  EPA HAS TO MAKE ANOTHER FINDING THAT

1    THIS LABEL IS -- MEETS THE FIFRA REQUIREMENTS.  AND THAT'S BEEN

2    HAPPENING, AS WE'VE SAID, DOZENS OF TIMES.  HAPPENED AS

3    RECENTLY AS 2005 THE LAST TIME, JUST BY COINCIDENCE.

4         SO EPA IS CONTINUING TO MAKE THESE FINDINGS IN THE

5    LABELING CONTEXT SPECIFICALLY AND HAS BEEN, YOU KNOW, FOR 25

6    YEARS, WELL AFTER ANY OF THE EXPOSURES IN THIS CASE.

7         AND THAT IS -- AGAIN, EPA HAS -- THE ISSUE HERE, YOUR

8    HONOR, IS EPA MAKES THOSE LABELING DETERMINATIONS, MAKES THOSE

9    LABELING DETERMINATIONS UNDER FIFRA, IN THE CONTEXT OF HAVING

10   LOOKED AT THE SCIENTIFIC EVIDENCE WITH RESPECT TO GLYPHOSATE

11   AND CANCER AGAIN AND AGAIN AND AGAIN OVER 25 YEARS.

12        NOW, I RECOGNIZE, YOUR HONOR, THE POINT YOU'RE TRYING

13   TO MAKE -- THAT YOU'RE MAKING ABOUT WHETHER OR NOT EPA WAS

14   LOOKING AT THE CANCER EVIDENCE IN THESE INDIVIDUAL INSTANCES IN

15   THE CONTEXT OF A FIFRA OR IN THE CONTEXT OF FDCA.

16        BUT EPA CANNOT MAKE A LABELING DETERMINATION AND

17   APPROVE A LABEL IN 2015 BASED UPON ITS SCIENTIFIC EVALUATION OF

18   GLYPHOSATE AND APPROVE THAT LABEL WITHOUT A CANCER WARNING IF

19   EPA DETERMINES THAT THERE SHOULD BE A REQUIREMENT OF A CANCER

20   WARNING.

21        THE COURT:  AND I HAVE TO TELL YOU THAT ON A -- ON AN

22   INTUITIVE LEVEL, ON A COMMON SENSE LEVEL, I THINK YOUR ARGUMENT

23   HAS A LOT OF FORCE.  IT'S NOT AS IF THE ALLEGATION THAT ROUNDUP

24   CAUSES CANCER IS A BIG SECRET OR SOMETHING.  AND EVEN IF

25   SOMEBODY HASN'T SPECIFICALLY PETITIONED THE EPA TO REQUIRE

1   MONSANTO TO CHANGE THE LABEL ON ITS ROUNDUP PRODUCT, ASSUMING

2   SUCH A PROCESS EXISTS, IT'S NOT LIKE THE PEOPLE AT EPA HAVE

3   THEIR HEAD IN THE SAND TO THIS ISSUE, AND THEY'VE -- YOU KNOW,

4   THEY'VE CONTINUED TO APPROVE THE LABEL, NOTWITHSTANDING THAT.

5   AND I THINK, AS A COMMONSENSE MATTER, LIKE THAT TELLS US A LOT.

6        BUT YOU HAVE THE STATUTE THAT SAYS, YOU KNOW, THAT

7   THE APPROVAL OF A LABEL ISN'T A DEFENSE, AND IT'S -- YOU KNOW,

8   LIKE I SAID, I THINK THIS IS GOING TO HELP YOU A TREMENDOUS

9   AMOUNT AT SUMMARY JUDGMENT, AND, YOU KNOW, MY SENSE IS THAT

10   THEY HAVE A -- YOU KNOW, THEY -- THEY'RE GOING TO HAVE A NUMBER

11   OF PRETTY BIG PROBLEMS AS THIS CASE GOES FORWARD, BUT I JUST --

12   I'M NOT SEEING HOW -- I'M JUST NOT -- I'M NOT SEEING HOW IT

13   COULD BE DISMISSED AT THIS STAGE.

14        MR. LASKER:  WELL, YOUR HONOR, LET ME SUGGEST IN THE

15   GITSON CASE WHERE YOU ARE FACED WITH OBVIOUSLY A DIFFERENT

16   QUESTION --

17        THE COURT:  WHICH CASE?

