Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
ELAINE STEVICK and CHRISTOPHER )
STEVICK,                       )
                               )
            Plaintiffs,        )
                               )
  VS.                          )     NO. C 16-02341 VC
                               )
MONSANTO COMPANY,              )
                               )
            Defendant.         )
_____)
                               )
IN RE: ROUNDUP PRODUCTS        )
LIABILITY LITIGATION           )
                               )
                               )     NO. 16-md-02741 VC
_____)
```

San Francisco, California
Tuesday, June 4, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**ALL COUNSEL APPEARED BY COURTCALL**

For Plaintiffs:

ANDRUS WAGSTAFF PC
7171 W. Alaska Drive
Lakewood, Colorado  80226
BY:  **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
**DAVID J. WOOL, ATTORNEY AT LAW**

WEITZ & LUXENBERG PC
700 Broadway
New York, New York  10003
BY:  **ROBIN L. GREENWALD, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
Official Reporter

 1 | **APPEARANCES**:   (CONTINUED)

 2 | For Plaintiffs:

 3 | MOORE LAW GROUP
     1473 South 4th Street
     Louisville, Kentucky  40208

 4 |              BY:  **JENNIFER MOORE, ATTORNEY AT LAW**

 5 | THE MILLER FIRM LLC
     108 Railroad Avenue

 6 | Orange, Virginia  22960
                  BY:  **BRIAN BRAKE, ATTORNEY AT LAW**

 7 |                   **MICHAEL L. MILLER, ATTORNEY AT LAW**

 8 | BAUM HEDLUND ARISTEI GOLDMAN PC
     12100 Wilshire Blvd. - Suite 950

 9 | Los Angeles, California  90025
                  BY:  **ROBERT BRENT WISNER, ATTORNEY AT LAW**

10 |                   **MICHAEL L. BAUM, ATTORNEY AT LAW**

11 | ANDRUS ANDERSON LLP
     155 Montgomery Street - Suite 900

12 | San Francisco, California  94104
                  BY:  **LELAND H. BELEW, ATTORNEY AT LAW**

13 |

      Also Present:     **Matthew Stubbs for Plaintiffs**

14 |                       **(not on Docket)**

15 | For Defendant:

16 | WILKINSON WALSH ESKOVITZ LLP
     2001 M Street, NW - 10th Floor
     Washington, D.C.  20036

17 |              BY:  **BRIAN L. STEKLOFF, ATTORNEY AT LAW**
                   **RAKESH N. KILARU, ATTORNEY AT LAW**

18 |                   **JULIE RUBENSTEIN, ATTORNEY AT LAW**

19 | HOLLINGSWORTH LLP
     1350 I Street NW

20 | Washington, D.C.  20005
                  BY:  **JOE G. HOLLINGSWORTH, ATTORNEY AT LAW**

21 |                   **JESSICA BOYLAN, ATTORNEY AT LAW**

22 |

23 |

24 |

25 |

<u>**Tuesday - June 4, 2019**</u>                                          <u>**9:11 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---oOo---**

**THE CLERK:**  Calling Case Number 16-cv-2341, Stevick,
et al., versus Monsanto Company; and 16-md-02741, In Re Roundup
Products Liability Litigation.

No appearances needed at this time.

**THE COURT:**  Okay.  Hi, everybody.

I reviewed the case management statement.  I appreciate
Monsanto's continued opposition to it, but California is going
to be in the first wave of cases that are remanded to their
home districts.  I'm happy to include Nebraska with that.

Between the two states you identified, you wanted Nebraska
to go first -- right? -- assuming that California stayed in it?

**MR. STEKLOFF:**  This is Brian Stekloff, Your Honor.

That's correct, with Nebraska going first.

**THE COURT:**  Okay.  And so I have one -- before we set
the schedule for that, I have one or two preliminary questions.

Number one is, you know, Monsanto keeps making noise about
the possibility that, you know, in cases from Nebraska, for
example, you know, that the *Daubert* law of the Eighth Circuit
would apply.  Nebraska is in the Eighth Circuit; right?

**MR. STEKLOFF:**  Yes, Your Honor.

This is Brian Stekloff again.

**THE COURT:**  Okay.  Monsanto keeps making noise about,

1   you know, my needing to apply the *Daubert* law of the circuit

2   from which the case comes.  We've looked at that.  We see no

3   support for that in the law, but Monsanto keeps asserting it

4   and it keeps objecting to my being bound by Ninth Circuit law

5   on the *Daubert* issue on these cases.

6        And so what we're going to do is we're going to have, once

7   and for all, Monsanto make its argument on that; and if you

8   think you have any case law to support that or any arguments to

9   support that, you can make them, but that issue is going to be

10  decided at a hearing on July 2nd along with the posttrial

11  motions.

12       And so -- because I think the overwhelming likelihood is

13  that Monsanto is wrong on that question; but if Monsanto turns

14  out to be right and if there's something that I haven't seen

15  that supports Monsanto's argument, then it would affect how we

