**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:   (202) 847-4030
Fax:   (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>All Cases | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**MONSANTO COMPANY'S *DAUBERT* CHOICE OF LAW BRIEF** |

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE THAT** Monsanto Company is submitting the brief below pursuant

3    to the parties' conversation with the court at the June 4, 2019 Case Management Conference.

4    *See* Ex. 1, Tr. of June 4, 2019 CMC at 3:17–6:16.

6    DATED:  June 14, 2019

7                                             Respectfully submitted,

8                                             /s/ *Brian L. Stekloff*

9                                             Brian L. Stekloff (*pro hac vice*)
10                                            (bstekloff@wilkinsonwalsh.com)
                                              Tamarra Matthews Johnson (*pro hac vice*)
11                                            (tmatthewsjohnson@wilkinsonwalsh.com)
                                              Rakesh Kilaru (*pro hac vice*)
12                                            (rkilaru@wilkinsonwalsh.com)
                                              WILKINSON WALSH + ESKOVITZ LLP
13                                            2001 M St. NW, 10th Floor
14                                            Washington, DC 20036
                                              Tel: (202) 847-4030
15                                            Fax: (202) 847-4005

16                                            Pamela Yates (CA Bar No. 137440)
                                              (Pamela.Yates@arnoldporter.com)
17                                            ARNOLD & PORTER KAYE SCHOLER LLP
18                                            777 South Figueroa St., 44th Floor
                                              Los Angeles, CA 90017
19                                            Tel: (213) 243-4178
                                              Fax: (213) 243-4199
20

21                                            Eric G. Lasker (*pro hac vice*)
                                              (elasker@hollingsworthllp.com)
22                                            HOLLINGSWORTH LLP
                                              1350 I St. NW
23                                            Washington, DC 20005
                                              Tel: (202) 898-5843
24                                            Fax: (202) 682-1639

25
                                              Michael X. Imbroscio (*pro hac vice*)
26                                            (mimbroscio@cov.com)
                                              COVINGTON & BURLING LLP
27                                            One City Center
28

- 2 -

MONSANTO'S *DAUBERT* CHOICE OF LAW BRIEF

850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Should this Court choose to rule on specific causation *Daubert* motions for cases originating in other circuits, it should apply the *Daubert* law of the transferor circuit. It is a well-recognized rule that the transfer of a case should effect a change in courthouse only, not a change in law, and certainly not a change in outcome. Following that principle, courts have recognized that where federal law is "geographically non-uniform," the transferee court should apply the law of the transferor forum. *See, e.g.*, *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1045–46 (9th Cir. 2012) (quoting *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993)). This is just such a case. This Court has characterized the Ninth Circuit approach to *Daubert* as uniquely permissive that could be outcome-determinative in close cases. Accordingly, in close cases, plaintiffs could obtain both a change in controlling law and a change in outcome on significant pre-trial motions. Moreover, applying Ninth Circuit law to cases that will be transferred to another circuit for trial will lead to a bizarre situation on appeal in which other circuits will be forced to review a decision made under Ninth Circuit law, while still applying the law of their own circuit. In short, in keeping with the goals of Section 1407, if this Court decides specific causation motions prior to remand, it should apply the *Daubert* law of the transferor forum.

## II. ARGUMENT

### A. A Transfer Under Section 1407 Should Result In A Change Of Courthouse, Not A Change Of Controlling Law.

The U.S. Supreme Court has long since held that a transfer should result in only "a change of courtrooms," not a change in governing law. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).[1] To this end, a transferee district must apply the state substantive law that a

---

[1] Although *Van Dusen* involved a transfer under the general federal venue-transfer statute (28 U.S.C. § 1404) instead of the venue-transfer statute for MDL proceedings (28 U.S.C. § 1407), the case law addressing those two provisions "is largely consistent." *See* 15 Wright & Miller, Federal Practice & Procedure § 3867 (4th ed. 2019). "Indeed, many opinions dealing with the [choice-of-law] question in Section 1407 transfer rely upon opinions involving Section 1404(a)." *Id.*

- 1 -
MONSANTO'S *DAUBERT* CHOICE OF LAW BRIEF

transferor court would have applied. *See Van Dusen*, 376 U.S. at 639; *Ferens v. John Deere Co.*, 494 U.S. 516, 518–19 (1990). The Ninth Circuit has further recognized that there are circumstances where the rule of *Van Dusen* and *Ferens* applies to federal law and a transferee court must apply federal law as interpreted by the transferor circuit. *See, e.g.*, *Hooper*, 688 F.3d at 1045–46.

