# EXHIBIT 1

```
                                                                                              2
       Pages 1 - 32                          1    APPEARANCES:  (CONTINUED)
 UNITED STATES DISTRICT COURT                2    For Plaintiffs:
 NORTHERN DISTRICT OF CALIFORNIA                             MOORE LAW GROUP
                                             3               1473 South 4th Street
Before The Honorable Vince Chhabria, Judge                   Louisville, Kentucky  40208
                                             4    BY:  JENNIFER MOORE, ATTORNEY AT LAW
ELAINE STEVICK and CHRISTOPHER  )
STEVICK,                        )            5               THE MILLER FIRM LLC
                                )                            108 Railroad Avenue
           Plaintiffs,          )            6               Orange, Virginia  22960
                                )                 BY:  BRIAN BRAKE, ATTORNEY AT LAW
   vs.                          )  NO. C 16-02341 VC   7          MICHAEL L. MILLER, ATTORNEY AT LAW
                                )
MONSANTO COMPANY,               )            8               BAUM HEDLUND ARISTEI GOLDMAN PC
                                )                            12100 Wilshire Blvd. - Suite 950
           Defendant.           )            9               Los Angeles, California  90025
                                )                 BY:  ROBERT BRENT WISNER, ATTORNEY AT LAW
                                            10          MICHAEL L. BAUM, ATTORNEY AT LAW
IN RE: ROUNDUP PRODUCTS         )
LIABILITY LITIGATION            )           11               ANDRUS ANDERSON LLP
                                )  NO. 16-md-02741 VC                155 Montgomery Street - Suite 900
                                            12               San Francisco, California  94104
               San Francisco, California         BY:  LELAND H. BELEW, ATTORNEY AT LAW
               Tuesday, June 4, 2019        13
                                            Also Present:    Matthew Stubbs for Plaintiffs
     TRANSCRIPT OF PROCEEDINGS              14               (not on Docket)

APPEARANCES:                                15    For Defendant:
              ALL COUNSEL APPEARED BY COURTCALL             WILKINSON WALSH ESKOVITZ LLP
                                            16               2001 M Street, NW - 10th Floor
For Plaintiffs:                                              Washington, D.C.  20036
              ANDRUS WAGSTAFF PC            17    BY:  BRIAN L. STEKLOFF, ATTORNEY AT LAW
              7171 W. Alaska Drive                       RAKESH N. KILARU, ATTORNEY AT LAW
              Lakewood, Colorado  80226     18          JULIE RUBENSTEIN, ATTORNEY AT LAW
    BY:  AIMEE H. WAGSTAFF, ATTORNEY AT LAW
         DAVID J. WOOL, ATTORNEY AT LAW     19               HOLLINGSWORTH LLP
                                                             1350 I Street NW
              WEITZ & LUXENBERG PC          20               Washington, D.C.  20005
              700 Broadway                        BY:  JOE G. HOLLINGSWORTH, ATTORNEY AT LAW
              New York, New York  10003     21          JESSICA BOYLAN, ATTORNEY AT LAW
    BY:  ROBIN L. GREENWALD, ATTORNEY AT LAW
                                            22
     (APPEARANCES CONTINUED ON FOLLOWING PAGE)
                                            23
REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter             24

                                            25
```

```
                                                     3                                                              4
 1   Tuesday - June 4, 2019              9:11 a.m.     1   you know, my needing to apply the Daubert law of the circuit
 2                P R O C E E D I N G S                2   from which the case comes.  We've looked at that.  We see no
 3                     ---o0o---                       3   support for that in the law, but Monsanto keeps asserting it
 4        THE CLERK:  Calling Case Number 16-cv-2341, Stevick,  4   and it keeps objecting to my being bound by Ninth Circuit law
 5   et al., versus Monsanto Company; and 16-md-02741, In Re Roundup   5   on the Daubert issue on these cases.
 6   Products Liability Litigation.                    6        And so what we're going to do is we're going to have, once
 7        No appearances needed at this time.          7   and for all, Monsanto make its argument on that; and if you
 8        THE COURT:  Okay.  Hi, everybody.            8   think you have any case law to support that or any arguments to
 9        I reviewed the case management statement.  I appreciate   9   support that, you can make them, but that issue is going to be
10   Monsanto's continued opposition to it, but California is going  10   decided at a hearing on July 2nd along with the posttrial
11   to be in the first wave of cases that are remanded to their  11   motions.
12   home districts.  I'm happy to include Nebraska with that.  12        And so -- because I think the overwhelming likelihood is
13        Between the two states you identified, you wanted Nebraska  13   that Monsanto is wrong on that question; but if Monsanto turns
14   to go first -- right? -- assuming that California stayed in it?  14   out to be right and if there's something that I haven't seen
15        MR. STEKLOFF:  This is Brian Stekloff, Your Honor.  15   that supports Monsanto's argument, then it would affect how we
16   That's correct, with Nebraska going first.       16   would proceed with the remands.
17        THE COURT:  Okay.  And so I have one -- before we set  17        And, frankly, what I would very likely do -- if it were
18   the schedule for that, I have one or two preliminary questions.  18   true that, you know, for the Nebraska cases not only would I
19        Number one is, you know, Monsanto keeps making noise about  19   have to apply Nebraska causation law but also Eighth Circuit
20   the possibility that, you know, in cases from Nebraska, for  20   Daubert law, then I think the overwhelming likelihood is that
21   example, you know, that the Daubert law of the Eighth Circuit  21   we would just do California first because that would just be
22   would apply.  Nebraska is in the Eighth Circuit; right?  22   too unwieldy to be trying to figure out not just the law of
23        MR. STEKLOFF:  Yes, Your Honor.             23   which state to apply but also the law of which circuit to apply
24   This is Brian Stekloff again.                    24   on Daubert.
25        THE COURT:  Okay.  Monsanto keeps making noise about  25        So I think very likely the first round would just be
```

