**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:    (202) 847-4030
Fax:    (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 <br> ) <br> ) Case No. 3:16-md-02741-VC <br> ) |
| This document relates to: | ) <u>**MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**</u> |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC | ) <br> ) <br> ) |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES .................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ....................................................................................................... 2

    A.    Plaintiff Cannot Backfill Evidence to Support the Jury's Compensatory Damages Award, Which Is Facially Excessive. .......................................... 2

    B.    Plaintiff Failed to Prove Entitlement to Punitive Damages, And in Any Event, Remittitur Is Required. ...................................................................... 3

    C.    Monsanto is Entitled to Relief Due to Dr. Weisenburger's Undisclosed and Unsubstantiated Opinions, and Plaintiff Failed to Demonstrate Otherwise. .............. 7

    D.    Monsanto Is Entitled to Relief Due to Errors in the Medical Causation Instruction. ................................................................................................... 9

    E.    Monsanto Is Entitled to Relief Due to Improper Treatment of Regulatory Evidence ....................................................................................................... 11

    F.    Monsanto Is Entitled to Relief Due to the Improper Excusal of Juror No. 4 ........... 11

    G.    Plaintiff's Other Arguments Lack Merit. ................................................... 12

III.    CONCLUSION .................................................................................................. 15

MONSANTO'S REPLY MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

# TABLE OF AUTHORITIES

**CASES**

*Boeken v. Philip Morris Inc.*,
26 Cal. Rptr. 3d 638 (Ct. App. 2005)........................................4, 5, 6

*Buell-Wilson v. Ford Motor Co.*,
46 Cal. Rptr. 3d 147 (Ct. App. 2006)..........................................3, 6

*Bullock v. Philip Morris USA, Inc.*,
131 Cal. Rptr. 3d 382 (Ct. App. 2011)..........................................6

*In re Silicone Gel Breast Implants*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) ..........................................7

*Jones v. Ortho Pharm. Corp.*,
209 Cal. Rptr. 456 (Cal. App. 1985)............................................14

*Karlsson v. Ford Motor Co.*,
45 Cal. Rptr. 3d 265 (Ct. App. 2006)............................................4

*Loth v. Truck-A-Way Corp.*,
70 Cal. Rptr. 2d 571 (Ct. App. 1998)............................................2

*Major v. W. Home Ins. Co.*,
87 Cal. Rptr. 3d 556 (Ct. App. 2009)............................................2

*Mariscal v. Graco, Inc.*,
52 F. Supp. 3d 973 (N.D. Cal. 2014) ............................................9

*Monroe v. Zimmer*,
766 F. Supp. 2d 1012 (E.D. Cal. 2011)..........................................14

*Murphy v. City of Long Beach*,
914 F.2d 183 (9th Cir. 1990) ..................................................10

*Pfeifer v. John Crane, Inc.*,
164 Cal. Rptr. 3d 112, 135 (Ct. App. 2013) ....................................4

*Pooshs v. Philip Morris USA, Inc.*,
904 F. Supp. 2d 1009 (N.D. Cal. 2012) ........................................13

*Simon v. San Paolo U.S. Holding Co.*,
113 P.3d 63 (Cal. 2005) ......................................................5

MONSANTO'S REPLY MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

*Soule v. Gen. Motors Corp.*,
    882 P.2d 298 (Cal. 1994) ...........................................................................13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .............................................................................4, 5, 6

*Stevens v. Owens-Corning Fiberglas Corp.*,
    57 Cal. Rptr. 2d 525 (1996) .........................................................................7

*Trejo v. Johnson & Johnson*,
    220 Cal. Rptr. 3d 127 (Ct. App. 2017) .......................................................13

*United States v. Jones*,
    747 F. App'x 348 (6th Cir. 2018) ...............................................................12

*United States v. Reese*,
    33 F.3d 166 (2d Cir. 1994) .........................................................................12

*Valentine v. Baxter Healthcare Corp.*,
    81 Cal. Rptr. 2d 252 (Ct. App. 1999) .........................................................14

*Walker v. Farmers Ins. Exch.*,
    63 Cal. Rptr. 3d 507 (Ct. App. 2007) ...........................................................6

## STATUTES

40 C.F.R. § 19.4 ...............................................................................................6

7 U.S.C. § 136j(a)(1)(E) ....................................................................................6

Cal. Health & Safety Code § 25249.7 ...............................................................6

