**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Tel:    202-898-5800
Fax:    202-682-1639
Email: jhollingsworth@hollingsworthllp.com
          elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Robert Kargen v. Monsanto Co.*,<br>Case No. 3:19-cv-03860-VC | |

**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff Robert Kargen's Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 1 and therefore denies those allegations. In response to the allegations in the second sentence of paragraph 1, Monsanto admits that Roundup®-branded products are safe when used in accordance with the products' labeling; that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world; and that Monsanto has labeled glyphosate products as

1    approved by regulatory bodies consistent with those findings.  To the extent that the second

2    sentence of paragraph 1 alleges that Monsanto has labeled glyphosate or Roundup®-branded

3    herbicides in any manner different or in addition to such regulatory approval, Monsanto denies

4    such allegations.  Monsanto denies the remaining allegations in paragraph 1.

5         2.    Monsanto lacks information or knowledge sufficient to form a belief as to the

6    truth of the allegations in paragraph 2 and therefore denies those allegations.

7         3.    In response to the allegations in paragraph 3, Monsanto denies that any exposure

8    to glyphosate-based herbicides or Roundup®-branded products can cause non-Hodgkins

9    lymphoma (NHL) or other serious illnesses.  Monsanto lacks information or knowledge

10   sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore

11   denies those allegations.

12        4.    In response to the allegations in paragraph 4, Monsanto admits that the World

13   Health Organization's International Agency for Research on Cancer ("IARC") issued a

14   monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate

15   under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer

16   hazard assessment around the world or that IARC based its evaluation on a complete or accurate

17   assessment of the scientific research regarding glyphosate.  Monsanto further denies that the

18   members of the panel were "renowned scientists" or that they were free from conflicts of

19   interest.  In response to the allegations in the final sentence of paragraph 4, Monsanto admits that

20   the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it

21   was required to add glyphosate to California's Proposition 65 list of chemicals in a process that

22   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

23   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

24   was not based upon any independent scientific analysis of glyphosate but instead was in response

25   to a provision of a California ballot proposition triggering such action based solely upon the

26   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

27   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

28

- 2 -

1  pose a cancer hazard to humans."[1]  Monsanto contends that OEHHA's decision that it was

2  required to list glyphosate violates the United States Constitution and the California Constitution.

3  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

4  warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 4 set

5  forth conclusions of law for which no response is required.  To the extent that a response is

6  deemed required, Monsanto denies the allegations in paragraph 4.

7       5.     Monsanto admits the allegations in the first sentence of paragraph 5.  In response

8  to the allegations in the second sentence of paragraph 5, Monsanto admits that glyphosate, the

9  active ingredient in Roundup®-branded herbicides, is a non-selective herbicide and that certain

10 Roundup®-branded herbicides are used to kill weeds that commonly compete with growing

11 crops.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of

12 the specific numbers and statistics cited in the remaining sentences of paragraph 5 and therefore

13 denies those allegations.

14      6.     In response to the allegations in the first sentence of paragraph 6, Monsanto

15 admits that it has stated, and continues to state, that Roundup®-branded products are safe when

16 used in accordance with the products' labeling.  Monsanto denies that any exposure to

17 glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious

18 illnesses.  Monsanto denies the remaining allegations in paragraph 6.

19      7.     Monsanto lacks information or knowledge sufficient to form a belief as to the

20 truth of the allegations in the first and second sentences of paragraph 7 and therefore denies those

21 allegations.  In response to the allegations in the third sentence of paragraph 7, Monsanto denies

22 certain events giving rise to plaintiff's claims and Monsanto lacks information or knowledge

23 sufficient to form a belief as to the truth of the allegations regarding where certain other events

24 giving rise to plaintiff's claims occurred and therefore denies those allegations.

25      8.     Monsanto admits the allegations in the first and second sentences of paragraph 8.

26

27 [1] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
   https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

In response to the allegations in the final sentence of paragraph 8, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the final sentence of paragraph 8 and therefore denies those allegations.

9.     The allegations in paragraph 9 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 9 based upon the allegations in plaintiff's Complaint.

10.     The allegations in paragraph 10 set forth conclusions of law for which no response is required.

11.     The allegations in paragraph 11 set forth conclusions of law for which no response is required.

12.     Monsanto denies the allegations in paragraph 12.

13.     In response to the allegations in paragraph 13, Monsanto denies certain events giving rise to plaintiff's claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiff's claims occurred and therefore denies those allegations.  The remaining allegations in paragraph 13 set forth conclusions of law for which no response is required.

14.     In response to the allegations in paragraph 14, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 14 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 and therefore denies those allegations.

15.     Monsanto admits the allegations in the first sentence of paragraph 15.  Monsanto denies the allegations in the second sentence of paragraph 15 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 15 to the extent that they

1   suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well

2   within regulatory safety levels, as determined by the United States Environmental Protection

3   Agency ("EPA").

4          16.     Monsanto admits the allegations in paragraph 16.

5          17.     In response to the allegations in paragraph 17, Monsanto admits that farmers have

6   safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining

7   allegations in paragraph 17.

8          18.     The allegations in the first and second sentences of paragraph 18 set forth

9   conclusions of law for which no response is required.  To the extent that a response is deemed

10  required, Monsanto admits the allegations.  In response to the remaining allegations in paragraph

11  18, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in

12  support of the human health and environmental safety of their products and further admits that

13  EPA will not register or approve the labeling of herbicides that do not satisfy the requirements

14  set forth in FIFRA.  The remaining allegations in paragraph 18 set forth conclusions of law for

15  which no response is required.

16         19.     The allegations in paragraph 19 set forth conclusions of law for which no

17  response is required.

18         20.     In response to the allegations in paragraph 20, Monsanto admits that EPA requires

19  registrants of herbicides to submit extensive data in support of the human health and

20  environmental safety of their products and further admits that EPA will not register or approve

21  the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

22  states that the term "the product tests" in the final sentence of paragraph 20 is vague and

23  ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 20

24  set forth conclusions of law for which no response is required.

25         21.     Monsanto denies the allegations in paragraph 21 to the extent that they suggest

26  that EPA only evaluates the safety of pesticide products on the date of their initial registration.

27  Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

28  products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

- 5 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

1    of the allegations in paragraph 21 regarding such pesticide products generally and therefore

2    denies those allegations.  The remaining allegations in paragraph 21 set forth conclusions of law

3    for which no response is required.

4           22.     In response to the allegations in paragraph 22, Monsanto admits that EPA has

5    undertaken a review of glyphosate and that EPA has not released its findings.  Monsanto states,

6    however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-

7    page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support

8    is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health

9    risk assessment"[2]; and (b) at the same time, EPA posted an October 2015 final report by its

10   standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's

11   existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[3]  Monsanto

12   further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation

13   of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support

14   is for [the descriptor] 'not likely to be carcinogenic to humans'."[4]  Monsanto lacks information

15   or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph

16   22 and therefore denies these allegations.

17          23.     In response to the allegations in paragraph 23, Monsanto admits that EPA posted

18   the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the

19   website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the

20

21   [2] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic
     Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"),
22   https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP
     Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on
23   glyphosate's carcinogenic potential.

24   [3] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
     U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the
25   Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
     Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

26

27   [4] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of
     Carcinogenic Potential* at 143, 144 (Dec. 12, 2017),
     https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and therefore denies those allegations.

24.  In response to the allegations in paragraph 24, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC final Report, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of

1    Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-
2    5056-a055-64af-0e55900753b4, at time stamp 55:05–56:20.

3    Monsanto denies the remaining allegations in paragraph 24.

4         25.      In response to the allegations in paragraph 25, Monsanto admits that it – along
5    with a large number of other companies and governmental agencies – was defrauded by two
6    chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct
7    testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct
8    toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any
9    glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories
10   studies.  To the extent that the allegations in paragraph 25 are intended to suggest that Monsanto
11   was anything other than a victim of this fraud, such allegations are denied.

12        26.      In response to the allegations in paragraph 26, Monsanto admits that Industrial
13   Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the
14   registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of
15   such product is based upon any fraudulent or false IBT studies.

16        27.      Monsanto denies the allegations in paragraph 27 to the extent they suggest that
17   EPA performed an inspection of IBT Laboratories solely or specifically in connection with
18   studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT
19   Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in
20   connection with services provided to a broad number of private and governmental entities and
21   that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was
22   one of several pesticide manufacturers who had used IBT test results.  The audit found some
23   toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,
24   Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.
25   Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is
26   based upon any invalid IBT studies.  To the extent that the allegations in paragraph 27 are
27   intended to suggest that Monsanto was anything other than a victim of this fraud, such
28   allegations also are denied.

- 8 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

28.     In response to the allegations in paragraph 28, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

29.     In response to the allegations in paragraph 29, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 29 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

30.     In response to the allegations in paragraph 30, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 30 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

31.     In response to the allegations in paragraph 31, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 31 and accordingly denies those allegations.  The remaining allegations in paragraph 31 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

32.     In response to the allegations in paragraph 32, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 32 and accordingly denies the same.  The remaining allegations in paragraph

1  32 are vague and conclusory and comprise attorney characterizations, and are accordingly

2  denied.

3          33.     In response to the allegations in paragraph 33, Monsanto admits that the New

4  York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

5  advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

6  admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

7  General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

8  the subparts purport to quote a document, the document speaks for itself and thus does not

9  require any further answer.  The remaining allegations in paragraph 33 are vague and conclusory

10  and comprise attorney characterizations, and are accordingly denied.

11          34.     In response to the allegations in paragraph 34, Monsanto admits it entered into an

12  assurance of discontinuance with the New York Attorney General.  The assurance speaks for

13  itself and thus does not require any further answer.  The remaining allegations in paragraph 34

14  are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

15          35.     Monsanto denies the allegations in paragraph 35.

16          36.     In response to the allegations in paragraph 36, Monsanto admits that the French

17  court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

18  that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling

19  was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto

20  denies the remaining allegations in paragraph 36.

21          37.     Monsanto admits that IARC was created in 1965.  The remaining allegations in

22  paragraph 37 are vague and conclusory and comprise attorney characterizations, and are

23  accordingly denied.

24          38.     Monsanto denies the allegations in the first and second sentences of paragraph 38.

25  Monsanto admits the allegations in the final sentence of paragraph 38.

26          39.     In response to the allegations in paragraph 39, Monsanto denies that IARC

27  follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

1   or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

2   paragraph 39, which are not limited as of any specified date, and accordingly denies the same.

3        40.     In response to the allegations in paragraph 40, Monsanto admits that IARC sets

4   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

5   Monsanto denies the remaining allegations in paragraph 40.

6        41.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

7   research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

8   that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

9   form a belief as to the truth of the remaining allegations in paragraph 41 and therefore denies

10  those allegations.

11       42.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

12  research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

13  that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

14  form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies

15  those allegations.

16       43.     Monsanto denies the allegations in paragraph 43 to the extent that they suggest

17  that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

18  glyphosate as a Group 2A agent in March 2015.

19       44.     In response to the allegations in paragraph 44, Monsanto admits that IARC issued

20  its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the

21  monograph was prepared by a "working group" of individuals selected by IARC who met over a

22  one week period in March 2015 to consider glyphosate along with a number of other substances.

23  Monsanto denies the allegation that all members of the working group are "experts."

24       45.     In response to the allegations in paragraph 45, Monsanto denies that the working

25  group or anyone at IARC conducted a one-year review of the scientific evidence related to

26  glyphosate or that the working group's findings reflected a comprehensive review of the latest

27  available scientific evidence.  Monsanto also denies that the working group considered all

28  information available in the scientific literature and all data from government reports that are

1    publicly available.  Monsanto denies the remaining allegations in paragraph 45.

2         46.    In response to the allegations in paragraph 46, Monsanto denies that the IARC

3    working group considered all of the data in the numerous studies that have been conducted

4    looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

5    that it reliably considered the studies that it purports to have reviewed, which frequently reach

6    conclusions directly contrary to those espoused by the IARC working group.  To the extent the

7    allegations purport to characterize statements made in the IARC monograph for glyphosate, the

8    statements in that document speak for themselves, but Monsanto lacks information or knowledge

9    sufficient to form a belief as to the accuracy of the source of said information and accordingly

10   denies the allegations.

11        47.    The allegations in paragraph 47 are vague and conclusory.  To the extent they

12   purport to characterize statements made in the IARC monograph for glyphosate, the statements

13   in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

14   to form a belief as to the accuracy of the source of said information and accordingly denies the

15   allegations.

16        48.    In response to the allegations in paragraph 48, to the extent the allegations purport

17   to characterize statements made in the IARC monograph for glyphosate, the statements in that

18   document speak for themselves, but to the extent that this paragraph means that more than *de*

19   *minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 48.

20        49.    In response to the allegations in paragraph 49, Monsanto admits that the IARC

21   working group identified a number of case control studies of populations with exposures to

22   glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

23   health concern from such exposures.

24        50.    In response to the allegations in paragraph 50, Monsanto denies that the IARC

25   working group considered all of the data in the numerous studies that have been conducted

26   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

27   that it reliably considered the studies that it purports to have reviewed, which frequently reach

28   conclusions directly contrary to those espoused by the IARC working group.  To the extent that

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

1    the allegations in paragraph 50 purport to characterize statements made in the IARC monograph

2    for glyphosate, the statements in that document speak for themselves.

3        51.    In response to the allegations in paragraph 51, Monsanto admits that the IARC

4    working group identified a number of case control studies of populations with exposures to

5    glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

6    health concern from such exposures.  Monsanto denies the remaining allegations in paragraph

7    51.  The IARC working group concluded that there was only limited evidence of carcinogenicity

8    in epidemiologic studies, which, per IARC's guidelines, means that the working group could not

9    rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

10       52.    In response to the allegations in paragraph 52, Monsanto admits that the IARC

11   working group purported to make these findings, but denies that the animal carcinogenicity

12   studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any

13   of the identified tumors.  Monsanto further states that regulatory agencies around the world have

14   reviewed the same animal studies and concluded that they do not provide evidence that

15   glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 52.

16       53.    In response to the allegations in paragraph 53, Monsanto admits that the working

17   group cited to a study that it concluded provided evidence of chromosomal damage in

18   community residents reported to be exposed to glyphosate, but Monsanto denies that the study

19   supports such a conclusion or that the authors of the study reached such a conclusion.

20       54.     In response to the allegations in the first sentence of paragraph 54, Monsanto

21   admits that certain studies have reported that glyphosate and glyphosate-based formulations

22   induced oxidative stress under artificial experimental conditions.  Monsanto denies that these

23   studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce

24   oxidative stress in humans or animals under real-world exposure conditions.  In response to the

25   allegations in the second sentence of paragraph 54, Monsanto states that the cited document

26   speaks for itself and does not require a response.  In response to the allegations in the final

27   sentence of paragraph 54 and in footnote 1, Monsanto denies that any exposure to glyphosate-

28

1  based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.

2  Monsanto denies the remaining allegations in paragraph 54.

3      55.      In response to the allegations in paragraph 55, Monsanto admits that the IARC

4  working group purported to make these findings, but denies that the cited studies provide any

5  reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or

6  persist in human blood or urine.  Monsanto further admits that the working group reviewed the

7  findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working

8  group characterized that study as supporting an association between glyphosate and the specified

9  cancers.  The AHS cohort study did not find a positive association between glyphosate and any

10 type of cancer.  Monsanto denies all other allegations in paragraph 55.

11     56.      In response to the allegations in paragraph 56, Monsanto admits that the

12 referenced studies were published, but denies that the studies show any scientifically reliable

13 findings.

14     57.      In response to the allegations in paragraph 57, Monsanto denies that the cited

15 study provides any reliable basis for a finding that any meaningful levels of glyphosate are

16 present or persist in human blood or urine.  Monsanto denies the remaining allegations in

17 paragraph 57.

18     58.      In response to the allegations in paragraph 58, Monsanto denies that any exposure

19 to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies

20 the allegations in the first and fourth sentences of paragraph 58.  Monsanto admits that certain

21 Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as

22 inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded

23 herbicides do not pose an unreasonable risk to human health.  The remaining allegations in

24 paragraph 58 are vague and conclusory and comprise attorney characterizations, and are

25 accordingly denied.

26     59.      In response to the allegations in paragraph 59, Monsanto admits that the IARC

27 working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing

28 discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-

based herbicides.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 61.

62.     Monsanto admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 64.

65.     In response to the allegations in paragraph 65, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that 96 individuals signed a letter sent by Dr. Christopher Portier to the EU Health Commissioner (hereinafter "the Portier letter").  Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto. Monsanto denies that Dr. Portier or the other signatories to his letter are "prominent experts," and Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the conclusion that glyphosate is not carcinogenic found by EFSA and by the BfR.

67.     In response to the allegations in paragraph 67, Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 67 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 67.

68.     Monsanto admits that, in June 2016, the European Union continued to consider the reregistration of glyphosate.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.  Monsanto further notes that, in March 2017, the European Chemical Agency ("ECHA") announced that its Committee for Risk Assessment concluded that the available scientific evidence did not meet the criteria to

1    classify glyphosate as a carcinogen.  *See* ECHA, *Glyphosate not classified as a carcinogen by*

2    *ECHA*, https://echa.europa.eu/-/glyphosate-not-classified-as-a-carcinogen-by-echa.  Monsanto

3    denies the remaining allegations in paragraph 68.

4            69.      Monsanto lacks information or knowledge sufficient to form a belief as to the

5    truth of the allegations in paragraph 69 and therefore denies those allegations.

6            70.      Monsanto lacks information or knowledge sufficient to form a belief as to the

7    truth of the allegations in paragraph 70 and therefore denies those allegations.

8            71.      Monsanto denies that any exposure to Roundup®-branded products can cause

9    NHL and other serious illnesses and therefore denies the allegations in paragraph 71.  Monsanto

10   states, however, that the scientific studies upon which IARC purported to base its evaluation of

11   glyphosate were all publicly available before March 2015.

12           72.      In response to the allegations in subpart (a) of paragraph 72, Monsanto admits that

13   Roundup® branded products are safe for use in accordance with the labeling; that the scientific

14   evidence does not support any causal link between Roundup® branded products and "blood born

15   cancers" or NHL; and that Monsanto has made statements to that effect in accordance with EPA

16   regulation under FIFRA.  Monsanto denies the remaining allegations in paragraph 72, including

17   its subparts.

18           73.      In response to the allegations in paragraph 73, Monsanto admits that it has made

19   statements with respect to the safety of Roundup in accordance with EPA regulation under

20   FIFRA.  Monsanto states that the first sentence in paragraph 73 sets forth conclusions of law for

21   which no response is required.  Monsanto lacks information or knowledge sufficient to form a

22   belief as to the truth of the remaining allegations in paragraph 73 and therefore denies the

23   remaining allegations in paragraph 73.

24           74.      In response to the allegations in the first sentence of paragraph 74, Monsanto

25   denies that there is any risk of NHL or other serious illness associated with the use of and/or

26   exposure to Roundup® and glyphosate.  Monsanto states, however, that the scientific studies

27   upon which IARC purported to base its classification for glyphosate were all publicly available

28   before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to

the truth of the remaining allegations in the first sentence of paragraph 74 and therefore denies those allegations.  The final sentence of paragraph 74 sets forth conclusions of law for which no response is required.

75.     The first sentence of paragraph 75 sets forth conclusions of law for which no response is required.  Monsanto denies the allegations in the second sentence of paragraph 75.

76.     Monsanto denies the allegations in the first sentence of paragraph 76.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 76 and therefore denies those allegations.

77.     Monsanto incorporates by reference its responses to paragraphs 1 through 76 in response to paragraph 77 of plaintiff's Complaint.

78.     In response to the allegations in paragraph 78, Monsanto denies that it violated the laws of Pennsylvania or federal law and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 78 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

79.     The allegations in paragraph 79 set forth conclusions of law for which no response is required.

80.     Monsanto denies the allegations in the first sentence of paragraph 80.  The second sentence of paragraph 80 sets forth a conclusion of law for which no response is required.

81.     Monsanto incorporates by reference its responses to paragraphs 1 through 80, in response to paragraph 81 of plaintiff's Complaint.

82.     In response to the allegations in paragraph 82, Monsanto admits that plaintiff purports to bring a claim for strict liability design defect but denies any liability as to that claim.

83.     Monsanto denies the allegations in the first and second sentences of paragraph 83. In response to the last sentence of paragraph 83, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 83.

84.     Monsanto denies the allegations in paragraph 84.

85.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 85 and therefore denies those allegations.

86.     Monsanto denies the allegations in paragraph 86.

87.     Monsanto denies the allegations in paragraph 87.

88.     Monsanto denies the allegations in paragraph 88.

89.     Monsanto denies the allegations in paragraph 89.

90.     Monsanto denies the allegations in paragraph 90.

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in paragraph 95.

96.     Monsanto denies the allegations in paragraph 96.

97.     Monsanto denies the allegations in paragraph 97.

98.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 98 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 98, including that Roundup® branded products have "dangerous characteristics."

99.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 99 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 99, including that Roundup®-branded products have "dangerous characteristics."

100.    Monsanto denies the allegations in paragraph 100.

101.    Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto denies the allegations in paragraph 105.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in paragraph 107.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto denies the allegations in paragraph 109.

110.    In response to the allegations in paragraph 110, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

111.    Monsanto incorporates by reference its responses to paragraphs 1 through 110 in response to paragraph 111 of plaintiff's Complaint.

112.    In response to the allegations in paragraph 112, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

113.    Monsanto denies the allegations in paragraph 113.

114.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 114 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph 114 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 114.

115.    The allegations in paragraph 115 set forth conclusions of law for which no response is required.

116.    Monsanto denies the allegations in paragraph 116.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

117.    Monsanto denies the allegations in paragraph 117.

1        118.    Monsanto denies the allegations in paragraph 118.

2        119.    Monsanto denies the allegations in paragraph 119.

3        120.    Monsanto lacks information or knowledge sufficient to form a belief as to the

4    truth of the allegations in paragraph 120 and therefore denies those allegations.

5        121.    Monsanto lacks information or knowledge sufficient to form a belief as to the

6    truth of the allegations in paragraph 121 concerning plaintiff's alleged use and exposure to

7    Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

8    remaining allegations in paragraph 121, including that Roundup®-branded products have

9    "dangerous characteristics."

10       122.    Monsanto lacks information or knowledge sufficient to form a belief as to the

11   truth of the allegations in paragraph 122 concerning plaintiff's alleged use and exposure to

12   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

13   remaining allegations in paragraph 122, including that Roundup®-branded products have

14   "dangerous characteristics."

15       123.    In response to the allegations in paragraph 123, Monsanto denies that any

16   exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or

17   other serious illnesses and denies that there are any defects in those products.  Monsanto lacks

18   information or knowledge sufficient to form a belief as to the truth of the remaining allegations

19   in paragraph 123 and therefore denies those allegations.  Monsanto states, however, that the

20   scientific studies upon which IARC purported to base its evaluation of glyphosate were all

21   publicly available before March 2015.

22       124.    Monsanto denies the allegations in paragraph 124.

23       125.    Monsanto denies the allegations in paragraph 125.

24       126.    In response to the allegations in paragraph 126, Monsanto denies that there is any

25   risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to

26   Roundup®-branded products and glyphosate.  The allegations in the second sentence of

27   paragraph 126 set forth conclusions of law for which no response is required.  Monsanto denies

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

1   the remaining allegations in paragraph 126.  All labeling of Roundup®-branded products has

2   been and remains EPA-approved and in compliance with all applicable laws and regulations.

3       127.    Monsanto denies the allegations in paragraph 127.

4       128.    Monsanto lacks information or knowledge sufficient to form a belief as to the

5   truth of the allegations in paragraph 128 concerning plaintiff's alleged use of Roundup®-branded

6   products and therefore denies those allegations.  Monsanto denies the remaining allegations in

7   paragraph 128.

8       129.    Monsanto denies the allegations in paragraph 129.

9       130.    Monsanto denies the allegations in paragraph 130.  All labeling of Roundup®-

10  branded products has been and remains EPA-approved and in compliance with all federal

11  requirements under FIFRA.

12      131.    Monsanto denies the allegations in paragraph 131.

13      132.    Monsanto denies the allegations in paragraph 132.

14      133.    In response to the allegations in paragraph 133, Monsanto demands that judgment

15  be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

16  prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

17  by law and such further and additional relief as this Court may deem just and proper.

18      134.    Monsanto incorporates by reference its responses to paragraphs 1 through 133 in

19  response to paragraph 134 of plaintiff's Complaint.

20      135.    Monsanto lacks information or knowledge sufficient to form a belief as to the

21  truth of the allegations in paragraph 135 regarding the specific products allegedly used by

22  plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore

23  denies the allegations in paragraph 135.

24      136.    The allegations in paragraph 136 set forth conclusions of law for which no

25  response is required.

26      137.    The allegations in paragraph 137 set forth conclusions of law for which no

27  response is required.

28      138.    Monsanto denies the allegations in paragraph 138.

1        139.    Monsanto denies the allegations in paragraph 139.

2        140.    Monsanto denies the allegations in paragraph 140.  All labeling of Roundup®-

3 branded products has been and remains EPA-approved and in compliance with all federal

4 requirements under FIFRA.

5        141.    Monsanto denies the allegations in paragraph 141.

6        142.    Monsanto denies the allegations in the first sentence of paragraph 142.  In

7 response to the allegations in the second sentence of paragraph 142, Monsanto denies that

8 Monsanto's promotional activities were not honest.  The remaining allegations in paragraph 142

9 set forth conclusions of law for which no response is required.

10       143.    Monsanto denies the allegations in paragraph 143.

11       144.    Monsanto denies the allegations in paragraph 144, including each of its subparts.

12       145.    Monsanto denies the allegations in paragraph 145.

13       146.    Monsanto lacks information or knowledge sufficient to form a belief as to the

14 truth of the allegations in paragraph 146 regarding plaintiff's knowledge and therefore Monsanto

15 denies those allegations.  Monsanto denies the remaining allegations in paragraph 146, including

16 that intended use and/or exposure to Roundup®-branded products causes any injuries.

17       147.    Monsanto denies the allegations in paragraph 147.

18       148.    Monsanto denies the allegations in paragraph 148.

19       149.    Monsanto denies the allegations in paragraph 149.

20       150.    Monsanto denies the allegations in paragraph 150.

21       151.    In response to the allegations in  paragraph 151, Monsanto demands that

22 judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed,

23 with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as

24 allowed by law and such further and additional relief as this Court may deem just and proper.

25       152.    Monsanto incorporates by reference its responses to paragraphs 1 through 151 in

26 response to paragraph 152 of plaintiff's Complaint.

27       153.    Monsanto denies the allegations in paragraph 153.  Additionally, the last sentence

28 in paragraph 153 sets forth a conclusion of law for which no response is required.

154.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 154 regarding plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 154 set forth conclusions of law for which no response is required.

155.    Monsanto denies the allegations in paragraph 155.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

156.    The allegations in paragraph 156 set forth conclusions of law for which no response is required.

157.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 157 and therefore denies those allegations.

158.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 158 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations.  The remaining allegations in paragraph 158 set forth conclusions of law for which no response is required.

159.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 159 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 159 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 159.

160.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 160 regarding plaintiff's claimed use of or exposure to Roundup®-branded products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in paragraph 160 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

161.    Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

1  allegations in paragraph 161 regarding plaintiff's knowledge about Roundup®-branded products

2  and therefore denies the remaining allegations in paragraph 161.

3       162.   Monsanto denies the allegations in paragraph 162.

4       163.   Monsanto denies the allegations in paragraph 163.

5       164.   Monsanto denies the allegations in paragraph 164.

6       165.   In response to the allegations in paragraph 165, Monsanto demands that judgment

7  be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with

8  prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

9  by law and such further and additional relief as this Court may deem just and proper.

10      166.   Monsanto incorporates by reference its responses to paragraphs 1 through 165 in

11 response to paragraph 166 of plaintiff's Complaint.  Monsanto denies the allegations in the

12 second sentence of paragraph 166 to the extent it encompasses all herbicides as vague and

13 ambiguous but Monsanto admits the allegations in this sentence to the extent it refers to

14 glyphosate based herbicides.  In response to the final sentence of paragraph 166, Monsanto

15 admits that plaintiff purports to bring a claim for breach of express warranty but denies any

16 liability as to that claim.  Monsanto denies the allegations that Roundup® branded products are

17 defective and unreasonably dangerous to consumers and therefore denies the remaining

18 allegations in paragraph 166.

19      167.   Paragraph 167 and its subparts set forth conclusions of law for which no response

20 is required.

21      168.   In response to the allegations in paragraph 168, Monsanto admits that it has sold

22 glyphosate based herbicides in accordance with their EPA-approved labeling.  Monsanto further

23 states that paragraph 168 sets forth conclusions of law for which no response is required.

24 Monsanto denies the remaining allegations in paragraph 168.

25      169.   Monsanto denies the allegations in the first and second sentence of paragraph 169.

26 All labeling of Roundup®-branded products has been and remains EPA-approved and in

27 compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence

28 of paragraph 169 sets forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-03860-VC

170.    The first sentence of paragraph 170 sets forth conclusions of law for which no response is required.   Monsanto denies the allegations in the final sentence of paragraph 170.

171.    Monsanto denies the allegations in paragraph 171 and each of its subparts.

172.    Monsanto states that the allegation in paragraph 172 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 172 and therefore denies those allegations.

173.    Monsanto denies the allegations in paragraph 173 to the extent that they allege that Monsanto made false or incomplete statements and representations concerning Roundup®. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 173 regarding plaintiff's knowledge and therefore denies those allegations.

174.    Monsanto denies the allegations in paragraph 174.

175.    In response to the allegations in paragraph 175, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

176.    There is no paragraph numbered "176" in the Complaint, and therefore  no response is required.

177.    Monsanto incorporates by reference its responses to paragraphs 1 through 175 in response to paragraph 177 of plaintiff's Complaint.

178.    Monsanto denies the allegations in paragraph 178.

179.    Monsanto denies the allegations in paragraph 179.

180.    Monsanto denies the allegations in paragraph 180.

181.    Monsanto denies the allegations in paragraph 181.

182.    The allegations in paragraph 182 set forth conclusions of law for which no response is required.

183.    The allegations in paragraph 183 set forth conclusions of law for which no response is required.

184.    In response to the allegations in paragraph 184, Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.    Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.    Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.    Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.     Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.     Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.     Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Pennsylvania Constitution, and/or other applicable state constitutions.

19.     Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Pennsylvania law and/or other applicable state laws.

20.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's contributory/comparative negligence.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's failure to mitigate damages.

23.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has received and/or will receive from collateral sources.

25.     If plaintiff has been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Monsanto hereby preserves any and all defenses under *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014).

29.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

**<u>JURY TRIAL DEMAND</u>**

Monsanto demands a jury trial on all issues so triable.

DATED:  July 12, 2019                                  Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (pro hac vice)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (pro hac vice)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY