**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Christopher Michael Hogue, on Behalf of Terry Hogue (Deceased) v. Monsanto Co.*, Case No. 3:19-cv-04117-VC | |

### <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint for Damages and Jury Demand ("the Complaint"), filed by Christopher Michael Hogue, on behalf of decedent Terry Hogue, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Although many paragraphs in the Complaint allege exposure or use of Monsanto products by "Plaintiff," Monsanto nevertheless responds to the allegations in those paragraphs as if they refer to plaintiff's decedent Terry Hogue.  Silence as to any allegations shall constitute a denial.

1.      Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiff.  Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in paragraph 2.

3.      Monsanto denies the allegations in paragraph 3.

4.      The allegations in paragraph 4 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in paragraph 4 based upon the allegations in plaintiff's Complaint.

5.      Monsanto admits the allegations in paragraph 5.

6.      The allegations in paragraph 6 set forth conclusions of law for which no response is required.

7.      The allegations in paragraph 7 set forth conclusions of law for which no response is required.

8.      The allegations paragraph 8 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 8 regarding where plaintiff lived or sustained her injuries.  In response to the allegations in the second sentence of paragraph 8, Monsanto denies certain events giving rise to plaintiff's claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiff's claims occurred and therefore denies those allegations.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.     Monsanto denies the allegations in paragraph 11.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-04117-VC

12.     The allegations in paragraph 12 comprise attorney characterizations and are accordingly denied.  Monsanto states that the Roundup®-branded products identified by plaintiff have a variety of separate and distinct uses and formulations.

13.     Monsanto admits the allegations in the first sentence of paragraph 13.  The remaining allegations in paragraph 13 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

14.     In response to the allegations in the first sentence of paragraph 14, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in the first sentence of paragraph 14.  In response to the allegations in the second sentence of paragraph 14, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  Monsanto states that the remaining allegations in the second sentence of paragraph 14 are vague and ambiguous and that it lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 14 and therefore denies those allegations.

15.     Monsanto admits the first sentence of paragraph 15.  Monsanto denies the allegations in the second sentence of paragraph 15 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the third sentence of paragraph 15 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

16.     In response to the allegations in paragraph 16, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 16.

17.     Monsanto admits the allegations in the first two sentences of paragraph 17 and admits that at all relevant times it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto denies the remaining allegations in paragraph 17.

18.     In response to the allegations in paragraph 18, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 18.

19.     Monsanto admits the allegations in paragraph 19.

20.     In response to the allegations in paragraph 20, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 20 set forth conclusions of law for which no response is required.

21.     The allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     In response to the allegations in paragraph 22, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States and are registered by the state of North Carolina for sale and distribution.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 23 is vague and

1  ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 23

2  set forth conclusions of law for which no response is required.

3       24.    Monsanto denies the allegations in paragraph 24 to the extent they suggest that

4  EPA only evaluates the safety of pesticide products on the date of their initial registration.

5  Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

6  products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

7  of the allegations in paragraph 24 regarding such pesticide products generally.  The remaining

8  allegations in paragraph 24 set forth conclusions of law for which no response is required.

9       25.    In response to the allegations in paragraph 25, Monsanto admits that EPA has

10  undertaken a regulatory review of glyphosate and further admits that EPA has not released its

11  final findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

12  Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

13  concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

14  humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

15  posted an October 2015 final report by its standing Cancer Assessment Review Committee

16  ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

17  to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP

18  issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

19  the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

20  humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth

21  of the remaining allegations in paragraph 25 and therefore denies those allegations.

22    [1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/

23  document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic

24  potential.
  [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,

25  U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final

26  Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.
  [3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of*

27  *Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/
document?D=EPA-HQ-OPP-2016-0385-0528.

28

26.     In response to the allegations in paragraph 26, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

1    Monsanto denies the remaining allegations in paragraph 26.

2         27.    In response to the allegations in paragraph 27, Monsanto admits that it – along

3    with a large number of other companies and governmental agencies – was defrauded by two

4    chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

5    testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct

6    toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any

7    glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the

8    allegations in paragraph 27 are intended to suggest that Monsanto was anything other than a

9    victim of this fraud, such allegations are denied.

10        28.    In response to the allegations in paragraph 28, Monsanto admits that Industrial

11   Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the

12   registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of

13   such product is based upon any fraudulent or false IBT studies.

14        29.    Monsanto denies the allegations in paragraph 29 to the extent they suggest that

15   EPA performed an inspection of IBT Laboratories solely or specifically in connection with

16   studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT

17   Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in

18   connection with services provided to a broad number of private and governmental entities and

19   that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

20   one of several pesticide manufacturers who had used IBT test results.  The audit found some

21   toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

22   Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

23   Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

24   based upon any invalid IBT studies.  To the extent that the allegations in paragraph 29 are

25   intended to suggest that Monsanto was anything other than a victim of this fraud, such

26   allegations also are denied.

27        30.    In response to the allegations in paragraph 30, Monsanto admits that three IBT

28   employees were convicted of the charge of fraud, but Monsanto denies that any of the

1   individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

2   herbicides.

3       31.     In response to the allegations in paragraph 31, Monsanto admits that it – along

4   with numerous other private companies – hired Craven Laboratories as an independent

5   laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further

6   admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

7   studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations

8   in paragraph 31 are intended to suggest that Monsanto was anything other than a victim of this

9   fraud, Monsanto denies those allegations.

10      32.     Monsanto denies the allegations in paragraph 32.

11      33.     In response to the allegations in paragraph 33, Monsanto admits that Roundup®-

12  branded products are highly valued by its customers because of their efficacy and safety.

13  Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

14  remaining allegations in paragraph 33 are vague and conclusory and comprise attorney

15  characterizations, and are accordingly denied.

16      34.     In response to the allegations in paragraph 34, Monsanto admits that, following

17  the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such

18  seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks

19  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

20  cited in paragraph 34 and accordingly denies those allegations.  The remaining allegations in

21  paragraph 34 are vague and conclusory and comprise attorney characterizations, and are

22  accordingly denied.

23      35.     In response to the allegations in paragraph 35, Monsanto admits that glyphosate is

24  one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

25  is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

26  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

27  cited in paragraph 35 and accordingly denies the same.  The remaining allegations in paragraph

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-04117-VC

1  35 are vague and conclusory and comprise attorney characterizations, and are accordingly

2  denied.

3  36.    In response to the allegations in paragraph 36, Monsanto admits that the New

4  York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

5  advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

6  admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

7  General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

8  the subparts purport to quote a document, the document speaks for itself and thus does not

9  require any further answer.  The remaining allegations in paragraph 36 are vague and conclusory

10  and comprise attorney characterizations and are accordingly denied.

11  37.    In response to the allegations in paragraph 37, Monsanto admits it entered into an

12  assurance of discontinuance with the New York Attorney General.  The assurance speaks for

13  itself and thus does not require any further answer.  The remaining allegations in paragraph 37

14  are vague and conclusory and comprise attorney characterizations and are accordingly denied.

15  38.    Monsanto denies the allegations in paragraph 38.

16  39.    In response to the allegations in paragraph 39, Monsanto admits that the French

17  court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

18  that it "left the soil clean," but denies the allegations in paragraph 39 to the extent that they

19  suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause

20  cancer.  Monsanto denies the remaining allegations in paragraph 39.

21  40.    In response to the allegations in paragraph 40, Monsanto denies that IARC

22  follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

23  or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

24  paragraph 40, which are not limited as of any specified date, and accordingly denies the same.

25  41.    In response to the allegations in paragraph 41, Monsanto admits that IARC sets

26  forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

27  Monsanto denies the remaining allegations in paragraph 41.

28

42.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 and therefore denies those allegations.

44.     Monsanto denies the allegations in paragraph 44 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

45.     In response to the allegations in paragraph 45, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the

allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

47.      The allegations in paragraph 47 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

48.      In response to the allegations in paragraph 48, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 48 are denied.

49.      In response to the allegations in paragraph 49, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

50.      Monsanto denies the allegations in paragraph 50.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

51.      In response to the allegations in paragraph 51, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

52.      In response to the allegations in paragraph 52, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-04117-VC

1   of the identified tumors.  Monsanto further states that regulatory agencies around the world have

2   reviewed the same animal studies and concluded that they do not provide evidence that

3   glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 52.

4   53.     In response to the allegations in paragraph 53, Monsanto admits that the IARC

5   working group purported to make these findings but denies that the cited studies provide any

6   reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or

7   persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 53.

8   54.     In response to the allegations in paragraph 54, Monsanto admits that the IARC

9   working group interpreted a selected number of experimental studies as evidence that glyphosate

10  can cause genotoxicity, but Monsanto denies that the working group reliably considered the full

11  body of scientific data on such alleged genotoxic endpoints and denies that the working group

12  reliably interpreted the studies that it selected for consideration.  Regulators around the world

13  repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining

14  allegations in paragraph 54.

15  55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC

16  working group purported to find such effects, but denies that there is any reliable scientific basis

17  for such conclusion.  Monsanto denies the remaining allegations in paragraph 55.

18  56.     In response to the allegations in paragraph 56, Monsanto admits that the working

19  group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but

20  denies that the working group characterized that study as supporting an association between

21  glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

22  between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

23  56.

24  57.     In response to the allegations in paragraph 57, Monsanto admits that EPA has a

25  technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

26  Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

27  should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

28  finding that glyphosate does not pose any cancer risk to humans.

58.     In response to the allegations in paragraph 58, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

59.     Monsanto states that the term "toxic" as used in paragraph 59 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 60.

61.     In response to the allegations in the first sentence of paragraph 61 Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent that the first sentence of paragraph 61 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 61. In response to the remaining allegations in paragraph 61, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 62 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 63 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies

support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 64.

65.     Monsanto denies the allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 67.

68.     Monsanto admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions.  Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 70.

71.    In response to the allegations in paragraph 71, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiff's expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 71.

72.    In response to the allegations in paragraph 72, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 72 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 72.

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-04117-VC

73.     The allegations in paragraph 73 set forth conclusions of law for which no response is required.

74.     The allegations in paragraph 74 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

75.     In response to the allegations in paragraph 75, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

76.     In response to the allegations in paragraph 76, Monsanto admits that plaintiff accurately quotes from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  The remaining allegations in paragraph 76 comprise attorney characterizations and are accordingly denied.

77.     In response to the allegations in paragraph 77, Monsanto admits that, on November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[6]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits

---

[5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

[6] *See* EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-04117-VC

1    that the European scientists who reached these determinations were acting independently of

2    Monsanto and were acting to protect the public.

3            78.    In response to the allegations in paragraph 78, Monsanto denies that "industry

4    groups" were afforded any ability to review the RAR beyond that afforded to the public

5    generally.  Monsanto otherwise admits the allegations in paragraph 78.

6            79.    Monsanto admits the allegations in paragraph 79.

7            80.    In response to the allegations in paragraph 80, Monsanto states that the cited

8    document speaks for itself and does not require a response.  Monsanto denies the allegations in

9    paragraph 80 to the extent that they purport to set forth all of the distinctions identified by EFSA

10    between its evaluation and the evaluation of the IARC working group.  Monsanto states that in

11    the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review

12    concluded that no significant increase in tumor incidence could be observed in any of the treated

13    groups of animals in the nine long term rat studies considered" and explains that "[a]s well as

14    reviewing a larger number of studies [than IARC], EFSA for example considered that

15    carcinogenic effects observed at high doses were unreliable as they could be related to general

16    toxicity."[7]  To the extent that paragraph 80 characterizes the meaning of the cited studies,

17    Monsanto denies the remaining allegations in paragraph 80.

18            81.    In response to the allegations in paragraph 81, Monsanto states that the cited

19    document speaks for itself and does not require a response.

20            82.    In response to the allegations in paragraph 82, Monsanto admits that EFSA set

21    acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those

22    which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these

23    exposure thresholds are based upon any alleged risk of carcinogenicity.

24            83.    In response to the allegations in paragraph 83, Monsanto admits that certain

25    individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 83

26

27    _____

[7] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default
/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

28

1    (hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his

2    letter are "independent" and "renowned international experts in the field."  Monsanto states that

3    Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the

4    glyphosate cancer litigation against Monsanto and that Monsanto lacks information or

5    knowledge sufficient to form a belief as to whether the other signatories were aware, before they

6    signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.

7    Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the

8    scientific findings reached by EFSA and by the BfR.

9          84.     In response to the allegations in paragraph 84, Monsanto admits that Dr. Portier

10   sent the letter identified in paragraph 84.  Monsanto denies that Dr. Portier or the other

11   signatories to his letter are "renowned international experts in the field."  Monsanto admits that

12   certain members of the IARC working group assigned to glyphosate signed on to the Portier

13   letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to

14   whether those individuals or the other signatories were aware at the time that Dr. Portier was

15   working as a retained expert for plaintiffs' counsel.

16         85.     In response to the allegations in paragraph 85, Monsanto states that the cited

17   Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

18   Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

19   glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

20   conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

21   carcinogenic hazard to humans."[8]  To the extent that paragraph 85 characterizes the meaning of

22   the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining

23   allegations in paragraph 85.

24         86.     In response to the allegations in paragraph 86, Monsanto admits that IARC

25   concluded that the human epidemiologic data provides only "limited evidence of

26

27   [8] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en
     /press/news/151112.

28

carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable confidence."[9]  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  In response to the remaining allegations in paragraph 86, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph 81 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11]  To the extent that paragraph 87 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

---

[9] http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php.

[10] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

carcinogenic hazard to humans."[12]  To the extent that paragraph 88 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 88.

89.     Monsanto admits the allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 90 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 91 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 92 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 93 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 93.

---

[12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

94.     In response to the allegations in paragraph 94, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 94 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 94.

95.     In response to the allegations in paragraph 95, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 95 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 95.

96.     In response to the allegations in paragraph 96, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 96 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 96.

97.     In response to the allegations in paragraph 97, Monsanto admits that the United States Food and Drug Administration ("FDA") has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 97, Monsanto states that the cited documents speak for themselves and do not require a response.

98.     In response to the allegations in the first sentence of paragraph 98, Monsanto admits that the U.S. Government Accountability Office ("GAO") issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to the remaining allegations in the first sentence of paragraph 98, Monsanto states that the cited documents speak for themselves and do not require a response. In response to the allegations in the second and third sentences of paragraph 98, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining

allegations in the second and third sentences of paragraph 98, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that the allegations in paragraph 98 characterize the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 98.

99.     In response to the allegations in paragraph 99, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 99, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 99 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 99.

100.     Monsanto admits the allegations in paragraph 100.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

101.     In response to the allegations in paragraph 101 Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

102.     In response to the allegations in paragraph 102, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 102.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

103.     In response to the allegations in paragraph 103, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 103 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 103.

104.     In response to the allegations in paragraph 104, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 104

characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 104.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

105.     Monsanto admits the allegations in paragraph 105.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

106.     Monsanto admits the allegations in paragraph 106.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

107.     Monsanto admits the allegations in paragraph 107.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

108.     In response to the allegations in paragraph 108, Monsanto admits that the European Union voted to extend the glyphosate license for five more years.  The remaining allegations in paragraph 108 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

109.     In response to the allegations in paragraph 109, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 109 suggests that this study was first published in 2018, Monsanto denies that allegation and states that this study was first published in 2017 (online publication).

110.     In response to the allegations in paragraph 110, Monsanto states that the cited document speaks for itself and does not require a response.

111.     In response to the allegations in paragraph 111, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that the allegations in paragraph 111 characterize the meaning of the cited study, Monsanto denies the allegations in paragraph 111 regarding acute myeloid leukemia.

112.     In response to the allegations in paragraph 112, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that the allegations in

paragraph 112 characterize the meaning of the cited study, Monsanto denies the allegations in paragraph 112.

113.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 113 and therefore denies those allegations.

114.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 114 and therefore denies those allegations.

115.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 115 and therefore denies those allegations.

116.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 116 and therefore denies those allegations.

117.    Monsanto denies that any exposure to Roundup®-branded products can cause acute myeloid leukemia and other serious illnesses and therefore denies those allegations in paragraph 117.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 117 and therefore denies those allegations.

118.    Monsanto denies the allegations in paragraph 118.

119.    Monsanto denies the allegations in paragraph 119.

120.    In response to the allegations in paragraph 120, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and denies that Roundup®-branded products or glyphosate are injurious to human health.

121.    In response to the allegations in paragraph 121, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health.  The remaining allegations in paragraph 121 set forth conclusions of law for which no response is required.

122.    In response to the allegations in paragraph 122, Monsanto denies that there is any risk of acute myeloid leukemia or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 122 and therefore denies those allegations.

123.     The allegations in paragraph 123 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 123.

124.     Monsanto denies the allegations in paragraph 124.

125.     Monsanto denies the allegations in paragraph 125

126.     The allegations in paragraph 126 set forth conclusions of law for which no response is required.

127.     Monsanto denies the allegations in paragraph 127.

128.     The allegations in paragraph 128 set forth conclusions of law for which no response is required.  To the extent that a response is required, Monsanto denies the allegations in paragraph 128.

129.     Monsanto incorporates by reference its responses to paragraphs 1 through 128 in response to paragraph 129 of plaintiff's Complaint.

130.     The allegations in paragraph 130 set forth conclusions of law for which no response is required.

131.     Monsanto denies the allegations in paragraph 131.

132.     Monsanto denies the allegations in paragraph 132, including each of its subparts.

133.     Monsanto denies the allegations in paragraph 133.

134.     Monsanto denies the allegations in paragraph 134.

135.     Monsanto denies the allegations in paragraph 135.

136.     Monsanto denies the allegations in paragraph 136, including each of its subparts.

137.     Monsanto denies the allegations in paragraph 137.

138.     Monsanto denies the allegations in paragraph 138.

139.     Monsanto denies the allegations in paragraph 139.

140.     Monsanto denies the allegations in paragraph 140.

141.     Monsanto denies the allegations in paragraph 141.

142.     Monsanto incorporates by reference its responses to paragraphs 1 through 141 in response to paragraph 142 of plaintiff's Complaint.

143.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 143 and therefore denies those allegations.

144.    Monsanto denies the allegations in paragraph 144.

145.    In response to the allegations in paragraph 145, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff's decedent used Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 145.

146.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 and therefore denies those allegations.

147.    Monsanto denies the allegations in paragraph 147.

148.    Monsanto denies the allegations in paragraph 148.

149.    Monsanto denies the allegations in paragraph 149.

150.    Monsanto denies the allegations in paragraph 150, including each of its subparts.

151.    Monsanto denies the allegations in paragraph 151.

152.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 152 concerning plaintiff's decedent's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 152, including that Roundup®-branded products have "dangerous characteristics."

153.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 153 and therefore denies those allegations.

154.    Monsanto denies the allegations in paragraph 154.

155.    The allegations in paragraph 155 set forth conclusions of law for which no response is required.

156.    Monsanto denies the allegations in paragraph 156.

157.    Monsanto denies the allegations in paragraph 157.

158.    Monsanto denies the allegations in paragraph 158.

159.    Monsanto denies the allegations in paragraph 159.

1    160.    Monsanto denies the allegations in paragraph 160.

2    161.    Monsanto denies the allegations in paragraph 161.

3    162.    Monsanto denies the allegations in paragraph 162.

4    163.    Monsanto denies the allegations in paragraph 163.

5    164.    Monsanto denies the allegations in paragraph 164.

6    165.    Monsanto denies the allegations in paragraph 165.

7    166.    Monsanto denies the allegations in paragraph 166.

8    167.    Monsanto denies the allegations in paragraph 167.

9    168.    Monsanto denies the allegations in paragraph 168.

10    169.    Monsanto denies the allegations in paragraph 169.

11    170.    Monsanto incorporates by reference its responses to paragraphs 1 through 169 in

12   response to paragraph 170 of plaintiff's Complaint.

13    171.    The allegations in paragraph 171 set forth conclusions of law for which no

14   response is required.

15    172.    Monsanto lacks information or knowledge sufficient to form a belief as to the

16   truth of the allegations in paragraph 172 and therefore denies those allegations.

17    173.    Monsanto denies the allegations in paragraph 173.  All labeling of Roundup®-

18   branded products has been and remains EPA-approved and in compliance with all federal

19   requirements under FIFRA.

20    174.    Monsanto denies the allegations in paragraph 174.

21    175.    Monsanto denies the allegations in paragraph 175.  All labeling of Roundup®-

22   branded products has been and remains EPA-approved and in compliance with all federal

23   requirements under FIFRA and North Carolina law.

24    176.    Monsanto denies the allegations in paragraph 176.  All labeling of Roundup®-

25   branded products has been and remains EPA-approved and in compliance with all federal

26   requirements under FIFRA.

27    177.    Monsanto denies the allegations in paragraph 177.

28

1    178.    Monsanto lacks information or knowledge sufficient to form a belief as to the

2  truth of the allegations in paragraph 178 regarding plaintiff's decedent's use history and

3  therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 178.

4    179.    The allegations in paragraph 179 set forth conclusions of law for which no

5  response is required.

6    180.    Monsanto denies the allegations in paragraph 180.

7    181.    Monsanto denies the allegations in paragraph 181.

8    182.    Monsanto denies the allegations in paragraph 182.

9    183.    Monsanto denies the allegations in paragraph 183.

10    184.    Monsanto denies the allegations in paragraph 184.

11    185.    Monsanto denies the allegations that Roundup®-branded products are defective

12  and accordingly denies the allegations in paragraph 185.

13    186.    The allegations in paragraph 186 set forth conclusions of law for which no

14  response is required.

15    187.    Monsanto lacks information or knowledge sufficient to form a belief as to the

16  truth of the allegations in paragraph 187 and therefore denies those allegations.

17    188.    Monsanto denies the allegations in paragraph 188.

18    189.    Monsanto denies the allegations in paragraph 189.

19    190.    Monsanto denies the allegations in paragraph 190.

20    191.    Monsanto denies the allegations in paragraph 191.

21    192.    Monsanto denies the allegations in paragraph 192.

22    193.    Monsanto denies the allegations in paragraph 193.

23    194.    Monsanto incorporates by reference its responses to paragraphs 1 through 193 in

24  response to paragraph 194 of plaintiff's Complaint.

25    195.    Monsanto denies the allegations in paragraph 195.  Additionally, the allegations

26  in the last sentence in paragraph 195 set forth conclusions of law for which no response is

27  required.

28

196.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 196 concerning the plaintiff's decedent's claimed use of Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 196 set forth conclusions of law for which no response is required.

197.    The allegations in paragraph 197 set forth conclusions of law for which no response is required.

198.    Monsanto denies the allegations in paragraph 198.

199.    The allegation in paragraph 199 regarding a purported implied warranty sets forth a conclusion of law for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 199 and therefore denies those allegations.

200.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 200 and therefore denies the allegations in paragraph 205.

201.    Monsanto denies the allegations in paragraph 201.

202.    Monsanto denies the allegations in paragraph 202.

203.    Monsanto denies the allegations in paragraph 203.

204.    Monsanto incorporates by references its responses to paragraphs 1 through 203 in response to paragraph 204 of plaintiff's Complaint.

205.    Monsanto denies the allegations in paragraph 205.

206.    Monsanto denies the allegations in paragraph 206.

207.    Monsanto denies the allegations in paragraph 207.

208.    Monsanto denies the allegations in paragraph 208.

209.    Monsanto denies the allegations in paragraph 209.

210.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 210 regarding plaintiff's decedent's actions, and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 210.

211.    Monsanto denies the allegations in paragraph 211.

212.     Monsanto denies the allegations in paragraph 212.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

213.     Monsanto denies the allegations in paragraph 213.

In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.     Venue in the Western District of North Carolina may be inconvenient.

3.     Plaintiff's claims are barred in whole because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.     Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.     Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law.

*See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

8.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.      Plaintiff's claims are barred, in whole or in part, because plaintiff's decedent's injuries, if any, were the result of conduct of plaintiff's decedent, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's decedent's pre-existing medical conditions.

12.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

13.      Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

14.      Plaintiff's decedent's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

15.      If plaintiff's decedent suffered injury or damages as alleged, which is denied, such injury or damage resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

16.     Monsanto had no legal relationship or privity with plaintiff and/or plaintiff's decedent and owed no duty to plaintiff and/or plaintiff's decedent by which liability could be attributed to it.

17.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff and/or plaintiff's decedent.  If any such warranties were made, which Monsanto specifically denies, then plaintiff and/or plaintiff's decedent failed to give notice of any breach thereof.

18.     Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19.     Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the North Carolina Constitution, the Washington Constitution, and/or other applicable state constitutions.

20.     Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under North Carolina law, Washington law, and/or other applicable state laws.

21.     Plaintiff's claims for punitive damages are barred and/or limited by operation of state and/or federal law, including Washington law and N.C. Gen. Stat. §§ 1D-15, 1D-25.

22.     Plaintiff's strict liability claims are barred, in whole or in part, by the N.C. Gen. Stat. § 99B-1.1.

23.     Plaintiff's common law claims are barred, in whole or part, by application of Wash. Rev. Code §§ 7.72.010-.060.

24.     Plaintiff's claims are barred in whole or in part by plaintiff's and/or plaintiff's decedent's contributory/comparative negligence.

25.     Plaintiff's claims are barred in whole or in part by plaintiff's and/or plaintiff's decedent's failure to mitigate damages.

26.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

27.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff and/or plaintiff's decedent received from collateral sources.

28.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

29.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

30.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

31.     Plaintiff has failed to allege fraud with sufficient particularity.

32.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.


DATED:  August 7, 2019                           Respectfully submitted,


                                                 /s/ Joe G. Hollingsworth
                                                 Joe G. Hollingsworth (*pro hac vice*)
                                                 (jhollingsworth@hollingsworthllp.com)
                                                 Eric G. Lasker (*pro hac vice*)
                                                 (elasker@hollingsworthllp.com)
                                                 HOLLINGSWORTH LLP
                                                 1350 I Street, N.W.
                                                 Washington, DC  20005
                                                 Telephone:  (202) 898-5800
                                                 Facsimile:   (202) 682-1639

                                                 *Attorneys for Defendant*
                                                 *MONSANTO COMPANY*