

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado and California*
Aimee.Wagstaff@AndrusWagstaff.com

7171 W. Alaska Drive
Lakewood, CO 80226
Office: (303) 376-6360
Fax: (303) 376-63614
Website: www.AndrusWagstaff.com

September 27, 2019

**FILED VIA ECF**
Honorable Vince Chhabria
United States District Court,
Northern District of California

      **RE:** *Case No: 3:16-cv-05658-VC, Emmanuel Giglio v. Monsanto Company*

To the Honorable Vince Chhabria:

      The Parties have reached an impasse with respect to a discovery dispute and submit this joint letter, filed pursuant to Paragraph 15 of the Court's Standing Order for Civil Cases.

## Plaintiff's Position

      Mr. Giglio's lawsuit against Monsanto is before this court as part of MDL 2741*: In Re Roundup Product Liability Litigation*. Pursuant to Pretrial Orders 150 and 171 (ECF Dkt. Nos 4132 & 4722), Monsanto served its expert disclosures on September 3, 2019.  *See* **Exhibit A**. Contrary to this Court's Orders, half of Monsanto's general causation experts are new experts and most of the disclosed experts (both general and case-specific) provide new general causation opinions not subjected to the previous 2-year Daubert proceeding[1]. Relying on the Court's previous orders and guidance, Mr. Giglio did not disclose any new general causation experts or opinions.  *See* **Exhibit B**.  During the meet and confer process, Monsanto's counsel refused to confirm that the original experts are unavailable; instead, claiming the Parties are free to designate new general causation experts and new general causation opinions.  The Court denied Monsanto's previous attempt to add new general causation expert and opinions, and should deny this attempt as well[2]. *See* PTO 81, ECF Dkt. No. 2775, Page 5, para 2.

      **A. Only Experts that Passed the MDL Phase 1 General Causation Test Should be Allowed to Offer General Causation Opinions.**

      Over Plaintiffs' objection, and at considerable expense, the Parties and this Court spent over two years discovering and testing the testimony, evidence, and opinions of the Parties' general

---

[1]. For the Court's convenience, Monsanto's original MDL Expert Disclosures are attached hereto as **Exhibit C**.

[2] While there may come a time when new general causation experts are necessary due to the volume of cases, now is not that time.  There has only been one MDL trial, and this is only the fourth case designation in the MDL.  Further, Monsanto has not asserted unavailability of its original exerts.  However, to the extent Monsanto is concerned over its experts' availability in the MDL moving forward, the MDL Plaintiffs renew their request to create video trial testimony of the original general causation experts to be played at all MDL trials.  That said, new general causation opinions should not be allowed.

causation experts. After each side presented their general causation experts at a week-long hearing, the Court issued a 68-page *Daubert* Order setting forth the admissible general causation testimony for this MDL. *See generally* Pretrial Order No. 45.

During the October 29, 2018 hearing, it became clear that Monsanto intended to eventually offer new general causation experts—even suggesting it may not call a single general causation expert from the general causation phase to the February 2019 trial. The Court rejected this proposal:

> [T]he answer to that question is basically no. You cannot add general causation experts. If there is an emergency-type situation, if Loralei Mucci has a medical emergency or, you know, something like that, and you want to seek permission to sub somebody in to provide, you know, substantially the same testimony, I will entertain it. I'm not saying I will grant it, but I will entertain it. But the basic answer is, no, I don't think it's appropriate, given everything we've been through already as a team, to be adding general causation experts.

Ex. I, Tr. Of Proceedings at 41:8-18 (Oct. 29, 2018). *Monsanto did not object* and Plaintiff relied upon and acted in accordance with such guidance by not disclosing new general causation experts or opinions. Instead, if Monsanto wants to mount a challenge to general causation at trial, then it must do so using its general causation experts and opinions proffered during the general causation stage of this MDL – an additional step created at the request of Monsanto. To allow Monsanto new general causation experts, who were not subjected to the *Daubert* phase of this MDL, would prejudice Plaintiffs and render the last two (plus) years meaningless. Even more, if Monsanto is allowed to substitute a general causation expert (to date, Monsanto has not offered any reason why its original general causation expert need to be substituted), then the substituted expert must provide substantially similar testimony to the expert they replace. Here, not only is Monsanto offering new causation experts, but those new experts are providing new opinions – both should be struck. While Plaintiff acknowledges the quandary Monsanto finds itself in, this is, in part, a problem of Monsanto's own creation borne from its insistence to bifurcate the MDL.

Additionally, Notwithstanding the Court's clear direction, Monsanto's case specific-experts offer a wide-range of new general causation opinions. This is improper and violates this Court's express ruling. It also undermines the last two years of work in this MDL. All of Monsanto's new "case specific" experts should be prohibited from offering any general causation opinion. Plaintiffs' request includes, but is not limited to, any general causation opinions proffered in response to Plaintiffs' general causation testimony.

### B. **Monsanto Should Not Be Allowed to Offer Any *New* General Causation Opinions.**

Separate and apart from Monsanto proffering new general causation *experts*, it also offers new general causation *opinions* that were not proffered during the general causation phase. These new general opinions should be excluded as well.

During the general causation phase, each of Plaintiffs' general causation experts examined all three pillars of cancer science—epidemiology, animal toxicology, and mechanism—and performed a comprehensive Bradford Hill analysis and conducted a weight of evidence analysis.

2

Monsanto, having seen this approach,[3] took a different one, electing to have its carefully-selected general causation experts focus on only one of the three pillars—epidemiology (Drs. Mucci & Rider), animal toxicology (Drs. Foster & Rosol), and mechanism (Dr. Goodman).  None of Monsanto's general causation experts considered all three areas of science and none performed—or was even willing to perform—a Bradford Hill analysis.  Similarly, none performed a weight of the evidence analysis. Monsanto's experts, therefore, did not offer the ultimate conclusion that Roundup® does not cause NHL.  Instead, they offered siloed opinions about each discipline—Drs. Mucci and Rider opined that that epidemiology did not support causation; Drs. Foster and Rosol opined that the animal toxicology did not support causation; and Dr. Goodman opined that Roundup® is neither genotoxic nor capable of inducing oxidative stress.   Now, Monsanto seeks to change its strategy midstream by changing its general causation opinions, thereby attempting to erase we spent on the bifurcated proceeding Monsanto itself requested.

## Conclusion

Monsanto's new general causation experts that Plaintiff moves to strike as violative of the MDL's phased proceeding include:

1. **Dr. Beau Bruce, M.D., Ph.D.; Dr. Christian Steidl, M.D.; and Dr. David Vearrier, M.D., M.P.H.** are all new general causation experts and seek to offer new general causation opinions on all three pillars of science.  In their Giglio Reports, they offer opinions that the epidemiological, toxicological, and mechanistic evidence considered together does not support a causal relationship between exposure to GBFs and NHL.   This is an entirely new general causation opinion, not just a new general causation expert.  It is improper and violates the phased discovery process.  To the extent this Court permits these experts to offer any general causation opinion at all, they should not be allowed to testify about any Bradford Hill or weight of evidence opinion because those general causation opinions were not offered during the general causation phase of this MDL. Instead, their new general causation opinions should be substantially similar to Monsanto's Phase 1 general causation experts. *See* Bruce Report - Giglio, **Exhibit D;** Steidel Report – Giglio, **Exhibit E**; and Vearrier Report – Giglio, **Exhibit F.**

2. **Dr. Thomas J. Rosol, DVM, Ph.D.** was disclosed during the MDL Phase 1 bifurcated proceedings, but now seeks to offer new general causation opinions regarding genotoxicity. *See* Rosol MDL Phase 1 Report, **Exhibit G**, compare to Rosol Report – Giglio, **Exhibit H**.

Plaintiff moves to strike all general causation opinions of Monsanto's "case-specific" experts as violative of the MDL's phased proceeding, including:

1. **Dr. Daniel Arber, M.D.** who offers a general causation opinion on the "body of epidemiology" and regulatory evidence.

---

[3] Plaintiffs served their general causation reports on May 1, 2017.  *See* ECF 78, PTO 5.  Monsanto's deadline to serve its expert reports was extended through July 31, 2017.  *See* ECF 322, PTO 24. Meaning, Monsanto had a 90-day notice that Plaintiffs' experts were considering more than one pillar of science and also conducting Bradford Hill and weight of evidence analyses.  Even so, Monsanto chose a different strategy with its experts.

3

2. **Dr. Alex LeBeau, Ph.D, M.P.H., C.I.H.,** who offers a general causation opinion on the body of epidemiology literature.

3. **Dr. Matthew Matasar, M.D.**, who is labeled "case specific" but very clearly seeks to offer general causation opinions on all three of the pillars of science. In his Giglio Report, Dr. Matasar offers an opinion that the epidemiological, toxicological, and mechanistic evidence considered together does not support a causal relationship between exposure to GBFs and NHL. This is an entirely new general causation opinion, not just a new general causation expert. It is improper and violates the phased discovery process. To the extent this Court permits Dr. Matasar to offer any general causation opinion, he should not be allowed to testify about any Bradford Hill or weight of evidence opinion because those general causation opinions were not offered during the general causation phase of this MDL.

Plaintiff requests a teleconference with the Court for guidance as several of these experts are set for depositions the first half of October 2019.

## Monsanto's Position

Through their current motion, Plaintiffs seek to limit Monsanto's defense to only the seven general causation experts that were disclosed in July 2017.[4] Nothing in this Court's earlier rulings requires such an absurd result. Even Plaintiffs concede that new general causation experts may be required in the future—a concession compelled by both the scope of this MDL and the fact that the scientific and regulatory landscape regarding Roundup, as well as Plaintiffs' theories in this litigation, continue to evolve. For the reasons stated below, Monsanto should be allowed to designate new general causation experts for remanded cases.

*First,* none of the Court's rulings as of July 2017 gave notice to any party that the general causation experts disclosed at that time would be the only ones allowed. To the contrary, PTO 7, which was entered to provide guidance on the "general-causation discovery phase," states as follows: "This Order ***shall not preclude the parties from designating additional experts who may offer opinions relating to general or specific causation if this MDL proceeds beyond the general-causation phase.***"[5] The order also stated that "the parties may challenge the admissibility of such later-designated expert testimony."[6] Those statements reflect the fact that the purpose of the bifurcated general causation phase was *not* to lock in a slate of general causation experts for the duration of the MDL litigation. Instead, the purpose of the general causation phase was to determine whether Plaintiffs could "put forward admissible evidence supporting their claim that glyphosate is capable of causing NHL at exposure levels humans might have experienced."[7] If they could not, then Monsanto would have been entitled to summary judgment and the MDL would

---

[4] *See* Pls.' Ex. C, Monsanto Company's Designation and Disclosure of Expert Witnesses Regarding General Causation (July 31, 2017).

[5] PTO 7 at 1, 8 (emphasis added).

[6] *Id*. at 8.

[7] *In re: Roundup Prods. Liab. Litig.*, 16-md-02741, 2018 WL 2268534, at *3 (N.D. Cal. July 10, 2018); *see also Manual for Complex Litigation (Fourth)* § 22.634 (2004) (recommending that general causation be addressed "early in the litigation" to avoid unnecessary litigation costs if plaintiffs cannot surpass that hurdle).

4

have concluded.[8]  Thus, in July 2017, Monsanto disclosed seven experts to offer opinions in the general causation phase with the understanding—consistent with PTO 7—that additional general causation experts could be disclosed if Plaintiffs survived the general causation phase.  To now limit Monsanto to those experts for every case on remand would be unfair, particularly where the science and the regulatory landscape, as well as Plaintiffs' theories, continue to evolve.

*Second*, Plaintiffs' position is patently unworkable.  When Monsanto disclosed its original seven general causation experts in July 2017, this MDL consisted of 122 filed cases involving 217 plaintiffs; as of September 2019, there are now 1,828 filed cases involving 1,980 plaintiffs.  Plaintiffs' position would have Monsanto limited to just those seven general causation experts for all remaining cases that are part of this MDL—some 1,706 more filed cases than existed in July 2017.  Even Plaintiffs concede that the "volume of cases" in the MDL may, at some undefined future time, require additional general causation experts.[9]  Contrary to Plaintiffs' position, now is the time to allow the disclosure of additional general causation expert witnesses, consistent with the purpose and intent of PTO 7.  At present, 19 plaintiffs from California and Nebraska are immediately implicated in Wave 1 cases.  And Plaintiffs' argument would presumably extend to Wave 2, as well as any other cases that are set for trial in the future.  In total, Plaintiffs would have Monsanto try scores of cases in states across the country using the same seven general causation experts that were disclosed in 2017.  As an initial matter, those seven experts surely did not anticipate when they were disclosed more than two years ago that they would be asked to take additional substantial time away from their jobs as doctors, scientists, and researchers to prepare for and testify in multiple cases across the country.  But even if the experts were willing to do so, it is still unclear whether it would be possible for those seven experts to testify in all of the remanded trials.

*Third*, Plaintiffs' position is based entirely on this Court's earlier rulings in *Hardeman*, which addressed a specific set of facts that are not at issue here.  Specifically, in *Hardeman*, the first trial in this MDL and one of the three initial cases subject to trial in this district, this Court concluded that Monsanto's specific causation experts could not "offer an analysis of the epidemiological literature to support an opinion that Roundup is not a risk factor for NHL."[10]  In so concluding, the Court reasoned that "[i]n October 2018, the Court stated, without objection, that only the experts whose opinions were put to the test at Phase 1 would be permitted to present opinions on general causation at trial."[11]  But the Court's October 2018 statement on its face applied to the three potential in-district trials being worked up and could not have conceivably applied to the remand cases because no remand plan existed at that time.[12]  In short, this Court's ruling in *Hardeman* only addressed whether specific causation experts can also offer general causation opinions at trial if those general causation opinions have not previously been subject to *Daubert* scrutiny.  That is not the case here.  Instead, Monsanto has designated general causation experts for the remand cases, and those experts—along with specific causation experts—will be subject to *Daubert* scrutiny by this Court.  According to PTO 171, both parties will have an

---

[8] *See In re: Roundup*, 2018 WL 2268534, at *3.
[9] *See supra* n. 2.
[10] PTO 81 at 5.
[11] *Id.*
[12] Indeed, the parties did not know that this Court would be deciding *Daubert* motions related to causation for remand cases until the Court issued its Tentative Remand Plan in May 2019.  *See* PTO 147.

Case 3:16-md-02741-VC   Document 6124   Filed 09/27/19   Page 6 of 8

opportunity to make *Daubert* challenges to experts for Wave 1 and Wave 2 plaintiffs. And nothing in that order suggests that those challenges are limited to specific causation experts.[13]

*Finally*, allowing new general causation experts for remand cases does not render the general causation phase "meaningless," as Plaintiffs suggest. As explained above, the purpose of that phase was to determine whether Plaintiffs could present any admissible evidence that Roundup can cause NHL because if not, the Court needn't go any further. In its decision on that threshold issue, the Court never indicated that the experts presented at that stage would be locked in for the remainder of the litigation.

Separately, Plaintiffs' attempt to limit the original seven general causation experts to their reports and testimony from the earlier general causation proceedings should also be rejected. Even with regard to *Hardeman*, this Court recognized that the experts' general causation opinions would evolve over time:

> I was assuming, just by the nature of this topic, there would have to be additional reliance on new materials, either materials that played a key role in the state court trial, that maybe didn't play a key role in our *Daubert* hearing, or in something that is newly published, or something like that, and that experts would supplement their disclosures.[14]

Thus, nothing in this Court's earlier rulings suggests that those experts' opinions are frozen in time, as Plaintiffs argue. Moreover, as explained above, PTO 171 allows Plaintiffs to assert *Daubert* challenges as to both the general and specific causation opinions offered in remand cases. The Court has provided the parties with clear guidance on those opinions that survive *Daubert* scrutiny and those that do not. And the Court has further made clear that the parties should not attempt to relitigate prior rulings without a new foundation to do so. With that guidance, Plaintiffs are free to challenge any new opinions of the original seven experts and there is no reason to limit the original seven experts to testimony and opinions given two years ago as part of an explicit, strategic gambit to preclude Monsanto from refining its defense of the litigation.

In sum, nothing in this Court's earlier rulings prevents Monsanto from designating new general causation experts in remand cases or limits the original seven experts to the opinions they gave two years ago.

Respectfully submitted,

By: */s/ Aimee H. Wagstaff*
Aimee H. Wagstaff, Esq.
Kathryn Forgie, Esq.
David J. Wool, Esq.
**ANDRUS WAGSTAFF, PC**
Aimee.wagstaff@andruswagstaff.com

---

[13] *See* PTO 171 (providing deadlines for *Daubert* motions without distinguishing between general and specific causation).
[14] 10/29/2018 CMC Tr. at 42:18-25 (**Exhibit I**).

        Kathryn.Forgie@andruswagstaff.com
        David.Wool@andruswagstaff.com
        7171 W. Alaska Drive
        Lakewood, CO 80226
        Tel: 303-376-6360

        John H. Gomez, Esq.
        Jessica T. Sizemore-Wetzel, Esq.
        **GOMEZ TRIAL ATTORNEYS**
        john@thegomezfirm.com
        jessica@thegomezfirm.com

        *Attorneys for Plaintiff*


        */s/ Brian L. Stekloff*_____

        Brian L. Stekloff (*pro hac vice*)
        (bstekloff@wilkinsonwalsh.com)
        Tamarra Matthews Johnson (*pro hac vice*)
        (tmatthewsjohnson@wilkinsonwalsh.com)
        Rakesh Kilaru (*pro hac vice*)
        (rkilaru@wilkinsonwalsh.com)
        WILKINSON WALSH + ESKOVITZ LLP
        2001 M St. NW, 10th Floor
        Washington, DC 20036
        Tel: 202-847-4030
        Fax: 202-847-4005

        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 27th day of September 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Aimee H. Wagstaff*_____
