

2001 M STREET, NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
—
A LIMITED LIABILITY PARTNERSHIP

September 27, 2019

**VIA ECF**

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re Roundup Prods. Liab. Litig.*, **No. 16-md-02741-VC**; *Giglio v. Monsanto*, **No. 16-cv-5658**

Dear Judge Chhabria:

When the Court granted the Parties second amended joint request to continue the Wave 1 deadlines (See, PTO 171, ECF Dkt. No. 4722), the Court ordered that the *Giglio* case remain on the original PTO 150 deadlines. For the reasons set forth below, Monsanto renews its motion to move Mr. Giglio's case into the group of Wave 1 cases, and Mr. Giglio opposes.

**Monsanto's Position**

The Court ordered that the *Giglio* case—a federal case filed in California that would otherwise be governed by the Wave 1 schedule established by PTO 171—proceed on an accelerated schedule based on the understanding that Mr. Giglio was near death. Thankfully, we now know that Mr. Giglio's NHL is in complete remission; indeed, a very recent PET scan confirmed that he is "disease free." Given the attendant benefits of handling all of the Wave 1 cases on a single schedule as set forth in PTO 171, and in light of the fact that there is no current need to expedite the case, Monsanto respectfully requests that the *Giglio* case rejoin other plaintiffs' cases on the Wave 1 remand track in PTO 171.

The current accelerated treatment of the *Giglio* case originates from plaintiff's repeated efforts to secure an expedited trial schedule based on Mr. Giglio's poor health. These motions characterized Mr. Giglio as terminal. *See, e.g.*, ECF 2185 (Nov. 16, 2018) (explaining that Mr. Giglio was "no longer on any therapy" and that "his prognosis for survival [was] '**substantially** less than 6 months,'" citing a declaration from Mr. Giglio's oncologist, Dr. Charles Redfern) (emphasis in original); *Giglio v. Monsanto*, 16-cv-05658, ECF 72-1, at 1-2 (Jan. 25, 2019) (stating that "Mr. Giglio is dying. He suffers from untreatable Diffuse Large B-Cell Non-Hodgkin's Lymphoma" and that "since November 15, Mr. Giglio's health has only continued to deteriorate, and his prognosis has not improved. If discovery does not commence, the odds that Mr. Giglio will survive to see his trial are almost nonexistent."); *Giglio v. Monsanto*, 16-cv-05658, ECF 75,

at 1-2 (Apr, 15, 2019) (stating that "Mr. Giglio is dying from non-Hodgkin's lymphoma" and describing Mr. Giglio's life expectancy as "measured in months, not years," requesting "a trial date so that he can have his day in court before he dies."). The Court ordered that the parties conduct a preservation deposition of Mr. Giglio, which has since occurred, but otherwise declined to order an expedited trial.

When the Court granted the parties joint request to adjust the Wave 1 schedule set forth in PTO 150, it accepted the plaintiffs' request to keep the *Giglio* case subject to the earlier schedule in the original PTO 150 in light of the then-understood terminal condition of Mr. Giglio. PTO 171. Keeping *Giglio* on the original PTO 150 schedule resulted in Mr. Giglio's deadlines being roughly two months ahead of the other Wave 1 remand cases.

It has now become clear, however, that the foundation for the Court's decision to separate the *Giglio* case from the other similarly situated Wave 1 cases no longer exists. As noted above, Mr. Giglio's condition has made a remarkable turnaround. This spring, Mr. Giglio received treatment with chimeric antigen receptor T cell therapy ("CAR-T therapy"), and Mr. Giglio's treating physicians have stated that his NHL is now likely in complete remission. Both the oncologist who wrote the earlier declaration, Dr. Redfern, as well as the oncologist who administered the therapy, Dr. Costello, confirm the positive results of this therapy.[1] Mr. Giglio's PET scan now shows that there is "no evidence of lymphoma in his body"[2] and that he is "disease free."[3] As recently as August 27, 2019, his primary care physician described him as "stable,"[4] and Mr. Giglio himself testified at a supplemental deposition on August 29, 2019 that he has been told "there's no new cancer activity in [his] lymph nodes."[5]

In light of Mr. Giglio's dramatically improved health, Mr. Giglio's likelihood of surviving until a 2020 trial is not meaningfully different from the prognosis for the other Wave 1 remand plaintiffs. Plaintiff's counsel suggests, without support, that Mr. Giglio is "in grave danger of relapse." Nothing in Mr. Giglio's records, however, indicates that he is at imminent risk of relapse, and Plaintiff's counsel concedes that he is "currently doing better." There is no evidence that Mr. Giglio faces a risk of relapse that is materially different from the risk facing any patient recently treated for NHL (which is the case for multiple Wave 1 remand plaintiffs). As such, the medical evidence no longer warrants expediting his case even beyond the rapid schedule set forth in PTO 171 for all of the other similarly situated cases.

In support of the position that *Giglio* should proceed on an even more accelerated pace, Plaintiff's counsel argues that the case is needed to serve as a barometer for *Daubert* challenges. That argument is difficult to understand because there is no basis to distinguish *Giglio* from the other Wave 1 remand cases on this score. Monsanto fully appreciates the Court's intention to stand by its original *Daubert* rulings and the Court's admonition that Monsanto's *Daubert*

---

[1] 7/11/19 Caitlin Costello Dep. Tr. (Ex. 1) 65:12-66:2; 6/20/19 Charles Redfern Dep. Tr. (Ex. 2) 52:25-53:5; Confidential-Giglio-EGiglio-OASD-000268 (Ex. 3) (August 20, 2019 appointment note from Mr. Giglio's oncologist, Dr. Charles Redfern, opining that "Mr. Giglio is in probable CR [complete remission] after CAR-T therapy for his aggressive and refractory lymphoma. Continue routine [follow-up,] off [treatment] now.").
[2] Ex. 1 at 61:7-15.
[3] Confidential-Giglio-EGiglio-SharpCC-000596–597 (Ex. 4) (August 27, 2019 appointment note from Mr. Giglio's primary care physician, Dr. Kenneth Warm, describing Mr. Giglio as "stable" and noting that his recent PET "scan was disease free.").
[4] Ex. 4 at Confidential-Giglio-EGiglio-SharpCC-000596.
[5] 8/29/19 Suppl. Emmanuel Richard Giglio Dep. Tr. (Ex. 5) 59:8-14.

arguments will be preserved without relitigating issues the Court has already decided. But that admonition applies equally to the remainder of the Wave 1 remand cases, and it makes the most sense to address these issues for all of these cases once and on the same schedule.

Indeed, returning *Giglio* to the PTO 171 schedule serves the interests of equity and efficiency that form the very reasons for coordinated pretrial proceedings in this MDL, particularly with respect to *Daubert* challenges. Common questions of law across the Wave 1 cases which threaten to arise first in *Giglio,* apply equally to all Wave 1 cases. Indeed, the Court already has an example before it, as plaintiffs' counsel in *Giglio* has sought to strike any new general causation experts or opinions offered by Monsanto while noting that they will raise the same challenge down the road in other Wave 1 cases and presumably Wave 2 cases as well, given their explicit desire to freeze the status of experts as of two years ago in an effort to preclude Monsanto from refining its defense.[6]

The Court can best weigh these types of broadly applicable case management decisions when issues are raised jointly across cases on the same timeline. The best way to achieve that goal here is to return *Giglio* to the Wave 1 remand schedule outlined in PTO 171—a modest schedule adjustment that will not unduly prejudice Mr. Giglio given his improved health. Moreover, returning *Giglio* to the PTO 171 schedule allows the Wave 1 remanded cases to proceed to trial in the transferor courts on a similar timeline rather than allowing Plaintiff's counsel to seek to expedite a single trial of its choosing. Monsanto therefore respectfully requests that the Court return *Giglio* to the Wave 1 remand pool.

### Plaintiff's Position

Monsanto's latest request to block Mr. Giglio's day in court is based, almost entirely, on its view that Mr. Giglio's health has "dramatically improved." While that is true, *in part*, as set forth below, Mr. Giglio remains in grave danger of relapse. However, regardless of whether Mr. Giglio's death is imminent or not, as the Court has mentioned numerous times, the Giglio case should act as a barometer of Monsanto's "reasonableness" with respect to its *Daubert* challenges. For that reason alone, the Giglio case should stay on PTO 150 deadlines.

### A. Because of his experimental cancer treatment (CART-T), Mr. Giglio's risk of recurrence is significant

Mr. Giglio was diagnosed with stage IV diffuse large B-cell lymphoma ("DLBCL") in October 2014. He underwent six cycles of CHOP-Rituxan chemotherapy between October 2014 and February 2015 and achieved radiologic remission. The chemo didn't work and in early 2018, the cancer returned. He then underwent another three rounds of chemotherapy with the goal of reducing the disease enough for a bone marrow transplant. Unfortunately, chemotherapy failed to reduce the disease enough for the transplant. In July 2018, he began yet another course of chemotherapy called R-GemOx, which again failed to reduce the disease burden enough for a bone marrow transplant. Due to the fact that his aggressive lymphoma had not gone into remission with second-line therapy, his treating oncologist, Dr. Redfern gave him a prognosis of about six months in October 2018.

Meanwhile, desperate to live, Mr. Giglio and his physicians began to discuss experimental treatment options and clinical trials. At that time, a cutting-edge experimental treatment option

---

[6] *See* 9/27/19 joint letter brief regarding new general causation testimony.

called chimeric antigen receptor-T cell therapy ("CAR-T") was presented to Mr. Giglio. CAR-T had recently been approved as a treatment for individuals with recurrent B-cell lymphomas following traditional chemotherapy regimens.[7] Mr. Giglio underwent lympho-depleting chemotherapy and CAR-T treatment in March – April 2019. In May 2019, Mr. Giglio was found to be in radiologic remission.

CAR-T therapy is brand new and data does not exist for long term prognosis.[8] Accordingly, Mr. Giglio's treating physicians are unable to opine on his long-term prognosis.[9] However, the published medical literature suggests the median duration of time before recurrence is 11 months[10] - which, if applied to Mr. Giglio, means April 2020. Mr. Giglio's treating oncologist places the likelihood he will have a recurrence of his lymphoma at approximately 50%.[11] He believes there is still a chance Mr. Giglio will not survive past March of 2020.[12]

Like long-term prognosis, the data regarding long term side effects of CAR-T is also not fully understood. It is well documented that CAR-T carries a high risk of neurotoxicity.[13] One of the most common neurological symptoms associated with CAR-T is generalized encephalopathy which often causes confusion, delirium, cognitive and memory impairment, and mental status changes.[14]

While Mr. Giglio is currently doing better, he still has a significant chance of relapse. Given the likelihood of neurologic damage and lack of information concerning Mr. Giglio's long-term prognosis, it would be a travesty to take him out of his current spot. His substantial risk of relapse leaves him with a different prognosis from that of the other Wave 1 remand plaintiffs and the expedited schedule should remain.

### B. The work on *Giglio* is substantially completed and the matter is on track for trial

Further, removing the *Giglio* matter from its current track would be of limited utility as much of the work on the case has already been completed. Simply put, even if Mr. Giglio's cancer had been eliminated to an absolute certainly with no possibility of relapse (which is not the case), there is nothing to be gained by removing Mr. Giglio from his current track.

Many of the deadlines under PTO 150 have already passed. The remainder are on track to be completed. The plaintiff fact sheets and medical records have been exchanged. Plaintiff and his treating physicians have been deposed, including his primary care provider, medical oncologist, and his oncologist who completed his CAR-T therapy.

Both Plaintiff and Monsanto have exchanged their expert reports as outlined in the PTO. Plaintiff's experts' depositions are complete. Monsanto's experts have either been deposed or are

---

[7] Ex. 1 at 49:1-5.
[8] Ex. 1 at 49:20-50:4
[9] Ex. 1 at 69:20-23; Ex. 2 at 43:3-9.
[10] Ex. 1 at 68:22-69:19; Frederick L. Locke, et al., *Long-term safety and activity of axicabtagene ciloleucel in refractory large B-cell lymphoma (ZUMA-1): a single arm, multicenter, phase 1-2 trial*, 20 LANCET ONCOLOGY 31, 36 (2019) (Ex. 6).
[11] Ex. 2 at 79:14-25.
[12] Ex. 2 at 43:10-12.
[13] See, e.g., Daniel B. Rubin, et al., *Neurological toxicities associated with chimeric antigen receptor T-cell therapy,* 142 BRAIN 1334-1348 (2019) (Ex. 7); Juliane Gust, et al., *Neurotoxicity Associated with CD19-Targeted CAR-T Cell Therapies*, 32 CNS DRUGS 1091-1101 (2018) (Ex. 8).
[14] Ex. 7 at 1338.

on calendar and confirmed. The *Giglio* matter has proceeded along the original schedule without issue.

This case is on track for trial and further delays are unnecessary. There is no prejudice to Monsanto by continuing on course. Conversely, staying on course will benefit Mr. Giglio and the resolution of the litigation on the whole. At 67 years old with significant health risks, Plaintiff would be prejudiced by further unnecessary delays for no discernable benefit. Reasonableness mandates that *Giglio* proceed on course and Plaintiff respectfully request this Court deny Defendant Monsanto's request to move the *Giglio* matter to the scheduling order outlined under PTO 171.

Respectfully submitted,

/s/ Brian L. Stekloff_____

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

/s/ Aimee H. Wagstaff_____

Aimee H. Wagstaff (SBN 278480)
(aimee.wagstaff@andruswagstaff.com)
ANDRUS WAGSTAFF, PC
7171 W. Alaska Drive
Lakewood, CO 80226
Tel.: 303-376-6360
Fax.: 303-376-6361

Cc: Counsel of Record (via ECF)

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this 27th day of September 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                /s/ Brian L. Stekloff_____