**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Patrick S. Haggerty and Phyllis N. Haggerty v. Monsanto Co.*,<br>Case No. 3:19-cv-05594-VC | |

### MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Patrick S. Haggerty and Phyllis N. Haggerty's Complaint ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1, Monsanto lacks information or knowledge to form a belief as to the truth of the allegations regarding plaintiff's residency and use Roundup®-branded products and therefore denies those allegations.  Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability as to that claim.

2.      In response to the allegations in the first sentence of paragraph 2, Monsanto lacks information or knowledge to form a belief as to the truth of the allegations regarding plaintiff's use Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in the first sentence of paragraph 2.  Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 2 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.  Monsanto denies the remaining allegations in paragraph 2.

3.      Monsanto denies the allegations in paragraph 3.

4.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 4 and therefore denies those allegations.  Monsanto denies the last sentence of paragraph 4.

5.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations..

6.      Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses and therefore denies those allegations in paragraph 4.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

7.      The allegations in the first, second, and last sentences of paragraph 7 set forth conclusions of law for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 7

and therefore denies those allegations.  Monsanto admits that it is a Delaware corporation, that its headquarters and principal place of business are in St. Louis County, Missouri, and that plaintiffs seek to recover in excess of $75,000, exclusive of interests and costs.  Monsanto denies the remaining allegations in paragraph 7.

8. The allegations in the first sentence of paragraph 8 set forth conclusions of law for which no response is required.  Monsanto admits that it does business in Missouri.  Monsanto denies the remaining allegations in paragraph 8.

9. In response to the allegations in the first sentence of paragraph 9, Monsanto denies certain events giving rise to plaintiffs' claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiffs' claims occurred and therefore denies those allegations. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 9 regarding plaintiffs' awareness and therefore denies those allegations.  The remaining allegations in paragraph 9 set forth conclusions of law for which no response is required.

10. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12. In response to the allegations in paragraph 12, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that EPA repeatedly has concluded, pursuant to FIFRA, that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that the allegations in the first and second sentences of paragraph 12 allege that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.  Monsanto denies the remaining

1    allegations in the first and second sentences of paragraph 12.  Monsanto denies the allegations in

2    the last sentence of paragraph 12.

3         13.    In response to the allegations in the first sentence of paragraph 13, Monsanto

4    admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The

5    remaining allegations in the first sentence of paragraph 13 are vague and ambiguous and

6    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

7    remaining allegations in the first sentence of paragraph 13 and therefore denies those allegations.

8    Monsanto admits the allegations in the second sentence of paragraph 13.  Monsanto denies the

9    allegations in the third sentence of paragraph 13 because the impact of glyphosate on treated

10   plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto

11   denies the allegations in the final sentence of paragraph 13 to the extent that it suggests that

12   glyphosate is present in any plants at anything other than *de minimis* amounts well within

13   regulatory safety levels, as determined by the EPA.

14        14.    Monsanto admits the allegations in the first sentence of paragraph 14.  Monsanto

15   denies the remaining allegations in paragraph 14.

16        15.    Monsanto denies the allegations in paragraph 15.

17        16.    Monsanto denies the allegations in paragraph 16.

18        17.    Monsanto denies the allegations in paragraph 17.

19        18.    In response to the allegations in paragraph 18, Monsanto admits that the World

20   Health Organization's International Agency for Research on Cancer ("IARC") issued a

21   monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate

22   under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer

23   hazard assessment around the world or that IARC based its evaluation on a complete or accurate

24   assessment of the scientific research regarding glyphosate.  Monsanto denies the remaining

25   allegations in paragraph 18.

26        19.    The allegations in paragraph 18 set forth conclusions of law for which no

27   response is required.

28

20.     Monsanto admits the allegations in the first sentence of paragraph 20.  Monsanto states that the allegations in the second sentence of paragraph 20 are vague and ambiguous, and therefore Monsanto denies those allegations.  Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 20 set forth conclusions of law for which no response is required.

21.     In response to the allegations in paragraph 21, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     The allegations in paragraph 22 set forth conclusions of law for which no response is required.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety.  The remaining allegations in paragraph 23 set forth conclusions of law for which no response is required.

24.     Monsanto denies the allegations in paragraph 24 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration.  The remaining allegations in the first, second, third, fourth, and fifth sentences of paragraph 23 set forth conclusions of law for which no response is required.  In response to the remaining allegations in paragraph 24, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.

1    Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or

2    false IBT studies.  Monsanto admits that three managers in IBT's toxicology department were

3    convicted of the charge of fraud, but denies that any of the individuals were convicted based

4    upon studies conducted on glyphosate or glyphosate-based herbicides.  Monsanto denies the

5    remaining allegations in paragraph 24.

6         25.    In response to the allegations in the first, second, third, and fourth sentences of

7    paragraph 25, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and

8    further admits that EPA has not released its findings.  Monsanto states, however, that:  (a) in

9    September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of

10   glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the

11   descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk

12   assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing

13   Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing

14   classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further

15   states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of

16   glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is

17   for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or

18   knowledge sufficient to form a belief as to the truth of the remaining allegations in the first,

19   second, third, and fourth sentences of paragraph 25 and therefore denies these allegations.  In

20

21   [1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic
     Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/
22   document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in
     anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic
23   potential.

24   [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
     U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the
25   Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
     Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

26   [3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of
27   Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/
     document?D=EPA-HQ-OPP-2016-0385-0528.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-05594-VC

response to the allegations in the last sentence of paragraph 25, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  The remaining allegations in the last sentence of paragraph 25 comprise attorney characterizations and are accordingly denied.

26.     In response to the allegations in paragraph 26, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and therefore denies those allegations.

27.     Monsanto denies the allegations in paragraph 27.

28.     In response to the allegations in paragraph 28, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 28.

29.     In response to the allegations in paragraph 29, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto admits that Industrial Bio-Test Laboratories ("IBT") was hired to conduct studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

30.     Monsanto denies the allegations in paragraph 30 to the extent they suggest that FDA performed an inspection of IBT laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 29 are

1    intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

2    denies such allegations.  Monsanto admits that three managers in IBT's toxicology department

3    were convicted of the charge of fraud, but denies that any of the individuals were convicted

4    based upon studies conducted on glyphosate or glyphosate-based herbicides.

5         31.     In response to the allegations in the first and second sentences of paragraph 31,

6    Monsanto admits that it – along with numerous other private companies – hired Craven

7    Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural

8    products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a

9    result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To

10   the extent that the allegations in the first and second sentences of paragraph 30 are intended to

11   suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such

12   allegations.  Monsanto admits that it has stated, and continues to state, that Roundup®-branded

13   products are safe when used in accordance with the products' labeling.  All labeling of

14   Roundup®-branded products has been and remains EPA-approved and in compliance with all

15   federal requirements under FIFRA.  Monsanto denies the remaining allegations in paragraph 31.

16        32.     The allegations in the first sentence of paragraph 32 are vague and conclusory and

17   comprise attorney characterizations, and are accordingly denied.  Monsanto denies the remaining

18   allegations in paragraph 32.

19        33.     The allegations in the first sentence of paragraph 33 are vague and conclusory and

20   comprise attorney characterizations, and are accordingly denied.  Monsanto lacks information or

21   knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of

22   paragraph 33 and therefore denies those allegations.

23        34.     The allegations in paragraph 34 are vague and conclusory and comprise attorney

24   characterizations, and are accordingly denied.

25        35.     In response to the allegations in paragraph 35, Monsanto lacks information or

26   knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used

27   Roundup®-branded products and therefore denies those allegations.  Monsanto admits that,

28   following the development of Roundup® Ready seeds, it began to sell them in the 1990's and

that such seeds are now widely used by farmers in the United States and worldwide. The remaining allegations in the first-numbered paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

36.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used Roundup®-branded products in the first sentence of paragraph 36 and therefore denies those allegations. Monsanto denies the allegations in the last sentence of paragraph 36. The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     In response to the allegations in paragraph 37, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup® products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. Monsanto denies the remaining allegations in paragraph 37.

38.     In response to the allegations in paragraph 38, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 38 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

39.     Monsanto denies the allegations in the first sentence of paragraph 39. Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 39 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

40.     Monsanto denies the allegations in paragraph 40.

- 10 -

41.     Monsanto denies the allegations in the first sentence of paragraph 41.  Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 41 to the extent they suggest that this ruling was in any way related to plaintiffs' claims here that glyphosate can cause cancer.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 41 regarding plaintiffs' knowledge and therefore Monsanto denies those allegations.  The remaining allegations in paragraph 41 are vague, ambiguous, and conclusory and comprise attorney characterizations and are accordingly denied.

42.     Monsanto denies the allegations in the first sentence of paragraph 42.  In response to the allegations in the second sentence of paragraph 42, Monsanto admits that IARC is a subgroup of the WHO.  The remaining allegations in paragraph 42 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

43.     In response to the allegations in paragraph 43, Monsanto states that the cited document speaks for itself and does not require a response.

44.     In response to the allegations in the first sentence of paragraph 44, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.  Monsanto denies the allegations in the second and third sentences of paragraph 44.In response to the allegations in the fourth sentence of paragraph 44, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

45.     Monsanto denies the allegations in paragraph 45 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

46.     In response to the allegations in the first and second sentences of paragraph 46, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.   In response to the remaining allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the remaining allegations in paragraph 46 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

47.     In response to the allegations in paragraph 47, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 47 regarding plaintiff's knowledge and therefore Monsanto denies those allegations.

48.     In response to the allegations in paragraph 48, Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 48.

- 12 -

49.      In response to the allegations in paragraph 49, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the allegations in paragraph 49 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.  To the extent that the allegations in the final sentence of paragraph 49 mean that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations.

50.      In response to the allegations in paragraph 50, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

51.      In response to the allegations in the first sentence of paragraph 51, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  In response to the allegations in the second sentence of paragraph 51, Monsanto states that the cited document speaks for itself and does not require a response.  In response to the allegations in the final sentence of paragraph 51, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 51.

52.      In response to the allegations in paragraph 52, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-05594-VC

reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.

53.     In response to the allegations in paragraph 53, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

55.     In response to the allegations in the first and second sentences of paragraph 55, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine.  Monsanto denies the remaining allegations in the first and second sentences of paragraph 55.  Monsanto admits that it has in the past promoted, and continues to promote, Roundup®-branded herbicides as safe when used in accordance with the products' labeling.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  The allegations in the fourth sentence of paragraph 55 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.  In response to the allegations in the fifth and sixth sentences of paragraph 55, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that allegations in the fifth and sixth sentences of paragraph 55 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited study supports the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in the fifth and sixth sentences of paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies

the allegations in the first and fourth sentences of paragraph 56.  Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  The remaining allegations in paragraph 56 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

57. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 57 and therefore denies those allegations.

58. In response to the allegations in paragraph 58, Monsanto denies that exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup®-branded products was injurious to plaintiff's health.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 58.

59. Monsanto denies the allegations in paragraph 59 and each of its subparts.

60. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 60.  Monsanto denies the allegations in the third and fifth sentences of paragraph 60.  The remaining allegations in paragraph 60 set forth conclusions of law for which no response is required

61. In response to the allegations in paragraph 61, Monsanto denies that Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup®-branded products was injurious to plaintiff's health or the health of others.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 and therefore denies those allegations.

62. The allegations in the first sentence of paragraph 62 set forth conclusions of law for which no response is required.  Monsanto denies the allegations in the second and third sentences of paragraph 62.

63. Monsanto denies the allegations in paragraph 63.

64.    Monsanto incorporates by reference its responses to paragraphs 1 through 63 in response to paragraph 64 of plaintiffs' Complaint.

65.    In response to the allegations in paragraph 65, Monsanto denies that it violated West Virginia or federal law and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 65 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies all such allegations.

66.    In response to the allegations in paragraph 66, Monsanto denies that it violated West Virginia, Missouri or federal laws or regulations and states that it complied with all applicable law regarding Roundup®-branded products.  The remaining allegations in paragraph 66 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits federal law specifically prohibits the distribution of a misbranded herbicide.  Monsanto denies the remaining allegations in paragraph 66.

67.    Monsanto incorporates by reference its responses to paragraphs 1 through 66 in response to paragraph 67 of plaintiffs' Complaint.

68.    Monsanto denies the first sentence of paragraph 68.  The remaining allegations in paragraph 68 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 68 and therefore denies those allegations.

69.    In response to the allegations in paragraph 69, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiffs used Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 69.

70.    Monsanto denies the allegations in the first sentence of paragraph 70.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.    Monsanto denies the allegations in paragraph 71.

72.    Monsanto denies the allegations in paragraph 72 and each of its subparts.

73.     In response to the allegations in the first sentence of paragraph 73, Monsanto denies that Roundup®-branded products have "dangerous characteristics."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 73 and therefore denies those allegations.

74.     Monsanto denies the allegations in paragraph 74.

75.     Monsanto denies the allegations in paragraph 75.

76.     Monsanto denies the allegations in paragraph 76.

77.     Monsanto denies the allegations in paragraph 77.

78.     Monsanto denies the allegations in paragraph 78.

79.     Monsanto denies the allegations in paragraph 79.

80.     Monsanto denies the allegations in paragraph 80.

81.     Monsanto incorporates by reference its responses to paragraphs 1 through 80 in response to paragraph 81 of plaintiffs' Complaint.

82.     Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers.  The remaining allegations set forth conclusions of law for which no response is required.

83.     Monsanto admits that its principal place of business is in St. Louis County, Missouri.  Monsanto denies the remaining allegations in paragraph 83.

84.     Monsanto denies the allegations in paragraph 84.

85.     The allegations in the first and second sentences of paragraph 85 set forth conclusions of law for which no response is required.  Monsanto denies the allegations in the last sentence of paragraph 85.

86.     Monsanto denies the allegations in paragraph 86.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

87.     Monsanto denies the allegations in paragraph 87.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

88.     Monsanto denies the allegations in paragraph 88.

89.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 89.

90.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 90 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 90, including that Roundup®-branded products have "dangerous characteristics."

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94, including the allegations that it failed to comply with federal law or the laws of West Virginia, Missouri, and South Carolina.

95.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the final sentence of paragraph 95 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 95.

96.     Monsanto incorporates by reference its responses to paragraphs 1 through 95 in response to paragraph 96 of plaintiffs' Complaint.

97.     Monsanto denies the allegations in paragraph 97.

98.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 98 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 98.

99.     Monsanto denies that exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses.  The remaining allegations in

paragraph 99, including its remaining subparts, set forth conclusions of law for which no response is required.

100.    Monsanto denies the allegations in paragraph 100 and each of its subparts.

101.    Monsanto denies the allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 103 regarding plaintiff's knowledge and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 103, including that intended use and/or exposure to Roundup®-branded products causes any injuries.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto denies the allegations in the first and last sentences of paragraph 105. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 105.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto incorporates by reference its responses to paragraphs 1 through 106 in response to paragraph 107 of plaintiffs' Complaint.

108.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 108 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 108.

109.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 109 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 109 set forth conclusions of law for which no response is required.

110.    Monsanto denies the allegations in the first sentence of paragraph 110.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 110 concerning plaintiff's claimed

purchase of Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 110 set forth a conclusion of law for which no response is required.

111.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 111 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 111 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

112.    Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 112.

113.    Monsanto denies the allegations in paragraph 113 and each of its subparts.

114.    Monsanto denies the allegations in paragraph 114.

115.    Monsanto denies the allegations in paragraph 115.

116.    Monsanto incorporates by reference its responses to paragraphs 1 through 115 in response to paragraph 116 of plaintiffs' Complaint.

117.    Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 117 regarding plaintiff's use of and/or knowledge about Roundup®-branded products and therefore denies those remaining allegations in paragraph 117.  The remaining allegations in paragraph 117 set forth conclusions of law for which no response is required.

118.    Monsanto denies the allegations in the first sentence of paragraph 118 to the extent it encompasses all herbicides as vague and ambiguous but Monsanto admits the allegations in this sentence to the extent it refers to glyphosate-based herbicides.  Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers and therefore denies the remaining allegations in paragraph 118.

119.     In response to the allegations in paragraph 119, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling.  Monsanto further states that paragraph 119 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 119.

120.     The allegations in the first and second sentences of paragraph 120 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 120.

121.     Monsanto denies the allegations in paragraph 121.

122.     Monsanto denies the allegations in paragraph 122.

123.     Monsanto denies the allegations in paragraph 123.

124.     Monsanto incorporates by reference its responses to paragraphs 1 through 123 in response to paragraph 124 of plaintiffs' Complaint.

125.     Monsanto denies the allegations in paragraph 125.

126.     Monsanto denies the damages allegations in the first sentence of paragraph 126. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 126.

127.     Monsanto denies the allegations in paragraph 127.

128.     Monsanto incorporates by reference its responses to paragraphs 1 through 127 in response to paragraph 128 of plaintiffs' Complaint.

129.     Monsanto denies the final sentence in paragraph 129.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 129.

130.     Monsanto denies the allegations in paragraph 130.

131.     Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 131.

132.     Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.

133.    Monsanto incorporates by reference its responses to paragraphs 1 through 132 in response to paragraph 133 of plaintiffs' Complaint.  The allegations in the second sentence of paragraph 133 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 133.

134.    The allegations in paragraph 134 set forth conclusions of law for which no response is required.

135.    Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.

136.    The allegations in paragraph 136 set forth conclusions of law for which no response is required.

137.    The allegations in paragraph 137 set forth conclusions of law for which no response is required.

138.    In response to the allegations in the section titled "Requests for Relief," Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.  Monsanto demands that judgment be entered in its favor and against plaintiffs and that the Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

139.    Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.

140.    The allegations in paragraph 140 set forth conclusions of law for which no response is required.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.    Venue in the Eastern District of Missouri may be inconvenient.

3.      Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

5.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

8.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or

1    independent, intervening and superseding causes of the alleged injuries, including but not limited
2    to plaintiff's pre-existing medical conditions.

3        12.    The doctrines contained in Restatement (Second) of Torts § 402A, comments j
4    and k, bar plaintiffs' claims against Monsanto in whole or in part.

5        13.    Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or
6    in part.

7        14.    Plaintiff's misuse or abnormal use of the product or failure to follow instructions
8    bar plaintiffs' claims in whole or in part.

9        15.    If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries
10   or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is
11   neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the
12   relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or
13   causes that are not related or connected with any product sold, distributed, or manufactured by
14   Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an
15   independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

16       16.    Monsanto had no legal relationship or privity with plaintiffs and owed no duty to
17   plaintiffs by which liability could be attributed to it.

18       17.    Monsanto made no warranties of any kind or any representations of any nature
19   whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies,
20   then plaintiffs failed to give notice of any breach thereof.

21       18.    Plaintiffs' claims are preempted in whole or part by the Freedom of Speech
22   Clause of the First Amendment of the U.S. Constitution.

23       19.    Plaintiffs' claims for punitive and/or exemplary damages are barred because such
24   an award would violate Monsanto's due process, equal protection and other rights under the
25   United States Constitution, the Missouri Constitution, the South Carolina Constitution, the West
26   Virginia Constitution, and/or other applicable state constitutions.

27
28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-05594-VC

20. Plaintiffs' claims for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Missouri law, South Carolina Law, West Virginia law, and/or other applicable state laws.

21. Plaintiffs' claims for punitive and or exemplary damages are barred and/or limited by operation of state and/or federal law, including Missouri Revised Statute § 510.265.1, S.C. Code Ann. § 15-32-530, and W. Va. Code § 55-7-29.

22. Monsanto's conduct and/or acts were not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of plaintiffs and/or the safety of the public. Nor do any of Monsanto's conduct and/or acts demonstrate that Monsanto acted with a high degree of moral culpability. In fact, Monsanto exercised reasonable care at all times alleged in the Complaint, and plaintiffs have failed to clearly establish any entitlement to punitive and/or exemplary damages based on their allegations.

23. Plaintiffs' claims are barred in whole or in part by plaintiffs' own contributory/comparative negligence.

24. Plaintiffs' claims are barred in whole or in part by plaintiffs' own failure to mitigate damages.

25. Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

26. If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

27. Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

28. Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

29. To the extent that plaintiffs recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiffs' recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Missouri Revised Statute § 490.715.

1    30.    Monsanto hereby gives notice that it intends to rely upon such other defenses as

2    may become available or apparent during the course of discovery and thus reserves its right to

3    amend this Answer to assert such defenses.

4         **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

5    plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and

6    such other relief as the Court deems equitable and just.

7                              **<u>JURY TRIAL DEMAND</u>**

8         Monsanto demands a jury trial on all issues so triable.

9    DATED:  September 27, 2019                    Respectfully submitted,

10

11                                               /s/ Joe G. Hollingsworth
                                                 Joe G. Hollingsworth (*pro hac vice*)
12                                               (jhollingsworth@hollingsworthllp.com)
                                                 Eric G. Lasker (*pro hac vice*)
13                                               (elasker@hollingsworthllp.com)
                                                 HOLLINGSWORTH LLP
14                                               1350 I Street, N.W.
                                                 Washington, DC  20005
15                                               Telephone:  (202) 898-5800
                                                 Facsimile:   (202) 682-1639
16
                                                 *Attorneys for Defendant*
17                                               *MONSANTO COMPANY*

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-05594-VC