**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639
Email: jhollingsworth@hollingsworthllp.com
elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br>*Thomas Mark Landgrave v. Monsanto Co.*, Case No. 3:19-cv-06426-VC | |

**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1. The allegations in paragraph 1 set forth conclusions of law for which no response is required. To the extent that a response is required, Monsanto admits the allegations in paragraph 1 based upon the allegations in plaintiff's Complaint.

2. Monsanto admits the allegations in paragraph 2.

3. The allegations in paragraph 3 set forth conclusions of law for which no response is required. To the extent that a response is required, Monsanto admits the allegations in paragraph 3 based upon the allegations in plaintiff's Complaint.

4. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5. In response to the allegations in paragraph 5, Monsanto admits that its principal place of business is located in St. Louis County, Missouri and that it is licensed to do business in the State of Missouri. The remaining allegations in paragraph 5 set forth conclusions of law for which no response is required.

6. In response to the allegations in paragraph 6, Monsanto admits that it has distributed, marketed, labeled, advertised, and sold Roundup®-branded products, including in Louisiana.

7. Monsanto admits the allegations in the first and second sentences of paragraph 7. In response to the allegations in the third sentence of paragraph 7, Monsanto admits that certain of its Roundup®-branded products contain POEA and adjuvants, and that the EPA has classified surfactants and adjuvants as inert.

8. Monsanto admits the allegations in paragraph 8.

9. In response to the allegations in paragraph 9, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides. Monsanto admits that certain of its Roundup®-branded products contain POEA and adjuvants, and that the United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.

10. In response to the allegations in paragraph 10, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in

paragraph 1o are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 and therefore denies those allegations.

11. Monsanto denies the allegations in paragraph 11.

12. In response to the allegations in paragraph 12, to the extent the allegations purport to characterize statements made in the International Agency for Research on Cancer ("IARC") monograph for glyphosate, the statements in that document speak for themselves and do not require a response.

13. In response to the allegation in paragraph 13, Monsanto denies that glyphosate is carcinogenic and states that regulators around the world repeatedly have concluded that glyphosate is not a carcinogen.

14. In response to the allegations in paragraph 14, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

15. Monsanto denies the allegations in paragraph 15. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

16. In response to the allegations in paragraph 16, Monsanto admits that the IARC working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

17. In response to the allegations in paragraph 17, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 17.

18. In response to the allegations in paragraph 18, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 18.

19. In response to the allegations in paragraph 19, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 19.

20. In response to the allegations in paragraph 20, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 20.

21. In response to the allegations in paragraph 21, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate. Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

22. Monsanto states that the term "toxic" as used in paragraph 22 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto denies the allegations in paragraph 22.

23. In response to the allegations in the first sentence of paragraph 23, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

regulation" in 2004. To the extent that the allegations in the first sentence of paragraph 23 characterize the meaning of the cited study, Monsanto denies those allegations. In response to the allegations in the second and third sentences of paragraph 23, Monsanto states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the allegations in the second and third sentence of paragraph 23.

24. In response to the allegations in paragraph 24, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 24 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 24.

25. In response to the allegations in paragraph 25, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 25 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 25.

26. In response to the allegations in paragraph 26, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 26.

27. Monsanto denies the allegations in paragraph 27.

28. In response to the allegations in paragraph 28, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto further admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto admits that some employees of Bermuda's government announced an intention to

suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto states that Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 28.

29. Monsanto admits the allegations in the first sentence of paragraph 29. Monsanto denies the allegations in the second sentence of paragraph 29 to the extent they suggest that the IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

30. Monsanto admits the allegations in the first sentence of paragraph 30. Monsanto denies the allegations in the second sentence of paragraph 30.

31. In response to the allegations in the first sentence of paragraph 31, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Monsanto further states that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Moreover, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs),

---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 31.

32. Monsanto denies the allegations in paragraph 32.

33. In response to the allegations in paragraph 33, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 33 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

34. For purposes of this answer, Monsanto accepts the allegations in paragraph 34 that plaintiff's duck camps have been located in Louisiana for more than twenty years. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 and therefore denies those allegations.

35. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 35 and therefore denies those allegations.

36. Monsanto denies the allegations in paragraph 36.

37. Monsanto denies the allegations in paragraph 37. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

38. Monsanto denies the allegations in paragraph 38.

39. Monsanto incorporates by reference its responses to paragraphs 1 through 38 in response to paragraph 39 of plaintiff's Complaint.

40. In response to the allegations in paragraph 40, Monsanto admits that plaintiff purports to bring a product liability claim but denies any liability as to that claim.

41. Monsanto denies the allegations in paragraph 41.

42. Monsanto denies the allegations in paragraph 42.

43. Monsanto denies the allegations in paragraph 43.

44. Monsanto denies the allegations in paragraph 44.

45. Monsanto denies the allegations in paragraph 45.

46. Monsanto denies the allegations in paragraph 46.

47. Monsanto denies the allegations in paragraph 47.

48. Monsanto denies the allegations in paragraph 48.

49. Monsanto denies the allegations in paragraph 49.

50. Monsanto denies the allegations in paragraph 50.

51. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 51 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in 51 including that Roundup®-branded products have "dangerous characteristics."

52. Monsanto denies the allegations in paragraph 52.

53. Monsanto denies the allegations in paragraph 53.

54. Monsanto denies the allegations in paragraph 54.

55. Monsanto denies the allegations in paragraph 55.

56. Monsanto denies the allegations in paragraph 56.

57. Monsanto denies the allegations in paragraph 57.

58. Monsanto denies the allegations in paragraph 58.

59. Monsanto denies the allegations in paragraph 59.

60. Monsanto incorporates by reference its responses to paragraphs 1 through 59 in response to paragraph 60 of plaintiff's Complaint.

61. In response to the allegations in paragraph 61, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

62. Monsanto denies the allegations in paragraph 62.

63. In response to the allegations in paragraph 63, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiff or other entities identified purchased or used Roundup®-branded products and therefore denies that allegation. The allegations in paragraph 63 also set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 63.

64. The allegations in paragraph 64 set forth conclusions of law for which no response is required.

65. Monsanto denies the allegations in paragraph 65. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

66. Monsanto denies the allegations in paragraph 66.

67. Monsanto denies the allegations in paragraph 67.

68. Monsanto denies the allegations in paragraph 68.

69. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 69 and therefore denies those allegations.

70. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 70 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 70, including that Roundup®-branded products have "dangerous characteristics."

71. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 71 concerning plaintiff's alleged use and exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 71, including that Roundup®-branded products have "dangerous characteristics."

72. Monsanto denies the allegations in paragraph 72.

73. Monsanto denies the allegations in paragraph 73.

74. Monsanto denies the allegations in paragraph 74.

75. Monsanto denies the allegations in paragraph 75

76. Monsanto denies the allegations in paragraph 76.

77. Monsanto denies the allegations in paragraph 77.

78. Monsanto denies the allegations in paragraph 78.

79. Monsanto denies the allegations in paragraph 79.

80. Monsanto denies the allegations in paragraph 80.

81. Monsanto incorporates by reference its responses to paragraphs 1 through 80 in response to paragraph 81 of plaintiff's Complaint.

82. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 82 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 82.

83. The allegations in paragraph 83 set forth conclusions of law for which no response is required.

84. The allegations in paragraph 84 set forth conclusions of law for which no response is required.

85. Monsanto denies the allegations in paragraph 85.

86. Monsanto denies the allegations in paragraph 86.

87. Monsanto denies the allegations in paragraph 87.

88. Monsanto denies the allegations in paragraph 88.

89. Monsanto denies the allegations in paragraph 89. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

90. Monsanto denies the allegations in paragraph 90.

91. Monsanto denies the allegations in paragraph 91.

92. Monsanto denies the allegations in paragraph 92.

93. Monsanto denies the allegations in paragraph 93, including each of its subparts.

94. Monsanto denies the allegations in paragraph 94.

95. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 95 regarding plaintiff's knowledge and therefore Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 95, including that intended use and/or exposure to Roundup®-branded products causes any injuries.

96. Monsanto denies the allegations in paragraph 96.

97. Monsanto denies the allegations in paragraph 97.

98. Monsanto denies the allegations in paragraph 98. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

99. Monsanto incorporates by reference its responses to paragraphs 1 through 98 in response to paragraph 99 of plaintiff's Complaint.

100. Monsanto denies the allegations in paragraph 100.

101. The allegations in paragraph 101 and its subparts set forth conclusions of law for which no response is required.

102. In response to the allegations in paragraph 102, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling. Monsanto further states that paragraph 102 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 102.

103. Monsanto denies the allegations in the first and second sentences of paragraph 103. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto states that the final sentence of paragraph 103 sets forth conclusions of law for which no response is required.

104. The allegations in paragraph 104 set forth conclusions of law for which no response is required.

105. Monsanto denies the allegations in paragraph 105.

106. Monsanto denies the allegations in paragraph 106 and each of its subparts.

107. Monsanto states that the allegation in paragraph 107 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 107 and therefore denies those allegations.

108. Monsanto denies the allegations in paragraph 108.

109. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 109 regarding plaintiff's knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 109.

110. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 110 and therefore denies those allegations

111. Monsanto denies the allegations in paragraph 111.

112. Monsanto denies the allegations in paragraph 112.

113. Monsanto incorporates by reference its responses to paragraphs 1 through 112 in response to paragraph 113 of plaintiff's Complaint.

114. In response to the allegations in paragraph 114, Monsanto admits that it has stated, and continues to state, that Roundup®-branded products are safe when used in accordance with the products' labeling. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 114 regarding plaintiff's use and therefore denies those allegations.

115. Monsanto denies that Roundup®-branded products have carcinogenic properties. The remaining allegations in paragraph 115 set forth conclusions of law for which no response is required.

116. Monsanto denies the allegations in paragraph 116.

117. Monsanto denies the allegations in paragraph 117.

118. Monsanto denies the allegations in paragraph 118.

119. Monsanto incorporates by reference its responses to paragraphs 1 through 118 in response to paragraph 119 of plaintiff's Complaint.

120. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted in paragraph 120 and therefore denies those allegations.

121. In response to the allegations in paragraph 121, Monsanto admits that it has stated, and continues to state, that Roundup®-branded products are safe when used in accordance with the products' labeling. Monsanto denies that Roundup®-branded products have carcinogenic properties and denies those allegations in paragraph 121. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 121 regarding plaintiff's use and therefore denies those allegations.

122. Monsanto denies the allegations in paragraph 122.

123. Monsanto denies the allegations in paragraph 123.

124. Monsanto denies the allegations in paragraph 124.

125. Monsanto denies the allegations in paragraph 125.

126. Monsanto denies the allegations in paragraph 126.

127. The allegations in paragraph 127 set forth conclusions of law for which no response is required.

In response to the "WHEREFORE" paragraph following paragraph 127, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

**SEPARATE AND AFFIRMATIVE DEFENSES**

1. The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2. Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3. Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4. Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5. Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6. Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

7. Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

8. Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

9. Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

10. The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims in whole or in part.

11. Applicable statutes of limitations and/or repose, or prescriptive periods, or peremptive periods, bar plaintiff's claims in whole or in part.

12. Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

13. If plaintiff suffered injury or damages as alleged, which is denied, such injury or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

14. Monsanto had no legal relationship or privity with plaintiff and owed no duty to him by which liability could be attributed to it.

15. Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff. If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

16. Plaintiff has failed to allege fraud with sufficient particularity.

17. Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18. Plaintiff's claims for treble damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Louisiana Constitution, the Missouri Constitution, and/or other applicable state constitutions.

19. Plaintiff's claims for treble damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Louisiana law, Missouri law, and/or other applicable state laws.

20. Plaintiff's claims for treble damages are barred and/or limited by operation of state and/or federal law, including La. Rev. Stat. § 9:2800.52, *et seq.* and Missouri Revised Statute § 510.265.1.

*21.* To the extent that plaintiff recovered payments for his alleged injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Missouri Revised Statute § 490.715.

22. Plaintiff's claims for treble damages are barred because plaintiff has no basis in law or fact for an award of treble damages.

*23.* Plaintiff's common law claims are barred, in whole or part, by application of Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*

24. This case is governed by the exclusive provisions of the Louisiana Products Liability Act (La. R.S. 9:2800.51, et seq.) ("LPLA"). Any theories of recovery that fall outside of the LPLA's provisions are therefore subject to dismissal.

25. Monsanto affirmatively pleads the applicability of the LPLA and specifically avers that plaintiff is not entitled to recovery under any of the exclusive theories of liability set forth in the Act.

26. Monsanto specifically avers that the product possessed no characteristic that rendered it unreasonably dangerous in a reasonably anticipated use as defined by the LPLA (La. R.S. 9:2800.54).

27. Monsanto asserts all allowable defenses under the LPLA, La. R.S. 9:2800.51, et seq., including but not limited to the applicability of La. R.S. 9:2800.59(A)(1), (2), (3), and (B).

28. Should plaintiff recover under any claims under the LPLA, a recovery of attorney's fees for plaintiff is barred under the provisions of that statute.

29. Monsanto has no liability to plaintiff under any theory of redhibition to the extent that plaintiff failed to tender any product allegedly sold by Monsanto that allegedly contained a redhibitory defect and has not made an amicable demand upon Monsanto.

30. Monsanto has no liability to plaintiff under any theory of redhibition to the extent that plaintiff has waived plaintiff's redhibition rights.

31. Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

32. To the extent plaintiff's claims are based on conduct that pre-dates 1996, Louisiana's comparative negligence regime may not apply, and plaintiff's claims may be barred by contributory negligence.

33. To the extent plaintiff's claims are based on conduct that pre-dates 1989, plaintiff's claims under the LPLA may be barred.

34. Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

35. Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

36. Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

37. If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

38. Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that limits such claims or does not recognize such claims.

39. Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

40. Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

**JURY TRIAL DEMAND**

Monsanto demands a jury trial on all issues so triable.

DATED: October 18, 2019

Respectfully submitted,

/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*