# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ROGER BRYANT and
JUDY BRYANT,

                 Plaintiffs,

v.                                         Case No.: 3:19-CV-00602
                                         (Removed from the Circuit Court
                                         of Mason County; Civil Action No. CC-
                                         26-2019-C-33)

MONSANTO COMPANY,
a Delaware corporation;
MONSANTO MANAGEMENT
CLUB-NITRO PLANT,
a West Virginia corporation;
FLEXSYS AMERICA LIMITED,
a West Virginia General Partnership;
and DOES 1-50,

                 Defendants.

### PLAINTIFFS' MOTION TO REMAND

The plaintiffs, by and through the undersigned counsel, hereby respectfully move this Honorable

Court to remand this matter to the Circuit Court of Mason County, West Virginia. Plaintiffs have properly

pleaded causes of action against non-diverse defendants. While defendant Monsanto Company disputes the

underlying substantive allegations against the non-diverse defendants, its factual denials are not sufficient to

create diversity jurisdiction under long-standing applicable law.

Even resolving all of the facts in favor of Monsanto, which would be improper, the Court has not been

provided with sufficient, undisputed information from which it can determine the citizenship of the entities

Monsanto claims owned and operated the Nitro plant at issue in this case. As it is Monsanto's burden to show

complete diversity, and it has not conclusively done so, the case must be remanded. At a minimum, plaintiffs

are entitled to conduct discovery on the jurisdictional issues rather than relying upon cursory, self-serving

affidavits provided by a defendant.  As further grounds for plaintiffs' motion, plaintiffs state as follows:

1.      Roger and Judy Bryant are l residents of Mason County, West Virginia. Plaintiff Roger Bryant used glyphosate products beginning in the late 1970's to control weeds on his property and on his father's farm property. (Plaintiffs' Complaint, attached to Defendants' Notice of Removal , Doc. # 1, Ex. 1, ¶. 4) He purchased those products in and around Mason County. (Compl. ¶. 5) He developed Non-Hodgkin's Lymphoma ("NHL") as a result of exposure to glyphosate, including Roundup®, which was directly and proximately caused by the unreasonably dangerous and defective nature of Roundup®, and its active ingredient, glyphosate, and the wrongful conduct of the defendants. (Compl. ¶ 2)

2.      Plaintiffs named as a defendant in this matter Flexsys America Limited. According the to the West Virginia Secretary of State, Defendant Flexsys America Limited, is a West Virginia General Partnership, with the address of its partner listed as Flexsys America, LP, with an address of 5509 Big Tyler Road, Suite 1, Cross Lanes, West Virginia, which Plaintiffs are informed and believe, at relevant times, operated a plant and premises in Nitro, West Virginia (hereinafter "Nitro plant"). (See Secretary of State Business and Licensing – On Line Data Services for Flexsys America Limited, Ex. A,[1] and Comp. ¶ 17)

3.      Plaintiffs named as a defendant in this matter Monsanto Management Club - Nitro Plant. According the to the West Virginia Secretary of State, at relevant times, defendant Monsanto Management Club - Nitro Plant was a West Virginia Corporation, which Plaintiffs are informed and believe, during relevant times, managed a plant in Nitro, West Virginia. (See Secretary of State Business and Licensing – On Line Data Services for Monsanto Management Club-Nitro Plant, Ex. B, and Comp. ¶ 15)

4.      As pleaded in the Complaint, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained an herbicide division that participated in the design, research, development, production, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of herbicides. (Compl. ¶. 20)  Further, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained a lab, which participated in the design, research, development, and testing of herbicides. (Compl. ¶. 21)

---

[1]  West Virginia Secretary of State Online Data Services
https://apps.sos.wv.gov/business/corporations/organization.aspx?org=449522

5.      Plaintiffs have asserted West Virginia common-law claims of negligence, strict product liability for defective manufacturing, defective design, and failure to warn, violations of the West Virginia Consumer Protection Act, breach of implied warranties, fraud and civil conspiracy, recklessness and tort of outrage and other wrongful conduct against all defendants. No federal common-law or statutory claims have been asserted in this civil action.   (See Comp. generally)

6.      Complete diversity does not exist in this case because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens of the State of West Virginia.  (See Comp. generally)  "As provided by 28 U.S.C. § 1441(a), the authorization for removal is to be strictly construed against removal, and all doubts about the propriety of removal are to be resolved in favor of retained state court jurisdiction.  *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th Cir. 1993)."  *Foltz v. Sheetz, Inc.*, No. 3:97-CV-45, 1997 WL 529051 at *1 (N.D.W.Va. August 6, 1997) (Broadwater, J.).  *Accord Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 425 (4th Cir. 1999); *Wyatt v. Charleston Area Medical Center, Inc.*, 651 F. Supp.2d 492, 495 (S.D.W.Va. 2009); *Blankenship v. Ethicon, Inc.*, Civil Action No. 2:03-cv-0622, 2003 WL 25533762, at *1 (S.D.W.Va. Nov. 6, 2003) (Goodwin, J.); *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d 506, 511 (N.D.W.Va. 2002).

7.      "Under the `complete diversity rule,' no party may share common citizenship with any opposing party." *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d at 510-11.  An exception to the above prohibition of removal exists where the non-diverse defendant has been fraudulently joined for the sole purpose of destroying defendants' right of removal.  In order to establish fraudulent joinder the removing party must establish **there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court**; or [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th Cir. 1993),

8.      The burden on the defendant claiming fraudulent joinder is heavy:  the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant **even after resolving all issues of fact and law in the plaintiff's favor. ...  A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted**.  14A Charles A. Wright *et al.*, *Federal Practice &*

3

*Procedure* § 3723, at 353-54 (1985). *Marshall*, 6 F.3d at 232-33 (emphases added, internal citations omitted). *Accord Rinehart v. Consolidation Coal Co.*, 660 F. Supp. 1140, 1141-42 (N.D.W.Va. 1987) (Kidd, J.) ("All factual allegations must be evaluated in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. . . . Also, the district court must resolve any uncertainties as to current state of controlling law in favor of plaintiffs." (internal citations omitted))

9.      "[T]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Hartley*, 187 F.3d at 424.  A jurisdictional inquiry is not the appropriate stage of litigation to resolve various uncertain questions of law and fact.  Id. *See aslo Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdictional rules direct judicial traffic.  There need be only a slight possibility of a right to relief. *Id.*  Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends. *Hartley*, 187 F.3d at 425-26.

10.     "[F]raudulent joinder must be alleged with particularity." *Rinehart v. Consolidation Coal Co.*, 660 F. Supp. at 1141.

11.     "The motive of the plaintiff, taken by itself, does not affect the right to remove.  If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right." *Chicago, Rock Island, & Pacific Railway Co. v. Schwyhart*, 277 U.S. 184, 193, 33 S.Ct. 250, 57 L.Ed. 473 (1913).

12.     While the Court may consider matters outside of the pleadings, **a claim of fraudulent joinder cannot be made based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses**. *Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934) (emphasis added); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v.*

*Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.). *Accord Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850, at *5 (S.D.W. Va. July 9, 2014).

13.     A corporation is a citizen of the state of its incorporation and where its principal place of business is. A corporation's principal place of business is where its "nerve center" is located. *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). A partnership is a citizen of any state of which any partner is a citizen. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015, 194 L. Ed. 2d 71 (2016).

14.     Defendants have not met their heavy burden of establishing fraudulent joinder. Complete diversity does not exist in this case because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens of the State of West Virginia.

15.     Plaintiffs asserted claims in their complaint that Flexsys America Limited operated the Nitro, West Virginia plant where herbicides were produced. According to the West Virginia Secretary of State, Flexsys America Limited is a West Virginia General Partnership, effective May 15, 1995, with its principal business address of 5509 Big Tyler Road, Cross Lanes, West Virginia 25313-1347. (See Ex. A) The partner for this domestic partnership is Flexsys America LP, with the address listed of 5509 Big Tyler Road, Suite 1, Cross Lanes, West Virginia, 25313-1347. (Ex. A) The same was alleged against defendant Monsanto Management Club-Nitro Plant, which is a West Virginia corporation. (Ex. B)

16.     Monsanto claims that the defendant Flexsys America Limited was incorrectly named in this case and that the owner and operator of the Nitro plant is Flexsys America, L.P. with what it summarily claims are out of state partners. Nowhere does Monsanto claim that the named defendant, Flexsys America Limited, is a diverse party or that it does not exist as an entity. Even if it did, the West Virginia Secretary of State information would dispute that claim.  (See Ex. A)

17.     Monsanto makes a disputed factual claim that the Nitro plant at issue in this lawsuit was solely owned and operated by a company called Flexsys America, L.P. However, which company or companies

owned or operated the Nitro plant (they can be different and there can be more than one) is a disputed question of fact, and is not the proper subject of determination by this Court. This is particularly true where there has been no opportunity for discovery.

18.     At most, Monsanto's allegations compared to the Secretary of State documentation create an ambiguity about the status and location of these entities and does not resolve the issue of all of the entities that owned, operated or controlled the Nitro plant. This ambiguity must be resolved against the defendants. *See Agee v. Monsanto Co.*, No. 3:09-CV-1336, 2010 WL 3835647, at *5 (S.D.W. Va. Sept. 29, 2010)(" At most, they have demonstrated that there is ambiguity surrounding [Non-diverse defendant's] principal place of business—ambiguity that must be resolved against the defendants. …If the allegations in the plaintiff's Complaint are true, the plaintiff will certainly be able to establish a cause of action against [non-diverse defendant] in state court")

19.     Litigation over who had responsibility for oversight, training, policies and procedures, including shared responsibilities and through shared services, can and often does include multiple companies. Plaintiffs have pleaded that Flexsys America Limited owned and operated the Nitro plant, and, to the extent Monsanto denies that, it will be a determination to be made by the jury or, at best, by the Court upon a properly supported summary judgment.

20.     If Monsanto is claiming that Flexsys America Limited is not a separate legal entity as represented by the West Virginia Secretary of State , i.e., that it does not exist, this creates a disputed fact and an ambiguity that must be resolved against the defendant.

21.     At the very least, the plaintiffs should be permitted discovery to determine whether Flexsys America Limited is a separate legal entity as represented by the West Virginia Secretary of State, and to determine the citizenship of its members rather than rely upon Monsanto's factual assertions.

22.     Plaintiffs are at a distinct disadvantage and do not have access to material information prior to filing a claim. Without discovery, defendants could gain jurisdiction with self- serving or even false affidavits, without the opportunity for a plaintiff or the Court to determine whether whatever they claim is true, and plaintiffs would be without the ability to gather admissible evidence through discovery to rebut it.

23.     Monsanto disputes the other factual merits of the plaintiffs' claims in order to try to obtain diversity jurisdiction, which is improper. Defendant Monsanto says that, assuming Flexsys is deemed to be a West Virginia citizen for purposes of diversity, the plaintiff's substantive allegations are false. Monsanto makes the disputed factual claim that Flexsys America L.P., the entity it claims owned and operated the Nitro plant, has never been involved in any way with glyphosate herbicides or any other kind of herbicides. Monsanto further claims another company, Flexsys America, LLC, who is also not a defendant, has not been involved with herbicides.  These are precisely the disputed factual denials of the substance of plaintiffs' claims that cannot be the basis for removal.

24.     It is well known that a claim of fraudulent joinder cannot be sustained based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses.  *See*, *e.g.*, *Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Wells' Dairy, Inc. v. American Industrial Refrigeration, Inc.*, 157 F. Supp.2d 1018, 1034-41 (N.D.Iowa 2001); *Grobe v. Vantage Credit Union*, 679 F. Supp.2d 1020, 1026 (E.D.Mo. 2010); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.); *Hampton v. Georgia-Pacific L.L.C.*, Civil Action No. 11-0363-KD-N, 2011 WL 5037587, at **6-8 (S.D.Ala. Sept. 26, 2011) (Nelson, M.J.).  Therefore, Monsanto's removal is improper and this case should be remanded.

25.     In support of their disputed assertions, the defendants have submitted two self–serving affidavits from current and former management of its associated companies restating their factual position that the plaintiffs' claims are false.  Self-serving affidavits disputing plaintiffs' facts do not change the impermissible basis for Monsanto's removal. Defendants nearly always deny the factual allegations made against them in a complaint. Plaintiffs are entitled to discovery on these factual issues, Monsanto's disputed contentions require

7

a weighing of the evidence and credibility of the witnesses and, therefore, are not proper grounds upon which to raise a claim of fraudulent joinder. These arguments apply equally to the other West Virginia Corporation, Monsanto Management Club – Nitro Plant.

26.    Monsanto's claim that the defendants only made rubber products at the Nitro plant and never made herbicides is false. The Court can take judicial notice that the Nitro plant manufactured and produced pesticides.  The Agent Orange multi-plaintiff litigation, which at one point was pending in the Southern District of West Virginia, resulted in a multi-million dollar settlement for exposure of residents surrounding the Nitro plant. *Agee v. Monsanto Co.,* No. 3:09-CV-1336, 2010 WL 3835647, (S.D.W. Va. Sept. 29, 2010) (remanding case to state court).  Agent Orange is a pesticide.

27.    Even assuming as true that the Nitro plant did not manufacture glyphosate, which cannot be assumed for purposes of removal jurisdiction, the Nitro plant had a lab where they tested Monsanto products. Plaintiffs have pleaded that defendants researched, designed and tested their products at the Nitro plant, which very well would have included their pesticides and could have involved testing and research regarding glyphosate and its precursors. These facts must be presumed true in a diversity analysis.

28.    With regard to Monsanto Management Club – Nitro Plant, the affidavit and, to a limited extent, the charter, say it was a corporation consisting of all of Monsanto management and professional staff and Monsanto claims that only arranged social gatherings, but why would the Monsanto management of the Nitro Plant, which is not a large group, create a corporation just to go to dinner parties together? At a minimum, plaintiffs are entitled to discovery to determine the scope of what defendant Monsanto Management did.

29.     If Monsanto Management Club provided training or education, provided information about Monsanto's other products and activities, or sponsored seminars, any of those activities could lead to knowledge of the dangers of glyphosate, a foreseeable risk of injury, and a concurrent duty to disclose and warn. This is true even if it is what Monsanto claims.

30.    Plaintiffs pleaded that the defendants were participants in a joint venture or enterprise involving glyphosate products. Taken as true, then the non-diverse defendants would be jointly responsible for Monsanto's glyphosate activities that occurred elsewhere.

31.     Even assuming that Flexsys America Limited is not a separate entity, and was misnamed, which it was not, and assuming the Monsanto Management Club-Nitro Plant was not a West Virginia defendant, which it is, Monsanto has failed to provide sufficient undisputed information from which this court can determine the citizenship of what they claim are the proper parties.

32.     Monsanto claims that Flexsys America, L.P. solely owned and operated the Nitro plant (which as discussed above, plaintiff disputes).  Monsanto then claims that the only partners of Flexsys America, L.P., were Flexsys America, LLC, and Solutia, Inc. If proved true, the Court must determine the citizenship of all of the members of Flexsys America, LLC. as citizenship of the members dictates diversity for an limited liability corporation.

33.     Monsanto did not state or supply documentation of the members of Flexsys America, LLC. Monsanto simply claims that it is a wholly owned subsidiary of Solutia, Inc. That does not mean that Flexsys America, LLC has no members and does not relieve Monsanto from naming and proving the citizenship of all of its members. Therefore, even resolving disputed facts in favor of Monsanto, the motion is without proper support and must be denied.

34.     Additionally assuming, because it is not stated in the motion or shown convincingly in the record, that the only member of Flexsys America, LLC is Solutia, Inc., the Court must then determine the citizenship of Solutia, Inc. under the "nerve center" test enumerated in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). The nerve center is where the actual center of direction, control, and coordination occurs and "not simply an office where the corporation holds its board meetings.. *Id.*

35.     According to publicly available data, which is all the plaintiffs can rely upon without proper opportunity for discovery, Flexsys and Solutia, Inc. were created, in part, or otherwise in a joint venture for purposes of the Nitro plant. (See Excerpt from Monsanto 2012 From 10-K, p. 128, Ex. C.) Monsanto claims Solutia's principal place of business was in Missouri, but the nerve center test requires more than that, including determining where was the actual center of direction, control, and coordination of the Nitro plant.

36.    The nerve center issues are not addressed in Monsanto's notice of removal, as required by *Hertz*.

Therefore, removal is not properly supported and must be denied. At the very least, discovery is required

in order for the Court to make a proper determination.

37.    The nerve center analysis may also need to be done with respect to the time period when

Monsanto owned and operated the Nitro plant. The actual center of direction, control, and coordination of

the Nitro plant during the time Monsanto owed it from 1953 through the time it turned the plant over to

others, likely was Nitro, West Virginia. Monsanto does not address this in its notice and discovery would

be necessary for the Court to make a proper determination, should the Court disregard the other West

Virginia defendants.

WHEREFORE, for the foregoing reasons and those listed in the plaintiffs' supporting memorandum,

plaintiffs respectfully request that their Motion to Remand be granted.  Plaintiffs also respectfully request that

they be awarded the reasonable costs and expenses, including attorney fees, incurred in bringing their Motion

to Remand.

<div style="margin-left:40%">

ROGER BRYANT
and JUDY BRYANT,

By Counsel

</div>

/s/ Kelly Elswick-Hall
Marvin W. Masters
West Virginia State Bar No. 2359
Kelly Elswick- Hall
West Virginia State Bar No. 6578
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
(304) 342-3106
Counsel for Plaintiffs
F:\2\624\b001.docx

<div style="text-align:center">10</div>

## CERTIFICATE OF SERVICE

I, Kelly Elswick-Hall, hereby certify that on September 18, 2019, I electronically filed "PLAINTIFFS' MOTION TO REMAND" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> Charles M. Love III (WV Bar No. 2254)
> Floyd E. Boone Jr. (WV Bar No. 8784)
> William M. Lorenson (WV Bar No. 13223)
> Bowles Rice LLP
> 600 Quarrier Street
> Post Office Box 1386
> Charleston, West Virginia 25325-1386
> Counsel for Defendant Monsanto Company and
> Flexsys America Limited

> Aimee H. Wagstaff
> Andrus Wagstaff, PC
> 7171 West Alaska Drive
> Lakewood, Colorado 80226
> Co-counsel for Plaintiffs
> *Pro Hac Vice to be filed*

And by first class U.S. Mail on the following non-ECF participants:

> Monsanto Management Club - Nitro Plant
> c/o Otto J. Dresher
> 2023 Lincoln Avenue
> St. Albans, West Virginia 25177

<div align="right">

/s/ Kelly Elswick-Hall
West Virginia State Bar No. 6578
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
304-342-3106
keh@themasterslawfirm.com
mwm@themasterslawfirm.com

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ROGER BRYANT and
JUDY BRYANT,

      Plaintiffs,

v.             Case No. 3:19-CV-00602
              (Removed from the Circuit Court
              of Mason County; Civil Action No. CC-
              26-2019-C-33)

MONSANTO COMPANY,
a Delaware corporation;
MONSANTO MANAGEMENT
CLUB-NITRO PLANT,
a West Virginia corporation;
FLEXSYS AMERICA LIMITED,
a West Virginia General Partnership;
and DOES 1-50,

      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

   The plaintiffs, by and through the undersigned counsel, hereby submit the following Memorandum

of Law in support of their Motion to Remand. Plaintiffs have properly pleaded causes of action against non-

diverse defendants. While defendant Monsanto Company disputes the underlying substantive allegations

against the non-diverse defendants, its factual denials are not sufficient to create diversity jurisdiction under

long-standing applicable law.

   Additionally, even resolving all of the facts in favor of Monsanto, which would be improper, the Court

has not been provided with sufficient, undisputed information from which it can determine the citizenship of

the entities Monsanto claims owned and operated the Nitro plant at issue in this case. As it is Monsanto's

burden to show complete diversity, and it has not conclusively done so, the case must be remanded. At a

minimum, plaintiffs are entitled to conduct discovery on the jurisdictional issues rather than relying upon

cursory, self-serving affidavits provided by a defendant.

## I.  STATEMENT OF THE CASE

Roger and Judy Bryant are l residents of Mason County, West Virginia. Plaintiff Roger Bryant used glyphosate products beginning in the late 1970's to control weeds on his property and on his father's farm property. (Plaintiffs' Complaint, attached to Defendants' Notice of Removal, Doc. # 1, Ex. 1, ¶. 4) He purchased those products in and around Mason County. (Compl. ¶. 5) He developed Non-Hodgkin's Lymphoma ("NHL") as a result of exposure to glyphosate, including Roundup®, which was directly and proximately caused by the unreasonably dangerous and defective nature of Roundup®, and its active ingredient, glyphosate, and the wrongful conduct of the defendants. (Compl. ¶ 2)

According the to the West Virginia Secretary of State, Defendant Flexsys America Limited, is a West Virginia General Partnership, with the address of its partner listed as Flexsys America, LP, with an address of 5509 Big Tyler Road, Suite 1, Cross Lanes, West Virginia, which Plaintiffs are informed and believe, at relevant times, operated a plant and premises in Nitro, West Virginia (hereinafter "Nitro plant"). (See Secretary of State Business and Licensing – On Line Data Services for Flexsys America Limited, Ex. A,[1] and Comp. ¶ 17)

According the to the West Virginia Secretary of State, at relevant times, defendant Monsanto Management Club - Nitro Plant was a West Virginia Corporation, which Plaintiffs are informed and believe, during relevant times, managed a plant in Nitro, West Virginia. (See Secretary of State Business and Licensing – On Line Data Services for Monsanto Management Club-Nitro Plant, Ex. B, and Comp. ¶ 15)

As pleaded in the Complaint, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained an herbicide division that participated in the design, research, development, production, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of herbicides. (Compl. ¶. 20) Further, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained a lab, which participated in the design, research, development, and testing of herbicides. (Compl. ¶. 21)

---

[1]  West Virginia Secretary of State Online Data Services
https://apps.sos.wv.gov/business/corporations/organization.aspx?org=449522

In their complaint for personal injuries, plaintiffs have asserted West Virginia common-law claims of negligence, strict product liability for defective manufacturing, defective design, and failure to warn, violations of the West Virginia Consumer Protection Act, breach of implied warranties, fraud and civil conspiracy, recklessness and tort of outrage and other wrongful conduct against all defendants. No federal common-law or statutory claims have been asserted in this civil action. (See Comp. generally) As such, complete diversity does not exist in this case because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens of the State of West Virginia. (See Comp. generally)

## II.     STANDARD FOR REMOVAL

It is well settled that the trend of court decisions is to restrict and limit the removal jurisdiction of federal courts.

> [T]here is ample case support . . . at all levels of the federal courts—the Supreme Court, the courts of appeal, and the district courts—for the proposition that removal statutes will be strictly construed. Some federal courts go further than simply speaking of applying the principle of strict construction and say that all doubts on the question should be resolved against accepting removal jurisdiction. These propositions are all consistent with the notion that the federal courts are courts of limited jurisdiction.

14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 at 341-51.

The Fourth Circuit holds that all doubts must be resolved against accepting removal jurisdiction: "As provided by 28 U.S.C. § 1441(a), the authorization for removal is to be strictly construed against removal, and all doubts about the propriety of removal are to be resolved in favor of retained state court jurisdiction. *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th Cir. 1993)." *Foltz v. Sheetz, Inc.*, No. 3:97-CV-45, 1997 WL 529051 at *1 (N.D.W.Va. August 6, 1997) (Broadwater, J.). *Accord Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) ("Further, courts should `resolve all doubts about the propriety of removal in favor of retained state court jurisdiction.'); *Wyatt v. Charleston Area Medical Center, Inc.*, 651 F. Supp.2d 492, 495 (S.D.W.Va. 2009); *Blankenship v. Ethicon, Inc.*, Civil Action No. 2:03-cv-0622, 2003 WL 25533762, at *1 (S.D.W.Va. Nov. 6, 2003) (Goodwin, J.); *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d 506, 511 (N.D.W.Va. 2002).

"Under the `complete diversity rule,' no party may share common citizenship with any opposing

party." *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d at 510-11.[2] An exception to the above prohibition

of removal exists where the non-diverse defendant has been fraudulently joined[3] for the sole purpose of

destroying defendants' right of removal. In *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th

Cir. 1993), addressing a claim of fraudulent joinder, the Fourth Circuit Court of Appeals held:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing
> party must establish either:
> "[T]hat **there is no possibility that the plaintiff would be able to establish a cause of action
> against the in-state defendant in state court**; or
> [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." …**The
> burden on the defendant claiming fraudulent joinder is heavy: the defendant must show
> that the plaintiff cannot establish a claim against the nondiverse defendant even after
> resolving all issues of fact and law in the plaintiff's favor. ... A claim need not ultimately
> succeed to defeat removal; only a possibility of a right to relief need be asserted.** 14A
> Charles A. Wright *et al.*, *Federal Practice & Procedure* § 3723, at 353-54 (1985).

*Marshall*, 6 F.3d at 232-33 (emphases added, internal citations omitted). *Accord Rinehart v.*

*Consolidation Coal Co.*, 660 F. Supp. 1140, 1141-42 (N.D.W.Va. 1987) (Kidd, J.) ("All factual

allegations must be evaluated in the light most favorable to the plaintiff, resolving all contested issues of

substantive fact in favor of the plaintiff. . . . Also, the district court must resolve any uncertainties as to

current state of controlling law in favor of plaintiffs." (internal citations omitted)); *Hill, Peterson, Carper,*

*Bee & Deitzler v. XL Specialty Ins. Co.*, 261 F. Supp.2d 546, 548 (S.D.W.Va. 2003); *Walker v. Rite Aid of*

*West Virginia, Inc.*, Civil Action No. 2:02-cv-1208, 2003 WL 24215831, at *1 (S.D.W.Va. Oct. 14, 2003)

(Copenhaver, J.); *Blankenship v. Ethicon, Inc.*, 2003 WL 25533762, at *2; *Pritt v. The Republican*

*National Committee*, 1 F. Supp.2d 590, 591-92 (S.D.W.Va. 1998).

---

[2] A limited exception to the complete-diversity rule was enacted in the Class Action Fairness Act of 2005, 28 U.S.C.
§§ 1332(d) & 1453 (2006 ed. and Supp. III). *See Smith v. Bayer Corp.*, 564 U.S. 299, 131 S.Ct. 2368, 2382 (2011);
*Johnson v. Advance America*, 549 F.3d 932, 933-35 (4th Cir. 2008). This limited exception that requires only
minimal diversity in class actions is not applicable to the present case, which is not a proposed class action.
[3] "'Fraudulent joinder' is a term of art, it does not reflect on the integrity of the plaintiff or counsel, but is merely the
rubric applied when a court finds either that no cause of action is stated against the non-diverse defendant, or in fact
no cause of action exists." *Watson v. Appalachian Power Co.*, 934 F. Supp. 191, 193, n. 2 (S.D.W.Va. 1996)
(quoting *Aids Counseling and Testing Centers. v. Group W. T. V.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (citations and
internal quotation marks omitted) ("The instant complaint is vague about many of the causes of action asserted or
assertable against Central Operating, but it clearly asserts a claim based on Plaintiff's belief, at the time of filing, that
Central Operating was the owner of the premises where the decedent's injuries occurred").

Even more recently than *Marshall*, the Fourth Circuit in *Hartley*, 187 F.3d at 424, reiterated the above standard and further acknowledged that "**[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)**." (Citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (inquiry into validity of complaint is more searching under Rule 12(b)(6) than when a party claims fraudulent joinder)) (emphasis added).  *Accord Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999); *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d at 511; *McWilliams v. Monarch Rubber Co.*, 70 F. Supp.2d 663, 664-65 (S.D.W.Va. 1999), and cases cited therein.

The *Hartley* Court further explained:

> **In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact.**  Allowing joinder of the public defendants is proper in this case because courts should minimize threshold litigation over jurisdiction.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; litigation over whether the case is in the right court is essentially a waste of time and resources.  (internal quotation marks omitted)).  Jurisdictional rules direct judicial traffic.  They function to steer litigation to the proper forum with a minimum of preliminary fuss.  **The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper.  To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules**.
>
> The district court erred by delving too far into the merits in deciding a jurisdictional question. . . .  It also incorrectly placed the burden on Hartley to show that her claims may succeed rather than requiring CSX to negate all possibility of recovery.  The issues that the district court attempted to resolve are properly left to the state court for later stages of litigation.
>
> **We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case.  Hartley's claims may not succeed ultimately, but ultimate success is not required to defeat removal**.  *Marshall*, 6 F.3d at 233.  **Rather, there need be only a slight possibility of a right to relief**.  *Id.*  **Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends**.

*Hartley*, 187 F.3d at 425-26 (emphases added).

It should also be noted that an allegation of fraudulent joinder must be alleged with particularity and the burden is a heavy one.  As stated in *Rinehart v. Consolidation Coal Co.*, 660 F. Supp. at 1141, "[f]raudulent joinder must be alleged with particularity."  "Having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants,

the district court should find that there is no possibility of a valid cause of action being set forth against

the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." *B., Inc. v.*

*Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981)." *Accord Coley v. Dragon Limited*, 138 F.R.D. 460,

466 (E.D.Va. 1990); *Storr Office Supply Division v. Radar Business Systems—Raleigh, Inc.*, 832 F. Supp.

154, 156 (E.D.N.C. 1993); *Bucksnort Oil Co., Inc. v. National Convenience Stores, Inc.*, 585 F. Supp.

883, 885-86 (M.D.Tenn. 1984);  *Bankard v. Wyeth-Ayerst Laboratories Co.*, 898 F. Supp. 426, 428

(E.D.Tex. 1995); *Higgins v. Pittsburgh-Des Moines Co.*, 635 F. Supp. 1182 (S.D.Tex. 1986); *Dollar v.*

*General Motors Corp.*, 814 F. Supp. 538, (E.D.Tex. 1993); 14B Wright, Miller & Cooper, *Fed. Prac. &*

*Proc. Juris.3d* § 3723 (1998), and cases cited therein.

As long held by the United States Supreme Court,

> It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. . . .
>
> . . . [T]he showing must consist of a statement of facts rightly engendering th[e] conclusion [of fraudulent joinder].  **Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet "fraudulent" to the joinder, will not suffice:  the showing must be such as compels the conclusion that the joinder is without right and made in bad faith**   . . . .

 *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 151-52, 34 S.Ct. 278 (emphases added).

*Accord Chicago, Rock Island, & Pacific Railway Co. v. Whiteaker*, 239 U.S. 421, 425, 36 S.Ct. 152, 60

L.Ed. 360 (1915).

It is similarly important to recognize the longstanding principle that provided a plaintiff has even

a slight possibility of a right to relief against a non-diverse or in-state defendant, the actual motive of the

plaintiff in joining such defendant in the action is immaterial. As held by the United States Supreme

Court in *Chicago, Rock Island, & Pacific Railway Co. v. Schwyhart*, 277 U.S. 184, 193, 33 S.Ct. 250, 57

L.Ed. 473 (1913), "the motive of the plaintiff, taken by itself, does not affect the right to remove.  **If there**

**is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to**

**assert the right**."  (Emphasis added).

As explained in *Chicago, Burlington, & Quincy Railway Co. v. Willard*, 220 U.S. 413, 427, 31

S.Ct. 460, 55 L.Ed. 521 (1911):

> [The plaintiff] may have preferred to have the case tried in the state court, just as the Iowa corporation preferred the Federal court. **But these preferences or motives, not fraudulent or unnatural, were of no consequence.** They were immaterial in determining whether the plaintiff had a legal right to bring a joint action against the lessor and lessee companies, and to carry it on in that form to a conclusion.

(Emphasis added). *Accord Whiteaker*, 239 U.S. at 424-25; *Bucksnort Oil Co., Inc.*, 585 F. Supp. at 886; *Dollar*, 814 F. Supp. at 541; *Higgins*, 635 F. Supp. at 1184; *Bankard*, 898 F. Supp. at 428; *Hicks v. Wyeth-Ayerst Laboratories Co.*, 899 F. Supp. 312, 314 (E.D.Tex. 1995); *Alexander v. Wyeth-Laboratories, Inc.*, 889 F. Supp. 271, 276 (E.D.Tex. 1995); 14B Wright, Miller & Cooper, *Fed. Prac. & Proc. Juris.3d* § 3723 (1998).

Moreover, as previously set forth, while the Court may consider matters outside of the pleadings, **a claim of fraudulent joinder cannot be made based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses**. *Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934) (emphasis added); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.). *Accord Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850, at *5 (S.D.W. Va. July 9, 2014).

A corporation is a citizen of the state of its incorporation and where its principal place of business is. A corporation's principal place of business is where its "nerve center" is located. *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings,*

*L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).  A partnership is a citizen of any state of which any partner is a

citizen.  *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015, 194 L. Ed. 2d 71 (2016).

### III.    ARGUMENT

When the above law is applied to the facts of this case, it is clear that the defendants have not met

their heavy burden of establishing fraudulent joinder.  Complete diversity does not exist in this case

because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens

of the State of West Virginia.  Plaintiffs asserted claims in their complaint that Flexsys America Limited

operated the Nitro, West Virginia plant where herbicides were produced. According to the West Virginia

Secretary of State, Flexsys America Limited is a West Virginia General Partnership, effective May 15, 1995,

with its principal business address of 5509 Big Tyler Road, Cross Lanes, West Virginia 25313-1347. (See

Secretary of State Business and Licensing – On Line Data Services for Flexsys America Limited, Ex. A) The

partner for this domestic partnership is Flexsys America LP, with the address listed of 5509 Big Tyler Road,

Suite 1, Cross Lanes, West Virginia, 25313-1347. (Ex. A) The same was alleged against defendant Monsanto

Management Club-Nitro Plant, which is a West Virginia corporation. (Ex. B)

Monsanto claims that the defendant Flexsys America Limited was incorrectly named in this case and

that the owner and operator of the Nitro plant is Flexsys America, L.P. with what it summarily claims are out

of state partners.  In its notice of removal, nowhere does Monsanto claim that the named defendant, Flexsys

America Limited, is a diverse party or that it does not exist as an entity. Even if it did claim this, the West

Virginia Secretary of State information would dispute that claim.  (See Ex. A)  While ambiguously worded,

what Monsanto does is make a disputed factual claim that the Nitro plant at issue in this lawsuit was solely

owned and operated by a company called Flexsys America, L.P. However, which company or companies

owned or operated the Nitro plant (they can be different and there can be more than one) is a disputed

question of fact, and is not the proper subject of determination by this Court.  This is particularly true where

there has been no opportunity for discovery.   At most, Monsanto's allegations, compared to the Secretary of

State documentation, create an ambiguity about the status and location of these entities and does not resolve

the issue of all of the entities that owned, operated or controlled the Nitro plant.  This ambiguity must be

resolved against the defendants. *See Agee v. Monsanto Co.*, No. 3:09-CV-1336, 2010 WL 3835647, at *5
(S.D.W. Va. Sept. 29, 2010)("At most, they have demonstrated that there is ambiguity surrounding [Non-
diverse defendant's] principal place of business—ambiguity that must be resolved against the defendants. …If
the allegations in the plaintiff's Complaint are true, the plaintiff will certainly be able to establish a cause of
action against [non-diverse defendant] in state court")

Litigation over who had responsibility for oversight, training, policies and procedures, including
shared responsibilities and through shared services, can and often does include multiple companies.  Plaintiffs
have pleaded that Flexsys America Limited owned and operated the Nitro plant, and, to the extent Monsanto
denies that, it will be a determination to be made by the jury or, at best, by the Court upon a properly
supported summary judgment. Defendant Monsanto may not effectively obtain a dismissal of another named,
non-diverse defendant prior to any discovery, in order to obtain diversity jurisdiction, and lacks standing to
do so even after discovery. Therefore, Flexsys America Limited, as a party defendant, defeats diversity and
this Court lacks jurisdiction over the case.

If Monsanto is claiming that Flexsys America Limited is not a separate legal entity as represented by
the West Virginia Secretary of State, i.e., that it does not exist, this simply creates a disputed fact and an
ambiguity that must be resolved against the defendant.  At the very least, the plaintiffs should be permitted
discovery to determine whether Flexsys America Limited is a separate legal entity as represented by the West
Virginia Secretary of State, and to determine the citizenship of its members rather than rely upon Monsanto's
factual assertions. Plaintiffs are at a distinct disadvantage and do not have access to material information prior
to filing a claim.  Without discovery, defendants could gain jurisdiction with self- serving or even false
affidavits, without the opportunity for a plaintiff or the Court to determine whether whatever they claim is
true, and plaintiffs would be without the ability to gather admissible evidence through discovery to rebut it.
This is particularly so with what is often a shell game of multiple companies on top of companies with
intervening holding companies, and joint ventures as exists here.

Monsanto goes on to dispute the other factual merits of the plaintiffs' claims in order to try to obtain
diversity jurisdiction, which is improper. Defendant Monsanto says that, assuming Flexsys is deemed to be a

9

West Virginia citizen for purposes of diversity, the plaintiff's substantive allegations are false. Specifically, Monsanto makes the disputed factual claim that Flexsys America L.P., the entity it claims owned and operated the Nitro plant, has never been involved in any way with glyphosate herbicides or any other kind of herbicides. Monsanto further claims another company, Flexsys America, LLC, who is also not a defendant, has not been involved with herbicides. These are precisely the disputed factual denials of the substance of plaintiffs' claims that cannot be the basis for removal. Monsanto cannot remove the case by arguing that the plaintiff's underlying substantive claims against a non-diverse defendant are false.

Importantly, with this particular argument Monsanto does not base its contention of fraudulent joinder on an assertion that the allegations of plaintiffs' complaint, if assumed true, cannot establish a valid claim for relief against the non-diverse defendants under the laws of West Virginia. Rather, they attack the merits and truthfulness of plaintiffs' allegations by asserting that plaintiffs' claims are false.[4] It is well known that a claim of fraudulent joinder cannot be sustained based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses. *See*, *e.g.*, *Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Wells' Dairy, Inc. v. American Industrial Refrigeration, Inc.*, 157 F. Supp.2d 1018, 1034-41 (N.D.Iowa 2001); *Grobe v. Vantage Credit Union*, 679 F. Supp.2d 1020, 1026 (E.D.Mo. 2010); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.); *Hampton v. Georgia-Pacific L.L.C.*, Civil Action No. 11-0363-KD-N, 2011 WL 5037587, at **6-8 (S.D.Ala. Sept. 26, 2011) (Nelson, M.J.). Therefore, Monsanto's removal is improper and this case should be remanded.

---

[4] Plaintiffs again note that there has been no opportunity for discovery in this case.

In support of their disputed assertions, the defendants have submitted two self–serving affidavits from current and former management of its associated companies restating their factual position that the plaintiffs' claims are false. Again, self-serving affidavits disputing plaintiffs' facts do not change the impermissible basis for Monsanto's removal. Defendants nearly always deny the factual allegations made against them in a complaint.

Furthermore, for Monsanto to claim that the defendants only made rubber products at the Nitro plant and never made herbicides is false. The Court can take judicial notice that the Nitro plant manufactured and produced pesticides. The Agent Orange multi-plaintiff litigation, which at one point was pending in the Southern District of West Virginia, resulted in a multi-million-dollar settlement for exposure of residents surrounding the Nitro plant. *Agee v. Monsanto Co.,* No. 3:09-CV-1336, 2010 WL 3835647, (S.D.W. Va. Sept. 29, 2010) (remanding case to state court). Agent Orange is a pesticide. Even assuming as true that the Nitro plant did not manufacture glyphosate, which cannot be assumed for purposes of removal jurisdiction, the Nitro plant had a lab where they tested Monsanto products. Plaintiffs have pleaded that defendants researched, designed and tested their products at the Nitro plant, which very well would have included their pesticides and could have involved testing and research regarding glyphosate and its precursors. These facts must be presumed true in a diversity analysis.

Plaintiffs are entitled to discovery on these factual issues, rather than the Court conclusively relying on Monsanto's self-serving denials in its affidavits. Monsanto's disputed contentions require a weighing of the evidence and credibility of the witnesses and, therefore, are not proper grounds upon which to raise a claim of fraudulent joinder. These arguments apply equally to the other West Virginia Corporation, Monsanto Management Club – Nitro Plant

Monsanto Management Club – Nitro Plant, may turn out to be solely what Monsanto portends it to be. However, plaintiffs have not had the opportunity to conduct discovery to determine this. The affidavit and, to a limited extent, the charter, say it was a corporation for all of Monsanto management and Monsanto claims that only arranged social gatherings, but why would the Monsanto management of the Nitro Plant, which is not a large group, create a corporation just to go to dinner parties together? Monsanto admits it

consisted of the management and professional staff of the Nitro plant. At a minimum, plaintiffs are entitled to discovery to determine the scope of what defendant Monsanto Management did.  Did it provide training or education?  Did it provide information about Monsanto's other products and activities?  Did it sponsor seminars? Any of those activities could lead to knowledge of the dangers of glyphosate, a foreseeable risk of injury, and a concurrent duty to disclose and warn. This is true even if it is what Monsanto claims.

Finally, plaintiffs pleaded that the defendants were participants in a joint venture or enterprise involving glyphosate products. Taken as true, then the non-diverse defendants would be jointly responsible for Monsanto's glyphosate activities that occurred elsewhere.

Monsanto argues that plaintiffs want to keep their case in state court.  If plaintiffs' case remains in federal court, it may be transferred into the multi-district litigation where, as Monsanto admits, there are thousands of cases. Mr. Bryant may never see any justice while he is still alive, waiting for his case to be picked among thousands, if it ever is picked.  This is why multi-district litigation benefits the defendant wrongdoers in more ways than one.  Significant delay of plaintiffs' day in court is not appropriate or fair due process.  As such, it is just that there is a West Virginia defendant involved in this case that accords jurisdiction in state court.  Regardless of plaintiffs' reasons, if plaintiffs have even a slight possibility of a right to relief against a non-diverse or in-state defendant, the actual motive of the plaintiff in joining such defendant in the action is immaterial.  As held by the United States Supreme Court in *Chicago, Rock Island, & Pacific Railway Co. v. Schwyhart*, 277 U.S. 184, 193, 33 S.Ct. 250, 57 L.Ed. 473 (1913), "the motive of the plaintiff, taken by itself, does not affect the right to remove.  **If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right**."

As long held by the Fourth Circuit, the standard for assessing a claim of fraudulent joinder is even more liberal than that for addressing a Rule 12(b)(6) motion to dismiss.  All questions of fact and law must be resolved in favor of the plaintiffs, and there must only be a glimmer of hope that the plaintiffs' claim may succeed.  *Hartley*, 187 F.3d at 424-26; *Marshall*, 6 F.3d at 232-33.  There is a glimmer of hope that plaintiffs' claim against the non-diverse defendants may succeed in this case, and defendants, therefore, have failed to meet their heavy burden of establishing fraudulent joinder.

12

Second, even assuming that Flexsys America Limited is not a separate entity, and was misnamed, which it was not, and assuming the Monsanto Management Club-Nitro Plant was not a West Virginia defendant, which it is, Monsanto has failed to provide sufficient undisputed information from which this court can determine the citizenship of what they claim are the proper parties. Proving citizenship with multiple entities, including corporations, joint ventures, partnerships and limited liability companies, is complex. For example, here Monsanto claims that Flexsys America, L.P. solely owned and operated the Nitro plant (which as discussed above, plaintiff disputes). Monsanto then claims that the only partners of Flexsys America, L.P., were Flexsys America, LLC, and Solutia, Inc. If proved true, the Court must determine the citizenship of all of the members of Flexsys America, LLC. as citizenship of the members dictates diversity for a limited liability corporation.

However, Monsanto did not state or supply documentation of the members of Flexsys America, LLC. Monsanto simply claims that it is a wholly owned subsidiary of Solutia, Inc. That does not mean that Flexsys America, LLC has no members and does not relieve Monsanto from naming and proving the citizenship of all of its members. Therefore, even resolving disputed facts in favor of Monsanto, the motion is without proper support and must be denied.

Additionally assuming,[5] because it is not stated in the motion or shown convincingly in the record, that the only member of Flexsys America, LLC is Solutia, Inc., the Court must then determine the citizenship of Solutia, Inc. under the "nerve center" test enumerated in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). In *Hertz,* the Supreme Court discussed the citizenship of corporations and concluded that "principal place of business" refers to the state where a corporation's officers "direct, control, and coordinate the corporation's activities," called its "nerve center." *Hertz*, 559 U.S. 77, 92–93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010). The nerve center is where the actual center of direction, control, and coordination occurs and "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion). *Id.*

---

[5] Assumptions on top of assumptions do not serve as a proper basis to find jurisdiction.

According to publicly available data, which is all the plaintiffs can rely upon without proper opportunity for discovery, Flexsys and Solutia, Inc. were created, in part, or otherwise in a joint venture for purposes of the Nitro plant. (See Excerpt from Monsanto 2012 From 10-K, p. 128, Ex. C.)  Monsanto claims Solutia's principal place of business was in Missouri, but the nerve center test requires more than that. Where did Solutia hold its Board Meetings, in different states, or by teleconference with its officers located in West Virginia and elsewhere? Where were the main decisions made with respect to the Nitro plant? Where was the actual center of direction, control, and coordination of the Nitro plant? All of these questions are not addressed in Monsanto's notice of removal, as required by *Hertz.* Therefore, removal is not properly supported and must be denied.[6] At the very least, discovery is required in order for the Court to make a proper determination.

## IV.     CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that their Motion to Remand be granted.  Plaintiffs also respectfully request that they be awarded the reasonable costs and expenses, including attorney fees, incurred in bringing their Motion to Remand.

<div style="text-align: right">

ROGER BRYANT
and JUDY BRYANT,

By Counsel

</div>

/s/ Kelly Elswick-Hall
Marvin W. Masters
West Virginia State Bar No. 2359
Kelly Elswick- Hall
West Virginia State Bar No. 6578
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
(304) 342-3106
Counsel for Plaintiffs
F:\2\624\b001.docx

---

[6] This nerve center analysis may also need to be done with respect to the time period when Monsanto owned and operated the Nitro plant, as well. The actual center of direction, control, and coordination of the Nitro plant during the time Monsanto owed it from 1953 through the time it turned the plant over to others, likely was Nitro, West Virginia. Monsanto does not address this in its notice and discovery would be necessary for the Court to make a proper determination, should the Court disregard the other West Virginia defendants.

**CERTIFICATE OF SERVICE**

I, Kelly Elswick-Hall, hereby certify that on September 18, 2019, I electronically filed "MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> Charles M. Love III (WV Bar No. 2254)
> Floyd E. Boone Jr. (WV Bar No. 8784)
> William M. Lorenson (WV Bar No. 13223)
> Bowles Rice LLP
> 600 Quarrier Street
> Post Office Box 1386
> Charleston, West Virginia 25325-1386
> Counsel for Defendant Monsanto Company and
> Flexsys America Limited
>
> Aimee H. Wagstaff
> Andrus Wagstaff, PC
> 7171 West Alaska Drive
> Lakewood, Colorado 80226
> Co-counsel for Plaintiffs
> *Pro Hac Vice to be filed*

And by first class U.S. Mail on the following non-ECF participants:

Monsanto Management Club - Nitro Plant
c/o Otto J. Dresher
2023 Lincoln Avenue
St. Albans, West Virginia 25177

> /s/ Kelly Elswick-Hall
> West Virginia State Bar No. 6578
> Marvin W. Masters
> West Virginia State Bar No. 2359
> The Masters Law Firm lc
> 181 Summers Street
> Charleston, West Virginia 25301
> 304-342-3106
> keh@themasterslawfirm.com
> mwm@themasterslawfirm.com