Kelly Elswick-Hall
West Virginia State Bar No. 6578
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
304-342-3106
keh@themasterslawfirm.com
mwm@themasterslawfirm.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC |
| This document relates to:<br><br>*Roger Bryant et al., vs. Monsanto Company, et al.,* Case No. 3:19-cv-06395-VC | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**<br><br>**Hearing date November 21, 2019 at 10:00 am** |

## **TABLE OF CONTENTS**

I.    Introduction. ..........................................................................................................................1

II.   Statement of the Case .............................................................................................................1

III.  Standard for Removal..............................................................................................................3

IV.   Argument…..............................................................................................................................8

V.    Conclusion …………………………………………………………………………………15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) ................................................................. 3

*Agee v. Monsanto Co.*, No. 3:09-CV-1336, 2010 WL 3835647 (S.D.W. Va. Sept. 29, 2010).......................... 9,11

*Alexander v. Wyeth-Laboratories, Inc.,* 889 F. Supp. 271 (E.D.Tex. 1995) ........................................ 7

*Americold Realty Tr. v. Conagra Foods, Inc.,* 136 S. Ct. 1012, 194 L. Ed. 2d 71 (2016) ................................ 8

*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir. 1981)................................................................ 6

*Bankard v. Wyeth-Ayerst Laboratories Co.,* 898 F. Supp. 426 (E.D.Tex. 1995)............................................ 6,7

*Bucksnort Oil Co., Inc. v. National Convenience Stores, Inc.,* 585 F. Supp. 883 (M.D.Tenn. 1984). ............. 6,7

*Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 34 S.Ct. 278 (1914).......................................... 6

*Chicago, Burlington, & Quincy Railway Co. v. Willard,* 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521 (1911). .......................................................................................................................................... 7

*Chicago, Rock Island, & Pacific Railway Co. v. Schwyhart,* 277 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1913). ................................................................................................................................ 7,13

*Chicago, Rock Island, & Pacific Railway Co. v. Whiteaker,* 239 U.S. 421, 36 S.Ct. 152, 60 L.Ed. 360 (1915).. ....................................................................................................................................... 6,7

*Chumley v. Great Atlantic & Pacific Tea Co.,* 191 F. Supp. 254 (M.D.N.C. 1961). ..................................... 7,10

*Clarence E. Morris, Inc. v. Vitek,* 412 F.2d 1174 (9th Cir. 1969)........................................................ 8

*Coley v. Dragon Limited,* 138 F.R.D. 460 (E.D.Va. 1990) ................................................................. 6

*Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245 (N.D.Ala. March 12, 2014) (Hopkins, J.)........................................................................................................................ 7,11

*Dollar v. General Motors Corp.,* 814 F. Supp. 538 (E.D.Tex. 1993) ................................................... 6,7

*Foss v. Rand-Lewis, No. EDCV-16-2458-MWF (SPx),* 2017 WL 7806632 (E.D. Cal. Jan. 19, 2017)............... 8

*Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir. 1992)............................................................................ 3

*Grancare, LLC v. Thrower by & through Mills,* 889 F.3d 543 (9th Cir. 2018)  ........................................... 3,5

*Grobe v. Vantage Credit Union,* 679 F. Supp.2d 1020 (E.D.Mo. 2010)....................................................... 10

*Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689 (9th Cir. 2005)...................................................... 3

*Hartley v. CSX Transportation, Inc.,* 187 F.3d 422 (4th Cir. 1999)....................................................... 3,5,6,13

*Hertz Corp. v. Friend,* 559 U.S. 77 (2010).......................................................................................... 8,14

*Hicks v. Wyeth-Ayerst Laboratories Co.,* 899 F. Supp. 312 (E.D.Tex. 1995).............................................. 7

*Higgins v. Pittsburgh-Des Moines Co.,* 635 F. Supp. 1182 (S.D.Tex. 1986)....................................6,7

*Hill, Peterson, Carper, Bee & Deitzler v. XL Specialty Ins. Co.,* 261 F. Supp.2d 546 *(S.D.W.Va. 2003)*..........5

*Holcomb v. Bingham Toyota,* 871 F.2d 109 (9th Cir. 1989) ...............................................................3

*Hunter v. Philip Morris USA,* 582 F.3d 1039 (9th Cir. 2009)..........................................................4,7

*In re Roundup Prod. Liab. Litig.,* No. 16-MD-02741-VC, 2019 WL 2943348 (N.D. Cal. July 9, 2019)...4,6,13

*Jones v. Capers,* 166 F. Supp. 617 (W.D.Ark. 1958)..................................................................7,10

*Junk v. Terminix Int'l Co.,* 628 F.3d 439 (8th Cir. 2010) ................................................................5

*Kyle v. Envoy Mortg., LLC,* No. 18-CV-2396-BAS-WVG, 2018 WL 6600105, (S.D. Cal. Dec. 17, 2018)..........................................................................................................................8

*Leonard v. St. Joseph Lead Co.,* 75 F.2d 390 (8th Cir. 1935) .......................................................7,10

*Marshall v. Manville Sales Corporation,* 6 F.3d 229 (4th Cir. 1993) .........................................3,4,5,13

*Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089 (9th Cir. 2003) ........................................3

*Mayes v. Rapoport,* 198 F.3d 457 (4th Cir. 1999)..........................................................................5

*McWilliams v. Monarch Rubber Co.,* 70 F. Supp.2d 663 (S.D.W.Va. 1999) ........................................5

*Morris v. E. I. Du Pont De Nemours & Co.,* 68 F.2d 788 (8th Cir. 1934) .......................................7,10

*Parks v. New York Times Co.,* 308 F.2d 474 (5th Cir. 1962) .........................................................7,10

*Pritt v. The Republican National Committee,* 1 F. Supp.2d 590 (S.D.W.Va. 1998) ...............................5

*Rinehart v. Consolidation Coal Co.,* 660 F. Supp. 1140 (N.D.W.Va. 1987) .........................................4

*Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998) ................................................4,8

*Riverdale Baptist Church v. Certainteed Corp.,* 349 F. Supp.2d 943, 948 (D.MD. 2004) .....................7,10

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004)...............8

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941).................................................3

*Storr Office Supply Division v. Radar Business Systems—Raleigh, Inc.,* 832 F. Supp. 154 (E.D.N.C. 1993)..........................................................................................................................6

*Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.,* 436 Fed. Appx. 888, 2011 WL 2150183 (11th Cir. 2011) .......................................................................................................7,10

*Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850 (S.D.W. Va. July 9, 2014)...................................................................................................................................7

*Wells' Dairy, Inc. v. American Industrial Refrigeration, Inc.,* 157 F. Supp.2d 1018 (N.D.Iowa 2001) ...........10

*Wise v. Travelers Indemnity Co.,* 192 F. Supp.2d 506 (N.D.W.Va. 2002). ......................................................3,5

**Statutes**

28 U.S.C. § 1441(a).................................................................................................................................... 3

**Other Authorities**

14A Charles A. Wright et al., *Federal Practice & Procedure* § 3723 (1985). ....................................................4

14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 ..........................................................3

14B Wright, Miller & Cooper, *Fed. Prac. & Proc. Juris.3d* § 3723 (1998).................................................4,6,7

## I.     INTRODUCTION

The plaintiffs, by and through the undersigned counsel, hereby submit the following Memorandum of Law in support of their Motion to Remand. Plaintiffs have properly pleaded causes of action against non-diverse defendants. While defendant Monsanto Company disputes the underlying substantive allegations against the non-diverse defendants, its factual denials are not sufficient to create diversity jurisdiction under long-standing applicable law.

Additionally, even resolving all of the facts in favor of Monsanto, which would be improper, the Court has not been provided with sufficient, undisputed information from which it can determine the citizenship of the entities Monsanto claims owned and operated the Nitro plant at issue in this case. As it is Monsanto's burden to show complete diversity, and it has not conclusively done so, the case must be remanded. At a minimum, plaintiffs are entitled to conduct discovery on the jurisdictional issues rather than relying upon cursory, self-serving affidavits provided by a defendant.

Monsanto submits self-serving affidavits consisting of denials made by Monsanto- related entities and management.  To deny plaintiffs' motion to remand, the Court will need to believe all the disputed facts claimed by Monsanto, and disregard all of plaintiffs' claims and pleadings.  Plaintiffs cannot possibly be expected to prove their causes of action against the defendants, diverse or non-diverse, without having any opportunity to conduct discovery. Plaintiffs cannot even cross examine the proponents of the affidavits.  Often times, defendants in civil suits claim that they were not involved or that they are "not the right guy," as Monsanto does here, when thorough discovery reveals that is not true. For the Court to rely conclusively and exclusively on defendant's evidence, when plaintiffs have no opportunity for discovery, gives it an advantage that effectively eliminates plaintiffs' due process. [1]

## II.  STATEMENT OF THE CASE

Roger and Judy Bryant are residents of Mason County, West Virginia. Plaintiff Roger Bryant used glyphosate products beginning in the late 1970's to control weeds on his property and on his father's farm property. (Plaintiffs' Complaint, Ex. 1, ¶. 4) He purchased those products in and around Mason County. (Compl. ¶. 5) He developed Non-Hodgkin's Lymphoma ("NHL") as a result of exposure to glyphosate, including Roundup®, which

---

[1] Plaintiffs timely filed a Motion to Remand while the case was in the Southern District of W.Va. (Motion and Memorandum w/o exhibits, Ex. 2) The Court did not rule upon the motion prior to transfer.  As such, plaintiffs file again here, with the addition of 9th Circuit law.

was directly and proximately caused by the unreasonably dangerous and defective nature of Roundup®, and its active ingredient, glyphosate, and the wrongful conduct of the defendants. (Compl. Ex. 1, ¶ 2)

According the to the West Virginia Secretary of State, Defendant Flexsys America Limited, is a West Virginia General Partnership, with the address of its partner listed as Flexsys America, LP, with an address of 5509 Big Tyler Road, Suite 1, Cross Lanes, West Virginia, which Plaintiffs are informed and believe, at relevant times, operated a plant and premises in Nitro, West Virginia (hereinafter "Nitro plant"). (See W.Va. Secretary of State Business and Licensing – On Line Data Services for Flexsys America Limited, Ex. 3,[2] and Comp., Ex. 1, ¶ 17)

According the to the West Virginia Secretary of State, at relevant times, defendant Monsanto Management Club - Nitro Plant was a West Virginia Corporation, which Plaintiffs are informed and believe, during relevant times, managed a plant in Nitro, West Virginia. (See W.Va. Secretary of State Business and Licensing – On Line Data Services for Monsanto Management Club-Nitro Plant, Ex. 4, and Comp., Ex. 1, ¶ 15)

As pleaded in the Complaint, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained an herbicide division that participated in the design, research, development, production, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of herbicides. (Compl., Ex.1, ¶. 20) Further, plaintiffs are informed and believe that, at relevant times, the Nitro Plant contained a lab, which participated in the design, research, development, and testing of herbicides. (Compl., Ex. 1, ¶. 21)

In their complaint for personal injuries, plaintiffs have asserted West Virginia common-law claims of negligence, strict product liability for defective manufacturing, defective design, and failure to warn, violations of the West Virginia Consumer Protection Act, breach of implied warranties, fraud and civil conspiracy, recklessness and tort of outrage and other wrongful conduct against all defendants. No federal common-law or statutory claims have been asserted in this civil action.   (See Comp., Ex. 1, generally) As such, complete diversity does not exist in this case because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens of the State of West Virginia.  (See Comp., Ex. 1, generally)

---

[2]  West Virginia Secretary of State Online Data Services
https://apps.sos.wv.gov/business/corporations/organization.aspx?org=449522

### III.     STANDARD FOR REMOVAL

It is well settled that the trend of court decisions is to restrict and limit the removal jurisdiction of federal courts.

> [T]here is ample case support . . . at all levels of the federal courts—the Supreme Court, the courts of appeal, and the district courts—for the proposition that removal statutes will be strictly construed.  Some federal courts go further than simply speaking of applying the principle of strict construction and say that all doubts on the question should be resolved against accepting removal jurisdiction.  These propositions are all consistent with the notion that the federal courts are courts of limited jurisdiction.

14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 at 341-51.

The Ninth Circuit holds that all doubts must be resolved against accepting removal jurisdiction:  "To protect the jurisdiction of state courts, removal jurisdiction [under 28 U.S.C. § 1441(a)] should be strictly construed in favor of remand." *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). There is a "strong presumption against removal jurisdiction." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). The party seeking removal has the burden of establishing federal jurisdiction. *Holcomb v. Bingham Toyota, 871 F.2d 109, 110 (9th Cir. 1989).* There must be **no doubt** that jurisdiction exists. If doubt exists, remand is required. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal.") (emphasis added). "Doubts as to removability must be resolved in favor of remanding the case to state court." *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003). The Fourth Circuit holds the same. *See Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th Cir. 1993); *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 425 (4th Cir. 1999); *Wyatt v. Charleston Area Medical Center, Inc.*, 651 F. Supp.2d 492, 495 (S.D.W.Va. 2009); *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d 506, 511 (N.D.W.Va. 2002).

 Under the `complete diversity rule,' no party may share common citizenship with any opposing party. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) *accord Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d at 510-11. An exception exists if a defendant can show that a party has been fraudulently joined. Id. at 548. In *Grancare*, 889 F.3d at 548-9, the 9th Circuit discussed the standard for fraudulent joinder:

There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) ). Fraudulent joinder is established the second way if a defendant shows that an "individual[ ] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam) ) (emphasis added). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Id.* (citations omitted).

We have upheld rulings of fraudulent joinder where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant. See *Ritchey*, 139 F.3d at 1320; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). We have also upheld such rulings where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant. See *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (defendant's conduct was privileged under state law); *United Comput. Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (plaintiff's claims against alleged sham defendant were all predicated on a contract to which the defendant was not a party); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426–27 (9th Cir. 1989) (same). We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal. See *Hunter*, 582 F.3d at 1046 (holding that an implied preemption affirmative defense was not a permissible ground for finding fraudulent joinder).

Recently, this Court in the Roundup litigation has held: "The doctrine of fraudulent joinder applies when a non-diverse defendant has "no real connection with the controversy. …" and "If it is "obvious" that a plaintiff has no cause of action against a defendant." *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2019 WL 2943348, at *1 (N.D. Cal. July 9, 2019) *(citing Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998)).* In *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232 (4th Cir. 1993), addressing a claim of fraudulent joinder, the Fourth Circuit Court of Appeals held:

In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:
"[T]hat **there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court**; or
[T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." …**The burden on the defendant claiming fraudulent joinder is heavy:  the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. ...  A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted**.  14A Charles A. Wright *et al.*, *Federal Practice & Procedure* § 3723, at 353-54 (1985).

*Marshall*, 6 F.3d at 232-33 (emphases added, internal citations omitted).  *Accord Rinehart v. Consolidation Coal*

*Co.*, 660 F. Supp. 1140, 1141-42 (N.D.W.Va. 1987) (Kidd, J.) ("All factual allegations must be evaluated in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. . . . Also, the district court must resolve any uncertainties as to current state of controlling law in favor of plaintiffs." (internal citations omitted)); *Hill, Peterson, Carper, Bee & Deitzler v. XL Specialty Ins. Co.*, 261 F. Supp.2d 546, 548 (S.D.W.Va. 2003); *Pritt v. The Republican National Committee*, 1 F. Supp.2d 590, 591-92 (S.D.W.Va. 1998).

**This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).** *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). "The test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018) c*iting Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("no possibility" standard) and *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445–46 (8th Cir. 2010) (defendant must establish that there is no "colorable claim" against the alleged sham defendant). *Accord Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999); *Wise v. Travelers Indemnity Co.*, 192 F. Supp.2d at 511; *McWilliams v. Monarch Rubber Co.*, 70 F. Supp.2d 663, 664-65 (S.D.W.Va. 1999), and cases cited therein.

The *Hartley* Court further explained:
**In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact.** Allowing joinder of the public defendants is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; litigation over whether the case is in the right court is essentially a waste of time and resources. (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. **The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules**.

The district court erred by delving too far into the merits in deciding a jurisdictional question. . . .  It also incorrectly placed the burden on Hartley to show that her claims may succeed rather than requiring CSX to negate all possibility of recovery.  The issues that the district court attempted to resolve are properly left to the state court for later stages of litigation.

**We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case.  Hartley's claims may not succeed ultimately, but ultimate success is not required to defeat removal**. *Marshall*, 6 F.3d at 233.  **Rather, there need be only a slight**

**possibility of a right to relief**. *Id.* **Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends**.

*Hartley*, 187 F.3d at 425-26 (emphases added).

As explained by this Court, fraudulent joinder only exists "if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *In re Roundup Prod. Liab. Litig*., No. 16-MD-02741-VC, 2019 WL 2943348, at *1 (N.D. Cal. July 9, 2019) "Having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981). *Accord Coley v. Dragon Limited*, 138 F.R.D. 460, 466 (E.D.Va. 1990); *Storr Office Supply Division v. Radar Business Systems—Raleigh, Inc.*, 832 F. Supp. 154, 156 (E.D.N.C. 1993); *Bucksnort Oil Co., Inc. v. National Convenience Stores, Inc.*, 585 F. Supp. 883, 885-86 (M.D.Tenn. 1984); *Bankard v. Wyeth-Ayerst Laboratories Co.*, 898 F. Supp. 426, 428 (E.D.Tex. 1995); *Higgins v. Pittsburgh-Des Moines Co.*, 635 F. Supp. 1182 (S.D.Tex. 1986); *Dollar v. General Motors Corp.*, 814 F. Supp. 538, (E.D.Tex. 1993); 14B Wright, Miller & Cooper, *Fed. Prac. & Proc. Juris.3d* § 3723 (1998), and cases cited therein.

As long held by the United States Supreme Court,

It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. . . .
. . . [T]he showing must consist of a statement of facts rightly engendering th[e] conclusion [of fraudulent joinder]. **Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet "fraudulent" to the joinder, will not suffice:  the showing must be such as compels the conclusion that the joinder is without right and made in bad faith**  . . . .

*Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 151-52, 34 S.Ct. 278 (1914) (emphases added).

*Accord Chicago, Rock Island, & Pacific Railway Co. v. Whiteaker*, 239 U.S. 421, 425, 36 S.Ct. 152, 60 L.Ed. 360 (1915).

It is similarly important to recognize the longstanding principle that provided a plaintiff has even a slight possibility of a right to relief against a non-diverse or in-state defendant, the actual motive of the plaintiff in joining such defendant in the action is immaterial. As held by the United States Supreme Court in *Chicago, Rock*

*Island, & Pacific Railway Co. v. Schwyhart*, 277 U.S. 184, 193, 33 S.Ct. 250, 57 L.Ed. 473 (1913), "the motive of

the plaintiff, taken by itself, does not affect the right to remove.  **If there is a joint liability, he has an absolute**

**right to enforce it, whatever the reason that makes him wish to assert the right**."  (Emphasis added).  As

explained in *Chicago, Burlington, & Quincy Railway Co. v. Willard*, 220 U.S. 413, 427, 31 S.Ct. 460, 55 L.Ed.

521 (1911):

> [The plaintiff] may have preferred to have the case tried in the state court, just as the Iowa corporation
> preferred the Federal court.  **But these preferences or motives, not fraudulent or unnatural, were of no**
> **consequence**.  They were immaterial in determining whether the plaintiff had a legal right to bring a joint
> action against the lessor and lessee companies, and to carry it on in that form to a conclusion.

(Emphasis added).  *Accord Whiteaker*, 239 U.S. at 424-25; *Bucksnort Oil Co., Inc.*, 585 F. Supp. at 886; *Dollar*,

814 F. Supp. at 541; *Higgins*, 635 F. Supp. at 1184; *Bankard*, 898 F. Supp. at 428; *Hicks v. Wyeth-Ayerst*

*Laboratories Co.*, 899 F. Supp. 312, 314 (E.D.Tex. 1995); *Alexander v. Wyeth-Laboratories, Inc.*, 889 F. Supp.

271, 276 (E.D.Tex. 1995); 14B Wright, Miller & Cooper, *Fed. Prac. & Proc. Juris.3d* § 3723 (1998).

Moreover, as previously set forth, while the Court may consider matters outside of the pleadings, **a claim**

**of fraudulent joinder cannot be made based upon a disputed assertion that plaintiffs' non-jurisdictional,**

**substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses**.

*Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934) (emphasis added); *Leonard v. St. Joseph*

*Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962);

*Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp.

617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92,

2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948

(D.MD. 2004); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March

12, 2014) (Hopkins, J.). *Accord Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850, at

*5 (S.D.W. Va. July 9, 2014).  *Accord Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (the

preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis

of federal law. In such a case, the defendant has failed to overcome the "strong presumption against removal

jurisdiction.")  Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory."  *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998)

A corporation is a citizen of the state of its incorporation and where its principal place of business is. A corporation's principal place of business is where its "nerve center" is located. *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).  A partnership is a citizen of any state of which any partner is a citizen.  *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015, 194 L. Ed. 2d 71 (2016).[3]

## IV.    ARGUMENT

When the above law is applied to the facts of this case, it is clear that the defendants have not met their heavy burden of establishing fraudulent joinder.  Complete diversity does not exist in this case because the plaintiffs and defendants Flexsys America Limited and Monsanto Management Club are citizens of the State of West Virginia. Plaintiffs asserted claims in their complaint that Flexsys America Limited operated the Nitro, West Virginia plant where herbicides were produced. According to the West Virginia Secretary of State, Flexsys America Limited is a West Virginia General Partnership, effective May 15, 1995, with its principal business address of 5509 Big Tyler Road, Cross Lanes, West Virginia 25313-1347. (See Secretary of State Business and Licensing – On Line Data Services for Flexsys America Limited, Ex. 3) The partner for this domestic partnership is Flexsys America LP, with the address listed of 5509 Big Tyler Road, Suite 1, Cross Lanes, West Virginia, 25313-1347. (Ex. 3) The same was alleged against defendant Monsanto Management Club-Nitro Plant, which is a West Virginia corporation. (Ex. 4)

Monsanto claims that the defendant Flexsys America Limited was incorrectly named in this case and that the owner and operator of the Nitro plant is Flexsys America, L.P. with what it summarily claims are out of state partners.

---

[3] Prior to transfer to this Court, Monsanto filed a notice **incorrectly** claiming that one of the non-diverse defendants was improperly served. This is of no import because as a general matter, "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and *not from the fact of service.*"  *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) (emphasis added). Thus, "the citizenship of all defendants, *whether served or not*, must be considered in establishing complete diversity." *Foss v. Rand-Lewis*, No. EDCV-16-2458-MWF (SPx), 2017 WL 7806632, at *1 (E.D. Cal. Jan. 19, 2017) ("The well-established rule is that the citizenship of all defendants, whether served or not, must be considered in establishing complete diversity."); *Kyle v. Envoy Mortg., LLC*, No. 18-CV-2396-BAS-WVG, 2018 WL 6600105, at *2 (S.D. Cal. Dec. 17, 2018).

In its notice of removal, nowhere does Monsanto claim that the named defendant, Flexsys America Limited, is a diverse party or that it does not exist as an entity. Even if it did claim this, the West Virginia Secretary of State information would dispute that claim.  (See Ex. 3)  While ambiguously worded, what Monsanto does is make a disputed factual claim that the Nitro plant at issue in this lawsuit was solely owned and operated by a company called Flexsys America, L.P. However, which company or companies owned or operated the Nitro plant (they can be different and there can be more than one) is a disputed question of fact, and is not the proper subject of determination by this Court.  This is particularly true where there has been no opportunity for discovery.   At most, Monsanto's allegations, compared to the Secretary of State documentation, create an ambiguity about the status and location of these entities and does not resolve the issue of all of the entities that owned, operated or controlled the Nitro plant. This ambiguity must be resolved against the defendants.  *See Agee v. Monsanto Co*., No. 3:09-CV-1336, 2010 WL 3835647, at *5 (S.D.W. Va. Sept. 29, 2010)("At most, they have demonstrated that there is ambiguity surrounding [Non-diverse defendant's] principal place of business—ambiguity that must be resolved against the defendants. …If the allegations in the plaintiff's Complaint are true, the plaintiff will certainly be able to establish a cause of action against [non-diverse defendant] in state court")

Litigation over who had responsibility for oversight, training, policies and procedures, including shared responsibilities and through shared services, can and often does include multiple companies.  Plaintiffs have pleaded that Flexsys America Limited owned and operated the Nitro plant, and, to the extent Monsanto denies that, it will be a determination to be made by the jury or, at best, by the Court upon a properly supported summary judgment. Defendant Monsanto may not effectively obtain a dismissal of another named, non-diverse defendant prior to any discovery, in order to obtain diversity jurisdiction, and lacks standing to do so even after discovery. Therefore, Flexsys America Limited, as a party defendant, defeats diversity and this Court lacks jurisdiction over the case.

If Monsanto is claiming that Flexsys America Limited is not a separate legal entity as represented by the West Virginia Secretary of State, i.e., that it does not exist, this simply creates a disputed fact and an ambiguity that must be resolved against the defendant.  At the very least, the plaintiffs should be permitted discovery to determine whether Flexsys America Limited is a separate legal entity as represented by the West Virginia Secretary of State, and to determine the citizenship of its members rather than rely upon Monsanto's factual assertions. Plaintiffs are at a

distinct disadvantage and do not have access to material information prior to filing a claim.  Without discovery, defendants could gain jurisdiction with self- serving or even false affidavits, without the opportunity for a plaintiff or the Court to determine whether whatever they claim is true, and plaintiffs would be without the ability to gather admissible evidence through discovery to rebut it. This is particularly so with what is often a shell game of multiple companies on top of companies with intervening holding companies, and joint ventures as exists here.

Monsanto goes on to dispute the other factual merits of the plaintiffs' claims in order to try to obtain diversity jurisdiction, which is improper. Defendant Monsanto says that, assuming Flexsys is deemed to be a West Virginia citizen for purposes of diversity, the plaintiff's substantive allegations are false.  Specifically, Monsanto makes the disputed factual claim that Flexsys America L.P., the entity it claims owned and operated the Nitro plant, has never been involved in any way with glyphosate herbicides or any other kind of herbicides. Monsanto further claims another company, Flexsys America, LLC, who is also not a defendant, has not been involved with herbicides.  These are precisely the disputed factual denials of the substance of plaintiffs' claims that cannot be the basis for removal. Monsanto cannot remove the case by arguing that the plaintiff's underlying substantive claims against a non-diverse defendant are false.        Importantly, with this particular argument Monsanto does not base its contention of fraudulent joinder on an assertion that the allegations of plaintiffs' complaint, if assumed true, cannot establish a valid claim for relief against the non-diverse defendants under the laws of West Virginia.  Rather, they attack the merits and truthfulness of plaintiffs' allegations by asserting that plaintiffs' claims are false.[4]  It is well known that a claim of fraudulent joinder cannot be sustained based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses.  *See, e.g., Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Wells' Dairy, Inc. v. American Industrial Refrigeration, Inc.*, 157 F. Supp.2d 1018, 1034-41 (N.D.Iowa 2001); *Grobe v.*

---

[4] Plaintiffs again note that there has been no opportunity for discovery in this case.

*Vantage Credit Union*, 679 F. Supp.2d 1020, 1026 (E.D.Mo. 2010); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.). Therefore, Monsanto's removal is improper and this case should be remanded.

In support of their disputed assertions, the defendants have submitted  self–serving affidavits from current and former management of its associated companies restating their factual position that the plaintiffs' claims are false. Again, self-serving affidavits disputing plaintiffs' facts do not change the impermissible basis for Monsanto's removal. Defendants nearly always deny the factual allegations made against them in a complaint.

Furthermore, for Monsanto to claim that the defendants only made rubber products at the Nitro plant and never made herbicides is false. The Court can take judicial notice that the Nitro plant manufactured and produced pesticides.  The Agent Orange multi-plaintiff litigation, which at one point was pending in the Southern District of West Virginia, resulted in a multi-million-dollar settlement for exposure of residents surrounding the Nitro plant. *Agee v. Monsanto Co.,* No. 3:09-CV-1336, 2010 WL 3835647, (S.D.W. Va. Sept. 29, 2010) (remanding case to state court).  Agent Orange is a pesticide.  Even assuming as true that the Nitro plant did not manufacture glyphosate, which cannot be assumed for purposes of removal jurisdiction, the Nitro plant had a lab where they tested Monsanto products. Plaintiffs have pleaded that defendants researched, designed and tested their products at the Nitro plant, which very well would have included their pesticides and could have involved testing and research regarding glyphosate and its precursors. These facts must be presumed true in a diversity analysis.

Plaintiffs are entitled to discovery on these factual issues, rather than the Court conclusively relying on Monsanto's self-serving denials in its affidavits.  Monsanto's disputed contentions require a weighing of the evidence and credibility of the witnesses and, therefore, are not proper grounds upon which to raise a claim of fraudulent joinder. These arguments apply equally to the other West Virginia Corporation, Monsanto Management Club – Nitro Plant

Monsanto Management Club – Nitro Plant, may turn out to be solely what Monsanto portends it to be. However, plaintiffs have not had the opportunity to conduct discovery to determine this.  The affidavit and, to a limited extent, the charter, say it was a corporation for all of Monsanto management and Monsanto claims that only arranged social gatherings, but why would the Monsanto management of the Nitro Plant, which is not a large group,

create a corporation just to go to dinner parties together? Monsanto admits it consisted of the management and professional staff of the Nitro plant. At a minimum, plaintiffs are entitled to discovery to determine the scope of what defendant Monsanto Management and its officers did.  Did it provide training or education?  Did it provide information about Monsanto's other products and activities?  Did it sponsor seminars? Any of those activities could lead to knowledge of the dangers of glyphosate, a foreseeable risk of injury, and a concurrent duty to disclose and warn. This is true even if it is what Monsanto claims.

It is clear, even from Monsanto's motion, that plaintiffs have stated claims against non-diverse defendants upon which relief may be granted if eventually proved true.  Moreover, Monsanto cannot obtain removal jurisdiction by complaining that certain of the plaintiffs' allegations are made upon information and belief.  For example, plaintiffs are informed and believe that, during relevant times defendant Monsanto Management Club-Nitro Plant managed  a plant in Nitro, West Virginia and that plaintiffs are informed and believe that the Nitro plant was involved in the designing, researching, developing, testing, manufacturing, packaging, marketing, advertising and/or selling of herbicides.  Plaintiffs further alleged, upon information and belief that, at relevant times, the Nitro Plant contained a lab, which participated in the design, research, development, and testing of herbicides. (Compl. ¶. 21)  Monsanto argues that plaintiffs' information and belief is not sufficient and, instead, plaintiffs must be able to prove their allegations and causes of action against the non-diverse defendants at the time of filing the complaint.   Roger and Judy Bryant have to file a complaint upon information and belief because they do not have access to that kind of conclusive evidence prior to conducting discovery, nor are they required to have this evidence.

Finally, plaintiffs pleaded that the defendants were participants in a joint venture or enterprise involving glyphosate products. Taken as true, then the non-diverse defendants would be jointly responsible for Monsanto's glyphosate activities that occurred elsewhere.

Monsanto argues that plaintiffs want to keep their case in state court.  If plaintiffs' case remains in the multi-district litigation where, as Monsanto admits, there are thousands of cases, Mr. Bryant may never see any justice while he is still alive, waiting for his case to be picked among thousands, if it ever is picked or waiting for remand after pre-trial proceedings.  Significant delay of plaintiffs' day in court is not appropriate or fair due process.  As such, it is just that there is a West Virginia defendant involved in this case that accords jurisdiction in state court.  Regardless of

plaintiffs' reasons, if plaintiffs have even a slight possibility of a right to relief against a non-diverse or in-state

defendant, the actual motive of the plaintiff in joining such defendant in the action is immaterial.  As held by the

United States Supreme Court in *Chicago, Rock Island, & Pacific Railway Co. v. Schwyhart*, 277 U.S. 184, 193,

33 S.Ct. 250, 57 L.Ed. 473 (1913), "the motive of the plaintiff, taken by itself, does not affect the right to remove.

**If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish**

**to assert the right**."

As long held by the Ninth and Fourth Circuit, the standard for assessing a claim of fraudulent joinder is even

more liberal than that for addressing a Rule 12(b)(6) motion to dismiss.  All questions of fact and law must be

resolved in favor of the plaintiffs, and there must only be a glimmer of hope that the plaintiffs' claim may succeed.

*Hartley*, 187 F.3d at 424-26; *Marshall*, 6 F.3d at 232-33; *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-

VC, 2019 WL 2943348, at *1 (N.D. Cal. July 9, 2019)  There is a glimmer of hope that plaintiffs' claim against

the non-diverse defendants may succeed in this case, and defendants, therefore, have failed to meet their heavy

burden of establishing fraudulent joinder.

Second, even assuming that Flexsys America Limited is not a separate entity, and was misnamed, which

it was not, and assuming the Monsanto Management Club-Nitro Plant was not a West Virginia defendant, which

it is, Monsanto has failed to provide sufficient undisputed information from which this court can determine the

citizenship of what they claim are the proper parties.  Proving citizenship with multiple entities, including

corporations, joint ventures, partnerships and limited liability companies, is complex. For example, here

Monsanto claims that Flexsys America, L.P. solely owned and operated the Nitro plant (which as discussed

above, plaintiff disputes).  Monsanto then claims that the only partners of Flexsys America, L.P., were Flexsys

America, LLC, and Solutia, Inc. If proved true, the Court must determine the citizenship of all of the members of

Flexsys America, LLC. as citizenship of the members dictates diversity for a limited liability corporation.

However, Monsanto did not state or supply documentation of the members of Flexsys America, LLC.

Monsanto simply claims that it is a wholly owned subsidiary of Solutia, Inc. That does not mean that Flexsys

America, LLC has no members and does not relieve Monsanto from naming and proving the citizenship of all of

its members. Therefore, even resolving disputed facts in favor of Monsanto, the motion is without proper support and must be denied.

Additionally assuming,[5] because it is not stated in the motion or shown convincingly in the record, that the only member of Flexsys America, LLC is Solutia, Inc., the Court must then determine the citizenship of Solutia, Inc. under the "nerve center" test enumerated in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). In *Hertz,* the Supreme Court discussed the citizenship of corporations and concluded that "principal place of business" refers to the state where a corporation's officers "direct, control, and coordinate the corporation's activities," called its "nerve center." *Hertz*, 559 U.S. 77, 92–93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010). The nerve center is where the actual center of direction, control, and coordination occurs and "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion). *Id.*

According to publicly available data, which is all the plaintiffs can rely upon without proper opportunity for discovery, Flexsys and Solutia, Inc. were created, in part, or otherwise in a joint venture for purposes of the Nitro plant. (See Excerpt from Monsanto 2012 From 10-K, p. 128, Ex. 5.)  Monsanto claims Solutia's principal place of business was in Missouri, but the nerve center test requires more than that. Where did Solutia hold its Board Meetings, in different states, or by teleconference with its officers located in West Virginia and elsewhere? Where were the main decisions made with respect to the Nitro plant? Where was the actual center of direction, control, and coordination of the Nitro plant? All of these questions are not addressed in Monsanto's notice of removal, as required by *Hertz.* Therefore, removal is not properly supported and must be denied.[6] At the very least, discovery is required in order for the Court to make a proper determination.

---

[5] Assumptions on top of assumptions do not serve as a proper basis to find jurisdiction.
[6] This nerve center analysis may also need to be done with respect to the time period when Monsanto owned and operated the Nitro plant, as well. The actual center of direction, control, and coordination of the Nitro plant during the time Monsanto owed it from 1953 through the time it turned the plant over to others, likely was Nitro, West Virginia. Monsanto does not address this in its notice and discovery would be necessary for the Court to make a proper determination, should the Court disregard the other West Virginia defendants.

## V.     CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that their Motion to Remand be granted. Plaintiffs also respectfully request that they be awarded the reasonable costs and expenses, including attorney fees, incurred in bringing their Motion to Remand.

ROGER BRYANT and
JUDY BRYANT

Dated:  October 23, 2019

By:  */s/ Kelly Elswick-Hall*
Kelly Elswick, Esq.
keh@themasterslawfirm.com
Marvin W. Masters, Esq.
mwm@the masterslawfirm.com
181 Summers Street
Charleston, West Virginia 25301
Telephone:  (304) 342-3106
Facsimile:  (304) 342-3189
Counsel for Plaintiffs

And

Aimee H. Wagstaff
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, Colorado 80226
Co-counsel for Plaintiffs

F:\2\624\b002.docx

**CERTIFICATE OF SERVICE**

I, Kelly Elswick-Hall, hereby certify that on October 23, 2019, I electronically filed "PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> Charles M. Love III (WV Bar No. 2254)
> Floyd E. Boone Jr. (WV Bar No. 8784)
> William M. Lorenson (WV Bar No. 13223)
> Bowles Rice LLP
> 600 Quarrier Street
> Post Office Box 1386
> Charleston, West Virginia 25325-1386
> Counsel for Defendant Monsanto Company and
> Flexsys America Limited

And by first class U.S. Mail on the following non-ECF participants:

> Monsanto Management Club - Nitro Plant
> c/o Otto J. Dresher
> 2023 Lincoln Avenue
> St. Albans, West Virginia 25177

/s/ Kelly Elswick-Hall
West Virginia State Bar No. 6578
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
304-342-3106
keh@themasterslawfirm.com
mwm@themasterslawfirm.com