**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, N.W.
Washington, DC 20005
Tel:  202-898-5800
Fax:  202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) |
| THIS DOCUMENT RELATES TO: | ) **DEFENDANT MONSANTO COMPANY'S** ) **OPPOSITION TO PLAINTIFF'S MOTION** |
| *Trosclair v. Monsanto Co., et al.*, Case No. 3:19-cv-06396-VC | ) **TO REMAND** ) ) Date:  November 21, 2019 ) Time: 10:00 a.m. ) Courtroom:  4 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

ISSUES TO BE DECIDED ...................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..........................................2

ARGUMENT ........................................................................................................................3

    I.  Legal Standard ...........................................................................................................3

    II.  Plaintiff's Arguments Do Not Support Remand ........................................................5

    III.  The Procedural And Substantive Requirements For Removal Have Been Satisfied..............7

        A.  Plaintiff Improperly Joined Catlin Insurance Services And T.H.E. Insurance Because They Did Not Issue Any Insurance Policies To Monsanto ..............................7

        B.  Plaintiff Improperly Joined "Monsanto Company Manufacturing Facility" Because It Is Not A Separate Legal Entity And Lacks The Capacity To Be Sued..........9

        C.  Plaintiff Improperly Joined 3M Cattle Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover ........................................11

            1.  There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against 3M Cattle Based Upon The Allegations In The Petition ........................................................................11

                a.  Negligence Under Louisiana Article 2317.1....................................................11

                b.  Negligence Under Louisiana Article 2315.........................................................13

            2.  Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against 3M Cattle ........................15

        D.  Plaintiff Improperly Joined Randy Jacobs Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover..........................................18

            1.  There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against Randy Jacobs Based Upon The Allegations In The Petition ........................................................................19

                a.  Negligence Under The *Canter* Standard.........................................................19

                b.  Negligence Under Louisiana Article 2315 ........................................................21

            2.  Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against Mr. Jacobs ..................................21

CONCLUSION .....................................................................................................................23

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Lodge at the Bluffs, LLC,*
217 So. 3d 429 (La. App. 1st Cir. 2017) .................................................................. 11

*Anderson v. Ga. Gulf Lake Charles, LLC,*
342 F. App'x 911 (5th Cir. 2009) ......................................................................... 20

*In re Anthem, Inc. Data Breach Litig.,*
Case No. 15-MD-02617-LHK, 2016 WL 324386 (N.D. Cal. Jan. 27, 2016) .............................. 4

*Arias v. Follet Higher Educ. Corp.,*
No. 8:18-cv-01965-JLC-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ................................ 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................... 4

*Assensoh v. Diamond Nails,*
897 So. 2d 806 (La. App. 4th Cir. 2005) ................................................................ 10

*Canter v. Koehring Co.,*
283 So. 2d 716 (La. 1973) .................................................................... 18, 19, 20, 22

*Carroll v. Allstate Ins.,*
244 So. 3d 772 (La. App. 2d Cir. 2017) ................................................................. 13

*Cavallini v. State Farm Mut. Auto Ins. Co.,*
44 F.3d 256 (5th Cir. 1995) ................................................................................. 5

*Clark v. CST Servs., LLC,*
Civil Action No. 16-10421, 2016 WL 6563437 (E.D. La. Nov. 4, 2016) ................................ 20

*D'Aquin v. Starwood,*
Civil Action No. 16-12798, 2016 WL 6436561 (E.D. La. Oct. 31, 2016) ............................... 10

*Dejoie v. Medley,*
945 So. 2d 968 (La. App. 2d Cir. 2006) .................................................................. 9

*Feizbakhsh v. Travelers Commercial Ins. Co.,*
No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) ....................... 5, 6

*Fox v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.,*
576 So. 2d 978 (La. 1991) .................................................................................. 14

*Freeman v. Witco, Corp.,*
984 F. Supp. 443 (E.D. La. 1997) ........................................................................ 22

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.,*
391 F.3d 907 (8th Cir. 2004) ............................................................................... 4

- ii -

*Giles v. Wal-Mart La. LLC*,
   Civil Action No. 16-2413, 2016 WL 2825778 (E.D. La. May 13, 2016) ...................... 11, 12, 20

*Govango, Inc. v. Malabar Bay, LLC*,
   Civil Action No. 11-1600, 2012 WL 1836178 (E.D. La. May 21, 2012) ........................... 10

*Gros v. Warren Props., Inc.*,
   Civil Action No. 12-2184, 2012 WL 5906724 (E.D. La. Nov. 26, 2012) ..........................*passim*

*Guillory v. PPG Indus., Inc.*,
   434 F.3d 303 (5th Cir. 2005) ................................................................................... 19, 22

*Hagood v. Brakefield*,
   805 So. 2d 1230 (La. 1992) ........................................................................................... 11

*Hanks v. Entergy Corp.*,
   944 So. 2d 564 (La. 2006) .............................................................................................. 13

*Haskins v. State Farm Fire & Cas. Co.*,
   612 So. 2d 990 (La. App. 2d Cir. 1993) ......................................................................... 13

*Haynes v. Healthcare Servs. Grp., Inc.*,
   Civil Action No. 13-649-JJB-RLB, 2014 WL 2769080 (M.D. La. May 30, 2014) ................... 23

*Janke v. Babcock Co., Inc.*,
   Civil Action No. 12-513, 2012 WL 1499292 (E.D. La. Apr. 27, 2012) ............................... 5, 15

*Jurin v. Transamerica Life Ins. Co.*,
   No. C-14-02882-LB, 2014 WL 4364901 (N.D. Cal. Sept. 3, 2014) ..................................... 4

*Korson v. Independence Mall I, Ltd.*,
   585 So. 2d 1174 (La. App. 5th Cir. 1992) ....................................................................... 19

*Labarre v. Occidental Chem. Co.*,
   250 So. 3d 932 (La. App. 1st Cir. 2018) ......................................................................... 13

*Lewis v. Valero Refining-New Orleans*,
   Civil Action No. 16-16590, 2017 WL 955684 (E.D. La. Mar. 13, 2017) ................................. 9

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
   220 F. Supp. 2d 1116 (N.D. Cal. 2002) .......................................................................... 4

*Marketfare Annunciation, LLC v. United Fire & Cas. Co.*,
   Civil Action No. 06-7232, 2006 WL 3759565 (E.D. La. Dec. 19, 2006) ............................... 7

*Mathieu v. Imperial Toy Corp.*,
   646 So. 2d 318 (La. 1994) .............................................................................................. 13

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ............................................................................... 3, 4, 5

*Naylor v. La. Dep't of Pub. Highways*,
   423 So. 2d 674 (La. App. 1st Cir. 1982) ......................................................................... 14

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

*O'Campo v. Hardisty*,
  262 F.2d 621 (9th Cir. 1958)................................................................................................. 7, 9

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir. 1998)........................................................................................................ 4

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005)....................................................................................................... 4

*Pool v. City of Shreveport*,
  607 So. 2d 861 (La. App. 2d Cir. 1992)................................................................................... 14

*Prevost v. Enter. Rent-A-Car Co.*,
  No. Civ. A. 95-4181, 1996 WL 99330 (E.D. La. Mar. 5, 1996)............................................... 8

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998)..................................................................................................... 4

*Robinson v. Moises*,
  171 So. 3d 1108 (La. App. 4th Cir. 2015) ................................................................................. 7

*Robinson v. Wal-Mart Stores, Inc.*,
  Civil Action No. 15-6871, 2016 WL 1572078 (E.D. La. Apr. 19, 2016) ................................ 20

*Rodriguez v. Hall Ambulance*,
  No. 1:06-CV01580OWWTAG, 2007 WL 470624, at *5 (E.D. Cal. Feb. 9, 2007),
  *report & recommendation adopted by* 2007 WL 788918 (E.D. Cal. Mar. 14,
  2007)........................................................................................................................................... 5

*Ross v. La Coste de Monterville*,
  502 So. 2d 1026 (La. 1987)....................................................................................................... 14

*In re Roundup Prods. Liab. Litig.*,
  No. 3:16-md-02741-VC (N.D. Cal. June 14, 2019)................................................................... 6

*Sostand v. Rolling Frito Lay Sales*,
  Civil Action No. 6:16-cv-01268, 2017 WL 1485190 (W.D. La. Mar. 23, 2017)..................... 13

*Szewczyk v. Party Planners W., Inc.*,
  274 So. 3d 57 (La. App. 4th Cir. 2019) ................................................................................... 11

*Tantillo v. Cordis Corp.*,
  No. 04-2005(J)(1), 2004 WL 2212113 (E.D. La. Sept. 30, 2004) ........................................... 16

*Vaillancourt v. PNC Bank, Nat'l Ass'n*,
  771 F.3d 843 (5th Cir. 2014)....................................................................................................... 3

*Ware v. The Coats Co., Inc.*,
  635 So. 2d 587 (La. App. 3d Cir. 1994)................................................................................... 10

*Wiley v. Sanders*,
  850 So. 2d 771 (La. App. 2d Cir. 2003)................................................................................... 14

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................3

28 U.S.C. § 1441 ............................................................................................................3

Louisiana's Direct Action Statute, La. R.S. 22:1269 ....................................................7

**Other Authorities**

Fed. R. Civ. P. 17(b)(3)..................................................................................................9

Louisiana Article 2315....................................................................................*passim*

Louisiana Article 2317.1 ...........................................................................11, 12, 14, 18

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

# ISSUES TO BE DECIDED

Monsanto Company's ("Monsanto") Notice of Removal provided a clear evidentiary basis to establish that Plaintiff, a citizen of Louisiana, fraudulently joined five Louisiana defendants in an attempt to destroy diversity jurisdiction. In response, Plaintiff filed a Motion to Remand that does not (and cannot) challenge the essential grounds supporting removal. The remand motion should be denied.

The remand motion does not even mention three of the defendants – two companies that Plaintiff wrongly alleges provided insurance coverage to Monsanto, and a Monsanto manufacturing plant that is not a separate legal entity and lacks the capacity to be sued. While Plaintiff now essentially concedes that he fraudulently joined those defendants, Plaintiff should have made this concession a long time ago. Counsel for Monsanto informed Plaintiff's counsel — several months before the remand motion was even filed — that these defendants were indisputably not viable defendants in this action. Monsanto also directed Plaintiff's counsel to publicly available records that confirmed the same.

Plaintiff's attempt to conjure up claims against the two other Louisiana defendants (3M Cattle, LLC, a family-held limited liability company, and Randy Jacobs, a former Monsanto employee) also fails. The allegations in the Petition and the evidence presented by Monsanto establish that there is no possibility that Plaintiff can recover in his negligence claims against these defendants, and Plaintiff has failed to present any evidence to the contrary. Instead, the remand motion recycles arguments that Plaintiff raised (unsuccessfully) with the Judicial Panel on Multidistrict Litigation ("JPML") in opposing transfer of this case to the MDL. These arguments, of course, have nothing to do with whether this Court has diversity jurisdiction and whether removal was proper.

As there is no basis to predict that Plaintiff might be able to prevail against any of the Louisiana defendants, the citizenship of those defendants must be disregarded for purposes of diversity jurisdiction. The jurisdictional amount-in-controversy requirement has also been satisfied, and Plaintiff does not contend otherwise. Because all procedural and substantive requirements for removal have been satisfied, the remand motion must be denied.

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 29, 2019, Plaintiff filed this products liability action in the 29th Judicial District Court, Parish of St. Charles, State of Louisiana, asserting claims against Monsanto under theories of strict products liability, failure to warn, breach of express and implied warranty, fraud, and negligence. *See* Petition ¶¶ 89-127, 141-72, 205-16 (Claims I, II, IV, V, VI, X), No. 2:19-cv-10689-GGG-MBN, ECF No. 1-2 (E.D. La. May 24, 2019). Relying on Louisiana law, Plaintiff alleges that he developed non-Hodgkin's Lymphoma ("NHL") because of exposure to Monsanto's glyphosate-based herbicides. *See id.* ¶¶ 21, 24, 105-06. Plaintiff is a Louisiana citizen and Monsanto is a citizen of both Delaware and Missouri for purposes of diversity jurisdiction. *See* Notice of Removal ¶¶ 6-7, No. 2:19-cv-10689-GGG-MBN, ECF No. 1 (E.D. La. May 24, 2019). Plaintiff has also sued another non-diverse defendant, XL Bermuda, Ltd., an insurance company that has Bermuda citizenship for purposes of diversity jurisdiction.[1] *See id.* ¶ 8.

The remaining non-diverse (Louisiana) defendants — all of whom were improperly joined, as discussed below — include two companies that Plaintiff wrongly alleges provided insurance coverage to Monsanto (Catlin Insurance Services, Inc., and T.H.E. Insurance Company), *see* Notice of Removal ¶¶ 16-18; a Monsanto manufacturing plant that is not a separate legal entity and lacks the capacity to be sued (which Plaintiff refers to as the "Monsanto Company Manufacturing Facility"), *id.* ¶¶ 13-15; 3M Cattle, LLC, a family-held limited liability company, *id.* ¶¶ 25-29; and Randy Jacobs, a former Monsanto employee, *id.* ¶¶ 19-24.[2]

On May 24, 2019, Monsanto filed its Notice of Removal in the United States District Court for the Eastern District of Louisiana arguing that removal was proper because "a Louisiana plaintiff has used his 'bag of tricks' by improperly joining Louisiana defendants to try to deprive Monsanto of its important right to remove this lawsuit to federal court and by asserting allegations contrary to the facts in a failed attempt to defeat diversity." Notice of Removal ¶ 3. On May 29, 2019, Plaintiff filed

---

[1] To the extent that consent to removal is required from that defendant, it has consented. *See* Consent to Removal, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-3 (E.D. La. May 24, 2019).

[2] Consent to removal by those defendants is not required. *See* Notice of Removal ¶ 35.

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

1  a Motion to Remand this case back to Louisiana state court.  *See* Pl.'s Mot. to Remand, No. 2:19-cv-

2  10689-GGG-MBN, ECF No. 7 (E.D. La. May 29, 2019) ("Original Remand Motion").  On June 11,

3  2019, Monsanto filed its Opposition to Plaintiff's Original Remand Motion, responding to each of

4  Plaintiff's arguments and demonstrating that there was no possibility that Plaintiff could prevail in

5  his claims against the non-diverse defendants.  *See* Monsanto's Opp. to Pl.'s Original Remand Mot.,

6  No. 2:19-cv-10689-GGG-MBN, ECF No. 19 (E.D. La. June 11, 2019).  By June 18, 2019, the

7  Original Remand Motion was fully briefed in the Eastern District of Louisiana.  *See* Pl.'s Reply to

8  Monsanto's Opp. to Original Remand Mot., No. 2:19-cv-10689-GGG-MBN, ECF No. 28 (E.D. La.

9  June 18, 2019).

10      Meanwhile, on October 2, 2019, the JPML entered a final Transfer Order transferring this

11  case (over Plaintiff's objections) to the Roundup® MDL.  *See* JPML Transfer Order, No. 2:19-cv-

12  10689-GGG-MBN, ECF No. 52 (E.D. La. Oct. 4, 2019).  On October 17, 2019, Plaintiff filed the

13  instant Motion to Remand and noticed it for a hearing with this Court on November 21, 2019.  Pl.'s

14  Mot. to Remand, No. 3:19-cv-06396-VC, ECF No. 54 (N.D. Cal. Oct. 17, 2019) ("Motion to

15  Remand").[3]

16                    **ARGUMENT**

17  **I.    Legal Standard**

18      Removal of Plaintiff's civil suit pursuant to 28 U.S.C. § 1441 based on diversity of citizenship

19  under § 1332(a) was appropriate because the non-diverse defendants were fraudulently joined by

20  Plaintiff.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Vaillancourt v.*

21  *PNC Bank, Nat'l Ass'n,* 771 F.3d 843, 847 (5th Cir. 2014).[4]  Fraudulent joinder cannot destroy

---

[3] On October 15, 2019, Plaintiff filed an identical Motion to Remand in the MDL docket.  *See* Pl.'s
Mot. to Remand, No. 3:16-md-2741-VC, ECF No. 6765 (N.D. Cal. Oct. 15, 2019).  Because the
remand motions are identical, Monsanto will file its Opposition in both the MDL and individual case
dockets.

[4] Plaintiff does not address the Ninth Circuit standard for fraudulent joinder in his Memorandum in
Support of Motion to Remand; he instead focuses on the Fifth Circuit standard.  *See* No. 3:19-cv-
06396-VC, ECF No. 54-1 (N.D. Cal. Oct. 17, 2019) ("Pl.'s Remand Mem.").  However, as noted by
this Court in its July 10, 2019 Pretrial Order, "Ninth Circuit decisions on federal issues govern cases
transferred to courts within the circuit . . . ." No. 3:16-md-02741-VC, ECF No. 4549 at 3 (N.D. Cal.
July 10, 2019); *id.* at 1 ("[F]or questions of federal law, . . . Ninth Circuit law will govern regardless

diversity jurisdiction. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."). As recognized by this Court in its July 9, 2019 Pretrial Order, "[t]he doctrine of fraudulent joinder applies when a non-diverse defendant has 'no real connection with the controversy.'" No. 3:16-md-02741-VC, ECF No. 4533 at 3 (N.D. Cal. July 9, 2019) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). "If it is 'obvious' that a plaintiff has no cause of action against a defendant, the citizenship of that defendant can be ignored when assessing diversity jurisdiction." *Id.* (quoting *Morris*, 236 F.3d at 1067). Fraudulent joinder exists where, "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Id.* (quoting *Jurin v. Transamerica Life Ins. Co.*, No. C-14-02882-LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014)).

The possibility that Plaintiff can state a claim must be a "non-fanciful" one. *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). In conducting the fraudulent joinder analysis, courts do not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Gros v. Warren Props., Inc.*, Civil Action No. 12-2184, 2012 WL 5906724, at *5 (E.D. La. Nov. 26, 2012) (recognizing that "[w]hile legal conclusions may provide the framework of a complaint, they must be supported by factual allegations." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts must "disregard all legal conclusions couched as factual allegations" when assessing fraudulent joinder. *Gros*, 2012 WL 5906724, at *6.

In determining whether a party has been fraudulently joined, the court is not limited to the allegations of the complaint; rather, the court may also consider affidavits and other evidence presented by the defendants. *See Ritchey*, 139 F.3d at 1318 ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.") (citation omitted);

---

of where a case originated.") (citing *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004) and *In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK, 2016 WL 324386, at *2 (N.D. Cal. Jan. 27, 2016)). Under either standard, Plaintiff's Motion to Remand should be denied.

*Morris*, 236 F.3d at 1068 ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *see also Rodriguez v. Hall Ambulance*, No. 1:06-CV01580OWWTAG, 2007 WL 470624, at *5 (E.D. Cal. Feb. 9, 2007) (stating that the court may consider "not only the complaint, the removal notice, and the state-court proceedings; it may also consider any affidavits or other evidence presented regarding fraudulent joinder" when ruling on a remand motion), *report & recommendation adopted by* 2007 WL 788918 (E.D. Cal. Mar. 14, 2007); *Janke v. Babcock Co., Inc.*, Civil Action No. 12-513, 2012 WL 1499292, at *5 (E.D. La. Apr. 27, 2012) (holding that certain defendants were improperly joined where affidavit submitted by removing defendant negated plaintiffs' claim). Thus, once the removing defendant offers evidence showing that there is no possibility that the plaintiff can prevail against the non-diverse defendants, the plaintiff can no longer rely on conclusory allegations made in the complaint to support remand. *See Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016) (denying remand motion on basis that the non-diverse defendants were fraudulently joined, and finding that plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome the evidence offered by the removing defendant to establish fraudulent joinder); *Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLC-JDE,  2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (holding that the plaintiff did not state a claim against non-diverse defendant because "even assuming Plaintiff's legal theories are viable, Plaintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute Defendants' version of the facts" that established fraudulent joinder) (emphasis in original).   In reviewing the Motion to Remand, the Court should consider the Complaint and Notice of Removal; the JPML's Transfer Order; and deny the instant Motion.

## II.      Plaintiff's Arguments Do Not Support Remand

The Remand Memorandum is devoid of any substantive argument explaining why this case should be remanded to state court.  Instead, Plaintiff simply makes the conclusory statement, with no citation to specific evidence or any legal authority, that "Monsanto has failed to demonstrate Trosclair

has 'no reasonable basis for predicting recovery' from the non-diverse defendants," Pl.'s Remand Mem. at 8. This empty statement is not sufficient to overcome the legal arguments and unrebutted evidence that Monsanto has submitted establishing that the Louisiana defendants were fraudulently joined. *See*, *e.g.*, *Feizbakhsh*, 2016 WL 8732296, at *8; *see also infra* Part III.

Having failed to challenge the essential grounds supporting removal, Plaintiff instead recycles arguments that he previously raised in opposing the *transfer of this case to the MDL*. *See* Pl.'s Remand Mem. at 9 (arguing that the case should be "remanded" because "this Court has begun remanding cases back to the district courts from whence they came," and that "MDL common issue discovery is complete"). These arguments, of course, have nothing to do with whether this Court has subject matter jurisdiction or whether Monsanto's removal was proper, and thus are entirely irrelevant. The JPML also rejected these identical arguments as "not persuasive" when Plaintiff opposed transfer to the MDL. *See* JPML Oct. 2, 2019 Transfer Order, No. 3:19-cv-06396-VC, ECF No. 52 at 1 (N.D. Cal. Oct. 4, 2019) ("Transfer Order").[5] Among other things, the JPML recognized that Plaintiff's characterization of the MDL as "reach[ing] an advanced stage" was "inaccurate." *Id.*[6] This Court should likewise reject Plaintiff's "inaccurate" and irrelevant arguments.

The Remand Memorandum also includes an incoherent statement about Louisiana verdict sheets, Pl.'s Remand Mem. at 8, which has nothing to do with whether this Court has subject matter

---

[5] As the JPML stated, "[w]hile much of the general discovery of Monsanto has been completed, the transferee court is now organizing the actions for completion of case-specific discovery and disposition of case-specific dispositive and *Daubert* motions on a state-by-state basis before remanding those actions to their transferor courts." Transfer Order at 1 (citing Pretrial Order No. 150, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC, ECF No. 4132 (N.D. Cal. June 14, 2019)).

[6] In its Order denying Plaintiff's Motion to Vacate the Conditional Transfer Order, the JMPL recognized that "Plaintiff's claims, like those of plaintiffs in the MDL, arise from a common factual core—that plaintiff allegedly developed non-Hodgkin's lymphoma following exposure to Monsanto's Roundup herbicide. That plaintiff's claims entail additional factual questions does not weigh against transfer." Transfer Order at 1. The JPML expressly rejected Plaintiff's argument that "transfer of *Trosclair* is not appropriate because he alleges unique facts regarding how he obtained undiluted concentrated Roundup from a Monsanto plant and asserts claims against unique defendants involved in that transaction." *Id.*

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

1   jurisdiction.  This is just another example of Plaintiff not addressing the core issues supporting

2   Monsanto's removal.

**III.   The Procedural And Substantive Requirements For Removal Have Been Satisfied**

   **A.   Plaintiff Improperly Joined Catlin Insurance Services And T.H.E. Insurance Because They Did Not Issue Any Insurance Policies To Monsanto**

6        Plaintiff does not contest Monsanto's assertion in the Notice of Removal — and therefore

7   concedes this fact — that Catlin Insurance Services ("Catlin Insurance") and T.H.E. Insurance

8   Company ("T.H.E. Insurance") never provided insurance policies to Monsanto; in fact, the Remand

9   Memorandum does not even mention those defendants.  *See O'Campo v. Hardisty*, 262 F.2d 621, 624

10  (9th Cir. 1958) (failure to deny facts alleged in a removal petition constitutes an admission of those

11  facts); Notice of Removal ¶ 16 (asserting that these insurance companies did not issue any insurance

12  policies to Monsanto).

13       Moreover, as set forth in Monsanto's Notice of Removal, Plaintiff improperly joined these

14  two defendants in a misguided attempt to invoke Louisiana's Direct Action Statute, La. R.S. 22:1269.

15  *See* Notice of Removal ¶¶ 16-18.  The Direct Action Statute requires that an action against an insurer

16  must be "within the terms and limits of the policy."  La. R.S. 22:1269.  A plaintiff does not have a

17  viable claim under that statute against an insurance company, however, if that defendant did not issue

18  an insurance policy as alleged by the plaintiff.  *See Robinson v. Moises*, 171 So. 3d 1108, 1110-11

19  (La. App. 4th Cir. 2015) (affirming summary judgment ruling in favor of insurance company

20  defendant and accepting argument asserted by defendant that, "since it did not issue a policy of

21  liability or UM coverage, it was not susceptible to Louisiana's Direct Action Statute").  Thus, when

22  a nondiverse insurance company is sued under the Direct Action Statute, that defendant does not

23  destroy diversity and does not preclude removal if the defendant did not provide the insurance

24  coverage at issue in the lawsuit.  *See Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, Civil

25  Action No. 06-7232, 2006 WL 3759565, at *3 (E.D. La. Dec. 19, 2006) (denying remand motion

26  because that insurance company did not issue an insurance policy and "was improperly joined in these

claims as an 'insurer defendant'"); *Prevost v. Enter. Rent-A-Car Co.*, No. Civ. A. 95-4181, 1996 WL 99330, at *2 (E.D. La. Mar. 5, 1996) (same).

In support of its Notice of Removal, Monsanto submitted declarations establishing that there is no possibility that Plaintiff can recover in his claims against Catlin Insurance or T.H.E. Insurance because those defendants ***did not issue any insurance policies to Monsanto***.  Notice of Removal ¶ 16.  Robin Walsh, who has "worked on and been responsible for Monsanto's insurance programs, including policy placement and claims management" for more than twenty years, has determined that Catlin Insurance and T.H.E. Insurance "are not part of Monsanto's insurance program and have not issued any insurance policies to Monsanto."  Decl. of Robin Walsh in Support of Monsanto's Notice of Removal ¶¶ 2 & 4, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-5 (E.D. La. May 24, 2019) ("Walsh Declaration").   Likewise, Daniel Stackhouse (Associate General Counsel – Americas Claims for AXA XL) has determined that Catlin Insurance and T.H.E. Insurance did not issue any insurance policies to Monsanto.  *See* Decl. of Daniel Stackhouse in Support of Monsanto's Notice of Removal ¶¶ 5-8, May 24, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-6 (E.D. La. May 24, 2019) ("Stackhouse Declaration").[7]   In fact, Catlin Insurance does not even underwrite insurance or issue insurance policies, *id*. ¶ 5, which further underscores the conclusion that it was improperly joined because it did not issue any insurance policy to Monsanto.[8]  Moreover, T.H.E. Insurance is a "niche-market" insurer that offers "insurance to clients in the amusement, entertainment and leisure industries," *id*. ¶ 6, which reinforces the conclusion that T.H.E. Insurance was improperly

---

[7] Mr. Stackhouse's job duties include "manag[ing] litigation against insurance companies that are direct or indirect subsidiaries of XL America, Inc. and XL Reinsurance America, Inc."  Stackhouse Decl. ¶ 2.  Catlin Insurance and T.H.E. Insurance are "separate legal entities currently existing within the corporate structure of XL America, Inc. and XL Reinsurance America, Inc."  *Id*. ¶ 3.

[8] If Plaintiff's counsel had conducted a reasonable inquiry before filing this lawsuit, they should have realized that Catlin Insurance Services did not provide insurance coverage to Monsanto. Publicly available information on the website for the Louisiana Department of Insurance shows that Catlin Insurance Services only holds licenses as a "Producer Agency" and "Surplus Lines Broker," but not as a licensed insurer.  *See* Louisiana Department of Insurance, *Active Company Search*, *available at* https://www.ldi.la.gov/onlineservices/ActiveCompanySearch/ (search results for "Catlin Insurance Services" attached as Exhibit 1).

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

joined because, as is clear from the Petition, Monsanto is not part of those industries and Plaintiff does not claim that his alleged injuries arose from any conduct by any defendant involved in those industries.

As both declarations are undisputed, and Plaintiff has failed to present any evidence establishing that Catlin Insurance or T.H.E. Insurance provided insurance policies to Monsanto, there is no possibility that Plaintiff might be able to hold these defendants liable under the Direct Action Statute.  The Court should therefore disregard the citizenship of these two fraudulently joined defendants.

**B.**      **Plaintiff Improperly Joined "Monsanto Company Manufacturing Facility" Because It Is Not A Separate Legal Entity And Lacks The Capacity To Be Sued**

Plaintiff does not contest Monsanto's assertion in the Notice of Removal — and therefore concedes this fact — that there is no separate legal entity called "Monsanto Company Manufacturing Facility"; in fact, the remand motion does not even mention this defendant.  *See O'Campo*, 262 F.2d at 624; Notice of Removal ¶ 13 (asserting that "[t]here is no separate legal entity called 'Monsanto Company Manufacturing Facility'").

Moreover, as set forth in the Notice of Removal, the undisputed evidence establishes that there is no separate legal entity called "Monsanto Company Manufacturing Facility" — the plant is owned and operated by Monsanto — so that purported defendant lacks the capacity to  be sued here.  *See* Notice of Removal ¶¶ 13-15.  In these circumstances, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).   In  Louisiana, "[a]n entity must qualify as a juridical person to have the capacity to be sued."  *Dejoie v. Medley*, 945 So. 2d 968, 972 (La. App. 2d Cir. 2006); *see Lewis v. Valero Refining-New Orleans*, Civil Action No. 16-16590, 2017 WL 955684, at *2 (E.D. La. Mar. 13, 2017) (disregarding citizenship of defendant's Louisiana refinery plant when deciding remand motion and holding that refinery plant sued under a "fictitious name . . . is not a business entity capable of being sued" notwithstanding plaintiff's averment that there is a refinery which is sometimes referred to by that name).  Thus, when a named defendant is not a legal entity on its own, dismissal is required because such defendant lacks the

- 9 -

1    capacity to be sued.  *See Assensoh v. Diamond Nails*, 897 So. 2d 806 (La. App. 4th Cir. 2005); *Ware*

2    *v. The Coats Co., Inc.*, 635 So. 2d 587 (La. App. 3d Cir. 1994); *Govango, Inc. v. Malabar Bay, LLC*,

3    Civil Action No. 11-1600, 2012 WL 1836178 (E.D. La. May 21, 2012); *D'Aquin v. Starwood*, Civil

4    Action No. 16-12798, 2016 WL 6436561, at *3 (E.D. La. Oct. 31, 2016).

5         The Notice of Removal is supported by a declaration from an Assistant Secretary for

6    Monsanto, who confirms that there "is no separate legal entity called 'Monsanto Company

7    Manufacturing Facility.'"  Decl. of Keith R. Abrams ¶ 3, May 23, 2019, 2:19-cv-10689-GGG-MBN,

8    ECF No. 1-4 (E.D. La. May 24, 2019) ("Abrams Declaration").  Instead, the manufacturing plant in

9    Luling, Louisiana "is owned and operated by Monsanto."  *Id.*  That plant is not a corporation or a

10   company; is not registered to do business in Louisiana; and does not have a registered agent in

11   Louisiana.  *Id.* ¶¶ 3-4.[9]

12        Monsanto has pierced the pleadings, which means that Plaintiff is required to come forward

13   with evidence — not speculation — to support his remand argument.  Because Plaintiff has failed to

14   present any evidence to support his attempt to sue "Monsanto Company Manufacturing Facility" as

15   a separate legal entity, there is no basis for this Court to predict that Plaintiff might be able to recover

16   against "Monsanto Company Manufacturing Facility."  The Court should disregard the citizenship of

17   that purported defendant.

18

19

20

21

---

22   [9] A reasonable pre-filing inquiry would have led to the conclusion that "Monsanto Company

23   Manufacturing Facility" is not a separate legal entity.  A search for "Monsanto" of publicly available

     information on the website of the Louisiana Secretary of State shows various registered Monsanto

24   entities, but nothing for "Monsanto Company Manufacturing Facility" (or any similarly named

     entity).  Those same records indicate that Monsanto Company's address in Louisiana is the same as

25   the address where Plaintiff purportedly served the "Monsanto Company Manufacturing Facility."  *See*

     Louisiana Secretary of State, *Search for Louisiana Business Filings*, *available at*

26   https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.

     aspx?CharterID=557148_1A82E46B16 (search result for "Monsanto Company" attached as Exhibit

27   2).

28

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

**C.**     **Plaintiff Improperly Joined 3M Cattle Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover**

**1.**     **There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against 3M Cattle Based Upon The Allegations In The Petition**

**a.**     **Negligence Under Louisiana Article 2317.1**

Plaintiff has not identified a specific statutory basis for his negligence claim against 3M Cattle, LLC ("3M Cattle"), but to the extent it is based upon Louisiana Article 2317.1, there is no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against 3M Cattle based upon the allegations in the Petition.   A plaintiff asserting a negligence claim based upon premises liability under Article 2317.1 must establish "the following elements: (1) the thing was in the custodian's custody or control; (2) it had a vice or defect that presented an unreasonable risk of harm; (3) *the defendant knew or should have known of the unreasonable risk of harm*; and (4) the damage was caused by the defect." *Szewczyk v. Party Planners W., Inc.*, 274 So. 3d 57, 62 (La. App. 4th Cir. 2019) (emphasis added).   Knowledge of the alleged defect is an "essential element" of any Article 2317.1 negligence claim. *Alvarado v. Lodge at the Bluffs, LLC*, 217 So. 3d 429, 433 (La. App. 1st Cir. 2017); *see also Giles v. Wal-Mart La. LLC*, Civil Action No. 16-2413, 2016 WL 2825778, at *5 (E.D. La. May 13, 2016).   Article 2317.1 "abrogates the concept of 'strict liability' in cases involving defective things and imposes a negligence standard based on the owner or custodian's knowledge or constructive knowledge of the defect." *Gros*, 2012 WL 5906724, at *10 (citing *Hagood v. Brakefield*, 805 So. 2d 1230, 1233 (La. 1992)).   While "[t]he constructive knowledge requirement of 2317.1 imposes a reasonable duty to discover apparent defects in things under the defendant's garde, [it] cannot be construed so broadly as to revive the regime of strict liability."   *Id.* (citation omitted).

Although Plaintiff has identified certain duties that 3M Cattle allegedly breached — to "provide safe products for [him] to use on 3M Cattle property"; to "ensure [that he] was properly warned of any dangerous products 3M Cattle provided for his use"; and to ensure that he "was consistently provided safe and effective equipment including personal protection equipment,"

Petition ¶ 199 — the Petition fails to allege any facts to establish that 3M Cattle had actual or constructive knowledge of the allegedly defective or dangerous characteristics of Roundup®-branded herbicides.  Without any factual support, the Petition simply alleges that "3M Cattle knew, or should have known, that the herbicide products provided by 3M Cattle to [Plaintiff] were dangerous and could cause injuries to [him]."  *Id*. ¶ 201.  That conclusory allegation does not give rise to a reasonable inference that 3M Cattle had the actual or constructive knowledge required for Plaintiff to assert a viable Article 2317.1 negligence claim.  *See Giles*, 2016 WL 2825778, at *4 (applying Louisiana law and stating that plaintiff's allegation that "all defendants had actual or constructive knowledge that an unreasonably dangerous condition existed and/or that a hole in the floor of the premises existed" was an insufficient, conclusory allegation that the court was not required to accept in considering whether the lessor of property had actual or constructive knowledge of the alleged defect).

Plaintiff's conclusory allegations about 3M Cattle's actual or constructive knowledge are also refuted by *his own allegations* in the Petition that Monsanto concealed and covered up, for many years and in various ways, information about the alleged dangers posed by glyphosate and Roundup®-branded herbicides.  Although Monsanto disputes that these products are, in fact, dangerous as Plaintiff alleges, the Petition is rife with allegations of Monsanto hiding such alleged dangers.[10]  In light of Plaintiff's allegations regarding Monsanto's alleged extensive cover-up, there is no basis to

---

[10] *See* Petition ¶ 32 ("Monsanto assured the public that glyphosate and/or Roundup® formulations were harmless.  In order to prove this, Monsanto championed falsified data and attacked legitimate studies that revealed the dangers of glyphosate and/or Roundup® formulations.  Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that glyphosate and/or Roundup® formulations are safe."), ¶ 71 ("Monsanto has repeatedly proclaimed and continues to proclaim that glyphosate-based herbicides, including Roundup®, create no unreasonable risks to human health or to the environment."), ¶ 115 ("Monsanto has wrongfully concealed information concerning the dangerous nature of Roundup® formulations and the active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of glyphosate and Roundup® formulations."), ¶ 122 ("To this day, Monsanto has failed to adequately and accurately warn of the risks of cancer associated with the use of and exposure to Roundup® formulations and the active ingredient glyphosate."); ¶ 167(l) (alleging that Monsanto's negligence included "[a]dvertising, marketing, and recommending the use of glyphosate and/or Roundup® formulations, while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of or exposure to glyphosate and Roundup® formulations").

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

1   conclude that 3M Cattle: (a) had actual or constructive knowledge that glyphosate and/or Roundup®-

2   branded herbicides posed a risk of cancer or other serious health risks; or (b) breached any duty owed

3   to Plaintiff.  *See* Notice of Removal ¶¶ 23 & 28.

### b.      Negligence Under Louisiana Article 2315

5           There is also no basis for the Court to predict that Plaintiff might be able to recover in his

6   negligence claim against 3M Cattle under Article 2315.  The Louisiana Supreme Court employs a

7   duty-risk analysis for Article 2315, under which the plaintiff bears the burden of proving "five

8   separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard

9   (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard

10  (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the

11  plaintiff's injures (the cause-in-fact element); (4) whether the defendant's substandard conduct was a

12  legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5)

13  whether the plaintiff was damaged (the damages element)."  *Hanks v. Entergy Corp.*, 944 So. 2d 564,

14  579 (La. 2006)).  A negative answer to any of these inquiries results in a determination of no liability.

15  *See Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 321 (La. 1994).

16          The "threshold question in any negligence inquiry is whether the defendant owed the plaintiff

17  a duty."  *Sostand v. Rolling Frito Lay Sales*, Civil Action No. 6:16-cv-01268, 2017 WL 1485190, at

18  *3 (W.D. La. Mar. 23, 2017) (citing *Hanks*, 944 So. 2d at 580).  Whether "a legal duty exists, and the

19  extent of that duty, depends on the facts and circumstances of the case, and the relationship of the

20  parties," *Labarre v. Occidental Chem. Co.*, 250 So. 3d 932, 938 (La. App. 1st Cir. 2018) (citation

21  omitted).  Louisiana courts have recognized that "[n]o duty to protect against or control the actions

22  of a third party exists unless a ***special relationship*** exists to give rise to such a duty."  *Carroll v.*

23  *Allstate Ins.*, 244 So. 3d 772, 776 (La. App. 2d Cir. 2017) (emphasis added) (citation omitted).  The

24  traditional "special relationships" are those that "exist between parent and child; employer and

25  employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restauranteur

26  and patron; jailer and prisoner; and teacher and pupil."  *Carroll*, 244 So. 3d at 777 (citing *Haskins v.*

27  *State Farm Fire & Cas. Co.*, 612 So. 990 (La. App. 2d Cir. 1993)).  Because the Petition does not

28

- 13 -

allege a special relationship between 3M Cattle and Plaintiff under Article 2315 (leaving aside any potential premises liability theory under Article 2317.1, which is not viable, *see supra* Part III.C.1.a), the Petition fails to allege facts sufficient to establish 3M Cattle's negligence under Louisiana's duty-risk analysis. *See Fox v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 576 So. 2d 978, 981 (La. 1991) ("Typically, in [negligence] cases such as this, where the alleged wrongful conduct of the defendant is a failure to act or 'nonfeasance,' courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant.") (citation omitted).

In addition, Article 2315 requires that for a duty to exist — just like Article 2317.1 — 3M Cattle must have actual or constructive knowledge of a defect or danger related to glyphosate and Roundup®-branded herbicides. *See Pool v. City of Shreveport*, 607 So. 2d 861, 864 (La. App. 2d Cir. 1992) (considering an Article 2315 negligence claim and noting that "under negligence principles, it is *awareness* of the dangerous condition that engenders a corresponding duty to act" (emphasis in original)); *Naylor v. La. Dep't of Pub. Highways*, 423 So. 2d 674, 682 (La. App. 1st Cir. 1982) (it is "actual or constructive knowledge of a risk of injury [that] gives rise to the duty" in a 2315 negligence action); *Wiley v. Sanders*, 850 So. 2d 771 (La. App. 2d Cir. 2003) (holding no breach of duty for Article 2315 negligence claim where landowner did not have any knowledge of the house party at his residence that presented the potentially dangerous condition); *Ross v. La Coste de Monterville*, 502 So. 2d 1026, 1032-33 (La. 1987) (noting that Article 2315 negligence claim would be defeated by plaintiff's failure to prove that defendant had knowledge of the defects). The Petition fails to contain any non-conclusory factual allegations to establish that 3M Cattle had actual or constructive knowledge that glyphosate and/or Roundup®-branded herbicides are dangerous or defective. In fact, the Petition alleges that Monsanto concealed and covered up information about the supposed dangers. *See supra* n.10. As such, there is no basis to infer that 3M Cattle had the knowledge that would give rise to the duty required for Plaintiff to assert a viable Article 2315 claim.

### 2. Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against 3M Cattle

While there is no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against 3M Cattle based upon the allegations in the Petition — and therefore making it unnecessary for the Court to pierce the pleadings and consider evidence offered by the parties on the issue of fraudulent joinder, *see Gros*, 2012 WL 5906724, at *2 — Monsanto has also presented evidence demonstrating that there is no possibility that Plaintiff can recover in his negligence claim against 3M Cattle.

The gravamen of the negligence claim is that 3M Cattle allegedly did not do enough to protect Plaintiff from, and warn him about, the allegedly dangerous nature of Roundup®-branded products and/or glyphosate. These are duties, however, that would arise from 3M Cattle's knowledge about those issues. In support of its Notice of Removal, Monsanto provided a declaration from Courtney Mongrue (the operator, officer, and registered agent for 3M Cattle "since [its] inception") who confirmed that "3M Cattle was not aware of any alleged concerns regarding the safety of glyphosate or Roundup®-branded herbicides until April 2019 when 3M Cattle was served with Mr. Trosclair's lawsuit against 3M Cattle and other defendants." Decl. of Courtney Mongrue ¶¶ 3 & 8, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-8 (E.D. La. May 24, 2019) ("Wade Mongrue Declaration"). In support of this Opposition to Plaintiff's Motion to Remand, Monsanto has also provided a declaration from Wade Mongrue (the other operator, officer, and registered agent for 3M Cattle "since [its] inception") who confirmed the same regarding 3M Cattle's lack of knowledge until April 2019 when 3M Cattle was served with the lawsuit. *See* Decl. of Wade Mongrue ¶¶ 2 & 9, Oct. 28, 2019 (attached as Exhibit 3, hereafter referred to as the "Wade Mongrue Declaration").

Plaintiff has failed to present any evidence that can overcome or dispute Courtney and Wade Mongrue's sworn statements that 3M Cattle lacked knowledge regarding the alleged defects with Roundup®-branded products and/or glyphosate until 3M Cattle was served with the lawsuit in April 2019. Federal courts in Louisiana have repeatedly pierced pleadings under similar circumstances and denied remand motions. *See, e.g.*, *Janke*, 2012 WL 1499292, at *4 (relying on affidavit from

- 15 -

fraudulently joined defendant which "establishes that [defendant] had no knowledge of the defect in the ladder that injured [the plaintiff], and therefore there is no possibility of recovery").  For example, this case is similar to *Tantillo*, in which the U.S. District Court for the Eastern District of Louisiana denied a motion to remand under similar circumstances.  *Tantillo v. Cordis Corp.*, No. 04-2005(J)(1), 2004 WL 2212113 (E.D. La. Sept. 30, 2004).  There, the plaintiff named both the manufacturer of a medical device and a Louisiana hospital in a products liability suit.  *See id.*  To prevail in the negligence action against the hospital, the plaintiff was required to establish that the hospital knew of, or should have been aware of, the alleged defect in the product.  *See id.*, at *2.  In holding that the hospital had been fraudulently joined, the court found significant that a hospital representative (the Director of the Heart Center) had provided an affidavit stating that "the hospital did not have any knowledge of any defective condition" of the product and that "the hospital did not receive any indication of any defects or problems with the [product]."  *Id.*

Just as in *Tantillo*, a defendant here (3M Cattle) has submitted affidavits from 3M Cattle's two principal officers averring that 3M Cattle lacked knowledge of any alleged concerns regarding the safety of glyphosate or Roundup®-branded products until it was served with the lawsuit in April 2019.  Plaintiff has not provided (and indeed cannot provide) any evidence to dispute this dispositive fact; as such, there is no possibility that Plaintiff can prevail in his negligence claim against 3M Cattle. Further, Plaintiff's own allegations about Monsanto's alleged cover-up regarding alleged defects in those products underscores the deficiencies with his negligence claim against 3M Cattle.  *See supra* Part III.C.1.b.

Left with no evidence to dispute 3M Cattle's lack of knowledge regarding the alleged dangerous properties of glyphosate and/or Roundup®-branded products during Plaintiff's alleged exposure period (2012-2018, *see* Petition ¶ 22), Plaintiff instead focuses on unrelated matters, none of which dispute 3M Cattle's lack of knowledge during the relevant time period.  *See* Pl.'s Remand Mem. at 3-4.  While it is true that the parties dispute[11] certain factual issues, including whether Mr.

---

[11] In support of the Original Remand Motion filed in the Eastern District of Louisiana, Plaintiff submitted two separate declarations.  *See* Decl. of Roland Trosclair, May 27, 2019, 2:19-cv-10689-GGG-MBN, ECF No. 7-2 (E.D. La. May 29, 2019) ("Plaintiff's First Declaration"); Supp. Decl. of

Jacobs obtained Roundup®-branded products or Roundup® "concentrate" from the Luling facility and then provided those items to 3M Cattle, and whether 3M Cattle then provided those products to Plaintiff for use on 3M Cattle's premises, none of this actually disputes 3M Cattle's lack of knowledge regarding the alleged dangerous properties of glyphosate or Roundup®-branded products during Plaintiff's alleged exposure period.  Plaintiff misses this fundamental point.[12]

Plaintiff's reliance on two photographs (which he alleged took in mid-February 2019 on 3M Cattle's premises) likewise does nothing to support his negligence claim against 3M Cattle.  The first photograph is not even of a Roundup® container, but instead has a label referring to "potassium phosphate."  The second photograph is of a Ranger® Pro jug, which again, was allegedly taken on 3M Cattle's premises during mid-February 2019.  The critical point is that neither photograph disputes that 3M Cattle lacked knowledge regarding the alleged dangerous properties (or defects) of glyphosate and/or Roundup®-branded products during Plaintiff's alleged exposure period.[13]

In support of the Motion to Remand, Plaintiff has also submitted an entirely irrelevant declaration from a non-party to this lawsuit (Arthur O. Kelm), who states that from "1995 until in or about 2004," an unidentified "previous employee of Monsanto Luling Plant" provided him with

Roland Trosclair, June 13, 2019, 2:19-cv-10689-GGG-MBN, ECF No. 28-1 (E.D. La. June 18, 2019) ("Supplemental Plaintiff Declaration").  Although Plaintiff has not attached either declaration to the Motion to Remand before this Court, Monsanto nonetheless addresses those declarations as they are referenced in the Remand Memorandum.

[12] Wade and Courtney Mongrue categorically deny that 3M Cattle ever received glyphosate-containing products or Roundup®-branded herbicides from Randy Jacobs or any other individual affiliated with Monsanto or Monsanto's Luling Plant; they deny ever asking or directing Plaintiff to use glyphosate-containing products or Roundup®-branded products; and they also deny that 3M Cattle ever provided Plaintiff with any glyphosate-containing herbicides or Roundup®-branded products. *See* Courtney Mongrue Decl. ¶¶ 4-6; Wade Mongrue Decl. ¶¶ 4-6.

[13] In support of the Original Remand Motion filed in the Eastern District of Louisiana, Plaintiff submitted a photograph allegedly taken at the 3M farm in February 2019 "of a jug with a Potassium Phosphate label" which he declares "is representative of the jugs received from [Mr.] Jacobs."  Pl.'s Remand Mem. at 4 (citing Exhibit 1 to Pl.'s Reply to Monsanto's Opp. to Original Remand Mot., 2:19-cv-10689-GGG-MBN, ECF No. 28-1 (E.D. La. June 18, 2019)).  Plaintiff also previously submitted a photograph "of a jug of Roundup® PRO, which he declared to be representative of the labeled Roundup® jugs provided to him by 3M."  Pl.'s Remand Mem. at 4 (citing Exhibit 2 to Pl.'s Reply to Monsanto's Opp. to Original Remand Mot.).

"concentrated Roundup® product" that Mr. Kelm understood "came from the production line before dilution occurred."  Decl. of Arthur O. Kelm ¶¶ 3, 5-6, July 5, 2019, No. 3:19-cv-06396-VC, ECF No. 54-3 ("Kelm Declaration") (N.D. Cal. Oct. 17, 2019).  This declaration does not reference 3M Cattle or Mr. Jacobs, and does not even cover Plaintiff's alleged exposure period.  *Compare with* Petition ¶ 22 (alleging that "Mr. Trosclair was first exposed to glyphosate and/or Roundup® formulations in 2012, when he began working on a farm owned by 3M Cattle in St. Charles Parish."). This declaration also does not dispute 3M Cattle's lack of knowledge regarding the alleged dangerous properties of glyphosate and/or Roundup®-branded products during Plaintiff's alleged exposure period.  This declaration is just a desperate attempt to create a factual dispute on an issue that is irrelevant to the fraudulent joinder analysis.  In conclusion, as there is no possibility that Plaintiff might be able to recover in his negligence action against 3M Cattle under either Article 2317.1 or Article 2315, the Court should disregard the citizenship of this fraudulently joined defendant.

### D.   Plaintiff Improperly Joined Randy Jacobs Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover

Plaintiff has also improperly joined Randy Jacobs, who worked at the Luling plant as a Monsanto employee.  Plaintiff asserts a negligence cause of action against Mr. Jacobs, alleging that he supplied or distributed unlabeled or improperly labeled glyphosate and/or Roundup®-branded herbicides in "repurposed containers" to Plaintiff and/or 3M Cattle that Mr. Jacobs allegedly removed from the Luling plant.  *See* Petition ¶¶ 130, 132, 189, 191.  Plaintiff also alleges that Mr. Jacobs "[a]s an employee of [the] Luling Plant . . . had or should have had an elevated appreciation of the dangerous nature of chemicals in general, and glyphosate and/or Roundup formulations particularly. As such, Mr. Jacobs had a duty to act with reasonable care in the distribution of the products manufactured by his employer."  *Id.* ¶ 190.

Although the Petition does not specify which negligence standard Plaintiff contends applies to Mr. Jacobs, there is no possibility that he can prevail under either: (1) the *Canter* negligence standard, which imposes liability on employees under certain limited circumstances; or (2) Louisiana Article 2315.

- 18 -

1      **1.      There Is No Basis For The Court To Predict That Plaintiff Might Be
              Able To Recover In His Negligence Claim Against Randy Jacobs Based
2              Upon The Allegations In The Petition**

3              **a.      Negligence Under The *Canter* Standard**

4      Under *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973), an employee may be held

5      personally liable for injuries to third parties under certain limited circumstances.  *See Guillory v. PPG*

6      *Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005).  Liability under *Canter* is a narrow exception to the

7      default rule that "[o]fficers, employees and agents owe no duties to third parties, and cannot be found

8      liable to third parties for their negligent acts and omissions in the commercial context."  *Korson v.*

9      *Independence Mall I, Ltd.*, 585 So. 2d 1174, 1178 (La. App. 5th Cir. 1992).  To hold an employee

10     personally liable, a plaintiff must prove: "(1) 'that the principal or employer owes a duty of care to

11     the third person . . . breach of which has caused the damage for which recovery is sought,' (2) that

12     the 'duty [was] delegated by the principal or employer to the defendant,' (3) that the 'defendant

13     officer, agent, or employee has breached this duty through personal (as contrasted with technical or

14     vicarious) fault' by failing 'to discharge the obligation with the degree of care required by ordinary

15     prudence under the same or similar circumstances . . .'"  *Gros*, 2012 WL 5906724, at *7 (quoting

16     *Canter*, 283 So. 2d at 721).  In short, to hold an "agent or employee personally liable, the agent or

17     employee's *principal* or *employer* must have owed the Plaintiff a duty and delegated that duty to the

18     employee."  *Id.*, at *7 (emphasis in original).

19     The Petition fails to allege any facts regarding Mr. Jacobs' job responsibilities (including

20     whether he had any responsibilities relating to Roundup®-branded herbicides); his position at the

21     Luling facility; or the basis for his alleged knowledge of undisclosed risks and hazards of Roundup®-

22     branded herbicides or glyphosate.  *See* Petition ¶ 30 (merely alleging that Mr. Jacobs is "an active

23     Luling Plant employee"), ¶ 188 (merely alleging that Mr. Jacobs "is and/or was employed at Luling

24     Plant").  The Petition also does not allege facts indicating that Monsanto specifically delegated to Mr.

25     Jacobs, as a job duty, the distribution of Roundup®-branded herbicides.  Instead, Plaintiff asks this

26     Court to infer that a duty and knowledge existed based solely on Mr. Jacobs' employment at the

27     Luling facility, and Plaintiff's allegations that Mr. Jacobs provided him with Roundup® products.

28
                                                    - 19 -

1    Federal courts in Louisiana have rejected these types of allegations as insufficient to support

2    liability under *Canter*.  For example, in *Clark v. CST Services, LLC*, the plaintiff filed a personal

3    injury lawsuit after she allegedly tripped and fell due to a "defective mat/rug" at a convenience store.

4    Civil Action No. 16-10421, 2016 WL 6563437, at *1 (E.D. La. Nov. 4, 2016).  The plaintiff alleged

5    that the store manager "was aware of the dangerous condition, or should have been aware of the

6    dangerous condition, and breached a duty to discover, remedy, or warn Plaintiff of such danger, and

7    is therefore personally liable to Plaintiff for the damages she sustained," and included a "boilerplate

8    list of alleged negligent acts committed by [the manager]," including, *inter alia*, the failure to maintain

9    safe and clean premises, and failure to post signs warning of the dangerous conditions.  *Id.*, at *2.

10   After removal, the court granted a Rule 12(b)(6) motion to dismiss, holding that the allegations against

11   the manager were insufficient to support personal lability under *Canter*, as the complaint did not offer

12   any factual support indicating that the manager owed a duty of care to the plaintiff under *Canter* or

13   that the employer "ever delegated the duties which it owed to third party patrons as a merchant under

14   Louisiana law[.]"  *Id.*, at *3.  Critically, the court held that the plaintiff's "allegations that [the store

15   manager] 'knew or in the exercise of reasonable care, should have known of' the allegedly dangerous

16   condition on the premises ***is a conclusory allegation that the Court is not required to accept, and it***

17   ***does not amount to an allegation that [the store manager] personally knew of the allegedly***

18   ***dangerous mat/rug***."  *Id.* (emphasis added (citing *Giles,* 2016 WL 2825778, at *4)).  *See also*

19   *Anderson v. Ga. Gulf Lake Charles, LLC*, 342 F. App'x 911 (5th Cir. 2009) (denying remand motion

20   based in part on inadequate allegations that employees breached a duty where fraudulently joined

21   defendant lacked personal knowledge as to the alleged defect); *Robinson v. Wal-Mart Stores, Inc.*,

22   Civil Action No. 15-6871, 2016 WL 1572078, at *1 (E.D. La. Apr. 19, 2016) (denying remand motion

23   and holding that store manager was improperly joined because the plaintiff failed to allege that the

24   manager owed a personal, independent duty to store patrons, delegated to him by his employer).  The

25   Petition's allegations as to Mr. Jacobs are similarly insufficient under a *Canter* theory of negligence.

26

27

28

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

1

**b.   Negligence Under Louisiana Article 2315**

2      There is also no possibility that Plaintiff can recover in a negligence claim against Mr. Jacobs

3  under Article 2315, as the Petition does not allege facts sufficient to establish that Mr. Jacobs owed

4  Plaintiff a recognized duty of care under Louisiana law (independent of his status as a Monsanto

5  employee).  *See supra* Part III.C.1.b (discussing "special relationships" recognized under Louisiana

6  law that can give rise to a duty).  Instead, the Petition is replete with allegations that Monsanto

7  engaged in an alleged pervasive, decades-long cover-up that concealed the dangers and risks posed

8  by glyphosate and Roundup®-branded herbicides.  *See supra* n.10 (quoting Petition).  Given those

9  allegations, there is no basis to conclude that Mr. Jacobs knew or should have known that these

10  products allegedly created a risk of cancer or other serious adverse effects.  Moreover, Plaintiff's

11  allegation that "Mr. Jacobs had or should have had an elevated appreciation of the dangerous nature

12  of chemicals in general, and glyphosate and/or Roundup® formulations particularly" is a conclusory

13  allegation that this Court should not accept.  *See Gros*, 2012 WL 5906724, at *8 (denying remand

14  motion and stating that plaintiff's allegation that employee "knew of the allegedly defective

15  condition" was a "conclusory allegation that the court is not required to accept").  Here, the Petition

16  does not allege facts to establish that a special relationship existed between Mr. Jacobs and Plaintiff,

17  or that Mr. Jacobs had actual or constructive knowledge that glyphosate and/or Roundup®-branded

18  products allegedly created a risk of cancer or other serious adverse effects.

19

**2.   Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against Mr. Jacobs**

20

21      Although it is unnecessary to pierce the pleadings, Monsanto has also presented evidence

22  showing there is no possibility that Plaintiff can recover in his negligence claim against Mr. Jacobs.

23  The Notice of Removal is supported by a declaration from Mr. Jacobs which states that, during his

24  employment with Monsanto, he "never marketed, promoted, advertised, or labeled glyphosate or

25  Roundup®-branded herbicides"; as part of his employment with Monsanto, he was "never responsible

26  for providing and never provided any warnings about glyphosate or Roundup®-branded herbicides";

27  he had "had no role or involvement in deciding what warnings or other information were included on

28

- 21 -

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

Monsanto's labeling for Roundup®-banded herbicides"; and he has "never thought or believed that glyphosate or Roundup®-branded herbicides are defective products or that they create any risk of cancer or other serious injuries."  Decl. of Randy Jacobs ¶¶ 4-5, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-7 (E.D. La. May 24, 2019) ("First Jacobs Declaration").  Moreover, that declaration also states that Mr. Jacobs: (a) never removed or took Roundup®-branded herbicides from the Luling plant in improperly labeled, unlabeled, or repurposed containers; (b) never provided, supplied, distributed, or sold (or been involved in providing, supplying, distributing, or selling) improperly labeled or unlabeled glyphosate or Roundup®-branded herbicides to plaintiff, 3M Cattle, or any members of the public; and (c) never provided, supplied, distributed, or sold (or been involved in providing, supplying, distributing, or selling) glyphosate or Roundup®-branded herbicides to Mr. Trosclair, 3M Cattle, or any members of the public.  *Id.* ¶ 7.  In fact, during his entire period of Monsanto employment, Mr. Jacobs "was never assigned or delegated, as a job duty, the distribution of Roundup®-branded products or glyphosate products," and he "was never assigned or delegated, as a job duty, the responsibility for dealing with or interacting with purchasers or users of Roundup®-branded products or glyphosate products."  Decl. of Randy Jacobs ¶ 5, June 10, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 19-3 (E.D. La. June 11, 2019) ("Second Jacobs Declaration").  Based upon this evidence, there is no possibility that Plaintiff can recover in his negligence claim against Mr. Jacobs under either *Canter* or Article 2315.

First, the evidence presented by Monsanto demonstrates there is no basis for predicting that Plaintiff might be able to recover against Mr. Jacobs under a *Canter* theory.  Although Plaintiff disputes whether Mr. Jacobs provided Roundup®-branded herbicides used by Plaintiff, Plaintiff has not presented any evidence to establish that Monsanto ever specifically delegated to Mr. Jacobs, as a job duty, the distribution of Roundup®-branded herbicides.  Federal courts in Louisiana have rejected *Canter* liability under similar circumstances.  *See Guillory*, 434 F.3d 303 (affirming removal and dismissal of non-diverse defendants based on uncontroverted testimony that they were not responsible for the safety mechanisms related to the alleged failure of the waste treatment facility); *Freeman v. Witco, Corp.*, 984 F. Supp. 443, 450 (E.D. La. 1997) (denying motion to remand and holding that

- 22 -

water treatment facility employees were improperly joined based on uncontroverted evidence submitted by improperly joined defendants and plaintiff's bare allegations that defendants were liable "by virtue of [their] position with [defendant]").

Second, the evidence presented by Monsanto demonstrates there is no basis for predicting that Plaintiff might be able to recover against Mr. Jacobs under Article 2315.  To establish that Mr. Jacobs had a personal duty to Plaintiff that existed outside Mr. Jacobs' employment at the Luling plant, Plaintiff must show that Mr. Jacobs was personally responsible for creating the dangerous condition and had personal knowledge of it, but failed to remedy it.  *See Haynes v. Healthcare Servs. Grp., Inc.*, Civil Action No. 13-649-JJB-RLB, 2014 WL 2769080, at *3 (M.D. La. May 30, 2014) (collecting Louisiana case law finding a personal duty and noting that each case required knowledge of the danger in order to find a personal duty existed).  Mr. Jacobs has submitted a sworn statement denying any knowledge about any alleged defects or risks of cancer or other serious injuries involving glyphosate or Roundup®-branded herbicides, while also stating that he "had no role or involvement in deciding what warnings or other information were included on Monsanto's labeling for Roundup®-branded herbicides."  First Jacobs Decl. ¶ 5.  Plaintiff has no evidence to the contrary.  As such, there is no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against Mr. Jacobs under Article 2315 as there was no duty (or corresponding knowledge) to warn Plaintiff about the alleged defects of the products at issue.[14]

## <u>CONCLUSION</u>

For the foregoing reasons, Monsanto requests that the Court deny Plaintiff's Motion to Remand.

---

[14] To the extent Plaintiff claims in his declaration that he retrieved "Roundup herbicide" from Mr. Jacobs' garage, Pl.'s First Decl. ¶ 4, Mr. Jacobs expressly denies any awareness that Plaintiff has ever retrieved any type of herbicide from his garage, *see* Second Jacobs Decl. ¶ 2, or that Plaintiff has ever been at his home or on his property.  *Id*. ¶ 3.  Similarly, Wade Mongrue affirms that he does "not recall ever visiting the home or garage of Randy Jacobs" with Plaintiff.  Wade Mongrue Decl. ¶ 4.  Moreover, even assuming that Mr. Jacobs provided Roundup® herbicides to Plaintiff — which Mr. Jacobs expressly denies — there is still no basis to find that Mr. Jacobs had a legal duty to Plaintiff, or that Mr. Jacobs had any knowledge of the alleged defects of the products during Plaintiff's alleged exposure period.

1

2

DATED:  October 29, 2019

Respectfully submitted,

3

/s/ Eric G. Lasker

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant MONSANTO COMPANY*

- 24 -

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC