**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, N.W.
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| *Trosclair v. Monsanto Co., et al.*, Case No. 3:19-cv-06396-VC | Date:  November 21, 2019 |
| | Time: 10:00 a.m. |
| | Courtroom:  4 |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

ISSUES TO BE DECIDED ................................................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................................................... 2

ARGUMENT ....................................................................................................................................... 2

I.   Legal Standard ............................................................................................................................ 2

II.  Plaintiff's Arguments Do Not Support Remand. ....................................................................... 3

III. The Procedural And Substantive Requirements For Removal Have Been Satisfied. ................ 4

    A. Plaintiff Improperly Joined Catlin Insurance Services And T.H.E. Insurance Because They Did Not Issue Any Insurance Policies To Monsanto. ................................ 4

    B. Plaintiff Improperly Joined "Monsanto Company Manufacturing Facility" Because It Is Not A Separate Legal Entity And Lacks The Capacity To Be Sued. ............ 5

    C. Plaintiff Improperly Joined 3M Cattle Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover From It. ........................................... 6

        1. There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against 3M Cattle Based Upon The Allegations In The Petition. .................................................................................. 6

            a. Negligence Under Louisiana Article 2317.1 ............................................... 6

            b. Negligence Under Louisiana Article 2315 .................................................. 8

        2. Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against 3M Cattle. .................... 9

    D. Plaintiff Improperly Joined Randy Jacobs Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover From Him. ......................... 11

        1. There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against Randy Jacobs Based Upon The Allegations In The Petition. ................................................................................ 11

            a. Negligence Under The *Canter* Standard ................................................... 11

            b. Negligence Under Louisiana Article 2315 ................................................ 13

        2. Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against Mr. Jacobs. ................. 13

CONCLUSION .................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Lodge at the Bluffs, LLC*,
  217 So. 3d 429 (La. App. 1st Cir. 2017) .................................................................................. 7

*Anderson v. Ga. Gulf Lake Charles, LLC*,
  342 F. App'x 911 (5th Cir. 2009) ........................................................................................... 12

*Arias v. Follet Higher Educ. Corp.*,
  No. 8:18-cv-01965-JLC-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) .................................. 3

*Canter v. Koehring Co.*,
  283 So. 2d 716 (La. 1973) .......................................................................................... 11, 12, 14

*Carroll v. Allstate Ins.*,
  244 So. 3d 772 (La. App. 2d Cir. 2017) ................................................................................... 8

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
  44 F.3d 256 (5th Cir. 1995) ...................................................................................................... 3

*Clark v. CST Servs., LLC*,
  Civil Action No. 16-10421, 2016 WL 6563437 (E.D. La. Nov. 4, 2016) ............................... 12

*Dejoie v. Medley*,
  945 So. 2d 968 (La. App. 2d Cir. 2006) ................................................................................... 5

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
  No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) ........................ 3

*Fox v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
  576 So. 2d 978 (La. 1991) ........................................................................................................ 8

*Freeman v. Witco, Corp.*,
  984 F. Supp. 443 (E.D. La. 1997) .......................................................................................... 14

*Giles v. Wal-Mart La. LLC*,
  Civil Action No. 16-2413, 2016 WL 2825778 (E.D. La. May 13, 2016) ........................... 7, 12

*Gros v. Warren Props., Inc.*,
  Civil Action No. 12-2184, 2012 WL 5906724 (E.D. La. Nov. 26, 2012) ..................... 7, 12, 13

*Guillory v. PPG Indus., Inc.*,
  434 F.3d 303 (5th Cir. 2005) ............................................................................................ 11, 14

*Hanks v. Entergy Corp.*,
  944 So. 2d 564 (La. 2006) ........................................................................................................ 8

*Haynes v. Healthcare Servs. Grp., Inc.*,
  Civil Action No. 13-649-JJB-RLB, 2014 WL 2769080 (M.D. La. May 30, 2014) ................ 14

*Janke v. Babcock Co., Inc.*,
   Civil Action No. 12-513, 2012 WL 1499292 (E.D. La. Apr. 27, 2012) ........................................ 9

*Lewis v. Valero Refining-New Orleans*,
   Civil Action No. 16-16590, 2017 WL 955684 (E.D. La. Mar. 13, 2017) ..................................... 6

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
   220 F. Supp. 2d 1116 (N.D. Cal. 2002) ....................................................................................... 3

*Marketfare Annunciation, LLC v. United Fire & Cas. Co.*,
   Civil Action No. 06-7232, 2006 WL 3759565 (E.D. La. Dec. 19, 2006) ..................................... 4

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ................................................................................................. 2, 3

*Naylor v. La. Dep't of Pub. Highways*,
   423 So. 2d 674 (La. App. 1st Cir. 1982) ...................................................................................... 9

*O'Campo v. Hardisty*,
   262 F.2d 621 (9th Cir. 1958) .................................................................................................... 4, 5

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ........................................................................................................ 3

*Pool v. City of Shreveport*,
   607 So. 2d 861 (La. App. 2d Cir. 1992) ....................................................................................... 8

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998) .................................................................................................. 2, 3

*Robinson v. Moises*,
   171 So. 3d 1108 (La. App. 4th Cir. 2015) .................................................................................... 4

*Robinson v. Wal-Mart Stores, Inc.*,
   Civil Action No. 15-6871, 2016 WL 1572078 (E.D. La. Apr. 19, 2016) ................................... 13

*Sostand v. Rolling Frito Lay Sales*,
   Civil Action No. 6:16-cv-01268, 2017 WL 1485190 (W.D. La. Mar. 23, 2017) ......................... 8

*Szewczyk v. Party Planners W., Inc.*,
   274 So. 3d 57 (La. App. 4th Cir. 2019) ........................................................................................ 7

*Tantillo v. Cordis Corp.*,
   No. 04-2005(J)(1), 2004 WL 2212113 (E.D. La. Sept. 30, 2004) ............................................. 10

**Other Authorities**

Fed. R. Civ. P. 17(b)(3) ........................................................................................................................ 5

Louisiana Article 2315 ............................................................................................................... *passim*

Louisiana Article 2317.1 ................................................................................................................ 6, 7

Louisiana's Direct Action Statute, La. R.S. 22:1269 ......................................................................... 4

**ISSUES TO BE DECIDED**

Monsanto Company's ("Monsanto") Notice of Removal provided a clear evidentiary basis to establish that Plaintiff, a citizen of Louisiana, fraudulently joined five Louisiana defendants in an attempt to destroy diversity jurisdiction. In response, Plaintiff filed a Motion to Remand that does not (and cannot) challenge the essential grounds supporting removal. The remand motion should be denied.

The remand motion does not even mention three of the defendants – two companies that Plaintiff wrongly alleges provided insurance coverage to Monsanto, and a Monsanto manufacturing plant that is not a separate legal entity and lacks the capacity to be sued. While Plaintiff now essentially concedes that he fraudulently joined those defendants, Plaintiff should have made this concession a long time ago. Counsel for Monsanto informed Plaintiff's counsel — several months before the remand motion was even filed — that these defendants were indisputably not viable defendants in this action. Monsanto also directed Plaintiff's counsel to publicly available records that confirmed the same.

Plaintiff's attempt to conjure up claims against the two other Louisiana defendants (3M Cattle, LLC, a family-held limited liability company, and Randy Jacobs, a former Monsanto employee) also fails. The allegations in the Petition and the evidence presented by Monsanto establish that there is no possibility that Plaintiff can recover in his negligence claims against these defendants, and Plaintiff has failed to present any evidence to the contrary. Instead, the remand motion recycles arguments that Plaintiff raised (unsuccessfully) with the Judicial Panel on Multidistrict Litigation ("JPML") in opposing transfer of this case to the MDL. These arguments, of course, have nothing to do with whether this Court has diversity jurisdiction and whether removal was proper.

As there is no basis to predict that Plaintiff might be able to prevail against any of the Louisiana defendants, the citizenship of those defendants must be disregarded for purposes of diversity jurisdiction. The jurisdictional amount-in-controversy requirement has also been satisfied, and Plaintiff does not contend otherwise. Because all procedural and substantive requirements for removal have been satisfied, the remand motion must be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 29, 2019, Plaintiff filed this products liability action in the 29th Judicial District Court, Parish of St. Charles, State of Louisiana, alleging that he developed non-Hodgkin's Lymphoma ("NHL") because of exposure to Monsanto's glyphosate-based herbicides. *See* Petition ¶¶ 21, 24, 105-06, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-2 (E.D. La. May 24, 2019). Plaintiff is a Louisiana citizen and Monsanto is a citizen of Delaware and Missouri for purposes of diversity jurisdiction. *See* Notice of Removal ¶¶ 6-7, No. 2:19-cv-10689-GGG-MBN, ECF No. 1 (E.D. La. May 24, 2019). Plaintiff has also sued another diverse defendant, XL Bermuda, Ltd., an insurance company that has Bermuda citizenship. *See id.* ¶ 8. The remaining (Louisiana) defendants — all of whom were improperly joined, as discussed below — include two companies that Plaintiff wrongly alleges provided insurance coverage to Monsanto (Catlin Insurance Services, Inc., and T.H.E. Insurance Company), *see id.* ¶¶ 16-18; a Monsanto manufacturing plant that is not a separate legal entity and lacks the capacity to be sued, *id.* ¶¶ 13-15; 3M Cattle, LLC, a family-held limited liability company, *id.* ¶¶ 25-29; and Randy Jacobs, a former Monsanto employee, *id.* ¶¶ 19-24.

On May 24, 2019, Monsanto filed its Notice of Removal in the United States District Court for the Eastern District of Louisiana. *See* Notice of Removal. On May 29, 2019, Plaintiff filed a Motion to Remand this case back to Louisiana state court. *See* Pl.'s Mot. to Remand, No. 2:19-cv-10689-GGG-MBN, ECF No. 7 (E.D. La. May 29, 2019) ("Original Remand Motion"). Meanwhile, after the remand motion briefing was complete, the JPML entered a Transfer Order transferring this case (over Plaintiff's objections) to the Roundup® MDL. *See* JPML Transfer Order, No. 2:19-cv-10689-GGG-MBN, ECF No. 52 (E.D. La. Oct. 4, 2019). On October 17, 2019, Plaintiff filed the instant Motion to Remand. Pl.'s Mot. to Remand and Mem. in Support, No. 3:19-cv-06396-VC, ECF Nos. 54 & 54-1 (N.D. Cal. Oct. 17, 2019) ("Motion to Remand" and "Remand Memorandum").

**ARGUMENT**

**I.     Legal Standard**

The fraudulent joinder of defendants does not defeat this Court's diversity jurisdiction. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*,

1  139 F.3d 1313, 1318 (9th Cir. 1998).  The possibility that Plaintiff can state a claim against a
2  defendant must be a "non-fanciful" one.  *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d
3  1116, 1117 (N.D. Cal. 2002).  In conducting the fraudulent joinder analysis, courts do not accept
4  "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true.  *Plotkin v. IP
5  Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).  In addition, the court is not limited to the allegations
6  of the complaint; rather, the court may also consider affidavits and other evidence presented by the
7  defendants.  *See Ritchey*, 139 F.3d at 1318; *Morris*, 236 F.3d at 1068 ("[F]raudulent joinder claims
8  may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such
9  as affidavits and deposition testimony." (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d
10 256, 263 (5th Cir. 1995)).  Once the removing defendant offers evidence showing that there is no
11 possibility that the plaintiff can prevail against the non-diverse defendants, the plaintiff can no longer
12 rely on conclusory allegations made in the complaint to support remand.  *See Feizbakhsh v. Travelers
13 Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9,
14 2016) (denying remand motion and finding that plaintiff's "conclusory allegations" in the complaint
15 were not sufficient to overcome the evidence offered by the removing defendant to establish
16 fraudulent joinder); *Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLC-JDE, 2019 WL
17 484192, at *3 (C.D. Cal. Feb. 7, 2019) (same).

18 **II.     Plaintiff's Arguments Do Not Support Remand.**

19      The Remand Memorandum is devoid of any substantive argument explaining why this case
20 should be remanded.  Instead, Plaintiff simply makes the conclusory statement that "Monsanto has
21 failed to demonstrate Trosclair has 'no reasonable basis for predicting recovery' from the non-diverse
22 defendants," Pl.'s Remand Mem. at 8.  This empty statement does not overcome the legal arguments
23 and unrebutted evidence that Monsanto has submitted establishing that the Louisiana defendants were
24 fraudulently joined.  *See*, *e.g.*, *Feizbakhsh*, 2016 WL 8732296, at *8; *see also infra* Part III.

25      Having failed to challenge the essential grounds supporting removal, Plaintiff instead recycles
26 arguments that he previously raised in opposing the *transfer of this case to the MDL.  See* Pl.'s
27 Remand Mem. at 9 (arguing that the case should be "remanded" because "this Court has begun

28

- 3 -
MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

remanding cases back to the district courts from whence they came," and that "MDL common issue discovery is complete"). These arguments, of course, have nothing to do with whether this Court has subject matter jurisdiction or whether Monsanto's removal was proper, and thus are entirely irrelevant. The JPML also rejected these identical arguments as "not persuasive" when Plaintiff opposed transfer to the MDL. *See* JPML Oct. 2, 2019 Transfer Order, No. 3:19-cv-06396-VC, ECF No. 52 at 1 (N.D. Cal. Oct. 4, 2019) ("Transfer Order").

### III. The Procedural And Substantive Requirements For Removal Have Been Satisfied.

#### A. Plaintiff Improperly Joined Catlin Insurance Services And T.H.E. Insurance Because They Did Not Issue Any Insurance Policies To Monsanto.

Plaintiff does not contest Monsanto's assertion in the Notice of Removal — and therefore concedes this fact — that Catlin Insurance Services ("Catlin Insurance") and T.H.E. Insurance Company ("T.H.E. Insurance") never provided insurance policies to Monsanto; in fact, the Remand Memorandum does not even mention those defendants. *See O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958) (failure to deny facts alleged in a removal petition constitutes an admission of those facts). Moreover, as set forth in Monsanto's Notice of Removal, Plaintiff improperly joined these two defendants in a misguided attempt to invoke Louisiana's Direct Action Statute, La. R.S. 22:1269. *See* Notice of Removal ¶¶ 16-18. The statute requires that an action against an insurer must be "within the terms and limits of the policy," La. R.S. 22:1269, but a plaintiff does not have a claim against an insurer, however, if that defendant did not issue an insurance policy. *See Robinson v. Moises*, 171 So. 3d 1108, 1110-11 (La. App. 4th Cir. 2015). Thus, when an insurer is sued under the Direct Action Statute, that defendant does not destroy diversity if the defendant did not provide the insurance coverage at issue in the lawsuit. *See Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, Civil Action No. 06-7232, 2006 WL 3759565, at *3 (E.D. La. Dec. 19, 2006).

In support of its Notice of Removal, Monsanto submitted declarations establishing that there is no possibility that Plaintiff can recover in his claims against Catlin Insurance or T.H.E. Insurance because those defendants ***did not issue any insurance policies to Monsanto***. Notice of Removal ¶ 16. Robin Walsh, who has "worked on and been responsible for Monsanto's insurance programs"

for more than twenty years, has determined that Catlin Insurance and T.H.E. Insurance "are not part of Monsanto's insurance program and have not issued any insurance policies to Monsanto." Decl. of Robin Walsh in Support of Monsanto's Notice of Removal ¶¶ 2 & 4, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-5 (E.D. La. May 24, 2019) ("Walsh Declaration"). Likewise, Daniel Stackhouse (Associate General Counsel – Americas Claims for AXA XL) has determined that Catlin Insurance and T.H.E. Insurance did not issue any insurance policies to Monsanto. *See* Decl. of Daniel Stackhouse in Support of Monsanto's Notice of Removal ¶¶ 5-8, May 24, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-6 (E.D. La. May 24, 2019) ("Stackhouse Declaration").[1] As both declarations are undisputed, and Plaintiff has failed to present evidence establishing that Catlin Insurance or T.H.E. Insurance provided insurance policies to Monsanto, there is no possibility that Plaintiff might be able to hold these defendants liable under the Direct Action Statute. The Court should therefore disregard the citizenship of these two fraudulently joined defendants.

### B. Plaintiff Improperly Joined "Monsanto Company Manufacturing Facility" Because It Is Not A Separate Legal Entity And Lacks The Capacity To Be Sued.

Plaintiff does not contest Monsanto's assertion in the Notice of Removal — and therefore concedes this fact, *see O'Campo*, 262 F.2d at 624 — that there is no separate legal entity called "Monsanto Company Manufacturing Facility"; in fact, the remand motion does not even mention this defendant. Moreover, as set forth in the Notice of Removal, the undisputed evidence establishes that there is no separate legal entity called "Monsanto Company Manufacturing Facility" so that purported defendant lacks the capacity to be sued here. *See* Notice of Removal ¶¶ 13-15. In these circumstances, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). In Louisiana, "[a]n entity must qualify as a juridical person to have the capacity to be sued." *Dejoie v. Medley*, 945 So. 2d 968, 972 (La. App. 2d Cir.

---

[1] If Plaintiff's counsel had conducted a reasonable inquiry before filing this lawsuit, they should have realized that Catlin Insurance Services did not provide insurance coverage to Monsanto. Publicly available information on the website for the Louisiana Department of Insurance shows that Catlin Insurance Services only holds licenses as a "Producer Agency" and "Surplus Lines Broker," but not as a licensed insurer. *See* Louisiana Department of Insurance, *Active Company Search*, *available at* https://www.ldi.la.gov/onlineservices/ActiveCompanySearch/ (search results for "Catlin Insurance Services" attached as Exhibit 1).

2006); *see also Lewis v. Valero Refining-New Orleans*, Civil Action No. 16-16590, 2017 WL 955684, at *2 (E.D. La. Mar. 13, 2017) (disregarding citizenship of defendant's Louisiana refinery plant when deciding remand motion and holding that refinery plant sued under a "fictitious name . . . is not a business entity capable of being sued").

The Notice of Removal is supported by a declaration from an Assistant Secretary for Monsanto, who confirms that there "is no separate legal entity called 'Monsanto Company Manufacturing Facility.'" Decl. of Keith R. Abrams ¶ 3, May 23, 2019, 2:19-cv-10689-GGG-MBN, ECF No. 1-4 (E.D. La. May 24, 2019) ("Abrams Declaration"). Instead, the plant in Luling, Louisiana "is owned and operated by Monsanto"; is not a corporation or a company; is not registered to do business in Louisiana; and does not have a registered agent in Louisiana. *Id.* ¶¶ 3-4.[2] Because Plaintiff has failed to present any evidence to support his attempt to sue "Monsanto Company Manufacturing Facility" as a separate legal entity, there is no basis for this Court to predict that Plaintiff might be able to recover against "Monsanto Company Manufacturing Facility." The Court should disregard the citizenship of that purported defendant.

  **C.**  **Plaintiff Improperly Joined 3M Cattle Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover From It.**

    **1.**  **There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against 3M Cattle Based Upon The Allegations In The Petition.**

      **a.**  **Negligence Under Louisiana Article 2317.1**

Plaintiff has not identified a specific statutory basis for his negligence claim against 3M Cattle, LLC ("3M Cattle"), but to the extent it is based upon Louisiana Article 2317.1, there is no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against 3M Cattle

---

[2] A reasonable pre-filing inquiry would have led to the conclusion that "Monsanto Company Manufacturing Facility" is not a separate legal entity. A search for "Monsanto" of publicly available information on the website of the Louisiana Secretary of State shows various registered Monsanto entities, but nothing for "Monsanto Company Manufacturing Facility" (or any similarly named entity). *See* Louisiana Secretary of State, *Search for Louisiana Business Filings*, *available at* https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=557148_1A82E46B16 (search result for "Monsanto Company" attached as Exhibit 2).

based upon the allegations in the Petition. A plaintiff asserting a negligence claim based upon premises liability under Article 2317.1 must establish "the following elements: (1) the thing was in the custodian's custody or control; (2) it had a vice or defect that presented an unreasonable risk of harm; (3) ***the defendant knew or should have known of the unreasonable risk of harm***; and (4) the damage was caused by the defect." *Szewczyk v. Party Planners W., Inc.*, 274 So. 3d 57, 62 (La. App. 4th Cir. 2019) (emphasis added). Knowledge of the alleged defect is an "essential element" of any Article 2317.1 claim. *Alvarado v. Lodge at the Bluffs, LLC*, 217 So. 3d 429, 433 (La. App. 1st Cir. 2017); *see also Giles v. Wal-Mart La. LLC*, Civil Action No. 16-2413, 2016 WL 2825778, at *5 (E.D. La. May 13, 2016). While "[t]he constructive knowledge requirement of 2317.1 imposes a reasonable duty to discover apparent defects in things under the defendant's garde, [it] cannot be construed so broadly as to revive the regime of strict liability." *Gros v. Warren Props., Inc.*, Civil Action No. 12-2184, 2012 WL 5906724, at *7 (E.D. La. Nov. 26, 2012), at *10 (citation omitted).

Although Plaintiff has identified certain duties that 3M Cattle allegedly breached, the Petition fails to allege any facts to establish that 3M Cattle had actual or constructive knowledge of the allegedly defective or dangerous characteristics of Roundup®-branded herbicides. *See* Petition ¶ 201 (making conclusory allegation that "3M Cattle knew, or should have known, that the herbicide products provided by 3M Cattle to [Plaintiff] were dangerous and could cause injuries to [him]."). That is not enough. *See Giles*, 2016 WL 2825778, at *4 (applying Louisiana law and stating that plaintiff's allegation that "all defendants had actual or constructive knowledge that an unreasonably dangerous condition existed and/or that a hole in the floor of the premises existed" was insufficient). Plaintiff's conclusory allegations about 3M Cattle's knowledge are also refuted by *his allegations* in the Petition that Monsanto concealed and covered up, for many years and in various ways, information about the alleged dangers of glyphosate and Roundup®-branded herbicides. Although Monsanto disputes that these products are dangerous as Plaintiff alleges, the Petition is rife with allegations of Monsanto hiding such alleged dangers. *See* Petition ¶¶ 32, 71, 115, 122, 167. In light of Plaintiff's allegations regarding Monsanto's alleged cover-up, there is no basis to conclude that 3M Cattle: (a) had actual or constructive knowledge that such products posed a risk of cancer or other serious health

risks; or (b) breached any duty owed to Plaintiff.  *See* Notice of Removal ¶¶ 23 & 28.

### b. Negligence Under Louisiana Article 2315

There is also no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against 3M Cattle under Article 2315.  The Louisiana Supreme Court employs a duty-risk analysis for Article 2315, under which the plaintiff bears the burden of proving "five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injures (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element)."  *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006).  The "threshold question in any negligence inquiry is whether the defendant owed the plaintiff a duty."  *Sostand v. Rolling Frito Lay Sales*, Civil Action No. 6:16-cv-01268, 2017 WL 1485190, at *3 (W.D. La. Mar. 23, 2017) (citing *Hanks*, 944 So. 2d at 580).  Louisiana courts have recognized that "[n]o duty to protect against or control the actions of a third party exists unless a ***special relationship*** exists to give rise to such a duty."  *Carroll v. Allstate Ins.*, 244 So. 3d 772, 776 (La. App. 2d Cir. 2017) (emphasis added) (citation omitted).  The traditional "special relationships" are those that "exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restauranteur and patron; jailer and prisoner; and teacher and pupil."  *Id.* at 777 (citation omitted).  Because the Petition does not allege a special relationship between 3M Cattle and Plaintiff under Article 2315, the Petition fails to allege facts sufficient under Louisiana's duty-risk analysis.  *See Fox v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 576 So. 2d 978, 981 (La. 1991) ("Typically, in [negligence] cases such as this, where the alleged wrongful conduct of the defendant is a failure to act or 'nonfeasance,' courts have found it necessary for some definite relationship between the parties to exist[.]").

Article 2315 also requires that for a duty to exist, the defendant must have actual or constructive knowledge of the alleged defect.  *See Pool v. City of Shreveport*, 607 So. 2d 861, 864

- 8 -

(La. App. 2d Cir. 1992) (recognizing that "under negligence principles, it is *awareness* of the dangerous condition that engenders a corresponding duty to act" (emphasis in original)); *Naylor v. La. Dep't of Pub. Highways*, 423 So. 2d 674, 682 (La. App. 1st Cir. 1982) (same). The Petition fails to contain any non-conclusory factual allegations to establish that 3M Cattle had actual or constructive knowledge that glyphosate and/or Roundup®-branded herbicides are dangerous or defective. In fact, the Petition alleges that Monsanto concealed and covered up information about the supposed dangers.

**2.  Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against 3M Cattle.**

Monsanto has also presented evidence demonstrating that there is no possibility that Plaintiff can recover in his negligence claim against 3M Cattle. The gravamen of the negligence claim is that 3M Cattle allegedly did not do enough to protect Plaintiff from, and warn him about, the allegedly dangerous nature of Roundup®-branded products and/or glyphosate. These are duties, however, that would arise from 3M Cattle's knowledge about those issues. In support of its Notice of Removal, Monsanto provided a declaration from Courtney Mongrue (the operator, officer, and registered agent for 3M Cattle) who confirmed that "3M Cattle was not aware of any alleged concerns regarding the safety of glyphosate or Roundup®-branded herbicides until April 2019 when 3M Cattle was served with Mr. Trosclair's lawsuit against 3M Cattle and other defendants." Decl. of Courtney Mongrue ¶¶ 3 & 8, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-8 (E.D. La. May 24, 2019) ("Courtney Mongrue Declaration"). In support of this Opposition, Monsanto has provided a declaration from Wade Mongrue (also an operator, officer, and registered agent for 3M Cattle) who confirmed the same regarding 3M Cattle's lack of knowledge suit. *See* Decl. of Wade Mongrue ¶¶ 2 & 9, Oct. 28, 2019 (attached as Exhibit 3, hereafter referred to as the "Wade Mongrue Declaration").

Federal courts in Louisiana have repeatedly held that such uncontroverted statements regarding a defendant's lack of knowledge are critical in establishing fraudulent joinder. *See, e.g.*, *Janke v. Babcock Co., Inc.*, Civil Action No. 12-513, 2012 WL 1499292, at *4 (E.D. La. Apr. 27, 2012) (relying on affidavit from fraudulently joined defendant which "establishes that [defendant] had no knowledge of the defect in the ladder that injured [the plaintiff], and therefore there is no

possibility of recovery"); *Tantillo v. Cordis Corp.*, No. 04-2005(J)(1), 2004 WL 2212113, at *2 (E.D. La. Sept. 30, 2004) (finding that the hospital defendant had been fraudulently joined when a hospital representative provided an affidavit stating that "the hospital did not have any knowledge of any defective condition" of the product and that "the hospital did not receive any indication of any defects or problems with the [product].").

Plaintiff instead focuses on unrelated matters[3], none of which actually dispute 3M Cattle's lack of knowledge during Plaintiff's alleged exposure period (2012-2018, *see* Petition ¶ 22). *See* Pl.'s Remand Mem. at 3-4. For example, Plaintiff's reliance on two photographs (which he allegedly took in mid-February 2019 on 3M Cattle's premises) does nothing to support his negligence claim against 3M Cattle. The first photograph is not even of a Roundup® container, but instead has a label referring to "potassium phosphate." The second photograph is of a Ranger® Pro jug, which again, was allegedly taken on 3M Cattle's premises during mid-February 2019. The critical point is that neither photograph disputes that 3M Cattle lacked knowledge regarding the alleged dangerous properties (or defects) of glyphosate and/or Roundup®-branded products during Plaintiff's alleged exposure.

Plaintiff's reliance on a declaration from a non-party to this lawsuit (Arthur O. Kelm), also does nothing to support remand. While Mr. Kelm states that from "1995 until in or about 2004," an unidentified "previous employee of Monsanto Luling Plant" provided him with "concentrated Roundup® product" that Mr. Kelm understood "came from the production line before dilution occurred," Decl. of Arthur O. Kelm ¶¶ 3, 5-6, July 5, 2019, No. 3:19-cv-06396-VC, ECF No. 54-3 ("Kelm Declaration") (N.D. Cal. Oct. 17, 2019), this declaration does not reference 3M Cattle or Mr. Jacobs, and does not even cover Plaintiff's alleged exposure period. *Compare with* Petition ¶ 22 (alleging that "Mr. Trosclair was first exposed to glyphosate and/or Roundup® formulations in 2012, when he began working on a farm owned by 3M Cattle in St. Charles Parish."). This declaration also

---

[3] Wade and Courtney Mongrue categorically deny that 3M Cattle ever received glyphosate-containing products or Roundup®-branded herbicides from Randy Jacobs or any other individual affiliated with Monsanto or Monsanto's Luling Plant; they deny ever asking or directing Plaintiff to use glyphosate-containing products or Roundup®-branded products; and they also deny that 3M Cattle ever provided Plaintiff with any glyphosate-containing herbicides or Roundup®-branded products. *See* Courtney Mongrue Decl. ¶¶ 4-6; Wade Mongrue Decl. ¶¶ 4-6.

1  does not dispute 3M Cattle's lack of knowledge regarding the alleged dangerous properties of
2  glyphosate and/or Roundup®-branded products during Plaintiff's alleged exposure period.  In sum,
3  Plaintiff has not provided (and indeed cannot provide) any evidence to dispute this dispositive fact;
4  as such, there is no possibility that Plaintiff can prevail in his negligence claim against 3M Cattle.

### D. Plaintiff Improperly Joined Randy Jacobs Because There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover From Him.

Plaintiff asserts a negligence cause of action against Mr. Jacobs (who worked at the Luling plant as a Monsanto employee), alleging that he supplied unlabeled or improperly labeled glyphosate and/or Roundup®-branded herbicides in "repurposed containers" to Plaintiff and/or 3M Cattle that Mr. Jacobs allegedly removed from the Luling plant. *See* Petition ¶¶ 130, 132, 189, 191.  Plaintiff also alleges that Mr. Jacobs "[a]s an employee of [the] Luling Plant . . . had or should have had an elevated appreciation of the dangerous nature of chemicals in general, and glyphosate and/or Roundup formulations particularly.  As such, Mr. Jacobs had a duty to act with reasonable care in the distribution of the products manufactured by his employer." *Id*. ¶ 190.  Although the Petition does not specify which negligence standard Plaintiff contends applies to Mr. Jacobs, there is no possibility that he can prevail under either: (1) the *Canter* negligence standard; or (2) Louisiana Article 2315.

### 1. There Is No Basis For The Court To Predict That Plaintiff Might Be Able To Recover In His Negligence Claim Against Randy Jacobs Based Upon The Allegations In The Petition.

#### a. Negligence Under The *Canter* Standard

Under *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973), an employee may be held personally liable for injuries to third parties under certain limited circumstances.  *See Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005).  To hold an employee personally liable, a plaintiff must prove: "(1) 'that the principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought,' (2) that the 'duty [was] delegated by the principal or employer to the defendant,' (3) that the 'defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault' by failing 'to discharge the obligation with the degree of care required by ordinary prudence under the same or

- 11 -
MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

1  similar circumstances . . . ." *Gros*, 2012 WL 5906724, at \*7 (quoting *Canter*, 283 So. 2d at 721).  To
2  hold an "employee personally liable, the agent or employee's *principal* or *employer* must have owed
3  the Plaintiff a duty and delegated that duty to the employee." *Id.,* at \*7 (emphasis in original).

4        The Petition fails to allege any facts regarding Mr. Jacobs' job responsibilities; his position at
5  the Luling facility; or the basis for his alleged knowledge of undisclosed risks and hazards of
6  Roundup®-branded herbicides or glyphosate. *See* Petition ¶¶ 30 & 188. The Petition also does not
7  allege facts indicating that Monsanto specifically delegated to Mr. Jacobs, as a job duty, the
8  distribution of Roundup®-branded herbicides. Instead, Plaintiff asks this Court to infer that a duty
9  and knowledge existed based solely on Mr. Jacobs' employment at the Luling facility, and Plaintiff's
10  allegations that Mr. Jacobs provided him with Roundup® products.

11        Federal courts in Louisiana have found similar allegations were insufficient under *Canter*.
12  For example, in *Clark v. CST Services, LLC*, the plaintiff filed a personal injury lawsuit after she
13  allegedly tripped and fell due to a "defective mat/rug" at a convenience store. Civil Action No. 16-
14  10421, 2016 WL 6563437, at \*1 (E.D. La. Nov. 4, 2016). The plaintiff alleged that the store manager
15  "was aware of the dangerous condition, or should have been aware of the dangerous condition, and
16  breached a duty to discover, remedy, or warn Plaintiff of such danger, and is therefore personally
17  liable to Plaintiff for the damages she sustained." *Id.*, at \*2. After removal, the court granted a Rule
18  12(b)(6) motion to dismiss, holding that the allegations against the manager were insufficient to
19  support personal lability under *Canter* as the complaint did not offer any factual support indicating
20  that the manager owed a duty of care to the plaintiff under *Canter* or that the employer "ever delegated
21  the duties which it owed to third party patrons as a merchant under Louisiana law[.]" *Id.*, at \*3. The
22  court also recognized that the plaintiff's "allegations that [the store manager] 'knew or in the exercise
23  of reasonable care, should have known of' the allegedly dangerous condition on the premises ***is a***
24  ***conclusory allegation that the Court is not required to accept, and it does not amount to an***
25  ***allegation that [the store manager] personally knew of the allegedly dangerous mat/rug***." *Id*.
26  (emphasis added (citing *Giles,* 2016 WL 2825778, at \*4)). *See also Anderson v. Ga. Gulf Lake*
27  *Charles, LLC*, 342 F. App'x 911 (5th Cir. 2009) (denying remand motion based in part on inadequate
28

allegations that employees breached a duty where fraudulently joined defendant lacked personal knowledge as to the alleged defect); *Robinson v. Wal-Mart Stores, Inc.*, Civil Action No. 15-6871, 2016 WL 1572078, at *1 (E.D. La. Apr. 19, 2016) (denying remand motion and holding that store manager was improperly joined because the plaintiff failed to allege that the manager owed a personal, independent duty to store patrons, delegated to him by his employer). The Petition's allegations as to Mr. Jacobs are similarly insufficient.

### b. Negligence Under Louisiana Article 2315

There is also no possibility that Plaintiff can recover in a negligence claim against Mr. Jacobs under Article 2315, as the Petition does not allege facts sufficient to establish that Mr. Jacobs owed Plaintiff a recognized duty of care under Louisiana law. Instead, the Petition is replete with allegations that Monsanto engaged in an alleged pervasive, decades-long cover-up that concealed the dangers and risks posed by glyphosate and Roundup®-branded herbicides. Given those allegations, there is no basis to conclude that Mr. Jacobs knew or should have known that these products allegedly created a risk of cancer or other serious adverse effects. Moreover, Plaintiff's allegation that "Mr. Jacobs had or should have had an elevated appreciation of the dangerous nature of chemicals in general, and glyphosate and/or Roundup® formulations particularly" is a conclusory allegation that this Court should not accept. *See Gros*, 2012 WL 5906724, at *8 (denying remand motion and stating that plaintiff's allegation that employee "knew of the allegedly defective condition" was a "conclusory allegation that the court is not required to accept").

### 2. Monsanto Has Presented Evidence Showing There Is No Possibility That Plaintiff Can Recover In His Negligence Claim Against Mr. Jacobs.

Although it is unnecessary to pierce the pleadings, Monsanto has presented evidence showing there is no possibility that Plaintiff can recover in his negligence claim against Mr. Jacobs. The Notice of Removal is supported by a declaration from Mr. Jacobs which states that during his employment with Monsanto, he "never marketed, promoted, advertised, or labeled glyphosate or Roundup®-branded herbicides"; as part of his employment with Monsanto, he was "never responsible for providing and never provided any warnings about glyphosate or Roundup®-branded herbicides"; he

- 13 -
MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02741-VC & 3:19-cv-06396-VC

had "had no role or involvement in deciding what warnings or other information were included on Monsanto's labeling for Roundup®-banded herbicides"; and he has "never thought or believed that glyphosate or Roundup®-branded herbicides are defective products or that they create any risk of cancer or other serious injuries." Decl. of Randy Jacobs ¶¶ 4-5, May 23, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 1-7 (E.D. La. May 24, 2019) ("First Jacobs Declaration").  During his entire period of Monsanto employment, Mr. Jacobs "was never assigned or delegated, as a job duty, the distribution of Roundup®-branded products or glyphosate products," and he "was never assigned or delegated, as a job duty, the responsibility for dealing with or interacting with purchasers or users of Roundup®-branded products or glyphosate products." Decl. of Randy Jacobs ¶ 5, June 10, 2019, No. 2:19-cv-10689-GGG-MBN, ECF No. 19-3 (E.D. La. June 11, 2019) ("Second Jacobs Declaration").

The evidence presented by Monsanto demonstrates there is no basis for predicting that Plaintiff might be able to recover against Mr. Jacobs under a *Canter* theory. Plaintiff has not presented any evidence to establish that Monsanto ever specifically delegated to Mr. Jacobs, as a job duty, the distribution of Roundup®-branded herbicides. Federal courts in Louisiana have rejected *Canter* liability under similar circumstances. *See Guillory*, 434 F.3d 303 (affirming removal and dismissal of non-diverse defendants based on uncontroverted testimony that they were not responsible for the safety mechanisms related to the alleged failure of the waste treatment facility); *Freeman v. Witco, Corp.*, 984 F. Supp. 443, 450 (E.D. La. 1997) (denying motion to remand and holding that water treatment facility employees were improperly joined based on uncontroverted evidence submitted by improperly joined defendants and plaintiff's bare allegations that defendants were liable "by virtue of [their] position with [defendant]").

The evidence presented by Monsanto also demonstrates there is no basis for predicting that Plaintiff might be able to recover against Mr. Jacobs under Article 2315. To establish that Mr. Jacobs owed a personal duty to Plaintiff that existed outside Mr. Jacobs' employment, Plaintiff must show that Mr. Jacobs was personally responsible for creating the dangerous condition and had personal knowledge of it, but failed to remedy it. *See Haynes v. Healthcare Servs. Grp., Inc.*, Civil Action No. 13-649-JJB-RLB, 2014 WL 2769080, at *3 (M.D. La. May 30, 2014). Mr. Jacobs has submitted a

sworn statement denying any knowledge about any alleged defects or risks of cancer or other serious injuries involving glyphosate or Roundup®-branded herbicides, while also stating that he "had no role or involvement in deciding what warnings or other information were included on Monsanto's labeling for Roundup®-branded herbicides." First Jacobs Decl. ¶ 5. Plaintiff has no evidence to the contrary. As such, there is no basis for the Court to predict that Plaintiff might be able to recover in his negligence claim against Mr. Jacobs under Article 2315 as there was no duty (or corresponding knowledge) to warn Plaintiff about the alleged defects of the products at issue.[4]

## CONCLUSION

For the foregoing reasons, Monsanto requests that the Court deny Plaintiff's Motion to Remand.

DATED: October 31, 2019                                  Respectfully submitted,

/s/ Eric G. Lasker

| Brian L. Stekloff (*pro hac vice*) | Eric G. Lasker (*pro hac vice*) |
| (bstekloff@wilkinsonwalsh.com) | (elasker@hollingsworthllp.com) |
| Rakesh Kilaru (*pro hac vice*) | Martin C. Calhoun (*pro hac vice*) |
| (rkilaru@wilkinsonwalsh.com) | (mcalhoun@hollingsworthllp.com) |
| WILKINSON WALSH + ESKOVITZ LLP | HOLLINGSWORTH LLP |
| 2001 M Street, N.W., 10th Floor | 1350 I Street, N.W. |
| Washington, DC 20036 | Washington, DC 20005 |
| Tel: 202-847-4030 | Tel: 202-898-5800 |
| Fax: 202-847-4005 | Fax: 202-682-1639 |

*Attorneys for Defendant MONSANTO COMPANY*

---

[4] To the extent Plaintiff claims in his declarations that he retrieved "Roundup herbicide" from Mr. Jacobs' garage, Mr. Jacobs expressly denies any awareness that Plaintiff has ever retrieved any type of herbicide from his garage, *see* Second Jacobs Decl. ¶ 2, or that Plaintiff has ever been at his home or on his property. *Id*. ¶ 3. Similarly, Wade Mongrue affirms that he does "not recall ever visiting the home or garage of Randy Jacobs" with Plaintiff. Wade Mongrue Decl. ¶ 4. Moreover, even assuming that Mr. Jacobs provided Roundup® herbicides to Plaintiff — which Mr. Jacobs expressly denies — there is still no basis to find that Mr. Jacobs had a legal duty to Plaintiff, or that Mr. Jacobs had any knowledge of the alleged defects of the products during Plaintiff's alleged exposure period.