Curtis G. Hoke (SBN 282465)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: choke@millerfirmllc.com

Steven J. Brady (SBN 116651)
**BRADY LAW GROUP**
1015 Irwin Street
San Rafael, California 94901
Tel: (415) 459-7300
Fax: (415) 459-7303
Email: SteveBrady@bradylawgroup.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No.: 2741 |
| | Case No.: 3:16-md-2741-VC |
| THIS DOCUMENT RELATES TO: | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO REMAND AND FOR ATTORNEY FEES AND COSTS** |
| *Victor Berliant, et al. v. Monsanto Company, et al.*, Case No.: 3:19-cv-07189-VC | |
| | **Date: December 12, 2019** |
| | **Time: 10:00 a.m.** |
| | **Courtroom: 4** |

MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT** ................................. 1\

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ............................. 1

**III.    ARGUMENT** ........................................................................................... 5

  **A.    Standard of Review** .......................................................................... 5

  **B.    There Is No Diversity Of Citizenship And This Case Should Be Remanded.** .......... 6

  **C.    Monsanto's Removal Is Improper Regardless Of Diversity Since Defendant D&D Venture/Chase Ace Hardware Was Properly Joined And Served At The Time Of Removal.** .................................................................................................. 6

  **D.    Monsanto Has Failed To Carry Its Heavy Burden Of Showing Fraudulent Joinder: That There Is No Possibility Of Recovery Against Local Defendant D&D Venture/Chase Ace Hardware** ............................................................... 7

**IV.    CONCLUSION** ....................................................................................... 12

1

## TABLE OF AUTHORITIES

**Cases**

*California ex rel. Lockyer v. Dynegy, Inc.* 375 F.3d 831 (9th Cir. 2004)....................................8

*City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63 (1941) ....................9

*Gaus v. Miles*, 980 F.2d 564 (9th Cir. 1992) ...............................................8

*Harris v. Bankers Life and Gas Co.*, 425 F.3d 689 (9th Cir. 2005)......................................8

*Hernandez v. Amcord, Inc.*, 215 Cal.App.4th 659 (2013) ...................................13

*Izell v. Union Carbide Corp.*, 231 Cal.App.4th 962 (2014) ..................................13

*Jones v. John Crane, Inc.*, 132 Cal.App.4th 990 (2005)..................................13

*Jurin v. Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 WL 4364901 (N.D. Cal. 2014)8

*Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416 (9th Cir. 1989) ...............................10, 12

*Lineaweaver v. Plant Insulation Co.*, 31 Cal.App.4th 1409 (1995) ...........................13

*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443 (9th Cir. 1992)..............................15

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) .................................8

*Nan Hanks & Associates, Inc. v. Original Footwear Company, Inc.*, 2018 WL 3155247 (E.D.

   Cal., June 26, 2018, No. 217CV00027TLNKJN) ..................................15

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998) .................................8

*Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953 (1997) ..................................12, 13

*Spencer v. U.S. Dist. Ct. for Northern  Dist. of Calif. (Altec Industries, Inc.)*, 393 F.3d 867 (9th

   Cir. 2004)..................................9

*Taylor v. Elliott Turbomachinery Co., Inc.*, 171 Cal.App.4th 564 (2009) ...................................9

**Statutes**

28 U.S.C. § 1332 ..................................................................................................3, 8, 9

28 U.S.C. § 1441(b)(2) .................................................................................................9

28 U.S.C. § 1447(c) ......................................................................................................8

Cal. Code Civ. Proc. § 36(a) ........................................................................................6

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Monsanto's removal in this case fails to satisfy the prerequisites for removal of an action based on diversity of citizenship under 28 U.S.C. § 1332 (2010) because Plaintiffs Victor and Linda Berliant (collectively referred to as "Plaintiffs") and Defendant D&D Venture Group, Inc. d/b/a Chase Ace Hardware Garden & Gift Emporium (hereinafter, "D&D Venture/Chase Ace Hardware") are all from California. Monsanto's improper removal attempts to obviate the diversity requirement by arguing that Defendant D&D Venture/Chase Ace Hardware was "fraudulently joined," and that therefore there is complete diversity between Plaintiffs and non-"fraudulently joined" defendants.

Because Monsanto cannot show that there is no possibility that Mr. Berliant can state a claim against D&D Venture/Chase Ace Hardware, it cannot establish fraudulent joinder. Accordingly, defendant D&D Venture/Chase Ace Hardware's California citizenship must be considered for diversity purposes, and this case should be remanded to the Alameda Superior Court for further proceedings in JCCP 4953 and prompt resolution of Mr. Berliant's pending Motion for Trial Preference.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 16, 2019, Plaintiffs Victor Berliant and Linda Berliant filed a  Complaint in the Superior Court of California, County of Marin, against Monsanto Company, Wilbur-Ellis Company, LLC, Wilbur-Ellis Nutrition, LLC (formerly Wilbur-Ellis Feed, LLC), and D&D Venture Group, Inc. d/b/a Chase Ace Hardware Garden & Gift Emporium.  Plaintiffs' Complaint alleged, among other things:

> Upon information and belief, Defendant D & D VENTURE GROUP, INC. d/b/a Chase Ace Hardware Garden & Gift Emporium (hereinafter, "D&D") promoted and retailed Roundup® and related Monsanto products during the relevant time period and supplied Plaintiff with the Roundup® products at its retail location

Chase Ace Hardware Garden & Gift Emporium that caused Plaintiffs harm. Exposure to the Roundup® products supplied by D&D to Plaintiff was a direct and proximate cause of the harms sustained by Plaintiff.  *See*, Complaint (Docket No. 1-1) at ¶ 9

Plaintiff VICTOR BERLIANT is a competent individual over the age of 18, resident and citizen of the State of California, County of Marin, who submits to the jurisdiction of this court and alleges venue in this Court is proper. As a result of Plaintiffs exposure to Roundup, which he purchased and used in the state of California from approximately 1989 to 2017, he suffered from severe physical, economic, and emotional injuries resulting from his use of Roundup, including but not limited to non-Hodgkin's lymphoma, diagnosed in 2016.  *Id*. at ¶14.

Defendant D&D is a California company with its headquarters and principal place of business in Marin County, California. At all times relevant to this complaint, D&D sold and distributed Monsanto products, including Roundup®, within the State of California. At all times relevant to this Complaint, D&D owned and operated Chase Ace Hardware Garden & Gift Emporium in Marin County, located at 1826 4th St, San Rafael, California 94901, which retailed Monsanto products, including Roundup. D&D, at its Chase Ace Hardware location, supplied Plaintiff with the Roundup@ products which caused Plaintiffs NHL. D&D never warned Plaintiff of the carcinogenic potential of Roundup®, and still retails Roundup today. *Id*. at ¶ 28.

Defendant D&D was at all relevant times involved in the retail and promotion of roundup® and the glyphosate-based formulations marketed and sold in California. Defendant D&D supplied Plaintiff with the Roundup® products which caused Plaintiff's harm.  *Id*. at ¶115.

Of note, Plaintiff alleged that his injuries and damages were caused ***or substantially contributed***

to by the conduct of D&D Venture/Chase Ace Hardware and Monsanto Company, *et al*.:

Plaintiff is an individual who suffered damages as a result of injuries resulting from Plaintiff's use and/or exposure to Roundup® and is authorized to bring an action for the causes of actions alleged herein including, but not limited to, injuries and damages sustained by Plaintiff resulting from Plaintiff's use of Roundup®. Said injuries and damages sustained by Plaintiff was caused ***or substantially contributed to*** by the wrongful conduct of Defendants and DOES 1 through 100, inclusive.  *Id*. at ¶ 19 (emphasis added).

The defects in Defendants' Roundup® products were ***substantial and contributing factors*** in causing Plaintiff's injuries, and, but for Defendants' misconduct and omissions, Plaintiff would not have sustained injuries.  *Id*. at 127.

Plaintiff properly served California defendant D & D Venture/Chase Ace Hardware by personal service on September 26, 2019 – over a month before Monsanto improperly removed this case.  On October 2, 2019, Plaintiffs' case was coordinated into JCCP 4953 (ROUNDUP PRODUCTS CASES; Alameda Sup. Ct.), the Honorable Winifred Smith presiding.  On October 10, 2019, Mr. Berliant filed his Motion for Trial Preference and presented ample evidence meeting the requirements for preference pursuant to California Code of Civil Procedure § 36(a): "A party to a civil action who is over 70 years of age may petition the court for a preference, which the court shall grant if the court makes both of the following findings: (1)  The party has a substantial interest in the action as a whole. (2)  The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation.  *See*, Cal. Code Civ. Proc. § 36(a).

In support of his Motion for Trial Preference, Plaintiff presented a Declaration from a board certified Hematologist, Internist, and Medical Oncologist, Ron D. Schiff, M.D., Ph.D. Dr. Schiff's Declaration stating as follows:

> Mr. Berliant is a 70-year-old male who was found to have abnormally elevated white blood cell and lymphocyte counts on **December 2, 2016**. [Citation omitted]. His physicians have diagnosed him with a Stage IV T-cell non-Hodgkin lymphoma with skin, peripheral blood, lymph node, and bone marrow involvement. [Citation omitted]. Further testing led his physicians to consider a differential diagnosis including mycosis fungoides/Sezary syndrome (both mycosis fungoides and Sezary syndrome are types of cutaneous T-cell lymphoma), T-Cell prolymphocytic leukemia, and peripheral T-cell lymphoma not otherwise specified (PTCL-NOS).

*See*, Hoke Decl., **Exhibit A** (Declaration of Ron. D. Schiff in Support of Motion for Trial Preference) at ¶ 6 (emphasis added).  Following Mr. Berliant's abnormally elevated white blood cell and lymphocyte counts on December 2, 2016, Mr. Berliant was diagnosed with Stage IV T-cell non-Hodgkin's lymphoma and was eventually diagnosed with T-cell prolymphocytic leukemia ("T-PLL") in April, 2019.  *Id.*  Dr. Schiff's Declaration explained that Mr. Berliant was treated with intravenous infusions of  a targeted medication called Poteligeo, causing him to

experience severe fatigue, nausea, a high fever over 101 degrees, and severe heartburn.  Mr. Berliant's physicians saw no benefit from his Poteligeo treatment, prompting them to move towards more aggressive and higher-risk therapies.  *Id*. at ¶¶ 6-9.  Mr. Berliant was then scheduled to receive three (3) infusions of Romidepsin chemotherapy; if that did not work, he would have to pursue even riskier and aggressive treatments, such as Campath (a medication generally only recommended if other treatments have not worked) and a stem cell transplant due to his high risk of disease progression or relapse.  *Id*.  Dr. Schiff opined that "Mr. Berliant's medical condition is such that a preferential trial setting is necessary to prevent prejudicing his interest in this case and ensure that he is able to meaningfully participate in trial."  *Id*. at ¶11.

The hearing for Mr. Berliant's Motion for Trial Preference was set for November 14, 2019 at 9:00 a.m. in JCCP 4953 (Alameda Sup. Ct.) before the Honorable Winifred Smith.  On October 29, 2019, Mr. Berliant filed a Supplemental Declaration stating that, on October 21, 2019, his oncologist informed him that his Romidepsin chemotherapy treatment was not working.  *See*, Hoke Decl., **Exhibit B** (Supplemental Declaration of Victor Berliant in Support of His Motion for Trial Preference) at ¶ 4.  He would therefore be starting a riskier treatment, Campath, in November, 2019 and then begin a stem cell transplant.  *Id*.  If Mr. Berliant is unable to tolerate Campath, he will have no choice but to participate in clinical trials.  *Id*.  On October 30, 2019, Mr. Berliant's counsel served updated medical records on Monsanto's counsel and thereafter served a Supplemental Declaration with medical records supporting Mr. Berliant's contention that his Romidepsin treatment had failed and he would be starting Campath/a stem cell transplant and may have no choice but to participate in clinical trials.  *See*, Hoke Decl., **Exhibit C** (Supplemental Declaration of Curtis G. Hoke).

On October 31, 2019, Monsanto improperly removed Plaintiffs' case to this Court in an apparent attempt to delay Mr. Berliant's pending Motion for Trial Preference and scuttle his day in court.  For the reasons discussed below, Plaintiffs respectfully request that their case be immediately remanded to the Alameda Superior Court so that his pending Motion for Trial Preference may be promptly adjudicated and that Plaintiffs be awarded attorney fees and costs.

## III.   ARGUMENT

### A. Standard of Review

Removal based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity of citizenship.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). In seeking removal of a case from a state court, a defendant bears the burden of proving that the case could rightfully have been filed in federal court.  *California ex rel. Lockyer v. Dynegy, Inc.* 375 F.3d 831, 838 (9th Cir. 2004). In applying 28 U.S.C. § 1447(c), Federal Courts have held that the removal statutes must be construed strongly against removal jurisdiction and in favor of remand.  *Harris v. Bankers Life and Gas Co.*, 425 F.3d 689, 698 (9th Cir. 2005).  Moreover, there is a presumption against removal, and doubts regarding the propriety of removing a case are resolved in favor of remand. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

The doctrine of "fraudulent joinder" is a term of art that applies when a defendant has "no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). If it is "obvious" that a plaintiff has no cause of action against a defendant, the citizenship of that defendant can be ignored when assessing diversity jurisdiction. *Morris*, 236 F.3d at 1067.  Fraudulent joinder exists only "if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not

possibly recover against the party whose joinder is questioned." *Jurin v. Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014).

California's products liability doctrine "provides generally that manufacturers, retailers, and others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a defective product." *Taylor v. Elliott Turbomachinery Co., Inc.*, 171 Cal.App.4th 564, 575 (2009). The basis for imposing strict products liability on a particular defendant is that "he has marketed or distributed a defective product." *Id.*

**B. There Is No Diversity Of Citizenship And This Case Should Be Remanded.**

28 U.S.C. § 1332 requires complete diversity; that is, all parties on one side of the controversy have to be from different states from all parties on the other side of the controversy. *See, e.g.*, *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941). Both Plaintiffs and defendant D&D Venture/Chase Ace Hardware are California Residents and D&D Venture/Chase Ace Hardware's citizenship cannot be ignored. This case therefore must be remanded to the California Superior Court, County of Alameda.

**C. Monsanto's Removal Is Improper Regardless Of Diversity Since Defendant D&D Venture/Chase Ace Hardware Was Properly Joined And Served At The Time Of Removal.**

Removal is not permitted where one of the defendants joined and served "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (2011).Section 1441(b)'s express prohibition of removal of in-state defendants applies even in cases where diversity exists. *See, e.g.*, *Spencer v. U.S. Dist. Ct. for Northern Dist. of Calif. (Altec Industries, Inc.)*, 393 F.3d 867, 870 (9th Cir. 2004) ("It is thus clear that the presence of a local defendant at the time removal is sought bars removal").

6
MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

Even if there were no California plaintiffs in this case, removal was improper because local defendant D&D Venture/Chase Ace Hardware was served prior to removal. That is, even if diversity existed, this case should be remanded because D&D Venture/Chase Ace Hardware was served on September 26, 2019 – over a month before Monsanto improperly removed this case.

### D. Monsanto Has Failed To Carry Its Heavy Burden Of Showing Fraudulent Joinder: That There Is No Possibility Of Recovery Against Local Defendant D&D Venture/Chase Ace Hardware

A party is fraudulently joined, abrogating diversity, only if "after all the disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). Not so here.

The linchpin of Monsanto's removal argument is its assertion that Plaintiffs "fraudulently joined" local defendant D&D Venture/Chase Ace Hardware because that defendant "first opened in June 2016" and the "earliest manifestation" of Mr. Berliant's disease occurred on July 9, 2015 when a single blood test showed that he had "lymphocytosis – i.e., an abnormally high percentage of white blood cells." *See*, Notice of Removal (Docket No. 1) at ¶ 32. In other words, Monsanto contends that, "Thus, whatever may have caused Mr. Berliant's cancer, it was not a product allegedly supplied to Mr. Berliant by D & D Venture/Chase Ace Hardware." *Id*. at ¶¶ 31-33.

Monsanto's reliance on two self-serving declarations from D&D Venture/Chase Ace Hardware's CEO and its own expert, Dr. Miller, to contradict clear factual allegations in Plaintiffs' Complaint establishing liability of D&D Venture/Chase Ace Hardware under California law fails for the reasons discussed below.

MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

First, Monsanto's contention that that the "earliest manifestation" of Mr. Berliant's disease is questionable at best and not fully supported by Mr. Berliant's medical records.  Indeed, although on 7/9/2015, Mr. Berliant's blood test showed that his percentage of lymphocytes was high (47% of his white blood cells), his white blood cell count was still within normal range (WBC count: 9.5 on 7/9/2015) and even *dropped a month later* on 10/14/2015 (WBC count: 9.4). It was not until 12/2/2016 – nearly six months after D&D Venture/Chase Ace Hardware opened – that Mr. Berliant's white blood cell count was elevated to 14.6.  *See*, Miller Decl., Exhibit C at 1 (highlights in original):

**LABS:**

| Component | 7/9/2015 | 10/14/2015 | 12/2/2016 | 12/7/2016 | 12/28/2016 |
|---|---|---|---|---|---|
| WBC | 9.5 | 9.4 | 14.6 (H) | 13.7 (H) | 13.8 (H) |
| RBC'S | 4.71 | 4.56 | 4.84 | 4.90 | 4.69 |
| HGB | 14.7 | 14.2 | 15.2 | 15.3 | 14.6 |
| HCT | 43.1 | 41.9 | 44.4 | 45.6 | 43.5 |
| MCV | 92 | 92 | 92 | 93 | 93 |
| RDW, RBC | 12.6 | 12.8 | 12.7 | 13.1 | 13.1 |
| PLT | 192 | 192 | 159 | 173 | 183 |

As Monsanto well knows, Dr. Schiff stated the same in his declaration in support of Mr. Berliant's Motion for Trial Preference: "Mr. Berliant is a 70-year-old male who was found to have abnormally elevated white blood cell and lymphocyte counts on **December 2, 2016**.  *See*, Hoke Decl., **Exhibit A**, Decl. of Ron Schiff, M.D., Ph.D. at ¶6 (emphasis added).  Further, in the 3,000+ pages of Mr. Berliant's medical records, Monsanto was unable to point to a single medical record where *any* of Mr. Berliant's treating physicians opined that his disease "first manifested" in 2015.  In fact, Plaintiffs' counsel spent hours combing through Mr. Berliant's voluminous medical records, and the first date where any physician opined that Mr. Berliant had lymphocytosis was either December, 2016 or January, 2017.  *See*, Decl. of Curtis Hoke, **Exhibit D** (medical records showing Mr. Berliant's diagnosis of lymphocytosis in 2016/2017).

Monsanto's position is further undermined by the study its own expert, Dr. Miller, relies on: "At diagnosis, nearly all patients with T-PLL present with generalized disease as per **highly elevated white blood cell count**, splenomegaly, hepatomegaly, and generalized lymphadenopathy.  So far, there are no reported observations or studies indicating that the number of areas of lymphoid tissues that are affected or whether hepatosplenomegaly might correlate with disease state or course or outcome."  *See*, Decl. of Dr. Miller, Exhibit D (Staber, Phillip B., et al., *Consensus Criteria for diagnosis, staging, and treatment response assessment of T-cell prolymphocytic leukemia*, 134(14) Blood 1132) at 1141 (emphasis added).  Indeed, casting even more doubt on Monsanto's self-serving opinions, Monsanto has failed to show that Mr. Berliant had a highly elevated blood count, splenomegaly, hepatomegaly, nor generalized lymphadenopathy at the time Monsanto claims Mr. Berliant's disease first "manifested" in 2015.

Second, Monsanto's questionable *opinion* that Mr. Berliant's disease first "manifested" in 2015 is ultimately a disputed question of fact for the jury to decide, thereby precluding a finding that D&D Venture/Chase Ace Hardware was "fraudulently joined" and requiring remand.  *See*, *Kruso*, 872 F.2d at 1426.  *See, also*, *Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953, 982 (1997) as modified on denial of reh'g (Oct. 22, 1997) (the standard instructions on substantial factor and concurrent causation remain correct in this context and should be given to the jury to decide). Further, given that Mr. Berliant alleges that he used Roundup – some of which he purchased from D&D Venture/Chase Ace Hardware – until 2017 (*see*, Complaint at ¶14), Monsanto has failed to foreclose the possibility that Mr. Berliant's exposure to Roundup purchased from D&D Venture/Chase Ace Hardware after it opened in June, 2016 substantially contributed to his NHL diagnosis in December, 2016 and his eventual T-PLL diagnosis in April, 2019.  And, in any event, the extremely complex factual inquiry into the precise point of a particular cancer's initial

MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

malignant cellular growth is of no moment: a plaintiff need ***not*** prove that a particular defendant's product was "the ones or among the ones, that actually began the process of malignant cellular growth. Instead, the plaintiff may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it was a substantial factor contributing to the plaintiff's or decedent's risk of developing cancer." *Rutherford*, 16 Cal.4th at 982. *See, also,* *Izell v. Union Carbide Corp.*, 231 Cal.App.4th 962, 975–976 (2014):

> As our Supreme Court explained in *Rutherford*, "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." […] Thus, "[a] plaintiff who suffers from an asbestos-related cancer and has proven exposure to inhalable asbestos fibers from several products will not, generally speaking, face insuperable difficulties in convincing a jury that a particular one of these product exposures, or several of them, were substantial factors in creating the risk of asbestos disease or latent injury." (*Ibid.*) Under *Rutherford*, a plaintiff is free to "establish that his particular asbestos disease is cumulative in nature, with many separate exposures each having constituted a 'substantial factor' [citation] that contributed to his risk of injury," and "a defendant cannot escape liability simply because it cannot be determined with medical exactitude the precise contribution that exposure to fibers from defendant's products made to plaintiff's ultimate contraction of asbestos-related disease...."

*See, also, Jones v. John Crane, Inc.*, 132 Cal.App.4th 990, 999 (2005) ("The testimony of the experts provided substantial evidence that [plaintiff's] lung cancer was caused by cumulative exposure, with each of many separate exposures having constituted substantial factors contributing to his risk of injury."); *Hernandez v. Amcord, Inc.*, 215 Cal.App.4th 659, 673 (2013); *Lineaweaver v. Plant Insulation Co.*, 31 Cal.App.4th 1409, 1415 (1995) ("The substantial factor standard has gained favor as a clearer rule of causation and one which subsumes the "but for" test while reaching beyond it to address other situations, such as independent or concurrent causes").

Indeed, Monsanto has long known that studies have shown that exposure to Roundup/glyphosate *promotes* cancer growth.  *See, e.g.*, Decl. of Curtis G. Hoke, **Exhibit E** (George, Jasmin, et al., *Studies on glyphosate-induced carcinogenicity in mouse skin: a proteomic approach*, 73 Journal of Proteomics (2010) 951, 964) at 951: "Altogether, these results suggested that glyphosate has tumor promoting potential in skin carcinogenesis and its mechanism seems to be similar to TPA."  Further, as Monsanto well knows, both Dr. Portier and Dr. Sawyer recently opined that Roundup/glyphosate promotes cancer growth in *Pilliod v. Monsanto*.

Dr. Portier testified in *Pilliod v. Monsanto* as follows:

> Q: And it says 40 percent of the animals who had the initator and then Roundup applied for this period of the study had tumors.  A: That is correct.  Q: What is the significance of that?  What does that tell you?  A: That Roundup, in this formulation, promoted the tumors that were initiated by DMBA.

*See*, Decl. of Curtis Hoke, **Exhibit F** (*Pilliod v. Monsanto* Trans. April 2, 2019) at 1694:15-22.

Dr. Sawyer testified in *Pilliod v. Monsanto* as follows:

> And after several weeks of -- after that was applied to the skin, I think it was applied three times a week.  After a number of weeks, 40 percent of the animals presented with skin cancer, malignant papillomas.  And what it shows is that Roundup has a tremendous ability to promote malignancy from a carcinogen.  And the study was well in excess of 95 percent confidence interval.  So very significant finding, in terms of showing the powerful promotion effect of Roundup itself.

*See*, Decl. of Curtis Hoke, **Exhibit G** (*Pilliod v. Monsanto* Trans. April 11, 2019) at 3243:21 – 44:6.

Monsanto cannot feign ignorance on the above points.  It knows that none of Mr. Berliant's doctors opined that he had lymphocytosis until 2016/2017; it knows that Mr. Berliant's total white blood cell counts were not abnormally elevated until December 2, 2016; it knows that Mr. Berliant did not have documented evidence of a highly elevated white blood cell count, splenomegaly, hepatomegaly, nor generalized lymphadenopathy in 2015; and, it knows that

Roundup/glyphosate *promotes* cancer growth.  Indeed, faced with this lack of evidence, Monsanto had to hinge nearly its entire removal theory on a questionable opinion produced by one of its own experts.  That is not a proper basis of removal and is no excuse for improperly removing Mr. Berliant's case; rather, Monsanto simply wanted to delay a dying man's day in court by improperly removing his case to a jurisdiction where no preferential trial statute governs.  Mr. Berliant's case should therefore be remanded and Monsanto should be ordered to pay attorney fees and costs herein.  *See*, e.g., *Nan Hanks & Associates, Inc. v. Original Footwear Company, Inc.*, 2018 WL 3155247, at *5 (E.D. Cal., June 26, 2018, No. 217CV00027TLNKJN); *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992).  Courts must calculate awards of attorney fees using the lodestar method. *See, e.g.*, *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.")

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Remand and order that Monsanto pay Plaintiffs' attorney fees and costs as set forth in the accompanying declaration of Curtis G. Hoke.

Dated: November 4, 2019                    Respectfully submitted,

**THE MILLER FIRM, LLC**
**BRADY LAW GROUP**


/s/ Curtis G. Hoke
Curtis G. Hoke (SBN 282465)
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: choke@millerfirmllc.com

12
MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven J. Brady (SBN 116651)
**BRADY LAW GROUP**
1015 Irwin Street
San Rafael, California 94901
Tel: (415) 459-7300
Fax: (415) 459-7303
Email: SteveBrady@bradylawgroup.com

*Attorneys for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC

**CERTIFICATE OF SERVICE**

     I, Curtis Hoke, hereby certify that, on November 4, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ Curtis G. Hoke
Curtis G. Hoke

MEMORANDUM OF POINTS AND AUTHORITIES
3:19-CV-07189-VC