1  **HOLLINGSWORTH LLP**
   Joe G. Hollingsworth (*pro hac vice*)
2  Eric G. Lasker (*pro hac vice*)
   1350 I Street, N.W.
3  Washington, DC  20005
   Telephone:   (202) 898-5800
4  Facsimile:    (202) 682-1639
   Email:        jhollingsworth@hollingsworthllp.com
5               elasker@hollingsworthllp.com

6  *Attorneys for Defendant*
   *MONSANTO COMPANY*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 | IN RE: ROUNDUP PRODUCTS | MDL No. 2741 |
   | LIABILITY LITIGATION |  |
11 |  | Case No. 3:16-md-02741-VC |

12 This document relates to:

13 *Chandra Ruano v. Monsanto Co.*,
   Case No. 3:19-cv-05969-VC
14

15          <u>**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**</u>

16          Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto

17 Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying

18 all allegations contained in plaintiff's Complaint and Jury Demand ("the Complaint"), except as

19 set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to

20 Monsanto Company, a United States based company incorporated in Delaware, and not to other

21 Monsanto-affiliated companies.  Although a few paragraphs in the Complaint allege exposure or

22 use of Monsanto products by "Plaintiffs," Monsanto nevertheless responds to the allegations in

23 those paragraphs as if they refer to plaintiff Chandra Ruano.  Silence as to any allegations shall

24 constitute a denial.

25          1.     Monsanto admits the allegations in the first and second sentences of paragraph 1.

26 In response to the allegations in the third sentence of paragraph 1, Monsanto admits that certain

27 of its Roundup®-branded products contain POEA and adjuvants, and that the United States

28
                                        - 1 -

Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  In response to the allegations in the final sentence of paragraph 1, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 1 and therefore denies those allegations.

2.     In response to the allegations in paragraph 2, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 2.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 2 and therefore denies those allegations.

3.     In response to the allegations in paragraph 3, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops. Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 3.

4.     Monsanto admits the allegations in the first sentence of paragraph 4.  Monsanto denies the allegations in the second sentence of paragraph 4 to the extent they suggest that the

International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

5.      Monsanto admits the allegations in the first sentence of paragraph 5.  Monsanto denies the allegations in the second sentence of paragraph 5.

6.      In response to the allegations in paragraph 6, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 6.

7.      Monsanto denies the allegations in paragraph 7.

8.      In response to the allegations in paragraph 8, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 8 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

9.      The allegations in paragraph 9 set forth conclusions of law for which no response is required.

10.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 10 set forth conclusions of law for which no response is required.

11.      The allegations in paragraph 11 set forth conclusions of law for which no response is required.

12.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 12 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 12.

13.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies those allegations.

14.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 14.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March, 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 and therefore denies those allegations.

15.     In response to the allegations in paragraph 15, Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 15.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March, 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 and therefore denies those allegations.

16.     Monsanto admits the allegations in paragraph 16.

17.     In response to the allegations in paragraph 17, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 17.

18.     Monsanto admits the allegations in the first and second sentences of paragraph 18.  In response to the allegations in the third sentence of paragraph 18, Monsanto admits that certain of its Roundup®-branded products contain POEA and adjuvants, and that the United States

1  Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert.

2  Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded

3  herbicides do not pose an unreasonable risk to human health.  In response to the allegations in

4  the final sentence of paragraph 18, Monsanto admits that glyphosate was one of the world's most

5  widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of

6  glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a

7  belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of

8  paragraph 18 and therefore denies those allegations.

9       19.     In response to the allegations in paragraph 19, Monsanto admits that its

10  headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware.

11  Monsanto admits that it and affiliated companies have operations and offices in countries around

12  the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks

13  sufficient information regarding the business of other glyphosate producers to admit or deny the

14  allegation as written in the second sentence of paragraph 19.  Monsanto admits that it is the

15  leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the

16  Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto

17  lacks information or knowledge sufficient to form a belief as to the accuracy of the specific

18  numbers and statistics provided in the remaining sentences of paragraph 19 and therefore denies

19  those allegations.

20       20.     In response to the allegations in paragraph 20, Monsanto admits that its

21  glyphosate products are registered in at least 130 countries and approved for use on over 100

22  different crops.  Monsanto admits that certain studies have reported that glyphosate is found at *de*

23  *minimis* levels significantly below regulatory safety limits in various locations and media.

24  Monsanto denies the remaining allegations in paragraph 20.

25       21.     Monsanto admits the allegations in the first sentence of paragraph 21.  Monsanto

26  denies the allegations in the second sentence of paragraph 21 to the extent they suggest that the

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

22.     Monsanto admits the allegations in the first sentence of paragraph 22.  Monsanto denies the allegations in the second sentence of paragraph 22.

23.     In response to the allegations in paragraph 23, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 23.

24.     Monsanto denies the allegations in paragraph 24.

25.     In response to the allegations in paragraph 25, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 25 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

26.     In response to the allegations in paragraph 26, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 26 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and therefore denies those allegations.

27.     Monsanto admits the allegations in the first sentence of paragraph 27.  Monsanto denies the allegations in the second sentence of paragraph 27 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the third sentence of paragraph 27 to the extent that they

suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

28. In response to the allegations in paragraph 28, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 28.

29. Monsanto admits the allegations in the first two sentences of paragraph 29 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto otherwise denies the remaining allegations in paragraph 29.

30. In response to the allegations in paragraph 30, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets." Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 30.

31. The allegations in paragraph 31 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 31.

32. In response to the allegations in paragraph 32, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 32 set forth conclusions of law for which no response is required.

33. The allegations in paragraph 33 set forth conclusions of law for which no response is required.

34.     Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution and are registered by the State of California for sale and distribution.

35.     In response to the allegations in paragraph 35, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 35 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 35 set forth conclusions of law for which no answer is required.

36.     Monsanto denies the allegations in paragraph 36 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 36 regarding such pesticide products generally and therefore denies those allegations.  The remaining allegations in paragraph 36 set forth conclusions of law for which no response is required.

37.     In response to the allegations in paragraph 37, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

1   ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

2   to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP

3   issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

4   the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

5   humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth

6   of the remaining allegations in paragraph 37 and therefore denies those allegations.

7          38.     In response to the allegations in paragraph 38, Monsanto admits that an EPA

8   review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

9   changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

10  evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

11  that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect

12  to the designation of an agent as Group E, but states that EPA repeatedly has concluded that

13  glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two

14  EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of

15  safety include:

16  •   "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that
        shows evidence of non-carcinogenicity for humans – based on the lack of
17      convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate:
        Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993),
18      http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

19  •   "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed.
        Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).
20

21  •   "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69
        Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).
22

23  •   "There is [an] extensive database available on glyphosate, which indicate[s] that
        glyphosate is not mutagenic, not a carcinogen, and not a developmental or

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
    U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the*
25  *Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
    Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.
26  [3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of*
    *Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/
27  document?D=EPA-HQ-OPP-2016-0385-0528.

28

reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 39 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

40.     In response to the allegations in paragraph 40, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

41.     Monsanto denies the allegations in paragraph 41 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

one of several pesticide manufacturers who had used IBT test results.  The audit found some

toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

based upon any invalid IBT studies.  To the extent that the allegations in paragraph 41 are

intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

denies those allegations.

42.     In response to the allegations in paragraph 42, Monsanto admits that three IBT

employees were convicted of the charge of fraud, but Monsanto denies that any of the

individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

herbicides.

43.     In response to the allegations in paragraph 43, Monsanto admits that it – along

with numerous other private companies – hired Craven Laboratories as an independent

laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that

it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies

conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

paragraph 43 are intended to suggest that Monsanto was anything other than a victim of this

fraud, such allegations are denied.

44.     Monsanto denies the allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto admits that Roundup®-

branded products are highly valued by its customers because of their efficacy and safety.

Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

remaining allegations in paragraph 45 are vague and conclusory and comprise attorney

characterizations and are accordingly denied.

46.     In response to the allegations in paragraph 46, Monsanto admits that following the

development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

are now widely used by farmers in the United States and worldwide.  Monsanto lacks

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

1   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

2   cited in paragraph 46 and accordingly denies those allegations.  The remaining allegations in

3   paragraph 46 are vague and conclusory and comprise attorney characterizations and are

4   accordingly denied.

5       47.     In response to the allegations in paragraph 47, Monsanto admits that glyphosate is

6   one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

7   is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

8   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

9   cited in paragraph 47 and accordingly denies the same.  The remaining allegations in paragraph

10  47 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

11      48.     In response to the allegations in paragraph 48, Monsanto admits that the New

12  York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

13  advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

14  admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

15  General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

16  the subparts purport to quote a document, the document speaks for itself and thus does not

17  require any further answer.  The remaining allegations in paragraph 48 are vague and conclusory

18  and comprise attorney characterizations and are accordingly denied.

19      49.     In response to the allegations in paragraph 49, Monsanto admits it entered into an

20  assurance of discontinuance with the New York Attorney General.  The assurance speaks for

21  itself and thus does not require any further answer.  The remaining allegations in paragraph 49

22  are vague and conclusory and comprise attorney characterizations and are accordingly denied.

23      50.     Monsanto denies the allegations in paragraph 50.

24      51.     In response to the allegations in paragraph 51, Monsanto admits that the French

25  court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

26  that it "left the soil clean," but denies the allegations in paragraph 51 to the extent that they

27

28

suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 51.

52.     In response to the allegations in paragraph 52, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 52, which are not limited as of any specified date, and accordingly denies the same.

53.     In response to the allegations in paragraph 53, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 53.

54.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 and therefore denies those allegations.

55.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 and therefore denies those allegations.

56.     Monsanto denies the allegations in paragraph 56 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

57.     In response to the allegations in paragraph 57, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one-week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto

1    denies that the working group or anyone at IARC conducted a one-year review of the scientific

2    evidence related to glyphosate or that the working group's findings reflected a comprehensive

3    review of the latest available scientific evidence.  Monsanto also denies that the working group

4    considered all information available in the scientific literature and all data from government

5    reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 57.

6         58.    In response to the allegations in paragraph 58, Monsanto denies that the IARC

7    working group considered all of the data in the numerous studies that have been conducted

8    looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

9    that it reliably considered the studies that it purports to have reviewed, which frequently reach

10   conclusions directly contrary to those espoused by the IARC working group.  To the extent the

11   allegations purport to characterize statements made in the IARC monograph for glyphosate, the

12   statements in that document speak for themselves, but Monsanto lacks information or knowledge

13   sufficient to form a belief as to the accuracy of the source of said information and accordingly

14   denies the allegations.

15        59.    The allegations in paragraph 59 are vague and conclusory.  To the extent they

16   purport to characterize statements made in the IARC monograph for glyphosate, the statements

17   in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

18   to form a belief as to the accuracy of the source of said information and accordingly denies the

19   allegations.

20        60.    In response to the allegations in paragraph 60, to the extent the allegations purport

21   to characterize statements made in the IARC monograph for glyphosate, the statements in that

22   document speak for themselves, but to the extent that this paragraph means that more than *de

23   minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 60.

24        61.    In response to the allegations in paragraph 61, Monsanto admits that the IARC

25   working group identified a number of case control studies of populations with exposures to

26   glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

27   health concern from such exposures.

28

- 14 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

62.     Monsanto denies the allegations in paragraph 62.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

63.     In response to the allegations in paragraph 63, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

64.     In response to the allegations in paragraph 64, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 64.

65.     In response to the allegations in paragraph 65, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 66.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

70.     In response to the allegations in paragraph 70, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d. 10, 24 (D.D.C. 2013).

71.     Monsanto states that the term "toxic" as used in paragraph 71 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 71.

72.     In response to the allegations in paragraph 72, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 72.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

73.     In response to the allegations in the first sentence of paragraph 73 Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent that the first sentence of paragraph 73 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 73. In response to the remaining allegations in paragraph 73, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 74 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 74.

75.     In response to the allegations in paragraph 75, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 75 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 75.

76.     In response to the allegations in paragraph 76, Monsanto states that the terms "at all times" and these studies are vague and ambiguous, and therefore Monsanto denies the allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto denies that glyphosate or Roundup®-branded products cause cancer.  The allegations in paragraph 77 take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations – and are accordingly denied.

78.     Monsanto denies the allegations in paragraph 78.

79.     Monsanto denies the allegations in paragraph 79.

80.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 80 and therefore denies those

- 17 -

allegations.  In response to the third sentence of paragraph 80 and the quotation therein,

Monsanto states that the cited document speaks for itself.  Monsanto further states that: (a) in

September 2016, EPA's OPP issued a 227-page evaluation of glyphosate's carcinogenic

potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be

carcinogenic to humans' at doses relevant to human health risk assessment"[4]; and (b) at the same

time, EPA posted an October 2015 final report by its standing CARC, in which that committee

endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to

Humans."[5]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed,

lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion

that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[6]

The remaining allegations in paragraph 80 comprise attorney characterizations and are

accordingly denied.

81.     In response to the allegations in paragraph 81, Monsanto states that the cited

report speaks for itself and does not require a response.  The remaining allegations in paragraph

81 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are

accordingly denied.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited

report speaks for itself and does not require a response.  The remaining allegations in paragraph

82 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are

accordingly denied.

---

[4] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[5] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[6] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

83.     In response to the allegations in the first sentence of paragraph 83, Monsanto admits that EPA held a FIFRA Scientific Advisory Panel ("SAP") from December 13-16, 2016. In response to the allegations in the third sentence of paragraph 83, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 83 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

84.     In response to the allegations in paragraph 84, Monsanto denies that the OPP Report is a "draft assessment."  The remaining allegations in paragraph 84 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

85.     In response to the allegations in paragraph 85, Monsanto admits that the final SAP meeting minutes and report were released and states that the cited documents speak for themselves and thus do not require any further response.  The remaining allegations in paragraph 85 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

86.     In response to the allegations in paragraph 86, Monsanto admits that certain documents were recently unsealed in the federal multidistrict litigation proceedings involving Roundup®-branded products.  Monsanto denies the remaining allegations in paragraph 86.

87.     Monsanto denies the allegations in paragraph 87.

88.     The allegations in paragraph 88 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

89.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 89 regarding Jess Rowland and therefore denies those allegations.  The allegations in paragraph 89 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

90.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 90 regarding Jess Rowland and the Agency for Toxic

1   Substances and Diseases and therefore denies those allegations.  The allegations in paragraph 90

2   take statements in the cited document out of context, are vague, incomplete, and conclusory,

3   and/or comprise attorney characterizations – and are accordingly denied.

4          91.    The allegations in paragraph 91 take statements in the cited documents out of

5   context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and

6   are accordingly denied.

7          92.    In response to the allegations in paragraph 92, Monsanto admits that the IARC

8   working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing

9   discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-

10  based herbicides, including the Netherlands, but denies that there is any scientific basis for the

11  concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations

12  in paragraph 92.

13         93.    In response to the allegations in paragraph 93, Monsanto admits that the IARC

14  working group classification led an individual government attorney in Brazil to write a letter to

15  the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the

16  remaining allegations in paragraph 93.

17         94.    Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-

18  professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited

19  as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in

20  paragraph 94.

21         95.    In response to the allegations in paragraph 95, Monsanto admits that some

22  employees of Bermuda's government announced an intention to suspend the importation of

23  glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the

24  truth of the allegations about whether this suspension took effect and accordingly denies the

25  same.  Monsanto denies the remaining allegations in paragraph 95.

26         96.    In response to the allegations in paragraph 96, Monsanto admits that the IARC

27  monograph appears to be the alleged basis for the Sri Lankan government's actions, including

28

1   the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

2   allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations

3   regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 96.

4         97.    In response to the allegations in paragraph 97, Monsanto denies the alleged basis

5   for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

6   explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

7   ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

8   concerns.  As of April 2016, the government of Colombia has resumed manual application of

9   glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs'

10   expert testimony purporting to link these same aerial eradication operations with cancer as

11   scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d. 10 (D.D.C. 2013).  Monsanto

12   denies the remaining allegations in paragraph 97.

13         98.    In response to the allegations in paragraph 98, Monsanto admits that the

14   California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was

15   required to add glyphosate to California's Proposition 65 list of chemicals in a process that

16   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

17   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

18   was not based upon any independent scientific analysis of glyphosate but instead was in response

19   to a provision of a California ballot proposition triggering such action based solely upon the

20   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

21   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

22   pose a cancer hazard to humans."[7]  Monsanto contends that OEHHA's decision that it was

23   required to list glyphosate violates the United States Constitution and the California Constitution.

24   On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

25   warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 98 set

26

27   [7] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

28

forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 98.

99.     The allegations in paragraph 99 set forth conclusions of law for which no response is required.

100.     The allegations in paragraph 100 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

101.     In response to the allegations in paragraph 101, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

102.     In response to the allegations in paragraph 102, Monsanto admits that plaintiff accurately quotes from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[8]  The remaining allegations in paragraph 102 comprise attorney characterizations and are accordingly denied.

103.     In response to the allegations in paragraph 103, Monsanto admits that the Superior Court of California issued a ruling adverse to Monsanto in Monsanto's lawsuit against OEHHA.  Monsanto admits the allegations in the final sentence of paragraph 103, but states that OEHHA itself considers the process by which glyphosate was added to California's Proposition

---

[8] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

65 list of chemicals "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that OEHHA's decision to add glyphosate to California's Proposition 65 list of chemicals was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[9]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  Monsanto further notes that the listing of glyphosate took place on July 7, 2017, but that under Proposition 65 the effective date of any requirement to provide warnings is July 7, 2018.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

104.    In response to the allegations in paragraph 104, Monsanto admits that OEHHA published a notice that glyphosate would be included on its Proposition 65 listing and admits that this notice was not based upon any independent scientific analysis of glyphosate but instead was in response to a section of the Labor Code triggering such action based solely upon the IARC classification.  Monsanto further states that OEHHA concluded in 2007, based upon its own independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

105.    Monsanto admits the allegations in paragraph 105.

106.    Monsanto admits the allegations in paragraph 106.

_____

[9] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

107.    In response to the allegations in paragraph 107, Monsanto admits that, on November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

108.    In response to the allegations in paragraph 108, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 108.

109.    Monsanto admits the allegations in paragraph 109.

110.    In response to the allegations in paragraph 110, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 110 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumor incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[11]  To the extent that paragraph 110 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 110.

111.    In response to the allegations in paragraph 111, Monsanto states that the cited document speaks for itself and does not require a response.

---

[10] *See* EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

112.     In response to the allegations in paragraph 112, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

113.     In response to the allegations in paragraph 113, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 113 (hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field."  Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel. Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

114.     In response to the allegations in paragraph 114, Monsanto admits that Dr. Portier sent the letter identified in paragraph 114.  Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field."  Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware at the time that Dr. Portier was working as a retained expert for plaintiffs' counsel.

115.     In response to the allegations in paragraph 115, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

1    carcinogenic hazard to humans."[12]  To the extent that paragraph 115 characterizes the meaning

2    of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining

3    allegations in paragraph 115.

4         116.    In response to the allegations in paragraph 116, Monsanto admits that IARC

5    concluded that the human epidemiologic data provides only "limited evidence of

6    carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not

7    be ruled out with reasonable confidence."[13]  Monsanto further admits that Dr. Portier – who has

8    been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer

9    litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by

10   EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to

11   humans."[14]  In response to the remaining allegations in paragraph 116, Monsanto states that the

12   cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph

13   116 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate,

14   Monsanto denies the remaining allegations in paragraph 116.

15        117.    In response to the allegations in paragraph 117, Monsanto states that the cited

16   Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

17   Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

18   glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

19   conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

20   carcinogenic hazard to humans."[15]  To the extent that paragraph 117 characterizes the meaning

21   of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the

22   remaining allegations in paragraph 117.

23

24   [12] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en
     /press/news/151112.

25   [13] http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php.

26   [14] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu
     /en/press/news/151112.

27   [15] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu
     /en/press/news/151112.

28

118.     In response to the allegations in paragraph 118, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[16]  To the extent that paragraph 118 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 118.

119.     Monsanto admits the allegations in paragraph 119.

120.     In response to the allegations in paragraph 120, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 94 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 120.

121.     In response to the allegations in paragraph 121, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 121 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 121.

122.     In response to the allegations in paragraph 122, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 122 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 122.

---

[16] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

123.    In response to the allegations in paragraph 123, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 123 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 123.

124.    In response to the allegations in paragraph 124, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 124 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 124.

125.    In response to the allegations in paragraph 125, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 125 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 125.

126.    In response to the allegations in paragraph 126, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 126 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 126.

127.    Monsanto denies the allegations in paragraph 127.

128.    Monsanto admits the allegations in paragraph 128.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

129.    In response to the allegations in paragraph 129, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto also states that the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

allegations are out of date and that the European Union has approved glyphosate for another five years.

130.    In response to the allegations in paragraph 130, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 130.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

131.    Monsanto admits the allegations in paragraph 131.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

132.    Monsanto admits the allegations in paragraph 132.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

133.    Monsanto admits the allegations in paragraph 133.

134.    In response to the allegations in paragraph 134, Monsanto admits that the EU voted to extend the glyphosate license for five more years.  In response to the remaining allegations in paragraph 134, Monsanto states that the cited document speaks for itself and does not require a response.

135.    In response to the allegations in paragraph 135, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and denies that Roundup®-branded products or glyphosate are injurious to human health.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.  The final sentence of paragraph 135 sets forth a conclusion of law for which no response is required.

136.    In response to the allegations in paragraph 136, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification

1    for glyphosate were all publicly available before March 2015.  The remaining allegations in

2    paragraph 136 set forth conclusions of law for which no response is required.

3         137.    In response to the allegations in paragraph 137, Monsanto denies that there is any

4    risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-

5    branded products and glyphosate.  Monsanto states, however, that the scientific studies upon

6    which IARC purported to base its cancer classification for glyphosate were all publicly available

7    before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to

8    the truth of the remaining allegations in paragraph 137 and therefore denies those allegations.

9         138.    The allegations in paragraph 138 set forth conclusions of law for which no

10   response is required.  To the extent that a response is deemed required, Monsanto denies the

11   allegations in paragraph 138.  Monsanto states that the scientific studies upon which IARC

12   purported to base its cancer classification for glyphosate were all publicly available before

13   March 2015.

14        139.    Monsanto denies the allegations in paragraph 139.

15        140.    Monsanto denies the allegations in paragraph 140.

16        141.    The allegations in paragraph 141 set forth conclusions of law for which no

17   response is required.

18        142.    Monsanto denies the allegations in paragraph 142.

19        143.    The allegations in paragraph 143 set forth conclusions of law for which no

20   response is required.  To the extent that a response is required, Monsanto denies the allegations

21   in paragraph 143.  Monsanto states that the scientific studies upon which IARC purported to base

22   its cancer classification for glyphosate were all publicly available before March 2015.

23        144.    Monsanto incorporates by reference its responses to paragraphs 1 through 143 in

24   response to paragraph 144 of plaintiff's Complaint.

25        145.    In response to the allegations in paragraph 145, Monsanto admits that plaintiff

26   purports to bring claims for strict liability but denies any liability to plaintiff.

27

28

146.    In response to the allegations in paragraph 146, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiff was exposed to Roundup®-branded products and therefore denies that allegation.  Monsanto denies the remaining allegations in paragraph 146.

147.    In response to the allegations in paragraph 147, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or were exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 147.

148.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 148 and therefore denies those allegations.

149.    Monsanto denies the allegations in paragraph 149.

150.    Monsanto denies the allegations in paragraph 150.

151.    Monsanto denies the allegations in paragraph 151 and each of its subparts.

152.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 152 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 152, including that Roundup®-branded products have "dangerous characteristics."

153.    Monsanto denies the allegations in paragraph 153.

154.    Monsanto denies the allegations in paragraph 154.

155.    Monsanto denies the allegations in paragraph 155.

156.    Monsanto denies the allegations in paragraph 156.

157.    Monsanto denies the allegations in paragraph 157.

158.    Monsanto denies the allegations in paragraph 158.

159.    Monsanto denies the allegations in paragraph 159.

160.    In response the allegations in paragraph 160, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with

1    prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

2    by law and such further and additional relief as this Court may deem just and proper.

3          161.    Monsanto incorporates by reference its responses to paragraphs 1 through 160 in

4    response to paragraph 161 of plaintiff's Complaint.

5          162.    In response to the allegations in paragraph 162, Monsanto admits that plaintiff

6    purports to bring claims for strict liability but denies any liability to plaintiff.

7          163.    Monsanto denies the allegations in paragraph 163.

8          164.    In response to the allegations in paragraph 164, Monsanto lacks information or

9    knowledge sufficient to form a belief as to the truth of the allegations that plaintiff or other

10   persons or entities purchased Roundup®-branded products and therefore denies those allegations.

11   The allegations in paragraph 164 also set forth conclusions of law for which no response is

12   required.  Monsanto denies the remaining allegations in paragraph 164.

13         165.    In response to the allegations in paragraph 165, Monsanto denies that there is any

14   risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-

15   branded products and glyphosate.  The remaining allegations in paragraph 165 set forth

16   conclusions of law for which no response is required.

17         166.    Monsanto denies the allegations in paragraph 166.  All labeling of Roundup®-

18   branded products has been and remains EPA-approved and in compliance with all federal

19   requirements under FIFRA.

20         167.    Monsanto denies the allegations in paragraph 167.

21         168.    Monsanto denies the allegations in paragraph 168.

22         169.    Monsanto denies the allegations in paragraph 169.

23         170.    Monsanto lacks information or knowledge sufficient to form a belief as to the

24   truth of the allegations in paragraph 170 and therefore denies those allegations.

25         171.    Monsanto lacks information or knowledge sufficient to form a belief as to the

26   truth of the allegations in paragraph 171 regarding plaintiff's claimed use of and exposure to

27   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

1  remaining allegations in paragraph 171, including that Roundup®-branded products have

2  "dangerous characteristics."

3       172.    In response to the allegations in paragraph 172, Monsanto denies that Roundup®-

4  branded products are associated with risks of NHL or other serious illness or that Roundup®-

5  branded products have "defects."  Monsanto lacks information or knowledge sufficient to form a

6  belief as to the truth of the allegations in the second sentence of paragraph 172 and therefore

7  denies those allegations.  Monsanto denies the remaining allegations in paragraph 172.

8       173.    Monsanto denies the allegations in paragraph 173.

9       174.    Monsanto denies the allegations in paragraph 174.

10       175.    Monsanto denies the allegations in paragraph 175.

11       176.    Monsanto denies the allegations in paragraph 176.

12       177.    Monsanto denies the allegations in paragraph 177.

13       178.    Monsanto denies the allegations in paragraph 178.

14       179.    Monsanto denies the allegations in paragraph 179.

15       180.    Monsanto denies the allegations in paragraph 180.

16       181.    In response  the allegations in paragraph 181, Monsanto demands that judgment

17  be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with

18  prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

19  by law and such further and additional relief as this Court may deem just and proper.

20       182.    Monsanto incorporates by reference its responses to paragraphs 1 through 181 in

21  response to paragraph 182 of plaintiff's Complaint.

22       183.    Monsanto lacks information or knowledge sufficient to form a belief as to the

23  truth of the allegations in paragraph 183 and therefore denies those allegations.

24       184.    The allegations in paragraph 184 set forth conclusions of law for which no

25  response is required.

26       185.    The allegations in paragraph 185 set forth conclusions of law for which no

27  response is required.

28

186.    Monsanto denies the allegations in paragraph 186.

187.    Monsanto denies the allegations in paragraph 187.

188.    Monsanto denies the allegations in paragraph 188.

189.    Monsanto denies the allegations in paragraph 189.

190.    Monsanto denies the allegations in paragraph 190.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

191.    Monsanto denies the allegations in paragraph 191.

192.    Monsanto denies the allegations in paragraph 192.

193.    Monsanto denies the allegations in paragraph 193.

194.    Monsanto denies the allegations in paragraph 194, including each of its subparts.

195.    Monsanto denies the allegations in paragraph 195.

196.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 196 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 196, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

197.    Monsanto denies the allegations in paragraph 197.

198.    Monsanto denies the allegations in paragraph 198.

199.    Monsanto denies the allegations in paragraph 199.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

200.    In response to the allegations in paragraph 200, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

201.    Monsanto incorporates by reference its responses to paragraphs 1 through 200 in response to paragraph 201 of plaintiff's Complaint.

202.     Monsanto denies the allegations in paragraph 202.  Monsanto states that the final sentence of paragraph 202 sets forth conclusions of law for which no response is required.

203.     The allegations in paragraph 203 and its subparts set forth conclusions of law for which no response is required.

204.     In response to the allegations in paragraph 204, Monsanto admits that it has sold glyphosate based herbicides in accordance with their EPA-approved labeling.  Monsanto further states that the allegations in paragraph 204 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 204.

205.     Monsanto denies the allegations in the first and second sentence of paragraph 205. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence of paragraph 205 sets forth conclusions of law for which no response is required.

206.     The allegations in paragraph 206 set forth conclusions of law for which no response is required.

207.     Monsanto denies the allegations in paragraph 207.

208.     Monsanto denies the allegations in paragraph 208 and each of its subparts.

209.     The allegations in paragraph 209 set forth conclusions of law for which no response is required.

210.     Monsanto states that the allegation in paragraph 210 that Monsanto made an express warranty sets forth a conclusion of law for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 210 and therefore denies those allegations.

211.     Monsanto denies the allegations in paragraph 211.

212.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 212 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 212.

213.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 213 and therefore denies those allegations.

214.    Monsanto denies the allegations in paragraph 214.

215.    Monsanto denies the allegations in paragraph 215.

216.    In response to the allegations in paragraph 216, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

217.    Monsanto incorporates by reference its responses to paragraphs 1 through 216 in response to paragraph 217 of plaintiff's Complaint.

218.    Monsanto denies the allegations in paragraph 218.

219.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 219 regarding plaintiff's alleged use and exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 219 set forth conclusions of law for which no response is required.

220.    Monsanto denies the allegations in paragraph 220.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

221.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 221 regarding the claimed use of and exposure to Roundup®-branded products by plaintiff, and/or plaintiff's employers and therefore denies those allegations.  The remaining allegations in paragraph 221 set forth conclusions of law for which no response is required.

222.    The allegations in paragraph 222 set forth conclusions of law for which no response is required.

223.    The allegations in paragraph 223 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

224.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 224 regarding the claimed use of and exposure to Roundup®-branded products by plaintiff, and/or plaintiff's employers and therefore denies those allegations.  The remaining allegations in paragraph 224 set forth conclusions of law for which no response is required.

225.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 225 and therefore denies those allegations.

226.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 226 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 226 set forth conclusions of law for which no response is required.

227.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 227 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 227.

228.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 228 concerning the condition of any Roundup®-branded product allegedly used by plaintiff or about plaintiff's alleged use of such product and therefore denies the allegations in paragraph 228.

229.     Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 229 concerning plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 229.

230.     Monsanto denies the allegations in paragraph 230.

231.     Monsanto denies the allegations in paragraph 231.

232.     Monsanto denies the allegations in paragraph 232.

233.     In response to the allegations in paragraph 233, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

234.     Monsanto incorporates by reference its responses to paragraphs 1 through 233 in response to paragraph 234 of plaintiff's Complaint.

235.     Monsanto denies the allegations in paragraph 235.

236.     Monsanto denies the allegations in paragraph 236.

237.     Monsanto denies the allegations in paragraph 237.

238.     Monsanto denies the allegations in paragraph 238.

239.     Monsanto denies the allegations in paragraph 239.

240.     Monsanto denies the allegations in paragraph 240.

241.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 241 regarding plaintiff's reliance and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 241.

242.     The allegations in paragraph 242 set forth conclusions of law for which no response is required.

243.     Monsanto denies the allegations in paragraph 243.

244.     Monsanto denies the allegations in paragraph 244.

245.     In response to the allegations in paragraph 245, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

246.     The allegations in paragraph 246 set forth conclusions of law for which no response is required.

In response to the Prayer for Relief, Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.     Venue may be improper or inconvenient for plaintiff's claims.

3.     Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.     Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.     Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

8.     Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.     Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

12.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

13.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

14.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

15.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

16.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

17.     Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the California Constitution, the Colorado Constitution, and/or other applicable state constitutions.

19.     Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under California law, Colorado and/or other applicable state laws.

20.     Plaintiffs have failed to allege fraud with sufficient particularity.

21.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

23.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

24.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

25.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

26.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

27.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC

28.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

29.     Plaintiffs' claims for punitive and exemplary damages are barred and/or limited by operation of state and/or federal law, including Colo. Rev. Stat. § 13-21-102.

30.      Pursuant to Colo. Rev. Stat. § 13-21-406, Monsanto cannot be liable for damages that exceed its pro rata share of causal fault, no fault being admitted.

31.     Plaintiffs' claims and damages, no injury or damages being admitted, are barred or must be reduced, in whole or part, by Colo. Rev. Stat. § 13-21-403 (state of the art presumption, of non-defectiveness for compliance with government codes, and ten-year presumption) and Colo. Rev. Stat. § 13-21-102.5 (limits on non-economic damages).

32.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Monsanto demands a jury trial on all issues so triable.

DATED: November 11, 2019                    Respectfully submitted,


/s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-05969-VC