Kelly Elswick-Hall
West Virginia State Bar No. 6578
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
304-342-3106
keh@themasterslawfirm.com
mwm@themasterslawfirm.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC |
|---|---|
| This document relates to:<br><br>*Roger Bryant et al., vs. Monsanto Company, et al.*, Case No. 3:19-cv-06395-VC | **PLAINTIFFS' REPLY TO RESPONSE IN SUPPORT OF MOTION TO REMAND**<br><br>**Hearing date December 5, 2019 at 10:00 am Courtroom 4** |

**TABLE OF CONTENTS**

I.   Statement of the Case........................................................................................................1

II.  Argument… ......................................................................................................................1

III. Conclusion …………………………………………………………………………….9

# TABLE OF AUTHORITIES

**Cases**

*Agee v. Monsanto Co.*, No. 3:09-CV-1336, 2010 WL 3835647 (S.D.W. Va. Sept. 29, 2010) ............................... 7

*B. Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir. 1981) ................................................................................ 8

*Chumley v. Great Atlantic & Pacific Tea Co.,* 191 F. Supp. 254 (M.D.N.C. 1961). .......................................... 1

*Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245 (N.D.Ala. March 12, 2014) (Hopkins, J.) ...................................................................................................................................................... 1

*Ex parte McCardle,* 74 U.S. 506, 514 (1869) ....................................................................................................... 8

*Grancare, LLC v. Thrower by & through Mills,* 889 F.3d 543 (9th Cir. 2018) ................................................ 1

*Hartley v. CSX Transportation, Inc.,* 187 F.3d 422 (4th Cir. 1999) ................................................................ 1, 8

*Hoffman v. Monsanto Co.,* 2007 WL 2984692 (S.D.W.V 2007) ......................................................................... 5

*Hunter v. Philip Morris USA,* 582 F.3d 1039 (9th Cir. 2009) ............................................................................ 1

*In re Roundup Prod. Liab. Litig.,* No. 16-MD-02741-VC, 2019 WL 2943348 (N.D. Cal. July 9, 2019) ........... 1

*Jones v. Capers,* 166 F. Supp. 617 (W.D.Ark. 1958) .......................................................................................... 1

*Leonard v. St. Joseph Lead Co.,* 75 F.2d 390 (8th Cir. 1935) ............................................................................. 1

*Marshall v. Manville Sales Corporation,* 6 F.3d 229 (4th Cir. 1993) ............................................................... 1

*Morris v. E. I. Du Pont De Nemours & Co.,* 68 F.2d 788 (8th Cir. 1934) ......................................................... 1

*Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998) ..................................................................... 2

*Riverdale Baptist Church v. Certainteed Corp.,* 349 F. Supp.2d 943, 948 (D.MD. 2004) ............................... 1

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ............................................................................... 8

*Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.,* 436 Fed. Appx. 888, 2011 WL 2150183 (2011) ................................................................................................................................................................. 1

*Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850 (S.D.W. Va. July 9, 2014) ................................................................................................................................................................ 1,6

**Other Authorities**

Richardson, Matthew, *Clarifying and Limiting Fraudulent Joinder*, Florida Law Review 2006, Vol. 58 ........................................................................................................................................................................ 8

The plaintiffs, by and through the undersigned counsel, hereby submit the following Reply to the Response of Defendant Monsanto Company in support of plaintiffs' Motion to Remand. Plaintiffs have properly pleaded causes of action against non-diverse defendants. Defendant Monsanto has failed to meet its heavy burden to show fraudulent joinder. Therefore, this case should be remanded.

## I. STATEMENT OF THE CASE

Plaintiffs adopt and incorporate their statement of the case as set forth in the original motion to remand and brief in support. Certain facts are highlighted below in addressing arguments made by Monsanto in its response.

## II. ARGUMENT

Monsanto concedes that Monsanto Management Club is a West Virginia Corporation and non-diverse defendant. Monsanto essentially concedes that the allegations in plaintiffs' complaint state a claim against this non-diverse defendant upon which relief may be granted. Yet Monsanto continues to defend removal by arguing that plaintiffs' underlying factual allegations against this non-diverse defendant are false. This is not a proper basis for removal under long-standing law.[1]

As held by the Ninth and Fourth Circuit, the standard for assessing a claim of fraudulent joinder is even more liberal than that for addressing a Rule 12(b)(6) motion to dismiss. See *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018) citing *Hartley v. CSX Transp., Inc*., 187 F.3d 422, 424 (4th Cir. 1999) ("no possibility" standard). All questions of fact and law must be resolved in favor of the plaintiffs, and there must only be a glimmer of hope that the plaintiffs' claim may succeed. *Hartley,* 187 F.3d at 424-6 (4th Cir. 1999); *Marshall v. Manville Sales Corporation*, 6 F.3d 229, 232-3 (4th Cir. 1993); *In re Roundup Prod. Liab.*

---

[1] See *Morris v. E. I. Du Pont De Nemours & Co*., 68 F.2d 788, 792 (8th Cir. 1934) (emphasis added); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co*., 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co*., 191 F. Supp. 254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc*., 436 Fed. Appx. 888, 891-92, 2011 WL 2150183, at 3 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp*., 349 F. Supp.2d 943, 948 (D.MD. 2004); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014) (Hopkins, J.). Accord *Trout v. John Newcomb Enterprises, Inc*., No. 5:14-CV-13501, 2014 WL 3362850, at *5 (S.D.W. Va. July 9, 2014) and *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the "strong presumption against removal jurisdiction.")

*Litig.*, No. 16-MD-02741-VC, 2019 WL 2943348, at *1 (N.D. Cal. July 9, 2019). Plaintiffs more than meet this standard.

Monsanto's position incorrectly requires the plaintiffs to prove their claims against the non-diverse defendant in a motion to remand. This is *not* the standard. Instead, *defendants* alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998). Here, assuming plaintiffs' allegations to be true as required by law, the non-diverse defendant Monsanto Management Club can be held liable on the theories presented.

Monsanto wishes this Court to believe that the Nitro plant at issue in this case manufactured only rubber products and not herbicides. As explained in plaintiffs' brief in support of remand, this is an underlying factual dispute which should not be the subject of a notice of removal. Contrary to Monsanto's claims, the Nitro plant has a long history of production of herbicides. From EPA Office of Enforcement, *Overview of Environmental Pollution in the Kanawha Valley* August,1984, at V-III-10-11, excerpts attached as Ex. A, at V-III-10-11:

> The [Nitro] plant began operations in 1921. Monsanto has operated the plant since 1929. Reportedly, products are more than 40 major kinds of organic chemicals including rubber antioxidants, vulcanizing agents, rubber intermediates and accelerators, oil additives, pre-vulcanizing inhibitors, platicizer antioxidants, animal feed antioxidants, paper sizing agents, poultry feed supplements, **herbicides**, resin modifiers and refined tall oils. . . . Monsanto produced the herbicide 2,4,5-T [Agent Orange] at this plant until 1969. (Emphasis added.)

According to the EPA, a list of products manufactured at the Nitro plant in 1977 included:

Table 17
LIST OF PRODUCTS
MONSANTO COMPANY
Nitro, West Virginia

| | |
|---|---|
| Santocure NS Pellets | PC-1244 |
| M HA Acid | PC-1344 |
| Calcium MHA | Thiotax |
| Maul | Mersize 70-TFL |
| Santoquin | Mersize 77-T |
| Sodium MBT | Mersize 77-TFL |
| Unmilled Santowhite Crystals | Santosize 77 |
| Santoflex AW | Rosin Size KIP 70 |
| Santogard PVI | Monsize |
| Flectol H | Mersize 603 Adduct |
| Sulfasan R | Sulfasan R Wax Pellets |
| Thiofide | Multiflow |
| Santowhite Powder | BTH |
| Santocure Pellets | CDEC |
| Santonox R | TORUFA |
| Santovar A | UFA Bleached |
| Santocure NS Pellets | Emtall 730 |
| Santocure Powder | Emtall 786 – Pitch |
| 50% Sodium MBT | Emtall 743 – SFA |
| Santocure NS Powder | Emtall 729 |
| Santosize 70T | Emtall 731 |
| Santoflex DD | Emtall 753-V |
| M-530 | Emtall 745 |
| | PVI Waxed Pellets |

(See Ex. A.) Other chemicals used and disposed of in local landfills in Nitro, West Virginia by Monsanto included:

| PRODUCT NAME | SYNONYMS |
|---|---|
| 1. Santocure | N-Cyclohexyl |
| 2. Thiofide | MBTS |
| 3. Santocure NS | N (1,1 - dimetylethyl) |
| 4. Santonox R Antioxidant | 4,4' - Thiobis (3-motyl-6 tertiary butyl phenol) |
| 5. Santoquin Emulsion Feed and Forage Preservative | Ethoxyquin Emulsion |
| 6. Santowhite Powder Antioxidant | 4,4' - Butylidene-bis (6-Tert-butyl-m-cresol) |
| 7. Thiotax MBT | MBT |

(Site *Investigation Risk Nitro Landfill*, October 19, 1988, pp.2-3,6-7, excerpts attached as Ex. B) Santocure is used, *inter alia*, in the formulation of herbicides. (See *Aquatic Plant Control Program, Technical Rpt. 1, Controlled-Release Herbicides*, U.S. Army Corp. Engineers, Oct. 1972, Appx. C, p.C-3, C-16-17, excerpts attached as Ex. C.) Santoquin and Santoflex, also known as Ethoxyquin, was formerly used as an agricultural pesticide/herbicide. (See PubChem-NIOSH *Ethoxyquin*, https://pubchem.ncbi.nlm.nih.gov/compound/Ethoxyquin, excerpts attached as Ex. D.) Sulfasan is also known as Herbisan, and is used as an herbicide. (See *Modern Weed Control*, Alden Springer Crafts, p 413. University of California Press, 1975, p.413, Excerpt attached as Ex. E.)

It is widely known that Monsanto chemist John E. Franz developed glyphosate. On November 29, 1994, Franz gave an oral interview to the Chemical Heritage Foundation. (Excerpts attached as Ex. F.) According to the summary, the interview is designated as "Semi Restricted Access" and the entire oral history may only be viewed with the permission of CHF. (See Ex. F) In addition, the Abstract says that the permission of the interviewee Franz is required to quote from, cite, or reproduce the oral history. (Ex. F) However, the Abstract is telling. It begins:

John E. Franz begins this interview by discussing his early life in Springfield, Illinois, during the Depression. He then describes his undergraduate work at the University of Illinois and his contacts there with Roger Adams, Elliott Alexander, Virginia Bartow, Reynold Fuson, and Carl Marvel. Moving on to his graduate work at the University of Minnesota, Franz contrasts his studies there in physical organic chemistry with his training in practical synthetic organic chemistry at Illinois. **Next, Franz discusses choosing to work at the Monsanto Company, rather than DuPont. After describing his first projects, Franz recalls his transfer from the organic chemicals division to the agricultural division, where he worked on synthetic herbicides. This work led to Franz's discovery of glyphosate, a natural plant growth inhibitor that forms the active ingredient in Roundup**, an environmentally friendly herbicide that has become one of the most widely used herbicides in the world. (Emphasis added.)

(Ex. F) The Table of Contents in the abstract says:

TABLE OF CONTENTS

1   Childhood and Early Education
Childhood and early schooling in Springfield, Illinois. Early interest in science; dairy-related experiments. Chemistry in junior college.

5   Undergraduate and Graduate Schooling
Contacts with Roger Adams, Elliott Alexander, Virginia Bartow, Reynold Fuson, and Carl Marvel at the University of Illinois. Graduate work at the University of Minnesota; contacts with Stuart W. Fenton, Ed Koelsch, and William E. Parham. Decision to work at Monsanto.

11  Early Career at Monsanto
Work on various projects—carbonium ions, maleic anhydride chemistry, plasticizers, aspirin, polymers, and oxidation reactions. Research on sulfonyl ureas in treating diabetes. Monsanto's technical and management ladders, patent process, and attitude toward publications.

**18 Transfer to Monsanto's Agricultural Division**
A. John Speziale. Work on plant growth regulators, especially hormones. Study of plant physiology. Division culture and communication. How ideas develop.

(Ex. F) As you can see, page 18 begins the discussion of Franz's transfer to Monsanto's Agricultural Division, which the above abstract says is where he worked on synthetic herbicides and this work led to Franz's discovery of glyphosate. (Ex. F) Although we do not have the transcript of what he said, there is an index. The index specifically mentions Nitro, West Virginia:

N
Naphthalene, 13
National Medal of Technology, 50
Nitrile sulfides, 35
**Nitro, West Virginia, 18**
N-oxides, 27, 29 amine, 29
Nylon, 43

(Ex. F) The index mentions Nitro, West Virginia by name on page 18, which corresponds to the first page of Franz's transfer to Monsanto's Agricultural Division, which the above abstract says is where he worked on synthetic herbicides and this work led to Franz's discovery of glyphosate.  Monsanto's argument that the Nitro plant has no connection to glyphosate is disputable given this information, particularly given the "no possibility" standard applicable to fraudulent joinder.

Monsanto disputes plaintiffs' underlying factual claims by stating that Flexsys America, L.P., who is not a defendant, owned and operated the Nitro plant from 1995 to 2004 and manufactured rubber chemicals and tire additives and has "never been involved in any way" with any kind of herbicides. (Def. Brf. 12.) One problem with this is that it conclusively assumes, without any discovery, that Monsanto knows everything there is to know about the workings of Flexsys, which it claims to be a separate company, based upon two witnesses, who are higher up management with motivation to say what benefits the defendants or omit what does not benefit the defendants. According to a case reported in 2007, Charles Hoffman was an operator in Building 91 at the Nitro plant from 1972 until 2003. *Hoffman v. Monsanto Co.,* 2007 WL 2984692 (S.D.W.V 2007). This would include times when Monsanto claims the plant was operated by Monsanto and Flexsys. According to *Hoffman*, the defendants used various chemicals in the manufacturing processes in Building 91, including trichloroethylene ("TCE"), xylene, clenzolene, morpholine, and butyraldehyde. Id. Morpholine is used as a fungicide and as a component of herbicides:

> Morpholine fungicides are used for agricultural purposes (Mercer, 1991), as foliar fungicides with protective and curative properties for the control of powdery mildew and rust (Brouwers et. al., 1992; Leenheers et al. 1992), and as foliar fungicides for cereals (Akerman et al. 1989). **Morpholine is also used in the preparation of herbicides that can be applied either to the soil before the weeds emerge or to the growing plants.** (Texaco 1986).

(See World Health Organization, International Programme on Chemical Safety, Environmental Health Criteria 179, Morpholine, 1996, excerpt attached as Ex .G, emphasis added.)

Butyraldehyde also is used in herbicides:

**Technical Data Sheet Eastman™ Butyraldehyde, Dry Applications**

- Automotive parts & accessories
- Building materials

- General industrial coatings
- Glass treatment
- **Herbicides** - intermediate for other
- Industrial fuel imeds
- Packaging components non food contact
- Paints & coatings
- Windows

Eastman Technical Data Sheet, Butyraldehyde, Dry
https://productcatalog.eastman.com/tds/ProdDatasheet.aspx?product=71000216&pn=Butyraldehyde+-+Dry, attached as Ex. H, emphases added.)

 Even with the limited information publically available without discovery, the Nitro plant has a long and continuing relationship with herbicides, extending into its Flexsys days. Plaintiffs' pleadings reflect this.

 There is also a glaring due process problem with Monsanto's argument that this Court should determine jurisdiction by relying on affidavits Monsanto submits without any opportunity for discovery or cross examination. This is illustrated by the case of *Trout v. John Newcomb Enterprises, Inc.,* No. 5:14-CV-13501, 2014 WL 3362850 (S.D.W. Va. July 9, 2014). In *Trout*, which was handled by the undersigned firm, the defendants, including national company Burger King, removed arguing fraudulent joinder. Like this case, the defendant supported its argument with three affidavits from witnesses stating facts which supported its argument. What the defendants did not know is that the plaintiff's counsel had obtained recorded statements *of two of the same witnesses,* one of which contradicted the conclusory statements in the defendant's affidavit from the same witness. In addition, the recorded statement of the other witness showed that the defendants' affidavit of that same witness omitted important information supporting plaintiff's position. If the plaintiff in *Trout* had not been able to do this, the Court would have been relying exclusively upon false and misleading, self-serving affidavits of the defendants to determine jurisdiction.

 In *Trout* the Burger King where the injury occurred was still in business, and plaintiff was able to identify, and therefore had access to interview, the witnesses with knowledge. Plaintiffs do not have that luxury here. The Nitro plant shut down 15 years ago, and so plaintiffs must rely upon discovery process and very limited publicly available information on Flexsys and Monsanto Management Club-Nitro Plant. Ruling on jurisdiction based on defense affidavits, where the defendants hold all of the information and can manipulate it at will, is fraught with potential for abuse, as illustrated by *Trout*.

This can also be illustrated in this case. In its affidavits and brief, Monsanto says that Flexsys America, L.P., who it claims is the correct entity, is a citizen of Delaware and Missouri, because Solutia, Inc. is its ultimate owner and Solutia is a citizen of Delaware, where it is incorporated, and Missouri, where its principal place of business is. However, the West Virginia Secretary of State information lists the local address for Solutia, Inc., in Nitro, West Virginia and principle office address for Solutia, Inc. in Springfield, Massachusetts, with officers in multiple states. (WV SOS information Solutia, Inc., attached as Ex. I.) The 126 acre location of the Nitro plant became the subject of an Environmental Protection Agency-ordered "super fund" type clean up. (See Environmental Covenant, Ex. J.) The person for Solutia who signed the Environmental Covenant with the EPA for cleanup of the former Nitro plant on November 28, 2018, signed the document in the County of Sullivan, Tennessee. (Ex. J, p.5) The West Virginia Secretary of State website information for Flexsys America, L.P., who Monsanto claims is the correct entity, listed the address of its partner, Solutia, Inc. as Akron, Ohio. (See WV SOS information for Flexsys America, L.P., Ex. K.) This contradicts the affidavits filed by Monsanto in this case. This is why a nerve center analysis of Solutia would need to be done, which requires more than conclusory affidavits from the defendant.

Monsanto says very little about the named defendant, Flexsys America Limited. All of Monsanto's arguments and factual disputes relate to different entities. As explained in plaintiffs' memorandum in support of remand, which company or companies owned, operated or managed the Nitro plant (they can be different and there can be more than one) is a disputed question of fact, and is not the proper subject of determination by this Court. This is particularly true where there has been no opportunity for discovery.

At most, Monsanto's allegations, compared to the Secretary of State documentation, create an ambiguity about the status and location of the various entities and does not resolve the issue of all of the entities that owned, operated, controlled or managed the Nitro plant. This ambiguity must be resolved against the defendants. *See Agee v. Monsanto Co.*, No. 3:09-CV-1336, 2010 WL 3835647, at *5 (S.D.W. Va. Sept. 29, 2010)("At most, they have demonstrated that there is ambiguity surrounding [Non-diverse defendant's] principal place of business— ambiguity that must be resolved against the defendants. …If the allegations in the plaintiff's Complaint are true, the plaintiff will certainly be able to establish a cause of action against [non-diverse defendant] in state court")

Litigation over who had responsibility for oversight, training, policies and procedures, including shared responsibilities and through shared services, can and often does include multiple companies. Plaintiffs have pleaded that Flexsys America Limited owned and operated the Nitro plant, and that Monsanto Management Club-Nitro Plant managed the Nitro plant and, to the extent Monsanto denies that, it will be a determination to be made by the jury or, at best, by the Court upon a properly supported summary judgment.

Monsanto argues that plaintiffs have no right to conduct discovery, but because Monsanto is disputing the underlying factual allegations with affidavits, plaintiffs must have the right to conduct discovery to rebut them, if the Court does not accept plaintiffs' facts as true, which it should. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (stating that an approach under which a federal court proceeds to dispose of the merits of claims before establishing that it has jurisdiction over the subject matter of the action "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)); *see also Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (framing the fraudulent joinder issue as a "threshold" and jurisdictional one).

"Defendants can subtly, but improperly, lessen the burden, or even shift the burden back to the plaintiffs, through a combination of argument and affidavits submitted in either the notice of removal or the response to the plaintiff's motion to remand. These arguments and affidavits might blur the line between jurisdictional facts and facts relating to the merits of the plaintiff's claims against the nondiverse defendant; and the court may not notice such impropriety, producing a decision in which the court has improperly "pre-tried" the plaintiff's claims against the nondiverse defendant." Richardson, Matthew, *Clarifying and Limiting Fraudulent Joinder*, Florida Law Review 2006, Vol. 58, p. 123. "[F]ederal courts should not plumb the merits of plaintiffs' claims against nondiverse defendants before much, if any, discovery has occurred. *Id*. at 125. *See also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 546 (5th Cir. 1981) (stating that "district courts must not 'pre-try' substantive factual issues in

order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent") This is precisely what Monsanto asks this Court to do.

## III.  CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that their Motion to Remand to the Circuit Court of Mason County, West Virginia, be granted.  Plaintiffs also respectfully request that they be awarded the reasonable costs and expenses, including attorney fees, incurred in bringing their Motion to Remand.

ROGER BRYANT and
JUDY BRYANT


Dated:  November 13, 2019

By:  */s/ Kelly Elswick-Hall*
Kelly Elswick, Esq.
keh@themasterslawfirm.com
Marvin W. Masters, Esq.
mwm@the masterslawfirm.com
181 Summers Street
Charleston, West Virginia 25301
Telephone:  (304) 342-3106
Facsimile:  (304) 342-3189
Counsel for Plaintiffs

And

Aimee H. Wagstaff
David Wool
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, Colorado 80226
Co-counsel for Plaintiffs

F:\2\624\b003.docx

## CERTIFICATE OF SERVICE

I, Kelly Elswick-Hall, hereby certify that on November 13, 2019, I electronically filed "PLAINTIFFS' REPLY TO RESPONSE IN SUPPORT OF MOTION TO REMAND" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> Charles M. Love III (WV Bar No. 2254)
> Floyd E. Boone Jr. (WV Bar No. 8784)
> William M. Lorenson (WV Bar No. 13223)
> Bowles Rice LLP
> 600 Quarrier Street
> Post Office Box 1386
> Charleston, West Virginia 25325-1386
> Counsel for Defendant Monsanto Company and
> Flexsys America Limited
>
> Brian L. Stekloff
> Rakesh Kilaru
> Wilkinson Walsh & Eskovitz LLP
> 2001 M. Street, N.W., 10th Floor
> Washington, D.C. 20036
> Counsel for Defendant Monsanto Company
>
> William Hoffman
> Daniel S. Pariser
> Arnold & Porter Kaye Scholer LLP
> 601 Massachusetts Avenue, N.W.
> Washington, D.C. 20001
> Counsel for Defendant Monsanto Company
>
> Eric G. Lasker
> Martin C. Calhoun
> Hollingsworth LLP
> 1350 I Street, N.W.
> Washington, DC 2005
> Counsel for Defendant Monsanto Company

And by first class U.S. Mail on the following non-ECF participants:

> Monsanto Management Club - Nitro Plant
> c/o Otto J. Dresher
> 2023 Lincoln Avenue
> St. Albans, West Virginia 25177

/s/ Kelly Elswick-Hall
West Virginia State Bar No. 6578
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
304-342-3106
keh@themasterslawfirm.com
mwm@themasterslawfirm.com