**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS** <br><br> Hearing date: January 29, 2020 |
| *Dickey v. Monsanto Co.,* 3:19-cv-04102-VC | |
| *Domina v. Monsanto Co.*, 3:16-cv-05887-VC | |
| *Janzen v. Monsanto Co.*, 3:19-cv-04103-VC | |
| *Pollard v. Monsanto Co.*, 3:19-cv-04100-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on January 29, 2020, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto")

1  will move this Court for an order, pursuant to Federal Rule of Civil Procedure 56(c), entering
2  judgment in its favor and against Wave 1 Plaintiffs Robert L. Dickey, Larry E. Domina, Royce D.
3  Janzen, and Frank Pollard (collectively the "Nebraska Plaintiffs"), on the grounds that there is no
4  genuine issue of material fact as to any claim for relief brought by the Nebraska Plaintiffs, and
5  Defendant is entitled to summary judgment.

DATED: November 26, 2019              Respectfully submitted,

/s/ Brian L. Stekloff

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

---

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

SUMMARY OF THE NEBRASKA PLAINTIFFS' CLAIMS ....................................................... 3

SUMMARY JUDGMENT STANDARD ...................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I. THE NEBRASKA PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AS A MATTER OF ARKANSAS LAW. ........................................... 4

II. SUMMARY JUDGMENT IS REQUIRED BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE CAUSATION. ................................................. 5

III. SUMMARY JUDGMENT IS WARRANTED ON THE DESIGN DEFECT CLAIMS BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE THAT A SPECIFIC DESIGN DEFECT CAUSED THEIR NHL. ..................................... 6

IV. THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THE NEBRASKA PLAINTIFFS HAVE NOT IDENTIFIED AN EXPRESS WARRANTY THAT WAS BREACHED. ........................................... 8

V. THE IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE MERGED INTO THE STRICT LIABILITY CLAIMS. ..................................................................................................................... 9

VI. THE FAILURE-TO-WARN CLAIMS SHOULD BE DISMISSED BECAUSE MONSANTO DID NOT HAVE A DUTY TO WARN OF THE ALLEGED CANCER RISKS AT THE TIME OF THE RELEVANT DISTRIBUTION. ..................... 9

VII. THE NEBRASKA PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES. ......................................................................................................................... 11

CONCLUSION ............................................................................................................................. 12

i

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

**TABLE OF AUTHORITIES**

**Cases**   **Page(s)**

*Abel v. Conover,*
104 N.W.2d 684 (Neb. 1960) ............................................................................................... 4

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................................................. 3

*Bamford, Inc. v. Regent Ins. Co.,*
No. 8:13-CV-200, 2014 WL 12539650 (D. Neb. June 12, 2014) ........................................ 4

*Carlson v. Okerstrom,*
675 N.W.2d 89 (Neb. 2004) ................................................................................................. 5

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................................. 3

*Distinctive Printing & Packaging Co. v. Cox,*
443 N.W.2d 566 (Neb. 1989) ............................................................................................... 4

*Enron Corp. v. Lawyers Title Ins. Corp.,*
940 F.2d 307 (8th Cir. 1991) ................................................................................................ 4

*Erickson v. U-Haul Int'l, Inc.,*
738 N.W.2d 453 (Neb. 2007) ............................................................................................. 10

*Factory Mut. Ins. Co. v. Nebraska Beef, Inc.,*
No. 8:09-cv-159, 2009 WL 2886315 (D. Neb. Sept. 2, 2009) ............................................. 5

*Freeman v. Hoffman-La Roche, Inc.,*
618 N.W.2d 827 (Neb. 2000) ..................................................................................... 2, 6, 8, 9

*Freeman v. Hoffman-La Roche, Inc.,*
911 N.W.2d 591 (Neb. 2018) ............................................................................................... 6

*Kabasinskas v. Haskin,*
No. 8:10-CV-111, 2011 WL 1897546 (D. Neb. May 18, 2011) .......................................... 4

*Kammerer v. Wyeth,*
No. 8:04-CV-196, 2011 WL 5237754 (D. Neb. Nov. 1, 2011) ............................................ 4

*King v. Burlington N. Santa Fe Ry. Co.,*
762 N.W.2d 24 (Neb. 2009) ................................................................................................. 5

*In re Korean Ramen Antitrust Litig.,*
281 F. Supp. 3d 892 (N.D. Cal. 2017) ................................................................................. 3

ii

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

*Menne v. Celotex Corp.*,
    861 F.2d 1453 (10th Cir. 1988) .......................................................................................... 10

*Munstermann v. Alegent Health-Immanuel Med. Ctr.*,
    716 N.W.2d 73 (Neb. 2006) ............................................................................................... 10

*O'Brien v. Cessna Aircraft Co.*,
    903 N.W.2d 432 (Neb. 2017) ...................................................................................... 4, 7, 8

*Pitts v. Genie Indus., Inc.*,
    921 N.W.2d 597 (Neb. 2019) ...................................................................................... 6, 7, 8

*Rand v. Stanosheck*,
    No. 8:18-cv-481, 2019 WL 3777956 (D. Neb. Aug. 12, 2019) ............................................ 5

*Rohrberg v. Zimmer, Inc.*,
    No. 8:05-cv-077, 2006 WL 3392178 (D. Neb. Oct. 24, 2006) ............................................. 9

*Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*,
    871 N.W.2d 776 (Neb. 2015) ............................................................................................... 7

*Rosse v. Rosse*,
    510 N.W.2d 73 (Neb. 1994) ............................................................................................... 11

*Sherman v. Sunsong Am., Inc.*,
    485 F. Supp. 2d 1070 (D. Neb. 2007) .................................................................................. 8

*Vallejo v. Amgen, Inc.*,
    274 F. Supp. 3d 922 (D. Neb. 2017) ................................................................................ 6, 8

*Vallejo v. Amgen, Inc.*,
    No. 8:14-cv-50, 2014 WL 4922901 (D. Neb. Sept. 29, 2014) ............................................. 8

**Statutes**

Neb. Rev. Stat. § 25-21,182 ....................................................................................................... 10

Neb. U.C.C. § 2–313 .................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 3

**Other Authorities**

Neb. Const. art. VII § 5 ............................................................................................................ 4, 5

Neb. Jury Instr., 1 Neb. Prac., NJI2d Civ. 11.31 ........................................................................ 10

iii

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

Case 3:16-md-02741-VC   Document 8005   Filed 11/26/19   Page 6 of 20

Second Restatement of Torts § 388 ............................................................................................. 10

Second Restatement of Torts § 402A ............................................................................................ 9

Third Restatement of Torts, Product Liability § 2 ..................................................................... 6, 9

iv

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

# INTRODUCTION

Defendant Monsanto Company ("Monsanto") moves for summary judgment, on Nebraska law issues, against the four Wave 1 Plaintiffs who brought claims in the United States District Court for the District of Nebraska – Robert L. Dickey, Larry E. Domina, Royce D. Janzen, and Frank Pollard (collectively, the "Nebraska Plaintiffs"). First, summary judgment is required on the Nebraska Plaintiffs' claims for punitive damages because Nebraska law bars punitive damages. Summary judgment also is warranted on the Nebraska Plaintiffs' individual causes of action because they have failed to prove: (1) general and specific causation; (2) that a specific defect in Roundup's design, as opposed to a labeling defect, caused their alleged injuries; (3) that Monsanto made any affirmative warranty that was breached, as opposed to omitting a warning; (4) an independent basis for their implied warranty claims; (5) that Monsanto had a duty to warn of Roundup's alleged cancer risk at the time of their relevant exposures; and (6) their right to seek attorneys' fees.

**Punitive Damages.** The Nebraska State Constitution **bars** punitive damages and limits a plaintiff's recovery in a civil lawsuit to compensatory damages. The Nebraska Plaintiffs thus have no right to punitive damages. To the extent they seek to apply another states laws, such attempt is unsupportable given that the Nebraska Plaintiffs are Nebraska residents who purchased, used, and were exposed to Roundup in Nebraska, and allege injury as a result of Monsanto's sales and distributions of Roundup in Nebraska.

**Causation.** Under Nebraska law, each Nebraska Plaintiff must prove both general and specific causation. As explained in Monsanto's *Daubert* motions, filed contemporaneously herewith, the Nebraska Plaintiffs do not have admissible expert testimony on either subset of causation.

1

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

**Design Defect Claim.** To prove a design defect claim under Nebraska law, each Nebraska Plaintiff must show that a specific defect in Roundup's formulation caused their injuries (or they must expressly allege an unknown defect caused their injuries under the "malfunction theory"). The Nebraska Plaintiffs cannot meet this standard because they have not offered any evidence that a particular design defect in Roundup's formulation caused their NHL. They also have not attempted to rely on the malfunction theory, and the record cannot support such a theory.

**Express and Implied Warranty Claims.** The Nebraska Plaintiffs' express and implied warranty claims are entirely duplicative of their claims for failure to warn and merely allege that Monsanto should have warned that Roundup was potentially carcinogenic. Under Nebraska law, these allegations cannot support an express warranty claim because they are based on an alleged omission (not an "affirmation of fact" that can constitute an express warranty). They also cannot support an implied warranty claim because Nebraska courts have made clear that implied warranty is not a separate basis for liability when, as here, it is based on an alleged failure to warn.

**Failure-to-Warn Claims.** Under Nebraska law, a manufacturer only has a duty to warn against "foreseeable risks of harm." *See Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 841 (Neb. 2000). But the undisputed record shows that the alleged cancer risks were never "foreseeable risks of harm" and certainly were not foreseeable risks prior to the Nebraska Plaintiffs' NHL diagnoses. As such, Monsanto is entitled to summary judgment on the failure-to-warn claims.

**Attorneys' Fees.** Under Nebraska law, a party generally cannot recover attorneys' fees, and the Nebraska Plaintiffs have no basis under statute or otherwise to recover attorneys' fees here.

2

## SUMMARY OF THE NEBRASKA PLAINTIFFS' CLAIMS

The Nebraska Plaintiffs are Nebraska residents who allege they were exposed to Roundup while working on farms in Nebraska, over decades, due to Monsanto's sales and distribution of Roundup in Nebraska. (*See* Declaration of Brian Stekloff, Ex. 1, *Domina* Compl. ¶¶ 10-13, 15[1].) Each Nebraska Plaintiff asserts the following causes of action under Nebraska law: Strict Liability (Design Defect); Strict Liability (Failure to Warn); Negligence; Breach of Express Warranties; and Breach of Implied Warranties. All of these claims are based on the same two underlying allegations: (1) Roundup's formulation is defective in design because it can allegedly cause cancer; and (2) Roundup's label is defective because it does not warn users of Roundup's alleged carcinogenetic risk.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has met its burden, the nonmoving party must come forward with evidence to show there is a genuine issue for trial. *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 899 (N.D. Cal. 2017). A "complete failure of proof concerning an essential element of the nonmoving party's case" warrants summary judgment and "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1] The Nebraska Plaintiffs filed a combined complaint, which will be cited throughout this Motion as "Domina Compl."

# ARGUMENT

## I. THE NEBRASKA PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AS A MATTER OF ARKANSAS LAW.

Under well-established Nebraska constitutional law, summary judgment is required on the Nebraska Plaintiffs' request for punitive damages. (*See* Ex. 1, Domina Compl., Request for Relief.) Nebraska law prohibits "punitive, vindictive, or exemplary damages" because such damages "contravene Neb. Const. art. VII, § 5." *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017) (quoting *Distinctive Printing & Packaging Co. v. Cox*, 443 N.W.2d 566, 574 (Neb. 1989)); *see also Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960) ("It has been a fundamental rule of law in this state that punitive, vindictive, or exemplary damages will not be allowed, and that the measure of recovery in all civil cases is compensation for the injury sustained.").

There can be no serious dispute that Nebraska law applies to these cases, including as to the Nebraska Plaintiffs' request for punitive damages. Each Plaintiff is a resident of Nebraska who used and was exposed to Roundup in Nebraska and alleges he was injured as a result of Monsanto's sales of Roundup in Nebraska. (Ex. 1, Domina Compl. ¶¶ 10-13, 15.) As Nebraska courts have repeatedly recognized, Nebraska has a strong interest in applying its constitutional bar on punitive damages to cases involving injuries to Nebraska residents alleged to have resulted from business operations in Nebraska. *See, e.g.*, *O'Brien*, 903 N.W.2d at 459 (Neb. 2017); *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir. 1991); *Bamford, Inc. v. Regent Ins. Co.*, No. 8:13-CV-200, 2014 WL 12539650, at *3 (D. Neb. June 12, 2014); *Kabasinskas v. Haskin*, No. 8:10-CV-111, 2011 WL 1897546, at *6 (D. Neb. May 18, 2011); *Kammerer v. Wyeth*, No. 8:04-CV-196, 2011 WL 5237754, at *4 (D. Neb. Nov. 1, 2011). Nebraska's policy interest is both in "recognizing and placing a value on the actual injuries suffered by its domiciliaries," *see Kammerer*, 2011 WL 5237754, at *4, and in ensuring that businesses domiciled outside Nebraska are not deterred from doing business in Nebraska by potentially being exposed to excessive or unwarranted liability as a result of doing so, *see Kabasinskas*, 2011 WL 1897546, at *5.

The Nebraska Plaintiffs try to circumvent Nebraska's clear bar on punitive damages by saying that they will donate the proceeds of any punitive damages judgment "to Nebraska common school funds." (*See* Ex. 1, Domina Compl., Request for Relief.)  This request is apparently based on a misreading of Article VII, Section 5 of the Nebraska Constitution, which provides: "all fines, penalties, and license money arising under the general laws of the state . . . shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue . . . ."  But Article VII, Section 5 has consistently been interpreted as prohibiting **all** punitive damages, and no exception exists for a plaintiff who agrees to donate his or her recovery to public school.  *See Rand v. Stanosheck*, No. 8:18-cv-481, 2019 WL 3777956, at *3 (D. Neb. Aug. 12, 2019) (the plaintiff lacked standing to seek punitive damages on behalf of public schools); *Factory Mut. Ins. Co. v. Nebraska Beef, Inc.*, No. 8:09-cv-159, 2009 WL 2886315 (D. Neb. Sept. 2, 2009) (same).

## II.  SUMMARY JUDGMENT IS REQUIRED BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE CAUSATION.

To prevail in a toxic tort case under Nebraska law, "a plaintiff must show both general and specific causation." *King v. Burlington N. Santa Fe Ry. Co.*, 762 N.W.2d 24, 34 (Neb. 2009). "[G]eneral causation addresses whether a substance is capable of causing a particular injury or condition in a population, while specific causation addresses whether a substance caused a particular individual's injury." *Id.*  To prove general causation, each plaintiff must present reliable evidence showing a "true cause-effect relationship" between Roundup and NHL. *Id.* at 39.  To prove specific causation, each plaintiff must present reliable evidence showing that Roundup was "the most likely culprit" of his or her NHL. *See id.* at 50; *see also Carlson v. Okerstrom*, 675 N.W.2d 89, 106 (Neb. 2004).

The Nebraska Plaintiffs have not presented admissible expert testimony to establish either general or specific causation.[2]  As a result, Monsanto is entitled to summary judgment on all

---

[2] Monsanto hereby incorporates by reference its *Daubert* motions in these cases, which are filed contemporaneously herewith.

5

claims. *See, e.g.*, *Freeman v. Hoffman-La Roche, Inc.*, 911 N.W.2d 591, 598 (Neb. 2018) (affirming summary judgment grant based on "failure of proof" because the testimony of plaintiff's causation expert was inadmissible); *Vallejo v. Amgen, Inc.*, 274 F. Supp. 3d 922, 927 (D. Neb. 2017) (summary judgment granted where plaintiff did not offer expert testimony to support product liability claims; "in cases involving complex technical, medical, or scientific issues, causation must be established by expert testimony").

### III. SUMMARY JUDGMENT IS WARRANTED ON THE DESIGN DEFECT CLAIMS BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE THAT A SPECIFIC DESIGN DEFECT CAUSED THEIR NHL.

To prove a design defect claim under Nebraska law, the plaintiff must identify a "specific alleged design defect or defects" that is or are "the 'but for' cause of . . . [the plaintiff's] injuries." *See Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 612 (Neb. 2019). Said differently, each Nebraska Plaintiff must do more than prove a product was "unreasonably dangerous"; he also must prove that Roundup "was in a defective condition when it was placed on the market" and that "**the defect** is the proximate or a proximately contributing cause" of his NHL. *Id.* at 609 (emphasis added). The Nebraska Plaintiffs have not and cannot meet this standard.

In sum and substance, this is a failure-to-warn case. Where a design defect claim is based on an alleged failure to warn, it merges with the claims for failure to warn. *See Freeman*, 618 N.W.2d at 843 ("two or more factually identical defective-design claims or two or more factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels") (quoting Third Restatement of Torts, Product Liability § 2, *comment n*). Thus, to the extent the alleged "defect" is a failure to warn, the Nebraska Plaintiffs' separate claim for design defect should be dismissed.

The Nebraska Plaintiffs have not offered competent evidence that a particular flaw in Roundup's design or formulation, as opposed to its labeling, caused their NHL. They generically allege that Roundup is "defective in design and formulation" and claim the unspecified defect could have been avoided through "safer alternative designs and formulations," (*see, e.g.*, Ex. 1, Domina Compl. ¶¶ 114.1, 114.8, 117.) But critically, they have failed to identify a specific defect

6

NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

1  responsible for the alleged cancer risk, or an alternative formulation that would have avoided it.
2  Given the Nebraska Plaintiffs failure to prove an essential element on their design defect claims,
3  Monsanto is entitled to summary judgment. *See Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*,
4  871 N.W.2d 776, 800 (Neb. 2015) (the defendant was entitled to summary judgment on design
5  defect claim because the plaintiff "failed to present evidence from which a jury could determine,
6  without resorting to speculation, that the [alleged design defect] was the proximate cause of the
7  alleged injury"); *Pitts*, 921 N.W.2d at 612 (the defendant was entitled to summary judgment on
8  design defect claim because the plaintiff's proffered expert testimony "was too speculative for a
9  jury to conclude that the specific alleged design defect or defects" caused the plaintiff's injuries).

      Although Nebraska law permits a plaintiff to rely on the "malfunction theory" in lieu of showing a specific defect, here the Nebraska Plaintiffs have not and cannot proceed under this theory. The malfunction theory allows a plaintiff to "prove a product defect circumstantially, without proof of a specific defect, when (1) the incident causing the harm was of a kind that would ordinarily occur only as a result of a product defect and (2) the incident was not, in the particular case, solely the result of causes other than a product defect existing at the time of sale or distribution." *Pitts*, 921 N.W.2d at 613. But the Nebraska Supreme Court has made clear that the malfunction theory is "narrow in scope" in that the plaintiff must expressly rely on it (for example, if they believe the defendant "tampered with the evidence"), and not use it as a back-up theory after unsuccessfully trying to identify a specific design defect. *See id.* at 614-15; *see also O'Brien*, 903 N.W.2d at 449 ("A plaintiff cannot simultaneously rely on the malfunction theory to establish an unspecified defect and, at the same time, point to evidence of specific defects.").

      Here, the Nebraska Plaintiffs have not expressly relied on the malfunction theory. They did not allege it in their complaint. (*See* Ex. 1, Domina Compl. ¶¶ 109-118.) Nor did they claim in discovery that Monsanto destroyed or tampered with evidence that may have helped them identify the alleged design defect. Instead, they alleged there was a specific defect with Roundup's formulation, but failed to offer evidence showing what the defect is or that it caused

7

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

their alleged injuries. As such, the malfunction theory does not apply. *See Pitts*, 921 N.W.2d at 614; *O'Brien*, 902 N.W.2d at 449.

### IV. THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THE NEBRASKA PLAINTIFFS HAVE NOT IDENTIFIED AN EXPRESS WARRANTY THAT WAS BREACHED.

To prove an express warranty claim under Nebraska law, the Nebraska Plaintiffs must establish that Monsanto made a "warranty," which is defined as "an affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain." *See Freeman*, 618 N.W.2d at 844 (Neb. 2000) (quoting Neb. U.C.C. § 2–313). A defendant is entitled to summary judgment if the plaintiff does not identify an "affirmation of fact" that constitutes an "express warranty" that the defendant could have breached. *See, e.g.*, *Vallejo v. Amgen, Inc.*, No. 8:14-cv-50, 2014 WL 4922901, at *8 (D. Neb. Sept. 29, 2014) (dismissing express warranty claim since the plaintiff did not identify a specific warranty made and only generically alleged the defendant warranted its product was "merchantable quality, fit, safe, and otherwise not injurious to the health,"); *Sherman v. Sunsong Am., Inc.*, 485 F. Supp. 2d 1070, 1088 (D. Neb. 2007) (dismissing express warranty claim since the plaintiff did not identify an "express affirmation" that constituted a warranty).

As in *Vallejo* and *Sherman*, the express warranty claims here fail because the Nebraska Plaintiffs have not identified an "affirmation of fact" that could give rise to a warranty claim. Far from identifying a warranty actually made by Monsanto, the Nebraska Plaintiffs merely repeat their failure-to-warn allegations and claim Monsanto should have disclosed that Roundup was potentially carcinogenic. (*See* Ex. 1, Domina Compl. ¶ 142 ("These express representations include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Roundup® and glyphosate."), ¶ 143 ("Monsanto placed its Roundup® products into the stream of commerce for sale and recommended use without adequately warning of the true risks . . .").) But an allegation that Monsanto omitted a warranty that should have been made does not support an express warranty claim under Nebraska law.

8

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

## V. THE IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE MERGED INTO THE STRICT LIABILITY CLAIMS.

Like their express warranty claims, the Nebraska Plaintiffs' implied warranty claims should also be dismissed because they are entirely duplicative of their strict liability failure to warn claim.  (*See* Ex. 1, Domina Compl. ¶ 149 ("Monsanto failed to disclose that Roundup® has dangerous propensities" and sold it "without disclosure that [its Roundup products] are probably carcinogenic to humans").)

Under Nebraska law, a plaintiff cannot proceed on an implied warranty claim that mirrors a claim for strict liability, whether based on a failure to warn (like here) or a design defect.  *See Freeman*, 618 N.W.2d at 842-43 (Neb. 2000) ("[W]hen an implied-warranty action cannot be distinguished from a strict-liability action under [the Second Restatement of Torts] § 402A, a comment-k defense operates as a defense to implied-warranty claims because these two theories of liability express a single basic public policy.") (quotation omitted); *see also id.* at 843 ("two or more factually identical defective-design claims or two or more factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels.") (quoting Third Restatement of Torts, Product Liability § 2, *comment n*).  Here, the implied warranty claims should be dismissed as duplicative since they are factually identical to the claims for failure to warn.  *See, e.g.*, *Rohrberg v. Zimmer, Inc.*, No. 8:05-cv-077, 2006 WL 3392178, at *2 (D. Neb. Oct. 24, 2006) (dismissing a claim for implied warranty based on a design defect because it is "merged into a claim for strict liability based on defective design").

## VI. THE FAILURE-TO-WARN CLAIMS SHOULD BE DISMISSED BECAUSE MONSANTO DID NOT HAVE A DUTY TO WARN OF THE ALLEGED CANCER RISKS AT THE TIME OF THE RELEVANT DISTRIBUTION.

To establish a duty to warn under Nebraska law, the Nebraska Plaintiffs must present competent evidence showing that Roundup's alleged risks of NHL were "foreseeable risks of harm" at the time Monsanto distributed the Roundup that allegedly caused their NHLs.  *See Freeman*, 618 N.W.2d at 841 (Neb. 2000) (quoting Third Restatement of Torts, Product Liability,

9

§ 2(c)); *see also Erickson v. U-Haul Int'l, Inc.*, 738 N.W.2d 453, 460 (Neb. 2007) (duty to warn only arises if the supplier "knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied") (quoting Restatement (Second) of Torts § 388). The Nebraska Plaintiffs also must show that their injury "reasonably flowed from the defendant's alleged breach of duty." *See Munstermann v. Alegent Health-Immanuel Med. Ctr.*, 716 N.W.2d 73, 87 (Neb. 2006). Applied here, the Nebraska Plaintiffs must show that Monsanto's duty to warn arose **before** it distributed the Roundup that allegedly caused their NHL.

The Nebraska Plaintiffs cannot make this showing. Plaintiffs Dickey, Domina, and Janzen were diagnosed with NHL in 2009, 2012, and 2013 respectively, and allege exposure to Roundup dating back to at least 1990. (Ex. 1, Domina Compl. ¶¶ 10, 12-13, 87, 97, 101). Plaintiff Pollard was diagnosed with NHL in 2016, and alleges exposure to Roundup since approximately 1988. *Id.* ¶¶ 11, 91). When the Nebraska Plaintiffs were diagnosed with NHL (and later), there was no "foreseeable" cancer risk associated with glyphosate, because the prevailing best scientific and medical knowledge confirmed its safety.

Notably, where, as here, the defendant has asserted a state-of-the-art defense,[3] the defendant is entitled to judgment on a failure-to-warn claim if it shows that the labeling "conformed with the generally recognized and prevailing state of the art in the industry" at the time of distribution. Neb. Rev. Stat. § 25-21,182; *see also* Nebraska Jury Instructions, 1 Neb. Prac., NJI2d Civ. 11.31 (a defendant proves the state-of-the-art defense if it shows the product's labeling "conformed with the generally recognized and prevailing state of the art in the industry" at the time of sale). In the context of a failure-to-warn claim, the state-of-the-art defense turns on "whether the manufacturer knew or should have known that the generally recognized and prevailing best scientific and medical evidence reasonably available at the time was finding an association between [the alleged injury] and [the product]." *See Menne v. Celotex Corp.*, 861 F.2d 1453, 1472 n. 34 (10th Cir. 1988) (applying Nebraska law).

---

[3] *See* Declaration of Brian Stekloff, Ex. 2, Monsanto's Answer and Affirmative Defenses in *Domina*, at 38, ¶ 7.

10
MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

As detailed in Monsanto's Motion for Summary Judgment on Non-Causation Grounds (MDL Dkt. 2419), which is incorporated here by reference, the generally recognized and prevailing best scientific evidence at the time the Nebraska Plaintiffs were exposed to Roundup—and today—does not support an association between glyphosate and NHL.

Indeed, in April 2019—years after all four Nebraska Plaintiffs were diagnosed with NHL—the EPA released a new decision detailing that "[t]he EPA thoroughly assessed risks to humans from exposure to glyphosate from all uses and all routes of exposure and **did not identify any risks of concern**." *See* Declaration of Brian Stekloff, Ex. 3 at 19 (EPA April 2019 Proposed Interim Registration Review Decision) (emphasis added). Even to this day, worldwide regulators do not consider glyphosate to be carcinogenic to humans at real-world doses, and the EPA expressly **prohibits** a carcinogenicity warning. Just three months ago, in August 2019, the EPA issued a letter to Monsanto and all other glyphosate registrants advising that a cancer warning on glyphosate products would be "false and misleading" and would render the products "misbranded" under federal law. *See* Declaration of Brian Stekloff, Ex. 4 (EPA August 2019 Letter).

Finally, Monsanto notes that the Nebraska Plaintiffs repeatedly point to IARC's 2015 listing of glyphosate as a probable human carcinogen to support their failure-to-warn claims. While Monsanto disputes that IARC's listing created a duty to warn (*see* MDL Dkt. 2419), even if the Nebraska Plaintiffs could create a jury question on that issue, Monsanto would still be entitled to summary judgment on the claims asserted by Plaintiffs Dickey, Domina, and Janzen—all of whom were diagnosed with NHL years **before** IARC's 2015 publication.

**VII. THE NEBRASKA PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES.**

"The general rule in Nebraska is that a party may not recover attorney fees, unless such an award is authorized by statute, or when a recognized and accepted uniform course of procedure allows recovery." *Rosse v. Rosse*, 510 N.W.2d 73, 79 (Neb. 1994). Yet, despite requesting attorney fees in their complaints, the Nebraska Plaintiffs fail to plead grounds, and have no grounds, to recover attorneys' fees under any statute or uniform course of procedure. As such, the

11

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

1  general rule disallowing attorneys' fees applies, and the Nebraska Plaintiffs should not be
2  permitted to seek attorneys' fees at trial.

### CONCLUSION

For the reasons explained above, Monsanto respectfully requests that the Court grant its motion for summary judgment, and enter judgment in Monsanto's favor on all of the Nebraska Plaintiffs' claims.

12

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

| | | |
|---|---|---|
| 1 | DATED: November 26, 2019 | Respectfully submitted, |
| 2 | | /s/ Brian L. Stekloff |
| 3 | | |
| | | Brian L. Stekloff (*pro hac vice*) |
| 4 | | (bstekloff@wilkinsonwalsh.com) |
| | | Rakesh Kilaru (*pro hac vice*) |
| 5 | | (rkilaru@wilkinsonwalsh.com) |
| | | WILKINSON WALSH + ESKOVITZ LLP |
| 6 | | 2001 M St. NW, 10th Floor |
| | | Washington, DC 20036 |
| 7 | | Tel: 202-847-4030 |
| | | Fax: 202-847-4005 |
| 8 | | |
| | | Pamela Yates (CA Bar No. 137440) |
| 9 | | (Pamela.Yates@arnoldporter.com) |
| 10 | | ARNOLD & PORTER KAYE SCHOLER LLP |
| | | 777 South Figueroa St., 44th Floor |
| 11 | | Los Angeles, CA 90017 |
| | | Tel: 213-243-4178 |
| 12 | | Fax: 213-243-4199 |
| 13 | | |
| | | Eric G. Lasker (*pro hac vice*) |
| 14 | | (elasker@hollingsworthllp.com) |
| | | HOLLINGSWORTH LLP |
| 15 | | 1350 I St. NW |
| | | Washington, DC 20005 |
| 16 | | Tel: 202-898-5843 |
| | | Fax: 202-682-1639 |
| 17 | | |
| 18 | | Michael X. Imbroscio (*pro hac vice*) |
| | | (mimbroscio@cov.com) |
| 19 | | COVINGTON & BURLING LLP |
| | | One City Center |
| 20 | | 850 10th St. NW |
| | | Washington, DC 20001 |
| 21 | | Tel: 202-662-6000 |
| 22 | | |
| | | Attorneys for Defendant |
| 23 | | MONSANTO COMPANY |

13

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of November, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

<div style="text-align:right">/s/ Brian L. Stekloff</div>

14

MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE:
NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS