# EXHIBIT 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

LARRY E DOMINA, FRANK POLLARD,
ROBERT L. DICKEY, and ROYCE D.
JANZEN,

        Plaintiffs,

    v.

MONSANTO COMPANY,

        Defendant.

Case No.: 4:16-cv-03074-JMG-CRZ

**JURY TRIAL DEMANDED**

## MONSANTO COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Larry Domina's, Frank Pollard's, Robert Dickey's, and Royce Janzen's Complaint and Jury Demand ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1. In response to the allegations in Paragraph 1, Monsanto admits that it sells and produces Roundup® branded herbicides for various uses and that certain of these herbicides contain POEA and adjuvants. Monsanto admits that the United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto also admits that glyphosate is a non-selective herbicide and that certain Roundup® branded herbicides are used to kill weeds that commonly compete with growing crops. Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not

1

the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of Paragraph 1 and therefore denies those allegations.

2.      In response to the allegations in paragraph 2, Monsanto admits that its glyphosate products are approved for use on over 100 different crops. Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto otherwise denies the allegations in paragraph 2.

3.      In response to the allegations in paragraph 3, Monsanto admits that, on July 29, 2015, a "working group" of the World Health Organization's International Agency for Research on Cancer ("IARC") issued a monograph relating to glyphosate, but Monsanto denies that the monograph was "peer-reviewed." Monsanto denies the allegations in paragraph 3 to the extent that they suggest that IARC based its evaluation on a thorough, complete or accurate assessment of the scientific research regarding glyphosate. Regarding the remaining allegations in paragraph 3, the document speaks for itself and does not require an answer. To the extent an answer is required, the remaining allegations in paragraph 3 comprise attorney characterizations and are accordingly denied.

4.      In response to the allegations in paragraph 4, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Regarding the remaining allegations in paragraph 4, the document speaks for itself and does not require an answer. To the extent an answer is required, the remaining allegations in paragraph 4 comprise attorney characterizations and are accordingly denied.

5.      In response to the allegations in Paragraph 5, Monsanto admits that the scientific evidence does not support the finding of a causal link between glyphosate and "blood borne and other diseases" to humans. Monsanto otherwise denies the allegations in paragraph 5.

6.      In response to the allegations in paragraph 6, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that EPA repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 6 alleges that Monsanto has labeled glyphosate or Roundup® in any manner different or in addition to such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in paragraph 6.

7.      Monsanto admits the allegations in paragraph 7.

8.      Monsanto denies the allegations in the first and second sentences of paragraph 8. Monsanto admits that it has facilities and employees at the locations identified in the third sentence of paragraph 8 in support of its biotech seed business and that it engages in sales activities in Nebraska. Monsanto denies the remaining allegations in paragraph 8.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 9 and therefore denies the allegations in the first sentence of paragraph 9. Monsanto denies that it is subject to general personal jurisdiction in Nebraska.

10.     Monsanto denies the allegations in the first clause of the third sentence of paragraph 10 ("In view of Monsanto's practice of continuing denial") and admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 and therefore denies the remaining allegations in paragraph 10.

11.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies the allegations in paragraph 11.

12.     Monsanto denies the allegations in the first clause of the third sentence of paragraph 12 ("In view of Monsanto's practice of continuing denial") and Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 and therefore denies the remaining allegations in paragraph 12.

13.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies the allegations in paragraph 13.

14.     Monsanto admits the first sentence of paragraph 14.

15.     In response to the allegations in Paragraph 15, Monsanto denies that plaintiffs' claims arise from a common nucleus of facts, transactions and occurrences and denies that joinder of plaintiffs' claims is proper in this case.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding plaintiffs' claimed exposures and injuries, but denies that these alleged similarities would be sufficient to support joinder of their claims.  Monsanto denies the remaining allegations in paragraph 15.

16.     In response to the allegations in paragraph 16, Monsanto admits that it is a publicly traded company and that Monsanto and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 16.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improve a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 16, and therefore denies those allegations.

17.     Monsanto admits the allegations in the first sentence of paragraph 17.  Monsanto states that the allegations in the final sentence of paragraph 17 are vague and ambiguous and therefore Monsanto denies those allegations.

18.     Monsanto admits the allegations in the first sentence of paragraph 18.  Monsanto denies the allegations in the second sentence of paragraph 18 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the final sentence of paragraph 18 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the EPA.

19.     In response to the allegations in paragraph 19, Monsanto admits that farmers have safely used Roundup® branded products since the 1970s.  Monsanto denies the other allegations in paragraph 19.

20.    Monsanto denies the allegations in the first three sentences of paragraph 20 and states in further response that, following a May 9-13, 2016 joint meeting, the World Health Organization and United Nations Food and Agricultural Organization reaffirmed their conclusion that "[i]n view of the absence of carcinogenic potential in rodents at human-relevant doses and the absence of genotoxicity by the oral route in mammals, and considering the epidemiological evidence from occupational exposures ... glyphosate is unlikely to pose a carcinogenic risk to humans from exposure through the diet."[1]  Monsanto states that the allegations in the fourth and fifth sentences of paragraph 20 are vague and ambiguous insofar as they do not specify to which groups within the World Health Organization ("WHO") they refer and therefore Monsanto denies those allegations.  In response to the allegations in the sixth and seventh sentences of Paragraph 20, Monsanto admits that IARC is a subgroup of the WHO and that the seventh sentence accurately quotes from a document maintained on the IARC website.  Monsanto denies the allegations that IARC's monographs are "peer reviewed and approved findings" and denies the suggestion that the IARC working group conducts any independent studies.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the sixth and seventh sentences of paragraph 20 and therefore denies those allegations.

21.    In response to the allegations in paragraph 21, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 21.

22.    In response to the allegations in paragraph 22, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that the "working group"

---

[1] Joint FAO/WHO Meeting on Pesticide Residues, Geneva, 9-13 May 2016, Summary Report (issued 16 May 2016), available at http://www.who.int/foodsafety/jmprsummary 2016.pdf?ua=1.

classified glyphosate as a Group 2A herbicide. Monsanto denies that the working group conducted a thorough review of the studies and data relating to glyphosate and denies that the monograph was "peer reviewed." Monsanto denies the remaining allegations in paragraph 22.

23.     In response to the allegations in Paragraph 23, Monsanto admits that the scientific evidence does not support the finding of a causal link between glyphosate and "blood borne and other diseases" to humans. Monsanto otherwise denies the allegations in paragraph 23.

24.     In response to the allegations in Paragraph 24, Monsanto admits that the scientific evidence establishes that Roundup® branded herbicides are safe for humans when used according to their labeling. Monsanto denies that "the WHO" considers glyphosate "a probable cause of NHL," and notes that, among other contrary pronouncements by the WHO, at the May 9-13, 2016 joint meeting, the WHO and United Nations Food and Agricultural Organization reaffirmed their conclusion that "[i]n view of the absence of carcinogenic potential in rodents at human-relevant doses and the absence of genotoxicity by the oral route in mammals, and considering the epidemiological evidence from occupational exposures ... glyphosate is unlikely to pose a carcinogenic risk to humans from exposure through the diet."[2] Monsanto denies the remaining allegations in paragraph 24.

25.     Monsanto admits the allegations in the first two sentences of paragraph 25 and admits that it has marketed Roundup® branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto admits that certain Roundup® branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup® branded herbicides – like those in other

_____

[2] Joint FAO/WHO Meeting on Pesticide Residues, Geneva, 9-13 May 2016, Summary Report (issued 16 May 2016), available at http://www.who.int/foodsafety/jmprsummary 2016.pdf?ua=1.

manufacturers' herbicide products – are protected by EPA as "trade secrets." Monsanto notes that EPA has determined that the surfactants used in Roundup® branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 25.

26.     Monsanto admits the allegations in paragraph 26.

27.     Monsanto states that the allegations in the first sentence of paragraph 27 are vague and ambiguous, and therefore Monsanto denies those allegations. Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 27 set forth conclusions of law for which no response is required.

28.     The allegations in paragraph 28 set forth conclusions of law for which no response is required.

29.     Monsanto denies that it manufactures Roundup in Nebraska but otherwise admits the allegations in the first sentence paragraph 29. In response to the remaining allegations in paragraph 29, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety. Monsanto states that the term "the product tests" in the final sentence of paragraph 29 is vague and ambiguous, and it therefore denies the same. The remaining allegations in paragraph 29 set forth conclusions of law for which no response is required.

30.      Monsanto denies the allegations in paragraph 30 to the extent they suggest that

EPA only evaluates the safety of pesticide products on the date of their initial registration.

Monsanto admits that EPA is in the process of conducting re-registration of various pesticide

products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

of the allegations in paragraph 30 regarding such pesticide products generally. The remaining

allegations in paragraph 30 set forth conclusions of law for which no response is required.

31.      In response to the allegations in the first sentence of paragraph 31, Monsanto

admits that EPA has undertaken a review of glyphosate for purposes of re-registration and that

EPA has not released its final findings. Monsanto states, however, that in October 2015, EPA's

standing Cancer Assessment Review Committee ("CARC") issued an 87-page final report

evaluating the carcinogenic potential of glyphosate, in which it endorsed EPA's existing

classification of glyphosate as not likely to be carcinogenic to humans.[3] Monsanto denies the

allegations in the final sentence of paragraph 31.

32.      In response to the allegations in paragraph 32, Monsanto admits that an EPA

review committee classified glyphosate as Group C in 1985 based on limited data and that EPA

changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits

that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with

respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded

that glyphosate does not pose any cancer risk to humans. Specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that
  shows evidence of non-carcinogenicity for humans—based on the lack of

---

[3] EPA posted the CARC's final report on its website in late April 2016 but took the report off its
website in early May 2016 because EPA has not completed its cancer review of glyphosate.

9

convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 32.

33.     In response to the allegations in paragraph 33, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto admits that Industrial Bio-Test Laboratories ("IBT") was hired to conduct studies in connection with the registration of a Roundup® branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

10

34.     Monsanto denies the allegations in paragraph 34 to the extent they suggest that FDA performed an inspection of IBT laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 34 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations.  Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

35.     In response to the allegations in paragraph 35, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 35 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations.

11

36.     In response to the allegations in paragraph 36, Monsanto admits that Roundup® branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     In response to the allegations in paragraph 37, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990's and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 37 and accordingly denies those allegations. The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

38.     In response to the allegations in paragraph 38, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 38 and accordingly denies those allegations. The remaining allegations in paragraph 38 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

39.     In response to the allegations in paragraph 39, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup® products. This lawsuit was subsequently resolved without any

admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.

40.    In response to the allegations in paragraph 40, Monsanto admits it entered into an assurance of discontinuance with the NYAG. The assurance speaks for itself and thus does not require any further answer.

41.    Monsanto denies the allegations in paragraph 41.

42.    In response to the allegations in paragraph 42, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 42 to the extent they suggest that this ruling was in any way related to plaintiffs' claims here that glyphosate can cause cancer.

43.    In response to the allegations in paragraph 43, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in the second and third sentences of paragraph 43, and accordingly denies those allegations. Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 43.

44.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 44 and therefore denies the allegations in paragraph 44.

45.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 45 and therefore denies the allegations in paragraph 45. Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph.

46.     In response to the allegations in paragraph 46, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent that the allegations in paragraph 47 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations. To the extent that the allegations in the final sentence of paragraph 47 mean that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations.

48.     In response to the allegations in the first two sentences of paragraph 48, Monsanto admits that the IARC working group identified a number of case control studies of populations

14

with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures. Monsanto denies the remaining allegations in paragraph 48. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

49.     In response to the allegations in the first two sentences of paragraph 49, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion. In response to the remaining allegations in paragraph 49, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto otherwise denies the remaining allegations in paragraph 49.

50.     In response to the allegations in the first three sentences of paragraph 50, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine. In response to the allegations in the fourth sentence of paragraph 50, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but

15

Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. In response to the allegations in the last two sentences of paragraph 50, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto otherwise denies the remaining allegations in paragraph 50.

51. In response to the allegations in paragraph 51, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 51.

52. Monsanto admits that paragraph 52 accurately quotes from the identified document, which should be read in the context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

53. Monsanto states that the term "toxic" as used in paragraph 53 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require an answer. To the extent an answer is required, Monsanto denies the allegations in paragraph 53. Monsanto otherwise denies the remaining allegations in paragraph 53.

16

54.     In response to the allegations in the first sentence of paragraph 54, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004. To the extent the first sentence of paragraph 54 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 54. In response to the remaining allegations in paragraph 54, Monsanto states that the document speaks for itself and does not require an answer. To the extent an answer is required, Monsanto denies the remaining allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto states that the cited document speaks for itself and does not require an answer. To the extent paragraph 55 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto states that the cited document speaks for itself and does not require an answer. To the extent paragraph 56 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in Paragraph 57, Monsanto admits that it was aware of the publications identified in paragraphs 53-56 but denies plaintiffs' characterization of those studies. Monsanto denies the allegations in the second sentence of paragraph 57. In response to the allegations in the final sentence of paragraph 57, Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded herbicides as safe when used in accordance with the product's labeling. Monsanto denies the remaining allegations in the final sentence of paragraph 57.

17

58.     In response to the allegations in paragraph 58, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands. Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto otherwise denies the allegations in paragraph 58.

59.     In response to the allegations in the first sentence of paragraph 59, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate. In response to the allegations in the second sentence of paragraph 59, Monsanto admits that following the IARC working group classification, in France, all non-professional plant protection products, including but not limited to glyphosate-based products, will be sold behind locked counters (no free sales). Monsanto further admits that the French government has announced that, beginning on January 1, 2019, the sale of non-professional lawn and garden products, including but not limited to non-professional use glyphosate-based products, is prohibited with certain exceptions. Monsanto otherwise denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies those allegations. Monsanto otherwise denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity. Monsanto otherwise denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States recently excluded expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto otherwise denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto admits that California's Office of Environmental Health Hazard Assessment ("OEHHA") published a notice of intent to include glyphosate on its Proposition 65 listing and admits that this notice was not based upon any independent scientific analysis of glyphosate but instead was in response to a section of the Labor Code triggering such action based solely upon the IARC classification. Monsanto further states that OEHHA concluded in 2007, based upon its own independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4] The

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), http://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

remaining allegations are conclusions of law for which no response is required. To the extent that a response is required, Monsanto denies the allegations in paragraph 63.

64. Paragraph 64 sets forth conclusions of law for which no response is required.

65. In response to the allegations in Paragraph 65, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list and admits that plaintiffs accurately quote from Monsanto's complaint in that lawsuit. Monsanto's complaint in that lawsuit speaks for itself. Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5] The remaining allegations in paragraph 65 comprise attorney characterizations and are accordingly denied.

66. In response to the allegations in Paragraph 66, Monsanto admits that, on November 12, 2015, the European Food Safety Authority issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[6] Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR). Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

---

[5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), http://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

[6] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

67.     In response to the allegations in Paragraph 67, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 67.

68.     Monsanto admits the allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto states that the cited document speaks for itself and does not require an answer.  Monsanto denies the allegations in paragraph 69 to the extent they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiffs, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumour incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[7] To the extent that paragraph 69 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate based herbicides.  Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.  Monsanto denies the remaining allegations in paragraph 70.

---

[7] EFSA, *EFSA Explains Risk Assessment Glyphosate*,
www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate15111
2en.pdf.

71.　In response to the allegations in Paragraph 71, Monsanto admits that Dr. Christopher Portier sent the letter identified in paragraph 71 (hereinafter "the Portier letter"). Monsanto states that Dr. Portier has subsequently admitted that he is working as a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto.　Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field."　Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware at the time that Dr. Portier was working as a consultant for plaintiffs' counsel. Monsanto admits that, in this letter, Dr. Portier urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

72.　In response to the allegations in paragraph 72, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.　Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[8]　To the extent that paragraph 72 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 72.

73.　In response to the allegations in paragraph 73, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not

---

[8] See EFSA, Glyphosate: EFSA updates toxicological profile,
http://www.efsa.europa.eu/en/press/news/151112.

22

be ruled out with reasonable confidence."[9]  Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  In response to the remaining allegations in paragraph 73, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.  To the extent that paragraph 73 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.  Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11]  To the extent that paragraph 74 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 74.

75.     In response to the allegations in paragraph 75, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.  Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support

---

[9] http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php.

[10] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12] To the extent that paragraph 75 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 75.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited document speaks for itself and does not require an answer. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 76 characterizes the scientific evidence regarding the safety of glyphosate based herbicides, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77 and its subparts, Monsanto states that the cited document speaks for itself and does not require an answer. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 77 characterizes the scientific evidence regarding the safety of glyphosate based herbicides, Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto states that the cited document speaks for itself and does not require an answer. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 78 characterizes the scientific evidence regarding the safety of glyphosate based herbicides, Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto states that the cited document speaks for itself and does not require an answer. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent

---

[12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

the paragraph 79 characterizes the scientific evidence regarding the safety of glyphosate based herbicides, Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto states that the cited document speaks for itself and does not require an answer. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 80 characterizes the scientific evidence regarding the safety of glyphosate based herbicides, Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues. Monsanto further admits that the U.S. Government Accounting Office issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate. In response to the remaining allegations in paragraph 81, Monsanto states that the cited documents speak for themselves and do not require an answer. To the extent that paragraph 81 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the March 7-8, 2016 meeting were "experts" and therefore denies that allegation. Monsanto admits the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto states that the cited document speaks for itself and does not require an answer. To the extent that paragraph 83 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto states that the cited document speaks for itself and does not require an answer. To the extent that paragraph 84 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 84.

85.     Monsanto admits the allegations in paragraph 85.

86.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 86 and therefore denies the allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health. In response to the allegations in the last sentence of paragraph 87, Monsanto incorporates by reference its responses to paragraphs 1-86 and all of the responses and defenses set forth below. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 and therefore denies the remaining allegations in paragraph 87.

88.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 88 and therefore denies the allegations in paragraph 88.

89.     In response to the allegations in paragraph 89, Monsanto denies that Roundup® branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup® branded products was injurious to plaintiff's health or the health of others. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 89 and therefore denies the remaining allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto denies that any exposure to Roundup® branded products caused plaintiff's alleged NHL or other alleged damages.

Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 90 and therefore denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health. In response to the allegations in the last sentence of paragraph 91, Monsanto incorporates by reference its responses to paragraphs 1-90 and all of the responses and defenses set forth below. Monsanto states that the allegation that "Roundup Ready® seed was and is, the most widely used herbicide in corn and soybean ..." is vague and ambiguous and accordingly denies the same. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 and therefore denies the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto denies that any exposure to Roundup® branded products can cause NHL or is otherwise harmful to human health. Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 92 and therefore denies the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health or is otherwise carcinogenic. Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

27

remaining allegations in paragraph 93 and therefore denies the remaining allegations in paragraph 93.

94.     In response to the allegations in paragraph 94, Monsanto denies that any exposure to Roundup® branded products can cause NHL or is otherwise carcinogenic. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 94 and therefore denies the remaining allegations in paragraph 94.

95.     In response to the allegations in paragraph 95, Monsanto denies that any exposure to Roundup® branded products caused plaintiff's alleged NHL or other alleged damages. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 95 and therefore denies the remaining allegations in paragraph 95.

96.     In response to the allegations in paragraph 96, Monsanto denies that any exposure to Roundup® branded products can cause NHL. Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling. In response to the allegations in the last sentence of paragraph 96, Monsanto incorporates by reference its responses to paragraphs 1-90 and all of the responses and defenses set forth below. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 96 and therefore denies the remaining allegations in paragraph 96.

97.     In response to the allegations in paragraph 97, Monsanto denies that any exposure to Roundup® branded products can cause NHL. Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling. Monsanto lacks information or knowledge sufficient to

form a belief as to the truth of the remaining allegations in paragraph 97 and therefore denies the remaining allegations in paragraph 97.

98.     In response to the allegations in paragraph 98, Monsanto denies that any exposure to Roundup® branded products can cause NHL.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 and therefore denies the remaining allegations in paragraph 98.

99.     In response to the allegations in paragraph 99, Monsanto denies that any exposure to Roundup® branded products caused plaintiff's alleged NHL or other alleged damages. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 99 and therefore denies the remaining allegations in paragraph 99.

100.    In response to the allegations in paragraph 100, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health.  Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded products as safe when used in accordance with the product's labeling.  In response to the allegations in the last sentence of paragraph 100, Monsanto incorporates by reference its responses to paragraphs 1-99 and all of the responses and defenses set forth below.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 100 and therefore denies the remaining allegations in paragraph 100.

101.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 101 and therefore denies the allegations in paragraph 101.

102.    Monsanto denies that any exposure to Roundup® branded products can cause NHL.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

29

allegations in paragraph 102 and therefore denies the allegations in paragraph 102.

103. In response to the allegations in paragraph 103, Monsanto denies that any exposure to Roundup® branded products caused plaintiff's alleged NHL or other alleged damages. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 103 and therefore denies the remaining allegations in paragraph 103.

104. In response to the allegations in paragraph 104, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup® and glyphosate and denies that glyphosate is injurious to human health. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification for glyphosate were all publicly available before July 2015. Monsanto denies the allegations in the final sentence of paragraph 104. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 104 and therefore denies the remaining allegations in paragraph 104.

104.1. In response to the allegations in Paragraph 104.1, Monsanto admits that Roundup® branded products are safe for use in accordance with the labeling; that the scientific evidence does not support any causal link between Roundup® branded products and "blood born cancers" or NHL; and that Monsanto has made statements to that effect in accordance with EPA regulation under FIFRA. Monsanto denies the remaining allegations in paragraph 104.1.

104.2. Monsanto denies the allegations in paragraph 104.2.

105. In response to the allegations in Paragraph 105, Monsanto admits that it has made statements with respect to the safety of Roundup in accordance with EPA regulation under

FIFRA. Monsanto states that the first sentence in paragraph 105 sets forth conclusions of law for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 105 and therefore denies the remaining allegations in paragraph 105.

106.    In response to the allegations in the first sentence of paragraph 106, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup® and glyphosate. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification for glyphosate were all publicly available before July 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 106 and therefore denies those allegations. The final sentence of paragraph 106 sets forth conclusions of law for which no response is required.

107.    The first sentence of paragraph 107 sets forth conclusions of law for which no response is required. Monsanto denies the allegations in the final sentence of paragraph 107.

108.    Monsanto denies the allegations in the first sentence of paragraph 108. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 108 and therefore denies those allegations.

109.    In response to the first sentence of paragraph 109, Monsanto incorporates by reference its responses to paragraphs 1 through 108. In response to the final sentence of paragraph 109, Monsanto admits that plaintiffs purport to bring claims for strict liability design defect.

110.    In response to the allegations in paragraph 110, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs used

31

Roundup® products and therefore denies that allegation. Monsanto denies the remaining allegations in paragraph 110.

111. Monsanto denies the allegations in paragraph 111.

112. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 and therefore denies the allegations in paragraph 112.

113. Monsanto denies the allegations in paragraph 113.

114. Monsanto denies the allegations in paragraph 114 and each of its subparts.

115. In response to the allegations in the first sentence of paragraph 115, Monsanto denies that Roundup® branded products have "dangerous characteristics." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 115 and therefore denies those allegations. Monsanto denies the final sentence of paragraph 115.

116. Monsanto denies the allegations in paragraph 116.

117. Monsanto denies the allegations in paragraph 117.

118. Monsanto denies the allegations in paragraph 118.

119. In response to the first sentence of paragraph 119, Monsanto incorporates by reference its responses to paragraphs 1 through 118. In response to the final sentence of paragraph 119, Monsanto admits that plaintiffs purport to bring claims for strict liability failure to warn.

120. Monsanto denies the allegations in paragraph 120. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

121. Monsanto denies the allegations in paragraph 121.

32

122.    Paragraph 122 sets forth conclusions of law for which no response is required. To the extent that a response is required, Monsanto denies the allegations in paragraph 122.

123.    Monsanto denies the allegations in paragraph 123. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

124.    Monsanto denies the allegations that Roundup® branded products have dangerous propensities and accordingly denies the allegations in paragraph 124.

125.    Monsanto denies the allegations in paragraph 125.

126.    Monsanto denies the allegation that Roundup® products are dangerous when used in a reasonably foreseeable manner. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 126 and therefore denies the allegations in paragraph 126. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

127.    Monsanto denies the allegations in paragraph 127. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

128.    Monsanto denies the allegations in paragraph 128. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

129.    Monsanto denies the allegations in paragraph 129. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

130.     In response to the first sentence of paragraph 130, Monsanto incorporates by reference its responses to paragraphs 1 through 129. In response to the final sentence of paragraph 130, Monsanto admits that plaintiffs purport to bring claims for negligence.

131.     Monsanto denies the allegations in paragraph 131.

132.     Monsanto denies the allegations in paragraph 132.

133.     Monsanto denies the allegations in paragraph 133 to the extent they suggest that Monsanto has not conducted safety studies on Roundup® branded products or on the surfactants and adjuvants used in Roundup® branded products or that Monsanto used surfactants or adjuvants in Roundup® branded products that were not approved by EPA under FIFRA. Monsanto further states that the word "toxic" as used in paragraph 133 is vague and ambiguous and therefore denies that allegation. Monsanto denies the remaining allegations in paragraph 133.

134.     Monsanto denies the allegations in paragraph 134. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

135.     Monsanto denies the allegations in paragraph 135.

136.     Monsanto denies the allegations in paragraph 136, including each of its subparts.

137.     Monsanto denies the allegations in paragraph 137.

138.     Monsanto denies the allegations in paragraph 138.

139.     In response to the first sentence of paragraph 139, Monsanto incorporates by reference its responses to paragraphs 1 through 138. Monsanto denies the allegations in the second sentence of paragraph 139 to the extent it encompasses all herbicides as vague and ambiguous but Monsanto admits the allegations in this sentence to the extent it refers to

glyphosate based herbicides. In response to the final sentence of paragraph 139, Monsanto admits that plaintiffs purport to bring claims for breach of express warranty. Monsanto denies the allegations that Roundup® branded products are defective and unreasonably dangerous to consumers and therefore denies the remaining allegations in paragraph 139.

140. Paragraph 140 and its subparts set forth conclusions of law for which no response is required.

141. In response to the allegations in Paragraph 141, Monsanto admits that it has sold glyphosate based herbicides in accordance with their EPA-approved labeling. Monsanto further states that paragraph 141 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 141.

142. Monsanto denies the allegations in the first and second sentence of paragraph 142. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto states that the final sentence of paragraph 142 sets forth conclusions of law for which no response is required.

143. The first sentence of paragraph 143 sets forth conclusions of law for which no response is required. Monsanto denies the allegations in the final sentence of paragraph 143.

144. Monsanto denies the allegations in paragraph 144 and each of its subparts.

145. Monsanto states that the allegation in paragraph 145 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 145 and therefore denies those allegations.

146. Monsanto denies the allegations in paragraph 146 to the extent that they allege that Monsanto made false or incomplete statements and representations concerning Roundup®.

35

All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 regarding plaintiffs' knowledge and therefore denies those allegations.

147. In response to the first sentence of paragraph 147, Monsanto incorporates by reference its responses to paragraphs 1 through 146. In response to the final sentence of paragraph 147, Monsanto admits that plaintiffs purport to bring claims for breach of implied warranty.

148. Paragraph 148 sets forth conclusions of law for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 148 regarding the alleged use and exposure by plaintiffs and therefore denies those allegations. To the extent that paragraph 148 includes allegations about "Plaintiff Sanders's employers," those allegations do not apply to this lawsuit, so Monsanto does not respond to those allegations.

149. In response to the allegations in Paragraph 149, Monsanto admits that it sells Roundup® branded herbicides and states that all labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies that Roundup® branded herbicides have dangerous propensities to humans when used as directed or carry an increased risk of developing severe injuries, including the plaintiffs' injuries. Monsanto states that the third and fourth sentences of paragraph 149 set forth conclusions of law for which no response is required. Monsanto denies the allegation in the final sentence of paragraph 149 regarding "concealed risks." Monsanto otherwise lacks information

36

or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph

149 and therefore denies those allegations.

150.    Monsanto denies the allegations in paragraph 150.

In response to the allegations in the section titled "Requests for Relief," Monsanto denies

that plaintiffs are entitled to the relief sought therein, including any judgment for any damages,

interest, costs, or any other relief whatsoever.  Monsanto demands that judgment be entered in its

favor and against plaintiffs and that the Complaint be dismissed, with prejudice, and that

Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such

further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this

Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following separate and

affirmative defenses should be available to Monsanto in this matter.  Monsanto accordingly

preserves the right to assert these affirmative defenses.  As discovery proceeds, if the facts

warrant, Monsanto reserves the right to amend its answer and affirmative defenses, and to assert

additional defenses.

Further answering, and by way of additional defense, Monsanto states as follows:

1.    The Complaint, in whole or part, fails to state claims or causes of action against

Monsanto upon which relief can be granted.

2.    The doctrine contained in Restatement (Second) of Torts § 402A, comments j and

k, bar plaintiffs' claims against Monsanto in whole or in part.

3.    Applicable statutes of limitations bar plaintiffs' claims in whole or in part.

4.      Applicable periods or statutes of repose bar plaintiffs' claims in whole or in part.

5.      Plaintiffs' misuse or abnormal use of the product or failure to follow instructions bar the plaintiffs' claims in whole or in part.

6.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

7.      Plaintiffs' claims are barred in whole or in part pursuant to Neb. Rev. Stat. § 25-21,182 because the design, testing, or labeling of the products at issue was in conformity with the generally recognized and prevailing state of the art in the industry at the time the specific products involved in this action were first sold to any person not engaged in the business of selling such product.

8.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

9.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup® branded and/or glyphosate-containing products.

10.     Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including the authority delegated by Congress to the U.S. EPA.

12.     Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

13.     If plaintiffs suffered injury or damages as alleged, which is denied, such injury or damage resulted from acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

14.     Monsanto has no current or former legal relationship or privity with plaintiffs and owes no duty to plaintiffs by which liability could be attributed to it.

15.     Plaintiffs' claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

16.     Plaintiffs' claims for punitive damages are barred because punitive damages are not recoverable under Nebraska law and the Nebraska Constitution.

17.     Plaintiffs' claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Nebraska Constitution, and/or other applicable state constitutions.

18.     The negligence of plaintiffs proximately caused or contributed to any injuries or damages of plaintiffs.  Therefore, plaintiffs' recovery should be reduced in proportion to plaintiffs' negligence and any recovery by plaintiffs should be barred if the plaintiffs' negligence

is equal to or greater than the total negligence of all persons against whom recovery is sought. In the event Monsanto is found jointly or severally liable with any other tortfeasor or with multiple tortfeasors, Monsanto reserves its right of contribution to the extent that it has to pay more than Monsanto's pro rata share of the common liability consistent with the provisions set forth in the Nebraska Comparative Negligence Act, Neb. Rev. Stat. § 25-21, 185.10 and other applicable law.

19.     Plaintiffs' causes of action are barred in whole or in part by plaintiffs' own failure to mitigate damages.

20.     Plaintiffs' causes of action are barred in whole or in part by the sophisticated user doctrine.

21.     Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs receive from collateral sources.

22.     If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

23.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

### JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

Dated: June 3, 2016

Respectfully submitted,

MONSANTO COMPANY, Defendant

By /s/ Michael K. Huffer
        Michael K. Huffer – 18087
        Ronald F. Krause – 159890
OF:    Cassem, Tierney, Adams,
        Gotch & Douglas
        9290 West Dodge Road, #302
        Omaha, Nebraska 68114
        402.390.0300
        mhuffer@ctagd.com
        rkrause@ctagd.com

and

Joe G. Hollingsworth (*pro hac vice* anticipated)
(jhollingsworth@hollingsworthllp.com)
Martin Calhoun (*pro hac vice* anticipated)
(mcalhoun@hollingsworthllp.com
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639

*Attorneys for Defendant*
*Monsanto Company*

41

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David A. Domina, ddomina@dominalaw.com
Domina Law Group
2425 South 144th Street
Omaha, Nebraska 68144

Robin L. Greenwald, rgreenwald@weitzlux.com
Maja Lukic, mlukic@weitzlux.com
700 Broadway
New York, New York 10003

/s/ Michael K. Huffer