**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No.: 3:16-cv-05658-VC<br><br>MDL No. 2741<br><br>**DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES BENBROOK**<br><br>Hearing date: Jan. 29, 2020<br>Time: |
| *Dickey v. Monsanto Co.*, 3:19-cv-04102-VC<br>*Domina v. Monsanto Co.*, 3:16-cv-05887-VC<br>*Giglio v. Monsanto Co.*, 3:16-cv-05658-VC<br>*Janzen v. Monsanto Co.*, 3:19-cv-04103-VC<br>*Mendoza v. Monsanto Co.*, 3:19-cv-06046-VC<br>*Perkins v. Monsanto Co.*, 3:16-cv-06025-VC<br>*Pollard v. Monsanto Co.*, 3:19-cv-04100-VC<br>*Russo v. Monsanto Co.*, 3:16-cv-06024-VC<br>*Sanders v. Monsanto Co.*, 3:16-cv-05752-VC<br>*Tanner v. Monsanto Co.*, 3:19-cv-04099-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on January 29, 2020, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Charles Benbrook. Monsanto seeks an order excluding opinion of this witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

DATED: November 26, 2019

                  Respectfully submitted,

                  /s/ *Brian L. Stekloff*_____
                  Brian L. Stekloff (*pro hac vice*)
                  (bstekloff@wilkinsonwalsh.com)
                  Rakesh Kilaru (*pro hac vice*)
                  (rkilaru@wilkinsonwalsh.com)
                  WILKINSON WALSH + ESKOVITZ LLP
                  2001 M St. NW
                  10th Floor
                  Washington, DC 20036
                  Tel: 202-847-4030
                  Fax: 202-847-4005

## I. INTRODUCTION

Plaintiffs designated Charles Benbrook, Ph.D., an agricultural economist, to offer opinions on several broad topics, primarily relating to the regulation and labeling of glyphosate-based herbicides ("GBH") and Monsanto's corporate conduct. The vast majority of Dr. Benbrook's "opinions," however, are not expert opinions at all, but rather his personal views based on a slanted narrative that Plaintiff wants to tell the jury. Dr. Benbrook's reports and deposition testimony make clear that, if left unchecked, he intends to simply summarize Monsanto and EPA documents of which he has no personal knowledge, provide his "interpretation" of those documents, and tell the jury what Monsanto allegedly knew, thought, or intended. These are not the proper subjects of expert testimony.

Indeed, Dr. Benbrook has been prohibited from offering this type of testimony in all three prior Roundup trials. During the *Hardeman* trial, this Court correctly ruled that Dr. Benbrook's proffered opinions about the regulatory history of GBHs were inadmissible because they were not the proper subject of expert testimony and Dr. Benbrook was not qualified to offer them. The opinions proffered in these cases are no different and should be excluded.

*First*, Dr. Benbrook does not have the requisite expertise to opine about any of the subjects on which he has been offered to testify. *Second*, qualifications aside, it is well-established that an expert may not act as a storyteller for a plaintiff to narrate a defendant's documents or speculate about a defendant's state of mind, intent, or knowledge. To allow a witness to testify as to his personal opinion about a party's intent or state of mind—under the guise of "expert" opinions—would invade the jury's function. *Third*, it is the role of the judge, not a purported "expert," to instruct the jury about the law and the company's obligations under the law. *Fourth*, much of Dr. Benbrook's proposed testimony is preempted by federal law. At bottom, Dr. Benbrook's opinions amount to nothing more than improper speculation based on his own subjective beliefs. He should not be allowed to present them to the jury.

## II. BACKGROUND

Dr. Benbrook is an agricultural economist who Plaintiffs have designated to testify about the following seven subjects: (1) the regulatory history of glyphosate and glyphosate-based formulations, including Roundup; (2) the interaction between EPA and Monsanto in relation to the registration and re-registration of Roundup formulations; (3) the labeling responsibilities of pesticide manufacturers under federal regulation; (4) the stewardship obligations of a pesticide manufacturer; (5) whether certain publications related to glyphosate were "ghost-authored" by Monsanto; (6) whether Monsanto's publication planning and conduct comport with prevailing ethical and scientific/academic standards; and (7) the sufficiency of the Roundup label during all relevant times. *See* Declaration of Brian Stekloff Ex. 1, *Giglio* Rule 26 Expert Disclosures.[1]

In every Roundup trial to date, the court has excluded the vast majority of Dr. Benbrook's opinions as inadmissible.[2] In *Hardeman v. Monsanto Co.*, 3:16-cv-00525 (N.D. Cal.), this Court initially excluded Dr. Benbrook's testimony in its entirety, correctly recognizing that "plaintiffs propose[d] to use Dr. Benbrook to present opinions on virtually every aspect of their case." Ex. 2, Pretrial Order No. 111. In response to that ruling, Plaintiffs articulated four topics on which Dr. Benbrook would testify: (1) early EPA action of Glyphosate and the IBT story; (2) Monsanto's refusal to study the formulated product; (3) Monsanto's termination of TNO after it demonstrated elevated rates of dermal absorption; and (4) ghostwriting. Regarding these four topics, Judge Chabbria stated:

> So Benbrook I think is easy. I don't need to hear any further argument on it. The three – the – first three items that – that you propose to testify about, I do not think are properly the subject of expert testimony. They are factual narrative. The information that you say you want to get out of Benbrook, you should be able to or should have been able in deposition – been able to get that

---

[1] All exhibits referenced are attached to the declaration of Brian Stekloff. Plaintiffs in these Wave 1 cases served largely identical expert disclosures for Dr. Benbrook.

[2] *See* Ex. 3, Order on Monsanto's Omnibus Sargon Mot., *Johnson v. Monsanto Co.*, No. CGC16-550128 (Cal. Super. Ct. S.F. Cnty. May 17, 2018) ("*Johnson* Order"); Ex. 4, Order on *Sargon* Motions and Motion for Summary Judgment, *Pilliod v. Monsanto Co.*, No. RG17862702 (Cal. Super. Ct. Alameda Cnty. Mar. 18, 2019) ("*Pilliod* Order"); Ex. 5, Trial Tr. at 2103:23-2104:24, *Hardeman v. Monsanto Co.*, 3:16-cv-00525 (N.D. Cal. Mar. 14, 2019) ("*Hardeman* Trial Tr.").

- 2 -
MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

> information out of fact witnesses. So Benbrook will not be allowed to testify on those three topics. I also think it is highly unlikely that Benbrook is qualified to testify on those three topics, but I don't think it matters because I don't think they are the subject of expert testimony. The fourth topic it seems would be the proper subject of expert testimony, but I don't see how Benbrook is qualified as an expert on that topic. . . .

Trial Tr. 2103:23-2104:14. Faced with these rulings, Plaintiffs withdrew Dr. Benbrook. *Id.* 2104:22-24. Although Dr. Benbrook submitted a new expert report in these cases, it is evident upon only minimal scrutiny that the opinions he will offer in these cases are no different than those that this Court already found inadmissible. *See, e.g.*, Ex. 6, 8/20/19 Benbrook Report at pp. 27-29, 120-128.[3] In fact, Dr. Benbrook's prior reports, trial and deposition testimony have been incorporated into Plaintiffs' disclosures in these cases. *See* Ex. 1, Plaintiff's Rule 26 Expert Disclosures.

Dr. Benbrook now again seeks to offer the same recycled (and improper) opinions that have been previously excluded on multiple occasions. This court should reject that attempt and exclude Dr. Benbrook's opinions.

## III. ARGUMENT

### A. Legal Standard

A proposed expert witness must possess "knowledge, skill, experience, training, or education" sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002).

---

[3] Dr. Benbrook sought to offer these same opinions in two other cases: *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) and *Pilliod v. Monsanto Co.*, No. RG17862702 (Cal. Super. Ct. Alameda Cnty.). Both courts found that the vast majority of Dr. Benbrook's purported "expert" opinions were inadmissible. In those cases, he was prohibited from testifying about, among other things: (1) The "proper interpretation of documents, such as emails, or to argue that inferences of knowledge or intent can be derived from those documents"; (2) "Monsanto's legal obligations"; (3) "whether the EPA would have approved an amendment to the Roundup label," (4) that "Monsanto misled the EPA." Ex. 3, *Johnson* Order at 30; *see also* Ex. 4, *Pilliod* Order at 5-7.

1   Apart from qualifications, expert testimony must be (1) based upon sufficient facts or
2   data, (2) the product of reliable principles and methods, and (3) the result of applying those
3   principles and methods reliable to the facts of the case.  Fed. R. Evid. 702.  The trial judge is
4   charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific
5   testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.
6   579, 589 (1993).  The proponent of the expert bears the burden of proving that the expert's
7   proffered testimony is admissible.  *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.
8   2007).

9   **B.     Dr. Benbrook is Not Qualified to Offer Expert Testimony in These Cases.**

10   Federal courts have frequently recognized that when an expert's field of expertise is not
11   related to the subject at issue, such testimony will not aid the jury and is inadmissible.  *See White*
12   *v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) ("A layman, which is what an expert
13   witness is when testifying outside his area of expertise, ought not to be anointed with ersatz
14   authority as a court-approved expert witness for what is essentially a lay opinion.").  Here, Dr.
15   Benbrook lacks expert qualifications on any of the topics on which he is proffered.

16   Dr. Benbrook is neither a scientist nor a pesticide regulator, and he has never worked for
17   a pesticide company.  He has no training or degree in toxicology and has never designed or
18   conducted a toxicology study.  Ex. 7, Dep. of Charles Benbrook at 19:3-6, Feb. 8, 2018, *Johnson*
19   *v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) ("Benbrook *Johnson* Dep.
20   Vol. I").  And he has no education or training in epidemiology, nor has he ever designed or
21   conducted an epidemiology study.  *See id.* at 18:20-22, 69:2-7.  Rather, Dr. Benbrook's degree is
22   in agricultural economics, and his supposedly "relevant" experience consists of a legislative
23   position he briefly held with a House Subcommittee nearly forty years ago, where he admits he
24   had no direct responsibility for regulating pesticides.  *Id.* at 85:9-11.  He is unqualified to testify
25   about his interpretations of corporate documents, about "ghostwriting," about Monsanto's legal,
26   moral, or ethical obligations, or its compliance with EPA registration or labeling requirements.

27
28

1  ***First,*** Dr. Benbrook lacks any qualifications to testify about the proper interpretation of Monsanto documents or draw inferences from those documents to opine on Monsanto's state of mind, motives, and intent.  Even if there were such a thing as an expert qualified to offer opinions on a company's alleged intent (there is not—see *infra* Section II.C.), Dr. Benbrook is not that person.  He has never been employed by any pesticide or chemical company.  Ex. 7, Benbrook *Johnson* Dep. Vol. 1 at 41:21-42:4.  He is not an expert in reading or interpreting other people's emails.  *See* Ex. 8, 5/10/2018 *Johnson* Hearing Tr. at 59:5-18 (recognizing that Dr. Benbrook is "[s]urely not" an "expert in email reading").  He is not an expert in whether a company acted ethically.  He does not have a degree in corporate ethics.  Ex. 7, Benbrook *Johnson* Dep. Vol. 1 at 41:14-19.  Rather, his supposed expertise is "self-taught." *Id.* at 41:21-42:4.

His opinions about what a reasonable pesticide company would do are based on his review of internal Monsanto documents and his self-professed "expert[ise] in honesty" stemming from his "long personal experience."  He believes that this provides "as solid a foundation to judge the honesty of actions of a pesticide company, a regulator, or a non-governmental organization as anyone currently active in the field."  Ex. 9, Dep. of Charles Benbrook at 431:5-432:5, Feb. 9, 2018, *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) ("Benbrook *Johnson* Dep. Vol. 2").  But, such purely subjective "personal" beliefs and opinions do not qualify him as an expert and invade the province of the jury to evaluate Monsanto's conduct.

***Second,*** Dr. Benbrook seeks to testify about Monsanto's ethical, legal, and regulatory duties, but he has never worked at EPA or any regulatory body, and he has never been employed by a pesticide, chemical or agricultural company subject to EPA regulations.  *See* Ex. 7, Benbrook *Johnson* Dep. Vol. 1 at 32:7-15; Ex. 10, 8/20/19 Benbrook Rpt. Appendix A Resume.  Dr. Benbrook has never conducted a pesticide label review with or for EPA.  *See* Ex. 7, Benbrook *Johnson* Dep. Vol. 1 at 102:18-23.  He has no training or experience preparing herbicide labels for EPA review.  *Id.* at 365:3-9; 367:5-13.  He has never published anything in

the peer-reviewed literature on the labeling requirements for herbicides under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").[4] *Id.* at 367:15-19. Dr. Benbrook has never participated in a registration review of a pesticide for EPA. *Id.* at 42:5-9, 155:8-11. He has never been involved with a submission to EPA for registration of an herbicide. *Id.* at 86:20-88:2. Moreover, Dr. Benbrook is not trained in the law or in the legal interpretation or enforcement of federal regulations. *Id.* at 35:13-19. He has never been involved in advising the EPA in its enforcement of FIFRA's "adverse effects" reporting requirements for pesticide registrants, nor in assessing whether those requirements have been met. *See id.* at 42:13-17, 131:7-9; *see also* Ex. 11, Dep. of Charles Benbrook at 155:10-15, Dec. 28, 2018, *Hardeman v. Monsanto Co.*, No. 3:15-c-0525-VC (N.D. Cal.) ("Benbrook *Hardeman* Dep.").

Dr. Benbrook admitted: "I really don't know the details of the reg[ulation]s well enough to say whether [Monsanto] would be obligated to submit" a final version of a certain study report to the EPA. Ex. 11, Benbrook *Hardeman* Dep. at 163:2-11. For this reason, it is not surprising that the *Johnson* court found that "**Dr. Benbrook's background does not demonstrate much familiarity with the EPA or Monsanto's internal knowledge or regulatory compliance**" and excluded and limited his proposed opinions accordingly. Ex. 3, *Johnson* Order at 30 (emphasis added).

In sum, Dr. Benbrook lacks the qualifications necessary under Federal Rule of Evidence 702 to opine about any of the topics referenced in his expert witness designation, and his testimony should therefore be excluded.

**C.    The Court Should Preclude Dr. Benbrook from Narrating or Summarizing Monsanto Documents or Offering Opinions about Monsanto's Intent, Motives, or State of Mind.**

Dr. Benbrook generated the vast majority of his opinions using the supposed "methodology" of reading internal Monsanto corporate documents and EPA communications,

---

[4] Pursuant to statutory directive under FIFRA, 7 U.S.C. § 136 *et seq.*, EPA requires registrants of pesticides to submit extensive data in support of the human health and environmental safety of their products. The agency will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. EPA has repeatedly approved Monsanto's GBHs for sale in the United States from 1974 to the present without requiring any cancer warnings.

1 and then speculating about the intent of the authors and recipients. These opinions are not the
2 proper subjects of expert testimony because they intrude on the role of the jury and do not
3 require any specialized knowledge or skill outside the understanding of a layperson. *Sanchez v.*
4 *Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014)
5 ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate
6 documents, which is not helpful to the jury."); *See City of New York v. FedEx Ground Package*
7 *Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 2941455, at *4 (S.D.N.Y. Oct. 10, 2018) (excluding
8 expert opinion where expert "relied on the same types of evidence that a jury traditionally relies
9 upon to answer the sort of questions that a jury traditionally answers.").

10        1.   <u>Dr. Benbrook Should Not Be Permitted to Narrate Company Documents.</u>

11 An expert who merely reads or summarizes documents for the jury is not providing
12 helpful testimony because the jury is capable of reading those documents and reaching
13 conclusions about them on its own. Yet, Dr. Benbrook repeatedly offers his opinion about what
14 corporate documents written by or to Monsanto employees mean to *him* based on *his personal*
15 *opinion*:

> Q: So you reviewed these corporate documents with the MONGLY Bates numbering in order to inform yourself what they say and then to tell us in your expert report what they mean to you, correct?
>
> A: Yes, sir.
>
> Q: And when you do that, you also, in your report in many places, characterize what you believe in your personal opinion is the conduct of Monsanto or its employees or its consultants and whether you in your personal opinion believe the conduct is acceptable is some way, correct?
>
> A: Sure. Correct.

24 Ex. 7, Benbrook *Johnson* Dep. Vol. 1 at 37:4-16. Even a cursory review of Dr. Benbrook's
25 reports demonstrates that they consist largely of the mere recitation of select company
26 documents, pieced together to paint a narrative that Plaintiff's counsel would like to present to
27 the jury. *See*, *e.g.*, Ex. 12, 12/21/17 Benbrook Rpt. at ¶¶ 305-315; 345-436; 620-630; 677-699;

- 7 -
MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

743-759; 1065-1074. Dr. Benbrook's proposed testimony is not "expert" testimony at all, because reading and interpreting e-mails and memoranda does not require specialized knowledge or skill outside the understanding of the layman.

Federal courts regularly exclude experts that offer an advocacy-based recitation of documents. In *Baldonado v. Wyeth*, the Northern District of Illinois precluded an expert from testifying to "narrative histories" summarizing a pharmaceutical company's promotion of a hormone therapy drug because the testimony did not involve any "scientific, technical or other specialized knowledge." No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012). The court, citing similar rulings, reasoned that:

> [A]llowing an expert to provide summary testimony "based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself." *United States v. Vance*, No. 07–CR–351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011) (citing *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.")).

*Id.* The court in *In re Rezulin Products* also barred a "narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." 309 F. Supp. 2d at 551. It also invades the jury's core function to review the evidence and make factual determinations. *See City of New York*, No. 13 Civ. 9173 (ER), 2018 WL 2941455, at *4 (S.D. N.Y. Oct. 10, 2018). Other courts agree that such narrative testimony of company and regulatory documents is inadmissible.[5]

---

[5] *See also In re Prempro Prods. Liab. Litig.,* 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"); *Pritchett v. I-Flow Corp.*, No. 09-cv-02433-WJM-KLM, 2012 WL 1059948, at *7 (D. Colo. Mar. 28, 2012) ("The Court must recognize the inherent power of expert testimony in determining whether to allow an expert to summarize documents that the jury could just as easily summarize itself. Allowing an expert witness to do so may imprint the documents with 'a tilt favoring a litigant,' which hinders impartial adjudication of the merits instead of promoting it." (citing *In re Prempro*, 554 F. Supp. 2d at 887)); *Scentsational Techs., LLC*, 2018 WL 1889763, at *4 (holding that expert cannot opine on a party's state of mind or narrate documents; it is "inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story'"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("Plaintiffs' counsel may not simply use these expert witnesses to provide a

In short, Dr. Benbrook's testimony is nothing more than the improper narration of documents (of which he has no personal knowledge) under the pretext of expert opinion. It should be excluded.

        2.    <u>Dr. Benbrook Should Not Be Permitted to Speculate About Monsanto's Motive, Intent, or State of Mind, or to Offer His Personal "Interpretation" of Documents Based on Such Speculation.</u>

Even a properly qualified expert may not opine as to the intent, motive, or state of mind of a corporation or its employees, because that would substitute the expert's judgment for the jury's. *See, e.g.*, *Oracle America Inc., et al. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) ("Courts routinely exclude as impermissible expert testimony as to intent motive, or state of mind" because such testimony "would be merely substituting the expert's judgment for the jury's . . ." (quotations and citations omitted)); *In re C.R. Bard, Inc., Pelvic Repair System Prods. Liab. Litig.*, MDL No. 2187, 2018 WL 4212409, at *3 (S.D. W.Va. Sept. 4, 2018) (defendant's "knowledge, state of mind, or other matters related to corporate conduct are not appropriate subjects of expert testimony. . ."); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 442 (E.D.N.Y. 2011) ("[O]pinions of expert witnesses on the intent, motives, or states of mind of corporations, regulatory agencies, or others have no basis in any relevant body of knowledge or expertise."). As these authorities recognize, an expert who purports to know what a company (or its employees) was thinking is speculating, and such testimony would not be helpful to the jury.

Dr. Benbrook himself recognizes that it is not possible to glean a person's intent or motive merely from reading an email:

> Q:    So it's not possible to review the e-mail and understand exactly what was said or what people's intent or motivation was; correct?
>
> A:    Correct.

---

narrative history of [the defendant's] marketing and labeling practices ...."); *Lopez v. I-Flow Inc.*, No. CV 08-1063-PHX-SRB, 2011 WL 1897548, at *10 (D. Ariz. Jan. 26, 2011).

- 9 -
MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

Ex. 11, Benbrook *Hardeman* Dep. at 340:23-341:2 (objection omitted).  Nonetheless, his expert report and deposition testimony are replete with his personal opinions as to the motives and state of mind of Monsanto and third parties based on his personal interpretation of company and EPA documents that he did not author or receive.  For example:

- "The record shows some unusually close and inappropriate communications between Jess Rowland and Monsanto on the general topic of OPP's evaluation of glyphosate oncogenicity." Ex. 11, Benbrook Hardeman Dep. at 233:18-21.  *See also id.* at 234:16-235:17 (testifying that he found an e-mail "very curious and suggestive," which "tipped [him] off" to "perhaps an undue influence" by Monsanto on members of a committee).

- "Q: How do you know that TNO [contract laboratory in Denmark] would have deleted the findings?

   A: **How do I know? Well, I guess I don't.**  I'm not part of their organization.  I don't know what their policies are. . . ."  Ex. 11, Benbrook *Hardeman* Dep. at 172:10-20 (emphasis added; objection omitted).

- "EPA could have initiated a cancellation action for Monsanto's failure to comply with a requirement in the 1986 registration standard.... [T]hey did not do it because they felt that it was not a significant enough of a concern to entail the administrative and political cost of trying to cancel a widely-used herbicide." Ex. 11, Benbrook *Hardeman* Dep. at 182:23-183:6.

- "A: . . . -- **you know, people in the scientific community would regard the acknowledgment statement as inadequate.**

   Q: . . . Other than you and the other scientists paid by the plaintiffs' lawyers in the glyphosate litigation, can you identify a single scientist anywhere in the world that has looked at this acknowledgement and said it's an improper acknowledgment of interest? Yes or no?

   A: **I haven't -- I can't, and I haven't tried.**" Ex. 13, Dep. of Dr. Charles Benbrook, Sept. 13, 2018, *Adams v. Monsanto Co.*, Case No. 17SL-CC02721 ("Benbrook *Adams* Dep.") at 132:12-24.

Dr. Benbrook has been admonished and precluded from offering precisely this sort of testimony impugning the motives of a company based on a tale spun from internal documents:

> Dr. Benbrook has never worked inside DuPont nor done any consulting work for the company.  He claims he has become an expert on DuPont by reading documents produced in this litigation.  But that is akin to studying the Grand Canyon by looking at its depiction in an old-fashioned peeping-type Easter egg.  The view is sharp only because it is so narrow.  It is not enough to make Dr. Benbrook an expert on DuPont.

- 10 -

MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

*Adams v. United States*, Civ. No. 03-0049-E-BLW, 2009 WL 1324231, at *1 (D. Idaho May 8, 2009) (holding that "Dr. Benbrook cannot testify about DuPont's corporate intent"). Dr. Benbrook's speculation about what Monsanto or its employees knew, thought, or intended is not admissible expert testimony.

### D. Dr. Benbrook Should Not Be Permitted to Offer His Opinions as to Monsanto's Ethics or Compliance with Ethical Obligations.

Dr. Benbrook also should not be permitted to offer his opinions about Monsanto's corporate ethics or compliance with ethical obligations. For example, Dr. Benbrook admits that Monsanto had no legal obligation under EPA regulations to place an oncogenicity warning on its Roundup labels, yet he opines that Monsanto had a "moral and ethical obligation" to do so. *See* Ex. 11, Benbrook *Hardeman* Dep. at 239:1-24; 241:10-242:4; 279:20-22 ("Monsanto has not done as much as it should have to discourage overstatements of the safety of glyphosate-based herbicides."); *id.* at 237:3-11 (testifying as to his opinion about what a "prudent company" would have done).[6] Remarkably, Dr. Benbrook has claimed that he should be allowed to offer this opinion because he is a self-professed "expert in honesty":

> Q: You've also commented a number of times both in your report and now again today at least once, about whether a particular individual or company, whether it be Monsanto or anybody else at the agency, is honest. Are you claiming you're an expert in honesty?
>
> A: Yes. Yes. I'm an expert in honesty.

Ex. 9, Benbrook *Johnson* Dep. Vol. 2 at 430:25-431:7 (emphasis added). Dr. Benbrook is no more of an "expert in honesty" than the jurors who will decide this case. Plaintiff is not entitled to have a partisan with the Court's imprimatur of "expert witness" narrate company documents

---

[6] *See also* Ex. 12, 12/21/17 Benbrook Rpt. at ¶ 152 (Monsanto's "repeated failures to assist regulators in developing more accurate assessments of worker-safety risks is a clear and consequential breach of the company's pledge to adhere to the best science available, and serve as a responsible steward of Roundup herbicide products."); *id.* at ¶ 902 ("The discovery record in this case shows clearly that violation of widely accepted ethical norms in scientific publishing was a routine, accepted part of the culture at Monsanto. Over several decades, such actions were conceived and implemented in the interest of heightening the 'credibility/impact' of scientific papers the company commissioned and controlled.").

and place his own spin on them. And his testimony that the EPA or Monsanto acted unethically or otherwise inappropriately will carry undue weight and thus prejudice Monsanto. *See In re Bard IVC Filters Prods. Liab. Litig.*, No. 15-02641, 2018 WL 495187 (D. Az. Jan. 22, 2018) (precluding expert from testifying about corporate behavior, corporate ethics, and what he believed a responsible manufacturer would have done).

### E. Dr. Benbrook's Opinions on Legal or Regulatory Duties Should Be Excluded.

Dr. Benbrook also seeks to offer his opinion that Monsanto failed to comply with its legal or regulatory obligations.[7] In addition to Dr. Benbrook's lack of relevant qualifications (*see* Section A, *supra*), these opinions should be excluded because they lack the necessary foundation and invade the province of this Court to instruct the jury on the law, and of the jury to decide Monsanto's compliance with that law. *See* Ex. 3, *Johnson* Order at 30.

#### 1. Dr. Benbrook's Opinions Regarding Monsanto's Compliance with Legal Duties and EPA Regulations Are Improper and Preempted.

Dr. Benbrook seeks to opine that Monsanto violated federal law and EPA regulations, including FIFRA § 6(a)(2)'s "adverse effects reporting requirement," and that "Monsanto failed to warn about the risk of NHL, other forms of cancer, or damage to the liver or kidneys, stemming from the use of Ranger Pro and Roundup Pro." Ex. 12, 12/21/17 Benbrook Rpt. at ¶¶ 23, 573; Ex. 6, 8/20/2019 Benbrook Rpt. At ¶ 901. Without any foundation, Dr. Benbrook imposes precise legal duties on Monsanto and then opines that Monsanto breached those duties:

> A: Well, it's the responsibility of the pesticide registrant to include on the label use instructions and guidance and restrictions and warning that, taken together, if adhered to, will prevent unreasonable adverse effects on man or the environment. . . So it is the – it is the company's direct responsibility to assure that the label instructions and requirements and restrictions accomplish that goal. And in the event of a label not accomplishing that goal, it – the label can be characterized as misbranded.

---

[7] *See, e.g.*, Ex. 12, 12/21/17 Benbrook Rpt. at section 2 (Monsanto's "Failure to Adequately Warn and Prevent Risks is Misbranding"); *id.* at ¶ 706 ("Monsanto failed to provide the Parry Report to the EPA as required under 40 CFR § 159.158.").

1    Q.   (By Mr. Wool) And it can be misbranded regardless of whether the EPA approved the label or not, correct?

2    A.   Oh, absolutely.

Ex. 13, Benbrook *Adams* Dep. at 189:3-20.

Dr. Benbrook has no actual expertise on FIFRA § 6(a)(2), his opinions are derived from a selective review of corporate emails, and his opinions as to Monsanto's compliance with regulations and federal law are not the proper subject of expert testimony. The *Johnson* court thus held that Dr. Benbrook "may not opine on Monsanto's legal obligations." Ex. 3, *Johnson* Order at 30. The same result should follow here. *See*, *e.g.*, *Lukov v. Schindler Elevator Corp.*, No. 5:11-cv-00201 EJD, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (excluding expert testimony on legal issue); *United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) ("Moreover, it is 'the judge and not a witness' that 'is to instruct the fact finder on the applicable principles of law.'").

Furthermore, any claim that Monsanto violated federal law and EPA regulations is preempted. There is no private right of action to enforce claimed violations of EPA regulations, as EPA has the sole power to determine whether its regulations are followed. *See Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993) ("[I]t is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made."); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001) (holding plaintiffs' claims were preempted because there is no private right of action for violations of the Food, Drug & Cosmetic Act); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199, 1205, 1208 (9th Cir. 2002) (finding that the "rationale articulated by the Supreme Court in *Buckman* applies" to EPA and that EPA has enforcement powers for violation of its regulations, including "elaborate internal hearing and appellate review procedures to determine whether a registrant has violated any provision of FIFRA"). Opining on whether Monsanto complied with a regulatory standard on registration matters invades the exclusive province of the EPA.

1    Similarly, to the extent Dr. Benbrook seeks to opine that Monsanto defrauded or misled
2 the EPA, such testimony should be excluded because he "brings no relevant expertise to the table
3 on that issue."  Ex. 3, *Johnson* Order at 31; *see also* Section B, *supra*.  Moreover, Dr. Benbrook
4 has admitted that he is not aware of the EPA ever finding that Monsanto misrepresented anything
5 regarding the safety of its GBHs.  Ex. 14, Dep. of Dr. Charles Benbrook, May 23, 2018, *Hall v.*
6 *Monsanto Co.*, No. 1622-CC01071 ("Benbrook *Hall* Dep. Vol. 1") at 150:11-15.  Additionally,
7 any claims that Monsanto defrauded or misled the EPA are preempted by federal law, and thus
8 testimony on that issue is irrelevant. [8]

9    Therefore, Dr. Benbrook should be precluded from offering any testimony on alleged
10 violations of EPA regulations or on alleged fraud on the EPA.

11    2.    <u>Dr. Benbrook Improperly Speculates About What Monsanto Should Have
12          Done Differently and About the Customs and Practice of EPA, Including
13          What Warnings or Labeling Might Have Been Accepted by EPA.</u>

14   Dr. Benbrook also should not be permitted to testify as to what he thinks Monsanto
15 should have done differently—such as conducting different or additional testing or providing
16 different warnings—or whether EPA would have accepted such warnings.  His report and
17 deposition testimony are rife with speculation about what warnings should have been included
18 and the EPA's practices and/or customs regarding warnings, often dating back decades:

- "Monsanto **could have** peripherally put a statement on its label that there's some evidence of potential to cause oncogenic risk from one of the studies submitted, and in an abundance of caution, we've added additional PPE. And I am quite certain that OPP would not object to the addition of such language on a label."[9]

- Beginning in 1999 Monsanto **could and should have** added a warning to their labels, and otherwise informed the public, that exposure to formulated glyphosate

---

[8] *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (holding that state-law fraud-on-the-FDA claims were impliedly preempted); *see also Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199, 1205, 1208 (9th Cir. 2002) (finding that the "rationale articulated by the Supreme Court in *Buckman* applies" to EPA "cases involving fraud-on-the-agency labeling allegations"); *Giglio v. Monsanto Co.*, No. 15-cv-2279 BTM (NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016) ("Plaintiff's claims based on failure to warn the EPA of the dangers of Roundup are preempted.").

[9] Ex. 9, Benbrook *Johnson* Dep. Vol. 2 at 473:15-24 (emphasis added).

products can cause oxidative stress and lead to genotoxic damage. In lay terms, such a warning **might** state "exposure to this product can damage cells and trigger disease."[10]

Dr. Benbrook lacks the qualifications necessary to opine about what warnings should have been included under EPA regulations or what warnings EPA may or may not have accepted. As Judge Karnow noted, "Dr. Benbrook's background does not demonstrate much familiarity with EPA or . . . regulatory compliance." Ex. 3, *Johnson* Order at 30.

Moreover, Dr. Benbrook's labeling and warning opinions are contrary to the repeated EPA determinations that glyphosate is not carcinogenic to humans, and contrary to his own testimony that label directions and precautions are intended to reflect the risk assessments of EPA's Office of Pesticide Programs. Ex. 9, Benbrook *Johnson* Dep. Vol. 2 at 400:18-401:4. For example, Dr. Benbrook agreed that EPA determined that glyphosate-based herbicides are not genotoxic, and agreed that EPA could, at any time, demand that Monsanto conduct further genotoxicity testing on its glyphosate-based herbicides, but it has never done so.[11] *See id.* at 466:5-13, 481:4-16. Dr. Benbrook also admitted that Monsanto has satisfied all EPA-required toxicology data requirements. *See*, *e.g.*, Ex. 7, Dep. of Charles Benbrook, Feb. 8, 2018, *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty.) ("Benbrook *Johnson* Dep. Vol. 1") at 128:21-130:2; Ex. 14, Benbrook *Hall* Dep. Vol. 1 at 110:24-111:5, 115:23-116:2.

Dr. Benbrook should not be permitted to present these opinions to the jury, as they suggest that Monsanto had legal or other obligations to act differently, and they invade the role of the Court to instruct the jury on the law. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys.,*

---

[10] Ex. 12, 12/21/17 Benbrook Rpt. ¶ 55 (emphasis added).

[11] Dr. Benbrook's testimony about what warnings should have been included on the labels or what warnings EPA may or may not have accepted are preempted under the impossibility preemption doctrine because there is clear evidence that EPA would reject any attempt by Monsanto to add a cancer warning to the applicable Roundup label or change its formulation. Courts have held that claims are preempted when the evidence shows that the federal regulatory agency had considered the safety risk but nevertheless rejected concerns about that risk. *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1105 (10th Cir. 2017); *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 873 (7th Cir. 2010); *Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 766, 769-70 (S.D. Ohio 2015), aff'd, 680 F. App'x 369, 384-88 (6th Cir. 2017); *Seufert v. Merck Sharp & Dohme Corp.*, 187 F. Supp. 3d 1163, 1173-74, 1177 (S.D. Cal. 2016). Preemption is discussed at length in the contemporaneously filed Memo. in Support of Monsanto's Motion for Summary Judgement and is incorporated herein.

- 15 -

MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

1   *Inc.*, 523 F.3d 1051 (9th Cir. 2008) (affirming motion to strike expert because expert's legal
2   conclusion invaded province of trial judge in instructing jury on legal issues and expert
3   improperly testified as to how law applied to facts of case).  These opinions also amount to
4   speculation and improperly invade the jury's role as the decision-maker on the adequacy of
5   Monsanto's actions under applicable law.  *See Mueller v. Bauer*, 54 S.W.3d 652, 657 (Mo. App.
6   E.D. 2001) ("When an expert merely testifies that a given action or failure to act 'might' or
7   'could have' yielded a given result . . . such testimony is devoid of evidentiary value."); *see also*
8   *Johnson* Order at 30 (ruling that Dr. Benbrook "may not offer an opinion as to whether the EPA
9   would have approved an amendment to the Roundup label," as he "has no specific expertise
10  pertaining to the EPA's approval of amended labels").

## IV.  CONCLUSION

For the reasons set forth above, the Court should grant this Motion and exclude the opinions proffered by Dr. Charles Benbrook in their entirety because he lacks the necessary qualifications to offer them and they are not the proper subject of expert testimony.  At the very least, Dr. Benbrook should not be permitted to (1) narrate or summarize Monsanto or EPA documents and provide his subjective "interpretation" about those documents or his opinions about the authors' intent, motives, or states of mind; or (2) offer opinions on Monsanto's legal, ethical, or regulatory obligations or its compliance therewith.

Dated: November 26, 2019

By:   */s/ Brian L. Stekloff*
Brian L. Stekloff (*pro hac vice*)
bstekloff@wilkinsonwalsh.com
Tamarra Matthews Johnson (*pro hac vice*)
tmatthewsjohnson@wilkinsonwalsh.com
Rakesh Kilaru (*pro hac vice*)
rkilaru@wilkinsonwalsh.com
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005
Attorneys for Defendant Monsanto Company

- 17 -
MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of November, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Brian L. Stekloff*