**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Dickey v. Monsanto Co.*, 3:19-cv-04102-VC | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES JAMESON ON *DAUBERT* GROUNDS** |
| *Domina v. Monsanto Co.*, 3:16-cv-05887-VC | |
| *Giglio v. Monsanto Co., et al.*, 3:16-cv-05658-VC | Hearing date: January 29, 2020 |
| *Janzen v. Monsanto Co.*, 3:19-cv-04103-VC | Time: |
| *Perkins v. Monsanto Co.*, 3:16-cv-06025-VC | |
| *Pollard v. Monsanto Co.*, 3:19-cv-04102-VC | |
| *Russo v. Monsanto Co.*, 3:16-cv-06024-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on January 29, 2020, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its *Daubert* Motion to Exclude the Testimony of Dr. Charles Jameson.  Monsanto seeks an order excluding opinion of this witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

DATED:  November 26, 2019

    Respectfully submitted,

    /s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP

One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

## INTRODUCTION

Monsanto anticipates that Plaintiffs will try to expand the previously defined scope of Dr. Charles Jameson's expert testimony in this case under the guise of "factual" testimony about IARC. This suspicion is well-founded as plaintiffs in other Roundup cases have demonstrated a willingness to defy the limits placed on Dr. Jameson's testimony and to blur the lines between expert and fact testimony. Accordingly, the Court should affirmatively exclude Dr. Jameson's factual testimony about IARC to the extent it constitutes impermissible testimony that this Court has previously excluded.

## BACKGROUND

Dr. Jameson is a chemist and environmental toxicologist who participated in the IARC working group that assessed glyphosate. Plaintiffs in most of the mature Roundup-related cases around the country have disclosed Dr. Jameson as an expert witness. Monsanto has moved to exclude or limit Dr. Jameson's testimony in all such cases, with varying degrees of success.

Dr. Jameson was the subject of two rulings leading up to the *Hardeman v. Monsanto* trial. First, Monsanto moved to exclude Dr. Jameson on *Daubert* grounds after Mr. Hardeman disclosed Dr. Jameson as a general causation expert. Dkt. 545. This Court granted that Motion in part and limited his testimony to "the narrow[] topic of the animal cancer studies."[1] PTO 45, at 61. This Court explained that it excluded the majority of Dr. Jameson's opinion because his analysis was based on a hazard assessment similar to IARC's that was "insufficient to get the plaintiffs over the general causation hurdle." *Id.* at 60–61. Second, Mr. Hardeman indicated in his pretrial statement and witness list his intent to call Dr. Jameson, not as an expert, but as a fact witness in Phase I "to testify about his experience at IARC." Ex. 1, *Hardeman*, Feb. 13, 2019 Tr. at 98:24–101:24; 117:1–118:2. The Court ruled *sua sponte* that Dr. Jameson would not be allowed to testify as a fact witness in Phase I. *Id.* at 118:11–12; PTO 81 at 1. Subsequently, Mr. Hardeman never sought to call Dr. Jameson as either an expert or a fact witness during Phase II of trial, so the Court never had the opportunity to

---

[1] Monsanto maintains its position that Dr. Jameson's testimony should have been excluded in its entirety, but will not re-litigate that issue pursuant to the Court's direction, reserving its rights to challenge this order on appeal.

- 1 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES JAMESON ON *DAUBERT* GROUNDS
3:19-CV-041-2-VC & 3:16-CV-05887-VC & 3:16-CV-05658-VC & 3:19-CV-04103-VC & 3:16-CV-06025-VC & 3:19-CV-04102-VC & 3:16-CV-06024-VC

address the appropriate scope of Dr. Jameson's factual testimony.

The plaintiffs in *Pilliod v. Monsanto* also initially designated Dr. Jameson only as an expert witness, and then later identified him as both an expert and a fact witness. *See* Ex. 2, *Pilliod* Rule 26 Expert Disclosure; Ex. 3, *Pilliod* Witness List. Judge Smith denied Monsanto's motion to exclude Dr. Jameson in a general order without specifically addressing Dr. Jameson or the scope of his testimony. *See* Ex. 4, *Pilliod v. Monsanto*, Order on *Sargon* Motions (Mar. 18, 2019). The Pilliods then called him during day four of trial. Ex. 5, *Pilliod* April 4, 2019 Tr. at 2091–2341.

The plaintiffs in *Winston v. Monsanto* in the City of St. Louis similarly listed Dr. Jameson in their expert disclosures, Ex. 6, Winston Expert Disclosures, but then presented Dr. Jameson in deposition as a fact witness alone, Ex. 7, Jameson *Winston* Dep. (July 19, 2019) at 26:8–24 ("He's being presented today as a fact witness, not as an expert witness. . . . He is not testifying about his MDL expert report. He's testifying as a fact witness based on his experience at IARC.").

In the Wave 1 cases, Plaintiffs have disclosed Dr. Jameson as both an expert and a fact witness in his Rule 26(a)(2) disclosures. First, Plaintiffs indicate Dr. Jameson will provide expert testimony "regarding his analysis of glyphosate toxicology, epidemiology, and rodent bioassay data and the interpretation and methodology related to that data," and "on issues relating to the carcinogenicity of glyphosate, including mechanistic data relating to genotoxicity, oxidative stress and other aspects of cellular behavior." Ex. 8, Pl.'s (Giglio) Rule 26 Expert Disclosures, at 5; *see also* Ex. 9, Pl.'s (Perkins) Rule 26 Expert Disclosures, at 4; Ex. 10, Pl.'s (Russo) Rule 26 Expert Disclosures, at 4.[2] Second, Plaintiffs indicate that Dr. Jameson will offer factual testimony about his "participation in the International Agency for Research on Cancer (IARC) 112 Monograph, specifically as it relates to glyphosate, and on the IARC process in general." *Id.*

---

[2] Monsanto did not receive formal disclosures in the *Dickey*, *Domina*, *Janzen*, and *Pollard* cases; instead, Plaintiffs' counsel has indicated in service emails that Dr. Jameson is disclosed in those cases without providing information on the scope of his testimony. Monsanto reserves its right to object on *Daubert* grounds to any testimony Dr. Jameson intends to give that has not been disclosed.

**ARGUMENT**

**I.    The Court Must Exclude Any Expert Testimony Offered By Dr. Jameson that Has Not Previously Survived *Daubert* Scrutiny.**

However characterized or described, any testimony from Dr. Jameson that is "based on scientific, technical, or other specialized knowledge" must survive *Daubert* scrutiny. This Court has already determined that all but Dr. Jameson's testimony about animal studies falls short of the *Daubert* requirements. *See* PTO 45, at 60–61. As such, despite the expansive Rule 26 disclosure that purports to sweep back in all of the testimony this Court has already excluded, Dr. Jameson may not go beyond the narrow strictures set forth in the Court's *Daubert* ruling.

Plaintiffs cannot get around this limitation by suggesting that Dr. Jameson is a lay witness offering opinion testimony. "Rule 701 permits a lay witness to testify 'in the form of an opinion' if it is '(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.'" *United States v. Sarkissian*, 755 F. App'x. 613, 617 (9th Cir. 2018) (quoting Fed. R. Evid. 701). To the extent that Plaintiffs have offered Dr. Jameson as a "fact" witness, any testimony he offers about IARC must be scrutinized to make sure it conforms with Rule 701's requirements. Otherwise, plaintiffs would evade "the reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing." *United States v. Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) (quoting Fed. R. Evid. 701 advisory committee's notes, 2000 amends.). Much of what it appears Plaintiffs wish to have Dr. Jameson offer—testimony about "toxicology, epidemiology, and rodent bioassay data and the interpretation and methodology related to that data"—would fall squarely within the category of "scientific, technical, or other specialized knowledge" that must meet the *Daubert* standards. *See Sali v. Corona Regional Medical Center*, 907 F.3d 1185, 1187 n.3 (9th Cir. 2018).

Any "fact" testimony about IARC Dr. Jameson hopes to offer that otherwise would require specialized knowledge or bleeds into the realm of expert testimony, including but not limited to epidemiology, genotoxicity, or general causation, must likewise be excluded. Setting aside whether Dr. Jameson should ever be permitted to testify as a purely "fact" witness based on his "personal

knowledge" as a participant in the IARC working group, the very nature of such testimony invariably will cross over into the realm of expert testimony and must be excluded. *Universal Engraving, Inc. v. Metal Magic, Inc.*, 602 F. App'x 367, 370 (9th Cir. 2015). IARC was a panel of scientists evaluating a scientific question. One cannot divorce complex science and technical aspects from a description of IARC's activities.

**II.    An Affirmative Ruling Limiting Dr. Jameson's Lay Testimony is Necessary.**

Given the inherent vagueness of the scope of Dr. Jameson's testimony, Monsanto respectfully asks that the Court definitively rule on the bounds of Dr. Jameson's testimony. As it stands, Plaintiffs' broad expert disclosure, in which Dr. Jameson is offered as an expert on, among other things, genotoxicity, epidemiology, and the carcinogenicity of glyphosate generally, ignores the Court's prior rulings. In addition, plaintiffs in other Roundup cases have consistently used Dr. Jameson to blur the line between expert and fact testimony.

For example, in *Winston*, plaintiffs designated Dr. Jameson as an expert witness who will "provide opinion testimony that glyphosate and glyphosate based formulations cause NHL." Ex. 6, *Winston* Amended Expert Disclosures, at 12. However, in the very next sentence, the *Winston* plaintiffs stated that Dr. Jameson's expert opinions were "based on the documents he reviewed and the meetings he participated in as part of the IARC working group studying glyphosate," i.e. Dr. Jameson's personal knowledge. *Id.* Thus, from the designation alone it was unclear whether plaintiffs were offering Dr. Jameson as an expert or lay witness. Then, at Dr. Jameson's deposition, counsel made clear from the beginning that plaintiffs were only presenting Dr. Jameson as a fact witness and that he would "not testify[] about his MDL expert report." Ex. 7, Jameson *Winston* Deposition, 26:8–24; 249:11–21. However, plaintiffs' counsel did not object when Dr. Jameson was asked about information he included in his expert report that he learned outside of his participation in the IARC working group—subjects that unquestionably fall under the umbrella of expert testimony. *See, e.g.*, *id.* at 149:17–151:15.

Moreover, during Dr. Jameson's "factual deposition" in this case, Plaintiffs' counsel applied inconsistent standards when trying to draw the boundaries between expert testimony and factual

- 4 -

testimony. When Monsanto's counsel asked if he was aware of the incidence of renal tumors in a study discussed in the IARC monograph, his counsel objected because the testimony could interfere with his expert testimony. Ex. 11, MDL Jameson Depo. at 255:23–256:14. Similarly, when asked about a statement regarding an EPA conclusion favorable to glyphosate that was deleted from a draft of the IARC monograph, Plaintiffs' counsel objected that the answer is "going to cross over into expert testimony." *Id.* at 277:11–21. Then, on direct examination, Plaintiffs' counsel asked Dr. Jameson questions that unequivocally crossed over into expert testimony, like, for example, if the Greim (2015) paper "support[s] the proposition that glyphosate is carcinogenic in animals?" *Id.* at 329:8–10.

Similarly, in the *Pilliod* trial, the plaintiffs presented Dr. Jameson as both an expert and a lay witness. Ex. 3, *Pilliod* Witness List. No attempt was made to distinguish between the two types of testimony and ultimately Dr. Jameson was permitted to testify about subjects about which he is not an expert, such as epidemiology, through his discussion of the IARC process. *See* Ex. 5, *Pilliod* April 4, 2019 Trial Tr. at 2091–2341.

It is this type of testimony, present across multiple Roundup-related cases, that, if left unchecked, will permit Plaintiffs to evade *Daubert* scrutiny "through the simple expedient of proffering an expert"—Dr. Jameson—"in lay witness clothing." *Wilson*, 605 F.3d at 1025. Plaintiffs here should not be able to sneak in expert testimony on topics Dr. Jameson has not been qualified to discuss through Dr. Jameson's factual testimony regarding IARC. To head off this prospective evasion of *Daubert*'s requirements, the Court should require Plaintiffs to specifically identify what "factual" testimony he seeks to have Dr. Jameson provide, and then prohibit any such testimony that either does not satisfy *Daubert* or otherwise would inject irrelevant, unreliable, or prejudicial testimony into this trial.

## **CONCLUSION**

For the reasons stated above, the Court should affirmatively exclude Dr. Jameson's testimony to the extent it constitutes expert testimony this Court has previous excluded under *Daubert*.

DATED: _ November 26, 2019

Respectfully submitted,

*/s/ Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26 day of November, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff