# Exhibit 1

**Pages 1 - 260**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS ) <br> LIABILITY LITIGATION ) <br> ) <br> ) <br> _____ ) | **NO. 16-md-02741 VC** |

San Francisco, California
Wednesday, February 13, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        ANDRUS WAGSTAFF PC
        7171 W. Alaska Drive
        Lakewood, Colorado  80226
  BY: **AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
      **DAVID J. WOOL, ATTORNEY AT LAW**

        ANDRUS WAGSTAFF PC
        6315 Ascot Drive
        Oakland, California  94611
  BY: **KATHRYN M. FORGIE, ATTORNEY AT LAW**

        WEITZ & LUXENBERG PC
        700 Broadway
        New York, New York  10003
  BY: **ROBIN L. GREENWALD, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, RPR, CRR
            Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
            Official Reporters

| | |
|---|---|
| 1 | **Wednesday - February 13, 2019**                                    **9:37 a.m.** |

                    **P R O C E E D I N G S**

                             ---oOo---

 THE CLERK: Calling Case Number 16-MD-2741, in Re: Roundup Products Liability Litigation.

 Counsel, please step forward and state your appearances for the record.

 **MS. WAGSTAFF:** Good morning, Your Honor. Aimee Wagstaff on behalf of Plaintiffs.

 **THE COURT:** Good morning.

 **MS. WAGSTAFF:** And with me, I have Brent Wisner, Robin Greenwald, Kathryn Forgie, Brian Brake, David Wool, Jennifer Moore and Tesfay Tsadik and Mark Burton.

 **THE COURT:** Good morning.

 **MR. STEKLOFF:** Good morning, Your Honor. Brian Stekloff on behalf of Monsanto. Along with me I have Rakesh Kilaru, Tamarra Matthews Johnson, Julie Rubenstein and Michael Imbroscio.

 **THE COURT:** Good morning. Okay. So first on my agenda is the statute of limitations issue, but if people want to talk about -- if anybody has any burning issue they want to talk about first, that's fine. Let's talk about statute of limitations.

 So, Mr. Tsadik, let me start with you. I don't understand how I could conclude that there is a genuine fact issue on the

1  explain those types of things so experts can rely on them, but
2  the jury shouldn't then be trying to interpret scientific
3  literature on their own without expert testimony.
4      **THE COURT:** It is the expert's opinion that they
5  should be thinking about back in the jury room, not the 10,000
6  papers that the experts cited or relied upon.
7      **MR. STEKLOFF:** Yes. And trying to interpret parts of
8  literature that is very complicated that has not been discussed
9  by experts, for example.
10     **THE COURT:** Okay. And that sounds like a good plan
11 with respect to the peer-reviewed literature.
12     So then the question is why might -- why wouldn't it be
13 okay to treat the IARC Monograph that way?
14     **MR. STEKLOFF:** Well, because --
15     **THE COURT:** And by the way, the EPA papers as well.
16     **MR. STEKLOFF:** Okay.
17     **THE COURT:** I mean, I assume -- I assume that we would
18 treat both in a similar way.
19     **MR. STEKLOFF:** Okay. Having said that, then I have a
20 less of a concern. My concern was that somehow the IARC
21 Monograph would be treated differently than -- I mean, I still
22 want to address a little bit about the foreign regulatory
23 issue. But I think if the EPA -- we just want equal treatment
24 one way or the other. So I think if the EPA paper is about
25 approval, including the EPA paper's post-IARC, which

1   specifically addressed the IARC decision can be displayed to
2   the jury, I think that that is fair.
3           **THE COURT:** And the question will be on that -- and
4   the reason why I proposed that the fact of the EPA's decisions
5   and the fact of the IARC's decisions could go in but maybe we
6   shouldn't put in the documents is because they are not primary
7   source documents so to speak, right.  They are not actual
8   studies.  They are reviews of the literature, and reviews of
9   the literature are less important than the actual studies
10  themselves.
11       So it may be that if we have the -- the Monograph and the
12  EPA papers available to display to the jury, so that the
13  experts can call out portions of it, it may be that that
14  becomes a 403 issue, and that we should not be -- we should not
15  do that for either document because it just -- the parties are
16  going to not be able to help themselves.  They are not going to
17  be able to help but spend excessive time on those papers.
18  Distracting the jury from the primary inquiry, so that's the
19  issue we should be discussing, I think.
20          **MS. WAGSTAFF:** So Mr. Wisner is going to address the
21  EPA documents.  We sort of split it that way.  I think one
22  notable difference, however, is I do understand that the IARC
23  Monograph is sort of review, but we are bringing a primary
24  reviewer.  We are bringing Dr. Jameson to talk about his
25  review.  He participated in it.  He has been deposed as a fact

1  witness.  He has been deposed as an expert witness.  He has
2  offered testimony in this chair.
3          **THE COURT:**  I can't remember.  Jameson was excluded
4  from general causation, not because he wasn't -- not because he
5  gave a bad opinion but just because it wasn't enough, right?
6          **MS. WAGSTAFF:**  He relied -- in your opinion he relied
7  too much on IARC, so we are bringing him to testify about his
8  experience at IARC.  He is the reviewer who actually
9  participated, who voted, who -- you know, he voted unanimously
10 in the entire 2A decision and that sort of thing.  So in
11 that --
12         **THE COURT:**  I assume that would be during Phase Two.
13         **MS. WAGSTAFF:**  Well, we were planning on bringing him
14 during Phase One.
15         **THE COURT:**  I don't think so.  I mean, why?  Given
16 what I just said about the secondary importance of the IARC's
17 conclusion, why would we get into a big trial about what
18 happened at IARC?
19         **MS. WAGSTAFF:**  Well, we are bringing in somebody who
20 has actually reviewed all of the literature that IARC has
21 reviewed, that he has reviewed that and has come to a
22 conclusion -- and he has actually someone who has --
23         **THE COURT:**  But his opinion, his conclusion, was
24 excluded.
25         **MS. WAGSTAFF:**  I don't think it was excluded in total.

1          **THE COURT:** Because --

2          **MR. WISNER:** He was admitted for --

3          **THE COURT:** I didn't exclude the opinion. That's
4  right. I said he could talk about the animal studies.

5          **MS. WAGSTAFF:** Right.

6          **THE COURT:** Is that right?

7          **MS. WAGSTAFF:** So we have identified him -- we have
8  identified him in our witness list, and we have told Monsanto's
9  attorneys for weeks now that we intend to bring him to testify
10 in Phase One. I was just told this morning that they plan to
11 make some sort of a motion.

12         **THE COURT:** I assume you could have him testify at
13 Phase One about the animal studies, but I'm not sure this war
14 that you guys are having about, you know, the IARC process and
15 how honest or dishonest the IARC process was, you know, I don't
16 think that's for Phase One. Just like a war about how honest
17 or dishonest the EPA approval process was would not be for
18 Phase One.

19         **MS. WAGSTAFF:** Well, sure. However, if the IARC
20 Monograph is coming in -- you know, so if we come in and bring
21 it in, then can't they attack IARC in Phase Two? That's sort
22 of the way I put it in my head is that we would be able to --
23 the same way that other hairs are being split in this case.
24 The bifurcation procedure has created these hurdles that aren't
25 sometimes the most intuitive thing, but we are saying that here

1  is a guy who has reviewed all of this literature.  He is going
2  to come in.  You have allowed him to testify as an expert with
3  respect to toxicology, but he is also a fact witness that they
4  have moved to compel to depose as a fact witness.  So he has
5  actually been rendered a fact witness in this case.
6      Now, they are going to say yeah --
7      **THE COURT:**  A fact witness about how things went down
8  at IARC?
9      **MS. WAGSTAFF:**  In part, yeah -- his opinion --
10     **THE COURT:**  How things went down at IARC is, you know,
11 if anything, for Phase Two.
12     **MS. WAGSTAFF:**  Sure.  Exactly.  But I think that
13 when -- when he comes and testifies to his opinion, I think
14 that we could ask him about his experience with this material
15 and his experience with IARC.
16     **THE COURT:**  You can establish that he worked on the
17 IARC -- on the IARC committee or whatever you call it.  I mean,
18 I would think you would be able to establish that as part of
19 establishing his qualifications.
20     **MS. WAGSTAFF:**  Sure.
21     **THE COURT:**  But Phase One is not for the big fight
22 that you are all having about whether the IARC process was pure
23 or impure, shall we say.
24     **MS. WAGSTAFF:**  Sure, yeah.
25     **MR. WISNER:**  So, Your Honor, I think that's -- I think

1  you are right.  I think that's -- but here is the problem --
2  and this happened in *Johnson*.  So whether it be the EPA or
3  IARC, we believe that the fact that IARC has concluded what it
4  concluded is -- strengthens the opinions of our experts that
5  have gone farther than IARC, but they did conclude what they
6  conclude; and so insofar that IARC came to the conclusion that
7  they know about it, the basis of it, it supports their opinion.
8  I understand you don't want what happened at IARC -- it sounds
9  like a bad '80s flick, what went down at IARC -- but I think
10 here is where the problems start.
11     **THE COURT:**  It is actually kind of interesting what
12 went down at IARC.  Actually be an interesting '80s flick,
13 caucusing and deciding if we are going to change our votes and
14 stuff.  Anyway, go ahead.
15     **MR. WISNER:**  Southern beach in France.
16     All right.  So, but with EPA, here is what happened -- and
17 this is why I think it is really a 403 question, and that is --
18 for Portier, for example, 90 percent of his cross-examination
19 in *Johnson* was, well, the EPA doesn't agree with you, right.
20 That was the cross.
21     **THE COURT:**  Right.  It's going to have to be
22 different.
23     **MR. WISNER:**  Fair enough.  And that was a large part
24 of the directs of their experts, was the EPA agrees with me.
25 So if we are not going to be able to go into the details of

1  experts would simply -- among the things they rely on would be
2  Schinasi and Leon.  It would be *Hardell* and *Eriksson* and
3  *McDuffie* and *De Roos* and this paragraph from the IARC
4  Monograph.
5          **MR. WISNER:**  I think that's right.
6          **THE COURT:**  And to -- if Jameson was involved in it, I
7  gather he probably wasn't because he was a -- a tox person,
8  right.  And maybe Portier was not involved in this part of it
9  either.  But, you know, if they were capable of explaining in
10 more detail what they did, you know, in terms of adjusting the
11 numbers or whatever, maybe they can talk about that.  But
12 that's a far cry from calling out any other part of the IARC
13 Monograph, which is simply a review of the literature, review
14 of the studies.
15         **MR. WISNER:**  That's right.  I think we are okay with
16 that.
17         **THE COURT:**  Okay.
18         **MR. WISNER:**  And just for what it is worth, my concern
19 is can we say IARC concluded X, Y and Z, which we should be
20 allowed to say what they concluded if they are allowed to say
21 EPA concluded.
22         **THE COURT:**  Well, I understand the arguments.  I will
23 give it a little thought in the morning.  We will talk about
24 the foreign regulators.
25         **MR. STEKLOFF:**  I want to touch on Dr. Jameson very

1  quickly, which is that they have disclosed Dr. Jameson in the
2  joint pretrial statement and witness list, and then in the
3  description that is required only as a fact witness.  So I
4  agree that you allowed him after the general causation
5  testimony to testify -- you limited his testimony, but then
6  allowed him to testify on animal studies.  Whether they can now
7  re-visit it, they -- based on you sort of limiting their
8  ability to call him, they did not disclose him in this case
9  that -- it is clear that they only intended on calling him as a
10 fact witness.  We have concerns about that, and I have told him
11 we are planning on filing a motion because his opinions -- I
12 mean, if they had called him as an animal studies expert, we
13 would have been fine.
14          **THE COURT:**  Weren't the motions in limine supposed to
15 be filed already?
16          **MR. STEKLOFF:**  The joint pretrial statement and the
17 witness list came out -- and that description came out after
18 the motions in limine exchange had already happened.
19          **THE COURT:**  Okay.
20          **MR. STEKLOFF:**  To be clear, they had told me on a
21 phone call that they intended on calling Dr. Jameson as a fact
22 witness, but the most -- we didn't know what your ruling on
23 IARC would be, and the actual descriptions and whether they
24 were calling him also as an expert was not clear to us.
25          **THE COURT:**  Okay.  So they haven't disclosed him as a

1  toxicology expert witness for Phase One of the trial?
2          **MR. STEKLOFF:**  Correct.  And --
3          **THE COURT:**  Okay.
4          **MR. WISNER:**  And I think -- well -- I guess it doesn't
5  sound like he can come in as a fact witness in Phase One, which
6  we agree with it.  So maybe we don't need to litigate that.
7      To the extent they are now trying to call him as an animal
8  expert, I guess, the question is just the timing issue.  If we
9  were -- if he was going to be allowed to come in and go into
10  detail about the IARC process, we would --
11         **THE COURT:**  He is definitely not testifying as a fact
12  witness in Phase One.  There is no question about that.
13         **MR. STEKLOFF:**  So we will find out what they are going
14  to do with him as an expert witness.
15         **MR. WISNER:**  I think your Court's ruling, whatever
16  comes out will guide us on what we do.
17         **MR. STEKLOFF:**  On the foreign regulatory issue,
18  Your Honor, just very briefly.  I think that it can be short.
19  It does not have to go into detail.  We do not have to show
20  documents.  But to suggest -- I think there is a very
21  incomplete story that is suggested to the jury, if they only
22  hear about EPA and then the World Health Organization, they are
23  told in 2015 came out with this probable carcinogen finding, it
24  leaves an open question.  And, I mean, I don't know what will
25  be in the juror's minds of, well, was this the first decision

1  by the rest of the world beyond the EPA.
2      So I do think that it is necessary for us to be able to
3  bring out that the world -- the other regulatory bodies around
4  the world had similarly approved glyphosate, and continue to
5  approve glyphosate.  I mean, it doesn't cut off at 2015, to be
6  clear, including post-IARC.
7          **THE COURT:**  I mean, you know, I hadn't thought about
8  this concern, but I think you are right that it is a concern.
9  I mean, a lot of people, you know -- you often hear people
10 say -- and I'm not -- I remember -- I'm not talking about
11 Roundup, although I probably have heard it in the context of
12 Roundup also, but with respect to chemicals or things that
13 might be harmful to people, you often hear people say, I wish
14 we could be more like the Europeans, right?  So there could be
15 this assumption if you just have IARC and EPA, the natural
16 assumption may be that Europe is like IARC, right?  So I hear
17 what you are saying.
18     The question is:  Could it be done in a way that is fair
19 and appropriately cabined?
20         **MR. STEKLOFF:**  And subject to your limiting
21 instruction, Your Honor.
22         **MR. WISNER:**  So, I mean, I think that concern you just
23 voiced, Your Honor, is directly handled by your curative
24 instruction on foreign agencies.  You said don't make up your
25 own mind.  They are just an opinion to look at.

1    **MR. WISNER:**  That was a joke.

2    **THE COURT:**  See you on Friday.  Thank you.

3    **ALL:**  Thank you, Your Honor.

4    **THE CLERK:**  Court is adjourned.

5          (Proceedings adjourned at 5:08 p.m.)

6                    ---oOo---

9                **CERTIFICATE OF REPORTERS**

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

13   DATE:    Wednesday, February 13, 2019

18        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              U.S. Court Reporter

22            Marla F. Knox, RPR, CRR
              U.S. Court Reporter