**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No.: 3:16-cv-05658-VC |
| | MDL No. 2741 |
| *Dickey v. Monsanto Co.,* 3:19-cv-04102-VC | **DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY** |
| *Domina v. Monsanto Co.,* 3:16-cv-05887-VC | |
| *Janzen v. Monsanto Co.,* 3:19-cv-04103-VC | Hearing date: Jan. 29, 2020 |
| *Mendoza v. Monsanto Co.,* 3:19-cv-06046-VC | Time: |
| *Pollard v. Monsanto Co.,* 3:19-cv-04100-VC | |
| *Sanders v. Monsanto Co.,* 3:16-cv-05752-VC | |
| *Tanner v. Monsanto Co.,* 3:19-cv-04099-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on January 29, 2020, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Mr. Stephen Petty.  Monsanto seeks an order excluding opinion of this witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

DATED:  November 26, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*_____
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:     202-847-4005

MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY

## I.      INTRODUCTION

Plaintiffs designated Stephen Petty, an industrial hygienist with degrees in chemical engineering and behavioral marketing, to opine regarding the ultimate issues of whether Monsanto violated the law and whether Monsanto's Roundup labeling was adequate, and the preempted issues of whether Monsanto complied with legal and industry standards in its EPA submissions.  In reality, Plaintiffs' attorneys intend to use Mr. Petty as a conduit to "interpret" company documents, instruct the jury on the law (about which he has no expertise), and usurp the jury's function as factfinder.  Mr. Petty's opinions should be excluded because he is not qualified to offer them and they are not the proper subject of expert testimony.

*First*, Mr. Petty does not have the requisite qualifications to testify in this case.  He is not a regulatory, EPA, or legal expert, nor is he a toxicologist or epidemiologist.

*Second*, qualifications aside, Mr. Petty should not be permitted to offer opinions regarding Monsanto's compliance with legal obligations or industry standards of care, including opinions regarding the adequacy of Monsanto's submissions to the EPA and whether the Roundup labeling complied with EPA regulations or industry standards.  It is the role of the judge, not a purported "expert," to instruct the jury about the applicable law, and it is the role of the jury to determine Monsanto's compliance with the law. Mr. Petty also employs no valid expert methodology to reach these opinions.  And, any opinions that Monsanto defrauded the EPA or violated EPA regulations are preempted by federal law.

*Third*, Mr. Petty's opinions regarding the adequacy of the Roundup labels, and his speculation regarding the effect that different warnings would have had on Plaintiffs' exposures, should be excluded because he is not a labeling expert, he did not follow a reliable methodology, and they are speculative opinions that invade the province of the jury on ultimate legal issues.

*Fourth*, Mr. Petty should not be permitted to narrate documents and put Plaintiffs' spin on them by ascribing motives or knowledge to Monsanto—which comprises the bulk of his proffered opinions.  It is the jury's function to evaluate and interpret the evidence.  Testimony

regarding Mr. Petty's personal "interpretation" of Monsanto's motives and knowledge is not proper expert opinion and should be excluded.

## II.      MR. PETTY'S OPINIONS

In each of these seven cases, Mr. Petty submitted a 500+ page report titled "Factual Summary and Expert Opinions Report." *See* Declaration of Brian Stekloff ("Stekloff Decl.") Ex. 1 ("Petty *Dickey* Rpt.").[1]  This document is largely the wholesale recitation of Monsanto and EPA documents spliced together to tell Plaintiffs' slanted version of glyphosate's history, complete with Mr. Petty's personal "interpretations" of those documents and what he thinks they show about Monsanto's compliance with legal and industry standards.  He also purports to divine Monsanto's knowledge, motive, intent, and state of mind over several decades.  In his reports, Mr. Petty describes the broad areas in which he intends to offer opinions:

> My scope of work was to evaluate **the extent to which Monsanto deviated from the standard of care** - SOC (Monsanto's, Industry's, and the Government SOC) and **was transparent with the information provided to users and to governmental agencies**, such as the United States Environmental Protection Agency (U.S. EPA), Office of Pesticide Programs (OPP), ultimately used to develop warnings (e.g., labels) for their Roundup® products.  Further, I was to opine **on the impacts that any such lack of transparency would have on the users' knowledge** and ability to protect themselves **and thus the resulting increase in their exposure** to hazardous constituents in Roundup® from the lack of such knowledge.

Ex. 1, Petty *Dickey* Rpt. at 2 (emphasis added).  In other words, Mr. Petty intends to tell the jury that Monsanto violated EPA or industry standards; that the Roundup labeling was inadequate; *and* that the labeling's alleged inadequacies caused increased exposure to consumers, including Plaintiffs specifically.  Mr. Petty ultimately describes his "overall opinion" as follows:

> My overall opinion is that Monsanto did not meet their [sic] own, industry's and Governmental Agency's Standards of Care for communication of the hazards of pesticides, in this case Roundup®, and for minimizing their potential/actual effects, to the public and the environment. . .

*Id.* at 266.

---

[1] Mr. Petty submitted largely the same expert report in each of the seven Wave 1 cases in which he was designated, with the exception of Appendices F and G to certain of the reports, which contain plaintiff-specific information.  For clarity and efficiency, unless otherwise noted, Monsanto's citations throughout this brief are to Mr. Petty's Report in *Dickey*.

1   **III.    LEGAL STANDARD**

2          A proposed expert witness must possess "knowledge, skill, experience, training, or

3   education" sufficient to qualify him as an expert on the subject to which his testimony relates.

4   Fed. R. Evid. 702.  When an expert's field of expertise is not related to the subject on which he

5   seeks to offer testimony, such testimony is inadmissible.  *See White v. Ford Motor Co.*, 312 F.3d

6   998, 1008-09 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003).

7          Apart from qualifications, expert testimony must be (1) based upon sufficient facts or

8   data, (2) the product of reliable principles and methods, and (3) the result of applying those

9   principles and methods reliable to the facts of the case.  Fed. R. Evid. 702.  The trial judge is

10  charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific

11  testimony … is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

12  579, 589 (1993).  The proponent of the expert bears the burden of proving that the expert's

13  proffered testimony is admissible.  *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.

14  2007).

15  **IV.    ARGUMENT**

16          **A.    <u>Mr. Petty is Not Qualified to Offer Expert Testimony in These Cases.</u>**

17          Federal courts have frequently recognized that when an expert's field of expertise is not

18  related to the subject at issue, such testimony will not aid the jury and is inadmissible.  *See Whit.*,

19  312 F.3d at 1008-09  ("A layman, which is what an expert witness is when testifying outside his

20  area of expertise, ought not to be anointed with ersatz authority as a court-approved expert

21  witness for what is essentially a lay opinion.").  Here, Mr. Petty lacks expert qualifications on

22  any of the topics on which he is proffered.

23          Mr. Petty is an industrial hygienist with degrees in engineering and behavioral marketing.

24  *See generally* Ex. 2, Petty CV; Ex. 3, Petty *Janzen* Dep. at 30: 21-31:1, Ex. 4, Petty *Winston*

25  Dep. Vol. I. at 32:4-5.  A self-described "safety expert," Mr. Petty has no particular experience

26  with pesticides and has never before served as an expert witness in a case involving pesticides.

27  *See Id.* at 33:5-8, 54:3-6; Ex. 7, Petty *Winston* Dep. Vol. IV (8/27/19) at 83:10-17; Ex. 9, Petty

28

MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY

*Mendoza* Dep. at 107:20 (describing himself "as a health and safety expert").

> **1.** ***Mr. Petty Is Not Qualified to Offer Legal, Regulatory, or Labeling Opinions.***

First, Mr. Petty is not qualified to opine on the adequacy of Monsanto's submissions to the EPA, Monsanto's compliance with EPA regulations, or the adequacy of the Roundup warnings.

A review of Mr. Petty's education, background, and experience make clear that he is not qualified as an EPA regulatory or labeling expert. Mr. Petty is not a lawyer and has never been employed by the EPA or any pesticide company. *See* Ex. 10, Petty *Pollard* Dep. at 8:8-9, 13:4-6, 39:3-12. He has never drafted a pesticide label or a Safety Data Sheet for a pesticide, nor has he ever submitted a product for EPA registration. Ex. 10, Petty *Pollard* Dep. at 13:7-14; Ex. 11, Petty *Domina* Dep. at 118:7-8. In fact, his education and training related to product warnings consists of two one-week training courses that contained some training on warnings. Ex. 6, Petty *Winston* Dep. Vol. III at 16-17. Aside from litigation, Mr. Petty has never even evaluated the adequacy of any product warning, conducted a study on consumer product warnings, or opined that FIFRA violations were violated. Ex. 6, Petty *Winston* Dep. Vol. III at 17-18; Ex. 10, Petty *Pollard* Dep. at 11-16.

Mr. Petty seeks to tell the jury that Monsanto violated FIFRA and EPA regulations, but his complete lack of FIFRA expertise was palpable throughout his depositions. In a deposition earlier this year in another Roundup case, Mr. Petty tacitly admitted that he is not an expert in the EPA registration process:

> Q:   Are you a specialist? **Are you well-versed in the EPA registration process?**
>
> A:   **I don't think I'm being offered up as that**. I'm being offered up as an exposure and warnings expert.

Ex. 5, Petty *Winston* Dep. Vol. II at 116:22-117:1; *see also* Ex. 2, CV; Ex. 8, Petty *Winston* Dep. Vol. V at 205:11-206:16. In his depositions in these cases, Mr. Petty testified that he was familiar with EPA's procedures for warnings "to some extent." Ex. 11, Petty *Domina* Dep. at 117:12-14. He admitted that he does not know if a pesticide manufacturer is required to follow

- 4 -

FIFRA's Label Review Manual, and he claimed that EPA's own guidance document regarding personal protective equipment does not comport with the law. *See* Ex. 11, Petty *Domina* Dep. at 74:20-24, 84:1-13.

Expert witnesses are not permitted to opine on areas beyond the scope of their expertise. *See Apple, Inc. v. Samsung Elects. Co* , 2013 WL 5955666, at *2 (N.D. Cal. Nov. 6, 2013); *Cover v. Windsor Surry Co.*, 2017 WL 9837932, at *18 (N.D. Cal. July 24, 2017) (expert's "vague assurance that his opinions are reliable and backed by his education and experience is not persuasive when these opinions fall outside the normal scope of his expertise.").   As the Ninth Circuit has cautioned, "[a] A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion." *White*, 312 F.3d at 1008-09.  Mr. Petty is an industrial hygienist—not a toxicologist, epidemiologist, or regulatory expert.  His general experience with "human behavior" and "safety" does not qualify him as a labeling or EPA regulatory expert in these cases.

>    2.    ***Mr. Petty Is Not Qualified to Opinions Regarding Toxicological or Epidemiological Effects of Roundup.***

Mr. Petty similarly is not qualified to offer opinions regarding the toxicological or epidemiological effects of Roundup (or its ingredients) on dermal exposure.  Mr. Petty is not an epidemiologist or toxicologist. Ex. 2, CV; Ex. 11; Petty *Domina* Dep. at 152:7-8. *See also* Ex. 9, Petty *Mendoza* Dep. at 18:3 ("I'm not the epidemiologist on this project"); Ex. 11, Petty *Domina* Dep. at 116:19 ("I'm not the toxicologist on this project").   Nor is he an expert on carcinogenicity. *See*, *e.g.*, Ex. 9, Petty *Mendoza* Dep. at 34:14-22; Ex. 3, *Janzen* Dep. at 48:17-21 ("And the reason that you're not going to offer an opinion on all the carcinogenicity studies is because, as you've said, you're not the cancer expert. That's Dr. Portier or somebody else? A: That's my understanding.").

Mr. Petty admits that he is <u>not</u> offering any causation opinions in these cases. *See*, *e.g.*, Ex. 3, Petty *Janzen* Dep. at 46:3-7 ("I'm precluded from being a specific causation expert

because I don't have a medical degree. . . I will not offer specific causation opinions so—and I'm not qualified to do so."); *id.* at 139:4-5 ("I don't know how many times I've told you **I'm not the causation expert**") (emphasis added); *id.* at 8-9 ("**That is a causation question. I'm not going to offer those opinions here**.").

Yet,  as part of his theory that Monsanto's submissions to the EPA were misleading or inadequate, he seeks to opine that Monsanto should have listed POEA (a surfactant in Roundup) as an active, rather than an inactive, ingredient on submissions to the EPA and on labeling.  Ex. 1, Petty *Dickey* Rpt. at 26; Ex. 10, Petty *Pollard* Dep. at 49:3-6. He goes so far as to opine that Monsanto "misrepresent[ed] POEA to the U.S. EPA." Ex. 1, Petty *Dickey* Rpt. at 263.  Mr. Petty is not a toxicologist or epidemiologist, and he possesses no relevant expertise or education that would qualify him to offer this opinion.  Instead, he has admitted that he has not reviewed all the studies on POEA but nonetheless says that "[b]ased on what I've seen, [POEA] appears to fit the definition of an active ingredient." Ex. 5, Petty *Winston* Dep. Vol. II. at 138:20-21.  An industrial hygienist's review of a few studies outside his area of expertise does not render him qualified to opine about the appropriate classification of ingredients in EPA submissions.

### 3. Mr. Petty Is Not Qualified to Offer Opinions Regarding His "Interpretations" of Monsanto's Documents and Communications

Even if "interpreting" company documents were a proper area of expert testimony (it is not—see Section __, *infra*), Mr. Petty certainly is not qualified to do so.  Mr. Petty has never been employed by Monsanto, the EPA, or any company that manufactures pesticides. *See* Ex. 10, Petty *Pollard* Dep. at 13:4-6, 8:8-9.  He has no special training on how to interpret emails and admits that no such training would even be possible. Ex. 10, Petty *Pollard* Dep. at 18:19-19:1; 21:3-15. And of course, he admits that he cannot know what is in another person's mind. Ex. 10, Petty *Pollard* Dep. at 22:2-7.

*        *        *

Mr. Petty is not a pesticide or regulatory expert.  He is not a toxicologist or epidemiologist. And he is not an expert in interpreting company emails or documents.  Mr.

- 6 -

Petty's experience as an industrial hygienist and his catch-all, self-professed expertise in "safety" does not qualify him to give his personal opinions on the ultimate issues in these cases.

Mr. Petty lacks the qualifications necessary under Federal Rule of Evidence 702 to opine about any of the topics referenced in his expert witness designation, and his testimony should therefore be excluded.

**B.      Mr. Petty's Opinions Regarding Monsanto's Compliance with Legal, Regulatory, and Industry Standards Should Be Excluded.**

Mr. Petty seeks to offer his criticisms of Monsanto's interactions with the EPA and Monsanto's labeling under the guise of expertise he does not possess.  Among other things, Mr. Petty seeks to opine that Monsanto's submissions to the EPA violated its legal or ethical obligations and that the Roundup labeling—which at all times has been EPA-approved—violates FIFRA regulations in numerous respects.  He also seeks to opine that Monsanto "violated federal and state statutes regarding false and misleading advertising" and  violated "industry stewardship policies and historical best practices to transparently share information about their products." Ex. 1, Petty *Dickey* Rpt. at 266.

Mr. Petty is not qualified to offer such opinions, as detailed above.  Qualifications aside, these opinions should be excluded for several other reasons.

***1.      Mr. Petty's Opinions Regarding the "Standard of Care" and EPA Regulations are Not Reliable and Invade the Function of the Court to Instruct the Jury on the Law.***

First, it is for this Court—not Mr. Petty—to determine the applicable law and instruct the jury on that law.  The bulk of Mr. Petty's "opinions" involve him simply reviewing various sections of FIFRA or what he thinks are ethical "standards," and then assuming that they must apply to Monsanto's conduct in this case.  *See supra*.  In this regard, Mr. Petty invades the function of the Court to instruct the jury on the law, and his opinions are also unhelpful and would cause considerable confusion to the jury about what laws apply in this case.

Moreover, Mr. Petty's "standard of care" opinions are not based on any reliable methodology.  This is unsurprising, given his lack of expertise in the relevant industry.  Mr. Petty

- 7 -

1   has never worked for a company like Monsanto, yet he repeatedly offered his conclusory opinion

2   that Monsanto violated the "standard of care."  When asked to define the "standard of care" that

3   he claimed applies to Monsanto, Mr. Petty has testified that he determined the applicable

4   standard based on excerpts of statements made by Monsanto employees in speeches or

5   depositions, including a speech *in 1989* wherein the CEO commented that Monsanto should

6   "deal[] with people openly and freely." Ex. 6, Petty *Winston* Dep. Vol. III at 8, 28. *See also* Ex.

7   1, Petty *Dickey* Rpt. at 241, 266.   Based on that remark from Monsanto's CEO at a speech

8   decades ago, Mr. Petty determined that Monsanto was under a broad "self-imposed" standard of

9   care to be "transparent with the impacts of the products on people and the environment," which

10   he claims it violated. Ex. 1, Petty *Dickey* Rpt. at 241.[2]

11   Mr. Petty's "opinions" in this regard do little more than instruct the jury on Monsanto's

12   legal duties—a function held by this Court, not a partisan expert.  "Personal views on proper

13   corporate behavior are not appropriate expert opinions." *In re Bard IVC Filters Prods. Liab.*

14   *Litig.*, 2018 WL 495187, at *3 (D. Ariz. Jan. 22, 2018); *See also In re Rezulin Prods. Liab.*

15   *Litig.*, 309 F. Supp. 2d 531, 542-43 (S.D. N.Y. 2004) ("The opinions of plaintiffs' witnesses,

16   however distinguished these individuals may be as physicians and scientists, concerning the

17   ethical obligations of pharmaceutical companies and whether the defendants' conduct was

18   ethical are inadmissible …."); *United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009)

19   ("Moreover, it is 'the judge and not a witness' that 'is to instruct the fact finder on the applicable

20   principles of law.'").

21   In an already complex case, Mr. Petty should not be permitted to inject regulations and

22   "standards" on which he is not an expert, which may not apply, and that will only distract the

23   jury from its task of determining whether Monsanto's conduct complied with the applicable laws

24   as stated in the jury instructions.

---

25
26   [2] Mr. Petty also reads from various other documents dating back decades that he claim form "industry
standards," including standards for the *petrochemical* industry (an industry that includes companies like
27   ExxonMobil and Shell), which he claims apply to Monsanto's conduct concerning pesticide labeling. *See*
Ex. 6, Petty *Winston* Dep. Vol III. at 49-50.

28

MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY

### 2.     Opinions Regarding Monsanto's Compliance with Legal or Ethical Obligations Should Be Excluded.

Not only does Mr. Petty seek to tell the jury about myriad "standards" and regulations that he thinks Monsanto should be judged against; he also seeks to tell the jury that Monsanto violated those regulations and standards.   Mr. Petty's report is filled with dozens, if not hundreds, of "opinions" regarding Monsanto's alleged violations of FIFRA, most of which have nothing to do with these cases and have no reliable basis other than his own say-so.   For example, he seeks to opine that Monsanto's 30(b)(6) testimony in this litigation is "in violation of FIFRA." *See* Ex. 1, Petty *Dickey* Rpt. at 125 ("Mr. Muckerman's continual statements as Monsanto's Corporate Representative that the EPA has said glyphosate-based Roundup products are safe is also in violation of FIFRA.").  *See also id.* at 152-53 (opining that statement in a 2009 and 2010 EPA-approved Roundup labels "is a violation of the U.S. EPA's requirements for dermal protection.");

One need look no further than Mr. Petty's own description of the "methodology" he employed to see that he does not possess any specialized expertise, that his "methodology" is not reliable, and that these opinions fall squarely within the province of the jury as the factfinder tasked with determining whether Monsanto's conduct violated the applicable law as stated in the jury instructions.   Mr. Petty explained that, to formulate his opinions about whether Monsanto violated its legal obligations, he simply read the law (or what he believed the law to be) and then compared it with Monsanto's conduct:

> Q:     So you intend to offer opinions in this case that Monsanto violated laws?
>
> A:     I intend to say **with a comparison and contrast with what the law says and what they did, that there is—that they didn't follow that language, yes.**

Exhibit 10, Petty *Pollard* Dep. at 40:23-41:2 (emphasis added).[3]

**This is _exactly_ what a jury is asked to do**.  Mr. Petty attempts to be both judge and jury,

---

[3] *See also* Ex. 1, Petty *Dickey* Rpt. at 266 ("The methodology used was to compare and contrast (i.e. differential diagnosis) Monsanto's actual behavior with respect to its own, Industry's and Governmental Agency Standards of Care for communication of hazards of pesticides, in this case Roundup®, and for minimizing their potential/actual effect, to the public and the environment versus what would be required based on these Standards of Care.").

deciding what law he thinks applies and then deciding whether Monsanto "complied" with that law.  *See*, *e.g.*, *Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (excluding expert testimony on legal issue).  Mr. Petty's "compare and contrast" methodology is not a reliable expert methodology at all.  It also is not helpful to the jury, as the jury is fully capable of—and in fact is charged with—comparing Monsanto's conduct to the applicable law.

Mr. Petty's "standard of care" and "legal obligation" opinions fail every requirement for an admissible expert opinion: he is not qualified to offer them, they lack a reliable methodology, and they invade the function of the court to instruct on the applicable law and jury to compare Monsanto's conduct to that law.  Mr. Petty should not be permitted to testify about Monsanto's compliance with legal, regulatory, or ethical duties.

### 3.       Opinions Regarding Compliance with EPA Regulations are Preempted.

Finally, any claim that Monsanto violated federal law and EPA regulations, or misled the EPA, is preempted. There is no private right of action to enforce claimed violations of EPA regulations, as EPA has the sole power to determine whether its regulations are followed.  *See Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993) ("[I]t is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made."); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001) (holding plaintiffs' claims were preempted because there is no private right of action for violations of the Food, Drug & Cosmetic Act); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205, 1206 (9th Cir. 2002) (finding that the "rationale articulated by the Supreme Court in *Buckman* applies" to EPA and that EPA has enforcement powers for violation of its regulations, including "elaborate internal hearing and appellate review procedures to determine whether a registrant has violated any provision of FIFRA"). Opining on whether Monsanto complied with a regulatory standard on registration matters invades the exclusive province of the EPA.  Therefore, Mr. Petty should be precluded from offering any testimony on alleged violations of EPA/FIFRA regulations.

### C.     Mr. Petty's Opinions Regarding the Adequacy and Effect of Roundup Labeling Should Be Excluded.

Mr. Petty also seeks to offer his personal opinions on one of the ultimate issues in this case: whether the Roundup labeling was adequate—in other words, whether Monsanto is liable for failure-to-warn.   Not only does Mr. Petty opine that the Roundup labeling should have contained different warnings, but for several of the Plaintiffs, he *also* improperly speculates that different or additional warnings would have been followed by the Plaintiffs <u>and</u> would have reduced their exposures.

As discussed above, Mr. Petty is not qualified to offer opinions regarding the adequacy of Monsanto's labeling.   He is not an expert in the EPA registration process, and his education related to product warnings consists of a couple of one-week training courses that contained some training on warnings. Ex. 6, Petty *Winston* Dep. Vol. III at 16-17.  Aside from litigation, he has never evaluated the adequacy of any product warning or conducted a study on consumer product warnings. *Id.* at 17-18.  He has never been employed by a pesticide company, submitted a pesticide label to the EPA, or been asked by the EPA to review a pesticide label.  Ex. 8, Petty *Winston* Dep. Vol. V at 205:11-206:16.

The adequacy of Monsanto's labeling is an ultimate issue in these.  The jurors are fully capable of reviewing the warnings and deciding for themselves whether those warnings are adequate according to the law applicable to Plaintiffs' claims.   Mr. Petty should not be permitted to give his personal "opinion" on that ultimate issue—particularly where he is not an EPA or pesticide expert.

Moreover, as part of his labeling opinions, Mr. Petty also seeks to opine regarding "the impacts that [ ] lack of transparency would have on the users' knowledge and ability protect themselves and thus the resulting increase in their exposure to hazardous constituents in Roundup from the lack of such knowledge."  Ex. 1, Petty *Dickey* Rpt. at 2.   None of these opinions is appropriate for expert testimony.  The jury is well-suited to consider how labeling would impact a person's knowledge without needing expert testimony on that topic.

Mr. Petty similarly should not be permitted to opine that different warnings would have

- 11 -

resulted in reduced exposures *to Plaintiffs specifically*.  Mr. Petty is neither a toxicologist nor an epidemiologist, and he admits he did not conduct a dose analysis or risk assessment .  *See, e.g.*, Ex. 12, Petty *Dickey* Dep at 108:16-17, 110:2-4;  Ex. 3, Petty *Janzen* Dep. at 143:3.  For two of the Plaintiffs—Sanders and Tanner—Mr. Petty did not even attempt to evaluate the Plaintiffs' exposures or offer opinions about them.  *See* Ex. 3, Petty *Janzen* Dep. at 14:22-17:3.  Thus, Mr. Petty indisputably cannot offer any opinions with respect to those two Plaintiffs' exposures.  For the remaining five Plaintiffs (Dickey, Domina, Janzen, Mendoza, and Pollard), Mr. Petty's opinions are based on perfunctory "dermal exposure" calculations he performed based solely on interviews with Plaintiffs. *See*, *e.g.*, Ex. 12, Petty *Dickey* Dep. at 45:24-48:5, 53:23-54:9, 137:10-12 (did not review depositions or medical records, or make an effort to corroborate interview statements); Ex. 11, Petty *Domina* Dep. at 20:22-21:8; Ex 3, Petty *Janzen* Dep. at 157:18-158:7; Ex. 10, Petty *Pollard* Dep. at 67:20-68:1, 102:3-17.  But these "interviews" do not follow a reliable scientific methodology and are an improper attempt to bolster Plaintiffs' testimony regarding their exposures by having an expert witness repeat it.  For example, Mr. Petty did not ask Plaintiff Mendoza if she wore long-sleeved shirts or pants when using Roundup or what other pesticides or herbicides she may have been exposed to. *See* Ex. 9, Petty *Mendoza* Dep. at 65, 92.   Nor did he ask Mr. Janzen if he read the full Roundup label. *See* Ex. 3, Petty *Janzen* Dep. at 157:1-3.  Mr. Petty cannot possibly opine that a different label would have reduced Plaintiffs' exposures without this information.

Permitting Mr. Petty to tell the jury about Plaintiffs'' alleged exposures—based solely on interviews with Plaintiffs—is nothing more than lay testimony masquerading as expert testimony.   The jury will have the opportunity hear from Plaintiffs directly, and the jury is fully capable of deciding for itself whether it believes that a different warning would have impacted Plaintiffs' behavior.

### D.   Mr. Petty Should Not Be Permitted to Narrate Documents or Speculate About Monsanto's Motives, Intent, or State of Mind.

Plaintiffs' counsel in these cases also seek to use Mr. Petty as a mouthpiece to parrot and

put their spin on documents produced in discovery under the guise of expert testimony.  These opinions are not the proper subjects of expert testimony because they intrude on the role of the jury and do not require any specialized knowledge or skill outside the understanding of a layperson.  *Sanchez v. Boston Sci. Corp.*, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate documents, which is not helpful to the jury."); *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 4961455, at *4 (S.D.N.Y. Oct. 10, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury traditionally relies upon to answer the sort of questions that a jury traditionally answers.").

### 1.  *Mr. Petty Should Not Be Permitted to Narrate Company Documents.*

An expert who merely reads or summarizes documents for the jury is not providing helpful testimony because the jury is capable of reading those documents and reaching conclusions about them on its own.  In the *Hardeman* trial, this Court recognized that factual narrative is not the proper subject of expert testimony and excluded several of Dr. Benbrook's proffered opinions on that basis:

> So Benbrook I think is easy.  I don't need to hear any further argument on it.  The three – the – first three items that – that you propose to testify about, **I do not think are properly the subject of expert testimony.  They are factual narrative.**  The information that you say you want to get out of Benbrook, you should be able to or should have been able in deposition – been able to get that information out of fact witnesses.  So Benbrook will not be allowed to testify on those three topics.  I also think it is highly unlikely that Benbrook is qualified to testify on those three topics, but I don't think it matters because I don't think they are the subject of expert testimony.

Ex. 13, *Hardeman* Trial Tr. 2103:23-2104:13 (emphasis added).  Mr. Petty's proffered testimony is no different.  He repeatedly narrates and provides his opinion about what corporate documents written by, to or about Monsanto employees mean to *him* based on his personal opinion.

Even a cursory review of Mr. Petty's reports demonstrates that they consist largely of wholesale recitation of select documents and e-mails, carefully pieced together to paint a narrative that Plaintiffs' counsel would like to present to the jury.  *See, e.g.*, Ex. 1, Petty *Dickey* Rpt., at 37 ("Four conclusions can be drawn from this string of correspondence…"), 35 ("In this

e-mail, Garret writes:…"). *See also id.* at pp. 35-40, 50-52, 159-161.  As one Court recently noted, "mere narration fails to fulfill *Daubert*'s most basic requirements." *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd sub nom. Scentsational Techs. LLC. V. PepsiCo, Inc.,* 773 F. App'x 607 (Fed. Cir. 2019).  Mr. Petty's proposed testimony is not "expert" testimony at all, because reading and interpreting e-mails and memoranda does not require specialized knowledge or skill outside the understanding of the layman.

Federal courts regularly exclude experts that offer an advocacy-based recitation of documents.  In *Baldonado v. Wyeth*, the Northern District of Illinois precluded an expert from testifying to "narrative histories" summarizing a pharmaceutical company's promotion of a hormone therapy drug because the testimony did not involve any "scientific, technical or other specialized knowledge."  No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012).  The court, citing similar rulings, reasoned that:

> [A]llowing an expert to provide summary testimony "based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself."  *United States v. Vance*, No. 07–CR–351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011) (citing *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.")).

*Id.*  The court in *In re Rezulin Products* also barred a "narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence."  309 F. Supp. 2d at 551.  It also invades the jury's core function to review the evidence and make factual determinations. *See City of New York*, 2018 WL 4961455, at *4.  Other courts agree that such narrative testimony of company and regulatory documents is inadmissible.[4]

---

[4] *See also In re Prempro Prods. Liab. Litig.,* 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) "If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"); *Pritchett v. I-Flow Corp.*, 2012 WL 1059948, at *7 (D. Colo. Mar. 28, 2012) ("The Court must recognize the inherent power of expert testimony in determining whether to allow an expert to summarize documents that the jury could just as easily summarize itself.  Allowing an expert witness to do so may imprint the

- 14 -

1    Mr. Petty should not be permitted to read, narrate, or regurgitate company or EPA

2    documents and provide his own "interpretation" of those documents under the guise of expert

3    opinion.   The jury is fully capable of reviewing, interpreting, and forming its own opinions

4    regarding the documentary evidence in this case.

5           **2.    Mr. Petty Should Not Be Permitted to Speculate About Monsanto's
               Motive, Intent, or State of Mind, or to Offer His Personal
6               "Interpretation" of Documents Based on Such Speculation.**

7           Experts may not opine as to the intent, motive, or state of mind of a corporation or its

8    employees, because that would substitute the expert's judgment for the jury's.  *See, e.g., Oracle*

9    *America Inc., et al. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11,

10   2018) ("Courts routinely exclude as impermissible expert testimony as to intent motive, or state

11   of mind" because such testimony "would be merely substituting the expert's judgment for the

12   jury's . . ." (quotations and citations omitted)); *In re C.R. Bard, Inc., Pelvic Repair System Prods.*

13   *Liab. Litig.*, MDL No. 2187, 2018 WL 4212409, at *3 (S.D. W.Va. Sept. 4, 2018) (defendant's

14   "knowledge, state of mind, or other matters related to corporate conduct are not appropriate

15   subjects of expert testimony. . ."); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 442

16   (E.D.N.Y. 2011) ("[O]pinions of [expert] witnesses on the intent, motives, or states of mind of

17   corporations, regulatory agencies, or others have no basis in any relevant body of knowledge or

18   expertise.").  As these authorities recognize, an expert who purports to know what a company (or

19   its employees) was thinking is speculating, and such testimony would not be helpful to the jury.[5]

20          Mr. Petty's reports and deposition testimony are rife with his speculation about what he

21   believes Monsanto thought, knew, or intended based on his personal "interpretation" of company

22   ───────────────────────────────────────────

23   documents with 'a tilt favoring a litigant,' which hinders impartial adjudication of the merits instead of
     promoting it." (citing *In re Prempro*, 554 F. Supp. 2d at 887)); *Scentsational Techs., LLC*, 2018 WL
24   1889763, at *4 (holding that expert cannot opine on a party's state of mind or narrate documents; it is
     "inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful
     documents for a case, in effect simply accumulating and putting together one party's 'story'"); *In re*
25   *Seroquel Prods. Liab. Litig.*, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("Plaintiffs' counsel may
     not simply use these expert witnesses to provide a narrative history of [the defendant's] marketing and
26   labeling practices ...."); *Lopez v. I-Flow Inc.*, 2011 WL 1897548, at *10 (D. Ariz. Jan. 26, 2011).

27   [5] Mr. Petty has never been employed by Monsanto, nor has he interviewed any Monsanto employees,
     officers, or directors. *See* Ex. 8, Petty *Winston* Dep. Vol. V at 208:8-15.

28

documents.  Mr. Petty does not even try to hide his improper opinions.  For example, he recites company documents, explicitly opines that the statements therein "provide additional insight into Monsanto's knowledge and intentions as well," and then goes on to give his personal opinion about Monsanto's intentions. Ex. 1, Petty *Dickey* Rpt. at 39.  Numerous similar examples appear throughout Mr. Petty's voluminous reports:

- "Clearly the Wester iv-experimental dermal results were misrepresented in the paper and **Monsanto understood this fact**…" Ex. 1, Petty *Dickey* Rpt. at 59.

- "Thus, by 2001 **Monsanto clearly knows** that so long as their customers are not educated on the difference in PPE between the signal words "CAUTION" and "WARNING" on Roundup products, they would likely not lose market share." *Id.* at 227.

- "These **documents clearly illustrate Monsanto knew** the market and sales implications…" *Id.* at 227.

- "The following correspondence between Mr. Bruce Chassy and Mr. Daniel Goldstein **illustrate contempt for science**…" *Id.* at 260.

During his depositions, Mr. Petty made clear that his only "methodology" for divining Monsanto's purported intent and knowledge was to read internal e-mails and speculate about the authors' intentions based on his reading of those emails:

> Q:    Top bracket, you state: Donna Farmer – I'm looking at number one – Donna Farmer says privately that one cannot say Roundup does not cause cancer but wants to say publicly that Roundup does not cause cancer.
>
> A:    Yes.
>
> Q:    Okay. You say that?
>
> A:    Those are my words, yes.
>
> Q:    Okay. How do you know, what methodology did you go through to understand what Donna Farmer wanted to say publicly? **How did you understand her intent?**
>
> A:    **By reading the previous document.**
>
> Q:    By reading the email?
>
> A:    Reading the email.

Ex. 10, Petty *Pollard* Dep. at 33:17-34:5.  *See also id.* at 36:20-22 ("Q: What methodology did you employ to figure out what Dr. Farmer really does not know? A: Her own emails."); *id.* at

- 16 -

38:10-13 ("What methodology did you undertake to determine that Monsanto wanted to deceive the public? A: Compared and contrast their internal documents.").

These are but a few of dozens of examples wherein Mr. Petty reads a document, then gives his "opinion" about what Monsanto knew or intended.  But, as courts routinely recognize, "expert testimony as to intent, motive, or state of mind" is impermissible because it "would be merely substituting the expert's judgment for the jury's." *Oracle America Inc.*, 2018 WL 6511146, at *3.   Plaintiffs are not entitled to have a partisan "expert" with the Court's imprimatur narrate company documents and place his own spin on them.  Mr. Petty's testimony in this regard squarely invades the province of the jury and should be excluded.

## V.     **CONCLUSION**

For the foregoing reasons, this Court should exclude the testimony of Stephen Petty in its entirety because he is not qualified to offer the opinions he proffers.  In the alternative, he should be excluded from offering testimony regarding: (1) the legal, regulatory, or industry standards that apply to Monsanto's conduct; (2) the extent to which Monsanto complied with legal, regulatory, ethical or industry standards or obligations, including the adequacy of Monsanto's submissions to the EPA; (3) the adequacy of Monsanto's labeling and the effect different labeling would have on consumers, including Plaintiffs specifically; (4) narration of Monsanto company documents; and (5) Monsanto's motive, intent, or state of mind.

1    Dated:  November 26, 2019

2

3                                    By:    */s/ Brian L. Stekloff*

4                                           Brian L. Stekloff (*pro hac vice*)
                                            bstekloff@wilkinsonwalsh.com
5                                           Tamarra Matthews Johnson (*pro hac vice*)
                                            tmatthewsjohnson@wilkinsonwalsh.com
6                                           Rakesh Kilaru (*pro hac vice*)
                                            rkilaru@wilkinsonwalsh.com
7                                           WILKINSON WALSH + ESKOVITZ LLP
                                            2001 M St. NW
8                                           10th Floor
                                            Washington, DC 20036
9                                           Tel:   202-847-4030
                                            Fax:  202-847-4005
10
11                                          Attorneys for Defendant Monsanto Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          - 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Brian L. Stekloff*

MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY