# EXHIBIT 1

Jerald Carriere

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3

 4   IN RE: ROUNDUP PRODUCTS

     LIABILITY LITIGATION

 5

     This document relates to:        Case No.

 6                             MDL No. 3:16-md-2741-VC

 7   Jerald Carriere

 8      vs.                    Case No. 3:18-cv-05887

 9   Monsanto Company

10   _____

11

12

13            VIDEOTAPED DEPOSITION OF

14               JERALD CARRIERE

15

16            Tuesday, July 16, 2019

17            9:43 A.M. TO 5:09 P.M.

18

19             Torrance, California

20

21

22

23         Golkow Litigation Services

          877.370.3377 ph-917.591.5672 fax

24              deps@golkow.com

25
```

```
 1            UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3

 4  IN RE: ROUNDUP PRODUCTS

    LIABILITY LITIGATION

 5

    This document relates to:

 6

    Jerald Carriere

 7

        vs.                      Case No.

 8                        MDL No. 3:16-md-2741-VC

    Monsanto Company

 9


    _____

10

11

12

13              VOLUME 1

14         VIDEOTAPED DEPOSITION OF

15             JERALD CARRIERE,

16

17  taken at the offices of Law Offices, 3620 Pacific

18  Coast Highway, Suite 200, Torrance, California, on

19  Tuesday, July 16, 2019, at 9:43 A.M., before Lori

20  Byrd, Registered Professional Reporter, Certified

21  Realtime Reporter, Certified LiveNote Reporter,

22  Realtime Systems Administrator, Kansas Certified

23  Court Reporter 1681, and Certified Shorthand

24  Reporter in and for the State of California 13023.

25
```

Jerald Carriere

```
 1    APPEARANCES:

 2

 3        For the Plaintiff:
 4            LOCKRIDGE GRINDAL NAUEN P.L.L.P.
              BY:  YVONNE M. FLAHERTY, ESQUIRE
 5            100 Washington Avenue South
              Suite 2200
 6            Minneapolis, Minnesota  55401-2179
                  Phone 612-339-6900
 7                Fax 612-339-0981
                  E-mail ymflaherty@locklaw.com
 8

 9        Also for the Plaintiff:
          Via Mobile Phone Speakerphone
10        from Remote Location:
11            MOORE LAW GROUP, PLLC
              BY:  JENNIFER MOORE, ESQUIRE
12            1473 South 4th Street
              Louisville, Kentucky  40208
13                Phone 502-717-4080
                  E-mail jennifer@moorelawgroup.com
14

15

          For Defendant Monsanto:
16

              SHOOK, HARDY & BACON L.L.P.
17            BY:  H. GRANT LAW, ESQUIRE
              One Montgomery Tower
18            Suite 2600
              San Francisco, California  94104-4505
19                Phone 415-544-1900 or 415-544-1946
                  Fax 415-391-0281
20                E-mail hlaw@shb.com
21

22    LEGAL VIDEOGRAPHER:
23            ANIA BILINSKA
24    ALSO PRESENT:
25            NO ONE
```

Jerald Carriere

1       A.   Yes.

2       Q.   And did you review the request for

3  documents that is part of that exhibit, 1 through

4  13?

5       A.   Yes.

6       Q.   Have you produced all documents responsive

7  to those requests in your possession, custody or

8  control?

9       A.   Yes.

10          MR. LAW:  And, Counsel, just, then, maybe

11  we can confirm:  You've relayed all documents that

12  he has produced responsive to these requests?

13          MS. FLAHERTY:  That is correct.

14          MR. LAW:  And is it accurate that, aside

15  from the medical records themselves, that he has no

16  responsive documents?

17          MS. FLAHERTY:  That is correct.  And just

18  so the record is clear, we have produced all medical

19  or pharmacy records that are in our possession.

20          MR. LAW:  Right.  I think so --

21          MS. FLAHERTY:  And anything that he has

22  given us, we have produced.

23          MR. LAW:  Okay.  And just to kind of, you

24  know, cover a few tracks.  There's requests for

25  things like any diaries or journals or calendars or

Jerald Carriere

1   notes that would relate to the claims in this case.

2           And the response is you don't have any?

3           MS. FLAHERTY:  That is correct.

4           MR. LAW:  And in terms of any purchase of

5   Monsanto products, or certainly any Roundup

6   products, or any labels or anything like that, he

7   hasn't collected any and has not produced any.  Is

8   that correct?

9           MS. FLAHERTY:  He has not produced any to

10  us, that's correct.

11          MR. LAW:  All right.  I'm going to just

12  cover these just real briefly.  I think this is

13  going to go quick.

14          THE WITNESS:  Okay.

15          MR. LAW:  Since you didn't produce

16  anything.  So bear with me.

17  BY MR. LAW:

18      Q.   So number 1, we talked about diaries and

19  journals.

20           And you don't have anything like that.

21  Correct?

22      A.   Uh-huh.

23      Q.   Is that correct?

24      A.   Correct.

25      Q.   And any documents that would refer to the

Jerald Carriere

```
 1   buildings or other --

 2       A.   No.

 3       Q.   -- constructions that would cover up that

 4   part of the lot.  Correct?

 5       A.   Correct.

 6       Q.   And in the two or three years that you

 7   owned that building, can you describe what type of

 8   vegetation was back there?

 9       A.   Weeds.

10       Q.   Was there ever a planted turf or lawn?

11       A.   Somewhat.  Somewhat.

12       Q.   Was it there when you got it?

13       A.   Yes.

14       Q.   And did you plant any lawn back there?

15       A.   I tried to.

16       Q.   And what went wrong?

17       A.   Tough soil.  And no one would take care of

18   it but me.

19       Q.   All right.  You had rental tenants the

20   whole time?

21       A.   I had tenants and they were supposed to be

22   responsible for the landscaping, but they never did.

23       Q.   All right.  And during the time that you

24   owned and managed that property, did you do weed

25   control using herbicides?
```

Jerald Carriere

1      A.   Yes.

2      Q.   What brands of herbicides did you use?

3      A.   Roundup.

4      Q.   Did you use any other brands?

5      A.   No.

6      Q.   Do you recall the brand, the specific brand

7   name of Roundup that you used?

8      A.   I do.

9      Q.   What was that?

10     A.   Roundup.

11     Q.   Okay.  And so did -- no other words, like

12   "Roundup for" any specific purpose or anything like

13   that?

14     A.   I just remember Roundup.

15     Q.   And during the time that you were spraying

16   in the backyard, what type of container -- Roundup

17   containers did you use?

18     A.   What type of container ... just the

19   (indicating) gallon spray bottle.

20     Q.   Okay.  And the gesture you're using with

21   your hands suggests that it was, like, a single

22   bottle with a trigger handle that you squeezed like

23   you are --

24     A.   Correct.

25     Q.   -- spraying -- washing a window with

Jerald Carriere

1    Windex.

2        A.    Correct.

3        Q.    I think that's sometimes called a trigger

4    spray.  Does that sound -- do you agree with that?

5        A.    I'll go with that.

6        Q.    All right.  And do you know whether it was

7    a standard blend, or a concentrate, versus -- well,

8    let me ask a different question.

9             Was it the type of product where you would

10   just spray it straight out of the bottle without

11   having to do any mixing?

12            MS. FLAHERTY:  Object to the form.

13            But go ahead.  You can answer.

14       A.    Straight out of the bottle.

15            Sometimes I would pour it, too.

16   BY MR. LAW:

17       Q.    And what do you mean by you would pour it?

18       A.    I'd take the top off and pour it.

19       Q.    For what purpose?

20       A.    Just if it was a big hunk of weeds, I'd

21   just pour it all over it.

22       Q.    About how many times did you visit the

23   property during those three -- approximately three

24   years where you sprayed for weeds?

25       A.    I would visit it quite often, every two

Jerald Carriere

1   weeks in the beginning; and less as time went on.

2       Q.   When you say you went out every --

3   beginning at the -- every two weeks, did you use

4   herbicide on those occasions?

5       A.   Yeah.

6       Q.   And at the time you used the Roundup, did

7   you have any understanding that the actual death of

8   the plant would take more than a week or so?

9       A.   No.  I didn't have any understanding how

10   long it would take.

11       Q.   Did you read any of the directions or

12   instructions on the bottle?

13       A.   I read it all.

14       Q.   What is your best recollection about what

15   the directions and instructions on that Roundup

16   bottle stated?

17       A.   That it kills weeds.

18       Q.   Do you recall any instructions as to how to

19   spray the weeds?

20       A.   Just spray the weeds.

21       Q.   Do you recall any directions or

22   instructions as to how often to spray the weeds?

23       A.   No.

24       Q.   So the decision to spray on your visits was

25   yours?

Jerald Carriere

1      A.   Yes.

2      Q.   Did you ever attempt to kind of time how

3  long it took between the first application of

4  Roundup and the point that the weed was dead?

5      A.   No.

6      Q.   Did you use any protective clothing when

7  you sprayed on this property?

8      A.   No.

9      Q.   So you -- I'd like to expand a little more

10  on your comment about initially visiting every two

11  weeks.

12          At some point I take it that the visits

13  were less frequent?

14      A.   Yes.

15      Q.   And how would you best describe the

16  interval of visits between the initial time you were

17  visiting for every other week 'til the time you sold

18  the property?

19      A.   Well, in the beginning, I wanted to get it

20  as much under control as I could, so it was often.

21          After a few months, I found out that it

22  wasn't working quite as well as I had hoped, and I

23  didn't spray it as much, or pour on it as much.

24          I tried to control it the best I could, but

25  it was a pretty -- a pretty difficult thing to stop.

Jerald Carriere

```
1      A.   Just in case there was a -- she was -- she
2  was under 18 when my daughter moved in with me.
3  When I -- when I had cancer, my daughter came up and
4  took care of me.
5           And so we had to, you know, kind of let him
6  know that, since she's under 18, that if there's
7  anything legally has to be done, that he would be
8  the person responsible.
9      Q.   Did he have any legal power of attorney or
10  anything like that?
11      A.   No.  Huh-uh.
12      Q.   And what's his name?
13      A.   Will Cato.
14      Q.   Can you spell the last name?
15      A.   I don't know how you spell the last name.
16           I don't know how you spell it.  C-A-T-O, I
17  believe.  Or K-A-T-T-O.
18      Q.   How old is he?
19      A.   35-ish.
20      Q.   And you say he's a friend of the family?
21      A.   Yes.
22      Q.   And just generally speaking, what type of
23  weeds were you trying to control on this property?
24      A.   Crabgrass, dandelions ... I keep on losing
25  the name of the other grass.  I can't think of the
```

Jerald Carriere

1    name of ... kikuyu grass.

2         Q.    And this property has a pretty bear spot in

3    the middle.

4              Do you see that?  In the backyard?

5         A.    Yeah, it's a big piece of property.

6         Q.    Is that something that has been barren

7    while you've owned it, that area?

8         A.    Well, it doesn't show up very good here,

9    but it's not barren.  It's green.

10        Q.    And you --

11        A.    Depends on what time of year.

12        Q.    Okay.

13        A.    But it's a play area for kids.  You know,

14   soccer, baseball, whatever they want to play.

15        Q.    So is it actually -- is there grass growing

16   in this picture?

17        A.    Yeah.

18        Q.    It's just a little dead --

19        A.    Yeah, there's grass there.  It's just not

20   green.

21        Q.    So for the areas that have grass, would it

22   be accurate that you made your best attempt not to

23   get Roundup on it?

24        A.    No.

25        Q.    No, you -- what do you mean by that?

Jerald Carriere

1     A.   I didn't make any attempt not to get

2  Roundup on it.

3     Q.   I mean, you tried to target weeds.

4  Correct?

5     A.   Yeah.

6     Q.   And you wanted to avoid getting it on

7  actual grass that you wanted to keep.  Correct?

8     A.   I didn't -- you know, I would just spray

9  it.  I didn't care if it got on a little grass or

10  not.

11     Q.   Okay.  In terms of where you sprayed it,

12  did you generally confine that to the perimeter of

13  the property?

14     A.   No.

15     Q.   So you would agree if you sprayed Roundup

16  in the middle of that back lawn, it would probably

17  kill the lawn.  Agreed?

18     A.   No.

19     Q.   And why do you disagree?

20     A.   Because it won't.

21     Q.   Do you understand that this Roundup was the

22  type of Roundup that doesn't kill lawn but only

23  targets weeds?

24     A.   Yeah.

25     Q.   And is that true for all the prior

Jerald Carriere

1  properties, that you used it?

2      A.   That's what it said.

3      Q.   So this is the lawn-friendly Roundup?

4      A.   I don't know about "friendly," but it said

5  that it doesn't kill grass.

6      Q.   And that would be true for the 172nd Street

7  properties as well, in terms of the product that you

8  used?

9      A.   I used the same product.

10     Q.   All right.  So your recollection is this is

11  the type of product that you could spray on the

12  dandelion in the middle of the lawn and it would

13  kill the dandelion and not the lawn.

14     A.   Yeah, you could spray it all over.  You

15  know, you didn't have to be careful with it.

16     Q.   Got it.

17          Is that true for all the properties that

18  you have owned and managed?

19     A.   Pretty much -- I mean, I didn't spray it on

20  roses, you know.  But I sprayed it on most

21  everything.

22          You know, you could use it, plenty of it,

23  and it didn't kill the -- it only killed the weeds.

24     Q.   Yeah, okay.  Is that also true for the

25  property that you own currently, that you live in?

Jerald Carriere

```
1       A.   Yeah.

2       Q.   In terms of the Roundup that you had been

3    using --

4       A.   Yeah, but I'm much more careful at my

5    house.

6       Q.   Sure.  But in terms of the type of Roundup,

7    it was -- it's always been the type of Roundup that

8    is compatible with lawns.  Correct?

9       A.   To my knowledge.

10      Q.   All right.  So while we're on that topic,

11   I'll get my addresses right.

12           6406 Seal Point, that's your house?

13      A.   Correct.

14      Q.   And that's somewhat of a duplex?

15      A.   Uh-huh.

16      Q.   Or just -- it is a duplex?

17      A.   It's -- they categorize it as a townhouse.

18      Q.   It's two connected --

19      A.   One wall connects.

20      Q.   Pardon?

21      A.   One wall connects.

22      Q.   A common wall?

23      A.   Yeah.  And it --

24      Q.   It looks like side-by-side --

25      A.   The developer categorized it as a
```

Jerald Carriere

```
 1    I, Lori Byrd, CSR 13023, do hereby declare:
 2    That, prior to being examined, the witness named in
      the foregoing deposition was by me duly sworn
 3    pursuant to Section 30(f)(1) of the Federal Rules of
      Civil Procedure and the deposition is a true record
 4    of the testimony given by the witness.
 5    That said deposition was taken down by me in
      shorthand at the time and place therein named and
 6    thereafter reduced to text under my direction.
 7    _____ That the witness was requested to review
              the transcript and make any changes to
 8            the transcript as a result of that
              review pursuant to Section 30(e) of the
 9            Federal Rules of Civil
              Procedure.
10
      _____ No changes have been provided by the
11            witness during the period allowed.
12    _____ The changes made by the witness are
              appended to the transcript.
13
      _____ No request was made that the transcript
14            be reviewed pursuant to Section 30(e) of
              the Federal Rules of Civil Procedure.
15
      I further declare that I have no interest in the
16    event or action.
17    I declare under penalty of perjury under the laws of
      the United States of America that the foregoing is
18    true and correct.
19    Signed by me on Thursday, July 18, 2019.
20
21    _____
      Lori Byrd, CSR 13023
22    Golkow Litigation Services
      www.Golkow.com
23
24
25
```



PENGAD 800-631-6989 EXHIBIT 1 CARRIERE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION

MDL No. 2741

Case No. MDL No. 3:16-md-2741-VC

This document relates to:

*Jerald Carriere v. Monsanto Company*
Case No. 3:18-cv-05887

**DEFENDANT MONSANTO COMPANY'S SECOND AMENDED NOTICE TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF PLAINTIFF JERALD CARRIERE**

TO:    Yvonne Flaherty
       Lockridge Grindal Nauen P.L.L.P.
       100 Washington Avenue S., Suite 2200
       Minneapolis, MN 55401

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendant, by and through their counsel, will take the videotaped deposition upon oral examination of **Jerald Carriere** commencing at **9:00 A.M. PDT** on **Tuesday, July 16, 2019** and continuing until completed. The location of said deposition is **3620 Pacific Coast Hwy #200, Torrance, CA 90505.**

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Rule 28 of the Federal Rules of Civil Procedure, and will continue day-to-day until the examination is completed.

Please take further notice that, pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the deponent shall bring to the deposition the documents listed in Exhibit A.

DATED: July 9, 2019

By: */s/ Anthony R. Martinez*
Anthony R. Martinez
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
amartinez@shb.com

*Attorney for Defendant,*
*MONSANTO COMPANY*

- 1 -

SECOND AMENDED NOTICE TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF JERALD CARRIERE
Case No. 3:16-md-02741-VC

4852-8395-4588 v1

**ATTACHMENT**

For purposes of the following document requests, "DOCUMENT" or "DOCUMENTS" means all tangible and electronic things and recorded information, including any written, printed, recorded or graphic matter, computer generated or maintained matter, photographic matter, film or videotaped matter, and all written, typed or printed matter and all electronic, magnetic or other records, including both the original and/or non-identical draft(s). Examples of Documents include, but are not limited to, handwritten, typed, or printed papers; letters, cards, memoranda, notes; invoices, purchase orders, financial statements, manuals, receipts; diaries, logs, journals, calendars; electronic mail, discussion board postings, blogs, chat room messages and posts, and social media communications (e.g., posts or messages sent via Facebook, Facebook Messenger, LinkedIn, MySpace, Snapchat, Twitter, FourSquare, Pinterest, Gmail, Yahoo, Comcast, Verizon, iChat, Apple FaceTime, AOL Instant Messenger, BlackBerry Messenger, etc.); phone text messages, voicemail recordings, facsimile, notes of telephone conversations; drawings, photographs, audio, tapes, disks, videotape recordings, DVD recordings, CD-ROM, films, and other forms of electronically or magnetically maintained information.

**DOCUMENT REQUESTS**

1.      ALL DOCUMENTS that constitute, contain, or refer to your use, handling, application, or purchase of any pesticide, including but not limited to any diaries, journals, calendars, notes, inventory lists, schedules, receipts, and chronologies (including electronic versions).

2.      ALL DOCUMENTS that constitute, contain, or refer to your use, handling, application, or purchase of Roundup®-branded products or any other glyphosate-containing products, including but not limited to any diaries, journals, calendars, notes, inventory lists, schedules, receipts, and chronologies (including electronic versions).

3.      All DOCUMENTS that refer or relate to your employment as a ground commercial applicator, including all DOCUMENTS regarding your use, handling, application, training, exposure to, or purchase of, Roundup®-branded products, any glyphosate-containing products, or

- 2 -

1   other pesticides and herbicides (including those not manufactured by Monsanto); any guidelines,

2   training materials, policies, or safety manuals used or relied upon; records, notes, calendars, spray

3   or application records, and invoices of any work performed; work schedules; and receipts of any

4   Roundup®-branded products, any glyphosate-containing products, or other pesticides or herbicides

5   that you (or your household) purchased in connection with your employment.

6       4.    All DOCUMENTS that constitute, refer to, or relate to any license you have held

7   related to pesticides or herbicides, including any training materials, examination documents,

8   licensing documents, application documents, or any other related materials and/or documents kept

9   pursuant law.

10      5.    All DOCUMENTS, including diaries, journals, calendars, notes, schedules,

11  chronologies (including electronic versions of such documents), and other writings, which relate to

12  your cancer diagnosis, treatment, or condition.

13      6.    All DOCUMENTS and communications between you and any of your health care

14  providers (or any staff associated therewith) relating to your cancer diagnosis, treatment, or

15  condition.

16      7.    All DOCUMENTS and communications between you and any of your health care

17  providers (or any staff associated therewith) relating to the subject matter of the above, the captioned

18  lawsuit or Monsanto, including any discussion about the allegations in the Petition, your use of

19  Roundup®-branded products or other glyphosate-containing products, and any discussion regarding

20  whether Roundup®-branded products or other glyphosate-containing products caused your cancer

21  or are capable of causing cancer.

22      8.    All DOCUMENTS that constitute, refer to, or relate to any medical bills (including

23  bills paid by insurers or other third party payors), which you contend are related to any injuries

24  caused by your use or exposure to Roundup®-branded products or other glyphosate-containing

25  products as alleged in the above-captioned lawsuit.

26      9.    All DOCUMENTS that refer or relate to your employment as a ground commercial

27  applicator, including but not limited to any DOCUMENTS relating to your work schedule and job

28

- 3 -

SECOND AMENDED NOTICE TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF JERALD CARRIERE
Case No. 3:16-md-02741-VC

4852-8395-4588 v1

1    duties, attendance, leave of absences (whether for vacation, sick leave or other reasons), reported

2    injuries, equipment operated at work, promotions and demotions, performance evaluations,

3    termination of employment, reports of health examinations, job applications, wages paid and/or

4    earnings given, and any and all medical, psychological, or testing records or memoranda.

5    √ 11.    All DOCUMENTS that constitute, contain, refer to, or relate to any communication

6    you have had with any manufacturer or supplier about any pesticide or herbicide.

7    √ 12.    All DOCUMENTS that constitute, contain, refer to, or relate to any communication

8    you have had with Monsanto, Monsanto subsidiaries, or Monsanto-related vendors.

9    √ 13.    ALL DOCUMENTS that constitute, contain, refer to, or relate to any communication

10    you have had with the U.S. Environmental Protection Agency.

- 4 -

1

## **PROOF OF SERVICE**

2

I am employed in the County of Jackson, State of Missouri.  I am over the age of 18 and not a party to the within action.  My business address is 2555 Grand Blvd., Kansas City, MO 64108.

3

4

On July 9, 2019, I served on the interested parties in said action the within:

5

## **DEFENDANT'S CIVIL COVER SHEET**

6

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

7

8

☒   (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

9

10

11

☐   (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed on the attached service list on this date from fax machine telephone number (949) 475-0016.  The facsimile numbers used complied with California Rules of Court rule 2.300 et seq. and 2.306 and no error was reported by the machine.  Pursuant to California Rules of Court rule 2.306, I caused the machine to print a report of the transmission, a copy of which is attached to the original of this declaration.

12

13

14

☐   (HAND DELIVERY) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated.

15

16

☐   (BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, on _____, to be delivered by their next business day delivery service on _____, to the addressee designated.

17

18

19

☐   (ELECTRONIC FILING) I provided the document(s) listed above electronically through the CM/ECF system pursuant to the instructions set forth in the Local Rules for the United States District Court for the Northern District of California.

20

21

I declare under penalty of perjury under the laws of the State of Missouri that the foregoing is true and correct.

22

23

Executed on July 9, 2019 at Kansas City, MO.

24

25

Tina Cady

26

(Type or print name)

27

*Tina Cady*

(Signature)

28

- 5 -

4852-8395-4588 v1

1

## SERVICE LIST

2

*Jerald Carriere v. Monsanto Company*
Case No. 3:18-cv-05887

3

4

5

Karen Barth Menzies
Gibbs Law Group LLP
6701 Center Drive West, 14th Fl.
Los Angeles, CA 90045

Yvonne Flaherty
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401

6

7

8

**Counsel for Plaintiff**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

SECOND AMENDED NOTICE TO TAKE ORAL AND VIDEOTAPED DEPOSITION OF JERALD CARRIERE
Case No. 3:16-md-02741-VC

4852-8395-4588 v1