**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC |
| This document relates to:<br><br>*Dickey v. Monsanto Co.,*<br>Case No. 3:19-cv-04102 | **MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS** |

Plaintiff Robert Dickey's claims are barred by Nebraska's statute of limitations, which requires a product liability action to be "commenced within four years next after the date on which the death, injury, or damage complained of occurs." Neb. Rev. Stat. § 25-224(1).[1] There is no dispute Plaintiff's injury (non-Hodgkin's Lymphoma diagnosed in 2008 and treated in 2009) occurred at least **seven years** before he filed his suit on May 11, 2016. Plaintiff cannot avoid the

---

[1] Timeliness is not governed by California or federal law but by the law of the jurisdiction where the alleged injury occurred. *See, e.g., In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*, MDL No. 1871, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014) (applying statute of limitations of place of injury).

statute of limitations by relying on Nebraska's conservative "discovery rule," which suspends the statute of limitations only until "one knows of the existence of an injury or damage," since there is no dispute Plaintiff knew of the existence of his non-Hodgkin's Lymphoma when it was diagnosed in 2008. Further, Plaintiff cannot avoid the statute of limitations through equitable tolling, since that doctrine only applies when a plaintiff shows that defendant's conduct prevented him from discovering his injury and there is no dispute Plaintiff was aware of his injury in 2008. In fact, Plaintiff unequivocally testified that he suspected in 2009 that Roundup caused or contributed to his cancer. Nebraska law therefore compels summary judgment in Monsanto Company's favor.

## BACKGROUND

Plaintiff has been farming most of his life. *See* Dep. of Robert L. Dickey at 23:3-17 ("Pl. Dep.") (Ex. 1). He began using Roundup in 1975 or 1976, purchasing two-and-a-half-gallon containers of concentrate from a local co-op. *Id.* at 109:4-110:12. Until he stopped actively farming his land in 2003, Plaintiff continued to purchase the same size containers of Roundup, and occasionally generic glyphosate herbicide, which he then sprayed on his crops. *Id.* at 110:19-111:22.

Plaintiff's first alleged symptom of his cancer occurred when he felt a small bump on the right side of his neck while shaving. *Id.* at 217:5-14. On December 8, 2008, Plaintiff was diagnosed with Non-Hodgkin's Lymphoma ("NHL"). *Id.* at 29:20-30:1; *see also* Pl.'s Short Form Compl. (Dkt. #1) ¶ 14. After his diagnosis, Plaintiff began chemotherapy treatment, which ended in March 2009. *Id.* at 222:6-16. Plaintiff suspected that exposure to Roundup may have caused or contributed to his NHL based on information he learned from "magazines, bulletins, [and from] Dr. James Armitage." *Id.* at 226:5-227:22. Indeed, Plaintiff admitted that that he "started to learn more about it because [he] didn't know what the future was for sure [and had] a good friend [who] passed away" from the same disease. *Id.* Plaintiff unequivocally conceded that his suspicions regarding Roundup's role in his NHL began sometime in 2009—approximately ***seven years*** before he filed his complaint in this case. *Id.* at 227:20-22.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Statements by a witness that merely contradict the witness's prior testimony do not constitute a genuine dispute and do not present "a sufficient disagreement to require submission to a jury." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (quoting *Anderson*, 477 U.S. at 251-52); *see also Craig v. Cty. of Santa Clara*, 2018 WL 3777363, at *16 (N.D. Cal. Aug. 9, 2018); *Lansamont Corp. v. SPX Corp.*, 2012 WL 6096674, at *4 (N.D. Cal. Dec. 7, 2012).

## ARGUMENT

### A. Plaintiff did not file suit within four years of discovering his alleged injury.

Under Nebraska law, Plaintiff was required to bring suit within four years of the date he first "discover[ed], or in the exercise of reasonable diligence should have discovered, the existence of [his] injury[.]" *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *2 (D. Ariz. Aug. 17, 2018) (granting summary judgment in defendants' favor under Nebraska law based on the statute of limitations (citing *Condon v. A.H. Robins Co.*, 349 N.W.2d 622, 623-27 (Neb. 1984))). However, "***[i]t is not necessary that [Plaintiff] have knowledge of the exact nature or source of the problem, but only that a problem existed***." *Id.* at *4 (citing *Reinke Mfg. Co. v. Hayes*, 590 N.W.2d 380, 390 (Neb. 1999) (emphasis added)).[2]

In *Bard*, Carol Kruse sued C. R. Bard, Inc. and others, alleging that Bard's inferior vena cava ("IVC") filters were defective and caused her to suffer serious injuries. *Id.* at *1. Kruse had a Bard IVC filter implanted in July 2009, after which she began to experience "new and unfamiliar abdominal pain . . . when she twisted and bent certain ways." *Id.* at *3. In 2010, Kruse called a

---

[2] *Bard* is particularly instructive here, as it involves nearly the same procedural posture as this case: a United States District Court sitting in the Ninth Circuit faced with applying Nebraska statute of limitations law in a multidistrict litigation proceeding involving product liability claims. *See generally id.* at *1-6.

- 3 -

phone number she saw on a TV ad for people having problems with their IVC filters.  *Id.*  Kruse later spoke with a nurse about having her IVC filter removed because it "has been causing her pain for the last 3-4 months."  *Id.*  Despite this evidence, Kruse contended that she did not know the IVC filter caused her injury until her doctor unsuccessfully attempted to remove the filter on April 7, 2011—which would have made her April 6, 2015 complaint timely under the four-year Nebraska statute of limitations by one day.  *Id.*

The District of Arizona rejected Kruse's attempt to avoid the Nebraska statute of limitations.  *Id.* at *3.  The court explained that the "evidence shows that [Kruse] knew of her abdominal pain before the removal procedure on April 7, 2011, and ***even suspected that it was caused by the G2 filter***."  *Id.* (emphasis added).  Accordingly, the court held that the statute of limitations barred Kruse's claims under Nebraska law.

Nebraska law compels the same result here: no reasonable jury could find that Plaintiff discovered his injury on or after May 11, 2012 (four years before he filed his complaint in this case). It is undisputed that Plaintiff was diagnosed with NHL on December 8, 2008 and received chemotherapy to treat his cancer in early 2009.  Pl.'s Dep. at 29:20-30:1.  Nebraska law requires only that Plaintiff have knowledge "that a problem existed," "not the exact nature or source of the problem."  *Bard*, 2018 WL 3957737, at *4 (citation omitted).  Thus, Plaintiff's knowledge of his injury triggered the statute of limitations period.  On these facts, no reasonable jury could find that Plaintiff discovered his injury after December 8, 2008.

**B.    Plaintiff cannot avoid the statute of limitations by the discovery rule.**

Although Nebraska recognizes a limited discovery rule to temper statutes of limitation, the rule is very conservative.  "Discovery refers only to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused that injury.  It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed."  *Id.* (citations omitted).  Under Nebraska's version of the discovery rule, Plaintiff discovered his injury no later than December 8, 2008.

### C. Plaintiff is not entitled to equitable tolling of the statute of limitations because he failed to act within the limitations period after discovering his injury.

To the extent Plaintiff argues that the Court should toll the statute of limitations because he was not or could not have been aware of the connection between his NHL and Roundup until the World Health Organization issued a monograph relating to glyphosate in July 2015, Plaintiff's deposition testimony shows otherwise. To establish equitable estoppel, Plaintiff must show (1) "the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which ***prevent the plaintiff from discovering the [injury]***" and (2) that Plaintiff "exercised due diligence to discover his . . . cause of action before the statute of limitations expired." *Andres v. McNeil, Co.*, 707 N.W.2d 777, 787 (Neb. 2005) (citations omitted and emphasis added). However, "if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel." *Id.* (citations omitted). Here, Plaintiff discovered his injury in December 2008 and conceded that he suspected ***no later than March 2009*** that Roundup caused or contributed to his cancer.

> Q. Was there anything else before that pamphlet that caused you to believe that your non-Hodgkin's Lymphoma may have been caused by exposure to Roundup?
>
> A. I suspected after 2008.
>
> Q. And what made -- after 2008, why did you suspect that Roundup? may have caused or contributed to your non-Hodgkin's Lymphoma?
>
> A. In magazines, bulletins, information that I received from, as I mentioned earlier, Dr. James Armitage [Plaintiff's treating oncologist].
>
> Q. Uh-huh.
>
> A. He had information, too, that he shared with me.
>
> Q. About non-Hodgkin's Lymphoma, right?
>
> A. Yes.
>
> ….
>
> A. I started to learn more about it because I didn't know what the future was for sure. In fact, I have a good friend of mine that passed away.

> Q. From non-Hodgkin's Lymphoma?
>
> A. Yeah, with the same thing I had, that Follicular Lymphoma.
>
> Q. What year did he pass away?
>
> A. If I had to guess, about 2012 maybe.
>
> Q. And was it before -- even before 2012 that you began to suspect that Roundup may have caused or contributed to your non-Hodgkin's Lymphoma?
>
> A. Yes.
>
> Q. Would those suspicions and your investigation have started sometime in 2009?
>
> A. Yes.

Pl. Dep. at 226:5-20; 227:8-22.  On these facts, Nebraska law does not permit Plaintiff to avoid the statute of limitations through "equitable estoppel."  He admits he suspected that Roundup caused his NHL in 2009 and he began to "learn more about it." *Id.*  He then had four years to investigate and bring his action.  Plaintiff had ample time to investigate his claims after discovering his alleged injury and file his lawsuit within the four-year statute of limitations—but he failed to do so.  Monsanto therefore is entitled to summary judgment.

## CONCLUSION

Plaintiff's unequivocal testimony in this case confirms that he discovered his injury in December 2008 and suspected that Roundup caused or contributed to the injury no later than March 2009.  Under Nebraska law, Plaintiff had four years to file his lawsuit.  Instead, he waited until May 11, 2016.  Nebraska law therefore compels summary judgment in Monsanto's favor pursuant to Neb. Rev. Stat. § 25-224(1).

DATED: November 26, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

# CERTIFICATE OF SERVICE

I hereby certify that, on November 26, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Brian L. Stekloff*