**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Tel:     202-898-5800
Fax:    202-682-1639
Email: jhollingsworth@hollingsworthllp.com
          elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Pamela Hays Davis as the Wrongful Death Personal Representative of William Donald Hays, Deceased v. Monsanto Co.*, Case No. 3:19-cv-07398-VC | |

## <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.     Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiff.  Monsanto denies the remaining allegations in paragraph 1.

2.     Monsanto denies the allegations in paragraph 2.

3.     In response to the allegations in paragraph 3, Monsanto denies the allegations in

paragraph 3 that decedent's death was "wrongful" and denies that any injuries alleged in the Complaint, including the injury and death of decedent, were caused by Roundup®-branded products.  Monsanto admits that plaintiff purports to seek damages for a wrongful death claim, but denies any liability on those claims.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore denies those allegations.

4.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5.      Monsanto denis the allegations in paragraph 5.

6.      The allegations in paragraph 6 comprise attorney characterizations and are accordingly denied.  Monsanto states that the Roundup®-branded products identified by plaintiff have a variety of separate and distinct uses and formulations.

7.      Monsanto admits the allegations in paragraph 7.

8.      In response to the allegations in paragraph 8, Monsanto admits that it sells Roundup®-branded products in New Mexico.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.     The allegations in paragraph 10 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

11.     The allegations in paragraph 11 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

12.     The allegations in the first sentence of paragraph 12 set forth conclusions of law for which no response is required.  Monsanto denies the allegations in the second sentence of paragraph 12.

13.     The allegations in paragraph 13 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 13 based upon the allegations in plaintiff's Complaint.

14.     Monsanto admits the allegations in paragraph 14.

15.     In response to the allegations in paragraph 15, Monsanto denies any "omissions" and certain events giving rise to plaintiff's claim.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiff's claims occurred and therefore denies those allegations.  The remaining allegations in paragraph 15 set forth conclusions of law for which no response is required.

16.     Monsanto admits the allegations in the first and second sentences of paragraph 16. In response to the allegations in the third sentence of paragraph 16, Monsanto admits that certain of its Roundup®-branded products contain POEA and adjuvants, and that the United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  In response to the allegations in the final sentence of paragraph 16, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 16 and therefore denies those allegations.

17.     In response to the allegations in paragraph 17, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 17.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 17 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-07398-VC

18.     In response to the allegations in paragraph 18, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 18.

19.     Monsanto admits the allegations in the first sentence of paragraph 19.  Monsanto denies the allegations in the second sentence of paragraph 19 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

20.     Monsanto admits the allegations in the first sentence of paragraph 20.  Monsanto denies the allegations in the second sentence of paragraph 20.

21.     In response to the allegations in paragraph 21, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 21.

22.     Monsanto denies the allegations in paragraph 22.

23.     In response to the allegations in paragraph 23, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 23 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

24.     Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 24 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 and therefore denies those allegations.

1    25.    Monsanto admits the allegations in the first sentence of paragraph 25.  Monsanto

2    denies the allegations in the second sentence of paragraph 25 because the impact of glyphosate

3    on treated plants varies depending upon the amount of glyphosate applied and the type of plant.

4    Monsanto denies the allegations in the third sentence of paragraph 25 to the extent that they

5    suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well

6    within regulatory safety levels, as determined by EPA.

7    26.    In response to the allegations in paragraph 26, Monsanto admits that farmers have

8    safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining

9    allegations in paragraph 26.

10   27.    Monsanto admits the allegations in the first two sentences of paragraph 27 and

11   admits that it has marketed Roundup®-branded products in accord with EPA's regulatory

12   determinations under FIFRA.  Monsanto otherwise denies the remaining allegations in paragraph

13   27.

14   28.    The allegations in paragraph 28 set forth conclusions of law for which no

15   response is required.  To the extent that a response is deemed required, Monsanto admits the

16   allegations in paragraph 28.

17   29.    In response to the allegations in paragraph 29, Monsanto admits that EPA requires

18   registrants of herbicides to submit extensive data in support of the human health and

19   environmental safety of their products and further admits that EPA will not register or approve

20   the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining

21   allegations in paragraph 29 set forth conclusions of law for which no response is required.

22   30.    The allegations in paragraph 30 set forth conclusions of law for which no

23   response is required.

24   31.    Monsanto admits that Roundup®-branded products are registered by EPA for

25   manufacture, sale and distribution and are registered by the State of New Mexico for sale and

26   distribution.

27   32.    In response to the allegations in paragraph 32, Monsanto admits that EPA requires

28   registrants of herbicides to submit extensive data in support of the human health and

1  environmental safety of their products and further admits that EPA will not register or approve

2  the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

3  states that the term "the product tests" in the final sentence of paragraph 32 is vague and

4  ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 32

5  set forth conclusions of law for which no answer is required.

6       33.    Monsanto denies the allegations in paragraph 33 to the extent that they suggest

7  that EPA only evaluates the safety of pesticide products on the date of their initial registration.

8  Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

9  products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

10  of the allegations in paragraph 33 regarding such pesticide products generally and therefore

11  denies those allegations.  The remaining allegations in paragraph 33 set forth conclusions of law

12  for which no response is required.

13       34.    In response to the allegations in paragraph 34, Monsanto admits that EPA has

14  undertaken a regulatory review of glyphosate and further admits that EPA has not released its

15  findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

16  Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

17  concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

18  humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

19  posted an October 2015 final report by its standing Cancer Assessment Review Committee

20  ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

21  to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP

22  issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

23  _____

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic
24  Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/
document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in
25  anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic
potential.

26  [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs,
U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the*
27  *Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final
Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

28

1    the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

2    humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth

3    of the remaining allegations in paragraph 34 and therefore denies those allegations.

4         35.    In response to the allegations in paragraph 35, Monsanto admits that an EPA

5    review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

6    changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

7    evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

8    that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with

9    respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded

10   that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the

11   two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings

12   of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, &*

---

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

*Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 35.

36.     In response to the allegations in paragraph 36, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 36 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

37.     In response to the allegations in paragraph 37, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

38.     Monsanto denies the allegations in paragraph 38 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 38 are

- 8 -

1   intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

2   denies those allegations.

3       39.     In response to the allegations in paragraph 39, Monsanto admits that three IBT

4   employees were convicted of the charge of fraud, but Monsanto denies that any of the

5   individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

6   herbicides.

7       40.     In response to the allegations in paragraph 40, Monsanto admits that it – along

8   with numerous other private companies – hired Craven Laboratories as an independent

9   laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that

10  it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies

11  conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

12  paragraph 40 are intended to suggest that Monsanto was anything other than a victim of this

13  fraud, such allegations are denied.

14      41.     Monsanto denies the allegations in paragraph 41.

15      42.     In response to the allegations in paragraph 42, Monsanto admits that Roundup®-

16  branded products are highly valued by its customers because of their efficacy and safety.

17  Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

18  remaining allegations in paragraph 42 are vague and conclusory and comprise attorney

19  characterizations and are accordingly denied.

20      43.     In response to the allegations in paragraph 43, Monsanto admits that following the

21  development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

22  are now widely used by farmers in the United States and worldwide.  Monsanto lacks

23  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

24  cited in paragraph 43 and accordingly denies those allegations.  The remaining allegations in

25  paragraph 43 are vague and conclusory and comprise attorney characterizations and are

26  accordingly denied.

27      44.     In response to the allegations in paragraph 44, Monsanto admits that glyphosate is

28  one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-07398-VC

1   is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

2   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

3   cited in paragraph 44 and accordingly denies the same.  The remaining allegations in paragraph

4   44 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

5          45.     In response to the allegations in paragraph 45, Monsanto admits that the New

6   York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

7   advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

8   admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

9   General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

10  the subparts purport to quote a document, the document speaks for itself and thus does not

11  require any further answer.  The remaining allegations in paragraph 45 are vague and conclusory

12  and comprise attorney characterizations and are accordingly denied.

13         46.     In response to the allegations in paragraph 46, Monsanto admits it entered into an

14  assurance of discontinuance with the New York Attorney General.  The assurance speaks for

15  itself and thus does not require any further answer.  The remaining allegations in paragraph 46

16  are vague and conclusory and comprise attorney characterizations and are accordingly denied.

17         47.     Monsanto denies the allegations in paragraph 47.

18         48.     In response to the allegations in paragraph 48, Monsanto admits that the French

19  court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

20  that it "left the soil clean," but denies the allegations in paragraph 48 to the extent that they

21  suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause

22  cancer.  Monsanto denies the remaining allegations in paragraph 48.

23         49.     In response to the allegations in paragraph 49, Monsanto denies that IARC

24  follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

25  or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

26  paragraph 49, which are not limited as of any specified date, and accordingly denies the same.

27

28

1    50.    In response to the allegations in paragraph 50, Monsanto admits that IARC sets

2  forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

3  Monsanto denies the remaining allegations in paragraph 50.

4    51.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

5  research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

6  that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

7  form a belief as to the truth of the remaining allegations in paragraph 51 and therefore denies

8  those allegations.

9    52.    Monsanto denies any suggestion that IARC reviewed the full body of scientific

10  research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

11  that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

12  form a belief as to the truth of the remaining allegations in paragraph 52 and therefore denies

13  those allegations.

14    53.    Monsanto denies the allegations in paragraph 53 to the extent that they suggest

15  that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

16  glyphosate as a Group 2A agent in March 2015.

17    54.    In response to the allegations in paragraph 54, Monsanto admits that IARC issued

18  its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the

19  monograph was prepared by a "working group" of individuals selected by IARC who met over a

20  one-week period in March 2015 to consider glyphosate along with a number of other substances.

21  Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto

22  denies that the working group or anyone at IARC conducted a one-year review of the scientific

23  evidence related to glyphosate or that the working group's findings reflected a comprehensive

24  review of the latest available scientific evidence.  Monsanto also denies that the working group

25  considered all information available in the scientific literature and all data from government

26  reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 54.

27    55.    In response to the allegations in paragraph 55, Monsanto denies that the IARC

28  working group considered all of the data in the numerous studies that have been conducted

looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

56. The allegations in paragraph 56 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

57. In response to the allegations in paragraph 57, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 57.

58. In response to the allegations in paragraph 58, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

59. Monsanto denies the allegations in paragraph 59. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

60. In response to the allegations in paragraph 60, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 56.

63.     In response to the allegations in paragraph 63, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 64.

65.     In response to the allegations in paragraph 65, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

1    regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

2    should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

3    finding that glyphosate does not pose any cancer risk to humans.

4         67.    In response to the allegations in paragraph 67, Monsanto admits that EPA has a

5    technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

6    regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

7    should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

8    finding that glyphosate does not pose any cancer risk to humans.

9         68.    In response to the allegations in paragraph 68, Monsanto admits that the

10   Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

11   Coalition provides any reliable basis for any conclusions regarding potential health risks from

12   glyphosate.  Monsanto notes that a federal district court has characterized this same publication

13   as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928

14   F. Supp. 2d 10, 24 (D.D.C. 2013).

15        69.    In response to the allegations in paragraph 69, Monsanto admits that the IARC

16   working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing

17   discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-

18   based herbicides, including the Netherlands, but denies that there is any scientific basis for the

19   concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations

20   in paragraph 69.

21        70.    In response to the allegations in paragraph 70, Monsanto admits that the IARC

22   working group classification led an individual government attorney in Brazil to write a letter to

23   the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the

24   remaining allegations in paragraph 70.

25        71.    Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-

26   professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited

27   as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in

28   paragraph 71.

1      72.     In response to the allegations in paragraph 72, Monsanto admits that some

2   employees of Bermuda's government announced an intention to suspend the importation of

3   glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the

4   truth of the allegations about whether this suspension took effect and accordingly denies the

5   same.  Monsanto denies the remaining allegations in paragraph 72.

6      73.     In response to the allegations in paragraph 73, Monsanto admits that the IARC

7   monograph appears to be the alleged basis for the Sri Lankan government's actions, including

8   the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

9   allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations

10  regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 73.

11     74.     In response to the allegations in paragraph 74, Monsanto denies the alleged basis

12  for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

13  explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

14  ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

15  concerns.  As of April 2016, the government of Colombia has resumed manual application of

16  glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs'

17  expert testimony purporting to link these same aerial eradication operations with cancer as

18  scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

19  denies the remaining allegations in paragraph 74.

20     75.     Monsanto incorporates by reference its responses to paragraphs 1 through 74 in

21  response to paragraph 75.

       76.     Monsanto denies the allegations in paragraph 76.

22

23     77.     In response to the allegations in paragraph 77, Monsanto admits that it has stated

24  and continues to state that Roundup®-branded products are safe when used as labeled and that

25  they are non-toxic and non-carcinogenic.

26     78.     In response to the allegations in paragraph 78, Monsanto states that the cited

27  document speaks for itself and does not require a response.

28

- 15 -

79.     Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed decedent to risk of his alleged cancers and denies the remaining allegations in paragraph 79.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

80.     Monsanto denies the allegations in the first and last sentences of paragraph 80. The remaining allegations in paragraph 80 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto denies all of plaintiff's allegations in paragraph 80.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

81.     Monsanto denies that it engaged in the "wrongdoing" alleged in the Complaint and denies that there is any reliable scientific evidence that exposure to glyphosate or Roundup®-branded products can cause cancer.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015. The remaining allegations in paragraph 81 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.

82.     Monsanto incorporates by reference its responses to paragraphs 1 through 81 in response to paragraph 82 of plaintiff's Complaint.

83.     In response to the allegations in paragraph 83, Monsanto admits that plaintiff purports to bring a claim for strict liability design defect, but denies any liability as to that claim.

84.     In response to the allegations in paragraph 84, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that plaintiffs used

1    Roundup®-branded products and therefore denies that allegation.  Monsanto denies the

2    remaining allegations in paragraph 84.

3            85.     Monsanto denies the allegations in paragraph 85.

4            86.     Monsanto lacks information or knowledge sufficient to form a belief as to the

5    truth of the allegations in paragraph 86 and therefore denies those allegations.

6

7            87.     Monsanto denies the allegations in paragraph 87.

8            88.     Monsanto denies the allegations in paragraph 88.

9            89.     Monsanto denies the allegations in paragraph 89.

10           90.     Monsanto denies the allegations in paragraph 90 and each of its subparts.

11           91.     Monsanto lacks information or knowledge sufficient to form a belief as to the

12   truth of the allegations in paragraph 91 concerning decedent's claimed use of Roundup®-branded

13   products and therefore denies those allegations.  Monsanto denies the remaining allegations in

14   paragraph 91, including that Roundup®-branded products have "dangerous characteristics."

15           92.     Monsanto lacks information or knowledge sufficient to form a belief as to the

16   truth of the allegations in paragraph 92 concerning decedent's claimed use of Roundup®-branded

17   products and therefore denies those allegations.  Monsanto denies the remaining allegations in

18   paragraph 92, including that Roundup®-branded products have "dangerous characteristics."

19           93.     Monsanto denies the allegations in paragraph 93.

20           94.     Monsanto denies the allegations in paragraph 94.

21           95.     Monsanto denies the allegations in paragraph 95.

22           96.     Monsanto denies the allegations in paragraph 96.

23           97.     Monsanto denies the allegations in paragraph 97.

24           98.     Monsanto denies the allegations in paragraph 98.

25           99.     Monsanto denies the allegations in paragraph 99.

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-07398-VC

100. Monsanto denies the allegations in paragraph 100.

101. Monsanto incorporates by reference its responses to paragraphs 1 through 100 in response to paragraph 101 of plaintiff's Complaint.

102. In response to the allegations in paragraph 102, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

103. Monsanto denies the allegations in paragraph 103.

104. In response to the allegations in paragraph 104, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation that decedent or other entities identified purchased or used Roundup®-branded products and therefore denies that allegation. The allegations in paragraph 104 also set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 104.

105. The allegations in paragraph 105 set forth conclusions of law for which no response is required.

106. Monsanto denies the allegations in paragraph 106. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

107. Monsanto denies the allegations in paragraph 107.

108. Monsanto denies the allegations in paragraph 108.

109. Monsanto denies the allegations in paragraph 109.

110. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 110 and therefore denies those allegations.

111. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 111 concerning decedent's alleged use of Roundup®-branded

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-07398-VC

products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 112, including that Roundup®-branded products have "dangerous characteristics."

112.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 concerning decedent's alleged use and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 112, including that Roundup®-branded products have "dangerous characteristics."

113.    Monsanto denies the allegations in paragraph 113.

114.    Monsanto denies the allegations in paragraph 114.

115.    Monsanto denies the allegations in paragraph 115.

116.    Monsanto denies the allegations in paragraph 116.

117.    Monsanto denies the allegations in paragraph 117.

118.    Monsanto denies the allegations in paragraph 118.

119.    Monsanto denies the allegations in paragraph 119.

120.    Monsanto denies the allegations in paragraph 120.

121.    Monsanto denies the allegations in paragraph 121.

122.    Monsanto incorporates by reference its responses to paragraphs 1 through 121 in response to paragraph 122 of plaintiff's Complaint.

123.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 regarding the specific products allegedly used by plaintiffs or any advertising or marketing allegedly seen or considered by plaintiffs and therefore denies the allegations in paragraph 123.

124.    The allegations in paragraph 124 set forth conclusions of law for which no response is required.

1    125.    The allegations in paragraph 125 set forth conclusions of law for which no

2  response is required.

3    126.    Monsanto denies the allegations in paragraph 126.

4    127.    Monsanto denies the allegations in paragraph 127.

5    128.    Monsanto denies the allegations in paragraph 128.  All labeling of Roundup®-

6  branded products has been and remains EPA-approved and in compliance with all federal

7  requirements under FIFRA.

8    129.    Monsanto denies the allegations in paragraph 129.

9    130.    Monsanto denies the allegations in paragraph 130.

10    131.    Monsanto denies the allegations in paragraph 131, including each of its subparts.

11    132.    Monsanto denies the allegations in paragraph 132.

12    133.    Monsanto lacks information or knowledge sufficient to form a belief as to the

13  truth of the allegations in paragraph 133 regarding decedent's knowledge and therefore

14  Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 133,

15  including that intended use and/or exposure to Roundup®-branded products causes any injuries.

16    134.    Monsanto denies the allegations in paragraph 134.

17    135.    Monsanto denies the allegations in paragraph 135.

18    136.    Monsanto denies the allegations in paragraph 136.  All labeling of Roundup®-

19  branded products has been and remains EPA-approved and in compliance with all federal

20  requirements under FIFRA.

21    137.    Monsanto incorporates by reference its responses to paragraphs 1 through 136 in

22  response to paragraph 137 of plaintiff's Complaint.

23    138.    In response to the allegations in paragraph 138, Monsanto admits that plaintiff

24  purports to bring a wrongful death action, but denies any liability as to that claim.

139.    Monsanto denies the allegations in paragraph 139.

140.    Monsanto denies the allegations in paragraph 140.

In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

**SEPARATE AND AFFIRMATIVE DEFENSES**

1.    The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of decedent's alleged injuries.

4.    Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.    Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.    Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.    Plaintiff's claims are preempted, in whole or in part, by applicable federal law

- 21 -

relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.      Plaintiff's claims are barred, in whole or in part, because decedent's injuries, if any, were the result of conduct of decedent, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to decedent's pre-existing medical conditions.

11.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.      Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.      Decedent's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.      If plaintiff and/or decedent suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of decedent's alleged injuries or damages.

15.      Monsanto had no legal relationship or privity with plaintiff and/or decedent and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff and/or decedent.  If any such warranties were made, which Monsanto specifically denies, then plaintiff and/or decedent failed to give notice of any breach thereof.

17.     Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the New Mexico Constitution, the Texas Constitution and/or other applicable state constitutions.

19.     Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under New Mexico law, Texas law, and/or other applicable state laws.

20.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law.

21.      Plaintiff's claims are barred in whole or in part by plaintiff's and/or decedent's own contributory/comparative negligence.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's and/or decedent's own failure to mitigate damages.

23.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff and/or decedent received from collateral sources.

25.     If decedent had been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law, including Tex. Civ. Prac. & Rem. Code Ann. §§ 41.004(a), 41.008(b).

29.     Plaintiff's claims are barred, in whole or in part, by application of Tex. Civ. Prac. & Rem. Code Ann. § 82.008.

30.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.


DATED:  November 27, 2019                          Respectfully submitted,


                                                   /s/ Joe G. Hollingsworth
                                                   Joe G. Hollingsworth (*pro hac vice*)
                                                   (jhollingsworth@hollingsworthllp.com)
                                                   Eric G. Lasker (*pro hac vice*)
                                                   (elasker@hollingsworthllp.com)
                                                   HOLLINGSWORTH LLP
                                                   1350 I Street, N.W.
                                                   Washington, DC  20005
                                                   Telephone:  (202) 898-5800
                                                   Facsimile:  (202) 682-1639

                                                   *Attorneys for Defendant*
                                                   *MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:19-cv-07398-VC