1  **HOLLINGSWORTH LLP**
   Joe G. Hollingsworth (*pro hac vice*)
2  Eric G. Lasker (*pro hac vice*)
   1350 I Street, N.W.
3  Washington, DC  20005
   Telephone:   (202) 898-5800
4  Facsimile:   (202) 682-1639
   Email:       jhollingsworth@hollingsworthllp.com
5                elasker@hollingsworthllp.com

6  *Attorneys for Defendant*
   *MONSANTO COMPANY*

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 IN RE: ROUNDUP PRODUCTS            MDL No. 2741
   LIABILITY LITIGATION
11                                    Case No. 3:16-md-02741-VC

12 This document relates to:

13 *Mary Anne Merchant & Louis Merchant, Sr.*
   *w/h  v. Monsanto Co.*,
14 Case No. 3:19-cv-07571-VC

15

16     **MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT**

17         Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto

18 Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying

19 all allegations contained in the Complaint and Jury Demand ("the Complaint") of plaintiffs Mary

20 Anne and Louis Merchant, except as set forth below.  As defined in the Complaint and as used in

21 this Answer, Monsanto refers to Monsanto Company, a United States based company

22 incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any

23 allegations shall constitute a denial.

24     1.      Monsanto admits the allegations in the first and second sentences of paragraph 1.

25 In response to the allegations in the third sentence of paragraph 1, Monsanto admits that certain

26 of its Roundup®-branded products contain POEA and adjuvants, and that the United States

27 Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert.

28 Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded

- 1 -
MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

herbicides do not pose an unreasonable risk to human health.  In response to the allegations in the final sentence of paragraph 1, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 1 and therefore denies those allegations.

2. In response to the allegations in paragraph 2, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 2.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 2 and therefore denies those allegations.

3. In response to the allegations in paragraph 3, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops. Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 3.

4. Monsanto admits the allegations in the first sentence of paragraph 4.  Monsanto denies the allegations in the second sentence of paragraph 4 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

5.      Monsanto admits the allegations in the first sentence of paragraph 5.  Monsanto denies the allegations in the second sentence of paragraph 5.

6.      In response to the allegations in paragraph 6, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 6.

7.      Monsanto denies the allegations in paragraph 7.

8.      In response to the allegations in the first sentence of paragraph 8, Monsanto admits that it has stated, and continues to state, that Roundup®-branded products are safe when used in accordance with the products' labeling.  Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 8.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies those allegations.

11.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12.       Monsanto denies the allegations in paragraph 12.

13.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies those allegations.

14.      The allegations in paragraph 14 comprise attorney characterizations and are accordingly denied.  Monsanto states that the Roundup®-branded products identified by plaintiffs have a variety of separate and distinct uses and formulations.

15.       In response to the allegations in paragraph 15, Monsanto admits that it is a corporation organized under the laws of the State of Delaware and that its principal place of business is in St. Louis County, Missouri.

16.      Monsanto admits the allegations in paragraph 16.

17.     Monsanto admits that it is an agricultural biotechnology corporation with a principal place of business in St. Louis County, Missouri.  Monsanto admits that it and its affiliated companies have operations and offices in countries around the world.  Monsanto states that the remaining allegations in paragraph 17 are vague and that it accordingly lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations and therefore denies those allegations

18.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore denies those allegations.

19.     The allegations in paragraph 19 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

20.     The allegations in paragraph 20 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

21.     Monsanto admits the allegations in paragraph 21.

22.     Monsanto admits that it is authorized to do business in Pennsylvania.  The remaining allegations in paragraph 22 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

23.     The allegations in paragraph 23 set forth conclusions of law for which no response is required.

24.     Monsanto denies the allegations in paragraph 24.

25.     The allegations in paragraph 25 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in paragraph 25 based upon the allegations in plaintiffs' Complaint.

26.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 26 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 26 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

27.     The allegations in paragraph 27 set forth conclusions of law for which no response is required.

28.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 28 regarding where the events giving rise to this action occurred and therefore denies those allegations.  The remaining allegations in paragraph 28 set forth conclusions of law for which no response is required.

29.     In response to the allegations in the first sentence of paragraph 29, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in the first sentence of paragraph 29.  In response to the allegations in the second sentence of paragraph 29, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in the second sentence of paragraph 29 are vague and ambiguous and that Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 29 and therefore denies those allegations.

30.     Monsanto admits the allegations in the first sentence of paragraph 30.  Monsanto denies the allegations in the second sentence of paragraph 30 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 30 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

31.     In response to the allegations in paragraph 31, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 31.

32.     Monsanto admits the allegations in paragraph 32

33.     In response to the allegations in paragraph 33, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 33.

34.     Monsanto admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  Monsanto otherwise denies the remaining allegations in paragraph 34.

35.     The allegations in paragraph 35 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 35.

36.     In response to the allegations in paragraph 36, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 36 set forth conclusions of law for which no response is required.

37.     The allegations in paragraph 37 set forth conclusions of law for which no response is required.

38.     Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution and are registered by the State of Pennsylvania for sale and distribution.

39.     In response to the allegations in paragraph 39, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve

the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the product tests" in the final sentence of paragraph 39 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 39 set forth conclusions of law for which no answer is required.

40. Monsanto denies the allegations in paragraph 40 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40 regarding such pesticide products generally and therefore denies those allegations. The remaining allegations in paragraph 40 set forth conclusions of law for which no response is required.

41. In response to the allegations in paragraph 41, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 and therefore denies those allegations.

42.     In response to the allegations in paragraph 42, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43.     In response to the allegations in paragraph 42, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

---

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 42.

44.     In response to the allegations in paragraph 44, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies. To the extent that the allegations in paragraph 44 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

45.     In response to the allegations in paragraph 45, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

46.     Monsanto denies the allegations in paragraph 46 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and

- 9 -

that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

one of several pesticide manufacturers who had used IBT test results.  The audit found some

toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

based upon any invalid IBT studies.  To the extent that the allegations in paragraph 46 are

intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

denies those allegations.

47.    In response to the allegations in paragraph 47, Monsanto admits that three IBT

employees were convicted of the charge of fraud, but Monsanto denies that any of the

individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

herbicides.

48.    In response to the allegations in paragraph 48, Monsanto admits that it – along

with numerous other private companies – hired Craven Laboratories as an independent

laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that

it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies

conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

paragraph 48 are intended to suggest that Monsanto was anything other than a victim of this

fraud, such allegations are denied.

49.    In response to the allegations in paragraph 49, Monsanto admits that Roundup®-

branded products are highly valued by its customers because of their efficacy and safety.

Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

remaining allegations in paragraph 49 are vague and conclusory and comprise attorney

characterizations and are accordingly denied.

50.    In response to the allegations in paragraph 50, Monsanto admits that following the

development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

are now widely used by farmers in the United States and worldwide.  Monsanto lacks

information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 50 and accordingly denies those allegations.  The remaining allegations in paragraph 50 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

51.     In response to the allegations in paragraph 51, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 51 and accordingly denies the same.  The remaining allegations in paragraph 51 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

52.     In response to the allegations in paragraph 52, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 52 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

53.     In response to the allegations in paragraph 53, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 53 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

54.     Monsanto denies the allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 55 to the extent that they

suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 56, which are not limited as of any specified date, and accordingly denies the same.

57.     In response to the allegations in paragraph 57, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 57.

58.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 and therefore denies those allegations.

59.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 and therefore denies those allegations.

60.     Monsanto denies the allegations in paragraph 60 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

61.     In response to the allegations in paragraph 61, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts."

62.     In response to the allegations in paragraph 62, Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

64.     The allegations in paragraph 64 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

65.     In response to the allegations in paragraph 65, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to

1   glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

2   health concern from such exposures.

3         67.      In response to the allegations in paragraph 67, Monsanto denies that the IARC

4   working group considered all of the data in the numerous studies that have been conducted

5   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

6   that it reliably considered the studies that it purports to have reviewed, which frequently reach

7   conclusions directly contrary to those espoused by the IARC working group.  To the extent that

8   the allegations in paragraph 67 purport to characterize statements made in the IARC monograph

9   for glyphosate, the statements in that document speak for themselves.

10         68.      In response to the allegations in paragraph 68, Monsanto denies that the IARC

11   working group considered all of the data in the numerous studies that have been conducted

12   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

13   that it reliably considered the studies that it purports to have reviewed, which frequently reach

14   conclusions directly contrary to those espoused by the IARC working group.  To the extent that

15   the allegations in paragraph 68 purport to characterize statements made in the IARC monograph

16   for glyphosate, the statements in that document speak for themselves.

17         69.      In response to the allegations in paragraph 69, Monsanto admits that the working

18   group cited to a study that it concluded provided evidence of chromosomal damage in

19   community residents reported to be exposed to glyphosate, but Monsanto denies that the study

20   supports such a conclusion or that the authors of the study reached such a conclusion.

21         70.      In response to the allegations in paragraph 70, Monsanto admits that the IARC

22   working group purported to make these findings, but denies that the animal carcinogenicity

23   studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any

24   of the identified tumors.  Monsanto further states that regulatory agencies around the world have

25   reviewed the same animal studies and concluded that they do not provide evidence that

26   glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 70.

27

28

71.     In response to the allegations in paragraph 71, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.

72.     In response to the allegations in paragraph 72, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 72.

73.     In response to the allegations in paragraph 73, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 74.

75.     In response to the allegations in the first sentence of paragraph 75, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  In response to the allegations in the second sentence of paragraph 75, Monsanto states that the cited document speaks for itself and does not require a response.  In response to the allegations in the final

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

sentence of paragraph 75 and in footnote 1, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses. Monsanto denies the remaining allegations in paragraph 75.

76.     In response to the allegations in paragraph 76, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

77.     In response to the allegations in paragraph 77, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine.  Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

In response to the allegations in the unnumbered paragraph following paragraph 78, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

79.     Monsanto states that the term "toxic" as used in paragraph 79 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 80.

81.    In response to the allegations in the first sentence of paragraph 81 Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent that the first sentence of paragraph 81 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 81. In response to the remaining allegations in paragraph 81, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 81.

82.    In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 82 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 82.

83.    In response to the allegations in paragraph 83, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 83 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 83.

84.    In response to the allegations in paragraph 84, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 85.

85.    In response to the allegations in paragraph 85, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 85.  Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  The remaining allegations in

paragraph 85 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

86.     In response to the allegations in paragraph 86, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 88.

89.     Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 93 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 93.

94.    The allegations in paragraph 94 set forth conclusions of law for which no response is required.

95.    The allegations in paragraph 95 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

96.    In response to the allegations in paragraph 96, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

97.    In response to the allegations in paragraph 97, Monsanto admits that plaintiffs accurately quote from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  The remaining allegations in paragraph 97 comprise attorney characterizations and are accordingly denied.

98.    In response to the allegations in paragraph 98, Monsanto admits that, on November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal

---

[5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.

Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[6]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

99.    In response to the allegations in paragraph 99, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 99.

100.    Monsanto admits the allegations in paragraph 100.

101.    In response to the allegations in paragraph 101, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 101 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiffs, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumor incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[7]  To the extent that paragraph 101 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 101. Monsanto further states that the cited document speaks for itself and does not require a response.

102.    In response to the allegations in paragraph 102, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those

---

[6] *See* EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[7] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these

exposure thresholds are based upon any alleged risk of carcinogenicity.

103.    In response to the allegations in paragraph 103, Monsanto admits that certain

individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 103

(hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his

letter are "independent" and "renowned international experts in the field."  Monsanto states that

Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the

glyphosate cancer litigation against Monsanto and that Monsanto lacks information or

knowledge sufficient to form a belief as to whether the other signatories were aware, before they

signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.

Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the

scientific findings reached by EFSA and by the BfR.

104.    In response to the allegations in paragraph 104, Monsanto admits that Dr. Portier

sent the letter identified in paragraph 104.  Monsanto denies that Dr. Portier or the other

signatories to his letter are "renowned international experts in the field."  Monsanto admits that

certain members of the IARC working group assigned to glyphosate signed on to the Portier

letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to

whether those individuals or the other signatories were aware at the time that Dr. Portier was

working as a retained expert for plaintiffs' counsel.

105.    In response to the allegations in paragraph 105, Monsanto states that the cited

Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

carcinogenic hazard to humans."[8]  To the extent that paragraph 105 characterizes the meaning of

---

[8] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en
/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

1  the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining

2  allegations in paragraph 105.

3      106.    In response to the allegations in paragraph 106, Monsanto admits that IARC

4  concluded that the human epidemiologic data provides only "limited evidence of

5  carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not

6  be ruled out with reasonable confidence."[9]  Monsanto further admits that Dr. Portier – who has

7  been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer

8  litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by

9  EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to

10  humans."[10]  In response to the remaining allegations in paragraph 106, Monsanto states that the

11  cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph

12  88 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate,

13  Monsanto denies the remaining allegations in paragraph 106.

14      107.    In response to the allegations in paragraph 107, Monsanto states that the cited

15  Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

16  Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

17  glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

18  conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

19  carcinogenic hazard to humans."[11]  To the extent that paragraph 107 characterizes the meaning

20  of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the

21  remaining allegations in paragraph 107.

22      108.    In response to the allegations in paragraph 108, Monsanto states that the cited

23  Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

24

25  [9] http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php.

26  [10] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

27  [11] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

28

1 Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

2 glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

3 conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

4 carcinogenic hazard to humans."[12]  To the extent that paragraph 108 characterizes the meaning

5 of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the

6 remaining allegations in paragraph 108.

7         109.    Monsanto admits the allegations in paragraph 109.

8         110.    In response to the allegations in paragraph 110, Monsanto states that the cited

9 document speaks for itself and does not require a response.  Monsanto denies that the self-

10 labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

11 extent that paragraph 110 characterizes the scientific evidence regarding the safety of

12 glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 110.

13        111.    In response to the allegations in paragraph 111, Monsanto states that the cited

14 document speaks for itself and does not require a response.  Monsanto denies that the self-

15 labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

16 extent that paragraph 94 characterizes the scientific evidence regarding the safety of glyphosate-

17 based herbicides, Monsanto denies the remaining allegations in paragraph 111.

18        112.    In response to the allegations in paragraph 112, Monsanto states that the cited

19 document speaks for itself and does not require a response.  Monsanto denies that the self-

20 labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

21 extent that paragraph 112 characterizes the scientific evidence regarding the safety of

22 glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 112.

23        113.    In response to the allegations in paragraph 113, Monsanto states that the cited

24 document speaks for itself and does not require a response.  Monsanto denies that the self-

25 labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

26

27 [12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu
/en/press/news/151112.

28

extent that paragraph 113 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 113.

114.     In response to the allegations in paragraph 114, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 114 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 114.

115.     In response to the allegations in paragraph 115, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 115 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 115.

116.     In response to the allegations in paragraph 116, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 116 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 116.

117.     In response to the allegations in paragraph 117, Monsanto admits that the United States Food and Drug Administration ("FDA") has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 117, Monsanto states that the cited documents speak for themselves and do not require a response.

118.     In response to the allegations in paragraph 118, Monsanto admits that the U.S. Government Accountability Office ("GAO") issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to the remaining allegations in paragraph 118, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 118

characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 118.

119.     In response to the allegations in paragraph 119, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 119, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 119 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 119.

120.     In response to the allegations in paragraph 120, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 103, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 120 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 120.

121.     Monsanto admits the allegations in paragraph 121.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

122.     In response to the allegations in paragraph 122, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

123.     In response to the allegations in paragraph 123, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 123.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

124.     In response to the allegations in paragraph 124, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 124 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 124.

125.     In response to the allegations in paragraph 125, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 125 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 125.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

126.     Monsanto admits the allegations in paragraph 126.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

127.     Monsanto admits the allegations in paragraph 127.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

128.     Monsanto admits the allegations in paragraph 128.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

129.     In response to the allegations in paragraph 129, Monsanto admits that the EU voted to extend the glyphosate license for five more years.  The remaining allegations in paragraph 129 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

130.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 130 and therefore denies those allegations.

131.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 131 and therefore denies those allegations.

1      132.   Monsanto lacks information or knowledge sufficient to form a belief as to the

2 truth of the allegations in paragraph 132 and therefore denies those allegations.

3      133.   Monsanto denies that any exposure to Roundup®-branded products can cause

4 NHL and other serious illnesses and therefore denies those allegations in paragraph 133.

5 Monsanto states, however, that the scientific studies upon which IARC purported to base its

6 evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks

7 information or knowledge sufficient to form a belief as to the truth of the remaining allegations

8 in paragraph 115 and therefore denies those allegations.

9      134.   Monsanto denies the allegations in paragraph 134.

10      135.   In response to the allegations in paragraph 135, Monsanto denies that there is any

11 risk of serious illness associated with the use of and/or exposure to Roundup®-branded products

12 and glyphosate and denies that Roundup®-branded products or glyphosate are injurious to human

13 health.  Monsanto states, however, that the scientific studies upon which IARC purported to base

14 its classification were all publicly available before March 2015.

15      136.   In response to the allegations in paragraph 136, Monsanto denies that exposure to

16 Roundup®-branded products and glyphosate is injurious to human health.  Monsanto states,

17 however, that the scientific studies upon which IARC purported to base its cancer classification

18 for glyphosate were all publicly available before March 2015.  The allegations in paragraph 118

19 set forth conclusions of law for which no response is required.

20      137.   In response to the allegations in paragraph 137, Monsanto denies that there is any

21 risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-

22 branded products and glyphosate.  Monsanto states, however, that the scientific studies upon

23 which IARC purported to base its cancer classification for glyphosate were all publicly available

24 before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to

25 the truth of the remaining allegations in paragraph 137 and therefore denies those allegations.

26      138.   The allegations in paragraph 138 set forth conclusions of law for which no

27 response is required.  To the extent that a response is deemed required, Monsanto denies the

28

1   allegations in paragraph 138.  Monsanto states that the scientific studies upon which IARC

2   purported to base its cancer classification for glyphosate were all publicly available before

3   March 2015.

4        139.   Monsanto denies the allegations in paragraph 139.

5        140.   Monsanto denies the allegations in paragraph 140.

6        141.   The allegations in paragraph 141 set forth conclusions of law for which no

7   response is required.

8        142.   Monsanto denies the allegations in paragraph 142.

9        143.   The allegations in paragraph 143 set forth conclusions of law for which no

10   response is required.  To the extent that a response is required, Monsanto denies the allegations

11   in paragraph 143.  Monsanto states that the scientific studies upon which IARC purported to base

12   its cancer classification for glyphosate were all publicly available before March 2015.

13        144.   Monsanto incorporates by reference its responses to paragraphs 1 through 143 in

14   response to paragraph 144 of plaintiffs' Complaint.

15        145.   In response to the allegations in paragraph 145, Monsanto admits that plaintiffs

16   purport to bring claims for strict liability design defect but denies any liability as to that claim.

17        146.   Monsanto denies the allegations in paragraph 146.

18        147.   In response to the allegations in paragraph 147, Monsanto lacks information or

19   knowledge sufficient to form a belief as to the truth of the allegations that plaintiffs' decedent

20   used or was exposed to Roundup®-branded products and therefore denies those allegations.

21   Monsanto denies the remaining allegations in paragraph 147.

22        148.   Monsanto denies the allegations in paragraph 148.

23        149.   Monsanto lacks information or knowledge sufficient to form a belief as to the

24   truth of the allegations in paragraph 149 and therefore denies those allegations.

25        150.   Monsanto denies the allegations in paragraph 150.

26        151.   Monsanto denies the allegations in paragraph 151.

27        152.   Monsanto denies the allegations in paragraph 152.

28

153.    Monsanto denies the allegations in paragraph 153 and each of its subparts.

154.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 154 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 154, including that Roundup®-branded products have "dangerous characteristics."

155.    Monsanto denies the allegations in paragraph 155.

156.    Monsanto denies the allegations in paragraph 156.

157.    Monsanto denies the allegations in paragraph 157.

158.    Monsanto denies the allegations in paragraph 158.

159.    Monsanto denies the allegations in paragraph 159.

160.    Monsanto denies the allegations in paragraph 160.

In response to the "WHEREFORE" paragraph following paragraph 160, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

161.    Monsanto incorporates by reference its responses to paragraphs 1 through 160 in response to paragraph 161 of plaintiffs' Complaint.

162.    In response to the allegations in paragraph 162, Monsanto admits that plaintiffs purport to bring claims for strict liability failure to warn, but denies any liability as to that claim.

163.    Monsanto denies the allegations in paragraph 163.

164.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 164 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph 164 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 164.

165.     The allegations in paragraph 165 set forth conclusions of law for which no response is required.

166.     Monsanto denies the allegations in paragraph 166.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

167.     Monsanto denies the allegations in paragraph 167.

168.     Monsanto denies the allegations in paragraph 168.

169.     Monsanto denies the allegations in paragraph 169.

170.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 170 and therefore denies those allegations.

171.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 171 concerning plaintiff's  claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 171, including that Roundup®-branded products have "dangerous characteristics."

172.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 172 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 172.

173.     The allegations in paragraph 173 set forth conclusions of law for which no response is required.

174.     Monsanto denies the allegations in paragraph 174.

175.     Monsanto denies the allegations in paragraph 175.

176.     Monsanto denies the allegations in paragraph 176.

177.     Monsanto denies the allegations in the Complaint's first-numbered paragraph 177.

178.     Monsanto denies the allegations in the Complaint's first-numbered paragraph 178.

179.     Monsanto denies the allegations in the Complaint's first-numbered paragraph 179.

180.     Monsanto denies the allegations in the Complaint's first-numbered paragraph 180.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC

181.   Monsanto denies the allegations in the Complaint's first-numbered paragraph 181.

In response to the "WHEREFORE" paragraph following the Complaint's first-numbered paragraph 181, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

182.   Monsanto incorporates by reference its responses to paragraphs 1 through the Complaint's first-numbered 181 in response to the Complaint's first-numbered paragraph 182 of plaintiffs' Complaint.

183.   In response to the allegations in the Complaint's first-numbered paragraph 183, Monsanto states that the phrase "directly or indirectly" is vague and ambiguous and that Monsanto lacks information or knowledge sufficient to form a belief as to the truth of those allegations and therefore Monsanto denies those allegations in the Complaint's first-numbered paragraph 183.

184.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 184 regarding the specific products allegedly purchased or used by plaintiff and therefore denies the allegations in paragraph 184.

185.   The allegations in paragraph 185 set forth conclusions of law for which no response is required.

186.   The allegations in paragraph 186 set forth conclusions of law for which no response is required.

187.   Monsanto denies the allegations in paragraph 187.

188.   Monsanto denies the allegations in paragraph 188.

189.   Monsanto denies the allegations in paragraph 189.

190.   Monsanto denies the allegations in paragraph 190.

191.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 191 regarding users' and consumers' knowledge and

1    therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 191.

2    All labeling of Roundup®-branded products has been and remains EPA-approved and in

3    compliance with all federal requirements under FIFRA.

4        192.    Monsanto denies the allegations in paragraph 192.

5        193.    Monsanto denies the allegations in paragraph 193.

6        194.    Monsanto denies the allegations in paragraph 194.

7        195.    Monsanto denies the allegations in paragraph 195, including each of its subparts.

8        196.    Monsanto denies the allegations in paragraph 196.

9        197.    Monsanto denies the allegations in paragraph 197.

10       198.    Monsanto lacks information or knowledge sufficient to form a belief as to the

11   truth of the allegations in paragraph 198 regarding plaintiff's  knowledge and therefore denies

12   those allegations.  Monsanto denies the remaining allegations in paragraph 198, including that

13   intended use of and/or exposure to Roundup®-branded products causes any injuries.

14       199.    Monsanto denies the allegations in paragraph 199.

15       200.    Monsanto denies the allegations in paragraph 200.

16       201.    Monsanto denies the allegations in paragraph 201.  All labeling of Roundup®-

17   branded products has been and remains EPA-approved and in compliance with all federal

18   requirements under FIFRA.

19       In response to the "WHEREFORE" paragraph following paragraph 201, Monsanto

20   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

21   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

22   fees as allowed by law and such further and additional relief as this Court may deem just and

23   proper.

24       202.    Monsanto incorporates by reference its responses to paragraphs 1 through 201 in

25   response to paragraph 202 of plaintiffs' Complaint.

26       203.    Monsanto denies the allegations in paragraph 203.

27       204.    Monsanto denies the allegations in paragraph 204.

28

205.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 205 concerning plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 205 set forth conclusions of law for which no response is required.

206.    Monsanto denies the allegations in paragraph 206.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

207.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 207 concerning plaintiff's claimed purchase of Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 207 set forth a conclusion of law for which no response is required.

208.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 208 regarding plaintiff's reliance and therefore denies those allegations.  The remaining allegations in paragraph 208 set forth conclusions of law for which no response is required.

209.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 209 and therefore denies those allegations.

210.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 210concerning plaintiff's  claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 210 set forth conclusions of law for which no response is required.

211.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 211 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 211 regarding Monsanto's implied warranties sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 211.

212.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 212 concerning plaintiff's  reliance or plaintiff's claimed use of any Roundup®-branded product and therefore denies those allegations.  The remaining allegations in paragraph 212 set forth conclusions of law for which no response is required.

213.    Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 213 concerning plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 213.

214.    Monsanto denies the allegations in paragraph 214.

215.    Monsanto denies the allegations in paragraph 215.

216.    Monsanto denies the allegations in paragraph 216.

In response to the "WHEREFORE" paragraph following paragraph 216, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

217.    Monsanto incorporates by reference its responses to paragraphs 1 through 216 in response to paragraph 217 of plaintiffs' Complaint.

218.    Monsanto denies the allegations in paragraph 218.

219.    The allegations in paragraph 219 and its subparts set forth conclusions of law for which no response is required.

220.    In response to the allegations in paragraph 220, Monsanto admits that it has sold glyphosate based herbicides in accordance with their EPA-approved labeling.  Monsanto further states that paragraph 227 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 220.

221.    Monsanto denies the allegations in the first and second sentence of paragraph 221. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence of paragraph 221 sets forth conclusions of law for which no response is required.

222.    The allegations in paragraph 222 sets forth conclusions of law for which no response is required.

223.    Monsanto denies the allegations in paragraph 223.

224.    Monsanto denies the allegations in paragraph 224 and each of its subparts.

225.    Monsanto states that the allegation in paragraph 225 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 225 and therefore denies those allegations.

226.    Monsanto denies the allegations in paragraph 226.

227.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 227 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 227.

228.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 228 and therefore denies those allegations.

229.    Monsanto denies the allegations in paragraph 229.

230.    Monsanto denies the allegations in paragraph 230.

In response to the "WHEREFORE" paragraph following paragraph 230, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

231.    Monsanto incorporates by reference its responses to paragraphs 1 through 230 in response to paragraph 231 of plaintiffs' Complaint.

232.     Monsanto lacks information or knowledge sufficient to form a belief regarding plaintiffs' claimed selection or use of Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 232 set forth conclusions of law for which no response is required.

233.     The allegations in the first sentence of paragraph 233 set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 233, including that Roundup®-branded products are "dangerous products."

234.     Monsanto denies the allegations in paragraph 234.

235.     Monsanto denies the allegations in paragraph 235.

236.     Monsanto denies the allegations in paragraph 236.

237.     Monsanto denies the allegations in paragraph 237.

238.     Monsanto denies the allegations in paragraph 238.

239.     Monsanto denies the allegations in paragraph 239.

240.     Monsanto denies the allegations in paragraph 240.

In response to the "WHEREFORE" paragraph following paragraph 240, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

241.     Monsanto incorporates by reference its responses to paragraphs 1 through 240 in response to paragraph 241 of plaintiffs' Complaint.

242.     The allegations in paragraph 242 set forth conclusions of law for which no response is required.  Monsanto denies that plaintiffs are entitled to any of the relief sought in the Complaint.

243.     Monsanto denies the allegations in paragraph 243.

244.     Monsanto denies the allegations in paragraph 244.

245.     Monsanto denies the allegations in paragraph 245.

246.    Monsanto denies the allegations in paragraph 246 and each of its subparts.

247.    Monsanto states that paragraph 247 sets forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 247.

248.    Monsanto denies the allegations in paragraph 248.

249.    Monsanto denies the allegations in paragraph 249.

250.    Monsanto denies the allegations in paragraph 250.

251.    Monsanto denies the allegations in paragraph 251.

252.    Monsanto denies the allegations in paragraph 252.

253.    Monsanto denies the allegations in paragraph 253.

254.    Monsanto denies the allegations in paragraph 254.

255.    Monsanto denies the allegations in paragraph 255.

256.    Monsanto denies the allegations in the first sentence of paragraph 256.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 256 and therefore denies those allegations.

In response to the "WHEREFORE" paragraph following paragraph 256, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

257.    Monsanto incorporates by reference its responses to paragraphs 1 through 263 in response to paragraph 264 of plaintiffs' Complaint.

258.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 258 and therefore denies those allegations.

259.    Monsanto denies the allegations in paragraph 259.

260.    Monsanto denies the allegations in paragraph 260.

261.    Monsanto denies the allegations in paragraph 268.

1   In response to the "WHEREFORE" paragraph following paragraph 261, Monsanto

2   demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be

3   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

4   fees as allowed by law and such further and additional relief as this Court may deem just and

5   proper.

6   177.   Monsanto incorporates by reference its responses to paragraphs 1 through 268 in

7   response to the Complaint's second-numbered paragraph 177 of plaintiffs' Complaint.

8   178.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

9   178.

10   179.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

11   179.

12   180.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

13   180.

14   181.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

15   181.

16   182.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

17   182.

18   183.   The allegations in the Complaint's second-numbered paragraph 183 set forth

19   conclusions of law for which no response is required.

20   In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto

21   denies that plaintiffs are entitled to the relief sought therein, including any judgment for any

22   damages, interest, costs, or any other relief whatsoever.

23   Every allegation in the Complaint that is not specifically and expressly admitted in this

24   Answer is hereby specifically and expressly denied.

25   **SEPARATE AND AFFIRMATIVE DEFENSES**

26   1.   The Complaint, in whole or part, fails to state a claim or cause of action against

27   Monsanto upon which relief can be granted.

28

2.      Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

7.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

8.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

9.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiffs' claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or

independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

17.     Plaintiffs have failed to allege fraud with sufficient specificity.

18.     Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19.     Plaintiffs' claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Pennsylvania Constitution and/or other applicable state constitutions.

20.     Plaintiffs' claims for punitive damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under California law and/or other applicable state laws.

21.     Plaintiffs' claims for punitive damages are barred and/or limited by operation of state and/or federal law..

22.     Plaintiffs' claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

23.     Plaintiffs' claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

24.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

25.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

28.     Monsanto hereby preserves any and all defenses under *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014).

29.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

1

## **JURY TRIAL DEMAND**

2

Monsanto demands a jury trial on all issues so triable.

3

4    DATED:  December 4, 2019                    Respectfully submitted,

5

6                                               /s/ Joe G. Hollingsworth
                                                Joe G. Hollingsworth (*pro hac vice*)
7                                               (jhollingsworth@hollingsworthllp.com)
                                                Eric G. Lasker (*pro hac vice*)
8                                               (elasker@hollingsworthllp.com)
                                                HOLLINGSWORTH LLP
9                                               1350 I Street, N.W.
                                                Washington, DC  20005
10                                              Telephone:  (202) 898-5800
                                                Facsimile:   (202) 682-1639
11
                                                *Attorneys for Defendant*
12                                              *MONSANTO COMPANY*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07571-VC