**THE MILLER FIRM, LLC**
Michael J. Miller (pro hac vice)
Brian K. Brake (pro hac vice)
Tayjes Shah (pro hac vice)
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com
tshah@millerfirmllc.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | Hearing Date: January 29, 2020 |
| *Harris v. Monsanto Co.*, 3:17-cv-03199-VC | |
| *Hernandez v. Monsanto, Co.*, 3:16-cv-05750-VC | |

**PLAINTIFFS' INES HERNANDEZ AND ANTHONY HARRIS' OPPOSITION TO MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF CASE SPECIFIC CAUSATION EXPERT, RON SCHIFF IN WAVE ONE CASES ON *DAUBERT* GROUNDS**

**I.   PRELIMINARY STATEMENT**

At the June 4, 2019 hearing, the Court stated that it had been operating under the assumption for the California cases that the Court's prior rulings on general causation and specific causation for the bellwether cases would largely dictate the outcome for a large majority of the Wave One cases, and all that is going to be necessary is for Monsanto to say is, "Yes, we preserve our appellate rights, but we agree that under your rulings on bellwether cases, summary judgment would be denied on these cases as well." June 4, 2019 hearing transcript at

page 7. The Court posited further that only in a small minority of the cases will there be arguments from Monsanto that the cases are so different from the bellwether cases that there are reasons you must grant summary judgment in these cases nonetheless. Id.

Despite Monsanto saying that, "I think we take the advice Your Honor is giving" Id at 17, Monsanto has nevertheless filed one brief (ECF 8012), totaling over 1,300 pages with exhibits, that seeks to exclude seven specific causation experts in fourteen different cases, as well as six separate Motions to Exclude other experts on various grounds.

This opposition addresses only ECF 8012 with respect to Plaintiffs' expert Dr. Ron Schiff, who provided opinions in *I. Hernandez and Harris*.

## II. THIS COURT HAS ALREADY RULED THAT PLAINTIFFS' EXPERTS PROPERLY RULED IN ROUNDUP AS THE CAUSE OF PLAINTIFFS' NON-HODGKIN'S LYMPHOMA

In response to this argument, Plaintiffs state that the Court has already considered and rejected this argument in PTO 85, calling it "off point". PTO 85 at 2, see also PTO 45.

## III. DR. SCHIFF PROPERLY ASSESSED POTENTIAL ALTERNATIVE CAUSES FOR PLAINTIFF INES HERNANDEZ AND ANTHONY HARRIS' NON-HODGKIN'S LYMPHOMA

Dr. Schiff is Board Certified in internal medicine, medical oncology, and hematology. He graduated from St. Louis University with a Ph.D. in molecular and cellular biology in 1979 and an M.D. in 1980. He also completed a one year post-doctoral fellowship in molecular and cellular biology, as well as a sub-specialty fellowship in medical oncology and hematology at Memorial Sloan-Kettering Cancer Center from 1983 – 1986. He served as a faculty member in the Department of Medicine, Division of Hematology/Oncology at the Medical University of South Carolina in Charleston from 1986 – 1992 and was in private practice in medical oncology from 1992 until his retirement from active practice in May 2015. He served as the Chair of the

Cancer Committee at the University Community Hospital and its successor, Florida Hospital Tampa, from January 1985 until April 2014. He began reviewing cases as an expert witness almost 30 years ago in 1990. Brake Decl., **Exhibit 1**, Dr. Schiff report in the *Hernandez* case, at 20-25[1].

Dr. Schiff prepared extensive and detailed reports for Plaintiffs Ines Hernandez and Anthony Harris. Both reports review in great detail the medical histories of these Plaintiffs. The reports then provide detailed opinions on diagnosis and staging, treatment, disease status and prognosis, complications, psychological effects, lymphoma caused by Roundup, evaluation of other risk factors, and a conclusion. In each report, Dr. Schiff concludes, "to a reasonable degree of scientific and medical certainty, [that] exposure to Roundup was a substantial factor" in causing the Plaintiffs' non-Hodgkin's Lymphoma (**Exhibit 1**, at 15), **Exhibit 2** Schiff report in Harris at 11).

Although criticized for failing to do so, Dr. Schiff in fact discusses in both reports other risk factors including potential idiopathic causes and opines "other than Roundup exposure, no risk factors for the development of lymphoma, such as predisposing medical conditions, a positive family history, or other candidate carcinogenic exposures, are identified . . ." (**Exhibit 1** at 14-15, **Exhibit 2** at 11). Dr. Schiff reached his opinions after reviewing each Plaintiffs' comprehensive medical records, the depositions of the parties, various treating health care provider depositions, pre-trial orders 45 and 85, and the general causation expert reports of Drs.

---

[1] All referenced exhibits are supported by the attached Declaration of Brian K. Brake

Weisenburger, Portier and Ritz. **Exhibit 1** at 30; **Exhibit 2** at 28. He also conducted an interview with each Plaintiff. (Schiff *Hernandez* deposition **Exhibit 3** at 9.25 – 10.4).

As can be seen from his reports and deposition testimony, Dr. Schiff followed the Court's guidelines in pretrial order No. 85 for ruling in and ruling out various factors in arriving at his opinions.

**Ines Hernandez**

Despite Dr. Schiff's impressive credentials and substantial review of the actual existing evidence in the case, Monsanto claims that his opinions should be struck for failure to address other unknown, unquantifiable and conjectural alternative causes.

On page 11 of its brief, Monsanto asserts that Dr. Schiff claims to have ruled in and ruled out Hepatitis A but never mentioned it in his report. In fact, Dr. Schiff discusses all of the various tests to determine whether Mr. Hernandez had Hepatitis A in the beginning of his report (**Exhibit 1** at 3, 4, 5), but did not discuss it specifically as a potential causation factor in his report because it is not a known risk factor for non-Hodgkin's lymphoma. Schiff *Hernandez* deposition **Exhibit 3** at 47.11 - 18.

Without any specific evidence, Monsanto speculates that Mr. Hernandez may have been exposed to different carcinogens when he lived in Long Beach because Monsanto claims that Long Beach residents have in the past been exposed to PCBs[2], smoke and air pollution. Monsanto criticizes Dr. Schiff for not investigating the air quality reports in the Long Beach area in the period of time in which Mr. Hernandez lived there. Monsanto speculates that

---

[2] Ironically, Monsanto also manufactured PCBs, and claimed in previous litigation that "**The scientific literature does not support Plaintiffs' hypothesis that PCBs cause NHL.**" *Dauber v. Monsanto Co.,* 2016 WL 1532114 (Cal. Super. Ct.) (Monsanto's Trial Brief)

4

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF RON SCHIFF

because Ines Hernandez worked in a "crib factory,"[3] he may have been exposed to some carcinogenic materials without offering any evidence, much less proffering an expert witness, to testify that any of these exposures were a substantial factor in causing Mr. Hernandez's non-Hodgkin's lymphoma.

Dr. Schiff's review of the extensive medical records revealed nothing that would be connected to Mr. Hernandez's follicular lymphoma. **Exhibit 3** Dr. Schiff *Hernandez* deposition at 50.11 – 16; 63.3 – 64.10. Dr. Schiff also explained that the PCBs in Long Beach were associated with fresh water fish, not in the air. Id. at 68.23 – 69.19, and that he did consider ambient environmental exposure. (Id. at 70.8 – 16)

Under *Wendell* and *Cooper*, further investigation, requiring the expert to scour the earth for any conceivable cause, is simply not required as a predicate to the expert's qualification to testify.

**Anthony Harris**

Likewise, Monsanto speculates that Mr. Harris had occupational exposure to benzene, PCBs, chemicals in cigarette smoke, gasoline, radiation and organochlorines. This is based upon Monsanto's understanding that Mr. Harris worked as a gas station attendant[4] and as a bartender[5] where Monsanto speculates he was exposed to second hand smoke. Monsanto

---

[3] Mr. Hernandez worked in a crib factory for seven years "many years" ago **Exhibit 4**. Hernandez deposition at 23.16-22
[4] Anthony Harris, now age 43, worked at a gas station when he was 17 or 18 (**Exhibit 5** Harris deposition, p. 16.6-13), for three months or so, 2 or 3 days a week for approximately four hours. Id. at 34.1-11
[5] Monsanto's counsel never asked Mr. Harris to quantify exactly how long he worked as a bartender.

5
PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF RON SCHIFF

further speculates that because Mr. Harris worked at an auto body shop[6] and lived near Camp Pendleton[7], he was likely exposed on a daily basis to carcinogenic chemicals.

Dr. Schiff testified that based upon his review of the above mentioned material, which included an interview with the Plaintiffs, he was not able to find any other alternative likely cause of this Plaintiff's non-Hodgkin's lymphoma other than his extensive use of Roundup (**Exhibit 7** Schiff deposition Harris at 164.19 – 165.18)

Dr. Schiff also noted that Mr. Harris' treating neurosurgeon, Dr. Stern, noted in the medical records that he had no history of toxic exposure as of January, 2015.  **Exhibit 7** Schiff deposition *Harris* at 128.4 – 15.

* * *

Controlling law in the 9th Circuit and the *Cooper* case both make clear that Monsanto's request for an exhaustive quest into speculative factors is not needed and does not disqualify an expert from testifying.  Furthermore, Monsanto does not proffer an expert to testify that any of the above speculative exposures were a substantial factor in causing either Plaintiffs' non-Hodgkin's lymphoma.

In <u>Wendell v. GlaxoSmithKline, LLC</u>, 858 F.3d 1227, 1237 (2017), the 9th Circuit made clear that

> We do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause "be a substantial causative factor."  This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy.

---

[6] Mr. Harris worked "on and off" as a customer service representative at Harris Reconditioning in San Marcos, CA from 2014 – 2018.  **Exhibit 6** Plaintiff's Third Amended Fact Sheet, p. 3
[7] Mr. Harris lived in Oceanside, CA which is west of Camp Pendleton from 1/2000 – 2/2003 and from 9/2015 to the present.  **Exhibit 6**  Plaintiff's Third Amended Fact Sheet, p. 2

Noting that Dr. Shustov employed sound methodologies and based his opinions on medical records as well as his education, training and experience, knowledge of the pertinent medical literature and his knowledge of the epidemiology, diagnosis and natural history of the disease, (hepatosplenic T-cell lymphoma) the 9th Circuit reversed the trial court's grant of summary judgment on the basis that Plaintiff did not present admissible expert testimony of causation. Id. at 1234.

Likewise, in <u>Cooper v. Takeda Pharmaceuticals America, Inc.</u>, 239 Cal. App. 4th 555 (2014), the California Court of Appeals reversed the trial court's determination that the expert, Dr. Smith, was required to rule out all other possible causes for plaintiff's bladder cancer, even where there was no substantial evidence that other such causes might be relevant.

In *Cooper* the defendant argued that the plaintiff was subject to environmental and occupational exposures, including exposure to second hand smoke at work and potential exposure to "anything" during his army service and therefore the expert's opinion should be excluded for failure to track down and investigate these multiple potential causative factors of Plaintiff's bladder cancer.

The Court concluded that

> Thus, because California has rejected the notion that a plaintiff must definitively exclude all possibilities other than the defendant's conduct or product as the cause of the plaintiff's harm, clearly an expert, in reaching a specific causation opinion, need not exclude all other possibilities before he or she can express an opinion that the defendant's conduct or product caused the plaintiff's harm. Id. at 580.

*  *  *

> Under the applicable substantial factor test, it is not necessary for a plaintiff to establish the negligence of the defendant as the

7

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF RON SCHIFF

> proximate cause of injury with absolute certainty *so as to exclude every other possible cause of a plaintiff's illness*, even if the expert's opinion was reached by performance of a differential diagnosis. The jury here was required to determine whether there was any substantial evidence that other known risk factors for bladder cancer acted on plaintiff and provided an alternative explanation for his disease. But only if the existence of an alternative explanation, supported by substantial evidence and not mere speculation, as a matter of law defeated the explanation proffered by Cooper (i.e., Actos®) would JNOV be appropriate. (emphasis original). Id. at 578.

As demonstrated above, Dr. Schiff conducted a proper differential diagnosis as required under *Daubert, Wendell* and *Cooper* and PTO 85. Monsanto's argument that there may have been a conceivable cause that could also account for a particular Plaintiff's NHL and requiring each expert to track down all of those potential remote unsubstantiated causes does not make the experts' testimony inadmissible.[8]

## IV.   DR. SCHIFF ADDRESSED THE IDIOPATHY ARGUMENT MONSANTO NOW RAISES AGAIN

As previously mentioned, Dr. Schiff provided a discussion of why idiopathic causes are not the likely cause of these Plaintiffs non-Hodgkin's lymphoma in his reports. See **Exhibit 1** at 14-15 **Exhibit 2** at 11.

On page 19 and 20 of Monsanto's brief, Monsanto characterized the following testimony from Dr. Schiff as "stunning":

- 80% of the patients he treated with NHL did not have a known cause

- He never once told a patient that their NHL was caused by Roundup

- Since becoming an expert in this litigation, he has found that Roundup was the cause of each Plaintiffs NHL

---

[8] An expert is not required to "follow up on every detail necessary to formulate an accurate diagnosis." Id. at 584.

8

- Dr. Schiff failed to explain why he had yet to find a single Plaintiffs' NHL that was not caused by Roundup

While this testimony may be the subject for cross-examination of Dr. Schiff at trial, it does not rise to the level of disqualifying Dr. Schiff as an expert witness.

Dr. Schiff explained that one of the reasons why the majority of his patients had no known cause of NHL at the time he treated them was because his awareness of the association between glyphosate and Roundup did not occur until after he retired in the Spring of 2015. **Exhibit 7** Schiff *Harris* deposition at 88.9 – 89.5.  This would also explain why Dr. Schiff never told a patient that his NHL was caused by Roundup.

Regarding Monsanto's attempt to discredit Dr. Schiff for finding that Roundup was the cause of each of the Plaintiffs that he has opined on in this litigation, Dr. Schiff responded that he is only being sent Plaintiffs who have had extensive Roundup exposure, not patients with minimal exposure.  Id. at 91.8 – 17.  He also made clear that in other Plaintiffs cases he has reviewed he has often times told the attorney retaining him they did not have a case.  Id. at 91.23 – 92.4.

The only thing "stunning" about his testimony is that Monsanto takes the position that these candid answers could actually be grounds for disqualification.

## V. CONCLUSION

Under Monsanto's logic, no expert would ever qualify in a toxic tort case unless every conceivable potential cause, no matter how unlikely or speculative,  was tracked down, investigated, and definitely ruled out.  California and 9th Circuit law does not require such an exhaustive effort for an expert's testimony to be admissible.  The thoughtful and well reasoned

opinions of a seasoned oncology and hematology expert such as Dr. Schiff should not be excluded for such spurious reasons.

WHEREFORE, Plaintiffs move the Court to deny Monsanto's Motion to Exclude Dr. Schiff.

Dated:  December 10, 2019           By:  /s/Brian K. Brake
                                         Michael J. Miller, Esq. (pro hac vice)
                                         Brian K. Brake, Esq. (pro hac vice)
                                         Tayjes Shah, Esq. (pro hac vice)
                                         The Miller Firm LLC
                                         108 Railroad Avenue
                                         Orange, VA 22960
                                         Phone:  540-672-4224
                                         Fax:  540-672-3055
                                         mmiller@millerfirmllc.com
                                         bbrake@millerfirmllc.com
                                         tshah@millerfirmllc.com