Aimee Wagstaff, SBN 278480
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360
Facsimile:  (303) 376-6361

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile:  (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Avenue
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile:  (540) 672-3055

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Dickey v. Monsanto Co., 3:19-cv-04102-VC*<br>*Domina v. Monsanto Co., 3:16-cv-05887-VC*<br>*Giglio v. Monsanto Co., et al., 3:16-cv-05658-VC*<br>*Janzen v. Monsanto Co., 3:19-cv-04103-VC*<br>*Perkins v. Monsanto Co., 3:16-cv-06025-VC*<br>*Pollard v. Monsanto Co., 3:19-cv-04100-VC*<br>*Russo v. Monsanto Co., 3:16-cv-06024-VC* | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES JAMESON ON *DAUBERT* GROUNDS** |

**PLAINTIFF'S RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES JAMESON ON *DAUBERT* GROUNDS**

Plaintiffs have not and do not intend to "defy the limits placed on Dr. Jameson's testimony and to blur the lines between expert and fact testimony." Monsanto's motion is essentially a motion in limine. However, "[M]otions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.* (C.D. Cal., May 19, 2010, No. CV 08-8525PSGPJWX) 2010 WL 2035800, at *1. Here, Dr. Jameson's fact witness testimony would not be affected by the Court's limitations on his expert testimony and Monsanto fails to identify any specific fact witness testimony regarding IARC given in *Pilliod,* or at deposition, that would be affected. Monsanto's motion should therefore be denied.

Dr. Charles Jameson was initially designated by both Plaintiffs <u>and Monsanto</u> as a mixed fact and expert witness. On July 31, 2017, Monsanto designated three IARC working group members as non-retained expert witnesses, including Dr. Jameson, stating "Monsanto may elicit testimony from Dr. Jameson regarding **the facts and opinions** testified to in his May 3, 2017 deposition, including: (i) the IARC Working Group 112 deliberations and analysis and the resulting IARC Monograph 112; (ii) the relevant scientific evidence with respect to glyphosate; and (iii) Dr. Jameson's prior IARC monograph and consulting expert work." Travers Decl. at Exhibit A. It was Monsanto who moved to compel the production of Dr. Jameson as fact witness in this litigation. PTO 16.

Dr. Jameson's anticipated testimony is no mystery and certainly not vague. He testified in detail at the *Pilliod* trial where he appropriately offered both his independent opinion testimony and fact testimony regarding the IARC process and his experience as a member of the IARC working group evaluating glyphosate. His fact opinion was also explored in several depositions. The Court in *Pilliod* held that Dr. Jameson's entire causation opinion was admissible. Travers Decl. at Ex. B ("Pilliod Tr.") at 2348:19-2349:6.

Here, the Court has explicitly allowed Dr. Jameson's "opinions regarding glyphosate's ability to cause cancer in animals." *In re Roundup Products Liability Litigation* (N.D. Cal. 2018)

---

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. JAMESON**

390 F.Supp.3d 1102, 1152.[1] The Court also held that Dr. Jameson's full hazard assessment of glyphosate "is one that meets Daubert's reliability requirement, but it does not itself allow the plaintiffs to survive summary judgment and, as discussed in Section II, may not be admissible in this case at all,..." *Id.* at 1146–1147. Simply because Dr. Jameson's opinion in and of itself does not satisfy Plaintiff's burden of proof, does not mean that he cannot offer such an opinion. "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id.; Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.* (9th Cir. 2014) 752 F.3d 807, 816; *Whitlock v. Pepsi Americas* (9th Cir. 2013) 527 Fed.Appx. 660, 661 (Although expert's testimony "alone, might not establish causation, his report is not inadmissible on that ground."). To the extent, his independent opinions on epidemiology and mechanistic studies are deemed not admissible, Plaintiffs will simply refrain from asking Dr. Jameson for his independent expert opinions outside of the animal studies. However, to the extent any of Dr. Jameson's fact witness testimony about the IARC process could be described as expert witness testimony, then that testimony would certainly pass muster under Rule 701.

The Court did find that Dr. Jameson's factual testimony regarding IARC's procedures and the IARC working group 112 were not admissible for phase I of the *Hardeman* trial, PTO 81.[2] The admissibility of Dr. Jameson's testimony for phase II was not brought before the Court. However, the Court did tentatively rule that the testimony of other IARC working group participants, Dr. Aaron Blair and Dr. Matthew Ross, would be admissible in Phase II of the *Hardeman* trial. With respect to Dr. Ross, the Court stated:

> The portions of the deposition testimony designated by both sides are, aside from the background information about Dr. Ross's training and experience, almost exclusively related to IARC's process and analysis. Therefore, his deposition testimony is not admissible during Phase 1. Having reviewed the designations and counter-designations, the Court is tentatively of the view that all of them, or virtually all of them, would be

---

[1] Plaintiffs have again designated Dr. Jameson's opinions on epidemiology and mechanistic data to preserve the issue for appeal. Plaintiffs do not intend to re-litigate the issue and incorporate by reference its prior *Daubert* briefing.

[2] Plaintiffs likewise disagree with the Court's ruling in PTO 81 and preserve its objection for appeal by incorporating by reference its Plaintiffs' Opposition to Monsanto's Motion in Limine No. 1 to Exclude Evidence and Testimony Regarding IARC's Classification of Glyphosate.

admissible in Phase 2, but the Court will await a new submission

PTO 88.  With respect to Dr. Blair the Court stated:

> The plaintiff has disclosed Dr. Aaron Blair, who was chair of the IARC working group on glyphosate, as a fact witness who would testify by deposition about IARC's conclusion that glyphosate is a probable carcinogen. As the Court has ruled, testimony about IARC's process or analysis is not admissible at Phase 1, subject to the very limited exceptions that have been previously described. The deposition testimony designated by the plaintiff from Dr. Blair goes almost exclusively to IARC's process and analysis (or to Dr. Blair's education, experience, and credentials). This testimony is therefore inadmissible at Phase 1. However, as previously ruled, the plaintiff may elicit brief testimony from Dr. Weisenburger about who Dr. Blair is. **Significant portions of Dr. Blair's testimony appear admissible during Phase 2**

PTO 95.  In fact, during the *Johnson v. Monsanto* trial it was Monsanto that chose to play the videotaped testimony of Dr. Ross and Dr. Blair at trial. Travers Decl. at Exhibit C.  There is no legitimate basis for distinguishing the admissibility of Dr. Ross and Dr. Blair's IARC testimony from the admissibility of Dr. Jameson's IARC testimony.

During the *Pilliod* trial, Plaintiffs were not required to strictly delineate Dr. Jameson's testimony into a factual testimony section and an opinion testimony section because the *Pilliod* trial was not bifurcated.  However, it is not difficult to read through the transcript to determine what constitutes fact witness testimony and what constitutes expert witness testimony.  Pages 2116-2150 of the Pilliod transcript consists of primarily fact witness testimony.  Dr. Jameson's time at IARC was primarily focused in the animal carcinogenicity group, so his fact witness testimony addressing epidemiology and mechanistic studies would necessarily be limited.  Dr. Jameson may testify what the IARC preamble says about epidemiology generally because it was necessary for him to know that information to vote on the general classification of glyphosate.  Dr. Jameson may also testify what the epidemiology subgroup members reported to the entire working group during the plenary session because that formed the basis of Dr. Jameson's vote to classify IARC as a probable human carcinogen.  *See e.g.* Pilliod Tr. at 2149:19-2150:23 (discussing events at plenary meeting he attended where he relays the epidemiologists' statements about the evidence which convinced the group to classify glyphosate as a group 2A carcinogen rather than a group 1 carcinogen).  This testimony is easily distinguishable from where Dr. Jameson offers his own independent opinion about the epidemiology.  *Id.* at 2150:25-2151:18.  Nonetheless, Monsanto

fails to identify any objectionable testimony from the Pilliod trial.

     For the aforementioned reasons, Monsanto's motion should be denied.

Dated:  December 10, 2019

                      Respectfully submitted,

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003

/s/ Aimee Wagstaff
Aimee Wagstaff
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 West Alaska Drive
Lakewood, CO 80226

/s/ Mike Miller
Michael Miller
mmiller@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960
*Co-Lead Counsel for Plaintiffs
in MDL No. 274*

---

**PLAINTIFFS'RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. JAMESON**
5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jeffrey Travers

---

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. JAMESON**
6