# EXHIBIT 15

```
 1   had a deposition from Workers' Comp to examine.
 2   So I didn't find it necessary.  There was more
 3   than sufficient information there.
 4  BY MR. DHINDSA:
 5       Q   Do you have any plans to meet with
 6   Mr. Johnson before trial?
 7       A   I would like to meet him.  I would like --
 8   even if it's nothing more than just to say hello, I
 9   would like to meet him.  I have no plan at this
10   point, no, but it's possible.
11       Q   Now, another thing you normally do is
12   review all of the available evidence in the
13   peer-reviewed literature, right, that's relevant to
14   your opinion?
15       A   Yes, and I have an exhaustive box of it
16   sitting with me and I reference probably 100 studies
17   in my report.
18       Q   It's your normal methodology in these sorts
19   of cases to review epidemiological evidence; is that
20   right?
21       A   Yes.  And I, again, will have to read to
22   you from my report what I did regarding deferring to
23   epidemiology experts.  We've been through this
24   several times now.  If you'd like me to go through
25   that exercise again, I'll do it.
                                              Page 358
```

```
 1  experts that we have.  I am not an
 2  epidemiologist.  I've taught a section of the
 3  course in medical school.  I've been trained in
 4  epidemiology.  I use it every day in my
 5  practice, but I am not specifically an
 6  epidemiologist.
 7  BY MR. DHINDSA:
 8       Q   Okay.  As I understand, while you have
 9   reviewed some of the epidemiological studies, you
10   defer to Drs. Portier, Neugut and Ritz on their
11   interpretations of the relevant epidemiologic studies
12   regarding glyphosate, right?
13       A   Yes.
14       Q   You're not planning to come into court and
15   discuss epidemiologic studies which you have not
16   analyzed or opined upon in your expert report, right?
17           MR. TRAVERS:  Objection to the form.
18           THE WITNESS:  Well, it's possible.  If upon
19       cross-examination questions are raised, then I
20       will respond.
21  BY MR. DHINDSA:
22       Q   Fair enough.  But you're not planning to
23   affirmatively offer any testimony and discuss
24   individual epidemiologic studies in court which you
25   have not previously addressed, analyzed or opined
                                              Page 360
```

```
 1       Q   All right.  Well, let me make sure I
 2   understand your position on the epidemiology.  Tell
 3   me if I've got this right.
 4           You testified earlier that with regard to
 5   epidemiology, you are relying upon the expert reports
 6   of Drs. Portier, Jamison and Ritz.
 7           MR. TRAVERS:  Objection.
 8           MR. DHINDSA:  Strike that question.
 9  BY MR. DHINDSA:
10       Q   You testified earlier that with regard to
11   the epidemiology, you are relying upon the expert
12   reports of Drs. Portier, Neugut and Ritz because
13   there was a need for a fully qualified
14   epidemiological assessment, right?
15       A   Yes, and that I also would not undertake
16   such a task along with all of the other aspects of
17   this matter that I have undertaken.  It would be
18   overwhelming.
19       Q   Understood.  You did not conduct a fully
20   qualified epidemiological assessment of the body of
21   glyphosate epidemiology studies in part because of
22   the volume of the studies, right?
23           MR. TRAVERS:  Objection to the form.
24           THE WITNESS:  In part primarily due to the
25       fact that it's best handled by the epidemiology
                                              Page 359
```

```
 1  upon in your expert report, right?
 2       A   No.
 3       Q   And you're not planning to tell the jury
 4   what Drs. Portier, Ritz or Neugut would say about any
 5   particular study.  You'll let them do that, right?
 6       A   Yes.
 7       Q   And you're not planning to contradict or
 8   expand upon the epidemiology opinions expressed by
 9   Drs. Portier, Ritz or Neugut, right?
10       A   No, I have no plan to do that.
11       Q   Now, Dr. Sawyer, you agree that Mr. Johnson
12   has a history of smoking, right?
13           MR. TRAVERS:  Objection.  Form.
14           THE WITNESS:  He has a questionable
15       history.  Whether it qualified as a true smoker
16       under the CDC definition of 100 cigarettes or
17       100 cigars in a lifetime is somewhat
18       questionable.  But yeah, he did smoke cigars for
19       a year or two.
20  BY MR. DHINDSA:
21       Q   And you agree that smoking is carcinogenic,
22   right?
23           MR. TRAVERS:  Objection to the form.
24  BY MR. DHINDSA:
25       Q   Smoking tobacco products is carcinogenic,
                                              Page 361
```