David A. Domina
ddomina@dominalaw.com
Domina Law Group, P.C. 2425 South 144th Street
Omaha, NE 68144-3267
Telephone: 402 493 41200
Facsimile: 4023 493 9782

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

*Attorney for Plaintiff Robert Dickey*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to:<br><br>Dickey v. Monsanto Co., et al.,<br>3:19-cv-04102-VC | **PLAINTIFF ROBERT L. DICKEY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................5

    I.      NEBRASKA'S DISCOVERY RULE SHOULD BE EXTENDED TO DISCOVERY OF THE CAUSE OF INJURY .......................................................5

    II.     MONSANTO IS EQUITABLY ESTOPPED FROM RAISING A STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE .......................................................8

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Albano v. Shea Homes, LTD, P'Ship*
   634 F.3d 524 (9th Cir 2011) ................................................................................................. 1

Andres v. McNeil Co, Inc.
   707 N.W.2d 777 (Neb. 2005) ......................................................................................... 11, 12

*Chafin v. Wisconsin Province of Society of Jesus*
   917 N.W.2d 821 (Neb. 2018) ...................................................................................... 1, 9, 10, 11

*Condon v. A. H. Robins Co., Inc.*
   217 Neb. 60, 349 N.W.2d 622 (1984) ................................................................................ 6, 7

*Hansen v. A.H. Robins, Inc.*
   335 N.W.2d 578 (1983) ...................................................................................................... 6, 7

Muller v. Thaut
   430 N.W.2d 884 (Neb. 1988) ............................................................................................... 11

*Orr v. Bank of America, NT & SA*
   285 F.3d 764 (9th Cir. 2002) .................................................................................................. 8

*Payan v. Aramark Mgmt. Servs. Ltd. P'ship*
   495 F.3d 1119 (9th Cir. 2007) ................................................................................................ 8

Rucker v. Ward
   267 N.W. 191 (Neb. 1936) ................................................................................................... 12

Schendt v. Dewy
   568 N.W.2d 210 (Neb. 1997) ............................................................................................... 12

*Ward v. City of All.*
   417 N.W.2d 327 (Neb. 1988) ................................................................................................. 6

*Weyh v. Gottsch*
   929 N.W.2d 40 (Neb. 2019) ................................................................................................... 8

**Statutes**

*Neb. Rev. Stat.* Ch. 25-207(3) ................................................................................................ 10

*Neb. Rev. Stat.* Ch. 25-221 ...................................................................................................... 8

**Other Authorities**

51 Am. Jur. 2d Limitations of Actions § 147 (1970) ................................................................ 11

# INTRODUCTION

Plaintiff Robert Dickey respectfully contends that Nebraska's Statute of Limitations does not preclude his claims against the Monsanto Company ("Monsanto") for causing his non-Hodgkin's Lymphoma ("NHL"). Nebraska's Supreme Court held in a controlling 2018 decision that a defendant's concealment of facts of a link between the asserted injury and an act, omission or product characteristic tolls the statute of limitations. *See Chafin v. Wisconsin Province of Society of Jesus*, 917 N.W.2d 821 (Neb. 2018). Mr. Dickey's Complaint, filed in 2016, asserts particular facts regarding Monsanto's decades-long campaign to omit warnings and conceal facts relating to Roundup's carcinogenicity. "A Federal Court sitting diversity applies the substantive law of the state, including state's statute of limitations [including tolling rules]." *Albano v. Shea Homes, LTD, P'Ship,* 634 F.3d 524, 530 (9th Cir 2011). Accordingly, the mandate of the Nebraska Supreme Court on the issue of the applicable Nebraska statute of limitations is controlling here. As such, Monsanto's Motion for Summary Judgment based on Nebraska's statute of limitations should be denied.

In 1976, Monsanto introduced Robert Dickey to Roundup® and he started to use it shortly thereafter. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Trusting the representations of Monsanto as to the safety of its products, Mr. Dickey continued to use Roundup® until he stopped farming in 2003; after that time, he used it only occasionally for non-farming purposes. Exhibit 1, Dickey Dep. Tr. 109:4-111:22. Mr. Dickey was diagnosed with NHL ▮▮▮▮▮▮▮▮▮▮▮. Although Mr. Dickey suspected Roundup® may have been the cause of his illness, he had no way of confirming his suspicion at the time of his diagnosis. ▮▮▮▮▮▮▮

███████████ Mr. Dickey testified that it was not until 2016, after WHO'S International Agency on Cancer ("IARC") assessed glyphosate that he began to believe that Roundup exposure caused his NHL. *Id*. 225:14 - 228:5. 6.

Monsanto's conduct generates additional issues of fact concerning the statute of limitations defense that can only be resolved at trial. They are not amenable to summary judgment resolution as these facts are material and disputed.

Monsanto, to this day, adamantly denies any connection between Roundup® and NHL. Exhibit 2, *Domina* Answer ¶¶ 89-103. It also affirmatively concealed material facts from Mr. Dickey and the public that prevented discovery of the Roundup connection before the IARC issued its Monograph on glyphosate in 2015. Mr. Dickey filed suit within a year of IARC's assessment of glyphosate.

Monsanto actively suppressed the results of studies that showed that Roundup was a carcinogen; it also concealed that it never tested the formulated product and that consultants it hired, including Dr. Parry, told Monsanto that there was evidence that glyphosate and Roundup were genotoxic thereby requiring further testing. *See, e.g*., Email from Donna Farmer, Exhibit 3.

Monsanto had the means to know, or actually knew, that the EPA found a statistically significant increase in lymphocytic hyperplasia and interstitial tumors in a 1982 study of rats exposed to glyphosate. Monsanto said nothing to its customers or the public and it conducted no

-2-
PLAINTIFF ROBERT L. DICKEY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
MDL No. 2741

inquiries of its own.[1]  By 1982, Mr. Dickey had used Roundup® for 6 years. Unwarned, he would continue to use it even after he was diagnosed with NHL ■■■.

Nearly a decade before Mr. Dickey's ■■■ diagnosis, Monsanto had an internal plan in place to network its people worldwide to encourage "people to get up and shout Glyphosate is Non-toxic". 5/26/99 William F. Heydens of Roundup email with the Monsanto's internal group planning for a May 6, 1999 "Global Scientific Outreach Council" meeting, Exhibit 4.

While Mr. Dickey and others continued to dutifully buy and apply Roundup® in massive quantities on hundreds of acres of soybeans and corn, Monsanto learned more about its carcinogenic effects but said nothing to consumers of the dangers of its Roundup products.  By 1999, Dr. James Parry's report detailing his scientific findings of cancer risks associated with glyphosate was in Monsanto's hands. Two years later, in 2001, another alarming study reached Monsanto.  Helen H. McDuffie et al., Non-Hodgkin's Lymphoma and Specific Pesticide Exposures in Men: Cross-Canada Study of Pesticides and Health, 10 Cancer Epidemiology, Biomarkers & Prevention 1155 (2001), Exhibit 5.  Monsanto's sales were booming. The company continued to sell its products and failed to disclose to its customers and the public, there were no label changes or warnings in its marketing materials or advertisements, and Monsanto conducted no research of its own to determine Roundup's safety that it shared with the public.

In 2001, Monsanto was "working behind the scenes to" eliminate references on California EPA website that drew a causal link between glyphosate and cancer.  4/2/01 Donna R. Farmer (Monsanto's Chief internal Toxicologist and head of its internal Product Safety Center) Email to

---

[1] *See* EPA, Office of Pesticide and Toxic Substances, "Summary of the IBT Review Program Office of Pesticide Programs (July 1983) February 18, 1982 EPA memo re: Lifetime feeding study in rats with glyphosate, *available at*

-3-

Janice M. Armstrong (of Monsanto), Exhibit 6. Within weeks before Mr. Dickey's ▮▮▮▮ diagnosis, Ms. Farmer became aware of peer review approval for publication of a Croatian scientific paper on the clastogenic effects of glyphosate in bone marrow cells of Swiss mice. The paper was the work of scientists of the Indian Institute of Technology. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MONGLY02406368, Exhibit 7.  But Monsanto suppressed knowledge of it.  Monsanto also continued its plans to avoid research projects that might produce results it did not want to hear, and to attack adverse findings by others.

Ms. Farmer's assiduous efforts for Monsanto for the year 2004 are chronicled in her "2004 Product Safety Center – Toxicology Goals" Doc# 2559-24, pgs 1-8 (ex 23) filed 1/25/19, Exhibit 8. Ms. Farmer was one of many Monsanto executives defending, but not researching, Roundup® or its hazards.

Monsanto was actively ghost-writing papers presented as the work of "independent scientists" to journals with publication requests for at least two years prior to January 2013. It continued to do so even over the protest of one of its own scientists who was an unnamed, unacknowledged co-author. Disclosing the Monsanto insider, David Saltmiras, would have meant the article's authors would be exposed as not "independent".  January 2013, David A. Saltmiras Email exchange with "Redacted," Exhibit 9.  In 2011, Monsanto scientists were also engaged in efforts to rebuff and suppress European scientific papers establishing dermal absorption rate of glyphosate that Monsanto knew would be harmful.  August 2011 Maurice R. De Billot Email to David Saltmiras et al., Exhibit 10.

Mr. Dickey had no way to know or to learn of Monsanto's actions. He only knew that Monsanto persisted in its Roundup® sales and promotions of the product's safety. During that time, Mr. Dickey, as well as neighboring famers, continued to purchase and to use massive

-4-

quantities of Roundup® on their crops.  These facts about corporate malfeasance have resulted in three jury verdicts against Monsanto, all of which found that Monsanto's willful and wanton conduct warranted punitive damages.  This Court affirmed the award of punitive damages in *Hardeman v. Monsanto*, finding that Monsanto's conduct warrants punishment.  *See* PTO No. 160 (holding that the evidence supported a finding of "despicable conduct which [was] carried on by the defendant with a willful and conscious disregard of the rights or safety of others.").  Indeed, this Court found that the evidence of Monsanto's conduct at the *Hardeman* trial "painted the picture of a company focused on attacking or undermining the people who raised concerns, to the exclusion of being an objective arbiter of Roundup's safety. *Id.*

The facts about what Mr. Dickey knew or reasonably should have known are in dispute. The facts about what Monsanto knew, but actively concealed, are disputed. The impact of Monsanto's suppression and concealment of adverse findings by others and Monsanto's own deliberate decisions to refrain from research of its Roundup® products create genuine issues of material fact.  Accordingly, Monsanto is not entitled to summary judgment.

## ARGUMENT

### I. NEBRASKA'S DISCOVERY RULE SHOULD BE EXTENDED TO DISCOVERY OF THE CAUSE OF INJURY

In 1978, Nebraska Legislature passed § 25-224, Actions on Products Liability, which states, "all product liability actions […] shall be commenced within four years after the date on which the death, injury, or damage complained of occurs."[2]  The Supreme Court of Nebraska has interpreted this statute to include a discovery rule.  "[W]e hold that the 4-year statute of limitations

---

[2] Neb. Rev. St. § 25-224(1).

set forth in § 25-224(1) begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage." *Condon v. A. H. Robins Co., Inc.*, 217 Neb. 60, 68, 349 N.W.2d 622, 627 (1984) ("By simply turning to the dictionary and obtaining the plain meaning of 'occur,' one is inclined to adopt a discovery rule for § 25-224(1).").

In setting the discovery rule, the Nebraska Supreme Court stated that "there is often a difference between a physical 'injury' and a legal 'injury' and that the time in which each may take place can be different." *Id*. at 626.  The view of the Nebraska Supreme Court was that the discovery rule turns on the plaintiff's discovery of an injury giving rise to a legal action: "if an individual is wholly unaware that he has in fact suffered injury or damage, it is difficult to see how he can file suit under a legal system which requires a party to allege and prove not only that another has breached a duty owed to the plaintiff but also that such breach has produced injury or damage." *Id*. at 624.  The *Condon* Court cited favorably the Wisconsin Supreme Court decision in *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 559 (1983), quoting:

> In any event the problems caused by the lapse of time must be balanced against the policy in favor of allowing diligent claimants to bring meritorious claims. It is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. Although theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress. Under these circumstances the statute of limitations works to punish victims who are blameless for the delay and to benefit wrongdoers by barring meritorious claims. In short, we conclude that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.

*See Condon*, 349 N.W.2d at 626. Subsequently, in *Ward v. City of All.*, 417 N.W.2d 327, 332 (Neb. 1988), the Nebraska Supreme Court reiterated its prior holding that the statute of

limitations begins to run upon the plaintiff's discovery of an injury, but expanded its holding by declaring:

> The statute of limitations runs when plaintiff (1) knows or should have known of both the injury *and the cause of harm* or (2) has some awareness or imputed awareness that *his injuries were the result of some wrongdoing on the part of the defendant*. This does not mean that plaintiff has to (1) be aware of all the elements of a legal cause of action, (2) be aware of the probability of success in such a lawsuit, or (3) have his knowledge of wrongdoing rise to the level of certainty.

Thus, the Nebraska Supreme Court has long recognized that a plaintiff cannot very well sue before the plaintiff is aware that an injury has occurred. Indeed, in *Condon*, the Court noted that "[m]ost courts which have been asked to answer the specific question presented to us here have adopted a 'discovery rule,' whether for the reasons given by us herein or simply because to hold otherwise would deny a litigant the right to sue before the litigant, even in the exercise of due diligence, could sue." *Condon,* 349 N.W.2d at 626.

The same analysis should apply here to Plaintiff's discovery of the cause of his injury. When Mr. Dickey was first diagnosed with NHL, he was not aware that a legal injury had occurred, and therefore, he did not know whom to sue to redress it. Although he expressed a suspicion in 2008 that Roundup may be related to his illness, at that time, he did not have any substantiated evidence confirming an association between Roundup and NHL. By advancing an argument that the statute of limitations on Mr. Dickey's claim began to run ██████████ ████████████, Monsanto seeks to deny Plaintiff's right to pursue his meritorious claims against Monsanto. Plaintiff submits that this is type of injustice would not be permitted by the *Corden* and *Hansen* Courts. . In any event, this decision cannot be made at the summary judgment stage because there are material issues in dispute. Monsanto's motion asks this Court to render a ruling in direct contravention to Nebraska Supreme Court precedent.

## II.  MONSANTO IS EQUITABLY ESTOPPED FROM RAISING A STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE

In addition, Monsanto is estopped from raising a statute of limitations affirmative defense because factual disputes concerning the accrual of the statute of limitations preclude summary judgment in favor of Monsanto:

> Whether a plaintiff has discovered or should have discovered the cause of her injury is ordinarily a question of fact. However, when "uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim," such a determination can be made as a matter of law.

*Orr v. Bank of America, NT & SA*, 285 F.3d 764, 780 (9th Cir. 2002) (internal quotation marks and citations omitted).  Because the statute of limitations is an affirmative defense, the defendant asserting it bears the burden of proof. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007).  "The point at which a statute of limitations begins to run must be determined from the facts of each case…." *Weyh v. Gottsch*, 929 N.W.2d 40, 51 (Neb. 2019). The question of when the statute of limitations begins to run is an issue of law only when the facts are undisputed. But where they are disputed, as they are here, a trial is required. *Id*. Nebraska's statutes of limitations statutory series, *Neb. Rev. Stat.* Ch 25, Art 2, allows a party to demand that the limitations of actions issue be tried to a jury in a trial separate from the trial on the merits. *Neb. Rev. Stat.* § 25-221:

> In any action in which it is claimed by one or more of the defendants that the action is barred by the statute of limitations any party may move that the issue raised by the statute of limitations be tried separately and determined before any other issues in the case. **Issues of fact raised by the statute of limitations shall be tried before a jury unless trial by jury is waived by all parties.** Issues of law raised by the statute of limitations shall be determined by the court without a jury. If the issue raised by the statute of limitations is determined by the jury or the court in favor of the plaintiff the remaining issues shall then be tried. If the issue raised by the statute of limitations is determined by the jury or the court in favor of the defendant the action or actions barred by the statute of limitations shall be dismissed. (Emphasis added).

-8-

A complaint, which alleges that a defendant has concealed facts that prevented discovery of misconduct or a link between Plaintiff's injury and an act, omission or product characteristic of the Defendant, alleges sufficient facts to toll the statute of limitations. *Chafin v. Wisconsin Province of Society of Jesus,* 301 Neb. 94, 917 N.W.2d 821 (2018). Evidence of factual issues about reasonable discovery and concealment of facts relevant to discovering the existence of a claim are issue generally reserved for the jury.

Here, the IARC's findings were announced in mid-2015. Until that time, Mr. Dickey had no ***knowledge*** whatsoever that Roundup® caused his NHL and he could not have discovered the cause of his illness because Monsanto lured people into believing Roundup was safe and prevented people like Mr. Dickey from learning the truth for decades.  It was not until the IARC publication that Mr. Dickey learned of the fact that Roundup® contained a potential carcinogen that likely caused his NHL.  Upon learning this information, Mr. Dickey acted expeditiously in bringing his lawsuit within a year of the 2015 IARC assessment of glyphosate. Indeed, it was not until IARC (and, in all reality, several years after the IARC assessment as most people did not know about the IARC publication in real time) that truth about Monsanto's decades-long campaign of promoting Roundup's safety and suppressing all contra-indicating scientific evidence was uncovered.

Mr. Dickey's initial complaint, filed on May 11, 2016 in the District Court of Nebraska, alleges that, among other things, the New York Attorney General sued Monsanto based on its false and misleading advertising of Roundup products, which included egregious representations, such as that its spray-on glyphosate-based herbicides, including Roundup®, were "safer than table salt" and "practically nontoxic" to mammals, birds, and fish.  Domina Compl. ¶¶ 39-40. Monsanto resolved that action without trial. *See id.*

Mr. Dickey also affirmatively pled tolling and equitable estoppel in his original Nebraska Complaint alleging that (1) Monsanto is estopped from asserting a statute of limitations defense and (2) Plaintiff "did not discover and did not know of facts that would cause a reasonable person to suspect, the risks associated with the use and/or exposure to Roundup® and glyphosate." *See* Domina Compl. ¶¶104-108. The Nebraska Supreme Court's relevant decision on this issue, *Chafin v. Wisconsin Province of Society of Jesus,* 917 N.W.2d 821 (Neb. 2018), is instructive. In *Chafin*, the issue of equitable estoppel arose decades after an adoption proceeding. The biological mother sued two religious organizations, alleging that immediately after she gave birth, the organizations kidnapped her infant son, placed him for adoption, and then fraudulently concealed his adoption[3] for over 40 years until she was reunited with her son in 2015. Although she sued more than forty years after the child's birth in 1969, the mother argued that the concealment of the adoption tolled the statute of limitations. The defendants asserted the affirmative defense of the four-year statute of limitations found at *Neb. Rev. Stat.* § 25-207(3). Ultimately, the Nebraska Supreme Court reversed the trial court's dismissal of the action, holding that:

> An action for fraud does not accrue until there has been a discovery of the facts constituting the fraud, or facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery. Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court.

*Chafin v. Wisconsin Province of Society of Jesus,* 917 N.W.2d at 824. The *Chafin* Court reasoned:

> Chafin asserts that ***fraudulent concealment tolls the statute of limitations***. If the complaint on its face shows that the cause of action is time barred, the plaintiff must allege

---

[3] Among the plaintiff's allegations were facts alleging that she was forced to sign a contract for room and board in residence for young unmarried pregnant women but that the ultimate objective of the ruse was to take her child so it could be placed with a couple. Plaintiff also claimed that while she tried to escape from the church, she went into labor, delivered the baby, and it was taken from her.

facts to avoid the bar of the statute of limitations and, at trial, has the burden to prove those facts. In order to successfully assert the doctrine of fraudulent concealment and thus estop the defendant from claiming a statute of limitations defense, the plaintiff must show the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the misconduct. Under the doctrine of fraudulent concealment, the plaintiff must show that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired.

*Id.* at 824–25.

Mr. Dickey's complaint affirmatively asserts the steps Monsanto took to conceal the truth about Roundup®. The Complaint alleges, and Mr. Dickey's testimony reveals, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he did not possess the scientific evidence or wherewithal to discover the causal connection between glyphosate and NHL at that time. It was not until much later—and in his case shortly after the IARC Monograph on glyphosate in 2015—that Mr. Dickey had access to the full spectrum of facts and scientific understanding of the connection between glyphosate-based herbicides and NHL.  Indeed, Mr. Dickey testified that it was in 2016 that he began to believe that Roundup® caused his NHL. Ex. 1, Dickey Depo Tr. 225:14-23.

Nebraska's jurisprudence has long recognized that inequitable conduct will toll the statute of limitations. "The general rule supported by the decisions in most jurisdictions is that the fraudulent concealment of a cause of action from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action." *Andres v. McNeil Co, Inc.*, 707 N.W.2d 777, 786-787 (Neb. 2005) (quoting *Muller v. Thaut*, 430 N.W.2d 884, 892 (Neb. 1988) (quoting with approval 51 Am. Jur. 2d <u>Limitations of Actions</u> § 147 (1970)).   The *Andres* Court held: "[I]n order to successfully assert the doctrine of fraudulent concealment and thus estopped the

defendant from claiming a statute of limitations defense, the Plaintiff must show "the defendant has, either by deception or by a violation of a duty, concealed from the Plaintiff material facts which prevent the Plaintiff from discovery [misconduct]" *Andres,* 707 N.W.2d 787, quoting *Schendt v. Dewy*, 568 N.W.2d 210, 213 (Neb. 1997). Plaintiff Dickey had readily done so in his Complaint.

A defendant in Nebraska litigation cannot avail itself of the statute of limitations as a defense "when the Defendant wrongfully conceals a material fact necessary to the accrual of cause against him and such concealment causes the opposite party to delay the filing of suit." *Rucker v. Ward*, 267 N.W. 191, 195 (Neb. 1936). To estop the running of the statute of limitations "the concealment must be manifested by an affirmative act or misrepresentation." *Andres v. McNeil,* 707 N.W.2d 787. The Nebraska Court in *Andres* concluded that "fraudulent concealment can apply regardless of the nature of the cause of action." *Id.* Mr. Dickey's Complaint, and the factual discovery in this case, reveal compelling issues of fact for the jury consider regarding Monsanto's affirmative statute of limitations defense.

In this case, the allegations in Mr. Dickey's original Complaint are extensive and specific about how it was nearly impossible for him and the general public to discover the information Monsanto guarded so secretively. Mr. Dickey also could not discover Monsanto's deliberate decisions to refrain from conducting research studies of its own while touting its weed killer as safe for human use and, indeed, safe enough to drink. And since that time, discovery of additional facts that Mr. Dickey could not have discovered in the absence of litigation and the production of thousands of documents that Monsanto has for decades hidden from the public, reveal a systematic effort by Monsanto "tamp[] down safety inquiries and manipulate[] public opinion" of Roundup. PTO No. 160.

As the statute of limitations issue here raises contestable issues of fact requiring jury trial, Monsanto is not entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Court should deny Monsanto's motion for summary judgment.

Dated: December 10, 2019

   /s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Telephone:	(212) 558-5500
Facsimile:	(212) 344-5461

David A. Domina
ddomina@dominalaw.com
Domina Law Group, P.C.2425 South 144th Street
Omaha, NE 68144-3267
Telephone:  402 493 41200
Facsimile: 4023 493 9782

PLAINTIFF ROBERT L. DICKEY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
MDL No. 2741

**Certificate of Service**

I certify that on December 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all appearing parties of record.

    /s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Telephone:     (212) 558-5500
Facsimile:     (212) 344-5461

PLAINTIFF ROBERT L. DICKEY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
MDL No. 2741