David A. Domina
ddomina@dominalaw.com
Domina Law Group, P.C.2425 South 144th Street
Omaha, NE 68144-3267
Telephone:  402 493 41200
Facsimile: 4023 493 9782

Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Telephone: (212) 558-5500
Facsimile:  (212) 344-5461

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to:<br>*Dickey v. Monsanto Co.*, 3:19-cv-04102-VC<br>*Domina v. Monsanto Co.*, 3:16-cv-05887-VC<br>*Janzen v. Monsanto Co.*, 3:19-cv-04103-VC<br>*Pollard v. Monsanto Co.*, 3:19-cv-04100-VC | **PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS**<br><br>Hearing date: January 29, 2020 |

## INTRODUCTION

The Nebraska Wave 1 Plaintiffs are four residents of Nebraska who allege that their years-long use of Defendant Monsanto Company's Roundup herbicide caused them to develop Non-

Hodgkin Lymphoma (NHL).  Plaintiffs initially filed their lawsuit in the District Court of Nebraska on May 11, 2016, in the case styled as *Domina et al. v. Monsanto Company*,[1] stating claims for design defect, failure to warn, negligence, breach of express warranty, and breach of implied warranty.  The *Domina* case was subsequently transferred to this MDL for pretrial proceedings.

All four of the Nebraska Plaintiffs used Roundup for decades, and all four Nebraska Plaintiffs developed NHL as a result of their Roundup exposure. None of the Plaintiffs were aware, prior to use, that Roundup and/or glyphosate had the propensity to cause cancer. Plaintiff Larry Domina was exposed to Roundup from 1975 to present ████████████████████ (*see* Exhibit 1, Domina Dep. Tr.  85:15-20, 159:10-14); Plaintiff Robert Dickey was exposed to Roundup from 1975 to present █████████████████ (*see* Exhibit 2, Dickey Dep. Tr. 29:20-30:1, 116:10-12, 233:14-21); Plaintiff Royce Janzen was exposed to Roundup from 1984 through 2014 (with some exposure after 2014) ███████████████ (*see* Exhibit 3, Janzen Dep. Tr. 135:8-13, 156:4-23); and Plaintiff Frank Pollard used Roundup from 1990 to 2017 ██████████████ (*see* Exhibit 4, Pollard Dep. Tr. 18:10-14, 46:17-18).  To support their causation argument, Plaintiffs proffered the expert testimony of Drs. Kevin T. Palka, Brent C. Staggs, William R. Sawyer, and Mr. Stephen Petty. These experts reviewed Plaintiffs' medical records and deposition testimonies and concluded to a reasonable degree of medical certainty that Plaintiffs' individual exposures to Roundup caused their illnesses.

---

[1] Unless otherwise indicated, all "Compl." references are to Complaint and Jury Demand of Plaintiffs Larry E. Domina, Frank Pollard, Robert L. Dickey, and Royce D. Janzen, filed May 11, 2016 in the United States District Court, District of Nebraska, Case No. 3:16-cv-05887-VC, appended as Exhibit 1 to the Declaration of Brian L. Stekloff in Support of Monsanto Company's Motion for Summary Judgment Re: Nebraska Wave 1 Plaintiffs on Nebraska Law Grounds.

Monsanto now moves to dismiss Plaintiffs' claims raising several arguments under Nebraska law. Fundamentally, however, Monsanto has not—and cannot—meet its summary judgment burden on Plaintiffs' overarching claims that Monsanto failed to warn—and still refuses to provide warnings—in the face of convincing scientific evidence that Roundup exposure can cause NHL. Nor can Monsanto dispute Plaintiffs' general and scientific causation evidence. For the reasons stated in Plaintiffs oppositions to Monsanto's motions to Drs. Kevin T. Palka, Brent C. Staggs, William R. Sawyer, and Mr. Stephen Petty which are fully incorporated herein, Plaintiffs have proffered sufficient expert testimony to establish general and specific causation. Monsanto cannot meet its summary judgment burden and, accordingly, the Court should deny its motion.[2]

## ARGUMENT

### I.   MONSANTO HAD A DUTY TO WARN PLAINTIFFS OF THE CANCER RISKS ASSOCIATED WITH ROUNDUP

Nebraska law imposes liability on manufacturers for "'for failing either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells.'" *Freeman v. Hoffman–La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827, 841 (2000) (quoting *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987)). "A manufacturer's duty to produce a safe product, with appropriate warnings and instructions when necessary, is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others. *Id.* at 841. *See also Erickson v. U-Haul Intern., Inc.*, 738 N.W.2d 453, 460 (Neb. 2007) (noting Nebraska courts follow and apply the Restatement 2d of Torts, which recognizes a manufacturer's "common-law duty to warn expected users that a chattel may be dangerous.");

---

[2] Plaintiffs agree that they will not seek attorneys' fees at trial. MSJ at 11-12.

*Meisner v. Patton Elec. Co., Inc.*, 781 F. Supp. 1432, 1440 (D. Neb. 1990) (absence of warning on heater regarding use with extension cords "create[d] a risk of harm beyond that which would be contemplated by the ordinary foreseeable user"). The Nebraska Plaintiffs allege—and an extensive factual record supports—that Monsanto breached (and continues to breach) its duty to warn of Roundup's cancer risks by, inter alia, promoting Roundup as safe to use, selling Roundup products without appropriate warning labels, and by detracting from and attacking all contradicting science and regulatory reviews.

The Court may swiftly reject Monsanto's argument that it had no duty to warn of Roundup's dangers prior to Plaintiffs' exposures because Roundup®'s cancer risk was not known or knowable to Monsanto based on prevailing scientific or medical evidence at the time.[3] Indeed. Roundup®'s cancer risk was first knowable to Monsanto in the 1980s. EPA initially determined that glyphosate was a possible carcinogen on March 4, 1985.[4] Prior to that, in 1982, an EPA review of a glyphosate rat study found a statistically significant increase in lymphocytic hyperplasia and interstitial testicular tumors.[5] By 1999, Monsanto possessed a report from Dr. James Parry indicating risks associated with glyphosate. Finally, Monsanto cannot seek to benefit

---

[3] Monsanto refers to the EPA's recent August 7, 2019 letter (MSJ at 11) but the EPA's letter does not support Monsanto's argument that it has no duty to warn of Roundup's carcinogenic properties or that current science does not support an association between Roundup/glyphosate and NHL. First, the EPA's letter concerns only the particularized Proposition 65 warning language, which is not at issue in *Domina*. Moreover, the August 7, 2019 letter from concerns solely "product labels where the only basis for the warning is glyphosate" and thus is without relevance to the present case.  It is clear from Plaintiffs' allegations that glyphosate alone is not the only basis of their failure to warn claims. *See, e.g.*, *Domina* Compl. ¶¶ 53-57 (alleging toxicity of other ingredients, adjuvants, and surfactants in the Roundup formulation).

[4] *See* EPA, Office of Pesticide and Toxic Substances, Memo "Consensus Review of Glyphosate," dated Mar. 4, 1985. *Available at:*
https://archive.epa.gov/pesticides/chemicalsearch/chemical/foia/web/pdf/103601/103601-171.pdf

[5] *See* EPA, Office of Pesticide and Toxic Substances, "Summary of the IBT Review Program Office of Pesticide Programs (July 1983) February 18, 1982 EPA memo re: Lifetime feeding study in rats with glyphosate, *available at*

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in this litigation from its steadfast refusal to conduct studies of its formulated product that would have informed it of the full panoply of risks associated with Roundup exposure. Instead, upon receiving Dr. Parry's report, Monsanto declined to perform any of the studies Dr. Parry recommended. In short, the general causation evidence, with which the Court is already intimately familiar and which need not be restated here, evinces that Monsanto knew or should have known of the risks decades ago—especially when viewed in a light most favorable to Plaintiffs. Monsanto's knowledge of the risks of Roundup use predates all of the Plaintiffs' diagnosis dates and most, if not all, of their Roundup exposure.

Finally, Monsanto suggests that it may raise a 'state of the art' defense to Plaintiffs' failure to warn claims (MSJ at 10), but this is no bar to Plaintiffs' claims. "While the jury may consider, as evidence of the state of the art, the fact that no manufacturer is doing that which is claimed could be done, such evidence will not establish conclusively that state of the art. Obviously, the inaction of all the manufacturers in an area should not be the standard by which the state of the art should be determined.'" *Meisner*, 781 F. Supp. at 1443 (defendant failed to meet its burden of showing that lack of warning conformed with the generally recognized and prevailing state of the art).

Thus, Monsanto cannot establish that it is entitled to summary judgment on Plaintiffs' failure to warn claims.[6]

_____

[6] Monsanto argues that Plaintiffs' design defect claims are, in substance, failure to warn claims. Plaintiffs disagree. But it is axiomatic in Nebraska that a manufacturer has a duty to "adequately warn about a risk or hazard inherent in the way a product is ***designed*** that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 253 (Neb. 2003). Here, Plaintiffs allege that Monsanto failed to exercise reasonable care in designing and testing its Roundup formulation and then subsequently also failed to warn users of the potential dangers associated with its products. These are distinct types of conduct that together establish the existence of a legal duty on

## II.   PLAINTIFFS HAVE PRESENTED SUFFICIENT EXPERT TESTIMONY REGARDING CAUSATION

To support their claims that their use of and exposure to Roundup caused their NHL diagnoses, Plaintiffs have presented the expert testimony of Drs. Staggs, Palka, Sawyer, and Mr. Petty.  Some of these experts reviewed the complete medical records of each Plaintiff; they all reviewed the relevant scientific literature surrounding glyphosate-based herbicides. They all considered the many thousands of hours of exposure each of these Plaintiffs had to Roundup. Taken together, the experts concluded that each Nebraska Plaintiff's Roundup exposure was a substantial contributing factor to each Plaintiff's NHL diagnosis. Plaintiffs herein incorporate by reference the expert reports and deposition testimonies of Drs. Palka, Staggs, Sawyer, and Mr. Petty, and Plaintiffs' concurrently filed oppositions to Monsanto's motions to exclude the testimony of Drs. Palka, Staggs, Sawyer, and Mr. Petty. There is no basis to exclude Plaintiffs' specific causation experts' opinions or to grant summary judgment in Monsanto's favor on the issue of causation.

## III.   THE EXISTENCE AND SCOPE OF AN EXPRESS WARRANTY  IS A FACTUAL QUESTION FOR THE JURY

In Nebraska, "[e]xpress warranty is grounded in terms of an express promise made as part of a pending purchase."  *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 844 (Neb. 2000). Thus, "the seller must make an affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id.*; *see also* 21 Neb. U.C.C. § 2–313. The

---

Monsanto's part, the breach thereof, and the resulting injury to Plaintiffs. Accordingly, Plaintiffs do not agree that their design defect claims are simply duplicative of their failure to warn claims.

existence of an express warranty in a particular case "depends upon the particular circumstances in which the language is used and read." *Peterson v. N. Am. Plant Breeders*, 354 N.W.2d 625, 630 (Neb. 1984) (internal quotation marks and citations omitted). Accordingly, "[a] catalog description or advertisement may create an express warranty in appropriate circumstances." *Id.*  Monsanto argues that Plaintiffs' express warranty claims fail as Plaintiffs solely rely on Monsanto's omissions and not on any affirmative statements of fact.  Indeed, Plaintiffs have identified numerous affirmative statements of Roundup's safety that formed the basis of Monsanto's marketing and advertising of its products for decades. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ As early as 1996, the New York State Attorney General's Office sued Monsanto for its false affirmative advertising statements about the product's safety. *Domina* Compl. ¶¶ 39-40. There are numerous additional examples of affirmative statements of Roundup's safety that Monsanto made to these Plaintiffs.  Ultimately, the existence and scope of an express warranty is a factual question for the jury.  *See Peterson*, 354 N.W.2d at 630; *see also Hillcrest Country Club v. N.D. Judds Co.*, 461 N.W.2d 55, 61 (Neb. 1990).  A reasonable jury could conclude that Monsanto's affirmative position on Roundup's safety, which it maintains to this day even in the face of overwhelming scientific evidence to the contrary, constitutes an express warranty. Accordingly, this question is inappropriate for resolution at the summary judgment stage.

## IV.   PLAINTIFFS MAY ASSERT IMPLIED WARRANTY CLAIMS IN THE ALTERNATIVE

Plaintiffs agree that Nebraska courts follow the Restatement's merger theory/single theory approach whereby claims for breach of implied warranty of merchantability merge with strict liability claims based on design defect and/or failure to warn.  *See Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 843 (Neb. 2000) ("The Third Restatement adopts the position that the definition of "defect" is the important issue and should remain the same regardless of the doctrinal tort category under which it is brought.").  Accordingly, Plaintiffs agree that, here, their claims for breach of implied warranty of merchantability may be submitted to the jury as part of their failure to warn claims. However, Plaintiffs maintain that they are entitled to assert implied warranty claims in the alternative.[7]

## V.   PUNITIVE DAMAGES

Monsanto argues that Plaintiffs are not entitled to punitive damages based on Nebraska's bar on punitive damages.  MSJ at 4-5. Plaintiffs do not contest that Nebraska law does not permit punitive damages. However, this case raises complicated choice of law issues and contrary to Monsanto's assertion that Nebraska law unquestionably applies to their claims (MSJ at 5), Plaintiffs should have the right to ask the Nebraska trial court to apply Missouri punitive damages law as nearly all of the conduct that gives rise to punitive damages occurred in Missouri, and it is possible that a Nebraska trial court could conclude that Missouri has a greater interest in applying

---

[7] Nonetheless, Courts have permitted implied warranty claims to go to a jury where a parallel strict liability claim was dismissed. In *Sherman v. Sunsong Am., Inc.*, 485 F. Supp. 2d 1070 (D. Neb. 2007), where the Court dismissed the plaintiff's strict liability claim, the plaintiffs were permitted to proceed on their breach of implied warranty.  *See id.* at 1087 ("because the strict liability claim will be dismissed as to Winco and Shiu Fung, there is no reason to apply the merger doctrine."). Plaintiffs should be entitled to assert their claims for breach of implied warranty in the alternative if the Court should dismiss their strict liability claims.

its punitive damages law than Nebraska in applying its ban. *See, e.g., Fanselow v. Rice*, 213 F. Supp. 2d 1077, 1086 (D. Neb. 2002) (applying the laws of Minnesota and Oregon where states of defendant's residence had greater interest in deterring future conduct than Nebraska in having its ban applied against non-resident defendants); *cf. O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 460 (Neb. 2017) (examining Restatement factors and choice of law analysis on punitive damages).[8]

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully submit that the Court should deny Monsanto's motion for summary judgment against the Nebraska Wave 1 Plaintiffs under Nebraska law.

Dated:  December 10, 2019

Respectfully submitted,

/s/ Robin Greenwald
Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003

David A. Domina
ddomina@dominalaw.com
Domina Law Group, P.C.2425 South 144th Street
Omaha, NE 68144-3267
Telephone:  402 493 41200
Facsimile: 4023 493 9782

---

[8] Although the *O'Brien* court ultimately upheld the application of Nebraska law to the issue of punitive damages, the court noted that the plaintiff had presented no rationale for the application of Kansas law beyond a statement that Kansas law should apply because defendant was headquartered there and its culpable conduct occurred there. *See id*. at 142. Here, Plaintiffs are fully prepared to analyze the relevant choice of law contacts under Section 145 of the Restatement (Second) of Conflict of Laws.

---

**Certificate of Service**

I certify that on December 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all appearing parties of record.

         /s/ Robin Greenwald
        Robin Greenwald
        rgreenwald@weitzlux.com
        Weitz & Luxenberg
        700 Broadway
        New York, NY  10003
        Telephone:    (212) 558-5500
        Facsimile:    (212) 344-5461