Robin Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No. 3:16-md-02741-VC<br><br>MDL No. 2741 |
| This document relates to:<br><br>*Dickey v. Monsanto Co.*, 3:19-cv-04102<br>*Domina v. Monsanto Co.*, 3:16-cv-05887<br>*Janzen v. Monsanto Co.*, 3:19-cv-04103<br>*Pollard v. Monsanto Co.*, 3:19-cv-04100<br>*Sanders v. Monsanto Co.*, 3:16-cv-05752<br>*Tanner v. Monsanto Co.*, 3:19-cv-04099 | **PLAINTIFFS' RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE CHARALAMBOS ANDREADIS, CLAYTON SMITH, EDWIN ALYEA, BARRY BOYD, LAUREN PINTER-BROWN, RON SCHIFF, AND BRENT STAGGS IN WAVE ONE CASES ON DAUBERT GROUNDS** |

## I. <u>Introduction</u>

Plaintiffs incorporate herein their general opposition to Monsanto's Motion to Exclude Testimony of Specific Caution Experts Charalambos Andreadis, Clayton Smith, Edwin Alyea, Barry Boyd, Lauren Pinter-Smith. Ron Schiff, and Brent Staggs in Wave One Cases on *Daubert* Grounds, Doc. 8012 ("Mon. Motion").

## II. Qualifications

Dr. Brent Staggs is a highly qualified and experienced board-certified hematologist and pathologist. He serves as a lecturer on various areas of pathology at the University of Arkansas, College of Medicine. Dr. Staggs is a partner and serves as a pathologist at Pathology Laboratories of Arkansas, P.A. He has reviewed hundreds, if not thousands, of cases of NHL, both in his clinical practice and in the setting of medical legal consultation. *See, e.g.*, Staggs Expert Report for Plaintiff Domina, dated Oct. 8, 2019[1] (hereinafter "Staggs Report") (Ex. 1) at 1; Declaration of Brian Stekloff in Support of Monsanto's Motion to Exclude Testimony of Specific Causation Experts in Wave One Cases on *Daubert* Grounds (hereinafter "Stekloff Decl."), Ex. 42 (Domina Dep.)[2] at 22:3-11. Furthermore, Dr. Staggs typically sees more than one case of NHL per day; he determines causation every day in his practice. *Id.* at 22:3-6, 29:10-11; Stekloff Decl., Ex. 9 (Sanders Dep.) at 37:2-5. Dr. Staggs has testified extensively in toxic exposure litigations, and courts have routinely accepted and relied on his testimony.

## III. Methodology

Dr. Staggs formed his opinions based upon his education, training, experience, knowledge, and expertise, as well as relevant literature and widely accepted medical and scientific principles, applying the Bradford Hill causation analysis. Staggs Report, Ex. 1 at 2. For each Plaintiff, he reviewed hundreds of pages of medical records, including pathology and imaging reports and read Plaintiffs' deposition testimony. He also conducted a comprehensive telephone interview with each Plaintiff regarding his particular Roundup® exposure, other pesticide exposure, family history, prior medical history, and potential risk factors for NHL. He evaluated those facts and medical information to compare each individual Plaintiff's Roundup® exposure and circumstances to the cases discussed in the epidemiological literature. *See, e.g.*, Stekloff Decl., Ex. 10 (Sanders Dep.) at 61:18-63:5. In each deposition, Dr. Staggs further elaborated on his detail-intensive methodology, and on the third day of deposition questioning he brought a published peer-reviewed article[3] that he uses and frequently cites that details his methodology

---

1 The cited information is the same in all six expert reports submitted by Dr. Staggs.

2 All citations to depositions of Wave 1 Plaintiffs refer to Dr. Staggs' depositions taken in the individual cases of the Plaintiffs, rather than the individual Plaintiff depositions.

3 Michael D. Freeman & Sean S. Kohles, *Assessing Specific Causation of Mesothelioma Following Exposure to Chrysotile Asbestos-Containing Brake Dust*, 4 Int. J. Occup. Environ. Health 329 (2012).

in toxic exposure cases. "It has Bradford Hill, but then it talks about the cumulative exposure model and . . . assessing that based on the relative comparisons of the different exposures an individual has." Stekloff Decl., Ex. 35 (Dickey Dep.) at 8:14-18.

Dr. Staggs' analysis carefully considered each individual Plaintiff's exposure to Roundup® within the context of the epidemiological literature. Substantially eclipsing the exposure of the participants in the epidemiology studies,[4] each of the Nebraska farmer Plaintiffs used GBFs for over 5,000 lifetime hours. Mr. Sanders used GBFs for approximately 8,220 lifetime hours,[5] and Mr. Tanner for approximately 364 lifetime hours[6]. These exposure levels "far exceeded the threshold used in most of the epidemiological literature, and specifically the McDuffie and Eriksson studies." PTO 159, Ex. 4 at 1-2. They demonstrate why Dr. Staggs determined that Roundup® was a substantial contributing factor to each Plaintiff's NHL. Notably, in response, Monsanto fails to cite any case control epidemiological study indicating that Plaintiffs' exposures fall below levels otherwise correlated with an increased risk of NHL following exposure to GBFs.

Dr. Staggs correctly evaluated the relevant medical and scientific literature, including each Plaintiff's salient risk factors, in concluding that each Plaintiff's exposure to Roundup® was a significant contributing factor to his development of NHL. *See* Ex. 1. Arriving at well-reasoned, scientifically supported opinions, Dr. Staggs employed a methodology called differential etiology. Stekloff Decl., Ex. 10 (Sanders Dep.) at 36:22-25. Differential etiology, similar to differential diagnosis, seeks first to diagnose the disease through laboratory testing, then determines potential causes, and finally performs further testing or reviews patient medical history to eliminate alternative causes. *Id.* at 37:2-15. Dr. Staggs described how he performed a literature search of each of the Plaintiff's other chemical exposures on both PubMed's and IARC's websites. *See, e.g., id.* at 78:8-22. He further characterized each Plaintiff's exposures based on proximity, frequency, and regularity. *See, e.g.*, Stekloff Decl., Ex. 42

---

4 For example, in Andreotti (2018), the median exposure to glyphosate-based formulations (GBFs) was only 48 lifetime days of use, or 8.5 years of use. In the NAPP study (pooling De Roos (2003) and McDuffie (2008)), the participants' exposure and use of GBFs was only an average of 5 days per year for 5 years.

5 *See* Dr. Sawyer Expert Report for Plaintiff Sanders (Ex. 2) at 8.

6 *See* Dr. Sawyer Expert Report for Plaintiff Tanner (Ex. 3) at 7.

(Domina Dep.) at 88:17-19. Dr. Staggs also noted that little to no information was available in the medical literature for many of the other pesticides to which Plaintiffs were exposed. Stekloff Decl., Ex. 10 (Sanders Dep.) at 79:5-6.

**IV. <u>Risk Factors</u>**

Monsanto states that Dr. Staggs failed to consider the following risk factors: ███ ███ ███; and idiopathic, *id*. at 19. Monsanto's arguments are baseless and belied by the six depositions Dr. Staggs gave in the Wave 1 cases. Dr. Staggs carefully considered and evaluated the purported "risk factors" for each Plaintiff, including many of those Monsanto identified. He either ruled them out or, where appropriate, acknowledged instances where other risk factors might be relevant. *See generally,* Staggs Report, Ex. 1 at 14*;* Stekloff Decl., Ex. 33 (Tanner Dep.) at 46:13-47:5; Stekloff Decl., Ex. 27 (Janzen Dep.) at 13:12-14:1; Pollard Dep. (Ex. 5) at 13:15-15:6. Equally important in the consideration of risk factors, Dr. Staggs noted is the fact that "the medical literature now indicates that almost all the risk factors for cancers [are] from external carcinogens." Stekloff Decl., Ex. 42 (Domina Dep.) at 33:16-18, 33:4-7. The fact that Dr. Staggs does not agree with Monsanto's list of risk factors is not a basis for exclusion of testimony; if it disagrees with his assessment of the literature Monsanto can cross examine him at trial.

Dr. Staggs' weighted consideration of various risk factors conforms to standard methodology. Certain risk factors will have no application to certain individuals, and a physician, naturally, will make a clinical judgment about which risk factor is more important in a given patient. Furthermore, California law does not require that experts rule out every risk factor or that the experts find that Roundup® exposure was the *only* cause of Plaintiff's NHL. *Wendell v. Glaxosmithklin*, 858 F.3d 1227, 1237 (9th Cir. 2017). The law requires that each expert must opine that Roundup® exposure constitutes a substantial contributing factor, and importantly, the law holds Monsanto responsible even if there is more than one substantial contributing factor. *Id.*

Dr. Staggs determined that Roundup® was a substantial contributing cause to each Plaintiff's NHL. As individually outlined below, Dr. Staggs reached his conclusions only after considering each

Plaintiff's pesticide exposure, [redacted] [redacted], even though in his opinion is these are not all risk factors for NHL. Further, in advance of reaching his conclusions, Dr. Staggs reviewed the applicable scientific literature. It is evident from his deposition testimony below that Dr. Staggs thoroughly considered all factors and properly explained his opinions as to why these factors were ruled out.[7]

A. Other Pesticide/Chemical Exposure (all six Plaintiffs)

Dr. Staggs acknowledged that each Plaintiff was exposed to other pesticides and that, of the ones identified by product name, he conducted research to determine whether they had a significant association with NHL. He further explained that, even if one or more of the products were a risk factor for NHL, they still would not change his opinions because the Plaintiffs' other pesticide exposure was minimal compared to their inordinately high Roundup® exposure. *See, e.g.*, Stekloff Decl., Ex. 33 (Tanner Dep.) at 65:20-25; Stekloff Decl., Ex. 42 (Domina Dep.) at 112:22-113:9. Beyond researching these various pesticides, Dr. Staggs considered the proximity, frequency, and regularity of each Plaintiff's exposure to the various chemicals to make an assessment as to whether the Plaintiff's cumulative exposure to one or more of them could have contributed to his NHL. *See, e.g.*, Stekloff Decl., Ex. 10 (Sanders Dep.) at 86:1-4.

It is telling that Dr. Staggs' conclusions that the other pesticides do not substantially contribute to Plaintiffs' NHL are consistent with those reached by Monsanto's own expert, Dr. Grossbard. Dr. Grossbard testified that, in terms of specific pesticide exposure of Mr. Sanders (the only plaintiff that overlaps with Dr. Staggs), he noted an association, but determined that the chemicals Agent Orange, Sevin, Lorsban, and Delnav were not risk factors for NHL as "they were not statistically significant." Grossbard Dep. (Ex. 6) at 268:8-22.

[redacted]

[7] Monsanto's assertions that "Dr. Staggs simply did not conduct any analysis when the Plaintiffs could not remember the specific names of the pesticides they used," Mon. Motion at 17:13-14, disregards relevant law. As this Court knows, an expert should not speculate when facts are not in evidence in the litigation. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). Dr. Staggs testified without being given the name of specific chemical by the Plaintiff, it would be impossible for him to evaluate the carcinogenic risk, if any, posed by the unnamed agent. Stekloff Decl., Ex. 35 (Dickey Dep.) at 16:8-16.

8



G. Idiopathy (all Plaintiffs)

Monsanto attempts to resurrect its failed argument that the testimony of Plaintiffs' experts is unreliable and inadmissible because these experts allegedly did not rule out idiopathic causes of Plaintiffs' NHL. *Wendell v. GlaxoSmithKline LLC* is instructive on this point. The Ninth Circuit held that the trial court abused its discretion by excluding case-specific causation opinions on the basis of a high rate of idiopathic cancer and the inability to rule out an idiopathic origin. 858 F. 3d at 1237. More importantly, definitively ruling out all unknown causes of a disease is not a bar to testimony under *Daubert*. *See id.* Moreover, Dr. Staggs addressed the issue of idiopathy, at length, in his depositions.

-7- Case No. 3:16-md-02741-VC

PLAINTIFFS' RESPONSE IN OPPOSITION TO MONSANTO COMPANY'S MOTION TO EXCLUDE WAVE I SPECIFIC CAUSATION EXPERTS

Citing current medical literature, Dr. Staggs testified that "almost all the risk for cancers is from external carcinogens." Stekloff Decl., Ex. 42 (Domina Dep.) at 33:6-7. He further explained that "the driving force of almost every cancer are external contribution of risk from other carcinogens, not just sort of these theoretical spontaneous mutations, whether it's the National Institute of Health or medical literature like the substantial risk paper from 2015 that I've talked about before indicates that the vast majority 80 –or 90, 95 percent of mutations in cancers are caused by external risk factors, not this sort of theory of cancer spontaneously arising." *Id.* at 31:22-32:6.

## V. <u>Conclusion</u>

In sum, Dr. Staggs' opinions are based on a review of the medical literature, an examination of each individual's medical records and deposition transcripts, a personal interview with each Plaintiff, a consideration of the relevant risk factors to develop his opinions, and application of the Bradford Hill considerations. His methodology is sound and standard in his field of expertise. Monsanto's suggestion that these opinions are the product of an "outcome-driven, made-for-litigation methodology," Mon. Motion at 10, is misplaced. Dr. Staggs' objectivity and use of generally accepted methodology in evaluating scientific principles and applying that methodology to the Plaintiffs here are evident in his reports and further expanded upon in deposition testimony for each of the six plaintiffs. His opinions that Roundup® is a probable cause of NHL and that each Plaintiffs' extensive exposure to Roundup® more likely than not caused their NHL are well-supported by extensive toxicology, epidemiology and mechanistic data. Based on the foregoing, the Court should admit Dr. Stagg' opinions and testimony in full as his methodology is reliable. To the extent Monsanto does not agree with Dr. Staggs' opinions, its proper recourse is limited to cross examination at trial. Monsanto's motion should be denied in its entirety.

DATED: December 10, 2019

Respectfully submitted,
*<u>/s/ Robin L. Greenwald</u>*
WEITZ & LUXENBERG, P.C.
700 Broadway, 5th Floor
New York, New York 10003
Tel: (212) 558-5864

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Robin L. Greenwald