1  **WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald, Esq.
2  700 Broadway
New York, NY 10003
3  Telephone: 212-558-5500
Email: rgreenwald@weitzlux.com
4
5  Attorneys for the Plaintiffs

6  UNITED STATES DISTRICT COURT

7  NORTHERN DISTRICT OF CALIFORNIA

8
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| *Dickey v. Monsanto Co.,* *3:19-cv*-04102-VC | **PLAINTIFFS' OPPOSITION TO MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF DR. KEVIN PALKA ON *DAUBERT* GROUNDS** |
| *Domina v. Monsanto Co.,* 3:16-cv-05887-VC | |
| *Janzen v. Monsanto Co.,* 3:19-cv-04103-VC | |
| *Pollard v. Monsanto Co.,* 3:19-cv-04100-VC | |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    Assessment of the Causes of Plaintiffs' NHL.................................................................. 3

    Monsanto's Experts' Approach Is Less Detailed............................................................. 5

ARGUMENT .............................................................................................................................. 7

    Dr. Palka's Unchallenged Methodology is Generally Accepted and the Resulting
    Opinions are Well-Founded and Reliable ....................................................................... 7

        A.    Dr. Palka Followed and Applied the Correct Methodology ................... 10

        B.    Monsanto's Experts Utilized the Same Methodology and Analysis ....... 11

        C.    Monsanto's Challenges on Various Points Are Immaterial..................... 14

CONCLUSION ........................................................................................................................ 16

-ii-

PLAINTIFFS' OPPOSITION TO MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO
EXCLUDE THE TESTIMONY OF DR. KEVIN PALKA ON *DAUBERT* GROUNDS
MDL No. 2741

# TABLE OF AUTHORITIES

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*
  738 F.3d 960 (9th Cir. 2013) .................................................................................................. 8

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993) ......................................................................................................... passim

*In re Paoli R. R. Yard PCB Lit.*
  35 F.3d 717 (3d Cir. 1994) ..................................................................................................... 8

*In re Prempro Prod. Liab. Litig.*
  586 F.3d 547 (8th Cir. 2009) .................................................................................................. 7

*In re Roundup Products Liability Litig.*
  390 F. Supp.3d 1102 (N.D.Ca. 2018) ........................................................................... 7, 8, 14

*In re Roundup Products Liability Litig.*
  MDL No. 2741, 2019 WL 3219360 (N.D.Ca. Jul. 12, 2019) ................................................. 1

*Magistrini v. One Hour Martinizing Dry Cleaning*
  180 F.Supp.2d 584 (D.N.J. 2002) ........................................................................................... 8

*Messick v. Novartis Pharm. Corp.*
  747 F.3d 1193 (9th Cir. 2014) ................................................................................................ 8

*Metabolife Int'l, Inc. v. Wornick*
  264 F.3d 832 (9th Cir. 2001) .................................................................................................. 9

*Peteet v. Dow Chem. Co.*
  868 F.2d 1428 (5th Cir. 1989) .............................................................................................. 13

*Pooshs v. Phillip Morris USA*
  287 F.R.D. 543 (N.D. Cal. 2012) ............................................................................................ 9

*Southland Sod Farms v. Stover Seed Co.*
  108 F.3d 1134 (9th Cir. 1997) .............................................................................................. 13

*United States v. 14.38 Acres of Land*
  80 F.3d 1074 (5th Cir. 1996) .................................................................................................. 8

*Viterbo v. Dow Chem. Co.*
  826 F.2d 420 (5th Cir. 1987) .................................................................................................. 8

*Wendell v. Glaxosmithkline LLC*
  858 F.3d 1227 (9th Cir. 2017) ........................................................................................... 9, 13

**Rules**

Fed. R. Evid. 702 ..................................................................................................................... 7, 15

-iii-

PLAINTIFFS' OPPOSITION TO MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF DR. KEVIN PALKA ON *DAUBERT* GROUNDS
MDL No. 2741

# INTRODUCTION

Monsanto filed a stand-alone motion to exclude the expert testimony of Dr. Kevin Palka. *See* "Monsanto Company's Notice of Motion and Motion to Exclude to the Testimony of Dr. Kevin Palka on *Daubert* Grounds," dated Nov. 26, 2019 ("Palka Motion"). Monsanto oversells points while ignoring Dr. Palka's extensive experience and specific testimony.

As detailed below, Dr. Palka, an assistant professor at Washington University School of Medicine, has nearly two decades of oncology experience and has treated thousands of individuals with cancer. As such, he is fully familiar with non-Hodgkin lymphoma ("NHL"), the risk factors for NHL and, just as relevant, those factors that have no bearing on an individual's development of NHL. He relied on that experience when he reviewed each Nebraska farmer Plaintiff's detailed medical history and read the scientific articles, including IARC's assessment, linking glyphosate and Roundup with NHL. Dr. Palka fully understood which details required attention and what information he could consider and ruled out before reaching his conclusions. As explained below, Plaintiffs Frank Pollard, Robert Dickey, Royce Janzen and Larry Domina (collectively "Plaintiffs") experienced substantial exposure to Roundup for decades as farmers in Nebraska. These plaintiffs average over 5,000 hours of exposure to Roundup during their farming careers before their respective diagnoses. This level of exposure "far exceeded the threshold used in most of the epidemiological literature, and specifically the McDuffie and Eriksson studies." *See In re Roundup Products Liability Litig.,* MDL No. 2741, Case No. 16-md-02741-VC, 2019 WL 3219360 at *1 (N.D.Ca. Jul. 12, 2019) (PTO 159). In Dr. Palka's causation opinions for these four Plaintiffs, this one risk factor stood out well above any other consideration in assessing possible causes for the development of their NHL.

Further, Dr. Palka's methodology is mirrored in the reports of Monsanto's own experts. Monsanto's denouncing of Dr. Palka for ignoring various risk factors overlooks the identical specific causation analysis which its own experts conducted. One expert, Dr. Alejandro Gru, did not identify any risk factors for three of the four Plaintiffs REDACTED. If Dr. Palka suffered from "blinders," Palka Motion at 1, the charge is valid for Dr. Gru and Dr. Silberstein's 2-page specific causation assessments as well. Of course, Monsanto would not concede this point, and its proffer of those opinions to rebut Dr. Palka and other Wave One plaintiffs further establishes that Dr. Palka's opinions are methodologically sound and admissible. Accordingly, Plaintiffs respectfully request that the Court deny Monsanto's motion in full.

## BACKGROUND

Kevin T. Palka, M.D. is a board-certified medical oncologist and hematology with nearly twenty years of experience treating cancer patients, including those afflicted with NHL like Plaintiffs. *See* Declaration of Robin Greenwald, dated Dec. 9, 2019 ("Greenwald Decl."), Exh. 1. After graduating with honors from Duke University in 1995, where his background was in genetics and molecular biology, Dr. Palka was awarded the coveted Fulbright scholarship to the Medical Nobel Institute at the Karolinska Institute in Stockholm, Sweden. *Id.* Following his return to the United States, Dr. Palka received his medical doctor degree at the University of Texas-Southwestern Medical School in Dallas, Texas, which was followed by an internship and residency at the University of Illinois-Chicago Medical Center. *Id.* Dr. Palka obtained his initial board certification in internal medicine, followed by additional board certifications in both medical oncology and hematology. *Id.*

Dr. Palka's practice has focused on clinical work where he diagnoses and treats cancer patients. Following his residency, he initially worked in Tennessee serving as an assistant professor of medicine at Vanderbilt University. *See* Declaration of Brian L. Stekloff in Support of Monsanto's Motion to Exclude the Testimony of Dr. Kevin Palka on *Daubert* Grounds," dated Nov. 26, 2019) ("Stekloff Dec."), Exh. 4 at 32:21-33:24.[1] There, he split his time between work at a neuro-oncology clinic managing brain tumor patients, *id.* at 34:4-13, and working at a safety-net hospital in Nashville, treating uninsured, homeless and indigent patients. *Id.* at 34:4-23. From Nashville, he moved to a hospital in Illinois, located in a "very blue-collar factory town." *See id.* at 35:5-36:13. Much of his work has remained the same since taking the position at Washington University, where he now serves as an associate professor. *See id.* at 37:4-38:17.

***Assessment of the Causes of Plaintiffs' NHL***

Dr. Palka detailed his methodology in conducting a differential etiology to assess the causes of an individual's cancer. As a medical oncologist and practicing clinician, his review process starts with the patient's medical records, which would include the patient's past medical history, family history and his work history. Stekloff Decl., Exh. 4 at 22:6-16. Dr. Palka would then review the patient's diagnosis, the records from his treating oncologist, the pathology reports and any imaging records and reports. *Id*. Dr. Palka explained that the patient's records and work history would, in turn, identify risk factors which might explain the individual's NHL. *See id.* at 22:17-24. As Roundup is a risk factor for NHL, he emphasized that "you have to go through

---

[1] Defendant Monsanto included seventeen exhibits in support of its motion to exclude Dr. Palka's testimony. Plaintiffs have cited to those exhibits rather than create a redundant set of exhibits. Plaintiffs' additional exhibits are contained within the accompanying Greenwald Declaration, dated Dec. 9, 2019.

and make sure that there's nothing else that really could outweigh the risks of the Roundup exposure." *See* Stekloff Decl., Exh. 4 at 22:6-24:14 (discussing his methodology).

Consistent with his daily practice as a treating clinician, Dr. Palka's review of the four Nebraska Plaintiffs started with their medical records. He thoroughly reviewed the medical records of each individual. *See id.* at 22:6-24:14; 56:5-11; 57:19-58:3. These records provided each individual's personal medical history, family medical history, diagnosis of NHL, NHL treatment and other information that their treating oncologist found pertinent. In reviewing these files, Dr. Palka would note, when applicable, any potential risk factors for NHL. Dr. Palka specifically identified "autoimmune diseases, prior chemotherapy or radiation exposure, active hepatitis B or C, HIV infection, certain bacterial infections or inherited or acquired immunodeficiency states" as risk factors. Stekloff Decl., Exh. 14 at 1. *See also* Stekloff Decl., Exh. 4 at 95:8-96:12 (also identifying Chlamydia psattici, immunosuppression from a transplant, H pylori and EBV). Dr. Palka further explained that "We don't usually think of it [NHL] as a familial [cancer]. There's not a lot of syndromes that are … associated with non-Hodgkin's lymphoma." *Id.* at 95:15-24.[2] Dr. Palka also noted that if you look for risk factors and do not find any known risk factors, then it is likely idiopathic. *Id.* at 98:3-7. Other than their exposure to Roundup, Dr. Palka found that Plaintiffs Domina and Pollard had no other risk factors for NHL,

**REDACTED**

---

[2] Dr. Palka further explained his reasons for not placing an emphasis on family history: "Just based on my training as an oncologist, we don't look for family history – we don't look for familial syndromes in lymphoma patients. It's not impossible, but it's just not something that we look for." Stekloff Decl., Exh. 4 at 152:20-153:4.

Dr. Palka possessed very specific information concerning the four Nebraska Plaintiffs' exposure to glyphosate through the use of Roundup. Dr. Palka received tables which detailed the level of exposure to Roundup for each Nebraska Plaintiff. *See* Stekloff Decl., Exhs. 3-6. Compressed, those tables showed the following information.

|  | Years of Exposure | Total Hours of Exposure[3] |
|---|---|---|
| Dickey | 28 | 7,740-9,140 |
| Domina | 36 | 4,536 |
| Janzen | 30 | 1,949 |
| Pollard | 26 | 6,952-7,064 |

*See* Stekloff Decl., Exhs. 3-6. Dr. Palka also expressly referenced two of the epidemiology studies that he reviewed, which found that the increased risk of NHL more than doubled in cases where glyphosate was used for as little as over two days per year, or greater than 10 days (i.e. the McDuffie and Eriksson studies, respectively).

***Monsanto's Experts' Approach Is Less Detailed***

Monsanto has offered two different doctors as specific causation experts for the four Nebraska Plaintiffs, Dr. Alejandro Gru and Dr. Peter Silberstein. Monsanto's own expert reports provide a paper-thin challenge on the issue of specific causation. Both doctors consume most of their reports addressing cancer generally, general causation and, once again, suggest that neither glyphosate nor Roundup causes cancer. *See* Greenwald Decl., Exh. 5 at 2-17; Exh. 2 at 2-10, 11-14. Looking to risk factors, i.e., what might cause a specific cancer, Dr. Silberstein broadly states:

> Just because something has been identified as a risk factor, does not mean it is a cause of NHL. Risk factors include, but are not limited to age, HIV/AIDS, hepatitis B and C,

---

[3] Dr. Palka utilized these numbers for the establishment of his opinion. They were prepared by counsel David Domina, Esq. in advance of the deposition. *See* Stekloff Decl., Exh. 2 at 34:14-21; Stekloff Decl., Exh. 4 at 58:4-18. Dr. Petty's calculations, which were generated following a detailed interview of each plaintiff and using his skill as an Industrial Hygienist, identify a greater exposure to glyphosate and Roundup for Plaintiffs and determined that each Plaintiffs' exposure averaged over 5,000 hours.

>autoimmune disease, a weak immune system, immunosuppressive medications, increased BMI, diabetes, personal or family history, <u>and many others</u>. Nevertheless, most patients with NHL have no known risk factors.

Greenwald Decl., Exh. 5 at 6 (emphasis added). Notably, Dr. Silberstein does not cite to a single authority for this sweeping representation. *See id.* Dr. Gru offers a more detailed overview, stating that "[t]he most pronounced risk for NHL is derived from primary or acquired immunodeficiencies." Greenwald Decl., Exh. 2 at 11. He then notes that "[w]ell-established infectious agents associated with NHL include HIV with clinically aggressive NHL, human herpesvirus 8/Kaposi's sarcoma and primary effusion lymphoma; …. However, as stated above, known NHL risk factors explain only a small proportion of NHLs." *Id.* Dr. Gru, likewise, fails to offer a single citation for his statement. *See id.* Lastly, after identifying these risk factors, Dr. Gru goes on to opine that two of the three Nebraska Plaintiffs he evaluated have no risk factors for NHL.

Although offered as specific causation experts, neither doctor attempts to identify a source for the Nebraska Plaintiffs' NHL. For Larry Domina, a REDACTED farmer, Dr. Gru does not identify any applicable risk factors for NHL. *See id.* at 15 (omitting any consideration of pesticide or herbicide exposure and/or age). His only statement is that Mr. Domina's NHL had no "causal association with an environmental exposure." *See id.* Dr. Silberstein, in turn, only mentions REDACTED, Greenwald Decl., Exh. 5 at 17, but notably, REDACTED REDACTED. *See id.* at 6 (also quoted above). Dr. Silberstein continues that "Mr. Domina also had many different exposures to chemicals, including but not limited to glyphosate and atrazine. However, there is no credible medical or scientific evidence to attribute his lymphoma to either." *Id.* at 17 (ignoring IARC and numerous studies to the contrary).

The various experts have identified in their reports the following risk factors in the four Plaintiffs:

|  | Dr. Gru | Dr. Palka | Dr. Silberstein |
|---|---|---|---|
| Dickey | None identified | Exposure to Roundup; REDACTED | REDACTED |
| Domina | None identified | Exposure to Roundup | REDAC |
| Janzen | REDACTED | Exposure to Roundup; REDACTED | REDACTED |
| Pollard | Not Considered | Exposure to Roundup | REDACTED |

*See* Stekloff Decl., Exhs. 1-4; Greenwald Decl. 3-8.  The only distinction of any significance between the results of the methodology of each expert is that Monsanto's experts do not consider Roundup as a risk factor for NHL, while Dr. Palka does and has determined that the Plaintiffs' thousands of hours of exposure to Roundup was a substantial factor in bringing about their cancer.  The fact that Dr. Palka does not agree with some of the risk factors identified by Monsanto's experts does not make his methodology flawed.  *In re Prempro Prod. Liab. Litig.,* 586 F.3d 547, 553, 565-67 (8th Cir. 2009) (noting that an expert's "explanations as to conclusions not ruled out went to weight and not admissibility").  Disagreement about risk factors does not go to methodology; the appropriate avenue for Monsanto to address these disagreements is through cross-examination at trial.  *Id*.

**ARGUMENT**

***Dr. Palka's Unchallenged Methodology is Generally Accepted and the Resulting Opinions are Well-Founded and Reliable***

Dr. Palka's expert testimony is appropriate as it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  As this court has previously

stated, the court's role in a *Daubert* inquiry is that of a "gatekeeper" only, and does not replace the adversary system. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). *See also In re Roundup Products Liability Litig.*, 390 F. Supp.3d 1102, 1111-13 (N.D.Ca. 2018) (Doc. No. 1596). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. Therefore, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (*quoting Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

The Ninth Circuit has placed great emphasis on *Daubert*'s admonition that a district court should conduct this analysis "with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharm. Corp.,* 747 F.3d 1193, 1196 (9th Cir. 2014) (*quoting Daubert*, 509 U.S. at 588). In fact, the Ninth Circuit has emphasized that the gatekeeping function is meant to "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). As this Court previously observed, such an emphasis has resulted in slightly more room for deference to experts in close cases than might be appropriate in other Circuits. *See In re Roundup Products Liability Litig.,* 390 F. Supp.3d at 1113 (Doc. No. 1596). In the end, "a trial court should admit expert testimony 'if there are "good grounds" for the expert's conclusion' notwithstanding the judge's belief that there are better grounds for some alternative conclusion." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F.Supp.2d 584, 595 (D.N.J. 2002) (citations omitted). *See also In re Paoli R. R. Yard PCB Lit.*, 35 F.3d 717, 744 (3d Cir. 1994) (noting that, even if the judge believes "there are better grounds for some alternative conclusion" and that there are some

1  flaws in the expert's methods, if there are "good grounds" for the expert's conclusion, then the
2  opinion should be admitted).

### A. Dr. Palka Followed and Applied the Correct Methodology

The appropriate *Daubert* analysis confirms and upholds Dr. Palka's methodology and resulting opinions. *Daubert* involves a two-part analysis. "The court first determines whether an expert's testimony reflects 'scientific knowledge,' whether the findings are "derived by the scientific method," and whether the work product is 'good science'—that is, whether the testimony is reliable and trustworthy. The court then determines whether the testimony is 'relevant to the task at hand.'" *Pooshs v. Phillip Morris USA*, 287 F.R.D. 543, 546 (N.D. Cal. 2012) (citing *Daubert*). Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science—the focus is on principles and methodology, not on conclusions. *Id.* (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001)).

The Ninth Circuit addressed several relevant points in *Wendell v. Glaxosmithkline LLC*, 858 F.3d 1227 (9th Cir. 2017). The Ninth Circuit noted that the starting point in its *Daubert* analysis is that the experts were "highly qualified doctors" who had treated hundreds, if not thousands, of cases. *See id.* The Ninth Circuit also expressly rejected the lower court's exclusion of the experts due to a high rate of idiopathic origins: *Daubert* does not "require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause 'be a substantial causative factor.' This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy." *Id.* at 1237.

*Wendell* provides the basis for the assessment of Dr. Palka's methodology and offers an apt roadmap for the flaws in Monsanto's motion to bar Dr. Palka's expert opinion. *See* Stekloff Decl., Exhs. 13-16 (reports). Dr. Palka's opinions reflect scientific knowledge, derive from scientific method and follow a reliable methodology. First, Dr. Palka is a highly qualified doctor

who graduated from Duke University and the University of Texas-Southwestern Medical School (Dallas). He is a board-certified oncologist who is currently an Assistant Professor of Medicine at Washington University and has authored multiple articles and book chapters. *See* Greenwald Decl., Exh. 1. Second, he is a practicing clinical oncologist who has treated thousands of cancer patients, including several hundred patients diagnosed with NHL. Third, Dr. Palka both identified the risk factors he has found to be associated with NHL and promptly rejected the application of all but one risk factor to the Plaintiffs.

The numbers fully justify Dr. Palka's "focus" on Roundup and the IARC report. IARC provides the initial "red flag" for glyphosate/Roundup, finding that it is a probable carcinogen for NHL based on toxicology, epidemiology and genotoxicity studies. Dr. Palka cited, additionally, two individual studies that found a direct association between glyphosate exposure and NHL; Eriksson and McDuffie. *See* Stekloff Decl., Exh. 4 at 84:13-85:10, 128:21-130:14; Stekloff Decl., Exhs. 13-16. With the threshold levels from these studies, Dr. Palka noted that the Plaintiffs far exceeded those levels. Based on medical records, substantial professional experience, scientific research and IARC's assessment, Dr. Palka adhered to an accepted methodology which, here, produced reliable results linking each Plaintiff's NHL with their thousands of hours of exposure to Roundup.

**B.    Monsanto's Experts Utilized the Same Methodology and Analysis**

Monsanto's challenge to Dr. Palka's report is limited. *See generally* Palka Motion. Monsanto does not challenge Dr. Palka's knowledge or expertise. *See id.* More importantly, Monsanto does not challenge Dr. Palka's methodology. *See id.* Monsanto merely contends that the results from the application of his methodology are not reliable because Dr. Palka did not consider other, unidentified pesticides; *id.* at 6-7, he did not consider other solvents; *id.* at 8-9, he

did not rule out other risk factors; *id.* at 9-10, and he did not offer a reliable basis for ruling out unknown causes. *Id.* at 11-12.

While Monsanto's argument, as discussed above, is misdirected and in error, the immediate point is that no fundamental difference exists between the methodology of Dr. Palka and the reviews which Monsanto's own experts conducted. Monsanto's expert review and analysis of Plaintiff Larry Domina offers the best illustration of this point. Dr. Gru's specific causation analysis of Mr. Domina covers two pages with most of the information coming from Mr. Domina's medical records. *See* Greenwald Decl., Exh. 2 at 14-15. In his review, Dr. Gru does not identify any risk factors specific to Mr. Domina for NHL. *See id.* at 15. Dr. Gru then states that his findings lead to a diagnosis of NHL,

> without any causal association with an environmental exposure. To a reasonable degree of medical and scientific certainty, Roundup did not play a causative role in the development of Mr. Domina's follicular lymphoma. Nothing in Mr. Domina's pathology presentation or clinical course indicates that Roundup played any role in the development of his lymphoma. The literature viewed in total does not establish or suggest an association between Roundup and follicular lymphoma, nor is Roundup an established cause of NHL in general, as discussed above.

*Id.* at 15-16. Notably, there is no discussion of other herbicides, chemicals or solvents, or the consideration of them as possible causes of Mr. Domina's NHL; nor has Dr. Gru identified and ruled out any other known risk factors. *See id.* at 15. The <u>entirety</u> of Dr. Gru's specific causation opinion goes to his belief that Roundup does not cause NHL. *See id.* Dr. Silberstein's two-page specific causation analysis similarly does not refute Dr. Palka's methodology. The only distinction is their difference of opinion that Roundup is capable of causing NHL.[4] *See* Greenwald Decl., Exh. 5 at 17-18.  REDACTED

---

[4] For both Dr. Gru and Dr. Silberstein, the vast majority of their reports is focused on the issue of general causation and whether or not glyphosate and Roundup can cause NHL, giving Monsanto some seven or eight doctors it has paid to supply a negative response to that question.

-12-
PLAINTIFFS' OPPOSITION TO MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXLCLUDE THE TESTIMONY OF DR. KEVIN PALKA ON *DAUBERT* GROUNDS
MDL No. 2741

REDACTED. Monsanto's expert, however, makes no determination whether or not REDACTED. *See id.* Dr. Silberstein also suggests that Mr. Domina has "had many different exposures to chemicals, including but not limited to glyphosate and atrazine. However, no credible medical or scientific evidence to attribute his lymphoma to either." *Id.* at 17. Again, based on his report, the <u>entirety</u> of Dr. Silberstein's consideration of possible causes of Mr. Domina's NHL is limited to glyphosate and atrazine, coupled with his belief that exposure to either chemical does not cause NHL.[5]

 In essence, Doctors Gru, Palka and Silberstein approached the development of their expert opinions in the same way. Predominately using their experience, looking at the same facts and considering the available medical records, each reached an opinion as to each Nebraska Plaintiffs' NHL. For Drs. Gru and Silberstein, while they cannot offer any opinion on what actually caused any of the Plaintiffs' NHL, they are certain glyphosate/Roundup was not responsible. *See* Greenwald Decl., Exh. 5 at 17-18; Exh. 2 at 14-15. Indeed, while an IARC evaluation constitutes the international gold standard and while Mr. Domina (for example) had 4,536 hours of exposure to glyphosate – which IARC has evaluated as a probable carcinogen – Dr. Silberstein asserts that "no credible … scientific evidence …" exists. See Greenwald Decl., Exh. 5 at 17. In short, these reports have created conflicting expert opinions and, following direct testimony at trial which is subject to cross-examination, it will be up to the jury to assess the competing expert positions.

---

[5] Although he identifies various general risk factors for NHL, *see id.* at 6, presumably Dr. Silberstein ruled each one out without comment in conducting his analysis. Further, the reference to atrazine is curious as defendant has not offered a single study that demonstrates that atrazine is a possible, probable or actual cause of NHL.

C.     **Monsanto's Challenges on Various Points Are Immaterial**

The Court should disregard Monsanto's sweeping representations that it makes in an effort to exclude Plaintiffs' specific causation expert. As stated above, a medical expert's causation conclusion should not be excluded because he did not rule out every potential alternative cause of Plaintiffs' disease. *Wendell,* 858 F.3d at 1237 ("We do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable . . . It is enough that the proposed cause 'be substantial causative factor' …. This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy…") (citations omitted). Furthermore, courts do not require an expert to physically examine the party.[6] *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (permitting opinion based on data collected by others); *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1430-32 (5th Cir. 1989).

Dr. Palka's review considered the Plaintiffs' full medical history and related information in conducting his diagnosis. As a practicing clinician, Dr. Palka's methodology started with each patient's medical records and involved an automatic review for recognized risk factors related, in these instances, to NHL. "So you have to go through and make sure that there's nothing else that really could outweigh the risks of the Roundup exposure … you have to do a very systemic evaluation of this and go through in detail to see if there are any – see how you can link this." Stekloff Decl., Exh. 4 at 22:6-24:14. Further, he expressly noted two of the Plaintiffs' REDACTED REDACTED and, relying on his extensive medical training and experience with this disease, rejected any likelihood REDACTED *Id.*

---

[6] Similarly, Monsanto's specific causation experts have not met with or spoken to the Plaintiffs. Further, as a pathologist, Monsanto's expert Dr. Gru, typically, would not see any patients and would never conduct a comprehensive history and physical (H&P) of a cancer patient.

at 142:21-23 and 146:22-147:5. Dr. Palka also addressed family history and why, within the context of NHL, he did not place an emphasis on family history. *See id.* at 153 ("Just based on my training as an oncologist, we don't look for family history – we don't look for familial syndromes in lymphoma patients. It's not impossible, but it's just not something that we look for"). This methodology and review comfortably fits within the Court's prior holding that an expert could offer an opinion that glyphosate was responsible for causing a particular patient's NHL, based on that patient's clinical presentation and history, during the specific causation phase of this litigation …." *In re Roundup Products Liability Litig.,* 390 F. Supp.3d at 1148 (Doc. No. 1596).

Monsanto raises a series of red herrings in an effort to discredit Dr. Palka. Monsanto opens with the assertion that Dr. Palka failed to consider other pesticides as possible causes of the Plaintiffs' NHL. *See* Palka Motion at 6-7. This charge collapses, however, as Monsanto fails to identify these pesticides or assert that the pesticides represented a probable risk factor for NHL. *See id.* Further, in conducting their own analyses here, neither Dr. Gru nor Dr. Silberstein squarely addressed any other pesticides. *See* Greenwald Decl., Exh. 2 at 15; Greenwald Decl., Exh. 5 at 17. The same problem undermines Monsanto's claim that Dr. Palka failed to assess the Plaintiffs' exposures to solvents or diesel fuel. *See id.* at 8-9. Although both Monsanto experts make a passing reference to solvents/diesel fuel in their general causation discussion, *see, e.g.,* Greenwald Decl., Exh. 2 at 12, both experts demonstrate the same "tunnel vision" Monsanto charges Dr. Palka with by omitting any consideration of other solvents/diesel fuel in their specific causation discussion. *See* Greenwald Decl., Exh. 2 at 15; Exh. 5 at 17.

Contrary to Monsanto's assertion, *see* Palka Motion at 9-10, Dr. Gru was the only expert who disregarded [REDACTED]. *See* Greenwald Decl., Exhs. 2-3(lacking references in the specific causation sections). Dr. Palka considered each Plaintiffs' medical

1  records (which include both past diagnoses and family history) and explained why he ruled out RE

2  REDACTED   *See* Stekloff Decl.,

3  Exh. 4 at 143:10-20; 146:22-147:5 ("I specialize in squamous cell cancer of the head and neck"

4  and "from personal experience, I've never seen a patient with REDACTED who has

5  had non-Hodgkin's lymphoma").

   Finally, Monsanto seeks to disqualify Dr. Palka due to an alleged failure to account for idiopathy, and for his reliance on the IARC monograph. *See* Palka Motion at 11-14. The Court has already rejected these arguments in prior cases. *See* PTO 85 at 5 (holding that "It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an "obvious and known risk factor[]" is the cause of that plaintiff's disease."). Indeed, the Court's determination has direct bearing on Monsanto's instant motion as the Court further noted the extensive Roundup usage and exposure of the plaintiffs who are subject to that order. *Id*. at 6. As the Court has already determined that this analysis is admissible, it is reliable under Rule 702 and this Court should deny Monsanto's motion in full.

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court deny the defendant's motion to exclude the expert testimony of Dr. Palka, together with such other relief as the Court deems just and proper.