Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI &**
**GOLDMAN, P.C.**
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444


Jennifer A. Moore (SBN 206779)
jennifer@moorelawgroup.com
**MOORE LAW GROUP, PLLC**
1473 South 4th Street
Louisville, KY 40208
Telephone: (502) 717-4080


Yvonne M. Flaherty (SBN 0267600)
ymflaherty@locklaw.com
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401-2159
Telephone: (612) 339-6900

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | Hon. Vince Chhabria |
| *Johansing v. Monsanto Co.* Case No. 3:16-cv-05751-VC | **PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN** |
| *Carriere v. Monsanto Co.* Case No. 3:18-cv-05778 | |
| *Wooten v. Monsanto Co.* Case No. 3:17-cv-01735 | |

**<u>INTRODUCTION</u>**

Plaintiffs Jerald Carriere ("Mr. Carriere"); Harley Wooten ("Mr. Wooten"); and Peter Johansing ("Mr. Johansing") all proffered the expert opinions of Dr. Lauren Pinter-Brown for purposes of specific-causation in their respective cases.  Dr. Pinter-Brown is a triple board-certified veteran oncologist/hematologist, former Director of the Lymphoma Program at UCLA (where she initiated the program) and USC, with some 40 years in clinical practice, currently treating and consulting at least 70 NHL patients per week at the University of California, Irvine.  *See* Ex. 1 Pinter-Brown Johansing Rpt. ("Johansing Rpt.") at 1-2; Ex. 2 Pinter-Brown Johansing Dep. ("LPB Johansing Dep") at 343:11-344:7; *see also*, Ex. 3 Pinter-Brown Carriere Rpt. ("Carriere Rpt.") at 1; Ex. 4 Pinter-Brown Wooten Rpt. ("Wooten Rpt.") at  1.  In addition to treating patients, Dr. Pinter-Brown instructs medical residents and fellows in the departments of medicine and dermatology, conducts studies, serves as principal investigator on clinical trials for developing chemotherapy and related drugs, and has been involved with approximately 50 clinical trials over the course of her career.  Ex. 2, LPB Johansing Dep. at 343:6-9, 10:21-11:2, 345:21-346:2.  As a result of such work, Dr. Pinter-Brown is well qualified to interpret human epidemiological and genotoxicity data.  *See id.* at 63:1-5, 345:1-15.  Dr. Pinter-Brown is also a prolific author and speaker on lymphoma and penned the chapter on Hodgkin and Non-Hodgkin Lymphoma in three editions of the prestigious Manual of Clinical Oncology, the standard oncology reference book utilized by practitioners in the field.  Ex. 5, LPB Bibliography at 1-13; Ex. 1, Johansing Rpt. at 2; Ex. 2, LPB Johansing Dep. at 64:14-17; LPB Curriculum Vitae and Bibliography attached to and incorporated in the Carriere and Wooten Rpt.

Dr. Pinter-Brown applied the same methodology in performing a differential diagnosis in the three respective cases as she employs in her clinical practice (albeit she testified that a different term is used in practice, "differential etiology"), which consists of identifying risk factors for NHL, determining whether a Plaintiff is susceptible to a risk factor, and arriving at a conclusion of the specific risk factor(s) that contributed to the Plaintiff's NHL.  *See, e.g.,* Ex. 1, Johansing Rpt. at 8-13; Ex. 2, LPB Johansing Dep. at 141:11-151:6; *see also*, Ex. 3, Carriere Rpt. at 2-6; Ex. 5, LPB Carriere Dep. at 119:24-122:6; Ex. 4, LPB Wooten Rpt. at 2-7; Ex. 6, LPB Wooten Dep. at 83:12-86:20.  In identifying exposure to GBFs as a risk factor, Dr. Pinter-Brown conducted an independent analysis of

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

1   the existing epidemiological, genotoxicity, and toxicological data on GBFs, reviewed the opinions of

2   Plaintiffs' general causation experts, and relied on her own clinical experience where, long prior to

3   the current litigation, Dr. Pinter-Brown discussed with some of her patients – particularly farmers –

4   the potential for pesticide exposure to contribute to NHL.  Ex. 1, Johansing Rpt. at 13-14; Ex. 2, LPB

5   Johansing Dep. at 55:9-13, 57:3-24; Ex. 5, LPB Carriere Dep. at 121:13-122:6; Ex. 6, LPB Wooten

6   Dep. at 83:12-86:20.

7          Monsanto's arguments for excluding the opinions of Dr. Pinter-Brown are riddled with

8   misrepresentations of the record, a warped view of her testimony, and go to the weight of Dr. Pinter-

9   Brown's opinions as opposed to admissibility.  For example, Monsanto urges this Court to exclude

10  Dr. Pinter-Brown merely because she does not lend as much weight to certain NHL risk factors as

11  Monsanto or does not perceive certain medical conditions or exposures to be true risk factors, based

12  on her more than forty (40) years of clinical experience.  What is important is that Dr. Pinter-Brown

13  considered what she perceived to be the applicable risk factors in each Plaintiff's case and provided a

14  reasoned explanation, based on the record, her expertise, and review of the scientific data, for ruling

15  in or ruling out factors in performing a differential diagnosis.  Monsanto is free to argue with Dr.

16  Pinter-Brown on cross examination as to the proper weight to be afforded to certain risk factors

17  compared to others, but such disagreements do not render Dr. Pinter-Brown's opinions unreliable

18  under *Daubert*.  Plaintiffs Johansing, Carriere, and Wooten incorporate by reference Plaintiffs' Joint

19  Response in Opposition to the General Issues Raised in Monsanto Company's Motion to Exclude

20  Testimony of Specific Causation Experts in Wave One Cases on *Daubert* Grounds ("General

21  Opposition").  For the reasons stated in the General Opposition, and the arguments set forth below,

22  the Court should deny in full Monsanto's motion to exclude the opinions of Dr. Pinter-Brown.

23                                           **ARGUMENT**

24  *Plaintiff Johansing*

25          Mr. Johansing is an occupational farmer who was diagnosed with NHL, specifically Small

26  Lymphocytic Lymphoma ("SLL")/Chronic Lymphocytic Leukemia ("CLL") for the first time in 2004

27  at the age of 51 following intensive, long-term exposure to GBFs from 1975-2015.  Ex. 1, Johansing

28  Rpt. at 2, 3; Ex. 2, LPB Johansing Dep. at 204:19-205:11 ("if you use his estimates of how many days

he used it and how many years, [he] is…well past the median, and up into the…higher quartiles and tertiles…he's clearly on the high end of a user because he used it for so very long and for such extensive amounts of time.").  As explained below, Mr. Johansing's only other potential risk factor for NHL is an unconfirmed indication that his mother may also have had CLL, which Dr. Pinter-Brown thoroughly considered, concluding that if confirmed, Mr. Johansing's familial predisposition to NHL would constitute a contributing factor to his NHL as well as his intensive exposure to GBFs.  And, as explained below, although Mr. Johansing applied other agricultural products in addition to GBFs on his farming operation, he was meticulous in utilizing extensive personal protective equipment ("PPE") when applying products other than GBFs due to regulatory requirements, recommendations for additional protective equipment on the label/material safety data sheets ("MSDS") of other pesticides, or as a result of his own initiative, whereas he utilized far less precautions when applying GBFs due to his perceived safety of GBFs.

I.   **Dr. Pinter-Brown Considered Mr. Johansing's Exposure to other Pesticides, Provided a Valid Reason for Why Such Exposures Likely Did Not Contribute to Mr. Johansing's NHL, and Reliably Accounted for the Possibility of Mr. Johansing's Familial Risk of NHL**

A.  **Dr. Pinter-Brown Opinions Regarding Mr. Johansing's Other Exposures are Reliably Supported by the Record**

Monsanto asserts that Dr. Pinter-Brown's differential diagnosis did not rule in Mr. Johansing's exposure to other pesticides that have also been associated with NHL.  *See* Mtn at 14. However, Dr. Pinter-Brown was explicit in her reasons – based on the established record – for not attributing Mr. Johansing's NHL to other pesticides.  As an initial matter, Dr. Pinter-Brown conducted an exhaustive review of Mr. Johansing's employment records, personal diaries, and pesticide material safety data sheets ("MSDS") to identify the agricultural products that were utilized on Mr. Johansing's farming operation and the protective measures that Mr. Johansing adopted.  Ex. 1, Johansing Rpt. at 2; Ex. 2, LPB Johansing Dep. at 154:7-24.  Dr. Pinter-Brown did this in order to ensure that "there wasn't any other substantial contributing factor" to Mr. Johansing's NHL.  *Id*. at 347:20-348:10.

Mr. Johansing unequivocally testified that he utilized a full chemical-resistant suit, gloves, gloves and, on occasion, a respirator when applying pesticides other than GBFs, often due to the

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

requirements of the label or MSDS – which he was meticulous in following –  but also as a result of his own initiative.  *See* Ex. 7, Johansing Dep. at 311:21-312:12, 214:12-16 ("I know it didn't call for it. But we did it just to be safe."), 284:8-15 (testified that he carefully read labels).[1]  In contrast, when applying or mixing GBFs – which he used more than any other product (*id*. at 283:12-15) – Mr. Johansing utilized only glasses/goggles and gloves and would at times remove the gloves to clean a blocked sprayer-nozzle.  *See id*. at 175-176, 301:24-302:13 (recalls Roundup backpack sprayer leaking and soaking his back while wearing regular clothes), 290:291, 25:19-24 (for GBFs "I think long sleeve shirt, pants. They emphasize socks and shoes… Gloves, glasses."),[2] 194:11-196:2 (describing similar clothing when mixing large quantities).  And, when applying GBFs from an open-cabin tractor, Mr. Johansing wore minimal PPE and in fact testified that he often felt GBFs make contact with his skin due to drift (particularly when turning at the ends of a tract), sprayed with his shirt off during hot days, felt Roundup dripping onto his head and torso when folding the arms of the tractor following a spraying session, and freely cleaned blocked nozzles of the spraying boom without any gloves because, unlike other pesticides, he "didn't think much about Roundup…I thought it was one of the safest chemicals."  *Id*. at 273:21-281:24, 200:11-201:6, 284:21-285:2, 290-291, 301-305 (describing inability to wash off Roundup from clothes and skin when spraying long distances from home).  Accordingly, Dr. Pinter-Brown's conclusion that Mr. Johansing's extensive use of personal protective equipment when spraying other pesticides – in stark contrast to Roundup – rendered it unlikely that his NHL can be attributed to other products, is reasonably based upon the facts in the record.  *See* Ex. 2, LPB Johansing Dep. at 174:19-175:9, 348:12-15 ("he minimized his exposure by obeying the regulations both that he learned in classes and that…describe how you're supposed to handle certain agents.").  That said, it is not the Court's function to resolve factual disputes in the record when exercising its gate-keeping function.  *See IGT v. All. Gaming Corp.,* No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 7084605, at *10 (D. Nev. Oct. 21, 2008) ("*Daubert* does not allow a court to

---

[1] By way of other examples, the MSDS for Diazinon advises the use of a "NIOSH approved respirator" and compatible chemical resistant gloves"; the MSDS for Gramoxone recommends "face shield [,] chemical-resistant apron" and a "NIOSH-certified combination air-purifying respirator", all of which Mr. Johansing testified utilizing when handling such products.  Available at: https://www.caymanchem.com/msdss/23769m.pdf; https://www.syngenta.ca/pdf/msds/Gramoxone_8661_en_SDS.pdf.

[2] This is consistent with the Roundup MSDS, which only recommends gloves and goggles.  Available at: https://www.fumigationzone.com/files/53/Roundup+Original+-+EPA.

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

resolve a factual dispute underlying the expert's analysis.").

### B.  Dr. Pinter-Brown Reliably Considered the Possibility of Mr. Johansing's Familial Predisposition to CLL

Moreover, Monsanto falsely contends that Dr. Pinter-Brown failed to account for the possible risk posed by Mr. Johansing's disputed family history of CLL.  *See* Mtn. at 15.  Dr. Pinter-Brown explicitly acknowledges that if it is confirmed that Mr. Johansing's mother in fact had CLL, this familial predisposition likely constitutes a contributing factor to Mr. Johansing's NHL.  *See* Ex. 1, Johansing Rpt. at 11-12; Ex. 2, LPB Johansing Dep. at 132:14-16 ("And so that's a possible contributing factor, if she had CLL, which I…really wasn't able to confirm.").[3]  However, Dr. Pinter-Brown was able to conclude that Mr. Johansing's exposure to GBFs was a substantial contributing factor to his NHL, notwithstanding the possibility of a familial history of CLL because, as recognized by Mr. Johansing own treating physician, Dr. Charalambos Andreadis[4], environmental exposure to carcinogens – such as GBFs – can further increase the risk of NHL in persons who may be genetically predisposed to the disease:

---

[3] It is not clear that Mr. Johansing's mother in fact had CLL.  Mrs. Johansing passed away at the age of 88 following a stroke.  Her death certificate identifies CLL as a "other significant condition contributing to death…".  Ex. 8, Mrs. Johansing Death Certificate.  However, neither Mr. Johansing, nor any of his family members ever recall Mrs. Johansing being diagnosed with CLL, she never received treatment for CLL or manifested any symptoms of CLL, Mrs. Johansing did not leave behind any medical records which indicate that she was diagnosed with CLL, and none of Mr. Johansing's treating physicians were able to confirm that Mrs. Johansing had CLL.  *See, e.g.*, Ex. 9, Andreadis Dep. at 56:17-18 ("And there was a questionable – it says "questionable" diagnosis. We don't know."); Ex. 7, Johansing Dep. at 231:15-18. Mr. Johansing stated that the death certificate is the only source indicating that Mrs. Johansing had CLL.  *See* Ex. 2, LPB Johansing Dep. at 134:5-135:18 ("[Mr. Johansing] was quite adamant that at no time was she ever treated, and he knows what the treatment is quite clearly. And really at no time was the family up in arms that she had some kind of disease that they had to deal with.").  Importantly, in the event that Mrs. Johansing had CLL, Mr. Johansing's "diagnosis would likely manifest approximately a decade earlier than the disease of the proband" (which it did not in Mr. Johansing's case, who was diagnosed with NHL in his 50s).  Ex. 1, Johansing Rpt. at 11; Ex. 2, LPB Johansing Dep. at 134:5-24 ("one consideration is the age at which Mr. Johansing got CLL, which is a little atypical…that plays a big role in my decision about what factors participated in Mr. Johansing's development of CLL…usually when you have familial syndromes like that, the next generation will get their disease about a decade earlier. So that would mean that Mr. Johansing would get his CLL around 70, which is more the usual age for CLL[.]").  Moreover, as Dr. Pinter-Brown explained, it is likely that Mrs. Johansing was instead diagnosed with "monoclonal B-cell lymphocytosis, an entity defined as the presence of a monoclonal population of B cells in the blood whose numbers do not meet the criteria for a CLL diagnosis in a person who has no enlarged lymph node, liver or spleen or other area of involvement outside of bone marrow. This entity was first described in the year of Mrs. Johansing's death." Ex. 1, Johansing Rpt. at 12.

[4] Dr. Andreadis was deposed in connection with Mr. Johansing's case *before* he was retained as an expert witness in *Calderon v. Monsanto* (3:19-cv-01630).  When deposed in Mr. Johansing's case, Dr. Andreadis testified that he is aware of the association between exposure to GBFs and NHL based on his independent research which he delivered at a grand-rounds lecture to fellow oncologists/hematologists.  *See* Ex. 9, Andreadis Dep. at 22:13-23:17 ("The literature has shown an association. So, within an odds ratio of two or three for the strength of the association…So that's supported in the meta-analyses that I have read."), 87:19-90:6, 102:23-103:19.

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

> [M]ost of the diseases that we know of that have a genetic component, there's *also an exposure, an environmental component that is believed to interact with the genetics to bring about the disease*.  And specifically, with CLL there's a lot of theories over the years about infections that people get during their life that may affect the immune environment where the disease arises, *environmental exposures to chemicals*, to foods, to medications…those predispositions, genetic predispositions don't manifest in all the patients who carry them. So *you need environmental exposures…to bring out some of those*…Q. so you could be genetically predisposed but the fact that you are in an environment that is more carcinogenic, for example, as a result of your occupation or exposure to pesticides, that could further increase your chance of getting cancer? A. Correct…. That's recognized for several diseases.

Ex. 9, Andreadis Dep. at 95:11-20, 39:6-19 (emphasis added).  Thus, Dr. Pinter-Brown's opinion that Mr. Johansing's potential "preexisting increased risk for CLL would make Mr. Johansing particularly susceptible" to prolonged exposure GBFs is based upon an accepted principle in cancer etiology, as independently attested to by Dr. Andreadis.  Ex. 1, Johansing Rpt. at 14.  Accordingly, the Court should admit in full Dr. Pinter-Brown's opinions vis-à-vis Mr. Johansing.

***Plaintiff Carriere***

Mr. Carriere managed several residential and commercial properties over the course of thirty five (35) years.  Ex.3, Carriere Rpt. at 3-4.  Mr. Carriere consistently used GBFs on one or more rental and/or commercial properties multiple times per month during this time.  *Id.*  Mr. Carriere and his wife also used GBFs at their personal property until approximately 2012.  Ex. 10, Carriere Dep. Tr. (9/25/19), 245:10-18.  Mr. Carriere was initially diagnosed with Diffuse Large B-Cell Lymphoma, cutaneous, in 2016, following a thirty-five year history of regular and frequent exposure to GBFs.  *Id.* at 2-4, 5.   Mr. Carreire was 69 at the time of his diagnosis.  Ex. 5, LPB Carriere Dep. 38:17-22.

As discussed below, Mr. Carriere did have a prior spot of squamous cell cancer on his forehead in 2010 from years of sun exposure, but Mr. Carriere was an otherwise healthy male prior to his NHL diagnosis in 2016.  *Id*. at LPB Carriere Dep. 118:11-14.  Following his diagnosis in 2016, Mr. Carriere underwent several cycles of RCHOP for treatment of the NHL.  Ex. 3, Carriere Rpt. at 2. In 2017, Mr. Carriere was diagnosed with renal cell cancer and underwent a partial nephrectomy in August 2017.  *Id*.  Two years later, doctors confirmed a recurrence of the NHL and Mr. Carriere commenced intensive in-patient treatment for the recurrent NHL, including multiple hospitalizations and a stem cell transplant.  *Id*. at 2-3, 4.

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

### I.       Dr. Pinter-Brown Reliably Considered Mr. Carriere's Risk Factors.

Dr. Pinter-Brown reliably considered a number of risk factors in rendering her case-specific causation opinion for Mr. Carriere.  Ex. 5, LPB Carriere Dep. 52:13-53:19.  Indeed, Dr. Pinter-Brown specifically addressed the issues of skin cancer, smoking, and renal cancer (either in her report and/or in her deposition).[5]  Additionally, contrary to Monsanto's representation, Dr. Pinter-Brown also acknowledged that ionizing radiation is generally considered a risk factor for NHL.  *See* Ex. 3, Carriere Rpt. at 4.  However, Mr. Carriere's radiation did not occur until June 2017 – several months *after* Mr. Carriere's NHL diagnosis.[6]

With respect to skin cancer, Mr. Carriere has spent significant amounts of time in the sun over the years and had one instance of squamous cell cancer several years prior to his NHL diagnosis.[7]  Dr. Pinter-Brown, based on her decades of experience and knowledge of the etiology of NHL, rejected the suggestion that skin cancer should be considered a risk factor.   Ex. 5, LPB Carriere Dep. at 108:17-110:25; 119:5-17.  Similarly, with respect to smoking, Dr. Pinter-Brown does not consider Mr. Carriere's remote history of smoking to be a risk factor.[8]  *Id*. at 119:21-23.  Monsanto disagrees with Dr. Pinter-Brown on these issues.  However, despite an opportunity to do so, Monsanto failed to explore Dr. Pinter-Brown's reasons for rejecting the remote history of smoking or skin cancer as risk factors.  Indeed, Dr. Pinter-Brown explained her methodology and how it mirrors the methodology she has employed in decades of clinical practice.  Ex. 5, LPB Carriere Dep. at 119:24-122:6.

Lastly, with respect to renal cell cancer, Monsanto states that Dr. Pinter-Brown failed to consider renal cancer as a risk factor for Mr. Carriere's NHL.  Mtn. at 14.  However, Monsanto's position is flawed.  First, Mr. Carriere was not diagnosed with renal cancer until after he completed his initial round of NHL treatment in 2017.  Ex. 3, Carriere Rpt. at 2.  Although unclear in its Motion,

---

[5] Dr. Pinter-Brown also recognized age as a risk factor for Mr. Carriere.

[6] Monsanto's suggestion that Mr. Carriere had radiation prior to his NHL diagnosis is specious at best.  Indeed, Mr. Carriere's PFS states that the radiation occurred in 2017.  Def. Exhibit 37 at 4.  Mr. Carriere also testified that when his skin cancer occurred in 2010, he was *not* treated with radiation.  *See* Ex.10, Carriere Dep. (July 17, 2019) 171:16-172:9 (Q. Did you have follow up radiation or other chemotherapy?  A. No.");  *see also* Ex. 11, Carriere Dep. (Sept. 25, 2019) at 222:24-223:17.

[7] Prior to his NHL diagnosis, Mr. Carriere had one instance of squamous cell cancer on his head in 2010.  Subsequent to the NHL diagnosis, Mr. Carriere has had instances of non-melanoma skin cancer spots on his head/face.  Ex. 3, Carriere Rpt. at 3.

[8] Mr. Carriere quit smoking over 30 years prior to his NHL diagnosis.  *See* Ex. 10, Carriere Dep. (7/15/2019) at 169:17-170:4.

1   Monsanto appears to suggest that Mr. Carriere's renal cancer was present prior to his NHL diagnosis.

2   *See, e.g.*, Ex. 5, LPB Carriere Dep. at 32:6-32:8; 111:1-114:10.  However, as Dr. Pinter-Brown

3   testified, the current evidence does not confirm the presence of renal cell cancer prior to the NHL.  *Id.*

4   at 111:1-114:10.  Second, even if the renal cancer was present prior to the NHL, there is no credible

5   scientific evidence to explain an association between renal cell cancer and NHL, let alone a causal

6   connection.  *Id.* at 114:12-115:25.

7          In sum, Dr. Pinter-Brown properly considered the applicable risk factors in Mr. Carriere's case

8   before reaching her causation opinion.  She also reviewed extensive medical records, deposition

9   testimony, medical literature, and reports from the general causation experts.  *See* Ex. 3, Carriere Rpt.

10  at 2.  Ultimately, Dr. Pinter-Brown concluded that Mr. Carriere's significant exposure to GBFs was a

11  substantial contributing factor to his NHL.  Ex. 5, LPB Carriere Dep. at 121:3-11.  Monsanto

12  disagrees with Dr. Pinter-Brown's conclusions as they pertain to certain risk factors; however, this is

13  an insufficient basis on which to exclude Dr. Pinter-Brown's opinions.  As such, Plaintiff Carriere

14  respectfully requests that the Court deny in full Monsanto's Motion to exclude Dr. Pinter-Brown.

15  ***Plaintiff Wooten***

16         Mr. Wooten worked in the City of Riverside's Weed Abatement Department for over 20 years.

17  Ex. 4, Wooten Rpt. at 4.  Mr. Wooten first started using GBFs in his work at the City of Riverside in

18  the mid-to-late 1970s or early 1980s and continued to spray GBFs on an almost daily basis until his

19  retirement in 1997.  *Id*; *see also* Ex. 12, K. Wooten Dep. at 21:1-21:11, 22:23-23:3, 94:1-94:8,

20  358:23-359:4.  Mr. Wooten also sprayed GBFs to control weeds at his residential property.  *Id.* at

21  74:6-74:15; 86:10-86:19.

22         In September 2014, Mr. Wooten presented to the Emergency Room and later to Urgent Care

23  with chest, shoulder, and back pain.  Ex. 4, Wooten Rpt. at 2.  In October 2014, Mr. Wooten's

24  condition deteriorated, and he was seen in Urgent Care and by doctors on multiple occasions.  Doctors

25  (and Ms. Wooten) also noted extensive bruising.  *Id.* at 2-3.  Mr. Wooten was admitted to the hospital

26  and initially diagnosed with severe anemia.  Following a CT Scan and MRI, doctors discovered

27  multiple effusions, lesions and a mass.  Extensive bone marrow tumor infiltration was noted.  *Id.*

28         On November 3, 2014, doctors diagnosed Mr. Wooten with advanced anaplastic large cell

9

lymphoma, ALK negative.  *Id*. at 3.  Mr. Wooten improved enough to return home for hospice care on November 14, 2014.  Ms. Wooten cared for her husband during his remaining days at home and Mr. Wooten died from his NHL on November 22, 2014.  *Id; see also* Ex. 12, K. Wooten Dep. at 365:16-368:6; 368:25-369:12.

Prior to contracting NHL, Mr. Wooten had few medical ailments.  He admittedly had a long history of regular smoking, but quit in 2009.  *Id*. at 65:16-65:23.  Mr. Wooten also had a history of ulcerative colitis and received treatments for this condition.  Ex. 4, Wooten Rpt. at 4*; Ex. 12, K.* Wooten Dep., 262:24-263:6.  Lastly, Mr. Wooten had a couple instances of basal cell spots treated on his nose prior to his NHL.  Neither spot was treated with radiation.  Ex. 4, Wooten Rpt. at 3; Ex. 12, K. Wooten Dep. at 261:7-262:13.

## I.   Dr. Pinter-Brown Reliably Considered Mr. Wooten's Risk Factors.

Dr. Pinter-Brown reliably considered a number of risk factors in rendering her case-specific causation opinion for Mr. Wooten.  Ex. 6, LPB Wooten Dep. at 83:20- 86:20.  These risk factors include radiation, family history, infections, immunodeficiency, autoimmune diseases, TNF therapy, and GBF exposure.  Ex. 4, Wooten Rpt. at 5-6.  Dr. Pinter-Brown also acknowledged Mr. Wooten's prior smoking and basal cell in her Report.  *Id*. at 3-4.  However, Mr. Wooten quite smoking several years prior to his diagnosis and the basal cell history was remote (and did not require significant treatment or radiation). [9]

Despite Monsanto's suggestion to the contrary, Dr. Pinter-Brown carefully considered Mr. Wooten's ulcerative colitis and associated medical treatment in her opinions.  Ex. 4, Wooten Rpt. at 4-6; *see also* Ex. 6, LPB Wooten Dep. at 58:1-70:6; 83:20-86:20.  Monsanto examined Dr. Pinter-Brown extensively on this specific issue and Dr. Pinter-Brown testified that although she saw no evidence that Mr. Wooten developed a weakened immune system as a result of such treatment which, in any event, "don't particularly seem to increase the risk as much as they do when they're combined with other drugs", the treatment that Mr. Wooten received for his colitis is a risk factor for NHL and likely was a contributing factor to Mr. Wooten's development of NHL.  LPB Wooten Dep. at 66:19-25, 83:20-86:20, 60:24-61:4, 67:19-21, 69:8-11 ("Q. You do not dispute that Mr. Wooten was at

---

[9] Dr. Pinter-Brown recognizes radiation as a risk-factor for NHL.  *See* Ex. 4, Wooten Report, at 5.

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

increased risk of NHL because he was treated with that combination therapy, right? A Correct.").

However, Dr. Pinter-Brown concluded that she could not rule out GBF exposure in light of Mr.

Wooten's extensive exposure history, and that if Mr. Wooten's ulcerative colitis placed him in a

higher risk bracket for NHL, then his long-term, intensive exposure to GBFs made Mr. Wooten

particularly susceptible to NHL, thereby constituting a substantial contributing factor to his NHL:

> I think it's logical that when there are multiple risk factors that the risk of non-Hodgkin's lymphoma is higher. Certainly there's other instances in oncology where the addition of two risk factors increase a patient's risk. These can be additive or it can be synergistic. But merely additive, when someone has more than one risk factor, you can imagine and you can see in the oncologic literature in other situations that their risk is so much higher by having multiple risk factors….I think it's very hard to weight risk factors, as the disease is multifactorial.  But even though his doctors didn't take an exposure history, I think as we become more aware of his exposures, we really cannot ignore that his exposure to glyphosate is a substantial contributing factor to his non-Hodgkin's lymphoma.

*Id* at 70:14-25, 83:20-86:20.  This conclusion is based upon a widely accepted view in NHL etiology

that a patient's baseline risk (in this case, the treatment received by Mr. Wooten for his ulcerative

colitis) may be exacerbated due to prolonged exposure to environmental carcinogens, as explained by

Dr. Andreadis, Mr. Johansing's treating physician.  *See* Ex. 9, Andreadis Dep. at 95:11-20, 39:6-19.

In sum, Dr. Pinter-Brown properly considered the applicable risk factors and provided

reasoned explanations for why she gave more weight to others.  Dr. Pinter-Brown also reviewed

extensive medical records, deposition testimony, medical literature, and reports from the general

causation experts.  Ex. 4, Wooten Rpt. at 2.  Ultimately, Dr. Pinter-Brown utilized a methodology that

mirrors her clinical practice and concluded that Mr. Wooten's significant exposure to GBFs was a

substantial contributing factor to his NHL.  Ex. 6, LPB Wooten Dep. at 66:19-25, 83:20-86:20, 60:24-

61:4, 67:19-21, 69:8-11.  Monsanto disagrees with Dr. Pinter-Brown's conclusions and apparently

believes that Dr. Pinter-Brown should have placed more weight on Mr. Wooten's prior history of skin

cancer or smoking; however, this alone is an insufficient basis on which to strike Dr. Pinter-Brown's

opinions given that her methodology is sound under Daubert and this Court's previous specific-

causation rulings.  *See* General Opposition at 2-4.  Indeed, Monsanto did not ask Dr. Pinter-Brown

one question about smoking or skin cancer at her deposition in the Wooten matter.  Rather, Monsanto

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

focused on the treatment which Mr. Wooten received for his colitis – which Dr. Pinter-Brown properly considered as a risk factor and provided her reasons for concluding that Mr. Wooten's exposure to GBFs constituted a substantial contributing factor to Mr. Wooten's NHL diagnosis notwithstanding the treatment he received for colitis.  Ex. 6, LPB Wooten Dep. at 70:14-25.  As such, Plaintiff Wooten respectfully requests that the Court deny Monsanto's Motion to exclude Dr. Pinter-Brown.

### CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Monsanto's motion to exclude the expert opinions of Dr. Pinter-Brown.


Dated: December 10, 2019

By:  /s/ Pedram Esfandiary
Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, &
GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

Jennifer A. Moore (SBN 206779)
jennifer@moorelawgroup.com
**MOORE LAW GROUP, PLLC**
1473 South 4th Street
Louisville, KY 40208
Telephone: 502-717-4080

Yvonne M. Flaherty (SBN 0267600)
ymflaherty@locklaw.com
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401-2159
Telephone: (612) 339-6900

*Attorneys for Plaintiffs*

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN

1

## **CERTIFICATE OF SERVICE**

2

3       I, Pedram Esfandiary, hereby certify that, on December 10, 2019, I electronically filed the

4 foregoing with the Clerk for the United States District Court for the Northern District of California

5 using the CM/ECF system, which shall send electronic notification to counsel of record.

6                                          /s/ Pedram Esfandiary
                                            Pedram Esfandiary

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS JOHANSING, CARRIERE AND WOOTEN'S OPPOSITION TO MONSANTO'S
MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. LAUREN PINTER-BROWN