**GOLDBERG & OSBORNE LLP**
**Deborah S. Kerr (175845)**
**dkerr@goldbergandosborne.com**
**John E. Osborne (*pro hac vice)***
**josborne@goldbergandosborne.com**
**David J. Diamond (*pro hac vice)***
**ddiamond@goldbergandosborne.com**
**698 E. Wetmore Rd., Suite 200**
**Tucson, AZ 85705**
**(520) 620-3975**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Master Docket Case No. 16-md-02741-VC |
| **THIS DOCUMENT RELATES TO:** | Honorable Vince Chhabria |
| Ruben Hernandez and Martha Hernandez v. Monsanto Company | Case No. 3:17-cv-07364 |

**PLAINTIFFS RUBEN AND MARTHA HERNANDEZ'S OPPOSITION TO MONSANTO COMPANY'S MOTION [ECF 8012] TO EXCLUDE TESTIMONY OF SPECIFIC CAUSATION EXPERT DR. EDWIN ALYEA ON *DAUBERT* GROUNDS**

The Court should deny Monsanto's Motion for the reasons addressed below. Plaintiffs Ruben and Martha Hernandez oppose Monsanto's Motion to Exclude Testimony of Specific Causation Expert Dr. Edwin Alyea. (Monsanto's Motion).[1]

[1] With respect Monsanto's arguments pertaining to all Wave One Plaintiffs, Ruben and Martha Hernandez adopt the contemporaneously filed Plaintiffs' Joint Response In Opposition To The General Issues Raised In Monsanto Company's Motion To Exclude Testimony Of Specific Causation Experts Charalambos Andreadis, Clayton Smith, Edwin Alyea, Barry Boyd, Lauren Pinter-Brown, Ron Schiff, And Brent Staggs In Wave One Cases On *Daubert* Grounds (ECF 8012), and the arguments and authority addressed in Bellwether Plaintiffs' Response In Opposition to Monsanto Company's Specific Causation, *Daubert* and Summary Judgment Motion, filed January 11, 2019.

As demonstrated below, Dr. Alyea conducted a proper differential diagnosis as required under *Daubert, v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (2017), and *Cooper v. Takeda Pharmaceuticals America, Inc*., 239 Cal. App. 4th 555 (2014). Monsanto's argument that there may have been a conceivable cause that could also account for a particular Plaintiffs NHL, and requiring each Plaintiffs' expert to track down all of those potential remote unsubstantiated causes, does not make the experts' testimony inadmissible.[2]

## I. Dr. Alyea's Qualifications.

The specific causation expert in Plaintiff Ruben Hernandez' case, Dr. Edwin Alyea, is board-certified in medical oncology and maintains his certification in medical oncology. He is an Associate Professor of Medicine at Harvard Medical School and a member of the Department of Medical Oncology at Dana Farber Cancer Institute. His clinical practice and clinical research are focused in the area of the treatment of patients with hematologic malignancies and stem cell transplantation. He has been a member of the hematologic malignancy group and stem cell transplant program at Dana-Farber Cancer Institute and Brigham and Women's Hospital since 1996. He received his medical degree from Duke University School of Medicine and completed his internship and residency at Brigham and Women's Hospital in Boston, Massachusetts, a Harvard Medical School teaching hospital. He completed a fellowship in Medical Oncology at Dana Farber Cancer Institute in Boston, Massachusetts. His faculty appointments include positions as an Instructor in Medicine, Assistant Professor of Medicine and currently Associate

[2] An expert is not required to "follow up on every detail necessary to formulate an accurate diagnosis." *Id*. at 584.

Professor of Medicine at Harvard Medical School. He holds several positions at the Dana Farber Cancer Institute and the Brigham and Women's Hospital. These institutions are both teaching affiliates of Harvard Medical School. He is a member of numerous professional organizations including the American Society of Hematology and the American Society of Clinical Oncology. Formerly, he was the co-chair of the chronic leukemia working committee at the Center for International Bone Marrow Transplant Registry (CIMBTR).

Dr. Alyea testified, to a reasonable degree of medical certainty, that Plaintiff Ruben Hernandez's exposure to glyphosate/Roundup was a substantial factor contributing to the development of Mr. Hernandez' non-Hodgkin's lymphoma (NHL). As recognized by defendant, to reach this conclusion, Dr. Alyea properly applied a differential diagnosis methodology. Monsanto Company's Motion to Exclude Testimony of Specific Causation Experts ...Edwin Alyea...in Wave I Cases on *Daubert* Grounds 13:8.

At deposition, Dr. Alyea testified that in preparation for reaching his expert opinion he reviewed Mr. Hernandez' medicals record, satisfied himself that Mr. Hernandez had lymphoma, and that he understood the diagnosis, recommendations, and the course thereafter. He further assessed the risk factors or confounding factors for lymphoma. Alyea Dep. 215:1-7, attached in Exhibit 2 to Monsanto's Motion.

## II. Monsanto's Opposition to Dr. Alyea Is Factually Incorrect and Fails to Demonstrate that Dr. Alyea's Methodology Departs From the Dictates of Daubert and its 9th Circuit Progeny.

In its Motion, Monsanto raises issues with Dr. Alyea's differential diagnosis methodology. All matters raised fail truly to impact the reliability of Dr. Alyea's proper methodology under *Daubert*, *Wendell*, and *Cooper*, however.

A specific causation expert need only conclude that defendant's product was a substantial factor in causing plaintiff's harm. A specific causation expert is not required to rule out every single possible cause of a plaintiff's harm in reaching that conclusion. Monsanto's issues are addressed individually below.

A. <u>Dr. Alyea Indeed Considered Commercial Exposure to Other Pesticides.</u>

Dr. Alyea was asked to give an expert opinion as to whether glyphosate was a substantial factor in causing Mr. Hernandez's NHL. His testimony on this issue is:

> Q. You didn't evaluate whether his -- whether other pesticides could have contributed to his case for the reasons you've already discussed, right?
>
> MR. DIAMOND: Form.
>
> A. As I reviewed his exposure history, I focused on glyphosate but also, in that review, took into account that many of these manuscripts also focused on other items that were there.
>
> BY MR. PIORKOWSKI: And do you have an opinion, to a reasonable degree of medical certainty, whether other compounds that he was exposed to, either herbicides or pesticides, were substantial factors in contributing to the development of his lymphoma?
>
> MR. DIAMOND: Form.
>
> A. As I sit here today, I have not considered further beyond the glyphosate with respect to his confounding issues with the articles, but I would also say I think we reviewed earlier that there were no specific items to focus on.
>
> BY MR. PIORKOWSKI: No specific exposures that were identified?
>
> A. No specific pesticides to which I could link a chemical compound to -- to then direct my attention.

Alyea Depo 218: 17-24, 219:1-22.

Dr. Alyea did not need to rule out every single other possible cause in reaching that conclusion under the standard established under Daubert, Wendell, and Cooper.

Furthermore, it would be impossible to rule our every single possible contributing factor. Monsanto is being overly nit-picky in even raising this argument.

What is important is Dr. Alyea's methodology, and his methodology is wholly compliant with Daubert and its progeny in the Ninth Circuit regardless of the individual factors that he utilized in arriving at his specific causation opinion.

B. Alyea Wholly Addressed Monsanto's [REDACTED] Allegations in Compliance with Daubert.

Monsanto alleges that Dr. Alyea did not consider Ruben Hernandez's [REDACTED] diagnosis. This is an excessive misstatement of the facts in this case.

Dr. Alyea's report (attached as Exhibit 36 to Monsanto's Motion) includes an "Analysis of Confounding Factors" in which he discusses Mr. Hernandez's medical conditions that may have also contributed to his NHL. One of medical conditions he identifies is [REDACTED].

In his report, Dr. Alyea states that it is not clear that Mr. Hernandez even has (or had) [REDACTED], and provides an analysis as to why he reached this conclusion. He acknowledges a [REDACTED], but recognizes that [REDACTED] can result from other conditions and notes that Mr. Hernandez has not been followed by a [REDACTED] or treated for [REDACTED]. Alyea report 8:19-25.

Dr. Alyea further clarified his position on this at his deposition. "And in my experience, I have a large number of patients who I take care of who have a [REDACTED] that's ordered, and it represents a different disease." Alyea Dep. 279:23-24; 280:1-2. "In my personal experience, people who I see in clinic will often say, Oh, I have [REDACTED] when they have many different types of [REDACTED]. It's just a common term that's used." Alyea Dep. 280:12-17. "So the

| | |
|---|---|
| 1 | fact that you have a positive ▓▓▓▓, in my world, almost universally, means they have |
| 2 | ▓▓▓▓. That's not ▓▓▓▓." Alyea Dep. 280:23-24, 281:1-2. "I take care of a |
| 3 | wide variety of patients who have ▓▓▓▓. And I can't speak to a specific, but we have seen |
| 4 | |
| 5 | ▓▓▓▓ being ordered on these people, and they came back positive. That doesn't |
| 6 | necessarily mean, by any stretch, that they have ▓▓▓▓." Alyea Dep. 286:21-24, |
| 7 | 287:1-3. "... but my point is that a ▓▓▓▓ does not necessarily mean that one |
| 8 | has ▓▓▓▓." Alyea Dep. 287:10-13. "From the information, sitting here today, from |
| 9 | |
| 10 | the records I reviewed, I do not think that he has ▓▓▓▓." Alyea Dep. 289:21-23. "As |

fact that you have a positive ▓▓▓, in my world, almost universally, means they have ▓▓▓. That's not ▓▓▓." Alyea Dep. 280:23-24, 281:1-2. "I take care of a wide variety of patients who have ▓▓▓. And I can't speak to a specific, but we have seen ▓▓▓ being ordered on these people, and they came back positive. That doesn't necessarily mean, by any stretch, that they have ▓▓▓." Alyea Dep. 286:21-24, 287:1-3. "... but my point is that a ▓▓▓ does not necessarily mean that one has ▓▓▓." Alyea Dep. 287:10-13. "From the information, sitting here today, from the records I reviewed, I do not think that he has ▓▓▓." Alyea Dep. 289:21-23. "As I sit here today, I would need to review his medical record with respect to these items, as I reviewed it the first time, and I saw a ▓▓▓. At that time I did not see a constellation of other criteria that convinced me that he had ▓▓▓ versus some other ▓▓▓." Alyea Dep. 292:18-24, 293:1.

This testimony makes abundantly clear that, as a medical doctor, Dr. Alyea was not convinced that Ruben Hernandez has or has ever had ▓▓▓. A single positive ▓▓▓ without more does not mean that Ruben Hernandez actually has ▓▓▓. Dr. Alyea does not need, in the application of the differential diagnosis methodology, to identify any other conditions that could account for his symptoms.

In further support of Dr. Alyea's position that Mr. Hernandez does not have ▓▓▓ at all, is the testimony of Mr. Hernandez's primary care doctor, Dr. Mervat Kelada. Dr. Kelada testified at her deposition that a ▓▓▓ is indicative of ▓▓▓ "Most of the time", but there are times when it is not indicative of ▓▓▓. Kelada Dep. at 15: 22-25, 16:1, attached hereto as Exhibit 1. She also testified "...I confirm

6

[redacted] and [redacted], the [redacted], but he did not exactly have not exactly [redacted]. It was [redacted] because his [redacted] was reported to be [redacted]." Kelada Dep. at 115:7-11.

Dr. Alyea's opinions that patients with [redacted] at risk for developing lymphoma were those patients with active disease and those undergoing treatment are supported by published studies. Alyea report 8-9:25-27, 9:1-4. There is no evidence that Mr. Hernandez had [redacted]. Alyea report 9:5-6. Mr. Hernandez was also not undergoing treatment for [redacted]. Alyea report 8:25; 9:5.

Dr. Alyea's analysis, his methodology, is certainly reliable enough to permit a jury to weigh its reasonableness. Monsanto can explore its issues with Dr. Alyea's opinions and their bases on cross-examination more appropriately than through exclusion.

C. Dr. Alyea Properly Addressed Ruben Hernandez's [redacted].

Finally, Monsanto argues that Dr. Alyea improperly ruled out Ruben Hernandez's [redacted]. Again, Monsanto is greatly misstating the facts presented in this case.

Dr. Alyea testified at his deposition that he recalled [redacted] first being discussed in Mr. Hernandez's case in [redacted] (Alyea Dep. 144:5-7) and that Mr. Hernandez was treated for [redacted] with [redacted] with a [redacted] in [redacted]. Alyea Dep. 144:14-16. [redacted]. Alyea report 8:12-13. "**Active** [redacted] is a risk factor for the development of non-Hodgkin's lymphoma consistent with prior treatment." (*emphasis added*). Alyea report 5:21-22. Dr. Alyea cites published studies to support this position.

Dr. Alyea further states in his report that "Studies have demonstrated that early treatment for [redacted] reduces the risk for non-Hodgkin's lymphoma." Alyea report 6:3-4.

The majority of Mr. Hernandez's [redacted] are within the normal range. Alyea report 8:13-14**.** That early treatment for [redacted] reduces the risk for non-Hodgkin's lymphoma is supported by published studies. Alyea report 8:16-17.

Dr. Alyea concludes that [redacted] is a less likely etiology of Mr. Hernandez's NHL. Alyea report 8:17-18.

Dr. Alyea's analysis is not a minimization of the impact of [redacted]. In fact it is the opposite - a thorough analysis in which Dr. Alyea follows a reliable methodology wholly consistent with *Daubert* and its 9th Circuit progeny, and utilized his medical judgment, to reach a reasoned conclusion.

Monsanto also completely mischaracterizes the testimony of Dr. Alyea regarding whether Mr. Hernandez was diagnosed with [redacted]. When asked directly if Mr. Hernandez had a diagnosis of [redacted], Dr. Alyea's answer was:

Q. Now, Mr. Hernandez also had a diagnosis of [redacted]; is that right?

A. By the medical record, there is mention of [redacted]. As I sit here today, in the earliest records I reviewed, I -- as I review the records, I look for supporting evidence, such as examination of the [redacted] or radiologic exams. At the time, in the [redacted], I do not recall there being radiologic evidence, although subsequently, there was a [redacted] that did suggest that.

Q. Suggested [redacted]?

A. Suggested [redacted].

Alyea Dep 147:5-16. Subsequent questions by Monsanto on the subject of [redacted] unfairly assumed Mr. Hernandez was diagnosed with [redacted], but clearly from his testimony, Dr. Alyea

disagreed. Dr. Alyea only saw one scan that "suggested" [redacted]. Furthermore, in his report, Dr. Alyea cites Mr. Hernandez as having a history of [redacted] "by report", (Dr. Alyea report, 4:2, 5-1 also suggesting that Dr. Alyea saw nothing conclusive in Mr. Hernandez's medical records to support a definitive diagnosis of [redacted].

It is not the opinion of Dr. Alyea that Mr. Hernandez suffers from [redacted]. Most importantly, Dr. Alyea clearly was aware of the possibility that Mr. Hernandez had [redacted] and considered it and still his opinion is that [redacted] is a less likely etiology of Mr. Hernandez's NHL.

D. <u>Dr. Alyea Properly Considered the Role of Idiopathic Causal Factors in Mr. Hernandez's Case.</u>

Monsanto claims that the experts presented in the Wave I cases take a dismissive approach to the possibility of unknown causes. This is not true in the case of Dr. Alyea. Dr. Alyea acknowledged that, "Patients can develop NHL without any of the currently recognized risk factors for the disease. Therefore, the etiology of NHL in these cases is unknown. If a patient has recognized risk factor and develops lymphoma the etiology of the lymphoma is often assumed to be related to the risk factor identified." Alyea report 9:7-9.

Per *Wendell*, the 9th Circuit does do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause "be a substantial causative factor." This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy.

**III. Conclusion**

This Court should deny Monsanto's motion in opposition to the admission of Dr. Alyea's opinions under *Daubert.* Dr. Alyea applied a proper methodology correctly to arrive at his opinions, rendering Monsanto's objections to his opinions without factual basis and incorrect. Here, Dr. Alyea identified confounding factors presented in the medical records of Ruben Hernandez. He concluded that these other possible causes of non-Hodgkin's lymphoma were less likely etiologies of Mr. Hernandez's NHL using sound methodologies and reached his opinions using his education, training and experience, and the studies relied on by the general causation experts. Dr. Alyea ultimately concluded that, to a reasonable degree of medical certainty, "Ruben Hernandez's exposure to glyphosate/Roundup is a substantial factor contributing to the development of his lymphoma." Alyea report 9:15-16.

Dr. Alyea's analysis is what is required under *Daubert* and *Wendell.* Therefore, Monsanto's Motion to Exclude Testimony of Specific Causation Expert Edwin Alyea on *Daubert* grounds should be denied.

Dated this 10th day of December, 2019.

Respectfully Submitted,

*/s/ Deborah S. Kerr*

Deborah S. Kerr
John E Osborne
David J. Diamond
Goldberg & Osborne LLP
698 E. Wetmore Road, Suite 200
Tucson, AZ 85705
Tel: (520) 620-3975
Fax: (520) 620-3991
josborne@goldbergandosborne.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Deborah S. Kerr, hereby certify that on December 10, 2019, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Deborah S. Kerr*
Deborah S. Kerr