**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Armando Vargas Chavez v. Monsanto Co., et al.*, 3:18-cv-04855 | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| | Hearing dates: Time: |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on ____, 2019, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

- 1 -

CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion for Summary Judgment.

DATED:  November 20, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

## INTRODUCTION

Plaintiff Armando Vargas Chavez has failed to meet his burden on one of the most important elements of his case: he has not been able to identify a specific causation expert willing to testify that Roundup exposure caused his unique form of leukemia. This failure is fatal to his case as this Court has made clear he "must present at least one admissible expert opinion to support [his] specific causation argument." *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). This omission means he cannot prove causation using expert testimony as required by California law, he cannot establish that his exposure levels were sufficiently high, and he cannot establish that his cancer was not idiopathic or caused by some other risk factor. Mr. Chavez cannot fill in these gaps in his case using the testimony of the general causation experts or his treating physician, none of whom have conducted an individualized scientific inquiry into Mr. Chavez's circumstances or his other risk factors. The Court has put in place an orderly process for handling the hundreds of cases still pending in this MDL, and Mr. Chavez has been given ample opportunity to come forward with evidence to support his claims. Having failed to do so under the Court's procedures, the Court must enter summary judgment in Mr. Chavez's case.

## BACKGROUND

Mr. Chavez is ■ years old and lives in Oxnard, California. Ex. 1, Chavez 7/25/19 Dep. 6:4-5; 11:22-25. In April 2017, Mr. Chavez was diagnosed with hairy cell leukemia, a rare type of leukemia that affects fewer than 800 patients each year in the United States. Ex. 3, Wang Dep. at 56:6-57:13; 26:13-21. Hairy cell leukemia is only sometimes classified as a subtype of non-Hodgkin's lymphoma.[1] *Id.* at 25:22-26:1. Mr. Chavez asserts he was exposed to Roundup while performing maintenance work at Hiji Brothers, a farm near Oxnard, California, from approximately 2004 to 2016. Ex. 1, Chavez 7/25/19 Dep. at 82:19-24; Ex. 9, Pl's Am. Fact Sheet, at 2. One of Mr. Chavez's job responsibilities was periodically spraying weeds with herbicides on the Hiji Brothers' property, including around the perimeter of crop fields. Ex. 1, Chavez 7/25/19 Dep. at 82:23-82:13; 91:18-24. Mr. Chavez wore extensive personal protective equipment while spraying, including a

---

[1] Cancer Treatment Centers of America, *Non-Hodgkin lymphoma types*, available at https://www.cancercenter.com/cancer-types/non-hodgkin-lymphoma/types.

mask, safety glasses, overshoes, rubber gloves, and coveralls. *Id.* at 94:6-14; 97:13-100:7. He also received yearly training from his employer about working with Roundup, which included training on the use of personal protective equipment. *Id.* at 94:15-96:16.

Mr. Chavez originally filed suit in the Superior Court of the State of California for the County of Ventura. Ex. 6, Chavez Compl. Monsanto removed the suit to federal court and the JPML transferred it to this Court for pretrial proceedings as part of the *In Re: Roundup Products Liability Litigation* MDL. As this case originated in California, it is part of the first wave of remand cases. *See* PTO 150.

On October 9, 2019,[2] Mr. Chavez served Monsanto with his plaintiff's specific expert witness designations. Ex. 4, Chavez Expert Witness Designations. Co-lead plaintiffs' counsel for the MDL separately served plaintiffs' general causation expert disclosures on October 4, 2019. Ex. 5, Plaintiffs' General Causation Expert Disclosures. Mr. Chavez designated just two expert witnesses. First, Mr. Chavez disclosed Dr. Hao Wang, his treating oncologist, as a non-retained expert. Ex. 4, Chavez Expert Witness Designations at 3. Dr. Wang has not offered a specific causation opinion. In fact, he has no opinion on the cause of Mr. Chavez's hairy cell leukemia. Second, Mr. Chavez disclosed Jennifer Craigmyle as a retained expert who will testify to his "potential for life care needs and costs associated therewith." *Id.*

The time for designating expert witnesses has passed and Mr. Chavez has failed to disclose a specific causation expert. On those grounds, Monsanto now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). Rule 56 requires the nonmoving party to "go beyond the pleadings" in showing a material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It requires the nonmoving party to use "affidavits, . . . 'depositions, answers to

---

[2] Mr. Chavez's designations were late. Pursuant to PTO 171, plaintiffs in Wave 1 had until October 4, 2019, to serve their expert reports.

interrogatories, and admissions on file,'" to "'show[] that there is a genuine issue for trial.'" *Id.* Where expert testimony is required to establish a material fact, Rule 56 requires the nonmoving party to specifically identify the admissible expert testimony that will establish that fact. *See Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 985 (C.D. Cal. 1996); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 608 (9th Cir. 2002).

## ARGUMENT

### I. Plaintiff's Failure to Disclose a Specific Causation Expert is Fatal to His Case.

In California, plaintiffs bear the burden of proving "specific causation" in toxic tort cases—i.e. "that the substance [at issue] caused, or was a substantial factor in causing, the specific plaintiff's injury." *Avila v. Willits Env't Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). California law also dictates that plaintiffs must prove causation "within a reasonable medical probability" and that they must do so through "competent expert testimony.'" *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1061 (N.D. Cal. 2015) (quoting *Jones v. Ortho Pharm. Corp.*, 209 Cal. Rptr. 456 (Cal. Ct. App. 1985)). "Because plaintiffs bear the ultimate burden of proof on causation," a defendant is not "required to produce any evidence at all" to succeed on a motion for summary judgment; rather, a defendant need only point to a plaintiff's lack of evidence regarding causation. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

As a threshold matter, Mr. Chavez has not been able to come forward with a specific causation expert. Accordingly, Mr. Chavez has failed to meet the requirement of establishing causation through "competent expert testimony," meaning summary judgment is appropriate. *See Sanderson*, 950 F. Supp. at 985 ("It should be emphasized that expert testimony is required to establish causation, since this case involves scientific issues that are 'beyond the experience of laymen.'" (quoting *Jones*, 209 Cal. Rptr. at 461)).

Mr. Chavez's failure to produce a specific causation expert has also left several material facts in this case—on which he carries the burden of proof—entirely unsupported. "In determining whether an alleged chemical exposure caused a particular disease or illness, an expert must establish," among other things, that the plaintiff was "exposed to a sufficient amount of the substance in question to elicit the health effect in question" and that the disease was not caused by any "other known causes."

1  *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1156 (E.D. Wash. 2009) (citing David L.
2  Eaton, *Scientific Judgment and Toxic Torts–A Primer in Toxicology for Judges and Lawyers*, 12 J.L.
3  & POL'Y 5, 38–40 (2003)); *see also generally In re Roundup,* 358 F. Supp. 3d 956.  Mr. Chavez has
4  not offered evidence or expert testimony on either of these points.

5  First, Mr. Chavez has not offered any evidence, let alone expert testimony, on whether his exposure to Roundup was sufficient to cause his hairy cell leukemia.  Although Mr. Chavez worked with Roundup periodically over the course of eleven years in his job with Hiji Brothers, Mr. Chavez also wore extensive personal protective gear that he either disposed of or washed after each use.  Ex. 1, Chavez 7/25/19 Dep. at 94:6-14; 97:13-100:7.  He also received training every year from his employer on the proper use of Roundup, including the use of personal protective equipment while mixing and spraying, which minimized his direct exposure.  *Id.* at 94:15-96:16.  In fact, Mr. Chavez had direct contact with Roundup on only a few occasions during his time with Hiji Brothers.  *See id.* at 100:14-110:12.  Mr. Chavez has not offered an expert who has assessed his exposure levels in combination with the relevant literature and offered the conclusion that his exposure levels were sufficient to support a claim of causation.  Accordingly, he has failed to show there is a genuine dispute of fact regarding whether his hairy cell leukemia could have been caused by Roundup in light of his exposure levels.

Second, Mr. Chavez has not offered expert testimony regarding whether his hairy cell leukemia might have been caused by another known or unknown potential cause.  This Court has already acknowledged that "idiopathy"—"that is, the possibility that a plaintiff's NHL is attributable to an unknown cause"—is one of the "biggest concerns" regarding specific causation in this MDL, as even the plaintiffs' experts agree that the vast majority of NHL cases have no known cause.  *In re Roundup*, 358 F. Supp. 3d at 959.  Moreover, while the cause of NHL usually cannot be determined, doctors and scientists have identified certain risk factors that may increase a person's chances of developing NHL.  Mr. Chavez has several of the risk factors that have been linked to NHL, including ███████████████████████.[3]  Ex. 1, Chavez 7/25/19 Dep. at 6:4-5; Ex. 2, Chavez 9/19/19

---

[3] ███████████████████████████████████████████████████████████████████████████████████████

*(Footnote continued)*

- 4 -
MONSANTO'S MOTION FOR SUMMARY JUDGMENT
3:18-CV-04855-VC

1  Dep. at 178:14-19; Ex. 7, Burstein Dep. at 38:19-21.  Notwithstanding these known risk factors, Mr.
2  Chavez has not offered any expert testimony assessing these factors, and concluding with a degree of
3  medical certainty that Roundup caused his disease and not ▮▮▮▮▮▮▮▮▮▮ or some other,
4  unknown factor.  Thus, Mr. Chavez has not presented, as this Court has made clear is required, expert
5  testimony that "differentiate[s] Roundup users who developed NHL because they used the product
6  from Roundup users who would have developed NHL regardless" and that soundly concludes "that
7  [he] falls into the category of people whose NHL was caused by glyphosate." *In re Roundup*, 358 F.
8  Supp. 3d at 959.  Mr. Chavez's claims cannot survive summary judgment in the absence of this
9  necessary assessment.

10  Mr. Chavez cannot fill these gaps in his case with testimony from any of his other experts.
11  First, Mr. Chavez also cannot rely on his treating oncologist, Dr. Wang, to establish specific causation.
12  Dr. Wang did not know until his deposition on October 28, 2019, that Mr. Chavez alleges that
13  Roundup caused his hairy cell leukemia.  Ex. 3, Wang Dep. at 5:20-24.  At that deposition, Dr. Wang
14  testified that he has not "come to any conclusion about the causes of hairy cell leukemia" in general
15  or the cause of Mr. Chavez's hairy cell leukemia in particular.  *Id.* at 16:11-14.  Indeed, Dr. Wang
16  would not reach such conclusions because determining the cause of cancer is "outside the scope of
17  [his] practice area and expertise."  *Id.* at 16:15-17.  Moreover, Dr. Wang's general understanding,
18  consistent with the literature, is that the cause of NHL and hairy cell leukemia is unknown in most
19  cases.  *Id.* at 32:11-14, 48:3-9.  Accordingly, he has never told any patient, much less Mr. Chavez,
20  that anything in particular caused their NHL, including glyphosate or Roundup.  *Id.* at 32:15-25.  In
21  short, Dr. Wang has conducted no assessment of the cause of Mr. Chavez's cancer and has taken no
22  position on the cause of his cancer.

23  In the *Hardeman* trial, this Court excluded testimony from plaintiff's treating physicians who,
24  like Dr. Wang, "didn't inquire into the cause of [plaintiff's] NHL" and did "not offer[] any opinion
25  on the cause of [plaintiff's] NHL."  Ex. 8, *Hardeman* Tr. Vol. 3 at 310:6-315:15.  The Court must do
26  so again here.  *See Henricksen*, 605 F. Supp. 2d at 1160 (treating physician could not testify to cause

of plaintiff's illness under *Daubert* because treater conceded that he was not "rendering a 'scientific opinion' and that he did not consult any literature before" reaching his opinion regarding the cause of plaintiff's illness).

Second, Mr. Chavez cannot rely on general causation experts to fulfill his evidentiary burden. The Ninth Circuit has long recognized that in toxic tort cases "generalized proofs will not suffice to prove individual damages." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1135 (9th Cir. 2002) (citation omitted). This case is no exception. The Court has made clear that specific causation is a separate and distinct element from general causation and that "it is not enough" for any plaintiff "to show that glyphosate can cause NHL when people are exposed to the *highest dose* people might plausibly experience," when specific causation demands that each plaintiff show causation at the "particular level of exposure" they experienced. *In re Roundup Liab. Litig.*, 390 F. Supp. 3d 1102, 1113 (N.D. Cal. 2018) (emphasis added). Moreover, to allow Mr. Chavez, or any other plaintiff, to get to trial using general causation experts alone would render meaningless the months of expert discovery, the four court days devoted to *Daubert* on specific causation, and the extensive briefing and oral argument on specific causation the parties engaged in leading up to the *Hardeman* trial.

Establishing specific causation requires "a diagnostic opinion" as to what caused a "particular plaintiff's" injury. *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 907 (C.D. Cal. 2004). This is a highly individualized inquiry. None of the wave one general causation experts have been qualified as a specific causation expert in this case or have offered an individualized assessment of the cause of Mr. Chavez's hairy cell leukemia, such as a differential diagnosis. Accordingly, none of these experts may testify about specific causation in this case. *Id.* (concluding that expert who was qualified only on general causation issues could not "opine on specific causation"); *Avila*, 633 F.3d at 838 (expert could not testify to specific causation where there was "[m]issing evidence of exposure" and expert did not actually conduct the individualized assessment of each plaintiff "in the differential diagnosis process that his report said he would").

**II.    The Court Should Not Grant Plaintiff Leave to Find and Disclose a Specific Causation Expert.**

This Court entered an order requiring all wave one plaintiffs to designate their experts by

October 4, 2019. PTO 171. That deadline has come and gone and Mr. Chavez has not been able to identify a specific causation expert. "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotation marks and citations omitted). "Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* Adherence to the scheduling order is particularly important in this MDL, where the Court, and the parties, have hundreds of cases to manage, and where it is an essential goal of the process to weed out cases which cannot proceed on the merits. Granting Mr. Chavez leave to supplement his case would give each plaintiff in this MDL permission to flout the Court's well-considered procedure for processing the remaining cases in an orderly and efficient fashion. In service of judicial economy and efficiency, the Court is considering all California cases at the same time because they are all governed by the same state law. This Court should neither hold up all California cases or place Mr. Chavez's case on its own track. In light of these considerations and the fact that Mr. Chavez has failed to prove up his case, the Court must enter summary judgment in Monsanto's favor.

## CONCLUSION

For the reasons stated above, the Court should grant Monsanto's motion for summary judgment and enter judgment in Monsanto's favor.

DATED: November 20, 2019

Respectfully submitted,

*/s/ Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff