1

2

3

4

5

6

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

7

8

9

10

11

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

12

13

*Attorneys for Defendant*
*MONSANTO COMPANY*

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA

16

17

18

19

20

21

22

23

24

25

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

_____

*Janzen v. Monsanto Co.*
3:19-cv-04103-VC
*Dickey v. Monsanto Co.*
3:19-cv-04102-VC
*Domina, et al. v. Monsanto Co.*
3:19-cv-05887-VC
*Pollard v. Monsanto Co.*
3:19-cv-04100-VC

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MDL No. 2741

Case No. 3:16-md-02741-VC

**MONSANTO COMPANY'S NOTICE OF**
**MOTION AND MOTION TO EXCLUDE**
**THE TESTIMONY OF DR. KEVIN**
**PALKA ON *DAUBERT* GROUNDS**

Hearing date:    January 29, 2020

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 29, 2020, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its *Daubert* Motion to Exclude the Testimony of Dr. Kevin Palka. Monsanto seeks an order excluding the specific cause opinions of this expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

DATED: November 26, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    Dr. Palka Did Not Consider Plaintiffs' Individual Characteristics Or
    Occupational Histories. ............................................................................... 2

    B.    Dr. Palka Dismissed Numerous Risk Factors And Pointed To Roundup®
    Based On The IARC Monograph. ............................................................... 3

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.    Dr. Palka's Purported "Differential Diagnosis" Is Not A Reliable Methodology
    Because It Neither Rules In Nor Rules Out All Possible Causes. ........................... 5

    A.    Dr. Palka Did Not Rule In All Possible Causes Of Plaintiffs' NHL....................... 6

        1.    Dr. Palka Did Not Consider Plaintiffs' Exposures To Numerous
        Other Pesticides Because His "Focus Was On Roundup." ......................... 6

        2.    Dr. Palka Did Not Consider Whether Plaintiffs Were Exposed To
        Solvents Like Diesel Fuel Despite Opining In Another Case That
        Exposure To Diesel Fuel Causes NHL. ....................................................... 8

    B.    Dr. Palka Did Not Reliably Rule Out Plaintiffs' Risk Factors. ................................ 9

        1.    Dr. Palka Did Not Consider, Much Less Rule Out, Many Of
        Plaintiffs' Individual Risk Factors. ............................................................. 9

        2.    Dr. Palka Offered No Reliable Basis For Ruling Out Unknown
        Causes. ...................................................................................................... 11

II.    Dr. Palka Relies Primarily On The IARC Monograph For His Opinions, Which Is
    Not A Proper Basis For A Specific Causation Opinion. ..................................... 12

CONCLUSION ...................................................................................................... 14

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*In re Aredia & Zometa Prod. Liab. Litig.,*
   483 F. App'x 182 (6th Cir. 2012) ........................................................... 4

*Best v. Lowe's Home Centers, Inc.,*
   536 F.3d 171 (6th Cir. 2009) ............................................................... 11

*Brown v. Burlington N. Santa Fe Ry. Co.,*
   765 F.3d 765 (7th Cir. 1996) ................................................................. 5

*Carlson v. Okerstrom,*
   675 N.W.2d 397, 267 Neb. 397 (Neb. 2004) ...................................... 11

*Chapman v. Proctor & Gamble Distrib., LLC,*
   766 F.3d 1296 (11th Cir. 2014) ............................................................. 5

*Claar v. Burlington N. R.R. Co.,*
   29 F.3d 499 (9th Cir. 1994) ................................................................... 9

*Clausen v. M/V New Carissa,*
   339 F.3d 1049 (9th Cir. 2003) ................................................... 5, 7, 8, 9

*Cooper v. Smith & Nephew,*
   259 F.3d 194 (4th Cir. 2001) ................................................................. 5

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ................................................................. 2, 4, 5, 11

*Doe v. Ortho-Clinical Diagnostics, Inc.,*
   440 F. Supp. 2d 465 (M.D.N.C. 2006) ................................................ 11

*Guinn v. Astrazeneca Pharms. LP,*
   602 F.3d 1245 (11th Cir. 2010) ............................................................. 5

*Kilpatrick v. Breg, Inc.,*
   613 F.3d 1329 (11th Cir. 2010) ............................................................. 5

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999) ............................................................................... 4

*In re Lipitor Mktg.,*
   892 F.3d 624 (4th Cir. 2018) ................................................................. 5

*McClain v. Metabolife Int'l, Inc.,*
   401 F.3d 1233 (11th Cir. 2005) ............................................................. 4

US 167133226v6

*Perry v. Novartis Pharm. Corp.*,
   564 F. Supp. 2d 452 (E.D. Pa. 2008) ......................................................................... 11

*Poust v. Huntleigh Healthcare*,
   998 F. Supp. 478 (D.N.J. 1998) ............................................................................ 4, 5

*In re Roundup Prods. Liab. Litig*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019) .............................................................. 1, 11, 14

*In re Roundup Prods. Liab. Litig.*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019) ......................................................................... 5

*In re Roundup Prods. Liab. Litig.*,
   390 F. Supp. 3d 1102 (N.D. Cal. 2018) ..................................................................... 12

*Sims v. Kia Motors of Am., Inc.*,
   839 F.3d 393 (5th Cir. 2016) ......................................................................................... 5

*Soldo v. Sandoz Pharm. Corp.*,
   244 F. Supp. 2d 434 (W.D. Pa. 2003) ........................................................................... 4

*Tamraz v. Lincoln Elec. Co.*,
   620 F.3d 665 (6th Cir. 2010) ................................................................................... 5, 11

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ....................................................................................................... 4

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ..................................................................................... 11

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................ 4

US 167133226v6

## INTRODUCTION

Plaintiffs Royce Janzen, Robert Dickey, Larry Domina, and Frank Pollard must present reliable expert evidence that Roundup® specifically caused their non-Hodgkin's lymphoma (NHL). They have offered Dr. Kevin Palka—an oncologist who professes to perform a differential diagnosis—to meet that requirement. This Court has previously ruled on the admissibility of specific causation opinions in this MDL, concluding that the specific causation opinions in the *Hardeman* case "barely inched over the line." *In re Roundup Prods. Liab. Litig*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). Because Dr. Palka's opinions are far less rigorous than those that in the Court's view barely passed muster in *Hardeman*, they should be excluded.

Dr. Palka's methodology is a differential diagnosis in name only. Dr. Palka did not rule in all possible causes—including Plaintiffs' exposure to other pesticides and solvents such as diesel fuel. He did not interview Plaintiffs or read their depositions to assess their individual exposure histories because his "focus was on Roundup." This stark admission underscores that Dr. Palka did not follow a reliable methodology. Rather, Dr. Palka's deliberate decision to put blinders on to possible causes other than Roundup® is the epitome of an outcome-driven conclusion. Likewise, Dr. Palka did not rule out Plaintiffs' individual risk factors, admitting that he does not know and did not research whether factors such as body mass index, age, or gender are associated with NHL. He dismissed Plaintiffs' personal and family history of cancer in a similar cursory fashion. Nor did he offer any basis for dismissing idiopathy for each Plaintiff. And of course he did not rule out risk factors that he never ruled in, such as exposure to other pesticides. These failures are sufficient on their own to compel exclusion of Dr. Palka's testimony.

Indeed, Dr. Palka's testimony makes clear that he reached specific causation opinions not by evaluating each Plaintiffs' individual circumstances, but instead by relying primarily on the IARC Monograph. As this Court's earlier rulings make clear, the IARC Monograph is not a sufficient basis for supporting a general causation opinion, much less a specific causation opinion. Moreover, the lack of scientific rigor in Dr. Palka's opinions is underscored by his unfamiliarity with even the basic information about the science on which he purports to rely. For example, despite professing to rely

on the IARC Monograph, he could not explain its methodology.  In short, there is nothing "specific" about Dr. Palka's causation opinions, which do not consider Plaintiffs' individual risk factors and rely primarily on IARC's hazard assessment, with which he is not even familiar.  The Court should exclude his specific causation opinions.[1]

## BACKGROUND

Dr. Palka followed the same methodology in reaching his opinions about the cause of each of the four Plaintiffs' NHL.  *See* Ex. 1, Palka *Pollard* Dep. at 5:10-20; Ex. 2, Palka *Dickey* Dep. at 5:23-6:4; *id.* at 44:6-15; Ex. 3, Palka *Domina* Dep. at 6:5-13.  That methodology, which he calls a differential diagnosis, is described below.

### A.     Dr. Palka Did Not Consider Plaintiffs' Individual Characteristics Or Occupational Histories.

Dr. Palka began by reviewing an "exposure summary" given to him by Plaintiffs' counsel that described Plaintiffs' Roundup® use.  *See* Ex. 1, Palka *Pollard* Dep. at 25:7-13; *id.* at 31:6-11.  In reviewing that information, he did not analyze how any of the Plaintiffs used the product or whether they used any protective equipment.  *See* Ex. 4, Palka *Janzen* Dep. at 112:7-22; *id.* at 115:15-19; *id.* at 197:6-13; Ex. 2, Palka *Dickey* Dep. at 35:14-37:4.  He concluded that each Plaintiff had a "significant" exposure to Roundup®, though that conclusion was not "tied to any scientific literature" that he could cite.  *See* Ex. 4, Palka *Janzen* Dep. at 190:7-22; *see also* Ex. 1, Palka *Pollard* Dep. at

---

[1] Monsanto also moves to exclude, under *Daubert*, Dr. Palka's specific causation opinions on the grounds that he failed to reliably rule in Roundup® as a cause of each Plaintiffs' NHL because he improperly relied on a small subset of flawed studies that do not establish a sufficient high odds ratio to be relevant.  Consistent with the Court's direction not to relitigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Monsanto hereby incorporates the following pleadings that were filed on the MDL docket addressing this issue: Monsanto's Motion to Exclude the Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr. Denis Weisenburger on *Daubert* Grounds (ECF No. 2420); Monsanto's Reply in Support of Motion To Exclude Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr. Dennis Weisenburger on *Daubert* Grounds (ECF No. 2525); the transcript of the February 13, 2019, hearing (ECF No. 2763); Monsanto's Motion for Directed Verdict (ECF No. 2975); Monsanto's Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 3976); Monsanto's Reply in Support of Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 4301).  Monsanto also incorporates the developing science on glyphosate.  By incorporating by reference its prior filings, Monsanto is in no way waiving any of the arguments raised therein.

28:17-29:1.   And, unlike other Plaintiffs' experts, he did not speak with Plaintiffs, review their depositions, or meet with them to conduct a physical examination.  *Compare* Ex. 5, Weisenburger *Hardeman* Dep. at 12:15-20 (reviewed Mr. Hardeman's deposition); *id.* at 27:2-14 (interviewed Mr. Hardeman for about an hour); Ex. 6, Nabhan *Hardeman* Rep. at 8-9 (met with Mr. Hardeman and performed a physical examination) *with infra* at 6-7.   Notably, Dr. Palka only reviewed each Plaintiff's Roundup® exposure; he did not review (or have any information about) Plaintiffs' other exposures, including:

**_Exposure to other pesticides:_**  Each of the four Plaintiffs has a history of exposure to other pesticides and herbicides.  For example, Mr. Pollard reported that he used twenty-one different herbicides (other than Roundup®) starting in the early 1990s.  *See* Ex. 1, Palka *Pollard* Dep. at 19:10-25:2.  Specifically, he reported regular use of five of those herbicides during the months of April through July from 2000 until 2010, and use of sixteen others "frequently" from 1992 until 2017.  *Id.* Similarly, Mr. Dickey reported that he used a variety of herbicides other than Roundup®: three from 2000 until 2010, five others between 1992 and 2017, and eight more at unspecific times.  *See* Ex. 2, Palka *Dickey* Dep. at 27:5-33:20.  He also reported using insecticides on his farm from 1963 until 2003.  *Id.* at 33:21-23.  Likewise, Mr. Domina reported using seven different herbicides on his crops. *See* Ex. 3, Palka *Domina* Dep. at 19:15-28:5.  Finally, Mr. Janzen also reported using a number of other herbicides and pesticides.  *See* Ex. 7, Dep. of Royce Janzen at 38:5-41:25.

**_Exposure to solvents and diesel fuel_**:  Some of the Plaintiffs also reported exposure to solvents such as gasoline and diesel fuel.  For example, Mr. Dickey testified that he fueled various types of farm equipment from tanks located on his property for four decades—from 1963 until 2003.  *See* Ex. 8, Dep. of Robert Dickey at 74:16-23.  Mr. Pollard also reported exposure to gasoline and other types of fuel.  *See* Ex. 1, Palka *Pollard* Dep. at 25:3-6.  In another case, Dr. Palka has opined that diesel exposure caused NHL.  *See infra* at 8.

**B.    Dr. Palka Dismissed Numerous Risk Factors And Pointed To Roundup® Based On The IARC Monograph.**

Dr. Palka's methodology begins and ends with assessing Roundup® exposure.  For example, in addition to failing to consider Plaintiffs' exposures to other pesticides or solvents, he admitted that

- 3 -

1   he did not consider, and therefore could not rule out, Plaintiffs' body mass index, age, or gender as

2   potential causes.  *See infra* at 9-10.  Nor did he consider as part of his differential diagnosis Plaintiffs'

3   personal and family histories of cancer.  *See infra* at 10.  Additionally, despite most cases of NHL

4   having no identifiable cause (*i.e.*, they are idiopathic), Dr. Palka summarily dismissed the possibility

5   of an idiopathic cause for each of the Plaintiffs (and presumably for any plaintiff who meets his

6   subjective definition of "significant" exposure).  *See infra* at 11.  He ultimately testified that the main

7   source of his opinion was the IARC Monograph.  *See infra* at 12-13.

8   ## LEGAL STANDARD

9    Under *Daubert* and Federal Rule of Evidence 702, an expert may give opinion testimony only

10   if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to

11   understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts

12   or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has

13   reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also*

14   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

15    *Daubert* created "exacting standards of reliability," *Weisgram v. Marley Co.*, 528 U.S. 440,

16   455 (2000), which require far "more than subjective belief or unsupported speculation," *Daubert*, 509

17   U.S. at 590.  *Daubert*'s objective "is to make certain that an expert . . . employs in the courtroom the

18   same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

19   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Thus, "in determining whether

20   proposed expert testimony amounts to good science, [the court] may not ignore the fact that a

21   scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."

22   *Daubert*, 43 F.3d at 1317.

23    In the specific causation context, *Daubert* requires experts purporting to use a differential

24   diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and then

25   "ruling out" all but the subject exposure—in a reliable fashion.  To reach an admissible causation

26   opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of

27   the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re*

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

*Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012); *see also Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("[a]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient."); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 551 (W.D. Pa. 2003) ("the mere statement by an expert that he or she applied differential diagnosis in determining causation does not *ipso facto* make that application scientifically reliable or admissible.").   Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust*, 998 F. Supp. at 496.  Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded.  *See, e.g.*, *in re Lipitor (Atorvastatin Calcium) Mtkg., Sales Prac. & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018).[2]

## ARGUMENT

I.     **Dr. Palka's Purported "Differential Diagnosis" Is Not A Reliable Methodology Because It Neither Rules In Nor Rules Out All Possible Causes.**

Dr. Palka's methodology is a differential diagnosis in name only—he purports to identify Roundup® as the cause of Plaintiffs' NHL without even attempting to obtain all of the relevant information that would allow him to rule in all possible causes, much less rule them out.  *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010) ("[S]imply claiming that an expert used the 'differential diagnosis' method is not some incantation that opens the *Daubert* gate." (citation and quotations omitted)).  Because Dr. Palka's methodology is deficient at both the ruling in and ruling out stage, his specific causation opinions should be excluded.

---

[2] *See also, e.g.*, *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 401–02 (5th Cir. 2016); *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1309 (11th Cir. 2014); *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342–43 (11th Cir. 2010); *Cooper v. Smith & Nephew*, 259 F.3d 194, 200 (4th Cir. 2001); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773–74 (7th Cir. 1996).

US 167133226v6

### A.   Dr. Palka Did Not Rule In All Possible Causes Of Plaintiffs' NHL.

A reliable differential diagnosis must rule in "all potential causes of a disease." *In re Roundup*, 358 F. Supp. 3d at 938. "[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may . . . be unreliable." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003). That is precisely the case here—despite Plaintiffs' documented histories of exposure to a variety of different pesticides and solvents, Dr. Palka did not consider any of those exposures as part of his differential diagnosis and instead focused entirely on Roundup®. This type of pre-determined methodology is not consistent with the requirements for admissibility of scientific testimony under *Daubert* and requires exclusion of Dr. Palka's testimony.

#### 1.   Dr. Palka Did Not Consider Plaintiffs' Exposures To Numerous Other Pesticides Because His "Focus Was On Roundup."

Dr. Palka agrees that pesticide exposure is a risk factor for NHL. *See* Ex 4, Palka *Janzen* Dep. at 30:15-17 ("Q: Pesticides are a risk factor for non-Hodgkin's lymphoma, correct? A: Correct."). He also agrees that a plaintiff "could have developed non-Hodgkin's lymphoma because of another pesticide." *Id.* at 157:8-11.

Despite those admissions, Dr. Palka admits that he did not consider Plaintiffs' exposure to other pesticides as part of his differential diagnosis for any of the Plaintiffs. *Id.* at 30:18-21 ("Q: You did not determine, as part of your methodology, whether Mr. Janzen had exposure to other pesticides, correct? A: No. My focus was on Roundup."); *id.* at 27:2-15 (conceding that he did not know if Mr. Janzen was exposed to other pesticides); *id.* at 28:3-22 (same); Ex. 1, Palka *Pollard* Dep. at 19:4-9 (stating that he did not consider the use of other pesticides as part of his differential diagnosis for Mr. Pollard); *id.* at 21:16-19 (same); Ex. 3, Palka *Domina* Dep. at 43:9-16 (admitting that he did not take into consideration Mr. Domina's use of other pesticides); Ex. 2, Palka *Dickey* Dep. at 27:2-4 ("Q: Is it true that you did not consider Mr. Dickey's use of other pesticides in your differential diagnosis? A: Correct.").

Indeed, Dr. Palka could not have ruled in exposure to other pesticides for the Plaintiffs because he did not obtain information about any such exposures. Instead, Dr. Palka relied exclusively on an "exposure summary" that Plaintiffs' attorneys provided to him that only included Roundup®, not any

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

other chemicals.  *See* Ex. 1, Palka *Pollard* Dep. at 25:7-13; *id.* at 31:6-11 ("Q: The exposure history is the only document that you've seen with respect to Mr. Pollard specifically that you feel indicates that Roundup caused his cancer? . . . A: Correct.").  Dr. Palka did not examine or interview Plaintiffs.  *See* Ex. 4, Palka *Janzen* Dep. at 109:11-110:12;  Ex. 1, Palka *Pollard* Dep. at 8:8-11; Ex. 2, Palka *Dickey* Dep. at 8:15-18; Ex. 3, Palka *Domina* Dep. at 7:23-8:1.   Nor did he review Plaintiffs' depositions.  *See, e.g.*, Ex. 4, Palka *Janzen* Dep. at 56:16-22;  Ex. 1 Palka *Pollard* Dep. at 24:19-21.  As such, Dr. Palka admitted that did not know what other pesticides Plaintiffs used, *see, e.g.* Ex. 1, Palka *Pollard* Dep. at 19:4-25:2; the chemical compositions of any such pesticides, *id.*; or whether there is any literature studying possible associations with other pesticides that the Plaintiffs used and NHL, *id.*

Dr. Palka was clear about his reason for not considering other pesticides as part of his methodology:  "My focus was on Roundup."  Ex. 4, Palka *Janzen* Dep. at 30:18-21.  When asked whether he knew if other pesticides have associations with NHL, his response was the same:  "[T]he focus of my review was Roundup and non-Hodgkin's lymphoma.  So that's what my opinion is based on."  *Id.* at 28:13-19.  In fact, when asked whether he would still point to Roundup® as the cause if one of the Plaintiffs had been exposed to another pesticide for more days than Roundup®, he said that he would, because "we have data on glyphosate linked to non-Hodgkin's lymphoma, and I currently don't have any information linking any of these [other] products with non-Hodgkin's lymphoma."  Ex. 1, Palka *Pollard* Dep. at 57:8-58:9.  But of course the reason he did not have information on other pesticides is that he did not look for it.  *See, e.g. id.*; *see also id.* at 19:4-25:2 (testifying that he was unfamiliar with any literature studying an association between other pesticides and NHL).  That sort of tunnel vision—which looks only to one agent while remaining blind to other possible causes—is the hallmark of an unreliable methodology.  *See Clausen*, 339 F.3d at 1058 ("[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may . . . be unreliable.").

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

2.    **Dr. Palka Did Not Consider Whether Plaintiffs Were Exposed To Solvents Like Diesel Fuel Despite Opining In Another Case That Exposure To Diesel Fuel Causes NHL.**

Dr. Palka's tunnel vision for Roundup® is also highlighted in his treatment of Mr. Pollard's and Mr. Dickey's exposure to solvents such as diesel fuel. Unlike his experience with pesticides, Dr. Palka claims to have studied the association between diesel fuel and NHL. Specifically, Dr. Palka testified that he has been retained as an expert in another case in which he opines that a railway engineer's exposure to diesel fuel caused his NHL. *See* Ex. 2, Palka *Dickey* Dep. at 48:15-49:8; *id.* at 61:21-66:1.

Despite offering that opinion in another case, Dr. Palka testified that he did not consider whether Plaintiffs in this case were exposed to any solvents, gasoline, or diesel fuel as part of his differential diagnosis. *See* Ex. 4, Palka *Janzen* Dep. at 98:24-99:3 ("[Y]ou didn't, as part of your differential diagnosis, consider whether Mr. Janzen was exposed to solvents? A: No. The information I reviewed was . . . not on exposure to solvents."); *id.* at 100:6-9 (same); Ex. 1, Palka *Pollard* Dep. at 25:3-6 ("Q: Did you consider Mr. Pollard's use of or exposure to gasoline or other types of fuels in forming your opinion in this case? A: I did not."); Ex. 2, Palka *Dickey* Dep. at 34:2-8 ("Q: Are you aware that Mr. Dickey testified that he was exposed to gasoline and diesel fuel when he filled equipment on his farm? A: I was not aware of that. Q: Did you consider this in forming your opinions in this case? A: I did not."). Indeed, when asked whether solvents are a risk factor for NHL, he responded, "I don't know." *See* Ex. 4, Palka *Janzen* Dep. at 98:14-22. Nor did he do an independent literature search on gasoline or fuels for this case. Ex. 2, Palka *Dickey* Dep. at 61:21-66:1.

Dr. Palka did not offer any cogent reason for failing to consider solvents as part of his differential diagnosis. Although Dr. Palka noted that the railway engineer in his other case had "very high exposure to diesel exhaust," *id.* at 61:21-63:20, Dr. Palka also admitted that he did not do any study here to compare the amount of exposure a railway engineer might have to that of a farmer like Mr. Dickey who filled equipment from a tank on his property, *id.* 49:9-19. He also conceded that he does not have a threshold level of fuel exposure necessary to cause NHL. *Id.* at 65:1-4. In short, despite having been retained to testify in another case that exposure to diesel fuel caused a plaintiff's

NHL, he did not consider diesel fuel as part of his differential diagnosis in this case. As with his failure to consider other pesticides, Dr. Palka's failure to consider solvents shows that his methodology is results-driven, unreliable, and should be excluded. *See Clausen*, 339 F.3d at 1058.[3]

### B. Dr. Palka Did Not Reliably Rule Out Plaintiffs' Risk Factors.

Dr. Palka's methodology also fails at the second differential diagnosis step because he did not consider and therefore could not rule out many of Plaintiffs' individual risk factors. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Here, Dr. Palka provided *no reasons* for ruling out may of Plaintiffs' individual risk factors, instead conceding that he did not consider them.

#### 1. Dr. Palka Did Not Consider, Much Less Rule Out, Many Of Plaintiffs' Individual Risk Factors.

Each of the Plaintiffs has a unique medical history. But here, again, Dr. Palka's tunnel vision is on display—he did not consider many of Plaintiffs' individual risk factors and therefore could not have ruled them out. Initially, as explained above, Dr. Palka did not rule in exposure to other pesticides, solvents, gasoline, or diesel fuel, and therefore could not have ruled them out. *See, e.g*, Ex. 4, Palka *Janzen* Dep. at 30:18-31:2.

Dr. Palka also admitted that he did not know, and did no research to ascertain, whether many of the Plaintiffs' individual characteristics are a risk factor for NHL. For example, he did not know whether body weight is a risk factor, had not reviewed any medical literature on that topic, and did not do an assessment of any Plaintiffs' body mass index to determine whether it was a potential risk factor. *See* Ex. 4, Palka *Janzen* Dep. at 142:12-143:5; Ex. 1, Palka *Pollard* Dep. at 16:20-17:3; Ex. 2, Palka *Dickey* Dep. at 25:13-23; Ex. 3, Palka *Domina* Dep. at 18:9-17. Similarly, he did not review

---

[3] Dr. Palka's differential diagnosis is also unreliable for another reason: he did not properly rule in Roundup®. He did not review any of the general causation reports from Plaintiffs' experts, *see* Ex. 4, Palka *Janzen* Dep. at 75:17-76:5, nor does he purport to adopt them as a basis for his differential diagnosis. As explained below, Dr. Palka's specific causation opinion rests primarily on the IARC Monograph, which is not a proper basis for a general causation opinion.

any medical literature on whether age is a risk factor for NHL and therefore could not rule it out.  *See* Ex. 4, Palka *Janzen* Dep. at 142:12-143:9; Ex. 1, Palka *Pollard* Dep. at 15:9-18; Ex. 2, Palka *Dickey* Dep. at 24:22-25:6; Ex. 3, Palka *Domina* Dep. at 17:19-18:1.  Likewise, he did not review any medical literature on whether gender is a risk factor for NHL and thus could not rule it out.  *See* Ex. 4, Palka *Janzen* Dep. at 142:12-143:9; Ex. 1, Palka *Pollard* Dep. at 15:19-16:8; Ex. 2, Palka *Dickey* Dep. at 25:17-12; Ex. 3, Palka *Domina* Dep. at 18:2-8.

In a similarly cursory fashion, Dr. Palka also brushed aside █████████ ███████████████████████ which has been shown to be a risk factor for NHL.[4]  Dr. Palka testified that he was not sure whether skin cancer is a risk factor for NHL, did not research the issue, and did not consider skin cancer as part of his differential diagnosis.  *See* Ex. 1, Palka *Pollard* Dep. at 17:4-20 ("Q: You testified . . .  that you're not sure if the development of skin cancer is a risk factor for the development of non-Hodgkin's lymphoma, is that right?  A: Correct.  Q: Any you testified . . . that you did not do research into this issue. . . ?  A: Correct."); Ex. 4, Palka *Janzen* Dep. at 145:23-146:10; Ex. 2, Palka *Dickey* Dep. at 25:24-26:8.   Likewise, Dr. Palka did not research whether a family history of cancer is a risk factor for NHL and did not consider that as part of his differential diagnosis, even though scientific literature shows that a family history of cancer is a risk factor for NHL.[5]  *See* Ex. 4, Palka *Janzen* Dep. at 151:18-153:12; Ex. 1, Palka *Pollard* Dep. at 18:4-19:3; Ex. 3, Palka *Domina* Dep. at 26:22-25.  In short, Dr. Palka made no serious attempt to rule out multiple potential causes for Plaintiffs' NHL, rendering his differential diagnosis unreliable.

---

[4] *See, e.g.*, Ex. 11, Nugent et al., *Risk of Second Primary Cancer and Death Following a Diagnosis of Nonmelanoma Skin Cancer*, Cancer Epidemiol. Biomarkers Prev. 14(11), at Table 2 (Nov. 2005) (reporting an increased risk of NHL in individuals with a history of skin cancer); Ex. 12, Wheless et al., *Nonmelanoma Skin Cancer and the Risk of Second Primary Cancers: a Systematic Review*, Cancer Epidemiol. Biomarkers Prev. 19(7), at Table 3 (July 2010) (same).

[5] *See, e.g.*, Ex. 9, Chiu et al., *Agricultural Pesticide Use, Familial Cancer, and Risk of Non-Hodgkin Lymphoma*, Cancer Epidemiol. Biomarkers Prev. 13(4) at 528 (April 2004) ("A family history of cancer among first-degree relatives increased the risk of NHL, regardless of specific histological types."); Ex. 10, McDuffie et al., *Non-Hodgkin's Lymphoma and Specific Pesticide Exposures in Men: Cross-Canada Study of pesticides and Health*, 10 Cancer Epidemiol. Biomarkers Prev. 1155 (Nov. 2001) (reporting family history of cancer as a risk factor).

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

## 2.    Dr. Palka Offered No Reliable Basis For Ruling Out Unknown Causes.

Just as he fails to engage with a substantial number of the known risk factors confronting each of these Plaintiffs, Dr. Palka takes an equally unscientific approach to the possibility of unknown causes: he simply ignores that prospect.  As he explained in his deposition, once Plaintiffs' lawyers gave him exposure summaries detailing Plaintiffs' use of Roundup®, he "didn't consider idiopathy" as a possible cause, *see* Ex. 4, Palka *Janzen* Dep. at 165:1-19, even though he admits that Plaintiffs could have developed NHL without using Roundup®, *id.* at 156:25-157:7.  That is improper and inconsistent with *Daubert*.

As this Court explained in addressing the *Hardeman* specific causation experts, "[t]he biggest concern" at the ruling out stage was "how the experts account[ed] for idiopathy."  *In re Roundup*, 358 F. Supp. 3d at 959.  That is even more of a concern in this case.  In allowing Plaintiffs' experts to testify in *Hardeman*, this Court noted that in concluding that Roundup® was the cause, they had: (1) relied on the plaintiffs' "admissible general causation opinions - which assert a robust connection between glyphosate and NHL," and (2) "relied heavily on the plaintiffs' exposure levels" and an asserted dose-response relationship in McDuffie (2001) and Eriksson (2008).  Dr. Palka did neither of those things here.  First, as noted above, he did not review any of the general causation reports from Plaintiffs' experts, *see* Ex. 4, Palka *Janzen* Dep. at 75:17-76:5, and does not purport to adopt them as a basis for his differential diagnosis.  Nor does he offer any independent basis for asserting any "robust connection" between Roundup® and NHL.  Second, Dr. Palka testified that he was "not offering opinions about epidemiology and dose response," and that he does not "have any specific opinions about dose response."  *See id.* at 139:23-140:10.  He further testified that his opinions about whether Plaintiffs' use was significant was not "tied to any scientific literature."  *See id.* at 190:7-22; *see also* Ex. 1, Palka *Pollard* Dep. at 28:17-29:1.  Accordingly, Dr. Palka has offered no basis whatsoever for concluding that Plaintiffs' NHL was caused by Roundup® rather than an unknown factor.[6]

---

[6] *See, e.g.*, *Perry v. Novartis Pharm. Corp.*, 564 F. Supp. 2d 452, 470 (E.D. Pa. 2008) (where a condition has mostly unknown causes, an "analysis beyond a differential diagnosis will likely be
*(Footnote continued)*

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

Nor can Dr. Palka buttress his deficient differential diagnosis by relying on his clinical practice. *Compare Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017). On the contrary, he has testified that he has never told a patient that Roundup® caused their NHL. *See* Ex. 4, Palka *Janzen* Dep. at 49:23-50:13; Ex. 1, Palka *Pollard* Dep. at 29:25-30:3. Nor has he shared his litigation-driven conclusions in any capacity outside of the courtroom, whether through submitting his opinions for formal peer review or even by sharing them with his colleagues or students. *See* Ex. 4, Palka *Janzen* Dep. at 50:18-53:5. In short, without any basis (either in scientific literature or his own practice) to account for idiopathic causes, Dr. Palka's conclusion that Roundup® exposure must have been the cause of all four Plaintiffs' NHL is nothing more than guesswork.

## II. Dr. Palka Relies Primarily On The IARC Monograph For His Opinions, Which Is Not A Proper Basis For A Specific Causation Opinion.

As explained above, Dr. Palka gave little to no consideration to factors other than Roundup®. In fact, he expressly testified that other risk factors make no difference to him—when asked whether he "would still say that Roundup was a substantial contributing factor" even if a "patient had another risk factor like hepatitis C or HIV," his answer was, "I would." *See* Ex. 4, Palka *Janzen* Dep. at 101:24-102:8. When pressed about how he could reach his specific causation conclusion, he ultimately relied on the IARC Monograph. Specifically, he acknowledged that "the main study that [he is] relying on in offering [his] specific causation opinions" is the IARC Monograph. *See id.* at 76:12-16; *see also id.* at 76:6-11 ("Q: So you're really just relying, in terms of thinking that there's an association between Roundup and non-Hodgkin's lymphoma, on IARC? A: I think that's the most substantial data there."); *id.* at 128:21-129:7 ("Q: Without [the IARC Monograph], it would have been hard for you to say that Roundup caused [Mr. Janzen's] cancer? A: I don't think I would be

---

required" to render a reliable specific causation opinion); *Tamraz*, 620 F.3d at 675 ("Not every opinion that is reached via a differential-diagnosis method will meet the standard of reliability required by Daubert") (internal quotation marks omitted) (quoting *Best v. Lowe's Home Centers, Inc.*, 536 F.3d 171, 179 (6th Cir. 2009); *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 478 (M.D.N.C. 2006) ("[The expert] did not properly perform the differential diagnosis given his failure to consider within his analysis the high probability that an unknown genetic cause cannot be ruled out as the specific cause of Minor Child Doe's autism"); *Carlson v. Okerstrom*, 675 N.W.2d 397, 267 Neb. 397, 399 (Neb. 2004) ("If the expert completely fails to consider a cause that could explain the patient's symptoms, the differential diagnosis is not reliable.").

US 167133226v6

1    able to say it as confidently.").

2         At bottom, then, Dr. Palka's specific causation opinions are based—not on Plaintiffs' specific

3    characteristics and exposure histories, whether or not they point to causes other than Roundup®—

4    but on the IARC Monograph.  In other words, Dr. Palka essentially uses the IARC Monograph as a

5    substitute for performing a valid differential diagnosis.  That is improper.  As this Court has

6    previously held, IARC is not even a proper basis for a *general* causation opinion because IARC

7    "conducts its inquiry at a higher level of generality than what the Court must do."  *In re Roundup*

8    *Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1113-16 (N.D. Cal. 2018).  As a result, the IARC

9    Monograph certainly cannot supply the basis for a reliable specific causation opinion.  Because Dr.

10   Palka's specific causation opinions rest on the IARC Monograph and not a proper differential

11   diagnosis, they should be excluded.

12        The paucity of Dr. Palka's causation analysis is further highlighted by his failure to adequately

13   consider any of the relevant science on which he purports to rely.  Dr. Palka admits that he did not do

14   any independent literature searches and that he "fully relied" on Plaintiffs' counsel to "send [him] the

15   articles that [he] should review."  *See* Ex. 4, Palka *Janzen* Dep. at 125:1-14.  Plaintiffs' counsel did

16   not send him all of the literature on glyphosate and NHL.  For example, he was not given the Andreotti

17   (2018) paper on the Agricultural Health Study.  *Id.* at 116:18-117:1.  He could not say why Plaintiffs'

18   counsel selected certain studies but not others, *id.* at 57:1-14, and he did not "make any further

19   requests for other items," *id.* at 59:5-8.  He nonetheless testified that he would have liked to have seen

20   Andreotti, *id.* at 123:2-9; 124:5-10, and that it possibly could have impacted his opinions, *id.* at

21   195:11-196:16.

22        And despite relying on IARC as his "main study," he does not know anything about it.  He

23   had never heard of IARC before being retained in this litigation and was not able to say what

24   methodology IARC used.  *See id.* at 108:14-23.  When asked "whether IARC made a hazard

25   assessment or a risk assessment," he responded, "I'd have to look at the paper to evaluate that."  *Id.*

26   at 108:24-109:2.  When asked whether he knew "the difference between a hazard assessment and a

27   risk assessment," he answered, "No."  *Id.* at 109:3-6.  And when asked whether the type of analysis

28

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. PALKA
3:19-cv-04103-VC & 3:19-cv-04102-VC & 3:19-cv-05887-VC & 3:19-cv-04100-VC

US 167133226v6

performed by IARC "factor[ed]" in any way in your reliance on IARC as the main study you're relying on," he responded, "No." *Id.* at 109:7-10.

Likewise, despite citing to McDuffie (2001) and Eriksson (2008) in his two-page reports for these cases,[7] he is not familiar with even the basic information about those studies. When asked why he cited those two articles in his report, he testified, "They mentioned glyphosate specifically. And they seemed to have good scientific merit." *Id.* at 67:16-68:7. He also testified that he relied on McDuffie (2001) and Eriksson (2008) because, according to Dr. Palka, they show a "doubling of the risk," which was "important" to him. *Id.* 129:24-131:18. As this Court has previously held, that conclusion is "inaccurate, misleading, and untethered to any sound scientific method" because those studies fail to adjust for other pesticides. *In re Roundup*, 358 F. Supp. 3d at 961. Accordingly, such a conclusion cannot form the basis for Dr. Palka's specific causation opinion. Indeed, in another demonstration of his lack of scientific rigor in forming his conclusions, Dr. Palka conceded that he did not know whether those two studies controlled for other pesticides, Ex. 4, Palka *Janzen* Dep. at 131:19-132:6, and also conceded that whether a study adjusted for other pesticides would not impact his opinion either way, *id.* at 74:1-4.

In short, Dr. Palka should not be allowed to rely on studies that are insufficient even at the general causation stage (and which he is not familiar with, in any event) as a substitute for performing a proper differential diagnosis. His specific causation opinions should be excluded.

## **CONCLUSION**

For the reasons stated above, the Court should exclude the specific cause opinions of Dr. Palka for all four Plaintiffs.

---

[7] Ex. 13, Palka *Janzen* Rep; Ex 14, Palka *Pollard* Rep.; Ex. 15, Palka *Dickey* Rep.; Ex. 16, Palka *Domina* Rep.

US 167133226v6

DATED: November 26, 2019

Respectfully submitted,

*/s/ Brian L. Stekloff*_____

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: 213-243-4178
Fax: 213-243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorneys for Defendant
MONSANTO COMPANY

- 15 -

US 167133226v6

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Brian L. Stekloff*

US 167133226v6