# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br>ALL ACTIONS | |

**DECLARATION OF ELISABETH DEHARENG REGARDING
BELGIAN DATA PROTECTION LAW RESTRICTIONS**

I, Elisabeth Dehareng, hereby declare as follows:

1. I am an attorney at Baker McKenzie, residing at the Firm's office in Brussels (Baker & McKenzie SCRL/CVBA), Belgium. My practice includes a focus on the areas of data protection and technology law including personal data privacy laws applicable to business conducted between individuals/companies in the United States and individuals/companies in the European Union. I hold a CIPP/E certification.

2. All of the statements contained herein are statements of opinion based on my knowledge of the applicable data privacy laws of the European Union and of Belgium.

3. I understand that documents have been produced in this litigation that include (a) documents collected directly from within the European Union, in particular Belgium, in the work files of European citizens including Drs. Mark Martens, Christophe Gustin, and Richard Garnett who are/were employees of Monsanto Europe NV, with registered offices at Scheldelaan 460, 2040 Antwerp, Belgium, VAT BE 0460.474.539 RPR/RPM Antwerp, Division Antwerp, and (b) additional documents have been produced that were collected from Monsanto Company in the United States which hosts the email servers for all Monsanto affiliates, including Monsanto Europe NV, and such additional documents include cross-border communications between individuals in the United States and individuals in the European Union. I understand that Monsanto Europe NV and Monsanto Company have entered into EU Model Clauses Controller to Controller (based on EU Commission Decision 2004/915/EC of 27 December 2004 (Set II))

- 1 -
DECL. RE: E.U. DATA PROTECTION LAW
16-md-02741-VC

1  and EU Model Clauses Controller to Processor (based on EU Commission Decision 2010/87/EU
2  of 5 February 2010)[1] in January 2016 to protect personal data transferred by Monsanto Europe
3  NV with Monsanto Company, including name, telephone number, email address, professional
4  job title and position.  I understand that the above mentioned documents were produced with a
5  confidentiality designation precluding public filing or release absent agreement or contrary court
6  order but that in general the names and other personal identifying information of the individuals
7  reflected on these documents originating form the European Union, in particular from Belgium,
8  were not redacted at the time of production.  As discussed further below, in both circumstances,
9  European Union personal data privacy law including the privacy laws of Belgium would require
10 in principle redaction of the names and any other information that would allow someone to
11 identify the particular individuals referenced in the document originating from the European
12 Union. In addition, for documents collected directly within the European Union and subject to
13 European Union personal data privacy law, European Union personal data privacy law including
14 the privacy laws of Belgium would require in principle redaction of the names of all individuals,
15 including U.S. citizens, referenced in the documents and other information that would allow for
16 identification of those individuals.  The redaction of the names of all individuals including U.S.
17 citizens referenced in the documents and other information that would allow for identification of
18 those individuals would also be required if the documents are collected from Monsanto
19 Company to the extent Monsanto Company received such documents and information originally
20 from Monsanto Europe NV under the EU Model Clauses.  The only limited exception to this
21 redaction requirement would possibly be if it would be determined, in accordance with Belgian
22 Data Protection Law, that revealing the identities of these individuals to the parties of the
23 litigation would be strictly necessary for the establishment, exercise or defense of legal claims in

---

[1] EU Model Clauses (provided they are unmodified) serve as an agreement between a data exporter and a data importer and have been recognized by the European Commission as a mechanism to transfer personal data outside of the European Union provided the data importer agrees to and complies with the obligations of the EU Model Clauses.

- 2 -
DECL. RE: E.U. DATA PROTECTION LAW
16-md-02741-VC

the litigation case[2]. If needed to avoid confusion, fictitious names could possibly be used to avoid infringing on the privacy rights of the individuals who I understand are not parties to these lawsuits and whose names appear in documents only because of their work for the corporate defendant or their communications with employees of the corporate defendant.

4. I address the related legal principles in more detail in the remaining paragraphs.

### Restrictions under EU Data Protection Law

5. EU Data Protection Law, in particular EU Directive 95/46/EC ("**EU Data Protection Directive**"), the new EU Regulation 2016/679 ("**General Data Protection Regulation**" / "**GDPR**") that is already in force and will directly apply in all EU Member States, including Belgium, as of May 25, 2018, and the current Belgian Act of 8 December 1992 on the protection of privacy in relation to the processing of personal data ("**Belgian Data Protection Law**") prohibit the collection, processing and use of personal data, unless a legal ground justifies it and other data privacy principles have been complied with. Violation of Belgian Data Protection Law is criminally sanctioned and can result in fines from EUR 800 to EUR 800,000. Second offences are punished with an imprisonment of three months to two years or with fines from EUR 800 to EUR 800,000 or with only one of these. When ruling on such offences, the court may order the publication of the judgment in whole or in part in one or several newspapers at the costs of the convicted party. The court may also order the seizure of any media containing the personal to which the violation relates, such as manual filing systems, magnetic discs or magnetic tapes, except for computers or any other equipment, or can order the erasure of the data. The court may also prohibit a convicted party to process personal data for a definite term, up to two years. Individuals can file claims with the President of the Court of First Instance to obtain injunctive relief (e.g. suspension of processing) and actual damages. A data controller is liable for any damage caused by an act in violation of the Belgian Data Protection Law, unless it can prove that it did not cause the damage.

---

[2] Art. 29 Working Party, WP 158, Opinion 1/2009, page 11 : "*Where the identity of the individual data subject's is not relevant to the cause of action in the litigation, there is no need to provide such information in the first instance. However, at a later stage it may be required by the court which may give rise to another "filtering" process. In most cases it will be sufficient to provide the personal data in a pseudonymised form with individual identifiers other than the data subject's name*".

6. Under the current Belgian Data Protection Law, the Belgian Data Protection Authority (so-called Privacy Commission) has no power to impose administrative fines, sanctions or measures in case of violations of the Belgian Data Protection Law, but it may investigate cases, handle complaints and carry out mediation procedures, issue non binding advice, and submit civil cases to the Court of First Instance and criminal cases to the public prosecutor. These last years, the Belgian Data Protection Authority has taken a more aggressive stand vis-à-vis potential privacy violation, and seek to impose out of court pecuniary settlement on alleged infringers through the public prosecutor's office (obviously in line with the level of fines the infringer would incur if prosecuted).

7. A new Law creating the new Belgian Data Protection Authority has been adopted on 3 December 2017 and published on 10 January 2018, and will be applicable as of 25 May 2018. It considerably increases the competences of the Belgian Data Protection Authority, notably allowing it to impose sanctions, as foreseen under the GDPR (it being noted that the GDPR provides for fines up to Euro 20 Mio or up to 4% of the annual worldwide turnover of a group of companies, whichever is the highest). A new Law must still be adopted in Belgium to supplement these provisions of the GDPR.

8. "Personal data" under Belgian Data Protection Law refers to "any information relating to an identified or identifiable natural person" (data subject), whereas an identifiable person is one who can be identified, directly or indirectly, in particular by reference to an identification number or to one or more factors specific to his physical, physiological, mental, economic, cultural or social identify (Art. 1, § 1, of the Belgian Data Protection Law).

9. Personal data of employees and other individuals contained in business documents and business communication ("**Documents**") qualifies as personal data and is protected by Belgian Data Protection Law.

10. Monsanto Europe NV is subject to the Belgian Data Protection Law due to the territorial scope of the Belgian Data Protection Law, which applies, notably, to the processing of personal data carried out in the context of the effective and actual activities of any controller permanently established on Belgian territory (Article 3*bis*, 1°, of the Belgian Data Protection

Law).

## Production and Processing of Personal Data by Monsanto Europe NV

11.   In order for Monsanto Europe NV to produce relevant Documents in a US civil litigation case between Monsanto Company and a third party, Monsanto Europe NV in Belgium is required to comply with Belgian Data Protection Law.

12.   Key principles of Belgian Data Protection Law are the principles of proportionality and of data minimization. Personal data must be adequate, relevant and not excessive in relation to the purposes for which it is collected or further processed, which means that any personal data which is not absolutely necessary shall not be processed or disclosed to third parties. Therefore, in principle the Documents must be redacted to protect the interests of the individuals whose personal data is contained in the Documents.

13.   A legal permission for disclosing the Documents to a third party can either be consent given by the concerned data subjects or a another statutory justification ground. Consent is not a feasible option in this context due to the high number of concerned data subjects (every individual that is mentioned in the Documents). Furthermore pursuant to the general opinion, also expressly stated by the Article 29 Working Party ("**Working Party**"), an independent authoritative group composed of representatives from each of the EU Member States' data protection authorities, employee consent is unlikely to be valid.[3] Therefore, Monsanto Europe NV in Belgium has to rely on another statutory justification ground in order to disclose Documents to third parties. Such statutory justification grounds are primarily provided in Art. 5 of the Belgian Data Protection Law (and in Art. 6, 7 and 8 of the Belgian Data Protection Law for special categories of personal data).

14.   The statutory justification relied upon by Monsanto Europe NV for producing Documents in the U.S. litigation is the "Balancing of Interest Test" provided in Art. 5, f), of the Belgian Data Protection Law (i.e., the processing is necessary for the promotion of the legitimate interests of the controller or the third party to whom the data is disclosed, except where such

---

[3] Art. 29 Working Party, WP 259, Guidelines on consent under Regulation 2016/679 (http://ec.europa.eu/newsroom/article29/item-detail.cfm?item_id=615239)

- 5 -
DECL. RE: E.U. DATA PROTECTION LAW
16-md-02741-VC

interests are overridden by the interests or fundamental rights and freedoms of the data subject) . This statutory justification ground is conditioned on an assessment and consideration of the interests of the data subjects and requires measures and safeguards to protect the interests of the data subject. According to the Working Party, the data subject's interests also require that the Documents are redacted to address the interests of the individuals whose data is contained in the Documents[4].

### Transfer of Personal Data by Monsanto Europe NV to outside the European Economic Area

15. Transfer of personal data to countries outside of the European Economic Area that have not be recognized by the European Commission as ensuring an adequate level of protection of personal data requires additional appropriate safeguards (such as EU Model Clauses, Binding Corporate Rules or Privacy Shield) or an exception (derogation provided under the Belgian Data Protection Law). Appropriate safeguards typically cannot be implemented in the context of litigation cases. One reason is that U.S. courts are not Privacy Shield certified or subject to Binding Corporate Rules and are not willing or in a position to enter into EU Model Clauses.

16. Therefore, Monsanto Europe NV must rely on an exception (derogation) for international data transfer. If limited amounts of Documents shall be transferred to the U.S. for litigation purposes, Monsanto Europe NV can rely on the exception in Art. 26(1)(d) of the EU Data Protection Directive, as implemented by Article 22, § 1, 4°, of the Belgian Data Protection Law to the extent the transfer is necessary for the establishment, exercise or defense of legal claims[5]. This exception (derogation) is, however, interpreted restrictively, which means that only personal data that are strictly necessary for the establishment, exercise or defense of legal claims may be transferred ("necessity test")[6]. Also, when invoking this exception (derogation), it is required to reduce the personal data to what is absolutely necessary and therefore the Art. 29

---

[4] Art. 29 Working Party, WP 158, Opinion 1/2009, page 10.
[5] Art. 29 Working Party, WP 158, Opinion 1/2009, page 13.
[6] Art. 29 Working Party, WP 114, *Working document on a common interpretation of Article 26(1) of Directive 95/46/EC of 24 October 1995* on 25 November 2005, pages 7 and 12.

- 6 -
DECL. RE: E.U. DATA PROTECTION LAW
16-md-02741-VC

Working Party[7] requires the redaction of Documents prior to production.

**Additional Safeguards After Production in the U.S.**

17. The Working Party has observed that there are different "stages" of the litigation process (for example, retention, disclosure, onward transfer, and secondary use), and that each stage "will require an appropriate condition in order to legitimize the processing."[8] This means that, although Documents containing personal data of employees of Monsanto Europe NV and other individuals whose personal data have been pertaining to Monsanto Europe NV have already been produced to plaintiffs in this litigation pursuant to the applicable protective order and the Court's specific orders discussed above, any further processing of those Documents – including filing any Documents with the Court which results in release to the general public – must meet the "necessity" test". This requires a decision on both whether filing the Documents is necessary and whether it is necessary to file the Documents in a form that is not redacted or pseudonymized.

18. The Working Party also reaffirms that data controllers must take appropriate steps "to limit the discovery of personal data to that which is objectively relevant to the issues being litigated."[9] When the litigation reaches a later stage, it may be necessary for the Court to engage in "another 'filtering' process" to ensure that any personal data is presented only "in a pseudonymised form."[10]

**Application of EU Data Protection Law to Monsanto Company**

19. In order for Monsanto Company to produce Documents in U.S. litigation, Monsanto Company is required to determine to what extent EU Data Protection Law, in particular Belgian Data Protection Law applies to Monsanto Company.

20. For lawful group-internal data sharing with Monsanto Company under Belgian Data Protection Law, Monsanto Europe NV and Monsanto Company have entered into EU Model Clauses Controller to Controller (based on the EC Commission Decision 2004/915/EC of

---

[7] Art. 29 Working Party, WP 158, Opinion 1/2009, page 10.
[8] Art. 29 Working Party, WP 158, Opinion 1/2009, page 7.
[9] Art. 29 Working Party, WP 158, Opinion 1/2009, page 10.
[10] Art. 29 Working Party, WP 158, Opinion 1/2009, page 11.

27 December 2004 (Set II) and into EU Model Clauses Controller to Processor (based on EC Commission Decision 2010/87/EU of 5 February 2010).

21. Any Documents including personal data covered by the EU Model Clauses, such as name, email address and professional data, which have been transferred from Monsanto Europe NV to Monsanto Company are subject to such EU Model Clauses. Under the EU Model Clauses, Monsanto Company is not allowed to disclose such covered personal data received from Monsanto Europe NV unless certain conditions apply.

22. Under the EU Model Clauses Controller to Controller, Monsanto Company can disclose Documents containing personal data covered by the EU Model Clauses and received from Monsanto Europe NV to a third party only if (i) the third party itself executes EU Model Clauses, or (ii) data subjects have been given the opportunity to object, after having been informed of the purposes of the transfer, the categories of recipients and the fact that the countries to which data is exported may have different data protection standards, or (iii), if sensitive data is involved, data subjects have consented to the disclosure. This restriction for disclosure of the Documents applies also to a disclosure to third parties in a US litigation case.

23. Under the EU Model Clauses Controller to Processor, Monsanto Company can disclose Documents containing personal data covered by the EU Model Clauses and received from Monsanto Europe NV to a third part only if (i) the third party is a subprocessor and itself concludes the EU Model Clauses with Monsanto Company, or (ii) the third party is not a sub-processor and Monsanto Europe NV could itself lawfully transfer the personal data to such third party in compliance with the rules set out above in paragraph 11 to 16 and instructs Monsanto Company to transfer such personal data on its behalf to the third party and in compliance with the EU Model Clauses.

24. None of the options in paragraph 22 above are feasible solutions in the context of a U.S. litigation case, to the extent Monsanto Company received the Documents under the EU Model Clauses Controller to Controller.

25. If Monsanto Company received the Documents under the EU Model Clauses Controller to Processor, Monsanto Company can only disclose the Documents in a US litigation

1  case pursuant to option (ii) in paragraph 23, on behalf and as per the instructions of Monsanto
2  Europe NV, which would require redaction of the Documents.
3       26.    As Monsanto Company is legally required under U.S. law to produce the
4  Documents, Monsanto Company decided to take a risk-based approach by producing Documents
5  protected by the EU Model Clauses solely under protective orders that require their strict
6  confidentiality.  Now that the confidentiality of those Documents has been challenged, Monsanto
7  Company again is taking a risk-based approach by requesting a minimum level of protection, the
8  redaction from those Documents of any personal data, as defined under Belgian Data Protection
9  Law.  Therefore, any Documents containing personal data of European employees or other
10 individuals received from or pertaining to Monsanto Europe NV must be redacted before further
11 disclosure including any public filing or release.

## Conclusions

15      27.    Monsanto Company Documents containing communications with its European
16 employees that were produced to plaintiffs in this litigation likely contain numerous instances of
17 personal data, including names, contact information, employment information, and job status.
18 Under Belgian Data Protection Law such information must be protected and may only be
19 processed if certain conditions are met, such as anonymizing or redacting the data.  For example,
20 Documents from the files of employees of Monsanto Europe NV were produced to plaintiffs
21 solely because of the Orders of this Court which directed that such Documents be designated
22 confidential.  Those orders specifically contemplated further redaction if the Documents were
23 later needed for court filings or otherwise challenged, and that the needs of the litigation
24 precluded redaction prior to disclosure to plaintiffs' counsel.  *See* Garnett Order ¶ 2, ECF No. 66
25 ("Subsequent to this exchange, the parties may meet and confer regarding the Confidentiality
26 status of any particular records, including redactions."); Martens Order ¶ 2, ECF No. 172 (same).
27 These needs of the litigation, and recognition of the need for protection of personal data also
28 were addressed in the related consent motions.  *See* Consent Motion for Order Re Production of

Custodial Files of Dr. Mark Martens, ECF No. 167; Consent Motion for Order Re Production of Custodial Files of Richard Garnett and Christophe Gustin, ECF No. 61.

28. Public disclosure of these Documents – including filing them on a public court docket – without redaction of personal data would expose protected personal data to public consumption absent any allowable exception under Belgian data protection law. This would allow the identification of individuals who are not parties to this litigation and cause them to be equated with this litigation, with all the negative effects that may entail. This would frustrate the purpose of the EU Data Protection Directive and the Belgian Data Protection Law, which are designed to maintain the privacy of individuals, and could expose Monsanto Company, Monsanto Europe NV, and other persons or entities to potential sanctions, including substantial fines.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 22 March 2018.

_____
ELISABETH DEHARENG