**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:   202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| *Emanuel Giglio v. Monsanto Co.*, 3:16-cv-05658<br>*Matteo Anthony Russo v. Monsanto Co.*, 3:16-cv-06024<br>*Yolanda Mendoza v. Monsanto Co.*, 3:16-cv-06046 | **MONSANTO COMPANY'S REPLY IN SUPPORT OF MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF WAVE ONE PLAINTIFFS' SPECIFIC CAUSATION EXPERTS DR. CHADI NABHAN, DR. ANDREI SHUSTOV, AND DR. DENNIS WEISENBURGER ON *DAUBERT* GROUNDS**<br><br>Hearing dates:   January 29, 2020<br>Time: |

Plaintiffs' Opposition does nothing to rehabilitate the fundamental flaws in Dr. Shustov's testimony or Dr. Weisenburger's failure to investigate glaring inconsistencies in Plaintiffs' reported exposure. Further, an order limiting Dr. Nabhan's testimony is likely necessary despite Plaintiffs' concession that the Court's previous restrictions on his testimony apply.

## I. Dr. Shustov's Testimony Does Not Meet *Daubert*'s Reliability Requirements.

Plaintiffs' Opposition fails to salvage Dr. Shustov's fundamentally flawed expert testimony. First, Dr. Shustov does not have an adequate basis to rule in glyphosate as a cause of Ms. Mendoza's cancer. Second, Dr. Shustov has improperly ruled out or failed to address altogether several potential alternative causes, including potential unknown causes.

Ms. Mendoza was diagnosed with sporadic Burkitt lymphoma, a subtype of Burkitt's lymphoma—a rare and aggressive subcategory of NHL with three subtypes—endemic, sporadic, and immunodeficiency-associated. Plaintiffs incorrectly assert Dr. Shustov need not have any evidence linking glyphosate and sporadic Burkitt lymphoma in order to properly rule in glyphosate as a cause of Ms. Mendoza's cancer. This position misconstrues the Court's prior opinion. Nowhere in PTO 85 did the Court conclude that, in light of the general causation evidence, it is proper to "rule in" glyphosate as a potential cause of all sixty plus unique subtypes of NHL. Rather, the Court said "the specific causation experts are permitted to build from the plaintiffs' admissible general causation opinions," which "grappled with the full body of evidence." Pretrial Order No. 85 (Feb. 24, 2019) at 2, ECF No. 2799 ("PTO 85"). Plaintiffs and Dr. Shustov readily admit that there are *no studies* linking glyphosate exposure and Burkitt lymphoma in general, or sporadic Burkitt lymphoma in particular. Pls.' Opp'n Br., at 3. That a disease, like sporadic Burkitt lymphoma, is so rare that it has not yet been the subject of an academic article is not a justifiable reason under *Daubert* to lump it into a larger body of evidence, particularly when, as here, the disease has unique characteristics that set it apart from the more common subtypes. Plaintiffs cite no legal authority to the contrary.

In an attempt to save his testimony, Dr. Shustov asserted that he relied primarily on data regarding diffuse Large B-cell lymphoma ("DLBCL"), a disease he asserts is "closely related" to sporadic Burkitt lymphoma. Pls.' Opp'n Br., at 3–4. This reliance is misplaced for a multitude of reasons. DLBCL is the most common type of NHL, while sporadic Burkitt lymphoma is one of the

rarest subtypes of NHL, accounting for just one to two percent of all NHLs. Indeed, DLBCL "is more than 20 times as common as Burkitt lymphoma."[1] The diseases behave differently, are not treated the same, and affect different populations.[2] For example, while DLBCL occurs most often in older adults—the median age of DLBCL diagnosis is 70 years old,[3] sporadic Burkitt lymphoma is common in younger adults and children: it accounts for one-third of all cases of childhood NHL in the United States and less than one percent of all NHL cases in adults.[4] *See also* Ex. 1 to Pls.' Opp'n Br., Shustov (*Mendoza*) Rep., at 4–5. Moreover, in adults, sporadic lymphoma incidence peaks "in the second and third decades."[5] *See also* Ex. 1 to Pls.' Opp'n Br., Shustov (*Mendoza*) Rep., at 4. It is not reliable to simply assume that two strikingly different forms of NHL affecting such dissimilar populations can be lumped together. For example, that sporadic Burkitt lymphoma is found in younger people, and is so common in children—who presumably have not been exposed to glyphosate for more than two days a year or ten lifetime days—suggests that (even under Plaintiffs' theory) the cancer is caused by something other than glyphosate. Accordingly, an expert such as Dr. Shustov cannot uncritically assume all DLBCL data applies equally to sporadic Burkitt lymphoma.

An examination of the two other subtypes of Burkitt lymphoma, endemic and immunodeficiency-associated Burkitt lymphoma, further demonstrates why grouping these rare subtypes in with all other types of NHL violates *Daubert*'s reliability requirements. Endemic Burkitt lymphoma is seen almost exclusively in children in equatorial Africa and Papua New Guinea, and nearly every case is associated with Epstein-Barr virus (EBV).[6] *See also* Pls.' Ex. 1, Shustov Rep. at

---

[1] Sandeep S. Dave, et al., *Molecular Diagnosis of Burkitt's Lymphoma*, New Eng. J. Med. 2431 (2006), *available at* https://www.ncbi.nlm.nih.gov/pubmed/16760443.
[2] Dave, *supra* n.1; Ibrahim T. Aldoss, et al., *Adult Burkitt Lymphoma: Advances in Diagnosis and Treatment*, 22 Oncology (Williston Park) 1508 (2008) ([W]hen patients with BL are treated with regimens for diffuse large B-cell lymphoma (DLBCL), the outcome is usually poor."), *available at* https://www.ncbi.nlm.nih.gov/pubmed/19133605.
[3] Steven D. Smith, et al., *Diffuse Large B-Cell Lymphoma in Adults Aged 75 Years and Older: A Single Institution Analysis of Cause-Specific Survival and Prognostic Factors*, 4 Therapeutic Advances in Hematology 349 (2013), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3854559/pdf/10.1177_2040620713505048.pdf
[4] Kevin Kalisz, et al., *An Update on Burkitt Lymphoma: A Review of Pathogenesis and Multimodality Imaging Assessment of Disease Presentation, Treatment Response, and Recurrence*, 10 Insights Imaging 56 (2019), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6529494/.
[5] Aldoss. *supra* n.2.
[6] Aldoss, *supra* n.2

4. There is no evidence, or even a suggestion, that any child with endemic Burkitt lymphoma has been exposed to glyphosate. In light of these undisputed facts, it would be a disqualifying error to rule in glyphosate as a potential cause of endemic Burkitt lymphoma simply because it is a subtype of NHL. Moreover, immunodeficiency-associated Burkitt lymphoma "occurs over *a thousand times more often in HIV-positive individuals than in the general population*."[7] *See also* Ex. 1 to Pls.' Opp'n Br., Shustov (*Mendoza*) Rep., at 5. It also occurs in other individuals whose immune systems have been compromised, including "post-transplant recipients" and "individuals with congenital immunodeficiency."[8] Thus, it would also be a disqualifying error to rule in glyphosate as a potential cause of this rare lymphoma with such clear ties to HIV and other immune system-compromising conditions.

Admittedly, there is no condition, like EBV or HIV, indisputably associated with sporadic Burkitt lymphoma. However, the evidence outlined above indicates that Burkitt lymphoma as a category is clinically distinct from other forms of NHL as a whole and has unique causes. Moreover, as noted above, the concentration of sporadic Burkitt lymphoma specifically in children and young adults also suggests that it does not have the same causes as other cancers falling under the DLBCL and NHL umbrellas. At the very least, considering these unique characteristics, it is scientifically unsound, and thus impermissible under *Daubert*, to treat sporadic Burkitt lymphoma like all other forms of NHL without some additional evidence linking it to glyphosate exposure. Such evidence does not exist. In ruling in glyphosate exposure as a cause of Ms. Mendoza's sporadic Burkitt lymphoma, Dr. Shustov is not "build[ing] from" the work of the general causation experts, as the Court instructed; rather, he is manipulating the Court's prior rulings to reverse engineer a causation opinion where no reliable evidence exists to support it.

Dr. Shustov commits even more errors of logic in his assessment of alternative risk factors. First, Dr. Shustov refused to rule in Ms. Mendoza's two decades working as a teacher because "there is no mechanism by which her teaching job could have caused her NH[L]." Pls.' Opp'n Br., at 4. Thus, he did not acknowledge that teaching is associated with NHL because teachers are exposed to

---

[7] Aldoss, *supra* n.2.
[8] Aldoss, *supra* n.2.

carcinogens in their work. Yet, he acknowledged that veterans have an association with certain cancers because they "are exposed to potentially numerous carcinogens through their service." Ex. 4 to Def.'s Opening Br., Shustov (*Mendoza*) Dep. 69:24–70:2. Thus, although there may not be a direct causal mechanism linking teaching and NHL, it was error for Dr. Shustov to cast aside this factor when exposure to carcinogens, albeit potentially unknown carcinogens, should have factored into his analysis.

Second, Dr. Shustov rejected the findings of a study linking ▮▮▮▮ with NHL because Ms. Mendoza "is not in the population of people studied," which he categorized as veterans. Pls.' Opp'n Br., at 4. At the same time, as outlined above, Dr. Shustov had no problem relying on evidence linking glyphosate to DLBCL and NHL more generally even though Ms. Mendoza, with sporadic Burkitt lymphoma, is not in the population of people examined in those studies. Indeed none of the general causation studies primarily relied on, including McDuffie 2001, Eriksson 2008, De Roos 2005, and Pawha 2019, even mention Burkitt lymphoma.

Third, Plaintiffs assert Dr. Shustov "rejected Ms. Mendoza's ▮▮▮▮ as a risk factor of her disease because her medical records did not show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Pls.' Opp'n Br., at 4. In reality, Dr. Shustov never analyzed Ms. Mendoza's ▮▮▮▮▮▮▮▮▮▮▮▮ in his report, *see* Ex. 1 to Pls.' Opp'n Br., Shustov (*Mendoza*) Rep., he could not recall at his deposition whether Ms. Mendoza even had ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4 to Def.'s Opening Br., Shustov (*Mendoza*) Dep. 72:6–8, and he admitted that he never looked at the literature to see whether there was an association between ▮▮▮▮ and cancer, *id.* at 74:4–7. The holes in Dr. Shustov's methodology cannot be cured by after-the-fact lawyer argument, and his complete failure to consider this risk factor fatally undermines his opinion. In an attempt to defend Dr. Shustov, Plaintiffs cite to a generalized statement about immunosuppression Dr. Shustov made at the end of his deposition, on direct examination. Pls.' Opp'n Br., at 4–5. Such a generalized statement hardly excuses Dr. Shustov's failure even to rule in ▮▮▮▮ as a potential risk factor for Ms. Mendoza's NHL. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057–58 (9th Cir. 2003) (experts conducting differential diagnoses must "compile a comprehensive list" of factors "*generally* capable of causing the patient's" disease).

Fourth, Plaintiffs do not even acknowledge in their response that Ms. Mendoza lived and worked for many years in ▮▮▮▮▮▮▮▮▮▮, or that Dr. Shustov failed to take this factor into account altogether. Dr. Shustov's report again lacks an analysis of all relevant factors, which is necessary for his testimony to pass *Daubert* scrutiny and be admitted at trial. *Id.*

Finally, in light of Ms. Mendoza's rare cancer that effects a unique population and her risk factors, it was especially important for Dr. Shustov to account for idiopathy in his analysis. And yet, Plaintiffs treat this factor as moot in light of the Court's prior rulings. This Court has never said that an expert can survive *Daubert* scrutiny after failing to account for idiopathy altogether. Indeed, the Court made clear that "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." PTO 85, at 4. Dr. Shustov never even mentioned idiopathy in his report and has not otherwise made this differentiation. In sum, Dr. Shustov cites no evidence linking glyphosate exposure to sporadic Burkitt lymphoma—a rare and unique disease with no known cause—fails to account multiple times for Ms. Mendoza's exposure to unknown carcinogens—in her work as a teacher and while living in ▮▮▮▮▮▮▮▮▮▮—and then fails to assess the possibility that the cause of her Burkitt lymphoma is unknown. These holes in Dr. Shustov's analysis render his testimony inadmissible. His conclusion that glyphosate is a substantial causative factor of Ms. Mendoza's cancer is not an "artful" analysis that must be tolerated in this circuit; it is a flawed, made-for-litigation opinion that should be excluded.

**II.   Dr. Weisenburger's Failure to Address Inconsistencies in Plaintiffs Materials Is Disqualifying.**

Plaintiffs do not dispute that Dr. Weisenburger was aware of inconsistencies between Plaintiffs' Fact Sheets, deposition testimony, and what Plaintiffs reported to Dr. Sawyer. Nor do they dispute that these known inconsistencies affected the accuracy and viability of his testimony. Rather, they attempt to brush this indiscretion aside as going to the weight and not the admissibility of his testimony. In support of their argument, Plaintiffs primarily cite *Walters v. McCormick*, 122 F.3d

- 6 -

REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DRS. NABHAN, SHUSTOV AND WEISENBURGER NO. 3:16-MD-02741-VC & 3:16-CV-05658-VC, 3:16-CV-06024-VC, 3:16-CV-06046-VC

1172, 1175 (9th Cir. 1997),[9] a case in which a child victim had inconsistencies in her testimony and the jury was permitted to determine whether to believe her testimony. This case is not controlling. Unlike a victim, who may simply have trouble remembering past events, Dr. Weisenburger had the opportunity to analyze the evidence and determine the most accurate version of events, but chose not to. That Dr. Weisenburger was aware of inconsistencies in the evidence on which he relied and did nothing to investigate or resolve the inconsistencies speaks directly to his reliability as an expert.

The other excuse Plaintiffs give for the inconsistencies Dr. Weisenburger relied on is Mr. Russo's severe memory loss due to his chemotherapy treatment and the removal of a portion of his brain as part of his NHL treatment. Pls. Opp'n Br., at 5–6. Plaintiffs' explanation is neither accurate nor relevant. Although Mr. Russo's short-term memory was effected by his chemotherapy, his long-term memory, and thus his long-term memory of his Roundup use, was not affected. Ex. 3 to Pls.' Opp'n Br., Rudnick (*Russo*) Dep. 59:3–17. In addition, only the chemotherapy, and not his surgery, had any impact on Mr. Russo's memory. *Id.*; Ex. 6 to Def.'s Opening Br., Weisenburger (*Russo*) 36:19–25. Finally, and most fundamentally, whatever the reasons for the inconsistencies, they do not justify Dr. Weisenburger's failure to further investigate or seek to resolve the inconsistencies. Plaintiffs cannot always be expected to provide perfectly precise accounts of their exposure and injury. However, when they have not, experts must probe these inconsistencies and find a reliable way to resolve them that is not arbitrary or outcome driven. Dr. Weisenburger has not done so and therefore must be excluded.

### III. An Affirmative Order Limiting Dr. Nabhan's Testimony Is Necessary.

Plaintiffs concede "the Court's previous restrictions on Dr. Nabhan apply to any testimony he may offer in Mr. Russo's case." Pls.' Opp'n Br., at 3. Despite this concession, an order reiterating these restrictions on Dr. Nabhan in all cases is likely necessary. First, Plaintiffs left out that these restrictions also apply in Mr. Giglio's case, in which Dr. Nabhan has also been disclosed. Second, as demonstrated by his depositions in both Mr. Russo's and Mr. Giglio's cases, Dr. Nabhan has not

---

[9] Plaintiff's other legal authority, *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1028 (N.D. Cal. 2013), is equally unavailing. The expert there chose to use retail prices instead of wholesale prices in calculating damages and there was no authority regarding which price point should be utilized. Thus, there was no actual finding of inaccuracy, much less acknowledged inconsistencies, in the expert's work.

1  changed his position at all in response to the Court's prior orders. *See* Def.'s Opening Br., at 2.

3  DATED: _December 23, 2019              Respectfully submitted,

4                                          */s/ Michael X. Imbroscio*_____

5                                          Michael X. Imbroscio (*pro hac vice*)
                                            (mimbroscio@cov.com)
6                                          COVINGTON & BURLING LLP
                                            One City Center
7                                          850 10th St. NW
                                            Washington, DC 20001
8                                          Tel: 202-662-6000

10                                         Brian L. Stekloff (*pro hac vice*)
                                            (bstekloff@wilkinsonwalsh.com)
                                            Rakesh Kilaru (*pro hac vice*)
11                                         (rkilaru@wilkinsonwalsh.com)
                                            WILKINSON WALSH + ESKOVITZ LLP
12                                         2001 M St. NW, 10th Floor
                                            Washington, DC 20036
13                                         Tel: 202-847-4030
                                            Fax: 202-847-4005

15                                         William Hoffman (pro hac vice)
                                            (William.Hoffman@arnoldporter.com)
16                                         ARTNOLD & PORTER KAYE SCHOLER
                                            601 Massachusetts Avenue, N.W.
17                                         Washington, DC 20001
                                            Tel: 202-942-6915
18                                         Fax: 202-942-5999

19                                         Eric G. Lasker (*pro hac vice*)
                                            (elasker@hollingsworthllp.com)
20                                         HOLLINGSWORTH LLP
                                            1350 I St. NW
21                                         Washington, DC 20005
                                            Tel: 202-898-5843
22                                         Fax: 202-682-1639

24                                         Attorneys for Defendant
                                            MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Michael X. Imbroscio