**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Dickey v. Monsanto Company*<br>Case No. 3:19-cv-04102 | MDL No. 2741<br><br>Case No. 3:16-md-2741-VC<br><br>**REPLY IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS** |

## INTRODUCTION

Plaintiff Robert Dickey filed suit against Defendant Monsanto Company ("Monsanto") *seven* years after he (1) was injured, (2) discovered his injury, *and* (3) first suspected that Monsanto's product Roundup caused or contributed to his cancer. His claim is barred by the applicable 4-year statute of limitations, and—on these undisputed facts—neither the discovery rule nor the fraudulent-concealment doctrine can salvage it. Accordingly, Monsanto moved for summary judgment.

Plaintiff's Opposition addresses only the discovery rule and fraudulent-concealment doctrine. First, he argues that the statute of limitations did not begin to run until he discovered the cause of his injury. He is wrong. Numerous Nebraska cases squarely state that the limitations period begins to run upon discovery of an injury, and not upon discovery of that injury's cause. Second, Plaintiff argues that the fraudulent-concealment doctrine tolled the running of the statute of limitations until a third party (IARC) concluded based on publicly available information that glyphosate might be linked to non-Hodgkins lymphoma ("NHL"). Plaintiff's fraudulent-concealment argument fails for many reasons.

### UNDER THE NEBRASKA DISCOVERY RULE, THE STATUE OF LIMITATIONS BEGAN RUNNING IN 2008, RENDERING PLAINTIFF'S CLAIMS TIME-BARRED

Under Nebraska's discovery rule, the statute of limitations on Plaintiff's claims began running in 2008 when was diagnosed with NHL— *i.e.*, when he became aware of his injury. (Mot. at 4.) Nevertheless, Plaintiff argues that the "Nebraska discovery rule should be extended to discovery of the *cause* of injury." (Opp'n at 5 (letter case altered, emphasis added).) Needless to say, this is not the proper forum to request a change in Nebraska law. *See, e.g.*, *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967) (Under the *Erie* doctrine, "state law as announced by the highest court of the State is to be followed.").

Discussing the discovery rule, the Nebraska Supreme Court has expressly stated: "Discovery refers to the fact that one knows of the existence of an injury or damage *and not that one knows who or what may have caused that injury or damage*." *Thomas v. Countryside of Hastings, Inc.*, 524 N.W.2d 311, 313 (Neb. 1994) (emphasis added). Nebraska's discovery rule is reserved for cases where "the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage." *Shlien v. Bd. of Regents, Univ. of Nebraska*, 640 N.W.2d 643, 650 (Neb. 2002). Only "in a case where the injury is not obvious and is neither discovered nor discoverable within the limitations period running from the wrongful act or omission" is the statute of limitations tolled

"until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury." *Id.* Nebraska has maintained a consistent approach to the discovery rule.[1]

In his Opposition, Plaintiff completely ignores *Thomas*, *Shlien*, and all of the other consistent statements of Nebraska law. Instead, he cites *Condon v. A. H. Robins Co., Inc.*, 349 N.W.2d 622 (Neb. 1984), and claims that "[t]he view of the Nebraska Supreme Court was that the discovery rule turns on the plaintiff's discovery of an injury *giving rise to a legal action*." (Opp'n at 6 (emphasis added).)

In actuality, *Condon* squarely held that

> By applying a discovery rule . . . , we are not providing that the statute of limitations does not begin to run until someone advises an individual either that the injury or damage which they already know they have sustained is actionable or advises them who it is that should be sued. Discovery . . . refers to the fact that one knows of the existence of an injury or damage and not that one knows he or she has a legal right to seek redress in the courts.

349 N.W.2d at 627.

Thus, contrary to Plaintiff's claims, in Nebraska the limitations period does not begin running only after a potential plaintiff has identified the cause of the injury or the existence of a potential lawsuit. *See also Gordon v. Connell*, 545 N.W.2d 722, 726 (Neb. 1996) ("'Discovery,' in

---

[1] *See, e.g.*, *Chafin v. Wisconsin Province of Soc'y of Jesus*, 917 N.W.2d 821, 824 (Neb. 2018) ("Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court."); *Mandolfo v. Mandolfo*, 281 Neb. 443, 450, 796 N.W.2d 603, 610 (Neb. 2011) ("When the discovery rule applies, the statute of limitations does not begin running until the plaintiff discovers, or reasonably should have discovered, the injury."); *Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 384 (Neb. 2007); ("[U]nder the discovery rule, the statute of limitations runs from the time that the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury."); *Gering-Fort Laramie Irr. Dist. v. Baker*, 612 N.W.2d 897, 902–03 (Neb. 2000) ("'Discovery,' in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury, and it is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed."); *Teater v. State*, 559 N.W.2d 758, 763 (Neb. 1997) ("The focus is not on when the injured party recognizes whose negligence is responsible for the injury, but, rather, the statute of limitations begins to run on the date on which the party holding the cause of action discovers or, in the exercise of reasonable diligence, should have discovered the existence of the injury.").

the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress."). Plaintiff's citation to *Ward v. City of Alliance*, 417 N.W.2d 327 (Neb. 1988), is equally misguided. *Ward* quotes *Condon*'s key language and adds that "the statute of limitations begins to run, when the aggrieved party has the right to institute and maintain suit, even though such plaintiff may be ignorant of the existence of the cause of action." 417 N.W.2d at 331. As shown by the host of authority already cited, courts in Nebraska have not read *Ward* to mean that the limitations period does not run until a plaintiff identifies the cause or source of his injury.[2]

The "state law as announced by the highest Court of the State" is clear. *See Bosch's Estate*, 387 U.S. at 465. Under Nebraska's discovery rule, the four-year statute of limitations began to run when Plaintiff was diagnosed with NHL in 2008 and had expired by the time he filed suit in 2016. *See, e.g.*, *McElroy v. Janssen Pharmaceutica, Inc.*, 4:06CV3154, 2007 WL 1395585, at *1 (D. Neb. May 9, 2007), aff'd, 282 Fed. Appx. 510 (8th Cir. 2008) ("McElroy filed his complaint in this matter on June 26, 2006. Because it is alleged in the complaint that McElroy was diagnosed with hyperglycemia, diabetes, and acute renal failure more than four years prior to such date, his product liability claim is barred." (applying Nebraska law)). Summary judgment is thus required.

## THERE IS NO EVIDENCE TO SUPPORT EQUITABLE TOLLING BASED ON FRAUDULENT CONCEALMENT

In its Motion, Monsanto established that Plaintiff was not entitled to equitable relief from the statute of limitations. (Mot. at 5–6.) In his Opposition, Plaintiff asserts a single theory of equitable estoppel—fraudulent concealment. (*See* Opp'n at 8–13.) This theory cannot save Plaintiff's claims.

---

[2] Notably, Nebraska is well aware of the injury/cause distinction. The products-liability statute of limitations contains a special provision for asbestos cases that tolls the running of the period until the plaintiff discovers both the injury and its cause. NEB. REV. STAT. ANN. § 25-224(5). It cannot be credibly argued that the special approach reserved for asbestos cases applies to all cases.

"[T]o successfully assert the doctrine of fraudulent concealment and thus estop the defendant from claiming a statute of limitations defense, *the plaintiff must show* 'the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the" potential claim. *Andres v. McNeil Co., Inc.*, 707 N.W.2d 777, 787 (Neb. 2005) (quoting *Schendt v. Dewey*, 568 N.W.2d 210, 213 (Neb. 1997)) (emphasis added). "[G]enerally, for fraudulent concealment to estop the running of the statute of limitations, the concealment must be manifested by an affirmative act or misrepresentation." *Id.*

To be entitled to rely on fraudulent concealment, Plaintiff must also "show[s] that he or she exercised due diligence to discover his or her cause of action before the statute of limitations expired." *Id.* (quoting *Upah v. Ancona Bros. Co.*, 521 N.W.2d 895, 902 (Neb. 1994)). Lastly, "if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel." *Id.* (quoting *MacMillen v. A.H. Robins Co.*, 348 N.W.2d 869, 871 (Neb. 1984*)*).[3]

Plaintiff's attempt to assert fraudulent concealment is unsuccessful because he (1) defends only the adequacy of his pleading without submitting any evidence to even attempt to create a question of material fact on the elements of fraudulent-concealment, (2) fails to adduce any evidence that Monsanto committed an affirmative deceptive act or affirmatively violated a duty, (3) fails to adduce any evidence that Monsanto's wrongful conduct actually prevented him from discovering

---

[3] Plaintiff notes that the defendant bears the burden of proving the statute-of-limitations affirmative defense. (Opp'n at 8.) Monsanto has proven that the statute of limitations' *prima facie* application, which Plaintiff does not even contest. Instead, Plaintiff asserts an exception to the statute of limitations, equitable estoppel. As shown by *Andres*, it is Plaintiff's burden to prove the applicability of the exception. *See also Durre v. Wilkinson Dev., Inc.*, 830 N.W.2d 72, 79 (Neb. 2013) (confirming this burden allocation in the summary-judgment context); *Flores v. First Hawaiian Bank*, 642 Fed. Appx. 696, 698 (9th Cir. 2016) (affirming summary judgment based on the statute of limitations where the plaintiff "did not raise a material issue of fact that Defendant fraudulently concealed facts that prevented him from discovering his claim").

his (meritless) claim against Monsanto, (4) fails to adduce any evidence of the requisite due diligence, and (5) had ample time to assert his claim in a timely fashion, notwithstanding any alleged concealment by Monsanto.

First, in his attempt to show fraudulent concealment, Plaintiff relies heavily on *Chafin v. Wisconsin Province of Soc'y of Jesus*, 917 N.W.2d 821 (Neb. 2018), which he describes as "[t]he Nebraska Supreme Court's relevant decision on this issue." (Opp'n at 9–10.) *Chafin*, however, dealt with the adequacy of pleadings under Nebraska procedural law. *See* 917 N.W.2d at 825 ("In order to survive a motion to dismiss, a complaint alleging fraudulent concealment must plead with particularity how material facts were concealed to prevent the plaintiff from discovering the misconduct and how, through due diligence, the plaintiff failed to discover his or her injury.")

A party opposing summary judgment "may not rest upon the mere allegations or denials in the pleadings." *Dark v. Curry County*, 451 F.3d 1078, 1082 (9th Cir. 2006). Indeed, at this stage, the adequacy of the pleadings is wholly irrelevant. *See Whitlock v. Pepsi Americas*, 681 F. Supp. 2d 1116, 1123 (N.D. Cal. 2010) (explaining that a motion for summary judgment "does not challenge the *adequacy* of the allegations in the complaint, but challenges the *sufficiency* of plaintiffs' evidence in support of" their claims). Because Plaintiff ignores the summary-judgment standard and merely defends the adequacy of his pleading, the vast majority of his fraudulent-concealment argument is simply irrelevant.[4] In the five-plus pages ostensibly supporting a

---

[4] *See, e.g.*, Opp'n at 9 ("A complaint, which alleges that a defendant has concealed facts that prevented discovery of misconduct or a link between Plaintiff's injury and an act, omission or product characteristic of the Defendant, alleges sufficient facts to toll the statute of limitations." (citing *Chafin*)); at 9 ("Mr. Dickey's initial complaint . . . alleges that, among other things, . . . ."); at 10 ("Mr. Dickey also affirmeatively pled tolling and equitable estoppel in his original Nebraska Complaint alleging that . . . ."); at 11 ("Mr. Dickey's complaint affirmatively asserts the steps Monsanto took to conceal the truth about Roundup®. The complaint alleges . . . .); at 12 (after describing the *Andres* burden of proof: "Plaintiff Dickey had readily done so *in his Complaint*." (emphasis added)); at 12 ("In this case, the allegations in Mr. Dickey's original Complaint are extensive and specific about how it was nearly impossible for him and the general public to discover the information Monsanto guarded so secretively.").

fraudulent-concealment theory, Plaintiff cites record evidence *once* (*see* Opp'n at 8–13)—and that is his own deposition transcript, which obviously does not provide evidence of any misconduct by Monsanto, let alone evidence to establish all of the fraudulent-concealment elements (*see* Opp'n at 11).

Plaintiff has failed to come forward with evidence raising a genuine question of material fact supporting any fraudulent-concealment theory. Accordingly, Monsanto is entitled to summary judgment based on the statute of limitations. *See, e.g.*, *First v. Allstate Ins. Co.*, CV 98-3394 RJK, 2000 WL 33122757, at *5 (C.D. Cal. Dec. 20, 2000).

Second, there is no evidence that Monsanto fraudulently concealed anything from Plaintiff. Plaintiff does cite some evidence of Monsanto's conduct in the Introduction to his Opposition—five emails and a document entitled "2004 Product Safety Centre – Toxicology Goals"[5] (*see* Pl.'s Exs. 3–4, 6, 8–10)—but he fails to explain how, if at all, they relate to the fraudulent-concealment elements. Having wholly failed to explain how this evidence satisfies the elements of fraudulent concealment, Plaintiff has necessarily "fail[ed] to make a showing sufficient to establish" the existence of any triable issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Third, Plaintiff also fails to identify any evidence showing that Monsanto's conduct "prevent[ed] [him] from discovering" potential claims against Monsanto. *Andres,* 707 N.W.2d at

---

[5] Plaintiff also cites publicly available studies that were not conducted by Monsanto. (*See* Exs. 5, 7 to Pl.'s Opp'n; *see also* Opp'n at 3 n. 1 (citing an EPA study that allegedly indicated glyphosate may be dangerous).) This is evidence of information that was equally available to Plaintiff; it is not evidence of any fraudulent concealment by Monsanto. Notably, Plaintiff claims that "Monsanto actively suppressed the results of studies that showed that Roundup was a carcinogen," but does not explain how it "suppressed" publicly available studies. (*See* Opp'n at 2; *see also* Opp'n at 4 (claiming, without citation or explanation, that Monsanto "suppressed knowledge" of the Indian Institute of Technology study submitted as Plaintiff's Exhibit 7).) Plaintiff seems to impliedly argue that Monsanto has a duty to acknowledge and amplify all adverse studies relating to glyphosate. That is a novel and extraordinary contention.

- 7 -
REPLY IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS NO. 3:16-MD-02741-VC

787. Plaintiff concedes that, early on, he "suspected Roundup® may have been the cause of his illness." (Opp'n at 1.) As observed in the Motion, he suspected Roundup as early as 2009 based on "magazines, bulletins," and "information" he received from his doctor. (Mot. at 5 (quoting Pl.'s Dep. at 226:10–15).) Accordingly, he had the information necessary to discover his claims against Monsanto, and summary judgment is warranted for this independent reason. *See Durre*, 830 N.W.2d at 80 (affirming summary judgment based on the statute of limitations where the plaintiff "failed to provide any evidence that created a material issue of fact whether [the defendant] fraudulently concealed any material fact" that "prevented [plaintiff] from timely filing his action").

Fourth, Plaintiff does not identify any evidence to show due diligence, and the Motion should be granted for this independent reason as well. *See Andres*, 707 N.W.2d at 787 (requiring the plaintiff asserting fraudulent concealment to show due diligence). In any event, the undisputed facts demonstrate that Plaintiff did not diligently investigate or pursue his suspicions as to the cause of his injury. Even though he suspected a link between Roundup and NHL in 2009, there is no evidence that Plaintiff (a) began looking into the link between Roundup and NHL, (b) consulted with medical or scientific professional who might know something about a link between Roundup and NHL, (c) contacted an attorney to discuss any link between Roundup and NHL, or (d) otherwise "exercised due diligence to discover his or her cause of action before the statute of limitations expired." *See Andres id*. Instead, he sat on his hands and took action only after a third party (IARC) opined as to the existence of a link between Roundup and NHL. The Motion should be granted based on Plaintiff's failure to show diligence.

Plaintiff also admitted his lack of diligence during his deposition. Specifically, Plaintiff's own counsel elicited testimony that, *despite suspecting a link between Roundup and his NHL*, Plaintiff did nothing to preserve his legal rights until hiring counsel in connection with this litigation. (Ex. 1 to Pl.'s Opp'n at 250:24-251:15.)

Fifth, given that Plaintiff first suspected that Roundup caused his NHL in 2009, he had "ample time" to sue Monsanto before the statute of limitations expired. *See Andres*, 707 N.W.2d at 787; *see also Gering-Fort*, 612 N.W.2d at 904 (finding the fraudulent-concealment "inapplicable" and affirming summary judgment based on the statute of limitations where the plaintiff knew, within the limitations period, "facts such that it could reasonably have discovered its cause of action"). Plaintiff's implied argument that he was entitled to wait for purported "confirm[ation]" (*see* Opp'n at 1) contradicts Nebraska law. *See Weaver v. Cheung*, 576 N.W.2d 773, 778–79 (Neb. 1998) (finding the fraudulent-concealment doctrine inapplicable and affirming summary judgment due to the statute of limitations based on the date plaintiff began to suspect defendant had harmed her). "Thus, the uncontroverted evidence reflects that [Plaintiff] discovered [his] cause of action well within the [4]-year limitations period, and there is no evidence in the record that [he] was denied an opportunity to seek redress before [his] action became time barred." *See id.*

## CONCLUSION

For the foregoing reasons and those given in the Motion, Plaintiff's claims are time-barred, and Monsanto is entitled to summary judgment.

| | |
|---|---|
| DATED: December 23, 2019 | Respectfully submitted, |
| | /s/ Michael X. Imbroscio_____ |
| | Michael X. Imbroscio (*pro hac vice*)<br>(mimbroscio@cov.com)<br>COVINGTON & BURLING LLP<br>One City Center<br>850 10th St. NW<br>Washington, DC 20001<br>Tel: 202-662-6000 |
| | Brian L. Stekloff (*pro hac vice*)<br>(bstekloff@wilkinsonwalsh.com)<br>Rakesh Kilaru (*pro hac vice*)<br>(rkilaru@wilkinsonwalsh.com)<br>WILKINSON WALSH + ESKOVITZ LLP<br>2001 M St. NW, 10th Floor<br>Washington, DC 20036<br>Tel: 202-847-4030<br>Fax: 202-847-4005 |
| | William Hoffman (*pro hac vice*)<br>(William.Hoffman@arnoldporter.com)<br>ARNOLD & PORTER KAYE SCHOLER<br>601 Massachusetts Avenue, N.W.<br>Washington, DC 20001<br>Tel: 202-942-6915<br>Fax: 202-942-5999 |
| | Eric G. Lasker (*pro hac vice*)<br>(elasker@hollingsworthllp.com)<br>HOLLINGSWORTH LLP<br>1350 I St. NW<br>Washington, DC 20005<br>Tel: 202-898-5843<br>Fax: 202-682-1639 |
| | Attorneys for Defendant<br>MONSANTO COMPANY |

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Michael X. Imbroscio*