**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) ) **REPLY BRIEF IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS** |
| *Dickey v. Monsanto Co.*, 3:19-cv-04102-VC | |
| *Domina v. Monsanto Co.*, 3:16-cv-05887-VC | |
| *Janzen v. Monsanto Co.*, 3:19-cv-04103-VC | |
| *Pollard v. Monsanto Co.*, 3:19-cv-04100-VC | |

1

## INTRODUCTION

In their opposition brief (Dkt. No. 8350), the Nebraska Plaintiffs do not refute Monsanto's arguments for why their claims are not viable under **Nebraska** law. *See* Mot. (Dkt. No. 8005). On the issue of punitive damages, they offer no reason why Nebraska's punitive damages bar is inapplicable, and instead request that the Court not rule on the issue (although the Court has authority to do so, the issue is fully briefed, and there are no factual disputes related to choice of law). On the design defect claims, the Nebraska Plaintiffs fail to identify a specific defect in Roundup's formulation that could serve as a basis for a claim. On the warranty claims, they acknowledge their implied warranty claim cannot proceed in tandem with other failure-to-warn claims, and they fail to identify any express warranty made by Monsanto that they relied upon when purchasing Roundup. And, on the failure-to-warn claims, they offer no reliable evidence demonstrating that the prevailing science at the time of distribution (or ever) was that Roundup was carcinogenic. For these reasons, Monsanto is entitled to summary judgment on all claims.

## ARGUMENT

### I. THE NEBRASKA PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AS A MATTER OF NEBRASKA LAW.

The Nebraska Plaintiffs concede that Nebraska law bars punitive damages, but argue that "this case raises complicated choice of law issues," and Missouri law might (or might not) control the issue of punitive damages since conduct giving rise to punitive damages allegedly occurred in Missouri. *See* Opp'n Br. 8 ("**it is possible** that a Nebraska trial court could conclude that Missouri has a greater interest in applying its punitive damages law than Nebraska in applying its ban") (emphasis added).

The choice-of-law question in this case is not "complicated." It is straightforward and should be decided on summary judgment because there is no dispute about the relevant facts. Each Nebraska Plaintiff is from Nebraska and alleges he was exposed to Roundup in Nebraska. *See* Mot. at Ex. 1, Compl. ¶¶ 10-13. Moreover, while the Nebraska Plaintiffs now assert, without any evidentiary support, that the conduct giving rise to punitive damages occurred in Missouri,

0

their Complaint alleges exactly the opposite – namely, that each Plaintiff was injured due to Monsanto's conduct in Nebraska. *See id*. ¶ 15 ("Plaintiffs were injured . . . as result of Monsanto's actions to distribute and sell Roundup® in Nebraska for the past 25 years or more"); *see also id*. ¶ 14 ("Monsanto is authorized to do business in Nebraska."). And Nebraska courts uniformly hold that Nebraska's punitive damages bar applies where, as here, the plaintiffs are from Nebraska, their injury occurred in Nebraska, and the plaintiffs allege their injury was caused by the defendants' actions in Nebraska. *See* Mot. at 4 (citing five cases).

The Nebraska Plaintiffs cite two cases (*O'Brien* and *Fanselow*) to argue otherwise, but neither supports their argument. *See* Opp'n Br. 9. In *O'Brien v. Cessna Aircraft Co.*, the Nebraska Supreme Court held that Nebraska's punitive damages bar applied in a tort case brought against a Kansas defendant because: "[t]he injury occurred in Nebraska"; "Plaintiffs are Nebraska residents"; "the Cessna aircraft product at issue was operated at all relevant times within the borders of Nebraska"; and "the alleged product failures took place in this state." 903 N.W.2d 432, 460 (Neb. 2017). The Nebraska Plaintiffs are correct that *O'Brien* acknowledged a state's law other than the place of injury **can** govern in a tort case if that state "has a more significant relationship" to the dispute, but that wasn't the case in *O'Brien* and is not the case here. *Id*. at 459.[1] Here, as in *O'Brien*, Nebraska has the most significant relationship to the dispute, even though Monsanto's principal place of business is in Missouri, because the injury occurred in Nebraska, Plaintiffs are Nebraska residents, and the Roundup at issue was sold and used in Nebraska.

*Fanselow v. Rice* also does not help the Nebraska Plaintiffs. There, the court applied out-of-state law to punitive damages because none of the parties were from Nebraska: the deceased plaintiffs formerly resided in Colorado, their surviving children resided in Colorado,

---

[1] The Court held the following contacts should be taken into account in deciding what state has the "most significant relationship": "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *O'Brien*, 903 N.W.2d at 459 (quoting Restatement (Second) of Conflict of Laws § 145).

Massachusetts, and California, and the defendants resided in Minnesota and Texas. 213 F. Supp. 2d 1077, 1085 (D. Neb. July 30, 2002). Nebraska courts routinely confine *Fanselow* to cases where the only connection to Nebraska is the place of injury. *See Kabasinskas v. Haskin*, No. 8:10-cv-111, 2011 WL 1897546, at *5 (D. Neb. May 18, 2011) (*Fanselow* was inapposite since "Nebraska is where: the conduct leading to the accident occurred; the accident happened; and, importantly, where [defendant] is registered as a foreign corporation and regularly does business, owns real property, operates a terminal, and employs workers"); *Bamford, Inc. v. Regent Ins. Co.*, No. 8:13-cv-200, 2014 WL 12539650, at *3 (D. Neb. June 12, 2014) (*Fanselow* was inapposite because Defendant "is actively registered with the Nebraska Department of Insurance and doing business in this state"). *Fanselow* is also inapposite here because this case has many connections to Nebraska beyond being the place of injury. In addition to the Nebraska contacts explained above, as in *Kabasinskas* and *Bamford*, the Nebraska Plaintiffs allege that Monsanto has a significant business presence in Nebraska since it is registered to do business in Nebraska and has distributed and marketed Roundup in Nebraska for more than 25 years. *See* Mot. at Ex. 1, Compl. ¶¶ 14-15.

Finally, the Nebraska Plaintiffs request that the Court allow the Nebraska trial court to decide what state's law applies to punitive damages. Opp'n Br. 9. But there is no reason to delay a ruling. This Court has ordered the parties to brief summary judgment in the MDL, *see* PTO No. 150 (Scheduling Order for Wave 1 Cases), and previously stated it "will decide all case-specific summary judgment motions," *see* PTO No. 158 (Order re: *Daubert* Choice of Law). Conflict-of-law questions are resolved by "the judge, not a jury" and are "frequently made by the district judge on a summary judgment motion." *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1161 (N.D. Cal. 2016); *see also O'Brien*, 903 N.W.2d at 460 (affirming ruling on summary judgment that Nebraska's punitive damages bar applied).[2] And critically, the Nebraska Plaintiffs identify no issue of disputed fact that is relevant to the choice-of-law inquiry.

---

[2] *See also, e.g.*, *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1230–31 (9th Cir. 2006) (court overseeing MDL has "authority to decide all pretrial motions, including

2

## II. SUMMARY JUDGMENT IS WARRANTED ON THE DESIGN DEFECT CLAIMS BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE THAT A SPECIFIC DESIGN DEFECT CAUSED THEIR NHL.

The Nebraska Plaintiffs do not contest that, to prove a design defect claim under Nebraska law, they must do more than show a failure to warn; they must also prove there is an identifiable defect in Roundup's formulation that caused their NHL.  *See* Mot. at 6-8.  Despite acknowledging that this is the law, the Nebraska Plaintiffs merely argue (in a footnote) that they meet this standard because "Monsanto failed to exercise reasonable care in designing and testing its Roundup formulation."  Opp'n Br. (Dkt. No. 8350), at 5-6 n.6.  But these vague allegations are not evidence of any particular flaw with Roundup's formulation that is the alleged cause of Plaintiffs' injuries, and therefore do not support a design defect under well-established Nebraska law. *See Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 612 (Neb. 2019); *Roskop Dairy, L.L.C. v. GEA Farm Techs., Inc.*, 871 N.W.2d 776, 800 (Neb. 2015); *O'Brien*, 903 N.W.2d at 449.

## III. THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THE NEBRASKA PLAINTIFFS HAVE NOT IDENTIFIED AN EXPRESS WARRANTY THAT WAS BREACHED.

The Nebraska Plaintiffs concede that an express warranty only arises if the defendant makes a specific affirmation of fact or express promise.  *See* Mot. at 7; Opp'n Br. at 6.  The Nebraska Plaintiffs argue two categories of statements created express warranties that Monsanto breached: (1) the statements allegedly made by Monsanto that the New York State Attorney General alleged were false advertising in 1996; and (2) statements allegedly made by unnamed sales representatives at local meetings in Nebraska that Roundup was "safe enough to drink." Opp'n Br. at 6-7.  Neither of these categories can give rise to an express warranty claim.

First, the "advertising statements" (listed in paragraph 39-40 of the Nebraska Plaintiffs complaint, *see* Mot. at Ex. 1) are insufficient because they were not relied upon by Plaintiffs. *See Hillcrest Country Club v. N.D. Judds Co.*, 461 N.W.2d 55, 61 (Neb. 1990) ("[S]ince an

---

dispositive motions such as . . . motions for summary judgment"); *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, MDL No. 1448, 2006 WL 1288298, at *4–5 (S.D.N.Y. May 9, 2006) (court overseeing MDL held that French Law governs the issue of punitive damages, so "punitive damages are not recoverable").

3

express warranty must have been 'made part of the basis of the bargain,' it is essential that the plaintiffs prove reliance upon the warranty.") (quotation omitted); *Krajewski v. Enderes Tool Co.*, 396 F. Supp. 2d 1045, 1052 (D. Neb. 2005) (granting motion to dismiss where express warranty was not relied upon by plaintiff and thus "was not part of the basis of the bargain"), *aff'd*, 469 F.3d 705 (8th Cir. 2006). Indeed, the Nebraska Plaintiffs did not allege in their Complaint and have not pointed to any evidence indicating they were aware of the advertising statements challenged by the New York Attorney General, let alone that they relied upon them as a basis for purchasing Roundup products. *See* Mot. at Ex. 1, Compl. ¶¶ 139-146. This distinguishes the cases cited by the Nebraska Plaintiffs, both of which involved plaintiffs who proved they relied upon warranties made in advertising materials when purchasing a product. *See Hillcrest*, 461 N.W.2d at 62 (concluding there was "competent evidence that [the seller] supplied [the buyer] with the material the latter relied upon"); *Peterson v. N. Am. Plant Breeders*, 354 N.W.2d 625, 629 (Neb. 1984) ("[the buyer] studied advertising literature published by defendant [the seller]").

Second, the statements the Nebraska Plaintiffs allege were made by unnamed sales representatives at local meetings do not give rise to a warranty claim because a warranty is only created by an affirmation of fact or promise "made by the seller." *See* Neb. Rev. Stat. U.C.C. § 2-313. Yet the Nebraska Plaintiffs do not allege that Monsanto represented that Roundup was "safe enough to drink" on its label, in its advertising material, in public statements made by its executives, or in any other way that would bind Monsanto at a corporate level.

To the extent the Nebraska Plaintiffs argue the unnamed sales representatives were Monsanto's agents acting on its behalf, this argument is precluded by the undisputed evidence. "The burden is upon the party alleging the existence of the agency relationship to prove that the 'agent's authority and the agent's acts, for which liability against the principal is sought, are within the scope of the agent's authority.'" *See Double K, Inc. v. Scottsdale Ins. Co.*, 515 N.W.2d 416, 419 (Neb. 1994) (quoting *Wolfson Car Leasing Co., Inc. v. Weberg,* 264 N.W.2d 178, 182 (Neb. 1978)). Applied here, the Nebraska Plaintiffs cannot prove the unnamed sales representatives at issue worked for Monsanto, had authority to bind Monsanto, or were acting

4

within such authority when they allegedly said Roundup was "safe enough to drink." To the contrary, Plaintiffs Domina, Pollard, and Dickey could not even identify the name of the individual who they claim made the statement.[3] And Plaintiff Janzen testified a third-party distributor of Roundup told him he saw a "guy" drink Roundup at a Monsanto meeting.[4] These scant details, the latter of which is clearly inadmissible hearsay, are insufficient as a matter of law to establish that an agent of Monsanto, acting with his or her authority delegated from Monsanto, warranted that Roundup was "safe enough to drink."

In sum, Monsanto is entitled to summary judgment on the express warranty claims because the Nebraska Plaintiffs have not and cannot identify any relevant warranty made by Monsanto that they relied upon when purchasing Roundup.

### IV. THE IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE MERGED INTO THE STRICT LIABILITY CLAIMS.

The Nebraska Plaintiffs concede that their implied warranty claims should be dismissed as duplicative of their failure-to-warn claims, so the Court should dismiss the implied warranty claims. *See* Opp'n Br. at 8.

### V. THE FAILURE-TO-WARN CLAIMS SHOULD BE DISMISSED BECAUSE MONSANTO DID NOT HAVE A DUTY TO WARN OF THE ALLEGED CANCER RISK AT THE TIME OF THE RELEVANT DISTRIBUTION.

The Nebraska Plaintiffs acknowledge that Monsanto only has a duty to warn for risks of harm that were "known or knowable based on prevailing scientific or medical evidence at the time." *See* Opp'n Br. at 4; Mot. at 9-10. They cannot satisfy this standard. While the Nebraska Plaintiffs argue that there were some indications that glyphosate was "a possible carcinogen" in the 1980s and 1990s, *see* Opp'n Br. at 4-5, those outlier studies are inconsistent and contradicted

---

[3] *See* Opp'n Br. at Ex. 1, Domina Dep. Tr., 145:19-20 ("Q. Do you happen to know the names of any of those individuals? A. No."); Opp'n Br. at Ex. 2, Dickey Dep. Tr., 117:3-24 (not identifying by name any particular Monsanto's sales representative); Opp'n Br. at Ex. 4, Pollard Dep. Tr., 98:16-19 ("Q. Do you recall who -- who said that, who actually made that presentation? A. No. He wasn't my representative, and I didn't know who he was.").

[4] *See* Opp'n Br. at Ex. 3, Janzen Dep. Tr., 178:6-8 ("The guy that I -- sold it to me, he said he was at a meeting where a guy drank a cupful of it. What that means, I don't know.").

5

by the credible scientific evidence and uniform opinions of world regulatory agencies both at the time of distribution and today – all of which conclude that that Roundup is safe and not carcinogenic to humans. *See* Mot. at 9-11.

The Nebraska Plaintiffs argue that the EPA's 2019 report, confirming that the prevailing science continues to show that glyphosate-containing products are not carcinogenic, is irrelevant because it is about glyphosate, rather than Roundup, which contains other ingredients in addition to glyphosate. Opp'n Br. at 4, n.3. While this critique is true of the studies the Nebraska Plaintiffs cite, *see* Opp'n Br. at 4-5, it is not true of the EPA's most recent report, which explains:

> Most pesticide products contain substances in addition to the active ingredient (known as inert ingredients) which aid in the performance and effectiveness of the pesticide product. . . . The EPA evaluates the active and inert ingredients' hazard potential (*i.e.*, toxicity) with a battery of toxicity data. . . . **Glyphosate has been studied in a multitude of studies, including on multiple formulations that contain glyphosate. All studies of adequate scientific caliber that the Agency was aware of were incorporated into the risk assessment.**

Mot. at Ex. 3, EPA April 2019 Proposed Interim Registration Review Decision at 10-11; *see also* Mot. at Ex. 4, EPA August 2019 Letter at 2 ("Therefore, EPA will no longer approve labeling that includes the Proposition 65 warning statement for **glyphosate-containing products**.") (emphasis added).[5]

Overall, the undisputed evidence unequivocally shows that Monsanto did not have a duty to warn because "the prevailing state of the art in the industry" was – and remains – that Roundup is safe and not carcinogenic to humans. *See* Neb. Rev. Stat. § 25-21, 182.

---

[5] The Nebraska Plaintiffs also argue that the EPA's August 2019 Letter (Mot. at Ex. 4) is irrelevant because it was published in the context of Proposition 65, but the letter is highly relevant because it expressly rejects the Nebraska Plaintiffs' argument that there is credible scientific evidence concluding that glyphosate is "probably carcinogenic to humans." *See* Mot. at Ex. 4.

## VI. SUMMARY JUDGMENT IS REQUIRED BECAUSE THE NEBRASKA PLAINTIFFS CANNOT PROVE CAUSATION.

Monsanto incorporates its reply briefs in support of its *Daubert* motions, which are being filed contemporaneously with this reply brief, and reiterates that the Nebraska Plaintiffs cannot establish causation as a matter of law without admissible expert testimony. *See* Mot. at 5-6.

## CONCLUSION

For the reasons explained above and in Defendants' motion for summary judgment, Monsanto respectfully requests that the Court enter judgment in Monsanto's favor on all of the Nebraska Plaintiffs' claims.

DATED: December 23, 2019

Respectfully submitted,

/s/ Michael X. Imbroscio_____

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Michael X. Imbroscio*

9

REPLY BRIEF IN SUPPORT OF MONSANTO'S MOTION FOR SUMMARY JUDGMENT RE: NEBRASKA WAVE 1 PLAINTIFFS ON NEBRASKA LAW GROUNDS NO. 3:16-MD-02741-VC