**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No.: 3:16-cv-05658-VC<br><br>MDL No. 2741<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. CHARLES BENBROOK**<br><br>Hearing date: Jan. 29, 2020<br>Time: |
| *Dickey v. Monsanto Co.*, 3:19-cv-04102-VC<br>*Domina v. Monsanto Co.*, 3:16-cv-05887-VC<br>*Giglio v. Monsanto Co.*, 3:16-cv-05658-VC<br>*Janzen v. Monsanto Co.*, 3:19-cv-04103-VC<br>*Mendoza v. Monsanto Co.*, 3:19-cv-06046-VC<br>*Perkins v. Monsanto Co.*, 3:16-cv-06025-VC<br>*Pollard v. Monsanto Co.*, 3:19-cv-04100-VC<br>*Russo v. Monsanto Co.*, 3:16-cv-06024-VC<br>*Sanders v. Monsanto Co.*, 3:16-cv-05752-VC<br>*Tanner v. Monsanto Co.*, 3:19-cv-04099-VC | |

## I. INTRODUCTION

Plaintiffs' Opposition confirms that Dr. Benbrook is being offered primarily to provide his personal "interpretation" of Monsanto's internal corporate documents—documents about which he has no personal knowledge and which do not require expert "interpretation." Plaintiffs' Opposition largely recites Dr. Benbrook's CV. But a regurgitation of Dr. Benbrook's credentials misses the mark. Monsanto does not dispute that Dr. Benbrook has general experience in the area of agricultural economics, but that is not the area on which he seeks to offer opinions in this case. Dr. Benbrook lacks the requisite qualifications, and his opinions are not proper topics of expert testimony. Evidence regarding factual matters should come in (if at all) through fact witnesses, not a partisan expert. Dr. Benbrook's testimony should be excluded.

## II. ARGUMENT

### A. Dr. Benbrook Lacks the Requisite Qualifications to Offer His Proffered Opinions in These Cases.

Despite spending several pages of their Opposition reciting Dr. Benbrook's credentials, Plaintiffs fail to identify any experience that qualifies Dr. Benbrook to opine about Monsanto's internal corporate documents or its alleged legal/regulatory duties. It is undisputed that Dr. Benbrook has never worked for any regulatory agency, including EPA, or any pesticide company; he also is not and has never been a lawyer or regulator. As such, he is not qualified to testify regarding so-called "industry" standards, nor is he qualified to testify about the regulatory schemes applicable to pesticide manufacturers like Monsanto. He also is not trained in toxicology or any field of medicine; he therefore lacks sufficient expertise to opine about the complex scientific issues in this case.

Plaintiffs vaguely claim, without citing any authority, that Dr. Benbrook was involved in analyzing compliance with FIFRA, including FIFRA § 6(a)(2), but Dr. Benbrook admitted that he did not "know the details of the [regulations] well enough to say whether [Monsanto] would be obligated to submit" a final version of a certain study to the EPA. (Mot. at 6 (citing Benbrook *Hardeman* Dep. at 163:2-11).) He further admitted that he never had direct responsibility for

regulating pesticides. *See* Ex. 7 to Mot. to Exclude Benbrook, Dep. of Dr. Charles Benbrook, *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cnty. Feb. 8, 2018) ("2/8/2018 Benbrook *Johnson* Dep.") at 85:9-11. Despite Dr. Benbrook's admitted lack of familiarity with section 6, this is precisely what Plaintiffs now say Dr. Benbrook will testify about. (Opp'n at 16.) Dr. Benbrook's lack of relevant expertise requires exclusion of his opinions regarding Monsanto's behavior, corporate documents, and purported duties.

**B. The Court Should Preclude Dr. Benbrook from Narrating or Summarizing Monsanto Documents or Offering Opinions About Monsanto's Intent, Motive, or State of Mind.**

Plaintiffs cannot avoid the well-settled law that an expert is not permitted to opine regarding the intent, motive, or state of mind of a corporation. While purporting to disclaim any such intention, the Opposition makes clear that Dr. Benbrook will simply narrate internal Monsanto documents under the guise of expert opinion. Plaintiffs' argument that Dr. Benbrook should be permitted to testify "about underlying factual matters that the jury may consider in assessing Monsanto's intent, motive, and state of mind" is nothing more than a creative attempt to avoid the prohibition on expert testimony about corporate intent. (Opp'n at 11.) It should not be permitted.

The vast majority of Dr. Benbrook's proposed testimony as laid out in his report and prior trial testimony consists of his narrations or "interpretations" about how various internal Monsanto documents purportedly demonstrate liability themes, usually by claiming to discern motives or knowledge from his review of the documents. Although Plaintiffs deftly attempt to portray these as "expert conclusions based on a very systematic review of the source materials," (Opp'n at 12), they are actually slanted "interpretations" that fall squarely within the province of the jury as the fact-finder. Indeed, Monsanto's Motion provided several examples from Dr. Benbrook's report and prior testimony illustrating that his opinions in this case will enter into the forbidden territory of opining about corporate intent, which Plaintiffs do not even attempt to rebut.

1  Nor are the documents so "complex" or "technical" that they require explanation by an expert, as Plaintiffs also contend. (Opp'n at 14.) Plaintiffs do not offer a single example of a purported "complex" document, instead simply making the blanket and conclusory argument that all Monsanto and EPA documents are beyond jurors' comprehension. There is nothing so complicated about internal emails and day-to-day communications—as opposed to other documents (like epidemiology studies) at issue in this trial—that require expert explanation. The jury is fully capable of reviewing these documents, assessing them, and coming to their own views about them and about Monsanto's conduct without the "aid" of Dr. Benbrook. Juries routinely evaluate corporate documents to determine facts without the aid of an expert, and Plaintiffs point to nothing special, unusual, or complicated here that makes these documents any different.

Reading corporate and EPA documents, and then telling the jury how he thinks they should be interpreted or what he thinks they show about Monsanto's state of mind or behavior, is simply not an appropriate task for an expert witness. *See, e.g.*, *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) (precluding an expert from testifying to advocacy-based "narrative histories" summarizing a pharmaceutical company's promotion of a hormone therapy drug); *In re Rezulin Products*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (precluding testimony that was a "narrative reciting selected regulatory events" because "[s]uch material, to the extent is admissible, is properly presented through percipient witnesses and documentary evidence"). For this reason, judges in prior Roundup trials have prohibited Dr. Benbrook from providing this type of testimony. See Ex. 3 to Mot. to Exclude Benbrook (5/17/18 *Johnson* Order) at 30 (precluding Dr. Benbrook from testifying regarding "the proper interpretation of documents, such as emails" or "inferences of knowledge or intent [that] can be derived from those documents."); Ex. 5 to Mot. to Exclude Benbrook (3/14/19 *Hardeman* Trial Tr.) at 2103-2104 ("factual narrative" is not "properly the subject of expert testimony."); Ex. 4 to Mot. to Exclude Benbrook (3/18/19 *Pilliod* Order) at 6 (Dr. Benbrook "may not testify on Monsanto's motive, intent, or state of mind").

Despite these prohibitions, in the *Pilliod* case, the vast majority of Dr. Benbrook's trial testimony consisted of improper "opinions" about Monsanto documents. It is apparent from Plaintiffs' Opposition that, if left unchecked, Dr. Benbrook's testimony in these cases will be no different. Indeed, Plaintiffs' Opposition describes the crux of Dr. Benbrook's proposed testimony: he will tell the jury that Monsanto hired an expert named Dr. James Parry, that Dr. Parry recommended that Monsanto conduct various studies, and that Monsanto allegedly did not conduct these studies or provide Dr. Parry's report to EPA. (Opp'n at 16-17.) Providing this type of factual narrative is simply not the role of an expert. Whether Monsanto provided the Parry report to EPA or conducted the tests Dr. Parry recommended (a fact that is hotly contested) are purely factual issues for the jury to decide based on the documents and testimony of fact witnesses.

The jury is tasked with evaluating the evidence in this case and coming to its own determinations about what it shows. To allow an "expert" to do the same would usurp the core function of the jury. Dr. Benbrook should not be permitted to offer opinions regarding Monsanto's motive, intent, or state of mind, or to offer his personal "interpretations," "conclusions," or narrations of company or EPA documents under the guise of expert testimony.

### C. Dr. Benbrook's Opinions on Legal or Regulatory Duties Should Be Excluded.

Dr. Benbrook's proffered opinions invade the province of this Court to decide and instruct on the law and the jury to decide the facts. Dr. Benbrook's expected testimony can be summarized as follows. First, he will testify about what Monsanto allegedly did or did not do with respect to the Parry report, which, for the reasons discussed above, are not the proper subject of expert opinion. (Opp'n at 16.) Then, he will testify that Monsanto had legal obligations with respect to the Parry report, invading the province of the court to instruct the jury on the law. *Id*. Finally, he will testify that Monsanto breached these alleged legal and ethical obligations, again invading the province of the jury to determine whether Monsanto complied with the law. Indeed, Dr. Benbrook has been excluded from testifying as to whether Monsanto

- 5 -
REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK
NO. 3:16-cv-05658-VC

complied with its alleged duties in every Roundup trial to date. Not one of these components of his expected testimony is admissible, and taken together, his proposed testimony is fully inadmissible. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 495187, at *3 (D. Ariz. Jan. 22, 2018) ("personal views on proper corporate behavior are not appropriate expert opinions."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 542-43 (S.D.N.Y. 2004) ("The opinions of plaintiffs' witnesses, however distinguished these individuals may be as physicians and scientists, concerning the ethical obligations of pharmaceutical companies and whether the defendants' conduct was ethical are inadmissible."); *Burns v. Black & Veatch Architects, Inc.*, 854 S.W. 2d 450, 453 (Mo. App. W.D. 1993) ("Duty cannot be established by expert opinion of proper procedure.").

Dr. Benbrook will also apparently articulate "specific examples of Monsanto's sustained campaign to downplay the risk of Roundup and recurrent failure to correct false claims about Roundup's safety . . . ." (Opp'n at 18.) Again, the jury does not need an expert to narrate the underlying facts of the case, i.e., the "specific examples" referenced. And the fact that Dr. Benbrook intends to spin these facts to support Plaintiffs' thematic goals demonstrates a fundamental problem with his testimony: he is acting purely as an advocate, not an expert. It is the jury's role, not Dr. Benbrook's, to decide whether Monsanto acted in the manner alleged by Plaintiffs.[1]

Finally, Dr. Benbrook cannot be allowed to testify about what Monsanto could have done differently in the past or what effect Monsanto's actions might have had on EPA in a counterfactual world. Dr. Benbrook cannot simply hypothesize that EPA would have allowed a change to Roundup's label to include a cancer warning, particularly when all evidence is to the contrary because EPA has repeatedly concluded—up to this day—that Roundup is not likely to

---

[1] In addition, Dr. Benbrook also apparently intends to testify about actions taken by European regulators, and that Monsanto "failed to adhere to voluntary industry standards of care," including the international FAO code. (Opp'n at 17.) But neither of these topics is germane to Monsanto's applicable legal duties under U.S. law. It is also far from clear how Dr. Benbrook is qualified to testify about either topic when he has never worked for a pesticide company or regulator.

be carcinogenic. Plaintiffs' Opposition on this point is nonresponsive; they not dispute that any testimony on this subject would amount to nothing more than speculation. (*See* Opp'n at 18.) For this additional reason, Dr. Benbrook's proposed testimony should be excluded.

### D.  Dr. Benbrook's Opinions that Monsanto Defrauded or Misled the EPA are Inadmissible and Preempted by Federal Law.

Monsanto anticipates that Dr. Benbrook may also opine that Monsanto defrauded or misled the EPA. As the trial court in *Johnson* found, Dr. Benbrook "brings no relevant expertise to the table on [this] issue." Plaintiffs do not dispute this. (*See* Opp'n at 21-23.) Furthermore, Plaintiffs concede that they are not bringing any claim for fraud on the EPA. (*Id.*) Nor could they, as there is no dispute that any such claim would be preempted. (*Id.*); *see also Buckman v. Pls.' Legal Comm.*, 531 U.S. 341 (2001) (holding fraud on the FDA claims are preempted by federal law). Accordingly, any testimony that Monsanto allegedly defrauded or misled the EPA has no relevance and should be excluded on that basis alone.

In any event, Plaintiffs are incorrect in asserting that *Buckman* only preempts specific claims for fraud on the EPA. To the contrary, any claim that arises from allegations that a party defrauded or misled the EPA is preempted by FIFRA, which "expressly forbids applicants from falsifying 'any information relating to the testing of any pesticide . . . including the nature of any . . . observation made, or conclusion or opinion formed.'" *Kimmel v. Dowelanco*, 275 F.3d 1199, 1205 (2002) (citing 7 U.S.C. § 136j(A)(2)(Q)). This was made clear in *Kimmel*, where the Ninth Circuit held that a state-law claim for damages under a theory of intentional interference with prospective economic advantage was preempted by FIFRA because it arose from allegations that the defendant committed fraud on the EPA. *See id.*; *accord In re Trasylol Prod. Liab. Litig.*, 763 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010) ("The concerns expressed by the Supreme Court in Buckman hold true not only where there is a separate fraud-on-the-[agency] claim but also where a plaintiff seeks to prove fraud on the [agency] in order to bring a traditional state-law torts suit."); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (concluding that "plaintiffs cannot bootstrap their arguments regarding defendant's alleged failure to report and to

- 7 -
REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK
NO. 3:16-cv-05658-VC

investigate adverse incidents to the FDA into a defective warning case" since such claims are preempted by *Buckman*). Similarly, here, the doctrine of preemption prohibits Plaintiffs from basing any claims on Monsanto's alleged failure to provide information the EPA. And likewise, because no claim can be based on fraud on the EPA, any testimony purporting to support that alleged fraud—such as the opinions Dr. Benbrook may offer in this case—is irrelevant and inadmissible. *See In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) (excluding on preemption grounds evidence that was "offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"); *Bouchard v. Am. Home Prod. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA.").

## III. CONCLUSION

For the reasons set forth above and in Monsanto's Motion, the Court should grant Monsanto's Motion and exclude the opinions proffered by Dr. Charles Benbrook in their entirety because he lacks the necessary qualifications to offer them and they are not the proper subject of expert testimony.

1 | Dated: December 23, 2019

2 | By:  */s/ Michael X. Imbroscio*

3
4 | Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP 2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

- 9 -
REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BENBROOK
NO. 3:16-cv-05658-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Michael X. Imbroscio