**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Dickey v. Monsanto Co.*, 3:16-cv-04102-VC | |
| *Domina v. Monsanto Co.*, 3:16-cv-05887-VC | **MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM R. SAWYER ON *DAUBERT* GROUNDS** |
| *Giglio v. Monsanto Co.*, 3:16-cv-05658-VC | |
| *Harris v. Monsanto Co.*, 3:17-cv-03199-VC | |
| *I. Hernandez v. Monsanto*, 3:16-cv-06025-VC | Hearing date: Jan. 29, 2020 |
| *Janzen v. Monsanto Co.*, 3:19-cv-04103-VC | Time: |
| *Mendoza v. Monsanto Co.*, 3:19-cv-06046-VC | |
| *Perkins v. Monsanto Co.*, 3:16-cv-06025-VC | |
| *Pollard v. Monsanto Co.*, 3:19-cv-04100-VC | |
| *Russo v. Monsanto Co.*, 3:16-cv-06024-VC | |
| *Sanders v. Monsanto Co.*, 3:16-cv-05752-VC | |
| *Tanner v. Monsanto Co.*, 3:19-cv-04099-VC | |

- 1 -
REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER NO. 3:16-md-02741-VC

In their opposition to Monsanto's motion to exclude testimony of Dr. William Sawyer ("Opposition"), Plaintiffs make several key concessions regarding Dr. Sawyer's anticipated testimony. For instance, they concede that Dr. Sawyer will not be offered "as a general causation expert on epidemiology," Opp'n at 3, that Dr. Sawyer did not conduct a full differential etiology in any of the Wave 1 cases, Opp'n at 3, 12, and that Dr. Sawyer will not offer opinions about "the intent or state of mind of Monsanto" or about labeling requirements. Opp'n at 19-20. At a minimum, the Court should grant Monsanto's motion to exclude testimony of Dr. William Sawyer ("Motion") to the full extent of Plaintiffs' many concessions. Furthermore, for the reasons discussed below and in Monsanto's Motion, Dr. Sawyer's flawed opinions regarding causation, the George study, trace chemicals, and Monsanto company documents should be excluded in their entirety.

## I.   The Court Should Exclude Dr. Sawyer's General Causation Opinions.

Plaintiffs concede that Dr. Sawyer will not be offered "as a general causation expert on epidemiology" and that Dr. Sawyer will not provide an opinion on the animal carcinogenicity data. Opp'n at 3, 4. Accordingly, the Court should grant Monsanto's motion to exclude Dr. Sawyer's opinions on general causation and enter an order preventing Dr. Sawyer from offering any such general causation opinions during any Wave 1 trial.

## II.   The Court Should Exclude Dr. Sawyer's Specific Causation Opinions.

The Court should likewise enter an order preventing Dr. Sawyer from offering any opinions on specific causation. While Plaintiffs concede that they "will not be eliciting an opinion from Dr. Sawyer at trial that the exposure of Plaintiffs to Roundup was a substantial contributing factor to his/her NHL diagnosis," Opp'n at 3. n.3, they nevertheless reframe the specific causation question and claim that Dr. Sawyer should be permitted to "offer the opinion that the Plaintiffs' exposure to Roundup was sufficient to cause NHL," *id*. at 3. Plaintiffs' argument fails for several reasons.

*First,* an opinion on specific cause—whether framed as an opinion that a certain chemical was a substantial contributing factor to a specific condition or as an opinion that plaintiffs' exposure to a certain chemical is sufficient to cause a specific condition—cannot be based solely on the

available epidemiological data. As Plaintiffs' experts have conceded, causation (whether general or specific) cannot be established with epidemiology alone. *See* Ex. 24 to Motion, Tr. of Proceedings, Testimony of Dr. Christopher J. Portier, *Pilliod v. Monsanto Co.,* No. RG-170862702 (Cal. Sup. Ct. Alameda Cnty. Apr. 3, 2019) at 1893:3-8 ("Q: And so in terms of the human data we have in this case, you agree that you cannot make a firm statement that Roundup causes NHL from the epidemiology data alone, true? A: Correct. I can't do it from the epidemiology data alone."); *In re Roundup Prods. Liab. Lit.*, 390 F. Supp. 3d 1102, 1116 (N.D. Cal. 2018); *see also* Ex. 12 to Motion, Reference Manual on Scientific Evidence at 598. Yet that is precisely what Dr. Sawyer has done with his specific causation analysis: he has concluded that Roundup caused Plaintiffs' NHL merely because Plaintiffs were exposed to Roundup for a number of days that exceeds the minimal "number-of-days" threshold presented by certain epidemiological data points.

***Second,*** even if specific causation could be established with epidemiology alone, the studies cited by Dr. Sawyer in support of his specific cause opinions are insufficient to do so here. As discussed in more detail in Monsanto's opening brief, the primary studies on which Dr. Sawyer relies for his specific causation analysis—Eriksson and McDuffie—are unreliable because the relevant data was not adjusted for the use of other pesticides. As this Court has already determined, "[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern." *In re Roundup*, 390 F. Supp. 3d at 1140. Moreover, as Plaintiffs admit in their Opposition, the six epidemiological studies on which Dr. Sawyer relies "are not consistent nor well-described in their methodology when using days of exposure." Opp'n at 12. Dr. Sawyer should not be permitted to offer specific causation opinions based solely on this admittedly inconsistent and poorly-described data.[1]

---

[1] Plaintiffs claim that "expert testimony will be helpful to explain how to compare the Plaintiffs' exposure to the epidemiological studies." Opp'n at 12. They further contend that "[h]aving Dr. Sawyer guide the jury through the nuances inherent in the different epidemiology studies will only aid the jury in understanding each study's characteristics." *Id.* However, Dr. Sawyer has repeatedly deferred the detailed analysis, interpretation, and meaning of the epidemiology studies to other experts in this case. *See, e.g.,* Opp'n at 11 (arguing that it is "appropriate for Dr. Sawyer to rely upon the detailed assessment of epidemiology by Drs. Ritz, Portier and Weisenburger."). Thus, to

*(Footnote continued)*

***Third,*** Dr. Sawyer's specific causation opinions should be excluded because he admittedly did not consider Plaintiffs' numerous other risk factors for NHL, explicitly deferring those analyses to other experts in the cases. As Plaintiffs concede, Dr. Sawyer did not conduct a full differential etiology in any of the Wave 1 cases. Opp'n at 3, 12. In reaching his so-called specific causation opinions, Dr. Sawyer largely ignored Plaintiffs' medical histories, predisposing genetics, and other prominent risk factors for NHL—such as smoking and certain environmental exposures. *See* Motion at 15-16. By repeatedly deferring these analyses to other experts, Dr. Sawyer relinquished any ability to offer a specific causation opinion. *See, e.g., Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony.").

***Fourth***, Dr. Sawyer's absorbed dose calculations do not support his opinions on specific causation. In most of the Wave 1 cases, although disclosed as an exposure and toxicology expert, Dr. Sawyer did not attempt to calculate Plaintiffs' alleged exposure or absorption doses. Instead, in *Dickey, Domina, Janzen, Mendoza, Pollard, Tanner, Sanders, Harris,* and *I. Hernandez*, Dr. Sawyer merely relied on exposure dose determinations made by either Mr. Petty or Dr. Schiff. In *Russo*, however, Dr. Sawyer did perform an absorbed dose calculation using the UK POEM methodology. But as Plaintiffs admit, "a dose calculation is not really helpful because there is no threshold dose identified in human studies where Roundup is shown to cause cancer." Opp'n at 13. Thus, Plaintiffs concede that Dr. Sawyer's absorbed dose calculation in *Russo* does not support his specific causation opinions. That calculation should therefore be excluded.[2]

---

the extent any expert is permitted to "guide the jury" through the nuances of the epidemiology studies, it should one of the experts to which Dr. Sawyer has deferred, not Dr. Sawyer himself.

[2] In their Opp'n, Plaintiffs focus on other opinions that Dr. Sawyer is expected to offer, including opinions regarding how different types of spray equipment and the use of personal protective equipment can impact Plaintiffs' exposures. Opp'n at 6-10. However, none of these opinions support Dr. Sawyer's ultimate conclusions on causation. As Dr. Sawyer has admitted, under his counting-of-days "analysis," the actual amount of Roundup that was allegedly absorbed in each Plaintiffs' body, Plaintiffs' use of any personal protective equipment, and Plaintiffs' efforts to clean Roundup off of their skins after exposure events are all irrelevant. *See, e.g.,* Ex. 18 to Mot., Sawyer

*(Footnote continued)*

**III.    The Court Should Exclude Dr. Sawyer's Opinions Regarding the George Study.**

Plaintiffs do not dispute that due to multiple flaws in the George study's design (including that the study lacked a histopathological examination; involved a small number of animals, all of which were male that were given a short duration of treatment; and failed to control for solvents), the study has been found by several national and international regulatory agencies—including EPA, IARC, and Germany's BAuA—to be an inadequate study for scientific analysis.  Nevertheless, Dr. Sawyer relies on that inadequate study to support his opinions that Roundup can cause or even promote cancer.  In making an assessment under *Daubert*, trial courts must look beyond the expert's testimony to ensure that the sources relied upon by the expert in reaching his opinions are reliable.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (affirming district court's exclusion of expert after finding expert's testimony to be "inherently unreliable and unsupported by the facts."); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.") (internal quotations omitted).  Dr. Sawyer's opinions regarding the George study should be excluded because they are not scientifically reliable.

**IV.    The Court Should Exclude Dr. Sawyer's Opinions Regarding Trace Chemicals.**

Plaintiffs claim that it is "necessary" for Dr. Sawyer to consider the trace chemicals included in Roundup.  Response at 18.  Yet Plaintiffs do not dispute that Dr. Sawyer did not calculate any doses of these chemicals to which Plaintiffs were allegedly exposed.  Nor have Plaintiffs pointed to any scientific evidence suggesting that exposure to Roundup is a cancer risk *because of these trace chemicals.*  As discussed in more detail in Monsanto's opening brief (and as demonstrated by Dr. Sawyer's testimony during the Pilliod trial), the only purpose for this testimony is to distract, confuse, and provoke fear in the jury.  Ex. 27 to Motion, Tr. of Proceedings, Testimony of Dr.

---

*Sanders* Dep. 26:24-27:19; Ex 2 to Motion, Sawyer *Janzen* Dep. 28:7-17; 36:4-11; Ex. 19 to Motion, Sawyer *Pollard* Dep. 24:11-16; 50:2-25; Ex. 20 to Motion, Sawyer *Mendoza* Dep. 27:23-29:1.  Thus, Dr. Sawyer should not be permitted to offer such testimony to bolster his flawed conclusions on causation.

William R. Sawyer, *Pilliod v. Monsanto Co.,* No. RG-170862702 (Cal. Sup. Ct. Alameda Cnty. Apr. 11, 2019) at 3131:6-3132:16 ("A: [Ethylene oxide] is a sterilization gas. It kills every type of biological life on earth . . . if I had a little air in the bottle, as one of our jurors has sitting there, that over time that air in the bottle, the ethylene oxide would accumulate in that air space. Q: . . . So this actually has Roundup that's been sitting in here for a while. If I were to open up this cap, what would happen? A: There would be ethylene oxide escaping from that head space."). Dr. Sawyer's unsupported comments on these trace chemicals are entirely speculative, inappropriate, and inadmissible. *See Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs."); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) (noting that it would be "well within the discretion of the trial judge to exclude" expert opinions that would not be "of any real assistance to the trier of fact.").

**V.    The Court Should Exclude Dr. Sawyer's Opinions on Monsanto Company Documents and Regulatory Duties.**

Plaintiffs concede that Dr. Sawyer will not "testify about the intent or state of mind of Monsanto" and that Dr. Sawyer will not "be offering regulatory opinions or opine about labeling requirements." Response at 19, 20. Plaintiffs claim, however, that Dr. Sawyer may discuss internal Monsanto documents, for which he has no personal knowledge, "to provide proper context to corporate emails and memoranda." *Id.* at 19. Plaintiffs' arguments are unavailing.

Having an expert narrate company documents, under the guise of explaining terminology or providing context, is improper expert testimony because it invades the province of the jury. *See Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate documents, which is not helpful to the jury."); *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 4961455, at *4 (S.D.N.Y. Oct. 10, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury

traditionally relies upon to answer the sort of questions that a jury traditionally answers."). Dr. Sawyer's toxicological expertise affords him no special skill in interpreting a Monsanto employee's use of scientific terms or studies, and there is no need for an expert to interpret Monsanto company documents that speak for themselves. Accordingly, the Court should preclude Dr. Sawyer from offering any opinions related to Monsanto company documents.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. William Sawyer.

DATED: December 23, 2019					Respectfully submitted,

/s/ Michael X. Imbroscio

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

William Hoffman (pro hac vice)
(William.Hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

- 8 -
REPLY ISO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER NO. 3:16-md-02741-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Michael X. Imbroscio*