**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741<br>)<br>) Case No. 3:16-md-02741-VC<br>) |
| *Calderon v. Monsanto Co.*, 3:19-cv-01630-VC | ) **MONSANTO COMPANY'S RESPONSE**<br>) **BRIEF TO PLAINTIFF JAMIE**<br>) **CALDERON'S (ALVAREZ'S) MOTION**<br>) **TO EXCLUDE TESTIMONY OF**<br>) **MONSANTO'S SPECIFIC CAUSATION**<br>) **EXPERT, MICHAEL GROSSBARD, M.D.**<br>) |

## INTRODUCTION

Defendant Monsanto Company ("Monsanto") submits this response brief to Plaintiff Jamie

Calderon's ("Alvarez's") Motion to Exclude Testimony of Monsanto's Specific Causation Expert,

Michael Grossbard, M.D., Dkt. No. 8392.  Plaintiff Alvarez argues Dr. Grossbard's testimony

should be excluded, not because it is unreliable, unhelpful, or improper rebuttal testimony under

Rule 702, but because it is "nothing more than a general causation opinion concerning Mr. Alvarez." *See* Mot. at 1.

Alvarez's argument fails for two reasons. First, the argument, even if accurate (which it is not), ignores PTO No. 180 (Dkt. No 6390) in which this Court ruled that "the parties are not limited – in Giglio's case or any other Wave 1 case – to the general-causation experts called during the Daubert proceedings in 2017. That limitation was intended to apply only to the bellwether cases." Second, Dr. Grossbard's opinion rebuts the rationale and reasoning of the specific causation opinions of Alvarez's experts and is proper rebuttal testimony. The Motion should be denied.

## **BACKGROUND**

On October 1, 2019, Plaintiff Alvarez disclosed the expert testimony of two causation experts: Dr. Charalambos Andreadis and Dr. Clayton Smith. Both experts opine that Roundup was a substantial factor in causing Plaintiff Alvarez's non-Hodgkin's lymphoma ("NHL"). Their opinions are based on both experts' conclusions that Roundup can cause NHL and that Plaintiff Alvarez has no other identifiable risk factors associated with NHL.

On October 25, 2019, Monsanto disclosed the expert report of Dr. Michael L. Grossbard in response to Dr. Andreadis' and Dr. Smith's expert reports. *See* Mot. at Ex. 1, Grossbard Report. Dr. Grossbard is a medical oncologist and a Professor of Medicine at NYU School of Medicine, the Section Chief for Hematology at NYU Langone Health and the Perlmutter Cancer Center, and the Section Chief of Hematology and Oncology for Tisch Hospital. *See id.* at 2 & Ex. A. Dr. Grossbard evaluates and treats 200 to 250 new patients with NHL each year and is the primary oncologist for hundreds of other lymphoma patients who previously completed therapy. *Id.*

In this case, Dr. Grossbard, taking into account his extensive personal knowledge and experience, conducted an analysis of Plaintiff Alvarez's medical history and records, the scientific evidence about NHL, including epidemiological, animal, and genotoxicity studies, and the expert reports of Dr. Andreadis and Dr. Smith. *See id.* at 2-9. Based on this analysis, Dr. Grossbard reached the following four conclusions:

"1.  The preponderance of published literature shows no significant increase in NHL incidence following exposure to Roundup.  For that reason alone, there is no basis to conclude that Roundup caused or contributed to Mr. Alvarez's NHL.

2.  There is nothing peculiar or unusual about Mr. Alvarez's NHL that points to Roundup as a factor in etiology.  His diagnosis at age █ is typical for NHL.  As is true for nearly all NHL cases, the etiology of Mr. Alvarez's NHL is not known. There is no biomarker, test, or any diagnostic protocol that can identify Roundup as causing or contributing to the disease.

3.  Mr. Alvarez has a history of stage IV DLBCL that has relapsed after prior chemotherapy regimens.  He received CAR-T therapy, but his PET/CT scan in September 2018 demonstrated disease recurrence. He currently is receiving treatment with rituximab plus lenalidomide. Of patients presenting with stage IV DLBCL, fewer than 50% of patients will be cured of their disease.  There is nothing about his particular disease course that is atypical including the development of progressive disease following initial therapy.

4.  Plaintiff's experts have not presented reliable scientific evidence demonstrating that Roundup caused Mr. Alvarez s NHL."

*See id.* at 10-11.[1]

## ARGUMENT

Plaintiff Alvarez argues Dr. Grossbard's testimony should be excluded because it is "nothing more than a general causation opinion concerning Mr. Alvarez."  *See* Mot. at 1.  Said differently, Plaintiff Alvarez argues that Dr. Grossbard should not be permitted to offer a specific causation opinion because he does not believe glyphosate causes lymphoma.  *See id.* at 2.  The Court should reject Plaintiff Alvarez's argument for two reasons.

First, Plaintiff Alvarez's Motion is premised on the incorrect assumption that Monsanto cannot present general causation expert testimony from any expert who did not testify at the 2017 *Daubert* proceedings.  Although such a limitation applied in the bellwether cases, it does not apply in this or any other Wave 1 case.[2]  *See* PTO No. 180 (Dkt. No 6390) ("[T]he parties are not limited – in Giglio's case or any other Wave 1 case – to the general-causation experts called during the

---

[1] Dr. Grossbard also conducted a similar analysis in *Sanders v. Monsanto Co.*, 3:16-cv-05752.  The plaintiffs in *Sanders* have not challenged the admissibility of Dr. Grossbard's testimony.

[2] Counsel contacted counsel for Plaintiff Alvarez, alerted him to PTO No. 180, and asked him to withdraw his Motion.  Counsel for Plaintiff Alvarez refused.

Daubert proceedings in 2017.  That limitation was intended to apply only to the bellwether cases").
As such, Dr. Grossbard may offer both general and specific causation opinions at trial.

Second, Dr. Grossbard's specific causation opinions are not disguised general causation opinions.  Dr. Grossbard offers a number of opinions regarding the question of specific causation, and also offers a rebuttal to the specific cause analyses performed by Plaintiff Alvarez's experts.  In particular, Dr. Grossbard opines that Dr. Andreadis' and Dr. Smith's opinions and methodologies are flawed because, among other things, it is erroneous to conclude that Roundup caused Plaintiff Alvarez's NHL solely because he has no identifiable risk factors associated with NHL.  *See* Mot. at Ex. 1, Grossbard Report at 8-10.  Dr. Grossbard then engages in a point-by-point examination and rebuttal of their opinions.  As just a few examples, Dr. Grossbard states:

- "Dr. Andreadis opines that Mr. Alvarez's lymphoma was caused by Roundup because of the lack of an alternative explanation for his lymphoma and because he had exposure to Roundup. . . . There is no genetic or clinical signature that permits a determination of lymphoma etiology.  Thus, it is scientifically impossible to attribute the cause of Mr. Alvarez's lymphoma to Roundup on the basis of an absence of other etiologies."  *Id.* at 8.

- "Dr. Andreadis states that Mr. Alvarez's lymphoma had evidence of BCL-2 and BCL-6 translocations which he describes as being present 'in less than 2% of individuals with this type of lymphoma (DLBCL).'  Notably, the BCL-2 translocation has been identified in a large percentage of patients with DLBCL. . . . Similarly, BCL-6 translocations occur in 20-35% of patients with DLBCL.  While the presence of both translocations simultaneously occurs in only 2-5% of patients,

there is not scientific validity to relating the simultaneous presence of both of these translocations to the etiology of any given lymphoma." *Id.*

In addition to his detailed analysis of the opinions of Plaintiff Alvarez's experts, Dr. Grossbard makes the fundamental point that it "is scientifically invalid to conclude that the absence of other risk factors for lymphoma in this case indicates that Roundup is a substantial contributing factor in causing Mr. Alvarez's lymphoma." *Id.* at 10. As Dr. Grossbard explains, "for the vast majority of individuals diagnosed with a non-Hodgkin's lymphoma, doctors are unable to identify a specific cause for the disease." *Id.* at 8. Dr. Grossbard's opinions thus properly rebut Plaintiff's expert testimony.

Expert rebuttal testimony is meant "to contradict or rebut evidence on the same subject matter" as the opposing party's expert. *See* Fed. R. Civ. P. 26(a)(2)(D). "[R]ebuttal witnesses [may] address the initial experts' assertions by questioning their assumptions and methods." *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 4272430, at *4 (N.D. Cal. Aug. 15, 2016) (quotation omitted); *see also Perez v. State Farm Mut. Auto. Ins. Co.*, No. 06-cv-01962-JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) (finding rebuttal expert testimony was proper because it "criticizes" and "addresses the methods and analyses provided by [the plaintiff's expert]"); *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-CV-00557-T-27, 2014 WL 1819616, at *2 (M.D. Fla. May 7, 2014) ("a rebuttal expert may appropriately criticize the methodology of an opposing expert").

Dr. Grossbard has scientific expertise and knowledge in the areas of hematology and oncology, he analyzed sufficient facts and data (*e.g*, Plaintiffs' medical history and relevant epidemiological, animal, and genotoxicity that he studied), he reliably applied those facts and data

to Plaintiff Alvarez, and his testimony will aid the jury in understanding and assessing the issue of causation.  This should be the end of the inquiry.  *See* Fed. R. Evid. 702.

## CONCLUSION

For the reasons explained above, Monsanto respectfully requests that the Court deny Plaintiff Calderon's Motion to Exclude Dr. Grossbard's expert testimony.

DATED: December 24, 2019        Respectfully submitted,

/s/ Michael X. Imbroscio

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Michael X. Imbroscio*