**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**ARNOLD & PORTER KAYE SCHOLER**
William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | Case No.: 3:16-cv-05658-VC |
| | MDL No. 2741 |
| *Dickey v. Monsanto Co.*, 3:19-cv-04102-VC<br>*Domina v. Monsanto Co.*, 3:16-cv-05887-VC<br>*Janzen v. Monsanto Co.*, 3:19-cv-04103-VC<br>*Mendoza v. Monsanto Co.*, 3:19-cv-06046-VC<br>*Pollard v. Monsanto Co.*, 3:19-cv-04100-VC<br>*Sanders v. Monsanto Co.*, 3:16-cv-05752-VC<br>*Tanner v. Monsanto Co.*, 3:19-cv-04099-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY**<br><br>Hearing date: Jan. 29, 2020<br>Time: |

- 1 -

Mr. Petty is an industrial hygienist with no relevant expertise concerning pesticide warning labels, the EPA registration process, FIFRA requirements, toxicology, or the standards of care applicable to agricultural companies like Monsanto. Yet, Plaintiffs seek to offer him as an "expert" on all of these topics and more. Mr. Petty is not qualified to offer expert opinions in these cases and should be excluded on that basis. Mr. Petty's opinions are also inadmissible because they improperly invade the province of the jury as factfinder by "interpreting" company documents and by opining on ultimate issues.

## I. Mr. Petty Is Not Qualified to Offer Expert Testimony in These Cases.

Monsanto's opening motion detailed Mr. Petty's lack of relevant experience, training, and education to offer expert testimony in this case. In response, Plaintiffs simply regurgitate Mr. Petty's CV and then make the blanket assertion (without any explanation or legal support) that it renders him qualified "to assist the jury in understanding and evaluating the complex issues presented by this case." *See* Pls.' Opp'n at 8. But Plaintiffs do not and cannot dispute that Mr. Petty:

- Has never served as an expert witness in a case involving pesticides;
- Has never submitted a pesticide label to the EPA
- Has never been employed by EPA or any pesticide company;[1]
- Is not an expert in the EPA registration process;
- Has never evaluated the adequacy of any product warning outside of litigation;
- Does not have a degree in epidemiology or toxicology;
- Has explicitly stated that he is not an epidemiology, toxicology, or cancer expert in these cases; and
- Did not conduct a risk assessment or dose analysis for Plaintiff.

---

[1] Plaintiffs' assertion that Mr. Petty has "worked for the EPA going back 40 years" (Pls.' Opp at 19) is misleading at best. In fact, although Mr. Petty initially testified that in 1979 and 1980, he worked on the CHRIS database for the EPA (which he admitted was "only tangentially related to herbicides"), he later corrected that response and clarified that his work on that database was for the U.S. Coast Guard, <u>not</u> the EPA. *See* Mot. Ex. 4, Petty *Winston* Dep. Vol. I at 90:25-91:11; Mot. Ex. 8, Petty *Winston* Dep. Vol. V at 206:1-11.

*See* Mot. to Exclude Petty at 4-6. Yet despite his glaring lack of qualifications, Mr. Petty seeks to opine on a wide range of topics, including the adequacy of Monsanto's warnings, the purported need for a cancer warning, the adequacy of Monsanto's submissions to the EPA, Monsanto's communications with the EPA, and the toxicological effects of Roundup's ingredients.

Instead of focusing on Mr. Petty's qualifications to offer these opinions in this case, Plaintiffs spend the vast majority of their opposition asking this Court to rubber-stamp Mr. Petty as qualified on all topics simply because he has testified in other, dissimilar cases. *See* Pls.' Opp'n at 8-10. But the fact that Mr. Petty has offered *other* opinions on *other* topics in *other* cases does not render him qualified here. *See*, *e.g.*, *In re Lendingclub Securities Litig.*, 282 F. Supp. 3d 1171, 1186 n.3 (N.D. Cal. 2017). This Court must undertake an independent assessment of Mr. Petty's qualifications (or lack thereof) to offer the specific opinions he seeks to offer in this case.

Moreover, a review of the other cases in which Mr. Petty has testified reveals only that he has previously served as an expert in chemical exposure cases and offered opinions far more limited than the wide-ranging opinions he seeks to offer here. Of the six cases Plaintiffs cite, five involve benzene. None involves a pesticide like Roundup, FIFRA, or the adequacy of a company's communications with the EPA. For example, Plaintiffs claim that Mr. Petty is qualified because he offered expert opinions in *Kitzmiller v. Jefferson Supply Co.,* Case No 2:05-CV-22 (N.D.W. Va. Feb. 17, 2007) (attached as Exhibit 6 to Pls.' Opp'n). That case involved exposure to benzene in a workplace and the adequacy of a ventilation system. *Id*. It did not involve opinions regarding labeling, EPA submissions, or the like. Notably, the Court *precluded* Mr. Petty from testifying that the plaintiff's condition was caused by work-related exposure. *Id*.

Plaintiffs also entirely ignore the authority cited in Monsanto's Motion demonstrating that qualifications in one area do not render a person qualified in any related area. *See* Mtn. to Exclude Petty at 5; *Cover v. Windsor Surry Co.*, 2017 WL 9837932, at *18 (N.D. Cal. July 24, 2017) (expert's "vague assurance that his opinions are reliable and backed by his education and

ewxperience is not persuasive when these opinions fall outside the normal scope of his expertise"); *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002); *Apple, Inc. v. Samsun Elects. Co.*, 2013 WL 2955666, at *2 (N.D. Cal. Nov. 6, 2013). Thus, the fact that Mr. Petty has testified on other topics in other cases is apropos of nothing. He may very well have experience or expertise with workplace exposure to benzene, but that does not qualify him as an expert on labeling or regulations applicable to this case. Nor does it qualify him to offer opinions regarding the toxicological or epidemiological effects of Roundup (or its ingredients) on dermal exposure, or the adequacy of Monsanto's EPA submissions. Mr. Petty is not a toxicologist, epidemiologist, or EPA expert. His opinions in this case go far beyond his education, training, and experience, and they should be excluded.

## II. Mr. Petty's Interpretation of Monsanto and EPA Documents Is an Inappropriate Topic for Expert Testimony.

Plaintiffs cannot avoid the well-settled law that an expert is not permitted to opine regarding the intent, motive, or state of mind of a corporation. While purporting to disclaim any such intention, they nevertheless claim that Mr. Petty should be permitted to testify about "factual matters that may properly inform the jury's own determination of Monsanto's motive, intent, and state of mind." Pls.' Opp'n at 12 (emphasis removed). This creative attempt to avoid the prohibition on expert testimony about corporate intent is a distinction without a difference.

The vast majority of Mr. Petty's proposed testimony as laid out in his report and deposition consists of his narrations or "interpretations" about how various internal Monsanto documents purportedly demonstrate liability themes, usually by purporting to discern motives or knowledge from his review of the documents. Although Plaintiffs deftly attempt to portray these as "expert conclusions based on a very systematic review of the source materials," (Pls.' Opp'n at 12), they are actually slanted "interpretations" that fall squarely within the province of the jury as the fact-finder.

Nor are the documents so "complex" or "technical" that they require explanation by an expert, as Plaintiffs also contend. Pls.' Opp'n at 13. Indeed, Plaintiffs do not offer a *single* example of a purported "complex" document, instead simply making the blanket argument that

- 4 -

all Monsanto and EPA documents are beyond jurors' comprehension. There is nothing so complex or technical about internal emails and day-to-day communications—as opposed to other documents (like epidemiology studies) at issue in this trial—that require expert explanation.[2]

In prior Roundup trials, this Court and other judges have precluded the plaintiffs from presenting expert testimony interpreting company documents or providing opinion on Monsanto's state of mind—the precise type of testimony Mr. Petty seeks to offer here. *See, e.g.*, Mot. Ex. 13, *Hardeman* Trial Tr. at 2103-2104 ("factual narrative" is not "properly the subject of expert testimony."). The jury is tasked with evaluating the evidence in this case and coming to its own determinations about what it shows. To allow an "expert" to do the same would usurp the core function of the jury. Mr. Petty should not be permitted to offer opinions regarding Monsanto's motive, intent, or state of mind, or to offer his personal "interpretations," "conclusions," or narrations of company or EPA documents under the guise of expert testimony.

### III. Mr. Petty's Opinions Regarding Compliance with Legal, Regulatory, and Industry Standards Should Be Excluded.

#### A. Mr. Petty's "Standard of Care" and Regulatory Opinions Are Not Reliable.

As discussed above and in Monsanto's opening motion, Mr. Petty is not an "industry" or EPA expert and thus is wholly unqualified to offer opinions regarding Monsanto's alleged compliance with such standards or regulations.

In addition, Mr. Petty's opinions regarding compliance with legal and industry standards should be excluded because they are not based on a proper methodology. For example, Mr. Petty seeks to opine that Monsanto was subject to a "self-imposed" standard of care, based on an unremarkable comment made by Monsanto's CEO *in 1989* that Monsanto should "deal[] with people openly and freely." (Mot. at 8). In response to Monsanto's motion, Plaintiffs simply assert that Mr. Petty's opinions "about what actions Monsanto should have taken, pursuant to the provisions of FIFRA and voluntary pesticide industry standards" are relevant. *See* Pls.' Opp'n at

---

[2] Even if there were a select few "complex" documents, Mr. Petty would not be a proper witness to provide "context" for them. He is not an author or recipient of the documents and does not have personal knowledge of them, nor has he ever worked at a pesticide company or EPA.

- 5 -

MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF MR. STEPHEN PETTY NO. 3:16-CV-05658-VC

14. But relevance is not the issue. Mr. Petty is not a pesticide industry expert or a regulatory expert, and he employs no methodology to reach his opinions about the standards applicable to Monsanto and Monsanto's alleged compliance with those standards. Accordingly, Mr. Petty's opinions on these topics should be excluded.

### B. Opinions Regarding Compliance with EPA Regulations Are Inadmissible and Preempted by Federal Law.

Plaintiffs' opposition makes clear that, if left unchecked, Mr. Petty intends to opine that Monsanto violated federal law or EPA regulations by misleading the EPA or failing to provide information to the EPA. Aside from his complete lack of qualifications to offer opinions regarding the applicable EPA regulations, such opinions also are inadmissible as preempted by federal law.

Plaintiffs concede that they are not bringing any claim for fraud on the EPA. *See* Pls.' Opp'n at 18; *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (holding fraud on the FDA claims are preempted by federal law). As such, any testimony that Monsanto allegedly defrauded or misled the EPA has no relevance and should be excluded on that basis alone. Plaintiffs, however, incorrectly assert that *Buckman* only preempts specific claims for fraud on the EPA. To the contrary, *any* claim that arises from allegations that a party defrauded or misled the EPA—no matter how denominated—is preempted by FIFRA. *Kimmel v. Dowelanco*, 275 F.3d 1199, 1205 (2002) (citing 7 U.S.C. § 136j(A)(2)(Q)). In *Kimmel*, the Ninth Circuit held that a state-law claim for damages under a theory of intentional interference with prospective economic advantage was preempted by FIFRA because it arose from and was based on allegations that the defendant committed fraud on the EPA. *See id.*; *accord In re Trasylol Prod. Liab. Litig.*, 763 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010) ("The concerns expressed by the Supreme Court in *Buckman* hold true not only where there is a separate fraud-on-the-[agency] claim but also where a plaintiff seeks to prove fraud on the [agency] in order to bring a traditional state-law torts suit."); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (concluding that "plaintiffs cannot bootstrap their arguments regarding defendant's alleged failure to report and to investigate adverse incidents to the FDA into a defective warning case"

1  since such claims are preempted by *Buckman*).

2  Similarly, here, the doctrine of preemption prohibits Plaintiffs from basing any of their claims on Monsanto's alleged failure to provide information to the EPA. Because no claim can be based on fraud on the EPA, any testimony purporting to support that alleged fraud—such as the opinions Mr. Petty seeks offer in this case—is irrelevant and inadmissible. *See In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) (excluding on preemption grounds evidence that was "offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"); *Bouchard v. Am. Home Prod. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) ("Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA.").

## IV. Mr. Petty's Labeling Opinions Should Be Excluded.

Finally, Plaintiffs' opposition brief glosses over Monsanto's challenge to Mr. Petty's labeling opinions, incorrectly asserting in a footnote that "[t]he primary basis for Monsanto's argument that Mr. Petty should be precluded from offering opinions about alleged failures to warn is that such claims are preempted." Pls.' Opp'n at 16, n.5. Not so. Monsanto detailed numerous and specific reasons for exclusion of Mr. Petty's opinions regarding the adequacy and effect of Roundup labeling, entirely unrelated to preemption. *See*, *e.g.*, Mot. to Exclude Petty at 4-6, 11-12. Most notably, Plaintiffs do not dispute that Mr. Petty has <u>never</u> evaluated the adequacy of any product warning aside from litigation, has never submitted a pesticide label to the EPA, and admits that he is not an expert in the EPA registration process. *See* Mot. at 4. The fact that Mr. Petty has "provided consultations to both the public and private sectors on how to reduce risk," Pls.' Opp'n at 15, does not render Mr. Petty qualified to opine on the adequacy of the Roundup labeling, which is subject to a detailed regulatory scheme with which Mr. Petty is not familiar.

Moreover, Mr. Petty's labeling opinions should be excluded because he disclaims any cancer expertise and his labeling opinions are not based on sufficient data or reliable methodology. At center, Mr. Petty criticizes Monsanto for failing to include a carcinogenicity

- 7 -

warning in its Roundup labeling and failing to warn about inert ingredients. But when asked about the scientific data that would support and require such a warning, Mr. Petty repeatedly states that he is not a cancer expert and did not review literature on carcinogenicity studies. *See*, *e.g.*, Ex. A, Petty *Kane* Dep. at 165:11-18 (stating that he does not know what groups considered glyphosate to be carcinogenic in 2017 because he "do[es]n't follow that literature."), 368:13-14 ("I'm not reviewing the literature on carcinogenic studies."). In other words, Mr. Petty wants to tell the jury that Monsanto should have warned about a cancer risk without having evaluated whether such an alleged risk was supported by the state of the science at the relevant time.

Additionally, Mr. Petty is neither a toxicologist nor an epidemiologist, and he did not conduct a dose analysis or full exposure assessment for Plaintiffs. As such, his opinions that different warnings would have resulted in reduced exposure to the Plaintiffs are not based on a reliable methodology.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Monsanto's opening brief, this Court should exclude the testimony of Stephen Petty in its entirety because he is not qualified to offer the opinions he proffers. In the alternative, the Court should preclude him from offering testimony regarding: (1) the legal, regulatory, or industry standards that apply to Monsanto's conduct; (2) the extent to which Monsanto complied with legal, regulatory, ethical or industry standards or obligations, including the adequacy of Monsanto's submissions to the EPA; (3) the adequacy of Monsanto's labeling and the effect different labeling would have on consumers, including Plaintiffs specifically; (4) his "interpretations" of Monsanto company documents; and (5) Monsanto's motive, intent, or state of mind.

Dated: December 24, 2019

By:  */s/ Michael X. Imbroscio*

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP 2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

William Hoffman (*pro hac vice*)
(William.Hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

Attorneys for Defendant
MONSANTO COMPANY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of December, 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Michael X. Imbroscio*