Jennifer A. Moore (SBN 206779)
**MOORE LAW GROUP, PLLC**
1473 South 4th Street
Louisville, KY  40208
T:  (502) 717-4080
F:  (502) 717-4086
jennifer@moorelawgroup.com

Yvonne M. Flaherty
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
ymflaherty@locklaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>Hon. Vince Chhabria |
| THIS DOCUMENT RELATES TO:<br><br>*Carriere v. Monsanto Co.*<br>Case No. 3:18-cv-05778 | **PLAINTIFF CARRIERE'S RESPONSE IN OPPOSITION TO MONSANTO'S MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO PRODUCE EVIDENCE OF EXPOSURE** |

## I.     INTRODUCTION

Plaintiff Jerald Carriere ("Mr. Carriere") regularly and consistently used a glyphosate based formulation (GBF) manufactured by Defendant Monsanto to kill weeds and certain grasses on multiple commercial and residential properties from approximately 1977 to 2012.  Exhibit 1, Carriere Dep. Tr. (9/25/19), 245:10-18; 245:22-249:24.  As a result, Mr. Carriere developed Non-Hodgkin's Lymphoma

1

(Diffuse Large B-Cell, cutaneous) in 2016.  Exhibit 2, Carriere Rpt. at 2-4, 5.  Following his initial NHL diagnosis, Mr. Carriere underwent several cycles of RCHOP followed by periodic follow-up care and examinations.  *Id*.  See also Ex. 3, Carriere Dep. Tr. (7/16/19), 200:22-202:23.  In August 2019, Mr. Carriere's cancer returned and has ravaged Mr. Carriere.  Ex. 1, Carriere Dep. Tr. (9/25/19), 256:2-259:7.  In summer 2019, Mr. Carriere commenced intensive chemotherapy treatments which required multiple hospitalizations – typically at least 72 hours per hospitalization.  *Id*.  *See also*, Carrie Dep. Tr. (9/25/19), 219:11-222:18.  Mr. Carriere has lost significant amounts of weight and has difficulty walking, sleeping, eating, and driving.  *Id*. at 232:15-233:8; 259:19-261:23.  Mr. Carriere has also suffered significant memory loss as a result of his extensive chemotherapy and the initial cancer treatments.  Ex. 3, Carriere Dep. Tr. (7/16/19), 181:6-181:20; 182:3-182:7; 183:17-183:20.  In sum, Mr. Carriere is extremely sick and is fighting for his life.

In July 2019 and just weeks before Mr. Carriere received the recurrence diagnosis, Mr. Carriere presented for his deposition in this litigation.  The parties were unable to complete the deposition in July (because of logistical constraints) and reconvened the deposition between Mr. Carriere's chemotherapy and hospital admissions in late September 2019.

Mr. Carriere testified under oath that he used a GBF ("RoundUp")[1] to kill weeds and grasses from the late 1970s to 2012.  However, Defendant Monsanto cites to limited excerpts from Mr. Carriere's testimony in which Mr. Carriere stated that the GBF did not always kill the grass right away and that Mr. Carriere used a "lawn safe product" on all of his properties.  Def. Mtn. p. 2.  A more thorough examination of Mr. Carriere's testimony confirms that Mr. Carriere regularly used GBFs, i.e., Defendant Monsanto's RoundUp, to kill weeds and grasses and that the GBF product used, at least at certain properties, was *not* lawn safe.  At minimum, there exists a question of fact that precludes summary judgment. Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

**II.    Factual Background Confirming Mr. Carriere's Use of Monsanto's GBFs.**

---

[1] Mr. Carriere generally referred to GBFs as RoundUp throughout his deposition.  Unless specifically identified as a non-GBF product, all references to RoundUp herein should be construed as references to GBF and the two are used interchangeably for purposes of this Response.

2

1         Mr. Carriere's first recollection of using a GBF dates back to his car lot in the late 1970s. Specifically, Mr. Carriere opened Carriere Car Company on Hawthorne Boulevard in 1977. Ex. 3, Carriere Dep. (7/16/19), 81:10-82:10. This property was 2-3 acres in size and, as discussed below, Mr. Carriere used GBF to kill anything that grew on this property.

         Mr. Carrier testified that he also used Defendant's GBF at a rental property he owned at 4427 West 172nd Street from 1987-1989. This property was approximately 50x150 feet, with a mixture of rental buildings and barren land, as well as extensive weeds. Mr. Carriere tried, but was unsuccessful, in growing a lawn on this property and he often used an entire bottle of RoundUp per visit to get control over the weeds and nuisance grasses that grew throughout the property. Mr. Carriere also testified that he would sometimes pour the RoundUp directly on mounds of weeds and did, on occasion, spill or splash Roundup on his hands, legs, or feet. The property held some vegetative plants and Mr. Carriere took care, "as best he could" to avoid spraying these plants – although some of the plants also died. Mr. Carriere typically spent 15-30 minutes per visit spraying weeds and certain grasses (crabgrass and kikuyu grass) at this property and visited the property about 12 times per year. Exh. 3, Carriere Dep. (7/16/19), 83:10-106:9; 106:17-109:4; 111:16-113:21.

         Mr. Carriere also owned a comparable property at 4437 West 172nd Street from the 1980s to the 1990s. While this property had additional buildings, any open land was barren or covered in weeds. The property had some vegetation, but also exposed dirt. Mr. Carriere testified that he used RoundUp on this property in a similar fashion, i.e., approximately once per month, either sprayed or poured, with occasional splashes on to his hands, legs or feet. Exh. 3, Carriere Dep. (7/16/19), 114:10-119:6.

         Mr. Carriere purchased a property at 14802 Denker in approximately 1990 and continues to own this property. This property contains a home on a lot of roughly 55 by 170 feet. Mr. Carriere testified that he also used RoundUp at this property. Unlike some of his other properties, there was an area on the property where grass could grow. However, Mr. Carriere testified that he was not always careful to avoid the grass when spraying RoundUp - although he also testified that he did not particularly care if the grass was sprayed on this property. Mr. Carriere stated that he had an understanding that the RoundUp would not kill his grass; however, as noted above – the preferred grass (i.e., a lawn) did not grow at his other properties and he was not particularly specific in the manner in which he sprayed this

or other rental properties. Moreover, Mr. Carriere acknowledged that the "lawn" depicted in the deposition exhibit purported to be 14802 Denker showed "brown" or dead grass. Mr. Carriere also testified that he took care not to spray certain plants – suggesting that Mr. Carriere had at least some idea that the GBF he used could harm or kill the plants. Ex. 3, Carriere Dep. (7/16/19), 119:7-122:22; 124:22-128:9.

Mr. Carriere and his wife also used RoundUp at their residential properties/homes. Mr. Carriere and his wife purchased their first home at 22516 Greenwood in approximately 1978 and maintained this property as their primary residence until 1988. This was a residential property occupied by Mr. Carriere and his wife. Mr. Carriere testified that he believed you could spray or pour RoundUp on the grass – but did <u>not</u> state that he had done so. Indeed, Mr. Carriere would have no way of knowing if he was mistaken in this understanding because he sprayed RoundUp on the driveway and walkways of this property. Ex. 3, Carriere Dep. (7/16/19), 155:18-158:4.

Mr. Carriere and his wife purchased their second home on Seal Point in the late 1980s. Mr. Carriere testified that he used GBF at this home to target weeds and "grass where it didn't belong" – i.e., he used GBFs to kill grass at his home when the grass grew where it was not supposed to grow. Mr. Carriere also testified that he used the same RoundUp product here that he used on other properties. Ex. 3, Carriere Dep. (7/16/19), 137:6-137:12; 138:7-139:2. Mr. Carriere continues to reside at the Seal Point location and last used GBFs at this property in 2012.

Mr. Carriere also owned property at 4412 153rd Street and 15301 Hawthorne. Collectively, these properties housed Carriere Car Company and consumed over two acres. Once or twice a month, Mr. Carriere applied Defendant's GBF to large portions of both properties as weeds grew through cracks in the cement and asphalt. There were no plants or shrubs that Mr. Carriere sought to grow on these properties. "Q: If something green popped up, it was a weed? A: Right." Ex. 3, Carriere Dep. (7/16/19), 145:16-149:7; 149:24-150:6; 152:19-153:2.

In addition to the properties discussed above, and to summarize, Mr. Carriere owned property and used GBFs at multiple properties in Lawndale, including property on 153rd, 171st and two properties on Firmona. Ex. 1, Carriere Dep. (9/25/19), 246:1-247:1. Mr. Carriere also owned property and used GBFs on multiple properties in Torrance, including property on 170th, 223rd, and on Hawthorne. *Id*. at

247:10-249:24. The vast majority of these properties were either barren, had dead grass, or were places where Mr. Carriere sought to kill anything green that popped up. Moreover, Mr. Carriere owned property and used GBFs at his personal residences – where he was careful where he sprayed GBFs and used GBFs to kill grasses where they did not belong.

Defendants also suggested to Mr. Carriere that perhaps he used any number of non-RoundUp herbicides. Indeed, Monsanto's counsel listed half a dozen different non-RoundUp herbicides. Mr. Carriere denied having used any of these products. Ex. 3, Carriere Dep. (7/16/19), 159:7-160:4.

### III. Argument

Summary judgment on a claim is inappropriate unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In order to prevail, Monsanto must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the present case, the essential element at issue is Plaintiff's exposure to Defendant's GBF. As set forth above, Plaintiff presents more than sufficient evidence to establish repeated exposure to Defendant's GBF. Indeed, Plaintiff has testified under oath regarding years in which he was exposed to Defendant's GBF, the manner in which he was exposed to Defendant's GBF, the specific properties on which he was exposed to Defendant's GBF, the frequency at which he was exposed to Defendant's GBF, and the parts of his body that were directly exposed to Defendant's GBF. Plaintiff Carriere also testified regarding the specific plants he sought to kill with Defendant's GBF – including grass that grew in places where Mr. Carriere did not want it to grow – and that he used Defendant's GBF to kill this grass. Notwithstanding, Monsanto challenges the credibility of Plaintiff's testimony. However, on summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Here, Monsanto fails to satisfy the threshold required for summary disposition under Rule 56. Monsanto's suggestion that Mr. Carriere presents no evidence of GBF use is simply false. Mr. Carriere presents more than enough evidence on which a jury could reasonably find that he was exposed to Defendant's GBF. In the alternative, a genuine issue of material fact exists on the issue. Thus, summary

judgment is inappropriate.

## IV.   Conclusion

Mr. Carriere used GBFs at multiple properties, on multiple occasions, for over 20 years. Most of the properties at which Mr. Carriere sprayed GBFs were either commercial property where he wanted to kill anything green that popped up through the asphalt and cement or rental properties that he managed. Mr. Carriere was admittedly less selective in the manner in which he sprayed Defendant's GBF at his commercial and rental properties. Indeed, Mr. Carriere testified that he was unable to grow a lawn at many of the rental properties he managed. He also testified that much of the ground at these properties was barren, just dirt, or "brown" grass that was covered by recreational items or buildings. However, when using GBFs at his residential property, Mr. Carriere was more selective in the manner in which he sprayed, being careful not to spray certain plants. Mr. Carriere relied on Monsanto's GBFs to kill grass where it did not belong. Mr. Carrier also denied use of several different non-RoundUp herbicides. Mr. Carriere has set forth credible evidence of product use. And, to the extent that there are factual disputes regarding this evidence, such disputes are properly reserved for the jury. As such, Mr. Carriere respectfully requests that this Court deny Monsanto's Motion for Summary Judgment in its entirety.

Dated:  December 10, 2019

**MOORE LAW GROUP, PLLC**

By:   /s/ *Jennifer A. Moore*
Jennifer A. Moore (SBN 206779)
**MOORE LAW GROUP, PLLC**
1473 South 4th Street
Louisville, KY  40208
T:  (502) 717-4080
F:  (502) 717-4086
jennifer@moorelawgroup.com


/s/ *Yvonne M. Flaherty*
Yvonne M. Flaherty
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
ymflaherty@locklaw.com
*Attorneys for Plaintiff*