# EXHIBIT 9

**Volume 11**

**Pages 1564 - 1911**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| EDWARD HARDEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS.   ) | **NO. C 16-00525 VC** |
| ) | |
| MONSANTO COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

San Francisco, California
Monday, March 11, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
            ANDRUS WAGSTAFF PC
            7171 W. Alaska Drive
            Lakewood, Colorado  80226
      **BY:  AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
            **DAVID J. WOOL, ATTORNEY AT LAW**

            MOORE LAW GROUP
            1473 South 4th Street
            Louisville, Kentucky  40208
      **BY:  JENNIFER MOORE, ATTORNEY AT LAW**


      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Marla F. Knox, RPR, CRR
            Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
            Official Reporters

1   **THE COURT:** Well, can I ask you -- what do you think
2   is your best case for the argument for giving this instruction?
3   **MS. MOORE:** Option 1, Your Honor. Is that what you
4   are talking about?
5   **THE COURT:** Either one.
6   **MS. MOORE:** Well, I mean, in this case you have
7   multiple causes that are being presented to the jury. And in
8   the case I pointed out, Your Honor, this morning, the Logacz
9   versus Limansky case, that is what happened in that case.
10  There was a defense expert who presented a causation theory and
11  a Plaintiff's expert that presented a causation theory. And
12  the trial court did not offer the concurring causation
13  instruction and the Court of Appeals reversed on -- and said it
14  was reversible error not to do so in that case.
15      So in this situation the jury could absolutely find that
16  Roundup and hep C both contributed to his non-Hodgkin's
17  lymphoma, and they can still find for the Plaintiff because
18  Roundup was part of that.
19  **THE COURT:** Well, you are using the word
20  "contributed."
21  **MS. MOORE:** Okay. Well, substantial factor. I'm
22  sorry, Your Honor.
23  **THE COURT:** Because -- I mean, that's important, I
24  think, because what you seem to be suggesting there is that the
25  jury find that even if one of them on their own didn't --

1    wouldn't have caused the cancer, they both combined to cause
2    the cancer.  And I don't think there was anything close to
3    testimony suggesting that, right?
4         **MS. MOORE:**  I mean, no.  Well, Dr. Portier
5    testified -- you will recall the George study, Your Honor, from
6    2010.  And Dr. Portier talked about Roundup is also a promoter
7    not just an initiator.  That was the mouse study where they put
8    Roundup on the skin of the mice.
9         And what they found in that study was that not only was
10   Roundup an initiator of the cancer cells, but it is also a
11   promoter of the cancer cells.  So we absolutely have evidence
12   before the jury that if they believe what Dr. Levine said
13   today, which is that the -- I think her word was "accident" --
14   happened somewhere in the 39-year period where the genetic
15   mutation formed, there is absolutely proof in the case that
16   Roundup could have been a promoter of that genetic mutation
17   that had been caused --
18        **THE COURT:**  But did Dr. Portier actual offer that
19   opinion?  Because I don't think -- I mean, he was talking about
20   it in the context of this one study.  But did he ever actually
21   offer an opinion that said, Number 1, I believe that Roundup
22   caused the NHL; but Number 2, even if you believe that hep C
23   caused the NHL, I believe that Roundup or hep C sort of caused
24   an initial genetic mutation that set off a chain reaction,
25   I believe that Roundup contributed to that chain reaction and,

1  therefore, resulted in Mr. Hardeman getting cancer?

2  I don't remember any testimony to that effect.

3  **MS. MOORE:**  I don't think -- well, I don't think he
4  said to that direct of a point, Your Honor.  But I don't think
5  he has to.  What he offered to the jury was evidence that
6  Roundup has been proven by the science to be an initiator and a
7  promoter.  And so that gives us the ability to make that
8  argument in closing arguments that Roundup -- if you believe
9  what the defense says.  I'm not saying that that's what we say.

10  But if you believe what the defense says, that Dr. Levine
11  says that he had this genetic mutation and it did not -- caused
12  by hep C, and it didn't go away with therapy, it stayed in his
13  testimony.  But he is also at the same time being exposed to
14  Roundup.  And we know from Dr. Portier's testimony that Roundup
15  is also a promoter of precancer and cancer.

16  And so absolutely we can make that argument in closing and
17  present that to the jury.  And so I do think in that situation
18  that it is only right that Option 1 be given versus Option 2.

19  **THE COURT:**  But you -- I mean, it seems a little
20  strange.  I mean, I understand the concept of taking little
21  snippets from different fact witnesses' testimony and then
22  putting together a theory for what happened.  But the purpose
23  of expert testimony is to get them up on the stand offering an
24  opinion.  And you seem to be saying, Even if you disagree with
25  Dr. Portier's opinion, you can take this little snippet from

1  his opinion that -- where he commented on a mouse study.
2  And -- the George study was a mouse study, right?
3      **MS. MOORE:**  Right.
4      **THE COURT:**  -- and, you know, you can use that to
5  conclude that even if the Defendants are right that hep C
6  caused the genetic mutation that led to the NHL, that -- that
7  the Roundup accelerated that process, isn't that the kind of
8  thing that you need expert testimony to support?
9      **MS. MOORE:**  Well, I think we have expert testimony
10 that Roundup is a promoter.  That is clear, and it is
11 undisputed in this case.  As you will recall, they have not
12 brought in one witness to dispute the animal studies in this
13 case.
14     And so that is the evidence undisputed.
15     **THE COURT:**  Where is his -- can you show me where his
16 testimony is?
17     **MR. KILARU:**  Your Honor, while that is happening, can
18 I make a broader point about the George study; is that okay?
19     **THE COURT:**  Sure.
20     **MR. KILARU:**  So I think the most fundamental point
21 here is that Dr. Portier wasn't a case-specific expert.  He was
22 by definition a general causation expert.  And in the context
23 of his testimony, he mentioned that there's this mouse study
24 that says if you paint one chemical on a mouse's skin and then
25 you paint another chemical, it can promote tumor activity.

1    That has nothing to do and was not in any way tied to
2 hepatitis C.  It has nothing to do with the conditions that
3 Mr. Hardeman had.  And I know we're not getting into what
4 regulators say, even IARC thinks the George study is not
5 particularly credible and I think discredited it and didn't
6 rely on it in its monograph.
7    That's sort of more of a side point.  I think they also
8 called Dr. Weisenburger; and if they had this belief that the
9 George study -- I mean, Dr. Weisenburger opined on all the
10 science, including general causation.  If they had a belief
11 that there was some validity to this theory that George shows
12 that somehow Roundup promotes hepatitis C activity, you would
13 think they would ask him something about that or even talk
14 about the George study at all, but that didn't happen.  So I
15 don't think that can be a basis for justifying a jury
16 instruction.
17    **THE COURT:**  And I'm happy to hear what Portier's
18 testimony said, but I think that you have to be right,
19 particularly given that Portier was just a general causation
20 expert, that they actually -- I mean, this is a discussion
21 about the jury instructions, but it's also a discussion about
22 what can be argued to the jury and what cannot.  And it seems
23 to me -- I don't see how they could argue to the jury that the
24 Roundup accelerated the process by which hep C gave
25 Mr. Hardeman cancer.

1    **MR. KILARU:**  And I think Dr. Weisenburger's testimony,
2    I mean, I have some cites here, but he said on redirect, in
3    talking about hepatitis C (reading):
4        "I don't believe it was a cause and I don't believe
5        hepatitis B was a cause either for the same or similar
6        reasons."
7    And they were talking about it.  And then later, the last
8    question of the direct was (reading):
9        "What was the substantial factor in causing
10       Mr. Hardeman's non-Hodgkin's lymphoma?"
11   And the answer was not Roundup plus hepatitis C, Roundup
12   promoting hepatitis C.  It was:  It was the Roundup exposure,
13   period.
14       **MS. MOORE:**  Your Honor, I apologize.  We're looking
15   for the right report because it's not in the trial transcript.
16   Sorry.
17       **THE COURT:**  That's okay.  Wait.  What's not in the
18   trial transcript?
19       **MS. MOORE:**  You know, when we had the trial
20   transcripts, it doesn't include what was said in the
21   depositions, and so I have my trial transcript so I can't --
22   I've got to find the Portier run report.
23       **THE COURT:**  The Portier what report?
24       **MS. MOORE:**  What was actually played from
25   Dr. Portier's deposition because the transcript, of course,

```
 1  that Jo Ann takes down, she's not taking down the deposition
 2  testimony itself.
 3          THE COURT:  Right.  Right.  Right.  Right.
 4          MS. MOORE:  So I have the transcript of the trial but
 5  not that.
 6          THE COURT:  And we can circle back to that, but why
 7  isn't Mr. Kilaru right that, you know, he was a general
 8  causation expert?  He didn't testify about the interaction
 9  between hep C and Roundup at all, much less the interaction
10  between hep C and Roundup as it relates to Mr. Hardeman.
11          MS. MOORE:  And I didn't say he did.
12          THE COURT:  How can you use that -- how can that
13  testimony be the basis for arguing that even if you disagree
14  with us that, you know, Roundup was the initial cause of the
15  cancer, you could find for us by concluding that Roundup
16  accelerated the development of the cancer?
17          MS. MOORE:  Because that's what the George study says.
18  The George study says Roundup is an initiator and a promotor.
19  That's what they showed in the George study.  That's what
20  Dr. Portier testified to; and that's about, you know, a
21  promotor as to genetic mutations in the cells.  It doesn't have
22  to be specific to hepatitis C, and I wasn't trying to imply
23  that he was because he did not do case-specific opinions.
24          THE COURT:  Okay.
25          MS. MOORE:  But regardless of -- regardless of that,
```

```
 1  Your Honor, I mean --
 2           THE COURT:  Okay.  So let's assume for the purposes of
 3  this discussion, and you can point me to the Portier testimony
 4  if you want, but let's assume for the purposes of this
 5  discussion that I conclude that it would not be appropriate for
 6  you to make that argument to the jury because there was not
 7  expert testimony to support that argument.  Okay?
 8           MS. MOORE:  Okay.
 9           THE COURT:  So what can you argue to the jury and why
10  is this instruction needed to allow you to do it?  I mean,
11  obviously your primary argument to the jury is going to be
12  Roundup causes cancer.
13           MS. MOORE:  Right.
14           THE COURT:  Hep C didn't.
15           MS. MOORE:  Right.
16           THE COURT:  Okay.  Now, you are hoping to present an
17  alternative argument to the jury, and we need to talk about --
18  we need to figure out whether there's a basis in the evidence
19  for you to make that alternative argument to the jury; and then
20  if so, what should the instruction be.
21           MS. MOORE:  Sure.
22           THE COURT:  So what is the alternative argument here?
23           MS. MOORE:  The alternative argument is:  You could
24  believe both Dr. Weisenburger and Dr. Levine.  You could
25  believe that if you look at all the risk factors that apply to
```

```
 1  proof that it was Roundup.
 2       I mean, what this instruction does is basically tell the
 3  jury, if you can't decide between two risk factors -- I think
 4  the concern is it basically tells the jury, If you think there
 5  is strong evidence on both sides, then Mr. Hardeman wins.  And
 6  I don't think that's the way the burden of proof operates in
 7  this case especially given that they have been giving sort of
 8  competing views of the --
 9           MS. MOORE:  But that is ignoring the first paragraph,
10  Your Honor, which is Mr. Hardeman must prove by a preponderance
11  of the evidence that Roundup was a substantial factor in
12  causing his non-Hodgkin's lymphoma.  They still have to show --
13  they still have to find that Roundup was a substantial factor.
14       I mean, again, I just want to be very clear.  Our position
15  is Option 1 is the correct position under California law, but I
16  don't think what Monsanto's attorney just argued right then is
17  accurate because that is taken care of in paragraph 1.
18           THE COURT:  Okay.  So what I want to hear from you now
19  is do you have any other argument -- I mean, as of now where we
20  are is that the Plaintiffs are -- may not argue to the jury
21  that the two things combined to cause the cancer because there
22  is not an expert opinion to support that, and there is not
23  really even any scientific evidence to support that.
24       And so Task Number 1 for you is to talk me out of that.
25           MS. MOORE:  Okay.
```

1  **THE COURT:** And then task Number 2 is to get back to
2  this instruction and figure out if we -- if we can have -- if
3  we should be having some concurrent independent cause-type
4  instruction, as opposed to a concurrent independent cause,
5  which is what you are now arguing.
6      **MS. MOORE:** I understand, Your Honor.
7      As to the first question, I do have Dr. Portier's
8  testimony pulled up now. This appears on line -- I'm sorry,
9  page 156, and it is lines -- let's see -- starting at line 18,
10 and it goes on through page 157.
11     Dr. Portier was asked about the George study in particular
12 and said: Is that consistent with what you are seeing in the
13 rodent data for glyphosate? And he says, Partially. Obviously
14 it is addressing the question of promotion, which means that
15 you already have these initiated cells. Living can cause
16 mutations to occur. And so it is conceivable that glyphosate,
17 all of these tumor findings we are seeing here are glyphosate
18 promoting out already effects.
19     And he continues on --
20     **THE COURT:** That was his testimony?
21     **MS. MOORE:** This is Dr. Portier's testimony.
22     **THE COURT:** It is conceivable?
23     **MS. MOORE:** Yes.
24     **THE COURT:** Okay.
25     **MS. MOORE:** And then he continues on, Your Honor.  I

```
 1   can keep going if you want me to, but -- he says:  Promoting
 2   out already effects.  He goes, I don't think it is likely, but
 3   it is conceivable that's the case.  The initiation promotion
 4   study is simply showing you that one system --
 5           THE COURT:  Wait.  You said -- wait.  Sorry.  Could
 6   you read that one more time?
 7           MS. MOORE:  Sure.  He goes, I don't think it is likely
 8   but it is conceivable that's the case.
 9           THE COURT:  What is conceivable that that's the case?
10   Can you refer back to the testimony that he is saying is not
11   likely but conceivable?
12           MS. MOORE:  Yes.  That is the initiation -- the
13   question of promotion, Your Honor.
14           THE COURT:  Okay.
15           MS. MOORE:  The very first part of his answer is it is
16   addressing the question of promotion.
17           THE COURT:  So he is saying he doesn't think it is
18   likely that it is promoting?
19           MS. MOORE:  He says it is conceivable that's the case,
20   and he continues.  He says:  The initiation promotion study --
21           THE COURT:  Wait, wait.  You just skipped over
22   something.  It is -- okay.  Read it again.
23           MS. MOORE:  Sure.  Okay.  I will start at the very
24   beginning, Your Honor.
25           THE COURT:  Yeah.
```

1       **MS. MOORE:** Okay.  Let me back up.

2    This is the very beginning of his answer, and it starts at

3 156, line 23.  Partially.

4    Let me read the question because I think that's part --

5 156, 18:  Well, then let me ask you this question.  The George

6 study, this positive finding there, what is that consistent

7 with what you are seeing in the rodent data for glyphosate?

8    And the answer is:  Partially.  Obviously it is addressing

9 the question of promotion, which means that you already have

10 these initiated cells.  Living -- I don't know why it says

11 living here -- living can cause mutations to occur.  And so it

12 is conceivable that glyphosate, all of these tumor findings we

13 are seeing here are glyphosate promoting out already effects.

14 I don't think it's likely but it is conceivable that's the

15 case.

16    And then he continues:  The initiation promotion study is

17 simply showing you that in one system, the skin, glyphosate has

18 this ability to promote out cancer.  That is all it really

19 means.

20    So --

21       **THE COURT:** So there is no expert testimony that would

22 support an argument -- I mean, if that's all you have --

23       **MS. MOORE:** No, I don't, Your Honor.

24       **THE COURT:** Okay.

25       **MS. MOORE:** If you continue on to page 157 at line 16,

1  he is asked:  Does it have any influence -- meaning it, the
2  George study -- have any influence on whether or not it could
3  promote a mutation to lead to cancer?
4       And Dr. Portier's answer is:  It certainly increases the
5  chances.  That might be the case because now you have evidence
6  to suggest glyphosate can do that.  But I would want to see a
7  lot more evidence before I would go there and start thinking
8  about that.  There are initiation promotion studies you can do,
9  and he continues on for a while about initiation promotion
10 studies.
11      **THE COURT:**  Okay.  So what you just read me is sort of
12 the opposite of evidence to support the argument that you are
13 proposing to make.  I mean, it's an expert who is not willing
14 to offer any sort of opinion remotely close to the argument
15 that you are proposing to make, putting -- even putting aside
16 the fact that it was just general causation testimony and not
17 specific causation and not related to hep C at all.
18      So if that's your evidence to support your argument that
19 Roundup and hep C combined to cause his cancer, you cannot make
20 that argument at closing.
21      **MS. MOORE:**  I understand, Your Honor.  I would just
22 reserve because that was on the fly, me just searching quickly
23 on the iPad to find those two references.  I would want to go
24 back and look at Dr. Portier's testimony.
25      **THE COURT:**  That's fine.  But the ruling now is that

```
 1  you cannot make that argument.  So as you are preparing your
 2  closing argument tonight, you cannot make that argument.
 3          MS. MOORE:  I understand, Your Honor.
 4      Let me go back to the jury instruction issue I think
 5  regardless of the George study and Dr. Portier's testimony on
 6  that, that California law is very clear that this is a
 7  substantial factor, and that the but-for does not apply here.
 8  And that's why I cited the Limansky case, Your Honor.
 9      And I would just point out that in that case what happened
10  at the trial level is that the jury found -- and this was a
11  medical malpractice case --
12          THE COURT:  Is this something -- are you citing to the
13  Court of Appeals' opinion in this case?
14          MS. MOORE:  Yes, Your Honor.
15          THE COURT:  Okay.  So where are you describing from?
16          MS. MOORE:  Well, Your Honor, this is at the very
17  beginning the summary of that, and it's -- the first paragraph
18  it starts with This is a medical malpractice case.
19          THE COURT:  Okay.
20          MS. MOORE:  Okay.  And if you go -- it is the
21  second-to-the-last sentence in that paragraph.  It says:
22  Following a trial during which the trial Court refused to give
23  a jury instruction on concurrent causation, the jury found that
24  while Dr. Limansky was indeed negligent in his care of Cynthia,
25  such negligence was not a cause of her death.
```