# REDACTED VERSION OF MOTION TO EXCLUDE TESTIMONY OF MONSANTO'S SPECIFIC CAUSATION EXPERT MICHAEL GROSSBARD, M.D.

**GOLDBERG & OSBORNE LLP**
**David J. Diamond** (*pro hac vice*)
698 E. Wetmore Rd., Suite 200
Tucson, AZ 85705
(520) 620-3975
ddiamond@goldbergandosborne.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Master Docket Case No. 16-md-02741-VC |
| **THIS DOCUMENT RELATES TO:** | Honorable Vince Chhabria |
| Jaime Alvarez Calderon | Case No. 3:19-cv-01630 |
| v. | |
| Monsanto Company | |

**PLAINTIFF JAIME ALVAREZ CALDERON'S (ALVAREZ') MOTION TO EXCLUDE TESTIMONY OF MONSANTO'S SPECIFIC CAUSATION EXPERT, MICHAEL GROSSBARD, M.D.**

  Plaintiff Jaime Alvarez Calderon (Alvarez) is a landscaper from Napa, CA. His case remains in the Northern District of California before this Court. This motion is being filed because one of Monsanto's specific causation experts retained for the Alvarez case, Michael Grossbard, M.D., offers nothing more than a general causation opinion concerning Mr. Alvarez.

  Despite acknowledging Mr. Alvarez' 31 years of commercial Roundup® use, and no other causative risk factors, Dr. Grossbard opines that glyphosate/ Roundup® did not cause Mr. Alvarez' NHL. The sum and substance of Dr. Grossbard's opinion is that one cannot positively prove

PLAINTIFF MOTION TO EXCLUDE TESTIMONY OF DR. GROSSBARD – 3:19-cv-01630

1

Roundup® causes NHL through some specific trait of the lymphoma or a particular test, and as a result it is not possible to say that Roundup® is a potential cause of NHL.

> . . . [T]he available scientific evidence does not demonstrate that exposure to Roundup® causes or contributes to the development of NHL. Moreover, it is scientifically impossible for anyone to conclude that exposure to Roundup® either induced or contributed to a particular person's lymphoma because there is no validate medical test, procedure or protocol for making such a determination.

Grossbard Report at p. 3, attached hereto in **Exhibit 1**.

> Dr. Grossbard's deposition testimony provides:
>
> Q. Okay. So are you saying no one can apply their best scientific judgment, having reviewed the literature, having assessed the quality of the literature, having looked at whether or not there's an association, looking at biological plausibility, looking at all of those things, and no one can simply disagree with you and say Roundup® did contribute to the development of this particular person's NHL?
> A. I don't believe I'm saying that.
> Q. Oh, okay. So there are reasonable doctors and scientists who could make such a determination?
> MR. SLONIM: Objection.
> BY MR. KRISTAL: Q. Right?
> A. Yeah. I mean, I happen to disagree with their opinions, but they have their opinion, and I have mine.

Grossbard Deposition at p. 54, l. 23 – p. 55, l. 16, attached hereto in **Exhibit 2**.

As discussed below, Dr. Grossbard agrees that Mr. Alvarez does not have other relevant risk factors and he acknowledges Mr. Alvarez' occupational exposure to Roundup®. However, he is unwilling to accept glyphosate as a potential factor in causing NHL. "I am fundamentally answering a science question in this case. Does glyphosate cause lymphoma? I don't think it does." *Id*. at p. 162, ll. 17-20

> The following is Dr. Grossbard's specific causation testimony regarding Mr. Alvarez:
>
> Q.  I did look at the Sanders report before, and I looked at the Hardeman report. And in those reports, you discussed other specific risk factors pertaining to those plaintiffs.

A. Correct.
Q. But I didn't see any discussion of any specific risk factors pertaining to Mr. Alvarez, which I'm assuming is because he didn't have any other risk factors?
A. That list of risk factors that I provided as potential risk factors, infection, diabetes, obesity, **I could not identify any of those risk factors for Mr. Alvarez**.
. . .
Q. **Your opinion is just that exposure to Roundup® cannot be a cause of non-Hodgkin's lymphoma?**
A. **That would be true**.
. . .
Q. Okay. But it's not based upon any type of differential etiology or differential diagnosis depending on how you say it. . . .
MR. SLONIM: Objection. Form.
BY MR. DIAMOND: Q.  Is that correct?
A. So I -- I -- the question being? I mean, I'm sorry. I can't name -- I can't say it's -- I can't say what causes it because --
Q. Of doing any type of ruling in, ruling out factors?
A. So I can rule in or rule out factors, again, if you have some of these things that I believe are causes. If he had radiation in the field, if he had Helicobacter pylori, if there's HIV infection, if there's EBV virus. There's a whole litany that we don't need to go through. But absent that, and without those well defined factors, for the majority of patients, I can't -- or the majority of patients -- majority of individuals with lymphoma, I can't say what caused their lymphoma.
Q. And just turning to Page 6 of your report.
A. Yes.
Q. And we get down to where we talk about clinical history.
A. Yes.
Q. I'm going to ask you about some of the things that you put in these few paragraphs.
A. Sure.
Q. Just to ask you what the relevance to your opinions are of the facts that you've sort of set forth, okay?
A. Absolutely.
Q. So I'm going to try to break it down, and then I'm going to ask you for each one, what's the relevance to any of your opinions.
A. Okay.
Q. The fact that he was born in Mexico City has no relevance to your opinions, does it?
A. No. It's all just part of providing a medical history.
Q. Okay. The fact that he was ▇▇▇▇▇▇▇, does that have any relevance?
A. Older individuals, the older you are, the more likely you are to have lymphoma. But **I can't say that age caused his lymphoma.**
Q. It may make him more susceptible?

PLAINTIFF MOTION TO EXCLUDE TESTIMONY OF DR. GROSSBARD – 3:19-cv-01630

3

A. No more susceptible, but more likely that he got lymphoma. Whether you call the word "susceptible" or not is hard to say.

Q. **But it's not a cause?**

A. **No.**

Q. Okay. And then you mentioned that he has no family history of non-Hodgkin's lymphoma.

A. Yes.

Q. Is that relevant to your opinions?

A. It is. **Family history is a recognized risk factor, though not a cause for lymphoma.**

Q. Okay. **And he doesn't have that history?**

A. **That is true.**

Q. You mentioned that he does have a history of ▬▬▬▬▬▬▬▬?

A. That's true.

Q. And that he ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Does have that any relevance to your opinions?

A. To the best of my knowledge, there's no literature linking lymphoma and ▬▬▬▬▬▬▬ in families.

Q. Okay. And the same, you go on and say that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, correct?

A. Yes.

Q. Does that have any relevance to your opinions regarding Mr. Alvarez?

A. No. **There's not enough** ▬▬▬▬▬▬▬▬▬▬▬▬ **here to provide a genetic reason for this.**

Q. Okay. I'm skipping down a paragraph. From March '86 to the present time, he's been employed by Sutter Home Vineyards as a landscaper. His work includes pruning trees, watering, and mowing the lawns and that he reports he sprayed Roundup® over an approximately 20-acre property. Does that have any relevance to your opinions?

A. Well, it has relevance to the fact that my opinion is really whether Roundup® is the cause of his lymphoma. So, I think stating his use of Roundup® matters. If he never used it, then we would never even be sitting here.

Q. Okay. And would it make any difference if he sprayed 80 acres?

A. Oh, in terms of quantitation of acres? Not to my -- no.

Q. Okay. And you also mentioned that he sprayed a soap-based pesticide on plants. Any relevance to your opinions regarding Mr. Alvarez?

A. I don't know what that pesticide was and I don't know -- I can't say that that caused lymphoma.

* * *

Q. Going down to the next paragraph, you mentioned Mr. Alvarez describes using both Roundup® Ready-to-Use Weed & Grass Killer III, as well as Roundup® Pro Concentrate between 1986 and 2017. Any significance to your opinions?

A. Just trying to document when he used and what he used as far as Roundup®. But the difference between those as far as my opinion, no.
Q. All right. And the fact that he sprayed -- you go on to say, "He sprayed about every two days during the spring months and less frequently in the summer and fall. And at deposition Mr. Alvarez testified only to the use of the concentrate." Any specific -- any special significance to that?
A. It's not going to alter my opinion, no.
Q. Okay. **You mentioned in the next paragraph that** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. **Any special significance in Mr. Alvarez's case for that?**
A. There could be. But **there isn't in his case**. The reason to point it out is that there are certain types of lymphoma that are associated with ▮▮▮▮▮▮▮▮▮. That does not appear to be his type.
Q. And that, you talked about earlier, the MALT?
A. Correct.
Q. Okay. And he didn't have that type of lymphoma?
A. No, he did not.
Q. You also mentioned that he was -- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
. . .
Q. **Any significance to those for your opinions?**
A. A little bit. **Not with respect to causation of lymphoma.**
Q. Okay.
A. But with respect to whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, I don't believe that was related to his chemotherapy personally. I believe it's related to underlying ▮▮▮▮▮▮▮▮▮▮.
Q. And so that's where you disagree with his treating doctor, Dr. Andreadis?
A. That would be true.
Q. Okay. You mentioned, if you go down a little bit further, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. **Any specific significance to that?**
A. Only to the relevance that obesity, which he does not have, would be associated with lymphomas. So I'm pointing out to myself, to you, to anyone, that **that's not a risk factor that I would cite here**.
Q. Okay. And you mentioned the next couple of sentences, that the one -- one note, it says that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Another one ▮▮▮▮▮▮▮▮▮▮▮. I think if you even look at some of the other records it talks about a couple of times -- ▮▮▮▮▮▮▮▮▮▮, excuse me. **Any significance to** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **for your opinions**?
A. **With respect to causation of lymphoma, no**.

PLAINTIFF MOTION TO EXCLUDE TESTIMONY OF DR. GROSSBARD – 3:19-cv-01630

5

Q. Okay. You mentioned in here that he **has a** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
**With respect to** ▮▮▮▮▮▮▮▮▮▮▮▮▮, **any specific relevance to your opinions regarding causation**?
A. There's some very -- there is some literature suggesting a relationship between ▮▮▮▮▮▮▮▮▮▮ and specifically follicular lymphoma. In his case, I don't think that's a major factor.
Q. Okay. So **just to be clear, you don't -- is it a factor or not a factor? More likely than not.**
A. Yeah, **more likely than not it is not a substantial contributing factor**.

Grossbard Deposition at p. 371, l. 13 – p. 384, l. 1 (bold added), attached hereto in **Exhibit 2**.

Dr. Grossbard agrees with Mr. Alvarez' specific causation experts, Dr. Smith[1] and Dr. Andreadis,[2] that Mr. Alvarez did not have other relevant risk factors. He also acknowledges Mr. Alvarez' 31 years of occupational exposure to Roundup®. However, while Dr. Smith and Dr. Andreadis acknowledge the general causation link between glyphosate and NHL, Dr. Grossbard does not.

Since Dr. Grossbard does not acknowledge that glyphosate can contribute to the development of NHL, and he does not find that Mr. Alvarez had other relevant causative risk factors, his specific causation opinion boils down to nothing more than an endorsement of Monsanto's general causation opinion that glyphosate does not cause NHL. *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002) (whether or not a potential cause is capable of causing a disease is a general causation question). Dr. Grossbard's opinion regarding Mr.

---

[1] Dr. Smith's Report and deposition transcript are attached in Exhibits 6 and 7, respectively, to Monsanto Company's Motion to Exclude Testimony of Specific Causation Experts Charalambos Andreadis, Clayton Smith . . . (Monsanto's Motion).
[2] Dr. Andreadis' Report and deposition transcript are attached in Exhibits 6 and 7, respectively, to Monsanto's Motion.

Alvarez is a general causation opinion disguised as a specific causation opinion. If Monsanto wants to challenge general causation, then it must do so via its general causation experts.

Based upon the foregoing, it is respectfully requested that in the Alvarez case the Court exclude the testimony of Monsanto's specific causation expert, Michael Grossbard, M.D.

Dated this 3rd day of January, 2020.

>Respectfully Submitted,
>
>*/s/ David J. Diamond*
>David J. Diamond
>Goldberg & Osborne LLP
>698 E. Wetmore Road, Suite 200
>Tucson, AZ 85705
>Tel: (520) 620-3975
>Fax: (520) 620-3991
>ddiamond@goldbergandosborne.com
>
>*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, David J. Diamond, hereby certify that on January 3, 2020, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

>*/s/ David J. Diamond*
>David J. Diamond

PLAINTIFF MOTION TO EXCLUDE TESTIMONY OF DR. GROSSBARD – 3:19-cv-01630