# EXHIBIT 3

                                   Pages 1 - 47

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

ELAINE STEVICK and CHRISTOPHER )
STEVICK,                       )
                               )
          Plaintiffs,          )
                               )
  VS.                          ) NO. C 16-02341 (VC)
                               )
MONSANTO COMPANY,              )
                               )
          Defendant.           )
_____)

IN RE:  ROUNDUP PRODUCTS        ) NO. C 16-md-02741 (VC)
LIABILITY LITIGATION            )
_____)


                        San Francisco, California
                        Monday, December 16, 2019

                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:
                    THE MILLER FIRM LLC
                    108 Railroad Avenue
                    Orange, Virginia  22960
               BY:  BRIAN BRAKE
                    TAYJES SHAH
                    ATTORNEYS AT LAW

                    ANDRUS WAGSTAFF PC
                    7171 W. Alaska Drive
                    Lakewood, Colorado  80226
               BY:  AIMEE WAGSTAFF
                    ATTORNEY AT LAW

          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
              Official Reporter, CSR No. 12219

1            MR. STEKLOFF:  Dr. Foster, who's one of the experts

2     that you allowed through on animal studies -- or in the -- you

3     assessed Dr. Foster in this Daubert general causation phase

4     here.

5            THE COURT:  So Dr. Foster was a general causation

6     expert who focused on animal studies in Phase 1?

7            MR. STEKLOFF:  Yes, sir.

8            THE COURT:  You're saying he has updated his testimony

9     in some of the Wave 1 cases to address the other prongs?

10           MR. STEKLOFF:  Even in some of the other

11    jurisdictions, where they have had notice of that in discovery,

12    his updated opinions.

13        So I think the point is, I think there is less prejudice.

14    They know what these people are going to say.  They have

15    deposed them.  They are trying to lock us into a world

16    three years ago because they like this argument with the jury

17    that our experts should be siloed into one of their -- what

18    they call the "three pillars."  So I think the prejudice is

19    much more severe to us --

20           **THE COURT:**  When you say "locked into a world"

21    of 2017, what you really mean is locked into the approach that

22    you happen to take in 2017.  I mean, the way you say it, it

23    implies that you're not going to be able to present some

24    evidence that developed after 2017.  But that's not the case.

25    Right?

1          MR. STEKLOFF:  I agree.

2          THE COURT:  The existing experts, the experts -- you

3    know, whoever your general causation experts are who

4    participated in Phase 1 are, of course, perfectly free to

5    update their opinions based on evidence that's come in

6    thereafter.

7          MR. STEKLOFF:  I understand that.

8       I'm -- I agree with what you just said.  I mean -- but it

9    also is twofold.  I mean, I presume, for example, our

10   case-specific expert in Stevick can't opine on agricultural

11   health studies and go into the epidemiology.

12      So you're basically saying -- and I agree, it was a

13   conscious approach by Monsanto in 2017 that we can't evolve in

14   what you've described as a bellwether that is meant to provide

15   one meaning -- more information to all litigants moving

16   forward.  And to say that, therefore, because of a strategic

17   decision that was made in 2017 in how to approach bifurcated

18   Daubert proceedings, we can't change?  Especially after

19   Hardeman?

20      In dual respects in that, we -- it basically forces me --

21   and I am very in favor of Dr. Mucci -- but it's basically

22   saying, the only way for you to have anyone come in and talk

23   about the agricultural health study, in your view of the

24   epidemiology, is you have to call Dr. Mucci because you

25   disclosed Dr. Mucci in 2017.

1    And I understand you can say that was a conscious decision

2    back then, and I'm -- to be clear, I want to support Dr. Mucci.

3    She is wonderful.  I thought her testimony in Hardeman was

4    excellent.  But that just doesn't make sense leading into what

5    is supposed to be now -- getting to use your words -- a sort of

6    bellwether case three years later.

7    And I really don't think -- here we are in December --

8    there is as much prejudice to Mr. Brake and his colleagues as

9    we would be prejudiced because they know what they are going to

10    say.

11    They don't like the fact that we want to bring in experts

12    who would cover all three areas, but I don't think we should be

13    precluded from doing so.

14    THE COURT:  Mr. Brake?

15    MR. BRAKE:  Yes, sir.  Three things to say:  Number 1:

16    This was not the product of some random thing.  This was a

17    conscious decision by Monsanto back when we went to the Daubert

18    proceeding to adopt the strategy which they adopted.  They

19    could have named five or six other people to talk about the

20    three pillars of science, or whatever.  For whatever reason

21    they chose to do it the way that they did it.  And now, they

22    don't want to live with the consequences of that action.

23    That's Number 1.

24    Number 2:  As Your Honor alluded to, here we are two and a

25    half months away from our trial, and Monsanto is telling you,

1   and telling me, "We want to completely change our general

2   causation game plan and testimony at trial."

3       I mean, if that's -- that's not -- Your Honor has pointed

4   out, that's going -- if that's permitted, that's going to --

5           THE COURT:  Well, how difficult of a thing is it,

6   really, to adjust to?

7       I mean, you -- you know, you probably -- let's say, you

8   know, you're working already on your opening statement and your

9   closing arguments.  I mean, you know, one of the things that

10  you will say, no doubt, is that:  Look, we brought you experts

11  who were able to look at the totality of the scientific

12  evidence.

13      They brought you experts who were siloed.

14      You know, their presentation is, you know -- the

15  presentation they have given you is not valuable.  We are the

16  only people who have experts who have looked at everything.

17      That's -- you know, you have three months to change your

18  opening statement and your closing argument and focus on

19  something else.

20          MR. BRAKE:  Well, not just that, Your Honor.

21      If Your Honor is actually -- I hope that you're not -- if

22  you're actually thinking about letting them do this, I'm going

23  to have to depose these people.

24      I mean, if these people had been disclosed in the initial

25  Daubert proceedings in this case, I would have known they were

1   going to testify, or could testify, in Stevick.  I would have

2   darn well taken their depositions and gone after them.  I

3   didn't do that because I didn't think we would need to.

4       I mean, and the other thing, too, Your Honor, is that, I

5   mean, we, as litigants, rely upon the Court's orders on these

6   matters when we get ready for trial.  And Your Honor said on

7   October 29th with regard to the bellwether cases (reading):

8           "You cannot add general causation experts."

9           And then Your Honor said on February 18th, 2019

10      (reading):

11          "The plaintiffs' Motion in Limine 2 to exclude new

12      general causation experts and opinions is largely

13      granted."

14      And then, as recently as October 7th, Your Honor made

15  clear the limitation on general causation experts was meant to

16  apply to the bellwether cases.

17          THE COURT:  That was in the order where I denied your

18  request to apply it to the other cases.

19          MR. BRAKE:  Yes, sir.  You let the general causation

20  go forward with new people.

21      With respect to Wave 1, you said, no, of course, the

22  bellwether case is going to stay the same.

23      So, I mean, taken all together, that's a big -- I mean,

24  that's not a minor thing.  That's a big, big, big deal now, two

25  and a half months away from trial, to have that bombshell

1    dropped on us.

2         THE COURT:  So the other thing you could be saying --

3    and you haven't quite said it yet -- but you could be saying,

4    and by the way, I would -- I might well move to exclude those

5    experts, if they were offered in the trial that I'm about to

6    embark upon.

7         MR. BRAKE:  Well, sure.

8         MR. STEKLOFF:  I think the Miller firm has Wave 1

9    cases, Your Honor.  So they had all of the same incentives -- I

10   understand that the incentives might be different for the trial

11   that's next, but they had all the same incentives, one, to

12   depose these people for future trials in which they might

13   testify in cases where they represent clients, and, two, to

14   file Daubert motions in those case.

15        So I do think that the Miller firm is -- they certainly

16   were involved in the process, but I'm almost certain that some

17   of those cases are their clients in the Wave 1 cases.

18        MR. BRAKE:  Yes, Your Honor.  But, I mean, there is a

19   difference between a Wave 1 trial that's going to be going to

20   trial, maybe, I don't know, next -- this fall, next fall, and a

21   trial that's going to trial in two and a half months.

22        And I'll just repeat it again.  We rely upon on the

23   Court's ruling when we get ready for things.  And I thought

24   this would have been a five-second discussion on this because

25   Your Honor said, three times, no.

1    And now, because Monsanto is not happy with the way things

2    have played out -- I'm not being critical.  They are not happy

3    with it.  They want to change it now.  I just, in my mind,

4    didn't think this would be an issue at all, given the Court's

5    previous rulings.

6        **THE COURT:**  All right.  Let me think about it a little

7    bit.  I think, for now, the parties should operate on the

8    assumption that the same rules are going to apply as the

9    Hardeman case.  But I'll think on it a little more and issue an

10   order on this one.

11       **MR. BRAKE:**  Mr. Burton just brought up a point, if I

12   may, Your Honor.

13       **THE COURT:**  Sure.

14       **MR. BRAKE:**  That compounding to the prejudice, which I

15   attempted to articulate before, getting this dropped on us two

16   and a half months away from trial, if we're going to have a

17   32-hour time limit, and then Monsanto has three more experts,

18   that's compounding the, you know --

19       THE COURT:  I was operating on the assumption that

20   they would be subbing out one expert for another and -- but in

21   any event, Monsanto is saying, we want to -- you know, we're --

22   we can present our case in far fewer than 32 hours.

23       So I'm not sure how much of a concern that is.

24       **MR. BRAKE:**  When I cross-examine them, it comes off my

25   time, obviously.

PROCEEDINGS

1           MR. STEKLOFF:  I can represent that we're not going to

2     put on a bunch of cumulative -- we're going to be efficient and

3     I don't think it would change.

4           We're actually in a worse situation now, which is that we

5     have to call a number of experts.  If you have to take a silo

6     approach, he would have to cross-examine.

7           And what I'm saying is, we would like be able to be both

8     more efficient, but also more strategic in the --

9           THE COURT:  So, do you want to -- are you in a

10     position right now to articulate -- if you were given

11     permission to call, you know, new general causation experts,

12     who wouldn't you call?

13          And who would you call?

14          MR. STEKLOFF:  I don't know that I am in a position

15     now -- part of it is, I have to go check availability of all

16     these experts.  But I am happy to file something to narrow the

17     scope.

18          THE COURT:  Because the implication was -- you know,

19     you called an animal person, if I recall.

20          MR. STEKLOFF:  Not Hardeman.

21          THE COURT:  An epidemiology person?

22          MR. STEKLOFF:  In the Daubert, but not to Hardeman.

23          THE COURT:  In Hardeman, you called Mucci.  And you

24     didn't call a toxicology person and you didn't call a mechanism

25     person.

PROCEEDINGS

```
 1              MR. STEKLOFF:  That's correct, Your Honor.

 2              THE COURT:  Okay.  I'll give it a little more thought.

 3    But the default -- you know, as I said, proceed on the

 4    assumption that the restriction continues to apply, and I will

 5    give it a little bit of further thought and issue something

 6    before the end of the year, just so you --

 7              MR. STEKLOFF:  And either before --

 8              THE COURT:  -- are not wondering.

 9              MR. STEKLOFF:  Before and during -- I thought, if you

10    would like Monsanto to provide more specificity about the

11    experts who we would reserve the right to call -- we might not

12    call someone -- but if we need to narrow the list, so there are

13    fewer experts in play in totality and be more specific?  We are

14    happy to file --

15              THE COURT:  That's okay.  I think I have a pretty good

16    understanding of what you're saying.

17              MR. STEKLOFF:  Okay.

18              THE COURT:  Is there anything else for us to discuss

19    right now?

20              MR. BRAKE:  I want to make sure -- I looked at the

21    Court's web page, but the same schedule, the 8:30 to 2:00,

22    Monday, Tuesday, Wednesday, Thursday, dark Friday, that's the

23    same schedule we'll have for Stevick; is that correct?

24              THE COURT:  Yes.

25              MR. BRAKE:  Okay.  I thought so.  I just wanted to
```