# EXHIBIT 5

**Volume 13**

**Pages 2101 - 2142**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| EDWARD HARDEMAN, )<br>                                )<br>         Plaintiff,   )<br>                                )<br>  VS.                           )<br>                                )<br> MONSANTO COMPANY,              )<br>                                )<br>         Defendant.    )<br>                                ) | **NO. C 16-00525 VC** |

San Francisco, California
Thursday, March 14, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                ANDRUS WAGSTAFF PC
                7171 W. Alaska Drive
                Lakewood, Colorado  80226
          **BY:  AIMEE H. WAGSTAFF, ATTORNEY AT LAW**
               **DAVID J. WOOL, ATTORNEY AT LAW**

                MOORE LAW GROUP
                1473 South 4th Street
                Louisville, Kentucky  40208
          **BY:  JENNIFER MOORE, ATTORNEY AT LAW**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



REPORTED BY:   Marla F. Knox, RPR, CRR
               Official Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendant:

 3                       WILKINSON   WALSH ESKOVITZ LLP
                         2001 M Street, NW - 10th Floor
 4                       Washington, D.C.  20036
                    BY:  BRIAN L. STEKLOFF, ATTORNEY AT LAW
 5                       RAKESH N. KILARU, ATTORNEY AT LAW
                         TAMARRA MATTHEWS JOHNSON, ATTORNEY AT LAW
 6                       JULIE RUBENSTEIN, ATTORNEY AT LAW
```

```
 1  Thursday - March 14, 1995                              12:35 p.m.
 2                         P R O C E E D I N G S
 3                              ---oOo---
 4      (Proceedings were heard out of presence of the jury:)
 5         THE CLERK:  Calling Civil Matter 16-525, Hardeman v.
 6  Monsanto, et al.
 7      If parties could please come forward and state their
 8  appearances for the record.
 9         THE COURT:  Don't worry about it.  We all know who
10  each other is at this point.
11      Okay.  So let me -- let me write a list of things that we
12  need to discuss.  So we have Benbrook.  We have the design
13  defect issue.  We have the Seralini study.  I feel like I'm
14  missing one thing.  No?
15         MS. MOORE:  I don't think so, Your Honor.  The only
16  other thing -- and this can probably come in with the Seralini
17  studies.  We wanted to ask for some clarification on the
18  post-use corporate conduct rulings from yesterday, but I think
19  that can come up when we are talking about Seralini as well.
20         THE COURT:  Okay.  Post-use corporate conduct rulings
21  from yesterday.  Oh, on the motion in limine.
22         MS. MOORE:  Yes, Your Honor.
23         THE COURT:  All right.  So Benbrook I think is easy.
24  I don't need to hear any further argument on it.
25      The three -- the -- the first three items that -- that you
```

1  propose to have Benbrook testify about, I do not think are
2  properly the subject of expert testimony.  They are a factual
3  narrative.  The information that you say you want to get out of
4  Benbrook, you should be able to or should have been able in
5  deposition -- been able to get that information out of fact
6  witnesses.  So Benbrook will not be allowed to testify on those
7  three topics.
8      I also think it is highly unlikely that Benbrook is
9  qualified to testify on those three topics, but I don't think
10 it matters because I don't think they are the subject of expert
11 testimony.
12     The fourth topic it seems would be the proper subject of
13 expert testimony, but I don't see how Benbrook is qualified as
14 an expert on that topic.  So I want to -- if you want to kind
15 of point me to something in his qualifications that I might
16 have missed, you know, feel free to do that.  But that's really
17 the only thing that I would want to discuss about Benbrook.
18         **MS. WAGSTAFF:**  All right.  May I confer with my
19 cocounsel for just one minute?
20         **THE COURT:**  Of course.
21     (A brief pause was had.)
22         **MS. WAGSTAFF:**  All right.  In light of Your Honor's
23 comments, and to avoid spending much more time on this,
24 Plaintiffs will withdraw Dr. Benbrook.
25         **THE COURT:**  Okay.  So that means that Mills is not

1  coming either, right?
2      **MS. WAGSTAFF:**  That means Welsh.
3      **THE COURT:**  Sorry, Welsh.
4      **MR. KILARU:**  That's right, Your Honor.
5      **THE COURT:**  Okay.  Now, let's go to the design defect
6  issue.  I -- come on up.
7     So Monsanto filed this brief in which they say that you
8  don't really have a design defect theory -- sort of
9  anticipating that you actually do have a design defect
10 theory -- but why don't you go ahead and articulate it to me
11 now.
12     **MR. WOOL:**  All right.  So if you look at Monsanto's
13 letter brief, they really limit this argument to glyphosate as
14 a chemical.  And I think there is already enough evidence in
15 the record for the jury to reasonably infer that it is the
16 combination of glyphosate and surfactants that creates the --
17     **THE COURT:**  So your argument is going to be as it
18 relates to the design defect theory?
19     **MR. WOOL:**  Yes.
20     **THE COURT:**  Your argument is going to be that this
21 product as it is constituted -- this product, Roundup, as it is
22 constituted, as it is formulated, is dangerous; and Monsanto
23 could have figured out a way to formulate it so that it would
24 be less dangerous.
25     **MR. WOOL:**  Well, I think that is one potential theory.

1   I think that Monsanto's argument with respect to the
2   possibility of California banning Roundup outright is another
3   theory that Plaintiffs intend to proceed under.
4          **THE COURT:** Is that a -- if the argument is that the
5   product simply shouldn't be there, is that really a design
6   defect argument?
7          **MR. WOOL:** I think that the argument --
8          **THE COURT:** Doesn't sound like it --
9          **MR. WOOL:** So I think that the argument wouldn't
10  necessarily be that the product shouldn't be in existence at
11  all, but I think it would be that it shouldn't be in existence
12  as it pertains to residential uses, like the ones that
13  Mr. Hardeman used. That it is certainly -- you know, setting
14  aside the uses that Your Honor limited, I think in response to
15  Plaintiff's MIL Number 3, which are the agricultural uses which
16  we think aren't relevant here; that this product is completely
17  unreasonable for, you know, your ordinary consumer like
18  Mr. Hardeman.
19         **THE COURT:** Is that a design defect theory? I mean,
20  that is -- I mean, the argument is -- the argument does not
21  appear to be -- on that theory, the argument does not appear to
22  be that it was designed improperly; the argument appears to be
23  that it was marketed improperly or sold to the wrong people.
24         **MR. WOOL:** Well, I think that would still fall under
25  the ambit of design defect because this is one of the uses of