1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE MILLER FIRM, LLC**
Michael J. Miller (pro hac vice)
Brian K. Brake (pro hac vice)
Tayjes Shah (pro hac vice)
108 Railroad Ave
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
bbrake@millerfirmllc.com
tshah@millerfirmllc.com

**AUDET & PARTNERS**
Mark Burton (CA Bar No. 178400)
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 568-2555
Fax: (415) 568-2556
mburton@audetlaw.com

*Attorneys for Plaintiffs*

**WILKINSON WALSH LLP**
Brian L. Stekloff (pro hac vice)
Rakesh Kilaru (pro hac vice)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005
bstekloff@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS
LIABILITY LITIGATION

_____

*Stevick v. Monsanto Company,*
3:16-cv-2341-VC; 3:16-md-02741-VC

_____

)
) MDL No. 2741
)
) Case No. 3:16-md-02741-VC
)
) **JOINT STATEMENT REGARDING**
) **APPLICABILITY OF PRIOR RULINGS**
) **ON MOTIONS *IN LIMINE***
)
)
)
)
)

- 1 -

Pursuant to the Court's request at the December 16, 2019 Case Management Conference, the parties submit the following joint statement regarding their positions on the applicability of the Court's motion *in limine* rulings in *Hardeman*.  Both parties preserve and reincorporate all previous arguments and objections to all adverse rulings.

**PLAINTIFFS' SUMMARY STATEMENT**

Monsanto repeats arguments that have already been considered and rejected.

Plaintiffs suggest modifications that are case specific or the result of application of clearly controlling law.

**MONSANTO'S SUMMARY STATEMENT**

Monsanto respectfully requests that the Court reconsider and adjust, in whole or in part, its prior rulings on three of Monsanto's motions *in limine*:

- Monsanto's Motion *in Limine* No. 1 Re: IARC Classification During Phase 1 of Trial (ECF No. 2610);
- Monsanto's Motion *in Limine* No. 3 Re: Monsanto Marketing Material (ECF No. 2612); and
- Monsanto's Motion *in Limine* No. 5 Re: Other Litigation, Other Products, And Company History (ECF No. 2615).

Monsanto also respectfully requests that the Court reconsider and adjust, in whole or in part, its prior rulings on five of Plaintiffs' motions *in limine*:

- Plaintiffs' Motion *In Limine* No. 2 To Exclude New General Causation Experts And Opinions (ECF No. 2590);
- Plaintiffs' Motion *In Limine* No. 4 Re: Foreign Regulatory Decisions (ECF No. 2594);
- Plaintiffs' Motion *In Limine* No. 14: Re: Acquavella 7/22/1997 Memo (ECF No. 2494);
- Plaintiffs' Motion *In Limine* No. 15 Re: Dr. Parry's Second Evaluation (ECF No. ECF No. 2496); and
- Plaintiffs' Motion *In Limine* No. 16 Re: Re-Review of Knezevich & Hogan Study (ECF No. 2492).

Otherwise, Monsanto does not intend to relitigate the motions *in limine* from before the *Hardeman* trial, but preserves all arguments made in those motions (including, but not limited

1   to, the filings expressly mentioned below) and at subsequent hearings, and all objections to

2   any rulings adverse to Monsanto.  Monsanto submits no new motions *in limine* specific to this

3   matter at this time, but reserves the right to argue for reconsideration of all motions *in limine*

4   in light of additional rulings from this Court or the evidence presented at trial.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

# I.   MONSANTO'S MOTIONS *IN LIMINE*

### Monsanto's Motion *in Limine* No. 1 Re: IARC Classification During Phase 1 of Trial

## A. *Hardeman* Ruling

"Monsanto's motion in limine 1 to exclude IARC's classification is granted in part. The fact of the classification is admissible at both phases.  However, the Monograph itself will not be admitted as an exhibit.  During Phase 1, the expert witnesses may use the brief discussion of IARC's independent meta-analysis, *see* Dkt. No. 2610-11 at 30, but they may not use the portions of the Monograph that merely reflect review and analysis of other studies. The jury will also be instructed on how IARC's inquiry differs from the causation inquiry in a civil trial.

Particularly during Phase 1, discussion of the IARC classification will be restricted under Rule 403 to avoid wasting time or misleading the jury, as the primary inquiry is what the scientific studies show, not what IARC concluded they show.  Witnesses who participated in IARC may testify that they were members of the IARC Committee, and may further explain how that membership supports their credibility, but they must limit their scientific testimony to their own independent conclusions.  And, as discussed at the hearing, Dr. Jameson will not be permitted to testify as a fact witness during Phase 1.  The Court will revisit how the evidence surrounding IARC's classification may be used during Phase 2 of the trial."  Pretrial Order No. 81 at 1 (ECF No. 2775).

## B. Monsanto's Position

Monsanto renews its motion *in limine* to exclude evidence regarding the IARC classification during Phase 1 of trial.  Monsanto also submits that if evidence of the IARC classification is introduced in either phase, the Court should allow Monsanto to present the full picture of the conclusions reached by global regulatory agencies tasked with protecting public health, including their responses to the IARC classification, rather than giving the jury a partial picture that falsely suggests the regulatory evidence is in (or close to) equipoise.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     In addition to the arguments set forth below, Monsanto incorporates the following pleading and arguments made in support of the pleading throughout the *Hardeman* trial: Monsanto Company's Notice of Motion and Motion *in Limine* No. 1 Re: IARC Classification During Phase 1 of Trial (ECF No. 2610) (Stekloff Decl., Exhibit A).[1]  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.

> **1.  Evidence And Argument Regarding IARC's Classification Should Be Excluded From Phase 1 As Irrelevant, Confusing, And Unduly Prejudicial.**

    Monsanto maintains that references to the IARC classification and assessment should be excluded from Phase 1 of trial.  As Monsanto's prior briefing explains, IARC's assessment is akin to a literature review that adds no new scientific evidence for the jury to consider.  *See Huskey v. Ethicon, Inc.*, 848 F.3d 151, 161 (4th Cir. 2017) (upholding exclusion of FDA analysis that "simply opined on the work others had done").  Further, IARC's assessment of glyphosate (which did not involve consideration of all the science) does not mirror "what the jury needs to conduct when deciding whether glyphosate actually causes NHL in people at past or current exposure levels."  Pretrial Order No. 45: Summary Judgment And *Daubert* Motions at 12 (ECF No. 1596).  And the language IARC used ("probable carcinogen") suggests an unwarranted level of certainty, given that the language has "no quantitative significance."  *Id.* (quoting IARC Monograph 112 at 10); *see CTIA–The Wireless Ass'n v. City & Cty. of San Francisco*, 827 F. Supp. 2d 1054, 1063 (N.D. Cal. 2011) ("The uninitiated will tend to misunderstand [an IARC classification of carcinogenicity] as more dangerous than it really is."), *aff'd*, 494 F. App'x 752 (9th Cir. 2012).  For all these reasons, IARC's classification—even if admitted in limited form—serves only as a confusing and misleading distraction for the jury.  But it is a distraction presented as the analysis of an official body of the World Health Organization, giving Plaintiff's causation evidence "an aura of special reliability and trustworthiness which [is] not . . . commensurate with its actual reliability."  *See*

---

[1] To aid the Court's review, the parties' prior briefing on motions *in limine* that are re-raised in this submission are attached as exhibits in the order set forth in the attached declaration.

*City of New York v. Pullman*, 662 F.2d 910, 15 (2d Cir. 1981) (internal quotation marks omitted); *see also Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661,673 (5th Cir. 1999) (state environmental agency report "would have been unduly prejudicial due to its apparent official nature").

These dangers are enhanced by Plaintiffs' use of IARC at trial.  At *Hardeman*, even setting aside Plaintiff's counsel's repeated references to IARC in opening, each of Plaintiff's experts made reference to the IARC classification during their testimony in Phase 1.  *See Hardeman* 2/25/2019 Trial Tr. 490:2-11 (Dr. Ritz) (Stekloff Decl., Exhibit B); *Id.* at 3/5/2019 Trial. Tr. at 1108:23-1109:3 (Dr. Weisenburger) (Stekloff Decl., Exhibit C); As-Played Dr. Portier Designations at 26:6-27:17; 34:20-35:18 (Stekloff Decl., Exhibit D).  Plaintiff thus was able to buttress all of his experts' testimony with purported confirmation from an international organization.  And Monsanto was left with no good option on how to respond: It had to either leave IARC's analysis largely untouched (thus adding credibility to it), or attempt to cross-examine on the flaws with IARC (further emphasizing its importance).  Excluding IARC entirely from Phase 1 ensures that the focus of the trial remains on the science rather than sideshows.

### 2. If The Court Permits Plaintiffs To Introduce Evidence Of IARC's Classification, It Should Allow The Jury To Receive A Full Picture Of The Regulatory Agency Decisions.

At minimum, if the Court permits evidence of IARC to be admitted along similar lines as in *Hardeman*, it should not restrict Monsanto's ability to introduce evidence of regulatory assessments of glyphosate by governmental agencies tasked with protecting public health.

If evidence of IARC's classification is admitted during Phase 1, it is essential that Monsanto be allowed to provide the jury with the findings of regulatory agencies, both before and after IARC.  This evidence provides necessary context for the weight the jury should give to the purported "international" findings of IARC.  Permitting Monsanto to introduce evidence of EPA's conclusion about glyphosate does not cure the prejudice—if anything, it magnifies it by suggesting that the EPA stands athwart an international consensus (which in reality does

1    not exist).  Nor does it suffice to permit fleeting impeachment evidence about two European

2    agencies' responses to Dr. Portier's criticisms—that improperly buttresses Dr. Portier's

3    credibility (by putting him on par with expert regulators) and again does not give the jury the

4    full picture.  It is not cumulative to accurately describe the conclusions of each regulatory

5    agency to study the issue—including agencies outside Europe, in Australia, Canada, Germany,

6    Japan, and New Zealand—in responding to an international agency's assessment of

7    glyphosate.  The fact that regulatory reaffirmations of glyphosate's safety have "accumulated"

8    in response to IARC is precisely what renders that evidence crucial to demonstrate that

9    IARC's conclusion stands alone and is therefore entitled to little weight.  *See United States v.*

10   *Kizeart*, 102 F.3d 320, 325 (7th Cir. 1996) (testimony of third government witness on same

11   subject was "far from needless" because it further strengthened impeachment of defense

12   witness).  Monsanto should therefore be permitted to provide the jury with the findings of each

13   regulatory agency to have studied the issue—even if in a condensed fashion.

14          As to Phase 2, Monsanto respectfully submits that the Court should not condition

15   Monsanto's ability to provide the jury necessary context for IARC's conclusion on

16   Monsanto's agreeing to admit post-use corporate conduct that the Court properly excluded.

17   The fact that IARC's conclusion came out after Plaintiff's use is further reason to *exclude* it—

18   under California law, what matters is what was known or knowable at the time of plaintiff's

19   use.  *See* Defendant's Mot. for Sum. J. Re: Tier 1 Plaintiffs On Non-Causation Grounds at 24-

20   25 (ECF No. 2419).  Plaintiff is free to argue that the science available at the time of use

21   supported a warning, but she should not get to buttress that argument with something that

22   happened years later.  But if the Court permits Plaintiff to introduce evidence of IARC's

23   analysis in Phase 2, then it is again essential that Monsanto be able to give the jury the full

24   picture of what other regulators concluded in response.[2]  The point has particular force

25   because Plaintiff has indicated that she may attempt to introduce evidence of some of

26   _____

27   [2] This point is especially true for the panoply of international regulators who issued safety
     assessments that Plaintiffs have not even attempted to impugn through allegations regarding
     Monsanto's corporate conduct, such as regulators in Australia, Canada, Japan, South Korea,
28   and New Zealand.

Monsanto's conduct leading up to the IARC classification in her Phase 2 case, *see* 12/6/2019

Case Management Conference Tr. at 21:15-22:6 (Stekloff Decl., Exhibit E), in which case the

post-IARC regulatory findings provide critical context for how the jury should evaluate

Monsanto's conduct.  Adhering to the approach the Court used in *Hardeman* would

improperly allow Plaintiff to exploit one piece of the post-use record in a fundamentally

inaccurate way—by suggesting that IARC was the international community's last and final

word on the safety of glyphosate, and that only EPA and two European regulators disagreed.

For these reasons, it is essential that that Monsanto be allowed to provide the jury with the

findings of regulatory agencies.

## C.  Plaintiffs' Position

Instead of providing an argument that the facts of the *Stevick* case or a change in

controlling law dictate a different result for the *Stevick* trial, Monsanto simply rehashes the

same arguments already presented to the Court which were carefully considered and rejected.

For example compare the headings of Monsanto's current argument with those made in

its Motion in Limine No. 1:  (ECF 2610)

> 1.  Evidence and Argument Regarding IARC's Classification Should Be Excluded from Phase 1 As Irrelevant, Confusing and Unduly Prejudicial (Current)

> A.  The Court Should Exclude Evidence and Argument Regarding IARC's Classification from Phase 1 Because It Is Irrelevant, Confusing and a Distraction from the Science (ECF 2610)

> 2.  If the Court Permits Plaintiff to Introduce Evidence of IARC's Classification, It Should Allow The Jury to Receive a Full Picture of the Regulatory Agency Decisions (Current)

> B.  If the Court Permits Plaintiff to Introduce Evidence of IARC's Classification at Phase I, Several Precautionary Measures are Warranted to Avoid Undue Confusion and Distraction (ECF 2610)

1          These arguments were addressed in Plaintiffs' Opposition to Monsanto's Motion

2   in Limine No. 1 [ECF No. 2610-7] and Plaintiffs will not waste the Court's time by repeating

3   them here.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

**Monsanto's Motion *in Limine* No. 2 Re: "Ghostwriting"**

**A. *Hardeman* Ruling**

"Monsanto's motion in limine 2 to exclude references to ghostwriting is granted for Phase 1 but denied for Phase 2.  This evidence is not relevant (or, at best, is marginally relevant) to causation, so its admission during Phase 1 would be unduly prejudicial and would waste the jury's time.  During Phase 2, however, this evidence is far more relevant, and its admission would not be unduly prejudicial, particularly in light of the term's use by Monsanto employees."  Pretrial Order No. 81 at 1-2 (ECF No. 2775).

**B. Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 2 Re: "Ghostwriting" (ECF No. 2611) (Stekloff Decl., Exhibit F).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this evidence be excluded from Phase 1 as set forth in Pretrial Order No. 81 (ECF No. 2775).  Monsanto also preserves its objections to the Court's ruling on this motion regarding Phase 2 of trial.  For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

**C. Plaintiffs' Position**

The credibility of expert testimony is crucial during the first phase of this trial and one of Defendant's expert testimony themes is that IARC and Plaintiffs' experts did not consider as much data as the EPA, because the EPA considered proprietary data submitted by Monsanto.  Thus, the issue of whether or not Monsanto's experts are aware of and have taken into account the evidence of Monsanto ghostwriting scientific and other articles is crucial.

- 10 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Monsanto's Motion *in Limine* No. 3 Re: Monsanto Marketing Materials**

**A.  *Hardeman* Ruling**

"Monsanto's motion in limine 3 to exclude marketing materials is granted for both phases under Rule 401.  This ruling will be revisited if Monsanto opens the door during Phase 2 by arguing, for example, that the plaintiffs' non-Hodgkin's lymphoma could have been prevented by wearing protective gear.  This ruling will also be revisited prior to Stevick's trial, because she, unlike Hardeman or Gebeyehou, testified that she saw Roundup advertising." Pretrial Order No. 81 at 2 (ECF No. 2775).

**B.  Monsanto's Position**

Monsanto moves *in limine* to exclude evidence, testimony, or argument regarding marketing materials for Monsanto's products.  The Court granted Monsanto's prior request to exclude such evidence from both phases of trial as to Plaintiffs Hardeman and Gebeyehou, concluding that such evidence would not be relevant under Federal Rule of Evidence 401, but indicated that it would revisit this ruling prior to Mrs. Stevick's trial.  *See* Pretrial Order No. 81: Ruling on Motions in Limine (ECF No. 2775).  Monsanto incorporates and preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 3 Re: Monsanto Marketing Materials (ECF No. 2612) (Stekloff Decl., Exhibit G).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.

Monsanto requests that this evidence be excluded from trial along the same lines as in Pretrial Order No. 81 (ECF No. 2775).  The only potential distinction between this case and *Hardeman* and *Gebeyehou* is that Mrs. Stevick reported seeing one advertisement by Monsanto.  Accordingly, the Court should at minimum exclude all other advertising materials on the same grounds as its ruling in *Hardeman*.  But the Court should also exclude any evidence of the advertisement Mrs. Stevick claims to have seen.  Mrs. Stevick alleges her use of Roundup likely began in early 1989, Stevick Dep. 98:1–12 (Stekloff Decl., Exhibit H),

decades before she saw an advertisement in 2013 or 2014.  *Id.* at 59:23-60:16 (Stekloff Decl., Ex. H).  Because Mrs. Stevick began using Roundup long before ever seeing the advertisement, and dismissed it as "silly," *id.* at 62:17-63:8 (Stekloff Decl., Ex. H), "there is no conceivable causal connection between the representations or omissions that accompanied the [advertisement] and plaintiff's injury."  *See Ramirez v. Plough, Inc.*, 863 P.2d 167, 177 (Cal. 1993) (granting summary judgment where person administering drug failed to read or obtain a translation of the Spanish label).

### C.  Plaintiffs' Position

Mrs. Stevick testified that she saw roundup advertising.  Accordingly, Monsanto's advertising materials during her usage of Roundup (6/1989 – 11/2014) should be admissible in Phase II.  Mrs. Stevick testified that she recalled the Roundup applicator wearing shorts and a tee shirt with no gloves or other protective gear.  Id. 62:11-14 (Stekloff Decl., Ex. H).  This is relevant to failure to warn and conduct of Monsanto.

Further, advertisements promoting no risks associated with roundup are directly relevant to Plaintiffs' failure to warn claim.  Under California law, a manufacturer has a continuing duty to warn as long as the product is in use.  *Valentine v. Baxter Healthcare Corp.* 68 Cal.App.4[th] 1467, 1482 (1999).  Thus, under California law, these marketing materials are relevant to show that while Defendant knew of the various risks associated with Roundup, it deliberately produced and circulated throughout the community materials intended to cover up those dangers and deceive consumers.

1

**Monsanto's Motion *in Limine* No. 4 Re: Attorney Argument**

2

   **A. *Hardeman* Ruling**

3

   "4.1.  Monsanto's motion in limine 4.1 to exclude comparison to the tobacco industry

4

granted for both phases under Rule 401.  Even if this evidence were marginally relevant, it

5

would be excluded under Rule 403.

6

   4.2.  Monsanto's motion in limine 4.2 to exclude appeals to the jury regarding

7

Monsanto's wealth is granted for both phases, except to the extent it is either relevant to

8

punitive damages or necessary to rebut the suggestion that it would have been cost-prohibitive

9

for Monsanto to conduct certain studies.

10

   4.3.  Monsanto's motion in limine 4.3 to exclude references to the common good and

11

appeals to the jury to send Monsanto a message is granted for Phase 1 but denied for Phase 2.

12

While not relevant to causation, this line of argument is appropriate for punitive damages."

13

Pretrial Order No. 81 at 2 (ECF No. 2775).

14

   **B.  Monsanto's Position**

15

   Monsanto preserves the arguments made in the following pleading and attachments

16

that were filed on the MDL docket, as well as any subsequent arguments regarding the issues

17

therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 4 Re: Tobacco

18

Company References, Evidence of Economic Disparity, and Other Prejudicial Attorney

19

Argument (ECF No. 2614).  By incorporating by reference these prior filings, Monsanto is in

20

no way waiving any of the arguments or objections it has made elsewhere on this issue.

21

Monsanto requests that this evidence be excluded from Phases 1 and 2 as set forth in Pretrial

22

Order No. 81 (ECF No. 2775).  Monsanto also preserves its objections to the Court's partial

23

denial of this motion regarding Phase 2 of trial.  For purposes of this trial, however, Monsanto

24

has no additional objection to the application of the Court's prior ruling on this motion.

25

   **C.  Plaintiffs' Position**

26

   No additional argument.

27

28

### Monsanto's Motion *in Limine* No. 5 Re: Other Litigation, Other Products, And Company History

**A. *Hardeman* Ruling**

"5.1.  Monsanto's motion in limine 5.1 to exclude references to other pending litigation is granted for both phases, except to the extent necessary for the experts to answer questions about their compensation.  On that issue, the parties will make an effort to stipulate to how expert compensation will be addressed at trial.

5.2.  Monsanto's motion in limine 5.2 to exclude discussion of other Monsanto products is granted for both phases, without prejudice to the plaintiffs' making an offer of proof regarding a specific product that they believe is relevant to their design defect claim during Phase 2.

5.3.  Monsanto's motion in limine 5.3 to exclude evidence surrounding Bayer's acquisition of Monsanto is granted for both phases, except as necessary to explain Monsanto's financial condition during Phase 2."  Pretrial Order No. 81 at 2 (ECF No. 2775).

**B. Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 5 Re: Other Litigation, Other Products, And Company History (ECF No. 2615) (Stekloff Decl., Exhibit I). By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this evidence be excluded from Phases 1 and 2 as set forth in Pretrial Order No. 81 (ECF No. 2775).  Monsanto also preserves its objections to the Court's partial denial of this motion regarding Phase 2 of trial.   For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion, with one exception, and is amenable to stipulating to the amount of total compensation received by each expert to streamline cross-examination.

- 14 -

1    The one exception is that Monsanto respectfully requests that the Court reconsider its

2 prior ruling allowing evidence of Bayer's $63 billion acquisition of Monsanto to be presented

3 to the jury to explain Monsanto's financial condition during Phase 2.  *See* Pretrial Order No.

4 81: Ruling on Motions in Limine (ECF No. 2775).   Bayer's payment of $63 billion to acquire

5 Monsanto has no bearing on or relevant relationship to Monsanto's current financial condition.

6 The relevant question for punitive damages under California law is Monsanto's "ability to

7 pay."  *Boyle v. Lorimar Prods.,* 13 F.3d 1357, 1360-61 (9th Cir. 1994) (noting net worth is the

8 key variable because gross revenue does not indicate ability to pay); *see also Baxter v.*

9 *Peterson*, 150 Cal. App. 4th 673, 680 (2007) ("What is required is evidence of the defendant's

10 ability to pay the damage award.").  Monsanto's acquisition price several years ago does not

11 reflect its current net worth, which is the most common standard for measuring a defendant's

12 ability to pay.  Indeed, a number of appellate courts have concluded that a punitive damages

13 award is excessive if it is a disproportionate percentage of the defendant's net worth, and

14 introducing evidence of the $63 billion figure invites just such an award.  *See, e.g.*, *Michelson*

15 *v. Hamada*, 29 Cal. App. 4th 1566, 1596 (2d Dist. 1994); *Storage Servs. v. Oosterbaan*, 214

16 Cal. App. 3d 498, 516 (1st Dist. 1989); *Zhadan v. Downton Los Angeles Motor Distributors,*

17 *Inc.*, 100 Cal. App. 3d 821, 339 (2d Dist. 1979) ("[N]et worth at time of trial is the proper

18 measure" for punitive damages).  Even if it were relevant, which it is not, the value of such

19 evidence would be substantially outweighed by the danger of unfair prejudice and confusion.

20 Introduction of the acquisition figure as evidence of Monsanto's financial condition provides

21 jurors an inaccurate view of Monsanto's overall financial condition—improperly suggesting

22 the company is valued at $63 billion and can be punished up to that amount.  Such a

23 suggestion invites a potential punitive damage award that does not bear a reasonable

24 relationship to Monsanto's net worth or any compensatory damages awarded.  Such evidence

25 should therefore be excluded during Phase 2.

26

27

28

C. **Plaintiffs' Position**

The Court has already considered and rejected this argument.  Monsanto presents no new reason for the Court to change its ruling.

Monsanto is not restricted in its ability to introduce its own evidence to counter the undisputed fact that it was acquired for $63 Billion.

Plaintiffs do not agree to waive questions about the compensation of Monsanto's expert witnesses.

1

<b><u>Monsanto's Motion <i>in Limine</i> No. 6 Re: Public Relations</u></b>

2      **A.  <u>*Hardeman* Ruling</u>**

3        "Monsanto's motion in limine 6 to exclude evidence of the company's public-relations

4   activities is granted for Phase 1 but denied as overbroad for Phase 2.  Non-cumulative

5   evidence of Monsanto's public-relations activities relating to glyphosate will generally be

6   relevant and admissible during Phase 2.  If there is particular evidence that Monsanto

7   nonetheless believes should be excluded, it may bring a more targeted motion before the

8   beginning of Phase 2.  Conversely, evidence of public-relations activities by counsel for the

9   plaintiffs will likely never be admissible, but Monsanto may make an offer of a proof

10  regarding specific statements it believes are necessary to avoid misleading the jury."  Pretrial

11  Order No. 81 at 3 (ECF No. 2775).

12     **B.  <u>Monsanto's Position</u>**

13       Monsanto preserves the arguments made in the following pleading and attachments

14  that were filed on the MDL docket, as well as any subsequent arguments regarding the issues

15  therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 6 Re: Excluding

16  Evidence And Argument About The Parties' Public-Relations Activities (ECF No. 2616).  By

17  incorporating by reference these prior filings, Monsanto is in no way waiving any of the

18  arguments or objections it has made elsewhere on this issue.  Monsanto requests that this

19  evidence be excluded from Phase 1 as set forth in Pretrial Order No. 81 (ECF No. 2775).

20  Monsanto also preserves its objections to the Court's ruling on this motion regarding Phase 2

21  of trial.   For purposes of this trial, however, Monsanto has no additional objection to the

22  application of the Court's prior ruling on this motion.

23     **C.  <u>Plaintiffs' Position</u>**

24       No additional argument.

25

26

27

28

- 17 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Monsanto's Motion *in Limine* No. 7 Re: Post-Use Corporate Conduct

**A. *Hardeman* Ruling**

"Monsanto's motion in limine 7 to exclude evidence of company conduct that post-dates Plaintiff's use of Roundup is granted for both phases under Rules 401 and 403, subject to a limited exception for evidence of Monsanto's alleged efforts to influence the outcome of a study that Monsanto relies on at trial."  Pretrial Order No. 81 at 3 (ECF No. 2775).

**B. Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 7 Re: Post-Use Corporate Conduct (ECF No. 2617) (Stekloff Decl., Exhibit J).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this evidence be excluded as set forth in Pretrial Order No. 81 (ECF No. 2775).  Monsanto also preserves its objections to the Court's partial denial of this motion.   For purposes of this trial, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

**C. Plaintiffs' Position**

Company conduct post dating Elaine Stevick's use (6/1989 – 11/2014) should be admissible in Phase II.  A defendant's entire course of conduct may be considered for purposes of assessing punitive damage awards, including post-injury conduct.  (*PG&E v. Abi-Habib*, 24 Cal.App.5th, 1150, 1176 3d Dist. 2018).  "Though due process does not permit courts or juries, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis, this does not mean that the defendant's similar wrongful conduct toward others should not be considered in determining the amount of punitive damages. . . . '[T]o consider the defendant's entire course of conduct in setting or reviewing a punitive damages award, even in an individual plaintiff's lawsuit, is not to punish the defendant for its conduct toward others. An enhanced punishment

1   for recidivism does not directly punish the earlier offense; it is, rather, " ' "a stiffened penalty

2   for the last crime, which is considered to be an aggravated offense because a repetitive one." '

3   " . . . By placing the defendant's conduct on one occasion into the context of a business

4   practice or policy, an individual plaintiff can demonstrate that the conduct toward him or her

5   was more blameworthy and warrants a stronger penalty to deter continued or repeated conduct

6   of the same nature.' " (*Izell v. Union Carbide Corp.* (2014) 231 Cal.App.4th 962, 986, fn. 10

7   [180 Cal.Rptr.3d 382], internal citations omitted.).

8          The Izell Court approved  Plaintiff's argument that the jury award $1 million for every

9   year Defendant sold asbestos, even though Plaintiff was exposed to asbestos for only 8 of the

10   18 years in question.  Just as Monsanto is able to introduce post use conduct in an attempt to

11   mitigate punitive damages, Plaintiffs are entitled under California law to introduce evidence

12   that Monsanto continues to disregard the safety of Roundup users.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Monsanto's Motion *in Limine* No. 8 Re: Proposition 65

2

### A. *Hardeman* Ruling

3

"Monsanto's motion in limine 8 to exclude evidence surrounding Proposition 65 is

4 granted for both phases under Rule 403. Even if otherwise admissible, evidence of Monsanto's

5 response to Proposition 65 would be excluded as post-use conduct under Monsanto's motion

6 in limine 7."  Pretrial Order No. 81 at 3 (ECF No. 2775).

7

### B. Monsanto's Position

8

Monsanto preserves the arguments made in the following pleading and attachments

9 that were filed on the MDL docket, as well as any subsequent arguments regarding the issues

10 therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 8 Re: Proposition

11 65 (ECF No. 2618) (Stekloff Decl., Exhibit K).  By incorporating by reference these prior

12 filings, Monsanto is in no way waiving any of the arguments or objections it has made

13 elsewhere on this issue.  Monsanto requests that this evidence be excluded as set forth in

14 Pretrial Order No. 81 (ECF No. 2775).  For purposes of this trial, Monsanto has no additional

15 objection to the application of the Court's prior ruling on this motion.

16

### C. Plaintiffs' Position

17

Monsanto's response to Proposition 65 should not be excluded for the reasons stated in

18 response to Monsanto's Motion in Limine No. 7.

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Monsanto's Motion *in Limine* No. 9 Re: Adverse Event Reports**

**A.  *Hardeman* Ruling**

"Monsanto's motion in limine 9 to exclude evidence of adverse event reports is granted for both phases under Rules 401 and 403, without prejudice to the plaintiffs' making an offer of proof regarding a specific adverse event report that they believe is relevant to Phase 2." Pretrial Order No. 81 at 3 (ECF No. 2775).

**B.  Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 9 Re: Adverse Event Reports (ECF No. 2619).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue. Monsanto requests that this evidence be excluded from Phase 1 as set forth in Pretrial Order No. 81 (ECF No. 2775).  Monsanto also preserves its objections to the Court's ruling on this motion regarding Phase 2 of trial.  For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

**C.  Plaintiffs' Position**

No additional argument.

- 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Monsanto's Motion *in Limine* No. 10 Re: Seralini

**A.  *Hardeman* Ruling**

"Monsanto's motion in limine 10 to exclude discussion of the Seralini study is granted for both phases under Rule 403. Even if otherwise admissible, evidence of Monsanto's response to the Seralini study would be excluded with respect to Hardeman as post-use conduct under Monsanto's motion in limine 7."  Pretrial Order No. 81 at 3 (ECF No. 2775).

**B.  Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 10 Re: Introduction, Argument, Or Reference To The Seralini Study And Any Information Therein (ECF No. 2620) (Stekloff Decl., Exhibit L).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this evidence be excluded as set forth in Pretrial Order No. 81 (ECF No. 2775).  For purposes of this trial, Monsanto has no objection to the application of the Court's prior ruling on this motion.

**C.  Plaintiffs' Position**

Monsanto's response to the Seralini study should not be excluded for the reasons stated in response to Monsanto's Motion in Limine No. 7.

If the court decides not to include all post-use conduct, Seralini is still admissible because the conduct occurred during Mrs. Stevick's exposure until November 2014.  The Seralini evidence occurs between 2012-2013.

**Monsanto's Motion *in Limine* No. 11 Re:**
**Irrelevant And Unfairly Prejudicial Evidence**

**A.  *Hardeman* Ruling**

"11.1  Monsanto's motion in limine 11.1 to exclude "magic tumor" references is denied for both phases, but the parties are on notice that this type of argumentative description may not be used during opening statements.

11.2  Monsanto's motion in limine 11.2 to exclude discussion of studies conducted by IBT and/or Craven Laboratories is granted for Phase 1 and granted as unopposed with respect to Craven Laboratories for Phase 2.  By February 25, 2019, the plaintiffs will file a supplemental opposition to Monsanto's motion explaining precisely what evidence regarding IBT Laboratories they believe should be admitted during Phase 2. Monsanto's reply is due by March 4, 2019.

11.3  Monsanto's unopposed motion in limine 11.3 to exclude the Marion Copley letter is granted for both phases.

11.4  Monsanto's motion in limine 11.4 to exclude discussion of Monsanto-related publications such as *Whitewash* by Carey Gillam is granted for both phases, without prejudice to the plaintiffs' making an offer of proof as to a particular publication that they believe is relevant to Phase 2.

11.5  Monsanto's motion in limine 11.5 to exclude evidence of Roundup's other alleged health effects is granted for both phases under Rule 401 and, alternatively, Rule 403." Pretrial Order No. 81 at 3-4 (ECF No. 2775).

**B.  Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 11 Re: All Other Irrelevant And Unfairly Prejudicial Evidence (ECF No. 2621) (Stekloff Decl., Exhibit M).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this

1   evidence be excluded from Phase 1 as set forth in Pretrial Order No. 81 (ECF No. 2775).

2   Monsanto also preserves its objections to the Court's ruling on this motion regarding Phase 2

3   of trial.  For purposes of this trial, however, Monsanto has no additional objection to the

4   application of the Court's prior ruling on this motion.

5   **C.  Plaintiffs' Position**

6      Monsanto now makes it clear that it is relying on an "EPA" defense, particular the

7   Revised Glyphosate Issue Paper:  Evaluation of Carcinogenic Potential issued by the EPA in

8   2017.  However, despite Monsanto's acknowledgment that the original IBT approval study of

9   glyphosate was fraudulent, the EPA cited this study in this very paper.  Thus, it is crucial for

10  Plaintiff to be able to attack the credibility of the EPA paper by cross examining Defendant's

11  experts who will rely on this paper, with the fact that the paper relies on admittedly fraudulent

12  studies.  See p. 148, 155 and 156.

13  Burnett, P., Borders, J.; Kush, J. (1979) Report to Monsanto Company: Two Year Chronic Oral
14  Toxicity Study with CP- 76100 in Albino Rats: IBT No. 8560-08924. (Unpublished study
    received Jun 24, 1982 under 524-308; prepared by Industrial Bio-Test Laboratories, Inc.,
15  submitted by Monsanto Co., Washington, DC; CDL:247746-A; 247745; 247747; 247748;
16  247749; 247750; 247751; 247752)

17  Reyna, M.S. Gordon, D.E. (1973) 18-Month Carcinogenic Study with CP67573 in Swiss White
18  Mice: IBT No. B569. (Unpublished study, including sponsor's validation report dated Feb 1,
    1978, received Jun 21, 1978 under 524-308; prepared by Industrial Bio-Test Laboratories,
19  Inc.,
    submitted by Monsanto Co., Washington, D.C.; CDL:234136-G). MRID 00061113.
20  Unpublished.

21  Reyna, M.S. Richter, W.R. Gordon, D.E. (1974) Two- Year Chronic Oral Toxicity Study with
22  CP67573 in Albino Rats: IBT No. B564. MRID 00062507. Unpublished

23

24

25

26

27

28

**Monsanto's Motion *in Limine* No. 12 Re: Evidence
Of Glyphosate In Unrelated Sources**

**A.   *Hardeman* Ruling**

"Monsanto's unopposed motion in limine 12 to exclude evidence of glyphosate in food, breast milk, and other unrelated sources is granted for both phases."  Pretrial Order No. 81 at 4 (ECF No. 2775).

**B.   Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 12 Re: Evidence of Glyphosate In Breast Milk, Food, Or Other Unrelated Sources (ECF No. 2622) (Stekloff Decl., Exhibit N).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this evidence be excluded as set forth in Pretrial Order No. 81 (ECF No. 2775).  For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

**C.   Plaintiffs' Position**

Despite the Court's instruction that only Roundup's causation of Mr. Hardeman's cancer was relevant in Phase 1 of that trial, Monsanto's opening statement included statements concerning Roundup's effect on groundwater and soil "But two things that Roundup does not do is it does not enter the groundwater, so water that's contained in soil, and it does not stay in soil."  February 25, 2019 Opening Statement Stekloff p. 387:23-25 (Stekloff Decl., Ex. B).

1

2

### Monsanto's Motion *in Limine* No. 13 Re: Lobbying Activity And Generation Of Support For Registration of Glyphosate

3

#### A. *Hardeman* Ruling

4

5

6

"Monsanto's motion in limine 13 to exclude evidence of the company's lobbying activities is granted under Rule 401 and, alternatively, Rule 403 for Phase 1. The motion is denied for Phase 2, but the time spent on this evidence during Phase 2 will be restricted under Rule 403." Pretrial Order No. 81 at 4 (ECF No. 2775).

7

8

#### B. Monsanto's Position

9

10

11

12

13

14

15

16

17

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Notice of Motion and Motion *in Limine* No. 12 Re: Lobbying Activity And Generation Of Support For Registration of Glyphosate (ECF No. 2623) (Stekloff Decl., Exhibit O). By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue. Monsanto requests that this evidence be excluded from Phase 1 as set forth in Pretrial Order No. 81 (ECF No. 2775). Monsanto also preserves its objections to the Court's ruling on this motion regarding Phase 2 of trial. For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

18

19

20

21

In response to Plaintiffs' position and as set out in its initial motion on this issue, Monsanto respectfully submits that evidence regarding Monsanto's lobbying activities is entirely irrelevant and a prejudicial sideshow in Phase 1, and one that would chill constitutionally protected conduct if allowed to be introduced at trial.

22

#### C. Plaintiffs' Position

23

24

25

26

27

Plaintiffs have evidence of Monsanto's direct lobbying efforts, including Monsanto meeting with Donald Trump, conducting weekly meetings with the EPA, attempting to minimize the scope of review (such as not having the inquiry before the scientific review panel), all before the EPA issued its latest positions on glyphosate. Given that Monsanto's primary defense in this case is that the EPA, (the federal government), has not restricted

28

- 26 -

glyphosate based pesticides, Monsanto's lobbying efforts to influence these decisions is a central issue in this case and as probative as evidence can be.  If the Court allows EPA evidence in during Phase 1 then Plaintiff should be able to attack that evidence with Monsanto's directly relevant lobbying efforts.  If lobbying efforts are restricted, then the EPA evidence should also be excluded.

**Monsanto's Motion To Exclude Three Pieces of Evidence From Phase 1**
**(Monsanto's Motions *in Limine* Nos. 14-16)**

**A. *Hardeman* Ruling**

"Monsanto's motion in limine 14 to exclude from Phase 1 Dr. Farmer's November 29, 2001, email regarding the absence of glyphosate in the published abstract for the 2011 McDuffie study is granted.  The August 24, 2000, email from Dr. Acquavella regarding Monsanto's potential collaboration with Dr. McDuffie is also excluded from Phase 1. See Dkt. No. 2586.

Monsanto's unopposed motion in limine 15 to exclude from Phase 1 Dr. Goldstein's February 26, 2015, email regarding Monsanto's possible work with the American Council on Science and Health is granted. See Dkt. No. 2586.

Monsanto's motion in limine 16 to exclude from Phase 1 the August 6, 2015, email from Dr. Heydens addressing whether the Intertek Expert Panel should consider the effects of surfactants in the formulated product is granted under Rule 403.  Given the ambiguity in Dr. Heydens' statement regarding the 2010 George study and the tangential relevance of his comment to causation, it would waste time and be unduly prejudicial to allow the plaintiffs to introduce this evidence. See Dkt. No. 2586."  Pretrial Order No. 81 at 4-5 (ECF No. 2775).

**B. Monsanto's Position**

Consistent with the Court's guidance at the January 4, 2019 Case Management Conference, Monsanto submitted that three pieces of evidence should be excluded from Phase 1 of trial.  The pieces of evidence identified by Monsanto were a November 29, 2001 e-mail from Dr. Farmer regarding the published abstract for the 2001 McDuffie exploration epidemiological study (MONGLY00890492), a February 26, 2015 e-mail from Dr. Goldstein regarding the American Council on Science and Health (MONGLY02649473), and an August 2015 e-mail chain between Intertek employees and Monsanto employees regarding studies on the formulated product (MONGLY01183933).  Monsanto preserves the arguments made in its letter brief and attachments that were filed on the MDL docket on January 15, 2019 (ECF No. 2498), as well as any subsequent arguments regarding the issues therein.  By incorporating by

- 28 -

reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that these pieces of evidence be excluded from Phase 1 as set forth in Pretrial Order No. 67 (ECF No. 2586).  For purposes of this trial, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

**C.  <u>Plaintiffs' Position</u>**

No additional argument.

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.     PLAINTIFFS' MOTIONS *IN LIMINE***

**Plaintiffs' Motion *in Limine* No. 1 Re: Ecological Data**

**A.   *Hardeman* Ruling**

"Plaintiffs' motion in limine 1 to exclude discussion of ecological studies is denied. The plaintiffs' challenges to these studies go to their weight rather than their admissibility." Pretrial Order No. 81 at 5 (ECF No. 2775).

**B.   Plaintiffs' Position**

No additional argument.

**C.   Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Opposition to Plaintiffs' Motion *In Limine* No. 1 To Exclude Any Evidence Or Reference That Compares The Amount Of Roundup Use To NHL Incidence Over Time To Disprove Causation (ECF No. 2589).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  Monsanto requests that this motion be denied as set forth in Pretrial Order No. 81 (ECF No. 2775).  For purposes of this trial, Monsanto has no objection to the application of the Court's prior ruling on this motion.

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Plaintiffs' Motion *in Limine* No. 2 Re: New General Causation Experts

**A. *Hardeman* Ruling**

"Plaintiffs' motion in limine 2 to exclude new general causation experts is largely granted.  In October 2018, the Court stated, without objection, that only the experts whose opinions were put to the test at Phase 1 would be permitted to present opinions on general causation at trial.  See Dkt. No. 2121 at 41.  Yet in November 2018, Monsanto disclosed reports from specific causation experts that effectively included opinions on general causation – that is, that Roundup is simply not a risk factor for NHL.  These opinions are in large part excluded. Monsanto's experts may attack the decisions by the plaintiffs' experts to exclude other risk factors, such as hepatitis C.  They may also testify that, even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL given the strength of the risk factor and/or the presence of other risk factors.  But they may not offer an analysis of the epidemiological literature to support an opinion that Roundup is not a risk factor for NHL, because they offered no such analysis at Phase 1.  To the extent this creates challenges for Monsanto, it is in part a product of Monsanto's desire to bifurcate general and specific causation.  As discussed at the hearing, Monsanto may submit language that they believe allows their experts to provide a brief basis for their opinions on Roundup without wading into general causation; the plaintiffs will have a chance to respond before the Court rules."  Pretrial Order No. 81 at 5 (ECF No. 2775).

**B. Plaintiffs' Position**

The Court has considered and rejected Monsanto's argument to add new experts at least 3 times.

> You cannot add general causation experts.  If there is an emergency-type situation, if Loralei Mucci has a medical emergency or, you know, something like that, and you want to seek permission to sub somebody in to provide, you know, substantially the same testimony, I will entertain it.  I'm not saying I will grant it, but I will entertain it. But the basic answer is, no, I don't think it's appropriate, given everything we've been through already as a team, to be adding general causation experts.

Tr. of Proceedings at 41:8-18 (Oct. 29, 2018).

1    The Court also ruled as follows in PTO 81 (ECF 2775) 2/18/19, Ruling On Motions In

2    Limine, p. 5, paragraph 2,:

3            The plaintiffs' motion in limine 2 to exclude new general causation
             experts and opinions is largely granted.  In October 2018, the Court
4            stated, without objection, that only the experts whose opinions were
             put to the test at Phase 1 would be permitted to present opinions on
5            general causation at trial.  *See* Dkt. No. 2121 at 41.  Yet in November
             2018, Monsanto disclosed reports from specific causation experts
6            that effectively included opinions on general causation that is, that
             Roundup is simply not a risk factor for NHL.  These opinions are in
7            large part excluded.  Monsanto's experts may attack the decisions
             by the plaintiffs' experts to exclude other risk factors, such as
8            hepatitis C.  They may also testify that, even if Roundup were a risk
             factor, it nonetheless would not have caused a particular plaintiff's
9            NHL given the strength of the risk factor and/or the presence of
             other risk factors.  But they may not offer an analysis of the
10           epidemiological literature to support an opinion that Roundup is not
             a risk factor for NHL, because the offered no such analysis at Phase
11           1.

12

13    The Court then issued PTO 180 on October 7, 2019 that the "limitation [on general

14    causation experts called during the Daubert proceedings in 2017] was intended to apply only to

15    bellwether cases."

16            Monsanto's penchant for repeatedly asking the Court to reconsider issues that have

17    been fully briefed, argued and ruled upon should be rejected; especially when granting

18    Monsanto's request (now approximately a month away from trial) would prejudice the

19    Plaintiffs.

20    **C.** **Monsanto's Position**

21            Monsanto renews its opposition to Plaintiff's motion *in limine* to exclude new general

22    causation experts.  In addition to the arguments set forth below, Monsanto incorporates the

23    following pleading and attachments that were filed on the MDL docket, as well as any

24    subsequent arguments regarding the issues therein: Monsanto Company's Opposition to

25    Plaintiffs' Motion *In Limine* No. 2 To Exclude New General Causation Experts And Opinions

26    (ECF No. 2591) (Stekloff Decl., Exhibit P).  By incorporating by reference these prior filings,

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1    Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on

2    this issue.

3         For the reasons stated in the Joint Case Management Statement at 9-10 (*Stevick* ECF

4    No. 61) and on the record during the December 16, 2019, proceedings before this Court, *see*

5    12/16/2019 Hearing Tr. at 28:4-43:17, Monsanto believes the parties should be permitted to

6    add new general causation experts in this matter.  Specifically, Monsanto seeks to add Dr.

7    Beau Bruce, Dr. Glenn Millner, and Dr. David Vearrier as potential general causation experts.

8    These experts were disclosed in the Wave 1 MDL cases in October 2019, have served reports

9    and been deposed on their opinions in the Roundup litigation, and Plaintiffs have elected not to

10   challenge their methodology under *Daubert*.  Further, the science surrounding glyphosate has

11   developed further in the two-and-a-half-years since initial expert disclosures, and should not

12   be artificially excluded from trial.  Allowing these new experts to testify thus does not

13   prejudice Plaintiff in any way, and in fact furthers the purposes that bellwether trials are meant

14   to serve.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

**Plaintiffs' Motion *in Limine* No. 3 Re: Efficacy And Benefits Of Glyphosate**

**A. *Hardeman* Ruling**

"Plaintiffs' motion in limine 3 to exclude "feed-the-world" arguments is granted for both phases under Rule 401 and, alternatively, Rule 403.  This ruling does not preclude Monsanto from introducing limited background information on glyphosate."  Pretrial Order No. 81 at 5 (ECF No. 2775).

**B. Plaintiffs' Position**

No additional argument.

**C. Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Opposition to Plaintiffs' Motion *In Limine* No. 3 To Exclude Any Evidence And Testimony Regarding The Efficacy And Benefits Of Glyphosate (ECF No. 2593).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

1

**Plaintiffs' Motion *in Limine* No. 4 Re: Foreign Regulatory Decisions**

2

**A. *Hardeman* Ruling**

3

"Plaintiffs' motion in limine 4 to exclude decisions by foreign regulators is granted for

4

Phase 1, subject to the limited exception that Monsanto may briefly cross-examine Dr. Portier

5

on his efforts to convince European regulators to ban Roundup (in a way that reveals that his

6

efforts have thus far been unsuccessful). This limited exception is appropriate to allow

7

Monsanto to probe Dr. Portier's objectivity, and to allow Monsanto to counter any erroneous

8

assumption by jurors that glyphosate is banned in Europe. The motion is denied for Phase 2,

9

but Monsanto may only introduce evidence of regulatory decisions that were in effect at the

10

time the plaintiffs were using Roundup, and the amount of evidence that can be introduced

11

will be restricted under Rule 403 to avoid wasting time or misleading the jury." Pretrial Order

12

No. 81 at 5-6 (ECF No. 2775).

13

**B. Plaintiffs' Position**

14

No additional argument.

15

**C. Monsanto's Position**

16

Monsanto renews its opposition to Plaintiff's motion *in limine* to exclude evidence

17

regarding foreign regulatory decisions.  As detailed above in Monsanto's renewed motion *in*

18

*limine* to exclude evidence of the IARC classification at *supra* 4-8, which Monsanto

19

incorporates here, if evidence of the IARC classification is introduced in either phase, the

20

Court should allow Monsanto to present the full picture of the conclusions reached by global

21

regulatory agencies, including their responses to the IARC classification, rather than giving the

22

jury a partial picture that falsely suggests the regulatory evidence is in (or close to) equipoise.

23

In addition to the arguments set forth above, Monsanto incorporates the following

24

pleading and arguments made in support of the pleading throughout the *Hardeman* trial:

25

Monsanto Company's Opposition to Plaintiffs' Motion *In Limine* No. 4 Re: Foreign

26

Regulatory Decisions (ECF No. 2595) (Stekloff Decl., Exhibit Q).  By incorporating by

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1    reference these prior filings, Monsanto is in no way waiving any of the arguments or

2    objections it has made elsewhere on this issue.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

**Plaintiffs' Motion *in Limine* No. 5 Re: EPA Documents**

**A. *Hardeman* Ruling**

"Plaintiffs' motion in limine 5 to exclude certain EPA documents is granted in part for both phases. As with the IARC Monograph, the fact of EPA approval is admissible at both phases, but the documents themselves are not. Particularly during Phase 1, discussion of EPA approval will be restricted under Rule 403 to avoid wasting time or misleading the jury, because the primary inquiry is what the scientific studies show, not what the EPA concluded they show. The Court will revisit how evidence surrounding the EPA may be used during Phase 2." Pretrial Order No. 81 at 6 (ECF No. 2775).

**B. Plaintiffs' Position**

No additional argument.

**C. Monsanto's Position**

Monsanto preserves the arguments made in the following pleading and attachments that were filed on the MDL docket, as well as any subsequent arguments regarding the issues therein: Monsanto Company's Opposition to Plaintiffs' Motion *In Limine* No. 5 To Exclude Certain U.S. EPA Documents Relating To Glyphosate's Carcinogenicity (ECF No. 2597).  By incorporating by reference these prior filings, Monsanto is in no way waiving any of the arguments or objections it has made elsewhere on this issue.  For purposes of this trial, however, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

1

## Plaintiffs' Motion *in Limine* No. 6

2
### A.  *Hardeman* Ruling

3        "Plaintiffs' motion in limine 6 to exclude evidence of conduct linked to Hardeman's

4   hepatitis is granted for both phases in light of the agreement among the experts regarding the

5   time period when Hardeman likely contracted hepatitis."  Pretrial Order No. 81 at 6 (ECF No.

6   2775).

7
### B.  Plaintiffs' Position

8        Not relevant to Stevicks' claims.

9
### C.  Monsanto's Position

10        Monsanto agrees that Plaintiff's motion *in limine* No. 6 from *Hardeman* is not relevant

11   to Mrs. or Mr. Stevick's claims.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

**Plaintiffs' Motion *in Limine* No. 7 Re: Mr. Hardeman's Unrelated Medical History**

**A.  *Hardeman* Ruling**

"Plaintiffs' motion in limine 7 to exclude evidence of Hardeman's other medical conditions is denied as to basal cell carcinoma, but otherwise granted as unopposed. Evidence regarding basal cell carcinoma is not sufficiently prejudicial or confusing to warrant exclusion under Rule 403."  Pretrial Order No. 81 at 6 (ECF No. 2775).

**B.  Plaintiffs' Position**

Not relevant to Stevicks' claims.

**C.  Monsanto's Position**

Monsanto agrees that Plaintiff's motion *in limine* No. 7 from *Hardeman* is not relevant to Mrs. or Mr. Stevick's claims.

1    <u>**Plaintiffs' Motion *in Limine* No. 8 Re: Criminal And Arrest History**</u>

2    **A.   <u>*Hardeman* Ruling</u>**

3         "Plaintiffs' motion in limine 8 to exclude evidence of criminal history or prior "bad

4    acts" is granted as unopposed for both phases."  Pretrial Order No. 81 at 6 (ECF No. 2775).

5    **B.   <u>Plaintiffs' Position</u>**

6         No additional argument.

7    **C.   <u>Monsanto's Position</u>**

8         Monsanto continues not to oppose Plaintiff's motion *in limine* No. 8.  For purposes of

9    this trial, Monsanto has no additional objection to the application of the Court's prior ruling on

10   this motion.

1

**Plaintiffs' Motion *in Limine* No. 9 Re: Smoking**

2

**A.  *Hardeman* Ruling**

3

"Plaintiffs' motion in limine 9 to exclude evidence of smoking is granted as unopposed

4

for both phases."  Pretrial Order No. 81 at 6 (ECF No. 2775).

5

**B.  Plaintiffs' Position**

6

No additional argument.

7

**C.  Monsanto's Position**

8

Monsanto continues not to oppose Plaintiff's motion *in limine* No. 9.  For purposes of

9

this trial, Monsanto has no additional objection to the application of the Court's prior ruling on

10

this motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 41 -

**Plaintiffs' Motion *in Limine* No. 10 Re: Collateral Source Payments**

A.  <u>*Hardeman* Ruling</u>

"Plaintiffs' motion in limine 10 to exclude evidence of collateral source payments is granted as unopposed for both phases. See Dkt. No. 2613."  Pretrial Order No. 81 at 6 (ECF No. 2775).

B.  <u>Plaintiffs' Position</u>

No additional argument.

C.  <u>Monsanto's Position</u>

Monsanto continues not to oppose Plaintiff's motion *in limine* No. 10.  For purposes of this trial, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

1    **Plaintiffs' Motion *in Limine* No. 11 Re: Mr. Hardeman's Hepatitis C**

2    **A.  *Hardeman* Ruling**

3         "Plaintiffs' motion in limine 11 to exclude evidence surrounding how Hardeman

4    contracted hepatitis C is granted for both phases in light of the agreement among the experts

5    regarding when this likely occurred."  Pretrial Order No. 81 at 6 (ECF No. 2775).

6    **B.  Plaintiffs' Position**

7         Not relevant to Stevicks' claims.

8    **C.  Monsanto's Position**

9         Monsanto agrees that Plaintiff's motion *in limine* No. 11 from *Hardeman* is not relevant

10   to Mrs. or Mr. Stevick's claims

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1

**Plaintiffs' Motion *in Limine* No. 12 Re: Mr. Hardeman's Hepatitis B**

2

**A. *Hardeman* Ruling**

3

"Plaintiffs' motion in limine 12 to exclude evidence surrounding Hardeman's exposure

4

to hepatitis B is granted for both phases in light of the agreement among the experts regarding

5

when this likely occurred."  Pretrial Order No. 81 at 7 (ECF No. 2775).

6

**B.  Plaintiffs' Position**

7

Not relevant to Stevicks' claims.

8

**C.  Monsanto's Position**

9

Monsanto agrees that Plaintiff's motion *in limine* No. 12 from *Hardeman* is not relevant

10

to Mrs. or Mr. Stevick's claims

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

**Plaintiffs' Motion *in Limine* No. 13 Re: Attorney Retention And Advertising**

**A. *Hardeman* Ruling**

"Plaintiffs' motion in limine 13 to exclude evidence about attorney retention or attorney advertising is granted as unopposed for both phases."  Pretrial Order No. 81 at 7 (ECF No. 2775).

**B.  Plaintiffs' Position**

No additional argument.

**C.  Monsanto's Position**

Monsanto continues not to oppose Plaintiff's motion *in limine* No. 13.  For purposes of this trial, Monsanto has no additional objection to the application of the Court's prior ruling on this motion.

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

1

**Plaintiffs' Motion *in Limine* No. 14: Acquavella 7/22/97 Memo**

2

**A. *Hardeman* Ruling**

3

"Plaintiffs' motion in limine 14 to introduce during Phase 1 Dr. Acquavella's July 22,

4

1997, memo criticizing the Agricultural Health Study is granted for the purpose of impeaching

5

any Monsanto experts who rely on the AHS at trial.  Pretrial Order No. 67 at 1 (ECF No.

6

2586)."  Pretrial Order No. 81 at 7 (ECF No. 2775).

7

**B. Plaintiffs' Position**

8

No additional argument.

9

**C. Monsanto's Position**

10

Monsanto renews its opposition to Plaintiff's motion *in limine* to introduce Dr.

11

Acquavella's July 22, 1997, memorandum during Phase 1 of trial, including for the purpose of

12

impeaching Monsanto experts who rely on the AHS at trial.  Monsanto respectfully submits

13

that the Court's admission of evidence regarding Dr. Acquavella's memorandum in Phase 1 of

14

the *Hardeman* trial was unduly prejudicial and that a different approach is warranted in this

15

trial.

16

The Court has repeatedly emphasized that the focus of Phase 1 should be on what the

17

science actually shows as to the association (or lack thereof) between the use of glyphosate

18

and development of NHL.  As a general matter, the Court has precluded the admission of

19

third-party assessments of scientific studies, including from expert regulators.  There is no

20

reason to depart course for the Acquavella memo.  Indeed, a Monsanto scientist's views of the

21

AHS *before* it was completed have less bearing on the validity or weight of the subsequently

22

published study than the views of expert regulators evaluating the study *after* its publication.

23

And exclusion of the evidence does not unfairly prejudice Plaintiffs, as their experts will

24

continue to be able to provide the jury with their views of the weaknesses of the AHS.  At

25

minimum, if the Court permits this evidence to be introduced in Phase 1, it should also permit

26

Monsanto to introduce evidence of Monsanto's post-publication evaluation of the AHS and

27

why it has not chosen to conduct its own epidemiological study in light of the AHS's

28

- 46 -

1    existence.  Without this evidence, the jury would be left with a one-sided, inaccurate

2    representation of Monsanto's views.

3          In addition to the arguments set forth above, Monsanto preserves the arguments made

4    in the following pleading and attachments that were filed on the MDL docket, as well as any

5    subsequent arguments regarding the issues therein: Plaintiff's Letter Brief On Issues To Be

6    Used During The Causation Phase Of Trial -  Plaintiff's Issue Two (ECF No. 2494) (Stekloff

7    Decl., Exhibit R).  By incorporating by reference these prior filings, Monsanto is in no way

8    waiving any of the arguments or objections it has made elsewhere on this issue.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Plaintiffs' Motion _in Limine_ No. 15 Re: Dr Parry's Second Evaluation**

2

**A. _Hardeman_ Ruling**

3      "Plaintiffs' motion in limine 15 to introduce Dr. Parry's second evaluation of the

4    genotoxicity of glyphosate, which concluded that glyphosate is potentially genotoxic, is denied

5    for Phase 1 under Rule 403.  While the studies underlying Dr. Parry's evaluation are

6    admissible, Dr. Parry's review, and his communications with Monsanto surrounding that

7    review, are likely to confuse the issues and waste time.  However, if Monsanto presents expert

8    testimony on the genotoxicity of glyphosate, or otherwise opens the door through cross-

9    examination on, for example, the EPA's conclusions about the genotoxicity of glyphosate,

10   then this evaluation could become admissible on redirect."  Pretrial Order No. 81 at 7 (ECF

11   No. 2775).

12

**B. Plaintiffs' Position**

13      No additional argument.

14

**C. Monsanto's Position**

15      Monsanto renews its opposition to Plaintiff's motion _in limine_ to introduce Dr. Parry's

16   second evaluation of the genotoxicity of glyphosate during Phase 1 of trial, including its

17   introduction as rebuttal evidence to expert testimony or regulatory conclusions regarding the

18   genotoxicity of glyphosate.  Monsanto respectfully submits that the Court's admission of

19   evidence regarding Dr. Parry in Phase 1 of the _Hardeman_ trial was unduly prejudicial and that

20   a different approach is warranted in this trial.

21      As a threshold matter, Monsanto's decision to present evidence on genotoxicity should

22   not open the door to what was essentially a limited literature review by Dr. Parry.  In ordering

23   reverse bifurcation, the Court concluded that the focus of Phase 1 should be on the studies and

24   science surrounding glyphosate.  To the extent regulatory assessments of all the available

25   evidence regarding glyphosate continue to be excluded during Phase 1, _see supra_ at 35-36,

26   there is no basis for introducing a less rigorous assessment of genotoxicity by a third party

27

28

- 48 -

1   particularly when that third party recanted his earlier concerns after reviewing more of the

2   evidence.

3          At minimum, if the Court permits this evidence to be introduced in Phase 1 along

4   similar lines as in the *Hardeman* trial, it should also permit Monsanto to introduce evidence of

5   Monsanto's genotoxicity testing after Dr. Parry made his recommendations.  Monsanto's

6   testing is plainly admissible as primary evidence of causation, and it is essential that the jury

7   see the whole picture.

8          In addition to the arguments set forth above, Monsanto incorporates the following

9   pleading and arguments made in support of the pleading throughout the *Hardeman* trial:

10  Plaintiff's Letter Brief On Issues To Be Used During The Causation Phase Of Trial -

11  Plaintiff's Issue Three (ECF No. 2496) (Stekloff Decl., Exhibit S).  By incorporating by

12  reference these prior filings, Monsanto is in no way waiving any of the arguments or

13  objections it has made elsewhere on this issue.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Plaintiffs' Motion *in Limine* No. 16 Re: Knezevich & Hogan Study**

2

**A. *Hardeman* Ruling**

3

"Plaintiffs' motion in limine 16 to present evidence during Phase 1 surrounding the re-

4

review of the 1983 Knezevich & Hogan mouse study – including Monsanto's role in pushing

5

for a reevaluation of the tumor slides based on its concern about the regulatory consequences

6

of that study – is granted.  It appears that the plaintiffs will be able to convey this information

7

(through evidence, stipulation, or some combination of the two) without introducing the

8

February 22, 1985, memo from Lyle Gingerich or other similar internal documents, which are

9

likely to waste time and distract the jury under Rule 403.  The parties are ordered to confer

10

about this before the start of trial.  If the plaintiffs are unable to convey the relevant

11

information without such documents, the Court will reevaluate whether they may be

12

introduced."  Pretrial Order No. 81 at 7 (ECF No. 2775).

13

**B. Plaintiffs' Position**

14

No additional argument.

15

**C. Monsanto's Position**

16

Monsanto renews its opposition to Plaintiff's motion *in limine* to introduce evidence

17

surrounding the re-review of the 1983 Knezevich & Hogan mouse study in Phase 1.  The

18

presentation of this evidence during the *Hardeman* trial resulted in the jury's receiving a

19

skewed perspective of the EPA's evaluations of glyphosate and provided an opportunity for

20

Plaintiff to turn Phase 1 into a referendum on Monsanto's corporate conduct rather than the

21

science surrounding glyphosate.

22

It would be one thing if the only evidence admitted was the Knezevich & Hogan study

23

itself, Dr. Kushner's re-analysis of the slides, and proof that Dr. Kushner had been retained by

24

Monsanto—all of which is scientific evidence potentially relevant to causation that could be

25

discussed by the experts.  But that is not what happened.  The Court precluded Monsanto from

26

doing much more than mentioning the fact of EPA approval, but then allowed Plaintiff not

27

only to present extensive evidence that the EPA's approval was based on alleged political

28

1   manipulation by Monsanto, but also argue about alleged corporate misconduct and failures to

2   test by Monsanto in closing.  *See* As-Played Reeves Designations at 6-28, 35-40 (Stekloff

3   Decl., Exhibit T); *Hardeman* Trial Tr. 1991:8-1995:7 (Stekloff Decl., Exhibit U) (Plaintiff's

4   closing statement detailing the Knezevich & Hogan evidence, including statements that

5   "Monsanto met with the EPA to see what they could do . . . You can see that the meeting was

6   relaxed, informal and open"; a Monsanto employee wrote "Short of finding a new study or

7   finding tumors in the control groups, what can we do to get this thing off Category C";

8   Monsanto hired Dr. Kuschner "in an effort to persuade the agency"; Dr. Kuschner had

9   "predetermined results" and "he found a magic tumor. A tumor magically appeared in the

10   control group"; and the EPA agreed the data was not sufficient and "asked Monsanto to redo

11   the study. That study has never been redone."); Plaintiff's Letter Brief re: Closing Slides, Ex.

12   1, ECF No. 4011-1, at 36-60 (Stekloff Decl., Exhibit V) (slides detailing the Knezevich &

13   Hogan evidence and concluding with EPA's request for an additional study).  That left the jury

14   with the misimpression that Dr. Kuschner's review was and has always been the linchpin of

15   the EPA's approval of glyphosate, and that the EPA's approval was premised on alleged

16   pressure by Monsanto—notwithstanding the fact that the EPA has repeatedly reviewed

17   numerous studies regarding glyphosate, across multiple administrations, and come to the

18   conclusion that it is safe.  To avoid unfairly skewing and biasing the jury's evaluation of the

19   carcinogenicity of glyphosate, if the Court again restricts evidence regarding the EPA's

20   approval during Phase 1, then it should also preclude Plaintiffs from introducing evidence of

21   Monsanto's communications with EPA, and the EPA's internal communications, regarding the

22   Knezevich & Hogan study.

23       If the Court instead permits this evidence to be admitted during the *Stevick* trial, the

24   Court should allow Monsanto to complete the narrative by introducing evidence of the EPA's

25   subsequent analyses of the science surrounding glyphosate during the periods of Ms. Stevick's

26   use, the animal tests conducted by Monsanto and other registrants in the decades following

27   Knezevich and Hogan, and the rationales for Monsanto's decisions to conduct or not conduct

28

1    specific additional animal tests.  Introduction of this rebuttal evidence is necessary to ensure

2    the jury is not left with the mistaken and prejudicial impressions that no additional animal tests

3    were conducted on glyphosate, and that Dr. Kushner's re-review is the sole reed supporting

4    decades of EPA approval.

5        In addition to the arguments set forth above, Monsanto incorporates the following

6    pleading and arguments made in support of the pleading throughout the *Hardeman* trial:

7    Plaintiff's Letter Brief On Issues To Be Used During The Causation Phase Of Trial -

8    Plaintiff's Issue One (ECF No. 2492) ) (Stekloff Decl., Exhibit W).  By incorporating by

9    reference these prior filings, Monsanto is in no way waiving any of the arguments or

10   objections it has made elsewhere on this issue.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC

Dated: January 20, 2020

By:   */s/ Brian L. Stekloff*
      Brian L. Stekloff (pro hac vice)
      Rakesh Kilaru (pro hac vice)
      WILKINSON WALSH LLP
      2001 M St. NW, 10th Floor
      Washington, DC 20036
      Tel:   202-847-4030
      Fax:  202-847-4005
      bstekloff@wilkinsonwalsh.com
      rkilaru@wilkinsonwalsh.com

      *Attorneys for Defendant Monsanto Company*


Dated: January 20, 2020

By:   */s/ Brian K. Brake*
      Brian K. Brake, Esq. (pro hac vice)
      The Miller Firm LLC
      108 Railroad Avenue
      Orange, VA 22960
      Phone:  540-672-4224
      Fax:  540-672-3055
      bbrake@millerfirmllc.com

      *Attorneys for Plaintiffs*

JOINT STATEMENT RE: APPLICABILITY OF PRIOR RULINGS ON MOTIONS *IN LIMINE*
3:16-md-02741-VC & 3:16-cv-2341-VC