# EXHIBIT A

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:   (202) 847-4030
Fax:   (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) ) **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 RE: IARC CLASSIFICATION DURING PHASE 1 OF TRIAL** |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC *Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC *Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | |

- 1 -
MONSANTO'S MOTION *IN LIMINE* NO. 1 RE: IARC CLASSIFICATION AND REGULATORY EVIDENCE
3:16-md-02741-VC

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE THAT** in Courtroom 4 of the United States District Court,

3  Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA

4  94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will and

5  hereby does move the Court to preclude evidence regarding the IARC classification during

6  Phase 1 of trial.

8  DATED:  January 30, 2019

9  　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

10  　　　　　　　　　　　　　　　　　　　　/s/ *Brian L. Stekloff*_____

11  　　　　　　　　　　　　　　　　　　　　Brian L. Stekloff (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　(bstekloff@wilkinsonwalsh.com)
12  　　　　　　　　　　　　　　　　　　　　Rakesh Kilaru (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　(rkilaru@wilkinsonwalsh.com)
13  　　　　　　　　　　　　　　　　　　　　WILKINSON WALSH + ESKOVITZ LLP
　　　　　　　　　　　　　　　　　　　　2001 M St. NW, 10th Floor
14  　　　　　　　　　　　　　　　　　　　　Washington, DC 20036
15  　　　　　　　　　　　　　　　　　　　　Tel: (202) 847-4030
　　　　　　　　　　　　　　　　　　　　Fax: (202) 847-4005
16

17  　　　　　　　　　　　　　　　　　　　　Pamela Yates (CA Bar No. 137440)
　　　　　　　　　　　　　　　　　　　　(Pamela.Yates@arnoldporter.com)
18  　　　　　　　　　　　　　　　　　　　　ARNOLD & PORTER KAYE SCHOLER
19  　　　　　　　　　　　　　　　　　　　　777 South Figueroa St., 44th Floor
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90017
20  　　　　　　　　　　　　　　　　　　　　Tel: (213) 243-4178
　　　　　　　　　　　　　　　　　　　　Fax: (213) 243-4199
21

22  　　　　　　　　　　　　　　　　　　　　Eric G. Lasker (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　(elasker@hollingsworthllp.com)
23  　　　　　　　　　　　　　　　　　　　　HOLLINGSWORTH LLP
　　　　　　　　　　　　　　　　　　　　1350 I St. NW
24  　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
25  　　　　　　　　　　　　　　　　　　　　Tel: (202) 898-5843
　　　　　　　　　　　　　　　　　　　　Fax: (202) 682-1639
26  　　　　　　　　　　　　　　　　　　　　Michael X. Imbroscio (*pro hac vice*)
27  　　　　　　　　　　　　　　　　　　　　(mimbroscio@cov.com)
　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
28

- 2 -
MONSANTO'S MOTION *IN LIMINE* NO. 1 RE: IARC CLASSIFICATION AND REGULATORY EVIDENCE
3:16-md-02741-VC

One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In ordering reverse bifurcation, the Court reserved final judgment on whether jurors would, "during the causation phase, need to receive at least some limited information about the IARC classification through expert testimony (albeit with an appropriate instruction about its limited utility in this context)." PTO 61 at 1-2. Defendants respectfully submit that references to the IARC classification should be excluded. IARC's classification is irrelevant to Phase 1, because IARC reviewed only part of the scientific evidence, and produced only a hazard assessment that does not help answer the causation questions before the jury. *See* PTO 45 at 12. Moreover, admitting evidence of IARC's classification could confuse and distract the jury. If the jury hears that IARC reviewed scientific evidence regarding glyphosate, it might be tempted to substitute IARC's incomplete analysis and inapposite conclusions for its own independent assessment of the complete scientific evidence. Further, if IARC's assessment is admitted, basic principles of fairness and completeness would compel the admission of the worldwide regulatory consensus that glyphosate is safe. But admitting all this evidence would unavoidably turn Phase 1 into a referendum on what these various third parties have said about the science—which runs directly counter to the jury's charge to make its *own* assessment of the science.

Accordingly, the Court should exclude any evidence and argument regarding IARC's classification from Phase 1 of trial. But if the Court is inclined to admit IARC's classification, it should also permit Defendants to admit evidence of the multitude of worldwide regulators who have approved glyphosate for use both before and after IARC published its monograph. And if any of this evidence is admitted in Phase 1, it should be appropriately limited through restrictions on the frequency with which the parties can introduce it, and a firm instruction to the jury not to substitute other entities' conclusions for its own independent evaluation of the science regarding causation.

## II. ARGUMENT

### A. The Court Should Exclude Evidence and Argument Regarding IARC's Classification from Phase 1 Because It Is Irrelevant, Confusing, and a Distraction from the Science

This Court has made clear that Phase 1 of trial "is about what the science actually shows" regarding whether glyphosate generally can cause cancer in humans, and whether it caused the specific Plaintiff's cancer. 1/4/19 MDL CMC Tr. 21:15-17 (Ex. 1). IARC's classification should be excluded because it does not help the jury answer either of those questions, and could instead serve to confuse and distract the jury.

As the Court has already explained, IARC's carcinogenicity assessment does not bear on the issue of causation. IARC reviewed a subset of studies done by other scientists in the process of conducting a hazard assessment. And "[a] 'hazard assessment,' as IARC and other public health bodies define that inquiry, is *not what the jury needs to conduct* when deciding whether glyphosate actually causes NHL in people at past or current exposure levels." PTO 45 at 12 (emphasis added). Rather, it is just "the first step" in determining whether a substance actually "result[s] in an increased risk of cancer." *Frequently Asked Questions*, World Health Organization (May 27, 2016), https://www.who.int/foodsafety/faq/en/. Under IARC's analysis, "[a] substance could be cause for concern, such that it can and should trigger preventive public health measures and further study, even when it is not so clearly dangerous as to allow a verdict in favor of a plaintiff." PTO 45 at 2. Because IARC's assessment is of a materially different character than what the jury is being asked to decide, it is irrelevant to Phase 1.

Admitting IARC's conclusions would also run the risk of the jury's substituting another body's incomplete evaluations of the science for its own. The jury's task in Phase 1 is to consider all the available scientific evidence, including the body of "independent studies done" on glyphosate and Roundup, in addressing causation. 1/4/19 MDL CMC Tr. 25:23-24 (Ex. 1). If the jury hears that a public health body has reviewed the science and reached conclusions about carcinogenicity, it may feel compelled to defer to IARC's determination—even though

the question IARC addressed was different. That outcome would be problematic under any circumstances, but it is especially so here given that it is undisputed that IARC did not rest its decision on the full body of available scientific evidence. For example, the parties agree that IARC did not consider (among other things), the 2018 analysis of the Agricultural Health Study ("AHS")—the largest, longest, and most comprehensive epidemiological study of glyphosate—published in the Journal of the National Cancer Institute. To be sure, Defendants could highlight this flaw in IARC's evaluation during the course of cross-examinations, but having the jury consider all the science on its own, free of such distractions, is the better course. Otherwise, the trial would quickly become a dispute as to whether IARC did or did not look at all of the evidence—decidedly not the question the jury needs to answer.

Indeed, allowing Plaintiffs to introduce evidence of IARC's classification would change the jury's focus from what the scientific studies say to what various regulatory agencies and public bodies have said about the science. As the Court knows, IARC is not the only body that has reviewed scientific evidence and reached conclusions about glyphosate's carcinogenicity. Regulators worldwide have also reviewed the science (fully, rather than partially) and uniformly concluded that glyphosate is non-carcinogenic, both before and in response to the IARC monograph. Indeed, just in the past month, two major health authorities have rejected IARC's conclusion and reaffirmed their views that Roundup has not been shown to be carcinogenic. First, Health Canada last week reaffirmed its non-carcinogenic conclusion in the wake of IARC's determination: Allegations of glyphosate's carcinogenicity "could not be scientifically supported when considering the entire body of relevant data."[1] Likewise, in December, the U.S. Environmental Protection Agency Office of Pesticide Programs ("OPP"), describing its

---

[1] *Statement from Health Canada on Glyphosate*, Health Canada (Jan. 11, 2019), https://www.canada.ca/en/health-canada/news/2019/01/statement-from-health-canada-on-glyphosate.html (Ex. 2) (describing the regulator's finding that objections raised to its 2017 re-evaluation decision that glyphosate was non-carcinogenic "did not create doubt or concern regarding the scientific basis for the 2017 re-evaluation decision for glyphosate" and reiterating that "[n]o pesticide regulatory authority in the world currently considers glyphosate to be a cancer risk to humans at the levels at which humans are currently exposed").

independent reevaluation of its glyphosate risk assessment, with more than two dozen staff members across more than ten disciplines, reiterated "confiden[ce] in its conclusion that glyphosate is not likely to be carcinogenic to humans."[2]

Basic principles of fairness and completeness dictate that these regulators' conclusions should also be admissible if IARC's assessment is admitted, lest the jury have an incomplete picture of what third-party reviews of the science have shown. But introducing all this evidence would unavoidably distract the jury from the science itself, which should be the main event at Phase 1. In sum, IARC's assessment is irrelevant and potentially confusing to the jury, and introducing a whole swath of third-party evaluations of the science would be an unnecessary sideshow. The Court should therefore exclude IARC's classification from Phase 1.

### B. If the Court Permits Plaintiffs to Introduce Evidence of IARC's Classification at Phase 1, Several Precautionary Measures Are Warranted to Avoid Undue Confusion and Distraction.

If the Court does allow Plaintiffs a limited opportunity to introduce IARC's assessment over Monsanto's objection, Defendants submit that at an absolute minimum it should take the following precautionary measures to attempt to minimize the risk of an unfair and misleading presentation of the evidence, and to appropriately focus the jury on the proper scope of Phase 1.

*First*, and for the reasons described above, the Court should permit Monsanto to introduce comparable evidence of both domestic and international evaluations and approvals of glyphosate by regulatory bodies. That evidence is necessary to put IARC's limited conclusions into context and avoid the improper and misleading suggestion that glyphosate has been deemed unsafe by the only body to evaluate it. Admission of the latest regulatory assessments would demonstrate that IARC's conclusions have been thoroughly reviewed (and rejected) by the leading health

---

[2] Letter from Richard P. Keigwin, Director, U.S. EPA Office of Pesticide Programs, to Jane Thompson, Committee Secretary, Australian Senate Standing Committee on Rural and Regional Affairs and Transport (Dec. 21, 2018) (Ex. 3). As Mr. Keigwin points out in his letter, EPA's "conclusion is consistent with other countries and regulatory authorities including the Canadian Pest Management Regulatory Agency, Australian Pesticide and Veterinary Medicines Authority, European Food Safety Authority, the European Chemicals Agency, German Federal Institute for Occupational Safety and Health, The Joint FAO/WHO Meeting on Pesticide Residues, the New Zealand Environmental Protection Authority, and Food Safety Commission of Japan." *Id.* at 5.

authorities, thus avoiding the improper suggestion, addressed in a companion MIL, that the jury has a public health duty to send a message to Monsanto to get in line with IARC's conclusion.

*Second*, consistent with the Court's instincts in ordering bifurcation, the volume of evidence and testimony regarding IARC and regulators should be limited.  *See* PTO 61 at 1-2. All of Plaintiffs' Phase causation experts have relied on the IARC monograph in their reports. But allowing witness after witness to repeat IARC's findings would bring undue focus to evidence that is not properly the focus of Phase 1.[3]  Witnesses should be instructed to make limited mention of IARC (if at all) only to the extent it is relevant to a scientific evaluation of causation.  Defendants are of course willing to abide by similar restrictions on the regulatory evidence.

*Third*, as the Court has indicated, *see* PTO 61 at 1-2, a limiting instruction would be warranted to make clear the IARC classification's "limited utility in this context." PTO 61 at 2. Monsanto submits that the following language would be appropriate:

> Regulatory agencies and other health organizations have reviewed science surrounding glyphosate and reached conclusions about it.  These evaluations are not a substitute for your own review of the scientific evidence.  They do not answer the question before you, which is whether the Plaintiff's use of Roundup caused his non-Hodgkin's lymphoma.

The foregoing steps will help mitigate some of the confusion and prejudice inherent in admitting evidence of IARC's inapposite and incomplete assessment.  But again, as noted above, Defendants respectfully submit that the better approach is to exclude that assessment in its entirety, to ensure that Phase 1 is about the science, not sideshows.

## III.  CONCLUSION

Monsanto respectfully requests that the Court preclude evidence and argument regarding IARC's classification of glyphosate during Phase 1.

---

[3] It should be beyond dispute that discussions of Monsanto's responses to IARC have no place in the causation phase of trial.  Evidence of company conduct is relevant only to Phase 2.  *See, e.g.*, 1/4/19 MDL CMC Tr. at 21:15-17 (Ex. 1) ("[T]he question is whether it causes cancer, not whether – not Farmer's opinion on what Monsanto can say or not say.  It is about what the science actually shows.").

DATED: January 30, 2019

        Respectfully submitted,

        /s/ *Brian L. Stekloff*_____

        Brian L. Stekloff (*pro hac vice*)
        (bstekloff@wilkinsonwalsh.com)
        Rakesh Kilaru (*pro hac vice*)
        (rkilaru@wilkinsonwalsh.com)
        WILKINSON WALSH + ESKOVITZ LLP
        2001 M St. NW, 10th Floor
        Washington, DC 20036
        Tel: (202) 847-4030
        Fax: (202) 847-4005

        Pamela Yates (CA Bar No. 137440)
        (Pamela.Yates@arnoldporter.com)
        ARNOLD & PORTER KAYE SCHOLER
        777 South Figueroa St., 44th Floor
        Los Angeles, CA 90017
        Tel: (213) 243-4178
        Fax: (213) 243-4199

        Eric G. Lasker (*pro hac vice*)
        (elasker@hollingsworthllp.com)
        HOLLINGSWORTH LLP
        1350 I St. NW
        Washington, DC 20005
        Tel: (202) 898-5843
        Fax: (202) 682-1639

        Michael X. Imbroscio (*pro hac vice*)
        (mimbroscio@cov.com)
        COVINGTON & BURLING LLP
        One City Center
        850 10th St. NW
        Washington, DC 20001
        Tel: (202) 662-6000

        *Attorneys for Defendant*
        *MONSANTO COMPANY*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.

/s/ *Brian L. Stekloff*

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
108 Railroad Ave.
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
mmiller@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No. 16-md-02741-VC |
| This document relates to: <br><br> *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC; <br> *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC; <br> *Gebeyehou v. Monsanto Co., et al.,* 3:16-cv-5813-VC | **PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING IARC'S CLASSIFICATION OF GLYPHOSATE** |

1

# INTRODUCTION

IARC is relevant to the first Phase of trial because the classification, by one of the most prestigious research organizations in the world, supports the opinions of Plaintiffs' experts. All of Plaintiffs' experts considered the data evaluated by IARC, and more, in concluding that exposure to GBFs is associated with a risk of NHL. IARC thus goes to the weight afforded by the jury to Plaintiffs' experts' opinions as one piece of reliable data considered by these experts. Monsanto's atomized qualms with the IARC classification—and the basis for Plaintiffs' experts' opinions to the extent that they rely upon IARC—are for cross-examination and irrelevant to the admissibility of such general causation evidence.

Moreover, as explained in greater depth below, introducing IARC during Phase 1 does not warrant admission of a slew of regulatory evaluations which are unaccompanied by the foundational testimony of a competent witness. In contrast to the evaluations of European regulators and the EPA, which have no sponsoring witness (not to mention the EPA's incomplete interim analyses), Plaintiffs are able to proffer witnesses who can testify competently, from first-hand knowledge, regarding IARC's methods and process which led up to the classification of glyphosate. To the extent that Monsanto is permitted to introduce regulatory evaluations to counter IARC, the volume and type of such evidence should be limited—as discussed below—and Plaintiffs should be able to challenge the credibility of regulatory evaluations by presenting evidence of Monsanto's conduct in affecting the outcome of such agencies' decisions.

Lastly, introducing IARC is important for disabusing the jury of the assumption that Roundup is unlikely to be a carcinogen merely because it has been marketed for over forty years, presumably with approval from regulators. Given that IARC was the institutional turning-point on glyphosate safety following decades of independent science indicating a risk, the jury should be informed of the classification both as a means of gauging the weight and credibility of Plaintiffs' experts' opinions, and to prevent unchallenged, extraneous assumptions from unduly influencing the determination of causation.

# ARGUMENT

2

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING IARC'S CLASSIFICATION OF GLYPHOSATE

As an initial matter, Monsanto does not contend that the IARC classification of glyphosate is irrelevant to the issues to be adjudicated in Phase 2. As such, Plaintiffs limit their response to explaining the import of the IARC classification to Phase 1 of trial.

In determining "what the science actually shows" relative to causation, the jury will hear testimony from Plaintiffs' experts in the fields of epidemiology, toxicology, mechanism, and exposure. As an internationally renowned research agency, which evaluated much of the same independent evidence considered by Plaintiffs' experts, IARC's classification thus goes to the weight of Plaintiffs' experts' testimony. *See, e.g.*, *Baxter Healthcare Corp. v. Denton* 120 Cal.App.4th 333, 349 (2004) (recognizing IARC as "as an authoritative body on the identification of chemicals causing cancer."); Ref. Manual at 564, n. 46 (same). The jury should be permitted to hear that Plaintiffs' experts' opinions are supported by the conclusions of a prestigious research organization when deciding how much weight to afford Plaintiffs' scientific evidence.

Moreover, Monsanto's contention, and this Court's holding during the general causation stage—that IARC does not consider exposure at real-world levels—is misplaced. While it is true that IARC *can* identify hazards which can cause cancer at levels not currently experienced by humans, it does not always do just that. Here, with glyphosate, IARC's classification did in fact conclude that "glyphosate causes NHL in doses within the realistic realm of actual human exposure…" *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2018 WL 3368534, at *7 (N.D. Cal. July 10, 2018). As the IARC Director stated in January 2018, responding to this very criticism raised by Monsanto:

> A charge levelled at the Monographs is that evaluations are divorced from the 'real world' i.e. are made without taking account of realistic human exposures. However, epidemiological studies are a central part of Monograph evaluations and, by definition ***deal with people exposed in daily life, including at work***. The studies frequently consider the gradient of risk observed with different levels of exposure. One part of the Monograph evaluation is specifically ***dedicated to describing the circumstances under which human exposure occurs and at what levels***. In addition, when considering scientific evidence of carcinogenicity including biological mechanisms, the Working Groups place ***special emphasis on whether the observations are relevant to humans***. In light of occurring ("real world") human exposures, Working Groups synthesize evidence in humans, animals and other model systems in reaching overall conclusions.

3

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING IARC'S CLASSIFICATION OF GLYPHOSATE

Ex. 1, *Briefing Note for IARC Scientific and Governing Council Members Prepared by the IARC Director* (January 2018) ("IARC Briefing Note") (emphasis added).[1]  Dr. Jameson's—who was a member of the IARC Working Group— and Dr. Portier's respective *Daubert* testimonies also confirmed that Working Group 112 accounted for real-world exposures to GBFs before concluding that GBFs are Class 2A carcinogens.  *See* Ex. 2, Jameson Test. at 427:4-21; Ex. 3, Portier 04/6/18 Test. at 81:2-10.  Put simply, the IARC Monograph, while not dispositive of the issue of general causation, is a reliable piece of evidence that Plaintiffs' experts considered in arriving at their opinions.  And, the jury will be better placed to probe the bases for Plaintiffs' experts' opinion if presented with evidence and testimony regarding the IARC classification.

Furthermore, Monsanto concedes that its disputes with the IARC classification—such as the fact that Monograph 112 was published prior to Andreotti, *et al*. (2018)—is the stuff of cross-examination.  Mtn. at 3.  This issue is unlikely to create a "sideshow" given that Monsanto can simply point out to the jury that Andreotti, *et al*. (2018) was published after IARC finished reviewing the evidence, and argue to the jury why the findings of one study should be dispositive of causation.  Monsanto cannot persuasively argue that the jury will be sidetracked by an inquiry of what IARC did or did not review without offering other data supposedly not considered by IARC.  That is because IARC considered substantively the same literature reviewed by regulatory agencies such as the EPA, but placed more weight on independent, peer-reviewed studies rather than industry-sponsored data.[2]  Again, such disputes go the weight of the expert opinions presented to the jury.

Evidence regarding IARC does not warrant opening the door to the conclusions of regulatory agencies.  **First**, Monsanto cannot present a single witness to testify competently about the procedures, practices, and methods employed by bodies such as ECHA, EFSA, Bfr, Health Canada, or indeed, the EPA in reaching their conclusions on glyphosate.  No witness can walk the jury

---

[1] Admittedly, the IARC Briefing Note was not part of the MDL record at the commencement of the *Daubert* hearing on March 5, 2018 given that Plaintiffs' expert reports and briefs had been submitted by the time the Briefing Note was published.  However, Plaintiffs introduced the Briefing Note during the hearing in response to Judge Chhabria's concerns regarding analysis of real-world exposures in IARC's analysis.  *See* Ex. 2, Jameson Test. at 426:22-427:24.
[2] Although regulatory agencies are privy to the underlying animal bioassays provided by registrants, IARC had access to such data through the Greim, *et al*. (2015) publication.  *See, e.g.*, Ex. 4, IARC Monograph at 34-35.  In any event, Plaintiffs' experts did evaluate some of the underlying bioassay data, and their opinions are supported by IARC's review of the summary Greim, *et al*. (2015) tables.

4

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING
IARC'S CLASSIFICATION OF GLYPHOSATE

through how, and under what circumstances, these agencies reached their conclusions. The dangers of such evidence—presented in a vacuum—is demonstrated by the EFSA glyphosate conclusion, which evaluated the risk to human health posed by *food* contaminants. *See, e.g.*, Ex. 5, 11/09/18 Ritz. Dep at 271:22-272:2 (responding to Monsanto's questions regarding EFSA's evaluation). However, Drs. Jameson and Portier—as participants of Monograph 112—can both testify to the facts of the IARC glyphosate classification, thereby providing a reliable foundation for its admission.

**Second**, the 2015 EPA CARC Report and 2016 EPA Glyphosate Issue Paper, including its follow-up publications, are incomplete interim analyses, and thus do not bear the gravitas for causation afforded to them by Monsanto. *See, e.g.*, Ex. 6, 2016 Glyphosate Issue Paper at 13 ("The recent peer review performed by CARC served as an initial analysis…"). Such facts provide an independent reason for barring introduction of these reports, as discussed in Plaintiffs' *in limine* motion to exclude the recent EPA analyses.

**Third**, allowing Monsanto to bombard the jury with a smorgasbord of conclusions from every regulatory body Monsanto perceives to be favorable to its causation argument should, fairly, open the door to evidence of Monsanto misleading the same agencies regarding glyphosate safety. Monsanto should not be permitted to use bifurcation as both a shield and sword to enter facts in its favor while keeping out undesirable rebuttal evidence. If the Court does allow evidence of evaluations by regulatory agencies to accompany introduction of IARC's classification, there should be a limit to the volume and type of such regulatory actions heard by the jury, and Plaintiffs should be given the opportunity to challenge the credibility of regulatory evaluations during Phase 1 by pointing to Monsanto's attempt at influencing agency decisions. For example, Monsanto should be limited to presenting the EPA's 1993 glyphosate Registration Eligibility Decision ("RED"), and, to the extent the evaluations of European regulatory bodies such as Bfr and ECHA are raised through the cross-examination of Dr. Portier, Plaintiffs should be afforded the opportunity to introduce evidence which demonstrates that Monsanto failed to provide these agencies with Dr. Parry's evaluations, or the results of Monsanto's Roundup dermal absorption studies, and that Monsanto hired a scientist to find a "tumor" in the control group of the 1983 Knezevich & Hogan mouse study. It is only fair that the

5

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING IARC'S CLASSIFICATION OF GLYPHOSATE

jury be presented with the factual circumstances surrounding such regulatory decisions in order to properly gauge their scientific weight.

Plaintiffs will be materially prejudiced even if the Court is inclined to exclude all evidence of institutional evaluations of glyphosate, whether by IARC or regulatory agencies. Given that Roundup has been on the market since 1974 (presumably one of the first facts marshalled during Monsanto's opening statement), with ubiquitous promotion by Monsanto regarding its safety and benefits, the jury is bound to operate under the presumption that U.S. regulators have deemed the product safe for human use without being privy to evidence of another authoritative body reaching a contrary conclusion. IARC represents the institutional turning-point on glyphosate safety following decades of independent research evincing a carcinogenic risk with the product, notwithstanding the EPA's approval. If all evidence of IARC is excluded, a key piece of foundational scientific evidence for Plaintiffs' experts' opinions will be omitted while Monsanto reaps the benefits of the jury's extraneous assumptions.

In any event, IARC can be presented to the jury through the testimonies of Plaintiffs' fact and expert witnesses with an appropriate limiting instruction regarding the extent to which the jury may consider the classification. However, Plaintiffs' experts should not be limited in their discussion of IARC as a piece of evidence that they considered in forming their causation opinions, and Plaintiffs should be permitted to educate the jury on the factual circumstances of the IARC classification through the testimony of Dr. Jameson. Monsanto's proposal, while dressed as a limiting instruction, boils down to an attempt at improperly circumscribing Plaintiffs' experts' testimonies, contrary to the Court's *Daubert* ruling. Should the Court admit IARC during Phase 1, subject to the Court's ruling on the admissibility of regulatory evaluations, Plaintiffs are amenable to conferring with Monsanto to craft an appropriate limiting instruction.

## CONCLUSION

For the foregoing reasons, the Court should deny Monsanto's motion *in limine* to exclude evidence and argument regarding IARC's classification of glyphosate during Phase 1.

6

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING IARC'S CLASSIFICATION OF GLYPHOSATE

Dated: 1/30/2019

Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com

Plaintiffs' Opposition to Monsanto's Motion in Limine No. 1 to Exclude Evidence and Testimony regarding IARC's Classification of Glyphosate