# EXHIBIT L

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:   (202) 847-4030
Fax:   (202) 847-4005

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 ) ) Case No. 3:16-md-02741-VC ) |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | ) **MONSANTO COMPANY'S NOTICE OF** ) **MOTION AND MOTION *IN LIMINE*** ) **NO. 10 RE: INTRODUCTION,** ) **ARGUMENT, OR REFERENCE TO** ) **THE SERALINI STUDY AND ANY** ) **INFORMATION THEREIN** ) ) |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will and hereby does move the Court to preclude the introduction, argument, or reference to the Seralini Study and any information therein.

DATED:  January 30, 2019

    Respectfully submitted,

    /s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)

COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

I.     INTRODUCTION

Defendant Monsanto Company ("Monsanto") respectfully submits this motion *in limine* to exclude at trial any evidence, argument, or reference to the flawed, unreliable, and ultimately retracted study by Gilles-Eric Seralini, "Long Term Toxicity of a Roundup Herbicide and a Roundup-Tolerant Genetically Modified Maize" (the "Study"), the information and images therein, and Dr. Seralini's subsequent book and film documentary. Monsanto believes that this Motion impacts both Phase 1 of the trial dealing with causation, as well as Phase 2 to the extent Plaintiff suggests that the Seralini study impacts Monsanto's potential liability or punitive damages.

Monsanto anticipates that Plaintiffs may attempt to elicit testimony and introduce evidence regarding the Study in an attempt to (1) contend that the Roundup products at issue in these cases can cause cancer in humans and in fact did so in the plaintiffs at issue; and (2) argue that Monsanto improperly sought the retraction of this flawed and unreliable Study in order to skew the scientific debate regarding glyphosate. Putting aside for the moment the lack of merit in such claims, the Study and the images therein are inadmissible because they have no probative value and are unfairly prejudicial. *See* Fed. R. Evid. 403. The Study has been rejected by the international scientific community (including one of plaintiffs' expert witnesses) due to its flawed methodology and unsupported conclusions. Indeed, the Study was not raised in the general causation *Daubert* hearing before this Court because plaintiffs' experts do not rely on it. Furthermore, the Study contains graphic images of dead rats with overgrown tumors that plaintiffs will use in an attempt to shock the conscience and inflame the passions of the jury against Monsanto while offering no insight to the jury. Accordingly, the Study (and the subsequent book and video related to it) must be excluded because its prejudicial effect far outweighs its complete lack of any probative value. The California state court presiding over the *Johnson* case granted the exclusion of the Study and the images therein for the same reasons asserted here. Tr. of Pretrial Hearing at 131:8-141-5, *Johnson v. Monsanto Co.* (June 20, 2018) (No. CGC-16-550128) ("[T]he [Seralini] study itself cannot come in and none of the photographs

may come in.") (Ex. 1).

II.  **ARGUMENT**

   A.  **The Flawed Science of the Study Has Been Universally Rejected and Should Not Be Admitted Into Evidence**

The Study is unreliable and not a proper part of any scientific evaluation of whether glyphosate-based herbicides can cause cancer. Plaintiffs' expert Dr. Christopher Portier acknowledges this fact:

> Q: Okay, and you have stated before, I think yesterday, that Seralini was in your opinion an unreliable study, right?
> A: A study that I couldn't use.
> Q: Because it was unreliable?
> A: That's a legal term. I'm using a scientific term. The study was underpowered, it was poorly presented and poorly analysed [sic].
> Q: Okay. And the IARC working group rejected use of the Seralini study as well?
> A: That is correct.

*See* Dep. of Christopher Portier, Jr., Ph.D. at 591:8-21, *Kane v. Monsanto Co.*, No. 1622-CC10172 (Mo. Cir. Ct. St. Louis City Apr. 17, 2018) (Ex. 2).

For the same reasons, the Study was rejected by the International Agency for Research on Cancer ("IARC"), the very agency plaintiffs and their experts so heavily rely upon in this case. In rejecting the Study, IARC deemed it "inadequate for evaluation because the number of animals per group was small, the histopathological description of tumors was poor, and incidences of tumours [sic] for individual animals were not provided." *See* IARC Monograph on Glyphosate at 35 (Ex. 3). European regulators have also rejected the study for reasons similar to Dr. Portier and IARC.[1] The European Food Safety Authority ("EFSA") found that it was "of insufficient…quality for safety assessments." EFSA Statement on Final Review of Seralini et al. at 9 (2012) (Ex. 4). EFSA's rejection of the Study is in agreement with independent assessments of the Study done by organizations in Belgium, Denmark, France, Italy, Germany, and the Netherlands. *Id.* at p. 7.

---

[1] In a 2013 article, the European Cooperation in Science and Technology ("COST"), proclaimed that the study was "disregarded by the scientific community, based on incorrect experimental designs and statistical analysis." *See* Martinelli, L. et al., *Science, Safety and Trust: The Case of Transgenic Food*, 54 J. Croat. Med. 91, 91 (2013) (Ex. 5).

2

MONSANTO'S MOTION *IN LIMINE* NO. 10 RE: SERALINI STUDY
3:16-MD-02741-VC

The rejection of the Study as both unreliable and inconclusive by the scientific community even led to the rejection of the study by Food and Chemical Toxicology, the journal that initially published the study in 2012.[2] Plaintiffs' have a conspiracy theory that Monsanto was behind the journal's retraction, but they have no evidence that the rejection was not on the merits. Regardless, such evidence would be irrelevant because no one thinks that the Study deserves consideration, including plaintiffs' own scientific experts.

This oft-rejected Study is not probative of that for which it purports to stand (scientific causation), and would serve only to distract and inflame the jury with discredited information and misleading images. *See Hill v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 943, 957-59 (E.D. Cal. 2013) (excluding a scientific article because it would be "more prejudicial than probative under Federal Rule of Evidence 403" due to "the lack of any scientific foundation" and vagueness of the opinions).

### B.  The Study Would be Significantly Prejudicial and Mislead the Jury

The only purpose that could be served by the introduction of the Study would be to attempt to shock the conscience of the jury, which would be inadmissible under Rule 403. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (describing unfair prejudice as the tendency to suggest the jury make a decision based on improper, often *emotional*, grounds); *Walker v. Werner Enter., Inc.*, No. 8:07-cv-631-T-24EAJ, 2008 WL 2816248, at *7 (M.D. Fla. May 14, 2008) (granting motion to exclude photograph that was intended to appeal to the sympathy or prejudice of the jury).  The Study contains graphic images of tumor-prone rats with large tumors that are designed to evoke a visceral reaction from the viewer.[3]  There is no scientific evidence, however, that the tumors depicted in the images bear any relation to the rats' exposure to glyphosate.  The authors' true intent in displaying the photographs as part of the Study was very

---

[2] The study was re-published in nearly identical form with no additional peer review in another journal, Environmental Sciences Europe. As both versions of the study contain the same flawed and ultimately rejected scientific methodology, this motion seeks to exclude both versions and all related materials.

[3] For the Court's reference, a small excerpt of the graphic images contained in the Study is attached hereto. *See* Seralini, G, et al., *Long Term Toxicity of a Roundup Herbicide and a Roundup-Tolerant Genetically Modified Maize*, Food and Chem. Toxicology (2012) (Ex.  6).

3
MONSANTO'S MOTION *IN LIMINE* NO. 10 RE: SERALINI STUDY
3:16-MD-02741-VC

1  transparent to the scientific community: "[g]iven that the tumors seen on the photos are not
2  specific for treated animals and can be seen in aged rats, they are not informative, their inclusion is
3  highly objectionable, and we can only guess they regretfully serve public relation, but not
4  scientific purposes."   Barale-Thomas, E. *Letter to the Editor*, Food Chem. Toxicol. 53:473 (2013)
5  (Ex. 7).  The COST article, referenced in footnote one, also notes that the inclusion of these
6  graphic images that resonated in the public eye, in part, led to the response from top scientists
7  rejecting the article. *See* Martinelli, L. et al., *Science, Safety and Trust: The Case of Transgenic*
8  *Food*, 54 J. Croat. Med. 91, 93 (2013) (Ex. 5).
9         Monsanto will be severely prejudiced if the jury is told about debunked science in the
10 Study and allowed to view the graphic images associated with it.  Jurors could easily conflate the
11 size and graphic nature of the tumors pictured in the Study with what plaintiffs allege happens to
12 human exposure to glyphosate, which would certainly prejudice Monsanto.  *See Francois v.*
13 *Colonial Freight Sys., Inc.*, No. CIV.A.3:06CV434WHB-L, 2007 WL 4564866, at *7 (S.D. Miss.
14 Dec. 21, 2007) (excluding photographs of vehicle damage where jurors could conflate what the
15 photograph depicted with what actually happened); *King v. Ford Motor Co.*, 597 F.2d 436, 445
16 (5th Cir. 1979) (upholding exclusion of photographs that could confuse or mislead the jury).  The
17 Study is highly prejudicial to Monsanto, entirely misleading given it is discredited, and would
18 serve solely to confuse and mislead the jury.  Its prejudicial value greatly outweighs any probative
19 value, of which there is none, and for that reason it must be excluded during either phase of trial.
20 **III.      CONCLUSION**
21        Monsanto respectfully requests that the Court preclude introduction, argument, or
22 reference to the Study, as well as Dr. Seralini's subsequent book and film documentary, and any
23 information and images contained therein.

DATED: January 30, 2019

Respectfully submitted,

/s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.

/s/ *Brian L. Stekloff*

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC *Gebeyehou v. Monsanto Co., et al.,* 3:16-cv-5813-VC | **PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION *IN LIMINE* NO. 10: INTRODUCTION, ARGUMENT, OR REFERENCE TO THE SERALINI STUDY AND ANY INFORMATION THEREIN** |

# INTRODUCTION

To this day, Monsanto has never conducted a long-term carcinogenicity study on a formulated Roundup product, even though numerous independent scientists, including one specifically hired by Monsanto, repeatedly raised concerns that the formulated Roundup product appears to be more genotoxic than pure, technical glyphosate. As it stands, the only person to ever attempt to conduct such a study was a group of eight researchers led by Gilles-Eric Seralini. And, the results of his study showed that 80% of rats who ingested formulated Roundup developed tumors—with many rats developing numerous large tumors. This result was in sharp contrast to only 30% of rats developing tumors in the control group. As explained below, in response to this study, Monsanto engaged in a coordinated plan to get the article retracted, using its relationship with the journal's editor, a Monsanto consultant on glyphosate.

First, this study is relevant to the first phase of trial because it supports the proposition that the formulated Roundup product, *i.e.*, the product actually used by the Plaintiffs, is significantly more carcinogenic than pure, technical glyphosate. It is also relevant because it is evidence that Monsanto engaged in scientific manipulation. Second, this study is relevant to the liability phase, because it shows misconduct by Monsanto, failure to test, and malicious conduct designed to suppress scientific data about Roundup's ability to cause cancer.[1]

Plaintiffs are currently deposing numerous witnesses about this study, including the editor of the journal, Monsanto, and various other scientists connected with this study. The testimony elicited in those depositions will be highly relevant to this issue, and until the Court has an opportunity to review that testimony, Plaintiffs request that the Court refrain from ruling on this Motion in a vacuum. For example, just today (January 23, 2019), Plaintiffs obtained alarming testimony from Monsanto's corporate representative about the Seralini study, but that testimony is not yet finalized, nor is the deposition complete.

# BACKGROUND

**I. Monsanto Refuses to Conduct Long-term Carcinogenicity Studies on Roundup.**

---

[1] It should be noted that Monsanto falsely states that the court in Johnson excluded the Seralini study. In truth, Plaintiffs stipulated to its exclusion because, at that time, the entire story surrounding Monsanto's attack on the study was unknown and undeveloped.

In obtaining approval from the Environmental Protection Agency ("EPA"), Monsanto was not required to conduct long-term animal carcinogenicity studies on the formulated Roundup product; it only studied pure glyphosate. Starting in the late 1990s, independent scientists began raising questions about the safety of the formulated Roundup product, as opposed to just pure glyphosate. For example, in 1997, Dr. Claudia Bolognesi, along with seven other scientists, published an article titled "Genotoxic Activity of Glyphosate and Its Technical Formulation Roundup," which attempted to assess the genotoxicity of not just glyphosate, but Roundup. Exh. 1 at *1954. The researchers concluded: "[t]he higher activity of technical formulations in inducing toxic and genotoxic damage in different experimental systems suggests a role of the surface active agents and/or coformulants in the potentiation of the effects" and recommended that "the risk assessment process of commercial technical formulations has to be considered of primary importance." *Id.* at 1964. Dr. Bolognesi's study, among others, prompted Monsanto to engage a genotoxicologist, James Parry, to review these studies and provide his opinion. Exh. 2 at 4 ("Mark Martens would contact Dr. Parry and ask him for a written review the articles by Rank, Bolognesi, Peluso & Lioi.). And, when Dr. Parry submitted his review, he specifically noted that "[t]he unique positive result in mouse kidney with Roundup mixture suggests a synergistic effect of some component of the mixture." Exh. 3 at 10. Monsanto then gave him access to the complete database. *See* Exh. 4 at 4. His second report reiterated his previous opinion, noting "[i]n view of the absence of adequate data no evaluation of the clastogenic potential in vitro of glyphosate mixtures is possible. … The studies of Bolognesi et al ( 1997) suggests that glyphosate mixtures may be capable of inducing oxidative damage in vivo." Exh. 5 at 12. In conclusion, Dr. Parry stated "it would be advisable to determine whether there are exposed individuals and groups within the human population. If such individuals can be identified then the extent of exposure should be determined and their lymphocytes analysed for the presence of chromosome aberrations." *Id.* at 35.

This point is underscored by Dr. Donna Farmer's 2003 email, where she acknowledges the limitations of Monsanto's testing: "[t]he terms glyphosate and Roundup cannot be used interchangeably nor can you use 'Roundup' for all glyphosate-based herbicides any more. For example you cannot say that Roundup is not a carcinogen … we have not done the necessary testing

on the formulation to make that statement. The testing on the formulations are not anywhere near the level of the active ingredient." Exh. 6 at 1-2. She restates this point, again, in 2009. Exh. 7 at 1.

## II. The Seralini Publication

On September 19, 2012, the Seralini paper was published. Exh. 8 at 4221. This study was the first one to ever review the toxicity of rodents exposed to formulated Roundup for a full two years, *i.e.*, the typical length of a long-term chronic study using rats. The study also examined what, if any, long-term effects were observed on rats that consumed genetically modified corn, produced by Monsanto and treated with Roundup. *Id.* Included within the study were an assortment of photographs, depicting the histopathological slides of various rodents and actual pictures of rats within the treatment groups. *Id.* at 4226-27. These rats were deformed, riddled with tumors. Indeed, one of the study's observations was that rats treated with Roundup and/or GMOs had larger (30% to 130%) tumors. *Id.* at 4221. These pictures helped display that finding.

## III. The Seralini Attack

Immediately following the publication, Monsanto orchestrated an attack on the paper. Monsanto asserts "Plaintiffs have a conspiracy theory that Monsanto was behind the journal's retraction, but they have no evidence that the rejection was not on the merits." MIL at 3. Not true. There is a mountain of evidence.

Initially, Monsanto had hired the editor of the journal, Wallace Hayes, as a consultant for Monsanto relating to glyphosate toxicology. Exh. 10 at 2-3. After the Seralini article was published, Dr. Hayes' primary contact, Dr. David Saltmiras, continued to interface with him. Exh. 9 at 2. At this same time, Monsanto helped "independent" scientists, like Henry Miller, write scathing "scientific" opinion pieces, like "Scientists Smell A Rat In Fraudulent Rat Study."[2] *See, e.g.*, 14 at 4-6 (with redline edits by Monsanto employee). But these non-scientific opinion pieces were not enough. Dr. Hayes told Dr. Saltmiras as much, on September 26, 2012: "Wally Hayes (FCT Editor

---

[2] Incidentally, Henry Miller's conduct was exposed by Plaintiff's release of documents, leading to his termination with Forbes for failing to disclose Monsanto's involvement in his publications. Danny Hakim, *Monsanto Emails Raise Issue of Influencing Research on Roundup Weed Killer*, NY Times (Aug. 1, 2017), available at https://www.nytimes.com/2017/08/01/business/monsantos-sway-over-research-is-seen-in-disclosed-emails.html (Forbes removed the story from its website and said that it ended its relationship with Mr. Miller amid the revelations.)

in Chief) called me this morning in response to my voice mail yesterday. He expressed concern that to date he has only received links to blogs, web postings, media releases, etc. and no formal letters to the Editor. … he urgently needs rational, objective and authoritative formal letters to the Editor." Exh. 9 at 2. Indeed, Dr. Saltmiras specified "I believe he would like such letters TODAY!" *Id.* at 3. So, the next day, the industry group CropLife America, a group which Monsanto was a member, sent out an email titled "Help Take Action AGAINST Seralini Study -- Write to Journal Editor TODAY" which stated "[i]t has come to our attention that … Editor Dr. Wally Hayes has indicated that he is prepared to take immediate action on the Seralini paper, but in order to do so, he needs more letters and voices who suggest, support, or demand a retraction and/or criticize the paper's publication of the study. These letters mu[st] be received TODAY … I encourage you to write today to Dr. Hayes asking that the paper be retracted[.]" Exh. 11 at 2-3. Dr. Saltmiras sent this email to Dr. Hayes.[3] *Id.* at 1.

Ultimately, the journal retracted the article. *See* Exh. 12. The editor explained that "[v]ery shortly after the publication of this article, the journal received Letters to the Editor expressing concerns about the validity of the findings it described, the proper use of animals, and even allegations of fraud" and noted "[m]any of these letters called upon the editors of the journal to retract the paper." *Id.* And, so, the editor reviewed all of the raw data underlying the article, noting "[u]nequivocally, the Editor-in-Chief found no evidence of fraud or intentional misrepresentation of the data" and that Dr. Seralini "supplied all material that was requested" and "acknowledge[d] the co-operation of the corresponding author in this matter, and commend[ed] him for his commitment to the scientific process." *Id.* Ultimately, the editor concluded that "the results presented (while not incorrect) are inconclusive, and therefore do not reach the threshold of publication" and stressed that "[t]he retraction is only on the inconclusiveness of this one paper." *Id.* Very shortly thereafter, the article was republished in another peer-reviewed journal. *See* Exh. 13.

The new publication, like the original, concludes "[o]ur findings imply that long-term (2 year)

---

[3] A year later, Dr. Saltmiras would boast in a performance review that he "[s]uccessfully facilitated numerous third party expert letters to the editor" and "[t]hroughout the late 2012 Seralini rat cancer publication and media campaign, I leveraged my relationship the Editor i[n] Chief of the publishing journal[.]" Exh. 14 at 3, 6.

feeding trials need to be conducted to thoroughly evaluate the safety of GM foods and pesticides in their full commercial formulations." Exh. 12 at 1. However, in discussing whether Monsanto would ever conduct such studies, Monsanto's head of Product Safety stated:

> If we conduct a chronic study in response to Seralini's efforts, there is a significant risk that one study on one product would not end the debate. … Given the lack of scientific need, the time required to complete (3 yrs including reporting), the significant financial investment ($1.5 M) the Toxicology team considers conduct of such studies *a dangerous precedent* to be avoided.

Exh. 15 at 2 (emphasis added).

## ARGUMENT

**I.   The Seralini Paper Is Relevant to Causation Because It Is the Only Long-Term Rodent Study that Has Been Conducted on Formulated Roundup, Published in a Peer-Reviewed Journal.**

Animal toxicology is relevant to causation. The Seralini study was peer-reviewed, published (twice) in an academic journal, and was validated by the editor in chief as being both accurate and correct. And, although Plaintiffs' experts do not rely on this study to form their opinions, it is a study that is helpful for the jury—especially in crossing Monsanto's witnesses and experts. Moreover, the story surrounding the Seralini study is relevant to showing the manipulation of science—a fact that is relevant to the credibility of any science generated by Monsanto. Indeed, even Dr. Portier specifically published an article criticizing the propriety of the Seralini retraction—a publication he issued before he was retained as an expert in this litigation. *See* Exh. 16 at 1. The entire Seralini saga falls squarely within the gambit this Court contemplated, *i.e.*, evidence of manipulated science.

**II.  The Seralini Article Is Relevant to Liability.**

Clearly, the Seralini publication and Monsanto's conduct related to it, are relevant to liability. First, it shows deliberate manipulation of science—an issue relevant to punitive damages. Second, it shows that Monsanto had an obligation to conduct a long-term rodent carcinogenicity study on formulated Roundup, and instead of simply doing the study despite repeated indications from Monsanto's own scientists and other academics, Monsanto attacked the one researcher that attempted to do it. This goes straight to liability under failure to test and punitive damages. Finally, the Seralini affair is relevant to the credibility of Monsanto's witnesses.

**III.     The Photo from the Study Is Probative of the Veracity of the Study's Results, and Any Prejudice from Such Photos Is Speculative at Best.**

Monsanto takes issue with the photograph in the study showing a rat that ingested Roundup for two years and developed significant tumors. Monsanto believes this photo is too prejudicial. It is unclear why that is—the photo is of an animal that was part of an experiment. This fact will be explained to the jury. If Monsanto believes that the photo does not accurately reflect what occurred in the study, it is welcome to make that argument to the jury. Monsanto's concern that the photo will inflame the jury is simply speculation. So is its bald assertion that the photos were designed to "provoke an emotional reaction." There is absolutely no evidence to support that claim. It is just Monsanto continuing its campaign to attack Dr. Seralini. And, more importantly, Monsanto has not explained how any speculated and unfounded prejudice *substantially* outweighs it probative value. *See* Fed. R. Evid. 403. The photos specifically help refute Monsanto's central contention that the study is "debunked" or false because they show what the author's claim, *i.e.*, that the Roundup treated rats had larger and more numerous tumors. Moreover, the photo helps explain why Monsanto believed conducting these studies would be a "dangerous precedent."

Dated: 1/30/2019                                         Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224

*Co-Lead Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com