# EXHIBIT O

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel:   (202) 847-4030
Fax:   (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION <br><br> *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC <br> *Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC <br> *Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 13 RE: LOBBYING ACTIVITY AND GENERATION OF SUPPORT FOR REGISTRATION OF GLYPHOSATE** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will and hereby does move the Court to preclude evidence regarding Lobbying Activity and Generation of Support for Registration of Glyphosate.

1  DATED: January 30, 2019
2
3                               Respectfully submitted,
4                               /s/ *Brian L. Stekloff*
5
                              Brian L. Stekloff (*pro hac vice*)
6                               (bstekloff@wilkinsonwalsh.com)
                              Rakesh Kilaru (*pro hac vice*)
7                               (rkilaru@wilkinsonwalsh.com)
                              WILKINSON WALSH + ESKOVITZ LLP
8                               2001 M St. NW, 10th Floor
                              Washington, DC 20036
9                               Tel: (202) 847-4030
                              Fax: (202) 847-4005
10
                              Pamela Yates (CA Bar No. 137440)
11                               (Pamela.Yates@arnoldporter.com)
                              ARNOLD & PORTER KAYE SCHOLER
12                               777 South Figueroa St., 44th Floor
                              Los Angeles, CA 90017
13                               Tel: (213) 243-4178
                              Fax: (213) 243-4199
14
                              Eric G. Lasker (*pro hac vice*)
15                               (elasker@hollingsworthllp.com)
                              HOLLINGSWORTH LLP
16                               1350 I St. NW
                              Washington, DC 20005
17                               Tel: (202) 898-5843
                              Fax: (202) 682-1639
18
                              Michael X. Imbroscio (*pro hac vice*)
19                               (mimbroscio@cov.com)
                              COVINGTON & BURLING LLP
20                               One City Center
                              850 10th St. NW
21                               Washington, DC 20001
                              Tel: (202) 662-6000
22
                              *Attorneys for Defendant*
23                               *MONSANTO COMPANY*
24
25
26
27
28

-2-
MONSANTO'S MOTION IN LIMINE NO. 13 RE: LOBBYING ACTIVITY AND GENERATION OF SUPPORT FOR
REGISTRATION OF GLYPHOSATE
3:16-md-02741-VC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Monsanto Company ("Monsanto") respectfully submits this motion *in limine* to preclude Plaintiffs Edwin Hardeman, Elaine Stevick and Sioum Gebeyehou ("Plaintiffs'") from introducing any evidence, argument, or reference to Monsanto's lobbying activity and generation of support for the registration of glyphosate, including meetings with regulators and other public relations activities. First, this evidence is irrelevant to whether glyphosate caused Plaintiffs' non-Hodgkin lymphoma ("NHL"), and so cannot be admitted in Phase 1. Second, even if this evidence might have some relevance in Phase 2, it should be barred under Federal Rule of Evidence 403 because it will inflame the jury and unduly prejudice Monsanto, chill constitutionally protected activity, and create unnecessary collateral issues. Third, the evidence cannot support punitive damages because the Due Process Clause precludes imposition of such damages based on lawful conduct.

## II. BACKGROUND

Like many companies, Monsanto has contact with regulatory agencies, including the U.S. Environmental Protection Agency ("EPA"), which is responsible for registration of herbicides in the United States. Monsanto meets with regulators, petitions the government pursuant to its rights under the First Amendment of the U.S. Constitution, and engages in public relations activities. As Plaintiffs' expert Dr. Benbrook explains, these practices are "common" and not unique to Monsanto. *See* Dep. of Charles Benbrook, at 198:15-22 (Dec. 28, 2018) ("Benbrook Dep.") (Ex. 1). Documents produced by Monsanto reflect many of these common activities.

Plaintiffs are almost certain to attempt to introduce numerous Monsanto documents evidencing these lobbying, petitioning, and public relations activities. For example, Plaintiffs submitted a lengthy report from Dr. Benbrook that contains a section on "Political and Other Activities Post-IARC." *See* Nov. 10, 2018 Expert Report of Dr. Charles Benbrook ("Benbrook Rpt.") at ¶¶ 708-716) (Ex. 2). Dr. Benbrook's report describes Monsanto's efforts to "[l]obby[ ] members of Congress" and "[c]all[ ] for Congress to hold hearings," *id.* at ¶ 715, seek "assistance

and support" from an official at the U.S. Department of Health and Human Services, *id.* at ¶ 719, and ask its "home-state Senators to contact HHS" about policy issues important to the company. *Id.* Plaintiffs are also likely to introduce evidence of Monsanto's interactions with regulatory agencies, consistent with Dr. Benbrook's opinion that "Monsanto demonstrated both its ability and willingness to direct political pressure on [EPA]." *Id.* at ¶ 35.

### III. ARGUMENT

#### A. Evidence Of Monsanto's Lobbying Activities Is Not Relevant To Whether Glyphosate Caused A Plaintiff's NHL

Evidence regarding Monsanto's lobbying activities has no relevance to the issues to be decided in Phase 1. *See* Fed. R. Evid. 401. The primary question in that phase is whether glyphosate caused the Plaintiffs' diffuse large B-cell lymphoma or central nervous system B-cell lymphoma. Monsanto's lobbying and public relations efforts have no relevance to that question. *See Empress Casino Joliet Corp. v. Johnston*, No. 09-C-3585, 2014 WL 6735529, at *5(N.D. Ill. Nov. 28, 2014) ("evidence regarding contributions to and lobbying of legislators . . . does not tend to make any fact at issue on plaintiffs' claims . . . any more or less likely"). Indeed, this Court already recognized that this type of evidence would amount to a significant distraction when it comes to whether glyphosate caused a plaintiff's injuries. *See* PTO 61.

#### B. Because Monsanto Cannot Be Held Liable For Its Lobbying Activities Under *Noerr-Pennington*, Evidence of Those Activities Should Be Barred Under Rule 403

Even if the Court deems such evidence potentially relevant for Phase 2, it should be barred under Rule 403 because it would inflame the jury and unduly prejudice Monsanto, chill constitutionally protected activity, and create unnecessary collateral issues. It is well established that "those who petition any department of the government are generally immune from statutory liability for their petitioning conduct." *Sosa v. Directv, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The First Amendment's protection of the right "to petition the Government for a redress of grievances" includes the right to petition administrative agencies. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government," including "administrative agencies (which are both creatures of the legislature, and arms of the executive)") (commonly known and referred to herein as the

1  "*Noerr-Pennington* doctrine"). The *Noerr-Pennington* doctrine extends beyond the antitrust context
2  and is "applicable to any statutory interpretation that could implicate the rights protected by the
3  Petition Clause." *Sosa*, 437 F.3d at 931; *see also People ex rel. Gallegos v. Pac. Lumber Co.*, 158
4  Cal. App. 4th 950, 964 (2008), as modified (Feb. 1, 2008) ("The *Noerr-Pennington* doctrine has
5  been extended to preclude virtually all civil liability for a defendant's petitioning activities before
6  not just courts, but also before administrative and other governmental agencies.").

While *Noerr-Pennington* is not an evidentiary bar, *see United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670, n.3 (1965), evidence that cannot be the basis for liability would be unduly prejudicial under Rule 403.[1] Ascribing liability based on evidence of protected First Amendment activity has been described as "presumptively prejudicial." *See e.g.*, *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335, 1373-75 (2d Cir. 1988) (noting that such evidence was "clearly designed to place defendants in the harshest light" and that the "evidence which by its very nature chills the exercise of First Amendment rights, is properly viewed as presumptively prejudicial") (citation omitted); *Senart v. Mobay Chem. Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) (excluding evidence of lobbying activity where "plaintiffs assail[ed] defendants for taking a particular view in a scientific debate and for trying to retain a regulatory standard which defendants preferred" because "[n]ot only do these actions not constitute torts, they are protected by the first amendment."); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1257, 1277-79 (N.D. Ohio 1980) (Foreclosing the plaintiff "from undertaking a course of examination which is specifically and solely designed to trigger the admission of the constitutionally protected activity here in question.").

As the Seventh Circuit has explained in similar circumstances:

---

[1] Plaintiff will no doubt argue that *Hernandez v. Amcord, Inc.* 215 Cal. App. 4th 659 (2013) stands for the proposition that California courts allow for the admission of lobbying evidence in a product liability action. But *Hernandez* simply stands for the unremarkable proposition that the *Noerr-Pennington* is not a rule of evidence that "forbids the introduction of evidence of governmental petitioning activity." *Id.* at 680. In fact, the court made "no assessment of the relevance, probative value, or prejudicial nature of the [lobbying] evidence at issue" and simply remanded to the trial court for analysis of this evidence pursuant to the California Evidence Code. *Id.* Nothing about that decision suggests that the evidence is automatically admissible—just the opposite, given the citation to the California Evidence Code.

> The evidence of defendants' lobbying activity poses a serious problem of confusion of issues. The likely confusion is that the jury will consider this evidence as probative of an [improper] agreement to influence public officials . . . An appropriate cautionary instruction could be fashioned . . . . [y]et, the more likely result is that the jury . . . would conclude that the passage of a favorable consumer credit limit was the product of an unlawful conspiracy. We believe that confusion of issues is the probable result of admission of this evidence . . . **[T]he threat of prejudice from admission of this evidence is considerable . . . [and] would serve to focus the jury's attention on the lobbying evidence. This could easily result in a finding of antitrust liability for engaging in the First Amendment right to petition which Noerr-Pennington protects**. We believe the District Court correctly excluded this evidence from consideration. . . .

*Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 641 F.2d 457, 467 (7th Cir. 1981) (emphasis added).

The same is true here. The jury may erroneously conclude that Monsanto's lobbying activities are the reason regulatory agencies approved the labeling for glyphosate-based herbicides, resulting in a finding of liability for engaging in the First Amendment right to petition protected under *Noerr-Pennington*.

Moreover, if this evidence is introduced, Monsanto would be forced to contest the prejudicial inferences from its admission, resulting in a time consuming trial within a trial. At a minimum, Monsanto would be required to offer: (1) details about the particular regulatory proceedings at issue; (2) explanations of the governing agency rules in effect at the time; and (3) evidence of the prior course of dealings between Monsanto, the industry, and the regulators. This sideshow should be avoided under Fed. R. Evid. 403.

**C.    The Due Process Clause Precludes Evidence Of Monsanto's Lawful Conduct To Punish Monsanto**

Lawful lobbying conduct that cannot be the basis for liability cannot be a basis for punitive liability. *Cortez v. Skol*, 776 F.3d 1046, 1050, n.2 (9th Cir. 2015) (noting that punitive damages are not an independent cause of action). Moreover, evidence of otherwise lawful conduct must also be precluded from consideration for punitive liability under the Due Process Clause of the Fourteenth Amendment. As the United States Supreme Court has held, a jury may not use evidence of Monsanto's actions outside of California to punish Monsanto for conduct that was lawful where it occurred. *See e.g.*, *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572-73 (1996). Indeed, "[a] jury must be instructed,

furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." *State Farm*, 538 U.S. at 422.

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude all evidence, argument, or reference to Monsanto's lobbying activity and generation of support for the registration of glyphosate, and any argument that such activities are evidence of allegedly nefarious conduct.

DATED: January 30, 2019

        Respectfully submitted,

        /s/ *Brian L. Stekloff*

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4030
Fax: (202) 847-4005

Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

-6-
MONSANTO'S MOTION IN LIMINE NO. 13 RE: LOBBYING ACTIVITY AND GENERATION OF SUPPORT FOR REGISTRATION OF GLYPHOSATE
3:16-md-02741-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.

/s/ *Brian L. Stekloff*

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION *IN LIMINE* NO. 13 RE LOBBYING ACTIVITY AND GENERATION OF SUPPORT FOR REGISTRATION OF GLYPHOSATE** |
| *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC | |
| *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC | |
| *Gebeyehou v. Monsanto Co., et al.,* 3:16-cv-5813-VC | |

## I. INTRODUCTION

Plaintiffs oppose Monsanto's Motion to exclude any evidence, argument, or reference to Monsanto's lobbying activity and generation of support for the registration of glyphosate. Evidence of Monsanto's lobbying activities is relevant to show: (1) Monsanto's knowledge of the cancer risk associated with exposure to glyphosate-containing herbicides ("GHBs"); (2) Monsanto's efforts to prevent consumers from learning of the risks associated with GHBs; and (3) that Monsanto, in light of such knowledge and conduct, engaged in acts that constitute malice, oppression, or fraud.

## II. ARGUMENT

Monsanto suggests that the *Noerr-Pennington* doctrine requires the exclusion of all evidence relating to lobbying and all other "protected" First Amendment activity. In support of its position, Monsanto only mentions in a footnote *Hernandez v. Amcord, Inc.*, 215 Cal.App.4th 659 (2013), the seminal decision from the California Court of Appeals on the application of the *Noerr-Pennington* doctrine to questions of admissibility. In *Hernandez*, the Court noted that the *Noerr-Pennington* is not a rule of evidence and only serves to shield defendants from **liability** based on the right to petition government officials. *Id*. at 679. Thus, "while a corporation's petitioning of government officials may not itself form the basis of liability, evidence of such petitioning activity may be admissible if otherwise relevant to show the purpose and character of other actions of the corporation." *Id*. at 679 (*citing Pennington*, 381 U.S. 670, fn. 3 (*finding* that evidence of a defendant's efforts to influence officials may be introduced if it shows the purpose and character of the particular transactions under scrutiny")). In other words, the *Noerr-Pennington* doctrine does not "forbid the introduction of evidence of governmental petitioning activity." *Hernandez*, 215 Cal.App.4th at 680.

In this case, Plaintiffs intend to offer evidence about how Monsanto attempted to influence, petition, or communicate with the EPA, scientists and other regulatory bodies to demonstrate Monsanto's knowledge, state of mind, and intent. This Court has already stated that "A significant

portion of the plaintiffs' case involves attacks on Monsanto for attempting to influence regulatory agencies and manipulate public opinion regarding glyphosate. **These issues are relevant to punitive damages and some liability questions."** (PTO NO.61 Re: Bifurcation) (emphasis added) 1/3/19.

Despite Monsanto's suggestion to the contrary, the overwhelming majority of courts permit evidence of lobbying activity and petitioning of government officials for these purposes. *See Hernandez,* 215 Cal.App.4th at 679-80*; In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 181 F. Supp. 3d 278, 2016 (E.D. Pa. 2016); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 8130449, at *2 (S.D.N.Y. Dec. 3, 2015); *Cipollone v. Liggett Group, Inc.*, 668 F. Supp. 408, 411 (D.N.J. 1987) ("Although one court has suggested that such evidence is presumptively prejudicial… this court deems such a presumption inappropriate in this case, where the lobbying activity, though protected, is alleged to be ethically questionable."). As one federal court recently held in denying a motion *in limine* to exclude evidence under *Noerr-Pennington*:

> [T]he proper remedy for those concerns is care in instructing the jury with respect to what it must find in order to hold New GM liable and, if New GM requests it, perhaps also curative instructions making clear to the jury on what it may *not* base its verdict. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008). The proper remedy is not exclusion of evidence that is otherwise relevant and admissible in connection with Plaintiff's claims.

*In re: Gen. Motors*, 2015 WL 8130449 at *2.

At trial, Monsanto will rely heavily on the registration of glyphosate and the EPA's conclusions regarding its carcinogenicity. Monsanto seeks to exclude critical evidence regarding its submissions, meetings, and involvement in this process and the conclusions reached by the EPA. Taken to its logical conclusion, the granting of Monsanto's Motion would preclude *all* evidence relating to Monsanto's submissions or communications to the EPA, regulators, scientists and consultants.

3
PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION *IN LIMINE* NO. 13 RE LOBBYING ACTIVITY
AND GENERATION OF SUPPORT FOR REGISTRATION OF GLYPHOSATE

The evidence in the *Johnson*, the very same evidence that Plaintiffs intend to present to this Court, was sufficient to go to a jury to show that Monsanto has "continuously sought to influence the scientific literature to prevent its internal concerns from reaching the public sphere and to bolster its defenses in product liability actions." Order denying Def's Summ. Judg. (May 17, 2018) ("Order, Summ. Judg.") at 45. (Exhibit 1). All of this evidence is relevant to Monsanto's knowledge of glyphosate's risks and whether Monsanto acted as a reasonable manufacturer in failing to warn of the risks associated with GHB's.

Monsanto relies on *Weit v. Continental Illinois Nat. Bank & Tr. Co. of Chicago*, 641 F. 2d 457 (7th Cir. 1981) and *U.S. Football League v. Nat'l Football. League*, 634 F. Supp. 1155 (S.D.N.Y. 1986), to support its arguments that evidence of lobbying and "generation of support" for glyphosate should be excluded. Neither of these antitrust cases support Monsanto's position. Indeed, both *Weit* and *U.S. Football League* support the principle that lobbying activities should be admitted when any prejudice to defendants is not substantially outweighed by the probative value of the evidence.

In *Weit*, plaintiffs alleged that five banks entered into a price-fixing conspiracy in violation of the Sherman Act. 641 F. 2d at 458. Plaintiffs' argued that evidence of defendant's lobbying activity was relevant to the question of whether the banks conspired to fix interest rates as "the banks would not have worked together in lobbying for passage of a bill in the legislature unless they had implicitly agreed on an interest rate as well." *Id*. at 466. The Seventh Circuit affirmed the exclusion of lobbying activity as it was likely that an unskilled jury would conclude that the passage of a law favorable to the banks was the product of an unlawful conspiracy. *Id*. at 467. As there was no other evidence of a conspiracy, the focus of the jury's attention to lobbying would be unfairly prejudicial as it "**could easily result in a finding of antitrust liability** for engaging in the First Amendment right to petition which *Noerr-Pennington* protects." *Id*. (emphasis added).

Once again, in this case, the jury will not be asked to hold Monsanto *liable* for engaging in lobbying or other activities relating to the registration of glyphosate. In *Weit*, the court found that

4

PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION *IN LIMINE* NO. 13 RE LOBBYING ACTIVITY
AND GENERATION OF SUPPORT FOR REGISTRATION OF GLYPHOSATE

evidence of lobbying was prejudicial because the jury would more likely than not base its findings on unsupported conclusions rather than the evidence itself. Here, the prejudice that concerned the court in *Weit* would result from the *exclusion* of lobbying evidence; not the admission. If lobbying and "support garnering" evidence was excluded, the jury would likely afford undue weight to EPA's findings as they would mistakenly believe that the advisory panels and scientists reached their conclusions and opinions regarding GHBs independent of any influence by Monsanto. The Court should not permit such a one-sided presentation of the facts.

Finally, evidence of lobbying activity and generation of support for the registration of glyphosate is relevant to punitive damages. Under California law, any evidence that permits an inference that the defendant was aware of the probable dangerous consequences of its conduct and willfully and deliberately failed to avoid such consequences is relevant to show the defendant acted with conscious disregard of the safety of others. In denying Monsanto's motion for summary judgment on punitive damages, the *Johnson* Court highlighted specific evidence of Monsanto's activities that could support a jury finding of clear and convincing evidence of malice, fraud, or oppression. *See* Order Summ. Judg. at 45-46. (Exhibit 1). Much of this evidence, including Monsanto's securing of experts and ghostwriting, would arguably be subject to Monsanto's Motion to exclude evidence relating to the "generation of support for the registration of glyphosate."

## CONCLUSION

For the foregoing reasons, the Court should deny Monsanto's Motion in *limine* to exclude all evidence, argument or reference to Monsanto's lobbying activity and generation of support for the registration of glyphosate, and any argument that such activities are evidence of allegedly nefarious conduct.

Dated: 1/30/2019

Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com