# EXHIBIT P

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff (SBN 278480)
7171 W. Alaska Drive
Lakewood, CO 80226
Tel: (303) 376-6360
Fax: (303) 376-6361
Aimee.wagstaff@andruswagstaff.com

**WEITZ & LUXENBERG, P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
Tel: (212) 558-5802
Fax: (646) 293-4921
rgreenwald@weitzlux.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
mmiller@millerfirmllc.com
bbrake@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 2 TO EXCLUDE NEW GENERAL CAUSATION EXPERTS AND OPINIONS** |
| *Hardeman v. Monsanto Co., et al.,* 3:16-cv-0525-VC; *Stevick v. Monsanto Co., et al.,* 3:16-cv-02341-VC; *Gebeyehou v. Monsanto Co., et al.* 3:16-cv-5813-VC | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on February 13, 2019 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiffs will present their Motion in *Limine* to Exclude New General Causation Experts and Opinions. A supporting memorandum is filed herewith.

Dated: 1/30/2019                                    Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY  10003
Tel: (212) 558-5802

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Only Monsanto's General Causation Experts Should be Allowed to Offer  General Causation Opinions.**

Over Plaintiffs' objection, and at considerable expense, the Parties and this Court spent over two years discovering and testing the testimony, evidence, and opinions of the Parties' general causation experts.  After each side presented their general causation experts, the Court issued a 68-page *Daubert* Order setting forth the admissible general causation testimony for this MDL. *See generally* Pretrial Order No. 45.

During the October 29, 2018 hearing, it became clear that Monsanto intended to use its "specific causation" experts to proffer general causation opinions—even suggesting it may not call a single general causation expert from the general causation phase to the February trial.  The Court rejected this proposal:

> [T]he answer to that question is basically no.  You cannot add general causation experts.  If there is an emergency-type situation, if Loralei Mucci has a medical emergency or, you know, something like that, and you want to seek permission to sub somebody in to provide, you know, substantially the same testimony, I will entertain it.  I'm not saying I will grant it, but I will entertain it. But the basic answer is, no, I don't think it's appropriate, given everything we've been through already as a team, to be adding general causation experts.

Ex. 1, Tr. of Proceedings at 41:8-18 (Oct. 29, 2018).  Plaintiffs agree with the Court's guidance. If Monsanto wants to mount a challenge to general causation, then it must do so using its general causation experts proffered during the general causation stage of this MDL – as requested by Monsanto. To allow Monsanto to bring new general causation experts, who were not subjected to the *Daubert* phase of this MDL, would prejudice Plaintiffs and render the last two years meaningless.

Notwithstanding the Court's clear direction, Monsanto's new specific-causation experts offer a wide-range of new general causation opinions.  And, as discussed below, these general causation opinions regarding Roundup® form, in their entirety, the basis of their specific causation opinions.  This is improper and violates this Court's express ruling.  It also undermines the last

two years of work in this MDL. All of Monsanto's new "specific causation" experts should be prohibited from offering any general causation opinion. Plaintiffs' request includes, but is not limited to, any general causation opinions proffered in response to Plaintiffs' general causation testimony and also:

1. **Dr. Michael Grossbard, M.D.**
   - *Hardeman Report*: Strike general causation opinions on epidemiological evidence related to glyphosate, generally pages 7-8. *See* Exhibit 2.

   - *Gebeyeou Report*: Strike general causation opinions on epidemiological evidence related to glyphosate, generally pages 6-7. *See* Exhibit 3.

2. **Dr. Alexandra M. Levine, M.D., M.A.C.P.**
   - *Hardeman Report*: Strike general causation opinions on epidemiological evidence related to glyphosate, generally Section IV entitled "Roundup (Glyphosate) and NHL Epidemiology", page 9. *See* Exhibit 4.

3. **Dr. Christian Steidl, M.D.**
   - *Hardeman Report*: Strike general causation opinions on epidemiological evidence, toxicology, and mechanistic data related to glyphosate, generally Section III entitled "Assessment of Roundup as a Potential NHL Carcinogen", page 2-11. *See* Exhibit 5.

4. **Dr. Celeste Bello, M.D.**
   - *Stevick Report*: Strike general causation opinions on epidemiological evidence related to glyphosate, generally Section IV entitled "Glyphosate and NHL Epidemiology", page 9. *See* Exhibit 6.

5. **Dr. Juan Pablo Villablanca, M.D.**
   - *Stevick Report*: Strike general causation opinions on regulatory agencies and epidemiological evidence related to glyphosate, generally page 15. *See* Exhibit 7.

6. **Dr. William H. Fleming, M.D., Ph.D.**
   - *Gebeyeou Report*: Strike "Recent Literature and Supplemental Opinions," *See* Exhibit 8, Page 1. Although Dr. Fleming was proffered for general causation in Phase 1, his general causation testimony in Phase 2 should be limited to his Phase 1 expert report. As the Court recalls, PTO 34 required that "any expert who wishes to testify about the study published on November 9, 2017 in the *Journal of the National Cancer Institute* must submit a supplemental report by December 21 2017, and must submit to a further deposition, not to exceed 2.5 hours, by January 23, 2018." *See* PTO 34, ECF 761. The Study referenced in PTO 34 is *Andreotti* 2018. Dr. Fleming was already a disclosed expert when the Court issued PTO 34, and he chose not to provide a PTO 34 report on the *Andreotti* 2018 paper. Therefore, he was not subject to *Daubert* on that study, a

study Monsanto hailed as dispositive for epidemiology reliability. Plaintiffs agree that supplementing reliance lists is proper as new science develops, however, the *Andreotti 2018* paper is unique because the Court entered a specific Order regarding the supplementation of expert reports for "any expert who wishes to testify about the study."

## II.   Monsanto Should Not Be Allowed to Offer Any *New* General Causation Opinions.

Separate and apart from Monsanto proffering new general causation *experts*, it also offers new general causation *opinions* that were not proffered during the general causation phase. These new general opinions should be excluded as well.

During the general causation phase, each of Plaintiffs' general causation experts examined all three pillars of cancer science—epidemiology, animal toxicology, and mechanism—and performed a comprehensive Bradford Hill analysis and conducted a weight of evidence analysis. Monsanto, having seen this approach,[1] took a different one, electing to have its carefully-selected general causation experts focus on only one of the three pillars—epidemiology (Drs. Mucci & Ryder), animal toxicology (Drs. Foster & Rossol), and mechanism (Dr. Goodman). None of Monsanto's general causation experts considered all three areas of science and none performed—or was even willing to perform—a Bradford Hill analysis. Similarly, none performed a weight of the evidence analysis. Monsanto's experts, therefore, did not offer the ultimate conclusion that Roundup® does not cause NHL. Instead, they offered siloed opinions about each discipline—Drs. Mucci and Rider opined that that epidemiology did not support causation; Drs. Foster and Rossol opined that the animal toxicology did not support causation; and Dr. Goodman opined that Roundup® is neither genotoxic nor capable of inducing oxidative stress.

However, one of Monsanto's new "specific causation" experts, Dr. Steidl, seeks to offer opinions on all three of the pillars of science. In his Hardeman Report, Dr. Steidl offers an opinion that the epidemiological, toxicological, and mechanistic evidence considered together does not

---

[1] Plaintiffs served their general causation reports on May 1, 2017. *See* ECF 78, PTO 5. Monsanto's deadline to serve its expert reports was extended through July 31, 2017. *See* ECF 322, PTO 24. Meaning, Monsanto had a 90-day notice that Plaintiffs' experts were considering more than one pillar of science and also conducting Bradford Hill and weight of evidence analyses. Even so, Monsanto chose a different strategy with its experts.

3

support a causal relationship between exposure to GBFs and NHL. Ex. 5 Steidl Rpt. at 2, 13. He also attempts to conduct, *albeit* superficially, a Bradford Hill/weight of evidence analysis. *Id.* at 13. This is an entirely new general causation opinion, not just a new general causation expert. It is improper and violates the phased discovery process. To the extent this Court permits Dr. Steidl to offer any general causation opinion, he should not be allowed to testify about any Bradford Hill or weight of evidence opinion because those general causation opinions were not offered during the general causation phase of this MDL. Similarly, and for the same reason, Monsanto's original general causation experts should not be able to consider new pillars of science not previously considered by them or testify about any Bradford Hill or weight of evidence opinion as that would be new general causation opinions.

## III.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order granting this motion *in limine* and excluding any evidence or testimony regarding general causation from new experts and also excluding any new general causation opinions, from both new and original experts.

Dated: 1/30/2019

Respectfully submitted,

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226
Tel: (303) 376-6360

/s/ Robin Greenwald
Robin L. Greenwald
rgreenwald@weitzlux.com
Weitz & Luxenberg
700 Broadway
New York, NY 10003
Tel: (212) 558-5802

5

/s/ Michael J. Miller
Michael J. Miller (*pro hac vice*)
Brian K. Brake (*pro hac vice*)
mmiller@millerfirmllc.com
bbreake@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave.
Orange, VA  22960
Telephone: (540) 672-4224

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I certify that on January 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Aimee Wagstaff
Aimee H. Wagstaff (SBN 278480)
aimee.wagstaff@andruswagstaff.com

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M St. NW, 10ᵗʰ Floor
Washington, DC 20036
Tel:     (202) 847-4030
Fax:     (202) 847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: (202) 898-5843
Fax: (202) 682-1639

**ARNOLD & PORTER KAYE SCHOLER**
Pamela Yates (CA Bar No. 137440)
(Pamela.Yates@arnoldporter.com)
777 South Figueroa St., 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4178
Fax: (213) 243-4199

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | ) |
| *Hardeman v. Monsanto Co., et al.*, 3:16-cv-0525-VC<br>*Stevick v. Monsanto Co., et al.*, 3:16-cv-2341-VC<br>*Gebeyehou v. Monsanto Co., et al.*, 3:16-cv-5813-VC | ) ) ) ) ) ) ) ) ) |

MDL No. 2741

Case No. 3:16-md-02741-VC

**MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL CAUSATION EXPERTS AND OPINIONS**

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW
GENERAL CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiffs' motion *in limine* to exclude "new general causation experts and opinions" is a repackaged version of their *Daubert* motion to exclude Monsanto's specific causation experts and, like that motion, is based entirely on a mischaracterization of the experts' opinions.  Contrary to Plaintiffs' assertion, Monsanto's specific causation experts are not offering new general causation opinions.  Instead, the experts performed valid differential diagnoses that focused on each Plaintiff's unique medical history and circumstances.  That Monsanto's experts analyzed the existing epidemiologic studies or other evidence that might have also been considered at the general causation phase in reaching their specific causation opinion here is not improper, particularly where Plaintiffs' own experts do the same.  Indeed, Plaintiffs' experts rely on a subset of previously-considered studies in reaching their specific causation opinions, yet Plaintiffs now seek to prevent Monsanto's experts from responding by addressing the totality of the evidence.  Plaintiffs' motion should be denied.

### II.  ARGUMENT

#### A.  Monsanto's Specific Causation Experts Have Offered Admissible Differential Diagnoses, Not New General Causation Opinions.

Plaintiffs first complain that Monsanto's specific causation experts are offering improper general causation opinions.  Not so.  Each expert has offered a valid differential diagnosis that addressed in depth the specific other risk factors present for the individual Plaintiffs and the literature discussing those specific risk factors.  To take just one example, Dr. Grossbard conducted an extensive review of Mr. Hardeman's medical records, *see* Grossbard Rep. (*Hardeman*) at 3–4 (Ex. 1); explained the nature of NHL, the relevant recognized risk factors for it, and the literature supporting those risk factors, *id.* at 5–7; and then analyzed and considered several epidemiologic studies in assessing whether Roundup could be "ruled in" as an additional risk factor that somehow rises to an identifiable cause of Mr. Hardeman's cancer, *id.* at 7–8.  Ultimately, relying on his clinical judgment and assessment of the medical records and the literature, and after considering all the possible risk factors, Dr. Grossbard concluded that "[t]here is nothing peculiar or unusual about Mr. Hardeman's

---

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

DLBCL that points to Roundup as a factor in etiology. . . . There is no biomarker, test, or any diagnostic protocol that can identify Roundup as causing or contributing to the disease." *Id.* at 10. In other words, he was unable to "rule in" Roundup for Mr. Hardeman. Indeed, because Mr. Hardeman's DLBCL is not peculiar or unusual, Dr. Grossbard concluded that he could not "rule[] out" hepatitis B and C as potential contributing causes, such that the cause of Mr. Hardeman's DLBCL remains unknown (like the vast majority of NHL cases). *Id.* Likewise, Monsanto's other specific causation experts properly focused on the individual circumstances of the Plaintiffs.[1]

To be sure, Monsanto's experts did provide some analysis of the epidemiologic studies regarding Roundup, but did so in order to fairly consider the circumstances of each Plaintiff and to put into perspective why they do not believe Roundup or glyphosate are established risk factors that should be ruled in. Nothing about that approach is improper. Indeed, the Court has already recognized that "it would be impossible to have a strict delineation between the concept of general causation and the concept of specific causation." *See* 12/5 CMC Tr. at 28:20–29:7 (Ex. 7).[2] Some inquiry into the epidemiology is always necessary to answer the question that the first prong of a valid specific causation differential diagnosis poses: What is it about a particular Plaintiff that might

---

[1] *See* Levine Rep. (*Hardeman*) 12–20 (Ex. 2) (evaluating all of Mr. Hardeman's risk factors and concluding that "[t]here is nothing in Mr. Hardeman's cancer pathology that implicates Roundup, nor is there anything different or unusual about Mr. Hardeman's clinical presentation suggestive of Roundup causation"); Grossbard Rep. (*Gebeyehou*) 3–7, 9 (Ex. 3) (analyzing Mr. Gebeyehou's medical history and risk factors and concluding that "[l]ike the clear majority of NHL cases, the etiology of Mr. Gebeyehou's DLBCL is not known. There is no biomarker, test, or any diagnostic protocol which can identify Roundup as causing or contributing to the disease."); Fleming Rep. (*Gebeyehou*) 2–5 (Ex. 4) (reviewing Mr. Gebeyehou's medical history and risk factors and concluding that Roundup cannot be identified as a cause for his DLBCL); Bello Rep. (*Stevick*) 11–16 (Ex. 5) (evaluating Ms. Stevick's medical history and concluding that "[t]he cause of Ms. Stevick's CNS NHL is unknown as it is [in] the majority of cases of CNS lymphoma that I see in my hematology and oncology practice"); Villablanca Rep. (*Stevick*) 2–16 (Ex. 6) (analyzing and explaining the results of Ms. Stevick's brain scans and concluding that "[i]n [his] clinical experience, Ms. Stevick's clinical presentation was typical for patients with primary cerebral lymphoma," that "there is nothing about the imaging findings in patients who have been exposed to environmental agents versus those who have not," and that "there are no medical imaging findings that suggest or demonstrate that Roundup caused or substantially contributed to Mrs. Stevick's primary cerebral lymphoma").

[2] *See also* PTO 7 at 8 ("This Order shall not preclude the parties from designating additional experts who may offer opinions relating to general or specific causation if this MDL proceeds beyond the general-causation phase.").

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

allow the expert to reliably rule in Roundup as a cause of his or her NHL?   In answering that question, Monsanto's experts carefully considered the Plaintiffs' medical records, the nature of NHL, the recognized risk factors for NHL and the literature surrounding them, and the best available scientific evidence regarding the possibility that Roundup may also be a risk factor.   They then applied their real-world experience to that evidence and concluded that Roundup did not constitute a substantial factor in the Plaintiffs' NHL.   Those are the elements of a proper differential diagnosis, not a general causation opinion.[3]

### B.   Plaintiffs' Attack On Dr. Steidl's Report Mischaracterizes His Opinion And Ignores That Their Own Specific Cause Experts Rely On Epidemiologic Studies.

Plaintiffs also criticize Dr. Steidl for evaluating the totality of the evidence on Roundup in assessing whether it could be the cause of Mr. Hardeman's DLBCL.   Contrary to Plaintiffs' assertion, Dr. Steidl is not offering a new general causation opinion.   Like Monsanto's other specific causation experts, he focused on Mr. Hardeman's unique circumstances.   Specifically, he evaluated Mr. Hardeman's medical history, Steidl Rep. (*Hardeman*) 11–12 (Ex. 11), as well as all possible causes of his DLBCL, *id.* at 13–16.   He then considered the existing literature on those causes.   For example, he considered the literature on DLBCL and hepatitis C, which he concluded "documents a significantly elevated risk—and indeed a causal association—between [hepatitis C] and NHL."   *Id.* at 14.   Similarly, he considered the literature on hepatitis B and NHL, concluding that "[t]he scientific evidence finding that [hepatitis B] is a contributing factor to NHL and its DLBCL subtype is also compelling."   *Id.* at 16.   He also evaluated the "totality of the evidence" on glyphosate and NHL, finding it less persuasive that the evidence connecting NHL with hepatitis C and hepatitis B.   *Id.* at 13–14.   He went on to note that "[t]here is no known clinical or scientific test or procedure that can determine Roundup to have caused or contributed to Mr. Hardeman's DLBCL."   *Id.* at 14.   He ultimately concluded that "looking at Mr. Hardeman's clinical presentation and pathology, there is no

---

[3] If Plaintiffs are correct that a specific causation expert is not allowed to mention epidemiology at all, then their own experts must be stricken, since there is no dispute that they ruled in Roundup solely on the basis of their favored epidemiology studies.   *See, e.g.*, Nabhan Rep. (*Hardeman*) 5–8 (Ex. 8) (discussing epidemiology studies); Shustov Rep. (*Hardeman*) 7–9 (Ex. 9) (same); Weisenburger Rep. (*Hardeman*) 4 (Ex. 10) (discussing odds ratios from various epidemiologic studies).

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

evidence suggesting that Roundup caused or contributed to his DLBCL," and that "[t]o the extent an etiology can be identified, it is likely that [hepatitis C] and [hepatitis B] substantially contributed to Mr. Hardeman's DLBCL." *Id.* at 16. Accordingly, Dr. Steidl—like Monsanto's other specific causation experts—conducted a proper differential diagnosis.

In attacking Dr. Steidl for considering all the evidence about Roundup in reaching his opinion about Mr. Hardeman, Plaintiffs ignore that *their own experts* rely on a subset of evidence from the general causation phase in reaching their specific causation opinions. For example, Dr. Weisenburger concluded that each of the Plaintiffs was in "the high-risk category for the development of NHL" based on odds ratios that he cherry-picked from McDuffie 2001, Eriksson 2008, and an unpublished presentation of the NAPP data. *See, e.g.*, Weisenburger Rep. (*Hardeman*) 4 (Ex. 10); *see also* Weisenburger *Stevick* Dep. at 113:10–115:1 (Ex. 12) (testifying that his specific causation methodology involves "ranking" risk factors by comparing odds ratios that he plucks from epidemiologic studies that he deems "most relevant to what [he] was asked to demonstrate"). Similarly, Dr. Nabhan and Dr. Shustov ruled in Roundup for each Plaintiff using the same cherry-picked data from McDuffie 2001 and Eriksson 2008 that Dr. Weisenburger used. *See, e.g.*, Nabhan Rep. (*Hardeman*) 8 (Ex. 8); Shustov Rep. (*Hardeman*) 9 (Ex. 9).

Thus, as Plaintiffs would have it, their specific causation experts should be allowed to bring up epidemiology from the general causation phase and argue that their favored studies put these Plaintiffs in the "high risk category" for NHL sufficient to rule in Roundup, but Monsanto's specific causation experts should be precluded from responding. The Court should reject this ploy. Monsanto's experts must be allowed to rebut Plaintiffs' experts' specific causation opinions—which rule in Roundup for individual Plaintiffs by comparing their "exposure" to selective epidemiologic data—by arguing that the totality of the evidence on Roundup does not justify such an approach. *See, e.g.*, *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 418–19 (S.D.N.Y. 2016), *aff'd*, 2017 WL 4785947 (2d Cir. Oct. 24, 2017) ("pointing to the absence of convincing studies or the weaknesses of studies on which Plaintiffs rely, and evaluating them in light of their clinical experience, training and research, is . . . a logical and valid approach.").

In short, Monsanto's specific causation experts have offered proper differential diagnoses evaluating each Plaintiff's medical history, not prohibited general causation opinions. To the extent Plaintiffs are arguing that Monsanto's specific causation experts should be precluded from mentioning any evidence considered at the general causation phase, that argument cannot be reconciled with a properly administered specific causation methodology, where appropriately "ruling in" a substance is the essential first step of a differential diagnosis. That the Court has allowed Plaintiffs to proceed past general causation despite the dubious connection between Roundup and NHL hardly dictates that every expert must take that remote possibility as some kind of established scientific fact. Plaintiffs' motion should be denied.

DATED: January 30, 2019

                        Respectfully submitted,

                        /s/ *Brian L. Stekloff*

                        Brian L. Stekloff (*pro hac vice*)
                        (bstekloff@wilkinsonwalsh.com)
                        Rakesh Kilaru (*pro hac vice*)
                        (rkilaru@wilkinsonwalsh.com)
                        WILKINSON WALSH + ESKOVITZ LLP
                        2001 M St. NW, 10th Floor
                        Washington, DC 20036
                        Tel: (202) 847-4030
                        Fax: (202) 847-4005

                        Pamela Yates (CA Bar No. 137440)
                        (Pamela.Yates@arnoldporter.com)
                        ARNOLD & PORTER KAYE SCHOLER
                        777 South Figueroa St., 44th Floor
                        Los Angeles, CA 90017
                        Tel: (213) 243-4178
                        Fax: (213) 243-4199

                        Eric G. Lasker (*pro hac vice*)
                        (elasker@hollingsworthllp.com)
                        HOLLINGSWORTH LLP
                        1350 I St. NW
                        Washington, DC 20005
                        Tel: (202) 898-5843
                        Fax: (202) 682-1639

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
COVINGTON & BURLING LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: (202) 662-6000


*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL
CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January 2019, a copy of the foregoing was served via electronic mail to opposing counsel.


/s/ *Brian L. Stekloff*

MONSANTO'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEW GENERAL
CAUSATION EXPERTS AND OPINIONS
3:16-md-02741-VC & 3:16-cv-0525-VC, 3:16-cv-2341-VC, 3:16-cv-5813-VC