**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:    (202) 682-1639
Email:         jhollingsworth@hollingsworthllp.com
                  elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *Jeffrey Mason and Marianne Mason v. Monsanto Co.*, Case No. 3:20-cv-00014-VC | |

**<u>MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT FOR</u>**

**<u>DAMAGES</u>**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Jeffrey Mason and Marianne Mason's Complaint For Damages ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.1     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.1 and therefore denies those allegations.

1.2     Monsanto denies the allegations in paragraph 1.2.

1.3     Monsanto admits the allegations in paragraph 1.3.

- 1 -

1.4     In response to the allegations in paragraph 1.4, Monsanto admits that it sells Roundup®-branded products in Washington.

1.5     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.5 and therefore denies those allegations.

1.6     The allegations in paragraph 1.6 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

1.7     The allegations in paragraph 1.7 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

1.8     Monsanto admits the allegations in paragraph 1.8.

2.1     The allegations in paragraph 2.1 set forth conclusions of law for which no response is required.

2.2     The allegations in paragraph 2.2 set forth conclusions of law for which no response is required.

3.1     Monsanto admits the allegations in the first two sentences of paragraph 3.1.  In response to the last sentence of paragraph 3.1, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 3.1 and therefore denies those allegations.

3.2     In response to the allegations in paragraph 3.2, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and its affiliated companies have operations and offices in countries around the world.  Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 3.2.  Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improve a farmer's ability to control weeds.  Monsanto lacks

- 2 -

1  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

2  and statistics provided in the remaining sentences of paragraph 3.2 and therefore denies those

3  allegations.

4       3.3     In response to the allegations in the first sentence of paragraph 3.3, Monsanto

5  admits that its glyphosate products are registered in at least 130 countries and approved for use

6  on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate

7  is found at *de minimis* levels significantly below regulatory safety limits in various locations and

8  media.  Monsanto otherwise denies the remaining allegations in the second, third, and fourth

9  sentences of paragraph 3.3.  Monsanto admits the allegations in the fifth sentence of paragraph

10  3.3.  Monsanto denies the allegations in the final sentence of paragraph 3.3 to the extent they

11  suggest that IARC based its evaluation on a complete or accurate assessment of the scientific

12  research regarding glyphosate.

13       3.4     Monsanto admits the allegations in the first sentence of paragraph 3.4.  Monsanto

14  denies the allegations in the second sentence of paragraph 3.4.

15       3.5     In response to the allegations in paragraph 3.5, Monsanto admits that the IARC

16  working group classified glyphosate under Group 2A.  Monsanto denies the remaining

17  allegations in paragraph 3.5.

18       3.6     Monsanto denies the allegations in paragraph 3.6.

19       3.7     In response to paragraph 3.7, Monsanto admits that glyphosate repeatedly has

20  been found to be safe to humans and the environment by regulators in the United States and

21  around the world and further admits that it has labeled glyphosate products as approved by

22  regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly

23  has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")

24  that glyphosate-based herbicides create no unreasonable risk to human health or to the

25  environment when used in accordance with the label.  To the extent that paragraph 3.7 alleges

26  that Monsanto has labeled glyphosate-based or Roundup®-branded herbicides in any manner

27  different or in addition to such regulatory approval, Monsanto denies such allegations.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

3.8     The allegations in paragraph 3.8 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 3.8.

3.9     In response to the allegations in paragraph 3.9, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  The remaining allegations in paragraph 3.9 set forth conclusions of law for which no response is required.

3.10    The allegations in paragraph 3.10 set forth conclusions of law for which no response is required.

3.11    Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution and are registered by the State of Washington for sale and distribution.

3.12    In response to the allegations in paragraph 3.12, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 3.12 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 3.12 set forth conclusions of law for which no answer is required.

3.13    Monsanto denies the allegations in paragraph 3.13 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.13 regarding such pesticide products generally and therefore

denies those allegations.  The remaining allegations in paragraph 3.13 set forth conclusions of law for which no response is required.

      3.14    In response to the allegations in paragraph 3.14, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.14 and therefore denies those allegations.

      3.15    In response to the allegations in paragraph 3.15, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 3.15.

       3.16     In response to the allegations in paragraph 3.16, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the

allegations in paragraph 3.16 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

3.17    In response to the allegations in paragraph 3.17, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

3.18    Monsanto denies the allegations in paragraph 3.18 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 3.18 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

3.19    In response to the allegations in paragraph 3.19, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

3.20    In response to the allegations in paragraph 3.20, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 3.20 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

3.21    Monsanto denies the allegations in paragraph 3.21.

3.22    In response to the allegations in paragraph 3.22, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 3.22 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

3.23    In response to the allegations in paragraph 3.23, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 3.23 and accordingly denies those allegations.  The remaining allegations in paragraph 3.23 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

3.24    In response to the allegations in paragraph 3.24, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 3.24 and accordingly denies the same.  The remaining allegations in paragraph 3.24 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

3.25    In response to the allegations in paragraph 3.25, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 3.25 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

3.26    In response to the allegations in paragraph 3.26, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 3.26 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

3.27    Monsanto denies the allegations in paragraph 3.27.

3.28    In response to the allegations in paragraph 3.28, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 3.28 to the extent that they suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 3.28.

3.29    In response to the allegations in paragraph 3.29, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 3.29, which are not limited as of any specified date, and accordingly denies the same.

3.30    In response to the allegations in paragraph 3.30, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 3.30.

3.31    Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.31 and therefore denies those allegations.

1    3.32    Monsanto denies any suggestion that IARC reviewed the full body of scientific

2    research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

3    cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

4    a belief as to the truth of the remaining allegations in paragraph 3.32 and therefore denies those

5    allegations.

6    3.33    Monsanto denies the allegations in paragraph 3.33 to the extent that they suggest

7    that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

8    glyphosate as a Group 2A agent in March 2015.

9    3.34    In response to the allegations in paragraph 3.34, Monsanto admits that IARC

10   issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the

11   monograph was prepared by a "working group" of individuals selected by IARC who met over a

12   one week period in March 2015 to consider glyphosate along with a number of other substances.

13   Monsanto denies the allegation that all members of the working group are "experts."  Monsanto

14   denies that the working group or anyone at IARC conducted a one-year review of the scientific

15   evidence related to glyphosate or that the working group's findings reflected a comprehensive

16   review of the latest available scientific evidence.  Monsanto also denies that the working group

17   considered all information available in the scientific literature and all data from government

18   reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 3.34.

19   3.35    In response to the allegations in paragraph 3.35, Monsanto denies that the IARC

20   working group considered all of the data in the numerous studies that have been conducted

21   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

22   that it reliably considered the studies that it purports to have reviewed, which frequently reach

23   conclusions directly contrary to those espoused by the IARC working group.  To the extent the

24   allegations purport to characterize statements made in the IARC monograph for glyphosate, the

25   statements in that document stand for themselves, but Monsanto lacks information or knowledge

26   sufficient to form a belief as to the accuracy of the source of said information and accordingly

27   denies the allegations.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

3.36    The allegations in paragraph 3.36 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

3.37    In response to the allegations in paragraph 3.37, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document stand for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 3.37 are denied.

3.38    In response to the allegations in paragraph 3.38, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

3.39    Monsanto denies the allegations in paragraph 3.39.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

3.40    In response to the allegations in paragraph 3.40, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

3.41    In response to the allegations in paragraph 3.41, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 3.41.

3.42     In response to the allegations in paragraph 3.42, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 3.42.

3.43     In response to the allegations in paragraph 3.43, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 3.43.

3.44     In response to the allegations in paragraph 3.44, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 3.44.

3.45     In response to the allegations in paragraph 3.45, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 3.45.

3.46     In response to the allegations in paragraph 3.46, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

3.47     In response to the allegations in paragraph 3.47, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

1    Coalition provides any reliable basis for any conclusions regarding potential health risks from

2    glyphosate.  Monsanto notes that a federal district court has characterized this same publication

3    as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928

4    F. Supp. 2d 10, 24 (D.D.C. 2013).

5         3.48    Monsanto states that the term "toxic" as used in paragraph 3.48 is vague and

6    ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto

7    denies the allegations in paragraph 3.48.

8         3.49    In response to the allegations in paragraph 3.49, Monsanto admits that Julie Marc

9    published the cited study in 2002 and states that the document speaks for itself and does not

10   require a response.  To the extent that a response is deemed required, Monsanto denies the

11   allegations in paragraph 3.49.

12        3.50    In response to the allegations in the first sentence of paragraph 3.50, Monsanto

13   admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

14   regulation" in 2004.  To the extent that the first sentence of paragraph 3.50 characterizes the

15   meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph

16   3.50.  In response to the remaining allegations in paragraph 3.50, Monsanto states that the

17   document speaks for itself and does not require a response.  To the extent that a response is

18   deemed required, Monsanto denies the remaining allegations in paragraph 3.50.

19        3.51    In response to the allegations in paragraph 3.51, Monsanto states that the cited

20   document speaks for itself and does not require a response.  To the extent that paragraph 3.51

21   characterizes the meaning of the cited study, Monsanto denies the remaining allegations in

22   paragraph 3.51.

23        3.52    In response to the allegations in paragraph 3.52, Monsanto states that the cited

24   document speaks for itself and does not require a response.  To the extent that paragraph 3.52

25   characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies

26   support the allegation that glyphosate or Roundup®-branded products pose any risk to human

27   health and denies the remaining allegations in paragraph 3.52.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

3.53     In response to the allegations in paragraph 3.53, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 3.53.

3.54     In response to the allegations in paragraph 3.54, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 3.54.

3.55     Monsanto admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 3.55.

3.56     In response to the allegations in paragraph 3.56, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 3.56.

3.57     In response to the allegations in paragraph 3.57, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 3.57.

3.58     In response to the allegations in paragraph 3.58, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general

has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 3.58.

3.59    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.59 and therefore denies those allegations.

3.60    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.60 and therefore denies those allegations.

3.61    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.61 and therefore denies those allegations.

3.62    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.62 and therefore denies those allegations.

3.63    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.63 and therefore denies those allegations.

3.64    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.64 and therefore denies those allegations.

3.65    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.65 and therefore denies those allegations.

3.66    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.66 and therefore denies those allegations.

3.67    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.67 and therefore denies those allegations.

3.68    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.68 and therefore denies those allegations.

3.69    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.69 and therefore denies those allegations.

3.70    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.70 and therefore denies those allegations.

3.71    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.71 and therefore denies those allegations.

3.72    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.72 and therefore denies those allegations.

3.73    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.73 and therefore denies those allegations.

3.74    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.74 and therefore denies those allegations.

3.75    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.75 and therefore denies those allegations.

3.76    Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 3.76. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March, 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.76 and therefore denies those allegations.

3.77    In response to the allegations in paragraph 3.77, Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies the allegations in paragraph 3.77.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.77 and therefore denies those allegations.

4.1    Monsanto denies the allegations in paragraph 4.1.

4.2     In response to the allegations in paragraph 4.2, Monsanto admits that it has stated and continues to state that Roundup®-branded products are safe when used as labeled and that they are non-toxic and non-carcinogenic.

4.3     In response to the allegations in paragraph 4.3, Monsanto states that the cited document speaks for itself and does not require a response.

4.4     Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiff to risk of his alleged cancer and denies the remaining allegations in paragraph 4.4.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

4.5     Monsanto denies the allegations in the first and last sentences in paragraph 4.5. The remaining allegations in paragraph 4.5 set forth conclusions of law for which no response is required.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

4.6     Monsanto denies that it engaged in the "wrongdoing" alleged in the Complaint and denies that there is any reliable scientific evidence that exposure to glyphosate or Roundup®-branded products can cause cancer.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015. The remaining allegations in paragraph 4.6 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.

5.1     Monsanto incorporates by reference its responses to paragraphs 1.1 through 4.6 in response to paragraph 5.1 of plaintiffs' Complaint.

5.2     Monsanto denies the allegations in paragraph 5.2.

5.3     In response to the allegations in paragraph 5.3, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 5.3.

5.4     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.4 and therefore denies those allegations.

5.5     Monsanto denies the allegations in paragraph 5.5, including each of its subparts.

5.6     Monsanto denies the allegations in paragraph 5.6.

5.7     Monsanto incorporates by references its responses to paragraphs 1.1 through 5.6 in response to paragraph 5.7 of plaintiffs' Complaint.

5.8     Monsanto denies the allegations in paragraph 5.8.  Additionally, the last sentence in paragraph 5.8 sets forth a conclusion of law for which no response is required.

5.9     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.9 regarding plaintiff's and/or plaintiff's employers' claimed use of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 5.9 set forth conclusions of law for which no response is required.

5.10     Monsanto denies the allegations in paragraph 5.10.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

5.11     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.11 regarding plaintiff's and/or plaintiff's employers' claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 5.11 set forth conclusions of law for which no response is required.

5.12     The allegations in paragraph 5.12 set forth conclusions of law for which no response is required.

5.13     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.13 concerning plaintiff's claimed purchase of Roundup®-

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

branded products and therefore denies those allegations.  The remaining allegations in paragraph 5.13 set forth a conclusion of law for which no response is required.

5.14    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.14 and therefore those allegations.

5.15    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.15 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations.  The remaining allegations in paragraph 5.15 set forth conclusions of law for which no response is required.

5.16    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.16 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 5.16 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 5.16.

5.17    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.17 regarding plaintiff's claimed use of Roundup®-branded products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in paragraph 5.17 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

5.18    Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.18 regarding plaintiff's and/or plaintiff's employers' knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 5.18.

5.19    Monsanto denies the allegations in paragraph 5.19.

5.20    Monsanto denies the allegations in paragraph 5.20.

5.21    Monsanto denies the allegations in paragraph 5.21.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

5.22     Monsanto incorporates by references its responses to paragraphs 1.1 through 5.21 in response to paragraph 5.22 of plaintiffs' Complaint.

5.23     Monsanto denies the allegations in paragraph 5.23.

5.24     Monsanto denies the allegations in paragraph 5.24.

5.25     Monsanto denies the allegations in paragraph 5.25.

5.26     Monsanto denies the allegations in paragraph 5.26.

5.27     Monsanto denies the allegations in paragraph 5.27.

6.1     Monsanto incorporates by reference its responses to paragraphs 1.1 through 5.27 in response to paragraph 6.1 of plaintiffs' Complaint.

6.2     Monsanto denies the allegations in paragraph 6.2.

7.1     Monsanto incorporates by reference its responses to paragraphs 1.1 through 6.2 in response to paragraph 7.1 of plaintiffs' Complaint.

7.2     Monsanto denies the allegations in paragraph 7.2.

7.3     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7.3 and therefore denies those allegations.

7.4     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7.4 and therefore denies those allegations.

7.5     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7.5 and therefore denies those allegations.

7.6     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 7.6 and therefore denies those allegations.

7.7     Monsanto denies the allegations in paragraph 7.7.

7.8     Monsanto denies the allegations in paragraph 7.8.

7.9     In response to the allegations in paragraph 7.9, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

8.1     Monsanto denies the allegations in paragraph 8.1.

8.2     Monsanto denies the allegations in paragraph 8.2.

8.3     Monsanto denies the allegations in paragraph 8.3.

8.4     Monsanto denies the allegations in paragraph 8.4.

8.5     Monsanto denies the allegations in paragraph 8.5.

8.6     Monsanto denies the allegations in paragraph 8.6.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.      The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.      Venue may be improper and/or inconvenient.

3.      Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

5.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.      Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:20-cv-00014-VC

8.      Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiffs' claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

14.     If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damage resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

17.     Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiffs' claims for punitive, exemplary, and/or treble damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Oregon Constitution, the Washington Constitution, and/or other applicable state constitutions.

19.     Plaintiffs' claims for punitive, exemplary, and/or treble damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Oregon law, Washington law and/or other applicable state laws.

20.     Plaintiffs' claims for punitive, exemplary, and/or treble damages are barred and/or limited by operation of state and/or federal law, including Washington law.

21.     Plaintiffs' claims are barred in whole or in part by plaintiffs' contributory/comparative negligence.

22.     Plaintiffs' claims are barred in whole or in part by plaintiffs' failure to mitigate damages.

23.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs receive from collateral sources.

25.     If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiffs' common law claims are barred, in whole or part, by application of Wash. Rev. Code §§ 7.72.010-.060.

27.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

28.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

29.     Plaintiffs' claims are barred, in whole or in part, by plaintiffs' contributory negligence; alternatively, plaintiffs' right to recover, no fault being admitted, is diminished in an amount based upon plaintiffs' individual relative degree of fault.  Or. Rev. Stat. § 31.600.

30.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.


DATED:  January 23, 2020                         Respectfully submitted,


                                                 /s/ Joe G. Hollingsworth
                                                 Joe G. Hollingsworth (*pro hac vice*)
                                                 (jhollingsworth@hollingsworthllp.com)
                                                 Eric G. Lasker (*pro hac vice*)
                                                 (elasker@hollingsworthllp.com)
                                                 HOLLINGSWORTH LLP
                                                 1350 I Street, N.W.
                                                 Washington, DC  20005
                                                 Telephone:  (202) 898-5800
                                                 Facsimile:   (202) 682-1639

                                                 *Attorneys for Defendant*
                                                 *MONSANTO COMPANY*