1  Michael L. Baum, Esq. (SBN: 119511)
   mbaum@baumhedlundlaw.com
2  R. Brent Wisner, Esq. (SBN: 276023)
   rbwisner@baumhedlundlaw.com
3  Pedram Esfandiary (SBN: 312569)
   pesfandiary@baumhedlundlaw.com
4  **BAUM, HEDLUND, ARISTEI &**
   **GOLDMAN, P.C.**
5  10940 Wilshire Blvd., 17th Floor
   Los Angeles, CA 90024
6  Telephone:  (310) 207-3233
   Facsimile:  (310) 820-7444
7
8  *Attorneys for Plaintiffs*

9              **UNITED STATES DISTRICT COURT**
           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10                **SAN FRANCISCO DIVISION**

11
   IN RE ROUNDUP PRODUCTS LIABILITY            MDL NO. 2741
12 LITIGATION
                                               Case No. 3:16-md-02741-VC
13
   THIS DOCUMENT RELATES TO:                   Hon. Vince Chhabria
14
15 *Mary V. Olah v. Monsanto Company and*      **PLAINTIFF'S MOTION TO REMAND**
   *Orchard Supply Hardware Corporation*
16 *(3:20-cv-00129-VC)*                        [*Filed concurrently with the Declaration of*
                                               *Pedram Esfandiary, Exhibits, and Proposed*
17                                             *Order*]
18
19                                             Hearing Date:      February 27, 2020
20                                             Time:              10:00 AM
21
22 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

23         **PLEASE TAKE NOTICE THAT** beginning on February 27, 2020 at 10:00 A.M., in

24 Courtroom 4 of the United States District Court, Northern District of California, located at 450

25 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiff, Mary V. Olah

26 ("Plaintiff") will present its Motion to Remand.

27 Dated:  January 31, 2020              By:   /s/ Pedram Esfandiary

28                                       Pedram Esfandiary (SBN: 312569)
                                         pesfandiary@baumhedlundlaw.com
                                         BAUM, HEDLUND, ARISTEI, &

─────────────────────────────────────────────────────────────
                        PLAINTIFF'S MOTION TO REMAND

GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION...................................................................................................................... 1

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

I.     The Bankruptcy Court's Injunction Does Not Bar Suit Against OSH Because the Law Permits a Plaintiff to Satisfy Judgment Against a Debtor's Insurers and Other Third Parties............................ 4

II.     Under to the "Functional Approach" Adopted by Courts Within this District When Addressing the Citizenship of Dissolved Corporations, OSH's Last Principal Place of Business Was California ............................ 5

III.     OSH Is Not a "Nominal" Defendant Because OSH's Nerve Center at the Time of Dissolution Was in California and California Permits Suits Against Dissolved Corporations ............................... 8

IV.     The Court Lacks Subject-Matter Jurisdiction Pursuant to 28 U.S.C. §1334(b) Because Plaintiff's Action Does Not Have a Sufficiently "Close Nexus" to the Bankruptcy Plan and, in the Alternative, the Court Should Grant Remand on Equitable Grounds .................................. 9

V.     Monsanto Has Failed to Obtain the Requisite Consent of OSH Prior to Filing the Notice of Removal and Is Additionally in Violation of the Forum Defendant Rule .......................................... 12

VI.     By Statute, Plaintiff is Entitled to Attorneys' Fees and Costs .............................................. 13

CONCLUSION ........................................................................................................................ 14

PLAINTIFF'S MOTION TO REMAND

# TABLE OF AUTHORITIES

Page(s)

Cases

*Athena Auto., Inc. v. DiGregorio*,
  166 F.3d 288 (4th Cir. 1999) .......................................................................... 10, 11, 12

*Braco v. MCI Worldcom Commc'ns, Inc.*,
  138 F. Supp. 2d 1260 (C.D. Cal. 2001) ................................................................. 17

*California ex rel. Lockyer v. Dynegy, Inc.*,
  375 F.3d 831 (9th Cir. 2004) ................................................................................ 7

*China Basin Properties, Ltd. v. Allendale Mut. Ins. Co.*,
  818 F.Supp. 1301 (N.D.Cal.1993) ......................................................................... 10

*Citigroup, Inc. v. Pac. Inv. Mgmt. Co.*,
  296 B.R. 505 (C.D.Cal.2003) .......................................................................... 15, 16

*City of Moreno Valley, CA. v. Century-TCI CA., L.P.*,
  No. EDCV02-1387-VAP (SGLX, 2003 WL 22126450 (C.D. Cal. Mar. 21, 2003) ........................ 16

*City of Rialto v. U.S. Dep't of*,
  *Def.*, 492 F. Supp. 2d 1193 (C.D. Cal. 2007) ......................................................... 6

*Comtec, Inc. v. Nat'l Technical*,
  *Schs.*, 711 F.Supp. 522 (D.Ariz.1989) ................................................................. 10

*Forsyth v. Jones*,
  57 Cal. App. 4th 776 (1997) ................................................................................ 9

*Gaus v. Miles*,
  980 F.2d 564 (9th Cir. 1992) ................................................................................ 7

*Green v. Welsh*,
  956 F.2d 30 (2d Cir. 1992) ................................................................................ 9

*Harris v. Bankers Life and Gas Co.*,
  425 F.3d 689 (9th Cir. 2005) ................................................................................ 7

*Harris v. Black Clawson Co.*,
  961 F.2d 547 (5th Cir.1992) .......................................................................... 10, 11

*Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*,
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) ................................................................. 11

*In re ACandS, Inc.*,
  No. ADV 10-53702, 2011 WL 3471243 (Bankr. D. Del. Aug. 8, 2011) ......................... 14

*In re Beeney*,
  142 B.R. 360 (B.A.P. 9th Cir. 1992) ................................................................................ 9

*In re Fietz*,
  852 F.2d 455 (9th Cir.1988) ..................................................................................... 13

*In re Heller Ehrman LLP*,
  461 B.R. 606 (Bankr. N.D. Cal. 2011) ........................................................................ 13

*In re Jet Florida Systems, Inc.*,
  883 F.2d 970 (11th Cir.1989) ...................................................................................... 9

*In re McCarthy*,
  230 B.R. 414 (B.A.P. 9th Cir. 1999) ........................................................................... 15

*In re Nobel Grp., Inc.*,
  529 B.R. 284 (Bankr. N.D. Cal. 2015) ........................................................................ 14

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir.2005) ................................................................................. 6, 13

*In re Ray*,
  624 F.3d 1124 (9th Cir. 2010) .................................................................................... 13

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) ........................................................................................ 14

*In re The Fairchild Corp.*,
  452 B.R. 525 (Bankr. D. Del. 2011) ............................................................................ 14

*In re Valley Health Sys.*,
  584 F. App'x 477 (9th Cir. 2014) ................................................................................ 14

*In re Wilshire Courtyard*,
  729 F.3d 1279 (9th Cir. 2013) .................................................................................... 15

*Johnson v. SmithKline Beecham Corp.*,
  724 F.3d 337 (3d Cir. 2013) ....................................................................................... 13

*Jurin v. Transamerica Life Ins. Co.*,
  No. C 14-02882 LB, 2014 WL 4364901 (N.D. Cal. Sept. 3, 2014) ................................... 8

*Koch-Ash v. Superior Court*,
  180 Cal. App. 3d 689 (1986) ........................................................................................ 7

*Loewen v. McDonnell*,
  No. 19-CV-00467-YGR, 2019 WL 2364413 (N.D. Cal. June 5, 2019) ........................ 16, 17

*Lussier v. Dollar Tree Stores, Inc.*,
  518 F.3d 1062 (9th Cir. 2008) .................................................................................... 17

*Midlantic Nat'l Bank v. Hansen*,

PLAINTIFF'S MOTION TO REMAND

48 F.3d 693 (3rd Cir.1995) ............................................................................... 10

Notice ........................................................................................................ 8, 9, 12, 13

*Pacor v. Higgins,*
743 F.2d 984 (3d Cir.1984) ............................................................................. 13

*Parke v. Cardsystems Sols., Inc.,* No. C,
06-04857 WHA, 2006 WL 2917604 (N.D. Cal. Oct. 11, 2006) ................... 15, 16

*Patel v. Sugen, Inc.,*
354 F. Supp. 2d 1098 (N.D. Cal. 2005) ........................................................ 10, 11

*Penasquitos, Inc. v. Superior Court,*
53 Cal. 3d 1180 (1991) .......................................................................... 5, 6, 8, 12

*Ritchey v. Upjohn Drug Co.,*
139 F.3d 1313 (9th Cir. 1998) ........................................................................... 7

*Sellers v. Kohlberg & Co., LLC,*
No. C 01-01365 WHA, 2001 WL 761187 (N.D. Cal. June 29, 2001) .......... 10, 11

*Strotek Corp. v. Air Transp. Ass'n of Am.,*
300 F.3d 1129 (9th Cir. 2002) ......................................................................... 12

*Taylor v. Elliott Turbomachinery Co., Inc.,*
171 Cal.App.4th 564 (2009) ......................................................................... 8, 12

*Travelers Indem. Co. v. Bailey,*
557 U.S. 137 (2009) ....................................................................................... 14

*Weakly-Hoyt v. Foster,*
230 Cal. App. 4th 928 (2014) ........................................................................... 9

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*
933 F.2d 131 (2nd Cir.1991) ........................................................................... 10

Statutes

11 U.S.C.A. § 524(a)(2), (e) .............................................................................. 8

28 U.S.C. 1332(c)(1) ....................................................................................... 6, 9

28 U.S.C. section 1441(b)(2) ............................................................................ 16

28 U.S.C. §1334(b) ................................................................................... passim

28 U.S.C. § 1446(b)(2)(A) ............................................................................... 16

28 U.S.C. § 1447(c) .................................................................................... 17, 18

28 U.S.C. § 1452(b) ........................................................................................ 15

PLAINTIFF'S MOTION TO REMAND

28 USC § 1332 ................................................................................................................ 12

Cal. Code. Civ. Proc. Sec 36(b), (f) ............................................................................... 5

Cal. Code. Civ. Proc. § 36(a) ........................................................................................ 16

section 36 ................................................................................................................. 7, 16

Section 36(b) of the California Code of Civil Procedure ............................................... 5

Section 524 of the Bankruptcy Code.............................................................................. 8

Other Authorities

1958 U.S.C.C.A.N. 3099.................................................................................................. 9

3101–02 ........................................................................................................................... 9

S. Rep. No. 85–1830 ....................................................................................................... 9

PLAINTIFF'S MOTION TO REMAND

**INTRODUCTION**

Monsanto attempts to rob a 75-year-old woman who is dying of cancer from having her day in court, knowing full well that if she dies, many of her remedies die with her.  In state court, Plaintiff moved for a preference trial pursuant to the California preference statute, which entitles a plaintiff to a trial within 120 days when their health is compromised.  A few days before the hearing, however, Monsanto removed the case to this Court, asserting meritless fraudulent joinder arguments concerning the California defendant.  Monsanto knows full-well that this removal is near-frivolous.  It is a delay tactic, forcing this Court and the Plaintiff to expend time and energy dealing with a removal, all while the clock ticks away on the Plaintiff's life.  Leveraging the Plaintiff's failing health against procedural hijinks, should be loudly and summarily rejected by this Court.

Monsanto concocts a series of arguments – bereft of legal authority – to support removal. They are all unavailing.

***First***, Monsanto contends that one of the defendants in Plaintiff's action – the California-based Orchard Supply Hardware Corporation ("OSH") that retailed the Roundup products which caused Plaintiff's NHL – is fraudulently joined because OSH filed for bankruptcy in 2013 and Delaware bankruptcy court issued a routine injunction barring actions against OSH as the debtor.  However, the relevant Bankruptcy Code and supporting caselaw confirm that the issuance of a bankruptcy injunction does not preclude the determination of a debtor's liability when there is insurance.  *See* 11 U.S.C. § 524(a)(2), (e) ("discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.").  Indeed, California courts recognize that a dissolved "corporation's insolvency or bankruptcy does not release its insurer from payment for damages the corporation has caused." *Penasquitos, Inc. v. Superior Court*, 53 Cal. 3d 1180, 1194 (1991).  Accordingly, because OSH's insurers are responsible for any judgment against OSH, there is no legal barrier to Plaintiff's claims and OSH is not fraudulently joined.

***Second***, Monsanto asserts that Plaintiff has no viable cause of action against OSH (rendering OSH a fraudulently joined defendant) because Delaware law – the state where OSH was incorporated – precludes litigation against an entity that has filed a "certificate of cancellation".  However, California law governs this case, not Delaware, and under California law, a Plaintiff is permitted to

1

pursue a claim against a dissolved corporation.  In making this determination, court apply a "functional approach" to determine the appropriate law.  Here, as discussed in detail below, that approach lends support to the application of California law because, notwithstanding the 2013 bankruptcy, OSH stores were operating in California until February 2019.  The continuing effects of OSH's business in California following dissolution suffice to anchor OSH's geographical identity within California as its principal place of business, where suits against dissolved corporations are permitted and routine.

     **Third**, again relying on the 2013 dissolution, Monsanto argues that OSH is a "nominal" defendant whose California citizenship should be ignored.  With reliance on inapposite case-law Monsanto fails to address the governing principle that "dissolved corporations may be sued and parties may maintain lawsuits against dissolved corporations 'at law or in equity, in contract or tort, or of what nature soever, and ***whether begun before or after dissolution***.'" *City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1198 (C.D. Cal. 2007) (quoting *Penasquitos,* 53 Cal. 3d at1186. (emphasis added).  In other words, OSH's dissolution and insolvency are immaterial.  OSH's "nerve center" has always been in California, where OSH retailed a defective product that injured Plaintiff.  And, because California products liability law provides that retailers of defective products are strictly liable for injuries sustained by a user of the product, Plaintiff's claims against OSH are sound.

     **Fourth**, aware that its primary arguments lack merit, Monsanto attempts to refashion Plaintiff's case as one implicating central issues of OSH's bankruptcy plan in an effort to fabricate subject-matter jurisdiction pursuant to 28 U.S.C. §1334(b) (conferring original jurisdiction over civil matters "related to" Chapter 11 bankruptcy proceedings).  However, established Ninth Circuit precedent holds that when the debtor's plan is in the post-confirmation stage, there is a requirement of a "close nexus" between a plaintiff's action and the bankruptcy plan before a district court can exercise jurisdiction under §1334(b).  *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1193–94 (9th Cir.2005)).  As explained below, the requisite "close nexus" is absent here because Plaintiff's personal injury claim arose as a result of OSH's pre-confirmation conduct which has no bearing on the administration or management of the bankruptcy plan.

     All of Monsanto's arguments – particularly in light of the paltry or distinguishable authority

1   cited in support – lack an objectively reasonable basis for removing Plaintiff's case to this Court.

2   Accordingly, an award of fees and costs is warranted upon remand consistent with Section 1447(c)

3   ("An order remanding the case may require payment of just costs and any actual expenses, including

4   attorney fees, incurred as a result of the removal.").  Monsanto's last-minute gambit – a mere three

5   days before the hearing on Plaintiff's motion for trial preference –  to remove this case without an

6   objectively reasonable basis, has resulted in delay to an elderly, extremely sick Plaintiff who is

7   entitled to a speedy determination on her motion for preferential trial in state court.  *See Koch-Ash v.*

8   *Superior Court*, 180 Cal. App. 3d 689, 694 (1986) ("section 36 manifested the legislative

9   determination that the specified age of 70 conclusively demonstrates the need for a preferential trial

10  date to avoid an irrevocable loss of a qualifying plaintiff's substantive right to trial during his or her

11  lifetime and to potential recovery of damages that would not survive plaintiff's pretrial death.").

12  Accordingly, Plaintiff respectfully requests that the Court award her attorney cost and fees, and

13  remand this action back to Superior Court for the County of Alameda so that Plaintiff may avail

14  herself of the statutory right to a preferential trial before she dies.

15                                          **LEGAL STANDARD**

16          Establishing that a case is properly removed is a heavy burden.  In seeking removal of a case

17  from state court, a defendant bears the burden of proving that the case could rightfully have been filed

18  in federal court.  *California ex rel. Lockyer v. Dynegy, Inc*. 375 F.3d 831, 838 (9th Cir. 2004).  Federal

19  courts have uniformly held that the removal statutes must be construed strongly against removal

20  jurisdiction and in favor of remand.  *Harris v. Bankers Life and Gas Co*., 425 F.3d 689, 698 (9th Cir.

21  2005).  There is a presumption against removal, and doubts regarding the propriety of removing a case

22  are resolved in favor of remand.  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

23          The doctrine of "fraudulent joinder is a term of art.  If the plaintiff fails to state a cause of

24  action against a resident defendant, and the failure is ***obvious according to the settled rules of the***

25  ***state***, the joinder of the resident defendant is fraudulent."  *Ritchey v. Upjohn Drug Co*., 139 F.3d

26  1313, 1318 (9th Cir. 1998) (emphasis added).  Fraudulent joinder exists only "if, after all disputed

27  questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor,

28  the plaintiff could not possibly recover against the party whose joinder is questioned." *Jurin v.*

                                                    3
                          PLAINTIFF'S MOTION TO REMAND

1    *Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014).

2        California's products liability doctrine "provides generally that manufacturers, retailers, and

3    others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a

4    defective product." *Taylor v. Elliott Turbomachinery Co., Inc.*, 171 Cal.App.4th 564, 575 (2009). The

5    basis for imposing strict products liability on a particular defendant is that "he has marketed or

6    distributed a defective product." *Id.*

7        Moreover, California permits suits against dissolved corporations for pre-dissolution conduct.

8    *Penasquitos,* 53 Cal. 3d at 1194 ("there is no legal barrier to a suit against a dissolved corporation

9    itself for injury or damage that is caused by the corporation's pre-dissolution activities but occurs or is

10   discovered after the dissolution.").

11                              **ARGUMENT**

12   **I.      The Bankruptcy Court's Injunction Does Not Bar Suit Against OSH Because the
             Law Permits a Plaintiff to Satisfy Judgment Against a Debtor's Insurers and
13           Other Third Parties**

14       Monsanto asserts that OSH is not a viable defendant due to the issuance of an injunction by a

15   Delaware bankruptcy court precluding actions against the debtor. *See* Notice at 5-6.  This is incorrect.

16   Section 524 of the Bankruptcy Code, pursuant to which stays and injunctions precluding actions a

17   debtor are issued, provides in relevant part:

18       (a)  A discharge in a case under this title ...

19       (2) operates as an injunction against the commencement or continuation of an action ...
20       to collect, recover or offset any [discharged] debt as a personal liability of the debtor,
         whether or not the discharge of such debt is waived....
21
         (e) Except as provided in subsection (a)(3) of this section discharge of a debt of the
22       debtor ***does not affect the liability of any other entity on, or the property of any other
         entity for, such debt***.
23

24   11 U.S.C. § 524(a)(2), (e) (emphasis added).  Accordingly, "post-discharge injunction[s] affect only

25   the personal liability of the debtor; generally, they do not extend to third parties liable for the same

26   debt, such as insurers that insure against losses that are the subject of pending litigation against the

27   debtor." *Weakly-Hoyt v. Foster*, 230 Cal. App. 4th 928, 931–32 (2014) (holding that personal injury

28   claims viable against a bankrupt defendant when judgment could be satisfied by insurer); *Forsyth v.*

1   *Jones*, 57 Cal. App. 4th 776, 781 (1997) ("Since [an injunction] voids only those

2   judgments determining the debtor to be *personally* liable, 'the statutory language, on its

3   face, ***does not preclude the determination of the debtor's liability upon which the damages would be***

4   ***owed by another party***, such as the debtor's liability insurer." (quoting *In re Jet Florida Systems, Inc.*,

5   883 F.2d 970, 973 (11th Cir.1989)) (first emphasis in original, second emphasis added); *Green v.*

6   *Welsh*, 956 F.2d 30, 34 (2d Cir. 1992) ("injunction issued pursuant to debtor's discharge does not bar

7   a lawsuit against the debtor that will affect only the assets of the debtor's insurer.").  The Ninth

8   Circuit agrees: "Subsection (e) makes clear that this injunction applies only to the debtor's personal

9   liability and does not inhibit collection efforts against other entities."  *In re Beeney*, 142 B.R. 360, 362

10   (B.A.P. 9th Cir. 1992).  Accordingly, the bankruptcy court's injunction does not preclude Plaintiff

11   from recovering from OSH's insurers in the event of a judgment against OSH and, as a corollary,

12   OSH is not a fraudulently joined defendant for purposes of adjudicating diversity.

13
14
> **II.**     **Under to the "Functional Approach" Adopted by Courts Within this District When Addressing the Citizenship of Dissolved Corporations, OSH's Last Principal Place of Business Was California**

15      Moreover, Monsanto's argument that Plaintiff has no viable cause of action against OSH

16   because Delaware law precludes litigation against an entity that has filed a "certificate of cancellation"

17   is a red herring.  *See* Notice at 6-7.  Delaware law in this context is irrelevant because, prior to its

18   dissolution, OSH had its principal place of business in California and was thus considered at home in

19   California for purposes of diversity.  28 U.S.C. 1332(c)(1) states that "a corporation shall be deemed

20   to be a citizen of any State by which it has been incorporated *and* of the State where it *has* its principal

21   place of business..." (emphasis added).  In adopting such language, Congress sought to address an

22   inequity which Monsanto is attempting to perpetuate in the matter at bar, namely "the evil whereby a

23   local institution, engaged in a local business and in many cases locally owned, is enabled to bring its

24   litigation into the Federal courts simply because it has obtained a corporate charter from another

25   State."  S. Rep. No. 85–1830, at 5 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3101–02.

26      Consistent with this legislative rationale, "the Second Circuit and district courts within the

27   Ninth Circuit have focused on the conjunction 'and' as well as legislative intent to support their

28   holdings that an inactive corporation is a citizen of where 'it last transacted business.'"  *Sellers v.*

1    *Kohlberg & Co., LLC*, No. C 01-01365 WHA, 2001 WL 761187, at \*2 (N.D. Cal. June 29, 2001)

2    (Alsup, J.) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*933 F.2d 131,

3    141 (2nd Cir.1991); *China Basin Properties, Ltd. v. Allendale Mut. Ins. Co.,* 818 F.Supp. 1301, 1303–

4    05 (N.D.Cal.1993) (Armstrong, J.); *Comtec, Inc. v. Nat'l Technical Schs.,* 711 F.Supp. 522, 524–25

5    (D.Ariz.1989) (Muecke, J.)).  "These courts, thus, have concluded that the 'last business activity'

6    approach best supports legislative intent to include a principal place of business in the determination

7    of a corporation's citizenship."  *Sellers*, 2001 WL 761187 at \*2.

8         On the other hand, the Third Circuit, by focusing on the present tense verb of the statute

9    ("has") determined that "an inactive corporation was only a citizen of the state of its incorporation."

10   *Id.* (citing *Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 698 (3rd Cir.1995)).  And, taking a middle

11   path, the Fourth and Fifth Circuits have reasoned that "[a] corporation's business does not usually end

12   with the abruptness of closing its doors. Even when a corporation has ceased all operations and has

13   become inactive, the continuing impact of its business in a given locale could linger on to an extent

14   sufficient to give it a geographical identity there as its principal place of business."  *Athena Auto., Inc.*

15   *v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999); *see also Harris v. Black Clawson Co.,* 961 F.2d

16   547, 551 (5th Cir.1992).  According to these courts, "[i]f a corporation has not been inactive for a

17   *substantial amount of time*, then the…place of its last business activity would be relevant in

18   determining its principal place of business."  *Sellers*, 2001 WL 761187, at \*3 (emphasis added).  After

19   considering the merits and disadvantages of the three approaches, Judge Alsup in *Sellers* opted for the

20   "functional approach" of the Fourth and Fifth Circuits:

21         By considering the residual impact of an inactive corporation's prior business activities
           upon the locality at time of suit, the functional approach prevents a corporation that just
22         became inactive remove the suit to federal court on diversity jurisdiction. Yet, it allows
           removal for an inactive corporation with no local connections or with a past principal
23         place of business somewhere other than the place of its last activity.

24   *Id.*  Following *Sellers*, and the Ninth Circuit's silence on the issue, courts within this judicial district

25   have adopted the "functional approach" as summarized by Judge Alsup.  *See, e.g.*, *Patel v. Sugen,*

26   *Inc.*, 354 F. Supp. 2d 1098, 1112 (N.D. Cal. 2005) (J. Walker) ("Judges Alsup and Patel…[b]oth

27   concluded that 'the functional approach of the Fourth and Fifth Circuits best equips the court to carry

28   out the intent of Congress.'" (*Homestake Lead Co. of Missouri v. Doe Run Res. Corp*., 282 F. Supp.

1   2d 1131, 1137 (N.D. Cal. 2003).

2         Applying the functional approach here, OSH is a California citizen notwithstanding its

3   bankruptcy.  OSH was formed in San Jose, California in 1931, maintained its headquarters and

4   principal place of business within this judicial district, was incorporated in 1986, and had become a

5   staple California household name by the mid-1990s.[1]  Although OSH commenced dissolution

6   proceedings in 2013, it did not actually close its doors to California consumers until February 2019, a

7   mere seven months before Plaintiff filed suit in September 2019.[2]  And, "[u]nder California law, even

8   if a corporation ceases operations and is dissolved, the corporation still exists 'for the purpose

9   of…defending actions.'"  *Sellers*, 2001 WL 761187 at *4 (quoting Cal. Corp. Code Section 2010).

10   The *Sellers* court held that a company that had ceased its operations completely in 1999 still retained a

11   local character and impact some two years later.  *Id.*  Here, less than a year passed before OSH

12   officially ceased its California activity.  *See also Harris*, 961 F.2d at 551 (holding that five years

13   sufficed as substantial amount of time between cessation of activity and suit); *Athena Automotive,* 166

14   F.3d at 292–93 (holding three years to suffice as a substantial amount of time).  Similarly, in *Patel*,

15   the defendant "was operating in California at least until late 2003, when the last of its employees were

16   terminated…The instant suit was filed in state court half a year later…No case of which the court is

17   aware has held that such a short interval between a business' shutdown and the pendency of a lawsuit

18   amounts to a "substantial period of time… Nor is there serious dispute that [defendant's] actions have

19   had a continuing effect in the locale."  354 F. Supp. 2d at 1113.  Accordingly, OSH's 2013 bankruptcy

20   is of little import given that Roundup was being retailed by OSH stores in California until 2019, "the

21   impact of its business" being "sufficient to give it a geographical identity there as its principal place of

22   business."  *Athena*, 166 F.3d at 291.  Under the reading of the functional approach, OSH is a citizen of

23   California for purposes of 28 USC § 1332 and not a fraudulently joined defendant.

24

25   [1]*Orchard Supply Hardware Stores Corporation History*, available at: http://www.fundinguniverse.com/company-histories/orchard-supply-hardware-stores-corporation-

26   history/; United States Securities and Exchange Commission, Form 8-K, Orchard Supply Hardware Corporation (June 16, 2013), *available at*:

27   https://www.sec.gov/Archives/edgar/data/896842/000119312513261432/d554958d8k.htm

28   [2]Lowe's closing Orchard Supply Hardware chain it acquired out of bankruptcy
 (LA Times, August 22, 2018), available at: https://www.latimes.com/business/la-fi-osh-closure-20180822-story.html.

PLAINTIFF'S MOTION TO REMAND

III.   **OSH Is Not a "Nominal" Defendant Because OSH's Nerve Center at the Time of Dissolution Was in California and California Permits Suits Against Dissolved Corporations**

Aware that its primary bases for removal lack merit, Monsanto additionally asserts that OSH – by virtue of its dissolution – is a "nominal" defendant whose California citizenship should be ignored. *See* Notice at 8-9.  This argument is unsound.  As an initial matter, the California Supreme Court has held that "dissolved corporations may be sued and parties may maintain lawsuits against dissolved corporations 'at law or in equity, in contract or tort, or of what nature soever, and *whether begun before or after dissolution*.'" *City of Rialto,* F. Supp. 2d at 1198 (quoting *Penasquitos,* 53 Cal. 3d at 1186. (emphasis added).  Here, OSH's liability stems from retailing the Roundup products – from its California stores – which injured Plaintiff.  *See* Complaint ¶¶ 26, 111; *Taylor,* 171 Cal.App.4th at 575 (California law "provides generally that manufacturers, retailers, and others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a defective product.").  And, as explained in the preceding section, any judgment against OSH would be satisfied from its insurers as a result of the company's bankruptcy:

> Similarly, if the corporation has liability insurance coverage, its dissolution provides no reason to excuse the insurer from defending the action and indemnifying those injured by the predissolution activities of its insured, just as a corporation's insolvency or bankruptcy does not release its insurer from payment for damages the corporation has caused.

*Penasquitos,* 53 Cal. 3d at 1192 (citations omitted).  Monsanto's reliance on *Strotek Corp. v. Air Transp. Ass'n. of Am.,* 300 F.3d 1129 (9th Cir. 2002) is misplaced.  *In Strotek*, the plaintiff alleged that the defendant unincorporated trade association was a Nevada citizen whereas in actual fact the entity had re-organized, ceased operations, moved its "nerve center" to Washington D.C., accepted service of process in Washington D.C., and the new D.C. company appeared on behalf of the sued entity to defend the lawsuit.  300 F.3d at 1132, 1131 ("This turns out to be a novel issue, perhaps because it seldom happens that a plaintiff wants to proceed against an entity which has transferred all of its assets and liabilities to a successor that is ready and willing to step up to the plate.").  Similarly, *Johnson v. SmithKline Beecham Corp*., 724 F.3d 337 (3d Cir. 2013) concerned the citizenship of *unincorporated* associations which, unlike incorporated businesses, are "not recognized as a legal person" and courts instead "look to the citizenship of the people or corporations who comprise [an

1   unincorporated association] to determine if diversity jurisdiction exists. The *principal place of*

2   *business of an unincorporated entity is therefore irrelevant to determining its citizenship*." *Id*. at 348

3   (emphasis added).  Here, by contrast, OSH was incorporated in Delaware but had its headquarters and

4   principal place of business (i.e., "nerve center") in California, rendering it a California citizen that

5   remains subject to suit following dissolution.

6       **IV.    The Court Lacks Subject-Matter Jurisdiction Pursuant to 28 U.S.C. §1334(b)**

7       **Because Plaintiff's Action Does Not Have a Sufficiently "Close Nexus" to the**
        **Bankruptcy Plan and, in the Alternative, the Court Should Grant Remand on**

8       **Equitable Grounds**

9           Next, Monsanto argues that this Court has subject-matter jurisdiction pursuant to 28 U.S.C.

10  §1334(b) (conferring original jurisdiction over civil matters "related to" Chapter 11 bankruptcy

11  proceedings).  *See* Notice at 9-10.  Again, Monsanto's reading of the law is skewed.

12          In *In re Fietz*, 852 F.2d 455 (9th Cir.1988), the Ninth Circuit adopted the Third Circuit's test

13  in *Pacor v. Higgins*, 743 F.2d 984 (3d Cir.1984) for determining whether a court has "related to"

14  jurisdiction for purposes of §1334(b); the question being whether the "'outcome of [the] proceeding [ ]

15  conceivably ha[s] [an] effect on the estate being administered in bankruptcy.'"  *In Re Fietz* 852 F.2d at

16  457 (quoting *Pacor* 743 F.2d at 994).  "Since then, the Ninth Circuit has narrowed the inquiry for

17  determining jurisdiction when the action involves a post-confirmation debtor", such as the situation

18  here.  *In re Heller Ehrman LLP*, 461 B.R. 606, 608 (Bankr. N.D. Cal. 2011) (citing *In re Ray*, 624

19  F.3d 1124, 1133 (9th Cir. 2010); *In re Pegasus Gold Corp.,* 394 F.3d at 1193–94).  "The Ninth Circuit

20  applies a close nexus test to post-confirmation proceedings: 'the essential inquiry appears to be

21  whether there is a *close nexus* to the bankruptcy plan or proceeding sufficient to

22  uphold bankruptcy court jurisdiction over the matter.'"  *Id*. at 608 (quoting *In re Pegasus Gold*

23  *Corp.,* 394 F.3d at 1193-94) (emphasis added).

24          Under this restrictive standard, it cannot be said that Plaintiff's post-confirmation case against

25  one bankrupt defendant for pre-confirmation conduct bears a sufficiently "close nexus" to the

26  bankruptcy plan to trigger §1334(b) jurisdiction.  *See In re The Fairchild Corp.*, 452 B.R. 525, 531

27  (Bankr. D. Del. 2011) ("claims based on pre-petition conduct that were asserted post-confirmation, but

28  could have been brought prior to confirmation lack a nexus sufficient to confer jurisdiction upon the

bankruptcy cour; *In re Nobel Grp., Inc.,* 529 B.R. 284, 291 (Bankr. N.D. Cal. 2015) ("As a general rule, the cases where a close nexus was found involved a situation where resolution of the dispute would require the bankruptcy court to interpret or enforce a provision of the confirmed plan."). By definition, Plaintiff's personal injury action arose independently of the bankruptcy plan and does not call for a meaningful "interpretation" or "enforcement" of the plan. And, even if "the plan or plan documents must be interpreted to resolve a dispute" – which is not the case here – that "is not enough to create a close nexus to the bankruptcy and thereby confer subject matter jurisdiction over that dispute." *In re ACandS, Inc.,* No. ADV 10-53702, 2011 WL 3471243, at *5 (Bankr. D. Del. Aug. 8, 2011). As discussed above, state-court actions against bankrupt corporations are regularly maintained – notwithstanding the implementation of an injunction – given that a judgment against the debtor can be satisfied from the debtors' insurers without affecting administration of a plan. *See In re Resorts Int'l, Inc.,* 372 F.3d 154, 169 (3d Cir. 2004) (malpractice action "lack[ed] a close nexus to the bankruptcy plan or proceeding and affect[ed] only matters collateral to the bankruptcy process. The resolution…will not affect the estate…it will not interfere with the implementation of the Reorganization Plan.").[3]

_____

[3] Monsanto relies on a sleuth of distinguishable cases for its baseless argument. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) concerned actions filed against an insurance company (Travelers) as a result of its knowledge and defense of the wrongful conduct of an asbestos-manufacturer (Manville). *Id*. at 144. Prior to commencement of the actions, a bankruptcy court had approved a settlement and entered an order barring claims against "Travelers[‘] that directly or indirectly are based upon, arise out of or relate to Travelers['] insurance relationship with or Travelers['] knowledge or alleged knowledge concerning the hazards of asbestos…" *Id*. at 145. In stark contrast to the matter at bar, the precluded actions against Travelers arose from the very facts which resulted in the approval of the settlement and entering of injunction by the bankruptcy court in the first place. Here, the facts and circumstances of Plaintiff's action arose independently of OSH's bankruptcy and are not implicated by the bankruptcy plan. Moreover, in *In re Valley Health Sys.,* 584 F. App'x 477 (9th Cir. 2014), participants of a retirement plan sought a writ of mandamus following the issuance of a bankruptcy court order precluding the same retirement plan participants from any "recourse to [debtor] or to any assets of [debtor]." *Id*. at 479 ("Resolution of the mandamus petition would require a court to determine whether the confirmed bankruptcy plan discharged [retirement plan participants' claims]— whether Appellees have any 'recourse to [debtor] or to any of [its] assets.' Thus, there is a close nexus between the bankruptcy plan and the mandamus petition."). *Id*. at 479. By definition, the injunction barred specific claims by the same parties which ultimately sought the writ of mandamus. Lastly, in *In re Wilshire Courtyard*, 729 F.3d 1279 (9th Cir. 2013), a California general partnership filed for bankruptcy after defaulting on a secured debt, was re-organized into a limited liability company, was pardoned of over $200 million of partnership debt, "and the individual partners reported cancellation of debt income on their tax returns." *Id*. at 1281. Subsequently, the California Franchise Tax Board

10

1      Even if the Court were to find §1334(b) jurisdiction, it should remand the action pursuant to

2   the "equitable remand" provision of 28 U.S.C. § 1452(b) ("The court to which such claim or cause of

3   action is removed may remand such claim or cause of action on any equitable ground."); *In re*

4   *McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) ("This 'any equitable ground' remand standard is

5   an unusually broad grant of authority. It subsumes and reaches beyond all of the reasons

6   for remand under non-bankruptcy removal statutes.").

7   
8   
9   
10
>      Courts have identified the following non-exclusive list of factors as relevant to
>      determining whether to remand on equitable grounds: (1) the effect of the action on the
>      administration of the bankruptcy estate; (2) the extent to which the issues of state law
>      predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or
>      remoteness of the action to the bankruptcy case; (6) the existence of a right to jury trial;
>      and (7) prejudice to the party involuntarily removed from state court.

11  *Parke v. Cardsystems Sols., Inc.,* No. C 06-04857 WHA, 2006 WL 2917604, at *4 (N.D. Cal. Oct. 11,

12  2006).  Here, as in *Parke*, all of the factors weigh heavily in favor of equitable remand.  Similar to

13  *Parke*, Ms. Olah's action "exclusively involves issues of state law" that are completely unrelated or

14  collateral to OSH's closed bankruptcy and otherwise predominate over the bankruptcy proceedings;

15  Ms. Olah solely asserts claims under California strict products liability and negligence common law.

16  *Id.*; *see also Citigroup, Inc. v. Pac. Inv. Mgmt. Co.,* 296 B.R. 505, 509 (C.D.Cal.2003) ("[W]hen a

17  state court proceeding sounds in state law and bears a limited connection to a debtor's bankruptcy

18  case, abstention is particularly compelling.").  And, given that Ms. Olah is a California resident who

19  was injured in California from use of a product supplied by a California defendant, "'[c]omity dictates

20  that California courts should have the right to adjudicate "the exclusively state law claims involving

21  California-centric plaintiffs and California-centric transactions.'" *Parke*, 2006 WL 2917604 at *5

22  (quoting *Citigroup,* 296 B.R. at 509).  Moreover, "there is little relation between the bankruptcy

23  proceedings and plaintiff['s]…action." *Id.*  This is a personal injury action – arising out of exposure

24  "wishe[d] to assess $13 million in unpaid income taxes on the individual partners, characterizing the
25  transaction as a disguised sale and the reported cancellation of debt income as capital gains." *Id.*
    Accordingly, the reorganized LLC asked the bankruptcy court to reopen the case to protect the
26  confirmed reorganization plan from CFTB's "'collateral attack.'" *Id.*  The merits of the Franchise
    Board's action hinged on "the interpretation of the confirmed Plan", specifically a "determination of
27  the sale/non-sale attributes of the transaction requires a close look at the economics of the transaction
    as detailed in the Plan and Confirmation Order." *Id.* at 1289.  Here, by contrast, the merits of
28  Plaintiff's action against OSH are not predicated on any aspect of the bankruptcy court's post-
    confirmation order, but arise out of facts and circumstances unrelated to the plan.

to a carcinogenic chemical – against two defendants "only one of whom is a debtor." *Id*.  "Since the action is not a core proceeding, the bankruptcy judge will be required to submit proposed findings of fact and conclusions of law to a district court for *de novo* review. In other words, the case ultimately would have to be determined outside of the bankruptcy court, and thus judicial economy favors remand." *City of Moreno Valley, CA. v. Century-TCI CA., L.P.,* No. EDCV02-1387-VAP (SGLX, 2003 WL 22126450, at *3 (C.D. Cal. Mar. 21, 2003).  Importantly, Plaintiff moved for trial preference in state court pursuant to § 36 of the California Code of Civil Procedure, which affords Plaintiff the right to an expedited trial due to the precarious state of Plaintiff's health.  *See* Cal. Code. Civ. Proc. § 36(a).  Adjudication of Plaintiff's right to a preferential trial – not to mention the fact that enforcement of § 36 implicates a unique aspect of California law – militates in favor of equitable remand, and Plaintiff will be prejudiced if deprived of this right due to removal.  *See Parke*, 2006 WL 2917604 at *4 (prejudice to a party as a result of involuntary removal is one of the factors to be considered under equitable remand).

Lastly, because this Court does not have Section 1334(b) subject matter jurisdiction over any of Plaintiff's claims, the Court also lacks supplemental jurisdiction over Plaintiff's remaining claims.

### V.      Monsanto Has Failed to Obtain the Requisite Consent of OSH Prior to Filing the Notice of Removal and Is Additionally in Violation of the Forum Defendant Rule

28 U.S.C. § 1446(b)(2)(A) states: "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  As explained above, OSH is not a fraudulently joined defendant. Accordingly, Monsanto must obtain the consent of OSH prior to filing a notice of removal and, Monsanto's failure to do so, renders the instant removal defective.

Moreover, "28 U.S.C. section 1441(b)(2), provides that a case…'shall be removable *only if* none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'"  *Loewen v. McDonnell*, No. 19-CV-00467-YGR, 2019 WL 2364413, at *7 (N.D. Cal. June 5, 2019) (quoting 28 U.S.C. section 1441(b)(2)) (emphasis in original).  Given that OSH qualifies as a California citizen under the "functional approach" endorsed within this district for purposes of determining the citizenship of a dissolved corporation, and was properly joined and

served, Monsanto may not remove the case on diversity grounds pursuant to the forum defendant rule. *Id*. ("a defendant may not remove a case on diversity grounds if any defendant who is a resident of the forum state has been properly joined and served."). Plaintiff's case must be remanded on this basis alone.

## VI.     By Statute, Plaintiff is Entitled to Attorneys' Fees and Costs

Plaintiff respectfully asks the Court to award Plaintiff's fees and costs associated with bringing this motion to remand as provided by 28 U.S.C. § 1447(c). Under Section 1447(c), an award of fees and costs is discretionary and turns on whether "the removing party lacked an objectively reasonable basis for seeking removal." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). However, "[s]uch an award does not require a finding of 'bad faith,' or that the removal was 'frivolous' or 'vexatious.' Indeed, fees may be awarded even where the removal was "fairly supportable." *Braco v. MCI Worldcom Commc'ns, Inc.*, 138 F. Supp. 2d 1260, 1266 (C.D. Cal. 2001). The Court should "simply make[] an equitable determination as to whether Plaintiff should be forced to bear its own costs, or whether costs should be shifted, in whole or in part, to the Defendant." *Id*. at 1270.

Here, fees and costs are particularly warranted. As discussed in the preceding sections, California law is unequivocal on the question of whether an action may be pursued against dissolved corporations, and a plain reading of the relevant section of the Bankruptcy Code – confirmed by decades of case law – is clear that the injunction issued as part of a bankruptcy plan does not preclude the liability of a debtor's insurers for a judgment against the debtor. Indeed, Monsanto's Notice is bereft of case-law to support its primary arguments, testifying to the lack of an objectively reasonable basis for removal. Monsanto was willing to go so far as to re-fashion Plaintiff's case as one predominated by bankruptcy issues when the law and posture of the instant matter clearly speak to the contrary.

Not only does Monsanto's removal lack an objectively reasonable basis, but Monsanto used this gambit to rob an elderly and sick Plaintiff – whose health is deteriorating by the day – of the opportunity to be heard on her request for a preferential trial setting. Plaintiff filed her action in September 2019 and moved the state court for a preferential trial setting on December 16, 2019. *See*

---

13

Ex. 1, Olah Preference Motion.  The matter was fully briefed and set for a hearing on January 9, 2020.  And, in the midst of briefing, Plaintiff's health took a turn for the worse and she was rushed to the hospital with severe breathing difficulties – compounding the urgency for a preferential trial date.  Ex. 2, Olah Reply in Support of Motion for Preference.   Upon receiving Plaintiff's reply in support of her motion for preferential trial wherein was detailed Plaintiff's most recent health complications, and a mere *three days* before the hearing on Plaintiff's motion, Monsanto filed its notice of removal.  This gamesmanship of the system – delaying an elderly and extremely ill Plaintiff her day in court by removing her case without an objectively reasonable basis – warrants the imposition of fees and costs as provided by Section 1447(c).  Monsanto should be dissuaded from baselessly removing the cases of sick or dying Plaintiffs eligible to apply for preferential trial settings.  Plaintiff respectfully asks the Court to exercise its discretion and award attorney fees and appropriate costs.  To that end, Plaintiff will submit a declaration outlining her fees and costs in the reply brief (with estimates about costs associated with hearing).  As it stands, Plaintiff's counsel has expended 10 hours in preparing and filing this motion—a number that will increase as between now and the hearing.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court remand the case back to the Superior Court for the County of Alameda and award fees and costs associated with the instant remand motion.  Plaintiff's statutory right to a preferential trial should not be delayed any further by Monsanto's baseless removal tactics.

Dated:  January 31, 2020

By:  /s/ Pedram Esfandiary
Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, &
GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

1

## **CERTIFICATE OF SERVICE**

2

    I, Pedram Esfandiary, hereby certify that, on January 31, 2020, I electronically filed the

3

foregoing with the Clerk for the United States District Court for the Northern District of California

4

using the CM/ECF system, which shall send electronic notification to counsel of record.

5

                       /s/ Pedram Esfandiary

6

                        Pedram Esfandiary

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO REMAND