# Plaintiff's Motion to Remand

# EXHIBIT 1

1   Pedram Esfandiary (SBN: 312569)
    pesfandiary@baumhedlund.com
2   R. Brent Wisner, Esq. (SBN: 276023)
    rbwisner@baumhedlundlaw.com
3   Michael L. Baum, Esq. (SBN: 119511)
    mbaum@baumhedlundlaw.com
4   **BAUM HEDLUND, ARISTEI, &**
    **GOLDMAN, P.C.**
5   10940 Wilshire Blvd., 17th Floor
    Los Angeles, CA 90024
6   Telephone:  (310) 207-3233
    Facsimile:  (310) 820-7444
7

8   *Attorneys for Plaintiff*

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                   **FOR THE COUNTY OF ALAMEDA**

12   COORDINATION PROCEEDING SPECIAL          JCCP NO. 4953
     TITLE (Rule 3.550)
13                                            ASSIGNED FOR ALL PURPOSES TO
     **ROUNDUP PRODUCTS CASES**              HONORABLE WINIFRED SMITH
14                                            DEPARTMENT 21
15   THIS DOCUMENT RELATES TO:               **NOTICE OF ERRATA**

16   *Olah. v. Monsanto Company, et al*., (Super. Ct.
     County of Los Angeles, Case No.
17   19STCV33093)
18

19

20

21

22

23

24

25

26

27

28

──────────────────────────────────────────────
                        NOTICE OF ERRATA

ENDORSED
FILED
ALAMEDA COUNTY

DEC 1 8 2019

CLERK OF THE SUPERIOR COURT
By
                                    Deputy

FAXED

Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlund.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
**BAUM HEDLUND, ARISTEI, &**
**GOLDMAN, P.C.**
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorneys for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550)<br><br>**ROUNDUP PRODUCTS CASES**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Olah. v. Monsanto Company, et al*., (Super. Ct. County of Los Angeles, Case No. 19STCV33093) | JCCP NO. 4953<br><br>ASSIGNED FOR ALL PURPOSES TO HONORABLE WINIFRED SMITH DEPARTMENT 21<br><br>**NOTICE OF ERRATA** |

**TO ALL PARTIES AND THEIR COUNSELS OF RECORD:**

    **PLEASE TAKE NOTICE** that on December 16, 2019, Plaintiff timely filed and served her Notice of Motion and Plaintiff's Motion for Trial Preference. Due to an inadvertent error, Plaintiff's conclusion incorrectly requests that the Court set a trial date for January 10, 2020.

    Plaintiff hereby submits a corrected version of its Motion for Trial Preference correcting the conclusion so that it properly requests to set a trial date in "**April 2020**". Attached as Exhibit "1" is a true and correct copy of the corrected Notice of Motion and Plaintiff's Motion for Trial Preference.

                         Respectfully submitted,

Dated: December 17, 2019         **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

                         Pedram Esfandiary (SBN: 312569)
                         pesfandiary@baumhedlundlaw.com
                         10940 Wilshire Blvd., 17th Floor
                         Los Angeles, CA 90024
                         Telephone: (310) 207-3233
                         Facsimile: (310) 820-7444

                         *Counsel for Plaintiff*

# EXHIBIT 1

Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlund.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
**BAUM HEDLUND, ARISTEI, &
GOLDMAN, P.C.**
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550)<br><br>**ROUNDUP PRODUCTS CASES**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Olah. v. Monsanto Company, et al*., (Super. Ct. County of Los Angeles, Case No. 19STCV33093) | JCCP NO. 4953<br><br>ASSIGNED FOR ALL PURPOSES TO HONORABLE WINIFRED SMITH DEPARTMENT 21<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR TRIAL PREFERENCE**<br><br>[*Filed concurrently with the Declaration of Pedram Esfandiary; Exhibits; Declaration of Mary V. Olah; and Proposed Order*]<br><br>Hearing Date:      January 10, 2020<br>Time:               10:00 a.m.<br>Department:         21<br>**Reservation No.:   R-2143270** |

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ........................................................................................... **i**

**TABLE OF AUTHORITIES** .................................................................................... **ii**

**NOTICE OF MOTION** ............................................................................................ **1**

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................... **2**

    I.      Introduction ........................................................................................... 2

**ARGUMENT** ............................................................................................................. **2**

    II.    Applicable Law, Interpretation, and Purpose of Section 36(a) ............ 2

    III.   Plaintiff Meets the Requirements of Section 36(a) .............................. 5

         A.      Plaintiff is 74 Years Old ........................................................... 5

         B.      Plaintiff Has a Substantial Interest In this Case Because She Has Been Diagnosed With Non-Hodgkin's Lymphoma. ...................................... 5

         C.      Plaintiff's Health is Such That Preference is Necessary to Prevent Prejudicing Her Interest In This Litigation ............................................................ 5

    IV.   The First District Court of Appeal's Decision In *Fox v. Superior Court* (2018) 21 Cal.App.5th 529 Is Controlling And Instructive .............................. 7

    V.    This Court Previously Granted A Preferential Trial Setting Pursuant To Section 36(a) For Plaintiffs in Similar Circumstances as Ms. Olah .................. 10

**CONCLUSION** ......................................................................................................... **10**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Fox v. Superior Court,*
(2018) 21 Cal.App.5th 529 ................................................................ passim

*Koch-Ash v. Superior Court*,
(1986) 180 Cal. App. 3d 689 .........................................................................4

*Looney v. Superior Court*,
(1993) 16 Cal. App. 4th 521 ..........................................................................5

*Miller v. Superior Court*,
(1990) 221 Cal. App. 3d 1200 .......................................................................3

*Rice v. Superior* Court,
(1982) 136 Cal. App. 3d 81 ...........................................................................3

*Sprowl v. Superior Court*,
(1990) 219 Cal. App. 3d 777 .........................................................................3

*Swaithes v. Superior Court*,
(1989) 212 Cal. App. 3d 1082 .......................................................................4

Statutes

Cal. Civ. Proc. Code § 36(a), (c), (e), and (f) ..............................................3

Cal. Code. Civ. Proc. § 36 (a) and (e)...........................................................2

Cal. Code. Civ. Proc. § 36(a) ................................................................ passim

Rules

Cal. R. Ct. 3.1335...................................................................................1, 2

ii

**TO ALL PARTIES AND THEIR COUNSELS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2020 at 10:00 a.m., or soon thereafter as the matter can be heard in Department 21 of this Court, The Honorable Winifred Smith presiding, located at 1221 Oak Street, third floor, Oakland, California, 94612, Plaintiff will move and hereby does respectfully move this Court for an Order granting a trial preference pursuant to Cal. Code. Civ. Proc. § 36(a) and Cal. R. Ct. 3.1335.

Plaintiff's Motion for Trial Preference is based on Cal. Code. Civ. Proc. § 36(a) and Cal. R. Ct. 3.1335 and Plaintiff respectfully requests that this Honorable Court grant Plaintiff Mary Olah a preference trial because: 1) Plaintiff was diagnosed with the blood cancer Non-Hodgkin's Lymphoma, specifically High Grade Diffuse Large B-Cell Lymphoma, as a direct result of exposure to Monsanto's Roundup herbicide; 2) Plaintiff is over the age of 70 and 3) Plaintiff's health is such that a preferential trial setting is necessary to prevent prejudicing her interest in the litigation. Because of Plaintiff's cancer and grave medical condition, if this Motion is not granted, Plaintiff will be deprived of justice because she is unlikely to survive long enough to see the day that his case goes to trial.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Pedram Esfandiary and exhibits appended thereto, the Declaration of Ms. Mary Olah, and such further evidence and argument as the Court may consider at the time of hearing of this Motion.

Respectfully submitted,

Dated: December 16, 2019        **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Counsel for Plaintiff*

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

Plaintiff Mary Olah (hereinafter "Plaintiff" or "Ms. Olah") commenced this action against Defendants on September 17, 2019.  As shown below, Ms. Olah is over the age of 70 and has been diagnosed with High Grade Diffuse Large B-Cell Lymphoma ("DLBCL").  Plaintiff is very sick and her right to a jury trial will be prejudiced if she is not granted a preferential trial setting within the next 120 days.  *See* Olah Decl. at ¶ 9; Esfandiary Decl. at ¶ 6.  Indeed, recently, due to Plaintiff's poor state of health, her doctors recommended to proceed with palliative care.  Therefore, Plaintiff respectfully requests a preferential trial setting within the next 120 days pursuant to Cal. R. Ct. 3.1335 and Cal. Code. Civ. Proc. § 36 (a) and (e).

On November 19, 2019 Plaintiff served a completed Plaintiff Fact Sheet and medical records authorizations on Defendants.  *See* Esfandiary Decl. at ¶ 4.

### ARGUMENT

## II.   Applicable Law, Interpretation, and Purpose of Section 36(a)

California Code of Civil Procedure Section 36 states in pertinent part:

(b) A party to a civil action who is over 70 years of age may petition the court for a preference, which the court shall grant if the court makes both of the following findings:

> (1) The party has a substantial interest in the action as a whole;

> (2) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation.

[…]

(c) Unless the court otherwise orders:

> (1) A party may file and serve a motion for preference supported by a declaration of the moving party that all essential parties have been served with process or have appeared;

> (2) At any time during the pendency of the action, a party who reaches 70 years of age may file and serve a motion for preference.

[…]

2

(e) Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference that is supported by a showing that satisfies the court that the interests of justice will be served by granting this preference.

(f) Upon the granting of such a motion for preference, the court shall set the matter for trial not more than 120 days from that date and there shall be no continuance beyond 120 days from the granting of the motion for preference except for physical disability of a party or a party's attorney, or upon a showing of good cause stated in the record. Any continuance shall be for no more than 15 days and no more than one continuance for physical disability may be granted to any party.

Cal. Civ. Proc. Code § 36(a), (c), (e), and (f).

California courts are in broad agreement that the language of § 36(a) "grants a mandatory and absolute right to trial preference over all other civil matters lacking such a preference; the trial court 'shall' grant the preference and has no discretion to avoid the command of section 36(a) in the interest of efficient management of the court's docket as a whole."[1]  *Miller v. Superior Court* (1990) 221 Cal. App. 3d 1200, 1204; *See also Rice v. Superior* Court (1982) 136 Cal. App. 3d 81, 84-87 (finding that the language of section 36, subdivision (a) of the Code of Civil Procedure was intended by the Legislature to be mandatory); *Sprowl v. Superior Court* (1990) 219 Cal. App. 3d 777, 781 ("section 36 is mandatory, leaving no room for such courtesy and no discretion to the court.").

Importantly,

The application of section 36, subdivision (a), does not violate the power of trial courts to regulate the order of their business. Mere inconvenience to the court or to other litigants is irrelevant. Failure to complete discovery or other pre-trial matters does not affect the absolute substantive right to trial preference for those litigants who qualify for preference under subdivision (a) of section 36. The trial court has no power to balance the differing interests of opposing litigants in applying the provision. The express legislative mandate for trial preference is a substantive public policy concern which supersedes such considerations.

---

[1] Here, there should be no concern that this case can be ready for trial within 120 days. Counsel for Monsanto, the Wilbur-Ellis entities, and Plaintiff have already brought two Roundup NHL cases to trial in an expedited manner (*Johnson v. Monsanto*, San Francisco Sup. Ct. Case No.: CGC-16-550128; *Pilliod v. Monsanto*, Alameda Sup. Ct. Case No.: RG17862702) and, at this time, Plaintiff intends to name many of the same expert witnesses that have previously testified at trial in California state court or in the federal MDL proceedings.

3

1   *Swaithes v. Superior Court* (1989) 212 Cal. App. 3d 1082, 1085–86, *modified* (Aug. 17, 1989),

2   *modified* (Aug. 23, 1989) (internal citations omitted).  "Accordingly, subdivision (a) of section 36 is

3   ***mandatory and absolute*** in its application in civil cases whenever the litigants are 70 years old."  *Id.*

4   (emphasis added) (citing *Koch-Ash v. Superior Court* (1986) 180 Cal. App. 3d 689).  Indeed, "section

5   36 manifested the legislative determination that the specified age of 70 conclusively demonstrates the

6   need for a preferential trial date to avoid an irrevocable loss of a qualifying plaintiff's substantive

7   right to trial during his or her lifetime and to potential recovery of damages that would not survive

8   plaintiff's pretrial death."  *Koch-Ash*, 180 Cal. App. 3d at 694.

9          The standard under subdivision (a), unlike under subdivision (d) (which is more specific and

10  more rigorous) does not require a physician's declaration.  To the contrary, a motion under subdivision

11  (a) may be supported by nothing more than an attorney's declaration "based upon information and

12  belief as to the medical diagnosis and prognosis of any party."  *Fox v. Superior Court* (2018) 21 Cal.

13  App. 5th 529, 534 (citing § 36.5; accord Weil & Brown, Cal. Practice Guide: Civil Procedure Before

14  Trial (The Rutter Group 2017) ¶ 12:247.1, p. 12(I)-44 (attorney declaration under section 36.5 "can

15  consist entirely of hearsay and conclusions").   This is, in part, because for those individuals diagnosed

16  with cancer:

17          the end may come quickly with little warning; years may pass with gradual, relentless
            decline before the battle is lost; or, happily, there may be sustained remission after
18          episodic periods of improvement and relapse. Anyone who has ever heard a physician
            say in these circumstances, 'we just can't predict with any certainty,' will appreciate
19          that indeterminacy is not only inherent in the situation, but is part of the challenge of
            dealing with it.
20

21  *Id.* at 535–36.  Furthermore, a showing of impending death or incapacity is not required under Section

22  36(a); rather, the analysis under Section 36(a) is more open-ended and should be liberally construed in

23  contrast with subsection (d):

24          Section 36, subdivision (a), says nothing about 'death or incapacity.' Whether there is
            'substantial medical doubt of survival ... beyond six months' is, to be sure, a matter of
25          specific concern under subdivision (d), but the relevant standard under subdivision (a)
            is more open-ended. The issue under subdivision (a) is not whether an elderly litigant
26          might die before trial or become so disabled that she might as well be absent when
            trial is called. Provided there is evidence that the party involved is over 70, all
27          subdivision (a) requires is a showing that that party's 'health ... is such that a
            preference is necessary to prevent prejudicing [her] interest in the litigation.'
28

4

> [defendant's] proposed reading of subdivision (a), requiring a showing of what
> amounts to likely unavailability for trial, sets the prejudice standard too high.

*Id*. at 534.  To be sure, "[t]he heightened clear and convincing proof standard is required for motions seeking discretionary grants of preference under subdivision (d), but ***not*** for motions seeking mandatory preference under subdivision (a)." *Id*. (emphasis added).  This reflects the underlying purpose of Section 36, which was specifically enacted to ensure that an aged plaintiff will be able to meaningfully participate in trial and be able to realize redress upon the claims asserted:

> There can be little argument that section 36 was enacted for the purpose of assuring
> that an aged or terminally ill plaintiff would be able to participate in the trial of his or
> her case and be able to realize redress upon the claim asserted. Such a preference is
> not only necessary to assure a party's peace of mind that he or she will live to see a
> particular dispute brought to resolution but it can also have substantive consequences.
> The party's presence and ability to testify in person and/or assist counsel may be
> critical to success. In addition, the nature of the ultimate recovery can be adversely
> affected by a plaintiff's death prior to judgment.

*Looney v. Superior Court* (1993) 16 Cal. App. 4th 521, 532 (emphasis added).

## III.   Plaintiff Meets the Requirements of Section 36(a)

### A.  Plaintiff is 74 Years Old

Ms. Olah is a 75-year-old individual who was diagnosed with High Grade Diffuse Large B-Cell Lymphoma.  *See* Olah Declaration at ¶ 3; Esfandiary Decl. at ¶ 6.

### B.  Plaintiff Has a Substantial Interest In this Case Because She Has Been Diagnosed With Non-Hodgkin's Lymphoma.

Ms. Olah has a substantial interest in this case because her lawsuit against Monsanto alleges that her Non-Hodgkin's Lymphoma was caused by Monsanto's Roundup product, resulting in personal injury and damages.

### C.  Plaintiff's Health is Such That Preference is Necessary to Prevent Prejudicing Her Interest In This Litigation

Ms. Olah is 75 years old and her health is such that preference is necessary to prevent prejudicing his interests in this litigation.  *See* Olah Decl. at ¶ 6-9; Esfandiary Decl. at ¶ 6.  Ms. Olah suffers from numerous health complications and has had a difficult battle with NHL that started in

2019 when she discovered a mass under her arm that led to a diagnosis of Diffuse Large B-Cell Lymphoma. *See* Olah Declaration at ¶ 3. Indeed, even before Ms. Olah's diagnosis of advanced High Grade B-Cell Lymphoma at age 74, she already suffered from (and currently continues to suffer from) morbid obesity, occasional high blood pressure, orthopnea (shortness of breath), kidney stones, acute bronchitis, and congestive heart failure. *See* Olah Declaration at ¶ 5-8. Just prior to being diagnosed with NHL, Ms. Olah suffered a stroke that left her paralyzed, was diagnosed with permanent chronic atrial fibrillation and essential hypertension and received treatment for heart failure. *See* Exh. 1, Olah Medical Records at Olah – 244-251. Ms. Olah also suffers from dyspnea which forces her to sleep on a recliner chair using two pillows. *See id.* at Olah – 79 ("able to ambulate about 10-15 before [short of breath], orthopnea where patient needs to use two pillows are night to sleep or a recliner chair[.]"); *see also id.* at Olah – 18, 20 ("Pt here today for follow up on stroke. Since the last time I saw this patient she has had ***significant problems***.") (emphasis added), 25 ("needing stronger blood pressure due to a stroke pt had during a lumpectomy surgery.").

Importantly, following her NHL diagnosis, due to "her age and ***poor performance status*** and morbid obesity, Ms. Olah's treating physicians could not initiate a regular dosage of chemotherapy and instead recommended that "main goal of management would be palliation." *Id.* at Olah – 110. (emphasis added). To be sure, Ms. Olah reports suffering from various medical complications which demonstrate the fragile state of her health, such as extreme weakness, fatigue, digestion problems, swelling in legs with accompanying pain, dizziness, skin rashes, kidney stones, acute bronchitis, and balance problems (she cannot ambulate outside without the assistance of a walker). *See* Olah Decl. at ¶ 5-8; *see also* Exh. 1, Olah Medical Records at Olah – 163 (identifying atrial fibrillation, congestive heat failure, hypertensive disorder and obesity as active problems).

In short, Ms. Olah's quality of life has been severely affected by her various medical conditions, including recent NHL diagnosis, and she is concerned that her declining health and above-described co-morbidities will mean that a preferential trial setting within the next four months is necessary to prevent prejudicing her interests in this litigation and ensure that she is able to meaningfully participate in trial. *See id.* at ¶ 9; Esfandiary Decl at ¶ 6.

//

**IV.    The First District Court of Appeal's Decision In *Fox v. Superior Court* (2018) 21 Cal.App.5th 529 Is Controlling And Instructive**

The First District Court of Appeal's decision in *Fox v. Superior Court* (2018) 21 Cal.App.5th 529 ("*Fox*") (attached as **Exhibit 2** to the Declaration of Pedram Esfandiary) is controlling and instructive here.  In *Fox*, a plaintiff in an underlying asbestos case brought a motion for trial preference pursuant to CCP § 36(a) where her counsel presented a declaration showing that she suffered from stage IV lung cancer and severe coronary artery disease, among other ailments.  21 Cal.App.5th at 535.  Ms. Fox was in partial remission and was responding to chemotherapy, but was suffering from side effects, including "whole body aches and pain, severe abdominal and bowel complications, nausea and vomiting, dehydration, drowsiness, extreme weakness and fatigue. She also suffers from 'chemo brain' or a fogginess in thought process that impairs her ability to focus, concentrate and effectively communicate." *Id*.  The trial court denied Ms. Fox's preference motion; the First District Court of Appeal found that the trial court abused its discretion and issued a peremptory writ of mandate directing the superior court to vacate its order and to grant a new order setting trial within 120 days. *Id*. at 536–537.

In vacating the trial court's order, the *Fox* Court all but disavowed the misguided idea often floated by defendants that "life expectancy" is relevant metric in considering a motion for preference brought pursuant to CCP § 36(a). It is not:

> [W]e are told, the absence of more medical details, including some indication of her "life expectancy," was relevant. If by way of opposition Metalclad had submitted, say, a photograph of 81-year-old Ms. Fox scuba-diving in the Galapagos Islands just last fall, there might be some basis to expect more medical detail, but on this record we see no genuine dispute that Ms. Fox is very sick. It is uncontroverted she suffers from stage IV lung cancer and severe coronary artery disease, among other ailments. She is undergoing chemotherapy treatment, but is in constant discomfort and has difficulty performing basic life functions. And critically, her mental state has deteriorated to a point where she becomes confused and forgetful. All told, the evidence shows that while Ms. Fox is currently able to participate in a trial, she has good reason for concern that will not be the case for much longer as her health deteriorates. In the face of this uncontroverted showing, we think it was error to deny her preference on the trial calendar. We see no basis for the ruling here other than the mistaken interpretation of section 36, subdivision (a) urged by Metalclad.

*Id.* at 535. Indeed, a plaintiff moving for trial preference pursuant to Section 36(a) need only make a showing of that section's prerequisite standards; upon such a showing, trial preference *must* be granted: "Where a party meets the requisite standard for calendar preference under subdivision (a), preference ***must*** be granted. No weighing of interests is involved." *Id.* (emphasis added). Indeed, what more could Ms. Fox have offered? The *Fox* Court clarified that Section 36(A) does *not* require a medically stricken party to make a showing that his or her life expectancy is short, nor must a stricken party provide more specifics of her or his medical condition beyond an attorney declaration:

> Beyond the proof the Foxes offered, we are hard pressed to see what more they would need to present to justify entitlement to calendar preference under subdivision (a). For those in Ms. Fox's unfortunate situation, the end may come quickly with little warning; years may pass with gradual, relentless decline before the battle is lost; or, happily, there may be sustained remission after episodic periods of improvement and relapse. Anyone who has ever heard a physician say in these circumstances, "we just can't predict with any certainty," will appreciate that indeterminacy is not only inherent in the situation, but is part of the challenge of dealing with it. We therefore agree that, on this record, the absence of more specifics about Ms. Fox's prognosis was insufficient reason to deny the Foxes' request for calendar preference. Metalclad's position to the contrary, in our view, grafts the more stringent standard of subdivision (d) onto subdivision (a) in derogation of the text and structure of the statute.

*Id.* at 535–536. The express legislative mandate for trial preference is a substantive public policy concern which "requires the granting of calendar preference to "*prevent*" prejudice to a stricken litigant's interests." *Id.* at 536 (italics in original).

Although a medically stricken party moving for trial preference pursuant to Section 36(a) need not show that her or his medical condition precisely mirrors that of Ms. Fox, the *Fox* case offers an instructive guidepost; and, in any event, Ms. Fox and Ms. Olah's medical conditions are strikingly similar, further demonstrating that Ms. Olah is entitled to a preferential trial setting. Indeed, as shown above:

1. Ms. Fox was over 70 years old; likewise, Ms. Olah is over 70 years old;

2. Ms. Fox was diagnosed with cancer and was in partial remission; Ms. Olah was diagnosed with cancer and underwent six rounds of chemotherapy and is being closely monitored;

3. Ms. Fox had significant co-morbidities, including asbestos-related pleural disease, severe coronary artery disease, and anemia; Ms. Olah likewise suffers from significant co-

morbidities, such as morbid obesity; high blood-pressure; kidney stones; and congestive heart failure;

4. Both Ms. Fox and Ms. Olah have suffered from other medical issues and significant side effects of their cancer treatment, such as:

    a.  Body aches and pains;

    b.  Extreme weakness and fatigue;

    c.  Abdominal and bowel complications;

    d.  Dizziness

Notably, as discussed in more detail above, Ms. Olah even suffers from additional complications beyond those shared with Ms. Fox.  For instance, Ms. Olah has experienced acute bronchitis; kidney stones; and congestive heart failure.  *See* Olah Decl. at ¶ 5-7.  Ms. Olah's medical complications have severely affected her quality of life, compounded by issues such as difficulty maintaining balance and needing the assistance of a cane to ambulate when outside of her home.  Indeed, both before and during her NHL diagnosis, Ms. Olah was only "able to ambulate about 10-15 steps before [shortness of breath].") Exh. 1, Olah Medical Records at Olah – 79, 38 ("Heart failure with preserved left ventricular function (HFpEF) (I50.30), Current."), 111-113 ("We will try to expedite start of chemotherapy as this appears to be a very actively and aggressively behaving lymphoma."), 4 ("the symptoms are reported as being severe. The symptoms occur daily.").

       Simply put, Ms. Olah is entitled to a preferential trial setting in order to prevent prejudice to her rights in this litigation.  The entire purpose of Section 36(a) is to protect the rights of litigants like Ms. Olah; and even if this Court were to deny Ms. Olah's motion for preference without prejudice, her ability to re-file her motion for preference would be inadequate:

> While the Foxes' ability to file a new motion gives them a remedy at law, we do not view that as adequate relief. Sure, at some future time, the Foxes could try again by filing a new motion for trial preference when Ms. Fox's condition worsens. But that option may well provide cold comfort. Subdivision (a) requires the granting of calendar preference to "prevent" prejudice to a stricken litigant's interests. (Italics added.) The idea that Ms. Fox should be made to wait to file a preference motion until she is clearly in her final days—when attendance at a trial is hardly what she should be doing—makes no sense at all.

*Fox*, 21 Cal.App.5th at 536. Therefore, Plaintiff respectfully requests that this Court grant her request for a preferential trial setting.

**V.      This Court Previously Granted A Preferential Trial Setting Pursuant To Section 36(a) For Plaintiffs in Similar Circumstances as Ms. Olah**

The Court previously granted the preference motions of four plaintiffs in this coordinated proceeding who are similarly situated to Ms. Olah for purposes of CCP Section 36(a). *See Pilliod et al. v. Monsanto*; *Caballero v. Monsanto Company*; *Cotton v. Monsanto Company*. For example, in granting Ms. Caballero's motion for trial preference, the Court noted that Section 36(a) can be satisfied with a showing that "the moving party's health is either significantly impaired or there is a reasonable medical probability that the moving party's health ***will become*** significantly impaired in the near future." Exh. 3, Order Granting Motion of Caballero for Trial Preference at 3 (emphasis added). The same standard applies here. Ms. Olah's numerous health complications demonstrate that there is a reasonable medical probability that her health will go from poor to "significantly impaired in the near future" and, as the Court of Appeal recognized, a wait-and-see approach under such circumstances is highly improper. *See Fox*, 21 Cal.App.5th at 536 ("The idea that Ms. Fox should be made to wait to file a preference motion until she is clearly in her final days—when attendance at a trial is hardly what she should be doing—makes no sense at all."). Plaintiff respectfully requests that her Motion for Trial Preference should also be granted.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for preferential trial date and set a trial date for April, 2020.

Respectfully submitted,

Dated:  December 16, 2019            **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
R. Brent Wisner (SBN: 276023)

10

rbwisner@baumhedlundlaw.com
Michael L. Baum (SBN: 119511)
mbaum@baumhedlundlaw.com
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Counsel for Plaintiff*

MOTION FOR TRIAL PREFERENCE

1

**PROOF OF SERVICE**

2

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

4

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 10940 Wilshire Blvd., 17th Floor, Los Angeles, CA 90024.

5

6

      On December 16, 2019, I served the following document(s): **NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

7

8

**[X]**    **BY ELECTRONIC TRANSFER TO CASE ANYWHERE** via the Internet pursuant to the Court's Case Management Order No. 2 Authorizing Electronic Service dated March 23, 2018.

9

10

**[ ]**    **BY ELECTRONIC SERVICE:** I caused such document(s) to be served on the above referenced individual(s) by email transmission. The address of the sending computer and the address(es) of the receiving computers are listed as:

11

12

**[X]**    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. (*Chair, Judicial Council of California only*)

13

14

15

16

**Defendant Orchard Supply Hardware:**

17

Ernesto Resurreccion
Deputy Secretary of State
Secretary of State on behalf of
Orchard Supply Hardware Corporation
1500 11th Street, 3rd Floor
Sacramento, CA 95814

18

19

20

21

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22

23

      Executed on December 16, 2019 at Los Angeles, California.

24

25

26

_____
Valeriya Adlivankina

27

28

MOTION FOR TRIAL PREFERENCE

1

# **PROOF OF SERVICE**

2

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

4

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 10940 Wilshire Blvd., 17th Floor, Los Angeles, CA 90024.

5

6

     On December 18, 2019, I served the following document(s): **NOTICE OF ERRATA** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

7

8

9

**[X]**    **BY ELECTRONIC TRANSFER TO CASE ANYWHERE** via the Internet pursuant to the Court's Case Management Order No. 2 Authorizing Electronic Service dated March 23, 2018.

10

**[ ]**    **BY ELECTRONIC SERVICE:** I caused such document(s) to be served on the above referenced individual(s) by email transmission. The address of the sending computer and the address(es) of the receiving computers are listed as:

11

12

**[X]**    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. (*Chair, Judicial Council of California only*)

13

14

15

16

**Defendant Orchard Supply Hardware:**

17

18

Ernesto Resurreccion
Deputy Secretary of State
Secretary of State on behalf of
Orchard Supply Hardware Corporation
1500 11th Street, 3rd Floor
Sacramento, CA 95814

19

20

21

22

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

     Executed on December 18, 2019 at Los Angeles, California.

25

26

                    _____

27

                    Valeriya Adlivankina

28

NOTICE OF ERRATA

1   Pedram Esfandiary (SBN: 312569)
    pesfandiary@baumhedlund.com
2   Michael L. Baum, Esq. (SBN: 119511)
    mbaum@baumhedlundlaw.com
3   R. Brent Wisner, Esq. (SBN: 276023)
    rbwisner@baumhedlundlaw.com
4   **BAUM, HEDLUND, ARISTEI &**
    **GOLDMAN, P.C.**
5   10940 Wilshire Blvd., 17th Floor
    Los Angeles, CA 90024
6   Telephone:  (310) 207-3233
    Facsimile:  (310) 820-7444
7
8   *Attorneys for Plaintiff*

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                         **COUNTY OF ALAMEDA**

11

12   COORDINATION PROCEEDING SPECIAL        JCCP NO. 4953
     TITLE (Rule 3.550)
13                                          ASSIGNED FOR ALL PURPOSES TO
     **ROUNDUP PRODUCTS CASES**            HONORABLE WINIFRED SMITH
14                                          DEPARTMENT 21

15   THIS DOCUMENT RELATES TO:             **DECLARATION OF PEDRAM**
                                           **ESFANDIARY IN SUPPORT OF**
16   *Olah. v. Monsanto Company, et al*., (Super. Ct.   **PLAINTIFF'S MOTION FOR TRIAL**
     County of Los Angeles, Case No.       **PREFERENCE**
17   19STCV33093)
                                           [*Filed concurrently with the Motion; Declaration*
18                                         *of Mary V. Olah; and Proposed Order*]

19                                         Hearing Date: January 10, 2020
20                                         Time: 10:00 a.m.
                                           Department: 21
21                                         **Reservation No.: R-2143270**

22

23

24

25

26

27

28

                                    1
                    DECLARATION OF PEDRAM ESFANDIARY

ENDORSED
FILED
ALAMEDA COUNTY

DEC 16 2019

CLERK OF THE SUPERIOR COURT
By Darrell G. Drew
                    Deputy

FAXED

1  Pedram Esfandiary (SBN: 312569)
   pesfandiary@baumhedlund.com
2  Michael L. Baum, Esq. (SBN: 119511)
   mbaum@baumhedlundlaw.com
3  R. Brent Wisner, Esq. (SBN: 276023)
   rbwisner@baumhedlundlaw.com
4  **BAUM, HEDLUND, ARISTEI &**
   **GOLDMAN, P.C.**
5  10940 Wilshire Blvd., 17th Floor
   Los Angeles, CA 90024
6  Telephone:  (310) 207-3233
   Facsimile:  (310) 820-7444
7
8  *Attorneys for Plaintiff*

9

            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                      **COUNTY OF ALAMEDA**

11

12  COORDINATION PROCEEDING SPECIAL          JCCP NO. 4953
    TITLE (Rule 3.550)
13                                            ASSIGNED FOR ALL PURPOSES TO
    **ROUNDUP PRODUCTS CASES**                HONORABLE WINIFRED SMITH
14                                            DEPARTMENT 21

15  THIS DOCUMENT RELATES TO:                 **DECLARATION OF PEDRAM**
                                              **ESFANDIARY IN SUPPORT OF**
16  *Olah. v. Monsanto Company, et al.*, (Super. Ct.   **PLAINTIFF'S MOTION FOR TRIAL**
    County of Los Angeles, Case No.          **PREFERENCE**
17  19STCV33093)
                                              [*Filed concurrently with the Motion; Declaration*
18                                            *of Mary V. Olah; and Proposed Order*]

19                                            Hearing Date: January 10, 2020
20                                            Time: 10:00 a.m.
                                              Department: 21
21                                            **Reservation No.: R-2143270**

22

23

24

25

26

27

28

                                    1
─────────────────────────────────────────────────────────────
                  DECLARATION OF PEDRAM ESFANDIARY

I, Pedram Esfandiary hereby declare as follows:

1.     I am over the age of 18 and I make the statements set for herein based upon my personal knowledge and experience. If I were called to testify, I could and would competently testify to the statements made in this Declaration.

2.     I am attorney of record for Plaintiff Ms. Mary Olah and have represented other plaintiffs in other Roundup lawsuits pending in JCCP 4953 and in other jurisdictions – namely, *Johnson v. Monsanto* (San Francisco Sup. Ct. Case No.: CGC-16- 550128) and *Pilliod v. Monsanto* (Alameda Sup. Ct. Case No.: RG17862702).

3.     I believe that Defendants have already prepared for the major thrust of their cases, i.e. general causation.  Moreover, Defendants already have tried three Roundup/non-Hodgkin's Lymphoma cases to trial and verdict.

4.     On or about November 19, 2019, Plaintiff served a completed Plaintiff Fact Sheet and medical record authorizations on Defendants.

5.     Without waiving the attorney-client privilege, I spoke with Ms. Olah in November 2019.  Ms. Olah was diagnosed with High Grade Diffuse Large B-Cell Lymphoma in May 2019.  Ms. Olah is currently experiencing health problems that I believe require her case to be tried within the next 120 days.  Specifically, Ms. Olah has experienced or is currently experiencing medical issues such as morbid obesity, kidney stones, occasional high-blood pressure, and congestive heart failure, chronic swelling of legs that ache, numbness in hands and fingers with limited functionality, extreme fatigue, body aches and pain (such as abdominal pain), and difficulty walking, as well as severe fatigue, pain and discomfort and recently suffered a stroke.  I believe that it is in Ms. Caballero's interest that this case proceed to trial within 120 days.

6.     Attached hereto as Exhibit 1 is a true and correct copy of relevant portions from Ms. Olah's medical records.

7.     Attached hereto as Exhibit 2 is a true and correct copy of the First District's decision in *Fox v. Superior Court*.

8.     Attached hereto as Exhibit 3 is a true and correct copy of this Court's Order in Caballero v. Monsanto granting Ms. Caballero's motion for trial preference.

1    I declare under penalty of perjury under the laws of the State of California that the foregoing

2  is true and correct

3

4    Executed this <u>16th day</u> of December 2019

5

6    Pedram Esfandiary

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PEDRAM ESFANDIARY

# EXHIBIT 1

# Apex Surgery- Hemet

Daniel Igwe MD
1225 E Latham Ave Ste A * Hemet, CA 92543-4423
Phone: (951)766-0374 * Fax: (951)766-0601

PATIENT:      MARY OLAH
DATE OF BIRTH:
DATE:      06/04/2019 8:00 AM
VISIT TYPE:      Office Visit

This 74 year old female returns to discuss placement of portacath

## History of Present Illness:

1. Lymphoma
2. Portacath

The symptoms began 6 months ago and generally lasts varies. The symptoms are reported as being severe. The symptoms occur daily. She states the symptoms are chronic. History of metastatic left breast cancer to the left axilla 14 yrs ago. Recent breast biopsy showed B cell lyphoma. Patient was seen by the oncologist and needs a port to be used for chemotherapy. Patient had CVA 2 weeks ago following the biopsy. Patient is on Xeralto. We will stop this 3 days prior to surgery.

## PAST MEDICAL/SURGICAL HISTORY (Detailed)

| Disease/disorder | Onset Date | Management | Date | Comments |
|---|---|---|---|---|
| | | Hysterectomy, total | | |
| Cancer, lymphoma | | | | |
| obesity | | | | |
| | | Cesarean section | | |
| | | Knee replacement | | |
| | | Breast biopsy | | |

### Family History (Detailed)

| Relationship | Family Member Name | Deceased | Age at Death | Condition | Onset Age | Cause of Death |
|---|---|---|---|---|---|---|
| Father | | Y | | | | |
| Mother | | Y | | | | |

## Social History: (Detailed)
Tobacco use status: Current non-smoker.
Smoking status: Never smoker.

ALCOHOL
There is no history of alcohol use.
CAFFEINE
The patient uses caffeine: coffee.

**Manikanda Raja MD**
Manikanda Raja MD
1701 E Florida Ave * Hemet, CA 92544-4632
Phone: (951)658-4486 * Fax: (951)925-1026

**PATIENT:**           Mary Olah
**DATE OF BIRTH:**
**DATE:**              07/05/2019 02:30 PM
**VISIT TYPE:**        Office Visit

This 74 year old female presents for follow up.

## History of Present Illness:

1. follow up

   Pt here today for follow up on stroke. Since the last time I saw this patient she has had significant problems. Patient had a lump in her axillary area and she went to have a biopsy on that. It turned out to be B-cell lymphoma. After the procedure she was told not to take the Xarelto and she ended up having a CVAwith right-sided weakness. Now she is undergoing chemotherapy for the lymphoma. She states it is all over her abdomen now and has CT scans but I do not have the reports. Patient's husband is with her. She is finished 2 rounds of chemo but she has 4 or 5 more courses every 3 weeks.

Chronic Conditions Addressed Today:

| Diagnosis Description | Code | Status | HPI Comments |
|---|---|---|---|
| Persistent atrial fibrillation | I48.1 | Chronic | |
| Morbid obesity due to excess calories | E66.01 | Chronic | |

## Vital Signs:

| Time | BP mm/Hg | Pulse /min | Resp /min | Temp F | Ht ft | Ht in | Wt lb | BMI kg/m2 | O2 Sat% | Pain Score |
|---|---|---|---|---|---|---|---|---|---|---|
| 2:28 PM | 135/67 | 73 | | | 5.0 | 2.00 | 262.00 | 47.92 | | |

## Problem List: Problem List reviewed.

| Problem Description | Onset Date | Chronic |
|---|---|---|
| Benign essential hypertension | 06/10/2019 | N |
| B-cell lymphoma (clinical) | 06/10/2019 | N |
| HTN | 12/10/2018 | N |
| Hayfever | 12/10/2018 | N |
| Persistent atrial fibrillation | 04/11/2019 | Y |
| Body mass index 40+ - severely obese | 03/13/2019 | Y |
| Permanent atrial fibrillation | 03/13/2019 | Y |
| Morbid obesity | 03/13/2019 | Y |
| Dyspnea | 03/13/2019 | Y |

## Interim History:

| Type | Reason | Management | Date | Admit | Discharge | Outcome | hospital | comment |
|---|---|---|---|---|---|---|---|---|
| hospitalization | CHF,CVA with right sided weakness | Medical | 05/16/2019 | 05/16/2019 | 05/17/2019 | | Hemet Hospital | |
| hospitalization | Left axillary | Biopsy | 05/14/2019 | | | | | |

biopsy showing
B-cell
lymphoma

## Medical/Surgical/Interim History:
Reviewed, no change.
Last detailed document date:03/11/2019.

## Family History:
Reviewed, no changes.  Last detailed document date:03/11/2019.

## Social History:  (Reviewed, updated)
Tobacco use reviewed.
The patient is right-handed.
Preferred language is English.

### EDUCATION/EMPLOYMENT/OCCUPATION
The patient has a(n) some college education.

| Employment | History | Status | Retired | Restrictions |
|---|---|---|---|---|
| | real estate broker | retired | | |

MARITAL STATUS/FAMILY/SOCIAL SUPPORT
Currently married.
CHILDREN
Has children:  2 son(s).
HOME ENVIRONMENT
Housing status is stable/permanent.
The patient lives with opposite sex spouse.
Tobacco use status: Current non-smoker.
Smoking status: Never smoker.

SMOKING STATUS

| Type | Smoking Status | Usage Per Day | Years Used | Total Pack Years |
|---|---|---|---|---|
| | Never smoker | | | |

TOBACCO CESSATION INFORMATION

| Date | Counseled By | Order | Status | Description | Code | Tobacco Cessation Information |
|---|---|---|---|---|---|---|
| 03/11/2019 | Irene Soto | Tobacco cessation counseling | completed | | | Smoking cessation education |

ALCOHOL
There is a history of alcohol use.
Type: Wine. 4 oz consumed daily.
CAFFEINE
The patient uses caffeine: coffee - 2 cups a day.
LIFESTYLE
Moderate activity level.  Never a health club member.  Exercise includes aerobic.
The patient reports there are no animals in the home.
RELIGIOUS/SPIRITUAL
Patient agrees to transfusion.
HOME ENVIRONMENT/SAFETY
The home has smoke detectors.  Carbon monoxide detector at home.
The patient has not fallen in the last year.
The home does not have radon present.

Olah, Mary ███████████████ 07/05/2019 02:30 PM 3/28

Uses seat belts.
MILITARY EXPERIENCE
Patient has no military experience.

## Advance Directives:
Reviewed

## Patient Status:
Completed with information received for patient in a summary of care record.

## Medication Reconciliation:
Medications reconciled today.

## Allergies:

| Ingredient | Reaction (Severity) | Medication Name | Comment |
|---|---|---|---|
| NO KNOWN ALLERGIES | | | |

Reviewed, no changes.

## Review of Systems:

| System | Neg/Pos | Details |
|---|---|---|
| Constitutional | Positive | Fatigue. |
| Constitutional | Negative | Change in appetite, Chills/rigors, Decreased activity, Fever, Fussiness, Generalized weakness, Increased appetite, Irritability, Lethargy, Malaise, Night sweats, Pallor, Weight gain and Weight loss. |
| Respiratory | Negative | Dyspnea, Nocturnal dyspnea and Orthopnea. |
| Cardio | Negative | Chest pain, Edema and Irregular heartbeat/palpitations. |
| GI | Positive | Decreased appetite. |
| GU | Negative | Nocturia. |
| Neuro | Negative | Syncope. |
| Psych | Negative | Insomnia. |

### Screening Summary:
The following were reviewed: tobacco use, alcohol use and caffeine use

## Physical Exam:

| Exam | Findings | Details |
|---|---|---|
| Constitutional | Normal | Well developed. |
| Respiratory | Normal | Auscultation - Normal. Effort - Normal. |
| Cardiovascular | Normal | Regular rate and rhythm. No murmurs, gallops, or rubs. |
| Extremity | Normal | No edema. |
| Neurological | * | Motor -  Mild right-sided weakness.. |
| Neurological | Normal | Memory - Normal. Hand dominance - Right-handed. |
| Psychiatric | Normal | Orientation - Oriented to time, place, person & situation. Appropriate mood and affect. |

## Completed Orders (this encounter)

| Order | Details | Side | Interpretation | Result | Region | Exp Date | Lot # |
|---|---|---|---|---|---|---|---|
| Lifestyle education regarding diet | see assessment and plan | | | | | | |
| Lifestyle | reg diet | | | | | | |

Olah, Mary ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 07/05/2019 02:30 PM 4/28

education
regarding diet
(procedure)

## Assessment/Plan:

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Persistent atrial fibrillation (I48.1), chronic. |
| | Impression | Continue on the Xarellto.. |
| | Plan Orders | She is to schedule a follow-up visit with Manikanda Raja, MD in 3-4 months. |
| | | |
| 2. | Assessment | HTN (I10), Controlled. |
| | Impression | Continue current medicines.. |
| | Plan Orders | Today's instructions / counseling include(s) Lifestyle education regarding diet (procedure). |
| | | |
| 3. | Assessment | Morbid obesity due to excess calories (E66.01), chronic. |
| | Impression | Diet advised.. |
| | | |
| 4. | Assessment | B-cell lymphoma of lymph nodes of axilla, unspecified B-cell lymphoma type (C85.14), Current. |
| | Impression | Continue with chemotherapy.. |
| | Plan Orders | CBC With Differential/Platelet to be performed, Comp. Metabolic Panel (14) to be performed, Creatine Kinase,Total,Serum to be performed, Hgb A1c with eAG Estimation to be performed, Lipid Panel to be performed, Thyroxine (T4) Free, Direct, S to be performed and TSH to be performed. |
| | | |
| 5. | Assessment | Metastasis to intestinal lymph node (C77.2), Current. |
| | Impression | See above plans.. |
| | | |
| 6. | Assessment | Hemiparesis affecting right side as late effect of cerebrovascular accident (I69.351), Current. |
| | Impression | This is from the CVA.  It is improving. Patient has home physical therapy coming out.. |
| | | |
| 7. | Assessment | Body mass index (BMI) 45.0-49.9, adult (Z68.42), Current. |
| | Impression | See above plans.. |
| | Plan Orders | Today's instructions / counseling include(s) Lifestyle education regarding diet. |

## Fall Risk Plan

The patient has not fallen in the last year.

### Patient Education:

| # | Patient Education |
|---|---|
| 1. | Body Mass Index: Care Instructions |

## Medications (Added, Continued or Stopped today):

| Start Date | Medication | Directions | Stop Date |
|---|---|---|---|
| 06/04/2019 | benazepril 20 mg-hydrochlorothiazide 25 mg tablet | take 1 tablet by oral route  every day | |
| 06/04/2019 | carvedilol 3.125 mg tablet | take 1 tablet by oral route 2 times every day with food | |
| 04/09/2019 | Lasix 40 mg tablet | take 1 tablet by oral route  every day | |
| 06/27/2019 | XARELTO 20MG        TAB | TAKE 1 TABLET BY MOUTH ONCE DAILY WITH EVENING  MEAL | |

## Counseling / Educational Factors:

Counseling / educational factors reviewed.


*Provider:*
 Raja, Manikanda  07/05/2019 3:28 PM
*Document generated by:*  Manikanda Raja MD 07/05/2019 03:28 PM


Electronically signed by Manikanda Raja MD on 07/05/2019 03:28 PM

**Manikanda Raja MD**
Scott  Roberts DO
1701 E Florida Ave  * Hemet,  CA  92544-4632
Phone: (951)658-4486 * Fax: (951)925-1026

===================================================================

**PATIENT:**            Mary Olah
**DATE OF BIRTH:**      ███████
**DATE:**               06/04/2019 09:30 AM
**VISIT TYPE:**         Office Visit

This 74 year old female presents for work in.

### History of Present Illness:

1. work in
   pt here today for work in due to needing stronger blood pressure due to a stroke pt had during a
   lumpectomy surgery x 3 wks ago

   Pt states she had a lumpectomy 3 weeks ago at HVMC, and was told to stop Xarelto prior.
   After the procedure she had a TIA.

   She reports that now she has been diagnosed with lymphoma and has to have a port placed and to
   stop the Xarelto again.
   Therefore, she needs better BP control ASAP.

   She also had a lumpectomy 13 years ago.

   She will be having a port placement next Tuesday and needs better control prior of her BP prior to
   next surgery.

Chronic Conditions Addressed Today:

| Diagnosis Description | Code | Status | HPI Comments |
|---|---|---|---|
| Persistent atrial fibrillation | I48.1 | Chronic | |

## Vital Signs:

| Time | BP mm/Hg | Pulse /min | Resp /min | Temp F | Ht ft | Ht in | Wt lb | BMI kg/m2 | O2 Sat% | Pain Score |
|---|---|---|---|---|---|---|---|---|---|---|
| 9:45 AM | 140/99 | 78 | | | 5.0 | 2.00 | 268.00 | 49.02 | | |

**Problem List:**  Problem List reviewed.

| Problem Description | Onset Date | Chronic |
|---|---|---|
| HTN | 12/10/2018 | N |
| Hayfever | 12/10/2018 | N |
| Persistent atrial fibrillation | 04/11/2019 | Y |
| Body mass index 40+ - severely obese | 03/13/2019 | Y |
| Permanent atrial fibrillation | 03/13/2019 | Y |
| Morbid obesity | 03/13/2019 | Y |
| Dyspnea | 03/13/2019 | Y |

## Medical/Surgical/Interim History:

Reviewed, no change.
Last detailed document date:03/11/2019.

Olah, Mary   ███████████████06/04/2019 09:30 AM 9/28

| 3. | Assessment | HTN (I10), Current. |
| | Impression | Continue current medicines.. |

| 4. | Assessment | Mass of left axilla (R22.32), Current. |
| | Impression | Will start the patient on Keflex 500 4 times a day ×7 days and will get an ultrasound of the left axilla.. |
| | Plan Orders | Further diagnostic evaluations ordered today include(s) ULTRASOUND EXAM CHEST WALL to be performed. |

| 5. | Assessment | Heart failure with preserved left ventricular function (HFpEF) (I50.30), Current. |
| | Impression | Hospital records reviewed, continue on the Lasix.. |

| 6. | Assessment | Body mass index (BMI) 45.0-49.9, adult (Z68.42), Current. |
| | Impression | Diet advised.. |
| | Plan Orders | Today's instructions / counseling include(s) Lifestyle education regarding diet. |

## Fall Risk Plan

The patient has not fallen in the last year.

### Patient Education:

| # | Patient Education |
| --- | --- |
| 1. | High Blood Pressure: Care Instructions |

## Medications (Added, Continued or Stopped today):

| Start Date | Medication | Directions | Stop Date |
| --- | --- | --- | --- |
| 03/11/2019 | benazepril 20 mg-hydrochlorothiazide 12.5 mg tablet | take 1 tablet by oral route  every day | |
| 04/09/2019 | Keflex 500 mg capsule | take 1 capsule by oral route 4 times every day | 04/15/2019 |
| 04/09/2019 | Lasix 40 mg tablet | take 1 tablet by oral route  every day | |
| 02/15/2019 | Xarelto 20 mg tablet | take 1 tablet by oral route  every day with the evening meal | |

## Counseling / Educational Factors:

Counseling / educational factors reviewed.

*Provider:*
Raja, Manikanda  04/09/2019 9:35 AM
*Document generated by:*  Manikanda Raja MD 04/09/2019 09:35 AM

Electronically signed by Manikanda Raja MD on 04/09/2019 09:35 AM

Facility: 05    OneContent: Generated By maja - Generated On 03/29/2019 14:36

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

| PHH History and Physical | | | | |
|---|---|---|---|---|
| **Patient:** OLAH, MARY | | **Sex:** Female | **Admission Date:** 03/14/2019 10:46 | **MR#:** 978262 |
| **Age:** 74Y | | **Room:** LOBYH | **Bed:** LOBYH-BB | **Visit#:** 100394832 |
| **Attending Physician:** CHERNYSHOV, ELVIS | **Signed By:** *ABID HUSSAIN, MD* | | **Created By:** GUNAWAN, LINDY | **Creation Date:** 03/14/2019 17:29 |

## HPI

**Chief Complaint:**     SOB

**History of Present Illness:** 74 y/o female with PMHx HTN, Afib and morbid obesity, presented to ED c/o sob x 2 months. Patient state symptoms are gradual and progressing. Associated symptoms includes persistent cough, increase DOE, able to ambulate about 10-15 steps before sob, orthopnea where patient needs to use two pillows at night or sleep on a recliner chair, and BLE swelling. Denies dyspnea while sitting down. Admits to recent viral sickness as well. Patient state seen cardiologist Dr. Dimen, a few weeks ago and had stress test and echo, state unsure of results.

ED: EKG shows A-Flutter, ST depression V5 HR 96; BNP 279; CXR shows bilateral pleural effusion and pulmonary edema. CTA unremarkable.

PMHx: HTN, Afib, morbid obesity
PSHx: Lumpectomy with 1 week of radiation, state non cancerous (2012); hysterectomy, R TKR, heel spur surgery
Meds: Benazepril-HCTZ, Xeralto
Allergies: seasonal allergy
SHx: Denies tob, social etoh, denies illicit drug use.

## PAST MEDICAL/SURGICAL HISTORY

### Full Problems

Last Verified By: VICTORIA BARRY, Scribe on 03/14/2019 14:20

### Allergies

| Allergy | Severity | Reaction |
|---|---|---|
| Statins-Hmg-Coa Reductase Inhibitors | Unknown | |

### Home Medications

| Home Med | Dose | Route | Freq | Duration | PRN | PRN Reason | Discharge Dose Due | Start Date |
|---|---|---|---|---|---|---|---|---|
| Benazepril-Hydrochlorot hiazide 20 mg-12.5 mg | 1 tablet | orally | daily | | No | | | |
| Xarelto | 20 milligram | orally | daily | | No | | | |

## FAMILY HISTORY

## SOCIAL HISTORY

### Tobacco Use

[ NAME: OLAH, MARY - MRN: 978262 - Printed: Friday, March 15, 2019 5:38:29 PM - Page 1/4]


# HEMATOLOGY
## ONCOLOGY
### SPECIALISTS

2390 E. Florida Avenue, Ste. 105
Hemet, California 92544
Tel # 951-929-1686
Fax #951-929-1653

Murrieta Office
25405 Hancock Road, Ste.211
Murrieta, Calif 92562
Tel: 951-677-9099
Fax: 951-677-9488

Los Angeles Office
1700 Cesar Chavez Ave Ste.
3500
Los Angeles, Calif. 90033
Tel. (323) 264-0430
Fax (323) 264-2354

Austin J. Ma, M.D.
Rebecca Visca, NP
Ina Planas M.D.

Susie H. Lau M.D.
Medical Director

Maria L. Hernandez
Office Manager

Rachel Fleming, R.N.

June 5, 2019

## MEDICAL ONCOLOGY FOLLOW UP

**RE:** Mary OLAH
**DOB:**
**PRIMARY CARE PHYSICIAN:** Dr. Raja

**SUBJECTIVE:** A 74-year-old female with diffuse large B-cell lymphoma for followup evaluation. Patient presents with generalized lymphadenopathy in chest, abdomen, pelvis, also right axilla, bilateral inguinal lymph node enlargement. Biopsy of left axilla mass on 05/15/2019 suspicious for lymphoma particularly diffuse large B cell lymphoma, favored, but not fully diagnostic. Because of patient's clinical findings, systemic treatment is initiated. Given her age and poor performance status and morbid obesity, dosage will be adjusted, and because of the above clinical state, main goal of management would be palliation.

Of note, is that after biopsy on 05/15/2019, of the left axilla mass, patient developed left-sided CVA with right arm and leg weakness requiring hospitalization.

Austin Ma, M.D.
Medical Oncology/Hematology

AM/sh
D: 06/05/2019
T: 06/06/2019

Olah - 110



2390 E. Florida Avenue, Ste. 105
Hemet, California 92544
Tel # 951-929-1686
Fax #951-929-1653

Murrieta Office
25405 Hancock Road, Ste.211
Murrieta, Calif 92562
Tel: 951-677-9099
Fax: 951-677-9488

Los Angeles Office
1700 Cesar Chavez Ave Ste.
3500
Los Angeles, Calif. 90033
Tel. (323) 264-0430
Fax (323) 264-2354

Austin J. Ma, M.D.
Rebecca Visca, NP
Ina Planas M.D.

Susie H. Lau M.D.
Medical Director

Maria L. Hernandez
Office Manager

Rachel Fleming, R.N.

May 28, 2019

### MEDICAL ONCOLOGY CONSULTATION

RE: Mary OLAH
DOB:
REFERRING PHYSICIAN:

**HISTORY OF PRESENT ILLNESS:** Mary Olah is a 74-year-old female with recently diagnosed lymphoma probable diffuse large B-cell. The patient presented with an axillary mass. First visit to my knowledge was April 26, 2019 where the patient presented with a mass under her arm aware for about four weeks. The patient stated that since the flu shot in October 2018, she had a sick feeling, which did not go away.

On 03/13/2019, the patient saw Dr. Lu for dyspnea on exertion after a few steps for the past one month and whereas two months ago she could walk 50-feet without getting short of breath. The patient was found to have pleural effusion and underwent thoracentesis. No info, histology was probably not sent, but we will check on that.

On 05/02/2019, the patient was seen by cardiology for preop evaluation. The note reads that she was previously seen on 02/26/2019 for atrial fibrillation. The patient was diagnosed with permanent atrial fibrillation diagnosed in 2010, chronic atrial flutter and is fully anticoagulated with Xarelto 20 mg tablets daily. An echocardiogram on 01/24/2019 describes severe LA enlargement, normal size LV and RV. Normal biventricular systolic function. LVEF 65%. Severe mitral annular calcification, mild mitral stenosis. Mild AV sclerosis. Mild concentric LVH. Treadmill stress test done in 2015 was normal. Nuclear stress test on 02/20/2019, no significant perfusion defect. Normal LV thickening and contractility. LVEF 59%. Normal LV volume and LH ratio. Normal study. The patient was assessed having no active cardiac condition based on ACCF/AHA. She has classic II risk with predicated cardiac event rate of 6% within the 30 days of surgery. Recommend checking serum troponin level 24 and 48 hours after the plan surgery.

The plan surgery was incisional biopsy of the left axillary mass. This was done on 05/15/2019. Two pieces of tissue were submitted measuring 3.0x 2.0 x 1.5 cm and 2.0 x 2.0 x 1.0 cm. Microscopic findings lymph node tissue showing diffuse proliferation of mostly necrotic lymphoid cells suspicious for monomorphic population, possible lymphoma.

**COMMENTS:** Overall the morphologic and immunophenotypic findings are diagnostic of a CD10 plus B-cell lymphoma with almost complete geographic necrosis favor to represent diffuse large B-cell lymphoma. However, given the prominent degree of necrosis many of the immunohistochemical stains do not work (most notably the nuclear ones) and cytologic features are distorted due to nuclear pyknosis, so full classification cannot be performed.

Olah - 111

OLAH, MARY
PAGE 2

High-grade B-cell lymphoma FISH panel is ordered on block 1A. To exclude the possibility of a double or triple hit lymphoma with results to be reported separately up on completion. Microscopic description immunophenotypically the malignant population is positive for CD20, BCL-2 and CD10, and negative for BCL-1, CD30, CD5 etc.

BCL-6, Pax-5, MUM-1 and cMYC are all negative on both blocks, but these are all nuclear stains, so are likely affected by the degree of necrosis, and therefore unreliable. Similarly, Kl67 shows very low proliferative index less than 1%, but this is also a nuclear stain and therefore results are also unreliable. This report demonstrates the difficulty of classifying a tissue that is mostly necrotic.

**PRESENT MEDICATIONS:**  Xarelto, losartan, furosemide 40 mg, potassium, vitamin C, vitamin D turmeric, fish oil and selenium.

**PHYSICAL EXAMINATION:** Vital Signs: Blood pressure: 150/82. Pulse: 82 and regular. Height: 5'2". Weight: 267 pounds. O2 sat on room air is 97%. Temperature: 97.1. General: The patient is well appearing, in no acute distress. She is morbidly obese. HEENT: No facial asymmetry. Neck: No palpable adenopathy in the cervical area or supraclavicular area. Palpable node in the base of the left axilla from surgical changes from recent biopsy. Very large indurated nontender fixed mass in right and left inguinal area size of the walnut. Abdomen: Could not be assessed. Extremities: No edema appreciated.

**LABORATORY DATA:** Labs from 05/09/2019, white blood count 5.0, hemoglobin 13.5, hematocrit 40.1, MCV 90, platelets 188,000, creatinine 0.96, estimated GFR 67, glucose 72, potassium 4.4, protein 6.8, lytes within normal limits, alkaline phosphatase 85, ALT 16, AST 33 and total bilirubin 0.7.

**RADIOLOGIC IMAGING:** Left breast ultrasound describes large hypoechoic mass measuring 4.6 x 4.0 x 4.0 cm in size very deep soft tissue plane of left axilary tail and demonstrates prominent vascular structures. The mass is suspicious for malignancy. Strongly advised total surgical excision of the mass. I believe the patient has had a CT of the neck, but no CT of chest, abdomen and pelvis.

**ASSESSMENT AND PLAN:**
1.  Non-Hodgkin's lymphoma consistent with diffuse large B-cell, however, pathologic diagnosis has been limited as the tissue submitted was mostly necrotic. Clinically, the patient performance status is excellent. It is unclear if she is truly having B symptoms, but she does admit occasional night sweats, but no fevers, no weight loss and no pruritus. I have discussed these findings with the patient and recommended completion of staging workup with CT of chest, abdomen and pelvis. The patient informs me that prior to the incisional biopsy, she interrupted Xarelto for a day or two after which she developed a minor stroke she states she is recovering from. With this in mind, I will not perform a bone marrow biopsy as this would require again interrupting Xarelto and it does too dangerous. The necessity for a bone marrow biopsy in a patient in woman would plan or might need a bone marrow transplant, which is not applicable to this patient. Therefore, staging will consist of CT of chest, abdomen and pelvis. We would not hold up chemo or awaiting a PET scan. The standard chemotherapy for lymphoma assuming this is diffuse large B-cell and not a more aggressive type will be Rituxan CHOP regimen, which includes anthracycline. We will not use Adriamycin in this patient, but we will substitute with etoposide, which is also a very effective regimen.

OLAH, MARY
PAGE 3

2.   CBC, CMP, beta-2 microglobulin, LDH, serum protein electrophoresis and quantitative immunoglobulins are ordered. We will plan to see the patient next week. I have referred the patient to Dr. Igwe for placement of chemoport on the right side. We will try to expedite start of chemotherapy as this appears to be a very actively and aggressively behaving lymphoma.

Carole Most, M.D.
Medical Oncology/Hematology

CM/s.k/sk
D: 05/28/2019
T: 05/29/2019

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

| PHH Anesthesia Evaluation PreOperative | | | | | |
|---|---|---|---|---|---|
| **Patient:**<br>OLAH, MARY | | **Sex:**<br>Female | **Admission Date:**<br>06/10/2019 10:39 | **MR#:**<br>978262 | |
| **Age:**<br>74Y | | **Room:**<br>SRG2 | **Bed:**<br>SRG2-I | **Visit #:**<br>100409636 | |
| **Attending Physician:**<br>IGWE, DANIEL | **Signed By:**<br>BRIAN J. JOHNSON, CRNA | | **Created By:**<br>JOHNSON, BRIAN J. | **Creation Date:**<br>06/10/2019 12:22 | |

### VITAL SIGNS:

Last Set of Vital Signs BP: 138/72   06/10/2019 11:15          Ht.          cm.   Wt.          Kg.
Pulse: 73   06/10/2019 11:15
Temp: 97.7 F   06/10/2019 11:15
Resp: 16   06/10/2019 11:15
O2 Sat: 98%(Room Air)   06/10/2019 11:15
Calculated BMI: 48.7   06/05/2019 13:14

### FULL PROBLEM LIST:

Full Problem List Last Verified By: BRIAN J. JOHNSON, CRNA on 06/10/2019 12:24

| Problem | Associated ICD-10-CM Code | Status | Onset |
|---|---|---|---|
| Atrial fibrillation | I48.91 - UNSPECIFIED ATRIAL FIBRILLATION | Active | Unknown date |
| Congestive heart failure | I50.9 - HEART FAILURE, UNSPECIFIED | Active | Unknown date |
| Hypertensive disorder | I10 - ESSENTIAL (PRIMARY) HYPERTENSION | Active | Unknown date |
| Obesity | E66.9 - OBESITY, UNSPECIFIED | Active | Unknown date |

*(Click to add problem)*

Comments:

Previous Problems      Denies
or Issue w/Anesthesia:

### ALLERGIES:

Last Verified By: CONNIE FUENTES, RN on 06/05/2019 13:23
Statins-Hmg-Coa Reductase Inhibitors(body aches)

### LAST ORAL INTAKE:

Date: 06/09/2019      Time: 0000          Nature:

### HOME MEDICATIONS:

Last Verified By: GRACE CHAILERT, RN on 06/10/2019 11:40
Allopurinol, 300 milligram orally daily
Benazepril-Hydrochlorothiazide 20 mg-12.5 mg, 1 tablet orally daily
Carvedilol, 3.125 milligram orally 2 times per day
FUROSEMiDE                         , 40 MG ORAL TWICE A DAY
Xarelto, 20 milligram orally daily

### PHYSICAL EXAM:

Constitution: Alert and oriented; Appears stated age; No acute distress; Obese
Eyes: Pupils equal round reactive to light
Head/Ears/Nose/Throat: Normocephalic atraumatic
Neck: Supple

[ NAME: OLAH, MARY - MRN: 978262 - Printed: Monday, June 10, 2019 12:26:41 PM - Page 1/2]
roxb99984crt ann

FINAL (SIGNED)

## HEMET VALLEY MEDICAL CENTER

| PHH Discharge Summary | | | |
|---|---|---|---|

| Patient:<br>OLAH, MARY | Admission Date:<br>05/16/2019 18:37 | Sex:<br>Female | MR#:<br>978262 |
|---|---|---|---|
| Age: DOB:<br>74Y | Discharge Date:<br>05/17/2019 | | Visit#:<br>100406558 |
| Attending Physician:<br>HUSSAIN, ABID | Signed By:<br>*ABID HUSSAIN, MD* | Created By:<br>PUROHIT, NARESH | Create Date:<br>05/17/2019 15:12 |

### DIAGNOSES

Admission Diagnosis(es): stroke

Primary Diagnosis: stroke

Secondary Diagnoses: HFpEF; Permanent atrial fibrillation; HTN; possible Breast CA s/p Left lumpectomy 5/15/19; Morbid Obesity



### ALLERGIES

Statins-Hmg-Coa Reductase Inhibitors

### REASON(S) FOR STAY (BRIEF HPI)

74-year-old female with underlying A. fib on Xarelto, HTN, left lumpectomy (5/15/2019) was transferred from Loma Linda Murietta for further work-up of acute CVA. Patient states that she was in her usual state of health last night (5/15/2019). Patient woke up around 6:30 AM to go to the bathroom and felt very dizzy and could not keep her balance. She described as if she was spinning. Associated with some right upper extremity and right lower extremity weakness. Patient also experienced numbness in her right lower extremity. Patient denies vision changes, headaches, nausea or vomiting, abdominal pain, dyspnea, chest pain, urinary symptoms, back pain, fevers or chills, recent illnesses, neck stiffness. Patient states she had a lumpectomy yesterday morning for which she had to stop using her Xarelto for 4 days. Patient was prescribed Levaquin and Norco 5 which she took last night before going to sleep. Patient denies similar episodes in the past or prior CVAs. Patient states she has an intolerance to statins, she gets muscle cramps exhaustion and fatigue with use.
PCP Dr. Raja. Cardiologist Dr. Dimen.

At Loma Linda Murietta, patient presented with acute right-sided upper and lower extremity weakness with facial parasthesia. CT brain, MRI brain and CTA neck were done.Chest x-ray shows mild cardiomegaly. MRI brain showed acute/subacute 1.8 cm left ophthalmic infarct and a 4 mm infarct in the right superior frontal lobe. Labs were within normal limits except BUN was slightly elevated at 31 and bicarbonate slightly diminished at 17. Cardiac enzymes are within normal limits. No evidence of urinary tract infection. Patient was given gentle IV hydration with normal saline.

PMHx: Paroxysmal A fib on Xarelto, HTN,
PSHx: Left breast lumpectomy (5/15/2019), right knee replacement, left heel spur removal, hysterectomy, C-section x2
FHx: Mother--breast CA in her 40s

### CONSULTANT(S)

Speciality: neurology                                          Name:

### SIGNIFICANT FINDINGS

Laboratory: Lab Results for the past 24 hours

| Order | Test | Value | Reference Range | Comments | Status | Collection |
|---|---|---|---|---|---|---|

[ NAME: OLAH, MARY - MRN: 978262- Printed: Sunday, May 19, 201912:10:59 AM - Page 1/8]

Olah - 244

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

PHH Discharge Summary

| Patient:<br>OLAH, MARY | | Admission Date:<br>05/16/201918:37 | | Sex:<br>Female | MR#:<br>978262 | | | |
|---|---|---|---|---|---|---|---|---|

| | Test | Name | Value | Range | | | Status | Date |
|---|---|---|---|---|---|---|---|---|
| | B-type Natriuretic Peptide -Orderable every 24 Hours | BNP | 373 H | (< 100 pg/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | WBC | 8.2 | (4.6-10.2 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | RBC | 4.03 L | (4.04-5.48 10*6/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | HEMOGLOBIN | 12.5 | (12.2-16.2 g/dL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | HEMATOCRIT | 36.9 L | (37.7-47.9 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | MCV | 91.6 | (80-97 fL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | MCH | 31 | (27-31.2 pg) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | MCHC | 33.9 | (31.8-35.4 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | RDW | 13.9 | (11.6-14.8 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | PLATELET COUNT | 220 | (142-424 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | DIFF REVIEW | NO | | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | NEUTROPHIL % | 82.6 H | (37-80 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | LYMPHOCYTE % | 7.6 L | (10-50 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | MONOCYTE% | 8.6 | (0-12 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | EOSINOPHIL % | 1 | (0-7 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | BASOPHIL % | 0.2 | (0-2.5 %) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | ABS NEU | 6.8 | (2.0-6.9 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | ABS LYMPH | 0.6 | (0.6-3.4 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | ABS MON | 0.7 | (0-0.9 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | ABS EOS | 0.1 | (0-0.7 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | ABS BASO | 0 | (0-0.2 10*3/mL) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | SODIUM | 142 | (135-145 meq/L) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | POTASSIUM | 4 | (3.3-5.3 meq/L) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | CHLORIDE | 112 H | (101-111 meq/L) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | CO2 | 23 | (22-32 meq/L) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | GLUCOSE | 98 | (70-110 mg/dL) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | BUN | 23 H | (8-20 mg/dL) | | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | CREATININE | 0.85 | (0.40-1.00 mg/dL) | | | Final Result | 05/17/2019 05:01:00 |

[ NAME: OLAH, MARY - MRN: 978262 - Printed:  Sunday, May 19, 2019 12:10:59 AM - Page 2/8 ]

OLAH, MARY VERONICA - 978262 - 100408558

Olah - 245

FINAL (SIGNED)

## HEMET VALLEY MEDICAL CENTER

PHH Discharge Summary

| Patient:<br>OLAH, MARY | | Admission Date:<br>05/16/2019 18:37 | | Sex:<br>Female | MR#:<br>978262 | | |
|---|---|---|---|---|---|---|---|
| | Comprehensive Metabolic Panel | GFR | 69 | ( mL) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | TOT PROT | 5.5 L | (6-8.1 g/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | ALBUMIN | 3.1 L | (3.5-5 g/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | A/G RATIO | 1.3 | (1.0-2.2) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | AST(SGOT) | 22 | (15-41 [iU]/L) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | ALT(SGPT) | 17 | (14-54 [iU]/L) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | ALKPHOS | 61 | (45-120 [iU]/L) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | TOT BILI | 0.7 | (0.4-2.0 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | DIRECT BILI | 0.2 | (0.1-0.5 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Comprehensive Metabolic Panel | CALCIUM | 8.9 | (8.9-10.3 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Lipid Panel - Orderable every 7 Days | TRIGLYC. | 84 | (<150 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Lipid Panel - Orderable every 7 Days | CHOLEST | 162 | (120-200 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Lipid Panel - Orderable every 7 Days | HDL CHOL | 41 | (29-89 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Lipid Panel - Orderable every 7 Days | LDL CHOL | 104 | (< 130 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Magnesium Level | MAGNESIUM | 1.9 | (1.8-2.5 mg/dL) | | Final Result | 05/17/2019 05:01:00 |
| | Partial Thromboplastin Time (PTT) | PTT | 31 | (29.9-38.0 s) | | Final Result | 05/17/2019 05:01:00 |
| | Protime (PT with INR) | PROTIME | 14.9 H | (10.4-13.4 s) | | Final Result | 05/17/2019 05:01:00 |
| | Protime (PT with INR) | INR | 1.2 H | (0.9-1.1) | | Final Result | 05/17/2019 05:01:00 |
| | TSH -Orderable every 24 Hours | TSH | 2.46 | (0.34-5.60 u [iU]/mL) | | Final Result | 05/17/2019 05:01:00 |
| | Complete Blood Count | WBC | 9.1 | (4.6-10.2 10*3/mL) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | RBC | 4.14 | (4.04-5.48 10*6/mL) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | HEMOGLOBIN | 12.9 | (12.2-16.2 g/dL) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | HEMATOCRIT | 38.1 | (37.7-47.9 %) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | MCV | 92.1 | (80-97 fL) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | MCH | 31.2 | (27-31.2 pg) | | Final Result | 05/16/2019 23:30:00 |
| | Complete Blood Count | MCHC | 33.8 | (31.8-35.4 %) | | Final Result | 05/16/2019 23:30:00 |

[ NAME: OLAH, MARY - MRN: 978262 - Printed: Sunday, May 19, 2019 12:10:59 AM -Page 3/8]

OLAH, MARY VERONICA - 978262 - 100406558

Olah - 246

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

PHH Discharge Summary

| Patient:<br>OLAH, MARY | | Admission Date:<br>05/16/201918:37 | | Sex:<br>Female | MR#:<br>978262 | | | |
|---|---|---|---|---|---|---|---|---|
| Complete Blood Count | RDW | 14.1 | (11.6-14.8 %) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | PLATELET COUNT | 214 | (142-424 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | DIFF REVIEW | NO | | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | NEUTROPHIL % | 84.1 H | (37-80 %) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | LYMPHOCYTE % | 8.2 L | (10-50 %) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | MONOCYTE % | 6.8 | (0-12 %) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | EOSINOPHIL % | 1 | (0-7 %) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | BASOPHIL % | 0 | (0-2.5%) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | ABS NEU | 7.6 H | (2.0-6.9 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | ABS LYMPH | 0.7 | (0.6-3.4 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | ABS MON | 0.6 | (0-0.9 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | ABS EOS | 0.1 | (0-0.7 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Complete Blood Count | ABSBASO | 0 | (0-0.2 10*3/mL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | SODIUM | 138 | (135-145 meq/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | POTASSIUM | 3.9 | (3.3-5.3 meq/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | CHLORIDE | 109 | (101-111 meq/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | CO2 | 19 L | (22-32 meq/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | GLUCOSE | 141 H | (70-110 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | BUN | 25 H | (8-20 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | CREATININE | 0.95 | (0.40-1.00 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | GFR | 61 | ( mL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | TOT PROT | 5.7 L | (6-8.1 g/dL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | ALBUMIN | 3.1 L | (3.5-5 g/dL) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | A/G RATIO | 1.2 | (1.0-2.2) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | AST(SGOT) | 29 | (15-41 [iU]/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | ALT(SGPT) | 17 | (14-54 [iU]/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | ALKPHOS | 56 | (45-120 [iU]/L) | | | Final Result | 05/16/2019 23:30:00 |
| Comprehensive Metabolic Panel | TOT BILI | 0.9 | (0.4-2.0 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |

[ NAME: OLAH, MARY - MRN: 978262 - Printed:  Sunday, May 19, 2019 12:10:59 AM – Page 4/8]

OLAH, MARY VERONICA - 978262 - 100406558

FINAL (SIGNED)

## HEMET VALLEY MEDICAL CENTER

PHH Discharge Summary

| Patient: OLAH, MARY | | Admission Date: 05/16/201918:37 | | Sex: Female | MR#: 978262 | | | |
|---|---|---|---|---|---|---|---|---|
| | Comprehensive Metabolic Panel | DIRECT BILI | 0.2 | (0.1-0.5 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Comprehensive Metabolic Panel | CALCIUM | 8.8 L | (8.9-10.3 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Lipid Panel - Orderable every 7 Days | TRIGLYC. | 85 | (<150 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Lipid Panel - Orderable every 7 Days | CHOLEST | 163 | (120-200 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Lipid Panel - Orderable every 7 Days | HDL CHOL | 44 | (29-89 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Lipid Panel - Orderable every 7 Days | LDL CHOL | 102 | (<130 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |
| | Magnesium Level | MAGNESIUM | 1.8 | (1.8-2.5 mg/dL) | | | Final Result | 05/16/2019 23:30:00 |

Radiology: Imaging at LLU-M

CT head without contrast 5/16/2019: No acute intracranial hemorrhage, mass-effect, midline shift or hydrocephalus

Chest x-ray 5/16/2019: Mild cardiomegaly

CT angio head and neck with/without contrast 5/16/2019:
1. Moderate narrowing of the left proximal A1 anterior cerebral artery.
2. 55% atheromatous narrowing of the right proximal ICA at its origin.
3. Small bilateral pleural effusions.
4. Shotty left cervical chain and mediastinal/prevascular space adenopathy, of indeterminate etiology

MRI brain 5/18/2019: Acute/subacute 1.8 cm left dominant infarct and 4 mm infarct in the right superior frontal lobe. No acute intracranial hemorrhage, mass-effect or midline shift or hydrocephalus. No enhancing intracranial lesions.

Cardiology: Echocardiogram 1/24/19: Technically difficult study. Severe LA enlargement; normal sized LV and RV. RA not well seen. Normal biventricular systolic function. LVEF 65%. Parameters indeterminate for LV diastolic function evaluation. Severe mitral annular calcification, mild mitral stenosis. Mild AV sclerosis. Mild concentric LVH.

Treadmill Stress Test: 2015: patient recalls this as being a normal test.

Nuclear Stress Test 2/20/19: No significant perfusion defect. Normal LV. thickening and contractility; post-stress LVEF 59%. No TID. Normal LV volumes and LH ratio. interpreted as normal study

## VITAL SIGNS

Last Set of Vitals: BP: 130/59  05/17/2019 13:30
Pulse: 90  05/17/2019 13:30
Temp: 97.6 F  05/17/201913:30
Resp: 17  05/17/201913:30
O2 Sat: 96%(2l/m)(Nasal Cannula)  05/17/2019 13:30
Calculated BMI: 107.6  05/16/2019 19:30

## HOSPITAL COURSE AND TREATMENT

#Acute/Subacute Left thalamic infarct, 1.8 cm
#Right suprafrontal lobe infarct, 4 mm

[ NAME: OLAH, MARY - MRN: 978262 - Printed: Sunday, May 19, 201912:10:59 AM - Page 5/8]

FINAL (SIGNED)

## HEMET VALLEY MEDICAL CENTER

| PHHDischargeSummary | | | |
|---|---|---|---|
| Patient:<br>OLAH, MARY | Admission Date:<br>05/16/2019 18:37 | Sex:<br>Female | MR#:<br>978262 |

- presented to LLU-M with right upper and lower extremities, which has now resolved
- last known well time night of 5/15/19, was not a candidate for tPA
- EKG LLU-M: Afib, nonspecific specific t waves, QTc 439
- CT head without contrast 5/16/2019: No acute intracranial hemorrhage, mass-effect, midline shift or hydrocephalus
- Chest x-ray 5/16/2019: Mild cardiomegaly
- CT angio head and neck with/without contrast 5/16/2019: Moderate narrowing of the left proximal A1 anterior cerebral artery. 55% atheromatous narrowing of the right proximal ICA at its origin. Small bilateral pleural effusions. Shotty left cervical chain and mediastinal/prevascular space adenopathy, of indeterminate etiology
- MRI brain 5/16/2019: Acute/subacute 1.8 cm left dominant infarct and 4 mm infarct in the right superior frontal lobe. No acute intracranial hemorrhage, mass-effect or midline shift or hydrocephalus. No enhancing intracranial lesions.
- Xarelto was held 4 days for lumpectomy done 5/15/19
- will start Lovenox while inpatient, can change back to Xarelto prior to discharge
- patient has statin intolerance, complains of muscle cramps with use
- Neurology- Dr. Khayali- consulted

#HFpEF, acute on chronic, probably diastolic
- pro-BNP 1456 in obese person
- does not appear fluid overloaded
- Echocardiogram 1/24/19: Technically difficult study. Severe LA enlargement; normal sized LV and RV. RA not well seen. Normal biventricular systolic function. LVEF 65%. Parameters indeterminate for LV diastolic function evaluation. Severe mitral annular calcification, mild mitral stenosis. Mild AV sclerosis. Mild concentric LVH.
- Treadmill Stress Test 2015: patient recalls this as being a normal test.
- Nuclear Stress Test 2/20/19: No significant perfusion defect. Normal LV thickening and contractility; post-stress LVEF 59%. No TID. Normal LV volumes and LH ratio. Interpreted as normal study
- Keep K and Mg above 4 and 2 respectively
- 1500 cc fluid restriction, Strict I+O's, 2 gm sodium diet, weigh daily
- continue home medication 40 mg Lasix BID

#Permanent atrial fibrillation, first diagnosed in 2010
#Chronic atrial flutter
- goals of therapy rate control and prevention of embolic events
- CHADs-VASC 5 (CHF, HTN, Age Sex)- warrants long term anticoagulation
- on telemetry: Afib, atrial flutter with HR 80-100's
- on Xarelto, however was on hold for 4 days for Lumpectomy 5/15/19
- will start Lovenox while inpatient, can change back to Xarelto prior to discharge

#HTN
- continue home medication Benazepril 20mg qD
- continue to monitor

#possible Breast CA s/p Left lumpectomy 5/15/19
- pending biopsy
- dressing dry and intact, no active bleeding from wound site
- dressing to be removed 5/17/19 per patient

#Morbid Obesity
- Encourage weight loss
- Dietary consult
- recommend exercise program

Dispo:
-restarted xarelto for underlying A.fib.
- recommended pt go to SNF for rehab. However, pt stated she wanted to go home and that her husband would be able to care for her. Will discharge home with home health.

### DISCHARGE CONDITION

| Guarded | Improved | Stable | Serious | Critical | Expired |
|---|---|---|---|---|---|

[ NAME: OLAH, MARY - MRN: 978262- Printed: Sunday, May 19, 2019 12:10:59 AM - Page 6/8]

OLAH, MARY VERONICA - 978262 - 100406558

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

| PHH Discharge Summary | | | |
|---|---|---|---|
| **Patient:**<br>OLAH, MARY | **Admission Date:**<br>05/16/2019 18:37 | **Sex:**<br>Female | **MR#:**<br>978262 |

## DISCHARGE DISPOSITION

Home    Acute Care Facility    Board and Care    Chemical Dependency    ⟨Home Health⟩    Left AMA

## DISCHARGE MEDICATIONS – RECONCILIATION LIST

Benazepril-Hydrochlorothiazide 20 mg-12.5 mg, 1 tablet orally daily
Colace, 200 milligram orally daily
FUROSEMIDE        ,40 MG ORAL TWICE A DAY
Levaquin, 250 milligram orally daily
Norco 5 mg-325 mg, 1 tablet orally every 4 hours PRN pain
Xarelto, 20 milligram orally daily

## DISCHARGE FOLLOW-UP INSTRUCTION FOR PATIENT/FAMILY

Diet: cardiac

Activity: as tolerated

Follow-up Appointments: PCP within 7 days.

## SIGNATURE

NARESH PUROHIT, PGY1                      05/18/2019 16:35
NP/PA/Resident Signature                        Date

**Attestation when both Attending with NP/PA/Resident see patient;.**

☒ I have evaluated this patient with the NP/PA/Resident. I have addressed significant history and physical examination findings with the patient. We have developed an assessment of plan of care. The above was discussed at the time of visit with the patient, NP/PA/Resident, and healthcare team.

ABID HUSSAIN, MD                        05/19/2019 00:10
Physician Signature                          Date

Documentation Cont. Next Page

FINAL (SIGNED)

HEMET VALLEY MEDICAL CENTER

PHH Discharge Summary

| Patient: | Admission Date: | Sex: | MR#: |
|---|---|---|---|
| OLAH, MARY | 05/16/201918:37 | Female | 978262 |



[ NAME: OLAH, MARY - MRN: 978262 - Printed: Sunday, May 19, 201912:10:59 AM - Page 8/8]

OLAH, MARY VERONICA - 978262 - 100408558

# EXHIBIT 2

21 Cal.App.5th 529

Court of Appeal, First District, Division 4, California.

Ardella **FOX** et al., Petitioners,

**v.**

The **SUPERIOR** COURT of the City And
County of San Francisco, Respondent;

Metalclad Insulation LLC et
al., Real Parties in Interest.

A153672

|

Filed 3/20/2018

**Synopsis**

**Background:** Plaintiff in underlying asbestos litigation
brought motion for trial preference, seeking trial date as
soon as possible. The **Superior** Court, San Francisco City
and County, No. CGC-17-276565, Richard Ulmer, J., denied
motion. Plaintiff petitioned for writ of mandate.

[Holding:] The Court of Appeal, Streeter, J., held that trial
court abused its discretion in denying motion in light of
plaintiff's uncontroverted health status.

Writ granted.

West Headnotes (4)

**[1]**   **Appeal and Error**
 De novo review

The determination of whether the trial court
selected the proper legal standards in making a
discretionary determination is reviewed de novo.

3 Cases that cite this headnote

**[2]**   **Trial**
 Age or disability;   financial condition

The heightened "clear and convincing proof"
standard is required for motions seeking
discretionary grants of calendar preference for
trial based on illness, but not for motions seeking

mandatory calendar preference based on party's
health and status as more than 70 years of age.
Cal. Civ. Proc. Code § 36.

1 Cases that cite this headnote

**[3]**   **Trial**
 Age or disability;   financial condition

Where a party meets the requisite standard for
calendar preference based on party's health and
status as more than 70 years of age, preference
must be granted; no weighing of interests is
involved. Cal. Civ. Proc. Code § 36(a).

1 Cases that cite this headnote

**[4]**   **Trial**
 Age or disability;   financial condition

Trial court abused its discretion in denying
asbestos litigation plaintiff's motion for
preference on trial calendar, which was made
based on plaintiff's health and status as over 70
years of age, where it was uncontroverted that
plaintiff suffered from stage IV lung cancer and
severe coronary artery disease and that plaintiff's
mental state had deteriorated to a point where she
became confused and forgetful. Cal. Civ. Proc.
Code § 36(a).

1 Cases that cite this headnote

**\*\*494** A153672–*Fox v. Superior Court*, Trial Court: San
Francisco City & County **Superior** Court, Trial Judge: Hon.
Richard Ulmer. (San Francisco City & County Super. Ct. No.
CGC-17-276565)

**Attorneys and Law Firms**

Brayton Purcell, Alan R. Brayton, and Richard M. Grant,
Novato, for Plaintiffs and Petitioners.

No appearance for Respondent.

Dentons US, Lisa L. Oberg, Michelle C. Jackson, and Kathy
M. Huynh, San Francisco, for Defendant and Real Party in
Interest Metalclad Insulation LLC.

STREETER, J.

### *531  I. INTRODUCTION

Petitioners Ardella and Robert **Fox** (the **Foxes**) seek a writ of mandate compelling the **superior** court to grant their motion for trial preference and set a trial date within 120 days of this court's issuance of writ relief. We requested opposition to the petition and advised the parties we may grant a peremptory writ under *Palma* **v.** *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180, 203 Cal.Rptr. 626, 681 P.2d 893 (*Palma*). Only one of 18 defendants opposed the **Foxes**' petition. Having reviewed the petition, opposition, and supporting documentation, we shall grant the writ and direct the **superior** court to schedule a trial within 120 days.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The **Foxes** filed this action in February 2017, claiming that Ms. **Fox**, age 81, sustained personal injuries as a result of her exposure to asbestos and asbestos-containing products many years ago, from approximately 1954 through 1963. They named 18 parties as defendants. Out of concern for Ms. **Fox**'s declining health, the **Foxes** filed a motion for trial preference under  *532  Code of Civil Procedure section 36, subdivision (a),[1]  seeking preference on the trial calendar. **495  The basis for the claimed preference was that Ms. **Fox** now suffers from stage IV lung cancer and various related ailments. Among the materials supporting the preference motion was a declaration from the **Foxes**' attorney, David Donadio, reporting not only has the cancer metastasized to Ms. **Fox**'s femur, clavicle, and spine, but she also suffers from asbestosis, asbestos-related pleural disease, severe coronary artery disease, and anemia.

To combat her cancer, Ms. **Fox** receives chemotherapy treatments every three weeks. Apparently, she is "[r]esponding to current chemotherapy and [is] in partial remission[,]" but the side effects have been severe. Donadio explained: "[Ms. **Fox**] currently suffers from whole body aches and pain, severe abdominal and bowel complications, nausea and vomiting, dehydration, drowsiness, extreme weakness and fatigue. She also suffers from 'chemo brain' or a fogginess in thought process that impairs her ability to focus, concentrate and effectively communicate. [¶] ... [¶] [Her] immune system is extremely weak and impaired

and will only continue to become progressively weaker as she continues with chemotherapy treatment which will result in worsening impairing side effects including severe bowel and abdominal issues, severe weakness and fatigue, poor appetite and difficulty walking and talking. This will further impair [Ms. **Fox**'s] stamina and ability to focus, concentrate, and effectively communicate, making her less able to fully participate in her trial."

As a result of these health problems, Donadio concluded: "[f]or [Ms. **Fox**] to effectively participate and assist in her trial, so that her interests will not be prejudiced, it is imperative that the trial be held as soon as possible." To provide a foundation for this conclusion, the **Foxes** submitted medical records confirming Ms. **Fox**'s medical diagnoses. Ms. **Fox** also submitted her own declaration attesting to the fact that she suffers from the diseases and chemotherapy side effects reported by Donadio. In her declaration, she stated that she is currently capable of effectively participating in her case, "[b]ut unless the Court grants a preference in setting my case for trial this may no longer be possible and I risk not being able to participate effectively or indeed at all in my trial."

Only two of 18 defendants opposed the **Foxes**' motion for trial preference. Metalclad Insulation LLC (Metalclad) filed a written opposition and one other defendant, Sequoia Ventures, Inc, filed a pro forma joinder in Metalclad's opposition without offering substantive argument. In a brief law-and-motion hearing at which both Metalclad and Sequoia appeared, only Metalclad argued in opposition to the **Foxes**' motion. Following that hearing, the trial  *533  court denied the motion, stating, in a form order provided by Metalclad, that the **Foxes** "failed to demonstrate that the health of Ardella **Fox** is such that preference is necessary to prevent prejudicing her interest in the litigation, as required by Code of Civil Procedure, section 36[, subdivision] (a)." It is from this order that the **Foxes** seek writ relief. Now, before us, the sole defendant to defend the trial court's ruling is Metalclad.

### III. DISCUSSION

On petition of any party over age 70, section 36, subdivision (a), provides that the granting of calendar preference is mandatory in some circumstances. (*Rice* **v.** *Superior Court* (1982) 136 Cal.App.3d 81, 89, 185 Cal.Rptr. 853; *Kline* **v.** *Superior Court* (1991) 227 Cal.App.3d 512, 515, 277 Cal.Rptr. 851.) We have such a circumstance here. Because

230 Cal.Rptr.3d 493, 18 Cal. Daily Op. Serv. 2662, 2018 Daily Journal D.A.R. 2645

our analysis turns on the text and structure of section 36, we begin with the language of the statute. Subdivision (a) provides that "[a] party to **496 a civil action who is over 70 years of age may petition the court for a preference, which the court *shall* grant if the court makes both of the following findings: [¶] (1) The party has a substantial interest in the action as a whole. [¶] (2) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation." (Italics added.) Subdivision (d), by contrast, provides that, regardless of the age of the party involved, "[*i*]*n its discretion,* the court *may* ... grant a motion for preference that is accompanied by clear and convincing medical documentation that concludes that one of the parties suffers from an illness or condition raising substantial medical doubt of survival of that party beyond six months, and that satisfies the court that the interests of justice will be served by granting the preference." (Italics added.)

[1] [2] The trial court gave no reason for its denial of the **Foxes'** motion for calendar preference, nor was it required to do so, since the denial of a section 36 motion is reviewable for abuse of discretion. But "the determination of whether the trial court selected the proper legal standards in making [a discretionary] determination is reviewed de novo." (*569 E. County Boulevard LLC* v. *Backcountry Against the Dump, Inc.* (2016) 6 **Cal.App.5th** 426, 434, 212 Cal.Rptr.3d 304, italics omitted.) The record here strongly suggests the court was led astray by an incorrect statutory construction argument from Metalclad that, in effect, conflated subdivisions (a) and (d). This error first surfaced in Metalclad's memorandum opposing the preference motion, which contended the motion should be denied because the **Foxes** failed to support their claimed need for preference by clear and convincing proof. That was *534 plainly wrong. The heightened clear and convincing proof standard is required for motions seeking discretionary grants of preference under subdivision (d), but not for motions seeking mandatory preference under subdivision (a).

When, at oral argument, counsel for the **Foxes** highlighted the mistake, Metalclad's counsel conceded error and said she "[had] no idea why that [was] in" the opposition brief, but she nonetheless went on to compound it by inviting the court to deny calendar preference because the **Foxes** had not offered a physician's declaration attesting to Ms. **Fox**'s prognosis in more detail than Donadio's declaration provided. This fallback position may have been a less egregious misreading of section 36, but it too conflated subdivisions (a) and (d). The standard under subdivision

(a), unlike under subdivision (d), which is more specific and more rigorous, includes no requirement of a doctor's declaration. To the contrary, a motion under subdivision (a) may be supported by nothing more than an attorney's declaration "based upon information and belief as to the medical diagnosis and prognosis of any party." (§ 36.5; accord Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 12:247.1, p. 12(I)-44 [attorney declaration under section 36.5 "can consist entirely of hearsay and conclusions"].) Understandably, Metalclad has abandoned this fallback position as well.

The only remaining ground of opposition now pressed by Metalclad is that an elder moving for preference under subdivision (a) must show that "death or incapacity might deprive [her] of the opportunity to have [her] case effectively tried."[2] That argument fares no better than the first **497 two. Section 36, subdivision (a), says nothing about "death or incapacity." Whether there is "substantial medical doubt of survival ... beyond six months" is, to be sure, a matter of specific concern under subdivision (d), but the relevant standard under subdivision (a) is more open-ended. The issue under subdivision (a) is not whether an elderly litigant might die before trial or become so disabled that she might as well be absent when trial is called. Provided there is evidence that the party involved is over 70, all subdivision (a) requires is a showing that that party's "*health ... is such* that a preference is necessary *to prevent prejudicing* [*her*] *interest in the litigation*." (Italics added.) Metalclad's proposed reading of subdivision (a), requiring a showing of what amounts to likely unavailability for trial, sets the prejudice standard too high.

*535 [3] Rather than engage directly with the language of section 36, Metalclad proposes to add a gloss. Citing *Hernandez* v. *Superior Court* (2004) 115 Cal.App.4th 1242, 9 Cal.Rptr.3d 821 (*Hernandez* ), it suggests that, in applying subdivision (a), the trial court properly balanced the **Foxes'** interest in expedition against its interest in having adequate time to prepare for trial. *Hernandez* addressed the importance of reconciling the good cause standard for granting trial continuances with the competing policy obligation to comply with the Trial Court Delay Reduction Act. (*Hernandez*, at p. 1246, 9 Cal.Rptr.3d 821 ["decisions about whether to grant a continuance ... 'must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.' [Citation.] What is required is balance."].) There is no clash of statutory

policies here. Where a party meets the requisite standard for calendar preference under subdivision (a), preference must be granted. No weighing of interests is involved. [3]

[4] Metalclad purports to dispute the extent of Ms. **Fox**'s health problems and claims the trial court was entitled to assess the "veracity" of her declarations. And in making that assessment, we are told, the absence of more medical details, including some indication of her "life expectancy," was relevant. If by way of opposition Metalclad had submitted, say, a photograph of 81-year-old Ms. **Fox** scuba-diving in the Galapagos Islands just last fall, there might be some basis to expect more medical detail, but on this record we see no genuine dispute that Ms. **Fox** is very sick. It is uncontroverted she suffers from stage IV lung cancer and severe coronary artery disease, among other ailments. She is undergoing chemotherapy treatments, but is in constant discomfort and has difficulty performing basic life functions. And critically, her mental state has deteriorated to a point where she becomes confused and forgetful. All told, the evidence shows that while Ms. **Fox** is currently able to participate in a trial, she has good reason for concern that will not be the case for much longer as her health deteriorates. In the face of this uncontroverted showing, we think it was error to deny her preference on the trial calendar. We see no basis for **\*\*498** the ruling here other than the mistaken interpretation of section 36, subdivision (a) urged by Metalclad.

Beyond the proof the **Foxes** offered, we are hard pressed to see what more they would need to present to justify entitlement to calendar preference under subdivision (a). For those in Ms. **Fox**'s unfortunate situation, the **\*536** end may come quickly with little warning; years may pass with gradual, relentless decline before the battle is lost; or, happily, there may be sustained remission after episodic periods of improvement and relapse. Anyone who has ever heard a physician say in these circumstances, "we just can't predict with any certainty," will appreciate that indeterminacy is not only inherent in the situation, but is part of the challenge of dealing with it. We therefore agree that, on this record, the absence of more specifics about Ms. **Fox**'s prognosis was insufficient reason to deny the **Foxes**' request for calendar preference. Metalclad's position to the contrary, in our view, grafts the more stringent standard of subdivision (d) onto subdivision (a) in derogation of the text and structure of the statute.

In a final effort to stave off accelerated trial, Metalclad argues writ relief is inappropriate because the trial court denied the **Foxes**' motion for trial preference without prejudice and, in any event, section 36 permits the **Foxes** to file a new motion "[a]t any time." (§ 36, subd. (c)(2).) As a result, Metalclad claims the **Foxes** have not shown irreparable harm or that they lack an adequate remedy at law, two prerequisites for writ relief. (See *Los Angeles Gay & Lesbian Center* v. *Superior Court* (2011) 194 Cal.App.4th 288, 299–300, 125 Cal.Rptr.3d 169.) We disagree. While the **Foxes**' ability to file a new motion gives them a remedy at law, we do not view that as adequate relief. Sure, at some future time, the **Foxes** could try again by filing a new motion for trial preference when Ms. **Fox**'s condition worsens. But that option may well provide cold comfort. subdivision (a) requires the granting of calendar preference to "*prevent*" prejudice to a stricken litigant's interests. (Italics added.) The idea that Ms. **Fox** should be made to wait to file a preference motion until she is clearly in her final days—when attendance at a trial is hardly what she should be doing—makes no sense at all.

## IV. DISPOSITION

Having notified the parties we might issue a peremptory writ in the first instance, pursuant to *Palma, supra*, 36 Cal.3d 171, 203 Cal.Rptr. 626, 681 P.2d 893, we now conclude that the **Foxes**' entitlement to relief is obvious and no useful purpose would be served by plenary consideration of this issue. We have determined there is an unusual urgency, requiring acceleration of our normal process in writ proceedings. (*Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35, 13 Cal.Rptr.2d 856, 840 P.2d 961.) Let a peremptory writ of mandate issue, directing the respondent **superior** court to vacate its December 20, 2017 order, and to grant **\*537** a new order setting trial in this matter within 120 days of this opinion. This decision shall be final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

RUVOLO, P.J.

SCHULMAN, J. [*]

**All Citations**

21 Cal.App.5th 529, 230 Cal.Rptr.3d 493, 18 Cal. Daily Op. Serv. 2662, 2018 Daily Journal D.A.R. 2645

**Fox v. Superior Court, 21 Cal.App.5th 529 (2018)**
230 Cal.Rptr.3d 493, 18 Cal. Daily Op. Serv. 2662, 2018 Daily Journal D.A.R. 2645

Footnotes

\*      Judge of the **Superior** Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1       All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2       See Defendant Metalclad Insulation LLC's Opposition to Plaintiff's Motion for Order Granting Preference in Setting Case for Trial (Dec. 6, 2017), at p. 3; Preliminary Opposition to Petition for Writ of Mandate (Mar. 7, 2018), at p. 2.

3       Metalclad's "balancing of interests" argument is cast primarily as a matter of appropriate exercise of statutorily conferred discretion, but at one point it takes the argument a step further, suggesting that "[d]efendants' due process rights and fundamental fairness must also be given weight" in the balance. Suffice it to say the preference motion here, which was made eleven months into the case, seeking a trial date within 120 days of that, allowed plenty of time for discovery and trial preparation. The idea that due process concerns are in play is baseless.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 3



*14106562*

# FILED
## ALAMEDA COUNTY

JUL 2 3 2019

CLERK OF THE SUPERIOR COURT
By_____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS CASES | No. JCCP 4953 |
| | ORDER (1) DENYING MOTION OF NOVAK FOR TRIAL PREFERENCE; (2) GRANTING MOTION OF CABALLERO FOR TRIAL PREFERENCE; AND (3) TRANSFERRING *CABALLERO V. MONSANTO COMPANY INC.*, SAN FRANCISCO SUPERIOR COURT, CASE NO. CGC-19-575736, TO CONTRA COSTA COUNTY. |
| | COURT NOTES ON PREFERENCE MOTIONS IN CONTEXT OF A COORDINATED PROCEEDING |
| | DATE  7/19/19 TIME   9:00 AM DEPT   21 |

The motion of John Novak for trial preference and the motion of Kathleen Caballero for trial preference came on for hearing on 7/19/19, in Department 21 of this Court, the Honorable Winifred Y. Smith presiding.  Having reviewed the papers and having heard the arguments of counsel, and good cause appearing, IT IS HEREBY ORDERED:  The motion of John Novak for

trial preference is DENIED.  The motion of Kathleen Caballero for trial preference is

GRANTED.  The case of *Caballero v. Monsanto Company Inc.,* San Francisco Superior Court,

Case No. CGC-19-575736, is TRANSFERRED to Contra Costa County.


STANDARD

    Both Novak and Caballero seek preference under CCP 36(a), which states:

        (a)  A party to a civil action who is over 70 years of age may petition the
court for a preference, which the court shall grant if the court makes both of the
following findings:

        (1)  The party has a substantial interest in the action as a whole.

        (2)  The health of the party is such that a preference is necessary to prevent
prejudicing the party's interest in the litigation.


*Fox v. Superior Court* (2018) 21 Cal.App.5th 529, 533-536, makes clear that if the court makes

three findings, then the court must grant the motion.

    The first finding is whether the moving party is over 70 years of age.  The requirement

reflects a legislatively acknowledged risk of death or incapacity due to age.  (*Kline v. Superior

Court* (1991) 227 Cal.App.3d 512, 515.)

    The second finding is whether the moving party has a substantial interest in the action as

a whole.  A plaintiff asserting a claim has a substantial interest in the action as a whole.

    The third finding is whether "the health of the moving party" is such that a preference is

"necessary to prevent prejudicing" the party's interest in the litigation.  The structure of the

statute suggests that the "health" standard for mandatory preference under CCP 36(a) requires a

lesser showing of poor health than the discretionary preference standard in CCP 36(d).  CCP

2

36(d) requires "clear and convincing medical documentation that concludes that one of the parties suffers from an illness or condition raising substantial medical doubt of survival of that party beyond six months."

Regarding the standard of proof, a party seeking trial preference under CCP 36(a) is required to prove the elements of mandatory preference by a preponderance of the evidence.

Regarding the evaluation of the evidence, the trial court can consider credibility and weigh the evidence presented.  In *Fox*, 21 Cal.App.5[th] at 535, the court stated, "If by way of opposition Metalclad had submitted, say, a photograph of 81-year-old Ms. Fox scuba-diving in the Galapagos Islands just last fall, there might be some basis to expect more medical detail, but on this record we see no genuine dispute that Ms. Fox is very sick. It is uncontroverted she suffers from stage IV lung cancer and severe coronary artery disease, among other ailments." This statement indicates that that evidence of poor health can be controverted and that the trial court must weigh the evidence to address genuine disputes.

Regarding "health," CCP 36(a) requires a factual finding that the moving party's health is either significantly impaired or there is a reasonable medical probability that the moving party's health will become significantly impaired in the near future.   The court uses "significantly impaired" rather than "impaired" because the impairments that routinely accompany advancing age are not sufficient to meet the requirement.  The health requirement must mean something in addition to the age 70 requirement.  The court incorporates the well-developed "reasonable medical probability" standard from medical malpractice law because it addresses the distinction between what is medically possible and what is medically probable. (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603.)  This consistent with the standard used in *Fox*, 21 Cal.App.5[th] at 535, of "has good reason for concern."  A party must demonstrate not only concern, but good

3

reason for that concern, which means the concern must be based on a "reasonable medical probability." The court uses "in the near future" because health concerns can be stable, increasing incrementally, or increasing rapidly.

The court considers whether preference is "necessary to prevent prejudice." The court draws on the statute on the award of costs, CCP 1033.5(c)(2), which states "Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." The prejudice must be greater than a schedule that is not convenient or beneficial. The prejudice can be is less than a reasonable medical probability of incapacitation or death in the near future. A party is not required to wait until she or he is in their final days to file a motion. (*Fox*, 21 Cal.App.4[th] at 536.)

PREFERENCE MOTIONS IN THE CONTEXT OF A COORDINATED PROCEEDING

Monsanto argues that the court must consider the motions for trial preference in the context of a JCCP and generally and in the context of a case management plan to identify bellwether cases and set them for trial to inform the balance of the cases in the JCCP.

The court starts with the relevant statutes. CCP 36 sets out trial preference requirements. The right to trial preference is a substantive right. (*Kline v. Superior Court* (1991) 227 Cal.App.3d 512, 515-516.)

CCP 404 et seq set out the procedure for coordinated proceedings, but does not describe the authority of the coordination trial judge. CCP 404.7 authorizes the Judicial Council to develop rules, and Rules of Court 3.300 are the relevant rules. The coordination trial judge has substantial authority. (CRC 3.541; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4[th] 804, 805, 812.)

4

There is no conflict between the preference statute and the authority of the coordination trial judge.  First, the conflict is not between two statutes – CCP 36 and CCP 404.7.   CCP 404.7 starts with "notwithstanding any other provision of law," but that phrase concerns the practice and procedure for coordinating cases, not the management of the coordinated proceeding.  Second, to the extent there is a conflict between a statute and the Rules of Court, the statute prevails.  A Rule of Court must be consistent with state statutes.  (Cal Const., Art VI, Sec 6(d).) (See also *California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 21-22.)   Third, although coordination trial judges have substantial authority and discretion, they may not ignore statutory procedures in the name of complex case management. (*Hernandez v. Superior Court* (2003) 112 Cal. App. 4th 285, 296-303.)

The court must, therefore, give effect to CCP 36 without regard to whether the case is in a coordinated proceeding or part of the judge's other assigned cases.  If the facts support it, the right to a preference trial is a substantive right.  All courts have busy calendars and a coordinated proceeding is simply the grouping of similar cases before a single judge for purposes of efficiency.

Monsanto raises the prospect that preference cases might interfere with the case management plan of identifying and selecting bellwether cases for trial because the preference cases will jump to the head of the line.   The nature of preference cases is that they jump to the head of the line.   The court can protect the case management plan and the bellwether process by ensuring that the bellwether process is undisturbed and that the preference cases are set in addition to and not in the alternative to the bellwether cases.

///

MOTION OF JOHN NOVAK

The motion of John Novak for trial preference is DENIED.

The court STRIKES the declaration of James Mason, MD, filed on 7/18/19 at 5:24 pm. The document was filed on the day before the hearing on 7/19/19 at 9:00 am. Although apparently prepared and signed previously, the document was filed after the court issued its tentative decision. The court appreciates that current medical information is important in preference motions. That acknowledged, the filing of this declaration was very untimely and consideration of it would be prejudicial to Monsanto.

Novak is over 70 years of age.

Novak is a plaintiff asserting a claim and has a substantial interest in the action as a whole.

The court finds that Novak's health is impaired but not substantially impaired and there is no reasonable medical probability that his health will become substantially impaired in the near future. The medical records show that his medical condition is stable. The medical records show that he is working long hours and is physically active. (PPR 5034, 5060.) Plaintiff has not demonstrated a reasonable medical probability that his health concerns are increasing rapidly.

The court finds that preference is not necessary to prevent prejudice. As noted, Novak is in a stable condition. There is no substantial prejudice if Novak's case proceeds to trial on the regular schedule.


MOTION OF KATHLEEN CABALLERO

The motion of Kathleen Caballero for trial preference in *Caballero v. Monsanto Company Inc.,* San Francisco Superior Court, Case No. CGC-19-575736, is GRANTED.

The court DENIES the request of Monsanto to continue the hearing to obtain more current medical information.  Monsanto notes that the most recent medical information is dated 4/1/19.  The court appreciates that current medical information is important in preference motions.  That acknowledged, the record indicates that preference is appropriate, so the court will not continue the motion for further briefing.

Caballero is over 70 years of age.

Caballero is a plaintiff asserting a claim and has a substantial interest in the action as a whole.

The court weighs the evidence and finds that Caballero's health is substantially impaired and there is a reasonable medical probability that her health will deteriorate substantially impaired in the near future.  The evidence requires weighing.  The medical records show that she was diagnosed with mature B cell lymphoma (stage IV).)  (KC-01-000006, KC-01-0000011.)  The records state "Continue to monitor closely."  (KC-01-0000011.)  The records also state "in no acute distress."  (KC-01-0000026.)   The court finds that preference is necessary to prevent prejudice.

TRANSFER OF VENUE FOR KATHLEEN CABALLERO CASE

The court, as coordination trial judge and under CRC 3.543(a), ORDERS: (1) the case of *Caballero v. Monsanto Company Inc.,* San Francisco Superior Court, Case No. CGC-19-575736, is transferred to the Superior Court of the State of California, Contra Costa County for trial; (2) Caballero must file a copy of this order of transfer the Caballero case; and (3) the Caballero case remains part of the coordination proceeding for purposes of the CRC 3.501 et seq, concerning the coordination of complex cases.  (CRC 3.543(c).)

  The court ORDERS that if Caballero does not file an objection under CRC 3.543(b) on or before 8/2/19, then the Caballero case will be transferred to Contra Costa County on 8/5/19. At the hearing on 7/19/19, the court raised the issue of where the Caballero case would be set for trial. Options discussed were Alameda County, where the JCCP is located, San Francisco County, where the Caballero case was filed, and Contra Costa County, where Caballero used Roundup, currently resides, and currently receives medical treatment. The court bases the transfer decision on the information in Caballero's motion for trial preference and the statements of her counsel at the hearing on 7/18/19.

  Caballero may file an objection to the transfer of her case to Contra Costa County. (CRC 3.543(b); *Pesses v. Superior Court* (1980) 107 Cal.App.3d 117.) Caballero must file any such motion on or before 8/2/19. The court has granted Caballero's motion for preference. Any transfer must therefore be made promptly so the trial court in Contra Costa (or another county) can plan for the preference trial.

  At the hearing on 7/19/19, counsel for Caballero made arguments regarding the procedure for determining trial venue in coordinated proceedings. The CRC 3.543(a) and (b) procedure addresses these concerns.

Dated: July 23 2019

Winifred A. Smith
Judge of the Superior Court

8

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 10940 Wilshire Blvd., 17th Floor, Los Angeles, CA 90024.

      On December 16, 2019, I served the following document(s): **DECLARATION OF PEDRAM ESFANDIARY IN SUPPORT OF PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**[X]**    **BY ELECTRONIC TRANSFER TO CASE ANYWHERE** via the Internet pursuant to the Court's Case Management Order No. 2 Authorizing Electronic Service dated March 23, 2018.

**[ ]**    **BY ELECTRONIC SERVICE:** I caused such document(s) to be served on the above referenced individual(s) by email transmission. The address of the sending computer and the address(es) of the receiving computers are listed as:

**[X]**    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. (*Chair, Judicial Council of California only*)

**Defendant Orchard Supply Hardware:**

Ernesto Resurreccion
Deputy Secretary of State
Secretary of State on behalf of
Orchard Supply Hardware Corporation
1500 11th Street, 3rd Floor
Sacramento, CA 95814

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on December 16, 2019 at Los Angeles, California.

_____
Valeriya Adlivankina

---

4

DECLARATION OF PEDRAM ESFANDIARY

1  Pedram Esfandiary (SBN: 312569)
   pesfandiary@baumhedlund.com
2  Michael L. Baum, Esq. (SBN: 119511)
   mbaum@baumhedlundlaw.com
3  R. Brent Wisner, Esq. (SBN: 276023)
   rbwisner@baumhedlundlaw.com
4  **BAUM, HEDLUND, ARISTEI &**
   **GOLDMAN, P.C.**
5  10940 Wilshire Blvd., 17th Floor
   Los Angeles, CA 90024
6  Telephone:  (310) 207-3233
   Facsimile:  (310) 820-7444
7
8  *Attorneys for Plaintiff*

9
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                        **COUNTY OF ALAMEDA**

11

12 COORDINATION PROCEEDING SPECIAL        JCCP NO. 4953
   TITLE (Rule 3.550)
13                                          ASSIGNED FOR ALL PURPOSES TO
   **ROUNDUP PRODUCTS CASES**                HONORABLE WINIFRED SMITH
14                                          DEPARTMENT 21

15 THIS DOCUMENT RELATES TO:              **DECLARATION OF MARY V. OLAH IN**
                                          **SUPPORT OF PLAINTIFF'S MOTION**
16 *Olah. v. Monsanto Company, et al*., (Super. Ct. **FOR TRIAL PREFERENCE**
   County of Los Angeles, Case No.
17 19STCV33093)                           *[Filed concurrently with the Motion; Declaration*
                                          *of Pedram Esfandiary; Exhibits; and Proposed*
18                                        *Order]*

19
                                          Hearing Date:      January 10, 2020
20                                        Time:              10:00 a.m.
                                          Department:        21
21                                        **Reservation No.:**  **R-2143270**

22

23

24

25

26

27

28

                                    1
                    DECLARATION OF MARY OLAH

Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlund.com
Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.**
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ALAMEDA

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550) **ROUNDUP PRODUCTS CASES** THIS DOCUMENT RELATES TO: *Olah. v. Monsanto Company, et al*., (Super. Ct. County of Los Angeles, Case No. 19STCV33093) | JCCP NO. 4953 ASSIGNED FOR ALL PURPOSES TO HONORABLE WINIFRED SMITH DEPARTMENT 21 **DECLARATION OF MARY V. OLAH IN SUPPORT OF PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** [*Filed concurrently with the Motion; Declaration of Pedram Esfandiary; Exhibits; and Proposed Order*] Hearing Date: January 10, 2020 Time: 10:00 a.m. Department: 21 **Reservation No.:** **R-2143270** |

1

DECLARATION OF MARY OLAH

I, Mary V. Olah hereby declare as follows:

1.      I am over the age of 18.  I make the statements set forth herein based upon my personal knowledge and experience.  If I were called to testify, I could and would competently testify to the statements made in this Declaration.

2.   I am a resident of 1310 Cherry Drive Hemet, CA  92545.

3.      I am currently 75 years old and was diagnosed with High Grade B-Cell Lymphoma in May 2019 after discovering a mass under my arm that was biopsied by my treating physicians.

4.      Following my diagnosis of Non-Hodgkin's Lymphoma, I received six rounds of chemotherapy that concluded in October 2019.

5.      I have struggled with medical issues such as morbid obesity, kidney stones, occasional high-blood pressure, and congestive heart failure.

6.      Following my NHL diagnosis, my medical condition has declined significantly and affected my quality of life.  For example, I now have constantly swelling legs that ache, numbness in hands and fingers with limited functionality, extreme fatigue, body aches and pain (such as abdominal pain), and difficulty walking.

7.      I have also suffered from acute bronchitis, dizziness, and need the assistance of a walker when moving around outside due to difficulty with balance and am easily out of breath.  I sometimes feel off-balance and use the walls and furniture around my house to move around.  The extent of my fatigue precludes me from doing many of the activities I used to enjoy.

8.      During my chemotherapy treatment I suffered a stroke and have been on blood thinner medication to treat chronic irregular heartbeats.

//
//
//
//
//
//
//

DECLARATION OF MARY OLAH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9.      Due to my medical problems and declining health, I am concerned that I will be unable to fully participate at trial if I do not have my trial within the next four months.  Currently, I believe that I can effectively participate in my case but, unless the Court grants a preference in setting my case for trial, this may no longer be possible, and I risk not being able to participate effectively in my trial at all.  I truly believe that if I am unable to participate in my trial within the next four months, my interests in this litigation will be greatly prejudiced.

Executed this 11th day of December 2019

Mary V. Olah

---

3

DECLARATION OF MARY OLAH

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 10940 Wilshire Blvd., 17th Floor, Los Angeles, CA 90024.

      On December 16, 2019, I served the following document(s): **DECLARATION OF MARY V. OLAH IN SUPPORT OF PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**[X]**    **BY ELECTRONIC TRANSFER TO CASE ANYWHERE** via the Internet pursuant to the Court's Case Management Order No. 2 Authorizing Electronic Service dated March 23, 2018.

**[ ]**    **BY ELECTRONIC SERVICE:** I caused such document(s) to be served on the above referenced individual(s) by email transmission. The address of the sending computer and the address(es) of the receiving computers are listed as:

**[X]**    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. (*Chair, Judicial Council of California only*)

**Defendant Orchard Supply Hardware:**

Ernesto Resurreccion
Deputy Secretary of State
Secretary of State on behalf of
Orchard Supply Hardware Corporation
1500 11th Street, 3rd Floor
Sacramento, CA 95814

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on December 16, 2019 at Los Angeles, California.

_____
Valeriya Adlivankina

4

DECLARATION OF MARY OLAH

1
2
3
4
5
6
7

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ALAMEDA**

8

| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550) | JCCP NO. 4953 |
|---|---|
| **ROUNDUP PRODUCTS CASES** | ASSIGNED FOR ALL PURPOSES TO HONORABLE WINIFRED SMITH DEPARTMENT 21 |
| THIS DOCUMENT RELATES TO: | **[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** |
| *Olah. v. Monsanto Company, et al*., (Super. Ct. County of Los Angeles, Case No. 19STCV33093) | Hearing Date: January 10, 2020 Time: 10:00 a.m. Department: 21 **Reservation No.: R-2143270** |

9
10
11
12
13
14
15
16

17    Upon reviewing and considering Plaintiff Mary Olah's Motion for Trial Preference, the Court

18  HEREBY ORDERS THAT:

19      1. Plaintiff's Motion for Trial Preference is **GRANTED**;

20      2. Trial in the matter of *Olah. v. Monsanto Company, et al.*, No. 19STCV33093 is set for

21  _____, 2020.

22      **IT IS SO ORDERED.**

23

24  Date: _____, 2019

25                              _____
                              HONORABLE WINIFRED SMITH
26                              JUDGE OF THE SUPERIOR COURT

27
28

1

[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR TRIAL PREFERENCE

E-Served: Dec 16 2019  5:12PM PST  Via Case Anywhere

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ALAMEDA**

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550) | JCCP NO. 4953 |
| **ROUNDUP PRODUCTS CASES** | ASSIGNED FOR ALL PURPOSES TO HONORABLE WINIFRED SMITH DEPARTMENT 21 |
| THIS DOCUMENT RELATES TO: | **[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** |
| *Olah. v. Monsanto Company, et al*., (Super. Ct. County of Los Angeles, Case No. 19STCV33093) | Hearing Date: January 10, 2020 Time: 10:00 a.m. Department: 21 **Reservation No.: R-2143270** |

Upon reviewing and considering Plaintiff Mary Olah's Motion for Trial Preference, the Court HEREBY ORDERS THAT:

1.  Plaintiff's Motion for Trial Preference is **GRANTED**;

2.  Trial in the matter of *Olah. v. Monsanto Company, et al.*, No. 19STCV33093 is set for

    _____, 2020.

**IT IS SO ORDERED**.

Date: _____, 2019

_____
HONORABLE WINIFRED SMITH
JUDGE OF THE SUPERIOR COURT

1

## PROOF OF SERVICE

2

3
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

4
I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 10940 Wilshire Blvd., 17th Floor, Los

5
Angeles, CA 90024.

6
On December 16, 2019, I served the following document(s): **[PROPOSED] ORDER ON**

7
**PLAINTIFF'S MOTION FOR TRIAL PREFERENCE** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

8

9
[X]   **BY ELECTRONIC TRANSFER TO CASE ANYWHERE** via the Internet pursuant to the Court's Case Management Order No. 2 Authorizing Electronic Service dated March 23, 2018.

10

11
[  ]   **BY ELECTRONIC SERVICE:** I caused such document(s) to be served on the above referenced individual(s) by email transmission. The address of the sending computer and the address(es) of the receiving computers are listed as:

12

13
[X]   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing

14
correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is

15
presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. (*Chair, Judicial Council of California only*)

16

17
**Defendant Orchard Supply Hardware:**

18
Ernesto Resurreccion

19
Deputy Secretary of State
Secretary of State on behalf of

20
Orchard Supply Hardware Corporation
1500 11th Street, 3rd Floor

21
Sacramento, CA 95814

22
I declare under penalty of perjury under the laws of the State of California that the above is

23
true and correct.

24
Executed on December 16, 2019 at Los Angeles, California.

25

26

27
_____
Valeriya Adlivankina

28

2

[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR TRIAL PREFERENCE