Jere L. Beasley (BEA020)
jere.beasley@beasleyallen.com
Rhon E. Jones (JON093)
rhon.jones@beasleyallen.com
John E. Tomlinson (TOM014)
john.tomlinson@beasleyallen.com
LaBarron N. Boone (BOO029)
labarron.boone@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS AND MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama  36103
Phone: (334) 269-2343
Fax:(334) 954-7555

Jamie A. Johnston (JOH164)
jamie@jjohnstonpc.com
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone:  334.202.9228
Facsimile: 334.265.8789

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>*John t. Moore, Jr. v Monsanto Company, et al.*, Case No. 3:20-cv-01010 | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S MOTION TO REMAND**<br><br>*[Filed concurrently with the Declaration of John E. Tomlinson and Exhibits]*<br><br>Hearing Date:          April 2, 2020<br>Time:                       10:00 AM |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on April 2, 2020 at 10:00 A.M., in Courtroom 4

.

1  of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue,

2  San Francisco, CA 94102, or as ordered by the Court, Plaintiff, John T. Moore, Jr. ("Plaintiff") will present

3  his Motion to Remand.

4  Dated:   February 19, 2019                    By:  /s/ John E. Tomlinson

5                                                          John E. Tomlinson (TOM014)
                                                           john.tomlinson@beasleyallen.com
6                                                          **BEASLEY, ALLEN, CROW, METHVIN,**
                                                           **PORTIS AND MILES, P.C.**
7                                                          Post Office Box 4160
                                                           218 Commerce Street
8                                                          Montgomery, Alabama  36103
                                                           Phone: (334) 269-2343
9                                                          Fax:(334) 954-7555

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………...i

TABLE OF AUTHORITIES……………………………………………………………ii

INTRODUCTION………………………………………………………………………1

STATEMENT OF ISSUES……………………………………………………………1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………..2

ARGUMENT AND AUTHORITY………………………………………………………4

I.  Monsanto's Notice of Removal is Untimely and Solely Based on Inadmissible and Improper

Evidence………………………………………………………………………....4

II.  Monsanto Cannot Meet the High Legal Standard Necessary to Establish Fraudulent Joinder……….5

   (a) Alabama Co-op is a Legitimate Forum Defendant Because Plaintiff has Alleged Valid Alabama

   State Law Claims………………………………………………………………6

      1.Moore's Negligence and Failure to Warn Claims Against Alabama Co-Op……………….....7

      2.Moore's Fraud Claims Against Alabama Co-Op………………………………….....8

      3.Plaintiff's Breach of Warranty Claims………………………………………..…...13

      4.Plaintiff's Other Claims………………………………………………………....14

CONCLUSION………………………………………………………………...15

19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Cases                                                                                              Page(s)

*Abrams v. Olin Corp.*,
  248 F.R.D. 283, 287 (S.D.Ala.2007)…………………………...………………………………6

*Corry v. Sylvia y Cia*,
  192 Ala. 550, 560 (1915)………………………………………………………………………10

*Crowe v. Coleman*,
  113 F.3d 1536, 1538 (11th Cir.1997)…………………….…………………………………….5

*Ellis v. Zuck*,
  409 F. Supp. (N.D. Ala. 1976)………………………………………………………………11

*Ex parte General Motors*,
  769 So.2d 903, 912 (Ala.2000)………………………………………………………………14

*Florence v. Crescent*,
  484 F.3d 1299 (11th Cir. 2007)…………………………………………………………………6

*Ford New Holland, Inc., v. Proctor-Russell Tractor Co.*,
  630 So.2d 395 (Ala.1993)……………………………………………………………………...9

*Henderson v. Washington Nat. Ins. Co.*,
  454 F.3d 1278,1284 (11th Cir. 2006)…………………….……………………………….5, 6

*Horton Homes, Inc. v. Brooks*,
  2001 WL 1520623 (Ala. Nov. 30, 2001)……………………………………………………14

*In re Fite*,
  235 So.2d 809, 812 (Ala.1970)……………………………………………..…………………4

*Roland v. Cooper*,
  Ala.Civ.App. 2000 (2981433)………………………………...……………………………....11

*Shelter Modular Corp., v. Cardinal Enterprises*,
  347 So.2d 1334 (Ala. 1977)……………………………………………………………9, 11

*Triggs v. John Crump Toyota , Inc.*,
  154 F.3d 1287 (11th Cir. 1998)…………………………………………………………………6

*Walden v. United States Steel Corp.*,
  759 F.2d 834 (11th Cir. 1985)…………………………………………..………………………8

*Weaver v. Dan Jones Ford, Inc.*,
  679 So.2d 1106, 1113 (Ala.Civ.App. 1996)……………………………………………………14

*Wiginton v. Hagler*,
  585 So.2d 5,6 (Ala. 1991)…………………………………………………..…………………4

ii

_____
Plaintiff's Motion to Remand  3:20-cv-01010

*Yates v. Medtronic, Inc.,*
  2008 WL 4016599…………………………………………………………………..6

Statutes

28 U.S.C. §§ 1332, 1441, 1446………………………………………………………...……1

28 U.S.C. § 1447 (c)………………………………………………………………………15

Ala. R. Civ. P. 30…………………………………………………………………...………4

Code of Alabama (1975) §6-5-102……………………………………………….,,………9

1

2

**INTRODUCTION**

3

Plaintiff John Thomas Moore, Jr., ("Moore") an Alabama citizen, respectfully moves this Court to

4

remand his case to the Alabama state court where the matter had been pending for one year prior to removal.

5

Defendant Monsanto Company ("Monsanto") improperly removed this case under 28 U.S.C. §§ 1332,

6

1441, and 1446 by asserting that Monsanto's non-diverse co-defendant, Central Alabama Farmers

7

Cooperative, Inc., ("Alabama Co-Op") was fraudulently joined for the purpose of destroying diversity.

8

Monsanto is incorrect and has failed to meet its burden as the removing party.

9

Moore worked as a crop farm worker in Dallas County, Alabama where he was trained, educated

10

and assisted by Alabama Co-Op.  Alabama Co-Op not only sold Moore Roundup, they also provided on-

11

site training and education to Moore on the use, composition, purpose and application of Roundup. This

12

case began in state court in Dallas County, Alabama where it was litigated, set for trial, and remained for

13

**one year** until Monsanto in an effort to avoid the upcoming March 2020 trial abruptly removed the case to

14

federal court. In his Complaint, Moore brought claims against Alabama Co-Op. See Doc. #34 at ¶ ¶58-73

15

(product liability); ¶¶74-93 (failure to warn); ¶¶94-102 (negligence); ¶¶103-108 (breach of express

16

warranty); ¶¶109-114 (breach of implied warranty); ¶¶115-125 (negligent misrepresentation/fraud); ¶¶126-

17

128 (unfair & deceptive trade practices); ¶¶129-130 (combined & concurring); ¶¶ 131-133 (conspiracy); ¶

18

¶ 134-138 (wantonness).  (Doc. #34) As stated below, Monsanto's removal was invalid, untimely, and

19

unwarranted based on the facts and applicable Alabama Law.

20

**STATEMENT OF ISSUES**

21

22

First, Monsanto's removal was untimely as it should have been filed within thirty days of service

23

(it was filed 365 days after the action was commenced). Monsanto attempted to explain its untimeliness by

24

offering an unfinished and inadmissible deposition of Moore. Under Alabama law, Moore's deposition

25

could not be used at the time of Monsanto's removal because it was not only unfinished, but it had not been

26

read and signed by Moore. The partial deposition relied upon by Monsanto in its removal was inadmissible

27

at the time of the filing by Monsanto and therefore making the removal invalid and untimely.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second, even allowing the inadmissible testimony, Monsanto's theory that the Alabama Co-Op was fraudulently joined to defeat jurisdiction fails because the undisputed evidence illustrates the <u>possibility</u> that Moore has stated valid causes of action against Alabama Co-Op under Alabama law. Monsanto has not carried its heavy burden of establishing that Alabama Co-Op was fraudulently joined.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Based on early studies showing that glyphosate could cause cancer in lab animals, the EPA originally classified glyphosate as possibly carcinogenic to humans in 1985. (Doc. #34, ¶ 17) From 1981 to approximately 1986, Moore worked as a crop farm worker in Dallas County, Alabama. He used Roundup regularly during his entire time on crops including cotton, soybeans and corn. *Id* at ¶ 34 Specifically, Moore mixed and applied Roundup on the subject crops located in Dallas County, Alabama by and through the assistance of Alabama Co-Op. *Id* at ¶ 35 Alabama Co-Op undertook to select for Moore the product to be used. Alabama Co-Op had the opportunity to inspect and the superior knowledge of the Product to that of Moore. *Id* at ¶39 Moore was 16 years old at the time and the representative of Alabama Co-Op (Johnson) was someone who Moore respected and considered a friend. Alabama Co-Op had far more knowledge about farming and Roundup than Moore did, and Moore relied on their expertise. (Exhibit 1, pg. 177: L. 7-10) (MDL Doc. 1361-4, ¶ 5) Alabama Co-Op and its representative were chemical specialists/consultants who Moore dealt with regularly and who would visit Moore at his farm and train Moore on how to use the Roundup product, including mixing and application of the product. (Exhibit 1 at pg. 60: L. 14-19).  On several occasions Alabama Co-Op would come out to the farm and actively mix the Roundup as training for Moore. (MDL Doc. #1361-4, ¶ 6) during these training sessions Alabama Co-Op never told Moore of any safety concerns or about the risk of cancer and did not recommend Moore wear any protective gear. (Doc. #34, ¶ 36) (Exhibit 1, p. 265: L. 7-11) (MDL Doc. #1361-4, ¶¶ 7-8) On September 26, 2017, Moore was diagnosed with Follicular Non-Hodgkin's Lymphoma. (Doc. #34, ¶ 41)

On September 25, 2019, Moore filed suit in the Circuit Court of Dallas County, Alabama against three defendants including Monsanto (manufacturer), Alabama Co-Op (specialized distributor, representative, trainer, agent and seller), and Defendant Helena Agri-Enterprises, LLC ("Helena")

(specialized distributor, representative, agent, trainer, marketer and seller). Alabama Co-Op is an Alabama entity while Defendants Monsanto and Helena are out of state corporations. The citizenship of the defendants was well stated in Moore's Complaint. [Doc. #2] [1] The same allegations are asserted against all Defendants – both the diverse and non-diverse defendants. All the Defendants answered the Complaint and Amended Compliant. Subsequently, all the defendants collectively agreed upon a Scheduling Order which the circuit court adopted. [Doc. #95] The parties worked together in accordance with the Scheduling Order, including disclosure of Moore's expert witnesses.

Moore began his deposition on Monday, September 23, 2019 where it was attended by representatives for all defendants. The deposition ended prior to its completion due to Moore becoming tired due to his health. (MDL Doc. #1361-4, ¶ 3) All counsel agreed to continue the deposition and to tentatively resume it four days later Friday, September 27, 2019. *Id* ¶ 3   Despite this fact, Monsanto abruptly filed its Notice of Removal on September 25, 2019, [USDC Doc.#1], based on arguments of diversity of citizenship and fraudulent joinder. On September 26, 2019, Moore filed his Motion to Remand [USDC Doc. #2] and subsequently on September 30, 2019, a Supplemental Brief for Remand [USDC Doc. #3] [1]   On October 1, 2019 the Judicial Panel on Multidistrict Litigation ("Panel") issued a Conditional Transfer Order [MDL Doc. #1279] and a Notice of Filing of CTO and Publication of Briefing Schedule. [MDL Doc. #1280]On October 2, 2019, Moore filed with the District Court a Motion to Expedite Ruling on his Motion to Remand. [USDC Doc. #8].  On October 3, 2019, Monsanto filed a Motion to Stay. (USDC Doc. #11). Subsequently, on October 4, 2019, Moore filed his Motion to Suppress and Strike his unsigned and unfinished deposition transcript [USDC Doc. #13] as well as Monsanto's Notice of Removal, Monsanto's brief (USDC Doc. #13) and Monsanto's Motion to Stay. (USDC Doc. #14). Moore filed his Response in Opposition to Monsanto's Motion to Stay, (USDC Doc. #15), citing applicable case law and referencing his previously filed Motion to Strike as dispositive of both Monsanto's Motion to Stay and Notice of Removal. On the same date, at 4:32 pm, the Court granted Monsanto's Motion to Stay without ruling on any of Moore's motions. (USDC Doc. #17). On October 8, 2019, Moore filed his Notice of Opposition

---

[1] Plaintiff incorporates his Motion to Remand and Request for Attorney's fees, Supplemental Brief for Remand, and Motion to Strike as if stated fully herein

PLAINTIFF'S MOTION TO REMAND 3:20-cv-01010

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with the Panel. [MDL Doc. #1308] On October 22, 2019, Plaintiff filed a Motion to Vacate CTO-156 and Memorandum in support of his Motion to Vacate (MDL Doc. #1361). On February 5, 2020, The Panel entered an Order transferring this case to the MDL (MDL Doc. #1616).

## ARGUMENT AND AUTHORITY

### I.   MONSANTO'S NOTICE OF REMOVAL IS UNTIMELY AND SOLELY BASED ON INADMISSABLE AND IMPROPER EVIDENCE

As referenced above, Moore's deposition began on September 23, 2019; however, the deposition was not completed. It was to be continued, with the completion set for a proposed date later that week. Moore requested to read and sign his deposition.[2] (*See* Affidavit of John Thomas Moore, Jr., [USDC Doc. #13-1, ¶ 3]; *see also* Affidavit of Lois Anne Robinson, [USDC Doc. #13-2,¶ 4]). The Defendants never agreed on a date to finish Moore's deposition, as was previously discussed. (*See* Affidavit of John Thomas Moore, Jr., [USDC Doc. #13-1, ¶ 3]).

As set forth in more detail in Moore's Motion to Suppress and Strike, (USDC Doc. #14), Monsanto's use of Moore's unfinished and unsigned deposition transcript fails to comply with Rule 30 of the Alabama Rules of Civil Procedure. Subpart (e) of Rule 30 permits the witness up to 30 days to review and sign off on his deposition transcript prior to it being used as evidence. Ala. R. Civ. P. 30. Noncompliance with this rule precludes admission of depositions where the deponent has not waived the signature requirement, the strict requirement for signatures has not been met, and the opposing party has timely moved to suppress the deposition. *See In re Fite*, 235 So.2d 809, 812 (Ala. 1970) ("The three [unsigned] depositions in the instant case are clearly not admissible unless defendant waived the statutory requirement that the witness must sign the deposition."); *see also Wiginton v. Hagler*, 585 So.2d 5, 6 (Ala. 1991) (holding that the unsigned deposition of a medical expert witness taken by defense counsel was not admissible upon presentation by plaintiff when "[t]he parties and the witness did not stipulate to any waiver of the requirement that the deponent review and sign the deposition"). *Id*

---

[2]  Plaintiff has since provided an errata sheet correcting certain items and signing. It is included in Exhibit 1 to this Motion.

Moore's unfinished and unsigned deposition transcript could not be used as evidence under Alabama law at the time of the filing of Monsanto's removal and is therefore inadmissible for that purpose. Moore's deposition transcript is Monsanto's sole support for filing its Notice of Removal and Motion to Stay. (*See, supra*, USDC Doc. #1, p. 3, ¶ 5; and p. 15, ¶ 34). Without the use of such evidence to serve as "other paper," Monsanto's Notice of Removal is untimely and due to be stricken and Moore's Motion to Remand granted.

## II.     MONSANTO CANNOT MEET THE HIGH LEGAL STANDARD NECESSARY TO ESTABLISH FRAUDULENT JOINDER

Monsanto's sole basis for its removal is the alleged existence of diversity jurisdiction based on a fraudulent joinder argument. (USDC Doc. #1, ¶ 3). Given the strong presumption against removal jurisdiction, Monsanto carries a heavy burden. The burden of establishing fraudulent joinder is a <u>heavy</u> one. *See Crowe v. Coleman,* 113 F. 3d 1536, 1538 (11ᵗʰ Cir. 1997) (emphasis added).  The court in *Crowe* reiterated that in a motion to remand the jurisdictional inquiry 'must not subsume substantive determination' finding that: "…When considering a motion for remand, **federal courts are not to weigh the merits of a plaintiffs claim beyond determining whether it is an arguable one under state law**…If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.  *Id.* at 1538 (emphasis added). The *Crowe* court reiterated that remand is mandated if there is <u>even a slight possibility</u> that a state court would find that the complaint states a plausible claim against the resident defendant. It went on to state:   "This consequence makes sense given the law that "absent fraudulent joinder, **plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination.**" *Parks v. The New York Times Co.,* 308 F. 2d 474, 478 (5ᵗʰ Cir. 1962). *Id* at 1538. (emphasis added). When reviewing a claim of fraudulent joinder, the reviewing court must find that the removing defendant supported his claim by a showing of clear and convincing evidence. *Henderson v. Washington Nat. Ins. Co.,* 454 F. 3d 1278, 1284 (11ᵗʰ Cir. 2006); *Yates v. Medtronic, Inc.,* 2008 WL 4016599; *Abrams v. Olin Corp.* 248 F. R. D. 283, 287 (S.D. Ala. 2007). The issue then is whether Monsanto has proven by clear and convincing evidence that no Alabama court can

find this Complaint sufficient to state a viable claim against Alabama Co-Op. *See Henderson* 454 F. 3d at 1284.

In *Florence*, *v. Crescent,* 484 F. 3d at 1299 (11th Cir. 2007) the Eleventh Circuit explained the test regarding fraudulent joinder as: "if there is <u>any possibility</u> that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." (emphasis added) *See also Triggs v John Crump Toyota, Inc.,* 154 F. 3d at 1288.   Monsanto cannot establish that there is no possibility that state law might impose liability. As such, remand to the Circuit Court of Dallas County, Alabama is warranted.

### (a) ALABAMA CO-OP IS A LEGITIMATE FORUM DEFENDANT BECAUSE PLAINTIFF HAS ALLEGED VALID ALABAMA STATE LAW CLAIMS

As referenced in the Introduction above, Moore has pled well-recognized causes of action against Alabama Co-Op. These causes of action include but are not limited to specific allegations that Alabama Co-Op <u>knew or should have known</u> of the carcinogenic nature of the Roundup they provided to Moore, that Alabama Co Op provided hands-on training on the farm to Moore in the use of and application of Roundup, and that Alabama Co-Op also educated Moore on the Roundup product.  Despite these facts, Alabama Co-Op failed to adequately warn Moore of the risks of exposure to Roundup as well as that protective equipment that should be worn. Further, Moore also alleges that Alabama Co Op negligently and/or intentionally misrepresented or omitted information regarding Roundup's safety. Also, Moore alleges that as a seller of the Roundup, Alabama Co-Op, breached express and implied warranties.

As previously referenced, Monsanto's petition for removal is solely based on portions of Moore's deposition (which was not finished and signed). Monsanto makes several erroneous assertions regarding Moore's testimony and how it affects the possibility of him stating valid claims in this lawsuit.  Although Monsanto attempts in its removal to take bits and pieces of Moore's unfinished and unsigned testimony to state otherwise, there is still nothing in Moore's testimony that contradicts the allegations in his Complaint or that provides clear and convincing evidence to suggest there is no possibility that he can state a valid

cause of action against Alabama Co-Op. By discussing such deposition testimony below, Moore does not in any way waive his argument (set forth in section I above) that Monsanto's use of his testimony makes its removal documents untimely and invalid.

### 1. Moore's Negligence and Failure to Warn Claims against Alabama Co-Op

Monsanto erroneously argues that based on Moore's testimony there "were no independent acts of negligence" by Alabama Co-Op and that it was "merely a conduit" of Monsanto. [USDC Doc. #1].  As illustrated below, Moore's recovery against Alabama Co-Op for Negligence and Failure to Warn are still arguable and possible under Alabama Law. In his Complaint Moore alleges, among others not specifically referenced herein, that Alabama Co-Op: *"…provided Plaintiff instructions and assisted Plaintiff with the usage, handling, mixing, applying, and spreading of Roundup® and in doing so provided Plaintiff assurances of the safety of Roundup®. …never provided any warning that Roundup® ..products provided to Plaintiff which included the ingredient glyphosate were injurious to Plaintiff's health, did not recommend safety gear.."*(Doc. #34, ¶ 36).  Further, Moore alleges Alabama Co-Op: "… *knew, or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and, specifically, the carcinogenic properties of the chemical glyphosate. Id* ¶¶ 79-83  Moore's allegations of negligence by Alabama Co-Op due to concealment and a failure to warn included: "*Failing to disclose to Plaintiff, users, consumers, and the general public that the use of and exposure to Roundup presented severe risks of cancer and other grave illnesses; and Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use and/or be exposed to Roundup® products." Id* ¶¶ 79-83

Moore's unfinished and unsigned deposition testimony illustrates his regular and direct communications and training with Alabama Co-Op and its employee Harold Johnson regarding the Roundup Products being sold to and used by Moore. The testimony also illustrates that Alabama Co-Op and Mr. Johnson were chemical specialists who had superior knowledge of the Roundup products and spent a lot of time with Moore by visiting his farm and where he worked (Exhibit 1, pg. 177: L. 6-10)  It is also very clear from Moore's unfinished and unsigned testimony that the Alabama Co-Op and Mr. Johnson took

7

independent acts to advise and train Moore on how to mix and apply Roundup without disclosing that it was not safe or had side effects. *Id* at pgs. 60,61; *Id* pg. 265: 7-11 Moore also testifies in his affidavit (MDL Doc. #1361-4 ¶ 6) that "...**on several occasions when he came out to the farm on behalf of Alabama Co-Op and trained me by actively mixing the Roundup himself. Mr. Johnson did not wear any gloves or any other protective equipment while mixing it or at any point when he was training me. This way of mixing and spraying Roundup without protective gear is something I learned from Mr. Johnson and Alabama Co- Op and this is the way I continued to do it the rest of my years using Roundup."** Moore further testified that Mr. Johnson with Alabama Co-Op never discussed the risk of cancer with him. (Exhibit 1, pp. 176, 177).  Moore also testified that he thought Alabama Co-Op was negligent for not telling him about the risk of cancer and safety concerns with Roundup use. *Id* pg. 177: L. 18-22

It is very clear from Moore's unsigned deposition testimony that Alabama Co-Op not only provided the Roundup to Moore but as an expert in the industry took independent acts to educate him on the product through on-site presentations and other means. Alabama Co-Op was far more knowledgeable about the product than Moore who at the time was sixteen years old. Therefore, given these circumstances, Alabama Co-Op arguably had a duty to inform Moore that Roundup was cancer causing and that he should take certain safety precautions when using the product. Also, even when there is no duty initially, a well-recognized principle in tort law is that <u>one who volunteers to act</u>, though under no duty to do so, is thereafter charged with the <u>duty of acting with due care and is liable for any negligence in connection with those acts.</u> *Walden v. United States Steel Corp*., 759 F. 2d 834 (11th Cir. 1985). It is clearly possible and arguable that Moore has stated a cause of action based on a direct duty, or a voluntary undertaking of one, by Alabama Co-Op, a breach of that duty, a causal relationship, and resulting injury from that breach. Therefore, Monsanto cannot validly claim that there is no possibility that Moore can state a cause of action for negligence and failure to warn against Alabama Co-Op.

### 2.  <u>Moore's Fraud Claims against Alabama Co-Op</u>

Monsanto erroneously argues that based on Moore's testimony there "were no independent acts of fraud" by Alabama Co-Op and that it was "merely a conduit" of Monsanto. As illustrated below, Moore's

claim against Alabama Co-Op for Negligent Misrepresentation and/or Fraud is still arguable and possible under Alabama Law. Moore has alleged among other things in his Amended Complaint that *"Defendants had a duty to disclose material information about serious health effects to consumers such as Plaintiff. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Defendants' dangerous products.* Plaintiff also alleges that "…*Defendants fraudulently suppressed material information regarding the safety of Roundup®, including the dangers known by Defendants to be associated with or caused by the use of or exposure to Roundup® and glyphosate*." (Doc. #1, ¶¶ 117, 119)

Section 6-5-102, Code of Alabama (1975) provides that a suppression of a material fact which the party is under an obligation to communicate constitutes fraud, and that this obligation to communicate may arise from the confidential <u>relation of the parties</u> or from the <u>particular circumstances of the case</u>. The elements of an action for suppression are: (1) A duty to disclose facts; 2) Concealment or nondisclosure of material facts by the defendant; (3) Inducement of the plaintiff to act; and (4) Action by the plaintiff to his injury. *Ford New Holland, Inc. v. Proctor-Russell Tractor Co.* 630 So.2d 395 (Ala. 1993) Monsanto argues in its Removal that "an action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed." As discussed in more detail below, Alabama law clearly holds that the state of mind or knowledge of the specific agent of the corporation with whom the plaintiff deals may not necessarily be determinative of the state of mind of the defendant. *Shelter Modular Corp. v. Cardinal Enterprises*, 347 So.2d 1334 (Ala. 1977), Alabama Co-Op (and not its individual representatives) is the actual named Defendant in this case.

First, as to the elements of suppression referenced above, A fraudulent statement is not required to satisfy a claim for suppression under Alabama Law. In other words, "silence is fraudulent, because the silence amounts to an affirmation that a state of things exist which does not, and the party is deprived to the same extent that he would have been by positive assertion" *Corry v. Sylvia y Cia,* 192 Ala. 550, 560 (1915). Furthermore, Moore has alleged and testified as to Alabama Co-Op and its representative, Harold Johnson's, regular and direct communications and training regarding the Roundup Products being sold to

and used by Moore. The testimony also illustrates that Alabama Co-Op and Mr. Johnson were chemical specialists who had superior knowledge of the Roundup products. (Exhibit 1, pp. 59-60 and 177: L. 7-10) (MDL Doc. #1361-4, ¶ 5) It is also clear from Moore's testimony that Mr. Johnson on behalf of Alabama Co-Op would even visit the farm to provide training. (Exhibit 1, pp. 59- 60) (MDL Doc. #1361-4, ¶ 6)

Certainly, these circumstances present at the very least a possibility as to Alabama Co-Op's duty to disclose material facts concerning the hazards and safety concerns associated with Roundup. Moore clearly testified that Alabama Co-Op and Mr. Johnson did not disclose to him the cancer risk involved with Roundup use. (Exhibit 1, pp. 176, 177 and 265: L. 7-11) (MDL Doc. #1361-4, ¶ ¶ 7-8)   Furthermore, Moore testified that Alabama Co-Op did discuss "safety and use" with him and showed him how to use Roundup, which included mixing and calibrating the spray rigs for spraying the product.   During this process, Alabama Co-Op did not warn or advise Moore about the cancer risk or about wearing protective gear when using Roundup. (Exhibit 1, p. 265: L. 7-11) (MDL Doc. #1361-4, ¶ ¶ 7-8) Not only did Mr. Johnson and Alabama Co-Op not warn Moore, but Mr. Johnson actively mixed Roundup with Moore without using gloves or any other protective gear. (MDL Doc. #1361-4, ¶6). It is clear these training sessions with Plaintiff were <u>independent acts by Alabama Co-Op</u> and unrelated to the product design or manufacture of the product. These actions directly suppressed/concealed material safety information from Moore.

Monsanto falsely alleges that during his deposition, "*plaintiff testified that he could not recall any employee from Alabama Co-Op making any statements or representations to him about the safety of Roundup®-branded products.* (Exhibit 1, *p.176:1-14).* Interestingly, Monsanto does not cite further down the same page of the deposition where Moore includes Harold Johnson and Alabama Co-Op in a response about safety.  In fact, Moore states that Bruce Henderson for Helena Chemical and Harold Johnson for Alabama Co-Op spoke to him about the safety of Roundup and that they "for sure" did not say anything to him about a cancer risk. *Id* pg. 176: 20-25, 177: 2-5

Also, even if Monsanto argues that Alabama Co-Op had no initial duty to disclose, under Alabama Law, though one may be under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiry, he is bound not only to state the truth but also not to suppress or

conceal facts within his knowledge which will materially qualify those stated; if he speaks at all, he must make a full and fair disclosure. *Ellis v. Zuck,* 409 F. Supp. 1151 (N. D. Ala 1976). In the present case there is no question based on Moore's testimony that Alabama Co-Op not only had an initial duty, but also undertook this duty of explaining, by actively demonstrating, the "use and the safety" of Roundup at the store and on visits to the farm but failed to say anything to Moore that it could cause cancer and that he should wear protective gear..

Second, in its removal, Monsanto misstates who Moore is actually referencing in his deposition when specifically discussing concealment to cause bodily harm or deception. It is very clear from the transcript when read, Moore only answered questions as to one specific agent/employee of Defendant Alabama Co-Op (Johnson) during exchanges in his testimony. (MDL Doc. #1361-4, ¶ ¶ 7, 8)The question or speculation by Moore regarding the state of mind or intent of Mr. Johnson to conceal to intentionally cause Moore bodily injury at that time does not include or automatically absolve the actual defendant corporation – Alabama Co-Op from liability. Alabama law clearly holds that the state of mind or knowledge of the specific agent of the corporation with whom the plaintiff deals may not necessarily be determinative of the state of mind of the defendant. In *Shelter Modular Corp. v. Cardinal Enterprises*, 347 So.2d 1334 (Ala. 1977<u>) the court held that a corporation cannot escape liability in fraud cases by showing that the agent through whom it acted was without knowledge of the true facts.</u> <u>The issue in those cases is whether the corporation had knowledge of the true facts.</u> <u>Furthermore, an agent is deemed to have notice of whatever the principle has notice of.</u> *Roland v. Cooper* (Ala. Civ. App. 2000 (2981433) (emphasis added) The agent was the instrument of the company's fraud though he lacked the intent to defraud the purchaser. *Id.*

In the present case, Moore did not testify that the actual Defendant Alabama Co-Op did not have the requisite state of mind or intent to conceal and was not misrepresenting or concealing vital information or passing along incomplete information regarding the risks involved with the use of Roundup. Further, Moore states in his Affidavit that he "*firmly believe(s) that Alabama Co-Op concealed and kept information from me about the safety of Roundup so that I would continue to use it.*" (MDL Doc. #1361-4, ¶ 7). In addition, Mr. Johnson's visits and active participation in mixing Roundup with Plaintiff without wearing

11

protective gear, did actively suppress/conceal from Moore the need to wear such protective gear while mixing and applying Roundup and induced Moore to act in accordance with that training. "*Mr. Johnson knew things…that that he didn't disclose*." *Id* ¶ 8 As referenced above, even if Mr. Johnson did not personally know about the carcinogenic risk of Roundup (which Plaintiff has not testified), Alabama Co-Op is not absolved from liability by simply raising that argument as a defense. Furthermore, Moore would require additional discovery as to Alabama Co-Op's knowledge or intent.

Third, Monsanto also makes assertions in its brief regarding Moore's testimony and "proof" of Alabama Co Op's knowledge. *Id.* at 77:8-22. 21. And that he testified "that he did not have any factual basis to allege that any person at CAF Coop (Alabama Co-Op) had such knowledge". [USDC Doc. #1]. Monsanto's statements above completely mis-construe Moore's response. The actual question asked by Monsanto related to Alabama Co-Op was "Going back to the 1980's, do you have any proof **or** any reason to believe that the co-op knew Roundup products could allegedly cause cancer?" (Exhibit 1, pg. 77: 16-22). The transcript shows that Moore answered "No" as to having "proof". Moore did NOT answer "No" as to whether he had a reason to believe that <u>Alabama Co-Op</u> knew Roundup products could cause cancer (Also See MDL Doc. #1361-4, ¶ 9) Monsanto's deposition question regarding Moore's "proof" that Alabama Co-Op knew Roundup products could allegedly cause cancer, does not solicit a response from Moore regarding what he alleges in this case regarding Alabama Co-Op's knowledge. "Proof" against a Defendant comes through and after a full and complete discovery process. (MDL Doc. #1361-4, ¶ 9) Also, Monsanto's statement about Moore testifying "that he did not have a factual basis to allege "any person" at Alabama Co-Op "had such knowledge" is simply inaccurate and that is not found in the testimony. *Id* at ¶ ¶ ¶7,8,9)  If you look at the testimony Monsanto cites at (Exhibit 1, pp. 177:15 -178:3, Moore says nothing of the sort. Again, the passage Monsanto quotes deals specifically with the individuals Mr. Johnson at Alabama Co-Op and Bruce Henderson at Helena and whether these two individuals he had known since he was sixteen, concealed information to <u>intentionally cause him bodily injury</u>. Moore did not say "any person" at Alabama Co-Op, nor did he say Alabama Co-Op as the defendant corporation did not know about the cancer risk.

Fourth, Monsanto also attempts to hide behind a premature argument regarding the timing of

Alabama Co-Op's sales of Roundup to Moore and Alabama Co-Op's knowledge at the time. Monsanto argues that *"any such claim of fraudulent statements based on CAF Coop's purported knowledge of a potential cancer risk from Roundup®-branded products is further undermined by his testimony that the last relevant sale of Roundup®-branded products by the CAF Coop was in 1986, some 19 years prior to the 2015 IARC classification of glyphosate as a probable human carcinogen."(USDC Doc. #1).* Contrary to Monsanto's assertion, when IARC classified glyphosate as a probable human carcinogen does not provide absolute certainty as to when Defendants Monsanto and Alabama Co-Op first knew of the risks associated with the use of Glyphosate and Roundup. Moore has alleged in his Complaint that "Based on <u>early studies</u> showing that glyphosate could cause cancer in lab animals, the EPA originally classified glyphosate as possibly carcinogenic to humans in 1985." (Doc. #34, ¶17) Further Moore alleges, "In 1976, the FDA performed an inspection of IBT (Monsanto hired Industrial Bio-Test Laboratories) that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate. The EPA subsequently audited IBT; It too found the toxicological studies conducted for Roundup herbicide to be invalid. An EPA reviewer stated, after finding routine falsification of data at IBT, that it was hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits." *Id* at ¶ 20 "Three top executives were convicted of fraud in 1983." *Id* at ¶ 21.

Given that these alleged events transpired before and during the period of time Moore used Roundup purchased from Alabama Co-Op, and Alabama Co-Op trained him on its use (1981-1986), it is certainly possible that Alabama Co-Op was aware of such incidences and **<u>knew or should have known</u>** of the inherent carcinogenicity of the Roundup product provided to Moore given Alabama Co-Op's knowledge and expertise. Given the facts above, Monsanto cannot validly claim that there is no possibility that Moore can state a cause of action against Alabama Co-Op.

### 3. <u>Plaintiff's Breach of Warranty Claims</u>

Monsanto erroneously argues that based on Moore's testimony there "were no independent acts for "Breach of Warranty" by Alabama Co-Op and that it was "merely a conduit" for Monsanto. As illustrated above and below, Moore's recovery against Alabama Co-Op for Breach of express and Breach of implied

warranty is still viable and possible under Alabama Law. Interestingly, Monsanto only specifically addressed Moore's Breach of <u>Express</u> Warranty Count and not Moore's separate Count for Breach of Implied Warranty.

Alabama law recognizes breach of warranty claims against the sellers of defective goods. It is well established that a seller of goods can be liable under the AEMLD and for breach of warranty in Alabama. *Horton Homes, Inc. v. Brooks,* 2001 WL 1520623 (Ala. Nov. 30, 2001)(purchaser of a special order manufactured home was allowed to bring suit against both the seller and the manufacturer); *Ex parte General Motors,* 769 So. 2d 903, 912 (Ala. 2000)(buyer of a car which repeatedly stalled was allowed to bring a breach of warranty claim against the seller of the automobile); *Weaver v. Dan Jones Ford, Inc.,* 679 So. 2d 1106, 1113 (Ala. Civ. App. 1996)(implied warranty set forth in Uniform Commercial Code placed obligations on the sellers of goods. "As the seller of the truck, Dan Jones Ford may be held liable for breach of the implied warranties."). *Id* Here, the inclusion of Alabama Co-Op who sold the product Moore used is a proper party to the litigation and the Moore has stated valid claims against Alabama Co-Op for breach of express and implied warranties. Even further in this case, Alabama Co-Op <u>independently acted and came to the site</u> where Moore worked and provided him direct instructions/statements on the product including it would perform and how to mix and use it and Moore relied on Alabama Co-Op for these purposes. (Exhibit 1, pg. 177: L. 7-10 and pg. 60: L 14-19), (MDL Doc. 1361-4, ¶ ¶ 5, 6)  By visiting his work and farm, Alabama Co-Op knew that Moore was one of the ultimate users/consumers of the product regardless if the purchase did not come from his personal account. Moore was not simply a "pick up" or "delivery" person as Monsanto alleges. (MDL Doc. 1361-4, ¶ ¶ 5, 6) Monsanto has failed to establish that there is no possibility that the Moore has stated a claim in his Complaint. Remand is warranted here.

### 4. <u>Plaintiff's Other Claims</u>

Moore's claims for Unfair and Deceptive Trade Practices, Combined and Concurring Conduct, Conspiracy, and Wantonness stem from the specific causes of action and conduct of Defendants that Moore has previously addressed in the sections above. Based on those arguments, Moore's other claims are arguable and there is at least a possibility that Alabama state law might impose liability on Alabama Co-

14

Op under the circumstances alleged in the Complaint.  Therefore, Monsanto's arguments must fail.[3]

## **CONCLUSION**

Alabama Co-Op is a legitimate forum Defendant. Under existing Alabama law, the negligence, fraud, products liability, breach of warranty claims, and other the claims against Alabama Co-Op are arguable and Monsanto cannot meet its heavy burden of proving fraudulent joinder. Furthermore, Moore's unfinished and unverified deposition testimony was inadmissible based on Alabama law, making Monsanto's Notice of Removal untimely and invalid. Alabama Co-Op is a properly joined Defendant in this case and there is no complete diversity among the parties. Consequently, Plaintiff respectfully requests this Court to remand this matter to The Circuit Court of Dallas County, Alabama.[4]

Dated:  February 19, 2020

Respectfully submitted,

*/s/ John E. Tomlinson*
John E. Tomlinson (TOM014)
Jere L. Beasley (BEA020)
Rhon E. Jones (JON093)
LaBarron N. Boone (BOO029)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama 36103
Phone: (334) 269-2343
Fax:    (334) 954-7555
john.tomlinson@beasleyallen.com
jere.beasley@beasleyallen.com
rhon.jones@beasleyallen.com
labarron.boone@beasleyallen.com

---

[3]  If the Court requires additional analysis on these individual causes of action, Plaintiff will be happy to provide .

[4]  Plaintiff moves this Court to award attorneys' fees and costs incurred to him Pursuant to 28 U.S. Code 1447(c).

OF COUNSEL:

Jamie A. Johnston (JOH164)
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone: 334.202.9228
Facsimile: 334.265.8789
jamie@jjohnstonpc.com

*Attorneys for Plaintiff John T. Moore*

## CERTIFICATE OF SERVICE

I, John E. Tomlinson, hereby certify that, on February 19, 2020, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ John E. Tomlinson
JOHN E. TOMLINSON