**WILKINSON WALSH LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax:  202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax:  202-942-5999

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| *John Thomas Moore, Jr. v. Monsanto Co., et al.*, | |
| Case No. 3:20-cv-01010-VC | Date:        April 2, 2020
Time:       10:00 a.m.
Courtroom: 4 |

**TABLE OF CONTENTS**

ISSUE TO BE DECIDED ................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 2

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ................................................................................................................... 5

    I.   The Unrebutted Evidence Establishes That CAF Coop Was Fraudulently Joined, And, Therefore, This Court Has Diversity Jurisdiction Over This Case. .................................... 5

        A.   The Unrebutted Evidence Establishes That The Alabama Innocent Seller Act Bars Plaintiff's "Product Liability Actions" Against CAF Coop. ........................................ 5

        B.   The Unrebutted Evidence Establishes That The Remaining Legal Claims Against CAF Coop Are Also Not Viable. ........................................ 8

            1.   Plaintiff Does Not Have A Viable Fraud Claim Against CAF Coop. .................... 8

            2.   Plaintiff Does Not Have A Viable Wantonness Claim Against CAF Coop. ........ 11

            3.   Plaintiff Does Not Have Viable Claims Against CAF Coop Under the Alabama Deceptive Trade Practices Act. .............................................................. 11

            4.   Alabama Law Does Not Recognize a Claim for "Combined and Concurring Conduct." ............................................................................... 12

            5.   Plaintiff Does Not Have A Viable Conspiracy Claim. ......................................... 12

    II.  Monsanto Complied With All Procedural Requirements. ............................................... 12

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Income Life Ins. Co. v. Google, Inc.*,
    No. 2:11-CV-4126-SLB, 2014 WL 4452679 (N.D. Ala. Sept. 8, 2014) ...................................11

*Ex Parte Ankrom*,
    152 So. 3d 373 (Ala. Crim App. 2011), *aff'd*, 152 So. 3d 397 (Ala. 2013).............................7

*Arias v. Follet Higher Educ. Corp.*,
    No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ......................5, 8, 10

*Barnes v. Gen. Motors, LLC*,
    No. 2:14-cv-00719-AKK, 2014 WL 2999188 (N.D. Ala. July 1, 2014) .........................6, 8, 10

*Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*,
    628 So. 2d 560 (Ala. 1993).....................................................................................................7

*Carvalho v. Equifax Information Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ................................................................................................13

*Crowder v. Memory Hills Gardens, Inc.*,
    516 So. 2d 602 (Ala. 1987).....................................................................................................8

*David v. C.H. Robinson Int'l, Inc.*,
    No. CV 18-3268 FMO (Ex), 2018 WL 3213716 (C.D. Cal. June 29, 2018)..........................13

*Deerman v. Fed. Home Loan Mort. Corp.*,
    955 F. Supp. 1393 (N.D. Ala. 1997)......................................................................................11

*DGB, LLC v. Hinds*,
    55 So. 3d 218 (Ala. 2010) .....................................................................................................12

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ..............................................................................................13

*Ex parte Essary*,
    992 So. 2d 5 (Ala. 2007).......................................................................................................11

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
    No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016)..............5, 8, 10

*Grancare, LLC v. Thrower*,
    889 F.3d 543 (9th Cir. 2018) ..................................................................................................4

...

*Harris v. Bankers Life & Cas. Co.*,
 425 F.3d 689 (9th Cir. 2005) .......................................................................................12

*Higley v. Cessna Aircraft Co.*,
 No. CV 10-3345-GHK, 2010 WL 3184516 (C.D. Cal. July 21, 2010) ....................11

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
 No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) ....................4

*Jackson v. CIT Grp./Sales Fin., Inc.*,
 630 So. 2d 368 (Ala. 1993).........................................................................................11

*Lynn v. Fort McClellan Credit Union*,
 No. 1:11-CV-2904-VEH, 2013 WL 5707372 (N.D. Ala. Oct. 21, 2013)................12

*Martin v. Franklin Cap. Corp.*,
 546 U.S. 132 (2005).....................................................................................................14

*Martinez v. McKesson Corp.*,
 No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. April 7, 2016)...............5

*Morris v. Princess Cruises, Inc.*,
 236 F.3d 1061 (9th Cir. 2001) .................................................................................4, 5

*Pescia v. Auburn Ford-Lincoln Mercury Inc.*,
 68 F. Supp. 2d 1269 (M.D. Ala. 1999) .....................................................................12

*Republic of Kazakhstan v. Ketebaev*,
 No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. June 8, 2018) ....................3

*Ritchey v. Upjohn Drug Co.*,
 139 F.3d 1313 (9th Cir. 1998) .....................................................................................4

*Ruiz v. Wintzell's Huntsville, LLC*,
 Case No. 5:13-cv-02244-MHH, 2017 WL 4305004 (N.D. Ala. Sept. 28, 2017) ......6

*Salkin v. United Servs. Auto. Ass'n*,
 767 F. Supp. 2d 1062 (C.D. Cal. 2011) ....................................................................10

*Sam v. Beaird*,
 685 So. 2d 742 (Ala. Civ. App. 1996) .......................................................................12

*Sewell v. Smith & Wesson Holding Corp.*,
 No. 4:12-CV-00364-KOB, 2012 WL 2046830 (N.D. Ala. June 1, 2012).............6, 7

*Steel v. Viscofan USA Inc.*,
 No. 2:16-cv-808-GMB, 2017 WL 253960 (M.D. Ala. Jan. 19, 2017) ....................12

**Statutes**

28 U.S.C. § 1441 ................................................................................................................4

28 U.S.C. § 1446 ....................................................................................................1, 12, 13

Ala. Code § 6-5-521 ................................................................................................5, 6, 7, 8

Ala. Code. § 8-19-3 ...........................................................................................................11

Alabama Deceptive Trade Practices Act ....................................................................11, 12

Alabama Innocent Seller Act ...................................................................................1, 5, 6, 7, 8

**Other Authorities**

Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/unrelated .........................7

## ISSUE TO BE DECIDED

In an attempt to defeat federal diversity jurisdiction, Plaintiff has improperly sued a statutorily protected innocent seller from whom he merely picked up Roundup® products purchased by his employer *nearly 20 years* before IARC became the first (and still only) entity to conclude that glyphosate (the active ingredient in those products) could cause cancer. Although the Complaint did not provide sufficient details about the sales transactions for Monsanto to determine the viability of the allegations against the innocent seller, Central Alabama Farmers Cooperative, Inc. ("CAF Coop"), Monsanto learned critical new information during Plaintiff's deposition that completely undermined his claims against that innocent seller. These newly discovered facts foreclose any liability against CAF Coop for claims falling within the scope of "product liability actions" under Alabama law, as the Alabama Innocent Seller Act protects CAF Coop, a non-manufacturer seller, against such claims. The remaining (non-product liability) claims against CAF Coop are similarly not viable.

Two days after Plaintiff's deposition, Monsanto timely filed its Notice of Removal with Plaintiff's deposition transcript serving as the "other paper" under 28 U.S.C. § 1446(b)(3). As set forth in the Notice of Removal, there is complete diversity of citizenship between Plaintiff (an Alabama citizen) and the remaining defendants once the citizenship of the fraudulently joined defendant, CAF Coop, is disregarded. The statutory amount-in-controversy requirement is also satisfied, and Plaintiff does not contend otherwise.

While Monsanto has pierced the pleadings by presenting evidence to satisfy its removal burden, Plaintiff's remand arguments instead rely upon speculation and unsupported allegations from the Complaint. This is not sufficient to support remand when Monsanto has established – with unrebutted evidence – that removal was proper. Moreover, in direct response to Plaintiff's Motion to Remand, CAF Coop has submitted declarations from an executive board member and general manager, both of whom confirm that CAF Coop was not aware of any alleged defects regarding Roundup® products during the relevant period (between 1980 and 1986), including

whether such products were allegedly capable of causing cancer.  This lack of knowledge is fatal to Plaintiff's claims against CAF Coop.

The issue to be decided is whether, on this record, the Motion to Remand should be denied when Monsanto has established this Court has subject matter jurisdiction based on complete diversity of citizenship once the Court disregards the citizenship of the fraudulently joined defendant, CAF Coop.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 25, 2018, Plaintiff filed this lawsuit in the Circuit Court of Dallas County, Alabama, against Defendants Monsanto, Helena Agri-Enterprises, LLC ("Helena"), and CAF Coop.  First Am. Compl., No. 3:20-cv-01010-VC (N.D. Cal.), ECF No. 1-1 ("Complaint").  The thrust of Plaintiff's allegations against CAF Coop, a non-manufacturer seller, are that it sold Roundup® products to Plaintiff at a CAF Coop store located in Selma, Alabama, and that Plaintiff later developed non-Hodgkin's lymphoma ("NHL") because of his exposure to Roundup® products.  *See* Compl. ¶ 9.  The Complaint asserts claims against all defendants for Product Liability (*id*. ¶¶ 58-73); Failure to Warn (*id*. ¶¶ 74-93); Negligence (*id*. ¶¶ 94-102); Breach of Express Warranty (*id*. ¶¶ 103-08); Breach of Implied Warranty (*id*. ¶¶ 109-14); Negligent Misrepresentation and/or Fraud (*id*. ¶¶ 115-25); Unfair and Deceptive Trade Practices (*id*. ¶¶ 126-28); Combined and Concurring Conduct (*id*. ¶¶ 129-30); Conspiracy (*id*. ¶¶ 131-33); and Wantonness (*id*. ¶¶ 134-38).

During Plaintiff's deposition, Monsanto learned critical new information that completely undermined his claims against CAF Coop, the non-manufacturer seller, including:

1. Plaintiff never purchased Roundup® products from CAF Coop using his own money or account with the store; instead, he "picked up" those products at the Selma store for his employer, using his employer's account;

2. Plaintiff was exposed to Roundup® products that were "picked up" from CAF Coop only between 1980 and 1986—***nearly 20 years*** before IARC became the first (and still only) entity ever to conclude that glyphosate could cause cancer;

2
MONSANTO'S OPP'N TO PL.'S MOTION TO REMAND
3:16-md-02741-VC & 3:20-cv-01010-VC

3. Plaintiff only spoke with *one* CAF Coop employee about Roundup® products, Harold Johnson, a chemical specialist who was employed at the Selma store;

4. Plaintiff's last conversation with Harold Johnson about *anything* relating to Roundup® products was in the 1980s, and Plaintiff has never spoken with anyone else at CAF Coop regarding Roundup® products;

5. Plaintiff has no reason to believe that Harold Johnson misrepresented or concealed information from him regarding the safety of Roundup® products;

6. Plaintiff has no evidence to support his belief that CAF Coop, between 1980 and 1986, had any reason to believe that Roundup® products were allegedly carcinogenic.

*See* Notice of Removal ¶¶ 5-6, 18-21, 23, No. 3:30-cv-01010-VC (N.D. Cal.), ECF No. 1.

Based on this critical new information, Monsanto timely removed this case to the United States District Court for the Southern District of Alabama on September 25, 2019, relying upon federal diversity jurisdiction and the fraudulent joinder doctrine. Notice of Removal ¶¶ 4-7. On February 7, 2020, the case was transferred to this Court, and on February 19, 2020, Plaintiff filed the instant Motion to Remand. Pl's. Mot. to Remand, Case No. 3:16-md-02741-VC (N.D. Cal.), ECF No. 9602; Case No. 3:20-cv-01010-VC, ECF No. 25 ("Remand Mot.").[1] Plaintiff's Remand Motion does not dispute that Monsanto is a citizen of both Missouri and Delaware for purposes of diversity jurisdiction, nor does Plaintiff dispute that Helena is a citizen of New York for purposes of diversity jurisdiction. In addition, Plaintiff does not dispute that the jurisdictional amount-in-controversy requirement has been satisfied.

---

[1] Before this case was transferred to the MDL, Plaintiff filed a slew of motions with the Southern District of Alabama, including a Motion to Remand. Case No. 2:19-cv-00707-KD-N (S.D. Ala.), ECF Nos. 2-3, 13-14. The Remand Motion before this Court seeks to improperly "incorporate[] his [Plaintiff's] Motion to Remand and Request for Attorney's fees, Supplemental Brief for Remand, and Motion to Strike [that Plaintiff filed in the transferor court] as if stated fully herein," Remand Mot. at 3 n.1. The Court should reject Plaintiff's improper attempt to incorporate those briefs as it would violate the 15-page limit for opening briefs, *see* Standing Order for Civil Cases ¶ 33. *Cf. Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *10 (N.D. Cal. June 8, 2018) (noting that "inclusion of the pages Kazakhstan purports to incorporate by reference [from another brief] would cause Kazakhstan's opposition to exceed the page limits set forth in Civil Local Rules 7-3(a) and 7-4(b)").

**LEGAL STANDARD**

This Court has ruled that "the precedent of the Ninth Circuit is binding on issues of federal law." *In re: Roundup Prods. Liab. Litig.*, Pretrial Order No. 191, Case No. 3:16-md-02741-VC (N.D. Cal.), ECF No. 7844.  Plaintiff's Motion to Remand does not cite a single Ninth Circuit decision or any binding authority on the issue of fraudulent joinder, instead relying entirely on inapplicable Eleventh Circuit case law.

The Ninth Circuit has recognized that, although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A defendant removing a lawsuit from state court based on fraudulent joinder of a co-defendant is required to show that there is no possibility that the state court would hold the co-defendant liable.  *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018).  When fraudulent joinder applies—*i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted)—the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship.  *Id*.  Moreover, if a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be a "non-fanciful" one for the case to be remanded.  *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015).  Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that rule applies only to "properly joined" defendants.  *See* 28 U.S.C. § 1441(b)(2).

In conducting a fraudulent joinder analysis, a court is not limited to the allegations of the complaint and is permitted to consider declarations and other evidence presented by the removing defendant.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." (citation omitted)); *Morris*, 236 F.3d at 1068 ("[F]raudulent joinder

claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (citation omitted)).  Once the removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand.  *See Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder (emphasis in original)); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016) (same; holding plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome evidence offered by removing defendant to establish fraudulent joinder); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. April 7, 2016) (same; holding that plaintiff's "speculation, which is unsupported by any evidence," did not overcome removing defendant's evidence).

## ARGUMENT

I. **THE UNREBUTTED EVIDENCE ESTABLISHES THAT CAF COOP WAS FRAUDULENTLY JOINED, AND, THEREFORE, THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE.**

   A. **The Unrebutted Evidence Establishes That The Alabama Innocent Seller Act Bars Plaintiff's "Product Liability Actions" Against CAF Coop.**

Six of the ten causes of action asserted against CAF Coop fall within the scope of "product liability actions" under Alabama law, *see* Ala. Code § 6-5-521(a), including the claims for product liability, failure to warn, breach of express warranty, negligence, breach of implied warranty, and negligent misrepresentation.[2]  Compl. ¶¶ 58-125 (Counts I-VI).  In 2011, the

---

[2] "A 'product liability action' means any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of

Alabama legislature enacted the Alabama Innocent Seller Act to protect non-manufacturer sellers (like CAF Coop) against "product liability actions." Ala. Code § 6-5-521(a); *accord Barnes v. Gen. Motors, LLC*, No. 2:14-cv-00719-AKK, 2014 WL 2999188, at *3 (N.D. Ala. July 1, 2014); *Ruiz v. Wintzell's Huntsville, LLC*, Case No. 5:13-cv-02244-MHH, 2017 WL 4305004, at *8 (N.D. Ala. Sept. 28, 2017) (citation omitted). Under the Innocent Seller Act, a non-manufacturer seller is protected against "product liability actions" unless one of four narrow exceptions apply. Ala. Code § 6-5-521(b).

In this case, Plaintiff's only argument is that the so-called "independent acts" exception applies. Remand Mot. at 7-14. The so-called "independent acts" exception provides that a non-manufacturer seller may be held liable for its own "independent acts ***unrelated to the product design or manufacture***, such as independent acts of negligence, wantonness, warranty violations, or fraud." Ala. Code § 6-5-521(b)(4) (emphasis added). Plaintiff characterizes CAF Coop's alleged "independent acts" as: (1) training or educating Plaintiff "on the [Roundup®] product through on-site presentations [on how to apply the products]," Remand Mot. at 8; and (2) selling Roundup® products to Plaintiff while intentionally withholding information or deceiving him about the alleged carcinogenicity of those products, *id*. at 9. None of these alleged acts, however, are truly "independent" within the meaning of the statute because none are "unrelated to the product design or manufacture." Plaintiff misunderstands this critical point.

The United States District Court for the Northern District of Alabama has already rejected a similarly expansive interpretation of the Innocent Seller Act, one that would—as Plaintiff advances here—nullify the Act's requirement that the "independent acts" be "unrelated to the product design or manufacture." *See Sewell v. Smith & Wesson Holding Corp.*, No. 4:12-CV-00364-KOB, 2012 WL 2046830, at *2 (N.D. Ala. June 1, 2012). The *Sewell* court held that because the so-called "independent acts" by the non-manufacturer seller depended on the product being placed under recall—*i.e.*, that the product's design was allegedly defective—the seller's

---

any implied warranty, or (6) breach of any oral express warranty and no other. A product liability action does not include an action for contribution or indemnity." Ala. Code § 6-5-521(a).

acts were not truly "independent" and "unrelated to the product design or manufacture." *Id*. The same is true in this case. In making his argument, Plaintiff fundamentally misunderstands the meaning of the word "unrelated."[3] As in *Sewell*, all of the alleged acts cited by Plaintiff are fundamentally related to the ***design*** of Roundup® products. There cannot be any "independent" act of "negligence, wantonness, warranty violations, or fraud" based upon a CAF Coop employee (Harold Johnson) training or instructing Plaintiff on how to apply Roundup® products because those actions are inextricably connected to Plaintiff's contention that the Roundup® products are allegedly carcinogenic, *i.e.*, that the very ***design*** of those products are "defective" or unreasonably dangerous. See Compl. ¶ 37 (alleging that CAF Coop "never provided any warning that Roundup®" was "injurious to Plaintiff's health"), *id*. ¶ 39 (alleging that Roundup® products were "not displayed or sold in a way to notify Moore that the Roundup was a carcinogenic and a hazardous substance"), *id*. ¶ 56 (alleging that "Defendants made a conscious decision not to redesign or withdraw from the market Roundup so that it was less dangerous to humans and the environment."); Remand Mot. at 10 (stating that Plaintiff testified that the CAF Coop employee, Harold Johnson, "showed him [Plaintiff] how to use Roundup, which included mixing and calibrating the spray rigs for spraying the product," but that "[d]uring this process, [CAF] Co-Op did not warn or advise [Plaintiff] about the ***cancer risk*** or about wearing protective gear when using Roundup.") (emphasis added). In short, Plaintiff's argument that CAF Coop engaged in "independent acts" within the meaning of Section 6-5-521(b) amounts to an unconvincing attempt to disguise his design defect claim against an innocent non-manufacturer seller. Such an expansive interpretation (and misreading) of the Innocent Seller Act should be rejected.

---

[3] The word "unrelated" means "not connected in any way." Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/unrelated (last visited February 27, 2020); *cf. Ex Parte Ankrom*, 152 So. 3d 373, 380 (Ala. Crim. App. 2011) (recognizing that the "dictionary definition of a word provides the meaning ordinary people would give the word," and relying on the Merriam-Webster Dictionary in determining the plain meaning of an Alabama statute (citing *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993)), *aff'd*, 152 So. 3d 397 (Ala. 2013).

The other so-called "independent acts"—that between 1980 and 1986, CAF Coop sold Roundup® products to Plaintiff while allegedly intentionally withholding information or deceiving him about the alleged carcinogenicity of those products, *see* Remand Mot. at 9—also are not "independent acts" within the meaning of Section 6-5-521(b). First, Plaintiff's argument that CAF Coop knew, or should have known, about the alleged carcinogenicity of Roundup® products (going back to 1980-1986) because it sold products within the agricultural industry, *see id*. at 8, is an attempted end run around the Innocent Seller Act, which was designed specifically to prevent liability against non-manufacturer sellers under these circumstances. *See Barnes*, 2014 WL 2999188, at *5 (observing that Ala. Code. § 6-5-521(b) "is clearly meant to protect sellers who unknowingly sell products that later prove to be defective") (citations omitted). Second, as discussed in greater detail below, while Monsanto has put forth unrebutted evidence establishing that Plaintiff has no reason to believe that CAF Coop knew or should have known that Roundup® products were allegedly carcinogenic going back to 1980-1986, Plaintiff has instead engaged in pure speculation about CAF Coop's supposed knowledge. Such unsupported speculation, of course, is not sufficient to overcome Monsanto's evidentiary showing in support of its removal. *See Arias*, 2019 WL 484192, at *3; *Feizbakhsh*, 2016 WL 8732296, at *8.

**B. The Unrebutted Evidence Establishes That The Remaining Legal Claims Against CAF Coop Are Also Not Viable.**

**1. Plaintiff Does Not Have A Viable Fraud Claim Against CAF Coop.**

Under Alabama law, to establish a claim for fraudulent misrepresentation or fraud, "the plaintiff must produce evidence of a present intent on the part of the defendant to deceive the plaintiff either by the misrepresentation of an existing material fact or by the suppression or active concealment of an existing material fact." *Crowder v. Memory Hills Gardens, Inc.*, 516 So. 2d 602, 604-05 (Ala. 1987) (citations omitted). In addition, "the misrepresentation or suppression of the existing material fact must have led the plaintiff to act to his detriment in reasonable reliance thereon." *Id.* (citations omitted). Plaintiff's fraud claim against CAF Coop is based upon his ***speculation*** that CAF Coop, going back to 1980-1986, somehow knew that Roundup® products were allegedly carcinogenic. In direct contrast, Monsanto has presented

*evidence* in support of its removal—Plaintiff's own deposition testimony—showing that Plaintiff did not have any reason to believe that CAF Coop was aware, going back to 1980-1986, that Roundup® products were allegedly carcinogenic. *See supra* at p. 3. Moreover, following Plaintiff's deposition, and after this case was removed to federal court, Plaintiff submitted an affidavit that *further* illustrates that his claims against CAF Coop are without basis. *See* Aff. of John Thomas Moore, Jr., Oct. 21, 2019, Pl.'s Mot. to Vacate Conditional Transfer Order 156, Ex. A, MDL No. 2741 (JPML), ECF No. 1361-4 (the "Moore Affidavit"). In particular, the Moore Affidavit states that when CAF Coop employee Harold Johnson showed Plaintiff how to apply Roundup® products, he did not wear any protective equipment, *see* Remand Mot. at 8, which is consistent with the evidence presented here in declarations that CAF Coop it was not aware of any alleged cancer risk. *See* Exs. 1 & 2 (attached). Moreover, Plaintiff's allegations that Monsanto actively concealed the purported cancer risk from "government agencies, farmers, and the general population," *see* Compl. ¶ 12, further undermine his speculative claims that CAF Coop, a local retailer, knew of the alleged carcinogenicity of Roundup® products going back to 1980-1986—***nearly 20 years*** before IARC became the first (and still only) entity ever to conclude that glyphosate could cause cancer.[4] Moreover, in direct response to Plaintiff's speculation, CAF Coop has provided declarations from Milton Johnson, who has served on the Executive Board of CAF Coop since the 1980s, and Tim Wood, the General Manager of CAF

---

[4] In an unsuccessful attempt to rebut the evidence presented by Monsanto to support removal, Plaintiff now speculates, implausibly, that CAF Coop should have been aware of the alleged carcinogenicity of Roundup® products, going back to 1980-1986, based upon two outside events. First, he argues that CAF Coop somehow should have been aware of an *internal EPA memo* from 1985 that suggested classifying glyphosate with "Group C" status ("possibly carcinogenic to humans"). Remand Mot. at 13. However, Plaintiff does not (and indeed, cannot) provide any factual basis explaining why CAF Coop, a local non-manufacturer seller, should have known about this internal EPA memo (which, in fact, did not present a final agency registration decision) during the relevant period. Second, Plaintiff contends that fraud by IBT, a laboratory that conducted studies relating to glyphosate, somehow gave CAF Coop knowledge regarding the alleged carcinogenicity of Roundup® products. *Id*. at 13. This also does not make sense. In 1976, the FDA discovered discrepancies in some of the testing done by IBT (unrelated to glyphosate), and the EPA ordered an audit of all IBT studies used to support pesticide registrations. The EPA ultimately required many pesticide registration tests, including on glyphosate, to be redone as the IBT results could not be validated. Plaintiff does not (and indeed, cannot) explain how these events informed (or should have informed) CAF Coop (in 1980-1986) that Roundup® products were allegedly carcinogenic.

Coop since the 1980s. *See* Exs. 1 & 2 (attached). Milton Johnson confirms that, "[b]etween 1980 through 1986, neither the CAF Coop Board nor CAF Coop management were aware of any alleged defects of Roundup®-branded products (including whether such products are allegedly capable of causing cancer)." Ex. 1, Decl. of Milton Johnson ¶ 9 (Feb. 28, 2020). Likewise, Mr. Wood confirms that, "[b]etween 1980 and 1986, [he] was not aware of any alleged defects of Roundup®-branded products (including whether such products are allegedly capable of causing cancer)." Ex. 2, Decl. of Tim Wood ¶ 8 (Feb. 28, 2020). Mr. Wood also confirms that none of the Roundup® products or other glyphosate-based products sold at CAF Coop stores, including the Selma store, contained "cancer" warnings on those products. *See id.* ¶ 7. *Compare with Barnes*, 2014 WL 2999188, at *5 (court granted motion to remand where the removing defendant failed to put forth evidence demonstrating that the local retailer did not "deliberately choose to sell dangerous products to unwary consumers.").

      Monsanto has presented ***evidence*** to support its showing of fraudulent joinder, so Plaintiff is not permitted to rely on conclusory ***allegations*** in his Complaint or ***speculation*** about what CAF Coop supposedly knew in the 1980s, to overcome Monsanto's showing of fraudulent joinder. *See Arias*, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019); *Feizbakhsh*, 2016 WL 8732296, at *8. Nor does Plaintiff's speculation that future discovery *might* provide him with a factual basis for the claims asserted against CAF Coop, *see* Remand Mot. at 12, overcome Monsanto's evidentiary showing, as courts in the Ninth Circuit have rejected similar arguments when addressing fraudulent joinder arguments. *See Salkin v. United Servs. Auto. Ass'n*, 767 F. Supp. 2d 1062, 1068 (C.D. Cal. 2011) (denying motion to remand and rejecting plaintiffs' argument that they were entitled to engage in discovery to uncover a factual basis for their claims against fraudulently joined defendants, stating: "This is not the standard by which fraudulent joinder is determined. A court determines whether an entity has been fraudulently joined by looking at the complaint and at facts presented by the parties at the time of removal. There is no right at this stage for either side to engage in further discovery on this issue.") (citations

omitted); *Higley v. Cessna Aircraft Co.*, No. CV 10-3345-GHK (FMOx), 2010 WL 3184516, at *3 (C.D. Cal. July 21, 2010) (same).

### 2. Plaintiff Does Not Have A Viable Wantonness Claim Against CAF Coop.

Under Alabama law, wantonness is defined as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original) (citation omitted). As discussed above, *see supra* at pp. 8-10, Monsanto has presented evidence showing that CAF Coop did not have the requisite knowledge (or consciousness) required under Alabama law to support a wantonness claim against that defendant. Consequently, Plaintiff does not have a viable wantonness claim.

### 3. Plaintiff Does Not Have Viable Claims Against CAF Coop Under the Alabama Deceptive Trade Practices Act.

To have a possibility of success on a claim under the Alabama Deceptive Trade Practices Act ("ADTPA"), a plaintiff must be a "consumer" within the meaning of that statute. *See, e.g., Deerman v. Fed. Home Loan Mort. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997). A "consumer" is "[a]ny natural person who buys goods or services for personal, family or household use." Ala. Code. § 8-19-3(2). Plaintiff's deposition testimony shows that his ADTPA claim is not viable against CAF Coop because he admitted that he never purchased any Roundup® products from CAF Coop. Notice of Removal ¶ 18. Rather, Plaintiff merely "picked up" products purchased by his employer, using his employer's account with CAF Coop. *Id.* ¶ 28. This testimony alone would be sufficient to defeat Plaintiff's ADTPA claim, but Plaintiff also testified that he used the Roundup® products he "picked up" at CAF Coop as part of his employment, ***not for personal, family, or household use as required by ADTPA***. *Id.*; *accord Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-CV-4126-SLB, 2014 WL 4452679, at *10 (N.D. Ala. Sept. 8, 2014). This is yet another reason why Plaintiff does not qualify as a "consumer" within this statute.

Furthermore, courts have recognized that the ADTPA requires some knowledge of false or deceptive conduct on the part of the wrongdoer. *See Jackson v. CIT Grp./Sales Fin., Inc.*, 630

So. 2d 368, 373 (Ala. 1993) (granting summary judgment to defendant on plaintiffs' ADTPA claim because plaintiffs failed to present evidence of defendant's misrepresentation); *Lynn v. Fort McClellan Credit Union*, No. 1:11-CV-2904-VEH, 2013 WL 5707372, at *7 (N.D. Ala. Oct. 21, 2013) (requiring fraud or actual misrepresentation to sustain an ADTPA claim); *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (same).  Because Plaintiff is not a "consumer," and because he has not offered anything beyond speculation to support his assertion that CAF Coop engaged in false or deceptive conduct, his ADTPA claim must fail.

### 4. Alabama Law Does Not Recognize a Claim for "Combined and Concurring Conduct."

Alabama law does not recognize a freestanding cause of action for "combined and concurring conduct," *see*, *e.g., Steel v. Viscofan USA Inc.*, No. 2:16-cv-808-GMB, 2017 WL 253960, at *5 n.2 (M.D. Ala. Jan. 19, 2017), so that "claim" fails as a matter of law.

### 5. Plaintiff Does Not Have A Viable Conspiracy Claim.

Under Alabama law, "[a] plaintiff alleging a conspiracy must have a valid underlying cause of action."  *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (citation omitted); *accord Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 68 F. Supp. 2d 1269, 1281 (M.D. Ala. 1999) (citation omitted).  Because Plaintiff's other causes of action against CAF Coop are not valid, his conspiracy claim also fails as a matter of law.

## II. MONSANTO COMPLIED WITH ALL PROCEDURAL REQUIREMENTS.

After learning that a case has become removable, a defendant has thirty days to remove the case to federal court.  28 U.S.C. § 1446(b).  "[T]he thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005) (citation omitted).  When a defendant does not remove a case during this first thirty-day window because the face of the complaint did not provide facts that made the case removable, a second thirty-day window for removal can open later.  In that scenario, "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the

case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (quoting § 1446(b)).

That is precisely what happened here; Monsanto removed this lawsuit based on the second thirty-day window in Section 1446(b)(3), using the transcript of Plaintiff's deposition as the "other paper." It is well established that a deposition transcript can qualify as an "other paper" that opens the second thirty-day window for removal. *See, e.g.*, *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 886-87 (9th Cir. 2010) (citations omitted). Moreover, a deposition transcript can open that second thirty-day window even if the transcript is a rough draft that has not been finalized. *See David v. C.H. Robinson Int'l, Inc.*, No. CV 18-3268 FMO (Ex), 2018 WL 3213716, at *4 (C.D. Cal. June 29, 2018).

As the *David* court made clear, whether a transcript triggers the "other paper" provision in this **federal statute** is an issue of **federal law**—not a state law issue. *See David*, 2018 WL 3213716, at *4 (stating that the party opposing removal was unable to put forth "any federal authority suggesting or indicating that the meaning or scope of 'other paper' under § 1446, a federal statute, can be defined or limited by a state statute or rule"). Thus, Plaintiff's reliance on Alabama law—*i.e.*, his argument that the "unfinished and unsigned deposition transcript fails to comply with Rule 30 of the Alabama Rules of Civil Procedure," Remand Mot. at 4—misses the mark because this Court is required to apply federal law, not Alabama law, when interpreting Section 1446(b)(3) and deciding whether Monsanto complied with that federal statute.

As previously explained, Monsanto could not have ascertained that CAF Coop was fraudulently joined until Plaintiff gave deposition testimony on September 23, 2019. *See, e.g.*, Notice of Removal ¶ 6. Accordingly, Monsanto timely removed this lawsuit on the basis of diversity jurisdiction with the other procedural requirements also satisfied. *Id*. ¶ 7.[5]

---

[5] Unlike the deposition transcript at issue in *David*, the transcript that Monsanto used for its Notice of Removal was not a rough draft, but rather was the court reporter's final transcript (albeit one that had not been reviewed and signed by Plaintiff when Monsanto filed the Notice of Removal). Plaintiff complains that he was not given thirty days under Alabama law to review and sign the deposition transcript and points out that he eventually provided an errata sheet and signed the transcript. *See* Remand Mot. at 4 & n.4. However, Plaintiff does not—and cannot— argue that any changes made in his errata sheet affect any of the removal/remand arguments now

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Remand.[6]

DATED: March 4, 2020                                Respectfully submitted,

/s/ Eric G. Lasker

Daniel S. Pariser (*pro hac vice*)           Eric G. Lasker (*pro hac vice*)
(daniel.pariser@arnoldporter.com)            (elasker@hollingsworthllp.com)
ARNOLD & PORTER KAYE SCHOLER LLP             Martin C. Calhoun (*pro hac vice*)
601 Massachusetts Avenue, NW                 (mcalhoun@hollingsworthllp.com)
Washington, DC 20001                         HOLLINGSWORTH LLP
Tel: 202-942-5000                            1350 I Street, NW
Fax: 202-942-5999                            Washington, DC 20005
                                             Tel: 202-898-5800
                                             Fax: 202-682-1639

                                             Brian L. Stekloff (*pro hac vice*)
                                             (bstekloff@wilkinsonwalsh.com)
                                             Rakesh Kilaru (*pro hac vice*)
                                             (rkilaru@wilkinsonwalsh.com)
                                             WILKINSON WALSH LLP
                                             2001 M Street, NW, 10th Floor
                                             Washington, DC 20036
                                             Tel: 202-847-4030
                                             Fax: 202-847-4005

*Attorneys for Defendant Monsanto Company*

---

before this Court. For this reason as well, the Court should reject Plaintiff's quibbles about Monsanto's reliance on the deposition transcript.

[6] If the Court grants Plaintiff's Motion to Remand, it nevertheless should deny his request for fees and costs because, as shown above, Monsanto had objectively reasonable bases for removal in this case. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").