Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Fl.
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jessica H. Meeder
FEGAN SCOTT LLC
1200 G Street, N.W., Ste. 800
Washington, D.C.  20005
T: 202-434-8992
F: 202-217-2814
jessica@feganscott.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 16-md-02741-VC |
| This document relates to: *Sheller v. Bayer AG, et al.,* Case No. 3:19-cv-07972 | **PLAINTIFF'S RENEWED MOTION TO APPOINT FEGAN SCOTT, LLC AS INTERIM CLASS COUNSEL FOR THE MEDICAL MONITORING CLASS** Hearing Date:   April 30, 2020 Time:   10:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on April 30, 2020 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA  94102, or as ordered by the Court, Plaintiff Aaron Sheller ("Plaintiff") will present his Renewed Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class.

Plaintiff seeks appointment of Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class.  Plaintiff's Motion is brought pursuant to Fed. R. Civ. P. 23(g) and is based on this Notice, the following memorandum of points and authorities, the exhibits appended thereto, and any additional argument or evidence this Court may consider.

Dated: March 10, 2020

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL  60606
T: 312-741-1019
F: 312.264.0100
beth@feganscott.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ...................................... 2

    A.    Summary of Factual Allegations ........................................................ 2

    B.    The Medical Monitoring Class ........................................................... 3

    C.    Personal Injury Cases......................................................................... 4

    D.    Meet and Confer with the Current Leadership Structure..................... 5

LEGAL STANDARD............................................................................................ 6

ARGUMENT ...................................................................................................... 7

    A.    Appointment of Interim Class Counsel is Necessary to Protect the
    Interests of the Medical Monitoring Class............................................ 7

    B.    Fegan Scott Should be Appointed Interim Class Counsel. .................... 8

        1.   Medical Monitoring Counsel carefully identified and evaluated
        the Medical Monitoring Class's potential claims. ................................. 8

        2.   Fegan Scott has the skill and expertise necessary to prosecute
        this action as Interim Lead Counsel on behalf of the Medical
        Monitoring Class.................................................................................. 9

        3.   Riley Williams & Piatt and Shindler Anderson are well-suited
        to support Fegan Scott LLC in its Interim Class Counsel role. ........... 13

        4.   Fegan Scott will dedicate the resources necessary to effectively
        prosecute this matter on behalf of the Medical Monitoring Class. ...... 13

CONCLUSION................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 1, 2, 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................6, 7

*In re Navistar Maxxforce Engines Mktg., Sales Practices and Prods. Liab. Litig.*,
  2015 U.S. Dist. LEXIS 34662 (N.D. Ill. March 5, 2015) ...................................... 6

*Ortiz v. Fibreboard Corporation*,
  527 U.S. 815 (1999) ............................................................................................... 7

*Simpkins v. Wells Fargo Bank, N.A.*,
  2013 WL 12051028 (S.D. Ill. June 28, 2013) ....................................................... 6

*Walker v. Discover Fin. Servs.*,
  2011 U.S. Dist. LEXIS 58803 (N.D. Ill. May 26, 2011) ....................................... 6

**Rules**

Fed. R. Civ. P. 23 ............................................................ 2, 6, 7, 8, 9, 11,12, 13, 14,

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (4th) at § 21.11 .................................................... 6

**INTRODUCTION**

Plaintiff Aaron Sheller, a farmer who used significant quantities of the herbicide Roundup[1] on his thousands of acres of Indiana farmland for years, seeks medical monitoring for the increased risk he faces of developing non-Hodgkin's lymphoma as result of Roundup exposure. And, he seeks the same relief on behalf of a class of all persons who used Roundup for agricultural business or other commercial purposes ("Medical Monitoring Class").

More than 18,000 individuals who *already* contracted cancer because of Roundup have brought suit against Defendants in this MDL and in state court ("Personal Injury Cases").[2] However, none of those persons are protecting the interests of the Medical Monitoring Class, *i.e.* those persons who have been exposed but for whom disease has not yet manifested. It is critical that the Medical Monitoring Class be separately represented by Interim Class Counsel who can advocate for and protect its unique interests.

Settlement discussions between Defendants and counsel in the Personal Injury Cases have been active and ongoing since at least spring 2019. However, pursuant to the Supreme Court's decision in *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), and California Rule of Professional Conduct 1.7, separate counsel must be appointed for the two discrete groups present here: i.e. the "currently injured" on the one hand (here, the Personal Injury Cases), and the "exposure-only plaintiffs" on the other hand (here, the Medical Monitoring Class). *Id.* at 626. The Supreme Court explained:

> In significant respects, the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.

---

[1] This term is defined as set forth in Plaintiffs' Complaint. (Case No. 3:19-cv-07972, Dkt. 1) ("Sheller Compl.").

[2] *See* https://www.fortune.com/2019/10/16/bayer-monsanto-roundup-crisis-new-lawsuits/ (last accessed November 2019).

*See also* Declaration of Mary Robinson, Exhibit A.  Accordingly, pursuant to the Supreme Court's direction in *Amchem*, Plaintiff seeks the appointment of Fegan Scott, LLC ("Fegan Scott") as Interim Class Counsel for the Medical Monitoring Class.[3]

As reflected below, Fegan Scott exceeds the appointment criteria set forth in Fed. R. Civ. P. 23(g).  Together with their co-counsel, Fegan Scott has diligently investigated and pursued this action, is committed to advancing the interests of the class, is comprised of highly experienced and dedicated class action and complex litigation practitioners with an expertise in medical monitoring actions, and has devoted the resources necessary to fully prosecute this action.  To ensure that counsel can effectively negotiate, collaborate, and safeguard the Medical Monitoring Class's interests, this Court should appoint Fegan Scott as Interim Class Counsel for the Medical Monitoring Class.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.  Summary of Factual Allegations

Since at least the 1970s, Defendants have manufactured and sold Roundup, an herbicide that contains the chemical glyphosate.  American farmers have traditionally used Roundup to treat the vast majority of corn, soybean, and cotton acres planted in the United States. Defendants promoted heavy usage of the product through their marketing and by creating and selling large quantities of genetically modified crops that resist damage from the herbicide.  Commercial landscapers also widely employ Roundup when maintaining nurseries, parks, fields, and lawns.

Scientific evidence has established a clear association between glyphosate and genotoxicity, inflammation, and an increased risk of many cancers, including non-Hodgkin's lymphoma, Hodgkin's lymphoma, multiple myeloma, and soft tissue sarcoma.  In fact, in March 2015, the World Health Organization's International Agency for Research on Cancer ("IARC"), an intergovernmental agency tasked with conducting and coordinating research into the causes of

---

[3] Hereinafter, Plaintiff's counsel—Fegan Scott, RWP, Shindler, Anderson, Goplerud, & Weese, P.C., and Cate, Terry & Gookins LLC—shall collectively be referred to as "Medical Monitoring Counsel."

cancer, declared that, based on its review of numerous scientific studies, glyphosate is a "probable carcinogen."

Defendants had access to and knowledge of the same studies as did IARC, many of which date back decades, and for years knew that Roundup causes cancer. Nonetheless, they did not disclose those facts to consumers who purchased and have been exposed to the chemical, including farmers, farmworkers, and landscapers that regularly used substantial amounts of the product. Instead, Defendants actively concealed these truths from consumers, going so far as to advertise that Roundup is "safer than table salt" and "practically non-toxic," and claiming that it "can be used where kids and pets will play."

### B.  The Medical Monitoring Class

Plaintiff Aaron Sheller is a farmer in Indiana who for years has routinely used Roundup on thousands of acres of his farmland. He brings this suit on behalf of himself and all others similarly situated who have been exposed to Roundup (and glyphosate) through their commercial and agricultural endeavors but were never properly warned of the dangers the chemical poses and have not yet developed cancer.[4] As a result of Defendants' egregious conduct, Mr. Sheller and the class members are subject to an increased risk of cancer, including lymphoma. This suit seeks to establish a medical monitoring program that carefully monitors class members' health, ensures early diagnosis of Roundup-related cancers, and provides appropriate and immediate treatment for those life-threatening diseases.

Following significant pre-trial investigation and analysis, Mr. Sheller and his counsel filed this suit on September 30, 2019 in the United States District Court for the Southern District of Indiana (Cause No. 1:19-cv-004063). Since that time, Fegan Scott has continued to actively investigate, develop, and efficiently pursue this case and met and conferred with Defendants' counsel regarding scheduling, responsive pleadings, and jurisdictional issues. On November 12,

---

[4] The putative class is defined as "All persons who used Roundup in the States of Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Illinois, Indiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Ohio, Pennsylvania, Utah and West Virginia for agricultural business or other commercial purposes." (Sheller Compl. at 24).

2019, Plaintiff filed a Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class and Riley Williams & Piatt as Interim Liaison Counsel (Cause No. 1:19-cv-004063, Dkt. 19) ("Motion to Appoint").  The Motion to Appoint was never ruled upon.  On November 18, 2019, Monsanto filed a Notice of Potential Tag-Along Action with the JPML (MDL No. 2741, Dkt. 1425), and Plaintiff's case was transferred to this MDL on December 4, 2019. (Dkt. 8137).

To the best of Medical Monitoring Counsel's knowledge, this is the only medical monitoring class action pending in any jurisdiction and is the only vehicle by which consumers exposed to Roundup who have not yet manifested disease can be assured of medical monitoring necessary for the increased risk of harm they have unwittingly sustained.

### C.  Personal Injury Cases

More than 18,000 individuals who contracted cancer because of Roundup have brought suit against Defendants in this MDL and in state court.[5]  Following the October 2016 creation of this MDL, in December 2016 this Court appointed a plaintiffs' counsel leadership structure that includes co-lead counsel, a Plaintiffs' Executive Committee, and Liaison counsel for the Personal Injury Cases.  (Dkt. 62).  Since that time, general causation discovery has occurred, *Daubert*

---

[5] *See* https://www.fortune.com/2019/10/16/bayer-monsanto-roundup-crisis-new-lawsuits/ (last accessed November 2019).  California state cases are consolidated in *In re Roundup Products Cases,* JCCP 4953 (Cal. Super. Ct., Alameda County), and Judge Ioana Petrou appointed plaintiffs' leadership counsel for the state Personal Injury Cases.  Thousands of cases are also pending in St. Louis City, Missouri and in other state courts around the country.

There are also at least two pending class action cases filed against Defendants regarding Roundup, both of which are materially different from this matter.  *Blitz, et al. v. Monsanto Company, et al.,* 3:17-cv-00473 (W.D. Wis.) (Conley, J.), is a consumer fraud action in which plaintiffs seek compensatory relief for the fraudulent statements Defendants made to consumers about their Roundup products.  Plaintiffs in *Ramirez v. Monsanto Company,* 3:19-cv-02224 (N.D. Cal.) (Chhabria, J.) seek, *inter alia,* Rule 23(c)(4) certification of general causation issues and a judicial determination that Defendants are required to notify all class members of the link between Roundup and non-Hodgkin's lymphoma.  Neither of these actions can or will compensate plaintiffs or class members for the increased risk of cancer and other serious diseases, nor do they endeavor to create a medical monitoring program.

decisions have been rendered, and three Roundup personal injury cases have been tried, resulting in verdicts of $289 million, $80 million, and $2.055 billion.[6]

In April 2019, lead counsel for the Personal Injury Plaintiffs and Defendants were ordered to a confidential mediation and in May 2019, Kenneth Feinberg was appointed as the mediator for those court-mandated settlement talks. (Dkts. 3325, 4441). We understand that these discussions are active and ongoing and directly implicate this matter.

However, as legal ethics expert Mary Robinson, Esq. has explained in her Declaration (Ex. A), there is a conflict of interest between the Personal Injury Plaintiffs (and, by extension, their counsel) and the Medical Monitoring Class (and Medical Monitoring Counsel) that requires that the Medical Monitoring Class be represented by independent counsel, including at mediation. Thus, time is of the essence to ensure that Interim Class Counsel for the Medical Monitoring Class can advocate to ensure sufficient monies are secured for medical monitoring for the exposure-only plaintiffs and class members.

### D. Meet and Confer with the Current Leadership Structure

On Friday, February 14, 2020, Movant's counsel, Elizabeth Fegan and Jessica Meeder, conferred with Lead Counsel Aimee Wagstaff, Robin Greenwald, and Michael Miller, and Liaison Counsel Lori Andrus and Mark Burton via telephone. Ms. Fegan explained the basis of the motion, and inquired whether independent counsel had been appointed or designated to represent the Medical Monitoring Class and/or future claimants given the inherent conflicts with the personal injury plaintiffs. Lead Counsel advised that they were aware from their experience in other cases of the need for structural protections, but declined to disclose how the Medical Monitoring Class and/or future claimants were being represented or protected in this MDL. Lead Counsel advised that they opposed this motion.

---

[6] Two cases were tried in California state court and one case was tried before in this Court.

## LEGAL STANDARD

This Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."[7]  Interim class counsel is responsible for all pre-certification activities including, *inter alia,* "making and responding to motions, conducting… necessary discovery, moving for class certification, and negotiating settlement."[8]  A court should designate Interim class counsel when it is "necessary to protect the interests of the putative class."[9]

In making its appointment, the Court must ensure that counsel will "fairly and adequately represent the interests of the class"[10] and must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. [11]  The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[12]  Counsel is not "adequate" pursuant to Rule 23 if it has a conflict of interest.[13]

---

[7] Fed. R. Civ. P. 23(g)(3).

[8] MANUAL FOR COMPLEX LITIGATION (4th) at § 21.11.

[9] Fed. R. Civ. P. 23, 2003 Advisory Committee Notes.

[10] Fed. R. Civ. P. 23(g)(4).

[11] Fed. R. Civ. P. 23(g)(1)(A).  *See also In re Navistar Maxxforce Engines Mktg., Sales Practices and Prods. Liab. Litig.,* 2015 U.S. Dist. LEXIS 34662, *9-10, 2015 WL 1216318 (N.D. Ill. March 5, 2015);  *Walker v. Discover Fin. Servs*., 2011 U.S. Dist. LEXIS 58803, *8, 2011 WL 2160889, *2 (N.D. Ill. May 26, 2011); *Simpkins v. Wells Fargo Bank, N.A.,* 2013 WL 12051028, *1 (S.D. Ill. June 28, 2013) (observing that Rule 23(g)(1) factors are to be applied in appointing interim counsel).

[12] Fed. R. Civ. P. 23(g)(1)(B).

[13] Fed. R. Civ. P. 23(a)(4); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

**ARGUMENT**

### A. Appointment of Interim Class Counsel is Necessary to Protect the Interests of the Medical Monitoring Class.

This case poses a unique circumstance: it is part of an incredibly broad landscape of Personal Injury Cases and consumer fraud class actions. But, to the best of our knowledge, this is the *only* case that seeks to represent the Medical Monitoring Class, i.e. "exposure-only plaintiffs," to ensure "an ample, inflation-protected fund for the future." *Amchem Prods.*, 521 U.S. at 626.

In *Amchem*, class certification was sought to achieve a global settlement for both current and future asbestos-related claims, both for claimants who were currently injured, and those who may face future injuries. The Court noted the divergent interests of the class: those currently injured have the goal of "generous immediate payments," and the exposure-only plaintiffs seek "an ample, inflation-protected fund for the future." The Court noted the significance of these differences, as the settlement included no adjustment for inflation, and only a few claimants per year could opt out. The Court concluded there was "no structural assurance of fair and adequate representation for the diverse groups." *Id. See also Ortiz v. Fibreboard Corporation,* 527 U.S. 815 (1999) (reaffirming "that a class divided between holders of present and future claims … requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel."); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998) ("The Court found that the clashing interests of present and future claimants presented insurmountable conflicts for class counsel who could not possibly provide adequate representation to both groups as required by Rule 23(a)(4).").

With several billion dollar verdicts behind them, leadership for the Personal Injury Cases is well-positioned to advocate for their clients in the ongoing settlement discussions under Kenneth Feinberg.  However, the Medical Monitoring Class is entitled to separate representation for factual discovery, expert discovery, coordination with the Personal Injury Cases to the extent there is overlap, separate class certification proceedings, trial and, if appropriate, settlement negotiations.

In fact, pursuant to *Amchem* and California Rule of Professional Conduct 1.7, such independent representation is required.  Medical Monitoring Counsel obtained the expert opinion of Mary Robinson, Esq., who for over forty years has been practicing law in the areas of lawyer ethics and professional responsibility.  Ms. Robinson served as Administrator of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois for fifteen years, taught Professional Responsibility courses at Northwestern University Law School and Northern Illinois University College of Law, and regularly presents nationwide on the topic of lawyers' professional obligations.  As explained in her Declaration, Ex. A, appointed lead counsel's responsibilities to the Personal Injury Plaintiffs create a "significant risk of materially limiting their representation of the Medical Monitoring Class" because the two groups of plaintiffs have "differing and competing goals."  (Ex. A at 5).   Given this conflict of interest, which cannot be resolved by waiver, the Medical Monitoring Class must be provided with independent counsel who are empowered to investigate and advance the interests of the class members.

## B.  Fegan Scott Should be Appointed Interim Class Counsel.

As reflected below, Plaintiff and Medical Monitoring Counsel seek the appointment of Fegan Scott because it readily fulfills the requirements set forth in Rule 23(g)(1)(A).

### 1.  Medical Monitoring Counsel carefully identified and evaluated the Medical Monitoring Class's potential claims.

Rule 23(g)(1)(A)(i) directs the court to consider "the work counsel has done in identifying or investigating potential claims in the action."  Fegan Scott, together with RWP, Shindler, Anderson, Goplerud, & Weese, P.C. and Cate, Terry & Gookins LLC, are the reason that the Medical Monitoring Class has an avenue for recovery.

Thousands of plaintiffs and their counsel are pursing Personal Injury Cases against the Defendants on the theory that Roundup caused their cancer and other serious diseases.  Other counsel elected to seek compensation for the consumer fraud that Defendants perpetrated.  But not one of these actions will protect the thousands of consumers who were exposed to significant

quantities of Roundup, have an increased risk of developing these diseases, and are entitled to medical monitoring as a result.

Medical Monitoring Counsel comprise the only team that identified this significant yet unmet need and are the only counsel who have brought a medical monitoring action against Defendants for the monitoring needed to diagnose serious diseases caused by Roundup. Medical Monitoring Counsel diligently investigated the underlying factual and legal theories, narrowly tailored this case and the current class definition pursuant to those efforts, and drafted a thoughtful, comprehensive complaint. Counsel have also consulted with experts to ensure they seek the best diagnostic program for the Medical Monitoring Class. Since filing, counsel have engaged in meaningful efforts to further the litigation, including serving Monsanto; meeting and conferring with defense counsel on both procedural and substantive matters; fulfilling the transferor court's request for a supplemental jurisdictional statement; initiating communication with lead plaintiffs' counsel in related litigations; and developing a proposed case management and discovery plan. Fegan Scott's work in this regard clearly satisfies Rule 23(g)(1)(A)(i).

### 2. Fegan Scott has the skill and expertise necessary to prosecute this action as Interim Lead Counsel on behalf of the Medical Monitoring Class.

Fegan Scott meets and exceed the Rule 23(g)(1)(A)(ii) and (iii) requirements, which evaluate counsel's experience as well as the knowledge of the applicable law raised in an action.

#### a. Elizabeth A. Fegan of Fegan Scott is a leader in successful medical monitoring class actions.

Founded in 2019 but built upon more than five decades of collective class action experience, Fegan Scott is a nationwide class-action firm dedicated to helping victims of negligence, fraud, abuse, and discrimination. Its Founding Partner and Managing Member, Beth Fegan is an acclaimed class action attorney with more than two decades of experience in complex class action litigation, including medical monitoring class actions.[14] She has dedicated her practice

---

[14] *See* Exhibit B, Fegan Scott's resume.

to protecting consumers and has recovered more than $1 Billion for her clients nationwide. Prior to founding Fegan Scott, Ms. Fegan was the Managing Partner of the Chicago Office of Hagens Berman Sobol Shapiro LLP, a preeminent national class action firm that routinely appears on the National Law Journal's Plaintiffs' "Hot List," for 15 years.

A sampling of Ms. Fegan's medical monitoring cases follows:

*In re NCAA Student-Athlete Concussion Injury Litigation,* No. 1:13-cv-9116 (N.D. Ill.) (Hon. John Z. Lee). As part of the Co-Lead Counsel team, Ms. Fegan settled a nationwide class action on behalf of four million current and former student-athletes, creating a $70 million, 50-year medical monitoring program to diagnose the short- and long-term effects of concussions and the accumulation of subconcussive hits. Class members will have access to state-of-the-art neurological and neuropsychological testing to ensure that disease is caught early by skilled practitioners.  This historic settlement received final approval in 2019 and will ensure rule changes that will protect student-athletes for years to come.

*"Thomas the Tank Engine" Toys Lead Paint Products Liability Litig.* (Ill. Cir. Ct., Cook County 2008). As Lead Counsel in a federal court action for medical monitoring for children exposed to toys painted with lead paint, Ms. Fegan intervened in a state court action and ultimately achieved the settlement of a nationwide class action for $30 million, including refunds for the contaminated products and the costs of blood lead testing for exposed children.

*Berry v. City of Chicago,* No. 124999 (Ill. Sup. Ct. 2019). As Lead Counsel in this state court action, Ms. Fegan seeks to recover on behalf of City residents whose lead service pipes (for water) were partially replaced by the City during construction. The lawsuit seeks medical monitoring for increased lead exposure and damages for inverse condemnation. While the trial court dismissed the action, the Illinois appellate court reversed, finding that "Where such [medical monitoring] testing is made necessary by defendant's breach of duty, courts have found that the

testing itself is 'a present injury compensable in a tort action.'" *Berry v. City of Chicago*, 2019 Ill. App. LEXIS 356, *20 (Ill. App. May 22, 2019).[15]

*In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, MDL No. 2921 (D.N.J.).  Ms. Fegan was recently appointed Co-Lead Counsel in this MDL, after bringing several cases seeking medical monitoring on behalf of persons with breast implants that were recently recalled due to the risk of causing breast implant-associated lymphoma.  Additional successes are highlighted in Ms. Fegan's resume.[16]

Ms. Fegan's accomplishments and successes have been widely recognized. She has been named a Lawdragon 500 Leading Consumer Lawyer in America (2019, 2020) and a Lawdragon Leading Lawyer in America (2019).  The National Trial Lawyers identified Ms. Fegan as a Top 100 Civil Plaintiff's Lawyer (2020) and a Top 100 Trial Lawyer (2015), and she has been named an Illinois Super Lawyer annually since 2016.  Ms. Fegan has repeatedly presented and published on a variety of topics including ascertainability, post-certification strategies, and identifying class actions in everyday practice.  She is a fierce advocate for gender equity within her own profession and fights to cultivate a judicial system with greater female representation.

### b. Jessica Meeder of Fegan Scott has significant experience in litigating product liability and personal injury cases.

Beth Fegan will be supported in her role by Jessica Meeder, Of Counsel at Fegan Scott.[17] Ms. Meeder has nearly fifteen years of experience in complex litigation, including class action, aggregate, and multi-district litigation in both state and federal courts.  She is particularly skilled at developing, briefing, and arguing the successful legal theories that help secure her clients' favorable outcomes.  A sampling of her cases is as follows:

*Boler, et al. v. Earley, et al.,* Case No. 2:16-cv-10323 (E.D. Mich.) (Hon. Judith Levy). *Boler* was the second class action case filed on behalf of Flint, Michigan residents for their toxic

---

[15] The City has appealed this decision to the Illinois Supreme Court.

[16] *See* Ex. B, at 2-6 (Elizabeth A. Fegan's resume).

[17] *See* Ex. B, at 7-10 (Jessica Meeder's resume).

and valueless water and was pursued under a Contracts Clause theory. The district court dismissed plaintiffs' complaint and Ms. Meeder helped secure reversal of that decision in the Sixth Circuit. *Boler, et al. v. Earley, et al.,* 865 F.3d 391 (6th Cir. 2017), *cert. denied,* 138 S.Ct. 1294 (2018).

*In re Behr Dayton Thermal Products, LLC,* Case No. 3:08–cv–326 (S.D. Ohio) (Hon. Walter Rice).  Ms. Meeder was part of the litigation team that represented a putative class of homeowners whose groundwater was contaminated by the defendants' plume of contamination. Ms. Meeder helped secure class certification pursuant to Rule 23(c)(4), which was upheld on appeal by the Sixth Circuit. *In re Behr Dayton Thermal Products, LLC,* Dkt. 274, Case No. 3:08-cv-326 (S.D. Ohio March 20, 2017), *aff'd* 896 F.3d 405 (6th Cir. 2018), *cert denied,* 139 S.Ct. 1319 (2019).

*In re: New England Compounding Pharmacy, Inc. Prod. Liab. Litig.,* Case No. 1:13-md-02419 (D. Mass.) (Hon. Rya Zobel).  Ms. Meeder acted as Maryland State Liaison to the Plaintiffs' Steering Committee ("PSC") in this MDL, which included claims filed by thousands of individuals who received contaminated steroid injections from NECC and sustained personal injuries as a result.  In that position she acted as the PSC's representative to and its liaison with the attorneys litigating similar cases in Maryland state court, ensured that all parties and the PSC were apprised as to the status of the state litigation, and assisted in securing discovery and logistical coordination between the federal and state actions.

Fegan Scott attorneys Timothy Scott, Founding Partner, and Lynn Ellenberger, Of Counsel, also stand ready, willing, and able to assist in the prosecution of this action as appropriate. Timothy Scott has more than two decades of litigation experience representing plaintiffs and defendants.  His class action experience includes antitrust, civil RICO, insurance malfeasance and consumer fraud cases, where he often serves as lead or co-lead counsel.  Lynn Ellenberger is a sophisticated federal practitioner and accomplished trial attorney who has spent nearly three decades practicing law.

Fegan Scott possesses decades of substantive experience in complex litigation, class actions, and multidistrict litigation. The firm is eminently qualified to act as Interim Class Counsel for the Medical Monitoring Class and exceeds the requirements of Rule 23(g)(1)(A)(ii) and (iii).

### 3. Riley Williams & Piatt and Shindler Anderson are well-suited to support Fegan Scott LLC in its Interim Class Counsel role.

RWP and Shindler Anderson have a depth and breadth of class action and complex litigation experience that render the firms particularly well-suited to support Fegan Scott in its role as Interim Class Counsel as appropriate.

*RWP.* William Riley, principal managing member at Indianapolis-based Riley Williams & Piatt, focuses his practice on plaintiffs' complex litigation, including class actions and multidistrict litigation. Throughout his thirty years of legal experience, Mr. Riley has acted as lead counsel in cases with far reaching legal impact, both locally and nationally. A selection of Mr. Riley's cases is set forth in Mr. Riley's resume, Exhibit C.

*Shindler Anderson.* J. Barton Goplerud is a shareholder in the law firm of Shindler Anderson. Mr. Goplerud has extensive experience in complex litigation and class action lawsuits. He has been counsel in hundreds of class action lawsuits since 2003, involving defective products, consumer fraud, fraudulent products, securities, insurance products, antitrust, and wage and hour violations. He has served as local counsel, co-counsel and lead counsel in all these matters. For the past seventeen years, Mr. Goplerud has served as lead counsel in a wide range of cases – both locally and nationally. A sampling of these cases is set forth in Mr. Goplerud's resume, Exhibit D.

### 4. Fegan Scott will dedicate the resources necessary to effectively prosecute this matter on behalf of the Medical Monitoring Class.

Rule 23(g)(1)(A)(iv) considers the resources that counsel will commit to representing the class. As experienced class action attorneys, Fegan Scott, RWP, and Shindler Anderson fully understand the substantial investment of time and resources necessary to properly pursue and lead

these types of litigations and they are committed to dedicating those resources to the best interests of the class.

Collectively, Fegan Scott, RWP, and Shindler Anderson maintain offices in six states and employ highly-experienced attorneys who can and will provide meaningful support in the prosecution of this action. The firms are efficiently sized and are intentional and selective with respect to the cases they elect to pursue. As evidenced by their experience and qualifications, outlined *supra,* the firms are remarkably successful and routinely obtain significant recoveries for their clients. As a result they are prudent case managers capable of funding litigation costs through many years of litigation, including trial. The requirements of Rule 23(g)(1)(A)(iv) are met here.

## CONCLUSION

To adequately protect the Medical Monitoring Class's interests, Plaintiff requests that this Court appoint interim class counsel for the Medical Monitoring Class. Such a designation will effectively communicate to parties, counsel, and mediators in all Roundup-related actions that undersigned counsel acts with authority over and in the best interests of this Medical Monitoring Class. That clarity of task and role will better ensure efficient coordination of discovery, enable more fruitful involvement in settlement efforts, and both safeguard and advance the class members' interests. Moreover, such an appointment is necessary given the conflict of interest that exists between the Personal Injury Plaintiffs and the Medical Monitoring Class.

Fegan Scott should be appointed Interim Class Counsel because it meets the requirements of Rule 23(g) and is dedicated to efficiently and tenaciously advancing the class members' interests. Absent a formal designation, and given the sheer volume of related pending litigations and number of parties involved, it will be virtually impossible for counsel to rise above the din and effectively engage in these efforts to protect the Medical Monitoring Class.

Dated: March 10, 2020                    Respectfully submitted,

                                         /s/ Elizabeth A. Fegan
                                         Elizabeth A. Fegan
                                         FEGAN SCOTT LLC
                                         150 S. Wacker Dr., 24th Floor
                                         Chicago, IL  60606
                                         T: 312-741-1019
                                         F: 312.264.0100
                                         beth@feganscott.com

                                         Jessica H. Meeder
                                         FEGAN SCOTT LLC
                                         1200 G Street, N.W., Ste. 800
                                         Washington, D.C.  20005
                                         T: 202-434-8992
                                         F: 202-217-2814
                                         jessica@feganscott.com

                                         William Riley
                                         Anne Medlin Lowe
                                         RILEY WILLIAMS & PIATT, LLC
                                         301 Massachusetts Ave.
                                         Indianapolis, IN  46204
                                         T: 317-633-5270
                                         F: 317-426-3348
                                         wriley@rwp-law.com
                                         alowe@rwp-law.com

                                         J. Barton Goplerud
                                         SHINDLER, ANDERSON, GOPLERUD
                                         & WEESE, P.C.
                                         5015 Grand Ridge Drive, Suite 100
                                         West Des Moines, IA  50265
                                         T: 515-223-4567
                                         F: 515-223-8887
                                         goplerud@sagwlaw.com

                                         Russell Cate
                                         CATE, TERRY & GOOKINS LLC
                                         301 East Carmel Drive, Suite C300
                                         Carmel, IN  46032
                                         T: 317-564-0016
                                         F: 317-564-0599
                                         rcate@ctglaw.com

                                         *Counsel for Plaintiff*

                                                15

## CERTIFICATE OF SERVICE

I certify that, on March 10, 2020, a copy of the foregoing Plaintiff's Renewed Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class was served on all counsel of record via ECF.

Dated: March 10, 2020

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL  60606
T: 312-741-1019
F: 312.264.0100
beth@feganscott.com

*Counsel for Plaintiff*

16