**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Sheller v. Bayer AG, et al.*, Case No. 3:19-cv-07972 | **DECLARATION OF MARY ROBINSON** |

# I. Background and Qualifications.

I am an attorney, licensed to practice in Illinois (admitted April 1975) and California (admitted January 1975), and admitted to the bars of the United States Supreme Court, the United States Court of Appeals for the Seventh Circuit, and the United States District Courts for the Northern and Central Districts of Illinois.

I am a partner in Robinson, Stewart, Montgomery & Doppke, LLC, in Chicago, Illinois. Since 2007, I have concentrated my practice in matters involving lawyer ethics and professional responsibility, including defending lawyers in disciplinary investigations and prosecutions, advising lawyers and law firms on ethical issues and obligations, and providing expert consultation and testimony. Since 2007, I have been retained and identified as an expert witness on professional responsibility issues in over 40 cases.

For the fifteen years between March 16, 1992, and March 16, 2007, I served as Administrator of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, having previously served between 1989 and 1992 as a Commissioner of the ARDC. As an ARDC Commissioner, I took part in setting ARDC policy. As Administrator, I was responsible, *inter alia*, for formulating and implementing policies governing the review of grievances submitted to the ARDC, for determining which matters warranted the filing of a formal disciplinary complaint alleging violations of the Illinois Rules of Professional Conduct, and for supervising the prosecution of the formal disciplinary cases. Those grievances and formal discipline prosecutions included hundreds of cases in which lawyers were alleged to have engaged in representations involving conflicts of interest.

While Administrator of ARDC, I taught the Professional Responsibility course at both Northwestern University Law School and Northern Illinois University College of Law. Each year, I presented at dozens of CLE programs throughout Illinois and nationally involving lawyers' professional obligations, and I made presentations to the ABA Conference on the

1

Role of the Court in Improving Lawyer Conduct and Professionalism, the ABA Symposium on Teaching Professional Responsibility, and the ABA CoLAP National Conference for Lawyers Assistance Programs.

Since leaving the ARDC, I have continued to make presentations to national audiences and to Illinois lawyers on professional responsibility issues. I served as a member and then Chair of the Planning Committee for the annual ABA National Conference on Professional Responsibility (2007 – 2011), a member of the ABA Committee on Ethics and Professional Responsibility (2007 – 2010), and a member of the Editorial Board of the *ABA/BNA Lawyers' Manual on Professional Conduct* (2012 – 2015). I have presented as a lecturer and panelist on professional responsibility issues for the ABA National Conference on Professional Responsibility, the National Organization of Bar Counsel, IICLE, PLI, ALI-ABA, Illinois State Bar Association, Chicago Bar Association, and various county bar associations throughout Illinois.

## 2. Matters Considered

I have been retained by Fegan Scott, LLC to offer an opinion on whether a lawyer or law firm's representation of individual plaintiffs pursuing damages for personal injuries resulting from exposure to Roundup ("Personal Injury Plaintiffs") would face a conflict of interest in also representing a class of individuals who have been exposed to Roundup but not yet developed symptoms of a resulting disease ("Medical Monitoring Class").

As the basis for my opinion, I was asked to assume the factual accuracy of matters alleged in Plaintiff's Renewed Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class. Specifically, I have assumed that prior to October 2016, a great number of cases had been filed across the country in which individuals who had been exposed to Roundup and subsequently developed allegedly related cancers sought damages from the Defendants. In October 2016, the Judicial Panel on Multidistrict Litigation established a Multidistrict Litigation in the United States District Court for the Northern District of California before the Honorable Vince Chhabria ("Roundup MDL") and transferred all then-pending Roundup-related federal actions to that MDL.

In December 2016, Judge Chhabria established a plaintiffs' counsel leadership structure by appointing co-lead counsel, a Plaintiffs' Executive Committee, and Liaison Counsel for the Personal Injury Plaintiffs. California personal injury state court cases have also been joined. Judge Chhabria bifurcated discovery, prioritizing causation issues. Since that time, three Roundup personal injury cases have been tried, resulting in verdicts. Subsequent to those verdicts, in April 2019, Judge Chhabria ordered lead MDL counsel for the Personal Injury Plaintiffs and Defendants to a confidential mediation. Under the guidance of court-appointed mediator, Kenneth Feinberg, settlement discussions are active and ongoing.

In September 2019, the instant matter was filed as a putative class action in the United States District Court for the Southern District of Indiana, and then transferred to the Roundup MDL. Plaintiff Aaron Sheller is a farmer who alleges he used significant quantities

of Roundup on his thousands of acres of Indiana farmland and, as a result, has an increased risk of developing non-Hodgkin's lymphoma. The putative class is defined as all persons who used Roundup in the States of Arizona, Arkansas, California, Colorado, District of Columbia, Florida, Illinois, Indiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Ohio, Pennsylvania, Utah and West Virginia for agricultural business or other commercial purposes. Relief sought includes a finding that Defendants are liable to members of the class based on their exposure to Roundup, an award of costs to pay for medical monitoring given the class members' increased risk of developing numerous forms of cancer, and establishment of a fund for compensation to those class members who develop disease.

The class in this matter has not been certified, nor was there appointment of class counsel prior to transfer of this matter to the Roundup MDL. A successful recovery will depend on conducting fact and expert discovery, to include actuaries who can opine on the costs of medical monitoring and the amounts necessary to establish an ample inflation-protected fund for injuries that manifest in the future. That discovery has not yet been conducted.

Once the *Sheller* matter was transferred to the MDL, it became subject to this Court's established Plaintiffs' counsel leadership structure.[1] Accordingly, lawyers representing the Personal Injury Plaintiffs have authority to pursue a global settlement that would bind the Medical Monitoring Class, and Defendants are likely to seek such a global resolution.

### 3. Question Presented

I have been asked to offer my opinion on this question: would lead counsel for the Personal Injury Plaintiffs have a conflict of interest in also representing the Medical Monitoring Class?

### 4. Opinion

Based upon the above considerations, it is my opinion that counsel previously appointed to represent the Personal Injury Plaintiffs and now engaging in settlement discussions on their behalf would have a conflict of interest in taking on representation of the putative Medical Monitoring Class.

The rules governing the professional conduct of lawyers appearing before tribunals in which cases pend govern analysis of conflicts of interest in representation of a putative class. *Huston v. Imperial Credit and Commercial Mortgage Investment Corp.,* 179 F.Supp.2d 1157, 1166-1167 (C.D. Cal. 2001); *Neilson v. Union Bank of California, N.A.,* 2003 WL 27374138, p. 4 (C.D. Cal. 2003). Under Civil Local Rule 11-4(a), lawyers who practice before this Court are required to comply with the standards of professional conduct governing members of the State Bar of California. The California Supreme Court recently adopted Rules

---

[1] However, to date no court has evaluated the criteria set forth in Rule 23(g) or appointed class counsel for the Medical Monitoring Class.

3

of Professional Conduct modeled on the ABA Model Rules of Professional Conduct. As relevant to this opinion, Rule 1.7 of the California Rules provides as follows:

> **Rule 1.7 Conflict of Interest: Current Clients**
>
> * * *
>
> (b) A lawyer shall not, without informed written consent* from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person,* or by the lawyer's own interests.
>
> * * *
>
> (d) Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:
>
> (1) the lawyer reasonably believes* that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law; and
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.[2]

The primary value at stake in cases of simultaneous representation of multiple clients is the attorney's duty of loyalty. *Neilson* at 5. Rule 1.7 enforces that duty by precluding not only simultaneous representation of clients who are directly adverse, but also simultaneous representation of clients whose interests, while perhaps overlapping to an extent, may nonetheless diverge sufficiently to impact the attorney's ability to effectively pursue the interests of one without sacrificing the interests of the other. In a class action, the importance of precluding even the possibility of conflicting loyalties is heightened because of the limited control absent class members have over their attorneys. *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1465 (9th Cir. 1995). Consistent with the rules of lawyer conduct, avoidance of conflicting loyalties in representation of a class is implemented through application of the criteria for class certification, specifically, adequacy of representation under Rule 23(a)(4), which requires that neither named plaintiffs nor their counsel have conflicts of interest with class members. *Amchem Products, Inc., et al. v. Windsor, et al.,* 521 U.S. 591, 626, n. 20 (1997).

---

[2] While the structure of California Rule 1.7 differs some from ABA Model Rule 1.7, the substance of the Rule is identical to the Model Rule for all purposes relevant to this opinion.

In this matter, under Rule 1.7(b), the issue posed by appointed lead counsel representing the Medical Monitoring Class in the MDL is whether the responsibilities of those lawyers to their current Personal Injury Plaintiff clients create a significant risk of materially limiting their representation of the Medical Monitoring Class. If so, under the terms of Rule 1.7(d), the lawyers are precluded from engaging in the representation of the Medical Monitoring Class unless they can reasonably believe that they are able to simultaneously provide competent and diligent representation to both the Class members and the Personal Injury Plaintiffs and unless they secure written informed consent from all affected clients.

In my opinion, appointed lead counsel's responsibilities to the Personal Injury Plaintiffs do indeed create a significant risk of materially limiting their representation of the Medical Monitoring Class because the clients in each of those groupings have differing and competing goals. Moreover, even assuming that informed consent is an option in the context of MDL/class action representation, it is my opinion that the lawyers could not reasonably believe that they could simultaneously provide competent and diligent representation to both groups of clients.

The essence of the potential for diverging interests in almost identical circumstances was addressed by the United States Supreme Court in *Amchem Products, Inc., et al. v. Windsor, et al.,* 521 U.S. 591 (1997). In *Amchem*, the Court upheld the decision of the Court of Appeals for the 3rd Circuit sustaining objections to a class action settlement of asbestos claims. The settlement resulted from efforts to reach a global settlement of pending and potential asbestos cases. The MDL panel had consolidated all filed injury cases in a single district. The defendants, consisting of 20 former asbestos manufacturers, communicated that they would be prepared to discuss settlement of the pending cases once they saw a rational way to deal with claims expected to be filed in the future. Attorneys for the Plaintiffs' Steering Committee negotiated and entered into an agreement for a $200 million fund to pay damages in pending cases and to then file and immediately settle a class action on behalf of individuals who had not filed a lawsuit but had been exposed to asbestos and either had already suffered injuries as a result of that exposure or had not yet manifested any asbestos-related condition. The class action settlement included a fund for future claims, with preset ranges of damages not adjusted by inflation, with numerical caps and dollar limits on future claims, and no compensation for certain claims that would have been compensable under applicable state law, including damages for increased risk of cancer, fear of future asbestos-related injury, and costs of medical monitoring.

Objectors maintained that class counsel and class representatives had disqualifying conflicts of interest, and, in particular, that claimants who had manifested disease and claimants without manifest injuries should not have common counsel and should not have been aggregated in a single class. The Court of Appeals found that serious intra-class conflicts precluded the class from meeting the adequacy of representation criteria, and without resolving the lawyer conflict of interest arguments, concluded that the named plaintiffs could not adequately advance the interests of all class members.

The Supreme Court agreed. The Court held that the class did not qualify for certification under either the common issue predominance requirement of Rule 23(b)(3) or the adequacy of representation requirement of Rule 23(a)(4). The Court held that it was not possible to find that the named parties would fairly and adequately protect the interests of the class because in significant respects, their interests were not aligned. Most saliently, the critical goal for those currently injured would be to achieve generous immediate payments, a goal at odds with "the interests of exposure-only plaintiffs in ensuring an ample inflation-protected fund for the future." 521 U.S. at 626. Like the Court of Appeals, the Supreme Court declined to separately address adequacy of counsel issues in light of its conclusions that common questions of law or fact did not predominate and that the named plaintiffs could not adequately represent the interests of the class. 521 U.S. at 626, n. 20.

As in *Amchem*, the critical goal of the Personal Injury Plaintiffs here is to achieve generous immediate payments, a goal at odds with the interests of the members of the putative Medical Monitoring Class in ensuring an ample inflation-protected fund for the future. Moreover, the putative class members have other goals not shared with Personal Injury Plaintiffs, including an award of costs for medical monitoring, compensation for injuries short of developing cancer, sturdy back-end opt-out rights, and causation provisions that can keep pace with developing science and medicine. *Amchem*, 521 U.S. at 610-611. Personal Injury Plaintiffs would care little about such provisions and would rationally trade them for higher current payouts. *Amchem*, 521 U.S. at 611. For the same reasons that the named plaintiffs in *Amchem* could not fairly represent a class whose members had such divergent goals, the same lawyers cannot simultaneously represent clients with such differing objectives in seeking a global resolution of all claims.

The tension of the diverging goals is exacerbated by the differing procedural contexts of the Personal Injury Plaintiffs' cases and the Medical Monitoring class action. The latter case is only recently filed, and the interests of the putative class members require that time and resources be devoted to fact and expert discovery which has not yet been conducted, including the development of appropriate medical monitoring and allocation plans. In contrast, in the Personal Injury Plaintiff cases, significant discovery and successful trials have already occurred, providing a robust basis supporting plaintiffs' positions in settlement discussions.

While Rule 1.7(b) allows for waiver of a conflict when certain conditions can be met, unidentified class members typically cannot waive a conflict of interest. Instead, it falls to the Court to assure that an attorney authorized to represent a class is conflict-free. *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 133 (D.C.D.C. 1994); *see also Smith v. Levine Leichtman Capital Partners, Inc.*, 2011 U.S. Dist. LEXIS 162027 (N.D. Cal. March 9, 2011) (White, J.). Due to the unique procedural status of this case, there has not yet been Court review of appropriate representation for the Medical Monitoring Class.

In any event, if waiver were allowed, it is my opinion that the requirement of Rule 1.7(d) - that the attorney reasonably believe that he/she will be able to provide competent and diligent representation to each affected client - cannot be met in this case. For the reasons identified in *Amchem*, competent and diligent representation of the Personal Injury

Plaintiffs will interfere with competent and diligent representation of the Medical Monitoring Class.

### 4. Conclusion

Under Rule 1.7(b) of the California Rules of Professional Conduct governing the conduct of lawyers appearing in this matter, because of the differing and competing goals of the Personal Injury Plaintiffs and the Medical Monitoring Class, attorneys representing the Personal Injury Plaintiffs cannot effectively represent the Medical Monitoring Class. Simultaneous representation of both involves a conflict of interest that cannot be waived.

Respectfully submitted,

*Mary Robinson*

Mary Robinson

Robinson, Stewart, Montgomery & Doppke, LLC
321 S. Plymouth Ct., 14th Floor
Chicago, IL 60604
(312) 676-9874
mrobinson@rsmdlaw.com