**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:         jhollingsworth@hollingsworthllp.com
                   elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br> Case No. 3:16-md-02741-VC |
| This document relates to: <br><br> *Joseph Matthew Blair, et al.* <br> *v. Monsanto Co., et al.,* <br> Case No. 3:19-cv-07984-VC | |

### <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.1     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.1 and therefore denies those allegations.

1.2     Monsanto denies the allegations in paragraph 1.2.

1.3     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.3 and therefore denies those allegations.

1.4     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.4 and therefore denies those allegations.

1.5     The allegations in paragraph 1.5 relate to plaintiffs and do not require a response from Monsanto.

1.6     In response to the allegations in paragraph 1.6, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.

1.7     In response to the allegations in paragraph 1.7, Monsanto admits that it sells Roundup®-branded products in Texas.

1.8     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1.8 and therefore denies those allegations.

1.9     The allegations in paragraph 1.9 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

1.10    The allegations in paragraph 1.10 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

1.11    Monsanto admits the allegations in paragraph 1.11.

1.12    The allegations in paragraph 1.12 are directed at a defendant other than Monsanto, and plaintiffs have voluntarily dismissed that defendant from this lawsuit, so no response from Monsanto is required for these allegations.

1.13    The allegations in paragraph 1.13 are directed at a defendant other than Monsanto, and plaintiffs have voluntarily dismissed that defendant from this lawsuit, so no response from Monsanto is required for these allegations.

1.14    The allegations in paragraph 1.14 are directed at a defendant other than Monsanto, and plaintiffs have voluntarily dismissed that defendant from this lawsuit, so no response from Monsanto is required for these allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

1.15    The allegations in paragraph 1.15 are directed at defendants other than Monsanto, and plaintiffs have voluntarily dismissed that defendant from this lawsuit, so no response from Monsanto is required for these allegations.

1.16    Monsanto denies the allegations in paragraph 1.16.

1.17    Monsanto admits the allegations in paragraph 1.17, in that Monsanto is an indirect, wholly-owned herbicidal subsidiary of Bayer AG. In response to the remaining allegations in paragraph 1.17, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactures Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides.

1.18    In response to the allegations in paragraph 1.18, Monsanto objects to the Complaint lumping all three defendants together, and Monsanto responds to allegations involving "Defendants" as if those allegations were directed only against Monsanto.

2.1    The allegations in paragraph 2.1 set forth conclusions of law for which no response is required.

2.2    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2.2 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 2.2 set forth conclusions of law for which no response is required.

2.3    The allegations in paragraph 2.3 set forth conclusions of law for which no response is required.

2.4    In response to the allegations in paragraph 2.4, Monsanto denies any "omissions" and certain events giving rise to plaintiffs' claim.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2.4 regarding where certain other events giving rise to plaintiffs' claim occurred and therefore denies those allegations.  The remaining allegations in paragraph 2.4 set forth conclusions of law for which no response is required.

1    3.1    Monsanto admits the allegations in the first and second sentences of paragraph

2  3.1. In response to the allegations in the final sentence of paragraph 3.1, Monsanto admits that

3  glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto

4  was and is not the only manufacturer of glyphosate-based herbicides.  Monsanto lacks

5  information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

6  and statistics cited in the remaining sentences of paragraph 3.1 and therefore denies those

7  allegations.

8    3.2    In response to the allegations in the first sentence of paragraph 3.2, Monsanto

9  admits that its headquarters are in St. Louis County, Missouri and that it and affiliated companies

10  have operations and offices in countries around the world.  Monsanto admits that it is a producer

11  of glyphosate-based herbicides but lacks sufficient information regarding the business of other

12  glyphosate producers to admit or deny the allegation as written in the second sentence of

13  paragraph 3.2.  In response to the allegations in the third sentence of paragraph 3.2, Monsanto

14  admits that it is an indirect, wholly-owned subsidiary of Bayer AG and denies the remaining

15  allegations in the third sentence of paragraph 3.2.  In response to the allegations in the fourth

16  sentence of paragraph 3.2, Monsanto admits that it is the leading producer of seeds that contain

17  the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially

18  improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge

19  sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the

20  remaining sentences of paragraph 3.2 and therefore denies those allegations.

21    3.3    In response to the allegations in the first sentence of paragraph 3.3, Monsanto

22  admits that its glyphosate products are registered in at least 130 countries and approved for use

23  on over 100 different crops.  Monsanto admits that certain studies have reported that glyphosate

24  is found at *de minimis* levels significantly below regulatory safety limits in various locations and

25  media.  Monsanto otherwise denies the remaining allegations in the second, third, and fourth

26  sentences of paragraph 3.3.  Monsanto admits the allegations in the fifth sentence of paragraph

27  3.3.  Monsanto denies the allegations in the final sentence of paragraph 3.3 to the extent they

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

suggest that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

3.4     Monsanto admits the allegations in the first sentence of paragraph 3.4.  Monsanto denies the allegations in the second sentence of paragraph 3.4.

3.5     In response to the allegations in paragraph 3.5, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 3.5.

3.6     Monsanto denies the allegations in paragraph 3.6.

3.7     In response to the allegations in paragraph 3.7, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 3.7 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

3.8     The allegations in paragraph 3.8 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 3.8.

3.9     In response to the allegations in paragraph 3.9, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 3.9 set forth conclusions of law for which no response is required.

3.10     The allegations in paragraph 3.10 set forth conclusions of law for which no response is required.

3.11    Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution and are registered by the State of Texas for sale and distribution.

3.12    In response to the allegations in paragraph 3.12, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 3.12 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 3.12 set forth conclusions of law for which no answer is required.

3.13    Monsanto denies the allegations in paragraph 3.13 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3.13 regarding such pesticide products generally and therefore denies those allegations.  The remaining allegations in paragraph 3.13 set forth conclusions of law for which no response is required.

3.14    In response to the allegations in paragraph 3.14, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.14 and therefore denies those allegations.

       3.15    In response to the allegations in paragraph 3.15, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or

---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 3.15.

3.16    In response to the allegations in paragraph 3.16, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies. To the extent that the allegations in paragraph 3.16 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

3.17    In response to the allegations in paragraph 3.17, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

3.18    Monsanto denies the allegations in paragraph 3.18 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was

- 8 -

one of several pesticide manufacturers who had used IBT test results.  The audit found some

toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

based upon any invalid IBT studies.  To the extent that the allegations in paragraph 3.18 are

intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

denies those allegations.

3.19     In response to the allegations in paragraph 3.19, Monsanto admits that three IBT

employees were convicted of the charge of fraud, but Monsanto denies that any of the

individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

herbicides.

3.20     In response to the allegations in paragraph 3.20, Monsanto admits that it – along

with numerous other private companies – hired Craven Laboratories as an independent

laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that

it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies

conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

paragraph 3.20 are intended to suggest that Monsanto was anything other than a victim of this

fraud, such allegations are denied.

3.21     Monsanto denies the allegations in paragraph 3.21.

3.22     In response to the allegations in paragraph 3.22, Monsanto admits that Roundup®-

branded products are highly valued by its customers because of their efficacy and safety.

Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

remaining allegations in paragraph 3.22 are vague and conclusory and comprise attorney

characterizations and are accordingly denied.

3.23     In response to the allegations in paragraph 3.23, Monsanto admits that following

the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such

seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks

1   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

2   cited in paragraph 3.23 and accordingly denies those allegations.  The remaining allegations in

3   paragraph 3.23 are vague and conclusory and comprise attorney characterizations and are

4   accordingly denied.

5      3.24 In response to the allegations in paragraph 3.24, Monsanto admits that glyphosate

6   is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that

7   it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

8   information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

9   cited in paragraph 3.24 and accordingly denies the same.  The remaining allegations in paragraph

10  3.24 are vague and conclusory and comprise attorney characterizations and are accordingly

11  denied.

12     3.25 In response to the allegations in paragraph 3.25, Monsanto admits that the New

13  York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

14  advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

15  admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

16  General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

17  the subparts purport to quote a document, the document speaks for itself and thus does not

18  require any further answer.  The remaining allegations in paragraph 3.25 are vague and

19  conclusory and comprise attorney characterizations and are accordingly denied.

20     3.26 In response to the allegations in paragraph 3.26, Monsanto admits it entered into

21  an assurance of discontinuance with the New York Attorney General.  The assurance speaks for

22  itself and thus does not require any further answer.  The remaining allegations in paragraph 3.26

23  are vague and conclusory and comprise attorney characterizations and are accordingly denied.

24     3.27 Monsanto denies the allegations in paragraph 3.27.

25     3.28 In response to the allegations in paragraph 3.28, Monsanto admits that the French

26  court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and

27  that it "left the soil clean," but denies the allegations in paragraph 3.28 to the extent that they

28

- 10 -

1    suggest that this ruling was in any way related to plaintiffs' claim here that glyphosate can cause
2    cancer.  Monsanto denies the remaining allegations in paragraph 3.28.

3        3.29    In response to the allegations in paragraph 3.29, Monsanto denies that IARC
4    follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information
5    or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in
6    paragraph 3.29, which are not limited as of any specified date, and accordingly denies the same.

7        3.30    In response to the allegations in paragraph 3.30, Monsanto admits that IARC sets
8    forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.
9    Monsanto denies the remaining allegations in paragraph 3.30.

10       3.31    Monsanto denies any suggestion that IARC reviewed the full body of scientific
11   research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies
12   that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to
13   form a belief as to the truth of the remaining allegations in paragraph 3.31 and therefore denies
14   those allegations.

15       3.32    Monsanto denies any suggestion that IARC reviewed the full body of scientific
16   research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies
17   that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to
18   form a belief as to the truth of the remaining allegations in paragraph 3.32 and therefore denies
19   those allegations.

20       3.33    Monsanto denies the allegations in paragraph 3.33 to the extent that they suggest
21   that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified
22   glyphosate as a Group 2A agent in March 2015.

23       3.34    In response to the allegations in paragraph 3.34, Monsanto admits that IARC
24   issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the
25   monograph was prepared by a "working group" of individuals selected by IARC who met over a
26   one-week period in March 2015 to consider glyphosate along with a number of other substances.
27   Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 3.34.

3.35    In response to the allegations in paragraph 3.35, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

3.36    The allegations in paragraph 3.36 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

3.37    In response to the allegations in paragraph 3.37, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 3.37.

3.38    In response to the allegations in paragraph 3.38, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

1    3.39    Monsanto denies the allegations in paragraph 3.39.  The IARC working group

2  concluded that there was only limited evidence of carcinogenicity in epidemiologic studies,

3  which, per IARC's guidelines, means that the working group could not rule out chance, bias or

4  confounding so as to reach any conclusion of an increased risk.

5    3.40    In response to the allegations in paragraph 3.40, Monsanto admits that the

6  working group cited to a study that it concluded provided evidence of chromosomal damage in

7  community residents reported to be exposed to glyphosate, but Monsanto denies that the study

8  supports such a conclusion or that the authors of the study reached such a conclusion.

9    3.41    In response to the allegations in paragraph 3.41, Monsanto admits that the IARC

10  working group purported to make these findings, but denies that the animal carcinogenicity

11  studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any

12  of the identified tumors.  Monsanto further states that regulatory agencies around the world have

13  reviewed the same animal studies and concluded that they do not provide evidence that

14  glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 3.41.

15    3.42    In response to the allegations in paragraph 3.42, Monsanto admits that the IARC

16  working group purported to make these findings, but denies that the cited studies provide any

17  reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or

18  persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 3.42.

19    3.43    In response to the allegations in paragraph 3.43, Monsanto admits that the IARC

20  working group interpreted a selected number of experimental studies as evidence that glyphosate

21  can cause genotoxicity, but Monsanto denies that the working group reliably considered the full

22  body of scientific data on such alleged genotoxic endpoints and denies that the working group

23  reliably interpreted the studies that it selected for consideration.  Regulators around the world

24  repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining

25  allegations in paragraph 3.43.

26    3.44    In response to the allegations in paragraph 3.44, Monsanto admits that the IARC

27  working group purported to find such effects, but denies that there is any reliable scientific basis

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

for such conclusion.  Monsanto denies the remaining allegations in paragraph 3.44.

3.45    In response to the allegations in paragraph 3.45, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 3.45.

3.46    In response to the allegations in paragraph 3.46, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

3.47    In response to the allegations in paragraph 3.47, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

3.48    Monsanto states that the term "toxic" as used in paragraph 3.48 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 3.48.

3.49    In response to the allegations in paragraph 3.49, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 3.49.

3.50    In response to the allegations in the first sentence of paragraph 3.50, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

- 14 -

regulation" in 2004.  To the extent that the first sentence of paragraph 3.50 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 3.50.  In response to the remaining allegations in paragraph 3.50, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 3.50.

3.51     In response to the allegations in paragraph 3.51, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 3.51 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 3.51.

3.52     In response to the allegations in paragraph 3.52, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 3.52 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 3.52.

3.53     In response to the allegations in paragraph 3.53, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 3.53.

3.54     In response to the allegations in paragraph 3.54, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 3.54.

3.55     Monsanto admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited

as of January 1, 2019, with certain exceptions.  Monsanto denies the remaining allegations in paragraph 3.55.

3.56    In response to the allegations in paragraph 3.56, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 3.56.

3.57    In response to the allegations in paragraph 3.57, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 3.57.

3.58    In response to the allegations in paragraph 3.58, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 3.58.

3.59    In response to the allegations in paragraph 3.59, Monsanto admits that it brought a lawsuit in California challenging the notice of intent by the California Office of Environmental Health Hazard Assessment ("OEHHA") to include glyphosate on its Proposition 65 list.  Monsanto admits that Superior Court of California and the Fifth Appellate District issued rulings adverse to Monsanto in Monsanto's lawsuit against OEHHA.  Monsanto states that OEHHA

1   decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in

2   a process that OEHHA itself considers "ministerial" and "automatic" without any role for

3   consideration of the weight or quality of the evidence considered by IARC.  Monsanto further

4   states that this decision was not based upon any independent scientific analysis of glyphosate but

5   instead was in response to a provision of a California ballot proposition triggering such action

6   based solely upon the IARC classification, and indeed was contrary to OEHHA's own

7   conclusion in 2007, based upon its own independent evaluation of the same scientific evidence,

8   that glyphosate is "unlikely to pose a cancer hazard to humans."  Monsanto contends that

9   OEHHA's decision that it was required to list glyphosate violates the United States Constitution

10  and the California Constitution.  On February 26, 2018, a federal district court enjoined

11  California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

12       3.60    In response to the allegations in paragraph 3.60, Monsanto admits that a San

13  Francisco jury returned a verdict for plaintiff of approximately $290 million in the *Johnson v.*

14  *Monsanto Company* lawsuit and that the trial court reduced the award to $78.5 million, but

15  Monsanto states that it is seeking to have the judgment vacated on appeal.

16       4.1     Monsanto lacks information or knowledge sufficient to form a belief as to the

17  truth of the allegations in paragraph 4.1 and therefore denies those allegations.

18       4.2     Monsanto lacks information or knowledge sufficient to form a belief as to the

19  truth of the allegations in paragraph 4.2 and therefore denies those allegations.

20       4.3     Monsanto lacks information or knowledge sufficient to form a belief as to the

21  truth of the allegations in paragraph 4.3 and therefore denies those allegations.

22       4.4     Monsanto lacks information or knowledge sufficient to form a belief as to the

23  truth of the allegations in paragraph 4.4 and therefore denies those allegations.

24       4.5     Monsanto lacks information or knowledge sufficient to form a belief as to the

25  truth of the allegations in paragraph 4.5 and therefore denies those allegations.

26       4.6     In response to the allegations in paragraph 4.6, Monsanto denies that any

27  exposure to Roundup®-branded products can cause NHL and other serious illnesses.  Monsanto

28

1   lacks information or knowledge sufficient to form a belief as to the truth of the remaining

2   allegations in paragraph 4.6 and therefore denies those allegations.

3        4.7    Monsanto denies that any exposure to Roundup®-branded products can cause

4   NHL and other serious illnesses and therefore denies those allegations in paragraph 4.7.

5   Monsanto states, however, that the scientific studies upon which IARC purported to base its

6   evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks

7   information or knowledge sufficient to form a belief as to the truth of the remaining allegations

8   in paragraph 4.7 and therefore denies those allegations.

9        4.8    Monsanto lacks information or knowledge sufficient to form a belief as to the

10  truth of the allegations in paragraph 4.8 and therefore denies those allegations.

11       4.9    Monsanto denies that any exposure to Roundup®-branded products can cause

12  NHL and other serious illnesses and therefore denies those allegations in paragraph 4.9.

13  Monsanto states, however, that the scientific studies upon which IARC purported to base its

14  evaluation of glyphosate were all publicly available before March, 2015.  Monsanto lacks

15  information or knowledge sufficient to form a belief as to the truth of the remaining allegations

16  in paragraph 4.9 and therefore denies those allegations.

17       4.10   Monsanto denies that any exposure to Roundup®-branded products can cause

18  NHL and other serious illnesses. Monsanto lacks information or knowledge sufficient to form a

19  belief as to the truth of the remaining allegations in paragraph 4.10 and therefore denies those

20  allegations.

21       5.1    Monsanto denies the allegations in paragraph 5.1.

22       5.2    In response to the allegations in paragraph 5.2, Monsanto admits that it has stated

23  and continues to state that Roundup®-branded products are safe when used as labeled and that

24  they are non-toxic and non-carcinogenic.

25       5.3    In response to the allegations in paragraph 5.3, Monsanto states that the cited

26  document speaks for itself and does not require a response.

27

28

- 18 -

5.4      Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed plaintiff to risk of his alleged cancer and denies the remaining allegations in paragraph 5.4.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

5.5      Monsanto denies the allegations in the first and last sentences in paragraph 5.5. The remaining allegations in paragraph 5.5 set forth conclusions of law for which no response is required.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

5.6      Monsanto denies that it engaged in the "wrongdoing" alleged in the Complaint and denies that there is any reliable scientific evidence that exposure to glyphosate or Roundup®-branded products can cause cancer.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015. The remaining allegations in paragraph 5.6 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.

6.1      Monsanto incorporates by reference its responses to paragraphs 1 through 5.6 in response to paragraph 6.1 of plaintiffs' Complaint.  To the extent that the allegations in plaintiffs' Claim One are directed at a defendant other than Monsanto, those allegations do not require a response from Monsanto.

6.2      In response to the allegations in paragraph 6.2, Monsanto admits that plaintiffs purport to bring claims for strict liability design defect but denies any liability as to that claim.

6.3      In response to the allegations in paragraph 6.3, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 6.3.

6.4      Monsanto denies the allegations in paragraph 6.4.

- 19 -

6.5     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.5 and therefore denies those allegations.

6.6     Monsanto denies the allegations in paragraph 6.6.

6.7     Monsanto denies the allegations in the first sentence of paragraph 6.7.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 6.7 and therefore denies those allegations.

6.8     Monsanto denies the allegations in paragraph 6.8.

6.9     Monsanto denies the allegations in paragraph 6.9 and each of its subparts.

6.10    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.10 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 6.10, including that Roundup®-branded products have "dangerous characteristics."

6.11    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.11 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 6.11, including that Roundup®-branded products have "dangerous characteristics."

6.12    Monsanto denies the allegations in paragraph 6.12 regarding defects and risk associated with Roundup®-branded products.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.12 and therefore denies those allegations.

6.13    Monsanto denies the allegations in paragraph 6.13.

6.14    Monsanto denies the allegations in paragraph 6.14.

6.15    Monsanto denies the allegations in paragraph 6.15.

6.16    Monsanto denies the allegations in paragraph 6.16.

6.17    Monsanto denies the allegations in paragraph 6.17.

6.18    Monsanto denies the allegations in paragraph 6.18.

6.19    Monsanto denies the allegations in paragraph 6.19.

6.20    In response to paragraph 6.20, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

6.21    Monsanto incorporates by reference its responses to paragraphs 1 through 6.20 in response to paragraph 6.21 of plaintiffs' Complaint.  To the extent that the allegations in plaintiffs' Claim Two are directed at a defendant other than Monsanto, those allegations do not require a response from Monsanto.

6.22    In response to the allegations in paragraph 6.22, Monsanto admits that plaintiffs purport to bring claims for strict liability failure to warn, but denies any liability as to that claim.

6.23    Monsanto denies the allegations in paragraph 6.23.

6.24    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.24 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph 6.24 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 6.24.

6.25    The allegations in paragraph 6.25 set forth conclusions of law for which no response is required.

6.26    Monsanto denies the allegations in paragraph 6.26.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

6.27    Monsanto denies the allegations in paragraph 6.27.

6.28    Monsanto denies the allegations in paragraph 6.28.

6.29    Monsanto denies the allegations in paragraph 6.29.

1      6.30    Monsanto lacks information or knowledge sufficient to form a belief as to the

2   truth of the allegations in paragraph 6.30 and therefore denies those allegations.

3      6.31    Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 6.31 concerning plaintiff's alleged use of or exposure to

5   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

6   remaining allegations in paragraph 6.31, including that Roundup®-branded products have

7   "dangerous characteristics."

8      6.32    Monsanto lacks information or knowledge sufficient to form a belief as to the

9   truth of the allegations in paragraph 6.32 concerning plaintiff's claimed use of and exposure to

10  Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

11  remaining allegations in paragraph 6.32, including that Roundup®-branded products have

12  "dangerous characteristics."

13     6.33    Monsanto denies the allegations in paragraph 6.33 regarding defects and risks

14  associated with Roundup®-branded products.  Monsanto lacks information or knowledge

15  sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.33 and

16  therefore denies those allegations.

17     6.34    Monsanto denies the allegations in paragraph 6.34.

18     6.35    Monsanto denies the allegations in paragraph 6.35.

19     6.36    Monsanto denies the allegations in paragraph 6.36.

20     6.37    Monsanto denies the allegations in paragraph 6.37.

21     6.38    Monsanto denies the allegations in paragraph 6.38.

22     6.39    Monsanto denies the allegations in paragraph 6.39.

23     6.40    Monsanto denies the allegations in paragraph 6.40.

24     In response to the "THEREFORE" paragraph following paragraph 6.40, Monsanto

25  demands that judgment be entered in its favor and against plaintiff; that plaintiffs' Complaint be

26  dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

27

28
MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

1   fees as allowed by law and such further and additional relief as this Court may deem just and

2   proper.

3       6.41    Monsanto incorporates by reference its responses to paragraphs 1 through 6.40 in

4   response to paragraph 6.41 of plaintiffs' Complaint.  To the extent that the allegations in

5   plaintiffs' Claim Three are directed at a defendant other than Monsanto, those allegations do not

6   require a response from Monsanto.

7       6.42    In response to the allegations in paragraph 6.42 Monsanto states that the phrase

8   "directly or indirectly" is vague and ambiguous.  Monsanto lacks information or knowledge

9   sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.42 and

10  therefore denies those allegations.

11      6.43    The allegations in paragraph 6.43 set forth conclusions of law for which no

12  response is required.

13      6.44    The allegations in paragraph 6.44 set forth conclusions of law for which no

14  response is required.

15      6.45    Monsanto denies the allegations in paragraph 6.45.

16      6.46    Monsanto denies the allegations in paragraph 6.46.

17      6.47    Monsanto lacks information or knowledge sufficient to form a belief as to the

18  truth of the allegations in paragraph 6.47 regarding users' and consumers' knowledge and

19  therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 6.47.

20  All labeling of Roundup®-branded products has been and remains EPA-approved and in

21  compliance with all federal requirements under FIFRA.

22      6.48    Monsanto denies the allegations in paragraph 6.48.

23      6.49    Monsanto denies the allegations in paragraph 6.49.

24      6.50    Monsanto denies the allegations in paragraph 6.50, including each of its subparts.

25      6.51    Monsanto denies the allegations in paragraph 6.51.

26      6.52    Monsanto lacks information or knowledge sufficient to form a belief as to the

27  truth of the allegations in paragraph 6.52 regarding plaintiffs' knowledge and therefore denies

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

those allegations.  Monsanto denies the remaining allegations in paragraph 6.52, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

6.53    Monsanto denies the allegations in paragraph 6.53.

6.54    Monsanto denies the allegations in paragraph 6.54.

6.55    Monsanto denies the allegations in paragraph 6.55.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

In response to the "THEREFORE" paragraph following paragraph 6.55, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

6.56    Monsanto incorporates by references its responses to paragraphs 1 through 6.55 in response to paragraph 6.56 of plaintiffs' Complaint.  To the extent that the allegations in plaintiffs' Claim Four are directed at a defendant other than Monsanto, those allegations do not require a response from Monsanto.

6.57    Monsanto denies the allegations in paragraph 6.57.  Additionally, the last sentence in paragraph 6.57 sets forth a conclusion of law for which no response is required.

6.58    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.58 regarding plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 6.58 set forth conclusions of law for which no response is required.

6.59    Monsanto denies the allegations in paragraph 6.59.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

6.60    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 6.60 regarding the claimed use of and exposure to

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

1   Roundup®-branded products by plaintiff and therefore denies those allegations.  The remaining

2   allegations in paragraph 6.60 set forth conclusions of law for which no response is required.

3        6.61   The allegations in paragraph 6.61 set forth conclusions of law for which no

4   response is required.

5        6.62   Monsanto lacks information or knowledge sufficient to form a belief as to the

6   truth of the allegations in paragraph 6.62 and therefore those allegations.

7        6.63   Monsanto lacks information or knowledge sufficient to form a belief as to the

8   truth of the allegations in paragraph 6.63 regarding the claimed use of Roundup®-branded

9   products by plaintiff and others and therefore denies those allegations.  The remaining

10  allegations in paragraph 6.63 set forth conclusions of law for which no response is required.

11       6.64   Monsanto lacks information or knowledge sufficient to form a belief as to the

12  truth of the allegations in paragraph 6.64 regarding plaintiff's claimed use of or exposure to

13  Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph

14  6.64 regarding Monsanto's implied warranty sets forth conclusions of law for which no response

15  is required.  Monsanto denies the remaining allegations in paragraph 6.64.

16       6.65   Monsanto lacks information or knowledge sufficient to form a belief as to the

17  truth of the allegations in paragraph 6.65 regarding plaintiff's claimed use of Roundup®-branded

18  products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in

19  paragraph 6.65 regarding Monsanto's implied warranty sets forth conclusions of law for which

20  no response is required.

21       6.66   Monsanto denies that there is any risk of serious injury associated with the as-

22  directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto

23  lacks information or knowledge sufficient to form a belief as to the truth of the allegations in

24  paragraph 6.66 regarding plaintiff's knowledge about Roundup®-branded products and therefore

25  denies the remaining allegations in paragraph 6.66.

26       6.67   Monsanto denies the allegations in paragraph 6.67.

27       6.68   Monsanto denies the allegations in paragraph 6.68.

28

6.69    Monsanto denies the allegations in paragraph 6.69.

In response to the "THEREFORE" paragraph following paragraph 6.69, Monsanto demands that judgment be entered in its favor and against plaintiffs and that plaintiffs' Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

In response to the allegations in the section entitled "PRAYER FOR RELIEF, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.   The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.   Plaintiffs' claims against Monsanto are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.   Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

4.   Plaintiffs' claims against Monsanto are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.   Plaintiffs' claims against Monsanto are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.   Plaintiffs' claims against Monsanto are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

7.   Plaintiffs' claims against Monsanto are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

8.   Plaintiffs' claims against Monsanto are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

9.   Plaintiffs' claims against Monsanto are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiffs' pre-existing medical conditions.

10. The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims against Monsanto in whole or in part.

11. Applicable statutes of limitations and/or repose, or prescriptive periods, bar plaintiffs' claims against Monsanto in whole or in part.

12. Plaintiffs' misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims against Monsanto in whole or in part.

13. If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or

- 27 -

causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

14. Monsanto had no legal relationship or privity with plaintiffs and owed no duty to them by which liability could be attributed to it.

15. Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

16. Plaintiffs' claims against Monsanto are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17. Plaintiffs' claims against Monsanto for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Arkansas Constitution, the Louisiana Constitution,  the Texas Constitution, and/or other applicable state constitutions.

18. Plaintiffs' claims against Monsanto for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Arkansas law, Louisiana law, Texas law and/or other applicable state laws.

19. Plaintiffs' claims against Monsanto for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law, including La. Rev. Stat. § 9:2800.52, *et seq.*; Tex. Civ. Prac. & Rem. Code Ann. §§ 41.004(a), 41.008(b).

20. Plaintiffs' claims against Monsanto are barred in whole or in part by plaintiffs' contributory/comparative negligence.

21. Plaintiffs' claims against Monsanto are barred in whole or in part by plaintiffs' failure to mitigate damages.

22. Plaintiffs' claims against Monsanto are barred in whole or in part by the sophisticated user doctrine.

- 28 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-cv-07984-VC

23. Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs have received and/or will receive from collateral sources.

24. If plaintiffs have been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

25. Plaintiffs' claims against Monsanto are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

26. Plaintiffs' claims against Monsanto are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

27. Plaintiffs' claims against Monsanto are barred, in whole or in part, by application of Tex. Civ. Prac. & Rem. Code Ann. § 82.008.

*28.*    Plaintiffs' common law claims are barred, in whole or in part, by application of Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:280051, *et seq.*

29.    This case is governed by the exclusive provisions of the Louisiana Products Liability Act (La. R.S. 9:2800.51, et seq.) ("LPLA").  Any theories of recovery that fall outside of the LPLA's provisions are therefore subject to dismissal.

30.    Monsanto affirmatively pleads the applicability of the LPLA and specifically avers that plaintiffs are not entitled to recovery under any of the exclusive theories of liability set forth in the Act.

31.    Monsanto specifically avers that the product possessed no characteristic that rendered it unreasonably dangerous in a reasonably anticipated use as defined by the LPLA (La. R.S. 9:2800.54).

32.    Monsanto asserts all allowable defenses under the LPLA, La. R.S. 9:2800.51, et seq., including but not limited to the applicability of La. R.S. 9:2800.59(A)(1), (2), (3), and (B).

33.    Should plaintiffs recover under any claims under the LPLA, a recovery of attorney's fees for plaintiffs is barred under the provisions of that statute.

1    34.    To the extent plaintiffs' claims are based on conduct that pre-dates 1996,

2  Louisiana's comparative negligence regime may not apply, and plaintiffs' claims may be barred

3  by contributory negligence.

4    35.    Plaintiffs' claims for punitive damages are barred under Louisiana Civil Code

5  Article 3546.

6    36.    Monsanto has no liability to plaintiffs under any theory of redhibition to the

7  extent that plaintiffs failed to tender any product allegedly sold by Monsanto that allegedly

8  contained a redhibitory defect and has not made an amicable demand upon Monsanto.

9    37.    Monsanto has no liability to plaintiffs under any theory of redhibition to the

10  extent that plaintiffs have waived plaintiffs' redhibition rights.

11    38. Monsanto hereby gives notice that it intends to rely upon such other defenses as may

12  become available or apparent during the course of discovery and thus reserves its right to amend

13  this Answer to assert such defenses.

14    **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

15  plaintiff, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such

16  other relief as the Court deems equitable and just.

17    ## JURY TRIAL DEMAND

18    Monsanto demands a jury trial on all issues so triable.

19

20  DATED:  March 12, 2020                Respectfully submitted,

21

22    /s/ Joe G. Hollingsworth
      Joe G. Hollingsworth (*pro hac vice*)
      (jhollingsworth@hollingsworthllp.com)

23    Eric G. Lasker (*pro hac vice*)
      (elasker@hollingsworthllp.com)

24    HOLLINGSWORTH LLP
      1350 I Street, N.W.

25    Washington, DC  20005
      Telephone:  (202) 898-5800

26    Facsimile:   (202) 682-1639

27    *Attorneys for Defendant*
      *MONSANTO COMPANY*

28
                    - 30 -