**WILKINSON WALSH LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO:<br><br>*Randy Bodiford v. Monsanto Co., et al.*,<br><br>Case No. 3:20-cv-01025-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:       April 23, 2020<br>Time:      10:00 a.m.<br>Courtroom: 4 |

## TABLE OF CONTENTS

Page

ISSUE TO BE DECIDED ................................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................................. 2

LEGAL STANDARD...................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.   THE UNREBUTTED EVIDENCE ESTABLISHES THAT BROWNING FARMS WAS FRAUDULENTLY JOINED, AND, THEREFORE, THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE. ................................................................................ 5

        A.   There is No Basis to Conclude that Browning Farms Had Actual Knowledge that Roundup®-Branded Products Are Allegedly Carcinogenic or Can Cause NHL. ..... 6

        B.   There is No Basis to Conclude that Browning Farms Should Have Known that Roundup®-Branded Products Are Allegedly Carcinogenic or Can Cause NHL. ..... 8

    II.  MONSANTO TIMELY REMOVED THIS LAWSUIT. ................................................. 9

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arias v. Follet Higher Educ. Corp.*,
    No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..........................4, 7

*Branham v. Ford Motor Co.*,
    701 S.E.2d 5 (S.C. 2010) ...............................................................................................6

*Castner v. Exxon Co., U.S.A.*,
    563 F. Supp. 684 (E.D. Pa. 1983) .................................................................................9

*Chakrabarti v. City of Orangeburg*,
    743 S.E.2d 109 (S.C. Ct. App. 2013) ............................................................................5

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) .....................................................................................10

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
    No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) ...................4, 7

*Grancare, LLC v. Thrower*,
    889 F.3d 543 (9th Cir. 2018) .........................................................................................3

*Harris v. Bankers Life & Cas. Co.*,
    425 F.3d 689 (9th Cir. 2005) .........................................................................................9

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
    No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) ...............................3

*Livingston v. Noland Corp.*,
    362 S.E.2d 16 (S.C. 1987) .............................................................................................6

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) ....................................................................................................12

*Martinez v. McKesson Corp.*,
    No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ....................4, 7, 8

*Moore v. Barony House Rest., LLC*,
    674 S.E.2d 500 (S.C. Ct. App. 2009) .............................................................................5

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) .....................................................................................3, 4

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) ..................................................................................................4

*Vagle v. Archstone Cmtys., LLC*,
    No. CV 14-03476 RGK, 2014 WL 2979201 (C.D. Cal. July 1, 2014)....................................10

**Statutes**

28 U.S.C. § 1441(b)(2) ...................................................................................................................3

28 U.S.C. § 1446(b) ..................................................................................................1, 9, 10, 11, 12

**Other Authorities**

Federal Rule of Civil Procedure 6 ................................................................................................10

Federal Rule of Civil Procedure 19 ................................................................................................9

## ISSUE TO BE DECIDED

In an attempt to defeat federal diversity jurisdiction, Plaintiff, a citizen of South Carolina, has sued his former employer, Browning Farms, Inc., alleging that his employer was negligent because it "reasonably should have known" that Roundup®-branded herbicides or glyphosate could cause non-Hodgkin's lymphoma ("NHL"). This allegation against Browning Farms—a citizen of South Carolina for purposes of diversity jurisdiction—is not supported by any facts and, indeed, is contrary to the extensive allegations in the Complaint that Monsanto actively concealed the purported cancer risk *from farms* like Browning Farms. Most importantly, Plaintiff has put forth no evidence to counter the sworn affidavit of Browning Farms' owner, Wayne Browning – *who personally applied Roundup®-branded herbicides alongside the Plaintiff* – that Mr. Browning and Browning Farms had no knowledge that such herbicides could allegedly cause NHL. Nor does Plaintiff have any response to Monsanto's showing that Browning Farms' understanding of the safety of Roundup®-branded herbicides was consistent with decades of statements by the United States Environmental Protection Agency ("EPA"), which as recently as January 2020 conclusively reaffirmed that "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." EPA, *Glyphosate: Interim Registration Review Decision Case Number 0178* at 10 (Jan. 22, 2020) ("EPA Interim Registration Review Decision"). Given this unrebutted evidence, there is no basis for Plaintiff's claims against the sole non-diverse defendant in this case.

As set forth in the Notice of Removal, there is complete diversity of citizenship between Plaintiff and the remaining defendants once the citizenship of the fraudulently joined defendant, Browning Farms, is disregarded. The statutory amount-in-controversy requirement is also satisfied, and Plaintiff does not contend otherwise. This case was also timely removed to federal court with Mr. Browning's affidavit serving as the "other paper" for purposes of 28 U.S.C. § 1446(b)(3).

While Monsanto has pierced the pleadings by presenting evidence to satisfy its removal burden, Plaintiff's remand arguments instead rely upon speculation and unsupported allegations from the Complaint. That is not sufficient to support remand when Monsanto has established – with unrebutted evidence – that removal was proper. Moreover, Plaintiff does not even attempt to apply the correct standard for fraudulent joinder, instead focusing on *Fourth Circuit* precedent when the Ninth Circuit's standard governs. The issue to be decided is whether, on this record, the Motion to Remand should be denied when Monsanto has established this Court has subject matter jurisdiction based on complete diversity of citizenship once the Court disregards the citizenship of the fraudulently joined defendant, Browning Farms.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In July 2019, Plaintiff filed this lawsuit in the Court of Common Pleas for Allendale County, South Carolina, alleging that his exposure to Monsanto's Roundup®-branded herbicides (between 1982 and 2015) caused him to develop NHL. Notice of Removal ¶¶ 6-7, No. 3:20-cv-01025-VC (N.D. Cal.), ECF No. 1. While the Complaint asserts a series of legal claims against out-of-state defendants Monsanto and Helena Agri-Enterprises, LLC d/b/a Helena Chemical Company ("Helena"), Plaintiff asserts only two of those claims – "Failure to Warn" (Count II) and "Negligence" (Count III) – against his former employer, Browning Farms. *See id.* ¶ 7.

On November 4, 2019, Monsanto – a citizen of Delaware and Missouri for purposes of federal diversity jurisdiction, *see* Notice of Removal ¶ 10 – timely removed this lawsuit from South Carolina state court to the United States District Court for the District of South Carolina on the basis of diversity jurisdiction and the fraudulent joinder doctrine. Plaintiff is a South Carolina citizen, and Helena, the only other properly joined defendant besides Monsanto, is a citizen of New York for purposes of diversity jurisdiction. *See id.* ¶¶ 9 & 11.

On February 10, 2020, this case was transferred from the District of South Carolina to this Court and, on March 5, 2020, Plaintiff filed the instant Motion to Remand. Pl's. Mot. to Remand, No. 3:16-md-02741-VC (N.D. Cal.), ECF No. 9715; No. 3:20-cv-01025-VC (N.D.

Cal.), ECF No. 26 ("Remand Mot."). Plaintiff's Remand Motion does not dispute that Monsanto is a citizen of both Missouri and Delaware for purposes of diversity jurisdiction, nor does Plaintiff dispute that Helena is a citizen of New York for purposes of diversity jurisdiction. In addition, Plaintiff does not dispute that the jurisdictional amount-in-controversy requirement has been satisfied.

## LEGAL STANDARD

This Court has ruled that "the precedent of the Ninth Circuit is binding on issues of federal law." Pretrial Order No. 191 at 2, *In re: Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal.), ECF No. 7844. Plaintiff's Remand Motion does not cite a single Ninth Circuit decision or any binding authority on the issue of fraudulent joinder, instead relying entirely on inapplicable Fourth Circuit case law. *See, e.g.*, Remand Mot. at 4-5.

The Ninth Circuit has recognized that, although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant removing a lawsuit from state court based on fraudulent joinder of a co-defendant is required to show that there is no possibility that the state court would hold the co-defendant liable. *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). When fraudulent joinder applies—*i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (citation omitted)—the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship. *Id.* Moreover, if a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be a "non-fanciful" one for the case to be remanded. *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015) (citation

omitted). Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that rule applies only to "properly joined" defendants. *See* 28 U.S.C. § 1441(b)(2).

In conducting a fraudulent joinder analysis, a court is not limited to the allegations of the complaint and is permitted to consider affidavits and other evidence presented by the removing defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." (citation omitted)); *Morris*, 236 F.3d at 1068 ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (citation omitted)). Once the removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand. *See Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder (emphasis in original)); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016) (same; holding plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome evidence offered by removing defendant to establish fraudulent joinder); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016) (same; holding that plaintiff's "speculation, which is unsupported by any evidence," did not overcome removing defendant's evidence).

## ARGUMENT

When evaluating whether Plaintiff has asserted any viable claims against Browning Farms, it is important to focus on exactly what is – and is not – alleged in the Complaint regarding that defendant. Plaintiff asserts only negligence claims against Browning Farms. *See*

Compl. (attached as part of Exhibit 1 to the Notice of Removal), Count II ("Failure to Warn"), Count III ("Negligence"). The Complaint does *not* assert any strict liability claims against Browning Farms. *See id.* ¶¶ 57-78 (asserting Count I – "Strict Liability" – against Monsanto and Helena, but not Browning Farms). The absence of strict liability claims is appropriate because Browning Farms:

> (a) ***Was a purchaser and consumer of Monsanto's Roundup®-branded herbicides***. *See, e.g.*, Compl. ¶¶ 4 & 8; *see also* Affidavit of Wayne Browning ¶ 13 ("Browning Affidavit") (stating that Wayne Browning "worked side-by-side" with Plaintiff and applied Roundup®-branded herbicides while performing work for Browning Farms);[1]

and

> (b) ***Had no involvement in testing, developing, researching, designing, manufacturing, inspecting, labeling, marketing, selling, distributing, or promoting Monsanto's Roundup®-branded herbicides.*** S*ee, e.g.*, Compl. ¶¶ 81 & 83 (alleging that Monsanto and Helena engaged in those activities, but not alleging that Browning Farms engaged in any of those activities), ¶ 111 (same); Browning Farms' Am. Answer ¶ 4 (specifically denying that Browning Farms "was involved in the design, development, manufacturing, testing, packaging, promoting, marketing, distribution and/or sale of the subject products [Roundup®-branded herbicides"]), ¶ 113 (denying that Browning Farms was involved in selling, distributing, packaging, labeling, marketing, or promoting Roundup®-branded herbicides) (attached as part of Exhibit 1 to the Notice of Removal).

**I.     THE UNREBUTTED EVIDENCE ESTABLISHES THAT BROWNING FARMS WAS FRAUDULENTLY JOINED, AND, THEREFORE, THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE.**

Plaintiff's claims against Browning Farms for failure to warn and negligence rest solely on conclusory allegations that "Browning Farms knew or should have known the [*sic*] of the risks associated with the reasonably foreseeable uses (and misuses) of Roundup® and glyphosate-containing products and had a duty to warn Plaintiff, who they instructed to use the product, of those risks." Compl. ¶ 85; *see also id*. ¶¶ 127-31, 136 (same).

To prevail on these South Carolina claims, Plaintiff must establish that Browning Farms owed a duty of care to Plaintiff; that Browning Farms breached that duty by a negligent act or

---

[1] The affidavit of Mr. Browning, the owner of Browning Farms, was included as Exhibit 3 to Monsanto's Notice of Removal, although it was originally included as part of the Motion to Transfer Venue, Motion to Dismiss, and Memorandum in Support of Motions filed by Browning Farms in the state court proceeding prior to removal of this case to federal court.

omission; and that damage proximately resulted from that breach. *See, e.g.*, *Chakrabarti v. City of Orangeburg*, 743 S.E.2d 109, 112 (S.C. Ct. App. 2013); *Moore v. Barony House Rest., LLC*, 674 S.E.2d 500, 504 (S.C. Ct. App. 2009). A negligence claim has "a fault-based element, which is not required for a strict liability claim." *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 9 (S.C. 2010); *see Livingston v. Noland Corp.*, 362 S.E.2d 16, 18-19 (S.C. 1987) (holding that plaintiff could not prevail on failure to warn claim due to absence of evidence that defendants had any reason to believe that a warning was necessary).

As explained below, there is no basis to conclude that Browning Farms actually knew, or reasonably should have known, that Roundup®-branded herbicides or glyphosate could cause NHL. Consequently, the Motion to Remand should be denied as the non-diverse defendant was fraudulently joined.

### A. There is No Basis to Conclude that Browning Farms Had Actual Knowledge that Roundup®-Branded Products Are Allegedly Carcinogenic or Can Cause NHL.

Wayne Browning, the owner of Browning Farms, has submitted a sworn affidavit attesting to the fact that "[n]either Wayne Browning nor anyone else associated with Browning Farms, Inc. was aware of or had knowledge of the alleged dangers of Roundup and/or the other products identified in the Complaint nor did Wayne Browning or anyone else associated with Browning Farms, Inc. have knowledge of any possible connection between said products and any illness, including non-Hodgkins Lymphoma." Browning Aff. ¶ 10; *see id*. ¶ 17 ("Neither Wayne Browning nor anyone associated with Browning Farms, Inc. understood any of the alleged health risks of Roundup or any other subject product."). As Mr. Browning explains, he personally sprayed Roundup®-branded products and worked alongside Plaintiff in doing so. *See id*. ¶ 13 (stating that Mr. Browning "worked side-by-side with Plaintiff . . . and [applied] the subject products [Monsanto's Roundup®-branded herbicides] while performing work for Browning Farms, Inc."). Mr. Browning's direct use and exposure to Roundup® products belies

any potential allegation that he or Browning Farms had actual knowledge that those products were allegedly carcinogenic or could cause NHL.[2]

In light of this affidavit, Plaintiff was required to come forward with evidence – not simply speculation or conclusory allegations – to rebut Mr. Browning's declared lack of knowledge of the alleged cancer risk. *See Arias*, 2019 WL 484192, at *3; *Feizbakhsh*, 2016 WL 8732296, at *8; *Martinez*, 2016 WL 5930271, at *3. Plaintiff has failed to do so. While Plaintiff has submitted an affidavit in support of his Remand Motion, *see* Affidavit of Randy Bodiford, No. 3:20-cv-01025-VC (N.D. Cal. Nov. 18, 2019), ECF No. 9-2 ("Bodiford Aff."), nothing in that affidavit challenges or disputes this centrally important fact. Instead, Plaintiff claims that he was "never warned about any danger from exposure to Roundup," Bodiford Aff. ¶ 11, and that Mr. Browning "instructed" him to spray crops with Roundup®-branded herbicides. *Id.* ¶ 9. But neither of these assertions say anything about Mr. Browning's alleged knowledge of the purported cancer risk from applying Roundup®-branded herbicides. And Plaintiff notably does not dispute Mr. Browning's statement that Mr. Browning also sprayed Roundup®-branded products and worked alongside Plaintiff in doing so, a fact that directly contradicts the claim that Mr. Browning knew that those products posed a cancer risk.[3] Instead, one is left with the

---

[2] The Court should reject Plaintiff's nonsensical argument that because Mr. Browning's affidavit "challenges the allegations of the complaint, Defendant Browning Farms recognizes and provides a factual basis to support the proposition that it is [*sic*] proper party to these proceedings and satisfies such a basic tenet of the fraudulent joinder inquiry. That is to say, that taken in a light most favorable to the Plaintiff, it must be inferred that Defendant Browning Farms, through its own affidavit, has conceded that Plaintiff has established a cause of action against it, since by its own affidavit it is challenging the facts of such allegations." Remand Mot. at 10. Not only is this statement illogical, it misstates the law. Because Monsanto's Notice of Removal was supported by *facts* and *evidence* (including the Browning Affidavit), the Court is not required to construe the conclusory allegations in the Complaint in the light most favorable to Plaintiff; instead, Plaintiff was required to come forward with *evidence* and *facts* opposing the specific factual grounds supporting Monsanto's removal. *See Arias*, 2019 WL 484192, at *3; *Feizbakhsh*, 2016 WL 8732296, at *8; *Martinez*, 2016 WL 5930271, at *3. Plaintiff failed to do so.

[3] Plaintiff's claims that Browning Farms did not provide him with rubber gloves or coverall suit for applying Roundup® products, Bodiford Aff. ¶ 13, also provide no support for his required showing that the farm had actual knowledge of a cancer risk from Roundup®-branded herbicides.

Complaint's conclusory allegations that Browning Farms nonetheless somehow knew of the alleged dangers.  *See*, *e.g.*, Remand Mot. at 9 (citing conclusory allegations in paragraph 85 of the Complaint).  Such conclusory allegations, however, are not sufficient to overcome Monsanto's evidentiary showing in support of its removal.  *See Arias*, 2019 WL 484192, at *3; *Feizbakhsh*, 2016 WL 8732296, at *8; *Martinez*, 2016 WL 5930271, at *3.

> **B.  There is No Basis to Conclude that Browning Farms Should Have Known that Roundup®-Branded Products Are Allegedly Carcinogenic or Can Cause NHL.**

Nor has Plaintiff provided any factual support for his claim that Browning Farms "should have known" that Roundup®-branded herbicides could cause cancer.  To the contrary, the Complaint is replete with (false) accusations that Monsanto covered up the alleged dangers of its Roundup®-branded herbicides, including allegedly leading "a prolonged campaign of misinformation to convince government agencies, *farmers* and the general population that Roundup® is safe," Compl. ¶ 15 (emphasis added), which resulted – according to Plaintiff – in a period of "nearly forty years" in which "*farms across the world* have used Roundup® and glyphosate-containing products without knowledge of the dangers its use poses," *id*. ¶ 12 (emphasis added); *see also id*. ¶¶ 14, 21-28, 33-35, 53, 55, 100-03, 125.  Thus, according to the Complaint, Browning Farms — as with the other farms "across the world" — was kept in the dark about the alleged dangers of Roundup® products, and thus could not have known that Roundup®-branded herbicides allegedly could cause cancer.

The conclusion that Browning Farms did not have reason to know of the NHL risk alleged in the Complaint is further bolstered by the unrebutted fact that the key public information available to Browning Farms – the extensive safety evaluations of Roundup®-branded products by the EPA during the period in which Plaintiff allegedly used those products – consistently affirmed that those herbicides *do not* pose a cancer risk.  *See* Notice of Removal ¶ 24.  The EPA has continued to conclude that such products are not carcinogenic as recently as January 2020, where the EPA reaffirmed that "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to

humans." EPA Interim Registration Review Decision at 10. Given that the federal agency with the Congressional mandate to regulate Roundup®-branded herbicides – and the scientific expertise, manpower, and funding needed to assess the complex question of whether these herbicides cause cancer – repeatedly has concluded that they do *not* cause cancer, there is no reasonable basis to claim that Browning Farms "should have known" any information to the contrary. As such, Plaintiff does not have a viable warnings-based claim against Browning Farms.

Plaintiff's other allegations of negligence against Browning Farms are similarly not viable. The allegation that Browning Farms "should have conducted a thorough and diligent search for alternative chemicals for Plaintiff to use as to not risk serious injury to Plaintiff's health," Compl. ¶ 130, fails because it is based on the same faulty premise (discussed above) that Browning Farms knew or reasonably should have known that the EPA-approved herbicides could cause cancer. Otherwise, there would be no reason to search for chemical alternatives to glyphosate-based herbicides, which are widely used because of their unmatched efficacy. Likewise, the allegation that Browning Farms "should have ensured that Plaintiff received all proper and necessary protective equipment during his use of Roundup®," *id.* ¶ 129, fails because it is based on the premise – shown above to be unfounded – that Browning Farms knew or should have known that herbicides approved by the EPA for decades with no cancer warning actually can cause cancer.[4]

## II. MONSANTO TIMELY REMOVED THIS LAWSUIT.

After learning that a case has become removable, a defendant has thirty days to remove the case to federal court. 28 U.S.C. § 1446(b). "[T]he thirty day time period [for removal] . . .

---

[4] To the extent that Plaintiff argues that Browning Farms is somehow an "indispensable party" (which is an inquiry based on Rule 19 of the Federal Rules of Civil Procedure), and therefore Browning Farms has been "properly joined," *see* Remand Mot. at 11-12, Plaintiff has improperly conflated two different standards. Contrary to Plaintiff's argument, whether a party is "indispensable" for purposes of Rule 19 is not the same as whether a party is "improperly" or "fraudulently" joined for purposes of federal diversity jurisdiction. *See*, *e.g.*, *Castner v. Exxon Co., U.S.A.*, 563 F. Supp. 684, 687 (E.D. Pa. 1983).

starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005) (quotation and citation omitted).  When a defendant does not remove a case during this first thirty-day window because the face of the complaint did not provide facts that made the case removable, a second thirty-day window for removal can open later.  In that scenario, "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (quoting § 1446(b)).

As explained in its Notice of Removal, Monsanto timely removed this action pursuant to 28 U.S.C. § 1446(b)(3) because Monsanto was not able to determine, based upon the "initial pleading" (the Complaint), that Browning Farms had been fraudulently joined.  *See* Notice of Removal ¶ 32.  Monsanto removed this lawsuit based on the second thirty-day window in Section 1446(b)(3), using Mr. Browning's affidavit as the "other paper."  It is well-established that sworn affidavits and declarations can serve as the "other paper" for purposes of Section 1446(b)(3).  *See, e.g., Vagle v. Archstone Cmtys., LLC*, No. CV 14-03476 RGK (AJWx), 2014 WL 2979201, at *4 (C.D. Cal. July 1, 2014) ("read[ing] the plain language of [Section 1446(b)(3)] to include papers filed by co-defendants among the 'other papers' that may trigger a removal period," including sworn declarations of a co-defendant).

Mr. Browning's affidavit was filed on October 4, 2019, *see* Notice of Removal ¶ 33. Monsanto filed its Notice of Removal on November 4, 2019 (a Monday), which was within 30 days after Mr. Browning's affidavit was filed (taking into account the additional time provided to Monsanto by Rule 6 of the Federal Rules of Civil Procedure when the last day of a deadline is a weekend day).  Thus, the Notice of Removal was timely in accordance with Section 1446(b)(3).

Notwithstanding this clear record, Plaintiff argues that Monsanto's removal was somehow untimely.  *See* Remand Mot. at 12-13.  But in doing so, Plaintiff erroneously tries to

recast the "other paper" supporting Monsanto's removal as something other than Mr. Browning's affidavit. *See id*. at 13 (mischaracterizing the "other paper" supporting removal as the August 2019 EPA "dear registrant" letter to manufacturers of glyphosate-based products and/or the Complaint, and arguing that any paragraphs of Monsanto's Notice of Removal which reference the EPA's August 2019 letter or the Complaint's allegations "should be disregarded" by the Court). That argument lacks merit. Mr. Browning's affidavit is what made this lawsuit removable – ***not*** the Complaint and ***not*** the August 2019 EPA letter. The mere fact that Monsanto's Notice of Removal cites certain allegations in the Complaint and the August 2019 EPA letter to bolster the fraudulent joinder removal arguments based on Mr. Browning's affidavit does not mean that the removal clock began running before Monsanto learned the facts set forth in Mr. Browning's affidavit. For example, without that affidavit, Monsanto was not able to establish, for purposes of its fraudulent joinder argument, that "[n]either Wayne Browning nor anyone else associated with Browning Farms, Inc. was aware of or had knowledge of the alleged dangers of Roundup and/or the other products identified in the Complaint nor did Wayne Browning or anyone else associated with Browning Farms, Inc. have knowledge of any possible connection between said products and any illness, including non-Hodgkins Lymphoma." Browning Aff. ¶ 10.

Further, while Plaintiff also argues that Mr. Browning's affidavit did not present any "new information" beyond information that "was publicly available and contained within the pleadings," Remand Mot. at 13, that argument – not supported by any citations to the record – is demonstrably false. To use the most obvious example, whether Browning Farms had actual knowledge of the cancer risk posed by Roundup®-branded herbicides alleged in the Complaint was ***not*** publicly available information. Monsanto first learned that information from Mr. Browning's affidavit (Paragraph 10, quoted above). Moreover, Plaintiff's statement about information "contained within the pleadings," *id.*, is vague and makes no sense. For instance, Browning Farms' denial of actual knowledge was not in Plaintiff's Complaint, and it was not in

Monsanto's answer. Perhaps Plaintiff's vague statement to "the pleadings" refers to Browning Farms' Answer. If so, that would not help Plaintiff's timeliness argument because Browning Farms filed its Answer and Mr. Browning's affidavit *on the same day* (October 4, 2019). Thus, if Plaintiff is claiming that Browning Farms' Answer started the 30-day removal clock running within the meaning of Section 1446(b)(3), then Monsanto's Notice of Removal was timely, because it was filed within 30 days after Browning Farms filed its Answer.

In sum, regardless of how Plaintiff presents his timeliness argument, it lacks merit. Monsanto complied with the applicable statutory provision, 28 U.S.C. § 1446(b)(3), and timely filed its Notice of Removal.[5]

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court deny Plaintiff's Motion to Remand.

DATED:  March 19, 2020

Respectfully submitted,

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

/s/ Eric G. Lasker
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH LLP

---

[5] If the Court grants Plaintiff's Motion to Remand, it nevertheless should deny his request for fees and costs because, as shown above, Monsanto had objectively reasonable bases for removal in this case. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").

2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant Monsanto Company*