**WILKINSON WALSH LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-942-5000
Fax: 202-942-5999

**SHOOK, HARDY & BACON LLP**
Thomas J. Dammrich II (*pro hac vice*)
(tdammrich@shb.com)
Peter F. O'Neill (*pro hac vice*)
(pfoneill@shb.com)
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606-4314
Tel: 312-704-7700
Fax: 312-558-1195

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO:<br><br>*Meghan Caruso v. Monsanto Company, et al.*, Case No. 3:20-cv-01017-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:     TBD<br>Time:    TBD<br>Courtroom: 4 |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ISSUE TO BE DECIDED ....................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .........................................................................................................................3

I.  Plaintiff Fraudulently Joined Russo. ........................................................................3

   A.  There Is No Possibility That An Illinois Court Would Find Russo Owed A Duty To Warn Plaintiff's Decedent About The Cancer Risk Allegedly Posed By Glyphosate Or Roundup®-Branded Herbicides. ......................................3

      1.  Russo's October 2019 discovery responses and the October 2019 declaration of Eric Adams demonstrate that Russo was unaware of the alleged carcinogenicity of glyphosate until after this lawsuit was filed. .....4

      2.  Documents produced in October 2019 demonstrate Plaintiff's independent expertise and knowledge of the alleged carcinogenicity of glyphosate by no later than March 2015. ..........................................................................6

      3.  Plaintiff's own allegations contradict her requisite claim that Russo had superior knowledge. ......................................................................................7

II. Monsanto Timely Filed Its Removal Notice............................................................8

   A.  Russo's Answer Did Not Enable Monsanto To Ascertain That Russo Owed No Duty To Warn Plaintiff's Decedent About The Cancer Risk Allegedly Posed By Glyphosate Or Roundup®-Branded Herbicides. .....................8

   B.  Plaintiff's Speculation About The "Subjective Knowledge" Of Monsanto's Counsel Is Irrelevant. ..............................................................................12

   C.  Plaintiff's "Evidence" Of Russo's Alleged Knowledge In 2019 Is Irrelevant And Should Be Disregarded. ................................................................13

CONCLUSION....................................................................................................................14

**TABLE OF AUTHORITIES**

Page

**Cases**

*Amarant v. Home Depot U.S.A. Inc.*,
   No. 1:13-cv-002450 (LJO), 2013 WL 3146809 (E.D. Cal. June. 18, 2013) ...................... 6

*Arias v. Follet Higher Educ. Corp.*,
   No. 8:18-cv-01965 (JLC-JDE), 2019 WL 484192 (C.D. Cal. Feb. 7, 2019).................. 3, 5

*Badon v. RJR Nabisco, Inc.*,
   224 F.3d 382 (5th Cir.2000) ................................................................................... 14

*Baylie v. Swift & Co.*,
   27 Ill. App. 3d 1031 (1st Dist. 1975) ........................................................................ 3

*Feizbakhsh v. Travelers Com. Ins. Co.*,
   No. LA CV16-02165 (JAK), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) .................. 3, 5

*Garcia v. Wal-Mart Stores Inc.*,
   207 F. Supp. 3d 1114 (C.D. Cal. 2016) ..................................................................... 9

*Grancare, LLC v. Thrower*,
   889 F.3d 543 (9th Cir. 2018) ................................................................................ 1, 2

*Harris v. Bankers Life & Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ......................................................................... 9, 11, 12

*Illegal Aliens, LLC v. N. Am Specialty Ins. Co.*,
   No. CV 14-07502 (ASX), 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015)......................... 2

*Kirkman v. Kirkman*,
   195 Ill. App. 3d 393, 397 (4th Dist. 1990)........................................................ 1, 3, 5, 6, 11

*Kuxhausen v. BMW Fin. Services NA LLC*,
   707 F.3d 1136, 1141 (9th Cir. 2013) ..................................................................... 9, 12

*Legg v. Wyeth*,
   428 F.3d 1317 (11th Cir. 2005) ................................................................................ 14

**Page**

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
    220 F. Supp. 2d 1116 (N.D. Cal. 2002) ............................................................................. 2

*Martinez v. McKesson Corp.*,
    No. 3:15-cv-02903 (H-JLB), 2016 WL 5930271 (S.D. Cal. April 7, 2016) ................... 3, 5

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) .......................................................................................... 2

*Reynolds v. The Boeing Co.*,
    No. 2:15-CV-2846 (SVW-AS), 2015 WL 4573009 (C.D. Cal. July 28, 2015) ................. 4

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) .......................................................................................... 2

*Ross v. Citifinancial, Inc.*,
    344 F.3d 458 (5th Cir. 2003) .......................................................................................... 14

*Steiner v. Horizon Moving Sys. Inc.*,
    568 F. Supp. 2d 1084 (C.D. Cal. 2008) ............................................................................ 9

*Walker v. Trailer Transit, Inc.*,
    727 F.3d 819 (7th Cir. 2013) ...................................................................................... 9, 12

**Statutes**

28 U.S.C. § 1441(b)(2) ............................................................................................................ 2, 8

28 U.S.C. § 1446(b)(3) ................................................................................................... 1, 8, 9, 11

## ISSUE TO BE DECIDED

In an attempt to defeat federal diversity jurisdiction and deprive Monsanto Company ("Monsanto") of its important right to remove this lawsuit to federal court, Plaintiff (an Illinois citizen) sued an Illinois defendant, Russo Hardware, Inc. ("Russo"). Although the presence of Russo initially did not support removal, Monsanto "first ascertained that the case is one which is . . . removable", 28 U.S.C. § 1446(b)(3), in October 2019, upon receipt of:

1. Discovery responses and a declaration of Russo denying any knowledge of the alleged dangers of Roundup®-branded herbicides, *see infra* at § I(a)(1);

2. Documents produced by the Plaintiff demonstrating that both Plaintiff and her decedent were aware of the alleged dangers of Roundup®-branded herbicides no later than March 2015, *see infra* at § I(a)(2); and

3. Documents produced by Intervenor University of Illinois-Chicago ("UIC") demonstrating that Plaintiff's decedent completed college courses such as "Landscape Maintenance" in 2014 and "Turf Science and Management" in 2015 where he learned "safety practices when applying pesticides" and the importance of "read[ing] the pesticide label carefully," *id.*

These "other papers" demonstrated, for the first time, that Russo did not have any knowledge of the purported danger posed by Roundup®-branded herbicides, let alone *superior* knowledge over Plaintiff's decedent as required to establish a duty to warn under Illinois law. *Kirkman v. Kirkman*, 195 Ill. App. 3d 393, 397 (4th Dist. 1990). In fact, the documents showed Plaintiff's decedent was an educated landscaping professional, aware of the alleged danger no later than March 2015, but who nevertheless continued to use the products through 2016. ECF No. 1-7 at 337, ¶ 18 (Second Amended Complaint at Law, "SAC").[1] The facts that came to light in October 2019 in these "other papers" demonstrated "the inability of [Plaintiff] to establish a cause of action against [Russo] in state court", *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018), and triggered the 30-day removal period provided in 28 U.S.C. § 1446(b)(3).

The issue to be decided is whether the Court should deny Plaintiff's Motion to Remand because: (a) Plaintiff does not have any viable claims under Illinois law against the non-diverse

---

[1] All "ECF" citations are to the docket for *Caruso v. Bayer Corporation, et al.*, No. 3:20-cv-01017-VC (N.D. Cal.).

party—Russo—who was fraudulently joined in an attempt to prevent removal; and (b) Monsanto's removal was timely.

## LEGAL STANDARD

Although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant removing a lawsuit from state court based on fraudulent joinder of a co-defendant is required to show that there is no possibility that the state court would hold the co-defendant liable. *Grancare*, 889 F.3d at 548. When fraudulent joinder applies—*i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted)—the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship, *id.* Moreover, if a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be "non-fanciful" for the case to be remanded. *Illegal Aliens, LLC v. N. Am Specialty Ins. Co.*, No. CV 14-07502 DDP (ASX), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). Fraudulent joinder also renders the "forum defendant rule" inapplicable because that rule applies only to "properly joined" defendants. 28 U.S.C. § 1441(b)(2).

In conducting a fraudulent joinder analysis, a court is not limited to the allegations of the complaint and is permitted to consider declarations and other evidence presented by the removing defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." (citation omitted)); *Morris*, 236 F.3d at 1068 ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (citation omitted)). Once the removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand.

*See Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965 (JLC-JDE), 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder); *Feizbakhsh v. Travelers Com. Ins. Co.*, No. LA CV16-02165 (JAK), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016) (same; holding that plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome evidence offered by removing defendant to establish fraudulent joinder); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903 (JLB), 2016 WL 5930271, at *3 (S.D. Cal. April 7, 2016) (same; holding that plaintiff's "speculation, which is unsupported by any evidence[,]" does not suffice to overcome the evidence presented by the removing defendant).

## ARGUMENT

I.   Plaintiff Fraudulently Joined Russo.

   A.   There Is No Possibility That An Illinois Court Would Find Russo Owed A Duty To Warn Plaintiff's Decedent About The Cancer Risk Allegedly Posed By Glyphosate Or Roundup®-Branded Herbicides.

Plaintiff's claims against Russo are based on its alleged failure to warn Plaintiff's decedent that glyphosate is a purportedly known carcinogen. ECF No. 1-7 at 355-58, ¶¶ 110-125 (SAC). Yet, under Illinois law, a duty to warn exists only "where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur." *Kirkman*, 195 Ill. App. 3d at 397; *Baylie v. Swift & Co.*, 27 Ill. App. 3d 1031, 1042 (1st Dist. 1975) (same).

Plaintiff's allegations that Russo owed a duty to warn Plaintiff's decedent are conclusory, non-specific, and in large part, made "upon information and belief." *See* ECF No. 1-7 at 338, ¶¶ 26-27 (SAC); *id.* at 353-54, ¶¶ 92-103. For example, Plaintiff alleges "upon information and belief" that Russo knew of the IARC's 2015 findings related to glyphosate, and that it knew of the alleged carcinogenic properties of Roundup®-branded herbicides. *Id.* at 354, ¶¶ 100–01. Plaintiff also alleges that Russo "had superior knowledge compared to Roundup® users and

consumers" without providing any facts supporting such an assertion. *Id.* at 353, ¶ 93. Though these allegations are insufficient, they only became demonstrably false in October 2019.

### 1. Russo's October 2019 discovery responses and the October 2019 declaration of Eric Adams demonstrate that Russo was unaware of the alleged carcinogenicity of glyphosate until after this lawsuit was filed.

Although Russo provided general denials in its Answer to Plaintiff's boilerplate allegations, the utter baselessness of Plaintiff's allegations did not become apparent until its October 11, 2019 Objections and Responses to Plaintiff's First Set of Interrogatories. In these discovery responses, Russo stated:

1. It was unaware of the 2015 IARC finding that glyphosate was a probable human carcinogen;

2. It was unaware that exposure to Roundup®-branded herbicides or glyphosate was allegedly linked to non-Hodgkin's lymphoma;

3. It is not responsible for the design, review, or approval of labels for Monsanto's Roundup®-branded herbicides—which Plaintiff claims were misleading;

4. It did not train customers on the use of Roundup®-branded herbicides—as Plaintiff alleges should have been done; and

5. It is unaware of any trade shows, industry seminars, product seminars, training sessions, conferences, and/or meetings that concerned the IARC's 2015 findings regarding glyphosate and/or alleged dangers of Roundup®-branded herbicides or glyphosate.

*See* Russo's Disc. Resps. (ECF No. 1-2 at 5–7, 10–12, 28–29). These interrogatory responses—provided under penalty of perjury—are unrebutted on the present record.[2]

Russo's discovery responses were corroborated and expanded in the Declaration of Eric Adams—also provided under penalty of perjury, and served on Monsanto on October 28, 2019. Mr. Adams, Russo's Operating President/Managing Director, declared:

> Before this lawsuit was filed, Russo Hardware, Inc. was not aware of any alleged defect associated with nor any alleged concerns regarding the safety of Roundup®-branded herbicides or other

---

[2] This Court can and should consider those discovery responses. *See Reynolds v. The Boeing Co.*, No. 2:15-CV-2846-SVW-AS, 2015 WL 4573009, at *3 (C.D. Cal. July 28, 2015) ("[i]t is well established that courts may 'pierce the pleadings' and examine evidence" when deciding remand motions); *see also supra* at pages 2-3 (citing cases).

> glyphosate-containing products. Russo Hardware, Inc. has never thought or believed that Roundup®-branded herbicides or other glyphosate-containing products are defective products, or that they create a risk of cancer or other serious injuries.
>
> Russo Hardware, Inc. would not sell Roundup®-branded herbicides or other glyphosate-containing products if it thought that they were defective products, or that they created a risk of cancer or other serious injuries.
>
> Before this lawsuit was filed, Russo Hardware, Inc. was not aware of the 2015 IARC finding regarding glyphosate and the alleged dangerous and/or carcinogenic qualities of glyphosate.
>
> Before this lawsuit was filed, Russo Hardware, Inc. was not aware that exposure to Roundup®-branded herbicides or glyphosate was allegedly linked to non-Hodgkin's lymphoma.

*See* ECF No. 1-3 at 2-3, ¶¶ 7-8, 10-11 (Adams Decl.). Additionally, Russo was never responsible for providing, and never provided, any input into the design, manufacture or labelling of Roundup®-branded herbicides or glyphosate-containing products. *Id.* at 2, ¶¶ 4-6. Thus, both the interrogatory responses and affidavit establish that Russo did not have "unequal knowledge" of the alleged dangers of Roundup®-branded herbicides. *Kirkman*, 195 Ill. App. 3d at 397.

Plaintiff offers nothing to dispute these facts, and instead, impermissibly relies on the mere allegations of her Second Amended Complaint at Law in support of her motion. *See Arias*, 2019 WL 484192, at *3 (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder); *Feizbakhsh*, 2016 WL 8732296, at *8 (same; holding that plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome evidence offered by removing defendant to establish fraudulent joinder); *Martinez*, 2016 WL 5930271, at *3 (same; holding that plaintiff's "speculation, which is

unsupported by any evidence[,]" does not suffice to overcome the evidence presented by the removing defendant).³

### 2. Documents produced in October 2019 demonstrate Plaintiff's independent expertise and knowledge of the alleged carcinogenicity of glyphosate by no later than March 2015.

Plaintiff's motion also ignores the information she herself produced on October 11, 2019. Specifically, on March 23, 2015, Plaintiff sent the decedent an email containing a link to the IARC's 2015 glyphosate monograph with the description: "WHO's cancer working group: Roundup is 'probably a human carcinogen.'" ECF No. 1-4 (Pl.'s 3/23/2015 Email).

This information negates any inference that Russo had "unequal knowledge" of the alleged defects of Roundup®-branded herbicides. *Kirkman*, 195 Ill. App. 3d at 397. Indeed, Plaintiff has now changed her theory of liability from: Plaintiff's decedent had *no* knowledge of the alleged dangers of Roundup®-branded herbicides, *see, e.g.*, ECF No. 1-7 at 355, ¶ 112 (SAC) to Plaintiff's decedent was "***less aware*** than Russo." ECF No. 31 at 18 (Pl.'s Br.) (emphasis added). But this *post hoc* change of theory cannot defeat removal when the undisputed evidence shows: (1) Russo had no knowledge that Roundup®-branded herbicides were allegedly carcinogenic prior to this lawsuit, and (2) Plaintiff and Plaintiff's decedent were aware in 2015 of the IARC monograph on which Plaintiff's claim against Russo relies. *See, e.g.*, *Kirkman*, 195 Ill. App. 3d at 397 ("There is no duty to warn against risks which are known" to the plaintiff).

---

³ Plaintiff cites to *Amarant v. Home Depot U.S.A. Inc.*, No. 1:13-cv-002450 (LJO), 2013 WL 3146809 at *6 (E.D. Cal. June. 18, 2013) for the proposition that "assessing the sufficiency of the evidence in a summary-judgment like fashion goes beyond the summary inquiry courts are to perform in assessing fraudulent joinder." ECF No. 31 at 17. But, the Court in *Amarant* specifically acknowledged that "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony", 2013 WL 3146809 at *4, and remanded on the basis that the fraudulent joinder inquiry presented in that case would require "both an inquiry into the evidence supporting the harassment claim against [the in-state defendant], *and* an assessment of the *sufficiency* of the evidence to withstand a motion for summary judgment" because the evidence before the court did not establish that plaintiff's claims against the in-state defendant were "*obviously* foreclosed based on discrete and undisputed facts." *Id.* at *10-11. Here, the discovery responses, Adams Declaration, and document productions received by Monsanto in October 2019 unequivocally established that an Illinois court would not hold Russo liable.

In October 2019, UIC also produced documents demonstrating Plaintiff's decedent's independent expertise regarding herbicides as he completed courses in the summers of 2014 and 2015, including: (1) "Turf Science and Management," where the topics of discussion included "pesticide [which includes herbicides] toxicity and methods of measuring toxicity" and "safety" measures for using pesticides, such as "wear[ing] the necessary protective clothing" and "read[ing] the pesticide label carefully"; and (2) "Landscape Maintenance," where topics of discussion included "Understanding Chemicals," "types of pesticide exposure," "safety practices when applying pesticides," "non-selective herbicides" such as "glyphosate," and the purpose and importance of reading pesticide labels and understanding their contents and meaning. ECF No. 1-5 at 2, 20-21, 22-26, 31, 38-55 (UIC Disc. Resps. at HRVA000084, HRVA000102–03, HRVA000104–08, HRVA000113, HRVA000120–137); ECF No. 22-2 at 1-2 (HRVA000022, HRVA000031).

### 3. Plaintiff's own allegations contradict her requisite claim that Russo had superior knowledge.

Plaintiff's motion also ignores the allegations of her Complaint. Specifically, Plaintiff alleges that "Defendant Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers *and the general population* that Roundup was safe." ECF No. 1-7 at 341, ¶ 44 (SAC) (emphasis added). Although Monsanto denies that allegation, Plaintiff affirmatively alleges that Monsanto concealed the alleged dangers of Roundup®-branded herbicides from the world—which negates any inference that Russo knew of such alleged dangers and therefore defeats any argument that Russo owed a duty to warn Plaintiff's decedent.

In her complaint, Plaintiff alleged that Russo was the "premier … landscape supply dealer," and thus had unequal knowledge versus the Plaintiff about the alleged dangers of Roundup®-branded herbicides notwithstanding this alleged Monsanto concealment. ECF No. 1-7 at 353, ¶ 95 (SAC). The "other papers" received by Monsanto in October 2019 affirmatively and unambiguously established that Plaintiff has no basis for that allegation; in fact, Russo had no such knowledge (actual or constructive) while Plaintiff and her decedent, as of no later than March 2015, did.  Given this new information, there is no possibility an Illinois court could find

that Russo owed a duty to warn Plaintiff's decedent of the alleged cancer risk posed by Roundup®-branded herbicides. The Court should accordingly deny Plaintiff's motion.

## II.     Monsanto Timely Filed Its Removal Notice.

### A.     Russo's Answer Did Not Enable Monsanto To Ascertain That Russo Owed No Duty To Warn Plaintiff's Decedent About The Cancer Risk Allegedly Posed By Glyphosate Or Roundup®-Branded Herbicides.

It is uncontroverted that this lawsuit was not immediately removable by Monsanto based on the allegations in the Complaint. Russo Hardware, Inc. is an Illinois defendant whose presence would otherwise prevent removal based on lack of diversity jurisdiction and the forum defendant rule. 28 U.S.C. § 1441(b)(2). Moreover, Plaintiff expressly highlights the fact that Russo did not disclose any information demonstrating the factual inadequacy of the Complaint prior to October 2019:

> At no point in that year did Russo ever file a motion to dismiss or motion to strike, dispute their joinder or involvement in the case, or otherwise challenge the legal or factual sufficiency of Caruso's claims in numerous pleadings. Instead, Russo filed their Answer to Caruso's First Amended Complaint, affirming some allegations, denying others, and claiming to lack sufficient knowledge as to others.

ECF No. 31 at 18 (Pl.'s Br.).

Nonetheless, Plaintiff claims that Monsanto's Notice of Removal—filed just eighteen days after Russo served its verified discovery responses—was untimely, and should have been filed no later than thirty days after Russo filed its Answer denying Plaintiff's allegations that it owed Plaintiff's decedent a duty to warn. *See* ECF No. 31 at 9-10 (Pl.'s Br.). Russo did deny those allegations (ECF No. 1-7 at 64-86), but those denials merely showed that these issues were disputed, without providing any details regarding the bases for Russo's denials.

Plaintiff's position misses the mark, and is contrary to 28 U.S.C. § 1446(b)(3) and the case law construing that statutory provision. A case that is not removable as "stated by the initial pleading" may be removed within thirty days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order ***or other paper from which it may first be ascertained that the case is one which is or has become removable***." § 1446(b)(3) (emphasis added). The Ninth Circuit has held that "removability under § 1446(b) is determined

through examination of the four corners of the applicable pleadings, ***not through subjective knowledge or a duty to make further inquiry***." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (emphasis added). Likewise, the Seventh Circuit has held that "[t]he 30-day removal clock does not begin to run until the defendant receives a pleading or other paper that ***affirmatively and unambiguously*** reveals that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (emphasis added). "This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and ***reduces guesswork and wasteful protective removals by defendants***." *Id.* (emphasis added). The Seventh and Ninth Circuits are in accord: "The moment a case becomes removable and the moment the 30-day removal clock begins to run 'are not two sides of the same coin.'" *Id.* at 824 (quoting *Kuxhausen v. BMW Fin. Services NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013)).

The case law establishes, and Plaintiff does not dispute, that Russo's discovery responses, the Adams Declaration, and documents produced by Plaintiff and the decedent's former employer UIC constitute "other paper" for purposes of Section 1446(b)(3). *See, e.g.*, *Steiner v. Horizon Moving Sys. Inc.*, 568 F. Supp. 2d 1084, 1087 (C.D. Cal. 2008) ("Courts have found that a defendant may remove under the 'other paper' provision of section 1446(b) based on . . . discovery responses or deposition testimony" (citing cases)); *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1131 (C.D. Cal. 2016) ("The term 'other paper' includes written discovery responses, settlement offers, demand letters, deposition testimony, and correspondence between counsel."). Thus, Monsanto properly based its removal on the discovery responses, declaration, documents served and produced in October 2019.

Plaintiff's argument that the thirty-day removal period in Section 1446(b)(3) started when Russo filed its Answer in January 2019: (a) would encourage defendants to "engage in premature removals in order to ensure that they do not waive their right to removal," *Harris*, 425 F.3d at 697; and (b) impermissibly requires an inquiry into Monsanto's "subjective knowledge," *id*. at 694, which the Ninth Circuit held is out of bounds when courts assess the propriety of a removal based on that statutory provision. The problematic nature of the inquiry demanded by Plaintiff

and the danger of premature removal is highlighted by the ambiguous, compound allegations in Plaintiff's Complaint upon which Plaintiff bases her untimeliness argument. Plaintiff contends that a denial in Russo's Answer of certain allegations in the Complaint triggered the thirty-day removal period in Section 1446(b)(3), but Plaintiff merely summarizes the allegations at issue—incorrectly and incompletely—instead of quoting them. *See* ECF No. 31 at 10 (Pl.'s Br.). The allegations upon which Plaintiff relies, and Russo's responses, are quoted in full here:

9. The IARC evaluation is significant. It confirms what has been believed for years: that glyphosate is toxic to humans.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 9.

10. More likely than not, glyphosate causes Diffuse large B-cell non-Hodgkin's lymphoma.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 10.

11. More likely than not, glyphosate-based formulations cause Diffuse large B-cell non-Hodgkin's lymphoma.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 11.

12. More likely than not, Roundup causes Diffuse large B-cell non-Hodgkin's lymphoma.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 12.

29. Plaintiff is informed and believes that [Russo] did sell, market, and distribute Roundup® with full knowledge of its dangerous and defective nature.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 29.

100. Upon information and belief, Defendant RUSSO was aware of the IARC's 2015 findings as it related to glyphosate and its dangerous and/or carcinogenic qualities.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 100.

101. Upon information and belief, Defendant RUSSO was aware of other evidence of glyphosate and Roundup's® dangerous and/or carcinogenic qualities.

    ANSWER:   The defendant [Russo] denies the allegations in paragraph 101.

> 102. Defendant RUSSO continued to sell Roundup® to John Caruso and/or his employer even after the IARC finding regarding glyphosate in 2015.
>
> ANSWER: The defendant [Russo] denies ever selling Round Up to John Caruso but admits that it sold Round Up to University of Illinois at Chicago at various periods of time but denies the remaining allegations of Paragraph 102.

ECF No. 1-7 at p. 65, ¶¶ 9-12; p. 68, ¶ 29; p. 77, ¶¶ 100-02 (Russo Answer to Plaintiff's First Amended Complaint at Law ("FAC")); *id.* at p. 22, ¶¶ 9-12; p. 24, ¶ 29; p. 39-40, ¶¶ 100-02 (FAC).

The responses by Russo to the numerous allegations combined into these ambiguous and compound sentences—many of which are made "upon information and belief" or with "more likely than not" qualifiers—did not affirmatively and unambiguously reveal a basis for removal and did not enable Monsanto to "ascertain[] that the case is one which is or has become removable," § 1446(b)(3). Moreover, determining anything about removability based on the Answer of Russo would impermissibly require delving into Monsanto's "subjective knowledge" or impermissibly require Monsanto to "make further inquiry" into the facts and circumstances behind Russo's response; but removability is determined in these circumstances only by examining the applicable pleadings or other paper. *Harris*, 425 F.3d at 694. The verified discovery responses and declaration received in October 2019 provided—for the first time—a clear, unambiguous statement that Russo did not have "unequal knowledge" as compared to Plaintiff's decedent that may otherwise support a duty to warn claim against it, *Kirkman*, 195 Ill. App. 3d at 397.

Moreover, it was not until October 2019 that Monsanto obtained discovery from the Plaintiff and a third party demonstrating that the Plaintiff himself had knowledge of the alleged risks by no later than March 2015. These were the "other papers," § 1446(b)(3), from which Monsanto could first ascertain that this lawsuit was removable because Russo had been fraudulently joined. *See Harris*, 425 F.3d at 698 (recognizing the canon "which guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation" and noting that, "[b]y assuring that removal occurs once the jurisdictional facts

supporting removal are evident, we also ensure respect for the jurisdiction of state courts"). Monsanto filed its Notice of Removal within 30 days of the dates when the above-referenced "other papers" were received (October 11 and October 28, 2019), and not more than one year after the commencement of this action. Therefore, removal was timely under Section 1446(b)(3).

Additionally, Plaintiff cites no legal authority whatsoever for her argument that remand should be granted because Russo never filed a motion to dismiss or strike in state court. *See* ECF No. 31 at 18 (Pl.'s Br.). Russo's motivation to file an answer instead of a dispositive motion has no bearing whatsoever on whether Plaintiff's original complaint made it "affirmatively and unambiguously" clear *to Monsanto* that the predicates of removal were present. *Walker*, 727 F.3d at 824. To accept Plaintiff's position would require an impermissible inquiry into the subjective knowledge, or purported duty, of Monsanto to make further inquiry into Russo's decision to file an answer rather than a dispositive motion. *Harris*, 425 F.3d at 695.

### B. Plaintiff's Speculation About The "Subjective Knowledge" Of Monsanto's Counsel Is Irrelevant.

Plaintiff also argues that because Monsanto's counsel began representing Russo, Monsanto should have known that Russo owed no duty to Plaintiff's decedent. ECF No. 31 at 12-13 (Pl.'s Br.). Plaintiff completely ignores the fact that Monsanto's removal also was based upon information it obtained through discovery from the Plaintiff and a third party. But in any event, the Ninth and Seventh Circuits are in accord that the Section 1446(b)(3) timeliness analysis does not include a fact-intensive inquiry about what the removing defendant subjectively knew or could have potentially discovered:

> [T]he timeliness inquiry is limited to the examining contents of the clock-triggering pleading or other litigation paper; the question is whether that document, on its face or in combination with earlier-filed pleadings, provides *specific and unambiguous notice that the case satisfies federal jurisdictional requirements* and therefore is removable. Assessing the timeliness of removal *should not involve a fact-intensive inquiry about what the defendant subjectively knew or should have discovered* through independent investigation. Again, as the text of the rule itself makes clear, the 30-day clock is triggered by pleadings, papers, and other litigation materials actually received by the defendant or filed with the state court during the course of litigation.

*Walker*, 727 F.3d at 825 (citing *Kuxhausen*, 707 F.3d at 1141 ("we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove") (internal quotation marks omitted)); *Harris*, 425 F.3d at 696-97 (rejecting "rule that the first thirty-day period should apply where the initial pleading provides a 'clue' as to removability" and noting that "an objective baseline rule avoids the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry"). Plaintiff's speculation about what Monsanto or its counsel knew or should have known fails to support Plaintiff's argument that Monsanto's removal was untimely.

  **C.** **Plaintiff's "Evidence" Of Russo's Alleged Knowledge In 2019 Is Irrelevant And Should Be Disregarded.**

  In a last ditch effort to deprive Monsanto of a federal forum, Plaintiff cites to a 2019 email advertisement which she claims establishes that Russo knew of the alleged risks associated with glyphosate. ECF No. 31 at 22-23 (Pl.'s Br.). This advertisement is irrelevant to the Court's analysis for a number of reasons.

  First, as Plaintiff admits, the advertisement from the Illinois Landscape Contractors Association was sent "just months ago" in August 2019. *Id.* It therefore has no bearing on what Russo knew from 2008–2016, when it allegedly sold Roundup®-branded herbicides to Plaintiff's decedent's and/or employer, UIC. ECF No. 1-7 at 337, ¶ 18 (SAC).

  In addition, the advertisement states only that Russo sponsored a Turf Education Day, wherein a representative from NuFarm—an Australian-based agricultural chemical company—gave a speech entitled "Glyphosate: What are the risks?" ECF No. 30-17 at 35-36 (Pl.'s Mot., Ex. N). Plaintiff offers no factual evidence regarding the substance of the presentation, whether Russo employees were in attendance, or how the information learned in the presentation (if Russo employees were in attendance) establishes that Russo knew of the alleged dangers of Roundup®-branded herbicides from 2008–2016.

Nor does this advertisement demonstrate, as Plaintiff suggests, that Mr. Adams "is incapable of attesting to facts within the knowledge of Russo." ECF No. 31 at 22 (Pl.'s Br.). Mr. Adams was quite clear that Russo lacked any knowledge of the alleged dangers of Roundup®-branded herbicides "before this lawsuit was filed" in 2018—which is *before* the August 2019 email which Plaintiff relies on. *See* ECF No. 1-3 at 2-3, ¶¶ 4-8, 10-11 (Adams Decl.). It is undisputed that Russo now knows of these alleged dangers, if for no other reason than Plaintiff sued Russo based on them.

At best, Plaintiff has presented the Court with speculation and mere "metaphysical doubt," not genuine disputes of fact. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (observing that the "mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts") (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393–94 (5th Cir.2000)). The "theoretical" possibility that this advertisement could somehow establish Russo knew from 2008–2016 of the alleged dangers of Roundup®-branded herbicides is not sufficient to defeat removal. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003).

## CONCLUSION

For the foregoing reasons, Monsanto requests that the Court deny Plaintiff's Motion to Remand.

- 15 -

DATED:  March 19, 2020

Respectfully submitted,

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

/s/ Thomas J. Dammrich II
Thomas J. Dammrich II (*pro hac vice*)
(tdammrich@shb.com)
Peter F. O'Neill (*pro hac vice*)
(pfoneill@shb.com)
SHOOK, HARDY & BACON LLP
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606-4314
Tel: 312-704-7700
Fax: 312-558-1195

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

Attorneys for Defendant MONSANTO COMPANY

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2020, I electronically filed the foregoing **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

        /s/   *Thomas J. Dammrich II*