Bryce T. Hensley
Illinois State Bar No. 6327025
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
312-253-8800
bhensley@rblaw.net
*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION* | MDL Docket No. 2741 |
| | Case No. 3:16-MD-2741-VC |
| This Document relates to: | The Honorable Judge Vince Chhabria |
| *Meghan Caruso, et al. v. Russo Hardware, et al.* | |
| USDC – NDIL No. 1:19-cv-7121 | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND** |
| USDC – NDCA No. 3:20-cv-01017-VC | **Hearing Date: April 2, 2020 at 10:00 a.m.** |



EXHIBIT

A

## <u>TABLE OF CONTENTS</u>

Table of Contents…………………………………………………………………......i

Table of Authorities……………………………………………………………………ii

I.    Introduction…………………………………………………………..1

II.    Standard for Removal……………………………………………………..1

III.    Procedural Defects…………………………………………………………...2

        A.    Monsanto had the information claimed as a basis for Removal since January 25, 2019 and failed to remove the case……………………………………………………………2

        B.    Counsel for Monsanto failed to act reasonably in assessing the removability of the case after being retained by the allegedly fraudulent joined defendant…..…………………………………6

IV.    Substantive Defects…………………………………………………………7

        A.    Monsanto admits that Russo is an Illinois citizen..…………………………….8

        B.    Monsanto failed to meet the "heavy burden required to show fraudulent joinder……………………………………………………8

                1.  Caruso's claims against Russo are viable.…………………………...11

V.    Conclusion………………………………………………………………15

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006)…………………………2, 5, 12, 13

Amarant v. Home Depot U.S.A. Inc., No. 1:13-cv-002450LJO, 2013
WL 3146809 (E.D. Cal. June. 18, 2013) …………………………………...……………10

Calles v. Scripto Takai Corp., 864 N.E.2d 249 (2007)…………………………….…….13

Chumley v. Great Atlantic & Pacific Tea Co., 191 F.Supp. 254
(M.D.N.C.1961)…………………………………..…………………………………10

Collins v. Marten Transport, Ltd., No. 4:14-CV-0257-VEH, 2014 WL 972245 (N.D.Ala.
March 12, 2014)……………………….………………………………………………..10

Doe v. Allied-Signal, Inc., 985 F.2d 908 (7th Cir. 1993)……………………………….…….2

Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992)……………………………………………2

Good v. Prudential Ins. Co. of Am., 5 F.Supp.2d 804 (N.D. Cal. 1998)…………….…….12

Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543
(9th Cir. 2018)………………………………………………...…………..8, 9, 12

Hale v. Bayer Corp., 2015 WL 5474298 (S.D. Ill. Sept. 16, 2015)…………….……………13

Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203 (9th Cir. 2007)……………...9

Harris v. Bankers Life and Cas. Co., 425 F.3d 689 (9th Cir. 2005)……………...2, 5, 12-13

Hartley v. CSX Transp., Inc., 187 F.3d 422 (4th Cir. 1999)……………………….………9

Holcomb v. Bingham Toyota, 871 F.2d 109 (9th Cir. 1989)……………………...…….2, 8

Hunter v. Philip Morris USA, 582 F.3d 1039 (9th Cir. 2009)……………………….…..8, 9

In re Roundup Prod. Liab. Litig., No. 16-MD-02741-VC, 2019 WL 2943348
(N.D. Cal. July 9, 2019)………………………………………………………………..9

Jian-Ming Zhao v. RelayRides, Inc., No. 17-cv-04099-JCS,
2017 WL 6336082 (N.D. Cal. Dec. 12, 2017)……………………………..…………………3

Jones v. Capers, 166 F. Supp. 617 (W.D.Ark. 1958)………………..………………..10- 13

Jones v. UPR Prod. Inc., 2015 WL 3463367 (N.D. Ill. May 29, 2015)………….………..14

Junk v. Terminix Int'l Co., 628 F.3d 439 (8th Cir. 2010)……………………….…………9

In re Korean Air Lines Co., Ltd., 642 F.3d 685 (9th Cir. 2011)………………………….2

Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416 (9th Cir. 1989)……………………….....9

Kuxhausen v. BMW Financial Services NA LLC, 707 F.3d 1136
(9th Cir. 2013)……………………………………………………………………………7

Leonard v. St. Joseph Lead Co. 75 F.2d 390 (8th Cir. 1935)……………………………..10

Lexington Ins. Co. v. Office Depot. Inc., 943 F.Supp.2d 844 (N.D. Ill. 2013)……………...14

McCabe v. Gen. Foods Corp., 811 F.2d 1336 (9th Cir. 1987)……………………………9

Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp.2d 1116 (N.D. Cal. 2002)…………...12

Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089 (9th Cir. 2003)……………...…..2

Menowitz v. Borwn, 991 F.2d 36 (2nd Cir. 1993)……………………………………………2

Morris v. E. I. Du Pont De Nemours & Co., 68 F.2d 788 (8th Cir. 1934)…………………..10

Morris v. Princess Cruises, Inc., 236 F.3d 1061, (9th Cir. 2001)……………………..…..9

Olmos v. Residential Credit Sols., Inc., 92 F.Supp.3d 954,
(C.D. Cal. 2015)…………………………………………………………………………2

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1998)……………………...……9

Parks v. New York Times Co., 308 F.2d 474 (5th Cir. 1962)………………………...…..10

Ritchey v. Upjohn Drug Co., 139 F.3d 1313 (9th Cir. 1998)……………………………….8-9

Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp.2d 943 (D.MD. 2004)……………………………………………………………………......10

Romulus v. CVS Pharmacy, Inc., 770 F.3d 67 (1st Cir. 2014)………………….……………6

Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121 (9th Cir. 2013)……….………….3

Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752 (7th Cir. 2009)…………………..2, 5 10

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)…………………….……………2

Smallwood v. Illinois Cent. RR. Co., 385 F.3d 568 (5th Cir. 2004)…………………...8, 10

Solis v. BASF Corp., 2012 IL App (1st) 110875……………………………………....13

Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 436 Fed. Appx. 888 (11th Cir. 2011)…………………………………………….……………..…10

Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277 (11th Cir. 2003)………………….…...8

Trout v. John Newcomb Enterprises, Inc., No. 5:14-CV-13501, 2014 WL 3362850 (S.D.W. Va. July 9, 2014)…………………………………….....…...10

United Comput. Sys. Inc. v. AT&T Corp., 298 F.3d 756 (9th Cir. 2002)………………..…9

**Statutes**

28 U.S.C. § 1441…………………………………………………………………....2

28 U.S.C. § 1446…………………………………………………………....…3, 6

Other Authorities

14B Wright, Miller & Cooper, Federal Practice and Procedure § 3721……………………2

## I.       INTRODUCTION

Remand is necessary and required. This case properly belongs in the Circuit Court of Cook County where it was initially filed. Monsanto filed an untimely and unsubstantiated Notice of Removal over 360 days after Caruso commenced this action. Monsanto was equipped with all of the information they claim served as a basis for removal over 270 days prior to removal through their co-Defendant Russo Hardware, Inc. ("Russo")'s Answer to Caruso's Amended Complaint. Rather than remain in state court where Caruso's claims and the joinder of parties proceeded unchallenged for nearly a year, Monsanto now claims that Russo was fraudulently joined. Caruso named Russo as a properly-joined, Illinois-based Defendant. Monsanto's attempts to argue otherwise are supported by their attempts to manufacture factual disputes and manipulate the discovery process. The former is inappropriate at this stage of the litigation; the latter is inappropriate at any stage.

Monsanto's Notice of Removal fails to comply with the procedural requirements of the removal statute and fails to meet the heavy burden required to prove fraudulent joinder. As such, the case should be remanded.

## II.       STANDARD FOR REMOVAL

It is well-settled that the overwhelming trend of federal courts is to restrict and limit their jurisdiction over cases removed from state courts.

> [T]here is ample case support . . . at all levels of the federal courts—the Supreme Court, the courts of appeal, and the district courts—for the proposition that removal statutes will be strictly construed. Some federal courts go further than simply speaking of applying the principle of strict construction and say that all doubts on the question should be resolved against accepting removal jurisdiction.  These propositions are all consistent with the notion that the federal courts are courts of limited jurisdiction.

14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 at 341-51.

When interpreting and applying federal law, a transferee court applies the law of the federal circuit in which the transferee court sits. *In re Korean Air Lines Co., Ltd.,* 642 F.3d 685, 699 n. 12 (9th Cir. 2011) (citing *Menowitz v. Borwn,* 991 F.2d 36, 40 (2nd Cir. 1993). The Ninth Circuit holds that all doubts must be resolved *against* accepting removal jurisdiction: "To protect the jurisdiction of state courts, removal jurisdiction [under 28 U.S.C. § 1441(a)] should be strictly construed in favor of remand." *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). There is a "strong presumption against removal jurisdiction." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Federal courts must jealously guard their jurisdiction. *Olmos v. Residential Credit Sols., Inc.*, 92 F.Supp.3d 954, 955 (C.D. Cal. 2015).

The party seeking removal has the burden of establishing federal jurisdiction. *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir. 1989). There must be *no doubt* that jurisdiction exists. If doubt exists, remand is required. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal.") (emphasis added). "Doubts as to removability must be resolved in favor of remanding the case to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The Seventh Circuit holds the same. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 757 (7th Cir. 2009).

### III.     PROCEDURAL DEFECTS

**A. Monsanto had the information claimed as a basis for removal since January 25, 2019 and failed to remove the case.**

The mechanics and requirements for removal are governed by 28 U.S.C. § 1446. Section 1446(b) "identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 885 (9th Cir. 2010). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." *Id.* (internal quotation marks omitted). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id.* (quoting 28 U.S.C. § 1446(b)). Sections 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability. *Jian-Ming Zhao v. RelayRides, Inc.*, No. 17-cv-04099-JCS, 2017 WL 6336082 at *11 (N.D. Cal. Dec. 12, 2017); *citing Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013). "A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." *Id*. While the information Monsanto relies upon is insufficient to result in a proper removal, even if it were sufficient, they had said information for more than 270 days prior to removal. Therefore, removal is untimely.[1] Dkt. 1 ¶27.

Caruso filed her First Amended Complaint at Law on November 1, 2018, *See* Ex. C,[2] to which Russo filed an Answer, *See* Ex. E, on January 25, 2019. As a basis for their allegations that Russo was fraudulently joined, Monsanto highlights six pieces of information they purportedly

---

[1] Importantly, Caruso unequivocally and explicitly denies there are any facts in this case that support removal as the matter belongs in state court. Caruso is not admitting that Russo is fraudulently joined. Rather, for the sake of argument only, Caruso is accepting that the facts identified by Monsanto are grounds for removal and is demonstrating that Monsanto's knowledge of such facts far surpasses the 30-day deadline set forth in the removal statute.

[2] All references to exhibit numbers correspond to exhibits filed with Plaintiff's Motion to Remand, Dkt. 30

first learned from Russo and Caruso's answers to written discovery that show "no reasonable possibility that a state court would rule against Russo." Dkt. 1 ¶¶27-28. Specifically, Monsanto relies on Russo's discovery responses, which it generated through their counsel, claiming, *inter alia*, (2)[3] that they were unaware of the glyphosate monograph; (3) that they were unaware that Roundup® and/or glyphosate are carcinogenic; (4) that they had no role in the design, manufacture, or testing of Roundup®; and (5) that theynever trained customers on how to safely use Roundup®. Dkt. 1 ¶27. However, each of those claims can also be found in Russo's Answer, which had been filed over 270 days prior to removal.

In particular, in Russo's Answer, they denied their awareness of the IARC's 2015 findings and other evidence regarding glyphosate and its carcinogenic qualities. Ex. E ¶¶100-101. Russo denied the toxicity of glyphosate and Roundup® and denied that they cause non-Hodgkin's lymphoma. Ex. E ¶¶9-12, 100-101. Russo denied having knowledge of the dangerous and defective nature of Roundup®. Ex. E ¶29. Russo denied failing to warn consumers about the dangers associated with Roundup® and glyphosate. Ex. E ¶102. Caruso has compiled the following chart for ease of reference:

| Facts Cited in Notice of Removal | Facts Found in Russo's Answer |
|---|---|
| (2) Russo was unaware of the glyphosate monograph. Dkt. 1 ¶27 | Russo denied their awareness of the IARC's 2015 findings and other evidence regarding glyphosate and its carcinogenic qualities. Ex. E ¶¶100-101. |
| (3) Russo was unaware that Roundup® and/or glyphosate are carcinogenic. Dkt. 1 ¶27 | Russo denied the toxicity of glyphosate and Roundup® and denied that they cause non-Hodgkin's lymphoma. Ex. E ¶¶9-12, 100-101. |
| (4) Russo had no role in the design, manufacture, or testing of Roundup®. Dkt. 1 ¶27. | Russo denied selling, marketing, and distributing Roundup® having with full |

---

[3] The numbers in this section are references to the listed numbers in Defendant's Notice of Removal. Dkt. 1 ¶27.

| | knowledge of its dangerous and defective nature. Ex. E ¶29. |
|---|---|
| (5) Russo never trained customers on how to safely use Roundup®. Dkt. 1 ¶27. | Russo denied failing to warn consumers about the dangers associated with Roundup® and glyphosate. Ex. E ¶102. |

Monsanto then further relies on Points (1) and (6), *see* Dkt. 1 ¶27, which discuss Caruso and her decedent's alleged knowledge of the dangers of glyphosate. This argument is irrelevant with no bearing on the fraudulent joinder analysis. Such allegations are not dispositive of Caruso's negligence claims against Russo as they are claims of contributory negligence and apportionment of fault. They are fact questions reserved for resolution at trial by a jury. Even if the Court were to engage in weighing the evidence, any such disputes are to be resolved in the non-moving party's favor when analyzing claims of fraudulent joinder. *Harris,* 425 F.3d at 698; *Abrego*, 443 F.3d at 685; *Schur*, 577 F.3d at 758 (any doubts are to be resolved in favor of the plaintiff). Of course, Monsanto and Russo have an unfair advantage at this point in the case due to their blatant noncompliance with discovery requests through obstructionist responses disclosing no pertinent information or documents on these issues.[4]

Even if these points did serve as grounds for showing that Caruso has no reasonable chance of success, which they do not, Russo denied having superior knowledge to Roundup® users and

---

[4] Among the relevant documents that *should* have been produced were: (1) communications between Russo employees discussing the sale of RoundUp in the Chicagoland area, Ex. L2, #5; (2) communications between Russo employees discussing the marketing of RoundUp in the Chicagoland area, Ex. L2, #6; (3) communications regarding Russo's sale of Roundup to UIC, Ex. L2, #11; (4) communications regarding Russo's marketing of Roundup to UIC, Ex. L2, #12; (5) any contracts regarding Russo's sale of Roundup to UIC, Ex. L2, #17; (6) any contracts regarding Russo's marketing of Roundup to UIC, Ex. L2, #18; (7) sales records from any wholesaler, retailer, or other distributor who sold to Russo, Ex. L2, #25; (8) any communications between any wholesaler, retailer, or distributor and Russo regarding Roundup, Ex. L2, #26; (9) all sales records from Russo to UIC, Ex. L2, #27; (10) organizational charts for Russo, Ex. L2, #36; (11) written, electronic, communications, or other materials regarding marketing, advertising, and/or selling Roundup, Ex. L2, #37; and (12) proof of liability insurance Ex. L2, #48.

consumers in their Answer. Ex. E ¶93.  Monsanto was also on notice of Caruso's decedent's job landscaping for UIC for eight years spraying Roundup® across 240 acres of the college campus. Ex. C ¶104-07. Simply put, all of the information Monsanto claims they just realized through discovery as a basis for their fraudulent joinder argument were readily available to them and unambiguous from a plain reading of Caruso's First Amended Complaint and Russo's Answer. Removal is therefore untimely pursuant to §1446(b)(3).

**B. Counsel for Monsanto failed to act reasonably in assessing the removability of the case after being retained by the allegedly fraudulent joined Defendant.**

Even if this Court finds that Monsanto did not have information to support removal from Russo's Answer, which based off of Monsanto's own arguments they clearly did, the Court should find that Monsanto's counsel failed to timely remove the case after their attorneys were retained by Russo. "[V]arious discovery documents such as . . . correspondence between the parties and their attorneys or between the attorneys usually are accepted as 'other papers,' receipt of which can initiate a 30-day period of removability." *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014).

At some point prior to answering Caruso's written discovery requests, counsel for Monsanto was retained or entered into a representation agreement with their other current client, Russo, and had even greater access to the information they now claim to have just received on the eve of filing their Notice of Removal. *See* Pl. Mot. for Remand ¶¶16-23. Most notably, Monsanto's counsel had access to their own client: Russo and their employees. Although it cannot be known for certain when this agreement was entered into, it can be reasonably inferred that discussions for such joint defense began following the August 6, 2019 Case Management Conference and in advance of the original, court-imposed September 19, 2019 deadline (both far-beyond 30 days

from the date of the filing of their Notice of Removal). *See* Ex. G. Moreover, due to the extent (over 100 pages of text typed in response) of Russo's discovery responses, *See* Ex. L1-L3; the exhaustive investigation that was *surely* done to comply with the Illinois Supreme Court Rules; as well as the joint representations in emails from mid-September, *See* Ex. H; such conversations and agreement between Counsel for Monsanto and Russo and their agents definitively preceded the exchange of said discovery requests and preceded the 30 day-deadline they now argues applies. To suggest otherwise would put Monsanto and Russo's joint counsel in a situation where they admit to working on the discovery responses with an insufficient amount of time to respond in good faith.

In acting with such good faith and through the most basic levels of diligence in their nascent representation of Russo, Monsanto's counsel would have had the opportunity to confer with agents for Russo, most notably Eric Adams, the Operating President and Managing Director of Russo, and discovered the information contained within the Declaration that allegedly first came to Monsanto's attention on October 28, 2019. Dkt. 1 ¶22. However, Monsanto's alleged recent revelation of information from Eric Adams' Declaration is belied by the fact Eric Adams conferred with counsel for Monsanto in certifying ***all*** of Russo's Discovery Responses that were submitted on October 11, 2019. Ex. L1-L3. Moreover, much of the information contained within said Declaration was already known to Monsanto following Russo's Answer. The federal removal statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *See Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136 (9th Cir. 2013). Monsanto failed to apply such reasonable efforts in this case, therefore removal is untimely.

## IV.   SUBSTANTIVE DEFECTS

### A.  Monsanto admits that Russo is an Illinois citizen.

As the removing party, Monsanto bears the burden of demonstrating the citizenship of the parties sufficient to establish diversity jurisdiction. *Holcomb,* 871 F.2d at 110. Under the "complete diversity rule," no party may share common citizenship with any opposing party.  *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Here, while there is no dispute that the amount in controversy exceeds the jurisdictional minimum, there is also no dispute that Russo is a citizen of Illinois. Dkt. 1 ¶¶11, 13. In fact, Monsanto readily admits this fact. *Id*. Monsanto has thus failed to meet their burden under §1332(a).

### B.  Monsanto failed to meet the "heavy burden" required to show fraudulent joinder.

Because there are non-diverse parties, Monsanto has resorted to a "fraudulent joinder" argument.    An exception to the traditional rule regarding diversity jurisdiction exists if a defendant can show that a non-diverse party has been fraudulently joined. *Grancare*, 889 F.3d at 548. In *Grancare*, 889 F.3d at 548-9, the Ninth Circuit discussed the standard of proof for such a claim:

> There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) ). Fraudulent joinder is established the second way if a defendant shows that an "individual[ ] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam) ) (emphasis added). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Id.* (citations omitted).

We have upheld rulings of fraudulent joinder where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant. See *Ritchey*, 139 F.3d at 1320; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). We have also upheld such rulings where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant. See *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (defendant's conduct was privileged under state law); *United Comput. Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (plaintiff's claims against alleged sham defendant were all predicated on a contract to which the defendant was not a party); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426–27 (9th Cir. 1989) (same). **We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal.** See *Hunter*, 582 F.3d at 1046 (holding that an implied preemption affirmative defense was not a permissible ground for finding fraudulent joinder) (emphasis added).

Recently, this Court held: "The doctrine of fraudulent joinder applies when a non-diverse defendant has 'no real connection with the controversy' . . . [and] [i]f it is 'obvious' that a plaintiff has no cause of action against a defendant…" *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2019 WL 2943348, at *1 (N.D. Cal. July 9, 2019) *(citing Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998); also citing Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001)).*

**This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) (and obviously under Fed. R.Civ. P. 56, as well)**. *Grancare, LLC*, 889 F.3d at 549. "The test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id. citing Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("no possibility" standard); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445–46 (8th Cir. 2010) (defendant must establish that there is no "colorable

claim" against the alleged sham defendant); *see also Schur*, 577 F.3d at 764 (internal citations omitted) (collecting cases).

Further, while the Court may consider matters outside of the pleadings, **a claim of fraudulent joinder cannot be made based upon a disputed assertion that plaintiffs' non-jurisdictional, substantive allegations are false which thereby requires the weighing of evidence or the credibility of witnesses**. *Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 792 (8th Cir. 1934) (emphasis added); *Leonard v. St. Joseph Lead Co.*, 75 F.2d 390, 394-95 (8th Cir. 1935); *Parks v. New York Times Co.*, 308 F.2d 474, 477-78 (5th Cir. 1962); *Chumley v. Great Atlantic & Pacific Tea Co.*, 191 F.Supp. 254  254, 256 (M.D.N.C. 1961); *Jones v. Capers*, 166 F. Supp. 617, 620 (W.D.Ark. 1958); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 891-92 (11th Cir. 2011); *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp.2d 943, 948 (D.MD. 2004); *Collins v. Marten Transport, Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D.Ala. March 12, 2014); *Trout v. John Newcomb Enterprises, Inc.*, No. 5:14-CV-13501, 2014 WL 3362850, at *5 (S.D.W. Va. July 9, 2014).

The purpose of the fraudulent joinder analysis is not to conclusively resolve a claim on its merits but to assess whether there is any plausible basis for the claim being brought at all. *Amarant v. Home Depot U.S.A. Inc.*, No. 1:13-cv-002450LJO, 2013 WL 3146809 at *6 (E.D. Cal. June 18, 2013) (*citing Hunter*, 582 F.3d at 1044 (*citing Smallwood*, 385 F.3d at 573-74)) (finding that assessing the sufficiency of the evidence in a summary-judgment like fashion goes beyond the summary inquiry courts are to perform in assessing fraudulent joinder);   *Ekeya v. Shriners Hospital for Children, Portland*, 258 F.Supp.3d 1192, 1205 (D. Ore. 2017) (finding fraudulent

joinder improper where discovery has not yet occurred and the factual question had not been resolved in summary judgment.

### 1.  Caruso's claims against Russo are viable.

Caruso's allegations against Russo are far from frivolous and more than plausibly substantiate a claim under the deferential standard employed in the fraudulent joinder analysis. Far from "simply a pass-through retailer," Dkt. 1 ¶15, Caruso claims that Russo was the "premier. . . landscape supply dealer of the Midwest," a claim pulled from their website. Ex. 1 ¶95. It follows then that they knew or should have known that exposure to glyphosate-based products, including Roundup® (one of the world's most widely-used herbicides) could cause non-Hodgkin's lymphoma and present a dangerous and unreasonable risk of injury. *Id*. at ¶¶3, 114. Further they knew or should have known that users of glyphosate-based products, including Roundup®, were unaware (or less aware than Russo) of the risks associated with the products, failed to use ordinary care, and breached their duties to foreseeable individuals like Decedent, causing his non-Hodgkin's lymphoma and eventual death as a result. *See* Ex. 1, Counts I and II.

It is first worth noting that Russo had been aware of Caruso's allegations of negligence for nearly an entire year prior to Monsanto filing their Notice of Removal. At no point in that year did Russo ever file a motion to dismiss or motion to strike, dispute their joinder or involvement in the case, or otherwise challenge the legal or factual sufficiency of Caruso's claims in numerous pleadings. Instead, Russo filed their Answer to Caruso's First Amended Complaint, affirming some allegations, denying others, and claiming to lack sufficient knowledge as to others. Ex. E, While the Court need not speculate as to Russo's lack of motion practice and utter silence, the most reasonable explanation is that Caruso adequately pled claims of negligence.

Turning next to the pleadings, Monsanto contends that Russo's claims that they were unaware of the 2015 IARC findings, the harmful and carcinogenic qualities of glyphosate, the design review and approval, and any trade shows, seminars, conferences concerning such facts is dispositive of the issue of fraudulent joinder. As discussed above, however, such claims have been available to Monsanto since Russo filed their Answer 277 days prior. Monsanto also attempts to negate Caruso's claims by disputing what is alleged on information and belief in Caruso's Second Amended Complaint. Rather than just rely on the pleadings, though, Monsanto also points to "facts about Russo disclosed through discovery" to "show that there is no reasonable possibility that Plaintiff can recover against Russo under Illinois law." Dkt. 1 ¶15. Monsanto relies on Russo's Objections and Responses to Interrogatories, which were drafted by Monsanto's own counsel. *See* Ex. L1-L3. Monsanto also relies on the Declaration of Eric Adams, President of Russo, which disputes Russo's knowledge of the dangerous propensities of Roundup®. In combination, Monsanto argues "such assertions of fact trump Plaintiff's conclusory allegations." Dkt. 1 ¶23.

However, all disputed questions of **fact and law** must be resolved in Caruso's favor when analyzing a claim of fraudulent joinder. *Harris*, 425 at 698; *Abrego*, 443 F.3d at 685; *Good v. Prudential Ins. Co. of Am.*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp.2d 1116, 1117 (N.D. Cal. 2002). The standard under fraudulent joinder is even more favorable than that of a 12(b)(6) motion to dismiss, such that proof can only be shown when there is no doubt that a claim cannot succeed on the merits. *Grancare, LLC*, 889 F.3d at 549. When taken in combination, the pleadings and discovery exchanged thus far fall far short of that high burden. Caruso's allegations in her Second Amended Complaint remain, at the very least, disputed. Fact discovery in the case has not been completed and has resulted in countervailing

evidence on both sides. Such disputes could not be resolved in a 12(b)(6) motion or a motion for summary judgment, let alone a determination of fraudulent joinder. Therefore, they must be resolved in favor of Caruso's choice of forum on remand.

In addressing the merits, though, in order to prevail on a claim against a retailer in a product liability negligence action under Illinois law, the plaintiff must demonstrate that the retailer owed a duty of care to the plaintiff. More specifically, the plaintiff must show the retailer and eventual user of the product stood in such a relationship to each other that the law imposes an obligation of reasonable conduct on the retailer for the benefit of the user. *Solis v. BASF Corp.*, 2012 IL App (1st) 110875, ¶64. To state a products liability claim based on negligence, the plaintiff must show that the defendant knew or should have known of the risk posed by the product. *Calles v. Scripto Takai Corp.*, 864 N.E.2d 249, 265 (2007). Such questions should be resolved in Caruso's favor on remand. *Harris,* 425 at 698; *Abrego*, 443 F.3d at 685.

In support of their argument, Monsanto cites to three cases in their Notice of Removal which are clearly distinguishable from Caruso's case. For instance, in *Hale v. Bayer Corp.*, the plaintiff alleged that Walgreens was liable for selling the plaintiff Aleve for less than ten days, which he alleged caused him to suffer a permanent kidney injury. 2015 WL 5474298 at *1 (S.D. Ill. Sept. 16, 2015). The Court held that there was no indication that the plaintiffs purchased *any* medication, let alone Aleve, at Walgreens. Further, the Court held that there were no specific factual allegations in the complaint regarding Walgreens' misconduct other than their placement of Aleve in the store. The Court ultimately dismissed the claim against Walgreens due to general allegations which were insufficient to establish a duty. *Jones* and *Office Depot, Inc.* were dismissed on similar grounds, where the plaintiff failed to include any allegations that the retailer knew or

should have known of the defective nature of the product. *See Jones v. UPR Prod. Inc.*, 2015 WL 3463367 at *5 (N.D. Ill. May 29, 2015); *Lexington Ins. Co. v. Office Depot. Inc.*, 943 F.Supp.2d 844, 848 (N.D. Ill. 2013).

Here, Caruso alleged numerous facts to support her claims against Russo far beyond general, conclusory allegations. Caruso identified in her Second Amended Complaint that Russo was a regional landscaping leader; an innovative, environmentally-conscious company; and had teams of employees that attended trade shows, industry seminars, vendor training programs, and periodic in-house training sessions led by management. Ex. 1 ¶¶95-99, 102, 117 Caruso further alleged (not on information and belief) that in such capacity, Russo had superior knowledge compared to Roundup® users and consumers such that they should have known of the dangerous qualities of Roundup®. As such, Russo stood above "the general population," including Meghan Caruso who was able to find the IARC Report despite having no experience in landscaping, that Monsanto was deceiving through their efforts. *See* Dkt. 1 ¶26. Monsanto, apparently stripping its co-Defendant of its self-imposed title of "premier landscaping supplier," also attempts to argue that Caruso may have had superior knowledge to Russo because of email exchanges from his wife, courses he took, and his general job obligations. The party with superior knowledge is not for a Court to decide, whether at the removal, motion to dismiss, or even a summary judgment stage— it is for a jury to decide at trial.

Further, in discovery, despite obstinate stonewalling by Monsanto on behalf of Russo in which they produced *no* documents,[5] Caruso received numerous invoices reflecting sale of

---

[5] *Supra* f.n. 3.

Roundup® to UIC from the time the Decedent was employed, including after the release of the IARC Report, significantly differentiating this case from *Hale*.

Finally, despite claims from Russo in their discovery responses and the sworn statements of their President that Russo is still unaware of glyphosate's dangers, Caruso received advertisements for an educational program held just months ago sponsored by Russo with the keynote presentation being, "Glyphosate: What are the Risks?" Ex. N, HRVA 011000-011001, 011032-011033. This is critical in analyzing Caruso's ability to succeed on the merits of her negligence claims. It proves definitively that the affiant, the company's President, is incapable of attesting to facts within the knowledge of Russo. The documents demonstrate that Russo's employees currently know about the dangers of glyphosate and their president — implausibly — still does not. Caruso anticipates that Russo's environmentally-conscious, trade-show attending, industry-leading experts knew about the risks after the release of the March 2015 IARC monograph.

Caruso has pled fact-specific allegations within her Second Amended Complaint at Law that plausibly set forth a state law claim of negligence against Russo.  As such, Monsanto has failed to prove Russo was fraudulently joined.

## V.     <u>CONCLUSION</u>

Defendant Monsanto has failed to comply with the procedural requirements of the removal statute and has failed to meet their burden in establishing federal jurisdiction over this case. Meghan Caruso respectfully request this Honorable Court remand this case to the Circuit Court of Cook County pursuant to 28 U.S.C. §1447(c).

Respectfully submitted,

Date: March 26, 2019

/s/ Bryce T. Hensley
Illinois State Bar No. 6327025
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
312-253-8800
bhensley@rblaw.net
*Counsel for Plaintiff*