**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:    (202) 682-1639
Email:         jhollingsworth@hollingsworthllp.com
                    elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |

This document relates to:

*Barbara Delane Lukacs v. Monsanto Co.*,
Case No. 3:20-cv-01223-VC

## **MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in the Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      The allegations in the Complaint's first-numbered paragraph 1 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in first-numbered paragraph 1 based upon the allegations in plaintiff's Complaint.

2.      The allegations in the Complaint's first-numbered paragraph 2 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies those allegations.

3.      The allegations in the Complaint's first-numbered paragraph 3 set forth conclusions of law for which no response is required.

4.      In response to the allegations in the first sentence of the Complaint's first-numbered paragraph 4, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding  plaintiff's place of injury and/or diagnosis and therefore denies those allegations.  The allegations in the second sentence of the Complaint's first-numbered paragraph 4 set forth conclusions of law for which no response is required.

1.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the Complaint's second-numbered paragraph 1 and therefore denies those allegations.

2.      In response to the allegations in the Complaint's second-numbered paragraph 2, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.

3.      In response to the allegations in the Complaint's second-numbered paragraph 3, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in the Complaint's second-numbered paragraph 3.

4.      In response to the allegations in the Complaint's second-numbered paragraph 4, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in the Complaint's second-numbered paragraph 4 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the

truth of the remaining allegations in the Complaint's second-numbered paragraph 4 and therefore denies those allegations.

5.      Monsanto admits the allegations in the first sentence of paragraph 5.  Monsanto denies the allegations in the second sentence of paragraph 5 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations of the third sentence of paragraph 5 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

6.      In response to the allegations in paragraph 6, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 6.

7.      Monsanto admits the allegations in the first two sentences of paragraph 7 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Monsanto otherwise denies the remaining allegations in paragraph 7.

8.      In response to the allegations in paragraph 8, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 8.

9.      The allegations in paragraph 9 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 9.

10.      In response to the allegations in paragraph 10, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

1   environmental safety of their products and further admits that EPA will not register or approve

2   the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining

3   allegations in paragraph 10 set forth conclusions of law for which no response is required.

4          11.     The allegations in paragraph 11 set forth conclusions of law for which no

5   response is required.

6          12.     In response to the allegations in paragraph 12, Monsanto admits that Roundup®-

7   branded products are registered by EPA for manufacture, sale and distribution and are registered

8   by the State of Florida for sale and distribution.

9          13.     In response to the allegations in paragraph 13, Monsanto admits that EPA requires

10  registrants of herbicides to submit extensive data in support of the human health and

11  environmental safety of their products and further admits that EPA will not register or approve

12  the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

13  states that the term "the product tests" in the final sentence of paragraph 13 is vague and

14  ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 13

15  set forth conclusions of law for which no answer is required.

16         14.     Monsanto denies the allegations in paragraph 14 to the extent that they suggest

17  that EPA only evaluates the safety of pesticide products on the date of their initial registration.

18  Monsanto admits that EPA is in the process of conducting regulatory reviews of various

19  pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to

20  the truth of the allegations in paragraph 14 regarding such pesticide products generally and

21  therefore denies those allegations.  The remaining allegations in paragraph 14 set forth

22  conclusions of law for which no response is required.

23         15.     In response to the allegations in paragraph 15, Monsanto admits that EPA has

24  undertaken a review of glyphosate for purposes of regulatory review and that EPA has not

25  released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of

26  Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

27  concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

28

humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 and therefore denies those allegations.

16.     In response to the allegations in paragraph 16, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper:  Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

Monsanto denies the remaining allegations in paragraph 16.

17.     In response to the allegations in paragraph 17, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 17 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

18.     In response to the allegations in paragraph 18, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

19.     Monsanto denies the allegations in paragraph 19 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with

1    studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT

2    Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in

3    connection with services provided to a broad number of private and governmental entities and

4    that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was

5    one of several pesticide manufacturers who had used IBT test results.  The audit found some

6    toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

7    Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.

8    Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is

9    based upon any invalid IBT studies.  To the extent that the allegations in paragraph 19 are

10   intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

11   denies those allegations.

12       20.     In response to the allegations in paragraph 20, Monsanto admits that three IBT

13   employees were convicted of the charge of fraud, but Monsanto denies that any of the

14   individuals were convicted based upon studies conducted on glyphosate or glyphosate-based

15   herbicides.

16       21.     In response to the allegations in paragraph 21, Monsanto admits that it – along

17   with numerous other private companies – hired Craven Laboratories as an independent

18   laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that

19   it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies

20   conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

21   paragraph 21 are intended to suggest that Monsanto was anything other than a victim of this

22   fraud, such allegations are denied.

23       22.     Monsanto denies the allegations in paragraph 22.

24       23.     In response to the allegations in paragraph 23, Monsanto admits that Roundup®-

25   branded products are highly valued by its customers because of their efficacy and safety.

26   Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

27

28

remaining allegations in paragraph 23 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

24.     In response to the allegations in paragraph 24, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 24 and accordingly denies those allegations.  The remaining allegations in paragraph 24 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

25.     In response to the allegations in paragraph 25, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 25 and accordingly denies the same.  The remaining allegations in paragraph 25 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

26.     In response to the allegations in paragraph 26, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 26 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

27.     In response to the allegations in paragraph 27, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for

itself and thus does not require any further answer.  The remaining allegations in paragraph 27 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

28.    Monsanto denies the allegations in paragraph 28.

29.    In response to the allegations in paragraph 29, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 29 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 29.

30.    In response to the allegations in paragraph 30, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 30, which are not limited as of any specified date, and accordingly denies the same.

31.    In response to the allegations in paragraph 31, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 31.

32.    Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 32 and therefore denies those allegations.

33.    Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

1    34.    Monsanto denies the allegations in paragraph 34 to the extent that they suggest

2    that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

3    glyphosate as a Group 2A agent in March 2015.

4    35.    In response to the allegations in paragraph 35, Monsanto admits that IARC issued

5    its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the

6    monograph was prepared by a "working group" of individuals selected by IARC who met over a

7    one-week period in March 2015 to consider glyphosate along with a number of other substances.

8    Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto

9    denies that the working group or anyone at IARC conducted a one-year review of the scientific

10   evidence related to glyphosate or that the working group's findings reflected a comprehensive

11   review of the latest available scientific evidence.  Monsanto also denies that the working group

12   considered all information available in the scientific literature and all data from government

13   reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 35.

14   36.    In response to the allegations in paragraph 36, Monsanto denies that the IARC

15   working group considered all of the data in the numerous studies that have been conducted

16   looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

17   that it reliably considered the studies that it purports to have reviewed, which frequently reach

18   conclusions directly contrary to those espoused by the IARC working group.  To the extent the

19   allegations purport to characterize statements made in the IARC monograph for glyphosate, the

20   statements in that document speak for themselves, but Monsanto lacks information or knowledge

21   sufficient to form a belief as to the accuracy of the source of said information and accordingly

22   denies the allegations.

23   37.    The allegations in paragraph 37 are vague and conclusory.  To the extent they

24   purport to characterize statements made in the IARC monograph for glyphosate, the statements

25   in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

26   to form a belief as to the accuracy of the source of said information and accordingly denies the

27   allegations.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

38.     In response to the allegations in paragraph 38, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

40.     Monsanto denies the allegations in paragraph 40.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

41.     In response to the allegations in paragraph 41, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

42.     In response to the allegations in paragraph 42, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 42.

43.     In response to the allegations in paragraph 43, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 43.

44.     In response to the allegations in paragraph 44, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

48.     In response to the allegations in paragraph 48, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

1   49.     Monsanto states that the term "toxic" as used in paragraph 49 is vague and

2   ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto

3   denies the allegations in paragraph 49.

4   50.     In response to the allegations in paragraph 50, Monsanto admits that Julie Marc

5   published the cited study in 2002 and states that the document speaks for itself and does not

6   require a response.  To the extent that a response is deemed required, Monsanto denies the

7   allegations in paragraph 50.

8   51.     In response to the allegations in the first sentence of paragraph 51, Monsanto

9   admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

10  regulation" in 2004.  To the extent that the first sentence of paragraph 51 characterizes the

11  meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 51.

12  In response to the remaining allegations in paragraph 51, Monsanto states that the document

13  speaks for itself and does not require a response.  To the extent that a response is deemed

14  required, Monsanto denies the remaining allegations in paragraph 51.

15  52.     In response to the allegations in paragraph 52, Monsanto states that the cited

16  document speaks for itself and does not require a response.  To the extent that paragraph 52

17  characterizes the meaning of the cited study, Monsanto denies the remaining allegations in

18  paragraph 52.

19  53.     In response to the allegations in paragraph 53, Monsanto states that the cited

20  document speaks for itself and does not require a response.  To the extent that paragraph 53

21  characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies

22  support the allegation that glyphosate or Roundup®-branded products pose any risk to human

23  health and denies the remaining allegations in paragraph 53.

24  54.     Monsanto denies the allegations in paragraph 54.

25  55.     Monsanto admits that it has in the past promoted, and continues to promote

26  Roundup®-branded herbicides as safe when used in accordance with the products' labeling.

27  Monsanto denies the remaining allegations in paragraph 55.

28

56.     In response to the allegations in paragraph 56, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 57.

58.     Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions.  Monsanto denies the remaining allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

1   ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

2   concerns.  As of April 2016, the government of Colombia has resumed manual application of

3   glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs'

4   expert testimony purporting to link these same aerial eradication operations with cancer as

5   scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

6   denies the remaining allegations in paragraph 61.

7           62.     In response to the allegations in paragraph 62, Monsanto admits that the

8   California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was

9   required to add glyphosate to California's Proposition 65 list of chemicals in a process that

10  OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

11  weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

12  was not based upon any independent scientific analysis of glyphosate but instead was in response

13  to a provision of a California ballot proposition triggering such action based solely upon the

14  IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

15  its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

16  pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was

17  required to list glyphosate violates the United States Constitution and the California Constitution.

18  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

19  warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 62 set

20  forth conclusions of law for which no response is required.  To the extent that a response is

21  deemed required, Monsanto denies the allegations in paragraph 62.

22          63.     The allegations in paragraph 63 set forth conclusions of law for which no

23  response is required.

24          64.     The allegations in paragraph 64 set forth conclusions of law for which no

25  response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere

26

27  _____
    [4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
    https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

28
                                            - 15 -

1   presence of a listed substance in a consumer product does not require a warning.  Instead, a

2   warning need only be provided if the exposure to the listed substance, for the average user of the

3   product, exceeds the level at which cancer would be hypothesized to occur, based on

4   extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year

5   lifetime.

6        65.      In response to the allegations in paragraph 65, Monsanto admits that it has

7   brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition

8   65 list.

9        66.      In response to the allegations in paragraph 66, Monsanto admits that plaintiff

10   accurately quotes from Monsanto's complaint in the referenced lawsuit, and states that

11   Monsanto's complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit

12   cites to OEHHA's 2007 determination based upon its own independent evaluation of the

13   scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  The

14   remaining allegations in paragraph 66 comprise attorney characterizations and are accordingly

15   denied.

16        67.      In response to the allegations in paragraph 67, Monsanto admits that OEHHA

17   published a notice that glyphosate would be included on its Proposition 65 listing and admits that

18   this notice was not based upon any independent scientific analysis of glyphosate but instead was

19   in response to a section of the Labor Code triggering such action based solely upon the IARC

20   classification.  Monsanto further states that OEHHA concluded in 2007, based upon its own

21   independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer

22   hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list

23   glyphosate violates the United States Constitution and the California Constitution.  On February

24   26, 2018, a federal district court enjoined California from requiring Proposition 65 warning

25   labels for glyphosate as unconstitutional.

26

27   [5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
     https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

68.     In response to the allegations in paragraph 68, Monsanto admits that, on November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[6]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

69.     In response to the allegations in paragraph 69, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 69.

70.     Monsanto admits the allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 71 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumor incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[7]  To the extent that paragraph 71 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 71.

72.     In response to the allegations in paragraph 72, Monsanto states that the cited document speaks for itself and does not require a response.

---

[6] See EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[7] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

73.     In response to the allegations in paragraph 73, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

74.     In response to the allegations in paragraph 74, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 74 (hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field."  Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel. Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

75.     In response to the allegations in paragraph 75, Monsanto admits that Dr. Portier sent the letter identified in paragraph 75.  Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field."  Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware at the time that Dr. Portier was working as a retained expert for plaintiffs' counsel.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

carcinogenic hazard to humans."[8]  To the extent that paragraph 76 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable confidence."[9]  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  In response to the remaining allegations in paragraph 77, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph 77 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11]  To the extent that paragraph 78 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 78.

---

[8] See EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[9] http://publications.iarc.fr/_publications/media/download/4566/1f986e57ea2ddd9830fec223aeabc740d0bb2eca.pdf

[10] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

79.     In response to the allegations in paragraph 79, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12]  To the extent that paragraph 79 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 79.

80.     Monsanto admits the allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 81 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 82 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 83 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 83.

---

[12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

84.     In response to the allegations in paragraph 84, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 84 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 85 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 86 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 87 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 88, Monsanto states that the cited documents speak for themselves and do not require a response.

89.     In response to the allegations in paragraph 89, Monsanto admits that the U.S. Government Accounting Office issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to

the remaining allegations in paragraph 89, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 89 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 90, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 90 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 91, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 91 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 91.

92.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 92 and therefore denies those allegations.

93.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 93 and therefore denies those allegations.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 95 and therefore denies those allegations.

96.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies the allegations in paragraph 96.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks information or

1    knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 96

2    and therefore denies those allegations.

3        97.     In response to the allegations in paragraph 97, Monsanto denies that there is any

4    risk of serious illness associated with the use of and/or exposure to Roundup®-branded products

5    and glyphosate and denies that that Roundup®-branded products or glyphosate are injurious to

6    human health.  Monsanto states, however, that the scientific studies upon which IARC purported

7    to base its classification were all publicly available before March 2015.  The final sentence of

8    paragraph 97 sets forth a conclusion of law for which no response is required.

9        98.     In response to the allegations in paragraph 98, Monsanto denies that exposure to

10   Roundup®-branded products and glyphosate is injurious to human health.  Monsanto states,

11   however, that the scientific studies upon which IARC purported to base its cancer classification

12   for glyphosate were all publicly available before March 2015.  The remaining allegations in

13   paragraph 98 set forth conclusions of law for which no response is required.

14       99.     In response to the allegations in paragraph 99, Monsanto denies that there is any

15   risk of non-Hodgkin's lymphoma ("NHL"), or other serious illness associated with the use of

16   and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that

17   the scientific studies upon which IARC purported to base its cancer classification for glyphosate

18   were all publicly available before March 2015.  Monsanto lacks information or knowledge

19   sufficient to form a belief as to the truth of the remaining allegations in paragraph 99 and

20   therefore denies those allegations.

21       100.    The allegations in paragraph 100 set forth conclusions of law for which no

22   response is required.  To the extent that a response is deemed required, Monsanto denies the

23   allegations in paragraph 100.  Monsanto states that the scientific studies upon which IARC

24   purported to base its cancer classification for glyphosate were all publicly available before

25   March 2015.

26       101.    Monsanto denies the allegations in paragraph 101.

27       102.    Monsanto denies the allegations in paragraph 102.

28

- 23 -

103.   The allegations in paragraph 103 set forth conclusions of law for which no response is required.

104.   Monsanto denies the allegations in paragraph 104.

105.   The allegations in paragraph 105 set forth conclusions of law for which no response is required.  To the extent that a response is required, Monsanto denies the allegations in paragraph 105.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

106.   Monsanto incorporates by reference its responses to paragraphs 1 through 105 in response to paragraph 106 of plaintiff's Complaint.

107.   In response to the allegations in paragraph 107, Monsanto admits that plaintiff purports to bring claims for strict liability design defect but denies any liability as to that claim.

108.   Monsanto denies the allegations in the first and second sentences of paragraph 108.  In response to the allegations in the third sentence of paragraph 108, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 108.

109.   Monsanto denies the allegations in paragraph 109.

110.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 110 and therefore denies those allegations.

111.   Monsanto denies the allegations in paragraph 111.

112.   Monsanto denies the allegations in paragraph 112.

113.   Monsanto denies the allegations in paragraph 113 and each of its subparts.

114.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 114 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 114, including that Roundup®-branded products have "dangerous characteristics."

115.   Monsanto denies the allegations in paragraph 115.

116.     Monsanto denies the allegations in paragraph 116.

117.     Monsanto denies the allegations in paragraph 117.

118.     Monsanto denies the allegations in paragraph 118.

119.     Monsanto denies the allegations in paragraph 119.

120.     Monsanto denies the allegations in paragraph 120.

121.     Monsanto denies the allegations in paragraph 121.

122.     In response to the allegations in the first sentence of paragraph 122, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 122 sets forth a conclusion of law for which no response is required.

123.     Monsanto incorporates by reference its responses to paragraphs 1 through 122 in response to paragraph 123 of plaintiff's Complaint.

124.     In response to the allegations in paragraph 124, Monsanto admits that plaintiff purports to bring claims for strict liability failure to warn, but denies any liability as to that claim.

125.     Monsanto denies the allegations in paragraph 125.

126.     In response to the allegations in paragraph 126, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff and/or plaintiff's employers, plaintiff's co-workers, or other persons or entities purchased Roundup®-branded products and therefore denies those allegations. The allegations in paragraph 126 also set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 126.

127.     The allegations in paragraph 127 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

1    128.    Monsanto denies the allegations in paragraph 128.  All labeling of Roundup®-

2    branded products has been and remains EPA-approved and in compliance with all federal

3    requirements under FIFRA.

4    129.    Monsanto denies the allegations in paragraph 129.

5    130.    Monsanto denies the allegations in paragraph 130.

6    131.    Monsanto denies the allegations in paragraph 131.

7    132.    Monsanto lacks information or knowledge sufficient to form a belief as to the

8    truth of the allegations in paragraph 132 and therefore denies those allegations.

9    133.    Monsanto lacks information or knowledge sufficient to form a belief as to the

10   truth of the allegations in paragraph 133 regarding plaintiff's claimed use of and exposure to

11   Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

12   remaining allegations in paragraph 133, including that Roundup®-branded products have

13   "dangerous characteristics."

14   134.    Monsanto lacks information or knowledge sufficient to form a belief as to the

15   truth of the allegations in the second sentence of paragraph 134 and therefore denies those

16   allegations.  Monsanto denies the remaining allegations in paragraph 134.

17   135.    Monsanto denies the allegations in paragraph 135.

18   136.    Monsanto denies the allegations in paragraph 136.

19   137.    Monsanto denies the allegations in paragraph 137.

20   138.    Monsanto denies the allegations in paragraph 138.

21   139.    Monsanto denies the allegations in paragraph 139.

22   140.    Monsanto denies the allegations in paragraph 140.

23   141.    Monsanto denies the allegations in paragraph 141.

24   142.    Monsanto denies the allegations in paragraph 142.

25   143.    In response to the allegations in the first sentence of paragraph 143, Monsanto

26   demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be

27   dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

28

fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of paragraph 143 sets forth a conclusion of law for which no response is required.

144.   Monsanto incorporates by reference its responses to paragraphs 1 through 143 in response to paragraph 144 of plaintiff's Complaint.

145.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 145 regarding the specific products allegedly purchased or used by plaintiff, and therefore denies the allegations in paragraph 145.

146.   The allegations in paragraph 146 set forth conclusions of law for which no response is required.

147.   The allegations in paragraph 147 set forth conclusions of law for which no response is required.

148.   Monsanto denies the allegations in paragraph 148.

149.   Monsanto denies the allegations in paragraph 149.

150.   Monsanto denies the allegations in paragraph 150.

151.   Monsanto denies the allegations in paragraph 151.

152.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 152 regarding users' and consumers' knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 152. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

153.   Monsanto denies the allegations in paragraph 153.

154.   Monsanto denies the allegations in paragraph 154.

155.   Monsanto denies the allegations in paragraph 155.

156.   Monsanto denies the allegations in paragraph 156, including each of its subparts.

157.   Monsanto denies the allegations in paragraph 157.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

158.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 158 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 158, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

159.    Monsanto denies the allegations in paragraph 159.

160.    Monsanto denies the allegations in paragraph 160.

161.    Monsanto denies the allegations in paragraph 161.

162.    In response to the allegations in the first sentence of paragraph 162, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of paragraph 162 sets forth a conclusion of law for which no response is required.

163.    The allegations in paragraph 163 set forth conclusions of law for which no response is required.

164.    In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

**SEPARATE AND AFFIRMATIVE DEFENSES**

1.    The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

- 28 -

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed, and labeled with proper warnings, information, cautions, and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.      Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injury or damages as alleged (no injury or damages being admitted), such injury or damages resulted from acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

16.     Plaintiff's claims are preempted or otherwise barred in whole or in or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17.     Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Florida Constitution, and/or other applicable state constitutions.

18.     Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under Florida law and/or other applicable state laws.

19.     Plaintiff's claims for punitive damages are barred and/or limited by operation of state and/or federal law, including Fla. Stat. § 768.73.  Monsanto would further show that under the facts of this case, however, an award of punitive damages consistent with the maximum awards permitted under Fla. Stat. § 768.73 would be a violation of Monsanto's state and federal constitutional rights.

20.      Plaintiff's claims are barred in whole or in part by plaintiff's contributory/comparative negligence.

21.      Plaintiff's claims are barred in whole or in part by plaintiff's failure to mitigate damages.

22.      Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

23.      To the extent that plaintiff recovered payments for their alleged injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law, including as allowed for under Fla. Stat. § 768.76.

24.      If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

25.      Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

26.      Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

27.      In accordance with Fla. Stat. § 768.1257, plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

28.      Plaintiff's claims are barred, in whole or in part, by application of Fla. Stat. § 768.1256.

29.      In accordance with Fla. Stat. § 768.1257, plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

30.      Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC

1     **WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

2 plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such

3 other relief as the Court deems equitable and just.

4 **JURY TRIAL DEMAND**

5     Monsanto demands a jury trial on all issues so triable.

6

7 DATED:  April 13, 2020               Respectfully submitted,

8

9                      /s/ Joe G. Hollingsworth
Joe G. Hollingsworth (*pro hac vice*)
(jhollingsworth@hollingsworthllp.com)

10 Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)

11 HOLLINGSWORTH LLP
1350 I Street, N.W.

12 Washington, DC  20005
Telephone:  (202) 898-5800

13 Facsimile:   (202) 682-1639

14 *Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01223-VC