**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Ann Frances Hall, Individually and as Personal Representative of the Estate of Vernon Edlow Hall v. Monsanto Co.*,<br>Case No. 3:20-cv-01492-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in the Complaint and Jury Demand ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      The allegations in the Complaint's first-numbered paragraph 1 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in first-numbered paragraph 1 based upon the allegations in plaintiff's Complaint.

2.      The allegations in the Complaint's first-numbered paragraph 2 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies those allegations.

3.      The allegations in the Complaint's first-numbered paragraph 3 set forth conclusions of law for which no response is required.

4.      In response to the allegations in the first sentence of the Complaint's first-numbered paragraph 4, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding  plaintiff's place of injury and/or diagnosis and therefore denies those allegations.  The allegations in the second sentence of the Complaint's first-numbered paragraph 4 set forth conclusions of law for which no response is required.

1.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the Complaint's second-numbered paragraph 1 and therefore denies those allegations.

2.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the Complaint's second-numbered paragraph 1 and therefore denies those allegations.

3.      In response to the allegations in the Complaint's second-numbered paragraph 3, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.

4.      In response to the allegations in the Complaint's second-numbered paragraph 4, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in the Complaint's second-numbered paragraph 4.

1        5.      In response to the allegations in the Complaint's second-numbered paragraph 5,

2   Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.

3   The remaining allegations in the Complaint's second-numbered paragraph 5 are vague and

4   ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the

5   truth of the remaining allegations in the Complaint's second-numbered paragraph 5 and therefore

6   denies those allegations.

7        6.      Monsanto admits the allegations in the first sentence of paragraph 6.  Monsanto

8   denies the allegations in the second sentence of paragraph 6 because the impact of glyphosate on

9   treated plants varies depending upon the amount of glyphosate applied and the type of plant.

10   Monsanto denies the allegations of the third sentence of paragraph 6 to the extent that it suggests

11   that glyphosate is present in any plants at anything other than *de minimis* amounts well within

12   regulatory safety levels, as determined by EPA.

13        7.      In response to the allegations in paragraph 7, Monsanto admits that farmers have

14   safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining

15   allegations in paragraph 7.

16        8.      Monsanto admits the allegations in the first two sentences of paragraph 8 and

17   admits that it has marketed Roundup®-branded products in accord with EPA's regulatory

18   determinations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").

19   Monsanto otherwise denies the remaining allegations in paragraph 8.

20        9.      In response to the allegations in paragraph 9, Monsanto admits that certain

21   Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants

22   and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded

23   herbicides – like those in other manufacturers' herbicide products – are protected by EPA as

24   "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-

25   branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the

26   remaining allegations in paragraph 9.

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

10.     The allegations in paragraph 10 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 10.

11.     In response to the allegations in paragraph 11, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 11 set forth conclusions of law for which no response is required.

12.     The allegations in paragraph 12 set forth conclusions of law for which no response is required.

13.      Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution and are registered by the State of Florida for sale and distribution.

14.     In response to the allegations in paragraph 14, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 14 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 14 set forth conclusions of law for which no answer is required.

15.     Monsanto denies the allegations in paragraph 15 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory reviews of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 15 regarding such pesticide products generally and therefore denies those allegations.  The remaining allegations in paragraph 15 set forth conclusions of law for which no response is required.

- 4 -

16.     In response to the allegations in paragraph 16, Monsanto admits that EPA has undertaken a review of glyphosate for purposes of regulatory review and that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 and therefore denies those allegations.

17.     In response to the allegations in paragraph 17, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper:  Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/ watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

Monsanto denies the remaining allegations in paragraph 16.

18.     In response to the allegations in paragraph 18, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 18 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

19.     In response to the allegations in paragraph 19, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

20.     Monsanto denies the allegations in paragraph 20 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 20 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

21.     In response to the allegations in paragraph 21, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

22.     In response to the allegations in paragraph 22, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1 paragraph 22 are intended to suggest that Monsanto was anything other than a victim of this

2 fraud, such allegations are denied.

3      23.     Monsanto denies the allegations in paragraph 23.

4      24.     In response to the allegations in paragraph 24, Monsanto admits that Roundup®-

5 branded products are highly valued by its customers because of their efficacy and safety.

6 Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The

7 remaining allegations in paragraph 24 are vague and conclusory and comprise attorney

8 characterizations, and are accordingly denied.

9      25.     In response to the allegations in paragraph 25, Monsanto admits that following the

10 development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds

11 are now widely used by farmers in the United States and worldwide.  Monsanto lacks

12 information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

13 cited in paragraph 25 and accordingly denies those allegations.  The remaining allegations in

14 paragraph 25 are vague and conclusory and comprise attorney characterizations, and are

15 accordingly denied.

16      26.     In response to the allegations in paragraph 26, Monsanto admits that glyphosate is

17 one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it

18 is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks

19 information or knowledge sufficient to form a belief as to the accuracy of the specific numbers

20 cited in paragraph 26 and accordingly denies the same.  The remaining allegations in paragraph

21 26 are vague and conclusory and comprise attorney characterizations, and are accordingly

22 denied.

23      27.     In response to the allegations in paragraph 27, Monsanto admits that the New

24 York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

25 advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any

26 admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney

27 General's allegations related in any way to a purported or alleged risk of cancer.  To the extent

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 27 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

28.     In response to the allegations in paragraph 28, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 28 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

29.     Monsanto denies the allegations in paragraph 29.

30.     In response to the allegations in paragraph 30, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 30 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 31, which are not limited as of any specified date, and accordingly denies the same.

32.     In response to the allegations in paragraph 32, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.  Monsanto denies the remaining allegations in paragraph 32.

33.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 and therefore denies those allegations.

34.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1  that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

2  form a belief as to the truth of the remaining allegations in paragraph 34 and therefore denies

3  those allegations.

4        35.     Monsanto denies the allegations in paragraph 35 to the extent that they suggest

5  that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

6  glyphosate as a Group 2A agent in March 2015.

7        36.     In response to the allegations in paragraph 36, Monsanto admits that IARC issued

8  its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the

9  monograph was prepared by a "working group" of individuals selected by IARC who met over a

10 one-week period in March 2015 to consider glyphosate along with a number of other substances.

11 Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto

12 denies that the working group or anyone at IARC conducted a one-year review of the scientific

13 evidence related to glyphosate or that the working group's findings reflected a comprehensive

14 review of the latest available scientific evidence.  Monsanto also denies that the working group

15 considered all information available in the scientific literature and all data from government

16 reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 36.

17       37.     In response to the allegations in paragraph 37, Monsanto denies that the IARC

18 working group considered all of the data in the numerous studies that have been conducted

19 looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

20 that it reliably considered the studies that it purports to have reviewed, which frequently reach

21 conclusions directly contrary to those espoused by the IARC working group.  To the extent the

22 allegations purport to characterize statements made in the IARC monograph for glyphosate, the

23 statements in that document speak for themselves, but Monsanto lacks information or knowledge

24 sufficient to form a belief as to the accuracy of the source of said information and accordingly

25 denies the allegations.

26       38.     The allegations in paragraph 38 are vague and conclusory.  To the extent they

27 purport to characterize statements made in the IARC monograph for glyphosate, the statements

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

39.    In response to the allegations in paragraph 39, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 39.

40.    In response to the allegations in paragraph 40, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

41.    Monsanto denies the allegations in paragraph 41.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

42.    In response to the allegations in paragraph 42, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

43.    In response to the allegations in paragraph 43, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 43.

44.    In response to the allegations in paragraph 44, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any

1  reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or

2  persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 44.

3         45.     In response to the allegations in paragraph 45, Monsanto admits that the IARC

4  working group interpreted a selected number of experimental studies as evidence that glyphosate

5  can cause genotoxicity, but Monsanto denies that the working group reliably considered the full

6  body of scientific data on such alleged genotoxic endpoints and denies that the working group

7  reliably interpreted the studies that it selected for consideration.  Regulators around the world

8  repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining

9  allegations in paragraph 45.

10         46.     In response to the allegations in paragraph 46, Monsanto admits that the IARC

11  working group purported to find such effects, but denies that there is any reliable scientific basis

12  for such conclusion.  Monsanto denies the remaining allegations in paragraph 46.

13         47.     In response to the allegations in paragraph 46, Monsanto admits that the working

14  group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but

15  denies that the working group characterized that study as supporting an association between

16  glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

17  between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

18  46.

19         48.     In response to the allegations in paragraph 48, Monsanto admits that EPA has a

20  technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

21  regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

22  should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

23  finding that glyphosate does not pose any cancer risk to humans.

24         49.     In response to the allegations in paragraph 49, Monsanto admits that the

25  Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

26  Coalition provides any reliable basis for any conclusions regarding potential health risks from

27  glyphosate.  Monsanto notes that a federal district court has characterized this same publication

28

as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

50.    Monsanto states that the term "toxic" as used in paragraph 50 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 50.

51.    In response to the allegations in paragraph 51, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 51.

52.    In response to the allegations in the first sentence of paragraph 52, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent that the first sentence of paragraph 52 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 52. In response to the remaining allegations in paragraph 52, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 52.

53.    In response to the allegations in paragraph 53, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 53 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 53.

54.    In response to the allegations in paragraph 54, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 54 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 54.

55.    Monsanto denies the allegations in paragraph 55.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

56.     Monsanto admits that it has in the past promoted, and continues to promote Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 57.

59.     Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions.  Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 63 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 63.

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

1      64.     The allegations in paragraph 64 set forth conclusions of law for which no

2   response is required.

3      65.     The allegations in paragraph 65 set forth conclusions of law for which no

4   response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere

5   presence of a listed substance in a consumer product does not require a warning.  Instead, a

6   warning need only be provided if the exposure to the listed substance, for the average user of the

7   product, exceeds the level at which cancer would be hypothesized to occur, based on

8   extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year

9   lifetime.

10      66.     In response to the allegations in paragraph 66, Monsanto admits that it has

11   brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition

12   65 list.

13      67.     In response to the allegations in paragraph 67, Monsanto admits that plaintiff

14   accurately quotes from Monsanto's complaint in the referenced lawsuit, and states that

15   Monsanto's complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit

16   cites to OEHHA's 2007 determination based upon its own independent evaluation of the

17   scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  The

18   remaining allegations in paragraph 67 comprise attorney characterizations and are accordingly

19   denied.

20      68.     In response to the allegations in paragraph 68, Monsanto admits that OEHHA

21   published a notice that glyphosate would be included on its Proposition 65 listing and admits that

22   this notice was not based upon any independent scientific analysis of glyphosate but instead was

23   in response to a section of the Labor Code triggering such action based solely upon the IARC

24   classification.  Monsanto further states that OEHHA concluded in 2007, based upon its own

25   independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer

26

27   [5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
    https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1  hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list

2  glyphosate violates the United States Constitution and the California Constitution.  On February

3  26, 2018, a federal district court enjoined California from requiring Proposition 65 warning

4  labels for glyphosate as unconstitutional.

5       69.    In response to the allegations in paragraph 69, Monsanto admits that, on

6  November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal

7  Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to

8  pose a carcinogenic hazard to humans."[6]  Monsanto further admits that this conclusion affirmed

9  a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits

10  that the European scientists who reached these determinations were acting independently of

11  Monsanto and were acting to protect the public.

12       70.    In response to the allegations in paragraph 70, Monsanto denies that "industry

13  groups" were afforded any ability to review the RAR beyond that afforded to the public

14  generally.  Monsanto otherwise admits the allegations in paragraph 70.

15       71.    Monsanto admits the allegations in paragraph 71.

16       72.    In response to the allegations in paragraph 72, Monsanto states that the cited

17  document speaks for itself and does not require a response.  Monsanto denies the allegations in

18  paragraph 72 to the extent that they purport to set forth all of the distinctions identified by EFSA

19  between its evaluation and the evaluation of the IARC working group.  Monsanto states that in

20  the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review

21  concluded that no significant increase in tumor incidence could be observed in any of the treated

22  groups of animals in the nine long term rat studies considered" and explains that "[a]s well as

23  reviewing a larger number of studies [than IARC], EFSA for example considered that

24  carcinogenic effects observed at high doses were unreliable as they could be related to general

25

26

27  [6] See EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1    toxicity."[7]  To the extent that paragraph 72 characterizes the meaning of the cited studies,

2    Monsanto denies the remaining allegations in paragraph 72.

3         73.     In response to the allegations in paragraph 73, Monsanto states that the cited

4    document speaks for itself and does not require a response.

5         74.     In response to the allegations in paragraph 74, Monsanto admits that EFSA set

6    acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those

7    which occur in the ordinary use of glyphosate-based herbicides.  Monsanto denies that these

8    exposure thresholds are based upon any alleged risk of carcinogenicity.

9         75.     In response to the allegations in paragraph 75, Monsanto admits that certain

10   individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 75

11   (hereinafter, "the Portier letter").  Monsanto denies that Dr. Portier or the other signatories to his

12   letter are "independent" and "renowned international experts in the field."  Monsanto states that

13   Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the

14   glyphosate cancer litigation against Monsanto and that Monsanto lacks information or

15   knowledge sufficient to form a belief as to whether the other signatories were aware, before they

16   signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.

17   Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the

18   scientific findings reached by EFSA and by the BfR.

19        76.     In response to the allegations in paragraph 76, Monsanto admits that Dr. Portier

20   sent the letter identified in paragraph 76.  Monsanto denies that Dr. Portier or the other

21   signatories to his letter are "renowned international experts in the field."  Monsanto admits that

22   certain members of the IARC working group assigned to glyphosate signed on to the Portier

23   letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to

24   whether those individuals or the other signatories were aware at the time that Dr. Portier was

25   working as a retained expert for plaintiffs' counsel.

26

27   [7] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default
     /files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

77.     In response to the allegations in paragraph 77, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[8]  To the extent that paragraph 77 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable confidence."[9]  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  In response to the remaining allegations in paragraph 78, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph 78 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

---

[8] *See* EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[9] http://publications.iarc.fr/_publications/media/download/4566/1f986e57ea2ddd9830fec223aeabc740d0bb2eca.pdf

[10] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11]  To the extent that paragraph 79 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12]  To the extent that paragraph 79 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 80.

81.     Monsanto admits the allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 82 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 83 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 83.

---

[11] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

84.     In response to the allegations in paragraph 84, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 84 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 85 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 86 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 87 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 88 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 88.

89.     In response to the allegations in paragraph 89, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain

foods for glyphosate residues.  In response to the remaining allegations in paragraph 89,
Monsanto states that the cited documents speak for themselves and do not require a response.

90.      In response to the allegations in paragraph 90, Monsanto admits that the U.S.
Government Accounting Office issued the cited report regarding pesticide residue monitoring
programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to
the remaining allegations in paragraph 90, Monsanto states that the cited documents speak for
themselves and do not require a response.  To the extent that paragraph 89 characterizes the
meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 90.

91.      In response to the allegations in paragraph 91, Monsanto admits that the FDA has
authority to enforce pesticide residues and that the FDA announced it would begin testing certain
foods for glyphosate residues.  In response to the remaining allegations in paragraph 91,
Monsanto states that the cited documents speak for themselves and do not require a response.  To
the extent that paragraph 91 characterizes the meaning of the cited documents, Monsanto denies
the remaining allegations in paragraph 91.

92.      In response to the allegations in paragraph 92, Monsanto admits that the FDA has
authority to enforce pesticide residues and that the FDA announced it would begin testing certain
foods for glyphosate residues.  In response to the remaining allegations in paragraph 91,
Monsanto states that the cited documents speak for themselves and do not require a response.  To
the extent that paragraph 92 characterizes the meaning of the cited documents, Monsanto denies
the remaining allegations in paragraph 92.

93.      Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations in paragraph 92 and therefore denies those allegations.

94.      Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations in paragraph 93 and therefore denies those allegations.

95.      Monsanto denies the allegations in paragraph 95.

96.      Monsanto lacks information or knowledge sufficient to form a belief as to the
truth of the allegations in paragraph 96 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

97.     Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies the allegations in paragraph 97.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 97 and therefore denies those allegations.

98.     In response to the allegations in paragraph 98, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and denies that that Roundup®-branded products or glyphosate are injurious to human health.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.  The final sentence of paragraph 98 sets forth a conclusion of law for which no response is required.

99.     In response to the allegations in paragraph 99, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 99 set forth conclusions of law for which no response is required.

100.     In response to the allegations in paragraph 100, Monsanto denies that there is any risk of non-Hodgkin's lymphoma ("NHL"), or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 100 and therefore denies those allegations.

101.     The allegations in paragraph 101 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 101.  Monsanto states that the scientific studies upon which IARC

1  purported to base its cancer classification for glyphosate were all publicly available before
2  March 2015.

3      102.    Monsanto denies the allegations in paragraph 102.

4      103.    Monsanto denies the allegations in paragraph 103.

5      104.    The allegations in paragraph 104 set forth conclusions of law for which no
6  response is required.

7      105.    Monsanto denies the allegations in paragraph 105.

8      106.    The allegations in paragraph 106 set forth conclusions of law for which no
9  response is required.  To the extent that a response is required, Monsanto denies the allegations
10  in paragraph 106.  Monsanto states that the scientific studies upon which IARC purported to base
11  its cancer classification for glyphosate were all publicly available before March 2015.

12      107.    Monsanto incorporates by reference its responses to paragraphs 1 through 106 in
13  response to paragraph 107 of plaintiff's Complaint.

14      108.    In response to the allegations in paragraph 108, Monsanto admits that plaintiff
15  purports to bring claims for strict liability design defect but denies any liability as to that claim.

16      109.    Monsanto denies the allegations in the first and second sentences of paragraph
17  109.  In response to the allegations in the third sentence of paragraph 109, Monsanto lacks
18  information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff
19  used or was exposed to Roundup®-branded products and therefore denies those allegations.
20  Monsanto denies the remaining allegations in paragraph 109.

21      110.    Monsanto denies the allegations in paragraph 110.

22      111.    Monsanto lacks information or knowledge sufficient to form a belief as to the
23  truth of the allegations in paragraph 111 and therefore denies those allegations.

24      112.    Monsanto denies the allegations in paragraph 112.

25      113.    Monsanto denies the allegations in paragraph 113.

26      114.    Monsanto denies the allegations in paragraph 114 and each of its subparts.

27
28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1        115.    Monsanto lacks information or knowledge sufficient to form a belief as to the

2    truth of the allegations in paragraph 115 and therefore denies those allegations.  Monsanto denies

3    the remaining allegations in paragraph 115, including that Roundup®-branded products have

4    "dangerous characteristics."

5        116.    Monsanto denies the allegations in paragraph 116.

6        117.    Monsanto denies the allegations in paragraph 117.

7        118.    Monsanto denies the allegations in paragraph 118.

8        119.    Monsanto denies the allegations in paragraph 119.

9        120.    Monsanto denies the allegations in paragraph 120.

10        121.    Monsanto denies the allegations in paragraph 121.

11        122.    Monsanto denies the allegations in paragraph 122.

12        123.    In response to the allegations in the first sentence of paragraph 123, Monsanto

13    demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be

14    dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

15    fees as allowed by law and such further and additional relief as this Court may deem just and

16    proper.  The statement in the last sentence of paragraph 123 sets forth a conclusion of law for

17    which no response is required.

18        124.    Monsanto incorporates by reference its responses to paragraphs 1 through 123 in

19    response to paragraph 124 of plaintiff's Complaint.

20        125.    In response to the allegations in paragraph 125, Monsanto admits that plaintiff

21    purports to bring claims for strict liability failure to warn, but denies any liability as to that claim.

22        126.    Monsanto denies the allegations in paragraph 126.

23        127.    In response to the allegations in paragraph 127, Monsanto lacks information or

24    knowledge sufficient to form a belief as to the truth of the allegations that plaintiff and/or

25    plaintiff's employers, plaintiff's co-workers, or other persons or entities purchased Roundup®-

26    branded products and therefore denies those allegations.  The allegations in paragraph 127 also

27

28

1  set forth conclusions of law for which no response is required.  Monsanto denies the remaining

2  allegations in paragraph 127.

3        128.    The allegations in paragraph 128 set forth conclusions of law for which no

4  response is required.

5        129.    Monsanto denies the allegations in paragraph 129.  All labeling of Roundup®-

6  branded products has been and remains EPA-approved and in compliance with all federal

7  requirements under FIFRA.

8        130.    Monsanto denies the allegations in paragraph 130.

9        131.    Monsanto denies the allegations in paragraph 131.

10        132.    Monsanto denies the allegations in paragraph 132.

11        133.    Monsanto lacks information or knowledge sufficient to form a belief as to the

12  truth of the allegations in paragraph 133 and therefore denies those allegations.

13        134.    Monsanto lacks information or knowledge sufficient to form a belief as to the

14  truth of the allegations in paragraph 134 regarding plaintiff's claimed use of and exposure to

15  Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

16  remaining allegations in paragraph 134, including that Roundup®-branded products have

17  "dangerous characteristics."

18        135.    Monsanto lacks information or knowledge sufficient to form a belief as to the

19  truth of the allegations in the second sentence of paragraph 135 and therefore denies those

20  allegations.  Monsanto denies the remaining allegations in paragraph 135.

21        136.    Monsanto denies the allegations in paragraph 136.

22        137.    Monsanto denies the allegations in paragraph 137.

23        138.    Monsanto denies the allegations in paragraph 138.

24        139.    Monsanto denies the allegations in paragraph 139.

25        140.    Monsanto denies the allegations in paragraph 140.

26        141.    Monsanto denies the allegations in paragraph 141.

27        142.    Monsanto denies the allegations in paragraph 142.

28

143.     Monsanto denies the allegations in paragraph 143.

144.     In response to the allegations in the first sentence of paragraph 144, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of paragraph 144 sets forth a conclusion of law for which no response is required.

145.     Monsanto incorporates by reference its responses to paragraphs 1 through 144 in response to paragraph 145 of plaintiff's Complaint.

146.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 regarding the specific products allegedly purchased or used by plaintiff, and therefore denies the allegations in paragraph 146.

147.     The allegations in paragraph 147 set forth conclusions of law for which no response is required.

148.     The allegations in paragraph 148 set forth conclusions of law for which no response is required.

149.     Monsanto denies the allegations in paragraph 149.

150.     Monsanto denies the allegations in paragraph 150.

151.     Monsanto denies the allegations in paragraph 151.

152.     Monsanto denies the allegations in paragraph 152.

153.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 153 regarding users' and consumers' knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 153. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

154.     Monsanto denies the allegations in paragraph 154.

155.     Monsanto denies the allegations in paragraph 155.

1      156.    Monsanto denies the allegations in paragraph 156.

2      157.    Monsanto denies the allegations in paragraph 157, including each of its subparts.

3      158.    Monsanto denies the allegations in paragraph 158.

4      159.    Monsanto lacks information or knowledge sufficient to form a belief as to the

5 truth of the allegations in paragraph 159 regarding plaintiff's knowledge and therefore denies

6 those allegations.  Monsanto denies the remaining allegations in paragraph 159, including that

7 intended use of and/or exposure to Roundup®-branded products causes any injuries.

8      160.    Monsanto denies the allegations in paragraph 160.

9      161.    Monsanto denies the allegations in paragraph 161.

10      162.    Monsanto denies the allegations in paragraph 162.

11      163.    In response to the allegations in the first sentence of paragraph 163, Monsanto

12 demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be

13 dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

14 fees as allowed by law and such further and additional relief as this Court may deem just and

15 proper.  The statement in the last sentence of paragraph 163 sets forth a conclusion of law for

16 which no response is required.

17      164.    Monsanto incorporates by reference its responses to paragraphs 1 through 163 in

18 response to paragraph 164 of plaintiff's Complaint.

19      165.    In response to the allegations in paragraph 165, Monsanto admits that plaintiff

20 purports to bring a wrongful death action but denies any liability as to that claim.

21      166.    Monsanto denies the allegations in paragraph 166.

22      167.    Monsanto denies the allegations in paragraph 167.

23      168.    In response to the allegations in the first sentence of paragraph 168, Monsanto

24 demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be

25 dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

26 fees as allowed by law and such further and additional relief as this Court may deem just and

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC

1  proper.  The statement in the last sentence of paragraph 168 sets forth a conclusion of law for

2  which no response is required.

3       169.    The allegations in paragraph 169 set forth conclusions of law for which no

4  response is required.

5       170.    In response to the allegations in paragraph 170, Monsanto denies that plaintiffs

6  are entitled to the relief sought therein, including any judgment for any damages, interest, costs,

7  or any other relief whatsoever.

8       Every allegation in the Complaint that is not specifically and expressly admitted in this

9  Answer is hereby specifically and expressly denied.

10                 **SEPARATE AND AFFIRMATIVE DEFENSES**

11      1. The Complaint, in whole or part, fails to state a claim or cause of action upon which

12 relief can be granted.

13      2. Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable

14 evidence that the products at issue were defective or unreasonably dangerous.

15      3. Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so

16 insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's

17 alleged injuries.

18      4. Plaintiff's claims are barred, in whole or in part, because the products at issue were

19 designed, manufactured, marketed, and labeled with proper warnings, information, cautions, and

20 instructions, in accordance with the state of the art and the state of scientific and technological

21 knowledge.

22      5. Plaintiff's claims are barred, in whole or in part, because the products at issue were not

23 defective or unreasonably dangerous in that they complied with, at all relevant times, all

24 applicable government safety standards.

25      6. Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating

26 to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and

27 supply of Roundup®-branded products and/or glyphosate-containing products.

28

7. Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. See, e.g., *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

8. Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9. Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10. Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11. The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12. Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13. Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14. If plaintiff suffered injury or damages as alleged (no injury or damages being admitted), such injury or damages resulted from acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

16.     Plaintiff's claims are preempted or otherwise barred in whole or in or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17.     Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Florida Constitution, and/or other applicable state constitutions.

18.     Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under Florida law and/or other applicable state laws.

19.     Plaintiff's claims for punitive damages are barred and/or limited by operation of state and/or federal law, including Fla. Stat. § 768.73.  Monsanto would further show that under the facts of this case, however, an award of punitive damages consistent with the maximum awards permitted under Fla. Stat. § 768.73 would be a violation of Monsanto's state and federal constitutional rights.

20.     Plaintiff's claims are barred in whole or in part by plaintiff's contributory/comparative negligence.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's failure to mitigate damages.

22.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

23.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has received and/or will receive from collateral sources.

24.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

25.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

26.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

27.     Plaintiff's claims are barred, in whole or in part, by application of Fla. Stat. § 768.1256.

28.     Any recovery of compensatory damages is limited by operation of Fla. Stat. § 768.76.

29.     Plaintiffs' injuries, if any, were caused, in whole or in part, by the acts or omissions of persons other than Monsanto, whether individual, corporate, associate, or otherwise, whether named or unnamed in the Complaint, and for whose conduct Monsanto is not liable.  Monsanto is not liable for damages proximately caused by non-parties, pursuant to *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993), including other product used by plaintiff that was not manufactured, sold, or distributed by Monsanto

30.     In accordance with Fla. Stat. §768.1257, plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed, and labeled with proper warnings, information, cautions, and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

31.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Monsanto demands a jury trial on all issues so triable.

DATED:  April 15, 2020                              Respectfully submitted,

                                                    /s/ Joe G. Hollingsworth
                                                    Joe G. Hollingsworth (*pro hac vice*)
                                                    (jhollingsworth@hollingsworthllp.com)
                                                    Eric G. Lasker (*pro hac vice*)
                                                    (elasker@hollingsworthllp.com)
                                                    HOLLINGSWORTH LLP
                                                    1350 I Street, N.W.
                                                    Washington, DC  20005
                                                    Telephone:  (202) 898-5800
                                                    Facsimile:   (202) 682-1639

                                                    *Attorneys for Defendant*
                                                    *MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-01492-VC