UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF MARTIN CALHOUN IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT AND TO REMAND *SAPINSKY* CASE** |
| *Mike Sapinsky v. Monsanto Co., et al.,* | |
| Case No. 3:20-cv-00257-VC | |

I, Martin Calhoun, declare:

1.      I am over the age of eighteen.  I make the statements set forth herein based on my personal knowledge.  If I were called to testify, I could and would be competent to testify under oath.

2.      I am a partner at Hollingsworth LLP.  I am one of the attorneys representing defendant Monsanto Company ("Monsanto") in the above-captioned lawsuit.  I submit this declaration in support of Monsanto's Opposition to Plaintiff's Motion to Amend His Complaint and to Remand the *Sapinsky* Case.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Certificate of Conversion of Orchard Supply Hardware Corporation (filed October 3, 2005).

4.      Attached hereto as Exhibit 2 is a true and correct copy of the Certificate of
Formation of Orchard Supply Hardware LLC (filed October 3, 2005).

5.      Attached hereto as Exhibit 3 is a true and correct copy of the Order Confirming
the Debtors' Modified Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code,
*In re OSH 1 Liquidating Corp., et al.*, Case No 13-11565 (CSS) (D. Del. Dec. 20, 2013).

6.      Attached hereto as Exhibit 4 is a true and correct copy of the Certificate of
Amendment to Certificate of Formation of Orchard Supply Hardware LLC (filed September 16,
2013).

7.      Attached hereto as Exhibit 5 is a true and correct copy of the Notice of (I) Entry
of Confirmation Order, (II) Occurrence of Effective Date Under Debtors' Modified First
Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code [ . . . etc.], *In re OSH 1
Liquidating Corp., et al.*, Case No 13-11565 (CSS) (D. Del. Feb. 24, 2014).

8.      Attached hereto as Exhibit 6 is a true and correct copy of the State of Delaware
Certificate of Cancellation of OSH 2 Liquidating LLC (filed December 20, 2016).


I declare under penalty of perjury that the foregoing is true and correct.


Executed in Bethesda, Maryland on April 23, 2020


Martin C. Calhoun

*Attorney for Defendant Monsanto
Company*

2

# Exhibit 1

FROM CORPORATION TRUST WILM. TEAM #2

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:41 AM 10/03/2005
FILED 11:21 AM 10/03/2005
SRV 050806637 - 2192164 FILE

# CERTIFICATE OF CONVERSION OF
## ORCHARD SUPPLY HARDWARE CORPORATION

This Certificate of Conversion to Limited Liability Company, dated as of October 3, 2005, is being duly executed and filed by Orchard Supply Hardware Corporation, a Delaware corporation (the "Company"), and Robert Lynch as an authorized person of Orchard Supply Hardware LLC, a Delaware limited liability company (the "LLC"), to convert the Company to the LLC, under the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.) (the "Act") and the General Corporation Law of the State of Delaware (8 Del. C. § 101, et seq.) (the "DGCL").

1.   The Company's name when it was originally incorporated on March 31, 1989 was OSH Acquisition Corporation and was changed to Orchard Supply Hardware Corporation pursuant to an amendment to the Company's Certificate of Incorporation on May 31, 1989. The Company's name as set forth in its Certificate of Incorporation immediately prior to the filing of this Certificate of Conversion to Limited Liability Company was Orchard Supply Hardware Corporation.

2.   The Company filed its original certificate of incorporation with the Secretary of State of the State of Delaware and continued to be incorporated in the State of Delaware immediately prior to the filing of this Certificate of Conversion to Limited Liability Company.

3.   The name of the LLC into which the Company shall be converted as set forth in its certificate of formation is "Orchard Supply Hardware LLC".

4.   The conversion of the Company to the LLC has been approved in accordance with the provisions of Section 18-214 of the Act and Sections 228 and 266 of the DGCL.

5.   The conversion of the Company to the LLC shall be effective upon filing this Certificate of Conversion to Limited Liability Company with the Secretary of State of the State of Delaware.

**[The remainder of this page has been left intentionally blank]**

083985-0006-10893-LosAngeles.2031503.1

FROM CORPORATION TRUST WILM. TEAM #2          (MON)10. 3'05 12:37/ST. 12:36/NO. 4863796599 P 3

10/03/05  00:22 FAX 408 629 7174          EXECUTIVE OFFICE                                                        ☑003

**IN WITNESS WHEREOF,** each of the undersigned has executed this Certificate as of the date first written above.

**ORCHARD SUPPLY HARDWARE CORPORATION**

By: _____
    Robert Lynch
    Authorized Person

**ORCHARD SUPPLY HARDWARE LLC**

By: _____
    Robert Lynch
    Authorized Person

[Certificate of Conversion]

# Exhibit 2

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 11:41 AM 10/03/2005*
*FILED 11:21 AM 10/03/2005*
*SRV 050806637 – 2192164 FILE*

# CERTIFICATE OF FORMATION

## OF

## ORCHARD SUPPLY HARDWARE LLC

This Certificate of Formation of Orchard Supply Hardware LLC (the "LLC"), dated as of October 3, 2005, is being duly executed and filed by Robert Lynch, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.).

FIRST.  The name of the limited liability company formed hereby is "Orchard Supply Hardware LLC"

SECOND.  The address of the registered office of the LLC in the State of Delaware is c/o The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

THIRD.  The name and address of the registered agent for service of process on the LLC in the State of Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

By: _____
Robert Lynch
Authorized Person

Exhibit 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                    :
In re:                              :  Chapter 11
                                    :
OSH 1 Liquidating Corporation., et al., (f/k/a   :  Case No. 13-11565 (CSS)
Orchard Supply Hardware Stores Corporation,      :
et al.,¹                            :  (Jointly Administered)
                                    :
          Debtors.                  :  Re: Dkt. No. 785
-------------------------------------------------------x
```

## ORDER CONFIRMING THE DEBTORS' MODIFIED FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") having:

- commenced chapter 11 cases (collectively, the "Chapter 11 Cases") on June 17, 2013 (the "Petition Date"), by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code");

- continued to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

- obtained, on September 5, 2013, entry of the Order Granting Motion of the Debtors and Debtors in Possession for an Order Establishing Deadlines for Filing Proofs of Claim and Section 503(b)(9) Claim Requests and Approving the Form and Manner of Notice Thereof [Docket No. 540] which, among other things, set October 25, 2012 as the Bar Date²;

- filed, on November 12, 2013, the Debtors' First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code [Docket No. 717] (the "First Amended

---

[1]  The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): OSH 1 Liquidating Corporation f/k/a Orchard Supply Hardware Stores Corporation (4109), OSH 2 Liquidating LLC f/k/a Orchard Supply Hardware LLC (3395) and OSH 3 Liquidating LLC f/k/a OSH Properties LLC (3391). On August 20, 2013, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets which provided, among other things, that the Debtors were required to cease using the "Orchard Supply Hardware" name after closing of the sale.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Plan") and the Disclosure Statement for the Debtors' First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code [Docket No. 718] (the "Disclosure Statement");

- obtained approval of the Disclosure Statement by that certain Order [Docket No. 724] (the "Disclosure Statement Order"), docketed on November 13, 2013. The Disclosure Statement Order also approved, among other things, solicitation procedures and related notices, forms and ballots in support of the First Amended Plan (collectively, the "Solicitation Materials");

- distributed the Solicitation Materials on or before November 15, 2013, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Disclosure Statement Order, as evidenced by the Affidavit of Service of Kevin Martin, filed on December 6, 2013 (the "Solicitation Affidavit") [Docket No. 787];

- filed, on December 6, 2013, the Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code [D.I. 785] (as the same may be amended, supplemented or otherwise modified, the "Plan")

- filed, on December 17, 2013, the Declaration of Notice, Balloting and Claims Agent Regarding Solicitation and Tabulation of Votes in Connection with the Debtors' First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, detailing the results of voting on the First Amended Plan by Classes 1 and 3 (the "Voting Declaration") [Docket No. 821];

- filed, on December 18, 2013, the Declaration of Andrew Hinkelman in Support of Confirmation of the Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code [Docket No. 824] (the "Confirmation Affidavit"); and

- filed, on December 18, 2013, the Memorandum of Law of Debtors in Support of Confirmation of the Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code and Omnibus Reply to Objections Thereto [Docket No. 825] (the "Plan Confirmation Brief");

The Bankruptcy Court having:

- taken judicial notice of the docket and record of these Chapter 11 Cases;

- entered the DIP Orders on July 19, 2013 [D.I. 252 & 253];

- entered the *Order Granting the Motion of the Debtors and Debtors in Possession Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 to Approve Settlement Among the Senior Secured Term Lenders, Official Committee of Unsecured Creditors and Debtors* on September 4, 2013 [D.I. 523] (the "9019 Settlement");

- entered the Disclosure Statement Order on November 13, 2013 [Docket No. 724];

- set December 20, 2013 at 2:00 p.m. prevailing Eastern time, as the date and time for the commencement of the Confirmation Hearing pursuant to sections 1126, 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018;

- reviewed the Disclosure Statement, the Plan, the Plan Confirmation Brief, the Voting Declaration, the Confirmation Affidavit and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan ("Confirmation") and the record of these Chapter 11 Cases;

- reviewed the objections and statements filed in opposition to Confirmation, including, without limitation, those filed by Docket Nos. 805, 806, 809, 811, 817 and 818 (collectively, the "Objections");

- heard and considered the statements of counsel, all testimony and other evidence proffered and/or adduced at the Confirmation Hearing, and in respect of, Confirmation; and

- determined to overrule any and all Objections not consensually resolved or withdrawn; and

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing, and the opportunity for any party in interest to object to Confirmation is adequate and appropriate as to all parties in interest and other entities affected, benefitted or bound by or to be affected, benefitted or bound by the Plan and Confirmation Order and the transactions contemplated thereby; and upon consideration of and determining that the legal and factual bases set forth in the documents filed in support of Confirmation, the statements of counsel, all testimony and other evidence proffered, adduced and presented at the Confirmation Hearing, and the Confirmation Affidavit, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law:[3]

---

[3] This Confirmation Order constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.     Jurisdiction and Venue**

1.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are qualified to be Debtors under section 109 of the Bankruptcy Code.

2.      <u>Jurisdiction and Core Proceeding (28 U.S.C. §157(b)(2))</u>. This Court has jurisdiction under 28 U.S.C. §1334 over the Chapter 11 Cases, the Debtors, all property of the Debtors' Estates and all parties that filed proofs of Claim or otherwise subjected themselves to the jurisdiction of the Bankruptcy Court, and to consider Confirmation of the Plan and all provisions thereof. Confirmation of the Plan is a core proceeding under 28 U.S.C. §157(b)(2).

3.      <u>Venue (28 U.S.C. §§1408 and 1409)</u>. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§1408 and 1409.

4.      Since the Petition Date, the Debtors have operated their business and remained in possession of their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.     Judicial Notice**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of this Court (the "<u>Docket</u>"), including, without limitation, all pleadings, certifications, notices and other documents docketed all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held before this Court during the pendency of the Chapter 11 Cases.

**C.     Burden of Proof**

6.      The Debtors, as the Plan Proponents, have met their burden of proof with respect to each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard respecting confirmation of a plan of reorganization. The Bankruptcy Court also finds that the Debtors have satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**D.      Bankruptcy Rule 3016**

7.      The Plan is dated and identifies the Debtors submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**E.      Disclosure Statement Order**

8.      On November 13, 2013, the Bankruptcy Court entered the Disclosure Statement Order that, among other things:  (a) approved the Disclosure Statement and determined that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017; (b) fixed the deadline for voting to accept or reject the First Amended Plan; (c) fixed the date and time for the commencement of the Confirmation Hearing; (d) established the objection deadline and procedures for objecting to the First Amended Plan; and (e) established the record date and certain procedures for soliciting and tabulating votes with respect to the First Amended Plan.

**F.      Transmittal and Mailing of Solicitation Materials; Notice**

9.      As evidenced by the Solicitation Affidavit, the Debtors complied with the service requirements and procedures approved in the Disclosure Statement Order.  The Debtors have provided notice of the Confirmation Hearing and solicited ballots accepting or rejecting the First Amended Plan by timely transmitting the Solicitation Materials to all holders of Claims and Equity Interests, in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the local rules for the United States Bankruptcy Court for the District of

Delaware (the "<u>Local Rules</u>"). The notices of the Confirmation Hearing are adequate and sufficient; no other notice need be given.

**G.     Voting**

10.     Holders of Claims in Classes 1 and 3 under the First Amended Plan are impaired and entitled to vote to accept or reject the First Amended Plan. Holders of Claims in Class 2 are unimpaired and deemed to accept the First Amended Plan. Holders of Equity Interests in Class 4 are impaired and will receive no distribution under the First Amended Plan, and thus are deemed to reject the First Amended Plan.

11.     On December 17, 2013, the Debtors' Claims Agent filed with this Court the Voting Declaration [Docket No. 821] certifying the method and results of the ballot tabulation for Classes 1 and 3.

12.     The Debtors and their respective directors, officers, agents, affiliates, representatives, attorneys and advisors following entry of the Disclosure Statement Order solicited votes to accept or reject the First Amended Plan in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order and all other applicable statutes, rules, laws and regulations.

**H.     Voting Report**

13.     As evidenced by the Voting Declaration, all ballots were properly tabulated. Pursuant to sections 1124 and 1126 of the Bankruptcy Code, Class 1 (Senior Secured Term Loan Claims) and Class 3 (General Unsecured Claims), which are the only classes entitled to vote on the Plan, each voted to accept the Plan by the standards required by section 1126(c) of the Bankruptcy Code.

## I.     Compliance With the Requirements of Section 1129 of the Bankruptcy Code[4]

14.     The Debtors' Plan contains modifications which constitute non-material changes and do not materially adversely affect or change the treatment of any Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or re-solicitation of votes under Section 1126 of the Bankruptcy Code.

15.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as set forth below:

### (a)     Section 1129(a)(1): Compliance of the Plan With Applicable Provisions of the Bankruptcy Code

16.     The Plan complies with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123.

#### (i)     Section 1122, 1123(a)(1): Proper Classification

17.     Article III of the Plan classifies four Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests designated by the Plan, and the creation of such Classes does not unfairly discriminate between holders of Claims and Equity Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

---

[4]     The Debtors submit that the following Bankruptcy Code provisions are not applicable in these Chapter 11 Cases: §§ 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) & 1129(a)(16).

     **(ii)**     **Section 1123(a)(2)-(4): Specified Treatment and No Discrimination**

18.    Article III, Section B of the Plan specifies that Claims in Class 2 are not impaired under the Plan, in accordance with section 1123(a)(2) of the Bankruptcy Code, and that Claims and Equity Interests in Classes 1, 3 and 4 are impaired and describes the treatment of each such Class in accordance with section 1123(a)(3) of the Bankruptcy Code. Further, Article III, Section B of the Plan further specifies that Class 4 is not entitled to receive any distribution and, therefore, is deemed to reject the Plan. As required by section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Equity Interest within a Class is the same as the treatment of each other Claim or Equity Interest in such Class, unless the holder of a Claim or Equity Interest agrees to less favorable treatment on account of its Claim or Equity Interest in such Class.

     **(iii)**     **Section 1123(a)(5): Adequate Means for Plan Implementation**

19.    Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV of the Plan provides adequate and proper means for the Plan's implementation, including, without limitation (a) the appointment of Bradley Dietz as the Responsible Person to hold, manage, dispose of, sell, convert to Cash, and distribute the assets vesting in the Liquidating Trust for the benefit of the Creditors that are entitled to Distributions therefrom under the Plan; and (b) the funding of the GUC Trust and appointment of SltnTrst LLC as the GUC Trustee for the sole purpose of adjudicating General Unsecured Claims and distributing the assets vesting in the GUC Trust for the benefit of the beneficiaries of the GUC Trust.

     **(iv)**     **Section 1123(a)(6): Non-Voting Equity Securities**

20.    The Plan does not provide for the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

###### (v)　Section 1123(a)(7): Designation of Directors and Officers

21.　The Plan complies with section 1123(a)(7) and ensures that the selection of the Responsible Person and GUC Trustee are consistent with the interests of holders of Allowed Claims because the Senior Secured Term Loan Lenders have consented to the choice of the Responsible Person and the Official Committee of Unsecured Creditors has consented to the choice of the GUC Trustee.

###### (vi)　Section 1123(b)(1)-(2): Impairment/Unimpairment of Classes of Claims and Equity Interests & Executory Contracts

22.　As described above, Article III of the Plan provides for the impairment of certain Classes of Claims and Equity Interests, while leaving others unimpaired. The Plan thus modifies the rights of such holders of Claims and Equity Interests and leaves the rights of others unaffected. In addition, subject to certain exculpations provided for therein, Article VII of the Plan also provides for the rejection of the remaining executory contracts and unexpired leases to which the Debtors are parties.

###### (vii)　Section 1123(b)(3): Releases, Exculpation and Injunction Discharge

23.　<u>Releases</u>. The release of Claims in favor of the Released Parties pursuant to section 1123(b)(3)(A) of the Bankruptcy Code are described in Article IX.B of the Plan. Each of the Released Parties has contributed significant value to the Debtors, their Plan and their liquidation efforts that warrant the releases.

24.　The releases also fully comply with the applicable standard enunciated by the courts in <u>In re Zenith Electronics Corp.</u>, 241 B.R. 92 (Bankr. D. Del. 1999), <u>In re Spansion, Inc.</u>, 426 B.R. 114 (Bankr. D. Del. 2010) and <u>In re Washington Mutual, Inc.</u>, 442 B.R. 314 (Bankr. D. Del. 2011). The Released Parties all share an identity of interest with the Debtors and have made substantial contributions to the Debtors' reorganization efforts. In addition, the releases are an

integral part of the agreement by and among the Debtors, the Senior Secured Term Loan Lenders and the Creditors Committee to support the Plan. The third party releases are fully consensual.

25.     Accordingly, the Court finds that the releases represent a valid exercise of the Debtors' business judgment, are granted in exchange for reasonable consideration and are integral and necessary to consummation of the Plan. The Released Parties have provided sufficient value in exchange for the releases, and the releases are sufficiently tailored to meet the objectives of the parties.

26.     <u>Exculpation</u>. The exculpation set forth in Article IX.C of the Plan, as modified herein, is an essential and integral provision of the Plan. The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Article IX.C of the Plan and as modified herein. Such provisions are appropriately tailored to protect the Debtors, the Debtors' Professionals, the Debtors' current and former directors and officers, the Creditors Committee's members (but solely in their capacity as members of the Creditors Committee and not in their individual capacities), and the Creditors Committee's Professionals, from litigation relating to acts or omissions arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, the 9019 Settlement or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases.

27.     Each of the releases and exculpation provisions set forth in the Plan, as modified or limited by this Order:  (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§1334(a), 1334(b), and 1334(d); (b) is essential to the implementation of the Plan;

(c) is an integral element of the transactions incorporated into and contemplated by the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their estates, their creditors and other parties in interest; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these Chapter 11 Cases; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases and exculpation provisions contained in Article IX of the Plan, as modified by this Confirmation Order.

### (b) Section 1129(a)(2): Compliance by the Debtors With the Applicable Provisions of the Bankruptcy Code

28. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2), including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

29. In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code and are proper Plan Proponents under section 1121(a) of the Bankruptcy Code. Furthermore, the solicitation of acceptances or rejections of the Plan: (i) complied with the Disclosure Statement Order; (ii) complied with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation; and (iii) occurred only after disclosure of "adequate information" to holders of Claims or Equity Interests, as section 1125(a) of the Bankruptcy Code defines that term and as determined by the Bankruptcy Court in the Disclosure Statement Order. Accordingly, the Debtors and their Representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

**(c)**      **Section 1129(a)(3):  Proposal of the Plan in Good Faith**

30.      The Debtors proposed the Plan based upon extensive, arm's-length negotiations between and among the Debtors, the Creditors Committee, and the Senior Secured Term Loan Lenders, and proposed the Plan in good faith and not by any means forbidden by law, as required by section 1129(a)(3) of the Bankruptcy Code.  This Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the process leading to the formulation of the Plan and the Disclosure Statement.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and good faith purposes of liquidating the Debtors' estates and maximizing their value.  No objections were filed that alleged the Plan was not proposed in good faith or was otherwise proposed by means forbidden by law.

**(d)**      **Section 1129(a)(4):  Bankruptcy Court Approval of Certain Payments Reasonable**

31.      The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, comply with section 1129(a)(4) of the Bankruptcy Code.  As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

**(e)**      **Section 1129(a)(5):  Disclosure and Identity of Proposed Management**

32.      The Plan complies with Bankruptcy Code section 1129(a)(5) by providing for the appointments of the Responsible Person and the GUC Trustee to serve as of and after the Effective Date.  No further disclosure is necessary because the Debtors will not retain any managers or officers as of the Effective Date.

   (f)      **Section 1129(a)(7): Best Interests of Creditors**

33.    Each entity that holds a Claim or Equity Interest in a class that is impaired under the Plan either: (a) has accepted the Plan; or (b) as set forth in the Liquidation Analysis annexed as Exhibit D to the Disclosure Statement, will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the entity would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The methodology used and assumptions made in the Liquidation Analysis, as supplemented by the evidence proffered or adduced at the Confirmation Hearing or otherwise in the record of these Chapter 11 Cases, are reasonable. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code have been satisfied.

   (g)      **Section 1129(a)(8): Acceptance by the Plan by Each Impaired Class**

34.    As set forth in the Voting Declaration, Class 1 (Senior Secured Term Loan Claims) and Class 3 (General Unsecured Claims), as impaired classes entitled to vote on the Plan, each voted in favor of the Plan.

35.    Class 2 Claims are unimpaired and conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

36.    Class 4 is impaired and the holders of Equity Interests will receive no distribution on account of their Equity Interests under the Plan and thus, the Class is deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.

37.    Because Class 4 is impaired and conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code, the Debtors sought Confirmation under section 1129(b), rather than section 1129(a), of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 4, the Court finds the Plan is confirmable, because the Plan does not discriminate unfairly and is fair and equitable with

respect to Class 4. All voting classes have voted to accept the Plan. As a result, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

**(h)** **Section 1129(a)(9): Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

38.     The treatment of Allowed Administrative Claims, Allowed Claims for Accrued Professional Compensation and Allowed Priority Tax Claims under Article II of the Plan respectively, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**(i)** **Section 1129(a)(10): Acceptance by at Least One Impaired Class**

39.     As set forth in the Voting Declaration and above, at least one impaired class, other than Class 4 which is deemed to reject, voted to accept the Plan by the requisite majorities, determined without including the acceptance of the Plan by any insider. Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

**(j)** **Section 1129(a)(11): Feasibility of the Plan**

40.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

41.     The evidence proffered or adduced at the Confirmation Hearing, including, without limitation, the Hinkelman Affidavit demonstrates that the Debtors will have sufficient funds to satisfy their obligations under the Plan and, given that the Plan contemplates the liquidation of the Debtors, confirmation of the Plan is not likely to be followed by the further reorganization of the Debtors or any successor to the Debtors that is not otherwise contemplated by the Plan. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**(k)      Section 1129(a)(12):  Payment of Bankruptcy Fees**

42.      In accordance with section 1129(a)(12) of the Bankruptcy Code, Article V.N of the Plan provides for the payment of all fees payable under 28 U.S.C. §1930(a).  As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**(l)      Section 1129(b):  Confirmation of the Plan Over Nonacceptance of Impaired Class**

43.      Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all impaired classes voted to accept the Plan.  All classes of impaired Claims voted to accept the Plan.  Class 4 Equity Interests is deemed to reject, but no holder of Equity Interests objected to Confirmation.

44.      The requirements of section 1129(b)(2) of the Bankruptcy Code are satisfied with respect to Class 4 because there are no holders of Claims or Equity Interests that are junior to Class 4 that will receive or retain under the Plan any property, in accordance with section 1129(b)(2)(C)(ii) of the Bankruptcy Code.

**(m)      Satisfaction of Confirmation Requirements**

45.      Based on the foregoing, the Plan and Plan Proponents satisfy the requirements for Confirmation set forth in section 1129(b) of the Bankruptcy Code and the Plan may be confirmed notwithstanding the deemed rejection by Class 4.

**(n)      Section 1129(c):  Only One Plan**

46.      Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

(o)     **Section 1129(d): Principal Purpose of the Plan is Not the Avoidance of Taxes or Application of the Securities Law**

47.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

## J.     Executory Contracts and Unexpired Leases

48.     The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases under the Plan. The Debtors have exercised reasonable and sound business judgment in determining whether to assume, assume and sell and assign, or reject each of their executory contracts and unexpired leases, including, without limitation, any insurance policies to the extent they are executory contracts, as set forth in the Plan and the exhibits thereto, and such determination is in the best interests of the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. Accordingly, the Plan satisfies the provisions of section 1123(b)(2) of the Bankruptcy Code.

## K.     Satisfaction of Conditions Precedent to Effective Date

49.     This Order is entered and shall satisfy one of the conditions precedent to the Effective Date set forth in Article VIII of the Plan.

## L.     Retention of Jurisdiction

50.     The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article X of the Plan.

## ORDER

Based on the foregoing, it is hereby ORDERED and DECREED:

**A.      Order**

1.      All requirements for Confirmation of the Plan have been satisfied. The Plan, as attached as <u>Exhibit A</u> hereto, or as the same may be modified by this Confirmation Order, shall be, and hereby is, CONFIRMED. The terms of the Plan are incorporated by reference into, and are an integral part of this Order.

**B.      Objections**

2.      To the extent that any Objections to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of this Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

**C.      Findings of Fact and Conclusions of Law**

3.      The findings of fact and the conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the these Chapter 11 Cases and this matter by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

**D.      Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent**

4.      The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**E.      Record Closed**

5.      The record of the Confirmation Hearing is closed.

**F.    Notice**

6.    Good and sufficient notice has been provided of the Confirmation Hearing, the deadline for filing and serving Objections to the Plan, cure claim estimates, injunctions and third-party releases, bar dates, and other hearings described in the Disclosure Statement Order and the Plan, which notice has been given and is hereby approved.

**G.    Solicitation and Notice**

7.    The Solicitation Materials and the solicitation of votes on the Plan complied with the Disclosure Statement Order, were appropriate and sufficient based on the circumstances of these Chapter 11 Cases, solicitation was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**H.    Plan Classification Controlling**

8.    The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the ballots tendered to or returned by the Debtors' Creditors in connection with voting on the Plan:  (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Creditor as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not bind the Debtors or their successors in interest.

**I.    Binding Effect and Validity**

9.    Unless otherwise provided in the Plan or this Order, the provisions of the Plan and this Order shall bind the Debtors, the Creditors Committee, the Responsible Person, the GUC Trustee, and all holders of Claims against and any Equity Interests in the Debtors, including their successors and assigns, whether or not the Claims or Equity Interests are impaired under the

Plan, whether or not the holders thereof voted to accept the Plan or filed proofs of Claim in any of these Chapter 11 Cases. Each Plan term and provision, is valid and enforceable.

**J.      Effectuation of the Plan**

10.      Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation or alternate entity laws of any, as applicable, no action of the Boards of Directors of the Debtors, will be required to authorize the Debtors, to execute, deliver, file or record any and all documents and instruments, and to take any and all action necessary or desirable to implement the Plan and this Order and to effect any other transactions contemplated therein or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors are authorized, without further notice or application to or order of the Court to execute, deliver, file or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders, boards of directors or managing member of the Debtors, this Order constitutes such consent, approval and direction.

**K.      Responsible Person**

11.      Bradley Dietz, in his individual capacity, shall be appointed as the Responsible Person for the sole purpose of liquidating and distributing the assets vesting with the Liquidation Trust and with no objective to continue or engage in the conduct of a trade or business.

**L.      Liquidation Trust**

12.      The Liquidating Trust Agreement, in substantially the form as filed with the Plan Supplement, is hereby approved, and all of the Debtors' liabilities, assets, title, discretion,

privileges, and rights, including, but not limited to rights to obtain assets from third parties and rights to prosecute, settle, or otherwise dispose of Causes of Action shall be transferred to, and vest in, the Liquidation Trust on the Effective Date; *provided, however*, that such assets, privileges and rights shall not include any such assets, privileges and rights to be transferred to the GUC Trust under the Plan. The Liquidation Trustee shall have all the liabilities, duties, powers, rights, title, discretion and privileges of the Responsible Person in the Plan hereunder, and all references in the Plan and hereunder to the distribution of the Debtors' assets, other than the assets used to fund the GUC Trust, shall be deemed to refer to the assets of the Liquidation Trust. The Debtors and the Responsible Person shall be, and hereby are, authorized to enter into the Liquidation Trust Agreement, in substantially the form as filed with the Plan Supplement, and the terms of the Liquidation Trust Agreement are hereby incorporated in this Order by reference as if fully set forth in this Order.

13. The Liquidation Trust is a "liquidating trust" (a) as such term is defined in Section 301.7701-4(d) of U.S. Treasury Regulations, and (b) in accordance with the requirements set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

**M. GUC Trust**

14. The GUC Trust Agreement substantially in the form attached to the Plan Supplement is approved. The GUC Trustee, who is SltnTrst LLC, is hereby approved for all purposes to be the GUC Trustee under the Plan and the GUC Trust Agreement.

15. On the Effective Date, the Debtors shall transfer the GUC Trust Assets (as defined in the GUC Trust Agreement) to the GUC Trust. The Debtors and the GUC Trustee shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Beneficiaries (as defined in the GUC Trust Agreement).

16.     On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the GUC Trust all of its rights, title, and interest in and to all of the GUC Trust Assets (as defined in the GUC Trust Agreement), and in accordance with section 1141 of the Bankruptcy Code, the GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Claims, liens, encumbrances, or interests subject only to:  (i) interest of the Beneficiaries, and (ii) the expenses of the GUC Trust, as provided for in the GUC Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

17.     In connection with the vesting and transfer of the GUC Trust Assets (as defined in the GUC Trust Agreement) to the GUC Trust, any attorney-client, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) expressly transferred to the GUC Trust in respect of General Unsecured Claims shall vest in the GUC Trust.  The Debtors and the GUC Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections, and immunities.

**N.     Treatment Is in Full Satisfaction**

18.     Except as provided in the Plan or this Order or otherwise agreed in writing and approved by the Court, the treatment set forth in the Plan and the payments and Distributions to be made thereunder shall be in full and complete satisfaction of all Claims released in the Plan. Except as otherwise provided in the Plan or this Confirmation Order, such treatment supersedes and replaces any agreements with or rights those entities may have in or against the Debtors or their respective property.

**O.     Cancellation of Equity Interests**

19.     On the Effective Date, all agreements and other documents evidencing rights of any holder of Equity Interest against any of the Debtors, including share certificates and any

agreements, warrants options or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied.

## P.  Non-Debtor Obligations

20.  Anything in the Plan or this Order to the contrary notwithstanding, no promissory notes, loan agreements, instruments, security documents, mortgages, deeds of trust or other agreements to which any non-Debtor is a party (or that encumbers or affects their respective property), and no claim, right, remedy, lien, interest, liability or obligation arising thereunder shall be modified, affected, impaired, enjoined discharged, canceled or annulled; *provided, however*, that the obligations of and Claims against the Debtors thereunder shall be as provided for in the Plan.

## Q.  The Releases, Exculpation, Injunction and Related Provisions Under the Plan

21.  It is hereby ordered that the Bankruptcy Court approves of and grants the releases, exculpations, injunctions and related provisions contained in Article IX of the Plan, and as amended herein, and determines that they are:  (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action thereby released. Notwithstanding anything to the contrary contained in the Plan or this Order, "Released Parties" means, collectively, the Debtors, the Debtors' current and former directors and officers, the Senior Secured Term Loan Lenders and their current and former affiliates, the Senior Secured Term Loan Agent and their current and former affiliates, and the DIP Lenders, and the current and former Representatives of each of the foregoing; *provided, however* that with respect to the DIP Lenders, the releases contained herein are not intended to modify the releases provided

EAST\66752193.7

under the DIP Orders. For the avoidance of doubt, the Released Parties shall not include the Purchaser or its affiliates. The release, exculpation and injunction provisions contained in Articles IX.B.1, IX.B.2, IX.C. and IX.F of the Plan are hereby replaced and amended as follows:

**Releases**.  *Releases by the Debtors and their Estates*. Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors and their current and former affiliates and Representatives and the Estates shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors and their current and former affiliates and Representatives, the Estates and the Creditors Committee and its members but solely in their capacity as members of the Creditors Committee and not in their individual capacities), from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing on or before the Effective Date, or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases, the Plan, the Sale or the Settlement; *provided, however*, that the foregoing release shall not prohibit the Debtors, the Estates, the Responsible Person, the GUC Trust or the GUC Trustee from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Parties.

*Releases by Holders of Claims*. Except as otherwise provided in the above paragraph, each Person, other than any of the Debtors, who votes to accept the Plan and does not mark such ballot to indicate their refusal to grant the release provided for in this paragraph, shall be deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties of and from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing on or before the Effective Date, or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or

otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors and their current and former affiliates and Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise. For the avoidance of doubt, the foregoing provision shall not impair or limit any rights of the Purchaser against any such party for damages relating to or arising under the Final APA or the transactions contemplated thereby.

**Exculpation**. Except as otherwise provided under the Plan (other than Article IX.C., which is replaced in its entirety with this Paragraph), the Debtors, the Debtors' Professionals, the Debtors' current and former directors and officers, the Creditors Committee, the Creditors Committee's members (but solely in their capacity as members of the Creditors Committee and not in their individual capacities), and the Creditors Committee's Professionals shall neither have nor incur any liability relating to these Chapter 11 Cases to any Entity for any Claims or Cause of Action arising after the Petition Date and on or before the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, soliciting, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases; *provided, however,* that the foregoing provision shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct; *provided further* that the foregoing provision shall not impair or limit any rights of the Purchaser against any such party for damages relating to or arising under the Final APA or the transactions contemplated thereby; *provided further* that the foregoing provision shall not impair or limit any rights of parties to assert objections to fee applications of Professionals.

**Injunction**. All Persons are precluded from asserting against any property that is to be distributed under the terms of the Plan, the GUC Trust Agreement, or the Liquidation Trust Agreement any Claims, obligations, rights, Causes of Action, liabilities, Liens, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than to the extent expressly provided for in the Plan or this Order, whether or not (a) a Proof of Claim or proof of Equity Interest based upon such debt or Equity Interest (as applicable) is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim or Equity Interest based upon such debt or Equity Interest (as applicable) is allowed under

Bankruptcy Code § 502; or (c) the holder of a Claim or Equity Interest based upon such debt or Equity Interest (as applicable) has voted to accept the Plan or is deemed to have accepted the Plan under Bankruptcy Code § 1126(f). Except as otherwise provided in the Plan or this Confirmation Order, all holders of liens, Claims, and/or Equity Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against any property that is to be distributed under the terms of the Plan or under the GUC Trust Agreement or Liquidation Trust Agreement, the Responsible Person, the GUC Trustee, the Liquidation Trustee, or their respective Assets any of the following actions on account of such Claim or Equity Interest: (a) commencing or continuing in any manner any action or other proceeding on account of such Lien, Claim, or Equity Interest against property to be distributed under the terms of the Plan or under the GUC Trust Agreement or Liquidation Trust Agreement, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, lien, or order against any of the property to be distributed under the terms of the Plan or under the GUC Trust Agreement or Liquidation Trust Agreement, other than as permitted under subclause (a) of this sentence; (c) creating, perfecting, or enforcing any lien, claim, or encumbrance against any property to be distributed under the terms of the Plan or under the GUC Trust Agreement or Liquidation Trust Agreement; (d) asserting any right of subrogation of any kind, directly or indirectly, against any obligation due the Debtors, the Responsible Person, the GUC Trustee, the Liquidation Trustee or any of their respective Assets or any other property of the Debtors, the Responsible Person, the GUC Trust, or Liquidation Trust, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this Order, the GUC Trust Agreement, and the Liquidation Trust Agreement.

**Automatic Stay**. In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all beneficiaries and creditors holding Claims against the Debtors, the Estates, the GUC Trust Assets, the Responsible Person, the GUC Trustee, the GUC Trust and the trust Assets until the final distribution.

**R.    Withdrawal and Allowance of Certain Claims**

22.    Upon the Effective Date, the Senior Secured Term Loan Lenders and the Senior Secured Term Loan Agent shall be deemed to have waived any unsecured deficiency claim resulting from a Distribution less than the extent of the Senior Secured Term Loan Claims.

**S.    Causes of Action**

23.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing contained herein shall enjoin or otherwise prohibit any plaintiff from continuing to prosecute, and no Debtor shall be released and/or exculpated from, any causes of action commenced prior to the Petition Date against any Debtor where a prior order of the Bankruptcy Court or agreement with such Debtor has granted such plaintiff relief from the automatic stay pursuant to 11 U.S.C. § 362, solely to the extent such relief from stay has been granted and solely to the extent provided in such order granting relief from stay.

**T.    Exemption from Transfer Taxes and Recordation Fees**

24.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**U.    The Creditors Committee**

25.    Upon the Effective Date, the Creditors Committee shall exist, and its Professionals shall remain engaged solely with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

## V.     Executory Contracts and Unexpired Leases

26.     Other than as provided herein, this Order constitutes the approval under sections 363 and 365 of the Bankruptcy Code of the deemed rejection of all executory contracts that exist between the Debtors and any Person as of immediately prior to the Confirmation Date, except for any executory contract (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) that is specifically designated as a contract to be assumed on Schedule 7.1 of the Plan Supplement.

27.     This Order further constitutes: (a) the approval under section 365 of the Bankruptcy Code of the assumption of the executory contracts and unexpired leases assumed under the Plan; and (b) the approval under section 365 of the Bankruptcy Code of the rejection of the executory contracts and unexpired leases rejected under the Plan.  To the extent that an executory contract or unexpired lease is assumed under the Plan, the amount of cure with respect to such executory contract or unexpired lease shall be either (i) if undisputed, deemed cured and satisfied upon entry of this Order and payment of any such cure amount, in the amount previously noticed by the Debtors, as of the Effective Date, or (ii) if disputed, cured and satisfied pursuant to further Order of the Court or as otherwise agreed upon by the parties.  From the date of the entry of this Order or any other order determining the cure amount with respect to such executory contract or unexpired lease, the counterparties to such executory contract or unexpired lease shall not be entitled to or have any further right to receive any Distribution or payment from the Debtors or the Debtors' estates on account of amounts due and owing under such executory contracts or unexpired leases prior to the Effective Date, including pre-Effective Date defaults.  Any counterparty to an executory contract or unexpired lease that is assumed  under

the Plan that did not file an objection to such assumption or the proposed cure amount for executory contract or unexpired lease within the deadlines established in the Plan is deemed to consent to the assumption such executory contract or unexpired lease and to the cure amount relating thereto.

28.     The rejection of executory contracts and unexpired lease as set forth in the Plan is approved.  Any Claims resulting from the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan must be filed with the Bankruptcy Court and served on the Debtors, the Responsible Person and the GUC Trustee no later than thirty (30) days after service of notice of the Effective Date.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan and any other applicable provisions of the Plan.

## W.     Administrative Claims and Final Fee Applications

29.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, "Administrative Claims" shall mean Claims for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises), other than claims for Accrued Professional Compensation.  Any fees or charges assessed against the Estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claim and shall be paid in accordance with Article V.N. of the Plan. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability, including interest thereon, described

in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

30.    Requests for payment of Administrative Claims, together with accompanying documentation, must be filed with the Bankruptcy Court on or before 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date.  Each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of Administrative Claim (a) by mailing, hand delivering or delivering by courier service such request for payment of Administrative Claim to the Clerk of the Bankruptcy Court at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 or (ii) by using the Bankruptcy Court's CM/ECF electronic filing system.  The request for payment of an Administrative Claim will be timely filed only if it is <u>actually received</u> by the Bankruptcy Court by 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date.

31.    The Responsible Person shall pay, from the assets vesting in the Liquidating Trust, each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) if such Claim is Allowed as of the Effective Date, on the Effective Date; (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Responsible Person; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however*, that Administrative Claims filed after the Administrative Claims Bar Date or Administrative Claims filed or asserted pursuant to section 503(b)(9) of the Bankruptcy Code after the General Bar Date shall be disregarded and not

Allowed, unless the Responsible Person, in its discretion, chooses to treat such untimely Claims, or any portion thereof, as Administrative Claims.

32.     All Professionals in these Chapter 11 Cases, other than those Professionals who have been otherwise relieved of the requirement to file fee applications by prior orders of the Court, shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claims Bar Date for fees and expenses arising under sections 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications required by the Bankruptcy Code and the Bankruptcy Rules in accordance with this Order.   All such Professionals shall file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in these Chapter 11 Cases through the Effective Date by no later than sixty (60) days following the Effective Date.  The U.S. Trustee, the Debtors, the Responsible Person and the Creditors Committee shall have forty-five (45) days from the filing of such final fee applications to formally object to any such fee applications, and, in the event such formal objection is timely filed, the Court will schedule a hearing to determine all objections to such applications for final allowances of compensation or reimbursement of expenses under sections 328, 330 or 503(b) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, nothing shall prohibit the Responsible Person from continuing to pay the Professionals in the ordinary course and in accordance with prior orders of this Court including, without limitation, the *Order Granting Motion of Debtors and Debtors in Possession for Authorization to Retain and Pay Professionals Utilized by the Debtors in the Ordinary Course of Business* [D.I. 191], entered on July 11, 2013, and the *Order Granting Motion of the Debtors and Debtors in Possession for an Administrative Order Establishing Procedures for Interim*

*Compensation and Reimbursement of Expenses of Professionals* [D.I. 192], entered on July 11, 2013 for fees or expenses incurred prior to the Effective Date.

**X.     Transfers of Claims After the Effective Date**

33.     Neither the Responsible Person nor the GUC Trustee shall have any obligation to recognize the transfer of any Claim that occurs after the Effective Date, and will be entitled, for all purposes, to recognize and distribute only to holders of Allowed Claims, who are listed as holders of such Claims in the official claims registry as of the Effective Date.

**Y.     Substantive Consolidation**

34.     The substantive consolidation of the Debtors' Estates as provided for in the Plan is hereby approved.  As such, upon the Effective Date, without the need for further order of the Bankruptcy Court or motion of, or notice from, the Debtors, the Responsible Person, or the GUC Trustee, the Chapter 11 Cases of Debtors OSH 2 Liquidating LLC and OSH 3 Liquidating LLC (Case Nos. 13-11566 (CSS) and 13-11567 (CSS), respectively) shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen such cases pursuant to section 350(b) of the Bankruptcy Code, and (i) all motions, contested matters, adversary proceedings and other matters with respect to those closed cases and those Debtors shall be administered in in the case of Debtor OSH 1 Liquidating Corporation (Case No. 13-11565 (CSS)) without prejudice to the rights of any party in interest, (ii) the caption of the case of OSH 1 Liquidating Corporation shall be amended to reflect that it is the only remaining open case, and (iii) a docket entry shall be made in each of the closed cases that reflects their closure pursuant hereto.

**Z.     Exemption from Securities Laws**

35.     Pursuant to Section 1145 of the Bankruptcy Code the offer, issuance, sale and transfer of any security in accordance with the Plan or this Order shall be exempt under section 5

of the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration for the offer, issuance, dissolution, or sale of a security. Any transfer of the beneficial interests in the Debtors shall be restricted as set forth in the Debtors' organizational documents and subject to the provisions of Section 1145 of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the Securities Act of 1933, as amended, and compliance with any applicable rules and regulations of the Securities and Exchange Commission.

## AA.    Modifications

36.    The modifications to the First Amended Plan to the Plan, and to the Plan set forth in this Order, constitute non-material changes and do not materially adversely affect or change the treatment of any Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or re-solicitation of votes under Section 1126 of the Bankruptcy Code.

## BB.    Payment of Statutory Fees

37.    All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Responsible Person shall pay any and all such fees payable, when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

## CC.    References to Plan Provisions

38.    The Plan is confirmed in its entirety and hereby incorporated into this Order by reference and as modified hereby. The failure to reference or discuss any particular provision of

the Plan in this Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order.

**DD.  Headings**

39.    Headings utilized herein are for convenience and reference only, and shall not constitute a part of this Order for any other purpose.

**EE.  Effect of Conflict Between Plan and Confirmation Order**

40.    The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each.  If there is any conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control solely to the extent of the conflict.

**FF.  Notice of Effective Date**

41.    As soon as reasonably practicable, but in no event later than five (5) Business Days after the Effective Date, the Debtors with the assistance of the Debtors' Claims and Servicing Agent, shall serve a notice of the Effective Date on all holders of Claims and Equity Interests and all counterparties to executory contracts.  The notice of Effective Date shall include notice of (a) the bar date for filing rejection damage claims (or other claims for damages) arising from the rejection under the Plan of executory contracts or unexpired leases, which shall be thirty 30 days after service of notice of the Effective Date, and (b) the last day for filing final applications or motions for professional fees and expenses pursuant to Article II.B of the Plan, which shall be no later than thirty (30) days after service of notice of the Effective Date, unless otherwise extended by agreement of the claimant and the Responsible Person.

## GG.  Final Order

42.    This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

43.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

44.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

## HH.  Authorization to Consummate

45.    The Debtors are authorized to consummate the Plan at any time after the entry of this Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article VIII of the Plan.

## II.  Miscellaneous

46.    Notwithstanding anything to the contrary contained in the Plan or this Order, no Distribution to holders of Administrative Claims, Priority Tax Claims, Other Priority Claims, Class 1 Senior Secured Term Loan Claims or Class 2 Other Secured Claims  shall occur until the earlier of (i) an order of the Court authorizing such Distributions obtained upon notice to the entities identified in this paragraph or (ii) the consent of the Internal Revenue Service, California

Franchise Tax Board, Sears Brands Management Corporation and Orchard Supply Company, LLC (which consent shall not be unreasonably withheld or delayed and which consent shall be related solely to the amounts set forth in each of the respective parties' proof of claim); *provided, however*, that solely with respect to Orchard Supply Company, LLC, such amount shall be related solely to the amounts set forth in any demand letter previously sent to the Debtors by Orchard Supply Company, LLC.    Notwithstanding the foregoing, $2,047,398.03 shall be set aside as a separate adequate reserve to satisfy the administrative claim portion of Sears Brands Management Corporation's proof of claim and such administrative claim shall be paid from such reserve upon resolution of the claim.

47.    Notwithstanding anything to the contrary contained in the Plan or this Order, Article IX.F of the Plan shall not be construed to (i) provide a discharge under section 1141 of the Bankruptcy Code or (ii) modify the third-party releases as described in Paragraph 21 herein.

48.    Article IX.F.1 of the Plan shall be deleted in its entirety and replaced as follows: "Except with respect to those obligations otherwise provided for in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Responsible Person, the Liquidation Trust, the Liquidation Trustee, the Creditors Committee, the GUC Trust, and the GUC Trustee, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order."

49.    Nothing contained in Article IV.F of the Plan is intended to expand the obligations of the parties under the Final APA, that certain Transition Services Agreement by

and between the Purchaser and Orchard Supply Hardware Stores Corporation, dated as of August 29, 2013, and related documents.

50.     Notwithstanding anything to the contrary contained in the Plan or this Order, the Responsible Person shall pay the full unpaid amount of any Allowed Priority Tax Claim relating to Claims filed by FTB and the IRS, plus interest at the rate determined under 11 U.S.C. § 511, from and after the Effective Date until the date of payment, on the later of (i) the Effective Date or as soon as practicable thereafter, or (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter.

51.     Notwithstanding any provision to the contrary in the Plan, this Order confirming the Plan, and any implementing Plan documents (collectively, the "Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service (the "IRS") or California Franchise Tax Board (the "FTB") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) affect the rights of the IRS and FTB to assert setoff and recoupment and such rights are expressly preserved; or (3) preclude the IRS or FTB from amending its Claims in accordance with applicable federal bankruptcy law; or (4) discharge any claim of the IRS or FTB as described in 11 U.S.C. Section 1141(d)(6).  To the extent the IRS or FTB Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, the IRS and FTB Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622 and 11 U.S.C.§ 511, as applicable.  IRS and FTB Allowed administrative expense claims shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Moreover, nothing in the Documents shall: (a) effect a release, discharge

or otherwise preclude any claim whatsoever against any of the Debtors or the Debtors' Estates by or on behalf of the IRS or FTB relating to any Claim arising out of any unfiled pre-petition tax return or any pending audit or audit which may be performed with respect to any pre-petition tax return; and (b) nothing shall enjoin the IRS or FTB from amending any claim against any Debtors or their successors with respect to any Claim arising as a result of the filing of an unfiled return or a pending audit or audit which may be performed with respect to any pre-petition or administrative tax return. Further, any Claim arising as a result of an unfiled return or final resolution of a pending audit or audit which may be performed with respect to any pre-petition tax return shall be paid in accordance with 11 U.S.C. Sections 1129(a)(9)(A) and (C).

52.     Notwithstanding anything to the contrary, nothing in the Plan or this Order, together with all exhibits thereto, either in their respective present forms or as they may be altered, amended, modified or supplemented from time to time, shall prejudice in any way the direct rights, claims or causes of action, if any, that may be capable of assertion by Alamo Group against A&G Realty Partners LLC ("A&G") and its agents and employees arising in connection with, or as a result of, the conduct of A&G and its agents and employees with respect to Alamo Group's purchase of the Debtors' lease designation rights.

IT IS SO ORDERED.

Dated: December 20, 2013
      Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**(Plan)**

**Exhibit A**

**(Plan)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                 :

In re:                           :   Chapter 11

                                   :

OSH 1 Liquidating Corporation., *et al.*, (f/k/a       :   Case No. 13-11565 (CSS)
Orchard Supply Hardware Stores Corporation,
*et al.*,[1]                              :   (Jointly Administered)

                                     :

                 Debtors.                   :
-------------------------------------------------------------x

## DEBTORS' MODIFIED FIRST AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Stuart M. Brown (DE 4050)            Richard A. Chesley (IL 6240877)
**DLA PIPER LLP (US)**                Chun I. Jang (DE 4790)
1201 North Market Street, Suite 2100    Daniel M. Simon (IL 6297629)
Wilmington, Delaware 19801          **DLA PIPER LLP (US)**
Telephone: (302) 468-5700           203 N. LaSalle Street, Suite 1900
Facsimile: (302) 394-2341           Chicago, Illinois 60601
Email:   stuart.brown@dlapiper.com    Telephone: (312) 368-4000
                                     Facsimile: (312) 236-7516
                                     Email:   richard.chesley@dlapiper.com
                                            chun.jang@dlapiper.com
                                            daniel.simon@dlapiper.com


Dated:   December 6, 2013           *Attorneys for Debtors and Debtors in*
           Wilmington, Delaware        *Possession*

---

[1]    The Debtors were the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): OSH 1 Liquidating Corporation f/k/a Orchard Supply Hardware Stores Corporation (4109), OSH 2 Liquidating LLC f/k/a Orchard Supply Hardware LLC (3395) and OSH 3 Liquidating LLC f/k/a OSH Properties LLC (3391). On August 20, 2013, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets which provided, among other things, that the Debtors were required to cease using the "Orchard Supply Hardware" name after closing of the sale.

# TABLE OF CONTENTS

| ARTICLE | | | PAGE |
|---|---|---|---|
| ARTICLE I. | | DEFINED TERMS AND RULES OF INTERPRETATION | 1 |
| | A. | Defined Terms | 1 |
| | B. | Rules of Interpretation | 9 |
| | C. | Exhibits | 10 |
| ARTICLE II. | | ADMINISTRATIVE AND PRIORITY CLAIMS | 10 |
| | A. | Establishment of the Administrative Claims Bar Date | 10 |
| | B. | Administrative Claims | 11 |
| | C. | Professional Compensation and Reimbursement Claims | 11 |
| | D. | Priority Tax Claims | 11 |
| | E. | Other Priority Claims | 11 |
| ARTICLE III. | | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 12 |
| | A. | Summary | 12 |
| | B. | Classification and Treatment of Claims and Equity Interests | 13 |
| | C. | Special Provision Governing Unimpaired Claims | 14 |
| | D. | Nonconsensual Confirmation | 14 |
| ARTICLE IV. | | MEANS FOR IMPLEMENTATION OF THE PLAN | 15 |
| | A. | Responsible Person to Effectuate Distributions | 15 |
| | B. | The GUC Trust | 15 |
| | C. | Funding of GUC Trust Pursuant to Settlement Between the Debtors, the Creditors Committee and the Senior Secured Term Loan Lenders | 15 |
| | D. | The Responsible Person and GUC Trustee | 15 |
| | E. | Role of the Responsible Person | 16 |
| | F. | Responsible Person's Tax Powers | 17 |
| | G. | Cash | 18 |
| | H. | Costs and Expenses of the Responsible Person and GUC Trustee | 18 |
| | I. | Retention of Professionals by the Responsible Person and GUC Trustee | 18 |
| | J. | Tax Reporting | 18 |
| | K. | Dissolution | 18 |
| | L. | Indemnification of the Responsible Person and GUC Trustee | 19 |
| | M. | Optional Liquidation Trust | 19 |

# TABLE OF CONTENTS
## (continued)

| **ARTICLE** | | | **PAGE** |
|---|---|---|---|
| | N. | Cancellation of Existing Securities and Agreements | 20 |
| | O. | Operations of the Debtors Between the Confirmation Date and the Effective Date | 20 |
| | P. | Fee Auditor | 21 |
| | Q. | Automatic Stay | 21 |
| | R. | The Committee | 21 |
| | S. | Books and Records | 21 |
| | T. | Substantive Consolidation; Closing of Certain of the Chapter 11 Cases | 22 |
| | U. | D&O Insurance Policies | 22 |
| ARTICLE V. | | PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS | 22 |
| | A. | Voting of Claims | 22 |
| | B. | Distribution Dates | 23 |
| | C. | Disbursing Agents | 23 |
| | D. | Record Date for Distributions | 23 |
| | E. | Delivery of Distributions | 24 |
| | F. | Undeliverable and Unclaimed Distributions | 24 |
| | G. | Manner of Cash Payments Under the Plan | 25 |
| | H. | Compliance with Tax Requirements | 25 |
| | I. | No Payments of Fractional Dollars | 25 |
| | J. | Interest on Claims | 25 |
| | K. | No Distribution in Excess of Allowed Amount of Claim | 26 |
| | L. | Setoff and Recoupment | 26 |
| | M. | De Minimis Distributions; Charitable Donation | 26 |
| | N. | United States Trustee Fees | 26 |
| | O. | Withholding from Distributions | 27 |
| | P. | No Distributions on Late-Filed Claims | 27 |
| ARTICLE VI. | | DISPUTED CLAIMS | 28 |
| | A. | Disputed Claims Reserve | 28 |
| | B. | Resolution of Disputed Claims | 28 |
| | C. | Objection Deadline | 28 |

# TABLE OF CONTENTS
## (continued)

| ARTICLE | | | PAGE |
|---|---|---|---|
| | D. | Estimation of Claims | 28 |
| | E. | No Distributions Pending Allowance | 29 |
| | F. | Resolution of Claims | 29 |
| ARTICLE VII. | | TREATMENT OF EXECUTORY CONTRACTS | 30 |
| | A. | Assumption or Rejection of Executory Contracts and Unexpired Leases | 30 |
| | B. | Cure of Defaults | 30 |
| | C. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 30 |
| | D. | Indemnification and Reimbursement | 31 |
| | E. | Certain Insurance Policy Matters | 31 |
| ARTICLE VIII. | | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 32 |
| | A. | Conditions Precedent | 32 |
| | B. | Waiver | 33 |
| ARTICLE IX. | | INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS | 33 |
| | A. | Compromise and Settlement | 33 |
| | B. | Releases | 34 |
| | C. | Exculpation | 35 |
| | D. | Withdrawal and Release of Certain Claims | 35 |
| | E. | Preservation of Causes of Action | 35 |
| | F. | Injunction | 36 |
| | G. | Releases of Liens | 37 |
| ARTICLE X. | | RETENTION OF JURISDICTION | 38 |
| ARTICLE XI. | | MISCELLANEOUS PROVISIONS | 39 |
| | A. | Modification of Plan | 39 |
| | B. | Revocation of Plan | 39 |
| | C. | Binding Effect | 40 |
| | D. | Successors and Assigns | 40 |
| | E. | Governing Law | 40 |
| | F. | Reservation of Rights | 40 |
| | G. | Article 1146 Exemption | 40 |

**TABLE OF CONTENTS**
**(continued)**

| ARTICLE | | PAGE |
|---|---|---|
| H. | Section 1125(e) Good Faith Compliance | 41 |
| I. | Further Assurances | 41 |
| J. | Service of Documents | 41 |
| K. | Filing of Additional Documents | 42 |
| L. | No Stay of Confirmation Order | 42 |

---

## DEBTORS' MODIFIED FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

Pursuant to the Bankruptcy Code,[2] the Debtors in the above-captioned cases hereby respectfully propose the following Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code.

### ARTICLE I.

### DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

**1.**     "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court) for legal, financial advisory, accounting, liquidation and other professional services and reimbursement of expenses of such professionals that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, including in connection with (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Expenses arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.  To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

**2.**     "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation:  the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises).  Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the

---

[2]     All capitalized terms not otherwise defined herein shall be subject to the definition of such capitalized terms in Article I.A. hereof.

EAST\66820732.2

definition of Administrative Expense Claim and shall be paid in accordance with Article V.N of the Plan. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

3.      "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated in Article II herein.

4.      "*Allowed*" means, with respect to any Claim against the Debtors, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules filed in the Chapter 11 Cases as other than disputed, contingent or unliquidated and as to which the Debtors or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Cases and that either is not Disputed or has been allowed by a Final Order; or (c) a Claim filed in the Chapter 11 Cases that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with the Responsible Person or GUC Trustee, as applicable, of amount and nature of Claim executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms of this Plan or (e) a Disputed Claim that the Debtors, Responsible Person and/or the GUC Trustee (as applicable) ultimately determine will not be objected to (such claim being deemed Allowed at the time such determination is made).

5.      "*Bankruptcy Code*" means Articles 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

6.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

7.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the U.S. Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the U.S. District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

8.      "*Bar Date Order*" means that certain order of the Bankruptcy Court dated as of September 5, 2013 [D.I. 540], establishing October 25, 2013 as the general bar date for filing proofs of Claim in the Chapter 11 Cases, with only those exceptions permitted thereby.

9.      "*Books and Records*" means, with respect to the Debtors, all books and records of such Debtor(s), including, without limitation, all documents and communications of any kind, whether physical or electronic.

10.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

EAST\66820732.2

    **11.** "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

    **12.** "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code) against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

    **13.** "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and with the following case numbers: 13-11565 (CSS), 13-11566 (CSS) and 13-11567 (CSS), which are jointly administered under case number 13-11565 (CSS).

    **14.** "*Claim*" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim, as such term is defined in section 101(5) of the Bankruptcy Code.

    **15.** "*Claims Agent*" means BMC Group, Inc., the Bankruptcy Court appointed claims, and noticing agent in these jointly administered Chapter 11 Cases.

    **16.** "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim, which shall be one hundred twenty (120) days after the Effective Date; *provided, however*, that the Debtors, the Responsible Person or the GUC Trustee may seek additional extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. A party requesting to extend the Claims Objection Bar Date may specify which entities may benefit from such an extension.

    **17.** "*Class*" means a category of holders of Claims or Equity Interests as set forth in ARTICLE III herein and pursuant to section 1122(a) of the Bankruptcy Code.

    **18.** "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

    **19.** "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance satisfactory to the Senior Secured Term Loan Lenders and, solely with respect to the provisions of the Confirmation Order approving Articles III.B.3, IV.B, IV.C, IV.D, IV.I, IV.L, IV.R, VI, IX.B and IX.C of the Plan, the Creditors Committee; provided however, the Creditors Committee shall

have the right to be consulted on and consent to any proposed modification of the Confirmation Order that adversely affects the rights of holders of General Unsecured Claims, the GUC Trust or the GUC Trustee.

20.   *"Creditor"* shall have the meaning in section 101(10) of the Bankruptcy Code.

21.   *"Creditors Committee"* means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

22.   *"D&O Insurance Policies"* means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors and officers.

23.   *"Debtors"* means collectively, OSH 1 Liquidating Corporation, OSH 2 Liquidating LLC and OSH 3 Liquidating LLC and where applicable, the Estates thereof.

24.   *"Designation Rights Sale"* means the sale to a purchaser of the Debtors' rights to assume and assign the Debtors' real property leases not assumed by the Purchaser under the Final APA.

25.   *"DIP Financing"* means the postpetition financing provided to the Debtors by the DIP Lenders pursuant to and under the DIP Orders.

26.   *"DIP Lenders"* means the lenders party to the DIP Financing under the DIP Orders.

27.   *"DIP Orders"* means, collectively, the *Final Order Pursuant to 11 U.S.C Sections 105, 361, 362, 363 and 363 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness from Pre-Petition ABL and Supplemental Term Lenders with Priority Over All Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection, and (4) Modifying the Automatic Stay* [D.I. 253] and *Final Order Pursuant to 11 U.S.C Sections 105, 361, 362, 363 and 363 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness from Pre-Petition Term Lenders with Priority Over All Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Providing for Adequate Protection, and (4) Modifying the Automatic Stay* [D.I. 254].

28.   *"Disbursing Agent"* means the person or entity empowered and authorized to make all Distributions pursuant to Article V.C herein.

29.   *"Disclosure Statement"* means the *Disclosure Statement for the Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code*, dated October 9 2013, prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court, as amended, supplemented or modified from time to time.

EAST\66820732.2

30.    *"Disputed"* means, with respect to any Claim:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtors, the Responsible Person, the GUC Trustee or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

31.    *"Disputed Claims Reserve"* means the reserve funds created pursuant to Article VI.A. herein.

32.    *"Distributions"* means the distributions of Cash to be made in accordance with the Plan.

33.    *"Effective Date"* means a Business Day selected by the Debtors and the Senior Secured Term Loan Lenders that is on or after the date by which all conditions precedent specified in ARTICLE VIII of the Plan have been satisfied or waived.  Within five (5) Business days of the Effective Date, notice of the Effective Date shall be filed in the Bankruptcy Court.

34.    *"Entity"* has the meaning set forth in section 101(15) of the Bankruptcy Code.

35.    *"Equity Interest"* means any equity interest in a Debtor that existed immediately prior to the Petition Date.

36.    *"Escrow Agreement"* means that certain agreement dated as of October 28, 2013 between Citibank, N.A., as Escrow Agent, OSH 1 Liquidating Corporation and Zolfo Cooper LLC.

37.    *"Estates"* means the Debtors' estates created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

38.    *"Fee Auditor"* means Warren H. Smith & Associates, P.C.

39.    *"Fee Auditor Order"* means the *Order Appointing Fee Auditor and Establishing Related Procedures Concerning the Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications* [D.I. 500].

40.    *"Final APA"* means that certain Amended and Restated Asset Purchase Agreement dated as of August 20, 2013, by and among Orchard Supply Company, LLC as Purchaser and Orchard Supply Hardware Stores Corporation as Seller and Orchard Supply Hardware LLC and OSH Properties LLC as Company Subsidiaries.

41.    *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

42.    *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for

EAST\66820732.2

reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

43.   "*General Bar Date*" means October 25, 2013 as established in the Bar Date Order.

44.   "*General Unsecured Claims*" means Claims against any Debtor that are not Administrative Claims, Accrued Professional Compensation Claims, Senior Secured Term Loan Claims, Other Secured Claims, Priority Tax Claims, Other Priority Claims, or Equity Interests. For the avoidance of doubt, General Unsecured Claims shall not include any unsecured deficiency claims of the Senior Secured Term Loan Claims pursuant to Article IX.D herein.

45.   "*GOB Sales*" means store closing sales conducted by Great American Group WF, LLC, as the Debtors' liquidating agent, at the Debtors' store locations not included in the Final APA.

46.   "*GUC Trust*" means the liquidating trust created pursuant to the Plan and the GUC Trust Agreement.

47.   "*GUC Trust Agreement*" means the agreement establishing the GUC Trust, dated as of the Effective Date, and which shall be filed as part of the Plan Supplement.

48.   "*GUC Trust Distributable Cash*" means the Cash to be funded into the GUC Trust pursuant to Article IV.C of the Plan and any other assets of the GUC Trust reduced to Cash net of all expenses and costs of operating the GUC Trust and establishing any reserves as the GUC Trustee may determine is necessary in its sole discretion pursuant to the terms of the GUC Trust Agreement.

49.   "*GUC Trust Distribution*" means the distributions of GUC Trust Distributable Cash to be made by the GUC Trustee in accordance with the terms of the Plan and the GUC Trust Agreement.

50.   "*GUC Trustee*" means Sltn Trust LLC (dba Solution Trust) or such other Person as may be designated by the Creditors Committee in the Plan Supplement and any successor to such Person.

51.   "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

52.   "*Indemnified Persons*" means the Responsible Person and the GUC Trustee, and the Responsible Person's and GUC Trustee's employees, officers, directors, agents, Representatives, and Professionals, as the case may be.

53.   "*Lien*" shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

EAST\66820732.2

54.    "*Liquidation Trust*" shall have the meaning set forth in Article IV.M. hereof.

55.    "*Liquidation Trust Agreement*" means an agreement establishing the Liquidation Trust, dated as of the Effective Date, which may be filed as part of the Plan Supplement.

56.    "*Liquidation Trustee*" shall have the meaning set forth in Article IV.M. hereof.

57.    "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

58.    "*Other Secured Claim*" means, other than Senior Secured Term Loan Claims, any Claim secured by a Lien on collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

59.    "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof or any other form of legal entity or enterprise.

60.    "*Petition Date*" means June 17, 2013, the date on which the Debtors filed the Chapter 11 Cases.

61.    "*Plan*" means this Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code including exhibits and supplements, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code or the Bankruptcy Rules.

62.    "*Plan Supplement*" means the supplement to the Plan containing certain documents and forms of documents specified in the Plan, which documents and forms shall be filed with the Bankruptcy Court no later than fourteen (14) days prior to the commencement of the hearing on confirmation of the Plan.

63.    "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

64.    "*Pro Rata*" shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

65.    "*Professionals*" means any Person employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code, including, without limitation, the Fee Auditor.

66.    "*Purchaser*" means Orchard Supply Company, LLC, a Delaware limited liability company.

-7-                                                                                    EAST\66820732.2

67. *"Record Date"* means the date that the Disclosure Statement is approved by the Bankruptcy Court.

68. *"Released Parties"* means, collectively, the Debtors, the Debtors' current and former directors and officers, the Debtors' Professionals, the Senior Secured Term Loan Lenders and their current and former affiliates, the Senior Secured Term Loan Agent and their current and former affiliates, and the DIP Lenders, and the current and former Representatives of each of the foregoing. For the avoidance of doubt, the Released Parties shall not include Purchaser or its affiliates.

69. *"Representatives"* means, with regard to an Entity (including the Debtors), any current or former officers, directors, employees, attorneys, Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

70. *"Responsible Person"* shall mean Bradley Dietz, or such other person as the Senior Secured Term Loan Steering Committee may choose in their sole discretion.

71. *"Schedules"* mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

72. *"Secured Claims"* means Claim(s) against the Debtors that are secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

73. *"Senior Secured Term Loan"* means that certain Amended and Restated Senior Secured Term Loan Agreement dated as of December 22, 2011 and all documents and instruments executed in connection therewith.

74. *"Senior Secured Term Loan Agent"* means Cortland Products Corp. f/k/a Gleacher Products Corp., as administrative and collateral agent under the Senior Secured Term Loan.

75. *"Senior Secured Term Loan Claims"* means those Claims asserted in connection with the Senior Secured Term Loan.

76. *"Senior Secured Term Loan Lenders"* means the lenders under the Senior Secured Term Loan.

77. *"Senior Secured Term Loan Steering Committee"* means, collectively, ACA CLO 2006-1 Ltd., ACA CLO 2006-2 Ltd., ACA CLO 2007-1 Ltd., Apidos CDO I, Apidos CDO II, Apidos CDO III, Apidos CDO IV, Apidos CDO V, Apidos Cinco CDO, Apidos Quattro CDO, San Gabriel CLO I Ltd., Shasta CLO I Ltd., Sierra CLO II Ltd., Whitney CLO I Ltd., ECP CLO 2008-1, Ltd., Comstock Funding Ltd., Cannington Funding Ltd., Greens Creek Funding Ltd.,

Credit Suisse Loan Funding LLC, Grace Bay Holdings II LLC, Baker Street CLO II Ltd., Baker Street Funding CLO 2005-1 Ltd., Mountain View CLO II Ltd., Mountain View CLO III Ltd., and Mountain View Funding CLO 2006-1, Ltd., each of which is a Senior Secured Term Loan Lender.

78.     *"Tax Code"* means the United States Internal Revenue Code of 1986, as amended.

79.     *"Tax Returns"* means all tax returns, reports, certificates, forms or similar statements or documents, including amended tax returns or requests for refunds.

80.     *"U.S. Trustee"* means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

81.     *"Unimpaired"* means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

## B.     Rules of Interpretation

1.     For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' ''hereof'' and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.     Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan, shall be filed with the Clerk of the Bankruptcy Court not later than seven (7) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the

EAST\66820732.2

Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court, or on the website of the Debtors' Claims Agent at www.bmcgroup.com/OSH. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors' Claims Agent by a written request sent to the following address:

BMC Group, Inc.
Attention: OSH Claims Processing
PO Box 3020
Chanhassen, MN 55317-3020
Telephone: (800) 655-1129
E mail: bmc-osh@bmcgroup.com

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

**A.      Establishment of the Administrative Claims Bar Date**

      **1.**      Except as otherwise provided herein, on or before 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court and serve on counsel for (i) the Debtors, (ii) the Senior Secured Term Loan Agent, (iii) the Creditors Committee, and (iv) the Responsible Person, any request for payment of an Administrative Claim. Requests for payment of an Administrative Claim must include at a minimum: (i) the name of the holder of the Administrative Claim; (ii) the amount of the Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) all supporting documentation for the Administrative Claim.

      **2.**      The request for payment of an Administrative Claim will be timely filed only if it is filed with the Bankruptcy Court by 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date. Requests for payment of Administrative Claims may **not** be delivered by facsimiles, telecopy, or electronic mail transmission.

      **3.**      Notwithstanding anything herein, the Debtors' Professionals, the Creditors Committee's Professionals and the Fee Auditor shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claims Bar Date for fees and expenses arising under sections 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules and the Confirmation Order. For the avoidance of doubt, any professionals retained by the Senior Secured Term Loan Agent or the Senior Secured Term Loan Steering Committee shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claims Bar Date for fees and expenses.

**B.      Administrative Claims**

      The Responsible Person shall pay, from the Debtors' assets, each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid

-10-

amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Responsible Person; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Claims do not include Administrative Claims filed after the Administrative Claims Bar Date or Administrative Claims filed or asserted pursuant to section 503(b)(9) of the Bankruptcy Code after the General Bar Date, unless the Responsible Person, in its discretion, chooses to treat such Claims as Administrative Claims.

## C.    Professional Compensation and Reimbursement Claims

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be sixty (60) days after the Effective Date. Any Professional or other Person or Entity that is required to file and serve a request for approval of Accrued Professional Compensation and fails to timely file and serve such request on or before such date shall be forever barred, estopped and enjoined from asserting such request or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors or the Creditors Committee, shall provide to the Debtors an estimate of their Accrued Professional Compensation through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) before the Effective Date.

## D.    Priority Tax Claims

The Responsible Person shall pay, from the Debtors' assets, each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## E.    Other Priority Claims

The Responsible Person shall pay, from the Debtors' assets, each holder of an Allowed Other Priority Claim, in satisfaction of such Allowed Other Priority Claim, the full unpaid amount of such Allowed Other Priority Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Allowed Other Priority Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary

1.    The Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail below, for the purposes of voting, determining which Claims and Equity Interests will be entitled to vote to accept or reject the Plan, confirmation of the Plan and the resultant treatment of and cancellation of Claims and Equity Interests and distribution of assets, interests and other property under the terms herein.  Accordingly, the Plan shall serve as a motion of the Debtors seeking entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors as provided for herein.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims and Other Priority Claims, as described in Article II.

2.    The following table classifies Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

3.    Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Senior Secured Term Loan Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired and No Distribution | Deemed to Reject |

EAST\66820732.2

**B.**     **Classification and Treatment of Claims and Equity Interests**

    **1.**     **Senior Secured Term Loan Claims (Class 1)**

        **(a)**     **Classification**: Class 1 consists of Senior Secured Term Loan Claims.

        **(b)**     **Treatment**: After (i) payment of Allowed Other Secured Claims in Class 2, (ii) payment to the GUC Trust pursuant to the terms of Article IV.C for the benefit of holders of Allowed General Unsecured Claims in Class 3, and (iii) subject to the limitations in Article VI.A, reservation of sufficient funds necessary (a) to satisfy the Disputed Claims Reserve with respect to Disputed Claims, (b) for the Responsible Person to carry out its duties, and (c) to pay outstanding Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims in full, each holder of a Senior Secured Term Loan Claim in Class 1 shall receive its *Pro Rata* share of all of the remaining assets of the Debtors, including any and all Cash and the proceeds of the liquidation of assets obtained by the Debtors or the Debtors' Estates prior to, on, or after the Effective Date. Subject to (i), (ii), and (iii) above and Article IV.C, (i) on the Effective Date, the Responsible Person shall distribute to the Senior Secured Term Loan Agent, for distribution to the holders of Allowed Senior Secured Term Loan Claims, all of the assets remaining in the Debtors' Estates as of the Effective Date and (ii) after the Effective Date, the Responsible Person shall distribute to the Senior Secured Term Loan Agent, for distribution to the holders of Allowed Senior Secured Term Loan Claims, all Cash and all proceeds of the liquidation of other assets obtained by the Debtors after the Effective Date, including, but not limited to, all assets from the Disputed Claims Reserve returned to the Debtors' Estates pursuant to Article VI.A and all Cash collateral securing any outstanding letters of credit, as soon as practicable after such Cash and/or other assets are obtained by the Debtors.

        **(c)**     **Voting**: Class 1 is Impaired and, therefore, holders of Senior Secured Term Loan Claims in Class 1 are entitled to vote.

    **2.**     **Other Secured Claims (Class 2)**

        **(a)**     **Classification**: Class 2 consists of Other Secured Claims.

        **(b)**     **Treatment**: Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtors or the Purchaser prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Other Secured Claim shall receive, at the sole option of the Responsible Person, Cash in the full amount of such Allowed Other Secured Claim or the collateral securing its Allowed Other Secured Claim, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Other Secured Claim; and (iii) the date or dates agreed to by the Responsible Person and the holder of the Allowed Other Secured Claim.

        **(c)**     **Voting**: Class 2 is Unimpaired and, therefore, holders of Other Secured Claims in Class 2 are not entitled to vote to accept or reject the Plan.

EAST\66820732.2

3.      **General Unsecured Claims (Class 3)**

    **(a)**    **Classification**:  Class 3 consists of General Unsecured Claims.

    **(b)**    **Treatment**:  Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors or the Purchaser prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed General Unsecured Claim shall receive their Pro Rata share of GUC Trust Distributable Cash from the GUC Trust.  Distributions to holders of Allowed General Unsecured Claims shall be made as soon as practicable as the GUC Trustee may determine in its sole discretion.

    **(c)**    **Voting**:  Class 3 is Impaired and, therefore, holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      **Equity Interests (Class 4)**

    **(a)**    **Classification**:  Class 4 consists of Equity Interests.

    **(b)**    **Treatment**:  Class 4 is Impaired and will receive no Distribution under the Plan.  All equity interest/shares of stock in OSH 1 Liquidating Corporation., (f/k/a Orchard Supply Hardware Stores Corporation) shall be deemed cancelled upon the Effective Date.

    **(c)**    **Voting**:  Class 4 will receive no Distribution under the Plan and therefore, holders of Equity Interests in Class 4 are deemed to have rejected the Plan and are not entitled to vote on the Plan.

**C.      Special Provision Governing Unimpaired Claims**

    Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**D.      Nonconsensual Confirmation**

    If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to Impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by such Class of Claims.

          EAST\66820732.2

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Responsible Person to Effectuate Distributions

The Responsible Person shall be appointed for the sole purpose of liquidating and distributing the Debtors' assets and with no objective to continue or engage in the conduct of a trade or business.

### B.    The GUC Trust

On or before the Effective Date, the Debtors, on their own behalf and on behalf of the beneficiaries, shall execute the GUC Trust Agreement, in a form reasonably acceptable to the Creditors Committee, and all other necessary steps shall be taken to establish the GUC Trust. The GUC Trust shall be established for the sole purpose of adjudicating General Unsecured Claims and distributing the GUC Trust assets for the benefit of the beneficiaries of the GUC Trust with no objective to continue or engage in the conduct of a trade or business.  The GUC Trust shall be deemed to stand in the shoes of the Debtors for purposes of contesting, settling or compromising objections to General Unsecured Claims and shall be vested with all of the interests, rights and defenses to the General Unsecured Claims.  The GUC Trust shall be vested with all the powers and authority set forth in this Plan and the GUC Trust Agreement.  The GUC Trustee shall be responsible for reconciling and objecting to General Unsecured Claims and making distributions to Allowed General Unsecured Claims.

### C.    Funding of GUC Trust Pursuant to Settlement Between the Debtors, the Creditors Committee and the Senior Secured Term Loan Lenders

On the Effective Date, $500,000 will be paid from the Debtors' Estates to the GUC Trust for the benefit of holders of Allowed General Unsecured Claims whose prepetition debts were not assumed by the Purchaser under the Final APA.  The GUC Trust shall handle reconciliation of Claims for General Unsecured Claims only, with the GUC Trustee selected by the Creditors Committee.  In addition, the first $250,000 of any proceeds from the Designation Rights Sale shall be paid to the GUC Trust on the Effective Date (or such later time as they may be monetized).  In the event that the holders of Senior Secured Term Loan Claims receive a total Cash Distribution providing a net recovery of 90% of the Senior Secured Term Loan Claims, the next $1,500,000 of proceeds available for distribution from the Debtors' estates shall be paid to the GUC Trust.  The holders of Senior Secured Term Loan Claims shall receive all proceeds of the Sale in excess of the $1,500,000 described above, any proceeds of GOB Sales commenced prior to the closing of the sale to the Purchaser under the Final APA, and all proceeds of the Designation Rights Sale in excess of $250,000 until the holders of the Senior Secured Term Loan Claims receive a net recovery of 100%.

### D.    The Responsible Person and GUC Trustee

The Responsible Person and GUC Trustee shall be deemed to have been appointed as the respective Estates' representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of

EAST\66820732.2

the Bankruptcy Code. The Responsible Person and GUC Trustee shall be entitled to retain counsel and other professionals to carry out their respective duties.

### E.    Role of the Responsible Person

**1.**    In furtherance of and consistent with the purpose of the Plan, the Responsible Person shall, among other things, have the rights, powers and duties, subject to the limitations set forth herein: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Debtors' assets, including investigating, prosecuting and resolving the Causes of Action of the Debtors, if any; (ii) to hold the Debtors' assets for the benefit of the Creditors that are entitled to Distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Responsible Person's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Debtors' assets, including rights, Causes of Action or litigation; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Debtors; (vi) in the Responsible Person's reasonable business judgment, to reconcile and object to Claims and Equity Interests, and manage, control, prosecute and/or settle on behalf of the Estates objections to Claims and Equity Interests on account of which the Responsible Person (as Disbursing Agent) will be responsible (if Allowed) for making Distributions under the Plan, (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs and effect a dissolution of the Debtors and implement the Plan; (viii) to hold, manage, and distribute the Debtors' assets obtained through the exercise of its power and authority; (ix) to act as a signatory of the Debtors and for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of any remaining assets; (x) to dispose of the books and records transferred to the Responsible Person in a manner deemed appropriate by the Responsible Person; provided, however, that the Responsible Person shall not dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party or that may pertain to General Unsecured Claims without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order and a Final Decree closing the Chapter 11 Cases; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Debtors and execute any documents or pleadings related to the liquidation of the assets; (xiii) to establish and maintain bank accounts and terminate such accounts as the Responsible Person deems appropriate; (xiv) to bring suits or defend itself against such suits, if any, as the Responsible Person determines in connection with any matter arising from or related to the Plan that affects in any way the rights or obligations of Creditors or holders of Equity Interests; (xvi) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan. In all circumstances, the Responsible Person shall use reasonable best efforts to maximize the value of the assets of the Debtors' Estates in the best interests of all Creditors.

**2.**    The Responsible Person may resign by giving at least thirty (30) days prior written notice thereof to the Bankruptcy Court. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice and (ii) the effective date of the appointment of a successor Responsible Person in accordance with the terms hereof and such successor's acceptance of such appointment in accordance with the terms hereof.

-16-

EAST\66820732.2

     **3.**       The Responsible Person may be removed, with cause, and replaced by the Bankruptcy Court upon motion by any interested party, including all holders of Senior Secured Term Loan Claims, duly noticed to the Responsible Person. Such removal shall become effective on the date specified in such action by the Bankruptcy Court.

     **4.**       The resignation, removal, incompetency, bankruptcy or insolvency of the Responsible Person shall not operate to revoke any existing agency created pursuant to the terms of the Plan, or the Confirmation Order or invalidate any action theretofore taken by the Responsible Person. All fees and expenses incurred by the Responsible Person prior to the resignation, incompetency or removal shall be paid from the assets, unless such fees and expenses are disputed by the successor Responsible Person, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Responsible Person that are subsequently allowed by the Bankruptcy Court shall be paid from the assets. In the event of the resignation or removal of the Responsible Person, Responsible Person shall: (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Responsible Person or directed by the Bankruptcy Court to effect the termination of such Responsible Person's capacity under the Plan and Confirmation Order; (b) promptly deliver to the successor Responsible Person all documents, instruments, records and other writings related to the administration of the assets as may be in the possession of such Responsible Person; provided, however, that such Responsible Person may retain one copy of each of such documents for its purposes, subject to the terms of any joint prosecution and common interest agreement to which the Responsible Person is party; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Responsible Person.

     **5.**       Any successor Responsible Person appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in case of the Responsible Person's resignation, to the resigning Responsible Person. Thereupon, such successor Responsible Person shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor with like effect as if originally named Responsible Person and shall be deemed appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The resigning or removed Responsible Person shall duly assign, transfer and deliver to such successor Responsible Person all property and money held by such resigning or removed Responsible Person hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Responsible Person, execute and deliver an instrument or instruments conveying and transferring to such successor Responsible Person, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Responsible Person.

**F.**     **Responsible Person's Tax Powers**

     **1.**       Following the Effective Date, the Responsible Person shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors all Tax Returns required to be filed or that the Responsible Person otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

EAST\66820732.2

2.      The Responsible Person, the Debtors and the Purchaser shall reasonably cooperate with each other, and shall cause their respective officers, employees, agents, auditors and other Representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the Debtors.

## G.      Cash

The Responsible Person and GUC Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

## H.      Costs and Expenses of the Responsible Person and GUC Trustee

The costs and expenses of the Responsible Person, and its retained professionals, shall be paid out of the Debtors' assets.  The costs and expenses of the GUC Trustee, and its retained professionals, shall be paid from the GUC Trust.

## I.      Retention of Professionals by the Responsible Person and GUC Trustee

The Responsible Person and GUC Trustee may retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval.

## J.      Tax Reporting.

1.      The Responsible Person shall file (or cause to be filed) any statements, returns or disclosures relating to the Debtors that are required by any governmental unit.

2.      The Responsible Person shall be responsible for payment, out of the Debtors' assets, of any taxes imposed on the Debtors or their respective assets, including the applicable Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the applicable Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Responsible Person (as applicable) as a result of the resolution of such Disputed Claims.

## K.      Dissolution

The Debtors shall be dissolved at the earlier of: (i) all of the Debtors' assets having been distributed pursuant to the Plan or (ii) the Responsible Person determining, in its sole discretion, after consultation with the Senior Secured Term Loan Agent, that the administration of the Debtors' assets is not likely to yield sufficient additional proceeds to justify further pursuit; provided, however, that in no event shall the Debtors be dissolved later than three (3) years from the Effective Date.  If at any time the Responsible Person determines, in reliance upon such

-18-                                          EAST\66820732.2

professionals as the Responsible Person may retain, that the expense of administering the Debtors' assets, including the making of a final Distribution to its Creditors, is likely to exceed the value of the assets remaining in the Debtors' Estates, the Responsible Person may apply to the Bankruptcy Court for authority to reserve any amounts necessary to dissolve the Debtors, and dissolve the Debtors.

## L.    Indemnification of the Responsible Person and GUC Trustee

The Indemnified Persons shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Responsible Person or the GUC Trustee (as applicable), except those acts that are determined by Final Order of the Bankruptcy Court to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that Person's or Entity's or the Responsible Person's or GUC Trustee's actions or inactions regarding the implementation or administration of this Plan, or the discharge of their duties hereunder, except for any actions or inactions that are determined by Final Order of the Bankruptcy Court to have arisen from intentional fraud, willful misconduct or gross negligence. Any Claim of the Indemnified Persons to be indemnified, held harmless, or reimbursed shall be satisfied from the Debtors' assets, or any applicable insurance coverage.

## M.    Optional Liquidation Trust

**1.**    Generally.  If, at any time prior to seven (7) days before the deadline for filing of the Plan Supplement, the Senior Secured Term Loan Steering Committee determines, in its sole discretion after consultation with the Debtors, that it is necessary and advisable to establish a trust to liquidate and distribute the Debtors' assets after the Effective Date (the "Liquidation Trust"), the Senior Secured Term Loan Steering Committee shall so notify the Debtors of such determination in writing and file a notice of such determination with the Bankruptcy Court.  In that event, the Senior Secured Term Loan Steering Committee shall provide the Debtors with a Liquidation Trust Agreement, which shall be filed as part of the Plan Supplement, and such Liquidating Trust Agreement will appoint the Responsible Person, or such other person as the Senior Secured Term Loan Steering Committee shall select, as trustee (the "Liquidation Trustee") and provide that all of the Debtors' liabilities, assets, title, discretion, privileges, and rights, including, but not limited to rights to obtain assets from third parties and rights to prosecute, settle, or otherwise dispose of Causes of Action shall be transferred to the Liquidation Trust on the Effective Date; provided, however, that such assets, privileges and rights shall not include any such assets, privileges and rights to be transferred to the GUC Trust under the Plan. In the event that the Liquidation Trust is established, the Liquidation Trustee shall have all the liabilities, duties, powers, rights, title, discretion and privileges of the Responsible Person hereunder, and all references hereunder to the distribution of the Debtors' assets, other than the assets used to fund the GUC Trust, shall be deemed to refer to the assets of the Liquidation Trust.

**2.**    Tax Treatment.  The Liquidation Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes. In general, a liquidating trust shall not be treated as a

EAST\66820732.2

separate taxable entity, but rather shall be treated for U.S. federal income tax purposes as a "grantor trust" (*i.e.*, all income and loss is taxed directly to the liquidating trust beneficiaries). The Liquidation Trustee, the Debtors and the Senior Secured Term Loan Lenders shall treat the Liquidation Trust as a "grantor trust" (pursuant to Sections 671-677 of the U.S. Internal Revenue Code of 1986, as amended) of which the Senior Secured Term Loan Lenders are the owners and grantors, and treat the Senior Secured Term Loan Lenders as the direct owners of the Liquidation Trust assets, consistent with their economic interests in the Liquidation Trust, for all U.S. federal income tax purposes.

For all U.S. federal income tax purposes, (a) assets of the Debtors shall be treated as having been transferred directly to the Senior Secured Term Loan Lenders, followed by the transfer of such assets by the Senior Secured Term Loan Lenders to the Liquidation Trust, and (b) cash amounts funded by the Senior Secured Term Loan Lenders shall be treated as having been directly contributed by the Senior Secured Term Loan Lenders to the Liquidating Trust.

As soon as possible after the Effective Date, but in no event later than the due date for timely filing of the Liquidation Trust's first federal income tax return (taking into account applicable tax filing extensions), (x)(i) the Liquidation Trustee and the Debtors will jointly determine the aggregate fair market value as of the Effective Date of all assets transferred to the Liquidation Trust and (ii) the Liquidation Trustee shall apprise, in writing, the Senior Secured Term Loan Lenders of such valuation and (y) the Trustee, the Senior Secured Term Loan Lenders and the Debtors will jointly determine the portion of such aggregate fair market value that is allocable to the Debtors' Trust Causes of Action (as such term is defined in the Liquidation Trust Agreement) deemed to be transferred to the Senior Secured Term Loan Lenders as partial payment of their claims under the Plan (and subsequently deemed to be transferred by the Senior Secured Term Loan Lenders to the Liquidation Trust). In connection with the preparation of the valuation contemplated by this paragraph, the Liquidation Trustee shall be entitled to retain such professionals and advisors as the Liquidation Trustee shall reasonably determine to be appropriate or necessary, and the Liquidation Trustee shall take such other actions in connection therewith as they reasonably determine to be appropriate or necessary in connection therewith. The Liquidation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such aggregate value of the Liquidation Trust assets, including the fees and expenses of any Persons retained by the Trustee in connection therewith.

## N.    Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim or Equity Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied, as against the Debtors but not as against any other Person.

EAST\66820732.2

**O.**  **Operations of the Debtors Between the Confirmation Date and the Effective Date**

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date, and as a liquidating estate on and after the Effective Date. The retention and employment of the Professionals retained by the Debtors shall terminate as of the Effective Date, *provided, however*, that the Debtors shall exist, and their Professionals shall be retained, after such date with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order and (c) such other matters as may be determined by the Debtors or Responsible Person, including without limitation, the filing and prosecuting of objections to Claims solely with respect to Administrative Claims and Priority Claims.

**P.**  **Fee Auditor**

Notwithstanding anything contained herein, the Fee Auditor shall continue to perform the duties set forth in the Fee Auditor Order until all Final Fee Applications have been approved by the Bankruptcy Court. Following the Effective Date, the GUC Trustee and/or the Responsible Person, as the case may be, shall pay in cash, within thirty (30) days of receipt of an invoice from the Fee Auditor, all reasonable fees and expenses of the Fee Auditor that are incurred after the Effective Date, without the need for any further authorization from the Bankruptcy Court. In the event that the GUC Trustee or the Responsible Person objects to payment of such invoice from the Fee Auditor for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the GUC Trustee and/or the Responsible Person.

**Q.**  **Automatic Stay**

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

**R.**  **The Committee**

Upon the Effective Date, the Creditors Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Creditors Committee shall terminate as of the Effective Date, *provided, however*, that the Creditors Committee shall exist, and their Professionals shall be retained, after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

**S.**  **Books and Records**

As part of the appointment of the Responsible Person, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Responsible Person in whatever form, manner or media those books and

EAST\66820732.2

records existed immediately prior to the transfer thereof to the Responsible Person. The Responsible Person may abandon all such books and records on or after ninety (90) days from the Effective Date, *provided*, *however*, that the Responsible Person shall not dispose or abandon any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party or that pertain to General Unsecured Claims without further order of the Bankruptcy Court. Pursuant to section 554 of the Bankruptcy Code, this Article IV.P shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtors.

**T.      Substantive Consolidation; Closing of Certain of the Chapter 11 Cases**

The Plan shall serve as a motion of the Debtors seeking entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors' Estates as provided for herein. As such, upon the Effective Date, without the need for further order of the Bankruptcy Court or motion of, or notice from, the Debtors, the Responsible Person, or the GUC Trustee, the chapter 11 cases of Debtors OSH 2 Liquidating LLC and OSH 3 Liquidating LLC (Case Nos. 13-11566 (CSS) and 13-11567 (CSS), respectively) shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen such cases pursuant to section 350(b) of the Bankruptcy Code, and (i) all motions, contested matters, adversary proceedings and other matters with respect to those closed cases and those Debtors shall be administered in in the case of Debtor OSH 1 Liquidating Corporation (Case No. 13-11565 (CSS)) without prejudice to the rights of any party in interest, (ii) the caption of the case of OSH 1 Liquidating Corporation shall be amended to reflect that it is the only remaining open case, and (iii) a docket entry shall be made in each of the closed cases that reflects their closure pursuant hereto.

**U.      D&O Insurance Policies**

No prepaid D&O Insurance Policy shall be cancelled, and the Debtors' directors, officers and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in the Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors. The Debtors' directors shall direct that any monies held in escrow and specifically set aside for D&O Insurance Policy protection be used solely for that purpose.

**ARTICLE V.**

**PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS**

**A.      Voting of Claims**

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article II and Article III of the Plan shall be entitled to vote separately to

-22-

accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.      Distribution Dates**

Distributions to holders of Claims shall be made as provided in Articles II and III of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**C.      Disbursing Agents**

All Distributions under the Plan by the Responsible Person or GUC Trustee shall be made by the Responsible Person or GUC Trustee as Disbursing Agent or such other entity designated by the Responsible Person or GUC Trustee as Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent them with respect to their responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to them in accordance with the Plan or (y) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Responsible Person acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash from the Debtors' assets in the ordinary course of business. Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the GUC Trustee acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the GUC Trust in the ordinary course of business.

**D.      Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Responsible Person and the GUC Trustee (as applicable) shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making

EAST\66820732.2

any Distribution with respect to any Claim, the Responsible Person and the GUC Trustee (as applicable) shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Record Date and is available to the Responsible Person and the GUC Trustee (as applicable).

**E.**     **Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Responsible Person and the GUC Trustee (as applicable) have not been notified in writing of a change of address. The Responsible Person shall make the Distributions described in Article III.B.1 by wire transfer upon instructions provided by the Senior Secured Term Loan Agent.

**F.**     **Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any holder of an Allowed Claim made by the Responsible Person is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder; *provided, however*, that all Distributions to holders of Allowed Claims made by the Responsible Person that are unclaimed for a period of one (1) year after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtors' Estates and any entitlement of any holder of any Claims to such Distributions shall be extinguished and forever barred. The Responsible Person shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred; *provided, however*, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Responsible Person at some point prior to the final Distribution.

In the event that any Distribution to any holder of an Allowed General Unsecured Claim is returned as undeliverable to the GUC Trust, no further Distribution to such holder shall be made unless and until the Disbursing Agent has been notified in writing with evidence satisfactory to the GUC Trust of the current address of such holder prior to the time that any Distributions are made by the GUC Trust. All Distributions to holders of Allowed General Unsecured Claims that are unclaimed for a period of ninety (90) days after any interim Distribution or sixty (60) days after the final Distribution shall be deemed unclaimed property and revested in the GUC Trust. After such time period, any entitlement of the applicable holder of an Allowed General Unsecured Claim to such Distribution shall be extinguished and forever barred and the GUC Trustee shall have no further obligation to make any Distribution to such holder of any unclaimed Distribution on account of such Allowed General Unsecured Claim.

EAST\66820732.2

**G.      Manner of Cash Payments Under the Plan**

Except as otherwise provided herein, Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Responsible Person and the GUC Trustee (as applicable).

**H.      Compliance with Tax Requirements**

The Disbursing Agent may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims.  The Disbursing Agent shall be authorized to collect such tax information from the holders of Claims (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims will need to identify themselves to the Disbursing Agent and provide all tax information the Disbursing Agent deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Disbursing Agent may refuse to make a Distribution to any holder of a Claim that fails to furnish such information within the time period specified by the Disbursing Agent and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, *provided further* that, if the Disbursing Agent fails to withhold in respect of amounts received or distributable with respect to any such holder and such Disbursing Agent is later held liable for the amount of such withholding, such holder shall reimburse the Disbursing Agent for such liability.

**I.      No Payments of Fractional Dollars**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**J.      Interest on Claims**

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or similar charges.

EAST\66820732.2

**K.      No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

**L.      Setoff and Recoupment**

The Responsible Person and the GUC Trustee (as applicable) may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, the Responsible Person or the GUC Trustee of any right of setoff or recoupment that any of them may have against the holder of any Claim. Any such setoffs or recoupments may be challenged in Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; *provided, however*, that such setoff or recoupment rights are timely asserted; *provided further* that all rights of the Debtors and their estates, the Responsible Person and the GUC Trustee with respect thereto are reserved.

**M.      De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary therein, the Responsible Person and the GUC Trustee (as applicable) shall not be required to make a Distribution to any Creditor if the dollar amount of the Distribution is less than $25 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. On or about the time that the final Distribution is made, the Responsible Person and the GUC Trustee (as applicable) may make a charitable donation with undistributed funds if, in the reasonable judgment of the Responsible Person and the GUC Trustee (as applicable), the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the or holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Responsible Person and the GUC Trustee (as applicable).

**N.      United States Trustee Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Responsible Person shall pay any and all such fees payable by the Debtors, when due and payable, and shall file with the Bankruptcy Court quarterly reports for each of the Debtors, in a form reasonably acceptable to the U.S. Trustee. Notwithstanding the substantive consolidation of the Debtors under the Plan, each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed (whether closed pursuant to Article IV.R of this Plan or otherwise), dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

EAST\66820732.2

**O.      Withholding from Distributions**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Responsible Person and the GUC Trustee (as applicable) may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Responsible Person and the GUC Trustee (as applicable), required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

**P.      No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the later of (i) the applicable bar date in the Chapter 11 Cases, including, without limitation, the General Bar Date and any bar date established in the Plan or in the Confirmation Order and (ii) the date that is ten (10) days prior to the Confirmation Date, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Responsible Person or the GUC Trustee (as applicable) or (b) an order of the Bankruptcy Court. Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

EAST\66820732.2

# ARTICLE VI.

## DISPUTED CLAIMS

**A.    Disputed Claims Reserve**

After the Effective Date, the Disputed Claims Reserve shall be managed by the Responsible Person for the treatment of Disputed Administrative Claims, Priority Tax Claims and Other Priority Claims.  On each Distribution date after the Effective Date in which the Responsible Person makes Distributions to holders of Administrative Claims, Priority Tax Claims or Other Priority Claims, the Responsible Person shall retain on account of Disputed Claims an amount the Responsible Person estimates is necessary to fund the Pro Rata Share of such Distributions to holders of Disputed Claims if such Claims were Allowed, with any Disputed Administrative Claims, Priority Tax Claims and Other Priority Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Responsible Person; *provided, however,* that in no event shall the Disputed Claims Reserve managed by the Responsible Person exceed $3,700,000.  Cash retained on account of such Disputed Claims shall be retained in the Disputed Claims Reserve for the benefit of the holders of Disputed Administrative Claims, Priority Tax Claims and Other Priority Claims pending a determination of their entitlement thereto under the terms of the Plan.  If any Disputed Administrative Claims, Priority Tax Claims or Other Priority Claims is disallowed or Allowed in an amount that is lower than the aggregate assets retained on account of such Disputed Claim, then the Responsible Person shall within fifteen (15) days after such disallowance or allowance return the assets that exceed the Allowed amount of such Claim to the Debtors' Estates.

**B.    Resolution of Disputed Claims**

The Responsible Person, in the case of all Claims other than General Unsecured Claims, and the GUC Trustee, in the case of General Unsecured Claims, shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

**C.    Objection Deadline**

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

**D.    Estimation of Claims**

At any time, the Responsible Person, in the case of all Claims other General Unsecured Claims, or the GUC Trustee, in the case of General Unsecured Claims, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Responsible Person, the GUC Trustee or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any

EAST\66820732.2

Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Responsible Person or the GUC Trustee (as applicable) may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**E.      No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been allowed on the Effective Date.

**F.      Resolution of Claims**

On and after the Effective Date, the Responsible Person, in the case of all Claims other than General Unsecured Claims, and the GUC Trustee, in the case of General Unsecured Claims, shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

EAST\66820732.2

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS

**A.**     **Assumption or Rejection of Executory Contracts and Unexpired Leases**

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors, except for any executory contract or unexpired leases (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) that is specifically designated as a contract to be assumed on Schedule 7.1 upon consent of the Senior Secured Term Loan Steering Committee, which Schedule shall be contained in the Plan Supplement; *provided*, *however*, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend Schedule 7.1 to delete any executory contract therefrom, or add any executory contract, in which event such executory contract(s) shall be deemed to be, respectively, either rejected or assumed as of the Effective Date. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

**B.**     **Cure of Defaults**

Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract to be assumed pursuant to Article VII.A of the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least fourteen (14) days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts to be assumed pursuant to Article VII.A of the Plan, an Assumption Notice, which shall list the cure amount as to each executory contract to be assumed. The parties to such executory contracts to be assumed or assumed and assigned by the Debtors shall have ten (10) days from the date of service of the Assumption Notice to file and serve any objection to assumption or the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hear the objections at the Confirmation Hearing or on such other date as may be set by the Bankruptcy Court. Notwithstanding Article VII.A of the Plan, the Debtors shall retain their rights to reject any of their executory contracts that are subject to a dispute concerning amounts necessary to cure any defaults through the Confirmation Date.

**C.**     **Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A herein, must be filed with the Bankruptcy Court and served on the Debtors, the Responsible Person and the GUC Trustee no later than thirty (30) days after service of notice of the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired

EAST\66820732.2

lease pursuant to Article VII.A herein for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Responsible Person, the GUC Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.F herein. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III herein.

**D.    Indemnification and Reimbursement**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, treated as Allowed General Unsecured Claims to the extent such Claims are not covered by any applicable insurance, including deductibles. Nothing contained herein shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtors, the Responsible Person, the GUC Trustee or the Debtors' Estates to object to, seek to subordinate or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors.

**E.    Certain Insurance Policy Matters**

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan, the Plan Supplement, any other Plan documents or any other order of the Bankruptcy Court (including, without limitation, any provision that purports to be preemptory or supervening or grants and injunction or release or sets a bar date), on the Effective Date, (i) all insurance policies issued (or providing coverage at any time) to the Debtors and all related agreements shall be transferred to and shall vest in the post-Effective Date Debtors or if the Liquidation Trust is established, the Liquidation Trust and (ii) the post-Effective Date Debtors or if the Liquidation Trust is established, the Liquidation Trust shall be liable for all of the Debtors' obligations thereunder (including, but not limited to, the duty to provide collateral and security, pay self-insured retentions, and pay in full (or reimburse in full the insurer for) deductibles and other costs and fees), whether now existing or hereafter arising, without the requirement or need for insurers to file proofs of claim or requests for payment of Administrative Claim. Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan, any other Plan document or any other order of the Bankruptcy Court (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction or release), shall in any way operate to, or have the effect of, impairing, expanding or altering in any respect the legal, equitable or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies and related

EAST\66820732.2

agreements. The rights and obligations of the insureds, the post-Effective Date Debtors or, if the Liquidation Trust is established, or Liquidation Trustee, and insurers shall be determined under (i) the insurance policies and related agreements (including all terms, conditions, limitations and exclusions thereof) which shall remain in full force and effect subject to the terms thereof and (ii) applicable non-bankruptcy law. Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening or grants an injunction or release), shall in any way (i) limit the post-Effective Date Debtors or, if the Liquidation Trust is established, the Liquidation Trustee from asserting a right or claim to the proceeds of any insurance policy that insures any Debtor, was issued to any Debtor or was transferred to the post-Effective Date Debtor or Liquidation Trust by operation of the Plan, nor (ii) limit any right of any other party to challenge such right or claim; provided, however that the insurers and the post-Effective Date Debtors or, if the Liquidation Trust is established, the Liquidation Trustee, reserve and preserve any right to seek arbitration of disputes arising under the insurance policies and related agreements.

The automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (A) claimants with valid workers' compensation claims covered by the workers' compensation policies to proceed with their claims; (B) the insurers (and/or third party administrators) to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (i) all valid workers' compensation claims arising under the workers' compensation policies issued by any of the insurers, (ii) all claims where a claimant asserts a direct claim against the insurers under applicable law, the claimant has been awarded a judgment and the applicable policy contains an MCS-90 endorsement, or an order has been entered by the Bankruptcy Court granting a claimant with a pre-Effective Date claim relief from the automatic stay or the injunctions set forth in Article IX of the Plan to (1) proceed with its claim nominally against the Debtors and (2) collect insurance proceeds pursuant to the insurance policies and related agreements and (iii) all costs in relation to each of the foregoing; and (C) the insurers and/or third party administrators to draw against, hold and/or apply any or all of the collateral or security provided to the insurers and/or third party administrators by or on behalf of the Debtors at any time.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.    Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

**1.**    The Bankruptcy Court shall have entered the Confirmation Order.

**2.**    There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

EAST\66820732.2

3.      The appointment of the Responsible Person and the GUC Trustee shall have been confirmed by order of the Bankruptcy Court.

4.      All invoiced and unpaid fees and expenses of attorneys and financial advisors to the Senior Secured Term Loan Agent and Senior Secured Term Loan Steering Committee have been paid in full in Cash from the Debtors' assets.

5.      All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors, the Creditors Committee and Senior Secured Term Loan Steering Committee, and have been duly executed and delivered; *provided, however*, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

6.      The payments payable to the GUC Trust on the Effective Date shall have been made.

**B.      Waiver**

Notwithstanding the foregoing conditions in Article VIII.A, the Debtors, with the written consent of the Senior Secured Term Loan Agent, reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than the written consent of the Senior Secured Term Loan Agent and proceeding to consummate the Plan; provided, however, the Committee shall have the right to be consulted on and consent to any proposed modification of the Confirmation Order and the Plan that adversely affects the rights of holders of General Unsecured Claims, the GUC Trust or the GUC Trustee.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### ARTICLE IX.

### INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.      Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

EAST\66820732.2

**B.     Releases**

1.     <u>Releases by the Debtors and their Estates</u>.     Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors and their current and former affiliates and Representatives and the Estates shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors and their current and former affiliates and Representatives, the Estates and the Creditors Committee and its members but solely in their capacity as members of the Creditors Committee and not in their individual capacities), from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases or the Plan; provided, however, that the foregoing release shall not prohibit the Debtors, the Estates, the Responsible Person, the GUC Trust or the GUC Trustee from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Parties.

2.     <u>Releases by Holders of Claims</u>.  Except as otherwise provided in Article XI.B of the Plan, each Person, other than any of the Debtors, who votes to accept the Plan and does not mark such ballot to indicate their refusal to grant the release provided for in this paragraph, shall be deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties of and from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors and their current and former affiliates and Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise.

3.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are:  (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action

EAST\66820732.2

released by this Plan; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.

**C.      Exculpation**

Notwithstanding anything contained in the Plan to the contrary, the Released Parties, the Creditors Committee, the Creditors Committee's members (but solely in their capacity as members of the Creditors Committee and not in their individual capacities), and the Creditors Committee's Professionals shall neither have nor incur any liability relating to these Chapter 11 Cases to any Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases; *provided, however*, that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

**D.      Withdrawal and Release of Certain Claims**

Upon the Effective Date, the Senior Secured Term Loan Lenders and the Senior Secured Term Loan Agent shall be deemed to have waived any unsecured deficiency claim resulting from a Distribution less than a par recovery of the Senior Secured Term Loan Claims.

**E.      Preservation of Causes of Action**

     **1.**      Vesting of Causes of Action

       **(a)**      Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the Estates may hold against any Entity shall remain with the Debtors and the Estates on and after the Effective Date.

       **(b)**      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Responsible Person shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtors and the Estates, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

     **2.**      Preservation of All Causes of Action Not Expressly Settled or Released

       **(a)**      Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order

EAST\66820732.2

(including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Responsible Person (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in ARTICLE IX.B.1) or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right of the Responsible Person to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

**(b)** Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Responsible Person subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

**F.    Injunction**

**1.**    From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Responsible Person, the Creditors Committee, the GUC Trust, and the GUC Trustee, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

**2.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Responsible Person, the Creditors Committee, the GUC Trust, and the GUC Trustee, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any

EAST\66820732.2

act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.

3.       The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.       Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

> (a)       commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, any Estate, the Responsible Person, the Creditors Committee, the GUC Trust, and the GUC Trustee, and their successors and assigns and their assets and properties;

> (b)       enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, any Estate, the Responsible Person, the Creditors Committee, the GUC Trust, and the GUC Trustee, and their successors and assigns and their assets and properties;

> (c)       creating, perfecting or enforcing any encumbrance of any kind against any Debtor, any Estate, the Responsible Person, the Creditors Committee, the GUC Trust, and the GUC Trustee and their successors and assigns and their assets and properties; and

> (d)       commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

## G.       Releases of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Debtors.

EAST\66820732.2

# ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities, including, without limitation, the Responsible Person or, if the Liquidation Trust is created, the Liquidation Trustee, with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

 **1.**  allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

 **2.**  grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors or the Creditors Committee for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

 **3.**  resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

 **4.**  ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding the Debtors' entitlement to recover assets held by third parties and the use of Cash held in escrow pursuant to the Escrow Agreement;

 **5.**  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Responsible Person after the Effective Date;

 **6.**  enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

 **7.**  resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

 **8.**  issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

EAST\66820732.2

9.      enforce ARTICLE IX.A, ARTICLE IX.B, ARTICLE IX.C and Article IX.D hereof;

10.      enforce the Injunction set forth in ARTICLE IX.F hereof;

11.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in ARTICLE IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.      resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Final APA, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan, the Disclosure Statement or the Final APA;

14.      resolve any disputes that have or may arise with the Purchaser in connection with the transactions contemplated under or in connection with the Final APA; and

15.      enter an order and a Final Decree closing the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### A.      Modification of Plan

Subject to the limitations contained in the Plan and provided that the Committee shall have the right to be consulted on and consent to any proposed modification of the Confirmation Order and the Plan that adversely affects the rights of holders of General Unsecured Claims, the GUC Trust or the GUC Trustee: (1) the Debtors, with the consent of the Senior Secured Term Loan Agent and, solely with respect to Articles III.B.3, IV.B, IV.C, IV.D, IV.I, IV.L, IV.R, VI, IX.B and IX.C of the Plan, the Creditors Committee, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and (2) after the entry of the Confirmation Order, the Debtors, the Responsible Person or the GUC Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

-39-

**B. Revocation of Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

**C. Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, a Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

**D. Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**E. Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware without giving effect to the principles of conflict of laws thereof.

**F. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**G. Article 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in

EAST\66820732.2

the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**H.      Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Court that the Debtors and each of their respective Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**I.      Further Assurances**

The Debtors, the Responsible Person and the GUC Trustee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**J.      Service of Documents**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

EAST\66820732.2

**To the Debtors:**

> OSH 1 Liquidating Corporation
> c/o FTI Consulting, Inc.
> One Front Street
> Suite 1600
> San Francisco, CA 94111
> Attn.: Andrew Hinkelman
>
> *with a copy to:*
>
> DLA Piper, LLP (US)
> 203 N. LaSalle Street, Suite 1900
> Chicago, Illinois 60601
> Attn: Richard A. Chesley
> Chun I. Jang
> Daniel M. Simon
>
> - and -
>
> DLA Piper, LLP (US)
> 919 North Market Street, Suite 1500
> Wilmington, Delaware 19801
> Attn: Stuart M. Brown

**To the Responsible Person:**

> Bradley Dietz
> 136 East 64th Street
> Apartment 8C
> New York, NY 10065
>
> *with a copy to:*
>
> Dechert LLP
> 1095 Avenue of the Americas
> New York, NY 10036
> Attn: Michael J. Sage

**To the GUC Trustee:**

> Solution Trust
> Attn: Peter S. Kravitz
> 29209 Canwood Street
> Suite 210
> Agoura Hills, CA 91301

EAST\66820732.2

Case 13-11565-CSS   Doc 785   Filed 12/06/13   Page 48 of 49

*with a copy to:*

Pachulski Stang Ziehl & Jones, LLP
919 North Market Street
17th Floor
Wilmington, DE 19801
Attn: Bradford J. Sandler and Shirley S. Cho

**K.   Filing of Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**L.   No Stay of Confirmation Order**

The Debtors shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

*[remainder of page intentionally left blank]*

EAST\66820732.2

Dated:   December 6, 2013
          Wilmington, Delaware

**OSH 1 Liquidating Corporation**

By: /s/ Bradley Dietz
    Name: Bradley Dietz
    Title: Authorized Signatory

**OSH 2 Liquidating LLC**

By: /s/ Bradley Dietz
    Name: Bradley Dietz
    Title: Authorized Signatory

**OSH 3 Liquidating LLC**

By: /s/ Bradley Dietz
    Name: Bradley Dietz
    Title: Authorized Signatory

EAST\66820732.2

# Exhibit 4

State of Delaware
Secretary of State
Division of Corporations
Delivered 08:56 PM 09/16/2013
FILED 08:48 PM 09/16/2013
SRV 131094686 - 2192164 FILE

CERTIFICATE OF AMENDMENT
TO CERTIFICATE OF FORMATION
OF
ORCHARD SUPPLY HARDWARE LLC


Orchard Supply Hardware LLC (hereinafter called the "Company"), a limited liability company organized and existing under and by virtue of the Limited Liability Company Act of the State of Delaware, does hereby certify:

1. The name of the limited liability company is Orchard Supply Hardware LLC.

2. The certificate of formation of the Company is hereby amended by striking out the First Article thereof and by substituting in lieu of said Article the following new Article:

FIRST

The name of the limited liability company is OSH 2 Liquidating LLC.

In witness whereof, the undersigned has duly executed this certificate of amendment as of the 16th day of September, 2013.

/s/ Susan L. Healy
Name: Susan L. Healy
Title:   Authorized Signatory

# Exhibit 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
                                                           :
In re:                                                     :  Chapter 11
                                                           :
OSH 1 Liquidating Corporation., et al., (f/k/a             :  Case No. 13-11565 (CSS)
Orchard Supply Hardware Stores Corporation,                :
et al.,¹                                                   :  (Jointly Administered)
                                                           :
              Debtors.                                     :  Re: Dkt. No. 785 & 836
-----------------------------------------------------------x
```

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF EFFECTIVE DATE UNDER DEBTORS' MODIFIED FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, (III) DEADLINE TO FILE REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS, (IV) DEADLINE FOR PROFESSIONALS TO FILE FINAL FEE APPLICATIONS PURSUANT TO SECTIONS 328, 330 AND 503(B) OF THE BANKRUPTCY CODE AND (V) DEADLINE TO FILE CLAIMS ARISING FROM REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on November 12, 2013, the Debtors filed the *Debtors' First Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 717] (the "First Amended Plan") and the *Disclosure Statement for the Debtors' First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "First Amended Disclosure Statement") [Docket No. 718].

**PLEASE TAKE FURTHER NOTICE** that on November 13, 2013, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") held a hearing (the "Hearing") on approval of the First Amended Disclosure Statement.  On that date, the Bankruptcy Court entered the *Order (I) Approving Disclosure Statement, (II) Approving Notice and Objection Deadline and Procedures for the Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing and (V) Establishing Notice and Objection Deadline and Procedures for Confirmation of the Proposed Plan* [D.I. 724].

---

¹ The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): OSH 1 Liquidating Corporation f/k/a Orchard Supply Hardware Stores Corporation (4109), OSH 2 Liquidating LLC f/k/a Orchard Supply Hardware LLC (3395) and OSH 3 Liquidating LLC f/k/a OSH Properties LLC (3391).  On August 20, 2013, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets which provided, among other things, that the Debtors were required to cease using the "Orchard Supply Hardware" name after closing of the sale.

**PLEASE TAKE FURTHER NOTICE** that on December 6, 2013, the Debtors filed the *Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 785] (the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that on December 20, 2013, the Bankruptcy Court held a hearing on confirmation of the Plan.  On that date, the Bankruptcy Court entered the *Order Confirming the Debtors' Modified First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 836] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE** that on February 24, 2014, all conditions to the occurrence of the Effective Date set forth in the Plan and Confirmation Order were satisfied or waived in accordance therewith and the Effective Date of the Plan occurred.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Article II.B of the Plan and the Confirmation Order, requests for payment of Administrative Claims, together with accompanying documentation, **must be filed with the Bankruptcy Court on or before 5:00 p.m., prevailing Eastern time, on the first Business Day that is thirty (30) days after the Effective Date.**  Each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of Administrative Claim (a) by mailing, hand delivering or delivering by courier service such request for payment of Administrative Claim to the Clerk of the Bankruptcy Court at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 or (ii) by using the Bankruptcy Court's CM/ECF electronic filing system.   The request for payment of an Administrative Claim will be timely filed only if it <u>actually</u> <u>received</u> by the Bankruptcy Court by 5:00 p.m., prevailing Eastern time, on such date.

**PLEASE TAKE FURTHER NOTICE** that all Professionals employed by the Debtors or the Creditors Committee in these Chapter 11 Cases, other than those Professionals who have been otherwise relieved of the requirement to file fee applications by prior orders of the Court, shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claims Bar Date for fees and expenses arising under sections 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications as required by the Bankruptcy Code and the Bankruptcy Rules.  All such Professionals shall file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in these Chapter 11 Cases through the Effective Date by **no later than sixty (60) days following the Effective Date.**  The U.S. Trustee, the Debtors, the Liquidation Trustee and the Creditors Committee shall have forty-five (45) days from the filing of such final fee applications to formally object to any such fee applications, and, in the event such formal objection is timely filed, the Court will schedule a hearing to determine all objections to such applications for final allowances of compensation or reimbursement of expenses under sections 328, 330 or 503(b) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that any Claims created by the rejection of executory contracts or unexpired leases pursuant to Article VII.A of the Plan must be filed with the Bankruptcy Court and served on the Debtors, the Liquidation Trustee and the GUC Trustee

---

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**no later than thirty (30) days after service of notice of the Effective Date.** Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A herein for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Liquidation Trustee, the GUC Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan or Confirmation Order. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.F of the Plan. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III therein.

**PLEASE TAKE FURTHER NOTICE** that any interested party may review and download the Plan, the Confirmation Order and other related documents free of charge at http://www.bmcgroup.com/OSH or by requesting a paper copy by calling BMC Group, Inc., at (855) 529-6819.

Dated: February 24, 2013
Wilmington, Delaware

Respectfully submitted,

*/s/ Stuart M. Brown*
Stuart M. Brown (DE 4050)
DLA PIPER LLP (US)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com

-and-

Richard A. Chesley (IL 6240877)
Chun I. Jang (DE 4790)
Daniel M. Simon (IL 6297629)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@dlapiper.com
chun.jang@dlapiper.com
daniel.simon@dlapiper.com

ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION

Exhibit 6

# STATE OF DELAWARE
# CERTIFICATE OF CANCELLATION
# OF
# OSH 2 LIQUIDATING LLC

1. The name of the limited liability company is OSH 2 Liquidating LLC.

2. The Certificate of Formation of the limited liability company was filed on March 31, 1989.

   **IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Cancellation this 19th day of December, 2016.

   By:_____
   Authorized Person

   Name:_____Bradley I. Dietz_____
   Print or Type

5961001.1 - 072330.1001

State of Delaware
Secretary of State
Division of Corporations
Delivered  12:25 PM 12/20/2016
FILED  12:25 PM 12/20/2016
SR 20167173246  - File Number  2192164