**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Tel:     202-898-5800
Fax:     202-682-1639
Email: jhollingsworth@hollingsworthllp.com
          elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *James Cal Mayo, Jr., et al. v. Monsanto Co.,* Case No. 3:20-cv-02484-VC | |

## <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's James Cal Mayo, Jr.'s Complaint ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies those allegations.

2.    Monsanto admits the allegations in the first sentence of paragraph 2.  In response to the allegations in the second sentence of paragraph 2, Monsanto admits it is admitted to do business in the state of Mississippi.  The remaining allegations in the second sentence of paragraph 2 set forth conclusions of law for which no response is required.

1    3.     In response to the allegations in paragraph 3, Monsanto denies that decedent's

2    death was "wrongful" and denies that any injuries alleged in the Complaint, including the

3    injury and death of decedent, were caused by Roundup®-branded products.  Monsanto admits

4    that plaintiff purports to bring a wrongful death claim but denies any liability on that claim.

5    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

6    remaining allegations in paragraph 3 and therefore denies those allegations.

7    4.     The allegations in paragraph 4 set forth conclusions of law for which no response

8    is required.  To the extent that a response is deemed required, Monsanto admits the allegations in

9    paragraph 4 based upon the allegations in plaintiff's Complaint.

10   5.     In response to the allegations in paragraph 5, Monsanto admits that it is

11   authorized to do business in the state of Mississippi.  Monsanto denies that it engaged in any

12   tortious conduct alleged in the Complaint.  The remaining allegations in paragraph 5 set forth

13   conclusions of law for which no response is required.

14   6.     In response to the allegations in paragraph 6, Monsanto denies certain events

15   giving rise to plaintiff's claims and Monsanto lacks information or knowledge sufficient to form

16   a belief as to the truth of the allegations regarding where certain other events giving rise to

17   plaintiff's claims occurred and therefore denies those allegations.  The remaining allegations in

18   paragraph 6 set forth conclusions of law for which no response is required.

19   7.     In response to the allegations in paragraph 7, Monsanto admits that it discovered

20   the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides;

21   that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has

22   classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the

23   surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human

24   health.  Monsanto denies the remaining allegations in paragraph 7.

25   8.     In response to the allegations in the first sentence of paragraph 8, Monsanto

26   admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The

27   remaining allegations in the first sentence of paragraph 8 are vague and ambiguous and that

28   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

remaining allegations in the first sentence of paragraph 8 and therefore denies those allegations. Monsanto admits the allegations in the second sentence of paragraph 8.  Monsanto denies the allegations in the third sentence of paragraph 8 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the fourth sentence of paragraph 8 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

9.      In response to the allegations in paragraph 9, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 9.

10.      Monsanto admits the allegations in the first two sentences of paragraph 10 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto otherwise denies the remaining allegations in paragraph 10.

11.      In response to the allegations in paragraph 11, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 11.

12.      Monsanto admits the allegations in paragraph 12.

13.      In response to the allegations in paragraph 13, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 13 set forth conclusions of law for which no response is required.

14.      The allegations in paragraph 14 set forth conclusions of law for which no

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

1   response is required.

2        15.      In response to the allegations in paragraph 15, Monsanto admits that Roundup®-

3   branded products are registered by EPA for manufacture, sale, and distribution in the United

4   States..

5        16.      In response to the allegations in paragraph 16, Monsanto admits that EPA requires

6   registrants of herbicides to submit extensive data in support of the human health and

7   environmental safety of their products and further admits that EPA will not register or approve

8   the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto

9   denies the allegations in paragraph 16 to the extent that they suggest that EPA only evaluates the

10  safety of pesticide products on the date of their initial registration.  Monsanto states that the term

11  "the product tests" in the final sentence of paragraph 16 is vague and ambiguous, and Monsanto

12  therefore denies the same.  The remaining allegations in paragraph 16 set forth conclusions of

13  law for which no response is required.

14       17.      Monsanto admits that EPA is in the process of conducting regulatory review of

15  various pesticide products, but Monsanto lacks information or knowledge sufficient to form a

16  belief as to the truth of the allegations in paragraph 17 regarding such pesticide products

17  generally.  The remaining allegations in paragraph 17 set forth conclusions of law for which no

18  response is required.

19       18.      In response to the allegations in paragraph18, Monsanto admits that EPA has

20  undertaken a regulatory review of glyphosate and further admits that EPA has not released its

21  findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

22  Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

23  concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

24  humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

25

26  [1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 and therefore denies those allegations.

19.     In response to the allegations in paragraph 19, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

---

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**
**3:16-md-02741-VC & 3:20-cv-02484-VC**

- • "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- • "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- • "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

Monsanto denies the remaining allegations in paragraph 19.

20.     In response to the allegations in paragraph 20, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 20 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

21.     In response to the allegations in paragraph 21, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

22.     Monsanto denies the allegations in the first and second sentences of paragraph 22 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or

- 6 -

improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in the first and second sentences of paragraph 22 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.  In response to the allegations in the final sentence of paragraph 22, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

23.     In response to the allegations in paragraph 23, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 23 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

24.     Monsanto denies the allegations in paragraph 24.

25.     In response to the allegations in paragraph 25, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 25 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

26.     In response to the allegations in paragraph 26, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks

information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 26 and accordingly denies those allegations.  The remaining allegations in paragraph 26 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

27.     In response to the allegations in paragraph 27, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 27 and accordingly denies the same.  The remaining allegations in paragraph 27 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

28.     In response to the allegations in paragraph 28, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 28 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

29.     In response to the allegations in paragraph 29, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 29 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

30.     Monsanto denies the allegations in paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto

1    denies the remaining allegations in paragraph 31.

2        32.     In response to the allegations in paragraph 32, Monsanto admits that the

3    International Agency for Research on Cancer ("IARC") classified glyphosate as a Group 2A

4    agent in March 2015. , Monsanto denies that t ("IARC") follows stringent procedures for the

5    evaluation of a chemical agent.

6        33.     Monsanto lacks information or knowledge sufficient to form a belief as to the

7    accuracy of the specific numbers cited in paragraph 33, which are not limited as of any specified

8    date, and accordingly denies the same.

9        34.     In response to the allegations in paragraph 34, Monsanto admits that IARC sets

10   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

11   Monsanto denies the remaining allegations in paragraph 34.

12       35.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

13   research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

14   that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

15   form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies

16   those allegations.

17       36.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

18   research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies

19   that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to

20   form a belief as to the truth of the remaining allegations in paragraph 36 and therefore denies

21   those allegations.

22       37.     Monsanto denies the allegations in paragraph 37 to the extent that they suggest

23   that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

24   glyphosate as a Group 2A agent in March 2015.

25       38.     In response to the allegations in paragraph 38, Monsanto admits that IARC issued

26   its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the

27   monograph was prepared by a "working group" of individuals selected by IARC who met over a

28   one week period in March 2015 to consider glyphosate along with a number of other substances.

1    Monsanto denies the allegation that all members of the working group are "experts." Monsanto

2    denies that the working group or anyone at IARC conducted a one-year review of the scientific

3    evidence related to glyphosate or that the working group's findings reflected a comprehensive

4    review of the latest available scientific evidence.  Monsanto also denies that the working group

5    considered all information available in the scientific literature and all data from government

6    reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 38.

7            39.      In response to the allegations in paragraph 39, Monsanto denies that the IARC

8    working group considered all of the data in the numerous studies that have been conducted

9    looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

10   that it reliably considered the studies that it purports to have reviewed, which frequently reach

11   conclusions directly contrary to those espoused by the IARC working group.  To the extent the

12   allegations purport to characterize statements made in the IARC monograph for glyphosate, the

13   statements in that document speak for themselves, but Monsanto lacks information or knowledge

14   sufficient to form a belief as to the accuracy of the source of said information and accordingly

15   denies the allegations.

16           40.      The allegations in paragraph 40 are vague and conclusory.  To the extent they

17   purport to characterize statements made in the IARC monograph for glyphosate, the statements

18   in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

19   to form a belief as to the accuracy of the source of said information and accordingly denies the

20   allegations.

21           41.      In response to the allegations in paragraph 41, to the extent the allegations purport

22   to characterize statements made in the IARC monograph for glyphosate, the statements in that

23   document speak for themselves, but to the extent that this paragraph means that more than *de*

24   *minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 41.

25           42.      In response to the allegations in paragraph 42, Monsanto admits that the IARC

26   working group identified a number of case control studies of populations with exposures to

27   glyphosate, but Monsanto denies that any of these studies provide any evidence of a human

28   health concern from such exposures.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

43.     Monsanto denies the allegations in paragraph 43.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

44.     In response to the allegations in the first and second sentences of paragraph 44, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.  In response to the allegations in the third, fourth, and fifth sentences of paragraph 44, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 45.

46.     In response to the allegations in paragraph 46, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

1   47.

2       48.     In response to the allegations in paragraph 48, Monsanto admits that EPA has a

3   technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

4   Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, and that

5   the Complaint accurately quotes from the identified document, which should be read in context

6   of EPA's precautionary regulatory mandate and the EPA's consistent finding that glyphosate

7   does not pose any cancer risk to humans.

8       49.     In response to the allegations in paragraph 49, Monsanto admits that the

9   Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

10  Coalition provides any reliable basis for any conclusions regarding potential health risks from

11  glyphosate.  Monsanto notes that a federal district court has characterized this same publication

12  as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928

13  F. Supp. 2d 10, 24 (D.D.C. 2013).

14      50.     Monsanto states that the term "toxic" as used in paragraph 50 is vague and

15  ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto

16  denies the allegations in paragraph 50.

17      51.     In response to the allegations in paragraph 51, Monsanto admits that Julie Marc

18  published the cited study in 2002 and states that the document speaks for itself and does not

19  require a response.  To the extent that a response is deemed required, Monsanto denies the

20  allegations in paragraph 51.

21      52.     In response to the allegations in the first sentence of paragraph 52 Monsanto

22  admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

23  regulation" in 2004.  To the extent that the first sentence of paragraph 52 characterizes the

24  meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 52.

25  In response to the remaining allegations in paragraph 52, Monsanto states that the document

26  speaks for itself and does not require a response.  To the extent that a response is deemed

27  required, Monsanto denies the remaining allegations in paragraph 52.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

53.      In response to the allegations in paragraph 53, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 53 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 53.

54.      In response to the allegations in paragraph 54, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 54 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 54.

55.      In response to the allegations in paragraph 55, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 55.

56.      In response to the allegations in paragraph 56, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 56.

57.      In response to the allegations in paragraph 57, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 57.

58.      Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 58.

59.      In response to the allegations in paragraph 59, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of

1    glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the

2    truth of the allegations about whether this suspension took effect and accordingly denies the

3    same.  Monsanto denies the remaining allegations in paragraph 59.

4        60.    In response to the allegations in paragraph 60, Monsanto admits that the IARC

5    monograph appears to be the alleged basis for the Sri Lankan government's actions, including

6    the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

7    allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations

8    regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 60.

9        61.    In response to the allegations in paragraph 61, Monsanto denies the alleged basis

10   for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has

11   explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC

12   ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety

13   concerns.  As of April 2016, the government of Colombia has resumed manual application of

14   glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiff's

15   expert testimony purporting to link these same aerial eradication operations with cancer as

16   scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto

17   denies the remaining allegations in paragraph 61.

18       62.    In response to the allegations in paragraph 62, Monsanto admits that the

19   California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was

20   required to add glyphosate to California's Proposition 65 list of chemicals in a process that

21   OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the

22   weight or quality of the evidence considered by IARC.  Monsanto further states that this decision

23   was not based upon any independent scientific analysis of glyphosate but instead was in response

24   to a provision of a California ballot proposition triggering such action based solely upon the

25   IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon

26   its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

1   pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was

2   required to list glyphosate violates the United States Constitution and the California Constitution.

3   On February 26, 2018, a federal district court enjoined California from requiring Proposition 65

4   warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 62 set

5   forth conclusions of law for which no response is required.  To the extent that a response is

6   deemed required, Monsanto denies the allegations in paragraph 62.

7          63.     The allegations in paragraph 63 set forth conclusions of law for which no

8   response is required.

9          64.     The allegations in paragraph 64 set forth conclusions of law for which no

10   response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere

11   presence of a listed substance in a consumer product does not require a warning.  Instead, a

12   warning need only be provided if the exposure to the listed substance, for the average user of the

13   product, exceeds the level at which cancer would be hypothesized to occur, based on

14   extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year

15   lifetime.

16          65.     In response to the allegations in paragraph 65, Monsanto admits that it has

17   brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition

18   65 list.

19          66.     In response to the allegations in paragraph 66, Monsanto admits that plaintiff

20   accurately quote from Monsanto's Complaint in the referenced lawsuit, and states that

21   Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit

22   cites to OEHHA's 2007 determination based upon its own independent evaluation of the

23   scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  The

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

[5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

remaining allegations in paragraph 66 comprise attorney characterizations and are accordingly denied.

67.     In response to the allegations in paragraph 67, Monsanto admits that OEHHA published a notice that glyphosate would be included on its Proposition 65 listing and admits that this notice was not based upon any independent scientific analysis of glyphosate but instead was in response to a section of the Labor Code triggering such action based solely upon the IARC classification.  Monsanto further states that OEHHA concluded in 2007, based upon its own independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

68.     In response to the allegations in paragraph 68, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 68 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 69 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

1   extent that paragraph 70 characterizes the scientific evidence regarding the safety of glyphosate-

2   based herbicides, Monsanto denies the remaining allegations in paragraph 70.

3       71.    In response to the allegations in paragraph 71, Monsanto states that the cited

4   document speaks for itself and does not require a response.  Monsanto denies that the self-

5   labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

6   extent that paragraph 71 characterizes the scientific evidence regarding the safety of glyphosate-

7   based herbicides, Monsanto denies the remaining allegations in paragraph 71.

8       72.    In response to the allegations in paragraph 72, Monsanto states that the cited

9   document speaks for itself and does not require a response.  Monsanto denies that the self-

10  labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

11  extent that paragraph 72 characterizes the scientific evidence regarding the safety of glyphosate-

12  based herbicides, Monsanto denies the remaining allegations in paragraph 72.

13      73.    In response to the allegations in paragraph 73, Monsanto states that the cited

14  document speaks for itself and does not require a response.  Monsanto denies that the self-

15  labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

16  extent that paragraph 73 characterizes the scientific evidence regarding the safety of glyphosate-

17  based herbicides, Monsanto denies the remaining allegations in paragraph 73.

18      74.    In response to the allegations in paragraph 74, Monsanto states that the cited

19  document speaks for itself and does not require a response.  Monsanto denies that the self-

20  labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

21  extent that paragraph 74 characterizes the scientific evidence regarding the safety of glyphosate-

22  based herbicides, Monsanto denies the remaining allegations in paragraph 74.

23      75.    Monsanto lacks information or knowledge sufficient to form a belief as to the

24  truth of the remaining allegations in paragraph 75 and therefore denies those allegations.

25      76.    Monsanto lacks information or knowledge sufficient to form a belief as to the

26  truth of the allegations in paragraph 76 regarding decedent's actions, use, or exposure, and

27  therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 76.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC

1    77.    Monsanto lacks information or knowledge sufficient to form a belief as to the

2  truth of the allegations in paragraph 77 and therefore denies those allegations.

3    78.    Monsanto denies the allegations in paragraph 78.

4    79.    Monsanto admits the allegations in paragraph 79.

5    80.    Monsanto lacks information or knowledge sufficient to form a belief as to the

6  truth of the allegations in paragraph 80 that decedent purchased and/or used Roundup®-branded

7  products and therefore denies those allegations.  Monsanto denies the remaining allegations in

8  paragraph 80.

9    81.    Monsanto lacks information or knowledge sufficient to form a belief as to the

10 truth of the allegations in paragraph 81 concerning decedent's alleged use of Roundup®-branded

11 products and therefore denies those allegations.  Monsanto denies the remaining allegations in

12 paragraph 81.

13    82.    Monsanto denies the allegations in paragraph 82.

14    83.    Monsanto denies that any exposure to Roundup®-branded products can cause

15 NHL and other serious illnesses and therefore denies those allegations in paragraph 83.

16 Monsanto states, however, that the scientific studies upon which IARC purported to base its

17 evaluation of glyphosate were all publicly available before March 2015.  Monsanto denies the

18 remaining allegations in paragraph 83.

19    84.    Monsanto denies the allegations in paragraph 84.

20    85.    Monsanto denies the allegations in paragraph 85.

21    86.    Monsanto lacks information or knowledge sufficient to form a belief as to the

22 truth of the allegations in paragraph 86 that decedent purchased and/or used Roundup®-branded

23 products and therefore denies those allegations.  Monsanto denies the remaining allegations in

24 paragraph 86.

25    87.    Monsanto denies that decedent's death was "wrongful" and denies that any

26 injuries alleged in the Complaint, including the injuries and death of decedent, were caused by

27 Roundup®-branded products.  Monsanto denies the remaining allegations in paragraph 87.

28    88.    Monsanto denies that any exposure to Roundup®-branded products can cause

1  NHL and other serious illnesses and therefore denies those allegations in paragraph 88.

2  Monsanto states, however, that the scientific studies upon which IARC purported to base its

3  evaluation of glyphosate were all publicly available before March 2015.  Monsanto denies the

4  remaining allegations in paragraph 88.

5        89.    Monsanto denies the allegations in paragraph 89.  All labeling of Roundup®-

6  branded products has been and remains EPA-approved and in compliance with all federal

7  requirements under FIFRA.

8        90.    Monsanto denies the allegations in paragraph 90.

9        91.    Monsanto denies the allegations in paragraph 91.

10        92.    Monsanto denies the allegations in paragraph 92.

11        93.    In response to the allegations in paragraph 93, Monsanto admits that glyphosate

12  repeatedly has been found to be safe to humans and the environment by regulators in the United

13  States and around the world and further admits that it has labeled glyphosate products as

14  approved by regulatory bodies consistent with those findings.  To the extent that the allegations

15  in the first sentence of paragraph 93 purport to quote a document, the document speaks for itself

16  and thus does not require any further response.  The remaining allegations in the first sentence of

17  paragraph 93 are vague and conclusory or comprise attorney characterizations and are

18  accordingly denied.  Monsanto lacks information or knowledge sufficient to support a belief as

19  to the truth of the allegations in the second and third sentences of paragraph 93 regarding

20  decedent's claimed purchase and/or use of Roundup®-branded products or decedent's reliance

21  and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph

22  93.

23        94.    Monsanto denies the allegations in paragraph 94.

24        95.    Monsanto denies the allegations in paragraph 95.

25        96.    Monsanto denies that any exposure to Roundup®-branded products can cause

26  NHL and other serious illnesses and therefore denies those allegations in paragraph 96.

27  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the

28  allegations in paragraph 96 regarding decedent's claimed use of or exposure to Roundup®-

1   branded products and therefore denies those allegations.  Monsanto denies the remaining

2   allegations in paragraph 96.

3       97.     Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 97 regarding decedent's claimed use of or exposure to

5   Roundup®-branded products and decedent's claimed reliance and therefore denies those

6   allegations.  Monsanto denies the remaining allegations in paragraph 97.

7       98.     In response to the allegations in paragraph 98, Monsanto admits that plaintiff

8   purports to bring a claim for wrongful death but denies any liability as to that claim.   Monsanto

9   denies the remaining allegations in paragraph 98.

10      99.     Monsanto denies the allegations in paragraph 99.

11      100.    Monsanto denies the allegations in paragraph 100.

12      101.    Monsanto denies the conduct alleged in paragraph 101 and denies that plaintiff is

13  entitled to punitive damages.  The remaining allegations in paragraph 101 set forth conclusions

14  of law for which no response is required.  To the extent that a response is deemed required,

15  Monsanto denies the allegations in paragraph 101.

16      102.    Monsanto denies the allegations in paragraph 102.

17      In response to the "WHEREFORE" paragraph following paragraph 102, Monsanto

18  demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be

19  dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

20  fees as allowed by law and such further and additional relief as this Court may deem just and

21  proper.

22      Every allegation in the Complaint that is not specifically and expressly admitted in this

23  Answer is hereby specifically and expressly denied.

24                  **SEPARATE AND AFFIRMATIVE DEFENSES**

25      1.      The Complaint, in whole or part, fails to state a claim or cause of action against

26  Monsanto upon which relief can be granted.

27      2.      Plaintiff's claims are barred because plaintiff cannot proffer any scientifically

28  reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's and/or decedent's alleged injuries.

4.      Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.      Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.      Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's and/or decedent's injuries, if any, were the result of conduct of plaintiff, decedent, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to decedent's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims in whole or in part.

12.     Applicable statutes of limitations and/or repose, bar plaintiff's claims in whole or in part.

13.     Decedent's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff and/or decedent suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's and/or decedent's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and/or decedent and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff and/or decedent.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.     Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Mississippi Constitution, and/or other applicable state constitutions.

19.     Plaintiff's claims for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Mississippi law, and/or other applicable state laws.

20.     Plaintiff's claims for punitive damages are barred and/or limited by operation of state and/or federal law, including Miss. Code Ann. § 11-1-65.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's and/or decedent's own contributory/comparative negligence.

22.     Plaintiff's common law claims are barred, in whole or part, by application of the Mississippi Product Liability Act, Miss. Code Ann. § 11-1-63 (1993).

23.     Plaintiff's claims are barred in whole or in part by plaintiff's and/or decedent's own failure to mitigate damages.

24.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

25.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

26.     If plaintiff and/or decedent has been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

27.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize or limit such claims.

28.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

29.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

1   DATED:  May 6, 2020                         Respectfully submitted,

2
                                               /s/ Joe G. Hollingsworth
3                                              Joe G. Hollingsworth (*pro hac vice*)
                                               (jhollingsworth@hollingsworthllp.com)
4                                              Eric G. Lasker (*pro hac vice*)
                                               (elasker@hollingsworthllp.com)
5                                              HOLLINGSWORTH LLP
6                                              1350 I Street, N.W.
                                               Washington, DC  20005
7                                              Telephone:  (202) 898-5800
                                               Facsimile:  (202) 682-1639
8
                                               *Attorneys for Defendant*
9                                              *MONSANTO COMPANY*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-02484-VC