# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

IN RE: ROUNDUP PRODUCTS LIABILITY
LITIGATION

_____

THIS DOCUMENT RELATES TO:

*Ramirez, et al. v. Monsanto Co.*,
Case No. 3:19-cv-02224

MDL NO. 2741

Case No. 3:16-md-02741-VC

**DECLARATION OF ELIZABETH J.
CABRASER IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT,
APPOINTMENT OF INTERIM CLASS
AND SUBCLASS COUNSEL,
DIRECTION OF NOTICE UNDER
FED. R. CIV P. 23(e), SCHEDULING OF
A FAIRNESS HEARING, AND STAY
OF THE FILING AND PROSECUTION
OF ROUNDUP-RELATED ACTIONS
BY SETTLEMENT CLASS MEMBERS**

I, Elizabeth J. Cabraser, declare as follows:

1.        I am a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser").  I am a member in good standing of the Bars of the State of California and the Northern District of California.  I respectfully submit this declaration in support of the Motion for Preliminary Approval of Class Settlement, Appointment of Interim Class and Subclass Counsel, Direction of Notice Under Fed. R. Civ. P. 23(e), Scheduling of a Fairness Hearing, and Stay of the Filing and Prosecution of Roundup-Related Actions by Settlement Class Members.  Except as otherwise noted, I have personal knowledge of the facts set forth herein, and could testify competently to them if called upon to do so.

2.        The Settlement Agreement is attached hereto as **Exhibit A**.

<u>**Settlement Negotiations**</u>

3.        The original Class Action Complaint in this action was filed by Robert Ramirez on April 24, 2019.  The *Ramirez* Complaint sought, *inter alia*, a single determination, under Rules 23(b)(2) and 23(c)(4), of the question of general causation.  Defendant filed its Answer to the *Ramirez* Complaint on July 24, 2019.  In late July 2019, after the Court appointed Kenneth R. Feinberg as mediator, settlement discussions began in earnest under his supervision. Those discussions continued between proposed Class and Subclass Counsel and Monsanto for nearly a full year, in person during the fall and winter of 2019, and then remotely once the COVID-19 pandemic began.  Beginning in January 2020, meetings occurred on a virtually daily basis, nights and weekends not excepted.  Negotiations were intense and included the exchange of dozens and dozens of drafts of settlement documents and memoranda, regular status reports to the mediator, and direct input on Settlement terms from the expert vendors proposed to administer the programs.

4.        While the content of the negotiations is confidential, the integrity and arms-length nature of the process was ensured, and can be attested to, by the mediator.  Settlements of this magnitude, providing programmatic benefits this innovative and comprehensive, are never easy, and the parties have been at many times far apart and often at odds.  Each side threatened

DECL. OF ELIZABETH J. CABRASER IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
MDL NO. 2741, CASE NO. 3:16-MD-02741

to walk away at multiple points, and the mediator's direct resolution of disputes was required, at times, to prevent the discussions from collapsing altogether.  Nonetheless, agreement on the essential terms of a class settlement that is designed to solve the overarching question of this litigation, general causation, in a way that benefits as well as binds the class of those left out of the settlement of the individual cases making up this MDL, was ultimately reached after nearly one year of unrelenting efforts.

5.          The parties did not engage in substantive negotiation about or reach any agreement on attorneys' fees, reimbursement of expenses, or class representative service awards (all of which will be subject to future application to the court) until they had resolved all essential terms of the relief available to the Class.

### The Proposed Settlement Class/Subclass Representation

6.          At all times during the necessary stages of the negotiations, the Subclasses were also represented by the proposed Representatives for each Subclass, whose claims are typical of the Subclasses they seek to represent, and proposed Subclass Counsel (William Audet for Subclass One and TerriAnne Benedetto for Subclass Two).

7.          Plaintiff Robert Ramirez is a resident of California.  While working for Roto-Rooter in Salinas, California from 1999 to 2013, Ramirez utilized a concentrated mix of Roundup in the maintenance yard.  He was diagnosed with Double Expressor Large B-Cell Non-Hodgkin's Lymphoma in 2018 at the Salinas Valley Memorial Hospital in Salinas, and underwent chemotherapy treatment at Stanford University Hospital.  He is a proposed Representative of the Class and Subclass One.

8.          Plaintiff Jerry Agtarap is a resident of California.  He used Roundup daily for more than 20 years in his job as a certified landscaper.  He has not been diagnosed with NHL.

9.          Plaintiff Dexter Owens is a resident of California.  He worked for the Fresno Unified School District in Fresno, California, where he sprayed Roundup around the school grounds for many years.  In 2017, after a month of spraying Roundup, he developed a rash on his

left hand, for which he sought treatment and was prescribed an ointment.  He has not been diagnosed with NHL.

10.        Plaintiff John Elko is a resident of South Carolina.  Between March 2004 and May 2014, while working as an assistant superintendent of groundskeeping at Possum Trot Golf Club, Elko mixed and sprayed Roundup on a daily basis.  He has not been diagnosed with NHL.

11.        Plaintiffs Agtarap, Owens, and Elko are the proposed Representatives of the Class and Subclass Two.

12.        The proposed Class and Subclass Representatives regularly communicated with their attorneys regarding the case overall and the allegations in the complaint.  Each reviewed and approved the Amended Class Action Complaint.  Each was also consulted on the terms of the Settlement Agreement before it was signed, approves its terms, and supports its approval by the Court.  Each has expressed continued willingness to protect the Class until the Settlement is approved and its administration completed.

<u>Selection of Claims Administrator, DAGP Administrator,<br>and Settlement Class Notice Agents</u>

13.        Class Counsel selected Wolf Garretson, LLC to serve as proposed Diagnostic Accessibility Grant Program ("DAGP") Administrator based on Garretson's experience with the administration of complex litigation and settlement programs involving medical-related relief.  Such programs include the *Deepwater Horizon*, *NFL Concussion*, and *World Trade Center* cases.  Garretson's qualifications are attached as **Exhibit B**.

14.        Class Counsel selected Verus, LLC to serve as proposed Claims Administrator based on their considerable experience with asbestos litigation and other high-stakes, complex class litigation.  Verus' qualifications are attached as **Exhibit C**.

15.        To select the proposed Settlement Class Notice Agents, Class Counsel solicited proposals from four well-known and experienced notice vendors, and received detailed and competitive bids from each vendor.  After reviewing these proposals and engaging in

multiple rounds of discussions with the providers, Class Counsel selected Kinsella Media and Signal IM, whose proposals represented the most cost-effective, efficient, and comprehensive plans, and the ones best fit for the unique Class.  Kinsella's qualifications, along with the notice plan, are set out in the accompanying Declaration of Shannon Wheatman.  Signal's qualifications and the work they have done thus far are set out in the accompanying Declaration of James Messina.

## **Additional Work Performed on Behalf of the Class**

16.     In addition to negotiating the Settlement itself, Class Counsel worked over many months closely with the DAGP and Claims Administrator, as well as the Settlement Class Notice Agents, to design the Settlement programs to meet the needs of a unique Class.

17.     The first step was to understand where Class Members—persons exposed to Roundup—live and work.  With the Claims Administrator, Class Counsel used demographic and occupational data sourced from various government agencies.  The result was reliable estimates of the both the population of workers in agricultural and groundskeeping occupations, and the distribution of that population throughout the United States.

18.     The Claims Administrator refined these estimates using data on per capita spending on gardening and landscaping products, as well as data acquired from Monsanto regarding retail sales of Roundup.  The results were visuals—"heat maps"—and tabulations of occupational and residential populations, aggregated at the ZIP Code, County, core-based statistical area ("CBSA"), and State levels.

19.     The data were further refined using extracts from the USDA's Agricultural Census, which identified the specific geographic regions where Roundup is most commonly used, and the National Agricultural Worker's Survey, which yielded information on the countries of origin of migrant farm labor entering the United States each year.

20.     Class Counsel also worked to understand where Class Members diagnosed or likely to be diagnosed with NHL are concentrated using datasets from the National Cancer Institute.

21.     Having ascertained where Class Members live and work, the next step was to talk to them. Class Counsel commissioned Settlement Class Notice Agent Signal IM to conduct in-depth long-form interviews of migrant agricultural workers, non-migrant agricultural workers, and landscapers. Signal also conducted a nationwide survey of individuals likely to fit the Class definition who worked in the key industries most affected by professional Roundup exposure: landscaping and groundskeeping, agriculture, and farm, ranch, or aquaculture animal operations. These efforts yielded crucial insights on how to design the Class Notice Plan to alert Class Members to the Settlement, and to enable them to participate in it; which Notice channels to use to make Notice most effective; and which third-party organizations to target for the DAGP outreach effort. All of this information was used in designing the Notice Plan and the Settlement programs. Further details on this work are provided in the Declaration of James Messina.

22.     Class Counsel also became well-versed in the science necessary both to design the DAGP and frame the Science Panel inquiry. Class Counsel, working with the DAGP Administrator, reviewed literature on the diagnostic criteria for NHL in order to understand the clinical capability and capacity requirements necessary for DAGP grant recipients. And Class Counsel retained and worked with consulting experts on questions of epidemiology and toxicology to understand how to frame the questions posed to the Science Panel.

23.     These efforts have only intensified with the filing for preliminary approval. Class Counsel and the Administrators continue to work to identify additional data sources on NHL incidence, as well as to design future field studies to make the DAGP and Interim Assistance Grant programs maximally effective, and to develop a predictive model to forecast the demand on the Settlement programs.

**Qualifications of Proposed Class Counsel Relevant to Fed. R. Civ. P. 23(g)**

24.     The following information is respectfully submitted in support of the application for appointment as interim Settlement Class/Subclass Counsel under Rule 23(g)(3).

25.     Lieff Cabraser is a law firm with offices in San Francisco, New York, Nashville, and Munich, Germany. It is one of the oldest, largest, and most successful law firms

in the country devoted exclusively to representing plaintiffs, particularly in class actions and

mass tort litigation.  Our current practice focuses on complex and class action litigation

involving product liability, consumer, employment, financial, securities, environmental, and

personal injury matters.  A summary version of Lieff Cabraser's current firm resume, showing

some of the firm's experience in complex and class action litigation,[1] is attached as **Exhibit D**.

Lieff Cabraser's experience in national class action litigation traces to the 1960s, with founding

partner and proposed Class Counsel Robert L. Lieff's involvement in the *Texas Gulf Sulphur*

*Litigation* and other early financial fraud class actions.  Lieff Cabraser's utilization of the class

action mechanism to prosecute and resolve mass disaster, toxic exposure, environmental,

medical mass torts, personal injury, and other tort claims include the *Neptune Society Cases* and

the *Sconce/Lamb Cases* in California state court class actions in the 1980s; the federal national

class action settlements in *In re Silicone Gel Breast Implants Litigation*, MDL No. 926; the

international class action settlements in *Holocaust Victims Assets ("Swiss Banks") Litigation*,

105 F. Supp. 2d 139 (E.D.N.Y. 2000); the medical monitoring/personal injury class certification

and settlement in *In re Diet Drugs* litigation, MDL No. 1203; the class certification and class

trial in *In re the Exxon Valdez* (D. Alaska) in 1994-95; the class certification, trial, and settlement

of *In re Tri-State Crematory Litigation*, MDL No. 1467, in 2005; and the economic and medical

class settlements in *In re Deepwater Horizon*, MDL No. 2017, in 2012.

26.     In this District, Lieff Cabraser has been appointed to numerous leadership

roles in high-profile, complex litigation and has guided many of these cases to successful

resolution.  A few illustrative examples, from the past ten years, include:

a.     *In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, and
Products Liability Litigation*, MDL No. 2672 (N.D. Cal.) (Ms. Cabraser serves as Lead Class
Counsel/Chair of Plaintiffs' Steering Committee in litigation yielding four substantial consumer
settlements valued at $10.033 billion (2-liter settlement), $1.2 billion (3-liter settlement), $327.5
million (Bosch settlement), and $96.5 million (gasoline vehicle fuel economy settlement)).

---

[1] The firm's full resume can be found online at
https://www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf.

       b.      *Fiat Chrysler Dodge Jeep Ecodiesel Litigation*, MDL No. 2777, 17-MD-02777-EMC (N.D. Cal.) (Ms. Cabraser serves as Lead Class Counsel/Chair of Plaintiffs' Steering Committee in litigation securing $375 million for consumer class);

       c.      *In re Bextra/Celebrex Marketing, Sales Practices and Product Liability Litigation*, MDL No. 1699 (N.D. Cal.) (Lead Counsel in MDL yielding over $800 million in tort and consumer settlements).

       d.      *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) (Co-Lead Counsel in litigation yielding $470 million settlement);

       e.      *In re High-Tech Employee Antitrust Litigation*, No. 11 CV 2509 (N.D. Cal.) (Co-Lead Class Counsel in case securing settlements totaling $435 million);

       f.      *In re Wells Fargo & Company Shareholder Derivative Litigation*, No. 3:16-cv-05541 (N.D. Cal.) (Co-Lead Counsel in $240 million derivative settlement);

       g.      *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913-WHO, MDL No. 2913 (N.D. Cal.).(Co-Lead Counsel);

       h.      *In re Pacific Fertility Center Litigation*, Case No. 3:18-cv-01586-JSC (N.D. Cal.) (Interim Co-Lead Counsel);

       i.      *In re California Bail Bond Antitrust Litig.*, 3:19-cv-00717-JST (N.D. Cal.) (Interim Lead Class Counsel);

       j.      *In re Capacitors Antitrust Litigation*, No. 3:14-cv-03264 (N.D. Cal.) (Plaintiffs' Steering Committee); and

       k.      *In re Lithium-Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal.) (Interim Co-Lead Counsel; $113.45 million settlement pending).

      27.      Proposed Class Counsel Steven E. Fineman is Lieff Cabraser's firm-wide Managing Partner, based in our New York office.  In that role for past 13 years, Mr. Fineman has led the firm to be recognized as one of the country's top plaintiff-side litigation firms.  Mr. Fineman has 30 years of experience in mass action and financial fraud litigation for plaintiffs in class, group and individual actions in federal and state courts throughout the country, including the above-referenced *Breast Implants*, *Diet Drugs*, and *Deepwater Horizon* litigation.  Mr. Fineman has been widely recognized as a leading plaintiff-side litigator, and writes and speaks frequently on complex litigation.  His summary bio is included in Exhibit D.

      28.      I have personally represented individual plaintiffs and plaintiff classes in financial, consumer, employment, civil rights, human rights, environmental, and tort cases since my admission to the bar in 1978.  I have served as court-appointed counsel in multidistrict

litigation since 1981, and in leadership roles in over 50 MDLs and coordinated proceedings. I have also devoted substantial time to service on the Council of the American Law Institute; the Advisory Committee for Federal Civil Rules (2010-2017); the American Academy of Arts and Sciences; teaching complex litigation, class actions, and consumer seminars at Columbia and Berkeley Law Schools; and as Executive Editor of the ABA Class Actions & Derivative Suits Committee's annual "Fifty-State Survey: The Law of Class Action." My summary bio is included in Exhibit D.

29.     My colleagues, proposed Class Counsel James R. Dugan, II, Samuel Issacharoff, William M. Audet, and TerriAnne Benedetto are highly accomplished attorneys with ample experience handling complex class actions. William Audet is also proposed Subclass One Counsel. Proposed Subclass Two Counsel is TerriAnne Benedetto.

30.     James R. Dugan, II is the founding partner of The Dugan Law Firm, APLC, and specializes in class action and mass tort litigation. As a result of his demonstrated skill and experience in class action and mass tort practice, Mr. Dugan has been appointed by the courts to serve in key leadership positions in a number of significant class actions. Mr. Dugan recently served a member of the Plaintiffs' Steering Committee in *In Re: National Collegiate Athletic Association Student-Athlete Concussion Litigation*, MDL No. 2492 (N.D. Ill.), which resulted in a settlement involving $75 million in equitable relief, including a 5-year, $70 million medical monitoring program. Other high-profile, complex class actions in which Mr. Dugan has been appointed to leadership roles include: *In Re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (PSC, litigation ongoing); *In Re: Baycol Products Liability Litigation*, MDL No. 1431 (D. Minn.) (PSC, $1 billion settlement); *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 (S.D. Ill.) (PSC, $650 million settlement); *In Re: National Football Players' Concussion Injury*, MDL No. 2323  (E.D. Pa.) (PSC, uncapped class settlement); *In Re: Inter-Op Hip Prosthesis Product Liability Litigation*, MDL No. 1401 (N.D. Ohio) (PSC, $1.2 billion settlement). Mr. Dugan's relevant credentials are attached as **Exhibit E**.

31.      Samuel Issacharoff is the Reiss Professor of Constitutional Law at New York University School of Law and an internationally renowned expert in complex litigation. He has been a chaired professor at the University of Texas, Columbia University and now at NYU, and is a Fellow of the American Academy of Arts & Sciences.  He has published extensively on class actions, MDLs, and intricate questions of procedure that come up in those contexts, including an article co-published with me in the NYU Law Review, *The Participatory Class Action*, 92 N.Y.U. L. REV. 846 (2017).  Professor Issacharoff regularly appears in courts in cases involving complex litigation, most frequently as appellate counsel.  He was the lead appellate lawyer for the settlement class in the *BP Deepwater Horizon Litigation*, in the *NFL Concussion Litigation*, and was one of the appellate lawyers in *In re Volkswagen 'Clean Diesel'*. He is currently appellate counsel in the *Opioids Litigation*, MDL No. 2804, and will argue in defense of the 2019 certification of a Negotiation Class by Judge Polster.  At the district court level, he has been appointed a Futures Claims Representative in the THAN Asbestos Trust, and he serves as liaison counsel before Judge Dow in *In Re: Dealer Management Systems Antitrust Litigation*, No. 1:18-cv-00864, MDL No. 2917 (N.D. Ill.).  Professor Issacharoff's relevant credentials and resume are attached as **Exhibit F**.

32.      William M. Audet is the founding partner of Audet & Partners, LLP, a San Francisco based law firm that focuses on complex individual and class actions.  Since its founding in 2007, Audet & Partners has recovered hundreds of millions of dollars and achieved significant other relief in class action, mass action, and other complex litigation throughout the United States.  In recognition of his experience and dedication to his clients, Mr. Audet has been appointed to leadership roles in dozens of significant MDLs and other high-profile litigation, including:  *In re Zyprexa Product Liability Litigation*, MDL No. 1596 (E.D.N.Y.) (Co-Lead Counsel, Chair of the PEC); *In re Bextra/Celebrex Marketing Sales Practices and Product Liability Litigation*, MDL No. 1699 (N.D. Cal.) (PEC); *Loretz v. Regal Stone, Ltd.*, No. 07-cv-05800-SC (N.D. Cal.) (Co-Lead Counsel); *Postier v. Louisiana-Pacific Corp.*, No. 09-cv- 03290-JCS, 2013 U.S. Dist. LEXIS 86372 (N.D. Cal.) (Sole Class Counsel); and *In re PRK/Lasik*

*Consumer Litigation*, Master File No. CV- 772894 (Santa Clara Superior Court) (Lead Counsel).
Mr. Audet's other experience includes teaching at the University of Wisconsin Law School, and
clerking for the Honorable Fern M. Smith and Alfonso M. Zirpoli.  He is also the co-author of a
book entitled "Handling Federal Discovery."  Mr. Audet's relevant credentials are attached as
**Exhibit G**.

33.         TerriAnne Benedetto is an attorney at The Dugan Law Firm, APLC.  Ms.
Benedetto has 30 years of experience representing clients in complex civil litigation and class
actions, for whom she has been involved in securing numerous multimillion-dollar verdicts and
settlements.  Recently, Ms. Benedetto participated on the negotiating team on behalf of retired
professional football players who developed or became at risk for serious cognitive impairment
and other life-altering conditions, like ALS and Parkinson's Disease, as a result of years of
concussive and sub-concussive blows to the head, in *In re National Football League Players'
Concussion Injury Litigation* MDL No. 2323 (E.D. Pa.).  She took the lead role on drafting briefs
in federal district and circuit courts on a variety of issues related to court approval and
affirmance of the resulting uncapped *NFL Concussion* class action settlement, valued at over $1
billion.  She also spearheaded the efforts to protect class members from deceptive practices by
certain lenders and others in that case.  Ms. Benedetto has been involved in numerous other high-
profile class actions, including *In re Volkswagen "Clean Diesel,"* MDL No. 2672 (N.D. Cal.); *In
re Polyurethane Foam Antitrust Litigation*, MDL No. 2196 (N.D. Ohio); *In re Lupron Marketing
and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); and *In re Pharma. Industry Average
Wholesale Price Litigation*, MDL No. 1456 (D. Mass.).  Ms. Benedetto's relevant credentials are
attached as **Exhibit H**.

34.         The form Escrow Agreement for deposit of Settlement funding is attached
as **Exhibit I**.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this 24th day of June, 2020, in San Francisco, California.

DECL. OF ELIZABETH J. CABRASER IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
MDL NO. 2741, CASE NO. 3:16-MD-02741

_/s/ Elizabeth J. Cabraser_____
Elizabeth J. Cabraser

DECL. OF ELIZABETH J. CABRASER IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
MDL NO. 2741, CASE NO. 3:16-MD-02741