# CABRASER DECLARATION

# EXHIBIT  A

# SETTLEMENT AGREEMENT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
| --- | --- | --- |
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | : | MDL NO. 2741 |
|  | : |  |
|  | : | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | : |  |
|  | : |  |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | : |  |

**CLASS ACTION SETTLEMENT AGREEMENT**

Dated:      June 24, 2020

# TABLE OF CONTENTS

**Page**

ARTICLE I Definition of Settlement Class and Subclasses.................................................3

ARTICLE II Definitions ....................................................................................................4

ARTICLE III Settlement Benefits for Class Members.....................................................15

ARTICLE IV Notice and Opt Outs .................................................................................16

ARTICLE V Information and Registration Process .........................................................17

ARTICLE VI Science Panel .............................................................................................23

ARTICLE VII Defendant's Payment Obligations.............................................................39

ARTICLE VIII Diagnostic Accessibility Grant Program.................................................43

ARTICLE IX Research Funding Program........................................................................51

ARTICLE X Interim Assistance Grants ...........................................................................52

ARTICLE XI Interim Assistance Grant Determinations, Payments, and Appeals ......................56

ARTICLE XII Class Action Settlement Administration ..................................................65

ARTICLE XIII Settlement Fund Administration ..............................................................76

ARTICLE XIV Governmental Payors..............................................................................79

ARTICLE XV Releases and Covenants Not to Sue .........................................................82

ARTICLE XVI Preliminary Approval..............................................................................86

ARTICLE XVII Objections..............................................................................................88

ARTICLE XVIII Final Order and Judgment and Dismissal With Prejudice ...............................89

ARTICLE XIX Enforceability of Settlement Agreement and Dismissal of Claims ....................91

ARTICLE XX Communications to the Public .................................................................93

ARTICLE XXI Termination..............................................................................................94

ARTICLE XXII Treatment of Confidential Information .................................................96

ARTICLE XXIII Tolling Pending Science Panel Determination.................................................96

ARTICLE XXIV Attorneys' Fees ................................................................................97

ARTICLE XXV Denial of Wrongdoing, No Admission of Liability ...........................97

ARTICLE XXVI Representations and Warranties .......................................................98

ARTICLE XXVII Cooperation......................................................................................99

ARTICLE XXVIII Continuing Jurisdiction .................................................................99

ARTICLE XXIX Role of Class Counsel and Subclass Counsel .................................100

ARTICLE XXX Additional Provisions .......................................................................100

*ROBERT RAMIREZ, ET AL. V. MONSANTO COMPANY*,
**CASE NO. 3:16-MD-02741-VC & 3:19-CV-02224-VC**
<u>**CLASS ACTION SETTLEMENT AGREEMENT AS OF June 24, 2020**</u>
**(subject to Court approval)**

<u>**PREAMBLE**</u>

This SETTLEMENT AGREEMENT, dated as of June 24, 2020 (the "Settlement Date"), is made and entered into by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel. This Settlement Agreement is intended by the Parties fully, finally, and forever to resolve, discharge, and settle the differences among them with respect to this Lawsuit, as set forth below, subject to review and approval by the Court.[*]

<u>**RECITALS**</u>

WHEREAS, on April 24, 2019, the original complaint in this Lawsuit was filed in the Court on behalf of a Class Representative seeking to represent a class of persons allegedly exposed to Roundup Products;

WHEREAS, on July 24, 2019, an answer in this Lawsuit was filed by the Defendant;

WHEREAS, on June 24, 2020, an amended complaint in this Lawsuit was filed in the Court on behalf of Class Representatives and Subclass Representatives seeking to represent a class of persons allegedly exposed to Roundup Products, including two Subclasses of such persons (as defined specifically below, the "Class Action Complaint");

WHEREAS, the original complaint alleged, and the Class Action Complaint alleges, that exposure to Roundup Products can cause Non-Hodgkin's Lymphoma in humans (the "general causation dispute");

WHEREAS, the original complaint sought, and the amended complaint seeks, certification of an issue class under Rules 23(b) and (c)(4) of the Federal Rules of Civil Procedure to seek a litigated determination of the general causation dispute on a class-wide basis;

WHEREAS, the Defendant denies the allegations in this Lawsuit and the Roundup Lawsuits, the allegations that exposure to Roundup Products can cause Non-Hodgkin's Lymphoma in humans, and any liability to the Class Representatives and Subclass Representatives, the Settlement Class, or any Settlement Class Member for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind, and would assert a number of

---

[*]   Capitalized terms have the meanings provided in Article II, unless a section or subsection of the Settlement Agreement provides otherwise.

legal and factual defenses against plaintiffs' claims if they were litigated to conclusion (including against certification of the purported class for litigation purposes);

WHEREAS, following extensive, arm's-length, good faith negotiations, the Parties have agreed to a settlement of this Lawsuit on the terms and conditions set forth below, including (1) an agreement to submit the general causation dispute for resolution on a class-wide basis to a panel comprised of qualified scientists on the terms and conditions, and in the manner, described below; and (2) the funding by the Defendant of a Settlement Fund to fund medical service providers to increase the availability of diagnostic evaluation to detect Non-Hodgkin's Lymphoma in Settlement Class Members, research into diagnosis and treatment of Non-Hodgkin's Lymphoma, and interim assistance grants to Settlement Class Members with Non-Hodgkin's Lymphoma diagnoses during the pendency of the Science Panel's work, all on the terms and conditions and in the manner described below;

WHEREAS, as part of the settlement of this Lawsuit, the Parties will seek from the Court a stay of Roundup Lawsuits and Related Party Lawsuits that could be brought by Settlement Class Member Parties against the Monsanto Parties or the Related Parties until the Science Panel Determination;

WHEREAS, after careful consideration, the Class Representatives and Subclass Representatives, and their respective Counsel, have concluded that it is in the best interests of the Class Representatives and Subclass Representatives and the Settlement Class and Subclasses to enter into the Settlement Agreement. After arm's length negotiations with Counsel for the Defendant, including through the efforts of the court-appointed mediator, the Class Representatives and Subclass Representatives have considered, among other things: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of fact gathering completed; (3) the potential for the Defendant to prevail on threshold issues and on the merits; and (4) the range of possible recovery, and have determined that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class Representatives and Subclass Representatives and the Settlement Class and Subclasses;

WHEREAS, the Defendant has determined to enter into the Settlement Agreement solely to avoid the costs, risks, and burden of litigation;

WHEREAS, the Settlement Agreement is subject to and conditioned upon approval of the Court as provided by Rule 23 of the Federal Rules of Civil Procedure, and the Parties intend promptly to seek such approval and entry by the Court of the Preliminary Approval Order and, thereafter, the Final Order and Judgment as provided below;

WHEREAS, the Settlement Agreement will not be construed (1) as evidence of, or as an admission by, the Defendant of any liability or wrongdoing whatsoever or as an admission regarding the general causation dispute, or (2) as an admission by the Class Representatives or Subclass Representatives, or Settlement Class Members, of any lack of merit in their claims;

WHEREAS, the Scientific Analysis agreed to by the Parties is intended solely as a means to expedite and simplify the resolution of litigation, and is not intended to substitute for the

judgment of or any findings that have been made by regulatory authorities, including the Environmental Protection Agency;

NOW, THEREFORE, it is agreed that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

## ARTICLE I
## Definition of Settlement Class and Subclasses

Section 1.1   <u>Definition of Settlement Class</u>.

(a)   "Settlement Class" means (i) those individuals who are either citizens or Residents of the United States as of June 24, 2020 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of June 24, 2020 both (1) have been exposed to Roundup Products through the application of Roundup Products and (2) have not commenced a lawsuit or otherwise retained counsel with respect to any individual actual or potential personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants. "Exposure to Roundup Products through the application of Roundup Products" includes exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

(b)   The following Persons are excluded from the Settlement Class:

(i)   Judicial officers and associated court staff assigned to this case, and their immediate family members;

(ii)   Past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries; and

(iii)   All those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class in the manner approved by the Court and set forth in the Settlement Class Notice.

Section 1.2   <u>Definition of Subclasses</u>.

(a)   "Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants.

(b)   "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants.

# ARTICLE II
## Definitions

Section 2.1    <u>Definitions</u>.

For the purposes of the Settlement Agreement, the following terms (designated by initial capitalization throughout the Settlement Agreement) will have the meanings set forth in this Section.

Unless the context requires otherwise, (i) words expressed in the masculine will include the feminine and neuter gender and vice versa; (ii) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (iii) the word "or" will not be exclusive; (iv) the word "extent" in the phrase "to the extent" will mean the degree to which a subject or other thing extends, and such phrase will not simply mean "if"; (v) references to "day" or "days" in the lower case are to calendar days, but if the last day of a period is a Saturday, Sunday, or legal holiday (as defined in Rule 6(a)(6) of the Federal Rules of Civil Procedure), the period will continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (vi) references to the Settlement Agreement will include all exhibits hereto (the "Exhibits"); (vii) references to any law will include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (viii) the terms "include," "includes," and "including" will be deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of similar import; and (ix) references to dollars or "$" are to United States dollars.

(a)    "Additional Permitted Fund Uses" are defined in Section 7.5.

(b)    "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

(c)    "Appeals Form" means that document that Settlement Class Members or Class Counsel, as the case may be, will submit when appealing Interim Assistance Grant Determinations by the Claims Administrator, as set forth in Section 11.10.

(d)    "Approved Registration Number" is defined in Section 5.3(g).

(e)    "Assistance Threshold" is defined in the Interim Assistance Grant Guidelines in Exhibit 7.

(f)    "Bradford Hill Guidelines" means the criteria proposed by Sir Austin Bradford Hill in *The Environment and Disease: Association or Causation?*, 58 Proc. Royal Soc'y Med. 295 (1965).

(g)    "Causation Established Finding" is defined in Section 6.3(c).

(h)    "Causation Not Established Finding" is defined in Section 6.3(b).

(i)     "Claim Form" means that document to be submitted to the Claims Administrator by a Settlement Class Member or Representative Claimant requesting an Interim Assistance Grant, as set forth in Article XI.

(j)     "Claim Package" means the Claim Form and other documentation, as set forth in Section 11.2.

(k)     "Claims" means past, present and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, Liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations and/or any other legal (including common law), foreign, statutory, equitable or other theory or right of action, whether in law or in equity, fixed, contingent, or non-contingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, and whether direct, representative, derivative, class or individual in nature, in any forum that any Person had, has, or may have in the future.

(l)     "Claims Administrator" means that Person(s), agreed to and jointly recommended by Class Counsel and Counsel for the Defendant, and appointed by the Court, to perform the responsibilities assigned to the Claims Administrator under the Settlement Agreement, including, without limitation, as set forth in Section 12.2.

(m)     "Claims Administrator Costs" are defined in Section 12.2(c).

(n)     "Class Action Complaint" means the complaint captioned Plaintiffs' Amended Class Action Complaint filed in this Lawsuit by consent on June 24, 2020.

(o)     "Class Action Fairness Act" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711-1715.

(p)     "Class Action Settlement" means that settlement set forth in the Settlement Agreement.

(q)     "Class Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to the Settlement Agreement, namely, Elizabeth J. Cabraser, Robert L. Lieff, and Steven E. Fineman of Lieff Cabraser Heimann & Bernstein,

LLP; Samuel Issacharoff; James R. Dugan, II and TerriAnne Benedetto of the Dugan Law Firm, APLC, and William M. Audet of Audet & Partners, LLP, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Class.

(r)   "Class Representatives" means Robert Ramirez; Jerry Agtarap; Dexter Owens; and John Elko, or such other or different persons as may be appointed by the Court as the representatives of the Settlement Class.

(s)   "CMS" means the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the Medicare Program and the Medicaid Program.

(t)   "Confidential Information" is defined in Section 22.1.

(u)   "Counsel for the Defendant" means Wachtell, Lipton, Rosen & Katz and Arnold & Porter Kaye Scholer LLP, or any law firm or attorney so designated in writing by the Defendant.

(v)   "Court" means the United States District Court for the Northern District of California, Judge Vince Chhabria (or any successor judge designated by the United States District Court for the Northern District of California, or a magistrate judge designated by Judge Chhabria or such designated successor judge, as set forth in and pursuant to Rule 72 of the Federal Rules of Civil Procedure), presiding in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC.

(w)   "Covenants Not to Sue" means the covenants not to sue set forth in Section 15.4.

(x)   "DAGP Administrator" means that Person, agreed to and jointly recommended by Class Counsel and Counsel for the Defendant, and appointed by the Court, to perform the responsibilities assigned to the DAGP Administrator under the Settlement Agreement, including, without limitation, as set forth in Article VIII.

(y)   "DAGP Administrator Costs" are defined in Section 12.3(c).

(z)   "DAGP Application" is defined in Section 8.4.

(aa)   "DAGP Eligible Settlement Class Member" is defined in Section 8.4(a).

(bb)   "DAGP Grant" is defined in Section 8.3(a).

(cc)   "DAGP Grantee" is defined in Section 8.3(a).

(dd)   "Defendant" means Monsanto Company.

(ee)   "Deficiency" means any failure of a Settlement Class Member or Representative Claimant to provide required information or documentation to the Claims Administrator, as set forth in Section 11.5.

(ff)   "Derivative Claims" means Claims arising from, resulting from, in any way relating to or in connection with loss of support, services, consortium, companionship, society, or affection, or damage to familial relations (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life); or any other Claims that arise from, result from, in any way relate to or are in connection with the claimant's relationship with a Settlement Class Member, including a deceased Settlement Class Member.

(gg)   "Derivative Claimants" means spouses, parents, children who are dependents, or any other Persons who have or assert a right under applicable law to maintain a Roundup Claim against the Monsanto Parties or the Related Parties by reason of their relationship with a Settlement Class Member, including a deceased Settlement Class Member.

(hh)   "Diagnosing Physician" is defined in Exhibit 6.

(ii)   "Diagnostic Accessibility Grant Program" means the program described in Article VIII.

(jj)   "ECHA" means the European Chemicals Agency.

(kk)   "Effective Date" means (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Order and Judgment approving the Settlement Agreement and certifying the Settlement Class (or for appealing any ruling on a timely motion for reconsideration of such Final Order and Judgment, whichever is later), if no such appeal is filed; or (ii) if an appeal of the Final Order and Judgment is filed (x) the date upon which all appellate courts with jurisdiction (including the United States Supreme Court by petition for certiorari) affirm such Final Order and Judgment, or deny any such appeal or petition for certiorari, such that no further appeal is possible, or (y) if no appeal is filed from the appellate court decision obtained pursuant to clause (x), the day following the expiration of the deadline for filing a petition for certiorari to the United States Supreme Court.

(ll)   "EFSA" means the European Food Safety Authority.

(mm) "EPA" means the United States Environmental Protection Agency.

(nn)   "Eligibility Criteria" are defined in Section 10.1(a).

(oo)   "Escrow Agent" means the agreed-upon entity to address and hold for distribution the funds identified in the Settlement Agreement pursuant to the terms of the Escrow Agreement.  That agreed-upon entity is Citibank, N.A. acting through its Citi Private Bank business unit.

(pp)   "Escrow Agreement" means the agreement by and among Class Counsel and Counsel for the Defendant with respect to the escrow of the funds to be deposited into the Settlement Fund escrow account pursuant to the Settlement Agreement.

(qq)   "Exhibit" is defined in the introduction to Section 2.1.

(rr)   "Fairness Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness, and adequacy of the Settlement Agreement under Rule 23(e)(2) of the Federal Rules of Civil Procedure and to determine whether the Final Order and Judgment should be entered.

(ss)   "Final Order and Judgment" means the final order and judgment entered by the Court, in the form of Exhibit 9 together with any modifications acceptable to the Parties.

(tt)   "Funded Class Benefits" are defined in Section 7.4.

(uu)   "General Causation" means whether exposure to Roundup Products through the application of Roundup Products can cause NHL in humans to the level of causation (and proof thereof) necessary to maintain a Claim under applicable law.

(vv)   "Governmental Authority" means any government or political subdivision, department, commission, board, bureau, agency, or other governmental authority, whether United States federal, state, District of Columbia, city, county, municipal, territorial, or otherwise domestic, or foreign or supranational, or any instrumentality whether domestic, foreign, or supranational.

(ww)  "Governmental Payor" means (x) any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services and (y) any entity paid by such a plan, program, or entity to provide benefits under contract on a prepaid or capitated basis.

(xx)   "Grantee Contract" is defined in Section 8.3(e)(i).

(yy)   "HIPAA" means the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and the implementing regulations issued by the United States Department of Health and Human Services thereunder, and incorporates by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to Protected Health Information.

(zz)   "IARC" means the International Agency for Research on Cancer, a cancer agency within the World Health Organization of the United Nations.

(aaa) "IARC Monograph 112" refers to IARC, Monographs on the Evaluation of Carcinogenic Risks to Humans, Volume 112, *Some Organophosphate Insecticides and Herbicides* (2017).

(bbb) "Interim Assistance Grant" is defined in Section 10.1.

(ccc) "Interim Assistance Grant Determination" is defined in Section 10.3.

(ddd) "Interim Assistance Grant Guidelines" means that document attached as Exhibit 7.

(eee) "IRC" means the Internal Revenue Code of 1986, as amended.

(fff) "JMPR" means the Joint Meeting on Pesticide Residues, an international expert group administered jointly by the Food and Agriculture Organization of the United Nations and the World Health Organization.

(ggg) "Lawsuit" means the action currently pending in the U.S. District Court for the Northern District of California, captioned *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC.

(hhh) "Lien" means any statutory lien of a Governmental Payor or any mortgage, lien, pledge, charge, security interest, hypothecation, assignment, encumbrance, subrogation right, reimbursement claim, right of indemnity, right to payment, third-party interest or adverse claim, of any nature whatsoever, in each case whether statutory or otherwise, held or asserted by any Person.

(iii) "List of Service Areas" is defined in Section 8.1.

(jjj) "Medicaid Program" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396–1, *et seq.*

(kkk) "Medicare Program" means the federal program administered by CMS under which certain medical items, services, and/or prescription drugs furnished to Medicare beneficiaries are reimbursed under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*  This program includes Part A and Part B, directly administered by CMS, and two parts administered by private entities that contract with CMS to serve Medicare beneficiaries on a capitated basis: Medicare Part C, which includes Medicare Advantage, Medicare cost, and Medicare health prepayment plans, and Medicare Part D, under which CMS contracts for coverage of certain outpatient prescription drugs.

(lll) "Monsanto Parties" means the Defendant and Bayer AG, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

(mmm)   "MSP Laws" means the Medicare Secondary Payer Act set forth at 42 U.S.C. § 1395y(b), as amended from time to time, and implementing regulations, and other applicable written CMS guidance.

(nnn) "NHL" means a cancer that starts in white blood cells called lymphocytes and qualifies as a "lymphoma" other than Hodgkin's lymphoma.  See the American Cancer Society website, available at http://www.cancer.org/cancer/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.  The term does not include multiple myeloma or any leukaemia that does not also contain "lymphoma," "lymphocytic," or "prolymphocytic" in its name under S.H. Swerdlow et al., *World Health Organization Classification of Tumours of Haematopoietic and Lymphoid Tissues*, Revised 4th Edition (2017), with the exception that the term does include hairy cell leukaemia and aggressive NK-cell leukaemia.

(ooo) "NHL Diagnostic Evaluation" is defined in Section 8.1.

(ppp) "Notice of Challenge Determination" means the written notice set forth in Section 5.3(d)-(f).

(qqq) "Notice of Deficiency" means that document that the Claims Administrator sends to any Settlement Class Member or Representative Claimant whose Claim Package contains a Deficiency, as set forth in Section 11.5.

(rrr) "Notice of Interim Assistance Grant Determination" means the written notice set forth in Section 11.8.

(sss) "Notice of Registration Determination" means the written notice set forth in Section 5.3.

(ttt) "Opt Out," when used as a verb, means the process by which any individual otherwise included in the Settlement Class exercises the right to exclude himself or herself from the Settlement Class in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure.

(uuu) "Opt Outs," when used as a noun, means those individuals who would otherwise have been included in the Settlement Class and who have timely and properly exercised their rights to Opt Out and therefore are not Settlement Class Members.

(vvv) "Outreach Campaign" is defined in Section 8.2.

(www)  "Parties" means the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, and the Defendant.

(xxx) "Person" means a natural person, partnership (whether general or limited), limited liability company, trust, estate, association (including any group, organization, co-tenancy, plan, board, council or committee), corporation, Governmental Authority, custodian, nominee, or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

(yyy) "Personal Signature" means the actual signature by the individual whose signature is required on the document.  Unless otherwise specified in the Settlement

Agreement, a document requiring a Personal Signature may be submitted by an actual original "wet ink" signature on hard copy, a PDF or other electronic image of an actual signature, or DocuSign or similar verifiable mechanism.

(zzz) "Poverty Guidelines" means the United States Federal Poverty Guidelines, issued for the year 2020 in the Federal Register by the United States Department of Health and Human Services and published at 85 *Fed. Reg.* 3060.

(aaaa) "Preliminary Approval Motion" means the motion for preliminary approval of the Settlement Agreement, approval of the Settlement Class Notice Plan, and entry of the Preliminary Approval Order.

(bbbb) "Preliminary Approval Order" means the order, upon entry by the Court, approving dissemination of notice to the Settlement Class and finding that the Court will likely be able to approve the Class Action Settlement and certify the proposed Settlement Class and Subclasses, in the form of Exhibit 8 together with any modifications acceptable to the Parties.

(cccc) "Presumptive Ranges" is defined in the Interim Assistance Grant Guidelines in Exhibit 7.

(dddd) "Protected Health Information" means individually identifiable health information, as defined in 45 C.F.R. § 160.103.

(eeee) "Qualified Physician" is defined in Exhibit 6.

(ffff) "Qualified Physician Certification" means the document referenced in Section 11.2, the contents of which shall be agreed to by Class Counsel and Counsel for the Defendant and that shall include, without limitation: (i) a certification under penalty of perjury by the Qualified Physician that he or she treated the Settlement Class Member for the Qualifying Diagnosis; (ii) the Qualifying Diagnosis, including a signed copy of the anatomic pathology report described in Exhibit 6; (iii) the date of the Qualifying Diagnosis; (iv) information sufficient to identify the Qualified Physician and establish that such physician meets the requirements of a Qualified Physician as set forth in Exhibit 6; and (v) information sufficient to identify the Diagnosing Physician and establish that such physician meets the requirements of a Diagnosing Physician as set forth in Exhibit 6.

(gggg) "Qualifying Diagnosis" or "Qualifying Diagnoses" is defined in Exhibit 6.

(hhhh) "Reconsideration Criteria" is defined in Section 6.5(c).

(iiii) "Reconsideration Request" is defined in Section 6.5(b).

(jjjj) "Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, retailers (including, without limitation, wholesale distributors, private label distributors, and all retailers and retail distributors), clinical researchers, agents, licensees, contractors, joint ventures, joint venturers,

and consultants of or with respect to Roundup Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale or marketing of Roundup Products, including the labeling and packaging thereof, in all cases who are not Monsanto Parties, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

(kkkk)    "Related Party Lawsuits" means all past, present, and future actions or proceedings between one or more Settlement Class Member Parties and any of the Related Parties, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum that assert or allege Roundup Claims.

(llll)  "Released Claims" mean the Claims released in Section 15.1.

(mmmm)   "Releases" means the releases set forth in Section 15.1.

(nnnn)    "Representative Claimants" means authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased Settlement Class Members (and/or their estates), or minor or legally incapacitated or incompetent Settlement Class Members.

(oooo)    "Research Funding Program" means the program set forth in Article IX.

(pppp)    "Research Funding Proposals" are defined in Section 9.2(a).

(qqqq)    "Resident" means any natural person who (i) is a lawful permanent resident of the United States at any time during a given calendar year, or (ii) was present in the United States for at least 31 days during a given calendar year.

(rrrr) "Roundup Claims" means Claims arising from, resulting from, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, alleged, or referred to in the Class Action Complaint or that otherwise arise from, result from, in any way relate to or are in connection with Roundup Products and NHL, including Derivative Claims, personal injury claims, medical monitoring claims, other tort claims (including claims for fraud, misrepresentation, fraudulent concealment, negligent misrepresentation, and failure to warn), warranty claims, false advertising claims, and claims for violations of any consumer protection or unfair and deceptive acts or practices statute.

(ssss)"Roundup Lawsuits" means all past, present, and future actions or proceedings between one or more Settlement Class Member Parties and any of the Monsanto Parties in the Court, other than the Lawsuit, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum, that assert or allege Roundup Claims.

(tttt) "Roundup Products" means any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by the Defendant (or any of its direct or indirect subsidiaries), or by any Person to the extent such product contains glyphosate exclusively supplied by the Defendant (or any of its direct or indirect subsidiaries), under any name or brand: (i) prior to or as of the Settlement Date; or (ii) after the Settlement Date if the product has a chemical formulation identical to a Roundup Product developed, manufactured, distributed, sold, and/or marketed prior to or as of the Settlement Date. Exhibit 1 contains a list of names and brands of Roundup Products of which the Defendant is currently aware following reasonable inquiry. A product not on the list but meeting the foregoing definition shall be a Roundup Product under the Settlement Agreement.

(uuuu)    "Science Panel" is defined in Section 6.1.

(vvvv)    "Science Panel Chairperson" means the member of the Science Panel serving as its presiding member, selected as set forth in Section 6.1(b).

(wwww)    "Science Panel Costs" is defined in Section 6.7(a).

(xxxx)    "Science Panel Contracts" is defined in Section 6.7(b).

(yyyy)    "Science Panel Determination" is defined in Section 6.2(a).

(zzzz)    "Science Panel Determination Form" is attached as Exhibit 4.

(aaaaa)    "Scientific Analysis" is defined in Section 6.2.

(bbbbb)    "Settlement Administration Costs" refers to the DAGP Administrator Costs, the Settlement Administrator Costs, and the Claims Administrator Costs.

(ccccc)    "Settlement Administrator" means that Person appointed by the Court to oversee the administration of the Settlement Agreement, as set forth in Section 12.1.

(ddddd)    "Settlement    Administrator    Costs"    is    defined    in Section 12.1(c).

(eeeee)    "Settlement Agreement" means this Settlement Agreement and all accompanying Exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

(fffff)    "Settlement Class" is defined in Section 1.1.

(ggggg)    "Settlement Class Member" means an individual who is a member in the Settlement Class; provided, however, that the term Settlement Class Member does not include any Opt Outs.

(hhhhh)    "Settlement Class Member Parties" means the Settlement Class, the Class Representatives and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors,

assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical Person or entity to the extent he, she, or it is entitled to assert any Claim on behalf of any Settlement Class Member. For the avoidance of doubt, Settlement Class Member Parties includes Representative Claimants.

(iiiii) "Settlement Class Notice" means the notice described in Section 4.1, in the form of Exhibit 2 together with any modifications acceptable to the Parties.

(jjjjj) "Settlement Class Notice Agent" means the Person who will implement the Settlement Class Notice Plan and who will be responsible for the dissemination of the Settlement Class Notice and any supplemental notice to the Settlement Class as required by the Court.

(kkkkk)   "Settlement Class Notice Amount" is defined in Section 7.1(b).

(lllll) "Settlement Class Notice Costs" means the reasonable costs and expenses of Settlement Class Notice, any supplemental notice required, and compensation of the Settlement Class Notice Agent and the Claims Administrator to the extent the Claims Administrator performs notice-related duties that have been agreed to by the Defendant.

(mmmmm)   "Settlement Class Notice Plan" means that document which sets forth the methods, timetable, and responsibilities for providing Settlement Class Notice to Settlement Class Members, as set forth in Section 4.1.

(nnnnn)   "Settlement Date" means the date by which Class Counsel and Counsel for the Defendant have all signed the Settlement Agreement on behalf of the Class Representatives and Subclass Representatives, Settlement Class and Subclasses, and the Defendant, respectively.

(ooooo)   "Settlement Fund" means the escrow account described in Article XIII, into which the Defendant will make payments pursuant to Article VII, and from which Funded Class Benefits and Additional Permitted Fund Uses are paid under the Settlement Agreement to the extent and as set forth in Article VII and from which the Settlement Class Notice Amount is paid to the extent set forth in Section 7.3(b).

(ppppp)   "Settlement Fund Amount" is defined in Section 7.1(a).

(qqqqq)   "Settlement Website" means the website designed pursuant to Section 5.1.

(rrrrr)   "Specific Causation" means whether exposure to Roundup Products through the application of Roundup Products caused NHL in the specific individual at issue to the level of causation (and proof thereof) necessary to maintain a Claim under applicable law, including consideration of any potential alternate cause of the individual's NHL.

(sssss)   "Subclass 1" is defined in Section 1.2(a).

(ttttt) "Subclass 2" is defined in Section 1.2(b).

(uuuuu)   "Subclass Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to the Settlement Agreement, namely William M. Audet of Audet & Partners, LLP for Subclass 1, and TerriAnne Benedetto of the Dugan Law Firm, APLC for Subclass 2, and, upon appointment, such other counsel as the Court may appoint to represent Subclasses 1 and 2.

(vvvvv)   "Subclasses" means Subclass 1 and Subclass 2.

(wwwww) "Subclass Representatives" means Robert Ramirez; Jerry Agtarap; Dexter Owens; and John Elko, or such other and different persons as may be designated by the Court as the representatives of the Subclasses 1 and 2.

(xxxxx)   "Tax Expenses" are defined in Section 13.1(f).

(yyyyy)   "Tricare" means the federal program managed and administered by the United States Department of Defense through the Tricare Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependents under 10 U.S.C. § 1071, *et seq.*

(zzzzz)   "United States" means the fifty States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any United States military or diplomatic establishment wherever located.

Section 2.2   All references in the Settlement Agreement to "exposure to Roundup Products through the application of Roundup Products" include exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

## ARTICLE III
## Settlement Benefits for Class Members

Section 3.1   The Class Representatives and Subclass Representatives, by and through Class Counsel and Subclass Counsel, and the Defendant, by and through Counsel for the Defendant, agree that, in consideration for the issue-preclusive effect of the Science Panel Determination set forth in Article VI, the Releases and Covenants Not to Sue set forth in Article XV, and the dismissal with prejudice of the Class Action Complaint, and subject to the terms and conditions of the Settlement Agreement, the Defendant will, in addition to other obligations set forth in the Settlement Agreement:

(a)   Agree that the Science Panel will undertake the Scientific Analysis as set forth in Article VI and that the Science Panel Determination will have the preclusive effect set forth in Article VI;

15

(b)      Pay for the Settlement Fund, which shall be used for:

(i)      The Diagnostic Accessibility Grant Program for those Settlement Class Members who qualify to participate pursuant to the requirements and criteria set forth in the Settlement Agreement, as set forth in Article VIII;

(ii)      The Research Funding Program to fund scientific and medical research into the diagnosis and treatment of NHL, as set forth in Article IX;

(iii)      Interim Assistance Grants for those Settlement Class Members who qualify for such grants pursuant to the requirements and criteria set forth in the Settlement Agreement, as set forth in Article X; and

(iv)      Settlement Administration Costs, Science Panel Costs, and Settlement Class Notice Costs, each as set forth in the Settlement Agreement;

(c)      Pay for the Class Counsel fees and expenses pursuant to a separate negotiation and agreement.

## ARTICLE IV
## Notice and Opt Outs

Section 4.1      <u>Notice</u>.

(a)      As part of the Preliminary Approval Motion, Class Representatives and Subclass Representatives will submit to the Court a Settlement Class Notice Plan agreed upon by Class Counsel and Counsel for the Defendant and consistent with due process and Rule 23 of the Federal Rules of Civil Procedure.

(b)      The Settlement Class Notice Plan will be designed to meet the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and due process and will include the best notice practicable for the Settlement Class.  The Settlement Class Notice Agent will implement the Settlement Class Notice Plan following the Court's entry of the Preliminary Approval Order, approval of the Settlement Class Notice (in the form of Exhibit 2 together with any modifications acceptable to the Parties), and approval of the Settlement Class Notice Plan as consistent with Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and due process.  The Settlement Class Notice Plan will be paid for by the Defendant as set forth in Section 7.1(b) and Section 7.3(b).  The Parties shall inform the Settlement Administrator of the dollar amount of the Settlement Class Notice Amount once such final dollar amount is known.

Section 4.2      <u>Opt Outs</u>.

(a)      The Settlement Class Notice will provide instructions regarding the procedures that must be followed to Opt Out of the Settlement Class pursuant to Rule 23(c)(2)(B)(v) of the Federal Rules of Civil Procedure.  The Parties agree that, to Opt Out validly from the Settlement Class, a Settlement Class Member must submit a written request to Opt Out stating "I wish to exclude myself from the Settlement Class in *Robert Ramirez, et al. v. Monsanto*

*Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC" (or substantially similar clear and unambiguous language) to the Claims Administrator on or before the date one hundred and fifty (150) days following the commencement of the Settlement Class Notice Plan (postmarked, emailed, or submitted through the Settlement Website no later than such date).  That written request also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other identification issued by any Governmental Authority.  A written request to Opt Out must contain the dated Personal Signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class.  The Settlement Class Member must either (i) mail the signed written request to a physical address to be identified in the Settlement Class Notice; (ii) email a complete and legible scanned copy or photograph of the signed written request to an email address to be identified in the Settlement Class Notice; or (iii) submit a complete and legible scanned copy or photograph of the signed written request through the Settlement Website.  Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.  The Claims Administrator will provide copies of all requests to Opt Out to Class Counsel and Counsel for the Defendant within seven (7) days of receipt of each such request.  A valid request to Opt Out from the Settlement Class will become effective as of the later of twenty-one (21) days of receipt by the Claims Administrator or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant.

(b)      All Settlement Class Members who do not timely and properly Opt Out from the Settlement Class will in all respects be bound by all terms of the Settlement Agreement and the Final Order and Judgment.

(c)      Prior to entry of the Final Order and Judgment, any Settlement Class Member may seek to revoke his or her Opt Out from the Settlement Class and thereby receive the benefits of this Class Action Settlement by submitting a written request to Class Counsel, Counsel for the Defendant, and the Claims Administrator stating "I wish to revoke my request to be excluded from the Settlement Class" (or substantially similar clear and unambiguous language), and also containing the Settlement Class Member's printed name, address, phone number, and date of birth.  The written request to revoke an Opt Out must contain the Personal Signature of the Settlement Class Member seeking to revoke his or her Opt Out.  Such revocation shall only be effective with the express written consent of the Defendant (in its sole discretion).

(d)      The Defendant shall have the right, in its discretion, to terminate and render null and void this Class Action Settlement and the Settlement Agreement following notice of Opt Outs and prior to the Fairness Hearing in accordance with the terms of Exhibit 3, which shall be filed under seal with the Court as part of the Settlement Agreement.  The Defendant must provide written election to terminate the Settlement Agreement under this provision to Class Counsel and the Court prior to the Fairness Hearing.

**ARTICLE V**
**Information and Registration Process**

Section 5.1    <u>Information</u>.

17

(a)     Within twenty (20) days after entry of the Preliminary Approval Order, Class Counsel and the Settlement Class Notice Agent will cause to be established and maintained a public website containing information about the Class Action Settlement (the "Settlement Website"), including the Settlement Class Notice, "Frequently Asked Questions," and other relevant documents.  The Settlement Website also will be the launching site for a secure web-based portal that shall be used for online registration of Settlement Class Members and Representative Claimants to facilitate their participation in the Funded Class Benefits and for other settlement administration purposes.  The web-based portal will be established and maintained by the Settlement Class Notice Agent, with input from the Claims Administrator, and accessible by the Claims Administrator, the DAGP Administrator, and the Settlement Administrator.  The web-based portal is for use by Settlement Class Members, Representative Claimants, and designated attorneys of Settlement Class Members and Representative Claimants throughout the term of the Class Action Settlement, including for submitting Opt Out requests pursuant to Section 4.2(a), online registration pursuant to Section 5.2, and submission of Claim Packages and DAGP Applications.  The Settlement Class Notice Agent will consult with the Settlement Administrator, the Claims Administrator, and the DAGP Administrator on the content of the web-based portal and downloadable forms included on the portal, as well as content elsewhere on the Settlement Website if necessary and appropriate.  The Settlement Class Notice Agent will post all necessary information about the Class Action Settlement on the Settlement Website, including, as they become available, information about registration deadlines and methods to participate in the Diagnostic Accessibility Grant Program, the Claim Package requirements, and Interim Assistance Grants.  Exhibit 10 to the Settlement Agreement sets forth a schedule of certain deadlines contained in the Settlement Agreement that relate to Settlement Class Members or Representative Claimants.  All content posted on the Settlement Website will be subject to advance approval by Class Counsel and Counsel for the Defendant.  The Settlement Website and relevant related documents shall be maintained in English, Spanish, and any other language deemed necessary by Class Counsel and the Settlement Class Notice Agent.

(b)     Within twenty (20) days after entry of the Preliminary Approval Order, Class Counsel and the Settlement Class Notice Agent will cause to be established and maintained an automated telephone system that uses a toll-free number or numbers to provide information about the Class Action Settlement.  All information on the automated telephone system will be in English, Spanish, and any other language deemed necessary by Class Counsel and the Settlement Class Notice Agent.  Through this system, Settlement Class Members may request and obtain copies of the Settlement Class Notice, Settlement Agreement, Claim Form, and Appeals Form, and they may leave messages for further information.  Class Counsel and the Settlement Class Notice Agent may also establish and maintain a process whereby live telephone operators answer questions about the Class Action Settlement, provided that such live telephone conversations are conducted by the operators pursuant to training materials approved in advance by Class Counsel and Counsel for the Defendant.

Section 5.2     <u>Registration Methods and Requirements</u>.

(a)     Within forty (40) days after entry of the Preliminary Approval Order, the Claims Administrator will establish, maintain, and administer both online and hard copy registration methods for Settlement Class Member and Representative Claimant participation in the Funded Class Benefits.  The registration process is solely for the purpose of facilitating and

administering Settlement Class Member and Representative Claimant participation in the Funded Class Benefits.  Settlement Class Members who do not register, or who attempt to register but have their registration denied, remain bound by the Settlement Agreement and the Final Order and Judgment.

(b)     The registration requirements will include information sufficient to determine if a registrant is a Settlement Class Member for purposes of applying for Funded Class Benefits, including:  (i) name; (ii) address; (iii) date of birth; (iv) Social Security Number (if any); (v) email address (if any); (vi) whether email, the web-based portal on the Settlement Website, or U.S. mail is the preferred method of communication; (vii) information sufficient to show the circumstances and extent of claimed exposure to Roundup Products; (viii) whether a Qualifying Diagnosis has been received, and, if so, when the Qualifying Diagnosis was made; and (ix) Personal Signature of the registering purported Settlement Class Member.

(c)     Representative Claimants may register on behalf of deceased, minor, or legally incapacitated or incompetent Settlement Class Members as follows:

(i)     If a Settlement Class Member on whose behalf the Representative Claimant is authorized to act has not previously received an Approved Registration Number, the Representative Claimant shall provide the information necessary to satisfy the registration requirements for the subject Settlement Class Member set forth in Section 5.2(b) and provide a copy of the court order, or other document issued by an official of competent jurisdiction, providing the authority to act on behalf of that deceased, minor, or legally incapacitated or incompetent Settlement Class Member.

(ii)     If a Settlement Class Member on whose behalf the Representative Claimant is authorized to act has previously received an Approved Registration Number, the Representative Claimant shall provide the Claims Administrator with the Approved Registration Number of the subject Settlement Class Member and a copy of the court order, or other document issued by an official of competent jurisdiction, providing the authority to act on behalf of that deceased, minor, or legally incapacitated or incompetent Settlement Class Member.

(iii)     Only one Representative Claimant may be authorized to act on behalf of a given Settlement Class Member.  In the event multiple Persons purport to act on behalf of a given Settlement Class Member, the Claims Administrator will notify each such Person of the competing claims of representation and request further documentation to support each Person's capacity.  The Claims Administrator shall determine which Person is authorized to act on behalf of a given Settlement Class Member and the Person so identified by the Claims Administrator will be entitled to apply for the Diagnostic Accessibility Grant Program or for Interim Assistance Grants.  Any Person the Claims Administrator determines is not authorized to act on behalf of a given Settlement Class Member may appeal that decision to the Settlement Administrator by submitting a written challenge to the Settlement Administrator within thirty (30) days after receiving the Claims Administrator's determination.  Any written statement in support of an appeal may not exceed five (5) single-spaced pages in length.  A copy of such submission shall be provided to the Claims Administrator, and the Claims Administrator shall have thirty (30) days to provide the Settlement Administrator with written support for its determination, which may not exceed five (5) single-spaced pages in length.  The Settlement Administrator will be

19

provided access to all documents and information available to the Claims Administrator to aid in determining the appeal.  Appeals may only be taken to the Settlement Administrator, not the Court. The decision of the Settlement Administrator shall be final and binding.  There shall be no appeal from the Settlement Administrator's decision.

(d)     Registration Deadline.     Settlement Class Members and Representative Claimants may register until forty-five (45) days prior to the expiration of the deadline by which they must apply for the benefit they are seeking to obtain by such registration. These deadlines are set forth in Section 8.4(b) for the Diagnostic Accessibility Grant Program and Section 11.3(a) for the Interim Assistance Grants.  Failure to comply with the deadline will preclude registration, unless, in the determination of the Claims Administrator, the Settlement Class Member or Representative Claimant can show good cause or excusable neglect.

Section 5.3     Registration Review.

(a)     Upon receipt of a purported Settlement Class Member's or Representative Claimant's registration, the Claims Administrator will assign a unique identifying number and promptly notify the Settlement Class Member or Representative Claimant of such number by the registrant's preferred method of communication identified in the registration.

(b)     Upon receipt of a purported Settlement Class Member's registration, the Claims Administrator will review the information to determine whether the purported Settlement Class Member is a Settlement Class Member under the Settlement Agreement for purposes of applying for Funded Class Benefits, and whether he or she has timely registered pursuant to Section 5.2(d).  Upon receipt of a purported Representative Claimant's registration, the Claims Administrator will review the information to determine whether the subject purported deceased, minor, or legally incapacitated or incompetent Settlement Class Member is a Settlement Class Member for purposes of applying for Funded Class Benefits, and whether the purported Representative Claimant has the actual authority to act on behalf of that deceased, minor, or legally incapacitated or incompetent Settlement Class Member.  The Claims Administrator will then issue a favorable or adverse Notice of Registration Determination, within thirty (30) days of receipt of the purported Settlement Class Member's or Representative Claimant's registration, informing the purported Settlement Class Member or Representative Claimant, by the registrant's preferred method of communication identified in the registration, whether he or she has properly registered as a Settlement Class Member or Representative Claimant for purposes of applying for Funded Class Benefits.  To the extent the volume of registrations warrants, this deadline may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.  If there is no pending application by the Claims Administrator to the Settlement Administrator for an extension of the deadline, then if a Notice of Registration Determination is not issued within thirty (30) days, or within such other period that has been approved by the Settlement Administrator, the Settlement Class Member or Representative Claimant shall be considered to have properly registered for purposes of applying for Funded Class Benefits.  The Claims Administrator shall send a copy of the Notice of Registration Determination to Class Counsel and the Defendant.

(i)     Favorable Notices of Registration Determination will include information regarding the sections of the Settlement Website and/or secure web-based

20

portals that provide detailed information regarding the Claim Package and Interim Assistance Grants, and the Diagnostic Accessibility Grant Program.

(ii)     Adverse Notices of Registration Determination will include information regarding each deficiency in the registration and how the purported Settlement Class Member or Representative Claimant can challenge the determination or cure any deficiency, to the extent cure is possible, except that the failure to timely register in accordance with the terms of the Settlement Agreement cannot be cured other than upon a showing of good cause or excusable neglect as set forth in Section 5.2(d).

(c)     The purported Settlement Class Member, Class Counsel acting on the Settlement Class Member's behalf, or Representative Claimant may attempt to cure any curable deficiencies by submitting additional information and documentation within thirty (30) days after the date of the adverse Notice of Registration Determination.  The Claims Administrator will promptly review such additional information and documentation in accordance with Section 5.3(b) and determine whether deficiencies have been cured and whether the registrant has properly registered as a Settlement Class Member or Representative Claimant for purposes of applying for Funded Class Benefits.  Within thirty (30) days after the Claims Administrator receives such additional information and documentation, the Claims Administrator shall either:  (i) confirm the adverse Notice of Registration Determination, and include information regarding each deficiency in the registration and how the purported Settlement Class Member or Representative Claimant can challenge the determination, or (ii) if the Claims Administrator determines that the registrant has properly registered as a Settlement Class Member or Representative Claimant for purposes of applying for Funded Class Benefits, shall withdraw the adverse Notice of Registration Determination and issue a favorable Notice of Registration Determination.  To the extent that the volume of additional information and documentation warrants, this thirty (30) day deadline for the Claims Administrator to confirm or withdraw an adverse Notice of Registration Determination may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.  Registrants will have no opportunity to cure any deficiencies that remain following the initial thirty-day (30-day) cure period.

(d)     The purported Settlement Class Member, Class Counsel acting on the Settlement Class Member's behalf, or Representative Claimant may submit a written challenge to the Claims Administrator within ninety (90) days after the date of the adverse Notice of Registration Determination.  If the purported Settlement Class Member, Class Counsel acting on the Settlement Class Member's behalf, or Representative Claimant has attempted to cure deficiencies in the registration pursuant to Section 5.3(c), the ninety (90) days to challenge an adverse Notice of Registration Determination will run from the date the Claims Administrator confirms its adverse Notice of Registration Determination.  The purported Settlement Class Member, Class Counsel acting on the Settlement Class Member's behalf, or Representative Claimant must present an affirmation under penalty of perjury or other evidence in support of any written challenge.  The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member or Representative Claimant, Class Counsel, and the Defendant informing them of the decision.

(e)     The Defendant can challenge, for good cause, a Notice of Registration Determination by submitting a written challenge to the Claims Administrator within

sixty (60) days after the date of the Notice of Registration Determination. The Defendant must present evidence in support of the written challenge. The purported Settlement Class Member or Representative Claimant will receive notice and a copy of the Defendant's challenge and may provide a written response to the Defendant and the Claims Administrator within thirty (30) days after receiving a copy of the challenge. The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member or Representative Claimant and the Defendant informing them of the decision, with a copy to Class Counsel.

(f)     Any Notice of Challenge Determination may be appealed by the purported Settlement Class Member, Representative Claimant, Class Counsel, or the Defendant for good cause, in writing to the Settlement Administrator within sixty (60) days after the date of the Notice of Challenge Determination. Any of those parties may present evidence in support of, or in opposition to, the appeal, within thirty (30) days of receiving a copy of the appeal. The Settlement Administrator will be provided access to all documents and information available to the Claims Administrator to aid in determining the appeal. The decision of the Settlement Administrator shall be final and binding. There shall be no appeal from the Settlement Administrator's determination. The purported Settlement Class Member, Representative Claimant, Class Counsel, or the Defendant may not appeal a Notice of Registration Determination directly to the Settlement Administrator, but must first present a written challenge to the Claims Administrator and obtain a Notice of Challenge Determination as set forth in Section 5.3(d) and Section 5.3(e).

(g)     Following a favorable Notice of Registration Determination or favorable Notice of Challenge Determination and the expiration of time to file a challenge or appeal of such determinations, respectively, or following a favorable registration determination of the Settlement Administrator on appeal, the Claims Administrator shall assign a unique identifying number to the Settlement Class Member or Representative Claimant signifying that their registration has been approved (the "Approved Registration Number"). The Approved Registration Number shall be generated by modifying the unique identifying number assigned to the Settlement Class Member or Representative Claimant upon their registration application by adding a "—A," or other similar distinguishing modification deemed appropriate by the Claims Administrator, to the end of that number. The Claims Administrator will promptly notify the Settlement Class Member or Representative Claimant of his or her Approved Registration Number for future use, including on a Claim Form, by the registrant's preferred method of communication identified in the registration. Receipt of an Approved Registration Number does not entitle the Settlement Class Member or Representative Claimant to any Funded Class Benefits. All Funded Class Benefits must be applied for and will be reviewed pursuant to the procedures set forth in the Settlement Agreement.

(h)     For the avoidance of doubt, a favorable Notice of Registration Determination, Notice of Challenge Determination, or registration determination of the Settlement Administrator on appeal shall not bind the Monsanto Parties or Related Parties regarding a Settlement Class Member's exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, and shall not be used as evidence against the Monsanto Parties or the Related Parties in any action or proceeding, regardless of whether the Monsanto Parties have challenged any of the foregoing determinations. The Monsanto Parties do not waive

or concede any position or arguments they have for or against, and retain full right and ability to contest, a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, including any Roundup Lawsuit, Related Party Lawsuit, and/or with respect to any and all Roundup Claims.   The Monsanto Parties and the Related Parties will not be precluded in any action or proceeding from contesting a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member, even if the Settlement Class Member receives a favorable Notice of Registration Determination, Notice of Challenge Determination, or registration determination of the Settlement Administrator on appeal (and regardless of whether the Defendant challenged or appealed any such determination).   The Monsanto Parties are not obligated to challenge or appeal any registration determination in order to preserve the rights set forth in this Section 5.3(h).

**ARTICLE VI**
**Science Panel**

Section 6.1      Science Panel Description, Selection, and Composition.

(a)      The Parties covenant and agree that an independent five-member scientific panel (the "Science Panel") will be established and will exercise authority and perform duties in accordance with the terms of this Article.

(b)      The Science Panel will be comprised of five individuals that are independent of the Parties.  The Science Panel members will be selected as follows:

(i)      Initially, the Parties will attempt to reach agreement on the individuals that will serve on the Science Panel.  If the Parties are able to reach complete agreement, those individuals will be identified as the Science Panel members.  In that case, the agreed-to Science Panel members will appoint one of their members to serve as the Science Panel Chairperson.

(ii)      The Parties will also consider in good faith designating a third-party entity to identify the individuals that will serve on the Science Panel.  The identity of any such third-party entity must be mutually agreed to by the Parties.  If a third-party entity is selected to identify the individuals who will serve on the Science Panel, the third-party will choose the five members of the Science Panel, subject to strikes for cause by a Party if a potential Science Panel member does not meet the requirements set forth in Section 6.1(c).  In the event a Party contests the other Party's exercise of a strike for cause, the Settlement Administrator will adjudicate the validity of the strike.  The Science Panel members selected by the third-party entity will appoint one of their members to serve as the Science Panel Chairperson.

(iii)      If by sixty (60) days following entry of the Final Order and Judgment the Parties are not able to reach complete agreement on Science Panel membership or on a third-party entity designated to identify the Science Panel membership, the Parties will use an alternate procedure.  In that case, each of the Parties shall choose two members of the Science Panel, subject to three (3) peremptory strikes by the other Party, and any strikes for cause if a potential Science Panel member does not meet the requirements set forth in Section 6.1(c).  In the

23

event a Party contests the other Party's exercise of a strike for cause, the Settlement Administrator will adjudicate the validity of the strike.  For the avoidance of doubt, any strike for cause shall not count against a Party's peremptory strikes.  Once each Party has chosen two members of the Science Panel, these four members of the Science Panel shall mutually agree upon the selection of a fifth member of the Science Panel, who shall also serve as the Science Panel Chairperson.

(c)     Appropriate candidates for appointment to the Science Panel:  (i) shall be recognized, independent, appropriately credentialed epidemiologists, biostatisticians, toxicologists, or hematologists/oncologists, amongst others, and/or scientific or medical professionals with similar backgrounds and qualifications; (ii) shall not have not been retained as testifying or consulting experts in any action or proceeding associated with the Lawsuit, MDL No. 2471, Roundup Products, or any lawsuit brought against the Monsanto Parties or the Related Parties in any forum that arises from, results from, in any way relates to or is in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit; and (iii) shall not have had, to the best of their knowledge, any communications prior to the Settlement Date with any testifying or consulting experts in the actions or proceedings identified in clause (ii) about the alleged carcinogenicity of glyphosate or glyphosate-based herbicides.  Individuals that are candidates for appointment to the Science Panel must submit sworn affidavits to the Settlement Administrator (who shall promptly provide copies of such affidavits to Class Counsel and Counsel for the Defendant) attesting to their satisfaction of the requirements of this Section 6.1(c).

(d)     The Parties will use reasonable efforts to identify and engage the members of the Science Panel as soon as practicable following entry of the Preliminary Approval Order.  If any member of the Science Panel withdraws, resigns, or otherwise stops serving on the Science Panel, a replacement Science Panel member shall be selected pursuant to the process used to select the departing member (e.g., if the departing member had been appointed by a particular Party, that Party shall appoint a replacement pursuant to the process described above, including challenge for cause and any remaining peremptory strike by the other Party).  If the Parties mutually agreed upon the departing member and cannot mutually agree upon a replacement Science Panel member, the remaining Science Panel members may select the replacement, subject to the criteria set forth in Section 6.1(c), and the strikes for cause and any remaining peremptory strikes set forth in Section 6.1(b)(iii).

(e)     The Science Panel shall have the discretion to request that the Settlement Administrator retain, on behalf of the Science Panel, professionals from scientific disciplines or individuals performing administrative tasks, if the Science Panel has determined the retention of such Person will assist the Science Panel in performing its work.  Anyone retained by the Settlement Administrator on behalf of the Science Panel shall satisfy the same requirements for freedom from conflicts as the Science Panel members, as set forth in Section 6.1(c), and shall submit a sworn affidavit attesting to their satisfaction of those requirements.  The Parties shall be notified by the Settlement Administrator of any requests by the Science Panel pursuant to this section, including the identity of any individual proposed to be retained, within five (5) days of such a request, and may block the retention of any individual who does not meet the requirements for freedom from conflicts set forth in Section 6.1(c).

(f)    For the avoidance of doubt, the Science Panel is not an arbitration panel and the Science Panel Determination is final and not subject to judicial review, including under the Federal Arbitration Act or other similar statute, rule, or regulation.

Section 6.2    Scientific Analysis.

(a)    Beginning on the Effective Date, the Science Panel shall examine the body of scientific evidence described in Section 6.2(d) and existing on the Effective Date to determine whether exposure to Roundup Products through the application of Roundup Products causes NHL in humans (the "Scientific Analysis"). If a majority of the Science Panel finds that such causation has not been established, the Science Panel shall undertake no further inquiry. If a majority of the Science Panel finds that such causation has been established, the Science Panel shall then proceed to determine, by majority vote, at what threshold internal dose level (dose greater than xx micrograms/day) such causation has been established. The conclusion(s) of the Science Panel with regard to the Scientific Analysis shall be referred to as the Science Panel Determination. As set forth in Section 6.3, the Science Panel's conclusion(s) shall constitute either a Causation Not Established Finding (that causation has not been established for NHL) or a Causation Established Finding (that causation has been established for NHL at or above the specified threshold internal dose level), and the Causation Not Established Finding or Causation Established Finding shall have the preclusive effect described in Section 6.3.

(b)    To find that causation has been established as to NHL, the Science Panel must conclude: (i) based on the body of scientific evidence described below, that there is reliable evidence overall (x) of a positive association between exposure to Roundup Products through the application of Roundup Products and NHL in humans, (y) that such positive association is not due to chance, confounding, or bias, and (z) that based on an application of the Bradford Hill Guidelines, "we can pass from [the] observed association to a verdict of causation;" and (ii) that such reliable evidence makes it more likely than not that exposure to Roundup Products through the application of Roundup Products can cause NHL.

(c)    If the Science Panel finds that causation has been established as to NHL, it shall determine the threshold internal dose level at which such causation has been established. In so doing, the Science Panel shall presume that such threshold internal dose level is 1100 micrograms per day over a lifetime of seventy (70) years, the NSRL adopted by the State of California, unless the Science Panel determines otherwise by calculating a threshold internal dose level for added risk using the methodology used by California OEHHA in their Initial Statement of Reasons regarding setting a Benchmark Dose, Cancer Slope Factor, and NSRL for glyphosate (as described in Title 27, Article 7, Section 25721 of the California Code of Regulations, and Fred Parham & Christopher Portier, *Benchmark Dose Approach*, *in* RECENT ADVANCES IN QUANTITATIVE METHODS IN CANCER AND HUMAN HEALTH RISK ASSESSMENT 239 (L. Edler & C. P. Kitsos eds., 2005)). In applying that methodology, the threshold internal dose level shall be derived based on findings of malignant lymphomas from a lifetime animal carcinogenicity bioassay of sufficient quality using the model with the best fit according to EPA BMDS 3.1.2 software. If the Science Panel determines that approach to be inadequate, it may employ another established methodology for calculating a threshold internal dose in micrograms per day over a lifetime that has been explained and validated in the scientific literature.

(d)     The body of scientific evidence that the Science Panel shall consider consists of the following:

(i)     Published EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian carcinogenicity assessments of glyphosate, glyphosate-based herbicides, and/or surfactants.

(ii)     IARC Monograph 112 regarding glyphosate.

(iii)     All published studies and reviews regarding glyphosate, glyphosate-based herbicides and/or surfactant epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity.

(iv)     All registrant-supplied studies and data submitted to EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian pesticide regulatory authorities concerning glyphosate, glyphosate-based herbicides, and/or surfactants regarding epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity, provided that if the Science Panel believes that the underlying data for a particular study is necessary for a complete review of that study, the Science Panel shall not consider that study unless such underlying data are contained within the document productions made as of the Settlement Date by any Person in prior litigation involving Roundup Claims or are otherwise publicly available.

(e)     Prior to the termination of the Science Panel's work, should new scientific evidence falling within the terms of Section 6.2(d) become available that the Science Panel considers material, the Science Panel may petition the Settlement Administrator for permission to consider this new evidence.  The Settlement Administrator shall promptly notify the Parties of any such request, pursuant to Section 6.7(g)(i), and the Parties shall be permitted the opportunity to state their views regarding the request and the new scientific evidence that is the subject of the request, pursuant to Section 6.7(g)(ii), within fourteen (14) days of receiving the notification from the Settlement Administrator of the Science Panel's request.  The Settlement Administrator will take account of the Parties' views in deciding whether good cause exists to grant the Science Panel permission to consider the new evidence in question.

(f)     The Science Panel will have complete discretion to weigh the body of evidence as set forth in this Section 6.2, as it deems appropriate, and to conduct further analyses as it believes necessary to assess whether exposure to Roundup Products through the application of Roundup Products causes NHL in humans.  However, the Science Panel will not conduct any independent scientific research (*e.g.*, genotoxicity testing, animal studies, human epidemiological studies, dermal absorption studies, biomonitoring studies) to generate new scientific data.

Section 6.3     Science Panel Determination and Effect.

(a)     The Science Panel shall conclude the Scientific Analysis and reach the Science Panel Determination at the end of a four-year (4-year) period following the Effective Date.  The Science Panel may petition the Court for an extension of time, if the Science Panel determines that an extension is necessary to reach the Science Panel Determination.  The Science Panel shall provide a written report documenting its findings to the Settlement Administrator

within thirty (30) days of completing its work, but no sooner than the end of the four-year (4-year) period following the Effective Date. The Science Panel may exercise its discretion concerning the appropriate content and format of the written report, but the report must include a completed copy of the Science Panel Determination Form attached as Exhibit 4. The Science Panel Determination Form shall be the operative document for determining whether the Science Panel has made a Causation Not Established Finding or a Causation Established Finding as described below for purposes of the Settlement Agreement and the preclusive effect under it, notwithstanding any additional content contained in the Science Panel's written report. The Parties will inform prospective members of the Science Panel in advance of their selection of the requirement that they will complete the Science Panel Determination Form and obtain their agreement to do so in the Science Panel Contracts. The Science Panel Determination shall be final and not appealable.

(b)     Causation Not Established Finding.     If the Science Panel Determination concludes that causation has not been established pursuant to the standard set forth above for NHL in humans ("Causation Not Established Finding"), this Causation Not Established Finding shall be binding on and have issue-preclusive effect against the Settlement Class Member Parties as provided below in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties. The binding and issue-preclusive effect shall be that, in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, the Settlement Class Member Parties shall be precluded and collaterally estopped from contending, asserting, or alleging that their exposure (or the exposure that their Claims are based upon) to Roundup Products through the application of Roundup Products caused or was capable of causing NHL. The issue-preclusive effect described in this paragraph is intended to encompass all forms of causation in all forums, whether referred to as "cause-in-fact," "actual cause," "proximate cause," "factual cause," "legal cause," general causation, specific causation, or according to some other nomenclature. Without limiting the foregoing, the issue-preclusive effect is intended to apply in any and all Roundup Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products through the application of Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation, including through an "issue class" under federal or state procedure. The issue-preclusive effect also applies to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL. This issue-preclusive effect was separately bargained for and the Parties would not have entered into the Settlement Agreement unless it included such issue-preclusive effect.

(c)     Causation Established Finding.  If the Science Panel Determination concludes that causation has been established pursuant to the standard set forth above for NHL in humans, the Science Panel Determination shall set forth both that conclusion and the threshold internal dose level (dose greater than xx micrograms/day) for which such causation has been established ("Causation Established Finding"). A Causation Established Finding shall have the following effect:

(i)     A Causation Established Finding shall be binding on and have issue-preclusive effect against the Monsanto Parties as provided below in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more

27

Settlement Class Member Parties and any of the Monsanto Parties.  The binding and issue-preclusive effect shall be that, in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, the Monsanto Parties shall be precluded and collaterally estopped from contesting the issue of General Causation, but only as to Settlement Class Member Parties who satisfy the threshold internal dose level set forth in the Causation Established Finding.  Such binding and issue-preclusive effect shall apply only on the issue of General Causation for NHL, and does not establish Specific Causation as to any Settlement Class Member Party.  Such binding and issue-preclusive effect shall not alter the burden, nature, or level of proof required under applicable law to demonstrate Specific Causation as to any individual Settlement Class Member Party, or to demonstrate that an individual Settlement Class Member Party has (or has Claims based upon) NHL and has satisfied the threshold internal dose level set forth in the Causation Established Finding.  The Monsanto Parties reserve the right (1) to contest Specific Causation as to any Settlement Class Member Party whether or not he or she satisfies the threshold internal dose level set forth in the Causation Established Finding, including on the basis of potential alternate causes of the NHL that Settlement Class Member Party has (or has Claims based upon), (2) to contest whether any individual Settlement Class Member Party has (or has Claims based upon) NHL and has satisfied the threshold internal dose level set forth in the Causation Established Finding, and (3) to contest all other issues, except General Causation where there is preclusive effect on the issue of General Causation under this paragraph, whether in law, fact, equity, or otherwise, including damages as to any individual Settlement Class Member Party, and to assert any other defenses not barred by the Settlement Agreement.  The Monsanto Parties will not be bound by or have adverse issue-preclusive effect from a Causation Established Finding in any litigation involving Opt Outs or involving Settlement Class Member Parties who either do not have (or have Claims based upon) NHL or who do not satisfy the threshold internal dose level set forth in the Causation Established Finding.

(ii)    A Causation Established Finding shall be binding on and have issue-preclusive effect against the Settlement Class Member Parties as provided below in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties.  The binding and issue-preclusive effect shall be that, in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, the Settlement Class Member Parties who do not satisfy the threshold internal dose level set forth in the Causation Established Finding shall be precluded and collaterally estopped from contending, asserting, or alleging that their exposure (or the exposure that their Claims are based upon) to Roundup Products through the application of Roundup Products caused or was capable of causing their NHL.  This issue-preclusive effect is intended to encompass all forms of causation in all forums, whether referred to as "cause-in-fact," "actual cause," "proximate cause," "factual cause," "legal cause," general causation, specific causation, or according to some other nomenclature.  Without limiting the foregoing, the issue-preclusive effect is intended to apply in any and all Roundup Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products through the application of Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation, including through an "issue class" under federal or state procedure.  The issue-preclusive effect also applies to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL.  This issue-preclusive

effect was separately bargained for and the Parties would not have entered into the Settlement Agreement unless it included such issue-preclusive effect.

(d)     The Science Panel Determination must include a threshold internal dose level as set forth in Section 6.3(c) in a Causation Established Finding, unless the Science Panel determines under the standard set forth in Section 6.2(b) and Section 6.2(c) that causation has been established for NHL at any internal dose level, no matter how small, and includes that determination in the Science Panel Determination (such a determination shall be considered a Causation Established Finding of any internal dose level above zero.)   If the Science Panel Determination does not include a threshold internal dose level as set forth in Section 6.3(c) for NHL, that shall be considered under the Settlement Agreement as a Causation Not Established Finding for NHL unless and until the Science Panel issues the missing threshold internal dose level as provided in the next sentence.  If the Science Panel Determination does not include a threshold internal dose level as set forth in Section 6.3(c) where it has determined that causation has been established for NHL, the Settlement Administrator shall so inform the Science Panel and request that the Science Panel issue the missing threshold internal dose level within thirty (30) days of receipt of the Science Panel Determination Form.  If the Science Panel does not do so, the Science Panel shall be considered under the Settlement Agreement to have made a Causation Not Established Finding for NHL.  For the avoidance of doubt, if the Science Panel delivers the Science Panel Determination and does not deliver a threshold internal dose level as set forth in Section 6.3(c), Settlement Class Member Parties shall be precluded and collaterally estopped from asserting that their exposure (or the exposure that their Claims are based upon) to Roundup Products through the application of Roundup Products caused or was capable of causing NHL. This issue-preclusive effect is intended to encompass all forms of causation in all forums, whether referred to as "cause-in-fact," "actual cause," "proximate cause," "factual cause," "legal cause," general causation, specific causation, or according to some other nomenclature.  Without limiting the foregoing, the issue-preclusive effect is intended to apply in any and all Roundup Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products through the application of Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation, including through an "issue class" under federal or state procedure.  The issue-preclusive effect also applies to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL.  This issue-preclusive effect was separately bargained for and the Parties would not have entered into the Settlement Agreement unless it included such issue-preclusive effect.

Section 6.4     Termination of the Science Panel's Work.  The Science Panel's work shall terminate upon delivering the Science Panel Determination to the Settlement Administrator.  The Parties shall jointly notify the Court of the termination of the Science Panel's work.  If the Science Panel is required to recommence work pursuant to Section 6.3(d) or Section 6.5, the Science Panel shall reconvene with the same membership to the extent possible. To the extent a replacement is necessary for any Science Panel member at that time, the selection of such replacement shall be governed by Section 6.1(d).

Section 6.5     New Scientific Evidence After Science Panel Determination.

(a)     Except as specifically provided in this Section 6.5, the binding and issue-preclusive effect arising from the Science Panel Determination as set forth in Section 6.3 and Section 6.8 shall continue in full force and effect notwithstanding any subsequent changes in facts, law, or scientific opinion regarding Roundup Products, Roundup Claims, or the issues determined by the Science Panel (including any that might otherwise alter collateral estoppel effect under federal or state law).

(b)     Beginning two (2) years after the Science Panel delivers the Science Panel Determination to the Settlement Administrator pursuant to Section 6.3(a), the Science Panel Determination may be subject to reconsideration only in light of new scientific evidence as defined in this Section 6.5 by means of an application to the Court by a Settlement Class Member with a Qualifying Diagnosis, Class Counsel, or the Defendant meeting the requirements set forth below (a "Reconsideration Request").  For the avoidance of doubt, the Science Panel Determination and the issue-preclusive effect arising from it under the Settlement Agreement shall have full force and effect during the two year period before a Reconsideration Request may be filed.

(c)     A Reconsideration Request must identify with specificity the Causation Not Established Finding or Causation Established Finding in the Science Panel Determination on which reconsideration is requested, and must demonstrate that:  (i) specified new scientific evidence relating to Roundup Products and NHL and falling within the terms of Section 6.2(d) has arisen that did not exist during the Scientific Analysis; and (ii) two national regulatory authorities as specified below have changed their regulatory determinations with respect to Roundup Products based in whole or substantial part on such new scientific evidence (collectively, the "Reconsideration Criteria").  In the case of a Reconsideration Request by a Settlement Class Member with a Qualifying Diagnosis or Class Counsel, the changed regulatory determinations required under clause (ii) shall mean a change in the registration determinations for Roundup Products relating to carcinogenicity by both EPA and Health Canada (which currently permit use of Roundup Products).  In the case of a Reconsideration Request by the Defendant, the changed regulatory determinations required under clause (ii) shall mean a removal of restrictions on Roundup Products by national authorities in two European Union nations which currently restrict use of Roundup Products.

(d)     As used in this Section 6.5, "new scientific evidence" shall not include (i) a new discussion or evaluation of scientific evidence that existed during the Scientific Analysis, or (ii) new evidence that does not meet the publication requirements of Section 6.2(d).

(e)     A Reconsideration Request must be filed with the Court.  After providing notice and an appropriate opportunity for response to the Defendant (in the case of an application by a Settlement Class Member or Class Counsel) or Class Counsel (in the case of an application by the Defendant), the Court shall determine whether the Reconsideration Request satisfies the Reconsideration Criteria.

(f)     If the Court determines that a Reconsideration Request does not satisfy the Reconsideration Criteria, the Science Panel Determination and all issue-preclusive effect arising from it under the Settlement Agreement shall remain unchanged.

(g)     If the Court determines that a Reconsideration Request does satisfy the Reconsideration Criteria, the Court shall reconvene the Science Panel.  If the Reconsideration Request is filed within six (6) years after the Science Panel delivers the Science Panel Determination to the Settlement Administrator pursuant to Section 6.3(a), the Court shall reconvene the original Science Panel, with any necessary replacement members selected as provided in Section 6.1(d).  If the Reconsideration Request is filed more than six (6) years after the Science Panel delivers the Science Panel Determination to the Settlement Administrator pursuant to Section 6.3(a), the Court shall convene a new panel selected in the manner specified by Section 6.1, which shall then serve as the Science Panel for purposes of considering the Reconsideration Request.

(h)     The Science Panel as reconvened under Section 6.5(g) shall reopen the Scientific Analysis, but shall be strictly limited to determining whether the new scientific evidence identified in the Reconsideration Request warrants a change to the specific aspect(s) of the Science Panel Determination raised in the Reconsideration Request.   In making that determination, the Science Panel:  (i) shall presume that the Science Panel Determination is correct and shall change it only if the new scientific evidence clearly so requires; (ii) shall not consider any information not previously considered during the Scientific Analysis other than the new scientific evidence specifically identified in the Reconsideration Request or in the response filed by the Defendant (in the case of an application by a Settlement Class Member or Class Counsel) or Class Counsel (in the case of an application by the Defendant); (iii) shall not reconsider its evaluation during the Scientific Analysis of any previously considered information, except as to whether the new scientific evidence changes that evaluation; (iv) shall not reconsider any aspect of the Science Panel Determination that either the Reconsideration Request did not specify or that the Science Panel determines is not implicated by the new scientific evidence; and (v) shall otherwise be subject and adhere to the same standards, processes, and requirements under the remainder of this Article VI.

(i)     If, after reopening the Scientific Analysis pursuant to Section 6.5(h), the Science Panel determines by majority vote that no change to the Science Panel Determination is warranted, it shall so inform the Settlement Administrator, the Parties, and the Court and take no further action, and the Science Panel Determination and all issue-preclusive effects arising from it under the Settlement Agreement shall remain unchanged.  A determination that no change to the Science Panel Determination is warranted shall be final and not appealable.

(j)     If, after reopening the Scientific Analysis pursuant to Section 6.5(h), the Science Panel determines by majority vote that a change to the Science Panel Determination is warranted, it shall provide a written report documenting its findings to the Settlement Administrator, the Parties, and the Court.  The Final Order and Judgment shall provide that the Court will enter such report on the Court's public docket upon receipt.  A revised Science Panel Determination shall be final and not appealable, subject to any further reopening pursuant to this Section 6.5.   The Science Panel's written report shall include a revised Science Panel Determination Form, with the revisions limited to the changes to the existing form, if any, the Science Panel determines are necessary to reflect the change to the Science Panel Determination. Notwithstanding any additional content contained in the Science Panel's written report, the revised Science Panel Determination Form shall then be the operative document for determining whether the Science Panel has made a Causation Not Established Finding or a Causation Established

31

Finding for purposes of the Settlement Agreement and the issue-preclusive effect under it.  For the avoidance of doubt, if the Science Panel does not include a revised Science Panel Determination Form with its written report, the existing Science Panel Determination Form shall remain the operative document for purposes of the Settlement Agreement and the issue-preclusive effect under it.

(k)     A revised Science Panel Determination shall have no retroactive effect on any aspect of the litigation or resolution of any Roundup Claims, Roundup Lawsuits, or Related Party Lawsuits that occurred prior to the date of such revised Science Panel Determination. The filing of a Reconsideration Request, the reopening of the Scientific Analysis, and/or a change in the Science Panel Determination shall not toll or otherwise affect the running or expiration of any statute of limitations.

(l)     References in this Section 6.5 to the Science Panel Determination shall be to the Science Panel Determination that exists at the time of a Reconsideration Request, and references to the Scientific Analysis include the analysis during any prior reopenings of the Scientific Analysis.

(m)     For the avoidance of doubt, a request for reconsideration of the Science Panel Determination that is not filed in the Court or that does not meet the requirements in this Section 6.5 shall not change the issue-preclusive effect under the Settlement Agreement.

Section 6.6     Science Panel Confidentiality.

(a)     Strict Confidentiality of Science Panel.  The Science Panel and its authorized contractors shall conduct their work in private.  All documents and information of the Science Panel arising from, resulting from, in any way relating to or in connection with the Scientific Analysis (which, for purposes of this Section 6.6(a), shall include any analysis by the Science Panel during any reopening pursuant to Section 6.5), including without limitation any and all work product of the Science Panel, drafts, conversations, correspondence, and analyses, whether oral or written, of any kind or nature, shall be held in conformity with strict confidence and not disclosed to any Person at any time, during or after the Scientific Analysis, except (i) a Science Panel member or an authorized contractor shall be entitled to disclose such documents and information to another Science Panel member or an authorized contractor during the course of the Scientific Analysis to the extent necessary to conduct the Scientific Analysis, (ii) the Science Panel Determination and the report referenced in Section 6.3(a) may be disclosed as set forth in Section 6.3(a) and Section 6.7(f), and any revised Science Panel Determination and report issued pursuant to Section 6.5(j) may be disclosed as set forth in Section 6.5(j); (iii) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), provided that the Parties are given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, provided further that the Science Panel member or authorized contractor subject to such requirement or request cooperates fully with the Parties in connection therewith, and only such confidential information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Science Panel member or authorized contractor; (iv) under legal (including contractual) or ethical obligations of confidentiality no less stringent than those applicable to Science Panel members and authorized

contractors, on an as-needed and confidential basis to such Science Panel member's or authorized contractor's present and future accountants and counsel, provided such confidentiality obligations include an agreement that such Persons will be bound by the restrictions applicable to Science Panel members and authorized contractors set forth in Section 6.7(b)(iv); or (v) to the extent any such information is already publicly known through no fault of such Science Panel member or authorized contractor, provided, however, that Science Panel members and authorized contractors may not disclose such publicly known information until the Science Panel's work has terminated.  The Science Panel, its members, and its authorized contractors shall make no public statements about the work of the Science Panel or status of the Scientific Analysis (including the expected date of completion), including after the Science Panel Determination.  For the avoidance of doubt, this provision applies to the individual members of the Science Panel and their documents and information as well as to documents and information of the Science Panel as a whole.

(b)    No Discovery.  The Defendant (on behalf of the Monsanto Parties), the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree that they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, seek discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv), including any written discovery, requests for documents, subpoenas of any kind, or notices of deposition, and that they will not make use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) that becomes available through any other means.

(c)    No Testimony.  The Defendant (on behalf of the Monsanto Parties), the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree that they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, call any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv), to provide testimony, whether as a fact witness, an expert witness, or in any other capacity, and that they will not make use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any testimony from any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) that becomes available through any other means.

Section 6.7    Science Panel Administration.

(a)    Compensation and Expenses.  Reasonable compensation of the Science Panel members from the Effective Date through the termination of the Science Panel's work will be agreed to by the Settlement Administrator, Class Counsel, and Counsel for the Defendant.  Compensation and reimbursement of reasonable out-of-pocket costs and expenses of the Science Panel for any analysis by the Science Panel during any reopening pursuant to Section 6.5 shall be provided pursuant to Section 6.7(b)(vi).  Compensation of the Science Panel members, and reimbursement of reasonable out-of-pocket costs and expenses incurred as a result

of the Scientific Analysis (including the compensation and reimbursement of reasonable out-of-pocket costs and expenses for any Persons retained pursuant to Section 6.1(e), any compensation and reimbursement of reasonable out-of-pocket costs and expenses pursuant to Section 6.7(b)(vi), and any costs and expenses of indemnification pursuant to Section 6.7(b)(vii)) ("Science Panel Costs") will be paid out of the Settlement Fund, subject to the limitation set forth in Section 7.5. The Science Panel shall submit an annual budget to the Settlement Administrator for review and approval.  Either Class Counsel or Counsel for the Defendant may challenge the reasonableness of the Science Panel's out-of-pocket costs and expenses, in which case the Settlement Administrator will determine the reasonableness of such costs and expenses.  If the Settlement Administrator determines that any costs and expenses are unreasonable, the Science Panel will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Science Panel will refund that amount to the Settlement Fund.  The Science Panel may appeal the Settlement Administrator's determination that costs and expenses are unreasonable to the Court, which shall review the Settlement Administrator's determination for an abuse of discretion.

(b)    Science Panel Contracts.  No later than thirty (30) days after the date the Science Panel members have been selected pursuant to Section 6.1(b), the Settlement Administrator shall execute contracts (in the form approved by Class Counsel and Counsel for the Defendant) with the members of the Science Panel (the "Science Panel Contracts").  The Science Panel Contracts shall:

(i)    Provide a fully-executed copy of the Settlement Agreement (with all Exhibits) and instructions to carefully review:  (1) Article VI, including the provisions describing the nature and extent of communications between the Science Panel, the Settlement Administrator, and the Parties; describing the duties of the Science Panel; and describing the confidentiality requirements; (2) Section 12.6 reflecting that the Settlement Administrator, the Science Panel, and any qualified entities retained by the Settlement Administrator in connection with the Settlement Agreement are not agents of any Party; and (3) Exhibit 4;

(ii)    Set forth the timeline for the completion of the Science Panel's duties as set forth in Section 6.3(a) and the compensation for Science Panel members pursuant to Section 6.7(a), as well as provide that the Science Panel members will perform the duties set forth in Section 6.5, if necessary;

(iii)    Provide that no work on the Scientific Analysis shall commence until the Effective Date and that the Science Panel Contracts will terminate upon the termination of the Settlement Agreement if the Settlement Agreement terminates prior to the Effective Date, or upon the date that the Science Panel's work is terminated pursuant to Section 6.4, subject to any recommencement of work pursuant to Section 6.3(d) or Section 6.5, except in all cases any provisions of the Science Panel Contracts that require continuation after that date to satisfy the provisions of the Settlement Agreement that survive termination, as set forth in Section 21.3, such as provisions relating to the Science Panel's confidentiality obligations;

(iv)    Provide that no Science Panel member or any of the Science Panel's authorized contractors may serve as an expert witness or consultant, or provide any voluntary testimony including by affidavit, in any Roundup Lawsuit, Related Party Lawsuit, or in any legal, legislative, administrative, or regulatory action, proceeding, or matter asserting or

alleging Roundup Claims, otherwise arising from, resulting from, in any way relating to or in connection with Roundup Products, or against the Monsanto Parties or the Related Parties arising from, resulting from, in any way relating to or in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit, in all such cases whether brought by a Settlement Class Member Party, an Opt Out, or any other Person, at any time, and further provide that no disclosure shall be made to any Person pursuant to Section 6.6(a)(iv) unless such Person(s) agree to the same;

(v)     Provide that Science Panel members will be compensated out of the Settlement Fund for their work from the Effective Date through the termination of the Science Panel's work at a specified hourly rate and/or guaranteed annual compensation during the Science Panel's work, pro-rated for any partial year, and further provide that their reasonable out-of-pocket costs and expenses for such period will be reimbursed out of the Settlement Fund;

(vi)     Provide that Science Panel members and their authorized contractors will be compensated and reimbursed out of the Settlement Fund, to the extent available, for reasonable compensation and reasonable out-of-pocket costs and expenses, respectively, as a result of any analysis by the Science Panel during any reopening pursuant to Section 6.5, with sole discretion provided to the Settlement Administrator to determine whether any such compensation and out-of-pocket costs and expenses are reasonable;

(vii)     Provide that Science Panel members and their authorized contractors will be indemnified out of the Settlement Fund, to the extent available, for reasonable legal fees, expenses, and liabilities (except in the event such legal fees, expenses, and liabilities arise from, result from, in any way relate to or are in connection with the gross negligence, willful misconduct, or bad faith of the Person seeking indemnification), in any litigation arising from, resulting from, in any way relating to or in connection with the Scientific Analysis (which, for purposes of this Section 6.7(b)(vii), shall include any analysis by the Science Panel during any reopening pursuant to Section 6.5), with sole discretion provided to the Settlement Administrator to determine whether any fees and expenses are covered by the indemnification and are reasonable and whether any legal fees, expenses, and liabilities arise from, result from, in any way relate to or are in connection with the gross negligence, willful misconduct, or bad faith of the Person seeking indemnification, and further provide that no indemnification will provided other than from the Settlement Fund and if the Settlement Fund is exhausted, no further indemnification will be provided; and

(viii)     Not contain any terms or conditions that conflict or are inconsistent with the terms of the Settlement Agreement.

(c)     The Settlement Administrator shall deliver a copy of each fully executed Science Panel Contract to the Parties within three (3) days of execution of each of the Science Panel Contracts.  The Settlement Administrator shall monitor the execution of the terms of the Science Panel Contracts and shall compensate the Science Panel pursuant to the terms of the Science Panel Contracts.  If any member of the Science Panel resigns, withdraws, or otherwise stops serving on the Science Panel, the Settlement Administrator shall notify the Parties within three (3) days of such event, and shall contract with any such new member of the Science Panel

selected by the Parties, as provided in Section 6.1 hereof.  The Settlement Administrator shall contract with any such new member pursuant to the provisions of Section 6.7(b).

(d)     At the request of the Science Panel, and by the deadlines requested by the Science Panel, the Settlement Administrator shall solicit proposals for services to assist the Science Panel in performing its duties as set forth in Section 6.1(e).  Any such authorized contractors  retained by the Settlement Administrator on behalf of the Science Panel shall satisfy the same requirements for freedom from conflicts as the Science Panel members, as set forth in Section 6.1(c).  The Settlement Administrator shall maintain copies of all contracts with and certifications of such authorized contractors, shall monitor execution of the terms of each contract, and shall provide compensation according to the terms of each contract.  All compensation, costs, and expenses associated with such services to assist to the Science Panel shall be considered Science Panel Costs.

(e)     Beginning three (3) months after execution of the last Science Panel Contract with the initial five Science Panel members, the Settlement Administrator shall provide quarterly administrative reports to the Parties, either orally or in writing, which shall contain copies of all contracts and certifications executed pursuant to Section 6.7(d) and a summary accounting of the quarterly Science Panel Costs incurred.  These quarterly reports will not discuss the substance of the Science Panel's work.

(f)     The Settlement Administrator shall notify the Parties the same day the Settlement Administrator receives the report from the Science Panel at the conclusion of the Science Panel's work as set forth in Section 6.3(a), and shall promptly transmit that report to the Parties and the Court.  The Final Order and Judgment shall provide that the Court will enter the Science Panel's report on its public docket upon receipt and that, as of the date thirty (30) days following such entry, the statute of limitations will no longer be tolled on Roundup Claims, as provided in Section 16.2(b) and Article XXIII.

(g)     There shall be no *ex parte* contact with the Science Panel, any of its members, or authorized contractors, except as authorized by an express written waiver by the Parties and the Settlement Administrator.  All communications between the Science Panel and the Parties or their agents arising from, resulting from, in any way relating to or in connection with the Settlement Agreement shall be conducted through the Settlement Administrator as follows:

(i)     Communication by the Science Panel.  The Science Panel shall provide to the Settlement Administrator one copy of any written communication it wants to make to the Parties, which the Settlement Administrator shall transmit to each of the Parties within three (3) days of receipt from the Science Panel.  The Settlement Administrator shall take appropriate steps to make certain each Party receives its copy as close to the same time as practicable.  If the Science Panel has questions for the Parties, in addition to providing the Parties with copies of the questions, the Settlement Administrator shall decide, in its sole discretion, whether the Parties may submit written responses to the Science Panel's questions, and shall dictate the schedule, format, and length of any responses submitted by the Parties to the Science Panel, subject to Section 6.7(g)(ii).

(ii)     Communication by the Parties.  Where permitted pursuant to the Settlement Agreement, including pursuant to Section 6.2(e) and Section 6.7(g)(i), if a Party (Party A) seeks to communicate with the Science Panel, Party A shall send a copy of the proposed communication to the other Party (Party B) and a copy to the Settlement Administrator.  Within three (3) days of receipt of such communication, the Settlement Administrator shall forward copies of the communication provided by Party A to each member of the Science Panel and send a copy of the Settlement Administrator's correspondence to each of the Parties.

(iii)     For the avoidance of doubt, these communications are subject to Section 6.6, and considered as Confidential Information subject to the protections of Article XXII.

(h)     Recordkeeping Duties of Settlement Administrator.  The Settlement Administrator shall maintain appropriate books, records, and documents pertaining to the Science Panel such as contracts, invoices, and receipts as reasonably required by the Defendant.  The Defendant shall have the right to obtain, and the Settlement Administrator shall be required to provide, an accounting related to costs and expenses as well as access to books and records pertaining to the Science Panel which the Defendant may reasonably require.

(i)     No Effect.  The Science Panel Determination shall not bind the Monsanto Parties in any legal, legislative, administrative, or regulatory action, proceeding, or matter except Roundup Lawsuits between a Monsanto Party and a Settlement Class Member Party to the extent set forth in Section 6.3.  Nothing in the Settlement Agreement or the Science Panel Determination shall affect or limit the Monsanto Parties' right to rely upon determinations by the EPA or other regulators with respect to whether Roundup Products or glyphosate can cause NHL in connection with any issue or defense (including preemption), other than General Causation to the extent and under the circumstances set forth in Section 6.3(c)(i).  The Defendant (which agrees with the conclusions reached by the EPA) reserves the right to assert the correctness of any findings that have been made by regulatory authorities (or any similar findings based on additional scientific developments) in any legislative, administrative, or regulatory setting in the United States or abroad or in any litigation matter in which the Settlement Agreement does not provide for contrary preclusive effect.  The methodology set forth in Section 6.2 for the Scientific Analysis is the product of a negotiated settlement of Roundup Lawsuits, and nothing in the Settlement Agreement or the Science Panel Determination shall affect the Monsanto Parties' rights to contest causation in any legislative, administrative, or regulatory setting or in litigation challenging any legislation, regulation, or legislative, administrative, or regulatory requirements or determinations.

Section 6.8     Related Parties.

(a)     Causation Not Established Finding.  A Causation Not Established Finding shall be binding on and have issue-preclusive effect against the Settlement Class Member Parties as provided below in any and all Related Party Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Related Parties.  The binding and issue-preclusive effect shall be that, in any and all Related Party Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Related Parties, the Settlement Class Member Parties shall be precluded and collaterally estopped from contending, asserting, or alleging that their exposure (or the exposure

37

that their Claims are based upon) to Roundup Products through the application of Roundup Products caused or was capable of causing NHL.  The issue-preclusive effect described in this paragraph is intended to encompass all forms of causation in all forums, whether referred to as "cause-in-fact," "actual cause," "proximate cause," "factual cause," "legal cause," general causation, specific causation, or according to some other nomenclature.  Without limiting the foregoing, the issue-preclusive effect is intended to apply in any and all Related Party Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products through the application of Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation, including through an "issue class" under federal or state procedure.  The issue-preclusive effect also applies to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL.  This issue-preclusive effect was separately bargained for and the Parties would not have entered into the Settlement Agreement unless it included such issue-preclusive effect.

        (b)      <u>Causation Established Finding</u>.

        (i)      Where the Settlement Class Member Party at issue has (or has Claims based upon) NHL, but does not satisfy the threshold internal dose level set forth in the Causation Established Finding, that Causation Established Finding shall be binding on and have issue-preclusive effect against that Settlement Class Member Party as provided below in any and all Related Party Lawsuits and with respect to any and all Roundup Claims between that Settlement Class Member Party and any of the Related Parties.  The binding and issue-preclusive effect shall be that, in any and all Related Party Lawsuits and with respect to any and all Roundup Claims between that Settlement Class Member Party and any of the Related Parties, the Settlement Class Member Party shall be precluded and collaterally estopped from contending, asserting, or alleging that their exposure (or the exposure that their Claims are based upon) to Roundup Products through the application of Roundup Products caused or was capable of causing their NHL.  This issue-preclusive effect is intended to encompass all forms of causation in all forums, whether referred to as "cause-in-fact," "actual cause," "proximate cause," "factual cause," "legal cause," general causation, specific causation, or according to some other nomenclature.  Without limiting the foregoing, the issue-preclusive effect is intended to apply in any and all Related Party Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products through the application of Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation, including through an "issue class" under federal or state procedure.  The issue-preclusive effect also applies to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL.  This issue-preclusive effect was separately bargained for and the Parties would not have entered into the Settlement Agreement unless it included such issue-preclusive effect.

        (ii)      Where the Settlement Class Member Party at issue both has (or has Claims based upon) NHL and satisfies the threshold internal dose level set forth in the Causation Established Finding, the Causation Established Finding shall not be binding on or have issue-preclusive effect against the Related Parties in any or all Related Party Lawsuits and with respect to any and all Roundup Claims between that Settlement Class Member Party and any of the Related Parties.

(iii)     For the avoidance of doubt, the Related Parties are entitled to take advantage of the issue-preclusive effect of the Causation Established Finding in any Related Party Lawsuit, as set forth in Section 6.8(b)(i), while still contesting all issues, whether in law, fact, equity, or otherwise, including causation and damages, and asserting any defenses regardless of whether a Settlement Class Member Party is bound by the Causation Established Finding.

(c)     For the avoidance of doubt, nothing in the Settlement Agreement in any way binds the Related Parties.

Section 6.9     <u>Settlement Class Members' Subsequent Exposures</u>.     For the avoidance of doubt, if a Settlement Class Member is exposed to Roundup Products through the application of Roundup Products on or after the Settlement Date, the issue-preclusive effect under Section 6.3 and Section 6.8, the Releases under Article XV, and the stay described in Section 16.2(b)(i) and Section 18.1(g) shall apply to Claims arising from, resulting from, in any way relating to or in connection with such exposure to the same extent as Claims arising from, resulting from, in any way relating to or in connection with exposure prior to the Settlement Date.

## ARTICLE VII
## Defendant's Payment Obligations

Section 7.1     <u>Funding Amount</u>.  The Defendant shall pay in accordance with the funding terms set forth herein:

(a)     <u>Settlement Fund Amount</u>.  One Billion One Hundred Million United States dollars (U.S. $1,100,000,000), minus the Settlement Class Notice Amount, to be used for the Funded Class Benefits and the Additional Permitted Fund Uses as described in this Article VII (such amount being the "Settlement Fund Amount").  In no event shall Defendant be required to fund any payments for Funded Class Benefits or Additional Permitted Fund Uses in excess of the Settlement Fund Amount.

(b)     <u>Settlement Class Notice Amount</u>.  The amount of Settlement Class Notice Costs related to the Settlement Class Notice, as opposed to any supplemental notice (such amount being the "Settlement Class Notice Amount").

(c)     Notwithstanding any provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, or any subsequent legislation mandating or subsidizing health insurance coverage, the Defendant shall pay in full the amounts set forth in this section, and will not bill any Governmental Payor for any such costs.

Section 7.2     <u>Exclusive Payments</u>.  For the avoidance of any doubt, other than as set forth in this Article VII and in Article XXIV, the Defendant shall have no payment obligations in connection with the Settlement Agreement.

Section 7.3    <u>Funding Schedule and Terms</u>.    The Defendant's payment obligations shall be funded as follows:

(a)    <u>Settlement Fund</u>.  The Defendant shall pay the Settlement Fund Amount and the Settlement Class Notice Amount (other than the $1,000,000 separately paid as provided in Section 7.3(b)) on the following schedule:

(i)    No later than twenty (20) days after entry of the Preliminary Approval Order (including the provision approving the Escrow Agreement), the Defendant shall pay a total of Forty-Nine Million United States dollars (U.S. $49,000,000) into the Settlement Fund (*i.e.*, $50,000,000 with a credit for the $1,000,000 previously paid pursuant to Section 7.3(b)).  Such amount shall be used first to satisfy the Settlement Class Notice Amount.  The excess of such amount over the Settlement Class Notice Amount may be used prior to the Effective Date to the extent necessary to fund Settlement Administration Costs associated with preparing the administration of the Funded Class Benefits, and any remainder shall go towards Funded Class Benefits and Additional Permitted Fund Uses once they commence following the Effective Date.

(ii)    No later than thirty (30) days after entry of the Final Order and Judgment, the Defendant shall pay a total of Fifty Million United States dollars (U.S. $50,000,000) into the Settlement Fund, which amount may be used prior to the Effective Date to the extent necessary to fund Settlement Administration Costs associated with preparing the Funded Class Benefits and the remainder of which amount shall go towards Funded Class Benefits and Additional Permitted Fund Uses once they commence following the Effective Date.

(iii)    No later than thirty (30) days after the Effective Date or February 15, 2021, whichever is later, the Defendant shall pay a total of Four Hundred Million United States dollars (U.S. $400,000,000) into the Settlement Fund.

(iv)    Between the date of the payment set forth in Section 7.3(a)(iii) and the first anniversary of that date, the Settlement Administrator may direct the Defendant on reasonable notice to pay up to One Hundred Million United States dollars (U.S. $100,000,000) into the Settlement Fund, to the extent that the Settlement Administrator concludes that such payments are necessary to fund Funded Class Benefits that become payable during the period between the date of the payment set forth in Section 7.3(a)(iii) and the first anniversary of that date.

(v)    On each of the first three anniversaries of the date of the payment set forth in Section 7.3(a)(iii), the Defendant shall pay into the Settlement Fund an amount equal to Two Hundred Million United States dollars (U.S. $200,000,000) less one-third of the amount (if any) that the Settlement Administrator directed the Defendant to pay pursuant to Section 7.3(a)(iv).

(b)    <u>Payment of Settlement Class Notice Amount</u>.  No later than five (5) days after the Settlement Date, the Defendant shall pay One Million United States dollars (U.S. $1,000,000) of the Settlement Class Notice Amount to Class Counsel to fund the development of the Settlement Class Notice Plan.  After entry of the Preliminary Approval Order, the Defendant shall pay the remainder of the Settlement Class Notice Amount into the Settlement Fund on the

schedule set forth in Section 7.3(a)(i), and shall receive a credit for the payment described in the preceding sentence as provided in Section 7.3(a)(i). The Parties shall inform the Settlement Administrator of the dollar amount of the Settlement Class Notice Amount once such final dollar amount is known, as set forth in Section 4.1(b). Any additional Settlement Class Notice Costs will be funded through the Settlement Fund as described in Section 7.5.

(c)     Prepayment Right. Notwithstanding anything to the contrary contained in the Settlement Agreement, the Defendant will have the right (but not the obligation) to prepay any of its anticipated payment obligations under the Settlement Agreement. In connection with any such prepayment, the Defendant will designate in writing the payment obligation that is being prepaid and how such prepayment should affect the Defendant's remaining payment obligations (*i.e.*, whether the amount prepaid should be credited against the next payment obligation or to one or more subsequent payment obligations or a combination thereof).

Section 7.4     Allocation of Settlement Fund Amount to Funded Class Benefits. Except as provided in Section 7.5, the Settlement Fund Amount shall be used for Funded Class Benefits.

(a)     The following shall constitute "Funded Class Benefits":

(i)     Diagnostic Accessibility Grant Program (including any directly associated Tax Expenses);

(ii)     Research Funding Program (including any directly associated Tax Expenses); and

(iii)     Interim Assistance Grants (including any directly associated Tax Expenses)

(b)     The Settlement Fund Amount (net of money for Additional Permitted Fund Uses) shall presumptively be allocated among the Funded Class Benefits according to the following percentages. The Settlement Administrator will have sole discretion to alter the presumptive allocations among the Funded Class Benefits, provided, however, that any such reallocation is subject to the minimum and maximum funding thresholds for each Funded Class Benefit enumerated in this provision. In allocating the Settlement Fund, whether according to the presumptive allocations or any reallocation, the Settlement Administrator will make allowance for expected Additional Permitted Fund Uses that have not yet been incurred.

(i)     Eighteen percent (18%) of the Settlement Fund Amount (net of money for Additional Permitted Fund Uses) will presumptively be allocated to the Diagnostic Accessibility Grant Program. If the Settlement Administrator alters this percentage in the exercise of its discretion, at least One Hundred Million United States dollars (U.S. $100,000,000) and no more than Two Hundred and Fifty Million United States dollars (U.S. $250,000,000) of the Settlement Fund Amount must be allocated to the Diagnostic Accessibility Grant Program.

(ii)     Five percent (5%) of the Settlement Fund Amount (net of money for Additional Permitted Fund Uses) will presumptively be allocated to the Research Funding Program. If the Settlement Administrator alters this percentage in the exercise of its

41

discretion, at least Twenty-Five Million United States dollars (U.S. $25,000,000) and no more than Seventy-Five Million United States dollars (U.S. $75,000,000) of the Settlement Fund Amount, must be allocated to the Research Funding Program.

(iii)     Seventy-seven percent (77%) of the Settlement Fund Amount (net of money for Additional Permitted Fund Uses) will presumptively be allocated to Interim Assistance Grants.  If the Settlement Administrator alters this percentage in the exercise of his discretion, at least Six Hundred and Fifty Million United States dollars (U.S. $650,000,000) of the Settlement Fund Amount must be allocated to Interim Assistance Grants.

Section 7.5     Allocation of Settlement Fund Amount to Additional Permitted Fund Uses.  The Settlement Administrator shall allocate a portion of the Settlement Fund Amount among the Additional Permitted Fund Uses, with the remainder of the Settlement Fund Amount allocated among the Funded Class Benefits as provided in Section 7.4(b), unless altered by the Settlement Administrator pursuant to that Section 7.4(b), but in all events subject to the minimum dollar amounts of funding set forth in Section 7.4(b).  In allocating a portion of the Settlement Fund Amount among the Additional Permitted Fund Uses, the Settlement Administrator shall take into account, among other things, potential costs and expenses of indemnification pursuant to Section 6.7(b)(vii) and potential compensation and reimbursement of the Science Panel members pursuant to Section 6.7(b)(vi), and shall reserve sufficient funds for Science Panel Costs that may reasonably be incurred in the event of reopening(s) pursuant to Section 6.5.  The total amount of the Settlement Fund Amount allocated to Additional Permitted Fund Uses may not exceed Fifty Million United States dollars (U.S. $50,000,000), absent Court approval.

(a)     The following shall constitute "Additional Permitted Fund Uses":

(i)     Settlement Administration Costs;

(ii)     Science Panel Costs;

(iii)     Settlement Class Notice Costs that exceed the Settlement Class Notice Amount;

(iv)     Tax Expenses other than those directly associated with Funded Class Benefits; and

(v)     The fees and expenses of the Escrow Agent, to the extent set forth in the Escrow Agreement.

(b)     The Settlement Fund Amount may be allocated to the Additional Permitted Fund Uses by the Settlement Administrator in its sole discretion (taking into account, among other things, potential costs and expenses of indemnification pursuant to Section 6.7(b)(vii) and potential compensation and reimbursement of the Science Panel members pursuant to Section 6.7(b)(vi)); provided, however, that Court approval is required for allocation to Additional Permitted Fund Uses above the cap set forth in this Section 7.5 or for allocation  to Settlement Administrator Costs.

Section 7.6    No Interest or Inflation Adjustment.  For the avoidance of doubt, the payments set forth in Article VII will not be subject to any interest obligation or inflation adjustment.

Section 7.7    No Further Financial Obligations.  If the Preliminary Approval Order or the Final Order and Judgment is not entered by the Court or is reversed by an appellate court, the Defendant will have no further financial obligations under the Settlement Agreement and any unexpended funds in the Settlement Fund, or unexpended payments made to Class Counsel for Settlement Class Notice will be returned to the Defendant forthwith.

**ARTICLE VIII**
**Diagnostic Accessibility Grant Program**

Section 8.1    Scope of Program.  The Diagnostic Accessibility Grant Program is intended to help address regional disparities in access to NHL Diagnostic Evaluation among Settlement Class Members during the pendency of the Scientific Analysis, through the distribution of grants to medical providers in specified service areas.  As used in the Settlement Agreement, "NHL Diagnostic Evaluation" means evaluation of an individual for NHL using methodologies that are generally accepted as appropriate among the medical community for the individual in question in view of that individual's profile and characteristics.  Within ninety (90) days following entry of the Preliminary Approval Order, the DAGP Administrator shall cause to be published on the Settlement Website a list of service areas identified pursuant to Exhibit 5 (such list, the "List of Service Areas").  Class Counsel or Counsel for the Defendant may appeal the List of Service Areas to the Settlement Administrator.  Any such appeal must be made in writing to the Settlement Administrator within thirty (30) days of the publication of the List of Service Areas on the Settlement Website.  The Settlement Administrator shall dictate the format and length of any such written appeal, and may give the DAGP Administrator an opportunity to respond.  The decision of the Settlement Administrator regarding an appeal shall be final and binding.  There shall be no appeal from the Settlement Administrator's determination.   To the extent that the DAGP Administrator determines that adding a specified service area to the List of Service Areas would further the objective of the Diagnostic Accessibility Grant Program without unduly reducing the grants that can be provided within the other service areas identified in the List of Service Areas, the additional service area may be added to the List of Service Areas, subject to the advance approval of the Settlement Administrator in the Settlement Administrator's discretion.  The List of Service Areas may not be modified more than eight (8) months after the Effective Date.  Grants provided to medical providers under the Diagnostic Accessibility Grant Program shall be used only to increase the availability of NHL Diagnostic Evaluation to eligible Settlement Class Members (which in some circumstances may facilitate their application for Interim Assistance Grants), and may not be used to provide or pay for treatment for any Settlement Class Member.

Section 8.2    Outreach Campaign.

(a)    Beginning within the later of thirty (30) days following the Effective Date or ninety (90) days following entry of the Final Order and Judgment, and continuing through the period during which the Scientific Analysis is pending, the DAGP Administrator shall conduct an outreach campaign (the "Outreach Campaign") to inform DAGP Eligible Settlement Class

Members about the objectives of the Diagnostic Accessibility Grant Program described in this Article VIII and Exhibit 5.

(b)     The DAGP Administrator shall design the Outreach Campaign (i) to best reach the affected populations in the service areas of medical providers who receive grants and the principal entities that support healthcare awareness among each such demographic community in such areas; (ii) to leverage the communication channels that best reflect how various cohorts of DAGP Eligible Settlement Class Members receive and share information; and (iii) to otherwise inform DAGP Eligible Settlement Class Members about the objectives of the Diagnostic Accessibility Grant Program described in this Article VIII and Exhibit 5.

(c)     The funding for the Outreach Campaign shall come from the funds allocated to the Diagnostic Accessibility Grant Program.  The DAGP Administrator shall design and direct the Outreach Campaign on a cost-effective basis to ensure that as much of the Diagnostic Accessibility Grant Program funds as practicable are preserved for grants to medical providers. Absent approval of the Settlement Administrator, no more than five percent (5%) of the funds allocated to the Diagnostic Accessibility Grant Program may be used for the Outreach Campaign.

(d)     Within forty-five (45) days following entry of the Final Order and Judgment, the DAGP Administrator will provide to the Settlement Administrator, Class Counsel, and the Defendant a preliminary plan for the Outreach Campaign meeting the conditions set forth in Section 8.2(b) and Section 8.2(c).  The Outreach Campaign shall commence following the Effective Date in accordance with that plan, together with any modifications requested by the Settlement Administrator after consultation with the DAGP Administrator.

Section 8.3     DAGP Grants.

(a)     Grant Criteria.  Within forty-five (45) days following entry of the Final Order and Judgment, the DAGP Administrator will develop procedures for the award of grants ("DAGP Grants") to medical providers (such providers being "DAGP Grantees"), and for the monitoring of the use of DAGP Grant funds by such DAGP Grantees.  These procedures shall include grant application contents and contracting protocols meeting the requirements set forth in this Section 8.3.  The procedures shall also include guidelines for the selection of DAGP Grantees and the determination of the amount of individual DAGP Grants.  The guidelines shall provide for the selection of DAGP Grantees and determination of DAGP Grant amounts consistent with the requirements of this Section 8.3 and in a manner that the DAGP Administrator determines will increase the availability of NHL Diagnostic Evaluation to the greatest number of DAGP Eligible Settlement Class Members in the service areas identified in the List of Service Areas, taking into account the following criteria, as well as the limitations imposed in Section 8.3(b):

(i)     The provider's capabilities and capacity to arrange for or perform NHL Diagnostic Evaluation;

(ii)    The estimated number of Settlement Class Members within the provider's service area who are DAGP Eligible Settlement Class Members, and who would not otherwise have access to NHL Diagnostic Evaluation services;

44

(iii)     The extent of usage of Roundup Products in the provider's service area;

(iv)     The provider's number and types of staff and full-time equivalents that can serve DAGP Eligible Settlement Class Members, including their qualification levels;

(v)     The provider's ability to collect patient-level data, including considerations for HIPAA / HITECH compliance, and performance measures as prescribed by the DAGP Administrator to assist the DAGP Administrator in assessing and reporting upon the Diagnostic Accessibility Grant Program's outcome and performance measures;

(vi)     The provider's fraud, waste, and abuse policies;

(vii)     Whether the provider is capable of satisfying the requirements for a Qualified Physician;

(viii)     The provider's effectiveness in applying funds from any prior DAGP Grant to the NHL Diagnostic Evaluation of DAGP Eligible Settlement Class Members; and

(ix)     The provider's compliance with the Diagnostic Accessibility Grant Program's requirements in connection with any prior DAGP Grant, including any such requirements contained in any Grantee Contract entered into by the provider.

(b)     <u>Additional Limitations on Grant Amounts</u>.

(i)     The DAGP Administrator shall award DAGP Grants based on a fixed-length budget period, the length of which shall remain the same from period to period once set by the DAGP Administrator.  The DAGP Administrator shall determine the length of the budget period, which shall not be longer than twelve (12) months, based on what length best accommodates the objectives of the Diagnostic Accessibility Grant Program while also taking into account the DAGP Grantees' fiscal planning process.  At the conclusion of a budget period a DAGP Grantee may reapply for a new DAGP Grant.  The last budget period shall end on the date four (4) years after the Effective Date.

(ii)     In awarding DAGP Grants, the DAGP Administrator shall seek to conserve funds such that approximately equal shares of the total funds allocated to the Diagnostic Accessibility Grant Program (less funds devoted to the Outreach Campaign and to the payment of any vendors, professionals, and consultants as provided in Section 8.5) will be distributed as DAGP Grants during each budget period.  While the DAGP Administrator shall seek to distribute approximately equal shares during each budget period, the DAGP Administrator shall have the discretion to adjust the amounts distributed in the first budget period following the Effective Date to reflect any anticipated higher demand for NHL Diagnostic Evaluations to DAGP Eligible Settlement Class Members during that period, provided that the amount distributed in the first budget period following the Effective Date does not exceed the anticipated equal shares to be distributed in subsequent budget periods by more than twenty-five percent (25%).  The DAGP Administrator may not award DAGP Grants in a total amount that exceeds the total funds allocated

to the Diagnostic Accessibility Grant Program (less funds devoted to the Outreach Campaign and to the payment of any vendors, professionals, and consultants as provided in Section 8.5).

(c)     Report to the Settlement Administrator.  The DAGP Administrator shall provide the grant procedures to the Settlement Administrator promptly after developing them. Following the Effective Date, the DAGP Administrator shall conduct the selection of DAGP Grantees and determination of DAGP Grant amounts as provided below in accordance with those procedures, together with any modifications to the procedures requested by the Settlement Administrator after consultation with the DAGP Administrator.  The DAGP Administrator shall promptly notify the Settlement Administrator of all DAGP Grant amounts and the respective DAGP Grantees for each budget period.

(d)     Selection of DAGP Grantees.

(i)     Within the later of thirty (30) days following the Effective Date or one hundred and twenty (120) days following entry of the Final Order and Judgment, the DAGP Administrator will select a network of medical providers as initial DAGP Grantees for the first budget period.  In addition to the criteria provided in Section 8.3(a), priority in the selection of initial DAGP Grant recipients shall be given to federally funded healthcare centers, including Federally Qualified Health Centers ("FQHCs") and FQHC "look-alikes" under Section 330 of the Public Health Service Act, 42 U.S.C. § 254b, in the service areas identified in the List of Service Areas.  Thereafter, for each subsequent budget period, the DAGP Administrator shall award DAGP Grants to DAGP Grantees for that budget period.

(ii)     Upon selection of a DAGP Grantee, the DAGP Administrator shall determine whether the DAGP Grantee is capable of satisfying the requirements of a Qualified Physician as set forth in Exhibit 6.  If the DAGP Grantee is deemed so capable, following the DAGP Grantee's provision of NHL Diagnostic Services to a Settlement Class Member, the receipt by the Settlement Class Member of a Qualifying Diagnosis, and the submission of any additional information to the DAGP Administrator necessary to establish that the DAGP Grantee meets the requirements of a Qualified Physician for such Settlement Class Member, the DAGP Administrator shall determine whether the DAGP Grantee is a Qualified Physician for such Settlement Class Member.  Any treatment provided by a DAGP Grantee to a Settlement Class Member, including in order to satisfy the requirements of a Qualified Physician, shall not be provided or paid for using funds from a DAGP Grant.  Class Counsel and the Defendant may appeal a DAGP Administrator determination that a DAGP Grantee is capable of satisfying the requirements of a Qualified Physician, and Class Counsel may appeal a DAGP Administrator determination that a DAGP Grantee is a Qualified Physician for a particular Settlement Class Member.  Any appeal must be made to the Settlement Administrator within thirty (30) days of the appellant receiving notification of the DAGP Administrator determination that is the subject of the appeal, and such determination shall be reviewed by the Settlement Administrator for abuse of discretion.  The decision of the Settlement Administrator regarding an appeal shall be final and binding.  There shall be no appeal from the Settlement Administrator's determination.

(iii)     The DAGP Administrator shall provide the list of DAGP Grantees, DAGP Grant amounts, and the DAGP Administrator's determinations as to whether a

DAGP Grantee is capable of satisfying the requirements of a Qualified Physician to the Settlement Administrator and shall give the Settlement Administrator a reasonable opportunity for review and comment. Absent any objection from the Settlement Administrator, the DAGP Administrator shall disburse a DAGP Grant following the execution by the DAGP Grantee of a Grantee Contract as set forth in Section 8.3(e).

(iv)     The DAGP Administrator shall provide a list identifying each DAGP Grantee that the DAGP Administrator determines is a Qualified Physician for a Settlement Class Member.  For each such DAGP Grantee, the list shall identify each Settlement Class Member for which the DAGP Administrator has determined that the DAGP Grantee is a Qualified Physician.

(e)     DAGP Grantee Contracts.

(i)     The DAGP Administrator will enter into a written contract with each DAGP Grantee (the "Grantee Contract") to increase the availability of NHL Diagnostic Evaluation to DAGP Eligible Settlement Class Members.  The Grantee Contract will include, among other things, a description of the services that will be provided under the Diagnostic Accessibility Grant Program, which shall include only NHL Diagnostic Evaluation; rate benchmarks and any inflation indices related to the NHL Diagnostic Evaluation services; terms relating to licensing, credentials, board certification, and other qualifications; the amount and type of insurance to be maintained by the DAGP Grantee; procedures for scheduling, rescheduling, and cancelling appointments for DAGP Eligible Settlement Class Members; document retention policies and procedures; and fraud policies.  The Grantee Contract will further provide that:

(1)     DAGP Grant funds may only be applied to increase the availability of NHL Diagnostic Evaluation to DAGP Eligible Settlement Class Members;

(2)     The DAGP Grantee will not bill or otherwise seek reimbursement from any Governmental Payor for any NHL Diagnostic Evaluation services that it provides or pays for using DAGP Grants;

(3)     The DAGP Grantee will complete Qualified Physician Certifications for Settlement Class Members, upon request, if the DAGP Administrator determines that the DAGP Grantee is a Qualified Physician for such Settlement Class Members;

(4)     The DAGP Grantee will release, discharge, and hold harmless the Parties, the Monsanto Parties, Class Counsel, Counsel for the Defendant, the DAGP Administrator, and the Settlement Administrator from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from, resulting from, in any way relating to or in connection with the services provided by that DAGP Grantee as part of the Diagnostic Accessibility Grant Program; and

(5)     The DAGP Administrator may terminate the Grantee Contract and require the return of any remaining DAGP Grant funds from the DAGP Grantee if the DAGP Grantee is not in compliance with the Grantee Contract terms, or for other cause.

(ii)     The Grantee Contract's fraud policies will contain the following provision regarding fraudulent conduct:  "As a DAGP Grantee you have agreed to provide your services and make any evaluation in good faith in accordance with best medical practices.  Your evaluations and billings will be audited on a periodic and random basis subject to the discretion of the DAGP Administrator and Settlement Administrator.  Any finding of fraudulent evaluations or billings by you will be subject to, without limitation, referral to appropriate regulatory and disciplinary boards and agencies and/or federal, state, or local authorities, the immediate termination of this contract, and your disqualification from serving in any role in any aspect of the Class Action Settlement" (or substantially similar language approved in advance by the Settlement Administrator).

(iii)     The DAGP Administrator shall establish procedures to audit DAGP Grantees' compliance with Grantee Contracts.

(iv)     Nothing in the Grantee Contracts will limit or otherwise restrict a DAGP Grantee or its personnel from providing treatment or from using its facilities, equipment, or resources to provide treatment, on the condition that funds from a DAGP Grant may not be used to provide or pay for that treatment.

Section 8.4     DAGP Applications.     Following the Effective Date, eligible Settlement Class Members and Representative Claimants will be entitled to submit an application for participation in the Diagnostic Accessibility Grant Program ("DAGP Application").

(a)     A living Settlement Class Member, other than a Derivative Claimant, is eligible for participation in the Diagnostic Accessibility Grant Program (and accordingly a "DAGP Eligible Settlement Class Member") if he or she meets the following criteria:

(i)     The Settlement Class Member has not received a Qualifying Diagnosis; and

(ii)     The Settlement Class Member (or, if the Settlement Class Member is a minor or legally incapacitated or incompetent, such Settlement Class Member's Representative Claimant) timely submits an application for participation in the Diagnostic Accessibility Grant Program meeting the terms and conditions described in Section 8.4(c), including proof of the Settlement Class Member's exposure to Roundup Products through the application of Roundup Products as set forth in Exhibit 7, Part 5.

(b)     To be considered timely, a DAGP Application must be submitted by one (1) year after the Effective Date unless the DAGP Administrator determines upon application that the individual Settlement Class Member or Representative Claimant has shown good cause or excusable neglect.

(c)     The contents of the DAGP Application will include, in addition to any other information the DAGP Administrator or Settlement Administrator believe warranted to fulfill the objective of the Diagnostic Accessibility Grant Program:

(i)       The Approved Registration Number that the Settlement Class Member or Representative Claimant shall have obtained pursuant to Article V;

(ii)      An affirmation bearing the Settlement Class Member's or Representative Claimant's Personal Signature and stating under penalty of perjury that the subject Settlement Class Member has not previously received a Qualifying Diagnosis; and

(iii)     Proof of the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products as set forth in Exhibit 7, Part 5.

(d)      Settlement Class Members and Representative Claimants who do not have an Approved Registration Number, either because they have timely applied for but not yet received a Notice of Registration Determination or because there is an attempted cure or a challenge pending with respect to their Notice of Registration Determination or an appeal pending with respect to their Notice of Challenge Determination (in all cases, if submitted by the Settlement Class Member or Representative Claimant, within the timelines set forth in Section 5.3), may submit a DAGP Application without the Approved Registration Number, but must supply that number promptly upon obtaining it.  A DAGP Application shall not be considered complete until the Approved Registration Number is supplied, though will be considered to have been filed as of the original filing date for purposes of Section 8.4(b).

(e)      Each Settlement Class Member or Representative Claimant will promptly notify the DAGP Administrator of any changes or updates to the information the Settlement Class Member or Representative Claimant has provided in his or her DAGP Application.

(f)      All information received by the DAGP Administrator in connection with any DAGP Application will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state, and local laws, regulations, and guidelines, including, without limitation, privacy and data security laws.   The DAGP Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody.  The DAGP Administrator will keep the database in a form that grants access for Diagnostic Accessibility Grant Program use and for limited access to the Settlement Class Member and, as applicable, the Representative Claimant, but otherwise restricts access rights, including to employees of the DAGP Administrator who are not working on the Diagnostic Accessibility Grant Program.

(i)       The DAGP Administrator and his or her respective agents, representatives, and professionals who are administering the Class Action Settlement, will have access to all information received by the DAGP Administrator in connection with DAGP Applications necessary to perform his or her responsibilities under the Settlement Agreement.

(ii)      All information received by the DAGP Administrator in connection with any DAGP Application will be treated as confidential, as set forth in Section 22.2.

(g)      A DAGP Grantee shall not use funds from a DAGP Grant to provide NHL Diagnostic Evaluation to a Settlement Class Member in the absence of a complete DAGP

Application that complies with the requirements set forth above.  Any NHL Diagnostic Evaluation provided by the DAGP Grantee in the absence of a complete DAGP Application that complies with the requirements set forth above shall not be considered when reviewing the DAGP Grantee's effectiveness in applying funds from any prior DAGP Grant to the NHL Diagnostic Evaluation of DAGP Eligible Settlement Class Members, as well as the DAGP Grantees compliance with the Diagnostic Accessibility Grant Program's requirements in connection with any prior DAGP Grant.  The DAGP Administrator shall develop procedures for prompt review of DAGP Applications to determine their timeliness and compliance with the requirements set forth above.  The DAGP Administrator shall also develop procedures for when, in exigent circumstances, a DAGP Grantee may provide NHL Diagnostic Evaluation without the DAGP Administrator's advance review of a Settlement Class Member's DAGP Application.  In developing these procedures, the DAGP Administrator shall balance the goal of expediting the availability of NHL Diagnostic Evaluation against the goal of preventing the misuse of Diagnostic Accessibility Grant Program funds through the provision of NHL Diagnostic Evaluation to ineligible Persons.

Section 8.5    Retention of Vendors, Professionals, and Consultants.  With the written approval of the Settlement Administrator, the DAGP Administrator may hire administrative vendors, professionals, and consultants, such as legal counsel, actuaries, and economists, whom the DAGP Administrator deems necessary to faithfully implement the above provisions of this Article.  Payment to such vendors, professionals, and consultants shall come from the funds allocated to the Diagnostic Accessibility Grant Program.  In the case of administrative vendors, the DAGP Administrator will provide to the Settlement Administrator in advance the criteria by which such vendors would be selected, including draft requests for proposal to be used in soliciting such vendors.  Any such draft request for proposal shall include provisions for (a) the credentialing and other certifications of the vendor; (b) the specific administrative functions to be provided by the vendor; (c) proposed payment rate structure and terms; (d) required fraud policies; (e) the type of clinical and program data to be recorded and collected by the vendor, including considerations for the privacy and security of personal information and other data security; and (f) proposed written contracts to be entered into between the DAGP Administrator and any vendor.  The proposed contracts shall include effective procedures for the DAGP Administrator to audit the vendor's processes for billing and providing services to the Diagnostic Accessibility Grant Program and shall provide that the DAGP Administrator may terminate the contract if the vendor is not in compliance with such contract's terms.  The DAGP Administrator shall promptly notify the Settlement Administrator of all payments incurred under this Section.

Section 8.6    No Guarantee of Benefits and No Additional Funding.  For the avoidance of doubt, a Settlement Class Member's eligibility for participation in the Diagnostic Accessibility Grant Program shall not guarantee that the Settlement Class Member will receive NHL Diagnostic Evaluation or any particular type of medical test in connection with the Diagnostic Accessibility Grant Program.  In no event shall the Defendant have any funding obligations with respect to the Diagnostic Accessibility Grant Program other than as set forth in Article VII.

**ARTICLE IX**
**Research Funding Program**

Section 9.1    <u>Scope of Program</u>.  A program will be established to fund medical and/or scientific research into the diagnosis and treatment of NHL (the "Research Funding Program").  Class Counsel and Counsel for the Defendant will agree to a protocol through which Settlement Class Members can actively participate in the research conducted in the Research Funding Program, to the extent applicable.

Section 9.2    <u>Selection for Research Funding Program</u>.

(a)    Following entry of the Final Order and Judgment, Class Counsel and Counsel for the Defendant shall solicit proposals for funding relating to medical and/or scientific research into the diagnosis and treatment of NHL from medical and scientific professionals and entities.  In addition, medical and scientific professionals and entities may make unsolicited proposals to Class Counsel and Counsel for the Defendant for funding relating to medical and/or scientific research into the diagnosis and treatment of NHL.  All proposals received by Class Counsel and Counsel for the Defendant for funding relating to the diagnosis and treatment of NHL shall be referred to as "Research Funding Proposals."  All Research Funding Proposals must specify the amount of funding that is being requested.  The Research Funding Program and the Research Funding Proposals shall be limited to research into tests for early diagnosis of NHL and treatment of NHL, and shall not include research into causation of NHL.

(b)    Following the Effective Date and no later than thirty (30) days after the first anniversary of the Effective Date, Class Counsel and Counsel for the Defendant shall submit to the Settlement Administrator joint recommendations regarding which Research Funding Proposals shall be approved for the Research Funding Program.  In addition, Class Counsel and Counsel for the Defendant may request that the Settlement Administrator approve a Research Funding Proposal for the Research Funding Program, even if not jointly agreed to by the Parties. In approving a Research Funding Proposal for inclusion in the Research Funding Program, among other things, the Settlement Administrator shall take into consideration the credentials of the medical and scientific professionals and entities sponsoring such a proposal, the effectiveness of such professionals and entities in prior research initiatives, and the potential number of Settlement Class Members that may be benefited by the Research Funding Proposal.  The Settlement Administrator may approve a Research Funding Proposal for less than the amount requested.  The decision of the Settlement Administrator shall be final and binding.  There shall be no appeal from the Settlement Administrator's determination.

(c)    Class Counsel and Counsel for the Defendant may continue to make recommendations to the Settlement Administrator for Research Funding Proposals to be included in the Research Funding Program until the amount allocated to the Research Funding Program has been reached.  In no circumstance shall Research Funding Proposals be approved in a total amount that would exceed the total funds allocated to the Research Funding Program.

Section 9.3    The Settlement Administrator will take all necessary steps to administer the Research Funding Program and establish procedures and controls to manage and account for the disbursement of funds to the research programs and all other costs associated with

51

the Research Funding Program.  The costs and expenses to administer the Research Funding Program shall be treated as Settlement Administrator Costs, pursuant to Section 12.1(c).

## ARTICLE X
## Interim Assistance Grants

Section 10.1   Qualifications.  Following the Effective Date, eligible Settlement Class Members and Representative Claimants will be entitled to apply for payments from the Settlement Fund during the pendency of the Scientific Analysis ("Interim Assistance Grants") as set forth in this Article and Article XI.  The purpose of the Interim Assistance Grants is to provide equitable assistance to eligible Settlement Class Members during the delay in their ability to pursue Roundup Claims against the Defendant during the pendency of the Scientific Analysis.  Applications for Interim Assistance Grants shall not be considered unless complete prior to the date on which the Science Panel delivers the Science Panel Determination to the Settlement Administrator.

(a)   Eligibility Criteria.  A Settlement Class Member or Representative Claimant is eligible to apply for an Interim Assistance Grant if the following criteria (the "Eligibility Criteria") are met:

(i)   The Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) received or receives a Qualifying Diagnosis in years 2016-2025, provided such Qualifying Diagnosis precedes the date on which the Science Panel delivers the Science Panel Determination to the Settlement Administrator;

(ii)   The Settlement Class Member or Representative Claimant timely submits a Claim Package meeting the terms and conditions described in Section 11.2; and

(iii)   The Settlement Class Member (or, if the Settlement Class Member is deceased, the next of kin of the deceased Settlement Class Member) meets the Assistance Thresholds in the Interim Assistance Grant Guidelines, as set forth in Exhibit 7, for the applicable year in which the Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) received a Qualifying Diagnosis.

(b)   No Prior Interim Assistance Grant.  Notwithstanding the foregoing: (i) a Settlement Class Member is not eligible to apply for an Interim Assistance Grant if either that Settlement Class Member or a Representative Claimant who is or was an authorized representative for that Settlement Class Member previously received an Interim Assistance Grant, and (ii) a Representative Claimant is not eligible to apply for an Interim Assistance Grant if that Representative Claimant, the Settlement Class Member for whom the Representative Claimant is an authorized representative, or a Representative Claimant who was an authorized representative for the same Settlement Class Member as the applying Representative Claimant previously received an Interim Assistance Grant.

(c)   Derivative Claimants.  Derivative Claimants are not eligible for an Interim Assistance Grant.  For the avoidance of doubt, this subsection does not preclude the

evaluation of the next of kin of a deceased Settlement Class Member as provided in Section 10.1(a).

Section 10.2    Amount of Interim Assistance Grant.  If a Settlement Class Member or Representative Claimant meets the Eligibility Criteria set forth in Section 10.1, the Settlement Class Member or Representative Claimant shall be eligible for an Interim Assistance Grant in an amount to be determined as provided in Section 10.3 and by application of the Interim Assistance Grant Guidelines set forth in Exhibit 7.

Section 10.3    Interim Assistance Grant Determination.  To determine whether a Settlement Class Member or Representative Claimant is eligible for an Interim Assistance Grant and the amount of any such Interim Assistance Grant, the Claims Administrator shall apply the Eligibility Criteria set forth in Section 10.1 and the Interim Assistance Grant Guidelines set forth in Exhibit 7, and shall consider any individual circumstances pursuant to Section 10.4.  The determination as to eligibility for and amount of an Interim Assistance Grant, as well as any individual circumstances pursuant to Section 10.4, shall be referred to as the "Interim Assistance Grant Determination."

(a)    Eligibility.  To determine whether a Settlement Class Member or Representative Claimant is eligible for an Interim Assistance Grant, the Claims Administrator shall review the Claim Package and the results of any investigations of the Settlement Class Member's or Representative Claimant's claim.  Based on that review, the Claims Administrator will determine:  (i) whether the Settlement Class Member or Representative Claimant duly received a favorable Notice of Registration Determination; (ii) whether the Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) has a Qualifying Diagnosis according to the Qualified Physician Certification, including consideration of, without limitation, the qualifications of the Qualified Physician and the Diagnosing Physician; (iii) whether the Settlement Class Member or Representative Claimant meets the Eligibility Criteria set forth in Section 10.1, including the timeliness and sufficiency of the Claim Package, as set forth in Section 11.4 through Section 11.7, and the Assistance Thresholds in the Interim Assistance Grant Guidelines set forth in Exhibit 7.

(b)    Amount of Interim Assistance Grant.  To determine the amount of an Interim Assistance Grant for an eligible Settlement Class Member or Representative Claimant, the Claims Administrator shall apply the Interim Assistance Grant Guidelines set forth in Exhibit 7.  The Parties understand and agree that the amount of any Interim Assistance Grant within the Presumptive Ranges set forth in the Interim Assistance Grant Guidelines is subject to the discretion of the Claims Administrator, with the possibility of appeal to the Settlement Administrator as set forth in Section 11.10.

(c)    Next of Kin.  For purposes of Article X, Article XI, and Exhibit 7, the next of kin of a deceased Settlement Class Member shall be the individual that benefits under an enforceable will of a deceased Settlement Class Member or, barring that, shall be determined by the law of the domicile of the deceased Settlement Class Member at the time of his or her death.

Section 10.4    Review of Individual Circumstances.

(a)     Any Settlement Class Member or Representative Claimant who does not meet the Eligibility Criteria can apply for a determination that their individual circumstances warrant deviation from the Eligibility Criteria.  In addition, any Settlement Class Member or Representative Claimant eligible to apply for an Interim Assistance Grant can seek a determination that their individual circumstances warrant deviation from the Presumptive Ranges. In all cases, any such applications shall be handled in accordance with this Section 10.4.

(b)     If the Claims Administrator determines that individual circumstances warrant deviation from: (i) the Eligibility Criteria set forth in Section 10.1(a)(i) (with respect only to the date range of the Qualifying Diagnosis), Section 10.1(a)(iii), or Section 10.1(b), or (ii) the Presumptive Ranges set forth in the Interim Assistance Grant Guidelines, the Claims Administrator shall be entitled to request permission from the Settlement Administrator for an exception, pursuant to Section 10.4(c) and Section 10.4(d).  For the avoidance of doubt, the Claims Administrator does not have discretion to deviate from the Eligibility Criteria or the Interim Assistance Grant Guidelines, unless it receives an express exception approved in advance by the Settlement Administrator pursuant to Section 10.4(d).

(c)     In the case of a request by the Claims Administrator to the Settlement Administrator pursuant to Section 10.4(b), the Claims Administrator shall request such permission only if the Claims Administrator concludes that (i) the request is warranted by exceptional need of the Settlement Class Member or Representative Claimant at issue for equitable assistance during the delay in ability to seek recovery from the Defendant during the pendency of the Scientific Analysis and (ii) the deviation will not materially jeopardize the ability to pay anticipated future Interim Assistance Grants out of the amount of the Settlement Fund Amount allocated to Interim Assistance Grants.

(d)     The Settlement Administrator may authorize the Claims Administrator to deviate from:  (i) the Eligibility Criteria set forth in Section 10.1(a)(i) (with respect only to the date range of the Qualifying Diagnosis), Section 10.1(a)(iii), or Section 10.1(b), or (ii) the Presumptive Ranges set forth in the Interim Assistance Grant Guidelines, in all such cases only if the Settlement Administrator determines, in its sole discretion and upon a de novo review, that the Claims Administrator's conclusions as described in Section 10.4(c)(i)-(ii) are correct.

(e)     In reaching its determination on an appeal of an Interim Assistance Grant Determination, the Settlement Administrator may deviate from:  (i) the Eligibility Criteria set forth in Section 10.1(a)(i) (with respect only to the date range of the Qualifying Diagnosis), Section 10.1(a)(iii), or Section 10.1(b), or (ii) the Presumptive Ranges set forth in the Interim Assistance Grant Guidelines, if the Settlement Administrator concludes, in its sole discretion, that (x) the request is warranted by exceptional need of the Settlement Class Member or Representative Claimant at issue for equitable assistance during the delay in ability to seek recovery from the Defendant during the pendency of the Scientific Analysis and (y) the deviation will not materially jeopardize the ability to pay anticipated future Interim Assistance Grants out of the amount of the Settlement Fund Amount allocated to Interim Assistance Grants.

(f)     In no circumstance shall the total amount paid from the Settlement Fund to Settlement Class Members or Representative Claimants who do not meet the Eligibility

Criteria or in excess of the Presumptive Ranges exceed Three Hundred Million United States dollars (U.S. $300,000,000), unless approved by the Court in advance or awarded pursuant to Section 10.4(g).

(g)     Notwithstanding     the     Eligibility     Criteria     set     forth     in Section 10.1(a)(i) with respect to the date range of the Qualifying Diagnosis, if the Science Panel has not delivered the Science Panel Determination to the Settlement Administrator by January 1, 2027 and the total amount of the Settlement Fund Amount allocated to the Interim Assistance Grants has not yet been exhausted, the Assistance Thresholds and Presumptive Ranges contained in Exhibit 7 shall be expanded to include Assistance Thresholds and Presumptive Ranges for Interim Assistance Grants to Settlement Class Members and Representative Claimants where the subject Settlement Class Member receives a Qualifying Diagnosis after 2025.  In developing such additional Assistance Thresholds and Presumptive Ranges the Claims Administrator presumptively shall use the Assistance Thresholds and Presumptive Ranges existing at the time for Settlement Class Members who received a Qualifying Diagnosis in 2025, unless the Claims Administrator determines such Assistance Thresholds and Presumptive Ranges need to be modified to preserve the funds remaining in the Settlement Fund.  Subject to approval by the Settlement Administrator, and upon approval, such Assistance Thresholds and Presumptive Ranges for post-2025 Qualifying Diagnoses shall be treated as the Assistance Thresholds and Presumptive Ranges included on Exhibit 7 are treated under the Settlement Agreement.

Section 10.5    Limitations.

(a)     The Claims Administrator and the Settlement Administrator may not award Interim Assistance Grants in a total amount that exceeds the amount of the Settlement Fund Amount allocated to Interim Assistance Grants.

(b)     The Claims Administrator and the Settlement Administrator may not award an Interim Assistance Grant after the fourth anniversary of the Effective Date, except that, if the Science Panel has not yet delivered the Science Panel Determination to the Settlement Administrator as of such anniversary, the Claims Administrator and the Settlement Administrator may award Interim Assistance Grants until the date of such delivery.

(c)     The Claims Administrator and the Settlement Administrator may not base the amount of any Interim Assistance Grant or any deviation from the Eligibility Criteria under Section 10.4 on the health insurance status of the subject Settlement Class Member.

Section 10.6    No Additional Funding.  For the avoidance of doubt, the Defendant has no funding obligations with respect to Interim Assistance Grants beyond the amount of the Settlement Fund Amount allocated to Interim Assistance Grants, even if such amount is not sufficient to pay all Settlement Class Members and Representative Claimants who satisfy the Eligibility Criteria or to provide eligible Settlement Class Members and Representative Claimants with Interim Assistance Grants within the Presumptive Ranges set forth in the Interim Assistance Grant Guidelines.  The Claims Administrator shall annually review the sufficiency of the allocated funds to pay future Interim Assistance Grants anticipated during the four-year (4-year) period following the Effective Date in light of filing, eligibility, and payment rates during the preceding year(s), and expected future filings.  The Claims Administrator shall propose modifications to the

Settlement Administrator tightening the Assistance Thresholds and/or reducing the Presumptive Ranges if it concludes such modifications are necessary to preserve sufficient funds to pay anticipated future Interim Assistances Grants at the same modified Presumptive Ranges and using the modified Assistance Thresholds.  The decision of the Settlement Administrator shall be final and binding.  There shall be no appeal from the Settlement Administrator's decision.

Section 10.7   No Offset.  For the avoidance of doubt, an Interim Assistance Grant received by a Settlement Class Member or Representative Claimant shall not give rise to any deduction, offset, or reduction against an amount awarded to such Settlement Class Member or Representative Claimant in any subsequent Roundup Lawsuit.

**ARTICLE XI**
**Interim Assistance Grant Determinations, Payments, and Appeals**

Section 11.1   Claim Forms and Claim Packages.  Each Settlement Class Member or Representative Claimant applying for an Interim Assistance Grant must complete a Claim Form and submit a Claim Package to the Claims Administrator.  The content of Claim Forms will be agreed to by Class Counsel and Counsel for the Defendant, and will include, without limitation, (i) the Approved Registration Number from the Notice of Registration Determination, which the Settlement Class Member or Representative Claimant shall have obtained pursuant to Article V; (ii) the number and age of the dependents of the Settlement Class Member (or, if the Settlement Class Member is deceased, of the next of kin of the deceased Settlement Class Member); (iii) an affirmation stating under penalty of perjury that no previous application for an Interim Assistance Grant has been made by the Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) or their Representative Claimant, or, if a previous application has been made, stating whether an Interim Assistance Grant has previously been received and explaining why an additional application is being made; (iv) any individual circumstances that the Settlement Class Member or Representative Claimant believes are relevant to the Interim Assistance Grant Determination; and (v) authorization for the Claims Administrator to conduct any verifications necessary to process or verify the information in the Claim Form or Claim Package.  Settlement Class Members or Representative Claimants who do not have an Approved Registration Number, either because they have timely applied for but not yet received a Notice of Registration Determination or because there is an attempted cure or challenge pending with respect to their Notice of Registration Determination or an appeal pending with respect to their Notice of Challenge Determination (in all cases, if submitted by the Settlement Class Member or Representative Claimant, within the timeline set forth in Section 5.3), may submit a Claim Form without an Approved Registration Number, but must supply that number promptly upon obtaining it and before their Claim Package can be considered.  A Claim Form shall not be considered complete until the Approved Registration Number is supplied, though will be considered to have been filed as of the original filing date for purposes of Section 11.3(a).

Section 11.2   Content of the Claim Package.

(a)   The content of Claim Packages will be agreed to by Class Counsel and Counsel for the Defendant, and will include, without limitation:  (i) a Claim Form with the Personal Signature of the Settlement Class Member or the Representative Claimant either on the

Claim Form or on an acknowledgement form verifying the contents of the Claim Form; (ii) a Qualified Physician Certification; (iii) medical records reflecting the Qualifying Diagnosis, the date such diagnosis was made, and subsequent treatment, including without limitation a signed copy of the anatomic pathology report described in Exhibit 6; (iv) a HIPAA-compliant authorization form; (v) proof of the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products, as set forth in Exhibit 7; (vi) if the Settlement Class Member is deceased, a copy of the death certificate of such Settlement Class Member, identification of the next of kin of such Settlement Class Member, identification of the executor of the estate of such Settlement Class Member (if applicable), and the domicile of the Settlement Class Member at the time of his or her death, (vii) information and documents regarding household income the year of the application and the preceding year for the Settlement Class Member (or, if the Settlement Class Member is deceased, the next of kin of the deceased Settlement Class Member); (viii) the information specified in Section 14.2(b); and (ix) an affirmation stating under penalty of perjury that the information in the Claim Package is true and correct to the best of the Settlement Class Member's or Representative Claimant's knowledge.  Settlement Class Members in Subclass 1 are not required to include in their Claim Package the Qualified Physician Certification in Section 11.2(a)(ii), but must include all other content of the Claim Package, including a signed copy of the anatomic pathology report described in Exhibit 6 and referenced in Section 11.2(a)(iii), as well as information sufficient to identify the Diagnosing Physician and establish that such physician meets the requirements of a Diagnosing Physician as set forth in Exhibit 6.

(b)     Representative Claimants of Settlement Class Members who died prior to the Effective Date do not need to include a Qualified Physician Certification in the Claim Package if the physician who would provide such certification also died prior to the Effective Date or was deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date.  Instead, the Representative Claimant must provide evidence of that physician's death, incapacity, or incompetence, the qualifications of that physician, a signed copy of the anatomic pathology report described in Exhibit 6, and information sufficient to identify the Diagnosing Physician and establish that such physician meets the requirements of a Diagnosing Physician as set forth in Exhibit 6.  For the avoidance of doubt, all other content of Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis, the date such diagnosis was made, and subsequent treatment.

(c)     If a Settlement Class Member or Representative Claimant applying for an Interim Assistance Grant is not able to obtain a Qualified Physician Certification due to the unavailability of all physicians who could otherwise provide such certification, the Settlement Class Member or Representative Claimant does not need to include a Qualified Physician Certification in the Claim Package.  Instead, the Settlement Class Member or Representative Claimant must provide an affirmation under penalty of perjury detailing all attempts that the Settlement Class Member or Representative Claimant made to obtain a Qualified Physician Certification, stating that no physician is available to provide a Qualified Physician Certification and that all possibilities to obtain a Qualified Physician Certification have been exhausted, and attaching evidence to substantiate the statements in the affirmation, which must include evidence of the unavailability of all physicians who could otherwise provide the Qualified Physician Certification.  In addition, the Settlement Class Member or Representative Claimant must provide the identity and qualifications of all physicians who could have provided the Qualified Physician

Certification had they been available, a signed copy of the anatomic pathology report described in Exhibit 6, and information sufficient to identify the Diagnosing Physician and establish that such physician meets the requirements of a Diagnosing Physician as set forth in Exhibit 6.  For the avoidance of doubt, all other content of Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis, the date such diagnosis was made, and subsequent treatment.  For purposes of this Section 11.2(c) a physician shall be considered "unavailable" only if he or she is deceased or deemed by a court of competent jurisdiction legally incapacitated or incompetent, is not able to be contacted after reasonable and repeated attempts by the Settlement Class Member or Representative Claimant, or unequivocally refuses to provide a Qualified Physician Certification.

(d)    The contents of Claim Packages will not include documents or information whose primary purpose is to show the medical costs for any medical services that a Settlement Class Member has incurred or may incur.  For the avoidance of doubt, to the extent a Settlement Class Member's medical records are provided in a Claim Package or otherwise to the Claims Administrator or Settlement Administrator, such medical records are not being provided to show and shall not be used to evaluate the medical costs for any medical services that a Settlement Class Member has incurred or may incur.

Section 11.3    Submission.

(a)    Settlement Class Members or Representative Claimants must submit Claim Packages to the Claims Administrator in accordance with Section 30.17.  Claim Packages must be submitted to the Claims Administrator no later than one hundred and eighty (180) days after (i) the Effective Date or (ii) the date of the Qualifying Diagnosis, whichever is later.  Failure to comply with this one-hundred-and-eighty-day (180-day) time limitation will preclude an Interim Assistance Grant for that Qualifying Diagnosis, unless in the determination of the Claims Administrator the Settlement Class Member or Representative Claimant can show good cause or excusable neglect.

(b)    Each Settlement Class Member or Representative Claimant will promptly notify the Claims Administrator of any changes or updates to the information the Settlement Class Member or Representative Claimant has provided in the Claim Package, including any change in mailing address.

(c)    All information submitted by Settlement Class Members or Representative Claimants to the Claims Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state, and local laws, regulations and guidelines, including, without limitation, privacy and data security laws.  The Claims Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody.  The Claims Administrator will keep the database in a form that grants access for claims administration use and for limited access to the Settlement Class Member and, as applicable, the Representative Claimant, but otherwise restricts access rights, including to employees of the Claims Administrator who are not working on claims administration for the Class Action Settlement.

(i)      All information submitted by Settlement Class Members or Representative Claimants to the Claims Administrator will be treated as confidential, as set forth in Section 22.2.

Section 11.4    <u>Preliminary Review</u>.

(a)      Within forty-five (45) days of the date on which the Claims Administrator receives a Claim Package from a Settlement Class Member or Representative Claimant, the Claims Administrator will determine the sufficiency and completeness of the required contents, as set forth in Section 11.2, including whether the Settlement Class Member or Representative Claimant has satisfied the requirements of Section 11.2(b) or Section 11.2(c), if applicable.  To the extent the volume of claims warrants, this deadline may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.  If the Claim Package as originally filed does not contain the Settlement Class Member's or Representative Claimant's Approved Registration Number for the reasons given in the penultimate sentence of Section 11.1, the forty-five (45) day period under this Section will begin as of the date on which that number is provided to the Claims Administrator.

(b)      The Claims Administrator will reject a claim submitted by a Settlement Class Member or Representative Claimant, subject to the cure provisions of Section 11.5, if the Claims Administrator has not received all required content.

Section 11.5    <u>Deficiencies and Cure</u>.  For rejected Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member or Representative Claimant, which Notice will contain a brief explanation of the Deficiency(ies) giving rise to rejection of the Claim Package, and will, where necessary, request additional information and/or documentation.  The Claims Administrator will make available to the Settlement Class Member or Representative Claimant through a secure online web interface any document(s) with a Deficiency needing correction or, upon request from the Settlement Class Member or Representative Claimant, will send the Settlement Class Member or Representative Claimant a copy of such document(s) via mail or encrypted text message, or other means of electronic delivery.  The Notice of Deficiency will be sent no later than forty-five (45) days from the date of receipt of the Claim Package by the Claims Administrator.  To the extent the volume of claims warrants, this deadline may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.  The Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member or Representative Claimant can cure the Deficiency, and will provide a reasonable deadline not less than one hundred and twenty (120) days (from the date the Notice of Deficiency is sent to the Settlement Class Member or Representative Claimant) for the Settlement Class Member or Representative Claimant to submit Deficiency cure materials.  Within that time period, the Settlement Class Member or Representative Claimant will have the opportunity to cure all Deficiencies and provide any requested additional information or documentation, except that the failure to submit timely a Claim Package in accordance with the terms of the Settlement Agreement cannot be cured other than upon a showing of good cause or excusable neglect as set forth in Section 11.3(a).    The Claims Administrator will send the Settlement Class Member or Representative Claimant a reminder notification thirty (30) days prior to the expiration of the deadline to cure any Deficiency, provided, however, that the Claims Administrator's failure to

59

provide such reminder will not excuse the underlying Deficiency.  Any Claim Package that continues to suffer from a Deficiency identified on the Notice of Deficiency that impacts the ability to process a claim following the submission of documentation intended to cure the Deficiency will be denied by the Claims Administrator following expiration of the cure deadline.

Section 11.6    Verification and Investigation.

(a)    Each Settlement Class Member or Representative Claimant claiming an Interim Assistance Grant will authorize the Claims Administrator, consistent with HIPAA and other applicable privacy laws, to verify facts and details of any aspect of the Claim Package and/or the existence and amounts, if any, of any Liens.  The Claims Administrator, at its sole discretion, may request additional documentation, which each Settlement Class Member or Representative Claimant agrees to provide in order to claim an Interim Assistance Grant.

(b)    The Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package documentation.

Section 11.7    Timing of Interim Assistance Grant Determination.

(a)    The Claims Administrator will make an Interim Assistance Grant Determination and will send a corresponding Notice of Interim Assistance Grant Determination to the Settlement Class Member or Representative Claimant, the Defendant, and Class Counsel no later than sixty (60) days from the later of:  (i) the date when a completed Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date, if any, when all Deficiencies with a Claim Package have been deemed cured by the Claims Administrator; or (iii) the date on which the Settlement Class Member or Representative Claimant no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 11.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.  The Claims Administrator will not consider or make an Interim Assistance Grant Determination as to any application that is not complete as of the date on which the Science Panel delivers the Science Panel Determination to the Settlement Administrator.

Section 11.8    Content of Grant Determination.

(a)    A Notice of Interim Assistance Grant Determination that provides an adverse determination will include information regarding how the Settlement Class Member or Representative Claimant can appeal the determination, as set forth in Section 11.10.  An adverse Interim Assistance Grant Determination does not preclude a Settlement Class Member or Representative Claimant from submitting a Claim Package in the future for an Interim Assistance Grant should the Settlement Class Member's or Representative Claimant's circumstances change. The Claims Administrator shall develop reasonable procedures and rules to ensure the right of Settlement Class Members or Representative Claimants who receive an adverse Interim Assistance Grant Determination to submit a Claim Package in the future, while preventing unwarranted

repetitive claims that do not disclose materially changed circumstances from prior claims made by the Settlement Class Member or Representative Claimant.

(b)     A Notice of Interim Assistance Grant Determination that provides a determination that the Settlement Class Member or Representative Claimant is entitled to an Interim Assistance Grant will provide:  (i) the amount of that Interim Assistance Grant; (ii) the Claims Administrator's determination of any amount to be deducted from the Interim Assistance Grant in connection with identified Liens, as set forth in Article XIV; (iii) information regarding how the Settlement Class Member or Representative Claimant can appeal the Interim Assistance Grant Determination, as set forth in Section 11.10; and (iv) information regarding the timing of payment, as set forth in Section 11.9.

Section 11.9     <u>Remuneration and Payment of Interim Assistance Grants</u>.

(a)     An Interim Assistance Grant is required to be paid by the Claims Administrator following the sending of a Notice of Interim Assistance Grant Determination and the completion of the processes for (i) appealing Interim Assistance Grant Determinations, as set forth in Section 11.10; (ii) auditing claims and investigating claims for fraud; and (iii) entering or satisfying any agreement with a Governmental Payor under Section 14.3.  The Claims Administrator shall notify the Settlement Administrator of the dates, amounts, and recipients of all Interim Assistance Grants that are required to be paid as of each month.

(b)     Settlement Class Members or Representative Claimants who are unrepresented by counsel may elect to receive payment of their Interim Assistance Grant by physical check, electronic funds, transfer, or pre-paid debit card.

(c)     Settlement Class Members or Representative Claimants who are represented by counsel shall receive payment of their Interim Assistance Grant by electronic fund transfer directly to the trust account of the attorney.

(d)     In connection with an Interim Assistance Grant issued to a Representative Claimant, the Claims Administrator will abide by all substantive laws of the domicile of such Representative Claimant concerning distribution and will not issue payment until the Claims Administrator has received from the Settlement Class Member or Representative Claimant proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Representative Claimant.  The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated, or incompetent Settlement Class Members or their guardians.

Section 11.10     <u>Appeals Process for Interim Assistance Grant Determination</u>.

(a)     Settlement Class Members or Representative Claimants who have applied for an Interim Assistance Grant or Class Counsel can appeal the Claims Administrator's eligibility determination or designated amount of the Interim Assistance Grant (including the Claims Administrator's decision with respect to any purported individual circumstances, as set

forth in Section 10.4) to the Settlement Administrator by submitting a written challenge to the Settlement Administrator within sixty (60) days after receiving the Notice of Interim Assistance Grant Determination. Appeals may only be taken to the Settlement Administrator, not the Court.

(b)     The appellant must submit to the Settlement Administrator his or her notice of appeal, using an Appeals Form provided by the Claims Administrator. The content of the Appeals Form will be agreed to by Class Counsel and Counsel for the Defendant. Once the Appeals Form is submitted by the appellant, the Settlement Administrator shall provide a written copy to the Claims Administrator, the Defendant, Class Counsel (if the appeal is taken by a Settlement Class Member or Representative Claimant), and the applicable Settlement Class Member or Representative Claimant (if the appeal is taken by Class Counsel). The appellant must present evidence in support of the written challenge and must have a good faith belief that the determination by the Claims Administrator was incorrect. Any written statement in support of an appeal may not exceed five (5) single-spaced pages in length.

(c)     No later than thirty (30) days after receipt of the Appeals Form, the Claims Administrator may submit a written statement in opposition to the appeal, and the applicable Settlement Class Member or Representative Claimant (if the appeal is taken by Class Counsel) may submit a written statement in support of or opposition to the appeal. Any written statement pursuant to this section must not exceed five (5) single-spaced pages in length. The Settlement Administrator will not deem the lack of a statement to be an admission regarding the merits of the appeal. The Settlement Administrator will also be provided access to all documents and information available to the Claims Administrator to aid in determining the appeal. The appellant may not submit a reply.

(d)     If the appeal is taken by a Settlement Class Member or Representative Claimant, Class Counsel may submit a written statement in support of or opposition to the appeal no later than fifteen (15) days after the latter of (i) receipt of the Appeals Form or (ii) the Claims Administrator's written opposition. This written statement must not exceed five (5) single-spaced pages in length. The Settlement Administrator will not deem the lack of a statement to be an admission regarding the merits of the appeal. The appellant and the Claims Administrator may each submit a reply to the submission of Class Counsel no later than fifteen (15) days after receipt of Class Counsel's written statement.

(e)     The Settlement Administrator will make a determination on the written challenge and inform the Settlement Class Member or Representative Claimant, the Claims Administrator, Class Counsel, and the Defendant of the decision. The Settlement Administrator will require clear and convincing evidence in order to set aside the Claims Administrator's determination of the Settlement Class Member's or Representative Claimant's eligibility to apply for an Interim Assistance Grant. As to any aspect of the Interim Assistance Grant Determination other than eligibility, the Settlement Administrator shall make its determination based on the exercise of its sole discretion applying the criteria for Interim Assistance Grants set forth in the Settlement Agreement, including Section 10.4 on individual circumstances, and the Interim Assistance Grant Guidelines, and may, but is not required to, take into account the reasons given for the Interim Assistance Grant Determination by the Claims Administrator. The decision of the Settlement Administrator shall be final and binding. There shall be no appeal from the Settlement Administrator's decision.

Section 11.11  <u>Interim Assistance Grant Appeal Fees and Limitations</u>.

(a)      Any Settlement Class Member or Representative Claimant taking an appeal will be charged a fee of Fifty United States dollars (U.S. $50) by the Claims Administrator that must be paid before the appeal may proceed, which fee will be refunded if the Settlement Class Member's or Representative Claimant's appeal is successful.  If the appeal is unsuccessful, the fee will be paid to the Settlement Fund.

(b)      Settlement Class Members or Representative Claimants may make a hardship request to the Claims Administrator and ask that the fee of Fifty United States dollars (U.S. $50) be waived for good cause.  The Claims Administrator will require that the Settlement Class Member or Representative Claimant provide such financial information as may be necessary to decide the request to waive the fee, which request shall be approved or denied in the Claims Administrator's sole discretion.

Section 11.12  <u>Audit Rights and Detection and Prevention of Fraud</u>.

(a)      Class Counsel and the Defendant each will have the absolute right and discretion, at any time, but at their sole expense, in good faith to conduct, or have conducted by an independent auditor, audits to verify Interim Assistance Grant claims submitted by Settlement Class Members or Representative Claimants.

(b)      Class Counsel, Counsel for the Defendant, the Settlement Administrator, and the Claims Administrator will establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Settlement Fund.  Among other fraud detection and prevention procedures, the Claims Administrator, with the approval of Class Counsel, Counsel for the Defendant and the Settlement Administrator, will institute the following procedures relating to claim audits:

(i)      A Settlement Class Member or Representative Claimant whose claim has been selected for audit by the Claims Administrator, the Settlement Administrator, Class Counsel, or Counsel for the Defendant may be required to submit additional records, including medical records, employment records, and/or proof of exposure to Roundup Products, and information as requested by the auditing party; and

(ii)      A Settlement Class Member or Representative Claimant who refuses to cooperate with an audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have the claim denied by the Claims Administrator, without right to an appeal.

(c)      On a quarterly basis, the Claims Administrator will audit a sample of the total Claim Packages that the Claims Administrator has found to qualify for Interim Assistance Grants during the preceding quarter such that the estimated percentage of total Claim Packages presenting no indication of fraud based on the aggregate number of audited Claim Packages over any rolling twelve-month (12-month) period shall provide a confidence level of ninety-five percent (95%) with a margin of error of +/- three percent (3%).  The Claims Administrator will select such Claim Packages for auditing on a random basis or to address a

specific concern raised by a Claim Package, but will audit at least four Claim Packages, if any qualify, each quarter.

(d)     In addition, the Claims Administrator will audit Claim Packages that:  (i) seek an Interim Assistance Grant when the Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) took part in the Diagnostic Accessibility Grant Program within the prior three hundred and sixty-five (365) days and was not diagnosed with NHL during the Diagnostic Accessibility Grant Program examination; (ii) seek an Interim Assistance Grant when the Settlement Class Member or Representative Claimant submitted a different Claim Package within the prior three hundred and sixty-five (365) days based upon a diagnosis of NHL by a different physician, and that Claim Package was found not to qualify for an Interim Assistance Grant; and (iii) reflect a Qualifying Diagnosis made through a medical examination conducted at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms).

(e)     Upon selection of a Settlement Class Member's or Representative Claimant's Claim Package for audit, the Claims Administrator will notify Class Counsel, the Settlement Class Member or Representative Claimant (and his/her individual counsel, if applicable), Counsel for the Defendant, and the Settlement Administrator of the selection and will require that, within ninety (90) days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member or Representative Claimant submit to the Claims Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package, which may include medical records, employment records, additional information regarding the list of Governmental Payors provided under Section 14.2(b), and/or proof of exposure to Roundup Products.

(f)     When auditing a Settlement Class Member's or Representative Claimant's claim for an Interim Assistance Grant, the Claims Administrator will review the records and information relating to that claim and determine whether the Claim Package misrepresents, omits, and/or conceals material facts that affect the claim and whether it sufficiently demonstrates the Settlement Class Member's exposure to Roundup Products through the application of Roundup Products.

(g)     If, upon completion of an audit, the Claims Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the process of issuing an Interim Assistance Grant, subject to appeal, will proceed.

(h)     If, upon completion of an audit, the Claims Administrator determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the Claims Administrator will notify the Settlement Class Member or Representative Claimant and will refer the claim to the Settlement Administrator for review and findings.  The Settlement Administrator's review and findings shall take into account whether the misrepresentation, omission or concealment was intentional, and may include the following relief, without limitation:  (i) denial of the claim; (ii) additional audits of claims involving the same law firm or physician (if applicable), including those already paid; (iii) referral of the attorney or physician (if applicable) to the appropriate disciplinary boards; (iv) referral to

federal authorities; (v) disqualification of the Settlement Class Member or Representative Claimant from further participation in the Funded Class Benefits; (vi) disqualification of the attorney or physician from further participation in the Class Action Settlement; and/or (vii) if a law firm is found by the Claims Administrator to have submitted more than one fraudulent submission on behalf of Settlement Class Members or Representative Claimants, claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to the firm by the Settlement Class Member or Representative Claimant will be forfeited and paid to the Settlement Fund.

(i)     If the Claims Administrator at any time makes a finding (based on its own detection processes or from information received from Class Counsel or Counsel for the Defendant) of fraud by a Settlement Class Member or Representative Claimant submitting a claim for an Interim Assistance Grant, and/or by the physician providing the Qualifying Diagnosis, including, without limitation, misrepresentations, omissions, or concealment of material facts relating to the claim, the Claims Administrator will notify the Settlement Class Member or Representative Claimant and will make a recommendation to Class Counsel and Counsel for the Defendant to refer the claim to the Settlement Administrator for review and findings that may include, without limitation, the relief set forth in Section 11.12(h).  If both Class Counsel and Counsel for the Defendant do not agree with the Claims Administrator's recommendation to refer a claim to the Settlement Administrator, they will notify the Claims Administrator, who will continue with the processing of the claim.

Section 11.13  Representative Claimants.  In order to receive an Interim Assistance Grant, a Representative Claimant must agree, in writing, to all matters to which Settlement Class Members agree under the Settlement Agreement.

## ARTICLE XII
## Class Action Settlement Administration

Section 12.1  Settlement Administrator.

(a)     Appointment and Oversight.

(i)     The Preliminary Approval Motion filed by Class Counsel will request that the Court appoint Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, as the Settlement Administrator.  Within ten (10) days after entry of the Preliminary Approval Order, Class Counsel will retain the Settlement Administrator appointed by the Court.

(ii)    It is the intention of the Parties that the Settlement Administrator will perform his or her responsibilities and take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement.  The Settlement Administrator shall be appointed for the life of the Settlement Agreement, commencing on the Settlement Administrator's retention, unless the Court determines, in consultation with Class Counsel and Counsel for the Defendant, that the Settlement Administrator's role is no longer necessary.  In the event such a determination is made during the life of the Settlement Agreement, oversight of the administration of the Class Action Settlement will revert to the Court.

(iii)     The Settlement Administrator will maintain at all times appropriate and sufficient bonding insurance in connection with his or her performance of responsibilities under the Settlement Agreement.  The cost for this insurance will be considered Settlement Administrator Costs.

(iv)     The Settlement Administrator has the discretion to retain administrative assistance.  Non-routine costs of administration are subject to prior Court approval and the approval of the Parties.  The cost for this assistance will be considered Settlement Administrator Costs.

(v)     The Court may, at its sole discretion, request reports or information from the Settlement Administrator.  The Settlement Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.  The Claims Administrator may assist with such reports if requested by the Settlement Administrator.

(vi)     By the end of the first January after entry of the Final Order and Judgment, and every January thereafter, the Settlement Administrator will provide annual financial reports to the Class Counsel and Counsel for the Defendant, based on information from the preceding year, regarding:  (1) expenses/administrative costs, including a summary accounting of the Settlement Administrator Costs, Claims Administrator Costs, and the DAGP Administrator Costs; (2) the projected expenses/administrative costs, including the Settlement Administrator Costs, Claims Administrator Costs, and the DAGP Administrator Costs for the remainder of the Settlement Fund term; (3) the monies remaining in the Settlement Fund and any limitations applicable to allocation of such monies; and (4) any other information requested by Class Counsel or Counsel for the Defendant.

(vii)     The Defendant may elect, at its own expense, to cause an audit to be performed by a certified public accountant of the records of the Settlement Administrator to ensure Interim Assistance Grant applications, DAGP Applications, and Research Funding Proposals are being processed and paid in compliance with the terms and conditions of the Settlement Agreement, and to investigate potential fraud, negligence, and misconduct.  The Settlement Administrator shall cooperate in good faith with the audit.  Audits may be conducted at any time during the term of the Settlement Fund.  Complete copies of the audit findings report will be provided to the Court, Class Counsel, and Counsel for the Defendant.

(b)     Roles and Responsibilities.  The Settlement Administrator will, among other responsibilities set forth in the Settlement Agreement:

(i)     Provide reports or information that the Court may, at its sole discretion, request from the Settlement Administrator, who will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs;

(ii)     Oversee complaints raised by Class Counsel, Counsel for the Defendant, the DAGP Administrator, and/or the Claims Administrator regarding aspects of the Class Action Settlement;

66

(iii)    Oversee the DAGP Administrator and the Claims Administrator as set forth in Section 12.2(a)(iv) and Section 12.3(a)(iv), and receive monthly (or quarterly) and annual reports from those Administrators;

(iv)    Assist with any administrative oversight of or coordination with the Science Panel, as set forth in Article VI; and

(v)    Oversee the allocation of the Settlement Fund Amount among the Funded Class Benefits and Additional Permitted Fund Uses, pursuant to Article VII;

(vi)    Oversee fraud detection and prevention procedures, and review and decide the appropriate disposition of potentially fraudulent claims as further specified in Section 11.12 and Section 12.5.

(vii)    Perform such other tasks reasonably necessary to accomplish the goals contemplated by the Settlement Agreement, as agreed to by Class Counsel and Counsel for the Defendant.

(c)    <u>Compensation and Expenses</u>.    Reasonable compensation of the Settlement Administrator, as approved by the Court, and reimbursement of reasonable out-of-pocket costs and expenses of the Settlement Administrator directly incurred as a result of the performance of his or her responsibilities ("Settlement Administrator Costs") will be paid out of the Settlement Fund, subject to the limitation set forth in Section 7.5 and approval of the Court in advance of payment.    Either Class Counsel or Counsel for the Defendant may challenge the reasonableness of the Settlement Administrator's compensation or out-of-pocket costs and expenses, in which case the Court will determine the reasonableness of such compensation or costs and expenses.    If the Court determines that the Settlement Administrator's compensation or any of its costs and expenses are unreasonable, the Settlement Administrator will not be paid such compensation or for such costs and expenses or, if such compensation or costs and expenses have already been paid, the Settlement Administrator will refund that amount to the Settlement Fund.

(d)    <u>Liability</u>.    The Parties, Class Counsel, and Counsel for the Defendant, and their respective Affiliates, and the Monsanto Parties will not be liable for any act, or failure to act, of the Settlement Administrator and its Affiliates, officers, directors, and employees.

(e)    <u>Replacement</u>.    The Court, in its discretion, can replace the Settlement Administrator for good cause.    If the Settlement Administrator resigns, dies, or is otherwise unable to continue employment in this position, Class Counsel and Counsel for the Defendant may file a joint motion for the appointment by the Court of a new Settlement Administrator agreed to by the Parties.    If the Parties cannot agree on a new proposed Settlement Administrator for recommendation to the Court, the Court may, but is not required to, take into account the respective positions of the Parties in selecting a new Settlement Administrator.

(f)    <u>Conflicts of Interest</u>.    Within ninety (90) days after entry of the Preliminary Approval Order, Class Counsel, Counsel for the Defendant, and the Settlement Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Settlement Administrator, on the one hand, and Settlement Class

Members (and counsel individually representing them, if any), Class Counsel, the Defendant, Counsel for the Defendant, the DAGP Administrator, or the Claims Administrator, on the other hand.  Class Counsel and Counsel for the Defendant, subject to approval of the Court, may modify such procedures in the future, if appropriate.  For the avoidance of doubt, employment of the Settlement Administrator as an expert by any Party or its agents or Affiliates in unrelated matters will not constitute a conflict of interest.

Section 12.2   Claims Administrator.

(a)      Appointment and Oversight.

(i)      The Preliminary Approval Motion will request that the Court appoint Verus, LLC as Claims Administrator.  Within ten (10) days after entry of the Preliminary Approval Order, Class Counsel will retain the Claims Administrator appointed by the Court.

(ii)      Class Counsel's retention agreement with the Claims Administrator will provide that the Claims Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Settlement Agreement, and will require that the Claims Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.  The Claims Administrator shall be responsible for the cost of this insurance and it shall not be charged to the Settlement Fund.

(iii)      The Court may, at its sole discretion, request reports or information from the Claims Administrator.  The Claims Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)      The Settlement Administrator, for the duration of his or her term, will oversee the Claims Administrator, and may, at his or her sole discretion, request reports or information from the Claims Administrator.

(v)      Beginning one month after entry of the Preliminary Approval Order, the Claims Administrator will issue a regular monthly report to the Settlement Administrator, Class Counsel, and Counsel for the Defendant through the first two years thereafter, and following the expiration of that two-year (2-year) period on a quarterly basis or as reasonably agreed upon by the Settlement Administrator, Class Counsel, and Counsel for the Defendant, regarding the status and progress of registration.  The monthly (or quarterly) report will include, without limitation:  (1) the monthly and total number of Settlement Class Members who registered, and the biographical and geographical information for each Settlement Class Member who registered in the preceding month (or quarter); (2) the monthly and total number of Representative Claimants who registered, and the biographical and geographical information for each Representative Claimant who registered in the preceding month (or quarter) and the biographical and geographical information for each Settlement Class Member whom such Representative Claimants allege they are authorized to represent, and (3) any other information requested by the Settlement Administrator or reasonably requested by Class Counsel or Counsel for the Defendant.

68

(vi)     Beginning one month after entry of the Final Order and Judgment, the Claims Administrator will issue a regular monthly report to the Settlement Administrator and Class Counsel through the first two years following the Effective Date, and thereafter on a quarterly basis or as reasonably agreed upon by the Settlement Administrator and Class Counsel, regarding the status and progress of claims administration.  The monthly (or quarterly) report will include, without limitation:  (1) the identity (which shall be redacted if the report is to be publicly filed) of each Settlement Class Member or Representative Claimant who submitted a Claim Package in the preceding month (or quarter), including the identity (which shall be redacted if the report is to be publicly filed) of the Settlement Class Member whom a Representative Claimant that has submitted a Claim Package alleges they are authorized to represent; (2) the review status of such Claim Package (*e.g.*, under preliminary review, subject to a Notice of Deficiency, subject to verification and investigation, received a Notice of Claim Determination); (3) the review status of any Claim Packages that are pending from a prior month (quarter) and the monthly and total number of Settlement Class Member or Representative Claimant claims for Interim Assistance Grants; (4) the monthly and total number of Interim Assistance Grants approved and paid; (5) the monthly and total number of Settlement Class Members or Representative Claimants for whom appeals are pending regarding Interim Assistance Grants; (6) the monthly identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members or Representative Claimants who submitted claims for Interim Assistance Grants; (7) the monthly expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; and (8) any other information requested by the Settlement Administrator or Class Counsel.   Until the Effective Date, the monthly and quarterly reports described in this Section 12.2(a)(vi) shall be provided to Counsel for the Defendant, and thereafter the Settlement Administrator may provide copies of such reports, and any information contained therein, to Counsel for the Defendant.

(vii)     By the end of the first January after the Effective Date, and every January thereafter, the Claims Administrator will provide annual reports to the Settlement Administrator and Class Counsel, based on information from the preceding year, regarding: (1) the number of Settlement Class Members or Representative Claimants who applied for Interim Assistance Grants, and the number that did not meet the Eligibility Criteria in Section 10.1; (2) the number of Settlement Class Members or Representative Claimants who met the Eligibility Criteria in Section 10.1 and received Interim Assistance Grants, and the amount of such Interim Assistance Grants; (3) the number of Settlement Class Members or Representative Claimants who did not meet the Eligibility Criteria in Section 10.1 and received Interim Assistance Grants, and the amount of such Interim Assistance Grants; (4) the total amount paid from the Settlement Fund for Interim Assistance Grants to Settlement Class Members or Representative Claimants who do not meet the Eligibility Criteria or in excess of the Presumptive Ranges; (5) the number of Settlement Class Members or Representative Claimants for whom appeals are pending regarding Interim Assistance Grants; (6) the identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members or Representative Claimants who submitted claims for Interim Assistance Grants; and (7) any other information requested by the Settlement Administrator or Class Counsel.  The Settlement Administrator may provide copies of the annual reports described in this Section 12.2(a)(vii) , and any information contained therein, to Counsel for the Defendant.

(viii)   By the end of the first January after entry of the Preliminary Approval Order, and every January thereafter, the Claims Administrator will provide annual financial reports to the Settlement Administrator, Class Counsel and Counsel for the Defendant, based on information from the preceding year, regarding:  (1) expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; (2) the projected expenses/administrative costs for the remainder of the Settlement Fund term; (3) the monies remaining in the Settlement Fund that can be allocated to Interim Assistance Grants; and (4) any other information requested by the Settlement Administrator, Class Counsel, or Counsel for the Defendant.

(ix)   The Defendant may elect, at its own expense, to cause an audit to be performed by a certified public accountant of the financial records of the Claims Administrator, and the Claims Administrator shall cooperate in good faith with the audit.  Audits may be conducted at any time during the term of the Settlement Fund.  Complete copies of the audit findings report will be provided to the Settlement Administrator (or the Court after expiration of the term of the Settlement Administrator and any extension(s) thereof), Class Counsel, and Counsel for the Defendant.

(b)   <u>Roles and Responsibilities</u>.  The Claims Administrator will, among other responsibilities set forth in the Settlement Agreement:

(i)   Maintain (along with the Settlement Class Notice Agent) the Settlement Website, including an online portal and ability for Settlement Class Members to submit documents online, as set forth in Section 5.1(a);

(ii)   Maintain (along with the Settlement Class Notice Agent) an automated telephone system to provide information about the Class Action Settlement, as set forth in Section 5.1(b);

(iii)   Establish and administer both online and hard copy registration methods, as set forth in Section 5.2(a);

(iv)   Review a purported Settlement Class Member's registration and determine its validity, as set forth in Section 5.3;

(v)   Process and review Claim Packages, as set forth in Article XI;

(vi)   Determine whether Settlement Class Members or Representative Claimants who submit Claim Packages are eligible for Interim Assistance Grants and determine the amount of an Interim Assistance Grant for an eligible Settlement Class Member or Representative Claimant, as set forth in Article X and Article XI;

(vii)   Perform any tasks set forth in Article XIV;

(viii)   Serve as the administrator of the Escrow Account, as set forth in Article XIII;

(ix) Audit Claim Packages, and establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Settlement Fund; and

(x) Perform such other tasks reasonably necessary to accomplish the goals contemplated by the Settlement Agreement, as agreed to by Class Counsel and Counsel for the Defendant.

(c) <u>Compensation and Expenses</u>. Reasonable compensation of the Claims Administrator, as agreed to by Class Counsel and Counsel for the Defendant, and reimbursement of reasonable out-of-pocket costs and expenses directly incurred as a result of the Claims Administrator's responsibilities set forth in the Settlement Agreement ("Claims Administrator Costs") will be paid out of the Settlement Fund, subject to the limitation set forth in Section 7.5. The Claims Administrator shall submit an annual budget to the Settlement Administrator for review and approval. Either Class Counsel or Counsel for the Defendant may challenge the reasonableness of the Claims Administrator's out-of-pocket costs and expenses, in which case the Settlement Administrator will determine the reasonableness of such costs and expenses. If the Settlement Administrator determines that any costs and expenses are unreasonable, the Claims Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Claims Administrator will refund that amount to the Settlement Fund. The Claims Administrator may appeal the Settlement Administrator's determination that costs and expenses are unreasonable to the Court, which shall review the Settlement Administrator's determination for an abuse of discretion.

(d) <u>Liability</u>. The Parties, Class Counsel, Counsel for the Defendant, and the Settlement Administrator, and their respective Affiliates, and the Monsanto Parties will not be liable for any act, or failure to act, of the Claims Administrator and its Affiliates, officers, directors, and employees.

(e) <u>Replacement</u>. The Claims Administrator may be replaced by joint motion made by Class Counsel and Counsel for the Defendant, or for cause by motion of either Class Counsel or Counsel for the Defendant, upon order of the Court. If the Claims Administrator resigns, dies, or is otherwise unable to continue employment in this position, Class Counsel and Counsel for the Defendant will jointly recommend a new proposed Claims Administrator for appointment by the Court. If the Parties cannot agree on a new proposed Claims Administrator for recommendation to the Court, the Settlement Administrator shall make such a recommendation to the Court. The Settlement Administrator may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed Claims Administrator.

(f) <u>Conflicts of Interest</u>. Within ninety (90) days after entry of the Preliminary Approval Order, Class Counsel, Counsel for the Defendant, the Settlement Administrator and the Claims Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Claims Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the Defendant, Counsel for the Defendant, or the Settlement

Administrator, on the other hand.  Class Counsel, Counsel for the Defendant, and the Claims Administrator, subject to approval of the Settlement Administrator, may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Class Counsel, Counsel for the Defendant, and the Settlement Administrator understand that the Claims Administrator regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Settlement Administrator, Class Counsel, and Counsel for the Defendant acknowledge and agree that it shall not be a conflict of interest for the Claims Administrator to provide such services to such parties and individuals or to receive compensation for such work.

Section 12.3   <u>DAGP Administrator</u>.

(a)   <u>Appointment and Oversight</u>.

(i)   The Preliminary Approval Motion will request that the Court appoint Wolf Garretson, LLC as DAGP Administrator.  Within thirty (30) days after entry of the Preliminary Approval Order, Class Counsel will retain the DAGP Administrator appointed by the Court.

(ii)   Class Counsel's retention agreement with the DAGP Administrator will provide that the DAGP Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Settlement Agreement, and will require that the DAGP Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.  The cost for this insurance will be considered DAGP Administrator Costs.

(iii)   The Court may, at its sole discretion, request reports or information from the DAGP Administrator.  The DAGP Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)   The Settlement Administrator, for the duration of his or her term, will oversee the DAGP Administrator and may, at his or her sole discretion, request reports or information from the DAGP Administrator.

(v)   Beginning one month after entry of the Final Order and Judgment, the DAGP Administrator will issue a regular monthly report to the Settlement Administrator and Class Counsel until such time as the funds allocated to the Diagnostic Accessibility Grant Program are exhausted regarding the status and progress of the Diagnostic Accessibility Grant Program.  The monthly report will include, without limitation:  (1) the monthly and total number of Settlement Class Members who have been found to be DAGP Eligible Settlement Class Members, and the biographical and geographical information for each such Settlement Class Member; (2) the identity (which shall be redacted if the report is to be publicly filed) of each Settlement Class Member or Representative Claimant who submitted a DAGP Application in the preceding month, including the identity (which shall be redacted if the report is to be publicly filed) of the Settlement Class Member whom a Representative Claimant that has submitted a DAGP Application alleges they are authorized to represent; (3) the review status of

such DAGP Application; (4) the review status of any DAGP Applications that are pending from a prior month; (5) the identity of each DAGP Grantee, the monthly and total amount of DAGP Grants paid to each DAGP Grantee, the DAGP Administrator's determination as to whether each DAGP Grantee is capable of satisfying the requirements of a Qualified Physician, the Settlement Class Members for whom each DAGP Grantee has been determined to be a Qualified Physician, and any changes with regard to determinations relating to Qualified Physician status; (6) the number of Settlement Class Members who have received NHL Diagnostic Evaluation from each DAGP Grantee in the preceding month; (7) the monthly and total amount expended on the Outreach Campaign; (8) the monthly expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the DAGP Administrator; and (9) any other information requested by the Settlement Administrator or Class Counsel. Until the Effective Date, the monthly reports described in this Section 12.3(a)(v) shall be provided to Counsel for the Defendant, and thereafter the Settlement Administrator may provide copies of such reports, and any information contained therein, to Counsel for the Defendant and shall provide the information contained in Section 12.3(a)(v)(5) regarding the identity of each DAGP Grantee that the Administrator determines is capable of satisfying the requirements of a Qualified Physician.

(vi)      By the end of the first January after entry of the Final Order and Judgment, and every January thereafter, the DAGP Administrator will provide annual reports to the Settlement Administrator and Class Counsel, based on information from the preceding year, regarding:  (1) the number of Settlement Class Members who were found to be DAGP Eligible Settlement Class Members and the number of Settlement Class Members who were determined not to be eligible for the Diagnostic Accessibility Grant Program; (2) the identity of each DAGP Grantee, the total amount of DAGP Grants paid to each DAGP Grantee, the DAGP Administrator's determination as to whether each DAGP Grantee is capable of satisfying the requirements of a Qualified Physician, the Settlement Class Members for whom each DAGP Grantee has been determined to be a Qualified Physician, and any changes with regard to determinations relating to Qualified Physician status; (3) the number of Settlement Class Members who have received NHL Diagnostic Evaluation from each DAGP Grantee; (4) the amount expended on the Outreach Campaign; and (5) any other information requested by the Settlement Administrator or Class Counsel. Until the Effective Date, the annual reports described in this Section 12.3(a)(vi) shall be provided to Counsel for the Defendant, and thereafter the Settlement Administrator may provide copies of such reports, and any information contained therein, to Counsel for the Defendant and shall provide the information contained in Section 12.3(a)(vi)(2) regarding the identity of each DAGP Grantee that the Administrator determines is capable of satisfying the requirements of a Qualified Physician.

(vii)      By the end of the first January after entry of the Preliminary Approval Order, and every January thereafter, the DAGP Administrator will provide annual financial reports to the Settlement Administrator, Class Counsel and Counsel for the Defendant, based on information from the preceding year, regarding:  (1) the expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the DAGP Administrator; (2) the projected expenses/administrative costs for the remainder of the Settlement Fund term; (3) the monies remaining in the Settlement Fund that can be allocated to DAGP Grants; and (4) any other information requested by the Settlement Administrator, Class Counsel, or Counsel for the Defendant.

(viii)   The Defendant may elect, at its own expense, to cause an audit to be performed by a certified public accountant of the financial records of the DAGP Administrator, and the DAGP Administrator shall cooperate in good faith with the audit.  Audits may be conducted at any time during the term of the Settlement Fund.  Complete copies of the audit findings report will be provided to the Settlement Administrator (or the Court after expiration of the term of the Settlement Administrator and any extension(s) thereof), Class Counsel, and Counsel for the Defendant.

(b)   <u>Roles and Responsibilities</u>.  The DAGP Administrator will, among other responsibilities set forth in the Settlement Agreement:

(i)   Administer and oversee the Outreach Campaign, as set forth in Article VIII;

(ii)   Determine whether Settlement Class Members are eligible for participation in the Diagnostic Accessibility Grant Program, as set forth in Article VIII;

(iii)   Administer and oversee the distribution of DAGP Grants, as set forth in Article VIII;

(iv)   Audit the performance of DAGP Grantees, as set forth in Article VIII; and

(v)   Perform such other tasks reasonably necessary to accomplish the goals contemplated by the Settlement Agreement, as agreed to by Class Counsel and Counsel for the Defendant.

(c)   <u>Compensation and Expenses</u>.   Reasonable compensation of the DAGP Administrator, as agreed to by Class Counsel and Counsel for the Defendant, and reimbursement of reasonable out-of-pocket costs and expenses directly incurred as a result of the DAGP Administrator's responsibilities set forth in the Settlement Agreement ("DAGP Administrator Costs") will be paid out of the Settlement Fund, subject to the limitation set forth in Section 7.5.   The DAGP Administrator shall submit an annual budget to the Settlement Administrator for review and approval.  Either Class Counsel or Counsel for the Defendant may challenge the reasonableness of the DAGP Administrator's out-of-pocket costs and expenses, in which case the Settlement Administrator will determine the reasonableness of such costs and expenses.   If the Settlement Administrator determines that any costs and expenses are unreasonable, the DAGP Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the DAGP Administrator will refund that amount to the Settlement Fund.   The DAGP Administrator may appeal the Settlement Administrator's determination that costs and expenses are unreasonable to the Court, which shall review the Settlement Administrator's determination for an abuse of discretion.

(d)   <u>Liability</u>.  The Parties, Class Counsel, Counsel for the Defendant, and the Settlement Administrator, and their respective Affiliates, and the Monsanto Parties will not be liable for any act, or failure to act, of the DAGP Administrator and its Affiliates, officers, directors, and employees.

74

(e)     Replacement.  The DAGP Administrator may be replaced by joint motion made by Class Counsel and Counsel for the Defendant, or for cause by motion of either Class Counsel or Counsel for the Defendant, upon order of the Court.  If the DAGP Administrator resigns, dies, or is otherwise unable to continue employment in this position, Class Counsel and Counsel for the Defendant will jointly recommend a new proposed DAGP Administrator for appointment by the Court.  If the Parties cannot agree on a new proposed DAGP Administrator for recommendation to the Court, the Settlement Administrator shall make such a recommendation to the Court.  The Settlement Administrator may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed DAGP Administrator.

(f)     Conflicts of Interest.  Within ninety (90) days after entry of the Preliminary Approval Order, Class Counsel, Counsel for the Defendant, the Settlement Administrator and the DAGP Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the DAGP Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the Defendant, Counsel for the Defendant, or the Settlement Administrator, on the other hand.  Class Counsel, Counsel for the Defendant, and the DAGP Administrator, subject to approval of the Settlement Administrator, may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Class Counsel, Counsel for the Defendant, and the Settlement Administrator understand that the DAGP Administrator regularly provides settlement administration and other related services to settling parties and their attorneys, and the Settlement Administrator, Class Counsel, and Counsel for the Defendant acknowledge and agree that it shall not be a conflict of interest for the DAGP Administrator to provide such services to such parties and individuals or to receive compensation for such work.

Section 12.4   Review of Settlement Administration Costs.  If the Court determines that any Settlement Administration Costs are unreasonable, the Court will identify whether those costs and expenses are Settlement Administrator Costs, Claims Administrator Costs, or DAGP Administrator Costs.  The Person associated with the unreasonable costs and expenses will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Person associated with the unreasonable costs and expenses will refund that amount to the Settlement Fund.

Section 12.5   Fraud Prevention Processes.  The Claims Administrator, in consultation with Class Counsel, Counsel for the Defendant and the Settlement Administrator, will also establish system-wide processes to detect and prevent fraud, including, without limitation, claims processing quality training and review and data analytics to spot attributes of claim submissions that create a reasonable suspicion of fraud.

Section 12.6   Absence of Agency.  The Parties acknowledge and agree that the Settlement Administrator, the Claims Administrator, the DAGP Administrator, the Science Panel members, any qualified entities retained by any of the foregoing entities in connection with the Settlement Agreement, and their respective Affiliates, officers, directors, and employees, are intended to be independent and are not agents of any of the Parties or any Monsanto Party.  As a

result, any data or information obtained, generated, collected or otherwise possessed by Settlement Administrator, the Claims Administrator, the DAGP Administrator, the Science Panel members, any qualified entities retained by any of the foregoing entities, and their respective Affiliates, officers, directors, and employees, should not be deemed to be known by any Party (prior to dissemination to the specific Party) or attributed to any Party, for any purpose whatsoever including, but not limited to, any reporting or other compliance obligation imposed by law.

## ARTICLE XIII
## Settlement Fund Administration

Section 13.1   Settlement Fund Administration.

(a)   Within ten (10) days of the date the Preliminary Approval Motion is filed, Class Counsel and Counsel for the Defendant will file a motion with the Court seeking (1) the approval of the proposed Escrow Agreement, (2) the authorization that the Settlement Fund escrow account established pursuant to the Escrow Agreement be established as a qualified settlement fund within the meaning of §1.468B-1 of the Treasury Regulations promulgated under Section 468B of the IRC, and (3) the appointment of the Claims Administrator as the administrator of the Escrow Account within the meaning of § 1.468B-2(k)(3) of the Treasury Regulations.

(b)   Class Counsel and Counsel for the Defendant will jointly recommend Citibank, N.A. acting through its Citi Private Bank business unit, as the Escrow Agent, subject to the approval of the Court.  The Escrow Agent may be replaced by joint motion made by Class Counsel and Counsel for the Defendant, and granted by the Court.  If the Escrow Agent resigns, dies, or is otherwise unable to continue employment in that position, Class Counsel and Counsel for the Defendant will agree to and jointly recommend a new proposed Escrow Agent for appointment by the Court.  If the Parties cannot agree on a new proposed Escrow Agent for recommendation to the Court, the Settlement Administrator shall make such a recommendation to the Court.  The Settlement Administrator may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed Escrow Agent.

(c)   Upon Court approval of the proposed Escrow Agreement and authorization that the Settlement Fund established pursuant to the Escrow Agreement be established as a qualified settlement fund under §1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B, Class Counsel, the Defendant, the Escrow Agent, and the Settlement Administrator will execute the Escrow Agreement approved by the Court, thereby creating the Settlement Fund.  The Settlement Fund will be structured and operated in a manner such that it qualifies as a "qualified settlement fund" under § 1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B from the earliest date possible, and the Claims Administrator, the Defendant, and all other relevant parties shall file any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. The "taxable year" of the Settlement Fund shall be the "calendar year" as such terms are defined in IRC Section 441.  The Settlement Fund shall use the accrual method of accounting as defined in IRC Section 446(c).

(d)     The Defendant will make payments as required by the Settlement Agreement into the Settlement Fund.  The Escrow Agent will transfer funds from the Settlement Fund at the direction of authorized representatives of the Settlement Administrator, together with authorized representatives of Class Counsel and authorized representatives of the Defendant, and pursuant to the terms of the Settlement Agreement.  Authorized representatives of the Settlement Administrator will, together with authorized representatives of Class Counsel and authorized representatives of the Defendant, have signatory authority to transfer funds from the Settlement Fund.  The Settlement Fund shall be used solely to fund the Funded Class Benefits and Additional Permitted Fund Uses as set forth in Article VII, and the Settlement Class Notice Amount to the extent set forth in Section 7.3(b).

(e)     The Settlement Fund will be managed by the Escrow Agent as provided in the Escrow Agreement (except to the extent as otherwise provided in Section 13.1(f)), and both the Settlement Fund and Escrow Agent will be subject to the continuing jurisdiction and supervision of the Court.  The Settlement Fund will be maintained in a bank account at a federally insured depository institution approved by Class Counsel and Counsel for the Defendant.  The Escrow Agent will have the authority to make disbursements from the Settlement Fund at the direction of authorized representatives of the Settlement Administrator, together with authorized representatives of Class Counsel and authorized representatives of the Defendant, and consistent with the terms of the Settlement Agreement and the Escrow Agreement.

(f)     The Claims Administrator shall be authorized to take any action that it determines necessary to maintain status of the Escrow Account as a "qualified settlement fund" within the meaning of §1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B. The Claims Administrator shall (i) obtain a taxpayer identification number for the Escrow Account, which shall be titled "Monsanto Class Action Settlement Fund," (ii) prepare and file, or cause to be prepared and filed, U.S. federal, state, local, and foreign tax returns (as applicable) for the Escrow Account, consistent with Treasury Regulations § 1.468B-2(k) and corresponding or similar provisions of state and local law, and in accordance with the Settlement Agreement and the Escrow Agreement, (iii) prepare and file, or cause to be prepared and filed, any other statement, return, or disclosure relating to the Escrow Account that is required by any governmental unit, including but not limited to information reporting as described in Treasury Regulations § 1.468B-2(l) (or corresponding or similar provision of state, local, or foreign law), (iv) obtain from the Defendant a statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following each calendar year in which the Defendant makes a transfer to the Escrow Account, and (v) be responsible for responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority.  The Claims Administrator also will be responsible for ensuring the Escrow Account complies with all withholding requirements (including by instructing the Escrow Agent to withhold any required amounts) with respect to payments made by the Settlement Fund, as well as paying any associated interest and penalties.  Any amounts required to be withheld by the Escrow Agent (or any other withholding agent) shall be treated for all purposes as though such amounts had been distributed to such Person in respect of which such withholding was required.  The Claims Administrator shall direct the Settlement Administrator and Escrow Agent to timely pay from the Escrow Account any taxes (including but not limited to withholding taxes with respect to distributions from the Escrow Account), interest, and penalty payments to the appropriate Governmental Authority and any reasonable out-of-pocket expenses from (x) causing any tax returns and information reports to be

prepared and filed, (y) responding to any questions from, or representing the Escrow Account in an audit or similar proceeding regarding taxes by, the Internal Revenue Service (or any state or local Governmental Authority) or (z) otherwise satisfying any tax compliance obligation of the Escrow Account (all taxes, interest, penalties, and other expenses described in this sentence collectively referred to as the "Tax Expenses").   The Defendant shall provide the Claims Administrator with the statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following each calendar year in which the Defendant makes a transfer to the Escrow Account.

      (g)    The Claims Administrator, the Escrow Agent, the Settlement Administrator, and the DAGP Administrator shall be authorized to collect any tax information as necessary to effectuate the Settlement Agreement or the Escrow Agreement.   In order to receive distributions under the Escrow Agreement, the Claims Administrator, the Escrow Agent, the Settlement Administrator, and the DAGP Administrator shall require any recipient to identify himself, herself, or itself and provide tax information, to the extent the Claims Administrator deems appropriate, including a taxpayer identification number as assigned by the Internal Revenue Service or, in the case of any recipient that is not a United States person for U.S. federal income tax purposes, a properly completed applicable Internal Revenue Service Form W-8 (with required attachments, if any).

      Section 13.2   <u>Funds Investment</u>.

      (a)    To the extent funds are made available for investment, amounts deposited in the Settlement Fund will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal, and avoidance of concentration risk, and shall be invested only in short-term direct obligations of the United States of America and/or short-term obligations for which the full faith and credit of the United States of America is pledged to provide for the payment of principal and interest unless otherwise agreed in writing by the Defendant, Class Counsel, and the Settlement Administrator; provided, however, the scope of any such permissible investments shall be further limited to include only those investments that a "qualified settlement fund," within the meaning of Treasury Regulations section 1.468B-1 *et seq.*, may be permitted to invest in, pursuant to the Treasury Regulations, or any modification in Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements or otherwise.

      (b)    Any earnings attributable to the Settlement Fund will be retained in the Settlement Fund and shall become part of the Settlement Fund; and shall be disbursed as part of the Settlement Fund in accordance with the terms and conditions of the Settlement Agreement.

      Section 13.3   <u>Escrow Agent Satisfaction of Monetary Obligations</u>.   Wherever in the Settlement Agreement the Settlement Administrator, the DAGP Administrator, or the Claims Administrator is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement, the Settlement Administrator, the DAGP Administrator, or the Claims Administrator may comply with such authorization or direction by directing the Escrow Agent to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation, provided that if such direction is made by the DAGP Administrator or the Claims

Administrator, it shall be accompanied by written authorization to the Escrow Agent from an authorized representative of the Settlement Administrator as provided for in the Escrow Agreement.

## ARTICLE XIV
## Governmental Payors

Section 14.1    Purpose of Payment of Interim Assistance Grants.

(a)    The payment of Interim Assistance Grants to Settlement Class Member Parties is not intended to constitute and does not represent payment or compensation for the resolution, release, or settlement of any Claims for bodily injury or compensatory damages by Settlement Class Member Parties against any Monsanto Party or Related Party, and does not constitute in whole or in part payment for any medical cost recovery.  For the avoidance of doubt, Interim Assistance Grants are provided for the sole purpose of providing equitable assistance to eligible Settlement Class Member Parties during the delay in their ability to initiate Claims against the Defendant during the pendency of the Scientific Analysis.

(b)    Accordingly, the Parties do not believe that the payment of any Interim Assistance Grant should give rise to any Lien in favor of any Governmental Payor or other Person or obligation to any Governmental Payor.  Nevertheless, it is the intent of the Parties that any such Lien or obligation that may be claimed arising from, resulting from, in any way relating to or in connection with the payment of an Interim Assistance Grant shall be solely the responsibility of the Settlement Class Member Party applying for that Interim Assistance Grant, and that the Monsanto Parties shall have no obligations to any Governmental Payor, nor for any other past and present bills, costs, Liens, or obligations, arising from, resulting from, in any way relating to or in connection with the Settlement Class Member Party's receipt of any Interim Assistance Grant.

Section 14.2    Conditions for Applications for Interim Assistance Grants.

(a)    As a condition of applying for and receiving an Interim Assistance Grant, a Settlement Class Member Party must agree in writing that:

(i)    The Monsanto Parties shall have no obligations to any Governmental Payor, nor for any other past and present bills, costs, Liens, or obligations arising from, resulting from, in any way relating to or in connection with the Settlement Class Member Party's application for or receipt of an Interim Assistance Grant; and

(ii)    It is his or her sole responsibility to pay, have paid, or otherwise discharge and satisfy all past and present bills, costs, Liens, or obligations not discharged or satisfied pursuant to Section 14.3 that arise from, result from, in any way relate to, or are in connection with his or her application for or receipt of an Interim Assistance Grant.

(b)    As a condition of applying for and receiving an Interim Assistance Grant, a Settlement Class Member Party must:  (i) identify in writing every Governmental Payor that may have made any payments on behalf of the Settlement Class Member Party (or the Person whose NHL is the basis for the Settlement Class Member Party's application for an Interim

Assistance Grant) in any way related to such Settlement Class Member Party's NHL or such Person's NHL; and (ii) represent and warrant in writing he or she has used best efforts to identify such Governmental Payors.  The Claims Administrator may verify with any Governmental Payor which Settlement Class Member Parties are or were entitled to benefits pursuant to those programs.

(c)     The foregoing conditions shall be part of the Claim Package under Section 11.2, and the Monsanto Parties shall be beneficiaries of the agreements and representations set forth in Section 14.2(a) and Section 14.2(b).  Upon reasonable request from the Defendant, the Claims Administrator shall provide the Defendant with the documentation and information submitted by a Settlement Class Member Party under Section 14.2(a) and Section 14.2(b), including the identified Governmental Payors.

Section 14.3    Procedures for Addressing Governmental Payors.

(a)     Following the entry of the Preliminary Approval Order, the Claims Administrator shall seek written agreement meeting the following conditions from each Governmental Payor:

(i)     That the Governmental Payor:

(1)     holds no interest, and will not assert any interest in the future, including any Liens, in any Interim Assistance Grant; or

(2)     agrees to defer all interests, including any Liens, it may have relating to Settlement Class Member Parties' NHL, if any, until any future settlement or judgment that may arise from a future Roundup Lawsuit that the Settlement Class Member Party who receives an Interim Assistance Grant may bring following the termination of the Science Panel's work under Section 6.4, and that the Governmental Payor holds no such recovery interest or Lien, and will not assert any interest or Lien in the future, if no such settlement or judgment in favor of the Settlement Class Member Party arises; or

(3)     agrees to a maximum amount for which it will seek to resolve any interest, including any Liens, in any Interim Assistance Grant, where such maximum amount is either a specific percentage of the Interim Assistance Grant or a dollar amount that is less than the full amount of the Interim Assistance Grant; or

(4)     expressly releases any and all Persons from any Claims whatsoever for any interest, including any Liens, in any and all Interim Assistance Grants; and

(ii)     That the Governmental Payor agrees either that the Monsanto Parties have no obligations to it arising from, resulting from, in any way relating to or in connection with any Settlement Class Member Party's application for or receipt of an Interim Assistance Grant, or that any such obligation that the Governmental Payor might otherwise claim is fully resolved and discharged by the terms agreed to with the Claims Administrator under Section 14.3(a)(i); and

(iii)    In the case of an agreement with CMS, that CMS acknowledges either that (1) the Defendant has no reporting obligations to CMS under Section 111 of the Medicare, Medicaid, and SCHIP Extensions Act of 2007, or its applicable regulations, that are arising from, resulting from, or in any way relating to or in connection with any Interim Assistance Grant or (2) that the Defendant has satisfied any such reporting obligations; or (3) that the Defendant can satisfy any such reporting obligations by complying with a reporting process recognized by CMS.  To the extent necessary to secure such agreement, the Claims Administrator shall establish reporting processes recognized by CMS as satisfying any such reporting obligations.

(b)    The Claims Administrator shall provide copies of any written agreement reached with a Governmental Payor pursuant to Section 14.3(a) to the Settlement Administrator, Class Counsel, and Counsel for the Defendant.  Within thirty (30) days of receipt of any such agreement, Class Counsel or the Defendant may challenge before the Settlement Administrator whether the agreement is consistent with Section 14.3(a).

(c)    The Claims Administrator may process, but shall not pay, any Interim Assistance Grant for a Settlement Class Member Party who identifies a Governmental Payor pursuant to Section 14.2(b) until the Claims Administrator has entered a written agreement with that Governmental Payor that is consistent with Section 14.3(a) or put in place a mechanism as specified in Section 14.3(e).

(d)    If the Claims Administrator enters an agreement with a Governmental Payor that is consistent with Section 14.3(a) and calls for payment to the Governmental Payor of some portion of an Interim Assistance Grant, then the Claims Administrator shall retain and pay to the Governmental Payor that portion of the Interim Assistance Grant required to fulfill the terms of the agreement with the Governmental Payor.  The Claims Administrator shall be permitted to employ a lien resolution administrator or administrators as is deemed necessary to carry out the obligations under this Section 14.3(d), Section 14.3(a), or Section 14.3(e).

(e)    If the Claims Administrator is unable to obtain a written agreement consistent with Section 14.3(a) with any Governmental Payor other than the Medicare Program, the Claims Administrator will seek to put in place a mechanism consistent with the substance of Section 14.3(a) for resolving any interest, including any Liens, such Governmental Payor may have on an individual basis, subject to the approval of the Defendant (which shall not be unreasonably withheld).

(f)    In the event an Interim Assistance Grant has been awarded and is otherwise payable under Section 11.9, but has not been paid as of the date of the termination of the Science Panel's work as set forth in Section 6.4 due to the Claims Administrator's inability to reach an agreement with a Governmental Payor consistent with Section 14.3(a) or to put in place a mechanism as specified in Section 14.3(e), the amount of such Interim Assistance Grant shall be allocated to the Research Funding Program.

Section 14.4    Indemnification.  If, notwithstanding the provisions of this Article, any Claim is made against any Monsanto Party based in any way on any Lien in favor of any Governmental Payor or other Person or any claimed obligation to any Governmental Payor arising

from, resulting from, in any way relating to or in connection with a Settlement Class Member Party's application for or receipt of an Interim Assistance Grant (including because the Settlement Class Member Party did not identify that Governmental Payor pursuant to Section 14.2(a)), the Settlement Class Member Party shall indemnify such Monsanto Party and hold it harmless with respect to such Claim.  If the Monsanto Party has not received full satisfaction with respect to such indemnification, the Defendant shall be entitled to a dollar-for-dollar credit against any judgment or settlement arising from a subsequent Roundup Lawsuit brought by that Settlement Class Member Party.  **SETTLEMENT CLASS MEMBER PARTIES ACKNOWLEDGE THAT THIS SECTION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

**ARTICLE XV**
**Releases and Covenants Not to Sue**

Section 15.1   <u>Settlement Objective and Releases</u>.   The Settlement Agreement provides that the Science Panel Determination will have issue-preclusive effect as set forth in Article VI.  The Settlement Agreement is not intended to have claim-preclusive effect, except with regard to the Claims that are enumerated and released in this Section 15.1, which are collectively the "Released Claims."  For the avoidance of doubt, the Releases set forth in this Section 15.1 will be effective irrespective of the content of the Science Panel Determination.

(a)   <u>Release of Punitive Claims</u>.   In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties hereby waive and release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, of and from any and all Claims, including unknown Claims, for punitive, exemplary, vindictive, punitory, presumptive, added, aggravated, speculative, or imaginary damages arising from, resulting from, in any way relating to or in connection with Roundup Claims, Roundup Lawsuits and/or Related Party Lawsuits.   For the avoidance of doubt, the Release set forth in this Section 15.1(a) does not pertain to Claims for compensatory damages.

(b)   <u>Release of Medical Monitoring Claims</u>.   In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties hereby waive and release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, of and from: (i) any and all Claims, including unknown Claims, for medical monitoring arising from, resulting from, in any way related to or in connection with Roundup Products and undeveloped, unmanifested, and/or undiagnosed NHL (including prevention and diagnosis thereof) and (ii) any and all Claims, including unknown Claims, that their injuries or damages arising from, resulting from, in any way related to or in connection with Roundup Products and NHL were increased because of the absence of a medical monitoring program.

(c)   <u>Release of Claims Related to the Diagnostic Accessibility Grant Program</u>.   In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties do hereby release, forever discharge and hold harmless the Monsanto

Parties, the Related Parties, the Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees from any and all Claims, including unknown Claims, arising from, resulting from, in any way relating to or in connection with their participation, if any, in the Diagnostic Accessibility Grant Program, including, but not limited to, Claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

(d)     Release of Claims Related to Liens.  In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties do hereby release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, from any and all Claims, including unknown Claims, arising from, resulting from, in any way relating to or in connection with the reporting, transmittal of information, or communications between or among the Monsanto Parties, Counsel for the Defendant, the Settlement Administrator, the Claims Administrator, their respective Affiliates, officers, directors, and employees, and any Governmental Payor arising from, resulting from, in any way relating to or in connection with any claim for benefits under the Settlement Agreement, including any consequences in the event that the Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security or from any Governmental Payor.

(e)     Release of Claims Related to Government Reimbursements.  In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties do hereby release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, from any and all Claims, including unknown Claims, pursuant to the MSP Laws or other similar causes of action, including Claims relating to the availability of future Medicare-covered expenses, and any private cause of action that Settlement Class Member Parties may have under 42 U.S.C. § 1395y(b)(3)(A), arising from, resulting from, in any way relating to or in connection with (i) this Settlement Agreement and/or (ii) the failure or alleged failure of any of the Monsanto Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor with a Lien in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member Party pursuant to the Settlement Agreement.

(f)     Release of Claims Against Science Panel.  In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties do hereby release, forever discharge and hold harmless the Science Panel, and all of the Science Panel members and their authorized contractors, from any and all Claims, including unknown Claims, arising from, resulting from, in any way relating to or in connection with the Scientific Analysis or the Science Panel Determination.

(g)     Release of Claims Arising from Settlement Program.  In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class

Member Parties do hereby release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, from any and all Claims, including unknown Claims, arising from, resulting from, in any way relating to or in connection with the administration of the Settlement Agreement, including the Diagnostic Accessibility Grant Program, the Research Funding Program, the Interim Assistance Grants, and any act or failure to act of the Claims Administrator, the DAGP Administrator, the Settlement Administrator, the Escrow Agent, the Settlement Class Notice Agent, and their respective Affiliates, officers, directors, and employees.

Section 15.2   <u>Release of Unknown Claims</u>.   In connection with the releases in Section 15.1, the Class Representatives and Subclass Representatives, all Settlement Class Members (on behalf of themselves and the associated Settlement Class Member Parties), and the Settlement Class acknowledge that they are aware that they may hereafter discover Claims now unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to actions or matters released herein, whether such Claims or facts now exist, hereafter may exist, or might have existed.   Class Representatives and Subclass Representatives, all Settlement Class Members, and the Settlement Class explicitly took unknown or unsuspected Claims into account in entering into the Settlement Agreement and it is the intention of the Parties fully, finally and forever to settle and release all Claims as provided in Section 15.1 with respect to all such matters.

Section 15.3   <u>Scope of Releases</u>.

(a)   Each Party acknowledges that it has been informed of Section 1542 of the Civil Code of the State of California (and similar statutes) by its counsel and that it does hereby expressly waive and relinquish all rights and benefits, if any, which it, he, or she has or may have under said section (and similar statutes) which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(b)   The Parties acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other state, territory, or other jurisdiction was separately bargained for and that the Parties would not have entered into the Settlement Agreement unless it included a broad release of unknown Claims arising from, resulting from, in any way relating to or in connection with the matters released herein.

(c)   The Settlement Class Member Parties intend to be legally bound by the Releases.

(d)   The Releases are not intended to prevent the Defendant or any Monsanto Parties from exercising its rights of contribution, subrogation, or indemnity under any law.

(e)     Nothing in the Releases will preclude any action to enforce the terms of the Settlement Agreement.

(f)     The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Article except as set forth in the Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in the Settlement Agreement.

Section 15.4    Covenants Not to Sue.

(a)     Released Claims.    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Class Representatives and Subclass Representatives, the Settlement Class Members (on behalf of themselves and the associated Settlement Class Member Parties), and the Settlement Class covenant, promise, and agree that they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Claim, action, or proceeding alleging or asserting any Released Claims or challenging the validity of the Releases.    If any such Claim, action, or proceeding exists in any court, tribunal or other forum as of the Effective Date, the Settlement Class Member Parties covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.

(b)     Roundup Claims.    For the consideration provided for herein, the Class Representatives and Subclass Representatives, the Settlement Class Members (on behalf of themselves and the associated Settlement Class Member Parties), and the Settlement Class covenant, promise, and agree that they will not continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Claim, action or proceeding alleging or asserting any of his or her respective Roundup Claims against the Monsanto Parties or the Related Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum until the Science Panel terminates its work by reaching the Science Panel Determination and its written report is entered on the Court's public docket, as described in Section 6.7(f).    Following entry of the written report reflecting the Science Panel Determination on the Court's public docket, the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree that they will not assert, contend, or otherwise allege anything that is contrary to or inconsistent with the Science Panel Determination, or otherwise precluded by the Settlement Agreement, in any Roundup Lawsuit or Related Party Lawsuit or with respect to any Roundup Claims.

Section 15.5    No Release for Insurance Coverage.

(a)     Notwithstanding anything herein to the contrary, the Settlement Agreement is not intended to and does not release any Governmental Payor from its or their obligation to provide any health insurance coverage, major medical insurance coverage, or disability insurance coverage to a Settlement Class Member, or from any Claims, demands, rights,

or causes of action of any kind that a Settlement Class Member has or hereafter may have with respect to such individuals or entities.

(b)     Notwithstanding anything herein to the contrary, the Settlement Agreement is not intended to and does not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured Person thereunder, including the Monsanto Parties.

Section 15.6   Preservation of Affirmative Defenses for Non-Released Claims. Following entry of the written report reflecting the Science Panel Determination on the Court's public docket, the Defendant, on behalf of the Monsanto Parties, covenants, promises, and agrees that they will not assert any affirmative defenses based on claim preclusion or claim splitting (as opposed to issue preclusion and collateral estoppel as provided in Article VI) arising out of the Settlement Agreement against any Settlement Class Member Party in any Roundup Lawsuit or with respect to any Roundup Claims, other than with respect to the Released Claims or as otherwise specified in the Settlement Agreement.  For avoidance of doubt, nothing in this Section 15.6 shall limit the issue-preclusive effect set forth in Article VI or the Releases set forth in Section 15.1, and any conflict between this Section and any of those Sections shall be resolved in favor of the latter.

## ARTICLE XVI
## Preliminary Approval

Section 16.1   Promptly after execution, Class Counsel will file simultaneously: (a) the Preliminary Approval Motion, attaching the Settlement Agreement as an exhibit thereto; (b) the proposed Preliminary Approval Order, which is attached as Exhibit 8; (c) a supporting brief requesting and providing authority for the Court to make the required findings under Rule 23(e)(1)(B)(i)-(ii) of the Federal Rules of Civil Procedure with respect to the likelihood of approval of the Class Action Settlement and certification of the proposed Settlement Class and Subclasses as Rule 23 (b)(2)-(b)(3) and (c)(4) class and subclasses for purposes of settlement, and for the Court to approve the Settlement Class Notice and the Settlement Class Notice Plan; and (d) a request that the Court set a hearing to consider the Preliminary Approval Order within thirty (30) days after the Preliminary Approval Motion is filed.

Section 16.2   The Parties agree to take all actions necessary to obtain the Preliminary Approval Order from the Court.  The Parties agree as follows with respect to the Preliminary Approval Order:

(a)     It is a condition to the Settlement Agreement that the Preliminary Approval Order be entered within sixty (60) days of the Settlement Date and remain in full force and effect until entry of the Final Order and Judgment.

(b)     The Settlement Agreement provides for a standstill period so that the Science Panel may conduct the Scientific Analysis and issue the Science Panel Determination. Accordingly, litigation of Roundup Claims will be stayed and statutes of limitations will be tolled as follows:

(i)     The Preliminary Approval Order shall contain, in addition to the provisions necessary and appropriate to direct, authorize and commence the Settlement Class

Notice, provisions setting forth the process for the Court to consider final approval of the Class Action Settlement, provisions authorizing all actions under the Settlement Agreement that are permitted or required to be taken following entry of the Preliminary Approval Order and prior to entry of the Final Order and Judgment, and provisions staying the prosecution and preventing the further filing of any and all Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits by any Settlement Class Member Party in any forum or jurisdiction (whether federal, state, or otherwise), against any of the Monsanto Parties or the Related Parties. The stay and prohibition shall remain in effect until the day following entry of the Science Panel's report on the Court's public docket as provided in Section 6.7(f). The foregoing stay and prohibition provisions of the Preliminary Approval Order will be superseded by the provisions of the Final Order and Judgment, in the event the Court issues it. For the avoidance of doubt, the stay and prohibition order shall not apply to any Opt Outs, effective as of the date their Opt Out becomes effective under Section 4.2(a).

(ii)     Beginning as of entry of the Preliminary Approval Order, the statutes of limitation applicable to any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Members against any Monsanto Party, and any and all Claims, counterclaims, and defenses of the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party, will be tolled and stayed to the extent not already tolled by the initiation of an action in this Lawsuit or a Roundup Lawsuit. The tolling shall remain in effect until thirty (30) days following entry of the Science Panel's report on the Court's public docket as provided in Section 6.7(f). For the avoidance of doubt, the tolling shall not apply to any Opt Outs, effective as of the date their Opt Out becomes effective under Section 4.2(a).

(iii)     Notwithstanding the foregoing, both the stay under Section 16.2(b)(i) and tolling under Section 16.2(b)(ii) shall expire: (1) if entry of the Final Order and Judgment is denied (or its entry is reversed), effective on the date on which all appellate courts with jurisdiction (including the United States Supreme Court by petition for writ of certiorari) affirm such denial or reversal or deny such petition for writ of certiorari, such that no further appeal or review is possible (or the time for filing such an appeal or petition for writ of certiorari has expired); or (2) if the Settlement Agreement is otherwise terminated, effective as of the date thirty (30) days after the termination.

(iv)     For the avoidance of doubt, any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of the Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or the Preliminary Approval Order.

(v)     Settlement Class Members do not admit that, by entering into the Settlement Agreement, they have waived any applicable tolling protections available as a matter of law or equity. Nothing in the Settlement Agreement will constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the Settlement Class, nor does it constitute a waiver of legal positions regarding tolling.

## ARTICLE XVII
## Objections

Section 17.1   Objections.

(a)   Provided a Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 4.2(a), the Settlement Class Member may present written objections, if any, explaining why he or she believes the Class Action Settlement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect of the Class Action Settlement must file with the Court, or as the Court otherwise may direct, a written statement of the objection(s). The written statement of objection(s) must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention. That written statement also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth, written evidence establishing that the objector is a Settlement Class Member, and any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection. The written statement shall also state how many times the Settlement Class Member (or the counsel individually representing them, if any) has filed an objection to any other class-action settlement in the previous five (5) years, the identity of the lawsuit in which any such objection was filed, and the nature and resolution of the objection. A written objection must contain the dated Personal Signature of the Settlement Class Member making the objection, in addition to any filing requirements of the Court regarding signatures. The Court shall determine whether any Settlement Class Members who do not follow the procedures will have waived any objections they may have.

(b)   A Settlement Class Member may object on his or her own behalf or through an attorney hired at that Settlement Class Member's own expense, provided the Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 4.2(a). Attorneys asserting objections on behalf of Settlement Class Members must: (i) file a notice of appearance with the Court by the date set forth in the Preliminary Approval Order, or as the Court otherwise may direct; (ii) file a sworn declaration attesting to his or her representation of each Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Settlement Class Member; and (iii) comply with the procedures described in this Section.

(c)   A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval Order, or as the Court otherwise may direct, a written notice of his or her intention to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval Order.

(d)   Any Settlement Class Member who fails to comply with the provisions of this Section 17.1 will waive and forfeit any and all rights he or she may have to object to the Class Action Settlement.

**ARTICLE XVIII**
**Final Order and Judgment and Dismissal With Prejudice**

Section 18.1    The Parties will jointly seek the Final Order and Judgment from the Court, in the form of Exhibit 9.  Approval and entry of the Final Order and Judgment in the form of Exhibit 9, including in a form that contains all of the provisions in this Section 18.1, together with any modifications acceptable to the Parties, shall be a condition of the Settlement Agreement. The Final Order and Judgment shall:

(a)    Fully and finally approve the Class Action Settlement and the Settlement Agreement in their entirety pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure as fair, reasonable, and adequate;

(b)    Find that the Class Action Settlement and the Settlement Agreement, with respect to each Subclass, are fair, reasonable, and adequate;

(c)    Certify the Settlement Class and Subclasses for settlement purposes only under Rule 23 of the Federal Rules of Civil Procedure;

(d)    Confirm the appointments of the Class Representatives and Subclass Representatives;

(e)    Confirm the appointments of Class Counsel and Subclass Counsel;

(f)    Find that the Settlement Class Notice disseminated pursuant to the Settlement Class Notice Plan satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules;

(g)    Bar and enjoin the Settlement Class Member Parties from filing or prosecuting any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties until the Science Panel terminates its work by reaching the Science Panel Determination and its written report is entered on the Court's public docket as described in Section 6.7(f);

(h)    Permanently bar and enjoin the Settlement Class Member Parties from filing or prosecuting any Released Claims or any Claims challenging the validity of the Releases in any forum or jurisdiction (whether federal, state, or otherwise);

(i)    Confirm the issue-preclusive effect of the Science Panel Determination on Roundup Claims and in Roundup Lawsuits and Related Party Lawsuits, as described in Section 6.3 and Section 6.8;

(j)    Confirm that the Science Panel is not an arbitration panel and that the Science Panel Determination is final and not subject to judicial review, including under the Federal Arbitration Act or other similar statute, rule, or regulation;

(k)     Bar and enjoin any Person from, at any time, in any forum or jurisdiction (whether federal, state, or otherwise), seeking discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv), including any written discovery, requests for documents, subpoenas of any kind, or notices of deposition, and permanently bar and enjoin the Settlement Class Member Parties from making use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) that becomes available through any other means;

(l)     Bar and enjoin the Science Panel members, any of the Science Panel's authorized contractors, and any Person to whom disclosure is made pursuant to Section 6.6(a)(iv), from serving as an expert witness or consultant, or providing any voluntary testimony including by affidavit, in any Roundup Lawsuit, Related Party Lawsuit, or in any legal, legislative, administrative, or regulatory action, proceeding, or matter asserting or alleging Roundup Claims, otherwise arising from, resulting from, in any way relating to or in connection with Roundup Products, or against the Monsanto Parties or the Related Parties arising from, resulting from, in any way relating to or in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit, in all such cases whether brought by a Settlement Class Member Party, an Opt Out, or any other Person, at any time;

(m)     Dismiss with prejudice the Class Action Complaint, without further costs, including Claims for interest, penalties, costs, and attorneys' fees;

(n)     Order the dismissal with prejudice, and without further costs, including Claims for interest, penalties, costs, and attorneys' fees, of all Released Claims pending in the Court, thereby effectuating in part the Releases;

(o)     Confirm the appointment of Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, as the Settlement Administrator, Wolf Garretson, LLC as the DAGP Administrator, Verus, LLC as the Claims Administrator, and Citibank, N.A. acting through its Citi Private Bank business unit, as the Escrow Agent, and confirm that the Court retains continuing jurisdiction over those appointed;

(p)     Confirm that the Court retains continuing jurisdiction over the "qualified settlement fund," as defined under §1.468B-1 of the Treasury Regulations promulgated under IRC Section 468B, created under the Settlement Agreement;

(q)     Incorporate the Settlement Agreement and provide that the Court retains continuing and exclusive jurisdiction over the Parties and their Counsel, all Settlement Class Members and Settlement Class Member Parties, the Settlement Administrator, DAGP Administrator, Claims Administrator, Escrow Agent, the Settlement Class Notice Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and the Final Order and Judgment; and

(r)     Determine that the Defendant complied with the Class Action Fairness Act and its notice requirements by providing appropriate federal and state officials with information about the Class Action Settlement.

Section 18.2    The Parties agree that any certification of the Settlement Class and Subclasses will be for settlement purposes only.  The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding, including the certification of any issue class on the issue of General Causation for NHL with respect to Roundup Claims, in the Lawsuit, or in Roundup Lawsuits, and the Monsanto Parties retain full right and ability to contest any such class certification.  Any class certification order entered in connection with the Settlement Agreement will not constitute an admission by the Defendant, or finding or evidence, that the Class and Subclass Representatives' Claims, or the Claims of any other Settlement Class Member, or the Claims of the Settlement Class, are appropriate for class treatment if the Claims were contested in this or any other federal, state, arbitral, or foreign forum, including class treatment as an issue class on the issue of General Causation for NHL with respect to Roundup Claims, in the Lawsuit or in Roundup Lawsuits.  If the Court enters the proposed form of Preliminary Approval Order, the Final Order and Judgment will provide for vacation of the Preliminary Approval Order and the Final Order and Judgment in the event that the Settlement Agreement does not become effective.

## ARTICLE XIX
## Enforceability of Settlement Agreement and Dismissal of Claims

Section 19.1    It is a condition of the Settlement Agreement that the Court approve and enter the Preliminary Approval Order and the Final Order and Judgment, in the forms of Exhibit 8 and Exhibit 9, respectively, together with any modifications acceptable to the Parties.

Section 19.2    The Parties agree that this Class Action Settlement is not final and enforceable until the Effective Date, except as to any provisions that the Settlement Agreement provides shall occur prior to the Effective Date.

Section 19.3    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Court will dismiss with prejudice all Released Claims pending in the Court, and any and all Settlement Class Member Parties with Released Claims pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, will dismiss with prejudice the Released Claims, including any related appeals.

Section 19.4    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action with respect to any and all Released Claims.

Section 19.5    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Settlement Class

Member Parties, and no Settlement Class Member Parties will recover, directly or indirectly, any sums for Released Claims other than those received under the terms of the Settlement Agreement, if any.

Section 19.6   From and after entry of the Preliminary Approval Order, for the consideration provided for herein and by operation of the Preliminary Approval Order, the Parties agree that no Settlement Class Member Party may file or prosecute any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties, and any such filings will be stayed, until the day following entry of the Science Panel's report on the Court's public docket as provided in Section 6.7(f), or until the Settlement Agreement is terminated, as described in Section 16.2(b)(i).  The provisions of this Section 19.6 shall be superseded in connection with the Court's decision regarding final approval of the Class Action Settlement and the Settlement Agreement and final certification of the proposed Settlement Class and Subclasses.

Section 19.7   From and after entry of the Final Order and Judgment, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action against any Monsanto Party or Related Party with respect to any and all Roundup Claims, including any Roundup Lawsuit or Related Party Lawsuit, until the Science Panel terminates its work by reaching the Science Panel Determination and its written report is entered on the Court's public docket, as described in Section 6.7(f).

Section 19.8   From and after the date of entry of the written report reflecting the Science Panel Determination on the Court's public docket, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from asserting, contending, or otherwise alleging anything that is contrary to or inconsistent with the Science Panel Determination, or otherwise precluded by the Settlement Agreement, in any Roundup Lawsuit or Related Party Lawsuit or with respect to any Roundup Claims.

Section 19.9   From and after the Effective Date, if any Settlement Class Member Party, in violation of Section 15.4, commences, files, initiates, or institutes any new action or other proceeding for any Released Claims, or continues to prosecute any pending Released Claims, or challenges the validity of the Releases, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such action or other proceeding will be dismissed with prejudice and at such Settlement Class Member Party's cost; provided, however, before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article.

Section 19.10  From and after entry of the Preliminary Approval Order, until the date of entry of the written report reflecting the Science Panel Determination on the Court's public docket, or until the Settlement Agreement is terminated, if any Settlement Class Member Party, in violation of Section 15.4, commences, files, initiates, institutes, prosecutes, and/or maintains any judicial, arbitral, or regulatory action against any Monsanto Party or Related Party with respect to any and all Roundup Claims, including any Roundup Lawsuit or Related Party Lawsuit, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such action or other proceeding will be dismissed at such Settlement Class Member Party's cost; provided, however, before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article.

Section 19.11  From and after the date of entry of the written report reflecting the Science Panel Determination on the Court's public docket, if any Settlement Class Member Party, in violation of Section 15.4, commences, files, initiates, or institutes any new action or other proceeding for any Roundup Claims or in any Roundup Lawsuits or Related Party Lawsuits against any Monsanto Parties or Related Parties that asserts, contends, or otherwise alleges anything that is contrary to or inconsistent with the Science Panel Determination, or is otherwise precluded by the Settlement Agreement, or continues to prosecute any pending Roundup Claims, Roundup Lawsuits or Related Party Lawsuits in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum against any of the Monsanto Parties or the Related Parties that assert, contend, or otherwise allege anything that is contrary to or inconsistent with the Science Panel Determination, or is otherwise precluded by the Settlement Agreement, such Settlement Class Member Party will be barred and enjoined from so asserting, contesting, or otherwise alleging; provided, however, before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity voluntarily withdraw anything that is contrary to or inconsistent with the Science Panel Determination, or is otherwise precluded by the Settlement Agreement. Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article.

## ARTICLE XX
## Communications to the Public

Section 20.1   The form, content, and timing of any public statement announcing the filing of the Settlement Agreement will be subject to mutual agreement by Class Counsel and Counsel for the Defendant.  The Parties and their counsel agree not to make any public statements, including statements to the media, that are inconsistent with the Settlement Agreement.  Any

communications to the public or the media made by or on behalf of the Parties and their respective counsel regarding the Class Action Settlement will be made in good faith and will be consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of this Class Action Settlement.  Any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.  Any communications made by the Settlement Administrator, the Claims Administrator, the DAGP Administrator, the Settlement Class Notice Agent and their respective Affiliates, officers, directors, and employees, will be made in good faith and limited to those necessary to perform their responsibilities under the Settlement Agreement, and any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.  Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of the Monsanto Parties to comply with their obligations under the securities laws of any jurisdiction or the rules of any stock exchange on which their securities are listed or traded.

(a)     Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of Class Counsel or Counsel for the Defendant to communicate with the Court, their clients, or Settlement Class Members and/or their counsel.

(b)     Class Counsel acknowledge and agree, and the Preliminary Approval Order will provide, that the Defendant has the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Member Parties on matters unrelated to the Class Action Settlement in connection with the Defendant's normal business.

## ARTICLE XXI
### Termination

Section 21.1     <u>Party Termination Rights</u>.

(a)     Class Counsel and Counsel for the Defendant each have the absolute and unconditional right, in their sole discretion, which discretion will be exercised in good faith, to terminate and render null and void this Class Action Settlement and Settlement Agreement if (i) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the Settlement Agreement that Class Counsel or Counsel for the Defendant reasonably and in good faith determines is material to the Party such counsel represents, including, without limitation, the issue-preclusive effect of the Science Panel Determination, the Releases or the definition of the Settlement Class, or (ii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the proposed Preliminary Approval Order (Exhibit 8), or the proposed Final Order and Judgment (Exhibit 9) unless such modifications are acceptable to the Parties in their respective sole discretion.  Such written election to terminate the Settlement Agreement must be made to the Court within thirty (30) days of such Court order.

(b)     The Defendant shall have the right, in its discretion, to terminate and render null and void this Class Action Settlement and the Settlement Agreement as set forth in Section 4.2(d), in accordance with the terms of Exhibit 3.

(c)      Class Counsel may not terminate and render null and void this Class Action Settlement and Settlement Agreement on the basis of the attorneys' fees award ordered, or modified, by the Court or any appellate court(s), as set forth in Article XXIV.

Section 21.2    Post-Termination Actions.

(a)      In the event the Settlement Agreement is terminated or becomes null and void, the Settlement Agreement will not be offered into evidence or used in this or in any other action in the Court, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class.  In addition, in such event, the Settlement Agreement and all negotiations, proceedings, documents prepared and statements made in connection with the Settlement Agreement will be without prejudice to all Parties and will not be admissible into evidence and will not be deemed or construed to be an admission or concession by any of the Parties of any fact, matter, or proposition of law and will not be used in any manner for any purpose, and all Parties will stand in the same position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

(b)      In the event the Settlement Agreement is terminated or becomes null and void, the Parties will jointly move the Court to vacate the Preliminary Approval Order and any orders approving the Settlement Agreement or certifying the Settlement Class or, if the Settlement Agreement is terminated before notice has been given, any other orders directing that notice be given to the Settlement Class.

(c)      If the Settlement Agreement is terminated or becomes null and void after notice has been given, the Parties will provide Court-approved notice of termination to the Settlement Class.  If a Party terminates the Settlement Agreement in accordance with Section 4.2(d) or Section 21.1, that Party will pay the cost of notice of termination.

(d)      In the event the Settlement Agreement is terminated or becomes null and void, any unspent and uncommitted monies in the Settlement Fund will revert to the Defendant within ten (10) days, Defendant will have no further financial obligation under the Settlement, and all data provided by the Defendant, Class Counsel and/or Settlement Class Members shall be returned or destroyed.

Section 21.3    Effect of Termination.  In the event the Settlement Agreement is terminated or becomes null and void, there shall be no liability or obligation on the part of any of the Parties, except the provisions of Section 6.6, Section 6.7(a) (but only with respect to the indemnification of the Science Panel members and their authorized contractors), Section 7.7, Section 12.1(d),  Section 12.2(d),  Section 12.3(d),  Section 12.6,  Section 14.1,  Section 14.4, Section 18.2,  Section 21.2,  this  Section 21.3,  Section 22.1,  Section 22.2,  Article XXV, Section 30.4–Section 30.9, and Section 30.12–Section 30.19 shall survive any such termination of the Settlement Agreement or it becoming null and void and no such termination of the Settlement Agreement or it becoming null and void shall relieve any Person from any obligation under such provisions.

## ARTICLE XXII
## Treatment of Confidential Information

Section 22.1    Confidentiality of Information Related to the Settlement Agreement. The Parties will treat all confidential or proprietary information shared hereunder, or in connection herewith, either prior to, on or after the Settlement Date, and any and all prior or subsequent drafts, representations, negotiations, conversations, correspondence, understandings, analyses, proposals, term sheets, and letters, whether oral or written, of any kind or nature, with respect to the subject matter hereof ("Confidential Information") in conformity with strict confidence and will not disclose Confidential Information to any non-Party without the prior written consent of the Party that shared the Confidential Information, except:  (i) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), provided that the Party that shared the Confidential Information is given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, provided further that the Party subject to such requirement or request cooperates fully with the Party that shared the Confidential Information in connection therewith, and only such Confidential Information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Party; (ii) under legal (including contractual) or ethical obligations of confidentiality, on an as-needed and confidential basis to such Party's present and future accountants, counsel, insurers, or reinsurers; or (iii) with regard to any information that is already publicly known through no fault of such Party or its Affiliates.  The Settlement Agreement, all exhibits hereto other than Exhibit 3, any other documents filed in connection with the Class Action Settlement, and any information disclosed through a public court proceeding shall not be deemed Confidential Information.  Exhibit 3 to the Settlement Agreement shall be deemed Confidential Information and shall be filed with the Court under seal.

Section 22.2    Confidentiality of Settlement Class Member Information.    All information relating to a Settlement Class Member that is disclosed to or obtained by the Settlement Administrator, the DAGP Administrator, the Claims Administrator, DAGP Grantees, the Defendant, or the Court, may be used only by the Settlement Administrator, the DAGP Administrator, the Claims Administrator, DAGP Grantees, the Defendant, or the Court for the administration of this Class Action Settlement according to the Settlement Agreement terms and conditions.  All such information relating to a Settlement Class Member will be treated as Confidential Information hereunder, will be subject to the terms of Section 22.1 hereof, and, where applicable, will be treated as Protected Health Information subject to HIPAA and other applicable privacy laws.

## ARTICLE XXIII
## Tolling Pending Science Panel Determination

Section 23.1    Tolling Agreement.   Each of the Parties hereby agrees that as of entry of the Preliminary Approval Order, statutes of limitations shall be tolled as set forth in Section 16.2(b).  The Parties agree that the Settlement Class Member Parties shall not take any action whatsoever to pursue any Roundup Claim until the Science Panel's written report is entered on the Court's public docket, as described in Section 6.7(f).

## ARTICLE XXIV
### Attorneys' Fees

Section 24.1   <u>Award</u>.   Upon the conclusion of the negotiation of the essential terms and Settlement Class Member benefits as set forth in the Settlement Agreement, the Parties requested and received authorization from the Court-appointed mediator to separately negotiate in good faith an amount of attorneys' fees and costs to be paid by the Defendant.  That negotiated award will be subject to Court approval and will be finalized prior to the dissemination of the Settlement Class Notice such that Settlement Class Members will be made aware of the amount of the agreed-upon attorneys' fees, as well as costs and expenses, through the Settlement Class Notice.

## ARTICLE XXV
### Denial of Wrongdoing, No Admission of Liability

Section 25.1   The Settlement Agreement, whether or not the Class Action Settlement becomes effective, is for settlement purposes only and is to be construed solely as a reflection of the Parties' desire to facilitate a resolution of the Class Action Complaint and the Released Claims and the expedition and simplification of litigation of the Roundup Claims.  The Defendant expressly denies that it, or any of the other Monsanto Parties, has violated any duty to, breached any obligation to, committed any fraud on, or otherwise engaged in any wrongdoing with respect to, the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, or any Opt Out, and expressly denies the allegations asserted in the Class Action Complaint, and denies any and all liability related thereto.  Neither the Settlement Agreement nor any actions undertaken by the Defendant or any of the Monsanto Parties in the negotiation, execution, or satisfaction of the Settlement Agreement will constitute, or be construed as, an admission of any liability or wrongdoing, or of any fact or legal position, or recognition of the validity of any Claim made by the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, or any Opt Out, in this or any other action or proceeding.

Section 25.2   In no event will the Settlement Agreement, whether or not the Class Action Settlement becomes effective, or any of its provisions, or any negotiations, statements, or court proceedings arising from, resulting from, in any way relating to or in connection with its provisions, or any actions undertaken in the Settlement Agreement, in any way be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, Class Counsel, or any of the Monsanto Parties in any legal, legislative, administrative, or regulatory action, proceeding, or matter for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings arising from, resulting from, in any way relating to or in connection with its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the

Monsanto Parties.  This Section 25.2 shall not apply to disputes between the Defendant and their insurers, as to which the Defendant reserve all rights.

Section 25.3   The Monsanto Parties do not waive or concede any position or arguments they have for or against, will not be bound by, and expressly reserve the right to contest any findings, statements, reports, or conclusions of the Science Panel or its members, and the admissibility of any such findings, statements, reports, or conclusions, in any actions or proceedings not involving Settlement Class Member Parties (including proceedings against Opt Outs).  The Monsanto Parties do not waive or concede any position or arguments they have for or against, will not be bound by, and expressly reserve the right to contest any findings, statements, reports, or conclusions of the Science Panel or its members, and the admissibility of any such findings, statements, reports, or conclusions, in actions or proceedings against Settlement Class Member Parties except as set forth in Section 6.3(c)(i).

## ARTICLE XXVI
## Representations and Warranties

Section 26.1   <u>Authority</u>.  Class Counsel represent and warrant as of the Settlement Date that they have authority to enter into the Settlement Agreement on behalf of the Class Representatives and Subclass Representatives.

Section 26.2   <u>Class Representatives and Subclass Representatives</u>.  Each of the Class Representatives and Subclass Representatives, through a duly authorized representative, represents and warrants that he or she:  (a) has agreed to serve as a representative of the Settlement Class proposed to be certified herein; (b) is willing, able, and ready to perform all of the duties and obligations as a representative of the Settlement Class; (c) is familiar with the pleadings in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC, or has had the contents of such pleadings described to him or her; (d) is familiar with the terms of the Settlement Agreement, including the Exhibits attached to the Settlement Agreement, or has received a description of the Settlement Agreement, including the Exhibits attached to the Settlement Agreement, from Class Counsel, and has agreed to its terms; (e) has consulted with, and received legal advice from, Class Counsel about the litigation, the Settlement Agreement (including the advisability of entering into the Settlement Agreement, its Releases, its issue-preclusive effect and the legal effects of the Settlement Agreement, its Releases and its issue-preclusive effect), and the obligations of a representative of the Settlement Class; (f) has authorized Class Counsel to execute the Settlement Agreement on his or her behalf; and (g) will remain in and not request exclusion from the Settlement Class and will serve as a representative of the Settlement Class until the terms of the Settlement Agreement are effectuated, the Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that such Class Representatives or Subclass Representative cannot represent the Settlement Class.

Section 26.3   <u>Defendant</u>.   The Defendant represents and warrants as of the Settlement Date that:  (a) it has all requisite corporate power and authority to execute, deliver, and perform the Settlement Agreement; (b) the execution, delivery, and performance by the Defendant of the Settlement Agreement has been duly authorized by all necessary corporate action; (c) it has authorized Counsel for the Defendant to execute the Settlement Agreement on its behalf; (d) the Settlement Agreement has been duly and validly executed and delivered by the Defendant; and (e)

the Settlement Agreement constitutes its legal, valid, and binding obligation in accordance with its terms.

Section 26.4   Investigation and Future Events.   The Parties and their counsel represent and warrant that they have each performed an independent investigation of the allegations of fact and law made in connection with the Class Action Complaint in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC, and may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Settlement Agreement.   Nevertheless, the Parties intend to resolve certain of their disputes pursuant to the terms of the Settlement Agreement and thus, in furtherance of their intentions, the Settlement Agreement will remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and the Settlement Agreement will not be subject to rescission or modification by reason of any change or difference in facts or law, except as permitted by its terms.

## ARTICLE XXVII
### Cooperation

Section 27.1   The Parties will cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by the Settlement Agreement and to implement the Class Action Settlement on the terms and conditions provided herein.

Section 27.2   The Parties agree to take all actions necessary to obtain final approval of the Class Action Settlement and entry of the Final Order and Judgment, including the terms and provisions described in the Settlement Agreement, and, upon final approval and entry of such order, an order dismissing the Class Action Complaint with prejudice as to the Class and Subclass Representatives, the Settlement Class, and each Settlement Class Member.

Section 27.3   The Parties and their counsel agree to support the final approval and implementation of the Settlement Agreement and defend it against objections, appeal, collateral attack or any efforts to hinder or delay its approval and implementation.   Neither the Parties nor their counsel, directly or indirectly, will encourage any Person to object to the Class Action Settlement or assist them in doing so.

## ARTICLE XXVIII
### Continuing Jurisdiction

Section 28.1   Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Settlement Administrator, the DAGP Administrator, the Claims Administrator, the Settlement Class Notice Agent, the Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and the Final Order and Judgment.   Any disputes or controversies arising from, resulting from, in any way relating to or in connection with the interpretation, implementation, administration, and enforcement of the Settlement Agreement will be made by motion to the Court, except as otherwise provided in the Settlement Agreement.   In addition, the Parties, each Settlement Class Member, and the Settlement Class Member Parties are hereby deemed to have

submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, including for the avoidance of doubt any dispute arising from, resulting from, in any way relating to or in connection with the issue-preclusive effect of the Science Panel Determination.  The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

Section 28.2   Notwithstanding any contrary law applicable to the underlying Claims, the Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of Missouri, without regard to conflict of law principles.

## ARTICLE XXIX
## Role of Class Counsel and Subclass Counsel

Section 29.1   Class Counsel acknowledge that, under applicable law, their respective duty is to the entire Settlement Class, to act in the best interest of the Settlement Class as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the Settlement Class.

Section 29.2   Subclass Counsel acknowledge that, under applicable law, their respective duty is to their respective Subclasses, to act in the best interest of the respective Subclass as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the respective Subclass.

## ARTICLE XXX
## Additional Provisions

Section 30.1   <u>Court-Ordered Schedule Change</u>. Under Section 6.3(a), the Science Panel shall conclude the Scientific Analysis and reach the Science Panel Determination following the end of a four-year (4-year) period following the Effective Date and shall provide the Science Panel Determination to the Settlement Administrator at or after the end of such period.  If a court requires or permits the Science Panel to reach and disclose the Science Panel Determination earlier than the end of such period (including as a condition to approval of this Settlement Agreement or certification of the Settlement Class) and the Science Panel does so (the date of such early determination being the "early determination date"), this Settlement Agreement shall proceed (so long as the court order does not otherwise modify the Settlement Agreement, including the requirement that the Scientific Analysis does not begin until the Effective Date), but the following shall apply notwithstanding anything to the contrary in the Settlement Agreement:

(a)     No DAGP Grants may be awarded or paid for any budget period under Section 8.3(b) that begins after the early determination date.  DAGP Grants made for a budget period that began prior to the early determination but ends after that date will be fulfilled.

(b)     No Interim Assistance Grants may be awarded after the early determination date.  No Interim Assistance Grants may be paid after the early determination date unless they were payable under Section 11.9 prior to that date;

(c)     To the extent there are unexpended funds in the Settlement Fund as of the early determination date, the Defendant may use those amounts to satisfy any judgment or settlement arising from subsequent Roundup Lawsuits brought by Settlement Class Member Parties, other than reasonable amounts designated by the Settlement Administrator for potential costs and expenses of indemnification of the Science Panel members and their authorized contractors pursuant to Section 6.7(b)(vii) and for potential compensation and reimbursement of the Science Panel members pursuant to Section 6.7(b)(vi).  If amounts remain payable by the Defendant into the Settlement Fund as of the early determination date, the Defendant shall still pay those amounts on the schedule set forth in Section 7.3, but all such amounts shall be treated as unexpended funds pursuant to the preceding sentence.  Under no circumstances shall any of the unexpended funds revert to the Defendant.

Section 30.2   No Assignment of Claims.  Neither the Settlement Class nor any Class Representative or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Class Action Complaint, or Roundup Claims.  Any such assignment, or attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Class Action Complaint, or Roundup Claims will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

Section 30.3   Individual Counsel.

(a)     A Settlement Class Member or Representative Claimant may retain counsel to assist with his or her applications for the Diagnostic Accessibility Grant Program and for Interim Assistance Grants.  Counsel individually representing a Settlement Class Member shall provide notice of his or her representation to the Claims Administrator within thirty (30) days of the Effective Date or within thirty (30) days of the retention if Counsel is retained after the Effective Date.  Counsel acting on his or her client's behalf may submit all Claim Forms, proof, correspondence, or other documents to the Settlement Administrator, the DAGP Administrator, or the Claims Administrator on behalf of that Settlement Class Member; provided, however, that counsel individually representing a Settlement Class Member may not sign on behalf of that Settlement Class Member:  (i) registration; (ii) an Opt Out request; (iii) a revocation of an Opt Out; (iv) an objection, as set forth in Section 17.1; (v) a DAGP Application; (vi) a Claim Form, or (vii) an Appeals Form.

(b)     Where a Settlement Class Member indicates in writing to the Settlement Administrator, the DAGP Administrator, or the Claims Administrator, that he or she is individually represented by counsel, the Settlement Administrator, the DAGP Administrator, or the Claims Administrator, will copy the counsel individually representing a Settlement Class Member on any written communications with the Settlement Class Member.  Any communications, whether written or oral, by the Settlement Administrator, the DAGP Administrator, or the Claims Administrator, with counsel individually representing a Settlement Class Member will be deemed to be a communication directly with such individually represented Settlement Class Member.

Section 30.4   Integration.   The Settlement Agreement and its Exhibits   will constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings, whether written or oral, arising from, resulting from, in any way relating to or in connection with the subject matter of the Settlement Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, agreement, arrangement, or understanding, whether written or oral, concerning any part or all of the subject matter of the Settlement Agreement has been made or relied on except as expressly set forth in the Settlement Agreement.

Section 30.5   Headings.   The headings used in the Settlement Agreement are intended for the convenience of the reader only and will not affect the meaning or interpretation of the Settlement Agreement in any manner.  Any inconsistency between the headings used in the Settlement Agreement and the text of the Articles, Sections, and Exhibits of the Settlement Agreement will be resolved in favor of the text.

Section 30.6   Incorporation of Exhibits.   All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, any inconsistency between the text of Article I–Article XXX of the Settlement Agreement and any Exhibits hereto will be resolved in favor of the text of Article I–Article XXX of the Settlement Agreement.

Section 30.7   Amendment.   The Settlement Agreement will not be subject to any change, modification, amendment, or addition without the express written consent of Class Counsel and Counsel for the Defendant, on behalf of all Parties to the Settlement Agreement, and upon Court approval.

Section 30.8   Mutual Preparation.   The Parties have negotiated all of the terms and conditions of the Settlement Agreement at arm's length.  Neither the Settlement Class Members nor the Defendant, nor any one of them, nor any of their counsel will be considered to be the sole drafter of the Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of the Settlement Agreement.  The Settlement Agreement will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

Section 30.9    Beneficiaries.  The Settlement Agreement will be binding upon the Parties and will inure to the benefit of the Settlement Class Members, the Monsanto Parties, and the Related Parties; as well as the Settlement Class Member Parties who are not Settlement Class Members (but only to the extent necessary to enforce the issue-preclusive effect of a Causation Established Finding as set forth in Section 6.3(c)(i)).  All Monsanto Parties and Related Parties who are not the Defendant are intended third-party beneficiaries entitled to enforce the terms of the Releases and Covenants Not to Sue set forth in Article XV and the issue-preclusive effect of the Science Panel Determination set forth in Article VI.  All Settlement Class Member Parties who are not Settlement Class Members are intended third-party beneficiaries to the extent necessary to enforce the issue-preclusive effect of a Causation Established Finding as set forth in Section 6.3(c)(i). The Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees are intended third-party beneficiaries to the extent necessary to enforce the Releases set forth in Section 15.1(c).  The Science Panel members and their authorized contractors are intended third-party beneficiaries to the extent necessary to enforce the Releases set forth in Section 15.1(f).  No provision in the Settlement Agreement is intended to create any third-party beneficiary to the Settlement Agreement other than the Monsanto Parties and the Related Parties; the Settlement Class Member Parties to the extent necessary to enforce the issue-preclusive effect of a Causation Established Finding against the Monsanto Parties as set forth in Section 6.3(c)(i); the Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees to the extent necessary to enforce the Releases set forth in Section 15.1(c); and the Science Panel members and their authorized contractors to the extent necessary to enforce the Releases set forth in Section 15.1(f).  Nothing expressed or implied in the Settlement Agreement is intended to or will be construed to confer any right or remedy under or by reason of the Settlement Agreement upon any Person other than Class and Subclass Representatives; the Settlement Class Members; Class Counsel; the Defendant; the Monsanto Parties; the Related Parties; the Settlement Class Member Parties (but only to the extent necessary to enforce the issue-preclusive effect of a Causation Established Finding as set forth in Section 6.3(c)(i)); the Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees (but only to the extent necessary to enforce the Releases set forth in Section 15.1(c)); the Science Panel members and their authorized contractors (but only to the extent necessary to enforce the Releases set forth in Section 15.1(f)); and Counsel for the Defendant.

Section 30.10    Extensions of Time.  Class Counsel and Counsel for the Defendant may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of the Settlement Agreement.

Section 30.11    Extensions to Commencement of Funded Class Benefits.    The Settlement Administrator shall have the authority to delay the date on which any of the Funded Class Benefits are to commence if it determines in its sole discretion that a delay is reasonable and appropriate for the orderly implementation of the Funded Class Benefit at issue.  For the avoidance of doubt, the Settlement Administrator has no authority under the Settlement Agreement to extend the dates for the conclusion of any of the Funded Class Benefits.

Section 30.12 <u>Execution in Counterparts</u>.   The Settlement Agreement may be executed in counterparts, and a PDF or other electronic image of an actual signature will be deemed an original signature for purposes of the Settlement Agreement.

Section 30.13 <u>Good Faith Implementation</u>.   Class Counsel and Counsel for the Defendant will undertake to implement the terms of the Settlement Agreement in good faith. Before filing any motion or petition in the Court raising a dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, Class Counsel and Counsel for the Defendant will consult with each other in good faith and certify to the Court that they have conferred in good faith.

Section 30.14 <u>Force Majeure</u>.   The Parties will be excused from any failure to perform timely any obligation hereunder to the extent such failure is caused by war, acts of public enemies or terrorists, strikes or other labor disturbances, fires, floods, acts of God, or any causes of the like or different kind beyond the reasonable control of the Parties.

Section 30.15 <u>Waiver</u>.   The waiver by any Party of any breach of the Settlement Agreement by another Party will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

Section 30.16 <u>Tax Consequences</u>.   No opinion regarding the tax consequences of the Settlement Agreement to any individual Settlement Class Member Party is being given or will be given by the Defendant, the Monsanto Parties, the Related Parties, Counsel for the Defendant, Class and Subclass Representatives, or Class Counsel, nor is any representation or warranty in this regard made by virtue of the Settlement Agreement.   Settlement Class Member Parties must consult their own tax advisors regarding the tax consequences of the Settlement Agreement, including any payments provided hereunder and any tax reporting obligations they may have with respect thereto.   Each Settlement Class Member Party's tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member Party.   The Defendant, the Monsanto Parties, the Related Parties, Counsel for the Defendant, and Class Counsel will have no liability or responsibility whatsoever for any such tax consequences resulting from payments under the Settlement Agreement.   The Defendant, the Monsanto Parties, the Related Parties, and Counsel for the Defendant will have no liability or responsibility for any reporting or withholding requirements with respect to any payments made under the Settlement Agreement.   The Settlement Administrator, the Escrow Agent, and the DAGP Administrator shall cooperate with the Claims Administrator regarding any tax information reporting and withholding requirements with respect to payments made under the Settlement Agreement, as well as any associated interest and penalties, and take all actions necessary to enable the Claims Administrator to fulfill its responsibilities under Section 13.1(f).   Any amounts required to be withheld shall be treated for all purposes as though such amounts had been paid to such Person in respect of which such withholding was required.

Section 30.17 <u>Issuance of Notices and Submission of Materials</u>.   In any instance in which the Settlement Agreement requires the issuance of any notice regarding registration, a claim or a grant, unless specified otherwise in the Settlement Agreement, such notice must be issued by:  (a) online submission through any secure web-based portal established by the Claims

Administrator for this purpose to the Settlement Class Member or Defendant, which shall be accompanied by an email certifying receipt; or (b) U.S. mail (or its foreign equivalent).  In any instance in which the Settlement Agreement requires submission of materials by or on behalf of a Settlement Class Member, a Representative Claimant, or the Defendant, unless specified otherwise in the Settlement Agreement, such submission must be made by:  (x) online submission through any secure web-based portal established by the Claims Administrator for this purpose; or (y) U.S. mail (or its foreign equivalent); or (z) delivery.  Written notice must be given to the following addresses, or such other Person or Persons as shall be designated by the Parties:

    (a)    If to the Class Representatives or Class Counsel, to all of:

    Lieff Cabraser Heimann & Bernstein, LLP
    275 Battery Street, 29th Floor
    San Francisco, California  94111
    Attention:    Elizabeth J. Cabraser
    Email:    ECabraser@lchb.com

    Lieff Cabraser Heimann & Bernstein, LLP
    250 Hudson Street, 8th Floor
    New York, NY 10013
    Attention:    Steven E. Fineman
    Email:    SFineman@lchb.com

    Dugan Law Firm, APLC
    One Canal Place
    365 Canal Street, Suite 1000
    New Orleans, LA 70130
    Attention:    James R. Dugan, II
    Email:    JDugan@dugan-lawfirm.com

    (b)    If to the Defendant or Counsel for the Defendant, to all of:

    Bayer U.S. LLC
    100 Bayer Boulevard
    Whippany, NJ 07981
    Attention:    General Counsel

    Wachtell, Lipton, Rosen & Katz
    51 West 52nd Street
    New York, New York 10019
    Attention:    Carrie M. Reilly
    Email:    CMReilly@WLRK.com

    Arnold & Porter Kaye Scholer LLP
    601 Massachusetts Ave, NW
    Washington, DC 20001
    Attention:    William Hoffman

David J. Weiner
Ashley Burkett
Email:    william.hoffman@arnoldporter.com
david.weiner@arnoldporter.com
ashley.burkett@arnoldporter.com

Section 30.18 <u>Waiver of Requirements.</u>  The Parties recognize that there may be further pleadings, discovery responses, documents, testimony, or other matters or materials owed by the Parties to each other pursuant to existing pleading requirements, discovery requests, pretrial rules, procedures, orders, decisions, or otherwise.  As of the Settlement Date, each Party expressly waives any right to receive, inspect, or hear such pleadings, discovery, testimony, or other matters or materials during the pendency of the settlement proceedings contemplated by the Settlement Agreement and subject to further order of the Court.

Section 30.19 <u>Party Burden</u>.  Unless explicitly provided otherwise, whenever a showing is required to be made in the Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

*[Remainder of page intentionally left blank.]*

Agreed to as of this 24th day of June, 2020.

**COUNSEL FOR THE DEFENDANT:**

By: _____
      Jeffrey M. Wintner
      Carrie M. Reilly
      WACHTELL, LIPTON, ROSEN &
      KATZ

By: _____
      William Hoffman
      David J. Weiner
      ARNOLD & PORTER KAYE
      SCHOLER LLP

**CLASS COUNSEL:**

By: _____
      Elizabeth J. Cabraser
      Robert L. Lieff
      Steven E. Fineman
      LIEFF CABRASER HEIMANN &
      BERNSTEIN, LLP

By: _____
      Samuel Issacharoff

By: _____
      James R. Dugan, II
      DUGAN LAW FIRM, APLC

**CLASS/SUBCLASS 1 COUNSEL:**

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____
      William M. Audet
      AUDET & PARTNERS, LLP

By: _____
      TerriAnne Benedetto
      DUGAN LAW FIRM, APLC

Agreed to as of this 24th day of June, 2020.

**COUNSEL FOR THE DEFENDANT:**

By: _____
      Jeffrey M. Wintner
      Carrie M. Reilly
      WACHTELL, LIPTON, ROSEN &
      KATZ

By: _____
      William Hoffman
      David J. Weiner
      ARNOLD & PORTER KAYE
      SCHOLER LLP

**CLASS COUNSEL:**

By: _____
      Elizabeth J. Cabraser
      Robert L. Lieff
      Steven E. Fineman
      LIEFF CABRASER HEIMANN &
      BERNSTEIN, LLP

By: _____
      Samuel Issacharoff

By: _____
      James R. Dugan, II
      DUGAN LAW FIRM, APLC

**CLASS/SUBCLASS 1 COUNSEL:**

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____
      William M. Audet
      AUDET & PARTNERS, LLP

By: _____
      TerriAnne Benedetto
      DUGAN LAW FIRM, APLC

*[Signature Page to Settlement Agreement]*

Agreed to as of this 24th day of June, 2020.

**COUNSEL FOR THE DEFENDANT:**

By: _____

    Jeffrey M. Wintner
    Carrie M. Reilly
    WACHTELL, LIPTON, ROSEN &
    KATZ

By: _____

    William Hoffman
    David J. Weiner
    ARNOLD & PORTER KAYE
    SCHOLER LLP

**CLASS COUNSEL:**

By: _____

    Elizabeth J. Cabraser
    Robert L. Lieff
    Steven E. Fineman
    LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP

By: _____

    Samuel Issacharoff

By: _____

    James R. Dugan, II
    DUGAN LAW FIRM, APLC

**CLASS/SUBCLASS 1 COUNSEL:**

By: _____

    William M. Audet
    AUDET & PARTNERS, LLP

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____

    TerriAnne Benedetto
    DUGAN LAW FIRM, APLC

*[Signature Page to Settlement Agreement]*

EXHIBIT 1

## EXHIBIT 1: NAMES AND BRANDS OF ROUNDUP PRODUCTS

KLEENUP SUPER EDGER
BONIDE KLEENUP GRASS & WEED KILLER, READY TO USE
      *FRANKS KLEEN UP GRASS & WEED KILLER READY TO USE*
      *FRANKS KLEEN UP READY TO USE*
      *MEIJER KLEENUP GRASS AND WEED KILLER RTU*
      *MORGRO WEED & GRASS KILLER R.T.U.*
KLEENUP SPOT WEED & GRASS KILLER
BONIDE KLEENUP GRASS & WEED KILLER, CONCENTRATE
RIGO NEAT'N CLEAN EXTRA STRENGTH SYSTEMIC WEED + GRASS KILLER
RIGO NEAT'N CLEAN CONCENTRATE SYSTEMIC WEED AND GRASS KILLER
A-11976E HERBICIDE
EXPERT NT HERBICIDE
TOUCHDOWN CONCENTRATE HERBICIDE
TOUCHDOWN 4-LC
TOUCHDOWN TECHNICAL
TOUCHDOWN (R) 6 HERBICIDE
DYNASTY HERBICIDE
TOUCHDOWN 5 HERBICIDE
GLYPHOSATE ACID TECHNICAL
TOUCHDOWN HERBICIDE
      *TOUCHDOWN*
TOUCHDOWN PRO HERBICIDE
TOUCHDOWN LIQUID CONCENTRATE
RIVERDALE CREDIT HERBICIDE
AQUANEAT AQUATIC HERBICIDE
      *AQUANEAT AQUATIC HERBICIDE*
      *SHORE-KLEAR AQUATIC HERBICIDE*
RAZOR HERBICIDE
      *REMUDA FULL STRENGTH*
      *LESCO PROSECUTOR*
      *LESCO PROSECUTOR PLUS TRACKER*
      *SQUARE DON*
      *SQUARE DOWN*
      *QUICK KILL*
      *UNITED HORTICULTURAL SUPPLY KLEEN U*
      *VERDICON KLEENUP PRO HERBCIDE*
      *COMPARE-N-SAVE GRASS & WEED KILLER 41% GLYPHOSATE*
      *VERDICON KLEENUP PRO HERBICIDE*
GRASS, WEED AND VEGETATION HERBICIDE (KILLER)
      *DO IT BEST GRASS & WEED KILLER CONCENTRATE*
      *SHOREKLEAR-PLUS AQUATIC HERBICIDE*
      *GREEN THUMB GRASS & WEED KILLER CONCENTRATE*
      *GRASS & WEED KILLER CONCENTRATE*
      *ORCHARD EST 1931 GRASS & WEED KILLER CONCENTRATE*
      *MEIJER WEED & GRASS KILLER CONCENTRATE*

Exhibit 1                                                                                                    Page 1

*GARDENER'S CHOICE WEED & GRASS KILLER CONCENTRATE II*
*ULTRASTOP WEED & GRASS KILLER CONCENTRATE II*
*POND OASIS SHORELINE PLANT CONTROL*
*POND OASIS SHORELINE PLANT CONTROL*
*TERMINATOR GRASS AND WEED KILLER*

GRASS, WEED AND VEGETATION HERBICIDE (KILLER) READY-TO-USE

GRASS, WEED AND VEGETATION HERBICIDE (KILLER) 5% CONCENTRATE

FORESTERS' NON-SELECTIVE HERBICIDE

RAZOR BURN

*REMUDA PLUS*
*REMUDA PLUS CONCENTRATE*
*TRIPLE SHOT*

PRODEUCE

*WEED IMPEDE 2 IN CONCENTRATE*
*ELIMINATOR EXTREME WEED & GRASS KILLER CONCENTRATE PLUS PREVENTER*
*FERTI-LOME DOUBLE PLAY WEEDS'EM OUT KEEP 'EM OUT*
*MONTEREY REMUDA EXTENDED CONTROL*

PRODEUCE RTU GRASS & WEED KILLER

*FERTI-LOME DOUBLE PLAY READY-TO-USE*
*WEED IMPEDE 2 IN RTU*
*MONTEREY REMUDA EXTENDED CONTROL RTU*

RAZOR BURN READY-TO-USE

*REMIDA PLUS RTU*

RAZOR BURN RESIDENTIAL

*REMUDA PLUS*

RAZOR RTU HERBICIDE

*HEAVY WEIGHT GRASS & WEED KILLER*
*GARDENER'S CHOICE WEED & GRASS KILLER II*
*ULTRASTOP WEED & GRASS KILLER II*
*DO IT BEST GRASS & WEED KILLER2 READY-TO-USE*

TVC - CONSUMER CONCENTRATE

*GROUND FORCE VEGETATION KILLER CONCENTRATE*
*ORCHARD EST. 1931 VEGEATATION CONTROL CONCENTRATE*
*SPECTRACIDE VEGETATION KILLER CONCENTRATE3*
*HOMEFRONT VEGETATION KILLER CONCENTRATE*
*ELIMINATOR TOTAL VEGETATION KILLER CONCENTRATE*
*HY-END TVC*

TVC CONSUMER RTU

*SPECTRACIDE VEGETATION KILLER READY TO USE2*
*BONIDE KLEENUP WEED AND GRASS KILLER 365 READY TO USE*
*KLEENUP WEED & GRASS KILLER 365 READY TO USE*

NUP-17001

ORTHO SYSTEMIC SPOT WEED & GRASS KILLER

ORTHO READY-TO-USE SPOT WEED & GRASS KILLER

*GROWER'S CHOICE KLEENUP WEED & GRASS KILLER*

Exhibit 1                                                                                                    Page 2

  *WEED & GRASS KILLER KLEENUP (GROWER'S CHOICE)*
ORTHO SYSTEMIC WEED & GRASS KILLER
  *PENNINGTON'S PRIDE ELIMINATOR CONCENTRATE SYSTEMIC WEED & GRASS*
  *KILLER*
  *GREEN CHARM ELIMINATOR CONCENTRATE SYSTEMIC WEED & GRASS KILLER*
  *PENNINGTON'S PRIDE SYSTEMIC WEED & GRASS KILLER*
  *GREEN CHARM KNOCK OUT SYSTEMIC WEED & GRASS KILLER*
  *GREEN CHARM KNOCK OUT CONCENTRATE SYSTEMIC WEED & GRASS KILLER*
  *PENNINGTON'S PRIDE, KNOCK OUT CONCENTRATE SYSTEMIC WEED & GRASS*
  *KILLER*
  *GROWER'S CHOICE KLEENUP SYSTEMIC WEED AND GRASS KILLER*
  *BULLSEYE*
  *GREEN DEATH CONCENTRATE*
  *CONTACT HERBICIDE #2*
  *ZAP-IT CONCENTRATE*
KLEENUP GRASS AND WEED KILLER
  *GROWER'S CHOICE TM KLEENUP R GRASS AND WEED KILLER*
ORTHO FENCE & GRASS EDGER FORMULA II
  *GROWER'S CHOICE KLEENUP SUPER EDGER*
KLEENUP SPOT WEED & GRASS KILLER
  *GROWER'S CHOICE KLEENUP SPOT WEED AND GRASS KILLER*
KLEERAWAY CONCENTRATE WEED & GRASS KILLER
ROUNDUP CONCENTRAATE WEED & GRASS KILLER
ROUNDUP SUPER CONCENTRATE WEED & GRASS KILLER
ROUNDUP L & G READY-TO-USE FAST ACTING FORMULA GRASS & WEED KILLER
ROUNDUP QUIK STIK GRASS AND WEED KILLER
ROUNDUP GRASS AND WEED KILLER
  *ELIMINATOR WEED & GRASS KILLER READY-TO-USE*
  *STRIKE WEED & GRASS KILLER READY-TO-USE*
ROUNDUP FENCE & YARD EDGER 1
ROUNDUP READY-TO-USE WEED & GRASS KILLER 1
ROUNDUP READY-TO-USE WEED AND GRASS KILLER 2
ROUNDUP CLUB CONCENTRATE WEED & GRASS KILLER
ROUNDUP CLUB SUPER CONCENTRATE WEED & GRASS KILLER
ROUNDUP CLUB SUPER CONCENTRATE WEED & GRASS KILLER
ROUNDUP GARDEN FOAM GRASS & WEED KILLER
ROUNDUP RAINFAST CONCENTRATE WEED & GRSS KILLER
ROUNDUP RAINFAST CONCENTRATE WEED & GRASS KILLER
ROUNDUP RAINFAST SUPER CONCENTRATE WEED & GRASS KILLER
ROUNDUP RAINFAST SUPER CONCENTRATE WEED & GRASS KILLER
KLEERAWAY CONCENTRATE WEED & GRASS KILLER1
KLEERAWAY CONCENTRATE WEED & GRASS KILLER 1
ROUNDUP RAINFAST TOUGH WEED
ORTHO GROUNDCLEAR TOTAL VEGETATION KILLER
GROUNDCLEAR SUPEREDGER GRASS & WED CONTROL I
ROUNDUP DRY CONCENTRATE

ROUNDUP READY TO USE WEED & GRASS KILLER PLUS
ROUNDUP LOCK'N SPRAY
GROUND CLEAR RTU
ORTHO SEASON-LONG GRASS & WEED KILLER
ORTHO SEASON LONG WEED & GRASS KILLER PLUS PREVENTER READY-SPRAY II
ORTHO GROUNDCLEAR VEGETATION KILLER RTU
NS 515
NS 516
NSR 001
GROUNDCLEAR CONCENTRATE
GROUNDCLEAR W RTU
GROUNDCLEAR S RTU
GLYFOS HERBICIDE
GLYFOS READY-TO-USE 0.96% WEED & GRASS KILLER
GLYFOS MUC 62%
GLYFOS CONCENTRATE 27% WEED & GRASS KILLER
GLYFOS PRO HERBICIDE
GLYFOS CUSTOM HERBICIDE
GLYFOS CONCENTRATE 18% WEED & GRASS KILLER
GLYFOS READY-TO-USE 1.92% WEED & GRASS KILLER
GLYFOS CONCENTRATE 41% WEED & GRASS KILLER
GLYFOS CONCENTRATE 25% WEED AND GRASS KILLER
DUPONT STAPLE PLUS HERBICIDE
DUPONT GLYPHOSATE HERBICIDE
 *GLYPHOSATE ORIGINAL*
DUPONT GLYPHOSATE VMF HERBICIDE
 *EAGRE*
ETK-2301 HERBICIDE
DUPONT DPX-B2856 4.5 HERBICIDE
DUPONT DPX-B2856 3.0 HERBICIDE
DUPONT ABUNDIT EDGE HERBICIDE
ESPLANADE MUNI
SPECTICLE TOTAL
ROUNDUP HERBICIDE
 *RULER HERBICIDE*
 *JURY*
 *SILHOUETTE*
 *MIRAGE*
 *RATTER*
 *WEED WRANGLER 41*
 *TURFGO WEED WRANGLER 41*
 *TURFGO WEED WRANGLER 41*
MON 0139 TECHNICAL SOLUTION
ACCORD HERBICIDE
 *TURFGO WEED WRANGLER*
 *TURFGO WEED WRANGLER*

SHACKLE HERBICIDE
    *HOEDOWN RTU*
    *TRAIL BLAZER RTU*
    *QUICK-CLAIM RTU*
    *BAREBACK RTU*
    *KEM-TIL RTU*
    *STRIKER RTU*
    *GREEN DEATH*
    *T-39*
    *LIQUIDATOR*
    *LIQUIDATOR*
    *T-39*
    *JAN/SAN II HERBICIDE*
    *TRAMPLE*
    *BURNOUT*
    *HNS-200*
    *PENNINGTON'S PRIDE SYSTEMIC WEED & GRASS KILLER READY-TO-USE*
    *GREEN CHARM KNOCK OUT READY-TO-USE*
    *GREEN CHARM KNOCK OUT READY-TO-USE SYSTEMIC WEED & GRASS KILLER*
    *PENNINGTON'S PRIDE KNOCK OUT SYSTEMIC WEED & GRASS KILLER READY-TO-USE*
    *GREEN CHARM ELIMINATOR READY-TO-USE SYSTEMIC WEED & GRASS KILLER*
    *PENNINGTON'S PRIDE ELIMINATOR SYSTEMIC WEED & GRASS KILLER READY-TO-US*
    *GONE-2*
    *BLITZ*
    *MEIJER NEAT 'N CLEAN READY TO USE GRASS & WEED KILLER*
    *ENVIRON*
    *MISTY GLYPHO KILL RTU*
    *TRUE VALUE GREEN THUMB SYSTEMIC WEED & GRASS KILLER*
    *TRUE VALUE GREEN THUMB SYSTEMIC WEED & GRASS KILLER*
    *CONTACT HERBICIDE #3*
    *ZAP-IT*
    *GREEN THUMB SYSTEMIC WEED & GRASS KILLER*
    *WEED-OUT*
    *REMUDA*
    *QUICKDRAW READY-TO-USE HERBICIDE*
    *OPTI-GRO TRAIL BLAZER RTU*
    *OPTI-GRO TRALL BLAZER RTU*
    *OPTI-GRO TRAILBLAZER RTU*
POLADO PLANT GROWTH REGULATOR
MON 0139 62% TECHNICAL SOLUTION
SHACKLE C / EXCHANGE HERBICIDE
BRONCO HERBICIDE
ROUNDUP CUSTOM HERBICIDE
RODEO HERBICIDE

Exhibit 1                                                                                                    Page 5

CUSTOM HERBICIDE
AQUAMASTER HERBICIDE
ROUNDUP AQUAMASTER HERBICIDE
ROUNDUP CUSTOM FOR AQUATIC & TERRESTRIAL USE
  *NUFARM AQUANEAT AQUATIC HERBICIDE*
POLADO L PLANT GROWTH REGULATOR
LANDMASTER BW HERBICIDE
ROUNDUP L & G CONCENTRATE GRASS & WEED KILLER
  *ZEP WEED DEFEAT*
  *HOEDOWN*
  *QUICK-CLAIM*
  *BAREBACK*
  *TRAIL BLAZER*
  *KEM-TIL*
  *STRIKER*
  *LESCO AVAIL NON-SELECTIVE HERBICIDE*
  *HNS-220*
  *JAN/SAN HERBICIDE*
  *3228 FADE-OUT*
  *UNITED 345 WEED BLITZ*
  *WK-95*
  *FORMULA 721 STOCK NO. 4030*
  *GREEN DEATH*
  *BURNOUT*
  *BURNOUT*
  *MISTY GLYPHO KILL CONCENTRATE*
  *TURFINATOR*
  *TRAIL BLAZER*
  *ZAP-IT ULTIMATE GRASS AND WEED HERBICIDE*
  *GREEN DEATH ULTIMATE GRASS AND WEED HERBICIDE*
  *GREEN DEATH ULTIMATE GRASS AND WEED HERBICIDE*
  *ZP-IT ULTIMATE GRASS AND WEED HERBICIDE*
  *CRC-500*
  *CONTACT HERBICIDE #4*
  *CRC-500 BURNDOWN*
  *REMUDA PLUS*
  *OPTI-GRO TRAIL BLAZER*
LANDMASTER II HERBICIDE
RANGER HERBICIDE
FALLOW MASTER HERBICIDE
ROUNDUP NM
NOMIX GRASS & WEED HERBICIDE
NOMIX GRASS-WEED HERBICIDE II
GLYPHOSATE
GLYPHOSATE TECHNICAL
MON-14420 HERBICIDE

MON 8750 HERBICIDE
EXPEDITE GRASS & WEED HERBICIDE
    *EXPEDITE GRASS AND WEED I HERBICIDE*
    *NOMIX MAJOR HERBICIDE*
MILITIA HERBICIDE
EZJECT SELECTIVE INJECTION HERBICIDE CAPSULES
ROUNDUP DRY PAK HERBICIDE WATER SOLUBLE GRANULE
MON-8750 WSB
EXPEDITE ONESTEP GRASS AND WEED HERBICIDE
ROUNDUP RAINFAST HERBICIDE
MON 14420 WSB HERBICIDE
MON 14420-G HERBICIDE
ROUNDUP HERBICIDE
HONCHO HERBICIDE
    *GLYFOS TM*
    *MIRAGE HERBICIDE*
    *SILHOUETTE HERBICIDE*
    *'BUCCANEER HERBICIDE'*
    *NUFARM CREDIT HERBICIDE*
    *GLY-FLO HERBICIDE*
    *GLY STAR ORIGINAL CA*
    *KLEEN UP PRO*
    *KLEENUP PRO GRASS AND WEED KILLER*
    *SUPERSATE HERBICIDE*
    *AGRISOLUTIONS CORNERSTONE HERBICIDE*
    *AGRISOLUTIONS CORNERSTONE HERBICIDE*
    *RASCAL*
    *MIRAGE*
    *SUPERSAFE*
    *SUPERSAFE HERBICIDE*
    *BUCCANEER GLYPHOSAE HERBICIDE*
    *CORNERSTONE*
EXPEDITE GRASS & WEED PLUS HERBICIDE
    *EXPEDITE GRASS AND WEED PLUS HERBICIDE*
    *NOMIX DELETE HERBICIDE*
    *EXPEDITE GRASS AND WEED PLUS RESIDUAL HERBICIDE*
EXPEDITE GRASS AND WEED II HERBICIDE
    *EXPEDITE GRASS AND WEED II HERBICIDE*
    *NOMIX SWEEP HERBICIDE*
ROUNDUP L & G READY TO USE FAST ACTING FORMULA GRASS & WEED KILLER
ROUNDUP QUIK STIK GRASS AND WEED KILLER
ROUNDUP ORIGINAL II HERBICIDE
HONCHO PLUS HERBICIDE
    *TENKOZ BUCCANEER PLUS HERBICIDE*
    *RATTLER PLUS HERBICIDE*
    *MIRAGE PLUS HERBICIDE*

Exhibit 1

*AGRISOLUTIONS CORNERSTONE PLUS HERBICIDE*
*FS GLYPHOSATE PLUS HERBICIDE*
*GLY-4 PLUS HERBICIDE*
*BIOLOGIC BIOMAXX HERBICIDE*
*RASCAL PLUS*
*MIRAGE PLUS*
*BUCCANEER PLUS GLYPHOSATE HERBICIDE*
*CORNERSTONE PLUS*
*BULLZEYE HERBICIDE*
*CROP-SURE GLYPHOSATE PLUS HERBICIDE*
ROUNDUP GRASS AND WEED KILLER
ROUNDUP ULTRA HERBICIDE
*ROUNDUP ULTRA*
*ROUNDUP ULTRA*
ROUNDUP E Z DRY HERBICIDE
MON 58420 HERBICIDE
ROUNDUP D-PAK HERBICIDE
MON 58442 HERBICIDE
ROUNDUP WSD WATER SOLUBLE DRY HERBICIDE DEPLOY DRY HERBICIDE
ROUNDUP ULTRA DRY
ROUNDUP PRODRY HERBICIDE
MON 76369 63.9% TECHNICAL SOLUTION
FALLOW MASTER BROADSPECTRUM HERBICIDE
MON 77859 HERBICIDE
MON 78088 HERBICIDE
MON 78102 HERBICIDE
ROUNDUP ULTRAMAX
*ROUNDUP ULTRA MAX HERBICIDE*
MON 78103 HERBICIDE
MON 78063
ACCORD XL HERBICIDE
*PROKOZ GLYPHOSATE PRO II*
*TOTALKILL(BRAND) PRO WEED & GRASS KILLER HERBICIDE*
*TOTALKILL BRAND PRO WEED & GRASS KILLER HERBICIDE II*
ROUNDUP PROBLEND HERBICIDE
MON 78095 HERBICIDE
MON 78128 HERBICIDE
MON 78746 HERBICIDE
ROUNDUP PRO CONCENTRATE
54% GLYPHOSATE IPA SALT PREMIX
RT MASTER
MON 78623 58% TECHNICAL SOLUTION
ROUNDUP QUIKPRO HERBICIDE
*LESCO PROSECUTOR SWIFT ACTION NON-SELECTIVE HERBICIDE*
MON 78473 HERBICIDE
*LESCO PROSECUTOR PRO, NON-SELECTIVE HERBICIDE*

Exhibit 1                                                                                    Page 8

ROUNDUP WEATHERMAX HERBICIDE
ROUNDUP POWERMAX II HERBICIDE
MON 78271 HERBICIDE
ROUNDUP ORIGINAL MAX HERBICIDE
> *BULLZEYE HL-K*
MON 78404 HERBICIDE
MON 78736 HERBICIDE
MON 78783 HERBICIDE
MON 78481 HERBICIDE
RT3 HERBICIDE
RT3 POWERED BY ROUNDUP TECHNOLOGY HERBICIDE
MON 79158 HERBICIDE
MON 78868 HERBICIDE
MON 78460A HERBICIDE
ROUNDUP POWERMAX HERBICIDE
> *DUPONT ABUNDIT EDGE HERBICIDE*
RD1619 HERBICIDE
RD 1626 HERBICIDE
RD 1629 HERBICIDE
MON 008 HERBICIDE
GLYPHOSATE TECHNICAL (WETCAKE)
IPA GLYPHOSATE 62% G2
POTASSIUM GLYPHOSATE 58% G2
RD 1685
ROUNDUP PROMAX
M1693 HERBICIDE
M1724 HERBICIDE
M1727 HERBICIDE
M1728 HERBICIDE
K487 HERBICIDE
IP410 HERBICIDE
IP410FC HERBICIDE
R14697 HERBICIDE
R14701 HERBICIDE
R14640 HERBICIDE
RT4790 HERBICIDE
M1750 HERBICIDE
GLY 135EA TECHNICAL SOLUTION
GLY 200EA TECHNICAL SOLUTION
ROUNDUP XTEND WITH VAPORGRIP TECHNOLOGY
ROUNDUP POWERMAX 3 HERBICIDE
LILLY/MILLER KNOCK-OUT WEED & GRASS KILLER
LILLY/MILLER READY-TO-USE KNOCK-OUT WEED & GRASS KILLER
LILLY/MILLER READY-TO-USE KNOCK-OUT WEED & GRASS KILLER
GREEN LIGHT WEED AWAY
GREEN LIGHT READY-TO-USE WEED AWAY

Exhibit 1                                                                                            Page 9

GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET 18% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET 1.92% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET SYSTEMIC GRASS & WEED KILLER
CORNERSTONE
CORNERSTONE PLUS
    *GLY-4 PLUS HERBICIDE*
CORNERSTONE PLUS GLYPHOSATE 41%
CORNERSTONE HERBICIDE
CORNERSTONE PLUS 5
62% GLYPHOSATE IPA
GLYPHOSATE IPA MUP CONCENTRATE
KORNERSTONE K
GLYPHOSATE ORIGINAL HERBICIDE
EAGRE EMERGED AQUATIC WEED AND BRUSH HERBICIDE
GLYFOS X-TRA
    *GLY-4 PLUS*
    *GORDON'S PRONTO BIG N' TUF NONSELECTIVE AGRICULTURAL HERBICIDE*
    *CROP-SURE GLYPHOSATE PLUS HEBICIDE*
    *BULLZEYE*
    *CROP-SURE GLYPHOSATE PLUS HERBICIDE*
GLYPHOSPHATE TECHNICAL
GLYFOS HERBICIDE
    *GLY-4*
GLYFOS AQ AQUATIC HERBICIDE
GLYPHOSATE CONCENTRATE MANUFACTURING USE PRODUCT
GLYFOS AU HERBICIDE
BACKDRAFT HERBICIDE
BACKDRAFT SL HERBICIDE
HM-2028 HERBICIDE
HM-0548 HERBICIDE
HM-0705-A HERBICIDE
GLYPHOSATE TECHNICAL
GLYPHOSATE 62% MUP
GLYPHOSATE 41%
GLYPHOSATE 53.8%
EXCHANGE RTU HERBICIDE
EXCHANGE SEMI CONCENTRATE HERBICIDE
EXCHANGE CONCENTRATE HERBICIDE
HI-YIELD SYSTEMIC VEGETATION KILLER
    *SCIENCE VEGETATION KILLER*
HI-YIELD SYSTEMIC WEED AND GRASS KILLER
HI-YIELD READY TO USE SYSTEMIC WEED AND GRASS KILLER
    *AMERICAN BRAND SYSTEMIC SPOT WEED & GRASS KILLER*
    *FERTI-LOME READY TO USE SYSTEMIC POISON IVY KILLER*
FERTI-LOME SYSTEMIC VINE KILLER

Exhibit 1                                                                                                    Page 10

FERTI-LOME READY-TO-USE VINE KILLER
HI-YIELD READY-TO-USE WEED AND GRASS KILLER
 *AMERICAN BRAND SYSTEMIC SPOT WEED AND GRASS KILLER*
 *HI-YIELD KILLZALL(R) SYSTEMIC WEED AND GRASS KILLER*
FERTI-LOME READY-TO-USE SYSTEMIC NUTGRASS KILLER
HI-YIELD READY-TO-USE VEGETATION KILLER
HI-YIELD SYSTEMIC WEED AND GRASS KILLER CONC.
HI-YIELD SYSTEMIC ROPE & WICK APPLICATOR MIX
HI-YIELD KILLZALL CONCENTRATE SYSTEMIC WEED & GRASS KILLER
TAKEOUT SYSTEMIC WEED & GRASS KILLER READY TO USE
 *DRAGON EASY TRIM*
 *RTU KLEER-OUT*
 *ACME(R) SYSTEMIC WEED & GRASS KILLER, READY-TO-USE*
CHEMSICO RTU HERBICIDE G II
 *REAL-KILL WEED & GRASS KILLER*
CHEMSICO RTU HERBICIDE G 1
CHEMSICO CONCENTRATE HERBICIDE G 1
CHEMSICO CONCENTRATE HERBICIDE G II
 *SPECTRACIDE WEED & GRASS KILLER PRE-MEASURED CONCENTRATES*
JURY HERBICIDE
TOUCHDOWN CONCENTRATE HERBICIDE
TOUCHDOWN 4-LC
TOUCHDOWN TECHNICAL
TOUCHDOWN (R) 6 HERBICIDE
DYNASTY HERBICIDE
TOUCHDOWN 5 HERBICIDE
 *TOUCHDOWN*
GLYPHOSATE TECHNICAL
ZPP 1560 HERBICIDE
ZPP 1560 PRO HERBICIDE, 28.3% GLYPHOSATE
ZPP 1560 LIQUID CONCENTRATE 28.3% GLYPHOSATE
CORRAL SPOT WEEDER
CORRAL SPOT WEEDER
 *DECIMATE SPOT WEEDER*
 *HERBI-DEAD SYSTEMIC WEED & GRASS KILLER*
 *PEST SCRIPTION HERBI-DEAD SYSTEMIC WEED & GRASS KILLER*
 *PEST SCRIPTION HERBI-DEAD SYSTEMIC WEED & GRASS KILLER*
CLEAN CROP WEED WRANGLER READY-TO-USE
CLEAN CROP WEED WRANGLER 10%
DOOMSDAY READY TO USE
DOOMSDAY CONCENTRATE
DREXEL DREXAR WEED-AWAY READY-TO-USE
DREXEL GLYPHOSATE IPA 53.8%
DREXEL IMITATOR PLUS
 *IDA GLYPHOSATE 480 HERBICIDE*
 *AGSCO MAD DOG EXTRA 1*

   *HI-YIELD SUPER CONCENTRATE KILL-ZALL II*
   *REMUDA II*
   *REMUDA WEED & GRASS KILLER*
TOMAHAWK 5
TOMAHAWK
TOMAHAWK 4
TOMAHAWK K
AGENT GT
GLYPHOSATE TECHNICAL
   *GLYPHOSATE TECHNICAL*
GLYGRAN WDG
   *GLYGRAN WDG*
CLEAN CROP WEED WRANGLER READY-TO-USE
SYSTEMIC WEED & GRASS KILLER - .96
CLEAN CROP WEED WRANGLER 10%
   *SYSTEMIC WEED & GRASS KILLER - 10*
   *SYSTEMIC WEED & GRASS KILLER - 10*
KLEENUP SYSTEMIC WEED & GRASS KILLER
   *DEAD-N-GONE GRASS & WEED KILLER, CONCENTRATE*
   *GROWER'S CHOICE KLEENUP SYSTEMIC WEED & GRASS KILLER*
KLEENUP SPOT WEED & GRASS KILLER
KLEENUP GRASS & WEED KILLER READY TO USE
   *GROWER'S CHOICE KLEENUP GRASS & WEED KILLER READY TO USE*
   *DEAD-N-GONE GRASS & WEED KILLER, READY TO USE*
KLEENUP SUPER EDGER
GLYPHOSATE ISOPROPYLAMINE SALT TECHNICAL 62% SOLUTION
GLYPHOSATE
MIRAGE PLUS
AFG ORIGINAL
AFG PLUS
GLYPHO 648
PREP IT HERBICIDE
MAKAZE YIELD-PRO
LPI 6310-20 HERBICIDE
DOG FIGHT
GLYPHO K6
HI-YIELD SYSTEMIC ROPE & WICK APPLICATOR MIX
GLYPHOSATE TECHNICAL
GLYPHOSATE TECHNICAL
GLYPHOSATE TECHNICAL (NUP-05068)
GLYPHOSATE ACID TECHNICAL
GLYPHOSATE TECHNICAL
GLYPHOSATE TECHNICAL NUP 07169
GLYPHOSATE TECHNICAL NUP-07167
TVC -SUPER CONCENTRATE
   *RM43 43% GLYPHOSATE PLUS WEED PREVENTER*

      *MARTIN'S ERASER MAX SUPER CONCENTRATE*
      *JUDGEMENT DAY NON-SELECTIVE WEED KILLER SUPER CONCENTRATE*
ALBAUGH TECHNICAL GLYPHOSATE ACID
GLYPHOSATE 62%
GLYPHOSATE 53.8%
      *SURRENDER BRAND ERASER-AQ AQUATIC HERBICIDE*
      *TRAILBLAZER MAX*
      *CATTPLEX CATTAIL CONTROL*
      *CORNERSTONE 5*
      *ERASER - AQ*
      *SHORELINE DEFENSE*
      *AQUA VET SHORELINE WEEDS*
      *POND 2.0 SHORELINE WEEDS*
      *ATO GLYCIDE*
      *POND20 SHORELINE WEEDS*
GLYPHOSATE 41%
      *GLY-4 HERBICIDE*
      *CROP-SURE GLYPHOSATE HERBICIDE*
      *CORNERSTONE*
      *T.A.H. CONCENTRATED GRASS AND WEED KILLER*
      *RASCAL*
      *REMUDA III*
GLYPHOSATE 41% PLUS
      *GLY-4 PLLUS HERBICIDE*
      *GLY-4 PLUS HERBICIDE*
      *TIGER BRAND GRASS AND WEED KILLER PRO*
      *CROP-SURE GLYPHOSATE PLUS*
      *AGRISOLUTIONS CORNERSTONE PLUS*
      *RASCAL PLUS*
      *CROPSMART GLYPHOSATE 41 PLUS*
      *TKO*
      *HI-YIELD SUPER CONCENTRATE KILL-ZALL II*
      *HM-0705*
      *HOSS ULTRA*
      *BULLZEYE HERBICIDE*
      *PRONTO BIG N' TUF*
      *PRONTO BIG N' TUF 41% GLYPHOSATE WEEDS & GRASS KILLER*
      *CROP$MART GLYPHOSATE 41 PLUS*
      *BIG N'TUF WEED & GRASS KILLER*
      *GORDON'S BIG N'TUF WEED & GRASS KILLER*
ALBAUGH LAND STAR
FALLOW STAR
GLYPHOSATE ACID TGAI
GLY STAR READY-TO-USE GRASS AND WEED KILLER
      *GLY-4 PLUS READY-TO-USE WEED AND GRASS KILLER*
      *GLY-PLUS NONSELECTIVE READY-TO-USE WEED AND GRASS KILLER*

Exhibit 1        Page 13

*FERTI-LOME NUTGRASS, POISON IVY, & VINE KILLER RTU*
*HI-YIELD KILLZALL II WEED AND GRASS KILLER RTU*
GLY STAR GRASS AND WEED KILLER CONCENTRATE
*GLY-4 PLUS WEED AND GRASS KILLER CONCENTRATE*
*GLY-PLUS NONSELECTIVE WEED AND GRASS KILLER CONCENTRATE*
*AMDRO POWERFLEX WEED & GRASS KILLER CONCENTRATE*
THUNDERMASTER
GLYPHOSATE IPA MUP
GLYPHOSATE 48% K-SALT
*BUCCANEER HL*
*BUCCANEER HL GLYPHOSATE HERBICIDE*
IMAZETHAPYR 1.8% + GLYPHOSATE 22%
GLYPHOSATE ACID TGAI
CLEAROUT 41
CLEAROUT 41 PLUS
CLEAROUT 62 FORMULATION CONCENTRATE
GLYPHOSATE TECHNICAL
CLEAROUT TEC
CLEAROUT PROMPT
CLEAROUT JAVLIN
CLEAROUT SPARTAN HERBICIDE
GLYPHOSATE IPA + FOMESAFEN NA
GLYPHOSATE + DIQUAT
*KLEENUP FAST WEED & GRASS KILLER CONCENTRATE*
*ELIMINATOR WEED & GRASS KILLER FAST ACTING CONCENTRATE*
*ELIMINATOR WEED AND GRASS KILLER PLUS CONCENTRATE*
*ELIMINATOR WEED & GRASS KILLER PLUS CONCENTRATE*
*KNOCKOUT WEED & GRASS KILLER FAST ACTING CONCENTRATE*
GLYPHOSATE WETCAKE
GLYPHOSATE AM + FOMESAFEN NA
GLYPHOSATE 50.2%
*ELIMINATOR WEED AND GRASS KILLER II SUPER CONCENTRATE*
*ELIMINATOR WEED & GRASS KILLER II SUPER CONCENTRATE*
GLYPHOSATE 58% K-SALT MUP
GLYPHOSATE 2 + 2
READY-TO-USE WEED AWAY
GLYPHOSATE ACID TGAI
SUPER K-GRO SYSTEMIC GRASS AND WEED KILLER CONCENTRATE.
READY TO USE SYSTEMIC GRASS AND WEED KILLER
SUPER K-GRO SHOOT OUT SPOT WEED & GRASS KILLER
EDGER II
MARMAN ATILA, GLYPHOSATE
MARMAN ATILA, GLYPHOSATE MP
GLYPHOSATE 4 HERBICIDE
*ACQUIRE HERBICIDE*
*MAD DOG I GLYPHOSATE (ORIGINAL)*

---

Exhibit 1                                                                                                    Page 14

GLY-FLO PLUS
GLY-FLO AQUATIC
GLY-FLO REDUCED TILLAGE
GLY-FLO SUGARCANE
GLY-FLO MUP
GLY-FLO FORESTRY
GLY-FLO 96% ACID TECHNICAL
GLY-FLO 76% ACID MUP
GLY-FLO 62% SC AG
MARTIN'S ERASER GLYPHOSATE CONCENTRATE HERBICIDE
MARTIN'S ERASER
MARTIN'S ERASER SYSTEMIC WEED & GRASS CONCENTRATE
SURRENDER BRAND ERASER 18% SYSTEMIC WEED & GRASS KILLER
MARTIN'S ERASER RTU SYSTEMIC WEED & GRASS KILLER
*OPTI-GRO TRAIL BLAZER MAXX RTU*
CORRAL SUPER SPOT WEEDER
BUCCANEER PLUS GLYPHOSATE HERBICIDE
BUCCANEER GLYPHOSATE HERBICIDE
BUCCANEER 5 EXTRA HERBICIDE
FOZZATE
*GLIFONOX 800*
SECURITY BLOT-OUT SYSTEMIC WEED & GRASS KILLER
SECURITY BLOT-OUT READY-TO-USE WEED & GRASS KILLER
SECURITY BLOT-OUT 2
SECURITY BRAND BLOT-OUT 10
GLYPHOSATE TECHNICAL HERBICIDE
GLYPHOSATE 62% TECHNICAL SOLUTION
NAF-545
*PROKOZ GLYPHOSATE PRO*
GLYPHOMAX
GLYPRO
*AQUAPRO*
*AQUAPRO OR SEPRO TOTAL POND - EMERGE*
ERASE BLUE
GLYPHOSATE 545 MUP
GLYPHOSATE 18% CONCENTRATE GRASS AND WEED KILLER
*GLYPHOSATE PLUS LAWN AND GARDEN CONCENTRATE*
GLYPHOSATE 0.96% RTU
*WEED GUN GLYPHOSATE PLUS READY TO USE*
GLYMIX MT
FOZZATE
AGRIVALU ONE-UP READY TO USE
NOMIX GRASS AND WEED I HERBICIDE
GLYFOS HERBICIDE
GLYFOS CONCENTRATE 18% WEED & GRASS KILLER
*NO-PEST WEED & GRASS KILLER CONCENTRATE*

Exhibit 1                                                                                                          Page 15

GLYFOS READY-TO-USE 1.92% WEED & GRASS KILLER
> *REAL-KILL WEED & GRASS KILLER 2*
> *ACE READY-TO-USE WEED & GRASS KILLER 2*
> *GREEN THUMB READY-TO-USE WEED & GRASS KILLER 2*
> *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER READY-TO-USE WITH 1.*
> *EASYGONE READY-TO-USE WEED & GRASS KILLER II*
> *GREEN LIGHT COM-PLEET*
> *GREEN LIGHT COM-PLEET SYTEMIC GRASS & WEED KILLER READY-TO-USE*
> *GREEN LIGHT COM-PLEET SYSTEMIC GRASS & WEED KILLER READY-TO-USE*
> *HDX WEED & GRASS KILLER READY-TO-USE*

GLYFOS READY-TO-USE 0.96% WEED & GRASS KILLER
> *GREEN LIGHT COM-PLEET SYSTEMIC GRASS & WEED KILLER*
> *NO-PEST WEED & GRASS KILLER 2*

GLYFOS CONCENTRATE 41% WEED & GRASS KILLER
> *HI-YIELD KILLZALL CONCENTRATE SYSTEMIC WEED & GRASS KILLER*
> *HI-YIELD KILLZALL CONCENTRATE SYSTEMIC WEED & GRASS KILLER*
> *HI-YIELD SUPER CONCENTRATE KILLZALL WEED & GRASS KILLER*
> *GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER*
> *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER SUPER CONCENTRATE WI*
> *EASYGONE SUPER CONCENTRATE 41% WEED & GRASS KILLER*
> *AMERICA'S GROUNDSKEEPER 41% GLYPHOSATE CONCENTRATE GRASS & WEED KILLER*
> *OSH COMPLETE HOME & GARDEN SUPER CONCENTRATE 41% WEED & GRASS KILLER*
> *HDX WEED & GRASS KILLER CONCENTRATE*

GLYFOS MUC 62%
GLYFOS READY-TO-USE 0.75% WEED & GRASS KILLER
GLYFOS CONCENTRATE 5% WEED & GRASS KILLER
GLYFOS CONCENTRATE 16.5% WEED & GRASS KILLER
GLYFOS CONCENTRATE 7.5% WEED & GRASS KILLER
GLYFOS CONCENTRATE 27% WEED & GRASS KILLER
> *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER CONCENTRATE WITH 27%*
> *EASYGONE CONCENTRATE WEED & GRASS KILLER II*
> *MAGNUM 27*
> *ZEP WEED DEFEAT II*
> *ZEP NON-SELECTIVE WEED KILLER CONCENTRATE*

GLYFOS PRO HERBICIDE
GLYFOS CUSTOM HERBICIDE
GLYFOS CONCENTRATE 25% WEED AND GRASS KILLER
> *DO-IT-BEST CONCENTRATE WEED AND GRASS KILLER*
> *ACE CONCENTRATE WEED AND GRASS KILLER*
> *GREEN THUMB CONCENTRATE WEED AND GRASS KILLER*
> *SCHULTZ WEED & GRASS KILLER CONCENTRATE*

Exhibit 1                                                                                      Page 16

*ULTRA-KILL WEED & GRASS KILLER CONCENTRATE 2*
*GLYFOS READY-TO-USE 2% WEED AND GRASS KILLER*
*BAYER ADVANCED GARDEN POWERFORCE KILLS WEEDS FAST GRASS & WEED*
*KILLER*
ECOPLUG IMPLANT, CONTAINING RODEO HERBICIDE
ETK-2301 HERBICIDE
CLEAROUT 41
*GLY STAR PLUS*
CLEAROUT 41 PLUS
*DREXEL GLYPHOSATE PLUS*
*SHARPSHOOTER HERBICIDE*
*AGRISEL CLEAROUT 41 PRO-PLUS*
*HI-YIELD SUPER CONCENTRATE KILLZALL*
NUFARM CREDIT HERBICIDE
*AGRISOLUTIONS CORNERSTONE*
*AGS GLYPHOSATE (ORGINAL)*
*MAD DOG GLYPHOSATE (ORIGINAL)*
*AGRISOLUTIONS CORNERSTONE*
*AGRISOLUTIONS CORNERSTONE*
*DUPONT ABUNDIT XS HERBICIDE*
*AGS GLYPHOSATE (ORIGINAL)*
NUFARM AQUANEAT HERBICIDE
GLYPHOSATE IPA MANUFACTURING CONCENTRATE
NUFARM CREDIT DUO HERBICIDE
*IAP GLYPHOSATE 4DS DUAL SALT HERBICIDE*
*MH-0732*
*SHOWDOWN*
*SHOWDOWN HERBICIDE*
GLYKAMBA BROADSPECTRUM HERBICIDE
CREDIT MASTER HERBICIDE
RECOIL BROAD SPECTRUM HERBICIDE
NUFARM CREDIT DUO XL HERBICIDE
NUFARM CREDIT SYSTEMIC EXTRA HERBICIDE
NUFARM EXTRA CREDIT 5 HERBICIDE
*AGSCO MAD DOG MAX*
*BUCCANEER 5 GLYPHOSATE HERBICIDE*
NUFARM CREDIT
*RASCAL PLUS HERBICIDE EX*
CREDIT XTREME HERBICIDE
*DUPONT ABUNDIT X-HD HERBICIDE*
*BARBARIAN MAX*
NUFARM EXTRA CREDIT 5
KREDIT HERBICIDE
CREDIT X 4 HERBICIDE
NUFARM CREDIT 5.4 HERBICIDE

Exhibit 1                                                                                           Page 17

ROUNDUP ULTRA
KLEERAWAY READY-TO-USE SPOT WEED AND GRASS KILLER
KLEERAWAY SYSTEMIC WEED & GRASS KILLER2
     *PROLINE RENEGADE*
     *BULLSEYE SYSTEMIC WEED AND GRASS KILLER*
     *CONTACT HERBICIDE #2*
     *GREEN DEATH CONCENTRATE*
     *ZAP-IT CONCENTRATE*
     *ORNERY SYSTEMIC WEED AND GRASS KILLER*
KLEERAWAY GRASS & WEED KILLER2
KLEERAWAY SPOT WEED & GRASS KILLER2
KLEERAWAY CONCENTRATE WEED & GRASS KILLER
GLYPHOSATE 18% CONCENTRATE
     *GARDENER'S CHOICE WEED & GRASS KILLER CONCENTRATE*
     *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER CONCENTRATE*
     *ALBERTSON'S WEED & GRASS VEGETATION KILLER CONCENTRATE*
     *DEXOL WILDFIRE GRASS & WEED KILLER CONCENTRATE*
     *ULTRASTOP WEED & GRASS KILLER CONCENTRATE*
     *BASIC SOLUTIONS WEED & GRASS KILL CO*
     *HOMELIFE WEED & GRASS VEGETATION KILLER CONCENTRATE*
     *ELIMINATOR WEED & GRASS KILLER CONCENTRATE*
GLYPHOSATE 41% SUPER CONCENTRATE
     *MASTE NURSERY KLEEN UP GRASS & WEED KILLER SUPER CONCENTRATE*
     *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER SUPER CONCENTRATE*
     *BONIDE KLEENUP GRASS & WEED KILLER SUPER CONCENTRATE*
     *ELIMINATOR WEED & GRASS KILLER SUPER CONCENTRATE*
     *AGWAY KLEENUP GRASS & WEED KILLER CONCENTRATE*
     *MAXIDE SUPER CONCENTRATE 41% WEED & GRASS KILLER*
     *TOTALKILL (BRAND WEED & GRASS KILLER SUPER CONCENTRATE*
     *SOUTHERN STATES GRASS & WEED KILLER CONCENTRATE*
     *MASTER NURSERY KLEEN UP GRASS & WEED KILLER SUPER CONCENTRATE*
     *KLEENUP GRASS & WEED KILLER 41% SUPER CONCENTRATE*
     *HDX WEED & GRASS KILLER CONCENTRATE*
     *ACE WEED & GRASS KILLER CONCENTRATE*
     *KNOCK OUT WEED & GRASS KILLER SUPER CONCENTRATE*
ROUNDUP READY-TO-USE WEED & GRASS KILLER
     *KGRO FENCE & WALK EDGER READY-TO-USE*
     *ENFORCER ROOTS & ALL ULTIMATE READY-TO-USE*
     *TOTALKILL (BRAND) WEED & GRASS KILLER READY-TO-USE*
     *HDX WEED & GRASS KILLER READY-TO-USE*
ROUNDUP QUIK STIK GRASS AND WEED KILLER
ROUNDUP GRASS AND WEED KILLER
     *ELIMINATOR WEED & GRASS KILLER READY-TO-USE*
     *ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER*
     *MAXIDE READY-TO-USE WEED & GRASS KILLER*

Exhibit 1      Page 18

*EASY GONE READY-TO-USE WEED & GRASS KILLER*
*EASYGONE READY-TO-USE WEED & GRASS KILLER*
*KGRO GRASS & WEED KILLER READY-TO-USE*
*BASIC SOLUTIONS LIQUID EDGER READY-T*
*ELIMINATOR LIQUID EDGER GRASS & WEED KILLER READY-TO-USE*
*ELIMINATOR LIQUID EDGER II GRASS & WEED KILLER READY TO USE*
ROUNDUP FENCE & YARD EDGER 1
ROUNDUP READY-TO-USE WEED & GRASS KILLER 1
ROUNDUP READY-TO-USE WEED AND GRASS KILLER 2
GLYPHOSATE CONCENTRATE HERBICIDE
*EARL MAY KLEENUP GRASS & WEED KILLER CONC.*
*MAXIDE CONCENTRATE WEED & GRASS KILLER*
*ENFORCER ROOTS & ALL ULTIMATE GRASS & WEED KILLER CONCENTRATE*
*BONIDE KLEENUP GRASS & WEED KILLER CONC.*
*EASYGONE CONCENTRATE WEED & GRASS KILLER*
*EASY GONE CONCENTRATE WEED & GRASS KILLER*
*KGRO GRASS & WEED KILLER CONCENTRATE*
*MEIJER KLEEN UP CONCENTRATE*
GLYPHOSATE 27% CONCENTRATE
ROUNDUP GARDEN FOAM WEED & GRASS KILLER
ROUNDUP RAINFAST CONCENTRATE WEED & GRASS KILLER
ROUNDUP RAINFAST SUPER CONCENTRATE WEED & GRASS KILLER
KLEERAWAY CONCENTRATE WEED & GRASS KILLER 1
ROUNDUP CONCENTRATE POISON IVY AND TOUGH BRUSH KILLER 1
ROUNDUP READY-TO-USE EXTENDED CONTROL WEED & GRASS KILLER 1 PLUS WEED
ROUNDUP DRY CONCENTRATE
ROUNDUP WEED & GRASS KILLER1 READY-TO-USE
GLYPHOSATE 27% CONCENTRATE
ROUNDUP WEED & GRASS KILLER SUPER CONCENTRATE
ROUNDUP WEED & GRASS KILLER CONCENTRATE
GLYPHOSATE READY-TO-USE HERBICIDE 2
*MASTER NURSERY KLEEN UP GRASS & WEED KILLER READY-TO-USE*
*BONIDE KLEEN UP GRASS & WEED KILLER READY-TO-USE*
*ULTRASTOP WEED & GRASS KILLER*
*ALBERTSON'S WEED & GRASS VEGETATION KILLER*
*DEXOL WILDFIRE GRASS & WEED KILLER READY TO USE*
*GARDENER'S CHOICE WEED & GRASS KILLER*
*ELIMINATOR WEED & GRASS KILLER II READY-TO-USE*
*AGWAY KLEENUP GRASS & WEED KILLER RTU*
*BASIC SOLUTIONS WEED & GRASS KILLER READY-TO-USE*
*GARDEN RITE GRASS & WEED KILLER*
*ACO GRASS & WEED KILLER READY TO USE*
*MAXIDE READY TO USE WEED & GRASS KILLER II*
*HOMELIFE WEED & GRASS VEGETATION KILLER*
*SOUTHERN STATES GRASS & WEED KILLER READY TO USE*

Exhibit 1                                                                    Page 19

*KGRO GRASS & WEED KILLER 1 READY-TO-USE*
*KLEENUP GRASS & WEED KILLER READY TO USE*
*ORCHARD EST. 1931 GRASS & WEED KILLER READY TO USE*
*ACE READY-TO-USE WEED & GRASS KILLER4*
*KNOCK OUT WEED & GRASS KILLER READY TO USE*
MON 78567 HERBICIDE
ROUNDUP WEED & GRASS KILLER CONCENTRATE PLUS
MON 78365 HERBICIDE
MON 78998 HERBICIDE
ROUNDUP WEED & GRASS KILLER READY-TO-USE PLUS
MON 78906 HERBICIDE
MON 78783 HERBICIDE
MON 78736 HERBICIDE
MON 78868 HERBICIDE
RD 1624 HERBICIDE
GLYPHOSATE RESIDUAL CONCENTRATE
RD 1653 HERBICIDE
RD 1662 HERBICIDE
RD 1686 HERBICIDE
RD 1689 HERBICIDE
RD 1687 HERBICIDE
M1732 HERBICIDE
RD 1734 HERBICIDE
M1739 HERBICIDE
LG737 READY-TO-USE HERBICIDE
LG712 CONCENTRATE HERBICIDE
LG 99 CONCENTRATE HERBICIDE
WEED & GRASS KILLER G1PA2
RD 1870 HERBICIDE
GLYPHOSATE 2% RTU HERBICIDE
NS HERBICIDE CONCENTRATE A
NS HERBICIDE CONCENTRATE B
NS HERBICIDE CONCENTRATE C
NS HERBICIDE READY-TO-USE A
NS HERBICIDE READY-TO-USE B
NS HERBICIDE READY-TO-USE C
*FARMSAVER.COM GLYPHOSATE 4*
*GLYPHOSATE 4*
*QUALI-PRO GLYPHOSATE T&O*
TOMAHAWK 5
TOMAHAWK
GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER
HELOSATE PRO
*GENESIS*
*GENESIS EXTRA*
*CORNERSTONE*

Exhibit 1                                                                                                       Page 20

*CORNERSTONE PLUS*
*CROP-SURE GLYPHOSATE PLUS HERBICIDE*
*CROPSMART GLYPHOSATE 41 PLUS*
*GLY-4 PLUS HERBICIDE*
GLYPHOSATE PRO HERBICIDE
GLYPHOSATE TECHNICAL
GLYPHOSATE 97% TGAI
HELOSATE AQ
HELOSATE EX HERBICIDE
HELOSATE 62% MUP
HELOSATE 70 HERBICIDE
HELOSATE PLUS ADVANCED
*DREXEL IMITATOR X*
*GLY SUPREME PLUS*
*WISE UP PLUS*
*CORNERSTONE PLUS*
HELOSATE AQUATIC AND VM HERBICIDE
HELOSATE 75SG HERBICIDE
*GLYPHOSEL PRO DRY 75 SG TOTAL VEGETATION KILLER*
HELOSATE 5 HERBICIDE
HELOSATE 75 SG PRO HERBICIDE
EXTREME PACKAGED BY HELM
EXTREME HERBICIDE
GLYPHOSATE TECHNICAL
GLYGRAN WDG
EZ-JECT DIAMONDBACK HERBICIDE SHELLS
GLYPHOSATE 41%
TOMAHAWK K
GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET 18% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET 1.92% SYSTEMIC GRASS & WEED KILLER
GREEN LIGHT COM-PLEET SYSTEMIC GRASS & WEED KILLER
ROUNDUP PRO HERBICIDE
ROUNDUP CUSTOM FOR AQUATIC & TERRESTRIAL USE
ROUNDUP PROMAX HERBICIDE
ROUNDUP QUIKPRO HERBICIDE
RANGER PRO HERBICIDE
ROUNDUP PRO CONCENTRATE HERBICIDE
SC 78536 HERBICIDE

Exhibit 1                                                                                    Page 21

EXHIBIT 2

<u>Official Court Approved Legal Notice</u>

# Used Roundup or Other Weed Killer Products?

$1.1 billion settlement provides money to people with Non-Hodgkin's Lymphoma (NHL), funds to increase medical detection of NHL, and research into NHL diagnosis and treatment.

## Attention: Pesticide/Herbicide Applicators, Farmers, Landscapers, Groundskeepers, Agricultural Workers, Heavy Gardeners, and Others

### <u>Immigration Status Does Not Affect Eligibility</u>

The settlement includes anyone who applied/mixed Roundup and certain weed killer products in the United States including those now living abroad ("Roundup users"). Included weed killer products were sold under **Roundup, Landmaster, Honcho, Bullzeye, RT3, Ranger, Lesco, Eliminator, Knockout and Ace.** Lawsuits claim that an ingredient in these products causes Non-Hodgkin's Lymphoma (NHL), a blood cancer. Monsanto, the manufacturer of Roundup, denies that it did anything wrong.

The settlement will establish an independent science panel to determine whether exposure to Roundup and other included weed killers cause NHL. The determination of the science panel will affect the rights of Roundup users in any future lawsuit for claims against Monsanto.

Benefits include:
- **Diagnostic Accessibility Grant Program:** Roundup users who live in medically under-served areas of the United States may be eligible for free NHL diagnostic evaluations.
- **Money for NHL Diagnosis:** $2,000 to $35,000 for eligible Roundup users with NHL diagnosis from 2016 to 2025. Awards are subject to income requirements. The next of kin of deceased Roundup users who qualify for benefits may apply for a payment.

**Register for Benefits:** You must register to be eligible for benefits. Register online or by phone. Help is available if needed.

**Rights Under the Settlement:** If you stay in the settlement you will keep any compensatory claims you have for personal injuries (such as pain and suffering) but you will be bound by the science panel determination. If you want to file your own lawsuit against Monsanto without waiting for the science panel to complete its work, you need to exclude yourself from the settlement. You can also object to the settlement. The deadline for exclusion/objection is **Month XX, 2020**. The Court will hold a hearing on **Month XX, 2020** to consider whether to approve the settlement.

More details, including a list of specific weed killer products and claims being released by the settlement, are available at the website or by calling the toll-free number.

## Need Free Help Registering for Benefits? (Spanish available)
## www.RoundupClass.com 1-8XX-XXX-XXXX

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

# If You Used Roundup or Other Weed Killer Products

## *You Could Be Affected by Class Action Settlement*

- The Monsanto Company ("Monsanto"), manufacturer of Roundup weed killer, has agreed to a $1.1 billion settlement of a class action lawsuit claiming Roundup Products (see Question 4) cause Non-Hodgkin's Lymphoma ("NHL") and other health issues.  Monsanto denies these claims and denies it did anything wrong.

- The settlement class generally includes anyone who, as of June 24, 2020, was exposed to Roundup through mixing or applying the products in the United States, whether or not the individual actually performed the mixing or application.  The settlement class also includes any immediate family members (spouses, parents, or dependent children) or anyone else with a right to file a claim based on their relationship to a settlement class member.  (Immigration status does not affect your ability to be in the settlement class.)

- The settlement will determine, based on a scientific review of existing studies and data, whether Roundup causes NHL, and if so, at what threshold internal dose level (dose greater than xx micrograms/day over a lifetime).  Based on what the science panel determines, settlement class members' rights will be affected in any future lawsuits against Monsanto (or certain other parties) involving claims that Roundup or Roundup Products causes NHL.

- While the science panel is being performed, the settlement also provides for benefits to the class, including $1.1 billion in funding for: (a) interim assistance grants to certain settlement class members with NHL, (b) support for research into diagnosis and treatment of NHL, and (c) funding for medical providers to increase detection of NHL in areas where the availability of diagnostic testing is currently limited.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **REGISTER FOR BENEFITS** | To receive certain settlement benefits, including an interim assistance grant or access to the diagnostic accessibility grant program, you must first register to participate in the settlement.  See Questions 20 to 23. |
| **FILE A CLAIM** | In addition to registration, you will need to file a claim to be eligible to receive an interim assistance grant payment or participate in the diagnostic accessibility grant program.  See Questions 24 to 39. |
| **EXCLUDE YOURSELF** | If you exclude yourself, you will not receive settlement benefits.  You will not be bound by what the science panel determines and will be able to sue Monsanto (or certain other parties) for all claims related to your exposure to Roundup without having to wait for the science panel to complete its work.  See Questions 47 to 50. |
| **OBJECT** | Write to the Court about why you do not like the settlement.  See Question 51. |
| **ATTEND HEARING** | Ask to speak in Court about the fairness of the settlement.  See Question 53. |
| **DO NOTHING** | If you do nothing and the settlement is approved, you will be bound by what the science panel determines and will not receive any settlement benefits.  Your rights to sue Monsanto (or certain other parties) may be limited.  See Question 56. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  If it does, and any appeals are resolved in the settlement's favor, benefits will be distributed to those who qualify.  Please be patient.

| **WHAT THIS NOTICE CONTAINS** |
|---|

**BASIC INFORMATION**..................................................................................................**4**

    1.      What is this notice about?
    2.      What is the lawsuit about?
    3.      What does exposure mean?
    4.      Which Roundup Products are included?
    5.      What is Non-Hodgkin's Lymphoma?
    6.      Why is this a class action?
    7.      Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT?**............................................................................**5**

    8.      How do I know if I am included in the settlement?
    9.      Does my immigration status in the United States affect my ability to be in the settlement class?
    10.    What should I do if I am not sure I am included in the settlement?

**SETTLEMENT BENEFITS** ...............................................................................................**5**

    11.    What are the benefits in the settlement?

**THE SCIENCE PANEL**....................................................................................................**6**

    12.    Who will be on the science panel, and who determines this?
    13.    What will the science panel do?
    14.    How long will the science panel take to complete its work?
    15.    What evidence will the science panel consider?
    16.    What will be the effect of the science panel's determination?
    17.    Can what the science panel determines be appealed?
    18.    How will the science panel be funded?
    19.    What if new evidence is available after the science panel completes its work?

**REGISTER FOR BENEFITS**............................................................................................**8**

    20.    How can I get benefits?
    21.    How will I know if I am registered?
    22.    Can I appeal if my registration is denied or challenged by Monsanto?
    23.    What if the settlement administrator denies my appeal?

**INTERIM ASSISTANCE GRANTS**.....................................................................................**8**

    24.    What is an interim assistance grant?
    25.    Can Derivative Claimants receive interim assistance grants?
    26.    How do I submit an application for an interim assistance grant?
    27.    When will I know if I will get an interim assistance grant?
    28.    Is there a deadline to apply for interim assistance grants?
    29.    Can I appeal a decision to deny or limit the amount of my interim assistance grant?
    30.    Do I have to pay a fee to appeal the results of my interim grant assistance application?
    31.    If my application for an interim assistance grant is denied, can I submit another application?

**DIAGNOSTIC ACCESSIBILITY GRANT PROGRAM**...........................................................**10**

    32.    What is the diagnostic accessibility grant program?
    33.    Why is the diagnostic accessibility grant program included?
    34.    Can I participate in the diagnostic accessibility grant program?
    35.    What do I receive if I participate in the diagnostic accessibility grant program?

**VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX**
**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB**

36.     How do I apply to participate in the diagnostic accessibility grant program?
37.     Is there a deadline to participate in the diagnostic accessibility grant program?
38.     What medical providers can receive grants to participate in the diagnostic accessibility grant program?
39.     How will I find medical providers in my area that participate in the diagnostic accessibility grant program?

**RESEARCH FUNDING PROGRAM**………………………………………………...………**12**
40.     What is the research funding program?
41.     Can I participate in the research funding program?
42.     When will the research funding program begin?

**HOW YOUR LEGAL RIGHTS ARE AFFECTED**……………………………………...………**12**
43.     What am I giving up if I stay in the Settlement Class?

**THE LAWYERS REPRESENTING THE CLASS**…...……………………………...…………**12**
44.     Do I have a lawyer in this case?
45.     What if I have already hired an attorney or filed a lawsuit against Monsanto about exposure to Roundup Products?
46.     How will the lawyers be paid?

**EXCLUDING  YOURSELF FROM THE SETTLEMENT CLASS**…………..………………...………**13**
47.     How do I get out of the settlement?
48.     If I do not exclude myself, can I sue Monsanto for the same thing later?
49.     If I exclude myself, can I still get benefits?
50.     How do I cancel my request for exclusion?

**OBJECTING TO THE SETTLEMENT**……………………………..……….....…..,……**14**
51.     How can I tell the Court if I do not like the settlement?
52.     Can I both object to and exclude myself from the settlement?

**THE FAIRNESS HEARING**……….……………...…………………………………...**15**
53.     When and where will the Court decide whether to approve the settlement?
54.     Do I have to attend the hearing?
55.     May I speak at the hearing?

**IF YOU DO NOTHING**……………………………….………………………..………**15**
56.     What if I do nothing?

**GETTING MORE INFORMATION**………………………..………………………...………**16**
57.     How can I get more information?

**Visit www.RoundupClass.com or Call Toll-Free, 1-8XX-XXX-XXXX**
**Para una notificación en Español, llamar o visitar nuestro sitio web**

3

# BASIC INFORMATION

### 1. What is this notice about?

The Court overseeing this proposed class action settlement authorized this notice to inform you how you may be affected by the settlement. This notice describes the lawsuit, the general terms of the proposed settlement, and what it may mean to you. It also explains how to participate in, or exclude yourself from, the settlement.

### 2. What is this lawsuit about?

Roundup is one of the leading and most widely used herbicide products in the United States. Roundup contains glyphosate, which is also an ingredient in other similar products, (see Question 4). The lawsuits claim that exposure to Roundup can cause a type of cancer called NHL (see Question 5). Monsanto denies this claim and denies any wrongdoing.

### 3. What does exposure mean?

Exposure means that you were exposed when Roundup Products were mixed or applied, whether or not you were the person doing the mixing or application.

### 4. Which Roundup Products are included?

Any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by Monsanto (or any of its direct or indirect subsidiaries) or by any company, individual, or entity to the extent such product contains glyphosate exclusively supplied by Monsanto (or any of its direct or indirect subsidiaries) under any brand name (examples include, but are not limited to, Roundup, Landmaster, Honcho, Bullzeye, RT3, Ranger, Lesco, Eliminator, Knockout and Ace):

- On or before June 24, 2020 or
- After June 24, 2020 if the product has a chemical formulation identical to a Roundup Product.

A list of known Roundup Products is available at the website or by calling the toll-free number.

Glyphosate is an herbicide used to kill certain plants and grasses and is an active ingredient in Roundup Products.

### 5. What is Non-Hodgkin's Lymphoma?

Non-Hodgkin's Lymphoma, also known as NHL, is a type of cancer that starts in white blood cells, called lymphocytes. Lymphocytes are part of the body's immune system and helps it to fight infections and other diseases. It does not include Hodgkin's Lymphoma, multiple myeloma, or generally any leukemia that does not contain "lymphoma," "lymphocytic," or "prolymphocytic" in its name. However, it does include hairy cell leukemia and aggressive NK-cell leukemia.

### 6. Why is this a class action?

In a class action, the plaintiffs who file the lawsuit act as "class representatives" and sue on behalf of themselves as well as other people who have similar claims. This group of people is called the "class," and the people in the class are called "class members." One court resolves the issues for all class members, except for people who exclude themselves from the class.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

4

Judge Vince Chhabria of the United States District Court for the Northern District of California is in charge of this case. The case name is *Ramirez v. Monsanto Company*, No. 3:16-md-02741-VC & 3:19-cv-02224-VC (N.D. Cal.). The people who sued are called the "Plaintiffs." Monsanto is the "Defendant."

| 7. Why is there a settlement? |
| --- |

Plaintiffs and Monsanto agreed to a settlement. It avoids the cost to both sides and risk associated with a trial and ensures that class members receive benefits. The Court has not ruled in favor of Plaintiffs or Monsanto. Class Counsel and the Class Representatives believe the settlement is in the best interest of the class.

# WHO IS PART OF THE SETTLEMENT?

| 8. How do I know if I am included in the settlement? |
| --- |

You are included in the settlement if you:

- You were exposed to Roundup Products through the mixing or application of those products as of June 24, 2020 and you meet one of the following additional requirements: (1) were a citizen or resident of the United States as of June 24, 2020, or (2) you claim the exposure occurred in the United States as of June 24, 2020, or

- You are a spouse, parent, or dependent child of a settlement class member, or have a relationship with a settlement class member that would enable you to bring a lawsuit against Monsanto because that relationship ("Derivative Claimant").

- You are an authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased settlement class members (and/or their estates), or minor or legally incapacitated or incompetent settlement class members. ("Representative Claimant").

You are <u>not</u> part of the settlement class if you already started a lawsuit or hired a lawyer about any personal injury claim from your exposure to Roundup Products.

| 9. Does my immigration status in the United States affect my ability to be in the settlement class? |
| --- |

No. Your immigration status does not affect your ability to be a settlement class member.

| 10. What should I do if I am not sure whether I am included in the settlement? |
| --- |

If you are not sure whether you are included in the settlement, or have any other questions, call the toll-free number, 1-8XX-XXX-XXXX. You may also send questions to the claims administrator at info@roundupclass.com or at Roundup Settlement, P.O. Box 0000, City, ST 00000-0000.

# SETTLEMENT BENEFITS

| 11. What are the benefits of the settlement? |
| --- |

The settlement fund totals $1.1 billion. The settlement benefits include:

- **Diagnostic Accessibility Grant Program:** ($100 million - $250 million) Those who live in medically under-served areas of the United States may be eligible for free NHL diagnostic evaluations (see Question 32).

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

5

- **Research Funding Program:** ($25 million - $75 million) Funds research into diagnosis and treatment of NHL (see Question 40).

- **Interim Assistance Grants:** (minimum of $650 million) Provides payments of $2,000 to $35,000 for eligible settlement class members with NHL diagnosis from 2016 to 2025. Awards are subject to income requirements. Family members of deceased individuals who qualify for benefits may apply for a payment (see Question 24).

- **Science Panel:** Experts will determine whether exposure to Roundup causes NHL, and if so at what threshold internal dose level (dose greater than xx micrograms/day over a lifetime). The science panel will have four years to make their determination. During that time, the settlement, if approved by the Court, will provide benefits to people who applied/mixed Roundup (see Question 13).

The settlement will also pay the cost for notice and to administer the settlement. Monsanto will separately pay attorneys' fees and costs.

## THE SCIENCE PANEL

### 12.  Who will be on the science panel, and who determines this?

The science panel will be made up of five experts who are recognized, independent, and appropriately credentialed epidemiologists, biostatisticians, hematologists/oncologists, and/or toxicologists, or scientific or medical professionals with similar backgrounds and qualifications. The parties (or a third-party agreed-upon by the parties) will select the panel members.

### 13.  What will the science panel do?

The science panel will examine existing scientific evidence specified in the settlement agreement (described below) and determine whether being exposed to Roundup Products through mixing/applying those products can cause NHL in humans and, if so, at what minimum dosage level (micrograms per day above which a person exposed to Roundup Products will develop NHL). The science panel will make its determination based on standards written in the settlement agreement.

The settlement agreement is available at the website, www.RoundupClass.com, or by calling 1-8XX-XXX-XXXX.

### 14.  How long will the science panel take to complete its work?

It is expected that the science panel will finish its work within four years. If the science panel determines that it needs more time to complete its work, it may ask the Court for an extension. If the science panel takes less than four years, the class will still receive $1.1 billion in benefits, although the programs may be changed.

### 15.  What evidence will the science panel consider?

The science panel will consider the following evidence:
- Published United States Environmental Protection Agency ("EPA"), Health Canada, Joint FAO/WHO Meeting on Pesticide Residues ("JMPR"), European Chemicals Agency ("ECHA"), European Food

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

6

Safety Authority ("EFSA"), New Zealand, Japanese, and Australian carcinogenicity assessments of glyphosate, glyphosate-based herbicides, and/or surfactants;
- IARC Monograph 112 regarding glyphosate;
- All published studies and reviews regarding glyphosate, glyphosate-based herbicides, and/or surfactant epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity;
- All registrant-supplied studies and data submitted to EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian pesticide regulatory authorities concerning glyphosate, glyphosate-based herbicides, and/or surfactants regarding epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity, provided that if the science panel believes that the underlying data for a particular study is necessary for a complete review of that study, the Science Panel will not consider that study unless such underlying data are contained within the document productions made as of the Settlement Date by anyone in prior litigation involving Roundup Claims or are otherwise publicly available.

If new evidence (that falls within the terms of what the science panel is allowed to consider) becomes available before it completes its work, the science panel may ask the settlement administrator if it can consider that new evidence provided that the science panel believes the new evidence is material.

| **16.  What will be the effect of the science panel's determination?** |
|---|

If you are a settlement class member and do not exclude yourself from the settlement, your rights in future lawsuits against Monsanto will be affected by the science panel's determination:
- **If the science panel determines exposure to Roundup Products does not cause NHL:** In future lawsuits against Monsanto (or certain other parties), you will <u>not</u> be able to bring any claim in concerning allegations that Roundup Products caused or is able to cause NHL.
- **If the science panel determines exposure to Roundup Products can cause NHL:** The science panel will also state the threshold internal dose level (dose greater than xx micrograms/day) .  If you are able to show that you were exposed more than the threshold internal dose level, in future lawsuits against Monsanto, you will be able to claim Roundup Products caused or is able to cause NHL.  Monsanto will not be able to claim they did not cause NHL.

Please note the science panel's determination about whether exposure to Roundup Products is capable of causing NHL will not bind Monsanto on any other issue and Monsanto will retain all other defenses in any lawsuit you may bring against it related to exposure to Roundup Products.

| **17.  Can what the science panel determines be appealed?** |
|---|

No.  If you remain in the class, you will not be able to appeal the science panel's determination.  The science panel's determination will be final, and all parties involved in this lawsuit, including the settlement class members, will not be able to appeal it.

| **18.  How will the science panel be funded?** |
|---|

The settlement will pay the science panel members and any other science panel costs.

| **19.  What if new evidence is available after the science panel completes its work?** |
|---|

Beginning two years after the science panel reports its determination, either Monsanto or a settlement class member diagnosed with NHL may ask the Court to have the science panel reconsider its determination

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

7

because of new scientific evidence that falls within the terms of what the science panel is allowed to consider, subject to certain limitations specified in the settlement agreement.

If the Court approves the request, the science panel will review the new scientific evidence and decide if it wants to change its determination.  If the science panel finds the new evidence changes its original determination, it will submit a written report.  The new determination will then be used going forward and will have no effect on any previous lawsuits that used the original determination.

# REGISTER FOR BENEFITS

| **20.  How can I get benefits?** |
| --- |

You have to register and provide information about your exposure to Roundup Products.  You can register online at www.RoundupClass.com or call 1-8XX-XXX-XXXX and ask to register by phone or mail.  To receive an interim assistance grant or participate in the diagnostic accessibility grant program, you must first register to participate in the settlement.

The deadline to register depends on the specific benefit you want to request, as well as the date the settlement is granted final approval and any appeals are resolved ("Effective Date"):

- **Diagnostic Accessibility Grant Program**: The deadline to register is 320 days after the Effective Date.
- **Interim Assistance Grant**: The deadline to register is 135 days after the Effective Date of the settlement or the date that the settlement class member is diagnosed with NHL, whichever is later.

| **21.  How will I know if I am registered?** |
| --- |

You will receive a letter stating whether your registration was approved within 30 days after the settlement administrator receives your registration documents.

| **22.  Can I appeal if my registration is denied or challenged by Monsanto?** |
| --- |

Yes, you can appeal if your registration is denied or Monsanto challenges your registration.  More information about how to appeal will be included in the letter you receive about your registration results.

| **23.  What if the settlement administrator denies my appeal?** |
| --- |

The settlement administrator decision about your appeal will be final, and you cannot appeal it.

# INTERIM ASSISTANCE GRANTS

| **24.  What is an interim assistance grant?** |
| --- |

An interim assistance grant is provided to assist lower income settlement class members.  These one-time grants (based on year of qualifying diagnosis) can be applied for on behalf of living and deceased settlement class members.  The settlement class member must have received a qualifying diagnosis of NHL at some point between 2016 and the date the science panel makes its determination (estimated to occur in 2025).  A qualifying diagnosis includes documentation of an NHL diagnosis in a pathology report by a Doctor of Medicine or Osteopathy who is board certified in pathology.

**VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX**
**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB**

8

These grants will be available to settlement class members who have income at or below 138% to 250% of the level provided in the Poverty Guidelines[1] for each year of qualifying diagnosis.  Ranges for the grants by year of diagnosis are provided below:

| Year of Qualifying Diagnosis | Household Income At or Below This Level in Poverty Guidelines | Example of Maximum Income Levels for 4-Person Family (Alaska & Hawaii levels are higher) | Range of Grant Payment |
|---|---|---|---|
| 2016 | 138% | $33,534 | $5,000-$8,000 |
| 2017 | 138% | $33,948 | $10,000-$20,000 |
| 2018 | 200% | $50,200 | $16,000-$24,000 |
| 2019 | 250% | $64,375 | $25,000-$35,000 |
| 2020 | 250% | $65,500 | $25,000-$35,000 |
| 2021 | 250% | Unknown | $20,000-$30,000 |
| 2022 | 200% | Unknown | $10,000-$15,000 |
| 2023 | 138% | Unknown | $6,000-$10,000 |
| 2024 | 138% | Unknown | $4,000-$8,000 |
| 2025 | 138% | Unknown | $2,000-$4,000 |

**Whether the settlement class member has or had health insurance will not impact if they qualify for a grant or their final payment amount.**

When awarding grants, administrators may make exceptions to the criteria noted above based on the settlement class member's individual circumstances.  They may make exceptions based on items such as, required household income levels, grant payment ranges, and instances where a settlement class member received a qualifying diagnosis in years other than 2016 to 2025.

**25.  Can Derivative Claimants receive interim assistance grants?**

No.  Derivative Claimants (spouse, parent, or dependent child of a settlement class member, or people who have a relationship with a settlement class member that would enable them to bring a lawsuit against Monsanto because of the relationship) do not qualify to receive interim assistance grants.  However, the next of kin of a deceased settlement class member, who is a Representative Claimant, may qualify for an interim assistance grant, if other criteria are met.

**26.  How do I submit an application for an interim assistance grant?**

To apply for an interim assistance grant, you must submit the required information to the claims administrator online at www.RoundupClass.com or by mail.  More information about how to apply is available at www.RoundupClass.com or by calling 1-8XX-XXX-XXXX.

---

[1] Poverty Guidelines vary by year and are based on number of people in household.  More information is available at https://aspe.hhs.gov/poverty-guidelines.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

9

Your application will not be complete until the claims administrator receives all of the required information. Applications for interim assistance grants must be complete before or on the date when the science panel delivers its determination, or it will not be considered.

### 27.  When will I know if I will get an interim assistance grant?

The claims administrator will review your application and decide if you will get an interim assistance grant, no later than 60 days from the date they received your complete application that includes all the required information and proof of exposure.

### 28.  Is there a deadline to apply for interim assistance grants?

Yes.  To apply for an interim assistance grant, you must submit the required information to the claims administrator within 180 days after: (a) the date that you are diagnosed with NHL, or (b) the date the settlement becomes final and all appeals have been resolved, whichever is later.  In addition, to qualify for an interim assistance grant, you must also have registered to be a settlement class member (see Question 20).

The last date to submit a complete application for an interim assistance grant will be the date when the science panel reports its determination.

### 29.  Can I appeal a decision to deny or limit the amount of my interim assistance grant?

Yes, the settlement establishes a process to appeal the results of your interim assistance grant application. More information will be included in the letter you receive about the decision on your grant application.

### 30.  Do I have to pay a fee to appeal the results of my interim grant assistance application?

In order to appeal the results of your interim assistance grant application, you must pay a $50 fee to the claims administrator.  The fee will be refunded if your appeal is successful or will be transferred into the settlement fund if your appeal is unsuccessful.  You may also request that the fee be waived due to financial hardship.

### 31.  If my application for an interim assistance grant is denied, can I submit another application?

Yes.  Even if you are not awarded an interim assistance grant, you may submit additional applications in the future.  However, the claims administrator may stop you from submitting applications that do not contain new information (or information that is significantly different than what you already submitted).

## DIAGNOSTIC ACCESSIBILITY GRANT PROGRAM

### 32.  What is the diagnostic accessibility grant program?

The diagnostic accessibility grant program distributes grants to medical providers in certain geographic regions across the United States.  It will fund and facilitate diagnostic evaluations of settlement class members for NHL or the cancers described in Question 5.

### 33.  Why is the diagnostic accessibility grant program included?

The diagnostic accessibility grant program is intended to help address regional differences that affect settlement class members ability to get diagnostic evaluations for NHL during the time the science panel is completing its work.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

10

### 34.  Can I participate in the diagnostic accessibility grant program?

You can participate in the diagnostic accessibility grant program if you have successfully registered to participate in the settlement, have not been diagnosed with NHL, have been exposed to Roundup Products through the application of those products and submit an application that is approved.  The application is available at the website or by calling the toll-free number.

If you are a spouse, parent, or dependent child of a settlement class member, or have a relationship with a settlement class member that would enable you to bring a lawsuit against Monsanto because that relationship, you cannot participate in the diagnostic accessibility grant program unless you independently satisfy all the criteria for participation in the program as noted above.

### 35.  What do I receive if I participate in the diagnostic accessibility grant program?

If you participate in the diagnostic accessibility grant program, you may be able to receive a free diagnostic evaluation for NHL.

If you qualify to participate and your application to participate in the diagnostic accessibility grant program is approved, it does not guarantee that you will receive any particular type of medical test or that you will be able to obtain a diagnostic evaluation from the medical provider of your choosing.  A list of available medical providers will be available only at www.RoundupClass.com or by calling the toll-free number.

### 36.  How do I apply to participate in the diagnostic accessibility grant program?

You can submit an application online at www.RoudupClass.com or by mail.  Your application must include the registration number you received when you registered to participate in the settlement, confirmation that you have not previously been diagnosed with NHL, and proof that you have been exposed to Roundup Products. The different types of proof that can be submitted is listed in the application, available online or by calling the toll-free number.

### 37.  Is there a deadline to participate in the diagnostic accessibility grant program?

Yes.  To participate in the diagnostic accessibility grant program, you must submit your application within one year from the date the settlement is granted final approval and all appeals have been resolved. You must also have registered to be a settlement class member (see Question 20).

### 38.  What medical providers can receive grants to participate in the diagnostic accessibility grant program?

Medical providers who qualify under the terms of the settlement agreement and the diagnostic accessibility grant program will be able to apply to receive grants under the diagnostic accessibility grant program.

### 39.  How will I find medical providers in my area that participate in the diagnostic accessibility grant program?

After the settlement becomes final, an outreach program will inform settlement class members who reside in the specific geographic areas where the NHL diagnostic evaluations are available and will identify medical providers in those areas.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

11

# RESEARCH FUNDING PROGRAM

| **40. What is the research funding program?** |
| --- |

The research funding program is a program that will be established to fund medical and/or scientific research into diagnosis and treatment of NHL.

| **41. Can I participate in the research funding program?** |
| --- |

Settlement class members may have the opportunity to actively participate in the research conducted in the research funding program. The lawyers for the class (known as "Class Counsel") and Monsanto's counsel will create a process for you to participate if you qualify and want to participate. You will not receive any money if you participate in the research funding program and no settlement class member is guaranteed to be able to participate in the research conducted through the program.

| **42. When will the research funding program begin?** |
| --- |

The research funding program will begin after the Court issues an order and judgment finally approving the settlement. Class Counsel and Monsanto's counsel will then request proposals for medical and/or scientific research into the diagnosis and treatment of NHL from medical and scientific professionals and entities.

# HOW YOUR LEGAL RIGHTS ARE AFFECTED

| **43. What am I giving up if I stay in the settlement?** |
| --- |

If the settlement is approved, settlement class members will:

- Be bound by what the science panel determines about whether exposure to Roundup Products can cause NHL, and if so, at what threshold internal dose level (dose greater than xx micrograms/day over a lifetime). This means you will not be able to claim anything different than what the science panel determines in future lawsuits against Monsanto (or certain other parties).
- Not be able to begin or continue to sue Monsanto (or certain other parties) about claims related to being exposed to Roundup and NHL until the science panel completes its work and submits its report to the Court.
- Not be able to claim punitive damages or seek medical monitoring in lawsuits against Monsanto (or certain other parties). Generally, punitive damages are not intended to pay people for their losses, but rather to provide a monetary award that is used to discourage a defendant and others from committing similar acts in the future.
- Not be able to bring claims against Monsanto (or certain other parties) related to your participation, if any, in the Diagnostic Accessibility Grant Program, the administration of certain liens, certain government reimbursements, and the administration of the settlement agreement.
- Not be able to bring any claims against the science panel.

Section 15 of the settlement agreement contains the complete text and details of what settlement class members give up unless they exclude themselves from the settlement, so please read it carefully. The Settlement Agreement is available at www.RoundupClass.com and describes the claims that you give up if you remain in the settlement.

You will keep your right to sue Monsanto about any compensatory claims (such as pain and suffering) you have for personal injuries related to exposure to Roundup Products.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

12

## THE LAWYERS REPRESENTING THE CLASS

| **44.  Do I have a lawyer in this case?** |
| --- |

Yes.  The Court has appointed a number of lawyers to represent all settlement class members as "Class Counsel," and "Subclass Counsel" without charge to you. They are:

| | |
| --- | --- |
| Robert L. Lieff<br>Elizabeth J. Cabraser<br>Steven E. Fineman<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111<br>Telephone: 415.956.1000 | James R. Dugan, II<br>TerriAnne Benedetto<br>THE DUGAN LAW FIRM, APLC<br>One Canal Place<br>365 Canal Street, Suite 1000<br>New Orleans, LA 70130<br>Telephone: 504.648.0180 |
| William M. Audet<br>AUDET & PARTNERS, LLP<br>711 Van Ness, Suite 500<br>San Francisco, CA 94102<br>Telephone: 415.568.2555 | Samuel Issacharoff<br>40 Washington Square South<br>Suite 411J<br>New York, NY 10012<br>Telephone: 212.998.6580 |

You will not be charged for contacting these lawyers.  If you have any questions about the settlement, you can talk to the attorneys from Lieff Cabraser Heimann & Bernstein, LLP and The Dugan Law Firm, APLC or you can hire your own lawyer at your own expense.

- **Subclass 1:**  If you have been diagnosed with NHL as of the date of the settlement agreement in this case, you are represented by Class Counsel and Subclass Counsel.

- **Subclass 2:** If you have not been diagnosed with NHL as of the date of the settlement agreement in this case, you are represented by Class Counsel and Subclass Counsel.

| **45.  What if I have already hired an attorney or filed a lawsuit against Monsanto about exposure to Roundup Products?** |
| --- |

If, before June 24, 2020, you began a lawsuit or hired a lawyer about any personal injury claims about exposure to Roundup Products in the United States, you are not a member of the settlement class, and you are not affected by this notice.

| **46.  How will the lawyers be paid?** |
| --- |

You do not need to separately pay the lawyers representing the settlement class.  Monsanto will pay attorneys' fees and costs in addition to the benefits it is providing to the settlement class members in this settlement.  At a later date to be determined by the Court, Class Counsel and Subclass Counsel will ask the Court to  award attorneys' fees and reasonable costs.  Counsel will also request that the Court award payments to the class and subclass representatives.  At that time, the motion will be posted on the settlement website, www.RoundUpClass.com and settlement class members will have an opportunity to comment on and/or object to this request.  The Court must approve the request for the award of attorneys' fees and costs.

**VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX**
**PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB**

13

**Any attorneys' fees and costs awarded by the Court will be paid separately by Monsanto and will not reduce benefits to settlement class members.**

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want benefits from this settlement, but you want to keep the right to sue Monsanto on your own about all the legal issues in this case, then you must take steps to get out of the settlement.  This is called excluding yourself – or it is sometimes referred to as "opting out" of the settlement.

| 47.  How do I get out of the Settlement Class? |
|---|

To exclude yourself (or "opt-out") from the settlement class, you must mail a letter or written request on or before **Month XX, 2020**.  You can also exclude yourself online at www.RoundupClass.com. Your request must include:

- Your name, address, telephone number; and date of birth;
- A copy of your driver's license, other government-issued identification, or the statement "Under penalty of perjury, no such identification exists.  I do not have a driver's license or government-issued identification" along with your social security number (or other government-issued identification number);
- A statement saying, "I wish to exclude myself from the Settlement Class in *Robert Ramirez, et al.* v. *Monsanto Company*, No. 3:16-md-02741-VC & 3:19-cv-02224-VC;" and
- Your signature (you must personally sign the letter).

**Note:** Electronic signatures in any form will not be accepted.

Your exclusion request must be postmarked no later than **Month XX, 2020**.  Send your request to:

Roundup Settlement
P.O. Box XXXX
City, ST XXXXX-XXXX

| 48.  If I do not exclude myself, can I sue Monsanto for the same thing later? |
|---|

No.  Unless you exclude yourself, you will remain in the settlement class and give up any right to separately sue Monsanto for the claims made in this case.

| 49. If I exclude myself, can I still get benefits? |
|---|

No.  If you exclude yourself, you will not get any benefits from the settlement.  However, you can choose to cancel your exclusion request so you can receive benefits (*see* Question 50).

| 50. How do I cancel my request for exclusion? |
|---|

If you exclude yourself from the settlement class, you can cancel your previous exclusion request by writing to the address in Question 47.   Your request to cancel your exclusion request must be received before the Court grants final approval of the settlement and all appeals have been resolved.

## OBJECTING TO THE SETTLEMENT

You have the right to tell the Court that you do not agree with the settlement or any or all of its terms.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

14

**51.  How can I tell the Court if I do not like the settlement?**

As a settlement class member, you have a right to object to or comment on any part of the proposed settlement.  The Court will consider your views when deciding to approve the settlement.  You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement.  If the Court does not approve the settlement, no settlement benefits will be paid, and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing.  However, this requirement may be excused if you show good cause as to why you were unable to submit your objection in writing.  To object, you must send a letter stating that you object to *Robert Ramirez, et al.* v. *Monsanto Company*, No. 3:16-md-02741-VC & 3:19-cv-02224-VC.  Your written objection must also include:

- Your name, address, telephone number, and date of birth;
- Written evidence that shows you are a settlement class member;
- A written statement of your objection(s), including any specific reasons, legal support, and/or any supporting evidence you wish to bring to the Court's attention;
- Any other supporting papers, materials, or briefs that you want the Court to consider;
- A written statement listing: how many times that you or the lawyer representing you have filed an objection to any other class action settlement in the previous five years, the names of the lawsuits in which the objections were filed, what the objections were about, and how the objections were resolved;
- A statement of whether you intend to appear or speak at the Fairness Hearing; and
- Your signature (you must personally sign the letter).

You must mail your objection or deliver it in-person to the Court at the address below:

| COURT |
| --- |
| Class Action Clerk |
| United States District Court |
| Northern District of California |
| Phillip Burton Federal Building & United States Courthouse |
| 450 Golden Gate Avenue |
| San Francisco, CA 94102 |

Objections must be filed or postmarked on or before **Month XX, 2020**.

If you hired a lawyer to represent you and file your objection, your attorney must:

- Follow the steps to object to the settlement as listed above;
- File a notice of appearance with the Court by **Month XX, 2020**; and
- File a declaration stating every settlement class member that he/she is representing/filing an objection or a copy of the contract between them and each settlement class member.

If you make a good-faith attempt to follow the above procedures, but do not comply with one or more of the specific requirements, your objection will still be considered by the Court.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

15

**52.  Can I both object to and exclude myself from the settlement?**

No.  If you exclude yourself you will no longer be part of the settlement.  In order to object to the settlement, you must be a member of the settlement class.

## THE FAIRNESS HEARING

The Court will hold a final hearing (called a Fairness Hearing) to decide whether to finally approve the settlement.  You may attend and ask to speak, but you don't have to.

**53.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at **X x.m.** on **Month XX, 202X**, at the United States District Court for the Northern District of California, in Courtroom X, Phillip Burton Federal Building & United States Courthouse, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102.

The hearing may be moved to a different date or time without additional notice, so check www.RoundupClass.com or the Court's Public Access to Court Electronic Records (PACER) system for updates.  At the Fairness Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections or comments, the Court will consider them at that time.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

The Court will consider the request for attorneys' fees and reasonable costs by Class Counsel (*see* Question 46) after the Fairness Hearing, at a time that will be set at a later date by the Court.

**54.  Do I have to attend the hearing?**

No.  Class Counsel and Subclass Counsel will attend the hearing and answer the Court's questions.  If you sent or filed an objection, the Court will consider it even if you do not attend, as long as it was sent on time.  You may, however, attend the Final Approval Hearing at your own expense, or pay your own lawyer to attend.

**55.  May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include a statement in your written objection that you intend to appear at the hearing.  You cannot speak at the hearing if you exclude yourself from the class.

## IF YOU DO NOTHING

**56.  What if I do nothing?**

If you do nothing, you will be a member of the settlement class.  You will be bound by the science panel's determination; you will not be able to sue the Monsanto Parties or Related Parties in the future for punitive damages (see Question 43) and will not receive an interim assistance grant or be able to participate in the diagnostic accessibility grant program.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

16

## GETTING MORE INFORMATION

| 57. Where can I get more information? |
| --- |

This Notice summarizes the proposed settlement.  More details are provided in the settlement agreement, available at the website.  You can get more information, including answers to questions about the settlement and important documents about the case, including a full copy of the settlement agreement, any motions for approval and attorney's fees, and the Court's order approving the settlement, by visiting www.RoundupClass.com, emailing info@RoundupClass.com, calling 1-8XX-XXX-XXXX, or writing to Roundup Settlement, P.O. Box 0000, City, ST 00000-0000.

You may also be able to access the settlement agreement and other Court documents by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

VISIT WWW.ROUNDUPCLASS.COM OR CALL TOLL-FREE, 1-8XX-XXX-XXXX
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO SITIO WEB

17

EXHIBIT 3

**FILED UNDER SEAL**

EXHIBIT 4

## EXHIBIT 4: SCIENCE PANEL DETERMINATION FORM

This form shall be filled out by the Science Panel without attribution to any individual Science Panel member.

After you have concluded the Scientific Analysis and reached the Science Panel Determination, you must fill out this form and deliver it to the Settlement Administrator, as set forth in Section 6.3(a) of the Settlement Agreement.  You must answer the questions provided and in answering the questions you may only select from the specific answer choices provided for on this form.

All questions must be answered by majority vote of the Science Panel, as set forth in Section 6.2(a) of the Settlement Agreement.

**Question No. 1:**

Can exposure to Roundup Products through the application of Roundup Products cause NHL in humans, as assessed according to the criteria in Section 6.2(b) and Section 6.2(d) of the Settlement Agreement? [*]

Yes: ____          No: ____

If you answered "No" to question 1, in the chart below check "No" and enter "Causation Not Established Finding," sign the form, and deliver it to the Settlement Administrator.  Do not answer question 2 if you answer "No" to question 1.

If you answered "Yes" to question 1, proceed to question 2.

**Question No. 2:**

If you answered "Yes" to question 1, at what threshold internal dose level (dose greater than xx micrograms/day over a lifetime) can exposure to Roundup Products through the application of Roundup Products cause NHL in humans, as assessed according to the criteria in Section 6.2(c) and Section 6.2(d) of the Settlement Agreement?

Your answer must be recorded in the chart below as follows:

---

[*] References to "exposure to Roundup Products through the application of Roundup Products" throughout this Exhibit 4 include exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

Exhibit 4                                                                        Page 1

If you conclude that exposure to Roundup Products through the application of Roundup Products can cause NHL in humans at or above a threshold internal dose level (dose greater than xx micrograms/day over a lifetime), as assessed according to the criteria in Section 6.2(c) and Section 6.2(d) of the Settlement Agreement, in the chart below check "Yes," enter the specific threshold internal dose level (dose greater than xx micrograms/day over a lifetime), and enter "Causation Established Finding." You must set forth a threshold internal dose level for NHL if you have checked "Yes." If you are unable to determine a threshold internal dose level for NHL and you have checked "Yes," change your answer to "No" and enter "Causation Not Established Finding." Sign the form, and deliver it to the Settlement Administrator.

*       *       *

|  | Yes | No | Threshold Internal Dose Level | Finding Type:<br>• Causation Not Established Finding<br>• Causation Established Finding |
|---|---|---|---|---|
| NHL |  |  |  |  |

On behalf of the Science Panel, the undersigned hereby certifies that such determinations were duly made:

_____

Science Panel Chairperson

Dated:  _____

Exhibit 4                                                                                                    Page 2

EXHIBIT 5

**EXHIBIT 5: DIAGNOSTIC ACCESSIBILITY GRANT PROGRAM SERVICE AREAS**

The Diagnostic Accessibility Grant Program (DAGP) is intended to help address regional disparities in access to NHL Diagnostic Evaluation among Settlement Class Members during the pendency of the Scientific Analysis, through the distribution of grants to medical providers in the service areas identified through the three-part process in this Exhibit 5.  This Exhibit 5 sets forth the process by which the DAGP Administrator will develop the List of Service Areas.  The DAGP Administrator shall select DAGP Grantees (and determine DAGP Grant amounts) pursuant to the guidelines set forth below with the objective of increasing the availability of NHL Diagnostic Evaluation to the greatest number of DAGP Eligible Settlement Class Members, subject to the limitations set forth in Section 8.3(b).

**Part 1.  Identification of Geographic Areas with the Greatest Number of DAGP Eligible Settlement Class Members.**

(a)     Geographic Areas with High Populations of Putative Settlement Class Members with High Likelihood of Exposure.  The DAGP Administrator has identified regions with high populations of putative Settlement Class Members with high likelihoods of exposure utilizing occupational data provided by the Settlement Class Notice Agent, which includes nationwide geographical information regarding where farmworkers and certain non-farmworkers (for example, landscaping and groundskeeping workers) reside or work in the highest concentrations.  Table 1 lists geographic areas with high populations of putative Settlement Class Members with high likelihood of exposure based upon the following two factors:

(i)     Density.  The density of putative Settlement Class Members with high likelihood of exposure was calculated from the sum of at-risk farmworkers and landscapers / groundskeepers, based on data from the USDA and the Bureau of Labor Statistics. Each of the geographic areas listed in Table 1 has a minimum of (approximately) twenty thousand (20,000) for the at-risk population.[*]

(ii)     Clusters.  Where possible, geographic areas in Table 1 are sized using a one-hundred- to one-hundred-and-fifty-mile (100- to 150-mile) radius from the largest clusters of Settlement Class Members in the geographic area, with each node in the cluster consisting of a county.[†]

Part 1 is only a study of geographic areas for purposes of determining which areas have the highest numbers of putative Settlement Class Members with high likelihood of exposure.  Part 1 does not identify nor determine any service areas.  In Part 2, disparities in access to NHL Diagnostic Evaluations within and across the geographic areas identified in Part 1 will occur and thereafter service areas shall be selected.

Table 1: Geographic Areas with High Populations of Putative Settlement Class Members
with High Likelihood of Exposure

---

[*] One geographic area (North Florida) is below this minimum.

[†] Some areas include a very small percentage of at-risk population outside of the one-hundred- to one-hundred-and-fifty-mile (100- to 150-mile) radius.

Exhibit 5                                                                                                    Page 1

| Geographic Area | TOTAL USDA Farm Labor and BLS Landscapers / Groundskeepers |
|---|---|
| SOCAL | 121,804 |
| YAKIMA | 116,912 |
| NORTHEAST | 104,282 |
| MID-ATLANTIC | 92,372 |
| WESTERN_LAKE_MICHIGAN | 82,372 |
| FRESNO | 82,195 |
| CENTRAL_COAST | 65,035 |
| CENTRAL_FLORIDA | 65,035 |
| SACRAMENTO | 52,171 |
| NORTHERN_PLAINS | 50,298 |
| MICHIGAN | 47,967 |
| SOUTH_FLORIDA | 47,303 |
| PORTLAND | 46,862 |
| DALLAS | 44,691 |
| EAST_TEXAS | 43,065 |
| ERIE_ONTARIO | 39,385 |
| SO_IDAHO-UTAH | 35,078 |
| PHOENIX_EL_PASO | 31,589 |
| SOUTH_TEXAS | 31,463 |
| OHIO_RIVER | 27,861 |
| ATL_NASHVILLE | 27,298 |
| CAROLINA_EAST | 26,368 |
| WESTERN_GATEWAY | 25,712 |
| COLORADO | 20,930 |
| NORTH_TEXAS | 20,603 |
| CAROLINA_WEST | 20,497 |
| WESTERN_WASHINGTON | 20,207 |
| NORTH_FLORIDA | 18,848 |
| **Total Assigned to Geographic Areas** | **1,408,204** |
| **Total Unassigned to Geographic Area** | **42,403** |
| **% Assigned to Geographic Area‡** | **97%** |

---

‡ Over 97% of the estimated at-risk population of farmworkers and landscapers/groundskeepers are accounted for in geographic areas in Table 1, with less than 3% unassigned to one of the areas.

Exhibit 5                                                                                             Page 2

Figures 1 through 4 further illustrate the density and clusters within and among geographic areas listed in Table 1.

Figure 1: Density of USDA Farm Labor and BLS Landscapers / Groundskeepers



Figure 2: Distribution of Clusters within the Table 1 Geographic Areas.
Each circle is a county.

Exhibit 5                                                                                                                                    Page 3

Figure 3: Geographic Distribution of Population, wherein larger and darker circles denote larger populations of USDA Farm Labor and BLS Landscapers / Groundskeepers



Figure 4: Assigned and Unassigned Populations, wherein red circles denote populations of USDA Farm Labor and BLS Landscapers / Groundskeepers unassigned to a Table 1 geographic area.



(b) <u>Geographic Areas with High Populations of Registered Settlement Class Members</u>. The DAGP Administrator may identify additional Part 1 geographic areas as actual Settlement Class Member data become available pursuant to the registration process described in Article V.

Exhibit 5                                                                                                                    Page 4

**Part 2.  Identification of Disparities in Access to NHL Diagnostic Evaluation Within and Among Geographic Areas Identified in Part 1**.

(a)     <u>Limited NHL Diagnostic Evaluation Capability and Capacity</u>. The DAGP Administrator shall prioritize those geographic areas identified in Part 1 based upon the capability or capacity to deliver or coordinate NHL Diagnostic Evaluations to the population of Settlement Class Members within and across the areas utilizing factors which include but are not limited to the following:

(i)     The number of primary health providers and service options;

(ii)     The number of clinical and medical personnel or diagnostic equipment required to conduct the forecasted demand for NHL Diagnostic Evaluations;

(iii)     The proximity of such providers and services to Settlement Class Members and the reasonableness of required travel time to access those providers and services; and

(iv)     Whether the population in the area is designated, or has been designated in the past, as a medically underserved population by the United States Department of Health and Human Services, or federal, state, or local public health agencies.

(b)     <u>Cultural and Economic Barriers</u>.  The DAGP Administrator shall further prioritize those geographic areas identified in Part 1 by the presence of cultural and economic barriers which include but are not limited to the following:

(i)     Economic resources to pay for NHL Diagnostic Evaluation (e.g., a population's relative poverty rate);

(ii)     Language (e.g., non-English speaking populations residing or working in the United States);

(iii)     Limited knowledge of health providers or services;

(iv)     Mobility (e.g., many agricultural workers do not live near where they work, or they move regularly from one worksite to another); and

(v)     The existence of unusual local conditions that are a barrier to access to NHL Diagnostic Evaluation for Settlement Class Members.

**Part 3.  Selection of Service Areas.**

(a)     Within ninety (90) days following entry of the Preliminary Approval Order, the DAGP Administrator shall publish the List of Service Areas.

(b)     Within eight (8) months following the Effective Date, the DAGP Administrator may recommend, subject to the approval of the Settlement Administrator, the inclusion of additional service areas (and/or the elimination of any initial service areas).

Exhibit 5                                                                                                          Page 5

(c)     A Settlement Class Member may petition the DAGP Administrator to add additional service areas, subject to the approval of the Settlement Administrator.

Exhibit 5                                                                                                    Page 6

EXHIBIT 6

## EXHIBIT 6: QUALIFYING DIAGNOSIS AND QUALIFIED PHYSICIANS FOR INTERIM ASSISTANCE GRANTS

(a)      A "Qualifying Diagnosis" means (i) for living Settlement Class Members, a diagnosis of NHL, documented in an anatomic pathology report signed by the Diagnosing Physician; or (ii) for Settlement Class Members deceased prior to the Effective Date, a diagnosis of NHL, documented in an anatomic pathology report, which was produced while the Settlement Class Member was living, and which was signed by the Diagnosing Physician.

(b)      A "Diagnosing Physician" means a doctor of medicine or osteopathy who has a current American Board of Medical Specialties board certification in Pathology as of the date of the pathology report referenced in paragraph (a)(i) and (a)(ii) of this Exhibit 6.  The Claims Administrator may, subject to the advance approval of the Settlement Administrator in the Settlement Administrator's discretion, accept a Qualifying Diagnosis from an otherwise qualified Diagnosing Physician whose board certification is from a current American Osteopathic Association board certification in Pathology as of the date of the pathology report referenced in paragraph (a)(i) and (a)(ii) of this Exhibit 6, rather than a American Board of Medical Specialties board certification in Pathology.

(c)      A "Qualified Physician" means a doctor of medicine or osteopathy who (i) has an active, unencumbered license to practice medicine in the state where the Settlement Class Member at issue was diagnosed with or treated for NHL; (ii) relied on the Qualifying Diagnosis and treated the Settlement Class Member at issue for the Qualifying Diagnosis; (iii) has taken care of patients at least twenty (20) hours per week for the fifty-two (52) weeks prior to the date that he or she relied on the Qualifying Diagnosis and treated the Settlement Class Member at issue for the Qualifying Diagnosis; (iv) has an American Board of Medical Specialties board certification in Hematology or Medical Oncology that is current as of the date he or she certifies the Qualified Physician Certification; and (v) was so licensed and certified on the date that he or she relied on the Qualifying Diagnosis and treated the Settlement Class Member at issue for the Qualifying Diagnosis.

Exhibit 6                                                                                                    Page 1

EXHIBIT 7

## EXHIBIT 7: INTERIM ASSISTANCE GRANT GUIDELINES

**Part 1.   Eligibility.**   To be eligible to receive an Interim Assistance Grant, Settlement Class Members and Representative Claimants must meet the Eligibility Criteria set forth in Section 10.1. A Settlement Class Member or Representative Claimant who does not meet the Eligibility Criteria can apply for a determination that their individual circumstances warrant an Interim Assistance Grant, pursuant to Section 10.4.

**Part 2.  Standards for Interim Assistance Grant Determination.**   The following chart identifies the primary standards for determining a claimant's receipt of an Interim Assistance Grant.

(a)   "Year of Qualifying Diagnosis" refers to the earliest year a Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) received a Qualifying Diagnosis, as set forth in Exhibit 6.  Notwithstanding the date ranges in this Exhibit 7, Interim Assistance Grants are not available for any Qualifying Diagnosis received after the Science Panel delivers the Science Panel Determination to the Settlement Administrator.

(b)   "Assistance Thresholds" refers to the income criteria that must be satisfied in order for a Settlement Class Member or Representative Claimant to receive an Interim Assistance Grant, depending on the applicable Year of Qualifying Diagnosis.  The Assistance Thresholds shall be applied as follows:

(i)   Living Settlement Class Members.  If the Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) is living, the Assistance Thresholds shall be measured with respect to the living Settlement Class Member's household income.

(ii)   Deceased Settlement Class Members.  If the Settlement Class Member on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act is deceased, the Assistance Thresholds shall be measured with respect to the household income of the Settlement Class Member's next of kin.  If the deceased Settlement Class Member has no next of kin, the Representative Claimant will not qualify for an Interim Assistance Grant.

(c)   "Presumptive Ranges" refers to the specific presumptive ranges of the amount of an Interim Assistance Grant the Claims Administrator may award a Settlement Class Member or Representative Claimant who satisfies the applicable Assistance Thresholds.

Exhibit 7                                                                                                          Page 1

| Year of Qualifying Diagnosis | Assistance Thresholds | Presumptive Ranges |
|---|---|---|
| 2016 | Household income is at or below 138% of the level set forth in the Poverty Guidelines | $5,000 - $8,000 |
| 2017 | Household income is at or below 138% of the level set forth in the Poverty Guidelines | $10,000 - $20,000 |
| 2018 | Household income is at or below 200% of the level set forth in the Poverty Guidelines | $16,000 - $24,000 |
| 2019 | Household income is at or below 250% of the level set forth in the Poverty Guidelines | $25,000 - $35,000 |
| 2020 | Household income is at or below 250% of the level set forth in the Poverty Guidelines | $25,000 - $35,000 |
| 2021 | Household income is at or below 250% of the level set forth in the Poverty Guidelines | $20,000 - $30,000 |
| 2022 | Household income is at or below 200% of the level set forth in the Poverty Guidelines | $10,000 - $15,000 |
| 2023 | Household income is at or below 138% of the level set forth in the Poverty Guidelines | $6,000 - $10,000 |
| 2024 | Household income is at or below 138% of the level set forth in the Poverty Guidelines | $4,000 - $8,000 |
| 2025 | Household income is at or below 138% of the level set forth in the Poverty Guidelines | $2,000 - $4,000 |

**Part 3.  Discretion for Interim Assistance Grants within the Presumptive Ranges.**  The Claims Administrator shall determine the amount of an Interim Assistance Grant within the Presumptive Range, and has discretion to choose the amount within a given Presumptive Range.  In choosing within Interim Assistance Grant amounts within the Presumptive Ranges, and ensuring equitable treatment of similarly situated claimants, the Claims Administrator should consider: (a) the individual circumstances of the claimant, including (i) the degree of need (including the number of dependents) of the Settlement Class Member, or, if deceased, such Settlement Class Member's next of kin, (ii) the age of the Settlement Class Member, or, if deceased, such Settlement Class Member's next of kin, (iii) the type and severity of the subject Settlement Class Member's NHL, (iv) the extent of the subject Settlement Class Member's demonstrated exposure to Roundup Products through the application of Roundup Products, (v) any regional cost of living adjustments; (b) whether the claimant is a Settlement Class Member or a Representative Claimant; and (c) the

Exhibit 7                                                                                                           Page 2

sufficiency of the Settlement Fund to pay anticipated future Interim Assistance Grants.  In making this determination the Class Administrator shall not consider the health insurance status of the Settlement Class Member at issue.

**Part 4.  Individual Circumstances.**  The Claims Administrator and Settlement Administrator may deviate from the Eligibility Criteria, including the Assistance Thresholds, and the Presumptive Ranges, as set forth and subject to the limits in Section 10.4 and Section 10.5, where individual circumstances other than health insurance status warrant, including where a Settlement Class Member (who is applying for an Interim Assistance Grant or on whose behalf the Representative Claimant applying for an Interim Assistance Grant is authorized to act) received a Qualifying Diagnosis in years other than 2016-2025.

**Part 5.  Proof of Roundup Products Exposure.**  To be eligible to receive an Interim Assistance Grant, Settlement Class Members and Representative Claimants must include proof demonstrating the alleged circumstances and extent of the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products in the Claim Package, as set forth in Section 11.2(a).  The form of such proof will depend on whether the subject Settlement Class Member claims exposure to Roundup Products through the application of Roundup Products in a professional capacity or in residential use.  Settlement Class Members claiming exposure to Roundup Products through the application of Roundup Products in both a professional capacity and in residential use may present proof of either or both forms of exposure.

        (a)    <u>Professional Capacity</u>.  Settlement Class Members and Representative Claimants applying for Interim Assistance Grants on the basis of the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products in a professional capacity must include, at a minimum, (i) an affirmation stating under penalty of perjury the circumstances and extent of the subject Settlement Class Member's alleged exposure to Roundup Products through the application of Roundup Products, including, for each location where such exposure occurred, identification of the location, the start and end dates of exposure, the Settlement Class Member's occupation, the frequency of exposure (*e.g.*, average time spent each day applying Roundup Products or otherwise being exposed to Roundup Products applied by others), the regularity of exposure, and the Settlement Class Member's proximity to the application of Roundup Products; and (ii) employment records sufficient to demonstrate such Settlement Class Member's employment in an occupation in which Roundup Products would be applied in the ordinary course of business during the period of time when the exposure to Roundup Products through the application of Roundup Products is alleged to have occurred, or, if such records are not available in light of the Settlement Class Member's occupation, an explanation of why it is not possible to supply such records.  The proof of exposure to Roundup Products may also include records in the possession, custody, or control of the Settlement Class Member or Representative Claimant demonstrating the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products.

        (b)    <u>Residential Use</u>.  Settlement Class Members and Representative Claimants applying for Interim Assistance Grants on the basis of the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products in residential use must include, at a minimum, an affirmation stating under penalty of perjury the circumstances and extent of the subject Settlement Class Member's alleged exposure to Roundup

Exhibit 7                                                                                                                                    Page 3

Products through the application of Roundup Products and stating the address(es) where such Settlement Class Member's alleged exposure occurred.  For each address where such exposure occurred, the applicant shall state the start and end dates of exposure, the frequency of exposure (*e.g.*, average time spent each day applying Roundup Products or otherwise being exposed to Roundup Products applied by others), the regularity of exposure, and the Settlement Class Member's proximity to the application of Roundup Products.  The proof of exposure to Roundup Products may also include photocopies of receipts for the purchase of Roundup Products, photographs of any Roundup Products in the possession of the subject Settlement Class Member, or other records in the possession, custody, or control of the Settlement Class Member or Representative Claimant demonstrating the subject Settlement Class Member's exposure to Roundup Products through the application of Roundup Products.

(c)     The Monsanto Parties do not waive or concede any position or arguments they have for or against, and retain full right and ability to contest, an individual Settlement Class Member's claim of exposure to Roundup Products in any action or proceeding, including any Roundup Lawsuit and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties.  For the avoidance of doubt, the Monsanto Parties and Related Parties will not be precluded from contesting a Settlement Class Member's claim of exposure to Roundup Products, even if the Settlement Class Member receives an Interim Assistance Grant, and the Monsanto Parties and Related Parties will not be bound by the Claims Administrator's or the Settlement Administrator's determination that a Settlement Class Member has submitted sufficient proof of exposure to Roundup Products in connection with the application for an Interim Assistance Grant.

Exhibit 7                                                                                                                    Page 4

EXHIBIT 8

<u>**EXHIBIT 8: [PROPOSED] PRELIMINARY APPROVAL ORDER**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LIRIGATION | : |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : MDL NO. 2741 |
| | : |
| | : Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | : |
| | : **Hon. Vince Chhabria** |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | |

**[PROPOSED] ORDER**
**(1) GRANTING PRELIMINARY APPROVAL OF THE CLASS ACTION**
**SETTLEMENT AND THE SETTLEMENT AGREEMENT;**
**(2) APPOINTING CLASS COUNSEL AND SUBCLASS COUNSEL;**
**(3) APPROVING THE DISSEMINATION OF SETTLEMENT CLASS NOTICE;**
**(4) SCHEDULING A FAIRNESS HEARING; AND**
**(5) STAYING THE FILING AND PROSECUTION OF ROUNDUP-RELATED**
<u>**ACTIONS BY SETTLEMENT CLASS MEMBERS**</u>

Exhibit 8                                                                                          Page 1

Before the Court is the Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement and Settlement Agreement; (2) Appointing Class Counsel and Subclass Counsel; (3) Approving the Dissemination of Settlement Class Notice; (4) Scheduling a Fairness Hearing; and (5) Staying the Filing and Prosecution of Roundup-Related Actions by Settlement Class Members (the "Preliminary Approval Motion"), pursuant to Rules 23(a), 23(b), 23(c)(4), and 23(e) of the Federal Rules of Civil Procedure.

WHEREAS, a proposed Class Action Settlement and Settlement Agreement have been reached by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, by and through Class Counsel, individually and on behalf of a defined proposed Settlement Class and Subclasses;

WHEREAS, the Court, for the purposes of this Preliminary Approval Order, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, this matter has come before the Court pursuant to the Preliminary Approval Motion;

WHEREAS, the Defendant does not oppose the Court's entry of this Preliminary Approval Order;

WHEREAS, the Court finds that it has jurisdiction over the action and each of the Parties for purposes of settlement and asserts jurisdiction over the Class Representatives and Subclass Representatives for purposes of considering and effectuating this Class Action Settlement;

WHEREAS, the Court held a Preliminary Approval Hearing on **_____, 2020**; and

WHEREAS, the Court has considered all of the presentations and submissions related to the Preliminary Approval Motion and, having presided over and managed the proceedings in MDL

Exhibit 8                                                                                   Page 2

No. 2471 as Transferee Judge since the October 3, 2016 Transfer Order, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.      PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1.      The Court finds that the requirements of Rules 23(a)(1)-(4), 23(b), 23(c)(4), and 23(e) of the Federal Rules of Civil Procedure have been satisfied for purposes of preliminary approval of the Class Action Settlement and the Settlement Agreement, such that notice of the Class Action Settlement and the Settlement Agreement should be directed to Settlement Class Members and a Fairness Hearing should be set.

2.      The Class Action Settlement and the Settlement Agreement, including all Exhibits attached thereto, are preliminarily approved by the Court.

## II.     FINDINGS REGARDING THE SETTLEMENT CLASS AND SUBCLASSES

3.      The Settlement Class consists of, only for purposes of the Class Action Settlement and the Settlement Agreement: (i) those individuals who are either citizens or Residents of the United States as of June 24, 2020 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of June 24, 2020 both (1) have been exposed to Roundup Products through the application of Roundup Products and (2) have not commenced a lawsuit or otherwise retained counsel with respect to any individual actual or potential personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants.  "Exposure to Roundup Products through the application of Roundup Products" includes exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

Exhibit 8                                                                                            Page 3

4.     The following Persons are excluded from the Settlement Class:

a       Judicial officers and associated court staff assigned to this case, and their immediate family members;

b       Past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries; and

c       All those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class in the manner approved by the Court and set forth in the Settlement Class Notice.

5.     The Settlement Class consists of two Subclasses.

a.      Subclass 1 consists of Settlement Class Members who have been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants.

b       Subclass 2 consists of Settlement Class Members who have not been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants.

6.     The Court finds that it will likely be able to certify the Settlement Class and Subclasses for purposes of judgment on the proposed Class Action Settlement.  The Settlement Class and Subclasses likely meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4) of the Federal Rules of Civil Procedure and the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure; and present issues appropriate for resolution pursuant to Rules 23(b)(2) and 23(c)(4) of the Federal Rules of Civil Procedure.

7.     The following Class Representatives are preliminarily appointed: Robert Ramirez; Jerry Agtarap; Dexter Owens; and John Elko.

Exhibit 8                                                                                                    Page 4

8.     The following Subclass Representatives are preliminarily appointed for each of the Settlement Subclasses:

        a.      Subclass 1:  Robert Ramirez; and

        b       Subclass 2:  Jerry Agtarap; Dexter Owens; and John Elko.

9.     Elizabeth J. Cabraser, Robert L. Lieff, and Steven E. Fineman of Lieff Cabraser Heimann & Bernstein, LLP; Samuel Issacharoff; James R. Dugan, II and TerriAnne Benedetto of the Dugan Law Firm, APLC, and William M. Audet of Audet & Partners, LLP are preliminarily appointed as Class Counsel under Rule 23(g)(3) of the Federal Rules of Civil Procedure.

10.    William M. Audet of Audet & Partners, LLP is preliminarily appointed as Subclass Counsel for Subclass 1 and TerriAnne Benedetto of the Dugan Law Firm, APLC is preliminarily appointed as Subclass Counsel for Subclass 2 under Rule 23(g)(3) of the Federal Rules of Civil Procedure.

## III.    FINDINGS REGARDING THE CLASS ACTION SETTLEMENT AND THE SETTLEMENT AGREEMENT

11.    Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, in order to approve the Class Action Settlement and the Settlement Agreement, the Court must determine whether the proposed Class Action Settlement and the Settlement Agreement are fair, reasonable, and adequate.   Rule 23(e)(2) sets forth factors that the Court must consider in reaching that determination.   The Court's "scrutiny of the proposed Settlement will be as rigorous at the preliminary approval stage as at the final approval stage."   *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-1037 (N.D. Cal. 2016).

12.    The Parties have provided sufficient information, including in the Preliminary Approval Motion and related submissions and presentations, "to allow the district court to carefully evaluate the strength of the claims, the risks of litigating those claims all the way through,

Exhibit 8                                                                                                    Page 5

and the value of the relief each class member will receive from the settlement." *Cotter*, 193 F. Supp. 3d at 1036-37.  The proposed Class Action Settlement and the Settlement Agreement are the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by the Court-appointed mediator Kenneth Feinberg; have no obvious deficiencies; do not improperly grant preferential treatment to the Class Representatives, Subclass Representatives, or segments of the Settlement Class; and are fair, reasonable, and adequate.  Accordingly, the Court has taken the Rule 23(e)(2) factors and applicable precedent into account in finding that it will likely be able to approve the proposed Class Action Settlement and the Settlement Agreement as fair, reasonable, and adequate.

13.     The Court finds that it will likely be able to approve, under Rule 23(e)(2) of the Federal Rules of Civil Procedure, the proposed Class Action Settlement and Settlement Agreement.

## IV.    NOTICE TO SETTLEMENT CLASS MEMBERS

14.     Under Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Court finds that the Settlement Class Notice set forth in Exhibit 2 to the Settlement Agreement, and the Settlement Class Notice Plan set forth in the Preliminary Approval Motion and the Declaration of Shannon R. Wheatman filed on June 24, 2020, including an extensive publication campaign, (a) is the best practicable notice; (b) is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Lawsuit and the Class Action Settlement and of their right to object to or exclude themselves from the proposed Class Action Settlement; (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules.

Exhibit 8                                                                                                   Page 6

15.     The Court approves the Settlement Class Notice and the Settlement Class Notice Plan, and hereby directs that the Settlement Class Notice be disseminated pursuant to the Settlement Class Notice Plan to Settlement Class Members under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

16.     No later than twenty (20) days after entry of this Preliminary Approval Order (including the provision approving the Escrow Agreement), the Defendant shall make the payment into the Settlement Fund set forth in Section 7.3(a)(i) of the Settlement Agreement, which shall be used to effectuate the Settlement Class Notice Plan and other purposes as specified in that Section.

17.     The Settlement Class Notice shall be posted on the Settlement Website twenty-one (21) days after entry of this Preliminary Approval Order, on **_____, 2020**, so as to commence the Settlement Class Notice Plan, as well as the period during which Settlement Class Members may Opt Out from the Settlement Class or object to the Class Action Settlement.

## V.     OPT OUT AND OBJECTION PROCEDURES

18.     The Opt Out procedure set forth in Section 4.2 of the Settlement Agreement and the instructions in the Settlement Class Notice regarding the procedures that must be followed to Opt Out of the Settlement Class are approved.

19.     Any Settlement Class Member wishing to Opt Out of the Settlement Class must submit a written request to Verus LLC (as the preliminarily approved Claims Administrator), of his or her intention to Opt Out of the Settlement Class.  Such written request must be postmarked, emailed, or submitted through the Settlement Website no later than the date one hundred and fifty (150) days following the commencement of the Settlement Class Notice Plan (described in Paragraph 17), which is the last day of the Opt Out period.  The last day of the Opt Out period is **_____, 2020**.

Exhibit 8                                                                                                                          Page 7

20.     To be effective, the Opt Out notice must set forth the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other identification issued by any Governmental Authority, along with a sentence stating: "I wish to exclude myself from the Settlement Class in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC" (or substantially similar clear and unambiguous language).   The Opt Out notice must contain the dated Personal Signature of the individual Settlement Class Member.   The Settlement Class Member must either (i) mail the signed written request to a physical address to be identified in the Settlement Class Notice; (ii) email a complete and legible scanned copy or photograph of the signed written request to an email address to be identified in the Settlement Class Notice; or (iii) submit a complete and legible scanned copy or photograph of the signed written request through the Settlement Website.   Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member. A valid request to Opt Out from the Settlement Class will become effective as of the later of twenty-one (21) days of receipt by Verus LLC (as the preliminarily appointed Claims Administrator) or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant.

21.     Pursuant to Section 4.2(d) of the Settlement Agreement, the Defendant shall have the right, in its discretion, to terminate and render null and void the Class Action Settlement and the Settlement Agreement following notice of Opt Outs and prior to the Fairness Hearing in accordance with the terms of Exhibit 3 to the Settlement Agreement, which has been filed under seal with the Court.   To exercise that right, the Defendant must provide written election to

Exhibit 8                                                                                                   Page 8

terminate the Settlement Agreement under Section 4.2(d) of the Settlement Agreement to Class

Counsel and the Court prior to the Fairness Hearing.

22.     The procedure for objecting to the Class Action Settlement, as set forth in Section

17.1 of the Settlement Agreement, is approved.

23.     A Settlement Class Member who wishes to object to any aspect of the Class Action

Settlement must submit to the Court a written statement of the objection(s).

24.     The written statement of objection(s) must include a detailed statement of the

Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such

objection, including any evidence and legal authority the Settlement Class Member wishes to bring

to the Court's attention.  That written statement also must contain the Settlement Class Member's

printed name, address, telephone number, and date of birth, written evidence establishing that the

objector is a Settlement Class Member, and any other supporting papers, materials, or briefs the

Settlement Class Member wishes the Court to consider when reviewing the objection.  The written

statement shall also state how many times the Settlement Class Member (or the counsel

individually representing them, if any) has filed an objection to any other class action settlement

in the previous five (5) years, the identity of the lawsuit in which any such objection was filed, and

the nature and resolution of the objection.  A written statement of objection(s) must contain the

dated Personal Signature of the Settlement Class Member making the objection.

25.     All objections shall be filed no later than thirty (30) days prior to the date set for

the Fairness Hearing (*i.e.*, _____**, 2020**), or they will be deemed waived.

26.     A Settlement Class Member may object on his or her own behalf or through an

attorney hired at that Settlement Class Member's own expense, provided the Settlement Class

Member has not submitted a written request to Opt Out.  An attorney asserting objections on behalf

Exhibit 8                                                                                                    Page 9

of Settlement Class Members must:   (a) file a notice of appearance with the Court by

_____, 2020; (b) file a sworn declaration attesting to his or her representation of each

Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to

be filed *in camera*) between that attorney and each such Settlement Class Member; and (c)

otherwise comply with the procedures described in Section 17.1 of the Settlement Agreement.

27.     A Settlement Class Member (or counsel individually representing him or her, if

any) seeking to make an appearance at the Fairness Hearing must file with the Court, by

_____, 2020, a written notice of his or her intention to appear at the Fairness Hearing

stating the matters the Settlement Class Member intends to present to the Court.  Filing a written

statement of objection(s) is a prerequisite to appearing at the Fairness Hearing, but this requirement

may be excused for good cause shown.

28.     Any Settlement Class Member who fails to comply with the provisions of

Section 17.1 of the Settlement Agreement will waive and forfeit any and all rights he or she may

have to object to the Class Action Settlement, except that the Court will only require substantial

compliance with the requirements for submitting an objection.

29.     No later than fifteen (15) days prior to the date set for the Fairness Hearing, *i.e.*, by

_____, 2020, Verus LLC (as the preliminarily appointed Claims Administrator) shall

prepare and file with the Court, and serve on Class Counsel and Counsel for the Defendant, a list

of all persons who have timely Opted Out of the Settlement Class or objected to the Class Action

Settlement.

## VI.   FAIRNESS HEARING

30.     A formal Fairness Hearing shall take place on the **_____ day of _____,**

**2020 at _____ o'clock in the a.m./p.m.**, at which the Court will consider submissions

regarding the proposed Class Action Settlement and the Settlement Agreement, including any

Exhibit 8                                                                                        Page 10

objections, and whether:  (a) to approve thereafter the Class Action Settlement and the Settlement Agreement as fair, reasonable, and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to certify the Settlement Class and Subclasses, and (c) to enter the Final Order and Judgment, as provided in Article XVIII of the Settlement Agreement.  The Fairness Hearing shall be subject to adjournment by the Court without further notice, other than that which may be posted by the Court on the Court's website.

31.    Class Counsel and Counsel for the Defendant shall file any response to the objections, or any papers in support of final approval of the Class Action Settlement and the Settlement Agreement, no fewer than fourteen (14) days prior to the date set for the Fairness Hearing, *i.e.*, by _____, **2020**.

32.    Class Counsel shall file a motion for attorneys' fees, costs, and Class Representative and Subclass Representative service awards at least thirty (30) days prior to the deadline for objecting to the Class Action Settlement.

## VII.   STAY ORDER

33.    This matter and all Roundup Lawsuits and Related Party Lawsuits brought by Settlement Class Member Parties are stayed.  No Settlement Class Member Party may file or prosecute any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits[*] in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties, and any such filings are stayed; provided, however, that this Paragraph shall not apply to any Opt Outs beginning as of the date their Opt Out becomes effective.  The stay and prohibition set forth in this Paragraph shall remain in effect until the day following entry of the

---

[*] As defined in Section 2.1(rrrr), Section 2.1(ssss), and Section 2.1(kkkk) of the Settlement Agreement.

Exhibit 8                                                                                              Page 11

Science Panel's report on the Court's public docket as provided in Section 6.7(f) of the Settlement Agreement. The provisions of this paragraph will be superseded in connection with the Court's decision regarding final approval of the Class Action Settlement and the Settlement Agreement and final certification of the proposed Settlement Class and Subclasses. This order is entered pursuant to the Court's Rule 23(e) findings set forth above, in aid of its jurisdiction over the members of the proposed Settlement Class and the settlement approval process under Rule 23(e).

## VIII.   TOLLING OF STATUTES OF LIMITATION

34.     The statutes of limitation applicable to (a) any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Member Party against any Monsanto Party, and (b) any and all Claims, counterclaims, and defenses of the Settlement Class Member Parties and the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party will be tolled and stayed to the extent not already tolled by the initiation of an action in the Lawsuit or a Roundup Lawsuit; provided, however, that the tolling set forth in this Paragraph shall not apply to any Opt Outs, beginning as of the date their Opt Out becomes effective. The tolling set forth in this Paragraph shall remain in effect until thirty (30) days following entry of the Science Panel's report on the Court's public docket as provided in Section 6.7(f) of the Settlement Agreement. Notwithstanding anything to the contrary in this Preliminary Approval Order, the tolling set forth in this Paragraph shall expire under the circumstances set forth in Section 16.2(b)(iii) of the Settlement Agreement.

35.     Any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of this Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or this Preliminary Approval Order.

## IX.   OTHER PROVISIONS

Exhibit 8                                                                                    Page 12

36.     Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, is preliminarily appointed to serve as the Settlement Administrator.

37.     Wolf Garretson, LLC is preliminarily appointed to serve as the DAGP Administrator.

38.     Verus LLC is preliminarily appointed to serve as the Claims Administrator, and appointed as the administrator of the Settlement Fund escrow account within the meaning of § 1.468B-2(k)(3) of the Treasury Regulations.

39.     Citibank, N.A. acting through its Citi Private Bank business unit is appointed as the Escrow Agent.

40.     Kinsella Media, LLC and Signal Interactive Media, LLC are appointed to serve as the Settlement Class Notice Agent.

41.     The Court has reviewed the proposed Escrow Agreement and Section 13.1 of the Settlement Agreement and approves the Escrow Agreement and Section 13.1 of the Settlement Agreement and authorizes that the Settlement Fund escrow account established pursuant to the Escrow Agreement be established as a qualified settlement fund within the meaning of § 1.468B-1 of the Treasury Regulations promulgated under Sections 468B of the Internal Revenue Code of 1986, as amended.

42.     The Defendant has the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Member Parties on matters unrelated to the Class Action Settlement in connection with the Defendant's normal business.

43.     If the Settlement Agreement is terminated or is not consummated for any reason, the Court's findings with respect to certification of the Settlement Class and Subclasses shall be

Exhibit 8                                                                                                                    Page 13

void, and the Plaintiffs and the Defendant shall be deemed to have reserved all of their rights to propose or oppose any and all class certification issues.

44.     The deadlines set forth in Paragraphs 25, 26, 27, 29, 30, and 31 of this Preliminary Approval Order may be extended, and the Fairness Hearing may be adjourned, by Order of the Court, for good cause shown, without further notice to the Settlement Class Members, except that notice of any such extensions or adjournments shall be included on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines.

45.     Class Counsel, Counsel for the Defendant, the Settlement Administrator, the Claims Administrator, the DAGP Administrator, the Settlement Class Notice Agent, and the Escrow Agent are authorized to take, without further Court approval, all actions under the Settlement Agreement that are permitted or required to be taken following entry of this Preliminary Approval Order and prior to entry of the Final Order and Judgment, including effectuation of the Settlement Class Notice Plan.

46.     Class Counsel and Counsel for the Defendant are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Class Action Settlement and the Settlement Agreement that are not materially inconsistent with this Preliminary Approval Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Settlement Class Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

Exhibit 8                                                                                                          Page 14

47.    The Court shall maintain continuing jurisdiction over these proceedings (including over the administration of the qualified settlement fund) for the benefit of the Settlement Class as defined in this Preliminary Approval Order.

**SO ORDERED** this _____ day of _____, 2020.

_____
The Honorable Vince Chhabria
United States District Court Judge

Exhibit 8                                                                                    Page 15

EXHIBIT 9

## EXHIBIT 9: [PROPOSED] FINAL ORDER AND JUDGMENT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | : MDL NO. 2741 |
| | : |
| ──────────────────────── | : Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | : |
| | : **Hon. Vince Chhabria** |
| *Ramirez et al v. Monsanto Co.*, Case No. 3:19-cv-02224 | |

## [PROPOSED] FINAL ORDER AND JUDGMENT

Before the Court is the Motion of Class Counsel for an Order Granting Final Approval of the Class Action Settlement and Settlement Agreement and Certification of the Settlement Class and Subclasses, pursuant to Rules 23(a), 23(b), 23(c)(4), and 23(e) of the Federal Rules of Civil Procedure.

WHEREAS, on April 24, 2019, the original complaint in the Lawsuit was filed in the Court on behalf of a Class Representative.  On June 24, 2020, an amended complaint in the Lawsuit was filed in the Court on behalf of Class Representatives and Subclass Representatives. On June 24, 2020, a Settlement Agreement was entered into by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass

Exhibit 9                                                                                       Page 1

Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel;

WHEREAS, the Court, for the purposes of this Final Order and Judgment, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, on **_____, 2020**, the Court entered a Preliminary Approval Order that, among other things:  (i) preliminarily approved the Class Action Settlement and the Settlement Agreement; (ii) appointed Class Counsel and Subclass Counsel; (iii) approved the Settlement Class Notice and Settlement Class Notice Plan and directed that the Settlement Class Notice be disseminated to Settlement Class Members according to the Settlement Class Notice Plan; (iv) scheduled a Fairness Hearing for final approval of the Class Action Settlement and the Settlement Agreement; and (v) stayed the filing and prosecution of Roundup-related actions by Settlement Class Members;

WHEREAS, in the Settlement Agreement the Settlement Class is defined as follows:  (i) those individuals who are either citizens or Residents of the United States as of June 24, 2020 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of June 24, 2020 both (1) have been exposed to Roundup Products through the application of Roundup Products and (2) have not commenced a lawsuit or otherwise retained counsel with respect to any individual actual or potential personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants.  "Exposure to Roundup Products through the application of Roundup Products" includes exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself;

Exhibit 9                                                                                                          Page 2

WHEREAS, Section 1.1(b) of the Settlement Agreement identifies certain Persons that are excluded from the Settlement Class;

WHEREAS, in the Settlement Agreement the Subclasses are defined as follows: (i) "Subclass 1" consists of Settlement Class Members who have been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants; and (ii) "Subclass 2" consists of Settlement Class Members who have not been diagnosed with NHL as of the Settlement Date, and their Derivative Claimants;

WHEREAS, [●] Settlement Class Members have chosen to be excluded from the Settlement Class by timely filing written requests for exclusion.  The Opt Outs are listed at the end of this Final Order and Judgment in Exhibit A;

WHEREAS, [●] Settlement Class Members submitted objections to the Class Action Settlement under the process set by the Preliminary Approval Order;

WHEREAS, on _____, 2020, the Court held the Fairness Hearing to consider whether the Class Action Settlement was fair, reasonable, adequate, and in the best interests of the Settlement Class and Subclasses;

WHEREAS, the Court, having heard arguments of counsel for the Parties and of the persons who appeared at the Fairness Hearing, having reviewed all materials submitted, having considered all of the files, records, and proceedings in the Lawsuit, and being otherwise fully advised;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      This Final Order and Judgment certifies the Settlement Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only.

2.      The Court finds that the requirements of Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure are met.  The Court finds that for settlement

Exhibit 9                                                                                                    Page 3

purposes:  (a) the Settlement Class Members are so numerous that their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class and Subclasses; (c) the claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members and the respective members of the Subclasses; (d) the Class Representatives and Subclass Representatives and Class Counsel and Subclass Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; (e) the questions of law or fact common to the Settlement Class and Subclasses predominate over any questions affecting only individual Settlement Class Members, and a class action is superior to other available methods for the fair and efficient resolution of the controversy; and (f) the issues resolved by the Class Action Settlement and the Settlement Agreement are appropriate for resolution under Rule 23(c)(4) of the Federal Rules of Civil Procedure.

3.     The Court confirms the appointment of Robert Ramirez, Jerry Agtarap, Dexter Owens, and John Elko as Class Representatives; as well as Robert Ramirez as Subclass 1 Representative and Jerry Agtarap, Dexter Owens, and John Elko as Subclass 2 Representatives, who were preliminarily approved in the Preliminary Approval Order.

4.     Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court confirms the appointment of Elizabeth J. Cabraser, Robert L. Lieff, and Steven E. Fineman of Lieff Cabraser Heimann & Bernstein, LLP; Samuel Issacharoff; James R. Dugan, II and TerriAnne Benedetto of the Dugan Law Firm, APLC, and William M. Audet of Audet & Partners, LLP as Class Counsel; and William M. Audet of Audet & Partners, LLP and TerriAnne Benedetto of the Dugan Law Firm, APLC as Subclass Counsel for Subclass 1 and Subclass 2, respectively, who were preliminarily approved in the Preliminary Approval Order.

Exhibit 9                                                                                                                    Page 4

5.      If a proposed settlement class satisfies Rules 23(a) and (b) of the Federal Rules of Civil Procedure, the Court must determine whether the settlement itself is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2) (enumerating factors the Court must consider).  The Court has analyzed the Rule 23(e)(2) factors in light of applicable precedent and has concluded that the Class Action Settlement and the Settlement Agreement are fair, reasonable, and adequate.

a.      Class Counsel and the Class Representatives have adequately represented the Settlement Class, and Subclass Counsel and Subclass Representatives have adequately represented their respective Subclasses;

b.      The Class Action Settlement was negotiated at arm's length under the supervision of the Court-appointed mediator;

c.      The relief provided to the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal in the absence of settlement; the effectiveness of the proposed methods of distributing the Class Action Settlement relief to the Settlement Class; the terms and timing of the proposed fee award; and any agreement required to be identified under Rule 23(e)(3).

6.      Therefore, pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby fully and finally approves the Class Action Settlement and the Settlement Agreement in their entirety and finds that the Class Action Settlement and the Settlement Agreement are fair, reasonable, and adequate, including with respect to each Subclass. The Court also finds that the Class Action Settlement and the Settlement Agreement are in the best interests of the Class Representatives and Subclass Representatives and all Settlement Class

Exhibit 9                                                                                                    Page 5

Members, including the members of the Subclasses, and are consistent and in compliance with all applicable laws and rules.  The Court further finds that the Class Action Settlement and the Settlement Agreement are the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by the Court-appointed mediator Kenneth Feinberg.  The Court further finds that the Parties have evidenced full compliance with the Preliminary Approval Order.

7.     The Parties are ordered to implement, perform, and consummate each of the obligations set forth in the Settlement Agreement in accordance with its terms.  All objections to the Class Action Settlement and the Settlement Agreement are found to be without merit and are overruled.

8.     Notice in the form of the Settlement Class Notice was provided to Settlement Class Members pursuant to the Settlement Class Notice Plan approved in the Preliminary Approval Order, including an extensive publication campaign.  Class Counsel worked together with the Settlement Class Notice Agent to fashion a Settlement Class Notice Plan that was tailored to the Settlement Class Members.  Class Counsel have established that the Settlement Class Notice Plan was implemented.  Class Counsel caused to be established and maintained a public website that provided information about the proposed Class Action Settlement, including the Settlement Agreement, frequently asked questions, the Preliminary Approval Order, and relevant dates for objecting to the Class Action Settlement and submitting requests to Opt Out of the Settlement Class, and the date and place of the Fairness Hearing, and also caused to be established an automated telephone system that uses a toll-free number to provide information about the Class Action Settlement.

9.     The Court finds that the Settlement Class Notice disseminated pursuant to the Settlement Class Notice Plan:  (a) was implemented in accordance with the Preliminary

Exhibit 9                                                                                                                    Page 6

Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members (i) of the effect of the Class Action Settlement and the Settlement Agreement (including the issue-preclusive effect of the Science Panel Determination and the Releases provided for therein), (ii) of the amount of attorneys' fees and costs sought by Class Counsel, (iii) of their right to Opt Out or object to any aspect of the Class Action Settlement and the Settlement Agreement, (iv) of their right to revoke an Opt Out prior to entry of this Final Order and Judgment, and (v) of their right to appear at the Fairness Hearing; (d) constituted due, adequate, and sufficient notice to all persons entitled to receive notice of the Class Action Settlement and the Settlement Agreement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules.

10.     The Defendant complied with the Class Action Fairness Act and its notice requirements by providing appropriate federal and state officials with information about the Class Action Settlement.

11.     All Settlement Class Member Parties are barred and enjoined from filing or prosecuting any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties until the Science Panel terminates its work by reaching the Science Panel Determination and its written report is entered on the Court's public docket as described in Section 6.7(f) of the Settlement Agreement.  The injunction set forth in this Paragraph supersedes the stay and prohibition set forth in the Preliminary Approval Order.

12.     The statutes of limitation applicable to (a) any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Member Party against any

Exhibit 9                                                                                                              Page 7

Monsanto Party, and (b) any and all Claims, counterclaims, and defenses of the Settlement Class Member Parties and the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party will be tolled and stayed to the extent not already tolled by the initiation of an action in the Lawsuit or a Roundup Lawsuit. The tolling set forth in this Paragraph shall remain in effect until thirty (30) days following entry of the Science Panel's report on the Court's public docket as provided in Section 6.7(f) of the Settlement Agreement. Any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of the Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or this Final Order and Judgment.

13. The Class Action Complaint is hereby dismissed with prejudice, without further costs, including Claims for interest, penalties, costs, and attorneys' fees.

14. As set forth in Article XV of the Settlement Agreement, the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, have waived and released, forever discharged, and held harmless the Monsanto Parties and the Related Parties of and from any and all Released Claims. Accordingly, the Court hereby orders the dismissal with prejudice, and without further costs, including Claims for interest, penalties, costs, and attorneys' fees, of all Released Claims pending in the Court. The Settlement Class Member Parties are hereby permanently barred and enjoined from filing or prosecuting any Released Claims or any Claims challenging the validity of the Releases in any forum or jurisdiction (whether federal, state, or otherwise). The Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Settlement Class Member Parties, and no Settlement Class

Exhibit 9                                                                                                          Page 8

Member Party will recover, directly or indirectly, any sums for Released Claims other than those received under the terms of the Settlement Agreement, if any.

15.     The Court will enter the Science Panel Determination and the Science Panel's written report on its public docket upon receipt, pursuant to Section 6.7(f) of the Settlement Agreement.

16.     The Science Panel Determination shall have the issue-preclusive effect on Roundup Claims and in Roundup Lawsuits and Related Party Lawsuits described in Section 6.3 and Section 6.8 of the Settlement Agreement.

17.     Following the entry of the written report reflecting the Science Panel Determination on the Court's public docket, the Settlement Class Member Parties are hereby barred and enjoined from asserting, contending, or otherwise alleging anything that is contrary to or inconsistent with the Science Panel Determination, or otherwise precluded by the Settlement Agreement, in any Roundup Lawsuit or Related Party Lawsuit or with respect to any Roundup Claims.

18.     The Court finds that the Science Panel is not an arbitration panel and that the Science Panel Determination shall be final and shall not be subject to judicial review, including under the Federal Arbitration Act or other similar statute, rule, or regulation.

19.     Any and all Persons, including the Monsanto Parties and the Settlement Class Member Parties, are hereby barred and enjoined from, at any time, in any forum or jurisdiction (whether federal, state, or otherwise), seeking discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) of the Settlement Agreement, including any written discovery, requests for documents, subpoenas of any kind, or notices of deposition.

Exhibit 9                                                                                          Page 9

The Monsanto Parties and the Settlement Class Member Parties are hereby barred and enjoined from making use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) of the Settlement Agreement that becomes available through any other means.

20.     The Settlement Class Member Parties and the Monsanto Parties are hereby barred and enjoined from, at any time, in any forum or jurisdiction (whether federal, state, or otherwise), calling any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6.(a)(iv) of the Settlement Agreement, to provide testimony, whether as a fact witness, an expert witness, or in any other capacity, and from making use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any testimony from any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 6.6(a)(iv) of the Settlement Agreement, that becomes available through any other means.

21.     The Science Panel members, any of its authorized contractors, and any Person to whom disclosure is made pursuant to Section 6.6.(a)(iv) of the Settlement Agreement, are hereby barred and enjoined from serving as an expert witness or consultant, or providing any voluntary testimony including by affidavit, in any Roundup Lawsuit, Related Party Lawsuit, or in any legal, legislative, administrative, or regulatory action, proceeding, or matter asserting or alleging Roundup Claims, otherwise arising from, resulting from, in any way relating to or in connection with Roundup Products, or against the Monsanto Parties or the Related Parties arising from, resulting from, in any way relating to or in connection with exposure to glyphosate or a

Exhibit 9                                                                                                    Page 10

similar factual predicate raised in the Lawsuit, in all such cases whether brought by a Settlement Class Member Party, an Opt Out, or any other Person, at any time.

22.     As set forth in the Preliminary Approval Order, the Court confirms the appointment of Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, as the Settlement Administrator, Wolf Garretson LLC as the DAGP Administrator, Verus LLC as the Claims Administrator, and Citibank, N.A. acting through its Citi Private Bank business unit as the Escrow Agent, and confirms that the Court retains continuing jurisdiction over those appointed.

23.     The Court retains continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Settlement Administrator, DAGP Administrator, Claims Administrator, Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and this Final Order and Judgment.  Any disputes or controversies arising from, resulting from, in any way relating to or in connection with the interpretation, implementation, administration, and enforcement of the Settlement Agreement will be made by motion to the Court, except as otherwise provided in the Settlement Agreement.  In addition, the Parties and the Settlement Class Member Parties are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Class Action Settlement or the Settlement Agreement, including for the avoidance of doubt any dispute relating to the issue-preclusive effect of the Science Panel Determination.  The Court also retains continuing jurisdiction over the "qualified settlement fund," as defined under § 1.468B-1 of the Treasury Regulations promulgated under 468B of the Internal Revenue Code of 1986, as amended, created under the Settlement Agreement.  The Court retains continuing jurisdiction over any requests for attorneys' fees and reimbursement of costs.

Exhibit 9                                                                                                          Page 11

24.     This Final Order and Judgment incorporates and makes a part hereof the Settlement Agreement (which includes the Exhibits) filed with the Court on June 24, 2020, including definitions of the terms used therein.  This Final Order and Judgment shall serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Class Action Settlement and the Settlement Agreement.

25.     Notwithstanding anything to the contrary in this Final Order and Judgment, this Final Order and Judgment and the Settlement Agreement shall not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured Person thereunder.

26.     This Final Order and Judgment, the Settlement Agreement, and the documents relating thereto, and any actions taken by the Defendant in the negotiation, execution, or satisfaction of the Settlement Agreement:  (a) do not and shall not, in any event, constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by any Settlement Class Member Party in this or any other action or proceeding; and (b) shall not, in any way, be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by any Settlement Class Member Party, Class Counsel, or any of the Monsanto Parties or Related Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any

Exhibit 9                                                                                                    Page 12

liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Monsanto Parties or the Related Parties.  This Paragraph shall not apply to disputes between the Defendant and its insurers, as to which the Defendant reserves all rights.

27.     Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the Defendant, on behalf of all Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition.

28.     The terms of the Settlement Agreement and of this Final Order and Judgment are forever binding on the Parties, Settlement Class Members, and Settlement Class Member Parties, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates and assigns.  The Opt Outs listed in Exhibit A hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment.

29.     Sixty (60) days after the final round of payments to Settlement Class Members and/or Representative Claimants, Class Counsel must file a "Post-Distribution Accounting," with accompanying declarations from themselves and the Settlement Administrator, explaining in detail when payments were made, the number of Settlement Class Members and Representative Claimants who were sent payments, the total amount of money paid out, any concerns communicated by Settlement Class Members or Representative Claimants to the Settlement Administrator and Class Counsel since entry of the Final Order and Judgment, and how any concerns or issues were resolved.  Class Counsel are expected to diligently supervise the administration of the Settlement Agreement and remain in close contact with the Settlement Administrator.

Exhibit 9                                                                                              Page 13

30.     If the Settlement Agreement is terminated as provided for in Article XXI of the Settlement Agreement, this Final Order and Judgment (and any orders of the Court relating to the Settlement Agreement) shall be null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement, and any unexpended funds in the Settlement Fund, or unexpended payments made to Class Counsel for Settlement Class Notice will be returned to the Defendant forthwith.

31.     In the event that the Settlement Agreement does not become effective pursuant to its terms, the Court shall vacate the Preliminary Approval Order and this Final Order and Judgment.


**SO ORDERED** this _____ day of _____, 2020.


_____
The Honorable Vince Chhabria
United States District Court Judge

Exhibit 9                                                                                                   Page 14

# EXHIBIT A

Exhibit 9        Page 15

***Robert Ramirez, et al. v. Monsanto Company*,**
**No. 3:16-md-02741-VC & 3:19-cv-02224-VC**

**Exclusions**

[To be listed]

Exhibit 9                                                                 Page 16

EXHIBIT 10

## EXHIBIT 10: SCHEDULE OF CERTAIN SETTLEMENT CLASS MEMBER DATES AND DEADLINES

This Exhibit 10 is provided solely for the convenience of Settlement Class Members.  Any inconsistency between this Exhibit 10 and the text of Article I–Article XXX of the Settlement Agreement will be resolved in favor of the latter, and the omission of any date or deadline from this Exhibit 10 has no significance with respect to the existence or operation of such date or deadline.  Under the Settlement Agreement, funding for the Diagnostic Accessibility Grant Program and Interim Assistance Grants may cease prior to the registration and application deadlines set forth below and Settlement Class Members seeking to participate in those programs may not be able to do so, even where the deadline to register or apply listed below has not occurred.

### Opt Outs and Objections

| Event | Date | Section |
|---|---|---|
| **Deadline to Opt Out** | One hundred and fifty (150) days following commencement of Settlement Class Notice Plan | Section 4.2(a) |
| **Valid requests to Opt Out become effective** | The later of twenty-one (21) days of receipt by the Claims Administrator or the resolution of any challenge to the validity of the request | Section 4.2(a) |
| **Deadline to object to Settlement Agreement** | As ordered by the Court | Section 17.1(a) |
| **Deadline to revoke Opt Out** | Entry of the Final Order and Judgment | Section 4.2(c) |

### Registration

| Event | Date | Section |
|---|---|---|
| **Registration to participate in the Funded Class Benefits opens** | Forty (40) days after entry of the Preliminary Approval Order | Section 5.2(a) |
| **Deadline to register in order to apply for an Interim Assistance Grant** | One hundred and thirty-five (135) days after the Effective Date, or one hundred and thirty-five (135) days after the date of Qualifying Diagnosis (whichever is later) | Section 5.2(d); Section 11.3(a) |
| **Deadline to register in order to apply for the Diagnostic Accessibility Grant Program** | Three hundred and twenty (320) days after the Effective Date | Section 5.2(d); Section 8.4(b) |
| **Claims Administrator to inform applicants if they have properly registered\*** | Thirty (30) days after receipt of registration | Section 5.3(b) |
| **Deadline to appeal determination that applicant is not authorized to act on behalf** | Thirty (30) days after receiving the Claims Administrator's determination that applicant is not | Section 5.2(c)(iii) |

Exhibit 10                                                                                             Page 1

| of a given Settlement Class Member | authorized to act on behalf of a given Settlement Class Member | |
|---|---|---|
| **Deadline to provide additional information and documents to cure deficiencies in registration** | Thirty (30) days after adverse Notice of Registration Determination | Section 5.3(c) |
| **Deadline to respond to Defendant's challenge of Notice of Registration Determination** | Thirty (30) days after receiving a copy of the Defendant's challenge | Section 5.3(e) |
| **Deadline to challenge adverse Notice of Registration Determination** | Ninety (90) days after adverse Notice of Registration Determination is issued (or, if applicable, after a confirmation of adverse Notice of Registration Determination following an effort to cure deficiencies) | Section 5.3(d) |
| **Deadline to challenge adverse Notice of Challenge Determination** | Sixty (60) days after adverse Notice of Challenge Determination | Section 5.3(f) |
| **Deadline to respond to appeal of Notice of Challenge Determination by Class Counsel or the Defendant** | Thirty (30) days of receiving a copy of the appeal | Section 5.3(f) |

**Diagnostic Accessibility Grant Program**

| Event | Date | Section |
|---|---|---|
| **DAGP Applications open** | Effective Date | Section 8.4 |
| **Deadline for submitting DAGP Application** | One (1) year after the Effective Date | Section 8.4(b) |

**Interim Assistance Grants**

| Event | Date | Section |
|---|---|---|
| **Interim Assistance Grant applications open** | Effective Date | Section 10.1 |
| **Deadline for submitting Claim Packages** | One hundred and eighty (180) days after Effective Date, or one hundred and eighty (180) days after Qualifying Diagnosis date (whichever is later) | Section 11.3(a) |
| **Claims Administrator to determine sufficiency and completeness of Claim Package\*** | Forty-five (45) days after receiving Claim Package | Section 11.4(a) |
| **Deadline for submission of Deficiency cure materials** | One hundred and twenty (120) days after receiving Notice of Deficiency | Section 11.5 |
| **Interim Assistance Grant determination\*** | Sixty (60) days from the later of:  (i) the date when a completed Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date, if any, | Section 11.7(a) |

Exhibit 10                                                                                                        Page 2

| | when all Deficiencies with a Claim Package have been deemed cured by the Claims Administrator; or (iii) the date on which the Settlement Class Member or Representative Claimant no longer has the right to cure such Deficiencies or provide additional information or documentation | |
|---|---|---|
| **Deadline to appeal Interim Assistance Grant determination to Settlement Administrator** | Sixty (60) days after receiving Notice of Interim Assistance Grant Determination | Section 11.10(a) |
| **Deadline to respond to appeal by Class Counsel of an Interim Assistance Grant** | Thirty (30) days after receipt of the Appeals Form | Section 11.10(c) |
| **Deadline to respond to Class Counsel's written statement regarding an appeal of an Interim Assistance Grant** | Fifteen (15) days after receipt of Class Counsel's written statement | Section 11.10(d) |

\* This deadline may be extended upon application by the Claims Administrator to the Settlement Administrator, in the Settlement Administrator's sole discretion.

Exhibit 10                                                                 Page 3