UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: *Ramirez, et al. v. Monsanto Co., Case No. 3:19- cv-02224* | **PRETRIAL ORDER NO. 214: DENYING MOTIONS TO ALTER SCHEDULE ON MOTION FOR PRELIMINARY APPROVAL** |

In addition to resolving tens of thousands of pending Roundup cases, Monsanto has reached a settlement in a newly-filed class action. This new lawsuit, and the accompanying settlement, is designed to resolve all future claims—either by Roundup users who have developed cancer but have not yet sued, or by Roundup users who have not yet developed cancer at all. In contrast to Monsanto's settlement of the pending cases against it, settlement of this new "futures" class action requires court approval.

The Court has set a hearing for July 24, 2020 on whether to grant preliminary approval of the settlement. The deadline for potential class members to oppose the motion for preliminary approval, or to file objections to any aspect of the settlement, is July 13. Since setting these dates, the Court has received many requests to push them back. These requests come from potential class members who oppose the settlement. The opponents contend that because the settlement it is complex, novel, and problematic in many respects, they need more time to analyze it and file comprehensive opposition briefs. For similar reasons, they contend the Court should take more time to consider the settlement before holding a hearing on preliminary approval. As they correctly note, careful scrutiny must be given to class action settlements at the

preliminary approval stage. To the extent the plaintiffs and Monsanto suggest that it would be no big deal to wait until the final approval stage before fully considering objections to this settlement agreement, they are wrong. As explained in *Cotter v. Lyft*:

> [T]he idea that district courts should conduct a more lax inquiry at the preliminary approval stage seems wrong. Certainly nothing in the text of Rule 23 suggests courts should be more forgiving of flaws in a settlement agreement at the preliminary stage than at the final stage, or that courts should merely give settlement agreements a "quick look" at the outset. And lax review makes little practical sense, from anyone's standpoint. If the district court, by taking a quick look rather than a careful one, misses a serious flaw in the settlement, the parties and the court will waste a great deal of money and time notifying class members of the agreement, only to see it rejected in the end, requiring the parties to start over. The same is true if the district court does identify a potentially serious flaw at the preliminary stage but waits until final approval to conclude that it's fatal. What's worse, if a court waits until the final approval stage to thoroughly assess the fairness of the agreement, momentum could have a way of slanting the inquiry, in a manner that deprives the class members of the court protection that Rule 23 demands.
>
> This approach may also inadvertently disadvantage class members. Class members will receive a notice saying that the settlement has received preliminary approval from a federal judge. A layperson may take the court's preliminary approval to imply that she shouldn't really worry about whether the settlement is in her best interest, because surely the court, which is more familiar with the law and the facts of the case, has already taken care of that. But that is a misimpression if the judge has merely glanced at the settlement or decided to hold off adjudicating a potential problem until final approval.
>
> This is not to suggest that rigorous inquiry at the initial stage should convert final review to a mere formality. Sometimes objectors may bring a flaw to the court's attention at the final stage—one the court didn't catch at the initial stage. Other times, further factual development between the initial and final stages may cause the court to conclude that the agreement is unfair after all. But by scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process.

193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016).

The points made in *Cotter* seem especially applicable to complex, expensive-to-administer settlements like the one proposed here. The Court thus appreciates the widespread

interest in the settlement agreement, and agrees that it should not grant preliminary approval before fully considering the views of any potential class members who oppose it. However, even before receiving opposition briefs, the Court is skeptical of the propriety and fairness of the proposed settlement, and is tentatively inclined to deny the motion. The following are just some of the Court's concerns:

- Even with the consent of both sides, it's questionable whether it would be constitutional (or otherwise lawful) to delegate the function of deciding the general causation question (that is, whether and at what dose Roundup is capable of causing cancer) from judges and juries to a panel of scientists.

- Even if it were lawful to delegate this function to the panel, it's unclear how the delegation proposed here would benefit a class of Roundup users who either have cancer but have not yet sued Monsanto or have not yet developed cancer. Thus far, judges have been allowing these cases to go to juries, and juries have been reaching verdicts in favor of the plaintiffs, awarding significant compensatory and punitive damages. Why would a potential class member want to replace a jury trial and the right to seek punitive damages with the process contemplated by the settlement agreement?

- In an area where the science may be evolving, how could it be appropriate to lock in a decision from a panel of scientists for all future cases? For examine, imagine the panel decides in 2023 that Roundup is not capable of causing cancer. Then imagine that a new, reliable study is published in 2028 which strongly undermines the panel's conclusion. If a Roundup user is diagnosed with NHL in 2030, is it appropriate to tell them that they're bound by the 2023 decision of the panel because they did not opt out of a settlement in 2020?

- Given the diffuse, contingent, and indeterminate nature of the proposed class, it seems unlikely that most class members would have an opportunity to consider in a meaningful way (if at all) whether it is in their best interest to join the class. There's nothing wrong with certifying a class of people who are candidates to suffer harm in the future when the class is narrow and readily identifiable—for example, NFL players who have not yet developed CTE. In a case like that, it's relatively easy to ensure that the class members are notified and given meaningful chance to consider their options before deciding whether to opt out of the settlement. A class that includes all Roundup users who will get cancer in the future is very different. For example, the idea that a migrant farmworker or someone who is employed part time by a small gardening business would receive proper notification (much less the opportunity to consider their options in a meaningful way) is dubious.

Given the Court's current skepticism, it could be contrary to everyone's interest to delay the hearing on preliminary approval. If the motion for preliminary approval is denied, the parties will presumably move to Plan B for devising a system to address future claims. (Although the Court is not aware of any Plan B, it would be surprising if none existed given the stakes involved and the novelty of Plan A.) And if the parties are going to need to move to Plan B, they would presumably prefer to do that sooner rather than later. Moreover, if the motion would already be denied on the current record, it would be a waste of time and money to wait for hundreds of pages of briefing from dozens of lawyers and law professors from around the country, no matter how interesting those briefs would be.

Accordingly, the following procedure will apply to the motion for preliminary approval. The hearing will take place, as scheduled, on July 24. With respect to the filing deadline on July 13, the Court will only consider filings from potential class members titled "preliminary opposition" or "preliminary objections." Any such filing must be in the form of a letter brief, not to exceed two pages, single-spaced. (Counsel can be listed on a third page to avoid taking up space on the first two pages.) Anything longer will not be considered and will be stricken from the docket. If the Court's views begin to evolve after the hearing on preliminary approval, it will issue an order inviting full briefing. Filing a letter brief will not be a prerequisite to filing a longer brief if one is invited after the hearing, nor will the longer brief be limited to the issues raised in the letter brief. The plaintiffs may file a reply to the letter briefs by the previously specified deadline.

The Court will not consider amicus briefs at this time. If the Court orders full briefing from potential class members, it will permit amicus filings then.

**IT IS SO ORDERED.**

Dated: July 6, 2020

VINCE CHHABRIA
United States District Judge