**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:   (202) 898-5800
Facsimile:   (202) 682-1639
Email:       jhollingsworth@hollingsworthllp.com
             elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Cindy Roberts v. Monsanto Co.*, Case No. 3:20-cv-04841-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), erroneously named as Monsanto Company, Inc., by and through its counsel, respectfully responds by generally denying all allegations contained in the Complaint ("the Complaint") of plaintiff Cindy Roberts, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1 Monsanto denies that plaintiff was injured by Roundup®-branded products and denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses.  Monsanto further denies that Roundup®-branded products are defective and unreasonably dangerous to consumers, and denies the allegations that that it has engaged in any of the "wrongful acts or

negligent conduct" alleged in the Complaint.  The last sentence of paragraph 1 sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 1.

2.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies those allegations.

3.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies those allegations.

4.     In response to the allegations in paragraph 4, Monsanto admits that at all relevant times it has marketed Roundup®-branded products in accord with United States Environmental Protection Agency's ("EPA") regulatory determinations under Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

5.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations.

6.     In response to the allegations in paragraph 6, Monsanto admits that it is a Delaware corporation with its headquarters and principal place of business in St. Louis County, Missouri.  Monsanto further admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto manufactured Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.

7.     In response to the allegations in paragraph 7, Monsanto denies that it engaged in any wrongdoing or wrongful acts or omissions.  The remaining allegations in paragraph 7 set forth conclusions of law for which no response is required.

8.     The allegations in paragraph 8 set forth conclusions of law for which no response is required.

9.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 that plaintiff purchased, used, and/or was exposed to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 9 set forth conclusions of law for which no response is required.

10.      In response to the allegations in the first sentence of paragraph 10, Monsanto admits that it has advertised and sold Roundup®-branded products in Minnesota.  The remaining allegations in paragraph 10 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

11.      The allegations in paragraph 11 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in paragraph 11 based upon the allegations in plaintiff's Complaint.

12.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding where the events giving rise to this action occurred and therefore denies those allegations.  The remaining allegations in paragraph 12 set forth conclusions of law for which no response is required.

13.      In response to the allegations in paragraph 13, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 13 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 13 and therefore denies those allegations.

14.      Monsanto admits the allegations in paragraph 14.

15.      Monsanto denies the allegations in the first sentence of paragraph 15 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the second sentence of paragraph 15 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

16.     In response to the allegations in paragraph 16, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 16.

17.     Monsanto denies the allegations in paragraph 17.

18.     Monsanto admits the allegations in the first two sentences of paragraph 18 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto otherwise denies the remaining allegations in paragraph 18.

19.     The allegations in paragraph 19 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 19.

20.     In response to the allegations in paragraph 20, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 20 set forth conclusions of law for which no response is required.

21.     The allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     In response to the allegations in paragraph 22, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States and are registered by the State of Minnesota for sale and distribution.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 23 is vague and

- 4 -

1  ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 23

2  set forth conclusions of law for which no answer is required.

3       24.     Monsanto denies the allegations in paragraph 24 to the extent that they suggest

4  that EPA only evaluates the safety of pesticide products on the date of their initial registration.

5  Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide

6  products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

7  of the allegations in paragraph 24 regarding such pesticide products generally and therefore

8  denies those allegations.  The remaining allegations in paragraph 24 set forth conclusions of law

9  for which no response is required.

10       25.     In response to the allegations in paragraph 25, Monsanto admits that EPA has

11  undertaken a regulatory review of glyphosate and further admits that EPA has not released its

12  findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide

13  Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential,

14  concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

15  humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

16  posted an October 2015 final report by its standing Cancer Assessment Review Committee

17  ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

18  to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP

19  issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

20  the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

21

22

---

23  [1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/

24  document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic

25  potential.

26  [2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the*

27  *Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 25 and therefore denies those allegations.

26.    In response to the allegations in paragraph 26, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans."  78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director

---

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

of EPA's Office of Pesticide Programs),
http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 26.

27.     In response to the allegations in paragraph 27, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies.  To the extent that the allegations in paragraph 27 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

28.     In response to the allegations in paragraph 28, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

29.     Monsanto denies the allegations in paragraph 29 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 29 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

30.     In response to the allegations in paragraph 30, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

31.     In response to the allegations in paragraph 31, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 31 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

32.     Monsanto denies the allegations in paragraph 32.

33.     In response to the allegations in paragraph 33, Monsanto admits that Roundup®-branded products are highly valued by customers because of their efficacy and safety.  Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 33 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

34.     In response to the allegations in paragraph 34, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 34 and accordingly denies those allegations.  The remaining allegations in paragraph 34 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

35.     In response to the allegations in paragraph 35, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that has sold glyphosate or glyphosate-based herbicides.  Monsanto lacks

information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 35 and accordingly denies the same.  The remaining allegations in paragraph 35 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

36.     Monsanto denies the allegations in paragraph 36.

37.     In response to the allegations in paragraph 37, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

38.     In response to the allegations in paragraph 38, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 38 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

39.     Monsanto denies the allegations in paragraph 39.

40.     In response to the allegations in paragraph 40, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 40 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 40.

41.     In response to the allegations in paragraph 41, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 41, which are not limited as of any specified date, and accordingly denies the same.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

42.     In response to the allegations in paragraph 42, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 42.

43.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 and therefore denies those allegations.

44.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 and therefore denies those allegations.

45.     Monsanto denies the allegations in paragraph 45 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

46.     In response to the allegations in paragraph 46, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one-week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 46.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

47.    In response to the allegations in paragraph 47, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

48.    The allegations in paragraph 48 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

49.    In response to the allegations in paragraph 49, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 49.

50.    In response to the allegations in paragraph 50, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

51.    Monsanto denies the allegations in paragraph 51.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

52.     In response to the allegations in paragraph 52, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

53.     In response to the allegations in paragraph 53, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 54.

55.     In response to the allegations in paragraph 55, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between

1    glyphosate and the specified cancers.  The AHS cohort study did not find a positive association

2    between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph

3    57.

4         58.    In response to the allegations in paragraph 58, Monsanto admits that EPA has a

5    technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water

6    regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which

7    should be read in context of EPA's precautionary regulatory mandate and EPA's consistent

8    finding that glyphosate does not pose any cancer risk to humans.

9         59.    In response to the allegations in paragraph 59, Monsanto admits that the

10   Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the

11   Coalition provides any reliable basis for any conclusions regarding potential health risks from

12   glyphosate.  Monsanto notes that a federal district court has characterized this same publication

13   as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928

14   F. Supp. 2d 10, 24 (D.D.C. 2013).

15        60.    Monsanto states that the term "toxic" as used in paragraph 60 is vague and

16   ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto

17   denies the allegations in paragraph 60.

18        61.    In response to the allegations in paragraph 61, Monsanto admits that Julie Marc

19   published the cited study in 2002 and states that the document speaks for itself and does not

20   require a response.  To the extent that a response is deemed required, Monsanto denies the

21   allegations in paragraph 61.

22        62.    In response to the allegations in the first sentence of paragraph 62 Monsanto

23   admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle

24   regulation" in 2004.  To the extent that the first sentence of paragraph 62 characterizes the

25   meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 62.

26   In response to the remaining allegations in paragraph 62, Monsanto states that the document

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

speaks for itself and does not require a response.  To the extent that a response is deemed

required, Monsanto denies the remaining allegations in paragraph 62.

63.    In response to the allegations in paragraph 63, Monsanto states that the cited

document speaks for itself and does not require a response.  To the extent that paragraph 63

characterizes the meaning of the cited study, Monsanto denies the remaining allegations in

paragraph 63.

64.    In response to the allegations in paragraph 64, Monsanto states that the cited

document speaks for itself and does not require a response.  To the extent that paragraph 64

characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies

support the allegation that glyphosate or Roundup®-branded products pose any risk to human

health and denies the remaining allegations in paragraph 64.

65.    In response to the allegations in paragraph 65, Monsanto states that the terms "at

all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies the

allegations in paragraph 65.

66.    In response to the allegations in paragraph 66, Monsanto denies that glyphosate or

Roundup®-branded products cause cancer.  The allegations in paragraph 66 take statements out

of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney

characterizations – and are accordingly denied.

67.    Monsanto denies the allegations in paragraph 67.

68.    Monsanto admits that it has \ promoted\ Roundup®-branded herbicides as safe

when used in accordance with the products' labeling.  Monsanto denies the remaining allegations

in paragraph 68.

69.    Monsanto lacks information or knowledge sufficient to form a belief as to the

truth of the allegations in the first two sentences of paragraph 69 and therefore denies those

allegations.  In response to the third sentence of paragraph 69 and the quotation therein,

Monsanto admits that plaintiff has accurately quoted from the cited document, but states that the

cited document speaks for itself.  Monsanto further states that: (a) in September 2016, EPA's

- 14 -

OPP issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[4]; and (b) at the same time, EPA posted an October 2015 final report by its standing CARC, in which that committee endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[5]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[6]  The remaining allegations in paragraph 69 comprise attorney characterizations and are accordingly denied.

70.     In response to the allegations in paragraph 70, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 70 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

71.     In response to the allegations in paragraph 71, Monsanto states that the cited report speaks for itself and does not require a response.  The remaining allegations in paragraph 71 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

72.     In response to the allegations in the first sentence of paragraph 72, Monsanto admits that EPA held a FIFRA Scientific Advisory Panel ("SAP") from December 13-16, 2016. In response to the allegations in the third sentence of paragraph 71, Monsanto states that the cited

---

[4] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/ document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[5] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[6] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

report speaks for itself and does not require a response.  The remaining allegations in paragraph 72 are vague, incomplete, and conclusory and/or comprise attorney characterizations – and are accordingly denied.

73.     In response to the allegations in paragraph 73, Monsanto denies that the OPP Report is a "draft assessment."  The remaining allegations in paragraph 73 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

74.     In response to the allegations in paragraph 74, Monsanto admits that the final SAP meeting minutes and report were released and states that the cited documents speak for themselves and thus do not require any further response.  The remaining allegations in paragraph 74 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

75.     In response to the allegations in paragraph 75, Monsanto admits that certain documents were recently unsealed in the federal multidistrict litigation proceedings involving Roundup®-branded products.  Monsanto denies the remaining allegations in paragraph 75.

76.     Monsanto denies the allegations in paragraph 76.

77.     The allegations in paragraph 77 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

78.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 78 regarding Jess Rowland and therefore denies those allegations.  The allegations in paragraph 78 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

79.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 79 regarding Jess Rowland and the Agency for Toxic Substances and Diseases and therefore denies those allegations.  The allegations in paragraph 79 take statements in the cited document out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

80.     The allegations in paragraph 80 take statements in the cited documents out of context, are vague, incomplete, and conclusory, and/or comprise attorney characterizations – and are accordingly denied.

81.     In response to the allegations in paragraph 81, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 82.

83.     Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[7]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 87 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 87.

---

[7] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

88.     The allegations in paragraph 88 set forth conclusions of law for which no response is required.

89.     The allegations in paragraph 89 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

90.     In response to the allegations in paragraph 90, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

91.     In response to the allegations in paragraph 91, Monsanto admits that plaintiff accurately quotes from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[8]  The remaining allegations in paragraph 91 comprise attorney characterizations and are accordingly denied.

92.     In response to the allegations in paragraph 92, Monsanto admits that the Superior Court of California issued a ruling adverse to Monsanto in Monsanto's lawsuit against OEHHA. Monsanto admits the allegations in the final sentence of paragraph 92, but states that OEHHA itself considers the process by which glyphosate was added to California's Proposition 65 list of chemicals "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that OEHHA's decision to

---

[8] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

1    add glyphosate to California's Proposition 65 list of chemicals was not based upon any

2    independent scientific analysis of glyphosate but instead was in response to a provision of a

3    California ballot proposition triggering such action based solely upon the IARC classification,

4    and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent

5    evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to

6    humans."[9]  Monsanto contends that OEHHA's decision that it was required to list glyphosate

7    violates the United States Constitution and the California Constitution.  Monsanto further notes

8    that the listing of glyphosate took place on July 7, 2017, but that under Proposition 65 the

9    effective date of any requirement to provide warnings is July 7, 2018.  On February 26, 2018, a

10   federal district court enjoined California from requiring Proposition 65 warning labels for

11   glyphosate as unconstitutional.

12        93.    In response to the allegations in paragraph 93, Monsanto admits that OEHHA

13   published a notice that glyphosate would be included on its Proposition 65 listing and admits that

14   this notice was not based upon any independent scientific analysis of glyphosate but instead was

15   in response to a section of the Labor Code triggering such action based solely upon the IARC

16   classification.  Monsanto further states that OEHHA concluded in 2007, based upon its own

17   independent evaluation of the scientific evidence, that glyphosate is "unlikely to pose a cancer

18   hazard to humans."  Monsanto contends that OEHHA's decision that it was required to list

19   glyphosate violates the United States Constitution and the California Constitution.  On February

20   26, 2018, a federal district court enjoined California from requiring Proposition 65 warning

21   labels for glyphosate as unconstitutional.

22        94.    Monsanto admits the allegations in paragraph 94.

23        95.    Monsanto admits the allegations in paragraph 95.

24        96.    In response to the allegations in paragraph 96, Monsanto admits that, on

25   November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal

26   _____

27   [9] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007),
     https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

97.     In response to the allegations in paragraph 97, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 97.

98.     Monsanto admits the allegations in paragraph 98.

99.     In response to the allegations in paragraph 99, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 99 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumor incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[11]  To the extent that paragraph 99 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 99.

100.     In response to the allegations in paragraph 100, Monsanto states that the cited document speaks for itself and does not require a response.

101.     In response to the allegations in paragraph 101, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those

---

[10] *See* EFSA, *Glyphosate:  EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

which occur in the ordinary use of glyphosate-based herbicides. Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

102.     In response to the allegations in paragraph 102, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 102 (hereinafter, "the Portier letter"). Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field." Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel. Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

103.     In response to the allegations in paragraph 103, Monsanto admits that Dr. Portier sent the letter identified in paragraph 105. Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field." Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel.

104.     In response to the allegations in paragraph 104, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12] To the extent that paragraph 104 characterizes the meaning

---

[12] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

1   of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining

2   allegations in paragraph 104.

3          105.    In response to the allegations in paragraph 105, Monsanto admits that IARC

4   concluded that the human epidemiologic data provides only "limited evidence of

5   carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not

6   be ruled out with reasonable confidence."[13]  Monsanto further admits that Dr. Portier – who has

7   been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer

8   litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by

9   EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to

10   humans."[14]  In response to the remaining allegations in paragraph 105, Monsanto states that the

11   cited Portier letter speaks for itself and does not require a response.  To the extent that paragraph

12   105 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate,

13   Monsanto denies the remaining allegations in paragraph 105.

14          106.    In response to the allegations in paragraph 106, Monsanto states that the cited

15   Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

16   Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the

17   glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific

18   conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a

19   carcinogenic hazard to humans."[15]  To the extent that paragraph 106 characterizes the meaning

20   of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the

21   remaining allegations in paragraph 106.

22          107.    In response to the allegations in paragraph 107, Monsanto states that the cited

23   Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr.

24

---

25   [13] http://publications.iarc.fr/_publications/media/download/4566/1f986e57ea2ddd9830fec223aeabc740d0bb2eca.pdf

26   [14] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.

27   [15] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.

28

Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[16]  To the extent that paragraph 107 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 107.

108.    Monsanto admits the allegations in paragraph 108.

109.    In response to the allegations in paragraph 109, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 109 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 109.

110.    In response to the allegations in paragraph 110, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 110 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 110.

111.    In response to the allegations in paragraph 111, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 111 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 111.

112.    In response to the allegations in paragraph 112, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the

---

[16] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

extent that paragraph 112 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 112.

113.    In response to the allegations in paragraph 113, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 113 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 113.

114.    In response to the allegations in paragraph 114, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 114 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 114.

115.    In response to the allegations in paragraph 115, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 115 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 115.

116.    Monsanto denies the allegations in paragraph 116.

117.    Monsanto admits the allegations in paragraph 117.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

118.    In response to the allegations in paragraph 118, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

119.    In response to the allegations in paragraph 119, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced

meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 119.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

120.    Monsanto admits the allegations in paragraph 120.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

121.    Monsanto admits the allegations in paragraph 121.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

122.    Monsanto admits the allegations in paragraph 122.

123.    In response to the allegations in paragraph 123, Monsanto admits that the EU voted to extend the glyphosate license for five more years.  In response to the remaining allegations in paragraph 123, Monsanto states that the cited document speaks for itself and does not require a response.

124.    Monsanto incorporates by reference its responses to paragraphs 1 through 123 in response to paragraph 124 of plaintiff's Complaint.

125.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 125.  In response to the allegations in the second sentence of paragraph 125, Monsanto denies that there is any risk of NHL or other serious illness associated with or linked to the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 125 set forth conclusions of law for which no response is required.

126.    In response to the allegations in paragraph 126, Monsanto denies that exposure to Roundup®-branded products and glyphosate is injurious to human health and denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-

branded products and glyphosate.  Monsanto states, however, that the scientific studies upon

which IARC purported to base its cancer classification for glyphosate were all publicly available

before March 2015.  The remaining allegations in the first sentence of paragraph 126 set forth

conclusions of law for which no response is required.  Monsanto lacks information or knowledge

sufficient to form a belief as to the truth of the remaining allegations in the final sentence of

paragraph 126 and therefore denies those allegations.

127.     The allegations in paragraph 127 set forth conclusions of law for which no

response is required.  To the extent that a response is deemed required, Monsanto denies the

allegations in paragraph 127.  Monsanto states that the scientific studies upon which IARC

purported to base its cancer classification for glyphosate were all publicly available before

March 2015.

128.     Monsanto denies the allegations in paragraph 128.

129.     Monsanto denies that exposure to Roundup®-branded products and glyphosate

exposed plaintiff to risk of his alleged cancer and denies the remaining allegations in paragraph

129.  Monsanto states, however, that the scientific studies upon which IARC purported to base

its cancer classification for glyphosate were all publicly available before March 2015.

130.     Monsanto denies the allegations in the first and last sentences of paragraph 130.

The remaining allegations in paragraph 130 set forth conclusions of law for which no response is

required.  Monsanto states, however, that the scientific studies upon which IARC purported to

base its classification were all publicly available before March 2015.

131.     In response to the allegations in paragraph 131, Monsanto denies that there is any

risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-

branded products and glyphosate.  The remaining allegations in paragraph 131 set forth

conclusions of law for which no response is required, consist of attorney characterizations and

are accordingly denied, or comprise allegations for which Monsanto lacks information or

knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore

denies those allegations.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

132.    The allegations in paragraph 132 set forth conclusions of law for which no response is required.

133.    Monsanto denies the allegations in paragraph 133.

134.    The allegations in paragraph 134 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 134.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015

135.    Monsanto incorporates by reference its responses to paragraphs 1 through 134 in response to paragraph 135 of plaintiff's Complaint.

136.    In response to the allegations in paragraph 136, Monsanto admits that plaintiff purports to bring claims for strict liability design defect but denies any liability as to that claim.

137.    Monsanto denies the allegations in paragraph 137.

138.    In response to the allegations in paragraph 138, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 138.

139.    Monsanto denies the allegations in paragraph 139.

140.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 140 and therefore denies those allegations.

141.    Monsanto denies the allegations in paragraph 141.

142.    Monsanto denies the allegations in paragraph 142.

143.    Monsanto denies the allegations in paragraph 143.

144.    Monsanto denies the allegations in paragraph 144 and each of its subparts.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

145.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 145 concerning plaintiff's claimed use of Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 145, including that Roundup® branded products have "dangerous characteristics."

146.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 146 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 146, including that Roundup®-branded products have "dangerous characteristics."

147.    Monsanto denies the allegations in paragraph 147.

148.    Monsanto denies the allegations in paragraph 148.

149.    Monsanto denies the allegations in paragraph 149.

150.    Monsanto denies the allegations in paragraph 150.

151.    Monsanto denies the allegations in paragraph 151.

152.    Monsanto denies the allegations in paragraph 152.

153.    Monsanto denies the allegations in paragraph 153.

154.    Monsanto denies the allegations in paragraph 154.

155.    Monsanto denies the allegations in paragraph 155.

156.    In response to the first sentence in paragraph 156, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 156 sets forth a conclusion of law for which no response is required.

157.    Monsanto incorporates by reference its responses to paragraphs 1 through 156 in response to paragraph 157 of plaintiff's Complaint.

158.    In response to the allegations in paragraph 158, Monsanto admits that plaintiff purports to bring claims for strict liability failure to warn, but denies any liability as to that claim.

- 29 -

1    159.    Monsanto denies the allegations in paragraph 159.

2    160.    Monsanto lacks information or knowledge sufficient to form a belief as to the

3  truth of the allegations in paragraph 160 that plaintiff or other persons or entities purchased

4  Roundup®-branded products and therefore denies those allegations.  The allegations in paragraph

5  160 also set forth conclusions of law for which no response is required.  Monsanto denies the

6  remaining allegations in paragraph 160.

7    161.    The allegations in paragraph 161 set forth conclusions of law for which no

8  response is required.

9    162.    Monsanto denies the allegations in paragraph 162.  All labeling of Roundup®-

10 branded products has been and remains EPA-approved and in compliance with all federal

11 requirements under FIFRA.

12   163.    Monsanto denies the allegations in paragraph 163.

13   164.    Monsanto denies the allegations in paragraph 164.

14   165.    Monsanto denies the allegations in paragraph 165.

15   166.    Monsanto lacks information or knowledge sufficient to form a belief as to the

16 truth of the allegations in paragraph 166 and therefore denies those allegations.

17   167.    Monsanto lacks information or knowledge sufficient to form a belief as to the

18 truth of the allegations in paragraph 167 concerning plaintiff's claimed use of Roundup®-branded

19 products and therefore denies those allegations.  Monsanto denies the remaining allegations in

20 paragraph 167, including that Roundup®-branded products have "dangerous characteristics.

21   168.    Monsanto lacks information or knowledge sufficient to form a belief as to the

22 truth of the allegations in paragraph 168 concerning plaintiff's claimed use of and exposure to

23 Roundup®-branded products and therefore denies those allegations.  Monsanto denies the

24 remaining allegations in paragraph 168, including that Roundup®-branded products have

25 "dangerous characteristics."

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

169.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 169 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 169.

170.     Monsanto denies the allegations in paragraph 170.

171.     Monsanto denies the allegations in paragraph 171.

172.     Monsanto denies the allegations in paragraph 172.

173.     Monsanto denies the allegations in paragraph 173.

174.     Monsanto denies the allegations in paragraph 174.

175.     Monsanto denies the allegations in paragraph 175.

176.     Monsanto denies the allegations in paragraph 176.

177.     Monsanto denies the allegations in paragraph 177.

178.     Monsanto denies the allegations in paragraph 178.

179.     In response to the first sentence in paragraph 179, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 179 sets forth a conclusion of law for which no response is required.

180.     Monsanto incorporates by reference its responses to paragraphs 1 through 179 in response to paragraph 180 of plaintiff's Complaint.

181.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 181 regarding the specific products allegedly purchased or used by plaintiff and therefore denies the allegations in paragraph 181.

182.     The allegations in paragraph 182 set forth conclusions of law for which no response is required.

183.     The allegations in paragraph 183 set forth conclusions of law for which no response is required.

1      184.    Monsanto denies the allegations in paragraph 184.

2      185.    Monsanto denies the allegations in paragraph 185.

3      186.    Monsanto lacks information or knowledge sufficient to form a belief as to the

4   truth of the allegations in paragraph 186 regarding users' and consumers' knowledge and

5   therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 186.

6   All labeling of Roundup®-branded products has been and remains EPA-approved and in

7   compliance with all federal requirements under FIFRA.

8      187.    Monsanto denies the allegations in paragraph 187.

9      188.    Monsanto denies the allegations in paragraph 188.

10     189.    Monsanto denies the allegations in paragraph 189, including each of its subparts.

11     190.    Monsanto denies the allegations in paragraph 190.

12     191.    Monsanto lacks information or knowledge sufficient to form a belief as to the

13   truth of the allegations in paragraph 191 regarding plaintiff's knowledge and therefore denies

14   those allegations.  Monsanto denies the remaining allegations in paragraph 191, including that

15   intended use of and/or exposure to Roundup®-branded products causes any injuries.

16     192.    Monsanto denies the allegations in paragraph 192.

17     193.    Monsanto denies the allegations in paragraph 193.

18     194.    Monsanto denies the allegations in paragraph 194.

19     195.    Monsanto denies the allegations in paragraph 195.

20     196.    In response to the first sentence in paragraph 196, Monsanto demands that

21   judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed,

22   with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as

23   allowed by law and such further and additional relief as this Court may deem just and proper.

24   The statement in the last sentence of paragraph 196 sets forth a conclusion of law for which no

25   response is required.

26     197.    Monsanto incorporates by reference its responses to paragraphs 1 through 196 in

27   response to paragraph 197 of plaintiff's Complaint.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

198.     Monsanto denies the allegations in paragraph 198.

199.     The allegations in paragraph 199 and each of its subparts set forth conclusions of law for which no response is required.

200.     In response to the allegations in paragraph 200, Monsanto denies that it has failed to properly disclose risks associated with Roundup®-branded products.  The remaining allegations in paragraph 200 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

201.     In response to the allegations in paragraph 201, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling.  Monsanto further states that paragraph 201 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 201.

202.     Monsanto denies the allegations in the first and second sentences of paragraph 202.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence of paragraph 202 sets forth conclusions of law for which no response is required.

203.     The allegations in paragraph 203 set forth conclusions of law for which no response is required.

204.     Monsanto denies the allegations in paragraph 204.

205.     Monsanto denies the allegations in paragraph 205 and each of its subparts.

206.     Monsanto states that the allegation in paragraph 206 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 206 and therefore denies those allegations.

207.     Monsanto denies the allegations in paragraph 207.

208.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 208 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 208.

209.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 209 and therefore denies those allegations.

210.    Monsanto denies the allegations in paragraph 210.

211.    Monsanto denies the allegations in paragraph 211.

212.    Monsanto denies the allegations in paragraph 212.

213.    In response to the allegations in paragraph 213, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

214.    Monsanto incorporates by reference its responses to paragraphs 1 through 213 in response to paragraph 214 of plaintiff's Complaint.

215.    Monsanto denies the allegations in paragraph 215.

216.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 216 concerning plaintiff's claimed use of and exposure to Roundup®-branded products and therefore denies those allegations.  The remaining allegations in paragraph 216 set forth conclusions of law for which no response is required.

217.    Monsanto denies the allegations in paragraph 217.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

218.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 218 regarding plaintiff reliance and therefore denies those allegations.  The remaining allegations in paragraph 218 set forth conclusions of law for which no response is required.

219.    The allegations in paragraph 219 set forth conclusions of law for which no response is required.

220.    The allegations in paragraph 220 set forth conclusions of law for which no response is required.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

221.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 221 and therefore denies those allegations.

222.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 222 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations.  The remaining allegations in paragraph 222 set forth conclusions of law for which no response is required.

223.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 223 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 223 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 223.

224.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 224 regarding plaintiff's claimed use of Roundup®-branded products or plaintiff's claimed reliance and therefore denies those allegations.  The allegation in paragraph 224 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

225.     Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 225 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 225.

226.     Monsanto denies the allegations in paragraph 226.

227.     Monsanto denies the allegations in paragraph 227.

228.     Monsanto denies the allegations in paragraph 228.

229.     Monsanto denies the allegations in paragraph 229.

230.     In response to the first sentence in paragraph 230, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed,

with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of paragraph 230 sets forth a conclusion of law for which no response is required.

In response to the allegations in the section entitled "PRAYER," Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.   The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.   Venue may be improper and/or inconvenient for some or all of plaintiff's claims.

3.   Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.   Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injury.

5.   Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.   Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

7.   Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.   Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

9.   Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10. Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11. Plaintiff's claims are barred, in whole or in part, because plaintiff's injury, if any, were the result of conduct of plaintiff's, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

12. The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

13. Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

14. Plaintiff's  misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

15. If plaintiff's suffered injury or damage as alleged, which is denied, such injury or damage resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that

- 37 -

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:20-cv-04841-VC

are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damage.

16. Monsanto had no legal relationship or privity with plaintiff and owed no duty to her by which liability could be attributed to it.

17. Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

18. Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19. Plaintiffs' claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Arizona Constitution, the Minnesota Constitution, and/or other applicable state constitutions.

20. Plaintiffs' claims for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Arizona law, Minnesota law and/or other applicable state laws.

21. Plaintiffs' claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law, including Ariz. Rev. Stat. § 12-689.

22. Plaintiffs'Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

23. Plaintiff's recovery may be barred or limited by Minn. Stat. § 604.01.

24. Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

25. Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

26. Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff has received and/or will receive from collateral sources.

27. If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

28. Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

29. Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

30. Plaintiff's claim for breach of implied warranties is barred because Arizona does not recognize a separate cause of action for breach of implied warranty in the product liability context.

31. Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.


DATED:  August 19, 2020                    Respectfully submitted,


                                           /s/ Joe G. Hollingsworth
                                           Joe G. Hollingsworth (*pro hac vice*)
                                           (jhollingsworth@hollingsworthllp.com)
                                           Eric G. Lasker (*pro hac vice*)
                                           (elasker@hollingsworthllp.com)
                                           HOLLINGSWORTH LLP
                                           1350 I Street, N.W.
                                           Washington, DC  20005
                                           Telephone:  (202) 898-5800
                                           Facsimile:   (202) 682-1639

                                           *Attorneys for Defendant*
                                           *MONSANTO COMPANY*

- 39 -