UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br>*Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | **JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to PTO 216 and this Court's Order to Reschedule Case Management Conference [Dkt. No. 11425], the parties have conferred and are submitting this joint case management statement in advance of the August 27, 2020 case management conference.

**PLAINTIFFS' RESPONSE TO PTO 216**

Monsanto has set forth below the general settlement process, and presumably most of the MDL Plaintiffs will be subject to a multi-step aggregate settlement process as generally described below. It is important to note, however, that settlements between Monsanto and various claimants involve different confidential settlement agreements that are being negotiated with different details and timelines depending on the plaintiffs' firm who represents the claimant or claimants. Those differences will impact the filing of dismissals, as the process for filing dismissals is specified in the master settlement agreement.

Despite the above, Co-Lead Counsel believes the parties' response to PTO 216 should also include a list of law firms that have signed binding MSAs and/or non-binding Term Sheets with Monsanto, to include a list of the MDL Plaintiffs subject to those binding agreements. As stated above, because these are private and confidential agreements, Co-Lead Counsel does not have access to this information despite asking for it in advance of the filing.

Therefore, Co-Lead Counsel is only able to respond to PTO 216 with respect to their individual law firms.

Finally, as individual MDL law firms are at different phases of their settlement negotiations, Co-Lead Counsel has been informed that some MDL law firms will be submitting separate submissions regarding the status of their settlement.

**MONSANTO'S RESPONSE TO PTO 216**

Monsanto and some law firms have entered into private confidential agreements that set up a settlement process relating to the clients of those firms. Monsanto continues to have settlement discussions and hopes to enter into agreements or finalize agreements with other firms. Monsanto recognizes that the Court is looking for guidance as to where the various claimants are in stages of the settlement process, the number of dismissals that will eventually be filed and when dismissals might be expected. But as plaintiffs note above, the settlements between Monsanto and various claimants involve different confidential settlement agreements that are being negotiated with different details and timelines depending on the plaintiffs' firm who represents the claimant or claimants and that impacts the timing of the filing of dismissals. Public submission of details of discussions with specific firms would put those settlement efforts at risk. The Court can, of course, discuss all matters relating to possible settlements with the Special Master -- as contemplated by the process that the Court established. Alternatively, given the confidential nature of the settlement process, Monsanto would be willing to provide information regarding the status of the various settlement agreements to the Court under seal and to provide any updates to the Court on a confidential, regular basis (e.g., monthly).

Settlement processes of this type often contain numerous preconditions that must be met prior to finalizing individual settlements. For example, these agreements often contain

requirements that each claimant submit a claims package, and a settlement claims administrator must review that package to confirm that each claimant is eligible to participate. Settlement agreements of this type may also contain provisions for the parties to conduct random audits relating to eligibility determinations made by the claims administrator. Additionally, these agreements generally contain provisions that require that a certain percentage of the firm's claimants participate in the settlement program and may also limit the number of claimants that can "opt out" of the settlement program. The parties generally retain walkaway rights until those participation requirements are met, and no payments to any individual claimant can be made until the parties' walkaway rights have expired and have not been exercised.

Finalizing these settlements is usually dependent on each individual claimants' review of the agreement and their consent to the terms. In order to ensure that each claimant is properly informed about the agreement, attorneys representing claimants explain the terms of the agreement to each of the claimants and help each claimant evaluate his or her options for how to proceed. No individual whose claims are part of an aggregate settlement is required to accept the terms of the agreement. This process sometimes requires several communications between claimants and his/her counsel. Moreover, each claimant is often required to provide a claims package to participate in the settlement, which includes documents to support the claimant's eligibility to participate in the program as well as a release of his or her claims. Therefore, when dealing with settlements that contain tens of thousands of claimants, these discussions can take several months to complete.

As noted above, these types of settlements require the claims administrator to review the claims package submitted by each claimant and determine whether the proper documentation has been provided and that the claimant meets the eligibility requirements. If

the claims administrator finds that the claims package submitted by an individual claimant is deficient in some way, the claimant often will have a time period to cure that deficiency. If the claims administrator determines that a claimant is ineligible even after the period to cure the deficiency, these settlement agreements generally provide a right for the claimant to appeal a determination of ineligibility. Finally, individual claimants are often required to certify that all medical liens or other costs will be borne by the claimant and have been satisfied or will be satisfied before receiving a settlement payment. No payments to any individual claimant can be made and no dismissals can be filed with the Court until all these preconditions are met and a release provided.

This multi-step process of settlement takes many months if not a year to complete. Indeed, in the Xarelto MDL before Judge Fallon in the Eastern District of Louisiana, part of a litigation that contained around 25,000 lawsuits, the settlement was first announced on March 25, 2019 (See Ex. 1, March 25, 2019 Press Release), and the first MDL cases were not officially dismissed until February 26, 2020. See Ex. 2, *In Re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592 (E.D. La.), Dkt. No 17605. Additional cases were still being dismissed as recently as July 2020. See Ex. 3, *In Re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592 (E.D. La.), Dkt. No 17797. Likewise, in the Fluoroquinolone MDL before Judge Tunheim in the District of Minnesota, the settlement was first publicly announced on January 2, 2019 (See Ex. 4, January 7, 2019 Mealey's Daily News Update) and the 315 MDL cases subject to the settlement were not dismissed until October 15, 2019. See Ex. 5, *In Re: Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642 (D. Minn.), Dkt. No. 905. In the Testosterone Replacement Therapy MDL before Judge Kennelly in the Northern District of Illinois, the settlement was first announced on June 11, 2018 (See Ex. 6, June 11, 2018 Press Release), and dismissals did not begin until December 2018. See Ex. 7, *In Re:*

*Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545 (Case No. 1:16-cv-00913), (N.D. Ill.), Dkt. No. 22. Additional cases were still being dismissed as of January 2020. See Ex. 8, *In Re: Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545 (Case No. 1:18-cv-01592), (ND. Ill.), Dkt. No. 5. In the Medtronic implantable cardiac devices MDL, before Judge Kyle in the District of Minnesota, the parties announced that they reached a settlement agreement on October 14, 2010. (See Ex. 9 October 14, 2010 press release). The MDL court dismissed cases entering into the settlement agreement eight months later, on June 30, 2011. (See Ex. 10, *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, MDL No. 08- 1905 (D. Minn.), Dkt. No. 424.

Given the multistep process involved in executing these types of agreements, there is only one case that can be dismissed at this time; *Elaine Stevick v. Monsanto* (3:16-cv-02341). Likewise, the only pending motion that can be terminated is motion number 2419, Motion for Summary Judgment re: Tier 1 Plaintiffs on Non-Causation Grounds filed by Monsanto Company, as it pertains to Ms. Stevick. The motion remains pending as it pertains to Plaintiff Gebeyehou. However, some individual motions, particularly in Wave One, may become moot as a result of planned mediations or separate settlement agreements for individual cases. The parties can provide monthly updates to the Court, if the Court would like, in advance of the November conference.

Finally, there are some law firms representing individuals in the MDL proceeding with whom settlement discussions have not begun. Monsanto proposes that the Court establish a process under the auspices of the Special Master to mediate the cases of those firms as soon as possible. Monsanto can provide a list of those firms to the Court *in camera*.

| | | |
|---|---|---|
| 1 | DATED: August 20, 2020 | Respectfully submitted, |
| 2 | | /s/ William Hoffman |
| | | William Hoffman (*pro hac vice*) |
| 3 | | (william.hoffman@arnoldporter.com) |
| 4 | | ARNOLD & PORTER KAYE SCHOLER LLP |
| 5 | | 601 Massachusetts Ave NW, |
| 6 | | Washington, DC 20001 |
| | | Tel: 202-942-6915 |
| 7 | | Fax: 202-942-5999 |
| 8 | | /s/ Brian L. Stekloff |
| | | Brian L. Stekloff (*pro hac vice*) |
| 9 | | (bstekloff@wilkinsonwalsh.com) |
| 10 | | Rakesh Kilaru (*pro hac vice*) |
| | | (rkilaru@wilkinsonwalsh.com) |
| 11 | | WILKINSON WALSH LLP |
| 12 | | 2001 M St. NW |
| | | 10th Floor |
| 13 | | Washington, DC 20036 |
| | | Tel:   202-847-4030 |
| 14 | | Fax:   202-847-4005 |
| 15 | | /s/ Joe G. Hollingsworth |
| 16 | | Joe G. Hollingsworth (*pro hac vice*) |
| | | (jhollingsworth@hollingsworthllp.com) |
| 17 | | Eric G. Lasker (*pro hac vice*) |
| | | (elasker@hollingsworthllp.com) |
| 18 | | HOLLINGSWORTH LLP |
| 19 | | 1350 I Street, N.W. |
| | | Washington, DC  20005 |
| 20 | | Telephone:  (202) 898-5800 |
| 21 | | *Attorneys for Defendant* |
| | | *MONSANTO COMPANY* |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

/s/ Robin L. Greenwald
Robin L. Greenwald
WEITZ & LUXENBERG
700 Broadway
New York, NY 10003

/s/ Michael Miller
Michael Miller
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

/s/ Aimee H. Wagstaff
Aimee H. Wagstaff
ANDRUS WAGSTAFF
7171 W. Alaska Drive
Lakewood, CO 80226

*Attorneys for Plaintiffs*