Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Fl.
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Additional Counsel for
Plaintiff Aaron Sheller on Signature Page

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Sheller v. Bayer AG, et al.*, Case No. 3:19-cv-07972<br><br>*Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | **PLAINTIFF AARON SHELLER'S CORRECTED SECOND RENEWED MOTION TO APPOINT FEGAN SCOTT LLC AS INTERIM CLASS COUNSEL FOR THE MEDICAL MONITORING CLASS**<br><br>Hearing Date: September 24, 2020<br><br>Time: 10:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on September 24, 2020 at 10:00 a.m., in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Plaintiffs Aaron Sheller and Kabe Cane ("Movants") will present Mr. Sheller's Second Renewed Motion to Appoint Fegan Scott LLC as Interim Class Counsel for the Medical Monitoring Class.

Movants seek appointment of Fegan Scott LLC as Interim Class Counsel for the Medical Monitoring Class. Movants' Motion is brought pursuant to Fed. R. Civ. P. 23(g) and is based on this Notice, the following memorandum of points and authorities, the exhibits appended thereto, and any additional argument or evidence this Court may consider.

Dated: August 24, 2020

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
T: 312-741-1019
F: 312.264.0100
beth@feganscott.com

*Counsel for Movants and Proposed Interim Lead Counsel for the Medical Monitoring Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY ...........................................5

    A.      Summary of Factual Allegations against Defendants...................................5

    B.      The Litigations..........................................................................................5

    C.      The Withdrawn Settlement and Continuing Settlement Negotiations...........7

       1.      The proposed settlement terms disproportionately prejudiced the Medical Monitoring Class. ...............................................................................7

       2.      The terms of the Settlement reflected immutable conflicts of interest which are important to understand the backdrop against which settlement negotiations continue. ....8

    D.      Meet and Confers........................................................................................9

III.    LEGAL STANDARD .............................................................................................9

IV.     ARGUMENT .......................................................................................................10

    A.      Appointment of Interim Class Counsel is necessary to protect the interests of the Medical Monitoring Class. ......................................................................10

    B.      Settling Counsel's belated, informal designation of subclass counsel fails to protect the class's interests. ........................................................................12

    C.      Fegan Scott should be appointed interim class counsel.............................14

V.      CONCLUSION ...................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................ 4, 11, 12, 13

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................ 10, 11

*In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*,
    No. 2590, 2015 U.S. Dist. LEXIS 34662 (N.D. Ill. Mar. 5, 2015) .................. 10

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*,
    654 F.3d 242 (2d Cir. 2011) .................................................... 11, 13

*Simpkins v. Wells Fargo Bank, N.A.*,
    2013 WL 12051028 (S.D. Ill. June 28, 2013) .................................. 10

*Smith v. Sprint Commc'ns Co., L.P.*,
    387 F.3d 612 (7th Cir. 2004) .................................................. 12

*Walker v. Discover Fin. Servs.*,
    No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803 (N.D. Ill. May 26, 2011) ........ 10

**Rules**

Fed. R. Civ. P. 23 ............................................................ 2, 4, 9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

It is a fundamental principle in class actions and mass tort cases that "[f]uture claimants must be separated from current claimants and represented by named plaintiffs and subclass counsel whose loyalties run exclusively to them." *See* Declaration of Professor Charles Silver on Adequacy of Representation ("Silver Decl."), at 6, attached as Ex. A. Professor Silver, the Roy W. and Eugenia C. McDonald Endowed Chair in Civil Procedure at the University of Texas School of Law and respected expert in the fields of, *inter alia,* professional responsibility and class actions, explains:

> The importance of 'clarif[ying] responsibility for protecting the interests of the [sub]class during precertification activities, such as . . . negotiating settlement' is obvious and cannot be exaggerated. All settlement negotiations fix the amounts that claimants will receive. When groups of plaintiffs with divergent interests compete for shares of the amount a defendant is willing to contribute to a global resolution, groups that are not represented by loyal advocates bent on maximizing their recoveries must expect to be shortchanged.

Silver Decl. at 10-11. *See also id.,* Ex. 1 to Silver Declaration (Resume of Professor Charles Silver). Despite this and despite Movants' multiple meet and confers over the last 60 days, counsel who have immutable conflicts of interest are currently negotiating a global settlement with Defendants on behalf of both current and future claimants.

It is undisputed that the only plaintiff who was first to pursue, and has exclusively pursued, medical monitoring for a class of persons who have been exposed to Roundup but who have not yet manifested disease is Aaron Sheller and his counsel at Fegan Scott LLC, who filed their original medical monitoring class action complaint in September 2019. Sheller has twice moved to appoint Fegan Scott LLC as interim lead counsel for a subclass of Roundup users who seek medical monitoring for the increased risk they face of developing non-Hodgkin's lymphoma ("NHL") as result of Roundup exposure (the "Medical Monitoring Class").[1] *See* ECF No. 9771. *See also Sheller v. Bayer AG et al.,* No. 1:19-cv-4063 (S.D. Ind.) (ECF No. 19) (motion was

---

[1] Joining Mr. Sheller in this renewed motion is putative class member Kabe Cain (collectively, "Movants"), who was a member of the Settlement Class in the Motion for Preliminary Approval of Class Settlement, ECF No. 11042 ("Preliminary Approval Motion").

pending when transferred to this MDL). Fegan Scott LLC has never represented any persons who have been diagnosed with NHL and thus the firm's interests run exclusively to the Medical Monitoring Class. Nonetheless, Defendants continue to negotiate to settle the interests of the Medical Monitoring Class with attorneys who purport to simultaneously represent both current and future claimants, *rendering any negotiated settlement doomed* – regardless of the amount or structure – because of the inherent conflicts of interest. *See generally* Silver Decl.; *see also generally* Declaration of Mary Robinson, Esq. (legal expert in ethics and professional responsibility) ("Robinson Decl."), attached as Ex. B.

At the time this Court decided Sheller's first renewed motion, the Court recognized that the interests of the Medical Monitoring Class may diverge from those who have already been diagnosed with cancer (the "Personal Injury Plaintiffs"). ECF No. 10587 (Apr. 27, 2020 Pretrial Order No. 211). The Court nevertheless denied Mr. Sheller's motion without prejudice, finding that a conflict was not yet apparent. *Id.* At the time, the Court noted, "the motion present[ed] no reason to believe that negotiations between Monsanto and the currently sick will impact any future negotiations between Monsanto and the exposure-only medical-monitoring class." *Id.* at 2.

That statement is no longer true. Since the Court's decision, certain plaintiffs' counsel ("Settling Counsel")[2] filed a motion to settle the claims of both the exposure-only Medical Monitoring Class and a class of Personal Injury Plaintiffs (the "Personal Injury Class"). *See generally* Preliminary Approval Motion (ECF No. 11042). That now-withdrawn motion and proposed settlement raised "concerns" that made the Court "skeptical of the propriety and fairness of the proposed settlement." ECF No. 11182 (July 6, 2020 Pretrial Order No. 214). Indeed, many of those problems disproportionately impacted the Medical Monitoring Class because of the

---

[2] *See* Settlement Agreement, Art. II, §2.1(q) (identifying proposed Class Counsel as Elizabeth J. Cabraser, Robert L. Lieff, and Steven E. Fineman of Lieff Cabraser Heimann & Bernstein; Samuel Issacharoff; James R. Dugan, II and TerriAnne Benedetto of the Dugan Law Firm, APLC, and William M. Audet of Audet & Partners, LLP); Art. II, §2.1(uuuu) (identifying Mr. Audet as Subclass Counsel for the Personal Injury Class a/k/a "Subclass 1" and Ms. Benedetto as Subclass Counsel for the Medical Monitoring Class a/k/a "Subclass 2").

inherent conflicts of interest of Settlement Counsel. As just one example, the proposed settlement allowed for the settlement administrator to take funds from the relief provided to the Medical Monitoring Class to pay claims to the Personal Injury Class. Silver Decl., §(V)(C) (citing ECF No. 11042-2, Ex. A to Cabraser Decl. ("Settlement Agreement"), §§ 7.4(b), 7.4(b)(i), 7.5)).

The interests of the Medical Monitoring Class were never adequately protected by subclass counsel during the negotiation or settlement process. *Infra,* §§ II.C, IV.B.; *See generally* Silver Decl. For example, no one—other than Fegan Scott LLC—had filed a complaint seeking to create a separate class for future claimants until the settlement was proposed. Silver Decl., §5(A). That was more than three-and-a-half years after the MDL leadership structure had been in place, and more than a year after one of Settling Counsel filed a class action complaint on behalf of the Personal Injury Class. *Id.*; *Ramirez v. Monsanto Company,* 3:19-cv-02224 (N.D. Cal.) ("*Ramirez*") (filed Apr. 24, 2019).[3]

Furthermore, Settling Counsel's informal, private designation of provisional subclass counsel failed to serve as an adequate substitute for truly independent representation. *Infra,* § IV.B.; *See generally* Silver Decl. First, Settling Counsel purported to negotiate on behalf of current and future claimants. *See* Silver Decl., §V(C); *supra,* n. 2 (the Settlement Agreement sought to appoint the same two proposed Subclass Counsel attorneys as Settlement Class Counsel). The lawyer that Settling Counsel assigned to represent the Medical Monitoring Class is an attorney at the Dugan Law Firm, which filed at least one individual case on behalf of a Personal Injury Plaintiff who was *already* diagnosed with NHL, Silver Decl., § V(B)(2), and has allegedly entered into one or more inventory settlements with Defendants on behalf of numerous personal injury claimants, Declaration of Elizabeth A. Fegan ("Fegan Decl."), ¶11, attached as Ex. C. The Settlement also purported to pay Subclass Counsel out of the entire class's recovery, thus removing any incentive Subclass Counsel could have to maximize the recovery of the Medical Monitoring Class over those

---

[3] The *Ramirez* complaint made no request for a medical monitoring subclass nor did it seek medical monitoring relief until it was amended the same day that the proposed settlement was submitted for Court approval. *See id.*; ECF No. 10039 ("*Ramirez* Amended Complaint").

Plaintiff Aaron Sheller's Corrected Second Renewed Motion to Appoint Fegan Scott LLC As Interim Class Counsel for The Medical Monitoring Class, Case No. 3:19-cv-07972

of the Personal Injury Plaintiffs. Silver Decl., §V(C).The actions of Settling Counsel and Settling Subclass Counsel reflect a divided loyalty that cannot be fixed; no amount of "assurance" can fix the very real concern about preferential treatment for current claimants or plaintiffs in inventory settlements over the interests of the proposed class. Silver Decl., § V(B)(2).

Since the withdrawal of the Preliminary Approval Motion, negotiations have continued between Monsanto and the very same counsel who have immutable conflicts of interest and *cannot adequately represent the Medical Monitoring Class.* Fegan Decl., ¶ 9; *See* Silver Decl., § V(B)(2). Movant's counsel has conferred with Settling Counsel on multiple occasions but, to date, the only counsel at the negotiating table for the Medical Monitoring Class are the very same ones with the conflicts reflected in Professor Silver's report. Fegan Decl., ¶¶ 4-11.

Without the formal appointment of independent counsel to represent the Medical Monitoring Class, the class cannot, by definition, be ethically or adequately represented at the negotiating table to ensure "an ample, inflation-protected fund for the future." *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 (1997). The formal appointment of such counsel is required to provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id.* at 627. Accordingly, pursuant to the Supreme Court's direction in *Amchem* and *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999), and in light of the apparent conflict of interest revealed by the Preliminary Approval Motion and terms of the settlement it sought to approve, Movants respectfully request the Court grant this renewed motion for the appointment of Fegan Scott as Interim Class Counsel for the Medical Monitoring Class.[4]

As reflected below, Fegan Scott exceeds the appointment criteria set forth in Fed. R. Civ. P. 23(g). Together with their co-counsel, Fegan Scott has diligently investigated and pursued this action, is committed to advancing the interests of the class, is comprised of highly experienced and dedicated class action and complex litigation practitioners with an expertise in medical monitoring

---

[4] Hereinafter, Plaintiff's counsel—Fegan Scott, RWP, Shindler, Anderson, Goplerud, & Weese, P.C., and Cate, Terry & Gookins LLC—shall collectively be referred to as "Medical Monitoring Counsel."

1  actions, and has devoted the resources necessary to fully prosecute this action. To ensure that

2  counsel can effectively negotiate, collaborate, and safeguard the Medical Monitoring Class's

3  interests, this Court should appoint Fegan Scott as Interim Class Counsel for the Medical

4  Monitoring Class.

5  **II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY**

6  **A.  Summary of Factual Allegations against Defendants**

7  Since at least the 1970s, Defendants have manufactured and sold Roundup, an herbicide

8  that contains the chemical glyphosate. American farmers have traditionally used Roundup to treat

9  the vast majority of corn, soybean, and cotton acres planted in the United States. Commercial

10  landscapers also widely employ Roundup when maintaining nurseries, parks, fields, and lawns.

11  Scientific evidence has established a clear association between glyphosate and genotoxicity,

12  inflammation, and an increased risk of many cancers, including NHL. Despite knowledge,

13  Defendants did not disclose those facts to consumers who purchased and have been exposed to the

14  chemical, including farmers, farmworkers, and landscapers that regularly used substantial amounts

15  of the product. Instead, Defendants actively concealed these truths from consumers.

16  **B.  The Litigations**

17  ***The Medical Monitoring Class Action.*** Mr. Sheller brought his suit on behalf of himself

18  and the Medical Monitoring Class: individuals who have been exposed to Roundup (and

19  glyphosate) through their commercial and agricultural endeavors but have not yet developed

20  cancer.[5] Mr. Sheller is a farmer in Indiana who for years has routinely used Roundup on thousands

21  of acres of his farmland. As a result of Defendants' conduct, Mr. Sheller and the Medical

22  Monitoring Class members are subject to an increased risk of cancer, including lymphoma. His

23  suit seeks to establish a medical monitoring program that monitors class members' health and

24  ensures early diagnosis of Roundup-related cancers.

25

26

27  [5] The Medical Monitoring Class was named "Subclass 2" in the Preliminary Approval Motion;
the Personal Injury Class—comprising those exposed to Roundup and already diagnosed with
NHL—was referred to as "Subclass 1." Settlement Agreement, Art. I, §1.1; §1.2(a), (b).

28

- 5 -

Following significant pre-trial investigation and analysis, Mr. Sheller and his counsel filed his suit on September 30, 2019 in the Southern District of Indiana. On November 12, 2019, Plaintiff filed a Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class and Riley Williams & Piatt as Interim Liaison Counsel. No. 1:19-cv-004063 (S.D. Ind.) (ECF No. 19) ("Motion to Appoint"). The Motion to Appoint was never ruled upon. On November 18, 2019, Monsanto filed a Notice of Potential Tag-Along Action (MDL No. 2741, ECF No. 1425), and the case was transferred to this MDL on December 4, 2019. (ECF No. 8137).

Plaintiff also filed a March 10, 2020 motion to appoint Fegan Scott LLC as interim lead counsel for the Medical Monitoring Class in the MDL. ECF No. 9771. In that motion, Mr. Sheller noted that settlement discussions between Defendants and counsel in the Personal Injury Cases had been active and ongoing since at least spring 2019. However, pursuant to the Supreme Court's decision in *Amchem* and California Rule of Professional Conduct 1.7, separate counsel should have been appointed for the two discrete groups present: i.e., the "currently injured" on the one hand (here, the Personal Injury Cases), and the "exposure-only plaintiffs" on the other hand (here, the Medical Monitoring Class). *Id.* at 626. The Supreme Court explained:

> In significant respects, the interests of those within the single class are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.

*Id. See also* Robinson Decl. and Silver Decl. Mr. Sheller's motion was unopposed. *See* ECF No. 10289 (Apr. 7, 2020 Notice of Non-Opposition). In its April 27, 2020, order on that motion, the Court recognized:

> As Fegan Scott points out, the interests of people with exposure-only claims may diverge from those who have been diagnosed with cancer, because "for the current injured, the critical goal is generous immediate payments," which can conflict with "the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."

ECF No. 10587, p. 2 (quoting *Amchem Prods.*, 521 U.S. at 595). The Court nevertheless denied Plaintiff's motion without prejudice, stating that, at the time:

- 6 -

> [T]he motion presents no reason to believe that negotiations between Monsanto and the currently sick will impact any future negotiations between Monsanto and the exposure-only medical-monitoring class. For example, the motion provided no evidence that these plaintiffs are competing over diminishing assets insufficient to discharge the potential liability. Nor does the motion advance any other interest that justifies departure from the standard order of operations for class actions.

*Id.* at 2. Unfortunately, however, these concerns have now become a reality.

  ***The Personal Injury Cases.*** More than 18,000 individuals who contracted cancer because of Roundup have brought suit against Defendants in this MDL and in state court. In December 2016, this Court appointed a plaintiffs' counsel leadership structure for the Personal Injury Cases. (ECF No. 62). Since that time, general causation discovery has occurred, *Daubert* decisions have been rendered, and three Roundup personal injury cases have been tried, resulting in large verdicts. In April 2019, lead counsel for the Personal Injury Plaintiffs and Defendants were ordered to a confidential mediation. (ECF Nos. 3325, 4441). The Preliminary Approval Motion claims the "settlement discussions began in earnest" "in late July 2019." Cabraser Decl., ¶ 3. Those discussions are continuing now. Fegan Decl., ¶ 9.

### C. The Withdrawn Settlement and Continuing Settlement Negotiations

#### 1. The proposed settlement terms disproportionately prejudiced the Medical Monitoring Class.

  On June 24, 2020, Settling Counsel filed a Motion for Preliminary Approval seeking to resolve the claims of both the Medical Monitoring Class and the Personal Injury Class and appoint themselves class and subclass counsel. But the settlement was plagued with problems, many of which were uniquely prejudicial to the Medical Monitoring Class. *See* Silver Decl. For example, the proposed settlement:

- delegated causation to a science panel, Settlement Agreement, §6.3;

- bound Medical Monitoring Class members to the determination of the science panel made during a four-year period, without the benefit of the scientific developments and data that may arise between the panel's determination and the member developing NHL (aside from an onerous, untenable procedure for re-opening the panel's process), *Id.*;

- defined subclasses but did not segregate the benefits between the subclasses (*e.g.,* it allowed funds to be taken from the Medical Monitoring Class to make payments to members of the Personal Injury Class), *e.g., id.* at §7.4(b)(i);

- precluded Medical Monitoring Class members who are diagnosed after 2025 from applying for the Interim Assistance Grant program (which comprised the bulk of the settlement fund), *e.g., id.* at §10.1(a)(i);

- included provisions allowing the settlement allocation to change after the science panel reached its determination, without providing any safeguard to ensure the Medical Monitoring Class would still be entitled to settlement funds or that the medical monitoring program would continue, *e.g. id.* §§7.4(b), 7.5; 30.1(c); and

- did not tie counsels' attorneys' fees to the subclasses they purported to represent, *id.,* Article XXIV; Preliminary Approval Motion at 15, 31.

*See also* Silver Decl., § VI(C).

### 2. The terms of the Settlement reflected immutable conflicts of interest which are important to understand the backdrop against which settlement negotiations continue.

Settling Counsel failed to propose subclasses with separate representation until the settlement was proposed to the Court in June 2020. Silver Decl., §V(A). By that point, the leadership structure for the MDL had been in place for about three-and-a-half-years and Settling Counsel had been pursuing personal injury claims for over a year. *Id.*, §V(A). The Court had no opportunity to consider or address the adequacy of the proposed class, subclass representatives, or subclass counsel. *Id.*, §V(B). And the material shortcomings with Settling Counsel's belated proposals led to insurmountable flaws with both the settlement and the proposed leadership structure. *Supra*, § II.C.1., *Infra*, § IV.B.

For example, the very counsel charged with representing the Medical Monitoring Class has a conflict with that class. *See* Silver Decl., §V(B)(2). In the Preliminary Approval Motion, James R. Dugan and TeriAnne Benedetto of the Dugan Law Firm were named among Class Counsel. In addition to Ms. Benedetto's role representing the Settlement Class as a whole (including Personal

- 8 -

Injury Class members), she was to represent the conflicting interests of Subclass 2. Of further concern, the Dugan Firm filed a personal injury case for a plaintiff *already* diagnosed with NHL. *Ian M. Bodin v. Monsanto Company*, No: 2:19-cv-11362 (E.D.L.A. June 25, 2019), ECF No. 1, ¶ 99. Moreover, the Dugan Firm has allegedly entered inventory settlements on behalf of numerous other personal injury cases. Fegan Decl., ¶ 11.

The proposed settlement structure also failed to align the interests of subclass counsel and subclass members by linking attorneys' fees to claimants' recoveries. Silver Decl., § IV(D). And the settlement defined the class in such a way that *excluded* the proposed class representatives. *Id.*, § V(B)(1). In other words, Settling Counsel reached and sought approval of a settlement on behalf of people they did not represent. *Id.*, §V(B)(1).

Several interested parties filed motions to extend the deadline to respond that motion, flagging some of the many problems with the proposed settlement. On July 6, 2020, the Court entered an order in which it recognized several of these concerns. ECF No. 11182. Settling Counsel subsequently withdrew their motion. ECF No. 11193.

### D.  Meet and Confers

On Friday, February 14, 2020, Mr. Sheller's counsel, Elizabeth Fegan and Jessica Meeder, conferred with Lead Counsel Aimee Wagstaff, Robin Greenwald, and Michael Miller, and Liaison Counsel Lori Andrus and Mark Burton via telephone regarding the basis for the renewed motion. Lead Counsel advised that they opposed Mr. Sheller's March 2020 motion. Since the Motion for Preliminary Approval was filed, Mr. Sheller's counsel, Elizabeth Fegan, conferred with Settling Counsel on multiple occasions between June 26 and August 19, 2020 via telephone. They oppose this motion. Fegan Decl., ¶¶ 4-11.

### III.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(g)(3), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Interim class counsel is responsible for all pre-certification activities including, *inter alia,* "making and responding to motions, conducting… necessary discovery, moving for class certification, and

1    negotiating settlement."[6] A court should designate interim class counsel when it is "necessary to

2    protect the interests of the putative class."[7]

3         In making its appointment, the Court must ensure that counsel will "fairly and adequately

4    represent the interests of the class"[8] and must consider: (i) the work counsel has done in identifying

5    or investigating potential claims in the action; (ii) counsel's experience in handling class actions,

6    other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

7    of the applicable law; and (iv) the resources that counsel will commit to representing the class.[9]

8    The Court also "may consider any other matter pertinent to counsel's ability to fairly and

9    adequately represent the interests of the class."[10] Counsel is not "adequate" pursuant to Rule 23 if

10   it has a conflict of interest.[11]

11   **IV.    ARGUMENT**

12        **A.  Appointment of Interim Class Counsel is necessary to protect the**
          **interests of the Medical Monitoring Class.**

13        This case poses a unique circumstance: it is part of a broad landscape of cases. But Mr.

14   Sheller's case was the *only* one that sought to represent the Medical Monitoring Class to ensure

15   "an ample, inflation-protected fund for the future," *Amchem Prods.*, 521 U.S. at 626, until Settling

16   Counsel amended the claims in the *Ramirez* complaint on the same day they filed their Preliminary

17   Approval Motion—i.e., *after* the settlement was reached. ECF No. 11039. But subclasses, with

18   independent counsel, should always have been in place when the Medical Monitoring Class's

19   discrete rights were being litigated and negotiated. "The rationale is simple: how can the value of

20

21

22   _____

23   [6] Manual for Complex Litigation (4th) at § 21.11.
     [7] Fed. R. Civ. P. 23, 2003 Advisory Committee Notes.
24   [8] Fed. R. Civ. P. 23(g)(4).
     [9] Fed. R. Civ. P. 23(g)(1)(A). *See also In re Navistar Maxxforce Engines Mktg., Sales Practices &*
25   *Prods. Liab. Litig.,* No. 2590, 2015 U.S. Dist. LEXIS 34662, at *9-10 (N.D. Ill. Mar. 5, 2015);
     *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803, at *8 (N.D. Ill.
26   May 26, 2011); *Simpkins v. Wells Fargo Bank, N.A.,* 2013 WL 12051028, at *1 (S.D. Ill. June 28,
     2013) (observing that Rule 23(g)(1) factors are to be applied in appointing interim counsel).
27   [10] Fed. R. Civ. P. 23(g)(1)(B).
     [11] Fed. R. Civ. P. 23(a)(4); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

- 10 -

any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?" *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 253 (2d Cir. 2011) (referencing Ortiz).

In *Amchem*, class certification was sought to achieve a global settlement for both current and future asbestos-related claims, both for claimants who were currently injured, and those who may face future injuries. The Court noted the divergent interests of the class: those currently injured have the goal of "generous immediate payments," and the exposure-only plaintiffs seek "an ample, inflation-protected fund for the future." The Court noted the significance of these differences, as the settlement included no adjustment for inflation, and only a few claimants per year could opt out. The Court concluded there was "no structural assurance of fair and adequate representation for the diverse groups." *Id. See also Ortiz,* 527 U.S. at 815 (reaffirming "that a class divided between holders of present and future claims … requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel."); *Hanlon v. Chrysler Corp.,* 150 F.3d. 1011, 1020 (9th Cir. 1998) ("The Court found that the clashing interests of present and future claimants presented insurmountable conflicts for class counsel who could not possibly provide adequate representation to both groups as required by Rule 23(a)(4).").

While leadership for the Personal Injury Cases is well-positioned to advocate for their clients in the ongoing settlement discussions, future claimants are entitled to separate representation for prosecution and settlement negotiations. In fact, pursuant to *Amchem* and California Rule of Professional Conduct 1.7, such independent representation is required. As ethics expert Mary Robinson, Esq. originally opined, lead counsel's responsibilities to the Personal Injury Plaintiffs create a "significant risk of materially limiting their representation of the Medical Monitoring Class" because the two groups of plaintiffs have "differing and competing goals." Robinson Decl. at 5. When the Motion For Preliminary Approval was filed, Medical Monitoring Counsel also obtained the expert opinion of Professor Charles Silver. *See* Ex. A. Professor Silver opined that the settlement lacked required structural protections to ensure that future claimants are

- 11 -

represented adequately, including subclasses with subclass representatives treated as fiduciaries, and court-appointed subclass counsel whose fees are tied to the subclass's recovery. *Id.*, §IV.

Indeed, subclasses are required to ensure the named parties will fairly and adequately protect the interests of the class in accordance with Rule 23(a)(4). Silver Decl., § IV(A) (citing *Amchem* ("Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.")). The implementation of subclasses is a "structural" measure intended to ensure adequate representations of person with distinctive interests. *Id.* (citing *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), *modified on reh'g sub nom. In re Findley*, 993 F.2d 7 (1993) ("the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups."). As Professor Silver noted, *id.*, in *Ortiz*, the Supreme Court reinforced *Amchem's* message: "[I]t is obvious after *Amchem* that a class divided between holders of present and future claims . . . requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel." *Ortiz*, 527 U.S. at 856. Separate counsel was and remains necessary to protect the interests of the Medical Monitoring Class and ensure "an ample, inflation-protected fund for the future," *Amchem Prods.*, 521 U.S. at 626.

### B.  Settling Counsel's belated, informal designation of subclass counsel fails to protect the class's interests.

The informal leadership structure under which Settling Counsel continues to proceed does not meet the requirements of *Amchem, Ortiz,* or Rule 23. *See* Silver Decl., § V. "Rule 23 demands" that "structural assurance" be in place "prior to the settlement itself." *Smith v. Sprint Commc'ns Co., L.P.,* 387 F.3d 612, 614 (7th Cir. 2004) (citing *Amchem Prods.*, 521 U.S. at 627). Indeed, the settlement in *Ortiz* was overturned because "the District Court took no steps *at the outset* to ensure that the potentially conflicting interests of easily identifiable categories of claimants [were] protected by provisional certification of subclasses under Rule 23(c)(4)." 527 U.S. at 831-32 (emphasis added); *see also* Silver Decl., § V.A.

- 12 -

While the Motion for Preliminary Approval claimed that the subclasses were represented "by their own proposed Subclass counsel" "during the critical stages of the negotiations," Preliminary Approval Motion at 16, there is neither support for subclass counsel's independence nor an explanation of what Settling Counsel believes to be "the critical stages of the negotiations." Silver Decl., §V(B)(2). *See also* Declaration of Elizabeth J. Cabraser in support of the Preliminary Approval Motion ("Cabraser Decl."), ECF No. 11942-1, ¶ 6 (claiming the subclasses were represented "during the necessary stages of the negotiations").

Indeed, the proposed leadership structure failed to police potential conflicts among counsel. Silver Decl., § V(B)(2). Both lawyers named to represent the subclasses in the MDL are associated with law firms that represent clients asserting personal injury claims (i.e., current claimants with interests opposing those of the future claimants that make up the Medical Monitoring Class). *Id.* The interests of The Dugan Firm's personal injury plaintiffs are plainly antagonistic to the Medical Monitoring Class Ms. Benedetto sought to represent. *Amchem*, 521 U.S. at 626 (noting the competing goals of "generous immediate payments" and "an ample, inflation-protected fund for the future."). *See also* Silver Decl., §V(B)(2) (citing *Ortiz,* 527 U.S. at 855, in which the Supreme Court noted that the plaintiffs' attorneys settled their signed clients' cases outside the class action and was bothered by the fact that the plaintiffs in "the settled inventory claims . . . appeared to have obtained better terms than the class members.").

Ms. Benedetto also purports to represent the interests of the Medical Monitoring Class while acting as counsel for the Settlement Class as a whole. *See Ortiz*, 527 U.S. at 856 ("an attorney who represents another class against the same defendant may not serve as class counsel") (citing Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed. 1998)); *Literary Works*, 654 F.3d at 266 (invalidating settlement and requiring subclasses even though "the attorneys conducting the negotiations" represented the class as a whole "from the outset" and "[n]o claims unique to a portion of the class [were] forfeited without compensation.," *id.* at 261-62 (Straub J., dissenting)).

In addition, the Preliminary Approval Motion fails to tie attorneys' fees to the recovery of the class that counsel purports to represent. Silver Decl., §V(C). The motion states that proposed

- 13 -

Class Counsel will seek up to $150 million for fees and expenses but says nothing about how class and subclass counsel will be compensated. Silver Decl., §V(C). In fact, proposed Subclass Counsel are *also* named as proposed Class Counsel. *Supra*, n. 2; Silver Decl., §V(C) (If subclass counsel are being paid out of the entire class's recovery, then "the lawyers had no financial reasons to care about how their respective subclasses fared").

Settling Counsel cannot now seek appointment as interim counsel of the Medical Monitoring Class to alleviate these conflicts. Belated, subjective assessments of settlement allocation by conflicted fiduciaries are tainted and untrustworthy, particularly if—as implicitly revealed in the terms of the settlement agreement here—subclass counsel's financial ties run to the class as a whole rather than only the subclasses they seek to represent. Silver Decl., §§IV(B)-(C), VI. Mr. Sheller's concerns are not merely hypothetical—"[i]mportant parts of the proposed settlement reflect the lawyers' indifference to" the Medical Monitoring Class, whose claims and relief were jeopardized in the proposed Settlement Agreement. Silver Decl., §V(I)(C); *Supra*, § II.C. Given these conflicts of interest, which cannot be resolved by waiver, the Medical Monitoring Class must be provided with independent counsel who are empowered to investigate and advance the interests of the class members.

### C. Fegan Scott should be appointed interim class counsel.

Rule 23(g)(1)(A)(i) directs the court to consider "the work counsel has done in identifying or investigating potential claims in the action." Fegan Scott, together with RWP, Shindler, Anderson, Goplerud, & Weese, P.C. and Cate, Terry & Gookins LLC, are the reason that the Medical Monitoring Class has an avenue for recovery. *See* Fegan Decl., Exs. 1-4 (firm resumes).

Thousands of plaintiffs and their counsel are pursing personal injury cases against the Defendants on the theory that Roundup caused their cancer and other serious diseases. But not one of these actions sought to protect the thousands of consumers who were exposed to significant quantities of Roundup and have an increased risk of developing these diseases. While Settling Counsel filed an 11th-hour amendment in *Ramirez* to include medical monitoring, that is a far cry from the unconflicted representation to which the Medical Monitoring Class is entitled.

- 14 -

Medical Monitoring Counsel comprise the only team that identified this significant yet unmet need. Medical Monitoring Counsel diligently investigated the underlying factual and legal theories, narrowly tailored this case and the current class definition pursuant to those efforts, and drafted a thoughtful, comprehensive complaint. Counsel have also consulted with experts to ensure they seek the best diagnostic program for the Medical Monitoring Class.

Fegan Scott also meets and exceed the Rule 23(g)(1)(A)(ii) and (iii) requirements, which evaluate counsel's experience as well as the knowledge of the applicable law raised in an action. Founded in 2019 but built upon more than five decades of collective class action experience, Fegan Scott is a nationwide class-action firm dedicated to helping victims of negligence, fraud, abuse, and discrimination. Its founding partner and Managing Member, Beth Fegan has more than two decades of experience in complex class action litigation, including medical monitoring class actions. A sampling of Ms. Fegan's medical monitoring cases appears on the firm resume. Fegan Decl., Ex. 1. Fegan Scott attorneys Timothy Scott, Melissa Clark, and Jessica Meeder also stand ready, willing, and able to assist in the prosecution of this action as appropriate. *Id.* Riley Williams, Shindler Anderson, and Cate Terry also have a depth and breadth of class action and complex litigation experience. *See* Fegan Decl., Exs. 2-4.

Finally, Rule 23(g)(1)(A)(iv) considers the resources that counsel will commit to representing the class. As experienced class action attorneys, Fegan Scott, RWP, and Shindler Anderson fully understand the substantial investment of time and resources necessary to properly pursue and lead these types of litigations and they are committed to dedicating those resources to the best interests of the class.

## V.    CONCLUSION

To adequately protect the Medical Monitoring Class's interests, Movants request that this Court appoint Elizabeth A. Fegan of Fegan Scott LLC as interim class counsel for the Medical Monitoring Class, including for the purpose of settlement negotiations.

Dated: August 24, 2020                    Respectfully submitted,
                                                             /s/ Elizabeth A. Fegan
                                                          Elizabeth A. Fegan

1

2

3

4

FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
T: 312-741-1019
F: 312-264-0100
beth@feganscott.com

5

6

7

Jessica H. Meeder
FEGAN SCOTT LLC
1200 G Street, N.W., Ste. 800
Washington, D.C. 20005
T: 202-434-8992
F: 202-217-2814
jessica@feganscott.com

8

9

10

11

Melissa Ryan Clark
FEGAN SCOTT LLC
140 Broadway, 46th Floor
New York, NY 10005
T: 347-353-1150
F: 312-265-0100
melissa@feganscott.com

12

13

14

15

16

William Riley
Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Ave.
Indianapolis, IN 46204
T: 317-633-5270
F: 317-426-3348
wriley@rwp-law.com
alowe@rwp-law.com

17

18

19

20

21

J. Barton Goplerud
SHINDLER, ANDERSON,
GOPLERUD & WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
T: 515-223-4567
F: 515-223-8887
goplerud@sagwlaw.com

22

23

24

25

Russell Cate
CATE, TERRY & GOOKINS LLC
301 East Carmel Drive, Suite C300
Carmel, IN 46032
T: 317-564-0016
F: 317-564-0599
rcate@ctglaw.com

26

27

*Counsel for Plaintiff and Proposed Interim Lead Counsel for the Medical Monitoring Class*

28

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that, on August 24, 2020, a copy of the foregoing Plaintiff's Renewed Motion to Appoint Fegan Scott, LLC as Interim Class Counsel for the Medical Monitoring Class was served on all counsel of record via ECF.

Dated: August 24, 2020

/s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
T: 312-741-1019
F: 312.264.0100
beth@feganscott.com

*Counsel for Plaintiff and
Proposed Interim Lead
Counsel for the Medical
Monitoring Class*

Plaintiff Aaron Sheller's Corrected Second Renewed Motion to Appoint Fegan Scott LLC As Interim Class Counsel for The Medical Monitoring Class, Case No. 3:19-cv-07972