HOLLINGSWORTH LLP
Joe G. Hollingsworth (*pro hac vice*)
Eric G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639
E-Mail:      jhollingsworth@hollingsworthllp.com
                 elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 3:16-md-02741-VC |
| This document relates to: *Dr. Mohammad Mousa and Sumaiya Hamdan Mousa v. Monsanto Co.*, Case No. 3:20-cv-05120-VC | |

## <u>MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs' Complaint, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      Monsanto admits that plaintiffs purport to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiffs. Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in paragraph 2.

3.      Monsanto denies the allegations in paragraph 3.

4.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies those allegations.

5.      The allegations in paragraph 5 comprise attorney characterizations and are accordingly denied.  Monsanto states that the Roundup®-branded products identified by plaintiffs have a variety of separate and distinct uses and formulations.

6.      Monsanto admits the allegations in paragraph 6.

7.      The allegations in paragraph 7 comprise attorney characterizations and are accordingly denied.

8.      In response to the allegations in paragraph 8, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto has manufactured Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.

9.      In response to the allegations in paragraph 9, Monsanto admits that it has sold Roundup®-branded products in Louisiana.

10.     The allegations in paragraph 10 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

11.     The allegations in paragraph 11 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

12.     Monsanto admits the allegations in paragraph 12.

13.     Monsanto admits that it is authorized to do business in Louisiana.  The remaining allegations in paragraph 13 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

14.     The allegations in paragraph 14 set forth conclusions of law for which no response is required.

15.     Monsanto denies the allegations in paragraph 15.

16.     Monsanto denies the allegations in paragraph 16.

17.     Monsanto admits the allegations in the first and second sentences of paragraph 17. Monsanto also admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 17 and therefore denies those allegations.

18.     In response to the allegations in paragraph 18, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it has been a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 18.  Monsanto admits that it has been the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 18 and therefore denies those allegations.

19.     Monsanto admits the allegations in the first sentence of paragraph 19.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 19.

20.     Monsanto admits the allegations in the first sentence of paragraph 20.  Monsanto denies the allegations in the second sentence of paragraph 20 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

21.     Monsanto admits the allegations in the first sentence of paragraph 21.  Monsanto denies the allegations in the second sentence of paragraph 21.

22.     In response to the allegations in paragraph 22, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 22.

23.     Monsanto denies the allegations in paragraph 23.

24.     In response to the allegations in paragraph 24, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 24 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

25.     The allegations in paragraph 25 set forth conclusions of law for which no response is required.  To the extent that a response is required, Monsanto admits the allegations in paragraph 25 based upon the allegations in plaintiffs' Complaint.

26.     Monsanto admits the allegations in paragraph 26.

27.     The allegations in the first sentence of paragraph 27 set forth conclusions of law for which no response is required.  Monsanto admits the allegations in the second sentence of paragraph 27.  In response to the allegations in the final sentence of paragraph 27, Monsanto denies certain events giving rise to plaintiffs' claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiffs' claims occurred and therefore denies those allegations.

28.     In response to the allegations in paragraph 28, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 28 are vague and ambiguous and Monsanto lacks information or knowledge sufficient

to form a belief as to the truth of the remaining allegations in paragraph 28 and therefore denies those allegations.

29.     Monsanto admits the first sentence of paragraph 29.  Monsanto denies the allegations in the second sentence of paragraph 29 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant.  Monsanto denies the allegations in the third sentence of paragraph 29 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

30.     In response to the allegations in paragraph 30, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 30.

31.     Monsanto admits the allegations in the first two sentences of paragraph 31 and admits that at all relevant times it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto denies the remaining allegations in paragraph 31.

32.     Monsanto admits the allegations in paragraph 32.

33.     In response to the allegations in paragraph 33, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 33 set forth conclusions of law for which no response is required.

34.     The allegations in paragraph 34 set forth conclusions of law for which no response is required.

35.     In response to the allegations in paragraph 35, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States.

36.     In response to the allegations in paragraph 36, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the final sentence of paragraph 36 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 36 set forth conclusions of law for which no response is required.

37.     Monsanto denies the allegations in paragraph 37 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 37 regarding such pesticide products generally and therefore denies those allegation.  The remaining allegations in paragraph 37 set forth conclusions of law for which no response is required.

38.     In response to the allegations in paragraph 38, Monsanto admits that EPA has undertaken a review of glyphosate for purposes of regulatory review and that EPA has not released its findings.  Monsanto states, however, that:  (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 and therefore denies those allegations.

39.    In response to the allegations in paragraph 39, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20

Monsanto denies the remaining allegations in paragraph 39.

40.     In response to the allegations in paragraph 40, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 40 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

41.     In response to the allegations in paragraph 41, Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

42.     Monsanto denies the allegations in paragraph 42 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result,

Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 42 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

43.     In response to the allegations in paragraph 43, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

44.     In response to the allegations in paragraph 44, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 44 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

45.     Monsanto denies the allegations in paragraph 45.

46.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 46 regarding alleged reliance by the public and EPA and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 46.

47.     Monsanto denies the allegations in paragraph 47.

48.     In response to the allegations in paragraph 48, Monsanto admits that in March 2015, the Joint Glyphosate Task Force issued a press release, which speaks for itself.  Monsanto denies the remaining allegations in paragraph 48.

49.     Monsanto admits the allegations in the first sentence of paragraph 49.  Monsanto denies the remaining allegations in paragraph 49.

50.     In response to the allegations in paragraph 50, Monsanto admits that it brought a lawsuit in California challenging the notice of intent by the California Office of Environmental Health Hazard Assessment ("OEHHA") to include glyphosate on its Proposition 65 list. Monsanto denies the remaining allegation in paragraph 50.  Monsanto states that OEHHA decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution. On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.

51.     In response to the allegations in paragraph 51, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 51 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

52.     In response to the allegations in paragraph 52, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 52 and accordingly denies those allegations.  The remaining allegations in

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

paragraph 52 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

53.     In response to the allegations in paragraph 53, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that has sold glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 53 and accordingly denies the same.  Monsanto denies the allegations in the last two sentences of paragraph 53.  The remaining allegations in paragraph 53 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

54.     In response to the allegations in paragraph 54, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 54 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

55.     In response to the allegations in paragraph 55, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further answer.  The remaining allegations in paragraph 55 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

56.     Monsanto denies the allegations in paragraph 56.

57.     In response to the allegations in paragraph 57, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiffs' claims here that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 57.

1

58.     In response to the allegations in paragraph 58, Monsanto denies that IARC

2   follows stringent procedures for the evaluation of a chemical agent.  Monsanto lacks information

3   or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in

4   paragraph 58, which are not limited as of any specified date, and accordingly denies the same.

5       59.     In response to the allegations in paragraph 59, Monsanto admits that IARC sets

6   forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations.

7   Monsanto denies the remaining allegations in paragraph 59.

8       60.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

9   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

10   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

11   a belief as to the truth of the remaining allegations in paragraph 60 and therefore denies those

12   allegations.

13      61.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

14   research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it

15   cited in its glyphosate monograph.  Monsanto lacks information or knowledge sufficient to form

16   a belief as to the truth of the remaining allegations in paragraph 61 and therefore denies those

17   allegations.

18      62.     Monsanto denies the allegations in paragraph 62 to the extent that they suggest

19   that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified

20   glyphosate as a Group 2A agent in March 2015.

21      63.     In response to the allegations in paragraph 63, Monsanto admits that IARC issued

22   its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the

23   monograph was prepared by a "working group" of individuals selected by IARC who met over a

23   one week period in March 2015 to consider glyphosate along with a number of other substances.

24   Monsanto denies the allegation that all members of the working group are "experts."  Monsanto

25   denies that the working group or anyone at IARC conducted a one-year review of the scientific

26   evidence related to glyphosate or that the working group's findings reflected a comprehensive

27

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

65.     The allegations in paragraph 65 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

66.     In response to the allegations in paragraph 66, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 66 are denied.

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

68.     Monsanto denies the allegations in paragraph 68.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies,

- 13 -

which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

69.     In response to the allegations in paragraph 69, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

70.     In response to the allegations in paragraph 70, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 71.

72.     In response to the allegations in paragraph 72, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 72.

73.     In response to the allegations in paragraph 73, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 74.

75.     Monsanto denies the allegations in paragraph 75.

76.     The allegations in paragraph 76 comprise attorney characterizations and are accordingly denied.

77.     Monsanto admits the allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 78 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions.  Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions.  Monsanto denies the remaining allegations in paragraph 79.

80.     The allegations in paragraph 80 are vague and ambiguous and are accordingly denied.

81.     In response to the allegations in paragraph 81, Monsanto states that the cited document speaks for itself and does not require a response.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 82

characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 82.

83.      Monsanto denies the allegations in paragraph 83.

84.      In response to the allegations in paragraph 84, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto otherwise denies the allegations in paragraph 84.

85.      Monsanto admits that there is no reliable evidence that Roundup®-branded products are genotoxic and that regulatory authorities and independent experts agree that Roundup®-branded products are not genotoxic.  Monsanto otherwise denies the allegations in paragraph 85.

86.      Monsanto denies the allegations in paragraph 86.

87.      Monsanto denies the allegations in paragraph 87.

88.      Monsanto denies the allegations in paragraph 88.

89.      Monsanto admits that in 1985 EPA reviewed a regulatory study involving mice exposed to glyphosate.  Monsanto denies the remaining allegations in paragraph 89.

90.      Monsanto denies the allegations in paragraph 90.

91.      Monsanto denies the allegations in paragraph 91.

92.      Monsanto admits the allegations in paragraph 92.

93.      Monsanto denies the allegations in paragraph 93.

94.      Monsanto admits the allegations in paragraph 94.

95.      Monsanto denies the allegations in paragraph 95.

96.      Monsanto denies the allegations in paragraph 96.

97.      Monsanto denies the allegations in paragraph 97.

98.      Monsanto denies the allegations in paragraph 98.

99.      Monsanto denies the allegations in paragraph 99.

100.     Monsanto denies the allegations in paragraph 100.

101.     Monsanto denies the allegations in paragraph 101.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

102.     Monsanto admits that independent experts and regulatory agencies agree that there is no evidence of carcinogenicity or genotoxicity in glyphosate and Roundup®-branded products and admits that it has made statements reflecting this fact.  Monsanto denies the remaining allegations in paragraph 102.

103.     In response to the allegations in paragraph 103, Monsanto admits that Roundup®-branded products are safe, non-carcinogenic and non-genotoxic when used in accordance with the product's EPA approved labeling.  Monsanto otherwise denies the allegations in paragraph 103.

104.     In response to the allegations in paragraph 104, Monsanto admits that the Complaint accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

105.     In response to the allegations in paragraph 105, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

106.     In response to the allegations in paragraph 106, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 106.

107.     In response to the allegations in paragraph 107, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to

the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 107.

108.    Monsanto admits that, in France, the sale to and use by amateurs (*i.e.*, non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 110.

109.    In response to the allegations in paragraph 109, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 109.

110.    In response to the allegations in paragraph 110, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiffs' allegations regarding claimed carcinogenicity.  Monsanto denies the remaining allegations in paragraph 110.

111.    In response to the allegations in paragraph 111, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 111.

112.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 112 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

113.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 113 and therefore denies those allegations.

114.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 114 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 114.

115.    Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 115. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 115 and therefore denies those allegations.

116.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 116 and therefore denies those allegations.

117.    Monsanto denies the allegations in paragraph 117.

118.    Monsanto incorporates by reference its responses to paragraphs 1 through 117 in response to paragraph 118 of plaintiffs' Complaint.

119.    The allegations in paragraph 119 set forth conclusions of law for which no response is required.

120.    Monsanto denies the allegations in paragraph 120.

121.    Monsanto denies the allegations in paragraph 121, including each of its subparts.

122.    Monsanto denies the allegations in paragraph 122.

123.    Monsanto denies the allegations in paragraph 123.

124.    Monsanto denies the allegations in paragraph 124, including each of its subparts.

125.    Monsanto denies the allegations in paragraph 125.

126.    Monsanto denies the allegations in paragraph 126.

127.    Monsanto denies the allegations in paragraph 127.

128.    In response to the allegations in the first sentence of paragraph 128, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's

fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of paragraph 128 sets forth a conclusion of law for which no response is required.

129.    Monsanto incorporates by reference its responses to paragraphs 1 through 128 in response to paragraph 129 of plaintiffs' Complaint.

130.    The allegations in paragraph 130 set forth conclusions of law for which no response is required.

131.    Monsanto denies the allegations in paragraph 131.

132.    Monsanto denies the allegations in paragraph 132.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

133.    Monsanto denies the allegations in paragraph 133.

134.    Monsanto denies the allegations in paragraph 134.

135.    Monsanto denies the allegations in paragraph 135, including each of its subparts.

In response to the allegations in the first sentence of the "WHEREFORE" paragraph following paragraph 135, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 135 sets forth a conclusion of law for which no response is required.

136.    Monsanto incorporates by reference its responses to paragraphs 1 through 135 in response to paragraph 136 of plaintiffs' Complaint.

137.    Monsanto admits the allegations in paragraph 137.

138.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 138 and therefore denies those allegations.

139.    Monsanto denies the allegations in paragraph 139.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

140.	Monsanto denies the allegations in paragraph 140.

141.	Monsanto denies the allegations in paragraph 141.

142.	Monsanto denies the allegations in paragraph 142.

143.	Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 143 and therefore denies those allegations.  The allegations in the second sentence of paragraph 143 set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 140.

144.	Monsanto denies the allegations in paragraph 144.

145.	Monsanto denies the allegations in paragraph 145.

146.	Monsanto denies the allegations in paragraph 146.

147.	Monsanto denies the allegations in paragraph 147, including each of its subparts.

In response to the allegations in the first sentence of the "WHEREFORE" paragraph following paragraph 147, Monsanto demands that judgment be entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.  The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 147 sets forth a conclusion of law for which no response is required.

148.	Monsanto incorporates by reference its responses to paragraphs 1 through 147 in response to paragraph 148 of plaintiffs' Complaint.

149.	Monsanto admits the allegations in paragraph 149.

150.	Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 150 and therefore denies those allegations.

151.	Monsanto denies the allegations in paragraph 151.

152.	The allegations in paragraph 152 set forth conclusions of law for which no response is required.

153.	Monsanto denies the allegations in paragraph 153.

154.    Monsanto denies the allegations in paragraph 154.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

155.    Monsanto denies the allegations in paragraph 155.

156.    Monsanto denies the allegations in paragraph 156.

157.    Monsanto denies the allegations in paragraph 157.

158.    Monsanto denies the allegations in paragraph 158.

159.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 159 and therefore denies those allegations.

160.    Monsanto denies that Roundup®-branded herbicides cause any dangerous risk or side effects to human health or to the environment when used in accordance with the label.  The remaining allegations in paragraph 160 set forth a conclusion of law for which no response is required.

161.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 161 concerning plaintiffs' knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 161.

162.    Monsanto denies the allegations in paragraph 162.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

163.    Monsanto denies the allegations in paragraph 163.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

164.    Monsanto denies the allegations in paragraph 164.

165.    Monsanto denies the allegations in paragraph 165.

166.    Monsanto denies the allegations in paragraph 166.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC

1    167.    Monsanto denies the allegations in paragraph 167.  All labeling of Roundup®-

2  branded products has been and remains EPA-approved and in compliance with all federal

3  requirements under FIFRA.

4    168.    Monsanto denies the allegations in paragraph 168.

5    169.    Monsanto denies the allegations in paragraph 169.

6    170.    Monsanto denies the allegations in paragraph 170, including each of its subparts.

7    In response to the allegations in the first sentence of the "WHEREFORE" paragraph

8  following paragraph 170, Monsanto demands that judgment be entered in its favor and against

9  plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded

10  costs of suit and reasonable attorney's fees as allowed by law and such further and additional

11  relief as this Court may deem just and proper.  The statement in the last sentence of the

12  "WHEREFORE" paragraph following paragraph 170 sets forth a conclusion of law for which no

13  response is required.

14    171.    Monsanto incorporates by reference its responses to paragraphs 1 through 170 in

15  response to paragraph 171 of plaintiffs' Complaint.

16    172.    The allegations in paragraph 172 set forth conclusions of law for which no

17  response is required.

18    173.    The allegations in paragraph 173 are vague and conclusory and comprise attorney

19  characterizations and are accordingly denied.  All labeling of Roundup®-branded products has

20  been and remains EPA-approved and in compliance with all federal requirements under FIFRA

21    174.    Monsanto denies the allegations in paragraph 174.

22    175.    Monsanto denies the allegations in paragraph 175.

23    176.    Monsanto denies the allegations in the Complaint's first-numbered paragraph 176.

23    177.    Monsanto lacks information or knowledge sufficient to form a belief as to the

24  truth of the allegations in paragraph the Complaint's first-numbered 177 regarding plaintiff's

25  reliance and therefore denies those allegations.  Monsanto denies the remaining allegations in the

26  Complaint's first-numbered paragraph 177.

27

1   178.   Monsanto denies the allegations in the Complaint's first-numbered paragraph 178.

2          In response to the allegations in the first sentence of the "WHEREFORE" paragraph

3   following the Complaint's first-numbered paragraph 178, Monsanto demands that judgment be

4   entered in its favor and against plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice;

5   and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and

6   such further and additional relief as this Court may deem just and proper.   The statement in the

7   last sentence of the "WHEREFORE" paragraph following the Complaint's first-numbered

8   paragraph 178 sets forth a conclusion of law for which no response is required.

9          176.   Monsanto incorporates by reference its responses to paragraphs 1 through the

10  Complaint's first-numbered 178 in response to the Complaint's second-numbered paragraph 176

11  of plaintiffs' Complaint.

12         177.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

13  177.

14         178.   Monsanto denies the allegations in the Complaint's second-numbered paragraph

15  178.

16         179.   There is no paragraph "179" in the Complaint, and therefore no response is

17  required.

18         180.   Monsanto denies the allegations in paragraph 180.

19         181.   Monsanto denies the allegations in paragraph 181.

20         182.   Monsanto denies the allegations in paragraph 182.

21         183.   Monsanto denies the allegations in paragraph 183.

22         184.   Monsanto denies the allegations in paragraph 184.

23         185.   Monsanto lacks information or knowledge sufficient to form a belief as to the

23  truth of the allegations in paragraph 185 regarding plaintiff's actions, and therefore Monsanto

24  denies those allegations.  Monsanto denies the remaining allegations in paragraph 184.

25         186.   Monsanto denies the allegations in paragraph 186.

26         187.   Monsanto denies the allegations in paragraph 187.

27

- 24 -

1   In response to the allegations in the first sentence of the "WHEREFORE" paragraph

2   following paragraph 187, Monsanto demands that judgment be entered in its favor and against

3   plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded

4   costs of suit and reasonable attorney's fees as allowed by law and such further and additional

5   relief as this Court may deem just and proper.  The statement in the last sentence of the

6   "WHEREFORE" paragraph following paragraph 187 sets forth a conclusion of law for which no

7   response is required.

8       188.    Monsanto incorporates by reference its responses to paragraphs 1 through 187 in

9   response to paragraph 188 of plaintiffs' Complaint.

10      189.    Monsanto denies the allegations in paragraph 189.

11      190.    Monsanto denies the allegations in paragraph 190.

12      191.    Monsanto denies the allegations in paragraph 191.

13      192.    Monsanto denies the allegations in paragraph 192.

14      193.    Monsanto denies the allegations in paragraph 193.

15      194.    Monsanto denies the allegations in paragraph 194.

16      195.    Monsanto denies the allegations in paragraph 195.

17      196.    Monsanto lacks information or knowledge sufficient to form a belief as to the

18  truth of the allegations in paragraph 196 regarding plaintiff's actions, and therefore Monsanto

19  denies those allegations.  Monsanto denies the remaining allegations in paragraph 196.

20      197.    Monsanto denies the allegations in paragraph 197.

21      198.    Monsanto denies the allegations in paragraph 198.  All labeling of Roundup®-

22  branded products has been and remains EPA-approved and in compliance with all federal

23  requirements under FIFRA.

23      199.    Monsanto denies the allegations in paragraph 199.

24      In response to the allegations in the first sentence of the "WHEREFORE" paragraph

25  following paragraph 199, Monsanto demands that judgment be entered in its favor and against

26  plaintiffs; that plaintiffs' Complaint be dismissed, with prejudice; and that Monsanto be awarded

27

costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The statement in the last sentence of the "WHEREFORE" paragraph following paragraph 199 sets forth a conclusion of law for which no response is required.

In response to the allegations in the section entitled "PRAYER FOR RELIEF," Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.      The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.      Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

4.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.      Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law.

*See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.     Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.     Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.    Plaintiffs' claims are barred, in whole or in part, because plaintiffs' injuries, if any, were the result of conduct of plaintiffs, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.    The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims in whole or in part.

12.    Applicable statutes of limitations and/or repose, or prescriptive periods, bar plaintiffs' claims in whole or in part.

13.    Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiffs' claims in whole or in part.

14.    If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by

Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiffs and owed no duty to plaintiffs by which liability could be attributed to it.

16.     Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17.     Plaintiffs' claims for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Louisiana Constitution, and/or other applicable state constitutions.

18.     Plaintiffs' claims for punitive damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under Louisiana law and/or other applicable state laws.

19.     Plaintiffs' claims for punitive damages are barred and/or limited by operation of state and/or federal law, including La. Rev. Stat. § 9:2800.52, *et seq*.

20.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs.  If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

21.     Plaintiffs' claims are barred in whole or in part by plaintiff's contributory/comparative negligence.

22.     Plaintiffs' claims are barred in whole or in part by plaintiffs' failure to mitigate damages.

23.     Plaintiffs' claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs receive from collateral sources.

25.     If plaintiffs have been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a Monsanto product.

26.     Plaintiffs have failed to allege fraud with sufficient particularity.

27.     Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

28.     Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

29.     Plaintiffs' common law claims are barred, in whole or part, by application of Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann. § 9:2800.51 *et seq.*

30.     This case is governed by the exclusive provisions of the Louisiana Products Liability Act (La. R.S. 9:2800.51, et seq.) ("LPLA").  Any theories of recovery that fall outside of the LPLA's provisions are therefore subject to dismissal.

31.     Monsanto affirmatively pleads the applicability of the LPLA and specifically avers that plaintiffs are not entitled to recovery under any of the exclusive theories of liability set forth in the Act.

32.     Monsanto specifically avers that the product possessed no characteristic that rendered it unreasonably dangerous in a reasonably anticipated use as defined by the LPLA (La. R.S. 9:2800.54).

33.     Monsanto asserts all allowable defenses under the LPLA, La. R.S. 9:2800.51, et seq., including but not limited to the applicability of La. R.S. 9:2800.59(A)(1), (2), (3), and (B).

34.     Should plaintiffs recover under any claims under the LPLA, a recovery of attorney's fees for plaintiffs are barred under the provisions of that statute.

35.     To the extent plaintiffs' claims are based on conduct that pre-dates 1996, Louisiana's comparative negligence regime may not apply, and plaintiffs' claims may be barred by contributory negligence.

36.     Plaintiffs' claims for punitive damages are barred under Louisiana Civil Code Article 3546.

37.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

1

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against

2
plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and

3
such other relief as the Court deems equitable and just.

4
### JURY TRIAL DEMAND

5
Monsanto demands a jury trial on all issues so triable.

6

7
DATED:  August 24, 2020                              Respectfully submitted,

8
                                                     /s/ Joe G. Hollingsworth
                                                     Joe G. Hollingsworth (*pro hac vice*)
9
                                                     (jhollingsworth@hollingsworthllp.com)
                                                     Eric G. Lasker (*pro hac vice*)
10
                                                     (elasker@hollingsworthllp.com)
                                                     HOLLINGSWORTH LLP
11
                                                     1350 I Street, N.W.
                                                     Washington, DC  20005
12
                                                     Telephone:   (202) 898-5800
                                                     Facsimile:   (202) 682-1639
13

                                                     *Attorneys for Defendant*
14
                                                     MONSANTO COMPANY

15

16

17

18

19

20

21

22

23

23

24

25

26

27

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC & 3:19-CV-05120-VC