# EXHIBIT B

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, N.W.
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-5000
Fax: 202-942-5999

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO:<br><br>*Victor Berliant, et al. v. Monsanto Co., et al.*,<br>Case No. 3:19-cv-07189-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND AND FOR ATTORNEY FEES AND COSTS**<br><br>Date: December 16, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4 |

**TABLE OF CONTENTS**

Page

ISSUE TO BE DECIDED ............................................................................................................. 1

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 2

LEGAL STANDARDS .................................................................................................................. 3

ARGUMENT .................................................................................................................................. 5

 I. Plaintiffs Fraudulently Joined D & D Venture/Chase Ace Hardware Because Mr. Berliant's Cancer First Manifested Itself In July 2015 – Well Before The Hardware Store Opened In June 2016 – So Any Roundup®-Branded Herbicides Allegedly Purchased At That Store Could Not Have Caused Mr. Berliant's Cancer ......... 5

 II. Plaintiffs' Arguments Fail To Solve The Fundamental Causation Problem That Defeats Their Claims Against D & D Venture/Chase Ace Hardware ............................... 7

  A. Plaintiffs' Reliance on the Trial-Preference-Motion Declaration of their Expert Witness is Misplaced ............................................................................... 7

  B. Plaintiffs' Unpersuasive Criticisms of Dr. Miller's Declaration Are Based on Speculation and a Fundamental Misunderstanding of the Particular Leukemia Disease Process at Issue Here ....................................................................... 7

 III. Even If The Court Were To Accept Plaintiffs' Assertion That Mr. Berliant's Cancer Did Not Begin Until December 2016, Plaintiffs Fail To Present Any Facts Showing Pre-December-2016 Purchases Of Roundup® Products From D & D Venture/Chase Ace Hardware ....................................................................................................... 10

 IV. The "Forum Defendant" Rule Does Not Preclude Removal Because Any California Defendant Was Fraudulently Joined In This Case ......................................................... 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Follet Higher Educ. Corp.*,
  No. 8:18-cv-01965-JLC-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) .............................. 4

*Chesapeake & Ohio Ry. Co. v. Cockrell*,
  232 U.S. 146 (1914) ............................................................................................................... 3

*Couzens v. Donohue*,
  854 F.3d 508 (8th Cir. 2017) ............................................................................................... 12

*Feizbakhsh v. Travelers Com. Ins. Co.*,
  No. LA CV16-02165 JAK, 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) ............................. 4

*Illegal Aliens, LLC v. N. Am Specialty Ins. Co.*,
  No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) .......................... 4, 12

*Kolker v. VNUS Techs., Inc.*,
  No. CV 10-00900-JF-PVT, 2010 WL 3059220 (N.D. Cal. Aug. 2, 2010) ........................... 12

*Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  No. CV-15-106-GF-BMM, 2016 WL 81234 (D. Mont. Jan. 7, 2016) ................................. 13

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
  220 F. Supp. 2d 1116 (N.D. Cal. 2002) .......................................................................... 4, 12

*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005) ............................................................................................................. 13

*Martinez v. McKesson Corp.*,
  No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. April 7, 2016) ............................. 4

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001) ........................................................................................... 3, 4

*O'Neil v. Crane Co.*,
  53 Cal. 4th 335 (2012) ........................................................................................................... 6

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir. 1998) ................................................................................................... 3

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ........................................................................................... 3, 4

*Toste v. CalPortland Constr.*,
  245 Cal. App. 4th 362 (2016) ................................................................................................ 6

**Statutes**

28 U.S.C. § 1441(b)(2) ............................................................................................................ 4, 12

## ISSUE TO BE DECIDED

Plaintiffs (California citizens) sued the Wilbur-Ellis defendants (California citizens) – which have never been involved in the residential-lawn-and-garden market for Roundup®-branded herbicides – even though plaintiff Victor Berliant is claiming exposure solely to residential-lawn-and-garden Roundup®-branded herbicides. Plaintiffs do not dispute the showing in Monsanto Company's Notice of Removal that the Wilbur-Ellis defendants have been fraudulently joined and that their presence should be disregarded.

Plaintiffs also sued another California company that owns and operates a retail store, based on the allegation that Mr. Berliant's cancer was caused by Roundup®-branded herbicides supplied by that store – even though Mr. Berliant already had cancer, the alleged injury for which he seeks recovery in this case, some eleven months *before* that store opened.

The issue to be decided is whether the remand motion should be denied because plaintiffs fraudulently joined those California defendants.

## INTRODUCTION

Plaintiffs tried to deprive Monsanto Company ("Monsanto") of its important right to removal by joining three California defendants, but plaintiffs clearly have no viable claims against those defendants. Accordingly, Monsanto removed this lawsuit to this Court based on fraudulent joinder arguments. Monsanto's Notice of Removal established that plaintiffs fraudulently joined Wilbur-Ellis Company LLC and Wilbur-Ellis Nutrition, LLC, formerly known as Wilbur-Ellis Feed, LLC ("the Wilbur-Ellis defendants"), and plaintiffs do not even try to defend the viability of the claims asserted against those defendants. Therefore, the Court should disregard the Wilbur-Ellis defendants when assessing whether complete diversity of citizenship exists here and whether the "forum defendant" rule blocks removal. Although plaintiffs focus their attention on defending the viability of the claims asserted against D & D Venture Group, Inc. d/b/a Chase Ace Hardware Garden & Gift Emporium ("D & D Venture/Chase Ace Hardware"), plaintiffs' arguments fail to overcome Monsanto's showing that Mr. Berliant's cancer, T-cell prolymphocytic leukemia ("T-PLL"), began no later than July 2015

1

– well *before* that defendant's store opened in June 2016.  Thus, any Roundup®-branded herbicides allegedly purchased at that store could not have caused Mr. Berliant's T-PLL, which means that plaintiffs do not have any viable claims against D & D Venture/Chase Ace Hardware and its presence should be disregarded for purposes of federal diversity jurisdiction.

Plaintiffs' efforts to evade this dispositive causation problem are unavailing.  First, plaintiffs rely on a declaration submitted by their expert in the state court proceedings that does not address – let alone rebut – Monsanto's oncology expert's declaration explaining the timing and onset of Mr. Berliant's T-PLL.  Second, plaintiffs' counsel proffer their own medical arguments to try to push the onset of Mr. Berliant's T-PLL to December 2016, but those arguments are based on a fundamental misunderstanding of the T-PLL disease process – and thus do not provide any basis for holding D & D Venture/Chase Ace Hardware liable in this case.  Third, and in any event, plaintiffs fail to present evidence of any purchases of Roundup®-branded herbicides at D & D Venture/Chase Ace Hardware's store before plaintiffs' counter-factual proffered December 2016 cancer onset date, and new information obtained very recently by Monsanto demonstrates no factual basis for any such claim.  Finally, plaintiffs misconstrue the forum defendant rule and fail to recognize that the rule does not apply when – as is the case here – the in-forum defendants were fraudulently joined.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 2019, plaintiffs commenced this lawsuit by filing a Complaint in the Superior Court of the State of California for Marin County.  Plaintiffs sued Monsanto, the Wilbur-Ellis defendants, and D & D Venture/Chase Ace Hardware.  Complaint, ECF No. 1-1.  The Complaint asserts various product liability claims and seeks damages for cancer allegedly caused by Monsanto's Roundup®-branded herbicides, which plaintiffs claim were: (a) distributed by the Wilbur-Ellis defendants; and (b) were sold by D & D Venture/Chase Ace Hardware.

2

In October 2019, plaintiffs' lawsuit was added to the Judicial Council Coordinated Proceeding known as *Roundup Products Cases*, JCCP No. 4953, which is pending in the Superior Court of the State of California for Alameda County.

On October 22, 2019, Monsanto was served with the Summons and Complaint.

On October 31, 2019, Monsanto timely removed this lawsuit to this Court, based on declarations that establish that plaintiffs fraudulently joined the California defendants – the Wilbur-Ellis defendants and D & D Venture/Chase Ace Hardware. Monsanto Company's Notice of Removal of *Berliant* Case ("Removal Notice"), ECF No. 1.

On November 4, 2019, Plaintiffs filed an "Emergency Motion to Remand and for Attorney Fees and Costs," ECF No. 6, with a Memorandum of Points and Authorities in Support, ECF No. 6-1 ("Remand Memorandum"). Plaintiffs claim that they did not fraudulently join D & D Venture/Chase Ace Hardware, but they do not dispute the evidence and arguments in the Removal Notice regarding fraudulent joinder of the Wilbur-Ellis defendants.

## **LEGAL STANDARDS**

The fraudulent joinder of defendants does not defeat this Court's diversity jurisdiction. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). As recognized by this Court in Pretrial Order No. 157, "[t]he doctrine of fraudulent joinder applies when a non-diverse defendant has 'no real connection with the controversy.'" Pretrial Order No. 157, at 3, No. 3:16-md-02741-VC, ECF No. 4533 (N.D. Cal. July 9, 2019) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *see Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (stating that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). When fraudulent joinder applies – *i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted) – the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes

3

of determining whether the court has jurisdiction based on diversity of citizenship, *id.* Moreover, if a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be "non-fanciful" for the case to be remanded. *Illegal Aliens, LLC v. N. Am Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that statutory provision applies only to "properly joined" defendants. 28 U.S.C. § 1441(b)(2).

In conducting a fraudulent joinder analysis, the Court is not limited to the allegations of the complaint – and is permitted to consider affidavits, declarations, and other evidence presented by the removing defendant. *See Ritchey*, 139 F.3d at 1318 ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.") (citation omitted); *Morris*, 236 F.3d at 1068 ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (citation omitted)). Once the removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on mere allegations in the complaint to seek remand. *See Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLC-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019) (denying remand motion; holding that plaintiff did not state a claim against non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder) (emphasis in original); *Feizbakhsh v. Travelers Com. Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016) (same; holding that plaintiff's "conclusory allegations" in the complaint were not sufficient to overcome evidence offered by removing defendant to establish fraudulent joinder); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. April 7, 2016) (same; holding that plaintiff's "speculation, which is unsupported by any evidence[,]" does not suffice to overcome the evidence presented by removing defendant).

4

## ARGUMENT

I. **Plaintiffs Fraudulently Joined D & D Venture/Chase Ace Hardware Because Mr. Berliant's Cancer First Manifested Itself In July 2015 – Well Before The Hardware Store Opened In June 2016 – So Any Roundup®-Branded Herbicides Allegedly Purchased At That Store Could Not Have Caused Mr. Berliant's Cancer.**

The Complaint alleges that Mr. Berliant's cancer was caused by Roundup®-branded herbicides that "he purchased and used in the state of California from approximately 1989 to 2017." Complaint ¶ 14. Plaintiffs allege – upon mere information and belief – that D & D Venture Group/Chase Ace Hardware "supplied" Mr. Berliant with Roundup® products and that exposure to those products "was a direct and proximate cause of the harms sustained by [him]." *Id.* ¶ 9. The Complaint states the following address where Mr. Berliant allegedly bought those Roundup® products: "At all times relevant to this Complaint, [D & D Venture Group, Inc.] owned and operated Chase Ace Hardware Garden & Gift Emporium in Marin County, located at 1826 4th St, San Rafael, California 94901, which retailed Monsanto products, including Roundup. [D & D Venture Group, Inc.], at its Chase Ace Hardware location, supplied Plaintiff with the Roundup® products which caused Plaintiff's NHL." *Id.* ¶ 28.

However, that allegation – which is essential to all of plaintiffs' claims against D & D Venture/Chase Ace Hardware – is fundamentally flawed and contrary to two key facts.

*First*, as established by the sworn statement of the Chief Executive Officer of D & D Venture Group, Inc., the retail store in San Rafael, California that is owned and operated by that defendant – Chase Ace Hardware Garden & Gift Emporium ("Chase Ace Hardware Store"), located at 1826 4th Street, San Rafael, California – "first opened in June 2016." Removal Notice ¶ 31 (quoting Declaration of David Harrison ¶¶ 3-4 ("Harrison Declaration"), attached to Removal Notice as Exhibit 6, ECF No. 1-6). Thus, "**[i]f** Mr. Berliant bought (or otherwise obtained) any Roundup® products from the Chase Ace Hardware Store, that must have occurred during and/or after June 2016 because that store did not exist before June 2016." *Id.* (quoting Harrison Declaration ¶ 6 (emphasis in original)).

Although plaintiffs complain that the Harrison Declaration is "self-serving," Remand Mem. at 7, they do not (and cannot) dispute the fact that the Chase Ace Hardware Store did not

5

open until June 2016 and therefore could not have supplied any Roundup®-branded herbicides to Mr. Berliant before June 2016.

*Second*, as Monsanto's expert oncologist explained – without expert rebuttal – Mr. Berliant's medical records date the start of his T-PLL no later than July 9, 2015, when a blood test result showed that he had lymphocytosis – a defining feature of T-cell prolymphocytic leukemia. *See* Removal Notice ¶ 32 (citing Declaration of Kenneth B. Miller, M.D. ¶¶ 6-7 ("Dr. Miller Declaration"), attached to Removal Notice as Exhibit 7, ECF No. 1-7). Subsequent blood test results in 2016, 2017, and 2018 showed worsening lymphocytosis, which "is consistent with disease progression until Mr. Berliant became symptomatic in late 2018." *Id.* (quoting Dr. Miller Declaration ¶ 7). Mr. Berliant's T-PLL was confirmed in April 2019 following a biopsy. *See id.* (citing Dr. Miller Declaration ¶¶ 5-7). Accordingly, whatever caused Mr. Berliant's T-PLL occurred before and/or no later than July 9, 2015. *See id.* (citing Dr. Miller Declaration ¶ 8).

These two unrebutted facts demonstrate that Mr. Berliant's T-PLL could not have been caused by *any* product allegedly supplied to Mr. Berliant by D & D Venture/Chase Ace Hardware. In these circumstances, plaintiffs have no viable claims against that defendant because "[t]here is no liability without causation," *Toste v. CalPortland Constr.*, 245 Cal. App. 4th 362, 369 (2016). Mr. Berliant sustained his T-PLL long before D & D Venture/Chase Ace Hardware could have sold him any Roundup® products, so plaintiffs cannot establish the "threshold requirement" that this defendant "sold [] or supplied the injury-causing product." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 362 (2012) ("That the defendant manufactured, sold, or supplied the injury-causing product is a separate and threshold requirement that must be independently established."); *see also id.* at 365 (rejecting plaintiffs' arguments and stating: "[E]xpansion of the duty of care as urged here would impose an obligation to compensate on those whose products caused the plaintiffs no harm. To do so would exceed the boundaries established over decades of product liability law."); *Toste*, 245 Cal. App. 4th at 369 (rejecting plaintiff's "liability-without-causation theory" (quotation marks omitted)); *id.* at 370 ("If the accident would have happened anyway, whether the defendant was negligent or not, then his or

6

her negligence was not a cause in fact, and of course cannot be the legal or responsible cause." (quotation marks omitted)).

## II. Plaintiffs' Arguments Fail To Solve The Fundamental Causation Problem That Defeats Their Claims Against D & D Venture/Chase Ace Hardware.

### A. Plaintiffs' Reliance on the Trial-Preference-Motion Declaration of their Expert Witness is Misplaced.

In an effort to muddle the record, plaintiffs rely on a statement made in the declaration of Dr. Ron Schiff ("Dr. Schiff Declaration") that they filed in support of their trial preference motion. In recounting Mr. Berliant's medical history, Dr. Schiff stated: "Mr. Berliant is a 70-year-old male who was found to have abnormally elevated white blood cell and lymphocyte counts on December 2, 2016." Remand Mem. at 8 (quoting Dr. Schiff Declaration ¶ 6).

But Dr. Schiff did not purport in that earlier, pre-removal declaration to present an onset date for Mr. Berliant's T-PLL. That declaration was prepared for, and filed in support of, a trial preference motion, and focused on Mr. Berliant's current medical condition. The onset date of Mr. Berliant's T-PLL – the key issue here – was not at issue in the preference motion or in the Dr. Schiff Declaration.

### B. Plaintiffs' Unpersuasive Criticisms of Dr. Miller's Declaration Are Based on Speculation and a Fundamental Misunderstanding of the Particular Leukemia Disease Process at Issue Here.

Plaintiffs' remand argument thus rests on their *counsel's* argument that Mr. Berliant's T-PLL did not begin until his December 2016 blood test showed an elevated white blood cell count. *See* Remand Mem. at 8-9. Plaintiffs' counsel also point to the lack of overt symptoms of disease in Mr. Berliant's medical records for July 2015. *See id.* at 9.

But, as Dr. Miller explains, this argument is based on a fundamental misunderstanding of the T-PLL disease process. *See* Supplemental Declaration of Kenneth R. Miller, M.D. ¶ 4 ("Supplemental Miller Declaration") (filed this same date). The natural initial progression of T-PLL is marked by the development of lymphocytosis – which may or may not be accompanied by an elevated white blood cell count – and up to 20-30% of T-PLL patients first present with an inactive, asymptomatic disease that may only be apparent through a laboratory finding of

7

lymphocytosis. *Id.* (citing medical literature). The following table (taken from Mr. Berliant's medical records, attached as Exhibit C to Dr. Miller Declaration, ECF No. 1-7, with the highlighting in the original records) shows that Mr. Berliant's lymphocytosis increased over time, starting with the abnormally elevated lymphocyte value in July 2015 of 47% and increasing over time to 82% in November 2018:

| Component | 7/9/2015 | 5/19/2017 | 6/13/2017 | 7/10/2017 | 10/5/2018 | 10/8/2018 | 11/9/2018 |
|---|---|---|---|---|---|---|---|
| NEUTROPHILS % AUTO | 42 | 26 (L) | 20 (L) | 22 (L) | 13 (L) | 13 (L) | 12 (L) |
| LYMPHS % AUTO | 47 (H) | 67 (H) | 72 (H) | 70 (H) | 81 (H) | 80 (H) | 82 (H) |
| MONOS % AUTO | 8 | 4 (L) | 5 | 6 | 4 (L) | 6 | 5 |
| EOS % AUTO | 2 | 2 | 2 | 2 | 1 | 1 | 1 |
| BASO'S % AUTO | 0 | 1 | 1 | 0 | 1 | 0 | 0 |
| IMMAT GRANULO % AUTO |  | 0 | 0 | 0 | 0 | 0 | 0 |
| ANC | 4.0 | 3.8 | 2.5 | 3.1 | 3.4 | 3.9 | 3.1 |

Supplemental Miller Declaration ¶ 5. This medical record table sets forth the natural progression of Mr. Berliant's disease, starting with an asymptomatic presentation and progressing to active, symptomatic disease. *Id.*

Moreover, plaintiffs' reliance on the fact that Mr. Berliant's T-PLL was not immediately identified by his doctors misses the mark. As Dr. Miller explains, it is not unusual for an initial, asymptomatic stage of T-PLL to be missed by healthcare providers, and it is not surprising that Mr. Berliant's treating physicians did not immediately conduct further testing in July 2015 that would have confirmed his T-PLL. Supplemental Miller Declaration ¶ 7. With the benefit of hindsight, however, the natural progression of Mr. Berliant's lymphocytosis set forth in the medical record table reproduced above leaves no doubt that his T-PLL began sometime before July 2015. *Id.*

Plaintiffs' fallback speculation – that exposure to Roundup®-branded herbicides might have promoted or exacerbated Mr. Berliant's T-PLL after July 2015 – fares no better. As the medical literature makes clear, once the T-PLL disease process begins, the progression to active, symptomatic disease is inevitable. Supplemental Miller Declaration ¶ 6 (citing medical literature). Indeed, there currently is no medical treatment for asymptomatic T-PLL patients with lymphocytosis that can delay or ameliorate the disease process. *Id.* (citing medical

8

literature). Accordingly, there is no medical basis for the suggestion that some outside exposure after July 2015 had any impact on Mr. Berliant's T-PLL. *Id.*

It should be noted as well that plaintiff's "exacerbation" theory rests solely on a single mouse study (the George study), *see* Remand Mem. at 10-11, that even the IARC monograph rejected as "an inadequate study for the evaluation of glyphosate," Declaration of Martin Calhoun ("Calhoun Declaration"), Exhibit 1 (IARC Glyphosate Monograph at 32, 34 (2015)) (filed this same date). Dr. Christopher Portier admitted during his *Hardeman* trial testimony that he would "want to see a lot more evidence" than the George study before he would "go there and start thinking about that [cancer promotion]" and that, after searching the glyphosate literature, he is not aware of any such evidence:

> Q. Okay. Well, then let me ask you this question. The George study, this positive finding there, what -- what -- is that consistent with what you're seeing in the rodent data for glyphosate?
>
> A. Partially. Obviously it's -- it's addressing the question of promotion, which means that you already have these initiated cells. Living can cause mutations to occur. And so it's conceivable that glyphosate, all of these tumor findings we are seeing here, are glyphosate promoting out already effects. I don't think it's likely, but it's conceivable that's the case.
> The initiation/promotion study is simply showing you that in one system, the skin, glyphosate has this ability to promote out cancer. That's all it really means.
>
> Q. Well, let's -- hypothetically speaking, let's say an individual has a mutated cell caused by, like you said, life, or like a viral infection or something. Does the George study -- I don't know. You tell me. Does it have any influence on whether or not it could promote a mutation to lead to cancer?
>
> A. It certainly increases the chances that that might be the case because now you have evidence to suggest glyphosate can do that -- this. ***But I'd want to see a lot more evidence before I'd go there and start thinking about that.***
> There are initiation/promotion studies you can do in the liver. There are initiation/promotion studies you can do in the brain. I'd like to see a little more work along those lines.
> And then looking at the other mechanistic evidence, I'd have to conclude that even though it wasn't an initiator in the skin, I'd want to look more closely at why it didn't come out as an initiator in the skin because theoretically it probably should have.

9

> Q. Okay. *You mentioned that you'd like to see more initiation and promotion studies in other sort of organs. Have any of those been done?*
>
> A. *Not that I'm aware of. I would have hopefully picked them up in my search of the literature, and I haven't seen any.*

Calhoun Declaration, Exhibit 2 (2/21/19 Transcript of Christopher Portier *Hardeman* Testimony at 156:18 - 158:18) (emphasis added).[1] Likewise, Dr. Sawyer confirmed shortly after his testimony in *Pilliod* that he could not identify any human studies showing that glyphosate can promote cancer. Calhoun Declaration, Exhibit 4 (4/30/19 Transcript of William Sawyer *Cazier* Deposition Testimony at 145:7-21).

In short, plaintiffs have no evidence that any Roundup®-branded herbicides allegedly supplied by D & D Venture/Chase Ace Hardware caused or had any impact on the progression of Mr. Berliant's T-PLL. Accordingly, the Court should hold that plaintiffs fraudulently joined D & D Venture/Chase Ace Hardware and that the Court has diversity jurisdiction in this case.[2]

**III. Even If The Court Were To Accept Plaintiffs' Assertion That Mr. Berliant's Cancer Did Not Begin Until December 2016, Plaintiffs Fail To Present Any Facts Showing Pre-December-2016 Purchases Of Roundup® Products From D & D Venture/Chase Ace Hardware.**

Plaintiffs' argument in support of a December 2016 onset date for Mr. Berliant's T-PLL presupposes that he purchased Roundup® products from the Chase Ace Hardware Store before that date that could have played a sufficient factor in causing his disease.

However, Monsanto very recently became aware of new information that undercuts that supposition. The Chase Ace Hardware Store has records of its credit card sales to the Berliants, and those records show only two purchases by Mr. or Mrs. Berliant during the entire time that

---

[1] In the *Hardeman* trial, this Court concluded that there was an insufficient evidentiary basis to allow plaintiff to argue, based on the George study, that Roundup®-branded herbicides are cancer promoters. *See* Calhoun Declaration, Exhibit 3 (3/11/19 *Hardeman* Trial Transcript at 1811:4 – 1814:25, 1847:1 – 1851:2).

[2] Monsanto established that plaintiffs fraudulently joined the Wilbur-Ellis defendants. *See* Removal Notice ¶¶ 20-28. Plaintiffs do not dispute that showing, so the Court should also disregard the citizenship of the Wilbur-Ellis defendants when deciding whether complete diversity of citizenship exists in this case. Monsanto also established that this lawsuit satisfies the jurisdictional amount-in-controversy requirement, *see id*. ¶¶ 35-36, and plaintiffs do not dispute that showing.

10

store has been in existence, but neither purchase involved Roundup®-branded products. *See* Declaration of Damon Pham ¶ 6 & Exhibit A ("Pham Declaration") (filed this same date).[3] Moreover, for the period at issue here – from the store opening in June 2016 through the end of December 2016 – the store has complete records of ***all*** sales of Roundup®-branded products. None of these records reflect sales to the Berliants, and there are only five cash sales of Roundup®-branded products during that period that do not identify the purchaser's name. Pham Declaration ¶ 7. Three of those sales involve Roundup® products different than the "Roundup® Grass and Weed Killer" (presumably meaning Roundup® Weed and Grass Killer), identified by Mr. Berliant in his Plaintiff Fact Sheet ("PFS") as the product that he used. *See* PFS at 8, ECF No. 1-5; Pham Declaration ¶ 7. The remaining two cash sales each occurred in September 2016 and each involved a single bottle of a Roundup® Ready to Use product, though the records do not otherwise identify the specific product name. Pham Declaration ¶ 7.

Thus, at most, there are only two sales of a Roundup®-branded product – a mere three months before Mr. Berliant's alleged December 2016 manifestation of cancer – for which there could be even a conceivable connection to Mr. Berliant, but those sales do not match Mr. Berliant's allegations. Mr. Berliant allegedly used Roundup®-branded products for more than 25 years "[a]t least a couple of times a month from April to June." PFS at 8, ECF No. 1-5. However, as discussed above, the two sales to unidentified purchasers occurred in September 2016. Accordingly, those sales could not have resulted in Mr. Berliant using Roundup®-branded products before or during December 2016 that were supplied to him by D & D Venture/Chase Ace Hardware.[4]

---

[3] On June 29, 2017, Mrs. Berliant purchased plants at the Chase Ace Hardware Store, and on July 1, 2017, Mr. Berliant purchased some drip irrigation-related items. Pham Declaration ¶ 6 & Exhibit A.

[4] Monsanto acknowledges that this information and argument are new – though timely, given that Monsanto was served with the Complaint on October 22, 2019, less than 30 days before Monsanto is presenting this information and argument here. Due to this procedural posture, Monsanto would not be opposed to the Court granting plaintiffs additional time, if necessary, to file a supplemental memorandum in response to this new information and argument.

11

In these circumstances, D & D Venture/Chase Ace Hardware has no real connection to the controversy and has been fraudulently joined. *See Illegal Aliens, LLC*, 2015 WL 1636715, at *2 (stating that remand is required if there is a "non-fanciful possibility" that the plaintiff can state a claim against the non-diverse defendant); *Macey*, 220 F. Supp. 2d at 1117 (same).

## IV. The "Forum Defendant" Rule Does Not Preclude Removal Because Any California Defendant Was Fraudulently Joined In This Case.

Plaintiffs' erroneous argument that the "forum defendant" rule (28 U.S.C. § 1441(b)(2)) prevents removal is based on a misleading quotation that omits key statutory language. Plaintiffs contend that "[r]emoval is not permitted when one of the defendants joined and served 'is a citizen of the State in which such action is brought.'" Remand Mem. at 6 (quoting § 1441(b)(2)). Next, plaintiffs assert that, "even if diversity existed," *id*. at 7, remand is required because D & D Venture/Chase Ace Hardware was served more than one month before Monsanto filed the Removal Notice.

However, that argument is clearly incorrect. If diversity exists in this case – as plaintiffs concede for the sake of this argument – then diversity must exist due to fraudulent joinder and the requirement that the Court disregard the citizenship of the non-diverse defendants (D & D Venture/Chase Ace Hardware and the Wilbur-Ellis defendants). The forum defendant rule requires not only that the in-forum defendant was properly served before a removal notice is filed, but also that the in-forum defendant has been "***properly joined***," § 1441(b)(2) (emphasis added). Plaintiffs omit that essential statutory requirement when quoting § 1441(b)(2) and ask this Court to ignore that requirement. Contrary to their argument, when an in-forum defendant has been fraudulently joined, that defendant is not properly joined as required by § 1441(b)(2). Thus, fraudulent joinder leads to the conclusion that § 1441(b)(2) does not apply and does not preclude removal. *See Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017) (holding that "the forum-defendant rule, 28 U.S.C. § 1441(b)(2), did not prohibit removal" because the forum defendants "were fraudulently joined"); *Kolker v. VNUS Techs., Inc.*, No. CV 10-00900-JF-PVT, 2010 WL 3059220, at *3-4 (N.D. Cal. Aug. 2, 2010) (denying remand motion where complete

12

diversity of citizenship existed between plaintiff and both defendants; holding that forum defendant rule did not apply because forum defendant was fraudulently joined); *see also, e.g.*, *Leaphart v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV-15-106-GF-BMM, 2016 WL 81234, at *1 (D. Mont. Jan. 7, 2016) ("An exception to the forum defendant rule exists where a Plaintiff fraudulently joins a local defendant.").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand.[5]

DATED: November 18, 2019

Respectfully submitted,

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: 202-942-5000
Fax: 202-942-5999

/s/ Eric G. Lasker
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant*
*MONSANTO COMPANY*

---

[5] If the Court grants the motion, it nevertheless should deny plaintiffs' request for fees and costs because, as shown above, Monsanto had objectively reasonable bases for removal in this case. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").

13