**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, N.W.
Washington, DC 20005
Tel:  202-898-5800
Fax:  202-682-1639

**ARNOLD & PORTER KAYE SCHOLER LLP**
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel:  202-942-5000
Fax:  202-942-5999

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Phillip Mowry v. Monsanto Company, et al.*, Case No. 3:20-cv-05536-VC | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Hearing Date:   December 3, 2020<br>Time:              10:00 a.m.<br>Courtroom:      4 |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND ISSUE TO BE DECIDED .................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 2

LEGAL STANDARDS ........................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

      I.       THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED .. 4

      II.      PLAINTIFF DOES NOT, AND CANNOT, DISPUTE MONSANTO'S
             EVIDENCE THAT HE FRAUDULENTLY JOINED HARWELL'S. ................ 6

          A.      The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-
                  Fanciful Possibility Of Prevailing On The "Product Liability Actions." ......... 6

          B.      The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-
                  Fanciful Possibility Of Prevailing On His Fraud Claim. ............................... 10

          C.      The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-
                  Fanciful Possibility Of Prevailing On His Deceptive Trade Practices Act
                  Claim. ........................................................................................................... 13

          D.      The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-
                  Fanciful Possibility Of Prevailing On His Wantonness Claim. ...................... 13

          E.      Alabama Law Does Not Recognize A Claim For "Combined And Concurring
                  Conduct." ..................................................................................................... 14

          F.      Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On His
                  Conspiracy Claim. ........................................................................................ 14

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ankrom v. State*,
  152 So. 3d 373 (Ala. Crim. App. 2011), *aff'd*, 152 So. 3d 397 (Ala. 2013)..............................9

*Arias v. Follet Higher Educ. Corp.*,
  No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..............................4

*Barnes v. Gen. Motors, LLC*,
  No. 2:14-cv-00719-AKK, 2014 WL 2999188 (N.D. Ala. July 1, 2014)............................7, 10

*Cooper v. Nissan Motor Co. LTD.*,
  No. 2:18-cv-00483-KOB, 2018 WL 3109612 (N.D. Ala. June 25, 2018)...............................7

*Deerman v. Fed. Home Loan Mortg. Corp.*,
  955 F. Supp. 1393 (N.D. Ala. 1997).....................................................................................13

*Deng v. Scroggins*,
  169 So. 3d 1015 (Ala. 2014)..................................................................................................10

*DGB, LLC v. Hinds*,
  55 So. 3d 218 (Ala. 2010)......................................................................................................14

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) .................................................................................................4

*Ex parte Essary*,
  992 So. 2d 5 (Ala. 2007).........................................................................................................13

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
  No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016)......................4

*Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*,
  583 So. 2d 256 (Ala. 1991).....................................................................................................11

*Gray v. Extended Stay Am., Inc.*,
  No. 2:19-cv-01269-MCE-EFB, 2020 WL 1274265 (E.D. Cal. Mar. 17, 2020).......................4

*Harris v. Bankers Life & Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005) ...............................................................................................5, 6

*Hubbs v. Big Lots Stores, Inc.*,
  No. LA CV5-01601 JAK (ASx), 2015 WL 3644002 (C.D. Cal. June 9, 2015).......................5

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
   No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015)....................................3

*Martinez v. McKesson Corp.*,
   No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ................................4

*Mason v. Chrysler Corp.*,
   653 So. 2d 951 (Ala. 1995) .............................................................................................12, 13

*McGowan v. Chrysler Corp.*,
   631 So. 2d 842 (Ala. 1993) ....................................................................................................11

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) .................................................................................................3

*Pescia v. Auburn Ford-Lincoln Mercury Inc.*,
   68 F. Supp. 2d 1269 (M.D. Ala. 1999) ..................................................................................14

*Rico-Chinn v. Prudential Ins. Co. of Am.*,
   No. C-05-01975 MMC, 2005 WL 1632289 (N.D. Cal. July 12, 2005)....................................6

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998) .................................................................................................3

*Roth v. CHA Hollywood Med. Ctr.*,
   720 F.3d 1121 (9th Cir. 2013) ..............................................................................................5, 6

*Russell v. Wilson*,
   991 So. 2d 745 (Ala. Civ. App. 2008) ...................................................................................11

*Sewell v. Smith & Wesson Holding Corp.*,
   No. 4:12-CV-00364-KOB, 2012 WL 2046830 (N.D. Ala. June 1, 2012)............................8, 9

*Steel v. Viscofan USA Inc.*,
   No. 2:16-cv-808-GMB, 2017 WL 253960 (M.D. Ala. Jan. 19, 2017) ...................................14

*Surrett v. TIG Premier Ins. Co.*,
   869 F. Supp. 919 (M.D. Ala. 1994) .......................................................................................13

*In re Takata Airbag Prods. Liab. Litig.*,
   193 F. Supp. 3d 1324 (S.D. Fla. 2016) ..................................................................................13

*Vagle v. Archstone Cmtys., LLC*,
   No. CV 14-03476 RGK, 2014 WL 2979201 (C.D. Cal. July 1, 2014)....................................4

*Vu v. Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 (N.D. Cal. 2009) ..................................................................................3

*Ex parte Walden*,
    785 So. 2d 335 (Ala. 2000) ....................................................................................................12

**<u>Statutes</u>**

28 U.S.C. § 1446(b) ..................................................................................................................4

Ala. Code § 6-5-521 ......................................................................................................... 6-8, 10

Ala. Code § 8-19-10(e) ............................................................................................................13

Alabama Extended Manufacturer's Liability Doctrine..................................................................7

Alabama Innocent Seller Act ........................................................................................... *passim*

## INTRODUCTION AND ISSUE TO BE DECIDED

The Remand Motion should be denied because Plaintiff, an Alabama citizen, has fraudulently joined a local non-manufacturer seller in an attempt to destroy this Court's diversity jurisdiction.  As established in Monsanto's Notice of Removal, all procedural and substantive requirements for removal have been satisfied.  First, Monsanto timely filed its Notice of Removal within 30 days of the date when the lawsuit first became removable.  Although the Complaint did not provide sufficient details for Monsanto to determine the viability of the allegations against the local non-manufacturer seller (Harwell's Green Thumb Nursery or "Harwell's"), Monsanto subsequently received "other papers" from that defendant which, for the first time, provided a clear basis for removal.  Plaintiff's argument that the "other paper" supporting removal must come from the *plaintiff* is incorrect and reflects a fundamental misunderstanding of the "voluntary/involuntary" rule, which does *not* apply when a local defendant has been fraudulently joined as in this case.

Second, the "other papers" supporting removal establish that the Alabama Innocent Seller Act bars all of Plaintiff's "product liability actions" against Harwell's, and that any remaining claims are also not viable.  In 2011, the Alabama legislature enacted the Innocent Seller Act to protect innocent non-manufacturer sellers against the exact types of claims brought in this lawsuit.  Remarkably, though, the Remand Motion ***does not even mention the Innocent Seller Act.***  Moreover, while Monsanto has presented ***factual evidence*** to satisfy its removal burden, Plaintiff's remand arguments consist of speculation and unsupported allegations from the Complaint, which courts repeatedly have explained is insufficient to support remand.  The issue to be decided is whether, under these circumstances, the Court should deny Plaintiff's request that the lawsuit be remanded to state court.  As discussed in more detail below, the answer to that question is resoundingly "Yes."

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 26, 2019, Plaintiff filed this lawsuit in the Circuit Court for Montgomery County, Alabama. *See* Notice of Removal ¶ 7, No. 3:20-cv-05536 (N.D. Cal.), ECF No. 1. Plaintiff, a former professional landscaper, alleges that his non-Hodgkin's lymphoma ("NHL") was caused by his exposure to Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. *Id.* ¶ 8. The thrust of Plaintiff's allegations against Harwell's, a non-manufacturer seller, are that it sold Roundup®-branded herbicides to Plaintiff at a store located in Montgomery County, Alabama. *Id.* ¶ 5.

On March 19, 2020, Monsanto received Harwell's Verified Answers to Monsanto's First Set of Interrogatories, *see* Ex. 2 to Notice of Removal, ECF No. 1-3 ("Harwell's Verified Interrogatory Answers"); and on March 23, 2020, Monsanto received an affidavit from the longtime President of Harwell's, Charles Harwell, *see* Ex. 4 to Notice of Removal, ECF No. 1-5 ("Harwell Affidavit"). These documents alerted Monsanto, for the first time, that:

1.  The only Harwell's employee whom Plaintiff has identified as telling him that Roundup® products were "safe for use" and "effective" (Charles Elliott) ***stopped working for Harwell's at least 10 years before*** IARC became the first (and only) entity to conclude that glyphosate could cause cancer.

2.  Harwell's has relied upon the U.S. Environmental Protection Agency's (EPA) approval and registration of Roundup®-branded products (as well as its active ingredient, glyphosate) in selling Roundup®-branded products.

3.  Based upon the EPA's registration, approval, and repeated statements that glyphosate-based products (including Roundup®-branded products) are not carcinogenic, Harwell's has always understood and believed that Roundup®-branded products are not carcinogenic.

4.  Harwell's did not make any specific assurances, representations, or warranties to Plaintiff about whether Roundup® products are capable of causing cancer.

5.  Harwell's has never intentionally concealed any information from Plaintiff about the alleged defects of Roundup® products (including whether those products were allegedly carcinogenic).

6.  Harwell's has never intentionally deceived Plaintiff about any alleged defects of Roundup® products (including whether those products were allegedly carcinogenic).

7.  Harwell's does not have any records indicating that it received a pre-filing demand letter from Plaintiff or Plaintiff's attorneys.

*See* Notice of Removal ¶ 5.  Based on this critical new information, Monsanto timely removed this case on March 24, 2020, relying upon federal diversity jurisdiction and the fraudulent joinder doctrine.  *See id.* ¶¶ 31-36.  On August 11, 2020, this case was transferred to the MDL, ECF No. 29, and Plaintiff filed this Motion to Remand ("Remand Motion"), ECF No. 30, on October 29, 2020.

## LEGAL STANDARDS

Although Plaintiff's Remand Motion does not cite a single Ninth Circuit decision on the issue of fraudulent joinder and diversity jurisdiction, this Court has ruled that "the precedent of the Ninth Circuit is binding on issues of federal law."  Pretrial Order No. 191, *In re: Roundup Prods. Liab. Litig.*, Case No. 3:16-md-02741-VC (N.D. Cal.), ECF No. 7844.  Accordingly, this Court must look to Ninth Circuit law to address the issues raised in Plaintiff's Remand Motion.  The Ninth Circuit has recognized that, although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  When fraudulent joinder applies— *i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *id.* (quotation marks omitted)—the fraudulently joined defendant's "presence in the lawsuit is ignored."  *Id.*  Moreover, if a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be "non-fanciful" for the case to be remanded.  *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1154 (N.D. Cal. 2009).

In conducting a fraudulent joinder analysis, a court is not limited to the allegations of the complaint and is permitted to consider declarations and other evidence presented by the removing defendant.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  If a removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on allegations in the complaint

to seek remand.  *See Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at \*3 (C.D. Cal. Feb. 7, 2019); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at \*8 (C.D. Cal. Sept. 9, 2016); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at \*3 (S.D. Cal. Apr. 7, 2016).

<u>ARGUMENT</u>

## I.      THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

As established in Monsanto's Notice of Removal, all procedural requirements for removal have been satisfied.  *See* Notice of Removal ¶¶ 31-36.  When a defendant does not remove a case during the first thirty-day window under 28 U.S.C. § 1446(b)(1), because the face of the complaint did not clearly provide facts that made the case removable, a second thirty-day window for removal can open later.  In that scenario, "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (quoting § 1446(b)(3)).  That is precisely what happened here; Monsanto removed this lawsuit based on the second thirty-day window in Section 1446(b)(3), because Harwell's Verified Interrogatory Answers and the Harwell Affidavit provided Monsanto with new information showing that the case was removable.  Plaintiff's argument that Monsanto's removal was untimely rests upon a faulty premise: that the voluntary-involuntary rule precludes the use of "other papers" provided by a co-defendant to support removal.  *See* Remand Mot. at 3-6.  It does not.  Rather, a defendant's affidavit can serve as an "'other paper' that trigger[s] a 30–day removal window under Section 1446(b)(3)." *Vagle v. Archstone Cmtys., LLC*, No. CV 14-03476 RGK (AJWx), 2014 WL 2979201, at \*4 (C.D. Cal. July 1, 2014).  Moreover, fraudulent joinder is an *exception* to the voluntary-involuntary rule, which means the "other paper" supporting removal is not limited to an "other paper" generated by the plaintiff, but may come from a co-defendant.  *See Gray v. Extended Stay Am., Inc.*, No. 2:19-cv-01269-MCE-EFB, 2020 WL 1274265, at \*4 (E.D. Cal. Mar. 17, 2020).

Although Plaintiff argues that Harwell's Answer to Plaintiff's Complaint should have provided Monsanto with "at least a clue" that Harwell's was fraudulently joined, s*ee* Remand Mot. at 5, the Ninth Circuit has rejected this "clue" standard for determining when the 30-day removal clock starts running. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 (9th Cir. 2005) (declining to "adopt a rule that the first thirty-day period [for removal] should apply where the initial pleading provides a 'clue' as to removability"). Harwell's Answer did not provide an unambiguous statement that clearly established federal jurisdiction because, even though Harwell's Answer raised the Alabama Innocent Seller Act as an affirmative defense, ***not all claims*** in the Complaint (*i.e.*, those which are not "product liability actions" under Alabama law) would be barred by that Act. *See infra* at pp. 6-10. For example, it was not until Monsanto received the Harwell Affidavit that it learned that Charles Elliott—the only Harwell's employee whom Plaintiff has specifically identified as telling him that Roundup® products were "safe for use"—last worked for Harwell's *more than 10 years before* IARC became the first (and still only) entity to conclude that glyphosate could cause cancer. This is relevant to Plaintiff's fraudulent misrepresentation claim because it makes clear that Harwell's did not have the requisite knowledge regarding the alleged carcinogenicity of Roundup® products at the time those alleged statements were made. *See* Notice of Removal ¶ 24; *infra* at pp. 10-13. Monsanto also learned for the first time when it received the Harwell Affidavit that Harwell's never received a pre-filing demand letter from Plaintiff, which is fatal to his Deceptive Trade Practices Act claim. *See* Notice of Removal ¶ 26; *infra* at p. 13. By contrast, Harwell's mere assertion of an innocent manufacturer defense did not provide Monsanto with a ***factual basis*** to remove this lawsuit.

The Ninth Circuit has made clear that "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (reliance on defendant's affidavit did not bar removal); *see also Hubbs v. Big Lots Stores*,

*Inc.*, No. LA CV5-01601 JAK (ASx), 2015 WL 3644002, at *1 n.2 (C.D. Cal. June 9, 2015) (citing *Roth* and recognizing that the "other paper" supporting removal can be a declaration from a defendant).  Plaintiff's argument that non-factual assertions of a legal defense triggers the 30-day clock would encourage defendants to "engage in premature removals in order to ensure that they do not waive their right to removal," *Harris*, 425 F.3d at 697; *see also Rico-Chinn v. Prudential Ins. Co. of Am.*, No. C-05-01975 MMC, 2005 WL 1632289, at *2 (N.D. Cal. July 12, 2005) (30-day clock does not begin until defendant has "unambiguous notice of removability," as that will "lessen[] the likelihood of 'premature' removals").  The other procedural requirements for removal have also been satisfied, including the amount-in-controversy.  *See* Notice of Removal ¶¶ 31-32.

## II.   PLAINTIFF DOES NOT, AND CANNOT, DISPUTE MONSANTO'S EVIDENCE THAT HE FRAUDULENTLY JOINED HARWELL'S.

### A.   The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On The "Product Liability Actions."

Plaintiff has asserted ten causes of action against Harwell's, six of which fall within the scope of "product liability actions" under Alabama law, *see* Ala. Code § 6-5-521(a),[1] including the claims for product liability, failure to warn, breach of express warranty[2], negligence, breach

---

[1] Alabama law defines "product liability actions" to mean

> any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other. . . .

Ala. Code § 6-5-521(a).

[2] Under Alabama law, breach of express warranty claims may be based upon oral or written statements.  Monsanto's First Set of Interrogatories to Plaintiff required him to "[i]dentify each written statement, written representation, or written warranty made by any agent, servant, or employee of Harwell's Green Thumb Nursery relating to Roundup®-branded products or glyphosate products."  *See* Pl.'s Supp. Answer to Interrogatory No. 18*,* ECF No. 1-4.  In response to that interrogatory, Plaintiff did not identify any specific *written* statements, representations, or warranties by Harwell's.  Consequently, Plaintiff's breach of express

of implied warranty, and negligent misrepresentation.  *See* Compl. ¶¶ 56-125 (included as part of Exhibit 1 to Notice of Removal, ECF No. 1-1).  As Monsanto established in its Notice of Removal, Plaintiff does not have a non-fanciful possibility of prevailing on his "product liability actions" against Harwell's because that non-manufacturer seller is protected against those claims under the Alabama Innocent Seller Act.  Notice of Removal ¶¶ 16-22.  Notably, the Remand Motion ***does not even mention the Alabama Innocent Seller Act***.  Instead, Plaintiff relies upon outdated case law decided ***before*** the Innocent Seller Act was enacted.  *See* Remand Mot. at 8. Those cases focused on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), which largely has been abrogated as to innocent non-manufacturer sellers such as Harwell's.

In 2011, the Alabama legislature enacted the Innocent Seller Act, the stated purpose of which is to "protect distributors who are merely conduits of a product."  Ala. Code § 6-5-521(b)(4); *accord Barnes v. Gen. Motors, LLC*, No. 2:14-cv-00719-AKK, 2014 WL 2999188, at *5 (N.D. Ala. July 1, 2014); *see also Cooper v. Nissan Motor Co. LTD.*, No. 2:18-cv-00483-KOB, 2018 WL 3109612, at *3 (N.D. Ala. June 25, 2018) (denying motion to remand where removing defendant submitted evidence showing that local defendant was a "mere conduit" of the allegedly defective product).  Under the Alabama Innocent Seller Act, a non-manufacturer seller is protected against "product liability actions" unless one of four narrow exceptions apply. *See* Ala. Code § 6-5-521(b); *see also* Notice of Removal ¶¶ 18-22.

In this case, none of the narrow exceptions apply.  *See* Notice of Removal ¶¶ 18-22. Harwell's has never been involved in the manufacture or assembly of Roundup® products; Harwell's has never exercised substantial control over the design, testing, manufacture, packaging, or labeling of Roundup® products; and Harwell's has never altered or modified Roundup® products.  *See id.* (citing Harwell's Verified Answers to Interrogatories Nos. 7-9).

---

warranty claim must rest upon, if anything, alleged oral statements made by Harwell's employees.  However, because such claim would fall within the scope of "product liability actions," Harwell's would be protected under the Alabama Innocent Seller Act.  *See* Notice of Removal ¶ 16 n.4.

Plaintiff's only potential argument is that the so-called "independent acts" exception applies, which provides that a non-manufacturer seller may be held liable for its own "independent acts **unrelated to the product design or manufacture**, such as independent acts of negligence, wantonness, warranty violations, or fraud." Ala. Code § 6-5-521(b)(4) (emphasis added). The Complaint alleges a series of acts by Harwell's which are copied and pasted from another lawsuit (*Moore*), filed by the same plaintiffs' counsel, where another Alabama innocent non-manufacturer seller was sued in another attempt to destroy federal diversity jurisdiction.[3] Plaintiff's wholesale recycling of the *Moore* Complaint is particularly obvious because: (a) Plaintiff neglected to even substitute **Harwell's name** for the name of the innocent non-manufacturer seller in *Moore* (which is Central Alabama Farmers Cooperative, Inc.); and (b) Plaintiff left in the name of a defendant sued in *Moore* (Helena Agri-Enterprises, LLC) that is **not even named as a defendant in Mowry**. *See* Notice of Removal ¶ 21.

Even assuming if the allegations cut-and-pasted from another lawsuit could somehow be credited as specific facts in this case, none of the alleged acts by Harwell's are truly "independent" within the meaning of the Alabama Innocent Seller Act because none are "unrelated to the product design or manufacture." The United States District Court for the Northern District of Alabama has rejected the type of expansive interpretation of the Innocent Seller Act offered by Plaintiff: one that would nullify the Act's requirement that the "independent acts" be "unrelated to the product design or manufacture." *See Sewell v. Smith & Wesson Holding Corp.*, No. 4:12-CV-00364-KOB, 2012 WL 2046830, at *2 (N.D. Ala. June 1, 2012). The *Sewell* court held that because the so-called "independent acts" by the non-

---

[3] *See* Notice of Removal ¶ 21 (*comparing Mowry* Compl. ¶ 34 *with* First Am. Compl. ¶ 36, *Moore v. Monsanto Co., et al.*, 3:20-cv-01010-VC (N.D. Cal.) ("*Moore* Compl.") (attached as Exhibit 5 to Monsanto's Notice of Removal in *Mowry*, ECF No. 1-6)) (both alleging that the non-manufacturer seller "never provided any warning that Roundup® was injurious to Plaintiff's health"); *comparing Mowry* Compl. ¶ 37 *with Moore* Compl. ¶ 39 (both alleging that Roundup® products were not "displayed or sold in such a way to notify [the plaintiff] that the Roundup was a carcinogenic and a [sic] hazardous substance").

manufacturer seller depended on the product being placed under recall—*i.e.*, that the product's design was allegedly defective—the non-manufacturer seller's acts were not truly "independent" and "unrelated to the product design or manufacture." *Id.* The same is true in this case.

Put simply, Plaintiff misunderstands the meaning of "unrelated."[4] As in *Sewell*, all of the alleged acts cited by Harwell's are fundamentally related to the ***design*** of Roundup® products. Plaintiff characterizes Harwell's alleged "independent acts" as: (1) providing "Plaintiff instructions and assist[ing] Plaintiff with the usage, handling, mixing, applying, and spreading of Roundup®," Compl. ¶ 34; (2) not "recommend[ing] safety gear" or "sell[ing] to Plaintiff protective gear," *id.*; and (3) selling Roundup® products to Plaintiff while intentionally withholding information or deceiving him about the alleged carcinogenicity of those products, *id.* ¶ 38. All of these are necessarily related to Roundup®'s design or manufacture within the meaning of the statute. For example, Harwell's alleged instructions or training of Plaintiff on how to mix and apply the products, whether and what protective gear to wear, etc., were driven by those products' on-label instructions for use. Those on-label instructions are directly and inextricably connected to the design of the Roundup® products pursuant to federal law.

The other so-called "independent acts"—that the only Harwell's employee (Charles Elliott) whom Plaintiff has identified as telling him that Roundup® products were "safe for use" and "effective," or withheld information or deceived Plaintiff about the alleged carcinogenicity of those products, *see* Remand Mot. at 9—are also not "independent acts." Mr. Elliott stopped working for Harwell's ***at least 10 years before*** IARC became the first (and only) entity to conclude that glyphosate could cause cancer. Plaintiff's unsupported belief that Mr. Elliott or any other Harwell's employee knew, or should have known, about the alleged carcinogenicity of

---

[4] The word "unrelated" means "not connected in any way." Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/unrelated (last visited November 12, 2020); *cf. Ankrom v. State*, 152 So. 3d 373, 380 (Ala. Crim. App. 2011) (recognizing that the "dictionary definition of a word provides the meaning ordinary people would give the word" and relying on the Merriam-Webster Dictionary in determining the plain meaning of an Alabama statute (citing *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993))), *aff'd*, 152 So. 3d 397 (Ala. 2013).

Roundup® products "by virtue of the fact that [Harwell's] worked in the agriculture industry," Remand Mot. at 12, is not based upon any facts and is nothing more than pure speculation. It is an attempted end run around the Innocent Seller Act, which was designed specifically to prevent liability against non-manufacturer sellers under these circumstances. *See Barnes*, 2014 WL 2999188, at *5 (stating that Ala. Code § 6-5-521(b) "is clearly meant to protect sellers who unknowingly sell products that later prove to be defective"). Plaintiff is trying to litigate a design defect claim against the non-manufacturer of a product. The Court should reject this.

    **B.**    **The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On His Fraud Claim.**

Plaintiff also does not have a non-fanciful possibility of prevailing against Harwell's on a fraudulent misrepresentation or concealment claim.[5] *See* Notice of Removal ¶ 23. First, a claim for fraudulent misrepresentation requires that the defendant knowingly make a misrepresentation of a material fact. *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014). Plaintiff's misrepresentation claim is premised upon his allegations that Harwell's employees told him, at some unspecified point in time, that Roundup® products were "safe for use," *see* Pl.'s Supp. Answer to Interrogatory No. 18. Plaintiff, however, identified only one Harwell's employee who allegedly made this statement, and Mr. Elliott stopped working for Harwell's ***more than 15 years ago, and at least 10 years before IARC issued its glyphosate monograph***, *see* Harwell Aff.[6] In addition, such statement would have been made ***14 years before*** Harwell's first learned about the alleged defects of Roundup® products. *See* Harwell's Verified Answer to Interrogatory No. 1.

---

[5] Count VI combines two different claims: "negligent misrepresentation and/or fraud." *See* Compl. ¶¶ 115-25. Harwell's is protected by the Alabama Innocent Seller Act against Plaintiff's negligent misrepresentation claim, which falls within the scope of "product liability actions" under Alabama law. *See* Ala. Code § 6-5-521(a); Notice of Removal ¶ 16.

[6] The Remand Motion incorrectly refers to Charles Elliott as a "long-time owner" and "operator" of Harwell's. Remand Mot. at 1. Mr. Elliott, who died earlier this year, was employed by Harwell's as a landscape designer and has never been an owner or operator. *See* Supplementary Affidavit of Charles Harwell, Apr. 20, 2020 ("Supplemental Harwell Affidavit"), attached as Exhibit B to Monsanto's Opposition to Plaintiff's Motion to Remand filed in the Middle District for the District of Alabama prior to transfer of this case to the MDL. ECF No. 16-2.

As a matter of law, this cannot and does not raise a non-fanciful possibility of proving fraudulent misrepresentation.

Moreover, even if Harwell's told Plaintiff that Roundup® products were "safe for use," after knowledge of the alleged defect, those statements constitute mere "puffery" and cannot support a fraudulent misrepresentation claim. *See* Notice of Removal ¶ 24; *see also McGowan v. Chrysler Corp.*, 631 So. 2d 842, 846 (Ala. 1993) (affirming dismissal of fraud claim because statements by car dealership that car was "top-of-the-line" and "smooth-riding" were mere puffery and not statements of material fact); *Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256, 258-59 (Ala. 1991) (statements by salesman that car was a "fine car" that "would be dependable and reliable" were "nothing more than 'puffery'" and not "statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim."); *Russell v. Wilson*, 991 So. 2d 745, 749 (Ala. Civ. App. 2008) (statements by non-manufacturer seller that a motorcycle was in "fine working order" and "mechanically sound" were "statements of opinion concerning the soundness and suitability of the motorcycle" and not statements of material fact sufficient to support fraudulent misrepresentation claim). Finally, Harwell's Verified Interrogatory Answers further establish that Harwell's did not make any affirmative representations, assurances, and/or warranties about any alleged defects of Roundup® products (including whether those products were allegedly carcinogenic), and that Harwell's never intentionally concealed information from Plaintiff (or deceived Plaintiff) about any alleged defects of Roundup® products. *See* Harwell's Verified Answers to Interrogatories Nos. 4-6. Plaintiff's general allegations about long-ago discussions with Mr. Elliott – consistent with the regulatory and scientific consensus and with Harwell's knowledge at the time – provide no meaningful response to these verified statements.

To the extent that Plaintiff has asserted a fraudulent suppression or concealment claim, he also does not have a non-fanciful possibility of prevailing under that theory. *See* Notice of Removal ¶ 25. To establish a fraudulent suppression or concealment claim, the plaintiff must establish: "(1) that the defendant had a duty to disclose a material fact; (2) that the defendant

concealed or failed to disclose this material fact; (3) that the defendant's concealment or failure
to disclose this material fact induced the plaintiff to act or to refrain from acting; and (4) that the
plaintiff suffered actual damage as a proximate result of being induced to act or to refrain from
acting." *Ex parte Walden*, 785 So. 2d 335, 338 (Ala. 2000) (citation omitted).  As discussed
above, the unrebutted factual evidence provided in Harwell's interrogatory responses
demonstrates that Harwell's did not have any undisclosed knowledge.  But, in any event, the
fraudulent suppression claim fails because, *inter alia*, the non-manufacturer seller did not have a
duty to inform Plaintiff about any alleged defects of Roundup® products.  *See Mason v. Chrysler
Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995) (dismissing fraudulent suppression claim, holding
that dealership's knowledge of recurring defect in model of car purchased by customer, even
though customer brought the car in for multiple repairs, was not sufficient to create a duty for the
dealership to disclose those defects to the customer).  As the Alabama Supreme Court has
instructed, "***mere silence in the absence of a duty to disclose is not fraudulent.***"  *Ex parte
Walden*, 785 So. 2d at 338 (emphasis added).  Moreover, the Alabama Supreme Court has
recognized that simply because one party (the seller) may have superior knowledge about a
product, that does not necessarily create a confidential or special relationship requiring the seller
to disclose alleged defects of the product to the customer.  *See Mason*, 653 So. 2d at 954-55.
Thus, even assuming, *arguendo*, that Harwell's employees had "far more education" about
Roundup® products than Plaintiff, *see* Pl.'s Supp. Answer to Interrogatory No. 18—putting aside
the fact that Plaintiff was a ***professional landscaper***—that does not mean that Harwell's
employees had a duty to disclose alleged defects of Roundup® to Plaintiff.  *See* Notice of
Removal ¶ 25*; see also Mason*, 653 So. 2d at 954-55; *Surrett v. TIG Premier Ins. Co.*, 869 F.
Supp. 919, 925 (M.D. Ala. 1994) (stating that "[s]uperior knowledge of a fact, without more,
does not impose upon a party a legal duty to disclose such information").  Because Harwell's, the
non-manufacturer seller, did not have a duty under Alabama law to inform Plaintiff about alleged
defects of Roundup® products, Plaintiff does not have a non-fanciful possibility of prevailing on
a fraudulent suppression claim.

### C.  The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On His Deceptive Trade Practices Act Claim.

The Alabama Deceptive Trade Practices Act ("ADTPA") provides that "[a]t least 15 days prior to the filing of any action under this section," a prospective plaintiff must file a "written demand" for relief that "reasonably describ[es] the unfair or deceptive act or practice relied upon and the injury suffered."  Ala. Code § 8-19-10(e).  Harwell's does not have any records indicating that it received a pre-filing demand letter as required by Section 8-19-10(e).  *See* Notice of Removal ¶ 26 (citing Harwell Affidavit).  Plaintiff also does not claim that any such letter was sent.  The ADTPA claim therefore fails as a matter of law.  *See Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399-400 (N.D. Ala. 1997); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1345 (S.D. Fla. 2016) (enforcing ADTPA's pre-suit written demand requirement); *see also* Notice of Removal ¶ 26.

### D.  The Unrebutted Evidence Establishes That Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On His Wantonness Claim.

Plaintiff also does not have a non-fanciful possibility of prevailing on his wantonness claim against Harwell's (Count X).  *See* Notice of Removal ¶ 27.  In Alabama, wantonness is defined as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury *will likely or probably result*."  *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original (citation omitted)).  At all times, Harwell's has relied upon the EPA's approval and registration of Roundup®-branded products in selling Roundup®-branded products.  *See* Harwell's Verified Answer to Interrogatory No. 2.  In addition, based upon the EPA's registration, approval, and repeated statements that glyphosate-based products are ***not*** carcinogenic, Harwell's has always understood and believed that Roundup®-branded products are not carcinogenic.  *See* Notice of Removal ¶ 27 (citing Harwell Affidavit).  In fact, Mr. Harwell (the longtime president of his company) has personally used, and continues to use, Roundup®-branded products.  *Id.*  There is simply no factual basis to believe that Harwell's had the requisite awareness or consciousness that Roundup® products would "likely" or "probably result" in causing Plaintiff to develop NHL.

Nor has Plaintiff rebutted Monsanto's factual evidentiary showing on this issue.  Plaintiff, again, is just speculating.

### E.   Alabama Law Does Not Recognize A Claim For "Combined And Concurring Conduct."

Alabama law does not recognize a freestanding cause of action for "combined and concurring conduct," *see*, *e.g., Steel v. Viscofan USA Inc.*, No. 2:16-cv-808-GMB, 2017 WL 253960, at *5 n.2 (M.D. Ala. Jan. 19, 2017), so that "claim" fails as a matter of law.

### F.   Plaintiff Does Not Have A Non-Fanciful Possibility Of Prevailing On His Conspiracy Claim.

Under Alabama law, "[a] plaintiff alleging a conspiracy must have a valid underlying cause of action."  *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (citation omitted); *accord Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 68 F. Supp. 2d 1269, 1281 (M.D. Ala. 1999) (citation omitted).  Because Plaintiff's other causes of action against Harwell's are not valid, his conspiracy claim also fails as a matter of law.

## CONCLUSION

Based upon the factual evidence provided in support of Monsanto's Notice of Removal and the arguments set forth above, the Court should deny Plaintiff's Motion to Remand and maintain federal diversity jurisdiction over this case by disregarding the citizenship of the fraudulently joined innocent non-manufacturer seller.

Dated:  November 12, 2020                      Respectfully submitted,

                                            */s/ Eric G. Lasker*
                                            Eric G. Lasker (*pro hac vice*)
                                            (elasker@hollingsworthllp.com)
                                            Martin C. Calhoun (*pro hac vice*)
                                            (mcalhoun@hollingsworthllp.com)
                                            **HOLLINGSWORTH LLP**
                                            1350 I Street, N.W.
                                            Washington, DC 20005
                                            Tel:   202-898-5800
                                            Fax:   202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
**WILKINSON STEKLOFF LLP**
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, N.W.
Washington. DC 20001
Tel:   202-942-5000
Fax:   202-942-5999

*Attorneys for Defendant*
*MONSANTO COMPANY*

MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
3:16-md-02471-VC & 3:20-cv-05536-VC