Jere L. Beasley (BEA020)
jere.beasley@beasleyallen.com
Rhon E. Jones (JON093)
rhon.jones@beasleyallen.com
John E. Tomlinson (TOM014)
john.tomlinson@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN,**
 **PORTIS AND MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama  36103
Phone: (334) 269-2343
Fax:(334) 954-7555

Jamie A. Johnston (JOH164)
jamie@jjohnstonpc.com
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone:  334.202.9228
Facsimile: 334.265.8789

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This document relates to:<br><br>*Phillip Mowry v Monsanto Company, et al.*, Case No. 3:20-cv-05536-VC<br><br>**Plaintiff Phillip Mowry, only** | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFF'S REPLY TO DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Hearing Date:    December 3, 2020<br>Time:                  10:00   A.M.<br>Courtroom:       4 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………………….…..………...i

TABLE OF AUTHORITIES……………………………………………………………….........ii, iii

INTRODUCTION …....…………………………………………………...….……………..………1

ARGUMENT ……………………………………………………………………………….....…....1

    I.       Monsanto's Removal is Untimely ..………………………………………………….……..1

    II.      Monsanto's Claim of Fraudulent Joinder Fails Because the Undisputed Evidence Establishes Beyond a Possibility That Plaintiff Stated Viable Causes of Action Against Harwell……………………………………………………………………………….………4

          (a)  Harwell is Not an Innocent Seller Under Alabama Code §6-5-521 ……… ………...…………6

              (I)     Harwell's Tort and Breach of Contract Claims are Independent of the Design and Manufacturer of Roundup®…………………….……….….………6

              (II)    Harwell is Not an "Unknowing Seller" of Roundup®……………….…….………9

CONCLUSION…………………………………………………………………………….…..  10

# TABLE OF AUTHORITIES

Cases                                                                                                       Page(s)

*Arias v. Follet Higher Educ. Corp.*,
  No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb 7. 2019)……………….……………..5

*Barnes v. Gen. Motors, LLC*,
  No. 2:14-cv-00719-AKK, 2014 WL 2999188, at *4-5 (N.D. Ala. July 1, 2014) …………..…...8, 9, 10

*Crowe v. Coleman*,
  113 F. 3d 1536, 1538, (11th Cir. 1997) ……………………………………………………….……..4

*Feizbakhsh v. Travelers Commerical Ins. Co.*,
  No. LA CV16-02165mJAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9. 2016)…………………….5

*Florence v. Crescent Res., LLC*,
  484 F.3d at 1293, 1299 (11th Cir. 2007)……………………………………………………………..4

*Gaus v Miles, Inc.*,
  980 F.2d 564, 566 (9th Cir. 1992) …………………………………………………………………..4

*Grancare, LLC v. Thrower by and through Mills*,
  889 F.3d 543, 549 (9th Cir. 2018) ……………………………………………………………....…4

*Harris v. Bankers Life & Cas. Co.,*
  425 F.3d 689, 695, 696 (9th Cir. 2005) ………………………………………………………….3, 4

*Haywood v. Alexander,*
  121 So.3d 972, 974-75 (Ala. 2013) …………………………………………………………….…..6

*Kruso v Int'l Tel. & Tel. Corp.*,
  872 F.2d 1416, 1426 (9th Cir. 1989)…………………………………………………………….....5

*Lazenby v ExMark Mfg. Co.*,
  No. 3:12-cv-82-WKW, 2012 WL 3231331, at *3 (N.D. Ala. Aug. 6, 2012) ……………………..8

*Libhart v. Santa Monica Dairy Co.*,
  592 F.2d 1062, 1064 (9th Cir. 1979) ………………………………………………………………4

*Martinez v. McKesson Corp.,*
  No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. April 7, 2016 …………………………5

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001) ……………………………………………………………………..5

*Nasrawi v. Bulk Consultants, LLC.*,
776 Supp. 2d 1166, 1169-1170 (E.D. Cal. 2011) …………………………………………………..5

*Reyes v. Better Living, Inc.*,
  174 So.3d 342 (Ala. 2015) ………………………………………………………………………….6

Case 3:16-md-02741-VC   Document 12071   Filed 11/19/20   Page 4 of 16

*Ritchey v. UpJohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ……………………………………………………………………5

*Sewell v. Smith & Wesson Holding Corp.*,
  No. 4:12-cv-00364-KOB, 2012 WL 2046830 at *2 (N.D. Ala. June 1, 2012) …………….…….....8, 9

*Stillwell v. Allstate Ins. Co.*,
  663 F.3d 1329, 1332-33 (11th Cir. 2011) …………………………………………………………..4

*Univ. of S. Alabama v. Am. Tobacco Co.*,
  168 F.3d 405, 411 (11th Cir. 1999) …………………………………………………………………4

*Waits v Kubuta Tractor Corp.*,
  No. 7:19-cv-01080-LSC, 2019 WL 4917903, at *3 (N.D. Ala. Oct. 4, 2019) ……………………..6, 8, 10

Statutes

28 U.S.C. 1446 …………………………………………………………………………………………..1

Ala. Code 6-5-501 (1975) …………………………………………………………………………………….2

Ala. Code 6-5-521 (1975) …………………………………………………..…….…….……..2, 5, 6, 7, 8, 9

iii.

PLAINTIFF'S REPLY TO DEFENDANT MONSANTO'S OPPOSITION
3:20-cv-05536-VC and 3:16-md-02741-VC

# INTRODUCTION

Plaintiff Phillip Mowry ("Plaintiff"), by and through his undersigned attorneys, and in reply to Defendant Monsanto's opposition, respectfully requests that this Court remand this action to the Circuit Court of Montgomery County, Alabama. It is undisputed and clear that Defendant Monsanto's only basis for federal court jurisdiction is reliant on the theory that the non-diverse co-defendant, Harwell's Green Thumb Nursery, Inc. ("Harwell") was fraudulently joined. However, Defendant Monsanto has failed to timely and persuasively meet its burden of establishing diversity jurisdiction.[1] For the reasons contained herein and the arguments proposed in the initial Motion to Remand Brief, Plaintiff has and will show this Court that this action was untimely and improperly removed and should be remanded back to state court in Alabama.

# ARGUMENT

### I. **Monsanto's Removal is Untimely**

"[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper from which it may first be ascertained that the case is one which is or has become removable**." 28 U.S.C.A. § 1446 (emphasis added). Monsanto relies on Harwell's Verified Answers to Monsanto's First Set of Interrogatories and an affidavit from Charles Harwell, received March 19, 2020 and March 23, 2020, respectively, as "other paper" necessary to trigger the second 30-day removal window. Regardless of the author and origin of these documents, Monsanto's removal is untimely because the grounds upon which Monsanto alleges fraudulent joinder—and thereby its removal—were clearly ascertainable from Harwell's June 4, 2019 Answer to Plaintiff's Complaint.

As Monsanto acknowledges on page 10 of its Brief in Opposition to Plaintiff's Motion to Remand (MDL Doc. #32), Harwell's Answer raises Alabama's Innocent Seller affirmative defense,

---

[1] Plaintiff does not waive any arguments set out in his original Motion to Remand and incorporates the same arguments as if set forth fully herein.

making ascertainable the basis on which Monsanto now argues fraudulent joinder, more than one year later, relating to Plaintiff's "product liability actions". *See* Harwell Answer, p. 20 ¶ 22 (citing Alabama Code §§ 6-5-501 and 6-5-521). The same is certainly true for Plaintiff's remaining causes of action against Harwell.

Harwell's June 2019 Answer clearly denies Plaintiff's allegations (*See* Harwell Answer, p. 5 ¶s 34, 37), including the following which form the basis of Monsanto's fraudulent joinder claim pertaining to Plaintiff's fraud causes of action:

> [Plaintiff] purchased the Roundup® from Defendant Harwell's Green Thumb Nursery, Inc. who also had access to the safety studies and information described herein . . . .

> [Harwell] provided Plaintiff instructions and assisted Plaintiff with the usage, handling, mixing, applying, and spreading of Roundup® and in doing so provided Plaintiff assurances of the safety of Roundup®.

(Complaint, p. 5 ¶ 34).

> [Harwell] undertook to select for Mowry the product to be used. [Harwell] had the opportunity to inspect and the superior knowledge of the product to that of Mowry. The subject product was not displayed or sold in such a way to notify Mowry that the Roundup® was a carcinogenic and a hazardous substance that could and more than likely would lead to Lymphoma which Mowry now suffers. . . .

(Complaint, p. 5 ¶ 37). These portions of Harwell's Answer plainly contend that Harwell's agents had no access to safety studies and information, that Harwell did not provide instructions or assistance, and that Harwell made no assurances of the safety of Roundup®.

Monsanto's argument against Plaintiff's fraudulent suppression and concealment claims also points to no new information, not previously revealed in Harwell's June 2019 Answer, which made ascertainable this alleged fraudulent joinder. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 16–17). Harwell's June 2019 Answer plainly denied having undisclosed knowledge of any alleged dangerous propensity. Additionally, Monsanto's basis for arguing against Plaintiff's Deceptive Trade Practices cause of action was ascertainable from the face of Harwell's June 2019 Answer, which stated the following:

> [Harwell] made no warranties of any kind or any representations of any nature whatsoever to Plaintiff. If any such warranties were made, which Harwell's Green Thumb Nursery, Inc. specifically denies, then **Plaintiff failed to give notice of any breach thereof**.

Harwell Answer, p. 19 ¶ 16 (emphasis added). Again, Monsanto points to no new information, not previously revealed in Harwell's June 2019 answer, which made ascertainable its fraudulent joinder argument now being presented more than a year later.

Arguing against Plaintiff's wantonness count, Monsanto claims that Harwell's Verified Interrogatory Responses and Harwell's affidavit first made Monsanto aware of Harwell's reliance on the U.S. Environmental Protection Agency's approval and registration of Roundup®-branded products in selling Roundup®-branded products. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 18). This is, again, not new information. Affirmative defenses 5–9, raised in Harwell's June 2019 Answer, all provide notice of the same, and thus rendered ascertainable Monsanto's alleged grounds for removal.[2] Monsanto cites *Harris v. Bankers Life & Cas. Co.* for the proposition that the thirty-day removal clock is not triggered by a pleading which provides a mere "clue," only, as to the basis for removal. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 10 (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 (9th Cir. 2005))). However, the facts presented by *Harris* significantly deviate from the present case in that Harris's initial pleading "did not affirmatively reveal information to trigger removal based on diversity jurisdiction because the initial pleading only stated [Defendant's] 1972 residency, not his citizenship, and certainly not his citizenship

---

[2] Pages 17–18, ¶s 5–9 of Harwell's Answer to Plaintiff's Complaint state the following:

> 5. . . . [T]he products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.
> 6. . . . [T]he products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.
> 7. Plaintiff's claims against Harwell's Green Thumb Nursery, Inc. are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.
> 8. Plaintiff's claims against Harwell's Green Thumb Nursery, Inc. are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.
> 9. Plaintiff's claims against Harwell's Green Thumb Nursery, Inc. are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

as of the filing of the complaint." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d at 695. Conversely, Harwell's June 2019 Answer, on its face, contains all the information necessary for Monsanto to make its present argument for removal based on Plaintiff's alleged fraudulent joinder. Therefore, Harwell's Answer triggered the second 30-day removal window, Monsanto's removal was untimely and improper, and remand must be ordered.

## II. Monsanto's Claim of Fraudulent Joinder Fails because the Undisputed Evidence Establishes Beyond a Possibility That Plaintiff Stated Viable Causes of Action Against Harwell

As an initial matter, Monsanto highlights that Plaintiff's argument for remand was formed on the basis of Eleventh Circuit case law. Admittedly, Plaintiff did not offer this Court any Ninth Circuit case law to support his positions in his initial memorandum. However, the Ninth Circuit and the Eleventh Circuit share analogous standards for determining fraudulent joinder and remand. *See Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 549 (9th Cir. 2018) ("This standard accords with that adopted by a majority of our sister circuits") (citing *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332–33 (11th Cir. 2011) ("no possibility" standard). Thus, although Plaintiff has argued there need be only a slight possibility of a right to relief in order to defeat a claim of fraudulent joinder, based on Eleventh Circuit case law—including *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) and *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007)—the same analysis applies in Ninth Circuit jurisprudence. *Grancare*, 889 F.3d at 549; *Stillwell*, 663 F.3d 1332–33. The Eleventh and the Ninth Circuits embrace the same, stringent removal standard, with a presumption against removal, under which courts reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (internal citations omitted) ("all doubts about jurisdiction should be resolved in favor of remand to state court").

It is worth briefly noting that Monsanto cites to roughly five cases where the court found fraudulent joinder, for the general proposition that a plaintiff must produce certain evidence to defeat a

claim of fraudulent joinder. However, in the first four cases cited, the court's ruling was based on the plaintiff's mere allegations failing to state a valid claim against fraudulently joined defendants.[3] In *Martinez*, the fifth case cited, the court found fraudulent joinder of an alleged supplier of a defective product when, after concluding discovery pertaining to the origin of the product, the plaintiff's allegation that the joined defendant supplied the product was plainly contradicted by all evidence produced.[4] Not one of these five cases provide a cognizable analog to the present case, wherein discovery has not been sufficiently completed and Plaintiff's well-pleaded causes of action provide viable claims against Harwell under Alabama law.

"In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011) (citing *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir.1989)). Plaintiff alleged causes of action against Defendant Harwell, to include product liability, failure to warn, negligence, misrepresentation, along with breaches of express and implied warranties. In relation to these six counts, Monsanto relies, exclusively, on a nonsensical reading of Alabama Statute § 6-5-521—a reading in support of which Monsanto has provided exactly zero cases applicable to the present facts. Resolving disputed questions of fact in Plaintiff's favor, Harwell is not a mere *unknowing* distributor of Roundup®, as Monsanto would have

---

[3] (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 8–9 (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998) (finding no possibility of cause of action succeeding due to statute of limitations); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) (same finding due to alleged fraudulent statements being mere puffery, not factual assertions); *Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) (same finding based on legally insufficient allegations within complaint); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) (same finding based on plaintiff's legally insufficient allegations against insurance agent, personally, and based on FRCP 9))).

[4] (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 8–9 (citing *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. April 7, 2016) (finding fraudulent joinder when, <u>after discovery</u>, plaintiff did not dispute that the companies joined as defendants were not routine suppliers of the defective product, but, nonetheless, plaintiff's allegation that joined defendant supplied the product was based on pure conjecture—that the joined defendant *could have* supplied the product))).

5

_____
PLAINTIFF'S REPLY TO DEFENDANT MONSANTO'S OPPOSITION
3:20-cv-05536 and 3:16-md-02741-VC

this Court believe. To the extent that Harwell lacked knowledge that Roundup® would cause cancer to Plaintiff, Monsanto's argument still fails, as knowledge of the product's danger is clearly irrelevant to at least six of Mowry's pleaded allegations.

### a. Harwell is Not an *Innocent Seller* Under Alabama Code § 6-5-521

Section 6-5-521(b)(4) of the Alabama code, codifying what is known as the "innocent" or "conduit" seller defense, "is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." Ala. Code § 6-5-521. Since 2011, when the Alabama Legislature amended Ala. Code § 6-5-521, this statute has not been substantively interpreted or applied in a published Alabama decision.[5] However, Alabama Federal District Courts have lent some clarification.

> In short, **the statute immunizes innocent sellers from strict liability, but not from their independent torts or breaches of warranty.** Under Alabama law, then, to prove fraudulent joinder, it must "appear beyond doubt that the plaintiff can prove no set of facts in support of the claim," that the diversity-destroying defendants engaged in "independent acts" that might subject them to liability.

*Waits v. Kubota Tractor Corp.*, No. 7:19-CV-01080-LSC, 2019 WL 4917903, at *3 (N.D. Ala. Oct. 4, 2019) (citing Ala. Code § 6-5-521; *Haywood v. Alexander*, 121 So.3d 972, 974–75 (Ala. 2013)) (emphasis added). In opposition to Plaintiff's Motion to Remand, Monsanto argues that Harwell distributing but not manufacturing or designing Roundup® provides Harwell with immunity, under Alabama's innocent seller statute, against Plaintiff's product liability claims. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 11–15). Monsanto's argument is misguided and Alabama's innocent seller defense does not shield Harwell from liability for its independent tortious and otherwise wrongful conduct.

### i. Harwell's Tort and Breach of Contract Claims are Independent of the Design and Manufacture of Roundup®

---

[5] The only published Alabama State court reference to § 6-5-521 is found in a dissent regarding whether the amendments apply retroactively. *See Reyes v. Better Living, Inc.*, 174 So.3d 342 (Ala. 2015) (Moore, C. J., dissenting) (arguing that these amendments should not apply retroactively).

In accord with a commonsense interpretation of Alabama's innocent seller defense, there is no direct relation between each of Mowry's claims against Harwell, and Monsanto's unreasonably dangerous design and manufacture of Roundup®. Much of Harwell's and Monsanto's tortious acts are "related" only in the sense that each generally pertains to the same product. More importantly, Plaintiff brings several claims against Harwell, under Alabama law, not merely based on its sale of Roundup® (or Roundup®'s design and manufacture), but also that Harwell knew or should have known the carcinogenic nature of the Roundup® provided, and that Harwell employees negligently provided hands-on training and education to Mowry in the use and application of Roundup®. (Complaint, p. 14 ¶ 52, p. 9–10 ¶ 33–38). It is undisputed that Harwell employees, including but not limited to Charles Elliot, met with Plaintiff on numerous occasions to advise him of how to mix and apply Roundup® product. Harwell failed to act prudently, through its agents, when training Mowry to use Roundup®, in light of what Harwell knew or reasonably should have known. *Id.* If, hypothetically, Monsanto had provided its product with adequate warning which rendered Roundup® reasonably safe for its intended use, Harwell may still be liable under Alabama law for its employees' negligent instruction and demonstration, applying Roundup® in a way which likely increased Plaintiff Mowry's dermal exposure to glyphosate.

Citing the dictionary definition of "unrelated," Monsanto contends that an alleged tortfeasor, not the designer or manufacturer, may be liable under § 6-5-521(b)(4), only when his tortious conduct is "not connected in any way" to the design or manufacture of the defective product. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 13–15, n. 4). This position is patently

7

_____
PLAINTIFF'S REPLY TO DEFENDANT MONSANTO'S OPPOSITION
3:20-cv-05536 and 3:16-md-02741-VC

absurd and has been rejected by Alabama U.S. District Courts in multiple cases.[6] Should Monsanto's argument be upheld, Alabama law would afford, effectively, no product liability remedy against a mere seller for any tortious conduct, no matter to what degree the seller engaged in his own independent fraudulent, wanton, or negligent conduct. Of course, Monsanto's innocent seller argument must fail, as it requires an interpretation of this Alabama statute which would entirely preclude application of the independent acts exception.

Additionally, Monsanto references *Sewell v. Smith & Wesson* in an effort to reinforce its flawed and circular perception of § 6-5-521's "independent acts" language. (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 13–14 (citing *Sewell v. Smith & Wesson Holding Corp.*, No. 4:12-CV-00364-KOB, 2012 WL 2046830, at *2 (N.D. Ala. June 1, 2012))). In *Sewell*, the Northern District of Alabama did, in fact, hold that a seller's mere distribution of a defective firearm was not an "independent act," within the language of § 6-5-521. *Sewell*, 2012 WL 2046830, at *2. However, the plaintiff's allegations against this distributor were based only on the distributor selling the product in the face of its recall and on the distributor failing to provide notice thereof to the plaintiff. *Id.* There was no claim of the distributor negligently providing instruction or advisory literature, on the firearm's features or its safe use. *Id.* The distributor did not engage in any sort of firearm-handling lesson, nor did the distributor otherwise provide any demonstration or recommendation as to how the plaintiff should best operate the product. *Id. Sewell* presents a marked difference in circumstances to the present matter, where

---

[6] *See e.g.*, *Barnes v. Gen. Motors, LLC*, No. 2:14-CV-00719-AKK, 2014 WL 2999188, at *4–5 (N.D. Ala. July 1, 2014) (ordering remand and holding AL's innocent seller statute inapplicable to the mere distributor of a defective automobile, because, although the distributor played no role in the design or manufacture of the vehicle at issue, plaintiff's allegation that the distributor sold the vehicle with knowledge of its dangerous condition was sufficiently independent of the vehicle's design and manufacture); *Lazenby v. ExMark Mfg. Co.*, No. 3:12-CV-82-WKW, 2012 WL 3231331, at *3 (M.D. Ala. Aug. 6, 2012) (same; where plaintiff claimed that a distributor sold a lawnmower with knowledge, merely, that it had no rollover protection system, the court found such claim sufficiently *independent* and *unrelated* to the lawnmower's defective design or manufacture—lacking rollover protection; "**[t]he decision to stock and sell a product that was known to be *likely* or *probable* to cause injury could constitute an independent act of wantonness that is separate from any act related to the design or manufacture of the product itself**") (emphasis added); *Waits*, 2019 WL 4917903, at *4 (same; holding that the distributor's mere selling of the allegedly defective tractor without warning of probable danger, when distributor should have been aware of such danger based on experience with similar products, was sufficiently independent).

8

_____
PLAINTIFF'S REPLY TO DEFENDANT MONSANTO'S OPPOSITION
3:20-cv-05536 and 3:16-md-02741-VC

Harwell agents maintained thorough contact with Plaintiff Mowry and provided him with detailed instruction and on-site demonstration for using Roundup® and even suggested equipment, or the lack thereof, that could have caused Plaintiff more exposure to harmful Roundup® products. In this sense, it is simply untrue that Monsanto's creation of this harmful product, and its deception related thereto, is "inextricably connected" to Harwell's tortious conduct. To argue otherwise, especially in analogy to a case as inapposite as *Sewell*, is a mistake and a position which should be rejected.

Moreover, to the extent that the scope of Alabama's innocent seller defense is unclear, this Court's grounds, upon which it would rule in favor of remand, grow increasingly firm. With exactly no Alabama State case law substantively interpreting its present innocent seller statute, and several Federal District Court opinions expressing plausible and distinct interpretations—<u>none of which support Monsanto's position</u>—the defense upon which Monsanto relies is far from settled. Thus, any perceived failure by Mowry to state a viable cause of action against Harwell, contrived by § 6-5-521 or otherwise, must not be "obvious"—as the standard mandates.

### ii.     **Harwell is Not an "Unknowing Seller" of Roundup®**

Monsanto argues Harwell should be insulated as a distributor, likening this defendant to one which "unknowingly sell[s] products that later prove to be defective." (Monsanto's Brief in Opposition to Plaintiff's Motion to Remand, MDL Doc. #32, p. 13, 15 (citing *Barnes*, 2014 WL 2999188, at *5)). This position fails to address that Harwell's actions were of much greater involvement than an ordinary seller, and that Plaintiff Mowry alleges Harwell was aware or should have been aware of Roundup®'s harmful properties, a claim for which adequate discovery has not yet been completed. Monsanto's near-tagline citation also avoids the holding from *Barnes* entirely.

In *Barnes*, an Alabama plaintiff brought a product liability suit against a group of defendants, including Alabama dealerships that sold a car from which the airbags had been removed, resulting in the driver's death. 2014 WL 2999188, at *5. Arguing fraudulent joinder based on immunity derived from Alabama's innocent seller statute, the removing defendants in *Barnes*—car dealerships, and mere distributors of the car at issue—contended "the 'decision to sell' theory advanced by [Plaintiff] . . . would

9

_____
PLAINTIFF'S REPLY TO DEFENDANT MONSANTO'S OPPOSITION
3:20-cv-05536 and 3:16-md-02741-VC

render the Innocent Seller Statute a nullity because a seller could always be sued if it sold a product alleged to be defective." *Id.* The court rejected this argument as inapposite to the plaintiff's case and held that the removing defendants failed to establish fraudulent joinder because the plaintiff's claims were ***not*** simply that the dealerships ***unknowingly sold a car that later proved to be defective***. *Id.* Rather, the plaintiff alleged the dealerships sold a car they knew to be dangerous—without airbags—and failed to warn the decedent of those dangers, rendering Alabama's innocent seller statute inapplicable.[7]

Presently, Mowry alleges Harwell was aware or should have been aware of Roundup®'s danger to humans. Harwell had superior access to the product's safety studies and information, providing Harwell with, at minimum, constructive knowledge of Roundup®'s dangerous properties. Just as the Northern District of Alabama held in *Barnes*, in regard to dealerships allegedly having knowledge of the car's defect, Harwell was not an innocent, mere conduit seller for which Alabama's innocent seller statute provides a defense, and Monsanto's argument to the contrary must fail.

Needless to say, Harwell's knowledge that Roundup® causes certain cancer diagnoses is an issue in dispute and a question of fact. Yet, Plaintiff Mowry has not been afforded an opportunity to conduct sufficient discovery in regard to Harwell and its knowledge of Roundup®'s dangerous properties. Resolving disputed questions of fact in the Plaintiff's favor, this Court should dismiss as premature Monsanto's contention that Harwell was a mere "unknowing seller" of Roundup® products.

## **CONCLUSION**

For the foregoing reasons, in addition to those included in Plaintiff's Motion to Remand Brief, Plaintiff respectfully requests this Court to remand this matter to the Circuit Court of Montgomery County, Alabama.

---

[7] An additional example showing Monsanto's reasoning is flawed presents in *Waits v. Kubota Tractor Corp.*, when the District Court granted a plaintiff's motion to remand, consistent with the previous ruling in *Barnes*. 2019 WL 4917903, at *4 (citing *Barnes*, 2014 WL 2999188) ("Like the plaintiff in *Barnes*, Waits does not merely claim that Martin Tractor and Sanders unknowingly sold a product that later proved to be defective. Rather, Waits alleges that Martin Tractor and Sanders knew or should have known that the tractor was dangerous, and that they sold the tractor without warning of those dangers or negligently misrepresented the tractor as safe. . . . Alabama courts have not spoken to the meaning of 'independent acts' within the innocent seller statute, and this Court must resolve this ambiguity in the state substantive law in Waits' favor.").

Dated: November 19, 2020

Respectfully submitted,

*/s/ John E. Tomlinson*
John E. Tomlinson (TOM014)
Jere L. Beasley (BEA020)
Rhon E. Jones (JON093)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.**
Post Office Box 4160 218 Commerce Street
Montgomery, Alabama 36103
Phone: (334) 269-2343
Fax:    (334) 954-7555
john.tomlinson@beasleyallen.com
jere.beasley@beasleyallen.com
rhon.jones@beasleyallen.com

OF COUNSEL:

Jamie A. Johnston (JOH164)
Jamie A. Johnston, P.C.
509 Cloverdale Road
Suite 101
Montgomery, Alabama 36106
Telephone: 334.202.9228
Facsimile: 334.265.8789
jamie@jjohnstonpc.com

*Attorneys for Plaintiff Phillip Mowry*

# CERTIFICATE OF SERVICE

I, John E. Tomlinson, hereby certify that, on November 19, 2020, I electronically filed the foregoing with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ John E. Tomlinson
JOHN E. TOMLINSON
