Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

| | |
|---|---|
| IN RE:  ROUNDUP PRODUCTS<br>LIABILITY LITIGATION<br><br>_____ | )  No. 16-MD-2741 VC<br>)<br>)  San Francisco, California<br>)  Monday<br>)  November 9, 2020<br>)  12:30 p.m. |

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

| | |
|---|---|
| **For Plaintiffs:** | THE MILLER FIRM LLC<br>108 Railroad Avenue<br>Orange, Virginia 22960<br>**BY:  JOSEPH MICHAEL MILLER, ESQ.**<br><br><br>WEITZ & LUXENBERG P.C.<br>700 Broadway<br>New York, New York 10003<br>**BY:  ROBIN L. GREENWALD, ESQ.**<br><br><br>BAUM HEDLUND ARISTEI AND GOLDMAN P.C.<br>10940 Wilshire Boulevard.<br>17th Floor<br>Los Angeles, California 90024<br>**BY:  MICHAEL L. BAUM, ESQ.**<br>**ROBERT BRENT WISNER, ESQ.** |

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

_Reported By:_   **Debra L. Pas, CSR 11916, CRR, RMR, RPR**
                _Official Reporter - US District Court_
                _Computerized Transcription By Eclipse_

**APPEARANCES:   (CONTINUED)**

For Plaintiffs:                ANDRUS ANDERSON LLP
                              155 Montgomery Street
                              Suite 900
                              San Francisco, California 94104
                       BY:  **LORI E. ANDRUS, ESQ.**


                              LAW OFFICES OF TESFAYE TSADIK
                              528 Grand Avenue
                              Oakland, California 94610.
                       BY:  **TESFAYE WOLDE TSADIK, ESQ.**



For Defendants:               ARNOLD PORTER KAYE SCHOLER LLP
                              601 Massachusetts Avenue NW
                              Washington, DC 20001
                       BY:  **WILLIAM HOFFMAN, ESQ.**


                              Wilkinson Walsh
                              2001 M. Street NW.
                              10th Floor
                              Washington, DC 20036
                       BY:  **BRIAN L. STEKLOFF, ESQ.**



Also Present:                 **KENNETH FEINBERG, SPECIAL MASTER**

                                    - - -

### P R O C E E D I N G S

**Monday November 9, 2020**                                   **12:33 p.m.**

---oOo---

        **THE CLERK:**  Calling Case No. 160-MD-2741, In Re
Roundup Products Liability Litigation.

    Counsel for the plaintiffs, please state your appearances
for the record.  And if one person would like to take the reins
on that, go for it.

        **MS. GREENWALD:**  Robin Greenwald for the plaintiffs.

        **MS. WAGSTAFF:**  This is Amy Wagstaff for the
plaintiffs, and I will introduce the rest of the team.

    Michael Baum, Lori Andrus, Mike Miller, Tesfaye Tsadik and
Brent Wisner.

        **THE COURT:**  Hello.

    Mr. Tsadik, your video is blocked and your audio is muted
as well.  Are you able to get on video and audio?

    It's okay to keep yourself muted unless you have something
that you want to say, but I'm just wondering if you have a
video connection.

        **MS. GREENWALD:**  Your Honor, I'm going to give him a
call and tell him.

        **THE COURT:**  Great.  Meanwhile, counsel for the
defendants can make their appearance.

    Oh, there he is.  Hello, Mr. Tsadik.

        **MR. HOFFMAN:**  Good afternoon, Your Honor.  William

1    Hoffman for Monsanto.

2          **MR. STEKLOFF:**  Good afternoon, Your Honor.  Brian

3    Stekloff.

4          **THE COURT:**  Hello.

5      Okay.  And the most important participant we saved for

6    last.

7          **SPECIAL MASTER FEINBERG:**  Your Honor, Kenneth

8    Feinberg, Settlement Master, ready to report.

9          **THE COURT:**  All right.  Thank you all for coming.

10     Mr. Feinberg, did you want to kick things off?

11         **SPECIAL MASTER FEINBERG:**  Yes, very briefly.

12     Your Honor, there are various MDL settlement negotiations

13   that have been successful, or that are now in play with

14   success, and some that are about to be implemented.

15     But I can report -- prior to hearing from Mr. Hoffman, I

16   can report that the effort to resolve the Wave cases currently

17   in the MDL, as well as inventories and individual claims both

18   in the MDL and in state courts throughout the nation, are being

19   successfully implemented.  And we're not there yet, but we are

20   certainly making substantial progress.

21     And Mr. Hoffman and perhaps Ms. Greenwald or Mr. Miller or

22   Ms. Wagstaff, all PSC representatives, can certainly report on

23   further details, starting with Mr. Hoffman.

24         **THE COURT:**  Okay.  Very good.  Thank you.

25         **MR. HOFFMAN:**  Your Honor, let me start with the

```
 1   Wave I cases which are, in terms of scheduling, the most

 2   pressing.

 3        I would say that -- and, of course, my friends on the

 4   other side can add to whatever I lay out here, but I think most

 5   of what I'm going to say is well understood by all sides.

 6        The cases fall into, at this point, three categories.

 7   Some have been resolved with paperwork just being finalized and

 8   would be able to be taken off the calendar shortly.

 9        The vast majority are subject to inventory agreements,

10   which are in the process of being worked through, in particular

11   as noted in our pre-conference statement, with the opportunity

12   for individual plaintiffs to opt out of the agreement if they

13   want.  So there is no change in the status of those cases.

14   They don't, I think, at this point need to be activated, but

15   for some of the agreements we're getting to the point where

16   there would be decisions made, and I think we can report back

17   to the Court on those at the next status conference.

18        And then finally, there are four cases that are in a

19   mediation process; two involving Ms. Wagstaff's firm, where

20   we've scheduled mediations or attempt to schedule mediations in

21   the next 30 days, and then two involving the Goldberg and

22   Osborne firm, which Mr. Feinberg is working on.  I am

23   cautiously optimistic that we will be able to get something

24   done on those cases within the next 30 days, but they are not

25   at this point subject to an agreement.
```

1      I would propose with respect to those cases -- but, of

2  course, it's up to Your Honor -- that we defer restarting them

3  for a short period of time, maybe 30 days, to allow for the

4  mediations to either come to resolution or not.  And I propose

5  that because in the first instance, Your Honor, the work on

6  those cases would fall on you; and if there is any way that we

7  could avoid that -- and I do think we're close enough that I'm

8  optimistic -- I would like to do that.

9          **THE COURT:**  So these -- just to be clear, these

10 are -- you're only now talking about the Wave I cases.  That's

11 the group of cases from California and Nebraska.

12         **MR. HOFFMAN:**  Yes.

13         **THE COURT:**  The only thing left to happen, as I

14 recall, was for me to issue rulings on summary judgment slash

15 *Daubert*.

16         **MR. HOFFMAN:**  That's exactly right, Your Honor.

17         **THE COURT:**  I hadn't done that yet on those cases;

18 right?

19         **MR. HOFFMAN:**  That's correct, Your Honor.

20         **THE COURT:**  Okay.  And so that's the only thing that

21 needs to happen before those cases get sent back to their,

22 quote/unquote, home courts for trial.

23         **MR. HOFFMAN:**  That's correct, Your Honor.

24         **THE COURT:**  Okay.  I'm not particularly concerned

25 with, you know, avoiding work for myself.  You know, I signed

1    up for the MDL, and my job is to process and adjudicate the

2    cases expeditiously and get them ready for trial.  The stay is

3    over, and I'm ready to begin work again.  So I am not inclined

4    to stay any Wave I cases any further.

5         So the question is:  Which cases, Wave I cases are left

6    for me to rule on at this time?

7              MR. HOFFMAN:  So I would say, Your Honor, that the

8    two cases with Ms. Wagstaff's firm, the Giglio and the

9    Carriere, are in the mediation process -- I'm sorry, do I have

10   wrong, Ms. Wagstaff?

11             MS. WAGSTAFF:  Mr. Russo.

12             MR. HOFFMAN:  I apologize.  I apologize.

13        And then the Goldberg and Osborne cases are the Alvarez

14   and Hernandez cases.

15             THE COURT:  Okay.  So the Wagstaff cases were which?

16             MR. HOFFMAN:  Gil beyond the scope, if I'm

17   pronouncing that correctly.  And, Ms. Wagstaff, what was the

18   other one?

19             MS. WAGSTAFF:  Mr. Russo, R-U-S-S-O.

20             THE COURT:  Okay.  And then -- and then the two other

21   cases?

22             MR. HOFFMAN:  Alvarez and Hernandez, both of which

23   have been brought by the Goldberg and Osborne firm.

24             THE CLERK:  Are those Mr. Diamond's clients?

25             SPECIAL MASTER FEINBERG:  Yes.

 1          **MR. HOFFMAN:**  Yes.  Yes, ma'am.

 2          **SPECIAL MASTER FEINBERG:**  And I am currently

 3   mediating those cases, along with a third case of

 4   Mr. Diamond's, that's correct.

 5          **THE COURT:**  Okay.  You're saying that those are the

 6   only four cases that are not settled from Wave I?

 7          **MR. HOFFMAN:**  That's my understanding.  If anyone has

 8   different information, they should jump in.

 9      But otherwise the Wave I cases are settled or subject to

10   agreements with firms for all of their cases.

11          **THE COURT:**  Okay.  And so those are the only four

12   cases from Wave I that I need to rule on?

13          **MR. HOFFMAN:**  I believe that is correct at this time,

14   Your Honor.

15          **THE COURT:**  Okay.  And my understanding is that

16   Mr. Diamond wanted to participate in this call, and in light of

17   what you've just told me, Kristen, I'm happy to bring him in.

18   I assume he's in the audience.

19          **THE CLERK:**  I'm bringing him in now.

20      (Mr. Diamond promoted to panelist.)

21          **THE COURT:**  Since they involve -- since two of these

22   cases are his clients' cases, I recognize we should bring him

23   in and make sure he's part of the discussion.

24          **MR. DIAMOND:**  I should now be in, Your Honor, if you

25   can hear me.

1      THE COURT:  Yeah, I can hear and see you.

2      I don't know if you've heard what I was saying, but my

3  inclination would just be to resume work on those cases.  It

4  will require me to sort of refresh my recollection as to where

5  I was when I left off, when the case was -- when the settlement

6  was announced.  So that that will take a little bit of time to

7  do, but I'm planning on simply issuing rulings on those four

8  cases.

9      Are they all California cases or are some of them Nebraska

10  cases?

11      MR. DIAMOND:  My two are California cases, Your

12  Honor.

13      MS. WAGSTAFF:  Your Honor, my two are California

14  cases as well.

15      THE COURT:  Okay.  So it sounds like I no longer need

16  to dive into Nebraska law, so that will make it easier.  That

17  will make it quicker for me to get those done.

18      MR. DIAMOND:  Sorry.  I was going to say one of the

19  cases, the Alvarez Calderon, we call it Alvarez, but I think

20  that is a home court case for you, Your Honor.

21      THE COURT:  Oh, okay.  So we could set a -- we could

22  potentially set a trial schedule for that case.

23      MR. DIAMOND:  Yes, Your Honor.  That's what I planned

24  to ask the Court to do.

25      THE COURT:  Okay.  All right.  Any -- I mean, I

1    don't -- the only -- the only question in my mind is whether --

2    so I'll get to work on those cases promptly, those four cases.

3       And the only question in my mind as it relates to those

4    four cases is should I set a trial date now for the Alvarez

5    case or should I wait until I -- after -- shortly after, very

6    shortly after issuing my ruling on summary judgment and

7    *Daubert*?

8       I could issue the ruling.  We could get back together and

9    have a status conference and set a trial date at that time.  I

10   don't have any particularly strong feelings one way or the

11   other.

12       What are your thoughts, Mr. Diamond?

13         **MR. DIAMOND:**  I always think it's useful to have a

14   date on the calendar so I can start working with my experts to

15   make sure people are going to be ready.  However, I'm fine with

16   either way you choose to do it, Your Honor.

17         **MR. HOFFMAN:**  I think it might make sense, Your

18   Honor, to await your ruling and then have parties submit orders

19   for the schedule for the remaining pretrial work.  I don't

20   think it makes much of a difference either way.

21         **THE COURT:**  Well, I think I would like to meet you

22   somewhere in the middle on that.

23       What I would like to do is have you get started on the

24   pretrial work and get us to a pretrial conference, but -- and

25   schedule a pretrial conference where Motions in Limine can be

```
 1   hashed out and all that stuff, but probably wait until after I
 2   rule on summary judgment to set an actual trial date simply
 3   because, you know, perhaps we will have more clarity in, you
 4   know -- you know, after I've issued my summary judgment ruling
 5   as to when we can actually realistically expect to have a
 6   month-long trial.
 7        If we -- if it were -- you know, if we're talking about
 8   right now, you know, there is not really room, ability in our
 9   courthouse to have a trial that's longer than like two weeks,
10   right, but it may not be too long for now.  I mean,
11   particularly given the news that we got today on the pandemic,
12   it may not be that long from now that we can -- we'll have
13   opportunity to have longer jury trials in our courthouse.
14        So I think what I would like to do is go ahead and set a
15   date for the pretrial conference in the Alvarez case.  And by
16   setting a pretrial conference date I think that will
17   automatically by operation of the rule set all your dates for
18   Motions in Limine and proposed Jury Instructions and the like.
19   And you can start working on those filings.
20        Then we'll set a trial date either at the pretrial
21   conference or before then, after I issue my summary judgment
22   ruling in the Alvarez case.
23        So why don't we have pretrial conference in January.  Late
24   January, let's say.  Kristen?
25             THE CLERK:  I'm looking.  We can do Monday,
```

```
 1    January 25th.

 2              THE COURT:  Sounds good to me.

 3              MR. DIAMOND:  That works fine for me, Your Honor.

 4              THE CLERK:  Mr. Diamond, do you have that case number

 5    for Alvarez Calderon by chance?  The member case number?

 6              MR. DIAMOND:  Yes.  I'm going to have to look for it

 7    on my computer for a second though, so bear with me.

 8              THE CLERK:  Thank you.

 9              THE COURT:  Actually, I'm going to step way for 30

10    seconds.  I'll be back in a sec.

11         (Brief pause.)

12              MR. STEKLOFF:  Ms. Melen, I think it's

13    30:19-CV-01630.

14              MR. DIAMOND:  Thank you.

15              THE CLERK:  Judge, do you want that in the morning or

16    afternoon?

17              THE COURT:  What day of the week was it?

18              THE CLERK:  Monday.

19              THE COURT:  Probably the afternoon.  1:00 o'clock or

20    something?

21              THE CLERK:  1:00 o'clock?

22              THE COURT:  Yeah.

23         Okay.  So that's Wave I.  I guess the only other item

24    that's as immediate as Wave I, as the Wave I cases is the

25    Gebeyehou case.  So we can have a chat about that briefly.
```

1          **SPECIAL MASTER FEINBERG:**  Your Honor, this is Ken

2     Feinberg.

3          **THE COURT:**  Yes.

4          **SPECIAL MASTER FEINBERG:**  I conducted a Zoom

5     mediation a week or so ago.  Mr. Gebeyehou and his counsel,

6     along with very able assistance from the PSC in the form of

7     Robin Greenwald representing the plaintiff and William Hoffman

8     representing Monsanto.  It was a couple of hours that we

9     mediated and as yet, we have been unsuccessful.  The effort

10    could continue.

11         I note Your Honor's correspondence to both sides, and I'm

12    hoping that the mediation will yet prove successful.  I don't

13    give up very easily, and we shall see.

14         But right now, at least -- and William and Robin are both

15    on, so they can certainly add.  But right now, at least, the

16    parties have not yet reached a voluntary settlement.

17         **THE COURT:**  Okay.  And let's see.  There is somebody

18    raising their hand.  I don't know who that is.  It's ZIED.  We

19    can't let anybody in if we don't know who they are.  So whoever

20    that is, who is raising their hand, I'm sorry we're not in a

21    position to let you in.

22         Mr. Tsadik, do you know who that is?  That's not your

23    client by any chance, is it?

24         Mr. Tsadik, you're on mute, so you need to unmute

25    yourself.

```
 1          (Brief pause.)

 2              MS. GREENWALD:  Your Honor, I did write to Mr. Tsadik

 3     and asked him to unmute, but I'm not --

 4              MR. TSADIK:  Can you hear me now?

 5              THE COURT:  Yes.

 6              MR. TSADIK:  Yes, Your Honor.  ZIED is not my client,

 7     Your Honor.  I don't think he's associated with this case.

 8              THE COURT:  Okay.  And then, Mr. Tsadik, I'll just

 9     ask you:  Did you show that order that I issued last week to

10     your client?

11              MR. TSADIK:  Yes, I did, and we had a discussion,

12     Your Honor.  I think, you know, hopefully another mediation may

13     help, you know, in this case.

14              THE COURT:  Okay.  I wanted to ask you one other

15     question.  When did you begin representing Mr. Gebeyehou?

16              MR. TSADIK:  I believe 2016, sometime January or

17     February 2016, Your Honor.

18              THE COURT:  So well before the two-year deadline.

19              MR. TSADIK:  Yes.

20              THE COURT:  Okay.

21              MR. TSADIK:  2016.  I mean, just about the time I

22     filed the Complaint, Your Honor.

23              THE COURT:  Well, the Complaint -- if I recall

24     correctly, the Complaint wasn't filed until like October or

25     November.
```

1           **MR. TSADIK:**  October 7, 2016.

2           **THE COURT:**  Uh-huh.

3           **MR. TSADIK:**  So I represented him sometime -- start

4    representing him sometime maybe three months or four months

5    before that.

6           **THE COURT:**  I see.  So well before the two-year clock

7    potentially expired.

8           **MR. TSADIK:**  Yes.

9           **THE COURT:**  Okay.  Just wanted to confirm that.

10          **SPECIAL MASTER FEINBERG:**  That is good news, Your

11   Honor.  I just heard from Mr. Tsadik that he believes ongoing

12   mediation may yet prove successful.  I love that optimism, and

13   the mediator will shortly reach out to both sides to see if

14   another mediation session might be more fruitful.

15          **THE COURT:**  Okay.  And what I'm going to do in that

16   case is I'm going to -- in light of everything that I've just

17   heard, I think it may not be worth setting a trial date for

18   that case at this point.

19          You know, I would -- from my standpoint, I mean, I would

20   want to see what else, if anything, Mr. Tsadik can come up

21   with.  I've asked for, you know, case law.

22          **MR. TSADIK:**  Yeah.

23          **THE COURT:**  And you know what their concerns are and

24   you know what the problems are with your situation, and I think

25   it's probably better to wait and see what you can come up with

1   before setting a trial date.

2       So I will -- I will hold off on that, but I will -- you

3   know, I guess in terms of my order of workload, I will first

4   turn to the Wave I, you know, those four Wave I cases.  Then

5   after that, I will turn to the Gebeyehou summary judgment

6   motion.

7       Okay.  So that's Wave I.  Now, was there anything else,

8   Mr. Hoffman, you wanted to say about Wave I?

9           **MR. HOFFMAN:**  No, Your Honor.  I'm happy to move on

10  to Wave II if you would like.

11          **THE COURT:**  Great.  Thank you.

12          **MR. HOFFMAN:**  Okay.  So with respect to Wave II,

13  approximately two-thirds of the cases are subject to agreements

14  with firms relating to the plaintiffs that they represent, and

15  like the similar cases in Wave I they are working their way

16  through the process spelled out in the Settlement Agreements.

17      At this point there is, I think, no reason to reactivate

18  them, but as we get closer to the deadlines within the

19  agreement, there may be some individuals who choose not to

20  participate and then their cases would be reactivated and going

21  to discovery.

22      The remaining cases, 13 by my count, fall into two

23  categories.  Two are being mediated by Mr. Feinberg --

24          **THE COURT:**  Sorry to interrupt.  Could I --

25          **MR. HOFFMAN:**  No problem.

 1          THE COURT:  -- just ask a follow-up question on what

 2     you just said.

 3        Is it -- is another way to say that that the cases that

 4     you just described that are subject to settlements should sort

 5     of be taken out of Wave II?

 6          MR. HOFFMAN:  Well, I -- I think temporarily they

 7     could be, but there is the possibility that an individual will

 8     choose not to participate.  And I'm sure my friends on the

 9     other side would not want those cases to fall behind because

10     they need to zealously represent those individuals.

11          THE COURT:  Well, and that would be up to them;

12     right?  We'll have a schedule for Wave II, and if they want

13     their clients' cases to remain in Wave II, then they have to

14     had stick to the schedule that's established by Wave II; right?

15          MR. HOFFMAN:  Maybe it would make sense for us to

16     have a discussion, the company and the lawyers, with those

17     cases, because I certainly don't want to make work for them or

18     for us when most of the cases, I think they believe, will end

19     up going into the settlement.  If that's okay with Your Honor.

20        I don't want to slow things down, but I also don't want to

21     impose an unnecessary burden.

22          THE COURT:  Okay.  That's fine.  But in the meantime

23     you said -- were your starting to say that there are 13 cases

24     in Wave II that are not --

25          MR. HOFFMAN:  Yes, yes, Your Honor.

1          THE COURT:  -- subject to agreements?

2          MR. HOFFMAN:  Yes.  Two of them are in a mediation

3    process with Mr. Feinberg, and then 11 of them are in what I

4    would describe as party-to-party discussions, though the --

5    Mr. Feinberg is part of that and a couple of firms in the

6    Plaintiffs' Steering Committee are trying to assist in that

7    process as well.

8         Again, I'm cautiously optimistic about what we'll be able

9    to do with those cases, but given that the parties have agreed

10   to a schedule to restart the litigation and that they are not

11   at this point subject to agreements, I think it makes sense for

12   those to reactivate and for work to begin anew.

13         THE COURT:  Okay.  Now, those -- I don't remember

14   what the states, the chosen states were for Wave II.  I vaguely

15   recall maybe South Carolina was one of the states; is that

16   right?

17          MS. WAGSTAFF:  No, Your Honor.

18          MR. STEKLOFF:  Your Honor, I think it was Illinois

19   and North Carolina.

20          THE COURT:  Illinois and North Carolina, okay.  These

21   13 cases, are they from the -- are both states represented in

22   that group of 13?

23          MR. HOFFMAN:  Yes.  Yes, Your Honor.

24          THE COURT:  Okay.  And so that is -- all of that

25   sounds fine, with the exception of the schedule that you

1   proposed.  I don't think that, you know -- I don't think that

2   it should need to take so long to get those causes ready to

3   send -- to be sent back to their home, to Illinois and North

4   Carolina for trial.

5        So what I'm going to instruct you to do is go back and

6   agree on an accelerated schedule for Wave II that results in a

7   hearing date on summary judgment and *Daubert* for some time in

8   the first couple weeks of June.

9        And let me just make sure that date actually...  I'm just

10  checking one thing about the Law Clerk transition.  Hold on a

11  second.

12       (Brief pause.)

13           **THE COURT:**  Oh you know what?  Make it, like -- let's

14  make the hearing date May 28th; Friday, May 28th.  That will be

15  the hearing date.  And, you know, will we end up needing a

16  hearing?  I don't know.  It depends how different or similar

17  some of these issues are, you know, I guess in Illinois and

18  North Carolina and, I guess, what -- what the developments have

19  been, factual developments have been, developments in the

20  science, if any have been.

21       But that should be the hearing date.  And you should

22  create a schedule to lead us up to that hearing date, so that I

23  can issue a ruling in the month of June on the Wave II cases.

24  And any cases that survive summary judgment will be sent back

25  to Illinois and North Carolina in June.

```
 1              THE CLERK:  Judge, I want to note one thing, that we
 2   have Emma C. proceedings the following week.
 3              THE COURT:  I saw that, yeah.
 4              THE CLERK:  Okay.
 5              THE COURT:  I was going to schedule it for that week,
 6   but I realized that we should do the week before.
 7              MS. WAGSTAFF:  Your Honor, would you prefer that we
 8   email a proposed order with new dates to your Chambers or file
 9   it on the record or both?
10              THE COURT:  Kristen?
11         (Inaudible due to audio interference.)
12              THE COURT:  I knew you were going to say that.
13              MS. WAGSTAFF:  So did I.
14              THE COURT:  So that's what we will do with Wave II.
15   And, obviously, there's -- I probably don't need a list of the
16   cases now.  It's probably sufficient to just wait until I get
17   your summary judgment motions to know what those are.
18              MR. HOFFMAN:  That's fine, Your Honor.
19              THE COURT:  Although that reminds me of something
20   else that I wanted to say, and I'll just say it now while it's
21   on my mind.
22         I want to get two lists from you all.  The first list is a
23   list of the cases that are subject to Settlement Agreements.
24   And I understand the caveats you've given about the possibility
25   that some individual plaintiff may want to opt out of that.
```

1   And so I gather as a result of that, we can't actually dismiss

2   the cases yet, but I nonetheless want a list.  I just want to

3   have sort of a running -- you know, have a list handy in

4   Chambers of which cases have -- are subject to Settlement

5   Agreements and which are not.

6        And then the second list is I want you to give me a list

7   of all pending motions in the MDL.  I saw Mr. Stekloff's eyes

8   get a little wide when I said that.

9        All pending motions in the MDL and which ones need to be

10  decided and which ones don't.

11       I mean, I assume that any pending motion in a case that's

12  subject to the Settlement Agreement -- to a Settlement

13  Agreement doesn't need to be decided and probably can be

14  terminated; right?  Those motions can probably be terminated

15  and resurrected, if need be, if those cases ultimately don't

16  get dismissed; right?

17       And then -- so I want a list of all pending motions and

18  which -- maybe it's just one list combined.  I'm not sure.  You

19  all can figure out what's the best way to do it, but I -- what

20  I want to know is which cases are subject to Settlement

21  Agreements and which cases are not and which -- all pending

22  motions, and which ones I have to decide and which ones I don't

23  and which ones I can terminate.

24       And I think those two things correlate.  I think I can

25  terminate -- you'll correct me if I'm wrong, but I think I can

```
 1   terminate any pending motion, any motion that is pending in a
 2   case that is subject to a Settlement Agreement.
 3        MR. HOFFMAN:  That certainly makes sense us to, Your
 4   Honor, and we'll work with the PSC on formatting of these lists
 5   so that it's most useful to you.
 6        THE COURT:  Okay.  Would it be unreasonable for me to
 7   ask for that in seven days?
 8        MS. GREENWALD:  I don't think so.
 9     William, we put something together like that about three
10   months ago, so I think we could do it that quickly.  But if you
11   don't think so, I'm not going to --
12        MR. HOFFMAN:  What I'll do is I'll say, Your Honor,
13   we should be able to do it; but if it looks like we're both
14   mistaken, we may need to reach out for a few more days to
15   accomplish that.
16        THE COURT:  Okay.  Well, I'll require that list or
17   those lists, whatever you decide it should be, seven days from
18   today on the docket.
19        MR. HOFFMAN:  Of course.
20        THE COURT:  Okay.  Now, Wave III.
21        MR. HOFFMAN:  Mr. Stekloff, maybe you should jump in
22   on Wave III because I -- there hasn't really been any
23   particular focus on that for settlement purposes.
24        MR. STEKLOFF:  Your Honor, in the case management
25   statement each respective side disclosed their state of choice.
```

```
 1    The plaintiffs selected Pennsylvania.

 2         We listed all of the cases that we're aware of that have

 3    been removed to your court from their home court in

 4    Pennsylvania and listed the case number and court.  Monsanto

 5    stuck with its selection of Texas.  So we similarly listed

 6    those cases, and we also proposed a joint schedule that we

 7    agreed upon.

 8         So I think, you know, subject to you approving those

 9    dates, we will begin the workup of those cases pursuant to the

10    schedule.

11              THE COURT:  Okay.  And this list in the case

12    management statement, is this all cases on the MDL docket from

13    Pennsylvania and Texas, or all cases from Pennsylvania and

14    Texas that are not subject to a Settlement Agreement?

15              MR. STEKLOFF:  It is all cases not subject to a

16    Settlement Agreement.  So it is cases that require workup.

17         There may be cases from Pennsylvania or Texas that are

18    subject to a Settlement Agreement that are not included in that

19    case management statement.

20              THE COURT:  I see.  Okay.  So, all right.  So

21    that's -- so that's a larger list, of course.  It's a pretty --

22    I haven't counted them, but it looks like a pretty good chunk

23    of cases.  Maybe close to 100 between the two states.

24         And you all are contemplating these cases will be in a

25    position to be sent back to those states for trial, assuming
```

1   they get past summary judgment, in, like, a year and a half

2   from now.

3         And the question is:  Why does it need to be a year and a

4   half from now?  Why can't we set a schedule for the next three

5   cases which gets us to the point where we can send them back

6   for trial, say, in the fall of 2021.

7               MR. STEKLOFF:  Your Honor, we were -- in that

8   proposal we were, obviously, working in part off of the Wave II

9   schedule, which now has been expedited a few months.

10        I think the challenge for the parties is in each case

11  there are a number of plaintiff deposition -- you know, you

12  have to take a plaintiff deposition in each case, treater

13  depositions, then have your experts disclosed and reports and

14  depositions there.

15        So we were following the similar timeline that we used

16  before the pandemic with Wave I and Wave II to try to address

17  the workflow, but I think that it would be reasonable to

18  expedite the Wave III cases approximately three months -- I

19  mean, we'll do whatever you say obviously -- to accommodate

20  that we've now moved up Wave II.  But it -- you know, 100 cases

21  and workup is a substantial amount of work that we are aiming

22  to get done, we thought, in a reasonable amount of time.

23              THE COURT:  Yeah.  And I'll just repeat, you know,

24  something that I've said in prior status conferences, which is

25  that the -- you know, the announcement from Bayer was that the

```
 1   vast majority of these cases had been settled.  And now, you
 2   know, that -- you know, now we're seeing that even as we sit
 3   here today, only about half of the MDL cases are subject to a
 4   Settlement Agreement.
 5        And so I'm not interested in having such an elongated
 6   schedule for the adjudication of these cases.  So what I'm
 7   going to ask you to do is for the Wave III cases, the Texas and
 8   the -- what was it, Pennsylvania?
 9             MR. STEKLOFF:  That's right, Your Honor.
10             THE COURT:  For Texas and Pennsylvania cases I'm
11   going to ask you to come up with a schedule that leads to a
12   hearing on summary judgment and Daubert in those cases in
13   November of '21.  Or if it needs to be December of '21, that's
14   fine, too.  Early December of '21, that's fine.
15             MR. STEKLOFF:  Your Honor, we may -- the one thing
16   I'll flag is we may come to you on behalf of Monsanto if we're
17   not -- this is not an issue of cooperation.  I think all the
18   plaintiffs' lawyers are cooperating.
19        But a huge effort that happens in these cases is the
20   collection of medical records, which, as Your Honor can
21   imagine, is essential before any of the discovery can start.
22   You know, not every medical record, but you need a substantial
23   collection in each case before plaintiff and treater
24   depositions can start and then before experts can opine.
25        So I think we'll work closely with the plaintiffs' lawyers
```

1    in those cases to make that happen as quickly as possible and

2    to get plaintiff fact sheets for example, but I think we're

3    going to have to put a focus on those things being achieved

4    quickly so that both sides then are able to work with doctors

5    and other fact witnesses to schedule depositions.

6        So I'm just sort of flagging that as, you know, something

7    that we're going to work closely together on, but that we may

8    have to come back to you to expedite some of that process if

9    it's not moving quickly enough.

10        THE COURT:  Okay.  So that's Wave III.

11        Is there anything else that we should discuss right now?

12        MR. HOFFMAN:  Not from --

13        SPECIAL MASTER FEINBERG:  Your Honor, this is Ken

14   Feinberg.

15        I have been listening to this discussion about scheduling

16   and a few Wave Is, and some Wave IIs, and a group of Wave IIIs.

17   I mean, of course, Your Honor, you're going forward with your

18   schedule as you've just articulated it.

19        I continue to believe, based on what's transpired since

20   the last status conference, that these cases will get resolved.

21   They will be settled, and they will be removed from the docket.

22   And I understand Your Honor's comment about, well, when that's

23   done it's done.  But I do believe it will happen, and it's just

24   a question of when and how quickly we can get them resolved.

25        So on a parallel track, I renew my efforts to try and get

```
 1   these cases resolved, and I believe we'll be successful.

 2          THE COURT:  Terrific.  I just had one other question

 3   for Mister -- I think this is probably for you, Mr. Stekloff.

 4       Do you recall for the Wave I cases, these four Wave I

 5   cases that we have left, California cases, if I recall

 6   correctly, we agreed on sort of a procedure whereby you would

 7   preserve your objections to my rulings in the bellwethers,

 8   right, your objections to my rulings on general causation and

 9   specific causation for the bellwethers and preemption and all

10   of that business, and identify for me whether there was

11   anything different about a particular Wave I case that would

12   nonetheless need to be adjudicated beyond, you know, what had

13   already been adjudicated for the other California cases.

14       These four Wave I cases, are they -- are they cases where

15   there is anything new to be adjudicated?

16          MR. STEKLOFF:  Your Honor, we did -- we followed your

17   instructions in that regard, and we -- you know, for example,

18   for Drs. Weisenburger and Shustov in Gebeyehou and some of the

19   cases, just preserved our earlier motions.  I think the same is

20   true for some of our summary judgment arguments.

21       There are just, like, I think two pending motions and I'm

22   just trying to check the exact motions, where we in these -- in

23   those cases we moved maybe specific to a case potentially on

24   non-causation summary judgment grounds, and there was a *Daubert*

25   challenge to some of the new experts, but it was done sort of
```

 1   holistically with a number of experts briefed in one *Daubert*

 2   motion.

 3        I mean, I'm happy after the hearing to provide the docket

 4   entries for those motions to Ms. Melen.  There are --

 5             THE COURT:  Please do that.  That would be very

 6   helpful.  Yeah.

 7             MR. STEKLOFF:  The motions that are not on your

 8   plate, I think, are the Nebraska motion, as you mentioned

 9   before, and there was one motion specific to an expert who

10   appeared in the four Nebraska cases, which is a *Daubert*

11   motion -- and Ms. Greenwald is shaking head -- Dr. Palka.  That

12   for now does not need to be ruled on.  We would need to, I

13   think, refile that motion, if, for example, one of those

14   plaintiffs were to opt out and resume litigation.  But those

15   are two motions that you do not need to rule on.

16        So I think it's really just one summary judgment motion

17   that may address a few of the cases on non-causation grounds

18   and one sort of macro *Daubert* motion that addresses some of the

19   specific causation experts.

20             THE COURT:  Okay.  I wonder if it would be helpful

21   for you to -- in addition to pointing us to the docket numbers,

22   if you could just send us a letter, maybe put it on the docket,

23   sort of explaining, as best you can, what you just said to me.

24        In other words, as it relates to these four remaining

25   Wave I cases from California, what are the things that I need

```
1   to rule on that are additional to what I have already ruled on
2   in the bellwether cases or in the general causation phase.
3   Does that make -- does that question make sense?
4              MR. STEKLOFF:  Yes, it does.
5       I mean, you'll recall there were some experts, like, for
6   example, Dr. Benbrook, who was -- I'll call him sort of the
7   regulatory expert.  And there was an expert Dr. Sawyer.  And my
8   recollection is that you said you were going to not rule on
9   those prior to remand, but you were focused on summary judgment
10  and causation, Daubert.
11      So we will flag the causation, the Daubert experts and the
12  summary judgment issues that are pending before you in the four
13  cases.
14      And then I think the other motions will then be subsumed
15  by that separate list you've requested of pending motions that
16  are -- that can be sort of withdrawn or moot or however you
17  decide to not -- you know, where you don't have to address
18  them.
19             THE COURT:  Okay.  Yeah.  That makes sense.  And when
20  did I say that about Benbrook?  I remember that about Benbrook
21  and Sawyer and stuff.
22      Did I issue a ruling on that, or did I say that to you in
23  a hearing or in a pre-hearing order?  Do you remember when that
24  was?
25             MR. STEKLOFF:  It was -- it would have been after
```

1   Hardeman, I believe, and as we were working up -- you know, as

2   we were in case management conferences in court discussing the

3   issue of the Waves and how to proceed with future litigation

4   and the remand process, to the best of my recollection.

5       And it may have been in an order as well, but to the best

6   of my recollection, it would have been in some of the case

7   management conferences that came after Hardeman.

8           THE COURT:  I think it was in -- I can't remember

9   if -- I know that I drafted something on this as we were sort

10  of getting ready for -- you know, to adjudicate the Wave I

11  summary judgment motions.  I just can't remember if I filed it,

12  or if I just drafted it and then held off on filing it.

13          MS. GREENWALD:  I recall it being in a PTO.  I'll

14  take a look when this conference is over, and if I find it,

15  I'll send to it Ms. Melen.

16          THE COURT:  What I would like is one letter, maybe

17  from Mr. Stekloff, and maybe you can assist him in that.

18          MS. GREENWALD:  Sure.

19          THE COURT:  Just a letter sort of explaining where we

20  are on all that stuff.  That would be very helpful.

21          MS. GREENWALD:  Brian, I will look for it and I will

22  send it to you if I find it.

23          MR. STEKLOFF:  That does jog my memory, Your Honor,

24  that you did -- when we filed the motions, which we filed --

25  which did involve Dr. Benbrook and Sawyer and maybe others, I

```
 1   do believe, as Mr. Greenwald just said, that you filed -- that
 2   you issued a PTO explaining that you were -- that those motions
 3   would remain pending and that you were focused on the
 4   causation.
 5          THE COURT:  Right.  That there is -- those are for
 6   the trial judge to decide, in other words.
 7          MR. STEKLOFF:  Correct.
 8          THE COURT:  Okay.  And, of course, I'm the trial
 9   judge in the Alvarez case, it sounds like.
10      So I'll need to deal with those at the -- to the extent
11   that Benbrook and all those folks are relevant at the -- to
12   Alvarez, I'll need to deal with that at the pretrial
13   conference.
14          MR. STEKLOFF:  Yes, Your Honor.
15          THE COURT:  Okay.  Got it.
16      All right.  Anything else for us to discuss right now?
17      (No response.)
18          THE COURT:  Okay.  Thank you very much everyone.
19      Should we set another case management -- should we set
20   another status conference?
21          MS. WAGSTAFF:  Your Honor, I think we should in 30
22   days, if Monsanto is okay with that.
23          MR. HOFFMAN:  We're fine with it, but we will also
24   update you with any developments that may have an impact on the
25   pending motions sooner than that, Your Honor.
```

1              **THE COURT:**  Please do that.  Because I -- and just to

2    be very clear, I plan to get to work on those four California

3    cases right away.  And then when I'm done with those, I will

4    turn to the Gebeyehou summary judgment motion.

5              **MR. HOFFMAN:**  Understood, Your Honor.

6              **THE COURT:**  So, yes, please keep us posted.  I would

7    greatly appreciate that.

8         And we will -- why don't we get back together sometime

9    around, I don't know, like, December 9th or something like

10   that?  How does that sound?

11             **THE CLERK:**  Can we do a Monday?

12             **THE COURT:**  Sure.

13             **THE CLERK:**  Would you like the 7th or 14th?

14             **THE COURT:**  The 7th, same time.  At least as of now,

15   that's probably the best time.

16             **SPECIAL MASTER FEINBERG:**  You mean, the 12:30 PST?

17             **THE COURT:**  Yes.  Is that okay with you,

18   Mr. Feinberg?

19             **SPECIAL MASTER FEINBERG:**  Yes.

20             **THE COURT:**  Okay.  I don't really care about the rest

21   of you.  You'll make it work.

22        Okay.  Great.  Thank you very much.

23        (Proceedings adjourned.)

24

25

## **CERTIFICATE OF OFFICIAL REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, November 17, 2020