1  TESFAYE W. TSADIK (Cal. State Bar # 108103)
   LAW OFFICES OF TESFAYE TSADIK
2  528 Grand Avenue
   Oakland, CA 94610
3  Tel:  (510) 839-3922
   email: ttsadik@pacbell.net
4

5

   Attorneys for Plaintiff
6  SIOUM GEBEYEHOU

7

8

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 | SIOUM GEBEYEHOU,                    | Master Case No. 3:16-md-02741-VC
   |                                     | Individual Case No. 3:16-cv-05813-VC
13 |            Plaintiff,               |
   |                                     | **PLAINTIFF GEBEYEHOU'S**
14 |         v.                          | **SUPPLEMENTAL BRIEF IN RESPONSE**
   |                                     | **TO PRETRIAL ORDER NO. 220**
15 | MONSANTO COMPANY, et al.,           |

16 |            Defendants.              |

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Sioum Gebeyehou, through his undersigned counsel, hereby responds to the Court's 11/3/20 Pretrial Order No. 220 directing the parties to answer three questions posed by the Court regarding the statute of limitations question.

## I.   INTRODUCTION

The central issue framed by the Court's three questions is whether plaintiff's email to his oncologist in September 2014 stating that he believed with 95 percent certainty that Roundup caused his Non-Hodgkins lymphoma ("NHL") was sufficient to impute actual or constructive knowledge of causation to him, starting the statute of limitations.  As plaintiff has argued, and argues further below, the law is overwhelmingly clear and settled that such a subjective belief by plaintiff, a layman, is *insufficient* to impute such knowledge to him—in  circumstances where the scientific community had not yet made this connection, Monsanto was vehemently (and fraudulently) denying it, including in other cases,[1] plaintiff's own doctor gave the theory no credence, and plaintiff, as result, continued to use Roundup.

## II.   ARGUMENT

### A.   Question 1:  Have any cases been decided under California law since the summary judgment hearing on February 13, 2019, that support a conclusion that the clock did not begin running on Gebeyehou's claim more than two years before he filed suit?

According to Monsanto, the SOL began to run on September 24, 2014, when plaintiff emailed his oncologist, Dr. Pai, stating that he suspected Roundup caused his cancer.  (Defs' MSJ, Dkt. #2419 at 31.)  As plaintiff has argued in prior briefing, his subjective belief about the cause of his cancer is insufficient, as a matter of well-established law, to constitute actual or constructive knowledge of causation.  (See Pltff's Opp. to Defs' MSJ, Dkt. # 2559 at 51; and see further discussion below.)

Plaintiff is unaware of any new published California case on the subject since February 13, 2019.  However, plaintiff has since learned that in other filings in other cases, Monsanto has

---

[1] Plaintiff is filing in conjunction herewith a Request for Judicial Notice ("RJN"), asking the Court to take judicial notice of the contradictory position Monsanto has taken in other, contemporaneous cases.  Exhibit letters herein refer to such other case documents, as attached to plaintiff's RJN.

1

1    contradicted its position in this case that plaintiff should have, *or even could have*, known that

2    Roundup caused his cancer as of September 2014, triggering judicial estoppel principles.  In

3    addition, widespread case law firmly contradicts Monsanto's position in this case, i.e. that

4    plaintiff's mere subjective belief in 2014 that Roundup caused his NHL was sufficient to impute

5    knowledge or constructive knowledge of causation to him at that time—especially in light of the

6    contradictory position Monsanto has asserted in other courts.

7            **1.      Defendant Monsanto's recent contradictory factual and legal
                       positions bar it from obtaining summary judgment under the
8                      doctrine of judicial estoppel**

9            On December 13, 2019, in *Hardeman v. Monsanto Company*, another Roundup personal

10   injury case (now pending in the Ninth Circuit), Monsanto took the position that in and prior to

11   2015, the "carcinogenic risk of glyphosate was not known or knowable under the generally

12   recognized and prevailing best scientific and medical knowledge at the time of Hardeman's

13   exposure."  (Exhibit A, 12/13/19 First Step Brief by Monsanto in *Hardeman v. Monsanto*

14   *Company*, 9th Cir. Appeal No. 19-16636, *p. 4, Issue Presented #5; argued at p. 22 (item III);

15   and pp. 74-76.)

16           And on September 25, 2019, Monsanto asserted the same position in litigation with the

17   State of California over product labeling/warning in the Eastern District of California, writing:

18   "The International Scientific Consensus [is] That Glyphosate [i.e. Roundup] Does Not Cause

19   Cancer [;]" and: "The overwhelming scientific consensus is that glyphosate does not cause

20   cancer."  (Exhibit C, Monsanto's MSJ in *National Association of Wheat Growers*, *et al. v.*

21   *Becerra*, No. 2:17-cv-02401(U.S.D.C. E.D.C.A.), Dkt. #117-1, at 7-16, *7:22-23 and *8:3-4.)

22   Monsanto' made this assertion encompassing the time period at issue here, arguing that "[i]n

23   2014, [the] EPA reviewed more than 55 epidemiological studies conducted on the possible

24   cancer and non-cancer effects of glyphosate [and] concluded that this body of research does not

25   provide evidence to show that glyphosate causes cancer."  (Id. at 8:15-19 (internal quotes and

26   citations omitted).)  As a result of taking this legal and factual position, Monsanto persuaded the

27   Court to adopt its position and grant summary judgment.  (Exhibit B, 6/22/20 Order Granting

28   Summary Judgment in *Nat'l Assoc. of Wheat Growers*.)

1    "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent

2    positions, precludes a party from gaining an advantage by taking one position, and then seeking a

3    second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters*

4    *Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (citations omitted).  "Judicial estoppel is an

5    equitable doctrine that is intended to protect the integrity of the judicial process by preventing a

6    litigant from playing fast and loose with the courts. *Wagner v. Prof'l Eng'rs in Cal. Govt*, 354

7    F.3d 1036, 1044 (9th Cir. 2004) (internal quotes and citation omitted).  "[T]he doctrine applies to

8    a party's legal as well as factual assertions." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir.

9    2008).

10    In derogation of this principle, Monsanto seeks an advantage in this case—namely,

11    complete dismissal on summary judgment—based on flatly contradictory legal positions across

12    cases.  Not only has Monsanto argued in *Hardeman* and in *Nat'l Assoc. of Wheat Growers* that

13    Roundup does not cause NHL, it argued in *Hardeman* that the "carcinogenic risk of glyphosate

14    *was not known or knowable*" in 2015.  (Exhibit A at 4:4 – emphasis added.)  Now, Monsanto

15    turns around and argues that despite this, plaintiff, who is a lay victim not an expert, knew or

16    should have known as of September 24, 2014 that Roundup caused his cancer.  It is

17    fundamentally illogical, inconsistent, and contradictory for Monsanto to argue on the one hand

18    that there was still insufficient scientific evidence in 2015 to support a jury's verdict that

19    Roundup causes NHL, and on the other hand, that plaintiff, a layperson, knew or should have

20    discovered this link in 2014.

21    This is the classic posture in which courts invoke judicial estoppel, namely where

22    granting the relief sought by the party adopting contradictory positions would "create [] the

23    appearance that either the first court has been misled or the second court will be misled, thus

24    raising the specter of inconsistent determinations and endangering the integrity of the judicial

25    process." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004).

26    Having benefited from the position it took in *National Association of Wheat Growers*—namely,

27    obtaining summary judgment by convincing the court to adopt it factual and legal arguments—

28    Monsanto would gain an unfair advantage if this Court granted summary judgment based on

1    Monsanto's contradictory position, that plaintiff reasonably knew or should have known in 2014

2    what Monsanto has called *unknowable* at that time, i.e. that Roundup caused his cancer.

3          The doctrine of judicial estoppel forbids such self-serving contradictory positions, and the

4    Court therefore should deny Monsanto's motion for summary judgment on this basis.

5                    **2.      Plaintiff's stated subjective belief in September 2014 that
                             Roundup caused his NHL does not impute actual or**

6                    **constructive knowledge of causation to him, as a matter of law**

7          The case law firmly contradicts Monsanto's contention that plaintiff's mere subjective

8    belief in 2014 that Roundup caused his NHL was sufficient to impute knowledge or constructive

9    knowledge of causation to him at that time—especially in circumstances where Monsanto was

10   steadfastly denying this, scientists were not drawing this linkage, and plaintiff's own oncologist

11   rejected the theory.

12         A lay victim's mere subjective suspicion, absent expert confirmation, that a particular

13   chemical exposure caused his injury, is insufficient as a matter of law to impute knowledge of

14   causation to him and to start the SOL clock—especially when it is dwarfed by what Monsanto

15   has referred to as the "unanimous" scientific scholarship at the time that Roundup does not cause

16   cancer.

17         In *Stoleson v. United States*, 629 F. 2d 1265 (7th Cir. 1980), a toxic tort case, the plaintiff

18   long suspected that her exposure to nitroglycerin caused her angina.  Her doctor did not diagnose

19   the cause for several years after the onset of her symptoms.  The district court dismissed the

20   action on statute of limitations grounds.  Reversing, the Seventh Circuit held: "A layman's

21   subjective belief, regardless of its sincerity or ultimate vindication, is patently inadequate to go to

22   the trier of fact."  *Stoleson*, 629 F.2d at 1270.  Because the medical scientific community did not,

23   at that time, recognize the causal connection, "[t]o fix the time of accrual at this time would

24   provide [plaintiff] with nothing more than a delusive remedy."  *Id.*

25         Only several years later, after plaintiff's cardiologist documented the causal link between

26   exposure to nitroglycerin and angina, *and informed plaintiff of his findings*, did her suspicion

27   ripen into knowledge sufficient to start the two-year limitations period.  *Id.* at 1270-71; *see also*,

28   *Rosales v. United States*, 824 F.2d 799, 805 (9th Cir. 1987) ("Ordinarily, a plaintiff cannot be

                                                    4

1    expected to discover the general medical cause of his injury even before the doctors themselves

2    are able to do so."); *Tucker v. Baxter Healthcare Corp.,* 158 F.3d 1046, 1050 (9th Cir. 1998)

3    (tolling California's statute of limitations because the causal relationship between silicone

4    implants and autoimmune disease was not well-known in 1986, and the lay plaintiff could not

5    have been expected to ferret out the solitary medical journal article making this linkage).

6           **3.      Even if the Court were to impute knowledge of causation to
                       plaintiff as of September 24, 2014 as a matter of law, it was at
7                      most inquiry knowledge, the object of which was not satisfied
                       until plaintiff's next appointment with his oncologist on
8                      October 21, 2014, less than two years before he filed this action**

9           Dr. Pai, plaintiff's oncologist, did not respond substantively in writing to plaintiff's

10   September 24, 2014 email, or ever validate plaintiff's suspicion that Roundup caused his cancer.

11   Rather, Dr. Pai responded to plaintiff's email by scheduling an appointment for late October,

12   2014, resulting in a next appointment on October 21, 2014. (Exhibit D, Excerpts from Kaiser

13   Medical Record, pp. 1-2.)  Dr. Pai testified:  "Typically, my common response to most of my

14   patients usually is that there's a difference a lot of times between association and causation, at

15   this point, just from our scientific journals where I get most of my information from, there isn't

16   any—there wasn't any obvious link [between Roundup and NHL] that I was aware at the time."

17   (Exhibit E, 11/19/2018 Depo. of Ashok Pai, M.D., at 50:8-13.)  Thus, opposite of confirming

18   plaintiff's suspicion that Roundup had caused his NHL, Dr. Pai refuted the idea.  But even if

19   Dr. Pai had fostered plaintiff's theory during their October 21, 2014 appointment, *this was less*

20   *than two years before plaintiff filed his complaint on October 7, 2016*, i.e. within the discovery

21   rule SOL.  (Exhibit D, excerpts of plaintiff's Kaiser Medical Records, at pp. 1 and 3.)

22          **B.      Question 2:  Assuming the clock began running more than two years
                      before the lawsuit was filed, have any cases been decided under
23                    California law since the summary judgment hearing that support a
                      conclusion that the clock stopped running at any point?**
24

25          Preliminarily, plaintiff contends that the clock did *not* begin running more than two years

26   prior to filing his lawsuit, as argued in his prior briefing on this subject, and discussed in Part A,

27   above.  Plaintiff is not aware of any California cases decided since February 13, 2019, which

28   bear further on this issue.

                                                5

1
2

     **C.**       **<u>Question 3</u>:  Assuming that Gebeyehou or his lawyer were in fact negligent in failing to file the lawsuit within two years, does California law permit the Court to excuse that negligence?**

3

     Plaintiff's undersigned counsel was first retained in July 2016.  Plaintiff's undersigned

4

counsel first became aware of the September 24 2014 email upon obtaining plaintiff's full

5

medical records in discovery, after the complaint was filed in this case on October 7, 2016.

6

Based on this chronology, and application of the California discovery rule, counsel contends that

7

plaintiff's complaint was timely filed, and that there are no issues of negligence or excusable

8

neglect.

9

**III.**    **CONCLUSION**

     For the foregoing reasons, and those argued in plaintiff's opposition to defendants'

10

motion for summary judgment, and in other supplemental briefing, the Court should deny

11

defendants' motion and set this case for trial.

12

13

                                     Respectfully Submitted,

14

                                     LAW OFFICES OF TESFAYE TSADIK

15

Dated: November 24, 2019         By:   /s/ - *Tesfaye Tsadik*

16

                                   Attorneys for Plaintiff
                                   SIOUM GEBEYEHOU

17

18

19

20

21

22

23

24

25

26

27

28

6