# EXHIBIT B

*Order Granting Summary Judgment, U.S. District Court, Eastern District, 06/22/2020*



**User Name:** TESFAYE TSADIK
**Date and Time:** Thursday, November 12, 2020 4:45:00 PM EST
**Job Number:** 129924391

## Document (1)

1. *Nat'l Ass'n of Wheat Growers v. Becerra, 2020 U.S. Dist. LEXIS 108926*
   **Client/Matter:** -None-
   **Search Terms:** 2020 US Dist. Lexis 108926
   **Search Type:** Natural Language

LexisNexis | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2020 LexisNexis
TESFAYE TSADIK



Neutral
As of: November 12, 2020 9:45 PM Z

# Nat'l Ass'n of Wheat Growers v. Becerra

United States District Court for the Eastern District of California

June 22, 2020, Decided; June 22, 2020, Filed

No. 2:17-cv-2401 WBS EFB

**Reporter**
2020 U.S. Dist. LEXIS 108926 *; 50 ELR 20154; 2020 WL 3412732

NATIONAL ASSOCIATION OF WHEAT GROWERS; NATIONAL CORN GROWERS ASSOCIATION; UNITED STATES DURUM GROWERS ASSOCIATION; WESTERN PLANT HEALTH ASSOCIATION; IOWA SOYBEAN ASSOCIATION; SOUTH DAKOTA AGRI-BUSINESS ASSOCIATION; NORTH DAKOTA GRAIN GROWERS ASSOCIATION; MISSOURI CHAMBER OF COMMERCE AND INDUSTRY; MONSANTO COMPANY; ASSOCIATED INDUSTRIES OF MISSOURI; AGRIBUSINESS ASSOCIATION OF IOWA; CROPLIFE AMERICA; and AGRICULTURAL RETAILERS ASSOCIATION, Plaintiffs, v. XAVIER BECERRA, in his official capacity as Attorney General of the State of California, Defendant.

**Prior History:** Nat'l Ass'n of Wheat Growers v. Zeise, 309 F. Supp. 3d 842, 2018 U.S. Dist. LEXIS 30736 (E.D. Cal., Feb. 26, 2018)

## Core Terms

glyphosate, warning, cancer, carcinogen, cause cancer, chemical, warning requirement, uncontroversial, safe harbor, misleading, exposure, enforcement action, disclosure, causes, preliminary injunction, plaintiffs', products, intermediate scrutiny, consumer, message, regulations, guidelines, permanent injunction, ripe, commercial speech, summary judgment, cell phone, enjoined, conveys, expose

## Case Summary

**Overview**

HOLDINGS: [1]-In a case concerning the Safe Drinking Water and Toxic Enforcement Act of 1986 or Proposition 65, where the plaintiffs claimed that the warning requirement, as applied to the chemical glyphosate, violated the First Amendment, the plaintiffs' motion for summary judgment was allowed because misleading statements about glyphosate's carcinogenicity, and the State's knowledge of that purported carcinogenicity, did not directly advance government interest. Also, California had options available to inform consumers of its determination that glyphosate was a carcinogen, without burdening the free speech of businesses, including advertising campaigns or posting information on the Internet.

**Outcome**
Motions for summary judgment granted in part and denied in part. Request for permanent injunction granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Justiciability > Case & Controversy Requirements > Actual Controversy

Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions

TESFAYE TSADIK

Governments > Courts > Authority to Adjudicate

Constitutional Law > The Judiciary > Case or Controversy > Ripeness

*HN1*[ ]  **Case & Controversy Requirements, Actual Controversy**

Courts must examine whether a case is ripe because their role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in U.S. Const. art. III.

Civil Procedure > ... > Justiciability > Ripeness > Imminence

Constitutional Law > The Judiciary > Case or Controversy > Ripeness

Civil Procedure > ... > Justiciability > Ripeness > Tests for Ripeness

*HN2*[ ]  **Ripeness, Imminence**

The ripeness inquiry includes both constitutional and prudential components. Under the constitutional component of standing, courts consider whether the plaintiffs face a realistic danger of sustaining direct injury as a result of a statute's operation or enforcement, or whether an alleged injury is too imaginary or speculative to support jurisdiction. Under the prudential component, courts consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.

Business & Corporate Compliance > ... > Governments > Agriculture & Food > Product Quality

*HN3*[ ]  **Agriculture & Food, Food Product Quality**

To bring suit and avoid sanctions under *Cal. Health & Safety Code § 25249.7(h)(2)*, a private plaintiff need only credibly allege that a product has some amount of the chemical at issue, not that the amount of the chemical is harmful or that it exceeds the safe harbor level.

Business & Corporate Compliance > ... > Governments > Agriculture & Food > Product Quality

*HN4*[ ]  **Agriculture & Food, Food Product Quality**

Facing enforcement actions, or even the possible risk of enforcement actions under *Cal. Health & Safety Code § 25249.7*, are cognizable injuries, even if a business can ultimately prove that its product is not a cancer risk.

Constitutional Law > ... > Freedom of Speech > Commercial Speech > Advertising

Constitutional Law > ... > Freedom of Speech > Commercial Speech > Misleading Speech

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN5*[ ]  **Commercial Speech, Advertising**

The government may restrict commercial speech that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial. Under this intermediate level of scrutiny, the law at issue must directly advance the governmental interest asserted and must not be more extensive than is necessary to serve that interest.

Constitutional Law > ... > Freedom of Speech > Commercial Speech > Advertising

Constitutional Law > ... > Freedom of Speech > Commercial Speech > Misleading Speech

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN6*[ ]  **Commercial Speech, Advertising**

A lower standard applies to certain compelled commercial speech. The government may require commercial speakers to disclose purely factual and uncontroversial information about commercial products or services, as long as the disclosure requirements are reasonably related to a substantial government interest and are neither unjustified nor unduly burdensome.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Commercial Speech

[HN7](#) [⬇] **Freedom of Speech, Commercial Speech**

If a disclosure requirement is unjustified or unduly burdensome, a court may assume that the Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio standard applies and need not examine the disclosure requirement under intermediate scrutiny.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Commercial Speech

Evidence > Burdens of Proof > Allocation

[HN8](#) [⬇] **Freedom of Speech, Commercial Speech**

In applying the Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio standard, the State has the burden of demonstrating that a disclosure requirement is purely factual and uncontroversial, not unduly burdensome, and reasonably related to a substantial government interest.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Commercial Speech

[HN9](#) [⬇] **Freedom of Speech, Commercial Speech**

In applying the Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio standard, uncontroversial refers to the factual accuracy of the compelled disclosure, not to its subjective impact on the audience.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

Evidence > Burdens of Proof > Allocation

[HN10](#) [⬇] **Fundamental Freedoms, Freedom of Speech**

To avoid chilling protected speech, the government must bear the burden of proving that the speech it seeks to prohibit is unprotected.

Business & Corporate Compliance > ... > Governments > Agriculture & Food > Product Quality

[HN11](#) [⬇] **Agriculture & Food, Food Product Quality**

The safe harbor regulations prohibit providing any additional information in the warning other than the source of the exposure or information on how to avoid or reduce exposure to the identified chemical. *Cal. Code Regs. tit. 27, § 25601*.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Commercial Speech

Evidence > Burdens of Proof > Allocation

[HN12](#) [⬇] **Freedom of Speech, Commercial Speech**

Under intermediate scrutiny, the law must directly advance the governmental interested asserted and must not be more extensive than is necessary to serve that interest. The government has the burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.

Civil Procedure > ... > Injunctions > Grounds for Injunctions > Balance of Hardships

Civil Procedure > Remedies > Injunctions > Permanent Injunctions

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions

Civil Procedure > ... > Injunctions > Grounds for Injunctions > Likelihood of Success

[HN13](#) [⬇] **Grounds for Injunctions, Balance of Hardships**

To obtain a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The standard for a permanent injunction is essentially the same as for a preliminary injunction, with the exception that the plaintiff must show actual success, rather than a likelihood of success.

   Civil Procedure > ... > Injunctions > Grounds for Injunctions > Irreparable Harm

   Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Prior Restraint

   Civil Procedure > Remedies > Injunctions > Permanent Injunctions

   Constitutional Law > ... > Fundamental Freedoms > Judicial & Legislative Restraints > Standing

   Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN14*[ ] Grounds for Injunctions, Irreparable Harm

To obtain a permanent injunction, the loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.

   Civil Procedure > ... > Injunctions > Grounds for Injunctions > Public Interest

*HN15*[ ] Grounds for Injunctions, Public Interest

When the government is a party, the balance of equities and public interest factors merge. To determine the balance of equities, a court must balance the interests of all parties and weigh the damage to each.

   Civil Procedure > ... > Injunctions > Grounds for Injunctions > Public Interest

   Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

*HN16*[ ] Grounds for Injunctions, Public Interest

The state has a significant interest in protecting its citizens and informing them of possible health risks, but the United States Court of Appeals for the Ninth Circuit has consistently recognized the significant public interest in upholding *First Amendment* principles.

**Counsel:** **[*1]** For National Association of Wheat Growers, National Corn Growers Association, United States Durum Growers Association, Missouri Farm Bureau, Iowa Soybean Association, South Dakota Agri-Business Association, Missouri Chamber of Commerce and Industry, Associated Industries of Missouri, Agribusiness Association of Iowa, Plaintiffs: Catherine L. Hanaway, PHV, Matthew P. Diehr, PHV, Matthew T. Schelp, PHV, Natalie R. Holden, PHV, LEAD ATTORNEYS, PRO HAC VICE, Husch Blackwell LLP, St. Louis, MO; Christopher Claiborne Miles, LEAD ATTORNEY, Husch Blackwell LLP, Kansas City, MO; Travis Lillie, Missouri Attorney General, Springfield, MO.

For Western Plant Health Association, Plaintiff: Ann Marguerite Grottveit, LEAD ATTORNEY, Kahn, Soares & Conway, Llp, Sacramento, CA; Travis Lillie, Missouri Attorney General, Springfield, MO.

For North Dakota Grain Growers Association, Plaintiff: Catherine L. Hanaway, Matthew P. Diehr, Matthew T. Schelp, Natalie R. Holden, PHV, LEAD ATTORNEYS, PRO HAC VICE, Husch Blackwell LLP, St. Louis, MO; Christopher Claiborne Miles, LEAD ATTORNEY, Husch Blackwell LLP, Kansas City, MO; Joshua M. Divine, PHV, LEAD ATTORNEY, PRO HAC VICE, Missouri Attorney Generals Office, Jefferson **[*2]** City, MO; Travis Lillie, Missouri Attorney General, Springfield, MO.

For Monsanto Company, Plaintiff: Andrew Prins, PHV, Richard P. Bress, PHV, LEAD ATTORNEYS, PRO HAC VICE, Latham & Watkins LLP, Washington, DC; Catherine L. Hanaway, PHV, Matthew P. Diehr, PHV, Matthew T. Schelp, PHV, Natalie R. Holden, PHV, LEAD ATTORNEYS, PRO HAC VICE, Husch Blackwell LLP, St. Louis, MO; Christopher Claiborne Miles, LEAD ATTORNEY, Husch Blackwell LLP, Kansas City, MO;

Ryan S. Baasch, PHV, LEAD ATTORNEY, PRO HAC VICE, Latham & Watkins LLP, New York, NY; Travis Lillie, Missouri Attorney General, Springfield, MO; Trenton H. Norris, Arnold & Porter Kaye Scholer LLP, Three Embarcadero Center, San Francisco, CA; Philip J. Perry, Latham and Watkins LLP, Washington, DC.

For CropLife America, Plaintiff: Christopher Claiborne Miles, LEAD ATTORNEY, Husch Blackwell LLP, Kansas City, MO; Matthew P. Diehr, PHV, LEAD ATTORNEY, PRO HAC VICE, Husch Blackwell LLP, St. Louis, MO; Philip J. Perry, LEAD ATTORNEY, Latham and Watkins LLP, Washington, DC; Travis Lillie, Missouri Attorney General, Springfield, MO.

For Agricultural Retailers Association, Plaintiff: Catherine L. Hanaway, PHV, Matthew P. Diehr, PHV, Matthew T. [*3] Schelp, PHV, Natalie R. Holden, PHV, LEAD ATTORNEYS, PRO HAC VICE, Husch Blackwell LLP, St. Louis, MO; Christopher Claiborne Miles, LEAD ATTORNEY, Husch Blackwell LLP, Kansas City, MO; Elliot Belilos, PHV, LEAD ATTORNEY, PRO HAC VICE, Gary H. Baise, PHV, LEAD ATTORNEY, PRO HAC VICE, OFW Law, Washington, DC; Travis Lillie, Missouri Attorney General, Springfield, MO.

For Xavier Becerra, In His Official Capacity as Attorney General of the State of California, Defendant: Laura Zuckerman, LEAD ATTORNEY, State Of California Department Of Justice, Attorney General's Office, Oakland, CA; Susan Sabina Fiering, LEAD ATTORNEY, California Attorney General's Office, Oakland, CA; Heather Colleen Leslie, Office of the Attorney General, Sacramento, CA.

For Chamber of Commerce of the United States of America, The California Chamber of Commerce, Amici: Pratik Arvind Shah, LEAD ATTORNEY, Akin gump Strauss Hauer and Feld LLP, Washington, DC.

For State of Missouri, State of Idaho, State of Indiana, State of Iowa, State of Louisiana, State of Kansas, State of Michigan, State of North Dakota, State of Oklahoma, State of South Dakota, State of Wisconsin, Amici: Joshua M. Divine, PHV, LEAD ATTORNEY, PRO HAC VICE, [*4] Missouri Attorney Generals Office, Jefferson City, MO.

For The National Health Federation, Amicus: Scott Cameron Tips, LEAD ATTORNEY, Tips & Associates, Encino, CA.

For Natural Resources Defense Council, Inc., Sierra Club, Center for Environmental Health, Amici: Michael E. Wall, LEAD ATTORNEY, Natural Resources Defense Council, San Francisco, CA.

**Judges:** WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE.

**Opinion by:** WILLIAM B. SHUBB

# Opinion

MEMORANDUM AND ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

This case concerns California's Proposition 65, which, among other things, requires warning labels for products containing chemicals known to the state of California to cause cancer, as determined by certain outside entities. The parties have filed cross motions for summary judgment on plaintiffs' claim that the warning requirement, as applied to the chemical glyphosate,[1] violates the *First Amendment of the United States Constitution*.[2] (Docket Nos. 117, 124.)

I. Background

---

[1] Glyphosate is an herbicide widely used to control weeds in various settings and is an active ingredient in defendant Monsanto Company's ("Monsanto") product Roundup. Plaintiffs or their members sell glyphosate-based herbicides, use glyphosate in their cultivation of crops that are incorporated into food products sold in California, or process such crops into food products sold in California. (Am. Compl. ¶¶ 9-22 (Docket No. 23).)

[2] Lauren Zeise, director of the Office of Environmental Health Hazard Assessment, was initially named in the complaint and included in the court's preliminary injunction, though per the parties' stipulation, she was dismissed from the case and the injunction was amended to refer specifically to the Attorney General. (Docket No. 93.)

Under Proposition 65, the *Safe Drinking Water and Toxic Enforcement Act of 1986*, *Cal. Health & Safety Code §§ 25249.5*-("Proposition 65"), the Governor of California is required to publish a list of chemicals (the "Proposition 65 list") known to the State to cause cancer, as determined by, inter alia, certain outside entities, including the United **[*5]** States Environmental Protection Agency ("EPA"), the United States Food and Drug Administration ("FDA"), and the International Agency for Research on Cancer ("IARC").[3] *AFL-CIO v. Deukmejian, 212 Cal. App. 3d 425, 431-34, 260 Cal. Rptr. 479 (3d Dist. 1989)* (citing, inter alia, *Cal. Labor Code 6382(b)(1)*); see also *Cal. Code Regs. tit. 27 §§ 25306(m), 25904(b)*[4] ("A chemical or substance shall be included on the list [of chemicals known to the state to cause cancer] if it is classified by the International Agency for Research on Cancer" as "carcinogenic to humans" or "[p]robably carcinogenic to humans" and there is "sufficient evidence of carcinogenicity in experimental animals.").[5]

Proposition 65 also prohibits any person in the course of doing business from knowingly and intentionally exposing anyone to the listed chemicals without a prior "clear and reasonable" warning, with this prohibition taking effect 12 months after the chemical has been listed. *Cal. Health & Safety Code §§ 25249.6*, *25249.10(b)*; *Deukmejian, 212 Cal. App. 3d at 431-34*.

While the statute does not explain what constitutes a clear and reasonable warning, OEHHA regulations provide two "safe harbor" warnings which are per se clear and reasonable. The first safe harbor warning contains a black exclamation point in a yellow triangle with the words "WARNING: This product can expose you to chemicals including [name of one or more chemicals], which is [are] known **[*6]** to the State of California to cause cancer. For more information go to www.P65Warnings.ca.gov." *Cal. Code Regs. tit. 27, § 25603(a)*. The second safe harbor warning, the "short form" warning, includes a black exclamation point in a yellow triangle and the words "WARNING: Cancer — www.P65Warnings.ca.gov." *Cal. Code Regs. tit. 27, § 25603(b)*.

Failure to comply with Proposition 65 may result in penalties up to $2,500 per day for each failure to provide an adequate warning, and enforcement actions may be brought by the California Attorney General, district attorneys, certain city attorneys and city prosecutors, or private citizens, who may recover attorney's fees. *Cal. Health & Safety Code § 25249.7*; *Cal. Code Regs. tit. 11 § 3201*.

In 2015, the IARC classified glyphosate as "probably carcinogenic" to humans based on "sufficient evidence" that it caused cancer in experimental animals and "limited evidence" that it could cause cancer in humans. (Zuckerman Decl., Ex. A, at 361-99 (Docket No. 134-4, 134-5).) However, several other organizations, including the EPA, other agencies within the World Health Organization, and government regulators from multiple countries, have concluded that there is insufficient or no evidence that glyphosate causes cancer.[6] (Heering Decl. (Docket No. 117-4), Exs. N, R, S, T, U, Z, AA, MM, NN, OO, **[*7]** PP, QQ, RR, SS, WW, XX, CCC (Docket Nos. 117-18, 117-22 to 117-25, 117-31, 117-32, 117-44 to 117-50, 117-54, 117-55, 117-60) (reports or findings from, inter alia, the EPA, European Commission Health & Consumer Protection Directorate-General, WHO Int'l Programme on Chem. Safety, Germany, U.N. Food & Agric. Org., Canada, European Chems. Agency, Australia, New Zealand, Japan, and South Korea). The EPA reaffirmed its determination in April 2019, and then in August 2019, stated that it would not approve herbicide labels with a Proposition 65 warning, as such labels would be false and misleading and "misbranded"

---

[3] The IARC was founded in 1965 as the cancer research arm of the United Nations' World Health Organization and exists to "promote international collaboration in cancer research." (Zuckerman Decl. (Docket No. 130), Ex. C at 5-6 (Docket No. 133-2).) The United States was a founding member of the IARC and remains a member. (Zuckerman Decl., Ex. C at 27.) The IARC publishes, in the form of "Monographs," "critical reviews and evaluations of evidence on the carcinogenicity of a wide range of human exposures." (Zuckerman Decl., Ex. A at 10 (Docket No. 134-1).)

The other two outside entities named under the Proposition 65 regulations are the National Institute for Occupational Safety and Health, which is part of the Centers for Disease Control, and the National Toxicology Program, which is part of the National Institutes of Health. **Cal. Code Regs. tit. 27 § 25306(m)**.

[4] Several new versions of the Proposition 65 implementing regulations took effect on August 30, 2018, after this case was filed. This opinion refers to the current versions of the regulations unless otherwise noted.

[5] California's Office of Environmental Health Hazard Assessment ("OEHHA") is the agency responsible for implementing Proposition 65. Cal. Code Regs. tit. 27 div. 4 ch. 1 Preamble.

[6] Notably, the OEHHA had previously determined that there was insufficient evidence of glyphosate's carcinogenicity. (See Heering Decl., Exs. P, Q (Docket Nos. 117-20, 117-21).)

under the federal herbicide labeling law, *7 U.S.C. § 136a*. (Heering Decl. Exs. E, WW (Docket Nos. 117-9, 1117-54).)

As a result of the IARC's classification of glyphosate as probably carcinogenic, the OEHHA listed glyphosate as a chemical known to the state of California to cause cancer on July 7, 2017, and thus the attendant warning requirement was to take effect on July 7, 2018. (See Heering Decl., Ex. II (Docket No. 117-40).) This court preliminarily enjoined the warning requirement on February 26, 2018 (Docket No. 75), and thus at no time have plaintiffs been required to post glyphosate **[*8]** Proposition 65 warnings for their products.

II. Procedural History

After a hearing, the court preliminarily enjoined the Attorney General from enforcing *California Health & Safety Code § 25249.6*'s requirement that any person in the course of doing business provide a clear and reasonable warning before exposing any individual to glyphosate as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs. (Docket No. 75.) In doing so, the court first found that plaintiff's *First Amendment* challenge was ripe, because plaintiffs faced a significant risk of injury based on, among other things, the threat of private suits and the costs of testing their products to avoid or defend such suits.

The court then found that a Proposition 65 warning for glyphosate was not purely factual and uncontroversial under the *First Amendment*, as required for compelled commercial speech under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651, 105 S. Ct. 2265, 85 L. Ed. 2d 652, 17 Ohio B. 315 (1985)*, and *CTIA-The Wireless Association v. City of Berkeley, 854 F.3d 1105, 1117-19 (9th Cir. 2017)* ("CTIA I").[7] The court explained, among other things, that Proposition 65 and its regulations required a warning stating that the chemical was known to the State of California to cause cancer, and this warning would be misleading to the ordinary consumer because "[i]t is inherently misleading for a warning to state that a chemical is known to the state of California **[*9]** to cause cancer based on the finding of one organization . . . when apparently all other regulatory and governmental bodies have found the opposite." Id. at 16-17. In doing so, the court did not determine, and was not required to determine, (1) whether glyphosate in fact caused cancer, (2) whether a statement that glyphosate was known to cause cancer would be factual and uncontroversial where there was more evidence in support of the chemical's carcinogenicity, or (3) whether Proposition 65's statutory and regulatory regime was good policy.

The court subsequently denied defendant's motion for reconsideration under *Federal Rule of Civil Procedure 59(e)*. (Docket No. 97.) The court first held that it had not committed clear error in its order granting a preliminary injunction. Second, the court found that the much of the "new evidence" introduced by defendant could have been presented in opposition to the motion for a preliminary injunction, and the evidence defendant relied on did not change the court's conclusion that the Proposition 65 warning as to glyphosate violated the *First Amendment*. In doing so, the court rejected two alternative warnings proposed by defendant because those warnings still conveyed the message **[*10]** that glyphosate was known to cause cancer or suggested that there was equal or more weight for the proposition that glyphosate caused cancer than for the proposition that it did not.

Plaintiffs now seek a permanent injunction barring enforcement of the Proposition 65 warning as to glyphosate. Defendant in response seeks a determination that plaintiffs' *First Amendment* claim fails as a matter of law.[8]

III. Ripeness

Defendant continues to argue that plaintiffs' *First Amendment* challenge is not ripe, despite the court's prior determination of ripeness in granting the preliminary injunction. **HN1**[↑] Courts must examine whether a case is ripe because their role "is neither to issue advisory opinions nor to declare rights in

---

[7] The Ninth Circuit's 2017 decision in CTIA I was vacated by the Supreme Court and remanded for further consideration in light of *National Institute of Family and Life Advocates v. Becerra, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018)* ("NIFLA"). **138 S. Ct. 2708, 201 L. Ed. 2d 1092 (2018)**. However, on remand, the panel issued a new decision that once again explained that "a statement may be literally true but nonetheless misleading and, in that sense, untrue." *CTIA-The Wireless Ass'n v. City of Berkeley, 928 F.3d 832, 847 (9th Cir. 2019)* ("CTIA II"), cert. denied, **140 S. Ct. 658, 205 L. Ed. 2d 387 (2019)**.

[8] Plaintiffs do not address the other causes of action in the First Amended Complaint, specifically its claims under the *Supremacy Clause of the U.S. Constitution* and the *Due Process Clause of the Fourteenth Amendment*. The court expresses no opinion on those claims.

hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000)*.

HN2[] The ripeness inquiry includes both "constitutional" and "prudential" components. Id. Under the constitutional component of standing, courts consider "whether the plaintiffs face a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction." Id. (citations and internal [*11] quotations omitted). Under the prudential component, courts consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id. at 1142*. Here, the court once again finds that plaintiffs' *First Amendment* challenge is ripe under both the constitutional and prudential inquiries.

First, plaintiffs still face a significant risk of injury notwithstanding defendant's claim that no warnings are required for plaintiffs' products because they likely contain glyphosate levels below the "no significant risk level" ("NSRL" or "safe harbor" level) that was adopted after the filing of this case. The court recognizes that (1) Proposition 65 provides that no warning is required for a product where an exposure poses no significant risk assuming lifetime exposure at the level in question, *Cal. Health & Safety Code § 25249.10*; (2) no warnings are required if the daily exposure caused by a product is below the OEHHA's safe harbor level under *Cal. Code Regs. tit. 27 § 25705*; (3) the OEHHA adopted a safe harbor level of 1,100 micrograms per day for glyphosate on July 1, 2018, *Cal. Code Regs. tit. 27, § 25705*; (4) some testing of certain foods has found glyphosate levels that would lead to expected daily exposure levels well below that threshold (Lee Decl. ¶¶ 13-21 [*12] (Docket No. 129)); and (5) some evidence indicates that consumer use of glyphosate from home and garden use of glyphosate would lead to daily exposure levels well below that threshold (Sandy Decl. ¶ 5 (Docket No. 127)).[9]

Nevertheless, assuming plaintiffs' products were tested and found to contain concentrations of glyphosate below the safe harbor level as set by *Cal. Code. Regs. tit. 27 § 25705*, plaintiffs would still have no reasonable assurance that they would not be subject to enforcement actions. Plaintiffs have provided evidence that private plaintiffs have brought enforcement actions for various chemicals notwithstanding a defense of compliance with the safe harbor level for those chemicals, including where the California Attorney General said a proposed enforcement suit had no merit.[10] The fact that the statute allows any person to file an enforcement suit makes the threat of such suits more credible. See, e.g., *Susan B. Anthony List v. Driehaus, 573 U.S. 149, 134 S. Ct. 2334, 2345, 189 L. Ed. 2d 246 (2014)* (plaintiffs showed credible risk of enforcement because, inter alia, the law at issue allowed complaints from private parties who were not "constrained by explicit guidelines or ethical obligations"); *Italian Colors Rest. v. Becerra, 878 F.3d 1165, 1173 (9th Cir. 2018)* (party had standing because "even if the Attorney General would not enforce the law" at issue, private [*13] citizens had a right of action to sue for damages).

Such suits, which can be brought notwithstanding the Attorney General's finding of no merit, are enabled by the statute itself, as defendants in Proposition 65 enforcement actions have the burden of showing that their product's glyphosate exposure falls below the no significant risk level in a Proposition 65 enforcement

---

[9] Plaintiffs dispute the calculations of daily and lifetime exposure levels, as well as the cost and difficulty of testing products, though the court does not reach this issue.

[10] (See, e.g., Norris Decl. ¶¶ 10-12 (Docket No. 117-62) (discussing Physicians Comm. for Responsible Med. v. McDonald's Corp., Los Angeles Superior Court, Case No. BC383722, a lawsuit lasting for 6 years brought against restaurants based on allegations that their cooked chicken exposed Californians to the listed carcinogen "PhIP," despite a California Attorney General determination that the level of PhIP in cooked chicken fell far below the level that would require a warning under Proposition 65); Norris Decl. ¶¶ 30-33 (discussing Proposition 65 actions brought against restaurants and food companies notwithstanding safe harbor level for acrylamide set in 1990).) See also *Sciortino v. PepsiCo, Inc., 108 F. Supp. 3d 780 (N.D. Cal. 2015)* (denying motion to dismiss in Proposition 65 enforcement action where parties disputed whether defendant's products exceeded the safe harbor level); *Envtl. Law Found. v. Beech-Nut Nutrition Corp., 235 Cal. App. 4th 307, 314, 185 Cal. Rptr. 3d 189 (1st Dist. 2015)* (discussing Proposition 65 enforcement action where safe harbor defense was litigated at trial and noting that defendants had the burden of showing that the level of chemicals in their products did not exceed the safe harbor); *CKE Rests., Inc. v. Moore, 159 Cal. App. 4th 262, 70 Cal. Rptr. 3d 921 (2d Dist. 2008)* (affirming dismissal of suit seeking declaration that private party could not initiate Proposition 65 litigation because safe harbor level was not exceeded).

action. *Cal. Health & Safety Code § 25249.10(c)*. Thus, plaintiffs, who have stated they intend to give no warning based on their constitutional right against compelled speech, face a credible threat of enforcement as a result of exercising such right, regardless of the enactment of the safe harbor level for glyphosate.[11] See *Susan B. Anthony List, 134 S. Ct. at 2342-46* (plaintiff may bring pre-enforcement suit where he has an intention to engage in a course of conduct with an arguable constitutional interest but proscribed by law, "and there exists a credible threat of prosecution").

Defendant claims that enforcement actions would be unlikely in the event that a product did not exceed the safe harbor level for glyphosate, citing both the steps required to file suit (which require 60 days' notice and the filing of a certificate [*14] of merit) and the fact that the Attorney General will likely inform the private enforcer that (1) there was no violation, (2) an action was not in the public interest, and (3) the action would not warrant civil penalties and fees. Defendant also notes that if the private enforcer refused to withdraw its notice of violation, the Attorney General would then post a letter on the Attorney General website stating that there was no merit to the proposed enforcement action, and that plaintiffs may be ordered to pay attorney's fees and costs for frivolous enforcement actions under *Cal. Health & Safety Code § 25249.7(h)(2)* and *Cal. Code Civ. Proc. § 128.5*.

Notwithstanding these purported barriers, one California Court of Appeal has explained that the instigation of Proposition 65 enforcement actions is "easy -- and almost absurdly easy at the pleading stage and pretrial stages." See *Consumer Def. Grp. v. Rental Hous. Indus. Members, 137 Cal. App. 4th 1185, 1215, 40 Cal. Rptr. 3d 832 (4th Dist. 2006)*. At best, the possible sanction of attorney's fees appears to be a modest deterrence to suits, if any, given that this sanction is only available if the trial court "determines that there was no actual or threatened exposure to a listed chemical" at any level and also finds that "there was no credible factual basis for the certifier's belief that an exposure to a listed chemical [*15] had occurred or was threated." See *Cal. Health & Safety Code § 25249.7(h)(2)*. In other words, **HN3**[↑] to bring suit and avoid sanctions, a private plaintiff need only credibly allege that that a product has some amount of the chemical at issue, not that the amount of the chemical is harmful or that it exceeds the safe harbor level.

Further, in order to take advantage of the safe harbor, plaintiffs would be required to test their products to determine whether their products exceeded the safe harbor level, incurring the attendant costs, which is in itself is a cognizable injury. See, e.g., *Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 154-55, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010)* (farmers seeking injunctive relief had standing based on, inter alia, the cost of testing crops that would be required if an injunction was not granted).

The court also rejects defendant's contention that the *First Amendment* challenge is unripe because defendants may defend any enforcement action by showing their products do not pose a significant cancer risk, even if their products exceed the safe harbor level. **HN4**[↑] Facing enforcement actions, or even the possible risk of enforcement actions, are cognizable injuries, even if a business can ultimately prove that its product is not a cancer risk. See, e.g., *Susan B. Anthony List, 573 U.S. 149, 134 S. Ct. 2334 at 2342-46, 189 L. Ed. 2d 246*.[12]

Based on the foregoing, the court will deny defendant's motion [*16] for summary judgment to the extent it seeks dismissal based on ripeness.

IV. Merits

To determine whether the Proposition 65 requirement for glyphosate violates the *First Amendment*, the court

---

[11] The court also rejects the Attorney General's contentions, raised for the first time in his reply in support of his cross motion, that plaintiffs have provided no evidence of any concrete plans to violate the law and that the *First Amendment* dispute is more appropriate for a state court enforcement action. (See Docket No. 150 at 4-7.) Even assuming these arguments were properly raised, (1) plaintiffs have already shown and continue to credibly claim that they have no intention of providing Proposition 65 warnings for glyphosate, and (2) plaintiffs need not wait for an enforcement action to challenge a state law on *First Amendment* grounds, notwithstanding the ability to raise the challenge as a defense to the enforcement action. Given the credible threat of enforcement, it is not necessary that plaintiffs first expose themselves to liability before challenging Proposition 65 on constitutional grounds. See *Susan B. Anthony List, 134 S. Ct. at 2342-46*.

[12] As they did in their motion for a preliminary injunction, plaintiffs claim that they will lose sales if they decline to provide warnings for their products. The court expresses no opinion as to this claim in determining that plaintiffs' *First Amendment* claim is ripe.

must first determine the level of scrutiny to apply -- intermediate scrutiny under Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980), or a lower level of scrutiny under Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 2d 652, 17 Ohio B. 315 (1985).

Under Central Hudson, HN5[↑] the government may restrict commercial speech "that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial." Am. Beverage Ass'n v. City & Cty. of San Francisco, 916 F.3d 749, 755 (9th Cir. 2019) (quoting Central Hudson, 447 U.S. at 564). Under this intermediate level of scrutiny, the law at issue "must 'directly advance the governmental interest asserted' and must not be 'more extensive than is necessary to serve that interest.'" Id. (quoting Central Hudson, 447 U.S. at 566).

However, HN6[↑] a lower standard applies to certain compelled commercial speech. In Zauderer, 471 U.S. at 651, the Supreme Court held that the government may require commercial speakers to disclose "purely factual and uncontroversial information" about commercial products or services, as long as the disclosure requirements are "reasonably related" to a substantial government interest and are neither "unjustified [n]or unduly burdensome." See also CTIA II, 928 F.3d at 842-43 (quoting Zauderer); Am. Beverage Ass'n, 916 F.3d at 755 (same).

The case law on the level [*17] of scrutiny for compelled commercial speech is somewhat unsettled. Plaintiffs argue that compelled commercial speech is subject to Central Hudson's intermediate scrutiny if it cannot meet all the requirements of Zauderer. In other words, according to plaintiffs, a court should first examine whether the compelled commercial speech meets Zauderer's lower standard, and if not, the court should then proceed to examine whether it meets Central Hudson's requirements.

However, neither the Supreme Court nor the Ninth Circuit have elaborated such a rule, though they have hinted at one. In NIFLA, the Supreme Court reviewed certain disclosure requirements that applied to pro-choice pregnancy centers. The court applied Zauderer's lower scrutiny to one required disclosure and found that the state had not shown that the disclosure was not unjustified or unduly burdensome. Having made that determination, the court held that the disclosure violated the First Amendment, without proceeding to examine whether the provision also failed intermediate scrutiny. 138 S. Ct. at 2377-78. At the same time, the NIFLA court examined a separate but related disclosure rule under intermediate scrutiny, holding that the Zauderer standard did not apply [*18] because "[t]he notice in no way relates to the services that licensed clinics provide. Instead, it requires these clinics to disclose information about state-sponsored services -- including abortion, anything but an 'uncontroversial' topic." 138 S. Ct. at 2372.[13]

After NIFLA was issued, the Ninth Circuit in American Beverage explained that "Zauderer provides the appropriate framework to analyze a First Amendment claim involving compelled commercial speech." 916 F.3d at 756. The en banc panel in American Beverage reviewed the denial of a preliminary injunction of an ordinance requiring warnings on advertisements for certain sugar-sweetened beverages. The court held that the requirement that the warning cover 20% of the advertisement imposed an undue burden and thus failed Zauderer.[14] Having made this determination, the court reversed the denial of a preliminary injunction, without proceeding to determine whether the ordinance withstood intermediate scrutiny under Central Hudson. Id. at 756-58.

In light of these cases, it appears that the court should proceed to examine the warning requirement for glyphosate under Zauderer's lower standard only if the requirement is purely factual and uncontroversial. If

---

[13] In NIFLA, the court applied the Zauderer standard to a provision that required unlicensed pregnancy centers to disclose on-site and in all advertising that they were not licensed medical providers. The court applied intermediate scrutiny to a provision that required licensed pregnancy centers to disclose on-site and to all clients that the State of California provided free or low-cost family planning services, including abortion, as well as a telephone number to obtain information about such services. 138 S. Ct. at 2368-78.

[14] Finding that the warning requirement was unduly burdensome, the American Beverage en banc panel declined to examine whether the warning was factual and uncontroversial. 916 F.3d at 757. This determination follows NIFLA's implied holding that HN7[↑] if a disclosure requirement is unjustified or unduly burdensome, a court may assume that the Zauderer standard applies and need not examine the disclosure requirement under intermediate scrutiny. See NIFLA, 138 S. Ct. at 2376-77.

"[t]he *Zauderer* [*19] standard does not apply here" because the warning requirement is not purely factual and uncontroversial, see *NIFLA, 138 S. Ct. at 2372*, the court should then proceed to examine the warning requirement under *Central Hudson*'s intermediate scrutiny.

A. Does *Zauderer* apply?

Before determining whether the Proposition 65 warning requirement survives under *Zauderer*'s lower scrutiny, the court must determine whether *Zauderer* even applies. As discussed above, *Zauderer* applies where the government requires speakers to disclose "purely factual and uncontroversial information" about commercial products or services. *Zauderer, 471 U.S. at 651*; *NIFLA, 138 S. Ct. at 2372*. The primary dispute in the present case is whether the compelled disclosure is of purely factual and uncontroversial information. **HN8**[↑] The State has the burden of demonstrating that a disclosure requirement is purely factual and uncontroversial, not unduly burdensome, and reasonably related to a substantial government interest. See *Zauderer, 471 U.S. at 641*; *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 146, 114 S. Ct. 2084, 129 L. Ed. 2d 118 (1994)*; *Am. Beverage, 916 F.3d at 756*

What "purely factual and uncontroversial" means has not been completely explained by the Supreme Court or the Ninth Circuit. The Ninth Circuit previously stated in this context that **HN9**[↑] "uncontroversial" "refers to the factual accuracy of the compelled disclosure, not to its subjective [*20] impact on the audience." *CTIA I, 854 F.3d at 1117-18*; see also *Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 732 (9th Cir. 2017)* (quoting CTIA I). But see *Nat'l Ass'n of Mfrs. v. S.E.C., 800 F.3d 518, 527-530, 419 U.S. App. D.C. 158 & n.28 (D.C. Cir. 2015)* (stating a "purely factual" proposition must also be accurate, and thus controversial must mean "communicating a message that is controversial for some reason other than [a] dispute about simple factual accuracy") (quoting *Am. Meat Inst. v. U.S. Dep't of Agric., 760 F.3d 18, 27, 411 U.S. App. D.C. 318 (D.C. Cir. 2014)* (internal punctuation omitted)). However, that decision was reversed and remanded by the Supreme Court for further consideration in light of NIFLA, and the panel's opinion on remand did not repeat its prior rule that "controversial" under *Zauderer* means factually accurate. See *CTIA II, 928 F.3d at 846-48*.

In NIFLA, the Supreme Court held that a state law requiring pro-life pregnancy centers to post information about state-provided pregnancy services, including abortion, was controversial. *138 S. Ct. at 2372*. However, the Ninth Circuit explained in CTIA II that NIFLA did not state "broadly that any purely factual statement that can be tied in some way to a controversial issue is, for that reason alone, controversial." *CTIA II, 928 F.3d at 845*. Rather, the compelled notice was controversial under *Zauderer* because the disclosure, while factual, "took sides in a heated political controversy, forcing the clinic to convey a message fundamentally at odds with its mission." [*21] Id. The CTIA II court also explained, once again, that "a statement may be literally true but nonetheless misleading and, in that sense, untrue" and therefore not meet *Zauderer*'s requirements. *CTIA II, 928 F.3d at 847*; *CTIA I, 854 F. 3d at 1119*; see also *Am. Meat Inst., 760 F.3d at 27* (recognizing the possibility that "some required factual disclosures could be so one-sided or incomplete that they would not qualify as 'factual and uncontroversial'") (citation omitted).

This court has previously found that the Proposition 65 warning requirement for glyphosate was false and misleading given the weight of authority showing that glyphosate was not known to cause cancer and did not cause cancer. (Docket No. 75 at 13-17 (and citations therein); Docket No. 97 at 4-9.) While there have been some new developments since the court granted the preliminary injunction, these developments do not change the court's conclusion that the Proposition 65 warning requirement for glyphosate is misleading and therefore not purely factual and uncontroversial.

First, the court continues to find that the current language of the full "safe harbor" warning is false and misleading when used for glyphosate. That warning would require a business to state that glyphosate "is known to the state [*22] of California to cause cancer." *Cal. Code Regs. tit. 27, § 25603(a)*. The "short form" safe harbor warning, which requires language stating "WARNING: Cancer - www.P65Warnings.ca.gov.", *Cal. Code Regs. tit. 27, § 25603(b)*, similarly conveys the message glyphosate is known to cause and actually causes cancer.

The court's initial conclusion remains the same. Notwithstanding the IARC's determination that glyphosate is a "probable carcinogen," the statement that glyphosate is "known to the state of California to cause cancer" is misleading. Every regulator of which the court is aware, with the sole exception of the IARC, has found that glyphosate does not cause cancer or that there is insufficient evidence to show that it does. (See

Heering Decl., Exs. N, R, S, T, U, Z, AA, MM, NN, OO, PP, QQ, RR, SS, WW, XX, CCC.) While it may be literally true that California technically "knows" that glyphosate causes cancer as the State has defined that term in the statute and regulations, the required warning would nonetheless be misleading to the ordinary consumer. See, e.g., *CTIA-The Wireless Ass'n v. City & Cty. of San Francisco, 827 F. Supp. 2d 1054, 1062-63 (N.D. Cal. 2011)*, aff'd, *494 F. App'x 752 (9th Cir. 2012)* (granting preliminary injunction in part because required fact sheet was misleading because it failed "to explain the limited significance of WHO 'possible carcinogen' classification," which **[*23]** implied that radiofrequency energy from cell phones was "more dangerous than it really is," and explaining that the fact sheet should state that "RF Energy has been classified by the World Health Organization as a possible carcinogen rather than as a known carcinogen or a probable carcinogen and studies continue to assess the potential health effects of cell phones.").

As the court stated in granting a preliminary injunction,

> Ordinary consumers do not interpret warnings in accordance with a complex web of statutes, regulations, and court decisions, and the most obvious reading of the Proposition 65 cancer warning is that exposure to glyphosate in fact causes cancer. A reasonable consumer may understand that if the warning says "known to cause cancer," there could be a small minority of studies or experts disputing whether the substance in fact causes cancer. However, a reasonable consumer would not understand that a substance is "known to cause cancer" where only one health organization had found that the substance in question causes cancer and virtually all other government agencies and health organizations that have reviewed studies on the chemical had found there was no evidence that **[*24]** it caused cancer. Under these facts, the message that glyphosate is known to cause cancer is misleading at best.

(Docket No. 97 at 14.)

The D.C. Circuit's discussion in *Nat'l Ass'n of Mfrs. v. SEC, 800 F.3d 518, 419 U.S. App. D.C. 158 (D.C. Cir. 2015)*, is instructive. There, the SEC enacted a rule mandating companies using certain minerals originating in the Democratic Republic of Congo to disclose on their website their products have "not been found to be DRC conflict free." *Id. at 530*. The court explained that the SEC could not rely on the statutory definition of "conflict free" to prove that a disclosure was factual and uncontroversial, because otherwise "there would be no end to the government's ability to skew public debate by forcing companies to use the government's preferred language." *Id. at 530*. Similarly, here, the State of California may not skew the public debate by forcing companies to adopt the state's determination that glyphosate is a carcinogen, relying solely on the IARC's determination, when the great weight of evidence indicates that glyphosate is not known to cause cancer.

1. New Evidence

The new evidence introduced by defendant on summary judgment does not change this determination that the warning requirement as to glyphosate is misleading. First, the fact that **[*25]** there have been additional studies suggesting a link between glyphosate and cancer, or the fact that there has been some criticism of the EPA's finding that glyphosate was not a cancer risk, does not establish that California knows that glyphosate causes cancer. (See Docket No. 124 at 14-25 (and citations therein).) Notwithstanding this additional evidence, the fact remains that every government regulator of which the court is aware, with the exception of the IARC, has found that there was no or insufficient evidence that glyphosate causes cancer. Indeed, the EPA, which Proposition 65 relies on as one of five authoritative bodies for identifying carcinogens, reaffirmed this determination in 2019, noting its vigorous disagreement with the IARC, and stating that a Proposition 65 warning for glyphosate would be false and misleading and would violate the federal herbicide labeling law, *7 U.S.C. § 136a*. (Heering Decl. Exs. E, WW.)

This court does not express an opinion as to the criticisms the parties lodge against the IARC on one hand, and the EPA on the other. "Once again, the court's analysis here is not whether the IARC's determination is persuasive or supported by competent evidence, but rather whether **[*26]** a warning conveying the message that glyphosate causes cancer is factual and uncontroversial." (Docket No. 97 at 5.)

Second, the California Court of Appeal's decision in *Monsanto Co. v. Office of Environmental Health Hazard Assessment, 22 Cal. App. 5th 534, 231 Cal. Rptr. 3d 537 (5th Dist. 2018)*, does not affect the court's analysis. *Monsanto* concerned the placement of glyphosate on the Proposition 65 carcinogen list due to the IARC classification of glyphosate as a probable carcinogen. However, this court has already pointed out on the motion for a preliminary injunction that it is Proposition

65's warning requirement that posed *First Amendment* concerns, not Proposition 65's list of carcinogens, which is government speech. (Docket No. 75 at 11.) Also, this court already addressed the *Monsanto* decision in its order denying defendant's motion to reconsider, noting that that case did not address the *First Amendment* and thus had no relevance as to whether the warning requirement with respect to glyphosate was factual and uncontroversial. (Docket No. 97 at 4-5.) This court has made no finding, and need not make any, as to the general trustworthiness or reliability of the IARC in order to determine that the glyphosate warning requirement is misleading, in light of the heavy weight of authority stating that glyphosate does not cause cancer.

 **[\*27]** Third, the OEHHA's formal adoption of a regulation setting a safe harbor level for glyphosate does not change the court's analysis. As the court has already explained, the no significant risk level only provides an affirmative defense for a business when faced with a Proposition 65 enforcement action, and it has no relevance as to whether the warning requirement is factual and uncontroversial. (Docket 97 at 4-5.)

Fourth, the fact that there have been three jury verdicts against Monsanto based on glyphosate does not render the warning purely factual and uncontroversial. The juries in those cases were tasked with determining whether the evidence, as presented in those cases, showed that it was more likely than not that glyphosate caused cancer in those plaintiffs. While those juries ultimately decided that it did, whether a reasonable juror could find that glyphosate causes cancer is a separate question facing the court today -- whether a statement that glyphosate is known to cause cancer is purely factual and uncontroversial.[15] Given the full body of evidence before the court, such a statement is at a minimum misleading and therefore not factual and uncontroversial.

2. Alternative Warnings **[\*28]**

Defendant attempts to salvage the Proposition 65 warning by noting that the statute only requires "clear and reasonable" warnings, not the particular language of the safe harbor warning. However, at the preliminary injunction hearing, counsel for defendant rejected multiple alternative warnings suggested by the court which would provide more context or use more accurate language, claiming that the additional language would "dilute" the warning. (Hr'g Tr. at 51 (Docket No. 72).) Since then, the Attorney General has suggested three of his own alternative warnings. Each of these warnings are deficient on their own, as will be discussed below.[16] More important, however, is the fact that the state simply cannot put the burden on commercial speakers to draft a warning that both protects their right not to speak and complies with Proposition 65. Accord *Illinois ex rel. Madigan v. Telemktg. Assocs., Inc., 538 U.S. 600, 620 n.9, 123 S. Ct. 1829, 155 L. Ed. 2d 793 (2003)* **HN10**[↑] ("[T]o avoid chilling protected speech, the government must bear the burden of proving that the speech it seeks to prohibit is unprotected.") (citations omitted).

As this court has already stated, it appears that any glyphosate warning which does not compel a business to make misleading statements about glyphosate's carcinogenicity would likely **[\*29]** violate the Attorney General's own guidelines for approval of Proposition 65 enforcement action settlements. (See Docket No. 97 at 9 n.7 (noting that under *Cal. Code Regs. tit. 11 § 3202(b)*, certain words and phrases are per se not clear and reasonable, "such as (1) use of the adverb 'may' to modify whether the chemical causes cancer" and "(2) additional words or phrases that contradict or obfuscate otherwise acceptable warning language").)

At the same time, **HN11**[↑] the safe harbor regulations prohibit providing any additional information in the warning other than the source of the exposure or "information on how to avoid or reduce exposure to the identified chemical."[17] *Cal. Code Regs. tit. 27, § 25601*. Given that restriction, a business would not enjoy the protection of the safe harbor warning and would still face the threat of suits from private enforcers if it added, for example, language discussing the debate regarding glyphosate's carcinogenicity, unless the business was a party to a court order approving the particular language. See *Cal. Code Regs. tit. 27, § 25600(e)* ("A person that is a party to a court-ordered settlement or final judgment establishing a warning method or content is deemed to be providing a 'clear and reasonable' warning for that

---

[15] Those cases are also on appeal, so it is not clear that the verdicts will ultimately stand.

[16] Although the court addressed the first two alternative warnings on the motion to reconsider, the court will revisit that discussion on summary judgment, out of an abundance of caution.

[17] These regulations also distinguish the Proposition 65 warning from the regulation at issue in CTIA II, which allowed retailers to add to the compelled disclosure. See *928 F.3d at 848*.

exposure for purposes of this article, **[*30]** if the warning complies with the order or judgment.").

The court cannot condone the state's approach here, where it continues to argue that the warning requirement poses no *First Amendment* concerns and then repeatedly proposes iterations of alternative warnings that the state would never allow under normal circumstances, absent this lawsuit. Even assuming the state may continue to propose alternative warnings, as it has in this case, none of them qualify as purely factual and uncontroversial.

Defendant's first proposed warning states: "WARNING: This product can expose you to glyphosate, a chemical listed as causing cancer pursuant to the requirements of California law. For more information go to www.P65Warnings.ca.gov." (Docket No. 81-1 at 10). Stating that a chemical is listed as causing cancer "pursuant to the requirements of California law" conveys essentially the same message to consumers as stating that a chemical is known to the state of California to cause cancer, and thus is misleading for the same reason as the safe harbor warning. Further, California cannot remedy this warning by simply pointing consumers to a website discussing the debate.

Defendant's second proposed warning does **[*31]** provide additional context regarding the debate as to glyphosate's carcinogenicity, stating:

> WARNING: This product can expose you to glyphosate, a chemical listed as causing cancer pursuant to the requirements of California law. The listing is based on a determination by the United Nations International Agency for Research on Cancer that glyphosate presents a cancer hazard. The U.S. Environmental Protection Agency has tentatively concluded in a draft document that glyphosate does not present a cancer hazard. For more information go to www.P65warnings.ca.gov.

(Docket No. 81-1 at 12.)

As the court discussed on the motion for reconsideration, this warning is deficient "because it conveys the message that there is equal weight of authority for and against the proposition that glyphosate causes cancer, or that there is more evidence that it does . . . when the heavy weight of evidence in the record is that glyphosate is not known to cause cancer." (Docket No. 97 at 9.)

Defendant's third alternative warning fails for similar reasons. That warning states:

> WARNING: This product can expose you to glyphosate. The State of California has determined that glyphosate is known to cause cancer under Proposition **[*32]** 65 because the International Agency for Research on Cancer has classified it as a carcinogen, concluding that there is sufficient evidence of carcinogenicity from studies in experimental animals and limited evidence in humans, and that it is probably carcinogenic to humans. The EPA has concluded that glyphosate is not likely to be carcinogenic to humans. For more information about glyphosate and Proposition 65, see www.P65warnings.ca.gov.

(Docket No. 124 at 59.) This warning does give some context to the IARC's findings, noting that there was "limited evidence in humans" and that glyphosate is "probably carcinogenic."[18] However, it once again states that glyphosate is known to cause cancer and conveys the message that there is equal weight for and against the authority that glyphosate causes cancer, when the weight of evidence is that glyphosate does not cause cancer.

Defendant relies heavily on the Ninth Circuit's decision in CTIA II, to support his contention that this third warning is permissible under *Zauderer*, though that case is distinguishable. In CTIA II, the panel majority approved a warning stating:

> To assure safety, the Federal Government requires that cell phones meet radio-frequency **[*33]** (RF) exposure guidelines. If you carry or use your phone in a pants or shirt pocket or tucked into a bra when the phone is ON and connected to a wireless network, you may exceed the federal guidelines for exposure to RF radiation. Refer to the instructions in your phone or user manual for information about how to use your phone safely.

*928 F.3d at 838*. Rather than stating that cell phones are known to cause cancer, or known to cause some other adverse health condition, the CTIA II warning only pointed to federal guidelines regarding radio-frequency guidelines, and stated that certain uses of cell phones would cause the user to exceed those guidelines. The disclosure did not make any claims that failure to comply with those guidelines would cause any particular

---

[18] Once again, the court questions whether a nuanced warning regarding glyphosate, especially one as lengthy as the Attorney General's third alternative warning, can comply with the Proposition 65 regulations and the statute's requirements of a "clear and reasonable" warning.

effect, other than imply that compliance with the guidelines was necessary for "safety."

In contrast, the original cell phone warning required by San Francisco in a related cell phone warning case would have stated, among other things, "ALTHOUGH STUDIES CONTINUE TO ASSESS POTENTIAL HEALTH EFFECTS OF MOBILE PHONE USE, THE WORLD HEALTH ORGANIZATION HAS CLASSIFIED RF ENERGY AS A POSSIBLE CARCINOGEN." *CTIA-The Wireless Ass'n v. City & Cty. of San Francisco, 827 F. Supp. 2d 1054, 1058 (9th Cir. 2011)*, aff'd, *494 F. App'x 752 (9th Cir. 2012)*. This warning, making a similar claim [*34] about an IARC probable carcinogen determination, was rejected as misleading by the district court, a determination that was affirmed by the Ninth Circuit in a memorandum disposition. *Id. at 1061-63*. Thus, the Ninth Circuit's approval of the warning in CTIA II does not show that the third alternative warning proposed by defendant is purely factual and uncontroversial.

The law does not require a warning label to disclose in full the debate regarding glyphosate's carcinogenicity, and there need not be complete consensus among the scientific community before a warning may be required. See *CTIA-The Wireless Ass'n v. City of Berkeley, 139 F. Supp. 3d 1048, 1071-72 (N.D. Cal. 2015)*. Given the evidence in the record, however, warnings which state that glyphosate is known to cause cancer are not purely factual and uncontroversial. Accordingly, *Zauderer*'s lower scrutiny does not apply, and the Proposition 65 warning as to glyphosate must satisfy intermediate scrutiny.[19]

B. Intermediate Scrutiny

Having determined that *Zauderer*'s lower standard does not apply to the glyphosate warning requirement because it is not purely factual and uncontroversial, the court deems it appropriate to now consider whether the warning requirement satisfies intermediate scrutiny. See *Am. Beverage, 916 F.3d at 755* (citing *Central Hudson, 447 U.S. at 564*). HN12[↑] Under intermediate [*35] scrutiny, the law must "directly advance the governmental interested asserted and must not be more extensive than is necessary to serve that interest." Id. (citing *Central Hudson, 447 U.S. at 566*). The government has the burden to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Ibanez, 512 U.S. at 136*.

Here, defendant has neither shown that Proposition 65's warning requirement, as applied to glyphosate, directly advances the asserted government interest, nor that it is not more extensive than necessary to achieve that interest. The purpose for Proposition 65 warning requirement, as stated in preamble to the proposed act, was to inform the people of California "about exposures to chemicals that cause cancer." (Zuckerman Decl., Ex. WW (Docket No. 138-23).) See also *Cal. Chamber of Commerce v. Brown, 196 Cal. App. 4th 233, 258, 126 Cal. Rptr. 3d 214 (1st Dist. 2011)* (quoting Proposition 65 Section 1). The court agrees that this is a substantial interest. However, misleading statements about glyphosate's carcinogenicity, and the state's knowledge of that purported carcinogenicity, do not directly advance that interest.[20]

Moreover, California has options available to inform consumers of its determination that glyphosate is a carcinogen, without burdening the free speech of businesses, [*36] including advertising campaigns or posting information on the Internet. See, e.g., *NIFLA, 138 S. Ct. at 2376* (noting that even assuming an advertising campaign would be less effective at broadcasting California's message than mandated disclosures, the state may not "co-opt" businesses "to deliver its message for it," because "[t]he *First Amendment* does not permit the State to sacrifice speech for efficiency") (citation omitted). Accordingly, Proposition 65's warning requirement as to glyphosate fails intermediate scrutiny under the *First Amendment*, and the court will grant summary judgment for plaintiffs.[21]

---

[19] Because the court finds that *Zauderer* does not apply because the warning is not purely factual and uncontroversial, the court does not reach the question of whether the warning is reasonably related to a substantial government interest or imposes an undue burden.

[20] Ironically, the Attorney General, while arguing that glyphosate is a carcinogen, has argued that the likely amount of glyphosate that the average consumer will be exposed to is orders of magnitude lower than would be required to exceed the state's no significant risk level. In other words, defendant on the one hand proclaims the need to broadcast glyphosate's cancer risk while at the same time declaring there is no risk for the vast majority of consumers.

[21] The Attorney General also seeks summary judgment as to whether Proposition 65' warning requirement is unconstitutionally vague. However, the Amended Complaint does not assert a void for vagueness claim, and defendant did not assert a counterclaim seeking declaratory relief as to

V. Permanent Injunction

Having determined that Proposition 65's warning requirement as to glyphosate violates the *First Amendment*, the court turns to whether a permanent injunction is appropriate. **HN13**[⬆] To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)*. The standard for a permanent injunction [*37] is essentially the same as for a preliminary injunction, with the exception that the plaintiff must show actual success, rather than a likelihood of success. See *Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)*. Here, the court's analysis of the permanent injunction factors largely repeats its analysis from its order granting a preliminary injunction.

Because **HN14**[⬆] "[t]he loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 828 (9th Cir. 2013)* (quoting *Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)*), and plaintiffs have prevailed on their *First Amendment* claim, they have established that they will likely suffer irreparable harm for which there are no adequate legal remedies if the warning requirement is not enjoined as to glyphosate.[22]

**HN15**[⬆] When the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014)* (citing *Nken v. Holder, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)*). To determine the balance of equities, the court must "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009)* (citation omitted).

The court recognizes that **HN16**[⬆] the state has a significant interest in protecting its citizens and informing them of possible health risks, but the Ninth Circuit has "consistently recognized the significant public interest in upholding *First Amendment* principles." *Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014)* (quoting *Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 974 (9th Cir. 2002)*). Further, California "has no legitimate interest [*38] in enforcing an unconstitutional" law. See *KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1272 (11th Cir. 2006)*. Providing misleading or false labels to consumers also undermines California's interest in accurately informing its citizens of health risks at the expense of plaintiffs' *First Amendment* rights. Accordingly, the balance of equities and public interest weigh in favor of permanently enjoining Proposition 65's warning requirement for glyphosate.

As plaintiffs have prevailed on the merits of their *First Amendment* claim, are likely to suffer irreparable harm absent an injunction, and have shown that the balance of equities and public interest favor an injunction, the court will grant plaintiffs' request to permanently enjoin Proposition 65's warning requirement as to glyphosate.[23]

IT IS THEREFORE ORDERED that plaintiffs' Motion for Summary Judgment (Docket No. 117) be, and the same

---

whether the warning requirement was unconstitutionally vague. Accordingly, the court will deny defendant's cross motion for summary judgment as to vagueness.

[22] Plaintiffs also contend that the warning requirement will cause several other irreparable harms, including damage to the reputation and goodwill of plaintiffs and their products, loss of customers, and disruption to supply chains and existing business practices. Plaintiffs further claim that they have no legal remedies because California is not subject to damages under sovereign immunity. Because the court finds that plaintiffs have shown a likelihood of irreparable harm and inadequate legal remedies based on the infringement of their *First Amendment* rights, the court need not specifically address these arguments.

[23] Plaintiffs' Notice of Motion and proposed order also request that the court permanently enjoin defendant or anyone in privity with him from threatening to enforce Proposition 65's warning requirement for glyphosate. (See Notice of Mot. Summ. J. at 1 (Docket No. 117); Proposed Order (Docket No. 1117-79); see also Am. Compl. Prayer for Relief ¶ 4) (requesting injunction against anyone enforcing or threatening to enforce the warning requirement as to glyphosate).) This request may have been inadvertently included, as it does not appear to have been mentioned in plaintiffs' memorandum in support of the motion or plaintiffs' reply. More importantly, plaintiffs provide no support for the contention that threats of enforcement should be enjoined, and such request raises concerns about the *First Amendment* rights of defendant and those in privity with him. Accordingly, the court's injunction does not address threats of enforcement of Proposition 65.

hereby is, GRANTED. Defendant's Cross Motion for Summary Judgment (Docket No. 124) is DENIED.

IT IS FURTHER ORDERED that plaintiffs' request for a permanent injunction enjoining the warning requirement of California Health & Safety Code § 25249.6 as to glyphosate is GRANTED. Defendant, his agents and employees, all persons or entities in privity with him, and anyone acting in concert with him are hereby ENJOINED from **[*39]** enforcing as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs, California Health & Safety Code § 25249.6's requirement that any person in the course of doing business provide a clear and reasonable warning before exposing any individual to glyphosate.

Dated: June 22, 2020

/s/ William B. Shubb

WILLIAM B. SHUBB

UNITED STATES DISTRICT JUDGE

**End of Document**