Karen Barth Menzies (CA SBN 180234)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA  94612
Tel: (510) 350-9700
Fax: (510) 350-9701
kbm@classlawgroup.com

Fletcher V. Trammell, Esq. (*pro hac vice* to be submitted)
Melissa Binstock Ephron, Esq. (*pro hac vice* to be submitted)
TRAMMELL, PC
3262 Westheimer Rd., Ste. 423
Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
 fletch@trammellpc.com
melissa@trammellpc.com

Alexander G. Dwyer (*pro hac vice* to be submitted)
Andrew F. Kirkendall (*pro hac vice* to be submitted)
Erin M. Wood (*pro hac vice* to be submitted)
KIRKENDALL DWYER LLP
4343 Sigma Rd, Suite 200
Dallas, TX  75244
Tel: 214-271-4027
Fax: 214-253-0629
ad@kirkendalldwyer.com
ak@kirkendalldwyer.com
ewood@kirkendalldwyer.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO<br><br>*Pike v. Monsanto Co., et al.,*<br>Case No. 3:20-cv-08192 | **Case No. 16-MD-2741-VC**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**<br><br>Hon. Vince Chhabria<br>Date: January 28, 2021<br>Time: 10:00 a.m.<br>Courtroom: 4 |

1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on January 28, 2021, at 10:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, in the courtroom of Judge Vince Chhabria, plaintiff will and hereby does move the Court for an Order remanding this action to the Superior Court of the State of California, County of San Francisco.

This motion is brought on the following grounds: (1) that Defendants cannot meet their burden of demonstrating that diversity of citizenship exists under 28 U.S.C. § 1332, and (2) Defendants Wilbur-Ellis Co., LLC and Wilbur-Ellis Nutrition, LLC (formerly Wilbur-Ellis Feed, LLC) were not fraudulently joined so 28 U.S.C. 1441(b) prevents removal of this case. This motion is based on the attached Memorandum of Points and Authorities, the papers and pleadings on file herein, and upon such further evidence, oral or documentary, as may be presented at the hearing of this motion.

Dated:  December 21, 2020

**GIBBS LAW GROUP LLP**

By: */s/  Karen Barth Menzies*

Karen Barth Menzies
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA  94612
Tel: (510) 350-9700
Fax: (510) 350-9701
kbm@classlawgroup.com
*Attorneys for Plaintiff*s

## INTRODUCTION

Monsanto's notice of removal is substantively improper, and this action must be remanded to state court. The case at bar involves a suit brought in California state court against Monsanto, Wilbur-Ellis Company, Wilbur-Ellis Feed, Crown Hardware, Inc., and DOES defendants for injuries sustained as a result of Plaintiff's use and exposure to Monsanto's Roundup products.

Plaintiff, John Pike, is and has been a California resident for all appliable times relevant to this action. Wilbur-Ellis Company, Wilbur-Ellis Feed, and Crown Hardware, Inc. have their principal places of business in California, as Monsanto admits. As such, complete diversity is lacking, and federal jurisdiction is lacking in this case as a result.

While admitting that complete diversity does not exist, Monsanto attempts to remove this case on the bases of fraudulent joinder. For the reasons stated herein, this argument is untenable and should be rejected in favor of immediate remand.

## FACTUAL BACKGROUND AND PROCEDRUAL HISTORY

John Pike ("Plaintiff") was exposed to Roundup from August 2009 until August 2016 when he applied the product to his residence in Davis, California. On or about October 13, 2016, Plaintiff was diagnosed with non-Hodgkin lymphoma, proximately caused by his Roundup use and exposure. Suit was filed on Plaintiff's behalf on August 4, 2020.  Defendant Monsanto was served on August 7, 2020.  More than 105 days later, on November 20, 2020, Monsanto filed a notice of removal.

## ARGUMENT

## I.    SUBSTANTIVE REQUIREMENTS FOR REMOVAL ARE NOT SATISFIED.

Monsanto argues that complete diversity is lacking on the face of the complaint, clearly lending to Plaintiff's argument that this case should be remanded.

A federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over the case as originally brought by the plaintiff. *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977); *see also* 28 U.S.C. § 1441. Removal based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity of citizenship (i.e., all plaintiffs must be of different citizenship than all defendants). *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067

1

1    (9th Cir.2001); *see also* 28 U.S.C. § 1332. Removal is not permitted where one of the defendants

2    "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

3           Further, the Ninth Circuit has long held that it is the burden of the party seeking removal to

4    establish federal jurisdiction, *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir.1989), and

5    there is a "strong presumption against removal jurisdiction." *Abrego v. Dow Chem. Co.,* 443 F.3d

6    676, 685 (9th Cir.2006). In fact, removal jurisdiction should be strictly construed in favor of

7    remand, *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock*

8    *Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941)), and the law is clear that there must be

9    *no doubt* that jurisdiction exists. If doubt exists, remand is required. *Gaus v. Miles, Inc*., 980 F.2d

10   564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is *any doubt* as to the right

11   of removal.") (emphasis added). "Doubts as to removability must be resolved in favor of

12   remanding the case to state court." *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089,

13   1090 (9th Cir. 2003).

14        Regarding the case at bar, Monsanto agrees that Crown Hardware, Inc. and the Wilbur-Ellis

15   entities are citizens of the State of California. Monsanto Company's Notice of Removal ("Notice

16   of Removal"), ¶¶ 2, 16. Plaintiff, also, is and has been a citizen of the State of California for all

17   times appliable to this action. As such, on the face of the complaint, diversity jurisdiction is

18   lacking, and Plaintiff's case must be remanded to state court.

19   **II.**     **THE WILBUR-ELLIS ENTITES ARE NOT FRADULENTLY JOINED.**

20        Faced with an obvious lack of diversity in this case, Monsanto seeks to employ the

21   doctrine of fraudulent joinder to remove this case to federal court. This argument must fail.

22        Fraudulent joinder constitutes an exception to the requirement of complete diversity. This

23   doctrine holds that, where a non-diverse defendant has been "fraudulently joined," the court

24   disregards that defendant and recognizes complete diversity. *Morris v. Princess Cruises, Inc.,* 236

25   F.3d 1061, 1067 (9th Cir. 2000). However, fraudulent joinder only exists "[i]f the plaintiff fails to

26   state a cause of action against a resident defendant, and the failure is obvious according to the

27   settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

28        Further, a defendant must show that the joinder was fraudulent by "clear and convincing

evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). In determining whether a defendant was joined fraudulently, a court must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (quoting *Dodson v. Spiliada*, 951 F.2d 40, 42-43 (5th Cir. 1992)).

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Smallwood v. Ill. Cent. R.R.Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc).

Indeed, the district court must remand if there is a "non-fanciful possibility" that the plaintiff can state a claim against the non-diverse defendant. *See Vu v. Ortho–McNeill Pharm., Inc.*, 602 F.Supp.2d 1151, 1154 (N.D. Cal. 2009) (citation omitted). The relevant inquiry is whether the plaintiff could state a claim against the non-diverse defendant on any legal theory. *See Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

When determining if a non-diverse defendant has been fraudulently joined, the court may look beyond the pleadings and consider summary judgment-type evidence such as deposition testimony and affidavits. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."). Thus, the defendant seeking removal is free to present as many facts as he wishes in order to show fraudulent joinder. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

Regarding the case at bar, Monsanto avers that "Wilbur-Ellis Company is (and has been) in the business of, among other things, distributing and selling certain pesticides and herbicides, including certain glyphosate-based herbicide products." Exhibit 2 to Notice of Removal, Hushbeck Declaration, ¶ 6.

However, Monsanto also alleges that Wilbur-Ellis is involved in a limited market only, not distributing to outlets that sell to the general public. As such, the claim is that Wilbur-Ellis was not

3

involved in the distribution chain that distributed Roundup to Plaintiff or to which Plaintiff was

exposed and cannot be liable under a product liability theory as a result. As shown below,

Monsanto's argument is simply untenable. Wilbur-Ellis is a massive company with a massive

reach, constantly touting itself as a leader in distribution, marketing itself as a solution for

*everyone*, and engaging in Pac-Mac like consumption of other entities to make itself grow. Given

this, Wilbur-Ellis was quite certainly involved in the distribution of Round that Plaintiff used or

was exposed to, and the Court should resolve this question of fact in Plaintiff's favor.

   A.  Website Contradictions

      First, the allegation that Wilbur-Ellis only distributes to a limited market contradicts

statements found all over Wilbur-Ellis' website. For example, Wilbur-Ellis boasts that it is a

"global services leader"[1] in precision agriculture technology and products. Wilbur-Ellis further

touts that its companies are "leading international marketer[s] and distributor[s]"[2] of agricultural

products, animal nutrients and specialty chemicals and ingredients, with "sales now over $3

billion."[3] Wilbur-Ellis also states that its unique expertise allows it to "tailor solutions to *every*

crop, grower and field."[4] (emphasis added). Nowhere on its website does Wilbur-Ellis claim it

caters to a limited market only. On the contrary, Wilbur-Ellis touts itself as being the "one-stop-

shop that has every solution you need."[5] Given the breadth and depth of Wilbur-Ellis' reach, this

entity was quite certainly involved in the distribution chain that distributed Roundup to Plaintiff or

to which Plaintiff was exposed. At the very least, this contradiction does raise a genuine question

of fact regarding who Wilbur-Ellis distributes to. Thus, with the board and unlimited audience

Wilbur-Ellis targets on its website, and the settled law that a district court must resolve all

disputed questions of fact in the plaintiff's favor, the Court should grant Plaintiff's request to

remand this case to state court.

*//*

---

[1] *HISTORY IN THE MAKING*, WILBUR-ELLIS (last visited Dec. 16, 2020), https://www.wilburellis.com/history/.
[2] *WILBUR-ELLIS ACQUIRES NACHURS ALPINE SOLUTIONS®, PIONEER IN PRECISION AGRICULTURE, LEADING SPECIALTY CHEMICALS* MANUFACTURER, WILBUR-ELLIS (last visited Dec. 16, 2020), https://www.wilburellis.com/wilbur-ellis-acquires-nachurs-alpine-solutions-pioneer-in-precision-agriculture-leading-specialty-chemicals-manufacturer/.
[3] *Id.*
[4] *AGRIBUSINESS*, WILBUR-ELLIS (last visited Dec. 16, 2020), https://ag.wilburellis.com/.
[5] *About AGRIBUSINESS*, WILBUR-ELLIS (last visited Dec. 16, 2020), https://ag.wilburellis.com/about/.

**NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**
**Case No. 16-MD-2741-VC**

B. Conflicting Statements of Interest

Second, Wilbur-Ellis has filed numerous Statements of Information with the Secretary of State that reflect no limitations on who Wilbur-Ellis distributes to. For example, in its June 23, 2015 statement, Wilbur-Ellis describes the type of business of the corporation as "trade." *See* **Exhibit 1**, Wilbur-Ellis Statement of Information, June 23, 2015. The statement filed on June 19, 2012 describes the type of business of the corporation as "Distr–agricultural chemicals." *See* **Exhibit 2**, Wilbur-Ellis Statement of Information, June 19, 2012. Neither statement limits Wilbur-Ellis' market in any capacity to certain audiences only.

These facts are comparable to those found in *Vieira v. Mentor Worldwide, LLC*, No. 218CV06502ABPLAX, 2018 WL 4275998, at *3 (C.D. Cal. Sept. 7, 2018). In *Vieira*, the defendant Mentor Worldwise, LLC ("Mentor") sought to remove based on the purported fraudulent joinder of NuSil, who, like the plaintiff, was a California resident. *Id.* Mentor claimed that NuSil was simply a holding company, submitting an affidavit from one of NuSil's individual members that NuSil had not "developed, designed, manufactured, supplied, or distributed any products, including the silicone or silicone gel[ ] used to manufacture breast implants." *Id.* However, the 2013 Statement of Information filed by the entity indicated that NuSil did manufacture silicone products, contradicting the affidavit testimony. *Id.* In the context of removal, given that the court must resolve fact disputes in the plaintiff's favor, the court held that NuSil was involved in the manufacturing process and remanded the case back to state court. *Id.*

Similarly, regarding the case at bar, as discussed above, the Statements of Interest filed by Wilbur-Ellis in no way limits its market. On the contrary, the Statements support the contention that this is a massive company with a massive reach. As such, this entity was quite certainly involved in the distribution chain that distributed Roundup to Plaintiff or to which Plaintiff was exposed. At the very least, this contradiction does raise a genuine question of fact regarding to whom Wilbur-Ellis distributes. Again, since all disputed questions of fact and all ambiguities must be decided in favor of the non-removing party, the Court should find in Plaintiff's favor and remand this case to state court.

//

5

C. Insufficient Evidence

Third, the two-page affidavit of Steven Gould submitted by Monsanto is simply insufficient evidence to determine who Wilbur-Ellis distributes to. The affidavit merely responds in the negative, providing no information whatsoever regarding who this entity distributes to. Exhibit 4 to Notice of Removal, Steven Gould Declaration, ¶ 6-7.  This is despite the fact that Monsanto had the opportunity to "pierce the pleadings" and submit evidence that one would typically see in the context of a summary judgment motion. Wilbur-Ellis has merged at least 16 times with other entities according to its filings with the Secretary of State, with the most recent merges occurring in 2013[6] and 2009.[7] Clearly, with this much corporate action, untangling the history, players, and activity of this entity, including who this entity distributes to, raises a triable issue. Given Wilbur-Ellis' Pac-Man-like nature of consuming other entities, Wilbur-Ellis was quite certainly involved in the distribution chain that distributed Roundup to Plaintiff or to which Plaintiff was exposed. At the very least, this activity does raise a genuine question of fact regarding who Wilbur-Ellis distributes to. Since courts must resolve disputed questions of fact in the plaintiff's favor, this Court must remand the case to state court.

****

Because of the conflicting website assertions and Statements of Information, the dearth of evidence submitted by Wilbur-Ellis, and the litany of mergers Wilbur-Ellis has undergone, it is clear that, not only is this a massive entity with a massive reach, but that who Wilbur-Ellis distributes to raises a disputed question of fact. As such, the Court should resolve this issue in Plaintiff's favor and should remand the case to state court.

## III.   CROWN HARDWARE, INC. IS NOT FRADULENTLY JOINED.

Similar to its claims regarding the Wilbur-Ellis entities, Monsanto claims that Plaintiffs' "allegations regarding Crown, Hardware, Inc. clearly are incorrect," citing to the declaration of Mark Schulein ("Mr. Schulein").  Notice of Removal, ¶ 30.  Specifically, Monsanto claims that "[a]lthough there is a hardware store in Davis, California called 'Davis Ace Hardware,' Crown

---

[6]   Certificate of Ownership, CALIFORNIA SECRETARY OF STATE (last visited Dec. 16, 2020), https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00104720-6351597.
[7]   Agreement and Plan of Merger, CALIFORNIA SECRETARY OF STATE (last visited Dec. 16, 2020), https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00104720-16548641.

**NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**
**Case No. 16-MD-2741-VC**

Hardware, Inc. has never owned that hardware store and has never owned any other store in Davis, California." *Id.* Monsanto claims that "[a] company in which Mr. Schulein has an indirect ownership interest – not Crown Hardware, Inc. – acquired the Davis Ace Hardware store in April 2019." Notice of Removal, ¶ 31. Further it claims that "[t]hat transaction was an asset purchase; the acquiring company did not assume or acquire any liabilities from the company that sold that store in April 2019." *Id*.

As shown below, Monsanto's argument is flawed and the conclusory affidavit of Mr. Schulein does not withstand scrutiny for the purposes of removal. There remains a substantial question of fact at this juncture as to the exact relationship of Crown Hardware, Inc. and Davis Ace Hardware, whether, in fact, Crown Hardware, Inc. possesses liabilities relating to the sale of Roundup that Plaintiff John Pike used or was exposed to. With so many questions of fact outstanding and since courts must resolve disputed questions of fact in the plaintiff's favor, this Court must remand the case to state court.

First, the allegation that Crown Hardware "has never owned" Davis Ace Hardware appears dubious in light of several sources publicly available information. The sale of Davis Ace Hardware to Crown Hardware is chronicled in several publications, with Mr. Schulein specifically identified as the new owner of Davis Ace Hardware in Davis, California, and "president of Crown Hardware". *See* **Exhibit 3**, Hannan Waliullah, *Davis Ace Hardware, Aggie Ace Hardware stores sold to new owners*, The California Aggie, April 16, 2019 (last visited December 17, 2020), https://theaggie.org/2019/04/16/davis-ace-hardware-aggie-ace-hardware-stores-sold-to-new-owners/; *see* **Exhibit 4**, *Davis Ace Hardware Getting New Owners After 105 Years*, The Hardware Connection Newsletter (last visited December 17, 2020), https://www.mydigitalpublication.com/publication/?i=595854&article_id=3408452&view=article Browser&ver=html5; **Exhibit 5**, Jeff Hudson, *Davis Ace Hardware Getting New Owners*, Davis Enterprise (last visited December 17, 2020), https://www.davisenterprise.com/news/local/davis-ace-hardware-getting-new-owners/. Crown Hardware is described thusly:

> Crown Hardware is a privately held company based in Huntington
> Beach in Orange County. Crown has stores in 17 communities
> across three states; including stores in Orange County, San Diego

County, Riverside County, as well as Lake Havasu City, Arizona and Island Ace Hardware, serving the North Shore of Kauai.

Ex. 5, *Davis Ace Hardware Getting New Owners*, Davis Enterprise, https://www.davisenterprise.com/news/local/davis-ace-hardware-getting-new-owners/.

Further, Mark Schulein is specifically identified on the Ace Hardware Corporate Store Detail website as the owner of Davis Ace Hardware and as the owner of no fewer than nine "Crown Ace Hardware" branded locations across California. **Exhibit 6**, All Locations Operated by this Owner, Ace Hardware Corporate Store Detail (last visited December 17, 2020), acehardware.com/store-details/17424. Additionally, one of those locations, 9045 Adams Avenue, Huntington Beach, California 92646, is listed as the business address of Crown Hardware, Inc. *See id.*; *see also* **Exhibit 7**, Crown Hardware, Inc. Statement of Information, April 19, 2020. Further, that statement lists Mark Schulein as chief executive officer, chief financial officer, director, and agent for service of process of Crown Hardware, Inc., and describes the type of business of the corporation as "Retail Hardware and Housewares." *Id.* Additionally, job openings at Davis Ace Hardware, in Davis, California, are listed by Crown Ace Hardware on its website, describing itself as "a 16-store retail chain with locations spread across California, Arizona and Hawaii." **Exhibit 8**, Crown Ace Hardware ApplytoJob (last visited December 17, 2020), https://crownacehardware.applytojob.com/?fbclid=IwAR2-EbjhjI8e09d_VwGM7G2B5lQwyF8Ag0vRtwg3QCQ0DArMH_AZO5z6VaI; **Exhibit 9**, Garden/Nursery Retail Sales Associate – Ace Hardware – Career Page, Crown Ace Hardware ApplytoJob (last visited December 17, 2020), https://crownacehardware.applytojob.com/?fbclid=IwAR2-EbjhjI8e09d_VwGM7G2B5lQwyF8Ag0vRtwg3QCQ0DArMH_AZO5z6VaI.

Tellingly, on the Davis Ace Hardware Garden and Nursery page, Davis Ace admits that it is a retailer of Roundup, the herbicide used by Mr. Pike, stating the following:

> Davis Ace Garden has what you need for your outdoor and planting needs. Shop our selection of outdoor power equipment, irrigation supplies, fertilizers, pool supplies, expansive nursery of live plants and so much more. Our knowledgeable staff can help answer

8

> questions on an array of subjects from best planting practices to household pest control.
>
> We carry the brands to help you transform any space into a green wonderland: EB Stone, Scotts, Whitney Farms, Orbit, Ortho, Rainbird, Renee Seeds, Fox Farms, Torro, Dave Wilson, Safer, **Round Up**, Bond, Felco, Fiskar's, Harris, Corona, Monterey, Tomcat, Victor & more!

**Exhibit 10**, Garden & Nursery, DAVIS ACE HARDWARE WEBSITE (last visited December 17, 2020), davisace.com/garden (emphasis added).

Monsanto has presented no evidence beyond Mr. Schulein's self-serving and conclusory affidavit that the purchase of Davis Ace Hardware did not assume the liabilities of its predecessor. *See* Notice of Removal ¶31.  No purchase documents have been produced and while Mr. Schulein denies that Crown Hardware, Inc. owns Davis Ace Hardware, he admits that "[a] company which [he has] an indirect ownership interest . . . acquired the Davis Ace Hardware store in April 2019."  Exhibit 6 to Notice of Removal, Schulein Declaration, ¶ 7.  However, Mr. Schulein fails to identify the company that he avers does own Davis Ace Hardware.  *Id.*

Again, these facts are comparable to those found in *Vieira*, 2018 WL 4275998, at *3 (C.D. Cal. Sept. 7, 2018), discussed *supra*. As in *Vieira,* Monsanto and Mr. Schulein use an affidavit to claim that Crown Hardware, Inc. is unaffiliated with Davis Ace Hardware.  However, contradictory information, including the 2020 Statement of Information filed by Crown Hardware, Inc. with the State of California, indicates that it is in the business of "retail hardware and housewares." Ex. 7, Crown Hardware, Inc. Statement of Information, April 19, 2020.  Likewise, information published on Crown Hardware, Inc.'s website contradicts Mr. Schulein's assertions and reveals a relationship by representing that, at the very least, Crown Hardware, Inc. employs those individuals who work at Davis Ace Hardware.  Ex. 9, Garden/Nursery Retail Sales Associate – Ace Hardware – Career Page.  At the very least, these multiple contradictions raise a genuine question of fact regarding Crown Hardware, Inc.'s association with Davis Ace Hardware. Again, since all disputed questions of fact and all ambiguities must be decided in favor of the non-removing party, the Court should find in Plaintiff's favor and remand this case to state court.

//

****

Because of the conflicting assertions of Crown Hardware, Inc. made publicly and in its Statement of Information, the dearth of evidence submitted by Crown Hardware, Inc., and the ambiguity of Davis Ace Hardware's sale, it is clear that there is a disputed question of fact as to whether Crown Hardware, Inc. possesses ownership interests and liability relating to Davis Ace Hardware. As such, the Court should resolve this issue in Plaintiff's favor and should remand the case to state court.

## IV.   DOES DEFENDANTS MAY BE CALIFORNIA RESIDENTS.

As seen in Plaintiff's complaint, in addition to bringing suit against Monsanto, the Wilbur-Ellis Entities, and Crown Hardware, Inc., Plaintiff also alleges claims against DOES defendants. Plaintiff's Complaint, ¶¶ 34-40. What entities or which persons are involved in the funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, contracting others for marketing, warranting, rebranding, manufacturing for others, packaging, and advertising of Roundup is unknown to Plaintiff at this nascent stage of the litigation. Certainly, additional California entities and residents are likely involved. Since courts must resolve all disputed questions of fact and all ambiguities in favor of the non-removing party, this case should be remanded to state court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to grant Plaintiff's Motion to Remand.

Dated:  December 21, 2020            **GIBBS LAW GROUP LLP**

                                     By:  _/s/ Karen Barth Menzies_
                                          Karen Barth Menzies
                                          GIBBS LAW GROUP LLP
                                          505 14th Street, Suite 1110
                                          Oakland, CA  94612
                                          Tel: (510) 350-9700
                                          Fax: (510) 350-9701
                                          kbm@classlawgroup.com

NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
Case No. 16-MD-2741-VC

Fletcher V. Trammell
(*pro hac vice* to be submitted)
Melissa Binstock Ephron
(*pro hac vice* to be submitted)
TRAMMELL, PC
3262 Westheimer Rd., Ste. 423
Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
fletch@trammellpc.com
melissa@trammellpc.com


Alexander G. Dwyer
(*pro hac vice* to be submitted)
Andrew F. Kirkendall
(*pro hac vice* to be submitted)
Erin M. Wood
(*pro hac vice* to be submitted)
KIRKENDALL DWYER LLP
4343 Sigma Rd, Suite 200
Dallas, TX  75244
Tel: 214-271-4027
Fax: 214-253-0629
ad@kirkendalldwyer.com
ak@kirkendalldwyer.com
ewood@kirkendalldwyer.com

*Attorneys for Plaintiff*

NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
Case No. 16-MD-2741-VC