**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL No. 2741 )<br>) Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO:<br><br>*John Pike, et al. v. Monsanto Co., et al.*,<br><br>Case No. 3:20-cv-08192-VC | ) **DEFENDANT MONSANTO COMPANY'S**<br>) **OPPOSITION TO PLAINTIFF'S MOTION**<br>) **TO REMAND *PIKE* CASE TO STATE**<br>) **COURT (Filed With Accompanying**<br>) **Supplemental Declaration of Mark Schulein)**<br>)<br>) Date:       January 28, 2021<br>) Time:      10:00 a.m.<br>) Courtroom: 4 |

# TABLE OF CONTENTS

INTRODUCTION AND ISSUE TO BE DECIDED ............................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............................................. 2

LEGAL STANDARDS ................................................................................................ 3

ARGUMENT .............................................................................................................. 4

    I.    Plaintiff Does Not, And Cannot, Dispute Monsanto's Evidence Establishing That He Fraudulently Joined Wilbur-Ellis Nutrition/Feed. ............... 4

    II.    Plaintiff Fails To Rebut Monsanto's Evidence Establishing That He Fraudulently Joined Wilbur-Ellis Company. ........................................................... 5

        A.    Monsanto Presented Evidence Establishing That Wilbur-Ellis Company Had No Involvement With Designing, Manufacturing, Distributing, Or Selling The Herbicides That Allegedly Caused Plaintiff's Injuries. ..................................................................................... 5

        B.    Plaintiff's Unsupported Allegations And Speculation Fail To Rebut Monsanto's Evidence-Based Showing That Wilbur-Ellis Company Was Fraudulently Joined. ............................................................ 7

    III.    Plaintiff Fails To Rebut Monsanto's Evidence Establishing That He Fraudulently Joined Crown Hardware, Inc. ........................................................... 10

        A.    Monsanto Presented Evidence Establishing That Crown Hardware, Inc. Did Not Own The Store That Allegedly Sold The Herbicides That Caused Plaintiff's Injuries And Did Not Have Any Other Involvement With Selling, Designing, Manufacturing, Or Distributing Those Herbicides. ................................................................. 10

        B.    Plaintiff's Unsupported Allegations And Speculation Fail To Rebut Monsanto's Evidence-Based Showing That Crown Hardware, Inc. Was Fraudulently Joined. ............................................................... 11

    IV.    Plaintiff's Argument Regarding "John Doe" Defendants Is Squarely Foreclosed By The Removal Statute. ..................................................................... 15

CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arias v. Follet Higher Educ. Corp.*,
 No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..........................4, 7

*Aronis v. Merck & Co.*,
 No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005).........................5

*Caldwell v. State Farm Gen. Ins. Co.*,
 No. C 16-03479 JSW, 2016 WL 10907158 (N.D. Cal. Aug. 16, 2016) .................................15

*DiCola v. White Bros. Performance Prods., Inc.*,
 158 Cal. App. 666 (2008) .......................................................................................................5

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
 No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016)...................4, 7

*Grancare, LLC v. Thrower*,
 889 F.3d 543 (9th Cir. 2018) ..................................................................................................3

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
 No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) .................................4

*Kline v. Mentor Worldwide, LLC*,
 No. 2:19-cv-00877-WBS-KJN, 2019 WL 3245102 (E.D. Cal. July 19, 2019) .......................5

*Martinez v. McKesson Corp.*,
 No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ........................4, 5, 7

*Morris v. Princess Cruises, Inc.*,
 236 F.3d 1061 (9th Cir. 2001) .............................................................................................3, 4

*Ritchey v. Upjohn Drug Co.*,
 139 F.3d 1313 (9th Cir. 1998) ................................................................................................4

*Tucker v. McKesson Corp.*,
 No. C 10–2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011).....................................5

*Vieira v. Mentor Worldwide, LLC*,
 No. 2:18-cv-06502-AB, 2018 WL 4275998 (C.D. Cal. Sept. 7, 2018) ...................................9

*Vu v. Ortho-McNeil Pharm., Inc.*,
 602 F. Supp. 2d 1151 (N.D. Cal. 2009) ........................................................................4, 5, 7

**<u>Statutes</u>**

28 U.S.C. § 1441(b)(1) ...................................................................................................................15

Cal. Corporations Code § 1502(a)(9).............................................................................................9

## INTRODUCTION AND ISSUE TO BE DECIDED

Monsanto Company ("Monsanto") removed this lawsuit to this Court by filing a Notice of Removal that established – through four declarations – that Plaintiff John Pike fraudulently joined three non-diverse defendants, none of which had any role in designing, manufacturing, distributing, or selling the Monsanto glyphosate-based, Roundup®-branded herbicides that allegedly caused Plaintiff's non-Hodgkin's lymphoma ("NHL").

One of those defendants, Wilbur-Ellis Nutrition, LLC, formerly known as Wilbur-Ellis Feed, LLC ("Wilbur-Ellis Nutrition/Feed"), has been fraudulently joined because it has never designed, manufactured, distributed, or sold Roundup®-branded herbicides or any other herbicides. Plaintiff has offered no response to Monsanto's evidence of fraudulent joinder regarding Wilbur-Ellis Nutrition/Feed and instead improperly lumps that defendant together with another non-diverse defendant.

That non-diverse defendant, Wilbur-Ellis Company LLC ("Wilbur-Ellis Company"), is (and has been) in the business of distributing and selling only certain categories of Monsanto Roundup®-branded herbicides – namely, herbicides designed for the agricultural market and the industrial, turf & ornamental/professional market – but has never designed, manufactured, distributed, or sold Monsanto's Roundup®-branded, residential-lawn-and-garden herbicides. Wilbur-Ellis Company has been fraudulently joined because Plaintiff alleges residential use of Roundup®-branded herbicides, not work-related use of the kinds of herbicides distributed and sold by that defendant. In his remand motion, Plaintiff does not dispute – and indeed re-affirms – that he is alleging solely residential use of Roundup®-branded herbicides. Instead, Plaintiff tries, but fails, to create "contradictions" between evidence submitted in Monsanto's Notice of Removal and statements made by Wilbur-Ellis Company, which actually do not contradict anything submitted by Monsanto (and, in fact, highlight Wilbur-Ellis Company's role as a distributor for only the agricultural and professional markets). Plaintiff also engages in sheer speculation that is not supported by any evidence and fails to rebut Monsanto's evidence-based, fraudulent joinder showing.

The evidence submitted by Monsanto also establishes fraudulent joinder regarding the third non-diverse defendant, Crown Hardware, Inc. Although Plaintiff alleges that he was injured by Roundup®-branded herbicides purchased from a hardware store in Davis, California owned by Crown Hardware, Inc., the evidence proves that Crown Hardware, Inc. never owned that store and did not market or sell Roundup®-branded herbicides to Plaintiff. Moreover, Crown Hardware, Inc.: (a) did not have any role in, or involvement with, the chain of distribution by which those herbicides got from the point of manufacture to the point of sale at the store that allegedly sold them to Plaintiff; (b) never designed, tested, researched, manufactured, or obtained regulatory approval for any Roundup®-branded herbicides; and (c) never had any role in, or involvement with, determining what language should be included in labeling, or what warnings should be provided, for any Roundup®-branded herbicides.

The issue to be decided is whether, in these circumstances, this Court should deny Plaintiff's request that this lawsuit be remanded to state court. As discussed in more detail below, the answer to that question is "Yes."

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit asserts claims against Monsanto and seeks damages for NHL allegedly caused by Monsanto's Roundup®-branded herbicides. Compl. ¶¶ 16-17 (attached to Monsanto Company's Notice of Removal of *Pike* Lawsuit ("Notice of Removal") as Ex. 1, ECF No. 1-1). The Complaint also asserts claims against Wilbur-Ellis Company and Wilbur-Ellis Nutrition/Feed. Plaintiff lumps both defendants together – referring to them collectively as "Wilbur-Ellis," Compl. ¶¶ 29-30 – and asserts claims against them, based on mere information and belief. The Complaint alleges that "Wilbur-Ellis is a main distributor of Roundup®, and, ***upon information and belief***, distributed Roundup® used by Plaintiff." *Id*. ¶ 30 (emphasis added); *see also id*. ¶ 109 ("***On information and belief***, Wilbur-Ellis was one of the distributors providing Roundup® and other glyphosate-containing products used by the Plaintiff." (emphasis added)). Moreover, the Complaint alleges that Plaintiff used Roundup®-branded herbicides at his home and garden from August 2009 until August 2016. *Id*. ¶ 16.

The Complaint also asserts claims against Crown Hardware, Inc. based on the information-and-belief allegation that it sold Roundup®-branded herbicides to Plaintiff from its hardware store in Davis, California: "***On information and belief***, Crown Hardware was a retailer providing Roundup® and other glyphosate-containing products to Plaintiff." Compl. ¶ 111 (emphasis added); *see id.* ¶ 9 ("Upon information and belief, Crown Hardware, Inc. . . . was responsible for marketing and selling Roundup®-branded herbicides to Plaintiff during the time period in question."), ¶ 31 (alleging that Crown Hardware, Inc. "sold Roundup® to Plaintiff from its storefront in Davis, California, and this was the Roundup® to which Plaintiff was exposed").

In November 2020, Monsanto timely removed this lawsuit based on evidence that the three non-diverse defendants had been fraudulently joined. Notice of Removal, ECF No. 1.

In December 2020, Plaintiff filed his remand motion. Pl.'s Notice of Mot. and Mot. to Remand Action to State Court; Mem. of Points and Authorities (collectively, "Remand Motion"), ECF No. 6.[1] Plaintiff does not dispute that he is a California citizen and that Monsanto is a citizen of Missouri and Delaware for purposes of diversity jurisdiction. He also does not dispute that this lawsuit satisfies the jurisdictional amount-in-controversy requirement for this Court to exercise subject matter jurisdiction based on diversity of citizenship.

## LEGAL STANDARDS

The Ninth Circuit has recognized that, although complete diversity of citizenship usually is required for a federal court to have diversity jurisdiction, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant removing a lawsuit from state court based on fraudulent joinder of a co-defendant is required to show that there is no possibility that the state court would hold the co-defendant liable. *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). When fraudulent joinder applies – *i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted) – the

---

[1] Although the Complaint includes a loss-of-consortium claim, the Remand Motion discusses only the main plaintiff, Mr. Pike, so Monsanto addresses only that plaintiff in this opposition.

fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship. *Id*. In conducting a fraudulent joinder analysis, a court is not limited to the allegations in a complaint and is permitted to consider declarations and other evidence presented by the removing defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *Morris*, 236 F.3d at 1068.

If a removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on allegations in the complaint to seek remand. *See Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016). If a plaintiff argues that it is possible for him to state a claim against the non-diverse defendant, that possibility must be "non-fanciful" for the case to be remanded. *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1154 (N.D. Cal. 2009).

## ARGUMENT

I. **PLAINTIFF DOES NOT, AND CANNOT, DISPUTE MONSANTO'S EVIDENCE ESTABLISHING THAT HE FRAUDULENTLY JOINED WILBUR-ELLIS NUTRITION/FEED.**

The Notice of Removal presented evidence establishing that Plaintiff does not have any viable claims against Wilbur-Ellis Nutrition/Feed because its products did not cause Plaintiff's alleged injuries. *See* Notice of Removal ¶ 20 (citing Declaration of George Arkoosh ("Arkoosh Declaration") and fraudulent joinder cases). "Wilbur-Ellis Nutrition/Feed is (and has been) in the business of ensuring that animals receive customized, high-quality, dependable nutrients[,]" but that defendant "has never designed, manufactured, distributed, or sold Monsanto Company's Roundup®-branded herbicides or any other herbicides." Arkoosh Decl. ¶ 7.[2]

---

[2] Moreover, Plaintiff alleges exposure to Roundup®-branded herbicides "from August 2009 until August 2016," Compl. ¶ 16, but Wilbur-Ellis Nutrition/Feed did not come into existence as a corporate entity until September 2015, Arkoosh Decl. ¶ 7.

The Remand Motion focuses on Wilbur-Ellis Company and repeats Plaintiff's improper pleading strategy of lumping together two separate companies by repeatedly using the vague term "Wilbur-Ellis" without distinguishing between these two companies.  But Plaintiff does not, and cannot, dispute Monsanto's showing that he fraudulently joined Wilbur-Ellis Nutrition/Feed. Plaintiff presents nothing to rebut the evidence presented in the Notice of Removal that Wilbur-Ellis Nutrition/Feed has never designed, manufactured, distributed, or sold Roundup®-branded herbicides or any other herbicides.

In these circumstances, Plaintiff clearly does not have any viable claims against Wilbur-Ellis Nutrition/Feed because that defendant's products did not cause his alleged injuries.  "Under California law, a plaintiff 'claiming to have been injured by a defective product must prove that the ***defendant's*** product, or some instrumentality under the defendant's control, caused his or her injury.'"  *Kline v. Mentor Worldwide, LLC*, No. 2:19-cv-00877-WBS-KJN, 2019 WL 3245102, at *3 (E.D. Cal. July 19, 2019) (holding that plaintiffs fraudulently joined California defendant that did not design, manufacture, distribute, or sell breast implants that allegedly caused plaintiffs' injuries) (quoting *DiCola v. White Bros. Performance Prods., Inc.*, 158 Cal. App. 666, 677 (2008)) (emphasis added).[3]  Thus, Plaintiff fraudulently joined Wilbur-Ellis Nutrition/Feed, so it does not deprive this Court of diversity jurisdiction and does not require remand.

## II. PLAINTIFF FAILS TO REBUT MONSANTO'S EVIDENCE ESTABLISHING THAT HE FRAUDULENTLY JOINED WILBUR-ELLIS COMPANY.

### A. Monsanto Presented Evidence Establishing That Wilbur-Ellis Company Had No Involvement With Designing, Manufacturing, Distributing, Or Selling The Herbicides That Allegedly Caused Plaintiff's Injuries.

In the Notice of Removal, Monsanto presented evidence establishing that Plaintiff

---

[3] *See also, e.g.*, *Martinez*, 2016 WL 5930271 (holding that California defendant was fraudulently joined because it did not manufacture Mirena and did not distribute ***plaintiff's*** Mirena); *Tucker v. McKesson Corp.*, No. C 10–2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) (holding that California defendant was fraudulently joined because it did not distribute morphine tablets to pharmacy where decedent obtained morphine tablets at issue in lawsuit); *Vu*, 602 F. Supp. 2d at 1154-55 (holding that California defendant was fraudulently joined because she did not market or distribute Children's Tylenol Plus Multi-Symptom Cold medicine); *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) (holding that California defendant was fraudulently joined because plaintiff alleged merely that defendant was a major distributor of Vioxx without connecting defendant to plaintiff's injuries).

fraudulently joined Wilbur-Ellis Company because it had no involvement with designing, manufacturing, distributing, or selling the Roundup®-branded residential-lawn-and-garden herbicides that allegedly caused Plaintiff's injuries.  Glyphosate-based herbicide products (including Monsanto's glyphosate-based herbicides) are designed for and sold to three different markets:  (a) the agricultural market; (b) the residential-lawn-and-garden market; and (c) what is referred to as either the professional market or the industrial, turf, and ornamental ("IT&O") market, which involves herbicide products that are designed for and sold to, for example, landscaping companies, golf courses, schools, or state and local government agencies (to maintain roads, parks, and/or rights-of-way).  Notice of Removal ¶ 22 (citing Declaration of Scott Hushbeck ("Hushbeck Declaration"); Declaration of Steven Gould ("Gould Declaration")).

As established in two declarations submitted by Monsanto, "Wilbur-Ellis Company is (and has been) in the business of distributing and selling Monsanto's glyphosate-based herbicide products for the agricultural market and the professional market[,]" but "Wilbur-Ellis Company is not (and has never been) in the business of selling Monsanto's glyphosate-based herbicides that are designed for the residential-lawn-and-garden market."  Hushbeck Decl. ¶ 7; *see* Gould Decl. ¶ 6.  Thus, "Wilbur-Ellis Company has never played any role in the chain of distribution leading to Monsanto's glyphosate-based, lawn-and-garden herbicides being sold at national retail stores like Home Depot, Lowe's, Target, Walmart, Costco, or Ace Hardware."  Hushbeck Decl. ¶ 7; *see* Gould Decl. ¶ 6.  Moreover, "Wilbur-Ellis Company has never designed or manufactured Monsanto's glyphosate-based herbicides."  Hushbeck Decl. ¶ 9; Gould Decl. ¶ 8.[4]

There is a large gulf between the limited scope of Wilbur-Ellis Company's business related to Monsanto's glyphosate-based herbicides (described above and in Mr. Hushbeck's and Mr. Gould's declarations) and the specific herbicides at issue here based on Plaintiff's allegations.  Plaintiff allegedly used Roundup®-branded herbicides for residential use and not for

---

[4] "Wilbur-Ellis Company is not (and has never been) the sole or exclusive distributor of Monsanto's glyphosate-based herbicides in the State of California."  Hushbeck Decl. ¶ 8; Gould Decl. ¶ 7.  "There are (and have been) other distributors of Monsanto's glyphosate-based herbicides in California."  Gould Decl. ¶ 7.  "Wilbur-Ellis Company has never been the largest distributor of those herbicides in California."  *Id*.

work-related reasons. Compl. ¶ 16. The Remand Motion does not state otherwise; it reiterates his residential-use allegation. Remand Mot. at 1. Thus, based on the fraudulent joinder cases cited above, it is clear that Plaintiff does not have viable claims against Wilbur-Ellis Company because that defendant has never designed or manufactured any of Monsanto's glyphosate-based herbicides – and has never played any role in distributing or selling Monsanto's glyphosate-based, residential-lawn-and-garden herbicides. *See supra* page 5 & note 3 (citing cases).

### B. Plaintiff's Unsupported Allegations And Speculation Fail To Rebut Monsanto's Evidence-Based Showing That Wilbur-Ellis Company Was Fraudulently Joined.

Plaintiff does not dispute that his claims all involve alleged exposure to Monsanto's glyphosate-based, residential-lawn-and-garden herbicides, so he is forced to rely on unsupported allegations and speculation in an effort to evade this Court's jurisdiction. As discussed below, however, Plaintiff's arguments fall well short of rebutting Monsanto's evidence-based showing that Wilbur-Ellis Company was fraudulently joined.

When a removing defendant pierces the pleadings with evidence showing that a non-diverse defendant has been fraudulently joined – as Monsanto did in its Notice of Removal – a plaintiff seeking remand cannot rely on mere allegations or speculation lacking evidentiary support. *See, e.g.*, *Arias*, 2019 WL 484192, at *3 (denying remand motion; plaintiff did not state a claim against the non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder) (emphasis in original); *Feizbakhsh*, 2016 WL 8732296, at *8 (same; plaintiff's "conclusory allegations" were not sufficient to overcome the evidence offered by the removing defendant to establish fraudulent joinder); *Martinez*, 2016 WL 5930271, at *3 (same; plaintiff's "speculation, which is unsupported by any evidence[,]" did not suffice to overcome the evidence presented by the removing defendant); *Vu*, 602 F. Supp. 2d at 1155 (same; accepting the removing defendant's fraudulent joinder showing because plaintiffs did not contest the in-forum defendant's declaration "that she did not market or distribute" the products at issue in the lawsuit).

Thus, Plaintiff's allegations and speculation, which are not supported by any evidence, do not require remand.  *First,* Plaintiff's efforts to conjure up "contradictions" based on snippets pulled from Wilbur-Ellis Company's website, Remand Mot. at 4, fail because they do not contradict the evidence presented in the Notice of Removal regarding the limited scope of Wilbur-Ellis Company's involvement with only certain types of Monsanto's glyphosate-based herbicides.  In fact, the website statements cited by Plaintiff undermine his argument by highlighting that Wilbur-Ellis Company markets to agricultural and professional/IT&O herbicide users, not to residential-lawn-and-garden-herbicide users.  For example, Plaintiff asserts that "Wilbur-Ellis also states that its unique expertise allows it to 'tailor solutions to *every* crop, grower and field,'" Remand Mot. at 4 (quoting website; emphasis added by Plaintiff), but he omits an important part of that sentence.  The complete sentence – "Plus, our established background in *specialty crops* gives us the unique expertise to tailor solutions to every crop, grower, and field." (emphasis added)[5] – obviously does not involve Monsanto's glyphosate-based, residential-lawn-and-garden herbicides (the products allegedly used by Plaintiff).  Instead, that statement is directed at farmers – "grower[s]" – who use Monsanto's glyphosate-based, agricultural herbicides on their "crop[s]" and "field[s]."  Plaintiff also misses the mark by quoting other statements from Wilbur-Ellis Company's website.  He asserts that "Wilbur-Ellis boasts that it is a 'global service leader' in precision *agriculture* technology and products," Remand Mot. at 4 (emphasis added; citation to website omitted), but that statement does not undermine Monsanto's showing that Wilbur-Ellis Company has not had any involvement with Monsanto's glyphosate-based, residential-lawn-and-garden herbicides.  Instead, that statement reinforces the conclusion that Wilbur-Ellis Company markets and sells *agricultural* herbicides.

*Second,* Plaintiff relies on statements made by Wilbur-Ellis Company in two "Statement of Information" filings submitted to California's Secretary of State, *see* Remand Mot. at 5 & Pl.'s Exs. 1 & 2, but – contrary to Plaintiff's argument – these statements do *not* conflict with Monsanto's evidence-based showing that Wilbur-Ellis Company has not had any involvement

---

[5] Wilbur-Ellis Company Website, https://ag.wilburellis.com (last visited January 4, 2021) (attached as Ex. A).

with Monsanto's glyphosate-based, residential-lawn-and-garden herbicides.  One of those statements identified Wilbur-Ellis Company's "type of business" as "TRADE," Pl.'s Ex. 1, and the other statement described it as "DISTR – AGRICULTURAL CHEMICALS," Pl.'s Ex. 2.  These general descriptions do not contradict or conflict with the evidence submitted with the Notice of Removal, which establishes the limited scope of Wilbur-Ellis Company's business regarding Monsanto's glyphosate-based herbicides.  Plaintiff's argument that these "Statement of Information" forms were required to set forth limitations on the scope of Wilbur-Ellis Company's business is unsupported and plainly wrong.  Plaintiff failed to provide to this Court the California Secretary of State's instructions to companies for filling out this form.  Those instructions, for the question/field at issue here, support the general statements made by Wilbur-Ellis Company, *see* Instructions for Completing Form SI-200 ("Briefly describe the general type of business that constitutes the principal business activity of the corporation.") (attached as Ex. B), and contradict Plaintiff's baseless argument that the lack of limitations in the statements filed by Wilbur-Ellis Company lead to the conclusion that this defendant "was quite certainly involved in the distribution chain that distributed Roundup to Plaintiff or to which Plaintiff was exposed," Remand Mot. at 5.[6]  In sum, Wilbur-Ellis Company was not required to include any limitations on the Statement of Information forms discussed above, and Plaintiff's argument to the contrary lacks merit.[7]

---

[6] Those instructions are consistent with the applicable California statutory provision, which requires a corporation to file a "statement of the general type of business that constitutes the principal business activity of the corporation (for example, manufacturer of aircraft; wholesale liquor distributor; or retail department store)."  Cal. Corporations Code § 1502(a)(9).  Plaintiff does not cite any legal authority to support his contention that a company's Statement of Information form is required to describe limitations on the company's business.

[7] Plaintiff relies on one case to support his contention that remand is required due to a purported contradiction between Wilbur-Ellis Company's Statement of Information forms and the evidence submitted in the Notice of Removal, *see* Remand Mot. at 5 (quoting *Vieira v. Mentor Worldwide, LLC*, No. 2:18-cv-06502-AB (PLAx), 2018 WL 4275998 (C.D. Cal. Sept. 7, 2018), but that decision actually undermines Plaintiff's argument.  In *Vieira*, the court ordered remand based on its conclusion that the allegedly fraudulently joined defendant had filed a Statement of Information form that "directly contradict[ed]" the declaration submitted in support of the fraudulent-joinder-removal argument.  *Id.* at *3.  That Statement of Information form described that defendant's "Type of Business" as "Manufacture of Silicone Products," which "directly contradicts [the declarant's] present statement that [defendant] NuSil 'has not . . . manufactured . . . any products.'"  *Id.* (ellipses in original).  Here, by contrast, there is ***no*** contradiction – let

***Third,*** Plaintiff tries to evade the persuasive force of the declarations submitted in support of the Notice of Removal by engaging in sheer speculation about Wilbur-Ellis Company's corporate transactions and then jumping to the unsupported conclusion that this activity raises "a genuine question of fact regarding who Wilbur-Ellis distributes to," Remand Mot. at 6. However, as explained above, this type of speculation is insufficient to support remand in the face of the evidence presented by Monsanto. *See supra* page 7 (citing cases).

### III. PLAINTIFF FAILS TO REBUT MONSANTO'S EVIDENCE ESTABLISHING THAT HE FRAUDULENTLY JOINED CROWN HARDWARE, INC.

#### A. Monsanto Presented Evidence Establishing That Crown Hardware, Inc. Did Not Own The Store That Allegedly Sold The Herbicides That Caused Plaintiff's Injuries And Did Not Have Any Other Involvement With Selling, Designing, Manufacturing, Or Distributing Those Herbicides.

Monsanto's Notice of Removal presented evidence that proves that Plaintiff fraudulently joined Crown Hardware, Inc. because the key factual allegation upon which his claims against that defendant are based – namely, that he was injured by Roundup®-branded herbicides purchased from a Crown Hardware, Inc. store in Davis, California – is clearly incorrect. As established by the declaration of Mark Schulein (Crown Hardware, Inc.'s President and Chief Executive Officer), although there is a hardware store in Davis, California called "Davis Ace Hardware," Crown Hardware, Inc. has never owned that hardware store – and has never owned any other store in Davis. Notice of Removal ¶ 30 (citing Declaration of Mark Schulein ("Schulein Declaration")). In April 2019, the Davis Ace Hardware store underwent a change in ownership, and a company in which Mr. Schulein has an indirect ownership interest – ***not*** Crown Hardware, Inc. – acquired that store in an asset purchase transaction. Schulein Decl. ¶ 7.

In response to Plaintiff's erroneous arguments regarding the Davis Ace Hardware store and Crown Hardware, Inc., Mr. Schulein has submitted a supplemental declaration that provides deal documents for, and additional information about, the April 2019 purchase of the Davis Ace Hardware store. *See* Supplemental Declaration of Mark Schulein ¶¶ 5-13 ("Supplemental

---

alone a ***direct*** contradiction – between the declarations submitted in support of the Notice of Removal and the Statement of Information forms that Wilbur-Ellis Company submitted to the California Secretary of State.

Schulein Declaration") (filed this same date).  Mr. Schulein has had an indirect ownership interest in the Davis Ace Hardware store since April 16, 2019 (but not before that date).  *Id*. ¶ 5.  "That was the closing date of an asset purchase transaction in which a company called Lifestyle Davis LLC acquired the Davis Ace Hardware store."  *Id*.; *see id*. ¶ 9 & Ex. 2 ("General Assignment and Bill of Sale"), Ex. 3 ("Assignment and Assumption Agreement") (citing documents that consummated April 16, 2019 purchase).  Mr. Schulein had and continues to have an indirect ownership interest in Lifestyle Davis LLC.  Suppl. Schulein Decl. ¶ 5.  However, "Crown Hardware, Inc. does not own, and has never owned, any direct or indirect interest in . . . Lifestyle Davis LLC."  *Id*. ¶ 8.

In sum, Crown Hardware, Inc. did not own the Davis Ace Hardware store before the April 16, 2019 asset purchase; did not purchase that store on April 16, 2019; and has never owned that store.  Suppl. Schulein Decl. ¶ 13.  Thus, that defendant did not market or sell the Roundup®-branded herbicides that allegedly injured Plaintiff and did not have any role in, or involvement with, the chain of distribution by which those herbicides got from the point of manufacture to the point of sale at the Davis Ace Hardware store that allegedly sold them to him.  Schulein Decl. ¶ 8.  Moreover, Crown Hardware, Inc. has: (a) never designed, tested, researched, manufactured, or obtained regulatory approval for any Roundup®-branded herbicides; and (b) never had any role in, or involvement with, determining what language should be included in labeling, or what warnings should be provided, for any Roundup®-branded herbicides.  *Id*. ¶ 9.

In light of this evidence, Plaintiff clearly has no viable claims against Crown Hardware, Inc.  *See supra* page 5 & note 3 (citing fraudulent joinder cases).  Therefore, the Court should hold that Plaintiff fraudulently joined Crown Hardware, Inc. and should disregard the claims asserted against that defendant when the Court decides whether Monsanto's removal was proper.

### B. Plaintiff's Unsupported Allegations And Speculation Fail To Rebut Monsanto's Evidence-Based Showing That Crown Hardware, Inc. Was Fraudulently Joined.

Plaintiff does not dispute that his claims against Crown Hardware, Inc. all are based on the allegations that: (a) he was exposed to Roundup®-branded herbicides purchased from the Davis Ace Hardware store; and (b) that Crown Hardware, Inc. owned that store.

However, that second allegation is clearly incorrect because Crown Hardware, Inc. never owned the Davis Ace Hardware store. The Remand Motion fails to present any persuasive arguments or evidence to the contrary. Instead, Plaintiff cobbles together unsupported allegations and speculation that fall well short of rebutting Monsanto's evidence-based showing that Crown Hardware, Inc. never owned the Davis Ace Hardware store.[8]

For example, Plaintiff tries – but fails – to create a factual dispute by arguing that "information published on Crown Hardware, Inc.'s website contradicts Mr. Schulein's assertions and reveals a relationship by representing that, at the very least, Crown Hardware, Inc. employs those individuals who work at Davis Ace Hardware," Remand Mot. at 9 (citing Ex. 9); *see also id*. at 8 (citing Exs. 8-9 and stating that Davis Ace Hardware store job openings are "listed by Crown Ace Hardware on its website"). As established in the Supplemental Schulein Declaration, Plaintiff's argument is based on a fundamental misconception regarding Crown Hardware, Inc.'s involvement in the hiring process for the Davis Ace Hardware store. The two exhibits upon which this argument is based (Pl.'s Exs. 8 & 9) "are print-outs from a website that: (a) lists job openings at the Davis Ace Hardware store, posted by Crown Hardware, Inc. (d/b/a Crown Ace Hardware); and (b) enables applicants to submit on-line applications for those jobs." Suppl. Schulein Decl. ¶ 15. "Crown Hardware, Inc. provides that service for the benefit of the Davis Ace Hardware store (and for other hardware stores in which [Mr. Schulein] ha[s] indirect ownership interests)." *Id*. "As the owner of the Davis Ace Hardware store, Lifestyle Davis LLC pays a fee to Crown Hardware, Inc. for that service." *Id*. "Any applicants hired to work at the Davis Ace Hardware become ***employees of Lifestyle Davis LLC – not employees of Crown Hardware, Inc.***" *Id*. (emphasis added). Thus, "Plaintiff's Exhibit 8 and Exhibit 9 do not contradict or undermine [Mr. Schulein's] statement that Crown Hardware, Inc. has never owned

---

[8] Monsanto's Notice of Removal did not challenge the allegation that Plaintiff was exposed to Roundup®-branded herbicides purchased from the Davis Ace Hardware store. Thus, he misses the point when arguing that the Davis Ace Hardware store sells Roundup®-branded herbicides. *See* Remand Mot. at 8-9 & Ex. 10. The issue here is whether Crown Hardware, Inc. ever owned that store – not whether that store sells Roundup®-branded herbicides. If Crown Hardware, Inc. never owned that store (which is what the evidence establishes), then Plaintiff's argument that the store sells Roundup®-branded herbicides is irrelevant to Monsanto's fraudulent joinder argument and does not provide any basis for this Court to grant the Remand Motion.

the Davis Ace Hardware store." *Id*.  In sum, Plaintiff's argument that Crown Hardware, Inc. employs Davis Ace Hardware store workers is incorrect and does not provide any basis for the Court to grant the Remand Motion.

Plaintiff also misses the mark by arguing that Mr. Schulein is the owner of the Davis Ace Hardware store.  *See* Remand Mot. at 8 (citing Ex. 6).  First, whether **Mr. Schulein** owns that store is irrelevant to the Remand Motion.  He is not a defendant in this case.  The issue here is whether **Crown Hardware, Inc.** has been fraudulently joined.  Second, Plaintiff's argument is factually incorrect, as established by the Supplemental Schulein Declaration.  Although Plaintiff's Exhibit 6 (a print-out from the Ace Hardware Corporation website), identifies Mr. Schulein as the "owner" of the Davis Ace Hardware store (and various other hardware stores), that is because Ace Hardware Corporation prefers to identify individuals – not companies – as "owners" of the hardware stores shown on the Ace Hardware Corporation website.  Suppl. Schulein Decl. ¶ 14.  "As used on that website, the word 'owner' is a colloquial term directed to lay people who access the website; that word is not intended to identify precisely the legal owner of any hardware store." *Id*.  Mr. Schulein has "had an indirect ownership interest in the Davis Ace Hardware store since April 16, 2019, but Davis Lifestyle LLC has been the direct legal owner of the store from that date to the present." *Id*.  Thus, "Plaintiff's Exhibit 6 does not contradict or undermine [Mr. Schulein's] statement that Crown Hardware, Inc. has never owned the Davis Ace Hardware store." *Id*.  In other words, Plaintiff's Exhibit 6 merely shows that **Mr. Schulein** has an ownership interest in that store – which Monsanto did not dispute[9] – but does not show that **Crown Hardware, Inc.** has ever had an ownership interest in that store.

Thus, Plaintiff is left to rely on news articles about the sale of the Davis Ace Hardware store, *see* Remand Mot. at 7-8 (quoting and/or citing Exs. 3-5), but this argument also lacks merit, as established by the Supplemental Schulein Declaration.  For example, a *Yolo County News* article – which stated that "[l]ongtime owner Jennifer Anderson and husband Doby

---

[9] *See* Notice of Removal ¶ 31 (stating that "[a] company in which Mr. Schulein has an indirect ownership interest – not Crown Hardware, Inc. – acquired the Davis Ace Hardware store in April 2019" (citing Schulein Decl. ¶ 7)).

Fleeman have decided to sell the business [the Davis Ace Hardware store] to Mark Schulein and Matt Fales of Crown Hardware, with the deal expected to close in mid-April," Pl.'s Ex. 5 – "correctly reported the basic fact that the Davis Ace Hardware store would be sold but did not correctly identify the name of the company involved in that transaction as the purchaser," Suppl. Schulein Decl. ¶ 16.  In fact, "Lifestyle Davis LLC – not Crown Hardware, Inc. – purchased the Davis Ace Hardware store." *Id*.  "Plaintiff's Exhibit 4, which was based on (and provided a link to) the *Yolo County News* article, repeated the incorrect purchaser name reported in the *Yolo County News* article." Suppl. Schulein Decl. ¶ 16.  The other article cited in the Remand Motion (Pl.'s Ex. 3) "made the same mistake regarding the name of the purchaser of the Davis Ace Hardware store." Suppl. Schulein Decl. ¶ 16.  "In fact, the purchaser was Lifestyle Davis LLC." *Id*.  Accordingly, Plaintiff has failed to rebut Monsanto's evidence-based showing that Crown Hardware, Inc. has never had an ownership interest in the Davis Ace Hardware store.

Even if the Court were to conclude that Plaintiff has created a genuine factual dispute regarding whether Crown Hardware, Inc. owns the Davis Ace Hardware store, the Court nevertheless should hold that Crown Hardware, Inc. has been fraudulently joined because he does not dispute that the purchase of the store occurred in April 2019 – more than two-and-a-half years *after* his alleged use of Roundup®-branded herbicides ended in August 2016, Compl. ¶ 16. Thus, assuming for the sake of argument that the owner of the Davis Ace Hardware store is liable to Plaintiff for selling the Roundup®-branded herbicides that allegedly caused his injuries, any such liability necessarily would arise from acts or omissions that allegedly occurred in or before August 2016.  However, when the purchaser acquired the Davis Ace Hardware store in the April 16, 2019 asset purchase transaction discussed above, the purchaser *did not* acquire from the seller the kind of potential liabilities at issue in the claims asserted against Crown Hardware, Inc. in this lawsuit – namely, potential liabilities for negligence claims, products liability claims, or other litigation claims based on acts or omissions that allegedly occurred before the April 16, 2019 closing date.  *See* Suppl. Schulein Decl. ¶¶ 9-12 & Exs. 2-4.

### IV. PLAINTIFF'S ARGUMENT REGARDING "JOHN DOE" DEFENDANTS IS SQUARELY FORECLOSED BY THE REMOVAL STATUTE.

In a last-ditch effort to evade this Court's jurisdiction, Plaintiff contends that he sued "John Doe" defendants that likely are California residents and therefore remand is required, *see* Remand Mot. at 10, but that argument is squarely foreclosed by a provision in the removal statute. "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names ***shall be disregarded***." 28 U.S.C. § 1441(b)(1) (emphasis added). This provision means what it says. *See, e.g.*, *Caldwell v. State Farm Gen. Ins. Co.*, No. C 16-03479 JSW, 2016 WL 10907158, at *2 (N.D. Cal. Aug. 16, 2016) (denying motion to remand; relying on Section 1441(b)(1) to disregard Doe defendants' citizenship and rejecting argument that they destroyed diversity).

Thus, Section 1441(b)(1) requires this Court to disregard any Doe defendant's citizenship and bars Plaintiff from seeking remand by arguing that Doe defendants are California citizens.

### CONCLUSION

For the foregoing reasons, the Court should deny the Remand Motion.

DATED: January 4, 2021

Respectfully submitted,

/s/ Eric G. Lasker

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-942-5000
Fax: 202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

*Attorneys for Defendant Monsanto Company*