**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: <br><br> *John Pike, et al. v. Monsanto Co., et al.*, <br><br> Case No. 3:20-cv-08192-VC | **SUPPLEMENTAL DECLARATION OF MARK SCHULEIN IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *PIKE* CASE TO STATE COURT** <br><br> Date:       January 28, 2021 <br> Time:      10:00 a.m. <br> Courtroom: 4 |

I, Mark Schulein, declare as follows:

1.  I am over the age of eighteen.  If I were called to testify, I could and would competently testify to the statements set forth below.  This declaration is based on my personal knowledge.

2.  I submit this declaration in support of Monsanto Company's Opposition to Plaintiff's Motion to Remand *Pike* Case to State Court and to supplement my prior declaration (signed November 16, 2020) regarding the hardware store at issue in this lawsuit, "Davis Ace Hardware."  I have reviewed the Motion to Remand filed by Plaintiff John Pike, including the exhibits attached to that motion that discuss Crown Hardware, Inc., the Davis Ace Hardware store, and me.

3.  I am the Chief Executive Officer and President of Crown Hardware, Inc. and have held the position of President since 2004.  I am also on the Board of Directors for Crown Hardware, Inc. and have been a member of that board since 2003.  I have worked at Crown Hardware, Inc. in various positions since 1994.

4.  I have (and have had) indirect ownership interests – through Crown Hardware, Inc. and other companies – in several hardware stores.  Some but not all of those hardware stores are owned by Crown Hardware, Inc.

5.  Since April 16, 2019 (but not before that date), I have had an indirect ownership interest in the Davis Ace Hardware store.  That was the closing date of an asset purchase transaction in which a company called Lifestyle Davis LLC acquired the Davis Ace Hardware store.  I had and continue to have an indirect ownership interest in Lifestyle Davis LLC.

6.  The April 16, 2019 closing date was the culmination of negotiations with the owner of the Davis Ace Hardware store (Davis Ace LLC) that began in 2018.  In December 2018, another company in which I had (and continue to have) an indirect ownership interest,

Lifestyle Hui LLC, entered into an Asset Purchase Agreement for the Davis Ace Hardware store with Davis Ace LLC. That Asset Purchase Agreement is discussed in more detail below.[1]

7. In January 2019, Lifestyle Hui LLC assigned that Asset Purchase Agreement to its sister company, Lifestyle Davis LLC. A true and correct copy of the Assignment of Purchase Agreement is attached as Exhibit 1.

8. Crown Hardware, Inc. does not own, and has never owned, any direct or indirect interest in Lifestyle Hui LLC or Lifestyle Davis LLC.

9. April 16, 2019 was the closing date for Lifestyle Davis LLC's purchase of the Davis Ace Hardware store from Davis Ace LLC. Attached as Exhibit 2 ("General Assignment and Bill of Sale") and Exhibit 3 ("Assignment and Assumption Agreement") are true and correct copies of documents that consummated that asset purchase transaction.

10. In the December 2018 Asset Purchase Agreement discussed above, Section 1.3 identified certain kinds of seller's liabilities ("Assumed Liabilities") that would be acquired by the purchaser, and Section 1.4 specified that the purchaser would not assume or be responsible for any of the seller's other liabilities ("Excluded Liabilities") – including the seller's potential liability for negligence, products liability claims, or other claims asserted in litigation based on acts or omissions that allegedly occurred before the closing date of the purchase. The "Excluded Liabilities" included:

> (e) Any Liability arising from accidents, occurrences, misconduct, negligence, breach of fiduciary duty or statements made or omitted to be made (including libelous or defamatory statements) on or prior to the Closing Date, whether or not covered by workers' compensation or other forms of insurance;
>
> (f) Any Liability arising as a result of any legal or equitable action or judicial or administrative proceeding initiated at any time, to the extent related to any action or omission on or prior to the Closing Date, including any Liability for (i) infringement or misappropriation of any Intellectual Property Rights or any other rights of any Person (including any right of privacy or publicity);

---

[1] That Asset Purchase Agreement included other stores and other companies that owned those stores, but this declaration focuses on the Davis Ace Hardware store because that is the store at issue in this lawsuit.

>   (ii) breach of product warranties; (iii) injury, death, property damage or other losses arising with respect to or caused by Seller Products or the manufacturer or design thereof; or (iv) violations of any Legal Requirements (including federal and state securities laws)

Asset Purchase Agreement, Section 1.4 (true and correct copy attached as Exhibit 4.).[2] Although Section 1.3 of the Asset Purchase Agreement had a catch-all provision stating that "Assumed Liabilities" included "(e) [t]he Liabilities of Seller specifically listed on Schedule 1.3" (Exhibit 4), the parties agreed that there were no Assumed Liabilities that needed to be listed on a separate schedule, so there was no Schedule 1.3 to the Asset Purchase Agreement.

11.  In Section 4.26 ("Product Liability"), the Asset Purchase Agreement stated:

>   The Business is not subject to any Liabilities or Damages arising from any injury to person or property or as a result of ownership, possession or use of any Seller Product manufactured, processed, distributed, shipped or sold prior to the Closing Date. All such Liabilities and Damages are fully covered by product liability insurance or otherwise provided for. Except to the extent set forth on Schedule 4.26(a), to Seller's Knowledge, there are no pending recalls of any Seller Products included in the Purchased Assets, and to Seller's Knowledge, none are threatened or pending, There are no, and within the last twelve (12) months there have not been any, actions, claims or threats thereof related to product liability against or involving Seller or any Seller Products and no such actions, claims or threats have been settled, adjudicated or otherwise disposed of within the last twelve (12) months

Asset Purchase Agreement, Section 4.26(a) (Exhibit 4). The seller did not disclose any pending recalls within the meaning of Section 4.26(a), so there was no Schedule 4.26(a) to the Asset Purchase Agreement.

12.  In my prior declaration, I stated that the April 2019 transaction involving the Davis Ace Hardware store was an asset purchase and that the acquiring company did not assume or acquire any liabilities from the company that sold that store in April 2019. As shown by the attached exhibits, the transaction was an asset purchase. To supplement and correct the record, I need to state that the purchaser did acquire certain liabilities (as set forth in Section 1.3 of the

---

[2] Due to confidentiality concerns, I am attaching relevant excerpts of the Asset Purchase Agreements instead of the entire document. The omitted sections of the Asset Purchase Agreement do not address which seller's liabilities were, or were not, assumed by the purchaser.

Asset Purchase Agreement), but, as discussed above and in Section 1.4 of the Asset Purchase Agreement, the purchaser did not acquire or assume the kind of potential liabilities at issue in the claims asserted against Crown Hardware, Inc. in this lawsuit – namely, potential liabilities for negligence, products liability claims, or other litigation claims based on acts or omissions that allegedly occurred before the April 16, 2019 closing date of the purchase transaction.

13. To sum up, Crown Hardware, Inc. did not own the Davis Ace Hardware store before the April 16, 2019 asset purchase and did not purchase that store on April 16, 2019. Crown Hardware, Inc. has never owned the Davis Ace Hardware store.

14. One of the exhibits to the Motion to Remand (Plaintiff's Exhibit 6) is a print-out from the Ace Hardware Corporation website that identifies me as the "owner" of the Davis Ace Hardware store (and various other hardware stores). Ace Hardware Corporation prefers to identify individuals – not companies – as "owners" of the hardware stores shown on the Ace Hardware Corporation website. As used on that website, the word "owner" is a colloquial term directed to lay people who access the website; that word is not intended to identify precisely the legal owner of any hardware store. As discussed above and in the exhibits attached to this declaration, I have had an indirect ownership interest in the Davis Ace Hardware store since April 16, 2019, but Davis Lifestyle LLC has been the direct legal owner of the store from that date to the present. Plaintiff's Exhibit 6 does not contradict or undermine my statement that Crown Hardware, Inc. has never owned the Davis Ace Hardware store.

15. Other exhibits attached to the Motion to Remand (Plaintiff's Exhibit 8 and Exhibit 9) are print-outs from a website that: (a) lists job openings at the Davis Ace Hardware store, posted by Crown Hardware, Inc. (d/b/a Crown Ace Hardware); and (b) enables applicants to submit on-line applications for those jobs. Crown Hardware, Inc. provides that service for the benefit of the Davis Ace Hardware store (and for other hardware stores in which I have indirect ownership interests). As the owner of the Davis Ace Hardware store, Lifestyle Davis LLC pays a fee to Crown Hardware, Inc. for that service. Any applicants hired to work at the Davis Ace Hardware become employees of Lifestyle Davis LLC – not employees of Crown Hardware, Inc.

Plaintiff's Exhibit 8 and Exhibit 9 do not contradict or undermine my statement that Crown Hardware, Inc. has never owned the Davis Ace Hardware store.

16.    Three exhibits attached to the Motion to Remand (Plaintiff's Exhibits 3-5) are news articles (from March and April 2019) about the sale of the Davis Ace Hardware store. For example, the *Yolo County News* article stated: "Longtime owner Jennifer Anderson and husband Doby Fleeman have decided to sell the business [the Davis Ace Hardware store] to Mark Schulein and Matt Fales of Crown Hardware, with the deal expected to close in mid-April." Plaintiff's Exhibit 5. This article correctly reported the basic fact that the Davis Ace Hardware store would be sold but did not correctly identify the name of the company involved in that transaction as the purchaser. As discussed above and in the exhibits attached to this declaration, Lifestyle Davis LLC – not Crown Hardware, Inc. – purchased the Davis Ace Hardware store. Plaintiff's Exhibit 4, which was based on (and provided a link to) the *Yolo County News* article, repeated the incorrect purchaser name reported in the *Yolo County News* article. The other article attached to the Motion to Remand made the same mistake regarding the name of the purchaser of the Davis Ace Hardware store when it reported that the store was "being sold to Crown Hardware," Plaintiff's Exhibit 3. In fact, the purchaser was Lifestyle Davis LLC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/31/2020 at Huntington Beach, California

Mark Schulein