# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL LABS, INC., MARKETING,
SALES PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

Case No. 19-md-02913-WHO

**CASE MANAGEMENT ORDER 5(A)
ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND**

This Document Relates to:

ALL ACTIONS

**THIS ORDER** is entered to supplement Case Management Order No. 5 (Common

Benefit Order—Timekeeping and Expenses Protocol) entered January 13, 2020 in this litigation

("CMO-5").[1] CMO-5 remains in full force and effect and is hereby supplemented as follows:

      1.      On December 20, 2019, this Court appointed a Plaintiffs' leadership structure.[2]

      2.      On January 13, 2020, this Court entered CMO-5, which sets forth detailed

instructions for the performance of common benefit work, and for the type of work and expenses

that could qualify for potential compensation and reimbursement. Under this authority and with

---

[1] ECF Doc. No. 352.

[2] ECF Doc. No. 341.

this guidance, Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Steering Committee (referred to as the "MDL PSC") and other authorized counsel, have done and will continue to do common benefit work on a contingent basis. The MDL PSC has invested and will continue to invest substantial time and financial resources related to motion practice, discovery, and bellwether trials against many Defendants. This work has and will benefit all Plaintiffs with claims against Defendants related to the subject matter of this MDL.

3. The MDL and *JUUL Labs Product Cases*, JCCP 5052 (hereinafter "JCCP") (collectively referred to as "Lead Actions") are in the process of negotiating a Coordination Order. Plaintiffs' Steering Committee for the MDL and Plaintiffs' Steering Committee for the JCCP (collectively referred to as "PSCs") have been working cooperatively concerning discovery and coordination of the Lead Actions.

4. The Court continues to encourage a cooperative approach by all plaintiffs in federal and state court. To facilitate coordination, this Court anticipates entering a Joint Coordination Order through which work product will be shared between the Lead Actions, state court plaintiffs in other coordinated and independent actions, and presumably the State Attorneys General for their respective cases.

5. On February 18, 2020, the JCCP Court appointed the Plaintiffs' Leadership structure.[3] Co-Lead Counsel for Individual Plaintiffs in the JCCP will seek entry of a similar order ("Parallel Common Benefit Order") from Hon. Ann I. Jones. The goal of the Parallel Common Benefit Order will be to enable a substantially similar system in the JCCP action governing its fees, expenses, common benefit work assignments, and reporting as outlined in this Order. Co-Lead Counsel from the Lead Actions agree that parallel common benefit orders will facilitate cooperation and coordination between the federal and state cases.

6. It is just and appropriate to provide a system of assessment on any settlements and recoveries, to which this substantial effort has contributed, commensurate with common benefit assessments ordered in recent MDLs.

---

[3] *JUUL Labs Product Cases*, JCCP 5052 Case Management Order 1.1.

7.     The Court enters this Order: (1) to avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all the cases by enabling the coordination of the Lead Actions and other state courts; (2) to provide for the equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation (collectively, "Common Benefit Work"); and (3) to enable Plaintiffs' attorneys who wish to obtain the work-product of the PSCs and the work-product of others who perform authorized common benefit work whether in the Lead Actions or in state court (collectively, the "Common Benefit Work Product"), an opportunity to obtain such work product.

8.     The Court is aware that the Lead Actions worked collaboratively to submit a proposal regarding common benefit procedures, as well as the intent of the JCCP leadership for Individual Plaintiffs to seek a Parallel Common Benefit Order, and accordingly enters the provisions applicable to the MDL as set forth below.

## I.     GOVERNING PRINCIPLES—THE COMMON BENEFIT DOCTRINE

9.     This Order is entered to provide for the fair and equitable sharing, among all beneficiaries, of the value of the services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation. This is accomplished by directing Defendants who have appeared in these proceedings, and over whom this Court has exercised jurisdiction, in the event of settlement, verdicts, and/or other recoveries, to either hold back or self-fund a designated percentage of their related settlements. The Court's authority derives from the Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

10.     Courts have properly exercised their inherent case management authority to apply the common benefit doctrine in MDL proceedings. *See In re Cook Medical, Inc., Pelvic Repair Systems*, 365 F. Supp. 3d 685, 695 (MDL No. 2440) (S.D.W.V. 2019) (collecting cases); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash*

1  *Disaster at Florida Everglades on December 29,1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977);

2  *In re Zyprexa Prods. Liab. Litig.* (MDL No. 1596), 467 F. Supp. 2d 256, 265-267 (E.D.N.Y.

3  2009); *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F.Supp.2d 907

4  (N.D. Ohio 2003), *affirmed*, 398 F.3d 778 (6th Cir. 2005).

5        11.     Use of the common benefit doctrine to compensate attorneys who work for the

6  common good of all plaintiffs is necessary for MDLs to be an effective means for the timely and

7  economic resolution of cases. Management of complex MDLs would be impossible without

8  court-appointed counsel. If court-appointed counsel "are to be an effective tool, the court must

9  have the means at its disposal to order appropriate compensation for them. The court's power is

10  illusory if it is dependent upon [court-appointed] counsel's performing the duties desired of them

11  for no additional compensation." *Everglades,* 549 F.2d at 1012. Thus, in consolidated MDL

12  proceedings, it is standard to order that a percentage of all recoveries be contributed to a fund to

13  compensate attorneys who provide work for the common benefit of all plaintiffs. *Manual for*

14  *Complex Litigation (Fourth)* § 20.312 (2004) ("MDL judges generally issue orders directing that

15  defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a

16  general fund to pay national counsel.").

17  **II.**    <u>**APPLICATION AND SCOPE**</u>

18        12.     This Order applies to:

19            a)     All cases or claims now or later subject to the jurisdiction of this Court in

20                    this MDL, regardless of whether the case is resolved while the case is pending before this Court, after a remand from this Court to the transferor

21                    court, or in bankruptcy;[4]

22            b)     All cases or claims, filed or unfiled, in which any counsel associated with any one case filed in or transferred to this MDL has a fee interest;

23

24            c)     Coordinated Actions as that term is defined in an anticipated Coordination Order, to the extent attorneys in those actions also have fee

25

---

26  [4] If a case is determined to be improperly removed to this Court after the Court's consideration of a

27  remand motion and is remanded to the transferor court, the case will not automatically be subject to assessment just by virtue of it having been temporarily venued in this Court. However, if the case

28  received and benefited from the work product of the MDL, it could be assessed, after due consideration by the Court following briefing by the parties and with input from the Common Benefit Special Master.

interests in cases filed or transferred to this MDL, sign the Participation Agreement, or utilize the work product of this MDL;

d) All cases or claims settled pursuant to an MDL-negotiated or supervised settlement agreement; and,

e) All cases or claims of clients of any counsel who signed the Participation Agreement as defined herein, whether the case was filed, unfiled or tolled.

## III.    STATE-FEDERAL COORDINATION

### A.    Coordination with the Consolidated California State Court Litigation

13.    Coordination on discovery and case management between the Lead Actions will be effectuated as set forth in the anticipated Coordination Orders to be entered by this Court and the JCCP Court and otherwise where practicable and appropriate, through cooperation between the leadership counsel for the MDL and the JCCP.

### B.    Establishing of Joint Document Depository

14.    The Court understands that the PSCs have established a joint platform for hosting documents (the "Joint Document Depository"). The Joint Document Depository shall be available for the use of the plaintiffs in this MDL and the JCCP, subject to the terms set forth below, and other attorneys who sign the Participation Agreement.

## IV.    PLAINTIFFS' JUUL FEE AND EXPENSES ACCOUNTS

15.    The MDL Plaintiffs' Liaison Counsel is directed to establish two bank accounts (the "Accounts") to receive and disperse funds provided in this Order (the "Funds"). These Funds will be held subject to the direction of this Court. The first fund shall be designated as the "JUUL Fee Fund" and the second should be designated as "JUUL Expense Fund" respectively. The Court understands that JCCP Leadership for Individual Plaintiffs as set forth above will move to establish two similar JCCP accounts in the Parallel Common Benefit Order.

### A.    Establishing the JUUL Fee and Expense Accounts

16.    The MDL Plaintiffs' Liaison Counsel, in consultation with the MDL PSC, shall identify a Certified Public Accountant to serve as "Administrator" to be appointed by a separate Order who will be directed to oversee the Accounts and to receive and disburse funds in the

1    event of settlements or verdicts as provided in this Order and any subsequent Orders.  The

2    Accounts will be held subject to the direction of this Court.

3             **B.       Administration of the JUUL Fee and Expense Accounts**

4             17.      The Accounts shall be established at a commercial bank that the Administrator

5    shall select in consultation with the MDL PSC.  The commercial bank shall be the "Escrow

6    Agent."

7             18.      No disbursement shall be made from the Accounts other than by Order of this

8    Court pursuant to a petition requesting an award of fees and reimbursement of expenses (a

9    "Petition").  No Petition shall be filed without leave of Court.  No person or entity has any right

10   to make any claim against any of the amounts held in the Accounts except to the extent this

11   Court  issues an Order directing the disbursement of any amounts to such a person or entity. The

12   rights of any such person or entity are limited to the amount ordered by the Court to be so

13   disbursed to that particular person or entity.

14            19.      The amounts held in the Accounts shall not constitute the separate property of any

15   person or entity or be subject to garnishment or attachment for the debts of any person or entity.

16   However, any specific amounts ordered by the Court to be disbursed to a person or entity, upon

17   the entry of such an Order, can then be subject to garnishment or attachment, limited to the

18   amount of the disbursement so ordered. These limitations do not preclude a person or entity from

19   transferring, assigning, or creating a security interest in potential disbursements from the

20   Accounts to which such person or entity may be entitled as determined by the Court, if permitted

21   by applicable state laws and if subject to the conditions and contingencies of this Order.

22   However, no notice of lien or security interest in potential disbursements or of a transfer or

23   assignment of a right of potential disbursements shall be effective unless and until it is filed in

24   this Court and served upon the Administrator.

25            20.      In connection with the administrative services, the Administrator shall:

26            a)       Have all such power and authority over the Accounts as necessary or
                        convenient to exercise the authority granted in this Order;
27

28            b)       Keep and report periodically to the Court, to the extent requested by
                        the Court, an accounting of the funds received, maintained and

disbursed relating to the Accounts;

    c)    Have the authority to instruct the Escrow Agent with respect to permitted investments of the Accounts;

    d)    Make decisions and take action with respect to treatment of the Accounts for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating reports, maintaining and reporting relating to the Accounts and their income, if any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the Administrator deems appropriate;

    e)    Out of the assets of the Accounts, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

    f)    Have the authority to procure, upon consultation with the MDL PSC, professional accounting, legal and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

    g)    Have the authority to adopt and implement reasonable procedures consistent with this Order and in consultation with the MDL PSC.

21. Unless otherwise agreed to by Defendants and the MDL PSC, details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed by the Administrator to the MDL PSC, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. The Administrator shall, however, on a quarterly basis provide statements to the MDL Co-Lead counsel and the Courts showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

## C.    Requirements of the Escrow Agent

22. The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation

1  Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian or

2  trustee with respect to funds it holds.

3      23.    The Administrator shall consider, in designating the Escrow Agent and in

4  procuring professional services, the charges that the Escrow Agent or provider of professional

5  services will impose for its actions and the ability of the Escrow Agent or provider of

6  professional services to undertake the tasks called for with efficiency and responsiveness.

7      24.    The Escrow Agent shall not acquire or hold for longer than 90 days, any debt

8  securities, certificates or investments unless such instruments are a U.S. Treasury Bill, U.S.

9  Treasury Money Market, U.S. Government Money Market or similar type of account guaranteed

10 by the United States or an agency thereof, including an FDIC-Insured Account. The U.S.

11 Treasury Money Market or U.S. Government Money Market must be registered under the

12 Investment Company Act of 1940, as amended. In determining investments to be held by the

13 Escrow Agent, primary regard shall be given by the Escrow Agent to safety of principal.

14     25.    The reasonable fees and reasonable expenses of the Administrator and Escrow

15 Agent shall be paid by the MDL PSC. The Administrator and Escrow Agent shall each provide

16 to the MDL PSC their statements for their reasonable fees and reasonable expenses charged on a

17 monthly basis. When this Court authorizes the filing of a Petition, the reasonable fees and

18 expenses of the Administrator and Escrow Agent that were paid by the MDL PSC may be

19 included as items for reimbursement from the Accounts. The Petition shall include copies of the

20 statements of the Administrator and Escrow Agent that had been submitted on a monthly basis to

21 the MDL PSC to support the request for reimbursement of such payments made by the MDL

22 PSC for which reimbursement is requested.

23 **V.    APPOINTMENT OF THE SPECIAL MASTER FOR COMMON BENEFIT REVIEW AND DISPUTE RESOLUTION**

24

25     26.    The Lead Actions have advised the Court that they have reached an agreement

26 that Retired Judge Gail A. Andler, formerly of the Orange County Superior Court Complex

27 Department, presently with the mediation group JAMS in Irvine, California, would be an

28 appropriate special master to audit reported common benefit time and costs, and to resolve any

common benefit disputes that may arise between any parties authorized to submit common benefit time and or expenses (the "Common Benefit Special Master"). The Court finds that Judge Andler is well-qualified to perform these tasks. Accordingly, the Court appoints Judge Gail A. Andler as Common Benefit Special Master to perform the necessary case time and cost management functions pursuant to CMO-5, this Order, and any amendments. The Court will issue a separate Order regarding this appointment pursuant to Federal Rule of Civil Procedure 53.

27.     The MDL PSC, in consultation with the Common Benefit Special Master and the JCCP leadership, may choose to retain a vendor to provide an electronic platform for reporting of common benefit time and costs. The Common Benefit Special Master shall provide quarterly reports to the MDL Co-Leads and the JCCP leadership as to her review of the common benefit time and cost submissions. Within thirty days of each report being provided to the MDL Co-Leads, the MDL Co-Leads shall submit a report to the Court including the Common Benefit Special Master's findings as well as any matters that the Co-Leads believe merit the Court's attention. Because of the nature of the information contained in this submission, it may be made *ex parte* and will not be submitted to Defense Counsel or posted on any docket.

## IV.    PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING COUNSEL

28.     An agreement attached hereto as **Exhibit A** (the "Participation Agreement") is approved by this Court for signature by attorneys for the purposes set forth below.

29.     The Participation Agreement can be entered into by plaintiffs' attorneys on a voluntary basis. The Participation Agreement is a private and cooperative agreement between the MDL PSC and plaintiffs' attorneys only. It is not an agreement with any Defendants.

30.     There is no need for an attorney who already has a case filed in or transferred to this Court to sign the Participation Agreement, because they are automatically subject to the Common Benefit Orders CMO-5 and CMO-5(a), and any amendments (unless they met the criteria of a remand for wrongful removal as set forth in footnote 3) with regard to all cases in

1   which they have a fee interest, regardless of whether any of their other cases are filed in other

2   jurisdictions, or not yet filed.

3        31.    Plaintiffs' attorneys who execute the Participation Agreement are hereinafter

4   referred to as "Participating Counsel." Plaintiffs' attorneys who do not execute the Participation

5   Agreement and who are not deemed signatories to the Participation Agreement, or are otherwise

6   not bound to common benefit assessments pursuant to CMO-5 and CMO5(a), and any

7   amendments are hereinafter referred to as "Non-Participating Counsel."

8        32.    All counsel for Coordinated Actions must sign the Participation Agreement in

9   order to obtain MDL Common Benefit Work Product, and if otherwise authorized, to submit for

10  common benefit time and costs.

11       33.    Participating Counsel who execute the Participation Agreement shall be entitled

12  to access to the Common Benefit Work Product for use in all of the cases or claims of their

13  clients, whether the case or claim has been filed or not, and if filed, for use in any court in which

14  it was filed even if not filed in this MDL, and for use for the benefit of non-filed claims,

15  including any for which a tolling agreement exists. All claims or cases of a counsel who has

16  executed the Participation Agreement shall be assessed whether the claim or case has or had not

17  been filed, and all claims or cases in which a counsel who has executed the Participation

18  Agreement has a fee interest shall be assessed.

19       34.    As detailed above, this Court understands that the JCCP leadership for Individual

20  Plaintiffs intends to seek entry of a Parallel Common Benefit Order as soon as practicable that

21  will apply to counsel with cases pending in the JCCP, including those not otherwise subject to

22  this Order.  This Court also recognizes, however, that court functions at the Los Angeles

23  Superior Court are limited at this time due to the ongoing Covid-19 pandemic, and that it may be

24  some time before a Parallel order is entered.  In the meantime, if attorneys from the JCCP wish

25  to access and submit time and expenses for Common Benefit Work—for example, document

26  coding in the Joint Document Depository, or engage in other cooperative work—they may do so

27  by signing the Participation Agreement, or by coordinating with the MDL PSC (and utilizing the

28  Common Benefit Special Master as necessary) to reach interim agreements.

35.     Non-Participating Counsel, who do not execute the Participation Agreement and who are not deemed to have executed the Participation Agreement, or who are not subject to a Parallel common benefit order or interim agreement with the MDL PSC, shall have no right of access to the Common Benefit Work Product. However, in the event it is determined that such counsel in any fashion benefitted from the Common Benefit Work Product or the administrative functions of the PSCs, then all cases and claims of clients of such counsel, whether filed or not, shall be subject to the assessment described in this Order. It is deemed that the fair liquidated damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment percentage(s) set by this Order. The Court will also consider an application by the MDL PSC for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement or use of the Common Benefit Work Product.

36.     The PSCs may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients represented or in which they have a fee interest whether the case is filed or not or on a tolling agreement or not, to facilitate the PSCs' ability to keep track of all cases and claims that are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court, and those who sign the Participation Agreement, must comply with such a request within 30 days of the request.

**VI.     ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS**

    **A.     Assessment Allocation**

37.     Early Participating Counsel and Late Participating Counsel

    a.     "Early Participating Counsel" include any counsel with cases filed in a Lead Action, or any counsel who enters into the Participation Agreement within 60 days of the entry of the Order or 60 days of their first case being docketed in a Coordinated Action, or any other jurisdiction working cooperatively with the Lead Actions (whichever date is later).  For Early Participating Counsel, the assessment shall be a combined seven percent 7% (5% for fees and 2% percent for costs).

    b.     "Late Participating Counsel" include any counsel who enters into the

1    Participation Agreement 60 days or later after the entry of this Order or 60 days or later after

2    their first case being docketed in a Coordinated Action, or any jurisdiction working

3    cooperatively with the Lead Actions (whichever date is later). For Late Participating Counsel,

4    the assessment shall be a combined 10% (8% for fees and 2% percent for costs). Exceptions

5    may be made for Public Entities and School Districts, who may require additional time and

6    process for consultation and approval from certain California public entities, and such

7    exceptions will allow for Early Participation assessment rates.

8            c.      Early Participating Counsel and Late Participating Counsel together are

9    referred to as "Participating Counsel."

10           38.     The MDL and (proposed) JCCP assessments represent a hold back pursuant to *In*

11   *re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered

12   in any way unless each of the following occurs: (1) the PSCs are consulted and provided an

13   opportunity to be heard at a formally announced meeting prior to the filing of any motion to

14   change the assessment amount; (2) the PSCs approve the proposed change to the assessment by a

15   majority vote of each PSC; (3) a noticed motion (including notice to Defendants' Liaison

16   Counsel) with an opportunity to be heard is granted by each Lead Action Court as to its

17   respective common benefit order, (4) all Early and Late Participating Counsel receive emailed or

18   mailed communication of such motion and (5) this Court, upon good cause shown, amends this

19   Order. The PSCs agree and understand that JCCP Co-Lead Counsel for Public Entities and

20   School Districts will be given opportunity to object in the event certain public entities do not

21   agree to this assessment or an increase in assessments.

22       **B.      Calculating the Assessment**

23           39.     For any attorney subject to an assessment under the terms of this Order, the

24   assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims.

25           40.     A Gross Monetary Recovery occurs when a plaintiff agrees or has agreed—for

26   monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim (a

27   "Settlement") or, with or without trial, recover a judgment for monetary damages or other

28   monetary relief, including compensatory, and/or abatement costs and/or punitive damages (a

"Judgment"), with respect to any JUUL-related claims (individual or class), including but not limited to the private, public, or government entity plaintiffs (including cities, counties, school districts, Indian tribes, state attorney generals, and participating States).

41.  The Gross Monetary Recovery:

   a.  Excludes court costs that are to be paid by Defendant(s); and,

   b.  Includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim or payments for future abatement costs.

### C.  Defendants' Obligations

42.  Defendants and their counsel shall not distribute any Settlement or Judgment proceeds to any counsel or plaintiff until after (1) Defendants' counsel notifies the MDL PSC Liaison Counsel Sarah London, JCCP Co-Lead Counsel, and the Common Benefit Special Master in writing of the existence of a settlement and the name of the individual plaintiff's attorney (without disclosing the amount of the settlement); (2) MDL PSC Liaison Counsel Sarah London consults JCCP Co-Lead Counsel if necessary to ascertain if the attorney or his/her firm is a firm subject to an assessment;  and (3) the PSCs have advised Defendants' counsel in writing whether or not the individual plaintiff's attorney's cases are subject to an assessment and the amount (stated as a percentage of the recovery) of the assessment pursuant to this Order. Any of the Defendants' counsel shall be permitted to share this information with the MDL PSC Liaison Counsel and JCCP Co-Lead Counsel, who shall otherwise keep this information confidential.

43.  For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Accounts based on the allocations set forth in paragraph 37 above as a credit against the Settlement or Judgment.  No orders of dismissal of any Plaintiff's claim, subject to this Order, shall be entered unless accompanied by a certificate of Plaintiff's and Defendants' counsel that the assessment, where applicable, will be withheld and will be deposited into the Accounts at the same time the settlement proceeds are paid to settling counsel.  If for any reason the assessment is not or has not been so withheld, the Plaintiff and

his/her/their counsel are jointly responsible for paying the assessment into the Accounts promptly.

44.     Upon payment of the assessment into the Accounts, Defendants, the PSCs, and its individual members shall be released from any and all liability to any person, attorney, or claimant with respect to the assessment placed into the Accounts. Any person, attorney, or claimant allegedly aggrieved by an assessment pursuant to this Order shall seek recourse as against the Accounts only, provided however, that notice and an opportunity to be heard shall be given to both the Defendants and the PSCs.

45.     This Order shall in no way be read to affect or otherwise encumber any Defendants' obligation to pay attorneys' fees and costs pursuant to fee shifting statutes, if any, that may apply in this case.

**D.     Other Rights**

46.     Nothing in this Order is intended to impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court nor otherwise interfere with public entities' rights to, and exercise of, control in their respective cases.

**VII.     COMMON BENEFIT WORK**

**A.     Qualified Common Benefit Work Eligible for Reimbursement**

47.     Only PSCs' counsel or their designees and Participating Counsel are eligible for reimbursement for time and efforts expended for the Common Benefit. Participating Counsel shall be eligible to seek reimbursement for time and efforts expended for Common Benefit Work, if said time and efforts are:

a.     for the common benefit;

b.     appropriately authorized;

c.     timely submitted;

d.     certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

e.     approved by the Common Benefit Special Master, pursuant to her designated authority as set forth in a subsequent order.

- 14 -

48.     There is no guarantee that all of the time submitted by any firm will be compensated and the hourly rate for the work that is compensated is not guaranteed.  If counsel is a member of either the MDL PSC or the JCCP PSC and fails to timely submit capital contributions as may be requested by Co-Lead Counsel in that Lead Action, such counsel and members of his/her firm shall not be allowed to submit common benefit time and expenses, or in the discretion of the Co-Lead Counsel for the Lead Actions, a submission may be made with an explanation of why the capital contributions stopped, and the PSCs with the guidance of the Common Benefit Special Master and the Courts, may, after review and consultation, for good cause, agree to an award that is substantially reduced.

49.     All submissions and applications for common benefit fees and/or costs, whether made by counsel performing such work in the Lead Actions or in state courts, must comply with the procedures, requirements and guidelines of CMO-5, as amended, or the corresponding JCCP Order. Counsel performing common benefit work in courts other than the Lead Actions, who have not previously submitted their time and costs under CMO-5, shall have 45 days to do so from the date that counsel signs the Participation Agreement. However, submitted time must have been contemporaneously recorded, well-documented, and not reconstructed after the fact, and if not pre-authorized, show good cause for the late submission.  Attorneys authorized to do work by Co-Lead Counsel in the Lead Actions shall submit their time to the Common Benefit Special Master (with copies to their respective Co-Leads of the MDL or JCCP) in the form of spreadsheets and documentation to be specified by the Common Benefit Special Master. If an attorney applies for common benefit fees or costs in this Court, all of the cases in which the attorney and/or his or her law firm are counsel of record are subject to the full assessment.[5] This Court retains the discretion to amend or supplement CMO-5, and this Order, as necessary and appropriate to reflect ongoing developments in the litigation.

**B.     Compensable Common Benefit Work Defined**

50.     As the litigation progresses and Common Benefit Work Product is generated, Co-Lead Counsel of the MDL will assign their Participating Counsel with Common Benefit Work as

---

[5] By making application for common benefit fees or costs, an attorney is automatically eligible to access Common Benefit Work Product outlined in the Participation Agreement.

1    is necessary. In the MDL, Common Benefit Work shall include only work specifically assigned

2    by the MDL Co-Lead Counsel, and Co-Chairs of the MDL Committees with the approval of the

3    MDL Co-Lead Counsel.

4          51.    The Court understands the JCCP leadership for Individual Plaintiffs intends to

5    seek entry of a Parallel Common Benefit Order for the authority to assign Common Benefit

6    Work in that proceeding, and encourages the Lead Actions to collaborate on the exercise of such

7    authority to avoid the duplication of time and effort. Disputes between the MDL and JCCP shall

8    be resolved by the Common Benefit Special Master in the first instance, and if necessary, by the

9    Courts.  More details regarding the role of the Common Benefit Special Master in resolving

10   disputes will follow in a subsequent order.

11         52.    Time spent on unauthorized work will not be compensable.

12         53.    Duplicative work may not be approved for compensation.

13         54.    The provisions of CMO-5, Section II(A) are incorporated herein as if set forth in

14   their entirety.

15         55.    Common Benefit Work includes all authorized work performed for the benefit of

16   many plaintiffs in a JUUL case, including pre-trial matters, discovery, trial preparation, trial, a

17   potential settlement process, and all other work that advances this litigation to conclusion.

18   Common Benefit Work includes, but is not limited, to the following authorized activities:

19   maintenance and working in the Joint Document Depository; factual investigation and research;

20   legal research; conducting authorized discovery (e.g. reviewing, indexing, and coding

21   documents); preparation of timelines/chronologies; drafting and filing pleadings, briefs, pre-trial

22   motions and orders; preparation of deposition cuts that may be used in a case set for trial;

23   preparation of the trial exhibits; assembly of the scientific articles; approved PSC activities;

24   work of the MDL Discovery, Law and Briefing, and Science Committee Co-Chairs; other MDL

25   committee work authorized by Co-Lead Counsel; expert development authorized by the Co-

26   Chairs of the Science Committee or Co-Lead Counsel; authorized preparation for and

27   participation at state and federal court hearings; preparation for and taking of depositions of

28

1  Defendants and third-party witnesses, and experts; and activities associated with preparation for

2  trial and the trial of any cases designated by the PSC.

3  **C.  Common Benefit Timekeeping Protocols**

4  56.  The provision of CMO-5, Section II(B) is incorporated herein as if set forth in

5  their entirety.

6  **VIII.  COMMON BENEFIT EXPENSES**

7  **A.  Qualified Common Benefit Expenses Eligible for Reimbursement**

8  57.  In order to be eligible for reimbursement, expenses ("Common Benefit

9  Expenses") must meet the requirements set forth in CMO-5, Section II(C) which are

10  incorporated herein as if set forth in their entirety.  Specifically, said expenses must be:

11  a.  for the common benefit;

12  b.  appropriately authorized, as set forth in this Order, CMO-5,
   and the Participation Agreement;

13

14  c.  certified by a senior partner of the submitting firm each month
   attesting to the accuracy and correctness of the monthly
15  submission; and,

16  d.  approved by the Common Benefit Special Master pursuant to
   her designated authority as set forth in a subsequent order.

17

18  **B.  Compensable Common Expenses Defined**

19  58.  Common Benefit Expenses shall include only authorized and necessary expenses

20  specifically approved by the MDL Co-Lead Counsel, or Co-Chairs of the MDL Committees with

21  the approval of the MDL Co-Lead Counsel. Expenses incurred by the MDL are also subject to

22  the type and kind and limits of CMO-5. In the event of a dispute between the MDL and JCCP

23  counsel as to an expense, it shall be submitted to the Common Benefit Special Master in the first

24  instance, and if necessary, ultimately resolved by the Courts.

25  **C.  Common Benefit Expense Protocols**

26  59.  The provision of CMO-5 Section II(C), as amended is incorporated herein as if

27  set forth in their entirety.

28

## IX.    **FURTHER PROCEEDINGS AND CONTINUING JURISDICTION**

60.    The payment of attorneys' fees and expenses for any class action settlement or recovery is governed by Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules. This Order is without prejudice to such other assessments of or awards of fees and costs as may be ordered by this Court under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between attorneys and clients.

61.    The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

62.    If all parties to a future settlement agree that exceptional circumstances warrant a departure from the holdback obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from the Court.

63.    Any disputes or requests for relief from or modification of this Order will be decided by the Court in the exercise of its continuing jurisdiction over the parties, and authority and discretion under the common benefit doctrine.

**IT IS SO ORDERED,**

DATED: May 27, 2020

_____
HONORABLE WILLIAM H. ORRICK

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION <br><br> _____ <br><br> This Document Relates to: <br><br> ALL ACTIONS | Case No. 19-md-02913-WHO <br><br> **EXHIBIT A TO CASE MANAGEMENT ORDER 5(A) ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND** |

## <u>MDL 2913 COMMON BENEFIT PARTICIPATION AGREEMENT</u>

**THIS AGREEMENT** is made this _____ day of _____, 20__, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Northern District of California in MDL 2913 and _____ **[Name of the Attorney and their Law Firm Executing the Agreement on behalf of themselves and their Law Firm]** (the "Participating Counsel").

**WHEREAS**, the United States District Court for the Northern District of California (MDL 2913) has appointed the following to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use, marketing, and sales of JUUL ("JUUL"):

| Attorney | Firm | Leadership |
|---|---|---|
| Sarah London | Lieff Cabraser Heimann & Bernstein LLP | Co-lead counsel/ Liaison/PSC |
| Dean Kawamoto | Keller Rohrback LLP | Co-lead counsel/PSC |
| Dena Sharp | Girard Sharp LLP | Co-lead counsel/PSC |
| Ellen Relkin | Weitz & Luxenberg | Co-lead counsel/PSC |
| Khaldoun Baghdadi | Walkup Melodia Kelly & Schoenberger | Fed/State court liaison/PSC |
| Leslie LaMacchia | Pulaski Law Firm, PLLC | Fed/State court liaison/PSC |
| Thomas P. Cartmell | Wagstaff & Cartmell, LLP | Gov. Entity Liaison/PSC |
| Adam Gutride | Gutride Safier LLP | PSC |
| Esfand Nafisi | Migliaccio & Rathod LLP | PSC |
| Michelle Drake | Berger Montague PC | PSC |
| Joseph VanZandt | Beasley, Allen, Crow, Methvin, Portis & Miles | PSC |
| Erin Dickinson | Crueger Dickinson LLC | PSC |
| Michael Weinkowitz | Levin Sedran & Berman LLP | PSC |
| Rachel Abrams | Levin Simes Abrams, LLP | PSC |
| Emily Jeffcott | Morgan & Morgan | PSC |
| Matt Schultz | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor | PSC |
| Kristine Kraft | Schlichter, Bogard & Denton, LLP | PSC |
| Jonathan Gdanski | Schlesinger Law Offices | PSC |
| Sabita Soneji | Tycko & Zavareei LLP | PSC |
| Brad Honnold | Goza & Honnold LLC | PSC |
| Mikal Watts | Watts Guerra LLP | PSC |

**WHEREAS**, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed and are in the process of further developing work product and a record that will be valuable in all proceedings and benefits all plaintiffs alleging injuries or damage caused by JUUL ("Common Benefit Work Product");

**WHEREAS**, Participating Counsel wants to acquire the Common Benefit Work Product and establish a framework for an amicable, working relationship with the PSC for the mutual benefit of their clients, and for those attorneys who perform work authorized, audited and approved as common benefit to seek common benefit compensation;

**NOW THEREFORE**, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1  **I.  SCOPE OF AGREEMENT**

2  **A.  Purpose**

3  1.  This Participation Agreement is a private cooperative agreement between

4  plaintiffs' attorneys to share Common Benefit Work Product with regard to all injuries and

5  damages arising from JUUL-related claims by Participating Counsel, pursuant to Case

6  Management Order No. 5(a) Establishing Common Benefit Fee and Expense Fund ("CMO-

7  5(a)" or any amendment). Plaintiffs' attorneys who execute this Participation Agreement are

8  entitled to receive the Common Benefit Work Product created by those attorneys who have

9  also executed or have been deemed to have executed the Participation Agreement.

10  2.  The intent of this Participation Agreement is to establish, secure, and supervise

11  a fund to promote the purposes and policies of the common benefit doctrine and provide a

12  source for equitable payment of services rendered and costs incurred for the benefit of

13  plaintiffs.

14  3.  There is no need for an attorney who already has a case filed in or transferred to

15  the MDL to sign the Participation Agreement, because they are automatically subject to the

16  Common Benefit Orders CMO-5 and CMO-5(a), and any amendments with regard to all cases

17  in which they have a fee interest, regardless of whether any of their other cases are filed in

18  other jurisdictions, or not yet filed.

19  4.  For those cases that have been transferred to the MDL, but are subject to a

20  remand motion, if a case is determined to have been improperly removed to this Court after the

21  Court's consideration of the remand motion and is remanded to the transferor court, that case

22  will not automatically be subject to Common Benefit Assessment by virtue of it having been

23  temporarily venued in this Court. However, if the case received and benefited from the work

24  product of the MDL, it could be assessed, after due consideration by the Court following

25  briefing by the parties and with input from the Common Benefit Special Master.

26  5.  The PSC anticipates that this Court may enter a Coordination Order that

27  contemplates work sharing between the PSC and counsel in other actions involving the same

28  subject matter as the MDL pending in other courts that agree to be bound by the same

- 2 -

Coordination Order (the "Coordinated Actions"). Plaintiffs' attorneys with any cases filed in a Coordinated Action shall, to the extent they utilize the Common Benefit Work Product, be subject to and deemed to have signed this Participation Agreement for all cases they have filed in any jurisdiction, and all unfiled or if applicable, tolled cases.

**B.** **Rights and Obligations of Participating Counsel**

6. Upon execution of this Participation Agreement, the PSC will provide access to Participating Counsel the Common Benefit Work Product defined in the Court's CMO-5 and 5(a), and any amendments, including access to the document depository as well as all the coding and summarizing of the documents in the depository, access to all deposition transcripts and summaries, deposition cuts for the purpose of trial, medical literature library, legal briefing and research, and, as deemed appropriate by PSC leadership, expert witness work product. Participating Counsel agree that all JUUL cases, as defined in paragraph 9 below, in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this Participation Agreement.

7. The PSC may periodically request that Participating Counsel produce a list setting forth the name of each JUUL client represented by them (whether filed or unfiled) or in which they have any interest in an attorneys' fee, together with the Court and docket number (if filed) of each such case. Unless otherwise specified, Participating Counsel shall provide such a list within 30 days of a request to Sarah London, Lieff Cabraser Heimann & Bernstein LLP at JUULParticipatingCounselCaseList@lchb.com.

**II. AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY**

8. Subject to the terms of this Participation Agreement and the terms of CMO-5 and 5(a), and any amendments, all Plaintiffs and their attorneys who either agree or have agreed—for a monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to JUUL-related claims or cases are subject to an assessment of the gross settlement amount.

- 3 -

### A.     **Gross Monetary Recovery Defined**

9.     "Gross Monetary Recovery" includes any and all amounts paid to Plaintiffs by Defendants through a settlement or pursuant to a judgment. Gross Monetary Recovery (a) excludes court costs that are to be paid by the defendant; and (b) includes the present value of any fixed and certain payments to be made in the future. The assessment shall apply to all of the claims or cases of the attorneys who are subject to CMO-5(a) that are pending in the MDL or state court as well as any unfiled or if applicable, tolled claims or cases of such attorneys in which they are counsel or co-counsel, or in which they have any interest.

### B.     **Assessment Amount**

10.     **Early Participation vs. Late Participation** – For any counsel who enters into the Participation Agreement within 60 days of the entry of CMO-5(a) or 60 days of their first case being docketed in any Coordinated Action or jurisdiction working cooperatively with the Lead Actions (MDL and JCCP) (whichever date is later), the assessment shall be a combined 7% as computed and determined below ("Early Participation"). For any counsel who enters into the Participation Agreement after 60 days of the entry of this Order or 60 days of their first case being docketed in any Coordinated Action or jurisdiction working cooperatively with the Lead Actions (MDL and JCCP) (whichever date is later), the assessment shall be a combined 10% as computed and determined below ("Late Participation"). Exceptions may be made for Public Entities and School Districts, who may require additional time and process for consultation and approval from certain California public entities, and such exceptions will allow for Early Participation assessment rates.

      a.     Early Participation – The assessment amount for Early Participation Counsel shall be 7% (5% for common benefit attorneys' fees and 2% for costs).

      b.     Late Participation – The assessment amount for Late Participation Counsel shall be 10% (8% for common benefit attorneys' fees and 2% for costs).

11.     This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab.*

- 4 -

1    *Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered in any way unless each

2    of the following occurs: (1) the PSCs of the MDL and JCCP are consulted and provided an

3    opportunity to be heard at a formally announced meeting prior to the filing of any motion to

4    change the assessment amount; (2) the PSCs of the MDL and JCCP approve the proposed

5    change to the assessment by a majority vote of each PSC; (3) a noticed motion (including

6    notice to Defendants' Liaison Counsel) with an opportunity to be heard is granted by each

7    Lead Action Court as to its respective common benefit order, (4) all Early and Late

8    Participating Counsel receive emailed or mailed communication of such motion and (5) this

9    Court, upon good cause shown, amends this Order. The PSCs of the MDL and JCCP agree and

10    understand that JCCP Co-Lead Counsel for Public Entities and School Districts will be given

11    opportunity to object in the event certain public entities do not agree to this assessment or an

12    increase in assessments.

13            **C.**      **Covered Claims or Cases**

14          12.    Counsel who sign (or who are deemed to have signed) this Participation

15    Agreement agree that the assessment shall apply to all unfiled claims or cases, tolled (if

16    applicable) claims or cases, and claims or cases filed in other courts in which they have any fee

17    interest. Covered claims or cases include all JUUL related claims or cases or actions brought

18    by individuals or any private, public, or government entity plaintiffs (including Cities,

19    Counties, School Districts, Indian Tribes and States).

20            **D.**      **Attorney Fee Lien**

21          13.    With respect to each client who they represent in connection with related claims

22    or cases that are filed or pending in any court, unfiled or subject to a tolling agreement,

23    consistent with CMO-5(a) establishing the common benefit JUUL Fee and JUUL Expense

24    Accounts, each Participating Counsel agrees to have Defendants deposit or cause to be

25    deposited into the JUUL Fee and JUUL Expense Accounts a percentage proportion of the

26    gross amount recovered by each such client that is equal to the assessment amount.

27          14.    In the event Defendants do not deposit such funds into the JUUL Fee and

28    Expense Accounts, Plaintiff and Plaintiff's Participating Counsel are required to so inform the

MDL Plaintiffs Liaison Counsel, Sarah London and JCCP Co-Lead Counsel, and shall deposit or cause to be deposited in the JUUL Fee and JUUL Expense Accounts the percentage proportion of the gross amount recovered by each such client that is equal to the assessment amount.

15.     Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant the MDL PSC a lien upon and a security interest in any fee generated as a result of any recovery by any client who they represent in connection with any JUUL-induced injury, nuisance and marketing and sales practices, to the full extent permitted by law, in order to secure payment in accordance with the provisions of this Participation Agreement.

16.     Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and perfect this lien and/or security interest.

## III.     COMMON BENEFIT EXPENSES

### A.     Qualified Expenses Eligible for Reimbursement

17.     In order to be eligible for reimbursement, expenses ("Common Benefit Expenses") must meet the requirements set forth in CMO-5, Section II(C) which are incorporated herein as if set forth in their entirety.  Specifically, said expenses must be:

      a.  for the common benefit;

      b.  appropriately authorized, as set forth in CMO-5 and CMO-5(a);

      c.  certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

      d.  approved by the Common Benefit Special Master pursuant to her designated authority as set forth in a subsequent order.

### B.     Expense Reporting Protocol

18.     Participating Counsel must submit expenses consistent with CMO-5 and CMO-5(a) and any amendments thereto. Expenses incurred on matters common to all claimants in MDL 2913 and authorized by MDL Co-Lead Counsel, Co-Chairs of the MDL Committees with the approval of MDL Co-Lead Counsel may be submitted for reimbursement.

19. No costs spent on developing or processing individual issues in any case for an individual client will be considered or should be submitted, unless that case is an authorized bellwether trial case.

## IV. COMMON BENEFIT WORK

### A. Qualified Common Benefit Work Eligible for Reimbursement

20. In order to be eligible for reimbursement time and efforts expended for common benefit work must meet the requirements set forth in CMO-5 and CMO-5(a) and any amendments thereto.

21. Participating Counsel shall be eligible to seek reimbursement for time and efforts expended for Common Benefit Work, if said time and efforts are:

    a. for the common benefit;

    b. appropriately authorized;

    c. timely submitted;

    d. certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

    **e.** approved by the Common Benefit Special Master, pursuant to her designated authority as set forth in a subsequent order.

### B. Authorization

22. Time spent on matters common to all claimants in MDL 2913 must be assigned by MDL Co-Lead Counsel, or the co-Chairs of the MDL Committees with the approval of MDL Co-Lead Counsel to be eligible for consideration for common benefit. No time spent on developing or processing individual issues in any case for an individual client will be considered or should be submitted, nor will time spent on unauthorized and unapproved work.

23. For examples of authorized and unauthorized work please review CMO-5 and CMO 5(a) and any amendments thereto.

- 7 -

### C.     **Common-Benefit Time Keeping Protocols**

24.     As set forth in CMO-5 and CMO-5(a) and any amendments thereto, all time must be accurately and contemporaneously maintained. Participating Counsel agrees to follow the time-keeping protocols set forth in CMO-5 and CMO-5(a) and any amendments thereto.

25.     Counsel performing common benefit work in courts other than the Lead Actions, who have not previously submitted their time and costs under CMO-5, shall have 45 days to do so from the date of signing the Participation Agreement. However, submitted time must have been contemporaneously recorded, well-documented, and not reconstructed after the fact, and if not pre-authorized, show good cause for the late submission.

26.     Upon order of the Court, payments may be made from the JUUL Fee and JUUL Expense Accounts to Participating Counsel who provide services or incur expenses for the joint and common benefit of plaintiffs. Attorneys eligible are limited to the PSC, other MDL counsel called upon to assist in performing the PSC responsibilities, other Participating Counsel called upon by the MDL leadership to assist in performing their responsibilities, and JCCP counsel subject to a parallel common benefit order.

27.     **No Individual Rights to the Funds.** No party or attorney has any individual right to any of funds from the assessment except to the extent of amounts directed to be disbursed to such person by Order of this Court. These funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.

28.     **Court Approval**. The amounts deposited in the JUUL Fee and JUUL Expense Accounts shall be available for distribution only to attorneys who have performed professional services or incurred expenses for the common benefit. The MDL Court retains jurisdiction over the common benefit award. Each Participating Counsel who does authorized common benefit work has the right to present their claim(s) for compensation prior to any recommendation to the Court.

- 8 -

29.     **Other Fee Assessments.** This Participation Agreement is without prejudice to such other assessments of or awards of fees and costs as may be ordered by any Court, including under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between attorneys and clients.

30.     **Fee Committee**. Participating Counsel understands that at a later date the Lead Action Courts may appoint a Fee and Expense Committee to make recommendations on how funds in the JUUL Fee and JUUL Expense Accounts should be distributed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## AGREEMENT TO BE BOUND

Dated: _____, 20_____      _____

**Firm Name:**
**Attorney's Name:**

I hereby agree to be a **Participating Counsel** and certify that I am signing this Participation Agreement voluntarily. I also certify that I have the authority and power to bind my law firm into this Participation Agreement.

**ON BEHALF OF THE PLAINTIFFS' STEERING COMMITTEE:**

Dated: _____, 20___      _____

SARAH LONDON
*Plaintiffs' Liaison Counsel*

- 10 -