UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | MDL No. 2471<br><br>Case No. 3:16-md-02741-VC<br><br>**DECLARATION OF MATTHEW L. GARRETSON REGARDING THE LIEN RESOLUTION PROGRAM** |

## DECLARATION OF MATTHEW L. GARRETSON

I, Matthew L. Garretson, do hereby depose and declare as follows:

1. I am the co-founder of Wolf Garretson, LLC and am an attorney licensed to practice law in the State of Ohio (Ohio Supreme Court, Atty. No. 0070029). My Curriculum Vitae and summary of professional experience are attached to my Declaration Regarding the Diagnostic Accessibility Grant Program as Exhibit A. I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify competently thereto.

2. Wolf Garretson, LLC provides design, coordination and oversight of complex administrative operations and claims processing in settlement programs related to individuals or businesses that experience a catastrophic event. More specifically, Jason Wolf (co-founder of Wolf Garretson, LLC) and I have designed and overseen the lien resolution program for numerous nationally prominent settlement programs related to personal injuries following exposure to a product or an environmental hazard. In such settlements, we established and directed a lien resolution program to efficiently and uniformly identify, verify and resolve the claimants' or class members' healthcare liens (such as those asserted by Medicare, Medicaid, and other governmental agencies and/or private health insurance providers) prior to disbursement

of claimants' or class members' compensation awards. A representative list of these engagements follows, and a more comprehensive list is contained in Exhibit A to the DAGP Declaration:

    a.    *PG&E Fire Victim Trust,* Docket No. 8053 (N.D. Ca.);

    b.    *Actos Products Liability Litigation*, MDL Docket No. 2299 (W.D. La.);

    c.    *Deepwater Horizon Litigation*, MDL Docket No. 2179 (E.D. La.);

    d.    *Avandia Marketing, Sales Practices, and Product Liability Litigation*, MDL Docket No. 1871 (E.D. Pa.);

    e.    *Vioxx Product Liability Litigation*, MDL Docket No. 1657 (E.D. La.);

    f.    *Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL Docket No. 1708 (D. Minn.);

    g.    *Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL Docket No. 1726 (D. Minn.); and

    h.    *Zyprexa Products Liability Litigation*, MDL Docket No. 1596 (E.D.N.Y.).

    3.    These programs my colleagues and I have designed and overseen have resolved hundreds of thousands of healthcare obligations for claimants. To underscore this experience and success in comparable programs, in the Zyprexa litigation referenced above, nearly 15 years ago the Honorable Jack B. Weinstein stated, "(t)he settlement techniques utilized in the instant litigation may provide a model for the handling of Medicare and Medicaid liens in future actions on a uniform, national basis" (Memorandum Order & Judgment Regarding Liens and Disbursement Procedures 04-MD-1596). Judge Weinstein's instincts were correct: in almost all comparable settlements involving the scale of this present matter, a lien resolution program

utilizing our design has been approved to uniformly and efficiently resolve claimants' or class members' healthcare obligations.

4. Achieving successful outcomes in lien resolution programs for nearly two decades has required me and my colleagues to coordinate with scores of public and private entities, including the Centers for Medicare & Medicaid Services ("**CMS**"); all 53 state and territory Medicaid agencies; several other governmental healthcare payers, such as the Veterans Affairs, TRICARE, and Indian Health Services; and private healthcare providers and insurers and their recovery contractors. We have developed strong and established relationships with each of these entities and groups. We are confident the same success will be achieved in this present program.

5. My colleagues and I have spent considerable time reviewing and editing Article XVI the Class Action Settlement Agreement containing the conditions and procedures Class Members must follow in order to apply for and receive Compensation Awards. We have had extensive discussions with the parties to ensure the written agreement provides the Lien Administrator with a clear mandate and authority to execute the operating procedures required for the identification, verification and resolution of healthcare liens in an efficient manner consistent with all applicable statutory requirements. In sum, the program is "state-of-the-art", as it is not over-engineered; it is not burdensome for Class Members; it does not create obligations where none otherwise exist; it seamlessly integrates with the Claims Administrator's processes; and it contains all the safeguards to ensure that similarly situated Class Members receive similar and appropriate treatment.

6. Based upon the foregoing, I believe that Wolf Garretson, LLC is ready and well qualified to serve as the Lien Administrator for the above-captioned Class Action Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of February, 2021, in Park City, Utah.

_____
Matthew L. Garretson