Paul J. Napoli (NY 2513141)
Hunter J. Shkolnik (NY 2031458)
NAPOLI SHKOLNIK, PLLC
360 Lexington Avenue
New York, New York 10017
pnapoli@nsprlaw.com
hunter@napolilaw.com
Phone: (212) 397-1000
Fax: (312) 610-5680

Christopher L. Schnieders (KS 22434)
NAPOLI SHKOLNIK, PLLC
6731 W. 121st Street, Suite 201
Overland Park, KS 66209
cschnieders@napolilaw.com
Phone: (212) 397-1000
Fax: (312) 610-5680

Thomas C. Goldstein (MD 9512120307)
Eric F. Citron (MD 1608240002)
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
tgoldstein@goldsteinrussell.com
ecitron@goldsteinrussell.com
Telephone: 202-362-0636
Fax: 866-574-2033

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>**ALL CASES** | MDL 2741<br><br>Case No. 16-md-02741-VC<br><br>HON. VINCE CHHABRIA<br><br>**OPPOSITION TO MOTION TO AMEND PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE (Doc. No. 12394)**<br><br>Hearing date: March 3, 2021<br>Time: 1:00 PM |

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS………………………………………..…………………….....  i

TABLE OF AUTHORITIES……………………………..…………………………….... ii

I.   INTRODUCTION…………………………………………………………………. 1

II.  ARGUMENT AND AUTHORITY………………………………………………….. 2

III. CONCLUSION……………………………………..……………………………... 15

## TABLE OF AUTHORITIES

Cases                                                                                                                   Page

*Favish v. Office of Indep. Couns.*, 217 F.3d 1168 (9th Cir. 2000)……………………………..… 2

*Hartland v. Alaska Airlines,* 544 F.2d 992 (9th Cir. 1976)…………………………………....... 1-5

*In re Avandia Marketing, Sales Practices & Product Liability,*
617 F. App'x 136 (3d Cir. 2015)……………………………………………………………….. 10-11, 14

*In re Baycol Prod.*, 2004 WL 1058105 (D. Minn. May 3, 2004)………………………………… 9

*In re Genetically Modified Rice Litigation* (*Rice I*), 764 F.3d 864 (8th Cir. 2014)…… 4, 5, 7, 8, 15

*In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170 (S.D.N.Y. 2020)………. 14-15

*In re Lidoderm Antitrust Litig.*, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017)…………………. 9

*In re Showa Denko K.K. L-Tryptophan Product Liability Litigation-II,*
953 F.2d 162 (4th Cir. 1992)……………………………………………………………………… 7-9, 15

*In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 2165341 (D. Kan. May 8, 2015)…………… 9

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994)……………………...………. 11, 12

*Younger v. Harris*, 401 U.S. 37 (1971)……………………………………………………………. 8

## I. INTRODUCTION

The brief responds to the recent motion by Plaintiffs' Co-Lead Counsel to supplement this Court's Pretrial Order No. 12 ("PTO-12"). That motion seeks a common-benefit holdback of 8.25% from a group currently defined in PTO 12 to include "all plaintiffs or other claimants from … non-MDL 2741 proceedings and their counsel who voluntarily submit to this Court's jurisdiction or agree to be bound by the terms of this Order in return for MDL work product." *See* Dkt. No. 12394 (Jan. 14, 2021) ("Mot.") at 2; PTO 12 at 4. In response, this Court already issued an order *sua sponte* requesting answers to specific questions, among them whether "the Court [should] consider anew the universe of cases that should be subject to a hold-back?" and whether "it [should] include state court cases or only federal cases?" *See* Order, Dkt. No. 12463 (Jan. 26, 2021) at 2. We doubt that, as presently written, the definition in PTO 12 covers *any* of undersigned counsel's cases—including non-MDL federal cases and even cases within the MDL.[1] But the purpose of this brief is to make particularly clear that—absent a voluntary contractual obligation undertaken a party or its counsel—this Court lacks the power to require a holdback from a non-federal case.

Co-Lead Counsel have done great work for their clients and have been handsomely compensated for it. Other counsel have thus explained that the requested holdback is unnecessary and excessive, and we join those arguments as well. But the more important point here is that there is no jurisdictional hook for this Court to require a holdback from cases outside this Court, particularly if they are not in federal court at all. In particular, the Court cannot derive that power from the presence of the defendant in the MDL Court or from our appearance as representatives for

---

[1] Undersigned counsel did not have a client's case consolidated into the MDL until September 18, 2017—more than seven months *after* entry of PTO 12. Accordingly, neither counsel nor any of their clients agreed to the terms of this Order, to "voluntarily submit to this Court's jurisdiction," or "to be bound by the terms of this Order in return for MDL work product." Indeed, we have never signed any participation agreement with Co-Lead Counsel whatsoever.

1

a small minority of our clients after they were transferred here. The situation might well be different if (1) we had voluntarily entered into a participation agreement with Co-Lead Counsel and (2) that agreement was incorporated into an order of this Court. But in the absence of either of those conditions—let alone both—this Court has no power over outside cases or controversies, let alone cases or controversies that otherwise fall outside of federal subject-matter jurisdiction.

## II.     ARGUMENT AND AUTHORITY

### A.     The Court Has No Jurisdiction To Enter An Order Compelling Holdbacks from State-Court Cases[2]

Co-Lead Counsel's most extraordinary request asks this Court to do something it cannot possibly have the jurisdiction to do: namely, to order the withholding of funds from state cases. Co-Lead Counsel identify no source of jurisdiction for such an order, and there is none. The state cases they ask this Court to reach out and tax are not only cases or controversies outside this Court, but outside the federal courts entirely, and neither Congress nor the Constitution suggests any basis on which this Court's power could reach that far. Accordingly, this Court lacks subject-matter jurisdiction to enter such an order.

1.     As an initial matter, the closest controlling case on this issue is a Ninth Circuit decision rejecting a very similar effort by MDL counsel on jurisdictional grounds. In *Hartland v. Alaska Airlines*, a plane crash led to state and federal court actions in several jurisdictions in multiple states. 544 F.2d 992, 994 (9th Cir. 1976). Much like the MDL here, the JPML transferred the federal cases to the Northern District of California for pretrial proceedings. *Id.* When the defendant attempted to settle with two firms—one representing a client who had not yet filed any action, and

---

[2] This Brief focuses on jurisdictional elements, but undersigned counsel concurs with other counsels' briefs related to the unreasonableness of the requested holdback and joins in those arguments. *See, e.g.*, *Opposition of Category 3 Objectors*.

the other a client in state court—the district judge ordered that those firms contribute to a common-benefit fund in the MDL. Neither firm had signed the common-benefit participation agreement attached to the district court's pretrial order. *Id.* at 996-99. And the Ninth Circuit thus concluded that this order far exceeded the power of the MDL court.

In fact, the Court of Appeals went so far as to enter a writ of mandamus, calling the attempt a "usurpation of power by the District Court." 544 F.2d at 1001. The analysis on this issue is relatively limited in part because the Ninth Circuit seemed to think it obvious that there was no jurisdictional basis for such an order. Instead, much of the reasoning was centered on whether the district court's orders were so egregious that the appeal could be *sua sponte* converted into one seeking mandamus, allowing the Court to bypass appellate procedural issues and correct the district court's error. The Ninth Circuit said yes, noting that "the District Court had not even a semblance of jurisdiction—original, ancillary or pendent—to order anything or anybody, and least of all to compel lawyers who were not parties to the action," to pay "into a fund." *Id.*[3] In his concurrence, Judge Wallace agreed that the case "present[ed] exceptional circumstances amounting to a judicial usurpation of power" that could be corrected by mandamus, even though the appellants had not originally sought mandamus relief. *Id.* at 1003 (Wallace, J., concurring).

This decision controls here; neither we nor our state-court clients are "parties to the action" before this Court. Indeed, the only arguable distinction is that—perhaps unlike the attorneys in *Hartland*—we have appeared in the MDL as *representatives* for *other* clients in a very small minority of our cases. But that does not make us "parties" to any "action" before the Court. *See, e.g.*, *Favish v. Office of Indep. Couns.*, 217 F.3d 1168, 1171 (9th Cir. 2000) (holding that plaintiff

---

[3] This language technically refers only to the "case" in which the settlement preceded the filing of any action. But the court of appeals granted mandamus equally as to both cases at issue and seemed equally convinced that district court jurisdiction was obviously wanting in both.

was not estopped from bringing FOIA claim despite previously acting as counsel in a case pursuing the same claim because acting as counsel did not make plaintiff a party to the prior action); *see also infra* Part B (discussing cases, *not presented here*, in which attorneys have signed common-benefit agreements incorporated into a court order). *Cf. Hartland*, 544 F.2d at 1001 (distinguishing between parties and counsel in holding that district court "had not even a semblance of jurisdiction … to order anything or anybody, and least of all to *compel lawyers who were not parties* to the action to pay … into a fund") (emphasis added).[4] We would not ordinarily say that attorneys are subject to the general jurisdiction of a court simply because they appear as representatives of a party in an action before that tribunal; for example, this Court would not have any jurisdiction (let alone subject-matter jurisdiction) over a dispute between a New Hampshire firm and its landlord simply because that firm was representing another client in this case. And so there is no path available to Co-Lead Counsel to escape the jurisdictional holding of *Hartland*.

    2.    Accordingly, other circuits in similar cases have reached the same conclusion with analysis that is even more explicitly controlling here. Most notably, in one recent case, the Eighth Circuit held that jurisdiction was lacking for such an order under circumstances *exactly* like those here—where counsel that appeared in the MDL had clients both inside and outside the MDL. In *In re Genetically Modified Rice Litigation* (*Rice I*), the lead plaintiffs' counsel in the MDL, "on behalf of all common benefit attorneys," appealed "the district court's determination that it lacked jurisdiction to order holdbacks from state plaintiffs' recoveries." 764 F.3d 864, 873 (8th Cir. 2014). But the court of appeals agreed with the district court and affirmed.

---

[4] Indeed, this might not be a distinction at all. Although *Hartland* does not say so explicitly, the attorneys in the state-court case at issue in *Hartland* likely *were* before the MDL court, because their client had brought a parallel case against the federal government that *had* been consolidated into the MDL. 544 F.2d at 997-98.

That decision's reasoning is squarely on point. The Eighth Circuit explained that, "[a]lthough district courts have discretion in orchestrating and conducting multi-district litigation," a JPML order consolidating cases before an MDL court is "merely procedural and does not expand the jurisdiction of the district court." 764 F.3d at 873 (quotation marks omitted). "Thus, notwithstanding 28 U.S.C. §1407, the district court does not have the power to order parties in cases not before it to contribute to the Fund." *Id.* at 874. Notably the Eighth Circuit relied for that proposition on the Ninth Circuit's decision in *Hartland*, described above. *See id.* (citing *Hartland*, 544 F.2d at 1001). And the Eighth Circuit then continued by explicitly holding that, "[e]ven if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the MDL defendant]," because "state-court cases, related or not, are not before the district court." *Id.* And it was of no matter to the court "that the state-court plaintiffs' counsel benefited from the MDL leadership group's work," because "equity is insufficient to overcome limitations on federal jurisdiction." *Id.* at 874.

So too here. Even assuming (counterfactually) that we or our state-court clients have "benefited from the MDL leadership group's work," "state plaintiffs' *attorneys* participat[ing] in the MDL" do not give confer jurisdiction on this Court over "state-court cases, related or not," because a "district court overseeing [an] MDL does not have authority over separate disputes between state-court *plaintiffs* and [the MDL defendant]." *Rice I*, 764 F.3d at 873-74. Simply put, there is no source of power this Court could use to impose and enforce a tax on a sum awarded to those state-court plaintiffs to compensate attorneys they did not hire for doing work in a case they did not join that just happens to arise from the same underlying set of facts.

The text of the Constitution is also relevant here. It extends the "judicial power of the United States" to a certain set of "cases and controversies," none of which are dependent on the identity of a defendant corporation alone, much less the *attorneys* who happen to be representing a party. Nor does the Constitution mention jurisdiction over cases or controversies that are related to "cases or controversies" otherwise within the federal judicial power. Put another way, a "case" that is otherwise a purely state-court dispute and does not involve diverse parties or federal questions has no other way to be brought within the federal judicial power under Article III, because that power only extends to certain kinds of "cases or controversies," not certain corporations or mass-tort events—much less certain law firms. There is thus no constitutional basis for a federal court to reach into a state court "case" in the way Co-Lead Counsel request.

In addition to lacking any firm jurisdictional basis in federal law, precedent, or the text of the constitution, exercising power over state-court cases or settlements on the basis of the plaintiffs' attorneys being before the MDL court in other cases would lead to bad incentives and perverse results. It is easy to foresee attorneys dropping federal cases—or refusing to file diversity cases at all—in order to avoid creating a narrow jurisdictional hook for lead MDL lawyers to demand approximately 25% of their fees on a much larger portfolio of state suits. It would also massively raise the stakes of JPML tagalong orders, which are neither meant nor designed to be litigated to the hilt. It is likewise easy to foresee all manner of wasteful and otherwise unnecessary efforts to swap plaintiffs among firms or create formalistic business separations among otherwise allied attorneys to avoid such a technical source of jurisdiction. And so this Court would be wise to avoid endorsing the exercise of jurisdiction on this basis, even if it were allowed (which it is not).

3.   It might be tempting to believe that the holdbacks "need not be levied on the state-court plaintiffs themselves, but rather may be withheld by [the MDL defendant] (a party before the

district court),'" as the lead plaintiffs' counsel argued in *Rice I*. *See* 764 F.3d at 874. But the Eighth Circuit roundly and rightly rejected that argument as well, again because "state-court cases, related or not, are not before the district court." *Id.* This argument suffers from the same defects noted above under the text of the Constitution.

Likewise, the Fourth Circuit has also held that there is no jurisdiction to order holdbacks in non-MDL settlements on the basis that the MDL defendant is a party before the district court. In *In re Showa Denko K.K. L-Tryptophan Product Liability Litigation-II*, the district court entered a holdback order "attempt[ing] to reach not only plaintiffs in cases pending in the multi-district litigation, but also plaintiffs in federal cases not transferred to the multidistrict litigation, plaintiffs in some 683 pending state cases, and approximately 180 claimants known to [the defendant] who ha[d] not yet filed suit in any court." 953 F.2d 162, 164 (4th Cir. 1992). The district court sought to enforce its order "by requiring [the defendant] to 'certify' that the assessments have been paid by plaintiffs and claimants whenever it settles or pays a verdict in a case or discloses discovery materials generated in the multi-district litigation." *Id.* The enforcement mechanism—requiring the defendant "to 'certify' that the assessments have been paid '[a]t the close of any case by settlement, verdict or otherwise'"—forbid "any party to 'furnish to any non-MDL plaintiff any product of the MDL discovery or permit its use' until the assessments ha[d] been paid." *Id.* at 166. And the upshot, according to the court, was "to exact the assessments [from the defendant] if it wishes to settle, pay a verdict[,] or even share its discovery materials which may be considered the 'product of the MDL discovery' with any plaintiff or claimant not before the court." *Id.*

The Fourth Circuit rejected this approach in terms. It explained that such an order created a very concrete form of federal overreach into state-court cases otherwise outside its jurisdiction. Notably, enforcing such an order against the defendant "ha[d] the very real potential of interfering

7

with discovery proceedings in state court, raising questions of conflict with the policy of comity between federal and state courts underlying *Younger v. Harris*, 401 U.S. 37, 43-44, (1971)." *Id.* (also citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13-14 (1987) (holding that the principles of federalism enumerated in *Younger* preclude federal court from enjoining the enforcement of a state court judgment pending the disposition of state appeals)). That is because there would be no way to order the defendant to exact such an assessment before providing state-court discovery without essentially asserting the power to enjoin the discovery orders of state courts in the cases before them. Those same concerns would apply here if this Court attempted to enforce such an order through Bayer.[5]

And in language the Eighth Circuit would eventually cite, *see Rice I*, 764 F.3d at 873-74, the Fourth Circuit reasoned that although "a district court needs to have broad discretion in coordinating and administering multi-district litigation," the "authority for consolidating cases on the order of the judicial panel on multi-district litigation … is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." 953 F.2d at 165. Accordingly, "a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power." *Id.* at 165-66. And so, while the district court

---

[5]  Notably, the identical concerns would arise if a federal MDL court were to order a lawyer for a state-court plaintiff to do or not do certain things in that state-court case based on the attorney's representation of a *different* client in the MDL. But the same would not necessarily be true if the *same* client had filed both federal and state cases, and the federal case was consolidated into the MDL. As the Eighth Circuit recognized in *In re Genetically Modified Rice Litigation* (*Rice II*), 835 822, 828 (8th Cir. 2016), where a plaintiff has "'voluntarily entered the litigation' and sought a federal forum by filing a federal complaint and asserting third-party claims in the consolidated federal proceedings," the MDL court may have "jurisdiction to enter any orders regarding [that plaintiff] that are consistent with the authority of a transferee court in centralized multidistrict litigation." *Id.* But that situation is not presented here.

8

tried to "compel[] contributions from plaintiffs in state or federal litigation who are not before the court and by claimants who have chosen not to litigate but to compromise their claims outside of the court," the "district court simply has no power to extend the obligations of its order to them." *Id.* at 166.

4.  As against these very on point court of appeals authorities, we aware of *no case* in *any* court holding to the contrary. Instead, those district courts that have been asked to enter such an order using either the defendant or the state-court plaintiffs' attorneys as the sole jurisdictional hook have all rejected doing so. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017) (rejecting argument that jurisdiction over defendant means court had "jurisdiction over the *recoveries* belonging to opt-outs who are not before" the MDL court"); *In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 2165341, at *3 (D. Kan. May 8, 2015) (same, and also rejecting argument that district court could "exercise jurisdiction over the attorneys (from whose shares the assessments are taken) because those attorneys have cases" in the MDL, because that "would effectively be exerting … authority over parties in cases not before" the court, and the parties had "offered no basis or authority for such an exercise of jurisdiction"); *In re Baycol Prod.*, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004) (holding that MDL court did not have jurisdiction over plaintiffs "who ha[d] not previously submitted to its jurisdiction").

**B.  Any Power A Court Might Have To Enter Such An Order Would Have To Derive From An Attorney Agreement That Does Not Exist Here.**

To our knowledge, the only cases that even approach the result Co-Lead Counsel are asking for involve two conditions, neither of which are present here. Orders of holdbacks from state-court cases have occasionally been approved where (1) the attorneys involved in the state cases had signed a voluntary participation agreement in the MDL, and (2) that agreement was incorporated into an order entered by the MDL court. Those conditions create a close jurisdictional question about the

MDL court's ancillary jurisdiction over what is, in essence, a contract dispute between the parties to the participation agreement. But in the absence of *both* conditions, the question is not close, and this Court need decide no more to answer the question presented here.

1. The leading case on such a situation is an unpublished decision that is quite explicit in relying on *both* of the conditions above for its approval of the district court's common-benefit order, and its reasoning thus ultimately supports our argument here. In *In re Avandia Marketing, Sales Practices & Product Liability*, the Third Circuit addressed a challenge to the district court's authority to extract holdbacks from a firm with cases both in state court and before the MDL. 617 F. App'x 136, 137-38 (3d Cir. 2015). But that firm had signed an "Attorney Participation Agreement" with the MDL plaintiffs' steering committee, in which it agreed to pay a portion of the recovery on its clients' claims arising from the same transactions and occurrences into a litigation expense fund in exchange for the use of the steering committee's litigation work product. *Id.* at 138. A dispute arose only when that firm settled all of its various clients' claims and then refused to pay the holdback in the state court cases. And in that context, the district court ordered that the defendant make the payments out of the settlement proceeds, the settling plaintiff attorneys objected that the district court lacked jurisdiction to do so, and the Third Circuit affirmed. *Id.*

The key point, however, is that the court of appeals located the jurisdiction to enter such an order solely in the agreement that the recalcitrant firm had signed and the incorporation of that agreement into an earlier order of the district court. It thus "*agree[d]* with [the plaintiff firm] that *had* the District Court simply ordered the firm, as total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have exceeded its jurisdiction." 617 F. App'x at 141 (emphasis added). The court recognized, however, that there remained a "proper question" about whether "the District Court properly exercise[d] jurisdiction to

enforce the contract [the firm] made with the Plaintiffs' Steering Committee." *Id.* And on *that* question alone, the court of appeals ultimately found that there was a proper source of jurisdiction to adjudicate and enter relief respecting the contract dispute.

Importantly, however, the Third Circuit went a step beyond just relying on the agreement itself to reach that conclusion, and instead emphasized that the district court had "'incorporated' the agreement into [an] order" that it entered earlier in the MDL. 617 F. App'x at 142. On that basis, the Third Circuit held that "[w]hen a district court incorporates the terms of an agreement into a court order, 'a breach of the agreement would be a violation of the order.'" 617 F. App'x at 142 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381 (1994)). And "[b]ecause a district court has jurisdiction to determine whether one of its orders has been violated," the court of appeals reasoned "it may adjudicate whether an agreement incorporated into a court order has been breached." *Id.* "Thus," the court concluded, "if the District Court incorporated [the firm's] Attorney Participation Agreement into [the MDL order], it had jurisdiction to determine whether [the firm] breached that agreement and, if so, to remedy that breach." *Id.*

In other words, "[t]he agreement itself [wa]s not the source of the District Court's authority." 617 F. App'x at 143. Rather, "[b]ecause it was within the District Court's power to issue an order governing how to compensate the Steering Committee for its work and because [the firm's] Attorney Participation Agreement was incorporated into that order, the District Court had jurisdiction to adjudicate whether [the firm] breached the Attorney Participation Agreement and thereby violated [MDL order]." *Id.* at 143-44. The Third Circuit's holding thus expressly noted that it did *not* "decide whether, in the absence of [the MDL order], the District Court could exercise jurisdiction over [the firm's] agreement with the Steering Committee"—perhaps on the basis that it was "a court-appointed and court-supervised entity." *Id.* at 144 n.6. Instead, the Third Circuit held only that

jurisdiction over what was essentially a breach-of-contract action—a state-law dispute that otherwise would likely lie outside any federal court's subject-matter jurisdiction—could be derived from the breach of the district court's order incorporating the relevant contract.

Here, there is *neither* an agreement nor an order embodying it from this Court. There is accordingly a double lack of any jurisdictional basis to make an order requiring holdbacks from state-court cases here, and this Court need say no more to decide this case.

2. That said, the answer to the question the Third Circuit refused to answer is almost certainly "no." In the absence of a court order embodying an agreement among attorneys, such a dispute would be a pure breach-of-contract claim, and in relatively parallel circumstances, the Supreme Court has explicitly held that the enforcement of such a claim is "for state courts, unless there is some independent basis for federal jurisdiction." *See Kokkonen*, 511 U.S. at 382. In that case, the Court held that, in a "suit involv[ing] a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit," ancillary jurisdiction did not extend to such a claim in the federal court where that earlier proceeding had been dismissed, because "the parties' obligation to comply with the terms of the settlement agreement had [not] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. Accordingly, *if* we had merely signed an agreement with Co-Lead Counsel regarding state-court cases (and we have not done even that), that might permit a contract action in state court. But it would not give this federal court the power to decide an action over which it did not have some other basis for federal jurisdiction.

Moreover, this Court certainly cannot decide such an "action" through the filing of a *motion* in a related case. To seek a remedy for breach of a contract (rather than a court order), Co-Lead

12

Counsel need to file a *complaint* that establishes the court's venue, subject-matter jurisdiction, and personal jurisdiction, and serve process on the breaching law firm *qua* party. That action would likely be governed by state law and might only be possible in a state court. But that does not make the availability of such an action remotely inadequate to addressing any inequities that might arise if a party to an MDL participation agreement later refused to pony up. State courts adjudicate cases like that every day, and Co-Lead Counsel have thus shown no good reason to take the extraordinary step of trying to move such an (unfiled) action case into this particular federal court.

The likely availability of such a collateral contract action merits attention, however, because it explains the source of the (misleading) intuition that it should be permissible for an MDL court to reach into state cases to require contributions from plaintiffs' attorneys who agreed to make common-benefit payments out of them. In all such cases that we know of, the attorneys at issue have agreed to contribute to a common-benefit fund from *all* their cases. And that agreement explains why the MDL court has the apparent power to require those attorneys to pay into the common-benefit fund from their state-court cases—namely, because it has the power to enforce the agreement according to its terms. In a contract action against the attorneys *as parties*, any relief ordered against them would be a judgment *in personam* and would be due from them no matter where they got the money from. A court could thus certainly enforce such a judgment by requiring that the proceeds of settlements governed by the breached agreement be paid directly from those settlements, but only because it could also order that money be paid directly from the defendant's bank account or garnished from fees generated in wholly unrelated cases.

The important question here is thus whether there is subject-matter jurisdiction and some source of substantive authority to enter such a personal judgment against *us* in a contract action Co-Lead Counsel have never filed about a contract we never signed. That question is no doubt easily

13

overlooked if a contract has been signed—particularly because attorneys who have signed such a contract will normally have no reason to complain about a court's order commanding them to do what they already agreed to do anyway. But once it is isolated in a case with facts like this one, the answer is quite obviously no.

We believe this subtle mistake about how the participation agreement gives rise to jurisdiction underlies some of the dicta in a recent, related decision from the Southern District of New York. In *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 191 (S.D.N.Y. 2020), there was both an agreement and a court order embodying it, and so the court's *holding* that holdbacks could be ordered from state-court cases does not bear on this dispute. But in reaching that holding, the district court reasoned that the power to issue a holdback order respecting state court cases might arise from an MDL court's "authority to regulate the conduct of the MDL parties and MDL counsel, even where such regulation affects the interests of others." *Id.* at 189. Accordingly, while the court recognized that "[t]he question is a confounding and close one," it seemed ultimately to conclude that jurisdiction might be derived from the fact that attorneys who were representing state-court plaintiffs were otherwise before the MDL. *Id.* at 187.

Notably, however, that jurisdictional analysis plainly relies on a mistaken premise. The *General Motors* decision began by recognizing (not quite correctly) that "courts have held, and the Firms do not dispute, that a federal court has the power to impose an assessment for state-court cases and unfiled claims *where counsel consents to it* in exchange for access to common benefit work product." 477 F. Supp. 3d at 187 (emphasis added) (citing *Avandia*, 617 F. App'x at 141-44). From that premise (which, again, would not apply here even if it were correct), the court concluded that there must be no jurisdictional problem at all with ordering holdbacks from state cases, because "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Id.* The mistake in

this reasoning, however, is that courts have *not* held that jurisdiction arises *merely* from the consent of the agreeing counsel, but rather from the *combination* of the "action of the parties" (*i.e.,* the participation agreement) *and* the court's action incorporating that agreement into an order. *See supra* Part B.1. Conversely, jurisdiction was not (as some of *General Motors* language suggests) forged from the mere fact that the attorneys at issue were otherwise before the court as representatives of other clients. On that particular score, both the Eighth and Fourth Circuits are correct that "state plaintiffs' *attorneys* participat[ing] in the MDL" do not confer jurisdiction on "state-court cases, related or not," because a "district court overseeing [an] MDL does not have authority over separate disputes between state-court *plaintiffs*" and the same defendant. *Rice I*, 764 F.3d at 873-74; *see also In re Showa Denko*, 953 F.2d at 166.

### III.    CONCLUSION

Co-Lead Counsel have asked for an extraordinarily large holdback in advance of any agreement, without giving any explanation for why the much more ordinary, sound, and safe course of using executed voluntary agreements was not followed. Nor have they explained why contract or quasi-contract actions in appropriate courts would be inadequate to vindicate any equitable interests they might have in other firms' settlements. Instead, they are asking this court to take a step that has a very serious jurisdictional defect—or at the very least raises serious jurisdictional doubts—when appellate review could blow up the course of the litigation *at any time* if the court of appeals concludes that there was a jurisdictional error involved. There is no reason for this Court to do so.

| | |
|---|---|
| Dated: February 4, 2021 | Respectfully submitted, |
| | /s/ Thomas C. Goldstein |
| Paul J. Napoli (NY 2513141)<br>Hunter J. Shkolnik (NY 2031458)<br>NAPOLI SHKOLNIK, PLLC<br>360 Lexington Avenue<br>New York, New York 10017<br>pnapoli@nsprlaw.com<br>hunter@napolilaw.com<br>Phone: (212) 397-1000<br>Fax: (312) 610-5680 | Thomas C. Goldstein (MD 9512120307)<br>Eric F. Citron (MD 1608240002)<br>GOLDSTEIN & RUSSELL, P.C.<br>7475 Wisconsin Ave., Suite 850<br>Bethesda, MD 20815<br>tg@goldsteinrussell.com<br>Phone: (202) 362-0636<br>Fax: (866) 574-2033 |
| Christopher L. Schnieders (KS 22434)<br>NAPOLI SHKOLNIK, PLLC<br>6731 W. 121st Street, Suite 201<br>Overland Park, KS 66209<br>cschnieders@napolilaw.com<br>Phone: (212) 397-1000<br>Fax: (312) 610-5680 | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of February, 2021, a copy of the forgoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Thomas C. Goldstein*