CATEGORY 2 OBJECTORS' OPPOSITION TO MOTION TO AMEND PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE (D.E. 12394)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Arati C. Furness, CA Bar No. 225435
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel. 214.890.0711 / Fax 214.890.0712
afurness@fnlawfirm.com

Behram V. Parekh, CA Bar No. 180361
DALIMONTE RUEB STOLLER LLP
515 S. Figueroa Street, Suite 1550
Los Angeles, CA 90071
Tel. 619.821.2305 / Fax 855.203.2035
behram.parekh@drlawllp.com

Bradford J. Gilde CA Bar No. 273033
JOHNSON LAW GROUP
2925 Richmond Avenue, Suite 1700
Houston, Texas 77098
Tel. 713.626.9336 / Fax 713.583.9460
bgilde@johnsonlawgroup.com

[Additional Counsel listed on signature page]

***Counsel for Objectors with Roundup
Exposure Claims Over Which There Is No
Federal Jurisdiction***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL CASES | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>CATEGORY 2 OBJECTORS' OPPOSITION TO MOTION TO AMEND PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE (D.E. 12394)<br><br>Hearing date: March 3, 2021<br>Time: 1:00 PM |

## TABLE OF CONTENTS

Question 1 ........................................................................................................ 1

A.      Objectors' Counsel, Rather Than MDL Leadership, Provided Legal Services to Objecting Clients.......................................................................................... 2

B.      Members of the CLC Used their Position to Benefit Themselves to the Detriment of Objectors.............................................................................................. 4

Question 2 ........................................................................................................ 6

Question 3 ........................................................................................................ 7

A.      That a Tiny Fraction of Objectors' Counsels' Cases Were Transferred to the MDL Does Not Establish Jurisdiction to Dictate a Holdback from non-MDL Clients. ....... 8

B.      The CLC's Arguments Are Inapplicable Because It Did Not Secure A Global Settlement in Which Objectors Voluntarily Participated. ......................................... 13

Question 4 ...................................................................................................... 15

CONCLUSION ................................................................................................. 15

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*,
549 F.2d 1006 (5th Cir. 1977) ...................................................................15

*In re Avandia Mktg., Sales Practice & Prods. Liab. Litig.*,
617 F. App'x 136 (3d Cir. 2015).................................................................12

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)....................................................................................11

*In re Baycol Prod.*,
No. MDL 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004).....................12

*In re Baycol Prods.*,
No. MDL 1431MJD/JGL, 2004 WL 1058105 (D. Minn. May 3, 2004)......11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...............................................................................2, 14

*In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*,
No. 3:05-MD-527 RM, 2011 WL 611883 (N.D. Ind. Feb. 11, 2011) .......12

*Fort Bend Cnty., Texas v. Davis*,
139 S. Ct. 1843 (2019)................................................................................11

*In re Genetically Modified Rice Litig.*,
764 F.3d 864 (8th Cir. 2014) ......................................................................11

*In re Genetically Modified Rice Litig.*,
No. 4:06MD1811 CDP, 2011 WL 601627 (E.D. Mo. Feb. 11, 2011)....11, 12

*Gonzalez v. Thaler*,
565 U.S. 134 (2012).....................................................................................11

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
No. MDL 05-1708 DWF/AJB, 2008 WL 682174 (D. Minn. Mar. 7, 2008) .........14

*Hartland v. Alaska Airlines*,
544 F.2d 992 (9th Cir. 1976) .........................................................9, 10, 11, 12

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
517 F.3d 220 (5th Cir. 2008) ........................................................................6

ii

*Indep. Living Ctr. of S. California v. Kent*,
No. 2:08-CV-03315-CASMANX, 2019 WL 3717793 (C.D. Cal. Aug. 6,
2019) ........................................................................................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ................................................................................................11

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017) .......................11, 12

*In re McClatchy Newspapers, Inc.*,
288 F.3d 369 (9th Cir. 2002) ....................................................................................7

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .......................................................................................7

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*,
953 F.2d 162 (4th Cir. 1992) ...............................................................................11, 12

*In re Syngenta AG Mir162 Corn Litig.*,
No. 2:14-MD-02591-JWL-JPO, 2018 WL 7254709 (D. Kan. Nov. 21, 2018),
*R. & R. adopted as modified*, No. 14-MD-2591-JWL, 2018 WL 6839380 (D.
Kan. Dec. 31, 2018) ...............................................................................................13, 14

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ...................................................................................12

*In re Vioxx Prod. Liab. Litig.*,
802 F. Supp. 2d 740 (E.D. La. 2011) .......................................................................14

*Will v. United States*,
389 U.S. 90 (1967) ..................................................................................................10

*In re Zyprexa Prod. Liab. Litig.*,
594 F.3d 113 (2d Cir. 2010) ....................................................................................14

**Statutes**

28 U.S.C. § 1651 .............................................................................................................10

Objectors are individuals whose claims are not filed in the MDL and whose counsel have not signed the participation agreement but whose counsel have other clients whose cases are pending in the MDL. In their Motion, Co-Lead Counsel ("CLC") ask this Court to tax the proceeds from all Roundup cases handled by attorneys described in PTO 12 with an 8.25% holdback assessment to be ultimately paid to the CLC and lawyers chosen by them. *See* Doc. 12394. This Opposition brief conforms to the questions asked in the Court's January 26, 2021 Order (Doc. 12463), quoted below. For the reasons stated herein, the CLC's Motion should be denied.

> 1. **Given how this case has developed, is it necessary to issue an order requiring that a percentage of each recovering plaintiff's attorney's fees be held back for potential distribution to co-lead counsel?**

**Answer: No**. Objectors estimate that MDL Leadership will receive substantial fees well in excess of any reasonable multiplier of the loadstar they have generated based solely on the settlement of their own clients and those referred to them for settlement.[1] Unsatisfied with their fortune, the CLC asks the Court to force the holdback and deposit of well over **$800 million dollars**, representing 8.25% of all gross past, present, and future settlements.[2] Notably, 8.25% of gross settlement proceeds amounts to over 20% of net attorneys' fees, basically from all counsel nationwide. MDL Leadership does not need a holdback of over $800 million, in order to avoid "the unjust enrichment" of counsel and Roundup victims in cases in which the CLC failed to perform a minute of legal work.

---

[1] The Affidavit of James Onder details these numbers. Exhibit 1, Onder Aff., ¶¶ 10-12. The Court, however, is in a better position to determine this information. *See also* Answer to Question 2, *infra*.
[2] https://www.wsj.com/articles/bayer-posts-third-quarter-loss-on-agriculture-woes-11604393190 states Bayer has reserved $10.9 billion to settle Roundup litigation.

The CLC does not come close to deserving this enormous additional payout. The CLC owed a fiduciary duty to the litigation as a whole.[3] MDL Leadership, however, refused to help any of the Roundup victims they do not represent. Certain CLC went so far as to solicit referrals from Objectors' counsel to enhance their own settlements. In some instances, CLC attempted to push firms into settlement with threats that they were going to be left out in the cold with no experts, no depositions, and no trial package.[4] For the CLC to receive a share of objecting clients' gross settlements, the CLC would have had to act for the benefit of those clients, but they did not.[5]

### A. Objectors' Counsel, Rather Than MDL Leadership, Provided Legal Services to Objecting Clients.

The signatories to this brief are counsel with an overwhelming majority of clients whose cases are not filed in in this MDL, and whose clients the CLC seeks to involuntarily sweep into PTO 12 via a relatively tiny handful of clients whose cases are filed in this MDL. The CLC's motion falsely claims that it "conducted the substantial work of the litigation in . . . state courts," that "the MDL Leadership conducted most of the state court litigation," and that from March 2015 through March 2020, the CLC and EC "advocat[ed] on behalf of all plaintiffs" in state courts.[6] Based on these assertions, the CLC requests a ruling that "all cases described in PTO 12 benefit from" the MDL efforts.[7] As to the Objecting clients, the CLC's claims are false.

Tens of thousands of clients are represented by Objectors' counsel.[8] Objectors' counsel did not sign participation agreements, the CLC did not give Objectors' counsel the work product and

---

[3] *See* Category 3 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund filed this day and adopted herein, at § III.C.

[4] Exhibit 1, Onder Aff., ¶¶ 19-20, 24-26.

[5] *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (discussed *infra*).

[6] CLC Mot., 1:6, 2:6, 2:15-17 [Doc. 12394, Pages 7-8 of 33]

[7] *See* Proposed Order, 2:27 [Doc. 12394-26, Page 2 of 4].

[8] *See* Exhibit 1, Onder Aff., ¶¶ 4-8; Exhibit 2, Declaration of Andrew W. Hutton, ¶ 2; Exhibit 3, Declaration of N. Majed Nachawati, ¶ 2; Exhibit 4, Declaration of Behram V. Parekh, ¶ 2; Exhibit

2

transcripts the CLC brags about developing, and the sworn statements filed herewith describe the consistent failure of MDL Leadership to provide any discovery materials to assist Objectors' counsel in representing their clients.[9] The CLC did not benefit Objecting clients, represent them, advise them, did not advocate or negotiate for them, and did not help them settle their cases.[10]

The CLC's representation to this Court, that the MDL Leadership represent "all plaintiffs" in state court,[11] is conspicuously inaccurate. Objectors' counsel whom the CLC refused to help have been litigating in state court in Missouri. One such counsel, OnderLaw, LLC, represents 22,318 cases that have *not* settled, and the firm entered the litigation in 2016.[12] MDL Leadership refused to share any "common benefit" work product, and the firm was required to associate with counsel to help work up its cases. An MDL holdback would be akin to double taxation.[13] OnderLaw has actively worked up the litigation for its tens of thousands of clients with no help from MDL Leadership, which work includes document productions, noticed depositions, retaining new experts, and working with experts on opinions and reports, all without MDL assistance.[14] Over Monsanto's objections, and following hearings before Special Master Prebil (whose fees Objectors' counsel, not CLC, are splitting with Monsanto), OnderLaw succeeded in securing deposition dates for Monsanto witnesses, with no help from the CLC.

---

5, Declaration of Nick H. Johnson, ¶ 2; Exhibit 6, Declaration of Timothy A. Scott, ¶ 2; Declaration of D. Todd Mathews, ¶ 2; Exhibit 8, Declaration of Adam Pulaski, ¶ 2.

[9] *See* Exhibit 1, Onder Aff., ¶¶ 19-29; Exhibit 2, Hutton Decl., ¶¶ 3-8; Exhibit 3, Nachawati Decl., ¶¶ 4-10; Exhibit 4, Parekh Decl., ¶¶ 3, 5-8; Exhibit 5, Johnson Decl., ¶¶ 3-4, 8-15; Exhibit 6, Scott Decl., ¶¶ 4, 6-9; Exhibit 7, Mathews Decl., ¶¶ 3, 5-9; Exhibit 8, Pulaski Decl., ¶¶ 4, 6-15.

[10] *See id.; see also* Exhibit 5, Johnson Decl., ¶ 10.

[11] CLC Mot., 2:15-17 [Doc. 12394, Page 8 of 33].

[12] Exhibit 1, Onder Aff., ¶¶ 4-8, 27. *Cf. also* Exhibit 3, Nachawati Decl. ¶ 3 (since 2018).

[13] *Id.* at ¶¶ 29-30.

[14] *Id.* at ¶¶ 5, 27-29.

3

The CLC misleadingly contends MDL efforts are responsible for successful representation of plaintiffs in Missouri courts.[15] In truth, the MDL Leadership abandoned the unsettled Missouri litigation.[16] Three Special Masters have been appointed in St. Louis County or City Circuit Courts. Special Discovery Master Hon. Thomas Prebil (ret.) and Special Discovery Master Hon. Glenn Norton (ret.) were appointed years ago to preside over discovery disputes and Objectors' counsel, rather than MDL Leadership, have litigated before them and contributed to their fees. Recently, Special Master Robert Blitz was appointed to further facilitate discovery and a settlement program in St. Louis County, and he appointed Jim Onder to be the point person in the St. Louis County program – not MDL Leadership.[17] MDL Leadership did not seek nor receive an order from a Missouri court—a court *with* jurisdiction over Objecting clients filed in that court—recognizing their entitlement to any "common benefit" compensation.[18] In short, the CLC's Motion's discussion of Missouri litigation is incomplete and misleading.

## B. Members of the CLC Used their Position to Benefit Themselves to the Detriment of Objectors.

The CLC's demand that Objectors pay part of their settlement to the MDL Leadership is all the more unjustified because the CLC has acted in its own self-interest, actively impeding the efforts of Objectors' counsel to represent Objecting clients. The statements in the CLC's motion help illustrate this point. The CLC boasts they and the PEC "retain[ed] the world's leading experts in their respective fields."[19] To the extent this is true, it not only fails to support the CLC's fee

---

[15] *E.g.*, CLC Mot., 5 [Doc. 12394, Page 11 of 33].
[16] *See* Exhibit 1, Onder Aff., at ¶ 32.
[17] *Id*. at ¶ 34.
[18] *See* Exhibit 2, Hutton Decl., ¶ 10; Exhibit 5, Johnson Decl., ¶ 16; .Exhibit 6, Scott Decl., ¶ 13; Exhibit 7, Mathews Decl., ¶ 10; Exhibit 8, Decl. Pulaski, ¶¶ 15-16.
[19] CLC Mot., 4:2 [Doc. 12394, Page 10 of 33].

demand, but it proves the opposite—the CLC harmed everyone other than their own clients by monopolizing "the world's leading experts" for their benefit, to the detriment of everyone else.

Sworn statements filed herewith document that the MDL Leadership did not make its experts available for Objecting clients' cases.[20] That expert witnesses would not be provided as a "common benefit" was announced at a conference.[21] The unavailability of the MDL experts has been used ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████[22] Objectors' counsel were repeatedly told ████████████████████████████████████ and in calls with representatives of leadership firms, ████████████████████[23] ████████████ █████████████████████████████████████████████████████████████ ██████[24] On this topic, a leadership firm member said, "I am pretty much a genius when it comes to this" and "you will never be able to duplicate it"; and other remarks included, "Who are you going to get as experts? We have all of them tied up."[25]

The CLC's exclusionary control of experts, and their refusal to provide anything constituting an MDL common benefit trial package, was expressly used as part of the CLC's attempt to force other law firms to grant them a part of their attorneys' fees by agreement. Certain members of the CLC unsuccessfully attempted to obtain referrals to them by representing that their clients would receive premium settlement offers and that, allegedly, everyone else had to go into

---

[20] *See* Exhibit 1, Onder Aff., ¶¶ 16-31; Exhibit 2, Hutton Decl., ¶¶ 7-8; Exhibit 3, Nachawati Decl., ¶¶ 8-9; Exhibit 4, Parekh Decl., ¶¶ 7-8; Exhibit 5, Johnson Decl., ¶¶ 9-13; Exhibit 6, Scott Decl. ¶¶ 9, 11-12; Exhibit 7, Mathews Decl., ¶¶ 7-8; Exhibit 8, Pulaski Decl., ¶¶ 8-9.
[21] Exhibit 6, Scott Decl. ¶ 11.
[22] *See* Exhibit 1, Onder Aff., ¶¶ 16-26.
[23] *See id.*
[24] *Id.* at ¶ 22.
[25] *Id.* at ¶ 26.

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

business with them, because ██████████████████████████ [26] The proof filed

herewith includes a description of conversations with leadership firms, ████████

██████ and other attorneys, and describes repeated representations.[27] One Objector considers

the CLC's requests for referral fee agreements to be "an abuse of power that this court bestowed

upon them in honoring their request to become lead counsel."[28]

Not only did the MDL Leadership leverage their position in this case for their own benefit,

but Objectors' counsel were led to believe that ████████████████████████

████████████████████████████████████████████

██████.[29]

---

> **2.** **Can the Court meaningfully evaluate the need for a hold-back without understanding how much of a premium co-lead counsel has already received on their settlements compared to the typical settlement? To give a purely hypothetical example, what if the typical settlement was for $200,000, but the settlements for the clients of co-lead counsel averaged $800,000? The difference would presumably have been intended, at least in part, to compensate co-lead counsel for their investment in the case as compared to the investment by the typical plaintiff's attorney. This could perhaps affect the question of whether a hold-back is necessary (and if so, how much the hold-back should be). If the Court needs this information to meaningfully evaluate the necessity of a hold-back, should it request a report from the Special Master on the extent to which co-lead counsel has already received a premium on the settlements for their clients?**

---

**Answer: A meaningful evaluation requires this information**.[30] Objectors' counsel

believe that the ████████████████████████████████████████

████████████████████████████████████████████

---

[26]  *See* Exhibit 1, Onder Aff., ¶¶ 16-24.
[27] *See id.*, ¶¶ 23-25.
[28]  *See* Exhibit 8, Pulaski Decl., ¶¶ 11-12.
[29] Exhibit 1, Onder Aff., ¶¶ 15-16, 20.
[30]  *See In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 232 (5th Cir. 2008) (reversing fee award, finding that objectors were not given sufficient information and that the district court's analysis was too limited: "The court . . . should have been able to compare the contributions of all plaintiffs' attorneys in order to determine if the fee allocation was equitable.").

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

████.[31] Further, some Objectors' counsel were told that ████████████████ because they could not access the MDL litigation material and experts, and that as a corollary, they would ████████████████.[32] While the CLC's motion should be denied for lack of jurisdiction and, independently, for lack of any enhancement of Objectors' claims, Objectors also request *in camera* inspection of the MDL Leadership's settlement agreements with Defendants to confirm that these lawyers already have received enormous sums in fees. *In camera* review of not just the agreements, but the negotiations, also would determine whether Leadership used their position to harm Objectors, *e.g.*, by promising not to share the very MDL work product for which they now seek payment, and by agreeing to attempt to take experts off the table for other counsel.[33] This information is important because the order the CLC seeks will entitle them to a holdback of well over $800 million—something they fail to discuss in their motion. The CLC further demands not just a holdback of already settled cases, but all cases that might settle in the future. Further, the public right to access court proceedings applies where, as here, public health and safety, and billions of dollars, are at issue.[34]

> **3.** **If a hold-back is warranted, should the Court consider anew the universe of cases that should be subject to a hold-back? Should it include state court cases or only federal cases? Should it include cases in which a settlement has already been reached and money has already changed hands, or should it be limited to the cases that have not yet settled?**

   **Answer: A hold-back order cannot dictate the deposit of proceeds from cases and controversies over which the Court lacks jurisdiction.** The order should exclude all plaintiffs

---

[31] *See* Exhibit 1, Onder Aff., at ¶¶ 10, 15-16, 18-24.

[32] *See id.*

[33] This appears to be the case. *See, e.g.,* Exhibit 1, Onder Aff., ¶¶ 15, 16, 19, 23.

[34] *See, generally, In re McClatchy Newspapers, Inc.,* 288 F.3d 369, 374 (9th Cir. 2002) (discussing that "a substantial governmental interest" is necessary to overcome the First Amendment right to access court records and files); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) ("Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety.") (Citation omitted).

and potential plaintiffs that are not currently pending in the MDL or are subject to motions to remand to state court, and/or where counsel did not sign a participation agreement.

**A. That a Tiny Fraction of Objectors' Counsels' Cases Were Transferred to the MDL Does Not Establish Jurisdiction to Dictate a Holdback from non-MDL Clients.**

The CLC ignores that the Court is without jurisdiction to order payments from "all parties and counsel described in"[35] Paragraph 4 of PTO 12.[36] Presumably, the CLC believes Objectors are swept up in PTO 12 ¶ 4, because a tiny fraction of Objectors' counsels' clients' cases are in this MDL, sometimes after being filed in state court, wrongfully removed, and transferred.[37] This is irrelevant to establishing jurisdiction over the tens of thousands of Roundup victims that have or will be filed in state courts, or which are not filed at all, because jurisdiction must exist over the individual case and controversy. This is true regardless of whether the same defendant or the same lawyers are before the federal court. The same defendants and counsel appear in more than one court all the time, but that is not an excuse for one court to issue orders in a case pending elsewhere, or as to clients never filed in any court.

The CLC cites inapposite common benefit decisions, ignoring the proper scope of the doctrine, and incorrectly presupposing that "unjust enrichment," even were this claim factually accurate (and it is not), could substitute for federal jurisdiction to render a ruling on the unjust

---

[35] *See* Proposed Order, 2:22 [Doc. 12394-26, Page 2 of 4].

[36] PTO 12 ¶ 4 includes in its scope every case held by an attorney or a law firm if even a single case of that attorney or firm is in the MDL. [Doc. 161, Page 5 of 7].

[37] *See* Exhibit 1, Onder Aff. ¶7 (less than 1/10 of 1%); Exhibit 2, Hutton Decl., ¶ 2 (3 of 214); Exhibit 3, Nachawati Decl., ¶¶ 2-3 (4 of 4,814); Exhibit 4, Parekh Decl., ¶ 2 (3 of 3800); Exhibit 5, Johnson Decl. ¶ 2 (.1%); Exhibit 6, Scott Decl., ¶ 2 (4 of 750); Exhibit 7, Matthew Decl., ¶ 2 (27 of 617 total); *see also* Exhibit 8, Pulaski Decl., ¶ 3 (zero out of 2,181).

enrichment doctrine in the first place.[38] In order to decide if Roundup victims owe the CLC money under the doctrine of "unjust enrichment," the Court would have to have subject matter jurisdiction over *each* case and controversy and personal jurisdiction over *each* Objector. The Court does not. *See also* Objection of Non-Participating Counsel to Pls. CLC's Mot. to Supp. PTO 12 filed this day by Jeffrey A. Lamken, which briefing undersigned join and adopt.

Controlling precedent compels the conclusion that a common benefit holdback cannot be imposed unless the Court has jurisdiction over the specific ***individual case and controversy***— just the same defendant, the same mass tort, and the same counsel are insufficient. The Ninth Circuit in *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976), held that an MDL court exceeds its jurisdiction when it orders a common benefit holdback from settlement proceeds of claims not before the federal court—even where plaintiffs' counsel asked the federal court to approve the settlement and submitted a stipulation accordingly. The MDL at issue in *Hartland* was established for claims arising from a plane crash, but did not include the claims against the airline of the estates of two deceased passengers, Sampson and Golub. 544 F.2d at 994. The MDL court appointed lawyers to conduct discovery and ruled a common fund distribution of fees and costs would be made. *Id*. at 995-96. When Alaska Airlines settled the Sampson claim it required the federal MDL court's approval, and Sampson's counsel requested this approval while explaining that nothing was owed to the common benefit fund. *Id*. at 996. The MDL court signed an order approving the settlement but also ordered a common benefit holdback be deposited in the Court's registry for future disbursement to court-appointed counsel. *Id*. As to the Golub estate, it had a case in the federal court against the United States and in state court against the airline. *Id.* at 997-98. The

---

[38] *See, e.g.,* CLC Mot., 8:10-12 [Doc. 12394, Page 14 of 33]; Proposed Order, 2:7-9 [Doc. 12394-26, Page 2 of 4] (contending a common benefit order allegedly is justified, because it "prevent[s] unjust enrichment . . . .").

settlement with the airline released the United States as well, and the MDL court ordered a portion of fees be retained for common benefit distribution, again over objection. *Id.* at 999.

When the Sampson and Golub plaintiffs filed appeals, the Ninth Circuit "treat[ed] each as a petition for mandamus since they both relate to the usurpation of power by the District Court." *Id*. at 1001. *Hartland* reasons that, "[w]hen a district court has taken action which a party claims was beyond its jurisdiction as distinguished from being erroneous within its jurisdiction, this Court has the power to set matters right." *Id.* (citing 28 U.S.C. § 1651; *Will v. United States*, 389 U.S. 90, 95-96, 98 n. 6 (1967)). The Ninth Circuit granted writs of mandamus and ordered the return of the holdbacks filed in the court registry. 544 F.2d at 1002. Of import here, the Ninth Circuit held that the district court lacked jurisdiction notwithstanding that federal approval of a settlement had been requested, and notwithstanding that the state court settlement release also released the United States, which was the defendant in the Golub case that *was* pending in the federal court. The actions of court appointed counsel presumably benefited these plaintiffs, however, that was not at issue in the Ninth Circuit's reasoning, nor was the request for settlement approval the issue. The presence of the same defendants involving the same accident was not the issue either. *Hartland* stands for the proposition that a federal court lacks jurisdiction to order the deposit of funds for future common benefit compensation if those funds were for the settlement **of clients and claims** over which the court lacks subject matter jurisdiction.

*Hartland* makes very clear that common benefit holdback orders must meet the requirements of federal subject matter jurisdiction. Unlike most arguments, objections to subject matter jurisdiction can be raised at any point in the litigation and need not be raised by the parties

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

at all, because courts must consider subject matter jurisdiction *sua sponte*.[39] The CLC motion simply presumes federal jurisdiction to order expense and fee payments over Objectors not before the Court, but this is fundamentally wrong—jurisdiction can never be presumed.[40]

*Hartland's* progeny amply reinforces the jurisdictional limits cabining MDL common benefit orders. Any arguments about the same defendants, the same lawyers, continuity of issues, or what is equitable cannot substitute for subject matter jurisdiction: "a transferee court's jurisdiction in multi-district litigation is limited ***to cases and controversies between persons who are properly parties*** to the cases transferred." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165–66 (4th Cir. 1992) (citing *Hartland*) (emphasis supplied); *see also In re Baycol Prods.*, No. MDL 1431MJD/JGL, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004) (quoting same). *Hartland* consistently has been cited by district court judges who specifically reject the argument that jurisdiction over the same defendant and/or plaintiffs' lawyers suffices to impose a common benefit assessment; the court must have jurisdiction over the specific case and controversy.[41]

---

[39]  *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (holding subject-matter jurisdiction may be raised "'at any point in the litigation'" and courts must consider them "*sua sponte*.") (Quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

[40]  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[41]  *See, e.g., In re Genetically Modified Rice Litig.*, No. 4:06MD1811 CDP, 2011 WL 601627, at *1 (E.D. Mo. Feb. 11, 2011) ("Simply because this Court has jurisdiction over an attorney, a defendant, or a plaintiff in one case does not mean that it has jurisdiction over them in their state court cases, even if they assert essentially the same claims.") (Citing *Hartland*, 544 F.2d at 1001, and *Showa Denko*, 953 F.2d at 166–67); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017) ("[D]istrict courts operating pursuant to their multi-district litigation powers do 'not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries' absent some 'independent basis for jurisdiction over these state-court actions.'") (Quoting *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873 (8th Cir. 2014); also

11

Discussing *Hartland*, *Showa Denko*, and *Genetically Modified Rice*, the Third Circuit in *In re Avandia Mktg., Sales Practice & Prods. Liab. Litig.*, concluded that, "had the District Court simply ordered the firm, as total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have exceeded its jurisdiction." 617 F. App'x 136, 141 (3d Cir. 2015). Therefore, jurisdiction for an assessment could not be based solely on the fact that the attorney had cases pending in the MDL.

The CLC ignores Ninth Circuit precedent when arguing, "[i]mportantly, the [CLC] is only requesting a holdback." CLC Mot., 1:24 n.1 [Doc. 12394, Page 7 of 33]. *Hartland* illustrates the abundantly logical point that if the Court lacks jurisdiction to disburse funds, then it lacks jurisdiction to order deposit of funds for future disbursement.[42] Notably, the CLC cites nothing to support its claim that the difference between deposit and disbursement is "important[]" where, as here, there is no subject matter jurisdiction either way. *See* CLC Mot., 1:24-28 n.1.

---

citing *Hartland*, 544 F.2d at 1001). The district court in *Lidoderm* held that jurisdiction over the defendants does not equate with the necessary "jurisdiction over the *recoveries,"* because those funds belonged to parties not before the court. 2017 WL 3478810 at *3.

   *See also Indep. Living Ctr. of S. California v. Kent*, No. 2:08-CV-03315-CASMANX, 2019 WL 3717793, at *17 (C.D. Cal. Aug. 6, 2019) (citing *Hartland*, 544 F.2d at 1001 and *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 765-66 (9th Cir. 1977), for the proposition that a district court lacks jurisdiction to order nonparties to a suit to pay into a fund for attorney's fees and denying motion for a common fund attorneys' fees award); *cf. In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, No. 3:05-MD-527 RM, 2011 WL 611883, at *3 (N.D. Ind. Feb. 11, 2011) ("This court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court. . . . Thus, co-lead counsel's proposed language applying their proposed order to cases 'derivative' of the MDL or that 'rely on the work performed in the MDL' is outside the scope of this court's power to order."); *In re Baycol Prod.*, No. MDL 1431, 2004 WL 190272, at *1 (D. Minn. Jan. 29, 2004) (even though case was originally filed in federal court, it could not be subject to 6% holdback in MDL because it settled before the transfer to the MDL; citing *Hartland* for the proposition, "a transferee court does not have jurisdiction").
[42] *Hartland* addressed orders requiring a deposit of funds into the court registry for future distribution, deemed the orders to be a "usurpation of power by the District Court," and required return of funds deposited with the clerk, plus interest, without undue delay. 544 F.2d at 1001-02.

12

**B. The CLC's Arguments Are Inapplicable Because It Did Not Secure A Global Settlement in Which Objectors Voluntarily Participated.**

The CLC admits there is no "national, court-approved settlement program for present claims." Proposed Order, 2:14-15 [Doc. 12394-26, Page 2 of 4]. The CLC seeks to elide over their failure to help any clients other than their own by arguing, "the MDL leadership's [sic] led the Court to appoint Special Master Ken Feinberg, which in turn led to the current settlement of Roundup cases."[43] However, the CLC members settled their own cases and their settlement efforts did not benefit any of the Objectors.[44] As chronicled above, the MDL Leadership harmed rather than helped the settlement negotiations. Objectors' cases either have not been settled at all,[45] or where they succeeded, MDL Leadership did not assist the Objectors' counsel in representing their clients or in the settlements.[46] Indeed, Mr. Feinberg was not involved with all of the settlements.[47]

This is not a case where a global settlement was brokered and objectors to the common benefit fee voluntarily participated in the settlement. On this issue, the CLC's legal analysis is fatally flawed, as the motion relies on cases where, unlike here, a voluntary global settlement was before the Court. For example, as purported support for the argument that the MDL Leadership provided a settlement benefit, the CLC cites a decision that in fact illustrates the opposite. The CLC quotes the *Syngenta* case but tellingly omits references to the nationwide settlement obtained there.[48] The *Syngenta* attorneys' fees came out of the $1.51 billion in gross settlement proceeds,

---

[43] CLC Mot., 3:2-3 [Document 12394, Page 9 of 33].

[44] *See* Exhibit 1, Onder Aff., ¶¶ 9-10; Exhibit 3, Nachawati Decl., ¶ 10; Exhibit 4, Parekh Decl., ¶ 9; Exhibit 5, Johnson Decl., ¶14; Exhibit 6, Scott Decl. ¶ 10; Exhibit 7, Mathews Decl. ¶ 9; Exhibit 8, Pulaski Decl., ¶ 10.

[45] *See* Exhibit 1, Onder Aff. ¶ 8; Exhibit 3, Nachawati Decl., ¶ 10; Exhibit 4, Parekh Decl., ¶ 9; Exhibit 6, Scott Decl., ¶ 10.

[46] *See* Exhibit 2, Hutton Decl., ¶ 9; Exhibit 5, Johnson Decl., ¶ 14, Pulaski Decl., ¶ 10.

[47] *See* Exhibit 5, Johnson Decl., ¶ 14.

[48] *See* CLC Mot., 3:3-7 [Doc. 12394, Page 9 of 33] (citing *In re Syngenta AG Mir162 Corn Litig.*, No. 2:14-MD-02591-JWL-JPO, 2018 WL 7254709, at *20 (D. Kan. Nov. 21, 2018), *R. & R.*

13

and the federal court's jurisdiction over the *res* created by the opt-out class settlement was the federal court's stated basis for subject matter jurisdiction.[49] The opposite is true here; the CLC did not obtain a nationwide settlement, there is no common fund, and rather than seeking payment from the *res* they created, the CLC is demanding a cut of the proceeds in cases they had nothing to do with that are not even before this Court.[50]

This is not the "exact circumstances for which the common fund benefit doctrine was intended," as the CLC's motion argues.[51] The Supreme Court has stated, "a litigant or a lawyer **who recovers a common fund for the benefit of persons other than himself or his client** is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478 (citations omitted) (emphasis added). Here, the CLC settled their own cases but failed to generate any fund benefiting Roundup victims other than their own clients.[52]

---

*adopted as modified*, No. 14-MD-2591-JWL, 2018 WL 6839380 (D. Kan. Dec. 31, 2018)). The CLC's motion deletes the underlined words from its quote to the decision:

> Here, the Settlement Agreement recognizes that the successful result in this case was obtained through the work of multiple counsel in multiple jurisdictions who collectively applied litigation pressure in multiple forums that ultimately persuaded Syngenta to resolve the various litigations through a nationwide class action settlement.

2018 WL 7254709, at *20 (emph. added); *contrast* CLC Mot., 3:4-7 [Doc. 12394, Page 9 of 33].

[49] *See* 2018 WL 7254709, at *23 ("As to subject matter jurisdiction, pursuant to the Settlement Agreement, the Kansas federal court had continuing jurisdiction over the settlement and the *res* created by it – the Gross Settlement Proceeds of $1.51 billion.") (note omitted).

[50] *Contrast also In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740, 760 (E.D. La. 2011) (case involved a voluntary, opt-in pre-funded global settlement program) (*Vioxx* cited at CLC Mot., 6:1-2 [Doc. 12394, Page 12 of 33]); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 682174, at *13 (D. Minn. Mar. 7, 2008) (voluntary global settlement created that state court plaintiffs could chose to accept) (*Guidant* cited at CLC Mot., 8:16-17, 8:20-22 [Doc. 12394, Page 14 of 33]).

[51] CLC Mot., 1:7 [Doc. 12394, Page 7 of 33].

[52] Undersigned caution the Court that the CLC miscites *In re Zyprexa Prod. Liab. Litig.*, 594 F.3d 113 (2d Cir. 2010), by citing the concurring opinion as if it were the majority opinion. *See* CLC Mot., 8:14 [Doc. 12394, Page 14 of 33] (citing pages 129-30 which are the concurring opinion, without disclosing this in the citation). The majority opinion did not make any ruling on the merits because the appeals court concluded that it lacked jurisdiction to hear the appeal. 594 F.3d at 118.

14

> **4.** **If a hold-back is truly warranted, why shouldn't it be much lower than the 8% requested by co-lead counsel?**

**Answer:** Objectors join and adopt the Category 3 Objectors' Opposition brief filed this day, which answers this question, in addition to making other arguments joined and adopted hereto.

## CONCLUSION

Objectors' cases are not pending before this Court, and their counsel did not sign participation agreements. Thus, under controlling Ninth Circuit law, this Court does not have jurisdiction to require a holdback of any settlement or judgment obtained by Objectors. Further, Objectors did not obtain experts, discovery, or trial packets from MDL Leadership and the CLC's "unjust enrichment" arguments are false. The CLC did not benefit Objectors. Rather, the CLC used its position for its own gain. Independently, "unjust enrichment" is not a substitute for jurisdiction. Neither the appearance of the Defendants, nor appearance by Objectors' counsel in a tiny handful of cases transferred into this MDL, bestow jurisdiction to order holdbacks of individual claims not pending before this MDL. Objectors respectfully submit that as to the cases brought in state court, and those that have not been filed in any court, the CLC's Motion should in all things be denied.

Dated February 4, 2021                         Respectfully Submitted,

                                               */s/ Arati C. Furness*
                                               Arati C. Furness, CA Bar No. 225435
                                               Majed Nachawati

---

The CLC's motion also misstates the holding in *In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977), by arguing that "the Court of Appeals for the Fifth Circuit . . . affirm[ed] an eight percent (8%) assessment on all prospective recoveries to be taken from the individual lawyers' fees." CLC Mot., 9:4-6 [Doc. 12394, Page 15 of 33]. In truth, the Fifth Circuit "h[e]ld that the power [to award compensation] was exercised in an erroneous manner, and, therefore, reverse[d] and remand[ed] the case," requiring that the district court conduct a full evidentiary hearing and apply appropriate criteria before awarding fees. *Id*. at 1008, 1021. *In re Air Crash Disaster* exercised control of the monies involved in all suits ***pending before the court*.*" 549 F.2d at 1018 (emphasis added) (note omitted).

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

S. Ann Saucer
Misty Farris
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax (214) 890-0712
afurness@fnlawfirm.com
majed@fnlawfirm.com
asaucer@fnlawfirm.com

Behram V. Parekh, CA Bar No. 180361
**DALIMONTE RUEB STOLLER LLP**
515 S. Figueroa Street, Suite 1550
Los Angeles, CA 90071
T: 619.821.2305
F: 855.203.2035
behram.parekh@drlawllp.com

Bradford J. Gilde CA Bar No. 273033
Nick H. Johnson
Basil Adham
**JOHNSON LAW GROUP**
2925 Richmond Avenue, Suite 1700
Houston, Texas 77098
Telephone: 713-626-9336
Facsimile: 713-583-9460
BGilde@JohnsonLawGroup.com
NJohnson@JohnsonLawGroup.com
BAdham@JohnsonLawGroup.com

Timothy A. Scott CA Bar No. 215074
**SINGLETON SCHREIBER
McKENZIE & SCOTT**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
email: tscott@ssmsjustice.com

Daniel K. Back
Andrew W. Hutton
**HUTTON & HUTTON LAW FIRM,
L.L.C.**
P. O. Box 638

16

Wichita, KS 67201-0638
Tel:      316-688-1166
Fax:      316-686-1077
daniel.back@huttonlaw.com
andrew.hutton@huttonlaw.com

D. Todd Mathews, #52502 (MO)
**The Gori Law Firm, P.C.**
156 N. Main Street
Edwardsville, IL 62025
618-659-9833 – Telephone
618-659-9834 – Facsimile
todd@gorilaw.com

James G. Onder
W. Wylie Blair
Mark E. Berns
**Onder Law, LLC**
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
Tel. (314) 963-9000/Fax. (314) 963-1700
blair@onderlaw.com
onder@onderlaw.com
berns@onderlaw.com

Eric Boss
**Pulaski Kherkher PLLC**
2925 Richmond Avenue
Suite 1725
Houston, Texas 77098
Tel. (713) 664-4555/Fax. (713) 664-7543
eric@pulaskilawfirm.com

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of February, 2021, a copy of the foregoing Objection was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Arati C. Furness
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax (214) 890-0712
afurness@fnlawfirm.com

Category 2 Objectors' Opposition to Motion to Amend PTO 12 Common Benefit Fund
Case No. 16-md-02741-VC