Jeffrey A. Lamken
Eric R. Nitz (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W., Suite 500
Washington, D.C. 20037
Telephone: (202) 556-2000
Facsimile: (202) 556-2001
Email: jlamken@mololamken.com
Email: enitz@mololamken.com

Leonid Grinberg (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160
Facsimile: (212) 607-8161
Email: lgrinberg@mololamken.com

*Attorneys for Category 1 Objectors' Counsel Carey Danis & Lowe, Heninger Garrison Davis, LLC, Lanier Law Firm, P.C., Tautfest Bond, PLLC, and Watts Guerra LLP*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>**ALL CASES** | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE**<br><br>Hearing date: March 3, 2021<br>Time: 1:00 PM |

The undersigned counsel represent Texas and Missouri state-court plaintiffs who have not participated in the MDL, known as "Category 1 Objectors." Counsel for Objectors submit this response solely to object to any effort to exercise jurisdiction over them or their clients. *See SEC v. Ross*, 504 F.3d 1130, 1149-50 (9th Cir. 2007). Objectors' lawsuits are entirely independent of this MDL. Their cases were neither filed in this Court nor transferred into the MDL. Objectors' Counsel have not received MDL work product from Co-Lead Counsel ("CLC") or the Executive Committee (collectively "MDL Leadership"). Objectors' Counsel have not signed any agreement subjecting them or their clients to the jurisdiction of this Court or its orders. Consistent with that, Objectors and their Counsel fall outside the common-benefit order, Pretrial Order No. 12 ("PTO 12"), which this Court entered four years ago. *See* Dkt. 161 ¶ 4. That order imposed common-benefit assessments on "Participating Cases," defined as cases "pending, . . . filed in, transferred to, or removed to" the MDL, as well as cases where "plaintiffs . . . and their counsel . . . voluntarily submit to [the MDL] Court's jurisdiction or agree to be bound by the terms of [PTO 12] in return for MDL work product." *Id.*

Objectors do not understand CLC's motion as requesting that the Court reconsider PTO 12's scope. CLC's motion and proposed order do not seek to amend the definition of "Participating Counsel" or "Participating Cases"—*i.e.*, the cases and firms subject to PTO 12 (set forth in PTO 12 ¶ 4). *See* Dkt. 12394. The motion and order request only that the Court amend ¶ 5 to establish the size of the holdback to be imposed on Participating Counsel, *id.* at 16, a question that PTO 12 had explicitly left open, *see* Dkt. 161 ¶ 5. Insofar as CLC's motion invites reconsideration of PTO 12 to encompass firms, like counsel for Objectors, with no connection to the MDL, the invitation should be declined. Nearly four years ago, when this Court entered PTO 12, it did not seek to exercise jurisdiction over plaintiffs or lawyers who did not participate in the

1

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

MDL or who otherwise did not voluntarily submit themselves to MDL jurisdiction. The Court should stay that course now.

## BACKGROUND

**Pretrial Order No. 12.** On February 22, 2017, this Court issued Pretrial Order No. 12 ("PTO 12"), to create a common benefit fund to "pay and/or reimburse fees for legal services that have been and/or will be provided by attorneys for the common benefit *of Plaintiffs in MDL 2741*." Dkt. 161 ¶5 (emphasis added). Given the objective—providing compensation to attorneys for providing benefits to "Plaintiffs in MDL 2741"—PTO 12 understandably limited itself to "Participating Cases" and "Participating Counsel" in that MDL, *i.e.*, cases and counsel with the requisite connection to the MDL.

"Participating Cases" encompasses "all cases pending, . . . *filed in, transferred to, or removed to*" the MDL. Dkt. 161 ¶4 (emphasis added). The term also encompasses non-MDL cases involving "plaintiffs . . . and their counsel who voluntarily submit to [the MDL] Court's jurisdiction or agree to be bound by the terms of [PTO 12] in return for MDL work product." *Id.* "Participating Counsel," in turn, includes any "attorney with a Participating Case" and any "attorneys who have cases pending now or in the future in MDL 2741." *Id.* "With respect to Participating Counsel," PTO 12 continues, "all of their Roundup cases resolved by Monsanto Company, or in which a judgment is entered against Monsanto Company, whether filed in state court, or not filed, shall be considered a Participating Case." *Id.*

PTO 12 specifies who must contribute to the common-benefit fund. It provides that each "***Participating Case*** . . . be assessed for common benefit work and costs on a percentage of the gross monetary recovery." Dkt. 161 ¶5 (emphasis added). The Order declined to set an assessment percentage, however, stating that the percentage "will be determined in a subsequent

2

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

order . . . based on the specific circumstances of this litigation." *Id.*  PTO 12 contains no provision for assessing cases that do not qualify as a Participating Case.

**Objectors and Their Counsel Independently Pursue Their Cases.**  Since this Court entered PTO 12 in 2017, firms like the undersigned have brought and pursued Roundup claims against Monsanto in state courts across the country.  Counsel for Objectors have not represented any party in this MDL.  They have not received MDL work product.  And they have neither voluntarily submitted to MDL jurisdiction nor agreed to be subjected to PTO 12—whether "in return for MDL work product" or otherwise.  Dkt. 161 ¶4; *see* Lowe Decl. ¶¶4-6; Garrison Decl. ¶¶3-4; Lanier Decl. ¶¶3-6; Glitz Decl. ¶¶3-6; Watts Decl. ¶¶3-6.  Objectors' Counsel thus do not qualify as "Participating Counsel" within the meaning of PTO 12.

**The Current Motion.**  On January 14, 2021, CLC filed a motion to supplement PTO 12. Dkt. 12394 ("Mot.").  Its motion asks this Court to address the question that PTO 12 left open: the size of the assessment percentage to be imposed on recoveries in Participating Cases.  *See, e.g.*, Mot. 8.  CLC requests that the Court impose "a holdback of eight and one-quarter percent (8.25%) on all prospective gross monetary recoveries from all plaintiffs and attorneys, as defined by PTO 12, Paragraph 4."  *Id.*; *see also id.* at 16.  Consistent with that request, the proposed order accompanying CLC's motion states that it "supplements and supersedes only Paragraph 5 of PTO 12," Dkt. 12394-26 at 2—the section of PTO 12 concerning the size of the assessment percentage.  CLC's motion does not ask the Court to reconsider any other aspect of PTO 12.  It does not ask the Court to revisit the scope of the order (PTO 12 ¶4).  Nor does it urge the Court to expand the definitions of "Participating Counsel" and "Participating Case" in PTO 12 ¶4.

Although CLC confines its request to the *size* of the assessment percentage under ¶5 of PTO 12, its motion has loose language.  For example, although not supported by the relief it

requests or its proposed order, CLC asserts that the "proposed holdback extends to the efforts of the MDL Leadership, other attorneys who performed substantive work in the MDL or state cases that benefitted and continue to **benefit all plaintiffs in actions within and outside the MDL**." Mot. 13-14 (emphasis added).  In describing the scope of the holdback, moreover, CLC's papers do not use the defined terms this Court employed in PTO 12—"Participating Counsel" and "Participating Cases."  Instead, CLC say "all plaintiffs and attorneys, as defined by Pretrial Order No. 12, Paragraph 4."  *E.g.*, *id.* at 16.

**This Court's Order.**  On January 26, 2021, this Court entered an Order setting deadlines for and asking objectors to address whether (among other things) the Court should "consider anew the universe of cases that should be subject to a hold-back."  Dkt. 12463.  Given that request, the undersigned submit this opposition for the sole purpose of objecting to jurisdiction. Absent jurisdiction, they cannot be subject to any holdback assessment the Court imposes.

## ARGUMENT

The general rule is that courts cannot bind—they cannot impose obligations on or regulate—non-parties and others who are beyond their jurisdiction. *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992) ("'It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party.'").  That rule applies in MDLs as well.  "As in any other case, a transferee court's jurisdiction . . . is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt . . . to reach others who are unrelated is beyond the court's power." *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992).

4

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

For that reason, "[f]ees *may not be imposed* by a transferee judge *on attorneys with no cases in the MDL and who do not use federal discovery material*." Barbara J. Rothstein & Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Cases* 14-15 (Fed. Jud. Ctr. 2011) (emphasis added); *see Coordinating Multijurisdiction Litigation* 7 (Fed. Jud. Ctr. 2013) (same). "[D]istrict courts operating pursuant to their multi-district litigation powers *do 'not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries'* absent some 'independent basis for jurisdiction over these state-court actions.'" *In re Lidoderm Antitrust Litig.*, No. 14-md-02521, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017) (emphasis added).

Consistent with that, this Court's PTO 12 set forth a boundary for the payment obligations it imposes. It limits the requirement to pay a "Common Benefit assessment percentage" to "Participating Cases" and "Participating Counsel." *See* Dkt. 161 ¶ 5. Those terms are carefully defined to *exclude* firms like the undersigned—counsel who have represented clients only in state court, independently from the MDL, and without MDL support. CLC have *not* asked this Court to reconsider the scope of that definition in PTO 12, much less asked the Court to extend it beyond the jurisdictional limits that PTO 12 scrupulously observes. That alone weighs against doing so. *See* 56 Am. Jur. 2d Motions, Rules & Orders § 30.

Objectors' cases fall outside PTO 12 and outside the scope of the Court's jurisdiction, consistent with the above-cited authorities. The undersigned Counsel for Objectors have participated only in state proceedings. They never acquiesced to this Court's jurisdiction over their clients' recoveries. And they have received no MDL discovery or work product. *See* p. 3, *supra*. Nor have they signed any participation agreement. *See* p. 3, *supra*; *cf. In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 617 F. App'x 136, 143 (3d Cir. 2015) (holding that a court may exercise jurisdiction over an attorney who signs a participation agreement that is later

incorporated into a court order). While this Court has authority to decide *whether* it has jurisdiction, its MDL jurisdiction simply does not extend to non-parties who have not sought and received benefits from the MDL or signed a participation agreement.

Ninth Circuit precedent makes that conclusion inescapable. For example, *Hartland v. Alaska Airlines* involved an MDL proceeding in this District. 544 F.2d 992, 994 (9th Cir. 1976). The transferee court "mistakenly" issued an order that implicitly assumed it had jurisdiction over various state-court cases that, in fact, had not been transferred to the Northern District of California; nor was there a stipulation to jurisdiction. *Id.* at 995. The court then ordered "'[a]ll parties plaintiff'" to contribute to a common fund for liaison counsel's common-benefit costs, in effect, requiring parties who had never been properly subject to the transferee court's jurisdiction to contribute to the common fund. *Id.* at 996-97, 999. The Ninth Circuit granted mandamus relief, holding that the district court's actions were "beyond its jurisdiction" and a "usurpation of power." *Id.* at 1001. The Ninth Circuit applied those same principles a year later in *Vincent v. Hughes Air West, Inc.*, holding that a district court could not require nonparties to a lawsuit to deposit portions of their settlements with the court. 557 F.2d 759, 765-66 (9th Cir. 1977).

In *In re Genetically Modified Rice Litigation*, the Eighth Circuit went a step further. In that case, lead counsel argued that, because the district court had jurisdiction over MDL attorneys, it could assess fees from **state-court** recoveries of **state-court clients** represented by MDL attorneys. 764 F.3d 864, 874 (8th Cir. 2014). In other words, counsel contended, the fact that certain attorneys had some cases in the MDL meant that the district court could assess fees on cases outside the MDL being handled by those same attorneys. *Id.* The Eighth Circuit disagreed, concluding the "state-court cases, related or not, [were] not before the district court." *Id.* "Even if the state plaintiffs' **attorneys** participated in the MDL, the district court overseeing the MDL

d[id] not have authority over separate disputes between state-court *plaintiffs* and" the defendant. *Id.* As a result, the district court could not require state-court plaintiffs to pay an assessment toward the MDL common-benefit fund. *Id.* It follows *a fortiori* that there can be no jurisdiction over the undersigned Objectors' Counsel, who represent *no parties* in *any cases* in the MDL.

Other courts have reached the same, or similar, conclusions. In *Showa Denko*, the Fourth Circuit held that "plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the" MDL court. 953 F.2d at 166. As a result, the MDL court "simply ha[d] no power to extend the obligations" of its common-benefit order to those plaintiffs. *Id.* And in *Avandia*, the Third Circuit observed that a district court "would have exceeded its jurisdiction" in ordering "total strangers to the litigation" to contribute to the common-benefit fund. 617 F. App'x at 141. Indeed, "many transferee judges" have "conclud[ed] that they lack the authority to order state plaintiffs and their counsel to contribute to" a common benefit fund. *Guidelines and Best Practices for Large and Mass-Tort MDLs* 69 (Duke L. Sch. Bolsch Jud. Inst. 2d ed. 2018), https://bit.ly/3rzD7Vx.[1]

Given that precedent, it is unsurprising that CLC has not explicitly asked the Court to reconsider PTO 12's scope. CLC identifies no reason to press, much less exceed, jurisdictional boundaries. Indeed, CLC identifies no authority whatsoever for MDL courts to require fee assessments from plaintiffs in actions "outside the MDL." Mot. 13-14. It cites numerous cases

---

[1] District court decisions refusing to impose fee assessments or holdbacks on parties outside an MDL abound. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2015 WL 2165341, at *2-4 (D. Kan. May 8, 2015); *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 05-md-527, 2011 WL 611883, at *3 (N.D. Ind. Feb. 11, 2011); *In re OSB Antitrust Litig.*, No. 06-cv-826, 2009 WL 579376, at *3 (E.D. Pa. Mar. 4, 2009); *In re Baycol Prods. Litig.*, MDL No. 1431, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004); *cf. In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 664 (E.D. Pa. 2003) (finding no jurisdiction to assess fees against opt-outs from class action).

7

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

in support of various propositions. Mot. 3-10, 14-15. But not one of those cases holds that an MDL court has jurisdiction to impose fee assessments on cases and counsel with no connection to the MDL.[2] Likewise, not one case identified in CLC's exhibits—24 examples of MDL orders permitting holdbacks, *see* Dkt. 12394-1 ¶¶2-26 (identifying exhibits)—authorizes a holdback from a state-court case in which the parties and counsel have received no MDL work product. Many of the cited orders expressly forbid that result. *See, e.g.*, Dkt. 12394-5 at 4-5; Dkt. 12394-15 at 2; Dkt. 12394-24 at 6.

The jurisdictional boundary in those cases comports with common sense. As CLC notes, the common-benefit doctrine spreads the costs of litigation "among all of the **beneficiaries** of the fund"—a rule designed to prevent "free-riding." Mot. 8 (emphasis added). The Ninth Circuit thus permits district courts to collect assessments for the purpose of spreading costs "**among the recipients of the common benefit**." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120-21 (9th Cir.

---

[2] Many of the cases CLC cites do not even address the question of jurisdiction. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *In re Worldcom, Inc. Secs. Litig.*, No. 02-cv-3288, 2004 WL 2549682 (S.D.N.Y. Nov. 10, 2004). In some, such as *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977), the court specifically did not consider "the authority of the district court to assess a fee in cases not formally before it." *Id.* at 1010 n.5; *see also, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 268-69 (E.D.N.Y. 2006) (similar). In other cases, the courts explicitly concluded that they **lacked jurisdiction** to assess fees from parties in state court, *see, e.g.*, *In re Genetically Modified Rice Litig.*, No. 06-md-1811, 2010 WL 716190, at *4-5 (E.D. Mo. Feb. 24, 2010), or only did so if the state-court lawyers had signed a participation agreement or received a payout from a global settlement, *see, e.g.*, *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, MDL No. 2385, Case Management Order No. 16 at 3, 4 (ECF No. 61) (S.D. Ill. Nov. 13, 2012) (assessing fees where attorneys signed participation agreement); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 682174, at *13 (D. Minn. Mar. 7, 2008) (assessing fees where attorneys participated in global settlement). Cases not cited by CLC have reached similar conclusions. *See, e.g.*, *Avandia*, 617 F. App'x at 141-42 (concluding MDL court could assess fees in state-court cases **only** because state-court attorneys had signed a participation agreement and the district court had incorporated that agreement into its order); pp. 6-7 & n.1, *supra*.

8

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

2002) (emphasis added); *see B.P. N. Am. Trading, Inc. v. Vessel Panamax Nova*, 784 F.2d 975, 977 (9th Cir. 1986) (similar). But the undersigned Objectors' Counsel and their clients are not beneficiaries of that common benefit. They are not "'unjustly enriched'" at CLC's expense, Mot. 9, because they did not receive or use MDL work product and because MDL Leadership did not assist them in pursuing Monsanto. MDL Leadership did not even secure a global resolution of the Roundup claims. Counsel for Objectors thus must litigate against Monsanto or negotiate their own settlements with Monsanto. *See* Lowe Decl. ¶8; Garrison Decl. ¶4; Lanier Decl. ¶8; Glitz Decl. ¶7; Watts Decl. ¶8.

To the extent that legal victories claimed by CLC provide useful precedent, that alone does not create jurisdiction where none otherwise exists. And it is no basis for imposing an assessment on attorneys and plaintiffs not before the Court. "[E]quity is insufficient to overcome limitations on federal jurisdiction." *Genetically Modified Rice*, 764 F.3d at 874. If CLC believes it is entitled to compensation from state-court cases on account of its efforts, it is free to seek those fees in the state courts itself.[3]

Adherence to the jurisdictional boundaries that PTO 12 seeks to respect makes particular sense here. CLC itself drafted and proposed the definitions of "Participating Counsel" and "Participating Cases" in PTO 12. *Compare* Dkt. 74-3 ¶4, *with* Dkt. 161 ¶4. For years, the Objectors' Counsel relied on the text of PTO 12 and those definitions to guide their own decisions about how to proceed against Monsanto, whether to seek and accept MDL work

---

[3] *See In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 180 (S.D.N.Y. 2020) ("If a case is pending in state court, *that* court can solve the free-rider problem by imposing an assessment on any recovery."); *see also Zyprexa*, 467 F. Supp. 2d at 268-69 (similar). But CLC's efforts ***in state court*** are no basis for conferring ***federal*** jurisdiction over ***other*** litigants in those state-court actions. *Cf. Walden v. Fiore*, 571 U.S. 277, 285-86 (2014) (plaintiffs' contacts with forum State insufficient to confer jurisdiction over defendant).

9

OBJECTION OF CATEGORY 1 OBJECTORS' COUNSEL TO PLAINTIFFS' CO-LEAD COUNSEL'S MOTION TO SUPPLEMENT
PRE-TRIAL ORDER 12: COMMON BENEFIT FUND ORDER TO ESTABLISH A HOLDBACK PERCENTAGE
CASE NO. 3:16-md-02741-VC

product, and how much to invest in pursuit of their claims. In light of those reliance interests, this Court should "follow [its] earlier order[ ]" in this case and "be reluctant to change [the] decision[ ] already made" in PTO 12 ¶4. *Ridgeway v. Mont. High School Ass'n*, 858 F.2d 579, 587 (9th Cir. 1988). That is particularly true here, where no party filed a motion urging the Court to traverse jurisdictional boundaries—much less a motion that addresses intervening reliance interests. Any other course threatens "intolerable instability," *id.*, including further litigation and potential appeals that could delay final resolution. *English v. Apple Inc.*, No. 14-cv-1619, 2016 WL 1108929, at *2 (N.D. Cal. Mar. 22, 2016) (invoking "the interests of finality and conservation of judicial resources.'"); *De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1105, 1107 (N.D. Cal. 2014) (same).

Dated:  February 4, 2021

Respectfully submitted,

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
Eric R. Nitz (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W., Suite 500
Washington, D.C.  20037
Telephone:  (202) 556-2000
Facsimile:   (202) 556-2001
Email:       jlamken@mololamken.com
Email:       enitz@mololamken.com

Leonid Grinberg (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone:  (212) 607-8160
Facsimile:   (212) 607-8161
Email:       lgrinberg@mololamken.com

*Attorneys for Category 1 Objectors' Counsel Carey Danis & Lowe, Heninger Garrison Davis, LLC, Lanier Law Firm, P.C., Tautfest Bond, PLLC, and Watts Guerra LLP*