# Exhibit 1

James G. Onder
W. Wylie Blair
Mark E. Berns
**ONDERLAW, LLC**
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
blair@onderlaw.com
onder@onderlaw.com
berns@onderlaw.com
(314) 963-9000 telephone
(314) 963-1700 facsimile

*Attorneys for Plaintiffs with Roundup Exposure Claims Over Which There Is No Federal Jurisdiction*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
|---|---|
| This document relates to: | **AFFIDAVIT OF JAMES G. ONDER SUBJECT TO SPECIAL APPEARANCE, IN SUPPORT OF OBJECTIONS TO CLC COMMON BENEFIT MOTION, DOC. 12394** |

## AFFIDAVIT OF JAMES G. ONDER, ESQ.

1. My name is James G. Onder, and I am the Managing Member of OnderLaw, LLC, located in St. Louis, Missouri.

2. I am over the age of 18, of sound mind, and have personal knowledge, except where indicated, of the information contained herein.

3. As used in this Affidavit, terms will be defined as follows:

   a. Leadership firms shall refer to one or more of the following: Wietz Luxenberg PC, Miller Law Firm LLC, Andrus Wagstaff, P.C., Baum Hedlund, and/or the Law Offices of Jennifer Moore;

   b. Monsanto discussions refer to discussions with Scott Partridge, General Counsel for Monsanto and/or Lana Varney, Outside Settlement Counsel for Monsanto;

   c. Mediators refer to Kenneth Feinberg and/or the Honorable Glenn Norton (ret.);

   d. Special Master will refer to Robert Blitz, appointed by St. Louis County Circuit Court;

   e. OnderLaw, LLC refers to statements and information which the Affiant, James G. Onder, Managing Member of OnderLaw, LLC, has from personal information, knowledge and belief.

4. OnderLaw, LLC is a St. Louis, Missouri law firm representing 22,318 Roundup plaintiffs, virtually all of which are filed and/or under a tolling agreement in the City of St. Louis, St. Louis County, Jefferson County, and Jackson County, Missouri. In addition, Onder Law LLC has acted as Missouri "local counsel" on 3,490 cases filed in Missouri on behalf of firms across the country, including 424 cases for one leadership firm and 709 cases for another.

5. OnderLaw, LLC is not one of the "Johnny-Come-Lately" firms that entered the litigation after the Daubert Rulings and/or the first verdict, alleged to be "free loading" off the efforts of leadership. The firm entered the litigation in 2016 and has throughout the litigation consistently had more clients than any of the leadership firms requesting a common benefit fee herein. The firm has been actively involved in the workup and litigation of the 22,318 cases, whose interests the firm represents, and has received no help from the MDL or leadership firms.

6. Of the 22,318 clients represented by the firm, only 27 client cases are filed in the MDL, owing to the inadvertent actions of one leadership firm, and a former associate who left the firm and continued to act as co-counsel with that leadership firm after his departure. In particular,

1

one of the leadership firms for whom OnderLaw acted as local counsel prepared a Complaint for filing in the City of St. Louis, working with one of OnderLaw, LLC's associates, and filed a Missouri State Court Complaint with more than 100 plaintiffs, such that it was subject to Removal. The same leadership firm filed three additional cases with OnderLaw acting as local counsel in the Eastern District Missouri through the same OnderLaw associate, who left the firm shortly after the filings, but continued to act as local counsel for the leadership firm.

7.  On the Complaints at issue, there are a total of 27 OnderLaw clients in the Federal MDL. But for the actions of the leadership firm in conjunction with the former firm associate, Onderlaw would not have any cases in the federal MDL. In essence, less than 1/10 of 1% of OnderLaw cases are filed in the MDL and are there solely owing to the actions of a leadership firm and a former associate, both of whom serve to benefit from the entry of a common benefit order, which actions were taken shortly before the associate's departure.

8.  OnderLaw, LLC's 22,318 cases have NOT settled.

9.  During discussions, Monsanto has indicated it has settled 32,000 cases with the leadership firms.

10. Upon information and belief, the leadership cases have settled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the accuracy of which can be confirmed by an *in camera* inspection of the Settlement Agreements reached between the leadership firms and Monsanto, which *in camera* inspection OnderLaw, LLC formally requests to establish a record as to the fees earned by leadership firms.

11. A 40% contingent fee is customary on mass tort cases. Assuming ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the total settlement reached with leadership firms would be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

12. In addition to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the leadership firms now seek an additional 8.25% of all settlements, past, present and future, relative to Roundup. The requested 8.25% of the gross settlement represents 20% of the attorney's fee on every case, past, present and future, including on the cases of individuals who have yet to have been diagnosed with cancer, whose claims may be filed years into the future. In essence, leadership seeks a lifetime annuity, without limiting the scope to only those cases that have received benefit from leadership's work and/or cases that have actually settled.

13. Monsanto has represented it has $10 billion in global settlement authority to resolve all Roundup cases. Under leadership's common benefit proposal, leadership seeks approximately an additional $800 million dollars in common benefit fees, in addition to the ▮▮▮▮▮▮▮▮▮▮▮▮▮ fees earned through the representation of their clients. In addition, substantial fees will be earned from the large verdicts which were received, above and beyond these sums.

14. While preparing a case for trial entails a lot of work, it is unprecedented for MDL Leadership to suggest it is entitled to nearly $1 billion in fees per trial, for each of the three trials.

15. ███████████████████████████████████████

16. ███████████████████████████████ Such statements were consistent with the leadership firms' agreement to waive a common benefit fee, for ███████ ████████████████████████ was not done for the common benefit, but instead for personal gain.

17. Very recently, ████████████████████████████ ████████████████

18. ████████████████████████████████████████

19. OnderLaw received multiple phone calls from multiple representatives of leadership firms urging OnderLaw to settle its cases ████████████████ ████████, for no experts or depositions would be available to OnderLaw and its clients; and therefore, OnderLaw needed to take the low settlement offers being made.

20. Two leadership firms specifically represented there would be no common benefit request, suggesting such was further reason to take a low settlement offer.

21. To date, the offers made to OnderLaw and its clients ████████ ████████████████████████████████████████ Therefore, OnderLaw continues to actively litigate its cases and is seeking trial settings.

22. ████████████████████████████████████████

3



23. ▮▮▮ OnderLaw was told by leadership that they were not going to put together a trial package, as is customary when a federal MDL plaintiff steering committee works for the common benefit.

24. ▮▮▮

25. ▮▮▮

26.   Further discussions with leadership firms included not only statements that there would be "no experts" available to OnderLaw and its clients. One member indicated "I am pretty much a genius when it comes to this" and "you will never be able to duplicate it." Other remarks included "Who are you going to get as experts? We have all of them tied up." Such statements were made in the context of trying to get OnderLaw and its clients to take very low offers.

27.   OnderLaw has been involved in this litigation since 2016, filing some of the earliest cases in Missouri. In the context of being denied the benefit of the work performed by MDL leadership, OnderLaw continued in the discovery process, continued document production requests, noticed depositions, retained experts, and worked with its experts to prepare reports – all without any assistance of the MDL or leadership.

28.   All of the above occurring on the heels of six talcum powder ovarian cancer trials in which OnderLaw was involved, and with multiple additional trials set in the coming months pre-COVID, OnderLaw worked out a deal with two law firms, whereby those law firms would assist in final trial preparation and would do work which would have otherwise been provided to OnderLaw by MDL leadership in return for a common benefit fee.

29.   Having been denied access to MDL common benefit work, OnderLaw hired two firms and agreed to pay the firms an approximate total of 10% of all fees earned, in return for doing work which it otherwise would have received as MDL work product in return for a common benefit assessment, including finalizing expert workup and the creation of a trial package. OnderLaw is set to depose Monsanto toxicologist, Dr. Donna Farmer, Ph.D., on February 25, 2021,

and Dr. Daniel Goldstein, M.D., Medical Sciences and Outreach and Distinguished Science Fellow for Monsanto, on March 4, 2021. These depositions were set over Monsanto's objections following hearings before St. Louis County Special Master Prebil. OnderLaw has also noticed the depositions of Monsanto witnesses Brett Begemann, Steven Levine, William Reeves, and Werner Baumann and anticipate those taking place in the coming months.

30. Leadership firms now seek an 8.25% of the gross settlement or 20% of OnderLaw fees for the work product to which OnderLaw and its clients were denied access. To allow the imposition of a common benefit fee would be to effectively "double tax" our firm.

31. While MDL leadership firms may now, in 2021, be willing to share work product, they were not willing to do so at the time critical decisions needed to be made regarding discovery, depositions, experts and trial preparation. The current offer to share is "Too little. Too late," and is of no help at this point in time, alternate work up and expert witness plans and expenses already having been incurred.

32. Since the beginning, OnderLaw has been active in the Missouri Roundup litigation, working to advance the litigation on behalf of its clients, leaderships' clients and all Missouri litigants, which work continues despite leadership's abandonment of the unsettled Missouri litigants.

33. In fact, leadership firms jockeyed for and were given trial settings in Missouri, to the detriment of OnderLaw's clients, with OnderLaw trial dates pushing into the COVID period, resulting in continuances.

34. Most recently, the St. Louis County Circuit Court appointed a Special Master to coordinate discovery and move unsettled Missouri cases toward resolution or trial. The Special Master did not go to the leadership firms to assist in that task. The Special Master asked OnderLaw to act as the point firm to coordinate with unsettled firms across the country.

35. The leadership firms indicate that as of July 2018, there were 18,000 cases on file with the leadership firms representing the "vast majority" of these plaintiffs. Of those 18,000 cases, 2,484 were represented by the attorneys at OnderLaw, so to suggest that the five leadership firms were solely dominating the litigation is somewhat disingenuous.

AFFIANT FURTHER SAYETH NAUGHT

Dated this 3rd of February 2021.

JAMES G. ONDER, ESQ.

STATE OF MISSOURI )
) ss.
COUNTY OF ST. LOUIS )

    IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this 3 day of February 2021.

_____
Notary Public

My Commission Expires:

TAYLOR ELISE WAGNER
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: July 29, 202_
Commission Number: 14610580

6