# Exhibit 6

TIMOTHY A. SCOTT (SBN 215074)
SINGLETON SCHREIBER
McKENZIE & SCOTT
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile:  (619) 652-9964
email: tscott@ssmsjustice.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
|---|---|
| This document relates to: | **DECLARATION OF TIMOTHY A. SCOTT, SUBJECT TO SPECIAL APPEARANCE, IN SUPPORT OF OBJECTIONS TO CLC COMMON BENEFIT MOTION, Doc. 12394** |

1

**Case No. 16-md-02741-VC, DECLARATION OF SIGNATORY, SUBJECT TO SPECIAL APPEARANCE, IN SUPPORT OF OBJECTIONS TO CLC COMMON BENEFIT MOTION**

## DECLARATION OF SIGNATORY UNDER PENALTY OF PERJURY

I, TIMOTHY A. SCOTT, declare that:

1. This Declaration, and the undersigned counsel's participation in these objections, constitute a special appearance for non-MDL plaintiffs, subject to the undersigned's objections to this Court's jurisdiction. I object to the MDL No. 2741 Court's jurisdiction over me, over my law firm, and over my and my firm's non-MDL Roundup clients, to the extent that they are not members of the existing MDL. For clients not already in the MDL, the undersigned only submits this Declaration, and signs briefing, subject to the understanding that jurisdictional objections are not waived.[1] It is my position that, for cases not filed as part of MDL No. 2741, this Court lacks jurisdiction to enter orders requiring deposits and/or payments out of proceeds for resolving my and my firm's clients' Roundup-exposure related cases. This disclaimer of jurisdiction is controlling over anything to the contrary.

2. I am a partner at Singleton Schreiber McKenzie & Scott, LLP. At this time, we represent approximately 750 clients with claims arising from Roundup exposure. Of this number, only 4 were voluntarily filed in MDL No. 2741. Beyond those cases, no other client acquiesces to this Court's jurisdiction over them, their cases, or their counsel for any purpose.

3. There is one additional client whose case was involuntarily removed and transferred here after being filed in state court on the date Defendants' response to my client's preference motion was due. We will file a motion to remand this case back to the tribunal with subject matter jurisdiction over the claims.

---

[1] *See, e.g., Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 765 (9th Cir. 1977); *Hartland v. Alaska Airlines,* 544 F.2d 992 (9th Cir. 1976).

2

**Case No. 16-md-02741-VC, DECLARATION OF SIGNATORY, SUBJECT TO SPECIAL APPEARANCE, IN SUPPORT OF OBJECTIONS TO CLC COMMON BENEFIT MOTION**

4. I, my firm, and our clients did not voluntarily subject ourselves to this Court's jurisdiction with regard to any other Roundup case. We have not signed any participation agreement with court-appointed counsel in MDL No. 2741.

5. In our view, for any cases not filed in the MDL, this Court lacks personal and subject matter jurisdiction to enter an order requiring the deposit and/or payment of a share of the proceeds arising from the settlement of the Roundup-related claims of my or my firm's clients, because their cases are not properly before the Court.

6. The work of the MDL Plaintiffs' Co-Lead Counsel (CLC), the Plaintiffs' Executive Committee (PEC), and those performing "approved common benefit work" (collectively "MDL Efforts") did not benefit myself or my firm in the representation of our clients, nor was a benefit thereby bestowed upon our clients.

7. The CLC's motion claims that it "conducted the substantial work of the litigation in . . . state courts" (CLC Mot., 1:6), and that "the MDL Leadership conducted most of the state court litigation" (*id*. at 2:6). [Doc. 12394, Pages 7-8 of 33]. This is not true as to the clients Singleton Schreiber McKenzie & Scott LLP represents. The CLC has done no work in state court for our clients, much less has the CLC conducted "the substantial work." Therefore, as to our clients, the CLC's statement is not true.

8. The CLC's motion discusses the discovery it pursued, motions that it fought in the federal MDL court, depositions, experts, *Daubert* motions, and cases tried to verdict. But these efforts were undertaken on behalf of their own clients, not "above and beyond" for clients represented by other lawyers.

9. The alleged MDL Efforts did not benefit me, my firm, or my clients. I have not received work product with the CLC or the PEC. To my knowledge, the MDL Efforts were never

3

made available to me and my clients. No one from the CLC or PEC offered to provide me or, to my knowledge, my firm a trial packet, documents, transcripts, or experts. I have no reason to believe that most of the MDL Plaintiffs' experts will be available in any of my cases.

10. The CLC states that, "the MDL leadership's [sic] led the Court to appoint Special Master Ken Feinberg, which in turn led to the current settlement of Roundup cases."[2] However, the CLC members settled their own cases and their settlement efforts did not benefit me, my firm, or our clients. This appointment has not led to the settlement of *any* of our cases and, in fact, none of our cases have settled. To the extent that Singleton Schreiber McKenzie & Scott LLP has attempted to negotiate settlement offers with the Defendants, neither the CLC nor the PEC has participated in those efforts.

11. The CLC states that they and the PEC "retain[ed] the world's leading experts in their respective fields."[3] To the extent that this is true, it not only fails to support the argument that the MDL Efforts benefitted claims and claimants over which the MDL lacks jurisdiction, but it proves the opposite—that the CLC actually harmed everyone other than their own clients by monopolizing "the world's leading experts" for the sole pecuniary benefit of themselves and their own clients, to the detriment of everyone else. I attended a Roundup CLE hosted in Denver, CO in June, 2019. During a presentation at that conference, leadership counsel specifically advised the attendees not to assume that we could use the expert-witness testimony that they had developed. Counsel asserted that we would have to make our own plans for expert witnesses and expert-witness testimony. I recall one of the members of the audience challenging the speaker as to what "common benefit" leadership was actually providing. The speaker, Aimee Wagstaff, responded

---

[2] CLC Mot., 3:2-3 [Document 12394, Page 9 of 33].
[3] CLC Mot., 4:2 [Doc. 12394, Page 10 of 33].

4

essentially that taking their cases to trial, expending money on the litigation, and being successful at trial was the common benefit.

12. I have attempted to retain several of the experts who leadership counsel used at trial. Most of them have stated that they are either too busy or otherwise uninterested in working with our firm.

13. The CLC contends that the MDL Efforts are responsible for successful representation of plaintiffs in Missouri courts.[4] However, to my knowledge, the CLC and the PEC did not receive an order from the Missouri courts that recognizes their entitlement to compensation working for plaintiffs with whom the CLC and/or PEC have not contracted. This statement is based on the fact that the CLC Motion does not claim that its fee and expense demand has the imprimatur of any state Judge, because I never received notice of such a motion or order in my cases, and because I have been actively litigating Roundup cases in Missouri and believe that had such an order ever been issued in a Roundup case, then in the ordinary course of my active litigation practice, then I would know of it.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, that if called as a witness I would and could testify competently, and that I make this declaration based on my personal knowledge.

EXECUTED on __2__ February, 2021.

TIMOTHY A. SCOTT
Singleton Schreiber McKenzie & Scott LLP

---

[4] *E.g.*, CLC Mot., 5 [Doc. 12394, Page 11 of 33].