# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br><br>*Ramirez, et al. v. Monsanto Co.*,<br>Case No. 3:19-cv-02224 | MDL NO. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**DECLARATION OF ELIZABETH J. CABRASER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, APPOINTMENT OF INTERIM CLASS AND SUBCLASS COUNSEL, DIRECTION OF NOTICE UNDER FED. R. CIV P. 23(e), SCHEDULING OF A FAIRNESS HEARING, AND STAY OF THE FILING AND PROSECUTION OF ROUNDUP-RELATED ACTIONS BY SETTLEMENT CLASS MEMBERS**<br><br>Date:  March 18, 2021<br>Time:  2:00 PM<br>Place:  Courtroom 4, 17th floor<br>Judge:  Honorable Vince Chhabria |

I, Elizabeth J. Cabraser, declare as follows:

1. I am a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"). I am a member in good standing of the Bars of the State of California and the Northern District of California. I respectfully submit this declaration in support of the Motion for Preliminary Approval of Proposed Class Settlement, Appointment of Interim Class and Subclass Counsel, Direction of Notice Under Fed. R. Civ. P. 23(e), Scheduling of a Fairness Hearing, and Stay of the Filing and Prosecution of Roundup-Related Actions by Settlement Class Members. Except as otherwise noted, I have personal knowledge of the facts set forth herein, and could testify competently to them if called upon to do so.

2. The Settlement Agreement is attached hereto as **Exhibit A**.

## Underlying Complaints

3. One of the original Class Action Complaints in this action was filed by Robert Ramirez on April 24, 2019. The *Ramirez* Complaint sought, *inter alia*, a single determination, under Rules 23(b)(2) and 23(c)(4), of the question of general causation. Defendant filed its Answer to the *Ramirez* Complaint on July 24, 2019. The amended *Ramirez* Complaint, filed June 24, 2020, sought to represent persons who had been exposed to Roundup, including both those who had developed NHL and those who had not yet developed NHL.

4. The other underlying Class Action Complaint was filed by Aaron Sheller and sought, *inter alia*, medical monitoring for those who had been exposed to Roundup but had not developed NHL.

5. The Second Amended Complaint in the *Ramirez* action, filed simultaneously herewith, incorporates the plaintiffs from the *Sheller* action, which will be dismissed.[1]

---

[1] Counsel for *Ramirez* and *Sheller* previously filed a stipulation and proposed order to consolidate the two actions (MDL Doc. 11672), but that order has yet to be entered.

**Settlement Negotiations**

6.	In late July 2019, after the Court appointed Kenneth R. Feinberg as mediator, settlement discussions began in earnest under his supervision. Those discussions continued between proposed Class and Subclass Counsel and Monsanto for nearly a full year, in person during the fall and winter of 2019, and then remotely once the COVID-19 pandemic began. Beginning in January 2020, meetings occurred on a virtually daily basis, nights and weekends not excepted.

7.	This year-long process culminated in a proposed class settlement submitted to the Court on June 24, 2020, which represented a novel attempt at an issue-preclusive settlement aimed to resolving an important central factual issue but otherwise leaving the resolution of individual claims to individual litigation. MDL Doc. 11042. On July 6, the Court issued an order indicating it was tentatively inclined to deny preliminary approval and anticipating that the parties would "move to Plan B." MDL Doc. 11182. The parties elected to withdraw the settlement. MDL Doc. 11193.

8.	At that time, there was no "Plan B." But, with the Court's concerns firmly in mind, the parties went back to work. Over many additional months, the parties negotiated, preserving and enhancing certain elements of the 2020 settlement (such as the DAGP), reformulating others (like eliminating the preclusive effect of the Science Panel), and creating new benefits like the compensation program and labeling feature.

9.	The negotiations of both settlements were intense and included the exchange of dozens and dozens of drafts of settlement documents and memoranda, status reports to the mediator, and direct input on Settlement terms from the expert vendors proposed to administer the programs, as well as other consulting experts related to science and medicine.

10.	Settlements of this magnitude, providing programmatic benefits this innovative and comprehensive, are never easy, and the parties have been at many times far apart and often at odds. Each side threatened to walk away at multiple points, and the mediator's direct resolution of disputes was required, at times, to prevent the discussions from collapsing

altogether. While the content of the negotiations is confidential, the integrity and arm's-length nature of the process was ensured, and can be attested to by, the mediator.

11. In negotiating both the initial settlement proposal and the one currently before the Court, the parties did not engage in substantive negotiation about or reach any agreement on attorneys' fees, reimbursement of expenses, or class representative service awards (all of which will be subject to future application to and approval by the Court) until they had resolved all essential terms of the relief available to the Class.

### The Proposed Settlement Class/Subclass Representation

12. At all times during the necessary stages of the negotiations, the Subclasses were also represented by the proposed Representatives for each Subclass (Robert Ramirez for Subclass One; Jerry Agtarap, Dexter Owens, John Elko, Aaron Sheller, and Kate Cain for Subclass Two), whose claims are typical of the Subclasses they seek to represent, and proposed Subclass Counsel (William Audet for Subclass One; TerriAnne Benedetto and Elizabeth Fegan for Subclass Two).

13. The proposed Class and Subclass Representatives regularly communicated with their attorneys regarding the case overall and the allegations in the complaint. Each reviewed and approved the Second Amended Class Action Complaint. Each was also consulted on the terms of the Settlement Agreement before it was signed, approves its terms, and supports its approval by the Court. Each has expressed continued willingness to protect the Class until the Settlement is approved and its administration completed.

### Selection of Claims Administrator, DAGP Administrator, and Settlement Class Notice Agents

14. Class Counsel selected Wolf Garretson, LLC to serve as proposed Diagnostic Accessibility Grant Program ("DAGP") Administrator based on Garretson's experience with the administration of complex litigation and settlement programs involving medical-related relief. Such programs include the *Deepwater Horizon*, *NFL Concussion*, and

*World Trade Center* cases. Garretson's qualifications detailed in the Garretson Declaration, filed simultaneously herewith.

15. Class Counsel selected Verus, LLC to serve as proposed Claims Administrator based on their considerable experience with asbestos litigation and other high-stakes, complex class litigation. Verus' qualifications are attached in the Verus Declaration, filed simultaneously herewith.

16. To select the proposed Settlement Class Notice Agents, Class Counsel solicited proposals from four well-known and experienced notice vendors, and received detailed and competitive bids from each vendor. After reviewing these proposals and engaging in multiple rounds of discussions with the providers, Class Counsel selected Kinsella Media and Signal IM, whose proposals represented the most cost-effective, efficient, and comprehensive plans, and which best reflected a recognition of the demographics and circumstances of the settlement class and subclasses and dedication to reaching and communicating with them. Kinsella's qualifications, along with the notice plan, are set out in the accompanying Declaration of Shannon Wheatman. Signal's qualifications and the work they have done thus far are set out in the accompanying Declaration of James Messina.

## Additional Work Performed on Behalf of the Class

17. In addition to negotiating the Settlement itself, Class Counsel worked over many months closely with the DAGP and Claims Administrator, as well as the Settlement Class Notice Agents, to design the Settlement programs.

18. The first step was to understand where Class Members—persons exposed to Roundup—live and work. With the Claims Administrator, Class Counsel used demographic and occupational data sourced from various government agencies to derive reliable estimates of both the population of workers in agricultural and groundskeeping occupations and the distribution of that population throughout the United States.

19. The Claims Administrator refined these estimates using data on per capita spending on gardening and landscaping products, as well as data acquired from Monsanto

regarding retail sales of Roundup. The results were visuals—"heat maps"—and tabulations of occupational and residential populations, aggregated at the ZIP Code, County, core-based statistical area ("CBSA"), and State levels.

20. The data were further refined using extracts from the USDA's Agricultural Census, which identified the specific geographic regions where Roundup is most commonly used, and the National Agricultural Worker's Survey, which yielded information on the countries of origin of migrant farm labor entering the United States each year.

21. Class Counsel also worked to understand where Class Members diagnosed or likely to be diagnosed with NHL are concentrated using datasets from the National Cancer Institute.

22. Having found where Class Members live and work, the next step was to talk to them. Class Counsel commissioned Settlement Class Notice Agent Signal IM to conduct in-depth long-form interviews of migrant agricultural workers, non-migrant agricultural workers, and landscapers. Signal also conducted a nationwide survey of individuals likely to fit the Class definition who worked in the key industries most affected by professional Roundup exposure: landscaping and groundskeeping, agriculture, and farm, ranch, or aquaculture animal operations.

23. These efforts yielded crucial insights on how to design the Class Notice Plan to alert Class Members to the Settlement, and to enable them to participate in it; which Notice channels to use to make Notice most effective; and which third-party organizations to target for the DAGP outreach effort. All of this information was used in designing the Notice Plan and the Settlement programs. Further details on this work are provided in the Declaration of James Messina.

24. Class Counsel also became well-versed in the science necessary both to design the DAGP and frame the Advisory Science Panel inquiry. Class Counsel, working with the DAGP Administrator, reviewed literature on the diagnostic criteria for NHL in order to understand the clinical capability and capacity requirements necessary for DAGP grant recipients. And Class Counsel retained and worked with consulting experts on questions of

epidemiology and toxicology to understand how to frame the questions posed to the Advisory Science Panel.

25. In consultation with economists and other experts, Class Counsel also spent considerable time developing and analyzing the framework for the compensation program.

26. These efforts will only intensify going forward. Class Counsel will work with class members every step of the way, beginning immediately at preliminary approval with the opening of registration and the availability of Accelerated Payment Awards, continuing at final approval with the availability of Claims Program Awards, and then after finality with the Settlement fully operational. This commitment is formalized in the Settlement's provision for the Legal Services Program.

### Qualifications of Proposed Class Counsel Relevant to Fed. R. Civ. P. 23(g)

27. Proposed interim Settlement Class/Subclass Counsel have the experience, skill, knowledge, and resources justifying their appointment under Rule 23(g). Proposed Class Counsel include: Elizabeth J. Cabraser (lead), Robert L. Lieff, and Steven E. Fineman of Lieff Cabraser Heimann & Bernstein, LLP; Samuel Issacharoff; James R. Dugan, II (co-lead) and TerriAnne Benedetto of the Dugan Law Firm, APLC; William M. Audet (co-lead) of Audet & Partners, LLP; and Elizabeth Fegan of FeganScott LLC. Their relevant credentials are outlined in **Exhibit B**.

*  *  *

28. The form Escrow Agreement for deposit of Settlement funding is attached as **Exhibit C**.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this 4th day of February, 2021, in Sebastopol, California.

_____
Elizabeth J. Cabraser