# CABRASER DECLARATION

# EXHIBIT  C

# FORM OF ESCROW AGREEMENT

FORM OF

SETTLEMENT FUND ESCROW AGREEMENT

THIS SETTLEMENT FUND ESCROW AGREEMENT (this "Agreement") is made and entered into as of [DATE] (the "Effective Date"), by and among MONSANTO COMPANY (the "Defendant"), Elizabeth J. Cabraser, Steven E. Fineman, James R. Dugan II, and William M. Audet ("Class Counsel"), Kenneth R. Feinberg (the "Settlement Administrator" and, together with the Defendant and Class Counsel, sometimes referred to individually as a "Party" and collectively as the "Parties"), and Citibank, N.A. acting through its Citi Private Bank business unit, as escrow agent (the "Escrow Agent").  Capitalized terms not defined herein shall have the meanings assigned to them in the Settlement Agreement (defined below).

RECITALS

WHEREAS, the Defendant, by and through its attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel and additional counsel for the Settlement Class and Subclasses set forth in the Settlement Agreement have entered into the Class Action Settlement Agreement (the "Settlement Agreement"), dated as of February 3, 2021, in connection with *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-MD-02741-VC & 3:19-CV-02224-VC;

In connection with the Settlement Agreement, Defendant has agreed to pay, or cause to be paid, the Settlement Fund Amount (excluding a portion of the Settlement Class Notice Amount paid as described in Section 3.6(a)(i) of the Settlement Agreement) and the amount of Class Counsel Attorneys' Fees into a settlement fund escrow account (referred to in the Settlement Agreement as the Settlement Fund and referred to in this Agreement as the "Escrow Account") established pursuant to this Agreement, as and to the extent required by the Settlement Agreement;

The Settlement Agreement provides for the creation of the Escrow Account from which Funded Class Benefits, Additional Permitted Fund Uses, and Class Counsel Attorneys' Fees are paid under the Settlement Agreement as and to the extent set forth in Article III of the Settlement Agreement;

The Claims Administrator has applied for a taxpayer identification number ("TIN") for the Escrow Account, which shall be titled ["Monsanto Class Action Settlement Fund"] and the TIN is [XX-XXXXXXX];

The Escrow Account is intended to qualify as a "qualified settlement fund" within the meaning of Treasury regulations section 1.468B-1 *et seq.* for all U.S. federal and applicable state and local income tax purposes; and

The United States District Court for the Northern District of California, Judge Vince Chhabria (or any successor judge designated by the United States District Court for the Northern District of California, or a magistrate judge designated by Judge Chhabria or such designated successor judge, as set forth in and pursuant to Rule 72 of the Federal Rules of Civil Procedure),

presiding in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC (the "Court") has approved this Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.    Appointment.  The Parties hereby appoint the Escrow Agent as their escrow agent upon the terms and subject to the conditions set forth herein, and the Escrow Agent hereby accepts such appointment and agrees to act as escrow agent in accordance with the terms and conditions set forth herein.  The Parties hereby agree that the Escrow Agent shall be the "Escrow Agent" as such term is defined in the Settlement Agreement, and this Agreement shall be the "Escrow Agreement" as such term is defined in the Settlement Agreement.

2.    Escrow Funds.

(a)    The Parties shall deposit, or cause to be deposited, with the Escrow Agent to be held in the Escrow Account, such amounts as, when and to the extent required by the Settlement Agreement to be deposited in the Escrow Account.  For the avoidance of doubt, the amount paid by Defendant to Class Counsel described in Section 3.6(a)(i) of the Settlement Agreement shall not be deposited in the Escrow Account.

(b)    The Escrow Agent hereby acknowledges receipt of the foregoing amounts described in Section 2(a) hereof, together with all products and proceeds thereof, including all interest, dividends, gains and other income (collectively, the "Escrow Earnings") earned with respect thereto (collectively, the "Escrow Funds") in the Escrow Account, when and as received in accordance with and subject to the terms and conditions of this Agreement.  The Escrow Agent shall have no duty to solicit, and no right to enforce the Parties' obligations under this Agreement or the Settlement Agreement with respect to or otherwise demand or require, the delivery of any funds into the Escrow Account.

(c)    For greater certainty, all Escrow Earnings shall be retained by the Escrow Agent and reinvested in the Escrow Account and shall become part of the Escrow Funds; and shall be disbursed as part of the Escrow Funds in accordance with the terms and conditions of this Agreement.

3.    Investment of Escrow Funds.

(a)    The Escrow Agent shall hold the Escrow Funds in a segregated interest-bearing deposit obligation of Citibank, N.A., with an initial interest rate of 25bps (0.25%), insured by the Federal Deposit Insurance Corporation ("FDIC") to the applicable limits. The Parties acknowledge that the initial interest rate is subject to change from time to time and shall be reflected in the monthly statement provided to the Parties. To the extent Escrow Funds are made available for investment at the direction of the Parties, such funds will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal, and avoidance of concentration risk, as set forth in Section 15.2(a) of the Settlement Agreement, and shall be invested only in short-term direct obligations of the United States of America and/or short-term obligations for which the full faith and credit of the United States of America is pledged to provide

for the payment of principal and interest unless otherwise agreed in writing by the Parties; provided, however, the scope of any such permissible investments shall be further limited to include only those investments that a "qualified settlement fund," within the meaning of Treasury regulations section 1.468B-1 *et seq*., may be permitted to invest in, pursuant to the Treasury regulations, or any modification in Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.  The Escrow Funds shall at all times remain available for distribution in accordance with Section 4 below.

(b)     The Escrow Agent shall send an account statement to each of the parties listed in Section 11 hereof on a monthly basis reflecting activity in the Escrow Account for the preceding month.

(c)     The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the escrowed property, as applicable, provided that the Escrow Agent has made such investment, reinvestment or liquidation of the escrowed property in accordance with the terms, and subject to the conditions of this Agreement. The Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice.

4.     Disposition and Termination of the Escrow Funds.

(a)     Escrow Funds.  The Escrow Agent shall hold and release the Escrow Funds as follows:

(i)     Upon receipt of a Joint Release Instruction with respect to the Escrow Funds, the Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Joint Release Instruction, disburse all or part of the Escrow Funds in accordance with such Joint Release Instruction.

(ii)     Upon receipt of a Settlement Administrator Release Instruction with respect to the Escrow Funds, the Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Settlement Administrator Release Instruction, disburse all or part of the Escrow Funds in accordance with such Settlement Administrator Release Instruction.

(iii)     Upon receipt of a Termination Release Instruction with respect to the Escrow Funds, the Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Termination Release Instruction, disburse all or part of the Escrow Funds in accordance with such Termination Release Instruction. The Escrow Agent will act on such Termination Release Instruction without further inquiry (except as required by Section 4(a)(vii) hereof).

(iv)     Prior to the Settlement Agreement's termination, the Escrow Agent shall retain the Escrow Funds, other than the funds required to pay Tax Expenses or the fees earned by and due and payable to the Escrow Agent pursuant to Section 7 hereof, in the Escrow Account except to the extent disbursed pursuant to each Joint Release Instruction, Settlement Administrator Release Instruction and Termination Release Instruction.

(v)     Defendant and Class Counsel shall jointly notify the Escrow Agent if the Settlement Agreement has been terminated.

(vi)     All payments of any part of the Escrow Funds shall be made by wire transfer of immediately available funds or check as set forth in the Joint Release Instruction, the Settlement Administrator Release Instruction, or the Termination Release Instruction, as applicable.

(vii)     Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Escrow Account under the terms of this Agreement must be in writing, executed by the appropriate Party or Parties as evidenced by the signatures of the person or persons set forth on Exhibit A-1, Exhibit A-2 and Exhibit A-3 (the "Authorized Representatives") and delivered to the Escrow Agent either (i) by confirmed facsimile only at the fax number set forth in Section 11 below (and receipt by the Escrow Agent confirmed) or (ii) attached to an e-mail received from an e-mail address set forth in Section 11 (and receipt by the Escrow Agent confirmed) below.  In the event a Joint Release Instruction, Settlement Administrator Release Instruction, or Termination Release Instruction is delivered to the Escrow Agent, whether in writing, by facsimile or otherwise, the Escrow Agent shall seek confirmation of such instruction by telephone call back to the person or persons designated in Exhibit A-1, Exhibit A-2 and/or Exhibit A-3 (the "Call Back Authorized Individuals"), and the Escrow Agent may, reasonably and in good faith, rely upon the confirmations of anyone purporting to be a Call Back Authorized Individual.  To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs.  If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all such issues have been resolved.  The persons and telephone numbers for call backs may be changed only in writing, executed by an Authorized Representative of the applicable Party and actually received and acknowledged by the Escrow Agent.

(b)     Certain Definitions.

(i)     "Business Day" means any day that is not a Saturday, a Sunday or other day on which banks are not required or authorized by law to be closed in New York, New York.

(ii)     "Joint Release Instruction" means the joint written instruction executed by an Authorized Representative of Class Counsel and by an Authorized Representative of Defendant, directing the Escrow Agent to disburse all or a portion of the Escrow Funds.

(iii)     "Settlement Administrator Release Instruction" means written instruction executed by an Authorized Representative of the Settlement Administrator, by an Authorized Representative of Class Counsel and by an Authorized Representative of Defendant directing the Escrow Agent to disburse all or a portion of the Escrow Funds to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement.

(iv)     "Termination Release Instruction" means written instruction executed by an Authorized Representative of the Defendant directing the Escrow Agent to disburse

all or a portion of the Escrow Funds to the Defendant or its designee pursuant to Section 3.5 and/or Section 23.2(d) of the Settlement Agreement.

5. <u>Escrow Agent</u>. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein, which shall be deemed purely ministerial in nature, and no duties, including but not limited to any fiduciary duties, shall be implied. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties in connection herewith, if any (including the Settlement Agreement, except that the Escrow Agent acknowledges that certain provisions of the Settlement Agreement are referred to and incorporated by reference herein), nor shall the Escrow Agent be required to determine if any Person has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement. In the absence of willful misconduct, fraud or gross negligence, the Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any Joint Release Instruction, Settlement Administrator Release Instruction, or Termination Release Instruction furnished to it hereunder and believed by it to be genuine and to have been signed by an Authorized Representative of the proper Party or Parties so long as confirmed by the Party's or Parties' Call Back Authorized Individuals in accordance with this Agreement. Concurrent with the execution of this Agreement, the Parties shall deliver to the Escrow Agent authorized representative's forms in the form of <u>Exhibit A-1</u>, <u>Exhibit A-2</u> and <u>Exhibit A-3</u> attached hereto. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any document, notice, instruction or request, except as set forth in this Agreement. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any Party which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in a Joint Release Instruction or by order of the Court. The Escrow Agent may interplead all of the assets held hereunder into the Court or may seek a declaratory judgment from the Court with respect to certain circumstances, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets or any action or nonaction based on such declaratory judgment. The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder. The Escrow Agent will have no liability or obligation with respect to the Escrow Funds except to the extent that the Escrow Agent's willful misconduct, fraud or gross negligence was the cause of any loss. To the extent practicable, the Parties agree to pursue any redress or recourse in connection with any dispute (other than with respect to a dispute involving the Escrow Agent) without making the Escrow Agent a party to the same. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for any special, indirect, punitive, incidental or consequential losses or damages of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such losses or damages and regardless of the form of action.

6. <u>Resignation and Removal of Escrow Agent</u>. The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving sixty (60) calendar days' advance notice in writing of such resignation to the Parties. Any such resignation shall take effect upon the appointment of a successor escrow agent by the Court in accordance with Section 15.1(b) of the

Settlement Agreement, and delivery of the Escrow Funds to such successor escrow agent.  The Escrow Agent may be removed and replaced by joint motion made by Class Counsel and Counsel for the Defendant and granted by the Court.  The Escrow Agent's sole responsibility after the effectiveness of such resignation or removal shall be to hold and safeguard the Escrow Funds (without any obligation to reinvest the same) and to deliver the same to a substitute or successor escrow agent or as otherwise set forth in a Joint Release Instruction, and at the time of such delivery, the Escrow Agent's obligations hereunder shall cease and terminate.  In the event the Escrow Agent resigns, if the Parties have failed to appoint a successor escrow agent prior to the expiration of thirty (30) calendar days following receipt of the notice of resignation, the Escrow Agent may petition the Court for the appointment of such a successor escrow agent, and any such resulting appointment shall be binding upon all of the parties hereto. Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all of the escrow business of the Escrow Agent's line of business may be transferred, shall be the Escrow Agent under this Agreement without further act.

7.  <u>Fees and Expenses</u>.  All fees and expenses of the Escrow Agent are described in <u>Schedule 1</u> attached hereto and shall be paid from the Escrow Account upon receipt of a Joint Release Instruction, delivered in accordance with <u>Section 4(a)</u> hereof, with respect to payment of fees and expenses due and payable to the Escrow Agent.  The fees agreed upon for the services to be rendered hereunder are intended as full compensation for the Escrow Agent services as contemplated by this Agreement.

8.  <u>Indemnity</u>.  Each of the Parties shall jointly and severally indemnify, defend, and hold harmless the Escrow Agent and its affiliates and their respective successors, assigns, directors, officers, agents and employees (the "<u>Indemnitees</u>") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, actions, suits, proceedings, litigation, investigations, costs or expenses (including the reasonable and documented fees and expenses of one outside counsel and experts and their staffs and all reasonable and documented out-of-pocket expenses of document location, duplication and shipment) (collectively "<u>Escrow Agent Losses</u>") arising out of or in connection with (a) the Escrow Agent's execution and performance of this Agreement, tax reporting or withholding (other than any tax reporting or withholding associated with the Escrow Agent's fees), the enforcement of any rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except to the extent that such Escrow Agent Losses, as adjudicated by the Court, have been caused by the willful misconduct, fraud or gross negligence of such Indemnitee, or (b) its following a Joint Release Instruction, Settlement Administrator Release Instruction, or Termination Release Instruction, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof, in each case of clause (a) and clause (b) above, subject to the Escrow Agent's agreement to repay any such amounts for which it is ultimately adjudicated by the Court, that any Indemnitee was not entitled to be indemnified.  Notwithstanding anything to the contrary herein, the Parties agree, solely as between themselves, that any obligation for indemnification under this <u>Section 8</u> (or for reasonable fees and expenses of the Escrow Agent described in <u>Section 7</u> hereof) shall be borne by the Party or Parties determined by the Court to be responsible for causing the Escrow Agent Loss against which the Escrow Agent is entitled to indemnification or, if no such determination is made, then one-half by the Class Counsel and

one-half by the Defendant.  The Parties acknowledge that the foregoing provisions shall survive the resignation or removal of the Escrow Agent and the termination of this Agreement.

9.  <u>Tax Matters.</u>

(a)  The Parties agree that the Escrow Account is intended to be classified as a "qualified settlement fund" within the meaning of Treasury regulations section 1.468B-1, *et seq*. (and corresponding or similar provisions of state, local, or foreign law, as applicable).  The Escrow Account shall be treated as a qualified settlement fund from the earliest date possible, and the Defendant, the Claims Administrator and all other relevant parties agree to jointly file any relation-back election required to treat the Escrow Account as a qualified settlement fund from the earliest date possible.  The Escrow Agent agrees to cooperate (to the extent requested by the Claims Administrator) with any relation-back election required to treat the Escrow Account as a qualified settlement fund from the earliest date possible.

(b)  The "taxable year" of the Escrow Account shall be the "calendar year" as such terms are defined in section 441 of the Internal Revenue Code of 1986, as amended ("<u>IRC</u>"). The Escrow Account shall use the accrual method of accounting as defined in IRC section 446(c).

(c)  The Escrow Agent shall withhold any taxes required to be withheld by applicable law, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities in accordance with applicable law.  All such amounts withheld shall be treated for all purposes as though such amounts had been distributed to such Person in respect of which such withholding was required.  The Escrow Agent shall not be responsible for any income reporting to the Internal Revenue Service with respect to income earned on the Escrow Funds, however, the Escrow Agent shall comply with all instructions received from the Claims Administrator regarding the withholding of any amount on account of taxes and shall cooperate with other requests made by the Claims Administrator to enable the Claims Administrator to fulfill its responsibilities under the Settlement Agreement with respect to tax matters.

10.  <u>Covenants of Escrow Agent</u>.  The Escrow Agent hereby agrees and covenants with Class Counsel and the Defendant that it shall (i) perform all of its obligations under this Agreement, (ii) not deliver custody or possession of any of the Escrow Funds to anyone except pursuant to the express terms of this Agreement or as otherwise required by applicable law, (iii) in the performance of its obligations under this Agreement, to comply with all of its then-current policies and procedures regarding financial recordkeeping and reporting, collection, processing, possession, handling, clearance, settlement and/or remittance of funds and (iv) maintain books and records as reasonably necessary to facilitate compliance with the tax reporting requirements of the Escrow Account.

11.  <u>Notices</u>.  All communications to be given or delivered to Class Counsel, the Defendant or the Escrow Agent under or by reason of the provisions of this Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) on the day of transmission if sent by electronic mail ("e-mail") with a PDF attachment executed by an Authorized Representative of the Party/Parties or a representative of the Escrow Agent to the e-mail address given below, and

written confirmation of receipt is obtained promptly after completion of the transmission, (iv) by overnight delivery with a reputable national overnight delivery service, or (v) by mail or by certified mail, return receipt requested, and postage prepaid.  If any notice is mailed, it shall be deemed given five (5) Business Days after the date such notice is deposited with the United States Postal Service.  If notice is given to a Party or the Escrow Agent, it shall be given at the address for such Party or the Escrow Agent, as applicable, set forth below (or such other address as may be given in a like notice).

   If to Class Counsel, then to:

     Lieff Cabraser Heimann & Bernstein, LLP
     275 Battery Street, 29th Floor
     San Francisco, California 94111
     Attention: Elizabeth J. Cabraser
     Email: ECabraser@lchb.com

     Lieff Cabraser Heimann & Bernstein, LLP
     250 Hudson Street, 8th Floor
     New York, NY 10013
     Attention: Steven E. Fineman
     Email: SFineman@lchb.com

     Dugan Law Firm, APLC
     One Canal Place
     365 Canal Street, Suite 1000
     New Orleans, LA 70130
     Attention: James R Dugan, II
     Email: JDugan@dugan-lawfirm.com

     Audet & Partners LLP
     711 Van Ness Ave., Suite 500
     San Francisco, CA 94102
     Attention: William M. Audet
     Email: WAudet@audetlaw.com

   or, if to the Defendant, then to:

     Monsanto Company
     800 North Lindbergh Blvd.
     St. Louis, MO 63167
     Attention: Treasurer
     Email:  Brian.Branca@bayer.com

with a copy (which shall not constitute notice) to:

      Bayer U.S. LLC
      100 Bayer Boulevard
      Whippany, NJ 07981
      Attention: General Counsel

      Wachtell, Lipton, Rosen & Katz
      51 West 52nd Street
      New York, New York 10019
      Attention: Carrie M. Reilly
      Email: CMReilly@wlrk.com

or, if to Settlement Administrator, then to:

      Law Offices of Kenneth R. Feinberg, PC
      1455 Pennsylvania Ave NW #390
      Washington, DC 20004
      Attention: Kenneth R. Feinberg

or, if to the Escrow Agent, then to:

      Citibank, N.A.
      Citi Private Bank
      One Sansome Street, 24th Floor
      San Francisco, CA 94104
      Attention: Hamyd Mazrae
      Telephone No.:  415-627-6044
      Facsimile No.: 415-592-5584
      E-mail: hamyd.mazrae@citi.com

or, if to Claims Administrator, for the purposes of delivering monthly statements of activity in the Escrow Account only, then to:

      Verus LLC
      3967 Princeton Pike
      Princeton, NJ 08540
      Attention: Mark Eveland

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to this Section 11, such communications shall be deemed to have been given on the date received by the Escrow Agent.  In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate.

      12.    Termination.  This Agreement shall terminate on the first to occur of (a) the distribution of all of the amounts in the Escrow Account in accordance with this Agreement after

such time as the Defendant shall have paid, or cause to be paid, into the Escrow Account the amounts required to be paid into the Escrow Account pursuant to <u>Section 2</u> of this Agreement, (b) the distribution of all amounts in the Escrow Account in accordance with this Agreement pursuant to a Termination Notice given by the Defendant pursuant to Section 3.5 and/or Section 23.2(d) of the Settlement Agreement or (c) delivery to the Escrow Agent of a written notice of termination executed jointly by the Parties, after which this Agreement shall be of no further force and effect except that the provisions of <u>Section 8</u> hereof shall survive termination.

13.    <u>Miscellaneous.</u>  The provisions of this Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by all of the parties hereto.  Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by any party without the prior consent of the other parties.  This Agreement shall be governed by and construed under the laws of the State of Delaware.  Each party hereto irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the Court.  The parties hereto hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising from or relating to this Agreement. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the parties to this Agreement may be transmitted by facsimile or electronic transmission in portable document format (.pdf), and such facsimile or .pdf will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party. If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction. The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to the Escrow Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written. Except as expressly provided in <u>Section 7</u> and <u>Section 8</u>, nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Agreement or any funds escrowed hereunder.  The Parties and the Escrow Agent hereby acknowledge that this Agreement, the Escrow Agent, and the Escrow Account shall be subject to the continuing jurisdiction of the Court.

14.    <u>Compliance with Court Orders</u>.  In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other Person

by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

15.     Further Assurances.  Following the date hereof, each of the Escrow Agent and the Parties shall deliver to the other parties such further information and documents and shall execute and deliver to the others such further instruments and agreements as any of the foregoing shall reasonably request to consummate or confirm the transactions provided for herein, to accomplish the purpose hereof or to assure to any other party the benefits hereof.

16.     Assignment.  Except as set forth in Section 6 hereof, no assignment of the interest of any of the Parties or the Escrow Agent shall be binding upon the other Party/Parties or the Escrow Agent, as applicable, unless and until written notice of such assignment shall be filed with and consented to by the Escrow Agent or the other Party/Parties, as applicable.  Any transfer or assignment of the rights, interests or obligations hereunder in violation of the terms hereof shall be void and of no force or effect.

17.     Force Majeure.  The Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility), it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

18.     Compliance with Federal Law.  To help the U.S. Government fight the funding of terrorism and money laundering activities and to comply with Federal law requiring financial institutions to obtain, verify and record information on the source of funds deposited to an account, the Parties agree to provide the Escrow Agent with the name, address, TIN, and remitting bank for all Parties depositing funds at Citibank pursuant to the terms and conditions of this Agreement. For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

19.     Use of Citibank Name.  No publicly distributed printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent (provided, that the prior written consent of the Escrow Agent shall not be required to mention "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Agreement or the Settlement Agreement in any court filings or related documents prepared in connection with *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-MD-02741-VC & 3:19-CV-02224-VC).

20.     <u>Settlement Agreement</u>.    Notwithstanding anything to the contrary herein, the Parties agree, solely as between themselves, that in the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Settlement Agreement, (i) as between the Parties, the terms and provisions of the Settlement Agreement will control and (ii) to the extent governing the actions of Escrow Agent, as between the Escrow Agent on the one hand and the Parties on the other hand, the terms and conditions of this Agreement shall control.

\*    \*    \*    \*    \*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

<u>DEFENDANT</u>:

By: _____
Name: Brian Branca
Its:     Treasurer

<u>CLASS COUNSEL</u>:

By: _____
Name: Elizabeth J. Cabraser

By: _____
Name: Steven E. Fineman

By: _____
Name: James R. Dugan, II

By: _____
Name: William M. Audet

<u>SETTLEMENT ADMINISTRATOR</u>:

By: _____
Name: Kenneth R. Feinberg

<u>ESCROW AGENT</u>:

**CITIBANK, N.A.**

By: _____
Name: _____
Its: _____

## Schedule 1

### ESCROW AGENT FEE SCHEDULE
### Citibank, N.A., Escrow Agent

**Acceptance Fee**

To cover the acceptance of the Escrow Agent appointment, the study of the Agreement, and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group:

     **Fee:**        **WAIVED**

**Administration Fee**

The annual administration fee covers maintenance of the Escrow Account including safekeeping of assets in the Escrow Account, normal administrative functions of the Escrow Agent, including maintenance of the Escrow Agent's records, follow-up of the Agreement's provisions, and any other safekeeping duties required by the Escrow Agent under the terms of the Agreement. Fee is based on Escrow Amount being deposited in an interest bearing deposit obligation of Citibank, N.A., FDIC insured to the applicable limits.

     **Fee:**        **WAIVED**

**Tax Preparation Fee**

To cover preparation and mailing of Forms 1099-INT, if applicable, for the escrow parties for each calendar year:

     **Fee:**        **WAIVED**

**Transaction Fees**

To oversee all required disbursements or release of property from the Escrow Account to any party, including cash disbursements made via check and/or wire transfer, fees associated with postage and overnight delivery charges incurred by the Escrow Agent, as required under the terms and conditions of the Agreement:

     **Fee:**        **WAIVED**

**Other Fees**

Material amendments to the Agreement: additional fee(s), if any, to be discussed at time of amendment.

---

**TERMS AND CONDITIONS**: The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that Citibank or its legal counsel may be called upon from time to time to perform. Fees are also subject to satisfactory review of the documentation, and Citibank reserves the right to modify them should the characteristics of the transaction change. Citibank's participation in this program is subject to internal approval of the third party depositing monies into the escrow account to be established hereunder. The Acceptance Fee, if any, is payable upon execution of the Agreement. Should this schedule of fees be accepted and agreed upon and work commenced on this program but subsequently halted and the program is not brought to market, the Acceptance Fee and legal fees incurred, if any, will still be payable in full.

EXHIBIT A-1

Certificate as to Class Counsel's Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of Class Counsel and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of Class Counsel.  The below listed persons (must list at least two individuals, if applicable) have also been designated Call Back Authorized Individuals and will be notified by Citibank N.A. upon the release of Escrow Funds from the escrow account(s).

Name / Title / Telephone                         Specimen Signature

_____              _____
Name                                                    Signature

_____
Title

_____              _____
Phone                                                   Mobile Phone


_____              _____
Name                                                    Signature

_____
Title

_____              _____
Phone                                                   Mobile Phone


_____              _____
Name                                                    Signature

_____
Title

_____              _____
Telephone                                              Mobile Phone

NOTE: Actual signatures are required above.  Electronic signatures, "Docusigned" signatures and/or signature fonts are not acceptable.

*Exhibit to Escrow Agreement*

## EXHIBIT A-2

### Certificate as to Defendant's Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Defendant and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of the Defendant.  The below listed persons (must list at least two individuals, if applicable) have also been designated Call Back Authorized Individuals and will be notified by Citibank N.A. upon the release of Escrow Funds from the escrow account(s).

Name / Title / Telephone                          Specimen Signature


_____        _____
Name                                                      Signature

_____
Title

_____        _____
Phone                                                     Mobile Phone


_____        _____
Name                                                      Signature

_____
Title

_____        _____
Phone                                                     Mobile Phone


_____        _____
Name                                                      Signature

_____
Title

_____        _____
Telephone                                                Mobile Phone

NOTE: Actual signatures are required above.  Electronic signatures, "Docusigned" signatures and/or signature fonts are not acceptable.

*Exhibit to Escrow Agreement*

<u>EXHIBIT A-3</u>

<u>Certificate as to the Settlement Administrator's Authorized Signatures</u>

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Settlement Administrator and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of the Settlement Administrator. The below listed persons (must list at least two individuals, if applicable) have also been designated Call Back Authorized Individuals and will be notified by Citibank N.A. upon the release of Escrow Funds from the escrow account(s).

<u>Name / Title / Telephone</u>                              <u>Specimen Signature</u>

_____                 _____
Name                                                          Signature

_____
Title

_____                 _____
Phone                                                         Mobile Phone


_____                 _____
Name                                                          Signature

_____
Title

_____                 _____
Phone                                                         Mobile Phone


_____                 _____
Name                                                          Signature

_____
Title

_____                 _____
Telephone                                                    Mobile Phone

NOTE: Actual signatures are required above. Electronic signatures, "Docusigned" signatures and/or signature fonts are not acceptable.