**NAPOLI SHKOLNIK, PLLC**
Christopher L. Schnieders, MO # 57725
6731 W. 121st Street, Suite 201
Overland Park, KS 66209
Telephone: 913-246-3860
Fax: 913-312-5841
cschnieders@napolilaw.com

**BEN CRUMP LAW**
Benjamin L. Crump
FL Bar #72583
TN Bar #038054
Washington D.C. Bar #1552623
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone: 850-888-4140
Court@bencrump.com

**GOLDSTEIN & RUSSELL, P.C.**
Thomas C. Goldstein, 458365(DC)
Eric F. Citron, 1001069(DC)
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
Telephone: 202-362-0636
Fax: 866-574-2033
tgoldstein@goldsteinrussell.com
ecitron@goldsteinrussell.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL BLACK FARMERS ASSOCIATION, | ) ) ) MDL No. 2741 |
| Plaintiffs, | ) Case No.: 3:21-cv-00966-VC |
| vs. | ) **PLAINTIFFS MOTION TO ENTER** ) **SCHEDULING ORDER** |
| MONSANTO COMPANY | ) ) |
| Defendant. | ) ) |

### INTRODUCTION

Plaintiff National Black Farmers Association ("NBFA") is a nationwide, non-profit organization that supports the interests of Black and minority farmers. NBFA does so by bringing litigation against the government and private entities to combat discriminatory practices against minority farmers, and by lobbying Congress to protect Black farmers from the effects of decades of systemic racism in farming. NBFA now has over 100,000 members, including full-time and part-time farmers, landowners, timber owners, and concerned citizens in forty-two states.

A substantial proportion of NBFA's members have been exposed to and potentially injured by Roundup®, and its active ingredient, glyphosate. Indeed, many have already developed non-Hodgkin's lymphoma from their Roundup® use, and an even larger proportion fear that they will soon develop symptoms. The exposure is ongoing and will therefore get worse both for members who have already been exposed and for those likely to be exposed in the future. Accordingly, if Defendant Monsanto ("Monsanto") continues to market its product in its current form—particular in the absence of any warning about its dangers or changes designed to minimize risks and exposure—NBFA's members who have not yet become sick or have not yet been exposed will be more likely to develop haematopoietic cancers in the future.

NBFA's action is based upon its standing as an ideal associational representative for its members for the purposes of prosecuting a suit that seeks only prospective, injunctive relief. And indeed, while Defendant Monsanto's liability related to haematopoietic cancers in this action is being asserted on the same theory as the personal injury clams in the MDL, the relief requested by NBFA is exclusively injunctive in nature and includes a request to bar Monsanto from its current approach to marketing its glyphosate-containing products in a manner that unreasonably endangers NBFA's members, or to ensure in the alternative that those products are accompanied by adequate

warnings.  Because the relief requested is only equitable, this would be a case tried to the bench.
The case was transferred into this MDL by Order of the JPML on February 4, 2021.

Monsanto fought hard to prevent the inclusion of this action in the MDL, but the JPLM
rejected its arguments.  As the Panel stated,

> At its core, … *NBFA* involves the same allegations that exposure to Roundup causes
> non-Hodgkin's lymphoma. *NBFA* merely seeks different relief. This is not a significant
> obstacle to centralization where the action otherwise shares a common factual core
> with the actions in the MDL. We are persuaded that inclusion of *NBFA* in MDL No.
> 2741 is appropriate and will not undermine the efficiencies of the MDL. The transferee
> judge has the discretion to employ separate tracks or other appropriate pretrial
> management techniques to address the unique issues presented by *NBFA*.

*See* Transfer Order, *In Re: Roundup Prods. Liab. Litig.*, MDL No. 2741, at 2 (J.P.M.L.
February 4, 2021), ECF No. 2189.

Taking the Panel's suggestion to heart, counsel for NBFA has approached counsel for
Monsanto seeking to negotiate a joint proposal for this motion and the accompanying proposed
schedule, so that this case can proceed forward in discovery on its own track to the extent this
Court concludes that such dual-tracking is appropriate.  Monsanto has declined that offer and has
instead taken the highly unusual step of asking the JPML to reconsider its Order transferring this
matter to this Court.  There are pending motions for this Court's consideration, however, and there
is progress ready to be made in this matter.  Accordingly, this Court should enter the scheduling
order plaintiff NBFA requests, consistent with the arguments below.

## ARGUMENT

The NBFA believes that a dual discovery track for this action is warranted due to the
specific nature of the relief requested.  In particular, NBFA is the only plaintiff whose case is
limited to prospective, non-damages relief that seeks to fundamentally change Monsanto's
business practices and that would be tried directly to the bench rather than to a jury.  Right now,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Monsanto is attempting to settle a class action with a set of attorneys who purport to be representing the future interests of all the farmers who have been exposed to Roundup but are yet to develop the cancers it causes.  And whether that deal is any good will be substantially informed by the strength of NBFA's case for future-looking, injunctive relief.  The public and future interests this case will represent—and its importance vis-à-vis Monsanto's ongoing efforts to resolve its future liabilities through the class-action mechanism—thus present a strong case for placing this case on a discovery track that will move efficiently towards a potential resolution.

NBFA is uniquely situated to fulfill this role.  As explained below, Black and minority farmers have faced long-documented systemic racism and discrimination in farming. That discrimination has resulted in the devastation of the Black farming community and enormously disparate income for those Black farmers still left.  NBFA was founded to fight against those effects, and the organization continues that important work today.  Largely due to stubborn systemic inequalities, poor, rural, and minority farmers are going to be particularly dependent on real changes being made to Monsanto's business practices:  If Roundup stays on shelves in its cancer-causing form—and even more so if that unchanged product does not have point-of-sale labelling or other communications designed to succinctly communicate the cancer risk—then underequipped poor and minority farmers will be either left in the dark or forced to evaluate the meaning of scientific studies on glyphosate and then take the steps necessary to protect themselves (somehow) on their own.  And they will have to find the information they need and come to the right conclusions in the face of the much-better-funded efforts of companies like Monsanto to push out a contrary narrative.  That is why NBFA believes that it is absolutely essential that injunctive relief make real changes in Monsanto's going-forward business—up to and including the removal

of Roundup from the stream of commerce if it cannot be produced or sold in a way that renders it safe for NBFA's members.

1.    *Background on NBFA.*  NBFA was founded in 1995 by John W. Boyd, Jr., a fourth-generation Black farmer from Baskerville, Virginia, in the wake of repeated instances of discrimination.  *About U*s, Nat'l Black Farmers Assoc., https://bit.ly/3d33VZY (last visited Feb. 11, 2021).  Ever since, NBFA has been at the forefront of challenging discriminatory conduct by the U.S. Department of Agriculture and pursuing legislation for its members.  For example, the organization's claims of discriminatory loan and subsidy distribution have since been acknowledged by the USDA.  *Id.*  Black farmers were routinely denied government assistance at the same level as white farmers, leading to bankruptcies and foreclosures.  *See* Congressional testimony of John W. Boyd, Jr., Founder and President, NBFA, *available at* https://bit.ly/2ZawuwG.

In the 1990s, NBFA pursued a class action civil rights strategy in the courts, resulting in the "largest-ever civil rights class action settlement in American history."  *About U*s, Nat'l Black Farmers Assoc., https://bit.ly/3d33VZY (last visited Feb. 11, 2021).  In *Pigford v. Glickman*, a U.S. District Court recognized that "[f]or decades . . . the Department of Agriculture and the county commissioners discriminated against African American farmers when they denied, delayed or otherwise frustrated the application of those farmers for farm loans and other credit and benefit programs."  185 F.R.D. 82, 85 (D.D.C. 1999), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000), *and enforcement denied sub nom. Pigford v. Schafer*, 536 F. Supp. 2d 1 (D.D.C. 2008).  The court continued: "These events were the culmination of a string of broken promises that had been made to African American farmers for well over a century."  *Id.*  To get a sense of the "devastating impact on African American farmers . . . . According to the Census of Agriculture, the number of

African American farmers ha[d] declined from 925,000 in 1920 to approximately 18,000 in 1992." *Id.* at 87.

It is hardly surprising, then, that the structural consequences of this targeted racial discrimination continue today. For example, "of the country's 3.4 million total farmers, only 1.3%," are Black, and Black farmers "own a mere 0.52% of America's farmland. By comparison, 95% of US farmers are white." Summer Sewell, *There were nearly a million black farmers in 1920. Why have they disappeared?*, The Guardian (Apr. 29, 2019), https://bit.ly/3rKAIHv. Further, Black farmers on average "make less than $40,000 annually, compared with over $190,000 by white farmers." *Id.* And "Black farmers obtained only about $11 million in microloans designed for small farmers in 2015, or less than 0.2 percent of the roughly $5.7 billion in loans administered or guaranteed by the Agriculture Department that year." Hiroko Tabuchi & Nadja Popovich, *Two Biden Priorities, Climate and Inequality, Meet on Black-Owned Farms*, N.Y. Times (Jan. 31, 2021), https://nyti.ms/377GE5r.

2. *NBFA's position*. NBFA's members acutely feel the harms caused by Roundup and Monsanto, including the lack of appropriate warnings in the marketing of its product. Many of NBFA's members are rural Black farmers. Due to long-documented disparities in literacy and education rates, rural Black farmers have been and continuously are harmed by Monsanto's Roundup products. Moreover, many NBFA members have no reliable connection to the Internet or ready sources for the complex yet critical information farmers need to protect themselves. Monsanto is clearly uninterested in dealing with the concerns of communities like those represented by NBFA. But such situations are *precisely* why it is important that the NBFA be allowed to proceed on a dual discovery track.

NBFA is seeking injunctive relief—up to and including an injunction that will require removing Roundup in its current formulation from shelves—because it firmly believes that unless and until Monsanto has a legally backstopped incentive to make its product safe for those who buy and use it, rural Black and minority farmers will be the frontline casualties of its unsafe practices. Better-informed constituencies with better access to information and high-end safety gear are far more likely to know about the steps necessary to use Roundup safely (if it can be safely used at all), and far more likely to avoid using Roundup if it cannot be safely used.  Each day, however, more and more Roundup is being applied and more and more Black farmers are risking their long-term health without even knowing the risks that they are running.  That alone provides a strong reason to place this unique effort to secure injunctive relief on its own discovery track.

So too, however, does Monsanto's ongoing efforts to settle away its future liability with nothing more than cosmetic changes to its business.  NBFA firmly believes that there is no basis on which those who will develop injuries in the future can intelligently compromise with Monsanto without insisting that Monsanto clean up its act—either in terms of the safety of its products, or in the information it supplies to *all* users of its products (or, ideally, both).  And yet, right now, Monsanto is proposing just such a compromise.  The evidence likely to be discovered in this matter could well bear upon both the quality of the bargain being negotiated and the propriety of a non-litigation class compromising these future claims at all.  And this too suggests that this case should be placed on a speedy and efficient path towards resolution.

Accordingly, plaintiff respectfully requests that the Court enter the Proposed Scheduling Order attached as Exhibit A, in accordance with Rule 26(f) of the Federal Rules of Civil Procedure, Rule 16 of the Local Civil Rules and Standing Rule 14 of Judge Chhabria's Chambers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

The Plaintiffs respectfully request that the Court enter the attached Proposed Scheduling Order.

Dated:    February 24, 2021                     Respectfully submitted,

                                               **NAPOLI SHKOLNIK, PLLC**

                                               */s/ Christopher L. Schnieders*
                                               Christopher L. Schnieders, MO # 57725
                                               6731 W. 121st Street, Suite 201
                                               Overland Park, KS 66209
                                               Telephone: 913-246-3860
                                               Fax: 913-312-5841
                                               cschnieders@napolilaw.com


                                               **BEN CRUMP LAW**

                                               Benjamin L. Crump
                                               FL Bar #72583
                                               TN Bar #038054
                                               Washington D.C. Bar #1552623
                                               122 S. Calhoun St.
                                               Tallahassee, FL 32301
                                               Telephone: 850-888-4140
                                               Court@bencrump.com


                                               **GOLDSTEIN & RUSSELL, P.C.**

                                               Thomas C. Goldstein, 458365(DC)
                                               Eric F. Citron, 1001069(DC)
                                               7475 Wisconsin Avenue, Suite 850
                                               Bethesda, MD 20814
                                               Telephone: 202-362-0636
                                               Fax: 866-574-2033
                                               tgoldstein@goldsteinrussell.com
                                               ecitron@goldsteinrussell.com

                                               *Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICTE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of February 2021, a copy of the forgoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Christopher L. Schnieders*