# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | |
| *Ramirez et.al v. Monsanto Co.,* Case No> 3:19-cv-02224 | **OBJECTIONS AND OPPOSITION BRIEF OF MOVANTS REPRESENTED BY THE COONEY & CONWAY LAW FIRM TO MOTION   FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, APPOINTMENT OF INTERIM CLASS AND SUBCLASS COUNSEL, DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(E), SCHEDULING OF A FAIRNESS HEARING, AND STAY OF THE FILING AND PROSECUTION OF ROUNDUP-RELATED ACTIONS BY SETTLEMENT CLASS MEMBERS** |
| | Re: Dkt.no. 12531 |
| | The Honorable Vince Chhabria |
| | Date: March 31, 2021 Time: 10:00 am Courtroom 4 – 17th Floor |

**OBJECTIONS AND OPPOSITION BRIEF OF MOVANTS REPRESENTED BY THE COONEY & CONWAY LAW FIRM TO MOTION  FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, APPOINTMENT OF INTERIM CLASS AND SUBCLASS COUNSEL, DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(E), SCHEDULING OF A  FAIRNESS HEARING, AND STAY OF THE FILING AND PROSECUTION OF ROUNDUP- RELATED ACTIONS BY SETTLEMENT CLASS MEMBERS**

Now come the Movants, individuals represented by the Cooney & Conway law firm and unknown others who have been injured as a result of exposure to Defendant Monsanto's "Round Up" product. These clients are at various stages of litigation—some are in suit with trial dates scheduled; some are newly diagnosed and have not yet filed suit.  The Cooney & Conway cases are filed in Illinois and Missouri. The Cooney & Conway firm is located in Chicago, Illinois.

Movants are aware that the Court is receiving substantial opposition and objections to the purported Settlement Agreement. Movants hereby adopt all arguments in opposition and join with all parties opposing Plaintiff's motions.

In addition to the persuasive arguments and objections brought by other opponents to the Settlement Agreement, the Cooney & Conway Movants would be uniquely and adversely impacted by the proposed Settlement Agreement. In particular, Movants direct the Court's attention to the three main failures of the proposed agreement:

- The cases lack sufficient commonality as to exposure, injury, geographic location, and forum;
- The 'scientific panel' mandated by the proposed settlement has no basis in law and must not be the arbiter of whether Round Up caused a plaintiff's injury. There is simply no authority for a panel created by a discrete settlement agreement to determine the cause-in-fact of non-parties claims. Not only does the panel strip the rights of future plaintiffs in state court cases of their right to have a jury determine causation and liability, but it

would also bar the rights of those not yet diagnosed and who, as this Court noted previously, may be diagnosed based on science not yet known at the time the panel renders its decision on causation;

- The four year stay of litigation and ban on punitive damages is particularly abhorrent to the hundreds of newly diagnosed individuals across the country. These are cancer patients with limited life expectancies who have spent the past year living in seclusion with extremely high risk of fatal complications owing to their underlying condition. Now, just as courts are reopening and vaccinations are available, the proposed agreement will **add another four years** to their wait and will not include any compensation for punitive damages. Like causation, the issue of whether a plaintiff deserves to recover punitive damages is for the trier of fact.

## Local factors of Midwestern claims

Movant respectfully asks this Court to take notice of the substantial agricultural economy of the midwestern states. According to the United States Department of Agriculture (USDA), Illinois and its neighbor states Iowa and Missouri are ranked second, third and seventh in number of farms per state. [1] Residents of these heavily agricultural states have proportionate exposure to Round Up but are *disproportionately* slighted under the Settlement Agreement. The midwestern litigation venues are the places where exposure occurred, in states where the population is most affected, and where the jury venire includes farm families and agricultural workers. The proposed settlement not only strips a plaintiff's choice of forum away, but it also removes any oversight by the citizens in the states where the most people are likely to be harmed. "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only". *Gulf Oil v. Gilbert*, 330 US 501, 509 (1947). Under the proposed plan, the ultimate and final decisions

---

[1] USDA Economic Research Service; *Farms and Lands in Farms*, 2020, p.6.

are being made remotely from where the harm occurred and continues to touch the health of the community.

This local interest factor is particularly important considering the "Labeling Clause "of the proposed agreement. A state court proceeding makes information known to the community, including information about the dangerous product. The proposed agreement not only removes this information sources developed in litigation from the community, it allows Monsanto to continue to sell Roundup and does not require Monsanto to make any changes to its label or otherwise provide any warnings.   As a result, whole communities with substantial exposure to Round Up will not receive the information needed to assess their own risk or monitor their medical status.

## The Proposed Class does not show sufficient commonality.

Under the exacting scrutiny required for preliminary approval of a class under Rule 23 (a), the proposed class does not possess sufficient commonality.  Class certification on the basis that common questions predominate is not generally appropriate in mass-tort cases even where the claimed injury is necessarily identical because other factors such as co-carcinogenic exposure, the length and intensity of Round Up exposure, the victims age, genetic factors and pre-existing medical will vary widely among claimants.   "Differences in amount of exposure and nexus between exposure and injury lead to disparate applications of legal rules, including matters of causation, comparative fault, and types of damages available to each plaintiff." *Georgine v. Amchem Prods., Inc.*, 83 F.3d at 627 (3d Cir. 1996).  If the proposed Science Panel must consider and weigh each of these variations for thousands of claimants, it is difficult to see how it will reach a decision on causation within four years.  The variation in individual exposures is a barrier to any finding of commonality necessary for Rule 23 (a) preliminary certification.

The proposed Settlement Agreement also fails to demonstrate or provide the Court with any assurance that the named representatives are typical of the proposed class. An obvious problem is that none of the representatives holds a derivative claim, while the class definition includes those whose cause of action is derivative. Owing to the often-fatal nature of the injury, it is likely that there will be a large number of derivative claims, particularly if claimants are subject to the proposed four year stay.  An additional complication is that the proposed class is limited to individuals have not retained counsel and have not commenced any individual personal injury claims. The Settlement Agreement does not provide sufficient histories of all the named representatives, however, lead plaintiff Robert Ramirez meets neither of these criteria, as he and his attorneys  filed suit claiming NHL in 2019.  The proposed class representatives, therefore, are not typical of the class they define, and the Settlement Agreement fails the test of typicality required under Rule 23 (a).

## The Settlement Agreement does not meet the requirements of Rule 23 (b)(3) because common questions of law and fact do not predominate in this litigation.

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) the United States Supreme Court held that the predominance and adequacy factors were not satisfied when an attempt was made to certify a Rule 23 class of present and future asbestos claimants in a global settlement  because their individual cases turned on so many unique factors.

The Supreme Court specifically held that the requirements of adequacy and predominance were not met, and opined :

> Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma. . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.  The exposure-only plaintiffs especially share little in common, either with each other or with the presently injured class members.  It is unclear whether they will contract

asbestos-related disease and, if so, what disease each will suffer.  They will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories.

The Court continued:

> The number of uncommon issues in this humongous class action . . . barred a determination, under existing tort law, that common questions predominated."
>
> *Amchem* at 624.

Here, just as in *Amchem*, the uncommon issues far outweigh any common questions. In addition to the 'humongous' exposure, occupational and medical differences amongst the proposed class, the state laws where Monsanto would be subject to suit (absent the Settlement Agreement) vary wildly. In *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), a medical device proposed class action, the Ninth Circuit denied class certification due to variances in state laws which outweighed any common issues of fact. The Court noted:

> Understanding which law will apply before making a predominance determination is important when there are variations in applicable state law. "Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will `compound the disparities' among class members from the different states.

In this Settlement Agreement the state law disparities are self-evident. Each claimant's home state has unique tort law and evidence rules. The Agreement requires claimants in jurisdictions perceived as plaintiff-favoring to forego their rights in exchange for a four-year delay and less money.

The most glaring context for which variances in state laws outweigh any purported commonality is the effect state evidence rules would have on the proposed Science Panel.  For example, Illinois courts staunchly follow the 'general acceptance rule' of *Frye v. United States*, 293 F. 1013 (D.C. Cir 1923), *Daniels v. Arvin Meritor* 146 NE3d 655 (1st Dist., 2019), which allows medical and scientific opinion to be considered by the trier of fact as long as it has general

acceptance in the field. It is not necessary that that the opinion be universally accepted or even accepted by the majority of experts. See *Donaldson v. Central Illinois Public Service* 199 Ill 2d 63, 76-77; 767 N.E. 2d 314 (2002). The Science Panel is the antithesis of *Frye,* and the Settlement Agreement does not address how the disparity would be rectified.

Another significant state law difference is joint and several liability. In toxic tort cases, Illinois provides for 'pure' joint and several liability among joint tortfeasors:

> Notwithstanding the provisions of Section 2-1117, in any action in which the trier of fact determines that the injury or damage for which recovery is sought was caused by an act involving the discharge into the environment of any pollutant, including any waste, hazardous substance, irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, asbestos, toxic or corrosive chemicals, radioactive waste or mine tailings, and including any such material intended to be recycled, reconditioned or reclaimed, any defendants found liable shall be jointly and severally liable for such damage.

110 ILCS 2-1118.

The legislative purpose for Section 2-1118 was explained by the Seventh Circuit Court of Appeals in *Tragarz v. Keene Corp,* 980 F. 2d 411 (7th Circuit 1992), an asbestos case:

> And while it might seem fair to generally require plaintiffs to bear the burden of demonstrating either that every defendant is over twenty-five percent culpable or in demonstrating the comparative fault of those under twenty-five percent culpable, in environmental cases it is too burdensome to require a plaintiff to divide the pie of culpability into potentially hundreds of distinct components, especially considering that, although hundreds of defendants might be culpable, none may be over twenty-five percent at fault. Moreover, the burden of demonstrating the proportionate liability of many defendants would seem to be even more acute when considering that it sometimes takes years for injuries from environmental hazards to surface — a fact made patently evident in mesothelioma cases where the latency period between exposure to asbestos and the disease is around twenty years.

*Tragarz* at 430

Round Up cases, like asbestos injury cases, sometimes involve multiple exposures to several carcinogenic products, a factor that the proposed Science Panel will undoubtedly seize upon.

These 'other' exposures may play a role in determining proportionate liability and damages in some states, but such an analysis is forbidden in Illinois. The Settlement Agreement does not contemplate this issue.

### The Settlement Agreement does not offer a superior method of resolution of Round Up claims.

As explained above, the proposed Settlement Agreement does not meet the requirements of Rule 23 (a) or (b) as to commonality, typicality, or predomination. It also fails to show why it would be a superior means of resolving future claims. It is not.

An individual diagnosed with NHL today is free to file suit in an appropriate jurisdiction and try his or her case before a jury. Mass tort dockets in state courts throughout the country are well equipped to move cases smoothly through their dockets, often within one year of filing[2],  and, as this Court noted last July "Judges have been allowing these cases to go to juries, and juries have been reaching verdicts in favor of the plaintiffs, awarding significant compensatory and punitive damages."   In contrast, were this Settlement Agreement to be approved and the class certified, a claimant diagnosed a day after certification would face a **four-year stay** of proceedings, waive any claim for punitive damages, and agree to a cap on compensatory damages. This is **not** a superior resolution for any future claimant, nor is it a superior resolution for the trial courts in the various states.  It is not a superior resolution at all and should not be allowed.

### Other Objections

Other problems with the Settlement Agreement were noted by this Court and objecting parties last July and have not been corrected in this iteration. These include the difficulty, if not

---

[2] For example, in Cook County, Illinois, Standing Master Case Management Order No. 19 provides for a 270-day schedule from initial discovery to trial for asbestos and other mass exposure cases.

impossibility of adequate notice to currently healthy, undiagnosed, and unaware future claimants; discrimination against undocumented workers; lack of transparency as to Class Counsel fees; the jurisdiction of this court over common benefit fees sought in post certification state court cases (see *Hartland v. Alaska Airlines,* 544 F. 2nd 992 (9th Cir. 1976)); due process and Seventh Amendment considerations about the Science Panel, see *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999); and the total lack of information provided regarding Monsanto's assets, insurance coverage, financial status and pending settlement agreements so that an informed economic analysis of the benefits and drawbacks of the proposal can be made by the Court and involved parties.

## Conclusion

The proposed Settlement Agreement is not an improvement over the previously rejected Agreement.  It fails on statutory, substantive, and constitutional grounds.  It does not meet the standards of Rule 23(a) and Rule 23(b) and does not meet due process requirements for notice. As stated above, the Science Panel is unconstitutional and unconscionable. Movant respectfully requests that this Honorable Court dismiss the Second Amended Class Action Complaint; deny class certification and grant whatever other relief this Court deem just.

Respectfully submitted,

  /s/ Kathy Byrne
Attorney for Plaintiff

Kathy Byrne
John D. Cooney
Michael C. Cooney
COONEY AND CONWAY (90200)
120 N. LaSalle Street, 30th Floor
Chicago, Illinois 60602
(312) 236-6166
kbyrne@cooneyconway.com

## **Certificate of Service**

I hereby certify that on March 3, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern Division of California via the Court's CM/ECF Filing system, which shall send electronic notification to counsel of record.

/s/ Jill Conner
Jill Conner
