Rebecca Smullin (CA Bar No. 250274)
Allison M. Zieve
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae
Public Citizen and Public Citizen Foundation

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2741 ) ) Case No. 3:16-md-02741-VC ) |
| THIS DOCUMENT RELATES TO *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | ) MEMORANDUM OF AMICI CURIAE ) PUBLIC CITIZEN AND PUBLIC CITIZEN ) FOUNDATION IN OPPOSITION TO MOTION ) FOR PRELIMINARY APPROVAL OF PROPOSED ) CLASS SETTLEMENT, APPOINTMENT OF ) INTERIM CLASS AND SUBCLASS COUNSEL, AND DIRECTION OF NOTICE |

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

INTEREST OF AMICI CURIAE .................................................................................4

ARGUMENT ...............................................................................................................5

I.    To ensure that class members have a meaningful opportunity to opt out, due process
      and Rule 23 require the provision of effective notice. ........................................7

      A.   The effective notice requirement of Rule 23 and due process cannot be satisfied
           with respect to the millions of "futures" claimants. .......................................7

      B.   The option eventually to sue in court does not cure the inability to provide
           effective notice. ............................................................................................12

II.   The proposed "futures" class fails Rule 23(a)'s adequacy-of-representation
      requirement. .....................................................................................................15

III.  The proposed class action does not satisfy Rule 23(b)(3)'s superiority requirement,
      particularly for subclass 2. ..............................................................................19

IV.   The "Accelerated Payment Awards" pose risks to class members that must be
      addressed *before* preliminary approval and provision of notice. ......................23

CONCLUSION ...........................................................................................................27

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. *passim*

*Bowling v. Pfizer, Inc.*,
   143 F.R.D. 141 (N.D. Ohio 1992) ...........................................................17

*Brown v. Ticor Title Insurance Co.*,
   982 F.2d 386 (9th Cir. 1992) .....................................................................8

*Cole v. Gene by Gene, Ltd.*,
   322 F.R.D. 500 (D. Alaska 2017) ............................................................20

*Coleman v. Theranos, Inc.*,
   325 F.R.D. 629 (N.D. Cal. 2018) .............................................................20

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...........................................................................6, 10

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ...................................................................23

*Johnson v. Monsanto Co.*,
   52 Cal. App. 5th 434, *pet. for review denied* (Cal. Oct. 21, 2020) .........................21

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ...........................................................9, 18

*Kimbo v. MXD Grp., Inc.*,
   2021 WL 492493 (E.D. Cal. Feb. 10, 2021) ...........................................22

*Koby v. ARS National Service, Inc.*,
   846 F.3d 1071 (9th Cir. 2017) .................................................................23

*Leonard v. John Crane, Inc.*,
   206 Cal. App. 4th 1274 (2012) .........................................................11, 17

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

*In re Literary Works in Electronic Databases Copyright Litigation*,
    654 F.3d 242 (2d Cir. 2011)............................................................................18

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ......................................................................................7

*Matsushita Electric Industrial Co. v. Epstein*,
    516 U.S. 367 (1996)......................................................................................7

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2002) ........................................................................8

*In re NFL Players Concussion Injury Litigation*,
    821 F.3d 410 (3d Cir. 2016)..........................................................................9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)................................................................................8, 13

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
    827 F.3d 223 (2d Cir. 2016)..........................................................17, 18, 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)......................................................................................8

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................22

*In re Roundup Product Liability Litigation*,
    385 F. Supp. 3d 1042 (N.D. Cal. 2019) ......................................................21

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................18

*In re Warfarin Sodium Antitrust Litigation*,
    391 F.3d 516 (3d Cir. 2004).........................................................................19

*Zapata v. Bedoya*,
    2016 WL 4991594 (E.D.N.Y. 2016)...........................................................26

-iii-

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................................20


**Statutes and Rules**

California Civil Code § 1670.8 ................................................................................26

Consumer Review Fairness Act of 2016,
   15 U.S.C. § 45b .................................................................................................26

Federal Rule of Civil Procedure 23
   23(a) .............................................................................................................3, 5
   23(a)(4) ......................................................................................................15, 17
   23(b) .........................................................................................................19, 22
   23(b)(3) ...........................................................................................3, 5, 6, 19, 22
   23(c)(2) ............................................................................................................6
   23(e) ..........................................................................................................4, 22
   Advisory committee notes to 2018 amendments ....................................................2

H.R. Rep. 114-731 (2016)......................................................................................26


**Miscellaneous**

John Coffee, Jr., *Class Wars: The Dilemma of The Mass Tort Class Action*,
   95 Columbia Law Review 1343 (1995)..............................................................20

Jef Feely & Tim Loh, *Bayer Reaches Deals on Many of Its 125,000 Roundup Weedkiller
   Lawsuits*, L.A. Times, May 25, 2020,
   https://www.latimes.com/business/story/2020-05-25/bayer-weedkiller-deal.........................21

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me
   to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More
   than Just Plain Language: A Desire to Actually Inform*,
   18 Georgetown Journal of Legal Ethics 1359 (2005)..............................................8

John Howard, *Minimum Latency & Types or Categories of Cancer* (Nov. 2014),
   https://www.cdc.gov/wtc/pdfs/policies/wtchpminlatcancer2014-11-07-508.pdf...................15

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

*Judge Reduced $2B Award in Monsanto Roundup Case to $87M*,
   Associated Press (July 26, 2019),
   https://apnews.com/article/d14eb10a6b9747f5a440db2a552519e9 ......................................21

Steven Lipscomb & Ian Samson, *Loss of Consortium*,
   Plaintiff Magazine, Apr. 2017,
   https://www.plaintiffmagazine.com/recent-issues/item/loss-of-consortium ..........................17

Mayo Clinic, *Non-Hodgkin's Lymphoma – Diagnosis*,
   https://www.mayoclinic.org/diseases-conditions/non-hodgkins-lymphoma/diagnosis-
   treatment/drc-20375685 ..............................................................................................................16

William Rubenstein, 2 Newberg on Class Actions (5th ed. 2020) ..............................................21

*Spouse Awarded $1,000,000 for Loss of Consortium Claim*,
   New York Injury Cases Blog, Mar. 7, 2009,
   https://www.newyorkinjurycasesblog.com/2009/03/articles/loss-of-consortium-damages/
   spouse-awarded-1000000-for-loss-of-consortium-claim/........................................................17

U.S. Right to Know, Glyphosate Fact Sheet: Cancer and Other Health Concerns,
   Oct. 1, 2020, https://usrtk.org/pesticides/glyphosate-health-concerns/ ..................................11

-v-

Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

## INTRODUCTION

This case, which arises from multidistrict mass-tort litigation against Monsanto for claims related to injuries caused by the herbicide Roundup, seeks to settle the claims of anyone exposed to Roundup who is *not* already in litigation against Monsanto. After this Court expressed skepticism regarding the propriety and fairness of an earlier proposed settlement agreement, the parties withdrew it. They now propose a revised settlement (ECF 12531-2) to try to address the Court's concerns. Nonetheless, the proposal to bind people who have not yet experienced injury or filed claims cannot be accomplished consistently with due process and Rule 23.

As in *Amchem v. Windsor*, 521 U.S. 591, 602 (1997), this class action "was not intended to be litigated." Rather, on February 3, 2021, the settling parties presented to this Court an amended complaint, a proposed settlement agreement, and a motion for preliminary approval of proposed class settlement, appointment of class counsel, and direction of notice. The complaint was filed on behalf of a proposed settlement-only class of individuals who, as of that date, had been exposed to Roundup—an herbicide linked to Non-Hodgkin's Lymphoma—but had not filed or retained a lawyer to file an individual lawsuit. The named plaintiffs are members of the class only because they retained lawyers to file a *class* action, not an *individual* action. The proposed class is alleged to contain millions of members and comprises two subclasses. Subclass 1 consists of class members who were diagnosed with Non-Hodgkin's Lymphoma as of February 3, 2021, and their derivative claimants. Subclass 2 consists of class members who had not been diagnosed with Non-Hodgkin's Lymphoma as of February 3, 2021, and their derivative claimants.

The Court should deny the request that it initiate the formal settlement approval process by providing notice to the class of the proposed settlement under Rule 23(e)(1), granting preliminary

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

approval of the proposed settlement, and appointing interim class counsel.[1] Federal Rule of Civil

Procedure 23 requires that the decision to give notice of a proposed settlement "be based on a solid

record supporting the conclusion that the proposed settlement will likely earn final approval after

notice and an opportunity to object." *See* Fed. R. Civ. P 23, advisory committee's note to 2018

amendment to subdivision (e)(1). Among other problems, the proposed settlement is unfair to the

subclass of individuals who have been exposed to Roundup, have not been diagnosed with Non-

Hodgkin's Lymphoma, but may develop the disease in the future, as well as their derivative

claimants. It is impossible to provide such "futures" with adequate notice of their ability to opt out

of the settlement class. Even if they received notice, it is unlikely that the "futures" would have

the ability to make an informed choice now regarding the valuable rights they will forfeit if they

do not opt out. Although the agreement provides an opportunity for class members to decline to

seek a compensation award from the settlement fund and, eventually, to pursue an individual claim

for compensatory damages, those who do so remain bound to four aspects of the agreement that

will strip them of valuable rights and make it harder for them to retain counsel to vindicate their

rights on an individual basis. Specifically, the proposed settlement provides that class members

cannot sue for four years, that they relinquish all claims for punitive damages, that they waive all

claims for medical monitoring, and that they cannot challenge the admissibility of a causation

study to be conducted in secret by a science panel. In short, as to the "futures" class members and

---

[1] The Advisory Committee notes to the 2018 amendment to Rule 23 show that the Committee purposely avoided calling the decision at this stage "preliminary approval" and instead referred to it both in Rule 23(e)(1) and in the Notes to the 2018 Amendment as "the decision to give notice of a proposed settlement." *See* Fed. R. Civ. P 23, advisory committee's note to 2018 amendment to subdivisions (c)(2) & (e).

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

their family members, the proposed settlement cannot be reconciled with traditional notions of due process and the requirements of Rule 23, because these class members cannot be provided with notice adequate to allow them to make an informed choice regarding the exercise of their opt-out rights.

In addition, the proposed settlement fails the adequacy-of-representation requirement of Rule 23(a) and the superiority requirement of Rule 23(b)(3), particularly as to the "futures" and their derivatives. The claims process is not a fair or efficient alternative for these individuals; indeed, the claims fund may be exhausted or terminated before these individuals are eligible to submit claims. And these individuals' interest in directing their own litigation, should they develop a disease associated with exposure to Roundup, is high. In addition, the named plaintiffs are not representative of the many subclass 2 members who will not benefit (either because of location or because they prefer their own physicians) from the diagnostic program that is the primary purported benefit to the "futures." Further, the derivative claimants lack separate counsel focused only on their specific interests, as required by *Amchem*.

Finally, the Accelerated Payment Awards program poses risks to subclass 1 members that must be addressed now, because later consideration will be too late. If the Court grants the pending motion for preliminary approval and direction of notice, Monsanto will use the court-approved class notice program to offer $5,000 awards to people who already suffer from Non-Hodgkin's Lymphoma after Roundup exposure, with the prospect of participating in a claims process that may award them up to $195,000 more. However, if the Court does not ultimately grant final approval, there will be no claims process. Having signed a lengthy, comprehensive release in connection with the $5,000 "accelerated" award, those seriously injured individuals will then have

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

released any and all claims for a tiny fraction of their value. The broad releases will also bind them to a gag clause, barring them from "speaking ill" of defendants or their products, broadly defined. The Court should take a hard look at this aspect of the proposed settlement, which may cut off important rights—the right to sue and the right to speak out—of injured class members. Indeed, the Court is effectively being asked to give *final* approval of this aspect of the settlement at this preliminary notice-approval stage, which is not at all what Rule 23(e) contemplates.

## INTEREST OF AMICI CURIAE

Public Citizen and Public Citizen Foundation (collectively, Public Citizen) are non-profit consumer advocacy organizations with members and supporters nationwide. Public Citizen likely has members in the proposed settlement class. Public Citizen itself, however, is not a member of the proposed settlement class, and neither Public Citizen nor any of its attorneys represents any class member at this time.

Public Citizen believes that class actions are an important tool for seeking justice where a defendant's wrongful conduct has harmed many people and resulted in injuries that are large in the aggregate but may not be cost-effective to redress individually. Class actions, and class settlements, often offer the best means for both individual redress and deterrence of wrongful conduct, while also serving defendants' interests in achieving binding resolution of claims on a broad basis, consistent with due process.

The interests of both named and absent class members, defendants, the judiciary, and the public at large are best served by adherence to the principles incorporated in Federal Rule of Civil Procedure 23 and due process. Accordingly, Public Citizen has in some cases supported class actions, *see, e.g.*, *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011); *Cherry v. Dometic Corp.*, 986

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

F.3d 1296 (11th Cir. 2021); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020), and in others represented class members objecting to proposed settlements entered into in violation of their Rule 23 and due process rights, *see, e.g.*, *Amchem*, 521 U.S. 591; *Day v. Persels & Assocs., LLC*, 729 F.3d 1309 (11th Cir. 2013); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).

In this case, Public Citizen is concerned that, in several respects, the proposed settlement would fails to satisfy Rule 23 and due process. Public Citizen believes its views may be helpful to this Court in determining whether to grant the motion for preliminary approval, appoint class counsel, and issue notice of the proposed settlement.

## ARGUMENT

Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity; (2) "questions of law or fact common to the class"; (3) typicality of the named parties' claims or defenses; and (4) adequacy of representation. To qualify for certification under Rule 23(b)(3), a class must meet two additional requirements: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted). To alert class members to their right to "opt out" of a (b)(3) class—

- 5 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

including a (b)(3) class "proposed to be certified for purposes of settlement"—Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974) (stating that individual notice to class members identifiable through reasonable effort is mandatory in (b)(3) actions).

The "specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*; *see id.* ("stating that proposed settlement classes sometimes warrant more, not less, caution on the question of certification").

In this case, the Court should deny the motion for preliminary approval, appointment of counsel, and direction of notice because the effective notice required by Rule 23 and due process cannot be afforded, at least as to proposed subclass 2, which includes "*hundreds of thousands or even millions of persons* who have been exposed to Roundup, may or may not have manifested [Non-Hodgkin's Lymphoma] symptoms, and have not commenced an individual personal injury action or retained counsel to do so," Pls. Motion for Preliminary Approval, June 24, 2020, at 13 (ECF No. 11042) (emphasis added), and their derivative claimants. The proposed settlement also fails to satisfy Rule 23's adequacy of representation and superiority requirements, particularly for subclass 2.

In addition, granting preliminary approval and directing notice would pose risks to members of subclass 1. Members of subclass 1 are eligible for $5,000 Accelerated Payment

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

Awards. As made clear by the "Confidential Release Agreement" and the "Confidential Indemnity Agreement," accepting those awards would cut off any further claims by those class members if the Court ultimately did not approve the settlement. Acceptance of the awards also binds class members to unwarranted confidentiality and to a non-disparagement clause that runs counter to public policy. The fine print of the Accelerated Payment Awards provision shows that the proposed agreement is not fair, reasonable, or adequate. And because this aspect of the settlement will go into effect immediately if the Court grants the pending motion, the Court must consider those shortcomings now.

I.   **To ensure that class members have a meaningful opportunity to opt out, due process and Rule 23 require the provision of effective notice.**

   A.   **The effective notice requirement of Rule 23 and due process cannot be satisfied with respect to the millions of "futures" claimants.**

A legal claim is a form of property that may not be extinguished without due process of law. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982) ("The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances."). As the Supreme Court has explained, in class actions that seek to bind plaintiffs with respect to claims for money damages, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 & n.3 (1985); *accord Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 395 (1996) (Ginsburg, J., concurring in part and dissenting in part). Because all members of a class have constitutionally protected property rights in their claims for damages, the right to opt out "implicate[s] the due process

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *see Molski v. Gleich*, 318 F.3d 937, 950–51 (9th Cir. 2002) (reversing approval of a class-action settlement that purported to release substantial claims for damages and was certified under Rule 23(b)(2), on the ground that due process required that class members be provided a right to opt out); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (holding that due process requires that class members be provided a right to exclude themselves with regard to any substantial damages claim).

A meaningful opportunity to opt out requires effective notice. As the settling parties' notice expert, Shannon Wheatman, has explained, an effective notice must "1) get to the class; 2) be noticed; and … 3) be read and understood." Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359, 1360 (2005). Thus, "the best notice practicable under the circumstances cannot stop with ... generalities. It must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." *Id*. at 1366 (quoting *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998)). In a proposed class that includes potentially millions of unidentified individuals who may or may not know that they have been exposed to Roundup and who have not developed, and may never develop, Non-Hodgkin's Lymphoma (as well as their current or future family members who may have derivative claims), it is highly unlikely that effective notice is possible.

- 8 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

**First**, as in *Amchem*, "[m]any persons in the exposure-only category … may not even know of their exposure, or realize the extent of the harm they may incur." *Amchem*, 521 U.S. at 628 (in the context of a "futures" class action, "recogniz[ing] the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous"). Nonetheless, if they do not opt-out promptly, they will be stripped of valuable rights.

The proposed class includes potentially millions of individuals who are not identifiable—not identifiable by the Court or counsel, and not by the purported class members themselves. Thus, the proposed "futures" class here is not comparable to the classes of people with latent injuries on which the named plaintiffs rely: *In re NFL Players Concussion Injury Litigation*, 821 F.3d 410 (3d Cir. 2016), and *Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012). *See* Pls. Motion for Preliminary Approval 63, Feb. 3, 2021 (ECF No. 12531) (hereafter, Pls. Motion). In *In re NFL Players*, the class consisted of living NFL football players who had retired from playing professional football before July 7, 2014; the "futures" subclass included those retired NFL players who had "no currently known" concussion-related injury. 821 F.3d at 425. *Every* one of these members was individually identifiable by the parties and by himself, because the parties could easily compile a list of all retired NFL players. And in *Juris*, the "futures" were women who had Inamed breast implants implanted before June 1993, 685 F.3d at 1308—a personal characteristic knowable to every woman. And the notice program included both individual notices mailed to 250,000 women who had registered with the claims office and 28,000 attorneys representing Inamed breast implant recipients, as well as notices in various publications. *Id.* at 1319.

- 9 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

As this Court has explained, "certifying a class of people who are candidates to suffer harm in the future" may be permissible "when the class is narrow and readily identifiable—for example, NFL players who have not yet developed CTE." Pretrial Order 214 at 3 (ECF 11182). In such a case, it is feasible to "ensure that the class members are notified and given meaningful chance to consider their options before deciding whether to opt out of the settlement." *Id*. In contrast, "[a] class that includes all Roundup users who will get cancer in the future is very different." *Id*. Here, unlike in those cases, many subclass 2 members, even if they see the notice, will not know that it applies to them. The notice thus does not meaningfully protect their right to opt out.

**Second**, many of the class members are migrant farmworkers or landscaping laborers from underserved communities, *see* Pls. Motion at 45, and many do not live in the United States. Their immigration status and language barriers will further diminish the likelihood of effective notice. They are less likely to receive notice, to understand how it may affect them, and to have access to legal advice.

**Third**, assuming that they receive and "fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out." *Amchem*, 521 U.S. at 628. It is hard to see how they could meaningfully weigh their options and make an informed choice about whether to exercise their front-end opt-out rights. In fact, because the class is limited to those who did not have counsel as of February 3, 2021, most subclass 2 class members will not have a lawyer who can help them understand a complex proposed settlement and make the choice that is best for them and their families. *Cf. Eisen*, 417 U.S. at 176–77 (explaining that adequate representation does not eliminate the requirement to provide notice). And even with legal advice, members of the futures subclass

- 10 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

are being asked to make a choice that turns on a hypothetical diagnosis that they do not currently have. Without a crystal ball, they cannot predict what their circumstances will be by the end of the "settlement period": whether they will develop Non-Hodgkin's Lymphoma (potentially compensable in the settlement claim process), a different injury from exposure to Roundup (such as a harm to their reproductive or gastrointestinal systems, which would not be compensable in the claims process), or no injury. *See* U.S. Right to Know, Glyphosate Fact Sheet: Cancer and Other Health Concerns, Oct. 1, 2020, https://usrtk.org/pesticides/glyphosate-health-concerns/ (citing studies addressing health concerns associated with glyphosate). Yet granting preliminary approval would require them to decide *imminently* (within 150 days of the parties' "commencing" their notice plan), Sett. Agmt. § 4.2, whether to remain in or opt out of a settlement class that may or may not provide any compensation, but will limit their rights with respect to future claims. Thus, they are unlikely to "have the information or foresight needed to decide, intelligently, whether to stay in or opt out." *Amchem*, 521 U.S. at 628.

**Fourth**, family members of Roundup-exposed individuals may now have or later may have claims for loss of consortium.[2] Yet "current spouses and children of the occupationally exposed may know nothing of that exposure." *Amchem*, 521 U.S. at 628. The inability to provide notice is an even more acute problem for *future* spouses in states where a loss-of-consortium claim accrues when the disease manifests itself, rather than at the time of exposure. *See, e.g.*, *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1290 (2012) (holding under California law that a loss-of-

---

[2] The proposed settlement defines "derivative claimants" as "spouses, parents, children who are dependents, or any other Persons who have or assert a right to maintain a Roundup Claim against the Monsanto Parties or the Related Parties by reason of their relationship with a Settlement Class Member, including a deceased Settlement Class Member." Sett. Agmt. § 2.1(23).

- 11 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

consortium claim derived from spouse's exposure to asbestos accrues when the disease manifests itself). And future spouses cannot conceivably know at this time that they will later marry someone who has previously been exposed. Thus, notice will not be adequate for "large numbers of people in this category—future spouses and children of [Roundup] victims—[who] could not be alerted to their class membership." *Amchem*, 521 U.S. at 628.

### B.   The option eventually to sue in court does not cure the inability to provide effective notice.

The motion for preliminary approval and direction of notice asserts that due process concerns are minimized because class members who do not opt out can, eventually, choose to sue in the tort system if they develop Non-Hodgkin's Lymphoma. Pls. Motion 42–43. That point, however, understates the consequences for those who are swept into the settlement class.

**First**, under the proposed settlement, class members are prohibited from filing their own lawsuits for four years after settlement approval. *See* Sett. Agmt. § 7.13. The delay is significant for those who will, in the interim, contract Non-Hodgkin's Lymphoma, a potentially fast-moving and fatal disease. That individual lawsuits move slowly anyway, *see* Pls. Motion 45, does not alleviate the problem; it exacerbates it.

**Second**, under the proposed settlement, class members are *forever* barred from seeking punitive damages in their individual lawsuits. *See* Sett. Agmt. § 7.13(f). Although an award of punitive damages in any litigation is far from certain, punitive damages awarded in other Roundup cases have ranged from $10.3 million to $44.8 million. Pls. Motion 50–51 n.13. The release of any claim for punitive damages thus decreases class members' potential recoveries and makes it harder to retain counsel on a contingency-fee basis.

- 12 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

**Third**, subclass 2 members forever relinquish all claims for medical monitoring. For individuals who have claims under the laws of states that recognize medical monitoring, the ability to sue in four or more years for compensatory damages if they receive a "qualifying diagnosis" is not pertinent to release of claims for medical monitoring available today, in advance of any such diagnosis. And because many class members may not currently know that they were exposed, they may not now be able to assess the value of such claims. Further, as shown by the significant amounts allocated for medical monitoring in settlement of *non*-Roundup cases involving far fewer class members, Pls. Motion 47, medical monitoring awards can be significant.

Importantly, the settlement's Diagnostic Accessibility Grant Program does not provide the benefit of potential medical monitoring claims because—even assuming that third parties apply for and are awarded grants covering all the geographic areas where exposed individuals reside— the grants are for limited terms, as well as limited by the term of the settlement. *See* Sett. Agmt. §§ 8.3(b), 13.1. Some individuals will receive only tips for "self-diagnosis" or a telehealth visit, and none will have their choice of healthcare provider. *Id*., Exh. 2 at 3. Even aside from the relative value of the diagnostic program as compared to true medical monitoring, *see also infra* note 4, the view of plaintiffs' counsel that subclass 2 members "give up relatively little," *id*. at 44, does not obviate members' constitutional right to be informed before the settling parties compromise their claims. *Cf. Ortiz*, 527 U.S. at 858 (explaining that the protections of Rule 23(a) and (b) must be satisfied "quite independently of the required determination … under subdivision (e) that any settlement is fair in an overriding sense").

**Fourth**, all class members, if they later litigate, even years after the claims process has ended, *see* Sett. Agmt. § 7.13(f), must stipulate to the admissibility of the conclusions of the

- 13 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

Science Panel. *See id.* § 12.3. This consequence of remaining in the class may be extremely consequential. The Science Panel will operate in secret and will consider only data that *currently* exists—although any trial would not commence for at least four years. A plaintiff at such a trial can introduce other data, but may "not contradict any of the stipulated facts contained in the Science Panel Stipulation or assert that the Science Panel reached a conclusion inconsistent with the Science Panel Stipulation." *Id.* § 12.3(d)(ii). The stipulated facts include that the Science Panel's determination is entitled to as much weight as any other expert opinion—no matter how much the science on the association between Roundup and Non-Hodgkin's Lymphoma may have advanced between the cutoff date for the data considered by the Science Panel and trial in some future case. Because the Science Panel's conclusions may be outdated and no longer reliable by the time the report is introduced in a class member's individual lawsuit, this provision of the proposed settlement risks "freezing in place the science." *Amchem*, 521 U.S. at 611. If unfavorable to the class member's case, the report will serve as powerful evidence—an expert report prepared pursuant to a court-approved settlement—even if rebutted by other evidence at trial. And most importantly for evaluating whether the right to opt-out can be meaningfully assessed, a futures class member—who cannot today know whether the Science Panel report will be beneficial or detrimental to future plaintiffs, whether he or she will ever develop Non-Hodgkin's Lymphoma, or whether he or she will ever want to pursue a claim against Monsanto—must decide *now* whether to stipulate to the Science Panel report.

* * *

Because the decision whether to opt out of this class is consequential, the impossibility of giving effective notice to people who have not developed Non-Hodgkin's Lymphoma poses an

- 14 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

intractable due process problem. That these "futures" class members also may be migrant farmworkers, may be living in other countries, and are *defined* by their current lack of representation by counsel only exacerbates an already insuperable constitutional hurdle to approval of the proposed settlement for subclass 2.

## II.    The proposed "futures" class fails Rule 23(a)'s adequacy-of-representation requirement.

The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem*, 521 U.S. at 625. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 625–26 (internal quotation marks and citations omitted). Here, the proposed class action fails to satisfy Rule 23(a)(4) for at least two reasons.

**First**, because the claims process will exist only until the Compensation Fund is exhausted (which may be sooner than four years), Sett. Agmt. § 6.7, and because cancer can have a long latency period, *see* John Howard, *Minimum Latency & Types or Categories of Cancer* (Nov. 2014),[3] many or most subclass 2 members will not be able to participate in the claims process— although the restriction on punitive damages and the admissibility of the Science Panel would continue to apply, Sett. Agmt. § 7.13(f). Instead, the purported benefit of the proposed settlement for most of the futures subclass would be the diagnostic program created through a grant process. That program, which depends on applications from qualified third parties, may be beneficial to "futures" class members who reside near the locations where testing programs are set up. For those who do not live nearby, or for those with health insurance that already covers diagnostic services,

---

[3] https://www.cdc.gov/wtc/pdfs/policies/wtchpminlatcancer2014-11-07-508.pdf.

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

the program will provide no benefit. *See* Sett. Agmt., Exh. 2 (Notice) ¶ 29 (stating that there is no "guarantee that you will receive any particular type of medical test or that you will be able to obtain a diagnostic evaluation from the medical provider of your choosing."). Rather, for these people, the proposed settlement offers no monetary or non-monetary relief—only a waiver of punitive damages, a stipulation to the admissibility of a Science Panel report that may or may not be helpful and that will very likely be based on outdated information, and a four-year bar on litigation.[4]

By contrast, based on the complaint, all of the named subclass 2 representatives live in areas where the settling parties believe that large numbers of subclass 2 members may live, and thus where diagnostic testing grants will be focused. *Compare* Second Amended Complaint ¶¶ 11–15, *with* Sett. Agmt., Exh. 7 at 1–3. Individuals most likely to benefit from the diagnostic testing grants cannot adequately represent individuals who are unlikely to have access to or need for that

---

[4] The value of using the diagnostic program for education about self-diagnosis or telehealth visits, Sett. Agmt., Exh 2 (Notice) at 3, seems small in light of the medical tests used to diagnosis the disease. *See* Mayo Clinic, *Non-Hodgkin's Lymphoma – Diagnosis*, https://www.mayoclinic.org/diseases-conditions/non-hodgkins-lymphoma/diagnosis-treatment/drc-20375685. And the proposed settlement itself seems to recognize the limited value:

> Telehealth services shall consist only of intake processing (i.e., getting the Settlement Class Member's basic medical and background information) and an initial screening to determine whether or not, based on that information, the telehealth provider recommends that the Settlement Class Member seek in-person NHL Diagnostic Evaluation. *No tests shall be conducted, no diagnosis shall be made, and no other course of action shall be discussed during a telehealth session.* A provider may not discuss or assess medical conditions other than NHL (including other cancers) during a telehealth session.

Sett. Agmt. § 8.3(b)(3)(A) (emphasis added).

Moreover, if the telehealth provider recommends in-person testing, the proposed settlement bars the provider from recommending that the individual see anyone other than a "DAGP Grantee" or the individual's local hospital. *Id.* § 8.3(b)(3)(C). Thus, if a DAGP Grantee is not in the area, the program has not provided the individual with any more in terms of diagnostic options than he or she already has.

- 16 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

program, when the diagnostic testing program is the primary, and for many people the only, benefit offered to subclass 2 members. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238 (2d Cir. 2016) (finding inadequate representation where "class counsel trad[ed] the claims of many [class members] for relief they cannot use: they actually received nothing").

**Second**, the proposed settlement purports to release all claims of the derivative claimants, for no compensation. *See* Sett. Agmt. § 6.1(c); *id.*, Exh. 2 (Notice) at 11, 13 (stating that family members cannot receive a compensation award and cannot participate in the diagnostic program). In many states, however, derivative claims, such as for loss of consortium, can be valuable. *See, e.g.*, Steven Lipscomb & Ian Samson, *Loss of Consortium*, Plaintiff Magazine, Apr. 2017 (discussing elements of the claim and citing awards of up to $4 million)[5]; *Spouse Awarded $1,000,000 for Loss of Consortium Claim*, New York Injury Cases Blog, Mar. 7, 2009 (listing awards for loss of consortium claims in New York ranging from $0 to $3 million).[6] Importantly, in California, "loss of consortium is not a derivative cause of action. While the cause of action is triggered by the spouse's injury, a loss of consortium claim is separate and distinct." *Leonard*, 206 Cal. App. 4th at 1279 (internal quotation marks and citations omitted).

The choice to include derivative claimants in the settlement but exclude them from any compensation reflects that these individuals lack adequate representation as required by under Rule 23(a)(4). *See Amchem*, 521 U.S. at 627 (in discussing lack of adequate representation, noting that

---

[5] https://www.plaintiffmagazine.com/recent-issues/item/loss-of-consortium.

[6] https://www.newyorkinjurycasesblog.com/2009/03/articles/loss-of-consortium-damages/spouse-awarded-1000000-for-loss-of-consortium-claim/.

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

"loss-of-consortium claims are extinguished with no compensation"); *cf. Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 170 (N.D. Ohio 1992) (noting that, in response to an objection, the proposed settlement was amended to provide a substantial separate payment for spousal claims in mass-tort settlement). These individuals "could not have been adequately represented if their class representative negotiated a settlement and release that extinguished their claims without affording them any recovery." *In re Payment Card*, 827 F.3d at 237. Indeed, the named plaintiffs do not include any individuals in this category. And "[t]he named plaintiffs in a class action cannot represent a class of whom they are not a part." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 111 (2d Cir. 2005) (internal quotation marks and citation omitted).

Likewise, the derivative claimants lack separate counsel.[7] Yet "the settlement does more than simply provide a general recovery fund"; it also "makes important judgments on how recovery is to be *allocated* among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." *Amchem*, 521 U.S. at 610 (internal quotation marks omitted). In such circumstances, the creation of a subclass for distinct types of claimants, and the advocacy of an attorney representing each subclass, are needed to "ensure that the interests of that particular sub-group are in fact adequately represented." *In re Literary Works in Elect. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011) (emphasis added); *see Juris*, 685 F.3d at 1324 (rejecting challenge to adequacy of representation where "separate counsel … was specifically brought in for the sole purpose of representing those plaintiffs with only potential, future injuries"); *In re*

---

[7] Subclass 2 has separate counsel than subclass 1, but neither of the subclass 2 attorneys submitted a declaration in support of the pending motion. If the Court is inclined to grant the motion, it should first require submission of additional information showing the extent to which subclass 2 counsel actively participated in negotiations and sought to represent the interests of the "futures."

- 18 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

*Payment Card*, 827 F.3d at 233–34 (stating that subclasses with separate counsel are required whenever a settlement "impacts the 'essential allocation decisions' of plaintiffs' compensation and defendants' liability").

### III. The proposed class action does not satisfy Rule 23(b)(3)'s superiority requirement, particularly for subclass 2.

A class may only be certified under Rule 23(b)(3) if common questions predominate over individual questions, and class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). In this case, class treatment, especially for the "futures" subclass, is not superior to individual litigation for several reasons.

**First**, the proposed settlement does not present a superior alternative for "fair and efficient adjudication" for subclass 2 members, because its proposed method of adjudication—the claims process—may never be "available" to many of them. If the proposal is approved by the Court, the claims process will be funded at a specified amount for four years, after which the parties may ask the Court to extend the claims process or Monsanto may (subject to certain conditions) make a final payment of $200 million (to be shared by the claims process and research programs). *See* Sett. Agmt. § 13.3(b)(1). Both the initial Compensation Fund, and any additional amount allocated after the Initial Settlement Period, may be quickly exhausted, because of the vast numbers of people who may be eligible for the awards, which range from $10,000 to $200,000. In fact, the settlement agreement contemplates that the *initial* Compensation Fund may be inadequate to cover

- 19 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

eligible class members, who will necessarily be primarily subclass 1 members. *See id.*; *see also id.* § 13.2(b)(5) ("The Defendant will not be required to pay more than the revised annual funding regardless of the solvency of the Compensation Fund."). And Monsanto has no obligation to fund claims after the Fund is exhausted. *Id.* § 6.7. Because Non-Hodgkin's Lymphoma has a minimum latency period of two years, many subclass 2 members may become sick *after* the money in the Compensation Fund for the claims process has been exhausted. *See Minimum Latency*, *supra*. For this reason, the proposed settlement not only fails to offer subclass 2 members a fair and efficient alternative to litigation of individual claims; it may offer them no alternative at all.

**Second**, the large amount of potential compensatory damages claims cuts against a finding of superiority. Class treatment is the superior alternative to individual actions for small amounts, where meritorious claims will be lost because plaintiffs have little incentive to bring individual actions prosecuting their rights. *See Amchem*, 521 U.S. at 617. By contrast, "large individual claims susceptible to individual proof weigh against certification." *Coleman v. Theranos, Inc.*, 325 F.R.D. 629, 651 (N.D. Cal. 2018); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir. 2001) (stating that the interest of individuals in controlling the prosecution of their claims weighed against a finding of superiority where the amount in controversy for each person each exceeded $50,000); *Cole v. Gene by Gene, Ltd.*, 322 F.R.D. 500, 508 (D. Alaska 2017) (stating that an individual claim for $100,000 "weighs strongly against class certification"); *Sweet v. Pfizer*, 232 F.R.D. 360, 373 (C.D. Cal. 2005) (finding, in a case where claims allegedly ranged from $250,000 to $1.2 million, "a class action here is not superior to other methods of litigation"); *see also* John Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1437 (1995) ("Here, the fact that the settlement will pay less than

- 20 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

individual claimants have historically received should normally preclude a finding of 'superiority.'").

In Roundup cases to date, plaintiffs have been awarded from $5 million to $87 million. *See In re Roundup Prod. Liab. Litig.*, 385 F. Supp. 3d 1042, 1044, 1046 (N.D. Cal. 2019) (upholding $5 million compensatory damages award); *Johnson v. Monsanto Co.*, 52 Cal. App. 5th 434, 463 (reducing compensatory damages award to $10 million), *pet. for rev. denied* (Cal. Oct. 21, 2020); *Judge Reduced $2B Award in Monsanto Roundup Case to $87M*, Associated Press (July 26, 2019).[8] And Bayer reportedly settled thousands of suits for amounts ranging from "a few thousand dollars each to a few million." *See* Jef Feely & Tim Loh, *Bayer Reaches Deals on Many of Its 125,000 Roundup Weedkiller Lawsuits*, L.A. Times, May 25, 2020.[9] The magnitude of individual claims cuts against superiority.

**Third**, the large number of individual Roundup cases already filed weighs against a finding of superiority. The quantity of "pending litigation is *evidence* that individuals have an interest in controlling their own litigation." William B. Rubenstein, 2 Newberg on Class Actions § 4:70 (5th ed. 2020) (citing advisory committee notes to Rule 23). As of May 2020, Bayer faced "an estimated 125,000" lawsuits stemming from cancer linked to Roundup, *Bayer Reaches Deals*, *supra*— evidence both that claims can be pursued individually and that individuals have strong individual interests in controlling the litigation.

Plaintiffs' counsel suggest that the pending cases are not pertinent because the class consists only of people who have not yet filed claims. *See* Pls. Motion 35. Yet particularly for

---

[8] https://apnews.com/article/d14eb10a6b9747f5a440db2a552519e9.

[9] https://www.latimes.com/business/story/2020-05-25/bayer-weedkiller-deal.

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

subclass 2 members, the absence of a pending suit does not show that class members lack a strong interest in pursuing individual litigation; rather, by definition, members of the "futures" class do not yet have ripe damages claims because they have not been diagnosed with a disease attributable to exposure to Roundup. And the plethora of pending cases show that, once diagnosed, many people desire to pursue individual litigation. In addition, plaintiffs' counsel point out that the proposed settlement would allow subclass 2 members who are later diagnosed with Non-Hodgkin's Lymphoma eventually to bring an individual lawsuit. *Id.* Any such lawsuit, however, would be "controlled" in part by the terms of the settlement, including a stipulation to admissibility of the Science Panel report and waiver of punitive damages.

**Fourth**, the truism that the settlement "addresses litigation risk," *id.* at 36, is not a factor in assessing superiority. Every settlement reduces litigation risk. The degree of that risk is properly considered in assessing whether a proposed class-action settlement is fair, reasonable and adequate under Rule 23(e); litigation risk is not a factor considered in assessing superiority under Rule 23(b)(3). *See, e.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 956 n.1, 963 (9th Cir. 2009) (listing superiority as a requirement for class certification under Rule 23(b)(3) and listing "risk … of further litigation" as a factor considered in assessing fairness of a proposed settlement under Rule 23(e)); *Kimbo v. MXD Grp., Inc.*, 2021 WL 492493, at *2–*3, *5 (E.D. Cal. Feb. 10, 2021) (first addressing whether Rule 23(a) and Rule 23(b)(3) requirements are satisfied, including superiority, and then, "[h]aving determined that class treatment is warranted," addressing whether the settlement appears fair, adequate, and reasonable under Rule 23(e), including because of litigation risk).

- 22 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

IV.    **The "Accelerated Payment Awards" pose risks to class members that must be addressed *before* preliminary approval and provision of notice.**

The parties have agreed that payments of the so-called "Accelerated Payment Awards" "will begin no later than … [30 days after the Court grants preliminary approval of the settlement]," Sett. Agmt., Exh. 2 (Notice) at 3 (brackets in original); *id*. § 3.6(a)(iii)—now amended to 40 days, Amendment at § 1.2(a) (ECF 12665-1)—regardless of whether the proposed settlement is ultimately approved. *See* Pls. Motion 9. Monsanto has thus decided to pay up to $250 million for individual settlements of $5,000, for Monsanto's own business purposes, piggybacking on class notice but separate from the class-action settlement approval process. Because the "Accelerated Payment Awards" do not depend on final approval, the Court should not take the amount of the fund into account in assessing the fairness or the settlement or the adequacy of the relief. *See Koby v. ARS Nat'l Serv., Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017) (rejecting an attempt by the proponents of a class action settlement to claim as a benefit of the settlement certain changes to business practices that the defendant voluntarily adopted in an effort to avoid further litigation risk); *Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (finding that warranty extensions adopted before the class settlement "were not part of the value created by the settlement").

Nonetheless, other features of the "Accelerated Payment Awards" should be considered—and weigh heavily *against* preliminary approval and provision of the proposed notice because they operate to the significant *detriment* of class members.

**First**, under the proposed settlement, Monsanto may make the accelerated payments, in the amount of $5,000, to individuals who have already received a "qualifying" diagnosis of Non-Hodgkin's Lymphoma. *See* Sett. Agmt. § 7.2(a)(v) (claim package for applying for accelerated award must include "[m]edical records establishing a diagnosis of NHL"); *id*., Exh. 4 (defining

- 23 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

"qualifying diagnosis" for accelerated awards)). In return, those individuals must sign a detailed 23-page release form, including more than 16 pages of single-spaced text setting forth an array of releases and other legal consequences of accepting the payment—including an *irrevocable* release of the right to sue. *See id.*, Exh. 6. Because the release does not state otherwise, the "irrevocable and unconditional" release, *id.*, Exh. 6 at ¶ 13, would bind any class member who accepts the early $5,000 payment, *even if the Court does not give final approval* and the claims process is therefore never established. *See* Pls. Motion 3 (accelerated awards will be made available "regardless of any appeals"); *id.* at 8 (accelerated awards "will begin after preliminary approval of the Settlement by this Court"). Thus, subclass 1 members, already suffering from Non-Hodgkin's Lymphoma and expecting the opportunity to participate in a claims process, will have released claims potentially worth millions of dollars in exchange for $5,000.  The proposed Notice, Sett. Agmt., Exh. 2, fails to disclose this risk.

Class counsel distance themselves from the Accelerated Payment Awards and make clear that they do not purport to provide representation with respect to them, stating that "[b]ecause these payments are made before final approval and before any appellate challenges have run their course, they serve as offers to class members and acceptance is a matter of individual choice." Pls. Motion 9. In essence, granting approval to send notice of the proposed settlement would allow Monsanto to use a court-sanctioned notice program to make low-ball settlement offers, seemingly with the Court's imprimatur, to the unrepresented individuals already diagnosed with Non-Hodgkin's Lymphoma. And in light of this aspect of the proposed settlement alone, the proposal is not fair, reasonable, and adequate.

- 24 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

**Second**, class members who accept $5,000 accelerated awards (like those who accept awards in the claims process) must sign a "Confidential Release of All Claims." *See* Sett. Agmt., Exh. 6. The terms of the "Confidential Release" are already publicly available, as the document has been filed with this Court. Therefore, the only confidential aspect is that the class member has entered into the agreement. Although some class members might want Monsanto to keep their participation confidential because accepting the payment means that they have been diagnosed with cancer, there is no basis for Monsanto to require confidentiality by class members as a condition of payment.

Moreover, confidentiality may harm the class members' family members, because the release agreement also contains a comprehensive indemnification provision and a "Confidential Indemnity Agreement." *Id.*, Exh. 6 at ¶¶ 22–23. Under that provision, the class member binds his or her "Spouse and Spouse's heirs, personal representatives, successors, and assigns," and if any of them ever sue Monsanto or the array of "Released Parties" listed in the confidential agreement, the class member must indemnify Monsanto for all damages, costs, expenses, and even attorney fees. Thus, if a future spouse or other family member sues—for example after the class member's death—Monsanto may force that person to pay its attorney fees and expenses, based on an agreement that the family member did not know about because Monsanto insisted that it be confidential. In assessing whether the proposed settlement is fair, reasonable, and adequate, the Court should independently assess whether there is a legitimate reason to require confidentiality from class members who receive the accelerated awards (or any awards).

**Third**, the Confidential Release contains a non-disparagement clause, providing that any injured individual who accepts the $5,000 (or accepts an award in the claims process) is barred

- 25 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

from "maligning, ridiculing, defaming, or otherwise speaking ill of" the defendants (and broadly defined affiliated entities), "their products or their business affairs, practices, policies, standards, or reputation." *Id.*, Exh. 6 at ¶ 27. Thus, as a result of accepting $5,000 in compensation for developing a serious disease, the settlement would prevent individuals from speaking truthfully to tell their stories or express their opinions about Monsanto, Bayer, or anyone affiliated with either company, in the past or in the future, *id.* ¶ 6, as well as about Roundup, or any other Monsanto or Bayer product—with no meaningful opportunity to bargain over the terms of that gag clause.

Gag clauses such as this are controversial and should give the Court special pause here, where the class members who apply for "accelerated" payments are unlikely to have their own counsel or to understand the scope of the fine print that purports to waive their First Amendment right to speak truthfully about defendants and their products. The clause runs counter to strong public policy in favor of consumer speech on matters of public concern. Indeed, Congress barred the use of non-disparagement clauses in consumer contracts because they "interfere with the benefits consumers derive from ready access to 'crowd-sourced' reviews of products and services" and "undermin[e] the overall credibility of consumer reviews." H.R. Rep. 114-731 at 5–6 (2016) (discussing Consumer Review Fairness Act of 2016); *see* Consumer Review Fairness Act of 2016, 15 U.S.C. §45b (prohibiting provisions in form contracts that purport to bar consumers from posting negative reviews); Cal. Civil Code § 1670.8 (prohibiting the use of "non-disparagement" clauses in consumer contracts); *see also Zapata v. Bedoya*, 2016 WL 4991594, at *2 (E.D.N.Y. 2016) (in a Fair Labor Standards Act (FLSA) case, denying joint motion for approval of a settlement agreement because the non-disparagement provision in the agreement was contrary to the policy concerns underlying FLSA, and citing cases). Notably, because only individuals

- 26 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

diagnosed with Non-Hodgkin's Lymphoma can receive "accelerated" awards, the gag clause will prevent people who developed cancer attributable to Roundup from discussing their experience, including by "speaking ill" of the product.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary approval of proposed class settlement, appointment of interim class and subclass counsel, and direction of notice under Federal Rule of Civil Procedure 23(e).

Date: March 4, 2021

Respectfully submitted,

 /s/ Rebecca Smullin
Rebecca Smullin (CA Bar No. 250274)
Allison M. Zieve
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae
Public Citizen and Public Citizen Foundation

- 27 -

Memorandum of Amici Curiae Public Citizen in Opposition
to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741