# EXHIBIT B

# DECLARATION OF STEPHEN J. HERMAN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **IN RE: ROUNDUP PRODUCTS** | \* | MDL No. 2741 |
| **LIABILITY LITIGATION** | \* | |
| | \* | Case No. 3:16-md-02741-VC |
| | \* | |
| This Document Relates to: | \* | **DECLARATION OF** |
| | \* | **STEPHEN J. HERMAN** |
| *Ramirez, et al. v. Monsanto Co.,* | \* | |
| Case No. 3:19-cv-02224 | \* | |
| | \* | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I, the undersigned,

## STEPHEN J. HERMAN

respectfully declare, under penalty of perjury, that the following are true and correct to the best of my knowledge, information, recollection, and belief:

1. I practice law in New Orleans, Louisiana, and was appointed to serve as Co-Liaison Counsel for Plaintiffs in MDL No. 2179 as well as Co-Lead Class Counsel with respect to the Class Settlements with BP. This Declaration is offered to provide the Court with information, insight and opinions regarding the differences between the Proposed Class Settlement in the above-captioned matter and the *Deepwater Horizon* Medical Benefits Class Action Settlement.

### Background and Qualifications

2. I am licensed to practice law in the State of Louisiana, the United States District Courts for the Middle, Eastern and Western Districts of Louisiana, the U.S. Fifth Circuit, Second Circuit, Ninth Circuit, and Eleventh Circuit Courts of Appeal, and the U.S. Supreme Court.

3. I am a partner in the law firm of Herman Herman & Katz, LLC.

4. Over the past 25 years, I have represented plaintiffs, defendants, and objectors in putative class actions, certified class actions, and class settlements.

5. I have, since 2005, taught an advanced torts seminar on class actions at Loyola University of New Orleans Law School, and have, for a number of years, also taught the advanced civil procedure course on complex litigation at Tulane University School of Law.

6. I have authored and presented a number of articles, papers and speeches on class actions, MDLs, and complex litigation, as well as general civil litigation, legal ethics and professionalism, and attorneys' fees.

7.  I was, as previously noted, appointed to serve as Plaintiffs' Co-Liaison Counsel in the *Deepwater Horizon* MDL, No. 2179;[1]  Co-Lead Class Counsel for the BP Economic and Medical Settlement Classes;[2] and Lead Settlement Class Counsel for the Halliburton/Transocean Settlement Classes.[3]

8.  I was personally involved in the negotiation, approval and implementation of the *Deepwater Horizon* Medical Benefits Class Action Settlement.[4]

9.  A complete resume is attached hereto and incorporated herewith.

10. My firm represents a number of plaintiffs with claims against Monsanto arising out of exposure to glyphosate.  However, I believe that all of these clients retained our firm and/or co-counsel prior to February 3, 2021, and would therefore not seem to be affected by approval of the Proposed Settlement.

11. I am not being compensated for the preparation or submission of this Declaration.

### The BP Medical Class Settlement

12. The BP Medical Benefits Settlement was intended, first and foremost, to **(i)** provide direct compensation to those who, due to exposure to oil and/or dispersants during the clean-up / response efforts, had experienced acute reactions, and in some cases developed lingering chronic conditions resulting therefrom,[5] and **(ii)** provide all clean-up workers with long-term monitoring for the early detection of more serious longer latency illnesses or disease.[6]

13. Due to a lack of medical infrastructure in many of the low-lying and coastal areas that were most directly affected by the spill, the parties also decided to develop and fund a series of grants, to be administered by and thru the state and other major hospitals in the area, to

---

[1] PRE-TRIAL ORDER NO. 6, *In re: Deepwater Horizon,* MDL No. 2179, Eastern District of Louisiana, Case No. 2:10-md-02179, Rec. Doc. 110 (Aug. 27, 2010).

[2] PRELIMINARY APPROVAL ORDER (Economic), *Deepwater Horizon,* Rec. Doc. 6418 (May 2, 2012) at ¶19, *and,* PRELIMINARY APPROVAL ORDER (Medical), *Deepwater Horizon,* Rec. Doc. 6419 (May 2, 2012) at ¶18(a).

[3] PRELIMINARY APPROVAL ORDER (HESI/Transocean), *Deepwater Horizon,* Rec. Doc. 16183 (April 12, 2016) at ¶16.

[4] *See generally,* DECLARATION OF STEPHEN J. HERMAN, *Deepwater Horizon,* Rec. Doc. 7116-2, at 89-93 (signed July 23, 2012) (filed Aug. 14, 2012), *and,* DECLARATION OF STEPHEN J. HERMAN AND JAMES PARKERSON ROY, *Deepwater Horizon,* Rec. Doc. 21098-1 (signed July 14, 2016) (filed July 21, 2016) at ¶¶ 63-67, 83-86.

[5] All of the Specified Physical Conditions, whether Acute or Chronic, were required to have first manifested within 24, 48, or 72 hours of exposure. *See* EXHIBIT 8 to the BP Medical Benefits Settlement (Specified Physical Conditions Matrix) [Rec. Doc. 6273-10].

[6] As ultimately developed, the Periodic Medical Consultation Program is not a traditional "medical monitoring" program, but provides more general access to basic medical services, without charge, to participating class members, over a period of 21 years. *See* Deepwater Horizon, 295 F.R.D. 112, 122-123 (E.D. La. 2013).

ensure that such settlement-related medical surveillance, as well as more general services, would be available to the class members and their communities.[7]

14. Finally, with the recognition that some class members would likely later develop more serious long-latency illnesses or diseases arguably related to the spill, the parties agreed that such class members would have to retain the right to pursue such future claims, the class settlement notwithstanding.  Hence, the class members were also provided with a Back-End Litigation Option.[8]

15. When class counsel agreed to structure the BP Medical Benefits Settlement as a proposed class settlement, we knew that we were likely testing the limits of what could be accomplished within the bounds of Rule 23(b)(3).

16. As acknowledged by Professor Coffee at the time, the certification of a class action covering personal injuries, even in the settlement context, poses special legal problems.[9]

17. In overview, the BP Medical Benefits Settlement was designed to "provide compensation for acute and chronic physical conditions that are likely to arise from short-term exposure to oil, oil dispersants, or, in certain limited cases, to heat," while "more serious and more idiosyncratic injuries that might be caused by trauma, exposure or toxic reactions – *e.g.,* heart attacks, strokes, cancer, broken bones – are deliberately not compensated in order both (1) to create a cohesive class whose members have similar injuries (in terms of both the directness of their causation and their market value as legal claims) and (2) to define a class in which the causation is straightforward."[10]

---

[7] This Gulf Region Health Outreach Program is described more fully in Deepwater Horizon, 295 F.R.D. at 123-124.

[8] The Back-End Litigation Option process is set forth in Section VIII of the BP MEDICAL SETTLEMENT AGREEMENT [Rec. Doc. 6273-1] at pp.56-69, and summarized by the Court as follows: "The Parties have stipulated that in a lawsuit brought under the Back–End Litigation Option, the Class Member need not prove and may not litigate at trial: (a) the fact of exposure of the Class Member to oil and/or dispersants during the *Deepwater Horizon* Incident or Response Activities; (b) the alleged fault of BP for the Deepwater Horizon Incident; and (c) the fact and/or existence of the Agreement to prove liability.  BP has also agreed to forego defenses based on prescription, statute of limitations or repose, laches, and certain other defenses. As a result, the only issues to be litigated under the Back–End Litigation Option are: (a) the fact of diagnosis; (b) the amount, location, and timing of oil and/or dispersants released and/or used during the *Deepwater Horizon* Incident or Response Activities; (c) the level and duration of the Class Member's exposure; (d) causation, including potential alternative causes; and (e) the amount, if any, of compensatory damages." Deepwater Horizon, 295 F.R.D. at 124-125.

[9] DECLARATION OF JOHN C. COFFEE, JR., *Deepwater Horizon,* Rec. Doc. 7113-2 (signed Aug. 10, 2012) (filed Aug. 13, 2012) at ¶3; *see also, e.g.,* DECLARATION OF ROBERT H. KLONOFF, *Deepwater Horizon,* Rec. Doc. 7116-2 at p.6, ¶14 ("under established law, mass tort personal injury cases are ordinarily not suitable candidates for class certification").

[10] COFFEE DECLARATION, *Deepwater Horizon,* Rec. Doc. 7113-2, at ¶2.  *See also,* KLONOFF DECLARATION, *Deepwater Horizon,* Rec. Doc. 7116-2, at ¶46 ("the narrow and precise class definition limits the scope of the class to those most likely exposed to oil or oil-dispersing chemicals.… [G]iven that the injuries must have manifested themselves within 24 to 72 hours after exposure, that the injuries could have been caused through only two pathways, and that the class includes only those most likely to have been exposed to oil or petroleum-based dispersants, the likelihood of serious competing causation arguments is remote…. Because the class includes only individuals who were in close geographic and temporal proximity to the spill, a class member who shows that he or she suffers from a specified medical condition that manifested itself (or worsened) following the oil spill should not have serious trouble proving individual causation").

18. Against the existing "backdrop of greater obstacles to the certification of a mass tort settlement class action," Professor Coffee opined that the BP Medical Benefits Class Settlement could nevertheless be approved, ***because***:

    a.  Variations in state law were not an issue;

    b.  BP was a classic "single-event" disaster, which "avoids the difficulties in other mass tort class actions that have involved extended exposure, long latency periods, and greater uncertainty as to causation";

    c.  ...

    d.  The BP medical claims for acute and chronic injuries covered by the settlement were largely "negative value" claims; and,

    e.  The chain of causation for the conditions and injuries covered by the BP settlement was "straightforward" …. [11]

19. Despite the availability of a Back-End Litigation Option for BP Medical Settlement Class Members, the parties were cognizant of the Supreme Court's concern about the ability to provide class members with meaningful notice, particularly with respect to the potential impacts of a proposed class settlement on future claims. [12]

20. The BP Medical Class Definition was therefore tightly drawn to include only **(a)** Clean-Up Workers, and **(b)** coastline residents within geographically limited and well-defined zones. [13]

---

[11] COFFEE DECLARATION, *Deepwater Horizon,* Rec. Doc. 7113-2, at ¶9.  *See also,* KLONOFF DECLARATION, *Deepwater Horizon,* Rec. Doc. 7116-2, at ¶15 (summarizing the elements that make the BP Medical Class Settlement "truly an exception to the general rule that mass tort personal injury cases should not be certified").

[12] *See* Amchem v. Windsor, 521 U.S. 591, 628 (1997) ("Impediments to the provision of adequate notice, the Third Circuit emphasized, rendered highly problematic any endeavor to tie to a settlement class persons with no perceptible asbestos-related disease at the time of the settlement…. Many persons in the exposure-only category, the Court of Appeals stressed, may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out"; although "we need not rule, definitively, on the notice given here … we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous").

[13] *See* DEEPWATER HORIZON MEDICAL BENEFITS CLASS SETTLEMENT AGREEMENT, *Deepwater Horizon,* Rec. Doc. 6273-1 (April 18, 2012) at ¶¶ I(A) (Class Definition), II(Q) (Definition of Clean-Up Worker), Exhibit 9 [Rec. Doc. 6273-11] (Zone A and B Geographical Descriptions), Exhibit 10 [Rec. Doc. 6273-12] (Zone A Maps), and Exhibit 11 [Rec. Doc. 6273-13] (Zone B Maps).

21. Most, if not all, of the BP Medical Settlement Class Members were objectively ascertainable and individually identifiable for notice purposes from property ownership records and one or more of the clean-up/response databases.[14]

22. While BP Medical Class Members pursuing Back-End Litigation Option lawsuits are subject to pre-suit notice, discovery, and mediation requirements, there are no individual or aggregate limitations on the compensatory damages available to such class members; nor is there any other aggregate limitation or cap on the settlement funds available for Specified Medical Condition payments, the Periodic Medical Consultation Program, or the costs of settlement administration.[15]

23. In approving the BP Medical Class Settlement, the Court underscored that: "The claims of each of the Medical Class Members arise out of a single event – the Macondo well blowout, the resulting oil spill, and the Response thereto."[16]

24. It is "limited to individuals who suffered past exposure to oil and/or dispersants during a well-defined, finite time period" and "is based upon objective criteria, including participation in Response Activities, residency in objectively-defined geographic areas, and the manifestation of clearly-identified Specified Physical Conditions."[17]

25. As distinguished from *Amchem*,[18] the BP Medical Benefits Class "consists exclusively of individuals who have suffered a past exposure and, by definition, an injury. All Class Members retain the right to sue for Later–Manifested Physical Conditions under the Back–End Litigation Option. There is thus no 'future' injury released by the Settlement."[19]

---

[14] *See, e.g.,* BP MEDICAL BENEFITS SETTLEMENT AGREEMENT, at ¶ XXI(B)(1) (identifying the "Badged Workers" database, "Medical Encounters" database, "Training" database, "Traction" database, "Injury and Illness" database, "Persons on Board" lists); *see also,* XI(B)(2) ("Individual mailed notification to those Medical Benefits Settlement Class Members who can practicably be identified from Court filings and records; GCCF records; databases, data files, data collections, and other documentary evidence in the possession, custody, or control of BP; names and addresses of known residents who resided in ZONE B; and other sources, pursuant to the Court-approved Medical Benefits Class Notice Plan").

[15] In addition, the Class Counsel and other Common Benefit Attorney Costs and Fees were paid by BP over and above the compensation and other settlement benefits flowing to the BP Medical Class Members. *See* BP MEDICAL BENEFITS SETTLEMENT AGREEMENT, ¶ XIX, *and,* EXHIBIT 19 [Rec. Doc. 6273-21]; (*see* Deepwater Horizon, 295 F.R.D. at 126 ("Any common benefit Class Counsel fees and costs awarded by the Court will not be deducted from Class Members' recoveries, but will be paid by BP in addition to other class benefits")).

[16] Deepwater Horizon, 295 F.R.D. at 141.

[17] Deepwater Horizon, 295 F.R.D. at 133.

[18] *See* Amchem, 521 U.S. at 626, where "for the currently injured, the critical goal is generous immediate payments," whereas exposure-only plaintiffs, by contrast, had an interest "in ensuring an ample, inflation-protected fund for the future."

[19] Deepwater Horizon, 295 F.R.D. at 140.

**Important Differences Between the BP Medical Class Settlement
and the Proposed Class Settlement in This Case**

26. There are important differences between the BP Medical Class Settlement and the
    Proposed Class Settlement in the above-captioned case, including particularly:

    a.  BP was a "single event" case;

    b.  All of the relevant exposure had already occurred;

    c.  The class members could be specifically identified and provided with
        individualized notice;

    d.  All of the claims were governed by general maritime law;

    e.  The BP Medical Class Members were entitled to ***both*** immediate compensation
        from the settlement program for acute and chronic conditions ***and also*** the
        ability to come back and sue BP in the future in the event of a later-manifested
        physical condition or disease; and,

    f.  The potential future claims for punitive damages that were released in the Back-
        End Litigation Option process were uncertain and legally challenging.

27. These distinctions, in my opinion, are significant in terms of the Rule 23(a) and (b)(3)
    requirements for certification, even (and in some cases especially) in the settlement
    context.

28. While perhaps not as "sprawling" as the class settlement proposed in *Amchem,* this
    Proposed Class Settlement does attempt to encompass the claims of literally millions of
    people who have been exposed to different glyphosate products, "for different amounts of
    time, in different ways, and over different periods."[20]

---

[20] *See* <u>Amchem</u>, 521 U.S. at 624 (quoting <u>Georgine v. Amchem Products</u>, 83 F.3d 610, 626 (3d Cir. 1996)).
Under this Proposed Class Settlement, the products include: Roundup; Accord; AFG; Agent; Agrivalu; Albaugh;
Aquamaster; Aquaneat; Backdraft; Bronco; Buccaneer; Chemsico; Clean Clearout; Cornerstone; Corral; Credit;
Custom; Dog Fight; Doomsday; Drexel; DuPont; Dynasty; Eagre; Ecoplug Implant; Edger II; Erase Blue; Esplanade;
ETK-2301; Exchange; Expedite; Expert; Extreme; EZ-Ject; Fallow; Ferti-Lome; Foresters; Fozzate; GLY; GlyStar;
Glyfos; Gly-Flo; Glygran; Glykamba; Glymix; Glyphosate; Glypho; Glyphomax; Glypro; Grass, Weed and
Vegetation Herbicide; Green Light Com-Pleet; Green Light; GroundClear; Helosate; Honcho;Jury; Kleenup;
Kleeraway; Kornerstone K; Kredit; Landmaster; LG; Lilly/Miller; LPI; Makaze Yield-Pro; Marman Atila; Martin's
Eraser; Militia; Mirage; Mon; NAF; Nomix; NS; NSR; NuFarm; NUP; Ortho; Polado; Prep It; Prodeuce; Razor;
Ranger; RD; Ready-to-Use; Recoil Broad Spectrum; Rigo; Riverdale Credit; Rodeo; RT; RT3; SC; Security Blot-Out;
Shackle; Specticle; Super K-Gro; Surrender; Systemic; Takeout; Thundermaster; Tomahawk; Touchdown; TVC;
Weed & Grass Killer; and ZPP. *See* Exhibit 1 to the Proposed Class Settlement Agreement [Rec. Doc. 12531-2 at
pp.130-150]; Proposed Class Notice, No.9 (Exhibit 2 to the Proposed Settlement Agreement) [Rec. Doc. 12531-2
at p.161].

29. By the time the BP Medical Class Settlement was reached, the clean-up/response effort had long concluded, and virtually all if not all of the exposure by class members to oil and dispersants had already occurred.  In this case, by contrast, the parties attempt to capture anyone who has been exposed to Roundup at any point prior to February 3, 2021,[21] even as the product remains on the market and additional exposure to Proposed Settlement Class Members may be ongoing or recurring.[22]

30. Even in *Amchem,* although the resulting conditions had long-latency periods, much if not all of the exposure to the proposed settlement class members had already occurred in the past.[23]

31. Here, by contrast, the class is confronted with ***both*** the manifestation of long-latency illness ***and*** continued exposure to the product long beyond the date of the settlement.

32. Consider, hypothetically, a 13-year-old girl who in 2020 helped her parents with the garden and was exposed to Roundup, and then goes on to work as a landscaper in her 20s and 30s (from 2027-2046), and is ultimately diagnosed with Non-Hodgkin's Lymphoma when she is 50 (in 2057):  Are we going to say that the notice she purportedly received, or that her parents purportedly received, in 2021 is sufficient to curtail her future rights as a matter of Due Process?

---

[21] "Exposure" according to the Proposed Class Notice, means "that you were exposed when Roundup Products were mixed or applied, whether or not you were the person doing the mixing or application." *See* PROPOSED CLASS NOTICE, No.8.  According to the Proposed Class Settlement Agreement: "'Exposure to Roundup Products through the application of Roundup Products' includes exposure through mixing and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself." PROPOSED CLASS SETTLEMENT AGREEMENT [Rec. Doc. 12531-2] §1.1(a).

[22] *See* PROPOSED CLASS SETTLEMENT AGREEMENT, §12.8 ("For the avoidance of doubt, if a Settlement Class Member is further exposed to Roundup Products on or after February 3, 2021, … the Releases… and the stay … shall apply to Claims arising from, resulting from, in any way relating to or in connection with such exposure to the same extent as Claims arising from, resulting from, in any way relating to or in connection with exposure prior to February 3, 2021").

[23] *See* Amchem, 521 U.S. at 598 (quoting REPORT OF THE JUDICIAL CONFERENCE AD HOC COMMITTEE ON ASBESTOS LITIGATION 2–3 (Mar. 1991) ("This is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s")).

33. In the BP Medical Class Settlement, by contrast, notice was mailed to a discreet group of identifiable people, within a limited geographical region, who already knew whether they had been exposed to oil and/or dispersants and whether they had thereafter suffered from acute or chronic injuries.[24]

34. Also potentially significant is the fact that the BP medical claims were all governed by a single uniform body of general maritime law.[25] While I personally do not believe that variations in state law are relevant in the settlement context,[26] courts have sometimes disagreed.[27] The Proposed Settlement Class here would seem to implicate the substantive

---

[24] *See* FOOTNOTES 13 and 14 *supra. See also, e.g.,* Deepwater Horizon, 295 F.R.D. at 134 ("The Medical Class includes approximately 90,000 Clean–Up Workers and nearly 5,000 Zone B Residents. Approximately 100,000 individuals reside in Zone A"); DECLARATION OF CAMERON AZARI, *Deepwater Horizon,* Rec. Doc. 7113-1 (Aug. 13, 2012), at ¶¶19-33 (explaining how, utilizing information from the BP clean-up and response databases and geographical mapping, Hilsoft was able to provide individual notice to 274,294 potential Medical Benefits Settlement Class Members by mail and 56,136 by e-mail, as well as 64,798 to known attorneys or other representatives of potential Medical Benefits Settlement Class Members, and to 483 entities that were known to have participated in the Response Activities, with only a 3.3% undeliverable rate).

[25] *See* In re Deepwater Horizon, No.10-2179, 2011 WL 4575696 at **2-3 (E.D.La. Oct. 4, 2011) (medical claims governed by maritime law, to the exclusion of state law) (citing In re Deepwater Horizon, 808 F.Supp.2d 943, 951-958 (E.D.La. Aug. 26, 2011)).

[26] At least for Rule 23(b)(3) purposes. *See, e.g.,* Amchem, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…, for the proposal is that there be no trial"). There might be some circumstances in which the variations in substantive law between and among the proposed classmembers are so significant that Rule 23(a)(4) adequacy of representation concerns would arguably suggest the need for procedural safeguards such as the appointment of a neutral for internal allocation purposes or formal sub-classing.

[27] *See, e.g.,* In re Hyundai and Kia Fuel Economy Lit., 881 F.3d 679 (9th Cir. 2018) (reversing national class settlement on the basis that the district court failed to adequately consider variations in state law). While the Ninth Circuit, sitting *en banc,* vacated this original panel decision, such reversal seems predicated largely on the Court's determination in that case that the substantive law of California could be applied to the entire class. *See* In re Hyundai and Kia Fuel Economy Lit., 926 F.3d 539, 561-562 (9th Cir. 2019) (en banc). The Court, at the same time, does state that: "Importantly, the *Mazza* class was certified for litigation purposes. The prospect of having to apply the separate laws of dozens of jurisdictions presented a significant issue for trial manageability, weighing against a predominance finding. *See also* Zinser v. Accufix, 253 F.3d at 1190–1192 (treating state law variations as a subspecies of trial manageability concerns). In settlement cases, such as the one at hand, the district court need not consider trial manageability issues. *Amchem,* 521 U.S. at 620." Hyundai and Kia Fuel Economy Lit., 926 F.3d at 563 (citing Mazza v. American Honda Motor Co., 666 F.3d 581, 590-594 (9th Cir. 2012) (national certification of litigation class vacated and remanded based on the finding that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place), and Zinser v. Accufix Reasearch Institute, 253 F.3d 1180, 1189 (9th Cir. 2000) ("Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will compound the disparities among class members from the different states")). In the Ninth Circuit, therefore, the presence of variations in state law may not be significant when a class is sought to be certified for settlement purposes only. *See* Jabbari v. Farmer, 965 F.3d 1001, 1007 (9th Cir. 2020) ("*Hyundai* thus dictates that, as a general rule, a district court does not commit legal error by not conducting a choice-of-law analysis, despite variations in state law, before determining that common issues predominate for a settlement class…. For purposes of a settlement class, differences in state law do not necessarily, or even often, make a class unmanageable"). *But see*: Amchem, 521 U.S. at 624 (quoting the Third Circuit, with apparent approval, to the effect that: "Differences in state law … compound these disparities").

law of all 50 States – and arguably the laws of other nations.[28]   Although perhaps in and of itself insufficient to preclude certification of the Proposed Class for settlement purposes, the variations in substantive law, combined with other factors, would seem material to the Rule 23(b)(3) analysis.[29]

35. In the BP Medical Class Settlement, moreover, the BP Medical Class Member was entitled to receive compensation under the Specified Medical Condition Matrix, **and then also** come back later to pursue a Back-End Litigation Option lawsuit in the event of a later-manifested physical condition.[30]

36. It appears that under this Proposed Class Settlement, by contrast, the Proposed Settlement Class Member can only receive **either** compensation under the settlement matrix **or** an accelerated payment award of $5,000 **or** compensatory damages that may be awarded in a conventional lawsuit.[31]   A Proposed Settlement Class Member does not seem to have the ability to seek additional compensation – either within the class settlement program or in litigation – for a later manifested physical condition.

37. Superficially, BP Medical Class Members, like the Roundup Proposed Settlement Class Members, gave up their right to assert claims for punitive damages in the event of a later-manifested physical conduction.  However, at the time the BP Medical Settlement was entered, such claims were uncertain and legally challenging.  The MDL Court had already dismissed the punitive damages claims of Jones Act seamen class members involved in the clean-up / response efforts, as a matter of law.[32]   The remaining BP Medical Settlement Class Members would have been required, at trial, under U.S. Fifth Circuit precedent, to not only demonstrate egregious conduct, but to also prove that such willful, wanton, or reckless conduct "emanated from corporate policy or that a corporate official with policy-making authority participated in, approved of, or subsequently ratified the egregious conduct."[33]   Indeed, after a full liability trial on the merits, the Court would ultimately conclude that, while there was willful, wanton and reckless conduct on the part of BP

---

[28] The Proposed Class Definition attempts to capture not only residents and citizens of the United States, but also those individuals "who claim exposure to Roundup Products through the application of Roundup Products in the United States."

[29] *See, e.g.,* Amchem, supra, 521 U.S. at 624 (quoting the Third Circuit, with apparent approval, in addressing the predominance issues: "Differences in state law … compound these disparities").

[30] *See* FOOTNOTE 47 *infra,* relating observations from the Klonoff Declaration that was submitted in *Deepwater Horizon.*

[31] *See* PROPOSED CLASS NOTICE, Nos.14, 49-51 (Exhibit 2 to the Proposed Settlement Agreement) [Rec. Doc. 12531-2 at pp.162-163, 170-171]. *See also* PROPOSED CLASS SETTLEMENT AGREEMENT, §6.1(b) (One Award Per Settlement Class Member), §6.2(a)(i)(3) (Release of Claims), §6.2(a)(ii)(5) (Release of Claims), and §17.2 (Release of Unknown Claims).

[32] *See* Deepwater Horizon, 2011 WL 4575696 at *11.

[33] In re Deepwater Horizon, 21 F.Supp.3d 657, 749 (E.D.La. 2013); *citing,* In re: P & E Boat Rentals, Inc., 872 F.2d 642, 652-653 (5th Cir.1989).

employees acting in a "managerial" capacity, this was insufficient to visit punitive damages exposure on the company.[34]

38. In the Roundup Litigation, by contrast, it is my understanding that all three trials have resulted in substantial punitive damages verdicts.[35]

39. Therefore, the hopeful and somewhat theoretical claims for punitive damages that were given up by the settling BP Medical Class Members are not analogous, in my opinion, to the proposed-to-be-released Roundup-related punitive damages claims.

40. Finally, it is worth noting that in a BP Back-End Litigation Option lawsuit, the BP Medical Class Member is relieved from having to prove either that he or she was exposed to oil and/or dispersants, or that BP is at fault.[36]

41. In this case, by contrast, if a Proposed Class Member elects to file a conventional lawsuit for compensatory damages, Monsanto appears to retain the right to contest both exposure and liability, in addition to specific causation – separate and apart from Monsanto's ability to utilize and/or contest the Science Panel's general causation determinations.[37]

## Other Observations About the Proposed Class Settlement

42. An asymptomatic Proposed Settlement Class Member is arguably required to register within 45 days of the conclusion of the initial settlement period in order to receive future settlement compensation under the matrix if and when Non-Hodgkin's Lymphoma might

---

[34] Deepwater Horizon, 21 F.Supp.3d at 746-751.

[35] See, e.g., MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL, In re Roundup Products Liability Litigation, MDL No. 2741, Rec. Doc. 12509 (Feb. 3, 2021) at pp.49-50 fn.13 (punitive damage verdict of $75 million, reduced to $20 million, in Hardeman v. Monsanto Co., No.16-525 (N.D. Cal.); punitive damages verdict of $250 million, reduced to $10.3 million, in Johnson v. Monsanto, 52 Cal. App.5th 434 (Cal. App. 1st Dist. 2020); and punitive damages verdicts of $1 billion to each of two plaintiffs, reduced to $24.5 million and $44.8 million, in Pilliod v. Monsanto Co., No.RG17862702 (Cal. Super.)).

[36] See FOOTNOTE 8 supra.

[37] See PROPOSED CLASS SETTLEMENT AGREEMENT, at ¶12.7(i) and ¶30.2 ("The Monsanto Parties do not waive or concede any position or arguments they have for or against, and retain full right and ability to contest, a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, including any Roundup Lawsuit, Related Party Lawsuit, and/or with respect to any and all Roundup Claims. The Monsanto Parties and the Related Parties will not be precluded in any action or proceeding from contesting a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member, even if the Settlement Class Member receives a favorable Notice of Registration Determination, Accelerated Payment Determination, or Claims Program Determination"); see also MEMO IN SUPPORT OF PRELIMINARY APPROVAL, at p.18 ("either class members or Monsanto may introduce or challenge the determination in individual cases, and either may introduce supplemental or conflicting evidence on causation. In addition, if new scientific evidence emerges three years or more after the Panel reaches its determination, any party may challenge the admissibility of the Panel's determination under Daubert/Frye on that basis").

develop[38] - assuming that Monsanto agrees, and the Court approves, a continuation and further funding.[39]

43. The Proposed Settlement Class appears to effectively shorten the statute of limitations for currently asymptomatic Proposed Settlement Class Members to only 180 days following an Non-Hodgkin's Lymphoma diagnosis[40] - at least with respect to settlement matrix compensation claims.[41]  (In BP, by contrast, a Medical Settlement Class Member has four years from the date of diagnosis to initiate a Back-End Litigation Option claim.[42])

44. It is not clear the extent to which a Proposed Settlement Class Member retains his or her right to sue Monsanto for compensatory damages if he or she is denied settlement matrix compensation or the fund runs out of money and Monsanto refuses to extend (or the Court refuses to approve continuation of) the settlement program.  The answer to Question No. 49 in the Proposed Settlement Class Notice suggests that such rights will be retained.[43]  But the answer to Question No. 40 advises that: "if you stay in the class, you can only bring an individual lawsuit against Monsanto for your exposure to Roundup Products after the Science Panel completes its work, and then only if you were offered a compensation award and did not accept it, or you did not apply for a compensation award."[44]

45. What if I am a Proposed Settlement Class Member, and I am diagnosed in the next three years with Non-Hodgkin's Lymphoma, and I expend the time and effort to submit a settlement compensation claim, which is accepted, but the Compensation Fund is exhausted and not extended:  I have to then file a conventional lawsuit, wherein Monsanto can use an adverse Science Panel determination against me, and my claim will be limited to compensatory damages only? [45]

---

[38] *See* PROPOSED CLASS NOTICE, No.20 (Exhibit 2 to the Proposed Settlement Agreement) [Rec. Doc. 12531-2 at p.164]

[39] *See* PROPOSED CLASS NOTICE, No.25.

[40] PROPOSED CLASS NOTICE, No.20.  The limitation period may, as a practical matter, turn out to be longer than 180 days for a Proposed Settlement Class Member who is diagnosed before the settlement becomes final.

[41] Presumably, a future lawsuit for compensatory damages would be governed by the ordinarily applicable statute of limitations. (*See* PROPOSED CLASS NOTICE, Nos. 49, 51)

[42] *See* BP MEDICAL SETTLEMENT AGREEMENT, §VIII(A).

[43] *See* Rec. Doc. 12531-2, at p.170.

[44] *See* Rec. Doc. 12531-2, at p.168.

[45] This would appear to be the case. *See* PROPOSED CLASS SETTLEMENT AGREEMENT, §6.4, §7.13(f), and §13.4(e). (In addition, it appears that if claim determination were made, but the Proposed Settlement Class Member never formally "accepted" the "offer" because the Compensation Fund has been exhausted, Monsanto would be able to use the plaintiff's unhonored settlement claim determination as an offer of judgment against them.)

46. While the exclusion of medical monitoring and punitive damages from the definition of "Compensatory Damages" seems clear, I am not sure how "any damages that were increased because of the absence of medical monitoring for any injuries"[46] would be quantified or determined(?)

47. This is not a "negative value" case.[47]

48. This Proposed Settlement strikes me as the "judicial blackmail" complaint[48] in reverse: Monsanto faces such daunting exposure from the prospect of future *individual* cases that the company seeks to now insulate itself through the protections of a settlement class.

49. But Rule 23(e) does not instruct the Court to consider whether the Proposed Settlement is fair and reasonable from the defendant's perspective; it only directs the Court to consider whether the Proposed Settlement is fair, reasonable and adequate ***to the members of the class***.[49]

---

[46] *See* PROPOSED CLASS SETTLEMENT AGREEMENT, §2.1(16) and §17.1(b).

[47] Putting aside claims for punitive damages, (*see* Footnote 35 *supra*), it is my understanding that compensatory damages of $5 million were awarded in *Hardeman*; that compensatory damages of $39.2 million, reduced to $4 million, were awarded in *Johnson*; and that compensatory damages of $55 million were awarded in *Pilliod*. Addressing the BP Medical Class Settlement, on the other hand, Dean Klonoff noted that: "in contrast to most attempted mass tort personal injury class actions, the medical claims in this case are, in the main, classic 'negative value' cases (*i.e.*, claims that are not economically viable as individual lawsuits because the likely recovery is less than the costs of bringing suit)" (citing *Amchem*, 521 U.S. at 617 (noting that the drafters of Rule 23(b)(3) "had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'")); and further noting that the Specified Physical Conditions being claimed and compensated under the BP Medical Benefits Settlement were "relatively minor", while the "more serious injuries" which may take years to manifest "would be covered by the Back-End Litigation Option". DECLARATION OF ROBERT H. KLONOFF, *Deepwater Horizon,* Rec. Doc. 7116-2 at p.22, ¶45.

[48] ***But see***: Klay v. Humana, 382 F.3d 1241, 1274 (11th Cir. 2004) ("if their fears are truly justified, the defendants can blame no one but themselves. It would be unjust to allow corporations to engage in rampant and systematic wrongdoing, and then allow them to avoid a class action because the consequences of being held accountable for their misdeeds would be financially ruinous. We are courts of justice, and can give the defendants only that which they deserve").

[49] *See* FED. RULE CIV. PRO. 23(e)(2)(C) ("the relief provided for the class is adequate…"); *see also, e.g.,* FED. RULE CIV. PRO. 23(e)(2) ("If the proposal would bind class members, the court may approve it only … on finding that it is fair, reasonable, and adequate"); FED. RULE CIV. PRO. 23(e)(2)(A) ("the class representatives and class counsel have adequately represented the class"); FED. RULE CIV. PRO. 23(e)(2)(C)(2) ("the effectiveness of any proposed method of distributing relief to the class"); FED. RULE CIV. PRO. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other"); *see also* MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) §21.61 ("To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by settlement than by further litigation").

50. If Monsanto's fears about its exposure to future plaintiffs is justified, the company has no one to blame but itself.  Indeed, it would be unjust, in my view, to allow a corporation like Monsanto to engage in rampant and systematic wrongdoing, and then allow it to avoid liability because the consequences of being held accountable at trial might be financially ruinous for the company.  A court of justice can give a defendant like Monsanto only so much justice as it deserves.

I declare, under penalty of perjury, that the above and foregoing is true and correct to the best of my knowledge, information, and belief.

This 25th day February, 2021.

Stephen J. Herman, Esq.

## STEPHEN J. HERMAN

820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhklawfirm.com

---

### PERSONAL

Born, in New Orleans, Louisiana, on November 22, 1968.
Married, in 1994, to the Honorable Karen Kirshbom Herman, Criminal District Court for the Parish of Orleans, Section I.
Children: Alexandra Rae Herman, 21, and Harris Andrew Herman, 18.

---

### EDUCATION

**Isidore Newman School**                                                                                           **New Orleans, LA**
     Board of Regents Scholar, 1987.
     National Merit Letter of Commendation, 1986.

**Dartmouth College**                                                                                                     **Hanover, NH**
     Bachelor of Arts, 1991.
     GPA, Overall: 3.3;  Major (English): 3.6.
     Third Honor Group, 1989-1990.
     Citation of Excellence in the Study of Milton, 1990.
     Citation of Excellence in the Study of Shakespeare, 1990.
     Winner of the Elenor Frost Playwriting Competition, 1991.

**Tulane University School of Law**                                                                         **New Orleans, LA**
     Juris Doctor, *Magna Cum Laude,* 1994.
     GPA: 3.52; Class Rank: Top Ten Percent.
     *Order of the Coif.*

---

### EMPLOYMENT

**Herman, Herman & Katz, L.L.C.**                                                                         **New Orleans, LA**
     Associate, 1995 - 2001.
     Partner, 2002 -

**Herman Gerel, L.L.P.**                                                                                               **Atlanta, GA**
     Associate, 1999 - 2001.
     Partner, 2002 -

**Justice Harry T. Lemmon, Louisiana Supreme Court**                                       **New Orleans, LA**
     Judicial Clerk, 1994-1995.

**Democratic Senatorial Campaign Committee**                                                  **Washington, DC**
     Paid Intern, 1989.

---

### ACADEMIC POSITIONS

**Tulane University Law School**                                                                             **New Orleans, LA**
     Adjunct, Advanced Civil Procedure: Complex Litigation, 2009-2016.
     Adjunct Associate Professor, 2017-2019.
     Adjunct Professor of Law, 2020 -

**Loyola University School of Law**                                                                       **New Orleans, LA**
     Adjunct Professor, Advanced Torts Seminar on Class Actions, 2005 -

---

### PROFESSIONAL APPOINTMENTS

**Louisiana Attorney Disciplinary Board**
     Hearing Committee Member, 4th and 5th Circuits, 2008-2010.
     Lawyer Chairman, Hearing Committee 56, 2010 -2013.

**Southeast Louisiana Legal Services**, Board of Directors, 2009-2011

**Louisiana State Law Institute**, Code of Civil Procedure Committee, Sub-Committee on Multi-District Litigation, 2009.

**Louisiana Attorney Fee Review Board**, 2014-2015.

**Louisiana Supreme Court Committee** on Rules of Professional Conduct for Class Actions, Mass Torts and Complex Litigation, 2015 -

**LSBA Rules of Professional Conduct Committee**, 2016 -

**LSBA Receivership Panel**, 2019 -

## ADMISSIONS TO PRACTICE

**State of Louisiana**, Supreme Court and all inferior courts, 1994.

**United States District Courts**, Eastern, Western, and Middle Districts of Louisiana, 1995.

**U.S. Fifth Circuit Court of Appeals**, 1995.

**U.S. Ninth Circuit Court of Appeals**, 2004.

**U.S. Second Circuit Court of Appeals**, 2009.

**U.S. Eleventh Circuit Court of Appeals**, 2020.

**U.S. Supreme Court**, 2007.

---

## BAR AND TRIAL ASSOCIATIONS

**International Academy of Trial Lawyers.**
> Fellow, 2015 -

**American Bar Association, 1994  -**
> Fellow, American Bar Foundation.
> Member, Labor and Employment Section, 2004-2017.
> Member, Tort Trial and Insurance Practice Section, 2014 -
> Member, Litigation Section, 2015 -

**American Association for Justice, (formerly ATLA), 1995 -**
> Executive Committee, 2011-2012.
> Board of Governors, 2014 -
> *Harry Philo Award,* 2018.
> State Delegate, Louisiana, 2007-2013.
>> Chair, AAJ State Delegates, 2011-2012.
> National College of Advocacy (NCA) Board of Trustees, 2011-2017, 2019 -
> AAJ Endowment Board, 2010 -
> Wiedemann-Wysocki Award, 2001, 2011.
> Heavy Lifting Award, 2012.
> Above and Beyond Award, 2019.
> Legal Affairs Committee, 2016 -
> *Amicus Curiae* Committee, 2008 -
>> Chair, 2019 -
> "Fellow" - National College of Advocacy.
> Co-Chair, Gulf Oil Spill Litigation Group, 2010 -
> Co-Chair, Chinese Drywall Litigation Group, 2009 -2011.
> Co-Chair, Dialysis Products Litigation Group, 2012.
> ATLA Press Advisory Board, 1999-2002, 2007-2010.
> Keyperson Committee, 1996 -
> AAJ PAC Eagle / M-Club.
> Leaders' Forum Member.
> Constitutional Litigation Committee, 1997 -
> Preemption Task Force, 2008 -
> Rule 23 Working Group, 2014 -
> 30(b)(6) Working Group, 2017 -
> MDL Working Group, 2018 -
> Member, Commercial Law Section, 1996 -
> Member, Insurance Law Section, 1996 -
> Member, Product Liability Section, 2014 -
> Member, Jury Bias Litigation Group, 2015 -
> Member, Class Action Litigation Group, 2009 -
> Member, Tobacco Litigation Group, 1996 -
> Member, Health Care Finance Litigation Group, 1998 -
> Member, Electronic Discovery Litigation Group, 2004 -

**Louisiana State Bar Association, 1994 -**
> Fellow, Louisiana Bar Foundation.
> Rules of Professional Conduct Committee, 2016 -
> Receivership Panel, 2019 -
> Cuba Task Force, 2016-2017.

## BAR AND TRIAL ASSOCIATIONS (cont.)

**Louisiana Association for Justice, (formerly LTLA), 1995 -**
President, 2014-2015.
*Stalwart Award,* 2017.
Executive Committee, 2011-2017.
*Amicus Curiae* Committee, 1999 -
       Chair, 2017 -
Chair, Maritime Section, 2012-2013.
Chair, Law Office Technology Section, 2006-2007.
Board of Governors, 2004-2017.
Council of Directors, 2006-2017.
AAJ State Delegate, 2007-2013.
President's Advisory Board, 1996-1997, 1999-2000.
Constitutional Litigation Committee, 1996 -
Key Contacts Committee, 1997 -
Speakers Bureau, 1999 -

**Civil Justice Foundation.**
President, 2003-2004.
Board of Trustees, 1999-2012.
*President's Award, 2001.*

**Public Justice, (formerly TLPJ).**
Executive Committee, 2015-2016, 2017-2018.
Board of Trustees, 2010 -
Membership Committee Co-Chair, 2008-2009.
Louisiana State Network Coordinator, 2000-2012.

**Roscoe Pound Foundation (Pound Civil Justice Institute).**
President, 2020 -
Board of Trustees, 2015 -

**Litigation Counsel of America.**
Senior Fellow, 2016 -
Fellow, 2007-2016.

**Federal Bar Association, New Orleans Chapter.**
Board of Trustees, 2018 -

**Bar Association of the Fifth Federal Circuit.**

**New Orleans Bar Association.**
Board of Trustees, 2018 -
Treasurer, 2020 -
Inn of Court, 2019 -

**Mississippi Trial Lawyers Association.**

**Attorney Information Exchange Group** (AIEG).

**National Association of Legal Fee Analysis** (NALFA).
Nation's Top Attorney Fee Experts: Assessing Fees in Class Actions, 2018.

**Injury Board.**

---

## PUBLICATIONS

America and the Law: Challenges for the 21st Century, Austin & Winfield, 1998, (revised edition, Gravier House Press, 1999).

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" Loyola Law Review, Vol. 64, p.1 (Spring 2018).

"Layers of Lawyers: Parsing the Complexities of Claimant Representation in Mass Tort MDLs," co-authored with Lynn A. Baker, Lewis & Clark Law Review, Vol.24, Issue No.2, p.469 (Spring 2020).

"HMO Litigation" Tort Litigation: Preparation and Tactics - 2000 and Beyond (West 2003).

"Spoliation of Evidence" Civil Trial Practice: Winning Techniques of Successful Trial Attorneys (Lawyers & Judges Publishing, 2000), revised and reprinted in, Aircraft Accident Reconstruction and Litigation (Lawyers & Judges Publishing, 2003).

**PUBLICATIONS** (cont.)

"Percentage Fee Awards in Common Fund Cases" <u>Tulane Law Review</u> Vol. 74, Nos. 5-6, p.2033 (June 2000).

"Back to Basics – Briefing and Arguing Motions" <u>TRIAL Magazine</u> (Oct. 2019) p.18, and, reprinted in revised and edited form, as: "Tips for Briefing and Arguing Motions" <u>Louisiana Advocates</u> (Nov. 2019) p.9.

Contributing Author, "Lead Counsel Duties" <u>Standards and Best Practices for Large and Mass Tort MDLs</u> (Bolch Judicial Institute, Duke Law School) (September 2018).

Editorial Board, <u>Guidelines and Best Practices Implementing 2018 Amendments to Rule 23</u> (Duke Law School Center for Judicial Studies) (August 2018).

Contributing Author, "Procedures and Standards for Objections and Settlement of Objections Under Rule 23(e)(5)" <u>Guidelines and Best Practices Implementing 2018 Amendments to Rule 23</u> (Duke Law School Center for Judicial Studies) (August 2018).

"Evidence Preservation and Spoliation" <u>TRIAL Magazine</u>, September 2005, p.50.

"Federal Preemption: *Geier* and Its Implications" <u>Louisiana Advocates</u> Vol.XVI, No.1, p.8 (Jan. 2001).

"The Use and Abuse of Privilege in Discovery" <u>Australian Products Liability Reporter</u>, Vol. 10, No.5 (June 1999).

"Understanding Spoliation of Evidence" <u>TRIAL Magazine</u> March 2001, p.45.

Review of *In Defense of Tort Law,* <u>TRIAL Magazine</u> November 2001, p.86.

"Proposed Changes to Rule 23: Consulting with Practicing Attorneys" <u>Sidebar</u> Vol. 3, No. 2, p.7 (Spring 2002), reprinted in, <u>The Federal Lawyer</u> Vol. 49, No.8, p.14 (Sept. 2002).

"Fighting Mandatory Arbitration" <u>Louisiana Advocates</u> Vol.XVII, No.5, p.13 (May 2002).

"*Roark v. Humana:* What This New Decision Means for Your Medical Malpractice Cases Involving HMOs" <u>Louisiana Advocates</u> Vol. XVIII, No. 1, p.8 (Jan. 2003).

"TLPJ Urges Trial Lawyers to Fight Court Secrecy" <u>Louisiana Advocates</u> Vol.XVII, No.6, p.13 (June 2002).

"Federal Court Upholds Rights of Plaintiffs Who Opted Out of Nationwide Class Action Settlement to Pursue Individual Claims" <u>Louisiana Advocates</u> Vol. XVIII, No. 1, p.14 (Jan. 2003).

"U.S. Supreme Court Rules Asbestosis Victims Can Recover Damages Based on Fear of Cancer" <u>Louisiana Advocates</u> Vol.XVII, No.6, p.7 (June 2003).

"Being a Savvy Blogger" <u>Louisiana Advocates</u> (July 2007), p.12.

"How to Maximize the Advantages of E-Mail and Eliminate the Risks" <u>Louisiana Advocates</u> (August 2007), p.6.

"Standing on the Shoulders of Those Who Came Before Us" <u>Louisiana Advocates</u> Vol. XXIX, No.10 (Oct.  2014).

"To Protect and Preserve an Independent Judiciary" <u>Louisiana Advocates</u> Vol. XXIX, No.12 (Dec. 2014).

"Hot Coffee" <u>Louisiana Advocates</u> Vol. XXX, No.2 (Feb. 2015).

"Personal Remarks" <u>Louisiana Advocates</u> Vol. XXX, No.5 (May 2015).

"How I Spent My Summer Vacations (and Still Remember the Lessons Learned)" <u>Louisiana Advocates</u> Vol. XXX, No.6 (June 2015).

"The Long Arc of Justice" <u>Louisiana Advocates</u> Vol. XXX, No.8 (Aug. 2015).

---

**SPEECHES AND PAPERS**

"Removal by Preemption Under the *Avco* Exception...." Litigation at Sunrise, 1996 ATLA Annual Convention, Boston, Massachusetts, July 23, 1996.

"Spoliation of Evidence and Related Topics" Yours to Choose Seminar, LTLA, New Orleans, Louisiana, December 28, 1996.

"The Use and Abuse of Privilege in Discovery" Litigation at Sunrise, 1998 ATLA Annual Convention, Washington D.C., July 1998, and Yours to Choose Seminar, LTLA, Baton Rouge, Louisiana, December 30, 1998.

"Force-Placed Insurance: Banks' Failure to Disclose" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 18, 1998.

"HMO Litigation" Winter Ski Seminar, LTLA, Aspen, Colorado, March 6, 2000, and Last Chance Seminar, Winning With the Masters, LTLA, New Orleans, Louisiana, Dec. 14, 2000.

"Class Action Litigation Against HMOs" 2001 ATLA Annual Convention, Montreal, Canada, July 17, 2001.

"Managing Complex Litigation for the Louisiana Paralegal" Institute for Paralegal Education, New Orleans, Louisiana, July 9, 1999.

"Subrogation and Loss Recovery in Louisiana" National Business Institute, New Orleans, Louisiana, March 24, 2000.

"Can We 'Import' Better Law in Personal Injury Cases?" LTLA Spring CLE Retreat, Orlando, Florida, March 31, 2002.

**SPEECHES AND PAPERS** (cont.)

"Case Evaluation and Other Pre-Filing Considerations" Tobacco Litigation Group, ATLA Annual Convention, Atlanta, Georgia,
July 21, 2002.

"Proving Fraud in Tobacco Cases" ATLA Annual Convention, Atlanta, Georgia, July 21, 2002.

"Preparing and Taking Depositions for Use at Trial" STLA, New Orleans, Louisiana, February 28, 2003, and
LTLA *A La Carte* Seminar, New Orleans, Louisiana, December 30, 2004.

"Trial and Post-Trial Motions: The Plaintiff's Perspective" National Business Institute, New Orleans, Louisiana, June 20, 2003.

"A Practical Framework for Class Action Litigation" ABA National Institute on Class Actions, San Francisco, California, Oct. 24, 2003,
and Washington, D.C., Nov. 7, 2003.

"Identifying Spoliation of Evidence Issues and Related Issues Surrounding the Preservation and Discovery of Electronic Data"
National Business Institute, New Orleans, LA, March 30, 2004, and Lafayette, LA, December 2, 2004.

"Civil Discovery Sanctions" Dealing with Destruction: Preservation and Spoliation of Electronic Data and Other Evidence in Louisiana,
National Business Institute, New Orleans, LA, March 30, 2004, and Lafayette, LA, December 2, 2004.

"Plaintiff's Personal Injury from Start to Finish" National Business Institute, New Orleans, Louisiana, November 30, 2004,
and New Orleans, Louisiana, June 30, 2006.

"Litigating the Class Action Suit in Louisiana" National Business Institute, New Orleans, Louisiana, January 7, 2005.

"Proposed Changes to the Federal Rules" Electronic Discovery Teleseminar, May 10, 2005, and,
ATLA Annual Convention, Toronto, Canada, July 25, 2005.

"Recent Decisions Affecting E-Discovery" E-Discovery: Get Ready to Apply the New FRCP Changes,
National Business Institute, New Orleans, Louisiana, December 20, 2006.

"E-Discovery Procedures and Compliance with the New Rules" E-Discovery: Get Ready to Apply the New FRCP Changes,
National Business Institute, New Orleans, Louisiana, December 20, 2006.

"Conducting Forensic Analysis" E-Discovery: Get Ready to Apply the New FRCP Changes,
National Business Institute, New Orleans, Louisiana, December 20, 2006.

"E-Discovery Under the New Rules" LTLA *A La Carte* Seminar, New Orleans, Louisiana, December 29, 2006.

"The E-Discovery Amendments to the Federal Rules: Panel Discussion - E-Discovery Practical Considerations"
Federal Bar Association, New Orleans Chapter, February 2, 2007.

"The E-Discovery Amendments to the Federal Rules: Panel Discussion - E-Discovery Ethics"
Federal Bar Association, New Orleans Chapter, February 2, 2007.

"Class Action Reforms Post CAFA: Leverage the Reforms and Emerging Trends" Strafford Publications,
CLE Teleconference, March 20, 2007.

"Electronic Evidence Symposium: New Rules, E-Discovery, Spoliation & Sanctions" New Orleans Bar Association,
2007 Bench Bar Conference, Point Clear, Alabama, March 30, 2007.

"Personal Injury Cases: Calculating and Proving Damages" National Business Institute, New Orleans, LA, October 16, 2007.

"Vioxx Litigation: History, Overview and Navigating Through the Settlement Process" AAJ Weekend With the Stars,
New York, NY, December 8, 2007.

"E-Discovery: Applying the New FRCP Changes" National Business Institute, New Orleans, LA, Dec. 13, 2007.

"Rethinking Depositions: Discovery vs. Trial" LAJ CLE A La Carte, Baton Rouge, LA, December 27, 2007.

"E-Discovery: A Changing Landscape - Practical & Legal Perspectives" SeminarWeb, January 16, 2008.

"Approaches to Defense Expert Depositions - Technique & Style" AAJ Mid-Winter Convention, Puerto Rico, January 26, 2008.

"E-Discovery Workshop" National Disability Rights Network Annual Conference, New Orleans, LA, June 4, 2008.

"San Diego Fire Cases" Litigation at Sunrise, AAJ Annual Convention, Philadelphia, PA, July 16, 2008.

"E-Discovery: The Paralegal's Role and Ethical Considerations" AAJ Annual Convention, Philadelphia, PA, July 16, 2008.

"Preparation of Expert Testimony" National Business Institute, New Orleans, LA, October 30, 2008.

"Avoiding Common Ethical Pitfalls" Building Your Civil Trial Skills, National Business Institute, New Orleans, LA, December 18, 2008.

"Documentary Evidence" Personal Injury Trials: Getting the Most out of Your Evidence, National Business Institute,
New Orleans, LA, April 29, 2009.

"Electronic Evidence" Personal Injury Trials: Getting the Most out of Your Evidence, National Business Institute, New Orleans, LA,
April 29, 2009.

## SPEECHES AND PAPERS (cont.)

"Ethics and Professionalism" AAJ Jazz Fest Seminar, New Orleans, LA, May 3, 2009.

"12 Lessons in Litigation" Web 2.0 and The Trial Bar, InjuryBoard.com, St. Petersburg, FL, June 5, 2009.

Moderator, Chinese Drywall Litigation Seminar, AAJ, New Orleans, Louisiana, August 11, 2009.

"Re-Thinking Experts" LAJ Post-Legislative Retreat, Carmel, CA, June 30, 2009, LAJ Last Chance Seminar, New Orleans, LA,
     December 10, 2009, and,  LAJ CLE a la Carte, Baton Rouge, LA, December 30, 2009.

"Re-Thinking Experts" SeminarWeb! Live, December 17, 2009.

"Avoiding Common Ethical Pitfalls" Building Your Civil Trial Skills, National Business Institute, New Orleans, LA, December 18, 2009.

"Evaluating Class Actions: How Do You Know When You Have One?" LAJ CLE a la Carte, New Orleans, LA, December 30, 2009.

"Predatory Lending and Sub-Prime Class Actions" AAJ Mid-Winter Convention, Maui, Hawaii, January 30, 2010.

"Coast Guard / MMS Hearings" Gulf Coast Oil Spill Symposium, LSBA, New Orleans, LA, May 25, 2010.

Moderator, Gulf Coast Oil Spill Litigation Teleseminar, AAJ, June 2, 2010.

"Chinese Drywall Litigation" LSBA Summer School for Lawyers, Sandestin, Florida, June 7, 2010.

"12 Lessons in Litigation" LAJ Post-Legislative Retreat, Carmel, CA, June 29, 2010, (invited) (submitted paper) (could not attend).

Moderator, Chinese Drywall Litigation Program, AAJ, Vancouver, British Columbia, July 14, 2010.

Status of BP Claims Facility and Escrow Fund, Gulf Coast Oil Spill Litigation Group Program. Vancouver, British Columbia, July 16. 2010.

Update on MDL Issues and Litigation in the Eastern District of Louisiana, Gulf Coast Oil Spill, Vancouver, British Columbia, July 16, 2010.

"Oil Pollution Act of 1990: An Overview" Gulf Coast Oil Spill Litigation Group Program. Vancouver, British Columbia, July 16. 2010.

Oil Spill Litigation Panel Discussion: Liability, Punitive Damages, Environmental Issues, etc., HB Litigation Conference,
     Miami, Florida, November 4, 2010.

"Class Actions and Mass Torts" Avoyelles Parish Bar Association, Marksville, Louisiana, November 5, 2010.

"Ethical Issues in Litigation" SeminarWeb! Live, November 8, 2010.

"Ethics and Professionalism" Last Chance Seminar, Louisiana Association for Justice, New Orleans, Louisiana,
     December 9, 2010.

"Ethics and Professionalism" CLE a la Carte, Louisiana Association for Justice, New Orleans and Baton Rouge, Louisiana,
     December 30, 2010.

"Ethics and Professionalism in Litigation" AAJ Annual Convention, San Francisco, California, July 2013.

"The BP Oil / *Deepwater Horizon* Oil Spill Litigation:  An Overview" Louisiana State Bar Association 20th Annual Admiralty Symposium,
     New Orleans, Louisiana - September 20, 2013.

Faculty, Essentials of Civil Litigation AAJ Trial Advocacy College, Tulane Law School, New Orleans, Louisiana, October 7-10, 2013.

"Multi-District Litigation" National Association of Women Judges, New Orleans, Louisiana, October 11, 2013.

"Ethical Questions Raised by the BP Oil Spill Litigation" 22nd Annual Admiralty and Maritime Law Conference, South Texas College
     of Law, Houston, Texas, October 18, 2013.

"BP / Deepwater Horizon Oil Spill Litigation" Louisiana Judicial Conference, Evidence and Procedure Seminar,
     New Orleans, Louisiana, February 20, 2014.

"Ethical and Professional Issues in MDLs" LSBA Annual MDL Conference, New Orleans, Louisiana, March 14, 2014.

"'Legalnomics': Lessons from the Field of Behavioral Economics About Perception and Decision-Making for Trial Lawyers"
     LAJ a la Carte, New Orleans and Baton Rouge, Louisiana, December 29-30, 2014, and
     Mississippi Association for Justice Annual Convention, June 12, 2015.

"When the Levee Breaks – Resolving Complex Claims: Lesson of the Deepwater Horizon, Katrina, and More" ABA Section of
     Litigation, Annual Conference, New Orleans, Louisiana, April 15, 2015.

"E-Discovery: It's Not Just for Big Civil Suits in Federal Court Anymore" NOBA Bench-Bar Conference, Point Clear, April 17, 2015.

"Ethical and Professional Questions in Mass Tort Cases" LSBA Summer School for Lawyers, Sandestin, Florida, June 10, 2015.

"Telling Our Story: The Trial Lawyer's Journey" LAJ Post-Legislative Retreat, Carmel, California, June 22, 2015, and
     AAJ Weekend with the Stars, New York, New York, December 12, 2015.

Faculty Moderator, Pound Civil Justice Institute 2015 Forum for State Appellate Court Judges, "Contracting Transparency: Public
     Courts, Privatizing Processes, and Democratic Practices" and "Judicial Transparency in the 21st Century",  Montreal, Canada,
     July 11, 2015.

**SPEECHES AND PAPERS**  (cont.)

"Sidestepping Some of the *Daubert* Landmines" AAJ Annual Convention, Montreal, Canada, July 14, 2015.

"Unsettling Issues with Mass Tort Settlements" ABA Annual Convention, Chicago, Illinois, July 31, 2015.

Stephen J. Herman and James Bilsborrow, "Much Ado About Nothing: The So-Called 'No-Injury Class'" August 18, 2015.

"Class Actions, Mass Torts and Potential Changes to Rule 23" NOBA Bench-Bar Conference, Point Clear, March 10, 2016.

"Attacks on the Judiciary" LSBA Summer School for Lawyers and Judges, Sandestin, Florida, June 6, 2016.

"Procedure & Tactics in Complex Appellate Proceedings: A Case Study" Texas State Bar, Advanced Civil Appellate Practice, Austin, Texas, September 8, 2016.

"Ethics – Important Recent Developments that Impact Litigators on Both Sides of the 'V'" LSBA 23rd Annual Admiralty Symposium, New Orleans, Louisiana , September 16, 2013.

Duke Law Center for Judicial Studies MDL Conference, Panel 1: Extent of Co-Lead Counsel's and PSC's Fiduciary Responsibility to All Plaintiffs, Washington, DC, October 27, 2016.

"Federal State Coordination: Peacefully Co-existing in Parallel Universes" LSBA 16th Annual Class Action / Complex Litigation Symposium, New Orleans, Louisiana, November 11, 2016.

Moderator, "Pros/Cons of State MDLs: Complex Litigation Rules of Professional Responsibility" LSBA 16th Annual Class Action / Complex Litigation Symposium, New Orleans, Louisiana, November 11, 2016.

"Managing Complex Litigation" NOBA Masters of the Courtroom, New Orleans, Louisiana, December 15, 2016.

"Fool Me Once, Shame on You (and Other Thoughts on Professionalism)" NOBA Procrastinators' Program, New Orleans, Louisiana, December 28, 2016.

"A Conversation on Intergenerational Professionalism" NOBA Bench-Bar Conference, Point Clear, Alabama, April 2, 2017.

"Litigating the Disaster Case" ABA Business Section, New Orleans, Louisiana, April 6, 2017.

"Defense Perspective" AAJ Future of Class Actions Conference, Nashville, Tennessee, May 11, 2017.

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" AAJ Mass Torts Best Practices Seminar, Boston, MA, July 21, 2017.

"Handling Complex Litigation" EDLA First Biennial Bench and Bar Conference, September 28, 2017.

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" LSBA 17th Annual Class Action/Complex Litigation Symposium, New Orleans, LA, November 10, 2017.

Faculty, AAJ Advanced Deposition College, New Orleans, LA, January 2018.

"Social Media as Evidence" LAJ / La. Judicial College Evidence & Procedure Seminar, New Orleans, Louisiana, March 16, 2018.

Duke Law Center for Judicial Studies MDL Conference, Panel 3: Standards in Determining Optimum Number of PSC Members and Amounts of Common Benefit Fund, Atlanta, Georgia, April 26, 2018.

"Emerging Issues in Civil Litigation" George Mason University Law & Economics Center 12th Annual Judicial Symposium on Civil Justice Issues, Arlington, Virginia, May 21, 2018.

Panel: Update on La. Supreme Court Committee on Ethical Rules in Complex Litigation and Multi-District Litigation, LSBA Summer School for Lawyers, Sandestin, Florida, June 5, 2018.

"Ethics of Class Action Settlements" AAJ Annual Convention, Denver, Colorado, July 8, 2018.

"Punitive Damages After *Batterton, Tabingo,* and *McBride*: What's Next?" LAJ High Stakes on High Seas, New Orleans, Louisiana, August 17, 2018, and LSBA 25th Annual Admiralty Symposium, New Orleans, Louisiana, September 14, 2018.

Program Coordinator / Moderator, LSBA Personal Injury Seminar, September 7, 2018.

Faculty, AAJ Mass Tort Deposition College, New Orleans, Louisiana, October 24-26, 2018.

"The 'Take No Prisoners' Deposition" AAJ Mass Tort Deposition College, New Orleans, Louisiana, October 24, 2018.

"So, You Settled the Case: Now What?" AAJ Class Action Seminar, New York, NY, December 6, 2018.

"Ethics" NOBA Procrastinators' Program, New Orleans, LA, December 19, 2018.

"Four Hot Spots to Avoid Legal Malpractice" AAJ Mid-Winter Convention, Miami, FL, February 5, 2019.

"Current Landscape of Punitive Damages under Maritime Law" ABA Admiralty and Maritime Law Conference, New Orleans, LA, March 23, 2019.

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 3, 2019, and, New Orleans, LA, December 12, 2019.

## SPEECHES AND PAPERS  (cont.)

"Why Knowing Admiralty Law is Important to Your Practice" Melvin Belli Seminar, San Diego, CA, July 26, 2019.

"Ethical Issues in Class Action Litigation" AAJ Annual Convention, San Diego, CA, July 28, 2019.

"Ethical Issues Facing Litigators" LSBA, Lafayette, LA, Sept. 5, 2019, and New Orleans, LA, Sept. 20, 2019.

"Layers of Lawyers in MDLs: Parsing the Complexities of Claimant Representation in Mass Tort MDLs" Lewis & Clark Symposium on Class
     Actions, Mass Torts, and MDLs: The Next 50 Years" Portland, Oregon, Nov. 1, 2019.

"Fee Disputes: Intersection of Ethical Rules and Contract Law" Avoyelles Parish Bar CLE, Marksville, LA, November 8, 2019.

"Thoughts on Professionalism" New Orleans Bar Association, Nov. 26, 2019.

"Ethics: Survey of Recent Cases and Advisory Opinions" New Orleans Bar Association, November 26, 2019, and,
     Louisiana State Bar Association, New Orleans, LA, Dec. 11, 2019.

Program Coordinator / Moderator, LSBA Personal Injury Seminar, December 4, 2019.

"Next Big Thing(s) – What Are the New Class Actions to Watch For?" AAJ Class Action Seminar, New York, NY, December 5, 2019.

"E-Discovery from the Plaintiff's View" New Orleans Bar Association, December 12, 2019.

"A Trial Lawyer's Journey" Winning With the Masters, LAJ, New Orleans, LA, December 12, 2019, and,
     Western Trial Lawyers Association, Jackson Hole, WY, March 6, 2020 (invited) *

"Legal Ethics in Maritime Cases" Admiralty Law Institute, Tulane University Law School, New Orleans, LA, March 13, 2020.

"Financing Litigation: Views from the Bench and Bar" NOBA Bench-Bar Conference, Point Clear, AL, March 22, 2020 (invited) *

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 8, 2020 (invited) *

"Masters of Disaster: What 9/11, Hurricane Katrina, and Northern California Fires Taught Us That Can Help You with Your Case During
     and After the COVID Crisis" San Francisco Trial Lawyers Association, SeminarWeb, June 22, 2020.

"Ethical Issues Facing Litigators" Louisiana State Bar Association, New Orleans, LA, June 19, 2020 (invited) *

"Difficult Depositions: Ethical Issues and Strategies" AAJ Annual Convention, Washington, DC, July 14, 2020.

"Whether to Pursue an MDL, and, if so, Issues Affecting What Court to Recommend to the JPML" Baylor Law School Complex Litigation
     Program, August 4, 2020.

"Plaintiff Perspective on Common Benefit Orders" Baylor Law School Complex Litigation Program, August 13, 2020.

"How to Get the Most out of Lay Witnesses" FBA Federal Practice Series, New Orleans, LA, August 20, 2020.

"Implications for Civil Litigation and the Courts in a Post-Pandemic World" COVID and the Courts Symposium, sponsored by the
     Civil Justice Research Initiative at Berkeley Law School and RAND, September 24, 2020.

"Case Management" Mass Tort MDL Certification Program, Bolch Judicial Institute, Duke University, Nov. 9, 2020.

"Ethics: Update of Recent Decisions" New Orleans Bar Association, Nov. 17, 2020.

"Thoughts on Professionalism" New Orleans Bar Association, Nov. 17, 2020.

"Evaluation, Preparation, Research and Background Checks on Plaintiff and Defense Experts"  New Lawyers Bootcamp,
     AAJ, April 12, 2021  (invited)

"Difficult Depositions: Ethical Issues and Strategies" Arkansas Trial Lawyers Association, Little Rock, AR, April 31, 2021  (invited)

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 6, 2021 (invited)

_____

* Postponed or Cancelled Due to the Covid-19 Coronavirus Crises.

---

## REPORTED CASES

Alliance for Affordable Energy vs. New Orleans City Council,, No. 96-0700 (La. 7/2/96), 677 So.2d 424.

O'Reilly and Griffith vs. Brodie, et al and PMIC, 975 S.W.2d 57 (Tex. App. 4th Dist. - San Antonio 1998),
     review denied, (Aug. 25, 1998); and, 42 ATLA Law Reporter 264 (Sept. 1999).

Marchesani v. Pellerin-Milnor, 248 F.3d 423 (5th Cir. 2001), and, 269 F.3d 481 (5th Cir. 2001); and,
     ATLA Law Reporter, Vol. 46, p.240 (Sept. 2003), and Louisiana Advocates Vol.XVIII, No.4 (April 2003) p.14.

Scott v. American Tobacco, No. 01-2498 (La. 9/25/01), 795 So.2d 1176, and, No. 02-2449 (La. 11/15/02), 830 So.2d 294,
     and, No. 2004-2095 (La. App. 4th Cir. 2/7/07), 949 So.2d 1266, writ denied, 973 So.2d 740 (La. 2008),
     cert. denied, 128 S.Ct. 2908 (2008), and, later proceeding, No. 2009-0461 (La. App. 4th Cir. 4/23/2010), 36 So.3d 1046,
     writ denied, 44 So.3d 686 (La. 2010), cert. denied, 131 S.Ct. 3057 (2011).

**REPORTED CASES** (cont.)

Schultz v. Texaco Inc., 127 F.Supp.2d 443 (S.D.N.Y. 2001), *and,* 308 F.Supp.2d 289 (S.D.N.Y. 2004),
    *and,* 2009 WL 455163 (S.D.N.Y. Feb. 24, 2009).

Oubre / Orrill v. Louisiana Citizens Fair Plan, No. 09-0566 (La. App. 4th Cir. 12/09/09), 26 So.3d 994, *and,* No. 2009-0888 (La. App. 4th
    Cir. 4/21/2010), 38 So.3d 457, *writ denied,* 45 So.3d 1035 (La. 2010);  *and,* No. 2011-0097 (La. 12/16/2011), 79 So.3d 987.

In re Oil Spill by the Oil Rig Deepwater Horizon, 808 F.Supp.2d 943 (E.D.La. 2011) ("B1 Order");  *and,* 910 F.Supp.2d 891
    (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *cert. denied,* 135 S.Ct. 754 (2014);
    744 F.3d 370 (5th Cir. 2014) ("*Deepwater Horizon III*"); 785 F.3d 986 (5th Cir. 2015) ("*Rule 79 Decision*"); 785 F.3d 1003
    (5th Cir. 2015) ("*Non-Profits Decision*"); 793 F.3d 479 (5th Cir. 2015) ("*Data Access Appeal*"); 858 F.3d 298 (5th Cir. 2017) ("*495
    Appeal*");  *and,* 295 F.R.D. 112 (E.D.La. 2013) (approval of Medical Benefits Settlement);  *and,* 21 F.Supp.3d 657 (E.D.La. 2014)
    ("Phase One Trial Findings and Conclusions").

In re Harrier Trust, No. 2018-1467 (La. 2/18/2019), 263 So.3d 884.

Duhon v. Activelaf d/b/a SkyZone, No.2016-1818 (La. 10/19/2016), 218 So.3d 1001 (and 2016 WL 6123820) (*amicus curiae*).

Maggio v. Parker, No.2017-1112 (La. 6/27/2018), 250 So.3d 874 (*amicus curiae*).

Bulot v. Intracoastal Tubular, No. 00-2161 (La. 2/9/01), 778 So.2d 583 (*amicus curiae*).

Dumas v. Angus Chemical, No. 97-2356 (La. 11/14/97), 702 So.2d 1386.

Sommers v. State Farm, No. 99-2586 (La. App. 4th Cir. 5/3/00), 764 So.2d 87.

Andrews v. TransUnion Corp., No. 2004-2158 (La. App. 4th Cir. 8/17/2005), 917 So.2d 463,
    *writ denied,* 926 So.2d 495 (La. 4/17/06), and MDL No. 1350;  *Louisiana Advocates,* Vol.XXIV, No.5 (May 2009), p.14.

Bratcher v. National Standard Life, 365 F.3d 408 (5th Cir. 2004), *cert. denied,* 125 S.Ct. 277 (2004).

Bauer v. Dean Morris, 2011 WL 3924963 (E.D.La. Sept. 7, 2011).

Schafer v. State Farm, 507 F.Supp.2d 587 (E.D.La. 2007), *and,* 2008 WL 131225 (E.D.La. Jan 10, 2008).

Moeckel v. Caremark Inc., 385 F.Supp.2d 668 (M.D. Tenn. 2005).

In re Managed Care Litigation, 150 F.Supp.2d 1330 (S.D.Fla. 2001).

Lakeland Anesthesia v. Aetna US Healthcare, 2000 U.S. Dist LEXIS 8540 (E.D.La. June 15, 2000),
    *Andrews Managed Care Litigation Reporter,* Vol.I, Issue 13 (July 17, 2000) p.12.

Mays v. National Bank of Commerce, 1998 U.S. Dist. LEXIS 20698 (N.Dist. Miss. Nov. 20, 1998),
    *aff'd* No. 99-60167 (5th Cir. April 11, 2000).

Jones v. Hyatt, No. 94-2194 (La. App. 4th Cir. 9/25/96), 681 So.2d 381 (appeal counsel).

Delcambre v. Blood Systems, Inc., No. 2004-0561 (La. 1/19/05), 893 So.2d 23 (*amicus curiae*).

---

**VERDICTS, DECISIONS, REPORTED SETTLEMENTS AND AWARDS**

Scott v. American Tobacco, et al, Civil District Court for the Parish of Orleans, State of Louisiana, No. 96-8461, July 28, 2003,
    (Jury verdict in Phase I trial for class of Louisiana smokers finding tobacco industry liable for fraud, conspiracy, and
    intentional torts, and responsible for the establishment of a court-supervised medical monitoring and/or cessation program),
    and, May 21, 2004 (Jury verdict in Phase II in the amount of $591 Million for 10-year comprehensive court-supervised
    smoking cessation program), *aff'd, in part,* No. 2004-2095 (La. App. 4th Cir. 2/7/07) (upholding award of $279 Million fund
    to Class for 10-year cessation program), *on subsequent appeal,* No. 2009-0461 (La. App. 4th Cir. 4/23/2010), 36 So.3d 1046
    (ordering Defendants to deposit $241 Million, plus interest, into the Registry of the Court), *writ denied,* 44 So.3d 686 (La. 2010),
    *cert. denied,* 131 S.Ct. 3057 (2011) (Member of Trial Team, Philip Morris Team, and co-lead of Briefing Team).

In re Oil Spill by the Oil Rig *Deepwater Horizon,* 21 F.Supp.3d 657 (E.D.La. 2014) (Phase One Trial Findings & Conclusions that
    BP was guilty of gross negligence and reckless and willful misconduct) (Co-Liaison Counsel for Plaintiffs and member of the
    Trial Team).

In re Oil Spill by the Oil Rig *Deepwater Horizon,* 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014),
    *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 734 (2014) (approving BP Economic & Property
    Damages Class Settlement), *and,* 295 F.R.D. 112 (E.D.La. 2013) (approving BP Medical Benefits Class Settlement)
    (Settlements in Excess of $12.9 Billion) (Co-Lead Class Counsel), *and,* No.10-2179, Rec. Doc. 22252 (E.D.La. Feb. 15, 2017),
    *aff'd,* 934 F.3d 434 (5th Cir. 2019) (approving Distribution Model for $1.25 Billion Halliburton/Transocean Class Settlements)
    (Co-Lead Class Counsel).

**VERDICTS, DECISIONS, REPORTED SETTLEMENTS AND AWARDS** (cont.)

Hernandez v. Knauf, No.09-6050, 2010 WL 1710434, *In re Chinese-Manufactured Drywall Products Liability Litigation,*
  MDL No. 2047 (E.D.La. April 27, 2010) (awarding over $164,000 in remediation and other damages, plus interest, costs,
  and reasonable attorneys' fees, in first bellwether trial, holding that all drywall, insulation, entire electrical system, HVAC
  system and copper plumbing must be removed) (Co-Lead Trial Counsel).

In re Chinese-Manufactured Drywall Products Liability Litigation, 424 F.Supp.3d 456 (E.D.La. 2020) (approving class settlement of
  $248 Million against Chinese Manufacturers) (Settlement Class Counsel).

Marchesani v. Pellerin-Milnor, 248 F.3d 423 (5th Cir. 2001), *and,* 269 F.3d 481 (5th Cir. 2001), and,
  *Louisiana Advocates* Vol.XVIII, No.4 (April 2003) p.14, and *ATLA Law Reporter,* Vol. 46, p.240 (Sept. 2003)
  ($3.375 million settlement).

Turner v. Angelo Iafrate, et al, No. 596-274 (La. 24th JDC), *Louisiana Advocates,* Vol.XXI, No.10, p.15 (Oct. 2006), and,
  *AAJ Law Reporter,* Vol.L, No.6 (Aug. 2007) ($4.5 million settlement).

Niven v. Boston Old Colony, et al, 24th JDC, State of Louisiana, No.373-299, December 28, 1998, (judgment of $529,027.02
  for plaintiff against La. DOTD  -  total damages $5,290,270.20), *rev'd,* No. 99-783 (La. App. 5th Cir. 1/25/2000).

Schultz v. Stoner, et al, 127 F.Supp.2d 443 (S.D.N.Y. 2001), *and,* 308 F.Supp.2d 289 (S.D.N.Y. 2004), *and,* 2009 WL 455163
  (S.D.N.Y. Feb. 24, 2009) (summary judgment granted in favor of mis-classified employees' right to benefits under the
  Texaco pension plans).

Oubre v. Louisiana Citizens Fair Plan, No. 2011-0097 (La. 12/16/2011), 79 So.3d 987 (affirming class judgment of $92.8 Million).

In re: Vioxx Prod. Liab. Lit., MDL No. 1657 (E.D.La.), *Louisiana Advocates,* Vol.XXIII, No.1 (Jan. 2008) ($4.85 Billion Settlement
  Fund) (Co-Chair of Sales & Marketing Committee, Insurance Committee, Member of Drafting Team for PNC).

Andrews v. TransUnion Corp., No. 2004-2158 (La. App. 4th Cir. 8/17/2005), 917 So.2d 463,
  *writ denied,* 926 So.2d 495 (La. 4/17/06), and MDL No. 1350, *Louisiana Advocates,* Vol.XXIV, No.5 (May 2009), p.14
  ($75 million settlement fund and significant additional in-kind relief).

DeGarmo v. Healthcare Recoveries, Inc., No. 5:94cv14 (N.D.W.Va. 2001), 45 *ATLA Law Reporter* 180 (June 2002),
  and *Louisiana Advocates,* Vol.XVI, No.9, p.10 (Sept. 2001) ($3 million settlement for class of policyholders for unlawful
  subrogation practices).

Galuzska v. Rosamond and GEICO, No.618-435 (La. 24th JDC), *Louisiana Advocates,* Vol.XXIII, No.6 (June 2008)
  ($925,000 settlement in auto case).

Marberry v. Sears, 15th JDC, State of Louisiana, No.96-3244, December 7, 1998, (judgment of $195,054.96 for plaintiff).

Kettles v. Hartford Life, 1998 U.S. Dist. LEXIS 12899 (E.D.La. Aug. 14, 1998) (summary judgment for plaintiff awarding
  over $80,000 in disability benefits).

---

### EXPERT TESTIMONY

*Mitchell v. Freese,* Civil Action No. 61C11:16-CV-00023, Circuit Court, Rankin County, Mississippi, (report August 24, 2017),
  (testimony, arbitration proceeding, November 15, 2017) (ethical and professional duties to clients and co-counsel in
  mass tort cases).

*U.S. ex. rel. Boogaerts v. Vascular Access Centers,* No. 17-2786, United States District Court for the Eastern District of Louisiana,
  (declaration submitted on November 2, 2018 in support of fee petition for prevailing relator in *qui tam* case).

*Holmes v. Pigg,* No. 2007-2803, Civil District Court, Parish of Orleans, State of Louisiana, (deposition September 20, 2011)
  (legal malpractice liability arising out of an ERISA case).

*Cressy v. Lewis,* No. 2017-2704, Civil District Court, Parish of Orleans, State of Louisiana, (report October 14, 2019)
  (alleged malpractice liability in product liability case).

*Hampton v. Hampton,* No. 775-881, 24th Judicial District Court, State of Louisiana, (preliminary report of questions and impressions
  re fee request of adversary party).

Bayou Corne Sinkhole Litigation: *LaBarre v. Occidental,* No.33796, 23rd Judicial District Court, State of Louisiana, (report July 7, 2020
  in support of AIG's Reconventional Demand on Texas Brine's claim for reimbursement of costs and attorneys' fees, and
  report August 10, 2020 relating to Texas Brine's Third-Party claims for costs and fees against Zurich and AIG).

*Cantu v. Gray Ins. Co.,* No.745-245, 24th Judicial District Court, State of Louisiana (report submitted Jan. 15, 2021 in fee dispute between
  former counsel and subsequent counsel for plaintiff on intervention) (deposition Jan. 22, 2021).

*PG&E Fire Victims Trust,* Bankruptcy Case No. 19-30088 (declaration submitted on February 15, 2021 in support of reimbursement of
  attorneys fees to Fire Victim Trust Claimants represented by Singleton Schreiber McKenzie & Scott, LLP)

### OTHER ACTIVITIES, APPEARANCES, APPOINTMENTS, RECOGNITION, AND AWARDS

A/V Rated, Martindale-Hubbell.

Finalist, Trial Lawyer of the Year Award, TLPJ, 2005.

Leadership in the Law Recipient, *New Orleans CityBusiness,* 2010, 2017, 2018.
    Hall of Fame, 2018.

Louisiana Appleseed, Board of Trustees, 2018 -

Top 500 Lawyers in America, *Lawdragon,* 2013, 2018, 2020.

Best Lawyers in America, 2012 -
    "Lawyer of the Year" in the area of Product Liability Litigation, in New Orleans, by Best Lawyers, 2016.
    Also recognized in areas of Appellate Practice, Mass Tort / Class Actions, and Personal Injury Litigation, as of 2020.

"Superlawyer" in the area of Class Actions and Mass Torts, 2007 -

Top 100 Trial Lawyers, National Trial Lawyers Association, 2008 -

Million Dollar Advocates Forum.

Appointed Plaintiffs' Co-Liaison Counsel / Co-Lead Class Counsel, *In re: Deepwater Horizon,*
    MDL No. 2179, Civil Action No. 2:10-md-02179, USDC for the Eastern District of Louisiana.

Appointed to the Plaintiffs' Steering Committee, *In re: Express Scripts Pharmacy Benefits Management Litigation,*
    MDL No. 1672, Civil Action No. 4:05-md-01672-SNL, USDC for the Eastern District of Missouri.

Appointed to the Plaintiffs' Executive Committee, *In re: Cox Set-Top Box Antitrust Litigation,*
    MDL No. 2048, Civil Action No. 5:09-ml-02048-C, USDC for the Western District of Oklahoma.

Appointed to the Plaintiffs' Executive Committee, *In re: Budeprion XL Marketing and Sales Litigation,*
    MDL No. 2107, Civil Action No. 09-md-2107, USDC for the Eastern District of Pennsylvania.

Appointed Settlement Class Counsel, *In re Chinese Drywall Litigation,* MDL No. 2047
    (re Class Settlement with Taishan Defendants, 2019).

Curator *Ad Hoc, Boomco LLC vs. Ambassador Inn Properties, et al,* CDC No. 98-21208, Parish of Orleans, State of Louisiana.

Receiver, *In re P. Michael Doherty Breeden, III,* No.2020-OB-00315, appointed by Chief Judge, CDC, Parish of Orleans.

Host Committee, Fifth Circuit Judicial Conference, New Orleans, Louisiana, April 19-22, 1998.

Moderator, "Dangerous Secrets: Confronting Confidentiality in Our Public Courts" sponsored by AAJ and the Pound Institute,
    October 13, 2020.

Moderator, "Winning With the Masters" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 19, 1998.

Moderator, "Winning With the Masters" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 14, 2000.

Welcome, ATLA Jazz Fest Seminar, New Orleans, Louisiana, May 1, 2003.

Guest Appearance, *It's the Law* "Challenges for the 21st Century" New Orleans Bar Association,  March 15, 1999.

Guest Appearance, *Bev Smith Show* "Is Tobacco Litigation Good For America?" American Urban Radio Network, June 8, 2000;
    *The Morning Show* "Are Tobacco Lawsuits Good For America?" KRLV Radio, June 9, 2000;
    *On the Air with Mike Bung* "Tobacco Litigation and Challenges for the 21st Century" 1540 AM, June 15, 2000.

Guest Lecturer, "The Nuremberg Trials" Touro Synagogue Religious School, April 2003.

Judge, ATLA Student Trial Advocacy Competition, Finals, New Orleans, Louisiana, March 26, 1999.

Associate Member, Louisiana Injured Employees Union Education Fund, 1999-2003.

Board of Directors, Touro Synagogue Brotherhood, 1998-2000.

Top Individual Fundraiser, Susan G. Komen Race for the Cure, Oct. 25, 2014.

Advocacy Award, Breastoration, (Cancer Association of Greater New Orleans), 2019.

Member, Mystery Writers Association, 1999 -

Author of Three Novels: The Gordian Knot (Gravier House Press 1998), The Sign of Four (Gravier House Press 1998), and
    A Day in the Life of Timothy Stone (Gravier House Press 1999), as well as a fourth book, My Life As a Spy.

Maintains Website / Blog regarding Legal, Literary and Other Issues, including updates of What's New in the Courts, including
    What's New in Products Liability, Class Actions, Legal Ethics and Professionalism, ERISA Litigation, and Electronic
    Discovery and Spoliation, at: www.gravierhouse.com.