**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Joseph Mignone v. Monsanto Company, et al.*, Case No. 3:21-cv-00501-VC | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *MIGNONE* CASE TO STATE COURT**<br><br>Date:          April 1, 2021<br>Time:         2:00 p.m.<br>Courtroom: 4 |

## **TABLE OF CONTENTS**

Page

INTRODUCTION AND ISSUES TO BE DECIDED ................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................................... 2

LEGAL STANDARDS ............................................................................................................... 3

ARGUMENT ................................................................................................................................ 4

    I.   Monsanto Presented Evidence That Clearly Establishes Fraudulent Joinder, And Plaintiff's Sheer Speculation Fails To Rebut Monsanto's Evidence-Based Showing. ............................................................................................................... 4

    II.  Monsanto Timely Filed The Removal Notice, And Plaintiff's Argument To The Contrary Is Foreclosed By 28 U.S.C. § 1446(b) And Controlling Ninth Circuit Law. ...................................................................................................... 8

CONCLUSION .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arias v. Follet Higher Educ. Corp.*,
   No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) ..........................3, 7

*Aronis v. Merck & Co.*,
   No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005)........................5

*Barraclough v. ADP Automotive Claims Servs., Inc.*,
   818 F. Supp. 1310 (N.D. Cal. 1993) ...............................................................................11, 12

*Billets v. Mentor Worldwide, LLC*,
   --- F. App'x ---, No. 19-56398, 2021 WL 406313 (9th Cir. Feb. 3, 2021)...............................9

*Carvalho v. Equifax Information Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) ................................................................................................4, 8

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ..................................................................................................8

*Feizbakhsh v. Travelers Commercial Ins. Co.*,
   No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016)....................3, 7

*Grancare, LLC v. Thrower*,
   889 F.3d 543 (9th Cir. 2018) .................................................................................................3, 7

*Harris v. Bankers Life & Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ............................................................................................10, 11

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
   No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) ..................................4

*Kline v. Mentor Worldwide, LLC*,
   No. 2:19-cv-00877-WBS-KJN, 2019 WL 3245102 (E.D. Cal. July 19, 2019) .................... 4-5

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005)................................................................................................................14

*Martinez v. McKesson Corp.*,
   No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ........................3, 5, 7

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) .................................................................................................3

*Rico-Chinn v. Prudential Ins. Co. of Am.*,
   No. C-05-01975 MMC, 2005 WL 1632289 (N.D. Cal. July 12, 2005) ................................ 9, 10

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998) ................................................................................................. 3

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   720 F.3d 1121 (9th Cir. 2013) ............................................................................................... 11

*In re Roundup Prods. Liability Litig. (Abreu, et al.)*,
   396 F. Supp. 3d 893 (N.D. Cal. 2019) ...................................................................... 12, 13, 14

*In re Roundup Prods. Liability Litig. (Berliant)*,
   No. 16-md-02741-VC, 2019 WL 6871244 (N.D. Cal. Dec. 16, 2019) ..................................... 7

*Tucker v. McKesson Corp.*,
   No. C 10–2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) ...................................... 5

*Vu v. Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 (N.D. Cal. 2009) ........................................................................... 4, 5, 7

**Statute**

28 U.S.C § 1446(b) ............................................................................................................. *passim*

## INTRODUCTION AND ISSUES TO BE DECIDED

In its Notice of Removal, Monsanto Company ("Monsanto") presented evidence – three declarations and Plaintiff's Fact Sheet ("PFS") – that clearly establishes that Plaintiff Joseph Mignone fraudulently joined two non-diverse California defendants, neither of which had any role in designing, manufacturing, distributing, marketing, or selling the Roundup®-branded herbicides that allegedly caused his non-Hodgkin's lymphoma ("NHL"). One defendant, Wilbur-Ellis Nutrition, LLC, formerly known as Wilbur-Ellis Feed, LLC ("Wilbur-Ellis Nutrition/Feed") never designed, manufactured, marketed, distributed, or sold Roundup®-branded herbicides or any other herbicides. Plaintiff does not even try to rebut Monsanto's fraudulent joinder showing regarding that defendant. The other defendant, Wilbur-Ellis Company LLC ("Wilbur-Ellis Company"), is (and has been) in the business of distributing and selling only certain kinds of Roundup®-branded herbicides – namely, herbicides designed for the agricultural market and the professional/industrial, turf & ornamental market – but it has never designed, manufactured, marketed, distributed, or sold Roundup®-branded, residential-lawn-and-garden herbicides. Wilbur-Ellis Company has been fraudulently joined because the PFS discloses that Plaintiff claims solely residential use of Roundup®-branded herbicides, so his injuries were not caused by the kinds of Roundup®-branded herbicides that have been distributed and sold by Wilbur-Ellis Company. Plaintiff does not present any evidence to rebut Monsanto's evidence-based, fraudulent joinder showing, and his sheer speculation about his claims against Wilbur-Ellis Company does not require remand.

Apparently recognizing that he has no persuasive response to Monsanto's fraudulent joinder showing, Plaintiff argues that Monsanto's removal was untimely, but that argument also lacks merit. Pursuant to 28 U.S.C § 1446(b), this removal was timely because the face of the Complaint did not provide any information about Plaintiff's use of Roundup®-branded herbicides – thereby precluding removal – and that information was first disclosed months later in the PFS, which was the § 1446(b) "other paper" that made this case removable. Plaintiff's untimeliness argument is foreclosed by § 1446(b) and controlling Ninth Circuit law.

The issues to be decided are whether, in these circumstances: (1) both California defendants have been fraudulently joined; and (2) Monsanto timely removed this case. As discussed in more detail below, the answer to both questions is "Yes."

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2020, Plaintiff commenced this lawsuit by filing a Complaint in the Superior Court of the State of California for San Francisco County. Compl. (attached to Monsanto's Notice of Removal of *Mignone* Lawsuit ("Removal Notice") as Ex. 1, ECF No. 1-1). Plaintiff asserts claims against Monsanto and seeks damages for NHL allegedly caused by Monsanto's Roundup®-branded herbicides. *See, e.g.*, *id*. ¶¶ 45, 59-63, 96-97, 113-20.

The Complaint also asserts claims against Wilbur-Ellis Company and Wilbur-Ellis Nutrition/Feed, lumping them together and referring to them collectively as "Wilbur-Ellis." Compl. ¶¶ 18-19. In turn, the Complaint lumps the Wilbur-Ellis defendants together with Monsanto, referring to them collectively as "Defendants," *id*. ¶ 20, and then uses broad boilerplate language to describe Defendants' various alleged activities, *see, e.g.*, *id*. ¶ 155.

The Complaint provides no details about Plaintiff's alleged exposure to Roundup®-branded herbicides, merely alleging that Plaintiff "was exposed to Roundup® and/or glyphosate in the State of California," Compl. ¶ 4. Although it comprises 35 pages and more than 200 paragraphs, the Complaint does not allege where Plaintiff allegedly applied Roundup®-branded herbicides or whether his exposure was residential use or work-related use.

January 7, 2021 was the first time that Plaintiff disclosed any details to Monsanto about his alleged use of Roundup®-branded herbicides. On that date, he served his PFS, which asserts solely residential use of those products. PFS at 11-12 (Removal Notice, Ex. 5, ECF No. 1-5).

Two weeks later, on January 21, Monsanto timely removed this case to this Court, pursuant to 28 U.S.C. § 1446(b), based on evidence – the PFS and three declarations – that Wilbur-Ellis Company and Wilbur-Ellis Nutrition/Feed had been fraudulently joined.

On February 19, 2021, Plaintiff file a motion seeking remand to state court. *See* Pl.'s Mot. to Remand and Mem. of P. & A. ("Remand Mem."), ECF No. 8. Plaintiff does not dispute

that he is a California citizen and that Monsanto is a citizen of Missouri and Delaware for purposes of diversity jurisdiction. Plaintiff also does not dispute that this lawsuit satisfies the jurisdictional amount-in-controversy requirement for this Court to exercise subject matter jurisdiction based on diversity of citizenship.

## LEGAL STANDARDS

As the Ninth Circuit has held, a defendant can remove a case to federal court even in the absence of complete diversity of citizenship between a plaintiff and the defendants named in the complaint. "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant removing a case from state court based on a fraudulent joinder argument is required to show that there is no possibility that the state court would hold the co-defendant liable. *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). When fraudulent joinder applies – *i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted) – the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship, *id*.

In conducting a fraudulent joinder analysis, a court is not limited to the allegations in a complaint and is permitted to consider declarations and other evidence presented by the removing defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *Morris*, 236 F.3d at 1068. When a removing defendant pierces the pleadings by presenting evidence showing that a non-diverse defendant has been fraudulently joined, the plaintiff cannot rely on allegations in the complaint to seek remand. *See Arias v. Follet Higher Educ. Corp.*, No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019); *Feizbakhsh v. Travelers Commercial Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016). If a plaintiff argues that it is possible for him to state a

claim against the non-diverse defendant, that possibility must be "non-fanciful" for the case to be remanded. *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502 DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1154 (N.D. Cal. 2009).

The timeliness of a removal notice is governed by 28 U.S.C. § 1446(b), which "identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." *Id.* (quotation marks omitted). If the complaint "on its face" does not provide a basis for removal, a second removal opportunity can arise later. "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id.* (quoting § 1446(b)).

## ARGUMENT

I.  **Monsanto Presented Evidence That Clearly Establishes Fraudulent Joinder, And Plaintiff's Sheer Speculation Fails To Rebut Monsanto's Evidence-Based Showing.**

Evidence presented in the Removal Notice – three declarations and the PFS – establishes that Plaintiff fraudulently joined Wilbur-Ellis Nutrition/Feed and Wilbur-Ellis Company. Plaintiff does not present any evidence to rebut Monsanto's evidence-based showing, and his sheer speculation regarding his claims against Wilbur-Ellis Company do not require remand.

*First*, the evidence establishes that Plaintiff fraudulently joined Wilbur-Ellis Nutrition/Feed, because its products did not cause Plaintiff's alleged injuries. *See* Removal Notice ¶ 18 (citing Declaration of Dennis McDermott ("McDermott Decl.") and fraudulent joinder cases). "Wilbur-Ellis Nutrition/Feed is (and has been) in the business of ensuring that animals receive customized, high-quality, dependable nutrients[,]" but that defendant "has never designed, manufactured, marketed, distributed, or sold Monsanto Company's Roundup®-branded herbicides or any other herbicides." McDermott Decl. ¶ 7, ECF No. 1-3. "Under California law, a plaintiff 'claiming to have been injured by a defective product must prove that the ***defendant's*** product, or some instrumentality under the defendant's control, caused his or her injury.'" *Kline*

*v. Mentor Worldwide, LLC*, No. 2:19-cv-00877-WBS-KJN, 2019 WL 3245102, at *3 (E.D. Cal. July 19, 2019) (holding that plaintiffs fraudulently joined California defendant that did not design, manufacture, distribute, or sell products that allegedly injured plaintiffs (quoting *DiCola v. White Bros. Performance Prods., Inc.*, 158 Cal. App. 666, 677 (2008) (emphasis added)).[1]

The evidence regarding fraudulent joinder of Wilbur-Ellis Nutrition/Feed is so overwhelming that Plaintiff does not even try to argue that he has viable claims against that defendant. Thus, the Court should hold that he fraudulently joined Wilbur-Ellis Nutrition/Feed and should disregard that defendant's citizenship when deciding whether to grant remand.

***Second***, the Removal Notice evidence establishes that Plaintiff fraudulently joined Wilbur-Ellis Company, because it had no involvement with designing, manufacturing, distributing, marketing, or selling the Roundup®-branded residential-lawn-and-garden herbicides that allegedly caused Plaintiff's injuries. Glyphosate-based herbicide products (including Monsanto's glyphosate-based, Roundup®-branded herbicides) have been designed for and sold to three different markets: (a) the agricultural market; (b) the residential-lawn-and-garden market; and (c) what is referred to as either the professional market or the industrial, turf, and ornamental ("IT&O") market, which involves herbicide products that are designed for and sold to, for example, landscaping companies, golf courses, schools, or state and local government agencies (to maintain roads, parks, and/or rights-of-way). Removal Notice ¶ 20 (citing Declaration of Scott Hushbeck ("Hushbeck Decl."); Declaration of Steven Gould ("Gould Decl.")).

As established in two declarations submitted by Monsanto, "Wilbur-Ellis Company is (and has been) in the business of distributing and selling glyphosate-based herbicide products for the agricultural market and the professional market[,]" but "Wilbur-Ellis Company is not (and

---

[1] *See also, e.g.*, *Martinez*, 2016 WL 5930271 (holding that California defendant was fraudulently joined because it did not manufacture Mirena and did not distribute ***plaintiff's*** Mirena); *Tucker v. McKesson Corp.*, No. C 10–2981 SBA, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) (holding that California defendant was fraudulently joined because it did not distribute morphine tablets to pharmacy where decedent obtained morphine tablets at issue in lawsuit); *Vu*, 602 F. Supp. 2d at 1154-55 (holding that California defendant was fraudulently joined because she did not market or distribute Children's Tylenol Plus Multi-Symptom Cold medicine); *Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005) (holding that California defendant was fraudulently joined because plaintiff alleged merely that defendant was a major distributor of Vioxx without connecting defendant to plaintiff's injuries).

has never been) in the business of marketing or selling Monsanto's glyphosate-based Roundup®-branded herbicides that have been designed for the residential-lawn-and-garden market." Hushbeck Decl. ¶ 7, ECF No. 1-2; *see* Gould Decl. ¶ 6, ECF No. 1-4. Thus, "Wilbur-Ellis Company has never played any role in the chain of distribution leading to Monsanto's glyphosate-based Roundup®-branded lawn-and-garden herbicides being sold at national retail stores like Home Depot, Lowe's, Target, Walmart, Costco, or Ace Hardware." Hushbeck Decl. ¶ 7; *see* Gould Decl. ¶ 6. Moreover, "Wilbur-Ellis Company has never designed or manufactured Monsanto's glyphosate-based Roundup®-branded herbicides." Hushbeck Decl. ¶ 9; Gould Decl. ¶ 8.[2]

There is a large gulf between the limited scope of Wilbur-Ellis Company's business related to Monsanto's Roundup®-branded herbicides (described above and in Mr. Hushbeck's and Mr. Gould's declarations) and the specific herbicides at issue here based on Plaintiff allegedly using Roundup®-branded herbicides solely for residential use and not for work-related reasons. *See* PFS at 11-12 (Removal Notice, Ex. 5); *see also* Remand Mem. at 4 (admitting that PFS identifies Plaintiff's use of Roundup®-branded herbicides "as residential, rather than 'work related'"). Thus, based on the fraudulent joinder cases cited above, Plaintiff does not have viable claims against Wilbur-Ellis Company because that defendant has never designed or manufactured Monsanto's Roundup®-branded herbicides – and has never played any role in distributing, marketing, or selling Roundup®-branded, residential-lawn-and-garden herbicides. *See supra* pages 4-5 & note 1 (citing cases).

Plaintiff has no persuasive response to Monsanto's evidence-based showing that he fraudulently joined Wilbur-Ellis Company, so he is forced to rely on unsupported allegations and speculation. Without submitting his own declaration or any other evidence, Plaintiff simply asserts that it is possible that some of the Roundup®-branded herbicides distributed by Wilbur-

---

[2] "Wilbur-Ellis Company is not (and has never been) the sole or exclusive distributor of Monsanto's Roundup®-branded glyphosate-based herbicides in the State of California." Hushbeck Decl. ¶ 8; Gould Decl. ¶ 7. "There are (and have been) other distributors of Roundup®-branded herbicides in California." Gould Decl. ¶ 7. "Wilbur-Ellis Company has never been the largest distributor of those herbicides in California." *Id.*

Ellis Company ended up in his hands, *see* Remand Mem. at 6, but that argument lacks merit. When a removing defendant pierces the pleadings with evidence showing that a non-diverse defendant has been fraudulently joined – as Monsanto did in its Removal Notice – a plaintiff seeking remand cannot rely on mere allegations or speculation lacking evidentiary support. *See, e.g.*, *Arias*, 2019 WL 484192, at *3 (denying remand motion; plaintiff did not state a claim against the non-diverse defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of the facts" that established fraudulent joinder) (emphasis in original); *Feizbakhsh*, 2016 WL 8732296, at *8 (same; plaintiff's "conclusory allegations" were not sufficient to overcome the evidence offered by the removing defendant to establish fraudulent joinder); *Martinez*, 2016 WL 5930271, at *3 (same; plaintiff's "speculation, which is unsupported by any evidence[,]" did not suffice to overcome the evidence presented by the removing defendant); *Vu*, 602 F. Supp. 2d at 1155 (same; accepting the removing defendant's fraudulent joinder showing because plaintiffs did not contest the in-forum defendant's declaration "that she did not market or distribute" the products at issue in the lawsuit). Thus, Plaintiff's allegations and speculation, which lack evidentiary support, do not support remand.

Plaintiff fares no better by arguing that "Monsanto asks this Court to engage in exactly the same type of 'searching inquiry into the merits of the plaintiff's case' that the Ninth Circuit has held to be out of bounds," Remand Mem. at 6 (quoting *Grancare*, 889 F.3d at 549). The inquiry required to analyze Monsanto's removal argument is simple, not "searching." Plaintiff's injuries allegedly were caused by residential use of Roundup®-branded herbicides, but Wilbur-Ellis Company had no involvement with designing, manufacturing, distributing, marketing, or selling those kinds of Roundup®-branded herbicides. No searching inquiry is needed. This analysis is much more straightforward than the implied preemption affirmative defense discussed in *Grancare*, 889 F.3d at 549, or the inquiry that this Court held would be impermissibly "searching" when it remanded the *Berliant* case, Pretrial Order No. 198, *In re Roundup Prods. Liability Litig. (Berliant)*, No. 16-md-02741-VC, 2019 WL 6871244 (N.D. Cal. Dec. 16, 2019)

(declining to analyze latency-period issue and substantial-factor-medical-causation issue presented by argument that two bottles of Roundup®-branded herbicides purchased in September 2016 "exacerbated a cancer caused by 27 years of Roundup exposure").

## II. Monsanto Timely Filed The Removal Notice, And Plaintiff's Argument To The Contrary Is Foreclosed By 28 U.S.C. § 1446(b) And Controlling Ninth Circuit Law.

As discussed above, § 1446(b) and Ninth Circuit law make clear that there are two thirty-day periods within which a defendant can file a timely removal notice. The first period requires the defendant to remove a case within thirty days of service of process, if "the case stated by the initial pleading is removable on its face." *Carvalho*, 629 F.3d at 885 (quotation marks omitted). However, if the case stated by the initial pleading is *not* removable on its face, the removal statute gives a defendant a second thirty-day period to file a timely removal notice. That period starts running when "the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id*. (quoting § 1446(b)); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (same).

That scenario is what happened here; Monsanto complied with § 1446(b) and Ninth Circuit law by timely filing the Removal Notice within the second thirty-day period. Fraudulent joinder of Wilbur-Ellis Company could not be determined from the face of the Complaint because that bare bones pleading provided *no* information regarding whether Plaintiff's alleged exposure to Roundup®-branded herbicides was residential use or work-related use. As Plaintiff admits, his "[C]omplaint was silent as to the nature of [his] use of Roundup." Remand Mem. at 4. As shown above in Section I, the distinction between certain kinds of Roundup®-branded herbicides designed and sold for residential use and other kinds of Roundup®-branded herbicides designed and sold for work-related use is essential for determining whether Wilbur-Ellis Company has been fraudulently joined. The lack of information in the Complaint about that important issue made it impossible to determine from the face of the Complaint whether that defendant had been fraudulently joined, so Monsanto could not remove this case within the first thirty-day removal period discussed in § 1446(b).

8
MONSANTO'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *MIGNONE* CASE
3:16-md-02741-VC & 3:21-cv-00501-VC

It was not until Plaintiff disclosed the nature of his alleged use of Roundup®-branded herbicides in his January 7 PFS that Monsanto could determine that he had fraudulently joined Wilbur-Ellis Company. The new information provided in the PFS was the trigger for removal within the meaning of § 1446(b). *See, e.g.*, *Billets v. Mentor Worldwide, LLC*, --- F. App'x ---, No. 19-56398, 2021 WL 406313, at *1 (9th Cir. Feb. 3, 2021) (holding that removal was timely based on § 1446(b) because a deposition transcript "revealed sufficiently new information . . . to trigger the removal"). The second thirty-day removal period in § 1446(b) began to run on January 7 because the PFS was the "other paper from which it may first be ascertained that [this] case is one which is or has become removable," § 1446(b)(3).[3] Monsanto filed the Removal Notice on January 21 – less than thirty days later – so that filing was timely.

Plaintiff contends that the Removal Notice was untimely, but his arguments are contrary to § 1446(b) and controlling Ninth Circuit law.

*First*, Plaintiff misses the mark by arguing that, "although the complaint was silent as to the nature of [his] use of Roundup, the vast majority of Roundup users are residential, [footnote 16 omitted], and Monsanto obviously was well aware of this theory of removal." Remand Mem. at 4-5. It does not matter that Monsanto was generally aware of this removal theory; the issue is whether Monsanto could tell from the Complaint whether that theory applied to *this case*. The argument that Monsanto could remove this case merely because the "vast majority" of Roundup®-branded-herbicide users are residential users is wrong. The statistics cited by Plaintiff, *see id.* at 5 n.16, support Monsanto's argument and undermine his argument. As a threshold matter, these statistics were not stated within the four corners of the Complaint, so – based on well-established Ninth Circuit law discussed above – those statistics could not trigger the first thirty-day removal period discussed in § 1446(b). However, even if these statistics had

---

[3] Plaintiff does not – and cannot – dispute the statement in the Removal Notice that his PFS qualifies as "other paper" within the meaning of § 1446(b). His sworn response to the PFS is equivalent to a sworn interrogatory response. "It is well-established that discovery responses qualify as 'other paper' within the meaning of § 1446(b)," *Rico-Chinn v. Prudential Ins. Co. of Am.*, No. C-05-01975 MMC, 2005 WL 1632289, at *4 (N.D. Cal. July 12, 2005) (denying remand motion; holding that removal was timely, based on § 1446(b), because plaintiff's interrogatory response was "other paper" that triggered second thirty-day removal period).

been stated in the Complaint, they would not have made this case removable during that first thirty-day removal period because such a removal would have been based on sheer speculation about the "majority" of Roundup®-branded-herbicide users.[4]  If Monsanto had removed this case based on that kind of speculation – without any evidence applicable to the specific plaintiff at issue here – Plaintiff's counsel would have been quick to criticize Monsanto (with good reason) for filing a frivolous removal notice.[5]  The Complaint did not affirmatively show a basis for federal subject matter jurisdiction and did not provide any notice – let alone unambiguous notice – of removability, so Monsanto did not have any basis, and was not required, to remove this case within thirty days of being served with the Complaint.  *See Harris*, 425 F.3d at 690-91 (rejecting argument that removability is determined by "defendant's knowledge, constructive or otherwise, of the requisite jurisdictional facts" and holding that "the thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading ***only when that pleading affirmatively reveals on its face*** the facts necessary for federal court jurisdiction." (emphasis added; brackets in original; quotation marks omitted)); *Rico-Chinn*, 2005 WL 1632289, at *2 (stating that § 1446(b) "permits the defendant to rely *exclusively* on the initial pleading for information bearing on removability" and that "***unambiguous notice of removability***" is required to start first thirty-day removal period because that requirement "lessens the likelihood of 'premature' removals" (emphasis added)).

---

[4] Plaintiff's counsel assert that their law firm represents 715 plaintiffs in the Roundup litigation and that 558 of them (78%) are residential users.  *See* Remand Mem. at 5 n.16 (citing Plaintiff's counsel's declaration).  Leaving aside whether those statistics are accurate, they show that the specific plaintiff at issue in ***this case*** could have been one of the 157 plaintiffs (715 minus 558) who were ***not*** residential users of Roundup®-branded herbicides.  In other words, following Plaintiff's counsel's logic, if Monsanto were to remove 100 Roundup cases with bare-bones complaints filed by their law firm for 100 plaintiffs against Monsanto and Wilbur-Ellis Company based on the argument that Wilbur-Ellis Company was fraudulently joined, the statistics provided by Plaintiff's counsel show that more than 20 of those removals (22%) would be erroneous.  That high error rate is unacceptable.

[5] In this hypothetical scenario, the Complaint would not have provided even a clue about whether ***this specific plaintiff's case*** was removable.  But even if a complaint provides a clue about a possible fraudulent joinder removal argument, that does not suffice to start the first thirty-day removal period.  The Ninth Circuit has rejected the "clue" standard for determining whether the first thirty-day removal period starts running.  *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 (9th Cir. 2005) (declining to "adopt a rule that the first thirty-day period [for removal] should apply where the initial pleading provides a 'clue' as to removability").

*Second*, Plaintiff vaguely claims that Monsanto "could easily have confirmed the nature of [his] use [of Roundup®-branded herbicides] and removed the case within 30 days of his complaint," Remand Mem. at 5, but he fails to explain how Monsanto could have done so before receiving the crucial information about his solely residential use of Roundup®-branded herbicides that was first disclosed months later in his PFS.  In any event, Ninth Circuit law makes clear that a defendant is entitled to assess removability based solely on the four corners of the complaint – and ***is not required to investigate any potential basis for removal by making further inquiry***.  *Harris*, 425 F.3d at 694 ("We now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").  "Thus, even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (stating that *Harris*, 425 F.3d at 693-94, held "that a defendant does not have a duty of inquiry if the initial pleading . . . is 'indeterminate' with respect to removability").  Here, Plaintiff admits that the Complaint did not disclose his residential use of Roundup®-branded herbicides.  Therefore, Monsanto had no duty to make "further inquiry" to assess whether this case was removable and was allowed to remove this case within the thirty-day period that began to run when Plaintiff served the PFS, which showed for the first time that this case was removable.[6]

---

[6] Plaintiff cites one case in support of his duty-to-investigate argument, *see* Remand Mem. at 5 n.18 (citing *Barraclough v. ADP Automotive Claims Servs., Inc.*, 818 F. Supp. 1310, 1312 (N.D. Cal. 1993) (Walker, J.)), but that case undermines his argument and supports Monsanto's argument.  Nothing in *Barraclough* states (or implies) that a defendant has a duty to investigate or inquire about removability if the face of a complaint does not provide the information needed to determine that the case is removable.  Moreover, *Barraclough* supports the analysis discussed above regarding the two separate thirty-day removal periods addressed in § 1446(b).  The complaint made "no mention of any federal claim," so Judge Walker held that "plaintiff's contention that defendant was put on notice of this case's removability as soon as the complaint was filed is incorrect." *Barraclough*, 818 F. Supp. at 1312.  Judge Walker went on to hold that the removal notice was timely based on § 1446(b) because "defendant was first put on notice of a federal claim when plaintiff propounded discovery inquiring whether defendant had violated the ADA [Americans With Disabilities Act]," and the removal notice was filed within thirty days of

*Finally*, Plaintiff also misses the mark by misconstruing, and taking snippets out of context from, this Court's inapposite July 2019 remand ruling regarding eleven multi-plaintiff cases that Monsanto removed in a materially different procedural posture than this single-plaintiff case. *See* Remand Mem. at 4 (citing Pretrial Order No. 157 ("PTO No. 157"), *In re Roundup Prods. Liability Litig. (Abreu, et al.)*, 396 F. Supp. 3d 893 (N.D. Cal. 2019)). Unlike this removal – which is based on important information disclosed for the first time in the PFS that made the case removable based on the § 1446(b) "other paper" provision – Monsanto removed those multi-plaintiff cases based on a different argument: that a severance order issued by Judge Smith (in her capacity as the *Roundup* JCCP judge) triggered removability under § 1446(b).[7] In those cases, unlike in this case, Monsanto already had prior information (from the various complaints or Plaintiff's Fact Sheets) that certain plaintiffs were alleging solely residential use of Roundup®-branded herbicides. However, those plaintiffs were joined with other plaintiffs who did not allege solely residential use, so the residential-use plaintiffs' claims could not be removed to this Court absent a severance order.

In that unusual procedural context, the Court made the following statements in PTO No. 157 (but did not hold that the removals were untimely):

---

defendant's counsel receiving a letter from plaintiff's counsel "confirm[ing] his intention to include an ADA claim in the pleadings." *Id*.

[7] Based on that severance order, the plaintiffs "were under an obligation to file individual [*i.e.*, single-plaintiff] complaints by the end of June [2019] . . . [b]ut before that could happen, Monsanto removed the cases to federal court on the theory that diversity jurisdiction exists over a subset of the plaintiffs." *Roundup Prods. Liability Litig.*, 396 F. Supp. 3d at 895-96. Monsanto argued that, "for each multi-plaintiff case that has been removed, the plaintiffs who are residential users [of Roundup®-branded herbicides] should remain in federal court, while the remaining plaintiffs can be remanded to state court." *Id*. at 896. However, this Court rejected that argument and Monsanto's request that the Court implement Judge Smith's severance order, holding that "Monsanto cannot carve a subset of plaintiffs out of each case," *id*. at 897, and that "a federal court can only sever a case over which it has jurisdiction, and federal jurisdiction is assessed at the time of removal," *id*. at 898. Once the Court declined to sever the multi-plaintiff cases, the cases had to be remanded to state court because, as Monsanto conceded in those removal notices, each case had at least one plaintiff for whom Monsanto was not able to establish solely residential use of Roundup®-branded herbicides – which meant that, for such plaintiffs, Monsanto could not establish fraudulent joinder as to Wilbur-Ellis Company. In PTO No. 157, the Court remanded the cases without deciding whether Monsanto had established fraudulent joinder.

> It bears noting that Monsanto is actually fortunate that its theory of removal is incorrect. It the theory were correct, then the removals would almost certainly be untimely. A defendant only has thirty days to remove a case from the time federal jurisdiction becomes apparent, and the facts underlying both concepts Monsanto invokes – fraudulent joinder and fraudulent misjoinder – were almost certainly apparent to Monsanto at or near the time the Complaints were filed.

*Roundup Prods. Liability Litig.*, 396 F. Supp. 3d at 897. Based on its interpretation of § 1446(b), the Court provided guidance about the circumstances in which subsequent removals *of the cases at issue in PTO No. 157* might be appropriate after remand to state court and after severance:

> Where a case is not removable based on the "initial pleading," a defendant has thirty days to file a notice of removal after its receipt "of a copy of an amended pleading, motion, order, or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Here, the filing of a plaintiff's individual, post-severance complaint starts that thirty-day window. While Judge Smith's severance order revealed that some of the cases would likely be removable in the future, the clock only begins running once a document reveals that a case is presently removable. Thus, for the individual cases that satisfy the requirements for diversity jurisdiction, Monsanto will have thirty days to remove once the post-severance complaint is filed.

*Roundup Prods. Liability Litig.*, 396 F. Supp. 3d at 899 (case citations omitted). That guidance for potential subsequent removals of the cases at issue in PTO No. 157 is consistent with the two-part analysis required by § 1446(b): (1) Does the complaint disclose a basis for removal? (2) If not, is there a later event (*e.g.*, filing of a severed, single-plaintiff complaint (PTO No. 157) or service of "other paper" (this case)) that makes the lawsuit removable?

Plaintiff tries to cobble together an untimeliness argument by taking snippets of PTO No. 157 out of context and combining quotations from multiple pages of that order into a misleading sentence that obscures key distinctions between the cases at issue in that order and this case.[8] The Court should reject that gambit. Plaintiff contends that "[t]his Court put Monsanto on notice in July 2019 that it has only 30 days to remove a case on the theory that the Wilbur-Ellis defendants are fraudulently joined." Remand Mem. at 4. Not so. PTO No. 157 was specific to

---

[8] *Compare* Remand Mem. at 4 ("The Court's order expressly warned Monsanto that – after an *individual* complaint is filed – '[a] defendant only has thirty days to remove a case from the time federal jurisdiction becomes apparent' and that 'the facts underlying' its Wilbur-Ellis-fraudulent-joinder theory 'were almost certainly apparent to Monsanto at or near the time the complaints were filed.'" (quoting PTO No. 157) (alterations in original") *with supra* pages 12-13 & n.7 (providing complete, in-context quotations from PTO No. 157).

13
MONSANTO'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *MIGNONE* CASE
3:16-md-02741-VC & 3:21-cv-00501-VC

certain multi-plaintiff cases that: (a) were being remanded after Monsanto had already received information identifying those plaintiffs who were alleging solely residential use of Roundup®-branded herbicides; and (b) were expected to be severed into single-plaintiff complaints based on Judge Smith's severance order.  By contrast, this case presents no issues of misjoinder or severance because it was filed as a single-plaintiff case *ab initio*.

Plaintiff's effort to rely on PTO No. 157 is unavailing because, unlike the cases at issue in that order – which the Court said would not be removable until severance occurred in state court and then would need to be removed within thirty days after "the post-severance complaint is filed," *Roundup Prods. Liability Litig.*, 396 F. Supp. 3d at 899 – this case did not have a post-severance, removability-triggering event.  Here, the removability-triggering event was Plaintiff serving his PFS, which disclosed for the first time that he claims solely residential use of Roundup®-branded herbicides.  Monsanto filed the Removal Notice less than thirty days later, so this removal was timely in accordance with the "other paper" provision in § 1446(b).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Remand.[9]

---

[9] If the Court decides to remand this case, the Court should deny Plaintiff's request for fees and costs because, as shown above, Monsanto had an objectively reasonable basis for removing this case to this Court.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").

| | |
|---|---|
| DATED:  March 5, 2021 | Respectfully submitted, |

<table>
<tr><td></td><td>/s/ Eric G. Lasker</td></tr>
<tr><td>William Hoffman (<i>pro hac vice</i>)<br>(william.hoffman@arnoldporter.com)<br>Daniel S. Pariser (<i>pro hac vice</i>)<br>(daniel.pariser@arnoldporter.com)<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue, NW<br>Washington, DC 20001<br>Tel:  202-942-5000<br>Fax:  202-942-5999</td><td>Eric G. Lasker (<i>pro hac vice</i>)<br>(elasker@hollingsworthllp.com)<br>Martin C. Calhoun (<i>pro hac vice</i>)<br>(mcalhoun@hollingsworthllp.com<br>HOLLINGSWORTH<small>LLP</small><br>1350 I Street, NW<br>Washington, DC 20005<br>Tel:  202-898-5800<br>Fax:  202-682-1639</td></tr>
<tr><td></td><td>Brian L. Stekloff (<i>pro hac vice</i>)<br>(bstekloff@wilkinsonstekloff.com)<br>Rakesh Kilaru (<i>pro hac vice</i>)<br>(rkilaru@wilkinsonstekloff.com)<br>WILKINSON STEKLOFF LLP<br>2001 M Street, NW, 10th Floor<br>Washington, DC 20036<br>Tel:  202-847-4030<br>Fax:  202-847-4005</td></tr>
</table>

*Attorneys for Defendant Monsanto Company*