Arthur H. Bryant (SBN 208365)
BAILEY & GLASSER, LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
Fax: (510) 436-0291
E-mail: abryant@baileyglasser.com

Benjamin L. Bailey (*admitted pro hac*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110
E-mail: bbailey@baileyglasser.com

Joshua I. Hammack (*admitted pro hac*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel.: (202) 548-7798
Fax: (202) 463-2103
E-mail: jhammack@baileyglasser.com

*Counsel for Amici Curiae*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**OPPOSITION OF 93 LAW FIRMS AND 167 LAWYERS AS *AMICI CURIAE* TO MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, APPOINTMENT OF INTERIM CLASS AND SUBCLASS COUNSEL, DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e), SCHEDULING OF A FAIRNESS HEARING, AND STAY OF THE FILING AND PROSECUTION OF ROUNDUP-RELATED ACTIONS BY SETTLEMENT CLASS MEMBERS** |
| THIS DOCUMENT RELATES TO:<br><br>*Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | The Honorable Vince Chhabria<br><br>Date:    March 31, 2021<br>Time:    10:00 am<br>Courtroom 4 – 17th Floor |

Last July, this Court described Monsanto's first proposed Roundup "futures" class settlement ("Plan A") as "questionable," not "appropriate," and "dubious," articulating several specific "concerns" making the Court "skeptical" of the settlement's "propriety and fairness"— and thus of why any "potential class member" would "want" to be part of it:

> [I]t's unclear how the [settlement] . . . would benefit a class of Roundup users who either have cancer but have not yet sued Monsanto or have not yet developed cancer . . .
>
> Why would a potential class member want to replace a jury trial and the right to seek punitive damages with the process contemplated by the settlement agreement?
>
> In any area where the science may be evolving, how could it be appropriate to lock in a decision from a panel of scientists for all future cases? . . .
>
> Given the diffuse, contingent, and indeterminate nature of the proposed class, it seems unlikely that most class members would have an opportunity to consider in a meaningful way (if at all) whether it is in their best interest to join the class. . . . For example, the idea that a migrant farmworker or someone who is employed part time by a small gardening business would receive proper notification (much less the opportunity to consider their options in a meaningful way) is dubious.

Doc. 11182 at 3. In light of this rebuke, Monsanto and putative class counsel promptly withdrew Plan A.

Now they are back with "Plan B"—but little has changed. Although some proposed terms have been tweaked, the major components that drew this Court's skepticism—lack of meaningful notice, the waiver of punitive damages, and the formation of a secret science panel— remain intact. To those exposed to Roundup, "Plan B" is a solution in search of a problem. The only purported benefit being offered is an administrative system whereby putative class members can submit their case to a claims administrator and be provided an offer. However, there is nothing stopping Monsanto from doing that, by itself, today. There is no need for judicial imprimatur, much less for this class to be certified.

*Amici Curiae* are 93 law firms and 167 lawyers that write collectively from their long and

*AMICI* BRIEF OF LAW FIRMS AND LAWYERS OPPOSING PRELIMINARY APPROVAL
MDL NO. 2741, CASE NO. 3:16-md-02741

varied experience representing people injured physically, emotionally, or financially by the conduct of others.[1] This collective experience gives *amici* meaningful perspective on the best ways that our clients and other injury victims can engage with the judicial system. To us, it is clear that the proposed settlement before this Court would not benefit the injured class members. Nor would this type of "settlement" benefit people injured by widespread corporate misconduct in any of the areas of law in which we practice.

We briefly discuss just a few of the settlement's serious problems below.

**<u>Wholesale Release of Punitive Damages:</u>** The settlement gives up all of the class members' punitive damages claims. The sole justification provided for this is that Monsanto has been "punished" and "deterred" enough by the payment of up to $9,600,000,000 in settlements.[2] Under no federal or state law, however, does a calculation exist to justify barring an individual from asking that the perpetrator of her or his injuries be punished in this way. In fact, no federal or state law permits *any* injury victim to be barred from seeking punitive damages because a wrongdoer reached settlements with others—or, for that matter, paid compensatory or punitive damages to others, which must be limited to amounts appropriate for the harm the wrongdoer did to *those individuals*. Moreover, Monsanto has continued to manufacture its product in spite of the cancer it was causing, continued to manufacture and sell its product after these verdicts, and, as part of this "settlement," will be permitted to continue to manufacture its dangerous product

---

[1] A list of the law firms is attached as Exhibit A. A list of the lawyers is attached as Exhibit B.

[2] There have also been three punitive damages awards. *See Hardeman v. Monsanto Co.*, 385 F. Supp. 3d 1042, 1048 (N.D. Cal. 2019) (punitive damages reduced from $75 million to $20 million); *Johnson v. Monsanto Co.*, No. GC16550128, 2018 WL 5246323, at *5 (Cal. Super. Oct. 22, 2018) (punitive damages reduced from $250 million to $39.25 million); *Johnson*, 52 Cal. App. 5th 454, 463 (2020) (punitive damages reduced further to $10.25 million); *Pilliod v. Monsanto Co.*, No. RG-17-862702, 2019 WL 3540107, at *12 (Cal. Super. July 26, 2019) (punitive damages for two plaintiffs reduced from $1 billion each to $24.5 million and $44.8 million). *Hardeman* and *Pilliod* are on appeal.

2

unabated long into the future—all while class members and other members of the public will continue to be exposed.[3] This is neither punishment nor deterrence. It is an unconscionable gift to Monsanto.

**A Four-Year Stay on Judicial Proceedings**: The settlement stays all litigation for class members for four years. This is anathema to the effective representation of injured individuals. Why should people wait four years to be able to file a lawsuit, and then, with the congestion of courts, another three to five years before a trial? In those four years and the later intervening time, no doubt people will die, many as a result of the cancer that Monsanto gave them, and potentially lose their rights to some causes of action and/or measures of damages. Recognizing this, many courts, as in California's CCP36, *expedite* hearings so such individuals will not have to wait. The proposed settlement, in contrast, *delays* their hearings. In these cases, justice delayed will truly be justice denied. Why should injured victims be deprived of the relief that they so urgently need? Such a stay is unprecedented in our jurisprudence. It should not be countenanced by this or any other court in any litigation involving injured individuals.

**A Secret Science Panel:** The ostensible justification for a four-year stay is the formation of a science panel. The premise for this panel of scientists, constructed to exclude anyone in the world who has already researched the product and found it in any way dangerous, is that it will operate in total darkness, its work hidden, its process hidden, and its members only subject to a single carefully controlled deposition. Its conclusions will then be presented to juries as "stipulated facts" from an "independent" panel. Regardless of the weight juries and other judges will give this, why is this something that is advantageous to victims? Which plaintiff in any

---

[3] Without going into detail, in *In Re: Diet Drugs (Phentermine/Fenfluramine/Dexenfluramine) Prods. Liab. Litig.,* 369 F.3d 293, 317 (3d Cir. 2004), the lead case relied on in the Motion for Preliminary Approval, Doc. 12509 at 13 n.1, the offending product had long been off the market and its use was by prescription.

3

litigation has ever requested such a panel? Our court systems are public for a reason. Factual determinations should never be made in secret by a private group, not subject to review or cross-examination. Any secret, private expert panel desecrates the openness and transparency of the legal process—and eviscerates the right to trial by jury. It violates a core principle at the heart of our common law system: that juries and (in appropriate circumstances) judges decide critical issues of fact.

In conclusion, we believe that this proposed settlement will not benefit injured Roundup victims, but, instead, will merely allow Monsanto to cap its risk and calculate the injuries and suffering it has caused, is causing, and will continue to cause as just one more cost of doing business. People exposed to dangerous products should not be forced, generally unknowingly, to give up rights that they otherwise would have. It is not the judicial system's job to allow Monsanto to continue to manufacture its product and be able to calculate its potential risk. The judicial system should *prevent* such an outcome, not bless it. Its job is to give aggrieved parties the opportunity to make themselves whole, seek recompense for their injuries, and, when harmed by malicious conduct, punish the party who hurt them.

We, therefore, respectfully submit that this Court should deny approval of this repackaged class settlement. Such a settlement should never be approved.

Dated:  March 5, 2021                    Respectfully submitted,

                                         */s/ Arthur H. Bryant*
                                         Arthur H. Bryant (SBN 208365)
                                         BAILEY & GLASSER, LLP
                                         1999 Harrison Street, Suite 660
                                         Oakland, CA 94612
                                         Tel.: (510) 272-8000
                                         Fax: (510) 436-0291
                                         E-mail: abryant@baileyglasser.com

                                         Benjamin L. Bailey (*admitted pro hac*)
                                         BAILEY & GLASSER, LLP

4

209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110
E-mail: bbailey@baileyglasser.com

Joshua I. Hammack (*admitted pro hac*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel.: (202) 548-7798
Fax: (202) 463-2103
E-mail: jhammack@baileyglasser.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on counsel of record.

Dated: March 5, 2021                                    Respectfully submitted,

                                                        */s/ Arthur H. Bryant*
                                                        Arthur H. Bryant (SBN 208365)

6

*AMICI* BRIEF OF LAW FIRMS AND LAWYERS OPPOSING PRELIMINARY APPROVAL
MDL NO. 2741, CASE NO. 3:16-md-02741