**HOLLINGSWORTH  LLP**
Joe G. Hollingsworth  (*pro hac vice*)
Eric  G. Lasker (*pro hac vice*)
1350 I Street, N.W.
Washington,  DC  20005
Telephone:    (202) 898-5800
Facsimile:     (202) 682-1639
Email:         jhollingsworth@hollingsworthllp.com
               elasker@hollingsworthllp.com

*Attorneys for Defendant*
*MONSANTO  COMPANY*

UNITED  STATES  DISTRICT  COURT

NORTHERN  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY  LITIGATION | MDL  No. 2741<br><br>Case No. 3:16-md-02741-VC |
| This document  relates to:<br><br>*Holly L. Burger, fka Holly L. Steinbrook*<br>*v. Monsanto Co.,*<br>Case No. 3:21-cv-01045-VC | |

## MONSANTO  COMPANY'S  ANSWER  TO  PLAINTIFF'S  COMPLAINT

Pursuant  to Rule  12 of the Federal  Rules  of Civil  Procedure,  Defendant  Monsanto Company  ("Monsanto"),  by and through  its counsel,  respectfully  responds  by generally  denying all allegations  contained  in plaintiff  Holly L. Burger's  Complaint  and Jury Demand  (the "Complaint"),  except as set forth below.  As defined  in the Complaint  and as used in this Answer,  Monsanto  refers  to Monsanto  Company,  a United  States  based company  incorporated  in Delaware,  and not to other  Monsanto-affiliated  companies.   Silence  as to any allegations  shall constitute  a denial.

1.        In response  to the allegations  in paragraph  1, Monsanto  admits  that plaintiff purports  to bring an action  for damages  allegedly  related  to exposure  to Roundup®-branded products  but denies  any liability  as to plaintiff's  claims.  Monsanto  admits  that glyphosate repeatedly  has been found  safe to humans  and the environment  by regulators  in the United  States

and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that the allegations in paragraph 1 suggest that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in paragraph 1.

2. Monsanto denies the allegations in the first three sentences of paragraph 2. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto states that the document cited and quoted in paragraph 2 speaks for itself and does not require a response.

3. In response to the allegations in paragraph 3, Monsanto admits that it has manufactured Roundup®-branded products that have glyphosate as the active ingredient. In response to the remaining allegations in paragraph 3, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly has concluded, pursuant to the FIFRA, that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that the allegations in paragraph 3 suggest that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in paragraph 3.

4. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

5.       Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 5 and therefore denies those allegations. Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in of paragraph 5.

6.       In response to the allegations in paragraph 6, Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses and therefore denies those allegations in paragraph 6. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 and therefore denies those allegations.

7.       In response to the allegations in paragraph 7, Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses and therefore denies those allegations in paragraph 7. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and therefore denies those allegations.

8.       In response to the allegations in paragraph 8, Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and other serious illnesses and therefore denies those allegations in paragraph 8. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 8 and therefore denies those allegations.

9. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies those allegations.

10. Monsanto admits the allegations in the first, second, and fifth sentences of paragraph 10. The allegations in the last sentence of paragraph 10 set forth conclusions of law for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence in paragraph 10 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 10.

11. In response to the allegations in the first sentence of paragraph 11, Monsanto denies certain events giving rise to plaintiff's claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiff's claims occurred and therefore denies those allegations. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 11 regarding plaintiff's awareness and therefore denies those allegations. The remaining allegations in paragraph 11 set forth conclusions of law for which no response is required Monsanto lacks.

12. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies those allegations.

13. In response to the allegations in paragraph 13, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that EPA repeatedly has concluded, pursuant to FIFRA, that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that the allegations in the first and second sentences of paragraph 13 allege that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in the first and second sentences of paragraph 13.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

14.     In response to the allegations in the first sentence of paragraph 14, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds and that glyphosate is the active ingredient in Roundup®-branded herbicides. Monsanto admits the allegations in the second sentence of paragraph 14. Monsanto denies the allegations in the third sentence of paragraph 14 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the final sentence of paragraph 14 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the EPA. Monsanto denies the remaining allegations in paragraph 14.

15.     Monsanto admits the allegations in the first two sentences of paragraph 15. Monsanto denies the remaining allegations in paragraph 15.

16.     Monsanto denies the allegations in the first, third, and last sentences of paragraph 16. Monsanto admits that, at certain times, glyphosate has been the most commonly used herbicide but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.   The remaining allegations in paragraph 16 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

17.     In response to the allegations in paragraph 17, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 and therefore denies those allegations.

18.     Monsanto denies the allegations in paragraph 18.

19.     Monsanto denies the allegations in paragraph 19.

20.     In response to the allegations in paragraph 20, Monsanto admits that the IARC issued a monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer hazard assessment around the world or that IARC based its evaluation on a complete

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

or accurate assessment of the scientific research regarding glyphosate.  Monsanto states that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto denies the remaining allegations in paragraph 20.

21.    There is no paragraph "21" in the Complaint, and therefore no response is required.

22.    The allegations in paragraph 22 set forth conclusions of law for which no response is required.

23.    Monsanto admits the allegations in the first sentence of paragraph 23. Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 23 set forth conclusions of law for which no response is required.

24.    In response to the allegations in paragraph 24, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 24 set forth conclusions of law for which no response is required.

25.    The allegations in paragraph 25 set forth conclusions of law for which no response is required.

26.    In response to the allegations in paragraph 26, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety.  The remaining allegations in paragraph 26 set forth conclusions of law for which no response is required.

27.     Monsanto denies the allegations in paragraph 27 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. The remaining allegations in the first, second, third, fourth, and fifth sentences of paragraph 27 set forth conclusions of law for which no response is required. In response to the remaining allegations in paragraph 27, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies. Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides. Monsanto denies the remaining allegations in paragraph 27.

28.     In response to the allegations in the first and second sentences of paragraph 28, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment" ; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first and second sentences of paragraph 28 and therefore denies these allegations.  In response to the allegations in the last sentence of paragraph

28, Monsanto admits that the IARC working group classified glyphosate under Group 2A. The remaining allegations in the last sentence of paragraph 28 comprise attorney characterizations and are accordingly denied.

29.     Monsanto denies the allegations in paragraph 29.

30.     In response to the allegations in paragraph 30, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."   EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director

of EPA's Office of Pesticide Programs),
http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 30.

31.    In response to the allegations in paragraph 31, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto admits that Industrial Bio-Test Laboratories ("IBT") was hired to conduct studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

32.    Monsanto denies the allegations in paragraph 32 to the extent they suggest that FDA performed an inspection of IBT laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 32 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations. Monsanto admits that three managers in IBT's toxicology department

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

1   were convicted of the charge of fraud, but denies that any of the individuals were convicted

2   based upon studies conducted on glyphosate or glyphosate-based herbicides.

3          33.     In response to the allegations in the first second, and third sentences of paragraph

4   33, Monsanto admits that it – along with numerous other private companies – hired Craven

5   Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural

6   products. Monsanto further admits that it was defrauded by Craven Laboratories and that, as a

7   result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To

8   the extent that the allegations in the first, second and third sentences of paragraph 33 are

9   intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto

10  denies such allegations. Monsanto admits that it has stated that Roundup®-branded products are

11  safe when used in accordance with the products' labeling. All labeling of Roundup®-branded

12  products has been and remains EPA-approved and in compliance with all federal requirements

13  under FIFRA. Monsanto denies the remaining allegations in paragraph 33.

14         34.     The allegations in the first sentence of paragraph 34 are vague and conclusory and

15  comprise attorney characterizations, and are accordingly denied. Monsanto denies the remaining

16  allegations in paragraph 34.

17         35.     In response to the allegations in the Complaint's first-numbered paragraph 35,

18  Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996

19  alleging false and misleading advertising of Roundup® products. This lawsuit was subsequently

20  resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the

21  New York Attorney General's allegations related in any way to a purported or alleged risk of

22  cancer. Monsanto denies the remaining allegations in the Complaint's first-numbered paragraph

23  35.

24         36.     In response to the allegations in paragraph 36, Monsanto admits that the New

25  York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading

26  advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any

27  admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney

28

General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

35.     Monsanto denies the allegations in the first sentence of Complaint's second-numbered paragraph 35. Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in the Complaint's second-numbered paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     Monsanto denies the allegations in paragraph 37.

38.     Monsanto denies the allegations in the first sentence of paragraph 38. Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 38 to the extent they suggest that this ruling was in any way related to plaintiff's claims here that glyphosate can cause cancer. The remaining allegations in paragraph 38 are vague, ambiguous, and conclusory and comprise attorney characterizations and are accordingly denied.

39.     Monsanto denies the allegations in the first sentence of paragraph 39. In response to the allegations in the second sentence of paragraph 39, Monsanto admits that IARC is a subgroup of the WHO. The remaining allegations in paragraph 39 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

40.     In response to the allegations in paragraph 40, Monsanto states that the cited document speaks for itself and does not require a response.

41.     In response to the allegations in the first sentence of paragraph 41, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the allegations in the second and third sentences of paragraph 41. In response to the allegations in the fourth sentence of paragraph 41, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have

- 11 -

been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

42. Monsanto denies the allegations in paragraph 42 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

43. In response to the allegations in the first and second sentences of paragraph 43, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures. In response to the remaining allegations in paragraph 43, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent that the remaining allegations in paragraph 43 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

44. In response to the allegations in paragraph 44, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts." Monsanto

1  lacks information or knowledge sufficient to form a belief as to the truth of the remaining

2  allegations in paragraph 44 and therefore denies those allegations.

3         45.    In response to the allegations in paragraph 45, Monsanto denies the IARC

4  working group considered all information available in the scientific literature and all data from

5  government reports that are publicly available. Monsanto lacks information or knowledge

6  sufficient to form a belief as to the truth of the remaining allegations in paragraph 45 and

7  therefore denies those allegations.

8         46.    To the extent that the allegations in paragraph 46 purport to characterize

9  statements made in the IARC monograph for glyphosate, the statements in that document speak

10  for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the

11  accuracy of the source of said information and accordingly denies the allegations. To the extent

12  that the allegations in the last sentence of paragraph 46 mean that more than *de minimis* amounts

13  of glyphosate exposure occur, Monsanto denies those allegations.

14         47.    In response to the allegations in paragraph 47, Monsanto admits that the working

15  group cited to a study that it concluded provided evidence of chromosomal damage in

16  community residents reported to be exposed to glyphosate, but Monsanto denies that the study

17  supports such a conclusion or that the authors of the study reached such a conclusion.

18         48.    In response to the allegations in the first sentence of paragraph 48, Monsanto

19  admits that certain studies have reported that glyphosate and glyphosate-based formulations

20  induced oxidative stress under artificial experimental conditions. Monsanto denies that these

21  studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce

22  oxidative stress in humans or animals under real-world exposure conditions. In response to the

23  allegations in the second sentence of paragraph 48, Monsanto states that the cited document

24  speaks for itself and does not require a response. In response to the allegations in the last

25  sentence of paragraph 48, Monsanto denies that any exposure to glyphosate-based herbicides or

26  Roundup®-branded products can cause cancer or other serious illnesses. Monsanto denies the

27  remaining allegations in paragraph 48.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

49.     In response to the allegations in paragraph 49, Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.

50.     In response to the allegations in paragraph 50, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 50.

51.     In response to the allegations in paragraph 51, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

52.     In response to the allegations in the first and second sentences of paragraph 52, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine. Monsanto denies the remaining allegations in the first and second sentences of paragraph 52. Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. The allegations in the fourth sentence of paragraph 52 are vague and conclusory and comprise attorney characterizations, and are accordingly denied. In response to the allegations in the fifth and sixth sentences of paragraph 52, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that allegations in the fifth and sixth sentences of paragraph 52 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited study supports the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in the fifth and sixth sentences of paragraph 52.

53.      In response to the allegations in paragraph 53, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 53. Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert. Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. The remaining allegations in paragraph 53 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

54.      In response to the allegations in the Complaint's first-numbered paragraph 54, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in the Complaint's first-numbered paragraph 54.

55.      In response to the allegations in the Complaint's first-numbered paragraph 55 and each of its subparts, Monsanto states as follows: Monsanto denies that glyphosate or Roundup®-branded products cause cancer. The allegations in the Complaint's first-numbered paragraph 55 and its subparts take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations – and are accordingly denied. Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. To the extent that the allegations in the Complaint's first-numbered paragraph 55 or its subparts purport to quote a document, the document speaks for itself and does not require a response. To the extent that the allegations in the Complaint's first-numbered paragraph 55 or its subparts characterize the meaning of a document, Monsanto denies those allegations. Monsanto denies the remaining allegations in the Complaint's first-numbered paragraph 55, including each of its subparts.

54.      Monsanto denies the allegations in the second-numbered paragraph 54 and each of its subparts.

55.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of the Complaint's second-numbered paragraph 55 and therefore denies those allegations. Monsanto denies the allegations in the third and fifth sentences of the Complaint's second-numbered paragraph 55. The remaining allegations in the Complaint's second-numbered paragraph 55 set forth conclusions of law for which no response is required.

56.     The allegations in the first sentence of paragraph 56 set forth conclusions of law for which no response is required. Monsanto denies the allegations in the second sentence of paragraph 56.

57.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 57 and therefore denies those allegations.

58.     In response to the allegations in paragraph 58, Monsanto denies that it violated Ohio or federal law and states that it complied with all applicable law regarding Roundup®-branded products. The remaining allegations in paragraph 58 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies all such allegations.

59.     In response to the allegations in paragraph 59, Monsanto denies that it violated Ohio, or federal laws or regulations; denies the allegation that Roundup®-branded products were misbranded; and states that it complied with all applicable law regarding Roundup®-branded products. Monsanto denies the allegations in the last sentence of paragraph 59. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where plaintiff was exposed to Roundup®-branded products and where plaintiff's injuries occurred and therefore denies those allegations. The remaining allegations in paragraph 59 set forth conclusions of law for which no response is required.

60.     Monsanto incorporates by reference its responses to paragraphs 1 through 59 in response to paragraph 60 of plaintiff's Complaint.

61.     Monsanto denies the allegations in paragraph 61.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

62. Monsanto admits the allegations in the first sentence of paragraph 62. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 62 that plaintiff used Roundup®-branded products and therefore denies those allegations. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 62.

63. Monsanto denies the allegations in the first sentence of paragraph 63. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 63 and therefore denies those allegations.

64. Monsanto denies the allegations in paragraph 64 and the allegations in the last sentence of footnote 10. The remaining allegations in footnote 10 set forth conclusions of law for which no response is required.

65. Monsanto denies the allegations in paragraph 65 and each of its subparts.

66. In response to the allegations in paragraph 66, Monsanto denies that Roundup®-branded products have "dangerous characteristics." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 and therefore denies those allegations.

67. Monsanto denies the allegations in paragraph 67.

68. Monsanto denies the allegations in paragraph 68.

69. Monsanto denies the allegations in paragraph 69.

70. Monsanto denies the allegations in paragraph 70.

71. Monsanto incorporates by reference its responses to paragraphs 1 through 70 in response to paragraph 71 of plaintiff's Complaint.

72. Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers. Monsanto denies the allegations in the third sentence of paragraph 72. All labeling of Roundup®-branded products has been and remains EPA-

approved and in compliance with all federal requirements under FIFRA. The remaining allegations in paragraph 72 set forth conclusions of law for which no response is required.

73.     In response to the allegations in paragraph 73, Monsanto admits that its principal place of business is in St. Louis County, Missouri.  Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in the first sentence of paragraph 74, Monsanto admits that it researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, and sold Roundup®-branded products. Monsanto lacks information or knowledge sufficient to form a belief as to the allegations in the second sentence of paragraph 74 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 74.

75.     The allegations in the first and second sentences of paragraph 75 set forth conclusions of law for which no response is required.  Monsanto denies the allegations in the last sentence of paragraph 75.

76.     Monsanto denies the allegations in paragraph 76. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

77.     Monsanto denies the allegations in paragraph 77. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

78.     Monsanto denies the allegations in paragraph 78.

79.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 79 and therefore denies those allegations.

80.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 80 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining

allegations in paragraph 80, including that Roundup®-branded products have "dangerous propensities."

81.   In response to the allegations in paragraph 81, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses and denies that there are any defects in those products. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 and therefore denies those allegations. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

82.   Monsanto denies the allegations in paragraph 82. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

83.   Monsanto denies the allegations in paragraph 83.

84.   Monsanto denies the allegations in paragraph 84, including the allegations that it failed to comply with federal or Ohio law.

85.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 85 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 85.

86.   Monsanto incorporates by reference its responses to paragraphs 1 through 85 in response to paragraph 86 of plaintiff's Complaint.

87.   Monsanto denies the allegations in paragraph 87.

88.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 88 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 88.

89.   In response to the allegations in paragraph 89, Monsanto denies that exposure to Roundup®-branded products can cause NHL or other serious illnesses. The remaining

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC

allegations in paragraph 89, including its remaining subparts, set forth conclusions of law for which no response is required.

90.     Monsanto denies the allegations in paragraph 90 and each of its subparts.

91.     Monsanto denies the allegations in paragraph 91.

92.     Monsanto denies the allegations in paragraph 92.

93.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 93 regarding plaintiff's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 93, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in the first and last sentences of paragraph 95. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 95 and therefore denies those allegations.

96.     Monsanto incorporates by reference its responses to paragraphs 1 through 95 in response to paragraph 96 of plaintiff's Complaint.

97.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 97 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 97.

98.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 98 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 98 set forth conclusions of law for which no response is required.

99.     Monsanto denies the allegations in the first sentence of paragraph 99. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 99 concerning plaintiff's claimed purchase

of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 99 set forth a conclusion of law for which no response is required.

100.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 100 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 100 regarding Monsanto's implied warranty sets forth a conclusion of law for which no response is required.

101.    In response to the allegations in paragraph 101, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 101 regarding plaintiff's knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 101.

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto incorporates by reference its responses to paragraphs 1 through 104 in response to paragraph 105 of plaintiff's Complaint.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto denies the allegations in the first sentence of paragraph 107. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 107 and therefore denies those allegations.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 109 and therefore denies those allegations.

110.    Monsanto incorporates by reference its responses to paragraphs 1 through 109 in response to paragraph 110 of plaintiff's Complaint.

111.    Monsanto denies the allegations in paragraph 111.

112.    In response to the allegations in paragraph 112, Monsanto denies that plaintiff is entitled to punitive damages. The remaining allegations in paragraph 112, including the allegations in footnote 16, set forth conclusions of law for which no response is required.

113.    The allegations in paragraph 113 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies that the jury verdicts addressed in paragraph 113 were warranted by the facts and applicable law and states that Monsanto is challenging those verdicts on appeal.

114.    In response to the allegations in paragraph 114, Monsanto denies that plaintiff is entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. Monsanto demands that judgment be entered in its favor and against plaintiff and that the Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper. The allegations in the last two sentences in paragraph 114 set forth conclusions of law for which no response is required.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.    The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.    Plaintiff's claims are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.    Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

4.    Plaintiff's claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions

and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

6.     Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.     Plaintiff's claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

8.     Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.    Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.    The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims in whole or in part.

12.    Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff. If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.     Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Ohio Constitution, and/or other applicable state constitutions.

19.     Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Ohio law and/or other applicable state laws.

20.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law, including Ohio Rev. Code Ann. § 2315.21.

21.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

23.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

24.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

25.     If plaintiff has been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

26.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

27.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

28.     Plaintiff's common law claims are barred, in whole or part, by application of the Ohio Products Liability Act, Ohio Rev. Code Ann. §§ 2307.71-2307.80.

29.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

1

## JURY TRIAL DEMAND

2      Monsanto demands a jury trial on all issues so triable.

3

4    DATED:  March 10, 2021                Respectfully submitted,

5

                                          /s/ Joe G. Hollingsworth
6                                         Joe G. Hollingsworth (*pro hac vice*)
                                          (jhollingsworth@hollingsworthllp.com)
7                                         Eric G. Lasker (*pro hac vice*)
                                          (elasker@hollingsworthllp.com)
8                                         HOLLINGSWORTH LLP
                                          1350 I Street, N.W.
9                                         Washington, DC 20005
                                          Telephone:   (202) 898-5800
10                                        Facsimile:    (202) 682-1639

11                                        *Attorneys for Defendant*
                                          *MONSANTO COMPANY*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-01045-VC