**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 <br> Case No. 3:16-md-02741-VC |
| This document relates to: <br><br> *Pecorelli v. Monsanto Co.*, 3:16-cv-06936-VC | **MONSANTO COMPANY'S SUMMARY JUDGMENT MOTION ON STATUTE OF LIMITATIONS AND PROXIMATE CAUSATION GROUNDS** <br><br> Hearing Date: May 28, 2021 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on May 28, 2021, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion for Summary Judgment on Statute of Limitations and Causation Grounds. Monsanto seeks an order entering summary judgment in its favor on all claims brought by Mark Pecorelli ("Plaintiff"), individually as the representative of the Estate of his father Michael Pecorelli ("Decedent") (collectively "Plaintiffs").

DATED: March 18, 2021

                                              Respectfully submitted,

                                              */s/ Michael X. Imbroscio*

                                              Michael X. Imbroscio (*pro hac vice*)
                                              (mimbroscio@cov.com)
                                              One City Center
                                              850 10th St. NW
                                              Washington, DC 20001
                                              Tel: 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

Based on Plaintiff's own words, the limitations period for his claims ran over a decade ago. Plaintiff testified that both he and Decedent believed in 2004 that Decedent's Non-Hodgkin's Lymphoma ("NHL") was allegedly caused by Decedent's use of Roundup®-branded products ("Roundup"). Despite this knowledge, Plaintiff did not bring this action until twelve years later in 2016. As a result, all of Plaintiff's claims are time-barred and Monsanto is entitled to summary judgment. Monsanto is also entitled to summary judgment on Plaintiff's wrongful death claim because Plaintiff has no admissible evidence that Decedent's death was caused by exposure to Roundup or resulted from his NHL; rather, the evidence is that Decedent's death was caused by Malignant Fibrous Histiocytoma ("MFH"), an unrelated cancer located in his lungs.

I.  **BACKGROUND**

Plaintiff Mark Pecorelli filed his Complaint, individually and as the representative of the Estate of his father, Decedent Michael Pecorelli, on November 10, 2016. Plaintiff claims that Decedent's use of Roundup caused Decedent to develop NHL. *See* Complaint (ECF #1) ¶ 8.

Decedent was diagnosed with NHL in or around July 20, 2004. *Id.* ¶ 124. Decedent also stopped using Roundup around 2004. *See* Declaration of Michael Imbroscio (March 18, 2021) ("Imbroscio Decl."), Ex. 1, Deposition of Mark Pecorelli at 196:5-24 ("Pecorelli Dep."). Decedent passed away on March 28, 2012. Compl. ¶ 124.

Plaintiff testified that Decedent told him he thought his Roundup use caused his NHL:

Q: Did your father before he passed away, did he ever have the belief that his non-Hodgkin's lymphoma was caused by glyphosate or Roundup?

A: I think so, yes.

Q: You think so?

A: Yes.

Q: Did he express that to you?

A: Yes, yes. For me to stop using it.

Q: He asked you to stop using it?

A: Yeah. He said - - yes.

Q: Okay. What did he say?

- 1 -
MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
AND PROXIMATE CAUSATION GROUNDS, 3:16-CV-06936

| | | |
|---|---|---|
| 1 | A: | Just what he said. "Don't be using any more chemicals." |
| 2 | Q: | Did he say why? |
| 3 | A: | They're bad. |
| 4 | Q: | So, did he say "Don't be using any more chemicals" or did he refer to Roundup? |
| 5 | A: | Specifically the Roundup. |
| 6 | Q: | He asked you to stop using it? |
| 7 | A: | Yeah. He said - - yes. |

Imbroscio Decl., Ex. 1, Pecorelli Dep. at 291:7-24. Plaintiff testified that this conversation took place in 2004, after Decedent was diagnosed with NHL. *Id.* at 292:1-10. Further, Plaintiff testified that Decedent's doctor told him that Decedent's use of Roundup may be linked with NHL. *Id.* at 290:1-8 ("Q. You don't recall any physician ever telling you a cause of your father's non-Hodgkin's lymphoma? A. Just said there was possibilities of chemical use of Roundup."); *see also id.* at 307:23-308:9. Plaintiff remembered this conversation occurring before Decedent's death in 2012. *Id.* at 311:23-312:4.

Although Plaintiff alleges that Decedent's death was caused by NHL (which he alleges was caused by Roundup exposure), Compl. ¶ 124, the undisputed evidence establishes that Decedent died of an unrelated cancer in his lungs. In his lifetime, Decedent developed two distinct types of cancer: (1) splenic marginal zone lymphoma (SMZL), a type of NHL, and (2) MFH, a type of soft tissue sarcoma that developed in his lungs. Imbroscio Decl., Ex. 2, Leibach Dep. at 43:11-24. Decedent was a lifelong smoker, *see* Imbroscio Decl., Ex. 1, Pecorelli Dep. at 301:6-19, and Decedent's son, the Plaintiff in this case, has a history of lung cancer, *see* Imbroscio Decl., Ex. 3, *Pecorelli* Plaintiff Fact Sheet at 6. Decedent's NHL was in complete remission in 2010, Imbroscio Decl., Ex. 2, Leibach Dep. at 59:15-24, and there was no observable evidence of NHL at the time of his death more than two years later. *Id.* at 44:22-45:8. Conversely, Decedent refused recommended treatment for his MFH, and as a result, it continued to worsen in the years preceding his death. *Id.* at 45:22-46:7. Specifically, Decedent's treating physician recommended that he take certain pulmonary medications for his lung, but Decedent declined. *Id.* Decedent's denial of his MFH and refusal to seek treatment

tragically led to his death, as indicated on his death certificate, which lists MFH as the sole cause of death.  Imbroscio Decl., Ex. 2, Leibach Dep. at 50:13-15; Imbroscio Decl., Ex. 4, Pecorelli Death Certificate (Exhibit 5 to Leibach Dep.).

Plaintiffs' experts have not testified to the contrary.  Dr. Pinter-Brown, an oncologist retained by Plaintiff, agreed that NHL was not the cause of Decedent's death, and testified that Decedent's cause of death was "most likely his sarcoma," Imbroscio Decl., Ex. 5, Pinter-Brown (*Pecorelli*) Dep. at 23:25-24:05.  For his part, Dr. Weisenburger, disclosed by Plaintiff as both a specific and general causation expert, testified that he could not "say that his [NHL] was any more of, or a greater contributor, to his death, in [Dr. Weisenburger's] opinion, than his [MFH]."  Imbroscio Decl., Ex. 6, Weisenburger (*Pecorelli*) Dep. at 113:21-25.

## II.   LEGAL STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A defendant can show its entitlement to summary judgment by particularly citing "materials in the record, including depositions," that "establish the absence" of a genuine, material factual dispute.  FED. R. CIV. P. 56(c)(1).  Further, "[s]ummary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 332 (9th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Additionally, all expert opinions must survive *Daubert* and Federal Rule of Evidence 702 to be admissible.  Under *Daubert* and Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  In other words, an expert must be qualified and must offer testimony that is both relevant and reliable.  *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

### III. ARGUMENT

Plaintiff, on behalf of the Decedent, asserts four survival causes of action against Monsanto: Negligence (Count I), Strict Products Liability – Design Defect (Count II), Strict Products Liability – Failure to Warn (Count III), and Breach of Implied Warranties (Count IV). *See generally* Compl. ¶¶ 133-196. All four of these survival claims fail because the limitations periods have run. Additionally, Plaintiff's wrongful death claim, seeking damages on his personal behalf, fails because the two-year statute of limitations for that claim also has run.[1] Plaintiff's wrongful death claim also fails for the separate reason that he does not have evidence establishing that Decedent's death was caused by NHL as opposed to MFH.

### A. The Negligence, Strict Liability, and Wrongful Death Claims Are Barred by the Statute of Limitations.

Under Illinois law, "the statutes of limitation for personal injury and product liability claims require that such lawsuits generally be commenced within two years of the date on which the cause of action accrued." *Lowe v. Ford Motor Co.*, 730 N.E.2d 58, 60 (Ill. Ct. App. 2000) (citing 735 ILCS 5/13–202). The limitations period begins to run when "the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630–31 (Ill. 1994); *see also Steidinger v. Stryker Corp.*, 8:11-CV-01842 R(SSX), 2012 WL 13020148, at *4 (C.D. Cal. Apr. 19, 2012) (applying Illinois law). Both of these elements are met here because Plaintiff and Decedent knew of Decedent's injury (NHL) in 2004 and reasonably should have made the alleged connection between the Decedent's use of Roundup and his NHL.

*1. Plaintiff knew of the Decedent's injury in 2004, when he was diagnosed with NHL.*

A plaintiff is aware of an injury when formally diagnosed with the disease. *See Solis v. BASF Corp.*, 979 N.E.2d 419, 431 (Ill. Ct. App. 2012). Here, Decedent's doctors informed him of his NHL diagnosis in the summer of 2004. Compl. ¶ 124.

---

[1] The four survival claims follow the limitations period on the underlying claim, while the wrongful death claims is subject to a separate two-year limitation period from the date of death. 735 ILCS 5/13-209(a)(1), 740 ILCS 180/2(d), (e).

- 4 -

> 2. *Plaintiff developed a reasonable belief that Decedent's NHL was caused by exposure to Roundup in 2004.*

Under the discovery rule, "the limitations period begins to run from the date a person knows or reasonably should know of the injury and that it was wrongfully caused." *Edwards v. Regis Corp.*, No. 10-1011, 2011 WL 777271, at *4 (C.D. Ill. Feb. 25, 2011). "The critical inquiry when applying the discovery rule is whether and when the plaintiff develops 'a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue.'" *Shrock v. Ungaretti & Harris Ltd.*, 143 N.E.3d 904, 911 (Ill. Ct. App. 2019), appeal denied, 140 N.E.3d 242 (Ill. 2020) (quoting *Dancor Intern., Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 622 (Ill. 1997)). "[S]ignificantly, it does not matter whether the plaintiff knows or suspects who the wrongdoer actually is." *Id.* "Knowledge that an injury has been wrongfully caused 'does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action.'" *Janousek v. Katten Muchin Rosenman LLP*, 44 N.E.3d 501, 505 (Ill. App. 1st Dist. 2015) (quoting *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. 1st Dist. 2004)).

Plaintiff had a reasonable belief that Decedent's NHL was allegedly caused by Roundup in 2004. Plaintiff testified that his father told him in 2004 that he thought his Roundup use caused his NHL. *See* Imbroscio Decl., Ex. 1, Pecorelli Dep. at 291:7-24. Decedent felt strongly enough about this connection that he cautioned his son, Plaintiff, not to use Roundup. *Id.* Plaintiff also testified that, before Decedent's death in 2012, a doctor told him that Decedent's NHL may have been caused by Roundup use. *Id.* at 290:1-8, 307:23-308:9.

Thus, by 2004—or 2012 at the very latest—Plaintiff and Decedent knew of Decedent's injury and, according to Plaintiff's own testimony, had a reasonable belief that it was caused by exposure to Roundup, therefore triggering the two-year limitations period. Plaintiff, however, did not file his action until 2016, long after the limitations period for personal injury and product liability claims had expired. Therefore, Plaintiff's negligence and strict liability claims (Counts I-III) should be dismissed as time barred.

The wrongful death claim is also time-barred. Under Illinois law, wrongful death claims must be brought within two years of the decedent's death. 740. ILCS 180/2. While the discovery rule applies to wrongful death claims, such claims must be brought within two years after the representative of the estate knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Eisenmann v. Cantor Bros.*, 567 F. Supp. 1347, 1355 (N.D. Ill. 1983).

Here, Plaintiff's wrongful death claim is time barred because he knew about the alleged connection between Decedent's NHL and Roundup prior to Decedent's death in 2012. As discussed above, Plaintiff had a conversation with Decedent in 2004 about the connection between Decedent's use of Roundup and his NHL. Imbroscio Decl. Ex. 1, Pecorelli Dep. at 291:7-24. Plaintiff was further told by Decedent's doctor by at least 2012 that there may be a connection between Roundup and NHL. *Id.* at 290:1-8, 307:23-308:9. Thus, the two-year limitations period began to run at the time of Decedent's death in 2012. Since Plaintiff did not file his Complaint until 2016, his wrongful death claim is thus barred.

**B.     The Warranty Claim Is Barred by the Applicable Four-Year Statute of Limitations.**

Plaintiff's claim on behalf of Decedent for breach of implied warranty (Count IV) is subject to a four-year statute of limitations. *See* 810 ILCS 5/2–725; *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550, 554 (Ill. 1974) (implied warranty). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and "[a] breach of warranty occurs when tender of delivery is made." 810 ILCS 5/2–725(2). "Illinois courts have strictly construed this provision in just this manner." *Hagen v. Richardson-Merrell, Inc.*, 697 F. Supp. 334, 341 (N.D. Ill. 1988) (collecting cases). And "[t]he language of the statute, as interpreted by the courts of [Illinois], clearly proscribes the application of the discovery rule in breach of warranty cases." *Nelligan v. Tom Chaney Motors, Inc.,* 479 N.E.2d 439, 442 (Ill. App. 2d Dist. 1985).

Decedent last used Roundup in approximately 2004. Imbroscio Decl., Ex. 1, Pecorelli Dep. at 196:5-24. Therefore, Decedent's last purchase of Roundup was in 2004 or earlier. The complaint

1  was filed in 2016, approximately twelve years after the date of the last purchase. Thus, Decedent's
2  warranty claims are time barred.

3        **D.    The Undisputed Evidence Establishes that Decedent Died of MFH, and Plaintiff**
4                **has Submitted No Admissible Evidence to the Contrary.**

5        To survive summary judgment on his wrongful death claim, Plaintiff must identify at least
6  some admissible evidence of causation—*i.e.*, that Roundup caused his father's death. *See, e.g.*,
7  *Leavitt v. Farwell Tower Ltd. Partnership*, 625 N.E.2d 48, 52 (Ill. Ct. App. 1993) (granting summary
8  judgment for defendants on wrongful death claim where plaintiff did not produce admissible evidence
9  of causation). Here the undisputed evidence establishes that Decedent died of MFH, not NHL.
10 Decedent's NHL was in remission at the time he was diagnosed with MFH, Imbroscio Decl., Ex. 2,
11 Leibach Dep. at 41:19-42:5, and there was no observable evidence of NHL at the time of his death,
12 *id.* at 44:22-45:8. Given Decedent's refusal to receive treatment for his MFH, there is no real dispute
13 that it caused his death. The testimony of his treating physician confirms as much. *See, e.g.*, *id.* at
14 45:22-46:7, 50:13-15. And if there were any doubt, Decedent's death certificate lists his cause of
15 death as MFH. *See* Imbroscio Decl., Ex. 4, Pecorelli Death Certificate. NHL is not mentioned
16 anywhere on Decedent's death certificate. *Id.*

17       Plaintiff has proffered no evidence to the contrary. Plaintiff has presented no admissible
18 expert testimony that, to a reasonable degree of medical probability: (1) his father's Roundup
19 exposure caused MFH/sarcoma; (2) his father's NHL caused MFH; or (3) that his treatment for NHL
20 caused MFH. As set forth below, Dr. Pinter-Brown agrees that Decedent's NHL did not contribute
21 to his death, and has disclaimed any opinion that Decedent's NHL and MFH are related. And
22 although Dr. Weisenburger has speculated that Decedent's NHL contributed to his death, he has no
23 reliable—or admissible—basis for that opinion, and like Dr. Pinter-Brown has disclaimed any opinion
24 that Decedent's NHL and MFH were related.

25       **Dr. Pinter-Brown.** In her expert report, Dr. Pinter-Brown did not opine that Decedent's NHL
26 or treatment was related to his development of his MFH. In fact, Dr. Pinter-Brown testified she would
27 ***not be offering an opinion that Roundup caused or contributed to his MFH***. Imbroscio Decl., Ex.
28

5, Pinter-Brown (*Pecorelli*) Dep. at 70:11-18.  Moreover, she testified she did not know whether NHL and MFH are related, and agreed there was insufficient evidence for her to say that Decedent's NHL was a substantial contributing factor to his development of MFH.  *Id.* at 61:05-10, 61:23-62:4.  When asked to a reasonable degree of medical probability whether Decedent's radiation treatment caused him to develop MFH, Dr. Pinter-Brown said she thought it was "unlikely."  *Id.* at 67:08-13.  Dr. Pinter-Brown admitted that, although radiation treatment can cause MFH in certain circumstances, Decedent's radiation treatment was not likely a cause of Decedent's MFH because (1) his MFH biopsied in the lung was not within the radiation field, and (2) the short time between his radiation therapy for his NHL and when he developed MFH was not consistent with radiation causing his MFH.  *Id.* at 31:11-32:2, 34:02-35:1.  Radiation-induced MFH takes a minimum of "several years"—normally more than five years—to develop, but Decedent's MFH was diagnosed in his lung just five months after his radiation therapy, and he had a lung mass identifiable on a PET/CT scan only one- to-two months after his radiation treatment.  *Id.* at 32:14-23, 38:07-17, 44:07-14, 64:03-14.

**Dr. Weisenburger.**  Dr. Weisenburger agreed that MFH was "a different cancer than [NHL]." Imbroscio Decl., Ex. 6, Weisenburger (*Pecorelli*) Dep. at 39:16-40:5.  And Dr. Weisenburger testified that he was "not going to tell the jury that Roundup caused [Decedent's MFH] in his lungs," "that Roundup contributed to [Decedent's MFH]" in any way, or even that " [Decedent's NHL] was a contributing factor to [Decedent's MFH]."  *Id.* at 44:02-11.  Although he opined that Decedent's NHL contributed to his death, Dr. Weisenburger admitted that he could not "say that [Decedent's NHL] was any more of, or a greater contributor, to his death . . . than his [MFH]."  *Id.* at 113:21-25.  Dr. Weisenburger's claim that Decedent's NHL contributed to his death is simply his *ipse dixit*, and is not admissible under Rule 702—particularly in light of all the evidence to the contrary, including *the testimony of Plaintiff's other expert*.  *See, e.g.*, *In re Mirena Ius Levonorgestrel-Related Products Liability Litigation (No. II)*, 341 F.Supp.3d 213, 241 (S.D.N.Y., 2018) ("'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered' to permit admission").

The record evidence, Decedent's treating physician, and Plaintiff's own expert all agree that Decedent's death was caused by MFH, not NHL. Plaintiff has not identified admissible evidence that Decedent's death was caused by NHL, an essential element of his wrongful death claim. Therefore, Monsanto is entitled to summary judgment on Plaintiff's wrongful death claim on the grounds that Plaintiff has no admissible evidence to prove the element of causation. As a result, at any trial in this matter, whether a wrongful death claim exists or not, Dr. Weisenburger and Dr. Pinter-Brown should be barred from offering any opinion that (1) Decedent's Roundup exposure caused his MFH/sarcoma; (2) Decedent's NHL caused his MFH; (3) Decedent's treatment for NHL caused MFH, or (4) Decedent's death had anything to do with his prior diagnosis of NHL.

## CONCLUSION

For the foregoing reasons, all claims are time barred and Monsanto is entitled to summary judgment.

DATED: March 18, 2021

By:    */s/ Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorney for Defendant Monsanto Company

- 10 -
MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
AND PROXIMATE CAUSATION GROUNDS, 3:16-CV-06936

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of March, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

___/s/ Michael X. Imbroscio_____