| | |
|---|---|
| **WILKINSON STEKLOFF LLP** <br> Brian L. Stekloff (*pro hac vice*) <br> (bstekloff@wilkinsonstekloff.com) <br> Rakesh Kilaru (*pro hac vice*) <br> (rkilaru@wilkinsonstekloff.com) <br> 2001 M St. NW <br> 10th Floor <br> Washington, DC 20036 <br> Tel:    202-847-4030 <br> Fax:   202-847-4005 | **COVINGTON & BURLING LLP** <br> Michael X. Imbroscio (*pro hac vice*) <br> (mimbroscio@cov.com) <br> One City Center <br> 850 10th St. NW <br> Washington, DC 20001 <br> Tel: 202-662-6000 |

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION <br><br> *Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC <br> *Karman v. Monsanto Co.*, 3:19-cv-01183-VC <br> *Pecorelli v. Monsanto Co.,* 3:16-cv-06936-VC <br> *Peterson v. Monsanto Co.*, 3:18-cv-07271-VC <br> *Schafer v. Monsanto Co.*, 3:19-cv-02169 | MDL No. 2741 <br><br> Case No.: 3:16-md-02741-VC <br><br> **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE SPECIFIC CAUSATION TESTIMONY OF DR. DENNIS WEISENBURGER** <br><br> Hearing date: May 28, 2021 <br> Time: |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on May 28, 2021, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude the Specific Causation Testimony of Dr. Dennis Weisenburger.  Monsanto seeks an order excluding opinion of this witness under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

DATED:  March 18, 2021

              Respectfully submitted,

              /s/ Michael X. Imbroscio

              Michael X. Imbroscio (*pro hac vice*)
              (mimbroscio@cov.com)
              One City Center
              850 10th St. NW
              Washington, DC 20001
              Tel: 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

# INTRODUCTION

As before, Dr. Dennis Weisenburger has presented differential "etiologies"[1] to support his opinions that Roundup®-branded products ("Roundup") caused five Plaintiffs' NHL: Gerard Cervantes, Robert Karman, James Peterson, Michael Pecorelli, and John Schafer. All five Plaintiffs have disclosed Dr. Weisenburger as both a general and specific causation expert. For all the reasons Monsanto previously asserted—including his "ruling in" of Roundup based on flawed studies that do not apply to the specific subtypes these Plaintiffs have and his failure to account for the fact that the majority of NHL cases have no known cause—Dr. Weisenburger's specific causation opinions are faulty, unreliable, and barred under Rule 702 and *Daubert*. Dr. Weisenburger's opinions in Wave 2, however, are even more flawed than those this Court previously considered. Because it is inconsistent with his desired result in this case, Dr. Weisenburger ignores a known risk factor for NHL, welding, that his own research establishes has a far higher risk ratio than glyphosate per the studies on which he relies. At the same time, Dr. Weisenburger dismisses or ignores other possible causes with no analysis, even though one of the Plaintiffs previously asserted in court that this other exposure caused his NHL. And Dr. Weisenburger continues to opine, in violation of Pre-Trial Order 85 ("PTO 85"), that an individual's risk of NHL doubles if they use Roundup for greater than two days per year or 10 days in their lifetime.

Accordingly, Monsanto hereby moves to exclude the specific causation opinions of Dr. Weisenburger on Rule 702 grounds and for summary judgment on causation grounds in the above-captioned cases.

**I.     Dr. Weisenburger's Testimony in the Wave 2 Cases Confirms that His Unreliable Opinions Should be Excluded.**

   **A.     Dr. Weisenburger Ignored His Own Research and Failed to Follow His Own Stated Methodology.**

Dr. Weisenburger's "always Roundup" approach to specific causation is best exemplified by

---

[1] As explained in Monsanto's Motion to Exclude Drs. Boyd, Pinter-Brown, and Schiff, the "differential etiology" employed by Plaintiffs' experts was invented solely for litigation, and is not used in medical practice. *See* Monsanto's Motion to Exclude Testimony of Plaintiffs' Experts Barry Boyd, Lauren Pinter-Brown, and Ron Schiff at 8-9.

his treatment of Plaintiff Gerard Cervantes' increased risk of developing NHL due to his career as a welder.[2]  At first, Dr. Weisenburger testified that he did not factor Mr. Cervantes' history of welding into his opinion, claiming at his deposition that he did not consider welding to be a risk factor for NHL.  *See* Declaration of Michael Imbroscio (March 19, 2021) ("Imbroscio Decl."), Ex. 1, Weisenburger (*Cervantes*) Dep. at 51:18-19 ("I don't believe welding is a risk factor for non-Hodgkin lymphoma"); *see also id.* at 51:13-52:18, 83:6-84:1.  While he initially denied having done any research on an association between welding and NHL,[3] when shown a study ***that he had co-authored***, Dr. Weisenburger ***agreed that it found statistically significant increased risks of NHL among welders***.  *Id.* at 79:19-81:15; Imbroscio Decl., Ex. 2, Zheng et al., *Occupation and Risk of Non-Hodgkin's Lymphoma and Chronic Lymphocytic Leukemia*, 44 J. Occupational & Environmental Med. 469 (2002).  In fact, Dr. Weisenburger's study showed a *higher* risk of NHL associated with welding than the studies he purports to rely on showed for glyphosate.  Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 81:3-6 ("So ***you found in your study that welders had a 2.9-fold increased risk*** that was statistically significant for non-Hodgkin lymphomas; right?  A.  ***Yes.***") (emphasis added); *see also id.* at 81:10-15 ("And for diffuse large B-cell lymphoma like Mr. Cervantes had, you actually found a 3.4-fold increase risk for welders and solderers; right?  A.  Yes."). And Dr. Weisenburger has previously claimed that he primarily relies on odds ratios from epidemiology studies to assess causation.  *See* Imbroscio Decl., Ex. 3, Weisenburger (*Evans*) Dep. at 38:2-39:8 ("Q.  So other than looking at the epidemiology and the relevant risks or the odds ratios, is there any other test or method or procedure that you can use to identify or assess the degree to which any given risk factor contributed to a patient's non-Hodgkin lymphoma?  A.  Well, not -- not that I could think of at the moment, no.").

The most profound signal of unreliability under a Rule 702 analysis is an expert's failure to

---

[2] The Wave 2 Plaintiffs' risk factors and exposure allegations are discussed in greater detail in Monsanto's Motion to Exclude Testimony of Plaintiffs' Experts Barry Boyd, Lauren Pinter-Brown, and Ron Schiff.

[3] In particular, he did not review the IARC analysis suggesting that welders face an increased risk of cancer or the underlying studies IARC reviewed.  *See* Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 82:23-83:5.

follow his own stated methodology, as Dr. Weisenburger failed to do here.  *In re Mirena Ius Levonorgestrel-Related Products Liability Litigation (No. II)*, 341 F.Supp.3d 213, 242 (S.D.N.Y., 2018) ("Where an expert ignores evidence that is highly relevant to his conclusion, contrary to his own stated methodology, exclusion of the expert's testimony is warranted.").  Dr. Weisenburger belatedly claimed at his deposition that he "obviously" ruled out welding as a contributing factor to Mr. Cervantes' NHL, Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 83:10-84:1, but this last-minute attempt to salvage his opinion cannot be reconciled with a reliable method in light of (1) his original (but incorrect) statement that he had "not done any research on that topic," *id.* at 79:22, and (2) his own published article that contradicts such statement as well as his litigation-driven conclusions.  S*ee Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (an expert's methodology must reflect "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").  Dr. Weisenburger's testimony confirms that, contrary to his own research, he had not even considered welding as a risk factor prior to his deposition, much less ruled it out as a potential cause.  His testimony in *Cervantes* should be excluded on this basis alone, and is indicative of his unscientific, litigation-driven approach to specific causation more broadly.

  **B.**  **Dr. Weisenburger's Testimony in All of the Wave 2 Cases Confirms that His Consideration of Alternative Causes Is Unscientific and Unreliable.**

Dr. Weisenburger has not seriously considered potential alternative causes in any of the Wave 2 cases.  This is not the same methodology the Court concluded "barely inched over the line" in its prior ruling regarding Dr. Weisenburger.  *See* PTO 85 at 1.  In that circumstance, the Court emphasized that Dr. Weisenburger's "core opinion[]" was that "plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude it was a substantial factor in causing their NHL."  *Id.* at 6.  That has not been Dr. Weisenburger's testimony in the Wave 2 cases.  Instead, he brushes off any potential alternative causes without meaningful analysis, or in some cases without even sufficient information with which to conduct a scientific analysis.  Such testimony is not consistent with the Court's prior ruling and cannot survive Rule 702 scrutiny.  Specific problems with Dr. Weisenburger's failure to consider alternative causes are noted below.

Dr. Weisenburger dismissed **Gerard Cervantes**' occupational exposure to other chemicals

- 3 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. DENNIS WEISENBURGER
3:16-MD-02741-VC

despite admitting that he had no scientific basis to do so. For example, Dr. Weisenburger testified that Mr. Cervantes' exposures to PCB and Benzene were not contributing causes to his NHL despite admitting that he did not know, and had no evidence of, the amount of Mr. Cervantes' exposure to these chemicals. *See* Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 74:8-16 ("Do you know how much PCB exposure Mr. Cervantes had at the Nicor facility? A. No; but it's likely it was very small because nothing was detected in these tests done by the company. Q. So in what detail did you discuss the tests that the company allegedly did related to PCBs at their facility? A. Well, ***I asked him what the company tested for and he didn't really know.***") (emphasis added); *see also id.* at 61:18-62:13, 66:22-67:17, 74:17-76:12.[4] Dr. Weisenburger further admitted that he did not know the degree to which Mr. Cervantes' PCB and benzene exposure increased his risk of NHL, but conceded that, in his opinion, both substances could do so provided Mr. Cervantes had sufficient exposure. *Id.* at 65:17-20 ("So you agree that Mr. Cervantes's exposures to benzene or PCBs could have contributed to his risk of non-Hodgkin lymphoma; is that right? A. Well, yes, if he'd had a significant exposure.").[5]

Dr. Weisenburger similarly did not consider whether methylene chloride could have caused Mr. Cervantes' NHL, even though Mr. Cervantes himself alleged that his NHL was caused by a methylene chloride leak into his drinking water in a 2004 class action lawsuit. *Id.* at 71:18-73:3, 76:13-77:11. Instead, Dr. Weisenburger admitted that while methylene chloride *does increase the risk of NHL*, he was not aware of—and thus did not consider—Mr. Cervantes' exposure to it or his

---

[4] While Monsanto's position is that there is no association between PCBs and NHL, Dr. Schiff—also disclosed as an expert by Mr. Cervantes—has testified that PCBs are an "across the board" risk factor for NHL. *See* Imbroscio Decl., Ex. 4, Schiff (*Cervantes*) Dep. at 19:6-16. Dr. Weisenburger's failure to meaningfully consider or investigate this exposure, particularly in light of Dr. Schiff's opinions, only underscores that his "consideration" of alternative causes is a box-checking exercise to arrive at the pre-determined conclusion that Roundup was the cause.

[5] Further, Dr. Weisenburger's claim that Mr. Cervantes' exposure to benzene and PCBs was not "significant," Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 65:21, based on Mr. Cervantes' employer's monitoring of chemicals in accordance with OSHA standards, is belied by his admissions that: (1) he was not aware of the specific allowable exposures as defined by OSHA during Mr. Cervantes' employment, *id.* at 62:14-63:11; (2) he did not know if occupational exposure to these chemicals at OSHA's allowable levels increased Mr. Cervantes' risk of NHL, *id.* at 62:19-63:16; and (3) he had not reviewed any literature regarding benzene or PCBs in forming his opinions in this case, *id.* at 65:8-13, 70:25-71:17.

levels of exposure. *Id.* at 76:22-77:3 ("Q. Okay. Do you know if methylene chloride increases the risk of non-Hodgkin lymphoma? A. I believe it does. Q. And were you aware that Mr. Cervantes claimed that he was exposed to methylene chloride in contaminated drinking water at Nicor Gas Company? A. I wasn't aware of that, no.").

Dr. Weisenburger further acknowledged that Mr. Cervantes' family history of cancer, including that his mother died of NHL, was a substantial risk factor for developing NHL. *Id.* at 27:15-22, 32:6-13. In fact, Dr. Weisenburger ultimately concluded that *both* Roundup and Mr. Cervantes' family history were substantial contributing factors to Plaintiff's NHL. *Id.* at 26:20-27:14. But Dr. Weisenburger admitted that he has no data to support that conclusion, instead claiming that his opinion that both Roundup and Mr. Cervantes' family history (as opposed to family history alone) were substantial causes was "just common sense." *Id.* at 29:8-20 (". . . They don't exclude each other; they're additive. Q. Well, how do you know they're additive? A. **Well, it's just common sense** . . . Q. Are there any studies showing that? A. Not that I know of. It's -- you know, I think it -- it's accepted epidemiologic principle. Q. Can you cite anything for that epidemiologic principle? A. Not off the top of my head.") (emphasis added). Dr. Weisenburger likewise admitted that Mr. Cervantes' weight was a potential alternative cause, but brushed this aside as a "minor" risk factor despite admitting that he had no specific support for that conclusion either. *Id.* at 40:7-41:14. Indeed, Dr. Weisenburger admitted that Mr. Cervantes could have developed NHL solely due to his family history or weight without Roundup playing any role whatsoever. *Id.* at 43:4-22. His conclusion that Roundup was a substantial contributing factor in combination with Mr. Cervantes' family history is simply Dr. Weisenburger's *ipse dixit*. *Id.* ("[I]s there any scientifically validated way that you could show that those independent risk factors didn't act alone, as opposed to in combination with Roundup exposure? A. No. It's my -- it's opinion, based on my medical and scientific training."); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

With respect to **Robert Karman**, Dr. Weisenburger testified that he did not consider Mr.

1  Karman's 30-year smoking history to be a risk factor, Imbroscio Decl., Ex. 5, Weisenburger (*Karman*)
2  Dep. at 83:1-9, even though Dr. Schiff, the other specific causation expert disclosed for Mr. Karman,
3  opined that smoking is a risk factor for NHL, *see, e.g.*, Imbroscio Decl., Ex. 6, Schiff (*Karman*) Dep.
4  at 111:23-112:5.  Dr. Weisenburger also did not consider Mr. Karman's exposure to Spectracide[6] on
5  the grounds that it was too infrequent to warrant analysis, despite admitting that (1) he did not know
6  what the chemical composition of Spectracide was, Imbroscio Decl., Ex. 5, Weisenburger (*Karman*)
7  Dep. at 29:12-14, and (2) he just assumed Mr. Karman's exposure was less than 10 lifetime days, *id.*
8  at 30:3-14.  This exchange represents a recurring theme in Dr. Weisenburger's testimony: for facts
9  that help his opinions, he uncritically accepts them regardless of their basis; for facts that undermine
10 his opinion, he requires the most rigorous of empirical support or else dismisses them.  Dr.
11 Weisenburger's approach makes a mockery of the Rule 702 standards.

12 Dr. Weisenburger further conceded that Mr. Karman's age, gender, and race were all
13 recognized as risk factors, yet summarily decided that none of them were causal in this case.  *Id.* at
14 84:8-17, 85:11-23.  When asked how anyone would know if he was wrong about Roundup being a
15 substantial factor in Mr. Karman's NHL, Dr. Weisenburger replied "I don't know how you would
16 know." *Id.* at 91:11-12.

17 With respect to **James Peterson**, who had risk factors for NHL including weight and age (73
18 at the time of his diagnosis), Dr. Weisenburger similarly failed to explain how he concluded that
19 Roundup, and not one of these other risk factors, caused Mr. Peterson's NHL.  Imbroscio Decl., Ex.
20 7, Weisenburger (*Peterson*) Dep. at 69:24-70:2, 74:18-24.  And as with Mr. Karman, Dr.
21 Weisenburger testified that Mr. Peterson's 40-year smoking history did not increase his risk for NHL.
22 *Id.* at 46:9-17.  He also dismissed without any analysis (1) Mr. Peterson's exposure to Weed-B-Gon,[7]

---

[6] Monsanto does not take the position that Spectracide can cause NHL, but given that Dr. Weisenburger purports to investigate Plaintiffs' exposures to other chemicals as part of his methodology, *see, e.g.*, Imbroscio Decl., Ex. 8, Weisenburger (*Schafer*) Dep. at 53:10-18, Dr. Weisenburger's failure to even consider Mr. Karman's exposure to Spectracide or investigate its chemical composition shows that his opinions are unscientific and unreliable.

[7] Monsanto does not take the position that Weed-B-Gon can cause NHL, but as was the case with Spectracide, Dr. Weisenburger's failure to even consider this exposure without any analysis in light of his other opinions demonstrates that his causation analysis is unscientific and litigation-driven.

despite conceding that the active ingredient in that product had been linked to NHL by some studies, *id.* at 33:19-34:9, 43:19-24, 44:25-45:7, and (2) Mr. Peterson's exposure to chemicals used to develop his own film, *id.* at 31:17-22, 32:18-21, 32:22-33:4.

With respect to **Michael Pecorelli,** Dr. Weisenburger returned to his approach of inconsistent treatment of similarly-situated risk factors: he discounted Mr. Pecorelli's exposure to other chemicals, including Sevin, 2,4-D, Treflan and Surflan, solely on the basis of Mr. Pecorelli's son's testimony that Mr. Pecorelli's exposure to these chemicals was "rare." Imbroscio Decl., Ex. 9, Weisenburger (*Pecorelli*) Dep. at 95:19-97:9. He admitted that he did not have any precise information on the quantities of these chemicals to which Mr. Pecorelli was actually exposed. *Id.* at 99:5-12. But Dr. Weisenburger's treatment of these potential exposures as unimportant contrasts dramatically with his uncritical acceptance that exposure to glyphosate of more than only *2 days per year* doubles an individual's risk of developing NHL. *See infra* at 8. And Dr. Pinter-Brown, the other specific causation expert in Mr. Pecorelli's case, testified that she *did* consider these exposures to be a potential risk factor. *See* Imbroscio Decl., Ex. 10, Pinter-Brown (*Pecorelli*) Dep. at 87:15-24. As with Mr. Peterson and Mr. Karman, Dr. Weisenburger also testified that Mr. Pecorelli's 70-year smoking history was not a risk factor, in contradiction to Plaintiffs' other experts. Imbroscio Decl., Ex. 9, Weisenburger (*Pecorelli*) Dep. at 65:18-66:4.

Finally, with respect to **John Schafer**, Dr. Weisenburger acknowledged a study reporting a threefold increased risk in NHL from Hashimoto's thyroiditis, which Mr. Schafer has. Imbroscio Decl., Ex. 11, Weisenburger (*Schafer*) Dep. at 97:3-9. Dr. Weisenburger claimed that Hashimoto's only increases risk for thyroid cancers, but admitted that he did not know how many cases of NHL in the study were outside the thyroid. *Id.* at 97:21-98:4. Dr. Weisenburger also acknowledged that Mr. Schafer's weight was a contributing factor to his NHL, finding it increased his risk for NHL by "about [. . .] 27 percent," but characterized this nearly one-third increase in risk as "minor." *Id.* at 90:24-91:10.

**II. Dr. Weisenburger's Testimony Violates the Court's Prior Ruling, and Monsanto Preserves Its Arguments that Dr. Weisenburger's Specific Causation Opinions are Unreliable and Should be Excluded.**

Dr. Weisenburger continues to opine across the Wave 2 cases, in clear violation of PTO 85, that an individual's risk of NHL doubles if they use Roundup for greater than two days per year or 10 days in their lifetime. *See, e.g.,* Imbroscio Decl., Ex. 12, Weisenburger (*Pecorelli*) Report at 3 ("This would place [Mr. Peterson] in the high-risk category for the development of NHL (> 10 days of use, or > 2 days/year) ***with an approximately two-fold increased risk*** of NHL (1,2).") (emphasis added); Imbroscio Decl., Ex. 7, Weisenburger (*Peterson*) Dep. at 60:24-61:6. The Court has already excluded such testimony as unsupported and unreliable, and should do so again here. *See* PTO 85 at 8 ("Nor may Dr. Weisenburger testify that [plaintiff's] risk of developing NHL more than doubled because he used Roundup far more than the threshold of ten lifetime days set by the Eriksson and McDuffie Studies. Even putting aside the problems with unadjusted data, those studies simply do not support Dr. Weisenburger's assertion.").

Monsanto also preserves its prior arguments that Dr. Weisenburger's testimony is unreliable and should be excluded. Consistent with the Court's instructions not to re-litigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Monsanto hereby incorporates the following pleadings that were filed on the MDL docket related to Dr. Weisenburger:

- Monsanto Company's Motion to Exclude Testimony of Chadi Nabhan, Andrei Shustov, and Dennis Weisenburger on *Daubert* Grounds (ECF No. 2420)
- Monsanto's Reply in Support of Monsanto's Motion to Exclude Testimony of Chadi Nabhan, Andrei Shustov, and Dennis Weisenburger on *Daubert* Grounds (ECF No. 2525)
- The transcript of the February 13, 2019, hearing (ECF No. 2763);
- Monsanto Company's Motion for Directed Verdict (ECF No. 2975);
- Monsanto Company's Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 3976);
- Monsanto Company's Reply in Support of Motion for Judgment as a Matter of Law and

for a New Trial (ECF No. 4301).

Monsanto also incorporates the most recent science on glyphosate, including the scientific literature published since the above pleadings were submitted to the Court, attached to Monsanto's Motion to Exclude Plaintiffs' General Causation Experts ("General Causation Motion") as Exhibits 2-4, and the United States Environmental Protection Agency's Interim Registration Decision on glyphosate, attached to Monsanto's General Causation Motion as Exhibit 5.[8]

Finally, as Monsanto has noted in prior motions, *see, e.g.*, ECF. No. 2420, Dr. Weisenburger's testimony in the Wave 2 cases illustrates his continued failure to address idiopathy, even though he admits that the cause of most cases of NHL is unknown. In fact, his testimony confirmed that, for any Plaintiff that has been exposed to Roundup for more than two days per year or ten days in their lifetime, he *ignores* the possibility of an unknown cause altogether in favor of concluding that Roundup is always the cause. *See, e.g.*, Imbroscio Decl., Ex. 9, Weisenburger (*Pecorelli*) Dep. at 60:11-61:9 (when asked if he could state to a reasonable degree of medical certainty that Mr. Pecorelli would not have developed NHL if he had never used Roundup, Dr. Weisenburger responded that "it's more likely than not that it was glyphosate that was the cause of his non-Hodgkin's lymphoma, rather than attributing it to some unknown -- some unknown exposure -- or some idiopathic - you know, giving it -- giving it an idiopathic designation to his cancer. In medicine, we don't do that."); *see also* Imbroscio Decl., Ex. 8, Weisenburger (*Schafer*) Dep. at 27:13-17; Imbroscio Decl., Ex. 1, Weisenburger (*Cervantes*) Dep. at 37:19-23.

\*   \*   \*

Taken as a whole, Dr. Weisenburger's testimony in the Wave 2 cases confirms that he will *always* conclude that Roundup was a substantial cause of any plaintiff's NHL, as long as they used Roundup for more than 2 days per year or more than 10 days in their lifetime. He does not seriously consider whether any plaintiff's NHL could be idiopathic or could have been caused by other risk factors or other exposures. His treatment of potential alternative causes is thoroughly unscientific,

---

[8] By incorporating by reference its prior filings, Monsanto is in no way waiving any of the arguments raised therein.

unreliable, and conflicts with his own work outside of this litigation. For the reasons stated above, the Court should exclude the specific causation opinions of Dr. Weisenburger for all five Plaintiffs and grant summary judgment in Monsanto's favor because Plaintiffs have failed to establish the necessary element of specific causation using expert testimony, as required by Illinois and North Carolina law.[9]

Dated: March 18, 2021

By: */s/ Michael X. Imbroscio*

Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-60000

Attorney for Defendant Monsanto Company

---

[9] As explained in Monsanto's Motion to Exclude the Testimony of Drs. Boyd, Pinter-Brown, and Schiff, Plaintiffs' remaining specific causation experts' opinions similarly do not survive Rule 702 scrutiny.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of March, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                              */s/ Michael X. Imbroscio*