**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) |
| *Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC | ) |
| *Karman v. Monsanto Co.*, 3:19-cv-01183-VC | ) |
| *Pecorelli v. Monsanto Co.*, 3:16-cv-06936-VC | ) |
| *Peterson v. Monsanto Co.*, 3:18-cv-07271-VC | ) |
| *Rehak v. Monsanto Co.*, 3:19-cv-01719-VC | ) ) |
| *Schafer v. Monsanto Co.*, 3:19-cv-02169 | ) ) |

MDL No. 2741

Case No. 3:16-md-02741-VC

**MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: ILLINOIS WAVE 2 PLAINTIFFS ON ILLINOIS LAW GROUNDS**

Hearing date: May 28, 2021

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on May 28, 2021, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will move this Court for an order, pursuant to Federal Rule of Civil Procedure 56(c), entering judgment in its favor and against Wave 2 Plaintiffs Gerard Cervantes, Christine Karman, Mark Pecorelli (individually and as representative of the estate of his father, Michael Pecorelli), James Peterson, Lorraine Rehak, and John Schafer (collectively the "Illinois Plaintiffs"), on the grounds that there is no genuine issue of material fact as to any claim for relief brought by the Illinois Plaintiffs, and Defendant is entitled to summary judgment.

DATED:  March 19, 2021

Respectfully submitted,

/s/ *K. Lee Marshall*_____
K. Lee Marshall
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel:     415-675-3400
Fax: 415-675-3434
klmarshall@bclplaw.com

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

INTRODUCTION ............................................................................................................. 1

SUMMARY OF THE ILLINOIS PLAINTIFFS' CLAIMS ........................................... 3

SUMMARY JUDGMENT STANDARD ....................................................................... 3

ARGUMENT ................................................................................................................... 4

     I.     SUMMARY JUDGMENT IS REQUIRED BECAUSE THE ILLINOIS
             PLAINTIFFS LACK THE REQUIRED ADMISSIBLE EXPERT
             TESTIMONY ON CAUSATION. .................................................................... 4

     II.    THE DESIGN DEFECT CLAIMS SHOULD BE DISMISSED
             BECAUSE THEY ARE DUPLICATIVE OF THE INADEQUATE
             WARNING CLAIMS AND BECAUSE PLAINTIFFS CANNOT
             SATISFY THEIR EVIDENTIARY BURDEN. ....................................... 5

     III.   THE FAILURE TO WARN CLAIMS SHOULD BE DISMISSED
             BECAUSE MONSANTO HAD NO DUTY TO WARN OF
             ALLEGED CANCER RISKS AT THE TIME PLAINTIFFS
             PURCHASED THEIR PRODUCTS. ...................................................... 7

     IV.   THE BREACH OF IMPLIED WARRANTY CLAIMS SHOULD BE
             DISMISSED BECAUSE ROUNDUP WAS NOT UNREASONABLY
             DANGEROUS WHEN SOLD TO PLAINTIFFS. ................................. 9

     V.    PLAINTIFF CERVANTES' EXPRESS WARRANTY CLAIM
             SHOULD BE DISMISSED FOR LACK OF PRIVITY AND FOR
             FAILURE TO IDENTIFY THE PARTICULAR WARRANTY. ............ 9

     VI.   THE ILLINOIS PLAINTIFFS' CLAIMS FOR PUNITIVE
             DAMAGES FAIL AS A MATTER OF LAW ...................................... 11

     VII.  THE ILLINOIS PLAINTIFFS ARE NOT ENTITLED TO
             ATTORNEYS' FEES OR COSTS. ..................................................... 12

CONCLUSION ............................................................................................................... 12

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 3

6

*Aquino v. C.R. Bard, Inc.*,
    413 F. Supp. 3d 770 (N.D. Ill. 2019) ................................................................ 10

7

8

*Baier v. Bostitch*,
    243 Ill. App. 3d 195 (Ill. App. 1 Dist. 1993) .................................................... 11

9

10

*Baldonado v. Wyeth*,
    2012 WL 729228 (N.D. Ill. Mar. 6, 2012) ....................................................... 10

11

*Baldwin v. Star Sci., Inc.*,
    78 F. Supp. 3d 724 (N.D. Ill. 2015) .................................................................. 10

12

13

*Baltus v. Weaver Div. of Kidde & Co., Inc.*,
    199 Ill. App. 3d 821 (Ill. App. 1 Dist. 1990) .................................................. 4, 5

14

15

*Bielskis v. Louisville Ladder, Inc.*,
    663 F.3d 887 (7th Cir. 2011) ............................................................................... 7

16

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*,
    2005 WL 782698 (N.D. Ill. Apr. 6, 2005) ....................................................... 10

17

18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 3

19

20

*Erzrumly v. Dominick's Finer Foods, Inc.*,
    365 N.E.2d 684 (Ill. App. 1 Dist. 1977) ............................................................ 7

21

*First Nat'l Bank of Dwight v. Regent Sports Corp.*,
    803 F.2d 1431 (7th Cir. 1986) ............................................................................. 9

22

23

*Fulton v. Theradyne Corp.*,
    2007 WL 772953 (N.D. Ill. Mar. 12, 2007) ...................................................... 4

24

25

*George v. Amgen, Inc.*,
    2019 WL 10893813 (N.D. Ill. June 6, 2019) ..................................................... 9

26

*Griffin v. Medtronic, Inc.*,
    2017 WL 4417821 (N.D. Ill. Oct. 5, 2017) ...................................................... 10

27

28

MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON ILLINOIS LAW GROUNDS

*Kelsay v. Motorola, Inc.,*
    74 Ill. 2d 172 (1978) ................................................................................................ 11

*In re Korean Ramen Antitrust Litig.,*
    281 F. Supp. 3d 892 (N.D. Cal. 2017) ..................................................................... 3

*Loitz v. Remington Arms Co., Inc.,*
    138 Ill. 2d 404 (1990) ......................................................................................... 11, 12

*Malen v. MTD Prods., Inc.,*
    628 F.3d 296 (7th Cir. 2010) .................................................................................... 6

*May-Weirauch v. Ethicon, Inc.,*
    2020 WL 6946445 (C.D. Ill. Nov. 25, 2020) ........................................................... 4

*McKinney v. Hobart Bros. Co.,*
    2018 IL App (4th) 170333 ................................................................................. 7, 8, 9

*Mikolajczyk v. Ford Motor Co.,*
    231 Ill. 2d 516 (2008) ............................................................................................... 5

*Myer v. Ill. Cent. R. Co.,*
    629 F.3d 639 (7th Cir. 2010) .................................................................................... 4

*N. Ins. Co. of N.Y. v. Silverton Marine Corp.,*
    2010 WL 2574225 (N.D. Ill. June 23, 2010) ......................................................... 10

*Puffer v. Union Pac. R.R. Co.,*
    2020 WL 6820791 (C.D. Ill. Nov. 20, 2020) ........................................................... 4

*Ritter v. Ritter,*
    381 Ill. 549 (1943) ................................................................................................. 12

*Rizzo v. Corning Inc.,*
    105 F.3d 338 (7th Cir. 1997) .................................................................................... 6

*Schaefer v. Universal Scaffolding & Equip., LLC,*
    839 F.3d 599 (7th Cir. 2016) .................................................................................... 5

*Show v. Ford Motor Co.,*
    697 F. Supp. 2d 975 (N.D. Ill. 2010) ....................................................................... 5

*Sollami v. Eaton,*
    201 Ill. 2d 1 (2002) .................................................................................................. 7

*Sorce v. Naperville Jeep Eagle, Inc.,*
    722 N.E.2d 227 (Ill App. 2 Dist. 1999) ................................................................... 7

v

*Tweedy v. Wright Ford Sales, Inc.,*
     357 N.E.2d 449 (Ill. 1976) ................................................................................ 6, 7

*Woodill v. Parke Davis & Co.,*
     79 Ill. 2d 26 (1980) ...................................................................................... 7, 8, 9

**Statutes**

Ill. Comp. Stat. 5/2-313 ........................................................................................ 9

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................................. 3

MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON ILLINOIS LAW GROUNDS

# INTRODUCTION

Defendant Monsanto Company ("Monsanto") moves for summary judgment, on Illinois law issues, against the six Wave 2 Plaintiffs who brought claims in the United States District Court for the Northern District of Illinois—Gerard Cervantes, Christine Karman, Mark Pecorelli (individually and as representative of the estate of his father, Michael Pecorelli), James Peterson, Lorraine Rehak, and John Schafer (collectively the "Illinois Plaintiffs").   Summary judgment is warranted on the Illinois Plaintiffs' causes of action because they have failed to prove (1) general and specific causation; (2) that a specific defect in Roundup's design, as opposed to a labeling defect, caused their injuries; (3) that Monsanto had a duty to warn of Roundup's alleged cancer risk at the time of their relevant exposures; (4) an independent basis for their implied warranty claims; (5) that Monsanto made any affirmative express warranty that was breached, or that they were in privity with Monsanto; (6) that Monsanto was flagrantly indifferent to Roundup's alleged risks such that punitive damages may be awarded; and (7) their right to seek attorneys' fees and costs.

**General and Specific Causation.**  In order to sustain their product liability claims under Illinois law, the Illinois Plaintiffs must present expert testimony to prove both general causation and specific causation.  Whether Roundup®-branded products ("Roundup")—a chemical compound— is defective, can cause cancer, and actually did cause each Illinois Plaintiff's specific NHL subtype are the types of specialized issues for which expert testimony is required.  As explained in Monsanto's *Daubert* motions, filed contemporaneously herewith, the Illinois Plaintiffs do not have admissible expert testimony on these issues.  In particular, Plaintiffs' specific causation experts employed a "methodology" that will always find Roundup to be the cause of *any* person's NHL so long as the person was exposed to Roundup for just a few days, discarding or simply ignoring other well-known risk factors for NHL.

**Design Defect Claims.**  The Illinois Plaintiffs' negligence and strict liability design defect claims fail because they cannot present sufficient evidence that a design defect within Roundup caused their injuries.  First, to the extent the Illinois Plaintiffs' design defect claims rely on their allegation that Roundup was defective because of its inadequate warning, the design defect claims

1

must be dismissed as duplicative of the failure to warn claims.  Second, the Illinois Plaintiffs fail to show *how* Roundup's design was defective, and fail to satisfy the evidentiary burden Illinois law imposes when plaintiffs attempt to prove design defect claims through only circumstantial evidence of a product defect.

**Failure to Warn Claims.**  Under Illinois law, a product manufacturer has a duty to warn only where there is unequal knowledge with respect to the risks the product poses, and where the manufacturer knew or should have known about the harm the product posed absent a warning.  Here, there is no material dispute that at the time the Illinois Plaintiffs were exposed to Roundup—and today—the prevailing best scientific evidence showed no identifiable link between glyphosate and an increased risk of Non-Hodgkin's Lymphoma (NHL).  Therefore, summary judgment is proper on the negligent and strict liability failure to warn claims.

**Implied Warranty Claims.**  Under Illinois law, a cause of action for the breach of implied warranty of merchantability is essentially the same as one brought under a theory of strict liability. Because the Illinois Plaintiffs' strict liability product liability claims must be dismissed, so too must their implied warranty claims.

**Express Warranty Claim (Plaintiff Cervantes).**  Cervantes, but no other Illinois Plaintiff, brings a claim for breach of express warranty.  Under Illinois law, express warranty claims require a showing of privity between the plaintiff and defendant-manufacturer.  The plaintiff must also state the terms of the express warranty purportedly breached, or attach the warranty to the complaint. Because Cervantes cannot show that he and Monsanto were in privity with one another, and because he does not state the express terms of the warranty allegedly breached, this claim must be dismissed.

**Punitive Damages.**  Under Illinois law, punitive damages in product liability cases may be awarded only where a manufacturer was aware of, and flagrantly indifferent to, the risks the product posed.  There is no dispute that Monsanto's view of glyphosate's risks is consistent with views held by regulatory bodies throughout the world, including EPA.  *At best*, the Illinois Plaintiffs can show only that Monsanto disagreed with the minority, non-prevailing scientific view regarding glyphosate's alleged risks.  This is legally insufficient to support an award of punitive damages.

**Attorneys' Fees and Costs.**  Illinois does not permit an award of attorneys' fees or costs outside of a statute or contractual agreement permitting the award.  Because the Illinois Plaintiffs cannot point to a statute or contractual agreement allowing the award of these fees and costs, their request for attorneys' fees and costs should be dismissed.

## SUMMARY OF THE ILLINOIS PLAINTIFFS' CLAIMS

The Illinois Plaintiffs are Illinois residents who allege they were exposed to Roundup over many years due to Monsanto's sales and distribution of Roundup in Illinois.  Each Illinois Plaintiff asserts the following causes of action under Illinois law: Strict Liability (Design Defect); Strict Liability (Failure to Warn); Negligence; and Breach of Implied Warranties.  Plaintiff Cervantes also asserts a claim for Breach of Express Warranty.  All of these claims are based on the same two underlying allegations: (1) Roundup's formulation can cause cancer; and (2) Roundup's label is defective because it does not warn users of Roundup's alleged carcinogenetic risk.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has met its burden, the nonmoving party must come forward with evidence to show there is a genuine issue for trial.  *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 899 (N.D. Cal. 2017).  A "complete failure of proof concerning an essential element of the nonmoving party's case" warrants summary judgment and "necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON ILLINOIS LAW GROUNDS

1

**<u>ARGUMENT</u>**

2

**I.    <u>SUMMARY JUDGMENT IS REQUIRED BECAUSE THE ILLINOIS PLAINTIFFS</u>**

3

**<u>LACK THE REQUIRED ADMISSIBLE EXPERT TESTIMONY ON CAUSATION.</u>**

4

In a product liability case, expert testimony is required where issues of causation and product

5

defect "involve[e] specialized products and 'specialized knowledge.'"  *Fulton v. Theradyne Corp.*,

6

2007 WL 772953, at *4 (N.D. Ill. Mar. 12, 2007).  If a plaintiff fails to present admissible expert

7

testimony where it is required, summary judgment for the defendant is proper.  *See Baltus v. Weaver*

8

*Div. of Kidde & Co., Inc.*, 199 Ill. App. 3d 821, 827 (Ill. App. 1 Dist. 1990) ("[I]n cases in which

9

expert opinion is necessary to sustain allegations of the complaint, summary judgment is proper

10

when the plaintiff has failed to present an expert opinion or indicate that such expert opinion would

11

be forthcoming.").  This is true regardless of whether the product liability claim is brought as a

12

negligence or strict liability claim.  *See, e.g.*, *id.* (dismissing negligent design defect claim on this

13

ground); *May-Weirauch v. Ethicon, Inc.*, 2020 WL 6946445, at *1 (C.D. Ill. Nov. 25, 2020)

14

(dismissing both negligence and strict liability claims).

15

Here, the Illinois Plaintiffs claim that Roundup can cause NHL generally, and that it actually

16

did cause their specific NHL subtypes.  These claims are paradigmatic examples of the type that

17

require expert testimony on causation.  *See Puffer v. Union Pac. R.R. Co.*, 2020 WL 6820791, at *7

18

(C.D. Ill. Nov. 20, 2020) (citing *Myer v. Ill. Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010))

19

(granting summary judgment when plaintiff failed to introduce admissible expert testimony on the

20

cause of his cancer).  Monsanto has separately moved to exclude the Illinois Plaintiffs' experts who

21

purport to opine on the issues of general causation and specific causation, and Monsanto

22

incorporates those Rule 702 motions herein.  In particular, Plaintiffs' lack of admissible expert

23

testimony on the issue of specific causation requires summary judgment for Monsanto.  As

24

explained more fully in Monsanto's Rule 702 motions to exclude the opinions of the Illinois

25

Plaintiffs' specific causation experts (Drs. Weisenburger, Pinter-Brown, and Schiff), these experts

26

each employed an unscientific, litigation-driven "methodology" that will always find Roundup to

27

be the cause of *any* person's NHL so long as the person had some minimal exposure to Roundup,

28

4

while discarding or simply ignoring other well-known risk factors for NHL.  Because the Illinois Plaintiffs have failed to present admissible expert testimony on these questions, the Court should grant summary judgment for Monsanto.

## II.     THE DESIGN DEFECT CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE DUPLICATIVE OF THE INADEQUATE WARNING CLAIMS AND BECAUSE PLAINTIFFS CANNOT SATISFY THEIR EVIDENTIARY BURDEN.

To prevail on their strict liability claims, the Illinois Plaintiffs must show (1) that the injury complained of resulted from a condition of the product; (2) that the condition was unreasonably dangerous; and (3) that it existed at the time the product left the manufacturer's control.  *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525 (2008).  The second part of this analysis—whether a product is unreasonably dangerous—can be based on proof of (1) a manufacturing defect; (2) a design defect; or (3) inadequate warnings.  *Id.* at 532.   The Illinois Plaintiffs must show that this unreasonably dangerous condition was the proximate cause of their injuries.  *Id.* at 543; *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 604 (7th Cir. 2016) ("Under Illinois law, plaintiffs in product liability actions must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." (quotations omitted)).  The Illinois Plaintiffs bring their strict liability claims based on design defect and inadequate warning theories of liability.  The Illinois Plaintiffs also assert negligence claims premised on the purported design defect and inadequate warning.  For these types of negligence claims, a plaintiff must still establish that her injuries were caused by an unreasonably dangerous product.  *See Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 987 (N.D. Ill. 2010) (citing *Baltus v. Weaver Div. of Kidde & Co., Inc.*, 199 Ill. App. 3d 821 (Ill. App. 1 Dist. 1990)).

The Illinois Plaintiffs cannot satisfy the required elements with respect to their strict liability or negligent design defect theories, because (1) the design defect claims are duplicative of the failure-to-warn claims; and (2) they cannot prove a specific design defect with respect to Roundup, and have not satisfied the burden imposed by Illinois law for attempting to prove a product liability claim absent a showing of a specific design defect.

1   First, in sum and substance, this is a failure to warn case and not a design defect case.  The

2   Illinois Plaintiffs principally allege that Roundup was unreasonably dangerous—*i.e.*, defective—

3   because it contains glyphosate and did not include adequate warnings as to the glyphosate's potential

4   carcinogenic qualities.  *See* Karman Complaint (ECF #1) ¶ 175 (Roundup was in a "defective

5   condition" due to "the fact that it was not accompanied by proper warnings regarding its

6   carcinogenic qualities and possible side effects").  Where, as is the case here, a design defect claim

7   is based on an alleged failure to warn, it merges with the failure-to-warn claims and must be

8   dismissed.  *See* Restatement Third, Torts: Products Liability § 2, comment n ("two or more factually

9   identical defective-design claims or two or more factually identical failure-to-warn claims should

10   not be submitted to the trier of fact in the same case under different doctrinal labels"); *see also*

11   *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 307 (7th Cir. 2010) (noting that Illinois courts "typically

12   endorse the Restatement position in the absence of controlling authority" to the contrary).  Thus, to

13   the extent the alleged "defect" is a failure to warn, the Illinois Plaintiffs' separate claim for design

14   defect should be dismissed.

15   Second, the Illinois Plaintiffs have not offered competent evidence that Roundup's

16   purportedly defective design (as opposed to its allegedly inadequate warnings) caused their NHL.

17   Notably, they have failed to present competent evidence as to the specific defect within Roundup.

18   While Illinois law permits, under certain circumstances, a prima facie showing of design defect strict

19   liability without pointing to a specific design defect (*see Tweedy v. Wright Ford Sales, Inc.*, 357

20   N.E.2d 449, 451-52 (Ill. 1976)), those circumstances are not present here.  As the Seventh Circuit

21   has explained, under *Tweedy*, a jury can infer a product defect absent evidence of a specific design

22   flaw only where the plaintiff

23        can also show that the plaintiff did not misuse the product and that no "third force"
24        (for example, a fire, an earthquake, or the mishandling of the product by a carrier or
        dealer, or by a house guest)—what the Illinois courts mysteriously refer to as a
25        "secondary cause"—was present[.]

26   *Rizzo v. Corning Inc.*, 105 F.3d 338, 340 (7th Cir. 1997).

27

28

MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON ILLINOIS LAW GROUNDS

1    Here, the Illinois Plaintiffs cannot provide evidence sufficient to show they did not misuse

2   Roundup, or that their NHL is not caused by something else.  Indeed, Plaintiffs' experts admit that

3   each Plaintiff had at least one other known causal risk factor, which they either could not or did not

4   adequately rule out. *See, e.g.*, Motion to Exclude Specific Causation Experts, filed

5   contemporaneously herewith. Without that evidence, the Illinois Plaintiffs can present only the

6   "mere possibility" that their NHL was caused by Roundup's purportedly dangerous condition,

7   which is insufficient to recover on these claims as a matter of law.  *Erzrumly v. Dominick's Finer*

8   *Foods, Inc.*, 365 N.E.2d 684, 687 (Ill. App. 1 Dist. 1977) (trial court properly entered directed

9   verdict for defendant when plaintiff "failed to exclude other reasonable causes" of the product's

10   malfunction, "as required by *Tweedy*"); *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887,

11   899 (7th Cir. 2011) (distinguishing *Tweedy*, and ruling that summary judgment was proper where

12   plaintiff had no evidence the product was "defective at the outset or that it was free . . . from any

13   abnormal use"); *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 329 (Ill App. 2 Dist. 1999)

14   (summary judgment proper where plaintiff's circumstantial evidence would require the jury to

15   "engage in mere speculation, conjecture, or guessing").  Monsanto is therefore entitled to summary

16   judgment on the strict liability and negligent design defect claims.

17   **III.    THE FAILURE TO WARN CLAIMS SHOULD BE DISMISSED BECAUSE**

18   **MONSANTO HAD NO DUTY TO WARN OF ALLEGED CANCER RISKS AT THE**

19   **TIME PLAINTIFFS PURCHASED THEIR PRODUCTS.**

20    To prove that the Roundup products were unreasonably dangerous because of an inadequate

21   warning, the Illinois Plaintiffs must establish that Monsanto breached a duty to warn. *Woodill v.*

22   *Parke Davis & Co.*, 79 Ill. 2d 26, 35 (1980).  Under Illinois law, a manufacturer has a duty to warn

23   only where "the product possesses dangerous propensities and there is unequal knowledge with

24   respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should

25   know that harm may occur absent a warning."  *Sollami v. Eaton*, 201 Ill. 2d 1, 7 (2002). Whether

26   the manufacturer should have known that a product could cause harm absent a warning "comes

27   down to what was known in the industry of which [the manufacturer] was a part."  *McKinney v.*

28

7

1    *Hobart Bros. Co.*, 2018 IL App (4th) 170333, ¶ 59 (citing *Woodill*, 79 Ill. 2d at 35).  Whether a

2    manufacturer had a duty to warn of the product's risks is a question of law.  *Id.*

3            The Illinois Plaintiffs fail to show that Monsanto had a duty to warn of Roundup's alleged

4    risks because they have presented no evidence establishing the industry knew that glyphosate posed

5    carcinogenic risks to humans at real-world exposure levels  at the time Plaintiffs purchased and used

6    Roundup (or at any time).  As detailed in Monsanto's Motion for Summary Judgment on Non-

7    Causation Grounds, which is filed contemporaneously herewith and incorporated here by reference,

8    the generally recognized and prevailing best scientific evidence at the time the Illinois Plaintiffs

9    were exposed to Roundup—and today—does not support an association between human exposure

10   to glyphosate and NHL.  Even to this day, worldwide regulators do not consider glyphosate to be

11   carcinogenic to humans when used according to label instructions, and the EPA expressly **prohibits**

12   a carcinogenicity warning.  *See* Motion for Summary Judgment on Non-Causation Grounds.

13           The IARC's July 29, 2015 Monograph does not supplant the EPA's findings or the prevailing

14   scientific view that glyphosate is not a human carcinogen, and cannot be used to show there was a

15   general understanding in the industry that glyphosate is a probable carcinogen.  But even if the IARC

16   Monograph were relevant to the industry knowledge (it is not), it could not be used to show that

17   Monsanto had a duty to warn the *Illinois Plaintiffs*, considering the timing of their exposures and

18   diagnoses.  Many of the Illinois Plaintiffs were diagnosed with NHL *before* the IARC report was

19   published, and all of the Illinois Plaintiffs allege that their exposure to Roundup began before it was

20   published.  *See* Pecorelli Compl. ¶¶ 122, 124 (exposure began in "mid 1990s" and diagnosed in July

21   2004); Cervantes Compl. ¶ 113 (exposure from "approximately 1998 to 2004"); Karman Compl. ¶¶

22   (exposure from 1985 to 2015 and diagnosed in December 2015); Peterson Compl. ¶¶ 120, 122

23   (exposure from 2014 to 2016 and diagnosed in January 2017); Rehak Compl. ¶¶ 120-21 (exposure

24   from 1983 to 1989 and diagnosed in June 2014); Schafer Compl. ¶¶ 121, 123 (exposure from 1984

25   to 2017 and diagnosed in January 2018).

26           Because Plaintiffs cannot show Monsanto had a duty to warn them of Roundup's purported

27   carcinogenic risks, the Court should dismiss both the strict liability and negligent failure to warn

28

claims.  *See McKinney*, 2018 IL App (4th) 170333, ¶ 58 (citing *Woodill*, 79 Ill. 2d at 33-35) (explaining that strict liability and negligent failure to warn claims "have the same knowledge requirement").

## IV.    THE BREACH OF IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED BECAUSE ROUNDUP WAS NOT UNREASONABLY DANGEROUS WHEN SOLD TO PLAINTIFFS.

In Illinois, a cause of action for the breach of the implied warranty of merchantability "is essentially the same as one brought under [a] strict tort liability theory." *First Nat'l Bank of Dwight v. Regent Sports Corp.*, 803 F.2d 1431, 1438 (7th Cir. 1986); *see also George v. Amgen, Inc.*, 2019 WL 10893813, at *6 (N.D. Ill. June 6, 2019) ("Illinois courts have recognized that claims for strict liability and breach of the implied warranty of merchantability are essentially coextensive in products liability actions.") (quotations omitted).  This is because whether a product is merchantable is "practically the same as determining whether an item was a 'defective product unreasonably dangerous.'"  *First Nat'l Bank of Dwight*, 803 F.2d at 1438.  Thus, when a product is not unreasonably dangerous under a plaintiff's strict liability claim, courts dismiss the implied warranty claim for the same reason.  *See id.* at 1437-38 (finding that lawn darts were not unreasonably dangerous under either a design defect or failure-to-warn theory for plaintiff's strict liability claim, and dismissing implied warranty claim for the same reason).

Here, for the reasons addressed above, the Illinois Plaintiffs cannot show that the Roundup products were unreasonably dangerous through either a design defect or failure-to-warn theory.  The Court must therefore also grant summary judgment on their implied warranty of merchantability claims.

## V.    PLAINTIFF CERVANTES' EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED FOR LACK OF PRIVITY AND FOR FAILURE TO IDENTIFY THE PARTICULAR WARRANTY.

Plaintiff Cervantes asserts a claim for breach of express warranty under 810 Ill. Comp. Stat. 5/2-313.  *See* Cervantes Complaint (ECF #1) ¶ 192-207.  "Under Illinois law, because an express

9

1  warranty is a creature of contract, a party must have privity to the contract before bringing a breach

2  of express warranty claim." *Baldonado v. Wyeth*, 2012 WL 729228, at *4 (N.D. Ill. Mar. 6, 2012)

3  (quotations omitted).  Thus, when a plaintiff purchased the subject product from a dealer, he cannot

4  typically maintain a breach of express warranty claim against the product's manufacturer.  Illinois

5  permits an exception to this rule "when a manufacturer expressly warranted its goods to the ultimate

6  consumers and this was the basis for the bargain and relied upon" by the plaintiff.  *Aquino v. C.R.*

7  *Bard, Inc.*, 413 F. Supp. 3d 770 (N.D. Ill. 2019).   But this exception applies only when the

8  manufacturer provides materials such as "brochures, documents, and advertisements . . . directly to

9  the buyer prior to" his purchase.  *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings,*

10 *Inc.*, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005).  Cervantes has provided no evidence that

11 Monsanto directly provided him with materials that contained any warranties or representations with

12 respect to Roundup.  Thus, his express warranty claim must be dismissed for lack of privity.

13      In addition, a plaintiff alleging a breach of express warranty claim must also state the terms

14 of the warranty or attach it to the complaint.  *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739

15 (N.D. Ill. 2015).  "Failure to do so renders the claims invalid."  *N. Ins. Co. of N.Y. v. Silverton*

16 *Marine Corp.*, 2010 WL 2574225, at *2 (N.D. Ill. June 23, 2010).  Cervantes has not stated the

17 terms of Monsanto's alleged express warranty; nor did he attach the terms to his complaint.  Rather,

18 the complaint vaguely asserts that Monsanto represented that its Roundup products "were safe to

19 human health and the environment, effective, fit, and proper for their intended use."  Cervantes

20 Compl. ¶ 194.  These assertions are inadequate, as a matter of law, to advance a breach of express

21 warranty claim to trial.  *See, e.g.*, *Griffin v. Medtronic, Inc.*, 2017 WL 4417821, at *5 (N.D. Ill. Oct.

22 5, 2017) (breach of express warranty claim dismissed when defendant alleged only that defendant

23 warranted product was "safe and fit for use by consumers, that it was of merchantable quality, that

24 its side effects were minimal compared to other . . . products, and that it was adequately tested and

25 fit for its intended use").

26      For these reasons, Cervantes' claim for breach of express warranty should be dismissed.

1    **VI.    THE ILLINOIS PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES FAIL AS A**
2    **MATTER OF LAW**

3    Under Illinois law, punitive damages are permitted only "when torts are committed with

4    fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with

5    such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola,*

6    *Inc.*, 74 Ill. 2d 172, 186 (1978).  In the product liability context, punitive damages may be assessed

7    only where the defendant-manufacturer's conduct "reflects a flagrant indifference to the public's

8    safety." *Baier v. Bostitch*, 243 Ill. App. 3d 195, 205 (Ill. App. 1 Dist. 1993).  The Illinois Supreme

9    Court has noted that "whether the facts of a particular case justify the imposition of punitive damages

10   is properly one of law" that can be adjudicated on a motion for summary judgment.  *Kelsay* 74 Ill.

11   2d at 186.

12   The Illinois Plaintiffs cannot, as a matter of law, show that Monsanto acted with the

13   necessary malice, violence, oppression, or "flagrant indifference" to establish they are entitled to

14   punitive damages.  As addressed above, the generally recognized and prevailing best scientific

15   evidence does not support an association between glyphosate exposure and NHL.  *See supra* Section

16   II.  In April 2019 the EPA announced that it had assessed the risks to humans from exposure to

17   glyphosate and did not identify any known risks.  *See id.*  To the extent the Illinois Plaintiffs present

18   evidence to the contrary, that evidence—at best—shows that some non-industry groups and/or

19   experts held a different opinion about glyphosate's risks.  That some other groups or experts may

20   have had a different opinion from the facts known to Monsanto and the EPA is legally insufficient

21   to show Monsanto was aware of, and indifferent to, known and scientifically-accepted risks.  *See*

22   *Loitz v. Remington Arms Co., Inc.*, 138 Ill. 2d 404, 421-22 (1990) (outside expert opinion that steel

23   on barrel of Remington's shotgun was defective not sufficient to show Remington was flagrantly

24   indifferent to a purported defect, because Remington was not "automatically required to embrace

25   [the expert's] view as its own," and Remington had assessed the barrels with its own engineers and

26   metallurgists and concluded steel was not defective).  Rather, the evidence shows that Monsanto at

27   all times *disputed* the findings from the IARC in good faith, and that regulatory bodies and scientific

28

11

experts worldwide agreed with Monsanto.  In such a situation, the facts do not support a duty to warn, much less an award of punitive damages.  *See id.*

**VII.    THE ILLINOIS PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES OR COSTS.**

Illinois courts have long-held that absent a statute or contractual agreement "attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party."  *Ritter v. Ritter*, 381 Ill. 549, 553 (1943).  The Illinois Plaintiffs cannot point to a statute or contractual agreement that would permit the recovery of attorneys' fees or costs for any of their claims.  Their requests for attorneys' fees and costs should thus be dismissed.

## CONCLUSION

For the foregoing reasons, Monsanto is entitled to summary judgment on the Illinois Plaintiffs' claims.

MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON ILLINOIS LAW GROUNDS

Dated:  March 19, 2021

By:   */s/ K. Lee Marshall*
      K. Lee Marshall
      BRYAN CAVE LEIGHTON PAISNER LLP
      Three Embarcadero Center, 7th Floor
      San Francisco, California 94111
      Tel:    415-675-3400
      Fax: 415-675-3434
      klmarshall@bclplaw.com

      Attorneys for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                        */s/ K. Lee Marshall*