# EXHIBIT 24

Pages 1 - 71

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

IN RE ROUNDUP PRODUCTS          )
LIABILITY LITIGATION            )   Case No. 16-md-02741
_____ )
                                    San Francisco, California
                                    Friday, January 4, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        WEITZ & LUXENBERG, P.C.
        700 Broadway
        New York, New York 10003
  BY:  **ROBIN L. GREENWALD, ESQ.**

        ANDRUS ANDERSON LLP
        7171 West Alaska Drive
        Lakewood, Colorado 80226
  BY:  **AIMEE WAGSTAFF, ESQ.**

        BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
        12100 Wilshire Boulevard, Suite 950
        Los Angeles, California 90025
  BY:  **R. BRENT WISNER, ESQ.**
        **MICHAEL L. BAUM, ESQ.**

        THE MILLER FIRM LLC
        108 Railroad Avenue
        Orange, Virginia  22960
  BY:  **BRIAN BRAKE, ESQ.**

(Appearances continued on next page)

Reported By:    Marla F. Knox, RPR, CRR
                Official Reporter - U.S. District Court

```
 1   APPEARANCES (CONTINUED):

 2   For Plaintiffs:
                             LAW OFFICES OF TESFAYE TSADIK
 3                           1736 Franklin Street 10th Floor
                             Oakland, California 94612
 4                      BY:  TESFAYE WOLDE TSADIK, ESQ.

 5                           LUNDY, LUNDY, SOILEAU AND SOUTH, LLP
                             501 Broad Street
 6                           Lake Charles, Louisiana 70601
                        BY:  HUNTER WILLIAM LUNDY, ESQ.
 7                           NADINA ANN BEACH, ESQ.

 8                           GROSSMAN & MOORE, PLLC
                             401 West Main Street, Suite 1810
 9                           Louisville, Kentucky 40202
                        BY:  JENNIFER A. MOORE, ESQ.
10
                             AUDET & PARTNERS, LLP
11                           711 Van Ness Avenue, Suite 500
                             San Francisco, California  94102
12                      BY:  MARK BURTON, ESQ.

13                           LOCKRIDGE GRINDAL NAUEN PLLP
                             100 Washington Avenue S.
14                           Minneapolis, Minnesota 55401-2179
                        BY:  YVONNE M. FLAHERTY, ESQ.
15
     For Defendant:
16
                             ARNOLD & PORTER
17                           777 South Figueroa Street, 44th Floor
                             Los Angeles, California  90017
18                      BY:  PAMELA J. YATES, ESQ.
                             ANDREW K. SOLOW, ESQ.
19

20                           WILKINSON WALSH ESKOVITZ
                             2001 M Street, NW, 10th Floor
21                           Washington, DC 20036
                        BY:  BRIAN L. STEKLOFF, ESQ.
22                           RAKESH KILARU, ESQ.

23                           JULIE RUBENSTEIN, ESQ. (via phone)

24

25
```

```
 1   Friday, January 4, 2019                    9:30 a.m
 2                    P R O C E E D I N G S
 3            THE CLERK:  Calling Civil Case No. 16-MD-2741, Roundup
 4   Products Liability Litigation.
 5            THE COURT:  Hi, everybody.  Does somebody want to make
 6   appearances for everybody or do you want to line up and make
 7   each individually appear?  I don't really care, whatever you
 8   want to do.
 9            MS. WAGSTAFF:  Aimee Wagstaff on behalf of
10   Plaintiffs.  Good morning, your Honor, and with me I have Brian
11   Brake, Robin Greenwald, Mark Burton, Jennifer Moore, Yvonne
12   Flaherty, Brent Wisner, and a couple people in the box, Michael
13   Baum, Kathryn Forgie.
14            THE COURT:  The rest of you, do want to introduce
15   yourselves?
16            MS. FORGIE: Kathryn Forgie.  Good to see you again.
17            MR. TSADIK:  Good morning, Tesfaye Tsadik.
18            MR. STEKLOFF:  Good morning, your Honor, on behalf of
19   Monsanto, you have Brian Stekloff and Rakesh Kilaru of
20   Wilkinson, Walsh and Pam Yates and Andrew Solow from Arnold
21   Porter.
22            MS. BEACH:  Good morning, Nadina Beach and Hunter
23   Lundy.
24            THE CLERK:  And the parties on the phone?
25            THE COURT:  I bet they forgot to unmute.
```

1        **MS. RUBENSTEIN:**  This is Julie Rubenstein from

2   Wilkinson, Walsh & Esovitz on behalf of Monsanto.

3        **THE COURT:**  Okay.  What do we need to talk about

4   today?  I understand you all had a productive session with

5   Kristen yesterday.  That may have knocked out a lot of stuff,

6   but what else can we discuss?

7        **MS. WAGSTAFF:**  Your Honor, over the last 12 hours

8   something has happened that has really disturbed the

9   Plaintiffs.  We wanted to come in and bring it to your

10  attention.

11       First of all, on October 22nd in the case management

12  statement in preparation for the October case management

13  conference, the parties agreed to a page limit for Daubert

14  briefing and summary judgment of 35 pages.  A couple months

15  later on December 18th I was talking on the phone with

16  Monsanto's attorneys, and they requested that we change that

17  page limit.  We said no.  We didn't agree to that, so they

18  asked you -- asked the Court for an additional page limit.

19  They filed a motion on New Year's Eve requesting additional

20  pages, and their motion requested that you allow them 10 more

21  pages for their summary judgment and Daubert brief, which

22  everyone has always contemplated would be one brief for Phase

23  One and asked -- for additional -- for leave to file additional

24  motions.  You denied it.

25       Last night just around midnight, Monsanto --

```
 1            THE COURT:  The last part you said in the New Year's
 2   Eve request they asked for leave to file additional motions.
 3   What I remember about that -- I mean, I don't have the stuff in
 4   front of me.
 5            MS. WAGSTAFF:  Sure.
 6            THE COURT:  What I remember about that is they asked
 7   for an extension of the page limits, and I denied it; but the
 8   thing about filing additional briefs, I don't recall that.
 9            MS. WAGSTAFF:  Sure.  Yeah, their proposed order
10   requests a specific causation opening brief for 10 extra pages.
11   They requested a specific causation reply brief for 5
12   additional pages.
13            THE COURT:  Right.
14            MS. WAGSTAFF:  They also requested that you allow them
15   to file Daubert briefs, I guess, in addition to the other
16   ones -- I'm not really sure -- that were 15 pages each and an
17   additional summary judgment for 25 pages.
18            THE COURT:  Okay.
19            MS. WAGSTAFF:  And you denied them.
20            THE COURT:  Okay.
21            MS. WAGSTAFF:  And despite that denial of that
22   request, last night they went around and they actually filed
23   somewhere around 96 pages of briefing.  They filed a summary
24   judgment motion that was 25 pages, a Daubert motion on half of
25   our experts that was 35 pages; and then they went ahead --
```

1    despite the denial -- and filed an additional Daubert on Sawyer

2    for 15 pages, an additional Daubert on Benbrook for 15 pages

3    and a Daubert on our expert Mills for 6 pages.

4         So whether or not we put aside the additional Daubert that

5    we think should be struck in their entirety, their motion for

6    summary judgment and Daubert motion they filed last night was

7    60 pages despite asking you for an additional page limit and

8    you denying the same.  They went ahead and defied the court

9    order and filed that.  So we would ask that those motions be

10   struck in total and the relief denied or they be given 24 hours

11   to cure the page limit problem and that Plaintiffs be given an

12   additional 24 hours in kind to respond.

13        THE COURT:  Okay.  I'm trying to pull up the docket

14   and it is not working.  I have to use a different route.

15        MS. WAGSTAFF:  I have -- what are you looking for?

16        THE COURT:  I just want to pull up the docket

17   generally as we discuss this.

18        MS. WAGSTAFF:  All right.

19     (Whereupon, a brief pause was had.)

20        THE COURT:  We have 2,422 docket entries in this MDL

21   which is not my highest number.

22        MR. STEKLOFF:  Plenty of time, Your Honor.

23        THE COURT:  Yeah, it will probably end up being the

24   highest number.  I have a case that I inherited from the 1990s

25   that I think has 4,000 docket entries.  Just give me a second.

```
 1              (Whereupon, a brief pause was had.)

 2              THE COURT:  Okay.  So one preliminary question, so

 3    there was -- there was this brief -- this 35-page opening brief

 4    that was contemplated.  Apparently there was a misunderstanding

 5    about what was going to be included in that 35-page brief, but

 6    it -- at a minimum it was going to include Daubert motions on

 7    specific causation and summary judgment and has that been --

 8    brief been filed yet?

 9              MR. STEKLOFF:  Yes.

10              MS. WAGSTAFF:  That was filed last night, your Honor,

11    and that is what Monsanto requested additional pages on.

12              THE COURT:  Right.

13              MS. WAGSTAFF:  You denied, and then they --

14              THE COURT:  And then what else did Monsanto file?

15              MR. STEKLOFF:  Could I maybe just run through what the

16    briefs were that we filed, your Honor?

17              THE COURT:  Yes.

18              MR. STEKLOFF:  There is a 35-page brief on specific

19    causation, and that addresses both our Daubert challenges on

20    specific causation to three of the experts and our summary

21    judgment argument on specific causation.  Then there is a

22    separate summary judgment brief on non-specific causation

23    issues.  That would be preemption.  There is some California

24    law arguments.  There is some punitive damages arguments where

25    we think we are entitled to summary judgment.  That one is 25
```

```
 1   pages.   There are three separate Daubert motions.
 2          THE COURT:  Can I ask you a question about that?
 3          MR. STEKLOFF:  Sure.
 4          THE COURT:  I thought -- it was a long time ago
 5   admittedly -- I thought we had a Motion to Dismiss on
 6   preemption that I denied.
 7          MR. STEKLOFF::  We did, your Honor, and I believe in
 8   the colloquy about that motion you spoke with Mr. Lasker about
 9   certain arguments that we might make at the summary judgment
10   stage, for example, a clear evidence argument based on the
11   regulatory developments.  That is the nature of the preemption
12   argument we made here.
13          THE COURT:  Okay.
14          MR. STEKLOFF:  The other Daubert motions are a motion
15   on Dr. Benbrook -- I'm not sure if he is a doctor -- but doctor
16   or Mr. Benbrook as the regulatory expert for Plaintiffs;
17   Mr. Mills, who is the punitive damages expert and then
18   Dr. Sawyer, who is the exposure expert.
19          THE COURT:  So you filed a 35-page brief on specific
20   causation.  You filed a 25-page summary judgment brief on
21   preemption California law and punitive damages.
22          MR. STEKLOFF:  That's right.
23          THE COURT:  And then you filed one other brief --
24          MR. STEKLOFF:  There are three briefs, one on each of
25   those experts.  There is one on Sawyer, which is 15 pages.
```

1  There is one on Benbrook which, I believe, is either 14 or 15;

2  and there is one on Mills which is less than 15; but I'm not

3  sure where it ended up.  I think 6.

4       MS. WAGSTAFF:  Your Honor, this is exactly what they

5  asked you to do and exactly what you denied, and they did it

6  anyway.

7       MR. STEKLOFF:  So I --

8       THE COURT:  I think the problem is we never really had

9  a -- at least as I recall -- we never really had a conversation

10  about what issues needed to be teed up for summary judgment

11  other than specific causation and what issues needed to be teed

12  up for Daubert other than specific causation.  At least I don't

13  recall having that conversation.  I suspect that if we had had

14  that conversation and, you know, somebody had said, Okay, look

15  we have -- you know, we have the issue of specific causation

16  that we need to deal with through summary judgment motions and

17  Daubert motions; and then we have these other issues we need to

18  deal with through summary judgment motions and Daubert motions,

19  I probably would have said, Okay, that's fine.  You can have

20  more than 35 pages to deal with that.  I would like you to deal

21  with it all in one brief, so I can have one brief that I can go

22  through.  I would assume I would have allowed more pages for

23  that.

24       Anyway, I don't know if I'm misremembering.  I will tell

25  you that when -- you know, part of it just over the holidays

1   maybe you are not focusing on things as carefully as you might

2   usually do -- but when I denied that request for an extension,

3   what I was doing in my mind was saying, No, you can't have, you

4   know, more than 35 pages for this brief on specific causation

5   that we already established would be 35 pages.

6          **MR. STEKLOFF:**  And that's how we understood it as

7   well, your Honor.  I think in the order -- both in the CMC

8   statement and then in the request -- we noted how we planned to

9   conduct the briefing and how we thought the briefing should

10  unfold, and that was in part based on, you know, comments by

11  Mr. Stekloff at the earlier hearing, the last CMC, about how we

12  would be seeking relief on Dr. Sawyer and Benbrook, who I don't

13  think really relate to specific causation and then also relying

14  on the colloquy I mentioned earlier with preemption being an

15  issue as well, and so we laid out sort of exactly how we

16  planned on filing the briefs.

17      In fact, in the page motion we indicated that we were

18  seeking an extension only for the brief that has been called

19  the specific causation Daubert summary judgment brief I think.

20  Dating back to October I think that's how it was labeled in the

21  actual CMC statement where the initial proposal was made,

22  specific causation Daubert briefing summary judgment page

23  limits.  So we very much understood that to apply only to

24  specific causation.  We actually said at the end of that brief

25  that we were planning to file these other briefs on this

```
1   timetable.
2           THE COURT:   The Daubert briefs for each expert, how
3   long are each of those briefs?
4           MR. STEKLOFF:   There is one brief that does Daubert
5   and summary judgment on the three specific causation experts
6   for Plaintiffs.   That would be Dr. Nabhan, Dr. Weisenburger,
7   Dr. Shustov.
8           THE COURT:   Right.
9           MR. STEKLOFF:   There is a brief of -- on the other
10  brief we basically file the page limits in the pretrial order
11  that Your Honor has.   So I think it's 15 pages for Sawyer, 15
12  for Benbrook and 6 for Mills for those three Dauberts.
13          THE COURT:   Okay.   I mean, at this point, I take the
14  blame for this one because I probably could have worked with
15  you all to provide greater clarity on all of this.   It
16  doesn't -- in the grand scheme of things it does not seem like
17  a big deal, and really what is important is for us to just find
18  the most efficient way going forward to tee up the issues that
19  the parties have a right to tee up for summary judgment and/or
20  motions to exclude.
21       What would you like to do at this point?   These briefs
22  have been filed.   These issues need to be considered.   What do
23  you think is the most efficient, effective, you know, way to
24  deal with this going forward; keeping in mind that your comment
25  at -- your introductory comment to this comment that something
```

```
 1   happened that was very disturbing is, like, totally out of
 2   proportion to what is happening here.  It is not very
 3   disturbing.  It is not a big deal.  So keeping in mind that it
 4   is not a big deal, and it is not very disturbing; and we just
 5   need to move forward and figure out how to address these
 6   issues, how would you like to proceed?
 7           MS. WAGSTAFF:  First I would like to say, that it is
 8   actually disturbing to us that --
 9           THE COURT:  I don't want to argue anymore about how
10   disturbing it is.
11           MS. WAGSTAFF:  -- a court order --
12           THE COURT:  I'm issuing a definitive ruling that it is
13   not disturbing.  That is my ruling.  It is not disturbing.  So
14   now, how are we going to move forward; and what is the best way
15   to deal with this?
16           MS. WAGSTAFF:  So we would like extra time to respond.
17   We had planned to respond to 35 pages -- as the parties had
18   agreed and the Court had ordered -- and now we have 96 pages,
19   so if you can let me confer with my briefing team during this
20   conference and perhaps propose a reasonable extension by the
21   end of this conference, I would appreciate that.
22           THE COURT:  That's fine.
23           MR. STEKLOFF:  Your Honor, if I could just note, one
24   of the things we offered up in the briefing order as a proposal
25   is it would be extra time on the non-specific causation briefs
```

1    because there was a misunderstanding.

2            THE COURT:  That's fine.  All right.  What else?

3            MR. WISNER:  Brad Wisner on behalf of the Plaintiffs.

4    A couple things, Your Honor, I believe there was a letter brief

5    filed last night that we would like to address with the Court.

6    Before we get there, I would like to talk about the order the

7    Court issued for bifurcation yesterday.  Throughout this

8    litigation you have been honest and frank with us about your

9    viewpoints on evidence and law, and I think you deserve our

10   viewpoint on this; and we think that this is wrong.

11          Here is why -- if I may provide the Court with a

12   document, this is the California jury instructions that we have

13   to prove at trial.

14           THE COURT:  Okay.

15           MR. WISNER:  So in sort of fashioning our case, this

16   is our Bible, right; this is substantive California law about

17   what we actually have to prove at trial to get a verdict that

18   would be enforceable against Monsanto.  If you look at the

19   first one, this is a strict liability failure one.  These are

20   the seven elements we have to prove.  This is what we did in

21   Johnson.  They have to say yes to each one of these for us to

22   prevail.

23          And going through this yesterday, I'm sort of not sure

24   what would be answered in the first phase of the litigation on

25   this -- on these elements that we have to prove.  So obviously

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   January 6th, 2019

_Marla Knox_

_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter