# EXHIBIT 25

```
 1              IN THE TWENTY-FIRST JUDICIAL CIRCUIT COURT
                    OF THE COUNTY OF ST. LOUIS
 2                      STATE OF MISSOURI
 3
 4
    ------------------------------)
 5  BURRELL LAMB, et al.          )
                                  )
 6      Plaintiffs,               )
                                  )
 7                                )
    v.                            ) Cause No. 17SL-CC03681
 8                                )
                                  )
 9  MONSANTO COMPANY,             )
                                  )
10      Defendant.                )
                                  )
11  ------------------------------)
12
13
                     MONDAY, JULY 22, 2019
14
15  Videotaped Deposition of WILLIAM R. SAWYER, Ph.D., Expert
16  Witness on behalf of Plaintiffs, held at Sanibel Harbour
17  Marriott, 17260 Harbour Pointe Drive, Fort Myers, Florida,
18  33908, Jasmine Conference Room, commencing at 9:18 a.m., on
19  the above date, before Dianne Sarkisian, CSR/RPR, Certified
20  Shorthand Reporter, Registered Professional Reporter, and
21  Notary Public of the State of Florida.
22
23
24
25
```

William R. Sawyer, Ph.D.

1      applying that methodology to consider carcinogens from
2      other sources, in this case those beyond what is
3      contained in Roundup?
4   A. Yes, and I have done that.
5   Q. Have you quantitated any other carcinogenic exposure
6      for either Mr. Lamb or Mr. Cohen other than the
7      glyphosate form Roundup?
8           MS. SIZEMORE:  Object to form.
9   A. Yes.
10  BY MR. PAINE:
11  Q. What have you quantitated as far as other carcinogens
12     outside of Roundup for either Mr. Lamb or Mr. Cohen?
13  A. Well, as I said earlier, for example with the quartz,
14     crystalline silica, there was no exposure
15     systemically.  At best, it could have impacted his
16     lung, but that particular chemical strictly impacts
17     the respiratory tract.  It doesn't make it into
18     systemic circulation and it has no impact on NHL.
19          And many other compounds I've assessed as
20     well in terms of the weight of evidence of the
21     potential carcinogen and as to whether an animal
22     carcinogen or a known human carcinogen and whether it
23     could make its way to the target organ, which is bone
24     marrow in this case.  And if so, the next step is to
25     quantitate exposure.

| | | |
|---|---|---|
| 1 | Q. | So did you quantitate how much formaldehyde added or |
| 2 | | represented in Mr. Cohen's case from Roundup? |
| 3 | A. | Yes.  And it is clearly a trace contaminant.  It's not |
| 4 | | a primary contaminant that substantially caused the |
| 5 | | disease.  Glyphosate is.  And you can't quantitate a |
| 6 | | trace level contaminant. |
| 7 | Q. | Did you quantitate Mr. Lamb or Mr. Cohen's expose to |
| 8 | | n-nitroso compounds from Roundup? |
| 9 | A. | No.  I treated it as described, as a trace |
| 10 | | contaminant, that under the generally-accepted |
| 11 | | methodology is additive to the primary carcinogen. |
| 12 | Q. | Did you quantitate either Mr. Lamb or Mr. Cohen's |
| 13 | | exposure to ethylene oxide from Roundup? |
| 14 | A. | No.  I only considered ethylene oxide as an additive |
| 15 | | trace contaminant, which as described by Monsanto is |
| 16 | | true, and that under the generally-accepted |
| 17 | | methodology is additive to the primary carcinogen, |
| 18 | | glyphosate, and it should be considered and described |
| 19 | | as simply as a additive trace contaminant. |
| 20 | Q. | So I take it from what you're telling me, in the |
| 21 | | absence of quantitation, you're not going to tell the |
| 22 | | jury that either formaldehyde, n-nitroso compounds or |
| 23 | | ethylene oxide from Roundup, that either Mr. Lamb or |
| 24 | | Mr. Cohen received from Roundup exposure, were |
| 25 | | themselves substantial contributing factors to either |

William R. Sawyer, Ph.D.

 1      gentleman's NHL; is that correct?
 2                MS. SIZEMORE:  Object to the form.
 3  A.  Yes.  I'm going to say that they're simply additive
 4      trace level contaminants that are not in themselves
 5      the substantially contributing factors of his NHL.
 6  BY MR. PAINE:
 7  Q.  Doctor, let's switch gears a little bit.
 8                You understand that the United States
 9      Environmental Protection Agency is the federal agency
10      that has the sole authority to approve pesticide
11      registrations here in the United States, right?
12  A.  Yes.
13  Q.  And you understand that EPA has the authority to
14      suspend or cancel registration of any pesticide at any
15      time, if it has information indicating that continued
16      use would pose unreasonable risks to human -- humans
17      or the environment, right?
18  A.  Yes.
19  Q.  And you understand that EPA has the sole authority to
20      approve the labeling or product label for pesticides
21      such as Roundup here in the United States, right?
22  A.  Yes, I do.
23  Q.  And you understand that there are specific EPA
24      regulatory requirements for what goes into and may be
25      printed on the label of pesticides, like herbicides

William R. Sawyer, Ph.D.

```
 1       like Roundup, right?
 2   A.  I didn't comprehend the question.
 3   Q.  Sure.  There are specific EPA regulatory requirements
 4       for what may be stated in the labels of products like
 5       Roundup here in the United States?
 6   A.  I'd have to defer that to Dr. Benbrook.  I'm not sure.
 7   Q.  Have you reviewed any of the code of federal
 8       regulations divisions regarding information to be
 9       placed on herbicide labels such as on Roundup?
10   A.  No.  I'll defer that to Dr. Benbrook.  I'm not
11       prepared to go into labeling.  I didn't understand
12       that was my role in this case actually.
13   Q.  You understand that federal law requires EPA to
14       continuously review the scientific data for all
15       pesticides and herbicides sold in the United States;
16       is that right?
17   A.  I'm going to defer that to Dr. Benbrook.  I'm not
18       prepared to answer that.
19               MR. PAINE:  Number 10.
20               (DEFENDANT'S EXHIBIT 10, GLYPHOSATE:
21               PROPOSED INTERIM REGISTRATION REVIEW
22               DECISION, CASE NUMBER 0178 WAS MARKED
23               IDENTIFICATION.)
24               THE WITNESS:  Just as a note, I am rather
25       burned out.  Probably not going to go much longer.
```

William R. Sawyer, Ph.D.

1      the required data conducting the new risk assessment

2      and completing registration review case.

3              Did I read that correctly?

4   A.  Yes.

5   Q.  So you understand that the EPA has the power to

6      require any or all of those things to be submitted in

7      a review of a pesticide like glyphosate, right?

8              MS. SIZEMORE:  Object to form.

9   A.  No.  I'm really not prepared to answer that.  I defer

10     that to Dr. Benbrook.

11  BY MR. PAINE:

12  Q.  Were you aware that the EPA did require some labeling

13     changes or suggest some labeling changes in this

14     proposed interim decision?

15  A.  No.

16  Q.  Were you aware that none of the labeling changes had

17     anything to do with human health risks?

18             MS. SIZEMORE:  Object to form.

19  A.  I have no opinion.  I defer that to Dr. Benbrook.

20             Before you get into a new subject, I'm

21     pretty well shot.

22  BY MR. PAINE:

23  Q.  Okay.  Let's...  Let's do this, I'm probably pretty

24     close to a decent stopping point, anyway.  If you can

25     give me a couple minutes to consult with my