**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:    (713) 227-8008
Facsimile:    (713) 227-9508
Email:          jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 3:16-md-02741-VC |
| This document relates to:<br><br>*Pamela Smith, individually and as Personal Representative of the Estate of Daniel J. Smith, deceased v. Monsanto Co.*,<br>Case No. 3:21-cv-01505-VC | |

<u>**MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**</u>

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff Pamela Smith's Complaint ("the Complaint"), except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Silence as to any allegations shall constitute a denial.

1.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies those allegations.

2.      Monsanto admits the allegations in the first and second sentences of paragraph 1. In response to the allegations in the third sentence of paragraph 1, Monsanto admits that certain Roundup®-branded products contain POEA and adjuvants, and that the United States Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert.

Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  In response to the allegations in the final sentence of paragraph 1, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 1 and therefore denies those allegations.

3.    In response to paragraph 3, Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto denies the remaining allegations in paragraph 3.

4.    In response to the allegations in paragraph 4, Monsanto admits that, on July 29, 2015, a "working group" of the World Health Organization's International Agency for Research on Cancer ("IARC") issued a monograph relating to glyphosate, but Monsanto denies that the monograph was "peer-reviewed."  Monsanto denies the allegations in paragraph 4 to the extent that they suggest that IARC based its evaluation on a thorough, complete or accurate assessment of the scientific research regarding glyphosate.  Regarding the remaining allegations in paragraph 4, the document speaks for itself and does not require an answer.  To the extent an answer is required, the remaining allegations in paragraph 4 comprise attorney characterizations and are accordingly denied.

5.    In response to the allegations in paragraph 5, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 5.

6.    In response to the allegations in Paragraph 6, Monsanto admits that the scientific evidence does not support the finding of a causal link between glyphosate and "blood borne and other diseases" to humans.  Monsanto otherwise denies the allegations in paragraph 6.

7.    In response to the allegations in paragraph 7, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States

and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that EPA repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 7 alleges that Monsanto has labeled glyphosate or Roundup® -branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in paragraph 7.

8.     The allegations in paragraph 8 set forth conclusions of law for which no response is required.  To the extent a response is deemed required, Monsanto admits the allegations in paragraph 8 based upon the allegations in plaintiff's Complaint.

9.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9 that plaintiff purchased Roundup®-branded products and therefore denies those allegations.   The remaining allegations in paragraph 9 set forth conclusions of law for which no response is required.

10.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 regarding where the events giving rise to this action occurred and therefore denies those allegations.   The remaining allegations in paragraph 10 set forth conclusions of law for which no response is required.

11.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies those allegations.

12.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore denies those allegations.

13.     Monsanto admits the allegations in paragraph 13.

14.     In response to the allegations in paragraph 14, Monsanto admits that it is a publicly traded company and that Monsanto and affiliated companies have operations and offices in countries around the world.  Monsanto admits that it was a producer of glyphosate based

herbicides but lacks sufficient information regarding the business of other glyphosate produces to admit or deny the allegations as written in the second sentence of paragraph 14. Monsanto admits that it was the leading producer of seeds that contain the Roundup® Ready trait and that use of crops with the Roundup® Ready trait substantially improve a farmer's ability to control weeds.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 14 and therefore denies those allegations.

15.     Monsanto admits the allegations in the first sentence of paragraph 15.  Monsanto states that the allegations in the final sentence of paragraph 15 are vague and ambiguous and therefore Monsanto denies those allegations.

16.     Monsanto admits the allegations in the first sentence of paragraph 16.  Monsanto denies the allegations in the second sentence of paragraph 16 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 16 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

17.     In response to the allegations in paragraph 17, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 17.

18.     Monsanto denies the allegations in the first three sentences of paragraph 18 and states in further response that, following a May 9-13, 2016 joint meeting, the World Health Organization ("WHO") and United Nations Food and Agricultural Organization reaffirmed their conclusion that "[i]n view of the absence of carcinogenic potential in rodents at human-relevant doses and the absence of genotoxicity by the oral route in mammals, and considering the epidemiological evidence from occupational exposures . . . glyphosate is unlikely to pose a carcinogenic risk to humans :from exposure through the diet."[1]   Monsanto states that the

---

[1] Joint FAO/WHO Meeting on Pesticide Residues, Geneva, 9-13 May 2016, Summary Report (issued 16 May 2016), available at http://www.who.int/foodsafety/jmprsummary2016.pdf?ua=l.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

allegations in the fourth and fifth sentences of paragraph 18 are vague and ambiguous insofar as they do not specify to which groups within the WHO they refer and therefore Monsanto denies those allegations.  In response to the allegations in the sixth and seventh sentences of Paragraph 18, Monsanto admits that IARC is a subgroup of the WHO and that the seventh sentence accurately quotes from a document maintained on the IARC website.  Monsanto denies the allegations that IARC's monographs are "peer reviewed and approved findings" and denies the suggestion that the IARC working group conducts any independent studies.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the sixth and seventh sentences of paragraph 18 and therefore denies those allegations.

19.    In response to the allegations in paragraph 19, Monsanto states that the document referenced speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 19.

20.    In response to the allegations in paragraph 20, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that the "working group" classified glyphosate as a Group 2A herbicide.  Monsanto denies that the working group conducted a thorough review of the studies and data relating to glyphosate and denies that the monograph was "peer reviewed."  Monsanto denies the remaining allegations in paragraph 20.

21.    In response to the allegations in Paragraph 21, Monsanto admits that the scientific evidence does not support the finding of a causal link between glyphosate and "blood borne and other diseases" to humans. Monsanto otherwise denies the allegations in paragraph 21.

22.    In response to the allegations in Paragraph 22, Monsanto admits that the scientific evidence establishes that Roundup® branded herbicides are safe for humans when used according to their labeling.  Monsanto denies the remaining allegations in paragraph 22.

23.    Monsanto admits the allegations in the first two sentences of paragraph 23 and admits that it has marketed Roundup® branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto admits that certain Roundup® branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that

the specific surfactants and adjuvants used in Roundup® branded herbicides – like those in other manufacturers' herbicide products –  are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup® branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 23.

24.     Monsanto admits the allegations in paragraph 24.

25.     Monsanto states that the allegations in the first sentence of paragraph 25 are vague and ambiguous, and therefore Monsanto denies those allegations.  Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 25 set forth conclusions of law for which no response is required.

26.     The allegations in paragraph 26 set forth conclusions of law for which no response is required.

27.     In response to the allegations in paragraph 27, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States, including in Oklahoma.    In response to the remaining allegations in paragraph 27, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety.  Monsanto states that the term "the product tests" in the final sentence of paragraph 27 is vague and ambiguous, and it therefore denies the same.  The remaining allegations in paragraph 27 set forth conclusions of law for which no response is required.

28.     Monsanto denies the allegations in paragraph 28 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth

of the allegations in paragraph 28 regarding such pesticide products generally.  The remaining allegations in paragraph 28 set forth conclusions of law for which no response is required.

29.    In response to the allegations in paragraph 29, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and that EPA has not released its final findings. Monsanto states, however, that:  (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment" [2]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans." [3]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'." [4] Monsanto denies any remaining allegation in paragraph 29.

30.    In response to the allegations in paragraph 30, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

---

[2] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[3] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[4] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.epa.gov/sites/production/files/2017-12/documents/revised_glyphosate_issue_paper_evaluation_of_carcinogenic_potential.pdf.

that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto denies the remaining allegations in paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct

- 8 -

testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  Monsanto admits that Industrial Bio-Test ("IBT") Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.  To the extent that the allegations in paragraph 31 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

32.     Monsanto denies the allegations in paragraph 32 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.  To the extent that the allegations in paragraph 32 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

33.     In response to the allegations in paragraph 33, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 33 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

34.     In response to the allegations in paragraph 34, Monsanto admits that Roundup® branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 34 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

35.     In response to the allegations in paragraph 35, Monsanto admits that, following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 35 and accordingly denies those allegations.  The remaining allegations in paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

36.     In response to the allegations in paragraph 36, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 36 and accordingly denies the same.  The remaining allegations in paragraph 36 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

37.     In response to the allegations in paragraph 37, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

38. In response to the allegations in paragraph 38, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 38 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

39. Monsanto denies the allegations in paragraph 39.

40. In response to the allegations in paragraph 40, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 40.

41. In response to the allegations in paragraph 41, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 41, which are not limited as of any specified date, and accordingly denies the same. Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 41.

42. Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43. Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that it reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

a belief as to the truth of the remaining allegations in paragraph 43 and therefore denies those allegations.

44.     In response to the allegations in paragraph 44, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances.   Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the allegations in paragraph 45 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.  To the extent that the allegations in the final sentence of paragraph 45 mean that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations.

46.     In response to the allegations in the first two sentences of paragraph 46, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any

1   evidence of a human health concern from such exposures.  Monsanto denies the remaining

2   allegations in paragraph 46.  The IARC working group concluded that there was only limited

3   evidence of carcinogenicity in epidemiologic studies, which, per IAR's guidelines, means that

4   the working group could not rule out chance, bias or confounding so as to reach any conclusion

5   of an increased risk.

6        47.    In response to the allegations in the first two sentences of paragraph 47, Monsanto

7   admits that the working group cited to a study that it concluded provided evidence of

8   chromosomal damage in community residents reported to be exposed to glyphosate, but

9   Monsanto denies that the study supports such a conclusion or that the authors of the study

10  reached such a conclusion.  In response to the remaining allegations in paragraph 47, Monsanto

11  admits that the IARC working group purported to make these findings, but denies that the animal

12  carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for

13  or increase in any of the identified tumors.  Monsanto further states that regulatory agencies

14  around the world have reviewed the same animal studies and concluded that they do not provide

15  evidence that glyphosate can cause cancer. Monsanto otherwise denies the remaining allegations

16  in paragraph 47.

17       48.    In response to the allegations in the first three sentences of paragraph 48,

18  Monsanto admits that the IARC working group purported to make these findings but denies that

19  the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate

20  or AMPA are present or persist in human blood or urine.  In response to the allegations in the

21  fourth sentence of paragraph 48, Monsanto admits that the IARC working group interpreted a

22  selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but

23  Monsanto denies that the working group reliably considered the full body of scientific data on

24  such alleged genotoxic endpoints and denies that the working group reliably interpreted the

25  studies that it selected for consideration.  Regulators around the world repeatedly have

26  concluded that glyphosate is not genotoxic. In response to the allegations in the last two

27  sentences of paragraph 48, Monsanto admits that the IARC working group purported to find

28

such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto otherwise denies the remaining allegations in paragraph 48.

49.    In response to the allegations in paragraph 49, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.   The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 49.

50.    In response to the allegations in paragraph 50, Monsanto admits that the Complaint accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

51.    Monsanto states that the term "toxic" as used in paragraph 51 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require an answer.  To the extent an answer is required, Monsanto denies the allegations in paragraph 51.  Monsanto otherwise denies the remaining allegations in paragraph 51.

52.    In response to the allegations in the first sentence of paragraph 52, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent the first sentence of paragraph 52 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 52.  In response to the remaining allegations in paragraph 52, Monsanto states that the document speaks for itself and does not require an answer.  To the extent an answer is required, Monsanto denies the remaining allegations in paragraph 52.

53.    In response to the allegations in paragraph 53, Monsanto states that the cited document speaks for itself and does not require an answer.   To the extent paragraph 53

characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 53.

54.      In response to the allegations in paragraph 54, Monsanto states that the cited document speaks for itself and does not require an answer.   To the extent paragraph 54 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 54.

55.      In response to the allegations in Paragraph 55, Monsanto admits that it was aware of the publications identified in paragraphs 51-54 but denies plaintiff's characterization of those studies.  Monsanto denies the allegations in the second sentence of paragraph 55.  In response to the allegations in the final sentence of paragraph 55, Monsanto admits that it has in the past promoted, and continues to promote, Roundup® branded herbicides as safe when used in accordance with the product's labeling. Monsanto denies the remaining allegations in the final sentence of paragraph 55.

56.      In response to the allegations in paragraph 56, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions in certain countries regarding the sale of glyphosate-based herbicides, including the Netherlands.  Monsanto denies that any final conclusion has been reached in these countries and denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto otherwise denies the allegations in paragraph 56.

57.      In response to the allegations in the first sentence of paragraph 57, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate. In response to the allegations in the second sentence of paragraph 57, Monsanto further admits that, in France, the sale to and use by amateurs (i.e., non- professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions.   Monsanto otherwise denies the remaining allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 58.

59.     In response to the allegations in paragraph 59, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.   Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 60.

61.     In response to the allegations in paragraph 61, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC.  Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC

classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[5]  Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution.  On February 26, 2018, a federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional.  The remaining allegations in paragraph 61 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 61.

62.    The allegations in paragraph 62 set forth conclusions of law for which no response is required.  Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning.  Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

63.    In response to the allegations in Paragraph 63, Monsanto admits that it has brought a lawsuit challenging OEHHA' notice of intent to include glyphosate on its Proposition 65 list and admits that plaintiff accurately quotes from Monsanto's complaint in that lawsuit.  Monsanto's complaint in that lawsuit speaks for itself.  Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[6] The remaining allegations in paragraph 63 comprise attorney characterizations and are accordingly denied.

64.    In response to the allegations in paragraph 64, Monsanto admits that, on November 12, 2015, the European Food Safety Authority issued its Renewal Assessment Report

---

[5] OEHHA, Public Health Goal for Glyphosate in Drinking Water (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.
[6] OEHHA, Public Health Goal for Glyphosate in Drinking Water (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907.pdf.

(RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[7]  Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR).  Monsanto admits that the European scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

65.     In response to the allegations in paragraph 65, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally.  Monsanto otherwise admits the allegations in paragraph 65.

66.     Monsanto admits the allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies the allegations in paragraph 67 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group.  Monsanto states that in the same document cited by plaintiffs, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumour incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[8]  To the extent that paragraph 67 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate based herbicides.  Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.  Monsanto denies the remaining allegations in paragraph 68.

---

[7] *See EFSA, Glyphosate: EFSA updates toxicological profile,* http://www.efsa.europa.eu/en /press/news/151112.

[8] EFSA, *EFSA Explains Risk Assessment Glyphosate,* http://www.efsa.europa.eu/sites/default /files/corporate_publications/files/efsaexplainsglyphosate151112en.df.

69.     In response to the allegations in Paragraph 69, Monsanto admits that Dr. Christopher Portier sent the letter identified in paragraph 69 (hereinafter "the Portier letter"). Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" or "renowned international experts in the field."   Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert plaintiffs' counsel.  Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

70.     In response to the allegations in paragraph 70, Monsanto states that the cited Portier letter speaks for itself and does not require a response.  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[9]  To the extent that paragraph 70 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with reasonable confidence."[10]  Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached

---

[9] *See EFSA, Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.
[10] http://publications.iarc.fr/_publications/media/download/4566/1f986e57ea2ddd9830fec223aea bc740d0bb2eca.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11]  In response to the remaining allegations in paragraph 71, Monsanto states that the cited Portier letter speaks for itself and does not require a response.   To the extent that paragraph 71 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 71.

72.    In response to the allegations in paragraph 72, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.  Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12] To the extent that paragraph 72 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 72.

73.    In response to the allegations in paragraph 73, Monsanto states that the cited Portier letter speaks for itself and does not require an answer.  Monsanto further admits that Dr. Portier – who is a consultant for plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[13] To the extent that paragraph 73 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 73.

74.    In response to the allegations in paragraph 74, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 74 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 74.

[11] See EFSA, Glyphosate: *EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.
[12] See EFSA, Glyphosate: *EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.
[13] See EFSA, Glyphosate: *EFSA updates toxicological profile*, http://www.efsa.europa.eu /en/press/news/151112.

75.     In response to the allegations in paragraph 75 and its subparts, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 74 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 74.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 76 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 77 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 78 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  Monsanto further admits that the U.S. Government Accounting Office issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to the remaining allegations in paragraph 79, Monsanto states that the cited documents speak for themselves and do not

require an answer. To the extent that paragraph 79 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the March 7-8, 2016 meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 80.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

81.     In response to the allegations in paragraph 81, Monsanto states that the cited document speaks for itself and does not require an answer.  To the extent that paragraph 81 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto states that the cited document speaks for itself and does not require an answer.  To the extent that paragraph 82 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 82.

83.     Monsanto admits the allegations in paragraph 83.

84.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 84 and therefore denies the allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 85 and therefore denies the remaining allegations in paragraph 85.

86.     In response to the allegations in paragraph 86, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 86 and therefore denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto denies that any exposure to Roundup® branded products was injurious to plaintiff's health.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 and therefore denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto denies that Roundup® branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup® branded products was injurious to plaintiff's health or the health of others.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 and therefore denies the remaining allegations in paragraph 88.

89.     Monsanto denies the allegations in paragraph 89.

90.     Monsanto denies the allegations in paragraph 90.

91.     Monsanto denies the allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup® and glyphosate and denies that glyphosate is injurious to human health.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification for glyphosate were all publicly available before July 2015.  Monsanto denies the allegations in the final sentence of paragraph 92.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 92 and therefore denies the remaining allegations in paragraph 92.

92.1    In response to the allegations in Paragraph 92.1, Monsanto admits that Roundup® branded products are safe for use in accordance with the labeling; that the scientific evidence does not support any causal link between Roundup® branded products and "blood born cancers" or NHL; and that Monsanto has made statements to that effect in accordance with EPA regulation under FIFRA. Monsanto denies the remaining allegations in paragraph 92.1

1

92.2    Monsanto denies the allegations in paragraph 92.2

2

93.    In response to the allegations in Paragraph 93, Monsanto admits that it has made

3

statements with respect to the safety of Roundup in accordance with EPA regulation under

4

FIFRA. Monsanto states that the first sentence in paragraph 93 sets forth conclusions of law for

5

which no response is required. Monsanto lacks information or knowledge sufficient to form a

6

belief as to the truth of the remaining allegations in paragraph 93 and therefore denies the

7

remaining allegations in paragraph 93.

8

94.    In response to the allegations in the first sentence of paragraph 94, Monsanto

9

denies that there is any risk of NHL or other serious illness associated with the use of and/or

10

exposure to Roundup® and glyphosate. Monsanto states, however, that the scientific studies

11

upon which IARC purported to base its classification for glyphosate were all publicly available

12

before July 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the

13

truth of the remaining allegations in the first sentence of paragraph 94 and therefore denies those

14

allegations. The final sentence of paragraph 94 sets forth conclusions of law for which no

15

response is required.

16

95.    The first sentence of paragraph 95 sets forth conclusions of law for which no

17

response is required. Monsanto denies the allegations in the final sentence of paragraph 95.

18

96.    Monsanto denies the allegations in paragraph 96.

19

97.    Monsanto incorporates by reference its responses to paragraphs 1 through 96 in

20

response to paragraph 97 of plaintiff's Complaint.

21

98.    In response to the allegations in paragraph 98, Monsanto lacks information or

22

knowledge sufficient to form a belief as to the truth of the allegation that plaintiff used

23

Roundup®-branded products and therefore denies that allegation. Monsanto denies the

24

remaining allegations in paragraph 98.

25

99.    Monsanto denies the allegations in paragraph 99.

26

100.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth

27

of the allegations in the first sentence of paragraph 100 and therefore denies those allegations.

28

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

101.   Monsanto denies the allegations in paragraph 101.

102.   Monsanto denies the allegations in paragraph 102 and each of its subparts.

103.   In response to the allegations in the first sentence of paragraph 103, Monsanto denies that Roundup® branded products have "dangerous characteristics."   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 103 and therefore denies those allegations.   Monsanto denies the final sentence of paragraph 103.

104.   Monsanto denies the allegations in paragraph 104.

105.   Monsanto denies the allegations in paragraph 105.

106.   Monsanto denies the allegations in paragraph 106.

107.   Monsanto incorporates by reference its responses to paragraphs 1 through 106 in response to paragraph 107 of plaintiff's Complaint.

108.   Monsanto denies the allegations in paragraph 108.   All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

109.   Monsanto denies the allegations in paragraph 109.

110.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 155 concerning plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.   Monsanto denies the remaining allegations in paragraph 155, including that Roundup® branded products have "dangerous characteristics."

111.   Paragraph 111 sets forth conclusions of law for which no response is required.   To the extent that a response is required, Monsanto denies the allegations in paragraph 111.

112.   Monsanto denies the allegations that Roundup® branded products have dangerous propensities and accordingly denies the allegations in paragraph 112.

113.   Monsanto denies the allegations in paragraph 113.

114.   Monsanto denies the allegation that Roundup® products are dangerous when used in a reasonably foreseeable manner.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 114 and therefore denies the allegations in paragraph 126.   All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

115.   Monsanto denies the allegations in paragraph 115.   All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

116.   Monsanto denies the allegations in paragraph 116.   All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

117.   Monsanto denies the allegations in paragraph 117.   All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

118.   Monsanto incorporates by reference its responses to paragraphs 1 through 117 in response to paragraph 118 of plaintiff's Complaint.   In response to the final sentence of paragraph 130, Monsanto admits that plaintiff purports to bring claims for negligence but denies that it was negligent in any way.

119.   Monsanto denies the allegations in paragraph 119.

120.   Monsanto denies the allegations in paragraph 120.

121.   Monsanto denies the allegations in paragraph 121 to the extent they suggest that Monsanto has not conducted safety studies on Roundup® branded products or on the surfactants and adjuvants used in Roundup® branded products or that Monsanto used surfactants or adjuvants in Roundup® branded products that were not approved by EPA under FIFRA. Monsanto further states that the word "toxic" as used in paragraph 121 is vague and ambiguous and therefore denies that allegation. Monsanto denies the remaining allegations in paragraph 121.

- 26 -

122.   Monsanto denies the allegations in paragraph 122.  All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

123.   Monsanto denies the allegations in paragraph 123.

124.   Monsanto denies the allegations in paragraph 124, including each of its subparts.

125.   Monsanto denies the allegations in paragraph 125.

126.   Monsanto denies the allegations in paragraph 126.

127.   In response to the first sentence of paragraph 127, Monsanto incorporates by reference its responses to paragraphs 1 through 126.  Monsanto denies the allegations in the second sentence of paragraph 126 to the extent it encompasses all herbicides as vague and ambiguous but Monsanto admits the allegations in this sentence to the extent it refers to glyphosate based herbicides.  In response to the final sentence of paragraph 127, Monsanto admits that plaintiff purports to bring claims for breach of express warranty.  Monsanto denies the allegations that Roundup® branded products are defective and unreasonably dangerous to consumers and therefore denies the remaining allegations in paragraph 127.

128.   Paragraph 128 and its subparts set forth conclusions of law for which no response is required.

129.   In response to the allegations in Paragraph 129, Monsanto admits that it has sold glyphosate based herbicides in accordance with their EPA-approved labeling.  Monsanto further states that paragraph 129 sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 129.

130.   Monsanto denies the allegations in the first and second sentence of paragraph 130. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto states that the final sentence of paragraph 130 sets forth conclusions of law for which no response is required.

131.   The first sentence of paragraph 131 sets forth conclusions of law for which no response is required.  Monsanto denies the allegations in the final sentence of paragraph 131.

132.   Monsanto denies the allegations in paragraph 132 and each of its subparts.

133.   Monsanto states that the allegation in paragraph 133 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 133and therefore denies those allegations.

134.   Monsanto denies the allegations in paragraph 134to the extent that they allege that Monsanto made false or incomplete statements and representations concerning Roundup®.  All labeling ofRoundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 134 regarding plaintiff's knowledge and therefore denies those allegations.

135.   In response to the first sentence of paragraph 135, Monsanto incorporates by reference its responses to paragraphs 1 through 134.  In response to the final sentence of paragraph 135, Monsanto admits that plaintiff purports to bring claims for breach of implied warranty.

136.   Paragraph 136 sets forth conclusions of law for which no response is required.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 136 regarding alleged use and exposure and therefore denies those allegations.

137.   In response to the allegations in Paragraph 137, Monsanto admits that it sells Roundup® branded herbicides and states that all labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.  Monsanto denies that Roundup® branded herbicides have dangerous propensities to humans when used as directed or carry an increased risk of developing severe injuries, including the plaintiff's injuries.  Monsanto states that the third and fourth sentences of paragraph 137 set forth conclusions of law for which no response is required.  Monsanto denies the allegation in the final sentence of paragraph 137 regarding "concealed risks."  Monsanto otherwise lacks

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC

information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 137 and therefore denies those allegations.

138.   Monsanto denies the allegations in paragraph 138.

139.   In response to paragraph 139, Monsanto incorporates by reference its responses to paragraphs 1 through 138.

140.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 140 and therefore denies those allegations.

141.   Monsanto denies the allegations in paragraph 141.

142.   Monsanto denies the allegations in paragraph 142.

143.   In response to paragraph 143, Monsanto incorporates by reference its responses to paragraphs 1 through 142.

144.   Monsanto admits that Plaintiff is seeking wrongful-death damages in excess of $75,000 but denies that she is entitled to any such relief and further denies its liability.

145.   Monsanto admits that Plaintiff is seeking loss-of-consortium damages in excess of $75,000 but denies that she is entitled to any such relief and further denies its liability.

146.   Monsanto admits that Plaintiff is seeking punitive damages in excess of $75,000 but denies that she is entitled to any such relief and further denies its liability.

147.   In response to the first sentence of the "WHEREFORE" paragraph following paragraph 146, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.   Monsanto denies that plaintiff is entitled to the relief sought, including any judgment for any damages, interest, costs, or any other relief whatsoever.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

1

**SEPARATE AND AFFIRMATIVE DEFENSES**

2      1.     The Complaint, in whole or part, fails to state a claim or cause of action upon

3  which relief can be granted.

4      2.     Plaintiff's claims are barred because plaintiff cannot proffer any scientifically

5  reliable evidence that the products at issue were defective or unreasonably dangerous.

6      3.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was

7  so insubstantial as to be insufficient to be a proximate or substantial contributing cause of

8  plaintiff's alleged injuries.

9      4.     Plaintiff's claims are barred, in whole or in part, because the products at issue were

10  designed, manufactured, marketed and labeled with proper warnings, information, cautions and

11  instructions, in accordance with the state of the art and the state of scientific and technological

12  knowledge.

13      5.     Plaintiff's claims are barred, in whole or in part, because the products at issue were

14  not defective or unreasonably dangerous in that they complied with, at all relevant times, all

15  applicable government safety standards.

16      6.     Plaintiff's claims are preempted, in whole or in part, by applicable federal law

17  relating to the design, testing, producing, manufacturing, labeling, distributing, modeling,

18  processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

19      7.     Plaintiff's claims are preempted, in whole or in part, because of U.S. EPA findings

20  that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product

21  labeling.

22      8.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary

23  jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

24      9.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if

25  any, were the result of conduct of plaintiff, independent third parties, and/or events that were

26  extraordinary under the circumstances, not foreseeable in the normal course of events, and/or

27

28

independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

10.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

11.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

12.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

13.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from:  (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

14.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

15.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

16.     Plaintiff's claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

17.     Plaintiff's claims for punitive, exemplary, and/or treble damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Oklahoma Constitution, and/or other applicable state constitutions.

18.     Plaintiff's claims for punitive, exemplary, and/or treble damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Oklahoma law, and/or other applicable state laws.

19.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

20.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

21.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

22.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

23.     If plaintiff has been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

24.     Plaintiff has failed to allege fraud with sufficient particularity.

25.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

26.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

27.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## **JURY TRIAL DEMAND**

Monsanto demands a jury trial on all issues so triable.

DATED:  March 22, 2021.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: */s/ Jennise W. Stubbs*
    Jennise W. Stubbs
    600 Travis Street, Suite 3400
    Houston, TX 77002-2926
    Telephone:  (713) 227-8008
    Facsimile:  (713) 227-9508
    Email:    jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of March, 2021, I electronically transmitted the foregoing **DEFENDANT MONSANTO COMPANY'S ORIGINAL ANSWER** to the Clerk of the court using the ECF system for filing and transmittal of a true and correct copy of the foregoing document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

*/s/Jennise W. Stubbs*
Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-vc-01505-VC