Ken Moll
Rebecca Fredona
Fatima Abuzerr
**MOLL LAW GROUP**
22 W Washington St
15th Floor
Chicago, IL 60602
T: 312.462.1700
F: 312.756.0045
rfredona@molllawgroup.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Cervantes v. Monsanto Co. 3:19-cv-3015-VC*<br>*Karman v. Monsanto Co., 3:19-cv-01183-VC*<br>*Pecorelli v. Monsanto Co., 3:16-cv-06936-VC*<br>*Peterson v. Monsanto Co., 3:18-cv-07271-VC*<br>*Rehak v. Monsanto Co., 3:19-cv-01719-VC*<br>*Schafer v. Monsanto Co., 3:19-cv-02169-VC* | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: ILLINOIS WAVE 2 PLAINTIFFS ON ILLINOIS LAW GROUNDS** |

<u>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: ILLINOIS WAVE 2 PLAINTIFFS ON ILLINOIS LAW GROUNDS**</u>

1

## **TABLE OF CONTENTS**

I.   Introduction…………………………………………………...…...…1

II.  Summary of Claims……………………………………………………1

III. Legal Standard………………………………………………………1

IV. Argument……………………………………………………………2

    A.  Plaintiffs Have Submitted The Required Admissible
       Expert Testimony On Causation……………………………………2

    B.  Plaintiffs Have Satisfied Their Evidentiary Burden
       On Their Design Defect Claims……………………………………4

    C.  Defendant Had A Duty To Warn Plaintiffs Of The
       Cancer Risks Associated With Roundup……………………...…6

    D.  Plaintiffs Have Presented Evidence That Roundup
       Was Unreasonably Dangerous When It Was Sold To Plaintiffs……7

    E.  Plaintiff Cervantes' Express Warranty Claim Should
       Not Be Denied For Lack of Privity…………………………………7

    F.  Plaintiffs' Claims For Punitive Damages Are Proper………………8

    G.  Plaintiffs Are Entitled To Attorney's Fees and Costs………………9

V.  Conclusion…………………………………………………………..9

- ii –

## TABLE OF AUTHORITIES

**Cases:**

Adams v. Carlson,
    521 F.2d 168, 170. (7th Cir. 1975). .................................................................9

Adams v. Northern Illinois Gas Co.,
    211 Ill. 2d 32, 43, 809 N.E.2d 1248, 284 Ill. Dec. 302 (2004). .....................2

Albano v. Shea Homes, LTD, P'Ship,
    634 F.3d 524, 530 (9th Cir. 2011). .................................................................1

Aquino v. C.R. Bard Inc.,
    413 F. Supp. 3d 770 (N.D. Ill. 2019). ............................................................8

Baltus v. Weaver Div. of Kidde & Co.,
    199 Ill. App. 3d 821, 834. ..............................................................................2

Daniels v. John Crane, Inc.,
    2019 IL App (1st) 190170, P40. .....................................................................2

Espinoza v. Elgin, Joliet & Eastern Ry. Co.,
    165 Ill. 2d 107, 114, 649 N.E.2d 1323, 208 Ill. Dec. 662 (1995). .................2

First Nat'l Bank of Dwight v. Regent Sports Corp.
    803 F.2d 1431, 1438 (7th Cir. 1984). .............................................................7

Hutton v. Boeing Co.,
    2015 IL App (1st) 142697-U, P27. ..................................................................8

Keeley & Sons, Inc. v. Zurich Am. Ins. Co.,
    409 Ill. App. 3d 515, 524. ..............................................................................5

Kelsay v. Motorola Inc.,
    74 Ill. 2d 172, 186 (1978). .............................................................................8

Mikolajczyk v. Ford Motor Co.,
    231 Ill. 2d 516, 525 (2008). .......................................................................4, 5

Sollami v. Eaton,
    201 Ill. 2d 1, 7 (2002). ...................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. Introduction

Wave 2 Plaintiffs Gerard Cervantes, Christine Karman (individually and as representative of the estate of her husband, Michael Pecorelli), Mark Pecorelli (individually and as representative of the estate of his father, Michael Pecorelli), James Peterson, Lorraine Rehak, and John Schafer (collectively the "Plaintiffs") brought claims against Defendant in the Northern District of Illinois asserting that exposure to Defendant's herbicide product, Roundup, caused their non-Hodgkin lymphoma. Defendant Monsanto has moved for summary judgment alleging that the Plaintiffs have failed to prove (1) general and specific causation; (2) a specific defect in Roundup's design, as opposed to a labeling defect, caused their injuries; (3) Defendant had a duty to warn of Roundup's cancer risk at the time of relevant exposures; (4) an independent basis for implied warranty claims; (5) Defendant made any affirmative express warranty that was breached, or privity with Defendant; (6) that was flagrantly indifferent to Roundup's alleged risks such that punitive damages may be awarded; and (7) their right to attorneys' fees and costs. Plaintiff's oppose Defendant's motion for summary judgment for reasons listed below.

## II. Summary Of Claims

Plaintiffs are all Illinois residents who were exposed to Roundup over many years due to Defendant's sales and distribution of Roundup in Illinois. All Plaintiffs have asserted the following causes of action under Illinois law: Strict Liability (Design Defect); Strict Liability (Failure to Warn); Negligence; and Breach of Implied Warranties. Plaintiff Cervantes also asserts a claim for Breach of Express Warranty.

## III. Legal Standard

"A Federal Court sitting in diversity applies the substantive law of the state, including the states' statute of limitations [including tolling rules]." Albano v. Shea Homes, LTD, P'Ship, 634 F.3d 524, 530 (9th Cir. 2011). In Illinois, summary judgment is proper when the "pleadings,

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). In Illinois, summary judgment is a *drastic* means of disposing of litigation and "should be allowed only when the right of the moving party is clear and free from doubt." Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 284 Ill. Dec. 302 (2004). "[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 208 Ill. Dec. 662 (1995). In ruling on a motion for summary judgment, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. Adams, at 211 Ill. 2d at 43.

**III. Argument**

    **A. Plaintiffs Have Submitted The Required Admissible Expert Testimony ON Causation.**

Plaintiffs have submitted the required admissible expert testimony. In an Illinois, products liability action, specialized knowledge or expertise outside a layman's knowledge is often appropriate. Baltus v. Weaver Div. of Kidde & Co., 199 Ill. App. 3d 821, 834. Summary judgment is proper where the plaintiff has simply failed to present expert opinion or indicate what opinion would be forthcoming. Baltus at 827. The Seventh Circuit has concluded in Illinois, causation requires the plaintiff to prove that the defendants' acts or products were simply a substantial contributing factor to the plaintiff's illness. Daniels v. John Crane, Inc., 2019 IL App (1st) 190170, P40.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the case at bar, the Plaintiffs have submitted expert reports and deposition testimony on specific and general causation. In addition, this Court has already considered and rejected the argument that Plaintiffs' experts employed unscientific, litigation-driven methodology in PTO 85, calling it "off point." See PTO 85 at 2, see also PTO 45. Plaintiffs hereby incorporate the following pleadings that were filed in the MDL docket on the matter:

- Plaintiffs' Response in Opposition to Monsanto's Specific Causation *Daubert* and Summary Judgment Motion and *Daubert* Motion to Strike Certain Opinions of Monsanto Company Company's Expert Witnesses (ECF #2478);

- Plaintiffs' Response in Opposition to Monsanto's Motion for Judgment as a matter of Law and for a New Trial (ECF # 4135).

As explained more fully in Plaintiff's response to Defendant's Rule 702 motions to exclude the specific causation experts (Weisenburger, Pinter-Brown, and Schiff), Plaintiffs' experts applied differential diagnosis, which consisted of identifying risk factors for NHL, determining whether Plaintiffs were susceptible to a risk factor, and arriving at a conclusion of that the specific risk factor(s) contributed to the Plaintiffs' NHL. Contrary to Defendant's assertion, Plaintiffs' experts' methodology is not designed to always find Roundup exposure caused a plaintiff's NHL; Plaintiffs' experts considered other risk factors and came to an opinion.

For example, Dr. Schiff did consider other potential causation factors in his report for Plaintiff Cervantes:

"IARC has also found a positive epidemiologic association between benzene exposure and the development of non-Hodgkin lymphoma, although the data are less consistent…IARC, which uses the term 'excess body fatness" to encompass overweight and obesity, has concluded that there is limited evidence for an association with the development of diffuse large B-cell lymphoma".

Fredona Decl., Ex.1, Schiff Cervantes Rpt. at. p 11 ¶ 9- 12¶ 10. For Plaintiff Karman, Dr. Schiff also thoroughly explains in his report, why age is not directly causative:

- 3 –

1

2

"increased likelihood of developing non-Hodgkin lymphoma with advancing age may, at least in some cases, reflect the acquisition and accumulation of predisposing mutations in hematopoietic stem cells or other cells in the bone marrow, or the natural decline in immune system function which accompanies aging."

Fredona Decl., Ex. 2, Schiff *Karman* Rpt. at 20 ¶ 7, 21 ¶ 9.For Plaintiff Rehak, Dr. Schiff examined gender as risk factor: "This appears to not be broken down by gender, so that has limited applicability… some of these comparisons do not reach statistical significance…" Attached to Monsanto's Motion to exclude, ECF 12789, Ex. 6, Schiff *Rehak* Dep. at 29:12-30:3. Additionally, for Plaintiff Schafer, Dr. Schiff thoroughly explained he **would** exclude Roundup as a contributing factor if the shoe fits:

> **Q:** Is there anything else that you would look at that would allow you to exclude Roundup as a substantial contributing factor?

> **A:** …If the lymphoma manifested and was diagnosed before the Roundup exposure, or very early after the onset of Roundup exposure, that would be an argument against a causative association…
> Attached to Monsanto's Motion to Exclude,

Ex. 4, Schiff *Schafer* Dep. 38:11-39:3. Thus, Plaintiffs' experts have considered other factors before concluding that Roundup exposure was the cause of Plaintiffs' NHL. In addition, as required by Illinois law. Plaintiffs' case specific experts have all concluded that Roundup exposure was the cause of the Plaintiffs' NHL. Thus, summary judgment is not proper as Plaintiffs' experts have presented admissible testimony.

**B. Plaintiffs Have Satisfied Their Evidentiary Burden On Their Design Defect Claims.**

For product liability actions in Illinois, a plaintiff must show (1) that the injury complained of resulted from a condition of the product (2) that the condition that was unreasonably dangerous; and (3) that the condition existed at the time the product left the manufacturer's control. Mikolajczyk v. Ford Motor Co., 231 Ill. 2d 516, 525 (2008). Whether a

- 4 –

product is unreasonably dangerous can be proved by a manufacturing defect, design defect, or inadequate warnings. Id. at 532. In addition, a plaintiff must show that the defect was the cause of their injuries. Id. at 543.

The Defendant asserts that the Plaintiffs cannot satisfy the required elements with respect to the strict liability because the design defect claims are duplicative of the failure to warn claims. However, those claims are not duplicative. For example, under the design defect claim in Plaintiff Karman's Complaint, she asserts that Roundup is "defective in design or formulation, that […] it was unreasonably dangerous in normal use," with no mention in the count as to the product being defective in regards to the Defendant's failure to warn. 1:19-cv-902, ECF 1, Dkt 1 ¶ 153. For Karman's failure to warn claims she asserts that the Defendant "failed to warn of the nature and scope of the side effects associated with Roundup," nowhere in her failure to warn claim does she assert the product is defective due to design. The Defendant is comparing apples and oranges. That being said, the plaintiff is the master of his complaint, and thereby is free to choose any theory of the crime so long as the evidence supports it. Keeley & Sons, Inc. v. Zurich Am. Ins. Co., 409 Ill. App. 3d 515, 524. The Defendant does not get to characterize the Plaintiffs' complaints as it sees fit and win a motion for summary judgment based on its own characterization.

Plaintiffs have also provided competent evidence to support their defective design claims. The Plaintiffs have shown that their injuries resulted from a condition of a product. As noted above, Plaintiffs' case-specific experts have opined that all of Plaintiffs' injuries were caused by Roundup exposure. Plaintiffs have also offered evidence that Roundup was unreasonably dangerous when it left Defendant's control. Plaintiffs' general causation expert has stated in his report "In summary, the data support a conclusion that both glyphosate and glyphosate formulations are genotoxic." Pg. 26, ¶ 2. Glyphosate is the active ingredient in

- 5 –

Roundup. Therefore, Roundup's formula, i.e. its design, is defective in and of itself; as Defendant's designed the product with a carcinogen in the formula. Plaintiffs have adequately provided evidence of all the elements of a design defect claim. In addition, it should be noted that this Court has decided not to rule on motions to exclude general causation experts in order to leave the issue for the district judges who will be trying the cases. See PTO 202. Thus, whether or not Plaintiffs have established causation is an issue to be decided later.

### C. Defendant Had A Duty To Warn Plaintiffs Of The Cancer Risks Associated With Roundup.

In Illinois, a manufacturer has a duty to warn where "the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed such knowledge, knows or should know that harm may occur absent a warning." Sollami v. Eaton, 201 Ill. 2d 1, 7 (2002). Here, the Plaintiffs have established that the Defendant knew glyphosate posed a carcinogenic risk to users of Roundup. As noted above, the Plaintiffs' experts have testified and written reports that support an association between Roundup exposure and NHL. Defendant knew, or should have known that glyphosate could cause cancer as early as 1982, where the EPA found a statistically significant increase in lymphocytic hyperplasia in interstitial tumors in a study of rats exposed to glyphosate. Although armed with this knowledge, Defendant said nothing to its customers or the public and conducted no studies of its own. [1] In fact, this Court has already held that there is evidence that supports a finding of "despicable conduct which [was] carried on by the defendant with a willful and conscious disregard of the rights and safety of others." See PTO 160. Indeed, this Court found that the evidence of Monsanto's conduct at the Hardeman trial "painted the picture of a

---

[1] See EPA, Office of Pesticide and Toxic Substances, Summary of the IBT Review Program Office of Pesticide Programs (July 1983) February 18, 1982 EPA memo re: Lifetime feeding study in rats with glyphosate, available at https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/tred_PC-417300_11-Apr-97.pdf

company focused on attacking and undermining the people who raised concerns, to the exclusion of being an objective arbiter of Roundup's safety. See PTO 160. Thus, not only have the Plaintiffs provided evidence that Roundup is dangerous via their experts' testimony, the Court has already addressed Defendant's attempts (and therefore knowledge) to undermine anyone who raised a concern over Roundup being dangerous.

**D.   Plaintiffs Have Presented Evidence That Roundup Was Unreasonably Dangerous When It Was Sold To Plaintiffs.**

Plaintiffs' breach of warranty claims are sustainable for the same reasons as that their strict liability claims are. Under Illinois law, a breach of implied warranty claim is essentially the same as a claim brought under strict liability. First Nat'l Bank of Dwight v. Regent Sports Corp. 803 F.2d 1431, 1438 (7th Cir. 1984). Therefore, it goes without saying that if a product is unreasonably dangerous under a plaintiff's strict liability claim, then it is also unreasonably dangerous under an implied warranty claim.

In the cases at bar, and already addressed above, the Plaintiffs have provided evidence that Roundup products are unreasonably dangerous through Defendant's formula and failure to warn theories. Therefore, the Court must deny Defendant's motion for summary judgment on Plaintiffs' implied warranty of merchantability claims.

**E. Plaintiffs Cervantes' Express Warranty Claim Should Not Be Denied For Lack Of Privity.**

Plaintiff Cervantes asserts a claim for breach of express warranty under which 810 Ill. Comp. Stat. 5/2-313 provides:

> "It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty."

810 Ill. Comp. Stat. 5/2-313. Under Illinois law, "when a manufacturer expressly warranted its good to the ultimate consumers" and that is "the basis for the bargain and relied upon," a consumer can maintain a breach of express warranty. Aquino v. C.R. Bard, Inc., 413 F. Supp. 3d 770 (N.D. Ill. 2019). Documents, brochures, and advertisements may constitute express warranties. Hutton v. Boeing Co., 2015 IL App (1st) 142697-U, P27. Here, Plaintiff Cervantes relied on television advertisements. In his complaint, Plaintiff Cervantes asserted that Defendant represented that Roundup products "were safe to human health and the environment, effective, fit, and proper for their intended use." Cervantes Compl.  ¶ 194. In his deposition, he provided testimony as such; he stated that he "thought Roundup was the best and we see it on the commercials [...] it's so heavily marketed that in this case it was the product of choice" in regards to weed killers. Fredona Decl., Ex. 3, Dep of Cervantes. at 20 ¶ 7, 21 ¶ 100:5-14. Plaintiff Cervantes relied on Defendant's advertisements that Roundup was the best weed killer when in fact it was an unreasonably dangerous product. Therefore, Plaintiff Cervantes breach of express warranty claims should be sustained.

### F. Plaintiffs' Claims For Punitive Damages Are Proper.

Under Illinois law, punitive damages are appropriate "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." Kelsay v. Motorola Inc., 74 Ill. 2d 172, 186 (1978).

This Court has already ruled the conduct carried on by the Defendant was willful, with a conscious disregard for the safety of other; and awarded punitive damages as such. See PTO 160. In the cases at bar, Defendant knew Roundup could cause NHL and concealed that information. Defendant had the means to know, or actually knew, that the EPA found a statistically significant increase in lymphocytic hyperplasia and interstitial tumors in a 1982

- 8 –

study of rats exposed to glyphosate.[2] The facts about corporate malfeasance have resulted in three jury verdicts against Defendant. This Court affirmed an award of punitive damages in Hardeman v. Monsanto, finding that Defendant's conduct warrants punishment. See PTO 160 (holding that the evidence supported a finding of "despicable conduct which [was] carried on by the defendant with a willful and conscious disregard of the rights and safety of others."). Indeed, this Court found that the evidence of Defendant's conduct at the Hardeman trial "painted the picture of a company focused on attacking and undermining the people who raised concerns, to the exclusion of being an objective arbiter of Roundup's safety." Id. Therefore, punitive damages are proper in the Plaintiffs' cases.

### G. Plaintiffs Are Entitled To Attorney's Fees and Costs.

While the American Courts have generally refused to adopt the English rule regarding attorney's fees, "a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons. Adams v. Carlson, 521 F.2d 168, 170. (7th Cir. 1975). For the same reasons above that this Court should award punitive damages, it should award attorneys' fees and costs as well.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

---

[2] See EPam ,Office of Pesticide and Toxic Substances, "Summary of the IBT Review Program Office of Pesticide Programs (July 1983, February 18, 1982 EPA memo re: Lifetime feeding study in rats with glyphosate available at https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/tred_PC-417300_11-Apr-97.pdf

DATED: April 2, 2021

Respectfully Submitted,

By:     */s/Rebecca Fredona*
Ken Moll
Rebecca Fredona
Fatima Abuzerr
**MOLL LAW GROUP**
22 W Washington St
15th Floor
Chicago, IL 60602
T: 312.462.1700
F: 312.756.0045
rfredona@molllawgroup.com

*Attorneys for Plaintiffs*

- 10 –

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Rebecca Fredona*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
RE: ILLINOIS WAVE 2 PLAINTIFFS ON ILLINOIS LAW GROUNDS**