Ken Moll
Rebecca Fredona
Fatima Abuzerr
**MOLL LAW GROUP**
22 W Washington St
15th Floor
Chicago, IL 60602
T: 312.462.1700
F: 312.756.0045
rfredona@molllawgroup.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.*, 3:19-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:19-cv-07271-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169-VC | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. DENNIS WEISENBURGE *DAUBERT* GROUNDS** |

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. DENNIS WEISENBURGER ON *DAUBERT* GROUNDS**

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................1

II. LEGAL STANDARD ....................................................................................2

III. ARGUMENT ...............................................................................................4

    A. Dr. Weisenburger's Testimony And Opinions In the Wave 2 Cases Are Reliable ..........................................................................................................4

        i. Dr. Weisenburger's Methodology is Reliable and Proper ...........4

        ii. Dr. Weisenburger's Opinions Are Reliable Because He Considered Plaintiffs' Alternative Risk Factors ............................5

        iii. This Court Has Previously Ruled That Plaintiffs' Experts Properly Ruled Roundup as The Cause of Plaintiffs' Non-Hodgkin's Lymphoma .................................................................12

    V. CONCLUSION.........................................................................................12

# TABLE OF AUTHORITIES

**Cases:**

*Clausen v. M/V NEW CARISSA*,
   339 F.3d 1049, 1057 (9th Cir. 2003) ..................................................2, 11

*Cooper v. Takeda Pharmaceuticals America, Inc.*,
   239 Cal. App. 4th 555 (2014) ........................................................3, 9, 10

*In re Roundup Prod. Liab. Litig.*,
   390 F. Supp. 3d 1102 (N.D. Cal. July 10, 2018) ....................................1, 4

*In re Roundup Products Liability Litig.*,
   No. 16-CV-0525-VC (N.D. Cal., July 12, 2019)................................... 1

*Messick v. Novartis Pharmaceuticals Corp.*,
   747 F.3d 1193, 1196 (9th Cir. 2014) ..........................................2, 3, 10

*Primiano v. Cook*,
   598 F.3d 558, 563, as amended (Apr. 27, 2010)  (9th Cir. 2010) ..........................3

*Wendell v. GlaxoSmithKline, LLC*,
    858 F.3d 1227, 1237 (2017) ..................................................2, 9, 10, 11

1

## I. Introduction

Dr. Dennis Weisenburger has more than 40 years of experience and is a highly qualified physician and hematopathologist - currently an Assistant Pathologist at City of Hope National Medical Center in Duarte, California. Fredona Decl., Ex. 1, Dr. Sawyer CV. He is Board Certified by the National Board of Medical Examiners and the Anatomic and Clinical Pathology, American Board of Pathology. *Id.* To date, Dr. Weisenburger has given many dozens of hours of testimony in the Roundup® litigation. He has spent hundreds of hours reviewing published studies, medical records and conducted interviews with Plaintiffs.

Dr. Weisenburger is offering case specific opinions for Gerard Cervantes, John Schafer, James Peterson, Mark Pecorelli, individually and as Representative of the Estate of Michael Pecorelli, deceased and Christine Karman, Individually and as Representative of the Estate of Robert Karman, deceased.  Dr. Weisenburger will testify regarding causes of cancer, causes of non-Hodgkin's lymphoma, whether exposure to glyphosate and/or glyphosate-based formulated products can cause cancer, and particularly non-Hodgkin's lymphoma, including testimony in the areas of epidemiology, pathology, hematopathology, cellular changes with the development of NHL and cancer development. These areas of testimony were the subject of his prior testimony in the Roundup litigation.

Monsanto's motion should be denied in full, and the jury should be allowed to consider Dr. Weisenburger's testimony before reaching its conclusions. Monsanto has repeatedly tried and failed to exclude or strike Dr. Weisenburger's opinions. *See In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal. July 10, 2018). (Court finding no basis for excluding Dr. Weisenburger's opinion) ; *In re Roundup Products Liability Litigation* (N.D. Cal., July 12, 2019, No. 16-CV-0525-VC) 2019 WL 3219360, at *1 (Dr. Weisenburger's testimony admissible where he testified that Hardeman's "...exposure levels still far exceeded the threshold used in most of the epidemiological literature, and specifically the McDuffie and Eriksson studies."). Further, Monsanto makes the same arguments in its Motion regarding Dr. Weisenburger in Plaintiffs Gerard Cervantes, John Schafer, James Peterson, Mark Pecorelli, individually and as Representative of the Estate of Michael Pecorelli, deceased and Christine Karman, Individually

- 1 -

1
2
3
4
5
6
7
8

and as Representative of the Estate of Robert Karman, deceased, cases as Monsanto made in motions regarding Dr. Sawyer in Wave One cases. This Court has already considered and denied Monsanto's previous Motions' to Exclude Testimony of Plaintiffs Specific Causation Expert Dr. Weisenburger in Pre-Trial Order ("PTO") 203, Dkt. No. 9144, for the reasons set forth in PTO 85, Dkt. No. 2799.  Because the germane facts, issues and law are essentially the same in all of Monsanto's motions regarding Dr. Weisenburger, Plaintiffs here adopt the Wave One Plaintiffs' Response to Monsanto's Specific Causation *Daubert* and Summary Judgment Motion to Strike Certain Opinions of Monsanto Company's Expert Witnesses (MDL No. 2741 Document 2478).

9
10
11
12

Plaintiffs also incorporate the developing science on glyphosate as set forth in and attached as exhibits to their opposition to Monsanto's Motion for Summary Judgment on Causation Grounds (Dkt. No. 8001). By incorporating by reference prior filings to this pleading, Plantiffs are in no way waiving any arguments raised therein.

13
14
15

In addition to the above briefing and this Court's prior ruling that these experts may testify on specific causation issues, Plaintiffs address the issues that Monsanto contends were not previously decided by the Court.

16

**II. Legal Standard**

17
18
19
20
21
22
23
24
25

The Ninth Circuit has mandated that "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell*, 858 F.3d at 1232 (quoting *Messick v. Novartis Pharm. Corp.*, 747 F3d 1193, 1196 (9th Cir. 2014)). Expert testimony is admissible under Rule 702 when based on a reliable differential diagnosis. *See id.* at 1235 ("Nothing in *Daubert,* or its progeny, properly understood, suggests that the most experienced and credentialed doctors [specifically referencing Dr. Weisenburger and Dr. Shustov] in a given field should be barred from testifying based on a differential diagnosis."). In conducting a differential diagnosis,[1] an expert considers the "pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded." *Id.*

26
27
28

---

[1] *See Wendell,* 858 F.3d at 1234 ("When performing a differential diagnosis, [Dr. Shustov] first assumes the pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded. We have recognized that this method of conducting a differential diagnosis is scientifically sound." (citing *Clausen*, 339 F.3d at 1057-58).

at 1234 (approving Dr. Shustov's methodology). The Ninth Circuit also "consistently recognize[s] the difficulties in establishing certainty in the medical sciences." *Messick v. Novertis Pharm. Corp.*, 747 F.3d 1193, 1197-98 (9th Cir. 2010) (citing *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). Therefore, it is not necessary that "an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is enough that medical condition be a substantial causative factor." *Id.* at 1199; *see also Schultz v. Akzo Nobel paints, LLC,* 721 F.3d 426, 434 (7th Cir. 2013) ("[A] reliable expert should consider alternative causes, they do not require an expert to rule out every alternative cause."); *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 563 (8th Cir. 2014) ("However, we have consistently ruled that experts are not required to rule to all possible causes when performing the differential etiology analysis.")(internal citations omitted).

The relevancy of an expert opinion is governed by California law. *Messick* 747 F.3d at 1196-97. Under California law, "[t]he plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore convince the jury, that is more probable that not the negligent act was a cause-in-fact of the plaintiffs injury." *Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 578 (2015) (quoting *Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003)). "Under the applicable substantial factor test, it is not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of injury with absolute certainty so as to exclude every other possible cause of a plaintff's illness, even if the expert's opinion was reached by performance of a differential diagnosis." *Id*. "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." *Id.* at 595 (quoting CACI 430) (holding that it was unnecessary for expert to rule out smoking as contributing cause to Plaintiff's injury).

- 3 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III. Argument**

   **A. Dr. Weisenburger's Testimony and Opinions In the Wave 2 Cases Are Reliable.**

   **i. Dr. Weisenburger's Methodology is Reliable and Proper.**

   In its Motion to Exclude, Monsanto, attempts to discredit Dr. Weisenburger because a study he co-authored, "found statistically significant increased risks of NHL among welders," almost two decades ago (Monsanto's Motion to Exclude, ECF 12784 at 2). However, Monsanto's reliance on the study is not reliable. In fact, when questioned about that very study, Dr. Weisenburger thoroughly explains as to why he would ***not*** rely upon it. Dr. Weisenburger states:

> "I don't think it's been a consistent finding in other studies… it's not conclusive…you have to have consistency in findings from epidemiologic studies to really have confidence in what you've found is true…one would have to do a more specific, a more detailed study to really know that, but one ***never relies on one study, even if it's your own study***, because there needs to be consistency of findings among multiple studies done by different people in different populations at different times…I'm not sure I would conclude the epidemiologic literature really supports this."

   Attached to Monsanto's Motion to Exclude, Ex. 1, Weisenburger *Cervantes* Dep. 81:16-82:22. The study only focused on 2380 individuals, from several different professions, of which only a small percentage had NHL and an even smaller number of those who were actually welders. *See* Monsanto's Ex. 2, Zheng et al., *Occupation and Risk of Non-Hodgkin's Lymphoma and Chronic Lymphocytic Leukemia,* 44 J. Occupational & Environmental Med. 469 (2002). Indeed, Dr. Weisenburger mistakenly denied to ever conducting research on NHL and welding, however, to expect an expert to recall every single study or publication they have ever published, over their forty (40) year experience is unreasonable.

   This Court has held before that Dr. Weisenburger's "failure to mention data in his expert report, even though he is an author of that study" does not "deem his epidemiology opinion unreliable." *See In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, at *1142 (N.D. Cal., July

- 4 -

10, 2018). Dr. Weisenburger had stated there that he "elected to include published studies in his expert report a defensible choice" and "was willing and able to discuss the NAPP during *Daubert* hearings…" *Id.* Similarly, here, Dr. Weisenburger relied on studies that were more reliable and recent. Dr. Weisenburger has published and peer-reviewed hundreds if not thousands of studies over the course of forty (40) years, therefore, to not have done research, regarding welding, which may not even be available or exist, does not render his opinions unreliable. In fact, Dr. Weisenburger stated he has not done research regarding welding "because I know the literature fairly well and I know that welding is not a known risk factor for non- Hodgkin lymphoma." Monsanto's Ex. 1, Weisenburger *Cervantes* Dep., 52:3-53:1. Monsanto is free to cross-examine Dr. Weisenburger at trial regarding the study and his methodology, however, such disagreements do not render Dr. Weisenburger's opinion unreliable.

### ii. Dr. Weisenburger's Opinions Are Reliable Because He Considered Plaintiffs' Alternative Risk Factors.

Despite Dr. Weisenburger's impressive credentials and substantial review of the actual evidence, such as Plaintiffs' medical records, scientific and medical literature as well as conducting interviews with Plaintiffs, Monsanto claims that his opinions should be excluded for failure to address other risk factors. However, Monsanto is wrong.

### Gerard Cervantes

Monsanto erroneously claims that Dr. Weisenburger failed to consider Mr. Cervantes' exposure to PCB and Benzene. However, Dr. Weisenburger did. Dr. Weisenburger considered how long Mr. Cervantes may have been exposed to Benzene and whether Mr. Cervantes was required to wear personal protective equipment ("PPE") while working for Nicor. Monsanto's Ex. 1, Weisenburger *Cervantes* Dep. at 60:11-61:13. Additionally, Dr. Weisenburger concluded that Benzene, PCB and other chemicals were not a contributing factor in Mr. Cervantes' case because

- 5 -

of the fact that Nicor was required to follow OSHA standards and had periodically conducted tests to detect chemicals in the workplace and "there was never any significant OHSA standard that was exceeded… the levels of these chemicals were always below the OSHA standards…" Monsanto's Ex. 1, *Id*. at 60:25-61:13; *Also see*, Fredona Decl., Ex. 2, Weisenburger *Cervantes* Rpt. p. 3. Thus, Dr. Weisenburger's opinion is reliable because he considered other potential risk factors and ruled them out based off the lack of exposure Mr. Cervantes had with other chemicals.

Monsanto moves to have Dr. Weisenburger's testimony excluded for also admitting there may be more than one contributing factor in Mr. Cervantes' case such as his family history and weight. Monsanto attempts to discredit Dr. Weisenburger for relying on "epidemiologic principle" which is relied on by many experts and physicians alike. Dr. Weisenburger has over forty (40) years of experience, where he has peer-reviewed articles, published studies, editorials and letters as well as contributed to book chapters. *See* Fredona Decl., Ex. 1, Weisenburger CV. If an expert such as Dr. Weisenburger cannot rely upon epidemiologic principle than no expert's testimony will be ever be found admissible in a toxic tort case, which is unreasonable and unrealistic. Additionally, in regard to Mr. Cervantes' weight, Dr. Weisenburger has stated it is a "minor risk factor because the odds ratio is not very high, whether you take it as 1.27 or 1.4" and thoroughly explains that he uses a guideline to establish a cut off to what is considered a minor contributing factor… which is anything less than twofold." Monsanto's Ex. 1, Weisenburger *Cervantes* Dep. at 40:3-41:14; 43:4-22. Here, Mr. Cervantes' weight only had an odds ratio of 1.27, which fell under the twofold cut off Dr. Weisenburger follows, which is also why Dr. Weisenburger considered Mr. Cervantes' weight a "minor risk factor."

**Robert Karman**

Monsanto again attempts to exclude Dr. Weisenburger's because other than Mr. Karman's

- 6 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

weight, no other risk factor was found. Although, smoking was not a factor, Dr. Weisenburger did

conclude that age, race and weight were. Monsanto's Ex. 5, Weisenburger *Karman* Dep. at 84:8-

22. Dr. Weisenburger further explains why these risk factors are not substantially significant in

Mr. Karman's case:

> Q: So were there any other known risk factors that you saw for Mr. Karman other
> than his age, race, gender and weight? A: No. But his weight was the only one that
> was modifiable. Obviously his age, his sex, and his race are all things he can't do
> anything about…Q: and what's modifiable? A: I considered those risk factors, but
> they're not really causative risk factors.

Monsanto's Ex. 5, Weisenburger *Karman* Dep. *Id.* Dr. Weisenburger also supports his

conclusion by explaining why those risk factors are not causative:

> Q: But isn't it true that his risk from being a 77-year-old white male, while not
> modifiable, still is a – a substantial cause of non-Hodgkin's lymphoma in the
> population at large? A: I wouldn't consider it a cause. Otherwise, all 77-year-old men
> have an increased risk of non-Hodgkin's lymphoma, and then what do you compare
> it to, 65-year old men, 55-year old men? Sure, then it is increased, but it isn't
> increased compared to other 77-year old men without other co-risk factors.

*Id.* at 85:11-23. Additionally, Monsanto attempts to discredit Dr. Weisenburger for not

considering Spectracide as a contributing factor. Monsanto's Motion to Exclude, ECF 12784, at 6.

However, Monsanto itself does not even consider Spectracide to be a factor in causing NHL. *Id.* at

6, footnote 7. Thus Dr. Weisenburger's provided a thorough explanation as to why he came to his

opinions and is therefore reliable. Dr. Weisenburger's testimony should not be rendered unreliable

because he considered different risk factors in the development of NHL than Monsanto would agree

with, these differences of opinions go to weight and not admissibility, and Monsanto is free to cross-

examine Dr. Weisenburger on such opinions.

**James Peterson**

Monsanto unsuccessfully attempts to persuade this Court that Dr. Weisenburger has failed

to consider smoking as a significant contributing factor to causing NHL. However, Dr.

- 7 -

Weisenburger's conclusion is based off of medical literature and epidemiological studies. "There were studies that I was involved in that were done by the InterLymph Consurtium that looked at smoking over a number of different pages and different subtypes. And smoking just is not considered a risk factor for non-Hodgkin's lymphoma or for diffuse large B-cell lymphoma" Monsanto's Ex. 7, Weisenburger *Peterson* Dep. at 46:9-47:16. Similar to Mr. Cervantes, Mr. Peterson was overweight, therefore, Dr. Weisenburger applied the same methodology to factor whether or not his weight was a significant contributing factor. Dr. Weisenburger states that Mr. Peterson was considered "overweight rather than obese" and that Mr. Peterson's odds ratio was only 1.27, which is why his weight is only a small risk factor. *Id.* at 68:11-71:2.

Monsanto also attempts to discredit Dr. Weisenburger because he did not consider Mr. Peterson's exposure to Weed-B-Gon, a chemical that Monsanto itself does not consider a cause of NHL. Monsanto's Motion to Exclude, ECF 12784, at 6, footnote 7. Dr. Weisenburger relied on the interview he conducted with Mr. Peterson in regard to how much exposure he had with Weed-Be-Gon or 2,4-D. *Id.* at 33:19-34:15; 43:19-25. Dr. Weisenburger concluded Weed-Be-Gon was not a significant contributing factor in Mr. Peterson's case because "he only used it a few times." *Id.* Dr. Weisenburger also stated that 2,4-D increases the risk of NHL in cases where there has been "extensive heavy use," which is not the case here. *Id.* at 45:8-24.

### Michael Pecorelli

Monsanto attempts to claim that Dr. Weisenburger's testimony on Mr. Pecorelli's exposure to other chemicals is unreliable. However, Dr. Weisenburger specifically stated that studies have shown inconsistent data regarding 2,4-D and its increased risk. Monsanto's Ex. 9, Weisenburger *Pecorelli* Dep. at 99:5-100:4. In fact, Dr. Weisenburger stated that IARC concluded that 2, 4-D was not a definite cause but a possible cause. *Id.* at 99:13-25. Additionally, Dr. Weisenburger was

- 8 -

informed by Mr. Pecorelli's son, during an interview, that Mr. Pecorelli didn't use other chemicals and pesticides that often. *Id.* at 96:19-97:9;100:5-101:3. Monsanto attempts to persuade this Court to believe that Mr. Pecorelli's exposure to other chemicals were significant, however, Dr. Weisenburger states that the other pesticides used were granular. *Id.* at 95:19-96:18. Dr. Weisenburger explains that "you don't get much exposure" to granular pesticides, such as Diazinon, Treflan—Surflan, Treflan granules, diazinon granules are pesticides. *Id.* Therefore, Dr. Weisenburger's opinions are reliable because he assessed Mr. Pecorelli's exposure to other chemicals and also relied on epidemiological studies to support his opinions.

**John Schafer**

Indeed, Dr. Weisenburger did not know the exact number of NHL cases represented in a study reporting threefold increased risk in NHL from Hashimoto's thyroiditis. Monsanto's Ex. 11, Weisenburger *Schafer* Dep. at 97:3-9. However, that information is of no significance and Dr. Weisenburger stated he "thoroughly investigated" what was conducted in the study. *Id.* at 98:5-99:5. In fact, Dr. Weisenburger states: "I've had this same situation in some past cases, so I thoroughly investigated that, because it's a question I wanted to know. It's well known that Hasimoto's thyroiditis increases the risk of thyroid lymphoma…studies show the risk in the thyroid is very high; 60 to 80 times. Whereas the risk outside the thyroid is ***not increased at all***." *Id.* Therefore, Dr. Weisenburger has proven that his opinions are reliable.

\*\*\*

Controlling law in the 9th Circuit and the Cooper case both make clear that Monsanto's request for an exhaustive quest into speculative factors is not needed and does not disqualify an expert from testifying.  Furthermore, Monsanto does not proffer an expert to testify that any of the above speculative exposures were a substantial factor in causing either Plaintiffs' non-Hodgkin's lymphoma.

- 9 -

In <u>*Wendell v. GlaxoSmithKline, LLC,*</u> 858 F.3d 1227, 1237 (2017), the 9th Circuit made clear that:

> "We do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause "be a substantial causative factor."  This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy."

Noting that Dr. Shustov employed sound methodologies and based his opinions on medical records as well as his education training and experience, knowledge of the pertinent medical literature and his knowledge of the epidemiology, diagnosis and natural history of the disease, (hepatosplenic T-cell lymphoma) the 9th Circuit reversed the trial court's grant of summary judgment on the basis that Plaintiff did not present admissible expert testimony of causation.  <u>Id</u>. at 1234.

Likewise, in <u>*Cooper v. Takeda Pharmaceuticals America, Inc.,*</u> 239 Cal. App. 4th 555 (2014), the California Court of Appeals reversed the trial court's determination that the expert, Dr. Smith, was required to rule out all other possible causes for plaintiff's bladder cancer, even where there was no substantial evidence that other such causes might be relevant.

In *Cooper* the defendant argued that the plaintiff was subject to environmental and occupational exposures, including exposure to second hand smoke at work and potential exposure to "anything" during his army service and therefore the expert's opinion should be excluded for failure to track down and investigate these multiple potential causative factors of Plaintiff's bladder cancer.

Additionally, Monsanto's argument is similarly a rehash of the argument this Court also rejected in PTO 85. The Court wrote:

> Recognizing that "[m]edicine partakes of art as well as science," the Ninth Circuit's recent decisions reflect a view that district courts should typically

- 10 -

admit specific causation opinions that lean strongly toward the "art" side of the spectrum. *Messick*, 747 F.3d at 1198; *see also Wendell*, 858 F.3d at 1237 ("The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." (*quoting Clausen*, 339 F.3d at 1060)).

\* \* \*

Under Ninth Circuit caselaw, doctors enjoy wide latitude in how they practice their art when offering causation opinions. *See Wendell*, 858 F.3d at 1237 ("Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions supporting causation, we conclude that *Daubert* poses no bar based on their principles and methodology."). It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an "obvious and known risk factor[]" is the cause of that plaintiff's disease. *See Wendell*, 858 F.3d at 1235. Here, the specific causation experts did that. Relying on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL – the experts concluded that glyphosate was a substantial factor in causing the plaintiffs' NHL.

\* \* \*

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Moreover, the experts relied heavily on the plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie (2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate and NHL. *See generally In re Roundup Products Liability Litigation*, 2018 WL 3368534, at \*9-10. Thus, consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL. The Court may be skeptical of their conclusions, and in particular of the assumption built into their opinions from the general causation phase about the strength of the epidemiological evidence. But their core opinions – that the plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL – are admissible.

PTO 85 at pp. 5-6 (footnotes omitted).  Thus, because the Dr. Weisenburger here followed the same methodology as those previously addressed by the Plaintiffs' Bellwether experts, Monsanto's Motion should be denied.

- 11 -

### iii. This Court Has Previously Ruled That Plaintiffs' Experts Properly Ruled Roundup as The Cause of Plaintiffs' Non-Hodgkin's Lymphoma.

In response to this argument, Plaintiffs' state that this Court has already considered and rejected this argument in PTO 85, calling it "off point". PTO 85 at 2, see also PTO 45. This Court has also considered and denied Monsanto's Motion for Directed Verdict in PTO 113. Additionally, consistent with the Court's direction not to re-litigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Plaintiffs hereby incorporate the following pleadings that were filed on the MDL docket addressing this issue:

- Plaintiffs' Response in Opposition to Monsanto's Specific Causation *Daubert* and Summary Judgment Motion and *Daubert* Motion to Strike Certain Opinions of Monsanto Company Company's Expert Witnesses (ECF #2478);

- Plaintiffs' Response in Opposition to Monsanto's Motion for Judgment as a matter of Law and for a New Trial (ECF # 4135).

## IV. Conclusion

For the aforementioned reason, Monsanto's Motion to Exclude Dr. Weisenburger should be denied.

- 12 -

Dated:  April 2, 2021

Respectfully Submitted,

By:     /s/Rebecca Fredona
Ken Moll
Rebecca Fredona
Fatima Abuzerr
**MOLL LAW GROUP**
22 W Washington St
15th Floor
Chicago, IL 60602
T: 312.462.1700
F: 312.756.0045
rfredona@molllawgroup.com

*Attorneys for Plaintiffs*

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of April, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/Rebecca Fredona*

**PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DR. DENNIS WEISENBURGER ON *DAUBERT* GROUNDS**