# EXHIBIT  B

# REDLIINE AGAINST SETTLEMENT AGREEMENT FILED AT DOC. 12531-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | : | MDL NO. 2741 |
| | : | |
| | : | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**<u>CLASS ACTION SETTLEMENT AGREEMENT</u>**

Dated:          February 3, 2021

(As Amended April 7, 2021)

# TABLE OF CONTENTS

**Page**

ARTICLE I Definition of Settlement Class and Subclasses .................................. 2

ARTICLE II Definitions .......................................................................................... 3

ARTICLE III Defendant's Payment Obligations ................................................... 14

ARTICLE IV Opt-Out Rights ................................................................................ 18

ARTICLE V Information and Registration Process .............................................. 20

ARTICLE VI Compensation Awards ..................................................................... 23

ARTICLE VII Compensation Award Determinations, Payments, and Appeals ...... 28

ARTICLE VIII Diagnostic Accessibility Grant Program ....................................... ~~44~~45

ARTICLE IX Labeling Addition ............................................................................ 54

ARTICLE X Research Funding Program ............................................................... ~~54~~55

ARTICLE XI Legal Services Program ................................................................... ~~55~~56

ARTICLE XII Advisory Science Panel .................................................................. ~~57~~58

ARTICLE XIII Terms Following Conclusion of Initial Settlement Period .............. ~~70~~72

ARTICLE XIV Administration of the Settlement Agreement ................................. ~~74~~76

ARTICLE XV Settlement Fund Administration ..................................................... ~~87~~89

ARTICLE XVI Governmental Payors .................................................................... ~~89~~92

ARTICLE XVII Releases and Covenants Not to Sue ............................................. ~~93~~95

ARTICLE XVIII Preliminary Approval .................................................................. ~~96~~99

ARTICLE XIX Objections ...................................................................................... ~~98~~101

ARTICLE XX Final Order and Judgment and Dismissal With Prejudice .............. ~~99~~102

ARTICLE XXI Enforceability of Settlement Agreement and Dismissal of Claims ... ~~99~~102

ARTICLE XXII Communications to the Public ...................................................... ~~101~~104

ARTICLE XXIII Termination ................................................................................. ~~102~~105

ARTICLE XXIV Treatment of Confidential Information .................................... ~~103~~106

ARTICLE XXV Attorneys' Fees ...................................................................... ~~104~~107

ARTICLE XXVI Denial of Wrongdoing, No Admission of Liability ................ ~~105~~108

ARTICLE XXVII Representations and Warranties ........................................... ~~106~~108

ARTICLE XXVIII Cooperation ........................................................................ ~~107~~109

ARTICLE XXIX Continuing Jurisdiction ....................................................... ~~107~~110

ARTICLE XXX Additional Provisions ............................................................ ~~108~~110

*ROBERT RAMIREZ, ET AL. v. MONSANTO COMPANY,*
**CASE NO. 3:16-MD-02741-VC & 3:19-CV-02224-VC;**
**CLASS ACTION SETTLEMENT AGREEMENT AS OF FEBRUARY 3, 2021**
**(subject to Court approval)**
**(As Amended April 7, 2021)**

This SETTLEMENT AGREEMENT, dated as of February 3, 2021 (the "Settlement Date"), and as amended April 7, 2021, is made and entered into by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel and Subclass Counsel.  The Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the differences among them with respect to the Lawsuit, as set forth below, subject to Court approval.

## RECITALS

WHEREAS, on April 24, 2019, the original complaint in *Robert Ramirez, et al. v. Monsanto Co.* was filed in the Court on behalf of a purported class of persons allegedly exposed to Roundup Products;

WHEREAS, the Defendant answered the *Ramirez* complaint on July 24, 2019;

WHEREAS, on February 3, 2021, an amended complaint was filed in the Lawsuit on behalf of Class Representatives and Subclass Representatives seeking to represent a class of persons allegedly exposed to Roundup Products, including two subclasses of such persons (as defined specifically below, the "Class Action Complaint");

WHEREAS, the original complaint and amended complaint alleged that exposure to Roundup Products can cause Non-Hodgkin's Lymphoma in humans, and the amended complaint seeks compensation, programmatic relief, and punitive damages, among other relief, on behalf of the Class Representatives, the Subclass Representatives, and/or the class;

WHEREAS, the Defendant denies the allegations in the original complaint, the Class Action Complaint, the Lawsuit and the Roundup Lawsuits, the allegations that exposure to Roundup Products can cause Non-Hodgkin's Lymphoma in humans (the "general causation dispute"), and any liability to the Class Representatives and Subclass Representatives, the Settlement Class, or any Settlement Class Member for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind, and would assert a number of legal and factual defenses against plaintiffs' claims if they were litigated to conclusion (including against certification of the purported class for litigation purposes);

## ARTICLE I
### Definition of Settlement Class and Subclasses

Section 1.1    Definition of Settlement Class.

(a)    "Settlement Class" means (i) those individuals who are either citizens or Residents of the United States as of February 3, 2021 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of February 3, 2021 both (1) have been exposed to Roundup Products through the application of Roundup Products as a result of either occupational exposure as an agricultural, industrial, turf, or ornamental worker, or residential or other exposure where the exposed individual purchased, prepared, used, or applied the Roundup Products, or paid for, directed, participated in, saw, or was told of the purchase, preparation, use, or application of the products and (2) have not commenced an individual, non-class lawsuit or retained counsel for the pursuit of any individual, non-class personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants. "~~Exposure to Roundup Products through the application of Roundup Products~~Application" includes ~~exposure through~~application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

(b)    The following Persons are excluded from the Settlement Class:

(i)    Judicial officers and associated court staff assigned to this case, and their immediate family members;

(ii)    Past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries; and

(iii)    All those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to Section 4.2 in the manner approved by the Court and set forth in the Settlement Class Notice.

Section 1.2    Definition of Subclasses.

(a)    "Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants.

(b)    "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants.

## ARTICLE II
### Definitions

Section 2.1    Definitions.

For the purposes of the Settlement Agreement, the following terms (designated by initial capitalization throughout the Settlement Agreement) will have the meanings set forth

(12)    "CMS" means the Centers for Medicare & Medicaid Services.

(13)    "Compensation Award" means an Accelerated Payment Award or a Claims Program Award.

(14)    "Compensation Fund" means the program set forth in Article VI and Article VII for the awarding of Compensation Awards, including any extension of such program pursuant to Article XIII.

(15)    "Compensation Award Guidelines" are attached as Exhibit 5.

(16)    "Compensatory Damages" means any tort-based damages to compensate an individual for the loss, harm, or injury he or she has suffered. Compensatory Damages do not include damages for medical monitoring for undiagnosed injuries, or any damages that were increased because of the absence of medical monitoring for any injuries. Compensatory Damages further do not include punitive, exemplary, vindictive, punitory, presumptive, added, aggravated, speculative, or imaginary damages.

(17)    "Counsel for the Defendant" means Wachtell, Lipton, Rosen & Katz and Arnold & Porter Kaye Scholer LLP, or any law firm or attorney so designated in writing by the Defendant.

(18)    "Court" means the United States District Court for the Northern District of California, Judge Vince Chhabria (or any successor judge designated by the United States District Court for the Northern District of California or Judicial Panel on Multidistrict Litigation, or a magistrate judge designated by Judge Chhabria or such designated successor judge), presiding in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC.

(19)    "Covenants Not to Sue" means the covenants not to sue set forth in Section 17.4.

(20)    "DAGP Administrator" means that Person, agreed to and jointly recommended by Class Counsel and Counsel for the Defendant, and appointed by the Court, to perform the responsibilities assigned to the DAGP Administrator under the Settlement Agreement, including, without limitation, as set forth in Section 14.3.

(21)    "Defendant" means Monsanto Company.

(22)    "Deficiency" means any failure of a Settlement Class Member to provide required information or documentation to the Claims Administrator, as set forth in Section 7.5.

(23)    "Derivative Claims" means Claims that arise from, result from, in any way relate to or are in connection with the claimant's relationship with a Settlement Class Member, including a deceased Settlement Class Member, including any Claims arising from, resulting from, in any way relating to or in connection with loss of support, services, consortium, companionship, society, or affection, or damage to familial relations (including

6

(79)   "Settlement Class Member" means an individual who is a member in the Settlement Class; provided, however, that the term Settlement Class Member does not include any Opt Outs.

(80)   "Settlement Class Member Parties" means the Settlement Class, the Class Representatives and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical Person or entity to the extent he, she, or it is entitled to assert any Claim on behalf of any Settlement Class Member.  For the avoidance of doubt, Settlement Class Member Parties includes Representative Claimants.

(81)   "Settlement Class Notice" means the notice described in Section 4.1, in the form of Exhibit 2 together with any modifications acceptable to the Parties.

(82)   "Settlement Class Notice Agent" means the Person(s) who will implement the Settlement Class Notice Plan and who will be responsible for the dissemination of the Settlement Class Notice and any supplemental notice to the Settlement Class at any stage of the Settlement Agreement approval and administration periods as approved and directed by the Court.

(83)   "Settlement Class Notice Amount" means the amount of Settlement Class Notice Costs related to the Settlement Class Notice, as opposed to any supplemental notice.

(84)   "Settlement Class Notice Costs" means the reasonable costs and expenses of Settlement Class Notice, any supplemental notice required, and compensation of the Settlement Class Notice Agent and the Claims Administrator to the extent the Claims Administrator performs notice-related duties that have been agreed to by the Defendant.

(85)   "Settlement Class Notice Plan" means that document which sets forth the methods, timetable, and responsibilities for providing Settlement Class Notice to Settlement Class Members, as set forth in Section 4.1.

(86)   "Settlement Date" means ~~the date by which Class Counsel, Subclass Counsel, and Counsel for the Defendant have all signed the Settlement Agreement on behalf of the Class Representatives and Subclass Representatives, Settlement Class and Subclasses, and the Defendant, respectively.~~ February 3, 2021.

(87)   "Settlement Fund" means the escrow account described in Article XV, into which the Defendant will make payments pursuant to Article III, and from which Funded Class Benefits, Additional Permitted Fund Uses, and Class Counsel Attorneys' Fees are paid under the Settlement Agreement to the extent and as set forth in Article III.

(88)   "Specific Causation" means whether exposure to Roundup Products caused NHL in the specific individual at issue to the level of causation (and proof thereof) necessary to maintain a Claim under applicable law, including consideration of any potential alternate cause of the individual's NHL.

(89)   "Subclass Counsel" means, pending Court appointment, William M. Audet of Audet & Partners, LLP for Subclass 1, and TerriAnne Benedetto of the Dugan Law Firm, APLC and Elizabeth Fegan of FeganScott LLC for Subclass 2, and such other counsel as the Court may appoint to represent Subclasses 1 and 2.

(90)   "Subclasses" means Subclass 1 and Subclass 2.

(91)   "Subclass Representatives" means Robert Ramirez for Subclass 1; and Jerry Agtarap; Dexter Owens; John Elko; Aaron Sheller; and Kabe Cain, for Subclass 2, or such other and different persons as may be designated by the Court as the representatives of the Subclasses.

(92)   "Tricare" means the federal program managed and administered by the United States Department of Defense through the Tricare Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependents under 10 U.S.C. § 1071, *et seq.*

(93)   "United States" means the fifty States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any United States military or diplomatic establishment wherever located.

Section 2.2   All references in the Settlement Agreement to "exposure to Roundup Products" mean exposure to Roundup Products through the application of Roundup Products. Exposure "through the application of Roundup Products" includes exposure through application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

# ARTICLE III
## Defendant's Payment Obligations

Section 3.1   Funding Amount.  This Article III sets out in full the Defendant's payment obligations in connection with the Settlement Agreement.  The Defendant shall pay the following in accordance with the funding terms set forth herein:

(a)   Settlement Fund Amount.  The sum of U.S. $1,630,000,000 to be used for the Funded Class Benefits and the Additional Permitted Fund Uses as described in this Article III (such amount being the "Settlement Fund Amount").  In no event shall Defendant

days following the commencement of the Settlement Class Notice Plan (postmarked, emailed, or submitted through the Settlement Website no later than such date).

(c)     The written request to Opt Out also must contain the Settlement Class Member's printed name, address, telephone number, date of birth, and enclose a copy of his or her identification issued by any Governmental Authority or other bona fide identification. A written request to Opt Out must contain the dated Personal Signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class. No Opt Out request will be denied on the grounds that the Settlement Class Member is an undocumented alien.

(d)     The Settlement Class Member must either (i) mail the signed written request to Opt Out to a physical address to be identified in the Settlement Class Notice; (ii) email a complete and legible scanned copy or photograph of the signed written request to an email address to be identified in the Settlement Class Notice; or (iii) submit a complete and legible scanned copy or photograph of the signed written request through the Settlement Website. Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member. The Claims Administrator will provide copies of all requests to Opt Out to Class Counsel and Counsel for the Defendant within seven days of receipt of each such request. A valid request to Opt Out from the Settlement Class will become effective as of the later of 21 days of receipt by the Claims Administrator or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant.

Section 4.3     Revocation of Opt Out.  Prior to entry of the Final Order and Judgment, any Settlement Class Member may seek to revoke his or her Opt Out from the Settlement Class and thereby receive the benefits of the Settlement Agreement by submitting a request to the Claims Administrator by email, mail, or through the Settlement Website (who will forward these to Class Counsel and Counsel for the Defendant) stating "I wish to revoke my request to be excluded from the Settlement Class" (or substantially similar clear and unambiguous language), and also containing the Settlement Class Member's printed name, address, phone number, and date of birth. The written request to revoke an Opt Out must contain the Personal Signature of the Settlement Class Member seeking to revoke his or her Opt Out.  Such revocation shall only be effective with the express written consent of the Defendant (in its sole discretion).

Section 4.4     Rights of Settlement Class Members Who Do Not Opt Out to Sue for Compensatory Damages.  All Settlement Class Members who do not timely and properly Opt Out (or who revoke an Opt Out) from the Settlement Class will in all respects be bound by all terms of the Settlement Agreement and the Final Order and Judgment. Following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)), Settlement Class Members can sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties under, at the time, and subject to the terms and conditions set forth in Section 7.13, Section 7.16, and Article XIII.

Diagnosis; and (2) first received or receives a Qualifying Diagnosis prior to 2026 or four years after entry of the Final Order and Judgment, whichever is earlier;

(iii)   For Claims Program Awards, the Settlement Class Member (1) provided proof of exposure to Roundup Products, in accordance with the requirements set forth in Section 7.2(b)(vii), in the United States as of February 3, 2021, with the first exposure more than 12 months prior to receiving a Qualifying Diagnosis; (2) first received or receives a Qualifying Diagnosis prior to 2026 or four years after entry of the Final Order and Judgment, whichever is earlier, according to the Qualified Physician Certification, including consideration of, without limitation, the qualifications of the Qualified Physician and the Diagnosing Physician;

(iv)   Roundup Claims brought by Settlement Class Members who received a Qualifying Diagnosis prior to January 1, 2015 are presumed to be barred by statutes of limitations and statutes of repose.   Therefore, Settlement Class Members who received a Qualifying Diagnosis prior to January 1, 2015 will only be eligible for a Compensation Award if the Settlement Class Member can rebut this presumption by proving that their Roundup Claims against the Defendant are not barred by the applicable statutes of limitations and statutes of repose.   All other Settlement Class Members who received a Qualifying Diagnosis prior to January 1, 2015 will not be eligible for, and cannot receive, any Compensation Award; and

(v)   If the end of the Initial Settlement Period is extended by virtue of Section 2.1(41)(b), references to 2026 in Section 6.1(a)(ii) and Section 6.1(a)(iii) shall be to the last full calendar year prior to the end of the Initial Settlement Period, and the separate deadline of four years after entry of the Final Order and Judgment in Section 6.1(a)(ii) and Section 6.1(a)(iii) shall not apply.

(b)   One Award Per Settlement Class Member.   A Settlement Class Member is not eligible to apply for a Compensation Award if that Settlement Class Member previously received a Compensation Award.

(c)   Derivative Claimants.   Derivative Claimants are not eligible for Compensation Awards.

Section 6.2   Two Types of Compensation Awards.

(a)   The Settlement Agreement provides for two types of Compensation Awards:

(i)   Accelerated Payment Awards.   Within ~~30~~40 days after entry of the Preliminary Approval Order (subject to the limitation in Section 6.3(a)), Settlement Class Members meeting the Eligibility Criteria set forth in Section 6.1 shall be eligible for a prompt payment of U.S. $5,000 from the Compensation Fund in exchange for executing the Form of Release attached as Exhibit 6 (an "Accelerated Payment Award").

(1)     Eligibility.   To determine whether a Settlement Class Member is eligible for an Accelerated Payment Award, the Claims Administrator shall review the Accelerated Payment Claim Package and the results of any investigations of the Settlement Class Member's claim.   Based on that review, the Claims Administrator will determine:   (a) whether the Settlement Class Member duly received a favorable Notice of Registration Determination; and (b) whether the Settlement Class Member meets the Eligibility Criteria set forth in Section 6.1, including the timeliness and sufficiency of the Accelerated Payment Claim Package, and the applicable criteria set forth in the Compensation Award Guidelines.

(2)     Accelerated Payment Determination.     The determination as to eligibility for an Accelerated Payment Award shall be referred to as the "Accelerated Payment Determination."

(3)     Release of Claims.   Settlement Class Members who are eligible to receive an Accelerated Payment Award must execute and submit to the Claims Administrator the Form of Release as set forth in Exhibit 6 as a precondition to issuance of the Accelerated Payment Award.

(ii)     Claims Program Awards.   Settlement Class Members who submit a Claims Program Claim Package and meet the Eligibility Criteria set forth in Section 6.1 shall be eligible for a payment pursuant to this Section 6.2(a)(ii) from the Compensation Fund, at an amount determined by the Claims Program, in exchange for executing the Form of Release attached as Exhibit 6 (a "Claims Program Award").   The Claims Program shall offer a Claims Program Award to each qualifying Settlement Class Member, pursuant to the Compensation Award Guidelines in Exhibit 5.   The Parties understand and agree that the amount of any Claims Program Award within the Compensation Ranges set forth in the Compensation Award Guidelines is subject to the discretion of the Claims Program, with the possibility of mediation and appeal to the Settlement Administrator as set forth in Section 7.10.

(1)     Amounts.   Claims Program Awards will be between the amounts U.S. $10,000 and U.S. $200,000 pursuant to the Compensation Award Guidelines in Exhibit 5.   ~~If a Settlement Class Member's Tier Determination is Tier 4, then the~~The Claims Program has discretion to issue a Claims Program Award exceeding ~~U.S. $200,000~~the high pay amount of the Tier applicable to a Settlement Class Member, but only upon the Settlement Class Member's showing of circumstances unique to the Settlement Class Member—above and beyond the factors required for the Settlement Class Member's inclusion in the Tier ~~4~~applicable to that Settlement Class Member—that, in the Claims Program's sole judgment, merits an award that exceeds ~~U.S. $200,000~~the high pay amount of such Tier ("Extraordinary Circumstances").   If the Claims Program determines that a Settlement Class Member has not demonstrated Extraordinary Circumstances, that finding shall be final and not subject to review in any subsequent mediation or appeal.   The total combined dollar amount of the portion of all payments made to all Settlement Class Members above ~~U.S. $200,000~~the high pay amount in the applicable Tier shall not exceed U.S. $50,000,000 during the Initial Settlement Period:   e.g., if a Settlement Class Member in Tier 4 is awarded a Claims Program

is available to provide a Qualified Physician Certification, (iii) verifies that all possibilities to obtain a Qualified Physician Certification have been exhausted, (iv) provides a signed copy of the anatomic pathology report described in Exhibit 4, and (v) provides information sufficient to identify the Diagnosing Physician and establish that such physician meets the requirements of a Diagnosing Physician as set forth in Exhibit 4.  For the avoidance of doubt, all other content of Claims Program Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis, the date such diagnosis was made, and subsequent treatment.  For purposes of Section 7.2(c) and this Section 7.2(d) a physician shall be considered "unavailable" only if he or she is deceased or deemed by a court of competent jurisdiction legally incapacitated or incompetent, is not able to be contacted after reasonable and repeated attempts by the Settlement Class Member, or unequivocally refuses to provide a Qualified Physician Certification.

(e)     The contents of Claim Packages will not include documents or information whose primary purpose is to show the medical costs for any medical services that a Settlement Class Member has incurred or may incur.  For the avoidance of doubt, to the extent a Settlement Class Member's medical records are provided in a Claim Package or otherwise to the Claims Administrator or Settlement Administrator, such medical records are not being provided to show and shall not be used to evaluate the medical costs for any medical services that a Settlement Class Member has incurred or may incur.

Section 7.3     Submission Timing.

(a)     Settlement Class Members must submit Claim Packages to the Claims Administrator in accordance with Section 30.19.  Claim Packages must be submitted to the Claims Administrator no later than ~~180 days~~one year after the Effective Date or receipt of a Qualifying Diagnosis, whichever is later, but no later than the conclusion of the Initial Settlement Period, provided, however, that to the extent Settlement Class Members are permitted to submit claims for Compensation Awards from either the Remaining Funds pursuant to Section 7.16(c) or the Compensation Fund if the Compensation Fund continues pursuant to Section 13.4(c), the ~~180-day~~one-year time limitation in the prior sentence shall be tolled from the date the Initial Settlement Period concludes to the date that is the beginning of the period for submission of claims for Compensation Awards from, as applicable, the Remaining Funds pursuant to Section 7.16(c) or the Compensation Fund if the Compensation Fund continues pursuant to Section 13.4(c).  For Settlement Class Members described in Section 6.4(a)(i) and Section 6.4(b)(i), such tolling shall commence on the date Settlement Class Members became unable to receive payment from the Compensation Fund for the reasons described in Section 6.3(b).  Failure to comply with the applicable limitation will preclude a Compensation Award for that Qualifying Diagnosis, unless in the determination of the Claims Administrator the Settlement Class Member can show good cause or excusable neglect.

(b)     Each Settlement Class Member will promptly notify the Claims Administrator of any changes or updates to the information the Settlement Class Member has provided in the Claim Package, including any change in mailing address.

(c)     All information submitted by Settlement Class Members to the Claims Administrator will be recorded in a computerized database that will be maintained and

considered.  Any written statement in support of an appeal may not exceed five single-spaced pages in length absent advance approval from the Claims Administrator.

(3)     No later than 30 days after receipt of the Appeals Form, the Claims Administrator may submit a written statement in opposition to the appeal, and the applicable Settlement Class Member (if the appeal is taken by Class Counsel) may submit a written statement in support of or opposition to the appeal.  Any written statement pursuant to this Section 7.10(a)(i)(3) must not exceed five single-spaced pages in length.  The Settlement Administrator will not deem the lack of a statement to be an admission regarding the merits of the appeal.  The Settlement Administrator will also be provided access to all documents and information available to the Claims Administrator to aid in determining the appeal of the Claims Administrator's eligibility determination.  The appellant may not submit a reply.

(4)     If the appeal is taken by a Settlement Class Member, Class Counsel may submit a written statement in support of or opposition to the appeal no later than 15 days after the latter of (a) receipt of the Appeals Form or (b) the Claims Administrator's written opposition.  If the appeal is taken by a Settlement Class Member or Class Counsel, the Defendant may submit a written statement in support of or opposition to the appeal no later than 15 days after the latter of (a) receipt of the Appeals Form or (b) the Claims Administrator's written opposition.  These written statements must not exceed five single-spaced pages in length.  The Settlement Administrator will not deem the lack of a statement to be an admission regarding the merits of the appeal.  The appellant and the Claims Administrator may each submit a reply to the submission of Class Counsel or the Defendant no later than 15 days after receipt of Class Counsel's or the Defendant's written statement.

(5)     The Settlement Administrator will make a determination on the written challenge to the Claims Administrator's eligibility determination and inform the Settlement Class Member, the Claims Administrator, Class Counsel, and the Defendant of the decision.  The Settlement Administrator will require clear and convincing evidence in order to set aside the Claims Administrator's determination of the Settlement Class Member's eligibility to apply for a Claims Program Award for appeals under this Section 7.10(a)(i).  The decision of the Settlement Administrator shall be final and binding.  There shall be no appeal from the Settlement Administrator's decision.

(ii)     <u>Amount of Claims Program Award</u>.

(1)     Settlement Class Members who have applied for a Claims Program Award who are dissatisfied with the designated amount of the Claims Program Award may challenge the Claims Program Award in mediation.  Such Settlement Class Members must submit a written mediation request to the Settlement Administrator within 60 days after receiving the Notice of Claims Program Determination.  No Claims Program Award may exceed the high pay amount of U.S. $200,000the Tier applicable to the Settlement Class Member, notwithstanding any mediation or appeal, unless there was a finding of Extraordinary Circumstances by the Claims Program pursuant to Section 6.2(a)(ii)(1).  The Settlement Administrator shall develop guidelines for an efficient mediation system no later than 90 days

after entry of the Final Order and Judgment.  These guidelines will require that the mediators follow the same criteria, limitations, and guidelines for Claims Program Awards set forth in the Settlement Agreement and the Compensation Award Guidelines in Exhibit 5, and may permit, but not require, mediators to take into account the reasons given for the Claims Program Determination by the Claims Program.  The mediators who will preside over the mediations regarding the designated amount of the Claims Program Award shall be agreed upon by Class Counsel and Counsel for the Defendant.

(2) After pursuing mediation pursuant to Section 7.10(a)(ii)(1), Settlement Class Members who are dissatisfied with the results of the mediation process may appeal their mediation offer to the Settlement Administrator within 60 days after receiving the mediation offer.  Appeals may only be taken to the Settlement Administrator, not the Court.  The Settlement Administrator shall develop a process for appealing a mediation offer substantially resembling the process as set forth in Section 7.10(a)(i) for appeals of eligibility determinations.  The Settlement Administrator shall make its appellate determination based on the exercise of its sole discretion applying the same criteria, limitations, and guidelines for Claims Program Awards set forth in the Settlement Agreement and the Compensation Award Guidelines set forth in Exhibit 5, and may, but is not required to, take into account the reasons given for the Claims Program Determination by the Claims Program.  The decision of the Settlement Administrator shall be final and binding. There shall be no appeal from the Settlement Administrator's decision.  For the avoidance of doubt, no Claims Program Award may exceed the high pay amount of ~~U.S. $200,000~~the Tier applicable to the Settlement Class Member, notwithstanding any mediation or appeal, unless there was a finding of Extraordinary Circumstances by the Claims Program pursuant to Section 6.2(a)(ii)(1).

(3) After pursuing an appeal pursuant to Section 7.10(a)(ii)(2), Settlement Class Members will have 60 days after receipt of the offer that results from the appeal to either accept or reject that offer.  Settlement Class Members who reject the offer will have the tort-system rights set forth in Section 7.13.

(b) Defendant Appeals.  All Claims Program Awards, including eligibility determinations and the amount of the award, can be appealed by the Defendant directly to the Settlement Administrator by submitting a written challenge to the Settlement Administrator within 60 days after receiving the Notice of Claims Program Determination.  The Settlement Administrator shall develop a process for appeals under this Section 7.10(b) substantially resembling the processes set forth in Section 7.10(a)(i) and Section 7.10(a)(ii)(2). The Defendant may submit a written statement in support of the appeal, and must submit a certification to the Settlement Administrator that the Defendant has a good faith basis to bring the appeal.  In reviewing eligibility determinations and the amount of a Claims Program Award, the Settlement Administrator shall make its appellate determination based on the exercise of its sole discretion applying the same criteria, limitations, and guidelines for Claims Program Awards set forth in the Settlement Agreement and the Compensation Award Guidelines set forth in Exhibit 5, and may, but is not required to, take into account the reasons given for the Claims Program Determination by the Claims Program.  The Defendant may appeal no more than 17.5% of Claims Program Awards in any given year.  After an appeal by the Defendant,

made in connection with the claim, the Claims Administrator will notify the Settlement Class Member and will refer the claim to the Settlement Administrator for review and findings. The Settlement Administrator's review and findings shall take into account whether the misrepresentation, omission or concealment was intentional, and may include the following relief, without limitation:  (i) denial of the claim; (ii) additional audits of claims involving the same attorney, law firm, or physician (if applicable), including those already paid; (iii) referral of the attorney, law firm, or physician (if applicable) to the appropriate disciplinary boards; (iv) referral to federal authorities; (v) disqualification of the Settlement Class Member from further participation in the Funded Class Benefits; (vi) disqualification of the attorney, law firm, or physician from further participation in the Settlement Agreement; and/or (vii) if a law firm is found by the Claims Administrator to have submitted more than one fraudulent submission on behalf of Settlement Class Members, claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to the firm by the Settlement Class Member, or by the Legal Services Program if the firm is a Legal Services Program Counsel, will be forfeited and paid to the Settlement Fund.

(k)     If the Claims Administrator at any time makes a finding (based on its own detection processes or from information received from Class Counsel or Counsel for the Defendant) of fraud, misrepresentation, omission, or concealment of facts by a Settlement Class Member submitting a claim for a Compensation Award, and/or by the physician providing the Qualifying Diagnosis, the Claims Administrator will notify the Settlement Class Member, Class Counsel and Counsel for the Defendant, and will refer the claim to the Settlement Administrator for review and findings that may include, without limitation, the relief set forth in Section 7.11(j).

(l)     Subject to the discretion of the Claims Administrator and Settlement Administrator, the applicable deadlines relating to the Claims Administrator's, Settlement Administrator's, or Claims Program's review, investigation, timing of payment, and appeals of Claim Packages or Compensation Awards may be temporarily suspended for any claim being subject to an audit under this Section 7.11.

Section 7.12   The Claims Administrator, in consultation with Class Counsel, Counsel for the Defendant and the Settlement Administrator, will also establish system-wide processes to detect and prevent fraud, including, without limitation, claims processing quality training and review and data analytics to spot "red flags" of fraud, including, without limitation, alteration of documents, questionable signatures, duplicative documents submitted on claims, the number of claims from similar addresses or supported by the same physician or office of physicians, data metrics indicating patterns of fraudulent submissions, and such other attributes of claim submissions that create a reasonable suspicion of fraud.

Section 7.13   <u>Tort-System Rights</u>.   Following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)), a Settlement Class Member who has not previously accepted and received a Compensation Award (and who does not subsequently accept and receive a Compensation Award) will have the right to sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or the

Related Parties at the time the stay expires under Section 18.2(b)(i), subject to the following terms and conditions.

(a)   A Settlement Class Member who submits a claim for a Compensation Award may not sue for Compensatory Damages in the tort system following expiration of such stay until he or she receives and rejects a final Claims Program Award as provided in Section 7.10(a)(ii)(3), is determined to be ineligible for a Compensation Award, or the funds in the Compensation Fund are exhausted.

(b)   A Settlement Class Member who applied for an Accelerated Payment Award and received a favorable Accelerated Payment Determination may not reject the award and sue in the tort system.

(c)   If the Compensation Fund continues pursuant to Section 13.4(c) following the Initial Settlement Period, Section 13.4(d) and Section 13.4(e) sets forth additional terms and conditions on which a Settlement Class Member who submits a Claim Package during the period in which the Compensation Fund continues may sue in the tort system.

(d)   Section 7.16 sets forth additional terms and conditions on which a Settlement Class Member whose claim for a Compensation Award is being considered for payment from the Remaining Funds may sue in the tort system.

(e)   If a Settlement Class Member ~~who was offered but did not accept a Claims Program Award sues~~receives an Exceptional Hardship Exception pursuant to Section 18.2(b)(iv), the time at which that Settlement Class Member may sue for Compensatory Damages in the tort system ~~for any Roundup Claim against the Monsanto Parties or the Related Parties, the amount of last offer by the Claims Program will be treated as an offer of judgment for purposes of obligation to pay costs in the event of a~~shall be the time specified in Section 18.2(b)(iv) and the stay under Section 18.2(b)(i) shall expire at that time as to that Settlement Class Member.  All other provisions applicable to the Settlement Class Member's exercise of tort-system ~~judgment below that amount~~rights remain unchanged.

(f)   In any suit in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties, the Settlement Class Member may seek Compensatory Damages only and remains bound by all provisions of the Settlement Agreement other than the bar on bringing Roundup Claims for Compensatory Damages in the tort system, including Section 4.4, Section 5.4, Section 6.4, this Section 7.13, Section 7.14, Section 7.15, Section 7.16, Section 7.17, Section 11.3(c), Section 11.6, Article XII, Article XIII, Section 14.1(d), Section 14.2(d), Section 14.3(d), Section 14.4(e), Section 14.5(c), Section 14.8, Article XVI, Article XVII, Section 18.2(b)(ii) ~~(v)~~(vi), Section 21.4–Section 21.10, Section 23.2(a), Section 23.3, Article XXIV, Article XXVI, Article XXIX, Article XXX, and Part 4(c) of Exhibit 5.  In any such suit filed by or on behalf of a Settlement Class Member who receives an NHL diagnosis, dies during the Initial Settlement Period, and was subject to the stay set forth in Section 18.2(b)(i) for the period it was in effect for the Settlement Class, the Person entitled under the applicable state law to litigate on that Settlement Class Member's behalf shall have the same rights and be entitled to the same damages award as the Settlement Class Member were he/she still alive and personally

injured such that any state laws that limit recovery of Compensatory Damages in cases of wrongful death will not apply.

Section 7.14   Continuation of Compensation Fund.   This Section 7.14, along with Section 7.15 and Section 7.16, address the operation of the Compensation Fund following the end of the Initial Settlement Period.   This Section 7.14 addresses operations in the event the Compensation Fund continues as described in Article XIII.   Section 7.15 addresses operations in the event the Compensation Fund does not so continue.   Section 7.16 addresses administration of Remaining Funds (as defined therein) in the period between the end of the Initial Settlement Period and confirmation of Compensation Fund Continuation Terms (if the Compensation Fund continues as described in Article XIII) or after the end of the Initial Settlement Period (if the Compensation Fund does not so continue).   If the Compensation Fund continues pursuant to Section 13.4(c) following the Initial Settlement Period, the following will apply:

(a)   Supersession by Compensation Fund Continuation Terms.   The Compensation Fund will follow the Compensation Fund Continuation Terms to the extent they expressly supersede anything in Article VI, Article VII, and the Compensation Award Guidelines.   The Claims Program will use the new payment ranges, payment criteria, and guidelines set forth in the Compensation Fund Continuation Terms, as well as any procedural changes set forth therein.   Notwithstanding the foregoing, any claims being considered for payment from the Remaining Funds shall continue to be administered and processed pursuant to Section 7.16.   If the Compensation Fund continues pursuant to Section 13.4(c), to the extent any Remaining Funds are not exhausted following the administration and processing of all claims that were being considered for payment from the Remaining Funds, such Remaining Funds shall thereafter be administered from the Compensation Fund under the Compensation Fund Continuation Terms.

(b)   Payment Priority.   The order of payment priority in a given year will be (i) any Compensation Awards which would have become payable during the Initial Settlement Period but for insufficiency of funds or any Compensation Awards for Settlement Class Members provided for in Section 7.16(b), followed by (ii) Accelerated Payment Awards, followed by (iii) Claims Program Awards, followed by (iv) any amounts referenced in Section 13.4(d)(ii).   Amounts unpaid in a year shall roll to the next year and have priority over amounts that become payable during the next year.

Section 7.15   Non-Continuation of Compensation Fund.   If the Compensation Fund does not continue pursuant to Section 13.4(c) following the Initial Settlement Period, the payment of Compensation Awards and the operation of the Compensation Fund will end, other than administration of Remaining Funds.

Section 7.16   Administration of Remaining Funds.

(a)   As used in the Settlement Agreement, "Remaining Funds" shall mean:  (i) any funds remaining in the Compensation Fund at the end of the Initial Settlement

Period and (ii) in the event the End Payment is owed, the portion of the End Payment (if any) that is allocated to the Compensation Fund, in each case until the funds are exhausted.

(b)     Settlement Class Members (if any) who submitted claims to the Compensation Fund during the Initial Settlement Period but (other than for the reasons described in Section 6.3(b)) did not receive an Accelerated Payment Determination or Claims Program Determination prior to the conclusion of the Initial Settlement Period shall have their claims administered and processed by the Compensation Fund out of any Remaining Funds until such funds are exhausted.  Notwithstanding anything to the contrary in Section 7.13, such a Settlement Class Member may not sue for Compensatory Damages in the tort system following expiration of the stay under Section 18.2(b)(i) until he or she receives and rejects a final Claims Program Award as provided in Section 7.10(a)(ii)(3), is determined to be ineligible for a Compensation Award, or the Remaining Funds are exhausted.

(c)     Settlement Class Members referenced in Section 6.4 and Section 6.5 may submit claims for Compensation Awards out of any Remaining Funds in the manner set forth in those Sections until such funds are exhausted.  A Settlement Class Member who may submit such a claim under this Section 7.16(c), but instead opts to sue for Compensatory Damages without first applying for a Compensation Award from Remaining Funds waives any right to apply for a Compensation Award.  A Settlement Class Member who opts to submit a claim under this Section 7.16(c) may not sue for Compensatory Damages in the tort system following expiration of the stay under Section 18.2(b)(i) until he or she receives and rejects a final Claims Program Award as provided in Section 7.10(a)(ii)(3), is determined to be ineligible for a Compensation Award, or the Remaining Funds are exhausted.

(d)     All provisions of Article VI, Article VII, and the Compensation Award Guidelines shall apply to the administration and processing of all claims for Compensation Awards from Remaining Funds without regard to any Compensation Fund Continuation Terms.

(e)     If a Settlement Class Member referenced in Section 7.16(b) does not receive an Accelerated Payment Determination or Claims Program Determination prior to the exhaustion of the Remaining Funds and the Compensation Fund continues pursuant to Section 13.4(c), he or she may either (i) submit his or her claim to the Compensation Fund as provided in Section 13.4 for consideration under the Compensation Fund Continuation Terms, or (ii) exercise tort-system rights following the exhaustion of the Remaining Funds under, at the time, and subject to the terms and conditions set forth in Section 7.13, this Section 7.16, and Article XIII.  A Settlement Class Member referenced in the prior sentence who opts to submit his or her claim to the Compensation Fund as provided in Section 7.16(e)(i) may either have the previously submitted claim automatically considered or supplement the claim within 60 days of the beginning of the period for submission.

(f)     In any suit in the tort system permitted under this Section 7.16, the terms and conditions for tort-system suits set forth in Section 7.13, this Section 7.16, and Article XIII shall apply, including the limitations set forth in ~~Section 7.13(e)-(f)~~Section 7.13(f).

46

shall conduct an outreach campaign (the "Outreach Campaign") to inform DAGP Eligible Settlement Class Members about the objectives of the Diagnostic Accessibility Grant Program described in this Article VIII and Exhibit 7.

(b)     The DAGP Administrator shall design the Outreach Campaign (i) with a significant focus on the affected populations in the List of Service Areas and medically underserved populations; (ii) to leverage the communication channels that best reflect how various cohorts of DAGP Eligible Settlement Class Members receive and share information; and (iii) to otherwise inform DAGP Eligible Settlement Class Members about the objectives of the Diagnostic Accessibility Grant Program described in this Article VIII and Exhibit 7.  The DAGP Administrator shall cooperate with organizations representing historically disadvantaged minority, seasonal or migratory farmworkers and certain other non-farmworkers (such as landscapers and groundskeepers) to ensure that such Settlement Class Members receive complete and equitable access to information regarding the Diagnostic Accessibility Grant Program and its services.  For instance, such organizations and associations will include but not necessarily be limited to organizations that advocate for Hispanic farmworkers, the National Black Farmers Association and other similar organizations that advocate for groups of likely Settlement Class Members on a regional or national basis.

(c)     The funding for the Outreach Campaign shall come from the funds allocated to the Diagnostic Accessibility Grant Program.  The DAGP Administrator shall design and direct the Outreach Campaign on a cost-effective basis to ensure that as much of the Diagnostic Accessibility Grant Program funds as practicable are preserved for grants to medical providers.  Absent approval of the Settlement Administrator, no more than 5% of the funds allocated to the Diagnostic Accessibility Grant Program may be used for the Outreach Campaign.  The Outreach Campaign is not required to last for the entire period set forth in Section 8.2(a) if that would require funding exceeding 5% of the funds allocated to the Diagnostic Accessibility Grant Program.

(d)     Within 45 days following entry of the Final Order and Judgment, the DAGP Administrator will provide to the Settlement Administrator, Class Counsel, and the Defendant a preliminary plan for the Outreach Campaign meeting the conditions set forth in Section 8.2(b) and Section 8.2(c).  The Outreach Campaign shall commence following the Effective Date in accordance with that plan, together with any modifications requested by the Settlement Administrator after consultation with the DAGP Administrator.

Section 8.3     DAGP Grants.

(a)     Grant Criteria.  Within 45 days following entry of the Final Order and Judgment, the DAGP Administrator will develop procedures for the award of grants ("DAGP Grants") to medical providers (such providers being "DAGP Grantees"), and for the monitoring of the use of DAGP Grant funds by such DAGP Grantees.  These procedures shall include grant application contents and contracting protocols meeting the requirements set forth in this Section 8.3.  The procedures shall also include guidelines for the selection of DAGP Grantees and the determination of the amount of individual DAGP Grants.  The guidelines shall provide for the selection of DAGP Grantees and determination of DAGP Grant amounts consistent with the requirements of this Section 8.3 and in a manner that the DAGP

Defendant of that determination.  The Settlement Administrator will make its determinations based on the exercise of its sole discretion applying the same criteria, limitations, and guidelines for DAGP Applications set forth in the Settlement Agreement, and may, but is not required to, take into account the determinations made by the DAGP Administrator.  The decision of the Settlement Administrator shall be final and binding.  There shall be no appeal from the Settlement Administrator's decisions.

        (i)        DAGP Application Audits.

        (i)        On a quarterly basis, the DAGP Administrator will audit a sample of the total DAGP Applications that the DAGP Administrator has found to qualify for participation in the Diagnostic Accessibility Grant Program during the preceding quarter such that the estimated percentage of total DAGP Applications presenting no indication of fraud based on the aggregate number of audited DAGP Applications over any rolling 12-month period shall provide a confidence level of 95% with a margin of error of +/- 3%.  The DAGP Administrator will select such DAGP Applications for auditing on a random basis or to address a specific concern raised by a DAGP Application, but will audit at least four DAGP Applications, if any qualify, each quarter.

        (ii)        The DAGP Administrator will establish and implement any additional procedures that the DAGP Administrator determines are necessary to detect and prevent fraudulent submissions for participation in the Diagnostic Accessibility Grant Program.

        Section 8.5        Retention of Vendors, Professionals, and Consultants.  With the written approval of the Settlement Administrator, the DAGP Administrator may hire administrative vendors, professionals, and consultants, such as legal counsel, actuaries, and economists, and/or organizations with unique knowledge of or access to underserved, historically disadvantaged, or difficult-to-reach populations, whom the DAGP Administrator deems necessary to faithfully implement the above provisions of this Article VIII.  Payment to such vendors, professionals, and consultants shall come from the funds allocated to the Diagnostic Accessibility Grant Program.  In the case of administrative vendors, the DAGP Administrator will provide to the Settlement Administrator in advance the criteria by which such vendors would be selected, including draft requests for proposal to be used in soliciting such vendors.  Any such draft request for proposal shall include provisions for (a) the credentialing and other certifications of the vendor; (b) the specific administrative functions to be provided by the vendor; (c) proposed payment rate structure and terms; (d) required fraud policies; (e) the type of clinical and program data to be recorded and collected by the vendor, including considerations for the privacy and security of personal information and other data security; and (f) proposed written contracts to be entered into between the DAGP Administrator and any vendor.  The proposed contracts shall include effective procedures for the DAGP Administrator to audit the vendor's processes for billing and providing services to the Diagnostic Accessibility Grant Program and shall provide that the DAGP Administrator may terminate the contract if the vendor is not in compliance with such contract's terms.  The DAGP Administrator shall promptly notify the Settlement Administrator of all payments incurred under this Section 8.5.

Funding Program shall be treated as Settlement Administrator Costs, pursuant to Section 14.1(c).

## ARTICLE XI
## Legal Services Program

Section 11.1   <u>Description</u>.   The Court-awarded payment by the Defendant of Class Counsel Attorneys' Fees under Article XXV will include a legal services program to provide free legal advice to Settlement Class Members and Representative Claimants regarding the Settlement Agreement (the "Legal Services Program").   Class Counsel will administer the Legal Services Program and will supervise the law firms who provide the Legal Services Program services ("Legal Services Program Counsel").

Section 11.2   <u>Duration</u>.   The Legal Services Program will begin ~~upon~~within 20 days after entry of the ~~Final~~Preliminary Approval Order ~~and Judgment~~ and continue until the conclusion of the Initial Settlement Period (subject to continuation as provided in Article XIII).

Section 11.3   <u>Purpose and Operation</u>.

(a)   The Legal Services Program will be designed to afford free legal advice to Settlement Class Member Parties regarding their options and rights under the Settlement Agreement and to assist them in registering and applying for benefits under the Settlement Agreement.   Such legal advice will include, at a minimum, explaining provisions of the Settlement Agreement, assisting with the preparation of documentation required under the Settlement Agreement (*e.g.*, Accelerated Payment Claim Packages and Claims Program Claim Packages), and responding to questions Settlement Class Members might have regarding the Settlement Agreement.   Settlement Class Members do not have to avail themselves of the Legal Services Program under the Settlement Agreement and are free to secure their own counsel.   The Legal Services Program is an alternative that will be provided by the Settlement Agreement and will have an attorney-client relation with any Settlement Class Member who elects such alternative.   The Legal Services Program shall have the capacity to provide legal advice in Spanish and any other language needed to effectuate the aims of the Settlement Agreement.   Communications between Settlement Class Member Parties and the Legal Services Program within the scope of the Program shall be treated as attorney-client communications, and the Monsanto Parties will not assert that the Defendant's funding of the Legal Services Program constitutes any form of waiver of the attorney-client privilege that would otherwise apply.   ~~Within 90 days following~~No later than 7 days prior to the hearing on the motion for entry of the Preliminary Approval Order, Class Counsel will submit to the Court, after conferring with Defendant and the Settlement Administrator, a preliminary plan for operation of the Legal Services Program and thereafter coordinate with the Settlement Administrator regarding the plan.   The plan is subject to approval by the Court in connection with the Court's consideration of ~~final~~preliminary approval of the Settlement Agreement.

(b)   The Legal Services Program Counsel will make themselves available to provide Settlement Class Members with the services described in Section 11.3(a). The Legal Services Program Counsel will consist of Class Counsel's law firms and such other law firms with substantial mass tort experience as Class Counsel (in consultation with the

Settlement Administrator) may deem appropriate to fulfill the Legal Service Program's purposes, with a priority given to law firms with experience representing individuals who brought Roundup Claims. The Legal Services Program Counsel (and their respective proposed compensation as negotiated with the Settlement Administrator under Section 11.4) will be identified preliminarily prior to the  hearing on the motion for entry of the Preliminary Approval Order, and will be updated prior to the Fairness Hearing, in each case as part of the preliminary plan for operation of the Legal Services Program.

          (c)     As part of and a condition to its retention, any Legal Services Program Counsel must agree that: (i) it will not represent any Settlement Class Member Parties or any persons who submit Opt Out requests pursuant to Section 4.2 in any Roundup Lawsuits, Related Party Lawsuits, or otherwise with respect to any Roundup Claims against any Monsanto Party or Related Party; and (ii) it does not represent any Settlement Class Members who have filed objections to the Settlement Agreement.  Section 11.3(c)(i) shall not be interpreted to preclude the Legal Services Program Counsel from advising Settlement Class Members with respect to their decisions whether or not to exercise their right to Opt Out of the Settlement Agreement.

        Section 11.4   <u>Compensation of the Legal Services Program Counsel</u>.  Class Counsel, in consultation with the Settlement Administrator, will negotiate the compensation of the Legal Services Program Counsel, accounting for any pre-set fee schedule and multiplier, with each law firm directly.  Such compensation will include reasonable compensation for services provided under the Legal Services Program and reimbursement of out of pocket costs and expenses incurred in connection with such services.  Neither Class Counsel nor any Legal Services Program Counsel shall have any entitlement to any portion of a Settlement Class Member's Compensation Award, including attorneys' fees under Section 6.2(d).

        Section 11.5   <u>Funding of the Legal Services Program</u>.  Class Counsel will make up to 40% of Class Counsel Attorneys' Fees available to fund the Legal Services Program. The compensation of the Legal Services Program Counsel and all other costs of the Legal Services Program will be included as a distinct program in Class Counsel's attorneys' fee application at a level appropriate to fulfill the Legal Services Program's purpose and operation under Section 11.3, and will be funded exclusively from such portion of Class Counsel Attorneys' Fees as awarded by the Court.

Section 11.6   Liability.   The Parties, Counsel for the Defendant, and the Settlement Administrator, and their respective Affiliates, and the Monsanto Parties will not be liable for any act, or failure to act, of any Legal Services Program Counsel.   Notwithstanding Defendant's funding of the Legal Services Program through Class Counsel Attorneys' Fees, neither the Defendant nor the Monsanto Parties shall be deemed responsible for any legal advice provided (or not provided) in connection with the Legal Services Program.

## ARTICLE XII
## Advisory Science Panel

Section 12.1   Science Panel Description, Selection, and Composition.

(a)   The Parties covenant and agree that an independent ~~five-member~~seven-member scientific panel (the "Science Panel") will be established and will exercise authority and perform duties in accordance with the terms of this Article XII.

(b)   The Science Panel will be comprised of ~~five~~seven individuals that are independent of the Parties.   The Science Panel membership will be publicly disclosed on the Settlement Website.  The Science Panel members will be selected as follows:

(i)   Initially, the Parties will attempt to reach agreement on the individuals that will serve on the Science Panel.   If the Parties are able to reach complete agreement, those individuals will be identified as the Science Panel members.   In that case, the agreed-to Science Panel members will appoint one of their members to serve as the Science Panel Chairperson.

(ii)   The Parties will also consider in good faith designating a third-party entity to identify the individuals that will serve on the Science Panel.   The identity of any such third-party entity must be mutually agreed to by the Parties.   If a third-party entity is selected to identify the individuals who will serve on the Science Panel, the third party will choose the ~~five~~seven members of the Science Panel, subject to strikes for cause by a Party if a potential Science Panel member does not meet the requirements set forth in Section 12.1(c). In the event a Party contests the other Party's exercise of a strike for cause, the Settlement Administrator will adjudicate the validity of the strike.   The Science Panel members selected by the third-party entity will appoint one of their members to serve as the Science Panel Chairperson.

(iii)   The Parties will use reasonable efforts to identify and engage the members of the Science Panel as soon as practicable following entry of the Preliminary Approval Order.   If by 30 days following entry of the Final Order and Judgment the Parties are not able to reach complete agreement on Science Panel membership or on a third-party entity designated to identify the Science Panel membership, the Parties will use an alternate procedure.   In that case, each of the Parties shall choose ~~two~~three members of the Science Panel, subject to ~~three~~four peremptory strikes by the other Party, and any strikes for cause if a potential Science Panel member does not meet the requirements set forth in Section 12.1(c).   In the event a Party contests the other Party's exercise of a strike for cause, the Settlement Administrator will adjudicate the validity of the strike.   For the avoidance of

doubt, any strike for cause shall not count against a Party's peremptory strikes.  Once each Party has chosen ~~two~~three members of the Science Panel, ~~these four~~the Parties shall jointly notify the Court of the selections and the Court shall have the sole discretion to approve the selections.  If the Court rejects any such Science Panel member, then the Party that selected that member shall select a replacement.  The Court shall have sole discretion to approve replacement Science Panel members until the Court has approved three selections for each Party.  Once the Court has approved the Parties' selections of Science Panel members, the six members of the Science Panel shall mutually agree upon the selection of a ~~fifth~~seventh member of the Science Panel, who shall also serve as the Science Panel Chairperson.  Selection of the Science Panel members pursuant to this alternate procedure shall be completed no later than 60 days following entry of the Final Order and Judgment.

(c)     Appropriate candidates for appointment to the Science Panel:  (i) shall be recognized, independent, appropriately credentialed epidemiologists, biostatisticians, toxicologists, or hematologists/oncologists, amongst others, and/or scientific or medical professionals with similar backgrounds and qualifications; (ii) shall not have been retained as testifying or consulting experts in any action or proceeding associated with the Lawsuit, MDL No. 2471, Roundup Products, or any lawsuit brought against the Monsanto Parties or the Related Parties in any forum that arises from, results from, in any way relates to or is in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit; and (iii) with the exception of one Science Panel member selected by Class Counsel and one selected by the Defendant if Science Panel members are selected pursuant to Section 12.1(b)(iii), shall not have expressed a view regarding any question the Science Panel is to address.  Individuals that are candidates for appointment to the Science Panel must submit sworn affidavits to the Settlement Administrator (who shall promptly provide copies of such affidavits to Class Counsel and Counsel for the Defendant) attesting to their satisfaction of the requirements of this Section 12.1(c).

(d)     If any member of the Science Panel withdraws, resigns, or otherwise stops serving on the Science Panel, a replacement Science Panel member shall be selected pursuant to the process used to select the departing member (*e.g.*, if the departing member had been appointed by a particular Party, that Party shall appoint a replacement pursuant to the process described above, including challenge for cause and any remaining peremptory strike by the other Party).  If the Parties mutually agreed upon the departing member and cannot mutually agree upon a replacement Science Panel member, the remaining Science Panel members may select the replacement, subject to the criteria set forth in Section 12.1(c), and the strikes for cause and any remaining peremptory strikes set forth in Section 12.1(b)(iii).

(e)     The Science Panel shall have the discretion to request that the Settlement Administrator retain, on behalf of the Science Panel, professionals from scientific disciplines or individuals performing administrative tasks, if the Science Panel has determined the retention of such Person will assist the Science Panel in performing its work.  Anyone retained by the Settlement Administrator on behalf of the Science Panel shall satisfy the same requirements for freedom from conflicts as the Science Panel members, as set forth in Section 12.1(c), and shall submit a sworn affidavit attesting to their satisfaction of those

requirements.  The Parties shall be notified by the Settlement Administrator of any requests by the Science Panel pursuant to this Section 12.1(e), including the identity of any individual proposed to be retained, within 5 days of such a request, and may block the retention of any individual who does not meet the requirements for freedom from conflicts set forth in Section 12.1(c).

(f)     For the avoidance of doubt, the Science Panel is not an arbitration panel and the Science Panel Determination is final and not subject to judicial review, including under the Federal Arbitration Act or other similar statute, rule, or regulation.

Section 12.2     Scientific Analysis.

(a)     Beginning on the Science Panel Commencement Date, the Science Panel shall examine the body of scientific evidence described in Section 12.2(d) and existing on the Science Panel Commencement Date, as well as any additional scientific evidence pursuant to Section 12.2(e), to determine whether exposure to Roundup Products causes NHL in humans (the "Scientific Analysis").  If a majority of the Science Panel finds that such causation has not been established, the Science Panel shall undertake no further inquiry.  If a majority of the Science Panel finds that such causation has been established, the Science Panel shall then proceed to determine, by majority vote, at what threshold internal dose level (dose greater than xx micrograms/day) such causation has been established.  The conclusion(s) of the Science Panel with regard to the Scientific Analysis shall be referred to as the "Science Panel Determination."  As set forth in Section 12.3, the Science Panel's conclusion(s) shall constitute either a Causation Not Shown Finding (that causation has not been established for NHL) or a Causation Shown Finding (that causation has been established for NHL at or above the specified threshold internal dose level), and the Science Panel Determination shall have the evidentiary use described in Section 12.3.

(b)     To find that causation has been established as to NHL, the Science Panel must conclude:  (i) based on the body of scientific evidence described below, that there is reliable evidence overall (1) of a positive association between exposure to Roundup Products and NHL in humans, (2) that such positive association ~~is not due to~~accounts for chance, confounding, or bias, and (3) that based on an application of the Bradford Hill Guidelines, "we can pass from [the] observed association to a verdict of causation;" and (ii) that such reliable evidence makes it more likely than not that exposure to Roundup Products can cause NHL.

(c)     If the Science Panel finds that causation has been established as to NHL, it shall determine the threshold internal dose level at which such causation has been established.  In so doing, the Science Panel shall presume that such threshold internal dose level is 1100 micrograms per day over a lifetime of 70 years, the NSRL adopted by the State of California, unless ~~the~~:

(i)     The Science Panel determines otherwise by calculating a threshold internal dose level for added risk using the methodology used by California OEHHA in their Initial Statement of Reasons regarding setting a Benchmark Dose, Cancer Slope Factor, and NSRL for glyphosate (as described in Title 27, Article 7, Section 25721 of the California

Code of Regulations, and Fred Parham & Christopher Portier, *Benchmark Dose Approach*, *in* RECENT ADVANCES IN QUANTITATIVE METHODS IN CANCER AND HUMAN HEALTH RISK ASSESSMENT 239 (L. Edler & C. P. Kitsos eds., 2005)). In applying that methodology, the threshold internal dose level shall be derived based on findings of malignant lymphomas from a lifetime animal carcinogenicity bioassay of sufficient quality using the model with the best fit according to EPA BMDS 3.1.2 software. ~~If the~~; or

(ii)   The Science Panel determines that ~~approach to be inadequate, it may employ~~the approach used by the State of California is contrary to the weight of the scientific evidence, and that the weight of the scientific evidence requires use of another established methodology for calculating a threshold internal dose ~~in micrograms per day over a lifetime~~level that has been explained and validated in the scientific literature.

(d)   The body of scientific evidence that the Science Panel shall consider consists of the following:

(i)   Published EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian carcinogenicity assessments of glyphosate, glyphosate-based herbicides, and/or surfactants.

(ii)   IARC Monograph 112 regarding glyphosate.

(iii)   All published studies and reviews regarding glyphosate, glyphosate-based herbicides and/or surfactant epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity.

(iv)   All registrant-supplied studies and data submitted to EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian pesticide regulatory authorities concerning glyphosate, glyphosate-based herbicides, and/or surfactants regarding epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity, provided that if the Science Panel believes that the underlying data for a particular study is necessary for a complete review of that study, the Science Panel shall not consider that study unless such underlying data are contained within the document productions made as of the Settlement Date by any Person in prior litigation involving Roundup Claims or are otherwise publicly available.

(e)   Prior to the termination of the Science Panel's work, ~~should new scientific evidence falling within the terms of Section 12.2(d) become available that the Science Panel considers material,~~ the Science Panel may ~~petition the Settlement Administrator for permission to consider this new evidence. The Settlement Administrator~~consider additional scientific evidence that is published in a peer reviewed journal if at least five members of the Science Panel agree the scientific evidence should be considered. The Science Panel shall promptly notify the Parties of any such ~~request~~additional scientific evidence, pursuant to Section 12.7(g)(i), and the Parties shall be permitted the opportunity to state their views regarding the ~~request and the new~~additional scientific evidence ~~that is the subject of the request~~, pursuant to Section 12.7(g)(ii), within 14 days of receiving the notification from the ~~Settlement Administrator of the Science Panel's request. The Settlement Administrator will~~

~~take account of the Parties' views in deciding whether good cause exists to grant the~~ Science Panel ~~permission to consider the new evidence in question.~~

(f)    The Science Panel will have complete discretion to weigh the body of evidence as set forth in this Section 12.2, as it deems appropriate, and to conduct further analyses as it believes necessary to assess whether exposure to Roundup Products causes NHL in humans.   However, the Science Panel will not conduct any independent scientific research (*e.g.*, genotoxicity testing, animal studies, human epidemiological studies, dermal absorption studies, biomonitoring studies) to generate new scientific data.

Section 12.3    <u>Science Panel Determination and Effect</u>.

(a)    The Science Panel shall conclude the Scientific Analysis and reach the Science Panel Determination at the end of a four-year period following the Science Panel Commencement Date.   The Science Panel shall provide a written report documenting its findings to the Settlement Administrator within 30 days of completing its work, but no sooner than the end of the four-year period following the Science Panel Commencement Date.   The Science Panel may exercise its discretion concerning the appropriate content and format of the written report, but the report must include a completed copy of the Science Panel Determination Form attached as Exhibit 8.   The Science Panel Determination Form shall be the operative document for determining whether the Science Panel has made a Causation Not Shown Finding or a Causation Shown Finding as described below for purposes of the Settlement Agreement and the evidentiary use of the Science Panel Determination under it, notwithstanding any additional content contained in the Science Panel's written report.   The Parties will inform prospective members of the Science Panel in advance of their selection of the requirement that they will complete the Science Panel Determination Form and obtain their agreement to do so in the Science Panel Contracts.   The Science Panel Determination shall be final and not appealable.

(b)    The Science Panel Determination shall include and consist of either a Causation Not Shown Finding or a Causation Shown Finding.   A "Causation Not Shown Finding" means the Science Panel Determination has concluded that causation has not been shown for NHL in humans pursuant to the standard set forth above.   A "Causation Shown Finding" means the Science Panel Determination has concluded that causation has been shown for NHL in humans pursuant to the standard set forth above, but only at or above the threshold internal dose level ~~(dose greater than xx micrograms/day)~~ set forth in the Science Panel Determination as provided in Section 12.2(c).   The Science Panel Determination must include a threshold internal dose level in a Causation Shown Finding, unless the Science Panel determines under the standard set forth in Section 12.2(b) and Section 12.2(c) that causation has been established for NHL at any internal dose level, no matter how small, and includes that determination in the Science Panel Determination (such a determination shall be considered a Causation Shown Finding of any internal dose level above zero.)   If the Science Panel Determination does not include a threshold internal dose level for NHL, that shall be considered under the Settlement Agreement as a Causation Not Shown Finding for NHL unless and until the Science Panel issues the missing threshold internal dose level as provided in the next sentence.   If the Science Panel Determination does not include a threshold internal dose level where it has determined that causation has been established for NHL, the Settlement

Administrator shall so inform the Science Panel and request that the Science Panel issue the missing threshold internal dose level within 30 days of receipt of the Science Panel Determination Form.  If the Science Panel does not do so, the Science Panel shall be considered under the Settlement Agreement to have made a Causation Not Shown Finding for NHL.

(c)     No Issue Preclusive Effect.  The Science Panel Determination will ~~not have the~~have no issue-preclusive effect ~~set forth in the June Settlement Proposal~~.  Nothing in this Article XII shall abrogate or overrule any existing judicial order regarding any specific expert witness.

(d)     Evidentiary Use of the Science Panel Determination.  The Defendant (on behalf of the Monsanto Parties), the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree, as follows:

(i)     Any Monsanto Party or Settlement Class Member Party may introduce the Science Panel Determination as evidence in support of arguments to a court, jury, or other tribunal in connection with the litigation of any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, and no Monsanto Party or Settlement Class Member Party will object to the use or introduction of the Science Panel Determination in any such proceedings.  Without limiting the foregoing, the evidentiary use is applicable in any and all Roundup Lawsuits and with respect to any and all Roundup Claims that require proof of any causal connection between exposure to Roundup Products and NHL, and to any Claims seeking a determination of the issue of General Causation.  The evidentiary use is also applicable to any and all Roundup Claims (including false advertising claims) whose factual predicates include that Roundup Products can cause NHL.  No Monsanto Party or Settlement Class Member Party may introduce a Causation Shown Finding without also introducing the threshold internal dose level set forth in that Causation Shown Finding, and the Science Panel Determination will be described as concluding that causation is not shown for doses lower than such threshold internal dose level.

(ii)     A stipulation of admitted facts in the form of Exhibit 9 together with any modifications agreed to by the Parties (the "Science Panel Stipulation") shall be applicable to the Monsanto Parties and the Settlement Class Member Parties in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties.  In any such proceeding, the Science Panel Stipulation will constitute stipulated facts by the Monsanto Parties and the Settlement Class Member Parties, the Monsanto Parties and the Settlement Class Member Parties may introduce the Science Panel Stipulation into evidence, and the Monsanto Parties and the Settlement Class Member Parties will not contradict any of the stipulated facts contained in the Science Panel Stipulation or assert that the Science Panel reached a conclusion inconsistent with the Science Panel Determination.  The Science Panel Stipulation shall not constitute an admission or concession by any party regarding the merits of the issue of General Causation.

(iii)   The Monsanto Parties and the Settlement Class Member Parties may introduce into evidence the Authorized Depositions of the Science Panel members described in Section 12.6(d) (or any portions thereof) in any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, but only if the Science Panel Determination and the Science Panel Stipulation are also being introduced into evidence in such proceedings.

(iv)   (iii) In any and all Roundup Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Monsanto Parties, the Parties agree that the court or other tribunal shall (1) permit the full and fair introduction of the Science Panel Determination as evidence, (2) permit full and fair admission of the Science Panel Stipulation, including by permitting references to it and reading it or submitting it in writing to the jury (as the court or tribunal deems appropriate), and (3) permit the full and fair admission of the Authorized Depositions (or any portions thereof) in any proceeding where the Science Panel Determination and the Science Panel Stipulation are being introduced into evidence, and (4) not instruct or otherwise tell the jury it is not bound by any of the stipulated facts in the Science Panel Stipulation.  The Parties agree that the Court shall have jurisdiction to oversee the requirements contained in this Section 12.3(d)(iii) Section 12.3(d)(iv) and to issue binding orders as necessary to implement or enforce them, and consent to personal jurisdiction in the Court with respect to such matters.

(v)   (iv) Nothing in this Section 12.3(d) or the Science Panel Stipulation will preclude or limit any Monsanto Party's or Settlement Class Member Party's right in any litigation or other proceeding to contest the result of the Science Panel Determination or to use or introduce evidence contrary to or in addition to the result of the Science Panel Determination, or bind a court, jury, or other tribunal to render a decision in accord with the result of the Science Panel Determination.

(vi)   (v)  The evidentiary use provided for in this Section 12.3(d) shall not alter the burden, nature, or level of proof required under applicable law to demonstrate Specific Causation as to any individual Settlement Class Member Party. The Monsanto Parties retain all rights to contend that a Settlement Class Member Party must satisfy the threshold internal dose level set forth in a Causation Shown Finding to demonstrate General Causation and Specific Causation under applicable law, and Settlement Class Member Parties retain all rights to contend otherwise.

(e)   Related Parties.  The Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree, as follows:

(i)   Any Related Party may introduce the Science Panel Determination as evidence in support of arguments to a court, jury, or other tribunal in connection with the litigation of any and all Related Party Lawsuits and with respect to any and all Roundup Claims between one or more Settlement Class Member Parties and any of the Related Parties on the same terms and conditions as the Monsanto Parties may introduce the

Science Panel Determination, and no Settlement Class Member Party will object to such use or introduction of the Science Panel Determination in any such proceedings.

(ii)     In any proceeding in which a Related Party introduces the Science Panel Determination as evidence pursuant to Section 12.3(e)(i), the Science Panel Stipulation shall be applicable to such Related Party and any and all Settlement Class Member Parties in that proceeding.  In such proceeding, the Science Panel Stipulation will constitute stipulated facts by the Related Parties and Settlement Class Member Parties, the Related Parties and the Settlement Class Member Parties may introduce the Science Panel Stipulation into evidence, and the Related Parties and the Settlement Class Member Parties will not contradict any of the stipulated facts contained in the Science Panel Stipulation or assert that the Science Panel reached a conclusion inconsistent with the Science Panel Determination.  The Science Panel Stipulation shall not constitute an admission or concession by any party regarding the merits of the issue of General Causation.

(iii)     In any proceeding in which a Related Party introduces the Science Panel Determination as evidence pursuant to Section 12.3(e)(i), such Related Party and the Settlement Class Member Parties may introduce into evidence the Authorized Depositions of the Science Panel members described in Section 12.6(d) (or any portions thereof), but only if the Science Panel Stipulation is also being introduced into evidence in such proceedings.

(iv)     (iii) In any proceeding in which a Related Party introduces the Science Panel Determination as evidence pursuant to Section 12.3(e)(i), the provisions of Section 12.3(d)(iii), Section 12.3(d)(iv), and Section 12.3(d)(v), and Section 12.3(d)(vi) shall apply *mutatis mutandis* with references to the Monsanto Parties being deemed to refer to the Related Parties and references to Roundup Lawsuits being deemed to refer to Related Party Lawsuits.

(v)     (iv) Nothing in the Settlement Agreement binds the Related Parties, and the Related Parties are entitled to take advantage of the evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation, while still contesting all issues, whether in law, fact, equity, or otherwise, including causation and damages, and asserting any defenses regardless of whether they use the Science Panel Determination against a Settlement Class Member Party.

(f)     Opt Outs.  The agreement and stipulation regarding evidentiary use of the Science Panel Determination shall not apply in any legal, legislative, administrative, or regulatory action, proceeding, or matter between an Opt Out and any Monsanto Party or Related Party, but nothing in the Settlement Agreement precludes a Monsanto Party or Related Party from seeking to introduce or otherwise use the Science Panel Determination in such a lawsuit or other proceeding or matter in any way.

Section 12.4     Termination of the Science Panel's Work.  The Science Panel's work shall terminate upon delivering the Science Panel Determination to the Settlement Administrator, except as provided in Section 12.3(b).  The Parties shall jointly notify the Court

of the termination of the Science Panel's work.  The Science Panel's report shall be posted on the Settlement Website.

Section 12.5    New Scientific Evidence After Science Panel Determination.

(a)    Except as specifically provided in this Section 12.5, the evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation as set forth in Section 12.3 shall continue in full force and effect notwithstanding any subsequent changes in facts, law, or scientific opinion regarding Roundup Products, Roundup Claims, or the issues determined by the Science Panel.

(b)    Beginning ~~three~~two years after the Science Panel announces the Science Panel Determination, the Defendant and Settlement Class Members may challenge the admissibility of the Science Panel Determination solely on the basis that new scientific evidence as defined in this Section 12.5 has rendered the Science Panel Determination inadmissible under the standards of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) or *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), as applicable in the forum at issue and as such standards may be modified in the future (a "Daubert/Frye Challenge").

(c)    A Daubert/Frye Challenge must identify with specificity the new scientific evidence on which the challenge is based, and must demonstrate that such evidence relates to Roundup Products and NHL, falls within the terms of Section 12.2(d), and did not exist during the Scientific Analysis.  As used in this Section 12.5, "new scientific evidence" shall not include (i) a new discussion or evaluation of scientific evidence that existed during the Scientific Analysis, or (ii) new evidence that does not meet the publication requirements of Section 12.2(d).  A Daubert/Frye Challenge must be made by means of an application to the Court by a Settlement Class Member with an NHL diagnosis or the Defendant.

(d)    If a Daubert/Frye Challenge is made, the party opposing the challenge may seek to depose or otherwise obtain testimony from the Science Panel members to rebut the claim that the new scientific evidence affects the validity of the Science Panel Determination or renders it unreliable, and such deposition or other testimony may be used in connection with that or subsequent Daubert/Frye Challenge(s).

Section 12.6    Science Panel Confidentiality.

(a)    Strict Confidentiality of Science Panel.  The Science Panel and its authorized contractors shall conduct their work in private.  All documents and information of the Science Panel arising from, resulting from, in any way relating to or in connection with the Scientific Analysis, including without limitation any and all work product of the Science Panel, drafts, conversations, correspondence, and analyses, whether oral or written, of any kind or nature, shall be held in conformity with strict confidence and not disclosed to any Person at any time, during or after the Scientific Analysis, except (i) a Science Panel member or an authorized contractor shall be entitled to disclose such documents and information to another Science Panel member or an authorized contractor during the course of the Scientific Analysis to the extent necessary to conduct the Scientific Analysis, (ii) the Science Panel Determination and the report referenced in Section 12.3(a) may be disclosed as set forth in Section 12.3(a),

69

Section 12.4, and Section 12.7(f); (iii) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), provided that the Parties are given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, provided further that the Science Panel member or authorized contractor subject to such requirement or request cooperates fully with the Parties in connection therewith, and only such confidential information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Science Panel member or authorized contractor; (iv) under legal (including contractual) or ethical obligations of confidentiality no less stringent than those applicable to Science Panel members and authorized contractors, on an as-needed and confidential basis to such Science Panel member's or authorized contractor's present and future accountants and counsel, provided such confidentiality obligations include an agreement that such Persons will be bound by the restrictions applicable to Science Panel members and authorized contractors set forth in Section 12.7(b)(iv); (v) to the extent any such information is already publicly known through no fault of such Science Panel member or authorized contractor, provided, however, that Science Panel members and authorized contractors may not disclose such publicly known information until the Science Panel's work has terminated; or (vi) to the extent permitted by Section 12.5(d) and Section 12.6(d).  The Science Panel, its members, and its authorized contractors shall make no public statements about the work of the Science Panel or status of the Scientific Analysis (including the expected date of completion), including after the Science Panel Determination, except to the extent permitted by Section 12.5(d) and Section 12.6(d).  For the avoidance of doubt, this provision applies to the individual members of the Science Panel and their documents and information as well as to documents and information of the Science Panel as a whole.

(b)  No Discovery.  The Defendant (on behalf of the Monsanto Parties), the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree that, except to the extent permitted by Section 12.5(d) and Section 12.6(d), they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, seek discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv), including any written discovery, requests for documents, subpoenas of any kind, or notices of deposition, and that they will not make use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) that becomes available through any other means.

(c)  No Testimony.  The Defendant (on behalf of the Monsanto Parties), the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and agree that, except to the extent permitted by Section 12.5(d) and Section 12.6(d), they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, call any Science Panel member, any of the

Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv), to provide testimony, whether as a fact witness, an expert witness, or in any other capacity, and that they will not make use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any testimony from any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) that becomes available through any other means.

(d)     Authorized Testimony.  Following the date on which the Science Panel announces the Science Panel Determination, the Defendant and the Settlement Class Members shall be permitted to take the trial testimony of each member of the Science Panel by means of a videotaped deposition, which shall be transcribed stenographically by a court reporter, at which the Court will preside (an "Authorized Deposition").  The Authorized Depositions will be conducted as follows:

(i)     There will be only one Authorized Deposition for each Science Panel member lasting no longer than seven hours, unless the Court orders otherwise at the time for good cause shown up to an additional seven hours for each Authorized Deposition.  The Court shall determine the allocation of the time for the Authorized Deposition among the Settlement Class Members and the Defendant.  At an Authorized Deposition, any time not used by the party to whom the time was originally allocated shall be available to the other party.

(ii)     The Court shall appoint a lead examiner for the Settlement Class Members ("Lead Deposition Counsel") responsible for examining the Science Panel members on behalf of the Settlement Class Members at the Authorized Depositions.  The Lead Deposition Counsel shall be a lawyer with substantial experience representing individuals with Roundup Claims and otherwise litigating mass tort claims.  Lead Deposition Counsel shall consult with Class Counsel and the Plaintiffs' Executive Committee for MDL No. 2741 regarding the Authorized Depositions, to the extent such counsel wish to be consulted.  The Court will determine whether any counsel in addition to the Lead Deposition Counsel shall be permitted to conduct any part of the examination of a Science Panel member on behalf of any Settlement Class Member at an Authorized Deposition, provided that allowing additional counsel to conduct part of the examination shall not affect the total time allocated to Settlement Class Members under Section 12.6(d)(i).

(iii)     The Authorized Depositions shall be limited to matters relevant to the Science Panel Determination.

(iv)     The Court shall oversee the Authorized Depositions and conduct the proceedings in accordance with procedures applicable at trial.  The Court shall establish procedures to manage the conduct of the Authorized Depositions as it deems necessary, provided that such procedures are consistent with this Section 12.6(d) and all other provisions of the Settlement Agreement, and provided further that the Court shall not order any other discovery of the Science Panel members, including document discovery.

Section 12.7   <u>Science Panel Administration</u>.

(a)   <u>Compensation and Expenses</u>.   Reasonable compensation of the Science Panel members through the termination of the Science Panel's work will be agreed to by the Settlement Administrator, Class Counsel, and Counsel for the Defendant.   Compensation of the Science Panel members, and reimbursement of reasonable out-of-pocket costs and expenses incurred as a result of the Scientific Analysis (including the compensation and reimbursement of reasonable out-of-pocket costs and expenses for any Persons retained pursuant to Section 12.1(e), compensation for preparation and testimony provided pursuant to Section 12.5(d) and Section 12.6(d), and any costs and expenses of indemnification pursuant to Section 12.7(b)(vi)) ("Science Panel Costs") will be paid out of the Settlement Fund, subject to the limitation set forth in Section 3.3.   The Science Panel shall submit an annual budget to the Settlement Administrator for review and approval.   Either Class Counsel or Counsel for the Defendant may challenge the reasonableness of the Science Panel's out-of-pocket costs and expenses, in which case the Settlement Administrator will determine the reasonableness of such costs and expenses.   If the Settlement Administrator determines that any costs and expenses are unreasonable, the Science Panel will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Science Panel will refund that amount to the Settlement Fund.   The Science Panel may appeal the Settlement Administrator's determination that costs and expenses are unreasonable to the Court, which shall review the Settlement Administrator's determination for an abuse of discretion.

(b)   <u>Science Panel Contracts</u>.   No later than 30 days after the date the Science Panel members have been selected pursuant to Section 12.1(b), the Settlement Administrator shall execute contracts (in the form approved by Class Counsel and Counsel for the Defendant) with the members of the Science Panel (the "Science Panel Contracts").   The Science Panel Contracts shall:

(i)   Provide a fully-executed copy of the Settlement Agreement (with all Exhibits) and instructions to carefully review:   (1) Article XII, including the provisions describing the nature and extent of communications between the Science Panel, the Settlement Administrator, and the Parties; describing the duties of the Science Panel; and describing the confidentiality requirements; (2) Section 14.8 reflecting that the Settlement Administrator, the Science Panel, and any qualified entities retained by the Settlement Administrator in connection with the Settlement Agreement are not agents of any Party; and (3) Exhibit 8;

(ii)   Set forth the timeline for the completion of the Science Panel's duties as set forth in Section 12.3(a) and the compensation for Science Panel members pursuant to Section 12.7(a), as well as provide that the Science Panel members will provide testimony by deposition or otherwise to the extent requested pursuant to Section 12.5(d) and Section 12.6(d), if necessary;

(iii)   Provide that no work on the Scientific Analysis shall commence until the Science Panel Commencement Date and that the Science Panel Contracts will terminate upon the termination of the Settlement Agreement if the Settlement Agreement terminates prior to the Effective Date, or upon the date that the Science Panel's work is

terminated pursuant to Section 12.4, except in all cases any provisions of the Science Panel Contracts that require continuation after that date to satisfy the provisions of the Settlement Agreement that survive termination, as set forth in Section 23.3, such as provisions relating to the Science Panel's confidentiality obligations;

(iv)     Provide that, except to the extent permitted by Section 12.5(d) and Section 12.6(d), no Science Panel member or any of the Science Panel's authorized contractors may serve as an expert witness or consultant, or provide any voluntary testimony including by affidavit, in any Roundup Lawsuit, Related Party Lawsuit, or in any legal, legislative, administrative, or regulatory action, proceeding, or matter asserting or alleging Roundup Claims, otherwise arising from, resulting from, in any way relating to or in connection with Roundup Products, or against the Monsanto Parties or the Related Parties arising from, resulting from, in any way relating to or in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit, in all such cases whether brought by a Settlement Class Member Party, an Opt Out, or any other Person, at any time, and further provide that no disclosure shall be made to any Person pursuant to Section 12.6(a)(iv) unless such Person(s) agree to the same;

(v)     Provide that Science Panel members will be compensated out of the Settlement Fund for their work from the Science Panel Commencement Date through the termination of the Science Panel's work at a specified hourly rate and/or guaranteed annual compensation during the Science Panel's work, pro-rated for any partial year, and that their reasonable out-of-pocket costs and expenses for such period will be reimbursed out of the Settlement Fund, and further provide that they will be compensated out of the Settlement Fund (but only to the extent funds remain in the Settlement Fund) at the same hourly rate for any preparation and testimony provided pursuant to Section 12.5(d) and Section 12.6(d);

(vi)     Provide that Science Panel members and their authorized contractors will be indemnified out of the Settlement Fund, to the extent available, for reasonable legal fees, expenses, and liabilities (except in the event such legal fees, expenses, and liabilities arise from, result from, in any way relate to or are in connection with the gross negligence, willful misconduct, or bad faith of the Person seeking indemnification), in any litigation arising from, resulting from, in any way relating to or in connection with the Scientific Analysis, with sole discretion provided to the Settlement Administrator to determine whether any legal fees and expenses are covered by the indemnification and are reasonable and whether any legal fees, expenses, and liabilities arise from, result from, in any way relate to or are in connection with the gross negligence, willful misconduct, or bad faith of the Person seeking indemnification, and further provide that no indemnification will be provided other than from the Settlement Fund and if the Settlement Fund is exhausted, no further indemnification will be provided; and

(vii)     Not contain any terms or conditions that conflict or are inconsistent with the terms of the Settlement Agreement.

(c)     The Settlement Administrator shall deliver a copy of each fully executed Science Panel Contract to the Parties within three days of execution of each of the

Science Panel Contracts. The Settlement Administrator shall monitor the execution of the terms of the Science Panel Contracts and shall compensate the Science Panel pursuant to the terms of the Science Panel Contracts. If any member of the Science Panel resigns, withdraws, or otherwise stops serving on the Science Panel, the Settlement Administrator shall notify the Parties within three days of such event, and shall contract with any such new member of the Science Panel selected by the Parties, as provided in Section 12.1 hereof. The Settlement Administrator shall contract with any such new member pursuant to the provisions of Section 12.7(b).

(d)     At the request of the Science Panel, and by the deadlines requested by the Science Panel, the Settlement Administrator shall solicit proposals for services to assist the Science Panel in performing its duties as set forth in Section 12.1(e). Any such authorized contractors retained by the Settlement Administrator on behalf of the Science Panel shall satisfy the same requirements for freedom from conflicts as the Science Panel members, as set forth in Section 12.1(c). The Settlement Administrator shall maintain copies of all contracts with and certifications of such authorized contractors, shall monitor execution of the terms of each contract, and shall provide compensation according to the terms of each contract. All compensation, costs, and expenses associated with such services to assist to the Science Panel shall be considered Science Panel Costs.

(e)     Beginning three months after execution of the last Science Panel Contract with the initial ~~five~~seven Science Panel members, the Settlement Administrator shall provide quarterly administrative reports to the Parties, either orally or in writing, which shall contain copies of all contracts and certifications executed pursuant to Section 12.7(d) and a summary accounting of the quarterly Science Panel Costs incurred. These quarterly reports will not discuss the substance of the Science Panel's work.

(f)     The Settlement Administrator shall notify the Parties the same day the Settlement Administrator receives the report from the Science Panel at the conclusion of the Science Panel's work as set forth in Section 12.3(a), and shall promptly transmit that report to the Parties and the Court. The Final Order and Judgment shall provide that the Court will enter the Science Panel's report on its public docket upon receipt.

(g)     There shall be no *ex parte* contact with the Science Panel, any of its members, or authorized contractors, except as authorized by an express written waiver by the Parties and the Settlement Administrator. All communications between the Science Panel and the Parties or their agents arising from, resulting from, in any way relating to or in connection with the Settlement Agreement shall be conducted through the Settlement Administrator as follows:

(i)     Communication by the Science Panel. The Science Panel shall provide to the Settlement Administrator one copy of any written communication it wants to make to the Parties, which the Settlement Administrator shall transmit to each of the Parties within three days of receipt from the Science Panel. The Settlement Administrator shall take appropriate steps to make certain each Party receives its copy as close to the same time as practicable. If the Science Panel has questions for the Parties, in addition to providing the Parties with copies of the questions, the Settlement Administrator shall decide, in its sole

discretion, whether the Parties may submit written responses to the Science Panel's questions, and shall dictate the schedule, format, and length of any responses submitted by the Parties to the Science Panel, subject to Section 12.7(g)(ii).

        (ii)    <u>Communication by the Parties</u>.  Where permitted pursuant to the Settlement Agreement, including pursuant to Section 12.2(e) and Section 12.7(g)(i), if a Party (Party A) seeks to communicate with the Science Panel, Party A shall send a copy of the proposed communication to the other Party (Party B) and a copy to the Settlement Administrator.  Within three days of receipt of such communication, the Settlement Administrator shall forward copies of the communication provided by Party A to each member of the Science Panel and send a copy of the Settlement Administrator's correspondence to each of the Parties.

        (iii)    For the avoidance of doubt, these communications are subject to Section 12.6, and considered as Confidential Information subject to the protections of Article XXIV.

        (h)    <u>Recordkeeping Duties of Settlement Administrator</u>.  The Settlement Administrator shall maintain appropriate books, records, and documents pertaining to the Science Panel such as contracts, invoices, and receipts as reasonably required by the Defendant.  The Defendant shall have the right to obtain, and the Settlement Administrator shall be required to provide, an accounting related to costs and expenses as well as access to books and records pertaining to the Science Panel which the Defendant may reasonably require.

        (i)    <u>No Effect</u>.  The Monsanto Parties' agreement and stipulation regarding evidentiary use of the Science Panel Determination shall not apply in any legal, legislative, administrative, or regulatory action, proceeding, or matter except Roundup Lawsuits between a Monsanto Party and a Settlement Class Member Party as set forth above.  Nothing in the Settlement Agreement or the Science Panel Determination shall affect or limit the Monsanto Parties' right to rely upon determinations by the EPA or other regulators with respect to whether Roundup Products or glyphosate can cause NHL in connection with any issue or defense (including preemption).  The Defendant (which agrees with the conclusions reached by the EPA) reserves the right to assert the correctness of any findings that have been made by regulatory authorities (or any similar findings based on additional scientific developments) in any litigation, legislative, administrative, or regulatory setting in the United States or abroad.  The methodology set forth in Section 12.2 for the Scientific Analysis is the product of a negotiated settlement of Roundup Lawsuits, and nothing in the Settlement Agreement or the Science Panel Determination shall affect the rights of the Monsanto Parties' rights or the Settlement Class Member Parties to contest causation in any litigation, legislative, administrative, or regulatory setting, including in litigation challenging any legislation, regulation, or legislative, administrative, or regulatory requirements or determinations.

        Section 12.8    <u>Settlement Class Members' Subsequent Exposures</u>.  For the avoidance of doubt, if a Settlement Class Member is further exposed to Roundup Products on or after February 3, 2021, the evidentiary use under Section 12.3, the Releases under Article XVII, and the stay described in Section 18.2(b)(i) shall apply to Claims arising from, resulting from, in any way relating to or in connection with such exposure to the same extent

(i)     The Compensation Fund will continue as provided in Article VI, Article VII, and the Compensation Award Guidelines, as modified by the revised amounts, ranges, and any other modifications set forth in the Compensation Fund Continuation Terms.

(ii)     In addition to paying accepted Compensation Awards upon provision of the executed Form of Release as set forth in Exhibit 6, the Compensation Fund shall pay amounts referenced in Section 13.4(d)(ii), provided that the Compensation Fund shall have no obligation to withhold funds otherwise payable on accepted Compensation Awards to reserve funds to pay such amounts.

(d)     **Settlement Class Member Rights to Sue for Compensatory Damages During the Continuation of the Compensation Fund.**  If the Compensation Fund continues as provided in Section 13.4(c), all Settlement Class Members who have not previously accepted and received a Compensation Award (or who do not subsequently accept and receive a Compensation Award) can sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties during the period when the Compensation Fund is in operation under the Compensation Fund Continuation Terms on the following terms and conditions and under, at the time, and subject to the terms and conditions set forth in Section 7.13, Section 7.16, and Article XIII:

(i)     A Settlement Class Member who sues for Compensatory Damages without first applying for a Compensation Award during the period when the Compensation Fund is in operation under the Compensation Fund Continuation Terms waives any right to apply for a Compensation Award.  A Settlement Class Member who applies for a Compensation Award during the period when the Compensation Fund is in operation under the Compensation Fund Continuation Terms may not sue for Compensatory Damages in the tort system until he or she receives and rejects a final Claims Program Award as provided in Section 7.10(a)(ii)(3), is determined to be ineligible for a Compensation Award, or the Compensation Fund is exhausted.

(ii)     ~~The provisions of Section 7.13(e) with respect to offers of Claims Program Awards shall apply.  In addition, a~~A Settlement Class Member who received ~~such~~ an offer of a Claims Program Award and sues for Compensatory Damages in the tort system will satisfy any judgment or settlement from the Compensation Fund up to the last amount offered by the Claims Program (except to the extent the Compensation Fund does not contain assets equal to or exceeding such amount at the time such judgment or settlement becomes payable).

(e)     **Settlement Class Member Rights to Sue for Compensatory Damages After the Continuation of the Compensation Fund Ends.**  If the Compensation Fund continues as provided in Section 13.4(c), but thereafter ceases operations because it has exhausted its funding under the Compensation Fund Continuation Terms, all Settlement Class Members who have not previously accepted and received a Compensation Award can sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties subject to the terms and conditions set forth in Section 7.13 and Article XIII~~, and provided further that in the case of Settlement Class Members who were~~

~~offered but did not accept a Claims Program Award, the amount last offered by the Claims Program will be treated as an offer of judgment for purposes of obligation to pay costs in the event of a judgment below that amount.~~

(f)     Right to Terminate Funding.  If the Compensation Fund continues as provided in Section 13.4(c), and notwithstanding anything to the contrary in the Compensation Fund Continuation Terms, the Defendant will have the right to terminate the funding of the Compensation Fund at any time thereafter upon six months' notice to Class Counsel, the Court (which may order appropriate supplemental notice to the Settlement Class), and the Settlement Administrator.  The Defendant will be obligated to pay the End Payment within 30 days of the effective date of the termination of funding, and the provisions of Section 13.3(b) will apply as of the time the funding ends.

(g)     Costs of Supplemental Notice.  If the Court approves and the Parties proceed with a supplemental Settlement Class notice plan as described in Section 13.4(a), the cost will be a Settlement Class Notice Cost payable out of the Settlement Fund Amount, pursuant to Section 3.3(b) and not an additional cost to the Defendant.

Section 13.5   Labeling.  The provisions of Article IX shall continue to apply to the Defendant whether or not the Compensation Fund continues beyond the end of the Initial Settlement Period.

Section 13.6   Continued Application.  In any suit in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties, the Settlement Class Member may seek Compensatory Damages only and remains bound by all provisions of the Settlement Agreement other than the bar on bringing Roundup Claims for Compensatory Damages in the tort system, including Section 4.4, Section 5.4, Section 6.4, Section 7.13, Section 7.14, Section 7.15, Section 7.16, Section 7.17, Section 11.3(c), Section 11.6, Article XII, this Article XIII, Section 14.1(d), Section 14.2(d), Section 14.3(d), Section 14.4(e), Section 14.5(c), Section 14.8, Article XVI, Article XVII, Section 18.2(b)(ii)-~~(v)~~(vi), Section 21.4–Section 21.10, Section 23.2(a), Section 23.3, Article XXIV, Article XXVI, Article XXIX, Article XXX, and Part 4(c) of Exhibit 5.

Section 13.7   No Prejudice.  The provisions of this Article XIII permitting Settlement Class Members to sue for Compensatory Damages in the tort system for Roundup Claims against the Monsanto Parties or the Related Parties set forth solely the time, circumstances and terms and conditions under which Settlement Class Members may bring such lawsuits consistent with the Settlement Agreement.  Such provisions shall not be construed as suggesting that any Settlement Class Member would have a valid Roundup Claim or that any such lawsuit or Roundup Claim has or would have merit, and are without prejudice to the rights of the Monsanto Parties and the Related Parties to defend against any such lawsuits or Roundup Claims.

(a)   <u>Indemnification by Settlement Class Member Parties</u>.   If, notwithstanding the provisions of this Article XVI, any Claim is made against any Monsanto Party or Related Party by any Governmental Payor or other Person arising from, resulting from, or in any way relating to or in connection with a Settlement Class Member Party's application for or receipt of a Compensation Award (including because the Settlement Class Member Party did not identify that Governmental Payor pursuant to Section 16.1(b)), the Settlement Class Member Party shall indemnify such Monsanto Party or Related Party, up to the amount of the Compensation Award the Settlement Class Member Party receives, and hold it harmless with respect to such Claim.

(b)   <u>Notice of Indemnification</u>.   **SETTLEMENT CLASS MEMBER PARTIES ACKNOWLEDGE THAT THIS SECTION 16.3 COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

## ARTICLE XVII
## Releases and Covenants Not to Sue

Section 17.1   <u>Releases</u>.   This Section 17.1 sets forth the Claims that are released by all Settlement Class Members (the "Released Claims").  In addition to the Released Claims, Settlement Class Members who accept a Compensation Award execute a Form of Release, attached as Exhibit 6, that releases additional Claims as to them.

(a)   <u>Release of Punitive Claims</u>.   In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties hereby waive and release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, of and from any and all Claims, including unknown Claims, for punitive, exemplary, vindictive, punitory, presumptive, added, aggravated, speculative, or imaginary damages arising from, resulting from, in any way relating to or in connection with Roundup Claims, Roundup Lawsuits and/or Related Party Lawsuits.

(b)   <u>Release of Medical Monitoring Claims</u>.   In consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class Member Parties hereby waive and release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, of and from~~: (i)~~ any and all Claims, including unknown Claims, for medical monitoring arising from, resulting from, in any way related to or in connection with Roundup Products and undeveloped, unmanifested, and/or undiagnosed NHL (including prevention and diagnosis thereof) ~~and (ii) any and all Claims, including unknown Claims, that their injuries or damages arising from, resulting from, in any way related to or in connection with Roundup Products and NHL were increased because of the absence of a medical monitoring program.~~<u>to the extent that such Claims seek monitoring (or recovery for monitoring) where and when the services of the Diagnostic Accessibility Grant Program are or were reasonably available to the Settlement Class Member at issue.</u>

bargained for and that the Parties would not have entered into the Settlement Agreement unless it included a broad release of unknown Claims arising from, resulting from, in any way relating to or in connection with the matters released herein.

(c)     The Settlement Class Member Parties intend to be legally bound by the Releases.

(d)     The Releases are not intended to prevent the Defendant or any Monsanto Parties from exercising its rights of contribution, subrogation, or indemnity under any law.

(e)     Nothing in the Releases will preclude any action to enforce the terms of the Settlement Agreement.

(f)     The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Article XVII except as set forth in the Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in the Settlement Agreement.

Section 17.4     Covenants Not to Sue.

(a)     Released Claims.    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Class Representatives and Subclass Representatives, the Settlement Class Members (on behalf of themselves and the associated Settlement Class Member Parties), and the Settlement Class covenant, promise, and agree that they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Claim, action, or proceeding alleging or asserting any Released Claims or challenging the validity of the Releases.  If any such Claim, action, or proceeding exists in any court, tribunal or other forum as of the Effective Date, the Settlement Class Member Parties covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.

(b)     Roundup Claims.    For the consideration provided for herein, the Class Representatives and Subclass Representatives, the Settlement Class Members (on behalf of themselves and the associated Settlement Class Member Parties), and the Settlement Class covenant, promise, and agree that they will not continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Claim, action or proceeding alleging or asserting any of his or her respective Roundup Claims against the Monsanto Parties or the Related Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, except at the time and to the extent following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)) such actions are permitted pursuant to the terms and conditions set forth in Section 7.13, Section 7.16, and Article XIII.  The Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, covenant, promise, and

(i)     The Preliminary Approval Order shall contain, in addition to the provisions necessary and appropriate to direct, authorize and commence the Settlement Class Notice, provisions setting forth the process for the Court to consider final approval of the Settlement Agreement, provisions authorizing all actions under the Settlement Agreement that are permitted or required to be taken following entry of the Preliminary Approval Order and prior to entry of the Final Order and Judgment, and provisions staying the prosecution and preventing the further filing of any and all Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits by any Settlement Class Member Party in any forum or jurisdiction (whether federal, state, or otherwise), against any of the Monsanto Parties or the Related Parties.  The stay and prohibition shall remain in effect until 90 days following the conclusion of the Initial Settlement Period.  The foregoing stay and prohibition provisions of the Preliminary Approval Order will be superseded by the provisions of the Final Order and Judgment providing for a stay and prohibition of equivalent duration, in the event the Court issues it.  For the avoidance of doubt, the stay and prohibition order shall not apply to any Opt Outs, effective as of the date their Opt Out becomes effective under Section 4.2(d).

(ii)     Beginning as of entry of the Preliminary Approval Order, the statutes of limitation applicable to any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Members against any Monsanto Party, and any and all Claims, counterclaims, and defenses of the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party, will be tolled and stayed to the extent not already tolled by the initiation of an action in the Lawsuit or a Roundup Lawsuit.  The tolling shall remain in effect until 90 days following the conclusion of the Initial Settlement Period.  For the avoidance of doubt, the tolling shall not apply to any Opt Outs, effective as of the date their Opt Out becomes effective under Section 4.2(d).

(iii)     Notwithstanding the foregoing, both the stay under Section 18.2(b)(i) and tolling under Section 18.2(b)(ii) shall expire:  (1) if entry of the Final Order and Judgment is denied (or its entry is reversed), effective on the date on which all appellate courts with jurisdiction (including the United States Supreme Court by petition for writ of certiorari) affirm such denial or reversal or deny such petition for writ of certiorari, such that no further appeal or review is possible (or the time for filing such an appeal or petition for writ of certiorari has expired); or (2) if the Settlement Agreement is otherwise terminated, effective as of the date 30 days after the termination.

(iv)     Notwithstanding the foregoing, both the stay under Section 18.2(b)(i) and tolling under Section 18.2(b)(ii) shall expire as to a particular Settlement Class Member if and when the Settlement Administrator grants an early expiration of the stay and tolling to that Settlement Class Member (an "Exceptional Hardship Exception").  The Settlement Administrator may grant an Exceptional Hardship Exception only if the following criteria are met:  (1) the Settlement Class Member was not diagnosed with NHL prior to the close of the Opt Out period, (2) the Settlement Class Member timely submitted a complete and non-deficient claim for a Claims Program Award (including requesting an Extraordinary Circumstances finding), was determined to be eligible for a Claims Program Award, and timely and fully pursued mediation and appeal under Section 7.10(a)(ii)(1)-(2), (3) the Settlement Class Member received and timely rejected a final Claims Program Award as provided in

Section 7.10(a)(ii)(3), (4) the Settlement Class Member's rejection of the final Claims Program Award is within the time period provided in Section 7.10(a)(ii)(3) and was more than 180 days prior to the expiration of the stay under Section 18.2(b)(i), and (5) the Settlement Administrator determines that the Settlement Class Member has demonstrated that he or she would face exceptional and unusual hardship from waiting to exercise his or her tort-system rights until the stay under Section 18.2(b)(i) would otherwise expire, and that such hardship requires an early expiration of the stay as to that Settlement Class Member. The Settlement Administrator's determination whether the Settlement Class Member would face exceptional and unusual hardship requiring early expiration of the stay under Section 18.2(b)(iv)(5) shall be final and non-appealable. The grant by the Settlement Administrator of an Exceptional Hardship Exception shall only affect the timing of the expiration of the stay under Section 18.2(b)(i) and tolling under Section 18.2(b)(ii) as to that Settlement Class Member, and the Settlement Class Member's exercise of tort-system rights remains subject to the terms and conditions set forth in Section 7.13, Section 7.16, and Article XIII.

(v)   (iv) For the avoidance of doubt, any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of the Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or the Preliminary Approval Order.

(vi)   (v) Settlement Class Members do not admit that, by entering into the Settlement Agreement, they have waived any applicable tolling protections available as a matter of law or equity. Nothing in the Settlement Agreement will constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the Settlement Class, nor does it constitute a waiver of legal positions regarding tolling.

## ARTICLE XIX
## Objections

Section 19.1   Objections.

(a)   Provided a Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 4.2, the Settlement Class Member may present written objections, if any, explaining why he or she believes the Settlement Agreement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect of the Settlement Agreement must file with the Court, or as the Court otherwise may direct, a written statement of objection(s). The written statement of objection(s) must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention. That written statement also will contain the Settlement Class Member's printed name, address, telephone number, written evidence establishing that the objector is a Settlement Class Member, and any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection. A written objection must contain the dated Personal Signature of the Settlement Class Member making the objection, in addition to any filing requirements of the Court

Section 21.3    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Court will dismiss with prejudice all Released Claims pending in the Court, and any and all Settlement Class Member Parties with Released Claims pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, will dismiss with prejudice the Released Claims, including any related appeals.

Section 21.4    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action with respect to any and all Released Claims.

Section 21.5    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Settlement Class Member Parties, and no Settlement Class Member Parties will recover, directly or indirectly, any sums for Released Claims other than those received under the terms of the Settlement Agreement, if any.

Section 21.6    From and after entry of the Preliminary Approval Order, for the consideration provided for herein and by operation of the Preliminary Approval Order, the Parties agree that no Settlement Class Member Party may file or prosecute any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties, and any such filings will be stayed, except to the extent and at the time following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)) such filing or prosecution is permitted pursuant to the terms and conditions set forth in Section 7.13, Section 7.16, Article XIII, and Section 18.2(b)(i), or until the Settlement Agreement is terminated, as described in Section 18.2(b)(iii).   The provisions of this Section 21.6 shall be superseded in connection with the Court's decision regarding final approval of the Settlement Agreement and final certification of the proposed Settlement Class and Subclasses.

Section 21.7    From and after entry of the Final Order and Judgment, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action against any Monsanto Party or Related Party with respect to any and all Roundup Claims, including any Roundup Lawsuit or Related Party Lawsuit, except at the time and to the extent following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)) such actions are permitted pursuant to the terms and conditions set forth in Section 7.13, Section 7.16, Article XIII, and Section 18.2(b)(i).

Section 21.8    The Parties agree that each and every Settlement Class Member Party will be permanently barred and enjoined from acting in any way contrary to or inconsistent with the agreement set forth in Section 12.3 regarding the evidentiary use of the Science Panel Determination or the agreement on the Science Panel Stipulation, or otherwise

precluded by the Settlement Agreement, in any Roundup Lawsuit or Related Party Lawsuit or with respect to any Roundup Claims.

Section 21.9   From and after the Effective Date, if any Settlement Class Member Party, in violation of Section 17.4, commences, files, initiates, or institutes any new action or other proceeding for any Released Claims, or continues to prosecute any pending Released Claims, or challenges the validity of the Releases, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such action or other proceeding will be dismissed with prejudice and at such Settlement Class Member Party's cost; provided, however, before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice. Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article XXI.

Section 21.10  From and after entry of the Preliminary Approval Order, until the Settlement Agreement is terminated, if any Settlement Class Member Party, in violation of Section 17.4, commences, files, initiates, institutes, prosecutes, and/or maintains any judicial, arbitral, or regulatory action against any Monsanto Party or Related Party with respect to any and all Roundup Claims, including any Roundup Lawsuit or Related Party Lawsuit, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, except at the time and to the extent following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)) such actions are permitted pursuant to the terms and conditions set forth in Section 7.13, Section 7.16, Article XIII, and Section 18.2(b)(i), such action or other proceeding will be dismissed at such Settlement Class Member Party's cost; provided, however, before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article XXI.

## ARTICLE XXII
## Communications to the Public

Section 22.1   The form, content, and timing of any public statement announcing the filing of the Settlement Agreement will be subject to mutual agreement by Class Counsel and Counsel for the Defendant.  The Parties and their counsel agree not to make any public statements, including statements to the media, that are inconsistent with the Settlement Agreement.  Any communications to the public or the media made by or on behalf of the

(c)     Class Counsel may not terminate and render null and void the Settlement Agreement on the basis of the attorneys' fees award ordered, or modified, by the Court or any appellate court(s), as set forth in Article XXV.

Section 23.2   Post-Termination Actions.

(a)     In the event the Settlement Agreement is terminated or becomes null and void, the Settlement Agreement will not be offered into evidence or used in this or in any other action in the Court, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class.  In addition, in such event, the Settlement Agreement and all negotiations, proceedings, documents prepared and statements made in connection with the Settlement Agreement will be without prejudice to all Parties and will not be admissible into evidence and will not be deemed or construed to be an admission or concession by any of the Parties of any fact, matter, or proposition of law and will not be used in any manner for any purpose, and all Parties will stand in the same position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

(b)     In the event the Settlement Agreement is terminated or becomes null and void, the Parties will jointly move the Court to vacate the Preliminary Approval Order and any orders approving the Settlement Agreement or certifying the Settlement Class or, if the Settlement Agreement is terminated before notice has been given, any other orders directing that notice be given to the Settlement Class.

(c)     If the Settlement Agreement is terminated or becomes null and void after notice has been given, the Parties will provide Court-approved notice of termination to the Settlement Class.  If a Party terminates the Settlement Agreement in accordance with Section 4.5 or Section 23.1, that Party will pay the cost of notice of termination.

(d)     In the event the Settlement Agreement is terminated or becomes null and void, any unexpended funds in the Settlement Fund will revert to the Defendant within 10 days, Defendant will cease to have any financial obligations under the Settlement Agreement, all data provided by the Defendant, Class Counsel and/or Settlement Class Members shall be returned or destroyed, and unexpended payments made to Class Counsel for Settlement Class Notice will be returned to the Defendant.

Section 23.3   Effect of Termination.  In the event the Settlement Agreement is terminated or becomes null and void, there shall be no liability or obligation on the part of any of the Parties, except the provisions of Section 3.5,  Section 7.3(d),  Section 8.4(f)(ii), Section 11.6, Section 12.6, Section 12.7(a) (but only with respect to the indemnification of the Science Panel members and their authorized contractors), Section 14.1(d), Section 14.2(d), Section 14.3(d),  Section 14.4(e),  Section 14.5(c),  Section 14.8,  Section 16.1,  Section 16.3, Section 23.2,  this  Section 23.3,  Article XXIV,  Article XXVI,  Section 30.1–Section 30.2, Section 30.5–Section 30.10,  Section 30.14–Section 30.19,  Section 30.21–Section 30.22,  and Part 4(c) of Exhibit 5 shall survive any such termination of the Settlement Agreement or it

under, or to enforce, the Settlement Agreement. Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings arising from, resulting from, in any way relating to or in connection with its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Monsanto Parties or the Related Parties. This Section 26.2 shall not apply to disputes between the Defendant and their insurers, as to which the Defendant reserves all rights. This Section 26.2 does not apply to the Parties' agreement regarding the evidentiary use of the Science Panel Determination or the Science Panel Stipulation as set forth in Section 12.3. In the event this Section 26.2 conflicts with Section 12.3, Section 12.3 shall control.

## ARTICLE XXVII
## Representations and Warranties

Section 27.1  Authority.  Class Counsel represent and warrant as of the Settlement Date and April 7, 2021 that they have authority to enter into the Settlement Agreement on behalf of the Class Representatives and Subclass Representatives.

Section 27.2  Class Representatives and Subclass Representatives.  Each of the Class Representatives and Subclass Representatives, through a duly authorized representative, represents and warrants that he or she:  (a) has agreed to serve as a representative of the Settlement Class proposed to be certified herein; (b) is willing, able, and ready to perform all of the duties and obligations as a representative of the Settlement Class; (c) is familiar with the pleadings in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC, or has had the contents of such pleadings described to him or her; (d) is familiar with the terms of the Settlement Agreement, including the Exhibits, or has received a description of the Settlement Agreement, including the Exhibits, from Class Counsel, and has agreed to its terms; (e) has consulted with, and received legal advice from, Class Counsel about the litigation, the Settlement Agreement (including the advisability of entering into the Settlement Agreement, its Releases, its agreement on the evidentiary use of the Science Panel Determination and the legal effects of the Settlement Agreement, its Releases and its agreement on the evidentiary use of the Science Panel Determination), and the obligations of a representative of the Settlement Class; (f) has authorized Class Counsel to execute the Settlement Agreement on his or her behalf; and (g) will remain in and not request exclusion from the Settlement Class and will serve as a representative of the Settlement Class until the terms of the Settlement Agreement are effectuated, the Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that such Class Representatives or Subclass Representative cannot represent the Settlement Class.

Section 27.3  Defendant.  The Defendant represents and warrants as of the Settlement Date and April 7, 2021 that:  (a) it has all requisite corporate power and authority to execute, deliver, and perform the Settlement Agreement; (b) the execution, delivery, and performance by the Defendant of the Settlement Agreement has been duly authorized by all necessary corporate action; (c) it has authorized Counsel for the Defendant to execute the Settlement Agreement on its behalf; (d) the Settlement Agreement has been duly and validly

executed and delivered by the Defendant; and (e) the Settlement Agreement constitutes its legal, valid, and binding obligation in accordance with its terms.

Section 27.4   <u>Investigation and Future Events</u>.   The Parties and their counsel represent and warrant that they have each performed an independent investigation of the allegations of fact and law made in connection with the Class Action Complaint in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC, and may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Settlement Agreement. Nevertheless, the Parties intend to resolve certain of their disputes pursuant to the terms of the Settlement Agreement and thus, in furtherance of their intentions, the Settlement Agreement will remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and the Settlement Agreement will not be subject to rescission or modification by reason of any change or difference in facts or law, except as permitted by its terms.

# ARTICLE XXVIII
## Cooperation

Section 28.1   The Parties will cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by the Settlement Agreement and to implement the Settlement Agreement on the terms and conditions provided herein.

Section 28.2   The Parties agree to take all actions necessary to obtain final approval of the Settlement Agreement and entry of the Final Order and Judgment, including the terms and provisions described in the Settlement Agreement, and, upon final approval and entry of such order, an order dismissing the Class Action Complaint with prejudice as to the Class and Subclass Representatives, the Settlement Class, and each Settlement Class Member.

Section 28.3   The Parties and their counsel agree to support the final approval and implementation of the Settlement Agreement and defend it against objections, appeal, collateral attack or any efforts to hinder or delay its approval and implementation. Neither the Parties nor their counsel, directly or indirectly, will encourage any Person to object to the Settlement Agreement or assist them in doing so.

# ARTICLE XXIX
## Continuing Jurisdiction

Section 29.1   Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Settlement Administrator, the DAGP Administrator, the Lien Administrator, the Claims Administrator, the Settlement Class Notice Agent, the Legal Services Program Counsel, the Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and the Final Order and Judgment, including as set forth in ~~Section 12.3(d)(iii) and Section 12.3(e)(iii)~~<u>Section 12.3(d)(iv) and Section 12.3(e)(iv)</u>. Any disputes or controversies arising from, resulting from, in any way relating to or in connection with the interpretation,

implementation, administration, and enforcement of the Settlement Agreement will be made by motion to the Court, except as otherwise provided in the Settlement Agreement.  In addition, the Parties, each Settlement Class Member, and the Settlement Class Member Parties are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, including any dispute arising from, resulting from, in any way relating to or in connection with the agreement regarding the evidentiary use of the Science Panel Determination, the agreement on the Science Panel Stipulation, and compliance with the requirements contained in ~~Section 12.3(d)(iii)  and  Section 12.3(e)(iii)~~Section 12.3(d)(iv)  and Section 12.3(e)(iv).  The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

Section 29.2  Notwithstanding any contrary law applicable to the underlying Claims, the Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of Missouri, without regard to conflict of law principles.

## ARTICLE XXX
## Additional Provisions

Section 30.1  <u>Class Certification for Settlement Purposes Only</u>.  The Parties agree that any certification of the Settlement Class and Subclasses will be for settlement purposes only.  The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding, and the Monsanto Parties retain full right and ability to contest any such class certification.  Any class certification order entered in connection with the Settlement Agreement will not constitute an admission by the Defendant, or finding or evidence, that the Class and Subclass Representatives' Claims, or the Claims of any other Settlement Class Member, or the Claims of the Settlement Class, are appropriate for class treatment if the Claims were contested in this or any other federal, state, arbitral, or foreign forum.  If the Court enters the proposed form of Preliminary Approval Order, the Final Order and Judgment will provide for vacation of the Preliminary Approval Order and the Final Order and Judgment in the event that the Settlement Agreement does not become effective.

Section 30.2  <u>No Effect</u>.  A favorable Notice of Registration Determination, Accelerated Payment Determination, or Claims Program Determination, a finding that a Settlement Class Member is a DAGP Eligible Settlement Class Member, participation by a Settlement Class Member in any research funded by the Research Funding Program, or any successful challenge, mediation, or appeal by a Settlement Class Member or Class Counsel to any of these decisions, shall not bind the Monsanto Parties or Related Parties regarding a Settlement Class Member's exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, and shall not be used as evidence against the Monsanto Parties or the Related Parties in any action or proceeding, regardless of whether the Monsanto Parties have participated in any of the foregoing determinations or any challenge, mediation, or appeal of those determinations.  The Monsanto Parties do not waive

or concede any position or arguments they have for or against, and retain full right and ability to contest, a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, including any Roundup Lawsuit, Related Party Lawsuit, and/or with respect to any and all Roundup Claims.  The Monsanto Parties and the Related Parties will not be precluded in any action or proceeding from contesting a Settlement Class Member's claim of exposure to Roundup Products or whether an individual is a Settlement Class Member, even if the Settlement Class Member receives a favorable Notice of Registration Determination, Accelerated Payment Determination, or Claims Program Determination, a finding that the Settlement Class Member is a DAGP Eligible Settlement Class Member, the Settlement Class Member participates in any research funded by the Research Funding Program, or the Settlement Class Member or Class Counsel successfully challenges, mediates, or appeals any of these decisions.  The Monsanto Parties are not obligated to participate in any of these determinations, or any appeal, mediation, or challenge of these determinations, in order to preserve the rights set forth in this Section 30.2.

Section 30.3   No Assignment of Claims.  Neither the Settlement Class nor any Class Representative or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Class Action Complaint, or Roundup Claims (in the case of Roundup Claims, until the stay pursuant to Section 18.2(b)(i) expires).  Any such assignment, or attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Class Action Complaint, or Roundup Claims (in the case of Roundup Claims, until the stay pursuant to Section 18.2(b)(i) expires) will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

Section 30.4   Individual Counsel.

(a)   A Settlement Class Member may retain counsel to assist with his or her applications for the Diagnostic Accessibility Grant Program and for Compensation Awards.  Counsel acting on his or her client's behalf may submit all Claim Forms, proof, correspondence, or other documents to the Settlement Administrator, the DAGP Administrator, the Lien Administrator, or the Claims Administrator on behalf of that Settlement Class Member; provided, however, that counsel individually representing a Settlement Class Member may not sign on behalf of that Settlement Class Member:  (i) registration; (ii) an Opt Out request; (iii) a revocation of an Opt Out; (iv) an objection, as set forth in Section 19.1; (v) a DAGP Application; (vi) a Claim Form; or (vii) an Appeals Form.

(b)   Where a Settlement Class Member indicates in writing to the Settlement Administrator, the DAGP Administrator, the Lien Administrator, or the Claims Administrator, that he or she is individually represented by counsel, the Settlement Administrator, the DAGP Administrator, the Lien Administrator, or the Claims Administrator, will copy the counsel individually representing a Settlement Class Member on any written communications with the Settlement Class Member.  Any communications, whether written or oral, by the Settlement Administrator, the DAGP Administrator, the Lien Administrator, or the Claims Administrator, with counsel individually representing a Settlement Class Member will be

intended third-party beneficiaries entitled to enforce the terms of the Releases and Covenants Not to Sue set forth in Article XVII and the evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation set forth in Article XII.  All Settlement Class Member Parties who are not Settlement Class Members are intended third-party beneficiaries to the extent necessary to enforce the evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation as set forth in Article XII.  The Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees are intended third-party beneficiaries to the extent necessary to enforce the Releases set forth in Section 17.1(c).  The Science Panel members and their authorized contractors are intended third-party beneficiaries to the extent necessary to enforce the Releases set forth in Section 17.1(f).  No provision in the Settlement Agreement is intended to create any third-party beneficiary to the Settlement Agreement other than the Monsanto Parties and the Related Parties; the Settlement Class Member Parties to the extent necessary to enforce evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation as set forth in Article XII; the Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees to the extent necessary to enforce the Releases set forth in Section 17.1(c); and the Science Panel members and their authorized contractors to the extent necessary to enforce the Releases set forth in Section 17.1(f).  Nothing expressed or implied in the Settlement Agreement is intended to or will be construed to confer any right or remedy under or by reason of the Settlement Agreement upon any Person other than Class and Subclass Representatives; the Settlement Class Members; Class Counsel; the Defendant; the Monsanto Parties; the Related Parties; the Settlement Class Member Parties (but only to the extent necessary to enforce the evidentiary use of the Science Panel Determination and the agreement on the Science Panel Stipulation as set forth in Article XII); the Settlement Administrator, DAGP Administrator, Claims Administrator, and their respective Affiliates, officers, directors, and employees (but only to the extent necessary to enforce the Releases set forth in Section 17.1(c)); the Science Panel members and their authorized contractors (but only to the extent necessary to enforce the Releases set forth in Section 17.1(f)); and Counsel for the Defendant.

Section 30.11  Certain Actions.

(a)  Notwithstanding anything to the contrary in the Settlement Agreement, all provisions of the Settlement Agreement and the Final Order and Judgment shall not apply to the continued prosecution of the following actions (and only such specific actions), but only so long as there is no expansion of the type of relief currently sought: *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson County, MO Cir. Ct.), including any amendments to these actions to which Monsanto consents.

(b)  Certain Actions Not Subject to Particular Provisions. Notwithstanding anything else to the contrary in the Settlement Agreement, the stay under Section 18.2(b)(i) and the associated provisions of Section 17.4(b), Section 21.6, Section 21.7 and Section 21.10 regarding compliance with that stay shall not apply to the continued prosecution of the following actions (and only such specific actions), but only so long as there is no expansion of the type of relief currently sought: *Gilmore v. Monsanto Company*, No.

1:20-cv-01085-UNA (D. Del.); *Ezcurra v. Monsanto Company*, No. 20-13341 (11th Cir.); *Tomlinson v. Monsanto Co.*, No. 1916-CV22788 (Jackson County, MO Sup. Ct.); *Weeks v. Home Depot USA, Inc.*, No. 21-55027 (9th Cir.); *Taylor v. Costco Wholesale Corp.*, No. 2:20-cv-00655-KJM-DMC (E.D. Cal.); *Williams v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356-JGB-KK (C.D. Cal.); *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139-XXXX-MB (Palm Beach Cty. Fla. Cir. Ct.); *Shelly v. Target Corp.*, 50-2019-CC-010718-XXXX-MB (Palm Beach Cty. Fla. Cir. Ct.); *Biddle v. Lowe's Home Centers LLC*, No. 50-2019-CC-011405-XXXX-MB (Palm Beach Cty. Fla. Cir. Ct.); *Morley v. Ace Hardware Corp.*, No. CONO19010648 (Broward Cty. Fla. Cir. Ct); and *Jones v. Monsanto Company*, No. 4:19-cv-00102-BP (W.D. Mo.), including any amendments to these actions to which Monsanto consents.

Section 30.12 <u>Extensions of Time</u>.   Class Counsel and Counsel for the Defendant may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of the Settlement Agreement.

Section 30.13 <u>Extensions to Commencement of Funded Class Benefits</u>.   The Settlement Administrator shall have the authority to delay the date on which any of the Funded Class Benefits are to commence if it determines in its sole discretion that a delay is reasonable and appropriate for the orderly implementation of the Funded Class Benefit at issue, provided that any delay in excess of 30 days will be subject to Court approval.   The Settlement Administrator has no authority under the Settlement Agreement to extend the dates for the conclusion of any of the Funded Class Benefits.

Section 30.14 <u>Execution in Counterparts</u>.   The Settlement Agreement may be executed in counterparts, and a PDF or other electronic image of an actual signature will be deemed an original signature for purposes of the Settlement Agreement.

Section 30.15 <u>Good Faith Implementation</u>.   Class Counsel and Counsel for the Defendant will undertake to implement the terms of the Settlement Agreement in good faith. Before filing any motion or petition in the Court raising a dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, Class Counsel and Counsel for the Defendant will consult with each other in good faith and certify to the Court that they have conferred in good faith.

Section 30.16 <u>Force Majeure</u>.   The Parties will be excused from any failure to perform timely any obligation hereunder to the extent such failure is caused by war, acts of public enemies or terrorists, strikes or other labor disturbances, fires, floods, acts of God, or any causes of the like or different kind beyond the reasonable control of the Parties.

Section 30.17 <u>Waiver</u>.   The waiver by any Party of any breach of the Settlement Agreement by another Party will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

Section 30.18 <u>Tax Consequences</u>.   No opinion regarding the tax consequences of the Settlement Agreement to any individual Settlement Class Member Party is being given or will be given by the Defendant, the Monsanto Parties, the Related Parties, Counsel for the

Section 30.20   Materials to Be Made Available on the Settlement Website.   Class Counsel will make the following materials available on the Settlement Website that may be used by Settlement Class Members who sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or Related Parties following the expiration of the stay:   (a) transcripts of trials in any Roundup Lawsuits, (b) key pretrial rulings from any Roundup Lawsuits that have been tried, (c) all decisions from appellate courts in any Roundup Lawsuits, (d) trial preparation materials that have been made publicly available by the Plaintiffs' Executive Committee for MDL No. 2741 or by any other firms representing plaintiffs involved in the litigation of Roundup Lawsuits, and (e) transcripts of Authorized Depositions.

Section 30.21   ~~Section 30.20~~  Waiver of Requirements.   The Parties recognize that there may be further pleadings, discovery responses, documents, testimony, or other matters or materials owed by the Parties to each other pursuant to existing pleading requirements, discovery requests, pretrial rules, procedures, orders, decisions, or otherwise.  As of the Settlement Date, each Party expressly waives any right to receive, inspect, or hear such pleadings, discovery, testimony, or other matters or materials during the pendency of the settlement proceedings contemplated by the Settlement Agreement and subject to further order of the Court.

Section 30.22   ~~Section 30.21~~   Party Burden.   Unless explicitly provided otherwise, whenever a showing is required to be made in the Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

[*Remainder of page intentionally left blank.*]

Agreed to as of this 3rd7th day of FebruaryApril, 2021.

**COUNSEL FOR THE DEFENDANT:**

By: _____
    Jeffrey M. Wintner
    Carrie M. Reilly
    WACHTELL, LIPTON, ROSEN &
    KATZ

By: _____
    William Hoffman
    David J. Weiner
    ARNOLD & PORTER KAYE
    SCHOLER LLP

**CLASS COUNSEL:**

By: _____
    Elizabeth J. Cabraser
    Robert L. Lieff
    Steven E. Fineman
    LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP

By: _____
    Samuel Issacharoff

By: _____
    James R. Dugan, II
    DUGAN LAW FIRM, APLC

**CLASS/SUBCLASS 1 COUNSEL:**

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____
    William M. Audet
    AUDET & PARTNERS, LLP

By: _____
    TerriAnne Benedetto
    DUGAN LAW FIRM, APLC

## INDEX OF DEFINED TERMS

Accelerated Payment Award .............................................................................. Section 6.2(a)(i)
Accelerated Payment Claim Form ...................................................................... Section 7.1(b)
Accelerated Payment Claim Package ................................................................. Section 7.2
Accelerated Payment Determination .................................................................. Section 6.2(a)(i)(2)
Accelerated Payment Monthly Statement .......................................................... Section 3.6(a)(iii)(2)
Additional Permitted Fund Uses ........................................................................ Section 3.3(a)
Affiliate ............................................................................................................... Section 2.1
Appeals Form ..................................................................................................... Section 2.1
Approved Registration Number .......................................................................... Section 5.3(d)
Authorized Deposition ........................................................................................ Section 12.6(d)
Bradford Hill Guidelines .................................................................................... Section 2.1
Causation Not Shown Finding ............................................................................ Section 12.3(b)
Causation Shown Finding ................................................................................... Section 12.3(b)
Claim Form ......................................................................................................... Section 2.1
Claim Package .................................................................................................... Section 2.1
Claims ................................................................................................................. Section 2.1
Claims Administrator .......................................................................................... Section 2.1
Claims Administrator Costs ................................................................................ Section 14.2(c)
Claims Program .................................................................................................. Section 2.1
Claims Program Award ....................................................................................... Section 6.2(a)(ii)
Claims Program Claim Form .............................................................................. Section 7.1(b)
Claims Program Claim Package ......................................................................... Section 7.2
Claims Program Determination ........................................................................... Section 6.2(a)(ii)(4)
Class Action Complaint ...................................................................................... Section 2.1
Class Counsel ..................................................................................................... Section 2.1
Class Counsel Attorneys' Fees ........................................................................... Section 25.1
Class Representatives ........................................................................................ Section 2.1
CMS .................................................................................................................... Section 2.1
Compensation Award .......................................................................................... Section 2.1
Compensation Award Guidelines ....................................................................... Section 2.1
Compensation Fund ............................................................................................ Section 2.1
Compensation Fund Continuation Terms ........................................................... Section 13.2(a)
Compensation Range .......................................................................................... Exhibit 5
Compensatory Damages ..................................................................................... Section 2.1
Confidential Information ..................................................................................... Section 24.1
Counsel for the Defendant .................................................................................. Section 2.1
Court .................................................................................................................... Section 2.1
Covenants Not to Sue ......................................................................................... Section 2.1
DAGP Administrator ........................................................................................... Section 2.1
DAGP Administrator Costs ................................................................................. Section 14.3(c)
DAGP Application ............................................................................................... Section 8.4
DAGP Eligible Settlement Class Member .......................................................... Section 8.4(a)
DAGP Grant ........................................................................................................ Section 8.3(a)
DAGP Grantee .................................................................................................... Section 8.3(a)

*[Signature Page to Settlement Agreement]*

Daubert/Frye Challenge................................................Section 12.5(b)
Defendant................................................Section 2.1
Deficiency................................................Section 2.1
Derivative Claimants................................................Section 2.1
Derivative Claims................................................Section 2.1
Diagnosing Physician................................................Exhibit 4
Diagnostic Accessibility Grant Program................................................Section 2.1
ECHA................................................Section 2.1
Effective Date................................................Section 2.1
EFSA................................................Section 2.1
Eligibility Criteria................................................Section 6.1(a)
End Payment................................................Section 13.3(b)(i)
EPA................................................Section 2.1
Escrow Agent................................................Section 2.1
Escrow Agreement................................................Section 2.1
Exceptional Hardship Exception................................................Section 18.2(b)(iv)
Exhibit................................................Section 2.1
Extraordinary Circumstances................................................Section 6.2(a)(ii)(1)
Fairness Hearing................................................Section 2.1
Final Order and Judgment................................................Section 2.1
Form of Release................................................Section 2.1
FQHC................................................Section 8.4(d)(i)
Funded Class Benefits................................................Section 3.2(a)
General Causation................................................Section 2.1
Governmental Authority................................................Section 2.1
Governmental Payor................................................Section 2.1
Grantee Contract................................................Section 8.3(e)(i)
Group A Medical Conditions................................................Exhibit 5
Group B Medical Conditions................................................Exhibit 5
HIPAA................................................Section 2.1
IARC................................................Section 2.1
IARC Monograph 112................................................Section 2.1
Initial Settlement Period................................................Section 2.1
IRC................................................Section 2.1
JMPR................................................Section 2.1
June Settlement Proposal................................................Section 2.1
Lawsuit................................................Section 2.1
Lead Deposition Counsel................................................Section 12.6(d)(ii)
Legal Services Program................................................Section 11.1
Legal Services Program Counsel................................................Section 11.1
Lien................................................Section 2.1
Lien Administrator................................................Section 2.1
Lien Administrator Costs................................................Section 14.4(c)
List of Service Areas................................................Section 8.1
Litigation Consulting Group................................................Section 14.5(a)(iii)
Medicaid Program................................................Section 2.1

| Tier | Tier Criteria |
|------|---------------|
| Tier Two | If the Settlement Class Member is not in Tier One, and meets any of the following criteria, the Settlement Class Member is in Tier Two:<br><br>(i) At least 60 and not more than 80 years of age at the time of Qualifying Diagnosis.<br><br>(ii) Medical records confirm the existence of one or more Group A Medical Conditions.<br><br>(iii) Remission for five or more years.<br><br>(iv) Proof of exposure to Roundup Products,[7] in accordance with Part 4 of this Exhibit 5, with frequency and duration of exposure between 12 and 36 months.<br><br>If the Settlement Class Member does not fit within Tier One or Tier Two, move to Tier Three. |

---

[7] All references in the Settlement Agreement and this Exhibit 5 to "exposure to Roundup Products" mean exposure to Roundup Products through the application of Roundup Products. Exposure "through the application of Roundup Products" includes exposure through application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

Exhibit 5                                                                                                    Page 5

(i) The Claims Program shall determine the amount of the Claims Program Award for each Settlement Class Member within the Compensation Range for the Tier that the Settlement Class Member's claim may fall into. The Claims Program has the discretion to choose an amount for the Claims Program Award within the given Compensation Range for that Tier. In choosing the amount of a Claims Program Award within the bounds of the Compensation Ranges of any Tier, and ensuring equitable treatment of similarly situated claimants, the Claims Program should consider factors such as whether the claimant is a Settlement Class Member or a Representative Claimant, and the individual circumstances of the Settlement Class Member, including but not limited to:

(1) The existence of risk factors for the development of NHL, including the Group A Medical Conditions, Group B Medical Conditions, occupation, and/or any other risk factors or exposures associated with the development of NHL;

(2) The age at the time of Qualifying Diagnosis and at the time the Claims Program Award will be paid;

(3) The type and severity of the NHL;

(4) The extent of the demonstrated exposure to Roundup Products; and

(5) The sufficiency of the Settlement Fund to pay anticipated future Claims Program Awards.

(d) The Claims Program, Settlement Administrator, or the Claims Administrator may deviate from the Tier Guidelines when making Tier Determinations only in exceptional cases. The Claims Program, Settlement Administrator, and the Claims Administrator may not deviate from the Compensation Range for a given Tier in choosing a Claims Program Award, except to the extent that the Claims Program is permitted to do so pursuant to Section 6.2(a)(ii)(1).

(e) No Settlement Class Member may receive any Claims Program Award totaling more than ~~U.S. $200,000~~the high pay amount of the Tier applicable to the Settlement Class Member, unless there is a showing of Extraordinary Circumstances pursuant to the terms of Section 6.2(a)(ii)(1).

**Part 4. Proof of Roundup Products Exposure.** To be eligible to receive a Compensation Award the Settlement Class Member must include proof demonstrating the alleged circumstances and extent of the Settlement Class Member's exposure to Roundup Products in the Accelerated Payment Claim Package or Claims Program Claim Package, as set forth in Section 7.2 (or, if the Compensation Fund continues as provided in Section 13.4(c), as provided in the Compensation Fund Continuation Terms). The form of such proof will depend on whether the claimed exposure to Roundup Products is through the application of Roundup Products in a professional capacity (agricultural or industrial turf, and ornamental use) or in

Exhibit 5                                                                                      Page 7

## EXHIBIT 6: FORM OF RELEASE

## CONFIDENTIAL RELEASE OF ALL CLAIMS

**Recitals**

1.      By signing this Confidential Release Of All Claims ("Release"), I, _____, the undersigned Releasing Party,* represent that I am a Settlement Class Member as defined in the Settlement Agreement dated as of _____, 2021 (the "Agreement") and filed with the Court in *Robert Ramirez, et al. v. Monsanto Company*, Case No. 3:16-md-02741-VC & 3:19-cv-02224-VC, or an authorized Representative Claimant.  I understand that the terms of the Agreement govern the resolution of my Claim.  I acknowledge that I have been given the opportunity to review the Agreement prior to my execution of this Release and the opportunity to review it with my Counsel, if I so chose.  A copy of the Agreement is available at [Settlement Website URL].

2.      I further understand that, as a condition precedent to accepting a Compensation Award from the Settlement Program, I am required to submit, among other things, a release of any and all past, present or future Claims for injury, damages and/or losses of any kind, or wrongful death that I (and any other Releasing Party, below) have, or may have in the future, against the Defendant and all other Released Persons arising from, related to, or in any way allegedly caused by in whole or in part, or connected with the Product User's use of or exposure to any Roundup Products and their Non-Hodgkin's Lymphoma ("NHL").†

3.      Accordingly, in consideration for the amount being paid by the Defendant, I hereby acknowledge the terms and consideration referenced herein as adequate and in return

---

* All capitalized terms used in this Release and not defined herein shall have the meanings assigned to them in the Agreement.

† "Roundup" or "Roundup Product" or "Roundup Products" means any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by the Defendant (or any of its direct or indirect subsidiaries), or by any Person to the extent such product contains glyphosate exclusively supplied by the Defendant (or any of its direct or indirect subsidiaries), under any name or brand: (a) prior to or as of the Settlement Date; or (b) after the Settlement Date if the product has a chemical formulation identical to a Roundup Product developed, manufactured, distributed, sold, and/or marketed prior to or as of the Settlement Date. Exhibit 1 to the Agreement contains a list of names and brands of Roundup Products of which the Defendant is currently aware following reasonable inquiry.  A product not on the list but meeting the foregoing definition shall be a Roundup Product under the Settlement Agreement and this Release.

Exhibit 6                                                                                                          Page 1

**7.**      The term "Releasing Party" or "Releasing Parties" means (i) me, (ii) any current spouse, or former spouses who were spouses at any time from the date of the alleged Roundup-related injury, asserting an unfiled Claim of any kind by reason of their relationship to me, and (iii) any and all Persons who independently, derivatively or otherwise, by reason of their relationship with or to me, have sued or asserted a Claim against, or could have sued or asserted a Claim against, Defendant or any other Released Person, including but not limited to, any and all of my spouses, domestic partners, heirs, beneficiaries, next of kin, executors, administrators, successors, and assigns. Without in any manner limiting the foregoing, this Release is expressly intended to include and does include any and all Claims which any spouse, domestic partner, heir, beneficiary, next of kin, agent, estate, executor, administrator, personal representative, successor and assign, or any person or entity otherwise entitled to a Claim, may now or may hereafter have or assert against Defendant and/or the Released Persons, whether known or unknown, and any and all other claims, whether known or unknown, arising out of or by reason of or in any manner connected with the Product User's alleged use of or exposure to Roundup Products and the alleged injuries.

**8.**      In return for good and valuable consideration, the sufficiency of which is acknowledged, I do hereby on my own behalf and on behalf of each other Releasing Party and with regard to claims arising from the injuries that resulted in my Compensation Award, knowingly and voluntarily **RELEASE, REMISE, ACQUIT and FOREVER DISCHARGE, and AGREE and COVENANT NOT TO SUE,** Defendant and the Released Persons and each of them from:

     **a.**      any and all past, present or future rights, remedies, actions, claims, counterclaims, demands, causes of action, suits at law or in equity, verdicts, suits of judgments, judgments and/or Liens, including any of the foregoing for wrongful death, survival actions of any kind, personal injury and/or bodily injury, sickness, medical complications, disease, emotional distress and/or injury, mental or physical pain and/or suffering, emotional and/or mental harm, financial or psychological harm, fear of disease or injury, ~~Non-Hodgkin's lymphoma ("NHL")~~, future NHL, fear of future NHL, cancer, future cancer, fear of future cancer, treatment or surgery, loss of enjoyment of life, loss of society, loss of companionship, loss of income, loss of wages, loss of consortium, past or future medical expenses, medical screening or monitoring, future cost of insured services, past cost of insured services or any other form of injury, and including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, pre-judgment or post-judgment interest, or any other form of damages whatsoever, whether past, present or future, and whether based upon contract, breach of contract, warranty or covenant, breach of warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault,

Exhibit 6          Page 3

misrepresentation, common law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations and/or any other legal (including common law), statutory, equitable or other theory or right of action, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, accrued or not accrued, past, present or future, or now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner that in any way may arise from, relate to, or are in any way connected with (1) the Product User's use of or exposure to any Roundup Products (as defined above) and their NHL, and/or any injury, losses, or damages of any kind ever claimed, or may at any time in the future be claimed, to have been caused, in whole or in part, by any such use of or exposure to Roundup Products and their NHL or from any medical treatments allegedly occurring because of the use of or exposure to any Roundup Products and their NHL; (2) claims relating to the availability of future Medicare-covered expenses, and any claims arising out of such medical treatments, including any private cause of action I or any other Person may have under 42 U.S.C. 1395y(b)(3)(A); and/or (3) claims arising from or related to the Settlement Program and the decisions of the Claims Administrator, Settlement Administrator, Claims Program, Lien Administrator and other administrators of the Settlement Program (collectively subpart (a) are "Claims"), which any Releasing Party may have ever had, may now have, or at any time hereafter may have, against Defendant or any of the Released Persons; and

**b.**     any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued, which are, or may be, in any way connected with the Product User's use of or exposure to any Roundup Products and their NHL, and/or with any injury, losses, or damages ever claimed, or may at any time in the future claim, to have been caused, in whole or in part, by any such use of or exposure to any Roundup Products or from any medical expenses allegedly incurred because of the Product User's use of or exposure to any Roundup Product and their NHL; (collectively subpart (b) are "Liabilities"), which Defendant or any Released Person may have ever had, may now have or at any time hereafter may have to me or any other Releasing Party.

The Claims and Liabilities set forth in Paragraph 8 (a) and (b) are the "Released Claims and Liabilities."  For the avoidance of doubt, the term "Released Claims and Liabilities" does not apply to Claims and Liabilities unless they arise from, result from, in any way relate to or are in connection with a Product User's use of or exposure to any Roundup Product and their NHL.  This Release is irrevocable by me upon my execution as of the date set forth beneath my name and my submission of it to the Claims Administrator and my acceptance and receipt of a Compensation Award.

Exhibit 6                                                                                          Page 4

9.  Without in any manner limiting the foregoing, I (and/or any other Releasing Party), pursuant to the applicable law of my state of residence or any other state's law found to be applicable, by signing this Release and accepting any Compensation Award issued, specifically release and give up any and all rights to and claim of pecuniary loss, injury or damage as those terms are defined in the applicable state's wrongful death statute and as interpreted by the courts of the applicable state, which might accrue to me and/or my estate and others by virtue of the death of any Releasing Party, whether such claims are pursued directly or indirectly or by some person or persons in a representative capacity, if such claims arise in any way from or are in any way connected or related to Releasing Party's use of or exposure to any Roundup Product and their NHL.  It is expressly understood and agreed by Releasing Parties and Defendant and the Released Persons that a substantial reason and consideration of Defendant and the Released Persons in forbearing from any further steps in defending against the Claim and in agreeing to fund the Agreement as set forth in this Release and in the Agreement is the settlement, release and elimination at this time of any and all claims that Releasing Parties or others have now or in the future might have, absent this Release, for the wrongful death of any Releasing Party or Product User  in relation to the use of or exposure to any Roundup Product and NHL.

10. Releasing Parties further understand and agree that under the present state of the law in my state of residence or in any other state found to be applicable that absent this Release and regardless of the entry of any judgment which might result in litigation by Releasing Parties against Defendant or the Released Persons, certain of Releasing Party's relatives, dependents or others might have claims for the death of Releasing Party against some or all Released Persons; and Releasing Parties further understand and agree that by executing this Release and accepting any Compensation Award issued, Releasing Parties acknowledge that they have received fair, just and adequate consideration for any claims for the wrongful death of Releasing Party which may arise in relation to Releasing Party's use of or exposure to any Roundup Product and their NHL.  Releasing Parties further understand and agree that by executing this Release and accepting any Compensation Award issued, Releasing Parties, pursuant to the law of their state of residence or any other state's law found to be applicable, have forever remised, released, acquitted, forever discharged and given up any and all Released Claims and Liabilities that Releasing Parties or others might have against Defendant and the Released Persons for any actual or alleged wrongful death of a Releasing Party arising from or alleged to arise from Releasing Party's use of or exposure to any Roundup Products and NHL.

11. I acknowledge that I (and/or any other Releasing Party) may in the future learn of additional or different facts as they relate to the Released Claims or Liabilities, the Defendant and/or Released Persons' activities, and/or any injury I (and/or any other Releasing Party) have ever claimed, or may at any time in the future claim, was caused, in whole or in part, by the use of or exposure to any Roundup Product and their NHL. I understand and acknowledge the significance and consequences of releasing all of the Released Claims and Liabilities.  To the extent that any law, statute, ordinance, rule,

Exhibit 6                                                                                    Page 5

BENEFICIARIES IN CONNECTION WITH ANY OF THE FACTS, EVENTS AND/OR INCIDENTS, THAT GAVE RISE TO OR ARE IN ANY WAY CONNECTED WITH ANY OF THE RELEASED CLAIMS AND LIABILITIES.

## Attorneys' Fees; Division of Any Compensation Award Payment

15.  I understand that Defendant and the Released Persons are not responsible for any attorneys' fees, costs (including, but not limited to, court costs), ad litem fees, common benefit fees, costs or assessments, or fees and expenses that I or my Counsel have incurred or may at any time incur, including, but not limited to, in connection with the entering into of this Release and having any pending lawsuit dismissed, other than administrative costs as outlined in the Agreement.  I understand that, with respect to any Compensation Award that may be made to me under the Settlement Program, any division of such Compensation Award between me, any current spouse or other person executing this Release, and our respective Counsel (if any) shall be determined by me and such other Person(s), and such division, or any dispute in relation to such division, shall in no way affect the validity of this Release or any stipulation of dismissal with prejudice provided to dismiss my pending lawsuit.  Releasing Party represents and warrants that any legal expenses, bills, costs or contingency fee agreements resulting or arising out of representation of Releasing Party by any attorney in relation to Releasing Party's alleged exposure to Roundup Products and their NHL, other than those for the services of Class Counsel or the Legal Services Program, are Releasing Party's responsibility to pay, and that any Liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of Releasing Party's alleged exposure to or use of Roundup Products will be satisfied solely by Releasing Party except as set forth in the Agreement and approved by the Court.  Releasing Party will indemnify, repay and hold Defendant and the Released Persons harmless from any such claims.

## Covenant Not To Pursue Certain Claims

16.  I hereby agree and covenant that I will never:  (i) take any legal, or other action to initiate, pursue or maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any of the Released Claims and Liabilities of or against Defendant or any Released Person, (ii) institute any new legal action against any Defendant or any Released Person relating to any injury I (and/or any other Releasing Party) have ever claimed, could have claimed or may at any time hereafter claim, were caused in whole or in part by the use of or exposure to any Roundup Product and their NHL, whether that use or exposure has occurred in the past or occurs in the future, and/or (iii) attempt to execute or collect on, or otherwise enforce, any judgment that may be entered against Defendant or any Released Person in any legal action described in clause (ii) or maintain my pending legal action against Defendant or other Released Persons relating to alleged injuries from exposure to or use of Roundup Products and their NHL after accepting and receiving any Compensation Award issued.  I further agree and covenant that I will not take any legal or other action to initiate, pursue or maintain a claim against the Released Persons, Claims Administrator, Settlement Administrator, Claims Program, Lien Administrator, nor any employee, agent or

Exhibit 6                                                                                     Page 7

facilitate the satisfaction by or on behalf of Defendant of any reporting obligations under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA"), the release from any MMSEA reporting obligations, or the reporting requirements of any other Governmental Authority.  I acknowledge and agree that the confidentiality of this Release or my application for a Compensation Award does not bar Defendant from reporting information required to be disclosed under Section 111 of the MMSEA or applicable regulations.

24.     I expressly warrant and represent that this Section is a material provision of this Release and the Agreement.  If it is determined that I have provided false or misleading information with respect to any payments made by Medicare or other Governmental Payor for medical treatment, I shall forfeit to Defendant the settlement funds in the amount of any unpaid Liens and fines, penalties, attorneys' fees, or other costs and expenses assessed by Medicare (or its agent) or the U.S. federal government (or its agent) under 42 U.S.C. § 1395y, if any.  I agree that any forfeited funds may be applied towards payment of any of my outstanding liens.

**Nature of Settlement Award Payments**

25.     I also hereby state and acknowledge, as set forth in the Agreement and agreed to by Defendant and the Released Persons, that all Compensation Awards paid pursuant to the Settlement Program constitute damages on account of personal injuries or physical injuries or physical sickness within the meaning of Section 104 of the Internal Revenue Code of 1986, as amended, arising from the physical injuries alleged to have resulted from the  use of or exposure to any Roundup Product and their NHL, and no portion of the proceeds paid under the Settlement Program represents punitive or exemplary damages, nor prejudgment or post-judgment interest, nor damages arising from non-physical injuries.  I hereby waive and dismiss with prejudice any and all present claims for punitive or exemplary damages and waive any and all future claims for punitive or exemplary damages.  No warranty or representation of the tax consequences, if any, is made by Defendant or the Released Persons.

**Indemnification for Released Claims and Liabilities; Contribution and Indemnity Claims Extinguished**

26.     I hereby agree, jointly and severally with any other Persons executing this Release, to INDEMNIFY and HOLD HARMLESS Defendant and each Released Person from and against the following:  (i) any and all Claims that may be asserted, made or maintained at any time by, on behalf of, or for the benefit of, any Releasing Party, or someone claiming by, through or under any Releasing Party, against Defendant or any Released Person, with respect to any of the aforementioned Released Claims and Liabilities; (ii) any and all damages, losses, costs (including, but not limited to, court costs), expenses (including, but not limited to, legal fees and expenses) and/or Liabilities incurred or suffered by, or imposed on, Defendant or any Released Person in connection with, arising out of or resulting from any Claim described in clause (i) of this sentence (including, but not limited to, any amount paid or to be paid in satisfaction of any such Claim) and/or, without limitation of the foregoing, any breach by me, my

Exhibit 6                                                                                        Page 10

manner that the execution or collection of the judgment or any portion thereof would create in the judgment debtor any right to recover from Defendant or any of the Released Persons any sums based on claims for contribution, indemnity, and/or subrogation.

**~~Non-Disparagement~~**

~~27. I will not directly or indirectly make any negative or disparaging statements against Defendant or the Released Persons maligning, ridiculing, defaming, or otherwise speaking ill of them, their products or their business affairs, practices, policies, standards, or reputation, provided that nothing in the Agreement or this Release shall be deemed to interfere with (a) any Party's communications with family members and Counsel or (b) any Party's obligation to report transactions with appropriate governmental, taxing and/or registering agencies.~~

**Acknowledgement of Comprehension**

**27.** **~~28.~~** IN CONSIDERATION FOR THE RELEASES, UNDERSTANDINGS, WARRANTIES, AND REPRESENTATIONS MADE BY THE RELEASING PARTY IN THIS RELEASE AND AFTER EXECUTION AND DELIVERY OF THIS RELEASE BY THE RELEASING PARTY AND RECEIPT OF ANY REQUIRED COURT APPROVALS, MONSANTO COMPANY SHALL PAY THE COMPENSATION AWARD, AS DEFINED BELOW, AND OTHER GOOD AND VALUABLE CONSIDERATION TO THE RELEASING PARTY, WITH THE FUNDS TO BE DISBURSED BY THE CLAIMS ADMINISTRATOR FROM THE SETTLEMENT FUND, PURSUANT TO THE TERMS OF THE AGREEMENT, INCLUDING, BUT NOT LIMITED TO, THE RELEASING PARTY'S ELIGIBILITY TO RECEIVE THE COMPENSATION AWARD, AFTER EXECUTION OF THIS RELEASE. THE PAYMENT OF THE COMPENSATION AWARD IS FOR SETTLEMENT OF THE RELEASED CLAIMS AND INCLUDES, BUT IS NOT LIMITED TO, ANY COURT COSTS, EXPENSES, ATTORNEYS' FEES AND COMMON BENEFIT ASSESSMENTS, INCURRED BY THE RELEASING PARTY. THE EXECUTION AND RETURN OF THIS RELEASE IS A **CONDITION PRECEDENT** TO THE PAYMENT OF THE COMPENSATION AWARD TO THE SETTLEMENT CLASS MEMBER.

**28.** **~~29.~~** I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, DEFENDANT OR ANY OTHER PERSON. I UNDERSTAND THE TERMS OF THE AGREEMENT AND HOW THE CLAIMS PROGRAM, CLAIMS ADMINISTRATOR AND/OR SETTLEMENT ADMINISTRATOR, DETERMINED THE AMOUNT OF MY AWARD, ACKNOWLEDGE AND ACCEPT THE NATURE, VALUE AND SUFFICIENCY OF THE CONSIDERATION DESCRIBED IN THIS RELEASE, INCLUDING THE AMOUNT OF A MONETARY AWARD FROM THE SETTLEMENT PROGRAM PURSUANT TO THE AGREEMENT. I ACKNOWLEDGE THAT I HAVE BEEN PROVIDED THE OPPORTUNITY TO REVIEW THE AGREEMENT AND HAVE READ THIS RELEASE, AND I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE FROM, AND ASK QUESTIONS OF, COUNSEL OF MY CHOOSING REGARDING THE TERMS AND LEGAL EFFECT OF THE

Exhibit 6                                                                                                          Page 12

AGREEMENT AND THIS RELEASE AND MY DECISION TO PARTICIPATE IN THE SETTLEMENT PROGRAM FUNDED PURSUANT TO THE AGREEMENT.

29. 30. FURTHER, I ACKNOWLEDGE THAT I HAVE BEEN INFORMED OF ALL THESE MATTERS, AND THAT I HAVE HAD THE OPPORTUNITY TO BE ASSISTED BY COUNSEL, EITHER THROUGH CLASS COUNSEL, THE LEGAL SERVICES PROGRAM IF IT IS IN PLACE AT THE TIME OF THIS RELEASE, OR PRIVATE COUNSEL THAT I MAY RETAIN AT MY OWN EXPENSE. I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME WILL BE PAID SUBJECT TO LIENS AND THE PROVISIONS OF THE AGREEMENT AND THIS RELEASE.

30. 31. I ALSO ACKNOWLEDGE THAT THE SETTLEMENT PROGRAM AND THE AGREEMENT ARE TO RESOLVE THE CLAIMS OF NUMEROUS CLAIMANTS AND THAT THE AWARD TO ME MAY BE FOR A SUM DIFFERENT THAN AWARDS TO OTHER CLAIMANTS BASED ON THE TERMS OF THE AGREEMENT AND I ACCEPT AND AGREE TO THOSE TERMS.

**Waiver of Certain Provisions Regarding Timing of Any Payments**

31. 32. If I have any civil action pending in any jurisdiction that has enacted, promulgated or otherwise adopted any law containing provisions that establish specific time periods within which funds, if any, must be paid to me in connection with the release of such civil action (including, but not limited to, Pennsylvania Rule of Civil Procedure 229.1), I hereby (i) specifically and expressly waive (to the fullest extent permitted by applicable law) my rights under any such provisions and (ii) agree that any decision about any Compensation Award and the payment of any Compensation Award shall be made solely in accordance with the terms and conditions of the Settlement Program set forth in the Agreement, including the criteria and allocation established by the Claims Administrator, Settlement Administrator, or Claims Program.

**Informed Consent and Submission to Authority of Settlement Program**

32. 33. I understand that I have the right to make an informed decision regarding participation in the Settlement Program. I further understand that the Settlement Program provides a means outside of the control of Defendant to make Compensation Awards based on objective criteria, including categories subject to specified reductions which have been outlined to me, and which will be applied to my Claim if applicable and based on the facts of my Claim.

**No Admission of Fault**

33. 34. I understand and agree that Defendant has entered into the Agreement solely by way of compromise and resolution. The Agreement, and this Release, are not, and shall not be construed at any time to be, an admission of liability, responsibility or fault of or by Defendant or any other Released Person.

Exhibit 6                                                                                   Page 13

## Representations and Warranties

34. ~~35.~~ I hereby represent and warrant that:  I have full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms.  Except with respect to Liens, I have the sole right to receive any and all Compensation Awards with respect to my Claim under the Settlement Program.  Neither I nor any other Releasing Party has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims and Liabilities in whole or in part.  If I am signing as a Legal Representative of a Product User, I will attach to the signed Release valid proof of authority to enter into the Release.

35. ~~36.~~ I and any Person executing this Release further specifically warrant and represent that to the extent any bankruptcy action is pending, I and other Releasing Parties will take all necessary actions to notify the Bankruptcy Court of this settlement and will fulfill all obligations to said Bankruptcy Court.  I further agree, jointly and severally with any Person executing this Release, to indemnify, defend, and hold harmless, up to the amount of the Compensation Award issued to me, Defendant and the Released Persons from any loss, claim, expense, demand, or cause of action of any kind or character, including costs and attorneys' fees that result from the failure, if any, of any or all Releasing Parties to fulfill their obligations to said Bankruptcy Court.  Upon request, Releasing Parties further agree that we will provide written confirmation that we fulfilled said Bankruptcy Court obligations.  I and any Person executing this Release acknowledge that Defendant entered into the Agreement in reliance upon the representations and warranties made in this Release.

## Governing Law

36. ~~37.~~ THIS RELEASE, INCLUDING ITS CONSTRUCTION AND INTERPRETATION, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF THE STATE OF MISSOURI, WITHOUT REGARD TO ANY CHOICE-OF-LAW RULES THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.

## Forum Selection

37. ~~38.~~ If any Party to this Release should institute any action at law or in equity to enforce the terms of this Release, then venue for any such action shall be exclusively in the United States District Court for the Northern District of California and shall be filed as part of *In re: Roundup Products Liability Litig.*, MDL No. 2741.

## Severability

38. ~~39.~~ I agree that if any provision of this Release is adjudicated to be invalid, illegal or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete herefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified.

Exhibit 6                                                                                                          Page 14

Any such modification or amendment shall apply only to the operation of this Release in the particular jurisdiction in which such adjudication was made and shall not affect such provision in any other jurisdiction.  To the fullest extent permitted by applicable law, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive any provision of law that renders any provision of this Release invalid, illegal or unenforceable in any respect.

## Legal Representatives and Spouses

**39.**   ~~40.~~ If I am signing this Release as a legal representative of a Person or an estate of such Person who was injured or suffered death allegedly caused by the use of or exposure to any Roundup Product ("allegedly injured person or alleged decedent"), then (i) all references in this Release to my injury from the use of or exposure to any Roundup Product shall mean the injury from the use of or exposure to any Roundup Product of such allegedly injured person or decedent, all references in this Release to any person claiming by, through or under, or in relation to me shall also mean any person claiming by, through or under, or in relation to such allegedly injured person or decedent, (ii) if such allegedly injured person or alleged decedent is not deceased, he or she shall also be a Releasing Party, (iii) if such allegedly injured person or decedent is deceased, I am executing this Release both individually and on behalf of the estate of such allegedly injured person or decedent, for the injuries claimed on behalf of the decedent, and (iv) prior to the submission of this Release to Defendant, I have or will obtain judicial approval of this Release at my own expense, to the extent required under applicable Law.

**40.**   ~~41.~~ Notwithstanding anything to the contrary herein, it is expressly agreed that any claim or cause of action which my spouse executing this Release may have for any loss, injuries or damages which s/he may suffer solely as a result of his/her actual personal exposure to Roundup Products and their NHL is reserved and unaffected by this Release.  The execution of this Release by my spouse, individually, is only as to her derivative claims because of his/her relationship to me.

## Other Terms and Conditions

**41.**   ~~42.~~ Use of Release: No portion of this Release shall be deemed or construed as an admission on the part of any Defendant.

**42.**   ~~43.~~ Construction of Release: The terms of this Release have been negotiated by Counsel for Defendant and Class Counsel and the language of the Release shall not be construed in favor of or against anyone based on which party drafted the document.  The headings used herein are for reference only and shall not affect the construction of this Release.

**43.**   ~~44.~~ Entire Agreement: This Release constitutes the entire agreement between Releasing Party and Defendant and the Released Persons with respect to the subject matter of this Release, and there are no other written or oral agreements, understandings or

Exhibit 6                                                                                      Page 15

arrangements except as set forth herein.  The terms of this Release may not be modified or waived except in writing signed by the parties hereto.

**Definitions**

**44.**    ~~45.~~ "Claims" has the meaning set forth in Paragraph 8 of this Release.

**45.**    ~~46.~~ "Counsel" means, with respect to any particular Person, a lawyer representing a claimant either as a Class Counsel, or as a designated lawyer under the Legal Services Program established in the Settlement Agreement, or a lawyer privately retained by an individual claimant.

**46.**    ~~47.~~ "Compensation Award" means any payment resulting from a Compensation Award or other consideration or remuneration under the Agreement, which payment is subject to Liens, the attorneys' fees and costs provision in a retention agreement with Counsel, other common benefit attorney fees and costs assessed by a court, and/or administrative expenses.

**47.**    ~~48.~~ "Governmental Authority" means any government or political subdivision, department, commission, board, bureau, agency, or other governmental authority, whether United States federal, state, District of Columbia, city, county, municipal, territorial, or otherwise domestic, or foreign, or supranational, or any instrumentality whether domestic, foreign, or supranational.

**48.**    ~~49.~~ "Governmental Payor" means (a) any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Indian Health Service and (b) any entity paid by such a plan, program, or entity to provide benefits under contract on a prepaid or capitated basis.

**49.**    ~~50.~~ "Liabilities" has the meaning set forth in Paragraph 8 of this Release.

**50.**    ~~51.~~ "Lien" means any statutory lien of a Governmental Payor or any mortgage, lien, pledge, charge, security interest, hypothecation, assignment, encumbrance, subrogation right, reimbursement claim, right of indemnity, right to payment, third-party interest or adverse claim, of any nature whatsoever, in each case whether statutory or otherwise, held or asserted by any Person.

**51.**    ~~52.~~ "Other Insurer" means any Person other than a Governmental Payor, a provider, a patient, or a relative or guardian of a patient that is obligated, under contract, agreement or otherwise, to pay health care costs of a Settlement Class Member, including, without limitation, a self-insured plan operated by an employer or a corporate or association health insurer or liability insurer.

**52.**    ~~53.~~ "Person" means a natural person, partnership (whether general or limited), limited liability company, trust, estate, association (including any group, organization, co-

Exhibit 6                                                                                                            Page 16

tenancy, plan, board, council or committee), corporation, Governmental Authority, custodian, nominee or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

**53.** ~~54.~~ "<u>Personal Signature</u>" or "<u>Signature</u>" means the handwritten or electronic signature by the person whose signature is required on the document.  Unless otherwise specified in this Settlement Agreement, a Personal Signature on a document may be submitted by: (a) an actual original handwritten "wet ink" signature on hard copy; or (b) a PDF or other electronic image of an actual handwritten "wet ink" signature on a hard document; or (c) an electronic signature authorized, signed and submitted by the person whose signature is required and administered by DocuSign or a similar approved vendor.

**54.** ~~55.~~ "<u>Product User</u>" means, in relation to any particular Releasing Party, the natural person (including the deceased natural person) who is the Settlement Class Member who receives a Compensation Award who allegedly was exposed to Roundup.

**55.** ~~56.~~ "<u>Released Claims and Liabilities</u>" has the meaning provided in Paragraph 8 of this Release.

**56.** ~~57.~~ "<u>Released Person</u>" or "<u>Released Persons</u>" has the meaning provided in Paragraph 6 of this Release.

**57.** ~~58.~~ "<u>Releasing Party</u>" or "<u>Releasing Parties</u>" has the meaning provided in Paragraph 7 of this Release.

**58.** ~~59.~~ "<u>Settlement Program</u>" means the program for payment of Accelerated Payment Awards and the Claims Program.

## Miscellaneous

**59.** ~~60.~~ Where the context so requires, terms used in the singular in this Release shall be deemed to include the plural and *vice-versa*.

**60.** ~~61.~~ This Release may be executed in counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.

Exhibit 6                                                                                                    Page 17

**Certification of Medicare Status**

61.   ~~62.~~ Have you ever been enrolled in Medicare, now or in the past?   [**Check one**]

Yes: _____          No: ____

**IN WITNESS WHEREOF**, I have executed this Release effective as of the date set forth under my name below:

| SIGNATURE BY PRODUCT USER / RELEASING PARTY‡ | |
| --- | --- |
| **Signature of Releasing Party:** | |
| **Printed Name:** | |
| **Social Security No.:** | |
| **Date of Birth:** | |
| **Date of Signature:** | _____/_____/_____ <br> (month)    (day)     (year) |

---

‡   INSTRUCTION: The Release must be executed with the Personal Signature of the Releasing Party.  If executed on behalf of a Releasing Party by a legal representative (e.g., legal guardian), evidence of such authority must be attached and submitted with the Release executed with the Personal Signature of the legal representative.

---

Exhibit 6                                                                                                Page 18

will defend (with counsel selected by Monsanto Company), hold harmless, and indemnify the Released Parties from and against all costs and expenses incurred for liens, demands, rights, causes of action, and any other claims from Spouse which have been or may be asserted in the future against the Released Parties arising from or relating in any way to the Product User/Releasing Party's alleged exposure to Roundup Products and their Non-Hodgkin's Lymphoma.

**Signature**

CAUTION!  THIS IS AN INDEMNITY AGREEMENT.  READ BEFORE SIGNING.

IN WITNESS WHEREOF, I, PRODUCT USER/RELEASING PARTY, having read the foregoing Confidential Indemnity Agreement carefully, and knowing and understanding its contents, after the same has been read over and having had an opportunity to review and discuss with counsel, and that all provisions have been fully agreed to, understood and comprehended, and signed my name as my free act and deed this _____ day of _____, 2021.

_____
PRODUCT USER/RELEASING PARTY'S
NAME

STATE OF _____ )
                                            ) SS:
COUNTY OF _____ )

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named PRODUCT USER/RELEASING PARTY'S NAME who acknowledged that he did sign the foregoing Release, understood its contents, and that the same is his own free act and duty.

SWORN TO BEFORE ME and subscribed in my presence on this _____ day of _____, 2021.

_____
NOTARY PUBLIC

Please place Seal or Stamp

To be notarized in accordance with the applicable laws or rules governing notarization in the state in which the Product User/Releasing Party executes this Release.

Exhibit 6                                                                                                            Page 24

## EXHIBIT 8: SCIENCE PANEL DETERMINATION FORM

This form shall be filled out by the Science Panel without attribution to any individual Science Panel member.

After you have concluded the Scientific Analysis and reached the Science Panel Determination, you must fill out this form and deliver it to the Settlement Administrator, as set forth in Section 12.3(a) of the Settlement Agreement.  You must answer the questions provided and in answering the questions you may only select from the specific answer choices provided for on this form.

All questions must be answered by majority vote of the Science Panel, as set forth in Section 12.2(a) of the Settlement Agreement.

**Question No. 1:**

Can exposure to Roundup Products cause NHL in humans, as assessed according to the criteria in Section 12.2(b) and Section 12.2(d) of the Settlement Agreement? [*]

Yes: ____          No: ____

If you answered "No" to question 1, in the chart below check "No" and enter "Causation Not Shown Finding," sign the form, and deliver it to the Settlement Administrator.  Do not answer question 2 if you answer "No" to question 1.

If you answered "Yes" to question 1, proceed to question 2.

**Question No. 2:**

If you answered "Yes" to question 1, at what threshold internal dose level (dose greater than xx micrograms/day over a lifetime, or other scientifically validated calculation) can exposure to Roundup Products cause NHL in humans, as assessed according to the criteria in Section 12.2(c) and Section 12.2(d) of the Settlement Agreement?

---

[*] All references in the Settlement Agreement and this Exhibit 8 to "exposure to Roundup Products" mean exposure to Roundup Products through the application of Roundup Products.  Exposure "through the application of Roundup Products" includes exposure through application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

Exhibit 8                                                                                    Page 1

Your answer must be recorded in the chart below as follows:

If you conclude that exposure to Roundup Products can cause NHL in humans at or above a threshold internal dose level (dose greater than xx micrograms/day over a lifetime), or other scientifically validated calculation) as assessed according to the criteria in Section 12.2(c) and Section 12.2(d) of the Settlement Agreement, in the chart below check "Yes," enter the specific threshold internal dose level (dose greater than xx micrograms/day over a lifetime), or other scientifically validated calculation) and enter "Causation Shown Finding." You must set forth a threshold internal dose level for NHL if you have checked "Yes." If you are unable to determine a threshold internal dose level for NHL and you have checked "Yes," change your answer to "No" and enter "Causation Not Shown Finding." Sign the form, and deliver it to the Settlement Administrator.

*       *       *

|  | Yes | No | Threshold Internal Dose Level | Finding Type: <br> • Causation Not Shown Finding <br> • Causation Shown Finding |
|---|---|---|---|---|
| NHL |  |  |  |  |

On behalf of the Science Panel, the undersigned hereby certifies that such determinations were duly made:

_____

Science Panel Chairperson

Dated: _____

Exhibit 8                                                                 Page 2

## EXHIBIT 9: SCIENCE PANEL STIPULATION

## STIPULATION OF ADMITTED FACTS

IT IS HEREBY STIPULATED AND AGREED, by and between the Plaintiff [insert name of Settlement Class Member Party(ies)] and Defendant [insert name of Monsanto Party or Related Party] as follows:

1. On February 3, 2021, a class action settlement and settlement agreement was reached by and among Monsanto Company, and class representatives and subclass representatives, individually and on behalf of a defined settlement class and subclasses. On [DATE], the United States District Court for the Northern District of California entered a Final Order and Judgment approving the class action settlement and settlement agreement, and certifying the settlement class and subclasses under Rule 23 of the Federal Rules of Civil Procedure.

2. The settlement agreement defined a term, Roundup Products, to mean: any glyphosate-containing product developed, manufactured, distributed, sold, and/or marketed by Monsanto (or any of its direct or indirect subsidiaries), or by any Person to the extent such product contains glyphosate exclusively supplied by Monsanto (or any of its direct or indirect subsidiaries), under any name or brand: (i) prior to or as of the settlement date; or (ii) after the settlement date if the product has a chemical formulation identical to a Roundup Product developed, manufactured, distributed, sold, and/or marketed prior to or as of the settlement date.

3. The Science Panel was an independent group of ~~five~~ seven scientists who are recognized, independent, appropriately credentialed epidemiologists, biostatisticians,

Exhibit 9                                                                                     Page 1

toxicologists, or hematologists/oncologists, amongst others, and/or scientific or medical professionals with similar backgrounds and qualifications.

4. The Science Panel was compromised of the following individuals: [insert names of Science Panel members and their affiliations].

5. The Science Panel was not under the control or influence of any party and did not include scientists employed by any party.

6. The Science Panel conducted an independent, four-year review of the scientific evidence regarding whether exposure to Roundup Products through the application of Roundup Products can cause Non-Hodgkin's Lymphoma in humans. The Science Panel was instructed that if a majority finds that such causation has not been established, then it should undertake no further inquiry. If the Science Panel finds that causation has been established, then it was instructed to determine, by majority vote, at what threshold internal dose level (dose greater than xx micrograms/day, or other scientifically validated calculation) such causation has been established.

7. The Science Panel conducted its work by reviewing the following existing body of scientific evidence:

      a.      Published EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian carcinogenicity assessments of glyphosate, glyphosate-based herbicides, and/or surfactants.

      b.      IARC Monograph 112 regarding glyphosate.

      c.      All published studies and reviews regarding glyphosate, glyphosate-based herbicides and/or surfactant epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity.

      d.      All registrant-supplied studies and data submitted to EPA, Health Canada, JMPR, ECHA, EFSA, New Zealand, Japanese, and Australian pesticide regulatory authorities concerning glyphosate,

glyphosate-based herbicides, and/or surfactants regarding epidemiology, exposure/dose, animal toxicology, genotoxicity, and chemical structure and activity, provided that if the Science Panel believes that the underlying data for a particular study is necessary for a complete review of that study, the Science Panel shall not consider that study unless such underlying data are contained within the document productions made as of the Settlement Date by any Person in prior litigation involving Roundup Claims or are otherwise publicly available.

8.  The Science Panel also could consider additional scientific evidence published in a peer-reviewed journal if at least five of the Science Panel members agreed that it should be considered.

9.  8. The Science Panel had complete discretion to weigh this body of evidence and to conduct further analyses as it believes necessary to assess whether exposure to Roundup Products causes Non-Hodgkin's Lymphoma in humans.

10.  9. [The Science Panel's determination is that it has not been established that the application of Roundup Products can cause Non-Hodgkin's Lymphoma in humans.] or [The Science Panel's determination is that the application of Roundup Products has been shown to cause Non-Hodgkin's Lymphoma in humans, but only at or above the threshold internal dose level (dose greater than [xx] micrograms/day)of _____.] or [The Science Panel's determination is that the application of Roundup Products has been shown to cause Non-Hodgkin's Lymphoma in humans at any internal dose level.]

11.  10. The parties have agreed that the Science Panel's determination should be considered as that of an independent expert and its determination should be given the same weight given to the testimony of any other independent expert witness.

Exhibit 9                                                                                          Page 3

WHEREAS, the Court has considered all of the presentations and submissions related to the Preliminary Approval Motion and, having presided over and managed the proceedings in MDL No. 2471 as Transferee Judge since the October 3, 2016 Transfer Order, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.  PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.  The Court finds that the requirements of Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure have been satisfied for purposes of preliminary approval of the Settlement Agreement, such that notice of the Settlement Agreement should be directed to Settlement Class Members and a Fairness Hearing should be set.

2.  The Settlement Agreement, including all Exhibits attached thereto, are preliminarily approved by the Court.

## II.  FINDINGS REGARDING THE SETTLEMENT CLASS AND SUBCLASSES

3.  The Settlement Class consists of, only for purposes of the Settlement Agreement: (i) those individuals who are either citizens or Residents of the United States as of February 3, 2021 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of February 3, 2021 both (1) have been exposed to Roundup Products through the application of Roundup Products as a result of either occupational exposure as an agricultural, industrial, turf, or ornamental worker, or residential or other exposure where the exposed individual purchased, prepared, used, or applied the Roundup Products, or paid for, directed, participated in, saw, or was told of the purchase, preparation, use, or application of the products and (2) have not commenced an

Exhibit 10                                                                                                      Page 3

individual, non-class lawsuit or retained counsel for the pursuit of any individual, non-class personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants. "~~Exposure to Roundup Products through the application of Roundup Products~~Application" includes ~~exposure through~~application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself.

4.      The following Persons are excluded from the Settlement Class:

a       Judicial officers and associated court staff assigned to this case, and their immediate family members;

b       Past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries; and

c       All those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class in the manner approved by the Court and set forth in the Settlement Class Notice.

5.      The Settlement Class consists of two Subclasses.

a.      Subclass 1 means Settlement Class Members who have been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants.

b       Subclass 2 means Settlement Class Members who have not been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants.

Exhibit 10                                                                                                    Page 4

33.     This matter and all Roundup Lawsuits and Related Party Lawsuits brought by Settlement Class Member Parties are stayed.  No Settlement Class Member Party may file or prosecute any Roundup Claims, Roundup Lawsuits, and Related Party Lawsuits[*] in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Monsanto Parties or the Related Parties, and any such filings are stayed; provided, however, that this Paragraph shall not apply to any Opt Outs beginning as of the date their Opt Out becomes effective.  The stay and prohibition set forth in this Paragraph shall remain in effect until 90 days following the conclusion of the Initial Settlement Period; provided, however, that if a Settlement Class Member is granted an Exceptional Hardship Exception by the Settlement Administrator pursuant to Section 18.2(b)(iv) of the Settlement Agreement, the stay and prohibition shall expire as to that Settlement Class Member upon the date the Exceptional Hardship Exception is granted.  The provisions of this Paragraph will be superseded in connection with the Court's decision regarding final approval of the Settlement Agreement and final certification of the proposed Settlement Class and Subclasses.  This order is entered pursuant to the Court's Rule 23(e) findings set forth above, in aid of its jurisdiction over the members of the proposed Settlement Class and the settlement approval process under Rule 23(e).

## VIII.   TOLLING OF STATUTES OF LIMITATION

34.     The statutes of limitation applicable to (a) any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Member Party against any Monsanto Party, and (b) any and all Claims, counterclaims, and defenses of the Settlement

---

[*] As defined in the Settlement Agreement.

Exhibit 10                                                                                      Page 12

Class Member Parties and the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party will be tolled and stayed to the extent not already tolled by the initiation of an action in the Lawsuit or a Roundup Lawsuit; provided, however, that the tolling set forth in this Paragraph shall not apply to any Opt Outs, beginning as of the date their Opt Out becomes effective.   The tolling set forth in this Paragraph shall remain in effect until 90 days following the conclusion of the Initial Settlement Period; provided, however, that if a Settlement Class Member is granted an Exceptional Hardship Exception by the Settlement Administrator pursuant to Section 18.2(b)(iv) of the Settlement Agreement, the tolling shall expire as to that Settlement Class Member upon the date the Exceptional Hardship Exception is granted.   Notwithstanding anything to the contrary in this Preliminary Approval Order, the tolling set forth in this Paragraph shall expire under the circumstances set forth in Section 18.2(b)(iii) of the Settlement Agreement.

35.    Any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of this Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or this Preliminary Approval Order.

## IX.    OTHER PROVISIONS

36.    Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, is preliminarily appointed to serve as the Settlement Administrator.

37.    Wolf Garretson, LLC is preliminarily appointed to serve as the DAGP Administrator and the Lien Administrator.

Exhibit 10                                                                                                    Page 13

Members, except that notice of any such extensions or adjournments shall be included on the Settlement Website.  Settlement Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines.

45.     Class Counsel, Counsel for the Defendant, the Settlement Administrator, the Claims Administrator, the DAGP Administrator, the Lien Administrator, the Settlement Class Notice Agent, the Legal Services Program Counsel, and the Escrow Agent are authorized to take, without further Court approval, all actions under the Settlement Agreement that are permitted or required to be taken following entry of this Preliminary Approval Order and prior to entry of the Final Order and Judgment, including effectuation of the Settlement Class Notice Plan.

46.     Class Counsel and Counsel for the Defendant are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Settlement Agreement that are not materially inconsistent with this Preliminary Approval Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Settlement Class Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

47.     The Court shall maintain continuing jurisdiction over these proceedings (including over the administration of the qualified settlement fund) for the benefit of the Settlement Class as defined in this Preliminary Approval Order.


**SO ORDERED** this _____ day of _____, 2021.

Exhibit 10                                                                                                    Page 15

Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel;

WHEREAS, the Court, for the purposes of this Final Order and Judgment, adopts all defined terms as set forth in the Settlement Agreement;

WHEREAS, on **_____, 2021**, the Court entered a Preliminary Approval Order that, among other things:  (i) preliminarily approved the Settlement Agreement; (ii) appointed Class Counsel and Subclass Counsel; (iii) approved the Settlement Class Notice and Settlement Class Notice Plan and directed that the Settlement Class Notice be disseminated to Settlement Class Members according to the Settlement Class Notice Plan; (iv) scheduled a Fairness Hearing for final approval of the Settlement Agreement; and (v) stayed the filing and prosecution of Roundup-related actions by Settlement Class Members;

WHEREAS, in the Settlement Agreement the Settlement Class is defined as follows:  (i) those individuals who are either citizens or Residents of the United States as of February 3, 2021 or who claim exposure to Roundup Products through the application of Roundup Products in the United States and who as of February 3, 2021 both (1) have been exposed to Roundup Products through the application of Roundup Products as a result of either occupational exposure as an agricultural, industrial, turf, or ornamental worker, or residential or other exposure where the exposed individual purchased, prepared, used, or applied the Roundup Products, or paid for, directed, participated in, saw, or was told of the purchase, preparation, use, or application of the products and (2) have not commenced an individual, non-class lawsuit or retained counsel for the pursuit of any individual, non-class personal injury or false advertising claims arising from, resulting from, in any way relating to or in connection with such exposure; and (ii) all Derivative Claimants.  "Exposure to Roundup

Exhibit 11                                                                                                    Page 2

~~Products through the application of Roundup Products~~Application" includes ~~exposure through~~application, mixing, and any other steps associated with application, whether or not the individual performed the application, mixing, or other steps associated with application himself or herself;

WHEREAS, Section 1.1(b) of the Settlement Agreement identifies certain Persons that are excluded from the Settlement Class;

WHEREAS, in the Settlement Agreement the Subclasses are defined as follows: (i) "Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants; and (ii) "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of February 3, 2021, and their Derivative Claimants;

WHEREAS, [●] Settlement Class Members have chosen to be excluded from the Settlement Class by timely filing written requests for exclusion.  The Opt Outs are listed at the end of this Final Order and Judgment in Exhibit A;

WHEREAS, [●] Settlement Class Members submitted objections to the Settlement Agreement under the process set by the Preliminary Approval Order;

WHEREAS, on **_____, 2021**, the Court held the Fairness Hearing to consider whether the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class and Subclasses;

WHEREAS, the Court, having heard arguments of counsel for the Parties and of the persons who appeared at the Fairness Hearing, having reviewed all materials submitted, having considered all of the files, records, and proceedings in the Lawsuit, and being otherwise fully advised;

Exhibit 11                                                                                                          Page 3

or the Related Parties, until 90 days following the conclusion of the Initial Settlement Period; provided, however, that if a Settlement Class Member is granted an Exceptional Hardship Exception by the Settlement Administrator pursuant to Section 18.2(b)(iv) of the Settlement Agreement, the injunction shall expire as to that Settlement Class Member upon the date the Exceptional Hardship Exception is granted.   The injunction set forth in this Paragraph supersedes the stay and prohibition set forth in the Preliminary Approval Order.  Following the conclusion of the Initial Settlement Period (or as provided in Section 18.2(b)(iv)), Settlement Class Members can sue for Compensatory Damages in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties under, at the time, and subject to the terms and conditions set forth in Section 7.13, Section 7.16, and Article XIII of the Settlement Agreement.  In any suit in the tort system for any Roundup Claim against the Monsanto Parties or the Related Parties, the Settlement Class Member may seek Compensatory Damages only and remains bound by all provisions of the Settlement Agreement other than the bar on bringing Roundup Claims for Compensatory Damages in the tort system.  The provisions of the Settlement Agreement that permit Settlement Class Members to sue for Compensatory Damages in the tort system for Roundup Claims against the Monsanto Parties or the Related Parties set forth solely the time, circumstances and terms and conditions under which Settlement Class Members may bring such lawsuits consistent with the Settlement Agreement. Such provisions shall not be construed as suggesting that any Settlement Class Member would have a valid Roundup Claim or that any such lawsuit or Roundup Claim has or would have merit, and are without prejudice to the rights of the Monsanto Parties and the Related Parties to defend against any such lawsuits or Roundup Claims.

Exhibit 11                                                                                                     Page 8

12.     The statutes of limitation applicable to (a) any and all Roundup Claims that have been or could be asserted by or on behalf of any Settlement Class Member Party against any Monsanto Party, and (b) any and all Claims, counterclaims, and defenses of the Settlement Class Member Parties and the Monsanto Parties with respect to the Roundup Claims between any Settlement Class Member Party and any Monsanto Party will be tolled and stayed to the extent not already tolled by the initiation of an action in the Lawsuit or a Roundup Lawsuit.  The tolling set forth in this Paragraph shall remain in effect until 90 days following the conclusion of the Initial Settlement Period; provided, however, that if a Settlement Class Member is granted an Exceptional Hardship Exception by the Settlement Administrator pursuant to Section 18.2(b)(iv) of the Settlement Agreement, the tolling shall expire as to that Settlement Class Member upon the date the Exceptional Hardship Exception is granted.  Any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of the Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or this Final Order and Judgment.

13.     The Class Action Complaint is hereby dismissed with prejudice, without further costs, including Claims for interest, penalties, costs, and attorneys' fees.

14.     As set forth in Article XVII of the Settlement Agreement, the Class Representatives and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Settlement Class Member Parties, have waived and released, forever discharged, and held harmless the Monsanto Parties and the Related Parties of and from any and all Released Claims.  Accordingly, the Court hereby orders the dismissal with prejudice, and without further costs, including Claims for interest, penalties, costs, and

Exhibit 11                                                                                                                    Page 9

19.     The Court finds that the Science Panel is not an arbitration panel and that the Science Panel Determination shall be final and shall not be subject to judicial review, including under the Federal Arbitration Act or other similar statute, rule, or regulation.

20.     Any and all Persons, including the Monsanto Parties and the Settlement Class Member Parties, are hereby barred and enjoined from, at any time, in any forum or jurisdiction (whether federal, state, or otherwise), seeking discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) of the Settlement Agreement, including any written discovery, requests for documents, subpoenas of any kind, or notices of deposition, except to the extent permitted by Section 12.5(d) and Section 12.6(d) of the Settlement Agreement.  The Monsanto Parties and the Settlement Class Member Parties are hereby barred and enjoined from making use in any legal, legislative, administrative, or regulatory action, proceeding, or matter of any discovery or disclosure from the Science Panel, any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) of the Settlement Agreement that becomes available through any other means, except to the extent permitted by Section 12.5(d) and Section 12.6(d) of the Settlement Agreement.

21.     The Settlement Class Member Parties and the Monsanto Parties are hereby barred and enjoined from, at any time, in any forum or jurisdiction (whether federal, state, or otherwise), calling any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) of the Settlement Agreement, to provide testimony, whether as a fact witness, an expert witness, or in any other capacity, and from making use in any legal, legislative, administrative, or regulatory

Exhibit 11                                                                                    Page 11

action, proceeding, or matter of any testimony from any Science Panel member, any of the Science Panel's authorized contractors, or any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) of the Settlement Agreement, that becomes available through any other means, except to the extent permitted by Section 12.5(d) and Section 12.6(d) of the Settlement Agreement.

22.     The Science Panel members, any of its authorized contractors, and any Person to whom disclosure is made pursuant to Section 12.6(a)(iv) of the Settlement Agreement, are hereby barred and enjoined from serving as an expert witness or consultant, or providing any voluntary testimony including by affidavit, in any Roundup Lawsuit, Related Party Lawsuit, or in any legal, legislative, administrative, or regulatory action, proceeding, or matter asserting or alleging Roundup Claims, otherwise arising from, resulting from, in any way relating to or in connection with Roundup Products, or against the Monsanto Parties or the Related Parties arising from, resulting from, in any way relating to or in connection with exposure to glyphosate or a similar factual predicate raised in the Lawsuit, in all such cases whether brought by a Settlement Class Member Party, an Opt Out, or any other Person, at any time, except to the extent permitted by Section 12.5(d) and Section 12.6(d) of the Settlement Agreement.

23.     As set forth in the Preliminary Approval Order, the Court confirms the appointment of Kenneth R. Feinberg, Law Offices of Kenneth R. Feinberg, PC, as the Settlement Administrator, Wolf Garretson LLC as the DAGP Administrator and Lien Administrator, Verus LLC as the Claims Administrator, and Citibank, N.A. acting through its Citi Private Bank business unit as the Escrow Agent, _____ as the Legal Services

Exhibit 11                                                                                                    Page 12

Program Counsel, and confirms that the Court retains continuing jurisdiction over those appointed.

24. The Court approves the plan for operation of the Legal Services Program, in accordance with Section 11.3 of the Settlement Agreement, approves _____ as the Legal Services Program Counsel, and approves the compensation plan for the Legal Services Program Counsel that has been submitted by the Settlement Administrator.

24. 25. The Court retains continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Settlement Administrator, DAGP Administrator, Lien Administrator, Claims Administrator, the Settlement Class Notice Agent, the Legal Services Program Counsel, Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and this Final Order and Judgment, including as set forth in Section 12.3(d)(iii) and Section 12.3(e)(iii) Section 12.3(d)(iv) and Section 12.3(e)(iv) of the Settlement Agreement. Any disputes or controversies arising from, resulting from, in any way relating to or in connection with the interpretation, implementation, administration, and enforcement of the Settlement Agreement will be made by motion to the Court, except as otherwise provided in the Settlement Agreement.  In addition, the Parties and the Settlement Class Member Parties are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, including any dispute relating to the agreement regarding the evidentiary use of the Science Panel Determination, the agreement on the Science Panel Stipulation, and compliance with the requirements contained in Section 12.3(d)(iii) and Section 12.3(e)(iii) Section 12.3(d)(iv) and Section 12.3(e)(iv) of the Settlement Agreement.

Exhibit 11                                                                                          Page 13

For the avoidance of doubt, the Court shall have jurisdiction to oversee the requirements contained in ~~Section 12.3(d)(iii) and Section 12.3(e)(iii)~~ <u>Section 12.3(d)(iv) and Section 12.3(e)(iv)</u> of the Settlement Agreement and to issue binding orders as necessary to implement or enforce them.  The Court also retains continuing jurisdiction over the "qualified settlement fund," as defined under § 1.468B-1 of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, created under the Settlement Agreement.  The Court retains continuing jurisdiction over any requests for attorneys' fees and reimbursement of costs.

<u>25.</u>     ~~26.~~ This Final Order and Judgment incorporates and makes a part hereof the Settlement Agreement (which includes the Exhibits) filed with the Court on February 3, 2021, including definitions of the terms used therein <u>and subsequent amendments and any exhibits to such amendments filed with the Court</u>.  This Final Order and Judgment shall serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

<u>26.</u>     ~~27.~~ Notwithstanding anything to the contrary in this Final Order and Judgment, this Final Order and Judgment and the Settlement Agreement shall not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured Person thereunder.

<u>27.</u>     ~~28.~~ This Final Order and Judgment, the Settlement Agreement, and the documents relating thereto, and any actions taken by the Defendant in the negotiation, execution, or satisfaction of the Settlement Agreement:  (a) do not and shall not, in any event, constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of

Exhibit 11                                                                                                          Page 14

the validity of any claim made by any Settlement Class Member Party in this or any other action or proceeding; and (b) shall not, in any way, be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by any Settlement Class Member Party, Class Counsel, or any of the Monsanto Parties or Related Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Monsanto Parties or the Related Parties.  This Paragraph shall not apply to disputes between the Defendant and its insurers, as to which the Defendant reserves all rights.  For the avoidance of doubt, this Paragraph does not apply to the Parties' agreement regarding the evidentiary use of the Science Panel Determination or the Science Panel Stipulation as set forth in Paragraph 16, Paragraph 17 and Section 12.3 of the Settlement Agreement.  In the event this Paragraph conflicts with Paragraph 16, Paragraph 17 or Section 12.3 of the Settlement Agreement, the latter shall control.

28.     29. Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the Defendant, on behalf of all Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition.

29.     30. The terms of the Settlement Agreement and of this Final Order and Judgment are forever binding on the Parties, Settlement Class Members, and Settlement Class

Exhibit 11                                                                                                     Page 15

Member Parties, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates, and assigns.  The Opt Outs listed in Exhibit A hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment.

30.   ~~31.~~ Sixty (60) days after the final round of payments to Settlement Class Members, Class Counsel must file a "Post-Distribution Accounting," with accompanying declarations from themselves and the Settlement Administrator, explaining in detail when payments were made, the number of Settlement Class Members who were sent payments, the total amount of money paid out, any concerns communicated by Settlement Class Members to the Settlement Administrator and Class Counsel since entry of the Final Order and Judgment, and how any concerns or issues were resolved.  Class Counsel are expected to diligently supervise the administration of the Settlement Agreement and remain in close contact with the Settlement Administrator.

31.   ~~32.~~ If the Settlement Agreement is terminated as provided for in Article XXIII of the Settlement Agreement, this Final Order and Judgment (and any orders of the Court relating to the Settlement Agreement) shall be null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement, and any unexpended funds in the Settlement Fund, or unexpended payments made to Class Counsel for Settlement Class Notice will be returned to the Defendant forthwith.

32.   ~~33.~~ In the event that the Settlement Agreement does not become effective pursuant to its terms, the Court shall vacate the Preliminary Approval Order and this Final Order and Judgment.

Exhibit 11                                                                                                   Page 16

| DAGP Application | final budget period | |

**Compensation Fund**

| Event | Date | Section |
|---|---|---|
| **Accelerated Payment Award applications open** | ~~30~~40 days after entry of the Preliminary Approval Order | Section 6.2(a)(i) |
| **Claims Program Award applications open** | 60 days after entry of the Final Order and Judgment | Section 6.2(a)(ii)(2) |
| **Deadline for submitting Claim Packages** | ~~180 days~~One year after Effective Date, or ~~180 days~~one year after receipt of a Qualifying Diagnosis (whichever is later), subject to the qualifications set forth in Section 7.3(a) | Section 7.3(a) |
| **Claims Administrator to determine sufficiency and completeness of Claims Program Claim Package\*** | 90 days after receiving Claims Program Claim Package | Section 7.4(b) |
| **Deadline for submission of Deficiency cure materials for Claim Packages** | 120 days after Claims Administrator sends Notice of Deficiency | Section 7.5(b) |
| **Accelerated Payment Determination\*** | 30 days from the date when a completed Accelerated Claim Package that is not deficient and meets the applicable requirements set forth in Section 7.2(a) is received by the Claims Administrator. | Section 7.7(a) |
| **Claims Program Determination\*** | 90 days from the date when a completed Claims Program Claim Package that is not deficient and meets the applicable requirements of Section 7.2(b) is received by the Claims Administrator | Section 7.8(a) |
| **Deadline to appeal eligibility determination for Claims Program Award to Settlement Administrator** | 60 days after receiving Notice of Claims Program Determination | Section 7.10(a)(i)(1) |
| **Deadline to challenge the amount of the Claims Program Award in mediation** | 60 days after receiving Notice of Claims Program Determination | Section 7.10(a)(ii)(1) |
| **Deadline to appeal the mediation offer to the Settlement Administrator** | 60 days after receiving the mediation offer | Section 7.10(a)(ii)(2) |
| **Deadline to accept or reject** | | |

Exhibit 12                                                                    Page 2