UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | |

**DECLARATION OF ANDREW D. BRADT**

**I.     Background and Qualifications**

1.     I am a Professor at the University of California, Berkeley School of Law.  I graduated from Harvard College *summa cum laude* in 2002 and Harvard Law School *magna cum laude* in 2005.  After graduating, I served as a law clerk for the Hon. Patti B. Saris of the United States District Court for the District of Massachusetts and the Hon. Robert A. Katzmann of the United States Court of Appeals for the Second Circuit.  I also practiced in the litigation departments of Ropes & Gray LLP in Boston and Jones Day in New York City.  In 2010, I transitioned into academia and became a Climenko Fellow and Lecturer on Law at Harvard Law School.  Since 2012, I have been a professor at Berkeley Law, where I was tenured in 2018.

2.     At Berkeley, I teach the following courses: Civil Procedure, Complex Litigation, Conflict of Laws, Remedies, and a seminar on Multidistrict Litigation (MDL).  As detailed in my attached CV, I am the author of 17 published law-review articles.  I am also the co-author of two

- 1 -

casebooks: *Pleading and Procedure* (12th ed., Foundation Press, 2020) (with Geoffrey Hazard, Stephen Bundy, and William Fletcher) and the forthcoming *Complex Litigation* (7th ed., West Academic, forthcoming 2021) (with Edward Sherman, Richard Marcus, and Howard Erichson). I am also a member of the American Law Institute, and the Academic Advisory Board of the Supreme Court Fellows Program, and am an Affiliated Faculty Member of the Civil Justice Research Institute.

3.   My primary area of scholarly expertise is MDL.  In my eleven years in the academy, I have published 12 law review articles about MDL.  Although the majority of this work has focused on issues of MDL practice, I have also written several articles about the history of the MDL statute and the 1966 amendments to Rule 23.  Based on my knowledge of MDL history and practice, in 2019 I was invited to address the Judicial Panel on Multidistrict Litigation Transferee Judges' Conference in Palm Beach, Florida, and, in 2020, to participate in discussions of the Civil Rules Advisory Committee about proposed Federal Rules of Civil Procedure for MDL.

4.   I have been retained to comment on the structure of the proposed class settlement in *In re: Roundup Products Liability Litigation*, to which I will refer as the "Roundup settlement."  In particular, I have been asked to opine on whether, under Federal Rule of Civil Procedure 23(b)(3), the proposed settlement "is superior to other available methods for fairly and efficiently adjudicating the controversy."  In my opinion, the answer is yes.  Based on my research of the history of both the MDL statute and the 1966 amendments to Rule 23, it is my opinion that this class settlement is essentially what the drafters of both of those provisions had in mind.  The settlement *within the context of a well-developed MDL* is consistent with the vision of the drafters of both provisions.

## II.  The Simultaneous Development of the MDL Statute and Amended Rule 23

5. The MDL statute was conceived and developed in the early 1960s in the wake of unprecedented nationwide civil litigation arising out of widespread price fixing in the electrical-equipment industry.  I chronicle the drafting and subsequent passage of the statute in two articles, which I will draw on in this declaration: *"A Radical Proposal": The Multidistrict Litigation Act of 1968*, 165 U. PA. L. REV. 831 (2017) [hereinafter "*Radical Proposal*"] and *Something Less and Something More: MDL's Roots as a Class Action Alternative*, 165 U. PA. L. REV. 1711 (2017) [hereinafter *Something Less*].  In sum, the MDL statute was the brainchild of Phil Neal, the Dean of the University of Chicago Law School, and several federal judges who throughout the 1950s had been advocates of then-novel principles of case management in complex cases.  Neal and these judges had all been intimately involved in the Coordinating Committee on Multiple Litigation (CCML), an *ad hoc* committee created by Chief Justice Warren to oversee coordination of electrical equipment cases.  They shared a belief that due to rapid population growth, national economic interconnectedness, technological innovation, and the expansion of state and federal causes of action, a "litigation explosion" was coming to the federal courts.  This litigation explosion would require new procedural machinery that would reconceive of the federal courts as a single, national institution in order to ensure efficient handling of cases and enforcement of the law.  Their solution was the MDL statute and the JPML, which would facilitate transfer of cases to a single federal judge, hand-picked for his facility at managing complex cases, for pretrial proceedings.

6. Indeed, as early as 1963, these judges began to develop a "new rule or rules to permit *unified* judicially controlled discovery in situations of multiple litigation" and which would ensure "centralization of power to make decisions" on legal questions.  *See* Discovering

Instances of Multiple Litigation—A Clue to the Need for Manually Operated Rules? (June 7, 1963) (on file in the papers of Judge William Becker, U.S. National Archives, Kansas City, MO).  I tell this story in significant detail in *"A Radical Proposal."*

7. Simultaneously with the MDL statute, the Civil Rules Advisory Committee was in the process of amending the federal joinder rules, including Rule 23 on class actions.  Rule 23 had been a part of the Federal Rules since their 1938 inception, but it had long been considered confusing and unworkable.  The primary purpose of the revisions to the rule was to make the rule more legible, and if there was a policy consensus among the committee it was to ensure that the rule would facilitate civil-rights class actions for injunctive relief under Rule 23(b)(2).  That said, Benjamin Kaplan and Albert Sacks, the Reporters for the committee, believed that "the class action with full binding effect has a part to play in problems created by multiple torts," and saw "the class action device as having a potentiality for healthy growth to cope with an ever increasing volume of litigations involving large groups of individuals.  It must remain sufficiently flexible to meet new situations."  Memorandum from the Reporters to the Civil Rules Advisory Comm. for the Mar. 28-20, 1962 Meeting at EE-2, *in* Records of the U.S. Judicial Conference, *microformed on* CIS No. CI-6309-44 (Cong. Info. Serv.).  Indeed, Kaplan and Sacks advocated throughout the development of amended Rule 23 for its applicability to what we would now call "mass torts" cases.  *Something Less*, 165 U. Pa. L. Rev. at 1710-1711; Declaration of Arthur R. Miller ¶¶ 11-13.

8. Another innovator in the use of the class-action device in mass-tort cases was Judge Alfred P. Murrah, of the Tenth Circuit.  Murrah, who was an evangelist for judicial case management, was for that reason appointed by Chief Justice Warren to lead the CCML when the electrical-equipment cases lit up.  Based on his experience in those cases, Murrah was one of the

primary supporters for the MDL statute.  At the instigation of Judge Roszel Thomsen of the District of Maryland (the only member of both the CCML and the Civil Rules Advisory Committee), Kaplan and Sacks met with Murrah, Neal, Judge William Becker of the Western District of Missouri, and the others developing the MDL statute in New York in November 1963.  At the conclusion of the meeting, contemporaneous memoranda demonstrate that there was consensus that MDL ought to be the primary mechanism for handling mass torts cases *but not at the exclusion of the class action*.  Rather, both devices were intended to be used in tandem.  As Kaplan and Sacks put it, mass-tort litigation "will henceforth be a staple item appearing with increasing frequency" and "the problems will have to be approached in a variety of ways."  In their view, "a good deal of play in the joints is imperatively required."  Consequently, the amendments to Rule 23 "should not be such as to inhibit growth through case-by-case experimentation."  Memorandum to the Chairman and Members of the Advisory Comm. on Civil Rules 4 (Dec. 2, 1963), *in* Records of the U.S. Judicial Conference, *microformed on* CIS No. CI-7104 (Cong. Info. Serv.); *see also Something Less*, 165 U. Pa. L. Rev. at 1727-28.

9. The superiority requirement in Rule 23(b)(3) was added to the working draft of Rule 23 immediately *after* this liaison between the two committees in New York.  It reflects the view of the committee's leaders that while the forthcoming MDL statute might be the primary mechanism for handling mass tort cases in the federal system, Rule 23(b)(3) should be used flexibly *with* the MDL statute to facilitate resolution of mass-tort cases.  So, while the advisory committee note to the eventually adopted new Rule 23 proclaims that "mass accident" cases are "ordinarily not appropriate for a class action," the drafters of both amended Rule 23 and the MDL statute anticipated that both provisions would be applied flexibly and in concert to efficiently resolve mass tort cases.  Indeed, as Professor Miller's declaration in this case

confirms, the drafters of Rule 23 intended that, under appropriate circumstances and with necessary safeguards like the right to notice and opt out, Rule 23(b)(3) would be available in mass tort cases. Declaration of Arthur R. Miller ¶¶ 11-13. In short, based on the historical record, the drafters of these two statutes believed that MDL could be used to centralize the cases under the aegis of a single federal judge, and that Rule 23 could be used to facilitate group litigation of those cases once the MDL is in full swing. The drafters of the superiority requirement never considered it to be a stark choice between individual litigation and a class action. To the contrary, they full anticipated that Rule 23 would be used along with MDL. Ultimately, then when considering superiority, one must consider the MDL context in which the settlement is proposed.

### III.     The Settlement Represents an Appropriate Use of MDL in Concert with Rule 23

10.     MDL and Rule 23 were never intended to be an "either/or" proposition. Moreover, the suggestion that the use of the MDL statute and Rule 23 in concert should be reserved for "small claims class actions" where the individual damages are low (*e.g.,* Opposition to Preliminary Approval of Thomas C. Goldstein at ¶¶ 42-44) is historically inaccurate. A class action was always considered to be available in a mass tort case consolidated into an MDL.

11.     This case serves as a prime example of why MDL and Rule 23 were designed to retain the flexibility to facilitate resolution of mass torts. Here, the MDL is "mature": there has been successful coordinated discovery, motion practice, and trials. There is a firm understanding of the common legal issues in play and the risks of adverse appellate decisions on those issues. Many cases involving use of Roundup by home users have been settled. But the need for aggregate treatment of the cases in the proposed settlement remain—and MDL *in concert with* Rule 23 provides the best available mechanism for the class members.

12. It is clear that the vast majority of the remaining potential class members are those who have been exposed to Roundup in agricultural or occupational settings. The settlement ensures that those class members are notified of their potential claims, educated about the potential effects of Roundup, receive free legal services to help them consider their options, and transparent and predictable compensation. Moreover, the class benefits in other tangible ways, including new labeling of Roundup to apprise them of the risks, additional substantial funding for research on the health effects of Roundup, and diagnostic services. All of these benefits have been made possible in large part due to the Court's stewardship of the MDL. But the superiority requirement does not demand endless litigation if, thanks to the MDL, a beneficial settlement is on the table—particularly one that provides class members the opportunity to opt out on the back end and enter the tort system if they are dissatisfied with the settlement.

13. Moreover, so long as the settlement adequately protects the interests of the class members, it is appropriate to note that a central goal of the Congress in passing the MDL statute was always to ensure efficient enforcement of the law by avoiding repetitive litigation overwhelming the federal courts. Indeed, this was a shared goal of both the creators of the MDL statute and new Rule 23. Aggregate treatment in an MDL and a class action settlement achieves this goal, not to the detriment of the class members, but to their benefit. *See* Andrew D. Bradt & D. Theodore Rave, *It's Good to Have the "Haves" on Your Side: A Defense of Repeat Players in Multidistrict Litigation*, 108 Geo. L.J. 73 (2019); Andrew D. Bradt & D. Theodore Rave, *The Information-Forcing Role of the Judge in Multidistrict Litigation*, 105 Cal. L. Rev. 1259 (2017). This is just such a case. In my view, therefore, the settlement fulfills the superiority requirement, properly understood.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 6, 2021

*[signature]*
Andrew D. Bradt

# ANDREW D. BRADT

University of California, Berkeley School of Law
885 Simon Hall, Berkeley, CA 94720
(510) 664-4984; abradt@law.berkeley.edu

## ACADEMIC APPOINTMENTS

### UNIVERSITY OF CALIFORNIA, BERKELEY SCHOOL OF LAW
*Professor of Law (with tenure)*     2018-pres.
*Assistant Professor of Law*     2012-2018

Teaching: Civil Procedure, Conflict of Laws, Remedies, Complex Litigation, MDL
   Rutter Award for Teaching Distinction (2019)

Service:  Admissions Committee (2017-present)
   Curriculum Committee (2017-present)
   Campus Committee on Memorial Resolutions (2016-present; Chair-Elect, 2021)
   Judicial Clerkships Committee, 2012-2017 (co-chair, 2013-2017)
   Faculty Workshop Committee, 2015-2016 (co-chair)
   Academic Placement Committee, 2013-2015
   Faculty Advisor, American Constitution Society (2013-present)
   Liaison, Bay Area Civil Procedure Forum (2013-present)

Professional Affiliations:
   Member, American Law Institute
   Member, Academic Advisory Board, Supreme Court Fellows Program
   Executive Committee Member, AALS Litigation Section (Chair, 2019-20)
   Executive Committee Member, AALS Conflict of Laws Section
   Affiliated Faculty, Civil Justice Research Initiative

### HARVARD LAW SCHOOL     2010-2012
*Climenko Fellow and Lecturer on Law*
Course: Legal Research & Writing

## PUBLICATIONS

### BOOKS

COMPLEX LITIGATION: CASES AND MATERIALS ON ADVANCED CIVIL PROCEDURE (7th ed. 2021, West) (with Richard L. Marcus, Edward F. Sherman, and Howard M. Erichson).

PLEADING AND PROCEDURE: CASES AND MATERIALS (12th ed. 2020, Foundation Press) (with Geoffrey C. Hazard, Jr., Hon. William A. Fletcher, and Stephen McG. Bundy).

ARTICLES & ESSAYS

*It's Good to Have the "Haves" On Your Side: A Defense of Repeat Players in Multidistrict Litigation* 108 GEO. L.J. 73 (2019) (with D. Theodore Rave).

*Party Preferences in Multidistrict Litigation*, 108 CAL. L. REV. 1752 (2019) (with Zachary D. Clopton).

*MDL and Adversarial Legalism*, 53 GA. L. REV. 1382 (2019) (invited contribution to symposium, "MDL Turns 50: A Look Back and the Way Forward").

*Aggregation on Defendants' Terms:* Bristol-Myers Squibb *and the Federalization of Mass-Tort Litigation*, 59 B.C. L. REV. 1251 (2018) (with D. Theodore Rave) (winner of 2018 Call for Papers Award, Southeastern Association of Law Schools).

*The Looming Battle for Control of Multidistrict Litigation in Historical Perspective*, 87 FORDHAM L. REV. 87 (2018) (invited contribution to symposium, "Civil Justice Reform in the Trump Era").

*The Long Arm of Multidistrict Litigation*, 59 WM. & MARY L. REV. 1166 (2018).

*MDL v. Trump: The Puzzle of Public-Law MDLs*, 112 NW. U. L. REV. 905 (2018) (with Zachary D. Clopton).

*The Stickiness of the MDL Statute*, 37 REV LITIG. 203 (2018) (invited contribution to symposium, "MDL Problems").

*The Information-Forcing Role of the Judge in Multidistrict Litigation*, 105 CAL. L. REV. 1259 (2017) (with D. Theodore Rave).

*Something Less and Something More: MDL's Roots as a Class Action Alternative,* 165 U. PA. L. REV. 1711 (2017) (invited contribution to symposium on the fiftieth anniversary of the 1966 amendments to Rule 23).

*"A Radical Proposal": The Multidistrict Litigation Act of 1968*, 165 U. PA. L. REV. 831 (2017).

*Herma Hill Kay and the Conflict of Laws: A Tribute*, 104 CAL. L. REV. 579 (2016) (invited contribution to festschrift).

*Resolving Intrastate Conflicts of Laws: The Example of the Federal Arbitration Act*, 92 WASH. U. L. REV. 603 (2015).

Atlantic Marine *and Choice-of-Law Federalism*, 65 HASTINGS L.J. 617 (2015) (invited contribution to symposium on *Atlantic Marine v. U.S. District Court*).

*The Shortest Distance: Direct Filing and Choice of Law in Multidistrict Litigation*, 88 NOTRE DAME L. REV. 759 (2012).

Grable *on the Ground: Mitigating Unchecked Jurisdictional Discretion*, 44 U.C. DAVIS L. REV. 1153 (2011).

*Much to Gain and Nothing to Lose: Implications of the History of the Declaratory Judgment for the (b)(2) Class Action*, 58 ARK. L. REV. 767 (2006).

## EDUCATION

**HARVARD LAW SCHOOL**, J.D., *magna cum laude*                                           June 2005

Joseph H. Beale Prize for highest grade in Conflict of Laws, 2004-2005
Research Assistant, Prof. Stephen B. Burbank, University of Pennsylvania Law School
Research Assistant, Prof. Charles R. Nesson, Harvard Law School

**HARVARD UNIVERSITY**, A.B. in Social Studies, *summa cum laude*                         June 2002

Awards:  Phi Beta Kappa, Detur Book Prize, John Harvard Scholarship

## JUDICIAL CLERKSHIPS

**HON. ROBERT A. KATZMANN**, New York, NY                                                2007-2008
U.S. Court of Appeals for the Second Circuit

**HON. PATTI B. SARIS**, Boston, MA                                                       2005-2006
U.S. District Court for the District of Massachusetts

## PRACTICE EXPERIENCE

**JONES DAY**, New York, NY

*Associate, Issues & Appeals Group*                                                        2008-2010

**ROPES & GRAY**, Boston, MA

*Litigation Associate*                                                                     2006-2007
*Summer Associate*                                                                      Summer 2004

## BAR ADMISSIONS

New York (admitted 2007); Massachusetts (admitted 2007); U.S. Court of Appeals for the Ninth Circuit; U.S District Courts for the District of Massachusetts and the Eastern and Southern Districts of New York.

## AMICUS BRIEFS

Brief by Civil Procedure Professors in Support of Respondents, *Ford Motor Co. v. Montana Eighth Judicial District Court*, U.S. Supreme Court, No. 19-368 (2020) (with Pamela K. Bookman, Zachary D. Clopton, Maggie Gardner, and D. Theodore Rave).

Brief by Civil Procedure Professors in Support of Respondents, *Bristol-Myers Squibb v. Superior Court of California*, U.S. Supreme Court, No. 16-466 (2017) (with Pamela K. Bookman, Zachary D. Clopton, Maggie Gardner, and D. Theodore Rave) (cited in dissent by Justice Sotomayor, 137 S. Ct. 1773, 1788 n. 3).

Letter in Support of Petition for Review, *Chen v. L.A. Truck Centers, LLC*, California Supreme Court, No. S240245 (2017) (review subsequently granted).

### SELECTED PRESENTATIONS

Rulemaking in the Twenty-first Century—Constraints and Opportunities, A Response to the Professors Marcus, Penn Law Review Symposium, Philadelphia, PA (virtually), February 2021.

Adult Supervision: Opioids, Mandamus, and "Law Reform" in Multidistrict Litigation, University of Texas School of Law Colloquium on Current Issues in Complex Litigation, Austin, TX (virtually), November 2020.

The Civil Rules in the Age of Covid, Covid in the Courts Symposium, Civil Justice Research Initiative & RAND Corporation, Berkeley, CA (virtually), October 2020.

Super Litigation for Super Cases, 2020 Clifford Symposium on Tort Law and Policy—The Opioid Crisis: Where Do We Go From Here?, DePaul Law School (virtually), May 2020.

The Next Decade in Aggregate Litigation, Bolch Judicial Institute Civil Rules Planning Conference, Duke Law School, Durham, NC, November 2019.

Built to Last: The History of the MDL Statute and Implications for its Future, Judicial Panel on Multidistrict Litigation Transferee Judges Conference, Palm Beach, FL, October 2019.

What MDL Can Teach Us About Federal Judicial Reform, California Law Review Symposium, Berkeley, CA, April 2019.

MDL and Adversarial Legalism, Georgia Law Review Symposium, University of Georgia School of Law, Athens, GA, Feb. 2019.

Jurisdiction and Choice of Law in Multidistrict Litigation, Center for Civil Justice, New York University School of Law, New York, NY, Oct. 2018.

"The Looming Battle for the Soul of MDL," Fordham Law Review Symposium, "Civil Justice Reform in the Trump Era," New York, NY, Feb. 2018.

"Aggregation on Defendants' Terms: *Bristol-Myers Squibb* and the Federalization of Mass-Tort Litigation," AALS Annual Meeting, Conflict of Laws Section, San Diego, CA, Jan 2018; Bay Area Civil Procedure Forum, UC-Hastings College of the Law, San Francisco, CA, Oct. 2017; Berkeley Law Faculty Workshop, Sept. 2017.

"MDL v. Trump," Joint Workshop with Seoul National University Law School, Berkeley, CA, Aug. 2017.

Presentation on recent Supreme Court decisions on personal jurisdiction, Berkeley Law Summer Faculty Workshop, June 2017.

"The Long Arm of Multidistrict Litigation," UCLA Law School Faculty Workshop, April 2017.

"The Information-Forcing Role of the Judge in Multidistrict Litigation," presented at Junior Federal Courts Scholars Workshop, Emory Law School, Atlanta, GA, April 2017; University of Houston Public Law Colloquium, Feb. 2017; University of Arizona Law School Faculty Workshop, Tucson, AZ, Jan. 2017; Civil Procedure Workshop, Seattle, WA, July 2016; Law & Society Conference, New Orleans, LA, June 2016.

"The Stickiness of the MDL Statute," presented at American Association of Law Schools Litigation Section Annual Meeting, San Francisco, CA, Jan. 2017.

"MDL as a Class Action Alternative," presented at the University of Pennsylvania Law Review Symposium, Philadelphia, PA, November 2016.

"The Multidistrict Litigation Act of 1968," presented at American Society for Legal History Conference, Toronto, ON, Oct. 2016; Faculty Workshop, University of California-Irvine School of Law, Irvine, CA, Jan. 2016; Junior Federal Courts Scholars Workshop, Irvine, CA, Sept. 2015; First Annual Civil Procedure Conference, University of Washington, Seattle, WA, July 2015; Berkeley Law Faculty Workshop, Berkeley, CA, July 2015.

"Declaratory Relief and Full Faith and Credit," Bay Area Civil Procedure Forum, UC-Hastings College of the Law, San Francisco, CA, Oct. 2014.

"When States Don't Blink: Declaratory Judgments and Full Faith and Credit," Seventh Annual Junior Faculty Federal Courts Workshop, University of Georgia School of Law, Athens, GA, Oct. 2014.

"*Atlantic Marine* and Choice-of-Law Federalism," Symposium on Forum Selection after *Atlantic Marine*, UC-Hastings College of the Law, San Francisco, CA, Sept. 2014.

"Recent Developments in Civil Procedure," Berkeley Law Faculty Workshop, Berkeley, CA, June 2014.

"Intrastate Conflicts and the Federal Arbitration Act," Junior Faculty Federal Courts Workshop, Brooklyn Law School, New York, NY, Oct. 2013.

"Multidistrict Litigation and Choice of Law," University of Pennsylvania School of Law Complex Litigation Seminar, Philadelphia, PA, Nov. 2012; New England Junior Scholars' Conference, Boston College Law School, Boston, MA, Mar. 2011.

"The Shortest Distance: Direct Filing and Choice of Law in Multidistrict Litigation," presented at law-school-faculty workshops held by Harvard Law School, Drexel University, Syracuse University, Temple University, Tulane University, University of Alabama, University of California-Berkeley, University of California-Davis, University of Oklahoma, University of Washington, and the University of Wisconsin, Sept.-Dec. 2011.