UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2471 |
| THIS DOCUMENT RELATES TO: | Case No. 3:16-md-02741-VC |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | SUPPLEMENTAL DECLARATION OF AMIT R. MEHTA, M.D. |

Amit, R. Mehta, M.D., hereby declares as follows:

1. I have personal knowledge concerning the matters addressed herein, and submit this supplemental declaration in support of the Reply in further support of Plaintiffs' Motion for Preliminary Approval of Class Settlement and Direction of Notice under Fed. R. Civ. P. 23(e) ("Preliminary Approval Reply"). If called as a witness, I could and would testify competently to the facts and opinions set forth in this supplemental declaration. I hold all of the opinions set forth herein to a reasonable degree of medical certainty.

2. I incorporate herein by reference my initial Declaration, dated February 2, 2021, that set forth my background and experience, and certain details about Non-Hodgkin's Lymphoma ("NHL").

3. I was previously asked by Class Counsel to review the portions of the Settlement Agreement pertaining to the proposed Diagnostic Accessibility Grant Program ("DAGP") and to opine on same. I have also reviewed the Declaration of Matthew L. Garretson regarding the Diagnostic Accessibility Grants Program. I have now been asked to set forth my opinions regarding the DAGP in a declaration.

4. With reference to the DAGP, in my medical opinion, as a board-certified hematologist/oncologist who treats patients with NHL, such a program is a crucial part of the strategy to diagnose NHL promptly among those exposed to Roundup.

5. The DAGP program targets those with high occupational exposure, including, but not limited to, agricultural workers. These exposed individuals are known to typically reside in rural areas or other parts of the country where medical care may be relatively limited and/or restricted by other socio-economic obstacles.

6. Furthermore, patients who have developed NHL can often be minimally symptomatic or asymptomatic. Even those who experience symptoms may not connect them to the possibility of a cancerous condition, as many of the symptoms can be non-specific for lymphoma, such as fever, lymph node swelling, loss of appetite, and weight loss. Hence, a proactive education campaign, including methods for self-examination for symptoms and indicators, as well as a medical program for early detection, are extremely valuable for individuals exposed to Roundup.

7. The goals of the DAGP program should and do include diagnosing NHL at an earlier stage of disease progression in this at-risk population, because those who are diagnosed at an earlier stage (which corresponds to less lymphoma present in the body) have a better prognosis, including superior survival outcomes with proper treatment.

8. The early diagnosis of NHL is particularly important due to the often rapidly progressive nature of this group of cancers. A delay of even a few months can have the consequence of a diagnosis made at a more advanced stage of disease or one with more symptoms, which confers worse prognosis with greater difficulty of successful treatment. Such a delay can even result in a patient's death. For example, those diagnosed at an earlier point (in terms of stage of cancer along with other prognostic risk factors) have a 4 year survival rate of 92% with the aggressive NHL subtype known as diffuse large B-cell lymphoma. In contrast, those diagnosed at a more advanced point of lymphoma have a 4 year survival rate of only 58%.

Therefore the difference in survival rates can be over 30% when measured at 4 years from the time of treatment, even with best therapy. This underscores the need for prompt diagnosis, as a delay in diagnosis can result in a significantly lower chance of successful therapy. (*Armitage, James et al. Non-Hodgkin Lymphomas. Philadelphia, Lippincott Williams & Wilkins, 2010.*)

9. Treatment with chemotherapy and other standard-of-care therapies are associated with a number of long-term treatment complications, including cardiovascular disease, infertility, endocrine diseases (e.g., thyroid dysfunction), neurologic problems, and psychiatric conditions. These side effects generally are dose-dependent; so, a greater cumulative dose received by a patient heightens the risk of long-term side effects. Such dose-dependent relationships for toxicities also applies for standard-of-care chemotherapies used in the treatment of NHL. These side effects include heart failure, acute leukemia, and death. (*McGowan JV, Chung R, Maulik A, Piotrowska I, Walker JM, Yellon DM. Anthracycline Chemotherapy and Cardiotoxicity. Cardiovasc Drugs Ther. 2017;31:63–75.; Von Hoff DD, Layard MW, Basa P, Davis Jr HL, Von Hoff AL, Rozencweig M, et al. Risk factors for doxorubicin-induced congestive heart failure. Ann Intern Med. 1979;91:710–7.*)

10. When a patient is diagnosed at an earlier stage of NHL, typically less chemotherapy is required for standard-of-care treatment. Therefore, the DAGP program also encompasses the aim of reducing the risk of long-term complications of treatment. Per the treatment guidelines published by the National Comprehensive Cancer Network (NCCN), the majority of the subtypes of NHL require less chemotherapy when diagnosed at an earlier stage. (*NCCN Clinical Practice Guidelines in Oncology: B-Cell Lymphomas version 4.2020*) Often the chemotherapy needed for adequate treatment is half or less than half of that required for a more advanced stage at diagnosis. For example, with diffuse large B-cell lymphoma, an aggressive subtype of NHL, a patient may need only three rounds of systemic intravenous chemotherapy when diagnosed at an earlier stage (such as stage I or II) compared to at least 6 cycles of chemotherapy if diagnosed with more advanced cancer (stage III or IV). Therefore, this is of

3

clearly known and established medical significance regarding the amount of chemotherapy prescribed for a patient, as well as the increasing risk of side effects commensurate with the dose.

11.   I understand that certain opponents of the settlement have taken issue with my prior Declaration in terms of my ability to opine on certain risk factors for NHL, specifically those set forth in the Group A and Group B Medical Conditions set forth in Exhibit 5 to the Settlement Agreement. As a practicing physician who is board-certified in hematology and oncology, and having treated thousands of patients, this experience provides one with a nuanced understanding of risk factors to consider for a disease like NHL for a given case. In other words, not all potential risk factors are equally applicable, and some factors may not be at all applicable to certain clinical scenarios. This experience informs one to properly appreciate the balance of exposure to a carcinogen in comparison to another diagnosis in a patient's medical history. This fine-tuned understanding is further augmented by the published medical literature listed in the attachment to my prior Declaration.

12.   This Declaration is being submitted in connection with the Preliminary Approval Reply. I understand that, should the Court grant the Motion for Preliminary Approval, there will be an opportunity for me to submit a more comprehensive report in support of a motion for final approval of the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed in ___Cary___, North Carolina, this _26_ day of ___March___, 2021.

_____
Amit R. Mehta, M.D.