**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

*Attorneys for Defendant*
*MONSANTO COMPANY*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Cervantes v. Monsanto Co.,* 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.,* 3:16-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:18-cv-07271-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169<br>*Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER**<br><br>Hearing date: May 28, 2021<br>Time: 10:00 a.m. |

In response to Monsanto's Motion to exclude testimony of Dr. William Sawyer, Plaintiffs make several key concessions regarding Dr. Sawyer's anticipated testimony. First, they concede that Dr. Sawyer will not offer "any general causation opinions." *See* MDL Doc. No. 12874 ("Illinois Plaintiffs' Opp.") at 4, 6 (admitting Dr. Sawyer "is not being offered as a general causation expert on epidemiology" and is "not offering any general causation opinions"); MDL Doc. No. 12901 ("Plaintiff Seidl's Opp.") at 3 (admitting Dr. Sawyer "is not offering any general causation opinions").[1] Plaintiffs further concede that Dr. Sawyer did not conduct a "full differential etiology" in any of the Wave 2 cases, Illinois Plaintiffs' Opp. at 4, 11; Plaintiff Seidl's Opp. at 2, and that Dr. Sawyer will not offer opinions about the "intent or state of mind of Monsanto" or about labeling requirements. Illinois Plaintiffs' Opp. at 16-17. At a minimum, the Court should grant Monsanto's motion to exclude testimony of Dr. William Sawyer ("Motion") to the full extent of Plaintiffs' many concessions. Furthermore, for the reasons discussed below and in Monsanto's Motion, Dr. Sawyer's flawed opinions regarding causation, the George study, trace chemicals, and Monsanto company documents should be excluded in their entirety.

## I. The Court Should Exclude Dr. Sawyer's General Causation Opinions.

As discussed above, Plaintiffs concede that Dr. Sawyer will not offer "any general causation opinions" in any of the Wave 2 trials. *See* Illinois Plaintiffs' Opp. at 4, 6; Plaintiff Seidl's Opp. at 3. Accordingly, the Court should grant Monsanto's Motion to exclude Dr. Sawyer's opinions on general causation and enter an order preventing Dr. Sawyer from offering any general causation opinions during any Wave 2 trial.

## II. The Court Should Exclude Dr. Sawyer's Specific Causation Opinions.

The Court should likewise enter an order preventing Dr. Sawyer from offering any opinions on specific causation. During Wave 1, Plaintiffs conceded that Dr. Sawyer would not "offer a differential diagnosis opinion as to any individual plaintiff," so this Court found that "[Dr. Sawyer] may not opine

---

[1] In response to Monsanto's Motion to Exclude Testimony of Dr. William Sawyer (MDL Doc. No. 12793), Plaintiffs filed three different responses, including (1) the Illinois Plaintiffs' Opposition (MDL Doc. No. 12874), filed by five Illinois Wave 2 Plaintiffs: Cervantes, Karman, Pecorelli, Peterson, and Schafer; (2) a separate response filed by Plaintiff Seidl (MDL Doc. No. 12901); and (3) a Joint Response in Opposition to the *General Issues Raised in* Monsanto Company's Motion to Exclude Testimony of Specific Causation Experts Barry Boyd, Lauren Pinter-Brown, William Sawyer, Ron Schiff and Dennis Weisenburger on *Daubert* Grounds (the "Joint Response", MDL Doc. No. 12896).

- 2 -
MONSANTO'S REPLY ISO MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER

that a plaintiff's 'exposure to Roundup was sufficient to cause NHL.'" *See* MDL Doc. No. 9142, Amended Pretrial Order No. 201.  Likewise here, Plaintiffs admit that Dr. Sawyer did not conduct a "full differential etiology" in any of the Wave 2 cases, *see* Illinois Plaintiffs' Opp. at 4, 11; Plaintiff Seidl's Opp. at 2, yet they paradoxically contend, contrary to the Court's prior order, that Dr. Sawyer should be permitted to opine that Plaintiffs' exposures were sufficient to cause NHL.  *See* Illinois Plaintiffs' Opp. at 3, 4, 8, 9, 10; Plaintiff Seidl's Opp. at 2.  Plaintiffs' argument fails for several reasons.

*First*, an opinion on specific causation cannot be based solely on the available epidemiological data.  As Plaintiffs' experts have conceded, causation (whether general or specific) cannot be established with epidemiology alone.  *See* Mot. at Marshall Decl. Ex. 20, Tr. of Proceedings, Testimony of Dr. Christopher J. Portier, *Pilliod v. Monsanto Co.,* No. RG-170862702 (Cal. Sup. Ct. Alameda Cnty. Apr. 3, 2019) at 1893:3-8 ("Q: And so in terms of the human data we have in this case, you agree that you cannot make a firm statement that Roundup causes NHL from the epidemiology data alone, true? A: Correct.  I can't do it from the epidemiology data alone."); *In re Roundup Prods. Liab. Lit.*, 390 F. Supp. 3d 1102, 1116 (N.D. Cal. 2018); *see also* Mot. at Marshall Decl. Ex. 18, Reference Manual on Scientific Evidence at 598.  Yet that is precisely what Dr. Sawyer has done with his specific causation analysis:  he has concluded that Roundup caused each Plaintiff's NHL merely because Plaintiffs were exposed to Roundup for a number of days that exceeds the minimal "number-of-days" threshold presented by certain epidemiological data points.

*Second*, even if specific causation could be established with epidemiology alone, the studies relied upon by Dr. Sawyer are insufficient to do so here.  As discussed in more detail in Monsanto's Motion, the primary studies on which Dr. Sawyer relies for his specific causation analysis—Eriksson and McDuffie—are unreliable because the relevant data was not adjusted for the use of other pesticides.  As this Court has already determined, "[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern."  *In re Roundup*, 390 F. Supp. 3d at 1140.  Moreover, the Andreotti and Leon studies did not find a statistically significant association between glyphosate and NHL, so those studies do not support Dr. Sawyer's ultimate conclusions on causation.  *See* Mot. at Marshall Decl. Ex. 1, Sawyer *Cervantes* Rpt. at 24-26; *id.* at Ex. 22, *Memorandum: Glyphosate: Epidemiology Review of Zhang et al. (2019)*

*and Leon et al. (2019) publications for Response to Comments on the Proposed Interim Decision* (Jan. 6, 2020) at 13-17.  And the Zhang study has been sharply criticized for its faulty methodologies and flawed conclusions.  *See id.*  Plaintiffs' Oppositions fail to address any of these deficiencies, implicitly conceding that Dr. Sawyer's specific causation opinions lack scientific support.[2]  Plaintiffs further admit that the six epidemiological studies on which Dr. Sawyer relies "are not consistent nor well-described in their methodology when using days of exposure."  Illinois Plaintiffs' Opp. at 11.  Accordingly, Dr. Sawyer should not be permitted to offer specific causation opinions based solely on this admittedly inconsistent and poorly-described data.[3]

*Third*, Dr. Sawyer's specific causation opinion should be excluded because Dr. Sawyer did not consider numerous alternative risk factors for Plaintiffs' NHL.  As Plaintiffs concede, Dr. Sawyer did not conduct a full differential etiology in the Wave 2 cases.  Illinois Plaintiffs' Opp. at 4, 11; Plaintiff Seidl's Opp. at 2.  In reaching his so-called specific causation opinions, Dr. Sawyer largely ignored Plaintiffs' predisposing genetics, family histories of cancer, occupational exposures to other chemicals, and other prominent risk factors for NHL—such as obesity and smoking.  *See* Motion at 11-12.  By omitting a fulsome analysis of Plaintiffs' potential risk factors or deferring such an analysis to other experts, Dr. Sawyer relinquished any ability to offer a specific causation opinion.  *See, e.g., Marmo v.*

---

[2] Plaintiffs claim that "expert testimony will be helpful to explain how to compare the Plaintiffs' exposure to the epidemiological studies."  Illinois Plaintiffs' Opp. at 11; *see also* Plaintiff Seidl's Opp. at 5 ("[H]ere, Dr. Sawyer will only make use of the epidemiology studies as a means of comparing Seidl's dose to the dose in the epidemiology studies.").  They further contend that "[h]aving Dr. Sawyer guide the jury through the nuances inherent in the different epidemiology studies will only aid the jury in understanding each study's characteristics."  Illinois Plaintiffs' Opp. at 11.  However, Dr. Sawyer has repeatedly deferred the detailed analysis, interpretation, and meaning of the epidemiology studies to other experts in this case.  *See, e.g.,* Illinois Plaintiffs' Opp. at 9-10 (arguing that it is "appropriate for Dr. Sawyer to rely upon the detailed assessment of epidemiology by Drs. Ritz, Portier and Weisenburger."); Plaintiff Seidl's Opp. at 5 (admitting that Dr. Sawyer "will be deferring detailed opinions on the epidemiology studies to epidemiologists").  Thus, to the extent any expert is permitted to "guide the jury" through the nuances of the epidemiology studies, it should be one of the experts to which Dr. Sawyer has deferred, not Dr. Sawyer himself.

[3] Additionally, as discussed in more detail in Monsanto's Motion, Dr. Sawyer's specific causation opinions as to Plaintiffs Pecorelli, Seidl, and Schafer should be excluded because the epidemiology studies on which Dr. Sawyer relies do not support his opinions that Roundup caused these Plaintiffs' specific subtypes of NHL.  *See* Motion at 10-11.  Plaintiffs Pecorelli and Schafer do not even attempt to address this argument in their response, and Plaintiff Seidl concedes that the data on which Dr. Sawyer relies did not show a statistically significant increased risk between glyphosate and follicular lymphoma (Plaintiff Seidl's subtype).  *See* Seidl Opp. at 7.  Thus, Dr. Sawyer's opinions with respect to these Plaintiffs should be excluded for the additional reasons discussed in Monsanto's Motion at 10-11.

*Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony.").

**Fourth**, Dr. Sawyer's other miscellaneous opinions do not support his conclusions on causation. Plaintiffs' Oppositions focus on various other opinions that Dr. Sawyer is expected to offer in the Wave 2 trials, including opinions regarding how different types of spray equipment and the use of personal protective equipment can impact Plaintiffs' exposures. *See* Illinois Plaintiffs' Opp. at 2-3, 6; Plaintiff Seidl's Opp. at 2-4. As Dr. Sawyer has expressly conceded, however, the actual amount of Roundup allegedly absorbed in each Plaintiff's body[4], the intensity of any exposure, the type of equipment each Plaintiff used to apply Roundup, Plaintiffs' use of any personal protective equipment, and Plaintiffs' efforts to clean Roundup off of their skins after exposure events are all irrelevant to his counting-of-days, specific causation "analysis." *See* Mot. at Marshall Decl. Ex. 10, Sawyer *Schafer* Dep. at 44:5-24; 47:1-9; 50:2-18; 52:10-53:8; Ex. 1, Sawyer *Cervantes* Rpt. at 6; Ex. 2, Sawyer *Karman* Dep. at 26:21-27:1; Ex. 12, Sawyer *Peterson* Dep. at 29:6-15; Ex. 11, Sawyer *Cervantes* Dep. at 18:10-19:5; Ex. 14, Sawyer *Seidl* Dep. at 34:23-38:3. Thus, these miscellaneous opinions are irrelevant to, and cannot save, Dr. Sawyer's unsupported and improper conclusions on specific causation.

**III.   The Court Should Exclude Dr. Sawyer's Opinions Regarding the George Study.**

Plaintiffs do not dispute that due to multiple flaws in the George study's design (including that the study lacked a histopathological examination; involved a small number of animals, all of which were male that were given a short duration of treatment; and failed to control for solvents), the study has been found by several national and international regulatory agencies—including EPA, IARC, and Germany's BAuA—to be an inadequate study for scientific analysis. Moreover, although Plaintiffs

---

[4] In fact, Dr. Sawyer specifically admits that he did not calculate a dose for any amounts of Roundup or glyphosate that were allegedly absorbed in Plaintiffs' bodies. *See* Ex. 1 to Motion, Sawyer *Cervantes* Rpt. at 6; Ex. 11 to Motion, Sawyer *Cervantes* Dep. at 93:22-25; 96:7-12; Ex. 2 to Motion, Sawyer *Karman* Dep. at 26:21-27:1; Ex. 10 to Motion, Sawyer *Schafer* Dep. at 40:2-41:13. As Dr. Sawyer acknowledges, exposure and absorption are not equivalent concepts: even under his flawed theories, Roundup exposure can be harmful only if it absorbed into the body. *See* Ex. 11 to Motion, Sawyer *Cervantes* Dep. at 93:22-25; 94:1-100:3. Because he did not calculate any absorption dose for any of the Wave 2 Plaintiffs, Dr. Sawyer cannot draw conclusions on specific causation.

contend that Dr. Portier also relies on the George Study in reaching some of his conclusions in this case, *see* Illinois Plaintiffs' Opp. at 14-15, even Dr. Portier has testified that he <u>cannot</u> conclude that glyphosate is a cancer promoter based solely on the George study.  *See* Mot. at Marshall Decl. Ex. 29, Portier *Hardeman* Dep. at 157:19-158:18.  Yet that is effectively what Dr. Sawyer plans to do in this case, relying almost exclusively on the George Study for his unfounded conclusion that Roundup can promote cancer.  In making an assessment under Rule 702, trial courts must look beyond the expert's testimony to ensure that the sources relied upon by the expert in reaching his opinions are reliable.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (affirming district court's exclusion of expert after finding expert's testimony to be "inherently unreliable and unsupported by the facts."); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.") (internal quotations omitted).  Dr. Sawyer's opinions regarding the George study and cancer promotion should be excluded because they are not scientifically reliable.

### IV.   The Court Should Exclude Dr. Sawyer's Opinions Regarding Trace Chemicals.

Plaintiffs claim that it is "necessary" for Dr. Sawyer to consider the trace chemicals included in Roundup.  Illinois Plaintiffs' Opp. at 15.  Yet Plaintiffs do not dispute that Dr. Sawyer did not calculate any doses of these chemicals to which Plaintiffs were allegedly exposed.  Nor have Plaintiffs pointed to any scientific evidence suggesting that exposure to Roundup is a cancer risk *because of these trace chemicals*.  As discussed in more detail in Monsanto's Motion (and as demonstrated by Dr. Sawyer's testimony during the *Pilliod* trial), the only purpose for testimony regarding trace chemicals is to distract, confuse, and provoke fear in the jury.  Mot. at Marshall Decl. Ex. 26, *Pilliod* Trial Tr. at 3131:6-3132:16 ("A: [Ethylene oxide] is a sterilization gas.  It kills every type of biological life on earth . . . if I had a little air in the bottle, as one of our jurors has sitting there, that over time that air in the bottle, the ethylene oxide would accumulate in that air space.  Q: . . . So this actually has Roundup that's been sitting in here for a while.  If I were to open up this cap, what would happen?  A:  There would be ethylene oxide escaping from that head space.").  Dr. Sawyer's unsupported comments on these trace chemicals are entirely speculative, inappropriate, and inadmissible.  *See Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("Rule 702 requires that expert testimony

relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs."); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) (noting that it would be "well within the discretion of the trial judge to exclude" expert opinions that would not be "of any real assistance to the trier of fact.").

### V. The Court Should Exclude Dr. Sawyer's Opinions on Monsanto Company Documents and Regulatory Duties.

Plaintiffs concede that Dr. Sawyer will not "testify about the intent or state of mind of Monsanto" and that Dr. Sawyer "will not be offering regulatory opinions or opine about labeling requirements." Illinois Plaintiffs' Opp. at 16, 17. Plaintiffs claim, however, that Dr. Sawyer may discuss internal Monsanto documents, about which he has no personal knowledge, "to provide proper context to corporate emails and memoranda." *Id.* at 17. Plaintiffs' arguments are unavailing.

Having an expert narrate company documents, under the guise of explaining terminology or providing context, is improper expert testimony because it invades the province of the jury. *See Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate documents, which is not helpful to the jury."); *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 4961455, at *4 (S.D.N.Y. Oct. 10, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury traditionally relies upon to answer the sort of questions that a jury traditionally answers."). Dr. Sawyer's toxicological expertise affords him no special skill in interpreting a Monsanto employee's use of scientific terms or studies, and there is no need for an expert to interpret Monsanto company documents that speak for themselves. Accordingly, the Court should preclude Dr. Sawyer from offering any opinions related to Monsanto company documents.

### CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. William Sawyer.

| | | |
|---|---|---|
| 1 | DATED: April 16, 2021 | Respectfully submitted, |
| 2 | | /s/ K. Lee Marshall |
| 3 | | K. Lee Marshall |
| 4 | | BRYAN CAVE LEIGHTON PAISNER LLP |
| | | Three Embarcadero Center, 7th Floor |
| 5 | | San Francisco, California 94111 |
| | | Tel:     415-675-3400 |
| 6 | | klmarshall@bclplaw.com |
| 7 | | |
| 8 | | Attorneys for Defendant Monsanto Company |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of April, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ K. Lee Marshall