**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

*Attorneys for Defendant*
MONSANTO COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.,* 3:16-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:18-cv-07271-VC<br>*Rehak v. Monsanto Co.*, 3:19-cv-01719-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169<br>*Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS BARRY BOYD, LAUREN PINTER-BROWN, AND RON SCHIFF ON RULE 702 GROUNDS**<br><br>Hearing date: May 28, 2021<br>Time: |

**INTRODUCTION**

Plaintiffs' Oppositions[1] confirm that their specific causation experts fall far short of the admissibility standard this Court established in Pretrial Order 85 ("PTO 85") (ECF No. 2799). Contrary to Plaintiffs' claims, these experts have *not* followed the same methodology as the experts previously admitted in the initial federal trials, despite adopting the label of "differential diagnosis" or "differential etiology." Even in those cases, the Court characterized the admissibility of Plaintiffs' experts as a "close question." Yet despite the clear roadmap the Court provided in PTO 85, here, the Wave 2 experts have strayed far from the methodology the Court previously held "barely" admissible.

Critically, unlike the specific causation opinions the Court previously admitted, Drs. Schiff and Pinter-Brown in particular do not attempt to quantify the amount of glyphosate to which Plaintiffs were exposed, and they do not rule out or weigh other potential risk factors. Instead, for these experts, the only relevant question is whether Plaintiff was exposed to some threshold amount of Roundup®-branded products ("Roundup") and later developed NHL. All three experts' testimony confirms that they do not rule out potential alternative causes; rather, if more than one significant risk factor is present they will simply conclude that Plaintiff's NHL was "multifactorial." And none of the Wave 2 experts has offered a means to address idiopathy—*i.e.*, "differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless"[2]—which the Court previously held is required for admissibility.

Plaintiffs' Oppositions double down on these fatal methodological flaws, insisting that their experts are not required to rule out alternative causes or account for idiopathy despite the Court's rulings and clearly-established California law to the contrary. The methodology Plaintiffs have

---

[1] Plaintiffs filed three different oppositions to Monsanto's Motion (ECF No. 12789) across the Wave 2 cases: (1) an opposition to Monsanto's motion to exclude Drs. Pinter-Brown and Schiff ("Pinter-Brown and Schiff Opp."), which Plaintiffs filed six identical copies of on the MDL docket (ECF Nos. 12884, 12885, 12886, 12887, 12888, 12889) , (2) an opposition to Monsanto's motion to exclude Dr. Boyd ("Boyd Opp.) (ECF No. 12897), and (3) a "joint" opposition related to all of Plaintiffs' specific causation experts ("Joint Opp.") (ECF No. 12896). Many of these filings contain identical arguments, particularly regarding idiopathy. Consistent with Monsanto's approach in its opening brief (ECF No. 12789), and for ease of review by the Court, Monsanto is filing a single brief replying to all three of Plaintiffs' specific cause oppositions.

[2] *See* PTO 85 at 4.

- 1 -
REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS BARRY BOYD, LAUREN PINTER-BROWN, AND RON SCHIFF ON RULE 702 GROUNDS
3:16-MD-02741-VC

offered in Wave 2 falls below the standard set by the Court's prior rulings, and Plaintiffs' Oppositions betray their belief that because the Court has previously admitted specific causation experts in this litigation, their new specific causation experts should not be subject to scrutiny.

**I.   Plaintiffs' Experts Have Not Conducted the Same Specific Causation Analysis the Court Ruled Barely Admissible in PTO 85.**

All of the Wave 2 experts have failed to meet the minimum standards for admissibility established by this Court in PTO 85. In that order, the Court held that Plaintiffs' experts "barely inched over the line" because their "core opinions" were that (1) "plaintiffs had no other significant risk factors" and (2) "were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL." PTO 85 at 6. That is not what the experts have done here. Instead, Drs. Pinter-Brown and Schiff have not attempted to quantify the amount of glyphosate Plaintiffs were exposed to, despite ruling in Roundup as a potential cause on that basis. *See* Mot. at 11, 15; *see also* Imbroscio Decl. (ECF No. 12789), Ex. 3, Pinter-Brown (*Peterson*) Dep. at 132:2-10; *id.*, Ex. 6, Schiff (*Rehak*) Dep. at 66:9-72:9.[3] In fact, Dr. Pinter-Brown rules in glyphosate as a substantial factor based on the two days per year/ten lifetime days thresholds from the Eriksson and McDuffie studies, which the Court has previously rejected[4] and Plaintiffs ignore in their Oppositions. *See* Mot. at 15. Worse still, none of the Wave 2 experts attempt to rule out other risk factors or weigh them against each other, instead concluding that every potential risk factor—which always includes Roundup—is a substantial contributing cause. Accordingly, the opinions of Plaintiffs' experts in Wave 2 have *neither* of the features the Court held necessary for admissibility in PTO 85.

Plaintiff's Opposition only confirms that they have fundamentally misunderstood the Court's prior ruling. For example, Plaintiffs' insistence that their experts need not consider every

---

[3] As Monsanto noted in its Motion, Dr. Schiff's exposure assessment regarding Ms. Rehak was particularly egregious, as he relied on Ms. Rehak's speculative, layperson claims of secondary exposure, and admitted that he had no foundation to assess that exposure. *See* Mot. at 13. Plaintiffs' assertion in their Opposition that Dr. Schiff also noted that Ms. Rehak sprayed Roundup personally does nothing to remedy this problem, as Dr. Schiff expressly considered Ms. Rehak's alleged secondary exposure when forming his opinions, *id.*, and did not provide any testimony that Ms. Rehak's personal use of Roundup *by itself* would be sufficient to rule in Roundup as a substantial contributing factor.

[4] *See* PTO 85 at 7-8.

- 2 -

REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS BARRY BOYD, LAUREN PINTER-BROWN, AND RON SCHIFF ON RULE 702 GROUNDS
3:16-MD-02741-VC

"conceivable cause" and need not "track down all . . . remote unsubstantiated causes" misses the point and ignores binding Ninth Circuit precedent. Pinter-Brown and Schiff Opp. at 14. First, the alternative causes that Plaintiffs' experts failed to rule out are hardly "remote" or "unsubstantiated" because Plaintiffs' experts themselves identify them as causative risk factors. *See, e.g.*, Mot. at 11 (previous testimony that benzene and PCBs are "across the board causative risk factors" for NHL); *id.* at 12 (age, smoking history, and weight); *id.* at 14 (family history of cancer). Second, Ninth Circuit law is clear that the first step of a reliable differential diagnosis requires an expert to "compile a comprehensive list" of possible causes. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057-58 (9th Cir. 2003) (expert must first "rule[] in *all* of the potential hypotheses that might explain a patient's symptoms") (emphasis added). Indeed, an expert's list must include even "rare" possible causes to ensure that, when the expert evaluates and "rules out" potential causes on the list during the second step of the differential diagnosis, rare—but nonetheless possible—causes "are not overlooked." *Id.*

Resisting this conclusion, Plaintiffs suggest that *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017), stands for the proposition that experts need not consider every potential risk factor for their opinions to be admissible. *See* Pinter-Brown and Schiff Opp. at 12-13. But *Wendell* affirms that, at the first step of a differential diagnosis, an expert must "assume[] the pertinence of *all* potential causes." 858 F.3d at 1234 (emphasis added). The passage Plaintiffs quote concerns the *second* step of a reliable differential diagnosis—when an expert examines each potential cause on the "comprehensive" list and determines which is the most likely cause. At that second step, an expert need not definitely "rule out" all potential causes but one, so long as the expert has a sound basis for concluding that one particular cause is "the most likely." *Id.*; *see also Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 577 (2015).

Plaintiffs' experts have failed both steps of a reliable differential diagnosis. They have not started with a comprehensive list of all possible causes, which Plaintiffs disclaim any responsibility to do, and they have not examined and weighed all potential causes to determine which cause(s) were the most likely. Plaintiffs' Opposition asserts that something less is permissible: as long as an individual is exposed to a threshold amount of Roundup, all their experts need to do is pay lip service

to alternative causes in order to satisfy the standards the Court articulated in PTO 85. For example, Plaintiffs parrot Dr. Schiff's testimony that his expert report discusses potential alternative causes. *See* Pinter-Brown and Schiff Opp. at 6. But merely mentioning alternative causes is not sufficient for a reliable differential diagnosis,[5] and Dr. Schiff's testimony confirms that the existence of potential alternative causes "makes no difference" to him because "non-Hodgkin lymphoma may well be multifactorial . . . so it doesn't matter." Mot. at 11. Even if a disease has multiple causes, an expert "cannot merely conclude that all risk factors for a disease are substantial contributing factors in its development." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010). However, that is precisely what Dr. Schiff has done in the Wave 2 cases.

Most strikingly, Plaintiffs assert that Dr. Schiff testified he would not *always* conclude that Roundup was a substantial cause of an individual's NHL, and tout this as evidence that his opinion is reliable. *See* Pinter-Brown and Schiff Opp. at 10. But Dr. Schiff testified that the only circumstances in which he would exclude Roundup as a substantial contributing factor are when "the lymphoma manifested and was diagnosed *before the Roundup exposure*, or very early after the onset of Roundup exposure . . . ." *Id.* (emphasis added). In other words, Dr. Schiff testified that he would only exclude Roundup as a substantial contributing factor in cases where it was *metaphysically impossible*, in Dr. Schiff's view, for Roundup to have caused the individual's NHL. Plaintiffs' position that this testimony supports the admission of Dr. Schiff's opinions demonstrates just how low they mistakenly believe this Court has set the bar for admissibility.

Dr. Pinter-Brown's opinions contain similar flaws that Plaintiffs' Oppositions fail to adequately address. For example, Plaintiffs cite short, largely copy-pasted passages from Dr. Pinter-Brown's expert reports as evidence that she considered potential alternative causes for James Peterson and Michael Pecorelli,[6] but make no effort to address Dr. Pinter-Brown's *testimony* confirming that she would find Roundup to be a substantial contributing factor no matter what potential alternative

---

[5] *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").

[6] *See* Pinter-Brown and Schiff Opp. at 10-11.

- 4 -
REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS BARRY BOYD, LAUREN PINTER-BROWN, AND RON SCHIFF ON RULE 702 GROUNDS
3:16-MD-02741-VC

causes a plaintiff had. *See* Mot. at 15; *see also* Imbroscio Decl., Ex. 14, Pinter-Brown (*Pecorelli*) Dep. at 115:20-116:3 ("Q. If Mr. Pecorelli had autoimmune disorder and had the same exposure to Roundup, in that scenario would you opine that his Roundup was likely a substantial contributing factor to his non-Hodgkin lymphoma? A. I would opine if -- if he had the appropriate exposure, as he did, that it was a significant contributing factor to the development of his lymphoma."). Plaintiffs similarly do not address Dr. Pinter-Brown's failure to investigate whether other chemicals she considers potential risk factors, including 2,4-D, Sevin Insect Killer, diazinon, and Weed B Gon, could have been substantial contributing factors to Mr. Pecorelli's NHL. *See* Mot. at 16. And Plaintiffs argue that Dr. Pinter-Brown's personal experience developing film excuses her failure to investigate Mr. Peterson's exposure to chemicals used to develop his own film, despite Dr. Pinter-Brown's admissions that she knew nothing about the chemicals Mr. Peterson used and that she had no information about what level of exposure Mr. Peterson might have had to those chemicals. *See* Mot. at 16.

Throughout their Opposition, Plaintiffs take the position that any acknowledgment of a potential risk factor—no matter how casual or cursory, is sufficient to insulate their experts from scrutiny. That is not the law, and that is not consistent with this Court's rulings in PTO 85. The Court should reject Plaintiffs' gambit to turn the Rule 702 analysis into a box-checking exercise devoid of any serious scrutiny.

**II.     Plaintiffs' Oppositions Ignore the Court's Prior Statements Regarding Idiopathy.**

Plaintiffs do not meaningfully defend their experts' failure to address the undisputed fact that the vast majority of NHL cases have no known cause. *See, e.g.*, Mot. at 18. For example, Plaintiffs do not deny that Dr. Boyd's report fails to address idiopathy *at all*. *See* Boyd Opp. at 3-4. The same with Dr. Pinter-Brown: Plaintiffs admit that her expert reports acknowledge that the cause of NHL "is unknown in most patients," but do not address her failure to explain why she reached her conclusions in light of her position that most cases have no known cause. *See* Pinter-Brown and Schiff Opp. at 14. And with respect to Dr. Schiff, Plaintiffs attempt to defend his testimony that the majority of his patients had no known cause of NHL at the time he treated them by claiming that "his

awareness of the association between glyphosate and Roundup did not occur until after he retired in the Spring of 2015." *Id.* at 14. But Plaintiffs' argument ignores the fact that the studies Dr. Schiff now relies on were published well before Dr. Schiff retired, *see* Mot. at 19, and does not address in any way Dr. Schiff's continued failure to consider whether the cause of a plaintiff's NHL might be idiopathic.

Finally, Plaintiffs conclude by claiming that their experts "need not exclude idiopathy," *see* Boyd Opp. at 3, despite the Court's clear instruction in PTO 85 that "an expert *must* have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," *see* PTO 85 at 4 (emphasis added). Plaintiffs and their experts ignore this directive, and Plaintiffs' Oppositions instead close with a lengthy, page-long quotation from PTO 85 that does not address idiopathy at all, asserting that the Court has already ruled on this argument. *See* Pinter-Brown and Schiff Opp. at 15; *see also* Boyd Opp. at 4; Joint Opp. at 4. But Plaintiffs cannot ignore idiopathy simply because the court has previously found different opinions from different experts regarding different plaintiffs to be admissible. It is true that the Court concluded the Bellwether experts had "provided a basis for their conclusions that the [bellwether] plaintiffs f[e]ll into the category of Roundup users who developed NHL" because they used the product. PTO 85 at 6. However, Plaintiffs apparently believe this finding means that the issue of idiopathy is resolved for all future Plaintiffs in this litigation, notwithstanding the fact that the Wave 2 Plaintiffs have offered different experts who have failed to address idiopathy entirely.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude these specific causation experts on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in each of their cases.

Dated: April 16, 2021

By:   */s/ Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
Covington & Burling LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorney for Defendant Monsanto Company

- 7 -
REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS BARRY BOYD,
LAUREN PINTER-BROWN, AND RON SCHIFF ON RULE 702 GROUNDS
3:16-MD-02741-VC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of April, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                */s/ Michael X. Imbroscio*