**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.,* 3:16-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:18-cv-07271-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169 | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE SPECIFIC CAUSATION TESTIMONY OF DR. DENNIS WEISENBURGER**<br><br>Hearing date: May 28, 2021<br>Time: |

**INTRODUCTION**

Dr. Weisenburger's proposed testimony in the Wave 2 cases does not satisfy the standards this Court set in Pretrial Order 85 ("PTO 85"). To reach his desired opinions here, Dr. Weisenburger disregarded findings from *his own* study in contravention of *his own* stated methodology, and failed to investigate a number of potential alternative causes—many of which Dr. Weisenburger has testified are risk factors for NHL. Plaintiffs' Opposition does nothing to remedy or address these flaws, opting to largely ignore the many deficiencies identified in Monsanto's Motion. Plaintiffs effectively take the position that the Court's prior decision to admit Dr. Weisenburger's testimony in one case forever forecloses future challenges in other cases, even when—as here—his testimony deviates significantly from what the Court "barely" admitted before.

**I.     Dr. Weisenburger's Treatment of Mr. Cervantes' Welding History Contradicts His Own Stated Methodology and Confirms that His Opinions Are Litigation Driven.**

Plaintiffs seek to minimize the impact of Dr. Weisenburger's failure to bring analytical rigor to his methodology in this case: "to expect an expert to recall every single study or publication they have ever published . . . is unreasonable." Opp. at 4. As a preliminary matter, Plaintiffs cannot get their story straight regarding Dr. Weisenburger's failure to examine the literature related to welding. First they assert that it is unreasonable to expect Dr. Weisenburger to remember *his own study* linking welding and NHL, and that it is similarly unreasonable to expect Dr. Weisenburger to investigate any connection between welding and NHL because such research "may not even be available or exist." *Id.* at 5. But in the *very next sentence* they argue that Dr. Weisenburger's failure to investigate this potential alternative cause was reasonable because he already "know[s] the literature fairly well." *Id.* It is unclear whether Plaintiffs ultimately argue that Dr. Weisenburger should not have had to investigate welding as a potential cause in the first place, or whether Dr. Weisenburger's asserted mastery of the literature—which apparently did not include his own publication—eliminated the need for such an investigation. Both cannot be true. And, in fact, neither are. Dr. Weisenburger's failure to address this acknowledged risk factor simply cannot be squared with any reliable methodology

1  under Rule 702.[1]

2  In any event, Plaintiffs' argument misses the point: Dr. Weisenburger's failure to consider a potential alternative cause (welding) his own study linked to NHL demonstrates the unreliability of his opinions not because he failed a memory test, but because his testimony starkly contradicts his work outside of litigation.  Plaintiffs do not even address the fact that the odds ratio in Dr. Weisenburger's own study showed a *higher* risk of NHL associated with welding than the studies he purports to rely on showed for glyphosate, nor do they address Dr. Weisenburger's prior testimony that his methodology relies primarily on odds ratios from epidemiology studies to assess causation. *See* Mot. at 2.  Dr. Weisenburger's own testimony confirms that his casual dismissal of his own study's finding because it is just a "single study," which Plaintiffs' Opposition doubles down on (at 4), contradicts his own stated methodology.  There can be no serious question that Dr. Weisenburger would embrace a similar finding regarding glyphosate as supporting his conclusions—indeed, the odds ratios for the elevated risk associated with welding would be greater than the studies Dr. Weisenburger actually relies on as to glyphosate.  But because it undermines his litigation-driven, pre-determined conclusion that Roundup®-branded products ("Roundup") were the cause, Dr. Weisenburger belatedly attempted salvage his opinions by minimizing his study's finding. *See* Mot. at 2-3.  That is not a scientific methodology; it is a post fact justification for an obvious failure of methodology.

Dr. Weisenburger's treatment of Mr. Cervantes' welding history provides the clearest evidence of how he simply has not made any serious attempt to "rule out" or even investigate potential alternative causes.  He starts with the conclusion that Roundup was the cause, and then seeks to dress that opinion in the trappings of scientific analysis—and insulate it from scrutiny—by paying lip

---

[1] Plaintiffs suggest (at 4) that this Court somehow previously blessed such sloppiness: "[t]his Court has held before that Dr. Weisenburger's 'failure to mention data in his expert report, even though he is an author of that study' does not 'deem his epidemiology opinion unreliable.'"  But Dr. Weisenburger did not include the NAPP data in his expert report because it was not published at that time and he only included published data in his report. *See In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1142 (N.D. Cal. 2018).  He did not disclaim that he had ever done any such research or fail to investigate entirely, as he did here.  Plaintiffs cannot twist the Court's prior discussion regarding the NAPP data to give Dr. Weisenburger license to ignore his own studies as fits his purposes in any specific case.

service to other potential causes. Dr. Weisenburger's approach in this case strays far from the testimony this Court previously admitted. *See* PTO 85 at 4 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself"). Simply noting the presence of other risk factors does not constitute "analysis" and certainly does not comport with this Court's expectations regarding reliable methodology under Rule 702. Dr. Weisenburger's opinions in these cases should be excluded.

**II.   Dr. Weisenburger Failed to Consider or Weigh Other Alternative Causes.**

Plaintiffs' Opposition also does not rehabilitate Dr. Weisenburger's failure to consider other potential alternative causes.[2] For example, Plaintiffs assert (at 5) that Dr. Weisenburger "did" consider Mr. Cervantes' exposure to PCB and benzene because Mr. Cervantes' employer was required to follow OSHA standards. But, as Monsanto explained in its Motion (at 4, n. 5), Dr. Weisenburger's attempt to rely on OSHA standards is belied by his testimony that: (1) he was not aware of the specific allowable exposures as defined by OSHA during Mr. Cervantes' employment, (2) he did not know if occupational exposure to these chemicals at OSHA's allowable levels increased Mr. Cervantes' risk of NHL, and (3) he had not reviewed any literature regarding benzene or PCBs in forming his opinions in this case. Dr. Weisenburger's failure to investigate this exposure in any meaningful way is particularly problematic in light of his testimony that he *does* consider PCBs and benzene to be risk factors for NHL. *Id.* at 4. Remarkably, Plaintiffs also do not respond *at all* to Dr. Weisenburger's failure to consider Mr. Cervantes' prior belief and assertion that his NHL was caused by methylene chloride in his drinking water, despite the fact that Dr. Weisenburger himself considers methylene chloride to be a risk factor for NHL. *See* Mot. at 4-5.

---

[2] Plaintiffs also argue that *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (2017) and *Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal. App. 4th 555 (2014) stand for the proposition that Dr. Weisenburger does not need to consider every potential risk factor for his opinion to be admissible. Monsanto explains why this argument is incorrect in its contemporaneously filed reply in support of its motion to exclude Drs. Boyd, Pinter-Brown, and Schiff (at 3-4). Out of respect for the Court's time Monsanto will not repeat all those arguments here, but emphasizes that Plaintiffs' argument is particularly incredulous considering most of the proposed risk factors discussed in the motion are ones *their experts specifically* identify as causal.

- 3 -
REPLY IN SUPPORT OF MOTION TO EXCLUDE THE SPECIFIC CAUSATION TESTIMONY OF DR. DENNIS WEISENBURGER
3:16-MD-02741-VC

Dr. Weisenburger similarly failed to investigate or consider other chemical exposures for Mr. Karman, Mr. Peterson, and Mr. Pecorelli. *See id.* at 6,-7.

And with respect to the causes Dr. Weisenburger *did* conclude were contributing factors, such as Mr. Cervantes' family history of cancer, Plaintiffs' Opposition makes no attempt to justify Dr. Weisenburger's testimony that it is "just common sense" that such causes are in addition to, rather than instead of, Roundup.[3] In fact, Plaintiffs (at 6) encourage the Court to simply accept Dr. Weisenburger's *ipse dixit* proclamation on this critically important question, as a matter of "epidemiologic principle" based on Dr. Weisenburger's "over forty (40) years of experience." By necessity, Plaintiffs ignore that Dr. Weisenburger could not cite any authority for that principle, and his admission that he is not aware of any studies supporting his claim that substantial causes were automatically "additive." *See* Mot. at 5; *see also Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) (even if a disease has multiple causes, an expert "cannot merely conclude that all risk factors for a disease are substantial contributing factors in its development.").

Plaintiffs' Oppositions take the position that Dr. Weisenburger is not required to weigh or rule out potential alternative causes or explain the basis for his conclusions that if a Plaintiff's NHL had multiple causes, Roundup will always be a substantial contributing factor. The Court should reject these arguments as flatly inconsistent with Ninth Circuit precedent and the Court's prior rulings. *See, e.g.*, *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057-58 (9th Cir. 2003) (expert must first "rule[] in *all* of the potential hypotheses that might explain a patient's symptoms") (emphasis added); *id.* at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation."); PTO 85 at 4.

**CONCLUSION**

For the foregoing reasons, the Court should grant Monsanto's motion to exclude the specific

---

[3] With respect to Dr. Weisenburger's "ruling in" of Roundup, Plaintiffs do not even attempt to defend—or indeed even acknowledge—his continued violation of PTO 85 in opining that an individual's risk of NHL doubles if they use Roundup for greater than two days per year or 10 days in their lifetime. *See* Mot. at 8.

- 4 -
REPLY IN SUPPORT OF MOTION TO EXCLUDE THE SPECIFIC CAUSATION TESTIMONY OF DR. DENNIS WEISENBURGER
3:16-MD-02741-VC

1  causation testimony of Dr. Weisenburger on Rule 702 and *Daubert* grounds and grant summary
2  judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert
3  opinion to support specific causation in each of their cases.

Dated: April 16, 2021

By:    */s/ Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
Covington & Burling LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorney for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of April, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                          */s/ Michael X. Imbroscio*