**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
|---|---|
| | Case No.: 3:16-md-02741-VC |
| *Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.,* 3:16-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:18-cv-07271-VC<br>*Rehak v. Monsanto Co.*, 3:19-cv-01719-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169<br>*Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | **DEFENDANT MONSANTO COMPANY'S RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO'S CASE SPECIFIC EXPERT WITNESSES**<br><br>Hearing date: May 28, 2021<br>Time: |

**INTRODUCTION**

Plaintiffs' Motion asks the Court to exclude all of Monsanto's case-specific experts on *Daubert* grounds without citation to any evidence or authority, without identifying any specific testimony or opinions they assert are unreliable or inadmissible, and without identifying which experts they are asking the Court to exclude. But even a passing examination of the experts' reports—which Plaintiffs do not cite to and did not submit to the Court until well after the filing deadline—reveals that Monsanto's experts have offered admissible specific causation opinions based on a careful and thorough consideration of both the existing scientific data related to glyphosate and the medical history, including risk factors for NHL, of the individual Plaintiffs. Plaintiffs also repeat the argument that the Court's prior rulings bar Monsanto from offering "new" experts that give general causation opinions—an assertion the Court flatly rejected in Pretrial Order 180. Plaintiffs' Motion should be denied in full.

**ARGUMENT**

Plaintiffs appear to advance two principle arguments: (1) that Monsanto's case-specific experts should not be permitted to offer general causation opinions, and (2) that Monsanto's experts should be excluded under *Daubert*. Neither argument is credible.

***First***, Plaintiffs rest their Motion on the incorrect assumption that Monsanto cannot present general causation expert testimony from any expert who did not testify at the 2017 *Daubert* proceedings. Although such a limitation applied in the initial federal trials, it does not apply beyond those cases, as this Court previously held and Plaintiffs simply ignore. The Court has expressly rejected the argument they repeat here that PTO 81 bars Monsanto's experts from offering general causation opinions. *Compare* Letter Brief re General Causation Experts (ECF. No. 6142) (arguing that Monsanto's experts should be excluded because "most of the disclosed experts (both general and case-specific) provide new general causation opinions not subjected to the previous 2-year *Daubert* proceeding."); *with* Pretrial Order No. 180 (ECF. No. 6390) (rejecting Plaintiffs' arguments and holding that "[T]he parties are not limited – in Giglio's case or any other Wave 1 case – to the general-causation experts called during the *Daubert* proceedings in 2017. ***That***

*limitation was intended to apply only to the bellwether cases*") (emphasis added).  As such, there is no basis to limit Monsanto's experts in this respect at this juncture.

***Second***, Plaintiffs assert that "none of Monsanto's new specific causation experts should be permitted to opine about whether Roundup caused any Plaintiffs' NHL because none of them applied a valid differential methodology."  Mot. at 3.  But Plaintiffs do not even describe the opinions or testimony they object to, let alone provide citations to the experts' reports.[1]  Nor do they cite to a single case supporting their position.  In fact, Plaintiffs did not even attach the reports they complain about to their Motion, only later opting to file the reports with a declaration[2] four days after their brief was due.  Plaintiffs also do not identify which of Monsanto's experts offer testimony they are asking the Court to exclude, even though *over half* of Monsanto's experts, including Dr. Earl Creech, Matthew Call, Brian Daly, Bradley D. Hanson, Dr. Kassim Al-Khatib, Dr. Alex LeBeau, Dr. Joseph M DiTomaso, Dr. Robert Phalen, and Marck Katchen have offered case-specific opinions on exposure, industrial hygiene, and other topics that are unrelated to the arguments Plaintiffs present in their Motion.  Plaintiffs' Motion is devoid of analysis or authority and should be denied on these bases alone.

Further, even a cursory examination demonstrates that Monsanto's experts are well-qualified and have offered admissible opinions regarding specific causation in the Wave 2 cases.  Plaintiffs' blanket criticism (at 3) that "none of [Monsanto's experts] applied a valid differential methodology" because each expert "concluded that Roundup *generally*, cannot cause NHL" amounts to the assertion that Monsanto's experts cannot offer admissible specific causation opinions unless they opine that Roundup®-branded products ("Roundup") are capable of causing NHL—one of the core disputed issues in this litigation.  But that is not what a valid differential diagnosis requires.  A differential diagnosis proceeds in two steps.  In step one, the expert must "rule in" all potential

---

[1] Plaintiffs similarly complain (at 2) that Monsanto's experts have offered "sweeping" "new" general causation opinions without identifying any opinions in any of the experts' reports that they claim are new.  In any event, the premise of Plaintiffs' argument—that Monsanto is barred from offering "new" general causation opinions—is belied by the Court's ruling in PTO 180.

[2] Plaintiffs' declaration attaching the reports did not provide any explanation for Plaintiffs' delay, nor did it explain why Plaintiffs neglected to cite the reports in their Motion.  *See* Declaration of Rebecca Fredona (April 6, 2021) ("Fredona Decl.") (ECF No. 12910).

1  causes, and "compile a comprehensive list of hypotheses that might explain the set of salient
2  clinical findings under consideration." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir.
3  2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). Then, in the
4  second step, the expert must "rule out" the possible causes using a scientific method until only the
5  most likely cause remains. *Id.*

6  Here, Monsanto's experts have thoroughly explained the bases for their opinions that
7  Roundup does not cause NHL—*i.e.*, why they did not "rule in" Roundup as a potential cause at the
8  first step of the differential diagnosis. *See* Fredona Decl., Ex. 3, Expert Report of Dr. Jeffrey
9  William Craig at 17-21; *id.*, Ex. 4, Expert Report of Dr. Ran Reshef at 1-20; *id.*, Ex. 5, Expert
10 Report of Dr. Celeste Bello at 6-9; *id.* Ex. 6, Expert Report of Dr. Bruce A. Woda at 10-19; *id.*, Ex.
11 12, Expert Report of Dr. Lawrence M. Weiss at 5-13; *id.*, Ex. 14, Expert Report of Dr. Timothy S.
12 Fenske at 12-22; *id.*, Ex. 16, Expert Report of Dr. Graham W. Slack at 8-14; *id.*, Ex. 23, Expert
13 Report of Dr. Mathew J. Matasar at 5-12.

14 The expert reports also explain in great detail, consistent with the second step of a reliable
15 differential diagnosis, the experts' case-specific assessments of the cause of each Plaintiff's NHL.
16 *See* Fredona Decl., Ex. 3, Expert Report of Dr. Jeffrey William Craig at 26 ("The best explanation
17 for Mr. Cervantes' DLBCL is the age and time-related accumulation of mutations due to a lifetime
18 of lymphoctye division, resulting ultimately in a clonal expansion and clinical cancer."); *id.*, Ex. 4,
19 Dr. Ran Reshef (*Cervantes*) Expert Report at 1, 21-25 ("[Mr. Cervantes] had several strong and
20 well-accepted risk factors to develop NHL, including occupational exposure to benzene and
21 possibly other carcinogens, first-degree family history of NHL and obesity"); *id.*, Ex. 11, Expert
22 Report of Dr. Ran Reshef (*Rehak*) at 1, 21-24 ("Ms. Rehak's lymphoma . . . was most likely caused
23 by random genetic mutations. The role of other factors in specific causality, including smoking and
24 family history of cancer, cannot be ruled out"); *id.*, Ex. 5, Expert Report of Dr. Celeste Bello
25 (*Peterson*) at 9-10 (describing Mr. Peterson's risk factors for NHL); *id.*, Ex. 17, Expert Report of
26 Dr. Celeste Bello (*Karman*) at 9-10 (same); *id.*, Ex. 6, Expert Report of Dr. Bruce A. Woda
27 (*Peterson*) at 19-25 ("Mr. Peterson had several risk factors for development of NHL including his
28

- 3 -
OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO'S
CASE SPECIFIC EXPERT WITNESSES
3:16-MD-02741-VC

age, gender, increased BMI, and sleep apnea"); *id.*, Ex. 18, Expert Report of Dr. Bruce A. Woda (*Karman*) at 19-26 (discussing Mr. Karman's variety of risk factors for NHL); *id.*, Ex. 12, Expert Report of Dr. Lawrence M. Weiss at 13-15 ("There was a significant family history of cancer and there was a history of smoking, both of which are associated with an increased risk of follicular lymphoma . . . the greatest likelihood in this case is that this lymphoma arose as a result of random replicative errors in the DNA of a lymphoid precursor cell leading to the occurrence of several driver mutations"); *id.*, Ex. 14, Expert Report of Dr. Timothy S. Fenske at 22-28 ("The best explanation for Mr. Pecorelli's MZL is that, like most other cases of lymphoma, it arose from the accumulation of random genetic changes that occurred within lymphocytes over his lifetime, which eventually accumulated to cause lymphoma"); *id.*, Ex. 16, Expert Report of Dr. Graham W. Slack (*Pecorelli*) at 14-19 ("Mr. Pecorelli's disease is likely due to random genetic alterations accumulated over a lifetime and exacerbated by other contributing factors" including smoking history); *id.*, Ex. 24, Expert Report of Dr. Graham W. Slack (*Schafer*) at 14-19 (discussing Mr. Schafer's risk factors for NHL and concluding that "Mr. Schafer's disease is likely due to random genetic alterations accumulated over a lifetime"); *id.*, Ex. 23, Expert Report of Dr. Mathew J. Matasar at 13-14 (discussing Mr. Schafer's risk factors for NHL).[3]

Monsanto's experts have relevant scientific expertise and knowledge, analyzed sufficient facts and data (e.g., Plaintiffs' medical history and relevant scientific literature), reliably applied those facts and data to the Wave 2 Plaintiffs, and their testimony will aid the jury in understanding and assessing the issue of causation. That should be the end of the inquiry. *See* Fed. R. Evid. 702.

---

[3] Monsanto's experts also provide rebuttal opinions in their reports. *See, e.g.*, Fredona Decl., Ex. 5, Expert Report of Dr. Celeste Bello (*Peterson*) at 11; *id.*, Ex. 18, Expert Report of Dr. Bruce A. Woda (*Karman*) at 24-25. Expert rebuttal testimony is meant "to contradict or rebut evidence on the same subject matter" as the opposing party's expert. *See* Fed. R. Civ. P. 26(a)(2)(D). "[R]ebuttal witnesses [may address the initial experts' assertions by questioning their assumptions and methods." *See Mathew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 4272430, at *4 (N.D. Cal. Aug. 15, 2016) (quotation omitted); *see also Perez v. State Farm Mut. Auto. Ins. Co.*, No. 06-cv-01962-JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) (finding rebuttal expert testimony was proper because it "criticizes" and "addresses the methods and analyses provided by [the plaintiff's expert]"); *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-CV-00557-T-27, 2014 WL 1819616, at *2 (M.D. Fla. May 7, 2014) ("a rebuttal expert may appropriately criticize the methodology of an opposing expert").

## **CONCLUSION**

For the reasons explained above, Monsanto respectfully requests that the Court deny Plaintiffs' Motion to Strike Certain General Opinions of Monsanto's Case Specific Expert Witnesses.

Dated: April 16, 2021

By:   */s/ Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
Covington & Burling LLP
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

Attorney for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of April, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                        */s/ Michael X. Imbroscio*