**VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

SUE COFFMAN, as Personal )
Representative of the Estate of Kevin )
Coffman, Deceased, )
      )
     Plaintiff, )
      )
     v. )   Case No. CL20004770-00
      )
MONSANTO COMPANY, *et al.*, )
      )   JURY TRIAL DEMANDED
     Defendants. )
_____)

## DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint, except as set forth below.  As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies.  Monsanto denies – and objects to – allegations by plaintiff that purport to lump Monsanto together with other defendants.  Monsanto responds to this Complaint only on behalf of Monsanto and not on behalf of any other defendant.  Although many paragraphs in the Complaint allege exposure or use of Monsanto products by "Plaintiff," Monsanto nevertheless responds to the allegations in those paragraphs as if they refer to decedent Kevin Coffman.  Silence as to any allegations shall constitute a denial.  By filing this answer, Monsanto preserves – and does not waive – the argument set forth in its Motion to Transfer Venue (filed January 11, 2021).

In response to the allegations in the fourth sentence of the section titled "INTRODUCTION," Monsanto denies that any exposure to Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") and states that the scientific studies upon which the

International Agency for Research on Cancer ("IARC") purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto denies the remaining allegations in the section titled "INTRODUCTION."

1.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegation in the first sentence of paragraph 1 and therefore denies that allegation.  In response to the allegations in the second sentence of paragraph 1, Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability to plaintiff.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 1.  In response to the remaining allegations in paragraph 1, Monsanto states that the cited document speaks for itself and does not require a response.

2.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies those allegations.

3.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies those allegations.

4.      Monsanto denies the allegations in paragraph 4.

5.      Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies those allegations.

6.      Monsanto denies that any exposure to Roundup®-branded products can cause NHL and other serious illnesses and therefore denies those allegations in paragraph 6.  Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  Monsanto lacks information or

knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 and therefore denies those allegations.

7.      Monsanto admits the allegations in the first and last sentences of paragraph 7. The allegations in the second sentence of paragraph 7 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

8.      In response to the allegations in the first sentence in paragraph 8, Monsanto admits that it discovered the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that the Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in the first sentence of paragraph 8.  In response to the final sentence of paragraph 8, Monsanto admits that certain scientific, manufacturing, marketing, and sales decisions regarding Roundup®-branded products were made in the State of Missouri, but states that the terms "important" and "business decisions" are vague and ambiguous, and therefore Monsanto denies the same.

9.      Monsanto denies the allegations in paragraph 9.

10.     The allegations in paragraph 10 set forth conclusions of law for which no response is required.

11.     The allegations in paragraph 11 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

12.     The allegations in paragraph 12 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

13.     The allegations in paragraph 13 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

14.     The allegations in paragraph 14 are directed at a defendant other than Monsanto, so no response from Monsanto is required for these allegations.

15.     The allegation in paragraph 15 regarding Monsanto seeking redress for its grievance is vague and conclusory, comprises attorney characterizations, and is accordingly denied.   The remaining allegations in paragraph 15 set forth conclusions of law for which no response is required.

16.     The allegations in paragraph 16 set forth conclusions of law for which no response is required.

17.     In response to the allegations in paragraph 17, Monsanto denies that it has caused tortious injury to plaintiff and/or decedent.  The remaining allegations in paragraph 17 set forth conclusions of law for which no response is required.

18.     The allegations in paragraph 18 set forth conclusions of law for which no response is required.

19.     The allegations in paragraph 19 set forth conclusions of law for which no response is required.

20.     Monsanto admits the allegations in the first two sentences of paragraph 20.  In response to the third sentence of paragraph 20, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants and that EPA has classified surfactants and adjuvants as inert.  In response to the last sentence of paragraph 20, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.  Monsanto lacks information or knowledge

sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 20 and therefore denies those allegations.

21.     In response to the allegations in paragraph 21, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and its affiliated companies have operations and offices in countries around the world.  Monsanto admits that it has been a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 21.  Monsanto admits that it has been the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improve a farmer's ability to control weeds. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 21 and therefore denies those allegations.

22.     Monsanto admits the allegations in the first sentence of paragraph 22.  Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media.  Monsanto otherwise denies the remaining allegations in paragraph 22.

23.     Monsanto admits the allegations in the first sentence of paragraph 23.  Monsanto denies the allegations in the second sentence of paragraph 23 to the extent they suggest that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

24.     Monsanto admits the allegations in the first sentence of paragraph 24.  Monsanto denies the allegations in the second sentence of paragraph 24.

25.     In response to the allegations in paragraph 25, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  Monsanto denies the remaining allegations in paragraph 25.

26.     Monsanto denies the allegations in paragraph 26.

27.     In response to paragraph 27, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 27 alleges that Monsanto has labeled glyphosate-based or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

28.     In response to the allegations in paragraph 28, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds.  The remaining allegations in paragraph 28 are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 and therefore denies those allegations.

29.     Monsanto admits the allegations in the first sentence of paragraph 29.  Monsanto denies the allegations in the second sentence of paragraph 29 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 29 to the extent that it

suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

30.     In response to the allegations in paragraph 30, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s.  Monsanto denies the remaining allegations in paragraph 30.

31.     Monsanto admits the allegations in the first two sentences of paragraph 31 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA.  Monsanto otherwise denies the remaining allegations in paragraph 31.

32.     In response to the allegations in paragraph 32, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as "trade secrets."  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto denies the remaining allegations in paragraph 32.

33.     Monsanto admits the allegations in paragraph 33.

34.     In response to the allegations in paragraph 34, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  The remaining allegations in paragraph 34 set forth conclusions of law for which no response is required.

35.     The allegations in paragraph 35 set forth conclusions of law for which no response is required.

36.     In response to the allegations in paragraph 36, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale, and distribution in the United States and are registered by the State of California for sale and distribution.

37.     In response to the allegations in paragraph 37, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA.  Monsanto states that the term "the product tests" in the last sentence of paragraph 37 is vague and ambiguous, and Monsanto therefore denies the same.  The remaining allegations in paragraph 37 set forth conclusions of law for which no response is required.

38.     Monsanto denies the allegations in paragraph 38 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 regarding such pesticide products generally.  The remaining allegations in paragraph 38 set forth conclusions of law for which no response is required.

39.     In response to the allegations in paragraph 39, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings.  Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA

posted an October 2015 final report by its standing Cancer Assessment Review Committee

("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely

to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP

issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated

the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to

humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth

of the remaining allegations in paragraph 39 and therefore denies these allegations.

      40.     In response to the allegations in paragraph 40, Monsanto admits that an EPA

review committee classified glyphosate as Class C in 1985 based on limited data and that EPA

changed its classification of glyphosate to Group E based upon a full evaluation of the scientific

evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits

that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect

to the designation of an agent as Group E, but states that EPA repeatedly has concluded that

glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."   EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20.

Monsanto denies the remaining allegations in paragraph 40.

41.     In response to the allegations in paragraph 41, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate.  Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate.  Monsanto denies that EPA's registration of glyphosate or any

glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") studies.  To the extent that the allegations in paragraph 41 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

42.     In response to the allegations in paragraph 42, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product.  Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

43.     Monsanto denies the allegations in paragraph 43 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results.  The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 43 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations also are denied.

44.     In response to the allegations in paragraph 44, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the

individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

45.     In response to the allegations in paragraph 45, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in paragraph 45 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

46.     Monsanto denies the allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that Roundup®-branded products are highly valued by customers because of their efficacy and safety.  Monsanto also admits that the patent for glyphosate expired in the United States in 2000.  The remaining allegations in paragraph 47 are vague and conclusory, comprise attorney characterizations, and are accordingly denied.

48.     In response to the allegations in paragraph 48, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 48 and accordingly denies those allegations.  The remaining allegations in paragraph 48 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

49.     In response to the allegations in paragraph 49, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that has sold glyphosate or glyphosate-based herbicides.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 49 and accordingly denies the same.  The remaining allegations in paragraph 49 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

50.     In response to the allegations in paragraph 50, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products.  This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto.  Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer.  To the extent the subparts of paragraph 50 purport to quote a document, the document speaks for itself and thus does not require any further response.  The remaining allegations in paragraph 50 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

51.     In response to the allegations in paragraph 51, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General.  The assurance speaks for itself and thus does not require any further response.  The remaining allegations in paragraph 51 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

52.     Monsanto denies the allegations in paragraph 52.

53.     In response the allegations in paragraph 53, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations to the extent they suggest that this ruling

was in any way related to plaintiff's claims here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 54, which are not limited as of any specified date, and accordingly denies the same.

55.     In response to the allegations in paragraph 55, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 and therefore denies those allegations.

57.     In response to the allegations in paragraph 57, Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 and therefore denies those allegations.

58.     Monsanto denies the allegations in paragraph 58 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

59.     In response to the allegations in paragraph 59, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts."  Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest available scientific evidence.  Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available.  Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

61.     The allegations in paragraph 61 are vague and conclusory.  To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient

to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

62.     In response to the allegations in paragraph 62, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, the allegations in paragraph 62 are denied.

63.     In response to the allegations in paragraph 63, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

64.     Monsanto denies the allegations in paragraph 64.  The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

65.     In response to the allegations in paragraph 65, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors.  Monsanto further states that regulatory agencies around the world have

reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer.  Monsanto denies the remaining allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA is present or persists in human blood or urine.  Monsanto denies the remaining allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration.  Regulators around the world repeatedly have concluded that glyphosate is not genotoxic.  Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion.  Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers.  The AHS cohort study did not find a positive association between glyphosate and any type of cancer.  Monsanto denies all other allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, and that the Complaint accurately quotes from the identified document, which should be read in context of EPA's precautionary regulatory mandate and the EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

72.     In response to the allegations in paragraph 72, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.  Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal."  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

73.     Monsanto states that the term "toxic" as used in paragraph 73 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity.  Monsanto denies the allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 74.

75.     In response to the allegations in the first sentence of paragraph 75, Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004.  To the extent that the first sentence of paragraph 75 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 75.

In response to the remaining allegations in paragraph 75, Monsanto states that the document speaks for itself and does not require a response.  To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 75.

76.     In response to the allegations in paragraph 76, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 76 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 77 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 77.

78.     In response to the allegations in the first sentence of paragraph 78, Monsanto states that the terms "at all times" and "these studies" are vague and ambiguous, and therefore Monsanto denies the allegations in the first sentence of paragraph 78.  Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling.  Monsanto denies the remaining allegations in paragraph 79.

80.     In response to the allegations in paragraph 80, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-

based herbicides, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification.  Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate.  Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same.  Monsanto denies the remaining allegations in paragraph 84.

85.     In response to the allegations in paragraph 85, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease.  Monsanto further states that the

allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity.

86.     In response to the allegations in paragraph 86, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate.  Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns.  As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops.  A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013).  Monsanto denies the remaining allegations in paragraph 86.

87.     In response to the allegations in paragraph 87, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 87 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 88 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 88.

89.     In response to the allegations in paragraph 89, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-

labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 89 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 89.

90.     In response to the allegations in paragraph 90, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 90 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 90.

91.     In response to the allegations in paragraph 91, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 91 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 92 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion.  To the extent that paragraph 93 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 93.

94.     In response to the allegations in paragraph 94, Monsanto admits that the United States Food and Drug Administration ("FDA") has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 94, Monsanto states that the cited documents speak for themselves and do not require a response.

95.     In response to the allegations in paragraph 95, Monsanto admits that the U.S. Government Accountability Office ("GAO") issued the cited report regarding pesticide residue monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In response to the remaining allegations in paragraph 95, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 95 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 95.

96.     In response to the allegations in paragraph 96, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 96, Monsanto states that the cited documents speak for themselves and do not require a response.  To the extent that paragraph 96 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 96.

97.     In response to the allegations in paragraph 97, Monsanto admits that the FDA has authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues.  In response to the remaining allegations in paragraph 97, Monsanto states that the cited documents speak for themselves and do not require a response.  To

the extent that paragraph 97 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 97.

98.     Monsanto admits the allegations in paragraph 98.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

99.     In response to the allegations in paragraph 99, Monsanto states that the cited document speaks for itself and does not require a response.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

100.     In response to the allegations in paragraph 100, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation.  Monsanto admits the remaining allegations in paragraph 100.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

101.     In response to the allegations in paragraph 101, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 101 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 101.

102.     In response to the allegations in paragraph 102, Monsanto states that the cited document speaks for itself and does not require a response.  To the extent that paragraph 102 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 102.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

103.    Monsanto admits the allegations in paragraph 103.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

104.    Monsanto admits the allegations in paragraph 104.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

105.    Monsanto admits the allegations in paragraph 105.  Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

106.    Monsanto denies the allegations in paragraph 106.

107.    Monsanto incorporates by reference its responses to paragraphs 1 through 106 in response to paragraph 107 of plaintiff's Complaint.

108.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 108.  In response to the allegations in the second sentence of paragraph 108, Monsanto denies that there is any risk of NHL or other serious illness associated with or linked to the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 108 set forth conclusions of law for which no response is required.

109.    In response to the allegations in paragraph 109, Monsanto denies that exposure to Roundup®-branded products or glyphosate causes cancer or other serious illnesses.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer

classification for glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 109 set forth conclusions of law for which no response is required.

110.    In response to the allegations in paragraph 110, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 110 and therefore denies those allegations.

111.    Monsanto denies the allegations in paragraph 111.

112.    Monsanto denies that exposure to Roundup®-branded products and glyphosate exposed decedent to risk of decedent's alleged cancer and denies the remaining allegations in paragraph 112.  Monsanto states, however, that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

113.    Monsanto denies the allegations in the first and last sentences of paragraph 113.  The remaining allegations in paragraph 113 set forth conclusions of law for which no response is required.  Monsanto states, however, that the scientific studies upon which IARC purported to base its classification were all publicly available before March 2015.

114.    In response to the allegations in paragraph 114, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  The remaining allegations in paragraph 114 set forth conclusions of law for which no response is required, consist of attorney characterizations and are accordingly denied, or comprise allegations for which Monsanto lacks information or

knowledge sufficient to form a belief as to the truth of the allegations asserted and therefore denies those allegations.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

115.     The allegations in paragraph 115 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 115.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

116.     The allegations in paragraph 116 set forth conclusions of law for which no response is required.

117.     Monsanto denies the allegations in paragraph 117.

118.     The allegations in paragraph 118 set forth conclusions of law for which no response is required.  To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 118.  Monsanto states that the scientific studies upon which IARC purported to base its cancer classification for glyphosate were all publicly available before March 2015.

119.     Monsanto incorporates by reference its responses to paragraphs 1 through 118 in response to paragraph 119 of plaintiff's Complaint.

120.     In response to the allegations in paragraph 120, Monsanto admits that plaintiff brings a claim for wrongful death but denies any liability to plaintiff.

121.     In response to the allegations in paragraph 121, Monsanto admits that plaintiff purports to bring a claim for strict liability but denies any liability to plaintiff.

122.     Monsanto denies the allegations in paragraph 122.

123.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 and therefore denies those allegations.

124.    In response to the allegations in paragraph 124 Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that decedent used or was exposed to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 124.

125.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 and therefore denies those allegations.

126.    Monsanto denies the allegations in paragraph 126.

127.    Monsanto denies the allegations in paragraph 127.

128.    Monsanto denies the allegations in paragraph 128.

129.    Monsanto denies the allegations in paragraph 129 and each of its subparts.

130.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 130 regarding decedent's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 130, including that Roundup®-branded products have "dangerous characteristics."

131.    Monsanto denies the allegations in paragraph 131.

132.    Monsanto denies the allegations in paragraph 132.

133.    Monsanto denies the allegations in paragraph 133.

134.    Monsanto denies the allegations in paragraph 134.

135.    Monsanto denies the allegations in paragraph 135.

136.    Monsanto denies the allegations in paragraph 136.

137.    Monsanto denies the allegations in paragraph 137.

138.    Monsanto denies the allegations in paragraph 138.

139.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 139 and therefore denies those allegations.

140.    Monsanto denies the allegations in paragraph 140.

141.    Monsanto denies the allegations in paragraph 141.

142.    In response to the allegations in paragraph 142, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

143.    Monsanto incorporates by reference its responses to paragraphs 1 through 142 in response to paragraph 143 of plaintiff's Complaint.

144.    In response to the allegations in paragraph 144, Monsanto admits that plaintiff brings a claim for wrongful death but denies any liability to plaintiff.

145.    In response to the allegations in paragraph 145, Monsanto admits that plaintiff purports to bring a claim for strict liability but denies any liability to plaintiff.

146.    Monsanto denies the allegations in paragraph 146.

147.    In response to the allegations in paragraph 147, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that decedent or other persons or entities purchased Roundup®-branded products and therefore denies those allegations. The allegations in paragraph 147 also set forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 147.

148.    In response to the allegations in paragraph 148, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate.  The remaining allegations in paragraph 148 set forth conclusions of law for which no response is required.

149.    Monsanto denies the allegations in paragraph 149.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

150.    Monsanto denies the allegations in paragraph 150.

151.    Monsanto denies the allegations in paragraph 151.

152.    Monsanto denies the allegations in paragraph 152.

153.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 153 and therefore denies those allegations.

154.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 154 regarding decedent's claimed use of and/or exposure to Roundup®-branded products and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 154, including that Roundup®-branded products have "dangerous characteristics."

155.    In response to the allegations in paragraph 155, Monsanto denies that Roundup®-branded products are associated with risks of NHL or other serious illness or that Roundup®-branded products have "defects."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 155 and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 155.

156.    Monsanto denies the allegations in paragraph 156.

157.    Monsanto denies the allegations in paragraph 157.

158.    Monsanto denies the allegations in paragraph 158.

159.    Monsanto denies the allegations in paragraph 159.

160.    Monsanto denies the allegations in paragraph 160.

161.    Monsanto denies the allegations in paragraph 161.

162.    Monsanto denies the allegations in paragraph 162.

163.    Monsanto denies the allegations in paragraph 163.

164.    Monsanto denies the allegations in paragraph 164.

165.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 165 and therefore denies those allegations.

166.    Monsanto denies the allegations in paragraph 166.

167.    Monsanto denies the allegations in paragraph 167.

168.    In response to the allegations in paragraph 168, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

169.    Monsanto incorporates by reference its responses to paragraphs 1 through 168 in response to paragraph 169 of plaintiff's Complaint.

170.    In response to the allegations in paragraph 170, Monsanto admits that plaintiff brings a claim for wrongful death but denies any liability to plaintiff.

171.    Monsanto denies the allegations in paragraph 171.

172.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 172 and therefore denies those allegations.

173.   The allegations in paragraph 173 set forth conclusions of law for which no response is required.

174.   The allegations in paragraph 174 set forth conclusions of law for which no response is required.

175.   Monsanto denies the allegations in paragraph 175.

176.   Monsanto denies the allegations in paragraph 176.

177.   Monsanto denies the allegations in paragraph 177.

178.   Monsanto denies the allegations in paragraph 178.

179.   Monsanto denies the allegations in paragraph 179.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

180.   Monsanto denies the allegations in paragraph 180.

181.   Monsanto denies the allegations in paragraph 181.

182.   Monsanto denies the allegations in paragraph 182.

183.   Monsanto denies the allegations in paragraph 183, including each of its subparts.

184.   Monsanto denies the allegations in paragraph 184.

185.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 185 regarding plaintiff's and/or decedent's knowledge and therefore denies those allegations.  Monsanto denies the remaining allegations in paragraph 185, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

186.   Monsanto denies the allegations in paragraph 186.

187.   Monsanto denies the allegations in paragraph 187.

188.     Monsanto denies the allegations in paragraph 188.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

189.     Monsanto denies the allegations in paragraph 189.

190.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 190 and therefore denies those allegations.

191.     Monsanto denies the allegations in paragraph 191.

192.     Monsanto denies the allegations in paragraph 192.

193.     In response to the allegations in paragraph 193, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

194.     Monsanto incorporates by references its responses to paragraphs 1 through 193 in response to paragraph 194 of plaintiff's Complaint.

195.     In response to the allegations in paragraph 195, Monsanto admits that plaintiff brings a claim for wrongful death but denies any liability to plaintiff.

196.     Monsanto denies the allegations in paragraph 196.

197.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 197 regarding decedent's claimed use of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 197 set forth conclusions of law for which no response is required.

198.    Monsanto denies the allegations in paragraph 198.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

199.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 199 regarding plaintiff's and/or decedent's reliance and therefore denies those allegations.  The remaining allegations in paragraph 199 set forth conclusions of law for which no response is required.

200.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 200 and therefore denies those allegations.

201.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 201 regarding the claimed use of Roundup®-branded products by decedent and others and therefore denies those allegations.  The remaining allegations in paragraph 201 set forth conclusions of law for which no response is required.

202.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 202 regarding decedent's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations.  The allegation in paragraph 202 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.  Monsanto denies the remaining allegations in paragraph 202.

203.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 203 regarding decedent's claimed use of Roundup®-branded products or decedent's claimed reliance and therefore denies those allegations.  The allegation in paragraph 203 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

204.    In response to the allegations in paragraph 204, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 204 regarding decedent's and/or decedent's employers' knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 204.

205.    Monsanto denies the allegations in paragraph 205.

206.    Monsanto denies the allegations in paragraph 206.

207.    Monsanto denies the allegations in paragraph 207.

208.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 208 and therefore denies those allegations.

209.    Monsanto denies the allegations in paragraph 209.

210.    Monsanto denies the allegations in paragraph 210.

211.    In response to the allegations in paragraph 211, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

212.    Monsanto incorporates by references its responses to paragraphs 1 through 211 in response to paragraph 212 of plaintiff's Complaint.

213.    In response to the allegations in paragraph 213, Monsanto admits that plaintiff brings a claim for wrongful death but denies any liability to plaintiff.

214.    Monsanto denies the allegations in paragraph 214, including each of its subparts.

215.     Monsanto denies the allegations in paragraph 215.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

216.     Monsanto denies the allegations in paragraph 216.

217.     Monsanto denies the allegations in paragraph 217.

218.     In response to the allegations in paragraph 218, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

2.     Plaintiff's claims are misjoined and should be severed.

3.     Plaintiff's claims against Monsanto are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

4.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of decedent's alleged injuries.

5.     Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings,

information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

7.      Any claims against Monsanto based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law.  See, e.g., *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

8.      Plaintiff's claims against Monsanto are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Plaintiff's claims against Monsanto are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiff's claims against Monsanto are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiff's claims against Monsanto are barred, in whole or in part, because decedent's injuries, if any, were the result of conduct of decedent, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to decedent's pre-existing medical conditions.

12.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

13.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

14.     Decedent's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

15.     If plaintiff or decedent suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's or decedent's alleged injuries or damages.

16.     Monsanto has no current or former legal relationship or privity with plaintiff and/or decedent and owed no duty to them by which liability could be attributed to it.

17.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff and/or decedent.  If any such warranties were made, which Monsanto specifically denies, then plaintiff and/or decedent failed to give notice of any breach thereof.

18.     Plaintiff's claims against Monsanto are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19. Plaintiff's claims against Monsanto for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Virginia Constitution, and/or other applicable state constitutions.

20. Plaintiff's claims against Monsanto for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Virginia law and/or other applicable state laws.

21. Plaintiff's claims against Monsanto for punitive damages are barred and/or limited by operation of state and/or federal law, including Va. Code Ann. § 801-38.1.

22. Plaintiff's claims against Monsanto are barred in whole or in part by decedent's own contributory/comparative negligence.

23. Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's and/or decedent's own failure to mitigate damages.

24. Plaintiff's claims against Monsanto are barred in whole or in part by the sophisticated user doctrine.

25. To the extent that plaintiff and/or decedent recovered payments for decedent's alleged injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

26. If decedent has been injured or damaged, no injuries or damages being admitted, such injuries or damages were not caused by a Monsanto product.

27. Plaintiff's claims against Monsanto are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

28.     Plaintiff's claims against Monsanto are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

29.     This venue is inconvenient, and this lawsuit should be transferred to a more convenient venue (Rockingham County).

30.     Plaintiff's strict liability claims are barred because Virginia does not recognize a cause of action for strict liability in tort.

31.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED:  February 1, 2021                    Respectfully submitted,


                                            */s/ Tamara Barago*
                                            Tamara Barago (Virginia Bar No. 80361)
                                            HOLLINGSWORTH LLP
                                            1350 I Street, N.W.
                                            Washington, DC 20005
                                            Telephone:  (202) 898-5800
                                            Fax: (202) 682-1639
                                            tbarago@hollingsworthllp.com

                                            Attorney for Defendant Monsanto Company

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 1st day of February, 2021, I electronically filed the foregoing Answer with the Clerk of the Court using the VJEFS system and sent a copy via electronic mail to the following:

> Ryan C. Posey
> Posey Lebowitz PLLC
> 3221 M Street, NW
> Washington, DC 20007
> Email: rposey@poseylebowitz.com
>
> Counsel for Plaintiff
>
> W. Barry Montgomery
> KPM Law
> 901 Moorefield Park Drive, Suite 200
> Richmond, VA 23236
> Email: Barry. Montgomery@kpmlaw.com
>
> Counsel for Defendant The Valley Fertilizer and Chemical Company, Inc.

*/s/ Tamara Barago*
Tamara Barago