**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF SHANNON R. WHEATMAN, PH.D. REGARDING THE CLASS NOTICE PROGRAM AND CLASS NOTICE REVISIONS** |
| *Ramirez et al v. Monsanto Co.*, Case No. 3:19-cv-02224 | |

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.      I am president of Kinsella Media, LLC ("KM"), a nationally recognized advertising and legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach unidentified putative class members and claimants in bankruptcy and mass tort litigation.  My business address is 2101 L Street NW, Suite 800, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.      This declaration addresses concerns raised by certain objectors regarding the Notices and the Notice Program proposed for *In re Roundup Products Liability Litigation*. Additional information regarding the Notices, Notice Program, and my experience and qualifications can be found in my declaration submitted in support of the motion for preliminary approval.  *See* ECF No. 12531-5 ("Wheatman Decl. I").

3.      KM was retained to design and implement the Notice Program in this litigation. Although each case is unique, the methods and tools used in developing the Notice Program for the Settlement have been employed in many other court-approved notice programs.  This Notice Program is consistent with notice programs KM designed and implemented in other class actions, all of which have received court approval.

4.      This declaration is based upon my personal knowledge and information provided by Class Counsel, Signal Interactive Media ("Signal"), Verus LLC ("Verus"), and my associates and staff.  The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

### DIFFERENCES BETWEEN THE *AMCHEM* AND ROUNDUP CLASSES

5.      Both the *Amchem v. Windsor Products, Inc.*, 521 U.S. 591 (1997) ("*Amchem*") and the Roundup classes include "very diverse and geographically widespread" class members.  The U.S. Supreme Court described class members in *Amchem* as "legions so unselfconscious and amorphous."[1]  However, in comparing the two classes in these cases, there are critical differences between *product usage, potential exposure,* and the *longevity of exposure* that renders the Roundup Class sufficiently different from the *Amchem* characterization cited above.

6.      Asbestos products were manufactured by at least 75 identifiable companies with hundreds of products.[2]  Asbestos was used for decades in every conceivable situation and product where fire insulation was necessary, such as ships, automobiles, trains, textile manufacturing, paper manufacturing, and the vast majority of building construction, including homes, commercial buildings, hospitals, and schools.  The use of asbestos was so ubiquitous that the Environmental Protection Agency ("EPA") and other regulatory agencies are still grappling with how to regulate and classify asbestos-containing products.  In December 2020, the EPA released Part I of its Final Evaluation of Asbestos, stating "there are unreasonable risks to workers, occupational non-users, and bystanders . . ."[3]

7.      Exposure to asbestos was heavily occupational, affecting industrial, chemical, power plant, shipyard, construction workers, and firefighters.  But as noted by the EPA, it also

---

[1] *Amchem,* 521 U.S. at 628.
[2] The Mesothelioma Center, *Asbestos Products*, www.asbestos.com/products/ (last visited Mar. 23, 2021).
[3] U.S. Environmental Protection Agency, *Assessing and Managing Chemicals under TSCA*, www.epa.gov/assessing-and-managing-chemicals-under-tsca/risk-evaluation-asbestos-0      (last visited Mar. 24, 2021).

exposed and can expose non-occupational workers indiscriminately through products that still contain friable asbestos. Moreover, asbestos fibers can be carried home on workers' clothes and expose unknowing family members.

8.      Roundup Products' usage and exposure are not comparable to asbestos. Glyphosate has an explicit and limited outdoor use – the killing and control of weeds and other non-desirable plants. The locations where weed killers are usually applied (i.e., farms, gardens, yards, parks, golf courses, etc.) and the types of occupations exposed (i.e., farmers, landscapers, gardeners, groundskeepers, agricultural workers, etc.) are identifiable.

9.      The exposure profile of Roundup Products is also vastly different from asbestos, which can cause illness and fatal cancers decades after installation. Conversely, the "surfactant in Roundup has a soil half-life of less than 1 week"[4] and "The Worker Protection Standard (WPS) for Agricultural Pesticides established an interim restricted entry interval (REI) of 12 hours for glyphosate."[5]

10.     In addition to the limited toxic longevity of Roundup Products, the Class is composed of individuals who were exposed to the weed killer before February 3, 2021. Individuals exposed after this date are not included in the Class. Under *Amchem,* all class members were permanently bound by the proposed settlement - whether currently exposed or exposed in the future and barred from suing any of the settling defendants.

11.     Notice in the Roundup settlement can be delivered to professional and non-professional users. It can be targeted geographically as well as specifically to groups of individuals who either apply or are exposed to Roundup Products in a way that was not possible in *Amchem*. Workers, such as landscapers, farmers, farmhands, or groundskeepers, are often aware that herbicides are being used at their worksites. However, asbestos workers were unaware for decades

---

[4] The U.S. Dept. of Agriculture, *Glyphosate Herbicide Information Profile*, available at www.fs.usda.gov/Internet/FSE_DOCUMENTS/fsbdev2_025810.pdf (last visited Mar. 24, 2021).
[5]      U.S.      Environmental      Protection      Agency,      *R.E.D. Facts*, www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/fs_PC-417300_1-Sep-93.pdf (last visited Mar. 25, 2021).

about the widespread use of asbestos and its toxicity.  The full extent of the total U.S. population's exposure to asbestos is still not widely known.

12.     Individuals exposed to Roundup Products will be targeted in the Notice Program through location, profession, and product usage in a way that was not possible with asbestos exposure.

13.     Channels used to provide notice have also changed meaningfully since *Amchem* was decided.  The invention of smartphones and the increase in targeted digital advertising and marketing options have significantly expanded the ability to reach hard-to-find class members. For example, among the most challenging Roundup Product users to reach are Mexican migrant workers, but 83% of these workers own a smartphone, and 82% use the Internet daily.  *See* ECF No. 12531-10 (Messina Declaration) ¶ 34.  Other migrant farmworkers rely heavily on social media and YouTube to communicate with personal networks and access information, news, and entertainment.  *Id.*  Also, 98% of Hispanics own a smartphone, and they spend an average of 30 hours per week on their smartphones.[6]  There are more ways to deliver targeted notice and reach these groups now than when *Amchem* was decided.

14.     While it is possible that some individuals might not know they were exposed, a vast majority of current Settlement Class Members can and will receive a notice with the initial Notice Program.  Although some future Settlement Class Members may not receive notice, they have not lost their ability to sue Monsanto, which was the case for most class members in *Amchem.*

## REACH OF NOTICE PROGRAM

15.     Individual notice would not be feasible in this case.  However, through extensive efforts detailed in my previous declaration, KM, Signal, and Verus have designed a comprehensive Notice Program designed to target potential Settlement Class Members and provide clear, effective notice.  These efforts include direct notice to approximately 41,000 self-identified people with

---

[6] Nicole Acevedo, NBC News, *Latinos rely more on social media as a coronavirus lifeline, Nielsen report finds*, www.nbcnews.com/news/latino/latinos-rely-more-social-media-coronavirus-lifeline-nielsen-report-finds-n1235968 (last visited Mar. 19, 2021).

NHL; 266,000 groups, including 170,000 farms that may employ or work with potential Settlement Class Members; and 12,000 farming and lawn and garden supply stores that may be frequented by potential Settlement Class Members.  KM and Signal will also use a comprehensive, targeted multimedia campaign designed to reflect Settlement Class Members' media consumption habits and provide notice.

16.     Mailed notice to potential employers (farm owners, government entities, and related organizations) would ask them to share the notice with current and former employees and notify them if Roundup Products were used at their worksite.

17.     Based on my extensive experience, all subgroups of this Class will be adequately reached by the Notice Program.  The media program is highly targeted to reach Settlement Class Members who were professionally exposed to Roundup Products.  This targeting was based on the latest available government data[7] on relevant occupations that are likely to use weed killers, as well as geographic concentrations of individuals diagnosed with Non-Hodgkin's Lymphoma.  *See* Wheatman Decl. I at 19-22.

18.     The media program will reach over 80% of the measurable, broad target audiences (Homeowners and Lower Income Men).[8]

19.     There is a long and documented history of unidentifiable class members receiving media-based notice, rather than individual notice, that was and is approved by courts throughout the country.  KM has implemented hundreds of cases that have included large numbers of unidentifiable class members.  Many of these media-based notice programs have had high-value

---

[7] The data sources include: Bureau of Labor Statistics, 2019 Occupational Employment  Statistics (OES) Survey; U.S. Census Bureau, NAICS Employee Counties: 2016 ZIP Code Business Patterns; U.S. Dept. of Agriculture, 2017 Census of Agriculture, Tables 1, 7, 25 and 40; National Agricultural Workers Survey, 2015-2016 Data Tables; and Centers for Disease Control and Prevention Data files.

[8] As detailed in my previous declaration, television, radio, agricultural media, Hispanic newspapers, trade magazines, territories newspapers, *Stars & Stripes*, and military/diplomatic media are not measured against Homeowners, so the reach and frequency numbers are based on measurable print and online.  When this additional media is taken into consideration, along with the targeted digital advertising, outreach efforts, and earned media, the reach and frequency is likely higher.

claims, including cases involving asbestos exposure, breast implants, farmers, Indian rights, and more.  Other examples of high-value cases that KM worked on, and courts approved, that use media notice for hard-to-reach classes instead of individual notice include:

    a.    *In re Holocaust Victim Assets Litig.*, Nos. CV 96-4849, CV-5161 and CV 97-461 (E.D.N.Y.)

    b.    *In re Black Farmers Discrimination Litig.*, MDL No. 08-mc-511 (D.D.C.)

    c.    *Cobell v. Salazar*, No. 1:96-cv-01285 (D.D.C.)

20.    Notably, like the above cases, this Notice Program uses extensive on-ground and press outreach in addition to significant media advertising.  *See* Wheatman Decl. I at 46-48.

## REACH TO CLASS MEMBERS WITHOUT NON-HODGKIN'S LYMPHOMA DIAGNOSIS

21.    The Notice Program and Notices will effectively reach people exposed to Roundup Products (including those who have not yet manifested an injury).  The Publication Notice has broadly written headlines to include Settlement Class Members without Non-Hodgkin's Lymphoma ("NHL") and is designed to be eye-catching, using relevant images and bold fonts and colors.  The Notices specify that the settlement affects all people who have used Roundup and other weed killers containing glyphosate – not just those with NHL.

22.     A Settlement Class Member doesn't need to have manifested a disease to know that they have been exposed to Roundup Products.  The Notices provide all of the information that Settlement Class Members need to decide whether to opt out or remain in the Class.

## SETTLEMENT CLASS MEMBERS' IMMIGRATION STATUS/LANGUAGE

23.    Special care was taken to effectively assist the non-English speaking Settlement Class Members.  Signal's survey of migrant workers and landscapers in the U.S. and Mexico provided invaluable information on messaging and reaching this portion of the Class.

24.    The Notice Program was specifically designed to target different cultural and ethnic groups most commonly exposed to Roundup Products, as detailed in my previous declaration.  *See* Wheatman Decl. I at 23-45.  Additionally, on-ground outreach through trusted, key community

sources, individuals, and organizations will ensure landscapers and migrant farmworkers can get information about the Settlement, learn about and understand their rights, and decide if they want to participate.

25.     The Notices clearly state that immigration status is not a bar to participation in the Settlement.  In bold font, the Publication Notice states, "Immigration status does not affect eligibility," and the Long Form Notice states, "Immigration status does not affect your ability to be in the settlement class."  Additionally, the Notices and settlement website will be translated into Spanish, and press outreach is planned in English and Spanish.  Live operators will also be available to answer questions in English, Spanish, Mixteco, Zapotec, and Triqui.

## NOTICE LANGUAGE

26.     The goal of the notice is to enable class members to make an informed decision. Therefore, the Notices provide all of the information Settlement Class Members need to understand their rights and options.  The Notices also state that "free help" is available if Settlement Class Members have any questions or need assistance registering or filing a claim.  Live operators will be available to assist Settlement Class Members in five different languages.

27.     The Settlement benefits are highlighted in the Notices to engage and draw in potential Settlement Class Members to read more about the Settlement.  The Settlement benefits and releases are extensively discussed in the Long Form Notice.  The structure follows the question-and-answer format of the plain language, Federal Judicial Center model notices.

28.     The discussion of punitive damages is also appropriate, and has been expanded further in the revised Notices.  It follows the language of the notice used in *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* MDL No. 2179 (E.D. La.).  The punitive damages release is discussed in both the Publication and Long Form Notices and presented in the same style as the rest of the text.

29.     References to punitive damages are not hidden in the Notices.  The concept is introduced in the relevant sections of the Publication and Long Form Notices.  None of the language in the Notices is in "small print."

30.     Attached as Exhibits A and B are revised copies of the Publication Notice and Long Form Notice.  It is my opinion that the revised Notices are clear, thorough, and accurate.  They have been further revised in the versions submitted with this declaration to provide additional information, further highlight the release of punitive damages, and reflect the amendments to the Settlement submitted to the Court on April 7, 2021.

### COST OF NOTICE PROGRAM

31.     Based on my experience, the scope and cost of the Notice Program are appropriate and in line with other high-value, class action settlements.

### MODIFICATIONS TO THE NOTICE PROGRAM

32.     The Notice Program will be modified to ensure potential Settlement Class Members who may have been exposed to Roundup and speak Spanish or one of the primary indigenous languages (Mixteco, Zapotec, and Triqui) are provided with support to understand the Settlement, how it affects their rights, and how they may participate.

33.     KM and Signal learned that the indigenous languages most commonly spoken by farmworkers in the U.S. (Mixteco, Zapotec, and Triqui) are primarily phonetic.  Each language has a significant number of variants[9] as each community speaks a unique version.  Our translation company, TransPerfect, informed us that the indigenous languages are considered tonal, and they are written via Latin-based scripts and largely on sound.  However, KM and Signal learned from the radio stations that literacy in these languages is extremely low.

34.     Therefore, the best way to communicate with these indigenous speakers is through broadcast media and oral communications.  Instead of utilizing language-specific digital media, the number of indigenous radio spots will now be increased in Mexico and the U.S. to more effectively reach indigenous speakers.  Radio stations in the U.S. and Mexico will air programming in the most prevalent language variants, where possible.

---

[9] It is estimated that there are over 50 Mixteco language variants, over 60 Zapotec variants, and three Triqui variants.

35.     Most farmworkers in the U.S. speak Spanish or English rather than an indigenous language.  According to the U.S. Department of Labor's National Agricultural Workers Survey, one percent of farmworkers report an indigenous language as the language in which they're most comfortable conversing.[10]  Additionally, indigenous farmworkers' children are likely to speak English as well.[11]

36.     The digital ads, Settlement website, Claim Forms, and Registration Forms will be available in English and Spanish.  If written translations can be obtained from TransPerfect, Notices will be available on the website in the indigenous-language variants in which the radio spots are broadcast.

37.     Given that these languages are primarily spoken, the radio spots and website will direct indigenous speakers to call the toll-free number to get assistance from live operators (who speak Mixteco, Zapotec, and Triqui) who can provide information about the Settlement, answer their questions, and assist them in completing their Claim and Registration Forms.

38.     To reach workers exposed to Roundup Products through their jobs, a second, supplemental notice in Spanish will be placed in Hispanic publications.  The Supplemental Spanish Publication Notice highlights how a person might be exposed to Roundup and common symptoms of NHL.  It also includes information on how workers can determine what products they may have been exposed to: "Ask your boss or coworkers if you are not sure if you were exposed to a Roundup product." It also states in bold, capitalized letters "Undocumented and Foreign Workers Are Included."  Attached as Exhibit C is a copy of (the English version of) the Supplemental Spanish Publication Notice.

39.     Spanish radio and television spots will also be longer to provide more information that will allow this group to determine whether this settlement affects them.

---

[10] Farmworker Justice, *Selected Statistics on Farmworkers* (2015-16 Data), available at http://www.farmworkerjustice.org/wp-content/uploads/2019/05/NAWS-Data-FactSheet-05-13-2019-final.pdf (last visited Apr. 21, 2021).

[11] Richard Mines, Sandra Nichols & David Runsten, *California's Indigenous Farmworkers Report* (Jan. 2010), www.indigenousfarmworkers.org/final_report.shtml (last visited Jan. 23, 2021).

**CONCLUSION**

40.     The Notice Program is carefully crafted with multiple layers of notice including, significant direct notice, national and local paid media in the U.S. and Mexico, earned media, and outreach to the diverse target audiences that make up the Class.  The breadth, comprehensiveness, and efficacy of this Notice Program are well beyond what is typical in class action notice programs today.  Additionally, future rounds of notice are contemplated to notify Settlement Class Members of approaching deadlines.

41.     It continues to be my opinion that the Notice Program and content of the Notices are adequate and reasonable under the circumstances and provide the best notice practicable.  The Notice Program is consistent with the standards employed by KM in notification programs designed to reach class members.  The Notice Program, as designed, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Souderton, Pennsylvania this 21st day of April 2021.

Shannon R. Wheatman, Ph.D.