IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
CIVIL DIVISION

ROB BUNDY, a single person,

    Plaintiff,

vs.                                 Case No.: 2020 CA 003366 NC

BAYER CORPORATION, MONSANTO
COMPANY, and M & W SUPPLY, INC., a
dissolved[1] Florida corporation,

    Defendants.
_____/

## SECOND AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, ROB BUNDY, by and through his undersigned attorneys, and sues the Defendants, BAYER CORPORATION, MONSANTO COMPANY, and M & W SUPPLY, INC., a dissolved Florida corporation, and states as follows:

## GENERAL ALLEGATIONS

1. This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interests. This Court has subject matter jurisdiction pursuant to section 26.012, Florida Statutes.

2. Venue is appropriate before the Twelfth Judicial Circuit as the cause of action accrued in Sarasota County, Florida.

3. At all times material herein, Plaintiff, ROB BUNDY, (hereinafter "BUNDY), was a resident of Sarasota County, Florida.

01319390-1          1



4.      At all times material hereto, the Defendants, BAYER CORPORATION and MONSANTO

COMPANY, (hereinafter "BAYER/MONSANTO"), were licensed to conduct business and

distribute their products within the State of Florida and Sarasota County, Florida and, in fact,

did conduct significant business within the State of Florida generally and specifically within

Sarasota County. This business included, but is not limited to the marketing, distribution and

sale of Roundup, a herbicide which has been linked to causing Lymphoma.

5.      At all times material hereto, Defendant, M & W SUPPLY, INC., (hereinafter "M&W"), was

a Florida corporation identifying its principal place of business at 7750 Fruitville Rd.,

Sarasota, FL 34240. M&W was a retailer of Roundup, and sold Roundup to Plaintiff,

BUNDY numerous times during the years at issue in this Complaint.

6.      Plaintiff, BUNDY was exposed to, and harmed by, Defendants, BAYER/MONSANTO's

product Roundup for a seven year period from 2005 to 2012 as a consequence of his

ownership of a lawncare business in Sarasota County, Florida and his use of and exposure

to the Roundup product.

7.      Monsanto, is a wholly owned subsidiary of the Bayer Corporation, having been purchased

by Bayer Corporation in June 2018 with Bayer assuming all assets and liabilities of

Monsanto Company, Bayer Corporation and Monsanto Company are jointly and severally

liable for any and all injuries and harm proximately caused by use of the product Roundup

to Plaintiff, BUNDY.

8.      At all times material hereto, M&W was a retailer of Roundup.

01319390-1                                      2

9.  Plaintiff, BUNDY purchased Roundup on a regular basis from M&W during the years at issue in this case.  True and correct copies of receipts showing BUNDY'S purchase of Roundup from M&W are attached hereto as Exhibit "A."

10.  Plaintiff, BUNDY used Roundup purchased at M&W on a regular basis, and as a result was exposed to and harmed by Roundup, within his lawncare business for the seven years prior to his diagnosis of Lymphoma in 2012.

11.  Plaintiff, BUNDY was regularly exposed to the ingredient glysophate, which was a major ingredient in the manufacturing of Defendants, BAYER/MONSANTO product Roundup.

12.  Defendants, BAYER/MONSANTO were aware, as early as 1981, that the ingredient glysophate was a known carcinogen and that the product Roundup which contained glysophate as a major ingredient was therefore not reasonably safe as designed and distributed.

13.  Defendants, BAYER/MONSANTO having knowledge of the design defect within its product Roundup, failed to warn of glysophate's causal relation to cancer and that the product was not reasonably safe.

14.  In fact, Defendants, BAYER/MONSANTO distributed scientific papers proclaiming the safety of its products while having constructive knowledge of the carcinogenic characteristics of glysophate.  The Defendants, BAYER/MONSANTO went so far as to "ghost write" scientific papers falsely proclaiming the safety of its herbicides all the while knowing of the carcinogenic properties of glysophate. Defendants, BAYER/MONSANTO also intervened within government review of glysophate toxicity and engineered efforts to discredit critics of their products.

15.   The actions were done for a singular purpose: to protect Defendants, BAYER/MONSANTO's profits by concealing the known cancer risk of Roundup to the public and to its consumers.

16.   As a direct and proximate cause of his exposure to Roundup the Plaintiff, BUNDY developed Lymphoma and was forced to undergo extensive and painful treatments including but not limited to chemotherapy. The very nature of this disease, and the nature of the exposure, is such that the Plaintiff, BUNDY will suffer increased cancer risk the rest of his life and therefore the Plaintiff, BUNDY must undergo continuing monitoring to guard against the cancer's recurrence. The stress and anxiety associated with same has caused a dramatic impact on the Plaintiff, BUNDY's ability to enjoy his life and has caused extreme and ongoing mental anguish.

17.   This disease devastated the Plaintiff, BUNDY's family, and his business. The disabilities associated with Lymphoma has negatively effected the Plaintiff, BUNDY's ability to work and his earning capacity.

18.   The Plaintiff, BUNDY first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 when he was provided a report by Dr. Tony S. Quang.

## COUNT I – NEGLIGENCE AGAINST BAYER/MONSANTO

19.   The Plaintiff re-alleges and incorporates by reference hereto the allegations contained in paragraphs 1 through 18 of the General Allegations, as if fully set forth herein.

20.   As outlined above, Defendants, BAYER/MONSANTO knew that their product, Roundup was unreasonably dangerous and likely to cause Lymphoma to the consumers of this product.

21.    Despite this knowledge, Defendants, BAYER/MONSANTO continued to negligently keep glysophate as part of the design of its Roundup product. Despite this knowledge, Defendants, BAYER/MONSANTO continued to negligently manufacture Roundup with glysophate as a major ingredient. And, despite this knowledge, Defendants, BAYER/MONSANTO never warned its consumers of the inherently dangerous properties of glysophate in any of the packaging or materials associated with its product Roundup during the years relevant to this action.

22.    These actions were each blatant breaches of the duty Defendants, BAYER/MONSANTO owed to its consumer/consumer Plaintiff, BUNDY.

23.    As a direct and proximate result of the above described negligent conduct of the Defendants, BAYER/MONSANTO, and the Plaintiff, BUNDY's exposure to Defendant's product, Roundup, the Plaintiff, BUNDY, incurred Lymphoma and has sustained extensive damages which include but are not limited to:

(a)    Medical expenses in the past and continuing indefinitely into the future;
(b)    Devastation to his business and family life in the past and continuing indefinitely into the future;
(c)    Significant and permanent loss of important bodily functions;
(d)    His ability to work and loss of earning in the past and continuing indefinitely into the future;
(e)    Pain and suffering, emotional distress, loss of enjoyment of life in the past and continuing indefinitely into the future; and
(f)    Entitlement to Punitive damages, which will be separately alleged through amendment pursuant to Florida law.

24.    The aforementioned losses/damages are either permanent or continuing in nature and the Plaintiff, BUNDY, will continue to suffer such losses in the future.

WHEREFORE, Plaintiff, BUNDY, by and through his undersigned attorneys demands judgement against Defendants, BAYER/MONSANTO, jointly and severally for damages in an amount within the jurisdictional limits of this Court, to wit: more than Thirty Thousand Dollars ($30,000.00) plus costs and for such other relief to which the Plaintiff, BUNDY, may be justly entitled.

## COUNT II – STRICT LIABILITY AGAINST ALL DEFENDANTS

25.    The Plaintiff re-alleges and incorporates by reference hereto the allegations contained in paragraphs 1 through 18 of the General Allegations, as if fully set forth herein.

26.    At all times relevant, the Defendants, BAYER, MONSANTO, and M&W were a manufacturer, wholesaler, distributor and/or retailer of the product Roundup.

27.    Plaintiff, BUNDY was an actual and intended consumer of the product Roundup. Plaintiff, BUNDY utilized this product without any substantial change in its condition from the time it was manufactured and/or sold by the Defendants, BAYER, MONSANTO, and M&W, and utilized this product in the manner in which it was intended and/or reasonably foreseen by the Defendants, BAYER, MONSANTO, and M&W.

28.    Based on their actions above, the Defendants, BAYER/MONSANTO and M&W are wholly, jointly and severally liable for the acts and actions of BAYER/MONSANTO, as a consequence of the purchases in whole of all assets and liabilities outlined above.

29.    At all times relevant Roundup was inherently and unreasonably dangerous as it contained the known carcinogen glysophate.

30.    Defendants, BAYER, MONSANTO, and M&W are strictly liable to Plaintiff, BUNDY under Restatement of Torts § 402A and Florida Law, making Defendants strictly liable for

their product which was not reasonably safe as designed, manufactured and/or not reasonably safe because adequate warnings or instructions were not provided. See e.g., Johnson v. Monsanto Co., No. 16-cv-01244-MMC, 2016 U.S. Dist. LEXIS 58309, at *5-7 (N.D. Cal. May 2, 2016); Taylor v. Costco Wholesale Corp., No. 2:20-cv-00655-KJM-DMC, 2020 U.S. Dist. LEXIS 187348, at *1-2 (E.D. Cal. Oct. 7, 2020).

31.    As a direct and proximate result of the above described conduct and the above described activities by the Defendants, BAYER, MONSANTO, and M&W, and the Plaintiff, BUNDY's exposure to Defendants' product, Roundup, the Plaintiff, BUNDY, incurred Lymphoma and has sustained extensive damages which include but are not limited to:

(a)    Medical expenses in the past and continuing indefinitely into the future;

(b)    Devastation to his business and family life in the past and continuing indefinitely into the future;

(c)    Significant and permanent loss of important bodily functions;

(d)    His ability to work and loss of earning in the past and continuing indefinitely into the future;

(e)    Pain and suffering, emotional distress, loss of enjoyment of life in the past and continuing indefinitely into the future; and

(f)    Entitlement to punitive damages, which will be separately alleged through amendment pursuant to Florida law.

WHEREFORE, Plaintiff, BUNDY, by and through his undersigned attorneys demands judgement against Defendants, BAYER, MONSANTO, and M&W jointly and severally for damages in an amount within the jurisdictional limits of this Court, to wit: more than Thirty Thousand Dollars ($30,000.00) plus costs and for such other relief to which the Plaintiff, BUNDY, may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury concerning all issues contained in the above styled cause of action.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on April ___, 2021, and was provided via email to Anthony N. Upshaw, Esq. and Melissa R. Alvarez, Esq., McDermott Will & Emery, LLP 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131 (aupshaw@mwe.com) and (malvarez@mwe.com) and Joe G. Hollingsworth, Esq., Hollingsworth LLP, 1350 I Street N.W., Washington, D.C. 20005 (jhollingsworth@hollingsworthllp.com).

**ICARD, MERRILL, CULLIS, TIMM, FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
(941) 366-8100 - Phone
*(941) 366-6384 - Fax*

<br>

ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
Attorneys for Plaintiff, BUNDY

01319390-1                                                   8