Ken Moll
Rebecca Fredona
Fatima Abuzerr
**MOLL LAW GROUP**
22 W Washington St
15th Floor
Chicago, IL 60602
T: 312.462.1700
F: 312.756.0045
kmoll@molllawgroup.com
rfredona@molllawgroup.com
fabuzerr@molllawgroup.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*Cervantes v. Monsanto Co.*, 3:19-cv-03015-VC<br>*Karman v. Monsanto Co.*, 3:19-cv-01183-VC<br>*Pecorelli v. Monsanto Co.*, 3:16-cv-06936-VC<br>*Peterson v. Monsanto Co.*, 3:18-cv-07271-VC<br>*Rehak v. Monsanto Co.,* 3:19-cv-01719-VC<br>*Schafer v. Monsanto Co.*, 3:19-cv-02169-VC | MDL No. 2741<br><br>Case No. 16-md-02741-VC<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES** |
|---|---|

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

Plaintiffs moved to strike certain general causation opinions of Monsanto Company's Case Specific Experts on April 2, 2021 (ECF No. 12894). Defendant, Monsanto Company, filed a response and opposition to Plaintiffs' motion on April 1, 2021 (ECF No. 12946). Plaintiffs' reply in support of their motion and state as follows:

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

# ARGUMENT

## A. Dr. Reshef and Dr. Woda's Opinion's and Testimony Are Inconsistent and Should Be Excluded Because They Are Unreliable.

Defendant attempts to persuade this Court the experts retained have provided reliable and admissible testimony. However, that is not the case. Defendant's case specific experts have provided many unreliable and inconsistent opinions. One of Defendant's case specific experts, Dr. Reshef, retained for both Plaintiffs Gerard Cervantes and Lorraine Rehak, shifted his opinion from prior testimony he provided. Dr. Reshef's current opinion for Plaintiff Gerard Cervantes is that Cervantes' BMI is a contributing risk factor for his NHL. In the past, when asked whether being overweight is a risk factor, in his opinion, for NHL Dr. Reshef stated, "If I had to offer a specific opinion, I think that obesity with BMI *above 30* (emp. added) is what's associated with non-Hodgkin lymphoma…it needs to be for several years." Abuzerr Decl., Ex. 1. *Wade et al.*, Reshef Dep. at 65:12-22.

> "**Q:** With respect to BMI… does it matter whether or not… the amount of fat a person has on their body or is it just solely body mass index. **A:**… This goes to the mechanistic understanding of why weight causes cancer or lymphoma specifically. And the thought is that it's contribution of mostly adipose tissue. But these are hypotheses. ***These are unproven hypothesis. I'm not familiar with studies that have looked at body composition in this context.***" (emp. added).

id. at 162:10-21. Dr. Reshaf's opinions now are inconsistent. Dr. Reshaf now opines that Mr. Cervantes' weight was a contributing factor in developing NHL, when Mr. Cervantes only had a BMI percentage of about 25-29.9, which is less than the reported percentage Dr. Reshef testified to previously. *See* Fredona Decl., Ex. 4, Reshef *Cervantes* Report at 24. Additionally, Dr. Reshef who testified that he was unfamiliar with studies that would support the association of obesity, weight and NHL, now relies on studies that were once available at the time of his deposition that was taken in 2019.

- 2 -

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

Further, Dr. Reshef provides opinions for Plaintiff Lorraine Rehak that are inconsistent and contradictory to his previously made testimony. Dr. Reshef opines that Ms. Rehak's smoking history contributed to the development of NHL. Fredona Decl., Ex. 11 Reshef *Rehak* Report at 23.

> "**Q:** Will you be offering an opinion that smoking is a risk factor for non-Hodgkin's lymphoma? **A:** No, mostly because I have not reviewed the literature. I know that there have been studies that have suggested that is, in fact, the case. ***But smoking seems to be a very, very minimal contributor to all lymphohematopoietic tumors.***" (emp. added).

*Wade et al.,* Reshef Dep., at 78:8-14. Yet again, Dr. Reshef has shown that his opinions are not only unreliable, but they contradict previously made testimony.

Similarly, Dr. Woda opines that smoking was a significant contributing risk factor in Plaintiff Robert Karman's case. *See* Fredona Decl., Ex. 18 at 25. However, in a past deposition Dr. Woda testified that smoking ***would be considered a weaker risk factor***. (emp. added). Abuzerr Decl., Ex. 2 *Leroy Seitz, et al.*, Woda Dep. at 86:10-87:2. Additionally, Dr. Woda has admitted previously that no matter how significant the amount of exposure to Roundup an individual has he will still opine that Roundup is not a risk factor for NHL. "**Q:** …it would not have made a difference with regard to Mr. Pinnon whether his exposure was for 40 hours during his life or 4,000? **A:** Since Roundup has not been shown to be deleterious to human health, I don't believe it would matter." id. at 88:23-89:6. Here, Defendant's experts have shown that not only have they failed to factor Roundup as a potential risk factor, but regardless of the exposure and evidence they will always opine Roundup did not contribute to Plaintiffs' NHL.

**B. Defendant's Case Specific Experts' Testimonies Should Be Excluded Because They Failed to Conduct Proper Assessments to Plaintiffs' Cases and Thus are Unreliable.**

First and foremost, it is important to note that due to the lack of cooperation from Defendant, Plaintiffs were not able to depose any experts. Thus, Plaintiffs had no choice but to

- 3 -

rely on prior depositions taken of only a select number of experts who have been deposed in prior cases. Not only did this burden Plaintiffs but Plaintiffs have been significantly handicapped in their ability to fully plead their *Daubert* and Dispositive Motions.

Dr. Bello should not be permitted to testify as well. Dr. Bello provides various factors she claims to have an association with NHL, such as immune disorders, age, gender, certain infections, exposure to benzene, exposure to solvents, drugs used during chemotherapy, obesity and exposure to radiation. *See* Fredona Decl., Ex. 5 & 17 Bello Reports at 4-6. Defendants have the burden to establish substantial evidence of alternate causes. *Steward v. Union Carbide Corp.* (2010) 190 Cal. App. 4th 23, 33. However, here Dr. Bello fails to provide a specific causation analysis and did not provide a differential assessment. In fact, Dr. Bello states in her report that "the exact cause of his DLBCL is not known…it is not possible to identify a specific external exposure or risk factor that led Mr. Peterson to develop DLBCL." *id.* Ex. 5 & 17, Bello Reports at 10. Although, Dr. Bello reports that "the exact cause…is not known" and "it is not possible to identify a specific external exposure or risk factor" Dr. Bello automatically rules out Roundup with no explanation.

Defendant retained Dr. LeBeau in order to testify on risk assessment, exposure, epidemiology, toxicology and dose assessment. Dr. LeBeau was not retained to opine on whether Roundup caused Plaintiffs' NHL. Yet, in his report Dr. LeBeau still attempts to make such an opinion without providing a differential assessment. "…It does not appear based on the evidence available to me that glyphosate can cause cancer in humans." *id.,* Ex. 19 LeBeau *Karman* Report at 27 ¶3. Further, Dr. LeBeau relies on the European Union Acceptable Operator Exposure Level (AOEL) to calculate dose levels as well acceptable dosage intake levels (ADI). However, it is unreliable. AOEL and ADI are not for the purposes of assessing cancer risk but rather noncancer health endpoints or "all health outcomes" as Dr. LeBeau stated in a previously taken deposition. Abuzerr Decl., Ex. 3 *Giglio* LeBeau Deposition at 136:1-138:25; 156:3-157:11. The issue at hand

- 4 -

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

is whether Roundup caused Plaintiffs' NHL and to rely on calculations that assess all health outcomes is overbroad and unreliable. Dr. LeBeau's testimony is not focused on cancers and will thus confuse the jury. Additionally, Dr. LeBeau includes a rebuttal portion in his report that identifies the UK Poem method in an effort to discredit Dr. Sawyer. However, although used in the past Dr. Sawyer did not use the UK Poem method to assess Plaintiff Karman. In fact, Dr. LeBeau even admits in his report that Dr. Sawyer did not apply the UK Poem method to Mr. Karman. *See* Fredona Decl., Ex. 19, LeBeau *Karman* Report. Here, Dr. LeBeau's opinions on the UK Poem should also be excluded because they are not relevant and will confuse the jury.

Dr. Matasar's opinions are also unreliable and should be excluded. Dr. Matasar was retained to provide expert testimony for Plaintiff John Schafer. Although Dr. Matasar reports that "the majority of the medical literature associates autoimmune thyroiditis and lymphoma of the ***thyroid gland***," (emp. added) specifically, he still opines that Mr. Schafer's Hashimoto's thyroiditis is a risk factor of NHL. *See* Fredona Decl., Ex. 23, Matasar *Schafer* Report at 12. Defendant seeks to have Dr. Matasar present opinions that are not even supported by medical literature and expects this Court to accept the broad generalization that because it is considered an autoimmune disease it increases the risk of NHL. Dr. Matasar's opinion will most likely mislead the jury by this broad characterization and should be excluded. Additionally, Dr. Matasar opines that Mr. Schafer's weight was a contributing weight factor to his NHL but fails to provide what Mr. Schafer's BMI even is or how significant it was to increase the risk of NHL.

Monsanto seeks to have Dr. Phalen present apples to oranges comparisons with the deliberate intent to confuse the jury. Dr. Phalen's systemic dose comparisons should be excluded as unreliable. Monsanto intends to have Dr. Phalen testify Plaintiff Pecorelli's exposure was 1000 times less than the U.S. EPA Chronic Reference Dose (RfD). Fredona Decl., Ex. 15, Phalen *Pecorelli* Report at 1. However, U.S. EPA Chronic Reference Dose (RfD) upon which Dr. Phalen

- 5 -

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

relies 1) is based on a reference dose in an animal study for injuries other than cancer and 2) relates to only glyphosate and not Roundup. In the *Johnson* trial, Monsanto argued that EPA dose references extrapolated from animal studies were unreliable. Abuzerr Decl., Ex. 4, *Johnson et al.*, Court Order. Nonetheless, Monsanto now seeks to present exactly such unreliable comparisons that they previously sought to exclude.

Defendant also claims that its experts' reports explain in great detail, the experts' case-specific assessments of the cause of each Plaintiff's NHL. *See* Def. Mot. ECF 12946 at 3. However, that is far from the truth. For example, Dr. Katchen fails to provide any case specific opinions other than providing an unreliable dosage calculation, where he excluded figures for the head, trunk or arms. *See* Fredona Decl., Ex.22, Katchen *Schafer* Report at 16. Additionally, Defendant's case experts automatically rule out Roundup as a factor based off the general information provided in their report about NHL, without assessing Plaintiffs. *id*., Ex. 3, Craig *Cervantes* Report at 21("In summary, it is my professional opinion as a physician-scientist and lymphoma pathologist that existing evidence does <u>NOT</u> support the conclusion that glyphosate-based herbicides, such as Roundup, contribute to the development of non-Hodgkin lymphoma"). Further Dr. Craig opines that Mr. Cervantes' occupational exposure could be a risk factor. Although reported Mr. Cervantes' was exposed for a period of 30 years, no data or statistics were provided as to how frequently Mr. Cervantes was exposed and how that factored into Dr. Craig's analysis of it contributing to Mr. Cervantes' NHL. id. at 22; id., Ex. 14 Fenske *Pecorelli* Report at 22 ("… It is my professional opinion that the weight of the human, animal, and *in vitro* evidence…suggests no significant association between the Roundup formulation of glyphosate and subsequent development of non-Hodgkin lymphoma"); Rather than providing a proper assessment of the Plaintiff, Dr. Fenske, laid out the Plaintiffs medical history and briefly concludes

- 6 -

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

"the best explanation for Mr. Pecorelli's MZL is that…it arose from the accumulation of random genetic changes that occurred within lymphocytes over his lifetime, which eventually accumulated to cause lymphoma. There are no features of the case to suggest Roundup as the cause of his lymphoma. Of note, because some of the pesticides that Mr. Pecorelli was exposed to have been associated with non-Hodgkin's lymphoma…it is not possible to…conclude that Roundup caused his cancer and that those other exposures did not."

id. at 28. Dr. Fenske attempts to opine that other pesticides could have contributed to the development of NHL yet fails to provide how frequently exposed Mr. Pecorelli was to other pesticides.

Defendant's other case experts similarly reported general opinions that Roundup does not increase the risk of NHL, rather than assessing the Plaintiff first. *id.,* Ex. 24, Slack *Schafter* Report at 14 ("Overall, the body and weight of scientific evidence from human studies examining the association between glyphosate exposure and lymphoma risk show there is no association between glyphosate use and risk of developing lymphoma and do not support the IARC's conclusion…"); id., Ex. 2, Call *Cervantes* Report at 18 ("Based on my review of data from the available literature, the weight of evidence shows no association between the use of glyphosate-based herbicides and NHL"); id., Ex.7, Daly *Peterson* Report at 38 ("A review of the vast majority of position statements of regulatory agencies or quasi-governmental organizations on glyphosate indicate that GBHs can be used safely, and that glyphosate does not cause cancer in humans"); id., Ex. 12 Weiss *Rehak* Report ("I am aware that IARC has classified glyphosate as 'probably carcinogenic to humans (Group 2A)(IARC 2015),' but this does not change my above opinions on risks of glyphosate for causing malignant lymphoma in human"). Here, Defendant's case expert even admits they are aware of the potential threats glyphosate poses to humans yet despite this information automatically rules it out without assessing the Plaintiffs.

### C. Defendant's Weed Scientists Al-Khatib, DiTomaso, Hanson and Creech's Testimony and Opinions Should Be Excluded Because They Are Improper.

Defendant has retained Dr. Al-Khatib, Dr. DiTomaso, Dr. Hanson and Dr. Creech as weed scientists, they are not pathologists, hematologists, or toxicologists. The opinions these experts proffer are completely irrelevant to the issues raised in this MDL. The issues raised by Plaintiffs concern Roundup and NHL. The opinions provided by weed scientists have no relevancy to whether or not Plaintiffs exposure to Roundup caused their NHL. Dr. Hanson has even testified in the past that he is not an expert on cancer. "**Q:**… you're not here to opine in any way about the safety of glyphosate and/or Roundup with the potential for developing cancer? **A:** No. ***I don't have any expertise in cancer***." (emp. added). Abuzerr Decl., Ex. 5 *Peterson & Hall* Hanson Dep. at 20:4-7. In fact, Defendant attempts to offer this Court testimony from experts who are not qualified to opine on certain issues. *See* Fredona Decl., Ex. 9, Al-Khatib *Rehak* Report at 48 ("Regarding the alleged exposure at… it is also unlikely Ms. Rehak was exposed to any significant amount of glyphosate while walking barefoot on an area previously spot treated with Roundup."); id., Ex. 20, DiTomaso *Karman* Report at 30 ("In summary, I believe that Mr. Karman would have had minimal, if any contact on his skin"); id., Ex. 8, Hanson *Peterson* Report at 46 ("Based on the products used, the small hardscaped area treated, and the application techniques described, Mr. Peterson's potential contact with the herbicide was minimal"); id., Ex. 1, Creech *Cervantes* Report at 32 ("…there was minimal chance for contact of Mr. Cervantes to glyphosate-based herbicides"). In fact, in a prior deposition Dr. Al-Khatib testified he was not an expert on exposure. "**Q:** In the deposition of Mr. Ashelman, you reviewed his testimony with respect to his exposure to his skin of glyphosate. **A:** I may have read that, but that's ***not my expertise.***"(emp. added). Abuzerr Decl., Ex. 6, *Wade et al.* Al-Khatib Dep. at 50:15-25. Any and all opinions about Plaintiffs and exposure levels should be excluded because these experts are not toxicologists, therefore, this Court should exclude such improper opinions.

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

For the reasons set forth above, the Court should grant Plaintiffs' Motion to Strike Certain General Opinions of Monsanto Company's Case Specific Expert Witnesses.

DATED: April 30, 2021

    Respectfully submitted,

    /s/ *Fatima Abuzerr*
    Ken Moll
    Rebecca Fredona
    Fatima Abuzerr
    **MOLL LAW GROUP**
    22 W Washington St
    15th Floor
    Chicago, IL 60602
    T: 312.462.1700
    F: 312.756.0045
    kmoll@molllawgroup.com
    rfredona@molllawgroup.com
    fabuzerr@molllawgroup.com

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/  *Fatima Abuzerr*

- 10 -

**REPLY IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN GENERAL OPINIONS OF MONSANTO COMPANY'S CASE SPECIFIC EXPERT WITNESSES**