Rebecca Smullin (CA Bar No. 250274)
Allison M. Zieve
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae
Public Citizen and Public Citizen Foundation

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2741 <br> ) <br> ) Case No. 3:16-md-02741-VC <br> ) <br> ) SUPPLEMENTAL MEMORANDUM OF AMICI <br> ) CURIAE PUBLIC CITIZEN AND PUBLIC <br> ) CITIZEN FOUNDATION IN OPPOSITION TO <br> ) MOTION FOR PRELIMINARY APPROVAL OF <br> ) PROPOSED CLASS SETTLEMENT, APPOINT- <br> ) MENT OF INTERIM CLASS AND SUBCLASS <br> ) COUNSEL, AND DIRECTION OF NOTICE |
| THIS DOCUMENT RELATES TO | |
| *Ramirez, et al. v. Monsanto Co.*, Case No. 3:19-cv-02224 | |

Date: May 19, 2021
Time: 10:00 AM
Place: Courtroom 4, 17th floor (Videoconference)
Judge: Honorable Vince Chhabria

Supplemental Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.     Due process and Rule 23 prohibit binding "futures" to the proposed settlement because it is impossible to provide them with effective notice............................................ 2

II.    The parties' proposal to implement the Accelerated Payment Awards program in advance of final approval violates Rule 23 ........................................................................ 4

III.   The revisions to the form of release fail to address the unwarranted confidentiality requirement. ....................................................................................................................... 8

IV.   Legal services program attorneys must disclose their relationship to plaintiffs' counsel and obtain informed consent from class members for the representation ............................ 8

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF SERVICE

Supplemental Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

## TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Pages**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................................2

*In re Diet Drugs*, 369 F.3d 293 (3d Cir. 2004) ...................................................................................3

*True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...............................7

**Rules**

Federal Rule of Civil Procedure 23(e) ............................................................................................4, 6

Federal Rule of Civil Procedure 23(e)(2) ............................................................................................6

Model Rule of Professional Conduct 1.7 ..........................................................................................10

Model Rule of Professional Conduct 1.8(f) ......................................................................................10

-ii-

Supplemental Memorandum of Amici Curiae Public Citizen in
Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

## INTRODUCTION

Faced with overwhelming opposition to preliminary approval of their proposed class-action settlement agreement, plaintiffs' counsel have submitted a reply (ECF 12911) responding to some of the points made in opposition and made changes to the proposed deal (ECF 12911-1) to try to persuade this Court to direct notice to the class and schedule the matter for a fairness hearing. Although the revised agreement resolves one issue raised in Public Citizen's amicus memorandum (ECF 12681-1), the revisions and plaintiffs' reply fail to resolve, and in some instances even to acknowledge, most of the concerns discussed in Public Citizen's amicus memorandum.

With respect to superiority and adequacy of representation, for example, neither the amended proposed settlement agreement nor the reply alters the intractable problems of a proposed class-action settlement that purports to permanently alter the rights of hundreds of thousands of people—including people who have not manifested injury and the large number of derivative claimants—a great many of whom have no idea that they are in the class or should pay attention to this case at this time. Whether such significant and permanent alteration of their rights would be wise is a matter that Monsanto and plaintiffs' counsel reasonably could take up with state or federal legislatures. It is not, however, within their power to affect this alteration through Rule 23.

Because the revised proposed settlement fails to satisfy due process and the requirements of Rule 23, the Court should deny the motion for preliminary approval, appointment of counsel, and direction of notice to the class.

- 1 -

Supplemental Memorandum of Amici Curiae Public Citizen
in Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

# ARGUMENT

I. **Due process and Rule 23 prohibit binding "futures" to the proposed settlement because it is impossible to provide them with effective notice.**

As explained in our amicus memorandum (at 7–14), due process and Rule 23 require the provision of effective notice to ensure that members of a Rule 23(b)(3) class have a meaningful opportunity to opt out. Plaintiffs' counsel respond that due process requires the "best notice practicable," which may not always be individual notice. Reply 27–28. Although that proposition is broadly correct, due process is not satisfied when the best notice practicable is not effective notice. Rather, where *effective* notice cannot practicably be provided, the class cannot be certified. Thus, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), in which "[m]any persons in the exposure-only category … [would] not even know of their exposure, or realize the extent of the harm they may incur," *id*. at 628, the Court "recognize[d] the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given," *id*.

In their reply, plaintiffs' counsel argue that their proposal "resolves the *Amchem* futures notice concern" by including an option to "opt out" four years after final approval. Reply 29. The so-called "back-end opt-out," however, does *not* in fact allow anyone to opt out of the class or the settlement. Rather, what counsel label a "back-end opt-out" or "back-end tort-system right," *id*., is an option to file suit years down the road, four years after final approval and any appeals, *see* Amended Sett. Agmt. § 18.2(b) ("Effective Date"), and subject to the restrictions set forth in the settlement agreement: relinquishment of any medical monitoring claim, waiver of punitive damages, and stipulation to the admission in evidence of the science panel determinations. *Id*. § 7.13(f). Binding people irrevocably to the terms of the settlement agreement does not in fact provide them a "back-end opt-out," and requiring the "futures" subclass to relinquish the right to

- 2 -

bring medical monitoring claims, as well as to seek punitive damages, is not a "back-end tort-system right."[1]

Plaintiffs' counsel's assertion that the proposed "back-end" option is better than the back-end opt-out right *In re Diet Drugs*, 369 F.3d 293 (3d Cir. 2004), *see* Reply 23, does not address the constitutional flaw. And their observation that, in *In re Diet Drugs*, "downstream opt-out rights were not absolute," *id.*, is likewise true here.

Moreover, the longer the litigation stay, the greater the burden on "futures" who become sick. Plaintiffs' counsel's response that such an amount of time "is not significant compared to the time it takes a case to get to trial or to be aggregated in a next-generation inventory settlement," Reply 87, fails to appreciate that the stay is cumulative with the time it will take to litigate or settle a claim brought after the expiration of the stay. Tacitly acknowledging that the litigation stay undermines the benefit of a class member's option to file suit (subject to certain conditions) after the claims period expires, the settling parties amended the agreement to allow for the possibility that a class member may be relieved from the stay if he or she can convince the settlement administrator that the class member has satisfied five conditions, including a demonstration of "exceptional and unusual hardship from waiting to exercise his or her tort-system rights." Amended Sett. Agmt. § 18.2(b)(iv). Such a narrow exception is insufficient to address the serious issues that bar including "futures" in a mass-tort class-action settlement.

As this Court earlier recognized, "[a] class that includes all Roundup users who will get cancer in the future is very different" from the classes in the cases on which plaintiffs' counsel

---

[1] As explained in our initial amicus memorandum (at 13), the proposed "Diagnostic Accessibility Grant Program" does not provide the same benefit as medical monitoring claims.

- 3 -

rely. Pretrial Order 214 at 3 (ECF 11182). In this case, where the proposed class includes potentially millions of individuals who are not recognizable as members of the class—not by the Court, by counsel, or by large numbers of the purported class members themselves—effective notice is not feasible. Due process does not permit certification of proposed subclass 2.

II.     **The parties' proposal to implement the Accelerated Payment Awards program in advance of final approval violates Rule 23.**

Plaintiffs' counsel urge the Court to "direct notice to the class of this proposed settlement so that the class members themselves may make their choices and voice their views" at the final approval stage. Reply 1. The proposed notice, however, by offering immediately available Accelerated Payment Awards, will implement provisions of a proposed class-action settlement and invite absent class members diagnosed with NHL to irrevocably release their claims against Monsanto in exchange for a mere $5,000, *before* the fairness hearing and *without* the court approval required by Rule 23(e).[2]

Our initial memorandum reflected our misunderstanding that a recipient of an Accelerated Payment Award could later apply for a Claims Program Award if the Court granted final approval. *See* PC Amicus Mem. 3. Further review, however, reveals that the Accelerated Payment Award is not an advance on later payments under the settlement agreement. Rather, a class member who applies and is found eligible for the "extra benefit" of an Accelerated Payment Award, Reply 58,

---

[2] *See* Amended Sett. Agmt., § 6.2(a)(i) ("Within 40 days after the preliminary Approval Order …, Settlement Class Members meeting the Eligibility Criteria set forth in Section 6.1 shall be eligible for a prompt payment of U.S. $5,000 from the Compensation Fund in exchange for executing the Form of Release attached as Exhibit 6."); *id*. § 3.6(a)(iii) (requiring Monsanto to begin funding the Compensation Fund to cover Advanced Payment Awards no later than 30 days after preliminary approval); *id*. Exhibit 2 at 11 (proposed notice stating "Accelerated Payment Awards may begin no later than Month XX, 202X [30 days after the Court grants preliminary approval of the settlement.]").

- 4 -

is barred from applying for a Claims Program Award.[3] In their reply, plaintiffs' counsel cite Public Citizen's amicus memorandum when briefly addressing the "extra benefit" of the Accelerated Payment Awards, Reply 58, but they do not point out or correct our misunderstanding. The revisions to the proposed settlement agreement likewise do not correct the serious problem we addressed. That problem is exacerbated by the fact that the settling parties do not intend the Accelerated Payments as an "extra benefit" for people diagnosed with NHL, but as the *only* benefit for those who receive them. The Accelerated Payment Awards alone warrant rejection of the proposed deal.

Through the Accelerated Payment Awards provisions of the proposed settlement, Monsanto seeks to use a court-approved notice to offer class members with NHL a one-time payment of $5,000—before the Court even considers whether to grant final approval—in exchange for a full release barring those injured individuals from filing suit against Monsanto and from applying for a larger award through the Claims Program, if it is implemented. *See* Amended Sett. Agmt. §§ 6.1 & 6.2; *see also* Reply 58 (stating that Accelerated Payment Awards will be paid "*before even final approval*" (emphasis added)). The parties appear to assume that the individual releases that result do not themselves require any approval if the Court grants preliminary approval and allows the proposed notice to be sent. *See supra* n.2. And unlike the Claims Program Award offers that a class member can consider and either accept or reject, a class member found eligible for an Accelerated Payment Award *cannot reject it*; he or she agrees to give up the right to sue

---

[3] *See* Amended Sett. Agmt. §§ 6.1(b), 6.2(a) (ECF 12911-1 at 23 & 24) (defining Accelerated Payment Awards and standard Claims Program Awards as the "two types of Compensation Awards" available under the agreement and providing that a class member may receive only one Compensation Award); *see also id.*, Exhibit 2 at 10–11 (ECF 12911-1 at 162–63) (proposed notice).

- 5 -

Monsanto just by applying for and being offered an Accelerated Payment Award. *See* Amended Sett. Agmt., Exhibit 2 at 18 (¶ 50).

That the Accelerated Payments Awards provisions are a part of a class action settlement requiring judicial review for fairness and adequacy is evident from both the proposed notice and from the proposed settlement agreement, which provides for the payments as one of two mutually exclusive forms of Compensation Awards available to the class and provides that the payments will come from the settlement's Compensation Fund. *See id*. § 6.2(a)(i); *see also id*. § 3.6(a)(iii). Nonetheless, upon an order granting the motion for "preliminary approval," the settling parties intend to implement this portion of the proposed settlement: That is, they propose to use a court-directed notice to entice unrepresented cancer-stricken class members to sacrifice valuable claims for a total of $5,000, in advance of the fairness hearing, and before this Court has a chance to rule on whether the settlement is fair, reasonable, and adequate *as required by Rule 23(e)*. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised *only with the court's approval*." (emphasis added)); *id*. Rule 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]").

Importantly, a total payment of $5,000 to an individual diagnosed with NHL following exposure to Roundup is patently unfair when compared to the awards in the Roundup cases tried to date ($5 million to $87 million) and to the average inventory settlements. Plaintiffs' counsel acknowledges that "[t]he compensation awards were negotiated in the wake of the inventory deals resolving the majority of outstanding individual cases," Pls. Motion for Preliminary Approval 42

- 6 -

(ECF 12531), and that the aggregate numbers of inventory settlements suggest an average settlement amount of more than $70,000, *see* Reply 52. If the parties did not propose to moot the issue by immediately implementing the Accelerated Payment Awards provisions of the proposed agreement prior to final approval, the amounts of court awards and inventory settlements would be highly relevant to the Court's final determination whether $5,000 is fair, reasonable, and adequate, because that determination would be made "in relation to the value of the claims surrendered." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1070 (C.D. Cal. 2010). Notably, the $5,000 payments offered to extinguish the claims of class members through the Accelerated Payment Awards so favor Monsanto that it plans to go forward with them *even in the absence of an approved class-action settlement* incorporating the concessions that the rest of the class will make to Monsanto if the deal is approved (such as the more-than-four-year litigation stay, waiver of medical monitoring and punitive damages, and the stipulation of admissibility of the science panel determinations).

Furthermore, the proposed settlement's supposed non-monetary benefits, such as diagnostic assistance and a label change, provide no value to the class members to whom the Accelerated Payment Awards are targeted, because such class members have already been diagnosed with NHL.

In short, what the settling parties tout as "an extra benefit to the class," Reply 58, is an attempt to use the notice of a pending class-action settlement to allow Monsanto to settle the potentially most valuable individual claims for an unconscionably low amount, while avoiding any judicial review of the fairness and adequacy of those settlements. The Court should refuse to authorize notice of the proposed settlement unless and until the Accelerated Payment Awards

- 7 -

Supplemental Memorandum of Amici Curiae Public Citizen
in Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

program is excised from the deal. If the Court waits until final approval to scrutinize the program, it will be too late to protect absent class members who apply for an Accelerated Payment Award.

### III. The revisions to the form of release fail to address the unwarranted confidentiality requirement.

The settling parties' proposed release form, Amended Sett. Agmt., Exhibit 6, continues to be titled "Confidential Release of All Claims," *id.*, Exhibit 6 at 1. Those who sign the form must acknowledge the "confidentiality of this Release," *id.*, Exhibit 6 at 9 (¶ 23), and of the indemnity agreement, *id.*, Exhibit 6 at 23. As Public Citizen explained in its amicus memorandum, the release form is already publicly available, so the only confidential aspect is that the class member has entered into the agreement. Plaintiffs' counsel is silent on this point, offering no justification for the provision.

There is no legitimate basis for Monsanto and plaintiffs' counsel to require confidentiality by class members as a condition of payment. Because the release form will be used in connection with the Accelerated Payment Awards (as well as Claims Program Awards), the Court should consider this issue at this preliminary stage, if the Accelerated Payment Awards program is not excised from the proposed settlement.[4]

### IV. Legal services program attorneys must disclose their relationship to plaintiffs' counsel and obtain informed consent from class members for the representation.

Plaintiffs' counsel's recent submission of a preliminary plan for operation of the legal services program (LSP) suggests that class members will have "the opportunity to confer with an independent (non-Class Counsel) attorney with relevant mass tort experience" for advice "on the

---

[4] Our amicus memorandum noted that the release included a non-disparagement clause that had no reasonable basis and was contrary to public policy. The settling parties have struck the non-disparagement clause from the release form. *See* Redlined Sett. Agmt. at 66 (ECF 12991-2).

- 8 -

threshold question of whether to opt out of or stay in the class." LSP Plan 2 & n.1 (ECF 13000). Presumably, LSP counsel will also advise class members on whether they should remain in the class and file an objection to final approval of the settlement. To the extent such counsel are truly "independent" of plaintiffs' counsel, the plan may be workable. The plan described, however, makes clear that LSP counsel will not be independent. For that reason, if the settlement is approved despite the intractable notice and Rule 23 concerns, the Court should require the LSP attorneys to disclose to class members the extensive relationships with plaintiffs' counsel that are inherent in the LSP's design and receive informed consent from class members for the representation.

The LSP attorneys will not be independent for several reasons. First, "Class Counsel and their respective law firms will serve among LSP counsel. They will also select and supervise" the other law firms that participate. *Id.* at 4. Second, the LSP attorneys will be paid "from any fees awarded to Class Counsel by the Court in connection with final approval," *id.* at 5, and "Monsanto has agreed to contribute $5 million … to compensate independent LSP counsel" for work performed "in the five months between preliminary and final approval," *id.* at 6. Third, "every LSP communication with a Class Member will be logged in a database to memorialize the communication, track the content of the inquiries, ensure continuity of communication, and enable oversight and quality control." *Id.* at 4. Because plaintiffs' counsel will be supervising the LSP lawyers, they will presumably have access to the attorney-client-privileged material in the database, and the privilege may be waived in the absence of a common interest agreement.

Under the Model Rules of Professional Conduct, these three features of the LSP require the informed consent of class members. *See* Rule 1.7 (requiring informed consent for common representation of multiple clients, including disclosure of the effect on client-lawyer

- 9 -

Supplemental Memorandum of Amici Curiae Public Citizen
in Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

confidentiality and the attorney-client privilege); Rule 1.8(f) (prohibiting a lawyer from accepting compensation for representing a client from one other than the client without informed consent, assurances of non-interference, and protection of confidential information relating to the representation).[5] The LSP is designed to begin before final approval. Therefore, before the Court directs notice to the class, it must determine whether appropriate safeguards are in place to protect the absentees who seek advice through the LSP. The submissions of plaintiffs' counsel thus far do not describe such safeguards.

## CONCLUSION

The Court should deny the motion for preliminary approval of proposed class settlement, appointment of interim class and subclass counsel, and direction of notice.

Date: May 3, 2021

Respectfully submitted,

 /s/ Rebecca Smullin
Rebecca Smullin (CA Bar No. 250274)
Allison M. Zieve
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae
Public Citizen and Public Citizen Foundation

---

[5] Each LSP attorney will be subject to the rules of their respective state bars. We cite the Model Rules because the "LSP counsel will be geographically diverse," LSP Plan 5, and the bar rules of most states closely track the Model Rules.

- 10 -

Supplemental Memorandum of Amici Curiae Public Citizen
in Opposition to Preliminary Approval of Proposed Settlement
MDL No. 2741, Case No. 3:16-MD-02741

## CERTIFICATE OF SERVICE

I hereby certify that, on May 3, 2021, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

                /s/ *Rebecca Smullin*
                Rebecca Smullin