Behram V. Parekh, SBN 180361
DALIMONTE RUEB STOLLER LLP
515 S. Figueroa Street, Suite 1550
Los Angeles, California 90071
T: 619.821.2305
F: 855.203.2035
E: behram.parekh@drlawllp.com

*Counsel for objecting putative class
member Adam Williams*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. 16-md-02741-VC |
| This document relates to:<br><br>*Ramirez, et al. v. Monsanto Co.*<br>Case No. 3:19-cv-02224 | SUR-REPLY OF PUTATIVE CLASS MEMBERS TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [D.E. 12531]<br><br>Date: May 19, 2021<br>Time: 10:00 AM<br>Place: Courtroom 4, 17th floor<br>Judge: Honorable Vince Chhabria |

From the perspective of putative class members, the re-re-revised proposed settlement, submitted to the Court on April 7, 2021 ("Plan D"), continues to be a bad solution in search of a problem. As the Ninth Circuit has noted numerous times, the class action device is primarily a vehicle to allow recovery where individual "recoveries [are] too small to incentivize individual litigation." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017). As is evidenced by the fact that there are tens of thousands of individually filed cases and many tens of thousands more of unfiled plaintiff cases, many of which have settled, that is not the case with Roundup. Putative class members who have been or will be diagnosed with Non-Hodgkin's Lymphoma ("NHL") as a result of Roundup use have plenty of law firms to choose from who will represent them on an individual basis; this is evident from the continued attorney advertising on the internet, on billboards, on the radio, and on TV, regarding Roundup. Thus, unlike in a typical consumer class action where superiority can be shown by the inability of putative class members to pursue individual litigation, in the proposed settlement, the significant rights given up by putative class members are not a necessary concession in order for those putative class members to recover damages – they can do so through individual litigation without giving up those rights. *Briseno*, 844 F.3d at 1129.

The only real beneficiary of the settlement is Monsanto. In exchange for a limited sum of money that Monsanto would have to pay anyway to settle individual cases, Monsanto gets:

1) The ability to continue selling Roundup;

2) No requirement that it warn that Roundup causes cancer;

3) No possibility of any punitive damages in future litigation by class members;

4) A four-year litigation stay;

5) A science panel that is still skewed in Monsanto's favor, which is required to meet standards of proof higher than that required by the tort laws of any state, which is still

>> not subject to full discovery as allowed by state and federal rules of civil procedure, and whose findings courts still cannot tell jurors they are free to ignore[1]; and
>
> 6) The ability to bind putative class members, which includes everyone who has been exposed to Roundup, in any way, even once, to these restrictions in perpetuity – even after the fund is exhausted, and those class members have no recourse but to file individual lawsuits.

The changes made in Plan D do not fix any of these fundamental problems and do not answer the serious legal and factual questions raised in objector Williams' opposition brief. In particular, even the changes made by Plan D do not alleviate the issues previously raised regarding the constitutionality of the science panel's abrogation of the right to a jury trial, violation of Article III, and the impingements on States' rights. For brevity, objector Williams will not repeat the arguments made in that brief here, but rather simply points out that the issues raised by him in his opposition brief have not been fixed by the changes made in Plan D. Two other issues raised in the opposition, however, require a degree of further explication.

## I.   THE PROPOSED CLASS DEFINITION IS TOO BROAD AND IS NOT APPROPRIATELY REFLECTED IN THE PUBLISHED NOTICE.

Plan D makes a significant revision to the class definition. The revised class definition, however, is still not only too broad, its breadth is also not properly reflected in the revised proposed publication notice. The revised class definition, in relevant part, states that it applies to all individuals that:

---

[1] The science panel is also particularly unnecessary and harmful to plaintiffs where, as here, there *already is* an internationally constituted and accepted science panel, the International Agency for Research on Cancer (IARC). IARC's Working Group consisted of 17 experts from 11 countries. The Working Group evaluated the carcinogenicity of organophosphate insecticides and herbicides, including Roundup. After reviewing published scientific evidence, they determined that the key ingredient of Roundup, glyphosate, was "probably carcinogenic to humans (Group 2A)." IARC Monograph on Glyphosate, https://www.iarc.who.int/featured-news/media-centre-iarc-news-glyphosate (last visited May 3, 2021). If Monsanto believes IARC erred, they can always ask IARC to re-evaluate their product. The proposed science panel in the class settlement, however, is clearly an attempt by Monsanto to do an end-run around the IARC finding.

>    have been exposed to Roundup Products through the application of Roundup Products as a result of either occupational exposure as an agricultural, industrial, turf, or ornamental worker, or residential or other exposure where the exposed individual purchased, prepared, used, or applied the Roundup Products, or paid for, directed, participated in, saw, or was told of the purchase, preparation, use, or application of the products.

Settlement Agreement at pp. 2-3 [D.E. 12911-1].

The class definition is too broad by including those exposed to Roundup, rather than limiting it to those who have been diagnosed with NHL,[2] and the definition of exposure to include those that "purchased, … paid for, directed, participated in, saw, or was told of the purchase, preparation, use, or application of the products" is unreasonable and not reflected in the proposed publication notice.  Unlike the proposed class definition provided in the Settlement Agreement, the proposed publication notice only refers to class members who were "exposed to Roundup Products in the United States through their work or personal *use*." See Wheatman Decl. at Exhibit A [D.E. 12975] (emphasis added). Any reasonable person reading that sentence would assume that the class was limited to those who actually mixed or applied the product. They would not realize they would be bound by the class settlement if they had just some degree of ancillary association to Roundup.  They would never know to even look at the full notice, much less the actual settlement agreement.

The proposed class definition as written is so broad that it would include, for example, individuals who were in the accounting department at a large agricultural company and approved the purchase of Roundup for use on a property hundreds of miles away, if they happened to visit that property once.  It would also include, for example, individuals living in an apartment complex where they once saw Roundup being applied by a landscaper, or were casually told it was used by their landlord.

---

[2] The unconstitutionality of a futures class has been well briefed elsewhere and will not be repeated here.

3

It is unreasonable to think these individuals would review the proposed publication notice and accurately identify themselves as class members. Without such self-identification, they would never know that they would need to object or opt-out of the settlement in order to be free of the significant limitations imposed by the settlement on their ability to bring litigation in the future. Yet, that is exactly the effect of the class definition as written. If these individuals then go on at some point in their lives to actually use Roundup, are diagnosed with NHL, and attempt to sue Monsanto, they will suddenly discover that they are bound by restrictive settlement provisions they had no reason to know about.

The overbreadth of the class definition violates Rule 23(b)(3)'s requirement of superiority. The harm posed by being unknowingly subject to the class definition is a significant reduction in putative class members' rights to fully litigate their claims which, based upon the jury verdicts to date, could be in the tens of millions to hundreds of millions of dollars with the addition of punitive damages. The superiority requirement of Rule 23(b)(3) requires that a class only be certified if it will "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, ***without sacrificing procedural fairness or bringing about other undesirable results***." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations and citation omitted) (emphasis added).

Here, the breadth of the class definition will lead to procedural unfairness as hundreds of thousands of individuals will be unknowingly swept up as class members without adequate notice. Further, as discussed in objector Williams' opposition brief, the proposed settlement will also lead to other undesirable results. The entire proposed *raison d'etre* of the class settlement, that is, providing a streamlined process for people injured by Roundup to accept or reject a certain settlement value, could be implemented unilaterally by defendants without the need for a class at all. The only reason a class is proposed is because the class settlement acts as a get-out-of-jail-almost-free card for defendants by allowing them to continue selling Roundup indefinitely

while simultaneously not being subject to punitive damages for their conduct, all for a limited sum of money which could easily be dwarfed by just a few punitive damages verdicts.

## II. THE PROPOSED SETTLEMENT CONTINUES TO LACK CRITICAL INFORMATION NECESSARY TO ALLOW THE COURT AND CLASS MEMBERS TO PROPERLY EVALUATE IT.

Despite submitting numerous declarations, a lengthy reply brief, and an amended agreement, the proponents of the proposed settlement still fail to answer key questions in order to allow the Court and putative class members to evaluate it. In particular, the Northern District's procedural guidance for class actions provides, in relevant part, that the proponent of the class action settlement must provide "the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise." *See* Proc. Guidance for Class Action Sett., Prelim. Appr., ¶1(e).

First, the revised proposed settlement and accompanying reply continue to lack the necessary factual foundation that would inform the Court and class members whether class members are receiving grossly disproportionate treatment as compared to the plaintiffs in the inventory settlements negotiated by Monsanto. At a minimum, the proponents of the class settlement, which includes Monsanto's counsel, should have provided a disclosure of the amounts of the inventory settlements, the criteria used in those settlements, and the per-case-averages, so that putative class members and the Court could understand how the proposed settlement compares to what similarly situated individuals with individual legal representation are getting in the tort system. This is information that is within Monsanto's possession and could easily have been provided.[3]

Second, as to Subclass 2 (those class members who are not yet diagnosed with NHL), the revised proposed settlement and accompanying declarations continue to fail to demonstrate that

---

[3] It is no excuse for Monsanto to claim this information is confidential. The information is confidential due to a requirement imposed by Monsanto, and Monsanto could certainly waive the confidentiality requirement. Further, the information could be suitably anonymized and/or produced in aggregate form to avoid any issues with confidentiality.

Subclass 2 was adequately represented. In particular, the revised settlement agreement and reply fail to provide any explanation for why binding putative class members to significant restrictions on their ability to litigate their individual cases – when most of them will likely receive no compensation under the class program due to exhaustion of funds – is fair, adequate, or reasonable.  Even accepting the numbers advanced by the proponents of the class settlement, over 91% of the total fund is expected to be consumed by claims within the first four-year period.[4]  Reply at p. 53 [D.E. 12911]. Presumably, the remaining 9% would last for only a few more months after that. Yet, the restrictions on putative class members' rights *extend into perpetuity*.  How can that situation possibly pass due process? *See, e.g., Stephenson v. Dow Chemical Co.,* 273 F.3d 249, 258 (2d Cir. 2001), *aff'd in relevant part by Dow Chem Co. v. Stephenson*, 539 U.S. 111 (2003).  The proponents of the class settlement, and particularly the counsel who are supposed to represent the interests of Subclass 2, provide no answer.

### III.   CONCLUSION

For the foregoing reasons, those advanced by objector Williams in his opposition, as well as those advanced by other objectors in their opposition and sur-reply briefs, putative class members respectfully request that the Court deny the Motion.

Dated: May 3, 2021                                         Respectfully Submitted,

                                              By:    /s/ *Behram V. Parekh*
                                                     Behram V. Parekh
                                                     DALIMONTE RUEB STOLLER LLP
                                                     515 S. Figueroa Street, Suite 1550
                                                     Los Angeles, California 90071
                                                     T: 619.821.2305
                                                     F: 855.203.2035
                                                     E: behram.parekh@drlawllp.com

                                                     *Counsel for putative class member Adam Williams*

---

[4] As noted in the objector Williams' opposition brief, this number is disputed, and calculations provided therein show that the fund will most likely be exhausted even prior to the four-year expiration.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of May, 2021, a copy of the foregoing Motion was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

        By:    /s/ *Behram V. Parekh*
                  Behram V. Parekh
                  DALIMONTE RUEB STOLLER LLP
                  515 S. Figueroa Street, Suite 1550
                  Los Angeles, California 90071
                  T: 619.821.2305
                  F: 855.203.2035
                  E: behram.parekh@drlawllp.com

                  *Counsel for putative class member*
                  *Adam Williams*