Leslie Brueckner (SBN 140968)
Ellen Noble
PUBLIC JUSTICE
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: (510) 622-8205
lbrueckner@publicjustice.net
enoble@publicjustice.net

*Counsel for Amicus Curiae Public Justice*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| This document relates to: *Ramirez, et al. v. Monsanto Co.* Case No. 3:19-cv-02224 | Case No. 16-md-02741-VC **SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF PUBLIC JUSTICE, P.C. IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT APPOINTMENT OF INTERIM CLASS AND SUBCLASS COUNSEL, AND DIRECTION OF NOTICE** The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

   A.  It's Impossible to Give Constitutionally Adequate Notice to this Class—
       and the Amendments to the Settlement Do Nothing to Change That.................................2

   B.  Only an Unfettered Back-End Opt Out Could Satisfy Due Process—
       But this Settlement Does Not Provide One.........................................................................3

CONCLUSION..................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem v. Windsor Products, Inc.*,
   521 U.S. 591 (1997) ........................................................................................... 5, 9

*Bates v. Dow Agrosciences, LLC*,
   544 U.S. 431 (2005) ........................................................................................... 9, 10

*Stephenson v. Dow Chemical Co.*,
   273 F.3d 249 (2d Cir. 2001), *aff'd in relevant part by evenly divided
   vote Dow Chem Co. v. Stephenson*, 539 U.S. 111 (2003) ......................................... 4, 8

**Statutes**

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq*. .................... 10

## INTRODUCTION

This supplemental brief addresses the amendments to the proposed Settlement filed on April 7, 2021.  *See* ECF 50 Exh. A ("Settlement").  In Public Justice's view, none of these amendments cures the most fundamental defect of this Settlement: it violates due process because the class includes unaccrued "future" personal injury claims of individuals who have been exposed to Roundup but have not yet been diagnosed with non-Hodgkin's lymphoma ("NHL").  This fact alone renders this Settlement unapprovable on its face, because such individuals cannot be provided constitutionally adequate notice—and because the back-end opt out provided by the Settlement remains too encumbered to cure that central defect.

The inclusion of future claims is particularly problematic because this Settlement would even restrict the rights of future victims who don't get any money from this deal.  As explained below, the proposed notice makes clear that class members who do not get NHL within the Settlement period—and thus aren't entitled to any compensation—but who get NHL *later*, after the Settlement has expired, would *still* be barred from suing Monsanto for punitive damages *and* would be subject to the Science Panel's conclusions.  In other words, such class members would have their rights infringed for nothing—a result that violates due process.  *See Stephenson v. Dow Chemical Co.,* 273 F.3d 249, 258 (2d Cir. 2001) (allowing collateral attack on class action settlement that purported to bind Agent-Orange victims "whose injuries manifested after depletion of the settlements funds."), *aff'd in relevant part by evenly divided vote Dow Chem Co. v. Stephenson*, 539 U.S. 111 (2003).  That alone is reason enough to reject the proposed Settlement.

### A. It's Impossible to Give Constitutionally Adequate Notice to this Class—and the Amendments to the Settlement Do Nothing to Change That.

Like the proposed class in *Amchem v. Windsor Products, Inc.*, 521 U.S. 591 (1997), the Settlement includes millions of individuals who have been exposed to a dangerous product but have not yet gotten sick from that exposure. As previously argued (*see* Amicus Curiae Brief of Public Justice filed March 5, 2021, ECF No. 34), it is impossible to provide constitutionally adequate notice to such "future" victims because even class members who know they've been exposed to Roundup and who receive direct notice of the settlement cannot meaningfully evaluate, in advance, whether they would want to sue Monsanto if and when they get NHL. *See id* at 9 (citing, *inter alia*, *Georgine v. Amchem Prods.*, Inc., 83 F.3d 610, 617 (3d Cir. 1996), *aff'd sub nom. Amchem v. Windsor Prods., Inc*, 521 U.S. 591 (1997)). Many such individuals would simply disregard the notice, only later to find that they are bound by the terms of a settlement that they never understood in the first place. That would violate due process.

None of the recent amendments to the Settlement cures the problems related to the inclusion of future claims. Although the class definition has been amended to exclude many individuals who were unknowingly exposed to Roundup, it still includes millions of unmanifested future claims, including those of individuals who used (or use) Roundup at work or at home, along with accompanying "derivative" claims. As the Third Circuit observed in *Georgine*, even class members who know they have been exposed "may pay little attention to class action announcements." 83 F.3d at 633. And class members who realize that they have been exposed and actually read the class notice may lack the information they need to understand the valuable rights they would be giving up if they don't opt out. *Id.*; *see also Amchem*, 521 U.S. at 627 (noting that "those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out."). So the notice problems created

2

by the inclusion of future claims in this class are not cured by the recent amendments—which means that the Settlement would still infringe on class members' due process right to opt out of this class at the front end, before they get NHL from Roundup.

### B. Only an Unfettered Back-End Opt Out Could Satisfy Due Process—But this Settlement Does Not Provide One.

The only way a "futures" settlement like this one might pass constitutional muster is if it gave class members the unrestricted ability to opt out at the "back end" and return to the tort system if and when they get NHL (or any other disease) from the defendant's product. That type of unrestricted opt out would arguably satisfy due process because it would not require class members to sign away any rights in advance with regard to unmanifested claims that have not yet arisen.

But this Settlement contains no such unfettered opt out right. Far from it. Although class members who get NHL could reject the Settlement's compensation and return to the tort system, they would be forbidden seeking punitive damages and medical monitoring *and* be required to stipulate to the admissibility of the Science Panel's determination as to whether NHL causes cancer—a determination that is almost certain to favor Monsanto. *See* Public Justice Amicus Brief, ECF No. 34, at 13-14. Class members would also be subject to the Litigation Stay, a stay that creates an additional disincentive for class members to reject the Settlement and sue on their own. *See id.* at 23-25.

We previously argued that these features of the Settlement render the back-end opt-out too encumbered to pass constitutional muster (*id*. at 9-26)—and none of the recent amendments cures this basic problem.

**1**. First, the Science Panel remains a significant restriction on class members' rights, notwithstanding the recent amendments. Although the Panel has been improved in certain

3

limited respects, class members are still required to stipulate to the admissibility of the Science Panel's findings. *See* Settlement § 12.3(d)(ii). Just as important, the Panel is still required to find No Causation if its members can't agree on a threshold internal dose for NHL (*id.* § 12.3(b))—a feature that virtually ensures a finding of No Causation. *See* Public Justice Amicus Brief, ECF No. 34, at 13-14; *see also* ECF No. 12681 Exh. C (Declaration of George Rodgers, M.D., Ph.D., accompanying Slovitor Objections).[1] And the Settlement still purports to prevent judges from instructing juries that the Science Panel's findings are not binding (*id.* § 12.3(d)(4)), which will make it even more likely that Monsanto will win any trials brought by class members who opt out at the back end of this Settlement. *See* Public Justice Amicus Brief, ECF No. 34, at 14.

---

[1] Class counsel have no response to the Rodgers declaration; indeed, they do not even cite it in their reply. But his declaration is important, because it because it shows why the Science Panel will likely find No-Causation even if it finds that Roundup causes NHL. As Dr. Rodgers explains (at ¶ 9), it is "not within the medical or scientific standard of care" to "decide on a single minimal internal dose before a primarily airborne environmental toxic can cause a specific human cancer." He further explains (at ¶ 12) that even if the Science Panel *could* agree on such a minimal dose for Roundup, "it would still not be possible to then calculate an internal dose based on past exposure in a trial setting, as is assumed by the science panel's exercise. The best that can be done is to estimate the frequency, duration and proximity of exposure. But this only explains what an individual might have been exposed to; it does not measure what actually entered that individual's body which is what internal dose means." Rather than respond to these points, class counsel argue that the Science Panel can either rely on Proposition 65's dose level for glyphosate or some "different published and peer reviewed methodology to determine threshold internal dose…" ECF No. 50 at 78. This ignores that Proposition 65 merely establishes a "No Significant Risk Level" for purposes of issuing a cancer *warning* on a glyphosate-containing product; it has nothing to do with how much exposure to Roundup is sufficient to *cause NHL* in a particular individual. *See* https://oehha.ca.gov/media/downloads/proposition-65/chemicals/glyphosate032917isor.pdf. And the *latter* question cannot be answered with any certainty, because pesticides are too dangerous to be tested on humans. That's why the requirement that the Science Panel must find No Causation if it can't determine a minimal dose level for NHL will likely yield a No-Causation determination.

**2**.  The amendments to the Settlement also do not rectify the serious problems created by the release of punitive damages.  We have argued that this feature of the Settlement is particularly troubling because Roundup is still on the market—a fact that readily distinguishes this case from the other class actions cited by Class Counsel as models for this Settlement.  Importantly, there has never been a release of punitive damages in a class action settlement involving a hazardous product that was still on the market.  If this Court approves this Settlement, it would be the first time that has ever happened in the history of American jurisprudence.

The recently filed Settlement Notice makes clear, moreover, that the release of punitive damages is even more onerous than we originally understood, because the Settlement purports to bind even those class members who receive *no* compensation from this Settlement because they do not contract NHL within the Settlement period.  The proposed notice says the following:  "*If the Court does not approve the extension of the Compensation Fund or if Monsanto wants to end the program*, any settlement class members who did not (1) accept and receive a compensation award and (2) sign a full release will be able to individually sue Monsanto for *compensatory* damages involving their exposure to Roundup Products."  *See* ECF No. 50 Exh. 2 at 13 (emphases added).

The italicized language shows that in the event "Monsanto wants to end the program" (*id*.), class members who do not get NHL during the Settlement period (and thus are not offered any compensation because they haven't yet been injured) can only sue Monsanto for *compensatory* damages—they won't be able to seek punitive damages later in their individual cases against Monsanto.  So they would get their rights cut off for nothing.  That cannot stand. *See Stephenson*, 273 F.3d at 258 (allowing collateral attack on class action settlement that

5

purported to bind Agent-Orange victims "whose injuries manifested after depletion of the settlements funds.").[2]

Adding to the impact of this provision is the fact that the Settlement includes an exceptionally broad release that even binds class members who do not receive any monetary relief from the Settlement. *See* Settlement § 17.2 (providing that, "[i]n consideration of the benefits described and the agreement and covenants contained in the Settlement Agreement, … the Settlement Class Member Parties hereby waive and release, forever discharge and hold harmless the Monsanto Parties and the Related Parties, of and from any and all Claims, *including unknown Claims*, for punitive . . . damages arising from, resulting from, in any way relating to or in connection with Roundup Claims, Roundup Lawsuits and/or Related Party Lawsuits."). Under this provision, all class members, including those who receive no compensation from this Settlement, will be barred from ever suing Monsanto for punitive damages even as to "unknown Claims" that are "in any way related to" Roundup. This should be a bridge too far no matter how restrictively one chooses to read *Amchem*'s cautionary language about the constitutional problems raised by class-wide resolution of unmanifested personal injury claims. *See* 521 U.S. at 628.

Importantly, the Settlement's release of punitive damages is not just a matter of concern to the class members whose rights are being cut off; it also has serious public health implications. As the Supreme Court recognized in *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431 (2005), the tort system plays a crucial role in keeping the public safe from the hazards of

---

[2] Class counsel may respond that even class members who don't get any monetary relief from the Settlement will still benefit from its other benefits (the diagnostic program, label change, and research fund). The limited value of these Settlement benefits has been addressed by various objectors; those arguments will not be repeated here, except to note that none of the amendments makes these features of the Settlement any more valuable to the class.

dangerous pesticides. *See id.* at 451. The federal statute that governs pesticides in the United States—the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*—was designed to give states broad concurrent authority to regulate pesticides, including via their tort systems, based on Congress's recognition that the federal government alone is incapable of protecting the public from dangerous pesticides. *See id.* This Settlement would disrupt this scheme by creating a blueprint for how manufacturers can cut off victims' rights to seek punitive damages from injuries caused by hazardous pesticides. That would not just infringe on the rights of personal injury victims; it would disrupt FIFRA itself and endanger public health.

**3**. The amendments to the Settlement also do not cure the problems posed by the four-year Litigation Stay, which further impinges on class members' opt out rights. *See* Public Justice Amicus Brief, ECF No. 34, at 23-25. The undefined "exceptional hardship exception" is an improvement, but it does not alter the fact that the Litigation Stay will chill class members' ability to reenter the tort system. Why not simply allow class members to reenter the tort system if they don't like the relief offered them by the Settlement? The only possible answer is that Monsanto wants the Stay in place so that it can introduce the Science Panel's findings in any future litigation relating to Roundup—which just underscores why that aspect of the Settlement should give this Court serious pause.

In short, the recent amendments to the Settlement do not address its core defect. It is not constitutionally permissible to use a class action to resolve the unmanifested future claims of individuals who have been exposed to Roundup. Monsanto would like to use the class action device to cap its future liability so that it can continue doing business as usual, selling dangerous

7

products like Roundup with impunity.  But the U.S. Constitution does not permit this result; it guarantees each person due process under the law.  The Settlement should be rejected.

## CONCLUSION

For all these reasons, and those previously stated, we urge the Court to deny the motion for preliminary approval of the proposed Settlement.

Dated: May 3, 2021

Respectfully submitted,

 /s/ Leslie Brueckner
Leslie Brueckner (SBN 140968)

Ellen Noble
PUBLIC JUSTICE
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: (510) 622-8205
lbrueckner@publicjustice.net
enoble@publicjustice.net

*Counsel for Amicus Curiae Public Justice*