**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:  (713) 227-8008
Facsimile:  (713) 227-9508
Email:      jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Gerald Manley Shook, Jr. and Cheryl Marie Shook v. Monsanto Co.,* Case No. 3:21-cv-03415-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' PETITION

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiffs Gerald Manley Shook, Jr. and Cheryl Marie Shookk's Complaint and Jury Demand ("the Complaint"), except as set forth below. As defined in the Complaint and as used in this answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Although many paragraphs in the Complaint allege exposure or use of Monsanto products by "Plaintiffs," Monsanto nevertheless responds to the allegations in those paragraphs as if they refer to plaintiff Gerald Manley Shook, Jr. Silence as to any allegations shall constitute a denial.

1.      In response to the allegations in paragraph 1, Monsanto admits that plaintiffs purport to bring an action for damages allegedly related to exposure to Roundup®-branded products but denies any liability as to plaintiffs' claims. Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the United States Environmental Protection Agency ("EPA") repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second, third, fourth, and fifth sentences of paragraph 1 and therefore denies those allegations. Monsanto admits the allegations in the last sentence of paragraph 1. Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in the first three sentences of paragraph 2. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto states that the document cited and quoted in paragraph 2 speaks for itself and does not require a response.

3.      In response to the allegations in paragraph 3, Monsanto admits that it has manufactured Roundup®-branded products that have glyphosate as the active ingredient. In response to the remaining allegations in paragraph 3, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly has concluded, pursuant to the FIFRA, that glyphosate-based herbicides create no unreasonable risk

to human health or to the environment when used in accordance with the label.  To the extent that the allegations in paragraph 3 suggest that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.  Monsanto denies the remaining allegations in paragraph 3.

4.     For purposes of this answer, Monsanto accepts the allegations regarding North Carolina residency in paragraph 4.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and therefore denies those allegations.

5.     Monsanto denies the allegations in of paragraph 5.

6.     In response to the allegations in the first and last sentences of paragraph 6, Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of remaining allegations in paragraph 6 and therefore denies those allegations.

7.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and therefore denies those allegations.

8.     In response to the allegations in paragraph 8, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings.  Monsanto also admits that EPA repeatedly has concluded, pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.  To the extent that paragraph 8 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to

such regulatory approval, Monsanto denies such allegations. Monsanto denies the remaining allegations in paragraph 8.

9.      The allegations in paragraph 9 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 9 based upon the allegations in plaintiffs' Complaint.

10.      The allegations in the first sentence of paragraph 10 set forth conclusions of law for which no response is required. In response to the allegations in the second sentence of paragraph 10, Monsanto denies certain events giving rise to plaintiffs' claims and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where certain other events giving rise to plaintiffs' claims occurred and therefore denies those allegations. In response to the allegations in the third and fifth sentences of paragraph 10, Monsanto admits that it has sold Roundup®-branded herbicides within North Carolina. In response to the allegations in the fourth sentence of paragraph 10, Monsanto admits that it is authorized to do business in North Carolina. In response to the allegations in the last sentence of paragraph 10, Monsanto admits that plaintiffs purport to bring an action for damages allegedly related to plaintiff's exposure to Roundup®-branded products but denies any liability as to plaintiffs' claims.

11.      In response to the allegations in paragraph 11, Monsanto admits that glyphosate repeatedly has been found safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that EPA repeatedly has concluded, pursuant to FIFRA, that glyphosate based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that the allegations in paragraph 11 allege that Monsanto has labeled glyphosate or Roundup®-

branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.   Monsanto further admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling.   Monsanto admits the allegations in the third sentence of paragraph 11.   Monsanto denies the remaining allegations in paragraph 11.

12.     In response to the allegations in the first sentence of paragraph 12, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds and that glyphosate is the active ingredient in Roundup®-branded herbicides.   Monsanto admits the allegations in the second sentence of paragraph 12.   Monsanto denies the allegations in the third sentence of paragraph 12 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the fourth sentence of paragraph 12 to the extent that it suggests that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by the EPA. Monsanto denies the remaining allegations in paragraph 12.

13.     Monsanto admits the allegations in the first sentence of paragraph 13.   Monsanto denies the remaining allegations in paragraph 13.

14.     In response to the allegations in paragraph 14, Monsanto admits that, at certain times, glyphosate has been the most commonly used herbicide but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.   Monsanto denies the allegations in the first sentence of paragraph 14.   In response to the allegations in the last sentence of paragraph 14, Monsanto admits that the EPA repeatedly has concluded, pursuant to the FIFRA, that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label.   To the extent that the allegations in the last sentence of paragraph 14 suggest that Monsanto has labeled glyphosate or Roundup®-branded herbicides in

any manner different or in addition to such regulatory approval, Monsanto denies such allegations. The remaining allegations in paragraph 14 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

15. Monsanto denies the allegations in paragraph 15.

16. Monsanto denies the allegations in paragraph 16.

17. In response to the allegations in paragraph 17, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. The remaining allegations in paragraph 17 are vague and ambiguous and set forth attorney characterizations and are accordingly denied.

18. In response to the allegations in paragraph 18 and each of its subparts, Monsanto states as follows: Monsanto denies that glyphosate or Roundup®-branded products cause cancer. The allegations in paragraph 18 and its subparts take statements out of context; are vague, misleading, incomplete, and conclusory; and/or comprise attorney characterizations – and are accordingly denied. Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. To the extent that the allegations in paragraph 18 or its subparts purport to quote a document, the document speaks for itself and does not require a response. To the extent that the allegations in paragraph 18 or its subparts characterize the meaning of a document, Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 18, including each of its subparts.

19. Monsanto lacks information or knowledge sufficient to form a belief as to the allegations regarding plaintiffs' belief, knowledge, and reliance in paragraph 19 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 19. Monsanto

states that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

20.     In response to the allegations in paragraph 20, Monsanto admits that the IARC issued a monograph relating to glyphosate in 2015 and that an IARC working group classified glyphosate under Group 2A, but denies that the IARC Monograph is the authoritative standard for cancer hazard assessment around the world or that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate. Monsanto states that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015. Monsanto further admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the fifth sentence of paragraph 20 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 20.

21.     The allegations in paragraph 21 set forth conclusions of law for which no response is required.

22.     Monsanto admits the allegations in the first sentence of paragraph 22. Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 22 set forth conclusions of law for which no response is required.

23.     In response to the allegations in paragraph 23, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve

- 7 -

the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 23 set forth conclusions of law for which no response is required.

24.     The allegations in paragraph 24 set forth conclusions of law for which no response is required.

25.     In response to the allegations in paragraph 25, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA for product safety. The remaining allegations in paragraph 25 set forth conclusions of law for which no response is required.

26.     Monsanto denies the allegations in paragraph 26 to the extent they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. The remaining allegations in the first, second, third, fourth and fifth sentences of paragraph 26 set forth conclusions of law for which no response is required. In response to the remaining allegations in paragraph 26, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies. Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides. Monsanto denies the remaining allegations in paragraph 26.

27.     To the extent that the allegations in paragraph 27 purport to quote a document, the document speaks for itself and does not require a response.  To the extent that the allegations in paragraph 27 characterize the meaning of a document, Monsanto denies those allegations.  Monsanto denies the remaining allegations in paragraph 27.

28.     In response to the allegations in the first, second, third, and fourth sentences of paragraph 28, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings.  Monsanto states, however, that:  (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2]  Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3]  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first,

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094.  The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

second, third, and fourth sentences of paragraph 28 and therefore denies these allegations.   In response to the allegations in the last sentence of paragraph 28, Monsanto admits that the IARC working group classified glyphosate under Group 2A.  The remaining allegations in the last sentence of paragraph 28 comprise attorney characterizations and are accordingly denied.

29.     In response to the allegations in paragraph 29, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016.  Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 29 and therefore denies those allegations.

30.     Monsanto denies the allegations in paragraph 30.

31.     In response to the allegations in paragraph 31, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies.  Monsanto admits that plaintiffs have accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans.  In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen]—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."  EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

- "No evidence of carcinogenicity."   Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 ("EPA 2015 Desk Statement").

Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 31.

32.    In response to the allegations in paragraph 32, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of glyphosate. Monsanto admits that Industrial Bio-Test Laboratories ("IBT") was hired to conduct studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

33.     Monsanto denies the allegations in paragraph 33 to the extent they suggest that FDA performed an inspection of IBT laboratories solely or specifically in connection with studies conducted on glyphosate.  Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate.  Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid.  As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines.  Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies.  To the extent that the allegations in paragraph 33 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations. Monsanto admits that three managers in IBT's toxicology department were convicted of the charge of fraud, but denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

34.     In response to the allegations in the first and second sentences of paragraph 34, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products.  Monsanto further admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost.  To the extent that the allegations in the first and second sentences of paragraph 34 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies such allegations.  Monsanto admits that it has stated that Roundup®-branded products are safe when used in accordance with the products' labeling.  All labeling of Roundup®-branded products has

- 12 -

been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto denies the remaining allegations in paragraph 34.

35.     The allegations in the first, second, and third sentences of paragraph 35 are vague and conclusory and comprise attorney characterizations, and are accordingly denied. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 35 and therefore denies those allegations.

36.     Monsanto denies the allegations in paragraph 36.

37.     The allegations in the first and second sentences of paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied. The remaining allegations in paragraph 37 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

38.     In response to the allegations in paragraph 38, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup® products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. Monsanto denies the remaining allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. Monsanto denies the allegations in first sentence of subpart 12 of paragraph 39. In response to the remaining allegations in subpart 12 of paragraph 39, Monsanto admits it entered into an assurance of

discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. To the extent the subparts to paragraph 39 purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 39 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

40.     Monsanto denies the allegations in paragraph 40. To the extent that allegations in footnote 18 of paragraph 40 cite and/or summarize information about legal proceedings from a Department of Justice website, the statements on that website speak for themselves and do not require a response. To the extent that allegations in footnote 18 of paragraph 40 incorrectly characterize those legal proceedings, Monsanto denies those allegations.

41.     Monsanto denies the allegations in the first sentence of paragraph 41. Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 41 to the extent they suggest that this ruling was in any way related to plaintiffs' claims here that glyphosate can cause cancer. The remaining allegations in paragraph 41 are vague, ambiguous, and conclusory and comprise attorney characterizations and are accordingly denied.

42.     Monsanto denies the allegations in the first sentence of paragraph 42. In response to the allegations in the second sentence of paragraph 42, Monsanto admits that IARC is a subgroup of the WHO. The remaining allegations in paragraph 42 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

43.     In response to the allegations in paragraph 43, Monsanto states that the cited document speaks for itself and does not require a response.

44.     In response to the allegations in the first sentence of paragraph 44, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity

evaluations.  Monsanto denies the allegations in the second and third sentences of paragraph 44. In response to the allegations in the fourth sentence of paragraph 44, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

45.   Monsanto denies the allegations in paragraph 45 to the extent that they suggest that IARC had previously assessed glyphosate.  Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

46.   In response to the allegations in the first and second sentences of paragraph 46, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.   In response to the remaining allegations in paragraph 46, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group.  To the extent that the remaining allegations in paragraph 46 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

47.     In response to the allegations in paragraph 47, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015 and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working group are "experts." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 and therefore denies those allegations.

48.     In response to the allegations in paragraph 48, Monsanto denies the IARC working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 and therefore denies those allegations.

49.     In response to the allegations in paragraph 49, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

50.     In response to the allegations in the first sentence of paragraph 50, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions. Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions. In response to the allegations in the second sentence of paragraph 50, Monsanto states that the cited document speaks for itself and does not require a response. In response to the allegations in the last sentence of paragraph 50, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded

products can cause cancer or other serious illnesses.  Monsanto denies the remaining allegations in paragraph 50.

51.     In response to the allegations in paragraph 51 Monsanto admits that the IARC working group purported to make these findings but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persist in human blood or urine.

52.     In response to the allegations in paragraph 52, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that the referenced studies were published, but denies that the studies show any scientifically reliable findings.

54.     In response to the allegations in the first and second sentences of paragraph 54, Monsanto denies that the cited study provides any reliable basis for a finding that any meaningful levels of glyphosate are present or persist in human blood or urine.  Monsanto denies the remaining allegations in the first and second sentences of paragraph 54. Monsanto admits that it has promoted Roundup®-branded herbicides as safe when used in accordance with the products' labeling.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

55.     The allegations in the first sentence of paragraph 55 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.  In response to the allegations in the second and third sentences of paragraph 55, Monsanto states that the cited document speaks

for itself and does not require a response.  To the extent that allegations in the second and third sentences of paragraph 55 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited study supports the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in the second and third sentences of paragraph 55.

56.     In response to the allegations in paragraph 56, Monsanto denies that any exposure to Roundup®-branded products can cause cancer and other serious illnesses and therefore denies the allegations in the first and fourth sentences of paragraph 56.  Monsanto admits that certain Roundup®-branded herbicides contain adjuvants and that EPA has classified such adjuvants as inert.  Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding plaintiffs' knowledge in the last sentence of paragraph 56 and therefore denies those allegations.  Monsanto denies the remaining allegations in the last sentence of paragraph 56 and states that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.  The remaining allegations in paragraph 56 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

57.     To the extent that the allegations in paragraph 57 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.  To the extent that the allegations in the last sentence of paragraph 57 mean that more than *de minimis* amounts of glyphosate exposure occur, Monsanto denies those allegations.

58.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 58 and therefore denies those allegations.

59.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 59 and therefore denies those allegations.

60.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 60 and therefore denies those allegations.

61.     Monsanto denies the allegations in paragraph 61 and each of its subparts.

62.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 62. Monsanto denies the allegations in the third and fifth sentences of paragraph 62. The remaining allegations in paragraph 61 set forth conclusions of law for which no response is required.

63.     In response to the allegations in paragraph 63, Monsanto denies that Roundup®-branded products can cause non-Hodgkin's lymphoma ("NHL") or other serious illnesses and denies that any exposure to Roundup®-branded products was injurious to plaintiff's health or the health of others. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 and therefore denies those allegations.

64.     The allegations in the first sentence of paragraph 64 set forth conclusions of law for which no response is required. Monsanto denies the allegations in the second sentence of paragraph 64.

65.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 65. Monsanto denies the remaining allegations in paragraph 65.

66.     Monsanto incorporates by reference its responses to paragraphs 1 through 65 in response to paragraph 66 of plaintiffs' Complaint.

67.     In response to the allegations in paragraph 67, Monsanto denies that it violated North Carolina or federal law and states that it complied with all applicable law regarding Roundup®-branded products. The remaining allegations in paragraph 67 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies all such allegations.

68.     In response to the allegations in paragraph 68, Monsanto denies that it violated North Carolina, or federal laws or regulations; denies that it was negligent; denies the allegation that Roundup®-branded products were misbranded; and states that it complied with all applicable law regarding Roundup®-branded products. Monsanto denies the allegations in the last sentence of paragraph 68. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding where plaintiff was exposed to Roundup®-branded products and where his injuries occurred and therefore denies those allegations. The remaining allegations in paragraph 68 set forth conclusions of law for which no response is required.

69.     Monsanto incorporates by reference its responses to paragraphs 1 through 68 in response to paragraph 69 of plaintiffs' Complaint.

70.     Monsanto denies the allegations in paragraph 70.

71.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 71 that plaintiff used Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 71.

72.     Monsanto denies the allegations in the first sentence of paragraph 72. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 72.

73.     Monsanto denies the allegations in paragraph 73 and each of its subparts.

74.     In response to the allegations in paragraph 74, Monsanto denies that Roundup®-branded products have "dangerous characteristics." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 74 and therefore denies those allegations.

75.     Monsanto denies the allegations in paragraph 75.

76.     Monsanto denies the allegations in paragraph 76.

77.     Monsanto denies the allegations in paragraph 77.

78.     Monsanto denies the allegations in paragraph 78.

79.     Monsanto denies the allegations in paragraph 79.

80.     Monsanto denies the allegations in paragraph 80.

81.     Monsanto incorporates by reference its responses to paragraphs 1 through 80 in response to paragraph 81 of plaintiffs' Complaint.

82.     In response to the allegations in paragraph 82, Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 82 and therefore denies those allegations. The remaining allegations in paragraph 82 set forth conclusions of law for which no response is required.

83.     In response to the allegations in paragraph 83, Monsanto admits that its principal place of business is in St. Louis County, Missouri. Monsanto denies the remaining allegations in paragraph 83.

84.     Monsanto denies the allegations in paragraph 84.

85.    The allegations in the first and second sentences of paragraph 85 set forth conclusions of law for which no response is required.  Monsanto denies the allegations in the last sentence of paragraph 85.

86.    Monsanto denies the allegations in paragraph 86.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

87.    Monsanto denies the allegations in paragraph 87.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

88.    Monsanto denies the allegations in paragraph 88.

89.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 89.

90.    Monsanto denies the allegations in paragraph 90.  All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

91.    Monsanto denies the allegations in paragraph 91.

92.    Monsanto denies the allegations in paragraph 92, including the allegations that it failed to comply with federal or North Carolina law.

93.    Monsanto denies the allegations in paragraph 93.

94.    Monsanto incorporates by reference its responses to paragraphs 1 through 93 in response to paragraph 94 of plaintiffs' Complaint.

95.    Monsanto denies the allegations in paragraph 95.

96.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence paragraph 96 regarding the specific products allegedly used

by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in the first sentence paragraph 96. In response to the allegations in the second sentence and the subparts of paragraph 96, Monsanto denies that exposure to Roundup®-branded products can cause NHL or other serious illnesses. The remaining allegations in paragraph 96, including its remaining subparts, set forth conclusions of law for which no response is required.

97.   Monsanto denies the allegations in paragraph 97 and each of its subparts.

98.   Monsanto denies the allegations in paragraph 98.

99.   Monsanto denies the allegations in paragraph 99.

100.   Monsanto incorporates by reference its responses to paragraphs 1 through 100 in response to paragraph 101 of plaintiffs' Complaint.

101.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 101 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 101.

102.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 102 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 102 set forth conclusions of law for which no response is required.

103.   Monsanto denies the allegations in the first sentence of paragraph 103. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 103 concerning plaintiff's claimed purchase

of Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 103 set forth a conclusion of law for which no response is required.

104. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 104 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 104 regarding Monsanto's implied warranty sets forth a conclusion of law for which no response is required.

105. In response to the allegations in paragraph 105, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 105 regarding plaintiffs' knowledge about Roundup®-branded products and therefore denies the remaining allegations in paragraph 105. Monsanto denies the remaining allegations in paragraph 105.

106. Monsanto denies the allegations in paragraph 106.

107. Monsanto incorporates by reference its responses to paragraphs 1 through 106 in response to paragraph 107 of plaintiffs' Complaint.

108. In response to the allegations in paragraph 108, Monsanto denies that there is any risk of serious injury associated with the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 108 regarding plaintiff's exposure to, use of, and/or knowledge about Roundup®-branded products and therefore denies those allegations. The remaining allegations in paragraph 108 set forth conclusions of law for which no response is required.

109.   Monsanto denies the allegations in the first sentence of paragraph 109 to the extent it encompasses all herbicides as vague and ambiguous, but Monsanto admits the allegations in this sentence to the extent it refers to glyphosate-based herbicides.   Monsanto denies the allegations that Roundup®-branded products are defective and unreasonably dangerous to consumers and therefore denies the remaining allegations in paragraph 109.

110.   In response to the allegations in paragraph 110, Monsanto admits that it has sold glyphosate-based herbicides in accordance with their EPA-approved labeling.   Monsanto further states that paragraph 110, sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 110.

111.   The allegations in the first and second sentences of paragraph 111 set forth conclusions of law for which no response is required.   Monsanto denies the remaining allegations in paragraph 111.

112.   Monsanto denies the allegations in paragraph 112.

113.   Monsanto denies the allegations in paragraph 113.

114.   Monsanto incorporates by reference its responses to paragraphs 1 through 113 in response to paragraph 114 of plaintiffs' Complaint.

115.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 115. Monsanto denies the remaining allegations in paragraph 115.

116.   Monsanto denies the allegations in the first sentence of paragraph 116.  Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 116 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

117.   In response to the allegations in paragraph 117, Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.   Monsanto denies the remaining allegations in paragraph 117.

118.   Monsanto incorporates by reference its responses to paragraphs 1 through 117 in response to paragraph 118 of plaintiffs' Complaint.

119.   Monsanto denies the allegations in the last sentence in paragraph 119.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 119 and therefore denies those allegations.

120.   Monsanto denies the allegations in the first sentence of paragraph 120.   In response to the remaining allegations in paragraph 120, Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.

121.   Monsanto incorporates by reference its responses to paragraphs 1 through 120 in response to paragraph 121 of plaintiffs' Complaint.   The allegations in the fourth sentence of paragraph 121 set forth conclusions of law for which no response is required.   Monsanto admits that plaintiffs have sued for damages but denies liability to plaintiffs.   Monsanto denies the remaining allegations in paragraph 121.

122.   Monsanto denies the allegations in paragraph 122.

123.   In response to the allegations in paragraph 123, Monsanto denies that plaintiffs are entitled to the relief sought therein, including any judgment for any damages, interest, costs, or any other relief whatsoever. Monsanto demands that judgment be entered in its favor and against plaintiffs and that the Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

124.   In response to the allegations in paragraph 124, Monsanto admits that plaintiffs have sued for punitive damages but denies liability to plaintiffs.  Monsanto denies the remaining allegations in paragraph 124.

125.   The allegations in paragraph 125 set forth conclusions of law for which no response is required.

126.   The allegations in paragraph 126 set forth conclusions of law for which no response is required.

127.   The allegations in paragraph 127 set forth conclusions of law for which no response is required.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following separate and affirmative defenses should be available to Monsanto in this matter.  Monsanto accordingly preserves the right to assert these affirmative defenses.  As discovery proceeds, if the facts warrant, Monsanto reserves the right to amend its answer and affirmative defenses, and to assert additional defenses.

Further answering, and by way of additional defense, Monsanto states as follows:

1.   The Complaint, in whole or part, fails to state claims or causes of action upon which relief can be granted.

2.   Plaintiffs' claims are barred because plaintiffs cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.   Plaintiffs' claims are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings, information, cautions and

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

4.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiffs' claims in whole or in part.

5.      Applicable statutes of limitations bar plaintiffs' claims in whole or in part.

6.      Applicable periods or statutes of repose bar plaintiffs' claims in whole or in part.

7.      Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar the plaintiffs' claims in whole or in part.

8.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of plaintiffs' alleged injuries.

9.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

10.     Plaintiffs' claims are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

11.     Plaintiffs' claims are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded and/or glyphosate-containing products.

12.     Plaintiffs' claims are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

13.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including the authority delegated by Congress to the U.S. EPA.

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

14.     Plaintiffs' claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

15.     If plaintiffs suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiffs' alleged injuries or damages.

16.     Monsanto has no current or former legal relationship or privity with plaintiffs and owes no duty to plaintiffs by which liability could be attributed to it.

17.     Plaintiffs' claims are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

18.     Plaintiffs' claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the North Carolina Constitution, and/or other applicable state constitutions.

19.     Plaintiffs' claims for punitive and/or exemplary damages are barred because plaintiffs have failed to allege conduct warranting imposition of such damages under North Carolina law and/or other applicable state laws.

20.     Plaintiffs' claims for punitive, exemplary, and/or aggravated damages are barred and/or limited by operation of state and/or federal law, including N.C. Gen. Stat. §§ 1D-15, 1D-25.

21. Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiffs. If any such warranties were made, which Monsanto specifically denies, then plaintiffs failed to give notice of any breach thereof.

22. Plaintiffs' negligence proximately caused or contributed to any injuries or damages of plaintiffs. Therefore, plaintiffs' recovery should be reduced in proportion to plaintiffs' negligence and any recovery by plaintiffs should be barred if the plaintiffs' negligence is equal to or greater than the total negligence of all persons against whom recovery is sought.

23. Plaintiffs' causes of action are barred in whole or in part by plaintiffs' own failure to mitigate damages.

24. Plaintiffs' causes of action are barred in whole or in part by the sophisticated user doctrine.

25. Plaintiffs' recovery, if any, shall be reduced by those payments that plaintiffs receive from collateral sources.

26. If plaintiffs have been injured or damaged, no injuries or damages being admitted, such injuries were not caused by a Monsanto product.

27. Plaintiffs' claims are barred to the extent that plaintiffs seek relief under the laws of states that do not govern plaintiffs' claims.

28. Plaintiffs' claims are barred or limited to the extent that plaintiffs assert claims that are governed by the laws of a state that does not recognize, or limits, such claims.

29. Plaintiffs have failed to allege fraud with sufficient particularity.

30. Plaintiffs' strict liability claims are barred in whole or in part, by the N.C. Gen. Stat. § 99B-1.1.

31. Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiffs, dismissing plaintiffs' Complaint with prejudice, together with the costs of suit and such

other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED: May 10, 2021.                    Respectfully submitted,

                                        SHOOK, HARDY & BACON L.L.P.

                                        BY: */s/ Jennise W. Stubbs*
                                            Jennise W. Stubbs
                                            600 Travis Street, Suite 3400
                                            Houston, TX 77002-2926
                                            Telephone:   (713) 227-8008
                                            Facsimile:   (713) 227-9508
                                            Email:       jstubbs@shb.com

                                        *Attorneys for Defendant*
                                        *MONSANTO COMPANY*

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC  & 3:21-cv-03415-VC

## CERTIFICATE OF SERVICE

I certify that on the 10th day of May, 2021, I electronically transmitted the foregoing MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT to the Clerk of the court using the ECF system for filing and transmittal of a true and correct copy of the foregoing document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

/s/Jennise W. Stubbs
Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT
3:16-md-02741-VC   & 3:21-cv-03415-VC