**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:     (713) 227-8008
Facsimile:     (713) 227-9508
Email:         jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | |
| *Richard Kijowski v. Monsanto Co.*, Case No. 3:21-cv-04637-VC | |

### MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), erroneously named as Monsanto Company, Inc., by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint and Jury Demand ("the Complaint"). As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.     Monsanto admits the allegations in paragraph 1.

2.      The allegations in paragraph 2 comprise attorney characterizations and are accordingly denied. Monsanto states that the Roundup® -branded products identified by plaintiff have a variety of separate and distinct uses and formulations.

3.      Monsanto admits the allegations in the first sentence of paragraph 3. In response to the remaining allegations in paragraph 3, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 3 and therefore denies those allegations.

4.      In response to the allegations in paragraph 4, Monsanto admits that its headquarters are in St. Louis County, Missouri. Monsanto admits that it and affiliated companies have operations and offices in countries around the world. Monsanto admits that it has been a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 4. Monsanto admits that it has been the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 4 and therefore denies those allegations.

5.      Monsanto admits the allegations in the first sentence of paragraph 5. Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 5.

6. Monsanto admits the allegations in the first sentence of paragraph 6. Monsanto denies the allegations in the second sentence of paragraph 6 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate.

7. Monsanto admits the allegations in the first sentence of paragraph 7. Monsanto denies the allegations in the second sentence of paragraph 7.

8. In response to the allegations in paragraph 8, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Monsanto denies the remaining allegations in paragraph 8.

9. Monsanto denies the allegations in paragraph 9.

10. Monsanto denies the allegations in paragraph 10.

11. Monsanto denies the allegations in paragraph 11.

12. Monsanto denies the allegations in paragraph 12.

13. In response to the allegations in paragraph 13, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United States and around the world and further admits that it has labeled glyphosate products as approved by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that glyphosate-based herbicides create no unreasonable risk to human health or to the environment when used in accordance with the label. To the extent that paragraph 13 alleges that Monsanto has labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to such regulatory approval, Monsanto denies such allegations.

14.     The allegations in the paragraph 14 set forth conclusions of law for which no response is required.

15.     The allegations in the paragraph 15 set forth conclusions of law for which no response is required.

16.     The allegations in the paragraph 16 set forth conclusions of law for which no response is required.

17.     In response to the allegations in paragraph 17, Monsanto denies any "omissions" and certain events giving rise to plaintiff's claim. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 17 regarding where certain other events giving rise to plaintiff's claim occurred and therefore denies those allegations. The remaining allegations in paragraph 17 set forth conclusions of law for which no response is required.

18.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 18 regarding where the events giving rise to this action occurred and therefore denies those allegations and therefore denies those allegations. The remaining allegations in paragraph 18 set forth conclusions of law for which no response is required.

19.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore denies those allegations.

20.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 20 and therefore denies those allegations.

21.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 21 and therefore denies those allegations.

22.     In response to the allegations in paragraph 22, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and denies that glyphosate is injurious to human health.

23.     Monsanto admits that it is a Delaware corporation with headquarters in St. Louis County, Missouri and that is authorized to do business in the State of Illinois. The remaining allegations in paragraph 23 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

24.     In response to the allegations in paragraph 24, Monsanto admits that it was the entity that discovered the herbicidal properties of glyphosate and that Monsanto has manufactured Roundup®-branded products that have glyphosate as the active ingredient, but notes that Monsanto has not been the only manufacturer of glyphosate-based herbicides.

25.     In response to the allegations in paragraph 25, Monsanto admits that it has sold Roundup®-branded products in Illinois. The remaining allegations in paragraph 25 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

26.     The allegations in paragraph 26 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

27.     Monsanto denies the allegations in paragraph 27.

28.     The allegations in paragraph 28 set forth conclusions of law for which no response is required. To the extent that a response is required, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore denies those allegations.

29.     In response to the allegations in paragraph 29, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in paragraph 29

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

are vague and ambiguous and Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 29 and therefore denies those allegations.

30.     Monsanto admits the allegations in the first sentence of paragraph 30. Monsanto denies the allegations in the second sentence of paragraph 30 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the third sentence of paragraph 30 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

31.     In response to the allegations in paragraph 31, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 31.

32.     Monsanto admits the allegations in the first two sentences of paragraph 32 and admits that it has marketed Roundup® -branded products in accord with EPA's regulatory determinations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Monsanto otherwise denies the remaining allegations in paragraph 32.

33.     The allegations in paragraph 33 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 33.

34.     In response to the allegations in paragraph 34, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 34 set forth conclusions of law for which no response is required.

35.    The allegations in paragraph 35 set forth conclusions of law for which no response is required.

36.    In response to the allegations in paragraph 36, Monsanto admits that Roundup®-branded products are registered by EPA for manufacture, sale and distribution in the United States and are registered by the State of Illinois for sale and distribution.

37.    In response to the allegations in paragraph 37, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the product tests" in the final sentence of paragraph 37 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 37 set forth conclusions of law for which no answer is required.

38.    Monsanto denies the allegations in paragraph 38 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 regarding such pesticide products generally and therefore denies those allegations. The remaining allegations in paragraph 38 set forth conclusions of law for which no response is required.

39.    In response to the allegations in paragraph 39, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding

that "[t]he strongest support is for [the descriptor] `not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] `not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 and therefore denies those allegations.

40.     In response to the allegations in paragraph 40, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.

[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document — Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.

[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA

CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] — one that shows evidence of non-carcinogenicity for humans — based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 40.

41.     In response to the allegations in paragraph 41, Monsanto admits that it — along with

a large number of other companies and governmental agencies — was defrauded by two chemical

testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on

glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests of

glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based

herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies. To the extent

that the allegations in paragraph 41 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

42.      In response to the allegations in paragraph 42, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

43.      Monsanto denies the allegations in paragraph 43 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 43 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

44.      In response to the allegations in paragraph 44, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

45.      In response to the allegations in paragraph 45, Monsanto admits that it — along with numerous other private companies – hired Craven Laboratories as an independent laboratory to

- 10 -

conduct residue studies for Monsanto agricultural products. Monsanto admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 45 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

46.     Monsanto denies the allegations in paragraph 46.

47.     In response to the allegations in paragraph 47, Monsanto admits that Roundup®-branded products are highly valued by customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 47 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

48.     In response to the allegations in paragraph 48, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide.  Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 48 and accordingly denies those allegations.  The remaining allegations in paragraph 48 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

49.     In response to the allegations in paragraph 49, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that has sold glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 49 and accordingly denies the same. The remaining allegations in paragraph 49 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

50.     In response to the allegations in paragraph 50, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 50 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

51.     In response to the allegations in paragraph 51, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 51 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

52.     Monsanto denies the allegations in paragraph 52.

53.     In response to the allegations in paragraph 53, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 53 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 53.

54.     In response to the allegations in paragraph 54, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 54, which are not limited as of any specified date, and accordingly denies the same.

55.     In response to the allegations in paragraph 55, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 55.

56.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 and therefore denies those allegations.

57.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 and therefore denies those allegations.

58.     Monsanto denies the allegations in paragraph 58 to the extent that they suggest that IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a Group 2A agent in March 2015.

59.     In response to the allegations in paragraph 59, Monsanto admits that IARC issued its monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph was prepared by a "working group" of individuals selected by IARC who met over a one-week period in March 2015 to consider glyphosate along with a number of other substances. Monsanto denies the allegation that all members of the working groups are "experts." Monsanto denies that the working group or anyone at IARC conducted a one-year review of the scientific evidence related to glyphosate or that the working group's findings reflected a comprehensive review of the latest

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'SCOMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

available scientific evidence. Monsanto also denies that the working group considered all information available in the scientific literature and all data from government reports that are publicly available. Monsanto denies the remaining allegations in paragraph 59.

60.     In response to the allegations in paragraph 60, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

61.     The allegations in paragraph 61 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

62.     In response to the allegations in paragraph 62, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 62.

63.     In response to the allegations in paragraph 63, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

64.     Monsanto denies the allegations in paragraph 64. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

65.     In response to the allegations in paragraph 65, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have

concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 68.

69.     In response to the allegations in paragraph 69, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 69.

70.     In response to the allegations in paragraph 70, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which speaks for itself and should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans. Monsanto denies that plaintiff accurately quotes the EPA technical fact sheet.

72.     In response to the allegations in paragraph 72, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 72.

73.     In response to the allegations in paragraph 73, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing

discussions and/or restrictions regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 73.

74. In response to the allegations in paragraph 74, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate. Monsanto denies the remaining allegations in paragraph 74.

75. In response to the allegations in paragraph 75, Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 75.

76. In response to the allegations in paragraph 76, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 76.

77. In response to the allegations in paragraph 77, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity. Monsanto denies the remaining allegations in paragraph 77.

78. In response to the allegations in paragraph 78, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained

that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 78.

79.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 79 and therefore denies those allegations.

80.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 80 and therefore denies those allegations.

81.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 81 and therefore denies those allegations.

82.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 82 and therefore denies those allegations.

83.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 83 and therefore denies those allegations.

84.     In response to the allegations in paragraph 84, Monsanto denies that there is any risk of serious illness associated with the use of and/or exposure to Roundup®-branded products and glyphosate and denies that glyphosate is injurious to human health.

85.     Monsanto incorporates by reference its responses to paragraphs 1 through 84 in response to paragraph 85 of plaintiff's Complaint.

86.     In response to the allegations in paragraph 86, Monsanto admits that plaintiff purports to bring a strict liability claim for design defect, but denies any liability as to that claim.

87.     Monsanto denies the allegations in paragraph 87.

88.     Monsanto denies the allegations in paragraph 88.

89.     Monsanto denies the allegations in paragraph 89.

90.     Monsanto denies the allegations in paragraph 90.

91.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 91 and therefore denies those allegations.

92.     Monsanto denies the allegations in paragraph 92.

93.     Monsanto denies the allegations in paragraph 93.

94.     Monsanto denies the allegations in paragraph 94.

95.     Monsanto denies the allegations in paragraph 95 and each of its subparts.

96.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 96 and therefore denies those allegations.

97.     In response to the allegations in paragraph 97, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 97, including that Roundup®-branded products have "dangerous characteristics."

98.     Monsanto denies the allegations in paragraph 98.

99.     Monsanto denies the allegations in paragraph 99.

100.    Monsanto denies the allegations in paragraph 100.

101.    Monsanto denies the allegations in paragraph 101.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'SCOMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

102.    Monsanto denies the allegations in paragraph 102.

103.    Monsanto denies the allegations in paragraph 103.

104.    Monsanto denies the allegations in paragraph 104.

105.    Monsanto denies the allegations in paragraph 105.

In response to "WHEREFORE" paragraph following paragraph 105, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

106.    Monsanto incorporates by reference its responses to paragraphs 1 through 82 in response to paragraph 106 of plaintiff's Complaint.

107.    In response to the allegations in paragraph 107, Monsanto admits that plaintiff purports to bring a strict liability claim for failure to warn, but denies any liability as to that claim.

108.    Monsanto denies the allegations in paragraph 108.

109.    Monsanto denies the allegations in paragraph 109.

110.    Monsanto denies the allegations in paragraph 110.

111.    The allegations in paragraph 111 set forth conclusions of law for which no response is required.

112.    The allegations in paragraph 112 set forth conclusions of law for which no response is required.

113.    Monsanto denies the allegations in paragraph 113. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

114.    Monsanto denies the allegations in paragraph 114.

115.    Monsanto denies the allegations in paragraph 115.

116.    Monsanto denies the allegations in paragraph 116.

117.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 117 and therefore denies those allegations.

118.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 118 concerning plaintiff's claimed use of and/or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 118, including that Roundup®-branded products have "dangerous characteristics."

119.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 119 concerning plaintiff's claimed use of and/or exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 119, including that Roundup®-branded products have "dangerous characteristics."

120.    Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 120 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 120.

121.    Monsanto denies the allegations in paragraph 121.

122.    Monsanto denies the allegations in paragraph 122.

123.    Monsanto denies the allegations in paragraph 123.

124.    Monsanto denies the allegations in paragraph 124.

125.    Monsanto denies the allegations in paragraph 125.

126.    Monsanto denies the allegations in paragraph 126.

127.    Monsanto denies the allegations in paragraph 127.

128.    Monsanto denies the allegations in paragraph 128.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'SCOMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

129.     Monsanto denies the allegations in paragraph 129.

In response to "WHEREFORE" paragraph following paragraph 129, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

130.     Monsanto incorporates by reference its responses to paragraphs 1 through 130 in response to paragraph 130 of plaintiff's Complaint.

131.     Monsanto denies the allegations in paragraph 131.

132.     In response to the allegations in paragraph 132, Monsanto states that the phrase "directly or indirectly" is vague and ambiguous and that Monsanto lacks information or knowledge sufficient to form a belief as to the truth of those allegations and therefore Monsanto denies those allegations in paragraph 132.

133.     Monsanto denies the allegations in paragraph 133.

134.     Monsanto denies the allegations in paragraph 134.

135.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 135 regarding users' and consumers' knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 135. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

136.     The allegations in paragraph 136 set forth conclusions of law for which no response is required.

137.     Monsanto denies the allegations in paragraph 137, including each of its subparts.

138.     Monsanto denies the allegations in paragraph 138.

139.     Monsanto denies the allegations in paragraph 139.

140.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 140 regarding plaintiff's knowledge and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 140, including that intended use of and/or exposure to Roundup®-branded products causes any injuries.

141.     Monsanto denies the allegations in paragraph 141.

142.     Monsanto denies the allegations in paragraph 142.

In response to "WHEREFORE" paragraph following paragraph 142, Monsanto demands that judgment be entered in its favor and against plaintiff and that plaintiff's Complaint be dismissed, with prejudice, and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

Every allegation in the Complaint that is not specifically and expressly admitted in this Answer is hereby specifically and expressly denied.

## SEPARATE AND AFFIRMATIVE DEFENSES

1.     The Complaint, in whole or part, fails to state a claim or cause of action upon which relief can be granted.

2.     Plaintiff's claims against Monsanto are barred because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

3.     Venue may be inconvenient.

4.     Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so in-substantial as to be insufficient to be a proximate or substantial contributing cause of plaintiff's alleged injuries.

5.     Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were designed, manufactured, marketed and labeled with proper warnings,

information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

6.      Any claims based on allegations that Monsanto misled, defrauded, made misrepresentations to, or withheld information from U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

7.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

8.      Plaintiff's claims against Monsanto are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

9.      Plaintiff's claims against Monsanto are preempted, in whole or in part, because of U.S. EPA findings that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

10.     Plaintiff's claims against Monsanto are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

11.     Plaintiff's claims against Monsanto are barred, in whole or in part, because plaintiff's in-juries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

12.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'SCOMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

13.     All or part of plaintiff's claims against Monsanto are barred by the applicable statutes of limitations, statutes of repose, jurisdictional time limits, or any other limitations on the period of time within which to file suit, whether in this or any other state, including, without limitation, 735 ILCS 5/13-202, 5/13-213, and 5/13- 215.

14.     Plaintiff may not recover on the claims against Monsanto pleaded in the Complaint be-cause the damages sought are too speculative and remote.

15.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims against Monsanto in whole or in part.

16.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

17.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to him by which liability could be attributed to it.

18.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff. If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

19.     Plaintiff's claims against Monsanto are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

20.     Plaintiff's claims for exemplary damages against Monsanto are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the Illinois Constitution, and/or other applicable state constitutions.

21.     Plaintiff's claims for exemplary damages against Monsanto are barred because plaintiff has failed to allege conduct warranting imposition of such damages under Illinois law, and/or other applicable state laws.

22.     Plaintiff's claims for exemplary damages against Monsanto are barred and/or limited by operation of state and/or federal law, including Illinois law.

23.     Plaintiff's claims against Monsanto are barred in whole or in part by the contributory/comparative negligence of plaintiff. Pursuant to Section 2-1116 of the Illinois Code of Civil Procedure, plaintiff is barred from any recovery in this matter because plaintiff's comparative fault is more than 50% of the proximate cause of alleged injuries and damages. Alternatively, any judgment entered in favor of plaintiff should be reduced by an amount commensurate with plaintiff's relative degree of fault in causing the alleged injuries and damages.

24.     Monsanto states that, at all times relevant, 735 ILCS 5/2-1117 was in full force and effect. In the event that the jury determines that there was some liability on the part of Monsanto, which Monsanto specifically denies, and further finds that its fault is less than 25% of the total fault attributable to the defendants sued by plaintiff, and any third party defendant who could have been sued by plaintiff, any judgment entered in favor of plaintiff and against Monsanto must reflect joint and several liability for all past and future medical and medically related expenses, but only several liability for any other damages.

25.     Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's failure to mitigate damages.

26.     Plaintiff's claims against Monsanto are barred in whole or in part by the sophisticated user doctrine.

27.     In the event that plaintiff receives a settlement from any party or non-party for the injuries described in the Complaint, Monsanto is entitled to a full set-off for the amount of each such settlement.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04637-VC

28.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff receives from collateral sources.

29.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

30.     Plaintiff has failed to allege fraud with sufficient particularity.

31.     Plaintiff's claims against Monsanto are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

32.     Plaintiff's claims against Monsanto are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

33.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

**WHEREFORE**, Defendant Monsanto demands judgment in its favor and against plaintiff, dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Monsanto demands a jury trial on all issues so triable.

DATED: June 28, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/Jennise W. Stubbs
　　Jennise W. Stubbs
　　600 Travis Street, Suite 3400
　　Houston, TX 77002-2926
　　Telephone: (713) 227-8008
　　Facsimile: (713) 227-9508
　　Email: jstubbs@shb.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

## CERTIFICATE OF SERVICE

I certify that on the 28th day of June, 2021, I electronically transmitted the foregoing MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT to the Clerk of the court using the ECF system for filing and transmittal of a true and correct copy of the foregoing document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

*/s/Jennise W. Stubbs*
Jennise W. Stubbs

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC & 3:21-cv-04637-VC