

901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Tel (512) 439-3200 • Fax (512) 439-3201

July 6, 2021

**FILED VIA ECF**
The Honorable Vince Chhabria
USDC Northern District of California
450 Golden Gate Avenue
Courtroom 4 – 17th Floor
San Francisco, CA 94102

      RE: In Re: Roundup Products Liability Litigation MDL No. 2741
          Master File No. 3:16-md-02741-VC

      This document relates to: Bradley Koen v. Monsanto Company
      Case No. 3:20-cv-03074-VC

To the Honorable Vince Chhabria:

    This is a joint letter sent to you under your Honor's Order Granting Joint Request for Revised Schedule for Wave 3 Cases to Wave 3 as Modified [Doc. 12197] about the parties' dispute over applicable state laws. The parties have reached an impasse over which state laws should apply to particular issues in Plaintiff's case.

## *Plaintiff's Position*

    I represent Wave 3 Plaintiff Bradley Koen. Your Honor's Order Granting Joint Request for Revised Schedule for Wave 3 Cases to Wave 3 as Modified [Doc. 12197] set forth that "[t]he parties should file a letter brief identifying any disputes over the applicable law for the wave 3 cases. For cases where that is undisputed the parties should file a stipulation identifying the governing state law." The Order prescribed that the parties submit either the letter brief or joint stipulation by July 6, 2021. This letter addresses a dispute about the application of different state's law in Mr. Koen's case.

*Background*

    This multidistrict products liability litigation involves Roundup, a weed killer with the active ingredient, glyphosate. Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. The Complaint here was filed in the Western District of Texas on March 5, 2020. [Case No. 1:20-cv-00241-RP, Doc. 1.] The Complaint was filed under 28 U.S.C. § 1332 based on diversity of citizenship. On October 4, 2016, the Judicial Panel on Multidistrict Litigation conferred multidistrict litigation ("MDL") status on Roundup lawsuits filed in federal court and transferred all such cases to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. *See* 214 F. Supp. 3d



1346 (J.P.M.L. 2016). The transferred actions were assigned to this Court. [Case No. 3:16-md-02741-VC, Doc. 1.] On April 27, 2020, the United States Judicial Panel on Multidistrict Litigation filed a Conditional Transfer Order proposing the transfer of several Roundup cases, including Bradley Koen's case, to the Northern District Court of California to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. [Case No. 1:20-cv-00241-RP, Doc. 5.] In May 2020, the Court granted an Order Establishing Wave 3 of Plaintiffs with Bradley Koen's case among them. [Doc. 1076-1.]

*Transferor State's Choice-of-Law Rules Apply*

"[I]n diversity lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's…[laws]… or the [laws]…some other state." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007), citing *Long Island Tr. Co. v. Dicker*, 659 F.2d 641, 645 (Former 5th Cir. Unit A Oct. 1981); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). For cases, "filed in, or removed to, federal courts across the country and transferred to the MDL court by the Judicial Panel on Multidistrict Litigation," … "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules." *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007), citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990). *See also* 28 U.S.C. § 1407(a). Section 1407(a) provides that: "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated..." 28 U.S.C. § 1407(a).

Plaintiff filed his Complaint in the Western District of Texas. As a result, Texas choice of law rules will apply to Plaintiff's case.

*Selecting the Applicable Substantive Law*

Texas law should apply to negligence and compensatory damages. Texas has adopted its choice-of-law principles from the RESTATEMENT (SECOND) CONFLICT OF LAWS (1971). "[I]f there is a conflict of laws, Texas law requires dépeçage—that is, choice of law is made on an issue-by-issue basis. *E-Dealer Direct v. Bank of Am., N.A.*, 2021 U.S. Dist. LEXIS 99011, *8, 2021 WL 2115299 (W.D. Tex., May 25, 2021), quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). "…[T]he laws of a single state do not necessarily govern all substantive issues; accordingly, we consider each issue separately and apply the state law having the most significant relationship to the issue." *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283, 2019 Tex. App. LEXIS 6908, *4-5, 2019 WL 3720075 (Tex. App.—Beaumont 2019, no pet.).

Texas applies the most significant relationship test outlined in the Restatement (Second) of Conflict of Laws to determine choice of law issues. *Toyota Motor Co.*, 581 S.W.3d at 285, citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) for the notion that "in the future[,] all conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in



Sections 6 and 145 of the Restatement (Second) of Conflicts"; *see also* Restatement (Second) of Conflict of Laws §§ 6, 145 (Am. Law Inst. 1971).

Plaintiff agrees with Defendant that Texas law should govern negligence and *compensatory* damages.

> "Compensatory damages are designed to fairly compensate the injured plaintiff. *Torrington*, 46 S.W.3d at 848 … Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability are less important. *Torrington*, 46 S.W.3d at 849; *Bain*, 257 F.Supp.2d at 878.

*Toyota Motor Co.*, 581 S.W.3d at 289, 2019 Tex. App. LEXIS 6908 at *19-20.

However, Plaintiff asserts that Missouri law governs punitive damages because it is in Missouri, not Texas, where Defendant's conduct giving rise to punitive damages occurred. It did not occur in Texas. Defendant Monsanto's headquarters are in St. Louis, Missouri. The manufacture of the product and the decision to place it into the consumer stream of commerce occurred in Missouri. Section 145 of the Second Restatement of Conflict of Laws analyzes the following factors in determining which state has the most significant relationship for purposes of choice of law: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. The second factor of the Section 145 factors is the "Place where conduct causing injury occurred."[1] Defendant Monsanto maintains its principal place of business in St. Louis, Missouri and upon information and belief did so when it took action to continue to place its Roundup product that caused Mr. Koen's injuries into the consumer stream of commerce. "[T]o the extent Plaintiff seeks punitive damages based on Defendants' knowledge of a defect, the relevant state is [the state], where Defendants made business decisions." *See Perez v. ZTE (USA)*, Inc., 2020 U.S. Dist. LEXIS 118364, *15, 2020 WL 3798865 (N.D. Tex. July 6, 2020). *See also Black v. Toys R US–Del., Inc.*, No. 4:08-cv-3315, 2010 U.S. Dist. LEXIS 119460, 2010 WL 4702344, at *8 (S.D. Tex. Nov. 10, 2010). In *Black*, 2010 U.S. Dist. LEXIS 119460, 2010 WL 4702344, at *11, (identifying the nerve center of each Defendant's company for purposes of the factor of the "Place" where conduct causing injury occurred.) This factor weighs in favor of applying Missouri law because Missouri is where Defendant made business decisions and where it maintains its principal place of business and headquarters—its nerve center.

---

[1] § 145 The General Principle
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
 (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
  (a) the place where the injury occurred,
  **(b) the place where the conduct causing the injury occurred,**
  (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
  (d) the place where the relationship, if any, between the parties is centered.
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restat 2d of Conflict of Laws, § 145 (2nd 1988)



*Defendant's Position*

Monsanto submits this letter brief in response to Plaintiff Bradley Koen's request to displace Texas law and selectively apply Missouri law to the issue of punitive damages. Monsanto notes that no other Plaintiff has sought to selectively displace the presumptive law of the place of injury for punitive damages. Here, Plaintiff seeks to have Missouri law applied because Texas law imposes punitive damages caps. Those caps reflect the policy choices of the Texas legislature to impose limits on punitive damages available to its own citizens in its own courts. And, as described below, even Missouri courts would not apply Missouri law to punitive damages when adjudicating the tort claims of those injured in other states.

Under Texas choice-of-law rules, the Court is required to presume that the law of the place of injury applies, and the alleged injury here occurred in Texas. To defeat this presumption, Plaintiff must demonstrate that Missouri has a more significant relationship to the parties and occurrences in this case than Texas. Plaintiff cannot do so because Plaintiff is a Texas resident who purchased Roundup in Texas, was exposed to the product in Texas, and was allegedly injured in Texas. To hold otherwise would disrupt the clear policy determinations of the Texas legislature. Consequently, the Court should apply Texas law with respect to the entirety of Plaintiff's claim, including his request for punitive damages

### A. Texas Choice of Law Rules Apply a Presumption that the Law of the Place of Injury Applies Except in "Rare Situations" Not Found Here.

Where a conflict of law arises, federal courts sitting in diversity apply the choice-of-law rules of the forum state. Plaintiff filed his case in the Western District of Texas, and Texas choice of law rules apply. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *In re Genetically Modified Rice Lit.,* 2010 WL 1049837, at *2 (E.D. Mo. March 18, 2010) (MDL court applied Texas choice of law rules where case was transferred to MDL from a U.S. District Court in Texas). "Texas courts initially determine whether there is a conflict between Texas law and the other potentially applicable law." *Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010).

Texas limits punitive damages to the greater of (1) two times the amount of the economic damages plus the noneconomic damages award, not to exceed $750,000; or (2) $200,000. *See* Tex. Civ. Prac. & Rem. Code Ann. §41.008(b).[2] Missouri law, on the other hand, allows a party to seek punitive damages for product liability claims under limited circumstances, *Ferren v. Richards Mfg.*

---

[2] In enacting these statutory limits on punitive damages, the Texas legislature was focused on protecting and promoting businesses (both in-state and out-of-state alike) that operate in Texas by reducing the negative impact on those businesses of the potential unlimited liability of uncapped punitive damages. *See* House Research Organization, Bill Analysis of SB 25 (4/5/95), *available at* https://hro.house.texas.gov/pdf/ba74r/sb0025.pdf#navpanes=0, at p. 5 ("Businesses and professionals must divert considerable portions of their resources to trying to avoid lawsuits, spending money to defend them and paying huge insurance premiums in case they lose. The tort system is unfairly weighted in favor of the plaintiff, which is causing an economic drain. . . . Many business[es] are denied their day in court because of punitive damages. The threat of large punitive damage awards is so great that many prudent business owners agree to settle a case that they would rather take to court.").



*Co.*, 733 F.2d 526, 529 (8th Cir. 1984), but Missouri does not provide a statutory cap on the amount of the punitive damages. Consequently, a conflict exists between Texas and Missouri law with respect to punitive damages.

Where there is a conflict and no governing choice-of-law agreement, as here, Texas applies the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016). In particular, when the analysis concerns a tort claim, Texas courts apply the factors listed in Section 145 of the Restatement to determine which state bears the most significant relationship to the claim. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) ("all conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in Sections 6 and 145 of the Restatement").

Texas courts, like the Restatement, presume that the law of the place of injury applies, unless another state has a more significant relationship to the occurrence and the parties. *See Perez v. ZTE (USA), Inc.*, No. 3:18-cv-2948-B, 2020 WL 3798865, 2020 U.S. Dist. LEXIS 118364, *5-6 (N.D. Tex. July 6, 2020); Restatement (Second) of Conflict of Laws § 145 cmt. f and § 146. Section 146 of the Restatement provides that the "local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there." Cmt. e. Texas courts have construed the Restatement's guidance as "a presumption in favor of applying the law of the place of the injury." *See Enter. Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. App. 2011). Out-of-state law is applied "in those relatively ***rare situations*** where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 146 at cmt. c. (emphasis added).

The tort-specific factors in Section 145 are: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283-84 (Tex. App. 2019). In conducting the significant relationship test, the Court must apply the significant relationship guidelines of Section 6(2) of the Restatement. *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 442-43 (Tex. 2007).

In sum, this Court must apply the law of the state where the injury occurred (Texas), unless through application of the significant relationship test in Section 145, and as guided by the factors in Section 6(2) of the Restatement, the Court concludes that this is one of those ***rare situations*** where another state has a more significant relationship to the issue. This is not one of those rare situations.

### B. The Significant Relationship Test Requires the Application of Texas Law

#### *1. Plaintiff, a life-long Texas resident, alleges he was injured, exposed, and diagnosed in Texas, creating a strong presumption in favor of the application of Texas law*

The place of injury in this case is Texas. Specifically, Plaintiff was diagnosed with NHL in March 2018 while living near Austin, Texas. Deposition of Bradley Koen, at 68:18, 87:16-19 (hereinafter "Koen Dep."). Consequently, the first factor favors the application of Texas law. And



because the Plaintiff's injury occurred in Texas, Texas law is presumed to apply to any issue in this case, absent a more significant relationship with another state. *Perez*, 2020 WL 3798865, 2020 U.S. Dist. LEXIS 118364, *5-6.

Indeed, courts across the United States (including Texas), when applying the most significant relationship test, routinely apply the punitive damage laws of the places of injury in product liability matters, especially when the plaintiff was injured and resided in the same state and the defendant, even if headquartered elsewhere, did business in the state of injury.

- *Wright v. C.R. Bard, Inc.*, No. 3:19-cv-2176-S, 2021 U.S. Dist. LEXIS 100659, *7-9 (N.D. Tex. May 27, 2021) (applying Texas law to punitive damages issues because Plaintiff's injury occurred in Texas, despite the fact that the product was developed in Arizona and the warnings it carried were also written in Arizona);
- *Wilmotte v. Nat'l RR Passenger Corp.*, No. C18-0086, 2019 WL 3767133, *2-3 (W.D. Wash. Aug. 9, 2019) (refusing to apply out-of-state punitive damages where plaintiff was a resident and injured in Washington and defendant, while headquartered out-of-state, did business and had an office in Seattle);
- *Thomas v. Borg-Warner Morse TEC LLC*, 362 F. Supp. 3d 610, 616–17 (E.D. Ark. 2018) ("Arkansas has the more significant relationship to the case and the parties because Thomas was injured in Arkansas and Ford did business in Arkansas. . . . Although Ford's principal place of business is in Michigan, Thomas had no relationship to Michigan.") (citations omitted);
- *Eghnayem v. Boston Scientific Corp.*, No. 2:13-cv-07965, 2014 WL 5386731, *4 (S.D. W.Va. Oct. 21, 2014) (Applying Florida punitive damages law, where plaintiff suffered injuries from a defective product in Florida. While Defendant's principal place of business was in Massachusetts, it "direct[ed] products and support materials through Florida's stream of commerce to residents and businesses.");
- *Kammerer v. Wyeth*, No. 8:04cv196, 2011 WL 5237754, at *5 (D. Neb. Nov. 1 2011) (applying Nebraska law prohibiting punitive damages over Pennsylvania law in products action where plaintiff resided and was injured in Nebraska and Defendants' principal place of business was in Pennsylvania);
- *Knipe v. SmithKline Beecham,* 583 F. Supp. 2d 602, 638 (E.D. Pa. 2008) (applying New Jersey law prohibiting punitive damages over Pennsylvania law in products action where plaintiff resided and was injured in New Jersey and defendants was domiciled in Pennsylvania);
- *Moody v. Ford Motor Co.*, No. 03cv0784-CVE-PJC, 2006 WL 346433, *2 (N.D. Okla. Feb. 13, 2006) ("defendant is a well-established international corporation which markets and sells its vehicles throughout the nation, including in Oklahoma. Further, Oklahoma's choice of law rule requires consideration of other contacts and policies beyond the causative conduct. Pertinent contacts include: the injury occurred in Oklahoma; the plaintiffs' decedent was



domiciled in Oklahoma; the record contains no evidence that plaintiffs have any connection with Michigan; … and Oklahoma is the place where the relationship between the parties is centered.");

- *Bearden v. Wyeth,* 482 F. Supp. 2d 614, 620-22 (E.D. Pa. 2006) (applying Arkansas law to issue of punitive damages where plaintiff resided and was injured in Arkansas and defendants were domiciled out of state);
- *Goettsch v. Ford Motor Co.*, No. Civ.A03CV01374PSFOES, 2005 WL 1950195, *2-3 (D. Col. Aug. 12, 2005) (applying Colorado law, rather than Michigan law, on punitive damages in action against Ford for injuries in Colorado to Colorado residents and stating that "[t]here is no injustice in requiring Ford, an established international corporation that conducts substantial business in Colorado and knows its vehicles will regularly travel on Colorado highways, to be responsible under Colorado law for punitive damages");
- *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1410 (N.D. Iowa 1995) ("Nebraska has made a policy choice that punitive damages are inappropriate, and that interest is not outweighed by Iowa's contrary interest in imposing punitive damages as a deterrent, at least not in circumstances where the plaintiff is a resident of Nebraska, not Iowa, where the alleged injured [sic] occurred in Nebraska, not Iowa, as the result of use of a product produced by a South Dakota, not an Iowa, corporation, even when the corporation physically produced the product in Iowa.");
- *Pappion v. Dow Chem. Co.*, 594 F. Supp. 428, 431-32 (W.D. La. 1984) (applying local law, which prohibited punitive damages, on out-of-state chemical company, where plaintiffs were exposed to chemical substances in Louisiana and injured in Louisiana, and providing that "where its citizens are concerned, [Louisiana] has a keen interest in upholding such a policy" to prohibit punitive damages);
- *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 459-460 (Neb. 2017) (While manufacturer was headquartered in Kansas and made design decisions in Kansas, court applied Nebraska law prohibiting punitive damages, where injury was in Nebraska to a Nebraska resident, holding that "[a]lthough important decisions and product manufacture took place at the Cessna headquarters in Kansas, the overall weight of the contacts in this case point toward Nebraska having the most significant relationship with this issue.");
- *Dodson v. Ford Motor Co.*, No. PC 96-1331, 2006 WL 2642199, at *6 (R.I. Super. Ct. Sept. 5, 2006) ("[a]s long as the product reached the particular state through ordinary commercial channels, then the application of that state's law is fair to the victim and not unfair to the defendant. A consumer who is injured in her home state by a product she has purchased there is entitled to the protection of that state's law, regardless of where the product was manufactured or by whom") (internal citations omitted).

Because Plaintiff's injury occurred in Texas, there is a presumption that Texas state law applies to Plaintiff's claim for punitive damages.



### *2. Plaintiff alleges he was exposed in Texas and any failure to warn occurred in Texas.*

Plaintiff purchased Roundup in Texas and claims exposure to Roundup from 1991-2018 at three locations near Austin, Texas. Koen Dep. at 69:3-6, 72:18-21, 75:17-20, 220:20-221:17. Thus, the second factor—the location of conduct causing injury—also favors the application of Texas law. And given that the gravamen of Plaintiff's claims are based on a failure to warn, Texas also has the more substantial relationship.[3] Because Plaintiff purchased Roundup in Texas, the point of sale where a warning allegedly should have been given is necessarily Texas—*not Missouri*.

Indeed, even Missouri, the state which Plaintiff posits has some overriding interest in the outcome of this case, and other courts that have decided this issue, agrees that the conduct associated with a failure to warn occurs *where the warning was to have occurred*. *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) ("Missouri is where Novartis's sales representatives failed to warn Baldwin's doctor, making it also, at least in part, the state of the conduct causing the injury."); *see also Rowland v. Novartis Pharm. Corp.*, 983 F. Supp. 2d 615, 625 (W.D. Pa. 2013) ("In prescription drug products liability cases involving an alleged failure to warn, the conduct causing injury occurs primarily where the injured party was prescribed and ingested the drug. . . . The Plaintiffs and their doctors allegedly failed to receive adequate warnings in Pennsylvania, Plaintiffs were prescribed the drug in Pennsylvania, and were infused with the drug in Pennsylvania.") (citations omitted). The second factor favors the application of Texas law.

### *3. Plaintiff is a lifelong resident of Texas, and Monsanto does business in Texas.*

Plaintiff grew up in Austin, Texas and has lived in the Austin area his entire life. Koen Dep. at 13:5-8, 67:18-68:8, 71:7-75:5. Plaintiff alleges no ties to Missouri. Monsanto is a Delaware corporation with its principal place of business in Missouri, and does business in Texas. Given that Plaintiff is a lifelong resident of Texas, and Monsanto does business in Texas, this factor also weighs in favor of the application of Texas law.

### *4. The relationship between the parties is centered in Texas.*

Plaintiff alleges that he purchased Roundup in Texas, and used the product in Texas. Koen Dep. at 69:3-6, 72:18-21, 75:17-20, 220:20-221:17. Plaintiff was then purportedly injured by Roundup in Texas. Consequently, the relationship between Plaintiff and Monsanto is centered in Texas. *See, e.g.*, *Isaac v. C. R. Bard*, No. A-19-CV-895-LY, 2021 U.S. Dist. LEXIS 59224, *29-31 (W.D. Tex. March 29, 2021) (in a product liability MDL, "the Court finds that Texas law applies to Plaintiff's claim for punitive damages [because] Plaintiff's alleged injuries occurred in Texas, her surgery took place in Texas, and she was a Texas resident at the time of her surgery and throughout this litigation."); s*ee also Gilliland v. Novartis Pharm. Corp.*, 33 F. Supp. 3d 1060, 1065 (S.D. Iowa 2014) ("The locus of the relationship between the plaintiff-patient and the defendant-drug manufacturer is the State where the plaintiff-patient suffered from the alleged warning defect, not the State where the defendant-drug manufacturer issued the warnings at issue.").

---

[3] As this Court has previously noted, the thrust of Plaintiffs' design defect claims revolve around a failure to warn.

Page | 8



### C. Restatement Section 6 Principles Also Favor Texas Law.

A court conducting a substantive choice-of-law analysis must consider the Section 145 factors in light of the general choice-of-law principles enumerated in Section 6 of the Second Restatement. *See, e.g.*, *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311-12 (5th Cir. 2000). The Section 6 principles are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id*.

#### *1. Texas, not Missouri, Has the Greater Interest (Section 6(b)-(c), (e))*

There is no greater evidence of Missouri's interest in this matter, or lack thereof, than how it applies its *own* choice of law under similar circumstances. Like Texas, Missouri has adopted the most significant relationship test for conflict of laws issues. *Johnson v. Avco Corp.*, No. 4:07CV1695, 2009 WL 4042747, *3, 7 (E.D. Mo. Nov. 20, 2009). Under Missouri law, "the governing punitive damages law is presumptively the place where the injury occurred." *Ridings v. Maurice*, No. 15-00020-cv-W-JTM, 2019 WL 4888910, at *13 fn 9 (W.D. Mo. Aug. 12, 2019). ("[T]he governing punitive damages law is presumptively the place where injury occurred.").

Applying this test, Missouri courts frequently apply out of state punitive damages law to plaintiffs who are injured out of state but sue in Missouri courts. *See, e.g.*, *Johnson*, 2009 WL 4042747 at *3, 7 (court determined that Indiana had the most significant relationship to the parties and the occurrence with respect to the application of punitive damages, notwithstanding the fact that defendants' alleged defective maintenance and misconduct occurred in Missouri); *see also Scott v. Western Express, Inc.,* No. 07-0580, 2009 U.S. Dist. LEXIS 37341, *5 (W.D. Mo. April 21, 2009) (holding that New Mexico law should apply to punitive damage issues because "New Mexico is both the place where the injury occurred and the place where the conduct occurred which allegedly caused the injury"); *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 58 (Mo. Ct. App. 1999) ("Applying the test set forth in section 145, the trial court properly found that Kentucky law governs plaintiffs' claim for punitive damages").

If Missouri courts displace Missouri punitive damages law in favor of out-of-state laws, then surely Missouri does not have such a compelling interest in applying its punitive damage laws here to overcome Texas's significant relationship to the parties and occurrences in this matter.

Moreover, Texas has a strong interest in protecting its citizens from injury, as well as deterring unlawful conduct in Texas by imposing exemplary damages. *Wright*, 2021 U.S. Dist. LEXIS 100659, at *7-9 (N.D. Tex. May 27, 2021) (finding that Section 6(b)-(c), (e) factors require application of Texas law regarding punitive damages). Texas has a valid and substantial interest in enforcing its own laws on companies that do business within its borders and that allegedly cause injury to its residents. And Texas has determined that businesses operating in Texas should not be subject to unbounded punitive damages.



### *2. Remaining Systemic Issues also Favor Texas Law (Sections 6(a), (f)-(g))*

Application of Texas law to the issue of punitive damages bears no risk of uncertain, unpredictable, or inconsistent results. *Wright*, 2021 U.S. Dist. LEXIS 100659, at *7-9 (N.D. Tex. May 27, 2021). Indeed, companies that actively do business in a state would not be shocked to find that their conduct will subject them to that jurisdiction's laws. *See, e.g., Gilliland*, 33 F. Supp. 3d at 1066–67 ("Organon sold and marketed NuvaRing in Missouri. In doing so, Organon should have expected to be subjected to Missouri law regulating such conduct."); *Jackson v. Bridgestone Ams. Tire Ops., LLC*, No. N14C-09-241 CEB, 2015 WL 13697682, *5 (Del. Super. Ct. Nov. 24, 2015) ("It seems perverse indeed that, in a free flowing republic, [that the state of a company's headquarters] could effectively dictate how and whether tort damages—punitive or otherwise—are to be made available to citizens of the forum jurisdiction."). Nor can an injured plaintiff be surprised that his or her recourse lies in the state in which he or she resides, was injured and in which the defendant did business. *See, e.g., Egan v. Kaiser Alum. & Chem. Corp.*, 677 So.2d 1027, 1037-38 (La. App. Cir. 1996) (Applying Louisiana law prohibiting punitive damages and holding that "[t]here is nothing unjust in saying that a Louisiana resident seeking recourse in a Louisiana state court for an injury occurring in Louisiana must proceed under Louisiana law.").

### D.      Conclusion

There is no compelling reason to displace the application of Texas law as to punitive damages. The product was purchased in Texas, the alleged failure to war occurred in Texas, the Plaintiff was diagnosed in Texas. Texas law presumptively applies here. This is not the "rare situation" requiring the application of another's states law as to punitive damages. This is particularly so where Missouri courts would apply Texas law to punitive damages in these circumstances. Finally, the application of Texas law is consistent with the policy choices of the Texas legislature to reign in the imposition of large punitive damages awards as to companies that choose to do business in Texas. Court should apply Texas law with respect to Plaintiff's request for punitive damages.



DATED: July 6, 2021

                                  Respectfully submitted,

Scott M. Hendler
HENDLER FLORES LAW, PLLC
901 S. MoPac Expressway, Bldg. 1, Suite 300
Austin, Texas 78746
Telephone: (512) 439-3200
Facsimile: (512) 439-3201
shendler@hendlerlaw.com
***COUNSEL FOR PLAINTIFF***

/s/   *Anthony Rey Martinez*
Anthony Rey Martinez
SHOOK, HARDY AND BACON, LLP
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
amartinez@shb.com
***COUNSEL FOR DEFENDANT***



## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Scott M. Hendler