**SHOOK, HARDY & BACON L.L.P.**
Jennise W. Stubbs
600 Travis Street, Suite 3400
Houston, TX 77002-2026
Telephone:    (713) 227-8008
Facsimile:    (713) 227-9508
Email:         jstubbs@shb.com

Attorneys for Defendant
*MONSANTO COMPANY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relate to: | |
| *A.H. v. Monsanto Co.,* Case No. 3:21-cv-04929-VC | |

## MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Monsanto Company ("Monsanto"), by and through its counsel, respectfully responds by generally denying all allegations contained in plaintiff's Complaint ("the Complaint"). As defined in the Complaint and as used in this Answer, Monsanto refers to Monsanto Company, a United States based company incorporated in Delaware, and not to other Monsanto-affiliated companies. Silence as to any allegations shall constitute a denial.

1.      Monsanto admits that plaintiff purports to bring an action for damages allegedly related to exposure to Roundup®.-branded products but denies any liability to plaintiff. Monsanto denies the remaining allegations in paragraph 1.

2.      Monsanto denies the allegations in paragraph 2.

3.      Monsanto admits the allegations in the first and second sentences of paragraph 3. In response to the allegations in the third sentence of paragraph 3, Monsanto admits that certain of its Roundup®-branded products contain POEA and adjuvants, and that the United States

- 1 -

Environmental Protection Agency ("EPA") has classified surfactants and adjuvants as inert. Monsanto notes that the EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. In response to the allegations in the final sentence of paragraph 3, Monsanto admits that glyphosate was one of the world's most widely used herbicides in 2013, but notes that Monsanto was and is not the only manufacturer of glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics cited in the remaining sentences of paragraph 3 and therefore denies those allegations.

4. In response to the allegations in paragraph 4, Monsanto admits that its headquarters are in St. Louis County, Missouri, and that it is incorporated in Delaware. Monsanto admits that it and affiliated companies have operations and offices in countries around the world. Monsanto admits that it is a producer of glyphosate-based herbicides but lacks sufficient information regarding the business of other glyphosate producers to admit or deny the allegation as written in the second sentence of paragraph 4. Monsanto admits that it is the leading producer of seeds that contain the Roundup Ready® trait and that use of crops with the Roundup Ready® trait substantially improves a farmer's ability to control weeds. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers and statistics provided in the remaining sentences of paragraph 4 and therefore denies those allegations.

5. In response to the allegations in paragraph 5, Monsanto admits that its glyphosate products are registered in at least 130 countries and approved for use on over 100 different crops. Monsanto admits that certain studies have reported that glyphosate is found at *de minimis* levels significantly below regulatory safety limits in various locations and media. Monsanto denies the remaining allegations in paragraph 5.

6. Monsanto admits the allegations in the first sentence of paragraph 6. Monsanto denies the allegations in the second sentence of paragraph 6 to the extent they suggest that the International Agency for Research on Cancer ("IARC") based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate. In response to the remaining

allegations in paragraph 6, Monsanto admits that the IARC issued a monograph relating to glyphosate in 2015, but denies that the IARC Monograph is the authoritative standard for cancer hazard assessment around the world or that IARC based its evaluation on a complete or accurate assessment of the scientific research regarding glyphosate. Monsanto further denies that the members of the panel were "renowned scientists" or that they were free from conflicts of interest.

7. Monsanto admits the allegations in the first sentence of paragraph 7. Monsanto denies the allegations in the second sentence of paragraph 7.

8. In response to the allegations in paragraph 8, Monsanto admits that the IARC working group classified glyphosate under Group 2A. Monsanto denies the remaining allegations in paragraph 8.

9. Monsanto denies the allegations in paragraph 9.

10. In response to the allegations in the of paragraph 10, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC. Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans." Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution; Monsanto has sued to block OEHHA's action and is currently engaged in briefing on this issue before the California Court of Appeal. The remaining allegations in paragraph 10 set forth conclusions of law for which no response is required.

11. In response to the allegations in paragraph 11, Monsanto admits that glyphosate repeatedly has been found to be safe to humans and the environment by regulators in the United

States and around the world and further admits that it has labeled glyphosate products as approved

by regulatory bodies consistent with those findings. Monsanto also admits that the EPA repeatedly

has concluded pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") that

glyphosate-based herbicides create no unreasonable risk to human health or to the environment

when used in accordance with the label. To the extent that paragraph 11 alleges that Monsanto has

labeled glyphosate or Roundup®-branded herbicides in any manner different or in addition to

such regulatory approval, Monsanto denies such allegations.

12.     Monsanto lacks information or knowledge sufficient to form a belief as to the truth

of the allegations in paragraph 12 and therefore denies those allegations.

13.     In response to the allegations in paragraph 13, Monsanto admits that it is a Delaware

corporation with its headquarters and principal place of business in St. Louis County, Missouri.

14.     The allegations in paragraph 14 set forth conclusions of law for which no response is

required. To the extent that a response is deemed required, Monsanto admits the allegations in

paragraph 14 based upon the allegations in plaintiff's Complaint

15.     The allegations in paragraph 15 set forth conclusions of law for which no response is

required.

16.     The allegations in paragraph 16 set forth conclusions of law for which no response is

required.

17.     Monsanto denies the allegations in paragraph 17.

18.     In response to the allegations in paragraph 18, Monsanto denies any "omissions"

and certain events giving rise to plaintiff's claims. Monsanto lacks information or knowledge

sufficient to form a belief as to the truth of the allegations regarding where certain other events

giving rise to plaintiff's claims occurred and therefore denies those allegations. The remaining

allegations in paragraph 18 set forth conclusions of law for which no response is required.

19.     The allegations in paragraph 19 set forth conclusions of law for which no response is

required.

20.     In response to the allegations in paragraph 20, Monsanto admits that it discovered

the herbicidal properties of glyphosate; that it has manufactured Roundup®-branded herbicides; that certain Roundup®-branded herbicides contain POEA and adjuvants; and that EPA has classified surfactants and adjuvants as inert. Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 20.

21.    In response to the allegations in the first sentence of paragraph 21, Monsanto admits that glyphosate is an herbicide that is used to kill invasive plants and weeds. The remaining allegations in the second sentence of paragraph 21 are vague and ambiguous and that Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 21 and therefore denies those allegations. Monsanto admits the allegations in the second sentence of paragraph 21. Monsanto denies the allegations in the third sentence of paragraph 21 because the impact of glyphosate on treated plants varies depending upon the amount of glyphosate applied and the type of plant. Monsanto denies the allegations in the fourth sentence of paragraph 21 to the extent that they suggest that glyphosate is present in any plants at anything other than *de minimis* amounts well within regulatory safety levels, as determined by EPA.

22.    In response to the allegations in paragraph 22, Monsanto admits that farmers have safely used Roundup®-branded products since the 1970s. Monsanto denies the remaining allegations in paragraph 22.

23.    Monsanto admits the allegations in the first two sentences of paragraph 23 and admits that it has marketed Roundup®-branded products in accord with EPA's regulatory determinations under FIFRA. Monsanto otherwise denies the remaining allegations in paragraph 23.

24.    In response to the allegations in paragraph 24, Monsanto admits that certain Roundup®-branded herbicides contain POEA and adjuvants, that EPA has classified surfactants and adjuvants as inert, and that the specific surfactants and adjuvants used in Roundup®-branded herbicides – like those in other manufacturers' herbicide products – are protected by EPA as

"trade secrets." Monsanto notes that EPA has determined that the surfactants used in Roundup®-branded herbicides do not pose an unreasonable risk to human health. Monsanto denies the remaining allegations in paragraph 24.

25.    The allegations in paragraph 25 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto admits the allegations in paragraph 25.

26.    In response to the allegations in paragraph 26, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. The remaining allegations in paragraph 26 set forth conclusions of law for which no response is required.

27.    The allegations in paragraph 27 set forth conclusions of law for which no response is required.

28.    In response to the allegations in paragraph 28, Monsanto admits that EPA requires registrants of herbicides to submit extensive data in support of the human health and environmental safety of their products and further admits that EPA will not register or approve the labeling of herbicides that do not satisfy the requirements set forth in FIFRA. Monsanto states that the term "the product tests" in the final sentence of paragraph 28 is vague and ambiguous, and Monsanto therefore denies the same. The remaining allegations in paragraph 28 set forth conclusions of law for which no answer is required.

29.    Monsanto denies the allegations in paragraph 29 to the extent that they suggest that EPA only evaluates the safety of pesticide products on the date of their initial registration. Monsanto admits that EPA is in the process of conducting regulatory review of various pesticide products, but Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 29 regarding such pesticide products generally and therefore denies those allegations. The remaining allegations in paragraph 29 set forth conclusions of law for which no response is required.

30.    In response to the allegations in paragraph 30, Monsanto admits that EPA has undertaken a regulatory review of glyphosate and further admits that EPA has not released its findings. Monsanto states, however, that: (a) in September 2016, EPA's Office of Pesticide Programs ("OPP") issued a 227-page evaluation of glyphosate's carcinogenic potential, concluding that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment"[1]; and (b) at the same time, EPA posted an October 2015 final report by its standing Cancer Assessment Review Committee ("CARC"), in which CARC endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[2] Monsanto further states that, in December 2017, EPA's OPP issued a detailed, lengthy revised evaluation of glyphosate's carcinogenic potential that reiterated the conclusion that "[t]he strongest support is for [the descriptor] 'not likely to be carcinogenic to humans'."[3] Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 and therefore denies those allegations.

31.    In response to the allegations in paragraph 31, Monsanto admits that EPA posted the EPA CARC Final Report on EPA's website in late April 2016 and took the report off the website in early May 2016. Monsanto further states that, in September 2016, EPA posted the EPA CARC Final Report that endorsed EPA's existing classification of glyphosate as "Not Likely to be Carcinogenic to Humans." Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 and therefore denies those allegations.

32.    In response to the allegations in paragraph 32, Monsanto admits that an EPA review committee classified glyphosate as Class C in 1985 based on limited data and that EPA changed

---

[1] EPA's Office of Pesticide Programs, *Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 141 (Sept. 12, 2016) ("EPA OPP Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0094. The EPA OPP Report was prepared in anticipation of an EPA Scientific Advisory Panel meeting on glyphosate's carcinogenic potential.
[2] Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report, Oct. 1, 2015) ("EPA CARC Final Report"), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0014.
[3] EPA's Office of Pesticide Programs, *Revised Glyphosate Issue Paper: Evaluation of Carcinogenic Potential* at 143, 144 (Dec. 12, 2017), https://www.regulations.gov/document?D=EPA-HQ-OPP-2016-0385-0528.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

its classification of glyphosate to Group E based upon a full evaluation of the scientific evidence, including but not limited to three animal carcinogenicity studies. Monsanto admits that plaintiff has accurately quoted from one passage in an EPA document in 1991 with respect to the designation of an agent as Group E, but states that EPA repeatedly has concluded that glyphosate does not pose any cancer risk to humans. In addition to the conclusions in the two EPA OPP reports and the EPA CARC Final Report discussed above, other specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E [carcinogen] – one that shows evidence of non-carcinogenicity for humans – based on the lack of convincing evidence of carcinogenicity in adequate studies." EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity." Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25,396, 25,398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate. Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate." *Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05-56:20.

Monsanto denies the remaining allegations in paragraph 32.

33.    In response to the allegations in paragraph 33, Monsanto admits that it – along with a large number of other companies and governmental agencies – was defrauded by two chemical testing laboratories, and that Monsanto had hired both of these laboratories to conduct testing on glyphosate. Monsanto states that only one of these laboratories was hired to conduct toxicity tests

of glyphosate. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid Industrial Bio-Test ("IBT") Laboratories studies. To the extent that the allegations in paragraph 33 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

34.     In response to the allegations in paragraph 34, Monsanto admits that IBT Laboratories was hired to conduct toxicity studies in connection with the registration of a Roundup®-branded product. Monsanto denies that EPA's regulatory approval of such product is based upon any fraudulent or false IBT studies.

35.     Monsanto denies the allegations in paragraph 35 to the extent they suggest that EPA performed an inspection of IBT Laboratories solely or specifically in connection with studies conducted on glyphosate. Monsanto admits that EPA performed an audit of IBT Laboratories to investigate that laboratory's fraudulent and/or improper testing procedures in connection with services provided to a broad number of private and governmental entities and that this inspection included a review of studies IBT conducted on glyphosate. Monsanto was one of several pesticide manufacturers who had used IBT test results. The audit found some toxicology studies conducted with the original Roundup® herbicide to be invalid. As a result, Monsanto repeated all required studies in accordance with applicable EPA testing guidelines. Monsanto denies that EPA's registration of glyphosate or any glyphosate-based herbicides is based upon any invalid IBT studies. To the extent that the allegations in paragraph 35 are intended to suggest that Monsanto was anything other than a victim of this fraud, Monsanto denies those allegations.

36.     In response to the allegations in paragraph 36, Monsanto admits that three IBT employees were convicted of the charge of fraud, but Monsanto denies that any of the individuals were convicted based upon studies conducted on glyphosate or glyphosate-based herbicides.

37.     In response to the allegations in paragraph 37, Monsanto admits that it – along with numerous other private companies – hired Craven Laboratories as an independent laboratory to conduct residue studies for Monsanto agricultural products. Monsanto admits that it was defrauded by Craven Laboratories and that, as a result, Monsanto repeated the studies conducted

at Craven Laboratories at a substantial cost. To the extent that the allegations in paragraph 37 are intended to suggest that Monsanto was anything other than a victim of this fraud, such allegations are denied.

38.     Monsanto denies the allegations in paragraph 38.

39.     In response to the allegations in paragraph 39, Monsanto admits that Roundup®-branded products are highly valued by its customers because of their efficacy and safety. Monsanto also admits that the patent for glyphosate expired in the United States in 2000. The remaining allegations in paragraph 39 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

40.     In response to the allegations in paragraph 40, Monsanto admits that following the development of Roundup® Ready seeds, it began to sell them in the 1990s and that such seeds are now widely used by farmers in the United States and worldwide. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 40 and accordingly denies those allegations. The remaining allegations in paragraph 40 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

41.     In response to the allegations in paragraph 41, Monsanto admits that glyphosate is one of the world's largest herbicides by sales volume, but Monsanto denies any suggestion that it is the only company that sells glyphosate or glyphosate-based herbicides. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 41 and accordingly denies the same. The remaining allegations in paragraph 41 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

42.     In response to the allegations in paragraph 42, Monsanto admits that the New York Attorney General filed a lawsuit against Monsanto in 1996 alleging false and misleading advertising of Roundup®-branded products. This lawsuit was subsequently resolved without any admission of wrongdoing by Monsanto. Monsanto states that none of the New York Attorney General's allegations related in any way to a purported or alleged risk of cancer. To the extent the subparts purport to quote a document, the document speaks for itself and thus does not require any

further answer. The remaining allegations in paragraph 42 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

43.     In response to the allegations in paragraph 43, Monsanto admits it entered into an assurance of discontinuance with the New York Attorney General. The assurance speaks for itself and thus does not require any further answer. The remaining allegations in paragraph 43 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

44.     Monsanto denies the allegations in paragraph 44.

45.     In response to the allegations in paragraph 45, Monsanto admits that the French court ruled that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean," but denies the allegations in paragraph 45 to the extent that they suggest that this ruling was in any way related to plaintiff's claim here that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 45.

46.     Monsanto admits that IARC was created in 1965. The remaining allegations in paragraph 46 are vague and conclusory and comprise attorney characterizations, and are accordingly denied.

47.     Monsanto denies the allegations in the first and second sentences of paragraph 47. Monsanto admits the allegations in the final sentence of paragraph 47.

48.     In response to the allegations in paragraph 48, Monsanto denies that IARC follows stringent procedures for the evaluation of a chemical agent. Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the specific numbers cited in paragraph 48, which are not limited as of any specified date, and accordingly denies the same.

49.     In response to the allegations in paragraph 49, Monsanto admits that IARC sets forth in its Preamble the procedures that it claims to follow in its carcinogenicity evaluations. Monsanto denies the remaining allegations in paragraph 49.

50.     Monsanto denies any suggestion that IARC reviewed the full body of scientific research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form

1  a belief as to the truth of the remaining allegations in paragraph 50 and therefore denies those

2  allegations.

3        51.     Monsanto denies any suggestion that IARC reviewed the full body of scientific

4  research in conducting its evaluation of glyphosate or that IARC reliably reviewed the studies that

5  it cited in its glyphosate monograph. Monsanto lacks information or knowledge sufficient to form

6  a belief as to the truth of the remaining allegations in paragraph 51 and therefore denies those

7  allegations.

8        52.     Monsanto denies the allegations in paragraph 52 to the extent that they suggest that

9  IARC had previously assessed glyphosate. Monsanto admits that IARC classified glyphosate as a

10  Group 2A agent in March 2015.

11        53.     In response to the allegations in paragraph 53, Monsanto admits that IARC issued its

12  monograph for glyphosate, Monograph 112, on July 29, 2015, and that a draft of the monograph

13  was prepared by a "working group" of individuals selected by IARC who met over a one-week

14  period in March 2015 to consider glyphosate along with a number of other substances. Monsanto

15  denies the allegation that all members of the working groups are "experts."

16        54.     In response to the allegations in paragraph 54, Monsanto denies that the working

17  group or anyone at IARC conducted a one-year review of the scientific evidence related to

18  glyphosate or that the working group's findings reflected a comprehensive review of the latest

19  available scientific evidence. Monsanto also denies that the working group considered all

20  information available in the scientific literature and all data from government reports that are

21  publicly available. Monsanto denies the remaining allegations in paragraph 54.

22        55.     In response to the allegations in paragraph 55, Monsanto denies that the IARC

23  working group considered all of the data in the numerous studies that have been conducted

24  looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or

25  that it reliably considered the studies that it purports to have reviewed, which frequently reach

26  conclusions directly contrary to those espoused by the IARC working group. To the extent the

27  allegations purport to characterize statements made in the IARC monograph for glyphosate, the

statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

56.     The allegations in paragraph 56 are vague and conclusory. To the extent they purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but Monsanto lacks information or knowledge sufficient to form a belief as to the accuracy of the source of said information and accordingly denies the allegations.

57.     In response to the allegations in paragraph 57, to the extent the allegations purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves, but to the extent that this paragraph means that more than *de minimis* amounts of exposure are present, Monsanto denies the allegations in paragraph 57.

58.     In response to the allegations in paragraph 58, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures.

59.     Monsanto denies the allegations in paragraph 59. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk. In response to the allegations in paragraph 59, Monsanto denies that the IARC working group considered all of the data in the numerous studies that have been conducted looking at the safety of glyphosate and glyphosate-containing herbicides in human populations or that it reliably considered the studies that it purports to have reviewed, which frequently reach conclusions directly contrary to those espoused by the IARC working group. To the extent that the allegations in paragraph 59 purport to characterize statements made in the IARC monograph for glyphosate, the statements in that document speak for themselves.

60.     In response to the allegations in paragraph 60, Monsanto admits that the IARC working group identified a number of case control studies of populations with exposures to glyphosate, but Monsanto denies that any of these studies provide any evidence of a human health concern from such exposures. Monsanto denies the remaining allegations in paragraph 60. The IARC working group concluded that there was only limited evidence of carcinogenicity in epidemiologic studies, which, per IARC's guidelines, means that the working group could not rule out chance, bias or confounding so as to reach any conclusion of an increased risk.

61.     In response to the allegations in paragraph 61, Monsanto admits that the IARC working group purported to make these findings, but denies that the animal carcinogenicity studies of glyphosate in the aggregate provide evidence of a positive trend for or increase in any of the identified tumors. Monsanto further states that regulatory agencies around the world have reviewed the same animal studies and concluded that they do not provide evidence that glyphosate can cause cancer. Monsanto denies the remaining allegations in paragraph 61.

62.     In response to the allegations in paragraph 62, Monsanto admits that the working group cited to a study that it concluded provided evidence of chromosomal damage in community residents reported to be exposed to glyphosate, but Monsanto denies that the study supports such a conclusion or that the authors of the study reached such a conclusion.

63.     In response to the allegations in the first sentence of paragraph 63, Monsanto admits that certain studies have reported that glyphosate and glyphosate-based formulations induced oxidative stress under artificial experimental conditions. Monsanto denies that these studies provide any reliable evidence that glyphosate or glyphosate-based formulations induce oxidative stress in humans or animals under real-world exposure conditions. In response to the allegations in the second sentence of paragraph 63, Monsanto states that the cited document speaks for itself and does not require a response. In response to the allegations in the final sentence of paragraph 63, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses. Monsanto denies the remaining allegations in paragraph 63.

64.     In response to the allegations in paragraph 64, Monsanto admits that the IARC working group purported to make these findings, but denies that the cited studies provide any reliable basis for a finding that any meaningful levels of glyphosate or AMPA are present or persists in human blood or urine. Monsanto denies the remaining allegations in paragraph 64.

65.     In response to the allegations in paragraph 65, Monsanto admits that the IARC working group interpreted a selected number of experimental studies as evidence that glyphosate can cause genotoxicity, but Monsanto denies that the working group reliably considered the full body of scientific data on such alleged genotoxic endpoints and denies that the working group reliably interpreted the studies that it selected for consideration. Regulators around the world repeatedly have concluded that glyphosate is not genotoxic. Monsanto denies the remaining allegations in paragraph 65.

66.     In response to the allegations in paragraph 66, Monsanto admits that the IARC working group purported to find such effects, but denies that there is any reliable scientific basis for such conclusion. Monsanto denies the remaining allegations in paragraph 66.

67.     In response to the allegations in paragraph 67, Monsanto admits that the working group reviewed the findings of an Agricultural Health Study ("AHS") published in 2005, but denies that the working group characterized that study as supporting an association between glyphosate and the specified cancers. The AHS cohort study did not find a positive association between glyphosate and any type of cancer. Monsanto denies all other allegations in paragraph 67.

68.     In response to the allegations in paragraph 68, Monsanto admits that EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water regulations, relating to glyphosate that predates the IARC March 20, 2015 evaluation, which should be read in context of EPA's precautionary regulatory mandate and EPA's consistent finding that glyphosate does not pose any cancer risk to humans.

69.     In response to the allegations in paragraph 69, Monsanto admits that the Northwest Coalition for Alternatives to Pesticides made the identified claims, but denies that the Coalition provides any reliable basis for any conclusions regarding potential health risks from glyphosate.

Monsanto notes that a federal district court has characterized this same publication as an "advocacy piece[] published in [a] non-peer-reviewed journal." *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24 (D.D.C. 2013).

70.     Monsanto states that the term "toxic" as used in paragraph 70 is vague and ambiguous to the extent it is intended to suggest any evidence of carcinogenicity. Monsanto denies the allegations in paragraph 70.

71.     In response to the allegations in paragraph 71, Monsanto admits that Julie Marc published the cited study in 2002 and states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 71.

72.     In response to the allegations in the first sentence of paragraph 72 Monsanto admits that Julie Marc published a study titled "Glyphosate-based pesticides affect cell cycle regulation" in 2004. To the extent that the first sentence of paragraph 72 characterizes the meaning of the cited study, Monsanto denies the allegations in the first sentence of paragraph 72. In response to the remaining allegations in paragraph 72, Monsanto states that the document speaks for itself and does not require a response. To the extent that a response is deemed required, Monsanto denies the remaining allegations in paragraph 72.

73.     In response to the allegations in paragraph 73, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 73 characterizes the meaning of the cited study, Monsanto denies the remaining allegations in paragraph 73.

74.     In response to the allegations in paragraph 74, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 74 characterizes the meaning of the cited study, Monsanto denies the allegation that the cited studies support the allegation that glyphosate or Roundup®-branded products pose any risk to human health and denies the remaining allegations in paragraph 74.

75.     In response to the allegations in paragraph 75, Monsanto states that the terms "at all

times" and "these studies" are vague and ambiguous, and therefore Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 75.

76.     Monsanto denies the allegations in paragraph 76.

77.     In response to the allegations in paragraph 77, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 77.

78.     In response to the allegations in paragraph 78, Monsanto admits that the IARC working group's classification of glyphosate as a Class 2A carcinogen has resulted in ongoing discussions and/or restrictions in certain countries regarding the sale and/or use of glyphosate-based herbicides, including the Netherlands, but denies that there is any scientific basis for the concerns raised by the improper IARC classification. Monsanto denies the remaining allegations in paragraph 78.

79.     In response to the allegations in paragraph 79, Monsanto admits that the IARC working group classification led an individual government attorney in Brazil to write a letter to the Brazilian regulatory authorities requesting a reevaluation of glyphosate. Monsanto denies the remaining allegations in paragraph 79.

80.     Monsanto admits that, in France, the sale to and use by amateurs (i.e., non-professionals) of all pesticides (with certain exceptions for biocontrol pesticides) are prohibited as of January 1, 2019, with certain exceptions. Monsanto denies the remaining allegations in paragraph 80.

81.     In response to the allegations in paragraph 81, Monsanto admits that some employees of Bermuda's government announced an intention to suspend the importation of glyphosate-based herbicides, but Monsanto lacks information sufficient to form a belief as to the truth of the allegations about whether this suspension took effect and accordingly denies the same. Monsanto denies the remaining allegations in paragraph 81.

82.     In response to the allegations in paragraph 82, Monsanto admits that the IARC monograph appears to be the alleged basis for the Sri Lankan government's actions, including the allegation that glyphosate can cause kidney disease. Monsanto further states that the allegations regarding kidney disease found in Sri Lanka are unrelated to plaintiff's allegations regarding claimed carcinogenicity. Monsanto denies the remaining allegations in paragraph 82.

83.     In response to the allegations in paragraph 83, Monsanto denies the alleged basis for Colombia's suspension of aerial spraying of glyphosate. Colombia's attorney general has explained that the ban on aerial spraying of illicit coca plantations was a concession to the FARC ("Fuerzas Armadas Revolucionarias de Colombia"), and had nothing to do with alleged safety concerns. As of April 2016, the government of Colombia has resumed manual application of glyphosate on illicit coca crops. A federal district court in the United States excluded plaintiffs' expert testimony purporting to link these same aerial eradication operations with cancer as scientifically unreliable. *See Arias v. DynCorp*, 928 F. Supp. 2d 10 (D.D.C. 2013). Monsanto denies the remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84, Monsanto admits that the California Office of Environmental Health Hazard Assessment ("OEHHA") decided that it was required to add glyphosate to California's Proposition 65 list of chemicals in a process that OEHHA itself considers "ministerial" and "automatic" without any role for consideration of the weight or quality of the evidence considered by IARC. Monsanto further states that this decision was not based upon any independent scientific analysis of glyphosate but instead was in response to a provision of a California ballot proposition triggering such action based solely upon the IARC classification, and indeed was contrary to OEHHA's own conclusion in 2007, based upon its own independent evaluation of the same scientific evidence, that glyphosate is "unlikely to pose a cancer hazard to humans."[4] Monsanto contends that OEHHA's decision that it was required to list glyphosate violates the United States Constitution and the California Constitution. On February 26, 2018, a

---

[4] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907 0.pdf.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

federal district court enjoined California from requiring Proposition 65 warning labels for glyphosate as unconstitutional. The remaining allegations in paragraph 84 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies the allegations in paragraph 84.

85.     The allegations in paragraph 85 set forth conclusions of law for which no response is required.

86.     The allegations in paragraph 86 set forth conclusions of law for which no response is required. Nevertheless, Monsanto notes that, under Proposition 65, the mere presence of a listed substance in a consumer product does not require a warning. Instead, a warning need only be provided if the exposure to the listed substance, for the average user of the product, exceeds the level at which cancer would be hypothesized to occur, based on extrapolation from animal studies, in one person in 100,000 persons exposed over a 70-year lifetime.

87.     In response to the allegations in paragraph 87, Monsanto admits that it has brought a lawsuit challenging OEHHA's notice of intent to include glyphosate on its Proposition 65 list.

88.     In response to the allegations in paragraph 88, Monsanto admits that plaintiff accurately quotes from Monsanto's Complaint in the referenced lawsuit, and states that Monsanto's Complaint in that lawsuit speaks for itself. Monsanto further admits that its lawsuit cites to OEHHA's 2007 determination based upon its own independent evaluation of the scientific evidence that glyphosate is "unlikely to pose a cancer hazard to humans."[5] The remaining allegations in paragraph 88 comprise attorney characterizations and are accordingly denied.

89.     In response to the allegations in paragraph 89, Monsanto admits that, on November 12, 2015, the European Food Safety Authority ("EFSA") issued its Renewal Assessment Report (RAR) on glyphosate, in which it concluded that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[6] Monsanto further admits that this conclusion affirmed a similar finding by the German Federal Institute for Risk Management (BfR). Monsanto admits that the European

---

[5] OEHHA, *Public Health Goal for Glyphosate in Drinking Water* (June 2007), https://oehha.ca.gov/media/downloads/water/chemicals/phg/glyphg062907_0.pdf.
[6] *See* EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

scientists who reached these determinations were acting independently of Monsanto and were acting to protect the public.

90.    In response to the allegations in paragraph 90, Monsanto denies that "industry groups" were afforded any ability to review the RAR beyond that afforded to the public generally. Monsanto otherwise admits the allegations in paragraph 90.

91.    Monsanto admits the allegations in paragraph 91.

92.    In response to the allegations in paragraph 92, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies the allegations in paragraph 92 to the extent that they purport to set forth all of the distinctions identified by EFSA between its evaluation and the evaluation of the IARC working group. Monsanto states that in the same document cited by plaintiff, EFSA states that, in contrast to IARC, "the EU peer review concluded that no significant increase in tumor incidence could be observed in any of the treated groups of animals in the nine long term rat studies considered" and explains that "[a]s well as reviewing a larger number of studies [than IARC], EFSA for example considered that carcinogenic effects observed at high doses were unreliable as they could be related to general toxicity."[7] To the extent that paragraph 92 characterizes the meaning of the cited studies, Monsanto denies the remaining allegations in paragraph 92.

93.    In response to the allegations in paragraph 93, Monsanto states that the cited document speaks for itself and does not require a response.

94.    In response to the allegations in paragraph 94, Monsanto admits that EFSA set acceptable exposure thresholds for glyphosate that are orders of magnitude higher than those which occur in the ordinary use of glyphosate-based herbicides. Monsanto denies that these exposure thresholds are based upon any alleged risk of carcinogenicity.

95.    In response to the allegations in paragraph 95, Monsanto admits that certain individuals, including Dr. Christopher Portier, sent the letter identified in paragraph 95

---

[7] EFSA, *EFSA Explains Risk Assessment Glyphosate*, http://www.efsa.europa.eu/sites/default/files/corporate publications/files/efsaexplainsglyphosate151112en.pdf.

(hereinafter, "the Portier letter"). Monsanto denies that Dr. Portier or the other signatories to his letter are "independent" and "renowned international experts in the field." Monsanto states that Dr. Portier has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto and that Monsanto lacks information or knowledge sufficient to form a belief as to whether the other signatories were aware, before they signed the Portier letter, that Dr. Portier was working as a retained expert for plaintiffs' counsel. Monsanto otherwise admits that this letter urged the EU Health Commissioner to disregard the scientific findings reached by EFSA and by the BfR.

96.     In response to the allegations in paragraph 96, Monsanto admits that Dr. Portier sent the letter identified in paragraph 96. Monsanto denies that Dr. Portier or the other signatories to his letter are "renowned international experts in the field." Monsanto admits that certain members of the IARC working group assigned to glyphosate signed on to the Portier letter, but states that Monsanto lacks information or knowledge sufficient to form a belief as to whether those individuals or the other signatories were aware at the time that Dr. Portier was working as a retained expert for plaintiffs' counsel.

97.     In response to the allegations in paragraph 97, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[8] To the extent that paragraph 97 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 97.

98.     In response to the allegations in paragraph 98, Monsanto admits that IARC concluded that the human epidemiologic data provides only "limited evidence of carcinogenicity," which IARC defines as meaning that "chance, bias, or confounding could not be ruled out with

---

[8] *See* EFSA, Glyphosate: EFSA updates toxicological profile, http://www.efsa.europa.eu/en/press/news/151112.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

reasonable confidence."[9] Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[10] In response to the remaining allegations in paragraph 98, Monsanto states that the cited Portier letter speaks for itself and does not require a response. To the extent that paragraph 89 characterizes the meaning of the cited document or of EFSA's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 98.

99. In response to the allegations in paragraph 99, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[11] To the extent that paragraph 99 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 99.

100. In response to the allegations in paragraph 100, Monsanto states that the cited Portier letter speaks for itself and does not require a response. Monsanto further admits that Dr. Portier – who has been disclosed as an expert witness retained by plaintiffs' counsel in the glyphosate cancer litigation against Monsanto – seeks in his letter to challenge the scientific conclusions reached by EFSA in support of its finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans."[12] To the extent that paragraph 100 characterizes the meaning of the cited document or of EFSA's and BfR's evaluation of glyphosate, Monsanto denies the remaining allegations in paragraph 100.

---

[9] http://monographs.iarc.fr/ENG/Preamble/currentb6evalrationale0706.php.

[10] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[11] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

[12] See EFSA, *Glyphosate: EFSA updates toxicological profile*, http://www.efsa.europa.eu/en/press/news/151112.

101.   Monsanto admits the allegations in paragraph 101.

102.   In response to the allegations in paragraph 102, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self- labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 102 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 102.

103.   In response to the allegations in paragraph 103, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 103 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 103.

104.   In response to the allegations in paragraph 104, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 104 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 104.

105.   In response to the allegations in paragraph 105, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 105 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 105.

106.   In response to the allegations in paragraph 106, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto denies that the self-labeled "consensus statement" represents the view of any consensus of scientific opinion. To the extent that paragraph 106 characterizes the scientific evidence regarding the safety of glyphosate-based herbicides, Monsanto denies the remaining allegations in paragraph 106.

107.   In response to the allegations in paragraph 107, Monsanto states that the cited

1    document speaks for itself and does not require a response. Monsanto denies that the self-labeled

2    "consensus statement" represents the view of any consensus of scientific opinion.  To the extent

3    that paragraph 107 characterizes the scientific evidence regarding the safety of glyphosate-based

4    herbicides, Monsanto denies the remaining allegations in paragraph 107.

5        108.   In response to the allegations in paragraph 108, Monsanto states that the cited

6    document speaks for itself and does not require a response. Monsanto denies that the self-labeled

7    "consensus statement" represents the view of any consensus of scientific opinion.  To the extent

8    that paragraph 108 characterizes the scientific evidence regarding the safety of glyphosate-based

9    herbicides, Monsanto denies the remaining allegations in paragraph 108.

10       109.   In response to the allegations in paragraph 109, Monsanto admits that the United

11   States Food and Drug Administration ("FDA") has authority to enforce pesticide residues and that

12   the FDA announced it would begin testing certain foods for glyphosate residues. In response to

13   the remaining allegations in paragraph 109, Monsanto states that the cited documents speak for

14   themselves and do not require a response.

15       110.   In response to the allegations in paragraph 110, Monsanto admits that the U.S.

16   Government Accountability Office ("GAO") issued the cited report regarding pesticide residue

17   monitoring programs, but Monsanto denies that the GAO report was limited to glyphosate.  In

18   response to the remaining allegations in paragraph 110, Monsanto states that the cited documents

19   speak for themselves and do not require a response. To the extent that paragraph 110 characterizes

20   the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 110.

21       111.   In response to the allegations in paragraph 111, Monsanto admits that the FDA has

22   authority to enforce pesticide residues and that the FDA announced it would begin testing certain

23   foods for glyphosate residues. In response to the remaining allegations in paragraph 111,

24   Monsanto states that the cited documents speak for themselves and do not require a response. To

25   the extent that paragraph 111 characterizes the meaning of the cited documents, Monsanto denies

26   the remaining allegations in paragraph 111.

27       112.   In response to the allegations in paragraph 112, Monsanto admits that the FDA has

authority to enforce pesticide residues and that the FDA announced it would begin testing certain foods for glyphosate residues. In response to the remaining allegations in paragraph 103, Monsanto states that the cited documents speak for themselves and do not require a response. To the extent that paragraph 112 characterizes the meaning of the cited documents, Monsanto denies the remaining allegations in paragraph 112.

113. Monsanto admits the allegations in paragraph 113. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

114. In response to the allegations in paragraph 114, Monsanto states that the cited document speaks for itself and does not require a response. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

115. In response to the allegations in paragraph 115, Monsanto lacks information or knowledge sufficient to form a belief as to whether each of the individuals at the referenced meeting were "experts" and therefore denies that allegation. Monsanto admits the remaining allegations in paragraph 115. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

116. In response to the allegations in paragraph 116, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 116 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 116.

117. In response to the allegations in paragraph 117, Monsanto states that the cited document speaks for itself and does not require a response. To the extent that paragraph 117 characterizes the meaning of the cited document, Monsanto denies the remaining allegations in paragraph 117. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

118. Monsanto admits the allegations in paragraph 118. Monsanto also states that the

allegations are out of date and that the European Union has approved glyphosate for another five years.

119.   Monsanto admits the allegations in paragraph 119. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

120.   Monsanto admits the allegations in paragraph 120. Monsanto also states that the allegations are out of date and that the European Union has approved glyphosate for another five years.

121.   In response to the allegations in paragraph 121, Monsanto admits that the EU voted to extend the glyphosate license for five more years. The remaining allegations in paragraph 121 are vague and conclusory and comprise attorney characterizations and are accordingly denied.

122.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 122 and therefore denies those allegations.

123.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 123 and therefore denies those allegations.

124.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 124 and therefore denies those allegations.

125.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 and therefore denies those allegations.

126.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 126 and therefore denies those allegations.

127.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 127 and therefore denies those allegations. Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.

128.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 128 and therefore denies those allegations.

129.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 129 and therefore denies those allegations.

130.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 130 and therefore denies those allegations.

131.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 131 and therefore denies those allegations. In response to the allegations in the final sentence of paragraph 131, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses.

132.   In response to the allegations in subpart (a) of paragraph 132, Monsanto admits that Roundup® branded products are safe for use in accordance with the labeling; that the scientific evidence does not support any causal link between Roundup® branded products and "blood born cancers" or NHL; and that Monsanto has made statements to that effect in accordance with EPA regulation under FIFRA. Monsanto denies the remaining allegations in paragraph 132, including its subparts.

133.   In response to the allegations in paragraph 133, Monsanto admits that it has made statements with respect to the safety of Roundup® in accordance with EPA regulation under FIFRA. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 133 and therefore denies the remaining allegations in paragraph 133.

134.   In response to the allegations in the first sentence of paragraph 134, Monsanto denies that there is any risk of NHL or other serious illness associated with the use of and/or exposure to Roundup® and glyphosate. Monsanto states, however, that the scientific studies upon which IARC purported to base its classification for glyphosate were all publicly available before March 2015. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 134 and therefore denies those allegations. The final sentence of paragraph 134 sets forth conclusions of law for which no

response is required.

135.   The first sentence of paragraph 135 sets forth conclusions of law for which no response is required. Monsanto denies the allegations in the second sentence of paragraph 135.

136.   Monsanto denies the allegations in paragraph 136.

137.   Monsanto incorporates by reference its responses to paragraphs 1 through 136 in response to paragraph 137 of plaintiff's Complaint.

138.   In response to the allegations in paragraph 138, Monsanto denies that it violated the laws of Pennsylvania or federal law and states that it complied with all applicable law regarding Roundup®-branded products. The remaining allegations in paragraph 138 set forth conclusions of law for which no response is required. To the extent that a response is deemed required, Monsanto denies all such allegations.

139.   The allegations in paragraph 139 set forth conclusions of law for which no response is required.

140.   Monsanto denies the allegations in the first sentence of paragraph 140. The second sentence of paragraph 140 sets forth a conclusion of law for which no response is required.

141.   Monsanto incorporates by reference its responses to paragraphs 1 through 140 in response to paragraph 141 of plaintiff's Complaint.

142.   In response to the allegations in paragraph 142, Monsanto admits that plaintiff purports to bring claims for strict liability design defect but denies any liability as to that claim.

143.   Monsanto denies the allegations in paragraph 143.

144.   In response to the allegations in paragraph 144, Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations that plaintiff used or was exposed to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 144.

145.   Monsanto denies the allegations in the first sentence of paragraph 145. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 145 and therefore denies those allegations.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

1      146.   Monsanto denies the allegations in paragraph 146.

2      147.   Monsanto denies the allegations in paragraph 147.

3      148.   Monsanto denies the allegations in paragraph 148.

4      149.   Monsanto denies the allegations in paragraph 149

5      150.   Monsanto denies the allegations in paragraph 150.

6      151.   Monsanto denies the allegations in paragraph 151.

7      152.   Monsanto denies the allegations in paragraph 152.

8      153.   Monsanto denies the allegations in paragraph 153.

9      154.   Monsanto denies the allegations in paragraph 154.

10     155.   Monsanto denies the allegations in paragraph 155.

11     156.   Monsanto denies the allegations in paragraph 156.

12     157.   Monsanto denies the allegations in paragraph 157.

13     158.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 158 concerning plaintiff's claimed exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 158, including that Roundup® branded products have "dangerous characteristics."

14     159.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 159 and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 159, including that Roundup®-branded products have "dangerous characteristics."

21     160.   Monsanto denies the allegations in paragraph 160.

22     161.   Monsanto denies the allegations in paragraph 161.

23     162.   Monsanto denies the allegations in paragraph 162.

24     163.   Monsanto denies the allegations in paragraph 163.

25     164.   Monsanto denies the allegations in paragraph 164.

26     165.   Monsanto denies the allegations in paragraph 165.

27     166.   Monsanto denies the allegations in paragraph 166.

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

167.   Monsanto denies the allegations in paragraph 167.

168.   Monsanto denies the allegations in paragraph 168.

169.   Monsanto denies the allegations in paragraph 169.

In response to the "WHEREFORE" paragraph following paragraph 169, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

170.   Monsanto incorporates by reference its responses to paragraphs 1 through 169 in response to paragraph 170 of plaintiff's Complaint.

171.   In response to the allegations in paragraph 171, Monsanto admits that plaintiff purports to bring a claim for strict liability failure to warn, but denies any liability as to that claim.

172.   Monsanto denies the allegations in paragraph 172.

173.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 173 that plaintiff purchased Roundup®-branded products and therefore denies those allegations. The allegations in paragraph 173 also set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 173.

174.   The allegations in paragraph 174 set forth conclusions of law for which no response is required.

175.   Monsanto denies the allegations in paragraph 175. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

176.   Monsanto denies the allegations in paragraph 176.

177.   Monsanto denies the allegations in paragraph 177.

178.   Monsanto denies the allegations in paragraph 178.

179.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 179 and therefore denies those allegations.

180.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 180 concerning plaintiff's alleged use and exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 180, including that Roundup®-branded products have "dangerous characteristics."

181.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 181 concerning plaintiff's alleged use and exposure to Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 181, including that Roundup®-branded products have "dangerous characteristics."

182.   In response to the allegation in paragraph 182, Monsanto denies that any exposure to glyphosate-based herbicides or Roundup®-branded products can cause cancer or other serious illnesses and denies that there are any defects in those products. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 182 and therefore denies those allegations. Monsanto states, however, that the scientific studies upon which IARC purported to base its evaluation of glyphosate were all publicly available before March 2015.

183.   Monsanto denies the allegations in paragraph 183.

184.   Monsanto denies the allegations in paragraph 184.

185.   In response to the allegations in paragraph 185, Monsanto denies that there is any risk of NHL or any other serious illnesses associated with the intended use of and/or exposure to Roundup®-branded products and glyphosate. The allegations in the second sentence of paragraph 185 set forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 185. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all applicable laws and regulations

186.   Monsanto denies the allegations in paragraph 186.

187.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth

of the allegations in paragraph 187 concerning plaintiff's alleged use of Roundup®-branded products and therefore denies those allegations. Monsanto denies the remaining allegations in paragraph 187.

188.   Monsanto denies the allegations in paragraph 188.

189.   Monsanto denies the allegations in paragraph 189. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

190.   Monsanto denies the allegations in paragraph 190.

191.   Monsanto denies the allegations in paragraph 191.

In response to the "WHEREFORE" paragraph following paragraph 191, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

192.   Monsanto incorporates by reference its responses to paragraphs 1 through 191 in response to paragraph 192 of plaintiff's Complaint.

193.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 193 regarding the specific products allegedly used by plaintiff or any advertising or marketing allegedly seen or considered by plaintiff and therefore denies the allegations in paragraph 193.

194.   The allegations in paragraph 194 set forth conclusions of law for which no response is required.

195.   The allegations in paragraph 195 set forth conclusions of law for which no response is required.

196.   Monsanto denies the allegations in paragraph 196.

197.   Monsanto denies the allegations in paragraph 197.

198.   Monsanto denies the allegations in paragraph 198. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal

requirements under FIFRA.

199.   Monsanto denies the allegations in paragraph 199.

200.   Monsanto denies the allegations in the first sentence of paragraph 200. In response to the allegations in the second sentence of paragraph 200, Monsanto denies that Monsanto's promotional activities were not honest. The remaining allegations in paragraph 200 set forth conclusions of law for which no response is required.

201.   Monsanto denies the allegations in paragraph 201.

202.   Monsanto denies the allegations in paragraph 202, including each of its subparts.

203.   Monsanto denies the allegations in paragraph 203.

204.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 204 regarding plaintiff's knowledge and therefore Monsanto denies those allegations. Monsanto denies the remaining allegations in paragraph 204, including that intended use and/or exposure to Roundup®-branded products causes any injuries.

205.   Monsanto denies the allegations in paragraph 205.

206.   Monsanto denies the allegations in paragraph 206.

207.   Monsanto denies the allegations in paragraph 207.

208.   Monsanto denies the allegations in paragraph 208.

In response to the "WHEREFORE" paragraph following paragraph 208, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

209.   Monsanto incorporates by reference its responses to paragraphs 1 through 208 in response to paragraph 209 of plaintiff's Complaint.

210.   Monsanto denies the allegations in paragraph 210. Additionally, the last sentence in paragraph 210 sets forth a conclusion of law for which no response is required.

211.   Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 211 regarding plaintiff's claimed use of Roundup®-branded

products and therefore denies those allegations. The remaining allegations in paragraph 211 set forth conclusions of law for which no response is required.

212. Monsanto denies the allegations in paragraph 212. All labeling of Roundup®-branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA.

213. The allegations in paragraph 213 set forth conclusions of law for which no response is required.

214. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 214 and therefore denies those allegations.

215. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 215 regarding the claimed use of Roundup®-branded products by plaintiff and others and therefore denies those allegations. The remaining allegations in paragraph 215 set forth conclusions of law for which no response is required.

216. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 216 regarding plaintiff's claimed use of or exposure to Roundup®-branded products and therefore denies those allegations. The allegation in paragraph 216 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required. Monsanto denies the remaining allegations in paragraph 216.

217. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 217 regarding plaintiff's claimed use of or exposure to Roundup®-branded products or plaintiff's claimed reliance and therefore denies those allegations. The allegation in paragraph 217 regarding Monsanto's implied warranty sets forth conclusions of law for which no response is required.

218. Monsanto denies that there is any risk of serious injury associated with or linked to the as-directed use of and/or exposure to Roundup®-branded products and/or glyphosate. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 218 regarding plaintiff's knowledge about Roundup®-branded products

1    and therefore denies the remaining allegations in paragraph 218.

2       219.   Monsanto denies the allegations in paragraph 219.

3       220.   Monsanto denies the allegations in paragraph 220.

4       221.   Monsanto denies the allegations in paragraph 221.

5       In response to the "WHEREFORE" paragraph following paragraph 221, Monsanto demands

6 that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed,

7 with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed

8 by law and such further and additional relief as this Court may deem just and proper.

9       222.   Monsanto incorporates by reference its responses to paragraphs 1 through 221 in

10 response to paragraph 222 of plaintiff's Complaint.

11       223.   Monsanto denies the allegations in the first sentence of paragraph 223 to the extent it

12 encompasses all herbicides as vague and ambiguous but Monsanto admits the allegations in this

13 sentence to the extent it refers to glyphosate based herbicides. Monsanto denies the allegations

14 that Roundup® branded products are defective and unreasonably dangerous to consumers and

15 therefore denies the remaining allegations in paragraph 223.

16       224.   Paragraph 224 and its subparts set forth conclusions of law for which no response is

17 required.

18       225.   In response to the allegations in Paragraph 225, Monsanto admits that it has sold

19 glyphosate based herbicides in accordance with their EPA-approved labeling. Monsanto further

20 states that paragraph 225 sets forth conclusions of law for which no response is required.

21 Monsanto denies the remaining allegations in paragraph 225.

22       226.   Monsanto denies the allegations in the first and second sentence of paragraph 226.

23 All labeling of Roundup®-branded products has been and remains EPA-approved and in

24 compliance with all federal requirements under FIFRA. Monsanto states that the final sentence of

25 paragraph 226 sets forth conclusions of law for which no response is required.

26       227.   The first sentence of paragraph 227 sets forth conclusions of law for which no

27 response is required. Monsanto denies the allegations in the final sentence of paragraph 227.

228.   Monsanto denies the allegations in paragraph 228 and each of its subparts.

229.   Monsanto states that the allegation in paragraph 229 that Monsanto made an express warranty sets forth a legal conclusion for which no response is required. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 229 and therefore denies those allegations.

230.   Monsanto denies the allegations in paragraph 230 to the extent that they allege that Monsanto made false or incomplete statements and representations concerning Roundup®. All labeling of Roundup® branded products has been and remains EPA-approved and in compliance with all federal requirements under FIFRA. Monsanto lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 230 regarding plaintiff's knowledge and therefore denies those allegations.

231.   Monsanto denies the allegations in paragraph 231.

In response to the "WHEREFORE" paragraph following paragraph 231, Monsanto demands that judgment be entered in its favor and against plaintiff; that plaintiff's Complaint be dismissed, with prejudice; and that Monsanto be awarded costs of suit and reasonable attorney's fees as allowed by law and such further and additional relief as this Court may deem just and proper.

232.   Monsanto incorporates by reference its responses to paragraphs 1 through 231 in response to paragraph 232 of plaintiff's Complaint.

233.   Monsanto denies the allegations in paragraph 233.

234.   Monsanto denies the allegations in paragraph 234.

235.   Monsanto denies the allegations in paragraph 235.

236.   Monsanto denies the allegations in paragraph 236.

237.   The allegations in paragraph 237 set forth conclusions of law for which no response is required.

238.   The allegations in paragraph 238 set forth conclusions of law for which no response is required.

239.   In response to the allegations in paragraph 239, Monsanto denies that plaintiff is

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
3:16-md-02741-VC  & 3:21-cv-04929-VC

1  entitled  to the relief sought therein,  including  any judgment  for any damages, interest, costs, or

2  any other relief whatsoever.

3       In response to the allegations  in the section entitled  "PRAYER FOR RELIEF,"  Monsanto

4  denies that plaintiff  is entitled  to the relief sought therein,  including  any judgment  for any damages,

5  interest, costs, or any other relief  whatsoever.

6       Every allegation  in the Complaint  that is not  specifically  and expressly  admitted  in this

7  Answer is hereby specifically  and expressly denied.

8                       **SEPARATE AND AFFIRMATIVE DEFENSES**

9       1.      The Complaint,  in whole  or part, fails to state a claim  or cause of action against

10  Monsanto  upon which relief can be granted.

11      2.      Venue is improper for all or most of plaintiff's  claims.

12      3.      Plaintiff's  claims are barred because plaintiff  cannot proffer any scientifically

13  reliable  evidence  that the products at issue were defective  or unreasonably  dangerous.

14      4.      Any alleged  negligent  or culpable  conduct of Monsanto,  none being admitted,  was

15  so insubstantial  as to be insufficient  to be a proximate  or substantial  contributing  cause of

16  plaintiff's  alleged  injuries.

17      5.      Plaintiff's  claims are barred, in whole  or in part, because the products  at issue were

18  designed,  manufactured,  marketed and labeled with proper warnings,  information,  cautions and

19  instructions,  in accordance  with the state of the art and the state of scientific  and technological

20  knowledge.

21      6.      Plaintiff's  claims are barred, in whole  or in part, because the products  at issue were

22  not defective  or unreasonably  dangerous in that they complied  with, at all relevant times, all

23  applicable  government  safety standards.

24      7.      Plaintiff''  claims are preempted, in whole  or in part, by applicable  federal law

25  relating  to the design, testing, producing,  manufacturing,  labeling,  distributing,  modeling,

26  processing,  and supply  of Roundup®-branded  products and/or glyphosate-containing  products.

27      8.      Plaintiff's  claims are preempted, in whole  or in part, because of U.S. EPA findings

that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

9.     Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

10.     Plaintiff's claims are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

11.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

12.     Applicable statutes of limitations and/or repose bar plaintiff's claims in whole or in part.

13.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims in whole or in part.

14.     If plaintiff suffered injuries or damages as alleged, which is denied, such injuries or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Monsanto. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injuries or damages.

15.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to them by which liability could be attributed to it.

16.     Monsanto made no warranties of any kind or any representations of any nature whatsoever to plaintiff. If any such warranties were made, which Monsanto specifically denies, then plaintiff failed to give notice of any breach thereof.

17.     Plaintiff has failed to allege fraud with sufficient specificity.

18.     Plaintiff's claims are preempted in whole or part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

19.     Plaintiff's claims for punitive and/or exemplary damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the New Jersey Constitution, and/or other applicable state constitutions.

20.     Plaintiff's claims for punitive and/or exemplary damages are barred because plaintiff has failed to allege conduct warranting imposition of such damages under New Jersey law, and/or other applicable state laws.

21.     Plaintiff's claims for punitive and/or exemplary damages are barred and/or limited by operation of state and/or federal law.

22.     Plaintiff's claims are barred in whole or in part by plaintiff's own contributory/comparative negligence.

23.     Plaintiff's claims are barred in whole or in part by plaintiff's own failure to mitigate damages.

24.     Plaintiff's claims are barred in whole or in part by the sophisticated user doctrine.

25.     Plaintiff's recovery, if any, shall be reduced by those payments that plaintiff received and/or will receive from collateral sources.

26.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries were not caused by a Monsanto product.

27.     Plaintiff's claims are barred or limited to the extent that plaintiff asserts claims that are governed by the laws of a state that does not recognize, or limits, such claims.

28.     Plaintiff's claims are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

29.     Plaintiff's common law claims are barred, in whole or part, by application of the New Jersey Products Liability Act, N.J. Stat. Ann. § 2A:58C-1 through 58C-11.

30.     Monsanto hereby gives notice that it intends to rely upon such other defenses as may

1 become available or apparent during the course of discovery and thus reserves its right to amend

2 this Answer to assert such defenses.

3        WHEREFORE, Defendant Monsanto demands judgment in its favor and against plaintiff,

4 dismissing plaintiff's Complaint with prejudice, together with the costs of suit and such other relief

5 as the Court deems equitable and just.

6 **JURY TRIAL DEMAND**

7        Monsanto demands a jury trial on all issues so triable.

8 DATED: July 12, 2021.               Respectfully submitted,

9                           SHOOK, HARDY & BACON L.L.P.

10                           BY: /s/ Jennise W. Stubbs

11                           Jennise W. Stubbs
                          600 Travis Street, Suite 3400

12                           Houston, TX 77002-2926
                          Telephone: (713) 227-8008

13                           Facsimile: (713) 227-9508
                          Email: jstubbs@shb.com

14                           *Attorneys for Defendant*

15                           *MONSANTO COMPANY*

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I certify that on the 12th day of July, 2021, I electronically transmitted the foregoing MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT to the Clerk of the court using the ECF system for filing and transmittal of a true and correct copy of the foregoing document was served electronically or by another manner as authorized by FED. R. CIV. P. 5.

/s/Jennise W. Stubbs
Jennise W. Stubbs