**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 Case No. 16-md-02741-VC |
| | Hon. Vince Chhabria |
| This document relates to: ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to the Court's July 23, 2021 Pretrial Order No. 238, Plaintiffs' leadership and Monsanto's counsel provide the following updates to the Court.

**I.      Proposed Schedule for Next Three Waves of Cases to be Worked up for Trial**

The parties have met and conferred on this topic and have been unable to reach agreement on how to proceed. Below are the parties' respective positions:

**A.  Plaintiffs' Position**

Plaintiffs respectfully request that the Court expand the number of case that constitute the next waves. This MDL was formed in November 2016, there have been three jury verdicts against Monsanto, and according to Bayer public statements in May 2021 it has reached settlements in approximately 95,000 cases nationwide, with only 30,000 unsettled cases remaining.[1] In addition, the Court in PTO 240 ordered Settlement Master Ken Feinberg to make settlement offers in all MDL cases. While Monsanto objects to waves that exceed 100 plaintiffs, the settlement process the Court put in place will undoubtedly reduce the number of cases that are currently in the waves that Plaintiffs propose.

---

[1] See https://www.reuters.com/business/healthcare-pharmaceuticals/us-judge-rejects-bayers-2-bln-deal-resolve-future-roundup-lawsuits-2021-05-26/#:~:text=The%20company%20committed%20%249.6%20billion,but%2030%2C000%20of%20those%20claims.
.

As a preliminary matter, and before presenting our selection of the next three waves, the Plaintiffs respectfully request that the Court enter a catch-up order for the cases in the first three waves that were filed after the selection of those waves.[2] These catch-up cases should follow the schedule that the Court sets for the Wave IV cases.

As to the waves, Plaintiffs propose a modified approach for the fourth wave to include all cases in states that constitute the 9th Circuit.  According to the parties' records, this would include 369 cases at the present time. In the alternative, if the Court is not inclined to select a Circuit as a wave and rejects Plaintiffs' request for a catch-up order, then Plaintiffs request that the Court select California again, which continues to represent the greatest number of cases in this MDL. If the Court rejects the Circuit approach but agrees to a catch-up order, then Plaintiffs propose Arizona for Wave IV.

For Wave V, Plaintiffs propose Florida, which currently includes 57 cases in the MDL.  For Wave VI, Plaintiffs propose Massachusetts, which currently includes 25 cases in the MDL.

**B. Monsanto's Position**

Monsanto respectfully requests that the Court maintain the status quo by having each new wave contain a reasonable and roughly equal number of cases from new states chosen by both Plaintiffs and Monsanto. Continuing that approach "promote[s] the just and efficient conduct" of this MDL. 28 U.S.C. § 1407(a).

In each wave to date, the parties have been required to work up between 22 and 98 cases in a span of three to six months, from several states chosen by Plaintiffs (California, Illinois, and Pennsylvania) and several states chosen by Monsanto (Nebraska, North Carolina, and Texas). In

---

[2] The catch-up order would include the states of California, Nebraska, Illinois, North Carolina, Pennsylvania and Texas.

addition to fact discovery, which includes deposing treating physicians along with the plaintiffs themselves and other relevant fact witnesses, the Court has also required expert discovery. That requirement has imposed significant burdens on the parties—both must identify experts, have those experts issue reports, and then conduct depositions, particularly on the issue of specific causation. Expert discovery has proved very challenging to complete within the time allotted. In fact, this Court has granted multiple extensions to complete the required fact and expert discovery due to the amount of work required in each wave.  Order, Dkt. No. 13355 (July 27, 2021); Order, Dkt. No. 13224 (June 28, 2021); Order, Dkt. No. 13431 (Aug. 5, 2021).  But the process has worked overall. Of the 98 cases in Wave III, all but 13 have resolved or are have been removed from Wave III.  Of those 13, three are already subject to motions for summary judgment and ten are being actively worked up. This suggests that the existing Wave process is advancing the resolution of the MDL.

There is no reason to depart from this approach for Waves IV-VI. As the Court well knows, discovery schedules in national MDLs should be representative of the cases filed throughout the United States and should not be focused disproportionately on a single state or region. Indeed, as one MDL judge has noted, it is "critical" that the selection of Plaintiffs for discovery and trial be "an honest representative sampling of cases." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.,* 3:09-MD-02100-DRH, 2010 WL 4024778, at *1-2 (S.D. Ill. Oct. 13, 2010). Having a sample weighted towards a small subset of cases or a particular circuit subverts that general organizing principle. Moreover, working up cases from different states also enhances judicial economy and efficiency, by avoiding the prospect of working more cases up in jurisdictions with potential trials already awaiting remand.

Accordingly, Monsanto proposes the following states for Waves IV-VI:

    a.   Wave IV: Michigan (36 cases, Monsanto's choice) and Massachusetts (35 cases, Plaintiffs' choice).

    b.   Wave V: Ohio (49 cases, Monsanto's choice) and Florida (57 cases, Plaintiffs' choice).

    c.   Wave VI: Iowa (20 cases, Monsanto's choice) and South Carolina (25 cases, Monsanto's choice), as well as a new state or states of Plaintiffs' choosing with a roughly similar number of cases.

This approach already results in a significant increase in total cases being worked up in Waves IV-VI (~267) compared to Waves I-III (158). Based on past practice, these proposed waves represent the high end of what would allow the parties to continue to make meaningful progress in working up cases without imposing insuperable burdens on either side.[3]

Monsanto notes that it would be possible to prepare more cases for remand, and thus accelerate the overall pace of the MDL, if the Court were to allow expert discovery to occur after remand in Waves IV-VI. Deferring such discovery is a common practice in MDLs. *See, e.g., In re Orthopedic Bone Screw Prod. Liab. Litig.,* No. MDL 1014, 1998 WL 118060, *1, 6 (E.D. Pa. Jan. 12, 1998) (remands after discovery and resolution of "generic" issues); *In re Merida Products Liability Litigation*, 328 F. Supp. 2d 791, 799 (N.D. Ohio 2004), *aff'd sub nom. Meridia Prods. Liab. Litig. v. Abbott Labs.,* 447 F.3d 861 (6th Cir. 2006). It makes particularly good sense here, where, as noted above, expert discovery has been the primary factor leading to delays in completing case workup. Beyond that efficiency, judges on remand can even more quickly address case-specific issues of state law, such as the requirements for failure to warn and design defect claims, and the application of various statutes of limitations. *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997); *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, MDL No. 1945, 2011 WL 1046162, at *7 (S.D.N.Y. Mar. 22, 2011). This common MDL practice would allow for

---

[3] Wave IV has fewer cases than the others, but Monsanto respectfully submits that approach is warranted, both because of the possibility of trials being set in the Wave I-III cases at the same time as Wave IV workup, as well as the fact that a smaller Wave IV will permit the parties to make early progress on Waves V and VI as well.

a larger number of cases to be worked up more quickly and remanded.

The central feature of Plaintiffs' counterproposal is requiring the workup of hundreds of cases from states that have already been the subject of prior waves, including hundreds of cases from California in particular. Specifically, there are 151 active MDL plaintiffs in cases transferred from the State of California, representing over 70% of the 206 plaintiffs in the Ninth Circuit[4].  On top of that, Plaintiffs appear to be proposing adding additional new states of their choosing to the mix.

Monsanto respectfully submits that Plaintiffs' proposal is a nonstarter, both in terms of the extreme burdens it would place on the parties and its deviation from sound MDL practice.  *First*, working up all Ninth Circuit or California cases in just one wave, or implementing a catch-up order, as Plaintiffs' propose, is simply impossible if expert discovery is part of workup. On top of fact discovery, which includes (at minimum) a series of depositions and the production of records, expert discovery would require hundreds of expert reports and depositions per side (though in reality, closer to thousands based on past practice). That is years of work, at least. Both parties have been stretched to complete discovery for 22-98 plaintiffs per wave, and the available evidence suggests that it will be impossible to more than double that workload.  *Second*, having Ninth Circuit or California cases in an upcoming Wave is unfair to Monsanto in that it would involve Plaintiffs dictating all or most of the composition of one of the upcoming Waves.  *Third*, returning to already-visited states would also impede the resolution of this litigation.  The parties simply do not need more data about the jurisdictions that have were part of Waves I-III.  That point is particularly salient as to California in particular, where have been three jury verdicts already, another trial that commenced earlier this month, and multiple other

---

[4] These numbers do not include California plaintiffs in three mass actions for which stipulations and proposed orders regarding remand have been recently filed.

AUGUST 11, 2021 JOINT CASE MANAGEMENT STATEMENT; 16-md-02741-VC

cases where trial preference motions have been granted.[5]

## II.   Update on Compliance with Pretrial Order Number 50

Monsanto filed a motion to dismiss for deficient PFSs for **65 plaintiffs** on August 4, 2021.

Monsanto filed a motion to dismiss for failure to submit any PFS for **31 Plaintiffs** on August 6,

2021. Since this filing, several plaintiffs have notified Monsanto that their case has settled or that

they will be submitting a PFS early this week. These **96** plaintiffs represent the universe of plaintiffs

that have wholly deficient PFSs or have failed to submit a PFS.

Regarding service of PTO 50, the Court's Order states that Monsanto should serve PTO 50 on

plaintiff's counsel when a case is transferred to the MDL. Monsanto would request that service of

PTO 50 on plaintiffs' counsel only be required once Monsanto answers a Complaint as Monsanto is

often not been served with any Complaint at the time a case is transferred to the MDL.

DATED:  August 11, 2021                     Respectfully submitted,

                                            By:  /s/ Aimee Wagstaff
                                            Aimee Wagstaff
                                            Aimee.wagstaff@andruswagstaff.com
                                            ANDRUS WAGSTAFF, P.C.
                                            7171 West Alaska Drive
                                            Lakewood CO 80226
                                            Telephone: (303) 376-6360
                                            Facsimile:  (303) 376-6361

                                            Robin Greenwald
                                            rgreenwald@weitzlux.com
                                            WEITZ & LUXENBERG, P.C.

---

[5] If the Court is inclined to revisit any previous state, Monsanto proposes two alternative options. First, the Court could use Wave VI as a "catch up" wave consisting of 50 California cases selected on a FIFO basis (respecting Plaintiffs' desire for more California case workups) as well as the 43 cases from Nebraska (Monsanto's choice for Wave I). This approach would involve workup of a reasonable number of cases for a single wave while still prioritizing other states in Waves IV and V. Alternatively, the parties could proceed to work up all California cases or previously-selected cases as part of Wave VI, but with this Court presiding only over fact discovery and remanding the respective cases back to their original jurisdictions for dispositive motions and expert workup. As noted above, this approach to workup would comport with established MDL practice.

700 Broadway
New York NY 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461

Michael Miller
mmiller@millerfirmllc.com
THE MILLER FIRM, LLC
108 Railroad Ave
Orange VA 22960
Telephone: (540) 672 4224
Facsimile:  (540) 672-3055

*Attorneys for Plaintiffs*

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (pro hac vice)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:     202-847-4030
Fax:    202-847-4005

/s/ William Hoffman
William Hoffman (pro hac vice)
(william.hoffman@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW,
Washington, DC 20001
Tel: 202-942-6915
Fax: 202-942-5999


Attorneys for Defendant
MONSANTO COMPANY

AUGUST 11, 2021 JOINT CASE MANAGEMENT STATEMENT; 16-md-02741-VC

**CERTIFICATE OF SERVICE**

     I certify that I have served a copy of the foregoing Case Management Statement upon all opposing counsel of record by electronic mail and/or by placing a copy of same in the U.S. Mail, first class, postage prepaid, this 11th day of August 2021.

                          By: /s/ *Brian L. Stekloff*