# Exhibit A

**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: ROUNDUP | § | **MDL NO. 2741** |
| PRODUCTS LIABILITY | § | |
| LITIGATION | § | |

---

### MOTION TO TRANSFER *GILMORE V. MONSANTO* TO MDL 2741 PURSUANT TO 28 USC § 1407

---

Pursuant to 28 U.S.C. § 1407 and Rules 7.1(b)(i) and 6.1 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Movant Brian Webb respectfully moves this Panel for an order transferring *Gilmore v Monsanto Co.* to MDL 2741 and would respectfully show as follows:

1.      *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN is an action currently pending in the United States District Court for the District of Delaware.

2.      Movant filed a Notice of Potential Tag-Along Action in MDL 2741 on July 15, 2021. Dkt. 2381.

3.      The Clerk of the Panel determined *Gilmore* was not appropriate for inclusion in the MDL. Dkt. 2384

4.      Transfer of *Gilmore* action to MDL 2741 is appropriate for the reasons more fully articulated in the attached brief.

WHEREFORE, Movant respectfully requests that this Panel issue an order transferring the *Gilmore* action to the Northern District of California for inclusion in MDL No. 2741 before the Honorable Vince Chhabria.

Dated: July 28, 2021                        Respectfully Submitted,

                                           */s/ N. Majed Nachawati*
                                           N. Majed Nachawati (TX SBN: 24038319)
                                           mn@fnlawfirm.com

1

S. Ann Saucer (LA SBN: 21368; TX: 00797885)
asaucer@fnlawfirm.com
Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Fears Nachawati, PLLC is counsel of record for Movant Brian Webb*

**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: ROUNDUP | § | **MDL NO. 2741** |
| PRODUCTS LIABILITY | § | |
| LITIGATION | § | |

**BRIEF IN SUPPORT OF MOTION TO TRANSFER *GILMORE V. MONSANTO* TO
MDL 2741 PURSUANT TO 28 USC § 1407**

## I.     BACKGROUND

On July 15, 2021, plaintiff Brian Webb filed a notice of potential tag-along action in MDL

2741, *In re Roundup Products Liability Litigation*, notifying the Panel of the potential inclusion

of the putative class action *Gilmore v. Monsanto Co.*, No. 1:20-cv-01085-MN currently pending

in the United States District Court for the District of Delaware (the "Delaware District Court").

Dkt. # 2381, 2381-1.  On July 19, 2021, the Clerk for the Panel notified the parties that *Gilmore*

was not appropriate for inclusion in MDL 2741 pursuant to Judicial Panel on Multidistrict

Litigation ("JPML") Rule of Procedure 7.1(b)(1). Dkt. # 2384.  As a result, in accordance with

JPML Rule 7.1(b)(1), involved party Mr. Webb now brings the present motion to transfer the

*Gilmore* putative class action to MDL 2741 pursuant to Rule 6.1.

## II.     TRANSFER IS APPROPRIATE

Transfer of the *Gilmore* action to MDL 2741 (the "*Roundup* MDL") under section 1407 is

warranted for three separate but interconnected reasons.  First, the proposed class settlement in

*Gilmore* would operate to bind almost all plaintiffs in the MDL, and would release a significant

portion of their claims.  Second, because *Gilmore* and the *Roundup* MDL are premised on the same

common core of operative fact, namely the toxicity of Roundup, its potential to cause non-

Hodgkin's lymphoma in users of the herbicide, and the failure to disclose those facts, transfer is

warranted under the Panel's section 1407 jurisprudence. Finally, because *Gilmore* is not procedurally advanced, transfer would not prejudice any of the parties to that action.

Title 28 U.S.C. § 1407(a) authorizes the Panel to transfer actions for consolidated pretrial proceedings when consolidation will be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." When the Panel considers whether to transfer an action to an MDL, "[t]he critical issue under Section 1407 is whether [the to-be-included action] shares common questions of fact with the actions in the MDL." *In re Aqueous Film-Forming Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083 at *3 (J.P.M.L. Feb. 4, 2021). Because the *Gilmore* action involves the same factual questions as those involved in the *Roundup* MDL, and the proposed class settlement will expressly affect all parties in the *Roundup* MDL, Mr. Webb respectfully requests that the Panel transfer the *Gilmore* action to the MDL.

### A. The Proposed Combined Request for Class Certification and Class Settlement in *Gilmore* Will Directly Impact the Plaintiffs and Claims in the *Roundup* MDL

It is important to note at the outset the impact the *Gilmore* action will have on all cases currently pending in the *Roundup* MDL, and thus why decisions on class certification and preliminary-settlement approval should be made by the MDL judge, rather than the currently assigned district judge who has not had experience with these issues. As more thoroughly discussed below, *Gilmore* is a proposed-class-action consumer-fraud case against Monsanto regarding its deceptive marketing and labeling of Roundup, Ex. 3 at ¶ 6, which are evidentiary facts in all Roundup cases pending in the MDL. The *Gilmore* complaint even specifically references the ongoing *Roundup* MDL as a basis for its claims. *Id*. at ¶ 5 n.1.

Except for those who follow the explicit opt-out procedures, the *Gilmore* settlement proposes to bind "all Persons in the United States who, during the Class Period, purchased [Roundup] Products . . . in the United States other than for resale or distribution." Ex. 4 at

¶ (A)(51).  This would necessarily implicate all plaintiffs in the *Roundup* MDL, provided they meet the state-law timing requirements as defined in Exhibit B to the *Gilmore* proposed settlement agreement.

In addition to binding all purchasers of Roundup in the U.S., the proposed *Gilmore* settlement also operates to release a significant portion of the claims pending within thousands of cases that have already been transferred to the MDL court.  The proposed settlement purports to release all claims against Monsanto for:

> any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate . . . or any scientific claims or debate regarding the same.

*Id*. at ¶ (L)(1)(a).  The proposed settlement also releases all claims for:

> any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

*Id*. ¶ (L)(1)(b).  This release expressly includes claims made within cases long pending before the MDL court. [1]

Finally, the proposed settlement broadly releases "any other alleged economic loss or injury (but not personal injury) allegedly suffered by or inflicted on any Class Member because of

---

[1] The proposed settlement agreement provides that "[t]o the extent that any action or proceeding includes both Personal Injury Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims will not be deemed released, but the other Claims will be released.

Similarly, to the extent that any Class Member asserts a cause of action or other Claim that would otherwise fall within the scope of this release, but asserts the right to recover both damages caused by personal injury and some other type of damages or relief (for example, but not limited to, economic or statutory damages), that cause of action or Claim will survive this release only to the extent of damages caused by personal injury." Ex. 4 ¶ (L)(1).

or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof." *Id.* ¶ (L)(1)(c). Depending on the jurisdiction in which a particular plaintiff's claim arises, this incredibly broad language has the potential to release numerous non-personal-injury claims that are central to the MDL, such as medical costs and other economic losses. Because the proposed *Gilmore* settlement will affect all plaintiffs in the *Roundup* MDL, and operates to release a significant portion of their claims, the Panel should transfer *Gilmore* to the MDL.

In addition to the potential release of claims by almost all MDL plaintiffs, Judge Chhabria, presiding over the MDL, recently denied a broader attempt by Monsanto to certify a class in order to unilaterally resolve all of the present—and future—claims pending against it (which would have subsumed the class claims in *Gilmore*), because the proposed settlement did not adequately address either the litigation risk or future settlement value of the proposed class members. Dkt. # 87 in case 3:19-cv-02224-VC. In fact, although the proposed *Gilmore* class settlement was filed in Delaware District Court just 20 days after MDL Judge Chhabria's denial of a proposed class settlement in the MDL, it tellingly never even mentions the extensive preliminary approval and class certification proceedings in the MDL. *Id.*; Dkt. # 26-1 in case 1:20-CV-01085-MN.

In its review of the proposed class settlement, the MDL Court evaluated many of the same issues raised in the *Gilmore* litigation, including the adequacy of the class notice, adequacy of the relief proposed, and the ascertainability of class members, amongst other certification-related issues. Having already addressed the pitfalls of a potential class-action settlement involving Roundup plaintiffs, the MDL judge, already steeped in discovery, is in a superior position to the Delaware district judge to address the merits of the proposed *Gilmore* settlement and its potential to impact all Roundup plaintiffs, and especially the claims of plaintiffs *already before the MDL*

*judge*.  Accordingly, the Panel should transfer *Gilmore* to the MDL to avoid inconsistent resolution of these crucial global issues.

### B.  *Gilmore* Arises from the Same Factual Issues as the *Roundup* MDL Litigation

The Panel first created the *Roundup* MDL because "[r]egardless of the particular formulation of Roundup at issue (all of which employ glyphosate as the active ingredient), or the nature of plaintiff's exposure to glyphosate, all the actions entail an overarching query—whether glyphosate causes non-Hodgkin's lymphoma in persons exposed to it while using Roundup."  Dkt. # 57 at p. 1-2.  Furthermore, "Plaintiffs also allege that the use of glyphosate in conjunction with other ingredients, in particular the surfactant polyethoxylated tallow amine (POEA), renders Roundup even more toxic than glyphosate on its own."  *Id*. at 2.

The Panel went on to note that centralization was appropriate because "[t]hese actions share common factual questions arising out of allegations that Monsanto's Roundup herbicide, particularly its active ingredient, glyphosate, causes non-Hodgkin's lymphoma."  *Id*.  Finally, the Panel based its decision to consolidate the Roundup cases into an MDL on the determination that "[i]ssues concerning general causation, the background science, and regulatory history will be common to all actions." *Id*.

Because these same factual enquires underpin the *Gilmore* action, transfer is necessary to avoid duplicative pretrial proceedings and to promote judicial efficiency and economy.  According to the very first paragraph of Gilmore's complaint, "[t]his case arises from Monsanto's wrongful conduct in connection with its manufacture, promotion, marketing, advertising, distribution, labeling, and sale of the Lawn and Garden herbicide Roundup®, which contains the active ingredient glyphosate and other chemicals, including the surfactant polyethoxylated tallow amine

("POEA")." Ex. 3 at ¶ 1.  Thus, the central factual issue presented in *Gilmore* is identical to that presented by the *Roundup* MDL.

The *Gilmore* complaint goes on to recite that "[a]t all relevant times, Monsanto was and is aware Roundup® has the potential to cause users to develop cancer. Monsanto is aware glyphosate is a Class 2A herbicide, meaning the World Health Organization's ("WHO") International Agency for Research on Cancer ("IARC") has determined it is probably carcinogenic to humans."  *Id*. at ¶ 2.  Finally, the *Gilmore* complaint notes that "Monsanto is also aware California has classified glyphosate as a chemical known to cause cancer, such as Non-Hodgkin's lymphoma ("NHL")."  *Id*. at ¶ 3.

While the *Gilmore* action is premised upon statutory violations of the Delaware Consumer Fraud Act rather than personal injury, this distinction does not undermine the appropriateness of transfer to the *Roundup* MDL.  Indeed, the settlement put before the Delaware District Court is a national global settlement.  Moreover, as previously stated by the Panel, "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."  *In re Ins. Brokerage Antitrust Litig.*, 360 F.Supp.2d 1371, 1272 (J.P.M.L. 2005).  Nevertheless, because the factual discovery underpinning *Gilmore* and the *Roundup* MDL is the same, transfer is appropriate.  *See In re Aqueous Film-Forming Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083 at *3 ("The critical issue under Section 1407 is whether [the to-be-included action] shares common questions of fact with the actions in the MDL.").

The following allegations are central to Gilmore's consumer fraud action, which are premised on the same factual questions as those presented in the *Roundup* MDL.  "Specifically, Defendant failed to disclose—on the Roundup label, on its webpages, on in-store advertisements, and through other means of disclosure—Roundup's potential to cause cancer including, at the very

least, the existence of an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans." Ex. 3 at ¶ 132.  "Plaintiff did not know exposure to Roundup has the potential to cause cancer at the time he purchased it. Plaintiff would not have purchased Roundup had he known it had the potential to cause cancer, or that there has been an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans."  *Id.* at ¶ 136.

Thus, both *Gilmore* and the *Roundup* MDL turn on the same factual issues of whether Roundup has the potential to cause non-Hodgkin's lymphoma, and whether Monsanto was aware of this fact but nevertheless continued to sell Roundup without an adequate warning.  In order to promote judicial efficiency and avoid duplicative and potentially inconsistent proceedings, the Panel respectfully should transfer *Gilmore* to MDL 2741 for centralized pretrial proceedings.

Finally, the Panel has recently approved the transfer of putative class actions where they share common factual questions with previously consolidated individual proceedings.  *See, e.g.*, Transfer Order at 2, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* MDL No. 2873 (J.P.M.L. June 7, 2021) ECF No. 1020 (denying the plaintiffs' motion to vacate CTO of class-action medical-monitoring claim because it was premised on the same underlying factual questions as the larger Aqueous Film-Forming Foams litigation).  Here, where the putative class action has the potential to affect nearly all cases currently in the *Roundup* MDL for the reasons set forth above, transfer of the *Gilmore* putative class action is especially warranted.

### C.  *Gilmore* is Not Procedurally Advanced

A review of the *Gilmore* docket shows that, except for the currently pending motion for class certification and preliminary settlement approval, nothing significant has occurred in the Delaware District Court.  The Delaware District Court has not ruled on any motion, as both motions to dismiss were mooted by the filing of stipulated amended complaints.  The Delaware

District Court has not entered any discovery orders. Nor has it entered any confidentiality orders or ESI protocols. Accordingly, no formal discovery has taken place. Finally, the Delaware District Court has not entered a single case-management order. Thus, despite the filing of the class certification and preliminary settlement approval motion, nothing has actually happened in the Delaware District Court to advance the *Gilmore* litigation.

Further, unlike MDL Judge Chhabria, who has spent years overseeing the *Roundup* MDL litigation, and has even presided over a bellwether trial, the Delaware District Court has no familiarity with the *Roundup* litigation at all. This lack of intimate experience with the nuances of the underlying MDL cases is crucial, because if *Gilmore* is not transferred, the Delaware District Court will have to make numerous decisions related to class certification and settlement approval. These would include the adequacy of the notice, the fairness of the settlement, the nuances of the release language and its impact on thousands of cases that have been part of the MDL, and other issues, despite the Delaware District Court lacking any underlying familiarity with the complex procedural, scientific, and liability issues which Judge Chhabria has spent years immersed in. Therefore, transfer of *Gilmore* to the MDL will result in a global approach to these interconnected issues not possible in the Delaware District Court.

## III.    CONCLUSION

Both the *Gilmore* action and the *Roundup* MDL are premised on the same factual enquiry: whether Roundup has the potential to cause NHL. The *Gilmore* action proposes to bind all purchasers of Roundup in the U.S. now and in the future,[2] and, if the settlement were approved, would release all claims sounding in fraud, breach of contract, or otherwise related to non-personal

---

[2] As stated in the proposed settlement agreement: "For further avoidance of doubt, this release shall apply to Claims arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future." Ex. 4 ¶ (L)(1).

injuries stemming from Roundup's toxicity, which would necessarily impact the claims of individual plaintiffs already long pending before Judge Chhabria.   It would do this despite the fact that the certification and preliminary approval motion is the first substantive motion placed before the Delaware District Court, where the case is in its infancy.   Transfer is therefore necessary to promote judicial efficiency and to avoid the inconsistent results that would ensue if a Delaware district judge were to decide matters affecting all plaintiffs in the MDL.   Accordingly, the Panel respectfully should transfer the *Gilmore* action to MDL 2741.

Dated: July 28, 2021                             Respectfully Submitted,

                                                 */s/ N. Majed Nachawati*
                                                 N. Majed Nachawati (TX SBN: 24038319)
                                                 mn@fnlawfirm.com
                                                 S. Ann Saucer (LA SBN: 21368; TX: 00797885)
                                                 asaucer@fnlawfirm.com
                                                 Michael Gorwitz (MN SBN: 0400362)
                                                 mgorwitz@fnlawfirm.com
                                                 **FEARS NACHAWATI, PLLC**
                                                 5473 Blair Road
                                                 Dallas, Texas 75231
                                                 Telephone: (214) 890-0711
                                                 Facsimile: (214) 890-0712

                                                 *Fears Nachawati, PLLC is counsel of record for Movant Brian Webb*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION**

**IN RE: Roundup Products Liability
Litigation**

**MDL No. 2741**

<u>**MOTION TO TRANSFER**</u>
<u>**SCHEDULE OF ACTIONS**</u>

| | **Plaintiff** | **Defendant** | **District** | **Civil Action No.** | **Judge** |
|---|---|---|---|---|---|
| 1. | Scott Gilmore, Julio Ezcurra, Sherry Hanna, Kristy Williams, Amanda Boyette, James Weeks, Anthony Jewell, and Paul Taylor | Monsanto Company | D. Delaware | 1:20-cv-01085-MN | Judge Maryellen Noreika |

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTI-DISTRICT LITIGATION

IN RE: Roundup Products Liability
Litigation

MDL No. 2741

### PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing Motion to Transfer,

Schedule of Actions, attachments, and this Proof of Service were served by Email or First Class

Mail on July 28, 2021 to the following:

***Gilmore v. Monsanto Company,*** **D. Delaware, Case No. 1:20-cv-01085-MN**

VIA FIRST CLASS MAIL

Court of Clerk
United States District Court
844 North King St Unit 18
Wilmington, DE 19801-3570

VIA EMAIL

William J. Rhodunda, Jr.
Chandra Joan Williams
Rhodunda Williams & Kondraschow
1521 Concord Pike, Suite 205
Wilmington, DE 19803
Tel.: (302) 576-2000
Fax: (302) 576-2004
bill@rawlaw.com
chandra@rawlaw.com

Gillian L. Wade
Marc A. Castaneda
Sara D. Avila
Milstein Jackson Fairchild & Wade, LLP
10250 Constellation Boulevard
14th Floor
Los Angeles, California 90067
Tel.: (310) 396-9600
Fax: (310) 396-9635
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
savila@mjfwlaw.com

*Counsel for Plaintiffs Scott Gilmore, Julio Ezcurra, Sherry Hanna, Kristy Williams,
Amanda Boyette, James Weeks, Anthony Jewell, and Paul Taylor*

Kelly E. Farnan
Richards, Layton & Finger, PA
One Rodney Square
Suite 600
920 N. King Street
Wilmington, DE 19801
Tel. (302) 651-7705
farnan@rlf.com

John J. Rosenthal
Winston & Strawn LLP
1901 L. Street NW
Washington, D.C. 20036
jrosenthal@winston.com

Jeff Wilkerson
Winston & Strawn LLP
300 South Tyron Street, 16th Floor
Charlotte, NC 28202
jwilkerson@winston.com

*Counsel for Monsanto Company*

Cortlan S. Hitch
Morris James LLP
500 Delaware Ave
Ste 1500
Wilmington, DE 19801
Tel.: (302) 888-6988
Fax: (302) 571-1750
chitch@morrisjames.com

Patrick J. Stueve, Esq.
Todd E. Hilton, Esq.
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel. (816) 714-7110
stueve@stuevesiegel.com
hilton@stuevesiegel.com

Don M. Downing, Esq.
Gretchen A. Garrison, Esq.
Gray, Ritter & Graham, P.C.
701 Market St., Ste. 800
St. Louis, Mo 63101
Tel. (314) 345-2006
ddowning@grgpc.com
ggarrison@grgpc.com

*Counsel for Intervenors Ryan Tomlinson and Carol Richardson*

Dated: July 28, 2021

Respectfully Submitted,

*/s/ N. Majed Nachawati*
N. Majed Nachawati (TX SBN: 24038319)
mn@fnlawfirm.com
S. Ann Saucer (LA SBN: 21368; TX: 00797885)
asaucer@fnlawfirm.com
Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Fears Nachawati, PLLC is counsel of record for Movant Brian Webb*

**U.S. District Court**
**District of Delaware (Wilmington)**
**CIVIL DOCKET FOR CASE #: 1:20-cv-01085-MN**

Gilmore v. Monsanto Company                         Date Filed: 08/19/2020
Assigned to: Judge Maryellen Noreika                Jury Demand: Plaintiff
Demand: $5,000,000                                  Nature of Suit: 370 Other Fraud
Cause: 28:1332 Diversity-Fraud                      Jurisdiction: Diversity

<u>Plaintiff</u>

**Scott Gilmore**                    represented by    **William J. Rhodunda , Jr.**
                                                      Rhodunda Williams & Kondraschow
                                                      1521 Concord Pike, Suite 205
                                                      Wilmington, DE 19803
                                                      (302) 576-2000
                                                      Email: bill@rawlaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Chandra Joan Williams**
                                                      Rhodunda Williams & Kondraschow
                                                      1521 Concord Pike, Suite 205
                                                      Wilmington, DE 19803
                                                      302-576-2000
                                                      Fax: 302-576-2004
                                                      Email: Chandra@rawlaw.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Gillian L. Wade**
                                                      Email: gwade@mjfwlaw.com
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Marc A. Castaneda**
                                                      Email: mcastaneda@mjfwlaw.com
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Sara D. Avila**
                                                      Email: savila@mjfwlaw.com
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Julio Ezcurra**                    represented by    **William J. Rhodunda , Jr.**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Chandra Joan Williams**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**EXHIBIT**
**3**

**Sherry Hanna**                                represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Kristy Williams**                             represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Amanda Boyette**                              represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**James Weeks**                                 represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Anthony Jewell**                              represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Paul Taylor**                                 represented by **William J. Rhodunda , Jr.**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Chandra Joan Williams**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Monsanto Company** | represented by | **Jeff Wilkerson**<br>Email: jwilkerson@winston.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **John J. Rosenthal**<br>Email: jrosenthal@winston.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Kelly E. Farnan**<br>Richards, Layton & Finger, PA<br>One Rodney Square<br>Suite 600<br>920 N. King Street<br>Wilmington, DE 19801<br>(302) 651-7705<br>Email: farnan@rlf.com<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

| | | |
|---|---|---|
| **Ryan Tomlinson** | represented by | **Cortlan S. Hitch**<br>Morris James LLP<br>500 Delaware Ave<br>Ste 1500<br>Wilmington, DE 19801<br>302-888-6988<br>Fax: 302-571-1750<br>Email: chitch@morrisjames.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Don M. Downing**<br>Email: ddowning@grgpc.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Gretchen A. Garrison**<br>Email: ggarrison@grgpc.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Patrick J. Stueve**<br>Email: stueve@stuevesiegel.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Todd E. Hilton**<br>Email: hilton@stuevesiegel.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

| | | |
|---|---|---|
| **Carol Richardson** | represented by | **Cortlan S. Hitch**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Don M. Downing**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen A. Garrison**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick J. Stueve**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd E. Hilton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2020 | 1 | COMPLAINT filed with Jury Demand against Monsanto Company - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number ADEDC-3140065.) - filed by Scott Gilmore. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(myr) (Entered: 08/19/2020) |
| 08/19/2020 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (myr) (Entered: 08/19/2020) |
| 08/19/2020 | | No Summons Issued. (myr) (Entered: 08/19/2020) |
| 08/19/2020 | 4 | MOTION for Pro Hac Vice Appearance of Attorney Gillian L. Wade, Esq.; Sara D. Avila, Esq. and Marc A. Castaneda, Esq. - filed by Scott Gilmore. (Attachments: # 1 Affidavit Certificates of Gillian L. Wade, Esq; Sara D. Avila, Esq and Marc A. Castaneda, Esq. to be Admitted Pro Hac Vice)(Williams, Chandra) (Entered: 08/19/2020) |
| 08/19/2020 | | CORRECTING ENTRY: Counsel improperly filed summons to be issued at D.I. 3. This docket entry has since been deleted. (kmd) (Entered: 08/19/2020) |
| 08/20/2020 | 5 | Return of Service Executed by Scott Gilmore. Monsanto Company served on 8/20/2020, answer due 9/10/2020. (Williams, Chandra) (Entered: 08/20/2020) |
| 08/26/2020 | | Case Assigned to Judge Maryellen Noreika. Please include the initials of the Judge (MN) after the case number on all documents filed. (rjb) (Entered: 08/26/2020) |
| 08/27/2020 | | SO ORDERED re 4 MOTION for Pro Hac Vice Appearance of Attorney Gillian L. Wade, Esq.; Sara D. Avila, Esq. and Marc A. Castaneda, Esq. filed by Scott Gilmore. ORDERED by Judge Maryellen Noreika on 8/27/2020. (dlw) (Entered: 08/27/2020) |
| 09/04/2020 | 6 | STIPULATION TO EXTEND TIME to move, answer or otherwise respond to the Complaint to October 19, 2020 - filed by Monsanto Company. (Farnan, Kelly) (Entered: 09/04/2020) |
| 09/04/2020 | 7 | MOTION for Pro Hac Vice Appearance of Attorney John J. Rosenthal and Jeff Wilkerson - filed by Monsanto Company. (Farnan, Kelly) (Entered: 09/04/2020) |
| 09/08/2020 | | SO ORDERED re 6 STIPULATION TO EXTEND TIME to move, answer or otherwise respond to the Complaint to October 19, 2020 (Set/Reset Answer Deadlines: Monsanto Company answer due 10/19/2020). ORDERED by Judge Maryellen Noreika on 9/8/2020. (dlw) (Entered: 09/08/2020) |
| 09/08/2020 | | SO ORDERED re 7 MOTION for Pro Hac Vice Appearance of Attorney John J. Rosenthal and Jeff Wilkerson filed by Monsanto Company. ORDERED by Judge Maryellen Noreika on 9/8/2020. (dlw) (Entered: 09/08/2020) |
| 09/14/2020 | | Pro Hac Vice Attorney Jeff Wilkerson for Monsanto Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be |

| | | required to file all papers. (kmd) (Entered: 09/14/2020) |
|---|---|---|
| 09/14/2020 | | Pro Hac Vice Attorney John J. Rosenthal for Monsanto Company added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 09/14/2020) |
| 10/02/2020 | 8 | MOTION for Pro Hac Vice Appearance of Attorney Joel Oster - filed by Scott Gilmore. (Williams, Chandra) (Entered: 10/02/2020) |
| 10/05/2020 | | SO ORDERED re 8 MOTION for Pro Hac Vice Appearance of Attorney Joel Oster filed by Scott Gilmore. ORDERED by Judge Maryellen Noreika on 10/5/2020. (dlw) (Entered: 10/05/2020) |
| 10/19/2020 | 9 | STIPULATION TO EXTEND TIME re: Answer to Complaint to December 3, 2020 - filed by Monsanto Company. (Farnan, Kelly) (Entered: 10/19/2020) |
| 10/19/2020 | | SO ORDERED re 9 STIPULATION TO EXTEND TIME to answer, move, or otherwise respond to the Complaint to December 3, 2020 (Set/Reset Answer Deadlines: Monsanto Company answer due 12/3/2020). ORDERED by Judge Maryellen Noreika on 10/19/2020. (dlw) (Entered: 10/19/2020) |
| 12/03/2020 | 10 | MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim - filed by Monsanto Company. (Attachments: # 1 Text of Proposed Order Proposed Order)(Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/03/2020 | 11 | OPENING BRIEF in Support re 10 MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim filed by Monsanto Company. Answering Brief/Response due date per Local Rules is 12/17/2020. (Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/03/2020 | 12 | DECLARATION of Kelly E. Farnan re 10 MOTION to Dismiss for Lack of Jurisdiction Over the Subject Matter and Failure to State a Claim by Monsanto Company. (Attachments: # 1 Exhibit A-G) (Farnan, Kelly) Modified on 12/4/2020 (dlw). (Entered: 12/03/2020) |
| 12/14/2020 | 13 | STIPULATION TO EXTEND TIME Plaintiff's deadline to file First Amended Complaint to January 12, 2021 - filed by Scott Gilmore. (Williams, Chandra) (Entered: 12/14/2020) |
| 12/14/2020 | | SO ORDERED re 13 STIPULATION TO EXTEND TIME for Plaintiff to file First Amended Complaint to January 12, 2021. ORDERED by Judge Maryellen Noreika on 12/14/2020. (dlw) (Entered: 12/14/2020) |
| 01/12/2021 | 14 | First AMENDED COMPLAINT against All Defendants - filed by Scott Gilmore.(Williams, Chandra) Modified on 1/13/2021 (dlw). (Additional attachment(s) added on 1/13/2021: # 1 Redline Comparison) (dlw). (Entered: 01/12/2021) |
| 01/26/2021 | 15 | MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter - filed by Monsanto Company. (Attachments: # 1 Text of Proposed Order Proposed Order)(Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 01/26/2021 | 16 | OPENING BRIEF in Support re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Monsanto Company. Answering Brief/Response due date per Local Rules is 2/9/2021. (Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 01/26/2021 | 17 | DECLARATION of Kelly E. Farnan re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter by Monsanto Company. (Attachments: # 1 Exhibit A-G)(Farnan, Kelly) Modified on 1/27/2021 (dlw). (Entered: 01/26/2021) |
| 02/09/2021 | 18 | ANSWERING BRIEF in Opposition re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Scott Gilmore.Reply Brief due date per Local Rules is 2/16/2021. (Williams, Chandra) (Entered: 02/09/2021) |
| 02/16/2021 | 19 | REPLY BRIEF re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter filed by Monsanto Company. (Farnan, Kelly) (Entered: 02/16/2021) |
| 03/31/2021 | 20 | NOTICE of Change of Address by Chandra Joan Williams (Williams, Chandra) (Entered: 03/31/2021) |
| 06/10/2021 | 21 | STIPULATION for Leave to File Second Amended Complaint re 14 Amended Complaint, 1 Complaint by Scott Gilmore. (Attachments: # 1 Exhibit A to Stipulation (Second Amended Complaint), # 2 Exhibit B to Stipulation (blackline))(Williams, Chandra) (Entered: 06/10/2021) |

| 06/11/2021 | | SO ORDERED re 21 Stipulation for Leave to File Second Amended Complaint. ORDERED by Judge Maryellen Noreika on 6/11/2021. (dlw) (Entered: 06/11/2021) |
|---|---|---|
| 06/11/2021 | 22 | SECOND AMENDED COMPLAINT against Monsanto Company- filed by Scott Gilmore, Julio Ezcurra, Sherry Hanna, Kristy Williams, Amanda Boyette, James Weeks, Anthony Jewell, Paul Taylor. (Attachments: # 1 Exhibit A)(dlw) (Entered: 06/11/2021) |
| 06/11/2021 | 23 | ORAL ORDER re 15 MOTION to Dismiss First Amended Complaint for Lack of Jurisdiction Over the Subject Matter - In light of 22 Plaintiffs' Second Amended Complaint, the Court DENIES as MOOT 15 Defendant's Motion to Dismiss as it relates to 14 the First Amended Complaint. ORDERED by Judge Maryellen Noreika on 6/11/2021. (dlw) (Entered: 06/11/2021) |
| 06/14/2021 | | CORRECTING ENTRY: D.I. 24, 25, & 26 have been deleted from the docket. Counsel shall adjust the footnote font size to 12-point and shall re-file the documents in the proper way (motion, brief, declarations all as separate filings. (dlw) (Entered: 06/14/2021) |
| 06/14/2021 | 24 | MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Text of Proposed Order)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 25 | MEMORANDUM in Support re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. Answering Brief/Response due date per Local Rules is 6/28/2021. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 26 | DECLARATION of Gillian L. Wade re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Exhibit 1)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 27 | DECLARATION of United States Magistrate Judge Diane Welsh (Ret.) re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 28 | DECLARATION of Brandon Schwartz Regarding Proposed Notice Plan re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Additional attachment(s) added on 6/15/2021: # 1 Exhibit A - E) (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 29 | DECLARATION of D.C. Sharp, PhD re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 30 | DECLARATION of Kristina Shampanier re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Attachments: # 1 Exhibit A)(Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 31 | UNOPPOSED MOTION for Leave to File Excess Pages regarding Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for Purposes of Settlement [DI 24] - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 32 | Joint MOTION to Stay all Related Proceedings re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support |

| | | |
|---|---|---|
| | | - filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/14/2021 | 33 | MEMORANDUM in Support re 32 Joint MOTION to Stay All Related Proceedings re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 25 MEMORANDUM in Support filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. Answering Brief/Response due date per Local Rules is 6/28/2021. (Williams, Chandra) Modified on 6/15/2021 (dlw). (Entered: 06/14/2021) |
| 06/15/2021 | | SO ORDERED re 31 UNOPPOSED MOTION for Leave to File Excess Pages regarding Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for Purposes of Settlement. ORDERED by Judge Maryellen Noreika on 6/15/2021. (dlw) (Entered: 06/15/2021) |
| 06/15/2021 | | CORRECTING ENTRY: Exhibit A - E have been added to D.I. 28 - Schwartz Declaration. (dlw) (Entered: 06/15/2021) |
| 06/21/2021 | 34 | Letter to Honorable Maryellen Noreika from Kenneth L. Dorsney regarding Intention to Intervene. (Attachments: # 1 Exhibit Exhibit 1)(Dorsney, Kenneth) (Entered: 06/21/2021) |
| 06/24/2021 | 35 | Supplemental DECLARATION of D.C. Sharp, PhD. re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement, 29 Declaration by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams. (Williams, Chandra) Modified on 6/25/2021 (dlw). (Entered: 06/24/2021) |
| 06/24/2021 | 36 | Letter to The Honorable Maryellen Noreika from Kelly E. Farnan regarding response to Mr. Dorsney's June 21, 2021 letter regarding motion to intervene - re 34 Letter. (Farnan, Kelly) (Entered: 06/24/2021) |
| 06/28/2021 | 37 | ANSWERING BRIEF in Opposition re 24 MOTION to Certify Class for the Purpose of Settlement and for Preliminary Approval of Class Action Settlement filed by Jason Rinehart.Reply Brief due date per Local Rules is 7/6/2021. (Ennis, Sarah) (Entered: 06/28/2021) |
| 06/28/2021 | 38 | DECLARATION of Jason Rinehart re 37 Answering Brief in Opposition by Jason Rinehart. (Ennis, Sarah) Modified on 6/29/2021 (dlw). (Entered: 06/28/2021) |
| 06/28/2021 | 39 | MOTION to Intervene - filed by Ryan Tomlinson, Carol Richardson. (Attachments: # 1 Text of Proposed Order)(Hitch, Cortlan) (Entered: 06/28/2021) |
| 06/28/2021 | 40 | MOTION for Leave to File Excess Pages - filed by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) (Entered: 06/28/2021) |
| 06/28/2021 | 41 | OPENING BRIEF in Support re 39 MOTION to Intervene filed by Carol Richardson, Ryan Tomlinson.Answering Brief/Response due date per Local Rules is 7/12/2021. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hitch, Cortlan) Modified on 6/29/2021 (dlw). (Attachment 1 replaced on 6/29/2021) (dlw). (Entered: 06/28/2021) |
| 06/29/2021 | 42 | MOTION for Pro Hac Vice Appearance of Attorney Elizabeth Fegan, of Fegan Scott LLC - filed by Jason Rinehart. (Ennis, Sarah) (Entered: 06/29/2021) |
| 06/29/2021 | | CORRECTING ENTRY: Attachment #1 to D.I. 41 has been replaced on the docket to add slip sheets to the exhibits to Exhibit A. (dlw) (Entered: 06/29/2021) |
| 06/29/2021 | 43 | MOTION for Pro Hac Vice Appearance of Attorney Don M. Downing, Attorney Gretchen A. Garrison, Attorney Todd E. Hilton, and Attorney Patrick J. Stueve - filed by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) (Entered: 06/29/2021) |
| 06/29/2021 | | SO ORDERED re 42 MOTION for Pro Hac Vice Appearance of Attorney Elizabeth Fegan, of Fegan Scott LLC filed by Jason Rinehart. ORDERED by Judge Maryellen Noreika on 6/29/2021. (dlw) (Entered: 06/29/2021) |
| 06/29/2021 | | SO ORDERED re 43 MOTION for Pro Hac Vice Appearance of Attorney Don M. Downing, Attorney Gretchen A. Garrison, Attorney Todd E. Hilton, and Attorney Patrick J. Stueve filed by Ryan Tomlinson, Carol Richardson. ORDERED by Judge Maryellen Noreika on 6/29/2021. (dlw) (Entered: 06/29/2021) |

| 06/30/2021 | | Pro Hac Vice Attorney Gretchen A. Garrison, Don M. Downing, Patrick J. Stueve, Todd E. Hilton for Carol Richardson; Pro Hac Vice Attorney Gretchen A. Garrison, Don M. Downing, Patrick J. Stueve, Todd E. Hilton for Ryan Tomlinson added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (twk) (Entered: 06/30/2021) |
| --- | --- | --- |
| 06/30/2021 | [44](#) | DECLARATION of Gretchen Garrison re [41](#) Opening Brief in Support, [39](#) MOTION to Intervene by Carol Richardson, Ryan Tomlinson. (Hitch, Cortlan) Modified on 6/30/2021 (dlw). (Entered: 06/30/2021) |
| 07/01/2021 | [45](#) | NOTICE of Supplemental Authority by Carol Richardson, Ryan Tomlinson (Dorsney, Kenneth) (Entered: 07/01/2021) |
| 07/12/2021 | [46](#) | ANSWERING BRIEF in Opposition re [39](#) MOTION to Intervene filed by Amanda Boyette, Julio Ezcurra, Scott Gilmore, Sherry Hanna, Anthony Jewell, Paul Taylor, James Weeks, Kristy Williams.Reply Brief due date per Local Rules is 7/19/2021. (Kondraschow, Nicholas) (Entered: 07/12/2021) |
| 07/12/2021 | [47](#) | ANSWERING BRIEF in Opposition re [39](#) MOTION to Intervene filed by Monsanto Company.Reply Brief due date per Local Rules is 7/19/2021. (Farnan, Kelly) (Entered: 07/12/2021) |
| 07/12/2021 | [48](#) | DECLARATION re [47](#) Answering Brief in Opposition *John J. Rosenthal* by Monsanto Company. (Attachments: # [1](#) Exhibit A-F)(Farnan, Kelly) (Entered: 07/12/2021) |
| 07/14/2021 | [49](#) | Letter to The Honorable Maryellen Noreika from Kelly E. Farnan regarding Rinehart Opposition - re [37](#) Answering Brief in Opposition,. (Farnan, Kelly) (Entered: 07/14/2021) |
| 07/14/2021 | | Pro Hac Vice Attorneys Marc A. Castaneda, Gillian L. Wade, Sara D. Avila for Scott Gilmore added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (twk) (Entered: 07/14/2021) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/15/2021 10:33:02 | | |
| **PACER Login:** | sasaucer5662 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01085-MN Start date: 1/1/1972 End date: 7/15/2021 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SCOTT GILMORE,

     Plaintiff,

vs.

MONSANTO COMPANY,

     Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, SCOTT GILMORE ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through the undersigned counsel, hereby brings this Class Action Complaint against Defendant, MONSANTO COMPANY ("Defendant" or "Monsanto") and alleges as follows:

## INTRODUCTION

1.    This case arises from Monsanto's wrongful conduct in connection with its manufacture, promotion, marketing, advertising, distribution, labeling, and sale of the Lawn and Garden herbicide Roundup®, which contains the active ingredient glyphosate and other chemicals, including the surfactant polyethoxylated tallow amine ("POEA").

2.    At all relevant times, Monsanto was and is aware Roundup® has the potential to cause users to develop cancer. Monsanto is aware glyphosate is a Class 2A herbicide, meaning the World Health Organization's ("WHO") International Agency for Research on Cancer ("IARC") has determined it is probably carcinogenic to humans.

3.    Monsanto is also aware California has classified glyphosate as a chemical known to cause cancer, such as Non-Hodgkin's lymphoma ("NHL").

4.    Monsanto has also known Roundup® and other glyphosate-based herbicides have been banned by many countries, regions, and municipalities throughout the United States and the world because it is dangerous to human health.

5.    Monsanto is the defendant in tens of thousands personal injury cases brought by individuals who allege exposure to Roundup® caused their cancer.[1] Three juries found Roundup® likely caused some of those plaintiffs to develop NHL, and awarded nearly $100 million in compensatory damages and over $2 billion in punitive damages collectively.[2]

6.    Despite Monsanto's knowledge of Roundup®'s potential carcinogenicity, Monsanto has failed to convey this information to consumers in its promotion, marketing, advertising, distribution, labeling, and sale of Roundup®.

7.    Although the Environmental Protection Agency ("EPA") under the current administration has stated glyphosate is not likely to be carcinogenic to humans, Defendant, at the very least, should inform consumers there has been an ongoing scientific dispute over its potential carcinogenicity.

8.    Monsanto's concealment, suppression, or omission of material facts (*i.e.* the possibility that exposure to Roundup may cause cancer and the ongoing scientific debate about same), with intent that others rely upon such concealment, suppression or omission in connection

---

[1] Most of these cases were consolidated in a multi-district litigation ("MDL") before Judge Vince Chhabria in the Northern District of California and have recently settled for a total of approximately $10 billion.

[2] As discussed herein, these awards were later reduced by the trial court. One verdict was recently upheld, and the other two are presently on appeal.

with its promotion, marketing, advertising, distribution, labeling, and sale of Roundup®, constitutes a violation of Delaware's Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2513.

9.     Defendant's violation of the DCFA has caused Plaintiff and members of the Class to suffer an ascertainable loss.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Defendant is either incorporated and/or has its principal place of business outside the state in which Plaintiff and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendant because Defendant is a citizen of Delaware and transacts business in the state. Defendant knows that its Roundup products are and were sold throughout Delaware, and caused Roundup to be sold across the United States, including Delaware. In addition, Defendant maintains sufficient contacts with the Delaware such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant is a resident of this judicial district and the material omissions giving rise to Plaintiff's claim arose, in part, in Delaware.

## PARTIES

13.     Plaintiff SCOTT GILMORE is an individual who resides in the State of Washington. Plaintiff seeks injunctive relief and damages on behalf of himself and the Class.

14.     Defendant MONSANTO is a Delaware corporation, Delaware Department of State File No. 3174788, with a registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, and a principal place of business in St. Louis, Missouri. Defendant is engaged in the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Roundup® products at issue in this case.

15.     Defendant is a subsidiary of nonparty Bayer AG, a German corporation ("Bayer"). Bayer acquired Monsanto in June 2018 and the merger agreement is governed by Delaware law.

16.     The terms "Roundup" and the "Product" refer to all Lawn and Garden formulations of the Roundup® products containing glyphosate sold in the United States, including but not limited to Roundup Ready-To-Use Killer III, Roundup Ready-To-Use Killer III with Sure Shot Wand, Roundup Ready-To-Use Weed & Grass Killer III with Comfort Wand, Roundup Ready-to-Use Weed & Grass Killer III with Pump 'N Go 2 Sprayer, Roundup Precision Gel Weed & Grass Killer, Roundup Ready-To-Use Max Control 365 with Comfort Wand, Roundup Concentrate MAX Control 365, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Comfort Wand, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Pump 'N Go 2 Sprayer, Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed Preventer II with Trigger Sprayer, Roundup Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer, Roundup Ready-To-Use Poison Ivy Plus Tough Brush Killer with Trigger Sprayer, Roundup Ready-To-Use Poison

Ivy Plus Tough Brush Killer with Comfort Wand, Roundup Concentrate Poison Ivy Plus Tough Brush Killer, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass Killer Super Concentrate, or any other formulation thereof containing the active ingredient glyphosate.

17.    Defendant has an agreement with its distributor of Roundup, nonparty The Scotts Company, LLC ("Scotts"). Under that agreement, Scotts is responsible for in-store merchandising, store set-up, and other services related to the in-store promotion of Roundup, in a manner consistent with Defendant's Annual Business Plan. The distribution agreement is governed by Delaware law.

18.    Defendant has made and continues to make representations regarding Roundup's potential health risks through various means of disclosure—for example, representations on its website, in-store advertising, its labeling of Roundup, and through its distribution relationship with Scotts. These means of disclosure originate, in part, in the State of Delaware.

19.    During all relevant times, Defendant transacted and conducted business throughout the United States and is responsible for the representations it makes, with respect to Roundup's potential health risks, throughout the country.

20.    Defendant does business in Delaware by consistently selecting its law and forums with respect to Roundup.

## **FACTUAL ALLEGATIONS**

**A.**    **Monsanto's Manufacturing, Promotion, Marketing, Advertising, Distribution, Labeling, and Sale of Roundup.**

21.     Monsanto was the first company to recognize potential in the chemical glyphosate, a nonselective herbicide that inhibits plant growth through interference with the production of essential aromatic amino acids.

22.     Monsanto discovered glyphosate to be an herbicide in 1970 and brought it into the market as Roundup in 1974.

23.     All of the Roundup products at issue in this case contain the active ingredient glyphosate, and other components, such as the surfactant POEA,[3] which helps glyphosate penetrate plant cells.

24.     Roundup is marketed for home and personal use to kill weeds, including weeds in home lawns and gardens. Roundup is sold at retail locations throughout the United States.

25.     Monsanto has and continues to promote, market, advertise, and label Roundup as a safe general-purpose herbicide for consumer use. Monsanto has admitted in other legal proceedings that Roundup products are valued by consumers because of their efficacy and safety.

26.     Monsanto's promotion, marketing, advertising, and labeling of Roundup leads reasonable consumers into believing Roundup is safe for its intended use.

27.     Monsanto, for example, designs the labeling for Roundup. Exemplar photographs of Roundup's front and back labels for the Roundup Ready-to-Use Weed and Grass Killer III are attached hereto as **"Exhibit A."**

---

[3] Monsanto considers POEA to be inert because it does not directly kill plants, it merely enhances glyphosate's ability to do so.

28.     Roundup's labeling provides certain warnings, such as, "Keep Out of Reach of Children" and "Caution." But the only hazard identified is that it may cause "moderate eye irritation." *See id*.

29.     Roundup's warning gives the false impression eye irritation is the only risk posed by Roundup, when in fact, Roundup has the potential to cause cancer, as discussed more fully herein.

**B.     The IARC Classification of Glyphosate.**

30.     The IARC is an intergovernmental cancer agency within the WHO which, in 2015, was tasked with conducting and coordinating research into the causes of cancer as it pertained to glyphosate.

31.     In March 2015, an IARC "Working Group" of 17 experts from 11 countries convened to evaluate several insecticides and herbicides, including diazinon, tetrachlorvinphos, malathion, parathion, and glyphosate. The evaluation was based on a cumulative review of all publicly available and pertinent scientific studies. Some of the studies pertained to people exposed to glyphosate through their jobs, such as farmers. Others were experimental studies on cancer and cancer-related effects in experimental systems. The IARC Working Group's full monograph was published on July 29, 2015.

32.     In its monograph, the IARC Working Group classified glyphosate as a <u>Class 2A herbicide</u>, which means it is <u>probably carcinogenic to humans</u>. It concluded NHL was most associated with glyphosate exposure.

33.     The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

34. The IARC's conclusions were consistent with scientific developments that had occurred in prior decades.

## C.    Early Studies and Developments Pertaining to Glyphosate and Roundup's Carcinogenicity and Genotoxicity.

35. As early as the 1980's, Monsanto should have been aware of glyphosate's carcinogenic and genotoxic properties.

36. On March 4, 1985, a group of the EPA's Toxicology Branch published a "consensus review" based on a mouse study conducted by Monsanto in 1983. The review "classified Glyphosate as a Category C oncogen," meaning it is a possible human carcinogen.

37. However in June 1991, EPA published a memorandum entitled, "Second Peer Review of Glyphosate," which changed glyphosate's classification to Group E (evidence of non-carcinogenicity for humans). Two peer review committee members did not concur with the conclusions, and the Memorandum itself "emphasized however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

38. In 1996, the New York Attorney General sued Monsanto for false and misleading advertising by touting its glyphosate-based Roundup products as, e.g.,  "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

39. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed to alter the advertising, removing from advertisements that represent, directly or by implication, that the weed killers were biodegradable

and environmentally friendly. Monsanto also agreed to pay $50,000 toward New York's costs of pursuing the case. At the time, New York was the only state to object to the advertising claims.

40.   In 1997, Chris Clements, *et al.* published a study entitled, "Genotoxicity of Select Herbicides in *Rana catesbeiana* Tadpoles Using the Alkaline Single-Cell Gel DNA Electrophoresis (Comet) Assay." Genotoxicity refers to the property of chemical agents which cause damage to genetic information within a cell causing mutations, which may lead to cancer.  In Clements' publication, tadpoles were exposed to various herbicides, including Roundup, for a 24-hour period. Roundup-treated tadpoles showed "significant DNA damage when compared with unexposed control animals."

41.   In 1999, Lennart Hardell and Mikael Eriksson published a study entitled, "A Case–Control Study of Non-Hodgkin Lymphoma and Exposure to Pesticides," which consisted of a population-based case–control study in northern and middle Sweden encompassing 442 cases and twice as many controls was performed. Exposure data were ascertained by comprehensive questionnaires, and the questionnaires were supplemented by telephone interviews. The results indicated exposure to glyphosate and other herbicides yielded increased risks for NHL.

42.   In 2002, Julie Marc, *et al.* published a study entitled, "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation." The study found Roundup caused delays in the cell cycles of sea urchins. It further noted the deregulations of cell cycle checkpoints are *directly linked* to genomic instability, which can generate diseases and cause cancer. The findings led to the conclusion Roundup "causes changes in cell cycle regulation that may raise questions about the effect of this pesticide on human health."

43.     In 2003, A. J. De Roos, et al. published a study entitled, "Integrative assessment of multiple pesticides as risk factors for non-Hodgkin's lymphoma among men," which "[r]eported use of several individual pesticides was associated with increased NHL incidence, including . . . glyphosate. A subanalysis of these 'potentially carcinogenic' pesticides suggested a positive trend of risk with exposure to increasing numbers."

44.     In 2004, Julie Marc, *et al.* published a study entitled, "Glyphosate-based pesticides affect cell cycle regulation." In that study, which tested Roundup 3plus on sea urchin eggs, determined "glyphosate-based pesticides are clearly of human health concern by inhalation in the vicinity of spraying," given the "molecular link between glyphosate and cell cycle dysregulation." It observed, "roundup may be related to increased frequency of non-Hodgkin's lymphoma among farmers," citing the study by A. J. De Roos., *et al.*

45.     In 2005, Francisco Peixo published a study entitled, "Comparative effects of the Roundup and glyphosate on mitochondrial oxidative phosphorylation," which suggested the harmful effects of Roundup could be the result of Roundup's specific combination of chemicals, and the interaction of glyphosate and the surfactant POEA.

46.     In 2008, Mikael Eriksson, *et al.* published a study entitled, "Pesticide exposure as risk factor for NHL including histopathological subgroup analysis," based on a case-control study of exposure to various pesticides as a risk factor for NHL. Eriksson's study strengthened previous associations between glyphosate and NHL.

47.     In 2009, Nora Benachour and Gilles-Eric Seralini published a study entitled, "Glyphosate formulations induce apoptosis and necrosis in human umbilical, embryonic, and placental cells," which examined the effects of four different Roundup formulations on human

umbilical, embryonic, and placental cells—at dilution levels far below agricultural recommendations. The study found the formations caused cell death in a few hours in a cumulative manner, caused DNA damage, and found that the formulations inhibit cell respiration. In addition, it was shown the mixture of the components used as Roundup adjuvants, particularly POEA *amplified the action of the glyphosate*. The Roundup adjuvants actually changed human cell permeability and increased the toxicity of glyphosate alone.

48.    This study suggests Roundup poses even greater risks than glyphosate alone, as a result of Roundup's specific combination of chemicals, and the interaction of glyphosate and POEA.

**D.    Glyphosate-Based Herbicides, Including Roundup, are Banned Throughout the World.**

49.    Following the IARC's report on glyphosate, several countries have issued outright bans or restrictions on glyphosate herbicides, including Roundup.

50.    In May 2015, the Netherlands banned all non-commercial use of glyphosate. *See* https://www.collective-evolution.com/2015/05/30/why-the-netherlands-just-banned-monsantos-glyphosate-based-herbicides/.

51.    In 2016, Italy adopted a law prohibiting the use of glyphosate in areas frequented by the public or by "vulnerable groups" including children and the elderly and in the pre-harvest phase in agriculture. *See* https://www.soilassociation.org/news/2016/august/italy-bans-toxic-glyphosate/.

52.    In June 2017, the Flemish government approved a ban on glyphosate for individual-use. *See*  https://www.brusselstimes.com/all-news/belgium-all-news/43150/flemish-government-approves-ban-on-glyphosate-for-individuals/.

53.    In September 2018, the agriculture ministry of the Czech Republic stated the country would ban the blanket use of glyphosate as a weedkiller and as a drying agent. *See* https://phys.org/news/2018-09-czech-republic-restrict-glyphosate-weedkiller.html. The ban came into effect on January 1, 2019. *See* http://www.arc2020.eu/czech-out-this-roundabout-way-to-not-ban-roundup/.

54.    In October 2018, the Indian state of Punjab banned the sale of glyphosate. *See* https://www.thehindu.com/news/national/other-states/punjab-government-bans-sale-of-herbicide/article25314146.ece. And in February of 2019, the Indian state of Kerala followed suit, issuing a ban on the sale, distribution and use of glyphosate. *See* https://www.thenewsminute.com/article/kerala-government-bans-glyphosate-deadly-weed-killer-96220.

55.    In January 2019, French authorities banned the sale of Roundup following a court ruling that regulators failed to take safety concerns into account when clearing the widely used herbicide. *See* https://www.france24.com/en/20190116-weedkiller-roundup-banned-france-after-court-ruling. In April 2019, a French appeals court ruled Bayer's Monsanto business was liable for the health problems of a farmer who inhaled Roundup. *See* https://www.insurancejournal.com/news/international/2019/04/11/523456.htm.

56.     In March 2019, Vietnam announced it has banned the import of all glyphosate-based herbicides. *See* https://sustainablepulse.com/2019/03/25/vietnam-bans-import-of-glyphosate-herbicides-after-us-cancer-trial-verdict/#.XS-xCT9Kh9O.

57.     In July 2019, Austria's Parliament passed a bill banning all uses of glyphosate. *See* https://www.reuters.com/article/us-austria-glyphosate/austrian-parliament-backs-eus-first-total-ban-of-weedkiller-glyphosate-idUSKCN1TX1JR. Although the ban was supposed to take effect on January 1, 2020, Austria's Chancellor refused to sign it into law due to a legal technicality. *See* https://www.reuters.com/article/us-austria-glyphosate/austrian-leader-blocks-ban-on-weedkiller-glyphosate-citing-technicality-idUSKBN1YD11Z.

58.     In January 2020, Luxembourg issued a total ban on glyphosate. *See* https://www.brusselstimes.com/all-news/eu-affairs/92006/luxembourg-will-be-first-eu-country-to-totally-ban-glyphosate/.

59.     Several municipalities and regions in Spain, the United Kingdom, and the United States, have also banned glyphosate herbicides.

**E.      Monsanto Loses Three Verdicts after Roundup is Found to Cause Cancer in Humans.**

60.     On August 10, 2018, a unanimous California jury in *Johnson v. Monsanto Co.,* No. CGC16550128 (Cal. Super. Ct., Cnty. of S.F.) found Monsanto's Roundup and Ranger Pro herbicides were unsafe and were a substantial factor in causing harm to the plaintiff.  The jury also found Monsanto failed to adequately warn customers of the risks associated with its Roundup and Ranger Pro products, and that the company acted with malice or oppression. The jury awarded the plaintiff a total of $289 million, with $250 million in punitive damages and $39.25 million in

compensatory damages. The court later reduced the punitive damages award, bringing the total award to $78.5 million. Monsanto appealed the judgment and the California Court of Appeal, on July 20, 2020, affirmed the trial court's judgment, but reduced the total award to $20.6 million.

61.    On March 27, 2019, a unanimous California jury in *Hardeman v. Monsanto Co.*, No. 3:16-cv-00525-VC (N.D. Cal.) found Monsanto liable for failing to warn Roundup could cause cancer, liable for negligence, and liable in a design defect claim. The jury awarded the plaintiff a total of $80.27 million, with $75 million in punitive damages and $5.27 million in compensatory damages. The trial judge later reduced the punitive damages award, bringing the total award to $25.27 million. Monsanto has appealed the judgment and the matter is currently before the Ninth Circuit Court of Appeals.

62.    On May 13, 2019, a California jury found Monsanto likely caused a couple's cancer in *Pilliod v. Monsanto Co.,* No. RG17862702 (Cal. Super. Ct., Cnty. of Alameda). The jury found on a preponderance of the evidence Roundup was a significant contributing factor in causing the plaintiff's NHL. The jury awarded the plaintiffs a total of $2.055 billion, with $2 billion in punitive damages and $55 million in compensatory damages. The court later reduced the punitive and compensatory damages awards, bringing the total award to $87 million. Monsanto has appealed the judgment and the matter is currently before the California Court of Appeal.

**F.      Bayer Agrees to Pay Over $10 Billion to Settle Personal Injury Suits**

63.    Thousands of other personal injury (including wrongful death) claims have been filed against Monsanto claiming the Product caused the plaintiffs to develop cancer. They have been coordinated in a multi-district litigation, specifically: *In re Roundup Products Liability Litigation*, Case No. 3:16-md-02741 (N.D. Cal.).

64.     On June 24, 2020, Bayer Corporation, the maker of Roundup and owner of Monsanto, announced it had reached a $10.1 billion settlement to resolve tens of thousands of personal injury cases coordinated in a multi-district litigation ("MDL") in the Northern District of California. These cases were brought by individuals who claim their use of Roundup caused their non-Hodgkin's (i.e., "NHL"). *See In re Roundup Products Liability Litigation,* Case No. 3:16-md-02741, at Dkt. No. 11042 (N.D. Cal. June 24, 2020) (Motion for Preliminary Approval of Class Action Settlement).

65.     In addition to the settlement of the individual personal injury cases, was a proposed $1.1 billion class settlement to resolve a class case seeking certification of an issue class under Rules 23(b) and (c)(4) "to seek a litigated determination of the general causation dispute on a class-wide basis." *Id.* The MDL class settlement was withdrawn after the judge in the MDL expressed concerns about the terms. Had the MDL class settlement not been withdrawn and approved, it would have bound all individuals who were exposed to Roundup but who had not yet retained counsel. *Id.*

66.     Certain MDL class settlement terms and the proposed class notice support Plaintiffs claims in the instant lawsuit. For example, in the $50 million Monsanto-funded notice plan for the class settlement, Monsanto agreed to notify the MDL class members of Roundup's potential to cause cancer by direct mail, email, posters for retailers to display in their stores, and through multi-national and local media. *Id.* As later discussed herein, this is essentially *the same form of relief Plaintiff seeks here*: disclosure of Roundup's potential carcinogenicity in a manner not involving a label change.

67.    If approved, the proposed MDL class notice plan would have alerted MDL class members to the creation of a registration process to encourage MDL class to come forward and identify themselves and establish eligibility for certain "class benefits." *Id.* The class benefits in the MDL class settlement included a Diagnostic Accessibility Grant Program ("DAGP"), which is a medical outreach and assistance program that would have distributed grants to existing medical clinics and healthcare providers offering diagnostic services to class members who have not been diagnosed with NHL (representing 18% of the settlement fund). *Id.* The MDL settlement also included Interim Assistance Grants ("IAGs") to compensate class members diagnosed with NHL for the effects of the delay during the litigation standstill on an as-needed basis (representing 77% of the settlement fund). *Id.* Furthermore, the class benefits included a Research Funding Program ("RFP"), which would have funded medical and scientific research into the diagnosis and treatment of NHL (representing 5% of the settlement fund). *Id.* Notice would have been targeted to "large groups of individuals who may be itinerant, lack exposure to traditional media, or do not speak English as a first language." *Id.*

68.    The approximately 200-page MDL class settlement agreement also included the creation of an independent "Class Science Panel," which would have considered a closed set of materials and issue "a binding and determinative" answer to the question of whether exposure to Roundup can cause non-Hodgkin's lymphoma in humans.. *Id.* The Class Science Panel would have been required, under the terms of the proposed class settlement, to issue its causation finding in four years, but not may do so earlier. *Id.* In exchange, MDL class members—broadly defined as anyone ever exposed to Roundup (who, as of June 24, 2020, had not retained counsel)—would have forever waived their right to punitive damages and be barred from filing a case against

Monsanto during this four-year period. *Id.* In the meantime, the $1.1 billion would have been used to provide immediate relief to diagnose or ameliorate NHL and compensate for delay (by providing the aforementioned "class benefits"). *Id.*

69. The Class Science Panel's decision would have been binding on future litigants, and, in exchange, class members would have forever waived their right to punitive damages. By agreeing to the creation of this panel and by *agreeing to be bound* by the result in all future personal injury litigation, Monsanto acknowledged the existence of an ongoing scientific dispute as to whether exposure to Roundup has the potential to cause NHL.[4]

## G. California's Classification of Glyphosate as a Chemical Known to Cause Cancer.

70. On July 7, 2017, following the IARC's classification of glyphosate, California's Office of Environmental Health Hazard Assessment (OEHHA) listed glyphosate as a chemical known to the State of California to cause cancer, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65").

71. Proposition 65 prohibits retailers and manufacturers from knowingly and intentionally exposing California consumers to a chemical known to the State of California to cause cancer or developmental or reproductive harm without first providing a "clear and reasonable warning."

---

[4] Putative Class Counsel's swift withdrawal of the motion for preliminary approval of the class settlement following Judge Chhabria's comments questioning the viability of the settlement does not change the fact that Bayer filed a document in Federal Court acknowledging there is a possibility that exposure to Roundup may in fact cause cancer (and agreed to pay $1.1 billion in an effort to resolve this dispute).

72.     In response to OEHHA's inclusion of glyphosate on the Proposition 65 list, Monsanto, CropLife America, and several growers associations filed a motion alleging the IARC classification of glyphosate is contrary to the international scientific consensus and that requiring a Proposition 65 warning would be misleading to the ordinary consumer.

73.     On February 26, 2018, the Eastern District Court of California issued a preliminary injunction precluding OEHHA from enforcing its Proposition 65 warning requirements against glyphosate registrants, which would have taken effect on July 7, 2018. This injunction was made permanent on June 22, 2020. The Court however did not rule that glyphosate should be removed from the Proposition 65 list.

74.     On August 7, 2019, EPA's Office of Pesticide Program ("OPP") issued a letter to registrants of glyphosate products (the "OPP Letter") stating a Proposition 65 warning statement on glyphosate-based products would be "false and misleading" and would render them misbranded under FIFRA. The OPP letter was not the product of any formal proceedings, nor was it published in the Federal Register.

## H.     The EPA's Registration Review for Glyphosate

75.     Since glyphosate's first registration, EPA has reviewed and reassessed its safety and uses, including undergoing registration review, a program that re-evaluates each registered pesticide on a 15-year cycle.

76.     In January 2020, after receiving and considering public comments, EPA issued its Interim Registration Review Decision for glyphosate, finding "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." EPA stated it "will continue to monitor the open literature for studies that use

scientifically sound and appropriate methodology and relevant routes of exposure that have the potential to impact the risk evaluation of glyphosate."[5]

77.    EPA's review of glyphosate, however, was based on an incomplete and distorted factual record, largely due to efforts on the part of Monsanto to conceal glyphosate's risks. As described herein, Monsanto withheld relevant scientific evidence from EPA, in violation of federal law, and manipulated the scientific debate about glyphosate-based herbicides by "ghostwriting" scientific papers.

78.    Through the numerous personal injury and wrongful death lawsuits filed against Monsanto, which total in the tens of thousands, Monsanto obtained extensive medical documentation showing a link between Roundup and various types of cancer.

79.    The plaintiffs in the three California cases resulting in favorable jury verdicts for the plaintiffs (as described above) submitted medical records and expert testimony showing that Roundup caused those plaintiffs to develop cancer. Importantly, all of this medical documentation and information would have been provided to the Monsanto.

80.    Despite the exorbitant amount of medical information in Monsanto's possession that Roundup and/or glyphosate can cause cancer, as generated just by the three California cases, Monsanto did not turn any of this information over to EPA.

81.    Monsanto failed to comply 40 C.F.R. § 159.152, which requires "applicants to submit, as part of an application for registration, any factual information of which [it] is aware

---

[5] As of March 2020, multiple groups have sued EPA over its Interim Registration Review Decision for glyphosate. These groups include Center for Food Safety, Beyond Pesticides, the Rural Coalition, Organización en California de Lideres Campesinas, the Farmworker Association of Florida, Natural Resources Defense Council, and Pesticide Action Network North America.

regarding unreasonable adverse effects of the pesticide on humans or the environment." *Id.* Defendant's refusal to provide such information, including medical records and information provided to Monsanto in the thousands of personal injury lawsuits, to EPA constituted deception by omission and deprived this agency from making an informed decision as to whether Roundup is safe for human exposure and further deprived the opportunity for EPA from reaching an informed conclusion regarding Roundup's potential carcinogenicity.

82.     Defendant indeed has had a history of misleading the EPA regarding Roundup's potential carcinogenicity, by deception and omission.

83.     Beginning in the 1990s, as numerous studies found an association between Roundup and Non-Hodgkin Lymphoma (as described herein *supra*), Monsanto hired Dr. James Parry, a world-renowned genotoxicologist, to rebut the growing scientific consensus Roundup is genotoxic. This tactic backfired: Following his review, Dr. Parry provided a report to Monsanto that "glyphosate is capable of producing genotoxicity both in vivo and in vitro . . . ." Dr. Parry recommended that Monsanto conduct research on the genotoxicity of glyphosate-based herbicides; the mechanisms giving rise to genotoxicity; and the relevance of these mechanisms to the safety of glyphosate-based herbicides.

84.     Monsanto decided not to conduct the research Dr. Parry asked it to perform. Dr. Parry offered to conduct the research himself, but Monsanto refused. Monsanto's goal was not actually to determine whether glyphosate-based herbicides caused cancer but rather to find an expert that could influence regulators when genotoxicity issues arise. Monsanto failed to produce the Parry Report to EPA as required under 40 C.F.R. § 159.158. Because Dr. Parry never came around to

Monsanto's view of the science, Monsanto would not let him speak to regulators and his report was never submitted to EPA.

85.    Monsanto has also engaged in the practice of "ghostwriting" scientific papers to establish the safety of glyphosate-based herbicides, which, when published, appear to be authored by independent academic scientists.

86.    A noteworthy example is a paper published in 2000 purportedly written by G. M. Williams, *et al.* entitled, "Safety evaluation and risk assessment of the herbicide roundup and its active ingredient, glyphosate, for humans." This paper concluded "Roundup herbicide does not pose a health risk to humans." Although no Monsanto employee is listed as an author, William Heydens, a Monsanto employee, admits that he wrote the manuscript and provided final edits to the paper. EPA has consistently relied on this paper when considering the safety of glyphosate-based herbicides.

87.    Another example of Monsanto's surreptitious involvement in the science of glyphosate can be found in a memo dated August 4, 2015 by Monsanto scientist David Saltmiras, stating he "ghost wrote cancer review paper Greim, et al. (2015)." That paper, entitled, "Evaluation of carcinogenic potential of the herbicide glyphosate, drawing on tumor incidence data from fourteen chronic/carcinogenicity rodent studies," concluded "glyphosate does not present concern with respect to carcinogenic potential in humans." EPA has consistently relied on this paper when considering the safety of glyphosate-based herbicides.

88.    Immediately after IARC deemed glyphosate a probable carcinogen, Monsanto devised a response plan that included convening an expert panel to "[p]ublish comprehensive evaluation of carcinogenic potential by credible scientists" that could later be used for litigation

support. It worked with Intertek, an industry consultancy firm, to create a false impression that the expert panel was independent.

89.   On September 28, 2016, the "independent" expert panel published its conclusions in the journal Critical Reviews in Toxicology, in a paper entitled "A review of the carcinogenic potential of glyphosate by four independent expert panels and comparison to the IARC assessment." The paper concluded glyphosate was "unlikely to pose a carcinogenic risk to humans."

90.   Included in the paper was a "Declaration of Interest," which stated: "[t]he Expert Panelists . . . were not directly contacted by the Monsanto Company" and that "neither any Monsanto company employees nor any attorneys reviewed any of the Expert Panel's manuscripts prior to submission to the journal." These statements were blatantly false. Monsanto recruited, selected, and had direct contact with the experts, some of them receiving payments from Monsanto. Moreover, Monsanto was engaged in organizing, reviewing, and editing of the drafts, and had ultimate authority over the paper's content.

91.   The foregoing represent just a handful of the many scientific articles ghostwritten by Monsanto to manipulate the scientific debate about glyphosate-based herbicides, including Roundup, and to prevent regulators like EPA from learning their true risks.

I.     **Monsanto's Failure to Warn Consumers of Roundup's Carcinogenic Properties.**

92.   Defendant's promotion, marketing, advertising, distribution, and labeling of Roundup leads reasonable consumers into believing Roundup is safe for its intended use, when it is not. Exposure to Roundup has the potential to cause cancer in humans, as explained herein.

93.     Defendant does not warn consumers of Roundup's potential to cause cancer or, at least, that there is a vigorous scientific dispute about Roundup's potential to cause NHL in humans.

94.     Customers rely on Defendants to offer quality and safe products. But instead of putting its customers' safety first and informing consumers about Roundup's potential health risks, Defendant manufactured, labeled, and marketed a potentially deadly product without any warning, all for its own financial benefit.

95.     Defendant's focus on its own financial gain is evidenced by its refusal to submit medical information evidencing a link between Roundup and cancer to EPA.

96.     Defendant was aware of the substantial danger to consumers while using Roundup, however Defendant did not notify consumers that exposure to Roundup could potentially cause cancer, including NHL.

97.     Defendant could and can notify consumers of the potential health risks by, among other things, providing information on its webpages for Roundup, in television and radio commercials, in-store signage, such as point-of-sale or shelf tags, posters,  or press releases—yet has not done so.

98.     Plaintiff and other consumers were not warned by Monsanto and therefore did not know that using Roundup exposed them to chemicals that are hazardous and potentially carcinogenic to humans.

99.     Whether exposure to Roundup has the potential to cause cancer in humans would be important in a consumer's decision whether to purchase Roundup.

100.   The existence of an ongoing scientific debate about whether exposure to Roundup Products can cause NHL in humans would also be important in a consumer's decision whether to

purchase Roundup.

## J.      Plaintiff's Purchase of Roundup

101.  During the Class Period,[6] Plaintiff has resided in Oregon and the State of Washington.

102.  Plaintiff has purchased Roundup Ready-to-Use Weed & Grass Killer III on multiple occasions, and his most recent purchase was in December 2018 from a Home Depot[7] located in Multnomah County, Oregon.

103.  When Plaintiff purchased the Roundup Ready-to-Use Weed & Grass Killer III, neither the Roundup label, nor in-store advertisements, nor Monsanto's webpages disclosed Roundup had the potential to cause cancer or, at the very least, that there was an ongoing scientific dispute concerning its potential carcinogenicity.

104.  Had Plaintiff known exposure to Roundup had the potential to cause cancer, or that there was an ongoing scientific dispute concerning its potential carcinogenicity, he would not have purchased it.

105.  Plaintiff suffered an economic injury because the economic benefit he received in purchasing the Roundup Ready-to-Use Weed & Grass Killer III was worth less than the economic benefit for which he bargained due to its potential carcinogenicity.

106.  Plaintiff learned Roundup had the potential to cause cancer after purchasing the Roundup Ready-to-Use Weed & Grass Killer III. At that time, Plaintiff stopped using the Product, which had not yet been consumed in its entirety.

---

[6] The "Class Period" is defined as August 19, 2017 through the date a class is certified.
[7] Home Depot U.S.A., Inc. is a Delaware corporation.

107. Plaintiff may purchase Roundup again if he believes Roundup has been reformulated to remove or mitigate its potential risks. Any such belief would be plausible given that Bayer recently announced plans to invest $5.6 billion over the next decade developing weed killers that do not contain glyphosate.

108. Plaintiff and the Class have been, are, and will continue to be aggrieved by Defendant's material omissions. Plaintiff and the Class are being deprived of the benefit of the bargain because Roundup is worth less than the economic benefit for which they bargained due to its potential carcinogenicity.

109. Defendant's concealment, suppression, or omission of material facts—not only from Roundup's label itself but also on the Roundup website in any advertising, marketing, or other disclosures to consumers—is material because Plaintiff and the Class purchased a product they believed to be safe, when in fact, Roundup is known to have links to cancer.

## CLASS ALLEGATIONS

110. Plaintiff re-alleges an incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

111. Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class (the "Class"):

**All persons who purchased at least one Product in the United States since August 19, 2017.**

112. The following are excluded from the Class: Defendant, its parent company, subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

113.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's' claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

**A.  Federal Rules of Civil Procedure, Rule 23(a) Factors.**

114.  **Numerosity**: The members of the Class are so numerous that individual joinder of all class members is impracticable. The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network throughout the United States.

115.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, in-store signage, shelf tags, and/or published notice in newspapers, magazines, or other periodicals.

116.  **Commonality.** This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to Defendants' deceptive and misleading advertising and marketing claims and/or omissions alleged herein. Common questions of law or fact include:

a.  whether Defendant, in its promotion, marketing, advertising, and labeling of Roundup, concealed, suppressed, or omitted material facts—i.e. Roundup's potential to cause cancer;

b.  whether Defendant acted with the intention that others rely on such concealment, suppression or omission;

    c.  whether Defendant's concealment, suppression or omission of Roundup's potential to cause cancer is material to reasonable consumers;

    d.  whether Defendant's promotion, marketing, advertising, and labeling of Roundup caused Plaintiff and the Class to suffer an ascertainable loss;

    e.  whether Defendant violated the DCFA;

    f.  whether Plaintiff and the other members of the Class are entitled to damages under the DCFA; and

    g.  whether Plaintiff and the other members of the Class are entitled to injunctive relief and/or declaratory relief under the DCFA.

117.  Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the Class. Similar or identical statutory legal violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

118.  **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the same uniform misconduct described herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

119.  **Adequacy.** Plaintiff, SCOTT GILMORE, is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously.

The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**B.      Federal Rules of Civil Procedure, Rule 23(b)(2) Factors.**

120.   Defendant has acted or refused to act on grounds generally applicable to Plaintiff and members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

121.   Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant. Money alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to sell Roundup without informing its customers that using Roundup may be carcinogenic.

**C.      Federal Rules of Civil Procedure, Rule 23(b)(3) Factors.**

122.   **Common Issues Predominate**: As set forth in detail hereinabove, common issues of fact and law predominate because Plaintiff's claims are based on a deceptive common course of conduct. Whether Defendant's conduct is likely to harm reasonable consumers and violate the UCL is common to all members of the Class and are the predominating issues, and Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

123.   **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of the claims of individual Class members, as well as the resources of Defendant, few Class members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b. This action will permit an orderly and expeditious administration of the claims of Class members, will foster economies of time, effort, and expense ad will ensure uniformity of decisions;

c. Any interest of Class members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system; and

d. Without a class action, Class members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

## CAUSE OF ACTION

**COUNT I:  VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT ("DCFA"),**

**Del. Code Ann. tit. 6, § 2511, *et seq.***

124.  Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

125.  The Delaware Consumer Fraud Act ("DCFA") prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the

concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." Del. Code Ann. tit. 6, § 2513.

126. The purpose of the DCFA is "to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State." Del. Code Ann. tit. 6, § 2512.

127. Defendant was, at all times relevant hereto, a "person" as defined by Del. Code Ann. tit. 6, § 2511(7).

128. Roundup was, at all times relevant hereto, "merchandise" as defined by Del. Code Ann. tit. 6, § 2511(6).

129. Defendant engaged in the "sale" and "advertisement" of Roundup as defined by Del. Code Ann. tit. 6, §§ 2511(1), (8), 2513.

130. Defendant indeed was responsible for the manufacture, promotion, marketing, advertising, distribution, labeling, and sale of Roundup.

131. Defendant concealed, suppressed, or omitted material facts with intent that others rely upon such concealment, suppression or omission, in violation of Del. Code Ann. tit. 6, § 2513.

132. Specifically, Defendant failed to disclose—on the Roundup label, on its webpages, on in-store advertisements, and through other means of disclosure—Roundup's potential to cause cancer including, at the very least, the existence of an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans.

133. Defendant should have been aware of the risks of Roundup due to the information

available to it, particularly since Defendant manufactures the Products, *supra*.

134. The facts Defendant concealed, suppressed, or omitted are material because a reasonable consumer would consider them important factors in deciding whether to purchase Roundup.

135. Defendant's omissions were uniform and material and constituted a continuing course of conduct of misleading and deceptive business practices.

136. Plaintiff did not know exposure to Roundup has the potential to cause cancer at the time he purchased it. Plaintiff would not have purchased Roundup had he known it had the potential to cause cancer, or that there has been an ongoing scientific debate as to whether exposure to Roundup can cause NHL in humans.

137. Plaintiff suffered an economic injury because the economic benefit he received in purchasing Roundup was worth less than the economic benefit for which he bargained due to its potential carcinogenicity.

138. Plaintiff may purchase Roundup again if he believes it has been reformulated to remove or mitigate its potential risks.

139. Plaintiff is entitled to bring this Action under the DCFA for damages. *See* <u>Del. Code Ann.</u> tit. 6, § 2525 ("A private cause of action shall be available to any victim of a violation of this subchapter").

140. Plaintiff is also entitled to injunctive relief under the DFCA. *See* <u>Del. Code Ann.</u> tit. 6, § 2523. For example, Plaintiff alleges an order requiring Defendant to notify consumers of Roundup's potential to cause cancer (or, at least, the existence of a scientific dispute about whether exposure to Roundup causes NHL) may be appropriate. Defendant could disclose this information

on its webpages for the Roundup products, by asking retailers to post notice near where Roundup is sold, and/or presenting this information through various media, for example, on local television and radio, in consumers magazines, and on social media—all of which may be accomplished without changing the Roundup label.

141.   Plaintiff is entitled to reasonable costs and attorneys' fees in pursuit of this Action.

142.   Plaintiff seeks all available remedies, damages, and awards as a result of Defendants violations of DCFA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

i. For an award of equitable relief for the cause of action set forth in Count I as follows:

   a. Enjoining Defendant from continuing to engage, use, or employ any unlawful business acts or practices related to the manufacture, promotion, marketing, advertising, distribution, and sale of Roundup in violation of the DCFA;

ii. For actual damages in an amount to be determined at trial for the cause of action set forth in Count I;

iii.  For an award of attorney's fees and costs;

iv.  For any other relief the Court might deem just, appropriate, or proper; and

v.  For an award of pre- and post-judgment interest on any amounts awarded.

Respectfully submitted,

DATE: August 19, 2020

RHODUNDA WILLIAMS & KONDRASCHOW

*/s/ William J. Rhodunda, Jr.*
William J. Rhodunda, Jr. (No. 2774)
Chandra J. Williams (No. 4907)
Brandywine Plaza West
1521 Concord Pike, Suite 205
Wilmington, DE 19803
(302) 576-2000 (telephone)
(302) 576-2004 (facsimile)
Bill@rawlaw.com
Chandra@rawlaw.com

-and-

MILSTEIN JACKSON
FAIRCHILD & WADE, LLP
Gillian L. Wade (to be admitted *pro hac vice*)
gwade@mjfwlaw.com
Sara D. Avila (to be admitted *pro hac vice*)
savila@mjfwlaw.com
Marc A. Castaneda (to be admitted *pro hac vice*)
mcastaneda@mjfwlaw.com
10250 Constellation Boulevard
14th Floor
Los Angeles, California 90067
Telephone: (310)396-9600
Facsimile: (310)396-9635

**Counsel for Plaintiff, Scott Gilmore**





# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Scott Gilmore | Monsanto Company |

| (b) County of Residence of First Listed Plaintiff   Clark County, WA | County of Residence of First Listed Defendant   New Castle County, DE |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>William J. Rhodunda, Jr. & Chandra J. Williams (No. 4907)<br>Rhodunda Williams & Kondraschow<br>1521 Concord Pike, Suite 205, Wilmington, DE 19803   [302-576-2000] | Attorneys *(If Known)* |
|---|---|

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Delaware's Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2511, et seq.

Brief description of cause:
Consumer Class Action

| VII. REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ 5,000,000.00 | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE<br>08/19/2020 | SIGNATURE OF ATTORNEY OF RECORD<br>/s/ William J. Rhodunda, Jr. (No. 2774) |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

EXHIBIT
4

# EXHIBIT 1

# CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement" or "Settlement"), effective upon the date of the signatories below, is made by and between Monsanto Company and Scott Gilmore, James Weeks, Paul Taylor, Sherry Hanna, Amanda Boyette, Julio Ezcurra, Anthony Jewell, and Kristy Williams, on behalf of themselves and the Settlement Class (defined below) (collectively, the "Parties"), in the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (D. Del.) ("the Action").

**WHEREAS**, Class Counsel commenced numerous Related Actions against Monsanto and certain retailers regarding alleged false advertising and consumer fraud in connection with Monsanto's Roundup® Products beginning in July 2019;

**WHEREAS**, Class Representative Scott Gilmore commenced the Action for violation of Delaware Consumer Fraud Act against Monsanto in the United States District Court for the District of Delaware on August 19, 2020;

**WHEREAS**, the Parties disagree on the merits and viability of the Claims set forth in the Action's complaint, Monsanto denies any and all liability or wrongdoing, and Plaintiffs believe that all Claims are viable;

**WHEREAS**, the Parties have engaged in both informal and formal discovery in various actions but have not yet briefed class certification;

**WHEREAS**, the Parties engaged in a mediation session before retired United States Magistrate Judge Diane Welsh to determine whether a settlement of the Action could be reached and, at the end of the more than 14-hour mediation session, the Parties reached an agreement in principle;

**WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement in order to avoid further expense, inconvenience, and delay, and on the basis of other factors bearing on the merits of settlement;

**WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and to put to rest all controversy concerning the Claims that have been or could have been asserted;

**WHEREAS**, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed Claims. This Agreement, and all related documents, shall not be construed as any admission or concession by Monsanto or by any Party of any fault, liability, wrongdoing, or damage whatsoever. Preliminary certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor would Monsanto be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved. This Agreement is inadmissible as evidence against any Party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any

Party to this Agreement. It is the Parties' desire and intention to effect a full, complete, and final settlement and resolution of all existing disputes and Claims as set forth in the Action.

**WHEREAS**, the Settlement Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future Claims the Settlement Class has or may have against the Released Persons of any nature whatsoever, as they relate to the allegations in the Action, and to that end, the Settlement Class and Monsanto intend that the United States District Court for the District of Delaware conditionally certify the Settlement Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or Claims by any Party against the Released Persons;

**NOW, THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

## A. Definitions

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1. "Action" means the matter *Gilmore et al. v. Monsanto Company*, Case No. 1:20-cv-01085-MN (D. Del.).

2. "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

3. "Agreement" means this Settlement Agreement and Release.

4. "Second Amended Complaint" means the Second Amended Complaint in the Action.

5. "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

6. "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

7. "Boyette" means the plaintiff in the Related Action *Boyette v. Lowe's Companies, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Amanda Boyette.

8. "Claims" means past, present, and future claims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, including any of the foregoing for equitable or injunctive relief, direct damages, indirect damages, consequential damages, incidental damages, punitive or

exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages or relief whatsoever, and whether based upon breach of contract, warranty or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common-law fraud, statutory consumer fraud, quantum meruit, breach of fiduciary duty, violation of statutes or administrative regulations, and/or any other legal (including common-law), foreign, statutory, equitable, or other theory or right of action, whether in law or in equity, fixed, contingent or noncontingent, known or unknown, discovered or undiscovered, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, ripened or unripened, perfected or unperfected, choate or inchoate, developed or undeveloped, liquidated or unliquidated, now recognized by law or that may be created or recognized in the future by statute, regulation, or judicial decision or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

9. "Claim for Relief" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

10. "Claimant" means any Class Member who submits a Claim for benefits as described in Section I of this Agreement.

11. "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

12. "Claims Administrator" means the company approved by the Court to provide the Class Notice and to administer the claims process. The parties anticipate that Postlethwaite & Netterville, APAC will be the Claims Administrator.

13. "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the Class Notice and claims administration process set forth in this Agreement.

14. Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall end one hundred twenty (120) days after the Preliminary Approval Date.

15. "Class Member(s)" means all Persons that are members of the Settlement Class.

16. "Class Counsel" means the following attorneys of record in the Action: Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP and any additional attorneys at those firms assisting in the representation of the Class in this Action.

17. "Class Counsel's Expenses" means the amount awarded by the Court for any costs or expenses, other than the Class Counsel's Fees, incurred by Class Counsel, Plaintiffs' Counsel, or Class Representatives for prosecution of the Action and Related Actions.

18.    "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for Class Counsel's and Plaintiffs' Counsel's prosecution of the Action and Related Actions.

19.    "Class Notice" means, collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

20.    "Class Period" shall mean and refer to a time period based upon the state or territory where each Class Member made his or her purchases of the Products.  A list of the applicable periods for each state, district, or territory included in this Agreement is appended hereto as Exhibit B.

21.    "Class Released Claims" means the Claims released by the Class Members via this Agreement.

22.    "Class Representatives" means the named plaintiffs in the Action—Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams—and any other individuals who may be added as plaintiffs to any amended pleading.

23.    "Court" means the United States District Court for the District of Delaware.

24.    "Default Payment Amounts" has the meaning set forth in Paragraph F.1.

25.    "Effective Date" means the date on which the judgment approving this Agreement becomes final.  For purposes of this definition, the Final Settlement Approval Order and Judgment shall become final at the latest date of the following dates: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement Approval Order and Judgment is affirmed or the appeal dismissed (including, if necessary, after the resolution of any petition for rehearing or rehearing *en banc* and, if applicable, the conclusion of any rehearing proceedings), the date that the deadline to file a petition for certiorari has passed; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

26.    "Ezcurra" means the plaintiff in the Related Action, *Ezcurra v. Monsanto Co.* and one of the named plaintiffs in the Second Amended Complaint, Julio Ezcurra.

27.    "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

28.    "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement; entering judgment; dismissing the Action with prejudice; discharging the Released Parties of and from all further liability for the Released Claims; and permanently barring and enjoining the Releasing Persons from instituting, filing, commencing,

prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory body or authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Persons that asserts any Released Claims.

29.    "Gilmore" means the plaintiff in the Action, Scott Gilmore.

30.    "Hanna" means the plaintiff in the Related Action *Hanna v. Walmart* and one of the named plaintiffs in the Second Amended Complaint, Sherry Hanna.

31.    "Jewell" means the plaintiff in the Related Action *Jewell v. Walmart, Inc.* and one of the named plaintiffs in the Second Amended Complaint, Anthony Jewell.

32.    "Monsanto" means Monsanto Company and Bayer AG and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

33.    "Notice Period" means the notice period to potential Class Members.  Class Notice shall run for a period of one hundred (100) days and shall commence within fourteen (14) days after the Preliminary Approval Date.

34.    "Notice Plan" means the plan for dissemination of the Class Notice to be designed by the Claims Administrator and agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

35.    "Objection Deadline" means the first business day on or after seven (7) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order.  It is the date by which the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the Settlement or to Class Counsel's Fees and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's Fees.

36.    "Opt-Out Deadline" means one hundred twenty (120) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

37.    "Other Counsel" means any other attorney or attorneys, representing any Class Member, who are not Class Counsel or Plaintiffs' Counsel.

38.    "Party" or "Parties" means Plaintiffs, to include the Class Members, and Monsanto.

39.    "Person" means any individual, corporation, partnership, association, or any other type of legal entity.

40. "Personal Injury Claims" shall mean Claims that assert a right to recover damages for the actual physical injury or illness of a natural person. It is expressly contemplated that a cause of action could include both Claims that are Personal Injury Claims and Claims that are not Personal Injury Claims.

41. "Plaintiffs" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and the other Class Members.

42. "Plaintiffs' Counsel" means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and (6) Harrelson Law Firm, P.A.

43. "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Settlement.

44. "Products" means and includes the list of Products appended hereto as Exhibit A.

45. "Related Actions" include the following actions:

a. *Gilmore v. Monsanto Co. et al.*, No. 3:19-cv-1123 (D. Or.)

b. *Waters v. Home Depot U.S.A., Inc.*, No. 50-2019-CC-009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

c. *Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

d. *Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-6780 (C.D. Cal.)

e. *Weeks v. Lowe's Home Centers, LLC*, No. 2:19-cv-6828 (C.D. Cal.)

f. *Jewell v. Walmart Inc.*, No. 4:19-cv-4088 (W.D. Ark.)

g. *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

h. *Biddle v. Lowe's Home Centers, LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.)

i. *Morley v. Ace Hardware Corp.*, No. CONO-19-01064 (Cnty. Ct. 2d Cir. in and for Broward Cnty., Fla.)

j. *Boyette v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.)

k. *Thomas v. Costco Wholesale Corp.*, No. 1:19-cv-05278 (E.D.N.Y.)

l. *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.)

    m. *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.)

    n. *Taylor v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.)

    o. *Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.)

    p. *Williams v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.)

    q. *Hanna v. Walmart Inc.*, No. CIV SB 2100789 (Cal. Sup. Ct.)

    r. *Gregorio v. Home Depot U.S.A., Inc.*, No CACE-21-002428 (2d Cir. in and for Broward Cnty., Fla.)

The term "Related Actions" is meant only as a shorthand to refer to these cases in the course of this Agreement and is not intended, and shall not be construed, to limit in any way the scope of the releases provided by the Agreement or the effect of this Agreement in actions other than the Related Actions. It is expressly contemplated that certain actions not included within the definition of Related Actions contain Claims that shall be released by virtue of this Agreement.

    46. "Related Parties" means the past, present, and future manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, Retailers, clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to the Products, and any and all past, present, or future suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of the Products, including the labeling and packaging thereof, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

    47. "Released Persons" means, respectively, Monsanto; Scotts; any distributors and/or Retailers of the Products; Related Parties; any Persons that are currently, may in the future be, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any past, current, or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, Affiliates, predecessors, successors, and assigns, and each of their respective past, present, or future officers, directors, employees, agents, members, franchisees, franchisors, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

    48. "Releasing Persons" means Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, Williams, and each Class Member and any Person claiming by or through each Class Member, or on their behalf, including, but not limited to, spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or Affiliates.

    49. "Retailers" means any person or entity that has offered, is presently offering, or may in the future offer the Products for sale or resale (including, without limitation, wholesale

distributors, private-label distributors, and all retailers and retail distributors), and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above. "Retailers" shall include, but is in no way limited by, Ace Hardware Corporation; Costco Wholesale Corporation; Home Depot U.S.A., Inc.; The Home Depot, Inc.; Lowe's Companies, Inc.; Lowe's Home Centers, LLC; Target Corporation; Walmart Inc.; and Wal-Mart Stores, Inc., and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

50.     "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup® consumer products, and each and all of its respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above.

51.     "Settlement Class" means all Persons in the United States who, during the Class Period, purchased Products (as defined above) in the United States other than for resale or distribution. Excluded from the Settlement Class are (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officers, directors, and employees of Monsanto; (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to this Agreement and in the manner approved by the Court and set forth in the Class Notice.

52.     "Settlement Website" means a website maintained by the Claims Administrator to provide the Settlement Class with information relating to the Settlement.

53.     "Taylor" means the named plaintiff in the Related Action *Taylor v. Costco Wholesale Corp.* and one of the named Plaintiffs in the Second Amended Complaint, Paul Taylor.

54.     "United States" means the fifty states of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any United States military or diplomatic establishment wherever located.

55.     "Weeks" means the named plaintiff in the Related Action *Weeks v. Home Depot U.S.A., Inc.* and one of the named Plaintiffs in the Second Amended Complaint, James Weeks.

56.     "Williams" means the named plaintiff in the Related Action *Williams v. Lowe's Home Centers, LLC* and one of the named Plaintiffs in the Second Amended Complaint, Kristy Williams.

### B. Conditional Class Certification for Settlement Purposes Only

1.      For settlement purposes only, Plaintiffs agree to ask the Court to certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2.      This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (1) the validity of any Claim or allegation by Plaintiffs, or of any defense asserted by Monsanto, in this Action or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Class Member, or their respective counsel; or (3) the propriety of class certification in the Action, Related Actions, or any other action or proceeding.

3.      For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Settlement Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as an admission of any kind or be used for any purpose in the Action or Related Actions or in any other pending or future action.  In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Settlement Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

4.      The Court's certification of the Settlement Class shall not be deemed an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action, Related Actions, or any other proceeding unless and until the Court enters a Judgment.  Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar Claims.

5.      In the event that the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

6.      Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

7.      Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Gilmore, Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and

Williams as Class Representatives of the Settlement Class, and the appointment of Class Counsel as counsel for the Settlement Class.

8. The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted out of the Agreement from proceeding with any Released Claims.

9. Promptly following the filing of a motion for preliminary approval of this Agreement, Class Counsel shall make all reasonable and lawful efforts to ensure that plaintiffs in any pending Related Action or any other pending case with allegations and Claims similar to those in the Action consent to this Agreement and agree to stay or dismiss any such actions pending final approval of this Agreement. If for any reason, after Class Counsel's reasonable efforts, such other plaintiffs will not consent to this Agreement and agree to stay or dismiss any such actions, or in the event that the court before which any such action is pending will not agree to a stipulated stay or dismissal, then Class Counsel shall reasonably cooperate with Monsanto in any effort to seek a stay of such actions so that notice, administration, and approval of this Agreement may proceed in an organized and efficient manner.

10. Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgment above, will be entered by the Court.

## C. Benefits of the Agreement

Class Counsel and the Class Representatives believe the Agreement confers substantial benefits upon the Settlement Class, particularly as weighed against the risk associated with the inherently uncertain nature of a litigated outcome; the complex nature of the Action; and the expense of continued proceedings through the completion of fact and expert discovery, class certification briefing, summary-judgment briefing, trial, and appeals. On the basis of their evaluation of such factors, Class Counsel and Class Representatives have determined that settlement, based on the terms in this Agreement, is in the best interests of the Settlement Class.

## D. Settlement Consideration

1. The total cash consideration to be paid by Monsanto pursuant to this Agreement shall be an amount not less than **$23 million** (the "Floor Amount") and not greater than **$45 million** (the "Ceiling Amount"), which shall include all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

2. Prior to the Effective Date, Monsanto's only monetary obligation shall be to pay those amounts necessary to cover the costs of Class Notice and Claims Administration Expenses. Monsanto shall pay such amounts promptly and as necessary to cover such costs.

3. In no event shall Monsanto be required to contribute or pay an amount greater than the Ceiling Amount, when taking into account all amounts that Monsanto has paid or is to pay under or in connection with this Agreement, including, but not limited to, payments of or for Class

Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's Fees.

      4.     The payment obligations set forth in this Agreement will not be subject to any interest obligation or inflation adjustment.

### E. Class Member Claims

      1.     If the Ceiling Amount is sufficient to allow such payments (and subject to the further limitations and requirements set forth below) after payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, then for each unit of the Products purchased by an Authorized Claimant during the Class Period, that Authorized Claimant shall receive a standardized payment of the below amounts (the "Default Payment Amounts") for each Product purchased:

| Product | Default Payment Amounts Per Unit |
|---|---|
| 16 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 22 oz. Roundup® Weed and Grass Killer Sure Shot Foam | $1.00 |
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $1.00 |
| 24 oz. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $1.50 |
| 24 oz. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.00 |

| | |
|---|---|
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.00 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Weed and Grass Killer | $2.50 |
| 0.5 gal. (64 oz.) Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $2.50 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer (all applicator types) | $2.50 |
| 5 oz. Roundup® Precision Gel Weed and Grass Killer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer | $3.00 |
| 1 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.00 |
| 16 oz. Roundup® Weed & Grass Killer Concentrate Plus | $3.50 |

| | |
|---|---|
| 1.33 gal. Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $3.50 |
| 1.1 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer (all applicator types) | $4.00 |
| 1.33 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 1.25 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $5.00 |
| 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $5.50 |

| | |
|---|---|
| 3-pack – 6 oz. Roundup® Weed & Grass Killer Concentrate Plus | $5.50 |
| 32 oz. Roundup® Concentrate Poison Ivy Plus Tough Brush Killer or Wild Blackberry Plus Vine & Brush Killer | $5.50 |
| 1.25 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $6.00 |
| 36.8 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 40 oz. Roundup® Weed & Grass Killer Concentrate Plus | $6.00 |
| 1.1 gal. Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all applicator types) | $6.00 |
| 1.33 gal. Roundup® Ready-to-Use Max Control 365 (all applicator types) | $7.00 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 2 × 7 oz. Roundup® Weed & Grass Killer Concentrate Plus | $7.50 |

Settlement Agreement in *Gilmore et al. v. Monsanto*

| | |
|---|---|
| 0.5 gal. (64 oz.) Roundup® Concentrate Plus Weed & Grass Killer | $7.50 |
| 32 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $8.00 |
| 32 oz. Roundup® Concentrate Max Control 365 | $8.50 |
| Combination pack – 1.33 gal. Roundup® Ready-to-Use Max Control 365 and 8 oz. Roundup® Concentrate Max Control 365. | $9.00 |
| 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $9.50 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed & Grass Killer and 8 oz. Roundup® Weed & Grass Killer Super Concentrate | $9.50 |
| Combination pack – 1.33 gal. Roundup® Extended Control Weed & Grass Killer Plus Weed Preventer and 16 oz. Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer | $10.50 |
| 35.2 oz. Roundup® Weed & Grass Killer Super Concentrate | $11.50 |

Settlement Agreement in *Gilmore et al. v. Monsanto*

| | |
|---|---|
| 2-pack – 80 oz. Roundup® Weed & Grass Killer Concentrate Plus | $12.50 |
| 0.42 gal. Roundup® Weed & Grass Killer Super Concentrate | $14.00 |
| 0.5 gal. (64 oz.) Roundup® Weed & Grass Killer Super Concentrate | $15.00 |
| 1 gal. Roundup® Weed & Grass Killer Super Concentrate | $21.50 |
| 2.5 gal. Roundup® Pro Concentrate | $33.00 |
| 24 oz. Ace® Ready-to-Use Weed & Grass Killer | $0.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer | $1.50 |
| 1 gal. Ace® Ready-to-Use Weed & Grass Killer with battery-operated sprayer | $3.00 |

| | |
|---|---|
| 32 oz. Ace® Concentrate Weed & Grass Killer | $3.00 |
| 1 gal. Ace® Concentrate Weed & Grass Killer | $5.50 |
| 32 oz. HDX® Concentrate Weed & Grass Killer | $1.50 |
| 0.5 gal. HDX® Concentrate Weed & Grass Killer | $3.00 |
| 2.5 gal. HDX® Concentrate Weed & Grass Killer | $12.50 |

2.     If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, the Ceiling Amount is insufficient to allow the payments to Authorized Claimants of the Default Payment Amounts, then the payments to Authorized Claimants shall be adjusted downward on a pro rata basis to the extent necessary to permit the payment of all Claims for Relief by Authorized Claimants without exceeding the Ceiling Amount.

3.     If, after accounting for payment of all other amounts Monsanto has paid or is to pay under or in connection with this Agreement, and considering the Default Payment Amounts that would otherwise be paid to Authorized Claimants, the total amount to be paid by Monsanto under or in connection with this Agreement would be less than the Floor Amount, then the payment to Authorized Claimants shall be adjusted upward on a pro rata basis to the extent necessary to exhaust the Floor Amount.

4.     If, after all Approved Claims are paid, checks sent to Authorized Claimants remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of the checks, then (1) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would not cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then the full amount of those

checks shall revert to Monsanto; (2) if a reversion to Monsanto of the full amount of the unclaimed, uncashed, or otherwise unredeemed checks would cause the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount, then (a) whatsoever amount of unclaimed, uncashed, or otherwise unredeemed checks that can revert to Monsanto without causing the total amount paid by Monsanto under or in connection with this Agreement to fall below the Floor Amount shall revert to Monsanto; (b) as to the remaining amount of unclaimed, uncashed, or otherwise unredeemed checks, (i) if a further pro rata payment to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is economically feasible in the judgment of the Claims Administrator, then such further payments shall be made; and (ii) if a further payment as described above is not economically feasible in the judgment of the Claims Administrator, then such amount shall be donated to the National Consumer Law Center.

5.      In the event that a further pro rata distribution to Authorized Claimants (other than those Authorized Claimants who did not cash or redeem their checks) is made pursuant to the above Clause E.4(2)(b)(i), the amount of any checks from that further pro rata distribution that remain unclaimed, uncashed, or otherwise not redeemed after one hundred eighty (180) days from the date of such checks shall be donated to the National Consumer Law Center.

## F.  Attorneys' Fees, Expenses, and Costs

1.      Class Counsel and Class Representatives shall request attorneys' fees and costs, including Class Counsel's Fees, and service awards, to be paid by Monsanto.  Monsanto will not contest a request for Class Counsel's Fees that do not exceed 25% of the Ceiling Amount. Monsanto will not oppose reasonable service awards, in an amount not to exceed $5,000 each, for the Class Representatives.  Notwithstanding the foregoing, the amount of Class Counsel's Fees and service awards to Class Representatives awarded by the Court is within the Court's discretion, and the amount awarded by the Court shall have no impact on the validity of this Agreement.

2.      The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing years of labor and resources into gaining relief for the Settlement Class without guarantee of return. The Parties recognize also that litigation pursued in the Related Actions contributed significantly to bringing about the mediation in this matter and this Agreement and is appropriately considered by the Court in assessing the reasonableness of Class Counsel's Fees and Expenses.

3.      Monsanto shall pay to Class Counsel the amount of Class Counsel's Fees and Expenses awarded by the Court within twenty-one (21) calendar days after the Effective Date.

## G.  Retention of Claims Administrator

Monsanto shall retain the Claims Administrator to effect Class Notice and administration. The Claims Administrator shall assist with various administrative tasks, including, without limitation:

1.      arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

2. answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

3. receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

4. establishing a Settlement Website;

5. establishing and staffing a toll-free informational telephone number for Class Members;

6. receiving and processing Claims for Relief and distributing payments to Authorized Claimants; and

7. otherwise assisting with administration of the Agreement.

## H. Timing

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, in the Class Notice, on the Settlement Website, and on the front of the Claim Form.

## I. Procedure

1. Class Notice will be designed to meet the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and due process. Class Notice shall include print and nationwide digital publication.

2. All Claims for Relief must be submitted with a Claim Form and received by the Claims Administrator.

3. The Claim Form will be available on the Settlement Website. The Claim Form will be available to fill out and submit online, for download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Class Members may submit their completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, and on or before the Claims Deadline.

4. The Claim Form must include either valid proof of purchase or, subject to the limitations set forth below, an affirmation of the identity and quantity of the Products purchased. All Claim Forms must include:

a. Class Member name, address, email address, and telephone number;

b. identification of the quantity and type of Product(s) the Class Member purchased;

c. the Retailer and location (city and state) where the Products were purchased; and

d. the approximate date(s) or date ranges on or during which the Product or Products were purchased.

5. The Claims Administrator shall retain sole discretion in accepting or rejecting Claim Forms.

6.     Claims for Relief that are based only on an affirmation (i.e., that do not include valid proof of purchase) shall be limited to a maximum allowance (the "Maximum Allowance") of one (1) Product for each year or partial year (e.g., if the Class Period is five (5) years and three (3) months, this shall be treated as six (6) years for purposes of calculating the Maximum Allowance) of the Class Period (the number of years for each Class Member being determined by the state of that Class Member's purchases as set forth in the definition of Class Period above) with the exception of Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate.  Claims for Relief for 1 gal. Roundup® Weed and Grass Killer Super Concentrate, 2.5 gal. Roundup® Pro Concentrate, and/or 2.5 gal. HDX® Weed & Grass Killer Concentrate will require valid proof of purchase.

7.     Claims for Relief based on a valid proof of purchase are not subject to the Maximum Allowance, but for such Claims for Relief, it shall be in the Claims Administrator's discretion to determine whether the proof of purchase provided is genuine and sufficient.  The Claims Administrator may, at its discretion, require a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient.  If the Claims Administrator is not satisfied with the proof of purchase provided, it may, in its discretion, deny or reduce the Claim for Relief.

8.     Monsanto shall fund, and the Claims Administrator shall pay out, approved Claims for Relief in accordance with the terms of this Agreement commencing sixty (60) calendar days after the Effective Date or as otherwise ordered by the Court.

9.     Class Members who do not submit a Claim for Relief or opt out (i.e., do nothing) will be subject to this Agreement and all of its terms, including, but not limited to, the releases, and will receive no payment.

### J.     Opt-Out Procedure

1.     Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website, or request from the Claims Administrator, an Opt-Out Form, which form shall be created by the Claims Administrator, and Class Members must complete and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, postmarked no later than one hundred twenty (120) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order (the "Opt-Out Deadline").

2.     The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

3.     The written request to opt out must contain the Class Member's printed name, address, telephone number, and date of birth, and it must contain the dated personal signature of the Class Member seeking to exclude himself or herself from the Agreement.

4.     The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including promptly providing Class Counsel and counsel for Monsanto with copies of same.

### K. Procedures for Objecting to the Settlement

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1.     *Written Objection Required.*  Any objection to the Agreement must be in writing, filed with the Court, and with a copy served on Class Counsel and counsel for Monsanto at the addresses set forth in the Class Notice and in Miscellaneous Provision Paragraph R.2 below, by the Objection Deadline.

2.     *Form of Written Objection.*  Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member and his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection (the "Objection").

3.     *Authorization of Objections Filed by Attorneys Representing Objectors.*  Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must either sign the Objection himself or herself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4.     *Effect of Both Opt-Out and Objection.*  If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus to be ineligible to object.  However, any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

### L. Release by Class Members

1.     Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged, and covenanted not to sue, the Released Parties from any and all Claims (with the exception of Personal Injury Claims), whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against any Released Party arising out of or related in any way to:

     a.  any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate (whether or not such statement or alleged omission regarding an ingredient or component thereof is made specifically with regard to the Products, with regard to the ingredient or component thereof separately, or with regard to other products), or any scientific claims or debate regarding the same;

     b.  any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any

other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same; or

    c.   any other alleged economic loss or injury (but not personal injury) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

Collectively, the foregoing are "Released Claims." For avoidance of doubt, this release does not release any Personal Injury Claims. To the extent that any action or proceeding includes both Personal Injury Claims and Claims that would otherwise be released by this Agreement, the Personal Injury Claims will not be deemed released, but the other Claims will be released. Similarly, to the extent that any Class Member asserts a cause of action or other Claim that would otherwise fall within the scope of this release, but asserts the right to recover both damages caused by personal injury and some other type of damages or relief (for example, but not limited to, economic or statutory damages), that cause of action or Claim will survive this release only to the extent of damages caused by personal injury. For further avoidance of doubt, this release shall apply to Claims arising from, resulting from, or in any way relating to or in connection with a Class Member's purchase or use of the Products in the past, present, or future.

    2.     Upon the Effective Date, each of the Class Members shall be deemed to acknowledge and agree that the releases set forth in this Agreement are irrevocable and unconditional, inure to the benefit of Monsanto and all other Released Persons (which are intended third-party beneficiaries), and are intended to be construed as broadly as reasonably possible so that the Released Persons shall never be called upon to pay any further sums or expenses or be liable, directly or indirectly, to any person seeking contribution and/or indemnity from the Released Persons, or any of them, by reason of any legal actions brought against them pertaining in any way to, or arising from, or connected with the Released Claims.

    3.     If any part or provision of the releases included in this Agreement is adjudicated to be invalid, illegal, or unenforceable in any jurisdiction, the relevant part or provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, the releases shall be deemed amended to delete herefrom the invalid or unenforceable part or provision, and the releases shall be in full force and effect as so modified. Any such modification or amendment shall apply only to the operation of that part or provision in the particular jurisdiction in which such adjudication was made and shall not affect such part or provision in any other jurisdiction. To the fullest extent permitted by applicable law, the Class Members hereby specifically and expressly waive any provision of law that renders any part or provision of the releases herein invalid, illegal, or unenforceable in any respect.

### M. Release of Plaintiffs

    Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the

Class, and Class Counsel from any and all Claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action and, in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

### N. Section 1542 Waiver

ALL PARTIES ACKNOWLEDGE SECTION 1542 OF THE CALIFORNIA CIVIL CODE. THE CLASS MEMBERS EXPRESSLY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS AVAILABLE TO THEM UNDER THIS STATUTE. CALIFORNIA CIVIL CODE SECTION 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." NOTWITHSTANDING CALIFORNIA CIVIL CODE SECTION 1542 OR ANY OTHER FEDERAL OR STATE STATUTE OR RULE OF LAW OF SIMILAR EFFECT, THIS AGREEMENT SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH AND ALL OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE RELATED TO ANY UNKNOWN OR UNSUSPECTED CLAIMS, LIABILITIES, DEMANDS, OR CAUSES OF ACTION THAT ARE BASED ON, ARISE FROM, OR ARE IN ANY WAY CONNECTED WITH THE ACTION.

### O. Class Action Fairness Act

1. The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement. *See* 28 U.S.C. § 1715.

2. Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court. *See* 28 U.S.C. § 1715(b).

3. The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4. If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Agreement or seeks to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official or, provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

## P. Court Approval

1.      Promptly after executing this Agreement, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for service awards should be granted. As part of the preliminary-approval motion, the Parties will request that the Court certify the Settlement Class provisionally for settlement purposes and formally to appoint Class Counsel. The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2.      A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than one hundred fifty (150) days after the Preliminary Approval Date. Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

3.      Objecting Class Members may appear at the Final Approval Hearing and be heard, subject to the provisions of paragraph K above. The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4.      If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

## Q. No Public Statements and Media or Public Inquiry Plan

1.      Other than as expressly permitted below, the Parties will refrain (directly, or through counsel or third parties) from making any public statements regarding the fact of or the terms of this settlement, absent written agreement signed by both Parties.

2.      In responding to any inquiries from the public media concerning the Action and/or the Agreement, the Plaintiff and Class Counsel will limit their comments to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval" unless a prior written agreement has been signed by both Parties. Nothing in this paragraph shall limit Class

Counsel's ability to communicate privately with a Class Member concerning this Action or the Agreement.

3.      Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

4.      Monsanto shall be permitted to respond to questions from media outlets to provide truthful information regarding the scope of this Agreement and the distinction between this Agreement and other class action settlements entered into by Monsanto.

5.      Prior to filing the motion for preliminary approval, the Parties shall agree on the language of a press release regarding this Agreement.

### R. Miscellaneous Provision

1.      *Entire Agreement*. This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein. This Agreement supersedes any prior agreement between the Parties, including the Term Sheet executed by the Parties.

2.      *Notices Under This Agreement*. All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this Agreement, shall be provided as follows:

| Class Counsel | Monsanto |
| --- | --- |
| Gillian L. Wade<br>Milstein, Jackson, Fairchild & Wade, LLP<br>10990 Wilshire Boulevard, 8th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 396-9600<br>gwade@mjfwlaw.com | John J. Rosenthal<br>Winston & Strawn LLP<br>1901 L St. NW<br>Washington, DC 20036<br>Telephone: (202) 282-5785<br>jrosenthal@winston.com |

4.      *Good Faith*. The Parties acknowledge that each intends to implement the Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

5.      *Binding on Successors*. This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Parties.

6.     *Arm's-Length Negotiations*. The Agreement compromises Claims that are contested, and the Parties agree that the consideration provided to the Settlement Class and other terms of the Agreement were negotiated in good faith and at arm's length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private mediation session with Judge Diane Welsh, an experienced mediator. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application. All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's counsel at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

7.     *Waiver*. The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.     *Modification in Writing Only*. This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

9.     *Headings*. The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

10.     *Governing Law*. This Agreement shall be interpreted, construed, and enforced according to the laws of the State of Delaware, without regard to conflicts of law.

11.     *Continuing Jurisdiction*. After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement-administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

12.     *Agreement Constitutes a Complete Defense*. To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution*. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ Date: June ___, 2021
SCOTT GILMORE

_____ Date: June ___, 2021

SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June ___, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

*John Rosenthal*
_____
BY: John J. Rosnethal on behalf
of Monsanto Company

Date:  June 9, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June __9_, 2021
SCOTT GILMORE

_____ Date: June ___, 2021
SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June ___, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June __, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June \_\_, 2021
SCOTT GILMORE

_____ Date: June 10, 2021
SHERRY HANNA

_____ Date: June \_\_, 2021
PAUL TAYLOR

_____ Date: June \_\_, 2021
JAMES WEEKS

_____ Date: June \_\_, 2021
KRISTY WILLIAMS

_____ Date: June \_\_, 2021
AMANDA BOYETTE

_____ Date: June \_\_, 2021
JULIO EZCURRA

_____ Date: June \_\_, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June \_\_, 2021

_____ Date: June __, 2021
SCOTT GILMORE

_____ Date: June __, 2021
SHERRY HANNA

_____ Date: June __, 2021
PAUL TAYLOR

_____ Date: June __, 2021
JAMES WEEKS

_____ Date: June __, 2021
KRISTY WILLIAMS

_____ Date: June __, 2021
AMANDA BOYETTE

_____ Date: June __, 2021
JULIO EZCURRA

_____ Date: June __, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date: June __, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June __, 2021
SCOTT GILMORE

_____ Date: June __, 2021
SHERRY HANNA

_____ Date: June __, 2021
PAUL TAYLOR

_____ Date: June 9, 2021
JAMES WEEKS

_____ Date: June __, 2021
KRISTY WILLIAMS

_____ Date: June __, 2021
AMANDA BOYETTE

_____ Date: June __, 2021
JULIO EZCURRA

_____ Date: June __, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date: June __, 2021

Page **27** of **31**

_____ Date: June \_\_, 2021
SCOTT GILMORE

_____ Date: June \_\_, 2021
SHERRY HANNA

_____ Date: June \_\_, 2021
PAUL TAYLOR

_____ Date: June \_\_, 2021
JAMES WEEKS

_____ Date: June 9, 2021
KRISTY WILLIAMS

_____ Date: June \_\_, 2021
AMANDA BOYETTE

_____ Date: June \_\_, 2021
JULIO EZCURRA

_____ Date: June \_\_, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date: June \_\_, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____    Date: June ___, 2021
SCOTT GILMORE

_____    Date: June ___, 2021
SHERRY HANNA

_____    Date: June ___, 2021
PAUL TAYLOR

_____    Date: June ___, 2021
JAMES WEEKS

_____    Date: June ___, 2021
KRISTY WILLIAMS

_____    Date: June 10, 2021
AMANDA BOYETTE

_____    Date: June ___, 2021
JULIO EZCURRA

_____    Date: June ___, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

Case 1:20-cv-00175-DAD-SAB Document 24 Filed 06/11/21 Page 25 of 100 2415

_____ Date: June \_\_, 2021
SCOTT GILMORE

_____ Date: June \_\_, 2021
SHERRY HANNA

_____ Date: June \_\_, 2021
PAUL TAYLOR

_____ Date: June \_\_, 2021
JAMES WEEKS

_____ Date: June \_\_, 2021
KRISTY WILLIAMS

_____ Date: June \_\_, 2021
AMANDA BOYETTE

_____ Date: June 10, 2021
JULIO EZCURRA

_____ Date: June \_\_, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June \_\_, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

_____ Date: June ___, 2021
SCOTT GILMORE

_____ Date: June ___, 2021
SHERRY HANNA

_____ Date: June ___, 2021
PAUL TAYLOR

_____ Date: June ___, 2021
JAMES WEEKS

_____ Date: June ___, 2021
KRISTY WILLIAMS

_____ Date: June ___, 2021
AMANDA BOYETTE

_____ Date: June ___, 2021
JULIO EZCURRA

_____ Date: June 9, 2021
ANTHONY JEWELL

THE MONSANTO COMPANY

/s/_____

BY:_____

TITLE:_____

Date:  June ___, 2021

Settlement Agreement in *Gilmore et al. v. Monsanto*

Settlement Agreement in *Gilmore et al. v. Monsanto*

MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP
Gillian L. Wade

_____ Date: June 9, 2021
GILLIAN L. WADE
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024

WINSTON & STRAWN LLP
John J. Rosenthal:

_____ Date: June 9, 2021
JOHN J. ROSENTHAL
1901 L. St. NW
Washington, DC 20036

## **EXHIBIT A**

Products

Roundup® Ready-to-Use Weed & Grass Killer (all sizes, applicators, and varieties)
Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)
Roundup® Ready-to-Use Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Concentrate Poison Ivy Plus Tough Brush Killer (all sizes and varieties)
Roundup® Concentrate Wild Blackberry Plus Vine and Brush Killer (all sizes and varieties)
Roundup® Ready-to-Use Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer (all sizes and varieties)
Roundup® Ready-to-Use Max Control 365 (all sizes and varieties)
Roundup® Concentrate Max Control 365 (all sizes and varieties)
Roundup® Weed & Grass Killer Sure Shot Foam (all sizes and varieties)
Roundup® Precision Gel Weed & Grass Killer (all sizes and varieties)
Roundup® Pro Concentrate (2.5 gal.)
HDX® Weed & Grass Killer Ready-to-Use (all sizes and varieties)
HDX® Weed & Grass Killer Concentrate (all sizes and varieties)
Ace® Ready-to-Use Weed & Grass Killer (all sizes and varieties)
Ace® Weed & Grass Killer Concentrate (all sizes and varieties)

Settlement Agreement in *Gilmore et al. v. Monsanto*

## **EXHIBIT B**

Class Period for Each State/Territory

| State or Territory | Beginning of Class Period |
|---|---|
| Alabama | February 2017 |
| Alaska | February 2017 |
| American Samoa | February 2018 |
| Arizona | February 2017 |
| Arkansas | February 2016 |
| California | August 2015 |
| Colorado | February 2018 |
| Connecticut | February 2016 |
| Delaware | February 2017 |
| District of Columbia | February 2017 |
| Florida | February 2016 |
| Georgia | October 2016 |
| Guam | August 2016 |
| Hawaii | February 2017 |
| Idaho | February 2017 |
| Illinois | February 2017 |
| Indiana | February 2017 |
| Iowa | February 2017 |
| Kansas | December 2015 |
| Kentucky | February 2017 |
| Louisiana | February 2017 |
| Maine | February 2015 |
| Maryland | August 2016 |
| Massachusetts | October 2016 |
| Michigan | October 2014 |
| Minnesota | December 2013 |
| Mississippi | February 2015 |
| Missouri | August 2014 |
| Montana | February 2017 |
| Nebraska | February 2017 |
| Nevada | October 2016 |
| New Hampshire | February 2017 |
| New Jersey | November 2014 |
| New Mexico | February 2017 |
| New York | June 2011 |
| North Carolina | February 2017 |
| North Dakota | February 2015 |

| | |
|---|---|
| Northern Mariana Islands | February 2015 |
| Ohio | February 2017 |
| Oklahoma | November 2015 |
| Oregon | November 2015 |
| Pennsylvania | February 2015 |
| Puerto Rico | December 2019 |
| Rhode Island | February 2017 |
| South Carolina | February 2015 |
| South Dakota | February 2017 |
| Tennessee | February 2017 |
| Texas | March 2016 |
| Utah | February 2016 |
| Vermont | November 2013 |
| Virgin Islands | February 2015 |
| Virginia | September 2016 |
| Washington | February 2017 |
| West Virginia | February 2017 |
| Wisconsin | February 2015 |
| Wyoming | February 2017 |