**WEITZ & LUXENBERG, PC**
Robin L. Greenwald (*pro hac vice*)
700 Broadway
New York, NY 10003
Tel: 212-558-5802
Email: rgreenwald@weitzlux.com

**ANDRUS WAGSTAFF, PC**
Aimee H. Wagstaff
7171 West Alaska Drive
Lakewood, CO 80226
Tel: 303-376-6360
Email: aimee.wagstaff@andruswagstaff.com

**THE MILLER FIRM, LLC**
Michael J. Miller (*pro hac vice*)
108 Railroad Ave
Orange, VA 22960
Tel: 540-672-4224
Email: mmiller@millerfirmllc.com

*Co-Lead Counsel for Plaintiffs*
*in MDL No. 2741*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: *ALL ACTIONS* | **MOTION TO ESTABLISH ROUNDUP COMMON BENEFIT TRUST ACCOUNT AND TO APPOINT FUND ADMINISTRATOR** [1] |
| | Re: Dkt. No. 12394 |

///

///

**MOTION TO ESTABLISH ROUNDUP COMMON BENEFIT TRUST ACCOUNT AND TO APPOINT FUND ADMINISTRATOR**

Co-Lead Counsel seeks the Court's approval to establish the Roundup Common Benefit Trust Account (the "Fund") created through the trust agreement (the "QSF Agreement") attached hereto as Exhibit "A" and in accordance with Section 468B of the Internal Revenue Code, the Treasury Regulations promulgated thereunder, and such administrative announcements, notices, and information releases as shall be published by the Internal Revenue Service from time to time. Co-Lead Counsel also seeks the appointment of Postlethwaite & Netterville ("P&N") as Administrator of the Fund. Co-Lead Counsel respectfully states the following:

1. The Defendant shall pay the holdback percentage for the common benefit assessment ordered by the Court into the Fund as directed (the "Proceeds"). The Proceeds shall be paid directly into the Fund, which qualifies as a qualified settlement fund as defined in I.R.C. § 468B and the Regulations thereunder. In the event settlement awards for MDL plaintiffs have previously been paid by the Defendant and the holdback percentage was not withheld by the Defendant, counsel for such MDL plaintiffs shall pay the holdback percentage into the Fund.

2. The Fund shall be a Qualified Settlement Fund ("QSF") as described in Treas. Reg. § 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court. The principal in the Fund shall not be distributed until and only by further order(s) of the Court.

3. This Court has jurisdiction over this matter under Treas. Reg. § 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority."

4. Co-Lead Counsel requests that the Court approve the appointment of Western Alliance

Bank as the escrow agent of the Fund ("Escrow Agent") and approve the appointment of Postlethwaite & Netterville, 8550 United Plaza, Blvd. Suite 1001, Baton Rouge, LA 70809, ("P&N"), as the "Administrator" of the Fund (as a "qualified settlement fund") within the meaning of section 1.468B-2(k)(3) of the Regulations ("Fund Administrator"), to administer the Fund.

5.  The Fund Administrator and/or its attorneys shall be indemnified and held harmless against reasonable expenses, costs and fees (including attorney fees), judgment, awards, and liabilities of all kinds incurred by the Fund Administrator from any and all claims made by any person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund, except to the extent that it is finally determined by this Court that the Fund Administrator and/or its attorneys was/were negligent or acted with willful misconduct in connection with the administration of this Fund.  Pursuant to Treas. Reg. § 1.468B-1(c)(1), the United States District Court, Northern District of California, shall exercise continuing jurisdiction over the Fund and shall be the designated venue by operation of law for any and all disputes which may arise related to the Fund, the Fund's administration, and any disbursements and/or payments therefrom.

6.  Co-Lead Counsel requests that no bond be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be invested by the Fund Administrator in: (a) any obligations of, or any obligation guaranteed as to principal and interest by, the United States of America or any agency or instrumentality thereof; or (b) U.S. dollar denominated deposit accounts with domestic commercial or national banks that have a short term issuer rating on the date of purchase of "A-1" or better by S&P or "Prime-1" or better by Moody's and maturing no more than 360 days after the date of purchase (provided that ratings on holding companies are not considered as the rating of the bank); or (c) money market accounts or money market funds registered under the Federal Investment Company Act of 1940, whose shares are

registered under the Securities Act, and rated "AAAm" or "AAAm-G" or better by S&P, and "Aaa," "Aa1" or "Aa2" if rated by Moody's, including any mutual fund for which the Fund Administrator or an affiliate of the Fund Administrator serves as investment manager, administrator, shareholder servicing agent, and/or custodian. Any investment losses realized by investment of the Fund or any portion thereof shall be charged to the Fund. To the extent the Fund Administrator invests any funds in the manner provided for in this paragraph, Co-Lead Counsel, Defendant and Fund Administrator shall not be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment). Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts. In no instance will securities held pursuant to this agreement be lent or hypothecated.  The Escrow Agent shall be responsible for following the investment requirements of this paragraph, pursuant to the instructions of the Fund Administrator. Exclusively by future orders of the Court, upon receipt of directions to distribute funds, the Fund Administrator may direct the Escrow Agent to liquidate appropriate Fund investments and place the funds in an FDIC-insured demand deposit account established with the Escrow Agent consistent with subparagraphs 6(c) above, which shall be a zero-balance account used solely for the purpose of making distributions from the Fund.

7.   In some circumstances, Participating Counsel may elect to place all or a portion of their contingent legal fees into one of several types of tax-advantaged investments.  Similar to a structured settlement annuity for an injured claimant, under certain conditions, Plaintiffs' attorneys have the ability to defer fees until a later taxable year.[1]  To facilitate attorney fee structure(s), if

---

[1] *See Childs v. Commissioner,* 103 T.C. 634 (1994), *aff'd,* 89 F.3d 856 (11th Cir. 1996).

any, the Fund, by and through the Fund Administrator, may purchase and assign any attorney's fees, whether "qualified"[2] or "non-qualified"[3]. Any "qualified" structured settlement shall be issued by a life insurance company that holds an issuer credit rating equivalent to a National Association of Insurance Commissioners NAIC 1 designation.

8.  Upon request, the Fund Administrator will prepare and deliver quarterly Fund Statements ("Statements"). The Statements shall include a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the Statement no later than ten (10) business days following a request therefore.

9.  Any disbursement or payment from the Fund to Participating Counsel shall be by future orders of the Court. As related to the aforementioned orders, the Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document provided to the Fund Administrator and in the Fund Administrator's reasonable judgement believed to be genuine and sufficient. By way of example, this may include but is not limited to, wire instructions, IRS Form W-9, Fee Committee communications, payment instructions, fee deferment instructions, and the like. In conjunction with and appurtenant to any future orders of the Court, should the Fund Administrator receive any communication by electronic mail, the Fund Administrator shall verify the authenticity of the electronic mail by verbal confirmation from Co-Lead Counsel.

10.  Upon completion of all Fund agreements and final distribution of all monies to be

---

[2] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

[3] A non-qualified assignment does not rely upon nor must it comply with Internal Revenue Code Section 104 and/or 130 to effect such assignment. See P.L.R. 200836019.

paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

11. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund upon the execution of an order by the Court establishing the Fund.

**WHEREFORE**, Co-Lead Counsel respectfully requests that the Court enter an Order:

1. Establishing said Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1.468B-1(c)(1);

2. Appointing P&N as the Fund Administrator pursuant to the terms, conditions and restrictions of this Motion and the QSF Agreement; and granting the Fund Administrator the authority to conduct any and all activities necessary to administer this Fund as described in this Motion and the QSF Agreement;

3. Authorizing the Fund to effect qualified or non-qualified assignments of any resulting structured settlement liability or deferred compensation agreement as directed in writing by Participating Counsel;

4. Authorizing the Fund Administrator to distribute all funds according to further order(s) of the Court, including the use of structured attorney fees; and

5. Authorizing the Fund Administrator, upon completion and final distribution of all monies paid into the Fund, to take appropriate steps to wind down the fund and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

Dated: September 2, 2021                    Respectfully submitted:

*/s/ Robin Greenwald*

**ON BEHALF OF CO-LEAD COUNSEL**

5
**MOTION TO ESTABLISH ROUNDUP COMMON BENEFIT TRUST ACCOUNT AND TO APPOINT FUND ADMINISTRATOR**