## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE: ROUNDUP PRODUCTS LIABILITY          Case No. 16-MD-2741-VC
LITIGATION

THIS DOCUMENT RELATES TO

Bundy v. Monsanto, 20-cv-06345-VC

_____/

### PLAINTIFF, ROBERT BUNDY'S REPLY TO MONSANTO'S MEMORANDUM IN OPPOSITION TO ROBERT BUNDY'S MOTION FOR LEAVE TO AMEND COMPLAINT TO JOIN ADDITIONAL PARTY DEFENDANT, AND FOR REMAND DUE TO A LACK OF DIVERSITY

COMES NOW, Plaintiff, Robert Bundy, by and through his undersigned counsel, and

files this Reply to Monsanto's Memorandum in Opposition to Robert Bundy's Motion for Leave

to Amend Complaint to Join Additional Party Defendant, and for Remand Due to a Lack of

Diversity, and would state:

**I.      Introduction and brief facts.**

This case involves literally thousands of individual lawsuits by individuals who used the

"Roundup" weed killing product manufactured by Defendant, Monsanto Co. The claimants have

suffered from lymphoma as a result of contact with the "Roundup" product. Plaintiff, Robert

Bundy, owned a landscaping business. Every day for over 6 years, he sprayed Roundup as part

of his business. Like many, if not all, of the other claimants in the Roundup litigation, he was

diagnosed with lymphoma. Robert Bundy filed suit in the Circuit Court in and for Sarasota

County, Florida. The lawsuit was removed to Federal Court based on diversity jurisdiction.

Thereafter, the case was consolidated with the other Roundup cases, and was joined as part of

the  Court's "multidistrict lawsuit."

Plaintiff identified M&W Supply, Inc. ("M&W Supply") as the party responsible for

selling to Plaintiff much if not most of the Roundup Plaintiff was exposed to. Plaintiff sought

01332383-1                                    1

leave of the Court to amend his Complaint to 1) join M&W Supply as a party defendant, and 2) raise claims for strict liability against M&W Supply for distributing/selling an inherently dangerous product. The Plaintiff further argued that, upon the joinder of M&W Supply, a Florida for profit corporation, as a party Defendant, diversity jurisdiction will no longer exist, such that the case must be remanded back to the Circuit Court in and for Sarasota County, Florida.

Monsanto has filed its Memorandum in Opposition to Robert Bundy's Motion for Leave to Amend Complaint to Join Additional Party Defendant, and for Remand Due to a Lack of Diversity. In it, Monsanto claims that joinder of M&W Supply is improper due to its having been dissolved, and that, as a dissolved corporation, its joinder does not destroy diversity jurisdiction. In support of this argument, Monsanto has cited generalized case law on the relative burdens associated with diversity and removal. As will be discussed below, Monsanto has simply ignored Federal case law authority which is directly on point and undermines its arguments.

**II.     Discussion.**

Monsanto's substantive argument against diversity can be boiled down to the following themes:

1.      M&W Supply, Inc. is a dissolved corporation that, because it was dissolved, isn't a "real" party against whom a judgment can be ***collected***[1] (as will be seen in the

---

[1]      By way of example, Monsanto argues as follows in its memorandum: "In any case, any effort to pursue those claims probably would be a waste of time and resources because it is highly unlikely that M & W Supply would have any assets available — so many years after dissolution — to satisfy any judgment that might be entered on Plaintiffs proposed claims." Monsanto later argues that "given that it was dissolved more than seven years ago — and even if those proposed claims technically are viable, they probably are worthless." At the end of its memorandum, Monsanto repeats this red herring argument, asserting that: "Moreover, there is no concern in this case about prejudicing Plaintiff by requiring him to choose between abandoning his claims against M & W Supply or filing a separate lawsuit against M & W Supply because the chances

case law below, the courts *do not* require the dissolved defendant to be collectible for purposes of the diversity/remand analysis).

2.     Because M&W Supply, Inc. is a dissolved corporation, the Plaintiff's desire to join it is, per se, "bad faith" (an "improper motive") such that remand should be denied.[2]

In support of these arguments, Monsanto cites exclusively generalized caselaw, conspicuously avoiding even a single case actually applying the generalized standards it champions in the context of joinder of a dissolved corporation. Fortunately, there is a line of cases *directly* on this issue, applying the diversity/remand analysis to litigants' rights *against dissolved Florida corporations under the applicable Florida Statute, to wit; Section 607.1405, Florida Statutes*. This line of cases clearly and unquestionably undermines *both* prongs of Monsanto's attack.

Initially, the court in <u>Samples v. Conoco, Inc.</u>, 165 F. Supp. 2d 1303, 1319-20 (N.D. Fla. 2001), engaged in the following analysis of the issue:

> Undisputably, Florida law permits an aggrieved party to sue a dissolved corporation. See FLA. STAT. ANN. § 607.1405(2)(e) (West 2001); <u>Ron's Quality Towing, Inc. v. Southeastern Bank of Florida</u>, 765 So. 2d 134, 135 (Fla. 1st DCA 2000). The question the Court must resolve is whether the fraudulent-joinder doctrine merely requires an intention to obtain a judgment against a defendant or whether it actually requires an intention to collect on a judgment.
>
> In <u>Triggs</u>, the Eleventh Circuit stated: "Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." 154 F.3d at 1291 (emphasis added). As Plaintiffs point out, the Defendants apparently confuse the distinction

---

are slim to none that Plaintiff actually would file such a lawsuit against a corporation that: (a) was dissolved more than seven years ago; and (b) probably does not have any assets to satisfy any judgment that might be entered against it on Plaintiff's proposed claims."

[2]     Interestingly, Monsanto, in the text of its Memorandum, argues that "the motion fails to inform this Court that M & W supply is a dissolved corporation." Later, in a footnote in its Memorandum, Monsanto acknowledges that in the caption and the Paragraph of the proposed Second Amended Complaint introducing M & W Supply, specific reference is made to it being a dissolved corporation. Nothing has been hidden here. As will be discussed below, the fact that M & W Supply is dissolved has *no bearing whatsoever* on the amendment, diversity, or remand analysis. Monsanto is making much ado about absolutely nothing.

between an intention to pursue or obtain a judgment versus an intention to collect on a judgment. All that is required is a real intention to obtain a judgment against the non-diverse defendant as long as the potential for joint liability exists. As noted by the Supreme Court:

> The motive of the plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right. Hence, the fact that the company is rich and [the employee] poor does not affect the case.

> . . . On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied.

Chicago Rock Island & Pac. Ry. Co. v. Schwyhart, 227 U.S. 184, 193, 57 L. Ed. 473, 33 S. Ct. 250 --94, 227 U.S. 184, 33 S. Ct. 250, 251, 57 L. Ed. 473 (1913) (citation omitted and emphasis added); accord Chicago Rock Island & Pac. Ry. Co. v. Dowell, 229 U.S. 102, 113, 57 L. Ed. 1090, 33 S. Ct. 684--14, 229 U.S. 102, 33 S. Ct. 684, 686, 57 L. Ed. 1090 (1913).

When viewed in a light most favorable to the Plaintiffs, the Court cannot say Plaintiffs fraudulently joined Escambia Treating. As master of the complaint, Plaintiffs have every right to pursue a joint judgment against Conoco, Agrico, and Escambia Treating. A contrary result would violate the text and spirit of the fraudulent-joinder doctrine. So long as Plaintiffs' complaint states a cause of action against Escambia Treating, and so long as Plaintiffs intend to obtain a judgment against Escambia Treating, the Plaintiffs have a right to select the forum, to elect whether to sue joint tortfeasors, and to prosecute their own suit in their own way to a final determination. See Crowe, 113 F.3d at 1538; see also Storr Office Supply Div. v. Radar Bus. Sys., 832 F. Supp. 154, 157 (E.D.N.C. 1993) (permitting a plaintiff to maintain an action in state court against a non-diverse, dissolved corporation); Delatte v. Zurich Ins. Co., 683 F. Supp. 1062, 1063--64 (M.D. La. 1988) (same); Oliver v. Am. Motors Corp., 616 F. Supp. 714, 716--17 (E.D. Va. 1985) (same); Nosonowitz v. Allegheny Beverage Corp., 463 F. Supp. 162, 164 (S.D.N.Y. 1978) (same). Accordingly, the Court lacks diversity jurisdiction over Plaintiffs' lawsuit.

Citing to, and relying on, the Samples decision, the court in Grguric v. Little Mermaid S., Inc.,

No. 07-81219-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 30386, at *5-8 (S.D. Fla. Apr.

10, 2008), held as follows:

> A dissolved corporation may be sued if so permitted under the law of the state of incorporation. Fed. R. Civ. P. 17(b). "In particular, state corporate law determines the suability of a dissolved corporation . . .." Ripalda v. Am. Operations Corp., 298 U.S. App. D.C. 189, 977 F.2d 1464, 1468 (D.C. Cir. 1992) (citing Okla. Natural Gas Co. v. Oklahoma, 273 U.S. 257, 260, 47 S. Ct. 391, 71 L. Ed. 634 (1927) (capacity of dissolved corporation depends upon the corporate laws enacted by the state that brought the corporation into being)). Little Mermaid South is a Florida corporation and "[u]ndisputably, Florida law permits an aggrieved party to sue a dissolved corporation."

*Samples v. Conoco, Inc.*, 165 F. Supp. 2d 1303, 1319 (N.D. Fla. 2001) (citing Fla. Stat. § 607.1405(2)(e) (dissolution of corporation does not prevent commencement of proceeding against it)); *Ron's Quality Towing, Inc. v. Southeastern Bank of Florida*, 765 So.2d 134, 135 (Fla. 1st DCA 2000)); see also, Fla. Stat. § 607.1407 (unknown claims against dissolved corporation barred unless commenced within 4 years). Furthermore, Florida Statute section 607.1405 provides that a "dissolved corporation continues its corporate existence but may not carry on any business except" for the provided enumerated provisions. Fla. Stat. § 607.1405(1).

In *Samples*, the Northern District of Florida found that a dissolved corporation was not fraudulently joined as a dissolved corporation may be sued, the plaintiffs intended to obtain a judgment against it, and the defendants did not dispute that there was a colorable claim against the corporation. *Samples*, 165 F. Supp. 2d at 1319-20. The court therefore held that diversity jurisdiction did not exist, as the dissolved corporation was a non-diverse defendant. Id. at 1320. Also on point, the Court of Appeals for the D.C. Circuit, though applying Delaware law, has indicated that when a state statute provides for a dissolved corporation to continue to exist for purposes of prosecuting and defending suits for three years, to hold that its citizenship in that state does not persist for purposes of diversity jurisdiction would "frustrate that State's purpose of facilitating the resolution of claims by and against the corporation and would serve no federal interest." *Ripalda*, 977 F.2d at 1469. This Court finds that logic convincing. Moreover, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. Burns, 31 F.3d at 1095. Therefore, though the amount in controversy in the instant action exceeds the jurisdictional minimum, there is not complete diversity as Defendant Little Mermaid South is a Florida citizen for purposes of diversity jurisdiction. See e.g., *VCR Jobs Corp. v. Heartland Commc'ns Internet Servs. Inc.*, 2008 U.S. Dist. LEXIS 2546, 2008 WL 145163 (W.D. Ky. Jan. 14, 2008) (finding that though the corporation was dissolved at time the suit was filed, it was still citizen of Illinois as state law provided for its continuing existence to sue and be sued, thus no diversity jurisdiction); *R.J. Reynolds Tobacco Co. v. Johns Manville Intern., Inc.*, 2001 WL 823604 (M.D.N.C. July 3, 2001) (holding that as a dissolved corporation was not immune to suit under state law, it could be considered a North Carolina citizen for purposes of diversity and thus diversity jurisdiction destroyed); *Oliver v. Am. Motors Corp.*, 616 F. Supp. 714, 716-17 (E.D. Va. 1985) (finding lack of diversity jurisdiction where defendants included non-diverse dissolved corporation).

Accordingly, for the aforementioned reasons, it is ORDERED AND ADJUDGED as follows:

1) The above-styled case is hereby REMANDED to the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida;

Here again, the court affirmed that 1) Florida law permits lawsuits to be maintained against dissolved Florida corporations, and 2) the focus of a diversity/remand analysis is on whether a ***judgment*** can be obtained against the dissolved corporation, ***not*** whether that judgment can be ***collected*** on.

01332383-1                                          5

In keeping with the above-described analysis, the court in <u>Brown v. Sunrise Senior Living Servs.</u>, No. 09-60759-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 71943, at *3-7 (S.D. Fla. Aug. 7, 2009), engaged in the following analysis of the issue:

> Plaintiff filed a second Motion To Remand alleging complete diversity does not exist between the Parties. Federal courts are courts of limited jurisdiction. See <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). "While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim." <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, statutes regulating federal jurisdiction on removal are strictly construed. See <u>Shamrock Oil & Gas Co. v. Sheets</u>, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). In the Eleventh Circuit, cases are remanded when federal jurisdiction is not absolutely clear. <u>Burns</u>, 31 F.3d at 1095. ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). The burden rests on the removing party to show that federal jurisdiction exists and that removal was proper.[3] <u>Leonard v. Enterprise Rent-a-Car</u>, 279 F.3d 967, 972 (11th Cir. 2002).
>
> Under § 1332(a), diversity jurisdiction only exists where there is complete diversity of citizenship; that is, all plaintiffs must be diverse from all defendants. <u>Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 292 F.3d 1334, 1337 (11th Cir. 2002). Here, Plaintiff argues that Defendant Sunrise Home Health Services ("SHHS") is a Florida corporation, and because Plaintiff is also a Florida citizen, there is not complete diversity. Incomplete diversity is a jurisdictional defect, and it is not subject to the 30-day removal period. 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") (emphasis added). Defendants respond that diversity is not destroyed by SHHS for two reasons. ***First, they assert that SHHS is not a proper party because it is a dissolved corporation. DE 1, P 7. Second, Defendants contend that SHHS is fraudulently joined in this action because no viable cause of action exists against it, or, alternatively, that it is a fictitious entity in no way affiliated with the co-Defendants. DE 20. As explained below, the Court is unpersuaded by Defendants' varied attempts to establish SHHS as an improper party to this action***.
>
> In their Notice Of Removal (DE 1), Defendants Sunrise Senior Living Services, Inc. d/b/a Horizon Club and SPTMRT Properties Trust do not list the state of incorporation or principal place of business of SHHS, but plead it as "a defunct corporation that was administratively dissolved in 2008." DE 1, P 7. The contention that SHHS is a dissolved corporation does not thereby render it a fraudulent or irrelevant party here, because a dissolved corporation may still be sued in Florida. Fed. R. Civ. P. 17(b); <u>Samples v. Conoco, Inc.</u>, 165 F. Supp. 2d 1303, 1319 (N.D. Fla. 2001)

---

[3]     In its memorandum in opposition, Monsanto turns these burdens on their heads, casting aspersions as to the Plaintiff's motives and suggesting that the Plaintiff bears the burden of demonstrating otherwise. This approach is, to be blunt, precisely backwards.

("Undisputably, Florida law permits an aggrieved party to sue a dissolved corporation.") (citing Fla. Stat. § 607.1405(2)(e)).

Defendants also argue that the removal is proper because SHHS is fraudulently joined in this action. A non-diverse party who is fraudulently joined does not destroy diversity. 28 U.S.C. § 1441(b). Fraudulent joinder exists in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; or (3) when a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1286 (11th Cir. 1998). ***The removing party bears the burden of proving the existence of fraudulent joinder.*** Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). And in determining whether a party has been fraudulently joined, factual allegations are viewed in the light most favorable to the plaintiff. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). ***If a mere possibility exists that a state court would find that the complaint states a cause of action against any one of the non-diverse defendants, joinder is proper and the case must be remanded to state court.*** Triggs, 154 F.3d at 1287.

Here, Defendants argue that the Complaint lacks any allegations that Plaintiff could state a cause of action against SHHS, but that is not entirely accurate. In her Complaint, Plaintiff alleges that SHHS was responsible for the operation, care, and maintenance of the subject premises, and that it was negligent in creating and failing to correct a dangerous situation: a slippery floor. DE 1, Ex. B, P 7. This is the same slippery floor that allegedly caused Plaintiff's injury. DE 1, Ex. B, P 11. As the injury at issue took place in Florida, Florida substantive law applies. Admiral Ins. Co. v. Feit Mgmt. Co., 321 F.3d 1326, 1328 (11th Cir. 2003). For the Plaintiff to prevail on her negligence claim, she must prove four elements: (1) Defendant owed her a legal duty; (2) Defendant breached that duty; (3) Defendant's breach was the actual and proximate cause of her injury; and (4) Plaintiff sustained actual damages from the injury. Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008). Plaintiff's allegations include everything she would need to prevail on her negligence claim: duty, breach, causation, and damages. Therefore, her allegations are sufficient to state a claim against SHHS. (Emphasis added).

See also, Vincent v. De Maria Porsche-Audi, Inc., 532 F. Supp. 1035, 1038-39 (S.D. Fla. 1982)(performing the same analysis under the predecessor Florida statute, Section 607.297).

The foregoing authorities directly undermine both Monsanto's substantive argument concerning M&W Supply's dissolution, as well as its claim of "fraudulent" joinder. While this argument resolves this issue against Monsanto alone, it should be pointed out that it is beyond the Court at this time in the context of these pleadings to assume that M&W Supply has no assets or insurance policies which would allow for recovery of a Judgment. What remains is

Monsanto's procedural argument, to wit; its suggestion that the Plaintiff bore the burden of pleading around M&W Supply's potential statute of limitations affirmative defense. Monsanto argues this issue as both its *Second* and *Fifth* arguments against remand.   Specifically, Monsanto argues as follows:

> *Second*, Plaintiff has not addressed any statutes of limitations and does not contend that his proposed claims against M & W Supply would be time-barred if amendment is denied here. Therefore, this factor also does not support Plaintiff's request that the Court grant leave to amend. *See San Jose Neurospine*, 2016 WL 7242139, at *9 ("Plaintiff has not addressed any statutes of limitations, nor has Plaintiff suggested that any claims against [the non-diverse defendant added in the amended complaint] would be time-barred. This factor does not support allowing amendment"); Boon, 229 F. Supp. 2d at 1023 ("Plaintiffs do not argue that a new action against [the proposed new non-diverse defendant] would be time-barred. Accordingly, this factor does not support allowing the amendment."); *Clinco*, 41 F. Supp. 2d at 1083 ("[Plaintiff] does not argue that a new action against [the non-diverse defendant added in the amended complaint] would be time-barred. Therefore, this factor does not support amendment.").
>
> * * *
>
> *Fifth*, it is doubtful that Plaintiff has any viable claims against M & W Supply — given that it was dissolved more than seven years ago — and even if those proposed claims technically are viable, they probably are worthless. Under Florida law, claims against a dissolved corporation (like Plaintiffs' proposed claims against M & W Supply) are barred if the claims have not been filed within four years after the corporation provided notice of its dissolution. *See* Florida Statutes § 607.1407(2).

Here again, Monsanto blatantly attempts to flip its burden onto the Plaintiff.  The statute of limitations is an ***affirmative defense*** which belongs to M&W Supply in the first instance.  Even if Monsanto could argue M&W Supply's as-yet unpled statute of limitations affirmative defense, it can not be resolved at this pleading stage in any event, as its resolution would require the Court to 1) go outside the four corners of the Second Amended Complaint, and 2) resolve inferences against remand.  Neither of these avenues are available under the authorities cited above.

Substantively, this is what §607.1407(2) actually provides:

(2) If the dissolved corporation complies with paragraph (1)(a) or paragraph (1)(b), unless sooner barred by another statute limiting actions, the claim of each of the following claimants with known or other claims is barred unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within 4 years after the date of filing the notice with the department or the date of the second consecutive weekly publication, as applicable:

(a) A claimant who did not receive written notice under s. 607.1406.

(b) A claimant whose claim was timely sent to the dissolved corporation but on which no action was taken by the dissolved corporation.

(c) A claimant whose claim is not a known claim under s. 607.1406(5).

The obvious questions presented by the above-cited requirements of §607.1407(2) include:

1)   did M&W comply with paragraph (1)(a) of Section 607.1407(1)(a) during its dissolution?

2)   did M&W comply with paragraph (1)(b) of Section 607.1407(1)(a) during its dissolution?

3)   did the Plaintiff receive written notice under s. 607.1406?

4)   was the Plaintiff send a claim to M&W Supply, but on which no action was taken by the dissolved corporation?

5)   was the Plaintiff's claim a known claim under s. 607.1406(5).

***None*** of these answers are found in the Second Amended Complaint.  The Second Amended Complaint does expressly allege, in paragraph 18, that the Plaintiff "first had notice that Roundup was the cause of his Lymphoma on or about April 2, 2020 when he was provided a report by Dr. Tony S. Quang."  Monsanto argues that the Plaintiff should have pled around M&W Supply's possible statute of limitations defense, suggesting in its memorandum that "Plaintiff has not alleged any basis for proceeding against that dissolved corporation, such as lack of adequate notice."  Here again, Monsanto is engaging in its clearly preferred practice of attempting to flip its burden onto the Plaintiff.  In doing so, Monsanto asks this Court to simply assume that all of the conditions giving rise to the 4 year statute of limitations were satisfied and for the Court to ignore the allegations in paragraph 18 of the Second Amended Complaint.  In addition, Monsanto's argument in this regard ignores statute of limitations tolling mechanisms which include, by way of example only, equitable estoppel, equitable tolling, delayed accrual, and waiver.   See e.g., Major League Baseball v. Morsani, 790 So.2d 1071 (Fla. 2001)(concluding that "Equitable estoppel differs from other legal theories that may operate to

deflect the statute of limitations, such as accrual, tolling, equitable tolling, and waiver. Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct."); See also, Ryan v. Lobo De Gonzalez, 921 So.2d 572 (Fla. 2005)(holding that "[t]he doctrine of equitable estoppel applies 'in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.' [internal citation omitted]  We have consistently applied the doctrine to avoid a statute of limitations defense where the parties recognized the basis for the suit but the defendant caused the plaintiff to forebear from acting during the limitations period."); Acoustic Innovations, Inc. v. Schafer, 2008 WL 441631 (Fla. 4th DCA 2008)(holding that "the doctrine of equitable estoppel...has also been recognized as a valid defense to a limitations-period defense.... where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed."); Schultz v. Amica Mut. Ins. Co., 778 So.2d 402 (Fla. 4th DCA 2001); McCort v. Southland Corp., 543 So.2d 232 (Fla. 1st DCA 1988)(holding that an employer and its carrier are estopped from invoking statute of limitations defense when their actions have lulled claimant into complacency so that he does not assert his legal rights.).  In closing on this issue, the Plaintiff would remind the Court that this entire analysis is performed with every possible inference to be resolved in favor of remand. Under the authorities cited above, Monsanto's reliance on M&W Supply's possible affirmative defense does nothing to undermine the Plaintiff's right to amend, and for remand.

Finally, Monsanto argues that the Plaintiff was dilatory in seeking to join M&W Supply, and that the delay in doing so justifies the denial of the requested amendment and remand. The Plaintiff is entitled to constantly evaluate its claims and to bring valid causes of action against those persons and entities it has legally recognizable claims. That the Plaintiff decides to do so now, less than one year after filing suit, is well within his rights.  The timing prejudices no one

and is no basis for denying the ability to seek a judgment against the party that sold him

Monsanto's deadly product as Florida law clearly recognizes this claim.  On this point, the

Plaintiff would note the decision in <u>Mudra Int'l. Ltd. Liab. Co. v. Kellwood Co.</u>, No. CV

08-03642 DDP (JCx), 2008 U.S. Dist. LEXIS 126103, at *14-17 (C.D. Cal. Sep. 16, 2008), as

follows:

> 3. Unexplained Delay in Requesting Joinder
>
>      Courts also consider whether the delay between the filing of the initial complaint and the filing of the amended complaint was reasonable. In judging this factor, the court will consider the amount of time between filings, as well as the reason for any delay. See <u>Bakshi v. Bayer Healthcare, LLC</u>, 2007 U.S. Dist. LEXIS 33801, 2007 WL 1232019 *4 (N.D. Cal. 2007). For example, courts have found an amendment timely when a plaintiff received new information as a result of discovery responses, see <u>Palestini</u>, 193 F.R.D. at 658; when a plaintiff sought amendment after a particular action by a defendant, see <u>City of Perth Amboy v. Safeco Ins. Co. of Am.</u>, 539 F. Supp. 2d 742, 747 (D.N.J. 2008) (plaintiff sought leave to amend after the defendant counterclaimed); IBC, 125 F. Supp. 2d at 1012 (plaintiff sought leave to amend after defendants refused to stipulate); ***when a plaintiff sought to add both new relief and a new defendant***, see <u>City of Perth Amboy</u>, 539 F. Supp. 2d at 747; and when a plaintiff had substituted counsel, see <u>Boon</u>, 229 F. Supp. 2d at 1023.
>
>                                  * * *
>
> Kellwood attempts to give this court "reason to doubt [Mudra's] explanation" for the delay. <u>Palestini</u>, 193 F.R.D. at 658. Incorporating by reference its arguments opposing Mudra's first motion for leave to amend, Kellwood first argues that an eight month delay between filing the complaint and first attempting to join these defendants is too long. Additionally, and perhaps more persuasively, Kellwood argues that Mudra's attempt to shift the blame to Kellwood is inappropriate because the Mudra's allegations are based entirely on documents it has had in its possession the entire time.
>
>      The Court did not comment on this factor in its March Order apart from the factor's relationship to the issue of motive, discussed immediately above. The March Order, however, suggested that the Court found Mudra's reason for waiting eight months persuasive. March Order at 6 ***("It is often reasonable, both as a matter of strategy and to promote judicial economy, for a plaintiff to conduct further discovery before seeking to amend its claims or join additional parties."). The Court's analysis has not changed. Accordingly, to the extent Kellwood re-asserts its arguments regarding the timeliness of the first amended complaint, the Court rejects Kellwood's arguments.*** (Emphasis added).

The delay argued by Monsanto is, on its face, reasonable under <u>Mudra</u>.  <u>See also,</u>

<u>Gutierrez-Aniceto v. United Van Lines</u>, 2003 Cal. Super. LEXIS 7375 (Superior Court of

California 2003)(concluding that "[t]hus, a delay similar to that in Lopez has occurred in the

11

present action. In this case, a delay of approximately four months has occurred between removal (on April 26, 2002) and the motion to amend (on September 3, 2002) by adding non-diverse parties. In Lopez, the comparable delay was six months. Id. As the defendants aptly note, plaintiff has had time and opportunity to add CCSF as a party. Plaintiff's unexplained delay favors denying plaintiff's motions to amend and remand, ***but the delay is not so unreasonable as to compel denial of plaintiff's motion to remand***." (Emphasis added)); See also, Camacho v. JLG Indus., Inc., No. SA CV 17-1188-DOC (KESx), 2017 U.S. Dist. LEXIS 189286, at *14 (C.D. Cal. Nov. 15, 2017)(finding a seven month delay to be reasonable). In the end, even assuming that this Court finds the delay to be "unreasonable," this, standing alone, is insufficient to defeat the joinder and remand. See e.g., Camacho v. JLG Indus., Inc., No. SA CV 17-1188-DOC (KESx), 2017 U.S. Dist. LEXIS 189286, at *5 (C.D. Cal. Nov. 15, 2017)("The Ninth Circuit holds that these factors are not of equal weight; specifically, 'delay alone no matter how lengthy is an insufficient ground for denial of leave to amend.'").

## III.   Conclusion.

In sum, the authorities cited above utterly and completely undermine Monsanto's 1) reliance on generalized principles analyzed outside of the context of dissolved Florida corporations, and 2) its effort, at every turn, to flip its burdens onto the Plaintiff. Monsanto ignored caselaw analyzing the diversity/remand analysis in the specific context of dissolved corporations. Bluntly, Monsanto's opposition is meritless. As the court in Vignoli v. Clifton Apartments, Inc., No. 12-24508-CIV-KING/TORRES, 2014 U.S. Dist. LEXIS 188879, at *5 (S.D. Fla. May 16, 2014), noted, "Federal Rule of Civil Procedure 11 is another mechanism by which courts can award costs and attorney's fees where pleadings and motions are frivolous, vexations, or dilatory." The Plaintiff would respectfully request an award of the fees it has incurred correcting Monsanto's misdirections and meritless arguments.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on _____ 2021, and was provided via email to Anthony N. Upshaw, Esq. and Melissa R. Alvarez, Esq., McDermott Will & Emery, LLP 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131 (aupshaw@mwe.com) and (malvarez@mwe.com) and Joe G. Hollingsworth, Esq., Hollingsworth LLP, 1350 I Street N.W., Washington, D.C. 20005 (jhollingsworth@hollingsworthllp.com).

**ICARD, MERRILL, CULLIS, TIMM, FUREN & GINSBURG, P.A.**
2033 Main Street, Suite 600
Postal Drawer 4195
Sarasota, Florida 34230
*(941) 366-8100 - Phone*
*(941) 366-6384 - Fax*

_____
ANTHONY J. MANGANIELLO, III, ESQ.
Florida Bar No. 0052307
*Attorneys for Plaintiff, BUNDY*

01332383-1                                    13