**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Powell v. Monsanto Co.*, 3:20-cv-05623-VC | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY AND LACK OF WARNINGS CAUSATION** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on TBD, in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will move this Court for an order, pursuant to Federal Rule of Civil Procedure 56(c), entering judgment in its favor and against Wave 3 Plaintiff Donnie Leon Powell ("Plaintiff"), on the grounds that there is no genuine issue of material fact as to any claim for relief brought by the Plaintiff, and Monsanto is entitled to summary judgment.

Dated: September 21, 2021            Respectfully submitted,

                                     */s/ Jed P. White*
                                     Jed P. White
                                     Attorney for Defendant Monsanto Company

**Table of Contents**

**Pages**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    PLAINTIFF'S CLAIMS ........................................................................................... 1

II.    LEGAL STANDARD ............................................................................................... 2

III.    ARGUMENT ............................................................................................................. 3

    A.    MONSANTO IS PRESUMPTIVELY NOT LIABLE UNDER TEXAS LAW BECAUSE IT COMPLIED WITH EPA REGULATIONS, AND PLAINTIFF HAS FAILED TO REBUT THE PRESUMPTION. ............................ 3

        1.    Monsanto Is Entitled to a Presumption of No Liability under § 82.008(a) ............................................................................................... 3

        2.    Plaintiff Cannot Rebut the Presumption of Non-Liability ............................ 6

    B.    PLAINTIFF'S FAILURE TO WARN CLAIMS ADDITIONALLY FAIL BECAUSE PLAINTIFF ONLY READ THE ROUNDUP LABEL ONCE, 45 YEARS BEFORE HE STOPPED USING ROUNDUP. .................................................................................................. 12

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 2

*Buckman Co.v. Pltf.'s Legal Comm.*,
    531 U.S. 341 (2000) .................................................................................................. 10

*Cartwright v. Am. Honda Mot. Co., Inc.*,
    No. 9:09-cv-205, 2012 WL 506730 (E.D. Tex. Jan. 18, 2012) .................................. 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................... 2

*Ferens v. John Deere Co.*,
    494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) ......................................... 1

*Garcia v. Wyeth-Ayerst Labs*,
    385 F.3d 961, 963-964 (6th Cir. 2004) ................................................................... 10

*Gen. Motors Corp. v. Saenz on Behalf of Saenz*,
    873 S.W.2d 353 (Tex. 1993) .............................................................................. 12, 14

*Gillespie v. Century Prods. Co.*,
    936 S.W.2d 50 (Tex. App.-San Antonio 1996) ....................................................... 13

*Hardeman v. Monsanto Co.*,
    16-cv-00525, Pretrial Order No. 160, Dkt. 4576 ...................................................... 9

*Kia Mot. Corp. v. Ruiz*,
    432 S.W.3d 865 (Tex. 2014) ...................................................................................... 3

*Lofton v. McNeil Consumer & Spec. Pharms*,
    672 F.3d 372 (5th Cir. 2012) ................................................................................... 11

*Nathan Kimmel, Inc. v. DowElanco*,
    275 F.3d 1199 (9th Cir. 2002) ................................................................................. 10

*Scott v. Dorel Juvenile Grp., Inc.*,
    773 F. Supp. 2d 664, 669-70 (N.D. Tex. 2011) ...................................................... 12

*Shaw v. Trinity Highway Prods, LLC*,
    329 S.W.3d 914 (Tex. App. 2010) ............................................................................. 3

*Toyota Mot. Sales, U.S.A., Inc. v. Reavis*,
    No. 05-19-00075-CV, 2021 WL 2253535 (Tex. App. June 3, 2021) ...................................... 7

*Trenado v. Cooper Tire & Rubber Co.*,
    465 F. App'x 375 (5th Cir. 2012) .................................................................................................. 3

*In re Vioxx Prods. Liab. Litig.*,
    478 F. Supp. 2d 897, 903 (E.D. La. 2007) .................................................................................. 1

*Wells v. SmithKline Beecham Corp.*,
    601 F.3d 375 (5th Cir. 2010) ..................................................................................................... 12

*Wright v. Ford Motor Co.*,
    508 F.3d 263 (5th Cir. 2007) ............................................................................................ 3, 6, 7, 12

**Statutes**

7 U.S.C. § 136(a) .............................................................................................................................. 4

7 U.S.C. § 136(c)(1) ......................................................................................................................... 4

7 U.S.C. § 136 *et seq.* ................................................................................................................... 4, 5

15 U.S.C. §§ 2301, *et seq.* ............................................................................................................... 1

FIFRA ......................................................................................................................................*passim*

Magnuson-Moss Warranty Act ....................................................................................................... 1

Medical Device Act ....................................................................................................................... 10

Tex. Civ. Prac. & Rem. Code § 82.001, *et seq.* ........................................................................... 1, 2

Tex. Civ. Prac. & Rem. Code § 82.007 ......................................................................................... 11

Tex. Civ. Prac. & Rem. Code § 82.007(b)(1) ................................................................................ 11

Tex. Civ. Prac. & Rem. Code § 82.008 ..................................................................................*passim*

Tex. Civ. Prac. & Rem. Code § 82.008(a) ..............................................................................*passim*

Tex. Civ. Prac. & Rem. Code § 82.008(b) ...................................................................................... 6

Tex. Civ. Prac. & Rem. Code § 82.008(b)(1) ........................................................................... 6, 7, 9

Tex. Civ. Prac. & Rem. Code § 82.008(b)(2) ....................................................................... 9, 10, 11

Texas' Product Liability Act ........................................................................................................... 1

**Other Authorities**

40 C.F.R. Part 156 ................................................................................................................ 5

40 C.F.R. § 156.10 ............................................................................................................... 5

Fed. R. Civ. P. 56(a) ............................................................................................................ 2

https://lrl.texas.gov/legis/billsearch/billdetails.cfm?billFileID=63562&from=advancedsearch ............................................................................................................................... 7

https://www.regulations.gov/docket?D=EPA-HQ-OPP-2009-0361 .................................. 6

3
MONSANTO'S MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY AND LACK OF WARNINGS CAUSATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff's claims are all product liability claims as defined by Texas' Product Liability Act, Tex. Civ. Prac. & Rem. Code § 82.001, *et seq*. Texas law, however, provides:

> "a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the **product's formula, labeling, or design** complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm."

Tex. Civ. Prac. & Rem. Code § 82.008 (emphasis added). The statute provides only two methods for rebutting the presumption, but Plaintiff here cannot invoke either. Accordingly, summary judgment is required. Additionally, all of Plaintiff's claims fail for lack of proximate causation because Plaintiff testified he only read the label once in 1975, long before he could – or does – allege Monsanto should have warned about a cancer risk.

**I.   PLAINTIFF'S CLAIMS**

Plaintiff filed his Complaint on July 7, 2020 in the U.S. District Court for the Northern District of Texas. He claims he began using Roundup in 1975 on his owned and leased farms and continued to use the product until his non-Hodgkin's lymphoma ("NHL") diagnosis on June 30, 2020. Declaration of Jed White ("White Decl.") ¶ 1, Ex. 1, ¶ 86). He asserts claims of strict liability design defect and failure to warn (Counts I-II); negligence (Count III); fraud, misrepresentation, and suppression (Count IV); breach of express and implied warranty (Counts V-VI); and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. (Count VII).

All of Plaintiff's claims are governed by Texas' Products Liability Act ("TPLA"), Tex. Civ. Prac. & Rem. Code § 82.001, *et seq*,[1] which defines a "[p]roducts liability action" as "any action

---

[1] Texas substantive law applies because it is the transferor forum. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (for cases, "filed in, or removed to, federal courts across the country and transferred to the MDL court by the Judicial Panel on Multidistrict Litigation" . . . . "the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules") (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)).

against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product **whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories**." § 82.001(2) (emphasis added).

Moreover, all of Plaintiff's claims, regardless of theory, center on allegations that Roundup is defective because Monsanto failed to warn that Roundup could cause cancer. This includes not only Plaintiff's explicit strict liability and negligent failure to warn claims, but also his breach of warranty and fraud claims. This also applies to Plaintiff's design defect claims under any theory, because Plaintiff has neither alleged nor offered evidence of any design defect apart from Roundup's lack of a cancer warning.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of "informing" the Court that there exists the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with evidence to show there is in fact a genuine issue for trial. *Id.* at 323-24. A "complete failure of proof concerning an essential element of the nonmoving party's case" warrants summary judgment and "necessarily renders all other facts immaterial." *Id.* at 323.

---

[2] Plaintiff's Complaint makes a threadbare reference to the Roundup's surfactant, polyethoxylated tallow amine ("POEA"), (White Decl., ¶ 1, Ex. 1, ¶ 9), but he has offered no evidence whatsoever to create a fact question on a design defect related to POEA. Regardless, Texas' statutory presumption of non-liability, discussed *infra*, applies not only to a product's labeling, but also its formulation and design.

Under Texas law, judgment as a matter of law is appropriate when a product liability defendant shows itself entitled to the presumption of non-liability under Tex. Civ. Prac. & Rem. Code § 82.008(a), and the Plaintiff fails to rebut the presumption. *See e.g.*, *Shaw v. Trinity Highway Prods, LLC*, 329 S.W.3d 914, 918 (Tex. App. 2010).

### III.   ARGUMENT

**A.   Monsanto is Presumptively Not Liable Under Texas Law Because it Complied With EPA Regulations, and Plaintiff Has Failed to Rebut the Presumption.**

Section § 82.008(a) of the TPLA provides a presumption of non-liability for product liability defendants who comply with applicable federal law or regulations. *See Wright v. Ford Motor Co.*, 508 F.3d 263, 270 (5th Cir. 2007) (recognizing a presumption of no liability under Section 82.008(a) for a product liability defendant); *Trenado v. Cooper Tire & Rubber Co.*, 465 F. App'x 375, 379-80 (5th Cir. 2012) (recognizing a defendant is entitled to a presumption of no liability if it shows compliance with "mandatory safety standards . . . that governed the product risk that allegedly caused the harm"). The impetus for enacting § 82.008 was "a finding that manufacturers and sellers were being held liable in products liability cases even though the products at issue complied with all applicable federal safety standards." *Kia Mot. Corp. v. Ruiz*, 432 S.W.3d 865, 869 (Tex. 2014). This presumption thus protects a product manufacturer like Monsanto from liability for an injury allegedly caused by some aspect of the ***formulation, labeling, or design*** of a product if Monsanto "establishes that the product's formula, labeling or design ***complied with mandatory safety standards or regulations*** adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm." Tex. Civ. Prac. & Rem. Code § 82.008(a) (emphasis added). If Monsanto is entitled to the presumption, and Plaintiff fails to establish an exception, the Court must grant summary judgment. *See e.g.*, *Shaw*, 329 S.W.3d at 918 (Tex. App. 2010).

1.   <u>Monsanto Is Entitled to a Presumption of No Liability under § 82.008(a)</u>

***First***, Plaintiff's claims against Monsanto, regardless of theory, are squarely within the ambit of § 82.008(a) because the claims relate to "some aspect of the formulation, labeling, or design" of

Roundup. *See e.g.*, White Decl., ¶ 1, Ex. 1, ¶ 1 ("This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendant's negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale" of Roundup).

*Second*, it is undisputed that Roundup's design, formulation, and labeling have been, at all times, subject to mandatory standards and regulations promulgated by the U.S. Environmental Protection Agency ("EPA"). Plaintiff's Complaint itself details the applicable (and extensive) federal regulation of Roundup and glyphosate by the EPA pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*. and its implementing regulations. White Decl., ¶ 1, Ex. 1, ¶¶ 33-38. This framework is indeed mandatory, as no pesticide may be legally sold in the United States unless it is approved by EPA. 7 U.S.C. § 136(a). The initial approval of a pesticide and periodic re-approval, called "registration" and "re-registration," encompass EPA approval of both the pesticide's "complete formula," and "complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use." 7 U.S.C. § 136(c)(1). Accordingly, all pesticide formulation and labeling must be reviewed and approved by EPA. 7 U.S.C. § 136(a).

*Third*, it is undisputed that glyphosate, at all relevant times, has been in compliance with EPA's mandatory registration and review process. EPA first completed its registration and approval of glyphosate in 1974. White Decl., ¶ 2, Ex. 2, p. 12; ¶ 3, Ex. 3, p. 1. In 1993, EPA registered glyphosate again, and again concluded, in its Re-Registration Eligibility Decision ("RED"), that glyphosate was non-carcinogenic. White Decl., ¶ 4, Ex. 4, p. 14. And in 2020, EPA again registered glyphosate after completion of its formal mandated "Glyphosate Registration review" process, concluding in its "Interim Registration Review Decision" ("IRD") that glyphosate was non-carcinogenic. White Decl., ¶ 5, Ex. 5, pp. 4, 10. Moreover, EPA has repeatedly approved Monsanto glyphosate-based labeling that does not contain a cancer warning. White Decl., ¶ 6, Ex. 7. Accordingly, Roundup has been compliant with EPA's mandatory registration process at all relevant times.

***Fourth***, it is undisputed that EPA's standards and regulations "governed the product risk that allegedly caused the harm." § 82.008(a). Under FIFRA, EPA is charged with regulating all aspects of pesticides. *See* 7 U.S.C. §§ 136, *et seq*. As part of its regulatory responsibilities, EPA is required to determine whether pesticides will pose "any unreasonable risk to man or the environment," a determination that specifically includes evaluations of potential carcinogenicity. White Decl., ¶ 7, Ex. 7, p. 7. In making this determination, EPA reviews data both submitted by pesticide applicants and published literature. White Decl., ¶ 8, Ex. 8, pp. 1-11. Pesticides are evaluated for carcinogenicity through a variety of studies, including long-term rodent carcinogenicity studies, mutagenicity studies, structure activity evaluations, and epidemiology studies. *Id*. EPA also retains sole authority to approve pesticide labeling, which is governed by 40 C.F.R. Part 156. Labeling must advise the user on how to apply the product in a manner that ensures that it will not cause injury to the user. 40 C.F.R. § 156.10.[3]

---

[3] As this Court is well aware, EPA's registration process has specifically, and repeatedly, considered glyphosate's risk of cancer, including in 1991, 1993, 2016, 2017, 2019, and 2020. White Decl. ¶ 4, Ex. 4, p. 14; ¶ 2, Ex. 2, p. 137; ¶ 9, Ex. 9, p. 12-14, 19, 143-44. The EPA has also evaluated the International Agency for Research on Cancer's ("IARC") glyphosate analysis, which EPA flatly rejected. White Decl., ¶ 9, Ex. 9, pp. 32-33, 69-70, 146. More recently, in April 2019, EPA issued its Proposed Interim Registration Review Decision ("PID") on glyphosate, in which it affirmed that glyphosate is "not likely to be carcinogenic to humans" and that it has "not identif[ied] any human health risks from exposure to any use of glyphosate." White Decl., ¶ 10, Ex. 10, pp. 7, 35. EPA's classification [was] based on a thorough weight-of-evidence review of all relevant data and is in accordance with the agency's 2005 *Guidelines for Carcinogen Risk Assessment."* White Decl., ¶ 10, Ex. 10, p. 7. The PID also addressed glyphosate labeling. White Decl., ¶ 10, Ex. 10, pp. 43-47. On the issue of carcinogenicity, EPA required no modifications to the labeling of glyphosate-containing products—meaning that, once again, EPA confirmed that no cancer warning is needed or appropriate for these products. *Id.* Indeed, EPA sent a letter to all registrants of glyphosate on August 7, 2019 ("August 7 Letter"), stating that it would not approve labeling that includes warnings about the carcinogenicity of glyphosate, because such warnings are "false and misleading" and would make the product misbranded in violation of FIFRA. White Decl., ¶. 11, Ex. 11, pp. 1-2. In 2020, EPA completed its formal, statutorily mandated "Glyphosate Registration Review" process after reviewing the entirety of the scientific data on glyphosate and glyphosate-based formulations. White Decl., ¶ 5, Ex. 5, pp. 4-5, 9-10, 15. In May 2021, EPA completed an Executive Order review of the agency's latest regulatory action on glyphosate, and vigorously defended the agency's "conclu[sion] that glyphosate is not likely to be a human carcinogen and poses no human-health risks of concern." White Decl., ¶¶ 12, 13.

EPA was fully informed of the supposed evidence that glyphosate is carcinogenic, because it "performed an independent evaluation of available data," including registrant data, publicly available studies, and IARC's monograph before rejecting that glyphosate is carcinogenic. White Decl., ¶ 11, Ex. 11, p. 1. The EPA has "considered a more extensive dataset than IARC," the entity whose cancer assessment is central to Plaintiff's claim. *Id*. Indeed, as part of its notice-and-comment procedures, EPA considered the precise arguments and evidence that plaintiffs have relied on before juries in the Roundup Litigation.[4] The nearly 283,000 comments EPA received during a 120-day comment period in 2019 "did not result in changes to the agency's risk assessments" in EPA's 2020 IRD. White Decl., ¶ 5, Ex. 5, p. 5.

Accordingly, there is no possible dispute of fact that EPA's regulatory framework governed the specific risk at issue here, and Roundup has been, and remains, fully compliant with EPA governance in both its glyphosate formulation and labeling. Monsanto is entitled, as a matter of law, to a presumption of non-liability under Tex. Civ. Prac. & Rem. Code § 82.008(a).

  2. <u>Plaintiff Cannot Rebut the Presumption of Non-Liability</u>

Monsanto's presumption of non-liability can only be rebutted if Plaintiff can "establish[]" one of two statutorily defined exceptions. Tex. Civ. Prac. & Rem. Code § 82.008(b); *see also Wright*, 508 F.3d at 274 (in context of § 82.008, "[e]stablish connotes something more than simply introducing *some* evidence from which a factfinder might—*or might not*—find that which is to be 'established.'") (emphasis in original). Under the first exception, a plaintiff can establish that the applicable mandatory federal regulations "were inadequate to protect the public from unreasonable risks of injury or damage." § 82.008(b)(1). Under the second exception, a plaintiff can establish "the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy" of the

---

[4] *See, e.g.,* EPA, Glyphosate Registration Review Docket, Docket ID: EPA-HQ-OPP-2009-0361, Additional Comments of Christopher J. Portier, PhD. to the FIFRA Scientific Advisory Panel, Attach. to Comment Submitted by Nat'l Res. Defense Council on EPA Notice: Registration Review: Draft Human Health and/or Ecological Risk Assessments for Several Pesticides (posted July 3, 2018), https://www.regulations.gov/docket?D=EPA-HQ-OPP-2009-0361.

applicable regulations.  Plaintiff has offered <u>no evidence</u> relevant to either (much less evidence sufficient to "establish" them).  Moreover, the second exception is preempted by federal law under *Buckman*.

        a. *Plaintiff Has Offered No Evidence That EPA's Regulatory Framework is Inadequate.*

To invoke the first exception, Plaintiff must establish that the mandatory federal regulations are inadequate to protect the public from unreasonable risk of injury.  § 82.008(b)(1).  The statutory text mandates that the rebuttal evidence focus on the adequacy of the standards and regulations, not the allegedly defective product.  *See* § 82.008(b)(1) (claimant may rebut the presumption by establishing that "the mandatory federal safety standards or regulations applicable to the product were inadequate . . . ."); H.B. 4, House Committee Report, 78th Regular Session (2003) (Defendant may remain liable if the plaintiff proves "that the applicable federal standards were grossly inadequate to protect the public.").[5]  This is commonsense.  The existence of the § 82.008 presumption itself necessarily assumes allegation of product defect and injury.  If mere evidence of defect and injury were sufficient to establish that the regulations conferring the presumption were inadequate, the presumption would be illusory in every instance.  Rather, the focus of the presumption itself, and both rebuttal exceptions, is the applicable federal regulations and standards and the risk of harm they address.  *See e.g.*, *Wright*, 508 F.3d at 273 ("[T]he applicability of the presumption in § 82.008(a) turns on the alleged risk, not on the alleged defect.").  Thus, Plaintiff cannot rebut the presumption with the fact of his diagnosis, or Roundup's glyphosate formulation, or lack of a cancer warning, but instead must show the applicable federal regulations and standards themselves are inadequate to protect the public from harm.   He has offered no such evidence.

The Texas Court of Appeals recently highlighted a circumstance in which the presumption was rebutted because the adequacy of applicable federal standards were sufficiently put at issue consistent with the intent of the Texas Legislature.  *See Toyota Mot. Sales, U.S.A., Inc. v. Reavis*, No. 05-19-00075-CV, 2021 WL 2253535, at *4 (Tex. App. June 3, 2021).  There, plaintiffs injured

---

[5] https://lrl.texas.gov/legis/billsearch/billdetails.cfm?billFileID=63562&from=advancedsearch.

in a car crash alleged the seats were defective. Toyota relied on § 82.008(a), citing several Federal Motor Vehicle Safety Standards with which the vehicle complied, in particular FMVSS 207 which set minimum standards for seatback strength. The court found the plaintiffs sufficiently rebutted the § 82.008 presumption by presenting: expert evidence that "both a lawn chair and a banquet chair" could pass the minimum strength requirement of FMVSS 207; that both Toyota and other manufacturers exceeded the FMVSS 207 minimum by over 600%, indicating the industry considered FMVSS 207 insufficient; and that there had been "no significant or substantive changes" to FMVSS 207 since 1967. *Id. See also Cartwright v. Am. Honda Mot. Co., Inc.*, No. 9:09-cv-205, 2012 WL 506730 (E.D. Tex. Jan. 18, 2012). In *Cartwright*, a plaintiff injured in a rollover sued Honda alleging the car's windows were defective because they used tempered, rather than laminate, glass. *Id.* at *1. Honda moved for summary judgment relying on § 82.008, arguing the vehicle complied with FMVSS 205, which permitted side windows to use either tempered or laminated glass. *Id.* at *3. Plaintiff argued that FMVSS are only minimum standards that the National Highway Traffic Safety Administration ("NHTSA") urges manufacturers to exceed, and offered expert testimony and NHTSA data purporting to show that tempered glass does not minimize occupant ejection. *Id.* The court ruled Plaintiff had rebutted the § 82.008 presumption sufficient to overcome summary judgment. *Id.*

Neither circumstance is remotely applicable here. Unlike the FMVSS promulgated by NHTSA, EPA's mandatory registration and review framework is not a minimum standard, nor does EPA encourage or permit registrants to deviate from the terms of its approval. EPA's regulation under FIFRA is comprehensive, and EPA clearly does not view its own review process, or decisions on glyphosate, as "minimal" given its repeated and exhaustive determinations. Plaintiff cannot rebut Monsanto's presumption of non-liability without establishing that EPA's mandatory regulatory scheme is inadequate, and he has failed to offer any evidence to that effect. Plaintiff has disclosed no expert witness to opine on the adequacy of FIFFRA or EPA-promulgated standards or implementing regulations, and there is no evidence, or even allegation, that those provisions are outdated, non-comprehensive, or otherwise inadequate. Plaintiff instead focuses on supposed

"scientific fraud" by Monsanto in the registration process (*see* White Decl., ¶ 1, Ex. 1, ¶¶ 64-72), but that is irrelevant to the analysis under § 82.008(b)(1), whose focus is purely on the adequacy of the regulatory framework, not any alleged impropriety by Monsanto.  As a matter of law, Plaintiff has failed to rebut Monsanto's presumption of non-liability under § 82.008(b)(1).

> b. *Plaintiff Has No Evidence of Fraud on the EPA, and that Exception under § 82.008(b)(2) is Preempted*

Having failed to establish the exception under § 82.008(b)(1), Plaintiff can only avoid summary judgment if he can establish that Monsanto, "before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action." § 82.008(b)(2).  In other words, Plaintiff must establish "fraud on the EPA."  Plaintiff cannot invoke this exception for two independent reasons.  First, Plaintiff has no evidence whatsoever supporting that Monsanto defrauded EPA.  Second, § 82.008(b)(2) is preempted by federal law.

*First*, this Court has already made a finding that there is no factual basis that Monsanto has committed fraud on the EPA.  White Decl., ¶. 14 (*Hardeman v. Monsanto Co.*, 16-cv-00525, Pretrial Order No. 160, Dkt. 4576, at 6 (plaintiff "did not present any evidence that would reasonably support an inference that [Monsanto's relationship with certain EPA employees] rendered invalid EPA's approval process for Roundup.")).  The same is true here.  Plaintiff has not offered any evidence supporting an inference, much less "establishing," fraud on the EPA.  And, in fact, there is copious affirmative evidence to the contrary.  EPA's registration history of glyphosate and Roundup's formulation and labeling, detailed in Section III.A.1, *supra*, make clear that EPA was not misled, confused, or defrauded in its repeated study of glyphosate, and in particular glyphosate's cancer risk.  In fact, EPA has considered all evidence that Roundup litigants have proffered in support of their product liability claims, including Plaintiff in this case.  There is simply no factual basis that Monsanto defrauded EPA, as this Court has already found.  Plaintiff cannot establish the § 82.008(b)(2) exception.

***Second***, because § 82.008(b)(2) requires proof of fraud on the EPA, it is preempted by federal law. In *Buckman Co. v. Pltf.'s Legal Comm.*, 531 U.S. 341 (2000), the United States Supreme Court ruled that claims that the manufacturer of bone screws made fraudulent representations to the FDA during the regulatory approval process were conflict-preempted by the Medical Device Act. *Id.* at 347. Finding that "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied," the Court rejected a presumption against preemption and found that because the defendant's allegedly fraudulent conduct arose purely by virtue of FDA regulation and that the FDA was empowered with numerous options at policing its own approval process, the plaintiffs' "fraud on the FDA" claims were preempted. *Id.* at 347-348 (internal quotations omitted).

The reasoning of *Buckman* has been applied by the Ninth Circuit Court of Appeals to preempt "fraud on the EPA" claims on the same basis. *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002) ("The rationale articulated by the Supreme Court in *Buckman* applies with equal force to the facts before us and compels a similar result."). In *Nathan Kimmel*, the Ninth Circuit ruled that the gravamen of the plaintiff's claim hinged on "alleged fraud-on-the-EPA and abuse of the labeling process" and directly applied *Buckman*'s reasoning under the Medical Device Act and FDA regulations to FIFRA and EPA's regulatory scheme, noting in particular EPA's broad authority under FIFRA and "substantial enforcement powers." *Id.* at 1205-1206.

*Buckman*'s reasoning has also been applied not only to direct "fraud on the regulator" claims, but also to statutory exceptions to liability bars such as the one at issue in § 82.008(b)(2) which requires evidence of fraud on the agency to defeat a statutory defense. In *Garcia v. Wyeth-Ayerst Labs*, the Sixth Circuit Court of Appeals addressed a Michigan statute immunizing drug manufacturers from product liability claims if the drug was FDA approved. 385 F.3d 961, 963-964 (6th Cir. 2004). The statute had a "fraud on the FDA" exception similar to the one at issue here. The Sixth Circuit noted the difference between a direct "fraud on the FDA" claim and a statutory exception, but found the distinction "immaterial in light of *Buckman*." *Id.* at 966. The Court found that because the provision ultimately required the plaintiff to prove the drug manufacturer defrauded

the FDA, it conflicted with the FDA's duties and was preempted, unless the FDA itself found fraud. *Id.* at 965-966.

The Fifth Circuit Court of appeals has adopted the reasoning of *Garcia* and *Buckman* and applied it to Tex. Civ. Prac. & Rem. Code § 82.007, a Texas statute providing a rebuttable presumption of non-liability for failure to warn for manufacturers of FDA-approved medications. *Lofton v. McNeil Consumer & Spec. Pharms*, 672 F.3d 372 (5th Cir. 2012). Like the Michigan statute in *Garcia*, § 82.007 of the TPLA had an exception to the presumption of non-liability if the plaintiff could offer evidence of fraud on the FDA. Tex. Civ. Prac. & Rem. Code § 82.007(b)(1). The Fifth Circuit ruled that the statutory exception was indeed a fraud-on-the-FDA provision, and invoked "federal law supremacy according to *Buckman*." *Lofton*, 672 F.3d at 379. Agreeing with the Sixth Circuit, *Lofton* held that § 82.007(b)(1) was preempted unless the FDA itself found fraud. *Id.* at 380.

The same result is required with respect to § 82.008(b)(2). Though no court applying Texas law appears to have yet had occasion to reach the issue of preemption with regard to § 82.008(b)(2), *Lofton* clearly requires a finding of preemption. Indeed, the "fraud on the FDA" provision of § 82.007(b)(1) is nearly identical to § 82.008(b)(2). Section 82.007(b)(1) stated a plaintiff could rebut the presumption of non-liability if the defendant "withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant's injury." Section 82.008(b)(2) allows rebuttal if the manufacturer "withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action." Accordingly, § 82.008(b)(2) is a fraud-on-the-EPA provision, and results in the same preemption that *Lofton* found was required under *Buckman*. And as the Ninth Circuit found in *Nathan Kimmel*, the supremacy concerns that animated *Buckman*'s ruling with regard to the FDA apply equally and without distinction to EPA's regulatory authority under FIFRA. As such, § 82.008(b)(2) is preempted by federal law and Plaintiff cannot invoke it here as an exception to Monsanto's presumption of non-liability absent a finding of fraud by EPA itself.

Because Monsanto has shown it is entitled to the presumption of non-liability under Tex. Civ. Prac. & Rem. Code § 82.008 and Plaintiff cannot establish either exception, this Court must grant summary judgment in favor of Monsanto on all Plaintiff's claims.

### B. Plaintiff's Failure to Warn Claims Additionally Fail Because Plaintiff Only Read the Roundup Label Once, 45 Years Before He Stopped Using Roundup.

Plaintiff's claims fail for another independent reason. As discussed *supra*, each of Plaintiff's claims, including his theories of design defect, are premised exclusively on Roundup's lack of a cancer warning. Because undisputed evidence shows that Plaintiff cannot meet the warnings causation standard under Texas law, he cannot prevail on any of his claims.

A manufacturer is liable under a theory of failure to warn only if the allegedly inadequate warning caused the plaintiff's injuries. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 377-78 (5th Cir. 2010) (applying Texas law). Texas law assists plaintiffs in satisfying the causation element by providing a rebuttable presumption that the plaintiff would have read and followed an adequate warning. *Gen. Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). But this presumption "disappears if evidence is presented that the warning would not have been followed." *Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007) (applying Texas law and affirming district court's grant of summary judgment for defendant). In that situation, "the burden then shifts back to the plaintiff[] to show that the warning would have been followed," or else plaintiff's claim fails for lack of proximate causation. *Id.* Pursuant to these burden-shifting rules, a failure to warn claim fails on causation grounds as a matter of law when the plaintiff did not read the allegedly inadequate warning label on the product, because in that case the plaintiff cannot show that he or she would have read and heeded a hypothetical adequate warning:

> There is no evidence that [plaintiffs] would have read a warning free from the inadequacies determined by the court of appeals. Indeed, given that they did not read the warnings [defendant] provided, there is no reason why they would have read the warnings which the court of appeals held should have been provided.

*Saenz*, 873 S.W.2d at 361 (reversing jury verdict for plaintiff and court of appeals ruling affirming verdict and rendering judgment in favor of defendant); *see also Scott v. Dorel Juvenile Grp., Inc.*,

773 F. Supp. 2d 664, 669-70 (N.D. Tex. 2011) (granting summary judgment for defendant where it was undisputed the plaintiff "did not read the instructions or warnings" on the product), *aff'd in part*, *rev'd in part on other grounds*, 456 F. App'x 450 (5th Cir. 2012); *Gillespie v. Century Prods. Co.*, 936 S.W.2d 50, 52-53 (Tex. App.-San Antonio 1996) (reversing trial court judgment for plaintiff and rendering judgment for defendant when plaintiffs testified they did not read the product labels or instructions).

Plaintiff testified that he first used Roundup in 1975. White Decl., ¶ 15, Ex. 15 at 217:16-218:3. He stated that he read the Roundup label once, in 1975, and never read it again. *Id.* at 216:24-218:3; 220:3-9. Plaintiff further testified that he did not recall reading any warning language on the label or remember the contents of what he read. *Id.* at 216:24-217:5 ("Q: Now, sir, did you ever read the label on the Roundup that you used for your farming? A: When I first started using it, I did. I do not remember – I do not remember what it said. I know it didn't have warnings on it."). Moreover, according to Plaintiff he used Roundup from 1975 until 2020 when he was diagnosed with NHL. (White Decl., ¶ 1, Ex. 1, ¶ 86).

In short, Plaintiff read the Roundup label once in 1975 (1 year after Roundup was first registered by EPA), and used it until 2020 without ever reading the label again. This testimony conclusively forecloses any theory of recovery based on failure to warn. Plaintiff's Complaint relies heavily on the IARC Monograph classifying Roundup as a "probable carcinogen." White Decl., ¶ 1, Ex. 1, ¶¶ 39-45. As Plaintiff acknowledges, however, that classification did not become public until 2015, long after the first and only time Plaintiff read a Roundup label in 1975. White Decl., ¶ 1, Ex. 1, ¶ 42. Even Plaintiff's allegations of Monsanto's supposed "decades" of knowledge about glyphosate's risk of cancer apart from the IARC classification (White Decl., ¶ 1, Ex. 1, ¶¶ 46-63) do not aid him because he alleges that knowledge arose in 1985 (White Decl., ¶ 1, Ex. 1, ¶ 47) which also was 10 years after the only time he read the label.

As a matter of law, Plaintiff does not – nor can he – allege that Monsanto had any duty to warn of a cancer risk in 1975, the year he would have read such a warning. It is thus irrelevant what Roundup's label could have said after 1975, because Plaintiff testified he would not have seen it and

thus could not have acted any differently. As a matter of law, the adequacy of the labeling on the Roundup products Plaintiff used had no impact on his use of the product, and he therefore cannot establish proximate cause with respect to his warnings-based claims. *Saenz*, 873 S.W.2d at 361.

Each of Plaintiff's claims can be dismissed on this basis as well.

## CONCLUSION

For the foregoing reasons, Monsanto is entitled to summary judgment on Plaintiff's claims.

Dated: September 21, 2021                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/ Jed P. White
　　　　　　　　　　　　　　　　　　　　　　　Jed P. White
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant Monsanto Company