**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| *Thomas, et al. v. Monsanto, Co.*, No. 2:20-cv-08051-VC | **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on TBD in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company will move this Court for an order, pursuant to Federal Rule of Civil Procedure 56(c), entering judgment in its favor and against Wave 3 Plaintiffs Troy Wilson Thomas and Josephine Ventura, on the grounds that there is no genuine issue of material fact as to warnings causation and Monsanto is, as a result, entitled to summary judgment on all claims. In the alternative, if the Court does not grant Monsanto summary judgment on all claims, Monsanto is entitled to summary judgment on Plaintiffs' request for punitive damages under applicable law.

Dated:  September 21, 2021                              Respectfully submitted,

                                                                        */s/ Jed P. White*
                                                                        Jed P. White
                                                                        Attorney for Defendant Monsanto Company

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Troy Wilson Thomas and Josephine Ventura (together, "Plaintiffs") assert against Defendant Monsanto Company ("Monsanto") strict liability, negligence, and breach of warranty claims based upon Monsanto's alleged failure to warn of the carcinogenic risks allegedly associated with glyphosate, the active ingredient in Monsanto's Roundup-branded products. Under Arizona law, which controls here, these claims require a finding that Monsanto's alleged failure to warn of these risks proximately caused Troy Wilson Thomas's ("Thomas's") injuries. Plaintiffs cannot make such a showing here, because Thomas testified that he never read the warning label on any of the Roundup-branded products Plaintiffs allege he used. As a result, Plaintiffs cannot show that the allegedly-inadequate warnings caused Thomas's injuries, and the Court must grant Monsanto summary judgment on all claims. In the event the Court does not grant summary judgment on all claims, the Court must grant summary judgment on Plaintiffs' request for punitive damages. Arizona law bars the award of punitive damages in product liability actions where the product that allegedly caused the injuries was sold in accordance with the terms of a government agency's approval. Because it is undisputed that at all relevant times Monsanto manufactured and sold Roundup pursuant to the U.S. Environmental Protection Agency's ("EPA's") approval, Plaintiffs' request for punitive damages is barred.

## I.   BACKGROUND

Plaintiffs filed their complaint on September 10, 2020 in the U.S. District Court of the Eastern District of Pennsylvania. They allege that Thomas was diagnosed with Non-Hodgkin's Lymphoma ("NHL") in 2020 as a result of using various Roundup-branded products at his home residences from 2000 to 2020. Compl. ¶¶ 1-2, 75-82. Thomas testified that he stopped using Roundup in March or April of 2020. *See* Declaration of Jed White ("White Decl.") ¶ 2, Ex. 1 (Thomas Dep. Tr. at 94:10-14). The majority of Thomas' alleged exposure occurred in Arizona. Thomas lived in Goodyear, Arizona for seven years from 2010-2017. *See id.* ¶ 3, Ex. 2 at TThomas-PFS-000025. During the time period Thomas alleges he was exposed (2000 to April 2020), he did not live in another state for longer than seven years. *Id.* Thomas testified that while living in Goodyear, Arizona, he used Roundup "everywhere" around his property, and he would make

applications "typically every weekend," each of which would last over an hour. *Id.* ¶ 2, Ex. 1 (Thomas Dep. Tr. at 70:21-73:20).

Plaintiffs contend that Monsanto failed to adequately warn or instruct Thomas of the alleged carcinogenic risks associated with using Roundup, and that that failure proximately caused his injuries. Compl. ¶¶ 1-3, 182. Plaintiffs assert claims of Strict Liability – Design Defect (Count I), Strict Liability – Failure to Warn (Count II), Negligence (Count III), Breach of Implied Warranties (Count IV), and Breach of Express Warranties (Count V). Plaintiffs also seek punitive damages and damages for loss of consortium on behalf of Josephine Ventura, Thomas's wife. *Id.* at 36-37. However, importantly, Thomas stated during his deposition that he does not know what the Roundup warning labels say, because he never looked at them when using the product. *See* White Decl. ¶ 2, Ex. 1 (Thomas Dep. at 43:22-44:5; 63:13-18; 81:4-11; 94:6-9).

All of Plaintiffs' claims, regardless of theory, center on allegations that Monsanto is liable because it failed to warn that Roundup-branded products allegedly caused cancer. *See* Compl. ¶¶ 2 ("Because Plaintiff relied on [Monsanto's] misrepresentations, he continued to use Roundup" and was diagnosed with NHL in April 2020), ¶ 3 ("Plaintiff would not have used Roundup had he known it could cause cancer."), ¶ 82 ("As a proximate result of Monsanto's wrongful acts and omissions in placing its defective Roundup products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate . . . Plaintiff has suffered and continues to suffer severe and permanent physical and emotional injuries."); ¶ 101 (as part of design defect claim, alleging Thomas was exposed to Roundup "without knowledge of Roundup's dangerous characteristics"), ¶¶ 113-34 (Plaintiffs' strict liability failure to warn claim), ¶ 145 (as part of negligence claim, alleging Monsanto failed to warn Thomas of Roundup's risks), ¶ 160 (as part of implied warranty claim, alleging Thomas "used Roundup as instructed and labeled" in reliance upon Monsanto's implied warranty), ¶ 169 (alleging Monsanto breached express warranties by "includ[ing] incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Roundup and glyphosate").

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of "informing" the Court that there exists the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with evidence to show there is in fact a genuine issue for trial. *Id.* at 323-24. A "complete failure of proof concerning an essential element of the nonmoving party's case" warrants summary judgment and "necessarily renders all other facts immaterial." *Id.* at 323.

## III. ARGUMENT

### A. Arizona Law Applies to Plaintiffs' Claims

Where state law applies in an MDL action, the court must apply "the law of the transferor forum, that is, the law of the state in which the action was filed, *including the transferor forum's choice-of-law rules*." *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524) (emphasis added). Because Plaintiffs filed suit in Pennsylvania, the Court must look to Pennsylvania's choice of law rules to determine what state law applies.

Under Pennsylvania's choice of law principles, "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984, 988 (Pa. Super. Ct. 2016); *see also Almond v. Janssen Pharms., Inc.*, 337 F.R.D. 90, 97 (E.D. Pa. 2020) (explaining that although Pennsylvania does not automatically apply the law from the state where the injury occurred, "the location of plaintiff's

injury remains important to the analysis").[1]  Here, the record reflects that Thomas used Roundup in numerous states from 2000 to 2020, the time period he alleges he was exposed to Roundup.  *See* White Decl. ¶ 3, Ex. 2 at TThomas-PFS-000025 (Plaintiff fact sheet showing he lived in Massachusetts from June 2000 to April 2005; California from April 2005 to September 2006; Nevada from September 2006 to May 2010 and May 2017 to 2020; and Arizona from May 2010 to May 2017).  Thomas's time in Arizona—seven years—is the longest period he spent in any single state from 2000 to 2020.  *Id.*

Thomas's alleged Roundup exposure while living in Arizona was significant.  He resided on West Lilack Street in Goodyear, Arizona ("Lilac property") for the vast majority of his time in Arizona.  White Decl. ¶ 2, Ex. 1 (Thomas Dep. Tr. at 70:21-71:20).  Thomas testified that he used Roundup "pretty much everywhere" around the Lilac property during this period, and would make applications preventatively to the entire front yard and the backyard every weekend.  *Id.* at 71:25-72:19.  Each of these applications would take him over an hour.  *Id.* at 72:20-73:17.  For the remaining time he lived in Arizona, Thomas resided at on North 148 Avenue in Litchfield Park, AZ ("Litchfield Park property").  *Id.* at 85:21-86:1.  Thomas similarly testified that he applied Roundup "all over" the Litchfield Park property, including the front yard, both sides of the house, and in the backyard.  *Id.* at 89:11-17.  Moreover, Thomas' testimony shows that he applied Roundup more regularly—and was thus exposed to Roundup more regularly—when he resided in Arizona as compared to his other states of residence.  *See id.* at 37:6-40:1 (testifying that in Massachusetts during the non-winter months he would "spot spray[]" every weekend "or as needed," and would preventatively spray around his property "every other weekend"); *id.* at 51:15-53:10 (testifying he

---

[1]   Pennsylvania's choice-of-law rules first require an analysis into whether there is a "true" conflict between the respective states' laws. *Melmark, Inc. v. Schutt by & Through Schutt*, 206 A.3d 1096, 1104 (Pa. 2019).  There is no question such a conflict exists here.  Arizona law provides that punitive damages are not available in product liability actions when the relevant product was manufactured and sold with a government agency's approval.  *See infra* Section III(C).  No other state in which Thomas resided has such a statute, and there is no dispute that Monsanto manufactured and sold Roundup at all relevant times in accordance with EPA's registration and approval.  *See id.*

did not use Roundup often in California because he lived in a condominium); *id.* at 56:13-58:17 (testifying that in Las Vegas from 2006 to 2010 he used Roundup "roughly every week or as needed"); *id.* at 77:8-79:12 (similar as to 2017 to 2020 in Las Vegas).

Because the record, according to the Plaintiff's own testimony, reflects that Thomas was exposed to Roundup in Arizona more than in any other single state, his alleged injury would have occurred in Arizona more than in any other state. *See Almond*, 337 F.R.D. at 97 (explaining that the parties' most significant contact is with the state where they alleged they were "prescribed and ingested" the product they alleged caused their injuries, because that is "where their claims arose"). Arizona therefore has the most significant contacts with respect to Thomas's claims, and Arizona law applies. *Id.*

### B. The Record Refutes That Monsanto's Alleged Failure to Warn of Any Alleged Risks Associated With Glyphosate Caused Thomas's Injuries

A defendant is liable on a failure to warn theory under Arizona law only if the failure to provide an adequate warning proximately caused the plaintiff's injuries. *Gosewich v. Am. Honda Motor Co.*, 737 P.2d 376, 379 (Ariz. 1987) (superseded on other grounds by Ariz. Rev. Stat. § 12-2505). Arizona applies a "heeding presumption" in failure-to-warn cases that permits a presumption the product user would have read and heeded an adequate warning. *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 971-72 (Ariz. Ct. App. 2003). The initial burden is therefore on the manufacturer initially to present evidence "that would permit reasonable minds to conclude" that the adequate warning would not have been heeded. *Id.* at 971. If the manufacturer meets that burden, "the presumption is destroyed," and the plaintiff must present evidence sufficient to show the inadequate warning caused his injury "as if the presumption had never operated in the case." *Id.* at 971-72.

Applying these burden shifting rules, Arizona courts have found that when the defendant presents evidence that the product user or prescribing doctor did not review the existing warning or label, and the plaintiff does not present any evidence showing that an alternative warning would have actually been read and heeded, the plaintiff cannot, as a matter of law, show that a different warning would have prevented his injuries. *See Gosewisch v. Am. Honda Motor Co.*, 737 P.2d at

380 (where plaintiff testified that he never received or reviewed the product manual, holding that "[w]here such evidence exists, it cannot be said that a failure to warn was a proximate cause of the injury") (quotations omitted); *Carter v. APP Pharms., LLC*, No. CV-10-02573-PHX-ROS, 2013 WL 5532767, at *8 (D. Ariz. Aug. 13, 2013) (granting summary judgment for defendant where evidence established that plaintiff's physicians did not read the product label); *Gebhardt v. Mentor Corp.*, 191 F.R.D. 180, 184-85 (D. Ariz. 1999), *aff'd*, 15 F. App'x 540 (9th Cir. 2001) (granting summary judgment for defendant where plaintiff's physician testified he did not review product insert that contained allegedly inadequate warning). That is the exact factual situation here.

Plaintiffs allege that Thomas's regular use of Roundup caused his injuries. *See* Compl. ¶¶ 75-82. The evidence affirmatively shows that Thomas would *not* have acted differently had there been a different warning label on the product, because he testified that he never looked at the warning label on the products he used at any of his various residences since 2000. *See* White Decl. ¶ 2, Ex. 1 (Thomas Dep. at 43:22-44:5, 63:13-18, 81:4-11, 94:6-9). Indeed, when asked directly whether he ever looked at the warning label on a bottle of Roundup, Thomas testified that he had not:

> Q. Do you know what any of the labels said on any of the Roundup bottles that you purchased?
>
> A. No. Never really looked at them. Just used them.

*Id.* at 44:3-5. Because Thomas testified that he never looked at any label, Plaintiffs must come forward with non-speculative evidence tending to show that a different label nonetheless would have prevented Thomas's alleged injuries. Because Plaintiffs have no such evidence, and because each cause of action depends upon the contention that the lack of adequate warning caused his injuries (*see supra* Section I), the Court must grant Monsanto summary judgment on all claims. *See Gosewisch*, 737 P.2d at 380; *Carter v. APP*, 2013 WL 5532767, at *8; *Gebhardt*, 191 F.R.D. at 184-85.[2] Granting judgment as a matter of law on all claims is proper here is because as described herein

---

[2] To the extent Plaintiffs base their claims on materials other than the warning label affixed to the products themselves (*see* Compl. ¶ 128), the claims still fail. Again, because Thomas's testimony evidences that a different label would not have prevented his injuries, Plaintiffs must

and found in Plaintiffs' complaint, the gravamen of all of Plaintiffs' counts, no matter how styled, is that they center on Monsanto's alleged failure to warn of the carcinogenic effects of glyphosate. Without having read the labels, under controlling Arizona law, they all fail.[3]

### C. Plaintiffs Cannot Recover Punitive Damages Under Arizona Law

Arizona law precludes the recovery of punitive damages in a product liability action where the product was designed, manufactured, packaged, labeled, or sold in accordance with the terms of a governmental agency's approval. *Taylor v. Boston Sci. Corp.*, No. CV-19-05499-PHX-DJH, 2020 WL 4592923, at *4 (D. Ariz. Aug. 5, 2020) (citing Ariz. Rev. Stat. Ann. § 12-689(A)(1)); Ariz. Rev. Stat. Ann. § 12-689(A)(1) (manufacturer not liable for punitive damages if "[t]he product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government agency").[4] Numerous courts applying Arizona

---

come forward with non-speculative evidence tending to show that Thomas would have heeded some other warning made in a different medium and acted differently, preventing his injuries. There is none. Instead, Plaintiffs cannot muster evidence tending to show that Thomas even looked at the labels affixed to the products he used and which allegedly caused his injuries.

[3]    Plaintiffs' claims would fail even if the Court were to apply Nevada law (where Thomas was also exposed to Roundup for an extended period) or Pennsylvania law (where Plaintiffs filed their lawsuit). Neither Nevada nor Pennsylvania recognize the heeding presumption in a failure-to-warn causation analysis. *See Rivera v. Philip Morris, Inc.*, 209 P.3d 271, 273 (Nev. 2009); *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 537-38 (Pa. Super. Ct. 2003), *aff'd*, 881 A.2d 1262 (Pa. 2005). Plaintiffs' lack of evidence to suggest Thomas would have read and heeded a different warning thus dooms Plaintiffs' claims under those states' laws. *See Bunker v. Ford Motor Co.*, No. 2:11-cv-01286-PMP-NJ, 2013 WL 4505798, at *10 (D. Nev. Aug. 22, 2013) (granting summary judgment on failure to warn claim where plaintiff complained of a lack of sufficient safety warnings on vehicle, but did not proffer evidence that such a warning would have altered her behavior), *aff'd*, 640 F. App'x 661 (9th Cir. 2016); *Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316, 321 (W.D. Pa. 2017) (granting motion for summary judgment where the plaintiff testified at his deposition he did not read the product's label, because "[t]he jury would . . . have to speculate that [the] plaintiff would have heeded a warning placed on materials" when "he testified under oath that he did not read the[] materials"); *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 454 (E.D. Pa. 2016) ("As Wright admits he never read the Operator's Manual, the purported inadequacy of the unread warnings therein could not have caused his injury."); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 562 (W.D. Pa. 2018) (similar), *aff'd* 774 F. App'x 752 (3d Cir. 2019).

[4]    Ariz. Rev. Stat. Ann. § 12-689 contains four exceptions to this rule that are not applicable here.

law have dismissed requests for punitive damages at the pleading or summary judgment stage pursuant to this statutory provision.  *See, e.g.*, *Taylor*, 2020 WL 4592923, at *4-5; *Baca v. Johnson & Johnson*, No. CV-20-01036-PHX-DJH, 2020 WL 6450294, at *6 (D. Ariz. Nov. 2, 2020); *Haddon v. C R Bard Inc.*, No. 3:19-CV-01454-MO, 2021 WL 3131670, at *1-3 (D. Or. July 23, 2021).

This provision applies here and bars Plaintiffs' request for punitive damages.  First, it is undisputed that Roundup's design, formulation, and labeling have been, at all times, subject to mandatory standards and regulations promulgated by EPA.  Plaintiff's complaint itself details the applicable (and extensive) federal regulation of Roundup and glyphosate by the EPA pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*. and its implementing regulations.  *See* Compl. ¶¶ 24-29.  This framework is indeed mandatory, as no pesticide may be legally sold in the United States unless it is approved by EPA.  7 U.S.C. § 136(a).  The initial approval of a pesticide and periodic re-approval, called "registration" and "re-registration," encompass EPA approval of both the pesticide's "complete formula," and "complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use."  7 U.S.C. § 136(c)(1).  Accordingly, all pesticide formulation and labeling must be reviewed and approved by EPA.  7 U.S.C. § 136(a).

Second, it is undisputed that glyphosate, at all relevant times, has complied with EPA's mandatory registration and review process.  EPA first completed its registration and approval of glyphosate in 1974.  White Decl., ¶ 4, Ex. 3, p. 12; ¶ 5, Ex. 4, p. 1.  In 1993, EPA registered glyphosate again, and again concluded, in its Re-Registration Eligibility Decision, that glyphosate was non-carcinogenic.  *Id.* ¶ 6, Ex. 5, p. 14.  And in 2020, EPA again registered glyphosate after completion of its formal mandated "Glyphosate Registration review" process, concluding in its "Interim Registration Review Decision" that glyphosate was non-carcinogenic.  *Id.* ¶ 7, Ex. 6, pp. 4, 10.  Moreover, EPA has repeatedly approved Monsanto glyphosate-based labeling that does not contain a cancer warning.  *Id.* ¶ 8, Ex. 7.  Accordingly, Roundup has been compliant with EPA's mandatory registration process at all relevant times.

In all, Monsanto has manufactured and sold Roundup in accordance with EPA's approval for the entire period in which Plaintiffs allege Thomas used Roundup. Because Roundup was registered with and approved by EPA, Plaintiffs' request for punitive damages fails under Arizona law. *See* Ariz. Rev. Stat. Ann. § 12-689(A)(1).

## CONCLUSION

For the foregoing reasons, Monsanto is entitled to summary judgment on all claims. In the event the Court does not grant summary judgment on all claims, Monsanto is entitled to summary judgment on Plaintiffs' request for punitive damages.

Dated:  September 21, 2021                Respectfully submitted,

                                          */s/ Jed P. White*
                                          Jed P. White
                                          Attorney for Defendant Monsanto Company