**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Otis and Kim Chapman v. Monsanto Co.,* Case No. 3:20-cv-01277-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' SPECIFIC CAUSATION EXPERT DR. CLAYTON SMITH ON RULE 702 GROUNDS**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on December 13, 2021 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiffs' Specific Causation Expert Dr. Clayton Smith. Monsanto seeks an order excluding opinions of Dr. Smith under Federal Rule of Evidence 702.

Dated:  September 22, 2021

Respectfully submitted,

*/s/ Jed P. White*

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................... 1

**BACKGROUND** ........................................................................................................................ 2

**I.     Plaintiffs Disclosed Dr. Smith As A Specific Causation Expert.** ...................................... 2

**II.    Mr. Chapman Has Other Risk Factors Associated With NHL.** ....................................... 2

**III.   Dr. Smith Purports To Use A Differential "Etiology" In Forming His Specific Causation Opinion.** ........................................................................................................... 3

**LEGAL STANDARD** ............................................................................................................... 4

**ARGUMENT** .............................................................................................................................. 5

**I.     Dr. Smith Has No Reliable Basis To "Rule In" Roundup As A Cause of SLL.** ............... 5

**II.    Dr. Smith Failed To Properly Assess Known Alternative Causes Of Mr. Chapman's SLL.** ................................................................................................................ 7

**III.   Dr. Smith Has Not Reliably Ruled Out Unknown Causes Of Mr. Chapman's SLL And Instead Always Point To Roundup.** .................................................................. 8

**CONCLUSION** .......................................................................................................................... 9

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
   483 F. App'x 182 (6th Cir. 2012) ............................................................................................ 5

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir. 1994) ...................................................................................................... 7

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) .......................................................................................... 3, 5, 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 4, 8

*Hall v. Baxter Healthcare Corp.*,
   947 F. Supp. 1387 (D. Or. 1996) ............................................................................................ 5

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) .................................................................................................... 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) .................................................................................................... 5

*Poust v. Huntleigh Healthcare*,
   998 F. Supp. 478 (D.N.J. 1998) .............................................................................................. 5

*In re Roundup Prod. Liab. Litig.*,
   390 F. Supp. 3d 1102 (N.D. Cal. 2018) ................................................................................... 6

*In re Roundup Prods. Liab. Litig.*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019) ..................................................................................... 5

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ............................................................................................... 3, 6

*In re Zoloft Prod. Liab. Litig.*,
   858 F.3d 787 (3d Cir. 2017) ..................................................................................................... 6

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................. 1, 4, 7, 8

Pre-Trial Order 85 ............................................................................................................ 1, 6, 8

# INTRODUCTION

Plaintiffs' specific causation expert, Dr. Clayton Smith, does not meet the standards of Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85").[1] While purporting to rely on the same differential etiology/diagnosis methodology the Court previously permitted, Dr. Smith falls woefully short of the standard established by first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Like those experts, Dr. Smith continues to "rule in" Roundup based on the same flawed studies the general causation experts rely on without accounting for Plaintiff Otis Chapman's specific NHL sub-type, small lymphocytic lymphoma ("SLL"). This defect is more problematic for Dr. Smith than the first round of experts and renders his opinions unreliable because, as he conceded in his deposition, SLL is a separate disease than other NHL subtypes with potentially distinct causes, and he is not aware of *any* study that shows a statistically significant association between exposure to Roundup and the development of SLL. *See* White Decl., Ex. 1, Smith (*Chapman*) Dep. at 57:11-16 ("Q. Are you aware of any study that shows a statistically significant increased risk for SLL with Roundup exposure? A. With the caveats that I've now exposed several times, no."); *see also id.* at 106:17-108:14.

The flaws with Dr. Smith's analysis also go much further. Dr. Smith has no reliable way to distinguish between individuals who developed NHL due to Roundup exposure and individuals exposed to Roundup who developed NHL for other reasons. He lacks any principled basis to "rule out" Mr. Chapman's known NHL risk factors, including a history of skin cancer (basal cell and melanoma), as well as the unknown risk factors he acknowledges cause most cases of NHL. When asked what percentage of a population of 100 with the same exposure to Roundup and no other known risk factors would develop NHL, he admitted that it is "***scientifically impossible***" that all cases would be caused by Roundup and he has "***no idea***" what percentage of cases (or "frequency") would be

---

[1] Plaintiffs also designated a second specific causation expert, Dr. William Sawyer. The admissibility of Dr. Sawyer's opinions are addressed in a separate motion.

caused by Roundup. *See* White Decl., Ex. 2, Smith (*Alvarez*) Dep. at 205:24-206:17 (Q "[A]s you sit here today, you -- you know that if 100 identical Mr. Alvarezes showed up with non-Hodgkin's lymphoma, it is scientifically impossible that all 100 were caused by Roundup? . . . A. Correct. I agree with that. . . . Q. And so my question to you now is, what's the frequency? A. No -- no idea . . .").

Overall, Dr. Smith's opinions are not the product of a reliable differential etiology/diagnosis. The Court should exclude his opinions as inadmissible.

## BACKGROUND

### I. Plaintiffs Disclosed Dr. Smith As A Specific Causation Expert.

Plaintiffs disclosed Dr. Clayton Smith to opine on the issue of specific causation. Dr. Smith is a hematologist. White Decl., Ex. 3, Smith Report at 1. Although Dr. Smith has "cared for thousands of blood cancer patients" over the course of his career, *id.*, before joining this litigation he was unaware of any alleged link between Roundup and NHL and had never told a single patient that Roundup caused his or her NHL. *See* White Decl., Ex. 2, Smith (*Alvarez*) Dep. at 68:16-69:8. Yet that is exactly what he seeks to tell the jury here with respect to Mr. Chapman.

### II. Mr. Chapman Has Other Risk Factors Associated With NHL.

As set forth at length in Monsanto's prior motion to exclude specific causation experts (MDL ECF No. 2420), "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Mr. Chapman was diagnosed with SLL (or small lymphocytic lymphoma) in 2003. *See* White Decl., Ex. 3, Smith Report at 2. He alleges he used and was exposed to Roundup from 1987 to 2004 when spraying it at his home. *Id.* at 3-4

Mr. Chapman has a significant history of basal cell carcinoma: he was diagnosed and treated for three basal cell carcinomas in 2008, one in 2009, one in 2012, one in 2014, and one in 2015. *See* White Decl., Ex. 3, Smith Report at 2-3. Mr. Chapman also was diagnosed with superficial spreading melanoma in 2012. *Id.* Despite this extensive cancer history, Dr. Smith summarily

- 2 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. CLAYTON SMITH
3:20-CV-01277-VC

dismissed the possibility that there was a common cause (other than Roundup) for Mr. Chapman's SLL and skin cancers; he did not even address this possibility in his expert report when analyzing and purporting to exclude alternative causes. *Id.* at 6.

This omission is problematic. Dr. Smith testified he believes there is an association between SLL and higher incidence of skin cancers. White Decl., Ex. 1, Smith (*Chapman*) Dep. at 36:14-18. But he did not know what was responsible for the association between SLL and higher incidence of skin cancers, for example, whether it was the result of immunosenescence (immune dysfunction that occurs with age) or some "inborn genetic defect." *Id.* at 37:7-38:1. When asked what kinds of genetic defects "might predispose someone to both skin cancer and NHL," Dr. Smith testified "I do not know." *Id.* at 38:2-5. Despite not rigorously analyzing this key issue, Dr. Smith summarily concluded that "genetics" is "an unlikely contributing factor to the case of [Mr. Chapman's] SLL." White Decl., Ex. 3, Smith Report at 6.

### III. Dr. Smith Purports To Use A Differential "Etiology" In Forming His Specific Causation Opinion.

Like the specific causation experts previously assessed in this MDL, Dr. Smith purports to reach his specific causation opinion in this case through what he claims is a "differential etiology analysis." White Decl., Ex. 3, Smith Report at 9. As this Court has acknowledged, "differential diagnosis" is a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.* The expert must then "rule out" the possible causes using a scientific method until only the "most likely" cause remains. *Id.*

The "differential etiology" performed by Dr. Smith, while it has a similar name, is fundamentally different from the accepted medical practice of differential diagnosis. At his deposition in a Wave One case (*Alvarez*) in which he purported to use the same methodology, Dr. Smith testified that the differential diagnosis he conducted for litigation was "very different" from the

- 3 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. CLAYTON SMITH
3:20-CV-01277-VC

differential diagnoses he uses in medical practice, which involves assessing "what disease is causing the symptoms," not "the cause of a disease." White Decl., Ex. 2, Smith (*Alvarez*) Dep. at 189:20-191:6. Dr. Smith went on to testify that he actually disagreed with the differential diagnosis methodology he was "instructed" to use for litigation, and only employed it because he was told it was required. *Id.* at 190:25-195:5. He further testified that the methodology has no "known error rate" and is "a purely subjective exercise." *Id.* at 201:12-16 ("Q. Is the -- does the method you used to connect glyphosate with Mr. Alvarez's non-Hodgkin's lymphoma, does that method have a known error rate? A. No. This was a purely subjective exercise.").

As applied in Mr. Chapman's case, Dr. Smith's methodology strays far from any reliable methodology because his process is designed to lead to a pre-ordained conclusion. First, Dr. Smith "rules in" Roundup by uncritically relying on the same flawed studies the general causation experts rely on and without taking account of the Mr. Chapman's specific subtype of NHL, SLL. *See* White Decl., Ex. 3, Smith Report at 6-8. Second, Dr. Smith minimizes Mr. Chapman's relevant NHL risk factors other than Roundup, again without considering the specific sub-type at issue, and without applying the same reasoning to the potential alternative causes that he applies to Roundup. *Id.* at 11. And throughout his "analysis," Dr. Smith ignores altogether the possibility that Mr. Chapman's NHL may have no known cause, as would be the case where NHL is caused by a yet to be discovered factor or from the random mutation that inevitably occurs through normal cell division. *Id.* According to Dr. Smith, if a plaintiff came into substantial contact with Roundup, that fact alone proves that Roundup was a substantial cause of the plaintiff's NHL.

### LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Put differently, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also*

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Here, the Court should exclude Dr. Smith's opinions on the grounds that they are not reliable or helpful because Dr. Smith leaps to the conclusion that Roundup was the cause of Mr. Chapman's NHL based on his exposure alone, without weighing or eliminating other risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiffs fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

**ARGUMENT**

**I.       Dr. Smith Has No Reliable Basis To "Rule In" Roundup As A Cause of SLL.**

At the "ruling in" step of a differential diagnosis/etiology, an expert must determine which hypotheses are "generally capable" of causing the plaintiff's disease. *Clausen*, 339 F.3d at 1058. "Expert testimony that rules in a potential cause that is not so capable is unreliable." *Id.*; *see also Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1413 (D. Or. 1996) ("differential diagnosis assumes that general causation has been proven").

Dr. Smith unreliably "rules in" Roundup as being generally capable of causing SLL by relying on studies and data that he admits are not specific to SLL. Dr. Smith testified that SLL is "relatively rare subtype of NHL," and it is a challenge to develop epidemiological data when "you're dealing with relatively rare diseases," like SLL. White Decl., Ex. 1, Smith (*Chapman*) Dep. at 78:23-79:12; *see also* Ex. 3, Smith Report at 8 ("Specific epidemiologic associations between specific subtypes of NHL are difficult to define due to statistical considerations and this is particularly true for relatively unusual subtypes like SLL."). He further testified that he is not aware of *any* studies showing a statistically significant association between Roundup exposure and SLL:

> Q. Are you aware of any study that shows a statistically significant increased risk for SLL with Roundup exposure?
>
> A. With the caveats that I've now exposed several times, no.

White Decl., Exhibit 1, Smith (*Chapman*) Dep. at 108:10-14; *see also id.* at 101:24-102:21, 105:5-108:9. In other words, Dr. Smith is aware of no data that demonstrates that Roundup is capable of causing SLL. Whether or not the lack of data showing a statistically significant association between Roundup exposure and SLL is dispositive, Dr. Smith offers no other evidence to demonstrate a causal link between Roundup and SLL. *See In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1117 (N.D. Cal. 2018) ("Although there may be a causal association even in the absence of statistically significant results, statistical significance remains a useful metric for determining whether the results of a given study likely show a real association."); *In re Zoloft Prod. Liab. Litig.*, 858 F.3d 787, 793 (3d Cir. 2017) ("Despite the problems with treating statistical significance as a magic criterion, it remains an important metric to distinguish between results supporting a true association and those resulting from mere chance.").

The absence of such evidence is not just a minor problem that should be raised on cross-examination. It means Dr. Smith's entire analysis is premised on guesswork and conjecture, not science. Indeed, Dr. Smith himself testified that he believes "different cancers are different disease with different causes," White Decl., Ex. 1, Smith (*Chapman*) Dep. at 132:2-4, and different subtypes of NHL have different mutational signatures and presumably different causes, *id.* at 57:11-16. Accordingly, Dr. Smith has no reliable basis to "rule in" Roundup as capable of causing Mr.

Chapman's disease actually at issue in this case—SLL.

## II. Dr. Smith Failed To Properly Assess Known Alternative Causes Of Mr. Chapman's SLL.

Dr. Smith failed to adequately address other potential causes for Mr. Chapman's NHL, which is required for his opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *Clausen*, 339 F.3d at 1057. The Ninth Circuit instructs experts to include "even rare entities in the list" to "ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the "most likely cause" remains. *Id.*

Based on his deposition testimony, Dr. Smith should have "ruled in" alternative causes for Mr. Chapman's SLL because, as discussed above, he acknowledged that Mr. Chapman's history of three different types of cancer could have a common cause other than Roundup, such as a genetic predisposition or an immune system decline due to age. White Decl., Ex. 1, Smith (*Chapman*) Dep. at 37:7-38; 38:17-20. But Dr. Smith failed to reliably "rule out" these alternative causes. He did not even address age as a potential causative factor in his report (Mr. Chapman is 76 years old), and quickly excluded genetic factors as the cause simply because Mr. Chapman's family members were not diagnosed with NHL or another form of SLL. White Decl., Ex. 1, Smith (*Chapman*) Dep. at 40:2-5; Ex. 3, Smith Report at 5-6. Dr. Smith did not discuss the possibility that a genetic factor may be why Plaintiff has now developed three different cancers: SLL, basal cell carcinoma, and melanoma. *Id.* As a result, Dr. Smith has no reliable basis to conclude through a differential etiology that Roundup is the "mostly likely cause" of Mr. Chapman's NHL. *See Clausen*, 339 F.3d at 1057.

An expert conducting a differential diagnosis "must provide reasons for rejecting alternative

hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Smith failed to do so here. He has admitted his methodology is a "purely subjective exercise," *see* White Decl., Ex. 2, Smith (*Alvarez*) Dep. at 201:12-16, and he engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

### III. Dr. Smith Has Not Reliably Ruled Out Unknown Causes Of Mr. Chapman's SLL And Instead Always Point To Roundup.

Just as Dr. Smith failed to engage with Mr. Chapman's known alternative risk factors, he takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases. This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy. *See* PTO 85 at 6. To be admissible, "***an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless***." *Id.* (emphasis added).

Dr. Smith's analysis does not meet this standard. Dr. Smith is unable to offer any reliable method for placing Mr. Chapman in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very assessment. He agreed that in most cases there is no clear reason why lymphoma develops and that all known risk factors still account for only a minority of cases of NHL. *See* White Decl. Ex. 2, Smith (*Alvarez*) Dep. at 90:14-91:13, 103:17-104:4, 107:1-7. In clinical practice, Dr. Smith *never once* told any patient that his or her NHL was caused by exposure to Roundup. *Id.* at 68:25-69:8. He also admitted that for a population of 100 people with NHL, all with the same exposure to Roundup and no other known risk factors, it would be "scientifically impossible" that all cases would be caused by Roundup and he has "no idea" what percentage (or "frequency") would be caused by Roundup. *Id.* at 205:24-206:17. Nevertheless, Dr. Smith entirely fails to address idiopathy or unknown causes and makes no attempt to distinguish Mr. Chapman from someone who might have developed NHL regardless of Roundup exposure. *See* White Decl., Ex. 3, Smith Report. Unlike prior experts, which the Ninth Circuit concluded

adequately accounted for idiopathy, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 966-67 (9th Cir. 2021), Dr. Smith engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the circumstances.  His opinions are inadmissible.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation expert, Dr. Clayton Smith, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present an admissible expert opinion to support specific causation in this case.

Dated:  September 22, 2021

Respectfully submitted,

*/s/ Jed P. White*

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                                 */s/ Jed P. White*