**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *David Schaffner, Jr. and Theresa Sue Schaffner v. Monsanto Co.,* Case No. 3:19-cv-07526-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' SPECIFIC CAUSATION EXPERT DR. RON SCHIFF ON RULE 702 GROUNDS**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on December 13, 2021 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiffs' Specific Causation Expert Dr. Ron Schiff. Monsanto seeks an order excluding opinions of Dr. Ron Schiff under Federal Rule of Evidence 702.

Dated:  September 22, 2021

                                                                                       Respectfully submitted,

                                                                                       */s/ Jed P. White*

                                                                                **BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.    **Plaintiffs Disclosed Dr. Schiff As Their Only Specific Causation Expert.** ........................2

II.    **Mr. Schaffner Has Multiple Risk Factors Associated With NHL.** ....................................2

III.    **Dr. Schiff Purports To Use A Differential "Etiology" In Forming His Specific Causation Opinion.** ........................................................................................................3

LEGAL STANDARD ............................................................................................................5

ARGUMENT .........................................................................................................................6

I.    **Dr. Schiff Failed To Properly Assess Known Alternative Causes Of Mr. Schaffner's NHL.** ..................................................................................................6

II.    **Dr. Schiff Has Not Reliably Ruled Out Unknown Causes Of Mr. Schaffner's NHL And Instead Always Point To Roundup.** .....................................................8

CONCLUSION ......................................................................................................................9

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
  483 F. App'x 182 (6th Cir. 2012) .................................................................................. 5

*Claar v. Burlington N. R.R. Co.*,
  29 F.3d 499 (9th Cir. 1994) .......................................................................................... 7

*Clausen v. M/V New Carissa*,
  339 F.3d 1049 (9th Cir. 2003) ............................................................................... 3, 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .................................................................................................. 5, 9

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ........................................................................................ 8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) ..................................................................................... 6, 7

*Poust v. Huntleigh Healthcare*,
  998 F. Supp. 478 (D.N.J. 1998) .................................................................................... 6

Pre-Trial Order 85 ............................................................................................................ 1, 6, 8

*In re Roundup Prods. Liab. Litig.*,
  358 F. Supp. 3d 956 (N.D. Cal. 2019) .......................................................................... 6

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ..................................................................................... 3, 6

**Other Authorities**

Fed. R. Evid. Rule 702 .................................................................................................. 1, 5, 7, 9

## INTRODUCTION

Plaintiffs designated one specific causation expert, Dr. Ron Schiff, who does not meet the standards of Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85").  While purporting to rely on the same differential etiology/diagnosis methodology the Court previously permitted, Dr. Schiff falls woefully short of the standard established by the first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Like those experts, Dr. Schiff continues to "rule in" Roundup based on the same flawed studies the general causation experts rely on without accounting for Plaintiff David Schaffner, Jr.'s specific NHL sub-type.

But the flaws with Dr. Schiff's analysis also go much further.  Dr. Schiff lacks any principled basis to "rule out" Mr. Schaffner's alternative NHL risk factors, including benzene exposure and inflammatory bowel disease, as well as unknown risk factors which Dr. Schiff acknowledges account for most NHL cases.  He even flat-out admits that he has no grounds to conclude that benzene exposure—one of Mr. Schaffner's known risk factors—did not cause Mr. Schaffner's NHL. *See* Declaration of Jed P. White ("White Decl."), Ex. 1, Schiff (*Schaffner*) Dep. at 119:22-120:1 ("Q. So you can't rule out benzene as a cause or contributing factor to his non-Hodgkin lymphoma?  A. Well, you know, I acknowledged that up front.").  Yet in his unwavering adherence to the conclusion that Roundup is always to blame in every Roundup case in which he is retained (there are many), Dr. Schiff asserts that it does not matter if he can determine that benzene and other risk factors are unlikely to have caused Mr. Schaffner's NHL, because the existence of other potential causes "does not negate" his conclusion, based on exposure alone, that Roundup was a substantial cause of Mr. Schaffner's NHL.  *Id.* at 120:11-15 ("The relevant point though is that if he has more than one risk factor, it does not negate any of the other risk factors on the list.").

Overall, Dr. Schiff's opinions are not the product of a reliable differential etiology/diagnosis.  The Court should exclude them as inadmissible.

## BACKGROUND

**I.     Plaintiffs Disclosed Dr. Schiff As Their Only Specific Causation Expert.**

Plaintiffs disclosed Dr. Ron Schiff to opine on the issue of specific causation. *See* White Decl. Ex. 2, Plaintiffs' Disclosure of Expert Witnesses.[1] Like the specific causation experts disclosed in the earlier cases, Dr. Schiff purports to use a differential diagnosis (or differential "etiology") in reaching his conclusion that Roundup caused Mr. Schaffner's specific subtype of NHL.

Dr. Schiff is an oncologist who left clinical practice in 2015 and has been disclosed as an expert witness in numerous Roundup cases across the country. White Decl., Ex. 3, Schiff Report at 3, 32-33. Dr. Schiff has not published anything in the peer-reviewed literature since 1990. *Id.* at 27-30. While working in clinical practice, Dr. Schiff never told any patient that Roundup caused his or her cancer. White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 133:2-9.

Since leaving the practice of medicine, Dr. Schiff's sole source of earned income has been working as an expert witness. White Decl., Ex. 4, Schiff (*Rehak*) Dep. at 109:18-22. Dr. Schiff has always concluded that Roundup was a substantial cause of a plaintiff's NHL in every case that plaintiffs' lawyers have asked him to review (at least 17). White Decl., Ex. 5, Schiff (*Schafer*) Dep. at 29:12-17. And he has never seen a plaintiff that he did not characterize as having "extensive" exposure to Roundup. White Decl., Ex. 6, Schiff (*Cervantes*) Dep. at 126:7-16.

**II.    Mr. Schaffner Has Multiple Risk Factors Associated With NHL.**

As set forth at length in Monsanto's prior motion to exclude specific causation experts (MDL ECF No. 2420), "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Mr. Schaffner was diagnosed with diffuse B-cell non-Hodgkin's lymphoma in November 2006. *See* White Decl., Ex. 7, Schaffner Fact Sheet at 5. He alleges he used and was exposed to

---

[1] Plaintiffs also listed Dr. Dennis Weisenburger as a specific causation expert, but did not disclose any specific causation opinions from him, just a report concluding that Mr. Schaffner had high-grade B-Cell Non-Hodgkin's lymphoma.

- 2 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF
3:19-CV-07526-VC

Roundup in varying frequencies during his work in landscaping between 1988 and 2003, and through his use of Roundup at his home on a bi-weekly basis from 1998 to 2017. *Id.* at 8-9.

Mr. Schaffner has several risk factors for NHL, including inflammatory bowel disease, a history of smoking, eczema, exposure to pesticides and fungicides (*i.e.*, Orthene, Kocide, Mavrik, Sevin, Dursban, Pyrethrin, and horticultural oil), and exposure to chemicals (*i.e.*, latex and oil paints, paint thinner, Gumout, and mineral spirits). *See* White Decl., Ex. 7, Schaffner Fact Sheet at 4, Ex. 8, Schaffner Dep. at 75:8-15, 78:3-6, 90:23-96:10, 246:16-247:4, 247:18-23. As Dr. Schiff testified, many of Mr. Schaffner's risk factors—specifically, his use of cigarettes, paint thinners, latex and oil paints, Gumout, and mineral spirits—entail exposure to benzene, a Group 1 carcinogen according to the International Agency for Research on Cancer that Dr. Schiff believes can cause NHL. *See* White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 97:23-98:16, 110:22-23, 111:19-112:3, 116:12-119:21.

**III. Dr. Schiff Purports To Use A Differential "Etiology" In Forming His Specific Causation Opinion.**

Like the specific causation experts previously assessed in this MDL, Dr. Schiff purports to reach his specific causation opinion in this case through what he claims is a "differential etiology analysis." White Decl., Ex. 3, Schiff Report at 4. As this Court has acknowledged, "differential diagnosis" is a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.* The expert must then "rule out" the possible causes using a scientific method until only the most likely cause remains. *Id.*

The "differential etiology" performed by Dr. Schiff, while it has a similar name, is fundamentally different from the accepted medical practice of differential diagnosis. As discussed below, unlike a differential diagnosis, the differential "etiology" is a legal construct that is not used in actual medical practice and has no support in published scientific literature.

Specifically, Dr. Schiff utilizes a form of the "differential diagnosis" process that strays far

from any reliable methodology because his process is designed to lead to a pre-ordained conclusion. First, he "rules in" Roundup by uncritically relying on the same flawed studies the general causation experts rely on and without taking account of the Mr. Schaffner's specific subtype of NHL. *See* White Decl., Ex. 3, Schiff Report at 16-17. Second, Dr. Schiff ignores and/or downplays Mr. Schaffner's relevant NHL risk factors other than Roundup, again without considering the specific sub-type at issue, and without applying the same reasoning to the potential alternative causes that he applies to Roundup. And throughout his "analysis," Dr. Schiff ignores altogether the possibility that Mr. Schaffner's NHL may have no known cause, as would be the case where NHL is caused by a yet to be discovered factor or from the random mutation that inevitably occurs through normal cell division. According to Dr. Schiff, if a plaintiff came into substantial contact with Roundup, *that fact alone* proves that Roundup was a substantial cause of the plaintiff's NHL, and that conclusion is not "negate[d]" by the presence of other risk factors, even if Dr. Schiff has no basis to "rule out" such risk factors. *See* White Decl., Ex. 1, Schiff Dep. at 114:15-21, 120:11-15.

In his deposition in this case, Dr. Schiff readily admitted that he is unable to "rule out" other potential causes of Mr. Schaffner's NHL—which is an essential aspect of a reliable differential diagnosis methodology. He acknowledged that Mr. Schaffner has several risk factors that could have caused his NHL, include inflammatory bowel disease and benzene exposure through use of cigarettes, paint thinner, latex and oil paints, Gumout, and mineral spirits. *Id.* at 100:6-18, 105:6-23, 110:24-112:3, 116:12-11921. He acknowledged that certain inflammatory bowel diseases are NHL risk factors, but dismissed the risk here because it "has not been conclusively documented in Mr. Schaffner's case," and Mr. Schaffner's treatment for inflammatory bowel disease (a partial colectomy) occurred after his treatment for NHL. *Id.* at 100:10-101:7. With respect to benzene exposure, Dr. Schiff openly admitted that he believes it is a cause of NHL, and cannot be excluded as the cause or a contributing factor for Mr. Schaffner's NHL:

> Q. So you can't rule out benzene as a cause or contributing factor to his non-Hodgkin lymphoma?
>
> A. **Well, you know, I acknowledged that up front.** [. . .]
>
> Q. How much did Mr. Schaffner's exposure to benzene through these other chemical products increase the risk of – his risk of non-Hodgkin lymphoma?

A. ***Well, as I've indicated, there's no possible way to know it***. [. . .]

*Id.* at 119:22-120:21 (emphasis added).

Despite acknowledging these risk factors for Mr. Schaffner's NHL, Dr. Schiff did not even bother to interview Mr. Schaffner, and did not know what his level of benzene exposure was. *Id.* at 11:3-6, 119:19-21. He also could not say "what the relative size difference" is for Mr. Schaffner's "risk from Roundup exposure . . . compared to his risk from any of his other risk factors." *Id.* at 125:13-24.

Finally, although Dr. Schiff plans to tell the jury that Mr. Schaffner's exposure to Roundup caused his NHL, Dr. Schiff testified that he "***would not tell Mr. Schaffner that he would have avoided his diagnosis of non-Hodgkin lymphoma if he had never used Roundup***." *Id.* at 130:5-10 (emphasis added). In other words, Dr. Schiff *cannot say* that Roundup was the cause of Mr. Schaffner's NHL and that Mr. Schaffner would not have developed NHL if he had not used Roundup. This admission is fatal to Dr. Schiff's specific causation opinion.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Put differently, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Here, the Court should exclude Dr. Schiff's opinions on the grounds that they are not reliable or helpful because Dr. Schiff leaps to the conclusion that Roundup was the cause of Mr. Schaffner's NHL based on his exposure alone, without weighing or eliminating other risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through

a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiffs fail to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

## ARGUMENT

### I. Dr. Schiff Failed To Properly Assess Known Alternative Causes Of Mr. Schaffner's NHL.

Dr. Schiff failed to adequately address the numerous potential causes of Mr. Schaffner's NHL other than Roundup, which is required for his opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *Clausen*, 339 F.3d at 1057. The Ninth Circuit instructs experts to include "even rare entities in the list" to "ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the "most likely cause" remains. *Id.*

Dr. Schiff appears to have "ruled in" several alternative causes for Mr. Schaffner's NHL, including inflammatory bowel disease and benzene exposure. *See* White Decl., Ex. 3, Schiff Report at 17-18. But he failed to reliably "rule out" those alternative causes, so he has no reliable basis to conclude through a differential etiology that Roundup is the "mostly likely cause" of Mr. Schaffner's NHL. *See Clausen*, 339 F.3d at 1057. Dr. Schiff's testimony reveals that he did not seriously consider that something other than Roundup could have caused Mr. Schaffner's NHL. Instead, he *started* with the pre-ordained conclusion that Roundup was the cause, and then sought to justify that conclusion—and insulate it from scrutiny by the Court—by paying lip service to other potential causes.

An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Schiff failed to do so here, and instead engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

With respect to benzene exposure, Dr. Schiff openly admits he cannot eliminate (or "rule out") it as the cause of Mr. Schaffner's NHL. *See* White Decl., Ex. 1, Schiff Dep. at 119:22-120:21. In his report, Dr. Schiff downplayed Mr. Schaffner's exposure to benzene from using fungicides, insecticides, and chemicals by stating: "the extent to which Mr. Schaffner may have been exposed to benzene as a result of his occupational exposures to these solvents and other chemicals **is not clear**." White Decl., Ex. 3, Schiff Report at 18 (emphasis added). Similarly, with respect to Mr. Schaffner's inflammatory bowel disease, Dr. Schiff was dismissive, claiming that the diagnosis was not "conclusively documented." White Decl., Ex. 1, Schiff Dep. at 100:10-101:7. Dr. Schiff's reasoning reflects his failure to fully investigate alternative causes, not the elimination of alternative cause through "scientific methods and procedures," which the Ninth Circuit has held is an essential element of a reliable differential etiology analysis. *See Clausen*, 339 F.3d at 1058

Taken as a whole, Dr. Schiff's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later

developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." 892 F.3d at 645. Here, as in *Lipitor*, Dr. Schiff simply "dismiss[es] other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis." *Id.* He has no basis to conclude that Roundup, as opposed to inflammatory bowel disease, exposure to benzene, or some other risk factor, is the most likely cause of Mr. Schaffner's NHL. The Court should exclude Dr. Schiff's opinion on that basis.

## II. Dr. Schiff Has Not Reliably Ruled Out Unknown Causes Of Mr. Schaffner's NHL And Instead Always Point To Roundup.

Just as Dr. Schiff failed to engage with Mr. Schaffner's known alternative risk factors, he takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases. This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy. *See* PTO 85 at 6. To be admissible, "***an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless***." *Id.* (emphasis added).

Dr. Schiff's analysis does not meet this standard. Dr. Schiff is unable to offer any reliable method for placing Mr. Schaffner in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very assessment. Indeed, Dr. Schiff testified that he *cannot say* that Mr. Schaffner would not have developed NHL but for his use Roundup. *See* White Decl., Ex. 1, Schiff Dep. at 100:10-101:7 (testifying that he "would not tell Mr. Schaffner that he would have avoided his diagnosis of non-Hodgkin lymphoma if he had never used Roundup.") Unlike prior experts, which the Ninth Circuit concluded adequately accounted for idiopathy, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 966-67 (9th Cir. 2021), Dr. Schiff engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the circumstances.

Dr. Schiff makes no effort to reliably account for the possibility that Mr. Schaffner's NHL has an unknown cause. In a prior Roundup case, Dr. Schiff testified that 80% "of the patients [he] treated

with non-Hodgkin lymphoma did not have a known cause of their non-Hodgkin lymphoma." White Decl., Ex. 9, Schiff (*Harris*) Dep. at 88:2-90:6; *see also* White Decl., Ex. 6, Schiff (*Cervantes*) Dep. at 38:3-7.  In this case, Dr. Schiff admitted that Large B cell lymphoma "can develop through the regular process of lymphocytes replicating," and that that he never once told a patient that their NHL was caused by Roundup.  White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 86:11-15, 133:2-9.

Despite his admission that most cases of NHL have no known cause, and despite that he never told a patient in clinical practice that Roundup caused their NHL, since becoming an expert in this litigation, Dr. Schiff has found Roundup to be the cause of every plaintiff's NHL thus far, no matter the subtype or other risk factors present.  White Decl., Ex. 9, Schiff (*Harris*) Dep. at 92:24-93:4; *see also id.* at 91:3-7, 91:18-22; Ex. 5, Schiff (*Schafer*) Dep. at 29:12-17.  To explain this about-face, Dr. Schiff points to his purportedly new "recognition of the lymphoma risks associated with glyphosate and Roundup" when IARC issued its Monograph in 2015, right as he retired from medical practice and became a full-time expert witness.  White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 131:21-132:4.  This new "recognition," however, is a red herring, because the literature upon which the IARC Monograph was based, and on which he relies to rule in Roundup (*e.g.*, McDuffie 2001 and Eriksson 2008), existed for many years before he retired.

Dr. Schiff's inability to offer any rational explanation for the striking contrast between his conclusion that 80% of the patients he treated had no known cause for their NHL and his conclusion that Roundup was the cause of every plaintiffs' NHL thus far—apart from the obvious outcome-driven one—renders his testimony unreliable and inadmissible under Rule 702.  It is evident that according to Dr. Schiff, once a plaintiff alleges exposure to Roundup, that exposure will automatically trump any potential idiopathic or known risk factor in every situation.  That conclusion defies any modicum of reliability and should not be tolerated by this Court.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation expert, Dr. Ron D. Schiff, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert

opinion to support specific causation in this case.

Dated:  September 22, 2021

                                      Respectfully submitted,

                                      */s/ Jed P. White*

                                      **BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                */s/ Jed P. White*