# EXHIBIT 4

# D. Barry Boyd, MD

9 Ravenglass Drive
Stamford, CT 06903

9/20/2021

Christian LaBletta, Esq.
LaBletta and Walters, LLC
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428

Re:    Vosper v. Monsanto Company
       Case No. 3:119-cv-05525

Dear Mr. LaBletta:

I am providing this report subsequent to my deposition taken on 9/3/2021 due to the submission of new documents that were unavailable at the time of my deposition but about which I was questioned by the defense attorney.

At the time of my deposition, the defense attorney questioned me about my review of the toxicology report of Dr. William Sawyer. I replied that the report was a part of my analysis of whether there was a causal connection between Mr. Vosper's Roundup exposure and his non-Hodgkin's lymphoma of Mr. Vosper.

As I noted, I do not personally do the same exposure calculations and assessment. However, while I review the Roundup exposure history, I rely on the expert toxicologist to provide exposure information in order to reach conclusions regarding causation.

The lawyer noted at my deposition that during the deposition of Dr. Sawyer two exposure-day calculation errors were noted in his report, reducing Mr. Vosper's total exposure downward.  His report was then revised. At the time, I noted that without access to this revision, I could not comment on its effect on my opinion.

Page | 1

Since that time, I have reviewed Dr. Sawyer's revised toxicology report, dated September 8, 2021. The revised report indicates a cumulative midpoint of 32 exposure-days (minimum: 26 exposure-days; maximum:38 exposure-days).

This revised exposure is still well above the high-risk range as was the original exposure and so changes nothing about my opinion. Even with the reduction, Mr. Vosper's exposure far significantly exceeds--by multiple times--the requisite exposure metric cited in the human epidemiology studies, indicating that he had a statistically significant increase in risk of NHL with Roundup/glyphosate applicators. Accordingly, based on review of this revised toxicology report, my opinion regarding the role Roundup exposure played in Mr. Vosper's non-Hodgkin's lymphoma is unchanged; Roundup exposure played a substantial causal role in his non-Hodgkins lymphoma.

Aside from the foregoing, I am also replying to the defense attorney's questioning during deposition regarding the "in vitro" animal studies, as part of the broader toxicity data supporting the carcinogenicity of glyphosate. Animal models, both in vitro and in vivo, are frequently used to assess the ability of environmental exposures to induce changes in DNA and chromosomal number and structure, as part of the broader risk assessment of these exposure risk and are widely accepted in research on cancer causation. Indeed, one of the most frequently cited models for cancer causation is the effect of compounds on mutation rates in bacterial model organisms such as Salmonella. These are single-celled organisms incapable of getting cancer or any other diseases common in mammals or humans and their use illustrates the importance of even primitive non-human organisms in the study of human carcinogenesis.

Also, I was specifically asked by the defense attorney whether tadpoles (immature frogs) or fish "get cancer or lymphoma," based on genotoxicity studies in these animal models. I replied that I believe so. I was asked for peer-reviewed literature that I could cite to support this. My answer was based on the general understanding, and in the literature, that all vertebrates have been documented to develop cancers.

As noted, multiple different organism models are used to assess the cellular changes associated with chemical exposures, including bacterial mutagenesis models.

This line of questioning is a striking and shocking example of either scientific illiteracy or contempt for the science on the part of the defense lawyer. The citations related to these animal studies were a much smaller part of the large body of genotoxicity research on glyphosate and glyphosate formulations. This research includes multiple studies documenting DNA and chromosomal changes in both human and other mammalian lymphocyte studies--all of which are in the peer-reviewed literature and are directly relevant to lymphoma causation. In fact, these studies were critical in the IARC decision to classify glyphosate as a probable human carcinogen. Notably, during my deposition, I was not asked about these studies that strongly support the role of glyphosate in NHL causation. The peer-reviewed literature contains multiple genotoxic studies in both human and non-human lymphocyte systems that indicate glyphosate as well as glyphosate formulations (such as Roundup) induce multiple DNA (DNA adduct formation, DNA strand breaks) and chromosomal alterations (micronuclei, sister chromatid exchanges) that are highly correlated with chemical-induced carcinogenicity in humans.

The foregoing opinions are made to a reasonable degree of medical and scientific certainty.

Sincerely,

D. Barry Boyd, MD, MS
Senior Oncologist Yale-Smilow Cancer Center
Greenwich Hospital-Yale Health System
Assistant Professor of Medicine, Yale University School of Medicine