**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,<br><br>*Troy Wilson Thomas and Josephine Ventura v. Monsanto Co.*, 3:20-cv-08051-VC | MDL No. 2741<br><br>Case No: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' SPECIFIC CAUSE EXPERTS DR. MARC BRAUNSTEIN AND DR. RONALD KENDALL ON RULE 702 GROUNDS**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on December 13, 2021 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiffs' Specific Cause Experts Dr. Marc Braunstein and Dr. Ronald Kendall.  Monsanto seeks an order excluding opinions of these witnesses under Federal Rule of Evidence 702.

Dated:  September 22, 2021          Respectfully submitted,

                                    /s/ Jed P. White
                                    Attorney for Defendant Monsanto Company

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

I.     Plaintiffs Disclosed Dr. Braunstein And Dr. Kendall As Specific Causation Experts. ...............................................................................................................................2

II.    Mr. Thomas Has Multiple Risk Factors Associated With NHL. ........................................2

III.   Dr. Braunstein And Dr. Kendall Purport To Use A Differential "Etiology" In Forming Their Specific Causation Opinions. .....................................................................3

LEGAL STANDARD ...................................................................................................................5

ARGUMENT .................................................................................................................................6

I.     Plaintiffs' Specific Causation Experts Fail To Reliably Consider and Rule Out Potential Alternative Causes Of His NHL. ........................................................................6

     A.    Dr. Braunstein did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors. .....................................................................7

     B.    Dr. Kendall did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors. .....................................................................8

II.    Dr. Braunstein And Dr. Kendall Failed to Reliably Rule Out Unknown Causes Of Mr. Thomas' NHL, Instead Concluding That Roundup Must Have Been the Cause. ........................................................................................................9

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
   483 F. App'x 182 (6th Cir. 2012) ................................................................................... 6

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir. 1994) ............................................................................................ 7

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) ................................................................................ 3, 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................. 5, 10

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ........................................................................................ 10

*Hernandez v. Leichliter*,
   No. 14-cv- 5500, 2016 WL 684038 (S.D.N.Y. Feb. 18, 2016) ...................................... 9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) ...................................................................................... 6, 9

*Marmo v. Tyson Fresh Meats, Inc.*,
   457 F.3d 748 (8th Cir. 2006) ...................................................................................... 3, 8

*Poust v. Huntleigh Healthcare*,
   998 F. Supp. 478 (D.N.J. 1998) ..................................................................................... 6

Pre-Trial Order 85 ............................................................................................... 1, 6, 9, 10

*In re Roundup Prods. Liab. Litig.*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019) ........................................................................... 6

*Snyder v. Bank of Am., N.A.*,
   No. 15-cv-04228, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ................................... 9

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ...................................................................................... 3, 6

**Other Authorities**

Fed. Rule Evid. 702 ............................................................................................ 1, 5, 7, 10

# INTRODUCTION

Plaintiffs designated two specific causation experts, Dr. Marc Braunstein and Dr. Ronald Kendall, neither of whom meets the standards of Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85"). Dr. Braunstein and Dr. Kendall both fall woefully short of the standard established by the first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Like those experts, Dr. Braunstein and Dr. Kendall continue to rule in Roundup based on the same flawed studies the general causation experts rely on without accounting for Plaintiff Troy Thomas' specific NHL sub-type.

But the flaws with Dr. Braunstein and Dr. Kendall's analyses also go much further. Both experts lack any principled basis to rule out Mr. Thomas' myriad risk factors for NHL, including a history of obesity and diabetes, and a family history of cancer. They also failed to reliably rule out unknown risk factors which account for most NHL cases. This failure is even more striking given that these experts concede that obesity, diabetes, and a family history of cancer are linked to NHL. Dr. Kendall, for example, admitted that Mr. Thomas may have developed NHL due to his history of obesity and diabetes, even if had he never used Roundup. *See* Declaration of Jed P. White ("White Decl."), Ex. 1, Kendall (*Thomas/Savory*) Dep. at 123:23-124:2 (Q. "[I]f Mr. Thomas had a history of obesity, a history of diabetes and no Roundup use, you would agree that it is still possible he could have had NHL, right? A. Yeah, we can't rule that out. I agree."); *see also* Ex. 2, Braunstein (*Thomas*) Dep. at 89:19-90:20, 94:17-96:3. Yet in their unwavering adherence to the conclusion that Roundup is always to blame for any plaintiff's NHL, Dr. Braunstein and Dr. Kendall simply conclude that Roundup caused Mr. Thomas' NHL, without having rigorously analyzed the alternative hypothesis that Mr. Thomas' other known or unknown risk factors were the cause here. As a result, neither expert has a reliable basis to conclude that Roundup is the most likely cause of Mr. Thomas' NHL.

The Court should exclude Dr. Kendall and Dr. Braunstein's opinion as inadmissible.

# BACKGROUND

## I. Plaintiffs Disclosed Dr. Braunstein And Dr. Kendall As Specific Causation Experts.

Plaintiffs disclosed two specific causation experts, both of whom—like the specific causation experts disclosed in the bellwether cases—purport to use a differential diagnosis (or differential "etiology") in reaching their conclusion that Roundup caused Mr. Thomas' specific subtype of NHL.

Dr. Braunstein is an oncologist and hematologist. *See* White Decl., Ex. 2, Braunstein Dep. (*Thomas*) at 32:23-24. In clinical practice, Dr. Braunstein has **never** told any patient that Roundup caused his or her NHL. *Id.* at 42:4-12. Nonetheless, he reaches that conclusion in this case. Moreover, before getting involved as a paid expert here, Dr. Braunstein had no knowledge of any possible link between glyphosate and NHL. *Id.* at 50:4-8 ("Q. Other than the reading that you've done for this case, do you have any experience, education, or expertise in the carcinogenicity of glyphosate or Roundup? A. No, sir."); *see also id* at 120:15-121:9. And after reviewing the literature for this case, Dr. Braunstein testified that "the literature is not definitive on" whether "glyphosate causes non-Hodkin's lymphoma" and reasonable scientific minds "do" differ on that question. *Id.* at 180:2-24; 181:19-23.

Dr. Kendall is a forensic toxicologist. White Decl., Ex. 3, Kendall Report at 2. Dr. Kendall is not an oncologist, hematologist, or pathologist, nor does he diagnose or treat cancer patients. *See* White Decl., Ex. 4, Kendall (*Spector*) Dep. at 42:23-43:19. Despite reaching the conclusion in this case that Roundup is a substantial cause for Mr. Thomas' NHL, Dr. Kendall testified "it's a debatable issue" whether glyphosate is carcinogenic or genotoxic. White Decl., Ex. 1, Kendall (*Thomas/Savory*) Dep. at 194:8-12; *see also id.* at 186:9-12 ("Do you disagree with EPA when they state glyphosate is not genotoxic? A. I think that's a debatable answer based on where we are today.").

## II. Mr. Thomas Has Multiple Risk Factors Associated With NHL.

As set forth at length in Monsanto's prior motion to exclude specific causation experts (MDL ECF No. 2420), "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Mr. Thomas was diagnosed with diffuse large B-cell lymphoma in 2020, which he alleges was caused by exposure to Roundup that he applied around his residential properties between 2000 and 2020. Prior to being diagnosed with NHL, Mr. Thomas had a history of obesity (with a body mass index ("BMI") of around 34.6), which he treated with lap band surgery (although he remained obese after the surgery). White Decl., Ex. 5, Thomas Dep. at 25:17-19, 117:16-118:11; Ex. 6, Braunstein Report at 3. He also had multiple other health conditions, including recurrent deep venous thrombosis, diabetes, hypertension, and high cholesterol, plus a family history of prostate cancer. *Id.*

### III. Dr. Braunstein And Dr. Kendall Purport To Use A Differential "Etiology" In Forming Their Specific Causation Opinions.

Like other specific causation experts previously assessed in this MDL, Dr. Braunstein and Dr. Kendall purport to reach their specific causation opinions by concluding there is a proven link between Roundup use and NHL, and then by purporting to exclude (or rule out) any other potential causes of Mr. Thomas' NHL. White Decl., Ex. 6, Braunstein Report at 7; Ex. 2, Kendall Report at 14. As this Court has explained, the experts' methodology is often called a "differential diagnosis," a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.* The expert must then "rule out" the possible causes using a scientific method until only the "most likely cause" remains. *Id.*

The methodology performed by Dr. Braunstein and Dr. Kendall, while it may be referred to as a "differential etiology,"[1] is fundamentally different from the accepted medical practice of

---

[1] Dr. Kendall does not use the term "differential etiology" or "differential diagnosis," but does claim to have considered and eliminated confounding toxicological factors. White Decl., Ex. 3, Kendall Report at 14. Regardless of what Dr. Kendall calls his methodology, the law is clear that he must rule out alternative causes to have a reliable basis to reach his conclusion that Roundup was the most likely cause of Mr. Thomas' NHL. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming exclusion of toxicologist's expert opinions where the toxicologist did not "exclude confounding factors, which leaves open the possibility of competing causes of the disease and raises questions about the competency of expert testimony") (internal quotation marks, citation omitted).

differential diagnosis. It purports to use a comparable methodology, but to discern the fundamental cause of a disease rather than to diagnose the disease. *See, e.g.*, White Decl., Ex. 4, Kendall (*Spector*) Dep. at 35:3-18. Unlike a differential diagnosis the differential "etiology" is a "legal construct" that is not used in actual medical practice and has no support in published scientific literature.

Plaintiffs' experts here utilize a form of the "differential diagnosis" process that strays far from any reliable methodology because their process is designed to lead to their pre-ordained conclusion. Dr. Kendall uncritically relied on many of the same flawed studies the general causation experts rely on and without taking account of the Mr. Thomas' specific subtype of NHL. *See, e.g.*, White Decl., Ex. 3, Kendall Report at 10-11. Dr. Braunstein relied on a small population of literature that he solely reviewed in preparation for this litigation, and he agreed that the common conclusion in human studies is that there is not a statistically significant increased risk of NHL after adjustments for the use of other pesticides. *See* White Decl., Ex. 7 Braunstein (*Savory*) Dep. at 48:12-50:16; Ex. 2, Braunstein (*Thomas*) Dep. at 131:22-141:23.

After "ruling in" Roundup based on this flawed reasoning, Dr. Braunstein and Dr. Kendall then apply a results-oriented approach that does not adhere to the "differential diagnosis" methodology; their approach largely ignores other known NHL risk factors, despite that they acknowledge associations between Mr. Thomas' alternative risk factors and NHL. Specifically, Dr. Braunstein and Dr. Kendall recognize that Mr. Thomas had a personal history of obesity and diabetes and a father who had prostate cancer, all of which are risk factors associated with developing NHL. White Decl., Ex. 2, Braunstein Dep. at 89:18-90:20, 91:19-92:7, 94:17-95:19, 196:13-197:7, Ex. 1, Kendall (*Thomas/Savory*) Dep. at 97:17-93:11, 118:18-119:1, 162:23-24, 166:3-14.

Dr. Kendall conceded that he lacks a basis to "rule out" the possibility that Mr. Thomas would have developed NHL due to his history of obesity and diabetes, even if he had never used Roundup. White Decl., Ex. 1, Kendall Dep. (*Thomas/Savory*) at 123:16-124:2. When asked how he would assess a plaintiff with a history of obesity and diabetes (*i.e.*, two of Mr. Thomas' NHL risk factors) but who had not used Roundup, Dr. Kendall testified: "***I don't know. I haven't really thought about it.***" *Id.* (emphasis added). In his report, Dr. Kendall did not discuss or analyze the possibility that obesity, diabetes, or a family history of cancer were the cause of Mr. Thomas' NHL, yet he summarily

concluded that Mr. Thomas' exposure to Roundup "was a substantial contributing factor to his development" of NHL. White Decl., Ex. 3, Kendall Report at 14.

Dr. Braunstein also summarily dismissed alternative causes of Mr. Thomas' NHL in a transparent effort to conclude that Roundup was the cause. In his report, he did not discuss diabetes at all, other than to note that Mr. Thomas was diagnosed with it. *See* White Decl., Ex. 6, Braunstein Report at 3. With respect to obesity, Dr. Braunstein acknowledged that "[s]everal studies have found a significant positive association between obesity and NHL risk," but then quickly ruled it out as a cause for Mr. Thomas' NHL, reasoning that Mr. Thomas had obesity, not morbid obesity which has a higher association with NHL than non-morbid obesity. White Decl., Ex. 6, Braunstein Report at 8. But Dr. Braunstein acknowledged in his deposition that obesity (not just morbid obesity) is linked to NHL, showing that he had no grounds to exclude it as a potential cause for Mr. Thomas' NHL. White Decl., Ex. 2, Braunstein (*Thomas*) Dep. at 94:17-95:19, 277:6-278:24.

Moreover, throughout their analyses, both experts ignore altogether the possibility that Mr. Thomas' NHL may have no known cause, as would be the case where NHL is caused by a yet to be discovered factor or from the random mutation that inevitably occurs through normal cell division. According to each of these experts, if a plaintiff was exposed to Roundup, that fact alone automatically excludes the possibility of an idiopathic or unknown cause.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Here, the experts' opinions should be excluded on the grounds that (1) they are not reliable, and (2) they are not helpful to the jury because the experts automatically conclude Roundup was the cause without weighing or eliminating other risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019) ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

## ARGUMENT

### I. Plaintiffs' Specific Causation Experts Fail To Reliably Consider and Rule Out Potential Alternative Causes Of His NHL.

Dr. Braunstein and Dr. Kendall both fail to adequately consider, address, and rule out the numerous potential causes of Mr. Thomas' NHL other than Roundup, which is required for their opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *See Clausen*, 339 F.3d at 1058. The Ninth

Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains. Plaintiffs' experts failed to consider (or "rule in") known alternative causes altogether, thus failing to satisfy step one. Even when the experts did mention potential alternative causes, they dealt with such causes so casually that it is impossible to even discern whether they ruled in a cause and then ruled it out, or did not rule in the cause in the first place.

Regardless of which step in the differential diagnosis is involved, the experts' testimony reveals that they did not seriously consider that something other than Roundup could have caused Mr. Thomas' NHL. Instead, each started with the conclusion that Roundup was the cause, and then sought to justify that conclusion—and insulate it from scrutiny by the Court—by paying lip service to other potential causes. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Mr. Thomas' experts have failed to do so here, and instead have engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

### A. Dr. Braunstein did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors.

Dr. Braunstein did not perform a reliable differential etiology, and thus lacks a reliable basis for his conclusion that Roundup was the mostly likely cause of Mr. Thomas' NHL. *See* White Decl., Ex. 6, Braunstein Report at 14. He pays lip service to alternative causes of Mr. Thomas' NHL, and quickly dismisses them without applying the same reasoning to the potential alternative causes that he applies to Roundup.

As discussed above, Dr. Braunstein's report states Mr. Thomas had type 2 diabetes, but then does not even address whether diabetes might have caused or contributed to Mr. Thomas' NHL. *See id.* at 3. Dr. Braunstein thus lacks any basis to "rule out" diabetes as the most likely cause of Mr. Thomas' NHL.

     Dr. Braunstein also has no reliable basis to "rule out" Mr. Thomas' history of obesity as the most likely cause of his NHL. His reasoning for excluding obesity as a cause of Mr. Thomas' NHL is that he did not have *morbid* obesity, yet he testified in his deposition that a link between obesity and NHL has been shown for non-morbid obesity. *Compare* White Decl., Ex. 6, Braunstein Report at 8, *with* Ex. 2, Braunstein (*Savory*) Dep., at 112:17-113:2, 113:18-114:3. Indeed, in another MDL Wave 3 case (*Savory*), Dr. Braunstein testified that he could not entirely exclude the plaintiff's BMI above 30 as an NHL risk factor (Mr. Thomas also has a BMI above 30). White Decl., Ex. 7, Braunstein (*Savory*) Dep. at 78:14-22, 79:13-22.

     Further, Dr. Braunstein does not reliably rule out Mr. Thomas' family history of prostate cancer. He acknowledges that there is scientific and medical literature showing an association between a first-degree relative with a history of cancer other than NHL and the development of NHL. White Decl., Ex. 2, Braunstein (*Thomas*) Dep. at 89:23-90:20, 196:2-197:4. And he provides no basis for ignoring Mr. Thomas' family history here, other than to assert that Mr. Thomas' father had prostate cancer (not NHL), a point that does not address the data showing a family history of different cancers to also be an NHL risk factor. White Decl., Ex. 6, Braunstein Report at 8.

     **B.**    **Dr. Kendall did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors.**

     Where Dr. Braunstein's analysis of alternative causes is cursory at best, Dr. Kendall's has no analysis at all: he just ignores them. Dr. Kendall's report does not analyze any other potential causes, and instead only concludes there were no confounding toxicological factors. Ex. 3, Kendall Report at 14. So he either did not "rule in" any potential causes other than Roundup, or he "ruled out" all alternative causes without even discussing his reasoning, analysis, or thought process in his report. Either way, Dr. Kendall's analysis is unreliable.

     As discussed above, in his deposition Dr. Kendall testified that Mr. Thomas' history of obesity, diabetes, and familial cancer are all associated with developing NHL in the medical and scientific literature. White Decl., Ex. 1 Kendall (*Thomas/Savory*) Dep. at 92:17-93:11, 118:18-119:1, 162:23-24, 166:6-14. Therefore, he had an obligation to analyze whether these risk factors may have caused Mr. Thomas' NHL. *See Marmo*, 457 F.3d at 75. But he did not. His report contains no

- 8 -
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. BRAUNSTEIN AND DR. KENDALL
3:20-cv-08051

discussion of alternative risk factors.  White Decl., Ex. 3, Kendall Report.  As he testified in his deposition, he had not "***really thought about***" what the cause of Mr. Thomas' NHL would have been if he had the same other risk factors but no prior Roundup use.  *Id.* at 123:16-124:2 (emphasis added).  He also testified that with respect to another MDL Wave 3 plaintiff (*Spector*), he cannot rule out the possibility that she "manifested NHL via her increased risk of NHL from a first degree relative with cancer independent of other causes."  *Id.* at 117:3-7.  Overall, Dr. Kendall's analysis lacks scientific rigor and fails to rule out Mr. Thomas' multiple alternative risk factors in a reliable manner.[2]

\*          \*          \*

Taken as a whole, Dr. Braunstein and Dr. Kendall's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes."  892 F.3d at 645.  Here, as in *Lipitor*, the experts' reports simply "dismiss other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis."  *Id.*  The Court should exclude each expert's opinion on that basis.

**II.     Dr. Braunstein And Dr. Kendall Failed to Reliably Rule Out Unknown Causes Of Mr. Thomas' NHL, Instead Concluding That Roundup Must Have Been the Cause.**

Just as Dr. Braunstein and Dr. Kendall fail to engage with the known alternative risk factors confronting Mr. Thomas, they take an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases:  they simply ignore the prospect.  This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with

---

[2] Additionally, entire paragraphs of Dr. Kendall's report appear to be directly copied from the expert report of Dr. Sawyer from the *Schafer* (Wave 2) case.  *Compare* White Decl., Ex. 3, Kendall Report, at 11-16, with Ex. 8, Sawyer (*Schafer*) Report at 33, 38-39, 188-91.  This suggests that many of Dr. Kendall's opinions are not reliable or based on his own analysis, but rather are simply parroting the opinions of another expert witness who was not even disclosed in this case.  Dr. Kendall should be excluded on this basis alone.  *See, e.g., Snyder v. Bank of Am., N.A.*, No. 15-cv-04228, 2020 WL 6462400, at \*4 (N.D. Cal. Nov. 3, 2020) (excluding expert testimony as unreliable because, among other reasons, the expert's report was "almost entirely copied and pasted from" another expert's report with only minor changes); *Hernandez v. Leichliter*, No. 14-cv- 5500, 2016 WL 684038, at \*3-4 (S.D.N.Y. Feb. 18, 2016) (excluding expert testimony as unreliable where the expert's report was "virtually identical (except for names and dates) to" the expert's report from another case).

idiopathy. *See* PTO 85 at 6. To be admissible "***an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless***." *Id.* (emphasis added).

Dr. Braunstein and Dr. Kendall's analyses do not meet this standard. Both experts are unable to offer any reliable method for placing Mr. Thomas in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very assessment. Indeed, despite testifying that for "the majority of cases [he is] not able to" identify the specific cause for NHL and he has never told a patient that Roundup caused his or her NHL, White Decl., Ex. 2, Braunstein Dep. (*Thomas*) at 41:21-42:3, Dr. Braunstein's expert report does not address whether Mr. Thomas' NHL has an unknown or idiopathic. White Decl., Ex. 6, Braunstein Report. Dr. Kendall similarly ignores this possibility of an unknown cause in his report, despite that he testified "I don't know" when asked if Mr. Thomas would still have developed NHL if he had never used Roundup. White Decl., Ex. 1, Kendall (*Thomas/Savory*) Dep. at Ex. 3, Kendall Report.

Moreover, unlike prior experts, which the Ninth Circuit concluded adequately accounted for idiopathy, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 966-67 (9th Cir. 2021), Plaintiffs' experts in this case do not "rel[y] heavily on the plaintiffs' exposure levels in drawing their conclusions." PTO 85 at 6. Dr. Braunstein did not attempt to quantify Mr. Thomas' exposure to Roundup, instead basing his conclusion solely on the length of time that Mr. Thomas used Roundup (as opposed to dermatologic exposure). *See* White Decl., Ex. 2, Braunstein (*Thomas*) Dep. at 105:9-22. Dr. Braunstein testified that he has "no information about [Mr. Thomas'] internal dose of glyphosate." *Id.* at 106:5-15. Dr. Kendall, likewise, did no reliably analyze Mr. Thomas' exposure. He stated that exposure to glyphosate is different than an internal dose of glyphosate and that an internal dose of glyphosate is necessary to cause cancer. And he agreed that Mr. Thomas' exposure to glyphosate would be lower because he used a ready-to-use formulation. *See, e.g.*, White Decl., Ex. 1, Kendall (*Thomas/Savory*) Dep. at 172:10-173:6.

Ultimately, both experts engage in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure. But, as this Court made clear in discussing idiopathy, exposure alone is not enough.

**CONCLUSION**

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation experts, Dr. Braunstein and Dr. Kendall, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case.

Dated:  September 22, 2021                    Respectfully submitted,

*/s/ Jed P. White*
Attorney for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2021 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                 */s/ Jed P. White*