# EXHIBIT 4

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2
 3    IN RE:  ROUNDUP PRODUCTS      MDL No. 2741
      LIABILITY LITIGATION
 4    _____
 5    SPECTOR V. MONSANTO, CO.,     *
      Case no. 3:20-cv-05532        *
 6    _____
 7
      ****************************************************
 8
                REMOTE VIDEOTAPED DEPOSITION OF
 9                  RONALD J. KENDALL, Ph.D.
                       AUGUST 26, 2021
10
      ****************************************************
11
12
13
14
15
16            DEPOSITION of RONALD J. KENDALL,
17    Ph.D., produced as a witness at the instance of the
18    Defendant, and duly sworn, was taken in the
19    above-styled and numbered cause on the 26th day of
20    August, 2021, from 9:02 a.m. to 3:52 p.m., before
21    Christy R. Sievert, CSR, RPR, in and for the State
22    of Texas, reported remotely by machine shorthand,
23    pursuant to the Federal Rules of Civil Procedure and
24    the provisions stated on the record or attached
25    hereto.
```

```
 1                A P P E A R A N C E S
 2                  (Appearing remotely)
 3
 4   FOR THE PLAINTIFF:
 5     MR. MARC G. BRECHER
       Wapner Newman
 6     2000 Market Street, Suite 2750
       Philadelphia, Pennsylvania  19103
 7     Phone:     267-281-5128
       E-mail:    mbrecher@wapnernewman.com
 8
 9   FOR THE DEFENDANT:
10     MR. JOHN M. KALAS
       MS. DEVARATI DAS
11     Hollingsworth, LLP
       1350 I Street, NW
12     Washington, DC 20005
       Phone:     202-898-5800
13     E-mail:    jkalas@hollingsworthllp.com
                  ddas@hollingsworthllp.com
14
15   ALSO PRESENT:
16     COLIN COUGHENOUR, Videographer
17
18
19
20
21
22
23
24
25
```

1  scientific and toxicological certainty what was a

2  substantial part of the cause.

3      Q.   Okay.  Have you ever heard of the term

4  "differential etiology"?

5      A.   Yes.

6      Q.   Okay.  What does that mean to you?

7      A.   Well, among the studies of etiology

8  disease, it -- it evalu- -- you are evaluating the

9  development of the disease from a perspective of

10 what is biologically plausible for causing that

11 disease.  "Differential etiology" may be able to

12 look at a disease that may have multiple components

13 that could ultimately result in that -- in that

14 disease causation.  And one would have to

15 differentially evaluate that using Bradford Hill

16 criteria as an example to look at what has maybe the

17 strongest association in terms of being the most

18 probable causative factor.

19     Q.   Have you conducted a differential etiology

20 for Ms. Spector ruling out other potential causes of

21 her NHL?

22     A.   To a degree, yes, because I considered

23 potential confounding factors and I considered her

24 life's history and her -- her role and utilization

25 of -- of -- of products that -- or occupational

1  exposure that could be a part of a differential

2  etiology.  So, yes, I have but not specifically in

3  writing, but I've done it in my mind.

4      Q.   Okay.  So you haven't disclosed it in your

5  expert report, but you've done it in your mind.  So

6  do you intend to testify --

7      A.   Yes.

8      Q.   -- as to a differential etiology at trial?

9      A.   Probably not.

10     Q.   Okay.  Are you an expert on corporate

11 ethics?

12     A.   I wouldn't classify myself -- I would

13 classify myself having -- having been associated

14 with a substantial amount of corporate ethics

15 through cases over many years.  Am I trained

16 specifically in corporate ethics?  No.  Do I have

17 experience in dealing with corporate ethics related

18 to the use of commercial chemicals?  The answer is

19 yes.

20          That's the reason I was so successful in

21 guiding the EPA in dealing with a lot of these very

22 complex subjects, dealing with chemical evaluation

23 and registration and advising the agency what kind

24 of additional work and/or research may be needed

25 from registrants to provide safety data and the best

1        Q.   Are you an expert on human factors?

2        A.   I'm an expert on -- on pesticide

3   application and both commercial and -- and

4   residential use because I've done -- I've done a lot

5   of this.  I've evaluated sites, exposures, dead

6   birds, all kinds of things over the years.  I could

7   go -- I could spend the whole day talking about

8   evaluation of pesticide exposure to both the

9   environment and human health.

10            And as far as human factors, if you're

11   implying about exactly how people think when they're

12   using this, no, except I know that everybody doesn't

13   use it, a product consistent with the label.  And --

14   and that's just -- that's just how it is.

15       Q.   Okay.  I want to make sure I understand

16   that.  You agree with me that you aren't -- or

17   strike that.

18            You agree with me that you are not an

19   expert on how individuals interpret labeling, but

20   it's your experience that individuals do not always

21   follow the label.  That's what you're trying to say?

22       A.   Yes.

23       Q.   Okay.  Now, you're not an oncologist, true?

24       A.   Correct.

25       Q.   You're not a hematologist, right?

1     A.   I didn't hear that.

2     Q.   You're not a hematologist, right?  Not a

3 hematologist?

4     A.   No.

5     Q.   Okay.  You're not a medical doctor?

6     A.   No, sir.

7     Q.   You don't diagnose cancer, correct?

8     A.   That's correct.

9     Q.   Okay.  You don't treat cancer, correct?

10    A.   Correct.

11    Q.   You don't examine patients, correct?

12    A.   Correct.

13    Q.   You're not a pathologist, true?

14    A.   I'm -- I've evaluated a lot of pathology

15 data.  Technically, I'm not a pathologist, but I've

16 evaluated, as far as research and cases, a lot of

17 pathology data over many years.

18    Q.   Okay.

19    A.   So, no, I'm not a pathologist.

20    Q.   Okay.  Outside the context of litigation,

21 you don't offer opinions professionally about the

22 specific causes of individuals' cancers; is that

23 fair?

24    A.   Please ask that question again.

25    Q.   Sure.  Outside the context of litigation,