**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant
MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Bradley Koen v. Monsanto Company*<br>Case No. 3:20-cv-03074-VC | MDL No. 2741<br><br>**DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF EXPERTS MICHAEL FREEMAN AND MICHAEL SCOLA UNDER RULE 702**<br><br>Hearing date: 12/13/21<br>Time: TBD |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT beginning on 12/13/21 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Plaintiff Experts Michael Freeman and Michael Scola. Monsanto seeks an order excluding opinions of these witnesses under Federal Rule of Evidence 702.

DATED: September 22, 2021

                                          Respectfully submitted,

                                          /s/ *Eric G. Lasker*_____

                                          Eric G. Lasker (*pro hac vice*)
                                          HOLLINGSWORTH LLP
                                          1350 I Street, NW
                                          Washington, DC 20005
                                          Tel:    202-898-5843
                                          elasker@hollingsworthllp.com

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................1

      A.     Dr. Scola..................................................................................................................2

      B.     Dr. Freeman ............................................................................................................3

LEGAL STANDARD ..................................................................................................................4

ARGUMENT ................................................................................................................................5

      I.      Dr. Scola Is Not An Expert on the Etiology of NHL. .....................................5

      II.     The Court Should Exclude Dr. Scola's Specific Causation Opinions. .............5

      III.    The Court Should Exclude Dr. Freeman's General Causation Opinions. ......................................................................................................................7

      IV.    The Court Should Exclude Dr. Freeman's Specific Causation Opinions. ......................................................................................................................9

CONCLUSION ...........................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Aredia & Zometa Prods. Liab. Litig.*,
 483 F. App'x 182 (6th Cir. 2012) ..................................................................................................7

*Claar v. Burlington Northern R.R. Co.*,
 29 F.3d 499 (9th Cir. 1994)......................................................................................................7, 11

*Cooper v. Brown*,
 510 F.3d 870 (9th Cir. 2007)..........................................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993).................................................................................................................4, 5

*General Elec. Co. v. Joiner*,
 522 U.S. 136 (1997)......................................................................................................................10

*Hardeman v. Monsanto Co.*,
 997 F.3d 941 (9th Cir. 2021)........................................................................................................11

*Kumho Tire Co., LTD. v. Carmichael*,
 526 U.S. 137 (1999)................................................................................................................7, 10

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
 892 F.3d 624 (4th Cir. 2018)........................................................................................................11

*Marmo v. Tyson Fresh Meats, Inc.*,
 457 F.3d 748 (8th Cir. 2006)....................................................................................................7, 11

*Porter v. Smithkline Beecham Corp.*,
 No. 03275, 2015 WL 5970639 (Pa. C.P. Oct. 05, 2015) ...............................................................8

*Rosen v. Ciba-Geigy Corp.*,
 78 F.3d 316 (7th Cir. 1996)............................................................................................................8

*In re: Roundup Prods. Liab. Litig.*,
 358 F. Supp. 3d 956 (N.D. Cal. 2019) ........................................................................................10

*In re: Roundup Prods. Liab. Litig.*,
 390 F. Supp. 3d 1102 (N.D. Cal. 2018) ....................................................................................3, 9

*Sardis v. Overhead Door Corp.*,
 No. 20-1411, 2021 WL 3699753 (4th Cir. Aug. 20, 2021) ............................................................4

*Tamraz v. Lincoln Elec. Co.*,
 620 F.3d 665 (6th Cir. 2010)..........................................................................................................5

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002) .................................................................................................. 4, 5

**Other Authorities**

Federal Rule of Evidence 702 ............................................................................................... *passim*

**INTRODUCTION**

Wave 3 Plaintiff Bradley Koen ("Plaintiff") has designated Dr. Michael Scola and Dr. Michael Freeman to provide testimony regarding "general" and "specific" causation. For the reasons below, the opinions of Dr. Scola and Dr. Freeman do not meet the requirements for expert admissibility under Federal Rule of Evidence 702 and should be excluded.

*First*, Dr. Scola, who was completely unfamiliar with any of the literature regarding Roundup® and non-Hodgkin's lymphoma ("NHL") until days before submitting his expert report, lacks any of the qualifications necessary to opine on either general or specific causation.

*Second*, Dr. Scola admits that he failed to employ any methodology in reaching his specific causation opinion and was completely unaware about much of Plaintiff's history. He even admitted that there is no way he could conclude that Roundup causes Plaintiff's lymphoma and that he based his conclusion on a "beyond a reasonable doubt *speculation*." His opinions are inadmissible for these reasons as well.

*Third,* to the extent that Dr. Freeman seeks to offer the opinion that Roundup® generally is capable of causing NHL, that opinion should be excluded because it does not follow any valid or recognizable methodology and instead involves his "forensic" approach which attempts to substitute a legal standard for a scientific one.

*Fourth*, Dr. Freeman's approach to determining specific causation in this case not only abandoned his usual methodology but resulted in him not ruling out any other causes; instead, he would describe Roundup® as a substantial factor in essentially anyone exposed to it and who developed NHL. This is not a proper methodology.

**BACKGROUND**

Plaintiff was diagnosed with follicular NHL in March of 2018. He has designated Dr. Michael Scola and Dr. Michael Freeman as experts to opine on the cause of his lymphoma.

1
MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DRS. MICHAEL FREEMAN AND MICHAEL SCOLA

### A. Dr. Scola

Dr. Scola, an oncologist, was offered to opine on the cause of Plaintiff's NHL. By his own admission, he rapidly assembled his report, reviewing Plaintiff's medical records, a fraction of the literature on Roundup®, and drafted his report in four or five days. Declaration of Eric Lasker ("Lasker Decl.") at Ex. 1, Deposition of Michael Scola, at 27:11-28:3, 44:22-45:12 (Aug. 30, 2021) ("Scola Dep.").[1]  As he explained, "[b]ecause of the time crunch, I couldn't review anything in detail." *Id.* at 38:7-11. Moreover, he did not read *any* of the depositions taken in this case nor review any of the expert reports. *Id.* at 39:11-13, 45:13-20. Prior to being retained in this case, i.e., less than a week before serving his report, Dr. Scola had never even looked at any scientific literature related to glyphosate. *Id.* at 27:11-21, 52:12-15. He was unaware of the IARC monograph about glyphosate and NHL, *id.* at 98:3-6, and only reviewed a few pages of it after his retention, *id.* at 208:19-209:8. Likewise, he had only reviewed summaries of the EPA papers regarding glyphosate, he had "not looked at the primary document." *Id.* at 206:14-21. Not surprisingly, he has never published anything on glyphosate or pesticides (nor for that matter on NHL or its risk factors). *Id.* at 93:10-22. By his own admission, he is not an expert in epidemiology, *id.* at 94:6-8; *see also id.* at 104:7-13 ("I'm not an epidemiologist."), and he "never looked at any of [the] data" in the articles he reviewed, *id.* at 96:3-12.

Ultimately, his conclusion regarding Plaintiff was that it was "possible" that glyphosate exposure contributed to Plaintiff's NHL but that he could not reach a conclusion "with certainty." *Id.* at 105:13-18, 106:24-107:24. Moreover, he admitted not to know significant details about Plaintiff, including "his social behaviors, smoking history, other chemical and toxin exposure." *Id.* at 108:23-

---

[1] All exhibits referenced herein are attached to the Declaration of Eric Lasker, filed contemporaneously herewith.

109:19 (admitting not knowing what Plaintiff did for a living or if he smoked). His analysis simply focused exclusively on Roundup®:

> Q. So is the only variable that you investigated, his exposure to Roundup?
>
> A. Well, yes, I mean, it's the only variable that I explored in detail.

*Id.* at 110:1-4. As such, he did not even consider, let alone rule out, many other things that he admitted were risk factors for NHL. *See id.* at 108:10-111:24, 134:22-142:23.

**B. Dr. Freeman**

Dr. Freeman considers himself to be a "forensic" epidemiologist, Ex. 2, Deposition of Michael D. Freeman at 31:13-22 (Aug. 17 & 25, 2021) ("Freeman Dep."), who has testified over 1,000 times in his career. *Id.* at 12:8-20. According to him, a forensic epidemiologist is someone who takes epidemiologic principles and applies them in a legal setting. *Id.* at 32:25-33:11-34:9.

As opposed to Dr. Scola, Dr. Freeman explicitly attempts to opine on both general and specific causation. Dr. Freeman claimed that his methodology involved looking first towards epidemiological studies to identify any potential associations. *Id.* at 34:25-35:15.[2] Regarding Roundup®, Dr. Freeman relied upon several case-control studies in support of his position regarding causation. Ex. 3, Report of Michael D. Freeman at 14-15 (June 30, 2021) ("Freeman Report"). Several of these studies, however, lacked any statistically significant results, *see id.* at 15; *see also* Ex. 2, Freeman Dep. at 41:6-14 (discussing importance of statistical significance, i.e., 95% confidence interval). Furthermore, although he agreed that it is necessary to account for confounding—the possibility that another factor was causing the examined phenomenon (here NHL)— he admitted that in regard to Roundup® and NHL, "[t]he potential that there is some degree of chance, bias, or confounding is always present." *Id.* at 106:20-107:16. He further agreed with respect to IARC's conclusion that there was "limited

---

[2] Three types of evidence are used to evaluate whether an agent is capable of causing a particular outcome at human-relevant exposure levels: epidemiological, animal, and mechanistic evidence. *See In re: Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1115-1130 (N.D. Cal. 2018). Epidemiology, which studies the incidence and etiology of disease in human populations, is "central to the general causation inquiry, and where such evidence exists, it must be addressed." *Id.* at 7.

evidence of an association" between glyphosate and cancer that "one could not rule out chance, bias, or confounding with reasonable confidence." *Id.* at 92:24-93:4, 94:13-95:5.

Turning to specific causation—whether exposure to glyphosate caused Plaintiff's cancer—Dr. Freeman admitted that he was not opining that glyphosate was the "primary cause of Mr. Koen's NHL." *Id.* at 232:3-6. Instead, he was opining that it "was a substantial contributing factor" and that he thought that conclusion was more likely than not. *See id.* at 232:7-14. He also explained that his typical methodology involves calculating a "comparative risk ratio" to determine what he calls a "probability of cause." *Id.* at 41:17-19. He admitted, however, that he did not calculate a comparative risk ratio or attributable probability regarding Plaintiff. *Id.* at 43:5-21. Dr. Freeman also admitted that Plaintiff had other risk factors for developing cancer, *see, e.g.*, *id.* at 265:25-267:12, but his methodology would essentially automatically ascribe a substantial role to Roundup® in any individual exposed to it, *see id.* at 268:16-269:12.

## LEGAL STANDARD

A proposed expert witness must possess "knowledge, skill, experience, training, or education" sufficient to qualify him as an expert on the subject to which his testimony relates. Fed. R. Evid. 702. When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002). Apart from qualifications, expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The trial judge is charged with the responsibility of acting as a gatekeeper to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Sardis v. Overhead Door Corp.*, No. 20-1411, 2021 WL 3699753, at *7 (4th Cir. Aug. 20, 2021) (district court in wrongful death suit abused its discretion when it "abandoned its gatekeeping function" by declaring reliability and relevance arguments to be province of jury because they went to weight, not admissibility). Indeed, the Supreme Court instructs that an expert's error-prone application of his or her methodology is inherently unreliable; and reliability is within the province of the trial court as the

gatekeeper. *Daubert*, 509 US at 589. The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

## ARGUMENT

### I. Dr. Scola Is Not An Expert on the Etiology of NHL.

Dr. Scola is a clinical oncologist and considers himself "an expert in the clinical management of hematology/oncology." Ex. 1, Scola Dep. at 93:23-94:5. Treating a disease, however, is *not* the same thing as determining its etiology, *see, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 673 (6th Cir. 2010) (stating that the "ability to diagnose medical conditions is not remotely the same ... as the ability to deduce ... in a scientifically reliable manner, the causes of those medical conditions." (quotation marks omitted)), and he admits that because etiology "doesn't tend to influence the way we think about treatment . . . , we don't tend to spend a lot of time necessarily dissecting, dissecting that aspect of the patient's case." Ex. 1, Scola Dep. at 110:5-111:22.

Furthermore, although he is an experienced clinician, neither Dr. Scola's background nor the extremely limited research he has done qualifies him to opine on the etiology of NHL (as opposed to treating it). As of less than a week before he issued his report, he had never even looked at any scientific literature related to glyphosate and was unaware of the IARC monograph on the issue. *Id.* at 26:23-28:3, 52:12-15, 98:3-6. He has never published anything on glyphosate or pesticides nor on NHL or its risk factors. *Id.* at 93:10-22. By his own admission, he is not an expert in epidemiology *id.* at 94:6-8; *see also id.* at 104:7-13 ("I'm not an epidemiologist."), and he "never looked at any of [the] data" in the few articles he reviewed, *id.* at 44:22-45:12, 96:10-12. He is quite simply not qualified to offer the opinions he proffers in this case, and his testimony should be precluded for this reason alone. *See* Fed. R. Evid. 702; *White*, 312 F.3d at 1008-09.

### II. The Court Should Exclude Dr. Scola's Specific Causation Opinions.

Even if Dr. Scola were somehow qualified to opine on the cause of Plaintiff's NHL, his failure to employ any methodology, let alone a reliable one, to reach his specific causation opinion makes such

testimony inadmissible.[3] As Dr. Scola admitted, there is no specific test or lab value or other factor that would demonstrate that an individual's NHL was due to Roundup® exposure. Ex. 1, Scola Dep. at 164:8-17. Ultimately, he admitted that "[t]here's nothing I did and *there's no way that I can conclude that Roundup caused his lymphoma*." *Id.* at 166:3-20 (emphasis added). Instead, his opinion was based upon what he called "beyond a reasonable doubt *speculation*" that in turn was based upon no scientific method:

> Q. So there was no scientific method that you followed to reach [his causation] opinion?
> A. No.

*Id.* at 166:3-20, 166:22-167:1; *see also id.* at 167:9-168:4 (admitting he did not perform a differential diagnosis and that he does not know what a Bradford Hill analysis is), 168:19-169:4 (did not perform or even know how to perform an odds risk for Plaintiff).

Not surprisingly, he did nothing to rule out numerous other possible causes of Plaintiff's NHL. Dr. Scola admitted that occupational exposures, recreational exposures, and lifestyle factors could have contributed to his NHL. *Id.* at 111:24-112:9. Yet he admitted that he did not know anything about Plaintiff's job, lifestyle, or exposures other than Roundup®. *Id.* at 108:23-110:4. Accordingly, it would have been impossible for him to rule out these other possible causes:

> Q. Is obesity or inflated BMI a risk factor for NHL?
> A. I believe it is, yes.
> Q. Would that have been a risk factor for Mr. Koen?
> A. I don't, I don't recall his BMI.

*Id.* at 135:13-19; *see also id.* at 135:20-143:9 (discussing other risk factors). Dr. Scola also admitted that most patients who develop NHL lack any identifiable risk factors. *Id.* at 143:10-13; *see also id.* at 144:4-15 ("[F]or the majority of patients, it's difficult to identify a particular risk factor, particularly for diffuse large B-cell lymphoma."), 289:6-20 (admitting that it "is possible that [Plaintiff's]

---

[3] Although Dr. Scola's report discusses some of the literature on general causation, Ex. 4, Report of Michael Scola at 4 (June 29, 2021), he admits his purpose in this case was not to discuss all the relevant literature but instead "only to showcase the data that says there was an association." Ex. 1, Scola Dep. at 266:16-268:2. Reviewing only literature on one side of the debate is the furthest thing from good science.

lymphoma was purely sporadic" and unrelated to exposure to Roundup®). Again, he did nothing to rule out the possibility of an idiopathic cause, which he admitted was possible. *See id.* at 288:23-289:20.

Ultimately, he admitted that he considered only a single risk factor:

Q. Did you consider any other risk factors for Mr. Koen beyond his exposure to Roundup?

A. No, again, I'm not, I'm not his treating doctor, so I didn't – I'm not able to interview him and obtain that sort of historical information.

*Id.* at 169:5-18; *see also id.* at 169:19-173:5 (stating that his normal practice would include obtaining a detailed medical history to identify other risk factors, which he did not do in regard to Plaintiff); *Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 152 (1999) (expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). This failure is consistent with his decision "only to showcase the data that says there was an association" and never review anything that reached a contrary conclusion. Ex. 1, Scola Dep. at 266:16-267:5. The failure to even consider, let alone rule out, any other possible causes of Plaintiff's NHL is fatal to his opinion. *See, e.g.*, *Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of expert testimony based in part on experts' failure to have "made any effort to rule out other possible causes for the injuries plaintiffs complain of"); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony."); *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012) (noting that expert must "reliably rule in the possible causes of [the disease], and reliably rule out the rejected causes").

**III.    The Court Should Exclude Dr. Freeman's General Causation Opinions.**

Dr. Freeman should not be allowed to offer an opinion on general causation because he has not followed any valid methodology to reach such an opinion. He describes his opinions as being in the

fields of "forensic medicine" and "forensic epidemiology." Ex. 3, Freeman Report at 2. He has explained that these terms involve medicine and epidemiology "in a legal setting." *Porter v. Smithkline Beecham Corp.,* No. 03275, 2015 WL 5970639, at *6 (Pa. C.P. Oct. 05, 2015). Thus, in discussing whether there is a relationship between Roundup® and NHL, he states that "there is a *more probable than not relationship here* that is demonstrated by these studies." Ex. 2, Freeman Dep. at 229:25-231:9. And he "interpret[s] the term 'reasonable degree of scientific certainty' being more than 50 percent." *Id.* at 232:20-24. Science, however, does not look at greater than 50% as the appropriate standard; indeed, statistical significance looks to a 95% confidence level (as Dr. Freeman recognizes). *See id.* at 41:12-14. In other words, instead of taking scientific principles and using them in a legal setting, as required by Rule 702, *see, e.g., Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("Law lags science; it does not lead it.") Dr. Freeman seeks to take legal principles and apply them to science. That is not good science and has resulted in Dr. Freeman's exclusion elsewhere. As a court correctly concluded (after noting that "[t]here is no scientific discipline of 'forensic' epidemiology"), "proper scientific methodology and conclusions do not vary whether testified to" in one jurisdiction or another despite Dr. Freeman's assertions to the contrary. *Porter*, 2015 WL 5970639, at *6. That court excluded Dr. Freeman from opining on causation; this Court should do the same.

Dr. Freeman's methodology regarding general causation demonstrates the invalidity of his approach. In acting as a "forensic epidemiologist," Dr. Freeman relies upon the "best epidemiology" studies—studies that account for bias, confounding, and chance—to determine whether general causation is established. Ex. 2, Freeman Dep. at 35:20-36:25, 40:13-17. However, much of the epidemiology data he relies upon is unreliable because it is either not statistically significant, was not adjusted for confounders, or when it was adjusted, it was no longer statistically significant. For example, he cites papers by Eriksson and McDuffie as seemingly offering statistically significant results for individuals with greater than a certain number of days of glyphosate exposure. Ex. 3, Freeman Report at 15. As he admits, however, these results were no longer statistically significant when adjusted or they might not be if controlled for other factors. *Id.* at 239:18-241:22 (McDuffie), 242:1-243:23 (Eriksson); *see id.* at 257:19-258:7 (admitting that results in McDuffie may be

confounded by another pesticide and that he cannot state that the results would remain statistically significant if controlled).  As this Court has already determined, "[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern." *In re: Roundup,* 390 F. Supp. 3d at 1140.

Ultimately, Dr. Freeman could not identify a single study with a dose-response metric that shows a statistically significant relationship for glyphosate after controlling for other exposures:

> Q. Is there a dose response relationship you've observed in the epidemiology data that remains statistically significant for glyphosate after controlling for other pesticide use?
>
> A. I'd have to look back in at the data to tell you that for sure.
>
> Q. Okay.  Can you think of one right now?
>
> A. No.  I'd have to go back to my last answer.

Ex. 2, Freeman Dep. 166:22-167:6.  Dr. Freeman's reliance on unreliable data requires exclusion of his general causation opinion.

Dr. Freeman attempts to bolster his argument by selectively focusing on studies that purport to support his analysis; for example, he suggests that the Zhang meta-analysis of the Agricultural Health Study shows a relationship between glyphosate use and NHL, but then he is unable to explain why the Donato meta-analysis, which does not show an overall relationship between workers occupationally exposed to glyphosate and NHL, should be discounted or given less weight. Ex. 3, Freeman Report at 16.  His cherry picking of studies that support his conclusion and ignoring those that do not provide a further basis to exclude his general causation opinion.

**IV.  The Court Should Exclude Dr. Freeman's Specific Causation Opinions.**

Dr. Freeman's specific causation opinion raises two problems.  First, his usual methodology for determining specific causation involves calculating a "comparative risk ratio" to determine what he calls a "probability of cause."  Ex. 2, Freeman Dep. 41:6-19.  He admitted, however, that he did not calculate a comparative risk ratio or attributable probability regarding Plaintiff. *Id.* at 42:20-43:21.  In other words, Dr. Freeman did not apply the methodology that he usually employs to develop his opinion in this case.  This Court's role as gatekeeper is "to make certain that an expert, whether basing

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.  His failure to do so renders his opinion inadmissible.

Dr. Freeman also admitted that Plaintiff had other risk factors for developing cancer. For example, he agreed that Plaintiff's family history of cancer was a risk factor, Ex. 2, Freeman Dep. at 259:14-260:7, and admits that if Plaintiff did not have a first degree relative who had a cancer, he may not have developed NHL, *id.* at 260:25-262:14.  Likewise, he admitted that Plaintiff's ▮▮▮▮▮ was also a risk factor, *id.* at 266:5-267:12.  Ultimately, instead of ruling out these or other possible causes, he admitted that he would always claim that glyphosate was a substantial factor unless there was "an [alternative] exposure that always causes [NHL] more than 50 percent of the time." *Id.* at 268:16-269:2.  There is no science to this methodology—Dr. Freeman is essentially just stating that glyphosate will always be causal when an exposed individual develops NHL; this is not science or admissible. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")  Moreover, Dr. Freeman also admitted that he does not know what internal dose someone would need to be exposed to on a chronic basis to cause NHL, Ex. 2, Freeman Dep. 88:14-17, and that Plaintiff's exposure was well below the level the state of California has set for which exposure presents no significant risk, *id.* at 310:19-311:19.

To be admissible "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *In re: Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 959 (N.D. Cal. 2019).  Dr. Freeman, however, is unable to offer any reliable method for placing Plaintiff in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very

assessment. Indeed, unlike prior experts, which the Ninth Circuit concluded adequately accounted for other causes, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 966-67 (9th Cir. 2021), Dr. Freeman does not "rel[y] heavily on the plaintiffs' exposure levels in drawing [his] conclusions." Pre-Trial Order (PTO) 85 at 6. Rather, he engages in an "always Roundup®" methodology that determines Roundup® to be the cause no matter the exposure. But, as this Court made clear, exposure alone is not enough. His opinion is not admissible. *See, e.g.*, PTO 85 at 4 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."); *Claar*, 29 F.3d at 502; *Marmo*, 457 F.3d at 758.

In sum, there is nothing "specific" about Dr. Freeman's specific causation opinion. Taken as a whole, his reasoning (as well as Dr. Scola's) closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 892 F.3d 624, 645 (4th Cir. 2018). Here, as in *Lipitor*, Dr. Freeman simply "dismiss[es] other possible causes in favor of [Roundup®] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis." *Id.* The Court should exclude his opinion on that basis.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude the testimony of Drs. Michael Freeman and Michael Scola on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiff has failed to present at least one admissible expert opinion to support general and specific causation in this case.

DATED: September 22, 2021

Respectfully submitted,

/s/ Eric G. Lasker
Eric G. Lasker
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel: 202-898-5843
elasker@hollingsworthllp.com

*Attorneys for Defendant Monsanto Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Eric G. Lasker*
Eric G. Lasker
HOLLINGSWORTH LLP