**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Blair, et al.* v. Monsanto Company<br>Case No. 3:19-cv-07984-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS SANFORD KATZ ON RULE 702 GROUNDS**<br><br>Hearing date: 12/13/21<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on December 13, 2021 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Sanford Katz.  Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

DATED:  September 22, 2021

                                        Respectfully submitted,

                                        */s/Eric G. Lasker*

                                        Eric G. Lasker  (*pro hac vice*)
                                        (elasker@hollingsworthllp.com)
                                        HOLLINGSWORTH LLP
                                        1350 I St. NW
                                        Washington, DC 20005
                                        Tel: 202-898-5843

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

I.     Dr. Katz's Qualifications ................................................................................................. 1

II.    Plaintiff Had Risk Factors Associated with NHL. ........................................................... 2

III.   Dr. Katz Does Not Use Any Scientific Methodology in Forming His Specific Causation Opinions .......................................................................................................... 3

LEGAL STANDARD ................................................................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.     Dr. Katz has an Insufficient Basis for His Opinions ...................................................... 4

    A.   Dr. Katz's Opinions Are Not Based on Sufficient Facts or Data ........................ 4

    B.   Dr. Katz is Not Qualified to Opine on Mr. Blair's Inhalation Exposure ............. 6

    C.   Dr. Katz's Opinions on Mr. Blair's Exposure Are Not Based on Sufficient Facts or Data and Are Not the Product of Reliable Methodology ........................ 7

    D.   Dr. Katz's Deposition Testimony is Inconsistent with His Opinion That Glyphosate More Likely Than Not Caused Mr. Blair's NHL ................................ 7

II.    Dr. Katz Failed to Properly Assess Potential Alternative Causes of Plaintiff's NHL. .................................................................................................................................. 8

    A.   Dr. Katz Did Not Consider Any Other Risk Factor for Mr. Blair's NHL Besides Roundup and Admitted That He Could Not Rule Out Mr. Blair's BMI As a Risk Factor or Potential Contributor. ........................................................ 9

III.  Dr. Katz Has Not Reliably Ruled Out Unknown Causes of Plaintiff's NHL and Instead Always Point to Roundup. .................................................................................. 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)……………………………………………………………..……...3

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002)………………………………………..………...3, 7

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007)……………………………………………………..…..3

*In re Aredia & Zometa Prods. Liab. Litig.*,
    483 F. App'x 182 (6th Cir. 2012)……………………………………….……......4

*Poust v. Huntleigh Healthcare*,
    998 F. Supp. 478 (D.N.J. 1998)…………..…………………………………………4

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018)………………………………….…..……..…………4, 10

*In re: Roundup Prods. Liab. Litig.*,
    358 F. Supp. 3d 956 (N.D. Cal. 2019)…………………………………...........……4, 10

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003)……………………………………………...………....8, 9

**Other Authorities**

Federal Rule of Evidence 702 …………………………………………………………….*passim*

## INTRODUCTION

The Wave 3 Plaintiff, Mr. Joseph Blair, has designated Dr. Sanford Katz, as a treater-turned-specific causation expert, who does not meet the requirements of Federal Rule of Evidence 702 or the standards this Court imposed in Pre-Trial Order 85 ("PTO 85"). Dr. Katz revealed at his most recent deposition his new theory that Mr. Blair more likely than not developed NHL due to inhalation exposure, while acknowledging that (1) the medical literature relied upon in the Roundup cases does not apply to alleged inhalation exposure; and (2) he is unable to identify any medical literature at all to support his novel theory. He also lacks any of the qualifications necessary to opine on inhalation exposure or the levels of such exposure experienced by commercial pesticide applicators such as Mr. Blair. Moreover, he claims to have based his opinion on exposure-related factors which, in his opinion, are important to consider in determining whether an exposure specifically resulted in Plaintiff's development of NHL, but he nonetheless admits that he has zero information or data with respect to the very factors he claims are important. Further, Dr. Katz calls into question through his deposition testimony whether he supports that, under any exposure scenario, glyphosate-based herbicides, like Roundup, cause NHL. Finally, Dr. Katz does not in any manner address other risk factors for NHL or DLBCL.

What has not changed is that this Plaintiff's expert is nakedly outcome-driven. He offers deposition testimony which in inconsistent with his conclusions, ultimately acknowledging that he cannot rule out significant risk factors for NHL, while simply failing to address other risk factors. The Court has previously described the "daunting challenge" of establishing specific causation in these cases. This new expert does not meet that challenge, and the Court should exclude him.

## BACKGROUND

### I. Dr. Katz's Qualifications

Plaintiff has disclosed Dr. Sanford Katz, a radiation oncologist, as a specific causation expert. *See* Declaration of Eric Lasker, Ex. 1, Katz (*Blair* 7/7/2021) Dep. at 14:15-17 ("Katz (*Blair1*) Dep.")[1].

---

[1] All exhibits referenced herein are attached to the Declaration of Eric Lasker, filed contemporaneously herewith.

- 1 -
MONSANTO'S MOTION TO EXCLUDE SPECIFIC CAUSATION EXPERT TESTIMONY
3:16-MD-02741-VC

In that role, he does not administer radiation therapy, but works with a primary medical oncologist and plans and oversees radiation therapy. *Id.* at 21:14-25, 26:3-27:13. He agreed that the vast majority of NHL patients do not receive radiation therapy. *Id.* at 3:6-19.

Dr. Katz continues to serve as Mr. Blair's treating radiation oncologist and has never before served as an expert witness. *Id.* at 9:8-10, 45:4-9. He does not consider himself an expert in epidemiology, biostatistics, or toxicology. *Id.* at 40:16-18, 40:24-41:2. He has never performed any research on the treatment of NHL, has never published a paper on the cause or treatment of NHL or the carcinogenicity of Roundup, glyphosate or any pesticide, and has never designed, conducted or performed any epidemiologic, animal, mutagenicity or genotoxicity study of Roundup, glyphosate or any pesticide. *Id.* at 35:18-36:22, 37:4-11. Prior to Mr. Blair becoming his patient, Dr. Katz had no experience determining whether Roundup or glyphosate caused on contributed to NHL and had never told any patient that Roundup caused their NHL. *Id.* at 75:20-24, 76:19-23.

Dr. Katz does not plan to offer an expert opinion on the genotoxicity of glyphosate or Roundup at trial, *see* Ex. 2, Katz (*Blair* 9/2/2021 & 9/17/2021) Dep. at 139:21-24 ("Katz (*Blair 2*) Dep."), and he testified that he is not offering any independent opinions on the animal studies on glyphosate or Roundup. *Id.* at 141:22-142:2.

## II.    Plaintiff Had Risk Factors Associated with NHL.

As set forth at length in Monsanto's prior motion to exclude specific causation experts, (MDL ECF No. 2420), "non-Hodgkin lymphoma" ("NHL") is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and often have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Joseph Blair, a resident of ▉▉▉▉▉▉▉▉▉, was diagnosed with diffuse large B-cell lymphoma ("DLBCL") in November 2018 at the age of ▉. *See* Ex. 3, *Blair* Plaintiff Fact Sheet at 2, 4 ("*Blair* PFS"). Mr. Blair used Roundup between 2016 and 2018 in his job spraying trees and foliage near power lines. *See* Ex. 4, Katz *Blair* Report at 6; Ex. 3, *Blair* PFS at 8. His risk factors for NHL include a BMI of 32-35 and exposure to other pesticides used in his job (Basal, Pinnacle, Arsenal and Opensight). See Ex. 5., *Blair* Dep. at 65:11-22; Ex. 6., Van Etten *Blar* Report at 35.

Mr. Blair was diagnosed with DLBCL slightly more than two years after his first Roundup use. *See Blair* PFS at 8.

### III. Dr. Katz Does Not Use Any Scientific Methodology in Forming His Specific Causation Opinions

Dr. Katz uses no real scientific process and strays far from any reliable methodology because his process is designed to lead to a pre-ordained conclusion. In fact, there is no stated methodology. *See* Ex. 4, Katz *Blair* Report. Dr. Katz has determined that the studies and the medical literature that has been generally relied upon in the Roundup cases is inapplicable to Mr. Blair, who he claims primarily had inhalation exposure to Roundup that caused his NHL. Ex. 2, Katz (*Blair 2*) Dep. at 110:20-22. He could not find any literature that supports this theory, however, so he is relying solely on his supposed qualifications as an "expert" to establish his novel theory just on his say-so. *Id*. at 135:18-136:13. In addition, he "rules in" Roundup as a cause, while never mentioning or considering other known NHL risk factors, at least one of which he has **agreed** cannot be ruled out. Ex. 4, Katz *Blair* Report; Ex. 2, Katz (*Blair2*) Dep. at 214:14-24. He also ignored altogether the possibility that Plaintiff's NHL may have no identifiable cause, as would be the case where NHL is caused by a yet to be discovered factor or the result of naturally-occurring random mutations that constantly occur through normal cell division.

### LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002). The proponent of the expert bears the burden of proving that the expert's proffered testimony is admissible. *See, e.g.*, *Cooper v. Brown*,

510 F.3d 870, 942 (9th Cir. 2007).

Here, Dr. Katz's opinions should be excluded on the grounds that (1) he is not qualified as an expert in this area of his opinions, (2) his opinions not reliable, and (3) they are not helpful to the jury because he automatically concludes that Roundup was the cause without weighing or eliminating other risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re: Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

**ARGUMENT**

**I.     Dr. Katz has an Insufficient Basis for His Opinions**

    **A.     Dr. Katz's Opinions Are Not Based on Sufficient Facts or Data.**

At his most recent deposition, Dr. Katz revealed that he had <u>changed his opinion</u> about Mr. Blair's exposure to Roundup and that <u>most of the existing medical literature on glyphosate was not applicable to Mr. Blair</u> because Mr. Blair's exposure was due to inhalation, not dermal absorption (which was the focus of most of the studies). Ex. 2, Katz (*Blair 2*) Dep. at 110:20-22. Dr. Katz,

however, found no studies to support his theory about inhalation. *Id.* at 137:19-25. When Dr. Katz read the report of Monsanto's exposure expert, which concluded "that the skin absorption was relatively low and within acceptable limits, [he] didn't see where she really addressed the mode of – you know, in which he was exposed." *Id.* at 110:22-111:1. He said he "wanted to explore further if that was actually true or if there was specific information about aerosolized Roundup that she may have missed or omitted. And so then I went and specifically looked more about that, looked into it." *Id.* at 111:6-12. When asked if he found data about inhalation exposure, he responded "Not directly relevant to Mr. Blair." *Id.* at 111:13-15.

Dr. Katz offered his opinion "that these agencies didn't specifically really adequately look at the type of exposure that Mr. Blair had. The studies weren't applicable. And I think to a large extent when I looked at the EPA stuff and some of the other government evaluations, they just acknowledge that there just wasn't much regarding inhalation exposure. And so I feel -- my new opinion is that it just really wasn't evaluated sufficiently." *Id*. at 119:21-120:4. He reiterated later that, "*None of the stuff I've been reading is applicable in terms of how he was applying. So that's an opinion that's only gotten stronger the more I read.*" *Id*. at 121:7-10 (emphasis added). He further opined that two inhalation studies relied on by Monsanto's exposure expert were "flawed" and "not applicable to Mr. Blair's situation." *Id.* at 123:2-7. Put another way, Dr. Katz's new opinion on inhalation exposure appears to be based entirely on the ***absence*** of any relevant studies.

Most importantly, Dr. Katz admits that there are no sufficient facts or data to support his opinion that Roundup can cause NHL based on inhalation exposure.

> Q. But as you sit here today you have not identified any data that specifically addresses whether or not Roundup causes non-Hodgkins lymphoma based on an inhalational route? Is that a fair statement?
>
> A. That's a correct statement. *Id*. at 138:16-20.

He flatly states that "My opinion is there is inadequate data supporting the effects of inhalation of Roundup in the scientific literature." *Id*. at 137:19-25.

Dr. Katz's solution to his predicament of having no medical literature to support his causation theory is to assert that he is an "expert," and so his expert opinion is sufficient evidence.

He states, "So what if there's no information? What if there is no data relevant to the case in question like in Mr. Blair's case? I've been told that I am appropriately able to give an opinion as an expert. So, I mean, *based upon what I understand the legal qualifications to be an expert, I've been instructed that I am qualified to be an expert. I found that in my research there is not data for a lot of what is relevant to Mr. Blair's case. And so for that reason, I give my honest opinion*. . . And a lot of the aspects of this case are not considered in the scientific literature so I have to give my opinion." *Id*. at 135:18-136:13.  This is the very definition of *ipse dixit*, and he flatly admits that he does have sufficient facts or data to support his "expert" opinion as required under Rule 702.

### B. Dr. Katz is Not Qualified to Opine on Mr. Blair's Inhalation Exposure

Dr. Katz is a radiation oncologist and has no expertise in the area of his "new" opinion on inhalation exposure.  *See, e.g.,* Ex. 4, Katz *Blair* Report at 1.  A basic premise underlying Dr. Katz's opinions are that "occupational applicator scenarios such as operating a truck-mounted sprayer" (such as that used by Mr. Blair) "would result in exposure far in excess than reflected in any of the studies considered by either the lARC or the EPA." *Id.* at 6.  As discussed above, he also concluded that Mr. Blair's exposure was by inhalation rather than absorption.  Ex. 2, Katz (*Blair 2*) Dep. at 110:20-22.

However, Dr. Katz, as a radiation oncologist, has not demonstrated any scientific, technical or other specialized knowledge regarding inhalation exposure or the level of exposure experienced by commercial pesticide applicators.  Dr. Katz testified that he has no knowledge, skill, experience, or training in industrial hygiene.  *Id*. at 94:18-20.  He has never in his professional capacity had the experience of calculating or estimating the dose of an individual exposure to a chemical of any kind.  *Id*. at 94:21-24. He was not aware of any expert on behalf of Plaintiff who had performed any calculations about the concentration or dose of glyphosate to which Mr. Blair was exposed.  *Id.* at 95:1-9.  He is not and has never been a licensed pesticide applicator, has never done research concerning health outcomes and licensed pesticide applicators, has never conducted exposure assessments for any chemicals in licensed pesticide applicators, and has no first-hand knowledge of the working conditions in which licensed pesticide applicators work.  *See, e.g., Id.*at 90:20-91:5, 91:12-15.

Under the FRE 702, an expert may offer opinion testimony only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." On the contrary, Dr. Katz testified that he has *no knowledge "greater than a layperson"* about how much inhalation exposure to pesticides a commercial applicator may have. *Id*. at 91:16-19. He is quite simply not qualified to offer the opinions he proffers in this case, and his testimony should be precluded for this reason alone. *See* Fed. R. Evid. 702; *White*, 312 F.3d at 1008-09.

### C. Dr. Katz's Opinions on Mr. Blair's Exposure Are Not Based on Sufficient Facts or Data and Are Not the Product of Reliable Methodology

Regardless of the method of exposure, Dr. Katz bases his opinions on his "consideration" of a number of factors that he claims are "important to consider" "in estimating the potential of this elevated risk association to have specifically resulted in Mr. Blair developing his lymphoma." Ex. 4, Katz *Blair* Report at 6-7. These include "the concentration, potency and dose of the agent, the duration, frequency, and number of exposures over a specific period, confounding effects which could have intensified or increased exposure such as being in a confined or poorly ventilated space or weather conditions such as wind that may have resulted in added exposure," along with a number of other factors. *Id*. Despite his assertion about the critical importance of these factors, Dr. Katz has no information about any of them. Dr. Katz testified that (1) he had done no calculations and performed no estimates concerning the actual concentration of glyphosate in the solution that Mr. Blair was using, (2) he did not know what percentage of glyphosate by weight is contained in the Roundup product that Mr. Blair was using, (3) he had no information based on calculations or scientific estimates concerning the average daily dose in terms of milligrams per kilogram of glyphosate for Mr. Blair, and (4) he had no information based on calculations or scientific estimates concerning the absorbed dose or the internal dose of glyphosate for Mr. Blair. *See* Ex. 2, Katz (*Blair 2*) Dep. at 93:15-94:13. Dr. Katz's opinion should be excluded because he has no sufficient facts or data about the very factors that he indicated were so important to his own methodology in assessing Mr. Blair's exposure, making his methodology unscientific and unreliable.

### D. Dr. Katz's Deposition Testimony is Inconsistent with His Opinion That Glyphosate More Likely Than Not Caused Mr. Blair's NHL

In his report, Dr. Katz opined that "it is more likely than not that Mr. Blair's exposure to [glyphosate] caused his lymphoma." Ex. 4, Katz *Blair* Report at 7. However, his deposition testimony revealed his uncertainly about the connection between glyphosate and NHL. He stated that whether glyphosate or Roundup do or do not cause cancer is "the subject of controversy" and "certainly is controversial." Ex. 1, Katz (*Blair 1*) Dep. at 101:16-24. Dr. Katz also included a paragraph in his report that he discussed at his deposition, addressing some of the weaknesses in the medical literature, saying that:

> "the publication of a body of research, with sometimes conflicting results, does not necessarily effectively support the conclusion that a particular causal or associated relationship does not exist, but merely that there is some controversy. It is important to understand that in failing to prove an association, a study does not prove the lack of one."

Ex. 4, Katz *Blair* Report at 2; Ex. 1, Katz (*Blair 1*) Dep. at 102:21-103:9. Moreover, when asked if there was any underlying cohort or case control study where there was a clear, unequivocal finding of an increased risk of NHL in glyphosate users, he said, "The answer to your question is no." Ex. 2, Katz (*Blair 2*) Dep. at 194:6-18. This testimony does not support Dr. Katz's contention that glyphosate or Roundup caused Mr. Blair's NHL, regardless of the nature of the exposure.

In addition, during his deposition, Dr. Katz agreed that medical literature shows the latency ("period of time between exposure and when something occurs") between glyphosate and NHL is "Typically more than ten years" and that the period of time between Mr. Blair's exposure and his diagnosis of NHL was slightly more than two years." *Id*. at 210:14-211:2. Neither in his report nor during any of his deposition testimony did he address this vast discrepancy. Ex. 4, Katz *Blair* Report.

**II.   Dr. Katz Failed to Properly Assess Potential Alternative Causes of Plaintiff's NHL.**

Dr. Katz failed to adequately address potential causes of Plaintiff's NHL other than Roundup, which is required for his opinion to be admissible. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 2003); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL,

and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *Id.* The Ninth Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains. Dr. Katz failed to consider (or "rule in") known alternative causes altogether, thus failing to satisfy step one, failing to discuss any risk factor other than exposure to glyphosate.

Regardless of which step in the differential diagnosis is involved, Dr. Katz's testimony reveals that he did not consider that something other than Roundup could have caused Plaintiff's NHL. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Plaintiff's expert failed to do so here and instead has engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

### A. Dr. Katz Did Not Consider Any Other Risk Factor for Mr. Blair's NHL Besides Roundup and Admitted That He Could Not Rule Out Mr. Blair's BMI As a Risk Factor or Potential Contributor.

In his report, Dr. Katz does not discuss the well-recognized risk factors for NHL generally or any of Mr. Blair's specific risk factors for NHL or DLBCL. Ex. 4, Katz *Blair* Report. However, Mr. Blair had a BMI in the obese range (BMI 32-35) and was exposed to other chemicals during his work. Ex. 2, Katz (*Blair 2*) Dep. at 213: 6-8; Ex. 5, *Blair* Dep. at 65:11-22. At his initial deposition, Dr. Katz testified that he was not aware of any literature showing a statistically significant increased risk of NHL, and specifically DLBCL, with increased BMI. Ex. 1, Katz (*Blair 1*) Dep. at 86:6-11. However, at a later deposition, after being shown and given an opportunity to review two meta-analyses showing that an increased BMI (such as Mr. Blair's) is associated with a higher risk of NHL generally and with DLBCL specifically, Dr. Katz agreed that he "can't exclude" BMI as a risk factor or substantial contributor to Mr. Blair's NHL. Ex. 2, Katz (*Blair 2*) Dep. at

MONSANTO'S MOTION TO EXCLUDE SPECIFIC CAUSATION EXPERT TESTIMONY
3:16-MD-02741-VC

214:14-24. Moreover, Dr. Katz simply never addressed any of the other pesticides used by Mr. Blair in his work. Ex. 4, Katz *Blair* Report. By definition, the failure to rule out BMI means that Dr. Katz cannot testify that Roundup was the cause of Mr. Blair's NHL under a differential diagnosis.

*          *          *

Taken as a whole, Dr. Katz's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." 892 F.3d at 645. Here, Dr. Katz did not even "dismiss other possible causes in favor of [Roundup] in a cursory fashion," but simply failed to mention or address other risk factors at all. *Id.* The Court should exclude his opinion on that basis.

**III.    Dr. Katz Has Not Reliably Ruled Out Unknown Causes of Plaintiff's NHL and Instead Always Point to Roundup.**

Just as he fails to engage with the known alternative risk factors confronting Plaintiff, he takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases: he simply ignores the prospect. This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy. *In re: Roundup*, 358 F. Supp. 3d at 959. To be admissible "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *Id.* Dr. Katz is unable to offer any reliable method for placing Plaintiff in one category and not the other, and thus his testimony cannot possibly be helpful to a jury tasked with that very assessment.

**CONCLUSION**

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Dr. Katz on Rule 702 and *Daubert* grounds.

Dated:  September 22, 2021

_____

 Eric G. Lasker  (pro hace vice)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843

*Attorney for Defendant Monsanto Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Eric G. Lasker*

Eric G. Lasker
HOLLINGSWORTH LLP