1   **WILKINSON STEKLOFF LLP**
    Brian L. Stekloff (*pro hac vice*)
2   (bstekloff@wilkinsonstekloff.com)
    Rakesh Kilaru (*pro hac vice*)
3   (rkilaru@wilkinsonstekloff.com)
    2001 M St. NW
4   10th Floor
    Washington, DC 20036
5   Tel:   202-847-4030
    Fax:   202-847-4005
6

7   **HOLLINGSWORTH LLP**
    Eric G. Lasker (*pro hac vice*)
8   (elasker@hollingsworthllp.com)
    1350 I St. NW
9   Washington, DC 20005
    Tel: 202-898-5843
10  Fax: 202-682-1639

11  *Attorneys for Defendant*
12  *MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000


**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Carl and Karen Savory, husband and wife* v. Monsanto Company<br>Case No. 3:20-cv-02403 | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S RONALD KENDALL ON RULE 702 GROUNDS**<br><br>Hearing date: 12/13/21<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on December 13, 2021 in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Ronald Kendall.  Monsanto seeks an order excluding opinions of this witness under Federal Rule of Evidence 702.

DATED:  September 22, 2021

                                              Respectfully submitted,

                                              */s/ Eric G. Lasker*

                                              Eric G. Lasker (*pro hac vice*)
                                              (elasker@hollingsworthllp.com)
                                              HOLLINGSWORTH LLP
                                              1350 I St. NW
                                              Washington, DC 20005
                                              Tel: 202-898-5843

Case 3:16-md-02741-VC   Document 13791   Filed 09/22/21   Page 3 of 17

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    I.    Dr. Kendall Has a Ph.D. in Fisheries and Wildlife Sciences and Was Disclosed as an Exposure and Specific Cause Expert. ............................................... 2

    II.    Plaintiff Had Risk Factors Associated with NHL. ....................................................... 2

    III.    Plaintiff's Expert Does Not Use Any Scientific Methodology in Forming His Specific Causation Opinions. ................................................................................ 3

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

    I.    Dr. Kendall's Opinions are Not the Product of a Reliable Methodology. ................................................................................................................ 4

        A.    Dr. Kendall Opinions and Methodology Are Not Reliable Because They Were Directly Copied from a Prior Expert and Are Not His Own. ........................................................................................... 4

        B.    Dr. Kendall's Deposition Testimony is Inconsistent With an Opinion of Causation to a Reasonable Degree of Medical Certainty. ............................................................................................... 7

        C.    Dr Kendall Cannot Be Certain Whether Plaintiffs Had a High Enough Exposure to Glyphosate to Cause. ................................ 8

    II.    Plaintiff's Expert Failed to Adequately Assess Potential Alternative Causes of Plaintiff's NHL. ................................................................ 9

        A.    Dr. Kendall Does Not Have a Methodology for Assessing Risk Factors .......................................................................................... 10

    III.    Plaintiff's Experts Have Not Reliably Ruled Out Unknown Causes of Plaintiff's NHL and Instead Always Point to Roundup. ........................... 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)……………………………………………………………………….4, 9

*In re Aredia & Zometa Prods. Liab. Litig.*,
   483 F. App'x 182 (6th Cir. 2012)……………..……………………………………….......4

*Poust v. Huntleigh Healthcare*,
   998 F. Supp. 478 (D.N.J. 1998)……………………………………………………………4

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018)……………………………………………….……4, 11

*In re: Roundup Prods. Liab. Litig.*,
   358 F. Supp. 3d 956 (N.D. Cal. 2019)…...…………………………………………….4, 11

*Spiral Direct, Inc. v. Basic Sports Apparel Inc.*,
   No. 6:15-cv-641-Ori-28TBS, 2017 U.S. Dist. LEXIS 225205 (M.D. Fla. Apr. 13, 2017)…..5

*Moore v. BASF Corp.*,
   Civ. Action No. 11-1001, 2012 WL 6002831 (E.D. La. Nov. 30, 2012)……………….…5

*Raymo v. Sec'y of Health and Human Servs.*,
   No. 11-0654V, 2014 WL 1092274 (Fed. Cl. Feb. 24, 2014)…………………………….6

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003)…………………………………..….…………….9, 10

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021)………………………………………………….………..…11

**Other Authorities**

Federal Rule of Evidence 702……………………………………….…………………*passim*

**INTRODUCTION**

This Wave 3 Plaintiff has designated a new specific causation expert who does not meet the requirements of Federal Rule of Evidence 702 or the standards this Court imposed in Pre-Trial Order 85 ("PTO 85"). Although the expert's report contained language along the lines of "reasonable degree of medical certainty," his deposition testimony revealed that he does not have a basis to attribute the Plaintiff's NHL to Roundup exposure. He cannot opine that either glyphosate or its ingredients cause NHL. He admits that Roundup might not be a direct cause of NHL. Yet he opines that Roundup was a substantial contributing factor in the development of Mr. Savory's NHL based on "plausibility" and his "suspicions" without any scientific evidence to support this theory. In addition, he argues that an internal dose, and not just exposure, is required to cause an increased risk of NHL, but that it has not yet been determined what level of internal dose of Roundup is required to cause that increased risk. Finally, he simply copied a large portion of his report from a long-time plaintiffs' expert in prior Roundup cases and then attempted to hide that fact during his deposition. Courts have held that such behavior makes his report unreliable, his opinion not his own, and is cause to exclude his testimony.

In addition, Plaintiff's expert does not mention "differential etiology," perhaps in an effort to circumvent the Court's standards in PTO 85. He does not specify exactly what his method is, but whatever it is, it does not include ruling out Plaintiff's other risk factors for NHL. Dr. Kendall is nakedly outcome-driven. He offers no coherent, defensible principle undergirding his specific causation opinions and has offered deposition testimony which in inconsistent with his conclusions. With respect to Plaintiff, Dr. Kendall ultimately acknowledges that he cannot rule out significant risk factors for NHL or that he had not "really thought about" them.

The Court has previously described the "daunting challenge" of establishing specific causation in these cases. This new expert does not meet that challenge, and the Court should exclude him.

# BACKGROUND

## I. Dr. Kendall Has a Ph.D. in Fisheries and Wildlife Sciences and Was Disclosed as an Exposure and Specific Cause Expert.

Plaintiff has disclosed the exposure and specific causation expert Dr. Ronald Kendall, a forensic toxicologist, *See* Declaration of Eric Lasker, Ex. 1, Kendall *Spector* Dep. at 18:24–19:23[1]. Dr. Kendall is not an oncologist, hematologist, or pathologist, nor does he diagnose or treat cancer patients. *Id.* at 42:23–43:19. He is not a medical doctor. He holds a M.S. in Wildlife Biology and a Ph.D. in Fisheries and Wildlife Sciences, with some post-doctoral "training" in toxicology. *See* Ex. 2, Kendall curriculum vitae. He works as a Professor of Environmental Toxicology at the Institute of Environmental and Human Health. *Id.*

## II. Plaintiff Had Risk Factors Associated with NHL.

As set forth at length in Monsanto's prior motion to exclude specific causation experts, (MDL ECF No. 2420), "non-Hodgkin lymphoma" ("NHL") is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and often have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Carl Savory, a resident of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, was diagnosed with diffuse large B-cell lymphoma ("DLBCL") in September 2019 at the age of 64. *See* Ex. 3, *Savory* First Amended Plaintiff Fact Sheet at 4 ("*Savory* First Amended PFS"); Ex. 4, *Savory* Trial Preservation Dep. at 44:20-24. Mr. Savory used Roundup residentially for nearly 30 years, and his testimony is clear and unequivocal that his actual exposure was minimal (e.g., he handled concentrate when mixing as if he was working in a "biolab;" he reported only a few skin exposures which he immediately washed off, and he kept a hose nearby for the "emergency" of getting splashed.) *See* Ex. 3, *Savory* First Amended PFS at 8; Ex. 5, *Savory* Discovery Dep. at 93:12-94:14, 137:13-139:19; Ex. 4, *Savory* Trial Preservation Dep. at 42:7-20, 85:5-9. Mr. Savory has several risk factors for NHL. He

---

[1] All exhibits referenced herein are attached to the Declaration of Eric Lasker, filed contemporaneously herewith.

has long-term rheumatoid arthritis (which caused him to go on permanent disability in 2005 and which experts on both sides agree at least doubles the risk of NHL). *See* Ex. 5, *Savory* Discovery Dep. at 154:17-21; Ex. 4, *Savory* Trial Preservation Dep. at 45:4-7; Ex. 6, Braunstein *Savory* Dep. at 88:19-23. He took the medications Xeljanz, which plaintiff's rheumatologist acknowledges has a "black box warning" for cancer, *see* Ex. 7, Teitel *Savory* Dep. at 77:8-11, and Otezla, both of which have an immunosuppressive effect. *See* Ex. 8, Reshef *Savory* Report at 4-5. Mr. Savory also had hepatitis C, psoriatic arthritis (another autoimmune disease), long-term use of NSAIDs, and a first-degree family history or cancer, in addition to being obese and being a heavy smoker. *See* Ex. 3, *Savory* First Amended PFS at 3-4; Ex. 7, Teitel *Savory* Dep. at 40:11-14, 75:13-21, 118:24-119:6; Ex. 6, Braunstein *Savory* Dep. at 73:13-75:5, 85:9-15; Ex. 5, *Savory* Discovery Dep. at 158:23-24, 170:16-171:3, 186: 6-14; Ex. 4, *Savory* Trial Preservation Dep. at 67:22-24, 98:14-99:1, 100:15-20.

**III. Plaintiff's Expert Does Not Use Any Scientific Methodology in Forming His Specific Causation Opinions.**

Plaintiff's expert uses no real scientific process to reach his opinions and strays far from any reliable methodology. In fact, there is no stated methodology. He "rules in" Roundup, while refusing to also give any weight other known NHL risk factors, even those he agrees are widely accepted as NHL risk factors. He ignores or purports to rule out every other relevant NHL risk factor except Roundup, without applying the same reasoning and methodological rigor to the potential alternative causes that he applies to Roundup. And, despite acknowledging that the cause of most NHL cannot be established, throughout his analyses, this expert ignores altogether the possibility that Plaintiff's NHL may have no identifiable cause, as would be the case where NHL is caused by a yet to be discovered factor or the result of naturally-occurring random mutations that constantly occur through normal cell division. According to Dr. Kendall, the Plaintiff's exposure to Roundup automatically excludes the possibility of an idiopathic or unknown cause.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data";

1  (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably
2  applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an
3  expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also*
4  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Here, the expert's opinions should
5  be excluded on the grounds that (1) they are not reliable, and (2) they are not helpful to the jury
6  because he automatically concludes Roundup was the cause without weighing or eliminating other
7  risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018). And if Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *In re: Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019). ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

**ARGUMENT**

**I.  Dr. Kendall's Opinions are Not the Product of a Reliable Methodology.**

    **A.  Dr. Kendall Opinions and Methodology Are Not Reliable Because They Were Directly Copied from a Prior Expert and Are Not His Own.**

1    Alarmingly, much of Dr. Kendall's analysis and report is not solely his own. A substantial portion of Dr. Kendall's report is directly copied from a report of Dr. Sawyer, a long-time general causation expert in Roundup cases, who was not disclosed as either a general or specific causation expert in this case. In addition, Dr. Kendall did not even disclose the Sawyer report from which he plagiarized in his list of materials considered (until he filed an amended list after being confronted at his deposition for billing three hours for reviewing Dr. Sawyer's report). Moreover, under oath during deposition, he attempted to hide his reliance on Dr. Sawyer's report and continued to refuse to admit that he copied Dr. Sawyer's report despite acknowledging that many portions of the two reports were identical.

In *Spiral Direct Inc. v. Basic Sports Apparel Inc.*, No. 6:15-cv-641-Ori-28TBS, 2017 U.S. Dist. LEXIS 225205 ( M.D. Fla. Apr. 13, 2017), the Court excluded an expert's opinion where the expert plagiarized "large sections of another expert's report, which she did not acknowledge until confronted in her deposition." *Id.* at *8. The factors that the Court took into account included that (1) the expert did not reference the other expert's report in her report, (2) the expert's report "provided no hint whatsoever" that she relied on another expert's report, (3) the expert did not "provide any citation or attribution" to the other expert's report, and (4) the expert "did not show a willingness to reveal her plagiarism to anyone in the case until [counsel] confronted her about it near the end of her deposition. *Id.* at *5-7. Due to the expert's "attempt to appropriate the opinions of" another expert and "play them off as her own," the Court found that the expert's report was unreliable and must be excluded. *Id.* at *7.

See also *Moore v. BASF Corp.*, Civ. Action No. 11-1001, 2012 WL 6002831, at *7 (E.D. La. Nov. 30, 2012) ("Dr. Kura's use of Dr. Kopstein's work is particularly problematic in that Dr. Kura first testified that the report he proffered was his original drafting and that he had not reviewed other expert reports. When asked to explain why many of his sentences were nearly identical to Dr. Kopstein's, he later conceded that he saw Dr. Kopstein's report and at the very least took notes. The likelihood that substantial portions of Dr. Kura's report do not reflect his original work is yet another reason the Court finds that Dr. Kura's opinions in general are unreliable."); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-0654V, 2014 WL 1092274, at *13 (Fed. Cl. Feb. 24,

2014) ("There is preponderant evidence that Dr. Becker plagiarized his expert report from one authored by Dr. Douglas Kerr and filed in another Vaccine Act case. When asked questions about how his report was prepared, Dr. Becker's answers were deliberately misleading. When an expert witness attempts to mislead the court on an issue as fundamental as the origin of his expert opinion, I assess his credibility as so severely compromised as to preclude reliance upon his opinion and testimony.").

In the instant case, Dr. Kendall prepared an invoice reflecting three hours of reviewing a report by Dr. Sawyer, an expert witness in the *Schafer* case. Ex. 1, Kendall *Spector* Dep. 153:8-23. Dr. Kendall only revealed that he had reviewed the report of Dr. Sawyer after being asked at deposition about the invoice reference, and, even then, he attempted to deny it, initially saying that the referenced report was by "Moll" and that the invoice reference to a toxicology report by Dr. Sawyer was a "typo." *Id.* at 153:16-155:3. When asked for what purpose he reviewed the report of another expert in another Roundup case that he was not involved with to form his opinions, he responded, "It was just information for me. It's just information. I reviewed a lot of reports." *Id.* at 157:19-158:1.

Contrary to Dr. Kendall's sworn testimony, a substantial portion of his report was plagiarized from Dr. Sawyer's *Schafer* witness report; Dr. Kendall even plagiarized some of Dr. Sawyer's tables. *See, e.g.*, Ex. 9, Sawyer *Schafer* Report, at 33, 38–39, 188–91; Ex. 10, Kendall *Savory* Report, at 11–16; Ex. 11, Kendall *Savory* Dep. at 183:5–225:15. At Dr. Kendall's deposition, counsel went through sentence after sentence and paragraph after paragraph identifying where Dr. Kendall's report is either completely identical to, or is essentially the same with an occasional word change as, Dr. Sawyer's *Schafer* report. Ex. 11, Kendall *Savory* Dep. at 183:5–225:15.

Dr. Sawyer was not disclosed either as a general causation expert or a specific causation expert in the *Savory* case. *See* Ex. 12, Plaintiff's Expert Disclosures - General Causation dated June 29, 2021; Ex. 13, Plaintiff's R.26 Specific Causation Expert Disclosures. Moreover, Dr. Kendall did not disclose that he had relied on Dr. Sawyer's report in his original "list of materials reviewed" attached to his report. *See* Ex. 10, Kendall *Savory* Report at 20-22. He only amended that list to

include references to Dr. Sawyer's reports in the *Schafer* cases once he was confronted with his plagiarism during his deposition. See Ex. 14, Kendall Amended List of Materials Reviewed.

Worse yet, Dr. Kendall never did admit to the plagiarism, insisting that he had simply reviewed Dr. Sawyer's report and that the words came out identically because "if he's a toxicologist we – we talk the same language." Ex. 11, Kendall *Savory* Dep. at 201:13-14. He testified that "I read things, I don't take notes, and I just knock things out. And this just all came to me because this is the logical way – this is exactly the way I'm thinking." *Id.* at 194:25-195:3. The closest he came to an admission was that "It is maybe close. It's maybe close." *Id.* at 201:12.

The factors in this case mirror those in *Spiral Direct* that caused the court there to exclude the expert's report: a large portion of Dr. Kendall's report was taken from the report in a prior case of Dr. Sawyer, who is not disclosed as a general or specific causation expert in this case; he attempted to hide his reliance on Dr. Sawyer's report, even after being confronted with his own invoice reflecting his three-hour review of Dr. Sawyer's report; he failed to provide citation or attribution to Dr. Sawyer's report; he failed to even list Dr. Sawyer's report in his List of Materials Considered until confronted at his deposition; and he continues to attempt to mislead the Court by insisting that no matter how much material in his report is virtually identical to that of Dr. Sawyer's, that he did not copy Dr. Sawyer's report. Dr. Kendall's opinions are simply not his own. It cannot be a reliable methodology to copy the report of another expert. Dr. Kendall should be excluded.

### B.  Dr. Kendall's Deposition Testimony is Inconsistent With an Opinion of Causation to a Reasonable Degree of Medical Certainty.

Dr. Kendall has no basis on which to conclude to a reasonable degree of medical certainty that Mr. Savory's exposure to glyphosate or GBHs was a "substantial contributing factor" to his development of NHL. Ex. 10, Kendall *Savory* Report at 16. During deposition, he would not answer whether he considered glyphosate to be carcinogenic or genotoxic, generally just stating that it was "debatable" and that the "studies do reflect different outcomes." Ex. 11, Kendall *Spector* Dep. at 185:19- 186:14, 194:8-12, 219:11-17. He admitted that "the answers aren't clear cut." *Id.* at 48:11-15.

1       Dr. Kendall also agreed that, although he would not tell a jury that glyphosate is carcinogenic, and he would not tell a jury that the surfactants used in Roundup are carcinogenic, he would opine that GBHs are carcinogenic. *Id.* at 47:6-20. When asked how non-carcinogenic glyphosate and non-carcinogenic surfactants can combine to form a carcinogenic GBH, he had no reasonable methodology for his conclusion, relying solely on "plausibility" and his suspicions ("I think that biological plausibility exists because of the biochemistry of these substances.)" *Id.* at 44:12-24. When asked whether he had identified a mechanism where glyphosate and surfactants acting in concert can cause lymphoma when acting individually they cannot, Dr. Kendall answered that "I'm suspicious of it." *Id.* at 56:3-7. And again later, explaining how he could reach his conclusion about the carcinogenicity of GBHs, he said "it may not have the direct effects. It may. We don't – we still don't know exactly." *Id.* at 53:16-25.

      Dr. Kendall sets forth no reasonable basis on which to assert that the combination of glyphosate and surfactants are carcinogenic, when he cannot opine that, individually they are carcinogenic. Certainly does not demonstrate his theory with any supporting scientific or toxicological data. In fact, he admits that this premise is "not known" and that the combination of these ingredients "may not have a direct effect." This testimony is inconsistent with his assertion that "to a reasonable scientific and toxicological certainty," Mr. Savory's exposure to Roundup was a substantial contributing factor in his development of NHL. His reliance on plausibility, suspicion, debatable principles, and absolutely no scientific data do not rise to the level of a reliable methodology.

    **C.**     **Dr Kendall Cannot Be Certain Whether Plaintiffs Had a High Enough Exposure to Glyphosate to Cause.**

      Dr. Kendall testified 1) that an internal dose of Roundup, rather than just exposure, is required to cause cancer and 2) that it is not known what the required internal dose is to increase cancer risk. He stated that exposure to glyphosate is different than an internal dose of glyphosate and that an internal dose of glyphosate is necessary to cause cancer. *See, e.g.*, Ex. 11, Kendall *Savory* Dep. at 95. He also testified that the threshold internal dose at which someone is at risk of

- 8 -
MONSANTO'S MOTION TO EXCLUDE SPECIFIC CAUSATION TESTIMONY OF RONALD KENDALL
3:16-MD-02741-VC

NHL from glyphosate exposure "hasn't been determined yet," and that "we haven't really determined yet in the whole area of *theory* as what – what are the threshold levels for carcinogenic response. What are they? We don't know." Ex. 1, Kendall *Spector* Dep. at 219:18-21, 232:24-233:2 (emphasis added). Untested theories that haven't been determined yet are classic examples of opinion testimony that should be excluded under *Daubert*. 509 U.S. 579.

## II.     Plaintiff's Expert Failed to Adequately Assess Potential Alternative Causes of Plaintiff's NHL.

Plaintiff's expert failed to adequately address the numerous potential causes of Plaintiff's NHL other than Roundup, which is required for his opinions to be admissible. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999)); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *Id.* The Ninth Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Id.* (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains. Dr. Kendall failed to consider (or "rule in") known alternative causes altogether, thus failing to satisfy step one. Even when he did mention potential alternative causes, he dealt with such causes so casually that it is impossible to even discern whether he ruled in a cause and then ruled it out, or did not rule in the cause in the first place.

Regardless of which step in the differential diagnosis is involved, Dr. Kendall's testimony reveals that he did not seriously consider that something other than Roundup could have caused Plaintiff's NHL. Instead, he started with the conclusion that Roundup was the cause, and then sought to justify that conclusion—and insulate it from scrutiny by the Court—by paying lip service to other

potential causes or simply ignoring them. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Kendall has failed to do so here, and instead has engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

### A. Dr. Kendall Does Not Have a Methodology for Assessing Risk Factors

Dr. Kendall does not have a method by which he systematically rules in all potential causes and then systematically rules out potential alternative causes to arrive at his conclusion as to what caused a plaintiff's NHL. Without really addressing Plaintiff's other risk factors, Dr. Kendall concludes that Plaintiff's use of Roundup was a substantial contributing factor to his development of NHL. Ex. 10, Kendall *Savory* Report at 16. However, when specifically asked at deposition, there were a number of factors that Dr. Kendall could not rule out as causes of the plaintiffs' NHL.

With respect to Mr. Savory, Dr. Kendall admitted that rheumatoid arthritis may have been the independent cause of his NHL, stating that "It's possible, but we can't rule that out." Ex. 11, Kendall *Savory* Dep. at 117:8-11. Dr. Kendall also failed to rule out Plaintiff's obesity as a risk factor. In fact, Dr. Kendall stated that he had not "really thought about" whether obesity would have contributed to NHL, but that he could not rule that out as a possible factors. *See, e.g.*, *Id.* at 123:16–124:2.

Dr. Kendall revealed the hodgepodge of his "methodology" when responding to another question about Mr. Savory's RA possibly being an independent cause of his NHL. Dr. Kendall responded, ""It is – it's possible, but you've got to – I would rank all these things…If you rank them from 0 to 10, I would rank the immune system and suppression of the immune system at a 9 or 10 as a risk…I would evaluate weight might be a 2, obesity might be a 2, inflammation, that might be a 5. So again, it's – It's in there. I look at rheumatoid arthritis as degenerative and inflammation." When asked "what would you rank glyphosate," Dr. Kendall answered, "I don't

know right now because I – I look at glyphosate interacting with – with other variables on a multifactorial (inaudible)." *Id.* at 162:15-163:6.

Clearly Dr. Kendall had no scientific method for assessing and ruling out alternative causes for the plaintiff's NHL.

Taken as a whole, Dr. Kendall's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." 892 F.3d at 645.  Here, as in *Lipitor*, the experts' reports simply "dismiss other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis."  *Id.*  The Court should exclude each expert's opinion on that basis.

**III.     Plaintiff's Experts Have Not Reliably Ruled Out Unknown Causes of Plaintiff's NHL and Instead Always Point to Roundup.**

Just as he fails to engage with the known alternative risk factors confronting Plaintiff, Dr. Kendall takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases:  he simply ignores the prospect.  Dr. Kendall agrees that most cases of NHL have no known cause, Ex. 1, Kendall *Spector* Dep. at 121:12-14, but does not consider that possibility with respect to Mr. Savory.

This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy.  *In re: Roundup*, 358 F. Supp. 3d at 959.  To be admissible "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *Id.*  Dr. Kendall is unable to offer any reliable method for placing Plaintiff in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very assessment.  Indeed, unlike prior experts, which the Ninth Circuit concluded adequately accounted for idiopathy, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 966-67 (9th Cir. 2021), Dr. Kendall cannot "rel[y] heavily on the

plaintiffs' exposure levels in drawing their conclusions," PTO 85 at 6, as he acknowledges that there is no information on what internal dose increases the risk of NHL (*see supra*).  Rather, he engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure. But, as this Court made clear in discussing idiopathy, exposure alone is not enough.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude this specific causation expert on Rule 702 grounds.

Dated: September 22, 2021         By: */s/Eric G. Lasker*

        Eric G. Lasker
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Attorneys for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                      */s/ Eric G. Lasker*

                                                     Eric G. Lasker
                                                     HOLLINGSWORTH LLP