**Garmer & Prather, PLLC**
Jerome P. Prather, Esq. (*pro hac vice*)
141 North Broadway
Lexington, Kentucky  40507
Telephone:  (859) 254-9351
Facsimile:   (859) 233-9769
Email: jprather@garmerprather.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
***ELECTRONICALLY FILED***

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741<br>Case No. 3:16-md-02741-VC |
| This Document Relates to:<br><br>*Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock, Adm'r, Kyle A. Murdock, individually, and Mandi L. Murdock v. Monsanto Co.,*<br>Case No. 3:20-cv-01363-VC | |

## SECOND AMENDED COMPLAINT

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

COME the Plaintiffs, the Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock, Administrator, Kyle A. Murdock, individually, and Mandi L. Murdock, by counsel, pursuant to Fed. R. Civ. P. 15(a)(2), and submit this Second Amended Complaint for damages against Defendant Monsanto Company ("Monsanto"). This amendment is intended to restate, clarify, and expand the specific claims for damages asserted by Mandi L. Murdock and Kyle A. Murdock, individually, and therefore relates back to the filing of Plaintiffs' Complaint pursuant to FRCP 15(c) because it asserts a claim for damages that arises out of the same conduct, transactions, and occurrences that were set out in the Complaint and First Amended Complaint.

Plaintiffs therefore reassert, reallege, and incorporate by reference each and every allegation contained in their First Amended Complaint, the same as if set out fully herein, and further state and allege as follows:

## NATURE OF THE CASE

1. This case arises due to the gross negligence and malice of the Monsanto Company in the development, packaging, and marketing of their product Roundup. Monsanto knowingly put a deadly product in the market while ignoring all evidence of its danger to consumers. Specifically, Roundup contains glyphosate, a carcinogen that is known to cause non-Hodgkins lymphoma. For years, Monsanto has prevented the public from knowing the harm caused by their product, going so far as to conceal relevant scientific studies and partaking in "ghostwriting" scientific studies.

2. Plaintiffs' Decedent, Kenzie Murdock, grew up on a farm in Kentucky which applied Roundup frequently and in large quantities. At only 17 years old, she developed a rare and aggressive form of non-Hodgkins lymphoma and passed away 10 months later.

## PARTIES

3. Plaintiffs' decedent, Kenzie Murdock, was born on June 3, 2001 and died on July 28, 2019.

4. Plaintiffs' decedent was at all times stated herein up until her death a citizen and resident of Murray, Calloway County, Kentucky.

5. Plaintiff Kyle A. Murdock was at all times stated herein the father of Kenzie Murdock.

6. Plaintiff Kyle A. Murdock was appointed the Administrator of the Estate of Kenzie Elizabeth Murdock by Order of the Calloway District Court on January 13, 2020. A copy of that Order was filed along with Plaintiffs' original Complaint.

7. Plaintiff Kyle A. Murdock, individually and as Administrator of the Estate of Kenzie Elizabeth Murdock, is and was at all times stated herein a citizen and resident of Murray, Calloway County, Kentucky.

8. Plaintiff Mandi L. Murdock was at all times stated herein the mother of Kenzie Murdock.

9. Plaintiff Mandi L. Murdock was at all times stated herein a citizen and resident of Murray, Calloway County, Kentucky.

10. Defendant Monsanto is a Delaware corporation, is an active foreign corporation in the Commonwealth of Kentucky, Kentucky Secretary of State Organization Number 0502433, and has its principal place of business in St. Louis, Missouri.

## JURISDICTION AND VENUE

11. The United States District Court has jurisdiction pursuant to 28 U.S.C. § 1332 *et seq.*, there being complete diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy being in excess of $75,000, exclusive of interest and costs.

12. The case is currently pending in the Northern District of California pursuant to 28 U.S.C. § 1407. Venue is still proper in the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1391(b)(2) because Kenzie Murdock developed cancer due to exposure to Roundup, products containing Roundup, and the other glyphosate products while living in Murray, Calloway County, Kentucky.

## FACTS COMMON TO ALL COUNTS

13. The Murdock family farming operation, consisting of owned land and rented land, is approximately 4,000 acres, of which a large portion is located in close proximity to the family home where Kenzie lived throughout her life, in Calloway County, Ky.

14. Growing up, Kenzie Murdock spent much of her time outside on the family farm where she was exposed to high concentrations of Roundup used on the crops.

15. Kenzie became severely ill in September of 2018 at the age of 17.

16. Kenzie was treated and tested for suspected gallbladder issues at her primary care physician's office, Cagle and Bailey Adult Health, in Murray, Kentucky.

17. Still severely ill, Kenzie then had a CT scan performed at Jackson Purchase Medical Center in Mayfield, Kentucky.

18. In October of 2018, Kenzie was diagnosed with lymphoma at Vanderbilt Children's Hospital and a biopsy was sent to St. Jude Children's Hospital ("St. Jude").

19. St. Jude confirmed her diagnosis of T-cell non-Hodgkins lymphoblastic lymphoma ("NHL") in October of 2018. This type of T-cell lymphoma develops from immature T-cells and affects children and young adults.

20. T-cell NHL is a rare and aggressive form of NHL which comprises only one in ten cases of NHL.

21. Following her diagnosis, Kenzie received her cancer treatments at St. Jude in Memphis, TN.

22. In July of 2019, Kenzie was placed in hospice care back home in Murray, Kentucky.

23. Kenzie passed away on July 28, 2019 at home after battling cancer for ten months.

24. Kenzie was only 18 years old at the time of her death and had no prior serious health issues.

25. Monsanto is a corporation headquartered in St. Louis, Missouri, but has facilities in 69 countries. Monsanto was recently acquired by Bayer, but continues to operate as its own entity.

26. Monsanto developed glyphosate in 1974 to use in its product, Roundup, which is now one of the world's most widely-used herbicides.

27. 33. Roundup is an herbicide produced by Monsanto which is comprised of two ingredients: glyphosate and surfactant.

28. Monsanto not only created a "non-selective" herbicide by using glyphosate, it also created "Roundup Ready" plant seeds that are able to withstand being sprayed by the chemical.

29. The EPA first classified glyphosate as "possibly carcinogenic to humans" in 1985. After immense pressure was put on the EPA by Monsanto, the EPA downgraded glyphosate from a Group C agent to a Group E agent, "no evidence of carcinogenicity".

30. In 2015, the International Agency for Research on Cancer ("IARC"), based on numerous studies, concluded that glyphosate is "probably carcinogenic to humans." Additionally the IARC concluded that in some studies reviewed there was a positive association between glyphosate and NHL.

31. In response, Monsanto launched a $17 million campaign to attack and undermine the research being conducted and published against their product, also known as the "anti-IARC budget."

32. The Monsanto website proclaims that the IARC findings are not consistent with other experts and contains other statements meant to cast doubt on the credibility of the IARC, such as: "The IARC is the same organization that determined beer, meat, cell phones and hot beverages cause cancer or are likely to cause cancer."

33. The IARC has long been considered one of the world's premier cancer research institutes.

## COUNT I: NEGLIGENCE

34. Plaintiffs reaffirm and re-allege each and every allegation contained in paragraphs 1-33 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

35. Monsanto had a duty to exercise reasonable care in the development, packaging, and marketing of its product Roundup.

36. Monsanto had a duty to ensure before it put Roundup on the market that Roundup was not a danger to human health. After research as early as 1985 emerged labeling its product as probably carcinogenic to humans, Monsanto had a duty to remove the product from the market.

37. Monsanto, through its agents and/or employees, breached its duty by continuing to sell Roundup while aware of its threat to human health.

38. Monsanto, through its agents and/or employees, breached its duty by marketing Roundup to consumers as a product that is safe.

39. Monsanto, through its agents and/or employees, maliciously breached its duty in its efforts to discredit and quash all evidence of the harmful effects of glyphosate.

40. Monsanto, through its agents and or/employees, had a duty of ordinary care to the Plaintiffs' decedent.

41. Monsanto negligently breached that duty resulting in Kenzie Murdock's death.

42. As a direct and proximate result of the negligence of the Defendants, Plaintiffs have been damaged in an amount exceeding the jurisdictional minimum of the court.

## COUNT II: STRICT PRODUCTS LIABILITY AND FAILURE TO WARN

43. Plaintiffs reaffirm and re-allege each and every allegation contained in paragraphs 1-42 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

44. The design, methods of manufacturing, and testing done by Monsanto did not conform to the prevailing standards of care before the product reached consumers, particularly the decedent, Kenzie Murdock.

45. Monsanto was on notice that Roundup was probably carcinogenic to humans and continued to market, promote, and distribute the product to consumers, including Plaintiffs and Plaintiffs' decedent.

46. Monsanto knew or should have known that Roundup was a dangerous product when used for its intended purpose and by its intended consumers.

47. At the times mentioned herein, Monsanto had a duty to warn consumers, including Plaintiffs, and the general public of the injuries associated with the use of their product Roundup.

## COUNT III: BREACH OF WARRANTIES

48. Plaintiffs reaffirm and re-allege each and every allegation contained in paragraphs 1-47 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

49. Monsanto has consistently declared that Roundup is safe to use when used correctly through labels, commercials, advertisements and publications, thereby creating express and implied warranties. Consumers, such as Plaintiffs and Plaintiffs' decedent, relied on these representations made by Monsanto when using the product Roundup.

50. Monsanto breached all warranties by knowingly producing, marketing, and selling a dangerous product while claiming it was safe for intended use.

## COUNT IV: FRAUD

51. Plaintiffs reaffirm and re-allege each and every allegation contained in paragraphs 1-50 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

52. Monsanto acted with gross negligence and malice in its response to the IRAC report, by commencing a campaign to undermine and quash all research presented against Roundup.

53. Monsanto has engaged in "ghostwriting," paying scientists to attach their names to studies while actually writing and editing the studies itself.

54. One study, "An Independent Review of the Carcinogenic Potential of Glyphosate" concluded that glyphosate was not a probable carcinogen. The study was supposed to be an independent work but it was uncovered that a Monsanto agent/employee, William Heydens, reviewed and made edits to the work.

55. Monsanto has used lobbying dollars to apply pressure to the EPA.

56. In May of 2016, a report was published to the EPA's website concluding that "glyphosate is not likely to be carcinogenic to humans." The report was taken down from that website just three days after being published.

57. A co-author on the report, Jess Rowland, was an EPA officer who maintained a relationship with Monsanto. Just three days after the report was published to the website, Rowland resigned from the EPA.

58. The deceitful practices of the Defendant, Monsanto, misrepresented the safety of its products to consumers, leaving consumers, including Plaintiffs and Plaintiffs' decedent, misinformed and vulnerable to the dangers of the product.

## COUNT V: WRONGFUL DEATH

59. Plaintiffs reaffirm and re-allege each and every allegation contained in paragraphs 1-58 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

60. Monsanto's acts and omissions were the direct and proximate cause of foreseeable injury to consumers, including Plaintiffs' decedent, Kenzie Murdock.

61. As a result of the foregoing acts and omissions, Plaintiffs' decedent suffered bodily injury, hospitalization, medical expenses, treatment expenses, pain of body and anguish of mind, loss of enjoyment of life, destruction of future earnings, funeral and burial expenses, and death.

## COUNT VI: LOSS OF CONSORTIUM, SERVICES, AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

62.    Plaintiffs reaffirm and re-allege each end every allegation contained in paragraphs 1- 61 of this Second Amended Complaint and incorporate same by reference as if fully set forth herein.

63.    As a result of the foregoing acts and omissions, Plaintiff Kyle A. Murdock has suffered loss of services of, and loss of companionship, love and affection of and towards his daughter, Kenzie Murdock. Kyle A. Murdock has endured severe or serious emotional distress and anguish of the type a reasonable person, normally constituted, would not be expected to endure, to his damage in an amount that is fair and reasonable and in excess of the minimum jurisdiction amount of this Court.

64.    As a result of the foregoing acts and omissions, Plaintiff Mandi L. Murdock has suffered loss of services of, and loss of companionship, love and affection of and towards her daughter, Kenzie Murdock. Mandi Murdock has endured severe or serious emotional distress and anguish of the type a reasonable person, normally constituted, would not be expected to endure, to her damage in an amount that is fair and reasonable and in excess of the minimum jurisdiction amount of this Court.

## PUNITIVE DAMAGES

65.    Plaintiffs reaffirm and re-allege each end every allegation contained in paragraphs 1-64 of this Second Amended Complaint, and incorporate same by reference as if fully set forth herein.

66.    As a result of the gross negligence, willful or wanton misconduct, and malice stated herein, the Plaintiffs are entitled to an award of punitive or exemplary damages in an

amount that is fair and reasonable and in excess of the minimum amount required to invoke the jurisdiction of this Court.

## **DAMAGES**

WHEREFORE, the Plaintiffs, Estate of Kenzie Elizabeth Murdock, Kyle A. Murdock, Administrator, Kyle A. Murdock, Individually and Mandi L. Murdock, demand:

1. Judgment against Defendant Monsanto Company, for compensatory, punitive, and exemplary damages in an amount exceeding the jurisdictional limit of this court of $75,000.00;

2. Punitive damages;

3. Pre-judgment interest;

4. Post judgment interest;

5. Trial by jury;

6. Costs and expenses herein; and

7. Such other and further relief to in addition to the costs and disbursements of this action.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF

JEROME P. PRATHER
Garmer & Prather, PLLC
141 North Broadway
Lexington, Kentucky  40507
Telephone:  (859) 254-9351
Facsimile:   (859) 233-9769
Email: jprather@garmerprather.com

DENNIS L. NULL, SR.
Null, Samson & Paitsel
423 East Broadway
Mayfield, Kentucky 42066

Telephone:  (270) 247-5737
Facsimile:   (270) 247-0926
Email:  nulld@bellsouth.net

**/s/ Jerome P. Prather**