IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' RESPONSE IN OPPOSITION TO MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION GROUNDS** |
| *Spector v. Monsanto Co., 3:20-cv-05532* | |

i

**TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................................1

II.  ARGUMENT........................................................................................................2

    A.   Summary Judgment Standard....................................................................2

    B.   The Supreme Court of Pennsylvania Placed the Question of Whether a Product is "Unreasonably Dangerous" With the Factfinder ....................................3

        1.  Plaintiffs Have Proffered Sufficient Evidence Under *Tincher's* Consumer Expectations Standard................................................................6

        2.  Plaintiffs Have Proffered Sufficient Evidence Under *Tincher's* Risk-Utility Standard...................................................................................8

    C.   The Record Supports a Genuine Issue of Material Fact as to Whether Defendant's Failure to Warn of the Carcinogenic Risks Associated With Glyphosate Proximately Caused Mrs. Spector to Develop NHL..................................9

III. CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Cases:**

*Am. Honda Motor Co. v. Martinez*, 2017 Pa. Super. Unpub. LEXIS 1593..................11, 12

*Amato v. Bell & Gossett*, 116 A.3d 607 (Pa. Super. 2016)..................3, 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................2

*Ash v. Cont'l Ins. Co.*, 932 A.2d 877 (Pa. 2007)..................5

*Berkebile v. Brantly Helicopter Corp.*, 311 A.2d 140 (Pa. Super. 1973)..................11

*Celotex Corp. v. Catrett*, 477 U.S. 3117 (1986)..................2

*Chandler v. L'Oreal USA, Inc.*, 340 F. Supp 3d 551 (2018)..................14

*Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir. 1984)..................9

*Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614 (1999)..................13, 14

*Dolby v. Ziegler Tire & Supply Co.*, 2017 Pa. Super. Unpub. LEXIS 791..................14

*Dorshimer v. Zonar Sys., Inc.*, 145 F. Supp. 3d 339 (M.D. Pa. 2015)..................13

*Flanagan v. MARTFIVE, LLC*, 259 F. Supp. 3d 316 (2017)..................14

*Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir. 1991)..................15

*High v. Pennsy Supply, Inc.*, 154 A.3d 341 (Pa. Super. 2017)..................5, 8

*Hopkins v. E.I. Du Pont DeNemour & Co.*, 199 F.2d 930 (3d Cir. 1952)..................11

*Incollingo v. Ewing*, 282 A.2d 206 (Pa. Super. 1971)..................11

*Maize, Admr. V. Atlantic Refining Co.*, 41 A.2d 850 (Pa. 1945)..................10, 11

*Maya v. Johnson and Johnson*, 97 A.3d 1203 (Pa. Super. 2014)..................11

*Moroney v. Gen. Motors Corp.*, 850 A.2d 629 (Pa. Super. 2004)..................14

*Nelson v. Am. Honda Motor Co., Inc.*, 2021 WL 2877919 (W.D. Pa. May 17, 2021)..................13

*Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876 (3d Cir. 1998)..................13

*Phillips v. A-Best Prods. Co.*, 665 A.2d 1167 (Pa. 1995)..................5, 6

*Schrecengost v. Coloplast Corp.*, 425 F. Supp 3d 448 (W.D. Pa. 2019)..................9

*Sliker v. Nat'l Feeding Sys., Inc.*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 7227..................14

*Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014)..................3, 4, 5, 6, 8, 9, 13

*Tolan v. Cotton*, 572 U.S. 650 (2014)..................................................................................2

*Tomao v. A.P. De Sanno & Son*, 209 F.2d 544 (3d Cir. 1954)..........................................10

*Trask v. Olin Corp.*, 2016 WL 1181428 (W.D. Pa. Mar. 28, 2016)...................................14

*Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534 (Pa. Super. 2003)..............................13

*Whyte v. Stanley Black & Decker, Inc.*, 2021 WL 230986 (W.D. Pa. Jan. 22, 2021)......13

*Wright v. Ryobi Techs., Inc.*, 175 F. Supp 3d 439 (2016).................................................14

**Other Authorities:**

David G. Owen, PRODUCTS LIABILITY LAW, at § 5.6 (Hornbook Series) (2d ed. 2008)........5

Federal Rule of Civil Procedure 56(a).................................................................................2

Restatement [Second] of Torts § 402A..........................................................................4, 13

## I.   INTRODUCTION.

This action is filed on behalf of Beth Spector, who was diagnosed with non-Hodgkin's lymphoma (hereinafter "NHL") in 2008, as a result of her continued exposure to the herbicide Roundup since 1980. Mrs. Spector regularly used Roundup around her 1.25 acre family home to control weeds, poison ivy, and other brush. Defendant, Monsanto Company (hereinafter "Monsanto"), promoted Roundup as being harmless to humans and even went so far as to proclaim that Roundup was "safe as table salt." In reality, the active chemical ingredient in Roundup (glyphosate) is a carcinogen, which Monsanto has known for decades and failed to represent in its warnings to users of Roundup. As a result, Mrs. Spector relied on Monsanto's misrepresentations, continued to use Roundup, and was diagnosed with NHL (specifically pulmonary marginal zone lymphoma or MZL) proximately caused by Monsanto's inadequate warnings and defective product.

Monsanto's Motion for Summary Judgment focuses on causation relative to its failure to warn and/or instruct Mrs. Spector of the carcinogenic risks associated with using Roundup. To assert a *prima facie* failure to warn claim under Pennsylvania law, Mrs. Spector must set forth evidence in which the trier of fact can make the reasonable conclusion that Mrs. Spector's NHL was caused by Monsanto's inadequate warnings and defective product. This opposition illustrates genuine issues of material fact that preclude summary judgment as a matter of law.

Monsanto asks the Court to ignore evidence of decades of fraudulent research, misleading advertising, and deceptive omissions related to its Roundup product for a mere technicality – that Mrs. Spector did not read the product labeling. However, her understanding of the "safety" of the Roundup products was gained through her decades-long digestion of television and print advertisements, as well as in-store displays, promoting Roundup as safe and effective. In any event, even had Mrs. Spector read the Roundup labels before she used the product regularly for *38 years* until 2018, she would not have been

alerted to the risk of cancer, as Monsanto failed to disclose that risk entirely and went so far as to advertise Roundup as harmless to humans despite scientific data that showed otherwise. In fact, none of the advertisements or in-store displays that Mrs. Spector read or saw discussed any possibility that exposure to Roundup could impact her health in a negative way, or that it could be harmful at all.

The law in the Commonwealth of Pennsylvania is clear that the complete omission or inadequacy of warnings as to the attendant risks complained of by an injured plaintiff can be determined as the proximate cause of the subject injury. In sum, there exists genuine issues of material fact to preclude summary judgment and send the issue of warnings causation to a jury for its proper disposition. As such, the Motion should be denied.

**II.    ARGUMENT.**

    **A.    <u>Summary Judgment Standard.</u>**

Summary judgment may be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 3117, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with evidence to show that there is in fact a genuine issue for trial. *Id.* at 323-24.

In deciding a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party and all doubts as to the existence of genuine issues of material fact must be resolved against the moving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Thus, summary

judgment may be granted only where the moving party establishes that its right to judgment is absolutely clear and there is no doubt as to the existence of any genuine issue of material fact. *Id.* Accordingly, and for the reasons set forth herein, the Motion for Summary Judgment should be denied.

In sum, Monsanto asks this Court to relieve it of ***all*** liability based on a technicality. Mrs. Spector's personal reading of a warning label is frankly irrelevant where such a label would not have provided her with adequate information in the first place. Additionally, Mrs. Spector was exposed to several advertisements and in-store displays for Roundup over the years and was never once alerted to the risks of cancer associated with glyphosate. Monsanto cannot avoid accountability where it has omitted pertinent information for the sake of sales and profit. Accordingly, summary judgment should be denied.

### B. The Supreme Court of Pennsylvania Placed the Question of Whether a Product is "Unreasonably Dangerous" With the Factfinder.

Under Pennsylvania law, the cause of action in strict products liability "requires proof...of the ordinary consumer's expectations or of the risk-utility of a product" in order to determine whether a product is "unreasonably dangerous." *Tincher v. Omega Flex*, 104 A.3d 328, 401 (Pa. 2014) (allowing a plaintiff to pursue a products liability claim under a consumer expectations standard or risk-utility theory, or both); *see also Amato v. Bell & Gossett*, 116 A.3d 607, 620 (Pa. Super. 2016) (applying *Tincher*, although a design defect case, to a failure-to-warn action).[1] Consumer expectations are based on

---

[1] In *Amato*, the plaintiffs pursued action against the manufacturer of Cranite on failure-to-warn theories after developing asbestos-related mesothelioma from its products. *Id.* at 612. The manufacturer asserted that the trial court's failure-to-warn jury instruction was inappropriate following the *Tincher* decision because it failed to incorporate considerations of reasonableness. *Id.* at 620. While the Superior Court correctly noted that *Tincher* involved a design defect, it held that it was applicable to the case at bar involving failure-to-warn theories because the *Tincher* court returned to the finder of fact the question of whether a product is "unreasonably dangerous." *Id.* Significant in that holding was the court's statement that the determination of whether a product is "unreasonably dangerous" is "part and parcel of whether the product was, in fact, defective." *Id.* The manufacturer proposed jury instructions which would permit the jury to determine the reasonableness of its actions based upon whether the risk inherent to asbestos was known or knowable in light of the scientific knowledge available at the time the product was sold. *Id.* at 621. Instead, the jury was provided instructions to a different effect: "...If you find that necessary warnings or instructions were not given, then the ***defendant is responsible for all harm caused by the***

3

reasonableness such that the "ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the *attendant risk of injury of which the plaintiff complains*." *Id.* at 387 (emphasis added) (*citing* Restatement [Second] of Torts § 402A, cmt. i)².  On the other hand, risk-utility theory analyzes whether a product is in a defective condition if a "reasonable person" would conclude that the probability and seriousness of harm **_caused_** by the product outweigh the burden or costs of taking precautions. *Id.* at 389 (emphasis added).³

After decades of confusion surrounding products liability in Pennsylvania, the Supreme Court re-emphasized the Commonwealth's adherence to the Restatement [Second] of Torts § 402A and returned the factual question of reasonableness in consumer expectations and risk-utility analyses to the jury. *Id.* at 388.⁴  In doing so, the Supreme Court of Pennsylvania vindicated public policy underlying safety in the context of products liability:

---

*failure to warn*. And in this case the claim is these suppliers failed to warn of the dangers of using asbestos." *Id.* (emphasis added). Ultimately, the court held that the manufacturer was neither entitled to a state-of-the-art jury instruction nor prejudiced by the instructions given because its defense was not that its product was not "unreasonably dangerous," but rather that ***it was not dangerous at all.*** *Id.* at 622.

² "Where a warning is given, the seller may reasonably assume that it will be read and heeded;…" *See* § 402A, cmt. j.

³ Relevant factors to a manufacturer's risk-utility calculus include "(1) The usefulness and desirability of the product—its utility; (2) ***The safety aspects of the product—the likelihood that it will_cause_injury, and the probable seriousness of the injury;*** The availability of a substitute product which would meet the same need and not be as unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) ***The user's anticipated awareness of the dangers inherent in the product and their availability***, because of general public knowledge of the obvious condition of the product, ***or of the existence of suitable warnings or instructions***; and (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance." *Id.* (emphasis added).

⁴ In *Tincher*, the Supreme Court of Pennsylvania expressly overruled its prior, dispositive products liability case, *Azzarello v. Black Brothers Co.*, 391 A.2d 1020 (Pa. 1978), which held that the determination of whether a product was "unreasonably dangerous" was a question of law for the trial court.

4

> So, if the information is not true but false, the purchaser loses significant autonomy, as well as the benefit of the bargain. Since an important purpose of the law is to promote autonomy, and the equality of the buyer to the seller as reflected in their deal, the law fairly may demand that the seller rectify the underlying falsity and resulting inequality in the exchange transaction if harm results.

*Id.* (quoting David G. Owen, PRODUCTS LIABILITY LAW, at § 5.6 (Hornbook Series) (2d ed. 2008)). Moreover, the Supreme Court acknowledged the difficulty in achieving "perfect safety goals" but simultaneously noted that the law's incapability of doing so is "not a justification for jettisoning or restricting the duty in strict liability, whose compensatory objective remains part of the public policy of this Commonwealth." *Id.* at 404 (*citing Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 882 (Pa. 2007)). As such, the *Tincher* case stands for the notion that grants of summary judgment in products liability actions under Pennsylvania law should be few and far between, as "*express and implied representations by the manufacturer…contextualized by common human experience to evolve the notion of fault in strict liability, explain the relevance of evidence regarding consumer expectations, both as an independent source of liability (e.g., expectations created by advertising or warnings)* and as part of the calculus of risk…." *Id.* at 402 (emphasis added).

A product is defective under failure-to-warn theories where the product was not accompanied by "sufficient warnings to notify the user of the dangers inherent in the product," rendering the product "unreasonably dangerous." *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 351 (Pa. Super. 2017) (*quoting Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995)). In *High*, the manufacturer argued that the plaintiffs could not prove that the product (concrete) was defective under *Tincher's* consumer expectations standard since the dangers were knowable and acceptable to the average person. *Id.* at 350. After summary judgment was granted in favor of the manufacturer on that issue, the Superior Court remanded the case back to trial, finding that a genuine issue of material fact existed as to whether the

ordinary consumer would reasonably anticipate and appreciate the dangerous condition and attendant risk of the product. *Id.*

Notably, the court emphasized that the improper entry of summary judgment in favor of the manufacturer failed to address, *inter alia*, "any express or implied representations" by the manufacturer. *Id.* at 351 (*citing Tincher*, 104 A.3d at 387). In addition, the court recognized that, under failure-to-warn theories, a plaintiff can show that a product is defective by offering that "a warning of a particular danger was….altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" *Id.* (*quoting Phillips*, 665 A.2d at 1171). In light of the *Tincher* decision, such a question is not to be resolved through summary judgment and must be presented to a jury for its proper disposition. *Id.*

Here, while Monsanto's Motion is predicated on causation and asks this Court to bar Mrs. Spector from **_any and all_** recovery under the assertion that she cannot prove that a failure to warn was the proximate cause of her developing NHL, it completely ignores the material, undisputed fact that no warning of the attendant risk was provided whatsoever – either on the product itself or as part of its marketing campaign to the average consumer like Mrs. Spector. Monsanto conveniently attempts to bypass a vital piece of the puzzle concerning its complete and calculated failure to warn consumers like Mrs. Spector of the carcinogenic risks associated with using Roundup, which is addressed at length by the seminal *Tincher* decision through consumer expectations and risk-utility. While it is true that a plaintiff must prove that the lack of warning was both unreasonably dangerous and the proximate cause of the plaintiff's injuries, one cannot be discussed without the other following the prominence of the Supreme Court of Pennsylvania's decision in *Tincher*.

      **1. Plaintiffs Have Proffered Sufficient Evidence Under *Tincher's* Consumer Expectations Standard.**

6

First, under the consumer expectations standard, a jury could find that Mrs. Spector, as an ordinary consumer of Roundup, could not reasonably anticipate that glyphosate was a carcinogen and that there was a risk of developing cancer from using the product. At Mrs. Spector's deposition, she was asked about her exposure to Roundup advertising:

> Q. Now, before we took our break we were talking about specific Roundup products that you recall. And let me ask you this now, ma'am: Do you ever recall seeing any advertisements for Roundup?
> A. Probably. That's why I knew that it was a good product.
> …
> Q. Do you remember the contents of any specific Roundup advertisement that you may have seen?
> A. No. Other than, I – I'm sure I felt it was a great product and I used it with confidence and sprayed a lot. It was my go-to.
> Q. Okay.
> A. Weeds: Roundup.

See Silverstein Decl., Ex. 1 at 107:8-14; 108:1-8. Although Mrs. Spector may not have read the Roundup labels, she was familiar with the portrayal of the product through advertisements and in-store displays, which led her to believe that Roundup was safe and effective. Mrs. Spector has also provided an Affidavit describing her understanding of the Roundup product based upon her exposure to the product's advertising and marketing. See Silverstein Decl., Ex. 2 (Affidavit of Beth Spector). Most importantly, none of the advertisements or in-store displays which Mrs. Spector read or saw discussed any possibility that using Roundup could negatively impact her health, or that it could be harmful at all. See id. at #6. After all, Monsanto expressly represented Roundup as being harmless to humans. See Silverstein Decl., Ex. 3 at ¶ 1 (Plaintiffs' Complaint).

Furthermore, Mrs. Spector had countless experiences with advertisements and displays throughout her lifetime for other products that included a warning, fine print, or some other mechanism to convey to the consumer that the product may be unsafe or pose some risks, which speaks directly to imposing liability in the context of consumer expectations. See Silverstein Decl., Ex. 2, #7. While Monsanto's

Motion contends that a different warning or label would not have changed Mrs. Spector's behavior since she never read the warnings, the precise reason for not doing so was due to Monsanto promoting Roundup as harmless. *See id.* at #6. Had Mrs. Spector read the warnings as provided, doing so would not have apprised her of the attendant risk of cancer because Monsanto failed to warn all consumers of that risk like the manufacturer in *High* who omitted the attendant risk altogether. Such an omission has been consistently held to render a product "unreasonably dangerous" in Pennsylvania, and a reasonable jury could conclude that this dangerous condition caused Mrs. Spector to develop NHL under failure-to-warn theories. Accordingly, the Motion should be denied.

### 2. Plaintiffs Have Proffered Sufficient Evidence Under *Tincher's* Risk-Utility Standard.

Alternatively, a genuine issue of material fact exists as to whether a reasonable person could conclude that the probability and seriousness of developing NHL caused by using Roundup outweighs Monsanto's burden or costs in taking the necessary precautions to avoid harming consumers. Plaintiffs have offered evidence of scientific fraud, falsified data, and deceptive marketing strategies involved in Monsanto's distribution of Roundup, and such evidence suggests that Monsanto could have included glyphosate's carcinogenic nature and risk of cancer on Roundup's warning label or through advertising.[5] Instead, Monsanto was unwilling to challenge its reputation and dominance in the marketplace from Roundup's monstrous success and strategically chose not to disclose risks they were aware of through scientific studies and research. Specifically, Plaintiffs have proffered evidence that Monsanto began the

---

[5] Monsanto's general representations that its glyphosate-based herbicides were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish were challenged by the New York Attorney General in 1996 for false and misleading advertising of Roundup. *See* Silverstein Decl., Ex. 3 at ¶¶ 38-39. While Monsanto agreed to "cease and desist from publishing or broadcasting any advertisements [in New York]" that deceive the public as to Roundup's toxicity, Monsanto neglected to alter its advertising in the same manner in any other state other than New York. *See id.* at ¶ 40. Monsanto was similarly held to be deceitful about the safety of its Roundup advertising by France's highest court in 2009. *See id.* at ¶ 41.

development and sale of genetically engineered "Roundup Ready" Seeds in 1996 in anticipation of its United States patent for glyphosate expiring in 2000. *See* Silverstein Decl., Ex. 3 at ¶¶ 35-36. This allowed Monsanto to **_not only secure but also expand_** its share of the market before its patent expired, all while continuing to omit pertinent warning information to its millions of consumers.[6]

Under *Tincher's* risk-utility calculus, a jury may consider a plethora of factors, and relevant here are two of those factors: (1) The safety aspects of the product—the likelihood that it will **_cause_** injury, and the probable seriousness of the injury and (2) The user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions. In the case at bar, Monsanto mistakenly asks this Court to forego consideration of any factors simply because Mrs. Spector did not read warning labels that would not have even hinted at her risk of developing cancer as a result of using Roundup because that risk was not mentioned at all. The record sufficiently sets forth a genuine issue of material fact for a jury to consider whether Monsanto knew or should have known of the carcinogenic risks of glyphosate and that its failure to warn consumers of such risks rendered Roundup "unreasonably dangerous," causing Mrs. Spector to develop NHL. Accordingly, the Motion should be denied.

### C. The Record Supports a Genuine Issue of Material Fact as to Whether Defendant's Failure to Warn of the Carcinogenic Risks Associated With Glyphosate Proximately Caused Mrs. Spector to Develop NHL.

A manufacturer is liable for failure to warn under Pennsylvania law where a plaintiff can establish that the lack of warning was both "unreasonably dangerous" and the proximate cause of the plaintiff's injuries. *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3d Cir. 1984); *see also Schrecengost v. Coloplast Corp.*, 425 F. Supp 3d 448, 463 (W.D. Pa. 2019) (finding that a jury could conclude that a manufacturer's absence of warnings proximately caused plaintiff's injuries where the manufacturer failed to disclose

---

[6] In 2000, Roundup accounted for almost $2.8 billion in sales, outselling other herbicides by a margin of five to one, and accounting for close to half of Monsanto's sales. *See* Silverstein Decl., Ex. 3 at ¶ 37.

relevant risks of a medical device, which it was aware of). The plaintiff must further establish proximate causation by showing that had the manufacturer issued a proper warning, she would have altered her behavior, thus avoiding the injury. *Id.* at 198.

Where a plaintiff has established a reasonable inference that "simple, easily understood directions and limitations could and would be followed had they been given," Pennsylvania courts, as well as the Third Circuit, have held that omission or inadequacy of warnings could thus be found to be a proximate cause of the injury. *Tomao v. A.P. De Sanno & Son*, 209 F.2d 544, 546 (3d Cir. 1954) (sustaining a verdict for plaintiff where a grinding wheel, which partially blinded the plaintiff, had no warning as to the maximum safe speed of the wheel)[7]; *Maize, Admr. V. Atlantic Refining Co.*, 41 A.2d 850, 853 (Pa. 1945) (sustaining a verdict for plaintiff, who died after inhaling the fumes of a poisonous chemical, where a can of cleaning fluid misled consumers as to the product's safety and use only in a well-ventilated space)[8];

---

[7] "If the manufacturer owes a duty to use care in making his products, he owes also the companion duty to warn of the latent limitations of even a perfectly made article, the ***use of which, however, is dangerous if the user is ignorant of those limitations and the manufacturer has no reason to believe that he will recognize the danger***." *Id.* (emphasis added). Here, Monsanto contends that Mrs. Spector cannot proffer causation evidence since she did not read the warnings on Roundup, but even if she had, she would not have been alerted to the carcinogenic risk of cancer from use of the product because Monsanto omitted that risk from the label.

[8] In *Maize*, the Pennsylvania Supreme Court notably took issue with the way in which the manufacturer displayed warnings on its product. *Id.* at 852. Specifically, the Court reasoned that each of the product's four sides conspicuously displayed the words "Safety-Kleen," which would "naturally lull the user of that fluid so-named into a false sense of security…" *Id.* Further, the Court acknowledged that the product did, in fact, contain cautionary warnings for users to avoid inhaling fumes and to only use the product in well-ventilated areas, but the Court opined that such warnings, which were displayed in 1/8-inch font at the bottom of the can, were "comparatively minor" in relation to the prominence of the word, "SAFETY." *Id.* The Court reasoned that "it is understandable that a woman busily engaged in the task of cleaning rugs might not take time to read everything on the can, particularly since the word 'SAFETY' was so prominently featured as to exclude from her mind that 'provident fear' which has been characterized as 'the mother of safety.'" *Id.* Such reasoning is factually analogous to the case at bar given Monsanto's utter failure to include any mention of carcinogenicity or cancer on Roundup's warning label. While it is admitted that Mrs. Spector testified to not reading the provided warnings on Roundup, Monsanto had been advertising the product as harmless to humans like the way in which the manufacturer in *Maize* emphasized safety on its cleaning fluid. It should be noted, as well, that the manufacturer in *Maize* did *more* than Monsanto in, at the very least, including *some warning* as to the

*Berkebile v. Brantly Helicopter Corp.*, 311 A.2d 140, 144 (Pa. Super. 1973) (reversing judgment for defendant manufacturer where plaintiff died after the rotor blades on a helicopter flew off and product was accompanied by warnings that failed to alert users to the need for an instantaneous shift in the event of power failure)[9]; *Hopkins v. E.I. Du Pont DeNemour & Co.*, 199 F.2d 930, 934 (3d Cir. 1952) (reversing judgment for defendant manufacturer where dynamite exploded due to heat inside of a freshly-drilled hole and product failed to warn that such an explosion could occur).[10]

To create a jury question, a plaintiff must establish "some reasonable likelihood that an adequate warning would have prevented the plaintiff from [engaging in the conduct that caused the injury]"). *Am. Honda Motor Co. v. Martinez*, 2017 Pa. Super. Unpub. LEXIS 1593, at *24 (*quoting Maya v. Johnson and Johnson*, 97 A.3d 1203, 1213-14 (Pa. Super. 2014)). In *Martinez*, the plaintiff alleged that had the manufacturer warned him about the potential for its Honda to rollover, he would not have purchased the automobile. *Id.* The manufacturer argued that even if it had a duty to warn about the risk of injury from

---

very risk experienced by the plaintiff. In contrast, Mrs. Spector had absolutely no reason to know that her use of Roundup was harmful to her health because Monsanto omitted such information from users of Roundup. As Mrs. Spector testified in her Affidavit, she is familiar with health warnings accompanying other products through advertisements and had no way of knowing that her health would be negatively implicated by using Roundup since that information was conveniently withheld from any displays or advertisements about the product that she saw. *See* Silverstein Decl., Ex. 2, #7-8.

[9] "Action designed to stimulate the use of a potentially dangerous product must be considered in testing the adequacy of a warning as to when and how the product should not be used;...." *Id.* at 146 (*quoting Incollingo v. Ewing*, 282 A.2d 206, 288-89 (Pa. Super. 1971)). The Pennsylvania Superior Court concluded that promotional techniques in relation to adequacy of warnings is a proper question for a jury in determining the legal consequences for failure to warn. *Id.* at 146-47.

[10] In *Hopkins*, the Third Circuit relied on *Maize* as controlling, emphasizing the proposition that "...one who supplies an instrumentality for use by others, and who knows or should know that the foreseeable use is dangerous to human life unless certain precautions are taken, and who realizes or should realize that the probable user will not recognize the danger, is under a duty to warn the user of such danger and to advise the proper precautions." *Id.* at 933. Additionally, the Third Circuit specifically highlighted that the defendant manufacturer in *Maize* actually did warn users of the specific risk as compared to the manufacturer in *Hopkins* that did not at all. *Id.* Mrs. Spector has offered sufficient evidence to this point that Monsanto knew or had reason to know that glyphosate was harmful to humans and consciously did not warn of the risk of cancer that she ultimately developed as a result of the failure to warn.

11

rollover accidents, the plaintiff had failed to raise any reasonable inference that inadequate warnings proximately caused his injuries. *Id.* at *23.

Notably, the Superior Court of Pennsylvania concluded that the plaintiff proffered sufficient evidence from which the jury could conclude that Honda's failure to adequately warn the plaintiff was the proximate cause of injury. *Id.* at *25. In doing so, the court pointed out that the manufacturer failed to offer any evidence of its own to rebut the plaintiff's testimony that he would not have bought the car had he been adequately warned of the risk, including the failure to cross-examine the plaintiff on whether he had read the owner's manual. *Id.* at *24. Similarly, the Superior Court also found it appropriate for the trial court to have instructed the jury to presume that the plaintiff would have heeded adequate warnings had they been given in the absence of any evidence from the manufacturer rebutting the plaintiff's testimony that he would not have purchased the car. *Id.* at *18.

Here, as in *Martinez*, Monsanto has offered no evidence of its own to rebut Mrs. Spector's testimony that she would not have used Roundup if she had been warned that it could cause cancer. Monsanto rests its entire argument on the fact that Mrs. Spector did not read Roundup's warning label, and therefore she cannot possibly prove that the failure to warn proximately caused her injuries. Although Monsanto did offer Mrs. Spector's deposition testimony as evidence that she did not read the warnings, this is insufficient to rebut her clear assertion that she would not have used Roundup had she known it could adversely affect her health. Plaintiffs have sufficiently produced both Mrs. Spector's deposition testimony and an accompanying Affidavit concerning her vast exposure to Roundup advertisements and displays, none of which warned her of glyphosate's carcinogenic risks. *See* Silverstein Decl., Ex. 2; *see also* Silverstein Decl., Ex. 3. Monsanto's Motion hones in on Mrs. Spector's statement that she did not read its inadequate warning label but entirely glosses over its responsibility in both omitting cancer warnings from its advertisements and promotional materials, which Mrs. Spector ***did*** read and see, and its

additional false and misleading representations concerning Roundup's safety. Thus, a genuine issue of material fact exists from which a jury could conclude that Monsanto's failure to warn proximately caused Mrs. Spector to develop NHL, as she has sufficiently evidenced that the very reason she never read the warnings was because of Monsanto's misleading representations of Roundup. *See* Silverstein Decl., Ex. 2, #6.

Lastly, Monsanto argues that Pennsylvania has limited the heeding presumption to the cases involving work-related asbestos exposure,[11] and alternatively, Plaintiffs claims still fail even if this Court

---

[11] While it is true that Pennsylvania has not yet expressly applied the heeding presumption to failure-to-warn cases in the context of the case at bar, the Third Circuit predicted that Pennsylvania would do so in light of its adherence to Restatement [Second] of Torts § 402A: "Since the very idea of imposing strict liability for the failure to warn is premised on the belief that the presence or absence of an adequate warning label will affect the conduct of a product user, it would be illogical, and contrary to the basic policy of § 402A, to accept that a product sold without an adequate warning is in a 'defective condition' … while simultaneously rejecting the presumption that the user would have heeded the warning had it been given." *See Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 883 (3d Cir. 1998). Following *Pavlik*, the Superior Court of Pennsylvania did, in fact, adopt the heeding presumption in the context of workplace asbestos exposure. *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 618-21 (Pa. Super. 1999). Monsanto's Motion focuses largely on the heeding presumption as it applies in Pennsylvania and contends that the presumption is limited to workplace asbestos exposure; however, it is Plaintiffs' position that the Commonwealth's express adherence to Restatement [Second] of Torts § 402A in its recent, seminal decision under *Tincher*, demonstrates that in any context where a manufacturer causes specific harm to a plaintiff based on its complete and total failure to warn that plaintiff of the specific harm suffered, the implication is that the plaintiff would have heeded the warning if it was provided. *See* § 402A, cmt. j. Thus, where a manufacturer fails to warn entirely, Pennsylvania law presumes that the plaintiff would have heeded an adequate warning if such a warning was provided and does not require a plaintiff to produce affirmative evidence of that presumption to survive summary judgment. Even so, if this Court were to apply the heeding presumption to Mrs. Spector's case, several federal courts in Pennsylvania have applied the heeding presumption to failure-to-warn claims. *See, e.g., Nelson v. Am. Honda Motor Co., Inc.*, 2021 WL 2877919, at *6 (W.D, Pa. May 17, 2021) (noting that a court may presume that a plaintiff would have heeded warnings from a car manufacturer if there is some basis in the record to show that the plaintiff would have actually received the warnings if provided; *Whyte v. Stanley Black & Decker, Inc.*, 2021 WL 230986, at *10 (W.D. Pa. Jan. 22, 2021) (finding that a manufacturer failed to meet its burden for summary judgment by offering only a snippet of plaintiff's deposition testimony that he did not read a hammer's warning label, which was insufficient to rebut that the plaintiff would have heeded warnings if given); *Dorshimer v. Zonar Sys., Inc.*, 145 F. Supp. 3d 339, 355 (M.D. Pa. 2015) (finding that a manufacturer sufficiently rebutted the heeding presumption by offering evidence that the plaintiff was aware of the open and obvious risk of the location of a handheld inside of a bus such that a different warning would not have prevented her fall); *Trask v. Olin Corp.*, 2016 WL 1181428, at *13 (W.D. Pa. Mar. 28, 2016) (noting that an injured

were to apply a heeding presumption to the present context. It must be noted that every single one of the cases cited by Monsanto in support of these arguments is distinguishable from Mrs. Spector's. *See Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 537-38 (Pa. Super. 2003) (finding in favor of a manufacturer where plaintiff's decedent ***voluntarily continued to use its tobacco products despite awareness of smoking risk from public knowledge and working in the health industry***) (emphasis added); *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 634 (Pa. Super. 2004) (finding in favor of a manufacturer where plaintiff was ***aware*** of car's automatic unlocking feature when ignition was turned off such that warnings would not have prevented her injury) (emphasis added); *Dolby v. Ziegler Tire & Supply Co.*, 2017 Pa. Super. Unpub. LEXIS 791, at *5 (finding in favor of manufacturer because ***plaintiff failed to make out any element of the failure-to-warn claim***) (emphasis added); *Sliker v. Nat'l Feeding Sys., Inc.*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 7227 (finding that if the heeding presumption were to apply, defendants are entitled to rebut evidence that a warning would not have been heeded); *Coward*, 729 A.2d at 621-22 (1999) (finding that, where the heeding presumption does apply, a toxic tort plaintiff does not have to demonstrate failure-to-warn defect causation by introduction of affirmative evidence in order to avoid precluding recovery where a manufacturer has caused harm); *Flanagan v. MARTFIVE, LLC*, 259 F. Supp. 3d 316, 321 (2017) (finding in favor of manufacturer where plaintiff ***chose not to read adequate warnings$ that were provided when buying and using the product in a hurry***) (emphasis added); *Wright v. Ryobi Techs., Inc.*, 175 F. Supp 3d 439, 454 (2016) (finding in favor of manufacturer where plaintiff ***failed to read adequate warnings that were provided*** and had a ***usual method*** of using the product) (emphasis added); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp 3d 551, 562 (2018) (finding in favor of manufacturer where plaintiff ***failed to read adequate warnings that were provided*** while having 40 years of experience using similar products) (emphasis added).

    The only way in which Mrs. Spector could have reasonably known that her exposure to Roundup could cause cancer is if Monsanto properly disclosed that fact, which they knew or should have known of through ample studies and research on the carcinogenicity of glyphosate. Plaintiffs have provided sufficient evidence to suggest that Monsanto's failure to warn of cancer entirely, in both its warning labels

---

plaintiff can invoke the benefit of a rebuttable presumption where no warning is given as to the accidental discharge of the manufacturer's rifle).

14

*and* its advertising and marketing of Roundup, proximately caused Mrs. Spector to develop NHL.[12] As such, a genuine issue of material fact exists concerning causation, and the Motion must be denied.

### III. CONCLUSION.

Defendant, Monsanto, attempts to evade complete responsibility for its insidious actions in such a way that contravenes the public policy surrounding products liability law in the state of Pennsylvania; therefore the Motion is disingenuous on its face and Monsanto cannot absolve itself from liability where it placed a defective product into Mrs. Spector's hands, regardless of whether she read the warning label. When taken together, the record contains more than sufficient evidence concerning whether the trier of fact can reasonably conclude that Monsanto's failure to warn Mrs. Spector of Roundup's carcinogenic risks proximately caused her to develop NHL. All claims against moving defendant are meritorious, well-supported by the record, and objectively reasonable. For all the foregoing reasons asserted herein, Plaintiffs respectfully request the Court deny moving defendant's Motion for Summary Judgment.

Respectfully submitted,

By: /s/ *Jarad L. Silverstein, Esquire*
**WAPNER, NEWMAN, BRECHER & MILLER, P.C.**
JARAD L. SILVERSTEIN, ESQUIRE
Attorney for Plaintiffs

Dated: October 4, 2021

---

[12] It should be noted, as well, that Monsanto asks this Court to dismiss <u>all</u> of Mrs. Spector's causes of actions if she cannot prove causation on her strict liability claim based on failure-to-warn theories, but Pennsylvania law states that a negligence claim can remain even absent a finding of defect under strict liability. *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1439 (3d Cir. 1991). As such, even if this Court finds merit in the evidence offered by Monsanto, the Motion is not a proper basis to dismiss Mrs. Spector's causes of action entirely.

15