# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFFS' RESPONSE IN OPPOSITION TO MONSANTO'S MOTION FOR SUMMARY JUDGMENT ON WARNINGS CAUSATION GROUNDS AND PUNITIVE DAMAGES** |
| *Thomas v. Monsanto Co., 2:20-cv-08051* | |

i

**TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................................1

II.  ARGUMENT........................................................................................................3

      A.  Summary Judgment Standard..................................................................3

      B.  Nevada Law Applies to Plaintiffs' Claims ..............................................4

      C.  Applying Nevada Law, Genuine Issues of Material Fact Exist Preventing Dismissal of Plaintiff's Failure to Warn Claims.......................................4

      D.  Plaintiffs Can Recover Punitive Damages Under Nevada Law..............10

IV.  CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

**Cases:**

*Allison v. Merck & Co.*, 878 P.2d 948 (Nev. 1994).................................................5, 6, 7, 11, 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).....................................................................3

*Celotex Corp. v. Catrett*, 477 U.S. 3117 (1986)..............................................................................3

*Drake v. Scheels Sporting Goods*, 2018 U.S. Dist. LEXIS 23302.................................................6, 9

*Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570 (Nev. 1992).....................................................4, 5, 6, 7

*Heath v. Tristar Prods.*, 2019 U.S. Dist. LEXIS 167554................................................................6, 9

*Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245 (Nev. 2003)...................................................................4, 7

*Oak Grove Investors v. Bell & Gossett Co.*, 668 P.2d 1075 (Nev. 1983)..........................................4

*Rich v. Taser Int'l, Inc.*, 2021 U.S. Dist. LEXIS 44584..............................................................5, 7, 8

*Rivera v. Philip Morris, Inc.*, 2209 P.3d 271 (Nev. 2009)...............................................................4

*State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).......................................12

*Tolan v. Cotton*, 572 U.S. 650 (2014)..............................................................................................3

*Wyeth v. Levine*, 555 U.S. 555 (2009)............................................................................................11

*Wyeth v. Rowatt*, 244 P.3d 765 (Nev. 2010)........................................................................10, 11, 12

**Other Authorities:**

Federal Rule of Civil Procedure 56(a)..............................................................................................3

Nevada Revised Statutes Annotated § 42.005................................................................................10

## I. INTRODUCTION.

This action is filed on behalf of Troy Wilson Thomas, who was diagnosed with Non-Hodgkin's Lymphoma (hereinafter "NHL") in April 2020, as a result of his continued exposure to the herbicide Roundup since 2000. Mr. Thomas used Roundup regularly over a 20-year time period to control weeds, poison ivy, and other brush around his residential properties. Defendant, Monsanto Company (hereinafter "Monsanto"), promoted Roundup as being harmless to humans and even went so far as to proclaim that Roundup was "safe as table salt." In reality, the active chemical ingredient in Roundup (glyphosate) is a carcinogen, which Monsanto has known for decades and failed to represent in its warnings to Roundup consumers and users. As a result, Mr. Thomas relied on Monsanto's misrepresentations, continued to use Roundup, and was diagnosed with NHL, specifically diffuse large B-cell lymphoma. *See* Silverstein Decl., Ex. 1 (Plaintiffs' Complaint).

Monsanto's Motion for Summary Judgment focuses primarily on Plaintiff's claim that Monsanto failed to warn and/or instruct Mr. Thomas of the carcinogenic risks associated with using Roundup. The Motion both procedurally and substantively fails. Initially, while Monsanto contends that Arizona law applies to Plaintiffs' claims, the parties had previously agreed by stipulation (filed with the Court on July 6, 2021) that the governing state law in this case is the law of Nevada. *See* Silverstein Decl., Ex. 2 (Stipulation). As such, Plaintiff's analysis in opposition to Monsanto's theoretical arguments will properly reflect Nevada law and principles. Under Nevada law, in order to make out a *prima facie* case of failure-to-warn in products liability to survive summary judgment, Mr. Thomas must set forth evidence in which the trier of fact can make the reasonable conclusion that Mr. Thomas's NHL was caused by Monsanto's inadequate warnings. He has done so here. This opposition illustrates the various, genuine issues of material fact that preclude summary judgment as a matter of law.[1]

---

[1] This Motion improperly seeks dismissal of all products liability claims, but argument solely focuses on the failure-to-warn claim. Certainly, Monsanto is aware that Plaintiffs' Complaint asserts additional

Alternatively, Monsanto argues that Plaintiffs should be barred from recovering punitive damages in this action where Roundup was allegedly designed, manufactured, packaged, labeled, or sold in accordance with the terms of the U.S. Environmental Protection Agency's (hereinafter "EPA's") approval. Arizona law, which defendant's Motion improperly relies on, imposes a more stringent showing by a plaintiff for recovery of punitive damages. However, Nevada law, which controls as stipulated to by the parties, clearly warrants such a recovery in this case or at the very least creates a material fact issue for the jury.

For its Motion, Monsanto casts aside evidence of decades of fraudulent research, misleading advertising, and deceptive omissions related to its Roundup product and rather focuses the energy of its defense on a mere technicality – that Mr. Thomas did not read product warning labels before using Roundup – to attempt to take his entire cause of action out of the hands of a jury. Mr. Thomas purchased a product that was recommended to him by personnel in a home improvement store's lawn and garden section, clearly more knowledgeable than him, after he inquired about purchasing the most efficient weed-killing products on the market. Many similarly situated consumers have come to use a product like Roundup in this way. He also thereafter was subjected to two decades of advertisements, commercials, and promotions which never made any mention or reference to potential health hazards from Roundup, e.g., developing NHL. Yet Monsanto contends that Mr. Thomas's entire case must now be dismissed, on summary judgment as a matter of law, simply because he did not read labels that never said the product was or could be carcinogenic! However, Nevada law clearly states that when a product has allegedly inadequate warnings such as the Roundup products, summary judgement is not warranted – even if the consumer did not read the label.

---

Counts against Monsanto besides failure to warn. *See* Silverstein Decl., Ex. 1 (Complaint) at Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII. The instant Motion is really a "Partial Summary Judgment" Motion. Nonetheless, it must be denied for the reasons discussed herein.

2

In sum, there are multiple and genuine issues of material fact to preclude summary judgment and send the issue of warnings causation to a jury for its proper disposition. Additionally, Nevada law, which controls here, allows the award of punitive damages in products liability actions where the product that caused the injuries was sold in accordance with the terms of a government agency's approval. As such, the Motion should be denied.

## II. ARGUMENT.

### A. Summary Judgment Standard.

Summary judgment may be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 3117, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with evidence to show that there is in fact a genuine issue for trial. *Id.* at 323-24.

In deciding a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party and all doubts as to the existence of genuine issues of material fact must be resolved against the moving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Thus, summary judgment may be granted only where the moving party establishes that its right to judgment is absolutely clear and there is no doubt as to the existence of any genuine issue of material fact. *Id.* Accordingly, and for the reasons set forth herein, the Motion for Summary Judgment should be denied.

### B. Nevada Law Applies to Plaintiffs' Claims.

Monsanto has improperly predicated its entire Motion on the application of Arizona law. While Monsanto discusses choice of law principles concerning the determination of what state law applies in an MDL action, such an analysis was rendered moot when the parties stipulated to the law of Nevada as governing in this case. *See* Silverstein Decl., Ex. 2, #7. Thus, the very impetus of this motion was made under questionable pretenses and should be summarily denied.

### C. Applying Nevada Law, Genuine Issues of Material Fact Exist Preventing Dismissal of Plaintiff's Failure to Warn Claims.

When advancing a failure to warn claim, Nevada law places the burden on the plaintiff "to prove, in part, that the inadequate warnings caused his injuries." *Rivera v. Philip Morris, Inc.*, 2209 P.3d 271, 274 (Nev. 2009). A manufacturer must adequately warn of "any dangers" that may result from the use of its product. *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992); *see also Oak Grove Investors v. Bell & Gossett Co.*, 668 P.2d 1075, 1080 (Nev. 1983) (articulating that strict liability may be imposed if a product is placed in the "hands of the consumer without adequate warnings concerning its safe and proper use" where the manufacturer has reason to know that danger may result and fails to adequately warn of such danger).

Nevada law requires that, in the context of products liability claims, warnings must be "(1) designed to reasonably catch the consumer's attention, (2) that the language be comprehensible and give a fair indication of the ***specific risks*** attendant to use of the product, and (3) that warnings be of sufficient intensity justified by the magnitude of the risk." *See Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 250 (Nev. 2003) (emphasis added).

Significantly, the adequacy of warnings is an issue of fact for the jury where a manufacturer's warnings do not alert a consumer to a certain risk at all. *See, e.g., Fyssakis*, 826 P.2d at 571-72 (holding that an industrial strength soap manufacturer was not entitled to summary judgment where its warnings

4

did not alert the user that the soap could cause blindness)[2]; *Rich v. Taser Int'l, Inc.*, 2021 U.S. Dist. LEXIS 44584, at *30 (finding that a reasonable jury could conclude that a manufacturer did not adequately warn of cardiac arrest and death and that users should have been explicitly warned to avoid aiming the taser at another's chest)[3]; *Allison v. Merck & Co.*, 878 P.2d 948, 957 (Nev. 1994) (concluding that causation related to the sufficiency of warnings must be determined by the factfinder where a vaccine warned of some risks but not of permanent brain damage, blindness, and deafness suffered by the plaintiff).[4]

---

[2] In *Fyssakis*, the plaintiff was blinded after getting the manufacturer's dishwashing soap in his eye. *Id.* at 571. The defendants moved for, and were initially granted, summary judgment as to the plaintiff's strict liability claims, but the Supreme Court of Nevada reversed. *Id.* Importantly, the court noted that neither the soap nor the soap dispenser included a warning that the product could cause blindness, but rather the soap only "carried a universal symbol for corrosiveness." *Id.* Thus, the court found that the plaintiff raised a genuine issue of material fact to survive summary judgment since it was "not clear" that the product's warning "adequately communicated that the soup could cause blindness." *Id.* at 572.

[3] In *Rich*, a highway patrol officer discharged the manufacturer's taser at a man's chest, causing him to suffer a cardiac arrest and subsequently die. *Id.* at *2. The plaintiffs sought to hold the manufacturer strictly liable for failing to adequately warn of the cardiac risks associated with discharging its product at one's chest. *Id.* at *18. The manufacturer argued that it was entitled to summary judgment because its warnings were adequate as a matter of law since they had warned of repetitive applications of the product and presented evidence that the officer was provided training on such warnings. *Id.* at *25. In addition, the manufacturer contended that its warnings generally communicated that certain conditions, "[u]nrelated to TASER exposure," may result in serious injury or death. *Id.* Plaintiffs countered with deposition testimony from the officer that he 1) would not have targeted the man's chest if he had been warned of the cardiac risks; 2) was presented with pig studies during his training that indicated that the product was safe; and 3) was not taught that there were any cardiac risks associated with the product, nor was he aware of any. *Id.* at *21. Ultimately, the court concluded that the plaintiffs had produced sufficient evidence to survive summary judgment such that a reasonable jury could find that the warnings were inadequate by the fact that they did not warn of the specific risk at issue. *Id.* at *29.

[4] In *Allison,* a child contracted encephalitis and subsequently suffered permanent brain damage, blindness, and deafness caused by the measles, mumps, and rubella vaccine. *Id.* at 951. The drug manufacturer denied responsibility for underwarning its product on the basis that it "contractually delegated its duty to warn to the federal government." *Id.* at 957. While the manufacturer would not admit that its vaccine could "*cause* disastrous central nervous system disorders," it argued that it generally announced on its packaging that "significant central nervous system reactions…have been *temporally associated* with measles vaccine approximately once every million doses." *Id.* Additionally, the manufacturer relied on an "important information flyer" prepared by the Center for Disease Control that "although experts are not sure, there might be a very remote possibility—a chance in a million— that takers of the vaccine may have a more serious reaction, such as inflammation of the brain." *Id.* The Supreme Court of Nevada ultimately reversed the manufacturer's initial grant of summary judgment on

A manufacturer may be entitled to summary judgment where it has provided consumers with "clear, unambiguous warnings" in the use of its product. *Drake v. Scheels Sporting Goods*, 2018 U.S. Dist. LEXIS 23302, at *6 (finding that a manufacturer was entitled to summary judgment on a failure-to-warn claim where deposition testimony provided that the injured plaintiff had bought ammunition before and was familiar with the warnings such that the warnings were deemed clear and adequate as to not have caused the injury); *But see Fyssakis*, 826 P.2d at 571 (refusing to exonerate product manufacturers as a matter of law from strict tort liability based upon general warnings language). In *Drake*, the plaintiff was injured from dropping an ammunition cartridge. In order to avoid liability, the manufacturer relied on the fact that the consumer had testified that he was familiar with such warnings from prior purchases. *Id.* Additionally, the U.S. District Court for the District of Nevada found that the actual warning label on the packaging in question ***included the specific warning*** needed to avoid the injury, which rendered the provided warnings adequate for purposes of causation. *Id.* (emphasis added).

Lastly, where a plaintiff shows that a manufacturer had reason to anticipate dangers associated with its product but did not warn consumers of such dangers and that plaintiff would have avoided the dangers had she been warned, the manufacturer is not entitled to summary judgment. *Heath v. Tristar Prods.*, 2019 U.S. Dist. LEXIS 167554, at *23. In *Heath*, the plaintiff was injured when the lid of a pressure cooker exploded open during use and alleged that the manufacturer failed to warn her of the risk. *Id.*, at 2. The manufacturer sought summary judgment, arguing that the plaintiff failed to provide any evidence that inadequate warnings caused her injuries because she could not identify that she did not understand the warnings or that she would have changed her behavior had they been provided. *Id.* at *16.

---

the failure-to-warn claim, finding that warnings of "inflammation of the brain" were not adequate in the warning of the specific risks suffered by the child—permanent blindness, deafness, and brain damage. *Id.* The court reasoned that the child and his mother were never warned, at any time, that the vaccine could result in such severe and permanent injuries, and thus, a reasonable jury could find that the vaccine was not accompanied by proper directions and warnings, ultimately causing the injuries. *Id.* at 958.

The U.S. District Court for the District of Nevada was not convinced, however, since the plaintiff testified that she had read the Owner's Manual and would not have used the Cooker if she had known of the risk. *Id.* at *20. Particularly, the Court noted that although the weight and credibility of plaintiff's evidence was disputed, it precluded the entry of summary judgment in favor of the manufacturer. *Id.* at *23.

Here, Monsanto argues the content of the warning label on its Roundup product is irrelevant because Mr. Thomas testified that he did not read any labels, and therefore Plaintiffs should not be able to move forward on **_any_** claims or recover for the injuries caused by Monsanto's failure to warn of Roundup's carcinogenic risks. This position expressly contradicts Nevada public policy underlying strict products liability and attempts to dodge responsibility for placing a defective product into Mr. Thomas's hands simply because Mr. Thomas did not read the warnings himself. However, the Motion entirely fails to address the fact that Roundup's warning labels omitted **_any_** health risk, let alone the risk of cancer. Thus, there exists a genuine issue of material fact concerning whether Monsanto's failure to warn of Roundup's carcinogenicity **_at all_** caused Mr. Thomas to use the product and ultimately develop NHL. Monsanto cannot rely on Mr. Thomas's testimony that he did not read warnings that were deceitful and misleading in the first place, yet it does so in a questionable effort to evade **_complete and total_** accountability for its actions.

As in *Fysakkis, Rich, Lewis,* and *Allison*, where the manufacturers failed to warn of the specific dangers of its products as required by Nevada law, Plaintiffs allege Monsanto withheld warnings regarding the carcinogenic risk of glyphosate. *See* Silverstein Decl., Ex. 1 at ¶¶ 109-10 (as part of Strict Liability—Design Defect (Count I)); ¶¶ 113-34 (as part of Strict Liability—Failure to Warn (Count II)); ¶¶ 135-51 (as part of Negligence (Count III)); ¶ 155 (as part of Breach of Implied Warranties (Count IV)); ¶¶ 167-75 (as part of Breach of Express Warranties (Count V)).

While Mr. Thomas testified that he did not read the warning labels on Roundup before using them, this in and of itself does not affirmatively show that Mr. Thomas would not have acted differently given different warnings as Monsanto contends. When asked why he <u>initially</u> purchased Roundup, Mr. Thomas testified:

> Q: Was there a reason why you used Roundup initially versus some other product?
> A: It was recommended as the best for killing weeds.
> Q: Recommended by who?
> A: The local Home Depot.

*See* Silverstein Decl., Ex. 3 at 29:20-24.

Importantly, Mr. Thomas was not asked at this deposition whether <u>after</u> he initially purchased Roundup at the Home Depot whether he saw any advertisements about Roundup or read or saw any warnings about its potential carcinogenicity. In response to this Motion, Plaintiffs have produced an Affidavit from Mr. Thomas which, in and of itself, creates genuine material fact issues. Mr. Thomas certifies to the Court he in fact saw commercials, advertisements, and other displays promoting Roundup during the course of the two decades that he used the product. *See* Silverstein Decl., Ex. 4 (Affidavit of Troy Thomas). In his mind, Mr. Thomas's continued exposure to advertising showing Roundup in a positive-only light led him to believe decisively so, that Roundup was safe and would not cause him harm. *See* Silverstein Decl., Ex. 3 at 42:7-22. Clearly, genuine issues of material fact exist as to whether Monsanto's warnings about dangers or risks of using the product, like developing NHL, were adequate.

Nevada case law has consistently declined to exonerate manufacturers of liability as a matter of law based on *general* warning language, as a minimum, and further does not entitle manufacturers to summary judgment in cases where no specific warning was provided concerning the subject injury that subsequently occurred. For example, in *Rich*, the ultimate injury suffered was a cardiac arrest, which was a risk not accounted for in the manufacturer's warnings. Additionally, the user of the product did not read

8

the warnings himself, but rather he was taught about the warnings and risks, just as Mr. Thomas was initially recommended Roundup by a home improvement sales associate and subsequently was exposed to positive-only advertising. The plaintiff in *Heath* provided evidence that she <u>did</u> read the Owner's Manual, but the court still looked to the adequacy of the warnings as a genuine issue of material fact regarding warnings for the ***specific risk at issue***.

The manufacturer in *Drake* was entitled to summary judgment on the warnings causation issue because the plaintiff testified that he was familiar with the warnings for the type of product that injured him, and regardless, the manufacturer provided ***clear and unambiguous warnings*** as to the exact injury suffered. In contrast, here, it is undisputed that Monsanto's glyphosate-based labeling did not contain a cancer warning. Consistent with Nevada law, in consideration of the fact that the ultimate injury suffered by Mr. Thomas was cancer, Plaintiffs have provided sufficient evidence so as to create a genuine issue of material fact to proceed to a jury.

Next Monsanto argues that Mr. Thomas's failure to read the product label constitutes affirmative evidence that a different label would not have prevented his injuries or, in the alternative, that Plaintiffs cannot prove so. Even if Mr. Thomas read the warning labels on the Roundup products, Monsanto misled Mr. Thomas and all other consumers of its product as to the carcinogenic risk of glyphosate which they were or should have been aware of at the time. Mr. Thomas continued to use Roundup for 20 years, yet Monsanto continued to fail to advise him and other consumers that Roundup could pose a health risk. Mr. Thomas, for 20 years, was exposed to advertising, commercials and promotions for Roundup and Monsanto never disclosed a cancer risk.

In sum, Monsanto asks this Court to relieve it of ***all*** liability based on a technicality. Under Nevada law, Mr. Thomas's personal reading of a warning label is frankly irrelevant where such a label would not have provided him with adequate information in the first place. Additionally, the pattern of advertising

Mr. Thomas consumed about Roundup never discussed any health warnings about the product. Monsanto cannot avoid accountability where it has omitted pertinent information for the sake of sales and profit. Accordingly, summary judgment should be denied.

### D. Plaintiffs Can Recover Punitive Damages Under Nevada Law.

Nevada law permits the recovery of punitive damages in a products liability action where a product was designed, manufactured, packaged, labeled, or sold in compliance with applicable regulatory standards. *Wyeth v. Rowatt*, 244 P.3d 765, 779 (Nev. 2010) (citing Nev. Rev. Stat. Ann. § 42.005(1)) (manufacturer, distributor or seller of a defective product may be liable for punitive damages "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied....").[5] Notably, when urged to adopt the law of jurisdictions which allow product manufacturers to avoid punitive damages by complying with federal standards, the Supreme Court of Nevada expressly declined to do so. *Id.* at 780.

Compliance with federal standards "does not automatically insulate a defendant from punitive damages." *Id.* at 779. The *Wyeth* Court was presented the opportunity of barring the recovery of punitive damages in products liability actions where plaintiffs alleged that they developed breast cancer after the manufacturer of a hormone pill failed to adequately warn them and their physicians about the breast cancer risk associated with its product. *Id.* at 769. In response, the manufacturer contended that its compliance with FDA standards negated the imposition of punitive damages because its position on the breast cancer

---

[5] Nev. Rev. Stat. Ann. § 42.005(1) additionally provides that an award of punitive damages may not exceed "three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more" or "three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000"; however, Nev. Rev. Stat. Ann. § 42.005(2)(a) states that the "limitations on the amount of an award of exemplary or punitive damages prescribed in subsection 1 do not apply to an action brought against *a manufacturer, distributor or seller of a defective product*." (emphasis added).

10

risk "reflected the available scientific evidence, which at the time, provided sufficient warning…" and its drug remained FDA-approved and prescribed by physicians. *Id.* at 779. Specifically, the FDA's approval of the drug was conditioned upon the manufacturer conducting a large-scale clinical trial on the cancer risk, which the manufacturer never did. *Id.* at 772. Instead, the manufacturer requested that the FDA rely on the Women's Health Initiative study, conducted in 1992 and later halted in 2002 after a significant number of women in the study had developed breast cancer from the exact hormone combination used in the manufacturer's pill. *Id.* at 771.

Importantly, the FDA's approval was also conditioned on "precise warning-label language," and it modified the manufacturer's proposed label to reflect appropriate warnings. *Id.* Subsequently, a European study showed increased breast cancer risk to women taking the hormone combination, to which the manufacturer updated its European label, but not its label in the United States. *Id.* As more studies associating the hormone combination with increased breast cancer risk were published, the manufacturer responded by adding over $40 million to its marketing budget to counter rising awareness about the risk, began promoting unproven health benefits while omitting any mention of cancer risk, and sponsored a series of medical articles published under independent doctors' names, which minimized the risk of cancer and were, in fact, written by its own personnel. *Id.* at 772.

In light of this evidence, the Supreme Court of Nevada explicitly refused to adopt a policy that would absolve "potentially every company that complied with federal regulations" of punitive damages, "regardless of the manner in which those requirements were allegedly satisfied." *Id.* at 780. The *Wyeth* Court concluded that although the manufacturer presented evidence that its label generally warned of the breast cancer risk, the warnings were inadequate "because they were misleading." *Id.* (citing *Wyeth v. Levine*, 555 U.S. 555, 574 (2009)) (recognizing that even under FDA regulations, a manufacturer remains responsible for the adequacy of its warnings); *see also Allison*, 878 P.2d at 959 (concluding that a

"manufacturer cannot be relieved of ultimate responsibility for assuring that its unsafe product is dispensed with a proper warning"). Ultimately, the Supreme Court of Nevada rejected the notion that a manufacturer should be able to "benefit from its own deceptive and malicious practices." *Id.* at 780-81; *see also State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (holding that punitive damages are aimed at deterrence and retribution).

In the instant matter, *Wyeth* is instructive. First, after the EPA originally classified glyphosate as possibly carcinogenic to humans in 1985, Monsanto pressured the agency to change its classification in 1993 to evidence of non-carcinogenicity in humans using contrary studies. *See* Silverstein Decl., Ex. 1 at ¶ 30. Additionally, the EPA discovered that the laboratories hired by Monsanto to test the toxicity of Roundup for registration purposes committed fraud in routine falsification of data. *Id.* at ¶¶ 31-34. Such conduct is factually analogous to the manufacturer in *Wyeth*, who pressured the FDA into accepting its own choice of studies and falsified data in order to downplay the risks of cancer. Such practices are expressly contrary to Nevada law and would warrant the imposition of punitive damages.

Secondly, Monsanto's general representations that its glyphosate-based herbicides were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish were challenged by the New York Attorney General in 1996 for false and misleading advertising of Roundup. *See id.* at ¶¶ 38-39. While Monsanto agreed to "cease and desist from publishing or broadcasting any advertisements [in New York]" that deceive the public as to Roundup's toxicity, Monsanto neglected to alter its advertising in the same manner in any other state other than New York. *See id.* at ¶ 40. Monsanto was similarly held to be deceitful about the safety of its Roundup advertising by France's highest court in 2009. *See id.* at ¶ 41. Like the manufacturer who poured millions of dollars into countering awareness of cancer risk associated with its product in *Wyeth*, Monsanto here has continuously and consciously deceived consumers, including Mr. Thomas, with false and misleading advertising regarding the safety of Roundup despite various

assessments and studies demonstrating otherwise. *See id.* at ¶¶ 42-74. Monsanto chose market dominance over providing accurate and adequate warnings of Roundup's carcinogenic risks to consumers. *See id.* at ¶¶ 35-37.

Regardless of whether Monsanto was allegedly in compliance with the EPA's standards or regulations in the production and distribution of Roundup, such alleged compliance does not shield it from the imposition of punitive damages. Accordingly, Monsanto cannot be permitted to benefit from its malicious and deceptive practices in the production and marketing of Roundup, and Plaintiffs must not be precluded as a matter of law the recovery of punitive damages under applicable Nevada law.

## III. CONCLUSION.

Under Nevada law, "summary judgment is inappropriate when there is the slightest doubt of the material facts." *Allison*. Defendant, Monsanto, attempts to evade complete responsibility for its insidious actions in such a way that contravenes the public policy surrounding products liability law in the state of Nevada; therefore, the Motion is disingenuous on its face and Monsanto cannot absolve itself from liability where it placed a defective product into Mr. Thomas's hands, regardless of whether he read the warning label himself. When taken together, the record contains more than sufficient evidence concerning whether the trier of fact can reasonably conclude that Monsanto's failure to warn Mr. Thomas of Roundup's carcinogenic risks proximately caused him to develop NHL. All claims plead against Monsanto are meritorious, well-supported by the record, and objectively reasonable. In addition, Mr. Thomas is not barred from recovering punitive damages against Monsanto under Nevada law. For all the foregoing reasons asserted herein, Plaintiffs respectfully request the Court deny Monsanto's Motion for Summary Judgment.

Respectfully submitted,

By: /s/ *Jarad L. Silverstein, Esquire*
**WAPNER, NEWMAN, BRECHER & MILLER, P.C.**
JARAD L. SILVERSTEIN, ESQUIRE
Attorney for Plaintiffs

Dated: October 5, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Jarad L. Silverstein*