**WAPNER, NEWMAN, BRECHER & MILLER, P.C.**
JARAD L. SILVERSTEIN, ESQUIRE
jsilverstein@wapnernewman.com
2000 Market Street, Suite 2750
Philadelphia, PA 19103
(215) 569-0900
Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION

MDL No. 2741

Case No. 3:16-md-02741-VC

This document relates to:

*Savory v. Monsanto Co., 3:20-cv-02403*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. ARIEL TEITEL ON RULE 702 GROUNDS**

**TABLE OF CONTENTS**


I. INTRODUCTION.....1

II. LEGAL STANDARD.....2

III. ARGUMENT.....3

A. Dr. Teitel is a Rheumatologist – Not An Expert On NHL or Exposure. His Opinions are Narrow and Solely Related to Mr. Savory's History of Rheumatoid Arthritis.....3

B. Dr. Teitel Offers a Reliable Methodology to Conclude Mr. Savory's History of Rheumatoid Arthritis Was Not a Substantial Factor in the Development of His NHL.....3

C. Dr. Teitel Does Not Need to Consider Every Potential Risk Factor To Offer His Opinions at Trial.....5

IV. CONCLUSION.....6

# TABLE OF AUTHORITIES

**Cases:**

*Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071 (2006)....2

*Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal. App. 4th 555 (2014)....5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)....2, 3, 5, 6

*In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal. 2018)....2, 3

*Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193 (9th Cir. 2014)....2

*Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 13 (1st Cir. 2011)....2

*Sarti v. Salt Creek Ltd*, 167 Cal. App. 4th 1187 (2008)....5

*Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227 (9th Cir. 2017)....5, 6

**Other Authorities:**

Federal Rule of Evidence §702....2, 5

## I. INTRODUCTION

Plaintiffs, in support of their claims of specific causation, have designated Ariel Teitel, M.D., as an expert on their behalf. Dr. Teitel is a fellowship-trained, board-certified rheumatologist and Clinical Associate Professor of Medicine at NYU Langone. He has been in private practice since 1996, dedicating an overwhelming majority of his professional time to active clinical practice of patients with rheumatologic diseases, notably rheumatoid arthritis.

Dr. Teitel's opinion is narrow – simply, Dr. Teitel will opine that Mr. Savory did not and does not have persistent, "severe" rheumatoid arthritis. As such, despite being a recognized risk factor for non-Hodgkin's lymphoma (NHL), Mr. Savory's increased risk was marginalized because of the "palindromic" nature of his disease, marked by long periods of dormancy. As such, Dr. Teitel will opine that Mr. Savory's rheumatoid arthritis was not a substantial contributing factor to Mr. Savory's development of NHL.

Dr. Teitel, a rheumatologist, will not be commenting at trial on the increased risk that glyphosate and glyphosate-based formations in Roundup played in Mr. Savory's development of NHL. Plaintiffs have designated other experts to connect those dots. As such, the portion of Monsanto's motion to bar in this regard is moot.

Finally, because of the limited scope of Dr. Teitel's opinion, he is not required to rule out other potential or unknown risk factors. In any case, Monsanto's arguments for excluding the testimony of Dr. Teitel is not meritorious of a determination of inadmissibility as a matter of law, but rather goes to the credibility and weight of his opinions.

## II. LEGAL STANDARD

Under Federal Rule of Evidence §702 and the standard elucidated in *Daubert* and its progeny, the Court is authorized to act as a gatekeeper to ensure that proffered expert testimony is relevant and based upon reliable methods. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). However, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee note (2000); *see also Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (2006). In fact, "[t]he Ninth Circuit has placed great emphasis on *Daubert's* admonition that a district court should conduct [the admissibility] analysis "with a 'liberal thrust' favoring admission." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018) (Chhabria, J.) (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

*Daubert* provided some factors a court can consider to determine the admissibility of expert testimony, including: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; (4)the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 593-94. Yet this list is non-exhaustive, and the courts have flexibility and broad discretion in its inquiry. *See Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017).

Expert testimony should only be excluded if it is the product of irrelevant or unreliable "junk science." *Id.* Otherwise, the expert's testimony must be admitted for a jury's consideration. *See Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 13 (1st Cir. 2011) ("So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities.") (quoting *Daubert*, 509 U.S. at 590, 596)).

As noted above, the Court's role in a *Daubert* inquiry is that of "gatekeeper" – and does not replace the adversary system. *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d at 1111-13. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional means of attacking shaky but admissible evidence." *Id.*

## III. ARGUMENT

### A. Dr. Teitel is a Rheumatologist – Not An Expert On NHL or Exposure. His Opinions are Narrow and Solely Related to Mr. Savory's History of Rheumatoid Arthritis

The scope of Dr. Teitel's opinion to be offered at trial is *solely* that Mr. Savory's history of rheumatoid arthritis, to a reasonable degree of medical certainty, was not a substantial contributing factor to his development of NHL. Plaintiffs will *not* be calling Dr. Teitel to testify about the relationship between glyphosate and NHL.[1] As such, Monsanto's briefing on this topic will not be addressed as the issue is moot.

What does need to be addressed, however, are Dr. Teitel's qualifications to offer his causation opinions as to Mr. Savory's rheumatologic disease. Dr. Teitel is a graduate of George Washington University School of Medicine, and completed his rheumatology fellowship at the esteemed Hospital for Special Surgery in New York. *See* Silverstein Decl., Ex. 1 (Teitel CV); *see also* Monsanto's Ex. 1 (Teitel *Savory* Report). Since 1992, he has been an actively practicing, board certified rheumatologist. He is the former Chief of Rheumatology at St. Vincent's Hospital and is currently a Clinical Associate Professor of Medicine for NYU Langone Health System. *See id.*

### B. Dr. Teitel Offers a Reliable Methodology to Conclude Mr. Savory's History of Rheumatoid Arthritis Was Not a Substantial Factor in the Development of His NHL.

As a rheumatologist who has treated thousands of patients with rheumatoid arthritis, it is his opinion to a reasonable degree of medical certainty that Mr. Savory's rheumatoid arthritis was not a

[1] Plaintiffs will call Dr. Kendall and Dr. Braunstein for this purpose.

substantial factor in the development of his NHL. *See* Monsanto's Ex. 1 (Teitel *Savory* Report) at p. 4. In his thirty years of practice, he can only recall one rheumatoid arthritis patient of his whom he suspected developed NHL that was confirmed. *See* Monsanto's Ex. 2 (Teitel Deposition) at 21:18-22:2.

In his deposition, Dr. Teitel clearly testified that Mr. Savory's rheumatoid arthritis was not sustainably "severe" – and thus, it could not have been a substantial factor in the development of Mr. Savory's NHL. Dr. Teitel addressed his belief that Mr. Savory had palindromic rheumatism (what he defines as "episodic inflammatory arthritis"[2]) prior to his rheumatoid arthritis diagnosis in 2004. In other words, his inflammation was sporadic and there were long periods of dormancy. In fact, after his diagnosis in 2004, Mr. Savory did not treat for his rheumatoid arthritis again until 2014. Dr. Teitel, pertinently stated:

> It's also possible that since he presented with a palindromic presentation that perhaps that's even really kind of what he had, in order words, that he had intermittent attacks, although he did have six months where it was sustained. But, yeah, perhaps he resolved. I have to postulate that it must not have continued to be severe because he would have sought medical attention. … [I]f you have severe, active rheumatoid arthritis [and] only treated with [ibuprofen], bad things happen.
>
> ***
>
> …sometimes we know by the absence of certain things that something must not have been happening, that's the thing. To me people with chronic, active, severe rheumatoid arthritis undertreated or not treated have a lot of complications. Bad things happen to them. … Which didn't happen to him.

*Id.* at 114:22-115:11; 116:15-22. Accordingly, it is Dr. Teitel's opinion as a board-certified rheumatologist, to a reasonable degree of medical certainty, that Mr. Savory "absence of certain complications[3] and the absence of him seeking care other than perhaps self-medicating speaks to the fact that it probably was not sustained severe." *Id.* at 154:25-155:4.

---

[2] *See* Monsanto's Ex. 2 (Teitel Deposition) at 84:3-5.

[3] On page 159 of his deposition, Dr. Teitel described such expected complications in a case of severe rheumatoid arthritis: eye inflammation, heart problems, fluid in the lungs, vasculitis, mutilation/destruction in the joints. *See* Monsanto's Ex. 2 at 159:4-7.

Even though he acknowledged that rheumatoid arthritis poses an increase in the risk for development of NHL, Dr. Teitel believes that the risk is quite minimal because Mr. Savory's disease process was not severe and persistent. In other words, Mr. Savory's rheumatoid arthritis, in Dr. Teitel's opinion, was not a substantial contributing factor to Mr. Savory's development of NHL.

Based on his vast experience treating rheumatoid arthritis patients like Mr. Savory, and his approach of evaluating the medical records and coming to a differential diagnosis as he would for any of his patients, Dr. Teitel's methodology in arriving at his opinions is sufficient under Rule 702 and *Daubert*.

**C. Dr. Teitel Does Not Need to Consider Every Potential Risk Factor To Offer His Opinions at Trial.**

Dr. Teitel, like all other experts for Plaintiffs, need not analyze every conceivable risk factor to satisfy *Daubert*. The Court in *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1127 (9th Cir. 2017) held as follows:

> We do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause "be a substantial causative factor." This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy.

*Id.* at 1237. Moreover, in *Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal. App. 4th 555 (2014), the Court instructed:

> Thus, because California has rejected the notion that a plaintiff must definitively "exclude all 'possibilities'" other than the defendant's conduct or product as the cause of the plaintiff's harm, clearly an expert, in reaching a specific causation opinion, need not exclude all other possibilities before he or she can express an opinion that the defendant's conduct or product caused the plaintiff's harm.

*Id.* at 580 (citing *Sarti v. Salt Creek Ltd*, 167 Cal. App. 4th 1187, 1210 (2008)).

This Court, in PTO 85, has also already addressed the issue. Pertinently, this Court noted:

> Under Ninth Circuit caselaw, doctors enjoy wide latitude in how they practice their art when offering causation opinions. *See Wendell*, 858 F.3d

> at 1237 ("Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions supporting causation, we conclude that *Daubert* poses no bar on their principles and methodology.").

*See* PTO 85 at p. 5.

As aforementioned, the focus of Dr. Teitel's opinion is narrowly tailored to Mr. Savory's history of rheumatoid arthritis. He need not analyze other potential risk factors or idiopathic causes because his opinion is simply that Mr. Savory's rheumatoid arthritis was not a substantial contributing factor in the development of Mr. Savory's NHL. Plaintiffs have designated an oncologist (Marc Braunstein, M.D.) and an environmental toxicologist (Ronald Kendall, PhD) to discuss the relationship between glyphosate exposure and Mr. Savory's cancer.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Monsanto's *Daubert* Motion to Exclude Dr. Teitel, together with such other relief as the Court deems just and proper.

DATED: October 6, 2021

Respectfully submitted,

By: /s/ Jarad L. Silverstein, Esquire

**WAPNER, NEWMAN, BRECHER & MILLER, P.C.**
JARAD L. SILVERSTEIN, ESQUIRE
jsilverstein@wapnernewman.com
2000 Market Street, Suite 2750
Philadelphia, PA 19103
(215) 569-0900
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ *Jarad L. Silverstein*