**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| IN RE: ROUNDUP® PRODUCTS LIABILITY LITIGATION _____ *Vosper v. Monsanto Co.,* 3:19-cv-05525-VC | MDL No. 2741 Case No.: 3:16-md-02741-VC **PLAINTIFFS, IRA VOSPER AND ANDREA VOSPER'S, RESPONSE TO MONSANTO'S MOTION FOR SUMMARY JUDGMENT** |
| --- | --- |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………….…..…1

II.    BACKGROUND……………………………………………………………….2

III.   LEGAL STANDARD…………………………………………………………..6

IV.   ARGUMENT…………………………………………………………...……7

     A.  Pennsylvania Law On Products Liability Claims Generally………………...…..7

     B.  The Failure to Warn and the Heeding Presumption Under Pennsylvania Law……...10

     C.  The Heeding Presumption Applies Beyond Work-Related Asbestos Exposure Cases……………………………………………………………………....15

     D.  The Cases Relied Upon By Monsanto Are Factually Distinct From The Case at Bar…………………………………………………………………....16

     E.  Mr. Vosper's Negligence Claim May Remain Even in Absence of Claim for Strict Liability……………………………………………………………18

     F.  The Heeding Presumption Also Applies in Negligent Failure to Warn Cases………20

V.    CONCLUSION……………………………………………………….……….21

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...... 11, 12

*Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978)....................... 18

*Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349 (Pa. Super. 2015)....................................... 12

*Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975)............................... 16, 18

*Boyle v. Cnty. of Allegheny*, 139 F.3d 386 (3d Cir.1998) .............................................................. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 11, 12

*Chandler v. L'Oreal USA, Inc.*, 340 F. Supp 551 (2018) ......................................................... 22

*Coffman*, 133 N.J. 581, 628 A.2d 710 (1993)................................................................ 15, 17, 18

*Coffman v. Keene Corp.*, 257 N.J.Super. 279, 608 A.2d 416 (1992) ......................................... 15

*Colegrove v. Cameron Mach. Co.*, 172 F. Supp. 2d 611 (W.D. Pa. 2001)............................ 18, 21

*Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir. 1984) ................................................................ 16

*Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614 (Pa.Super.1999)................ 17, 18, 19

*Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186 (1997) ...................................... 15, 16, 18, 21

*Dorshimer v. Zonar Sys., Inc.*, 145 F. Supp. 3d 339 (M.D. Pa. 2015)......................................... 20

*Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316 (W.D. Pa. 2017) .................................... 20, 22

*Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85 (3d Cir. 1976) ............................ 16

*Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir. 1992) .................................................................. 23, 24

*High v. Pennsy Supply, Inc.*, 154 A.3d 341 (Pa. Super. 2017) ............................................... 12, 13

*Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142 (M.D. Pa. 2001) ......................................... 23

*Huston v. Procter & Gamble Paper Prods., Corp.*, 568 F.3d 100 (3d Cir.2009)........................ 12

*Igwe v. Skaggs*, 258 F. Supp. 3d 596 (W.D. Pa. 2017) ................................................................ 21

*Klemka v. Dillon Companies, Inc.*, 1996 WL 571753 (E.D. Pa. October 4, 1996) ..................... 24

*Kurzinsky v. Petzl Am., Inc.*, 2019 WL 220201 (E.D. Pa. Jan. 16, 2019).................................... 20

*Marino v. Indus. Crating Co.*, 358 F.3d 241 (3d Cir.2004)......................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).................................................................................................................... 11, 12

*McAndrew v. Russell Dean, Inc.*, CIV. A., 2007 WL 9760414 (M.D. Pa. Mar. 6, 2007) ........... 21

*Moroney v. Gen. Motors Corp.*, 850 A.2d 629 (Pa. Super. 2004) ................................................ 22

*Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876 (3d Cir. 1998)...................... Passim

*Phillips v. A-Best Prods. Co.*, 665 A.2d 1167 (Pa. 1995) ............................................................ 13

*Podobnik v. U.S. Postal Serv.*, 409 F.3d 584 (3d Cir.2005) ........................................................ 12

*Punch v. Dollar Tree Stores, Inc.*, 2017 WL 752396 (W.D. Pa. Feb. 17, 2017) ......................... 12

*Redland Soccer Club, Inc. v. Dept. of the Army*, 55 F.3d 827 (3d Cir.1995) ........................ 25, 26

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)............................................................................................................................... 12

*Riley v. Warren Manufacturing*, 455 Pa.Super. 384, 688 A.2d 221 ........................................... 24

*Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 572 .................................................... 17

*Shouey ex rel. Litz v. Duck Head Apparel Co., Inc.*, 49 F. Supp. 2d 413 (M.D. Pa. 1999)... Passim

*Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602 (Tex.1972) ................................................. 15

*Trask v. Olin Corp.*, 2016 WL 1181428 (W.D. Pa. Mar. 28, 2016) ............................................ 20

*Viguers v. Philip*, 837 A.2d 534 (Pa. Super. 2003)..................................................................... 22

*Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992) .................................................... 18, 26

*Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966)....................................................................... 15

*Weiner v. American Honda Motor Co.*, 718 A.2d 305 (Pa. Super. 1998) ................................... 13

*Whyte v. Stanley Black & Decker, Inc.*, 2021 WL 230986 (W.D. Pa. Jan. 22, 2021) ................ 20

*Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989) ........................................... 11

*Wolfe v. Ford Motor Co.*, 6 Mass.App.Ct. 346, 376 N.E.2d 143 (1978).....................................15

**<u>Rules</u>**

Fed.R.Civ.P. 56(a) .......................................................................................................11

Fed.R.Civ.P. 56(a), (e) ...............................................................................................11

Fed.R.Civ.P. 56(c)(1)(A) ............................................................................................11

**<u>Other Authorities</u>**

*Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort*, 53 A.L.R.3d 239
(1974)......................................................................................................................15

Restatement (Second) of Torts, § 402A.............................................................................Passim

## I.  <u>INTRODUCTION</u>

The present action involves claims brought by Ira Vosper and his wife, Andrea Vosper, against Monsanto as a result of its marketing and promotion of its defective product, Roundup. Specifically, the complaint at issue contains the following counts: Count I, Strict Liability – Defective Design; Count II, Strict Liability – Failure to Warn; Count III – Negligence; Count IV – Breach of Implied Warranties; Count V – Breach of Express Warranties; and Count VI – Loss of Consortium.  *See* LaBletta Decl., Ex. 1, Complaint.  Monsanto seeks to dismiss the Vospers' claims in their entirety, even though its motion only focuses on attacking Count II, failure to warn.

Importantly, Monsanto does not contest that the product is defective.  Rather, the crux of Monsanto's motion is that Mr. Vosper's cannot meet his burden on a failure to warn claim because he never read the product labeling.  Monsanto asserts this argument despite the fact that no warning ever existed about the product being harmful, including causing cancer.  Under Pennsylvania, where the manufacturer of a product fails to provide any warning at all, such as Monsanto here, the law presumes that the injured party would have heeded the warning.  Furthermore, Pennsylvania law does not require that the plaintiff produce affirmative evidence to survive summary judgment.  Nonetheless, and to remove all doubt that Monsanto's motion for summary judgment should be denied, evidence does exist that Mr. Vosper would have followed adequate warning had Monsanto provided an adequate one.  As genuine issues of material fact exists, Monsanto motion for summary judgement should be dismissed.

## II.  <u>BACKGROUND</u>

Ira Vosper was diagnosed with Diffuse large B-cell lymphoma (DLBCL) in 2010.  *See* LaBletta Decl., Ex. 2 at 295:7-18.  Mr. Vosper grew up on a farm in the rural area of Blairstown, Sussex County, New Jersey.  *See* LaBletta Decl., Ex. 2 at 13:17-18.  The family's farm was

approximately 140 to 150 acres, where they grew crops and raised livestock.  *See* LaBletta Decl., Ex. 2 at 16:6-24.  Mr. Vosper's first exposure to Roundup was in 1986, when he was 9 years old. *See* LaBletta Decl., Ex. 2 at 387:4-6. *See also* LaBletta Decl., Ex. 3 at ¶ 3.  Of course, as a boy, Mr. Vosper would not be the person purchasing Roundup.  LaBletta Decl., Ex. 2 at 195:18-24; 196:1-3.  Rather, when Mr. Vosper was a boy, his father would purchase substantial amounts of Roundup, which was used extensively around the farm.  *See* LaBletta Decl., Ex. 2 at 199:21-24. Specifically, Mr. Vosper testified that his father kept a couple a shelves "full" of Roundup in the barn.  *See* LaBletta Decl., Ex. 2 at 200:19-24.  Mr. Vosper estimated that his father never had less than 15 to 20 canisters of Roundup at the homestead.  *See* LaBletta Decl., Ex. 2 at 201:23-24; 202:1-4.  Mr. Vosper further testified that his father would purchase the concentrate product, mix it in five-gallon drums, and then would instruct him to spray it around the farm.  *See* LaBletta Decl., Ex. 2 at 196:15-23.  Despite his young age, Mr. Vosper recalled the product being Roundup and specifically described the bottle.  Mr. Vosper stated:

> Q.  And when he had, like, do you remember specifically it being labeled Roundup?
>
> A.  Yeah, I remember seeing the Roundup labels. We used to use, like, a two-by-four and he would pour water into, like, a 5-gallon bucket and mix it up.
>
> Q.  What did the label look like?
>
> A.  The logo, it looked like, I'm pretty sure on a diagonal with green in the "up."  That's what I remember. I think the concentrate might have a red cap, if I remember, but --
>
> Q.  Did you ever read the label when you were living –
>
> A.  No.
>
> Q.  -- on the farm?

A.  No.  Not at nine or ten [years old] . . .  My father would give me stuff or it was just there for me to use.

Q.  And you mentioned nine or ten, but did that apply also as you got into high school and in junior high, were you reading labels at that point --

A.  No.

*See* LaBletta Decl., Ex. 2 at 198:1-23.

In addition to using Roundup on his family farm, Mr. Vosper had significant exposure through employment.  Mr. Vosper testified that he used Roundup while working on a golf course in high school.  *See* LaBletta Decl., Ex. 2 at 85:15-16; 89:9-16; 91:2-11;18-24; 92:1-4.  He testified that he personally applied Roundup at the golf course to control weeds.  *See* LaBletta Decl., Ex. 2 at 90:2-10; 91:2-11; 91:18-24.

Additionally, Mr. Vosper used Roundup during his course of employment in the landscaping and hardscaping business, after he graduated from college in 1999. *See* LaBletta Decl., Ex. 2 at 20:4-7.  Presently, Mr. Vosper is employed with a hardscaping company knowns as Techo-Bloc and had been employed with that company since 2012.  *See* LaBletta Decl., Ex. 2 at 66:19-23; 67:7-9.  Prior to working at Techo-Bloc, Mr. Vosper worked in the same field for a company named Rinox, which was ultimately purchased by Techo-Bloc.  *See* LaBletta Decl., Ex. 2 at 67:24; 68:1-24; 69:17-22.  Mr. Vosper worked for Rinox since 2004.  *See* LaBletta Decl., Ex. 2 at 68:3-8.  At Techno-Bloc, formerly Rinox, the companies manufactured and distributed concrete products such as paving stones, retaining walls, and decorative concrete.  *See* LaBletta Decl., Ex. 2 at 70:16-24.  Mr. Vosper testified that he used Roundup extensively during his employment with Rinox and Techo-Bloc.  *See* LaBletta Decl., Ex. 2 at 74:4-6.  Mr. Vosper stated that they built massive displays to market their product outside of the business and he would be spraying

Roundup "constantly" to make sure the displays kept their appearance. *See* LaBletta Decl., Ex. 2 at 160:17-24; 161:1-16.

Prior to working at Techo-Bloc and Rinox, Mr. Vosper also worked for a company called Grinnell from 1999 until 2002. *See* LaBletta Decl., Ex. 2 at 77:7-15. Similar to Techo-Bloc and Rinox, Grinnell sold paving stones, retaining walls and other items to distributors and landscapers, including Home Depot. *See* LaBletta Decl., Ex. 2 at 78:1-8; 120:1-24. In fact, Mr. Vosper's specific job was to maintain the displays of the product at Home Depot, which required spraying Roundup to prevent weeds from growing and preserve the appearance of the displays. *See* LaBletta Decl., Ex. 2 at 121:8-24; 123:16-24; 124:1-24; 125:1-6. In fact, Mr. Vosper stated that most of his time was maintaining the displays and spraying Roundup. *See* LaBletta Decl., Ex. 2 at 141:9-15. As part of his employment, Mr. Vosper would also go to customer's homes and instruct them to use Roundup between the pavers to prevent weeds from growing, and would demonstrate how to use Roundup during this time. *See* LaBletta Decl., Ex. 2 at 136:12-24.

Before working at Grinnell, Mr. Vosper worked in the same field for a company called Haines & Kibbelhouse starting in 2003, where he sold pavers and outdoor products. *See* LaBletta Decl., Ex. 2 at 149:6-14; 150-8:16. At Haines & Kibbelhouse, Mr. Vosper worked directly with landscapers, which included using Roundup with the use of backpack sprayer. *See* LaBletta Decl., Ex. 2 at 153:12-24; 154:1:18; 384:13-24; 385:9-13. Mr. Vosper testified that from approximately 2004 to 2012, he sprayed Roundup as part of his employment every two to three weeks, and each time the spraying lasted about an hour. *See* LaBletta Decl., Ex. 2 at 163:1-11.; 165:9-13. Given his background and experience living on a farm, as well as being employed in the hardscaping and landscaping business for his entire life, Mr. Vosper was exposed to Roundup every year from 1986 until 2018. *See* LaBletta Decl., Ex. 2 at 387:7-16. Additionally, Mr. Vosper was well-familiar

with the Roundup product, using it throughout his life and purchasing it for personal use.  *See* LaBletta Decl., Ex. 2 at 181:4-16.  *See also* LaBletta Decl., Ex. 3 at ¶ 4.

Furthermore, Mr. Vosper stated that he purchased Roundup based on the advertisements. Mr. Vosper stated the following:

> Q. When you've selected Roundup, was it ever because of a commercial you saw or was it because of your own prior experience with it?
>
> A. Well, more and more, like, as I got my own house, I would be paying more attention to homeowner advertisements ever than before. Normally, it was just around my business. So I do remember the western guy shooting things like a gun slinger.  I mean I remember that.

*See* LaBletta Decl., Ex. 2 at 209:4-13.  *See also* LaBletta Decl., Ex. 3 at ¶ 5.

In 2018, Mr. Vosper immediately stop using Roundup when he became aware that is causes cancer.  *See* LaBletta Decl., Ex. 2 at 212:7-24; 216:1-6.  *See also* LaBletta Decl., Ex. 3 at ¶ 13. Mr. Vosper immediately stopped using at his home and the workplace.  *See* LaBletta Decl., Ex. 2 at 167:1-5.  *See also* LaBletta Decl., Ex. 3 at ¶ 14.  Mr. Vosper stated that he filed the lawsuit because he believes that Monsanto "promoted" and "sold" a product, which causes non-Hodgkin's lymphoma.  *See* LaBletta Decl., Ex. 2 at 338:1-3.  Mr. Vosper stated that he never saw any advertisements or other notices that exposure to Roundup could be harmful to him.  *See also* LaBletta Decl., Ex. 3 at ¶ 6.  Furthermore, Mr. Vosper stated that he never would have used Roundup had it contained an adequate warning that it was harmful to his health.  *See also* LaBletta Decl., Ex. 3 at ¶¶ 7-8.  Mr. Vosper also attested that the presence of an adequate warning about the risks of Roundup would have resulted in him avoiding the product.  *See also* LaBletta Decl., Ex. 3 at ¶¶ 8-9.

III.   **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

To defeat summary judgment, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,"* or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(a), (e))(emphasis in original). The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a reasonable trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587, 106

S.Ct. 1348; *Huston v. Procter & Gamble Paper Prods., Corp.,* 568 F.3d 100, 104 (3d Cir.2009).

Importantly, in reviewing the record evidence, the court draws all reasonable inferences in

favor of the non-moving party.  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133,

150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Matsushita,* 475 U.S. at 587–88, 106 S.Ct.

1348; *Huston,* 568 F.3d at 104 (citations omitted). It is not the court's role to weigh the disputed

evidence and decide which is more probative, or to make credibility determinations.

*See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247

(3d Cir.2004); *Boyle v. Cnty. of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. "Where the

defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has

failed to establish one or more essential elements to his case." *See Podobnik v. U.S. Postal

Serv.,* 409 F.3d 584, 589 (3d Cir.2005) (citing *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548).

## IV.   ARGUMENT

### A.   Pennsylvania Law On Products Liability Claims Generally

In *Tincher v. Omega Flex, Inc.*, the Pennsylvania Supreme Court ruled strict products

liability claims are governed by the Restatement (Second) of Torts, § 402A.   628 Pa. 296, 104

A.3d 328.   To prevail on a strict liability claim, a plaintiff must prove that "the product was

defective, the defect existed when it left the defendant's hands, and the defect caused the harm."

*High v. Pennsy Supply, Inc.*, 154 A.3d 341, 345–46 (Pa. Super. 2017) (*quoting Barton v. Lowe's

Home Centers, Inc.*, 124 A.3d 349, 354–55 (Pa. Super. 2015)); *Punch v. Dollar Tree Stores, Inc.*,

No. 12-154, 2017 WL 752396, * 7 (W.D. Pa. Feb. 17, 2017) (*citing Wright v. Ryobi Techs., Inc.*,

175 F.Supp.3d 439, 448 (E.D. Pa. 2016)). A product may be defective based on: (1) a manufacturing defect, (2) design defect, or (3) failure-to-warn defect. *High*, 154 A.3d at 346 (*citing Weiner v. American Honda Motor Co.*, 718 A.2d 305, 307 (Pa. Super. 1998)). A product is defective under failure-to-warn theories where the product was not accompanied by "sufficient warnings to notify the user of the dangers inherent in the product," rendering the product "unreasonably dangerous." *High* A.3d at 351 (Pa. Super. 2017) (*quoting Phillips v. A-Best Prods. Co.,* 665 A.2d 1167, 1171 (Pa. 1995)).[1]

The Pennsylvania Supreme Court's decision in *Tincher* set out two standards to show a product is in a "defective condition": the consumer expectation standard and the risk-utility standard. *Tincher*, 104 A.3d at 387. Importantly, the question of "[w]hether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Id.* at 335.

Under the consumer expectation standard, "the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." *Id.* at 387. In *Tincher*, the Pennsylvania Supreme Court expressed the test "as reflecting the 'surprise element of danger.'" *Id.* A product "is not defective if the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains. . . ." *Id.* Considerations such as the nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by

---

[1] In *High*, the court stated that under failure-to-warn theories, a plaintiff can show that a product is defective by offering that "a warning of a particular danger ***was….altogether lacking*** and that this deficiency in warning made the product 'unreasonably dangerous.'" *Id.* (*quoting Phillips*, 665 A.2d at 1171)(emphasis added). In light of the *Tincher* decision, the court stated such a question is not to be resolved through summary judgment and must be presented to a jury for its proper disposition. *Id.*

a manufacturer or other seller are relevant to assessing the reasonable consumer's expectations. *Id.*

Under the risk-utility standard, the "product is in a defective condition if a 'reasonable person' would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 389. Factors to determine the risk-utility test are: "(1) the usefulness and desirability of the product—its utility to the user and to the public as a whole; (2) the safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury; (3) the availability of a substitute product which would meet the same need and not be as unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (7) the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance." *Id.* at 389-90.

Importantly, in its motion for summary judgment, Monsanto does not contest that product was in a defective condition under either the consumer expectation standard or the risk-utility standard set forth in *Tincher*. Rather, the focus of Monsanto's brief is on the narrow issue that Mr. Vosper cannot maintain a claim for strict liability under failure to warn because he did not read the label on the Roundup bottles. Monsanto makes this assertion even though it is undisputed that Roundup did not contain any warning of the risks of using the product. As set forth extensively below, Pennsylvania law provides consumers like Mr. Vosper a presumption that he would have

heeding a warning had one existed.  For the reasons set forth below, Monsanto cannot succeed on summary judgment.

### B.      The Failure to Warn and the Heeding Presumption Under Pennsylvania Law

In *Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 881 (3d Cir. 1998), a strict products liability action based on a failure to warn, the United States Court of Appeals for the Third Circuit stated that comment *j* to RESTATEMENT (SECOND) OF TORTS, § 402A, is applicable under Pennsylvania law.  Comment *j* provides that a seller is entitled to assume that a a warning will be read and heeded.[2]  Id. at 882-83; *see also Shouey ex rel. Litz v. Duck Head Apparel Co., Inc.*, 49 F. Supp. 2d 413, 419 (M.D. Pa. 1999).   In addressing Pennsylvania law, Third Circuit in *Pavlik* noted the following:

> The Pennsylvania Supreme Court, whose law we are bound to follow as a court exercising diversity jurisdiction, has adopted § 402A of the Restatement (Second) of Torts, which imposes strict liability on the purveyor of a product in a defective condition 'unreasonably dangerous to the user or consumer.' *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Under § 402A, an otherwise properly designed product may still be unreasonably dangerous (and therefore "defective") for strict liability purposes if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product. *See Davis v. Berwind Corp.,* 547 Pa. 260, 690 A.2d 186, 190 (1997).

---

[2] Comment j to § 402A is directed in part to this weighing process, providing that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded."  *Pavlik* 135 F.3d at 883.  Generally speaking, comment j sets forth a presumption that works in favor of the manufacturer or seller of a product where an adequate warning has been provided. *See Coffman v. Keene Corp.,* 257 N.J.Super. 279, 608 A.2d 416, 421 (1992) ("*Coffman I*" ), *aff'd,* 133 N.J. 581, 628 A.2d 710 (1993) ("*Coffman II*" ); *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972). From this, it follows logically that the law should also presume that, when no warning or an inadequate warning is provided, the end-user would have read and heeded an adequate warning had one been given by the manufacturer. *See Coffman I,* 608 A.2d at 421 (collecting cases following this logic); *Wolfe v. Ford Motor Co.,* 6 Mass.App.Ct. 346, 376 N.E.2d 143, 147 (1978) (holding that the failure to give an adequate warning "permits the inference that it would have alerted the user to the danger and forestalled the accident."); *but cf. Coffman II,* 628 A.2d at 717–18 (extension of comment j based more on public policy than logic). Indeed, many jurisdictions have construed comment j to provide just such a presumption, referred to generally as the "heeding presumption". *See Coffman II,* 628 A.2d at 720 (collecting cases); Allan E. Korpela, Annotation, *Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort,* 53 A.L.R.3d 239 (1974). This presumption assists the failure to warn plaintiff in satisfying his burden of showing proximate cause.  *See Coffman II, 628 A.2d at 719.*

> To recover under § 402A, a plaintiff must establish: (1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands. *See id.* (*citing Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893, 899 (1975)). In the context of a failure to warn case, to satisfy the second prong, the plaintiff must establish that it was the total lack or insufficiency of a warning that was both a cause-in-fact and the proximate cause of the injuries. *See Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85 (3d Cir. 1976); *Conti v. Ford Motor Co.,* 743 F.2d 195, 197 (3d Cir. 1984). . . .

*Pavlik,* 135 F.3d at 881.

Furthermore, the Third Circuit in *Pavlik* noted that to reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury. *Id.* The Court in *Pavlik* held that "the plaintiff enjoys the benefit of a rebuttable presumption that an adequate warning would have been heeded if it had been provided." *Id.* The Third Circuit ruled that "this presumption assists the failure to warn plaintiff in satisfying his burden of showing proximate cause." *Id.* at 883

The Third Circuit in *Pavlik* explained:

> We now predict that Pennsylvania would adopt a rebuttable heeding presumption as a logical corollary to comment j. Since the very idea of imposing strict liability for the failure to warn is premised on the belief that the presence or absence of an adequate warning label will affect the conduct of a product user, it would be illogical, and contrary to the basic policy of § 402A, to accept that a product sold without an adequate warning is in a 'defective condition,' . . . while simultaneously rejecting the presumption that the user would have heeded the warning had it been given. Indeed, in its most recent (albeit limited) discussion of comment j, the Pennsylvania Supreme Court stated plainly that 'the law presumes that warnings will be obeyed.' [*Davis v. Berwind Corp.,* 547 Pa. 260, 268, 690 A.2d 186, 190 (1997).] We predict, therefore, that Pennsylvania would agree that '[c]omment j provides ample support for application of the

11

rebuttable 'heeding' presumption . . . to assist a plaintiff in proving the absence of a warning proximately caused harm.'

*Id.* at 883; *see also Shouey ex rel. Litz,* 49 F. Supp. 2d at 419–20; *accord Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 572 at n. 10 (W.D. Pa. 2014).

Based on the reasoning of the Third Circuit in *Pavlik*, the Superior Court of Pennsylvania adopted the heeding presumption in the case of *Coward v. Owens–Corning Fiberglas Corp.,* 729 A.2d 614, 618, 621 (Pa.Super.1999).  The Superior Court of Pennsylvania in *Coward* ruled that:

> Upon careful consideration . . ., we conclude that such a burden of production in toxic substance cases is not consistent with our Supreme Court's stated objectives in the adoption of Section 402A. [Citation omitted]. Were we to require that the toxic tort plaintiff demonstrate failure-to-warn defect causation by introduction of affirmative evidence, we would, in some cases, preclude recovery, even where the evidence proved that the dangerous propensities of the product in fact caused the plaintiff's injuries. Moreover, the manufacturer would derive no incentive to market products labeled for safe use even as the dangerous propensities of its products caused death or serious injury. Such results are especially troublesome where, as here, the plaintiffs were exposed in the course of their employment under circumstances that provided them no meaningful choice of whether to avoid exposure. *See Coffman v. Keene Corporation*, 133 N.J. 581, 628 A.2d 710, 721 (1993) ("It is unreasonable to assume that an employee would leave his or her position once apprised of certain safety hazards when such hazards are not rectified by the employer."). We are thus compelled to recognize that the burden of production currently applicable to strict liability cases poses potential inequity in the context of toxic substance cases where the plaintiff faced exposure in the course of his employment.

*Id.* at 619-620.

The Superior Court of Pennsylvania in *Coward* reasoned that the heeding presumption was consistent with the requirement under Pennsylvania law that a plaintiff in a strict products liability

case establish that the failure to warn was both a proximate cause and a cause in fact of the

plaintiff's injury. *Id.* at 619–20.[3] The Superior Court in *Coward* held:

> Accordingly, we conclude that Pennsylvania jurisprudence poses no impediment to adoption of a heeding presumption modeled on the presumption stated in [*Coffman v. Keene Corp.,* 133 N.J. 581, 628 A.2d 710 (N.J.Sup.Ct.1993)], and indeed appears, implicitly, to accommodate its application. Additionally, because the policies expressed by our Supreme Court in adopting strict liability under Section 402A support the goals advanced in *Coffman,* we conclude that the Court would adopt the heeding presumption to establish legal causation where, as in this case, exposure to the defendant's hazardous product was the cause in fact of the plaintiff's injuries. Consequently, we now hold that in cases where warnings or instructions are required to make a product non-defective and a warning has not been given, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning, and that the defendant, in order to rebut that presumption, must produce evidence that such a warning would not have been heeded.

*Coward* at 621; *see also Colegrove v. Cameron Mach. Co.*, 172 F. Supp. 2d 611, 617 (W.D. Pa.

2001).

Based on Pennsylvania law, it is presumed that Mr. Vosper would have heeded an adequate

warning about the product. Under Pennsylvania law, Mr. Vosper does not need to produce any

affirmative evidence that an adequate warning would have been headed in order to survive

---

[3] Strict liability was adopted in Pennsylvania "when it became clear that the circumstances behind some injuries would make negligence practically impossible for an injured plaintiff to prove." *Walton v. Avco Corp.*, 530 Pa. 568, 576, 610 A.2d 454, 458 (1992). Our Supreme Court has molded Pennsylvania jurisprudence accordingly to assure injured plaintiffs a right of recovery, regardless of fault, if their injuries were caused by a product lacking any element necessary for its intended use. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 94, 337 A.2d 893, 899 (1975); *Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978). This development, characterized by the adoption of Restatement (Second) of Torts, Section 402A, "reflects the social policy that a seller or manufacturer is best able to shoulder the costs and to administer the risks involved when a product is released into the stream of commerce." *Davis v. Berwind Corp.*, 547 Pa. 260, 266, 690 A.2d 186, 189–90 (1997). That policy derives from the recognition that "[i]n an era of giant corporate structures, utilizing the national media to sell their wares ... [it is] the consumer who must be protected." *Azzarello*, *supra* at 553, 391 A.2d at 1023–24. The Supreme Court of Pennsylvania has concluded accordingly that "no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect." *Berkebile, supra* at 93, 337 A.2d at 898 (*quoting Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974).

summary judgment, even though he has done precisely that. *See also* LaBletta Decl., Ex. 3. Furthermore, Monsanto cannot produce any evidence that Mr. Vosper would have failed to heed an adequate warning. Pursuant to Pennsylvania law, Monsanto needs to produce evidence that Mr. Vosper was fully aware of the risks and would have used the product anyway if he knew of the risks. Of course, there is no evidence to suggest that Mr. Vosper would have used Roundup if he was warned it could cause cancer. In fact, Mr. Vosper testified that once he found out Roundup was linked to cancer, he immediately stopped using the product at home and at work. *See* LaBletta Decl., Ex. 2 216:1-6.

Evening assuming Monsanto could produce evidence that an adequate warning would not have been heeded, the burden shifts back to Mr. Vosper to rebut and produce evidence that he would have avoided the hazard had an adequate warning been provided. The evidence of record makes clear that Mr. Vosper would have never used Roundup had he known it was linked to cancer. Specifically, in 2018, Mr. Vosper immediately stop using Roundup when he became aware that it causes cancer. *See* LaBletta Decl., Ex. 2 at 212:7-19; 216:1-6. *See also* LaBletta Decl., Ex. 3. Furthermore, Mr. Vosper stated that he would have never used Roundup had it contained an adequate warning that it was harmful. *See also* LaBletta Decl., Ex. 3 at ¶¶ 7-8. Mr. Vosper also attested that the presence of adequate warning about the risks of Roundup would have resulted in him avoiding the product. *See also* LaBletta Decl., Ex. 3 at ¶¶ 8-9. In addition, as noted extensively above, much of Mr. Vosper's exposure occurred through the workplace. *See Coffman*, *surpa* ("it is unreasonable to assume that an employee would leave his or her position once apprised of certain safety hazards when such hazards are not rectified by the employer). *See also Coward*, *supra*, at 619-620 (*stating that* strict liability cases poses potential inequity in the context of toxic substance cases where the plaintiff faced exposure in the course of his employment).

14

Since the record unequivocally shows that Mr. Vosper would have heeded an adequate warning, a genuine issue of material fact exists and Monsanto's motion for summary judgment should be denied.

**C.      The Heeding Presumption Applies Beyond Work-Related Asbestos Exposure Cases**

In its motion, Monsanto contends that Pennsylvania state cases have limited the heeding presumption to cases involving work-related asbestos exposure.  See Monsanto's brief at p. 3, n. 2.  This contention is inaccurate and flies in the face of Pennsylvania law.  In fact, the attempt to limit the heeding instruction was specifically rejected by Pennsylvania courts.

While previous product manufacture have attempted to limit the heeding presumption in strict liability case in Pennsylvania, it was never limited to *only* asbestos cases.  Rather, the attempt by product manufacturers in Pennsylvania was to limit the heeding presumption to *toxic torts and asbestos exposure cases*.  *See Nelson v. Am. Honda Motor Co., Inc.*, CIV.A 000210, 2021 WL 2877919, at *6 (W.D. Pa. May 17, 2021), *report and recommendation adopted* 1:18-CV-210, 2021 WL 2646840 (W.D. Pa. June 28, 2021)(defendant Honda asserted that the heeding presumption applies only to toxic tort and asbestos exposure cases).

In *Nelson*, *supra*, the United States District Court for the Western District of Pennsylvania specifically held that several federal courts applying Pennsylvania law, including the Third Circuit, have extended the heeding presumption failure to warn claims outside the toxic-tort context.  *Id. See, e.g., Pavlik*, 135 F.3d at 881; *Whyte v. Stanley Black & Decker, Inc.*, 2021 WL 230986, at *10 (W.D. Pa. Jan. 22, 2021)(Ranjan, J.); *Dorshimer v. Zonar Sys., Inc.*, 145 F. Supp. 3d 339, 355 (M.D. Pa. 2015); *Trask v. Olin Corp.*, 2016 WL 1181428, at *13 (W.D. Pa. Mar. 28, 2016) (Fischer, J.); *Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316, 320-21 (W.D. Pa. 2017) (Schwab, J.); *Kurzinsky v. Petzl Am., Inc.*, 2019 WL 220201, at *4 (E.D. Pa. Jan. 16, 2019).

Moreover, the court in *Nelson* noted that "as early as 1997, the Pennsylvania Supreme Court stated that 'the law presumes that warnings will be obeyed' in a case involving the adequacy of warnings accompanying an industrial blender." *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997). Thus, the court in *Nelson* held that the weight of authority appears to favor extension of the heeding presumption beyond the toxic tort context. *Nelson*, 2021 WL 2877919 at *6.

In addition to the cases noted above by the court in *Nelson*, other Pennsylvania courts have applied the heeding presumption to cases not involving toxic torts and asbestos cases. *See e.g.*, *Colegrove* 172 F. Supp. 2d at 615 (involving the manufacturer of a paper winding machine and an unguarded foot switch that activated the machine); *Shouey ex rel. Litz,* 49 F. Supp. 2d at 419–20 (involving allegedly defective sleepwear for children); *Igwe v. Skaggs*, 258 F. Supp. 3d 596 (W.D. Pa. 2017)(involving allegations of strict product liability against the manufacturer of a traffic signal transmitted system); *McAndrew v. Russell Dean, Inc.*, CIV. A. 03-0872, 2007 WL 9760414, at *1 (M.D. Pa. Mar. 6, 2007)(involving failing to adequately warn of the dangers of the thinwall tubing).

Thus, this Court should reject Monsanto's attempt to limit the heeding presumption to asbestos related cases, since it has been rejected by countless Pennsylvania courts. Moreover, there is no dispute in Pennsylvania law that the heeding presumption applies in toxic tort cases, such as the action at bar. Accordingly, the Mr. Vosper is entitled to the heeding presumption in this case and Monsanto's motion for summary judgment should be denied.

## D.   The Cases Relied Upon By Monsanto Are Factually Distinct From The Case at Bar

The cases relied upon Monsanto are factually distinct from the case at bar. The cases cited by Monsanto in its motion for summary judgment involves facts where the manufacturer provided an adequate warning or the consumers were aware of the risks, but used the product anyway. The

case cited by Monsanto include: (1) *Viguers v. Philip*, 837 A.2d 534, 537-38 (Pa. Super. 2003)(involving a plaintiff who voluntarily continued to use tobacco products despite ***being aware*** of the risks of smoking from public knowledge and working in the health industry)(emphasis added);(2) *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 634 (Pa. Super. 2004)(emphasis added) (involving plaintiff that was ***aware*** of car's automatic unlocking feature when ignition was turned off such that warnings would not have prevented her injury)(emphasis added); (3) *Flanagan v. MARTFIVE, LLC*, 259 F. Supp. 3d 316, 321 (2017)(involving plaintiff that chose not to read ***adequate*** warnings that were provided when buying and using the product)(emphasis added); (4) *Wright v. Ryobi Techs., Inc.*, 175 F. Supp 3d 439, 454 (2016) (involving a plaintiff that failed to read ***adequate*** warnings that were provided)(emphasis added); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp 3d 551, 562 (2018) (involving a plaintiff that failed to read ***adequate*** warnings that were provided)(emphasis added).

In the case at bar, Mr. Vosper had no reasonable means of knowing that using Roundup could cause cancer, because Monsanto did provide an adequate warning, unlike the cases it relies upon.  The only way Mr. Vosper could reasonably become aware of the risks of using Roundup was if Monsanto provided an adequate warning, which it failed to do.  Despite the lack of an adequate warning about the risks of Roundup, Monsanto seeks to dismiss this case in its entirety. However, Mr. Vosper stated that had an adequate warning been provided by Monsanto about the product causing cancer, he would have never used the product.  *See also* LaBletta Decl., Ex. 3. Accordingly, a genuine issues of material facts exist and Monsanto's motion for summary judgment should be denied.

E.      **Mr. Vosper's Negligence Claim May Remain Even in Absence of Claim for Strict Liability**

As noted above, Monsanto argues that if Mr. Vosper cannot survive summary judgment on his strict liability claim based on failure to warn, then all other causes of action in the complaint are also dismissed. There is no basis in Pennsylvania law for such a contention. In fact, Pennsylvania law holds that a negligence claim can remain even in the absence of a defect under strict liability principles. *Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir. 1992); *see also Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142, 152 (M.D. Pa. 2001).

In *Griggs,* the United States Court of Appeal for the Third Circuit specifically held that the lighter manufacturer, who could not be held liable in strict products liability, may have had a duty under a negligence theory. *Griggs*, 981 F.2d at 1435. *Griggs* involved an 11–month–old child, who sustained serious injuries in a fire started by his three-year-old stepbrother, who obtained possession of a disposable butane cigarette lighter manufactured. The Third Circuit in *Griggs* held that a manufacturer could not be held liable in strict liability under the facts of the case because the child who used the lighter was not an "intended user" of the product. *Id.* at 1434. While clinging to its holding that the defendant was not strictly liable, the Court proceeded to ascertain "whether under Pennsylvania law the absence of a 'duty' to the unintended user in strict liability also is determinative of the absence of duty in negligence." *Id.* at 1435. The discussion pertained, *inter alia,* to "the Pennsylvania Supreme Court's attempts to maintain strict liability and negligence as two independent grounds for a personal injury claim." *Id.* The *Griggs* Court noted that the two analyses differ in that while the initial social policy determination of dangerousness under a theory of strict liability does not incorporate the concept of foreseeability, the analysis of "duty" under negligence law does. *Id.* "Finding that the absence of a 'duty' (as courts have

incorrectly named it) under strict liability does not necessarily foreclose a duty under negligence principles, the court stated:"

> Because foreseeability is an integral part of the duty analysis in negligence, and because the 'duty' analysis in strict liability eschews foreseeability as an element, holding 'no duty' in strict liability does not *per se* eliminate consideration of the duty factor in negligence law.

The *Griggs* Court held that "we believe, therefore, based on its precedent that strives to maintain the difference between negligence and strict liability law, that the Pennsylvania Supreme Court would reject the proposition that the social policy determination as to product defect in strict liability is the equivalent of a determination of duty in negligence law. *Id.* Accordingly, the Court in *Griggs* ruled that a negligence claim may stand even in the absence of a defect under strict liability principles. *See also*, *Shouey*, 49 F.Supp. 2d at 430 (where the court, while citing the holding in *Griggs*, allowed a negligence claim to proceed after granting summary judgment on a strict liability claim regarding the same product); *Klemka v. Dillon Companies, Inc.,* CIV.A. 95–4548, 1996 WL 571753, at *3 (E.D. Pa. October 4, 1996); *Riley v. Warren Manufacturing,* 455 Pa.Super. 384, 688 A.2d 221, 228 n. 10 (1997) (*stating that* "[t]he distinction in Pennsylvania between products liability and negligence was aptly explained in *Griggs* . . .").

As noted above, Monsanto should not succeed on dismissing Mr. Vosper's failure to warn claim. Furthermore, applying the holding in *Griggs* and the other cases cited above, this Court should reject Monsanto's argument that if it succeeds is dismissing Mr. Vosper's strict liability claim, then all other claims alleged in the complaint should also be dismissed. As noted above, Mr. Vosper's strict liability claim based on failure to warn is just one of six counts alleged in the complaint. *See* LaBletta Decl., Ex. 1, Complaint. Similar to *Griggs*, each count alleged by Mr. Vosper is an independent ground for relief on his personal injury claim, and each cause of action

involves a different analyses under Pennsylvania law.  Thus, there is no basis in law for this Court to accept Monsanto's argument that if it succeeds on dismissing the failure to warn claim, then this Court must grant summary judgment on all claims.  Therefore, Monsanto's motion for summary judgment seeking dismissal of all claims should be denied.

### F.    The Heeding Presumption Also Applies in Negligent Failure to Warn Cases

Importantly, the heeding presumption also applies to Mr. Vosper's negligence claim, which Monsanto seeks to dismiss.  *Shouey ex rel. Litz*, 49 F. Supp. 2d 413, 420–21.  In *Shouey*, the United States District Court for the Middle District of Pennsylvania analyzed whether Pennsylvania courts would apply the heeding presumption in a failure to warn case in which the plaintiff proceeds on a negligence theory instead of, or in addition to, a strict products liability theory.  *Id.*  The Middle District in *Shouey* held that Pennsylvania courts would apply the heeding presumption to a negligence claim.  *Id.*

In *Shouey*, the court stated that the first point to consider is that negligence cases also require a plaintiff to prove both proximate cause and cause in fact.  *Id. (citing Redland Soccer Club, Inc. v. Dept. of the Army,* 55 F.3d 827, 851 (3d Cir.1995), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996). Thus, the *Shouey* court reasoned that the element of causation is the same in both types of cases, and the burden on the plaintiff of proving a hypothetical is the same.  *Id.*  The *Shouey* court further reasoned that the heeding presumption in the negligence context serves the same policies enunciated by the Supreme Court of Pennsylvania in adopting § 402A, and which are served by adopting the heeding presumption in the context of strict products liability:

> the seller or manufacturer has derived the benefit of releasing the
> product into the stream of commerce and is best able to allocate
> losses, and the burden on a plaintiff to prove causation, a particularly

difficult element in the context of injuries arising from dangerous
products, is lightened.

*Id. (citing Walton v. Avco Corp.,* 530 Pa. 568, 576, 610 A.2d 454, 458 (1992)).

Moreover, the *Shouey* ruled that statement by the Supreme Court of Pennsylvania quoted
by the Third Circuit in *Pavlik, supra,* is that "the law" presumes that adequate warnings will be
heeded. *Id.* The *Shouey* court held that this general statement is not limited to cases under § 402A.
Accordingly, the *Shouey* court concluded that when a claim of negligence is premised on a failure
to provide warnings concerning an allegedly dangerous product, Pennsylvania courts would hold
that the heeding presumption will apply with the same force as when the claim is based in strict
products liability. *Id.*

Applying the holding in *Shouey* to Mr. Vosper's claim for negligence based on Monsanto's
failure to warn, Mr. Vosper need not produce evidence that a warning would have been heeded in
order to survive the motion for summary judgment. Accordingly, Mr. Vosper's claim for
negligence should not be dismissed.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Ira Vosper and Andrea Vosper, respectfully request that this
Court deny Monsanto's motion for summary judgment and give them their day in Court as genuine
issues a material fact exists.

Respectfully submitted,

**LABLETTA & WALTERS LLC**

*/s/ Christian P. LaBletta*
**CHRISTIAN P. LABLETTA, ESQ.**
**MARK J. WALTERS, ESQ.**
Attorneys for Plaintiffs
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 828-3339

Dated:  October 5, 2021