UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br>Case No. MDL No. 3:16-cv-02741-VC |
| This document relates to:<br>*Garza et al v. Monsanto Company*<br>Case No. 3:20-cv-06988-VC | **PLAINTIFFS' RESPONSE TO MONSANTO COMPANY'S MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY** |

COME NOW JUAN AND DELIA GARZA, Plaintiffs herein, by and through their undersigned attorneys, responding to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability, and in support thereof say:

**Introduction**

The Court should deny Monsanto's motion for summary judgment based on the Texas presumption of no liability because Monsanto failed to establish the applicability of the presumption by failing to identify a single specific standard or regulation that set forth any specific formulation, label or design Roundup was required to comply with. Since Monsanto failed to establish the applicability of the presumption, the Court must deny Monsanto's motion for summary judgment based on the Texas presumption of no liability. Since the EPA is not making a finding that the product is safe, the regulations on which Defendant relies are inadequate to protect the public. Further, misrepresentations Defendant made selling Roundup outside of its label fall outside the regulations upon which Defendant relies and are not protected by the presumption.

**Background**

Plaintiff Juan Garza sprayed Roundup on a regular basis for years to kill weeds on his properties. In April of 2017, Mr. Garza was diagnosed with acute lymphoblastic leukemia/lymphoma. In or around January 2020, Mr. Garza first learned that Roundup could have

caused his cancer when he saw advertisements on television. On June 25, 2020, Mr. Garza, along with his wife Delia, filed this lawsuit. Plaintiffs alleged that Mr. Garza developed his cancer as a direct and proximate result of his exposure to Roundup, containing the active ingredient glyphosate and the surfactant POEA. *Complaint, p. 3.*

Plaintiffs alleged that the supposed inert ingredients, including POEA changed human cell permeability and amplified the toxicity of glyphosate alone. Plaintiffs alleged that the adjuvants in Roundup were not inert and that Roundup was more toxic than its active ingredient glyphosate. Plaintiffs alleged that studies on Roundup, Roundup's adjuvants, the surfactant POEA and "inert" ingredients were necessary to protect Plaintiffs. Plaintiffs alleged that studies limited to only glyphosate were insufficient to prove the safety of Roundup. Plaintiffs alleged that Defendant failed to appropriately and adequately test Roundup, Roundup's "inert" ingredients and the surfactant POEA. *Complaint p. 12.*

In addition to alleging that Defendant failed to give adequate warnings, Plaintiffs alleged that Defendant was negligent in failing to properly and adequately test Roundup, and failed to petition the EPA to strengthen the warnings:

(a) Manufacturing, producing, promoting, formulating, creating, and/or designing Roundup without thoroughly testing it;

(b) Failing to test Roundup and/or failing to adequately, sufficiently, and properly test Roundup;

(c) Not conducting sufficient testing programs to determine whether or not Roundup was safe for use; in that Defendants herein knew or should have known that Roundup was unsafe and unfit for use by reason of the dangers to its users;

(d) Not conducting sufficient testing programs and studies to determine Roundup's carcinogenic properties even after Defendants had knowledge that Roundup is, was, or could be carcinogenic;

(e) Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup, and the propensity of these ingredients to render Roundup toxic, increase the toxicity of Roundup, whether these

ingredients are carcinogenic, magnify the carcinogenic properties of Roundup, and whether or not "inert" ingredients and/or adjuvants were safe for use;

(f) negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and agricultural professions, and the EPA of the dangers of Roundup;

(g) Negligently failing to petition the EPA to strength the warnings associated with Roundup;

(h) Failing to provide adequate cautions and warnings to protect the health of users, handlers, applicators, and persons who would reasonably and foreseeably come into contact with Roundup;

(i) Negligently marketing, advertising, and recommending the use of Roundup without sufficient knowledge as to its dangerous propensities;

(j) Negligently representing that Roundup was safe for use for its intended purpose, and/or that Roundup was safer than ordinary and common items such as table salt, when, in fact, it was unsafe;

(k) Negligently representing that Roundup had equivalent safety and efficacy as other forms of herbicides;

(l) Negligently designing Roundup in a manner, which was dangerous to its users;

(m) Negligently manufacturing Roundup in a manner, which was dangerous to its users;

(n) Negligently producing Roundup in a manner, which was dangerous to its users;

(o) Negligently formulating Roundup in a manner, which was dangerous to its users;

(p) Concealing information from the Plaintiff while knowing that Roundup was unsafe, dangerous, and/or non-conforming with EPA regulations; and

(q) Improperly concealing and/or misrepresenting information from the Plaintiff, scientific and medical professionals, and/or the EPA, concerning the severity of risks and dangers of Roundup compared to other forms of herbicides.

(r) Negligently selling Roundup with a false and misleading label.

*Complaint, pp. 22-24.*

Plaintiffs also alleged that Roundup was defective in the following particulars:

(a) When placed in the stream of commerce, Defendants' Roundup Products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate.

(b) When placed in the stream of commerce, Defendants' Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

(c) When placed in the stream of commerce, Defendants' Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner.

(d) Defendants did not sufficiently test, investigate, or study its Roundup products.

(e) Exposure to Roundup presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

(f) Defendants new or should have known at the time of marketing its Roundup products that exposure to Roundup and could result in cancer and other severe illnesses and injuries.

(g) Defendants did not conduct adequate post-marketing surveillance of its Roundup products.

*Complaint, p. 30.* Based on these defects, Plaintiffs alleged that Defendant was liable in strict liability and for breach of the implied warranty of merchantability. *Complaint pp. 25-33.*

**Standard of Review**

In multidistrict litigation, on matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits. *Hassell v. Budd Co.,* 374 F.Supp.3d 433, 439 (E.D.Pa. 2019). Thus, this Court must apply the procedural law of the Ninth Circuit Court of Appeals. *Hassell,* 374 F.Supp.3d at 439. Summary judgment may be granted only if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Munden v. Stewart Title Guar. Co.,* 2021 U.S.App.LEXIS 24154, at 10* (9th Cir. 2021). A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Munden,* 2021 U.S.App.LEXIS 24154, at 10*. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Munden,* 2021 U.S.App.LEXIS 24154, at 11*.

- 4 -

Plaintiffs' Response to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability
Case No. 3:20-md-06988-VC

**Monsanto Failed to Establish the Applicability of the Presumption**

Defendant claims a presumption of no liability under Section 82.008(a) of the Texas Civil Practices and Remedies Code. Section 82.008(a) states:

> In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Tex. Civ. Prac. & Rem. Code 82.008(a); *Kia Motors Corp. v. Ruiz,* 432 S.W.3d 865, 869-70 (Tex. 2014). *Toyota Motor Sales, U.S.A.. Inc. v. Reavis,* 2021 Tex. App. LEXIS 4378, at 7* (Tex. App. -- Dallas 2021, pet. filed).

The manufacturer is entitled to a presumption of no liability **only** when:

(a)  The product complied with mandatory federal safety standards or regulations;

(b)  The standards or regulations were applicable to the product at the time of manufacture;

(c)  The standards or regulations governed the product risk that allegedly caused the harm.

*Kia Motors Corp.,* 432 S.W.3d at 870.

**All** elements of Section 82.008(a) must apply in order for the presumption to apply. *Kia Motors Corp.,* 432 S.W.3d at 874. In assessing the applicability of the presumption, the focus is on the risk rather than the particular defect involved. *Kia Motors Corp.,* 432 S.W.3d at 872-873. The court must closely examine the product risk arising from the alleged defect and the parameters of the regulation in issue to evaluate whether the manufacturer's compliance with that regulation entitles it to a presumption of non-liability. *Kia Motors Corp.,* 432 S.W.3d at 873-874. The standard or regulation at issue must address the specific risk that arises from the alleged defect. *Kia Motors*

- 5 -

Plaintiffs' Response to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability
Case No. 3:20-md-06988-VC

*Corp.,* 432 S.W.3d at 874. Mr. Garza alleges that Roundup caused him to suffer acute lymphocytic leukemia/lymphoma. Thus, the risk is that Roundup causes cancer.

While Monsanto explains the regulatory process, Monsanto fails to identify any specific standard or regulation that sets forth any specific formula, label or design that Roundup is required to comply with. More importantly, Monsanto does not identify any specific standard or regulation that sets forth any specific standard that Roundup is required to comply with. In order to establish the applicability of the presumption, Monsanto must identify a specific standard or regulation that establishes a specific formula, label or design that Roundup is required to comply with. *See Kia Motors Corp.,* 432 S.W.3d at 870(The particular standard at issue, FMVSS 208, specified certain **performance** requirements required to be met by front driver's side and passenger side airbags determined by measuring, pursuant to various injury **criteria**, the protection provided by the air bags to dummy occupants of the vehicle during a crash test); *Hamid v. Lexus,* 369 S.W.3d 291, 298 (Tex. App. - - Houston [1st Dist.] 2012, no pet.)(Toyota demonstrated that the vehicle complied with two FMVSSs that governed safe braking **performance** and **stopping distances**.); *Shaw v. Trinity Highway Products, LLC,* 329 S.W.3d 914, 918 (Tex. App. - - Dallas 2010, no pet.) (Defendant established that the guardrail end cap met the requirements of Report 350 and NCHRP 230, which consisted of a series of crash tests). Since Monsanto failed to identify a single specific standard or regulation that sets forth any formula, label or design **or actual standards** that Roundup is required to comply with, Monsanto has failed to establish the applicability of the presumption.

Since Monsanto failed to identify any specific standard or regulation that specified an actual standard Monsanto was required to comply with, Monsanto failed to identify any standard or regulation applicable to Roundup at the time of its manufacture. Since Monsanto failed to identify any such standard or regulation, Monsanto failed to establish the applicability of the presumption.

- 6 -

Plaintiffs' Response to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability
Case No. 3:20-md-06988-VC

Plaintiffs are not required to rebut the presumption until Monsanto establishes the applicability of the presumption.

**Rebuttal of the Presumption**

Subsection (b) of Section 82.008 of the Texas Civil Practices and Remedies Code states:

(b)  The claimant may rebut the presumption in Subsection (a) by establishing that:

>   (1)   the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or
>
>   (2)   the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action. Tex. Civ. Prac. & Rem. Code 82.008(a).

Tex. Civ. Prac. & Rem. Code 82.008(b); *Kia Motors Corp,,* 432 S.W.3d at 870; *Toyota Motor Sales, U.S.A.. Inc.,* 2021 Tex. App. LEXIS 4378, at 7*.

The presumption is rebutted when it is shown that the safety standard or regulation is inadequate to protect the public. *Toyota Motor Sales, U.S.A.. Inc.,* 2021 Tex. App. LEXIS 4378, at 9*-12*. First, since Monsanto failed to identify a single specific standard or regulation that sets forth any formula, label, design, or specific standard that Roundup is required to comply with, Plaintiffs cannot show that any specific standard or regulation is inadequate to protect the public. '

The registration and re-registration of a product is not a finding that a product is "safe," but that the product will not cause unreasonable adverse effects on the environment:

**(5)   Approval of registration**

The Administrator shall register a pesticide if the Administrator determines that, when considered with any restrictions imposed under subsection (d) of this section--

>   (A)   its composition is such as to warrant the proposed claims for it;

- 7 -

Plaintiffs' Response to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability
Case No. 3:20-md-06988-VC

      **(B)**    its labeling and other material required to be submitted comply with the requirements of this subchapter;

      **(C)**    it will perform its intended function **without unreasonable adverse effects on the environment**; and

      **(D)**    when used in accordance with widespread and commonly recognized practice it **will not generally cause unreasonable adverse effects on the environment**.

7 U.S.C. 136a(c)(5)(C),(D)(emphasis added). Since the so-called safety standard on which Monsanto relies is not a finding that the product is safe, the so-called standards or regulations upon which Monsanto relies, which specific standard or regulation Monsanto has not identified, are inadequate to protect the public.

      Additionally, lack of adequate warnings in the label Monsanto is permitted to use is inadequate to protect the public. It is noteworthy that Monsanto continues to sell Roundup without any real warning label. Monsanto has refused to work proactively to craft a warning label that the EPA would likely approve. Instead, Monsanto has repeatedly referred to a federal court enjoining the "Proposition 65" warning label California attempted to require for Roundup. While the Proposition 65 warning label is misleading, it is equally misleading for Monsanto to invoke Proposition 65 to assert that Monsanto could never get a meaningful warning label approved. A label that alerts users to the contrasting positions taken by the EPA and IARC on the safety of glyphosate, points users to the literature produced by these two agencies, and reminds users to employ protective gear and take other appropriate precautions when spraying Roundup, would be a meaningful one that would not be misleading. *See Dkt. 13115, p. 3.* The absence of a meaningful warning label demonstrates that the regulatory framework on which Monsanto relies to assert the presumption is inadequate to protect the public from the risk Roundup causes cancer.

- 8 -

Plaintiffs' Response to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability
Case No. 3:20-md-06988-VC

**FIFRA Contemplates State Tort Actions**

FIFRA itself contemplates the bringing of tort law claims. Courts entertained tort litigation against pesticide manufacturers since well before the passage of FIFRA in 1947, and such litigation was a common feature of the landscape at the time of the 1972 amendments to FIFRA. *Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 440-441 (2005). Registration is not a defense for the commission of any offense under FIFRA. 7 U.S.C. 136(a)(f)(2).

One offense under FIFRA is to sell a product that is misbranded. A product is misbranded under FIFRA if:

(F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 3(d) of this Act [7 USCS § 136a(d)], are adequate to protect health and the environment;

(G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 3(d) of this Act [7 USCS § 13a(d)], is adequate to protect health and the environment;

7 U.S.C. 136(q)(1)(F),(G); *Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 438 (2005). Because it is unlawful under FIFRA to sell a product that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements. *Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 438 (2005). When FIFRA itself permits state tort law actions for offenses under FIFRA, the presumption under Section 82.008 does not prevent the bringing of the same claims.

**Monsanto is Liable for Voluntary Representations**

FIFRA makes it unlawful to distribute or sell any registered pesticide "if any claims made for it as part of its distribution or sale substantially differ from any claims made for it as part of the statement required in connection with its registration under Section 136a of this title. 7 U.S.C. 136j(a)(B).

In addition to the information contained on its labeling, Monsanto made the following misrepresentations:

(a) Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ...

(b) And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

(c) Roundup biodegrades into naturally occurring elements.

(d) Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

(e) This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it.

(f) You can apply Accord with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

(g) Glyphosate is less toxic to rats than table salt following acute oral ingestion.

(h) Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

(i) You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

(j) "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

Defendant was not required to make these representations. *See Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 444-445 (2005) (Defendant liable for the express warranty it was not required to undertake, but that it voluntarily undertook). These representations are outside of the regulatory framework of FIFRA. Thus, the Section 82.008 presumption does not apply to these representations.

**Conclusion**

Monsanto failed to establish the applicability of the presumption by failing to identify a single specific standard or regulation that set forth any specific formulation, label or design Roundup was required to comply with. Since Monsanto failed to establish the applicability of the presumption, the Court must deny Monsanto's motion for summary judgment based on the Texas presumption of no liability. Further, because the EPA is not making a finding that the product is safe, the regulations on which Defendant relies are inadequate to protect the public. Additionally, misrepresentations Defendant made selling Roundup outside of its label fall outside the regulations upon which Defendant relies and are not protected by the presumption.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs move the Court to deny Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability; and for such other and further relief to which Plaintiffs show themselves justly entitled to receive.

Dated: October 5, 2021.

                                                                                                                   /s/Randal Kauffman -
Charles R. Houssiere, III
Attorney in Charge
choussiere@HDHtex.com
Randal A. Kauffman
rkauffman@HDHtex.com
Houssiere, Durant & Houssiere, LLP
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056
Telephone: (713)626-3700
Facsimile: (713)626-3709

*Attorneys for Plaintiffs Juan and Delia Garza*