**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | **DEFENDANT MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DR. BARRY BOYD ON RULE 702 GROUNDS**<br><br>Hearing date: TBD<br>Time: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** beginning on a date to be determined in Courtroom 4 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as ordered by the Court, Defendant Monsanto Company ("Monsanto") will present its Motion to Exclude Testimony of Dr. Barry Boyd. Monsanto seeks an order excluding the opinions of Dr. Boyd under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: October 5, 2021                     Respectfully submitted,

                                           /s/ *Jed P. White*
                                           Jed P. White
                                           Attorneys for Defendant Monsanto Company

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 1

I.     Mr. Seidl Has Disclosed Dr. Boyd As A Specific Causation Expert. ............................ 1

II.    Mr. Seidl Had Alternative Risk Factors Associated With NHL. .................................... 2

III.   Dr. Boyd Uses An Unnamed Balancing Approach As The Basis For His Specific Causation Opinions. ........................................................................................ 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT .............................................................................................................................. 5

I.     Dr. Boyd Failed To Properly Assess Potential Alternative Causes Of Mr. Seidl's NHL. .................................................................................................................. 5

II.    Dr. Boyd Has Not Reliably Ruled Out Unknown Causes Of Mr. Seidl's NHL And Instead Always Point to Roundup. ......................................................................... 6

III.   Monsanto Preserves Its Arguments That Plaintiff's Expert Ruled In Roundup As A Cause Of Plaintiff's NHL Based On Inadequate And Flawed Studies. ............................................................................................................................ 7

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aredia & Zometa Prod. Liab. Litig.*,
  483 F. App'x 182 (6th Cir. 2012) .................................................................................. 4

*Claar v. Burlington N. R.R. Co.*,
  29 F.3d 499 (9th Cir. 1994) ........................................................................................... 6

*Clausen v. M/V New Carissa*,
  339 F.3d 1049 (9th Cir. 2003) ............................................................................... 3, 5, 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ........................................................................................... 2, 4, 7, 8

*Hayes v. Tractor Supply Co.*,
  170 N.C. App. 405, 612 S.E.2d 399 (2005) .................................................................. 5

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) ..................................................................................... 4, 6

*Poust v. Huntleigh Healthcare*,
  998 F. Supp. 478 (D.N.J. 1998) ..................................................................................... 4

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ...................................................................................... 3, 5

*Yates v. Ford Motor Co.*,
  No. 5:12-CV-752-FL, 2015 WL 3463559 (E.D.N.C. May 30, 2015) ........................... 4

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................... *passim*

# INTRODUCTION

Plaintiff Randall Seidl, one of the Wave II Plaintiffs, designated Dr. Barry Boyd as a specific causation expert.[1]  Dr. Boyd does not meet the standards of Rule 702 this Court imposed in Pre-Trial Order 85 ("PTO 85").  His opinions falls woefully short of the standard established by the first round of experts, who this Court bluntly described to have "barely inched over the line" in opining that Roundup®-branded products ("Roundup") specifically caused the first wave of plaintiffs' non-Hodgkin's lymphoma ("NHL").

Like those experts, Dr. Boyd continues to "rule in" Roundup based on the same flawed studies the general causation experts rely on without accounting for Mr. Seidl's specific NHL sub-type, follicular lymphoma—a subtype for which Dr. Boyd is unaware of any data showing a statistically significant association with Roundup exposure.

But the flaws with Dr. Boyd's analysis also go much further.  Dr. Boyd lacks any principled basis to "rule out" Mr. Seidl's known NHL risk factors, including his age when he was diagnosed with NHL (57) and his family history of cancer, as well as the unknown risk factors he acknowledges cause most cases of NHL.  Yet in his unwavering adherence to the conclusion that Roundup is always to blame in every Roundup case, Dr. Boyd simply concludes that Roundup caused Mr. Seidl's NHL, without having rigorously analyzed the alternative hypothesis that Mr. Seidl's other known or unknown risk factors were the cause here.

Overall, Dr. Boyd's opinions are not the product of a reliable differential etiology/diagnosis. The Court should exclude them as inadmissible.

# BACKGROUND

**I.   Mr. Seidl Has Disclosed Dr. Boyd As A Specific Causation Expert.**

Mr. Seidl disclosed Dr. Boyd as one of his two specific causation experts.   Dr. Boyd is an oncologist who has been disclosed in multiple Roundup cases across the country. *See* Declaration of Jed. P. White ("White Decl."), Ex. 1, Boyd (*Seidl*) Dep. at 10:19-20.  In clinical practice, Dr. Boyd has never directly told any patient that Roundup caused his or her cancer. *Id.* at 37:13-20.  Dr. Boyd

---

[1] Mr. Seidl also designated a second specific causation expert, Dr. William Sawyer.  The admissibility of Dr. Sawyer's opinions is addressed in a separate motion.

had never conducted scientific research or published peer-reviewed articles relating to glyphosate or Roundup. *Id.* at 11:8-18.

## II. Mr. Seidl Had Alternative Risk Factors Associated With NHL.

As set forth at length in Monsanto's prior motion to exclude specific causation experts, MDL ECF No. 2420, "non-Hodgkin's lymphoma" is an umbrella term used to describe more than sixty different sub-types of cancer involving the lymphocytes, a type of white blood cell. The various sub-types have different clinical and prognostic characteristics and may also have different risk factors and causes. However, in the vast majority of all NHL cases, the cause is unknown.

Randall Seidl, a resident of Charlotte, North Carolina, was diagnosed with grade 3 follicular lymphoma in November 2014. *See* White Decl., Ex. 2, Seidl Dep. at 192:12-14, 233:13-18. Mr. Seidl's Roundup use was exclusively residential. *Id.* at 156:20-22. He claims to have used Roundup at 3 or 4 different residences beginning in 1990, but that his most extensive Roundup usage occurred between 2005 to 2010 at his home in San Antonio, Texas. *See* White Decl., Ex. 3, Boyd Report at 8.

As Dr. Boyd admits, Mr. Seidl had an increased risk of developing NHL based on his age (57) at the time of his diagnosis. *See* White Decl., Ex. 1, Boyd (*Seidl*) Dep. at 92:11-14. Mr. Seidl also has a family history of cancer. His mother died of breast cancer, his uncle died of colon cancer, and his maternal grandmother died of a brain tumor. *Id.* at 80:5-18.

## III. Dr. Boyd Uses An Unnamed Balancing Approach As The Basis For His Specific Causation Opinions.

Dr. Boyd purports to reach his specific causation opinions through what he claims is a "balancing" analysis to arrive at a "relative effect" for Roundup as opposed to other NHL risk factors. *See* White Decl., Ex. 1, Boyd (*Seidl)* Dep. at 79:3-80:4. Dr. Boyd does not have a name for his methodology. When pressed at this deposition, Dr. Boyd claimed that his methodology is "similar" to the Bradford Hill criteria, though he expressly disclaimed performing a Bradford Hill assessment. *Id.* at 77:15-78:13, 78:24-79:2. Dr. Boyd's report does not state that he is applying a differential diagnosis or etiology. *See* White Decl., Ex. 3, Boyd Report.

As this Court has acknowledged, "differential diagnosis" is a term courts use to describe the "scientific technique of identifying the cause of a medical problem by eliminating the likely causes

1  until the most probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)).  This process requires an expert to first "rule in" all potential causes—*i.e.*, "to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Id.*  The expert must then "rule out" the possible causes using a scientific method until only the most likely cause remains. *Id.*

The methodology performed by Dr. Boyd is fundamentally different from the accepted medical practice of differential diagnosis.  It purports to use a comparable methodology, but to discern the fundamental cause of a disease rather than to diagnose the disease itself.  Unlike a differential diagnosis the differential "etiology" is a "legal construct" that is not used in actual medical practice and has no support in published scientific literature.

Dr. Boyd's methodology strays far from any reliable methodology because his process is designed to lead to their pre-ordained conclusion.  First, he "rules in" Roundup by uncritically relying on the same flawed studies the general causation experts rely on.  *See* White Decl., Ex. 3, Boyd Report at 14-20.  Dr. Boyd did this without taking into account Mr. Seidl's specific NHL subtype, follicular lymphoma. *Id.*  In fact, he acknowledged that he is not aware of any literature showing a statistically significant association between exposure to Roundup and follicular lymphoma. *See* White Decl., Ex. 1, Boyd (*Seidl*) Dep. at 60:9-14 (Q. [A]re you familiar with any article in peer-reviewed literature showing a statistically significant association between either glyphosate or Roundup on follicular lymphoma specifically?  A. Not specific.").

While quick to rule in Roundup in every case, Dr. Boyd purports to rule out every other relevant NHL risk factor except Roundup, again without considering the specific sub-type at issue, and without applying the same reasoning and methodological rigor to the potential alternative causes that he applies to Roundup.  And throughout his analysis, Dr. Boyd ignores altogether the possibility that Mr. Seidl's NHL may have no known cause, as would be the case where NHL is caused by a yet to be discovered factor or from the random mutation that inevitably occurs through normal cell division.  According to Dr. Boyd, if a plaintiff came into contact with Roundup, that fact alone automatically excludes the possibility of an idiopathic or unknown cause.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may give opinion testimony only if (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, an expert must be qualified and must offer testimony that is both relevant and reliable. *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Here, Dr. Boyd's opinions should be excluded on the grounds that (1) they are not reliable, and (2) they are not helpful to the jury because Dr. Boyd automatically concludes Roundup was the cause without weighing or eliminating other risk factors in any reliable manner.

In the specific causation context, Rule 702 requires experts purporting to use a differential diagnosis to carry out both aspects of that methodology—"ruling in" all possible causes and "ruling out" all but the subject cause—in a reliable fashion. To reach an admissible causation opinion through a reliable differential diagnosis, an expert must "accurately diagnose the nature of the disease, reliably rule in the possible causes of it, and reliably rule out the rejected causes." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012). Because the inherent malleability of this methodology can shroud what may be little more than subjective guesswork, the district court must "delve into the particular witness's method of performing a differential diagnosis to determine if his or her ultimate conclusions are reliable." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 496 (D.N.J. 1998). Courts have consistently held that expert opinions that pay lip service to this methodology but do not reliably apply it should be excluded. *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642-45 (4th Cir. 2018).

In personal injury cases, specific causation—here, whether Roundup caused Mr. Seidl's NHL—is an essential element of Plaintiff's claims. *See, e.g.*, *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3463559, at *2 (E.D.N.C. May 30, 2015). Under North Carolina law (which applies to Mr. Seidl's claims), whether a chemical caused an individual's injury is beyond the experience and common knowledge of lay jurors, so a plaintiff must prove it through expert

testimony. *See, e.g.*, *Hayes v. Tractor Supply Co.*, 170 N.C. App. 405, 409, 612 S.E.2d 399, 402 (2005). If Plaintiff fails to present an admissible expert opinion to establish specific causation, summary judgment is appropriate. *See* PTO 85 at 1 ("To defeat Monsanto's motion for summary judgment on this issue, the plaintiffs must present at least one admissible expert opinion to support [his] specific causation argument.").

## ARGUMENT

**I.   Dr. Boyd Failed To Properly Assess Potential Alternative Causes Of Mr. Seidl's NHL.**

Dr. Boyd failed to adequately address potential causes of Mr. Seidl's NHL other than Roundup, which is required for their opinions to be admissible. *See Clausen*, 339 F.3d at 1058 ("A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.") (quoting *Westberry*, 178 F.3d at 265); *see also* PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself."). The first step in a differential diagnosis is to "compile a comprehensive list of hypotheses that might explain" the plaintiff's injury. *Id.* The Ninth Circuit instructs experts to "[i]nclud[e] even rare entities in the list [to] ensure[] that such disorders are not overlooked." *Clausen*, 339 F.3d at 1058-59 (citation and quotation marks omitted). Then, in the second step of a differential diagnosis, the expert must "rule out" each of the possible causes until only the most likely cause remains. *Id.* While Dr. Boyd did mention potential alternative causes, he dealt with such causes so casually that it is impossible to even discern whether he ruled in a cause and then ruled it out, or did not rule in the cause in the first place.

Regardless of which step in the differential diagnosis is involved, Dr. Boyd's testimony reveals that he did not seriously consider that something other than Roundup could have caused Mr. Seidl's NHL. Instead, Dr. Boyd started with the conclusion that Roundup was the cause, and then sought to justify that conclusion—and insulate it from scrutiny by the Court—by paying lip service to other potential causes. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'"

*Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Boyd has failed to do so here, and instead have engaged in a flawed, results-driven "always Roundup" methodology—precisely the type of unreliable approach that Rule 702 prohibits.

Dr. Boyd admitted that he could not rule out age as a contributing factor to Mr. Seidl's NHL, White Decl., Ex. 1, Boyd (*Seidl*) Dep. at 96:20-97:6, that Mr. Seidl's age at the time of his diagnosis (57) was "within the spectrum of increasing risk after age 55 to 60," *id.* at 92:11-14, and that 57 was not an unusual age to see a patient with NHL even if that patient has never been exposed to Roundup, *id.* at 92:21-24. Dr. Boyd also could not "rule out" hereditary risk (Mr. Seidl's mother, uncle, and grandmother died of cancer) as a cause of Mr. Seidl's NHL. *Id.* at 80:8-16. All he could say that it "was not a *major* contributor" to Mr. Siedl's NHL. *Id.* at 88:7-11 (emphasis added).

Taken as a whole, Dr. Boyd's reasoning closely tracks that of the experts excluded in *Lipitor*, whose conclusions "focused almost exclusively on the fact that [the plaintiff] took the drug and later developed the disease, rather than explaining what led her to believe that it was a substantial contributing factor as compared to other possible causes." 892 F.3d at 645. Here, as in *Lipitor*, Dr. Boyd's expert report simply "dismiss[es] other possible causes in favor of [Roundup] in a cursory fashion that appeared closer to an *ipse dixit* than a reasoned scientific analysis." *Id.* The Court should exclude Dr. Boyd's opinions on that basis.

**II.   Dr. Boyd Has Not Reliably Ruled Out Unknown Causes Of Mr. Seidl's NHL And Instead Always Point to Roundup.**

Just as he fails to engage with the known alternative risk factors confronting Mr. Seidl, he takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases: he simply ignores the prospect. This Court has already acknowledged that because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy. *See* PTO 85 at 4. To be admissible "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *Id.*

Dr. Boyd is unable to offer any reliable method for placing Mr. Seidl in one category and not the other, and thus any such testimony cannot possibly be helpful to a jury tasked with that very

assessment.  Indeed, Dr. Boyd's report does not address idiopathy at all.  *See* White Decl., Ex. 3, Boyd Report.  It ignores the possibility that Mr. Seidl's NHL has an unknown cause altogether.  And despite testifying that in clinical practice he has never directly told a patient that Roundup was the cause of his or her NHL, *see* White Decl., Ex. 1, Body (*Seidl*) Dep. at 37:13-20, Dr. Boyd engages in an "always Roundup" methodology that determines Roundup to be the cause no matter the exposure.

### III. Monsanto Preserves Its Arguments That Plaintiff's Expert Ruled In Roundup As A Cause Of Plaintiff's NHL Based On Inadequate And Flawed Studies.

Monsanto moves to exclude, under Rule 702, Dr. Boyd on the grounds that he ruled in Roundup as a cause of Mr. Seidl's NHL based on unreliable science.  In particular, Monsanto maintains that Dr. Boyd improperly relies on a small subset of flawed studies that do not establish a sufficiently high odds ratio to be relevant, and that they do not adequately account for Plaintiff's individual subtypes when ruling in Roundup as a cause.  However, consistent with the Court's direction not to re-litigate issues previously ruled upon by the Court, but in order to fully preserve the appellate record, Monsanto hereby incorporates the following pleadings that were filed on the MDL docket addressing this issue:

- Monsanto Company's Motion to Exclude Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr. Dennis Weisenburger on *Daubert* Grounds (ECF No. 2420);
- Monsanto's Company's Reply in Support of Motion to Exclude Testimony of Dr. Chadi Nabhan, Dr. Andrei Shustov, and Dr. Dennis Weisenburger on *Daubert* Grounds (ECF No. 2525);
- The Transcript of the February 13, 2019 Hearing (ECF No. 2763);
- Monsanto Company's Motion for Directed Verdict (ECF No. 2975);
- Monsanto Company's Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 3976);
- Monsanto Company's Reply in Support of Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 4301).

Monsanto also incorporates the most recent science on glyphosate, including the scientific literature published since the above pleadings were submitted to the Court, attached as exhibits 2-4 to Monsanto's Motion to Exclude Plaintiffs' General Causation Experts (ECF No. 12782), and the United States Environmental Protection Agency's Interim Registration Decision on glyphosate,

attached as Exhibit 5 to that Motion.[2]

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert Dr. Boyd on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiff has failed to present at least one admissible expert opinion to support specific causation in each of their cases.

Dated: October 5, 2021                           Respectfully submitted,

/s/ Jed P. White
Jed P. White
Attorneys for Defendant Monsanto Company

---

[2] By incorporating by reference its prior filings, Monsanto is in no way waiving any of the arguments raised therein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jed P. White
Jed P. White