**J. Marshall Jones, Jr.**
**Jones & Odom, LLP**
**2124 Fairfield Avenue**
**Shreveport, Louisiana 71104**
**Telephone: (318) 221-1600**
**Facsimile: (318) 425-1256**
**Marshall.jones@jodplaw.com**

**Curtis R. Joseph, Jr.**
**Winchell & Joseph, LLC**
**2124 Fairfield Avenue**
**Shreveport, Louisiana 71104**
**Telephone: (318) 221-1600**
**Facsimile: (318) 425-1256**
**curtis@wjlawfirm.net**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) <br> ) MDL No. 2741 <br> ) <br> ) <br> ) Case No. 3:16-md-02741-VC |
| This document relates to: <br><br> *Joseph Blair, et al vs. Monsanto Co.,* <br> Case No. 3:19-cv-07984-VC | ) <br> )**PLAINTIFF'S RESPONSE TO** <br> )**MONSANTO COMPANY'S** <br> )**MOTION FOR SUMMARY** <br> )**JUDGMENT BASED ON TEXAS** <br> )**PRESUMPTION OF NO LIABILITY** <br> ) |

COMES NOW JOSEPH M. BLAIR, et al, Plaintiffs herein, by and through their undersigned attorneys, responding to Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability, and in support thereof respectfully represent as follows:

1

**INTRODUCTION**

The Court should deny Monsanto's motion for summary judgment based on the Texas presumption of no liability because Monsanto failed to establish the applicability of the presumption by failing to identify a single specific standard or regulation that set forth any specific formulation, label or design Roundup was required to comply with.  Since Monsanto failed to establish the applicability of the presumption, the Court must deny Monsanto's motion for summary judgment based on the Texas presumption of no liability.  Since the EPA is not making a finding that the product is safe, the regulations on which Defendant relies are inadequate to protect the public.  Further, misrepresentations Defendant made selling Roundup outside of its label fall outside the regulations upon which Defendant relies and are not protected by the presumption.  For example, please see attached report of Charles M. Benbrook, which delineates the foregoing.  Exhibit 1.

**BACKGROUND**

At the time of his diagnosis with diffuse large B-cell lymphoma, Plaintiff, Joseph Blair, was twenty-two (22) years old.  He originally presented to Dr. Glen Watkins on October 30, 2018, complaining of a throat mass.  A tonsillectomy was scheduled for November 7, 2018.  Thereafter, on November 9, 2018, biopsies were performed, which confirmed large B-cell lymphoma in Mr. Blair's right tonsil.  He was referred to Dr. Sanford Katz (Radiation Oncology) and Dr. Nihar Patel (Hematology/Oncology).

The undisputed evidence shows that he did not present with any of the typical risk factors associated with such a diagnosis.  In fact, all things being equal, he was extremely young as it relates to the typical non-Hodgkin's patient.  Moreover, his treating radiation oncologist, Dr.

Sanford Katz, and his treating hematologist, Dr. Nihar Patel, both found it noteworthy that Mr. Blair sprayed Roundup as part of his job duties.

Undersigned respectfully submits that there has been absolutely no dispute that Mr. Blair used concentrated Roundup Pro (i.e., glyphosate-based product) in massive quantities insofar as his job entailed spraying the product along utility easements. In that regard, it is undisputed that Mr. Blair sprayed concentrated Roundup Pro through a hose as he stood on the back of a skidder. Mr. Blair's testimony is that he sprayed thousands of gallons of Roundup Pro, daily for approximately two (2) years. [Exhibit 2, pp. 54-105, Blair deposition]. Further, it was Mr. Blair's testimony that the concentration of the product was such that it felled fully-grown trees. [Exhibit 3, Blair affidavit] Again, these facts are undisputed.

Plaintiff alleges that the glyphosate and surfactant mixture that form the Roundup product is the most likely cause of his having developed diffuse large B-cell lymphoma. Plaintiff further asserts that, given the location of his lymphoma (in his tonsil area), it is more probable than not that his cancer was the result of the product "raining down on him", while he inhaled it. In other words, unlike the plaintiffs before this court who typically sprayed the product in a downward fashion, Mr. Blair's job duties necessitated that he spray the product from a hose, upward to the treetops. In the process, as noted above, the concentrated Roundup Pro "rained down" on him, for hours during a typical 8–10-hour day, for nine months out of the year, over a two (2) year period. Again, these facts are not in dispute.

As it regards specific factual allegations against Defendant Monsanto, please see pp. 5 – 27 of Plaintiff's Complaint (Numbered Paragraphs 3.1 – 3.60). As a result of said factual allegations, plaintiff has further alleged that Defendant Monsanto is liable in Strict Liability

(Design Defect) [*Complaint,* pp. 32-37], Strict Liability (Failure to Warn) [*Complaint,* pp. 38-43], Negligence [*Complaint*, pp. 43-48], and Breach of Warranties [*Complaint*, pp. 48-51].

**Standard of Review**

In multidistrict litigation, on matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits. *Hassell v. Budd Co.,* 374 F.Supp.3d 433, 439 (E.D.Pa. 2019). Thus, this Court must apply the procedural law of the Ninth Circuit Court of Appeals. *Hassell,* 374 F.Supp.3d at 439. Summary judgment may be granted only if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Munden v. Stewart Title Guar. Co.*, 2021 U.S.App.LEXIS 24154, at 10* (9th Cir.2021). A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Munden*, 2021 U.S.App.LEXIS 24154, at 10*. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Munden*, 2021 U.S.App.LEXIS 24154, at 11*.

**Monsanto Failed to Establish the Applicability of the Presumption**

Defendant claims a presumption of no liability under Section 82.008(1) of the Texas Civil Practices and Remedies Code. Section 82.008(a) states:

> In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the produce manufacturer or seller establishes that the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Tex.Civ.Prac. & Rem. Code 82.008(a); *Kia Motors Corp v. Ruiz*, 432 S.W.3d 865, 869-70 (Tex.2014). *Toyota Motor Sales, U.S.A. Inc. v. Reavis*, 2021 Tex. App. LEXIS 4378, at 7* (Tex. App. – Dallas 2021, pet. filed).

4

The manufacturer is entitled to a presumption of no liability **only** when:

(a) The product complied with mandatory federal safety standards or regulations;

(b) The standards or regulations were applicable to the product at the time of manufacture;

(c) The standards or regulations governed the product risk that allegedly caused the harm.

*Kia Motors Corp.*, 432 S.W.3d at 870.

**All** elements of Section 82.008(a) must apply in order for the presumption to apply. *Kia Motors Corp.*, 432 S.W.3d at 874. In assessing the applicability of the presumption, the focus is on the risk rather than the particular defect involved. *Kia Motors Corp.*, 432 S.W. 3d at 872-873. The court must closely examine the product risk arising from the alleged defect and the parameters of the regulation in issue to evaluate whether the manufacturer's compliance with that regulation entitles it to a presumption of non-liability. *Kia Motors Corp.,* 432 S.W.3d at 873-874. The standard or regulation at issue must address the specific risk that arises from the alleged defect. *Kia Motors Corp.,* 432 S.W.3d at 874. Mr. Garza alleges that Roundup caused him to suffer acute lymphocytic leukemia/lymphoma. Thus, the risk is that Roundup causes cancer.

While Monsanto explains the regulatory process, Monsanto fails to identify any specific standard or regulation that sets forth any specific formula, label or design that Roundup is required to comply with. More importantly, Monsanto does not identify any specific standard or regulation that sets forth any specific standard that Roundup is required to comply with. In order to establish the applicability of the presumption, Monsanto must identify a specific standard or regulation that establishes a specific formula, label or design that Roundup is required to comply with. *See Kia Motors Corp.,* 432 s.w.3D AT 870 (The particular standard at issue, FMVSS 208, specified certain **performance** requirements required to be met by front driver's side and passenger side airbags

determined by measuring, pursuant to various injury **criteria**, the protective provided by the air bags to dummy occupants of the vehicle during a crash test); *Hamid v. Lexus*, 369 S.W.3d 291, 298 (Tex.App.—Houston [1st Dist.] 2012, no pet.)(Toyota demonstrated that the vehicle complied with two FMVSSs that governed safe braking **performance** and **stopping distances**.); *Shaw v. Trinity Highway Products, LLC*, 329 S.W.3d 914, 918 (Tex. App. – Dallas 2010, no pet.) (Defendant established that the guardrail end cap met the requirements of Report 350 and NCHRP 230, which consisted of a series of crash tests).  Since Monsanto failed to identify a single specific standard or regulation that sets forth any formula, label or design **or actual standards** that Roundup is required to comply with, Monsanto has failed to establish the applicability of the presumption.

Since Monsanto failed to identify any specific standard or regulation that specified an actual standard Monsanto was required to comply with, Monsanto failed to identify any standard or regulation applicable to Roundup at the time of its manufacture.  Further, since Monsanto failed to identify any such standard or regulation, Monsanto has failed to establish the applicability of the presumption.  Plaintiffs are not required to rebut the presumption until Monsanto establishes the applicability of the presumption.

**Rebuttal of the Presumption**

Subsection (b) of Section 82.008 of the Texas Civil Practices and Remedies Code states:

(b) The claimant may rebut the presumption in Subsection (a) by establishing that:

>(1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or

>(2) the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.  Tex.Civ.Prac. & Rem. Code 82.008(a).

Tex. Civ. Prac. & Rem. Code 82.008(b); *Kia Motors Corp.,* 432 S.W.3d at 870; *Toyota Motor Sales, U.S.A. Inc.,* 2021 Tex.App. LEXIS 4378, at 7*.

The presumption is rebutted when it is shown that the safety standard or regulation is inadequate to protect the public. *Toyota Motor Sales,* U.S.A.. Inc., 2021 Tex.App. LEXIS 4378, at 9*-12*. First, since Monsanto failed to identify a single specific standard or regulation that sets forth any formula, label, design, or specific standard that Roundup is required to comply with, Plaintiffs cannot show that any specific standard or regulation is inadequate to protect the public.

The registration and re-registration of a product is not a finding that a product is "safe", but that the product will not cause unreasonable adverse effects on the environment:

> **(5)  Approval of registration**
>
> The Administrator shall register a pesticide if the Administrator determines that, when considered with any restrictions imposed under subsection (d) of this section
>
> **(A)** its composition is such as to warrant the proposed claims for it;
>
> **(B)** its labeling and other material required to be submitted comply with the requirements of this subchapter;
>
> **(C)** it will perform its intended function **without unreasonable adverse effects on the environment;** and
>
> **(D)** when used in accordance with widespread and commonly recognized practice it **will not generally cause unreasonable adverse effects on the environment.**

7 U.S.C. 136a(c)(5)(C), (D)(emphasis added) Sine the so-called safety standard on which Monsanto rules is not a finding that the product is safe, the so-called standards or regulations upon which Monsanto relies, which specific standard or regulation Monsanto has not identified, are inadequate to protect the public.

Additionally, lack of adequate warnings in the label Monsanto is permitted to use is inadequate to protect the public. It is noteworthy that Monsanto continues to sell Roundup without any real warning label. Monsanto has refused to work proactively to craft a warning label that the EPA would likely approve. Instead, Monsanto has repeatedly referred to a federal court enjoining the "Proposition 65" warning label California attempted to require for Roundup. While the Proposition 65 warning label is misleading, it is equally misleading for Monsanto to invoke Proposition 65 to assert that Monsanto could never get a meaningful warning label approved. A label that alerts users to the contrasting positions taken by the EPA and IARC on the safety of glyphosate, points users to the literature produced by these two agencies, and reminds users to employ protective gear and take out appropriate precautions when spraying roundup, would be a meaningful one that would not be misleading. *See Dkt. 13115, p. 3*. The absence of a meaningful warning label demonstrates that the regulatory framework on which Monsanto relies to assert the presumption is inadequate to protect the public from the risk Roundup causes cancer.

**FIFRA Contemplates State Tort Actions**

FIFRA itself contemplates the bringing of tort law claims. Courts entertained tort litigation against pesticide manufacturers since well before the passage of FIFRA in 1947, and such litigation was a common feature of the landscape at the time of the 1972 amendments to FIFRA. *Bates v. Dow Agrosciences, L.L.C.,* 544 U.S. 431, 440-441 (2005). Registration is not a defense for the commission of any offense under FIFRA. 7 U.S.C. 136(a)(f)(2).

One offense under FIFRA is to sell a product that is misbranded. A product is misbranded under FIFRA if:

> (F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under Section 3(d) of this Act [7 USCS §136a(d)], are adequate to protect health and the environment;
>
> (G) the label does not contain a warning or causation statement which may be necessary and if complied with, together with any requirements imposed under Section 3(d) of this Act [7 USCS §13a(d)], is adequate to protect health and the environment;

7 U.S.C. 136(q)(1)(F),(G); *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005). Because it is unlawful under FIFRA to sell a product that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements. *Bates v. Dow Agrosciences, L.L.C.*, 544 U.S. 431, 438 (2005). When FIFRA itself permits state tort law actions for offenses under FIFRA, the presumption under Section 82.008 does not prevent the bringing of the same claims.

**Monsanto is Liable for Voluntary Representation**

FIFRA makes it unlawful to distribute or sell any registered pesticide "if any claims made for it as part of its distribution or sale substantially differ from any claims made for it as part of the statement required in connection with its registration under Section 136a of this title. 7 U.S.C. 136j(a)(B).

In addition to the information contained on its labeling, Monsanto made the following misrepresentations:

> (a) Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ….

(b) And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

(c) Roundup biodegrades into naturally occurring elements.

(d) Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

(e) This non-residual herbicide will not wash or leach in the soil. It … stays where you apply it.

(f) You can apply Accord with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

(g) Glyphosate is less toxic to rats than table salt following acute oral ingestion.

(h) Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

(i) You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

(j) "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has ben treated with Roundup.

Defendant was not required to make these representations. *See Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 444-445 (2005) (Defendant liable for the express warranty it was not required to undertake, but that it voluntarily undertook). These representations are outside of the regulatory framework of FIFRA. Thus, the Section 82.008 presumption does not apply to these representations.

## **CONCLUSION**

Monsanto failed to establish the applicability of the presumption by failing to identify a single specific standard or regulation that set forth any specific formulation, label or design Roundup was required to comply with. Since Monsanto failed to establish the applicability of the presumption, the Court must deny Monsanto's motion for summary judgment based on the Texas

presumption of no liability.  Further, because the EPA is not making a finding that the product is safe, the regulations on which Defendant relies are inadequate to protect the public.  Additionally, misrepresentations Defendant made selling Roundup outside of its label fall outside the regulations upon which Defendant relies and are not protected by the presumption.

    WHEREFORE, PREMISES CONSIDERED, Plaintiff moves the Court to deny Monsanto Company's Motion for Summary Judgment Based on Texas Presumption of No Liability; and for such other and further relief to which Plaintiff shows himself justly entitled to receive.

Respectfully submitted;

Date: October 6, 2021

By:   *J. Marshall Jones, Jr.*
J. Marshall Jones, Jr.
Jones & Odom, LLP
2124 Fairfield Avenue
Shreveport, Louisiana 71104
LA State Bar No. 7488
Telephone: (318) 221-1600
Facsimile: (318) 425-1256
Marshall.jones@jodplaw.com

By:   *Curtis R. Joseph, Jr.*
Curtis R. Joseph, Jr.
Winchell & Joseph, LLC
2124 Fairfield Avenue
Shreveport, Louisiana 71104
La. State Bar No. 26944
Telephone: (318) 221-1600
Facsimile: (318) 425-1256
curtis@wjlawfirm.net

Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of October 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*J. Marshall Jones, Jr.*
J. Marshall Jones, Jr.
Jones & Odom, LLP
