EXHIBIT 6

| | |
|---|---|
| JOSEPH MATTHEW BLAIR | DOCKET NO: 19-00579; DISTRICT 1W |
| VERSUS | OFFICE OF WORKERS' COMPENSATION |
| EDKO, LLC | STATE OF LOUISIANA |

## AFFIDAVIT OF JOSEPH MATTHEW BLAIR

STATE OF LOUISIANA

PARISH OF CADDO

BEFORE ME, the undersigned authority, personally came and appeared JOSEPH MATTHEW BLAIR (hereinafter called "Affiant"), the Claimant in the above captioned matter, who being duly sworn, deposed and said:

(12) Affiant is 22 years of age, has a high school degree, and was formerly an employee of EDKO, L.L.C. ("EDKO"), an herbicide application company that specializes in the spraying of herbicides for utility and industrial customers. EDKO's principal office is located at 7545 Haygood Road, Shreveport, Louisiana, 71101.

(13) Affiant's job duties with EDKO entailed the application of herbicides on rights-of-way for utility companies and, as such, it was incumbent upon Affiant to spray tremendous quantities of the commercial-grade, concentrated herbicide "Roundup" (glyphosate) from a pressurized spray "gun" while standing on the back of a moving "skidder," often spraying said herbicide product several hundred feet at a time. It is critical to note that the commercial-grade Roundup (glyphosate) used by Affiant, at the direction of his employer EDKO, was mixed to a level of concentration sufficient to kill well-established trees, brush and vegetation.

(14) Affiant was first exposed to concentrated Roundup (glyphosate) beginning on his very first day of employment with EDKO on or about September 16, 2016 until his last day of employment on or about November 9, 2018.

(15) In connection with his employment with EDKO, Affiant was instructed to use highly concentrated Roundup on a daily basis, and during the majority of each work day, instructed to spray trees, brush and vegetation intruding on various utility rights-of-way located in the States of Texas, Arkansas and Louisiana. Affiant was also instructed to use high pressure hoses to spray tremendous quantities of concentrated Roundup (glyphosate) each and every work day, which work days were comprised of as many as 8-10 hours per day.

(16) Throughout each and every day, as Affiant handled, utilized and sprayed tremendous quantities of concentrated Roundup, Affiant was never provided with any sort of protective clothing or protective equipment; to the contrary, Affiant was instructed to continue to spray tremendous quantities of concentrated Roundup (glyphosate) throughout each and every day while he was dressed in his jeans and shirt, while standing on moving "skidders" being pulled down the various rights-of-way by a tractor.

(17) Throughout each and every day, Affiant experienced significant quantities of concentrated Roundup "raining down" on his face; into his mouth, eyes, nose and/or ears; and/or onto his exposed skin and hair.

(18) Throughout each and every day, the concentrated Roundup sprayed by Affiant would soak his exposed skin and clothes -- often multiple times each work day, and Affiant often swallowed the Roundup as it fell onto his exposed head and face.

(19) Throughout each and every day, when Affiant handled, utilized and sprayed Roundup, Affiant believed it was not a carcinogen, and he specifically relied on the labeling and promotion of Roundup as being safe to humans.

(20) Affiant did not learn of the link between exposure to Roundup (glyphosate) and non-Hodgkin's lymphoma until he was very recently diagnosed with non-Hodgkin's lymphoma.

(21) In November of 2018, doctors diagnosed Affiant with diffuse large B-cell lymphoma. As a result, for the past many months Affiant has undergone both "chemotherapy" and radiation treatment, and is still under the care of his treating physician, a board certified radiation oncologist. Affiant has also suffered other personal injuries that are the direct result of the cancer and necessary "chemotherapy" and radiation treatment.

(22) During the entire time in which Affiant was exposed to Roundup (glyphosate), Affiant did not know that exposure to Roundup was injurious to his health or the health of others. In fact, representatives of EDKO continued to specifically advise Affiant on a regular basis that Roundup was not injurious to Affiant's health or the health of others.

(12) Affiant was exposed to Roundup (glyphosate) in the course of his activity as an employee, as described above, without knowledge of its dangerous characteristics.

(17) Affiant could not have reasonably discovered the defects and risks associated with Roundup or glyphosate-containing products prior to or at the time of Affiant's daily exposure to Roundup. Affiant relied upon the skill, superior knowledge and judgment of EDKO to know about and disclose serious health risks associated with using the products.

(18) To this day, EDKO has failed to adequately and accurately warn of the risks of cancer associated with the use of and exposure to Roundup and its active ingredient glyphosate.

(19) EDKO has advised Affiant that his previous employment with EDKO has been terminated and the benefits of his previous employment with EDKO, including health care insurance, have also been terminated.

(20) Based upon information and belief, EDKO has refused to pay any of Affiant's medical bills related to Affiant's needed care and treatment, including chemotherapy and radiation treatment that Affiant had to undergo.

SWORN TO AND SUBSCRIBED before me, Notary, this 15TH day of August, 2019.

_____
JOSEPH MATTHEW BLAIR

_____
J. Marshall Jones, Jr.
Notary Public in and for Caddo Parish, Louisiana
My Commission is for Life
Notary No. 27471