**LABLETTA & WALTERS LLC**
**Christian P. LaBletta, Esquire**
**200 Barr Harbor Drive, Suite 400**
**Conshohocken, PA 19428**
**Telephone:  (610) 828-3339**
**Facsimile:  (610) 828-3347**
**clabletta@lablettawalters.com**

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP® PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>*Vosper v. Monsanto Co.,*<br>3:19-cv-05525-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**PLAINTIFFS, IRA VOSPER AND ANDREA VOSPER'S, OPPOSITION TO DEFENDANT, MONSANTO COMPANY'S, MOTION TO EXCLUDE TESTIMONY OF DR. BARRY BOYD UNDER RULE 702**<br><br>Hearing date:  December 13, 2021<br>Time:  TBD |

i

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT…...…………………………………………….…..1

II.   LEGAL STANDARD……………………………………………………….…5

III.   ARGUMENT………………………………………………………………...…7

   A.  There  Is  No  Legal  Requirement  To  Consider  Every  Potential  Risk
       Factor………………………………………………….……………….…..…7

   B.  Dr. Boyd Need Not Exclude Idiopathy.........................................................8

   C.  Dr.  Boyd  Properly  Assessed  Potential  Alternative  Causes  For  Mr.  Vosper's
       Cancer………………………………………………………………………...9

   D.  Dr. Boyd's Opinion Is Not Based On Flawed Exposure Data………………....10

IV.   CONCLUSION………………………………………………………….…………10

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                              **<u>Page(s)</u>**

*Clausen*, 339 F.3d at 1057-58……………………………………………………………6, 8

*Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 578 (2015)………………………6

*Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal. App. 4th 555, 580 (2014)…….....7

*Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003)…......6

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 563 (8th Cir. 2014)………..……………6

*Messick v. Novartis Pharm. Corp.*, 747 F3d 1193, 1196 (9th Cir. 2014)………………5, 6, 8, 10

*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)…………………………………………6

*Schultz v. Akzo Nobel paints, LLC,* 721 F.3d 426, 434 (7th Cir. 2013)…………………………6

*Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (2017)…………………5, 6, 7, 8, 9, 10

**<u>Other Authorities</u>**

*In re Roundup Products Liability Litigation*, 2018 WL 3368534, at *9-10……………………..9

## I. __PRELIMINARY STATEMENT__

Monsanto moves this Court to exclude the testimony of Dr. Barry Boyd.  Monsanto alleges that Dr. Boyd failed to conduct an adequate differential diagnosis with respect to the cause of Mr. Vosper's NHL.  Monsanto further alleges that Dr. Boyd relied on studies with which Monsanto does not agree, and further relied on flawed exposure day calculations.  Monsanto's motion consists of nothing more than a recycling of perpetually rejected arguments, supplemented by factual assertions which are easily debunked by the factual record.

In 2010, at age 33, Plaintiff, Ira Vosper ("Mr. Vosper") was diagnosed with non-Hodgkin's lymphoma ("NHL").  *See* expert report of Dr. Barry Boyd at p. 3-5, a true and correct copy of which is attached to the Declaration of Christian P. LaBletta, Esquire as Exhibit "1."  From the ages of 8 until 25, Mr. Vosper lived with his family on a 140-150 acre farm.  *See* Exhibit "1" at p. 17.  Mr. Vosper used Roundup® residentially from the Spring of 1986 (age 9) until 2018, a period of 32 years.  *See* Exhibit "1" at p. 17.  In addition to the family farm and residential use, Mr. Vosper had a history of occupational Roundup® exposure at multiple jobs between 1997 and 2012.  *See* Exhibit "1" at p. 18.  Mr. Vosper's occupational use included utilizing Roundup® for as much as an hour at a time.  *See* Exhibit "1" at p. 18.

Plaintiffs have retained Dr. Barry Boyd as a specific causation expert in this matter.  A copy of Dr. Boyd's C.V. is attached to the Declaration of Christian P. LaBletta, Esquire as Exhibit "2."  Dr. Boyd graduated from Cornell University with a M.S. and a M.D.  He received his Ph.D. from Yale University School of Medicine.  He also completed a two year post-doctoral fellowship in hematology and oncology at New York Hospital-Cornell Medical Center, Followed with a chief fellowship in hematology and oncology from 1983-1985.  He is currently an Assistant Clinical Professor of Medicine at Yale University School of Medicine, a position he has held since 2009.

1

He has consistently been recognized as Best Doctor in Medical Oncology every year since 2008. See Exhibit "2."

Dr. Boyd authored a detailed, 43 page report.  Monsanto contends that Dr. Boyd failed to reliably rule in Roundup as a cause of Plaintiff's NHL, relied on a subset of "cherry-picked" studies which provided an insufficient basis on which to conclude that glyphosate is a cause of Plaintiff's NHL, and further alleged Dr. Boyd's opinion is based on flawed exposure day calculations.  As noted above, Monsanto has previously attempted to exclude Dr. Boyd's testimony and failed. Further, a review of Dr. Boyd's report contradicts Monsanto's contentions.

In preparation of his report, Dr. Boyd reviewed Mr. Vosper's medical records, complaint, fact sheet, the depositions of Mr. Vosper, his wife, his treating physician, and the expert toxicology report of William Sawyer, Ph.D.  *See* Exhibit "1" at p. 2-3.  Dr. Boyd also conducted a telephone interview with Mr. Vosper.  *See* Exhibit "1" at p. 3.  Dr. Boyd provides a detailed medical history of Mr. Vosper, including a relevant family medical history.  *See* Exhibit "1" at p. 3-15.

Dr. Boyd reviewed and summarized Mr. Vosper's extensive residential and occupational exposure to Roundup®.  *See* Exhibit "1" at p. 17-18.  Relying on his decades of experience as an Ivy League educated oncologist, as well as the most relevant and salient studies and literature on these topics, Dr. Boyd's report provides an extensive description of the biology of lymphoma development, pesticide exposure and development of non-Hodgkin lymphoma, cellular and animal studies, epidemiologic studies documenting risk of non-Hodgkin lymphoma with agricultural occupations, epidemiologic studies assessing the risk of non-Hodgkin's lymphoma with Glyphosate exposure, as well as the position of multiple national and international agencies and organizations on these issues.  *See* Exhibit "1" at p. 19-28.

Dr. Boyd also analyzes the risk factors with respect to Mr. Vosper. With respect to non-modifiable risk factors, Dr. Boyd identifies one first-degree relative who was diagnosed with acute lymphocytic leukemia, who ultimately died. *See* Exhibit "1" at p. 29. Dr. Boyd noted that the potential etiology of her ALL is unknown but Mr. Vosper noted that she loved to landscape and used Roundup® on the farm that she sprayed "once a week or more." *See* Exhibit "1" at p. 29.

Dr. Boyd also extensively analyzed Mr. Vosper's non-chemical, non-modifiable risk factors, as well his non-chemical modifiable risk factors, such as tobacco and alcohol use, obesity, diabetes, infectious agents, auto-immune inflammatory diseases, and other medical history. *See* Exhibit "1" at p. 29-32. With respect to these risk factors, Dr. Boyd noted that Mr. Vosper was a lifelong non-smoker. He also concludes that alcohol played no role in the development of Mr. Vosper's lymphoma, as Mr. Vosper was not a heavy drinker or binge drinker, and there is no evidence that alcohol increases the risk of lymphoma. *See* Exhibit "1" at p. 30. Additionally, Dr. Boyd noted that while Mr. Vosper's adult weight ranged from overweight to obese, "most associations between obesity and cancer, including lymphoma, become increasingly evidence with BMIs from 35-40; there is no evidence that he had ever reached such a BMI." Dr. Boyd continued "these associations are modest at best. Further, they only reach significance at much higher BMI levels than Mr. Vosper ever attained . . . . Therefore, Mr. Vosper's lymphoma cannot be attributed to the effect of obesity and BMI" *See* Exhibit "1" at p. 31. Consistent with his detailed and thorough analysis, Dr. Boyd was able to rule out diabetes (Mr. Vosper had no history of diabetes), infectious agents (Mr. Vosper was negative for all viruses known to be associated with lymphoma), autoimmune inflammatory diseases (noting Mr. Vosper had never been diagnosed with autoimmune disease) and Mr. Vosper's other medical history as potential causes of his lymphoma.

After extensive review, Dr. Boyd concluded "the most consistent and ubiquitous risk factor in Mr. Vosper's exposure history was the continued use of Roundup™, beginning as a very young boy in 1986…." *See* Exhibit "1" at p. 32.  Dr. Boyd elaborates on his reasoning extensively.  *See* Exhibit "1" at p. 32.

In his "conclusion," Dr. Boyd writes:

> **VI. CONCLUSIONS/SUMMARY**
> To reasonable medical certainty, based on the foregoing analysis and
> 1)      the potential causes of NHL,
> 2)      the extensive glyphosate medical literature, including epidemiologic and mechanistic studies cited above,
> 3)      Mr. Vosper's medical history, lifestyle, and exposure history,
> 4)      Mr. Vosper's extensive medical records,
> 5)      my training, including my residency at Memorial Sloan Kettering Cancer Center and my medical oncology fellowship at New York Hospital–Cornell Medical Center,
> 6)      my research and publications on the management of large B-cell lymphoma,
> 7)      my experience teaching medical students, residents and fellows as part of the Yale Medical School faculty,
> 8)      my 30 years of clinical practice in the field of oncology, specifically treating lymphoma patients
> 9)      my work as a board member of the Yale-based research group, Environment and Human Health (EHHI), Inc.,
> 10)      my long experience educating patient groups on the origins of cancer and risk reduction and outcomes in cancer survivorship,
> 11)      the provided legal documentation, including deposition transcripts,
> 12)      the essential exclusion of other potential risk factors including body habitus and age, that could be causative, i.e., the application of a critical differential diagnosis, and,
> 13)      Mr. Vosper's over 3-decade-long history of exposure to Roundup™/glyphosate, beginning at a young age, extending to the time of his diagnosis of DLBCL and continuing eight years after diagnosis,
> Mr. Vosper's NHL, specifically his DLBCL, was caused by his Roundup™/glyphosate exposure detailed above.

*See* Exhibit "1" at p.  34.

Finally, Dr. Boyd does rely on the exposure calculations of the expert toxicologist, Dr. William Sawyer.  Dr. Sawyer's initial report contained a calculation error with respect to exposure. Upon learning of his calculation error, Dr. Sawyer drafted a supplemental report dated September 8, 2021 with the correct calculations.  A true and correct copy of Dr. Sawyer's September 8, 2021 supplemental report is attached to the Declaration of Christian P. LaBletta, Esquire as Exhibit "3." Dr. Sawyer notes that based on the corrected calculations, "the changes do not change my opinion that Mr. Vosper's NHL was substantially contributed to by his Roundup exposure." *See* Exhibit "3" at p. 1.  He further notes that "Mr. Vosper was within the range of exposure metrics for applicators as cited within the human epidemiological studies that revealed statistically-significant increased NHL among glyphosate applicators." *See* Exhibit "3" at p. 2.  Upon learning of Dr. Sawyer's amended exposure analysis, Dr. Boyd reviewed this analysis and noted that his opinions remained unchanged from his report.  *See* Supplemental Report of Dr. Barry Boyd dated September 20, 2021.  A copy of which is attached to the Declaration of Christian P. LaBletta, Esquire as Exhibit "4."  Notably, Monsanto addresses the supplemental reports of both Dr. Boyd and Dr. Sawyer in their motion to exclude the testimony of Dr. Boyd, clearly establishing that Monsanto was in possession of all relevant documentation in advance of the filing of its motion.

## II.    LEGAL STANDARD

The Ninth Circuit has mandated that "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell*, 858 F.3d at 1232 (*quoting Messick v. Novartis Pharm. Corp.*, 747 F3d 1193, 1196 (9th Cir. 2014)). Expert testimony is admissible under Rule 702 when based on a reliable differential diagnosis. *See id.* at 1235 ("Nothing in *Daubert,* or its progeny, properly understood, suggests that the most experienced and credentialed doctors [specifically referencing

Dr. Weisenburger and Dr. Shustov] in a given field should be barred from testifying based on a differential diagnosis."). In conducting a differential diagnosis,[1] an expert considers the "pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded." *Id*. at 1234 (approving Dr. Shustov's methodology). The Ninth Circuit also "consistently recognize[s] the difficulties in establishing certainty in the medical sciences." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1197-98 (9th Cir. 2010) (*citing Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). Therefore, it is not necessary that "an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is enough that medical condition be a substantial causative factor." *Id.* at 1199; *see also Schultz v. Akzo Nobel paints, LLC,* 721 F.3d 426, 434 (7th Cir. 2013) ("[A] reliable expert should consider alternative causes, they do not require an expert to rule out every alternative cause."); *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 563 (8th Cir. 2014) ("However, we have consistently ruled that experts are not required to rule to all possible causes when performing the differential etiology analysis.")(internal citations omitted).

The relevancy of an expert opinion is governed by California law. *Messick* 747 F.3d at 1196-97. Under California law, "[t]he plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore convince the jury, that is more probable that not the negligent act was a cause-in-fact of the plaintiffs injury." *Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 578 (2015) (*quoting Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003)). "Under the applicable

---

[1] *See Wendell,* 858 F.3d at 1234 ("When performing a differential diagnosis, [Dr. Shustov] first assumes the pertinence of all potential causes, then rules out the ones as to which there is no plausible evidence of causation, and then determines the most likely cause among those that cannot be excluded. We have recognized that this method of conducting a differential diagnosis is scientifically sound." (citing *Clausen*, 339 F.3d at 1057-58).

substantial factor test, it is not necessary for a plaintiff to establish the negligence of the defendant as the proximate cause of injury with absolute certainty so as to exclude every other possible cause of a plaintiff's illness, even if the expert's opinion was reached by performance of a differential diagnosis." *Id*. "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm." *Id.* at 595 (quoting CACI 430) (holding that it was unnecessary for expert to rule out smoking as contributing cause to Plaintiff's injury).

### III.   ARGUMENT

#### A.   There Is No Legal Requirement To Consider Every Potential Risk Factor

First, it must be noted that the Court has previously ruled that Plaintiff's experts properly ruled Roundup in as the cause of non-Hodgkin's lymphoma.  In this regard, Dr. Boyd's report similarly rules in Roundup as a cause of NHL for Mr. Vosper.

In considering other potential causes, Plaintiffs' experts are not required to scour the world and investigate every conceivable alternative potential cause of a Plaintiffs' NHL in order for their opinions to be admissible under *Daubert*. The Ninth Circuit in *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (2017), made that clear:

> We do not require experts to eliminate all other possible causes of a condition for the expert's testimony to be reliable. It is enough that the proposed cause "be a substantial causative factor." This is true in patients with multiple risk factors, and analogously, in cases where there is a high rate of idiopathy.

Likewise, in *Cooper v. Takeda Pharmaceuticals America, Inc.*, 239 Cal. App. 4th 555, 580 (2014), the California Court of Appeals ruled that a plaintiff need not rule out every potential risk factor that could conceivably have also contributed to her disease:

> Thus, because California has rejected the notion that a plaintiff must definitively "exclude all possibilities other than the defendant's conduct or product as the cause of the plaintiff's harm, clearly an

> expert, in reaching a specific causation opinion, need not exclude all other possibilities before he or she can express an opinion that the defendant's conduct or product caused the plaintiff's harm.

*Id.*

### B.   <u>Dr. Boyd Need Not Exclude Idiopathy</u>

Monsanto's "idiopathy" argument is similarly a rehash of the argument this Court also rejected in Pretrial Order 85.  In that order, the Court wrote:

> Recognizing that "[m]edicine partakes of art as well as science," the Ninth Circuit's recent decisions reflect a view that district courts should typically admit specific causation opinions that lean strongly toward the "art" side of the spectrum. *Messick*, 747 F.3d at 1198; *see also Wendell*, 858 F.3d at 1237 ("The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." (*quoting Clausen*, 339 F.3d at 1060)).
>
> \*       \*       \*
>
> Under Ninth Circuit caselaw, doctors enjoy wide latitude in how they practice their art when offering causation opinions. *See Wendell*, 858 F.3d at 1237 ("Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions supporting causation, we conclude that *Daubert* poses no bar based on their principles and methodology."). It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an "obvious and known risk factor[]" is the cause of that plaintiff's disease. *See Wendell*, 858 F.3d at 1235. Here, the specific causation experts did that. Relying on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL – the experts concluded that glyphosate was a substantial factor in causing the plaintiffs' NHL.
>
> Moreover, the experts relied heavily on the plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie

(2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate and NHL. *See generally In re Roundup Products Liability Litigation*, 2018 WL 3368534, at *9-10. Thus, consistent with Ninth Circuit case law, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL. The Court may be skeptical of their conclusions, and in particular of the assumption built into their opinions from the general causation phase about the strength of the epidemiological evidence. But their core opinions – that the plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL – are admissible.

PTO 85, at pp. 5-6.

### C.    Dr. Boyd Properly Assessed Potential Alternative Causes For Mr. Vosper's Cancer

As previously noted by this court, "under Ninth Circuit case law, doctors enjoy wide latitude in how they practice their art when offering causation opinions." *See* Pretrial Order No. 85, citing *Wendell v. GlaxoSmithKline LLC,* 858 F. 3d 1227, 1237 (9th Cir. 2017).  Once again, Monsanto argues that Dr. Boyd's "ruling out" was unreliable simply because it does not agree with Dr. Boyd's findings, not because Dr. Boyd failed to meet the standard for a proper differential diagnoses.  As recounted above, Dr. Boyd did not "casually" rule out other risk factors as Monsanto claims.  Rather, Dr. Boyd used his clinical judgment, decades of experience as an expert, and extensive knowledge about the risk factors and still found Roundup® to be a substantial contributing risk factor.  Dr. Boyd's conclusion is rooted in his review of Mr. Vosper's medical records, family history, exposure to Roundup®, careful consideration of other possible causes, and medical and research literature and studies.  This conclusion is clear based on the brief summary of Dr. Boyd's report contained above, and is undeniable upon a fair reading of Dr. Boyd's extensive 43 page report.

There is nothing methodologically suspect with weighing the strength of the evidence of various risk factors and making a clinical judgment about which risk factor is more important in a

patient.  *Wendell v. GlaxoSmithKline LLC,* 858 F.3d 1227, 1237 (9th Cir. 2017) *citing Messick v. Novartis Pharm. Corp.,* 747 F.3d 1193, 1198 (9th Cir. 2014).  Dr. Boyd's opinions are consistent with his clinical practice, education, decades of experience and review of the relevant studies and medical literature.  Consequently, Monsanto's motion should be denied.

### D.     Dr. Boyd's Opinion Is Not Based On Flawed Exposure Data

As explained above, Dr. Sawyer made a calculation error in his initial report.  However, the amended exposure analysis provided by Dr. Sawyer did not change Dr. Boyd's opinion.  Upon learning of Dr. Sawyer's amended exposure analysis, Dr. Boyd reviewed this analysis and noted that his opinions remained unchanged from his report.  *See* supplemental report of Dr. Barry Boyd dated September 20, 2021 a true and correct copy of which is attached to the Declaration of Christian P. LaBletta, Esquire as Exhibit "4."

To be clear, Monsanto addresses the supplemental reports of both Dr. Boyd and Dr. Sawyer in their motion to exclude the testimony of Dr. Boyd, clearly establishing that Monsanto was in possession of all relevant documentation in advance of the filing of its motion.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs, Ira Vosper and Andrea Vosper, request that the court deny Monsanto's motion to exclude Dr. Boyd.

Respectfully submitted,

**LABLETTA & WALTERS LLC**

*/s/ Christian P. LaBletta*
**CHRISTIAN P. LABLETTA, ESQ.**
Attorneys for Plaintiffs
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 828-3339

Dated:  October 6, 2021