Adrian N. Roe (*pro hac vice*)
Roe & Simon LLC
428 Boulevard of the Allies
First Floor
Pittsburgh, PA 15219
412-434-8187
aroe@roeandsimonllc.com

Counsel for Plaintiffs David Schaffner, Jr.,
and Theresa Sue Schaffner

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ROUNDUP PRODUCTS LIABILITY LITIGATION ) ) ) ) ) This document relates to: ) ) *David Schaffner, Jr., et al. v. Monsanto Co.,* ) Case No. 3:19-cv-07526-VC ) ) ) | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC<br><br><br><br>Hearing Date:  December 13, 2021<br><br>Time:  TBD |

**SCHAFFNER PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT MONSANTO COMPANY'S MOTION
TO EXCLUDE PLAINTIFFS' SPECIFIC CAUSATION EXPERT
DR. RON SCHIFF ON RULE 702 GROUNDS**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................1

      I.  Dr. Schiff Is Qualified To Render An Expert Opinion
      As To Specific Causation ...................................................................1

      II.  Dr. Schiff Carefully Reviewed The Evidentiary
      Record As Developed By Monsanto ..................................................2

      III.  Monsanto Mischaracterizes Dr. Schiff's Methodology..............5

LEGAL STANDARD ........................................................................................6

ARGUMENT ......................................................................................................7

      I.  The Court Should Reject The Unattainable Standard
      For Expert Testimony Proposed By Monsanto .................................7

      II.  Monsanto's Arguments Are Foreclosed
      By PTO 85 and Applicable Ninth Circuit Decisions.........................8

CONCLUSION ...................................................................................................9

TABLE OF AUTHORITIES

*Cases:*

*Clausen v. m/v New Carissa,* 339 F.3d 1049 (9th Cir. 2003) ...................................... 8

*Hardeman v. Monsanto Co.,* 997 F.3d 941 (9th Cir. 2021) ......................................... 7-9

*In re: Roundup Products Liability Litigation,* MDL No. 2741 ................................ *passim*

*Messick v. Novartis Pharm. Corp.,* 747 F.3d 1193 (9th Cir. 2017) ............................ 8-9

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,*
  752 F.3d 807 (9th Cir. 2014) ................................................................................... 1

*See, e.g., Rost v. Ford Motor Company,*
  637 Pa. 625, 151 A.3d 1032 (Pa. 2016) .................................................................. 9

*Wendell v. Glaxosmithkline LLC,* 858 F.3d 1227 (9th Cir. 2017) .............................. 8-9

*Rules:*

Fed. R. Evid. 702 ........................................................................................................ 1

**INTRODUCTION**

Plaintiffs David Schaffner, Jr., and Theresa Sue Schaffner, by their undersigned counsel, respectfully submit this Response in Opposition to Monsanto's Motion to Exclude, which seeks to prevent the Schaffner Plaintiffs from presenting the testimony of their specific causation expert, Dr. Ron Schiff.[1] As set forth more fully below, Dr. Schiff is qualified to render an expert opinion regarding the specific cause of Plaintiff David Schaffner's Non-Hodgkin lymphoma ("NHL"). Monsanto's motion mischaracterizes Dr. Schiff's written report and his deposition testimony. Monsanto also disregards and/or misapplies applicable and controlling decisions by this Court and the U.S. Court of Appeals for the Ninth Circuit. Monsanto's Motion should be denied.

**BACKGROUND**

**I.   Dr. Schiff Is Qualified To Render An Expert Opinion As To Specific Causation**

Monsanto nowhere actually disputes that Dr. Schiff "is qualified by knowledge, skill, experience, training or education" to testify as an expert witness with respect to specific causation. Fed. R. Evid. 702.[2] Dr. Schiff is Board Certified in Internal Medicine, Medical Oncology, and Hematology, and completed a three-year fellowship at Memorial Sloan-Kettering

---

[1] Monsanto's Motion was filed in Civil Action No. 19-cv-7526 as Document No. 19 and on the main docket in MDL No. 2741 as Document No. 13,780. Monsanto's Motion is supported by the Declaration of Jed P. White and the exhibits attached thereto (Doc. No. 20-1 in Civil Action No. 7526; Doc. No. 13,781-1 in the MDL) (hereinafter "White Decl.").

[2] Monsanto's various attacks on Dr. Schiff's credibility do not amount to a proper basis for challenging his qualification to serve as an expert witness. *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (reversing exclusion of two experts) ("A district court should not make credibility determinations that are reserved for the jury.")

Institute, before continuing with his career in both private and academic medicine which included a focus on lymphoma. White Dec. at 172, 192-200. Under the standards articulated by this Court, Dr. Schiff is qualified "in reliance on his clinical experience, review of plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an 'obvious and known risk factor' is the cause of that plaintiff's disease." *In re: Roundup Products Liability Litigation,* MDL No. 2741, Pretrial Order No. 85: Denying Monsanto's Motion For Summary Judgment On Specific Causation ("PTO 85"), at 5.

## II. Dr. Schiff Carefully Reviewed The Evidentiary Record As Developed By Monsanto

Monsanto argues that Dr. Schiff failed to explore all the possible risk factors that might be implicated in Mr. Schaffner's case.. *E.g.,* Motion, at 1. Monsanto advances these arguments without regard to the evidentiary record that Monsanto itself developed through documentary discovery and in the deposition of Mr. Schaffner.

Upon being transferred into the MDL, Mr. Schaffner timely served his Fact Statement. White Decl. Ex. 7, at page 220. Plaintiff's Fact Statement recited his employment history, medical history, and chemical exposure history. The Statement (as well as David Schaffner's complete medical record) was available to Monsanto at the time that it took Mr. Schaffner's deposition. If, for example, Monsanto believed that Mr. Schaffner's Fact Statement suggested he had substantial benzene exposure it was free to develop this in detail during Mr. Schaffner's deposition.

Curiously, Monsanto faults Dr. Schiff for not independently interviewing Mr. Schaffner and instead relying on the deposition of Mr. Schaffner *taken by Monsanto* in this case. Motion, at 5. In his report, Dr. Schiff reviewed each and every risk factor identified in Plaintiff's Fact Statement and/or explored by Monsanto during Mr. Schaffner's deposition. In his report, Dr.

2

Schiff observed that the evidentiary record disclosed "extensive" Roundup exposure but no other clear risk factors for NHL.  *See* White Decl. at pages 184-85 (Schiff Report § 6).  Dr. Schiff observed:  "Other than Roundup exposure, a very limited smoking history, and certain other chemical exposures, *no risk factors for the development of lymphoma are identified in Mr. Schaffner's medical records or deposition testimony*."  White Decl. at 187 (Schiff Report § 9) (emphasis added).

Contrary to Monsanto's suggestion, Dr. Schiff did not just perfunctorily refer to Mr. Schaffner's Roundup exposure as "extensive."  This characterization was backed-up by Mr. Schaffner's detailed testimony (supported by photographic evidence) describing Mr. Schaffner's use of Roundup on virtually a daily basis as part of his employment.  Dr. Schiff observed Mr. Schaffner's Roundup exposure included employment as a groundskeeper at a private estate near Butler, Pennsylvania, and, as part of that full time job, regularly mixing Roundup from concentrate and applying hundreds of gallons of Roundup to keep the estate weed free.  This employment, which lasted approximately four years, involved spraying Roundup from one to several hours per day three to five days per week during the growing season.  Mr. Schaffner's exposure to Roundup also included near daily use in his landscaping business and recurring use at his personal residences all leading up to 2006 when he developed NHL.  White Decl. 185, 187-88  (Schiff Report §§ 6, 9).

Monsanto's critique that Dr. Schiff failed to account for Mr. Schaffner's specific disease subtype, Motion, at 4, is similarly advanced without apparent regard for the actual text of Dr. Schiff's report.  Dr. Schiff's report specifically notes the linkage as documented in the general causation literature between diffuse large B cell non-Hodgkin lymphoma and Roundup exposure.  *See, e.g.,* White Decl. at 187 (Schff Report § 8 ("[T]wo such studies which included the largest

1   number of patients with diffuse large B-cell lymphoma have in fact identified statistically

2   significant association between glyphosate exposure and diffuse large B-cell lymphoma, the

3   specific non-Hodgkin lymphoma in Mr. Schaffner's case.") (citations omitted).

4     Contrary to Monsanto's suggestion, Motion, at 4, Dr. Schiff did not ignore or minimize

5   Mr Schaffner's documented or potential benzene exposure. Dr. Schiff explored the issue of

6   benzene exposure in considerable detail. He noted that the most extensive documented possible

7   exposure to benzene for Mr. Schaffner related to cigarette smoking. White Decl. 110-12 (Schiff

8   Dep. 108:9-109:23). But this exposure was limited to a total of five pack years many years

9   before he contracted NHL, "as opposed to his Roundup exposure which was very frequent, lasted

10  for a long time, and was intensive." White Decl. at 114 (Schaffner Dep. 112:6-12). Apart from

11  the limited smoking history addressed by Dr. Schiff, Monsanto has adduced no other evidence of

12  actual benzene exposure by Mr. Schaffner. Monsanto is left to point to the possibility

13  recognized by Dr. Schiff that at some point in his career Mr. Schaffner may have been exposed

14  to benzene through, for example, his work with latex paint. Motion, at 3. Such a hypothetical

15  possibility is arguably irrelevant and certainly not dispositive in the context of a case that is to be

16  decided under the substantial factor test. *See infra* footnote 5.

17    Similarly, and again contrary to Monsanto's assertions, Motion, at 3, Dr. Schiff did not

18  ignore Mr. Schaffner's history of possible inflammatory bowel disease. To the contrary, Dr.

19  Schiff instead pointed out that it was not documented that Mr. Schaffner actually had irritable

20  bowel disease, particularly at a time relevant to his development of NHL. White Decl. 102

21  (Schiff Dep. 101:3-7); White Decl. at 113 (Schiff Dep. 112:17-18).

In short, Dr. Schiff carefully assessed Mr. Schaffner's exposure history and his medical history. Monsanto's assertion that he failed to consider significant risk factors is not supported by the actual text of his report or his deposition testimony.

### III. Monsanto Mischaracterizes Dr. Schiff's Methodology

Monsanto claims that Dr. Schiff has failed to adhere to the established methodology by which an expert may identify a probable cause of a disease. Motion, at 3. *Cf.* PTO No 85 at 1-2. This attack simply ignores the process followed by Dr. Schiff as set out in his report and explained in his deposition.

Based on his review of the factual record as developed by Monsanto, coupled with his knowledge of the general causation research regarding NHL and Roundup, Dr. Schiff concluded to a reasonable degree of medical certainty, that "Roundup was a substantial factor in causing Mr. Schaffner's non-Hodgkin lymphoma." White Decl. at 189 (Schiff Report § 10).[3] Dr. Schiff reached his conclusion by following standard diagnostic practices as described, for example, in PTO 85. Dr. Schiff ruled-in Roundup as a probable substantial factor in causing Mr. Schaffner's NHL given his exposure history, medical record, and the general causation studies that have attributed NHL, particularly diffuse large B cell lymphoma, to Roundup exposure. He ruled-out other potential causes that could be gleaned from the evidentiary record as developed by Monsanto. These included, for example, benzene exposure associated with smoking and irritable bowel disease. Additionally, he discussed a number of other conceivable risk factors including for example Mr. Schaffner's possible history of eczema but pointed out that this condition is a

---

[3] Monsanto chides Dr. Schiff for using the term "differential ideology" rather than differential diagnosis. Motion, at 3. This critique is advanced without regard to the Court's prior recognition that the term "differential ideology" is actually more appropriate. PTO 85 , at 2 n.2.

5

risk factor for only certain cancers, not diffuse large B cell non-Hodgkin lymphoma. Dr. Schiff's report details numerous additional risk factors, such as a family history of cancer or immune deficiency, but then points out that no such condition is found in Mr. Schaffner's medical history. White Decl. at 187-88 (Schifff Report § 9).

Despite working through (and finding no substance to) a score of risk factors, Dr. Schiff did not go so far as to say that Mr. Schaffner's NHL could not in any way be attributed in part to any other cause or condition. Monsanto faults him for this. Motion at 5. However, Plaintiff submits that the position taken by Dr. Schiff as to the (undocumented) possibility that some other factor may have contributed to Mr. Schaffner's NHL, is not as Monsanto suggests a basis for excluding his testimony but instead underscores the useful and credible nature of his testimony. Moreover, as will be shown below, the position expressed by Dr. Schiff is wholly consistent with the repeated rulings of the Ninth Circuit. Dr. Schiff's testimony in this regard, which Monsanto chooses not to quote, is as follows:

> [t]he one thing that I want to be very clear about as I have been in other Roundup depositions is that there is such a thing as multifactorial causation of disease. . . . It's highlighted by the fact that both smoking and asbestos exposure contribute to cause lung cancer . . . . If you have one risk factor, it certainly doesn't cancel out or negate any others. His [Mr. Schaffner's] Roundup exposure is a fact. It's quite well documented. If there were other exposures perhaps beyond what we even know about from his medical records or deposition testimony, so be it.
> But you can't take away from the fact that [sic] his Roundup exposure or the fact that Roundup has been implicated in the causation of non-Hodgkin lymphoma.

White Decl. 114-115 (Schiff Dep. 113:25-114:25).

## LEGAL STANDARD

The Court has already recognized that Plaintiffs in the Roundup litigation are entitled to call qualified expert witnesses to testify with respect to the issue of specific causation. PTO 85.

This right has been affirmed by the U.S. Court of Appeals for the Ninth Circuit. *Hardeman v. Monsanto Co.,* 997 F.3d 941, 966 (9th Cir. 2021). The standards for the admissibility of expert witness testimony are recited in these decisions and are not seriously in dispute in relation to the instant Motion.

## ARGUMENT

### I. The Court Should Reject The Unattainable Standard For Expert Testimony Proposed By Monsanto

Given the Court's ruling as to the admissibility of Plaintiffs' evidence regarding general causation and the extensive evidence of Mr. Schaffner's exposure to Roundup, Monsanto is left to characterize Dr. Schiff's methodology as being in some vague manner uniquely deficient. Monsanto is taking this position in the context of a case in which it failed during the deposition of Mr. Schaffner to identify any concrete evidence of any exposure (other Roundup exposure) or condition that might plausibly explain the development of NHL by Mr. Schaffner at the age of 43 in the absence of any family history of cancer.

In substance, Monsanto is saying that, because Dr. Schiff could not rule out every conceivable cause of NHL, he should not be permitted to express his professional opinion that Roundup was a substantial contributing factor to Mr. Schaffner's NHL. Accepting the approach advocated by Monsanto would essentially mean that no expert could ever testify as to specific causation because no true expert could ever entirely rule out every conceivable cause that a defendant could hypothesize as an alternative to the substantial factor identified by the expert. Fortunately for injured plaintiffs, the unattainable standard advanced by Monsanto is not the law.

**II. Monsanto's Arguments Are Foreclosed By PTO 85 and Applicable Ninth Circuit Decisions**

A duly qualified expert witness's testimony is not to be excluded because the expert cannot definitively rule out every other possible factor in the plaintiff's development of a disease. *Wendell v. Glaxosmithkline LLC,* 858 F.3d 1227, 1237 (9th Cir. 2017) ("We do not require experts to eliminate all other possible causes of a condition for the expert's opinion to be reliable. *Messick [v. Novartis Pharm. Corp.,* 747 F.3d 1193] at 1199 [(9th Cir. 2017)]. It is enough that the proposed cause 'be a substantial causative factor. *Id.*'"). The reasoning of the *Messick* court quoted by the *Wendell* court is strikingly similar to Dr. Schiff's testimony quoted above. *See Messick,* 747 F.3d at 1198 (rejecting "unduly exacting" standard which would require expert to "'determine in a patient who has multiple risk factors at one time which of those particular factors is causing the disease.'") (citation omitted).[4]

In the specific context of a product liability claim against Monsanto seeking damages for NHL caused by Roundup, the Ninth Circuit recently upheld this Court's decision to admit expert testimony opining that Roundup was a "substantial factor" in the development of the plaintiff's NHL. *Hardeman, supra.,* 997 F.3d at 966. The Court of Appeals noted that the admission of such testimony was not a "outlier" position but instead represented a mainstream application of the Federal Rules of Evidence in relation to expert witnesses. *Id.* at 961.

Dr. Schiff has offered an opinion that is materially identical to the specific causation testimony admitted into evidence in *Hardeman* (both at the trial court level and as reviewed on

---

[4] Both *Wendell,* 858 F.3d at 1232, 1234, and *Messick*, 747 F.3d at 1197, cite the *Clausen v. m/v New Carissa,* 339 F.3d 1049 (9th Cir. 2003) decision upon which Monsanto relies. Thus, there is no reason to believe that *Clausen* imposes a more restrictive test than *Wendell* or *Messick* (both of which Monsanto opts not to discuss in its Motion).

appeal) and deemed to be admissible in both *Wendell* and *Messick*. This Court should reject Monsanto's effort to recharacterize issues and thus circumvent these binding decisions.[5]

## CONCLUSION

In sum, the arguments advanced by Monsanto are inconsistent with this Court's prior ruling as to the admissibility of specific causation expert testimony as well as multiple on-point decisions of the Ninth Circuit. Monsanto's Motion should be denied.

                                          Respectfully submitted,

Dated: October 6, 2021                          s/Adrian N. Roe

*Appearing Pro Hac Vice Per Pretrial Order No. 1*

Pa. Bar No. 61391
Roe & Simon LLC
428 Boulevard of the Allies
First Floor
Pittsburgh, PA
412-434-8187
aroe@roeandsimonllc.com

---

[5] Monsanto similarly ignores precedent when it argues that Dr. Schiff's testimony should be excluded because he would not testify that Mr. Schaffner would not have developed NHL if he had never been exposed to Roundup. Motion. at 5. *See Hardeman, supra.,* 997 F.3d at 968-969 (in a jurisdiction that follows the substantial factor test, it is improper to apply but-for causation; it is also possible in such a jurisdiction to find liability in the context of two or more concurrent independent causes.). *See, e.g., Rost v. Ford Motor Company,* 637 Pa. 625, 646, 151 A.3d 1032, 1044 (Pa. 2016) (Pennsylvania follows substantial factor test).

## CERTIFICATE OF SERVICE

I certify that, on this 6th day of October, 2021 I electronically served the foregoing Response in Opposition to Motion to Strike on counsel of record for Defendant Monsanto Corporation by means of the Court's electronic filing system.

s/Adrian N. Roe