Rhon E. Jones (JON093)
rhon.jones@beasleyallen,.com
William R. Sutton (SUT013)
william.sutton@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama 36103
Phone: (334) 269-2343
Fax: (334) 954-7555

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 |
| | Case No. 3:16-md-02741-VC |
| This document relates to: | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT BARRY BOYD UNDER RULE 702** |
| *Randall Dean Seidl v Monsanto Co.,* Case No. 3:17-cv-00519-vc | |

## I.      PRELIMINARY STATEMENT

This response in opposition addresses the arguments made against Mr. Seidl's specific causation expert, Dr. Barry Boyd.[1]

Monsanto's arguments in the instant motion rehash previously failed arguments framed as a "new" motion and under a misplaced standard from inapplicable case law. Monsanto does not dispute that the Plaintiffs' experts may use the differential etiology method upheld by the Ninth

---

[1] This responds to Doc # 49 and MDL Doc # 13910.

Circuit and this Court as the basis for their opinions (PTO 85 at p. 2), or that the experts misuse the studies. Instead, Monsanto continues to argue that Dr. Boyd's opinions should be excluded because: (1) they fail to reliably consider and rule out other potential causes of NHL and (2) they fail to address idiopathy. Despite the new packaging, Monsanto's core arguments remain the same, and as before, must still fail.

## II.   DR. BOYD PROPERLY ASSESSED POTENTIAL ALTERNATIVE CAUSES FOR PLAINTIFF RANDALL SEIDL

Monsanto regurgitates the same argument this Court rejected in Docket No. 2799, *Pretrial Order No. 85*, this time pertaining to Dr. Boyd's evaluation of Mr. Seidl. The result should be no different here. In the Court's prior order, the Court noted "under Ninth Circuit case law, doctors enjoy wide latitude in how they practice their art when offering causation opinions."[2] "It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an 'obvious and known risk factor[]' is the cause of that plaintiff's disease."[3] Monsanto continues to argue the expert's "ruling out" is unreliable simply because it does not agree with Dr. Boyd's findings, not because Dr. Boyd failed to meet the standard for a proper differential diagnosis.[4]

Dr. Boyd did not causally rule out other risk factors as Monsanto claims. Rather, Dr. Boyd used his clinical judgment and extensive knowledge about the risk factors and still found Roundup to be a substantial contributing risk factor. Specifically, during his process of reviewing Mr. Seidl's records, he considered and evaluated potential risks that he thought were important and relevant to his analysis, including: age, gender, race, ethnicity, geography, family history of cancer including NHL and other hematological malignancies, tobacco and alcohol consumption, body

---

[2] The Court citing *Wendell v. GlaxoSmithKline LLC,* 858 F. 3d 1227, 1237 (9th Cir. 2017).
[3] *Id*. at 1235
[4] Monsanto has mangled Dr. Boyd's methodology to serve its own purpose to attempt to place it at odds with Dr. Schiff. However, Mr. Seidl has not retained Dr. Schiff in his case so any comparison between these two methodologies is improper. Dr. Boyd performed a differential diagnosis to reach his conclusions. Sutton Decl., **Ex. 1**, at 21. Further, Dr. Schiff and Dr. Boyd's methodologies focus on similar, if not the same, factors. *Compare* Sutton Decl., **Ex. 2**, at 79:7-11 *with* Sutton Decl., **Ex. 3**, at 90:19-23.

weight and diet, infections, exposure to certain chemicals and drugs, radiation exposure, immunocompromised state, autoimmune diseases, Mr. Seidl's other medical history, and non-glyphosate exposure. Sutton Decl., **Ex. 3**, at 11-14.

Dr. Boyd provided a thorough explanation of these potential risks in both his expert report and his deposition, however, Monsanto only argues that Dr. Boyd did not rule out age as a potential risk. This, however, is once again not an accurate summary of either Dr. Boyd's report or his testimony. Dr. Boyd testified that Mr. Seidl's age reflects the duration of time for his use of Roundup. Sutton Decl., **Ex. 2,** at 98:2–21. Age and time are related when evaluating "levels of exposure with potentially known risk factors that may explain in some individuals why they got [NHL] with increasing time." Sutton Decl., **Ex. 2**, 93:12 – 94:17. While Mr. Seidl's age provides a slight increase in risk of developing NHL, this factor alone, according to Dr. Boyd, provides an extremely low risk in developing NHL and cannot fully explain the development of his lymphoma. Sutton Decl., **Ex. 1**, at p. 13.

Lastly, Monsanto takes the position that Dr. Boyd's expert opinion reasoning closely tracks experts who were excluded in *Lipitor*, and based on this, his opinion should be excluded. *See* Monsanto Motion at p. 17. However, as this Court has previously stated in *Pretrial Order No. 85*, the Ninth Circuit's standard for expert opinions compared to the Fourth Circuit's standard in *Lipitor* is much wider so "district judges . . . must account for the fact that a wider range of expert opinions (arguably much wider) will be admissible in this circuit." *Id.* Monsanto's misplaced and improper expert standard taken from another circuit is yet another reason why Monsanto's motion should be denied.

### III.   PLAINTIFFS' EXPERTS NEED NOT EXCLUDE IDIOPATHY

Monsanto's "idiopathy" argument is similarly a rehash of the argument this Court also rejected in PTO 85. The Court wrote:

> Recognizing that "[m]edicine partakes of art as well as science," the Ninth Circuit's recent decisions reflect a view that district courts should typically admit specific causation opinions that lean strongly toward the "art" side of the spectrum. *Messick*,

747 F.3d at 1198; *see also Wendell*, 858 F.3d at 1237 ("The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." (*quoting Clausen*, 339 F.3d at 1060)).

* * *

Under Ninth Circuit caselaw, doctors enjoy wide latitude in how they practice their art when offering causation opinions. *See Wendell*, 858 F.3d at 1237 ("Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions supporting causation, we conclude that *Daubert* poses no bar based on their principles and methodology."). It is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an "obvious and known risk factor[]" is the cause of that plaintiff's disease. *See Wendell*, 858 F.3d at 1235. Here, the specific causation experts did that. Relying on the plaintiffs' admissible general causation opinions – which assert a robust connection between glyphosate and NHL – the experts concluded that glyphosate was a substantial factor in causing the plaintiffs' NHL.

Moreover, the experts relied heavily on the plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie (2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate and NHL. *See generally In re Roundup Products Liability Litigation*, 2018 WL 3368534, at *9-10. Thus, consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL. The Court may be skeptical of their conclusions, and in particular of the assumption built into their opinions from the general causation phase about the strength of the epidemiological evidence. But their core opinions – that the plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL – are admissible.

PTO 85 at pp. 5-6 (footnotes omitted).

Here, Dr. Boyd followed the same methodology as those experts previously addressed by the Plaintiffs' Bellwether experts. Specifically, Dr. Boyd relies heavily on Mr. Seidl's exposure levels in drawing his conclusion that Mr. Seidl had no other significant risk factors and was exposed to enough glyphosate to conclude that it was a substantial factor in causing Mr. Seidl's NHL. Monsanto's Motion should be denied.

### A. Dr. Boyd did consider whether Mr. Seidl's NHL was idiopathic.

Monsanto's repeated representation that Dr. Boyd failed to consider whether Mr. Seidl's cancer was idiopathic is false.  During his deposition, Dr. Boyd made it clear that he considered all potential causes, including it being idiopathic in nature.  Dr. Boyd opined that:

> Q How do we know, if someone has exposure to multiple promotional factors, which promotional factors caused their cancer to progress to the point that it was clinically apparent?
>
> A Well, it's -- again, getting back to my original argument, that it's dose and time, and the presence or absence of other potential risk factors. **That's what for me – specific causation, which is what we're talking about is, are there other potential causes that may actually explain this independent of the glyphosate or the Roundup.** And when you see those, you have to, you know, make a judgment . . . **If you don't see many of those risk factors, it says, Well, you know, I can't se anything else. You know, spontaneous maybe, but we know that there's no question that prolonged exposure over time may be an explanation that makes -- you know, makes huge sense when you look at the -- you know, particularly with him, how long he was exposed to it.**

Sutton Decl., **Ex. 2**, 76:11 – 77:14.

In other words, Dr. Boyd considered whether this cancer was idiopathic in nature.  However, based on his evaluation and Mr. Seidl's exposure history, he ruled idiopathy out. This methodology is precisely what the Ninth Circuit ruled was admissible when it stated:

> Moreover, the experts relied heavily on the plaintiffs' exposure levels in drawing their conclusions. All three experts noted the plaintiffs' extensive Roundup usage, and further explained – as did the plaintiffs' general causation opinions – that both the McDuffie (2001) and Eriksson (2008) studies showed a dose-response relationship between glyphosate and NHL. *See generally In re Roundup Products Liability Litigation*, 2018 WL 3368534, at *9-10. Thus, consistent with Ninth Circuit caselaw, the experts provided a basis for their conclusion that these plaintiffs fall into the category of Roundup users who developed NHL. The Court may be skeptical of their conclusions, and in particular of the assumption built into their opinions from the general causation phase about the strength of the epidemiological evidence. But their core opinions – that the plaintiffs had no other significant risk factors and were exposed to enough glyphosate to conclude that it was a substantial factor in causing their NHL – are admissible.

PTO 85 at pp. 5-6 (footnotes omitted).

### IV.    The Court has already ruled and rejected Monstanto's "flawed studies" argument

This Court, in PTO 85, rejected Monsanto's claim that it is entitled to prevail on its motion because the specific causation experts rely on the same studies as the general causation experts, calling Monsanto's argument "off point" because "at trial, [Plaintiffs' specific causation experts] basis for ruling in glyphosate will be the general causation opinions." PTO 85 at pp. 2-3. For the same reasons the Court denied Monsanto's motion regarding the Bellwether Plaintiffs, Monsanto's instant motion should be denied. Monsanto's position regarding the studies upon which the general causation experts rely is a rehash of a failed argument already rejected by this Court.

### V.    Conclusion

For the foregoing reasons, Plaintiff moves the Court to deny Monsanto's Motion to Exclude Dr. Boyd.

DATED: October 19, 2021

Respectfully submitted,

/s/William R. Sutton
Rhon E. Jones (JON093)
William R. Sutton (SUT013)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Fax: (334) 954-7555
rhon.jones@beasleyallen.com
william.sutton@beasleyallen.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of October, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern Division of California via the Court's CM//ECF Filing System, which shall send electronic notification to counsel of record.

/s/ William R. Sutton
William R. Sutton