Rhon E. Jones (JON093)
rhon.jones@beasleyallen,.com
William R. Sutton (SUT013)
william.sutton@beasleyallen.com
**BEASLEY, ALLEN, CROW, METHVIN,**
 **PORTIS & MILES, P.C.**
Post Office Box 4160
218 Commerce Street
Montgomery, Alabama 36103
Phone: (334) 269-2343
Fax: (334) 954-7555

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL NO. 2741 <br><br> Case No. 3:16-md-02741-VC |
| This document relates to: <br><br><br><br><br><br><br><br> *Randall Dean Seidl v Monsanto Co.,* <br> Case No. 3:17-cv-00519-vc | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WILLIAM SAWYER  UNDER RULE 702** |

**I. INTRODUCTION**

This response in opposition addresses the arguments made against Plaintiff's expert, William Sawyer[1]. William Sawyer, Ph.D. is a highly qualified toxicologist who is currently chief toxicologist of Toxicology Consultants and Assessment in New York. He is Board Certified in forensic medicine, toxicology, and pharmacology and is well published. Dr. Sawyer has more than

---

[1] This responds to Doc # 51 and MDL Doc # 13913

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF WILLIAM SAWYER UNDER RULE 702
3:17-cv-00519-vc and 3:16-md-02741-VC

31 years of experience in public health and forensic toxicology including five years of governmental service. Sutton Decl., Ex. 1, Dr. Sawyer CV. He is offering case specific opinions for Mr. Randall Seidl. The calculations of Roundup® exposure he relies on allows Dr. Sawyer to compare the specific Plaintiff's days of Roundup® use to the epidemiological data showing an increased risk of Non-Hodgkin Lymphoma (NHL). Dr. Sawyer also explains how Mr. Seidl has been exposed to Roundup based on the way he sprayed and the personal protective gear he wore. *See* Sutton Decl., Ex. 2, *Seidl* Rpt. at 15-21. Dr. Sawyer's same type of testimony was deemed admissible in *Johnson, Pilliod* and deemed admissible by the Ninth Circuit.

Likewise, here, Dr. Sawyer's opinion that Roundup® exposure was sufficient to cause Mr. Seidl's cancer, even if it alone does not satisfy Plaintiff's burden of proof, is admissible and helpful testimony, particularly where there are other experts that have also reviewed Randall Seidl's medical records and will be offering additional opinions concerning specific causation.

Monsanto's motion should be denied in full, and the jury should be allowed to consider Dr. Sawyer's testimony before reaching its conclusions, as have juries in other Roundup® trials. *See, e.g.*, *Johnson*, 2018 WL 5246323 at *1 (ECF #8692-2) (noting that "this case required the jury to resolve the complex scientific question of whether Plaintiff's exposure to GBHs caused his NHL," which it did with the help of "Dr. Sawyer, a toxicologist, [who] testif[ied] about various aspects of the science underlying GBHs.").[2]

## II. LEGAL STANDARD

Under Rule 702, reliable expert opinion testimony has to "'assist the trier of fact' either 'to understand the evidence' or 'to determine a fact in issue'"; and "the witness has to be sufficiently qualified to render the opinion" *Primiano v. Cook,* 598 F.3d 558, 563, (9th Cir. 2010) *as amended (Apr. 27, 2010).* However, "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id.; Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 816 (9th Cir. 2014); *Whitlock v. Pepsi Americas,* 527

---

[2] Glyphosate-based herbicides ("GBHs").

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF WILLIAM SAWYER UNDER RULE 702
3:17-cv-00519-vc and 3:16-md-02741-VC

Fed.Appx. 660, 661–662 (9th Cir. 2013) ("Because Dr. [William] Sawyer's opinion rests on a reliable foundation and is relevant to the task at hand it is admissible. Whether it proves causation is not a question of admissibility.").

"The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharmaceuticals Corp.,* 747 F.3d 1193, 1196 (9th Cir. 2014); *In re Roundup Products Liability Litigation* 390 F.Supp.3d 1102, 1152 (N.D. Cal. 2018) ("...opinions may be bolstered by Dr. Jameson's narrower opinions regarding glyphosate's ability to cause cancer in animals.") Under California law, one expert is not required to "expressly link together the evidence of substantial factor causation." *Hernandez v. Amcord Inc.,* 215 Cal.App.4th 659, 675 (2013).

It is entirely proper for an expert witness to rely on reports and opinions of other experts, particularly experts as qualified as Dr. Ritz, Dr. Weisenburger and Dr. Portier. *In re Roundup Products Liability Litigation* 358 F.Supp.3d 956, 959 (N.D. Cal. 2019) (...the important point is that these experts will not be repeating the analysis of the general causation experts, but rather relying on them to rule in glyphosate."); *Beck v. Koppers, Inc.,* (N.D. Miss. Feb. 2, 2006) No. 3:03 CV 60 P D, 2006 WL 270260, at *10 ("[Dr. William] Sawyer's dosage and risk assessment testimony (as long as the latter is based on Dahlgren's general causation testimony) meets the threshold requirements of Rule 702. It is undisputed that Sawyer is qualified by his knowledge and education to render his dosage and risk assessment testimony.

### III. ARGUMENT

**A. Dr. Sawyer is not Offering Any General Causation Opinions.**

During the general causation phase of this litigation the Court held that "plaintiffs need not establish any particular level of exposure." *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2018 WL 3368534, at *5 (N.D. Cal. July 10, 2018). Now that plaintiffs have gotten past the general causation phase, it will be helpful for the jury to understand how various factors such as lack of protective gear; the spraying equipment and the type of surfactant in the Plaintiff's specific

formulation affect the exposure routes of glyphosate into the body. This area of testimony will be helpful to the jurors as they evaluate the specific causation of whether Mr. Seidl's exposures were sufficient to be a substantial contributing factor to the development of his cancer. In the end, Dr. Sawyer evaluated the absence of other risk factors in Mr. Seidl's medical history, animal studies pertaining to glyphosate, and human epidemiological studies pertaining to glyphosate to opine that the exposure levels experiences were substantial contributing factors to Mr. Seidl's cancer. This specific causation opinion is admissible.

Even without a general causation opinion, Dr. Sawyer's exposure testimony is proper. Rule 702 provides that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 836 (9th Cir. 2011). The absorption of glyphosate is a fact in issue. Dr. Sawyer will assist the jury in understanding how glyphosate based formulations ("GBFs") are absorbed through the skin; how much glyphosate is absorbed through the skin; how protective clothing can help limit the exposure to GBFs; and how different equipment can affect exposure. *See* Sutton Decl., Ex. 3, Sawyer *Seidl* Dep. at 40:7-41:3. Dr. Sawyer goes over these factors as they apply to all users in great detail in his report. *See* Sawyer MDL Rep. 44-114, 113 (ECF #8572-3) ("Farmers who did not use rubber gloves had five times more glyphosate in their urine than those wearing protective gloves"). This is all useful information for the jury to determine how GBFs actually get into the body and how exposure can increase or decrease based on various factors.

**B. Dr. Sawyer's Case-Specific Opinions on Seidl are Reliable and Admissible.**

While Dr. Sawyer did not use the words "differential diagnosis" in his report, Dr. Sawyer may rely on other experts' testimony that a particular exposure or absorption level creates an NHL risk and then apply that result to a particular plaintiff. *See* Amended Pretrial Order No. 201.

It is anticipated that Dr. Sawyer's opinion will generally follow the testimony elicited at both the Johnson and Pilliod trials. Pilliod Tr. at 3104-3252 (ECF #8692-4); Johnson Tr. *At* 3587-

3679 (ECF #8692-3). Dr. Sawyer's testimony will further explain and clarify the testimony of the other general causation experts by explaining how Roundup® makes it from the bottle through the skin, into the body, and ultimately is distributed through the blood. *See e.g., In re Roundup Products Liability Litigation* (N.D. Cal. 2018) 390 F.Supp.3d 1102, 1152 (Drs. Ritz, Portier and Weisenburger's "opinions may be bolstered by Dr. Jameson's narrower opinions regarding glyphosate's ability to cause cancer in animals").

A jury's understanding of how certain factors increase or decrease exposure to Roundup is relevant to their consideration of whether or not Roundup was a substantial contributing factor to plaintiff's cancer and whether Monsanto was responsible for that increased exposure. *See e.g In re Roundup Products Liability Litigation* (N.D. Cal., Nov. 19, 2019) 2019 WL 6133745, at *1 ("...a state court might find that 3M Cattle's provision of a defective sprayer foreseeably caused Trosclair's cancer by increasing the amount of Roundup he absorbed through his skin."). It will be helpful for jurors to understand how Roundup® is capable of penetrating the skin and circulating to lymphocyte cells in order for them to decide whether Roundup can cause NHL.

## C. Dr. Sawyer makes Proper use of Epidemiology Studies to Form his Opinions.

Dr. Sawyer has been trained in epidemiology and he uses epidemiology in his every day practice. (ECF #8692-2 at 13-14, 16). In addition, Dr. Sawyer has been qualified to offer epidemiology opinions in the *Johnson* case and other cases. As noted by Judge Karnow in allowing Dr. Sawyer to testify, "Dr. Sawyer's conclusion was based on Johnson's exposure to glyphosate, the absence of other risk factors in his medical history, animal studies pertaining to glyphosate, and **human epidemiological studies pertaining to glyphosate**." *Johnson v Monsanto Co.*, No. CGC-16-550128, 2018 WL 2324413, at *15 (Cal.Super. May 17, 2018)) (emphasis added). However, here, Dr. Sawyer will only make use of the epidemiology studies as a means of comparing Seidl's dose to the dose in the epidemiology studies *See* Sutton Decl., Ex. 2, *Seidl* Rpt. At 29-30. He will be deferring detailed opinions on the epidemiology studies to epidemiologists. *Id.* at 24.

It is entirely proper for an expert witness to rely on reports and opinions of other experts, particularly experts as qualified as Dr. Riz and Dr. Portier. *Asad v. Cont'l Airlines, Inc.*, 314 F. Supp. 2d 726, 741 (N.D. Ohio 2004) ("an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts."). *Beck v. Koppers, Inc.,* No. 3:03 CV 60 P D, 2006 WL 270260, at *10 (N.D. Miss. Feb. 2, 2006) ("[Dr. William] Sawyer's dosage and risk assessment testimony (as long as the latter is based on Dahlgren's general causation testimony) meets the threshold requirements of Rule 702."); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F. Supp. 2d 505, 512 (D. Md. 2012) ("Courts in this circuit and across the country have consistently held that an expert may rely on the work of others when preparing an expert report"). *See also* Amended Pretrial Order 201.

**D. Dr. Sawyer's Dose Calculation is Sufficiently Reliable.**

Dr. Sawyer will base his dose calculation at trial on a generally accepted pesticide modeling technique, the UK Predictive Operator Exposure Model. (UK POEM). Defendant fails to present any evidence that this model does not yield reliable data. *See e.g. Nw. Coal. for Alternatives to Pesticides (NCAP) v. U.S. E.P.A*., 544 F.3d 1043, 1048–49 (9th Cir. 2008) (Rejecting argument that pesticide exposure modeling [a different model than the UK POEM] is unreliable where "Petitioners have presented no evidence that modeling does not yield reliable data. There is nothing inherently unreliable about the use of models...").

Dr. Sawyer notes that the UK POEM has been peer-reviewed, generally-accepted, used internationally and tested with a known rate of error.  *See* Sutton Decl., Ex. 2, *Seidl* Rpt. at 5. In fact, in the latest evaluation of glyphosate by EFSA in 2015 (upon which Monsanto relies) the UK POEM is used to estimate operator exposure to glyphosate. Even the 2015 Greim article written by Monsanto employee David Saltmiras cites the UK POEM stating "Systemic exposure of operators, as assessed for the EU reapproval of glyphosate, is predicted to be between 0.0034 (German BBA model, tractor-mounted ground-boom sprayer) and 0.226 mg/kg bw/day (UK POEM, hand-held-spraying to low targets, data not shown)."

In arriving at this absorption range, Dr. Sawyer correctly applies generally accepted guidelines from the OECD that "[t]he current default approach taken by nearly all regulatory agencies is to determine the dermal absorption value by adding the absorbed dose and the chemical remaining in the skin, following washing" *See* Sutton Decl., Ex. 2, *Seidl* Rpt. at 105.

Finally, Dr. Sawyer uses the UK POEM, not to establish a threshold dose for cancer causation, but simply to compare whether Mr. Seidl's exposure to glyphosate is similar to that of professional users. Under the UK POEM based on studies examining actual professional and amateur applicator, the empirical evidence demonstrates that home users generally have a higher rate of exposure than professional users due to the equipment used and lack of protective gear. *See* Sutton Decl., Ex. 2, *Seidl* Rpt. at 5.

**E. The Epidemiology Studies that Dr. Sawyer Relies on Support his Opinion that Roundup Provides an Increased Risk for Plaintiff Seidl's Follicular Lymphoma.**

Dr. Sawyer's opinions on specific causation are based on an epidemiology study that shows an increased risk of follicular lymphoma associated with glyphosate use. *See* Sutton Decl., Ex. 3, *Seidl* Dep. at 33:15-34:18. Dr. Sawyer points out that the increased risk association is close to statistically significant, however it just falls short due to the lower frequency of follicular lymphoma compared to Diffuse large cell B-cell lymphoma. *Id.* The rarity of follicular lymphoma compared to other types lends follicular lymphoma to be more difficult to statistically analyze. *Id.* at 34:1-4. This rarity however should not be a critical flaw. *See Wendell v. GlaxoSmithKlineLLC*, 858 F.3d 1227, 1235 (9th Cir. 2017) (*referencing Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 24 (1st Cir. 2011) (recognizing that the "rarity" of a particular form of leukemia was one reason that it would be "very difficult to perform an epidemiological study of the causes of [the disease] that would yield statistically significant results.")). Dr. Sawyer's opinions on specific causation should therefore not be excluded.

**F. Dr. Sawyer Did Consider Other Potential Causes of Each Plaintiff's NHL.**

With respect to other carcinogens, Dr. Sawyer properly "ruled in" and "ruled out" these factors. Dr. Sawyer conducted a thorough review of Mr. Seidl's family history, age; prior work history; operational hazards; home hazards; alcohol, tobacco, and drug history; and medical history as stated in his deposition. *See* Sutton Decl., Ex. 2, *Seidl* Rpt. at 4 (ECF #12793-8). Furthermore, Dr. Sawyer reviewed all relevant medical records. *Id.* at 176. Dr. Sawyer conducted a phone interview with Mr. Seidl (disclosed in his report) to get details on his exposure to Roundup and other carcinogens. *Id.* at 15. Dr. Sawyer read Mr. Seidl's deposition testimony that occurred on December 11, 2019. *Id.* at 7. Dr. Sawyer compared Mr. Seidl's exposure to GBFs to the exposure of subjects in epidemiological studies of glyphosate and calculated that Mr. Seidl's dose approached the maximum exposure metrics. *Id.* at 30.

Dr. Sawyer considered Mr. Seidl's other potential chemical, environmental, and occupational exposures, as well as various other factors that may have contributed to his cancer and considered them without merit. *See e.g.* Sutton Decl., Ex. 3, *Seidl* Dep. at 15:8-17:13 (ECF #12793-15). (discussing potential exposures at a work site and why these were not considered); *Id.* at 19:24-20:22 (discussing potential water contamination that occurred after his consumption of said water); *Id.* at 21:25-23:16 (discussing potential exposures at a work site and why these were not considered); *Id.* at 29:8-30 (discussing no exposure from a Superfund site); *Id.* at 47:10-52:11 (discussing which substances were tested and why). These supposed "failure[s] to properly consider, analyze, rule out, and testify about other potential causes of a . . . NHL" show quite the opposite: Dr. Sawyer considered the other potential chemical, environmental, and occupational exposures, as well as various other factors that may have contributed to Mr. Seidl's cancer.

**G. Monsanto's remaining arguments have previously been fully briefed.**

Monsanto regurgitates the same general arguments that it has previously raised concerning certain areas of Dr. Sawyer's testimony. Specifically, Monsanto once again argues that Dr. Sawyer's opinions concerning the George study and trace chemicals in Roundup should be excluded. Monsanto further repeats its argument that Dr. Sawyer should not be allowed to opine

on Monsanto Company documents and regulatory duties. Consistent with the Court's repeated instructions not to relitigate issues previously ruled upon and applying the principles in Pre-Trial Order 202, but in order to fully preserve the appellate record, Plaintiff hereby incorporates the following pleadings to the extent these documents address the identified arguments within this paragraph that were filed on the MDL docket:

- Plaintiffs' response to Motion to Exclude Testimony of Dr. William Sawyer on *Daubert* Grounds (ECF #8342).
- Plaintiffs' response to Motion to Exclude Testimony of Dr. William Sawyer on *Daubert* Grounds (ECF #8692).

## IV. CONCLUSION

The jury must decide in Phase II whether Randall Seidl proved by a preponderance of evidence that his exposure to Roundup was a substantial factor in causing his NHL. How Roundup permeated his body is the essential question that Dr. Sawyer answers as an expert toxicologist. For all the foregoing reasons, Monsanto's Motion to Exclude Dr. Sawyer's Testimony should be denied, and the jury permitted to hear this important testimony as have other juries.

DATED: October 19, 2021

Respectfully submitted,

/s/William R. Sutton
Rhon E. Jones (JON093)
William R. Sutton (SUT013)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Fax: (334) 954-7555
rhon.jones@beasleyallen.com
william.sutton@beasleyallen.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of October, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern Division of California via the Court's CM//ECF Filing System, which shall send electronic notification to counsel of record.

/s/ William R. Sutton
William R. Sutton