1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No: 3:16-md-02741-VC |
| *Troy Wilson Thomas and Josephine Ventura v. Monsanto Co.*, 3:20-cv-08051-VC | **DEFENDANT MONSANTO COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' SPECIFIC CAUSATION EXPERTS DR. MARC BRAUNSTEIN AND DR. RONALD KENDALL ON RULE 702 GROUNDS** |
| | Hearing date: December 13, 2021 Time: TBD |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................2

I.     Plaintiffs' Specific Causation Experts Fail To Reliably Consider and Rule
       Out Potential Alternative Causes Of His NHL. ....................................................2

       A.     To have an admissible specific causation opinion, Dr. Braunstein and
              Dr. Kendall must find that Roundup is the "most likely cause." ...........2

       B.     Dr. Braunstein did not reliably consider and rule out Mr. Thomas'
              alternative causes and risk factors. ..........................................................3

       C.     Dr. Kendall did not reliably consider and rule out Mr. Thomas'
              alternative causes and risk factors. ..........................................................6

II.    Dr. Braunstein And Dr. Kendall Failed To Reliably Rule Out Unknown
       Causes Of Mr. Thomas' NHL, Instead Concluding That Roundup Must
       Have Been the Cause. ...........................................................................................8

CONCLUSION ..................................................................................................................9

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Aredia & Zometa Prod. Liab. Litig.*,
5
    483 F. App'x 182 (6th Cir. 2012) ............................................................... 4

6

*Clausen v. M/V New Carissa*,
    339 F.3d 1049 (9th Cir. 2003)......................................................... 2, 3, 5, 6
7

*Cooper v. Takeda Pharms. Am., Inc.*,
8
    239 Cal. App. 4th 555 (2014)...................................................................... 2, 3

9

*Guinn v. AstraZeneca Pharm. LP*,
    602 F.3d 1245 (11th Cir. 2010)................................................................... 5
10

*Hardeman v. Monsanto Co.*,
11
    997 F.3d 941 (9th Cir. 2021)......................................................... 3, 5, 6, 8

12

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir. 1999)....................................................................... 3
13

14

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
    892 F.3d 624 (4th Cir. 2018)...................................................................... 4
15

*Marmo v. Tyson Fresh Meats, Inc.*,
16
    457 F.3d 748 (8th Cir. 2006)...................................................................... 6

17

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005)................................................................... 4
18

19

*Rosenfeld v. U.S. Dep't of Justice*,
    903 F. Supp. 2d 859 (N.D. Cal. 2012) ...................................................... 5
20

21

*Rutigliano v. Valley Bus. Forms*,
    929 F. Supp. 779 (D.N.J. 1996), *aff'd*, 118 F.3d 1577 (3d Cir. 1997).................................... 7

22

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, No. 6:15-cv-641, 2017 WL
23
    11457208, at *2 (M.D. Fla. Apr. 13, 2017) ............................................. 8

24

*Wendell v. GlaxoSmithKline, LLC*,
    858 F.3d 1127 (9th Cir. 2017)........................................................ 2, 3, 5, 6
25

26

*Wilson v. Taser Int'l, Inc.*,
    303 F. App'x 708 (11th Cir. 2008) ........................................................... 3

27

**Other Authorities**

28

National Research Council, *Reference Manual on Scientific Evidence* (3d Ed. 2011)............... 6, 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs' Response Brief (MDL ECF No. 13902) confirms that their specific causation experts, Dr. Marc Braunstein and Dr. Randall Kendall, fall far short of the admissibility standard this Court established in Pretrial Order 85 ("PTO 85") (MDL ECF No. 2799).  Despite what they now claim, Dr. Braunstein and Dr. Kendall have *not* followed the same methodology as the experts previously admitted in the initial federal trials.

Unlike the specific causation opinions the Court previously admitted, Dr. Braunstein and Dr. Kendall do not rule out or weigh other potential risk factors, including Mr. Thomas' known risk factors that they admit can cause NHL, obesity and a family history of cancer.  Instead, for both experts, the only relevant question is whether Mr. Thomas was exposed to some threshold amount of Roundup®-branded products ("Roundup") and later developed NHL.  And neither Dr. Braunstein nor Dr. Kendall offer a means to address idiopathy—*i.e.,* "differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," PTO 85 at 4—which the Court previously held is required for admissibility.

In defense of Dr. Braunstein, Plaintiffs just assert that he ruled out alternative causes, but continue to provide no reason for why he concluded that Roundup is more likely to have been the cause of Mr. Thomas' NHL than obesity or a family history of cancer.  And Plaintiffs do not even attempt to defend the "reasons" Dr. Braunstein provided in his report (that Mr. Thomas was just obese, not morbidly obese, and that his father had prostate cancer, not NHL), both of which he dispelled in depositions by admitting that there is an association between NHL and obesity (not just morbid obesity), as well as between NHL and first-degree relatives with cancers other than NHL.

Worse yet, Plaintiffs argue that Dr. Kendall *appropriately ignored* the very real prospect that medical causes other than Roundup caused Mr. Thomas' NHL since he is a toxicologist, not a medical doctor.  The problem with this argument is that Dr. Kendall purports to reach a conclusion about the ultimate cause of Mr. Thomas' NHL, not merely whether he had other chemical exposures that might have contributed to his NHL.  Dr. Kendall has no basis for such a conclusion.  The case law is clear that a specific causation expert—toxicologist or not—must grapple with all plausible alternative causes and have a reliable basis to conclude that the exposure at issue (here, Roundup) was the "most

likely cause" of the plaintiff's disease.  Dr. Kendall has not done that.

Neither of Plaintiffs' experts has performed a reliable differential etiology/diagnosis in accordance with the standard set by PTO 85.  The Court should exclude their opinions.

## ARGUMENT

### I.  Plaintiffs' Specific Causation Experts Fail To Reliably Consider and Rule Out Potential Alternative Causes Of His NHL.

In its Motion, Monsanto established that Mr. Thomas has at least two other known risk factors—obesity and a family history of prostate cancer—for which Dr. Braunstein and Dr. Kendall lack a principled reason to rule out or conclude are less likely to be the cause of Mr. Thomas' NHL than Roundup.  *See* Mot. at 4-5, 7-9.  As a result, neither expert has performed a reliable differential etiology/diagnosis, or has a foundation to conclude that Roundup is the "most likely cause" of Mr. Thomas' NHL.  *Id.* at 3 (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003)).

Plaintiffs spend a large portion of their Response Brief defending Dr. Kendall and Dr. Braunstein's qualifications.  Resp. Br. at 1-2, 4, 7.  Monsanto, however, is not arguing that either expert is unqualified, just that their opinions are unreliable because they brushed aside potential known and unknown causes of Mr. Thomas' NHL to a reach their pre-ordained conclusion that Roundup is always to blame for every plaintiff's NHL.

Plaintiffs also make various other arguments about the applicable legal standard and Dr. Braunstein and Dr. Kendall's particular methodologies, none of which have any merit.

### A.  To have an admissible specific causation opinion, Dr. Braunstein and Dr. Kendall must find that Roundup is the "most likely cause."

As initial matter, Plaintiffs argue that Dr. Braunstein and Dr. Kendall "need not analyze every conceivable risk factor to satisfy *Daubert*."  Resp. Br. at 10-11 (citing *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1127 (9th Cir. 2017) and *Cooper v. Takeda Pharms. Am., Inc.*, 239 Cal. App. 4th 555 (2014)).  Plaintiffs' argument misses the point of Monsanto's Motion.  Monsanto is not arguing that Plaintiffs' experts should be excluded for failing to address some hypothetical or remote risk factor.  Plaintiffs' experts ignored known risk factors that the evidence shows are plausible alternative causes.  Even if the experts did not need to rule out *all* alternative causes, they at least had to rule out *plausible*

alternative causes.  *See, e.g.*, *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) ("Although a medical expert need not rule out every possible alternative in order to form an opinion on causation, expert opinion testimony is properly excluded as unreliable. . . if 'the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness.'") (quotation omitted); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) ("where a defendant points to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable") (quotation omitted); *cf. Cooper v. Takeda Pharms. Am., Inc.*, 239 Cal. App. 4th 555, 86 (2015) (the expert must rule out causes for which "there is no substantial evidence that [they] acted on [the plaintiff] and provided an alternative explanation for his disease").

This rule is consistent with all the Ninth Circuit cases, including *Wendell*.  Each case confirms that a differential diagnosis/etiology is only admissible if the expert has a reliable basis to conclude that the product at issue is the most likely cause of the plaintiff's illness.  *See Clausen*, 339 F.3d at 1057 (in the second step of a differential etiology, an expert must "engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the *most likely cause* of the findings in that particular case) (emphasis added); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 966 (9th Cir. 2021) ("To establish specific causation, experts needed to show that [the plaintiff's] NHL was caused by glyphosate, *rather than some other factor*.") (emphasis added); *Wendell*, 858 F.3d at 1234 (explaining that a differential diagnosis involves ruling out alternative causes "as to which there is no plausible evidence of causation, and then determin[ing] the *most likely cause* among those that cannot be excluded") (emphasis added); *see also Cooper*, 239 Cal. 4th at 583-84 (finding the expert had a reliable basis to testify that the drug in question was "the *most* substantial factor in causing [the plaintiff's] bladder cancer").

As discussed below, Dr. Braunstein and Dr. Kendall have not complied with this standard.

**B.      Dr. Braunstein did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors.**

In its Motion, Monsanto established that Dr. Braunstein did not seriously consider the

- 3 -

possibility that Mr. Thomas' other known risk factors, including obesity and a father who had prostate cancer, were a more or equally likely cause of Mr. Thomas' NHL than Roundup.  *See* Mot. at 5, 7-8.  Dr. Braunstein casually dismissed these risk factors despite acknowledging that the scientific literature shows that people with obesity and a first-degree relative with a history of cancer both have an elevated chance of developing NHL.  *Id.* at 8 (citing Dr. Braunstein's deposition testimony).

In their Response Brief, Plaintiffs hardly defend Dr. Braunstein's reasoning for brushing aside Mr. Thomas' known NHL risk factors.  Instead, they primarily argue that Dr. Braunstein purports to the use the same methodology as Monsanto's experts and the first round of experts in this MDL.  Resp. Br. at 2, 4.  But merely invoking the term differential diagnosis/etiology does not shield Dr. Braunstein from scrutiny.  The case law makes clear that although a differential diagnosis/etiology may be an admissible methodology, it is only admissible if the expert "reliably rule[s] in the possible causes of it, and reliably rule[s] out the rejected cause."  *See* Mot. at 6 (quoting *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188 (6th Cir. 2012)).  Courts reject Plaintiffs' exact argument when, as here, the expert applied a differential etiology/diagnosis in name only.  *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 642–45 (4th Cir. 2018) ("simply calling an analysis a differential diagnosis doesn't make it so"); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005) ("[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient.").

All Plaintiffs can muster to defend Dr. Braunstein's evaluation of Mr. Thomas' obesity as a risk factor is to repeat his unsupported conclusion that obesity "is not in [his] opinion responsible for the development of [Mr. Thomas'] DLBCL."  Resp. Br. at 6 (quoting White Decl., Ex. 6, Braunstein Report).[1]  But, notably, Plaintiffs' Response Brief provides no reason *why* Dr. Braunstein reached this conclusion.  *Id.*  Dr. Braunstein has no reason.  The only one he offered in his report was that Mr. Thomas did not have morbid obesity, but as explained in Monsanto's Motion, Dr. Braunstein dispelled his own "rationale" during depositions in other MDL cases when he testified that the link

---

[1] Citations to "White Decl." are to the September 22, 2021 Declaration of Jed P. White filed in support of this Motion, which included eight exhibits.  *See* MDL ECF No. 13786.

between obesity and NHL applies for non-morbid obesity too and he could not rule out obesity as a risk factor for a plaintiff with a lower BMI than Mr. Thomas.  *See* Mot. at 8.

Plaintiffs say *nothing* to defend Dr. Braunstein's failure to rule out or actually analyze whether Mr. Thomas' family history of cancer was the most likely cause of Mr. Thomas' NHL.  *See id.* at 4-6.  As Monsanto established in its Motion, Dr. Braunstein's only justification for discounting this risk factor—that Mr. Thomas' father had prostate cancer, not NHL—is insufficient because Dr. Braunstein acknowledged that there is an association between having first-degree relative with a history of cancer other than NHL and the development of NHL.  *See* Mot. at 8.  Plaintiffs' failure to respond to this point is a waiver of any argument that Dr. Braunstein reliably ruled out Mr. Thomas' family history of cancer as a risk factor.  *See Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (quotation omitted).

Unable to defend Dr. Braunstein's analysis, Plaintiffs return to their mantra that Dr. Braunstein "need not take into account all of the potential risk factors to conclude that the one at issue in this litigation . . . is a substantial contributing factor."  Resp. Br. at 4.  Once, again, however, this mischaracterizes the governing standard, which is that an admissible differential diagnosis/etiology must weigh competing causes to find the "most likely cause."  *See Clausen*, 339 F.3d at 1057; *Hardeman*, 997 F.3d at 966; *Wendell*, 858 F.3d at 1234.  Put another way, if Mr. Thomas' NHL had another cause, then Dr. Braunstein lacks a reliable basis to conclude that Roundup was a "substantial contributing factor."  *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) (even if a disease may have multiple causes, an expert "cannot merely conclude that all risk factors for a disease are substantial contributing factors in its development").  Plaintiffs are essentially arguing that once Dr. Braunstein "ruled in" Roundup, he was free to conclude that Roundup was a "substantial contributing factor," without conducting the second essential part of a differential etiology/diagnosis.  That is not the law or consistent with PTO 85.  The Court should reject Plaintiffs' attempt to turn the Rule 702 inquiry into a box-checking exercise devoid of serious scrutiny.

1

2

**C.      Dr. Kendall did not reliably consider and rule out Mr. Thomas' alternative causes and risk factors.**

3

4

5

6

7

8

Monsanto's Motion established that Plaintiffs' other specific causation expert, Dr. Kendall, did not evaluate or rule out the other plausible, known explanations for why Mr. Thomas developed NHL, including his obesity and family history of cancer.  *See* Mot. at 4-5, 8-9.  Plaintiffs do not dispute this.  Instead, they argue that Dr. Kendall does not need to address "medically-induced causes of Mr. Thomas's NHL" because he is an environmental toxicologist, not a medical doctor.  *See* Resp. Br. at 11.

9

10

11

12

13

14

15

Plaintiffs' argument might be fair if Dr. Kendall was seeking to just offer the opinion that he does not believe Mr. Thomas had been exposed to toxic substances other than Roundup.  But that is not his proffered opinion.  Dr. Kendall concludes that Mr. Thomas' Roundup exposure "is a substantial contributing factor to his development and subsequent diagnosis of his large B-cell non-Hodgkin's lymphoma."  White Decl., Ex. 3, Braunstein Report, p. 14.  Dr. Kendall, however, has no basis to reach this specific causation opinion because, as Plaintiffs admit, he did not even consider whether there are other medically-related explanations for why Mr. Thomas developed NHL.

16

17

18

19

20

21

22

23

24

25

26

27

In order to offer a specific causation opinion, Dr. Kendall must offer a reliable way to conclude that Roundup—and not some other NHL risk factor—was the cause of Mr. Thomas' NHL.  *See* PTO 85 at 4; *Clausen*, 339 F.3d at 1057; *see also Hardeman*, 997 F.3d at 966; *Wendell*, 858 F.3d at 1234.  It does not matter that Dr. Kendall is a toxicologist or that he did not call his methodology a differential diagnosis/etiology.  He still must account for alternative causes to have a basis to conclude that Roundup was a substantial contributing factor to Mr. Thomas' NHL.  *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming exclusion of toxicologist's expert opinions where the toxicologist did not "exclude confounding factors, which leaves open the possibility of competing causes of the disease and raises questions about the competency of expert testimony") (internal quotation marks, citation omitted); National Research Council, *Reference Manual on Scientific Evidence*, p. 665 & 670-72 (3d Ed. 2011) (a toxicologist performing a specific causation analysis must account for and address "other disease-causing factors (also known as confounding

28

MONSANTO'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE DRS. BRAUNSTEIN AND KENDALL
3:20-cv-08051-VC

factors)," including the plaintiff's family and personal medical history)[2]; *Rutigliano v. Valley Bus. Forms*, 929 F. Supp. 779, 786 (D.N.J. 1996), *aff'd*, 118 F.3d 1577 (3d Cir. 1997) ("Courts have insisted time and time again that an expert may not give opinion testimony to a jury regarding specific causation if the expert has not engaged in the process of differential diagnosis—that is, the process of eliminating other possible diagnoses.").

Ironically, Plaintiffs go on to argue that Dr. Kendall's approach was consistent with the first round of experts admitted by this Court who relied on their "clinical experience," a "review of a plaintiff's medical records," and an "evaluation of the general causation evidence." *See* Resp. Br. at 9 & n.1 (citing PTO 85 at 5). But, as Plaintiffs concede, Dr. Kendall does not have clinical experience and he did not analyze Mr. Thomas' medical conditions. *See id.* at 11 ("[Dr. Kendall] does not have medical patients.  He does not make medical diagnoses.  He does not craft a differential medical diagnoses."). Dr. Kendall is a different kind of specific causation expert than the experts admitted in PTO 85, with no methodology to account for confounding causes.  There is nothing "specific" about his causation analysis.  It would deem Roundup to be a "substantial contributing factor" for any individual anywhere in the world, regardless of their other medical conditions, who alleges he or she was exposed to his hypothetical threshold amount of Roundup.  This results-driven process is not a reliable specific causation analysis and should be excluded.

Additionally, Dr. Kendall's opinions should be excluded as unreliable because he copied portions of his report from another expert in the Roundup litigation, Dr. Sawyer.  *See* Mot. at 9, n.2. Plaintiffs responded to this argument by submitting an affidavit from Dr. Kendall in which he states he did not intentionally plagiarize or copy Dr. Sawyer's report.  *See* Resp. Br. at 9 & Ex. 5.  Dr. Kendall, however, provides no explanation at all for why significant portions of his report are nearly identical to Dr. Sawyer's prior report in one of the Wave 2 cases (*Schafer*).  Those sections include "Comparison of Exposure Days to Human Epidemiological Studies," "Evidential Considerations," "Mechanism of Carcinogenicity," "Latency of non-Hodgkin's Lymphoma," "Scope of Exposure in Comparison to Epidemiological Studies," and "Summary and Conclusions."  *Compare* White Decl.,

---

[2] *Available at* https://www.nap.edu/read/13163/chapter/13#665

Ex. 3, Kendall (*Thomas*) Report at 11-16, *with* Ex. 8, Sawyer (*Schafer*) Report at 33, 38-39, 188-91; *see also, e.g.*, White Decl., Ex. 1 Kendall (*Thomas*/Savory) Dep. at 208:2-4 (admitting a section of his report "looks" "identical" to Dr. Sawyer's report); 213:23-214:3 (acknowledging "every single word" other than the plaintiff's name is "exactly the same" between a section of his report and Dr. Sawyer's report).  This is an additional reason to exclude Dr. Kendall's opinion.  *See* Mot. at 9, n.2 (citing two cases finding expert testimony unreliable because it appeared to be copied from another expert's report).   Indeed, while Dr. Kendall's copying of Dr. Sawyer's report might not be an automatic reason to exclude his testimony, the fact that he still refuses to acknowledge his copying certainly renders his opinions unreliable and inadmissible, and should not be condoned by this Court. *See, e.g.*, *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, No. 6:15-cv-641, 2017 WL 11457208, at *2 (M.D. Fla. Apr. 13, 2017) (finding an expert's "report is unreliable and must be excluded" due to her "attempt to appropriate the opinions of [another expert] and play them off as her own").

II.     **Dr. Braunstein And Dr. Kendall Failed To Reliably Rule Out Unknown Causes Of Mr. Thomas' NHL, Instead Concluding That Roundup Must Have Been the Cause.**

Plaintiffs hardly defend their experts' failure to address the undisputed fact that the vast majority of NHL cases have no known cause.  *See* Mot. at 9-11.  As shown in Monsanto's Motion, Dr. Braunstein and Dr. Kendall acknowledge that most NHL cases are idiopathic and they have no means to address idiopathy: in fact, both experts' reports ignore idiopathy altogether.  *Id.* (citing White Decl., Exs. 3 & 6).  Moreover, unlike the first round of experts, Dr. Braunstein and Dr. Kendall do not quantify Mr. Thomas' exposure levels in a reliable manner, so cannot rely on exposure levels as a means to rule out idiopathy as the most likely cause.  *Id.*; *cf.* PTO 85 at 6.

Plaintiffs do not respond to this argument, other than by incorporating the first wave of plaintiffs' response to Monsanto's motion to exclude their specific causation experts (MDL ECF No. 2478) and Hardeman's response to Monsanto's Motion for Judgment as a Matter of Law and for a New Trial (MDL ECF No. 4135).  *See* Resp. Br. at 11.  Those briefs, however, concerned different experts who performed different analyses to address idiopathy.

Plaintiffs apparently believe the Court's prior ruling means that the issue of idiopathy is resolved for all future plaintiffs in this MDL, even if they offer different experts who have failed to

address idiopathy entirely.  That is not the case.  *See Hardeman*, 997 F.3d at 976 ("Different Roundup cases may present different considerations, leading to different results. . . . much of this expert testimony was unique to Hardeman's specific case. Thus, it would not be unreasonable for the district court to revisit the admissibility of expert testimony based upon the facts raised in future cases."). The Court's clear instruction in PTO 85 is: "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless."  PTO 85 at 4.  Plaintiffs and their experts ignore this directive, rendering their analyses unreliable and inadmissible.

### CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation experts, Dr. Braunstein and Dr. Kendall, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case.


Dated:  October 19, 2021               Respectfully submitted,

                                        */s/ Jed P. White*
                                        Attorney for Defendant Monsanto Company

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of October, 2021 a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Jed P. White*
Jed P. White