**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP® PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>*Vosper v. Monsanto Co.*, 3:19-cv-05525-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER UNDER RULE 702**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE
TESTIMONY OF DR.WILLIAM SAWYER UNDER RULE 702

1   Plaintiffs' opposition confirms that the Court should exclude Dr. Sawyer's opinions because

2   they are not based on any reliable methodology.  Plaintiffs make key concessions regarding Dr.

3   Sawyer's anticipated testimony.  Plaintiffs concede that Dr. Sawyer is not offering a general

4   causation opinion, *see* Plaintiffs' Opposition to Monsanto's Motion to Exclude Testimony of Dr.

5   William Sawyer Under Rule 702, ECF No. 13946 ("Pls.' Opp'n") at 5-6, and that Dr. Sawyer will not

6   offer opinions about the "intent or state of mind of Monsanto" or about labeling requirements.  *Id.* at

7   13-15.  At a minimum, the Court should grant Monsanto's Motion to the full extent of Plaintiffs'

8   concessions, and, for the reasons discussed below and in Monsanto's Opening Brief, ECF No. 13779

9   ("Def.'s Br."), Dr. Sawyer's flawed opinions regarding specific causation, the George study, alleged

10   trace chemicals, and Monsanto company documents also should be excluded in their entirety.[1]

11   **I.    The Court Should Exclude Dr. Sawyer's General Causation Opinions.**

12   Plaintiffs concede that Dr. Sawyer will not offer "any general causation opinions."  *See* Pls.'

13   Opp'n at 5-6.  The Court should grant Monsanto's Motion to exclude Dr. Sawyer from offering his

14   opinions on general causation and enter an order preventing Dr. Sawyer from offering any general

15   causation opinions.

16   **II.    The Court Should Exclude Dr. Sawyer's Specific Causation Opinions.**

17   Plaintiffs' opposition all but concedes that Dr. Sawyer has not offered a proper specific

18   causation opinion by failing to address Monsanto's arguments concerning Dr. Sawyer's significant

19   exposure day miscalculations.  *See generally* Pls.' Opp'n (devoid of any mention of Dr. Sawyer's

20   miscalculations).  Without even acknowledging this flagrant misstep in Dr. Sawyer's methodology,

21   Plaintiffs simply argue in general that Dr. Sawyer's methodology and his application of it was

22

23

24   [1] Simply because Dr. Sawyer has testified in other Roundup® cases does not automatically give him a free pass to offer any opinions he so chooses without scrutiny.  *See Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) (affirming exclusion of expert and rejecting suggestion that "the

25   number of [the expert's] court appearances in design-defect cases" could take the place of an individualized *Daubert* inquiry).  Rather, this Court must undertake an independent assessment of Dr.

26   Sawyer's qualifications, the opinions that he seeks to offer, and the bases for those opinions in deciding whether Dr. Sawyer's opinions are admissible in this case.  *See, e.g., Wheeling Pittsburgh Steel Corp.*

27   *v. Beelman River Terminals*, Inc., 254 F.3d 706, 715 (8th Cir. 2001) ("[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors

28   in deciding the *specific issues in the case*.") (emphasis added; citation omitted)).

- 1 -

1   "sufficient."  *See* Pls.' Opp'n at 6–10.  Plaintiffs have failed to explain how such an opinion would

2   meet *Daubert*'s standards.

3            *First*, Plaintiffs do not and cannot dispute that Dr. Sawyer is merely counting exposure

4   days—which he did so inaccurately—and comparing that number to data points from epidemiology

5   studies that he has not attempted to analyze.  As explained in Monsanto's Opening Brief, Dr. Sawyer

6   has testified that he would defer to epidemiologists on virtually every aspect of the epidemiology

7   studies.  *See* Def.'s Br. at 3, 9.  Indeed, he relied on the six epidemiology studies referenced in his

8   expert report "primarily with respect to <u>dose assessment</u>" then calculated—albeit it incorrectly—

9   Mr. Vosper's exposure days.  *See* Def.'s Br. at 7 (quoting Sawyer *Vosper* Rep. at 33 (emphasis

10  added)).  Plaintiffs assert that Dr. Sawyer's exposure day calculation methodology was found to be

11  admissible by the Ninth Circuit.  But Plaintiffs misrepresent the Ninth Circuit's decision in *Whitlock*

12  *v. Pepsi Americas*, 527 F. App'x 660 (9th Cir. 2013).  *See* Pls.' Opp'n at 2-3 (citing *Whitlock*).  In

13  *Whitlock*, Dr. Sawyer calculated the plaintiffs' trichloroethylene ("TCE") quantitative doses in

14  support of his specific causation opinions.  *See Whitlock v. Pepsi Americas*, No. C-08-2742 SI, 2011

15  WL 7287174, at 3-27 (N.D. Cal. June 5, 2011) (Dr. Sawyer expert report outlining "TCE Dose

16  Calculations"); *Whitlock v. Pepsi Americas*, No. C-08-2742 SI, 2010 WL 8424634, at 128:21–129:2

17  (N.D. Cal. Oct. 28, 2010) (Dr. Sawyer deposition testimony discussing minimum TCE exposure dose

18  for cancer causation), *Whitlock v. Pepsi Americas*, No. C-08-2742 SI, 2010 WL 8424636, at 322:8-14

19  (N.D. Cal. Oct. 29, 2010) (same).  The *Whitlock* court found Dr. Sawyer's *dose calculation* analysis

20  to be admissible.  527 F. App'x at 661-62.  Thus, the holding in *Whitlock* is inapplicable here where

21  Dr. Sawyer employed a completely different methodology—exposure days calculation.  Further,

22  *Whitlock* does not permit Dr. Sawyer to make the unsupported scientific leap that an *exposure* is the

23  same as a *dose* to reach his specific causation conclusion.  *Id.* (permitting expert testimony that "rests

24  on a reliable foundation and is relevant to the task at hand") (quoting *Daubert v. Merrell Dow*

25  *Pharms,* 509 U.S. 579, 597 (1993)); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))

26  (finding no abuse of discretion when expert testimony excluded because there was "simply too great

27  an analytical gap between the data and the opinion"); *McGonnell v. Kaiser Gypsum Co., Inc.,* 98 Cal.

28  App. 4th 1098, 1106 (2002) (party cannot rely on "expert opinion with self-serving conclusions

- 2 -

1   devoid of any basis, explanation, or reasoning").  Dr. Sawyer's failure to analyze the epidemiology

2   studies at all—much less explain how the results of those studies can be properly applied to Mr.

3   Vosper—distinguishes *Whitlock* and demonstrates the unreliability of his methodology.

4          *Second*, while Dr. Sawyer's failure to actually analyze the epidemiological studies himself is

5   reason alone sufficient to exclude Dr. Sawyer's so-called specific causation opinion, that opinion

6   should be excluded for another reason: Dr. Sawyer's exposure days calculations were grossly

7   exaggerated.  Plaintiffs attempt to distract the Court from this problem by defending Dr. Sawyer's use

8   of the UK Predictive Operator Exposure Model, allocating nearly two pages of their Opposition to

9   the topic.  But that model is irrelevant to Dr. Sawyer's ultimate causation opinion because he did not

10  use it to determine Plaintiff's dose, instead relying exclusively on his flawed exposure days

11  calculations.  Pls.' Opp'n at 9-10.  Plaintiffs entirely ignore the mistakes Dr. Sawyer made in

12  calculating Plaintiff's exposure days, which resulted in a significant overstatement of Plaintiff's

13  exposure—Dr. Sawyer declared an exposure day number that was 178% of Mr. Vosper's actual

14  number of exposure days.  Def.'s Br. at 10.  Likewise, Plaintiffs do nothing to justify Dr. Sawyer's

15  results-driven adherence to his original opinion in the face of his miscalculation.  Because Dr.

16  Sawyer's exposure days calculation is not based on any reliable or valid specific causation analysis

17  and is riddled with errors it would not be helpful to the jury.  *See* Fed. R. Evid. 702(d) (requiring the

18  expert to "reliably appl[y] the principles and methods to the facts of the case"); *see also Sardis v.*

19  *Overhead Door Corp.*, No. 20-1411, 2021 WL 3699753, at *8 (4th Cir. Aug. 20, 2021) (where there

20  are "critical questions of the sufficiency of an expert's basis [for his testimony], and the application

21  of the expert's methodology" are questions of admissibility) (alterations in original)).

22         *Third*, even if Dr. Sawyer could establish specific causation for Mr. Vosper with

23  epidemiology studies alone, the studies relied upon are insufficient to do so here.  As discussed in

24  more detail in Monsanto's Opening Brief, the primary studies on which Dr. Sawyer relies for his

25  specific causation analysis—Eriksson and McDuffie—are unreliable because the relevant data was

26  not adjusted for the use of other pesticides.  As this Court has already determined, "[f]ailing to take

27  account of likely confounders by presenting and relying upon only unadjusted (or minimally

28  adjusted) estimates is a serious methodological concern."  *In re Roundup Prods. Liab. Litig.*, 390 F.

- 3 -

Supp. 3d 1102, 1140 (N.D. Cal. 2018); *see also In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp.2d 879, 890 (C.D. Cal. 2004) ("[A]ny step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.") (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)); Fed. R. Evid. 702 Advisory Committee's Notes (In addition to the *Daubert* criteria, courts have also considered whether there is a known or potential rate of error as a relevant factor in assessing reliability).  Moreover, the Andreotti study did not find a statistically elevated risk of NHL overall, so it does not support Dr. Sawyer's ultimate conclusions on specific causation.  The Zhang study is a meta-analysis of primary studies that has been criticized for its faulty methodologies and flawed conclusions.  *See* Def.'s Br. at Lasker Decl. Ex. 1, Sawyer *Vosper* Rep. at 35-36; *id.* at Ex. 15, *Memorandum: Glyphosate: Epidemiology Review of Zhang et al. (2019) and Leon et al. (2019) publications for Response to Comments on the Proposed Interim Decision* (Jan. 6, 2020) at 13-17.  Lastly, the Pahwa and Leon studies are pooled studies that simply combine data.  Plaintiffs' Opposition fails to address any of these deficiencies, implicitly conceding that Dr. Sawyer's specific causation opinions lack scientific support and undermine his methodology.[2]  Further, the Wave 2 Plaintiffs admitted that the same six epidemiological studies on which Dr. Sawyer relies here "are not consistent nor well-described in their methodology when using days of exposure."  Pls.' Resp. to Mot. to Exclude Test. of Dr. William Sawyer On *Daubert* Grounds, ECF No. 12882 at 11.  Accordingly, Dr. Sawyer should not be permitted to offer specific causation opinions based on his "8 hour day of exposure" methodology built solely on studies that Plaintiffs themselves describe as inconsistent and poorly-described.

*Fourth*, Dr. Sawyer's specific causation opinion should be excluded because he did not consider numerous alternative risk factors for Mr. Vosper's NHL.  In reaching his so-called specific

---

[2] Plaintiffs claim that expert testimony will be helpful to explain how to compare Mr. Vosper's exposure to the epidemiological studies.  Pls.' Opp'n at 8 ("[H]ere, Dr. Sawyer will only make use of the epidemiology studies as a means of comparing Plaintiff's dose to the dose in the epidemiology studies.").  However, Dr. Sawyer has repeatedly deferred the detailed analysis, interpretation, and meaning of the epidemiology studies to other experts in this case.  *See* Pls.' Opp'n at 8; Def.'s Br. at 3.  Thus, to the extent any expert is permitted to discuss the epidemiology studies, it should be one of the experts to which Dr. Sawyer has deferred, not Dr. Sawyer himself.

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE
TESTIMONY OF DR.WILLIAM SAWYER UNDER RULE 702

causation opinions, Dr. Sawyer largely ignored Mr. Vosper's medical history, predisposing genetics, and other risk factors for NHL.  Dr. Sawyer repeatedly defers the analyses of these other risk factors to other experts, yet confirms that these risk factors can independently cause NHL.[3]  *See* Def.'s Br. at Lasker Decl. Ex. 1, Sawyer *Vosper* Rep. at 178-186.  Further, he is unable to opine that someone with the same risk factors, but no Roundup® use, would have gotten NHL while simultaneously opining that "Roundup® use was a substantial contributing risk factor" for Mr. Vosper's NHL.  Def.'s Br. at 12.  Thus, by omitting a complete analysis of Plaintiff's other risks factors, Dr. Sawyer relinquished any ability to offer a specific causation opinion.  *See, e.g., Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony").

### III.     The Court Should Exclude Dr. Sawyer's Opinions Regarding The George Study.

Plaintiffs do not dispute that due to multiple flaws in the George study's design (including that the study lacked a histopathological examination; involved a small number of animals, all of which were male that were given a short duration of treatment; and failed to control for solvents), the study has been found by several national and international regulatory agencies—including EPA, IARC, and Germany's BAuA—to be an inadequate study for scientific analysis.

In making an assessment under Rule 702, trial courts must look beyond the expert's testimony to ensure that the sources relied upon by the expert in reaching his opinions are reliable.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (affirming district court's exclusion of expert after finding expert's testimony to be "inherently unreliable and unsupported by the facts."); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.") (quotation marks omitted).  Dr. Sawyer's opinions regarding the George study and cancer promotion should be excluded because they are not scientifically reliable.

---

[3] Notably, Plaintiffs tout Dr. Sawyer's ability to analyze epidemiology studies despite Dr. Sawyer expressly stating otherwise.  *See* Pls.' Opp'n at 8; Def.'s Br. at 9 (citing Dr. Sawyer's expert report and deposition testimony).

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE
TESTIMONY OF DR.WILLIAM SAWYER UNDER RULE 702

**IV.     The Court Should Exclude Dr. Sawyer's Opinions Regarding Trace Chemicals.**

Plaintiffs claim that it is "necessary" for Dr. Sawyer to consider the trace chemicals included in Roundup®.  Pls.' Opp'n at 12.  Yet Plaintiffs do not dispute that Dr. Sawyer did not calculate any doses of these chemicals to which Mr. Vosper was allegedly exposed.  Nor has Plaintiff pointed to any scientific evidence suggesting that exposure to Roundup® is a cancer risk because of these trace chemicals.  As discussed in more detail in Monsanto's Opening Brief (and as demonstrated by Dr. Sawyer's testimony during the *Pilliod* trial), the only purpose for testimony regarding trace chemicals is to distract, confuse, and provoke fear in the jury.  Def.'s Br. at Lasker Decl. Ex. 21, *Pilliod* Trial Tr. at 3131:6-3132:16 ("A: [Ethylene oxide] is a sterilization gas. It kills every type of biological life on earth . . . if I had a little air in the bottle, as one of our jurors has sitting there, that over time that air in the bottle, the ethylene oxide would accumulate in that air space. Q: . . . So this actually has Roundup that's been sitting in here for a while. If I were to open up this cap, what would happen? A: There would be ethylene oxide escaping from that head space.").  Dr. Sawyer's unsupported comments on these trace chemicals are entirely speculative, inappropriate, and inadmissible.  *See Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs."); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) (noting that it would be "well within the discretion of the trial judge to exclude" expert opinions that would not be "of any real assistance to the trier of fact.").

**V.     The Court Should Exclude Dr. Sawyer's Opinions on Monsanto Company Documents and Regulatory Duties.**

Plaintiffs concede that Dr. Sawyer will not "testify about the intent or state of mind of Monsanto" and that Dr. Sawyer "will not be offering regulatory opinions or opine about labeling requirements."  Pls.' Opp'n at 13-14.  Plaintiffs claim, however, that Dr. Sawyer may discuss internal Monsanto documents, about which he has no personal knowledge, "to provide proper context to corporate emails and memoranda."  *Id.* at 14.  Plaintiff's arguments are unavailing.

Having an expert narrate company documents, under the guise of explaining terminology or providing context, is improper expert testimony because it invades the province of the jury.  *See Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29,

- 6 -

2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate documents, which is not helpful to the jury."); *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2018 WL 4961455, at *4 (S.D.N.Y. Oct. 15, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury traditionally relies upon to answer the sort of question that a jury traditionally answers.").  The very case Plaintiffs rely on for the proposition that Dr. Sawyer may provide "context" concerned opinions from an "expert on pharmaceutical company decision-making"—the very opinions Plaintiffs state Dr. Sawyer will *not* be offering here.  Pls.' Opp'n at 14 (citing *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1180 (N.D. Cal. 2017)).  Dr. Sawyer's toxicological expertise affords him no special skill in interpreting a Monsanto employee's use of scientific terms or studies, and there is no need for an expert to interpret Monsanto company documents that speak for themselves.

     Accordingly, the Court should preclude Dr. Sawyer from offering any opinions related to Monsanto company documents.

## CONCLUSION

     For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. William Sawyer Under Rule 702.

DATED: October 20, 2021          Respectfully submitted,

/s/ *Eric G. Lasker*
Eric G. Lasker, Esq.
(elasker@hollingsworthllp.com)
Hollingsworth LLP
1350 I Street, NW
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*Monsanto Company*

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE
TESTIMONY OF DR.WILLIAM SAWYER UNDER RULE 702

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Eric G. Lasker