**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE: ROUNDUP® PRODUCTS LIABILITY LITIGATION<br><br>*Vosper v. Monsanto Co.*, 3:19-cv-05525-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF DR. D. BARRY BOYD UNDER RULE 702**<br><br>Hearing date: December 13, 2021<br>Time: TBD |
|---|---|

Plaintiffs' Opposition confirms that the Court should exclude Dr. Boyd's specific causation opinion because that opinion is not based on a reliable methodology.  Plaintiffs do not deny that Dr. Boyd failed to properly consider Mr. Vosper's other potential risk factors.  *See* Plaintiffs' Opposition to Monsanto's Motion to Exclude Testimony of Dr. D. Barry Boyd Under Rule 702, ECF No. 13933 ("Pls.' Opp'n") at 7-8.  Plaintiffs do not deny that Dr. Boyd's report fails to address idiopathy *at all*. *Id.* at 8-9.  And Plaintiffs do not deny that Dr. Boyd based his opinion on Dr. Sawyer's significant miscalculation of Mr. Vosper's exposure days.  *Id.* at 10.  While Monsanto respectfully requests that the Court grant Monsanto's Motion to the full extent of Plaintiffs' concessions, for the reasons discussed below and in Monsanto's Opening Brief, ECF No. 13783 ("Def.'s Br."), Dr. Boyd's remaining flawed opinions regarding causation should be excluded in their entirety.

**I.  Plaintiffs Misconstrue the Legal Principles Applicable to Dr. Boyd's Specific Causation Opinion.**

Plaintiffs' Opposition misconstrues Monsanto's arguments and ignores binding precedent. Plaintiffs insist that Dr. Boyd need not "consider every potential risk factor" when conducting a differential diagnosis.  Pls.' Opp'n at 7-8.  But the first step of a reliable differential diagnosis indisputably requires an expert to "compile a comprehensive list" of possible causes.  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057-58 (9th Cir. 2003); *see id*. at 1058 (expert must first "rule[] in *all* of the potential hypotheses that might explain a patient's symptoms") (emphasis added).  Indeed, an expert's list must include even "rare" possible causes in order to ensure that, when the expert evaluates and "rules out" potential causes on the list during the second step of the differential diagnosis, rare—but nonetheless possible—causes "are not overlooked."  *See id.*

Resisting this conclusion, Plaintiffs suggest that *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017), stands for the proposition that experts need not consider *every potential* risk factor in order for their opinions to be admissible.  But *Wendell* affirms that, at the first step of a differential diagnosis, an expert must "assume[] the pertinence of all potential causes."  858 F.3d at 1234 (emphasis added).  Although Plaintiffs attempt to twist its meaning, the quoted passage on page 7 of the Opposition concerns the second step of a reliable differential diagnosis—when an expert examines each potential cause on the "comprehensive" list and determines which is the most likely

cause. At that second step, an expert need not definitively "rule out" all potential causes but one, so long as the expert has a sound basis for concluding that one particular cause is "the *most* likely." *Id.* (emphasis added); *see also Cooper v. Takeda Pharms. Am., Inc.*, 239 Cal. App. 4th 555, 577 (2015) (concluding expert need not definitively exclude all other possibilities before expressing admissible opinion).

Neither *Wendell* nor *Cooper* excuses the failure of Dr. Boyd to "rule in" relevant risk factors at the first step of his analysis and "take serious account of other potential causes" of NHL. *Clausen*, 339 F.3d at 1058; *see* Def.'s Br. at 7. Indeed, courts routinely bar expert testimony where the expert does not properly inquire about, and investigate, alternative potential causes. *See, e.g., Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1099 (C.D. Cal. 2017), *aff'd,* 786 F. App'x 84 (9th Cir. 2019) ("[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may ... be unreliable, and thus, inadmissible under *Daubert.*") (alteration in original) (quotation marks omitted) (citing *Clausen*, 339 F.3d at 1058); *Zellars v. NexTech Ne., LLC*, 895 F. Supp. 2d 734, 742, 747 (E.D. Va. 2012) (expert was unreliable because she "failed to inquire about or investigate" other potential causes during the first step of a differential diagnosis); *see also Nelson v. Matrixx Initiatives*, No. C 09-02904 WHA, 2012 WL 3627399, at *10 (N.D. Cal. Aug. 21, 2012) (expert was unreliable because the expert "did not inquire into an important discrepancy" in plaintiff's medical history).

Dr. Boyd also failed to conduct the second step of the differential diagnosis reliably. Although Dr. Boyd need not "definitively exclude all possibilities other than the defendant's . . . product," Pl.'s Opp'n at 7-8 (citations omitted), he must "use[] scientific methods and procedures" in order to determine that one cause was "the most likely." *Clausen*, 339 F.3d at 1058. But Dr. Boyd is unable to explain why Roundup® is a more likely cause than other significant risk factors. Def.'s Br. at 6-7. Without a rigorous method based on science for identifying Roundup® as the most likely cause of Mr. Vosper's NHL, all Dr. Boyd can offer is his *ipse dixit* – and the Supreme Court has made clear that an expert's *ipse dixit* is inadmissible. *See Halliday v. Cruise Ship Excursions, Inc.*, No. ST-14-CV-146, 2016 WL 6635157, at *9 (V.I. Super. Nov. 4, 2016) (a "[c]ourt need not admit an expert opinion based only on *ipse dixit* alone") (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138

- 2 -

(1997)); Def.'s Br., at 6-7 (discussing Dr. Boyd's failed or dismissive investigation of Mr. Vosper's possible other risk factors for NHL); *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1311 (11th Cir. 2014) (an expert is unreliable if the expert is "unable to determine the relative risk" of each potential cause).

## II. The Court Should Exclude Dr. Boyd's Specific Causation Opinions.

Plaintiffs insist that Dr. Boyd "need not exclude idiopathy" as a possible cause in order to render a reliable opinion, arguing that, because Dr. Boyd purportedly performed a differential diagnosis, Monsanto's arguments regarding "idiopathy" are a mere "rehash." Pls.' Opp'n at 8-9. This is not true. Just as "an expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis," *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005), Dr. Boyd cannot ignore idiopathy simply because he purportedly performed a differential diagnosis. The Court has made clear that each "expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." Pretrial Order No. 85, ECF No. 2799 at 4. It is true that the Court concluded the prior experts had "provided a basis for their conclusion[s] that the[] [bellwether] plaintiffs f[e]ll into the category of Roundup users who developed NHL" because they used the product. *Id.* at 6; Pls.' Opp'n at 9. Under Plaintiffs' interpretation of this finding, the issue of idiopathy is resolved for all future Plaintiffs in this litigation.

But as many courts have concluded, "[w]here the cause of the condition is unknown in the majority of cases, [an expert] cannot properly conclude, based upon a differential diagnosis," that the plaintiff's exposure to a substance is the cause of the plaintiff's illness. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 897 (8th Cir. 2008).[1] Thus, a differential diagnosis that purports to identify a cause when most instances of the disease are of unknown origin is little more

---

[1] *See also Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 475-76 (1st Cir. 2016) (affirming exclusion of differential diagnosis where seventy to eighty percent of cases of the disease were idiopathic and expert's only basis for ruling out idiopathic cause was that she ruled in the product); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir. 2010) (expert properly excluded where he could not "explain why potentially unknown, or idiopathic alternative causes were not ruled out").

than speculation.  Here, Dr. Boyd ignores idiopathy altogether—never mentioning it in his expert report or testimony and hence never explaining how he ruled out idiopathic causes.  *See generally*, Def.'s Br. at Lasker Decl. Ex. 1, Boyd *Vosper* Rep. & Ex. 2, Boyd *Vosper* Tr.  Given that the majority of NHL cases have no known cause (in other words, it is more likely than not that any one NHL case is idiopathic in origin), this is a striking omission.  The Court should not allow Dr. Boyd to disregard the most basic requirements for a reliable differential diagnosis.

### III. Dr. Boyd's Opinion Is Inadmissible Because It Is Based On Dr. Sawyer's Flawed Exposure Day Calculation.

Plaintiffs concede that Dr. Boyd based his opinion on the flawed exposure day calculations of Dr. Sawyer, and that Dr. Boyd did not notice these striking calculation errors when reviewing Dr. Sawyer's report.  Pls.' Opp'n at 10; *see also* Def.'s Br. at 8-9.  As discussed in detail in Monsanto's Opening Brief and Motion to Strike Portions of Supplemental Report of Dr. D. Barry Boyd Under Rule 26 (e), Dkt. No. 13967, an opinion where there are "critical questions of the sufficiency of an expert's basis [for his testimony], and the application of the expert's methodology" are questions of admissibility.  *Sardis v. Overhead Door Corp.*, No. 20-1411, 2021 WL 3699753, at *8 (4th Cir. Aug. 20, 2021) (alterations in original, citation omitted).[2]

### CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. D. Barry Boyd Under Rule 702.

---

[2] Plaintiffs assert that Monsanto's mention of Dr. Boyd's untimely submitted "supplemental" report in its Opening Brief establishes that Monsanto "was in possession of all relevant documentation in advance of its motion."  Pls.' Opp'n at 10.  Not only does this assertion miss the mark, it wrongfully suggests that submitting a "supplemental" report <u>one day</u> before a briefing deadline—one in which Monsanto filed 24 *Daubert* and summary judgment motions—timely provides notice.  *See* Monsanto's Mot. to Strike Portions of Suppl. Rep. of Dr. D. Barry Boyd Under Rule 26 (e), Dkt. No. 13967.

- 2 -

| | |
|---|---|
| DATED: October 20, 2021 | Respectfully submitted, |
| | /s/ *Eric G. Lasker* |
| | Eric G. Lasker, Esq. |
| | (elasker@hollingsworthllp.com) |
| | Hollingsworth<sub>LLP</sub> |
| | 1350 I Street, NW |
| | Washington, DC 20005 |
| | Tel: 202-898-5800 |
| | Fax: 202-682-1639 |
| | |
| | *Attorneys for Defendant* |
| | *Monsanto Company* |

MONSANTO'S REPLY ISO ITS MOT. TO EXCLUDE
TESTIMONY OF DR. D. BARRY BOYD UNDER RULE 702

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Eric G. Lasker