**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Blair et al. v. Monsanto Co.,* 3:19-cv-07984 | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY & LACK OF SPECIFIC CAUSATION** |

Defendant Monsanto Company hereby submits the following Reply in Support of its Motion for Summary Judgment Based on the Texas Presumption of No Liability and Lack of Specific Causation ("Motion").

**I.       Introduction**

Plaintiffs' Opposition offers nothing to refute the applicability of the presumption of no liability afforded to product manufacturers under Tex. Civ. Prac. & Rem. Code § 82.008(a). Plaintiffs also fail to establish rebuttal of the presumption under § 82.008(b)(1) or (2), and their suggestion that certain alleged voluntary misrepresentations by Monsanto fall outside the scope of § 82.008 is without merit. Accordingly, the presumption applies and is unrebutted, requiring summary judgment. *See e.g., Shaw v. Trinity Highway Prods, LLC,* 329 S.W.3d 914, 918 (Tex. App. 2010). Alternatively, Plaintiffs failed to respond to Monsanto's argument that Plaintiffs have no evidence of specific causation if the Court excludes the testimony of Dr. Katz. Summary judgment is required on all their claims.

**II.      Monsanto is Entitled to the Presumption of No Liability Under § 82.008(a)**

Plaintiffs do not dispute the force and effect of the presumption of no liability provided by Tex. Civ. Prac. & Rem. Code § 82.008(a). Neither do Plaintiffs dispute EPA's extensive regulation of Roundup, that Roundup's compliance with EPA's regulatory framework is mandatory, or that Roundup has, at all relevant times, been registered by EPA and otherwise compliant with EPA's regulatory requirements. As Plaintiffs acknowledge (Opp. p. 5), Monsanto set out this regulatory framework in detail in its Motion (*see* Mot. at pp. 4-6). Nonetheless, Plaintiffs take the surprising position – not that the presumption is clearly rebutted – but that it does not apply in the first instance, essentially arguing that EPA regulations do not apply to Roundup's "formula, labeling, or design" with respect to human cancer risk. § 82.008(a). Plaintiffs' view of the § 82.008(a) presumption is illogical and easily rejected.

Plaintiffs argue Monsanto failed to identify a "specific standard or regulation that sets forth any specific formula, label or design that Roundup is required to comply with." (Opp. p. 5). They cite authority applying § 82.008(a) in cases involving Federal Motor Vehicle Safety Standards ("FMVSS"), evidently arguing that because EPA has not published a singular standard specifically dictating the design, formulation, and labeling for a glyphosate-based herbicide, its mandatory regulatory approval of Roundup falls outside of § 82.008(a). That characterization is myopic. For

1

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS
PRESUMPTION OF NO LIABILITY & LACK OF SPECIFIC CAUSATION

starters, EPA's regulatory framework governing Roundup is wholly different in kind than FMVSS minimum performance requirements for automobile airbags or brakes, and Plaintiffs' citation to such authorities misses the mark. A minimum performance standard applicable to vehicles generally is inapposite to the mandatory EPA regulatory framework applicable here, which involved specific approval of Roundup, including findings that it does not pose a cancer risk.

Thus it is not true, as Plaintiffs argue, that in order to invoke the § 82.008(a) presumption, there must be a federal safety standard that sets forth "a specific formula, label, or design" with which Roundup must comply. (Opp. p. 5). Indeed, Plaintiffs' continual focus on "actual standards" (*e.g.*, Opp. p. 6) ignores the text of § 82.008(a) and its legislative purpose. *See e.g.*, *Kia Mot. Corp. v. Ruiz,* 432 S.W.3d 865, 869 (Tex. 2014) (impetus for passage of § 82.008 was finding that product manufacturers were being held liable in product lability cases even though the products complied with applicable regulations or standards). Rather, the presumption applies where, as here, "the product's formula, labeling, or design complied with mandatory . . . regulations adopted and promulgated by the federal government," so long as they were applicable at the time of manufacture and governed the relevant product risk.  § 82.008(a).

Contrary to Plaintiffs' assertions, Monsanto specifically identified the mandatory federal regulations that are applicable to Roundup, promulgated under FIFRA, which require specific EPA approval of Roundup's complete formula, labeling, and instructions, and determinations that Roundup would not pose "unreasonable risk to man or the environment." (Mot. at pp. 4-5). Moreover, that specific regulatory approval framework "governed the product risk," § 82.008(a), because it encompassed a determination of carcinogenicity, and EPA, operating under its specific regulatory authority, has repeatedly determined that Roundup does not pose a cancer risk. (Mot. pp. 5-6). And Roundup has unequivocally complied with EPA's regulations as evidenced by its registration and repeated re-registration, constituting specific approval of the formulation and labeling. (Mot. pp. 4-5).

Plaintiffs' argument that EPA's mandatory regulatory approval of Roundup, which considered a cancer risk, is somehow not sufficient to invoke § 82.008(a) is tortured, to put it mildly.

Their suggestion that the presumption could adhere in the case of a solitary FMVSS minimum performance standard but <u>not</u> under significantly more comprehensive, exclusive, and specific regulation by EPA in an extensively-regulated industry cannot be squared with any fair reading of § 82.008(a).  Monsanto has clearly established that Roundup has, at all times, complied with mandatory EPA regulations, and that those regulations specifically governed the risk at issue here.  That is all that is required to apply the § 82.008(a) presumption.

**III.     Plaintiffs Fail to Rebut the Presumption Under § 82.008(b)(1) or (2)**

The § 82.008(a) presumption can be rebutted in only two ways – by establishing: (1) that the applicable regulations are inadequate to protect the public from unreasonable risk of injury, or (2) establishing fraud on the regulator.  § 82.008(b).  At the summary judgment stage, Plaintiffs were required to come forward with evidence to defeat the § 82.008(a) presumption, not legal argument and Complaint allegations, and they have failed to do so.  Far short of offering evidence in their Opposition, Plaintiffs do not even sufficiently invoke, much less *establish*, either basis for rebuttal, as required under the statute.  *See Wright v. Ford Mot. Co.*, 508 F.3d 263, 270 (5th Cir. 2007) (in context of § 82.008(b) rebuttal, "[e]stablish connotes something more than simply introducing *some* evidence from which a factfinder might—*or might not—*find that which is to be 'established.'").

As to the first rebuttal provision under § 82.008(b)(1), Plaintiffs selectively quote 7 U.S.C. § 136a, emphasizing statutory language that a registration decision must consider whether the pesticide will operate without "unreasonable effects on the environment."  (Opp. p. 7).  This, Plaintiffs assert, establishes that EPA's regulatory framework is not a safety regulation, rendering EPA's regulatory framework inadequate to protect the public from harm.  *Id.*  That is not true, as evidenced by a cursory review of FIFRA's definitions, which state that "Environment" includes "water, air, land, and all plants and man and other animals living therein, and the interrelationships which exist among these," 7 U.S.C. § 136(j), and that "Unreasonable adverse effects on the environment" means "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide."  7 U.S.C. § 136(bb).  Moreover, as part of the registration and re-registration process, EPA requires registrants

1  to submit information regarding allegations of a pesticide's unreasonable adverse effects on the environment, 40 C.F.R. § 159.152, and details the several categories of such information that it will consider, including toxicological studies (40 C.F.R. § 159.165), human epidemiological and exposure studies (40 C.F.R. § 159.170) and toxic or adverse effect incident reports (40 C.F.R. § 159.184). EPA's specific registration framework clearly considers human health risks.

Plaintiffs ignore the EPA authority and regulatory action under FIFRA as it pertains to Roundup, which required EPA to consider risk to human health in its approval of pesticides and, in fact, that EPA extensively considered Roundup's risk of harm including its carcinogenicity. This is detailed for the Court in Monsanto's Motion at pp. 4-6. Plaintiffs offer no other evidence or analysis of the supposed inadequacy of EPA's regulations, apart from a circular discussion about the supposed misleading nature of Roundup's labeling due to lack of a cancer warning or reference to IARC. (Opp. p. 8). This argument does not address the adequacy of EPA's regulation. Plaintiffs cannot overcome the § 82.008(a) presumption by bootstrapping a rebuttal argument based on no more than allegation of product defect – *i.e.*, that EPA's regulations disallowing a cancer warning are inadequate because Roundup's label does not have a cancer warning. Plaintiffs offer nothing indicating that EPA's regulations are inadequate, and therefore have not established rebuttal under § 82.008(b)(1).

Plaintiffs offer even less, if anything, as to the second rebuttal provision under § 82.008(b)(2), which requires a showing of fraud on the EPA. Plaintiffs argue, with little context, that FIFRA allows state law tort actions because FIFRA contains misbranding provisions, contemplating that properly registered pesticides may nonetheless be unlawfully misbranded. (Opp. pp. 8-9). Presumably this is in response to Monsanto's argument that fraud on the EPA claims are preempted by federal law, but Plaintiffs do not say. Regardless, rebuttal under § 82.008(b)(2) is only established if "the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action." Although § 82.008(b)(2), in this context, is clearly a fraud on the EPA provision and thus preempted under

4

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS
PRESUMPTION OF NO LIABILITY & LACK OF SPECIFIC CAUSATION

*Buckman* and *Garcia* as applied by the 5th Circuit Court of Appeals, *see Lofton v. McNeil Consumer & Spec. Pharms*, 672 F.3d 372 (5th Cir. 2012), the Court need not address preemption.  Plaintiffs were required to point to evidence that Monsanto committed fraud on the EPA, and they failed to do so.  Their citation of FIFRA's misbranding provisions certainly does not support or establish fraud on the EPA by Monsanto, and this Court has already made a finding that Monsanto did <u>not</u> mislead the EPA.  (Mot. p. 9).  Accordingly, Plaintiffs have offered nothing to invoke rebuttal under § 82.008(b)(2).

### IV.   Plaintiffs' Alleged Voluntary Representations Are Irrelevant

Having failed to meaningfully counter Monsanto's entitlement to the § 82.008(a) presumption or to rebut it under § 82.008(b)(1) or (2), Plaintiffs make a last-ditch attempt to circumvent the statute altogether by citing alleged voluntary misrepresentations by Monsanto about Roundup's safety which they argue Monsanto was not required to make and, thus, were "outside of the regulatory framework of FIFRA" and by extension the § 82.008(a) presumption.  (Opp. pp. 9-10).  Plaintiffs are wrong for several reasons.  First, the alleged misrepresentations are quoted verbatim from Plaintiffs' Complaint.  (White Decl., ¶ 1, Ex. 1, ¶ 3.25(a)-(j)).  The issue before the Court, however, is Monsanto's Motion for Summary Judgment, and Plaintiffs cannot defeat summary judgment merely by resting on allegations in their complaint.  *See Edwards v. Leaders in Comm. Alternatives, Inc.*, 850 Fed.Appx. 503, 506 (9th Cir. 2021) (party opposing summary judgment "may not rest upon mere allegations or denials" in a pleading).  Second, Plaintiffs fail to explain any connection between the misrepresentation allegations and any of their claims, nor do they point the Court to any evidence that could support such a connection.  They do not offer evidence or allege they saw Roundup advertisements which made such claims, or that they relied on such representations in purchasing and using Roundup.[1]  Accordingly, Monsanto's supposed voluntary misrepresentations as set out in Plaintiffs' Opposition are unadorned allegations with no

---

[1] Indeed, Plaintiff Blair admits that his Roundup exposure occurred in the context of his employment, significantly diminishing any argument he could make that Roundup advertising of any kind induced him to purchase and use the product. (Opp. p. 3).  In any case, Plaintiffs' failure to adduce any evidence in opposition to summary judgment on these points is fatal to their case.

5

MONSANTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON TEXAS PRESUMPTION OF NO LIABILITY & LACK OF SPECIFIC CAUSATION

factual enhancement, and cannot operate to defeat summary judgment as a matter of law.  Third, it is clear that all of Plaintiffs' claims, regardless of theory, center only on allegations that Roundup was defective due to lack of a cancer warning, not on alleged misrepresentations.  Thus, the § 82.008 presumption applies to all of Plaintiffs' claims because they relate to "some aspect of the formulation, labeling, or design" of Roundup.  § 82.008(a).[2]

## V. Plaintiffs Concede that if Dr. Katz is Excluded Under FRE 702, they have No Evidence of Specific Causation

Contemporaneously to filing this Motion, Monsanto filed a Motion to Exclude the testimony of Plaintiffs' specific causation expert, Dr. Sanford R. Katz, under FRE 702.  Monsanto argued, in its Motion for Summary Judgment, that without Dr. Katz' testimony, Plaintiff had no evidence of specific causation as required for all of their claims.  Plaintiffs' Opposition does not respond to this argument.  Thus, if the Court excludes Dr. Katz' testimony, Monsanto is entitled to Summary Judgment on all Plaintiffs' claims for lack of specific causation.

## VI. Conclusion

For the foregoing reasons, Monsanto is entitled to summary judgment on Plaintiffs' claims.

Dated:  October 20, 2021                    Respectfully submitted,

*/s/ Jed P. White*

Attorney for Defendant Monsanto Company

---

[2] Plaintiffs' Opposition, on pages 2-3, vaguely argues that their claims concern more than a failure to warn, pointing the Court to 23 pages of the Complaint with no specificity or analysis.  Complaint allegations, however, are insufficient as a matter of law to overcome summary judgment.  Thus to the extent this citation is an attempt to invoke some theory apart from lack of a cancer warning, the failure to offer any evidence in support entitles Monsanto to summary judgment.