**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Spector, et al. v. Monsanto, Co.*, No. 3:20-cv-05532 | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br> **Hearing:** <br> Date:   TBD <br> Time:   TBD <br> Place:  Courtroom 4 |

Plaintiffs respond ("Opp.") to Monsanto Company's ("Monsanto's") motion for summary judgment ("MSJ") by largely rehashing the baseless allegations in their complaint, and repeatedly emphasizing that Monsanto never warned consumers that its Roundup-branded products cause non-Hodgkin's Lymphoma ("NHL"). These arguments entirely miss the point. Monsanto has never included Plaintiffs' preferred warning because there is no valid scientific evidence linking Roundup to NHL. And the U.S. Environmental Protection Agency ("EPA") has accordingly prohibited Monsanto from including on Roundup's label that its use can cause NHL. More to the point, Monsanto's motion for summary judgment is based not on the purported adequacy of its warnings, but on the fact that Beth Spector admitted during her deposition that she never looked at the warning label on any of the Roundup-branded products she used. The purported inadequacy of the labels therefore was not the proximate cause of Ms. Spector's injuries, dooming each of Plaintiffs' claims.[1]

## ARGUMENT

### I. A HEEDING PRESUMPTION DOES NOT APPLY TO PLAINTIFFS' CLAIMS

Plaintiffs rely principally on *Pavlik v. Lane Ltd./Tobacco Exporters International*, 135 F.3d 876 (3d Cir. 1998) and *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014) to argue that Pennsylvania state courts recognize the heeding presumption for a warnings causation analysis. Opp. at 13-14 n.11. Because the Pennsylvania Supreme Court has not ruled on whether the presumption should apply, the Third Circuit in *Pavlik* was in the position of predicting how it would rule if faced with the question. *See Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004). The *Pavlik* court "predict[ed]" that the state supreme court would "adopt a rebuttable presumption" because of the state supreme court's previous adoption of comment j to Section 402A of the Restatement (Second) of Torts. *Pavlik*, 135 F.3d at 883. Comment j sets forth a presumption that "where a warning is given, the seller may reasonably assume that it will be read and heeded"— a presumption that aids a manufacturer where adequate warnings are provided. *Id.* The *Pavlik*

---

[1] As Monsanto explained in its motion, all of Plaintiffs' claims, regardless of theory, center on allegations that Monsanto is liable because it failed to warn that Roundup-branded products allegedly cause cancer. *See* MSJ at 1-2, 5-6. As a result, Plaintiffs' failure to show that the purported inadequate warning caused Ms. Spector's injuries requires summary judgment on all of Plaintiffs' claims.

court's 1998 prediction that the Pennsylvania Supreme Court would extrapolate this principle to a heeding presumption that aids plaintiffs in showing proximate causation is not binding on this Court. Instead, the Court must conduct its own analysis to determine, based on the state court precedent as of 2021, how Pennsylvania's highest court would rule on this question. *Covington,* 381 F.3d at 218. The Third Circuit has stated that intermediate state court decisions are "particularly relevant" to answering that question, and that those intermediate decisions should "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.*

Since *Pavlik*, intermediate state court decisions have ruled that despite the Pennsylvania Supreme Court's adoption of comment j, Pennsylvania does not generally recognize a heeding presumption to aid a plaintiff's burden to prove proximate causation. *See Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 537-38 (Pa. Super. Ct. 2003), *aff'd*, 881 A.2d 1262 (Pa. 2005); *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 634 n.3 (Pa. Super. Ct. 2004); *see also Dolby v. Ziegler Tire & Supply Co.*, No. 694 WDA 2016, 2017 WL 781650, at *5 (Pa. Super. Ct. Feb. 28, 2017). Those courts have applied the presumption only in cases that involve "work related asbestos exposure." *Viguers*, 837 A.2d at 538. As the court in *Viguers* explained, there is a public policy rationale for applying the presumption in those cases, because "[p]laintiffs who are exposed to asbestos and other products as a condition of their employment have little choice but to be in an environment where the asbestos or other products are present." *Id.* But that public policy rationale does not extend to situations where the plaintiff's injuries are due to her "voluntary choice" to engage in the activity that allegedly caused the harm. *Id.*[2]  Though Plaintiffs rely extensively on *Tincher*, there the Pennsylvania Supreme Court did nothing more than reaffirm that Pennsylvania follows Section 402A of the Restatement [Second] of Torts—which was already true when *Pavlik* and these subsequent state court decisions cabining the application of the heeding presumption were decided. *See Pavlik*, 135 F.3d at 881. *Tincher* does nothing to affect those appellate state court decisions.

---

[2] It is undisputed that Ms. Spector's exposure to Roundup took place at her home, where she voluntary chose to use Roundup, rather than at the work place. Opp. at 1.

2

MONSANTO'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
*SPECTOR, ET AL. V. MONSANTO, CO.*, NO. 3:20-CV-05532

This Court must view the post-*Pavlik* decisions as an indication of how the Pennsylvania Supreme Court would rule on this question, unless it is convinced otherwise by "persuasive data." *Covington,* 381 F.3d at 218. Plaintiffs have presented no state court decisions indicating that Pennsylvania applies the presumption beyond workplace asbestos cases. In support of their contention, Plaintiffs have instead cited only non-binding federal district court orders. Opp. at 13-14 n.11. Because the state court decisions post-*Pavlik* have clearly cabined the heeding presumption to circumstances not present here, the Court should follow those intermediate decisions—as it must—and not apply the presumption to Plaintiffs' claims.

## II. EVEN IF A HEEDING PRESUMPTION APPLIED, PLAINTIFFS' CLAIMS WOULD STILL FAIL

If the Court applies the heeding presumption to Plaintiff's claims, it would first need to determine whether Monsanto has rebutted the presumption with evidence that, had an adequate warning been provided, Ms. Spector would not have read and heeded the adequate warning. *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 620 (Pa. Super. Ct. 1999). Monsanto has done so with Ms. Spector's testimony that she never read the label on any of the Roundup-branded products she used from the 1980s to 2020. *See* MSJ at 4. Courts applying the heeding presumption routinely find that such evidence sufficiently rebuts the presumption. *See Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316, 321 (W.D. Pa. 2017); *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 454 (E.D. Pa. 2016); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 562 (W.D. Pa. 2018) (similar), *aff'd* 774 F. App'x 752 (3d Cir. 2019).

The burden is then on Plaintiffs to affirmatively "produce evidence that [s]he would have acted to avoid the underlying hazard had the defendant provided an adequate warning." *Coward*, 729 A.2d at 621. This evidence must be sufficient to establish that a different warning "may have made a difference" in preventing Ms. Spector's injuries. *Conti v. Ford Motor Co.*, 743 F.2d 195, 199 (3d Cir. 1984). Plaintiffs have not presented evidence that meets this requirement.[3]

---

[3] Plaintiffs argue at length that their allegations satisfy the standard set by *Tincher* for finding that a product is "unreasonably dangerous." *See* Opp. at 3-9. This argument does not address the actual basis for Monsanto's MSJ—that even if Plaintiffs can show Roundup was unreasonably dangerous, they cannot show that the defect identified actually caused Ms. Spector's injuries. These are

3

Plaintiffs argue that Ms. Spector's testimony that she would have never used Roundup had she been warned that it could cause cancer (*see* Opp. at 10-13), shows that a different warning would have led to a different outcome. This argument misses the point. Ms. Spector's testimony that she did not look at the labels on the Roundup-branded products means she would not have been apprised of the information included on a hypothetical adequate warning. Thus, Plaintiffs' evidence purporting to show what Ms. Spector would have done *if she had been apprised* of Roundup's alleged risks is irrelevant to the question at-hand—whether Ms. Spector would have seen the hypothetical adequate warning. Plaintiffs present no evidence that she would have, meaning that even if Monsanto had provided a different warning, there is no evidence creating a reasonable inference that that warning would have actually prevented Ms. Spector's injuries. *Conti*, 743 F.2d at 198-99.

For this same reason, Plaintiffs are missing the point when they repeatedly emphasize that the label on the Roundup-branded products Ms. Spector used did not contain any cancer warning.[4] *See* Opp. at 6, 8, 14. Again, the material question is not what Ms. Spector would have done had she seen the label. Rather, the question is *whether she would have ever seen* the hypothetical "adequate" warning, when she admittedly never looked at the product's label. In similar situations where a plaintiff confesses to never having looked at a product's warnings, courts have granted summary judgment on causation grounds even where there was no warning provided relating to the purported defect. *See, e.g.*, *Flanagan*, 259 F. Supp. 3d at 320-21; *Mitchell v. Mod. Handling Equip. Co.*, No. 2637, 1999 WL 1825272, at *6 (Pa. Com. Pl. June 11, 1999), *aff'd sub nom. Mitchell v. Mod. Handling*, 748 A.2d 1260 (Pa. Super. Ct. 1999) ("[W]hen a plaintiff failed even to read the allegedly inadequate instructions accompanying the product, the plaintiff cannot prevail on the theory that if he had known of the alleged danger, he would not be in a position to misuse it."). In *Flanagan*, the

---

separate analyses, with the latter requiring Plaintiffs to produce evidence that a different warning provided by Monsanto would have led to a different result. *See Conti*, 743 F.2d at 198-99.

[4] It is of course true that no cancer warnings were included on the Roundup labels, because Monsanto—along with the U.S. Environmental Protection Agency—steadfastly refute the assertion that glyphosate causes NHL.

plaintiff fell when a foldable, self-standing cane he purchased allegedly collapsed when he placed his weight onto it. *Id.* at 317-18. The plaintiff testified that he used the cane shortly after his wife purchased it and brought it home, and that he did not look to see whether there were any warranties or instructions provided with the cane before using it and falling. *Id.* at 321. The product's packaging stated that the cane could "withstand up to 350 pounds," and the plaintiff did not allege that there was any warning on the product or its packaging related to its propensity to collapse or not withstand his weight. *Id.* at 318. Faced with this evidence, the Court concluded that the claim failed because "[t]he jury would . . . have to speculate that [the plaintiff] would have heeded a warning placed on materials accompanying the [product] even though he testified under oath that he did not read these materials." *Id.* at 321 (citing *Conti*, 743 F.2d at 198-99). The same is true here, as Plaintiffs cite no evidence suggesting that Ms. Spector would have looked at the product's label if a different warning had been given.[5]

Plaintiffs belatedly attempt to avoid the consequences of Ms. Spector's deposition testimony through an affidavit, which they produced to Monsanto for the first time with their opposition brief. *See* Opp. at 12-13. In the affidavit, Ms. Spector declares that she "believes" she saw television and print advertisements for Roundup, which "[t]o the very best of [her] recollection" did not include a cancer warning. ECF No. 13892-3 ¶¶ 3-6. Plaintiffs cannot use this affidavit to avoid summary judgment.

"The general rule in the Ninth Circuit"—known as the "sham affidavit" rule—"is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."

---

[5] Plaintiffs misconstrue the cases Monsanto cited in its MSJ as turning on an analysis that the warning labels provided to the plaintiff were adequate. Opp. at 14. Those cases instead depended upon evidence suggesting that the plaintiff never read the relevant warning label at all, such that the adequacy of the warning was irrelevant to whether or not the plaintiff was injured. *Flanagan*, 259 F. Supp. 3d at 321 (granting summary judgment because "[t]he jury would then have to speculate that [p]laintiff would have heeded a warning placed on materials accompanying the HurryCane even though he testified under oath that he did not read these materials"); *Wright*, 175 F. Supp. 3d at 454 ("As Wright admits he never read the Operator's Manual, the purported inadequacy of the unread warnings therein could not have caused his injury."); *Chandler*, 340 F. Supp. 3d at 562 (finding that "no evidence has been presented to demonstrate that an adequate warning may have prevented her injury" because "the record is undisputed that [p]laintiff did not read the warnings on the exterior of the Defy Breakage relaxer box").

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009); *see also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Ms. Spector's affidavit "clear[ly] and unambiguous[ly]" contradicts her statements in her deposition regarding her knowledge and recollection of Roundup advertisements. *Van Asdale*, 577 F.3d at 998. Contrary to her affidavit, Ms. Spector testified at deposition that (1) she did not remember when she would have seen any advertisements for Roundup; (2) "d[id not] know[] for sure" whether she saw any advertisements on television or in print; (3) did not remember when she saw Roundup advertisements, if any; and (4) did not remember the contents of any advertisements she may have seen. Reply Declaration of Jed White ("White Reply Decl.") ¶ 2, Ex. 1 (Spector Dep. at 107:8-108:6). Because Ms. Spector's affidavit is supplementary testimony that contradicts her deposition testimony, it is the exact type of "sham affidavit" presented as a "tactical attempt to evade an unfavorable summary judgment" that the Ninth Circuit rejects. *Clavon v. Roscoe BK Restaurant, Inc.*, 572 F. App'x 487, 489 (9th Cir. 2014) (affidavit prepared after defendant moved for summary judgment that provided specific answers to questions the plaintiff evaded during her deposition was not sufficient to create triable issue of fact). The affidavit therefore is not sufficient to create a genuine factual dispute sufficient to avoid summary judgment.

Moreover, even absent Ms. Spector's deposition testimony contradicting her affidavit, the statements in the affidavit, standing alone, cannot defeat summary judgment because they do not "set out *specific facts* showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). Vague or non-specific statements in an affidavit presented in response to a motion for summary judgment do not produce a genuine factual dispute under Rule 56. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89 (1990) (general assertions in an affidavit are insufficient to defeat summary judgment); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779-80 (9th Cir. 2010) ("vague assertion" that defendant constituted "successor in interest" under the Family and Medical Leave Act did not defeat summary judgment, because it "le[ft] entirely unclear the nature of [the parties'] conflict, if any"). As in *Sullivan*, Ms. Spector's affidavit here is too vague and non-specific to create

an actual factual dispute. Ms. Spector does not specifically state that she actually saw any Roundup advertisements. *See* ECF No. 13892-3 ¶¶ 3-4 (stating that to "the very best of [her] recollection" Ms. Spector "became familiar with Roundup through advertisements" and that she "believe[s]" she saw ads on television and in print). And she admits that she cannot identify the specific content of the advertisements she "believe[s]" she saw. *See id.* ¶ 5 ("While I cannot recall exact specifics of the Roundup advertisements I saw…"). These statements fall far short of Rule 56's specificity requirement. *See Sullivan*, 623 F.3d at 780.

Finally, even if the affidavit *were* sufficiently specific, and even if it *were not* a sham affidavit, Plaintiffs' claims would still fail as a matter of law. Plaintiffs merely assume, with no legal support, that where a plaintiff does not read the product's label, he or she can still prove causation by virtue of seeing product advertisements that did not contain a warning. In fact, courts applying Pennsylvania law have dismissed claims under such circumstances. *See, e.g.*, *Flanagan*, 259 F. Supp. 3d at 318 (granting defendants' summary judgment motion where the plaintiff purchased the product because television advertisements "piqued [his] interest," but did not look at the product's warnings or instructions).

In all, Plaintiffs' claims fail because (1) they present no evidence tending to show that a different warning label on the Roundup-branded products Ms. Spector used would have led to a different outcome, and (2) they present no factual or legal support for their argument that their claims can rest on Ms. Spector's knowledge of Monsanto's advertisements for Roundup.

### III. PLAINTIFFS' NEGLIGENCE CLAIM FAILS FOR LACK OF CAUSATION AS WELL

Lastly, Plaintiffs argue that even if their strict liability and breach of warranty claims fail, their negligence claim can survive.[6] Opp. at 15 n.12. While strict liability and negligence claims are "independent grounds for a personal injury claim," *see Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir. 1992), they both require evidence that Monsanto's actions caused Ms. Spector's injuries, *see, e.g.*, *Shoey ex rel. Litz v. Duck Head Apparel Co., Inc.*, 49 F. Supp. 2d 413, 420-21 (M.D. Pa. 1999).

---

[6] Plaintiffs do not dispute that Monsanto's warnings causation argument applies equally to Plaintiffs' strict liability design defect and breach of warranty claims. *See* MSJ at 1-2, 5-6.

As noted in Monsanto's opening brief, each of Plaintiffs' claims depends upon the theory that Monsanto's failure to warn of Roundup's allegedly dangerous propensities caused Ms. Spector's injuries. Her testimony that she never looked at the Roundup label, and Plaintiffs' failure to proffer any evidence that Ms. Spector would have looked at a different label that included their preferred warnings, therefore dooms Plaintiffs' negligence claim as well.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion for summary judgment.

Dated: October 20, 2021  Respectfully submitted,

*/s/ Jed P. White*
Jed P. White
Attorney for Defendant Monsanto Company

8
MONSANTO'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
*SPECTOR, ET AL. V. MONSANTO, CO.*, NO. 3:20-CV-05532

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to the within action; my business address is 120 Broadway, Suite 300, Santa Monica, CA 90401-2386. My email address is raul.morales@bclplaw.com.

On October 20, 2021, I served the foregoing document(s), described as: **MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** on each interested party in this action, as follows:

☒ BY CM/ECF NOTICE OF ELECTRONIC FILING:  I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court, or by another manner as authorized by FED. R. CIV. P. 5.

Executed on October 20, 2021, at Santa Monica, California.

☒ FEDERAL:  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*/s/ Raul Morales*
Raul Morales