**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION,<br><br>*David Schaffner, Jr. and Theresa Sue Schaffner v. Monsanto Co.,* Case No. 3:19-cv-07526-VC | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S MOTION TO EXCLUDE PLAINTIFFS' SPECIFIC CAUSATION EXPERT DR. RON SCHIFF ON RULE 702 GROUNDS**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

# **TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**ARGUMENT** .........................................................................................................................2

**I.     Dr. Schiff Failed To Properly Assess Alternative Causes Of Mr. Schaffner's NHL.** ...........................................................................................................................2

**II.    Dr. Schiff Has Not Reliably Ruled Out Unknown Causes Of Mr. Schaffner's NHL And Instead Always Points To Roundup.** ...............................................................7

**CONCLUSION** .....................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clausen v. M/V New Carissa*,
  339 F.3d 1049 (9th Cir. 2003) ............................................................................................ 4, 5, 7

*Guinn v. AstraZeneca Pharm. LP*,
  602 F.3d 1245 (11th Cir. 2010) ................................................................................................. 8

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ......................................................................................... 4, 6, 7, 8

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999) ....................................................................................................... 4

*Huerta v. BioScrip Pharm. Serv., Inc.*,
  429 Fed. App'x 768 (10th Cir. 2011) ......................................................................................... 5

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ................................................................................................ 6, 7

*Wendell v. GlaxoSmithKline LLC*,
  858 F.3d 1237 (9th Cir. 2017) ............................................................................................*passim*

*Wilson v. Taser Int'l, Inc.*,
  303 F. App'x 708 (11th Cir. 2008) ............................................................................................. 4

**Other Authorities**

Pretrial Order 85 ............................................................................................................... 1, 2, 7, 8

Federal Rule of Civil Procedure 702 ............................................................................................ 7, 8

# INTRODUCTION

Plaintiffs' Response Brief (MDL ECF No. 13949) confirms that their one specific causation expert, Dr. Ron Schiff, falls far short of the admissibility standard this Court established in Pretrial Order 85 ("PTO 85") (MDL ECF No. 2799). Dr. Schiff has not followed the same methodology as the experts previously admitted in the initial federal trials, despite adopting the label of "differential diagnosis" or "differential etiology." Unlike the specific causation opinions the Court previously admitted, Dr. Schiff does not rule out or weigh other risk factors, most notably Plaintiff David Schaffner, Jr.'s history of benzene exposure[1] and inflammatory bowel disease, both of which Dr. Schiff believes can cause non-Hodgkin's lymphoma ("NHL").

Plaintiffs argue that Dr. Schiff does not need to rule out Mr. Schaffner's occupational benzene exposure or history of inflammatory bowel disease as potential causes because those risks are "undocumented" and, in any event, it does not matter if Mr. Schaffner had other risk factors because causation can be "multifactorial." *See, e.g.*, Resp. Br. at 6. Both arguments fail.

First, contrary to what Plaintiffs claim, there is substantial documented evidence of Mr. Schaffner's occupational benzene exposure and history of inflammatory bowel disease, including in Mr. Schaffner's fact sheet, his deposition, and Dr. Schiff's deposition.

Second, under Ninth Circuit law and PTO 85, to have an admissible specific causation opinion, Dr. Schiff must have a valid scientific reason to conclude that Roundup is the "most likely cause" of Mr. Schaffner's NHL. Plaintiffs' argument that Dr. Schiff need not rule out every conceivable alternative cause misses the point. Monsanto is not accusing Dr. Schiff of ignoring hypothetical or remote risk factors. Dr. Schiff ignored risk factors specific to Mr. Schaffner that he has testified can cause NHL. This was not a casual oversight. Dr. Schiff ignored multiple studies suggesting an association between benzene and NHL that he has relied on in other litigation (when

---

[1] As discussed further below, Dr. Schiff did evaluate Mr. Schaffner's history of benzene exposure from smoking cigarettes, but ignored his occupational history of benzene exposure from use of other chemicals. And even with respect to smoking, Dr. Schiff acknowledged that he could not say smoking "did not" contribute or "could not have contributed to cause Mr. Schaffner's lymphoma." *See* Sep. 22, 2021 White Decl., Ex. 1, Schaffner Dep. at 112:23-113:5.

testifying that benzene caused another plaintiff's cancer) or claimed he reviewed in this case. *See* Oct. 20, 2021 White Decl., Exs. 10-13 (discussed in detail below).[2]  Ultimately, Dr. Schiff lacks any scientific reason to conclude that Roundup is more likely to be the cause of Mr. Schaffner's NHL than his other risk factors.  The only "reason" Dr. Schiff offers (lack of documentation) is factually inaccurate, has no scientific underpinning, and is just a ruse to brush aside unhelpful evidence so Dr. Schiff can reach his pre-ordained conclusion that Roundup is the cause of Mr. Schaffner's NHL (the same conclusion he has reached in every Roundup case in which he has been retained).

Dr. Schiff also offers no means to address idiopathy—*i.e.,* "differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," PTO 85 at 4—which the Court previously held is required for admissibility.  Dr. Schiff's methodology is not a reliable differential diagnosis/etiology and his opinions should be excluded.

## ARGUMENT

**I.     Dr. Schiff Failed To Properly Assess Alternative Causes Of Mr. Schaffner's NHL.**

In its Motion, Monsanto established that Mr. Schaffner has at least two other NHL risk factors—benzene exposure and inflammatory bowel disease—for which Dr. Schiff lacks a scientific reason to rule out or conclude are less likely to be the cause of Mr. Schaffner's NHL than Roundup. *See* Mot. at 2-4.  As a result, Dr. Schiff has not performed a reliable differential etiology/diagnosis and he lacks foundation to conclude that Roundup is the "most likely cause" of Mr. Schaffner's NHL. *Id.* at 3 (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003)).

Plaintiffs do not dispute that benzene exposure and inflammatory bowel disease are NHL risk factors according to Dr. Schiff's own testimony.  After all, Dr. Schiff acknowledged both are, and testified that benzene is classified by IARC as a Group 1 carcinogen, which is a stronger classification than IARC's Group 2A classification for glyphosate. Mot. at 3-4 (citing Sep. 22, 2021 White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 97:23-98:16, 100:12-16, 111:19-112:3).  Instead, they argue that Mr.

---

[2] Citations to "Sep. 22, 2021 White Decl." refer to the September 22, 2021 Declaration of Jed P. White filed in support of this Motion, which included Monsanto's Exhibits 1 through 9, MDL Dkt. No. 13781. Citations to "Oct. 20, 2021 White Decl." refer to the October 20, 2021 Declaration of Jed F. White filed in support of this Reply Brief, which include Monsanto's Exhibits 10 through 13.

Schaffner's benzene exposure through tobacco was "limited," that "Monsanto adduced no other evidence of actual benzene exposure," and that Mr. Schaffner's irritable bowel disease diagnosis "was not documented." Resp. Br. at 4. Plaintiffs' arguments have no merit.

Contrary to what Plaintiffs now claim, there is significant evidence in the record showing that Mr. Schaffner was exposed to benzene from sources other than tobacco. Mr. Schaffner's fact sheet states he had an occupational history working as an electrician, handling solvents, working with horticulture, metal working, painting, exterminating pests, and using pesticides. *See* Mot. at 3 (citing Sep. 22, 2021 White Decl., Ex. 7). In his deposition, Mr. Schaffner testified that he was exposed to latex and oil-based paints, paint thinners, Gumout, mineral spirits, Kocide, Mavrik, Orthene, Pyrethrin, Sevin, and horticultural oil. *Id.* (citing Sep. 22, 2021 White Decl., Ex. 8, Schaffner Dep. at 75:8-15, 78:3-6, 90:23-96:10, 246:16-247:4). And Dr. Schiff testified in his deposition that many of the chemicals to which Mr. Schaffner was exposed often contain benzene, including paint thinners, latex and oil paints, Gumout, and mineral spirits. *Id.* at (citing Sep. 22, 2021 White Decl., Ex. 1, Schiff (*Schaffner*) Dep. at 116:16-119:17). Dr. Schiff also acknowledged that Mr. Schaffner was exposed to chemicals "at his maintenance business," some of which "were contaminated by benzene," and that his "occupational exposure to benzene through latex paint, oil base [sic] paint, paint thinner, Gumout and mineral spirits *would increase his risk of non-Hodgkin lymphoma*." *Id.* at 105:6-11, 119:8-14 (emphasis added).

In addition, there is significant evidence in the record showing that Mr. Schaffner had a history of inflammatory bowel disease, an umbrella term that includes irritable bowel syndrome, colitis, and other conditions that involve chronic inflammation of the digestive tract. Mr. Schaffner testified: "I was diagnosed as having colitis and irritable bowel syndrome. The doctor always kind of wasn't sure. He called it that because he didn't know what else to call it." Sep. 22, 2021 White Decl., Ex. 8, Schaffner Dep. at 246:22-247:4; *see also* Ex. 7, Plaintiff Amended Fact Sheet (Mr. Schaffner checked "Yes" for "Auto-immune diseases (including but not limited to Crohn's disease, Ulcerative Colitis, HIV)"). Dr. Schiff's report acknowledges that Mr. Schaffner was treated for inflammatory bowel disease through mesalamine and a partial colectomy. Sep. 22, 2021 White Decl., Ex. 3, Schiff Report,

- 3 -
REPLY BRIEF IN SUPPORT OF MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF
3:19-CV-07526-VC

p. 187. The record thus shows Mr. Schaffner had some type of inflammatory bowel disease, most likely colitis or irritable bowel syndrome but perhaps some other type. A doctor would not perform a partial colectomy, a major surgery, if Mr. Schaffner did not have any underlying bowel condition.

Plaintiffs next argue that Dr. Schiff was not required to "rule out every other possible factor in the plaintiff's development of a disease." Resp. Br. at 8 (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1237 (9th Cir. 2017)). This argument misses the point of Monsanto's Motion. Monsanto is not arguing that Dr. Schiff's opinions are unreliable because he failed to address some hypothetical or remote risk factor. Dr. Schiff ignored two risk factors that the he himself acknowledged are plausible alternative causes. Even if Dr. Schiff did not need to rule out *all* alternative causes, he at least had to rule out any *plausible* alternative causes. *See, e.g.*, *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) ("Although a medical expert need not rule out every possible alternative in order to form an opinion on causation, expert opinion testimony is properly excluded as unreliable . . . if 'the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness.'") (quotation omitted); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) ("where a defendant points to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable") (quotation omitted; emphasis in original).

This rule is consistent with all the Ninth Circuit cases, including *Wendell*. Each case confirms that a differential diagnosis/etiology is only admissible if the expert has a reliable basis to conclude that the product at issue is the most likely cause of the plaintiff's illness. *See Clausen*, 339 F.3d at 1057 (in the second step of a differential etiology, an expert must "engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the *most likely cause* of the findings in that particular case") (emphasis added); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 966 (9th Cir. 2021) ("To establish specific causation, experts needed to show that [the plaintiff's] NHL was caused by glyphosate, *rather than some other*

- 4 -
REPLY BRIEF IN SUPPORT OF MONSANTO'S MOTION TO EXCLUDE TESTIMONY OF DR. RON SCHIFF
3:19-CV-07526-VC

*factor*.") (emphasis added); *Wendell*, 858 F.3d at 1234 (explaining that a differential diagnosis involves ruling out alternative causes "as to which there is no plausible evidence of causation, and then determin[ing] the *most likely cause* among those that cannot be excluded") (emphasis added). Dr. Schiff has not complied with this standard.

Indeed, the only justification Dr. Schiff offers for concluding that Roundup is a more likely cause for Mr. Schaffner's NHL than benzene exposure or inflammatory bowel disease is that the other risk factors are "undocumented." Resp. Br. at 4 & 6.[3] As demonstrated above, Dr. Schiff's justification is inconsistent with the record evidence. That alone warrants exclusion of his opinions. *See, e.g.*, *Huerta v. BioScrip Pharm. Serv., Inc.*, 429 Fed. App'x 768, 777 (10th Cir. 2011) (affirming exclusion of expert testimony because the expert ignored "contradictory evidence" to rule out non-adherence as the cause of the plaintiff's kidney rejection). In addition to being inconsistent with the record, Dr. Schiff's purported reasoning is also insufficient because it does not use "scientific methods and procedures." *See Clausen*, 339 F.3d at 1058. A medical doctor performing a differential diagnosis faced with an alternative explanation for the patient's medical condition would investigate further, not simply cast aside the alternative explanation because it is inconsistent with his pre-ordained conclusion, which is precisely what Dr. Schiff did here. More is required for a differential diagnosis/etiology and a satisfactory scientific methodology to testify to a jury that Roundup is the cause of Mr. Schaffner's NHL.

Dr. Schiff's choice to brush aside benzene as a risk factor is particularly egregious because he ignored data he has relied on in other litigation that, according to his bankrupt methodology, shows a link between benzene and NHL. Indeed, Dr. Schiff has testified in other cases—this year—that benzene caused a plaintiff's cancer (specifically, acute myeloid leukemia ("AML")), while relying on articles indicating there is an association between benzene and both AML and NHL. *See* Oct. 20,

---

[3] Dr. Schiff did analyze Mr. Schaffner's smoking history, concluding it was "limited" and less frequent than his Roundup exposure. *See* Resp. Br. at 4. While Monsanto disagrees with Dr. Schiff's analysis, it might be sufficient at this stage if Mr. Schaffner had never been exposed to benzene through other sources. But Mr. Schaffner was exposed to benzene through other sources, and Dr. Schiff did not analyze those exposures or Mr. Schaffner's inflammatory bowel disease. Dr. Schiff's failure to address these critical points renders his opinion unreliable and inadmissible.

2021 White Decl., Ex. 10, Schiff (*Melloway*) Report at 42 (citing Loomis, D., *et. al.*, 2017. Carcinogenicity of benzene. Lancet Oncology 18:1574-5 ("Loomis 2017") and IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, 2012. Benzene. In Chemical Agents and Related Occupations. Volume 100F: A Review of Human Carcinogens. Lyon, France, pp 249-94 ("IARC 2012").). One article Dr. Schiff relied on in the benzene litigation but ignored in this case, IARC 2012, for example, noted a "positive association . . . between exposure to benzene . . . and non-Hodgkin lymphoma" and stated "Benzene is *carcinogenic to humans (Group 1)*." Oct. 20, 2021 White Decl., Ex. 11, IARC 2012, p. 285 (emphasis in original). Another article Dr. Schiff relied on in the benzene litigation but ignored in this case, Loomis 2017 states that, in 2017, IARC again noted a positive association between benzene and NHL with a small minority of the working group believing the evidence linking benzene and NHL was "sufficient." Oct. 20, 2021 White Decl., Ex. 12, Loomis 2017 at 1574. Dr. Schiff did not cite or discuss these articles in his report in this case. Sep. 22, 2021 White Decl., Ex. 3, Schiff Report.

In addition to ignoring articles he relied on in the benzene litigation, Dr. Schiff also overlooked IARC's 2018 Benzene Monograph ("IARC 2018"), which he cited in his report in this case but cursorily dismissed as insignificant. *Id.* at 195 (citing International Agency for Research on Cancer, 2018. IARC Monogr. Eval. Carcinog. Risk Chem. Hum Volume 120. Benzene. IARC Working Group, Lyon, France, pp 290-1, 297). But, according to Dr. Schiff's own reasoning, IARC 2018 would suggest a link between benzene and NHL. IARC 2018, for example, states that Linet 2015, an occupational cohort study, reported a risk ratio of 3.9 between factory workers exposed to benzene and incidence of NHL, and that Orsi 2010, an epidemiological study, reported a risk ratio of 7.2 between benzene exposure and incidence of diffuse large cell lymphoma, Mr. Schaffner's NHL subtype. *See* Oct. 10, 2021 White Decl., Ex. 13, IARC 2018 at 112, 135. Dr. Schiff's minimization of unhelpful data confirms that he did not seriously consider other risk factors and lacks a reliable basis to conclude that Mr. Schaffner's Roundup exposure, not other risk factors, caused his NHL.

Finally, Plaintiffs argue that Dr. Schiff has offered an opinion "materially identical to the specific causation testimony admitted into evidence in *Hardeman* . . . and deemed to be admissible

in both *Wendell* and *Messick*." Resp. Br. at 8-9. Plaintiffs' argument misreads those cases. In *Hardeman*, the court found the experts had scientific reasons to rule out HCV as a risk factor because it had not been active "for the decade preceding [Hardeman's] NHL diagnosis," and the scientific literature showed that HCV had to be active to cause NHL. *Hardeman*, 997 F.3d at 967; *see also* PTO 85 at 6 ("the plaintiffs had no other significant risk factors"). Similarly, in *Wendell*, the plaintiff's only other known risk factors were "sex and age," which the expert concluded were "weak risk factors," *Wendell*, 858 F.3d at 1235, and in *Messick*, the expert had a scientific basis to conclude that, even though the plaintiff had other risk factors, the drugs in question were a necessary cause ("the oxygen necessary to start a fire"), *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014). By contrast, here, there are other potential causes of Mr. Schaffner's NHL, both of which Dr. Schiff believes can cause NHL and neither of which Dr. Schiff offers any scientific basis to rule out as the most likely cause. *See, e.g.*, Mot. at 4-5 (quoting Sep. 22, 2021 White Decl., Ex. 1, Schiff Dep. at 120:16-21) ("Q. How much did Mr. Schaffner's exposure to benzene through these other chemical products increase the risk of – his risk of non-Hodgkin lymphoma? A. Well, as I've indicated, there's no possible way to know it.").

Overall, Plaintiffs take the position that any acknowledgment of a potential risk factor, no matter how casual or cursory, is sufficient to insulate Dr. Schiff from scrutiny. That is not the law, and not consistent with this Court's rulings in PTO 85. The Court should reject Plaintiffs' attempt to turn the Rule 702 analysis into a box-checking exercise devoid of serious scrutiny.

**II.    Dr. Schiff Has Not Reliably Ruled Out Unknown Causes Of Mr. Schaffner's NHL And Instead Always Points To Roundup.**

Plaintiffs do not meaningfully defend Dr. Schiff's failure to address the undisputed fact that the vast majority of NHL cases have no known cause. *See* Mot. at 8-9. As shown in Monsanto's Motion, Dr. Schiff acknowledged that most NHL cases are idiopathic and he has no explanation for the fact that in clinical practice he never told a patient his or her NHL was caused by Roundup, yet he has concluded that for every plaintiff he has analyzed as a paid litigation expert (at least 17) that Roundup was the cause of the plaintiff's NHL. *Id.* at 2, 8-9.

Plaintiffs argue that Dr. Schiff only must conclude that Roundup was a "substantial causative factor." Resp. Br. at 8. This argument does not respond to the fact that a reliable differential diagnosis/etiology must find the "most likely cause." *See Clausen*, 339 F.3d at 1057; *see also Hardeman*, 997 F.3d at 966; *Wendell*, 858 F.3d at 1234. If Mr. Schaffner's NHL had another cause, whether unknown or known, then Dr. Schiff lacks a reliable basis to conclude that Roundup was a substantial causative factor. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255 (11th Cir. 2010) (even if a disease may have multiple causes, an expert "cannot merely conclude that all risk factors for a disease are substantial contributing factors in its development"). The Court's clear instruction in PTO 85 is that "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *See* PTO 85 at 4. Plaintiffs and Dr. Schiff ignore this directive.

But Plaintiffs cannot ignore idiopathy simply because the court has previously found different opinions from different experts regarding different plaintiffs to be admissible. It is true that the Court concluded the first round of experts had "provided a basis for their conclusions that the [prior] plaintiffs f[e]ll into the category of Roundup users who developed NHL" because they used the product. PTO 85 at 6. Plaintiffs apparently believe this finding means that the issue of idiopathy is resolved for all future plaintiffs in this MDL, even if they offer different experts who have failed to address idiopathy entirely. That is not the case. *See Hardeman*, 997 F.3d at 976 ("Different Roundup cases may present different considerations, leading to different results. . . . much of this expert testimony was unique to Hardeman's specific case. Thus, it would not be unreasonable for the district court to revisit the admissibility of expert testimony based upon the facts raised in future cases.").

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiffs' specific causation expert, Dr. Schiff, on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiffs have failed to present at least one admissible expert opinion to support specific causation in this case.

Dated: October 20, 2021

Respectfully submitted,

*/s/ Jed P. White*
_____

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310-576-2200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                          */s/ Jed P. White*