**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel:  202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, <br><br> *Vosper, et al. v. Monsanto, Co.*, No. 3:19-cv-05525-VC | MDL No. 2741 <br><br> Case No. 3:16-md-02741-VC <br><br> **MONSANTO COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs respond ("Opp.") to Monsanto Company's ("Monsanto's") motion for summary judgment ("MSJ") by largely rehashing the baseless allegations in their complaint, and repeatedly emphasizing that Monsanto never warned consumers that its Roundup-branded products cause non-Hodgkin's Lymphoma ("NHL").  These arguments entirely miss the point.  Monsanto has never included Plaintiffs' preferred warning because there is no valid scientific evidence linking Roundup to NHL.  And the U.S. Environmental Protection Agency ("EPA") has accordingly prohibited Monsanto from including on its Roundup label that its use can cause NHL.  More to the point, Monsanto's MSJ is based not on the purported adequacy of its warnings, but on the fact that Mr. Vosper admitted during his deposition that he never looked at the warning label on any of the Roundup-branded products he used.  The purported inadequacy of the labels therefore was not the proximate cause of Mr. Vosper's injuries, dooming each of Plaintiffs' claims.

## ARGUMENT

### I. EACH OF PLAINTIFFS' CLAIMS DEPENDS UPON THE ALLEGED FAILURE TO WARN

Plaintiffs state that Monsanto's motion addresses only Plaintiffs' strict liability failure to warn claim. Opp. at 9.  This is not the case.  Monsanto's motion attacks each of Plaintiffs' claims, because each claim depends upon the assertion that Monsanto knew or should have known that its Roundup-branded products cause cancer, but did not warn consumers.  *See* MSJ at 2 (citing complaint paragraphs).  For their design defect claim, Plaintiffs do not allege any specific defect within the product that renders it unreasonably dangerous other than the alleged inadequacy of its warnings.  *See* Compl. ¶ 158.  And Plaintiffs' breach of warranty claims are similarly based on the bare assertion that the product did not sufficiently warn of the alleged harm.  *Id.* ¶¶ 217, 226.  Finally, the negligence claim is largely duplicative of the strict liability claim, but with the added burden of showing that Monsanto acted negligently.  *Id.* ¶¶ 192-208.

Because each claim hinges on the alleged inadequacy of Monsanto's warnings, each claim fails if Mr. Vosper cannot show that a different warning would have made a difference in preventing his development of NHL.  As discussed below, because Mr. Vosper admitted he never looked at the

labels of the Roundup-branded products he used (*see* MSJ at 4), he cannot provide that evidence to create a disputed material fact for trial.

## II.  A HEEDING PRESUMPTION DOES NOT APPLY TO PLAINTIFFS' CLAIMS

Plaintiffs rely on *Pavlik v. Lane Ltd./Tobacco Exporters International*, 135 F.3d 876 (3d Cir. 1998) to argue that Pennsylvania state courts recognize the heeding presumption for a warnings causation analysis. Because the Pennsylvania Supreme Court has not ruled on whether the presumption should apply, the court in *Pavlik* was in the position of predicting how it would rule if faced with the question. *See Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004). The *Pavlik* court "predict[ed]" that the state supreme court would "adopt a rebuttable heeding presumption" because of the supreme court's previous adoption of comment j to Section 402A of the Restatement (Second) of Torts. *Pavlik*, 135 F.3d at 883. Comment j sets forth a presumption that "where a warning is given, the seller may reasonably assume that it will be read and heeded"—a presumption that aids a manufacturer where adequate warnings are provided. *Id.* The *Pavlik* court's 1998 prediction that the Pennsylvania Supreme Court would extrapolate this principle to a heeding presumption that aids plaintiffs in showing proximate causation is not binding on this Court. Instead, the Court must conduct its own analysis to determine, based on Pennsylvania state court precedent as of 2021, how Pennsylvania's highest court would rule on this question. The Third Circuit has stated that intermediate state court decisions are "particularly relevant" to answering that question, and that those intermediate decisions should "'not … be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Covington,* 381 F.3d at 218.

Since *Pavlik*, intermediate state court decisions have ruled that despite the Pennsylvania Supreme Court's adoption of comment j, Pennsylvania <u>does not</u> recognize a general heeding presumption to aid a plaintiff's burden to prove proximate causation. *See Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 537-38 (Pa. Super. Ct. 2003), *aff'd*, 881 A.2d 1262 (Pa. 2005); *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 634 n.3 (Pa. Super. Ct. 2004); *see also Dolby v. Ziegler Tire & Supply Co.*, No. 694 WDA 2016, 2017 WL 781650, at *5 (Pa. Super. Ct. Feb. 28, 2017). Instead, Pennsylvania courts have applied the presumption only in cases that involve "work related asbestos

2

exposure." *Viguers*, 837 A.2d at 538.  As the court in *Viguers* explained, there is a public policy rationale for applying the presumption in those cases, because "[p]laintiffs who are exposed to asbestos and other products as a condition of their employment have little choice but to be in an environment where the asbestos or other products are present." *Id.*  But that public policy rationale does not extend to situations where the plaintiff's injuries are due to his "voluntary choice" to engage in the activity that allegedly caused his harm. *Id.*

Although Mr. Vosper claims to have been exposed to Roundup during his employment, the reasoning in the cases applying the heeding presumption to work-related asbestos exposures does not apply here.  Unlike the plaintiffs in those cases, here the record reflects that Mr. Vosper had the autonomy to choose which pesticide products he used during his employment.  The work-related Roundup exposure Plaintiffs cite in their opposition principally took place between 1999 and 2018 when Mr. Vosper was employed in the landscaping and hardscaping business.  Opp. at 3-5.[1]  The vast majority of the work-related exposure during this period allegedly took place from 2004 to 2012, when Mr. Vosper worked for a company called Rinox. *See* Opp. at 4; White Reply Decl. ¶ 2, Ex. 1 (Ira Vosper Dep. at 162:14-163:14, 165:9-13).  Mr. Vosper testified that while employed at Rinox, he sprayed Roundup to kill weeds around displays erected to market the companies' products. *Id.* (Ira Vosper Dep. at 162:21-165:13).  Mr. Vosper further testified that while at Rinox, he had "*basically 100 percent control*" over his work, and received oversight from the company's board for "big decisions." *Id.* (Ira Vosper Dep. at 84:1-7) (emphasis added).  Mr. Vosper's testimony with respect to his employment at Grinnell (from 1999 to 2002 (*see* Opp. at 4)) similarly shows that Mr. Vosper himself chose to use Roundup to complete his job-related duties. *See* White Reply Decl. ¶ 2, Ex. 1 (Ira Vosper Dep. at 122:15-126:8) (testifying that during his employment at Grinnell, he would choose to purchase or borrow Roundup to clean the area around his displays).

---

[1] Plaintiffs also note that Mr. Vosper alleges he was exposed to Roundup while employed at a golf course in high school.  Opp. at 3.  Mr. Vosper conceded in his deposition that his exposure while employed at the golf course was minimal.  Reply Declaration of Jed White ("White Reply Decl.") ¶ 2, Ex. 1 (Ira Vosper Dep. at 88:19-90:16) (testifying that his job at the golf course was "on and off," the "shortest probably job [he'd] had," and that only "on a few occasions" during that work did he spray a weed-killing product).

This testimony thus refutes any contention that Mr. Vosper was exposed to Roundup while employed as a result of his employer's—rather than his own—choices.[2]  Thus, the reasoning of those Pennsylvania intermediate court decisions applying the heeding presumption is not present here.

In all, Pennsylvania's appellate courts indicate that Pennsylvania does not recognize the heeding presumption in circumstances where, as is the case here, the plaintiff had the autonomy to decide whether or not to use the subject product.  This Court must view those decisions as an indication of how the Pennsylvania Supreme Court would rule on this question, unless it is convinced otherwise by "persuasive data."  *Covington,* 381 F.3d at 218.  Plaintiffs have presented no *state* court decisions indicating that Pennsylvania applies the presumption in circumstances like those present here.  In support of their contentions, Plaintiffs have instead cited only non-binding federal district court orders.  Opp. at 15-16.  Because the state court decisions post-*Pavlik* have clearly cabined the heeding presumption to circumstances not present here, the Court should follow those intermediate decisions—as it must—and not apply the presumption to Plaintiffs' claims.

## III. EVEN IF A HEEDING PRESUMPTION APPLIED, PLAINTIFFS' CLAIMS WOULD STILL FAIL

If the Court applies the heeding presumption to Plaintiffs' claims, it would first need to determine whether Monsanto has rebutted the presumption with evidence that, had an adequate warning been provided, Ira Vosper would not have read and heeded the adequate warning.  *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 620 (Pa. Super. Ct. 1999).  Monsanto has done so with Mr. Vosper's testimony that he never read the warning label on any of the Roundup bottles that he used throughout his life.  *See* MSJ at 4.  Courts applying the heeding presumption routinely

---

[2] Mr. Vosper's other work-related alleged exposures to weed-killing pesticides—at Haines and Kibbelhouse and Techo-Bloc—were either minimal or not conclusively to Roundup.  *See* White Reply Decl. ¶ 2, Ex. 1 (Vosper Dep. at 152:16-18, 154:19-157:16) (testifying he was employed at Haines & Kibbelhouse from 2003 to 2004, used a backpack sprayer only "a couple of times," and never saw a Roundup label associated with the pesticide in the sprayers); *id.* (Ira Vosper Dep. at 165:14-167:5 (testifying that he did not maintain the displays while employed at Techo-Bloc, and therefore had minimal exposure to Roundup during his employment there).

find that such evidence sufficiently rebuts the presumption. *See Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316, 321 (W.D. Pa. 2017); *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 454 (E.D. Pa. 2016); *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 562 (W.D. Pa. 2018) (similar), *aff'd*, 774 F. App'x 752 (3d Cir. 2019).

The burden is then on Plaintiffs to affirmatively "produce evidence that [Mr. Vosper] would have acted to avoid the underlying hazard had the defendant provided an adequate warning." *Coward*, 729 A.2d at 622. This evidence must be sufficient to establish that a different warning "may have made a difference" in preventing Mr. Vosper's injuries. *Conti v. Ford Motor Co.*, 743 F.2d 195, 199 (3d Cir. 1984). Plaintiffs have not presented evidence that meets this requirement.

*First*, Plaintiffs argue that a different warning would have led to a different outcome because Mr. Vosper testified that he stopped using Roundup when he learned of the allegations that it causes cancer and never would have used Roundup had it contained a cancer warning (*see* Opp. at 14). This argument misses the point. The thrust of Monsanto's argument is that Mr. Vosper testified that he did not look at the labels on the Roundup-branded products – meaning he would not have been apprised of the information included on a hypothetical adequate warning. Thus, Plaintiffs' evidence purporting to show what Mr. Vosper would have done *if he had been apprised* of Roundup's alleged risks is irrelevant to the question at-hand—whether Mr. Vosper would have seen any hypothetical adequate warning. Plaintiffs present no evidence that he would have, meaning that even if Monsanto had provided a different warning, there is no evidence creating a reasonable inference that that warning would have actually prevented Mr. Vosper's injuries. *Conti*, 743 F.2d at 198-99.

For this same reason, Plaintiffs are missing the point when they repeatedly emphasize that the label on the Roundup-branded products Mr. Vosper used did not contain any cancer warning.[3] *See* Opp. at 1, 17. Again, the material question is not what Mr. Vosper would have done had he seen the label. Rather, the question Mr. Vosper's testimony poses is *whether he would have ever seen* the hypothetical "adequate" warning, when he admittedly never looked at the product's label.

---

[3] It is of course true that no cancer warnings were included on the Roundup labels, because Monsanto—along with the U.S. Environmental Protection Agency—steadfastly refute the assertion that glyphosate causes NHL.

5

In similar situations where a plaintiff confesses to never having looked at a product's warnings, courts have granted summary judgment on causation grounds even where there was no warning provided relating to the purported defect. *See, e.g.*, *Flanagan*, 259 F. Supp. 3d at 320-21; *Mitchell v. Modern Handling Equip. Co.*, No. 2637, 1999 WL 1825272, at *6 (Pa. Com. Pl. June 11, 1999), *aff'd sub nom. Mitchell v. Modern Handling*, 748 A.2d 1260 (Pa. Super. Ct. 1999) ("[W]hen a plaintiff failed even to read the allegedly inadequate instructions accompanying the product, the plaintiff cannot prevail on the theory that if he had known of the alleged danger, he would not be in a position to misuse it."). In *Flanagan*, the plaintiff fell when a foldable, self-standing cane he purchased allegedly collapsed when he placed his weight onto it. 259 F. Supp. 3d at 317-18. The plaintiff testified that he used the cane shortly after his wife purchased it and brought it home, and that he did not look to see whether there were any warranties or instructions provided with the cane before using it and falling. *Id.* at 321. The product's packaging stated that the cane could "withstand up to 350 pounds," and the plaintiff did not allege that there was any warning on the product or its packaging related to its propensity to collapse or not withstand his weight. *Id.* at 318. Faced with this evidence, the Court concluded that the claim failed because "[t]he jury would . . . have to speculate that [the plaintiff] would have heeded a warning placed on materials accompanying the [product] even though he testified under oath that he did not read these materials." *Id.* at 321 (citing *Conti*, 743 F.2d at 198-99). The same is true here, as Plaintiffs cite no evidence suggesting that Mr. Vosper would have looked at the product's label if a different warning had been given.[4]

---

[4] Plaintiffs misconstrue the cases Monsanto cited in its MSJ as turning on an analysis that the warning labels provided to the plaintiff were adequate. Opp. at 16-17. Those cases instead depended upon the evidence suggesting that the plaintiff never read the relevant warning label at all, such that the adequacy of the warning was irrelevant to whether or not the plaintiff was injured. *Flanagan*, 259 F. Supp. 3d at 321 (granting summary judgment because "[t]he jury would then have to speculate that [p]laintiff would have heeded a warning placed on materials accompanying the HurryCane even though he testified under oath that he did not read these materials"); *Wright*, 175 F. Supp. 3d at 454 ("As Wright admits he never read the Operator's Manual, the purported inadequacy of the unread warnings therein could not have caused his injury."); *Chandler*, 340 F. Supp. 3d at 562 (finding that "no evidence has been presented to demonstrate that an adequate warning may have prevented her injury" because "the record is undisputed that [p]laintiff did not read the warnings on the exterior of the Defy Breakage relaxer box").

*Second*, Plaintiffs suggest that they can prove the causation element despite Mr. Vosper's admission that he never looked at the product label, because Mr. Vosper testified that he did see Roundup television advertisements. *See* Opp. at 5. But Plaintiffs fail to identify any case holding that where a plaintiff does not read the product's label, he or she can still prove causation by virtue of seeing product advertisements that did not contain a warning. In fact, courts applying Pennsylvania law have dismissed claims under such circumstances. *See, e.g.*, *Flanagan*, 259 F. Supp. 3d at 318 (granting defendants' summary judgment motion where the plaintiff purchased the product because television advertisements "piqued [his] interest," but did not look at the product's warnings or instructions). And even if courts applying Pennsylvania law did credit Plaintiffs' argument, Mr. Vosper's testimony would be insufficient to suggest that a warning in the television advertisements he saw would have prevented his injuries. Mr. Vosper offered no evidence that he saw any advertisements prior to his exposure to Roundup and, thus, any jury determination that a warning in television advertisements he saw, even if heeded, would have prevented his NHL would be impermissibly based on speculation. *See Conti*, 743 F.2d at 198-99. Regardless, however, affirmative evidence in the record establishes that Mr. Vosper did not see advertisements until after he had already used Roundup for many years. *Compare* White Reply Decl. ¶ 2, Ex. 1, Ira Vosper Dep. at 209:4-13 (testifying that he recalled seeing Roundup advertisements once he owned his own home) *with* Declaration of Christian P. Labletta ¶ 4, Ex. 3, Affidavit of Ira Vosper at ¶ 3 (stating that he used Roundup every year since he was 9 years old).

## IV.  PLAINTIFFS' NEGLIGENCE CLAIM FAILS FOR LACK OF CAUSATION AS WELL

Lastly, Plaintiffs argue that even if their strict liability and breach of warranty claims fail, their negligence claim can survive. While strict liability and negligence claims are "independent grounds for a personal injury claim," *see Griggs v. BIC Corp.*, 981 F.2d 1429, 1435 (3d Cir. 1992), they both require evidence that Monsanto's actions caused Mr. Vosper's injuries, *see, e.g.*, *Shouey ex rel. Litz v. Duck Head Apparel Co.*, 49 F. Supp. 2d 413, 420-21 (M.D. Pa. 1999). As addressed *supra* in Section I, each of Plaintiffs' claims depends upon the theory that Monsanto's failure to warn of Roundup's allegedly dangerous propensities caused Mr. Vosper's injuries. Mr. Vosper's

testimony that he never looked at the Roundup label, and Plaintiffs' failure to proffer any evidence that he would have looked at a different label that included their preferred warnings, therefore dooms Plaintiffs' negligence claim as well.

## **CONCLUSION**

For the foregoing reasons, Monsanto is entitled to summary judgment on Plaintiffs' claims.

Dated:  October 20, 2021                    Respectfully submitted,

*/s/ Jed P. White*
Jed P. White
*Attorney for Defendant Monsanto Company*