**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:   202-847-4030
Fax:   202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant
MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

**THE PIORKOWSKI LAW FIRM, PC**
Joseph D. Piorkowski, Jr.
(jpiorkowski@lawdoc1.com)
1800 K Street, NW, Suite 1000
Washington, DC 20006
Tel:  202-257-7662

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>*Beth Spector and Chuck Spector, wife and husband v. Monsanto Company*<br>Case No. 3:20-cv-05532 | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC<br><br>**DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT MARC BRAUNSTEIN ON RULE 702 GROUNDS**<br><br>Hearing date: December 13, 2021<br>Time: TBD |

# INTRODUCTION

Wave 3 Plaintiff Beth Spector has designated a new specific causation expert, Dr. Marc Braunstein, who does not meet the requirements of Federal Rule of Evidence 702 or the standards this Court imposed in Pre-Trial Order 85 ("PTO 85"). Although his report contains the words "to a reasonable degree of medical certainty," his deposition testimony revealed that he does not have a methodologically legitimate basis to attribute the Plaintiff's NHL to Roundup exposure. His deposition testimony regarding the medical literature cited in his expert report cannot be squared with a conclusion that the Plaintiff's NHL was caused by exposure to glyphosate or Roundup to a reasonable degree of medical certainly. In addition, Dr. Braunstein has failed to consider alternative risk factors for Ms. Spector's NHL.

Plaintiff's Opposition focuses primarily on Dr. Braunstein's expert report while ignoring his contradictory subsequent deposition testimony. Although the Opposition claims that Monsanto "chose to cherry-pick a few quotes from two consecutive pages" of Dr. Braunstein's deposition related to the lack of support for his opinion to a reasonable degree to medical certainty, it makes no mention of the numerous pages of testimonial quotes that follow that further undermine the basis for his opinion. Pls.' Resp. in Opp'n to Monsanto's Mot. to Exclude Test. of Pls.' Specific Cause Experts Dr. Marc Braunstein and Dr. Ronald Kendall, ECF No. 13901 at 5-6 ("Pls.' Opp'n"). The Opposition cites Dr. Braunstein's report as having listed general risk factors for the development of NHL. Pls.' Opp'n at 7. However, Dr. Braunstein included autoimmune disorders in his report's list of risk factors and then admitted at deposition that he had not formed any opinion about Ms. Spector's primary immunodeficiency. He further testified during deposition that he failed to consider her first degree relative with cancer, while acknowledging that there is literature to support it as a risk factor. Dr. Braunstein does not use a consistent, reliable scientific methodology based on sufficient data or facts, nor does he meet the requirements of a specific causation expert. Therefore, the Court should exclude him.

**I.  Dr. Braunstein's Deposition Testimony is Inconsistent with an Opinion of Causation to a Reasonable Degree of Medical Certainty.**

Dr. Braunstein's statements during deposition regarding the lack of definitiveness of the medical literature regarding glyphosate and/or Roundup and NHL, the lack of consensus in the medical community, and the consistent findings of no increased risk across nearly all studies when data was adjusted for other pesticide use contradict the conclusion in his expert report that glyphosate use caused Ms. Spector's NHL to a reasonable degree of medical certainty. *See* Declaration of Eric Lasker (October 20, 2021) ("Lasker Decl."), Ex. 15, Braunstein *Spector* Report at 14 (hereinafter, "Braunstein *Spector* Report"). As set forth in more detail in Monsanto's Motion, Dr. Braunstein made numerous admissions regarding the lack of consensus not only among the scientific community but also in the medical literature regarding whether glyphosate can cause NHL. *See* Lasker Decl., Ex. 16, Braunstein *Thomas* Dep. at 180:2-24, 181:19-23 (hereinafter, "Braunstein *Thomas* Dep."); Monsanto's Opening Brief, ECF No. 13792 at 5-6.

More specifically, Dr. Braunstein agreed that the medical literature <u>consistently</u> showed no relationship between Roundup and NHL when the data was adjusted for other pesticides. Contrary to what the Plaintiff would have one believe, this is not a dispute of whether Dr. Braunstein chose to rely more on IARC or on the EPA's analysis – the issue relates to the studies that Dr. Braunstein chose to include in his expert report and on which he specifically relied. Braunstein *Spector* Report at 12; Pls.' Opp'n at 6.

He agreed that, of the six studies included in Table 1 <u>of his report</u>, five and a half of them showed either (a) no statistically significant increase in risk of NHL for "ever" users of glyphosate or (b) no statistically significant increase in the risk of NHL for "ever" users of glyphosate when the data was adjusted for other pesticides. Braunstein *Spector* Report at 12; Braunstein (*Thomas*) Dep. at 227:13-24. Similarly, he agreed that both the Pahwa study and the 2019 North American Pooled Project showed <u>no statistically significant increase in NHL or any subtype of NHL</u> with "ever" users of glyphosate when adjusted for other pesticides. *Id.* at 228:10-12, 231:8-12, 233:24-234:14, 235:16-236:19.

The admissions made by Dr. Braunstein that medical literature shows a lack of association between glyphosate exposure and NHL are at odds with his rendering an opinion to a "reasonable

degree of scientific certainty" that Ms. Spector's NHL was caused by her glyphosate exposure. The opinion should thus be excluded.

**II.     Dr. Braunstein Failed to Adequately Assess Potential Alternative Causes of Plaintiff's NHL.**

Plaintiff's Opposition defends Dr. Braunstein's failure to meet the requirements for a specific causation expert by claiming that he "need not analyze every conceivable risk factor to satisfy Daubert." Pls.' Opp'n at 13. This overstatement shows Plaintiff's fundamental misunderstanding of the Court's prior ruling and the relevant precedent. Ninth Circuit law is clear that the first step of a reliable differential diagnosis requires an expert to "compile a comprehensive list" of possible causes. *Clausen v. M/V New Carissa*, 339 F. 3d 1049, 1057-58 (9th Cir. 2003) (expert must first "rule[] in *all* of the potential hypotheses that might explain a patient's symptoms") (emphasis added). Indeed, an expert's list must include even "rare" possible causes to ensure that, when the expert evaluates and "rules out" potential causes on the list during the second step of the differential diagnosis, rare – but nonetheless possible – causes "are not overlooked." *Id*. This case law is also reflected in PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself.").

Resisting this conclusion, Plaintiff suggests that *Wendall v. GlaxoSmithKline LLC*, 858 F. 3d 1227, 1237 (9th Cir. 2017), stands for the proposition that expert need not consider every potential risk factor for their opinions to be admissible. Pls.' Opp'n at 13. But *Wendall* affirms that, at the first step of the differential diagnosis, an expert must "assume[] the pertinence of *all* potential causes." *Wendall*, 858 F. 3d at 1234 (emphasis added). The passage quoted by the Plaintiff concerns the *second step* of a reliable differential diagnosis, when an expert examines each potential cause. At that second step, an expert need not definitively "rule out" all potential causes but one, so long as the expert has a sound basis for concluding that one particular cause is "the most likely." *Id*., see also *Cooper v. Takeda Pharm. Am*., 239 Cal. App. 4th 555, 577 (2015).

Dr. Braunstein failed both steps of a reliable differential diagnosis. He did not start with a comprehensive list of all possible causes, which Plaintiff's disclaim any responsibility to do, and he

did not examine and weigh all potential causes to determine which cause was most likely. Dr. Braunstein freely admitted during his deposition that the only two risk factors that he considered for Ms. Spector were smoking (which he claims she did briefly as a teenager) and glyphosate exposure. See Lasker Decl., Ex. 17, Braunstein *Spector* Dep. at 57:20-58:9 (hereinafter, "Braunstein (*Spector*) Dep"). With respect to her risk factor of having a first-degree family relative with cancer, he acknowledged that literature supports it as a risk factor, but he did not consider that risk factor for Ms. Spector despite her sister's melanoma. Braunstein (*Thomas*) Dep. at 90:8-20. Similarly, Dr. Braunstein's report mentions both immunodeficiency and autoimmune disorders as "recognized" risk factors for NHL, but did not address those acknowledged risk factors with respect to Ms. Spector, stating that he had not formed an opinion about her primary immunodeficiency. Braunstein *Spector* Report at 8; Braunstein (*Spector*) Dep. at 62:7-9.

In short, Dr. Braunstein considered no risk factors for Ms. Spector other than glyphosate exposure and short-term smoking in the distant past. He provided no basis for ignoring two other acknowledged risk factors, a first degree relative with cancer and immunodeficiency. An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'" *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Dr. Braunstein failed to conduct an analysis that complies with PTO 85 and other applicable law. His methodology is unreliable and his opinion should be excluded.

**III.   The Court Has Not Ruled That The Experts In This Case Have Properly Ruled in Roundup as the Cause of This Plaintiff's NHL.**

The Plaintiff's Opposition includes a heading entitled "This Court Has Already Ruled that Plaintiffs' Experts Properly Ruled in Roundup as the Cause of Plaintiffs' Non-Hodgkin's Lymphoma." Pls.' Opp'n at 15. While the Opposition did not substantively address this point whatsoever, there is no legal basis for the assertion because one expert survived a *Daubert* challenge, then all other experts on a similar issue must also survive such a challenge. Indeed, the specific cause

issue is necessarily one that is case specific with variables unique to each plaintiff, such as the particular plaintiff's type of cancer and level and type of exposure, among other variables. Dr. Braunstein, who has never previously served as a disclosed expert in any Roundup case, is subject to challenge if his opinions are inconsistent with Rule 702's requirements as they are here.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Dr. Braunstein on Rule 702 and *Daubert* grounds.

Dated:  October 20, 2021

By:  */s/ Eric G. Lasker*
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Hollingsworth LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843

Attorney for Defendant Monsanto Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

                                                              */s/ Eric G. Lasker*