**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

**THE PIORKOWSKI LAW FIRM, PC**
Joseph D. Piorkowski, Jr.
(jpiorkowski@lawdoc1.com)
1800 K Street, NW, Suite 1000
Washington, DC 20006
Tel:  202-257-7662

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| *Blair, et al.*  v. Monsanto Company<br>Case No. 3:19-cv-07984-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT SANFORD KATZ ON RULE 702 GROUNDS** |
| | Hearing date: December 13, 2021<br>Time: TBD |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Wave 3 Plaintiff, Mr. Joseph Blair, has designated Dr. Sanford Katz, as a treater-turned-specific causation expert, who does not meet the requirements of Federal Rule of Evidence 702 or the standards this Court imposed in Pre-Trial Order 85 ("PTO 85").  There are several grounds upon which the Court should grant Monsanto's Motion to exclude the testimony of Dr. Katz, any one of which is a sufficient basis to exclude.  The Plaintiff's Opposition sets forth *no substantive arguments* to defend against Monsanto's motion to exclude for failure to meet the requirements of Federal Rule of Evidence 702.   That in and of itself provides yet another basis for granting Monsanto's motion to exclude Dr. Katz's testimony.

*First*, Plaintiff has no response to the assertion in Monsanto's motion that Dr. Katz's testimony should be excluded as it does not meet the requirements of Federal Rule of Evidence 702 that the testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." Between the first part of his expert deposition on September 2, 2021, and the continuation of his deposition on September 17, 2021, Dr. Katz <u>changed</u> his opinion and, during the latter deposition, revealed that his new theory is that Mr. Blair more likely than not developed NHL due to <u>inhalation exposure</u>, while acknowledging that (1) the <u>medical literature relied upon in prior Roundup cases does not apply to inhalation exposure</u> and (2) <u>he is unable to identify any medical literature at all to support his novel theory</u>.  His newfound, untested theory, based on absolutely no medical data or scientific literature, is not based on sufficient facts or data, nor is it the product of reliable principles and methods.

*Second*, Plaintiff has no response to the assertion in Monsanto's motion that Dr. Katz's testimony should be excluded because it does not meet the requirements of Federal Rule of Evidence 702 that the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Dr. Katz testified that his only basis for his new theory is his own opinion as an "expert," but he also acknowledged that (1) he has no more knowledge than a lay person regarding the inhalation exposure of a commercial pesticide applicator and (2) that he has no information regarding a list of facts that he deems to be important in determining

MONSANTO'S REPLY ISO ITS MOTION TO EXCLUDE TESTIMONY OF PLS.' EXPERT
SANFORD KATZ ON RULE 702 GROUNDS

whether an exposure specifically resulted in Plaintiff's development of NHL.  It is thus clear that Dr. Katz, despite his credentials in radiation oncology, has no knowledge that will help the trier of fact support his new theory of specific causation.

*Third*, although Plaintiff's Opposition attempts to distract the Court with non-issues such as Mr. Blair's young age at diagnosis, his body mass index ("BMI"), the extent of his exposure to Roundup, and Plaintiff's lineup of general causation experts, the Opposition provides *no substantive arguments* against Monsanto's motion to exclude for failure to meet the requirements of Federal Rule of Evidence 702.  As there is simply no support for the substantive aspects of the Opposition, Monsanto's motion should be granted.  *See Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (quotation omitted).

*Finally*, as described in Monsanto's motion, Dr. Katz has failed to meet the requirements of a specific causation expert under Ninth Circuit precedent and Pre-Trial Order 85 ("PTO 85").  Dr. Katz failed to consider four other pesticides that Mr. Blair used at the same job where he used Roundup. Moreover, Dr. Katz testified that he <u>could not exclude BMI as a risk factor or substantial contributor to Mr. Blair's NHL</u>.  By definition, this inability to rule out potential contributing factors means that Dr. Katz cannot testify that Roundup was the specific cause of Mr. Blair's NHL under a differential diagnosis.  The Plaintiff has taken the position that his specific causation experts simply do not need to rule out other risk factors, so, for example, Dr. Katz had no obligation to rule out the four other pesticides that Mr. Blair used.  In Plaintiff's world, a specific causation expert presumably may just rule in Roundup and ignore all other risk factors.  Plaintiffs are wrong on the law and are ignoring the provisions of PTO 85.  Dr. Katz does not meet the requirements of a specific causation expert and his opinions should be excluded for this reason as well.

I.    **Dr. Katz's Opinion Is Not Based on Sufficient Facts or Data and Is Not the Product of Reliable Methods.**

Between his initial expert deposition on September 2, 2021 and the time his deposition resumed on September 17, 2021, Dr. Katz <u>changed his opinion</u> about Mr. Blair's exposure to Roundup

and stated that the existing medical literature on glyphosate was not applicable to Mr. Blair because Mr. Blair's exposure was due to inhalation, not dermal, absorption.  *See* Declaration of Eric Lasker (October 20, 2021) ("Lasker Decl."), Ex. 7, Katz *Blair 2* Dep. at 110:20-22 (hereinafter, "Katz *Blair 2* Dep.").  Dr. Katz, however, found no medical literature to support his theory about inhalation.  *Id.* at 138:16-20.

Dr. Katz offered his opinion that various government evaluations he reviewed "acknowledge that *there just wasn't much regarding inhalation exposure. And so I feel -- my new opinion is that it just really wasn't evaluated sufficiently*."  Katz *Blair 2* Dep. at 119:24-120:4 (emphasis added).  He reiterated later that, "*Plus none of the stuff I've been reading is applicable in terms of how he was applying. So that's an opinion that's only gotten stronger the more I read.*"  *Id*. at 121:7-10 (emphasis added).  He flatly agreed that:

> Q:      But as you sit here today, you have not identified any data that specifically addresses whether or not Roundup causes non-Hodgkins lymphoma based on an inhalation route?  Is that a fair statement."
>
> A.      That's a correct statement.

*Id*. at 138:16-20.  He further opined that the only existing relevant medical literature of which he was aware -- two inhalation studies relied on by Monsanto's exposure expert -- were "flawed" and "not applicable to Mr. Blair's situation." *Id*. at 123:2-7.  Put another way, Dr. Katz's new opinion on inhalation exposure is based entirely on the ***absence*** of any relevant studies.  His testimony should be excluded because, by his own testimony, it is based on absolutely no facts or data.

In addition, Dr. Katz's opinions are the product of unreliable methodology.  He agreed that medical literature shows the latency period between glyphosate exposure and NHL is "[t]ypically more than ten years" and that the period of time between Mr. Blair's exposure and his diagnosis of NHL was "slightly more than two years." *Id*. at 210:22-211:2.  Neither in his report nor during any of his deposition testimony did he address this vast discrepancy between his opinion and the applicable scientific literature.  *See* Lasker Decl., Ex. 8, Katz *Blair* Report (hereinafter, "Katz *Blair* Rep.").  This testimony does not support Dr. Katz's contention that glyphosate or Roundup caused Mr. Blair's NHL, regardless of the nature of the exposure.

**II.** **Dr. Katz Admits He Has No Specialized Knowledge That Will Help the Trier of Fact.**

Dr. Katz's solution to his predicament of having no scientific data or medical literature to support his causation theory is to assert that he is an "expert," and so his expert opinion is sufficient evidence. He stated:

> "So what if there's no information? What if there is no data relevant to the case in question like in Mr. Blair's case? I've been told that I am appropriately able to give an opinion as an expert. So, I mean, based upon what I understand the legal qualifications to be an expert, I've been instructed that I am, you know, qualified to be an expert. *I found that in my research there is not data for a lot of what is relevant to Mr. Blair's case. And so for that reason, I give my honest opinion. . . And a lot of the aspects of this case are not considered in the scientific literature so I have to give my opinion.*"

Katz *Blair 2* Dep. at 135:18-136:13.

A fatal flaw in Dr. Katz's methodology of relying solely on his own expertise is that Dr. Katz is not qualified in the relevant area. In fact, Dr. Katz conceded that he has *no knowledge "greater than a layperson"* about how much inhalation exposure to pesticides a commercial applicator may have. *Id*. at 91:16-19. By definition, then, Dr. Katz is not in a position to "assist the trier of fact to understand the evidence or determine a fact in issue." Fed. Rule Evid. 702. Dr. Katz is a radiation oncologist, and, although he may be highly qualified in that area, he has no expertise in the area of his new opinion on inhalation exposure. Katz *Blair* report at 1.[1] He is quite simply not qualified to offer the opinions he proffers in this case, and his testimony should be precluded for this reason as well. *See* Fed. R. Evid. 702; *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) (when an expert's field of expertise is not related to the subject on which he seeks to offer testimony, such testimony is inadmissible).

Moreover, Dr. Katz cites a number of factors that he claims are "important to consider" "[i]n estimating the potential of this elevated risk association to have specifically resulted in Mr. Blair developing his lymphoma," including things like "the concentration, potency and dose of the agent, the duration, frequency, and number of exposures over a specific period, confounding effects…" and the like. Katz *Blair* Report at 6. Despite his assertion about the critical importance of these factors,

---

[1] Monsanto's Motion set forth a more detailed discussion of his lack of qualifications in this area, which will not be repeated here. Monsanto's Opening Brief at. 6-7 ("Def.'s Br.").

Dr. Katz testified as to his lack of information about any of these critical facts.  *See* Katz *Blair 2* Dep. at 93:15-94:17.  Dr. Katz's opinion also should be excluded because he has no sufficient facts or data about the very factors he indicated were so important to his own methodology in assessing Mr. Blair's exposure, making his methodology unscientific and unreliable.

### III.   Dr. Katz's Testimony Should Be Excluded Because Plaintiff Failed to Provide Any Substantive Opposition to Any of the Foregoing.

Plaintiff's Opposition does not provide any arguments that refute any of the foregoing. Instead, it discusses Mr. Blair's young age at diagnosis, his exposure, and his BMI, none of which is remotely relevant to the grounds for exclusion demonstrated by Monsanto.  Pls.' Resp. in Opp'n to Monsanto's Mot. to Exclude Test. Of Pls.' Expert Dr. Sanford Katz, ECF No. 13930 at 1-2 ("Pls.' Opp'n").  The Opposition attempts to obscure Dr. Katz's new "inhalation exposure" theory, citing an irrelevant point in the <u>general</u> causation opinion of Dr. Benbrook (that in his prior experience, Roundup plaintiffs' exposure typically occurs during mixing and application) and listing Plaintiff's general causation experts.  Pls.' Opp'n at 3.  The Opposition then erroneously states that Dr. Katz "used his highly extensive professional experience, tying in the general causation evidence and the associated bodies of literature, to make his specific causation opinions."  Pls.' Opp'n at 4.  On the contrary, Dr. Katz was quite clear that <u>none of the existing literature applies to Mr. Blair, as it did not address inhalation exposure</u>, which Dr. Katz found to be the relevant route of exposure.  Katz *Blair 2* Dep. at 110:20-22.  The Opposition mischaracterizes Monsanto's argument as claiming "that it is entitled to prevail on its motion because the specific causation experts rely on the same studies as the general causation experts."  Pls.' Opp'n at 5.  Quite the opposite, Monsanto's position is that Dr. Katz has <u>rejected all of the literature</u> on which Plaintiff's general causation experts rely <u>as being inapplicable</u> to the type of exposure experienced by Mr. Blair.  As Plaintiff has failed to set forth any grounds opposing Monsanto's Motion to exclude Dr. Katz's testimony on numerous Rule 702 grounds, the Motion should be granted.  *See Rosenfeld,* 903 F. Supp. 2d at 869.

### IV.   Dr. Katz Has Not Conducted the Required Specific Causation Analysis.

#### A.   Dr. Katz Fails to Consider Other Risk Factors as Required by Law.

Plaintiff's Opposition defends Dr. Katz's failure to meet the requirements for a specific

causation expert by claiming that he "need not analyze every conceivable risk factor to satisfy Daubert." Pls.' Opp'n at 7.  This vast overstatement shows Plaintiff's fundamental misunderstanding of the Court's prior ruling and the relevant precedent.  Ninth Circuit law is clear that the first step of a reliable differential diagnosis requires an expert to "compile a comprehensive list" of possible causes.  *Clausen v. M/V New Carissa*, 339 F. 3d 1049, 1057-58 (9th Cir. 2003) (expert must first "rule[] in *all* of the potential hypotheses that might explain a patient's symptoms") (emphasis added).  Indeed, an expert's list must include even "rare" possible causes to ensure that, when the expert evaluates and "rules out" potential causes on the list during the second step of the differential diagnosis, rare – but nonetheless possible – causes "are not overlooked." *Id.*  This case law is also reflected in PTO 85 ("The next question is whether the experts adequately assessed all of the potential causes of the plaintiffs' NHL, and properly ruled out factors other than glyphosate, while at the same time declining to rule out glyphosate itself.").

Resisting this conclusion, Plaintiff suggests that *Wendall v. GlaxoSmithKline LLC*, 858 F. 3d 1227, 1237 (9th Cir. 2017), stands for the proposition that experts need not consider every potential risk factor for their opinions to be admissible. Pls.' Opp'n at 7.  But *Wendall* affirms that, at the first step of the differential diagnosis, an expert must "assume[] the pertinence of *all* potential causes." *Wendall*, 858 F. 3d at 1234 (emphasis added).  The passage quoted by the Plaintiff concerns the *second step* of a reliable differential diagnosis, when an expert examines each potential cause.  At that second step, an expert need not definitively "rule out" all potential causes but one, so long as the expert has a sound basis for concluding that one particular cause is "the most likely." *Id.*, see also *Cooper v. Takeda Pharm. Am*., 239 Cal. App. 4th 555, 577 (2015).

Dr. Katz failed both steps of a reliable differential diagnosis.  He did not start with a comprehensive list of all possible causes, which Plaintiff disclaims any responsibility to do, and he did not examine and weigh all potential causes to determine which cause was most likely.

First, Dr. Katz failed to rule in Mr. Blair's other risk factors.  Mr. Blair's risk factors for NHL include a BMI of 34-35 and exposure to four other pesticides used in his job (Basal, Pinnacle, Arsenal and Opensight).  *See* Lasker Decl., Ex. 9, Blair Dep. at 65:11-22 (hereinafter, "Blair Dep."); Lasker Decl., Ex. 10, Van Etten *Blair* Rep. at 35.  Dr. Katz's expert report did not review the well-recognized

risk factors for NHL generally, nor did he discuss any of Mr. Blair's specific risk factors for NHL or diffuse large B-cell lymphoma ("DLBCL"), the subtype of NHL from which Mr. Savory suffered. Katz *Blair* Report.  Dr. Katz never addressed in any manner any of the *four other pesticides used by Mr. Blair in his work at the same job at which he was exposed to Roundup*.  Blair Dep. at 65:11-22. This is despite Dr. Katz's discussion during deposition that "if people are exposed to pesticides, that they're not necessarily just exposed to one pesticide, and you need to consider that they may not have been contributing to the risk."  Katz *Blair 2* Dep. at 195:20-24.  Likewise, Dr. Katz did not consider Mr. Blair's BMI as a risk factor.  Dr. Katz failed to consider (or "rule in") known alternative causes altogether, thus failing to satisfy step one.  He simply opted not to address any risk factor other than exposure to glyphosate.

Second, Dr. Katz similarly failed to comply with the next step of a differential diagnosis.  At his deposition, after being shown and given an opportunity to review two meta-analyses showing that an increased BMI (such as Mr. Blair's) is associated with a higher risk of NHL generally and with DLBCL specifically, Dr. Katz agreed that he "can't exclude" BMI as a risk factor or substantial contributor to Mr. Blair's NHL.  *Id.* at 214:14-24.[2]  He has provided no basis, though, for ignoring a risk factor that he admittedly cannot exclude in favor of glyphosate as the cause of Mr. Blair's NHL. And, as set forth above, he did not rule out the other pesticides used by Mr. Blair, because he never ruled them in – preferring just to ignore them.  An expert conducting a differential diagnosis "must provide reasons for rejecting alternative hypotheses 'using scientific methods and procedures' and the elimination of those hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'"  *Clausen*, 339 F.3d at 1058 (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).  Dr. Katz failed to conduct an analysis that complies with PTO 85 and other applicable law.  His methodology is unreliable and his opinion should be excluded.

**B.      Dr. Katz Does Not Address Idiopathy.**

Just as he fails to engage with the known alternative risk factors confronting Plaintiff, Dr.

---

[2]   The Opposition argues that Mr. Blair's BMI was "not a result of adipose accumulation."  Pls.' Opp'n at 2.  However, there is no attempt to show the relevance of that fact because there is no relevance.

Katz takes an equally unscientific and dismissive approach to the idiopathic causes responsible for most NHL cases:  he simply ignores the prospect.  This Court has already acknowledged that, because the vast majority of NHL cases have no identifiable cause, an expert's specific causation opinion is inadmissible if it fails to account for or adequately grapple with idiopathy.  *In re Roundup*, 358 F. Supp. 3d at 959.  To be admissible "an expert must have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless."  *Id.*  Dr. Katz is unable to offer any reliable method for placing Plaintiff in one category and not the other, and thus his testimony cannot possibly be helpful to a jury tasked with that very assessment.

Plaintiff's Opposition defends Dr. Katz's failure to address the undisputed fact that the vast majority of NHL cases have no cause.  Pls.' Opp'n at 8-9.  The Opposition states that "because the experts [sic] here follow the same methodology as those previously addressed by the Plaintiff's prior experts, Monsanto's Motion should be denied."  Pls.' Opp'n at 9.  While Monsanto disputes that PTO 85 stands for the proposition that all future plaintiffs' experts who follow the same methodology that "barely inched over the line" may not be excluded under *Daubert* and Rule 702, Monsanto need not address that point in this Reply because, as stated above, Dr. Katz does not follow the same methodology of prior Roundup experts.  Dr. Katz has determined that the studies and the medical literature that have been generally relied upon in the Roundup cases are inapplicable to Mr. Blair, who he claims primarily had inhalation exposure to Roundup that caused his NHL. Katz *Blair 2* Dep. at 110:20-22.  Because he was unable to find *any* literature that supports this theory, he is relying solely on his supposed qualifications as an "expert" (in radiation oncology) to establish his novel theory (related to glyphosate exposure from inhalation and its ability to cause NHL), on nothing more than his word.  *Id*. at 135:18-136:13.  This is a far cry from the methodology relied on by Plaintiff's prior experts.  In fact, it is really no methodology at all.  Dr. Katz's testimony should be excluded.

## V.  The Court Has Not Ruled That The Experts In This Case Have Properly Ruled in Roundup as the Cause of This Plaintiff's NHL.

The   Plaintiff's Opposition includes a heading entitled "This Court Has Already Ruled that Plaintiffs' Experts Properly Ruled in Roundup as the Cause of Plaintiffs' Non-Hodgkin's

Lymphoma."  Pls.' Opp'n at 9.  While the Opposition did not substantively address this point whatsoever, there is no legal basis for the assertion because one expert survived a *Daubert* challenge, then all other experts on a similar issue must also survive such a challenge.  Indeed, the specific cause issue is necessarily one that is case specific with variables unique to each plaintiff, such as the particular plaintiff's type of cancer and level and type of exposure, among other variables. Dr. Katz, who has never previously served as a disclosed expert in any Roundup case, is subject to challenge if his opinions are inconsistent with Rule 702's requirements as they are here.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Dr. Katz on Rule 702 and *Daubert* grounds.

Dated:  October 20, 2021

By:   */s/Eric G. Lasker*
_____

Eric G. Lasker (*pro hace vice*)
(elasker@hollingsworthllp.com)
Hollingsworth LLP
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843

Attorney for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

_/s/ Eric G. Lasker_