18        MR. LASKER:  THE GITSON, THE GITSON VERSUS TRADER'S

19   JOES CASE THAT YOU DECIDED ON THE ISSUE OF SOY MILK AND WHETHER

20   OR NOT THE CLAIM A LABEL SHOULD NOT SAY SOY MILK BECAUSE THAT'S

21   DECEPTIVE.

22        I DON'T BELIEVE.

23        THE COURT:  I'M SEARCHING IN MY BRAIN TO TRY TO

24   FIGURE OUT HOW THAT CASE IS RELEVANT TO THIS CASE.

25        MR. LASKER:  WELL, YOUR HONOR, I'D SAY THIS, BECAUSE

1   THERE WASN'T ANY FDA FINDING.  THERE WAS A QUESTION OF WHETHER

2   OR NOT THAT LABEL OR THAT CLAIM WOULD BE VIOLATION OF A

3   FEDERAL --

4        THE COURT:  YEAH, BUT THAT'S A TOTALLY DIFFERENT

5   STANDARD, AND IT'S A DIFFERENT STATUTE, AND THE QUESTION IS

6   WHETHER ANY CONSUMER WOULD BELIEVE THAT SOY MILK COMES FROM A

7   COW.  AND THE CONCLUSION AT THE PLEADING STAGE WAS THAT, NO,

8   YOU KNOW, IT'S IMPLAUSIBLE TO BELIEVE THAT SOMEBODY WOULD

9   BELIEVE THAT SOY MILK COMES FROM A COW BASED ON THE FACT THAT

10  IT CONTAINS THE WORD "MILK" IN IT.

11        WHAT DOES THAT HAVE TO DO WITH ANY OF THIS?

12        MR. LASKER:  I RECOGNIZE THAT, YOUR HONOR.  BUT YOUR

13  HONOR, YOU DID NOT GO TO THE FRAUDULENT CLAIM STATUTE, YOU

14  STOPPED BEFORE THEN AND SAID FIRST QUESTION IS PREEMPTION.  THE

15  ONLY POINT HERE AS TO HOW I THINK IT'S RELEVANT IS THAT IT

16  INFORMS THE DECISION, WOULD THE FEDERAL GOVERNMENT VIEW THIS AS

17  BEING VIOLATIVE OF A FEDERAL REQUIREMENT.

18        THE STATUTE THERE IS SOMEWHAT DIFFERENT LANGUAGE, BUT

19  IT'S --

20        THE COURT:  BUT THAT'S NOT THE QUESTION.  I MEAN,

21  THAT'S ACTUALLY NOT THE PREEMPTION QUESTION, WOULD THE FEDERAL

22  GOVERNMENT VIEW THIS AS VIOLATIVE OF A REQUIREMENT.  THAT'S NOT

23  THE QUESTION THAT I HAVE TO ANSWER.

24        MR. LASKER:  WELL, YOUR HONOR, I SUBMIT THAT IT IS,

25  BECAUSE IF A STATE --

1          THE COURT:  THE QUESTION IS WHETHER FEDERAL LAW

2     PREVENTS A PRIVATE INDIVIDUAL FROM BRINGING A STATE LAW CAUSE

3     OF ACTION ALLEGING THAT A LABEL VIOLATES THE FEDERAL

4     REQUIREMENT.  AND THE QUESTION IS WHETHER -- IS THERE ANYTHING

5     THAT HAS THE FORCE OF LAW THAT PREVENTS THE PRIVATE INDIVIDUAL

6     FROM PURSUING THAT STATE LAW CLAIM.

7          MR. LASKER:  YES, YOUR HONOR.  I WOULD SUBMIT THAT

8     WHAT PREVENTS IT IS WHAT IS MEANT BY THE FEDERAL REQUIREMENT.

9     HOW DO YOU DETERMINE -- WHAT BATES SAID IS THAT YOU HAVE TO

10    LOOK NOT ONLY AT THE REGULATIONS THEMSELVES, BUT THE ACTIONS

11    THAT GIVE CONTENT TO THOSE REGULATIONS IN THE INDIVIDUAL

12    INSTANCE.

13         SO IF YOU'RE LOOKING AT WHAT ACTIONS GIVE CONTENT TO

14    THAT, IT HAS BE -- I DON'T KNOW WHAT ELSE IT COULD BE -- BUT

15    THE FEDERAL REGULATORY DETERMINATIONS ABOUT WHAT REQUIREMENTS

16    ARE IMPOSED UPON THAT MANUFACTURER.

17         IF YOU SEPARATE OUT THE QUESTION OF WHAT A FEDERAL

18    THE REQUIREMENT IS FROM WHAT THE FEDERAL AGENCY HAS DETERMINED

19    THEN YOU WOULD NEVER HAVE PREEMPTION.  THE WHOLE IDEA OF

20    PREEMPTION, EVERY CASE YOU LOOK AT, IF YOU LOOK AT CASES THAT

21    DEAL WITH FEDERAL PREEMPTION IN THE EXPRESS PREEMPTION CONTEXT,

22    IF IT'S UNDER THE MEDICAL DEVICE ACT, IF IT'S UNDER THE

23    (UNINTELLIGIBLE) ACT, IT'S ALWAYS SAYING, OKAY, WELL, WHAT HAS

24    EPA OR WHAT HAS FDA SAID WITH RESPECT TO THIS PRODUCT?  WHAT

25    HAVE THEY IMPOSED AS REQUIREMENTS?  THAT'S ALWAYS THE ANALYSIS

1    THAT IS CONDUCTED BECAUSE THAT --

2         THE COURT:  NO.  THE STATUTE SAYS IT'S NOT A DEFENSE.

3    THE APPROVAL OF A LABEL ISN'T A DEFENSE.  I MEAN, THAT'S THE

4    THING THAT YOU -- I MEAN, THAT'S THE ELEPHANT IN THE ROOM FOR

5    YOU, I THINK, YOU KNOW.

6         MR. LASKER:  YES, YOUR HONOR.  I WOULD SUBMIT IT DOES

7    NOT MAKE SENSE TO READ THAT PROVISION.  THERE'S TWO -- THERE'S

8    TWO WAYS YOU COULD READ THAT.

9         THE COURT:  DOESN'T MAKE SENSE TO READ THAT PROVISION

10   AS BEING IN THE STATUTE?

11        MR. LASKER:  NO, IT CERTAINLY IS IN THE STATUTE.  THE

12   STATUTE PROVIDES ONCE YOU HAVE A LABEL, YOU DON'T HAVE A

13   DEFENSE GOING FORWARD, YOU HAVE A CONTINUING OBLIGATION.  AND

14   BATES TALKS ABOUT THE FACT YOU HAVE A CONTINUING OBLIGATION TO

15   MAKE SURE YOU DON'T VIOLATE THE MISBRANDING STATUTE.

16        IF IT WERE NOT -- IF IT WERE THE CASE THAT APPROVAL

17   OF THE REGISTRATION PROHIBITS A MISBRANDING CLAIM --

18        THE COURT:  WHERE'S THE LANGUAGE IN BATES THAT YOU

19   CLAIM STANDS FOR THE PROPOSITION THAT IT'S NOT A DEFENSE TO

20   WHAT YOU DO GOING FORWARD?

21        MR. LASKER:  IF YOU GIVE ME A MOMENT, YOUR HONOR?

22        THE COURT:  YEAH.  AND THEN WE CAN WRAP UP AFTER

23   THAT.

24        MR. LASKER:  YEAH.

25        SO, YOUR HONOR, BATES, 544 U.S. AT 4040 STATES, QUOTE

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1      --

2           THE COURT:  WAIT.  HOLD ON.  LET ME GET THERE.

3           MR. LASKER:  I'M SORRY.

4           THE COURT:  OKAY.  WHAT PARAGRAPH?

5           MR. LASKER:  I'M ACTUALLY LOOKING AT THE PLAINTIFF'S

6      OWN BRIEF.  I DON'T HAVE THIS IN -- LET ME PULL OUT

7      THE (UNINTELLIGIBLE) AS WELL.

8           I'M SORRY, YOUR HONOR.  IT SEEMS TO BE THE

9      PLAINTIFF'S HAVE CITED TO PAGE 440.  I'M TRYING TO FIND OUT

10     WHERE IT IS ON THE PAGE.  HERE IT IS.  I'M SORRY.  IT'S ON PAGE

11     439.

12          THE COURT:  OKAY.

13          MR. LASKER:  IT WAS -- IT'S ON -- ON 438, ACTUALLY.

14     SO IF YOU'RE LOOKING AT THE PUBLISHED OPINION, THE PAGES THAT

15     HAVE -- THAT STARTS IN THE LEFT-HAND COLUMN ON THE RIGHT TOP,

16     PERIOD, QUOTATION MARK, YOU SEE THE TOP OF THE COLUMN.  I'M NOT

17     SURE WHAT YOUR PUBLICATION IS, BUT THE SENTENCE STARTS "BECAUSE

18     IT IS UNLAWFUL..."

19          THE COURT:  OKAY.

20          MR. LASKER:  "BECAUSE IT IS UNLAWFUL UNDER THE

21          STATUTE TO SELL A PESTICIDE THAT IS REGISTERED BUT

22          NONETHELESS MISBRANDED, MANUFACTURERS HAVE A

23          CONTINUING OBLIGATION TO ADHERE TO FIFRA'S LABELING

24          REQUIREMENTS."

25          THE COURT:  THAT'S YOUR AUTHORITY FOR THE PROPOSITION

1    THAT THE PROVISION IN THE STATUTE THAT SAYS APPROVAL IS NOT A

2    DEFENSE IS ONLY FOR -- ONLY APPLIES TO WHAT THE COMPANY DOES

3    AFTER APPROVAL OF THE LABEL?

4         MR. LASKER:  THEY CITE -- THE SUPREME COURT CITES

5    RIGHT AFTER THAT TO THE SECTIONS AT ISSUE DEALING WITH WHETHER

6    OR NOT APPROVAL IS A DEFENSE TO MISBRANDING.  AND THE SUPREME

7    COURT INTERPRETS THAT AS BEING PLACED IN THE STATUTE BECAUSE

8    THE APPLICANT HAS A CONTINUING OBLIGATION.  THAT'S HOW THE

9    SUPREME COURT -- THAT'S HOW THE SUPREME COURT UNDERSTANDS THAT

10   PROVISION --

11        THE COURT:  OKAY.

12        MR. LASKER:  -- I WOULD SUBMIT.

13        THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR ARGUMENTS.

14        MR. LASKER:  AND IT THEN TALKS ABOUT EPA -- THE

15   REGISTRANT'S CONTINUING REPORTING OBLIGATIONS THEREAFTER THAT

16   FOLLOW AFTER THE REGISTRATION.

17        SO THE SUPREME COURT IS TALKING ABOUT THIS VERY

18   PROVISION IN THE CONTEXT OF YOUR CONTINUING OBLIGATIONS:  YOU

19   CAN'T COUNT ON THE FACT THAT WE HAVE APPROVED YOUR LABEL AT ONE

20   POINT IN TIME TO SAY IT'S NOT MISBRANDED GOING FORWARD; YOU

21   HAVE OBLIGATIONS THAT CONTINUE, AND YOU CAN'T BRING THIS UP AS

22   A DEFENSE.

23        NOW IT'S A PRIME FACE DEFENSE IF WE HAD NOT BROUGHT A

24   CANCELLATION ACTION.

25        THE COURT:  IT WOULD HAVE BEEN PRETTY EASY TO WRITE

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1   THE STATUTE THAT WAY, WOULDN'T IT?  I MEAN, IT WOULD HAVE BEEN

2   PRETTY EASY TO SAY, YOU KNOW, YOU HAVE A CONTINUING OBLIGATION

3   TO MAKE SURE THAT YOUR PRODUCT IS NOT MISLABELED, AND IF IT

4   BECOMES MISLABELED AFTER APPROVAL, THE FACT THAT IT WAS

5   MISLABELED IS NOT A DEFENSE -- I MEAN, THE FACT IT WAS APPROVED

6   IS NOT A DEFENSE TO A CLAIM THAT IT WAS MISLABELED.

7           MR. LASKER:  WELL, YOUR HONOR, I WOULD SUBMIT THAT IF

8   YOU READ THAT WHOLE CLAUSE WHERE IT SAYS IT'S NOT A DEFENSE,

9   THE WHOLE POINT ABOUT IT'S PRIMA FACIE UNLESS EPA HAS BROUGHT A

10  CANCELLATION ACTION IS TALKING ABOUT EPA SUBSEQUENTLY --

11          THE COURT:  OKAY.

12          MR. LASKER:  -- LOOKING AT WHAT'S HAPPENED

13  AFTERWARDS.

14          THE COURT:  I THINK I HAVE A PRETTY GOOD

15  UNDERSTANDING OF YOUR ARGUMENTS.  I'LL THINK ABOUT IT A LITTLE

16  BIT MORE AND ISSUE A WRITTEN ORDER --

17          MR. WOOL:  OKAY.

18          THE COURT:  -- SHORTLY.

19          MR. LASKER:  AND, YOUR HONOR, THERE IS ALSO

20  SEPARATELY -- AND I THINK I RECOGNIZE WHERE THIS MAY BE GOING,

21  BUT IN THE VERY IMMEDIATE TERM, YOUR COURT HAS AN ORDER WITH

22  RESPECT TO DISCOVERY 26(F), AND WE HAVE MOVED TO PUT A HOLD ON

23  THAT UNTIL THERE'S A RULING THAT COMES DOWN --

24          THE COURT:  I'LL ISSUE A RULING BY TOMORROW.

25          MR. LASKER:  OKAY.

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1          THE COURT:  AND THE DISCOVERY STAY WILL BE LIFTED.

2          MR. LASKER:  OKAY.  AND THEN, YOUR HONOR, YOU HAVE

3    A -- THERE ARE SOME DEADLINES THAT ARE IMPOSED, AND WE WOULD

4    ASK THAT THE DEADLINES SHOULD AT LEAST PROVIDE SOME

5    ADDITIONAL TIME, BECAUSE I THINK WE'RE FACING A DEADLINE WITHIN

6    THE NEXT WEEK OR WEEK AND A HALF FROM NOW ON.  I THINK THE

7    DEADLINES --

8          THE COURT:  CASE MANAGEMENT CONFERENCE, YOU MEAN?

9          MR. LASKER:  THE DEADLINES WE HAVE IN THE ORDER ARE

10    FOR A MEET AND CONFER BY APRIL 13TH.

11          THE COURT:  YEAH.

12          MR. LASKER:  AND A DEADLINE FOR 26(F) CONFERENCE BY

13    APRIL 12TH.

14          THE COURT:  WHAT'S WRONG WITH THAT?

15          MR. LASKER:  WELL, YOUR HONOR, WE WOULD ASK FOR SOME

16    ADDITIONAL TIME, BUT IT'S OBVIOUSLY YOUR DISCRETION.

17          THE COURT:  WHY?  WHY?  I MEAN I ISSUE MY RULINGS

18    QUICKLY.  YOU'RE GOING TO GET YOUR RULING QUICKLY.

19          MR. LASKER:  OKAY.

20          THE COURT:  YOU DON'T NEED ADDITIONAL TIME.  WE'LL

21    HAVE A CASE MANAGEMENT CONFERENCE, WHAT?  IN A COUPLE OF WEEKS

22    FROM NOW, I BELIEVE.

23          MR. LASKER:  IT'S ON MAY 3RD.

24          THE COURT:  OKAY.  GOOD.

25          MR. LASKER:  THANK YOU, YOUR HONOR.

(Hearing) (Hardeman) Hearing (Hardeman v Monsanto Co.)  4/7/2016  10:02:00 AM

1          THE COURT:  WE'LL TALK TO YOU THEN.  THANKS.

2          MR. WOOL:  THANK YOU, YOUR HONOR.

3          (PROCEEDINGS ADJOURNED AT 10:38 A.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           CERTIFICATE OF TRANSCRIBER

2

3       I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8   ABOVE MATTER.

9       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15

16           JOAN MARIE COLUMBINI

17             APRIL 19, 2016

18

19

20

21

22

23

24

25