16  would proceed with the remands.

17       And, frankly, what I would very likely do -- if it were

18  true that, you know, for the Nebraska cases not only would I

19  have to apply Nebraska causation law but also Eighth Circuit

20  *Daubert* law, then I think the overwhelming likelihood is that

21  we would just do California first because that would just be

22  too unwieldy to be trying to figure out not just the law of

23  which state to apply but also the law of which circuit to apply

24  on *Daubert*.

25       So I think very likely the first round would just be

1   California then, and we would deal with getting all the

2   California cases back out to the districts where they were

3   filed, either in Missouri or in the various districts in

4   California; and then we would look at, you know, Monsanto's

5   chosen states in the second round, maybe do Nebraska and

6   North Carolina, or maybe two states from the same circuit

7   probably.

8          Probably it would be more likely, if we had to apply the

9   *Daubert* law of the circuit where the case came from, that we

10  would need to pick, say, a couple states with similar causation

11  law and from the same circuit so that it wouldn't become too

12  unwieldy.

13         But for now we're going to continue to operate on the

14  assumption that I apply Ninth Circuit *Daubert* law because, like

15  I said, everything I've seen points in that direction and

16  Monsanto hasn't pointed to anything to the contrary.  So we're

17  going to operate on that assumption now, and Monsanto's last

18  chance to convince me to the contrary will be July 2nd.

19         So is that clear?

20             **MR. STEKLOFF:**  Very clear.

21             **THE COURT:**  Okay.  So let's set a schedule for your

22  briefs for that.  So, Monsanto, I assume you -- I assume

23  Monsanto wants to file a brief regarding *Daubert* law, we'll

24  call it.

25             **MR. STEKLOFF:**  Yes, Your Honor.

1          **THE COURT:**  When do you want to file that brief?

2                    (Pause in proceedings.)

3          **MR. STEKLOFF:**  I think we could have it --

4          **THE COURT:**  How about the 14th of June?

5          **MR. STEKLOFF:**  That's what I was -- let's do the 14th

6     of June.

7          **THE COURT:**  Okay.  So June 14th, Monsanto's brief

8     regarding *Daubert* law will be filed, and the plaintiffs can

9     file a response by June 24th.  How's that?

10         **MS. WAGSTAFF:**  Your Honor, this is Aimee Wagstaff.

11       That works for us.

12         **THE COURT:**  Okay.  And we'll have a hearing on that,

13    if necessary, on July -- was it July 2nd when we're having the

14    hearing on the posttrial motions?

15         **THE CLERK:**  Yes.

16         **THE COURT:**  Okay.

17         **MS. WAGSTAFF:**  Yes, Your Honor.

18         **THE COURT:**  All right.  And so that issue, I mean, I

19    think it's all but resolved, but that will be resolved once and

20    for all by July 2nd.

21       So what I would propose -- you know, I think what I will

22    propose for the first wave and the second wave of remands would

23    be California and Nebraska first, that is, cases governed by

24    California law and cases governed by Nebraska law first, and

25    then North Carolina, I guess, second.

1      But I wanted to ask a couple of questions about that.

2  I -- and this is, again, for Monsanto -- I have been operating

3  under the assumption that for the California cases, my prior

4  rulings on general causation and on -- of course on general

5  causation but also on specific causation for the three

6  bellwether cases will largely dictate the outcome for the large

7  majority of the cases; and that all that is going to be

8  necessary is for Monsanto to say, "Yes, we preserve our

9  appellate rights, but we agree that under your rulings on the

10 bellwether cases, summary judgment would be denied on these

11 cases as well."

12     And only a minority of the cases, probably a small

13 minority of the cases, will there be arguments from Monsanto

14 that, "No, these individual cases are materially different from

15 the bellwether cases where you denied summary judgment and

16 there are reasons that you must grant summary judgment in these

17 cases, nonetheless."

18     But, you know, you-all have more experience, I think, in

19 past MDLs than I do -- well, I know you have more experience in

20 past MDLs than I do -- so am I operating under the correct

21 assumption?

22          **MR. STEKLOFF:**  Your Honor, this is Brian Stekloff

23 again.

24     I will -- I have some experience in MDLs.  I will concede

25 I've never --

```
 1            THE COURT:  I'm sorry.  You're coming in really

 2   muffled.  I'm having a hard time hearing you or understanding

 3   you.

 4            MR. STEKLOFF:  Is this any better?

 5            THE COURT:  I'm not sure.  You still sound pretty

 6   muffled.  I don't know what -- are you on a cell phone?

 7            MR. STEKLOFF:  I am on a cell phone.  I apologize.

 8            THE COURT:  No, I know, you mentioned you might need

 9   to do that.

10            MR. STEKLOFF:  I'll try to speak really loudly; and if

11   not, Mr. Kilaru can handle this.

12       I was going to say I am unfamiliar with the --

13            THE COURT:  I'm sorry.  We're having too much trouble

14   understanding you on that phone.

15            MR. STEKLOFF:  [Unintelligible.]

16            THE COURT:  Sorry.  We can't understand anything

17   you're saying.  Hello?  Hello?

18       You don't have to report this.

19            MR. STEKLOFF:  [Unintelligible.]

20            THE COURT:  I wonder if maybe somebody on the Monsanto

21   team, if you can hear me --

22            MR. KILARU:  Yeah.  This is Rakesh Kilaru.

23            THE COURT:  -- maybe text Mr. Stekloff and tell him we

24   can't hear him.

25            MR. KILARU:  This is Rakesh Kilaru, Your Honor.
```

1          I just did that.

2          **THE COURT:**  Okay.  Yeah, Mr. Stekloff, we literally

3     could not hear a word you were saying.

4          **MR. KILARU:**  This is Mr. Kilaru again.

5          I assume my connection is -- can you hear me on the land

6     line?

7          **THE COURT:**  Yes.  Yeah.

8          **MR. KILARU:**  Okay.

9          I think -- on the question you asked, I think as a general

10    matter, assuming everything were the same from those three

11    cases, including the experts and the plaintiff, then it might

12    well be the case that there isn't much more to say in the

13    future cases beyond preservation.

14         But I guess I will say, as it stands, there appear to be

15    over 100 plaintiffs who are potentially subject to California

16    law, and I think that's an issue that we can't really resolve

17    until after fact discovery, but there are a number of cases

18    applying California law.  Those plaintiffs will likely have

19    individual risk factors and the application of the differential

20    diagnosis methodology to them may be differently reliable or

21    differently valid.

22         It's also possible that the plaintiffs will have different

23    experts given volume of cases and the location of the cases

24    than the ones they have disclosed already, in which case I

25    think that we obviously want to reserve our right to challenge

1    the way in which the new experts are applying methodology.

2         And then there's also the fact that I think, to some

3    degree, some of the experts' methodologies have changed over

4    the cross-cases and sometimes in the context of a specific

5    case; and so if and when that happens, I think it would be

6    appropriate, you know, for us and that we would be within our

7    rights to point those changes out and try to raise them as

8    appropriate.

9         So that's a long way of saying that assuming everything

10   were similar to those first three cases, what Your Honor said

11   may well be right; but I think given the volume of cases, the

12   volume of plaintiffs, the potential for new witnesses, and the

13   sort of potential for changes in methodology, it seems to me we

14   can't necessarily commit to some sort of across-the-board

15   preservation rule or even a majority preservation rule right

16   now.

17        **THE COURT:**  Well, I understand that, and you're

18   saying -- you know, you say "Assuming the cases are similar, it

19   may be that all we need to do is preserve our appellate

20   rights."  It's going to be -- the question is going to be:

21   What's your definition of "similar"?  And it seems like

22   Monsanto is going to have a choice.  You know, is it going to

23   be -- you know, is it going to adopt an unreasonably narrow

24   definition of the word "similar" and, therefore, make all of

25   this very difficult; or is it going to, you know, be reasonable

1  when it assesses each of these cases to determine whether my

2  prior rulings govern those cases?

3      And I guess, you know, if it turns out Monsanto is being

4  unreasonable about that, then we may have to change the plan

5  and, you know, we may have to say, "All right.  Well, you know,

6  doing California alone is going to be harder than -- is harder

7  than we expected because Monsanto is making it harder than we

8  expected, and so we're only going to be able to do California

9  in this first wave and we're going to break off Nebraska and,

10 you know, put it in the second or third wave," or whatever.

11     I mean, that's a case management decision, I guess, that

12 I'm going to have to make based on how difficult, you know, the

13 task is being made for me.

14     But I guess we can cross that bridge when we come to it,

15 but this brings up another question that I have.  I mean, I

16 assume that if there are going to be disputes about which law

17 applies -- so let's take the California cases; right?  We have

18 the cases that were filed in various federal district courts in

19 California and we have the cases that were filed in Missouri by

20 California residents kind of tied up in, you know, these

21 multiplaintiff lawsuits; is that correct?

22          **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.

23     More or less I think that's right.  There may be one or

24 two other cases that were filed elsewhere.  I think there's a

25 Hawaii case, for example --

1          **THE COURT:**  Oh, yeah.

2          **MR. KILARU:**  -- but the vast majority of California

3    ones --

4          **THE COURT:**  The ones in Missouri, the ones that were

5    filed in the Eastern District of Missouri, were those a bunch

6    of multiplaintiff cases, or were they -- or are some of them

7    just single-plaintiff cases where the California residents sued

8    Monsanto in the Eastern District of Missouri?

9          **MR. MILLER:**  Your Honor, this is Mike Miller.

10   Your Honor, they're mostly multiplaintiffs.

11         **THE COURT:**  Okay.  You're coming in pretty muffled

12   too, Mr. Miller.  I did hear what you said, though.

13   So, you know, I suppose, you know, if there are going to

14   be disputes about what law applies, I mean, again it's

15   difficult for me to imagine.  I mean, if the plaintiff lived in

16   California and was exposed to Roundup exclusively in California

17   but simply chose to file in Missouri, I can't imagine there

18   would be any dispute, any reasonable dispute, that California

19   law applies under Missouri's choice of law rules.

20         But obviously there needs to be a process for sorting that

21   out and there needs to be a process for figuring out, you know,

22   the more difficult cases, like maybe there will be some cases

23   where somebody was exposed to Roundup in California for part of

24   the time and then exposed to Roundup in Missouri for part of

25   the time.  I don't know if there's any such case, but maybe

1    that would become more difficult, but there needs to be a

2    process for sorting it out.

3        Is that an argument for having the first wave of remands

4    consist of the cases that were filed in California and the

5    Nebraska cases -- the cases that were filed in Nebraska, in

6    federal court in Nebraska, and then have the second wave be the

7    cases that were filed in Missouri federal court where

8    California law governs and the cases that were filed in

9    Missouri federal court where Nebraska law governs?  And then,

10   you know, if that were the second wave, then you would -- you

11   know, you would have time to sort out which of those cases are

12   governed by which state's law.

13       What do you-all think of that?  I'll ask Monsanto first.

14           **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.

15       Just so I completely understand the proposal.  The first

16   phase would be cases filed in California district court and

17   then the Nebraska cases that were filed in Nebraska district

18   court?

19           **THE COURT:**  Right.

20           **MR. KILARU:**  And then the second phase, would it be

21   the Missouri cases, which -- I mean, I don't know what you do

22   with the Hawaii case, but the Missouri cases that --

23           **THE COURT:**  Yeah, put the Hawaii case in there too.

24           **MR. KILARU:**  Right.  So the Missouri cases that

25   presumably apply either, you know, Missouri or Nebraska law or

1    whatever the case may be?

2            **THE COURT:**  Well, I think --

3            **MR. KILARU:**  I guess I shouldn't have said "whatever

4    the case may be."  I guess it would be Missouri -- cases filed

5    in the Eastern District of Missouri where the plaintiff

6    currently resides in either California or Nebraska.

7            **THE COURT:**  Correct.  Or to tweak that slightly, it

8    would be -- the second wave would be cases filed elsewhere,

9    whether in Missouri district court or Hawaii, or wherever else,

10   where California law or Nebraska law applies.  And so the idea

11   of separating them out that way would be to give the parties

12   more time to sort out those cases.  I mean, we would sever

13   them -- and we'll get to that in a second -- but that would

14   give the parties more time to sort out those cases and figure

15   out which state's law applies to which case and adjudicate that

16   question, if necessary.

17           **MR. KILARU:**  Yes, Your Honor.  This is Rakesh Kilaru

18   again.

19       I think practically speaking that may be more efficient.

20   I guess you sort of I think know and understand our broader

21   concerns with California having the wave it will have in the

22   first phase and under this approach both in the first phase and

23   the second phase in terms of there being, I guess, vastly more

24   California cases than there are -- or presumably California

25   cases than there are any other jurisdiction.

1          I guess the one thing I noted, that it seems to me that if

2     the cases are being -- in the second phase we'd be working --

3     the parties would be working up a number of cases with

4     plaintiffs where it could be that California law and Nebraska

5     law applies, but depending on how fact discovery unfolds, other

6     jurisdictions' law may apply as well.

7          And I think given sort of the overall -- from our

8     perspective, the overall importance of having a diversity of

9     jurisdictions and a variety of different laws and jurisdictions

10    represented, I think it might be appropriate to not drop any

11    cases that don't apply California or Nebraska law in that

12    phase, to try to work those up as well to sort of further the

13    overall goals of the MDL.

14         **THE COURT:**  Well, I appreciate what you're saying but,

15    you know, I would not want the second phase to consist of -- I

16    mean, again, part of it depends on, you know, how reasonable

17    people are going to be in evaluating these cases and how

18    reasonable people are going to be in determining whether my

19    prior rulings apply to them; but I would not want in the second

20    phase a situation where we're adjudicating a bunch of

21    California cases and a bunch of Nebraska cases and a bunch of

22    North Carolina cases and a bunch of Georgia cases, et cetera,

23    et cetera.

24         So I guess I don't like the idea of saying we're going

25    to -- you know, Phase II is going to be about the cases that

1    were filed in Missouri district court and that we're going to

2    adjudicate those regardless of what state's law applies to

3    them.  I don't like that, but I -- you know, I understand what

4    you're saying about wanting, you know, a diversity of verdicts,

5    you know, diversity of states.

6        I mean, maybe what we could do is -- I mean, I'm just

7    thinking out loud here.  I haven't really thought this through.

8    But maybe what we could do is have the first phase be the cases

9    that were filed in federal court in California and the cases

10   that were filed in federal court in Nebraska, and then just

11   have the second phase be cases that were filed in federal

12   district court in North Carolina and, you know, perhaps one

13   other state, and then just kind of not give such priority to

14   the cases that were filed in the Eastern District of Missouri.

15       **MR. KILARU:**  I think, Your Honor -- this is Rakesh

16   Kilaru.

17       Another -- I think that would make some practical sense.

18   I think another option would be to do something along the lines

19   of what you had suggested initially of having California

20   district court and Nebraska district court cases in Phase I

21   where presumably the Court would sort of apply California law

22   and then sort of familiarize itself and apply Nebraska law; and

23   then the second phase could have, you know, the potential

24   California and Nebraska cases that come out of Missouri plus

25   add North Carolina to just add one new source of law in that

second phase because presumably once the choice of law issues
have been resolved, the California and Nebraska cases could, I
think from a legal matter, potentially be resolved relatively
quickly.

     **THE COURT:**  Well, I mean, that sort of depends on
how -- I mean, we don't know that.  Maybe that's right but,
again, it's going to depend on Monsanto's definition of
"similar" I think.

     **MR. KILARU:**  Yeah, and, Your Honor -- this is
Mr. Kilaru again -- I say we're certainly not trying to be
unreasonable or would not be trying to make things difficult
for the Court.  I mean, I understand the practical reasons to
be efficient in these circumstances, and I think we take the
advice Your Honor is giving.

    I just want to -- the reason I said what I said earlier is
I just want to, you know, make sure that if there is some case
where, you know, for example, after analyzing the litigation
the plaintiff doesn't have NHL --

     **THE COURT:**  Right.

     **MR. KILARU:**  -- or may not have any forms of NHL that
isn't common, you know, we have the ability to raise that.

     **THE COURT:**  Right, or their exposure was -- you know,
or their exposure was, you know, once a year or something.  You
know, I understand that.

     **MR. KILARU:**  Yes.  But to what Your Honor said

 1   earlier, I think it would make just as much sense -- it would

 2   make good practical sense to maybe do it the way you suggested,

 3   which is do the California district court, Nebraska district

 4   court cases in Phase I and then move to, you know,

 5   North Carolina and some other state in Phase II; and, you know,

 6   that I think would probably minimize, to some degree, the

 7   choice of law issues that will come up.

 8        **THE COURT:**  How many cases -- I'm going to pull up

 9   your case management statement again to see how many

10   North Carolina cases there are.

11        **MR. KILARU:**  In the court -- Your Honor, this is

12   Mr. Kilaru again.

13        In the North Carolina district court, there are seven.

14   District courts I should say.

15        **THE COURT:**  Okay.  And then there are a whole bunch

16   that are bound up in those Missouri multiplaintiff cases.

17        **MR. KILARU:**  That's right, Your Honor.

18        **THE COURT:**  Do the plaintiffs have any thoughts on

19   this discussion?

20        **MS. WAGSTAFF:**  Your Honor, this is Aimee Wagstaff.

21        If you are inclined to sort of put the Eastern District of

22   Missouri cases aside, as I think that was your second or third

23   sort of thought, and go just with the North Carolina, which

24   there are seven cases, we would request that plaintiffs get to

25   pick a state to join those seven North Carolina plaintiffs;

1   but, otherwise, I think that sort of your thinking is okay with

2   us.

3           **THE COURT:**  Okay.  What state would you want?

4           **MS. WAGSTAFF:**  Well, if you would give us maybe 24

5   hours to caucus, we could get you a state by noon tomorrow.

6           **THE COURT:**  Okay.  But regardless of whether the case

7   is filed in the Eastern District -- in the -- was it the

8   Eastern District of Missouri?  Yeah.

9           Regardless of whether these cases that are filed in the

10  Eastern District of Missouri that are part of these

11  multiplaintiff cases are included in Phase II or not, we're

12  going to get those cases severed and we're going to get them

13  refiled as individual cases, and so that's going to happen no

14  matter what.

15          And so I assume -- I want to confirm with Monsanto about

16  this -- I assume that with respect to severance, Monsanto will

17  agree to what defendants often agree to in these MDLs, which is

18  that we sever the cases and then we have a direct filing order

19  of some sort where Monsanto is waiving venue and personal

20  jurisdiction for pretrial purposes only, and that allows us to

21  simply sever all of the multiplaintiff cases and require each

22  of those plaintiffs to refile complaints directly in this court

23  without having to go back to their home districts and then get

24  transferred by the MDL panel again.

25          **MR. KILARU:**  Your Honor, this is Mr. Kilaru.

1          I believe that's right, but if we could have 24 hours to

2    just caucus on our end, that would be helpful.

3          **THE COURT:**  Okay.

4          **MR. KILARU:**  And as I understand the proposal, it

5    would be that after pretrial proceedings, those newly filed --

6    I guess refiled cases would still go back to the transfer court

7    if there were any venue motions, or anything like that, for the

8    purposes of trial.

9          **THE COURT:**  Yes, correct.

10         So assuming we proceed that way, I would think that I

11   would just order all of the multiplaintiff cases severed and

12   require new complaints to be filed by a certain date.

13         Hold on one second, though.

14                   (Pause in proceedings.)

15         **THE COURT:**  So on the mechanics -- we were just having

16   a little discussion about the mechanics of severance and

17   refiling complaints, individual complaints, and what's the best

18   way mechanically to get that done from the standpoint of our

19   Clerk's Office to make sure our Clerk's Office is not unduly

20   burdened.

21         But from your standpoints, is there anything else to say

22   about severance?  I mean, it seems to me that it's automatic,

23   that unless the plaintiffs are able to identify, you know, a

24   particular situation where more than one plaintiff should be

25   joined consistent with the federal rules, you know, the

1    assumption is all of these cases should be severed and that I

2    should just go ahead and order them severed and order new

3    complaints to be filed by a certain date.  And, again, we will

4    work out the mechanics of that internally to make sure that it

5    doesn't overburden our Clerk's Office; but from your

6    standpoint, is there anything else to say about severance?

7            **MS. WAGSTAFF:**  Not from the plaintiffs, Your Honor.

8            **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.

9        Not from Monsanto.

10           **THE COURT:**  Okay.  Should I have -- should I maybe

11   have you-all put together a proposed order governing direct

12   filing, which includes, you know, waiver of the venue and

13   personal jurisdiction for pretrial purposes and whatever other

14   issues you need to make sure are in there?

15           **MS. WAGSTAFF:**  Your Honor, this is Aimee Wagstaff for

16   the plaintiffs.

17       We can work with Monsanto to get that to you.

18           **THE COURT:**  All right.  Why don't you submit a direct

19   filing order by -- proposed direct filing order by Friday, and

20   we will -- again, we'll probably tweak it for our internal

21   purposes, but I want to give you the opportunity to put

22   together the proposed order because it may -- you know, just so

23   that you can make sure you have whatever protective language

24   you need in there.

25       And then, you know, you might look at -- so there is a --

1  there's an order from Judge Battaglia from the Southern

2  District of California in -- what's it called? -- Incretin

3  Mimetics Products Liability Litigation, MDL Number 13-md-2452.

4  That's an order dated November 13th, 2013.  You might look at

5  that as a sample direct filing order.

6      And then there's one from -- oh, my God.  Well, this one's

7  220 pages so I don't know how carefully you want to look at

8  this one, but from Judge Goodwin in West Virginia in MDL 2327.

9  That's another order that deals with direct filing.

10      But I want to -- you know, I want to get those cases

11  severed promptly, and then the next thing is I want -- so we'll

12  set a deadline that is going to be -- that is going to make

13  sense for our Clerk's Office.  But, you know, I'm assuming that

14  we'll have new individual cases filed in the next couple of

15  months in all of those cases; and then I'm assuming that we

16  will also need to set a deadline for the parties to file a

17  stipulation about which state's law applies to each of these

18  cases, you know, or something which indicates that, you know --

19  you know, that identifies the cases where they disagree about

20  which law applies, but we can deal with that a little bit

21  later.

22      So I do want to get those multiplaintiff cases -- I want

23  to start getting those cases in better shape, but I think I

24  kind of like the idea of not having them in Phase I or Phase II

25  of the remands, or Wave I and Wave II, whatever you want to

1    call it, and we can proceed with Wave I and II while you guys

2    are getting the multiplaintiff cases sorted out.

3         So, you know, I think I like the idea of having Wave I be

4    the cases that were filed in California district courts and

5    cases filed in Nebraska district courts, and Wave II being the

6    cases that were filed in North Carolina district courts, and

7    then the district courts of a state that the plaintiffs choose.

8    I think that sounds fine.

9         **MS. GREENWALD:**  Your Honor, this is Robin Greenwald

10   I'm on a cell because I'm actually doing Dr. Portier's

11   deposition oversees again.

12        But I think one or two of the Nebraska cases might be

13   multiplaintiff also is my recollection so I just want to let

14   you know that.  I'm almost positive one of them is three or

15   four plaintiffs.  They're all Nebraska exposures, though, but I

16   just want to let you know.

17        **THE COURT:**  Okay.

18        **MS. GREENWALD:**  We'll break it up.  I understand the

19   ruling, but I just wanted to let the Court know that.

20        **THE COURT:**  Okay.  Hold on one second.

21        (Courtroom deputy and the Court conferring.)

22        **THE COURT:**  Does anybody know of the -- so we have

23   your case management statement and we have this list of one,

24   two, three, four, five plaintiffs -- let's see -- oh, yeah, it

25   looks like -- I see.  So it looks like actually for those

1    Nebraska cases, cases filed in the district of Nebraska, it

2    looks like there are actually only two cases and one of them

3    has four plaintiffs; is that right?

4        MS. GREENWALD:  Correct.  That's right.  I just wanted

5    to make sure you knew that.

6        THE COURT:  Okay.  Well, those -- I mean, I'll just --

7    can I just issue a separate order severing those and requiring

8    them to be refiled?

9        MS. GREENWALD:  Sure.  Absolutely.

10       THE COURT:  Why don't you do a separate order for

11   the -- why don't you -- let's see...

12       Well, I'll just deal with it.  I'll just put together an

13   order.  After I get your direct filing order, I'll issue an

14   order -- after I get your proposed direct filing order on

15   Friday, I'll issue a severance order and we'll deal with the --

16   we'll make sure that the Nebraska cases get severed promptly

17   enough to be adjudicated individually at Wave I.  So thank you

18   for pointing that out.

19       MS. GREENWALD:  One option I'm thinking of off the top

20   of my head is we could potentially, if Monsanto will agree to

21   waive any statute of limitations, we could just dismiss and

22   refile or have it relate back.  If we can fashion an order, if

23   they would agree to relate back to the date of filing and

24   refile them in the state of Nebraska as an individual.

25       THE COURT:  Kristen is shaking her head no I think

 1   because that may be harder on the Clerk's Office.

 2        MS. GREENWALD:  Okay.

 3        THE COURT:  So we'll work on that, but just go

 4   ahead --

 5        MS. GREENWALD:  Okay.

 6        THE COURT:  -- and prepare your proposed direct filing

 7   order and submit that to us on Friday, and get us your -- the

 8   additional state that you want in Wave II, get us that by

 9   tomorrow.

10      And then also, Monsanto, file something tomorrow just

11   specifying that you're going to be -- confirming that you're

12   going to be waiving venue and personal jurisdiction for those

13   cases, for the multiplaintiff cases.

14        MR. KILARU:  Your Honor, this is Rakesh Kilaru.

15      If we have no objection to that, is it okay if we just go

16   ahead with the direct filing order on Friday that includes

17   whatever those waivers would be?

18        THE COURT:  Yeah, that's fine, but I wouldn't -- I'd

19   like you to let me know tomorrow just for our planning

20   purposes.

21        MR. KILARU:  Okay.  Sure.  We will do that.

22        THE COURT:  Okay.  So with that, I think we can then

23   go ahead and set the schedule for Wave I and Wave II, and I

24   thought it ought to be something pretty similar to what

25   Monsanto proposed.  So I'm pulling that proposed schedule up

 1 | now.

 2 |                   (Pause in proceedings.)

 3 |      **THE COURT:**  Before we get to the schedule, let me ask

 4 | one question about how these are going to get teed up.  So,

 5 | like, for the Nebraska cases, for example, I realize there are

 6 | only five of them so maybe it's not that big of a deal, but is

 7 | there a way we can do this where, you know, Monsanto says, "All

 8 | right.  Here are a couple of cases that are sort of exemplar

 9 | cases and, you know, our briefing is going to focus on these

10 | couple of exemplar cases; and if you rule in our favor on these

11 | couple of cases on these facts, it means, you know, that that

12 | ruling would govern, you know, these 12 other cases and if you

13 | rule against us, it means that that ruling would govern these

14 | 12 other cases"?

15 |     So that you're not laying out all the facts for each

16 | plaintiff in the summary judgment motions.  Do you think that's

17 | possible to do, or is it going to have to be a situation where

18 | you're laying out all the facts for each plaintiff from, say,

19 | Nebraska or whatever?

20 |      **MR. KILARU:**  Your Honor, this is Mr. Kilaru.

21 |     I think it's a little hard to tell right now.  I think we

22 | could potentially use Nebraska as a test case for that approach

23 | going forward because there are only five and determine, based

24 | on how best the briefing on those five goes, as to what the

25 | approach should be going forward.  I think for those five,

1    given that there's only five, it would probably make most sense

2    to do sort of a full treatment for each and then we can

3    determine if there's a shorter way in the future.

4         **THE COURT:**  Okay.  So I think I will want to tweak the

5    dates a little bit, but looking at the dates that Monsanto has

6    proposed for Wave I and Wave II, any comments on that from the

7    plaintiffs?

8              **MS. GREENWALD:**  I think that we --

9              **MS. WAGSTAFF:**  Your Honor --

10             **MS. GREENWALD:**  Go on, Aimee.

11        **MS. WAGSTAFF:**  I was going to say, depending on when

12   you enter your order, getting a PFS back within five days, if

13   you were to, say, enter that today, seems a little ambitious;

14   but if we know what cases you're going to be entering, then we

15   can send out the PFSs today.  We could probably make those five

16   days work, but I guess that's just a timing issue.

17        **THE COURT:**  Okay.  Well, you should --

18        **MS. WAGSTAFF:**  Half the time we have to send it

19   U.S. --

20        **THE COURT:**  I assume we have PFFs from all the cases

21   that were filed in -- sorry -- PFSs, plaintiff fact sheets, I

22   assume we have them for all the cases that were filed in

23   California district court by now; is that right?

24        **MS. WAGSTAFF:**  I think that's correct, but although as

25   a small caveat, I believe the order that you entered earlier,

1  Your Honor, had a date when they said they were Group 1 or

2  Group 2, and I know that cases have continued to be filed in

3  California.  As recently as last week, I think a few additional

4  ones were filed.

5       So is it your intention to include all cases that were

6  filed in the California federal courts?  There will probably be

7  a few that don't have PFSs yet.

8            **THE COURT:**  Well, I guess I would say all of the cases

9  that are on this list, the cases that are listed on this case

10  management statement.  I would think that we wouldn't go beyond

11  that.

12           **MS. WAGSTAFF:**  Okay.  I would have to defer to

13  Monsanto on if there's a PFS for everyone.

14           **MR. KILARU:**  Your Honor, this is Mr. Kilaru.

15       I don't know that off the top of my head, but we could

16  find that out relatively quickly.

17           **THE COURT:**  And what about -- what do you know about

18  the Nebraska cases?  There probably is not a plaintiffs' --

19           **MS. GREENWALD:**  We have not -- we have not done them.

20           **THE COURT:**  You haven't done the Nebraska ones yet?

21           **MS. GREENWALD:**  I don't -- actually, you know what?

22  Wow.  I guess that's right.  It was part -- it would have been

23  done.  I'm going to try and see if I can get an answer right

24  now from my office.  Give me a second.  Because a lot of those

25  are our cases.

1          **THE COURT:**  Okay.  Well, in any event, so right now

2   we're just looking at the cases that are listed on the case

3   management statement.  Okay?  And we've got these five cases,

4   five plaintiffs, who filed the cases in the district of

5   Nebraska that are listed on page 20 of the case management

6   statement; and then we have cases filed in California district

7   courts, and that list begins on page 15 and ends at the top of

8   page 16.

9          Those are the cases that are going to be part of this

10  first wave; right?  And Giglio is on there; right?  Yes.  And

11  those are the cases that are going to be a part of this first

12  wave.  So any of those cases where, you know, you haven't done

13  fact sheets yet, you know, get them out.  You know, get them

14  out today.

15         And so I think in light of that, the deadline -- you know,

16  that five-day deadline probably will work because I think the

17  vast majority of those have been done, but we can make it --

18  you know, we can make it -- let's see...

19                        (Pause in proceedings.)

20         **THE COURT:**  You know, we can make it 10 days from the

21  entry of the order just to make sure.

22         Any other comments about the dates just looking at Wave I

23  first?

24         **MS. WAGSTAFF:**  This is Aimee Wagstaff, Your Honor.

25         I don't believe plaintiffs have any other comments about

1    the remand wave schedule that is listed on page 13.

2        I would note that, you know, we requested Mr. Giglio have

3    a separate track that's a little more accelerated.

4        **THE COURT:**  Actually you requested a slower track for

5    Mr. Giglio.  You requested that a summary judgment hearing take

6    place for him later.  So I'm giving you a faster track for

7    Mr. Giglio than you're requesting.

8        **MS. WAGSTAFF:**  All right.  That's great.  Thank you.

9        **MR. KILARU:**  Your Honor, this is Mr. Kilaru.

10   Nothing more from us on that.

11       **THE COURT:**  Okay.  I think what we'll -- we may tweak

12   the dates slightly.  For example, it's not clear to me that

13   there's going to need to be, you know, any actual further

14   expert testimony, any actual *Daubert* hearing.  Maybe there will

15   need to be, you know, oral argument on the summary judgment

16   motions as they relate to Nebraska.  I don't know.  Let's see

17   what the papers look like.

18       But it seems to me that it's possible that there won't be

19   a hearing at all and if there is a hearing, it seems likely

20   that it will just be limited to oral argument on Nebraska law,

21   but we'll probably schedule that for -- we'll probably schedule

22   the hearing for December and maybe we'll give you a little bit

23   of relief on the briefs accordingly.  For example, give, you

24   know, the plaintiffs a little more time for their reply that's

25   currently due that on the schedule is November 8th.  We'll

 1  tweak it a little bit, but it will be basically the same

 2  schedule that has been proposed here.

 3      What about for Wave II, which, as it stands now, will be

 4  for North Carolina and a state of the plaintiffs' choosing?

 5  How does that schedule look?

 6          **MS. WAGSTAFF:**  Your Honor, the remand schedule for

 7  Wave II as set forth on page 15 looks okay to plaintiffs.

 8          **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.

 9      The same.

10          **THE COURT:**  Okay.  So we will -- like I said, we may

11  tweak those schedules a little bit, but those will basically be

12  the schedules.

13      I think it probably makes sense to do the California

14  district -- the cases filed in California district court and

15  Nebraska district court first and then the cases filed in

16  North Carolina district court and the state chosen by the

17  plaintiffs in the second phase.

18      In the meantime, we'll set a separate schedule to unravel

19  all the multiplaintiff cases that were filed in the

20  Eastern District of Missouri and figure out which law applies

21  to those cases.

22      Anything else to discuss right now?

23          **MS. WAGSTAFF:**  Not from plaintiffs, Your Honor.

24          **MR. STEKLOFF:**  This is Rakesh Kilaru.

25      Not from Monsanto, Your Honor.

1    **THE COURT:**  Okay.  Very good.  So we'll plan on seeing

2    you next on July 2nd.  Is there -- there's probably no need to

3    have a case management conference before then.

4    **MS. WAGSTAFF:**  We don't think so, Your Honor.

5    This is Aimee Wagstaff.

6    **MR. KILARU:**  Agreed as well.

7    This is Rakesh Kilaru.

8    **THE COURT:**  Okay.  Well, you can always let us know if

9    you need to.  If not, we'll see you on July 2nd.  Thank you.

10   **MR. KILARU:**  Thanks, Your Honor.

11   **THE CLERK:**  Court is adjourned.

12   (Proceedings adjourned at 10:04 a.m.)

13   ---oOo---

14

15   <u>**CERTIFICATE OF REPORTER**</u>

16   I certify that the foregoing is a correct transcript

17   from the record of proceedings in the above-entitled matter.

18

19   DATE:   Thursday, June 6, 2019

20

21

22

23   _____

24   Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
     U.S. Court Reporter

25