One such example is where federal law is "geographically non-uniform." *See Hooper*, 688 F.3d at 1046 (quoting *Eckstein*, 8 F.3d at 1127). In *Hooper*, a case involving claims under the False Claims Act was transferred from Maryland to the Central District of California. At issue was the proper limitations period under 31 U.S.C. § 3730(h), which does not contain an express limitations period but instead borrows the most closely analogous state statute of limitations. Thus, the issue was whether the Central District of California should have applied California's two-year statute of limitations or Maryland's three-year statute of limitations. *Id.* at 1045. The Ninth Circuit held that the law of the transferor forum—*i.e.*, District of Maryland—controlled. *Id.* at 1046. In reaching that conclusion, the court explained that the justification for generally using the transferee Circuit's own interpretation of federal law—that a single federal law implies a uniform interpretation—disappears where federal law is necessarily non-uniform. *Id.* At least two other circuits have reached the same conclusion when interpreting federal statutes that borrow state-law limitations periods. *Eckstein*, 8 F.3d at 1127; *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1546–47 (10th Cir. 1996).

The rationale of those decisions has been extended to other situations. For example, the Fifth Circuit has held that a transferee court in an MDL should have applied the transferor forum's interpretation of *forum non conveniens* law instead of the interpretation adopted in the transferee circuit. *In re Ford Motor Co.*, 591 F.3d 406, 413 n.15 (5th Cir. 2009). The court reasoned that "because forum-availability law is 'geographically non-uniform, a transferee court should use the rule of the transferor forum in order to implement the central conclusion of [*Van Dusen*] and [*Ferens*]: that a transfer accomplishes but a change of courtrooms.'" *Id.* (quoting

*Eckstein*, 8 F.3d at 1127). The court further explained that applying the law of the transferee forum "undermines the goals of § 1407(a), which requires MDL cases to be transferred to promote 'the *just* and efficient conduct' of proceedings." *Id.* (quoting 28 U.S.C. § 1407(a)). In other words, the plaintiff should not have gotten a change of law simply because the case "happened to be before an MDL panel." *Id.* Thus, for there to have been "but a change of courtrooms," the transferee MDL court was required to apply the transferor court's interpretation of *forum non conveniens* law. *Id.*

Finally, at least one circuit has noted that although "in a federal multidistrict litigation there is a preference for applying the law of the transferee district . . . it is not clear that precedent 'unique' to a particular circuit and arguably divergent from the predominant interpretation of a federal law . . . should be applied to [cases] that originated in other circuits." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 n.17 (6th Cir. 2003). The Sixth Circuit's observation reflects the central rationale of other decisions applying the *Van Duzen* / *Ferens* principle to questions of federal law: namely, that a transfer should effect a change only in courthouse. Accordingly, in situations where the transfer will result in a change in the governing law because federal law is geographically non-uniform, or where one circuit has taken an idiosyncratic approach to federal law, the law of the transferor forum should apply.

That outcome is particularly appropriate in light of the Supreme Court's decision in *Lexecon*, which held that a transferee court may not retain cases for trial through the practice of a "self-transfer" under 28 U.S.C. § 1404. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). That decision "chang[ed] the practical realities of multi-district litigation" because following that decision, "several thousands of actions, as opposed to a hundred or so, are remanded on a yearly basis for trial." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2005 WL 106936, at *4 (S.D.N.Y. Jan. 18, 2005). That practical reality undermines the rationale of pre-*Lexecon* cases holding that a transferee court should apply its own interpretation of federal law because those decisions rested at least in part on the

idea that the "vast majority of transferred cases" will be settled or resolved in the transferee court "or else transferred under section 1404(a) to the same transferee court for joint trial." *See In re Korean Air Lines*, 829 F.2d 1171, 1178 (D.C. 1987) (D.H. Ginsburg, J., concurring); *see also Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) (citing *Korean Air Lines* as persuasive).[2]  Given that cases must be transferred back to their original circuits, which presumably will apply their own interpretation of *Daubert* law in post-trial motions, the goals of Section 1407—the just and efficient resolution of cases—demand that this Court apply the law of the transferor circuit.  Similarly, because these cases will be appealed to Circuit Courts of Appeal outside the Ninth Circuit, it makes practical sense to have one source of law. Otherwise, other circuits will be forced to review a decision made under Ninth Circuit precedent while still applying the law of their own Circuit.  Indeed, the concerns for just and efficient resolution of cases are encompassed by the court's recognition in *Korean Air Lines* that the law of the transferor forum should be given "close consideration." *See In re Korean Air Lines Co.*, 829 F.2d at 1176.  In other words, as in *Ford Motors*, plaintiffs who filed their cases in other circuits should not get a change of law temporarily, for purposes of significant pre-trial motions, simply because their case became part of this MDL.  This is especially so when those cases will have to be remanded for trial to courts in multiple states across the country.

Finally, applying the *Daubert* law of the transferor forum to cases originating in different circuits will be no less efficient that applying the law of the transferee circuit.  That is because even where the transferee court applies its own law, it still should give "close consideration" to the law of the transferor forum. *See In re Korean Air Lines Co.*, 829 F.2d at 1176 (cited with approval in *Newton*, 22 F.3d at 1460).  In other words, choosing to apply the transferee court's law will not avoid the need to consider another Circuit's law.  For that reason, efficiency concerns do not weigh in favor of choosing to apply the law of the transferee court. Moreover,

---

[2] *Newton* is also distinguishable from the present case because it did not consider a situation, as in *Hooper*, that involved federal law that was "geographically non-uniform."

because choosing to apply that law would likely result in a change of law (and outcome), not just a change in courthouse, the court should apply the *Daubert* law of the transferor court for cases originating in other districts.

### B. Based On The Foregoing Principles, This Court Should Not Apply What It Describes As The Ninth Circuit's Unique Gloss On *Daubert* To Cases Originating In A Different Circuit.

The Court should apply the transferor circuit's *Daubert* law to cases originating in other circuits because—as the Court has acknowledged—applying the Ninth Circuit's interpretation of *Daubert* law could result in an outcome-determinative change of law, not just a change of courthouse.

This Court has repeatedly interpreted Ninth Circuit precedent as requiring district courts to be especially deferential to questionable expert opinions. *See, e.g.*, *In re: Roundup Prods. Liab. Litig.*, 2018 WL 3368534, at *2 (N.D. Cal. July 10, 2018) ("[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility."); *id.* at *5 ("The Ninth Circuit has placed great emphasis on *Daubert*'s admonition that a district court should conduct this analysis 'with a liberal thrust favoring admission.'") (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)); *see also In re: Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 960 (N.D. Cal. 2019) ("[D]istrict judges . . . must exercise their discretion, but in doing so they must account for the fact that a wider range of expert opinions (arguable much wider) will be admissible in this circuit."); *id.* at 959 (stating that Ninth Circuit precedent is "impossible to read without concluding that district courts in the Ninth Circuit must be more tolerant of borderline expert opinions than in other circuits.").

As this Court has noted, the *Daubert* decisions here are all involve the exact type of close calls where the difference in law may matter. For example, this Court found the admissibility of plaintiffs' specific causation testimony to be a "close question" and that "plaintiffs have

barely inched over the line" under the Ninth Circuit's liberal standards. *In re: Roundup*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019); *see also In re: Roundup*, 2018 WL 3368534, at *5 (noting that the Ninth Circuit's emphasis on deference to experts compared to other circuits "could matter in close cases"). The same was true of the initial general causation opinions offered by plaintiffs that have continued to evolve and portions of which may need to be evaluated in connection with later cases. *See*, *e.g.*, *In re Roundup*, 2018 WL 3368534 at *1 ("a very close question" exists regarding whether plaintiffs put for sufficient general causation testimony to proceed); *id*. at *2 ("Given how close the question is at the general causation phase, the plaintiffs appear to face a daunting challenge at the next phase."); *id*. at *23 (noting that the admissibility of Dr. Portier's opinions regarding the animal data is "a somewhat close call"); *id*. at *25 (stating admissibility of Dr. Portier's opinions in their entirety is "a close question"); *id*. at *27 (describing admissibility of Dr. Ritz's testimony as "a close question").

These differing approaches to *Daubert* have particular salience here, given that the cases involve an idiopathic disease. As the Court has observed, "[t]he biggest concern" with Plaintiffs' experts methodology "is how the experts account for idiopathy." *In re: Roundup*, 358 F. Supp. 3d at 959. The Court further noted that "under a strict interpretation of *Daubert*," Plaintiffs' experts' failure to point to a biomarker or genetic signature associated with a particular risk factor "perhaps . . . would be the end of the line for the plaintiffs and their experts." *Id*. The Court also cited a decision where the Sixth Circuit reversed admission of an expert opinion based on a differential diagnosis where unknown cause "currently accounts for the vast majority of Parkinson's Disease cases, making it impossible to ignore and difficult to rule out." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675–76 (6th Cir. 2010). Thus, according to this Court's past *Daubert* decisions, the Ninth Circuit has adopted a unique approach to *Daubert* that diverges from the approach taken in other circuits, and applying its law in ruling on specific causation testimony may very well result in not just a change in courthouse, but a change in outcome.

It therefore follows that the Court should apply the law of the transferor forum in cases originating in different circuits.

### III. CONCLUSION

Monsanto respectfully requests that the Court apply the law of the transferor forum in cases originating in different circuits.

DATED: June 14, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)

(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

- 9 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of June 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Brian L. Stekloff*