5

California then, and we would deal with getting all the California cases back out to the districts where they were filed, either in Missouri or in the various districts in California; and then we would look at, you know, Monsanto's chosen states in the second round, maybe do Nebraska and North Carolina, or maybe two states from the same circuit probably.

Probably it would be more likely, if we had to apply the *Daubert* law of the circuit where the case came from, that we would need to pick, say, a couple states with similar causation law and from the same circuit so that it wouldn't become too unwieldy.

But for now we're going to continue to operate on the assumption that I apply Ninth Circuit *Daubert* law because, like I said, everything I've seen points in that direction and Monsanto hasn't pointed to anything to the contrary. So we're going to operate on that assumption now, and Monsanto's last chance to convince me to the contrary will be July 2nd.

So is that clear?

**MR. STEKLOFF:** Very clear.

**THE COURT:** Okay. So let's set a schedule for your briefs for that. So, Monsanto, I assume you -- I assume Monsanto wants to file a brief regarding *Daubert* law, we'll call it.

**MR. STEKLOFF:** Yes, Your Honor.

6

**THE COURT:** When do you want to file that brief?

(Pause in proceedings.)

**MR. STEKLOFF:** I think we could have it --

**THE COURT:** How about the 14th of June?

**MR. STEKLOFF:** That's what I was -- let's do the 14th of June.

**THE COURT:** Okay. So June 14th, Monsanto's brief regarding *Daubert* law will be filed, and the plaintiffs can file a response by June 24th. How's that?

**MS. WAGSTAFF:** Your Honor, this is Aimee Wagstaff. That works for us.

**THE COURT:** Okay. And we'll have a hearing on that, if necessary, on July -- was it July 2nd when we're having the hearing on the posttrial motions?

**THE CLERK:** Yes.

**THE COURT:** Okay.

**MS. WAGSTAFF:** Yes, Your Honor.

**THE COURT:** All right. And so that issue, I mean, I think it's all but resolved, but that will be resolved once and for all by July 2nd.

So what I would propose -- you know, I think what I will propose for the first wave and the second wave of remands would be California and Nebraska first, that is, cases governed by California law and cases governed by Nebraska law first, and then North Carolina, I guess, second.

7

But I wanted to ask a couple of questions about that. I -- and this is, again, for Monsanto -- I have been operating under the assumption that for the California cases, my prior rulings on general causation and on -- of course on general causation but also on specific causation for the three bellwether cases will largely dictate the outcome for the large majority of the cases; and that all that is going to be necessary is for Monsanto to say, "Yes, we preserve our appellate rights, but we agree that under your rulings on the bellwether cases, summary judgment would be denied on these cases as well."

And only a minority of the cases, probably a small minority of the cases, will there be arguments from Monsanto that, "No, these individual cases are materially different from the bellwether cases where you denied summary judgment and there are reasons that you must grant summary judgment in these cases, nonetheless."

But, you know, you-all have more experience, I think, in past MDLs than I do -- well, I know you have more experience in past MDLs than I do -- so am I operating under the correct assumption?

**MR. STEKLOFF:** Your Honor, this is Brian Stekloff again.

I will -- I have some experience in MDLs. I will concede I've never --

8

**THE COURT:** I'm sorry. You're coming in really muffled. I'm having a hard time hearing you or understanding you.

**MR. STEKLOFF:** Is this any better?

**THE COURT:** I'm not sure. You still sound pretty muffled. I don't know what -- are you on a cell phone?

**MR. STEKLOFF:** I am on a cell phone. I apologize.

**THE COURT:** No, I know, you mentioned you might need to do that.

**MR. STEKLOFF:** I'll try to speak really loudly; and if not, Mr. Kilaru can handle this.

I was going to say I am unfamiliar with the --

**THE COURT:** I'm sorry. We're having too much trouble understanding you on that phone.

**MR. STEKLOFF:** [Unintelligible.]

**THE COURT:** Sorry. We can't understand anything you're saying. Hello? Hello?

You don't have to report this.

**MR. STEKLOFF:** [Unintelligible.]

**THE COURT:** I wonder if maybe somebody on the Monsanto team, if you can hear me --

**MR. KILARU:** Yeah. This is Rakesh Kilaru.

**THE COURT:** -- maybe text Mr. Stekloff and tell him we can't hear him.

**MR. KILARU:** This is Rakesh Kilaru, Your Honor.

9

1  I just did that.
2      THE COURT:  Okay.  Yeah, Mr. Stekloff, we literally
3  could not hear a word you were saying.
4      MR. KILARU:  This is Mr. Kilaru again.
5  I assume my connection is -- can you hear me on the land
6  line?
7      THE COURT:  Yes.  Yeah.
8      MR. KILARU:  Okay.
9  I think -- on the question you asked, I think as a general
10 matter, assuming everything were the same from those three
11 cases, including the experts and the plaintiff, then it might
12 well be the case that there isn't much more to say in the
13 future cases beyond preservation.
14     But I guess I will say, as it stands, there appear to be
15 over 100 plaintiffs who are potentially subject to California
16 law, and I think that's an issue that we can't really resolve
17 until after fact discovery, but there are a number of cases
18 applying California law.  Those plaintiffs will likely have
19 individual risk factors and the application of the differential
20 diagnosis methodology to them may be differently reliable or
21 differently valid.
22     It's also possible that the plaintiffs will have different
23 experts given volume of cases and the location of the cases
24 than the ones they have disclosed already, in which case I
25 think that we obviously want to reserve our right to challenge

10

1  the way in which the new experts are applying methodology.
2      And then there's also the fact that I think, to some
3  degree, some of the experts' methodologies have changed over
4  the cross-cases and sometimes in the context of a specific
5  case; and so if and when that happens, I think it would be
6  appropriate, you know, for us and that we would be within our
7  rights to point those changes out and try to raise them as
8  appropriate.
9      So that's a long way of saying that assuming everything
10 were similar to those first three cases, what Your Honor said
11 may well be right; but I think given the volume of cases, the
12 volume of plaintiffs, the potential for new witnesses, and the
13 sort of potential for changes in methodology, it seems to me we
14 can't necessarily commit to some sort of across-the-board
15 preservation rule or even a majority preservation rule right
16 now.
17     THE COURT:  Well, I understand that, and you're
18 saying -- you know, you say "Assuming the cases are similar, it
19 may be that all we need to do is preserve our appellate
20 rights."  It's going to be -- the question is going to be:
21 What's your definition of "similar"?  And it seems like
22 Monsanto is going to have a choice.  You know, is it going to
23 be -- you know, is it going to adopt an unreasonably narrow
24 definition of the word "similar" and, therefore, make all of
25 this very difficult; or is it going to, you know, be reasonable

11

1  when it assesses each of these cases to determine whether my
2  prior rulings govern those cases?
3      And I guess, you know, if it turns out Monsanto is being
4  unreasonable about that, then we may have to change the plan
5  and, you know, we may have to say, "All right.  Well, you know,
6  doing California alone is going to be harder than -- is harder
7  than we expected because Monsanto is making it harder than we
8  expected, and so we're only going to be able to do California
9  in this first wave and we're going to break off Nebraska and,
10 you know, put it in the second or third wave," or whatever.
11     I mean, that's a case management decision, I guess, that
12 I'm going to have to make based on how difficult, you know, the
13 task is being made for me.
14     But I guess we can cross that bridge when we come to it,
15 but this brings up another question that I have.  I mean, I
16 assume that if there are going to be disputes about which law
17 applies -- so let's take the California cases; right?  We have
18 the cases that were filed in various federal district courts in
19 California and we have the cases that were filed in Missouri by
20 California residents kind of tied up in, you know, these
21 multiplaintiff lawsuits; is that correct?
22     MR. KILARU:  Your Honor, this is Rakesh Kilaru.
23 More or less I think that's right.  There may be one or
24 two other cases that were filed elsewhere.  I think there's a
25 Hawaii case, for example --

12

1      THE COURT:  Oh, yeah.
2      MR. KILARU:  -- but the vast majority of California
3  ones --
4      THE COURT:  The ones in Missouri, the ones that were
5  filed in the Eastern District of Missouri, were those a bunch
6  of multiplaintiff cases, or were they -- or are some of them
7  just single-plaintiff cases where the California residents sued
8  Monsanto in the Eastern District of Missouri?
9      MR. MILLER:  Your Honor, this is Mike Miller.
10 Your Honor, they're mostly multiplaintiffs.
11     THE COURT:  Okay.  You're coming in pretty muffled
12 too, Mr. Miller.  I did hear what you said, though.
13     So, you know, I suppose, you know, if there are going to
14 be disputes about what law applies, I mean, again it's
15 difficult for me to imagine.  I mean, if the plaintiff lived in
16 California and was exposed to Roundup exclusively in California
17 but simply chose to file in Missouri, I can't imagine there
18 would be any dispute, any reasonable dispute, that California
19 law applies under Missouri's choice of law rules.
20     But obviously there needs to be a process for sorting that
21 out and there needs to be a process for figuring out, you know,
22 the more difficult cases, like maybe there will be some cases
23 where somebody was exposed to Roundup in California for part of
24 the time and then exposed to Roundup in Missouri for part of
25 the time.  I don't know if there's any such case, but maybe

13

1  that would become more difficult, but there needs to be a
2  process for sorting it out.
3      Is that an argument for having the first wave of remands
4  consist of the cases that were filed in California and the
5  Nebraska cases -- the cases that were filed in Nebraska, in
6  federal court in Nebraska, and then have the second wave be the
7  cases that were filed in Missouri federal court where
8  California law governs and the cases that were filed in
9  Missouri federal court where Nebraska law governs?  And then,
10 you know, if that were the second wave, then you would -- you
11 know, you would have time to sort out which of those cases are
12 governed by which state's law.
13     What do you-all think of that?  I'll ask Monsanto first.
14         **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.
15     Just so I completely understand the proposal.  The first
16 phase would be cases filed in California district court and
17 then the Nebraska cases that were filed in Nebraska district
18 court?
19         **THE COURT:**  Right.
20         **MR. KILARU:**  And then the second phase, would it be
21 the Missouri cases, which -- I mean, I don't know what you do
22 with the Hawaii case, but the Missouri cases that --
23         **THE COURT:**  Yeah, put the Hawaii case in there too.
24         **MR. KILARU:**  Right.  So the Missouri cases that
25 presumably apply either, you know, Missouri or Nebraska law or

14

1  whatever the case may be?
2         **THE COURT:**  Well, I think --
3         **MR. KILARU:**  I guess I shouldn't have said "whatever
4  the case may be."  I guess it would be Missouri -- cases filed
5  in the Eastern District of Missouri where the plaintiff
6  currently resides in either California or Nebraska.
7         **THE COURT:**  Correct.  Or to tweak that slightly, it
8  would be -- the second wave would be cases filed elsewhere,
9  whether in Missouri district court or Hawaii, or wherever else,
10 where California law or Nebraska law applies.  And so the idea
11 of separating them out that way would be to give the parties
12 more time to sort out those cases.  I mean, we would sever
13 them -- and we'll get to that in a second -- but that would
14 give the parties more time to sort out those cases and figure
15 out which state's law applies to which case and adjudicate that
16 question, if necessary.
17         **MR. KILARU:**  Yes, Your Honor.  This is Rakesh Kilaru
18 again.
19     I think practically speaking that may be more efficient.
20 I guess you sort of I think know and understand our broader
21 concerns with California having the wave it will have in the
22 first phase and under this approach both in the first phase and
23 the second phase in terms of there being, I guess, vastly more
24 California cases than there are -- or presumably California
25 cases than there are any other jurisdiction.

15

1      I guess the one thing I noted, that it seems to me that if
2  the cases are being -- in the second phase we'd be working --
3  the parties would be working up a number of cases with
4  plaintiffs where it could be that California law and Nebraska
5  law applies, but depending on how fact discovery unfolds, other
6  jurisdictions' law may apply as well.
7      And I think given sort of the overall -- from our
8  perspective, the overall importance of having a diversity of
9  jurisdictions and a variety of different laws and jurisdictions
10 represented, I think it might be appropriate to not drop any
11 cases that don't apply California or Nebraska law in that
12 phase, to try to work those up as well to sort of further the
13 overall goals of the MDL.
14         **THE COURT:**  Well, I appreciate what you're saying but,
15 you know, I would not want the second phase to consist of -- I
16 mean, again, part of it depends on, you know, how reasonable
17 people are going to be in evaluating these cases and how
18 reasonable people are going to be in determining whether my
19 prior rulings apply to them; but I would not want in the second
20 phase a situation where we're adjudicating a bunch of
21 California cases and a bunch of Nebraska cases and a bunch of
22 North Carolina cases and a bunch of Georgia cases, et cetera,
23 et cetera.
24     So I guess I don't like the idea of saying we're going
25 to -- you know, Phase II is going to be about the cases that

16

1  were filed in Missouri district court and that we're going to
2  adjudicate those regardless of what state's law applies to
3  them.  I don't like that, but I -- you know, I understand what
4  you're saying about wanting, you know, a diversity of verdicts,
5  you know, diversity of states.
6      I mean, maybe what we could do is -- I mean, I'm just
7  thinking out loud here.  I haven't really thought this through.
8  But maybe what we could do is have the first phase be the cases
9  that were filed in federal court in California and the cases
10 that were filed in federal court in Nebraska, and then just
11 have the second phase be cases that were filed in federal
12 district court in North Carolina and, you know, perhaps one
13 other state, and then just kind of not give such priority to
14 the cases that were filed in the Eastern District of Missouri.
15         **MR. KILARU:**  I think, Your Honor -- this is Rakesh
16 Kilaru.
17     Another -- I think that would make some practical sense.
18 I think another option would be to do something along the lines
19 of what you had suggested initially of having California
20 district court and Nebraska district court cases in Phase I
21 where presumably the Court would sort of apply California law
22 and then sort of familiarize itself and apply Nebraska law; and
23 then the second phase could have, you know, the potential
24 California and Nebraska cases that come out of Missouri plus
25 add North Carolina to just add one new source of law in that

17

1 second phase because presumably once the choice of law issues
2 have been resolved, the California and Nebraska cases could, I
3 think from a legal matter, potentially be resolved relatively
4 quickly.
5     THE COURT:  Well, I mean, that sort of depends on
6 how -- I mean, we don't know that.  Maybe that's right but,
7 again, it's going to depend on Monsanto's definition of
8 "similar" I think.
9     MR. KILARU:  Yeah, and, Your Honor -- this is
10 Mr. Kilaru again -- I say we're certainly not trying to be
11 unreasonable or would not be trying to make things difficult
12 for the Court.  I mean, I understand the practical reasons to
13 be efficient in these circumstances, and I think we take the
14 advice Your Honor is giving.
15     I just want to -- the reason I said what I said earlier is
16 I just want to, you know, make sure that if there is some case
17 where, you know, for example, after analyzing the litigation
18 the plaintiff doesn't have NHL --
19     THE COURT:  Right.
20     MR. KILARU:  -- or may not have any forms of NHL that
21 isn't common, you know, we have the ability to raise that.
22     THE COURT:  Right, or their exposure was -- you know,
23 or their exposure was, you know, once a year or something.  You
24 know, I understand that.
25     MR. KILARU:  Yes.  But to what Your Honor said

18

1 earlier, I think it would make just as much sense -- it would
2 make good practical sense to maybe do it the way you suggested,
3 which is do the California district court, Nebraska district
4 court cases in Phase I and then move to, you know,
5 North Carolina and some other state in Phase II; and, you know,
6 that I think would probably minimize, to some degree, the
7 choice of law issues that will come up.
8     THE COURT:  How many cases -- I'm going to pull up
9 your case management statement again to see how many
10 North Carolina cases there are.
11     MR. KILARU:  In the court -- Your Honor, this is
12 Mr. Kilaru again.
13     In the North Carolina district court, there are seven.
14 District courts I should say.
15     THE COURT:  Okay.  And then there are a whole bunch
16 that are bound up in those Missouri multiplaintiff cases.
17     MR. KILARU:  That's right, Your Honor.
18     THE COURT:  Do the plaintiffs have any thoughts on
19 this discussion?
20     MS. WAGSTAFF:  Your Honor, this is Aimee Wagstaff.
21     If you are inclined to sort of put the Eastern District of
22 Missouri cases aside, as I think that was your second or third
23 sort of thought, and go just with the North Carolina, which
24 there are seven cases, we would request that plaintiffs get to
25 pick a state to join those seven North Carolina plaintiffs;

19

1 but, otherwise, I think that sort of your thinking is okay with
2 us.
3     THE COURT:  Okay.  What state would you want?
4     MS. WAGSTAFF:  Well, if you would give us maybe 24
5 hours to caucus, we could get you a state by noon tomorrow.
6     THE COURT:  Okay.  But regardless of whether the case
7 is filed in the Eastern District -- in the -- was it the
8 Eastern District of Missouri?  Yeah.
9     Regardless of whether these cases that are filed in the
10 Eastern District of Missouri that are part of these
11 multiplaintiff cases are included in Phase II or not, we're
12 going to get those cases severed and we're going to get them
13 refiled as individual cases, and so that's going to happen no
14 matter what.
15     And so I assume -- I want to confirm with Monsanto about
16 this -- I assume that with respect to severance, Monsanto will
17 agree to what defendants often agree to in these MDLs, which is
18 that we sever the cases and then we have a direct filing order
19 of some sort where Monsanto is waiving venue and personal
20 jurisdiction for pretrial purposes only, and that allows us to
21 simply sever all of the multiplaintiff cases and require each
22 of those plaintiffs to refile complaints directly in this court
23 without having to go back to their home districts and then get
24 transferred by the MDL panel again.
25     MR. KILARU:  Your Honor, this is Mr. Kilaru.

20

1 I believe that's right, but if we could have 24 hours to
2 just caucus on our end, that would be helpful.
3     THE COURT:  Okay.
4     MR. KILARU:  And as I understand the proposal, it
5 would be that after pretrial proceedings, those newly filed --
6 I guess refiled cases would still go back to the transfer court
7 if there were any venue motions, or anything like that, for the
8 purposes of trial.
9     THE COURT:  Yes, correct.
10     So assuming we proceed that way, I would think that I
11 would just order all of the multiplaintiff cases severed and
12 require new complaints to be filed by a certain date.
13     Hold on one second, though.
14         (Pause in proceedings.)
15     THE COURT:  So on the mechanics -- we were just having
16 a little discussion about the mechanics of severance and
17 refiling complaints, individual complaints, and what's the best
18 way mechanically to get that done from the standpoint of our
19 Clerk's Office to make sure our Clerk's Office is not unduly
20 burdened.
21     But from your standpoints, is there anything else to say
22 about severance?  I mean, it seems to me that it's automatic,
23 that unless the plaintiffs are able to identify, you know, a
24 particular situation where more than one plaintiff should be
25 joined consistent with the federal rules, you know, the

21

1  assumption is all of these cases should be severed and that I
2  should just go ahead and order them severed and order new
3  complaints to be filed by a certain date.  And, again, we will
4  work out the mechanics of that internally to make sure that it
5  doesn't overburden our Clerk's Office; but from your
6  standpoint, is there anything else to say about severance?
7      **MS. WAGSTAFF:**  Not from the plaintiffs, Your Honor.
8      **MR. KILARU:**  Your Honor, this is Rakesh Kilaru.
9  Not from Monsanto.
10     **THE COURT:**  Okay.  Should I have -- should I maybe
11 have you-all put together a proposed order governing direct
12 filing, which includes, you know, waiver of the venue and
13 personal jurisdiction for pretrial purposes and whatever other
14 issues you need to make sure are in there?
15     **MS. WAGSTAFF:**  Your Honor, this is Aimee Wagstaff for
16 the plaintiffs.
17     We can work with Monsanto to get that to you.
18     **THE COURT:**  All right.  Why don't you submit a direct
19 filing order by -- proposed direct filing order by Friday, and
20 we will -- again, we'll probably tweak it for our internal
21 purposes, but I want to give you the opportunity to put
22 together the proposed order because it may -- you know, just so
23 that you can make sure you have whatever protective language
24 you need in there.
25     And then, you know, you might look at -- so there is a --

22

1  there's an order from Judge Battaglia from the Southern
2  District of California in -- what's it called? -- Incretin
3  Mimetics Products Liability Litigation, MDL Number 13-md-2452.
4  That's an order dated November 13th, 2013.  You might look at
5  that as a sample direct filing order.
6      And then there's one from -- oh, my God.  Well, this one's
7  220 pages so I don't know how carefully you want to look at
8  this one, but from Judge Goodwin in West Virginia in MDL 2327.
9  That's another order that deals with direct filing.
10     But I want to -- you know, I want to get those cases
11 severed promptly, and then the next thing is I want -- so we'll
12 set a deadline that is going to be -- that is going to make
13 sense for our Clerk's Office.  But, you know, I'm assuming that
14 we'll have new individual cases filed in the next couple of
15 months in all of those cases; and then I'm assuming that we
16 will also need to set a deadline for the parties to file a
17 stipulation about which state's law applies to each of these
18 cases, you know, or something which indicates that, you know --
19 you know, that identifies the cases where they disagree about
20 which law applies, but we can deal with that a little bit
21 later.
22     So I do want to get those multiplaintiff cases -- I want
23 to start getting those cases in better shape, but I think I
24 kind of like the idea of not having them in Phase I or Phase II
25 of the remands, or Wave I and Wave II, whatever you want to

23

1  call it, and we can proceed with Wave I and II while you guys
2  are getting the multiplaintiff cases sorted out.
3      So, you know, I think I like the idea of having Wave I be
4  the cases that were filed in California district courts and
5  cases filed in Nebraska district courts, and Wave II being the
6  cases that were filed in North Carolina district courts, and
7  then the district courts of a state that the plaintiffs choose.
8  I think that sounds fine.
9      **MS. GREENWALD:**  Your Honor, this is Robin Greenwald
10 I'm on a cell because I'm actually doing Dr. Portier's
11 deposition oversees again.
12     But I think one or two of the Nebraska cases might be
13 multiplaintiff also is my recollection so I just want to let
14 you know that.  I'm almost positive one of them is three or
15 four plaintiffs.  They're all Nebraska exposures, though, but I
16 just want to let you know.
17     **THE COURT:**  Okay.
18     **MS. GREENWALD:**  We'll break it up.  I understand the
19 ruling, but I just wanted to let the Court know that.
20     **THE COURT:**  Okay.  Hold on one second.
21         (Courtroom deputy and the Court conferring.)
22     **THE COURT:**  Does anybody know of the -- so we have
23 your case management statement and we have this list of one,
24 two, three, four, five plaintiffs -- let's see -- oh, yeah, it
25 looks like -- I see.  So it looks like actually for those

24

1  Nebraska cases, cases filed in the district of Nebraska, it
2  looks like there are actually only two cases and one of them
3  has four plaintiffs; is that right?
4      **MS. GREENWALD:**  Correct.  That's right.  I just wanted
5  to make sure you knew that.
6      **THE COURT:**  Okay.  Well, those -- I mean, I'll just --
7  can I just issue a separate order severing those and requiring
8  them to be refiled?
9      **MS. GREENWALD:**  Sure.  Absolutely.
10     **THE COURT:**  Why don't you do a separate order for
11 the -- why don't you -- let's see...
12     Well, I'll just deal with it.  I'll just put together an
13 order.  After I get your direct filing order, I'll issue an
14 order -- after I get your proposed direct filing order on
15 Friday, I'll issue a severance order and we'll deal with the --
16 we'll make sure that the Nebraska cases get severed promptly
17 enough to be adjudicated individually at Wave I.  So thank you
18 for pointing that out.
19     **MS. GREENWALD:**  One option I'm thinking of off the top
20 of my head is we could potentially, if Monsanto will agree to
21 waive any statute of limitations, we could just dismiss and
22 refile or have it relate back.  If we can fashion an order, if
23 they would agree to relate back to the date of filing and
24 refile them in the state of Nebraska as an individual.
25     **THE COURT:**  Kristen is shaking her head no I think

25

1  because that may be harder on the Clerk's Office.
2       MS. GREENWALD:  Okay.
3       THE COURT:  So we'll work on that, but just go
4  ahead --
5       MS. GREENWALD:  Okay.
6       THE COURT:  -- and prepare your proposed direct filing
7  order and submit that to us on Friday, and get us your -- the
8  additional state that you want in Wave II, get us that by
9  tomorrow.
10      And then also, Monsanto, file something tomorrow just
11 specifying that you're going to be -- confirming that you're
12 going to be waiving venue and personal jurisdiction for those
13 cases, for the multiplaintiff cases.
14      MR. KILARU:  Your Honor, this is Rakesh Kilaru.
15      If we have no objection to that, is it okay if we just go
16 ahead with the direct filing order on Friday that includes
17 whatever those waivers would be?
18      THE COURT:  Yeah, that's fine, but I wouldn't -- I'd
19 like you to let me know tomorrow just for our planning
20 purposes.
21      MR. KILARU:  Okay.  Sure.  We will do that.
22      THE COURT:  Okay.  So with that, I think we can then
23 go ahead and set the schedule for Wave I and Wave II, and I
24 thought it ought to be something pretty similar to what
25 Monsanto proposed.  So I'm pulling that proposed schedule up

26

1  now.
2            (Pause in proceedings.)
3       THE COURT:  Before we get to the schedule, let me ask
4  one question about how these are going to get teed up.  So,
5  like, for the Nebraska cases, for example, I realize there are
6  only five of them so maybe it's not that big of a deal, but is
7  there a way we can do this where, you know, Monsanto says, "All
8  right.  Here are a couple of cases that are sort of exemplar
9  cases and, you know, our briefing is going to focus on these
10 couple of exemplar cases; and if you rule in our favor on these
11 couple of cases on these facts, it means, you know, that that
12 ruling would govern, you know, these 12 other cases and if you
13 rule against us, it means that that ruling would govern these
14 12 other cases"?
15      So that you're not laying out all the facts for each
16 plaintiff in the summary judgment motions.  Do you think that's
17 possible to do, or is it going to have to be a situation where
18 you're laying out all the facts for each plaintiff from, say,
19 Nebraska or whatever?
20      MR. KILARU:  Your Honor, this is Mr. Kilaru.
21      I think it's a little hard to tell right now.  I think we
22 could potentially use Nebraska as a test case for that approach
23 going forward because there are only five and determine, based
24 on how best the briefing on those five goes, as to what the
25 approach should be going forward.  I think for those five,

27

1  given that there's only five, it would probably make most sense
2  to do sort of a full treatment for each and then we can
3  determine if there's a shorter way in the future.
4       THE COURT:  Okay.  So I think I will want to tweak the
5  dates a little bit, but looking at the dates that Monsanto has
6  proposed for Wave I and Wave II, any comments on that from the
7  plaintiffs?
8       MS. GREENWALD:  I think that we --
9       MS. WAGSTAFF:  Your Honor --
10      MS. GREENWALD:  Go on, Aimee.
11      MS. WAGSTAFF:  I was going to say, depending on when
12 you enter your order, getting a PFS back within five days, if
13 you were to, say, enter that today, seems a little ambitious;
14 but if we know what cases you're going to be entering, then we
15 can send out the PFSs today.  We could probably make those five
16 days work, but I guess that's just a timing issue.
17      THE COURT:  Okay.  Well, you should --
18      MS. WAGSTAFF:  Half the time we have to send it
19 U.S. --
20      THE COURT:  I assume we have PFFs from all the cases
21 that were filed in -- sorry -- PFSs, plaintiff fact sheets, I
22 assume we have them for all the cases that were filed in
23 California district court by now; is that right?
24      MS. WAGSTAFF:  I think that's correct, but although as
25 a small caveat, I believe the order that you entered earlier,

28

1  Your Honor, had a date when they said they were Group 1 or
2  Group 2, and I know that cases have continued to be filed in
3  California.  As recently as last week, I think a few additional
4  ones were filed.
5       So is it your intention to include all cases that were
6  filed in the California federal courts?  There will probably be
7  a few that don't have PFSs yet.
8       THE COURT:  Well, I guess I would say all of the cases
9  that are on this list, the cases that are listed on this case
10 management statement.  I would think that we wouldn't go beyond
11 that.
12      MS. WAGSTAFF:  Okay.  I would have to defer to
13 Monsanto on if there's a PFS for everyone.
14      MR. KILARU:  Your Honor, this is Mr. Kilaru.
15      I don't know that off the top of my head, but we could
16 find that out relatively quickly.
17      THE COURT:  And what about -- what do you know about
18 the Nebraska cases?  There probably is not a plaintiffs' --
19      MS. GREENWALD:  We have not -- we have not done them.
20      THE COURT:  You haven't done the Nebraska ones yet?
21      MS. GREENWALD:  I don't -- actually, you know what?
22 Wow.  I guess that's right.  It was part -- it would have been
23 done.  I'm going to try and see if I can get an answer right
24 now from my office.  Give me a second.  Because a lot of those
25 are our cases.

29

1 **THE COURT:** Okay. Well, in any event, so right now
2 we're just looking at the cases that are listed on the case
3 management statement. Okay? And we've got these five cases,
4 five plaintiffs, who filed the cases in the district of
5 Nebraska that are listed on page 20 of the case management
6 statement; and then we have cases filed in California district
7 courts, and that list begins on page 15 and ends at the top of
8 page 16.
9     Those are the cases that are going to be part of this
10 first wave; right? And Giglio is on there; right? Yes. And
11 those are the cases that are going to be a part of this first
12 wave. So any of those cases where, you know, you haven't done
13 fact sheets yet, you know, get them out. You know, get them
14 out today.
15     And so I think in light of that, the deadline -- you know,
16 that five-day deadline probably will work because I think the
17 vast majority of those have been done, but we can make it --
18 you know, we can make it -- let's see...
19         (Pause in proceedings.)
20     **THE COURT:** You know, we can make it 10 days from the
21 entry of the order just to make sure.
22     Any other comments about the dates just looking at Wave I
23 first?
24     **MS. WAGSTAFF:** This is Aimee Wagstaff, Your Honor.
25 I don't believe plaintiffs have any other comments about

30

1 the remand wave schedule that is listed on page 13.
2     I would note that, you know, we requested Mr. Giglio have
3 a separate track that's a little more accelerated.
4     **THE COURT:** Actually you requested a slower track for
5 Mr. Giglio. You requested that a summary judgment hearing take
6 place for him later. So I'm giving you a faster track for
7 Mr. Giglio than you're requesting.
8     **MS. WAGSTAFF:** All right. That's great. Thank you.
9     **MR. KILARU:** Your Honor, this is Mr. Kilaru.
10 Nothing more from us on that.
11     **THE COURT:** Okay. I think what we'll -- we may tweak
12 the dates slightly. For example, it's not clear to me that
13 there's going to need to be, you know, any actual further
14 expert testimony, any actual *Daubert* hearing. Maybe there will
15 need to be, you know, oral argument on the summary judgment
16 motions as they relate to Nebraska. I don't know. Let's see
17 what the papers look like.
18     But it seems to me that it's possible that there won't be
19 a hearing at all and if there is a hearing, it seems likely
20 that it will just be limited to oral argument on Nebraska law,
21 but we'll probably schedule that for -- we'll probably schedule
22 the hearing for December and maybe we'll give you a little bit
23 of relief on the briefs accordingly. For example, give, you
24 know, the plaintiffs a little more time for their reply that's
25 currently due that on the schedule is November 8th. We'll

31

1 tweak it a little bit, but it will be basically the same
2 schedule that has been proposed here.
3     What about for Wave II, which, as it stands now, will be
4 for North Carolina and a state of the plaintiffs' choosing?
5 How does that schedule look?
6     **MS. WAGSTAFF:** Your Honor, the remand schedule for
7 Wave II as set forth on page 15 looks okay to plaintiffs.
8     **MR. KILARU:** Your Honor, this is Rakesh Kilaru.
9 The same.
10     **THE COURT:** Okay. So we will -- like I said, we may
11 tweak those schedules a little bit, but those will basically be
12 the schedules.
13     I think it probably makes sense to do the California
14 district -- the cases filed in California district court and
15 Nebraska district court first and then the cases filed in
16 North Carolina district court and the state chosen by the
17 plaintiffs in the second phase.
18     In the meantime, we'll set a separate schedule to unravel
19 all the multiplaintiff cases that were filed in the
20 Eastern District of Missouri and figure out which law applies
21 to those cases.
22     Anything else to discuss right now?
23     **MS. WAGSTAFF:** Not from plaintiffs, Your Honor.
24     **MR. STEKLOFF:** This is Rakesh Kilaru.
25 Not from Monsanto, Your Honor.

32

1     **THE COURT:** Okay. Very good. So we'll plan on seeing
2 you next on July 2nd. Is there -- there's probably no need to
3 have a case management conference before then.
4     **MS. WAGSTAFF:** We don't think so, Your Honor.
5 This is Aimee Wagstaff.
6     **MR. KILARU:** Agreed as well.
7 This is Rakesh Kilaru.
8     **THE COURT:** Okay. Well, you can always let us know if
9 you need to. If not, we'll see you on July 2nd. Thank you.
10     **MR. KILARU:** Thanks, Your Honor.
11     **THE CLERK:** Court is adjourned.
12         (Proceedings adjourned at 10:04 a.m.)
13             ---oOo---
14
15         **CERTIFICATE OF REPORTER**
16     I certify that the foregoing is a correct transcript
17 from the record of proceedings in the above-entitled matter.
18
19 DATE:  Thursday, June 6, 2019
20
21
22
23 _____
24     Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
            U.S. Court Reporter
25