Fed. R. Civ. P. 26(a)(2)(B) ...............................................................................9

MONSANTO'S REPLY MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff's Opposition (ECF No. 4135, hereinafter "Opp'n") fails to grapple with most of Monsanto's arguments for why the jury's verdict should be set aside.  Most fundamentally, Plaintiff cannot justify the extraordinary damages award in this case, which must be substantially reduced.  The jury's non-economic damages award lacked sufficient evidentiary support and, coming in some *twenty-five times* the amount of economic damages, is demonstrably excessive and therefore improper under California law.  Likewise, the punitive damages award must be set aside.  There was no clear and convincing evidence presented at trial that Monsanto acted with the requisite malice, oppression, or fraud.  In any event, the award—itself over *fifteen times* the already-excessive compensatory damages—was facially unconstitutional and must at minimum be remitted.

Plaintiff's Opposition also lacks a meaningful response to the prejudice caused by Dr. Weisenburger's unsubstantiated and/or undisclosed opinions, which necessarily infected the jury's verdict here because he was Plaintiff's only witness on the essential topic of causation.  And Plaintiff's attempted defense of the improper jury instructions and the unfair presentation of the regulatory evidence provides no basis for allowing the result here to stand.  For these reasons, those discussed below, and the reasons enumerated in Monsanto's Motions for Judgment as a Matter of Law Or, In the Alternative, For a New Trial (ECF No. 3976, hereinafter "Mot."), Monsanto respectfully requests that the Court grant its motion for judgment as a matter of law on all of Plaintiff's claims or, in the alternative, a new trial.

## II.   ARGUMENT

### A.   Plaintiff Cannot Backfill Evidence to Support the Jury's Compensatory Damages Award, Which Is Facially Excessive.

Plaintiff can point to no evidence sufficient to support the massive noneconomic damages award.  Despite citing Dr. Nabhan's speculations about the need for lifelong follow-up, Plaintiff omits Dr. Nabhan's ultimate conclusion regarding Plaintiff's condition:  he "does not currently have evidence of DLBCL or non-Hodgkin's lymphoma," his prognosis "is very good" and "it is *extremely* unlikely" his DLBCL will recur.  Trial Tr. vol. 18, 2369:14–2370:7, March 22, 2019 (emphasis added).  Moreover, Dr. Nabhan placed no quantification on the alleged increased risk of Mr. Hardeman developing other, non-NHL cancers—which the Court rightly called into question as speculative, *see* Trial Tr. vol. 19, 2656–59, March 25, 2019.  In short, Dr. Nabhan's testimony, to a reasonable degree of medical certainty, confirmed that Plaintiff *will not* suffer future harm.

Devoid of actual evidence, Plaintiff obtained this award by directly violating the Court's Pretrial Order No. 138, asking the jury to award noneconomic damages solely on Plaintiff's life expectancy.  *See Loth v. Truck-A-Way Corp.*, 70 Cal. Rptr. 2d 571, 576–78 (Ct. App. 1998) ("[A] plaintiff may not supply . . . her own formula for computing such damages."); Pretrial Order No. 138: Instructions on Noneconomic Damages, March 26, 2019, ECF No. 3191 ("The Court sees no reason why life expectancy would be relevant to the calculation of noneconomic losses in a personal injury action, but not in a wrongful death action.").  Plaintiff notably offers no defense for that transgression.

Plaintiff likewise ignores the fact that the outsized ratio between his noneconomic damages and economic loss mandates correction under California law.  Courts routinely "compare the amount of th[e noneconomic] award to the economic damages award, to see if there is a reasonable relationship between the two."  *Major v. W. Home Ins. Co.*, 87 Cal. Rptr. 3d 556, 572 (Ct. App. 2009), *as modified on denial of reh'g* (Jan. 30, 2009).  Moreover, courts routinely reverse verdicts with ratios far lower than what the jury awarded here.  *See, e.g.*, *Buell-*

*Wilson v. Ford Motor Co.*, 46 Cal. Rptr. 3d 147, 171–72 (Ct. App. 2006) (reducing noneconomic award to amount "proportionate to the economic damages award" from fourteen to four times the economic damages), *vacated on other grounds*, 550 U.S. 931 (2007). Plaintiff offers no support as to why Plaintiff's noneconomic damages ($5,066,667.00) award is sustainable despite being twenty-five times larger than his economic damages ($200,967.10).

Further, while it is true that "a verdict may not be held to be excessive as a matter of law simply because it exceeds the amount awarded in other cases," the fact remains that "evidence of other verdicts is still relevant as a point of reference, to provide context to the award by establishing a range of values for similar injuries." *Id.* at 169. Significantly, Plaintiff pointed to no cases to counter Monsanto's examples, which serve to establish an appropriate range of noneconomic awards for individuals suffering similar, or worse, injuries than Plaintiff.

Plaintiff's attempt to differentiate *Buell-Wilson* is particularly misguided. The holding of that case was that a noneconomic damages award fourteen times the amount of economic damages was improper. *Id.* at 172. Under that logic, the ratio here—twenty-five to one—cannot stand. Plaintiff's interpretation of *Buell-Wilson* seems to be that a jury's verdict is fair so long as it is within the range that Plaintiff's counsel suggests, no matter the propriety of counsel's argument. There is nothing in *Buell-Wilson*, or any other case, supporting that extreme position.

Ultimately, Plaintiff suggests that Monsanto must prove that a compensatory damages award was based on passion and prejudice, and that the Court cannot consider anything else. But under California law, the ratio between economic and noneconomic damages and awards in other cases are foundational factors that a court must consider, and those factors confirm that the verdict here cannot stand.

## B. Plaintiff Failed to Prove Entitlement to Punitive Damages, And in Any Event, Remittitur Is Required.

### a. Eligibility

Plaintiff's citation to factually dissimilar cases, *see* Opp'n at 17–18, cannot establish that Monsanto acted with the requisite malice, oppression, or fraud necessary for punitive damages.

This case thus differs from *Pfeifer v. John Crane, Inc.*, where the defendant "knew that asbestos dust was hazardous," "knew that its products were likely to pose a danger to users, whom it did not warn," and testimony revealed "there was ample evidence that during the 1970's, it was widely accepted that asbestos dust was carcinogenic." *Pfeifer v. John Crane, Inc.*, 164 Cal. Rptr. 3d 112, 135, 137 (Ct. App. 2013), *as modified on denial of reh'g* (Nov. 27, 2013). Here, it has never been "widely accepted" that Roundup is a carcinogen, particularly during the time Plaintiff was using Roundup. Indeed, to this day, regulatory authorities around the world, including, but not limited to, the EPA, based on the full body of science, agree with Monsanto's view that Roundup is not carcinogenic. *Karlsson v. Ford Motor Co.*, 45 Cal. Rptr. 3d 265, 271, 274 (Ct. App. 2006), is dramatically different as well, as the evidentiary basis sufficient for imposing punitive damages arose from the issuance of discovery sanctions that effectively directed a verdict preventing defendant from challenging the foundation for punitive damages. The record here, by contrast, included ample evidence of Roundup's safety, of the worldwide regulatory consensus on that point, and of Monsanto's good-faith beliefs in its product.

   *b. Amount*

   The punitive damages award fails on all of the metrics the Supreme Court has instructed courts reviewing punitive damages to consider: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003). Plaintiff's arguments about other factors also lack merit.

   <u>Reprehensibility.</u> The only authority Plaintiff cites on reprehensibility is *Boeken v. Philip Morris Inc.*, 26 Cal. Rptr. 3d 638 (Ct. App. 2005), which does not support a finding that Monsanto's conduct was reprehensible. There the defendant, a cigarette company, "manufactured a dangerous product, knowing that it was a dangerous product—one that caused addiction and disease—and it added chemicals to the product to make it more addictive and

easier to draw into the lungs, thus making it *more* dangerous." *Id.* at 678–79. A premise of that decision, though, was that tobacco has been known since 1959 to cause 90 percent of aggressive lung cancers, *id.* at 679. Not so here: The scientific and medical communities, alongside virtually all regulatory agencies, believe that Roundup is safe and not carcinogenic.

Disparity. Plaintiff fails to rebut Monsanto's argument that the punitive damages award violates due process. As the Supreme Court has held, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. The California Supreme Court has also established a presumption that "ratios between the punitive damages award and the plaintiff's actual or potential compensatory damages significantly greater than 9 or 10 to 1 are suspect." *Simon v. San Paolo U.S. Holding Co.*, 113 P.3d 63, 77 (Cal. 2005) (reducing award from $1.5 million to $50,000 for a ten to one ratio between punitive and compensatory damages). Here, the ratio is over fifteen to one.

The "extreme reprehensibility or unusually small, hard-to-detect or hard-to-measure compensatory damages" that could justify a greater disparity under California law is absent here. *Id.* Even very egregious cases, like *Boeken*, applied a nine-to-one ratio after the defendant sold an addictive product generally known to cause cancer since the 1950s, targeting adolescent boys, including the plaintiff, who became "physically and psychologically vulnerable, and eventually, economically vulnerable." *See Boeken*, 26 Cal. Rptr. 3d at 654, 678–79. By contrast, cases similar to Plaintiff's, like *Johnson*—which involved the same claims and similar evidence—applied a one-to-one ratio.

Plaintiff unsurprisingly cites no case to support its further contention that "[t]he compensatory award in this case is neither so low as to have no effect on Monsanto's future conduct, nor so high as to say that the jury already punished Monsanto." Opp'n at 19. In reality, California courts have held that "[p]aying $1.5 million over and above the nearly $1.7 million in compensatory damages and attorney fees cannot, as respondent contends, be put down 'simply [as] just another cost of doing business.' *Even in this day and age, $1.5 million is a*

*substantial sum.*" *Walker v. Farmers Ins. Exch.*, 63 Cal. Rptr. 3d 507, 513 (Ct. App. 2007) (emphasis added); *see also Boeken*, 26 Cal. Rptr. 3d at 684–85 (compensatory damage award of 5.5 million "was significant"). Here, the compensatory and punitive award was far larger than that "substantial sum."

Comparable Cases. Plaintiff misstates the law in asserting that comparisons to civil penalties authorized or imposed in comparable cases are "of 'little help.'" Opp'n at 20. In *Boeken*, the Court of Appeal stated that "the trial court found little help in this guideline" because it was "difficult, if not impossible" to find an analogous civil penalty provision for frauds leading to wrongful death. 26 Cal. Rptr. 3d at 683. Here, there are civil fines available for failure to adequately warn of a product's risks under the exact statute governing this area, *see* 7 U.S.C. § 136j(a)(1)(E); 40 C.F.R. § 19.4, and the California Health and Safety Code, *see* Cal. Health & Safety Code § 25249.7, which Plaintiff ignores in his opposition and which substantiate the dramatically out-of-whack punitive award in this case. Moreover, as Plaintiff admits, "other cases may give [courts] a point of reference," *Buell-Wilson*, 46 Cal. Rptr. 3d at 170, and no California court has upheld an award of punitive damages as large as $75 million.

Monsanto's Financial Condition. While California courts have considered a company's wealth when upholding punitive damages, *State Farm* is clear that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *State Farm*, 538 U.S. at 427. Thus, even in *Boeken*, which Plaintiff relies on, the Court applied a 9:1 ratio and awarded only $50 million in punitive damages despite a net worth of $30-35 billion. *See Boeken*, 6 Cal. Rptr. 3d at 684. Nor is *Bullock* instructive, as Plaintiff alleges, Opp'n at 20, "[t]o the extent that comparing a case is necessary." The court in *Bullock* upheld a 16:1 ratio because "relative to Philip Morris's financial condition, $850,000 in compensatory damages is a small amount." *Bullock v. Philip Morris USA, Inc.*, 131 Cal. Rptr. 3d 382, 400 (Ct. App. 2011). Here the amount of compensatory and punitive damages is significantly higher.

Risk of Punitive Damages in Other Cases. Although *Stevens v. Owens-Corning Fiberglas Corp.*, 57 Cal. Rptr. 2d 525 (1996), held that evidence of other punitive damages

awards must be presented to the jury, it did not analyze the issue in the context of a trial where liability and amount of damages were decided concurrently. Despite Plaintiff's argument that the reasoning in *Stevens* was not tied to bifurcation, *see* Opp'n at 21, bifurcation into damages and liability phases *did* influence the court's holding in *Stevens*. The court analyzed the defendant's argument that "it should not be required to give the jury 'highly inflammatory evidence' of other punitive damage awards," and rejected it because "the prejudice inherent in such evidence relates more to liability for punitive damages than to the amount of the award," and the issues could and were tried separately. *Id.* at 536. Here, they were tried together.

### C. Monsanto is Entitled to Relief Due to Dr. Weisenburger's Undisclosed and Unsubstantiated Opinions, and Plaintiff Failed to Demonstrate Otherwise.

Plaintiff's Opposition cannot change the fact that the jury verdict necessarily rested on undisclosed and unsubstantiated expert testimony. Plaintiff's general causation testimony was flawed for the reasons Monsanto set forth in its opening brief and in prior filings. But the only witness who testified for Plaintiff on the issue of specific causation (an essential element of Plaintiff's case[1]) was Dr. Dennis Weisenburger, and several of the opinions he offered at trial were either never before disclosed, wholly unsubstantiated, or invented purely for this litigation. *See* Mot. at 10–11, 20–21. Plaintiff's Opposition fails to justify Dr. Weisenburger's improper testimony in this case.

Contrary to Plaintiff's suggestion, Monsanto's opening brief expressly set forth several instances where "Dr. Weisenburger's trial testimony was inconsistent or surprising." Opp'n at 3. First, Dr. Weisenburger offered testimony concerning Plaintiff's exposure to Roundup that found no support in the record and was contradicted by Plaintiff's own testimony. Plaintiff does not, and cannot, contest this fact: Dr. Weisenburger testified that Plaintiff sprayed "up to 20 gallons at one—at one time in one day," Trial Tr. vol. 8, 1153:3–4, March 5, 2019, and that Plaintiff was "exposed to Roundup over 300 times" and used a total of "around 5,900 gallons of Roundup", *id.* 1153:9–14, whereas Plaintiff offered much lower estimates of exposure. *See*

[1] *See In re Silicone Gel Breast Implants*, 318 F. Supp. 2d 879, 922 (C.D. Cal. 2004).

Mot. at 10–11. The testimony of Plaintiff's only specific causation witness contradicted Plaintiff's own sworn testimony to the jury on the critical issue of Plaintiff's Roundup exposure. *See* Mot. at 11. The Court must therefore overturn the jury verdict in Plaintiff's favor.

Second, Dr. Weisenburger offered previously undisclosed opinions about genetic mutations associated with hepatitis C, and went so far as to speculate for the first time on the stand that if Plaintiff had such mutations, they would have been eliminated by his hepatitis C treatment years before his NHL diagnosis. *See* Mot. at 21. Plaintiff does not dispute that Dr. Weisenburger's opinion as to these mutations and the Zuckerman article titled, "The effect of antiviral therapy on t(14;18) translocation and immunoglobulin gene rearrangement in patients with chronic hepatitis C virus infection," (TX 1599) were never discussed in Dr. Weisenburger's report or prior testimony. Plaintiff's sole response—that the Zuckerman article was included on an extensive list of articles Dr. Weisenburger claims to have reviewed—changes nothing. *See* Opp'n at 28. Plaintiff's argument—that inclusion of a point in article on a long list is sufficient to allow the expert to express any opinion tangentially derived from that article—would turn Rule 26's disclosure requirement on its head. Regardless of when the Zuckerman article was identified to Monsanto, identification of a single article cannot be sufficient for purposes of the disclosure of an entire opinion. Moreover, that argument has even less weight because the article appeared on an earlier version of a "reference list" from December 19, 2018 (*see* Exhibit 1 hereto) but was then omitted in Dr. Weisenburger's subsequently-issued "Master Reliance List" dated February 6, 2019 (*see* Exhibit 2 hereto). If anything, this series of events suggested to Monsanto that Plaintiff had withdrawn any opinions about the issue. In short, Monsanto had no way of knowing until the time of Dr. Weisenburger's trial testimony what he would say about the issue of genetic mutations.

Third, Dr. Weisenburger improperly testified at trial about his review of Plaintiff's pathology—a review that did not even take place until a week before trial and after his *Daubert* testimony. *See* Mot. at 20–21. By any acceptable definition, this testimony was not properly disclosed—it appeared nowhere in his report, his prior deposition testimony, or his prior

*Daubert* testimony. And this testimony operated to improperly buttress Dr. Weisenburger's other undisclosed opinion, discussed above, about mutations. Dr. Weisenburger was permitted to tell the jury that any mutations associated with Hepatitis C would have been eliminated years earlier, and confirm that point by telling the jury his pathology was normal. And Monsanto was deprived of a meaningful opportunity to cross-examine him on these matters, or introduce contradictory pathology testimony.

That Dr. Weisenburger disclosed reports and reliance lists and sat for *Daubert* testimony, *see* Opp'n at 28, is beside the point; what matters is that the opinions he offered to the jury cannot be found in those materials. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983–84 (N.D. Cal. 2014) (excluding expert's belated second report, which included new opinions and theories, and limiting plaintiff to expert's first report at trial, which had been timely disclosed); *see also* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring that a party's expert witness disclose, in a written report, "a *complete* statement of all opinions the witness will express and the basis and reasons for them.") (emphasis added). Nor does the fact that Monsanto had an opportunity to cross-examine Dr. Weisenburger at trial cure the problem. *See* Fed. R. Civ. P. 26(a)(2)(B). If, as Plaintiff posits, the opportunity for cross-examination resolves the prejudice resulting from surprise opinions, then the disclosure provisions of the Federal Rules of Civil Procedure would be meaningless. Simply put, Dr. Weisenburger should not have been permitted to offer this new and undisclosed opinions, and Plaintiff's Opposition fails to establish otherwise.

For these reasons and those explained in Monsanto's Motion, Dr. Weisenburger's made-for-litigation opinions were inadmissible and should have been excluded. Monsanto respectfully requests that the Court grant its Motion on this basis.

### D. Monsanto Is Entitled to Relief Due to Errors in the Medical Causation Instruction.

As a threshold matter, Plaintiff's suggestion that Monsanto's jury instruction challenge is "not only disingenuous" but "disallowed," *see* Opp'n at 22, is simply incorrect. First, Monsanto made its objections clear on the record at the charge conference. *See* Trial Tr. vol.

11, 1804:19–1805:6, 1829:19–1830:7, March 11, 2019.  But even if it had not done so, erroneous jury instructions can still form the basis for a new trial motion.  *See, e.g.*, *Murphy v. City of Long Beach,* 914 F.2d 183, 187–88 (9th Cir. 1990) (affirming grant of a new trial for failure to give appropriate jury instruction and approving doing so even where jury instruction error was raised for the first time post-verdict).  As described in Monsanto's Motion, the jury instruction on medical causation (Phase 1, Instruction No. 9) was flawed in several respects: (1) it should have included only the bracketed "but for" sentence in CACI 430 and no additional language on that topic; (2) it invited the jury to decide only whether either Roundup or hepatitis C caused Plaintiff's NHL; (3) it improperly suggested that Monsanto had the burden of proving that hepatitis C was the sole cause of Plaintiff's NHL instead of Roundup; and (4) it invited the jurors to find for Plaintiff if they believed the causation evidence between Roundup and hepatitis C weighed the same.  *See* Mot. at 17–18.

Plaintiff's Opposition underscores these defects precisely.  Contrary to Plaintiff's suggestion, Monsanto never posited that "either Roundup *or* hepatitis C could have caused Plaintiff's injuries."  Opp'n at 23.  Rather, Monsanto presented ample evidence and argument that entitled the jury to conclude that Plaintiff's NHL was caused by factors besides Roundup or hepatitis C or to find that Plaintiff's NHL—like most cases of NHL—was simply idiopathic. *See* Trial Tr. vol. 9, 1303:16–23, March 6, 2019 (Weisenburger cross-examination, discussing idiopathy and obesity); Trial Tr. vol. 11, 1600:19–1601:1, March 11, 2019 (Levine direct examination, discussing idiopathy); *id.* 1603:13–1605:11 (Levine direct examination, discussing idiopathy); *id.* 1637:8–1638:17 (Levine direct examination, discussing idiopathy, hepatitis C, and hepatitis B).  The Court's modification of CACI 430 was, by its own admission, "an attempt to protect the plaintiff . . . ."  *See* PTO 107 (ECF No. 2961).  That modification encouraged the jury not to consider the other possible causes posited by Monsanto and relieved Plaintiff of the requirements of the standard "but for" sentence and of its burden of proving that Roundup "more likely than not" caused Plaintiff's NHL.  In short, the modifications to CACI 430 improperly compelled the jury to decide only whether *either* Roundup *or* hepatitis C caused

Plaintiff's NHL, and, alternatively, allowed the jury to determine that both could have played an equal role in Plaintiff's development of NHL, despite no testimony from Plaintiff's experts (or Monsanto's) to that effect.

### E. Monsanto Is Entitled to Relief Due to Improper Treatment of Regulatory Evidence.

Plaintiff's contention that regulatory evidence "was ruled upon fairly and properly" because the Court permitted parties to testify about some conclusions from both IARC and EPA, *see* Opp'n at 29, simply assumes away Monsanto's argument. IARC, the EPA, EFSA, and EChA are not the only agencies that have addressed the science—regulators worldwide have overwhelmingly and repeatedly affirmed glyphosate's safety, both before IARC's classification and in direct response to it. Yet the jury was left with the impression that only a handful of agencies have addressed the matter.

Once Plaintiff was permitted to present evidence of IARC's conclusion, which—by the very title of the organization—was suggestive of international consensus, Monsanto should have been permitted to present the full regulatory picture confirming the opposite. The Court's pretrial rulings improperly limited Monsanto's ability to present this evidence and gave the jury a skewed view of the overwhelming regulatory evidence that glyphosate does not cause cancer.

### F. Monsanto Is Entitled to Relief Due to the Improper Excusal of Juror No. 4.

The Court improperly struck Juror No. 4. Plaintiff's primary argument in defense of the improper excusal of Juror No. 4—that an evidentiary hearing on juror misconduct is not mandatory—is a non-sequitur. The point is that the facts and circumstances here required more investigation before taking the extraordinary step of excluding a juror for cause mid-trial. *First*, the decision to excuse Juror No. 4 was based solely on multiple levels of hearsay from three jurors and without any inquiry of those jurors or Juror No. 4 herself. *Second*, contrary to Plaintiff's claim, there was no "stated intention" by Juror No. 4 to disregard the juror's oath— there were only comments from three jurors of their perceptions of her attitude. And those comments were insufficient to warrant excusal, given that the jurors said they were not

"influenced by [Juror No. 4] in anyway," *id.* at 789:21–22, and that Juror No. 4 "did not say which way she was planning on voting." *Id.* at 789:9–11. *Third*, the juror who brought these issues to the Courtroom Deputy's attention was Juror No. 6. She was notable because (1) on her initial juror questionnaire, she stated that she was "potentially" entering the trial with preconceived feelings about Monsanto, *see* Trial Tr. vol. 2, 241:17–21, Feb. 20, 2019; (2) she raised her hand during voir dire in response to a question from Plaintiff's counsel regarding whether anyone had an "issue that they don't think they can set those opinions aside and be fair in this case," *id.* 214:13–17; and (3) Monsanto challenged her for cause following voir dire, *see id.* 271:5–18. Given Juror No. 6's potential for bias, it was even more essential for the Court to conduct an investigation to verify her allegations about another juror.

The decision to strike a juror must be based on "sufficient information to make an informed decision." *United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994); *United States v. Jones*, 747 F. App'x 348, 356 (6th Cir. 2018). Under the circumstances, the Court failed to take the necessary steps to reach an informed decision.

### G. Plaintiff's Other Arguments Lack Merit.

Plaintiff has not adequately responded to the other errors and deficiencies identified in Monsanto's request for judgment as a matter of law or a new trial, including—but not limited to—evidentiary errors, preemption of Plaintiff's claims, sufficiency of the evidence, defective jury instructions, improper excusal of Juror 4, exclusion of agricultural benefits, and Plaintiff's failure to state valid claims for design defect and failure to warn. Beyond preserving all of its arguments for relief on all of Plaintiff's claims, Monsanto highlights the following legal and factual deficiencies in Plaintiff's response:

#### a. Design Defect

There was no evidence to support Plaintiff's sole design defect theory—that Roundup is unsafe for residential use under the consumer expectations test. *See* Pretrial Order No. 116: Order re Design Defect Claim, ECF No. 3015. Plaintiff claims that his design defect claim is

valid because "California law permits design defect claims where products are inherently and unavoidably dangerous." Opp'n at 7. But Plaintiff presented *no testimony*, expert or otherwise, that Roundup should not be sold to residential users.

Plaintiff also cites irrelevant standards under the component parts doctrine in arguing that Roundup *could* have been defectively designed because it is a "finished product."[2] Opp'n at 6–7. But to this day, Plaintiff still has not *identified a defect* in Roundup's design, as required by California law. *See Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025 (N.D. Cal. 2012) ("[R]egardless of whether the risk-benefit test or the consumer expectations test is being employed, a plaintiff must prove that there *was* a design defect, which actually caused the injury."); *see also Soule v. Gen. Motors Corp.*, 882 P.2d 298, 308 (Cal. 1994) (explaining that the consumer expectation test only allows a finding of defect "*if* the failure resulted from the product's design."). Plaintiff did not provide expert testimony that either glyphosate alone or the combination of glyphosate with surfactants renders Roundup defective; indeed, Plaintiff did not call *any* qualified expert to discuss Roundup's design at trial. *See Pooshs*, 904 F. Supp. 2d at 1017–20 (epidemiologist with expertise in tobacco products was not qualified to testify regarding cigarette design and stating "his testimony would not assist the trier of fact in understanding or determining whether the design of defendants' cigarettes was in fact defective").

And Plaintiff's theory that an ordinary consumer would not expect to contract cancer from using Roundup, repeated in its opposition brief, Opp'n at 24, is not legally viable. *See* Tr. vol. 19, 2682:4–5 ("It's defective in the sense that it's not something that an ordinary consumer would expect to get cancer from."). California courts have rejected this precise argument as not sufficient to support liability under the consumer expectations test. *See Trejo v. Johnson & Johnson*, 220 Cal. Rptr. 3d 127, 168–69 (Ct. App. 2017) ("If this were the end of the inquiry,

---

[2] Plaintiff also claims that glyphosate is not a raw material, and is instead a "synthesized chemical compound." Opp'n at 6. However, Plaintiff presented no expert testimony or any other evidence at trial that glyphosate itself was defectively designed.

the consumer expectations test always would apply and every product would be found to have a design defect.").

### b. Failure to Warn

Plaintiff likewise has not pointed to evidence establishing that Roundup's alleged cancer risks were "known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *See Valentine v. Baxter Healthcare Corp.*, 81 Cal. Rptr. 2d 252, 263 (Ct. App. 1999). Rather, Plaintiff has only identified equivocal scientific publications and a list of studies he wishes had been performed. *See* Opp'n at 10–11. These pieces of evidence are insufficient to sustain Plaintiff's claim and Plaintiff cites no cases holding otherwise. The overwhelming majority of science available when Plaintiff was buying and using Roundup, as testified to by Dr. Portier, Plaintiff's own expert, showed glyphosate is not carcinogenic. *See* Exhibit 3, Portier *Hardeman* Tr. 822:22– 823:3, 847:13–848:4, 848:7–12 (agreeing that "no one really thought [glyphosate] was carcinogenic until after the IARC review."). Moreover, glyphosate was (and remains) one of the most studied substances in history. Plaintiff's demand for more studies with an unknown outcome cannot impose liability on Monsanto under a failure to warn theory. *See Jones v. Ortho Pharm. Corp.*, 209 Cal. Rptr. 456, 462–63 (Ct. App. 1985) (explaining Plaintiff cannot simply "presume that had defendant conducted the clinical studies plaintiff contends should have been done, those studies would have established" causation).

Contrary to Plaintiff's assertions, *see* Opp'n at 11–12, *Monroe v. Zimmer* was not limited to medical device cases or cases involving irrelevant or unreliable scientific literature. *Monroe* stated in broad terms that when failure to warn claims involve scientific literature and complex medical issues, "plaintiff's position must be supported by expert testimony" and that testimony must "draw[] a[] connection between the literature and a duty to warn." 766 F. Supp. 2d 1012, 1034 (E.D. Cal. 2011). Plaintiff failed to present the requisite expert testimony and, accordingly, his failure to warn claim necessarily fails.

## III.   CONCLUSION

Monsanto respectfully requests that the Court grant judgment as a matter of law in its favor, or, in the alternative, a new trial.


DATED:  June 21, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center

850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO'S REPLY MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Brian L. Stekloff*

MONSANTO'S REPLY MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL