# EXHIBIT 15

Jarad L. Silverstein, Esq.
*jsilverstein@wapnernewman.com*
Wapner Newman, Attorneys at Law
2000 Market Street, Suite 2750
Philadelphia, PA 19103
215-569-0900


*Attorney for Plaintiff*


**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**IN RE: ROUNDUP® PRODUCTS LIABILITY LITIGATION**


CARL E. SAVORY AND KAREN SAVORY, HUSBAND AND WIFE          CASE NO. 16-md-02741-VC


v.


MONSANTO COMPANY                                          **DECLARATION OF RONALD J.**
                                                         **KENDALL, PH.D.**

1

**DECLARATION OF RONALD J. KENDALL, PH.D.**

I, Ronald J. Kendall, Ph.D., declare:

1. I am currently Professor of Environmental Toxicology at Texas Tech University and have held Professorial status for 41 years. In addition, I am founding Director and Director Emeritus of The Institute of Environmental and Human Health and founding Department Chairman of the Department of Environmental Toxicology at Texas Tech University. I am a Charter Member of the global Society of Environmental Toxicology and Chemistry (SETAC) and have served as President. I was elected a Science Fellow in SETAC in 2017, which represents high-level leadership in the field of environmental toxicology. In addition, I have served on the Editorial Board and/or as Editor of the scientific journal Environmental Toxicology and Chemistry for over 30 years. I previously served as Chairman of the Environmental Protection Agency Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) Scientific Advisory Panel. I currently serve as Member of the Clean Air Scientific Advisory Committee, United States Environmental Protection Agency. In addition, I have served on the National Academy of Sciences Committee on Superfund Site Assessment and Remediation in the Coeur d'Alene River Basin. I have personally published many books and peer-reviewed scientific publications on the effects of toxic substances related to environmental and human health. Unless otherwise specified, the facts set forth in this Work in Progress are within my personal and/or professional knowledge and, if called as a witness, I could and would competently testify to these facts. I submit my *Curriculum vitae* **(Exhibit 1)** to support any qualification to make this Work in Progress.

2. I was retained in this matter to evaluate Plaintiffs Carl E. Savory, an individual that used the product, Roundup®, containing the active ingredient, glyphosate, for decades at his residence and subsequently developed non-Hodgkin's lymphoma, a human cancer. In addition, Plaintiff Savory alleges that Defendant Monsanto did not inform and/or put on the label of Roundup® that this product could cause cancer and, in fact, was a probable human carcinogen. This subsequently has caused in the life of Carl Savory the development of non-Hodgkin's lymphoma cancer as well as a great deal of pain and suffering for himself in the development, treatment, and long-term experience in dealing with non-Hodgkin's lymphoma disease. Based on my background in environmental health and toxicology, I have reviewed the available data provided to me by legal counsel as well as my own scientific research and 41 years of experience to evaluate responses in terms of human health and environmental health from

2

toxic substances exposure and in this case, Roundup® exposure. I also thoroughly reviewed deposition of Carl Savory in my own research related to the implications of the active ingredient glyphosate in Roundup®, which we now know is a probable human carcinogen in a widely used herbicide marketed by Monsanto (Jameson 2017; Ritz 2017). I will submit the list of materials considered in making this Report **(Exhibit 2)**. This list does not include the body of scholarly materials considered. I reserve the right to supplement this report should new materials become available.

**Background of Plaintiff Carl Savory Case**

3. Plaintiff Background Summary – Carl Savory was born October 10, 1954 in Philadelphia, PA and is

currently 66 years old. He is married to Karen Savory and lived in Quakertown, PA from 1987 to the present.

**Non-Hodgkin's Lymphoma (NHL) Diagnosis and Pathology**

4. Plaintiff Savory was diagnosed with non-Hodgkin's lymphoma (NHL) in October 2019 after he began experiencing symptoms of NHL in August 2019. The physical that first diagnosed Plaintiff Savory with NHL was John M. Minnich, M.D. (Upper Bucks Orthopaedics), Sellersville, PA. The oncologists that treated Plaintiff Savory for large B-cell NHL where Martin C. Hightower, M.D. and Anthony Magdalinksi, D.O.

The medical history of Plaintiff Carl Savory is summarized in Table 1.

**Table 1. Summary of Carl Savory's Medical History**

| Conditions, Procedures, or Medication | Yes | No | Treating Physician |
|---|---|---|---|
| Diabetes | | X | |
| Obesity | | X | |
| Auto-immune diseases (including but not limited to Crohn's disease, ulcerative colitis, HIV) | | X | |
| Epstein Barr | | X | |
| Ulcers | | X | |
| Celiac Disease | | X | |
| Hepatitis C | X | | Dr. Jerome Burk |
| Eczema | | X | |
| Radiation | X | | Dr. Hightower |

3

| Smoking | | X | |
|---|---|---|---|
| Lupus | | X | |
| Rheumatoid Arthritis | X | | Dr. Vasta/Dr. Robert Moidel |
| Organ, stem cell, or other transplant | | X | |
| Immunosuppressive Medications | X | | |

**Plaintiff Carl Savory's Physicians**

> Dr. Martin C. Hightower (Radiation Oncology)[1]
>
> Dr. Anthony Magdalinski (Hematology/Oncology – Chemotherapy)[2]
>
> Dr. Jerome M. Burk (Hepatitis)[3]
>
> Upper Bucks Orthopaedic Associates (Initially found the cancer)[4]
>
> Dr. Robert Moidel (Rheumatoid Arthritis)[5]

**Additional Medical Records of Plaintiff Carl Savory**

10/09/19 Grand View Health Clinical Laboratories
FISH analysis: abnormal result indicative of amplification/gains of MYC or chromosome 8 and gains of IGH or chromosome 14. Right humeral head lesion; diffuse large B-cell lymphoma; positive for malignancy

11/19/19 Grand View Health Clinical Laboratories
Bone, left hip, biopsy; diffuse large B-cell lyphoma; clinical dx: metastatic bone cancer

11/21/19 Paul L. Weidner, Grand View Hospital
Uncontrolled pain
Operative Report: post-operative dx: metastatic bone cancer with pathologic impending fracture, left femur

11/22/19 Grand View Health Clinical Laboratories
Right shoulder bone and tissue: diffuse large B-cell lyphoma; the October needle biopsy of tumor demonstrated amplification or gains of MYC which is associated with aggressive tumor.

04/08/20 Anthony Magdalisnki, III DO, Alliance Cancer Specialists
Pathologic fracture of right humerus/shoulder c/w B cell LPD/NHL; pain meds renewed; review of MRI shows fracture risk of left hip – refer to orthopedics

---

[1] 700 Lawn Avenue, Sellersville, PA 18960
[2] 915 Lawn Avenue, Sellersville, PA 18960
[3] 1021 Park Avenue #30, Quakertown, PA 18951
[4] 915 Lawn Avenue, Sellersville, PA 18960
[5] 262 Bethlehem Pike, Colmar, PA 18915

_____
DECLARATION OF RONALD J. KENDALL, Ph.D.

**History of Tobacco, Alcohol, and Drug Use**

Mr. Savory denies tobacco use throughout his life. In addition, he indicated very limited alcohol use, which might consist of limited glasses of wine during the week. During his deposition, he indicated no use of illegal drugs.

**Employment History**

Mr. Savory graduated from high school in 1973. His first job was in carpentry and home building. He subsequently went into the United States Navy and served in the area of basic electronics and electricity. Outside of his engagement with the United States Navy, he remained in the residential home building business, including framing, from approximately 1973-2001. Plaintiff Savory reports that the name of his employer was Local 1462 Carpenters and he worked in Philadelphia and surrounding counties from approximately 1979-2001 as a carpenter, including carpentry and related tasks. In Table 2 is a workplace checklist provided by Plaintiff Savory.

**Table 2. Workplace Checklist of Carl Savory**

| Industry | Yes | No |
|---|---|---|
| Car Mechanic | | X |
| Cleaning/Maid Service | | X |
| Electrician | | X |
| Framing/Agricultural | | X |
| Hairdressing | | X |
| Handled fission products | | X |
| Handled jet propellant | | X |
| Handled solvents | | X |
| Horticultural | | X |
| Hospitals and Clinics | | X |
| Landscaping | | X |
| Metal Working | | X |
| Painting | | X |
| Pest Exterminator | | X |
| Pesticide Use | | X |
| Petroleum Refinery | | X |
| Rubber Factory | | X |
| School Teacher | | X |
| Textile | | X |
| Woodworking | X | |
| X-Radiation or Gamma-Radiation | | X |

| (Regular Exposure) | | |
|---|---|---|

**Deposition of Carl Savory, June 22, 2020**

5.   Carl Savory began using Roundup® grass and weed killer residentially from approximately 1990 through 2019. He resided with his wife, Karen Savory, in Quakertown, PA where he treated his residential property 2-3 times per week, and possibly more during the summer, with hand sprayers using Roundup® grass and weed killer. In addition, he would oftentimes use Roundup® concentrate and mix in a half gallon tank sprayer. In the next series of figures, pictures will be provided to delineate the utilization of Roundup® week killer along with hand sprayer and tank sprayer utilization.

**Figure 1.  Hand sprayer on the right and tank sprayer on the left that Plaintiff Carl Savory utilized in treating his residential lawn in Quakertown, PA.**

_____
DECLARATION OF RONALD J. KENDALL, Ph.D.



Figure 2.  Photos of the residential property of Carl Savory, Quakertown, PA



7





DECLARATION OF RONALD J. KENDALL, Ph.D.





9





DECLARATION OF RONALD J. KENDALL, Ph.D.

Plaintiff Savory continued to apply Roundup® from approximately 1990 through 2019. He also made it clear in his deposition that he not only used hand sprayers that he acquired locally, but he also utilized Roundup® concentrate in tank sprayers. A few of the photos presented in Figure 2 the Savory residence included a large area of different types of vegetation interfaced with the residence often needing weed herbicide application by Plaintiff Savory.

**Personal Protective Equipment (PPE)**

Mr. Savory stated in his deposition that during the course of the application of Roundup®, he did not use specific personal protective equipment (PPE), except for maybe a long-sleeved shirt, long pants, and shoes. Exposure to Roundup® can occur through inhalation, skin exposure, as well as ingesting if the spray was inhaled through the mouth.

**Potential Confounding Exposures**

Table 2, which summarized workplace exposure, revealed conditions which could lead to confounding toxicological exposures in addition to Roundup® containing the active ingredient glyphosate. As demonstrated in Table 2 in the workplace checklist, woodworking, including carpentry, is listed in the case of Plaintiff Carl Savory as the initial confounding exposure, which on the basis of my knowledge and understanding of carpentry utilizes extremely few toxic chemicals that could confound the exposure to Roundup® containing the active ingredient glyphosate.

**Summary of Exposure Factors, Application Frequencies, and Durations**

Mr. Savory generally sprayed his property multiple times per week, particularly during the summer months in Quakertown, PA. Based upon his deposition and the Plaintiff Fact Sheet, he began implementing this outdoor spraying routine with Roundup® in approximately 1990. At a minimum, he sprayed Roundup® twice per week for approximately four months per year for close to 30 years when he was diagnosed with NHL.

**NHL Latency Interval**

The latency interval from Mr. Savory's first reported exposure to Roundup® to date of diagnosis was 29 years (1990-2019).

11

**Glyphosate Human NHL Studies**

6.   Toxicological evaluations and expert opinions with respect to dose, Roundup® exposure to humans causing NHL are based, in part, on six primary epidemiological studies that provide objective data of causation based on Bradford Hill criteria. Toxicological evaluation and ultimately opinion is supported in animal experimental evidence, in vitro human studies, and human epidemiological studies as summarized within this Report. Specifically, I have assessed dose response, latency period, biological plausibility (toxicological mechanisms), temporality, coherence (demonstrated by molecular-based studies), and animal studies as well as the strength of association and consistency with the toxicological mechanisms of Roundup® formulation ingredients, including glyphosate. I have used the six epidemiological studies which include McDuffie et al 2001, Eriksson et al 2008, Andreotti et al 2018, Leon et al 2019, Zhang et al 2019, and Pahwa et al 2019, primarily with respect to dose assessment.

My basic toxicological focus on these studies is on study design, exposure, and statistical power. I am using these study results in my toxicological assessment in conjunction with generally accepted, peer-reviewed studies on genotoxicity (including direct human studies) mechanisms of action (promotion, etc.), absorption, distribution, metabolism, and excretion, etc. In general, I have relied on studies that have documented the various aspects of the Bradford Hill criteria at or in excess of the 95% confidence threshold. Summaries of these six studies are provided next:

**Table 3. Summary of Epidemiological Studies**

| Study | Type of study | Exposure Parameters | |
|---|---|---|---|
| | | Metrics (Dose Intervals) | Cut-off between cases and controls |
| McDuffie, H. et al 2001 | Case control study of men in six Canadian provinces | Unexposed<br>>0 days and ≤ 2 days<br>>2 days/year | Cases were diagnosed with STS, HD, NHL, or MM between 09/01/1991 and 12/31/1994. Controls did not have NHL diagnoses. |
| Eriksson, M. et al 2008 | Case control study of men and women in Sweden | ≥1 and ≤10 days<br>>10 days | Cases were newly diagnosed NHL patients aged 18-74 years. Controls were randomly selected from the population registry. |
| Andreotti, G. et al 2018 | Prospective cohort study of pesticide applications | Never use<br>Quartiles ranging from 1 day to ≥108.5 days<br>Tertiles ranging from 1 day to ≥62.0 days | Cases reported ever use of glyphosate. Reference subjects may have used any other pesticides |

_____
DECLARATION OF RONALD J. KENDALL, Ph.D.

| Leon et al 2019 | Pooled analysis of three agricultural worker cohorts | Ever use | Cases reported ever use of glyphosate. Reference subjects may have used any other pesticides |
|---|---|---|---|
| Zhang, et al 2019 | Meta-analysis | Ever use | Six studies included in primary analysis; one cohort and five case-control |
| Pahwa, M et al 2019 | Case-control study | 2 days/year | Subjects handling glyphosate more than two days/year had an excess of DLBCL (OR 2.14, 95% Ci 1.07-4.28.) |

**Comparisons of Exposure Days to Human Epidemiological Studies**

7.   The results of the "exposure-day" calculations (based on estimated exposure Mr. Savory experienced while treating his property with Roundup®) indicate that Mr. Savory's cumulative exposures were above all of the exposure threshold metric cut-offs. That is, he exceeded the "ever use" threshold, the ">0 and ≤2 days" threshold, and the ">2 days per year" threshold, the "≥1 day ≤10 days" total threshold, and the ">10 days" total threshold exposed.

Putting this into a dose-metric context, Mr. Savory was exposed to glyphosate, the active ingredient in Roundup®, reasonably a minimum of 32 times per season (June – September) at minimum of only twice per week for one hour or less. Therefore, over the period of 1990-2019 when Mr. Savory was diagnosed with non-Hodgkin's lymphoma, he had sprayed and been exposed to Roundup® a minimum of 928 days (32 days per year x 29 years) over that period of time (total 928 hours or 116- 8 hour days total exposure). Thus, Mr. Savory was clearly within and far exceeded the range of exposure metrics for applicators as cited within the human epidemiological studies (Table 3) that revealed statistically significant increased NHL cases among glyphosate applicators. Mr. Savory's minimal exposure doses of 8 hours per month or 32 hours per season over a 29-year period represents 928 exposure hours minimum, or 116- 8 hour exposure days right in the threshold of exposure dose reported in epidemiological studies representing exposure timeframes causing an increase in NHL. This assumes that Mr. Savory is treating a 3-acre property for at least one hour twice per week or eight hours per month or 32 hours per season over a 29-year period.

**Evidential Considerations**

13

The following evidential factors are useful in formulating an objective toxicological assessment of Mr. Savory with regards to his Roundup® exposures and subsequent NHL diagnosis:

A. **Diagnosis:** Mr. Savory was initially diagnosed with NHL by Dr. John M. Minnich, of Sellersville, PA. The diagnosis included large B-cell NHL.

B. **Prolonged Acute Exposure and Absorption:** For approximately 29 years, Mr. Savory applied Roundup®, either ready-to-use spray or in concentrate to his property. He was also exposed to drift from winds. He clarified in his deposition that he did not wear PPE equipment that could reduce or eliminate his exposure to Roundup®.

C. **Chronic Glyphosate Exposure:** As mentioned earlier, while applying Roundup®, Mr. Savory wore only a shirt, pants, and shoes. He indicated in his deposition that he did not wear other PPE equipment because he assumed Roundup® was a safe product since it was purchased commercially from a local store.

D. **Dermal Absorption Rates Higher than Presented by Monsanto:** Dermal absorption rate for glyphosate ranges between 3% and greater upon exposure. Numerous other factors are known to increase skin absorption (George et al 2010). Therefore, there is high probability that in the application of Roundup®, Mr. Savory received high dermal exposure to Roundup®, particularly including the active ingredient glyphosate.

E. **Lack of Personal Protective Equipment (PPE):** Mr. Savory was not instructed via the product label to wear personal protective equipment such as impermeable pants, boots, mask, long-sleeved shirt, face shield, and chemically resistant gloves, etc. He believed Roundup® was "safe" to use for many reasons and proceeded accordingly.

**Mechanism of Carcinogenicity**

8.   Mr. Savory's exposures are to Roundup® product, not to glyphosate alone. Roundup® and glyphosate have been demonstrated in several studies to repeatedly cause DNA damage with promotion by Roundup® being more damaging than glyphosate alone. Genotoxicity is the first stage in cancer formation. Wozniak et al (2018) and other studies as referenced in this report further demonstrated

_____

that Roundup®, at a higher dose, was even able to impede the natural repair of damaged DNA (Casserett and Doull 2018).

A very important toxicological study is the George et al (2010) study that documented cancer promotion at relatively low dermal exposure doses in mice. The dose levels, when converted to human doses, are reasonably similar to that sustained by applicators (when applying the HED factor and the chemical absorption rate of 3%). More importantly, the test model employed DMBA (as found in cigarette smoke/tar). The primary carcinogen was dermally applied at low doses on the shaved skin of mice with no tumors produced unless glyphosate was also applied to the skin in which 40% of the animals developed tumors (2.8 tumors/animal). The mechanism of glyphosate carcinogenesis is important with respect to tumor promotion among smokers prior to the onset of NHL. The George et al (2010) study reveals substantial promotion (40% of the mice with tumors) with realistic concentrations of glyphosate as compared to that of applicators using HED methodology.

**Latency of non-Hodgkin's Lymphoma:** The compilation of peer-reviewed latency estimates demonstrates latency intervals within a typical range of 2 to 25 years. Based on Mr. Savory beginning to utilize Roundup® in 1990 and being diagnosed with non-Hodgkin's lymphoma in 2019 this represents a latency interval of approximately 29 years. It is noteworthy that studies by Eriksson et al (2008) found an increased effect estimate for subjects with more than 10 years of glyphosate exposure prior to diagnosis of NHL; thus favoring a longer NHL latency interval.

**Scope of Exposure in Comparison to Epidemiological Studies:** Mr. Savory's exposure doses in units of duration and frequency were compared to the reference doses of six epidemiological studies. These studies included McDuffie et al (2001), Eriksson et al (2008), Andreotti et all (2018), Leon et al (2019), Pahwa et al (2019) and Zhang et al (2019).

The Zhang et al study is a meta-analysis design that included the most recent update of the Agricultural Health Study cohort published in 2018 along with five case-control studies. Mr. Savory's minimal

_____

exposure doses of 8 hours per month or 32 hours per season over a 29-year period represents 928 exposure hours minimum, or 116- 8 hour exposure days right in the threshold of exposure dose reported in epidemiological studies representing exposure timeframes causing an increase in NHL. This assumes that Mr. Savory in treating a 3-acre property for at least one hour twice per week or eight hours per month or 32 hours per season over a 29-year period representing 928 hours or 116- 8 hour exposure days to Roundup®.

**Summary and Conclusions**

9.   My toxicological assessment of the current Plaintiff Carl Savory case involving exposure to Roundup® herbicide and his associated development of NHL includes my assessment of human epidemiological studies already discussed, strength of association, the dose/response, and coherence of the six primary studies and the studies of various chemical formulants and additives found in the Roundup® product as well as experimental evidence, including absorption, distribution, (i.e., measurement in bone marrow), metabolism and excretion (ADME) and the various mechanisms of carcinogenesis (including genotoxicity, impairment of DNA repair mechanisms, and promotion). Additionally, I have addressed dermal absorption, the manner and the degree to which Roundup® may penetrate the skin, and the lack of adequate PPE. I have carefully examined Mr. Savory's history for any potential confounding toxicological factors, and there were none.

Based on the findings of applicable studies as noted herein and on the basis of sufficient exposure, dose, duration, and episodic exposures to Roundup® consistent with human exposure durations in the epidemiological studies, it is my opinion, to reasonable scientific and toxicological certainty, that Mr. Savory's calculated 8-hour exposure doses of 116- 8 hour days to Roundup® over a period of 29 years was a substantial contributing factor to his development and subsequent diagnosis of his large B cell non-Hodgkin's lymphoma.

I declare under penalty of perjury, under the law of the State of California that the foregoing is true and correct.

_____
DECLARATION OF RONALD J. KENDALL, Ph.D.

Executed this 29th day of April 2021 in Ransom Canyon, Texas.

Ronald J. Kendall, Ph.D.

**Materials Reviewed**

Carl Savory and Karen Savory v. Monsanto Company, Civil Action Complaint and Demand for Jury Trail In the United States District Court for the Eastern District of Pennsylvania, Case No. 2-20-cv-01327-PD, filed March 6, 2020, pages 1-44.

Plaintiff Fact Sheet, United States District Court, Northern District of California, filed September 26, 2018, Case No. 16-md-02741-VC.

Medical Reports of Carl Savory from Grand View Health Clinical Laboratories, dated October 28, 2019.

Medical Reports of Carl Savory from Grand View Health Clinical Laboratories for Dr. Martin C. Hightower, dated November 21, 2019 and November 26, 2019.

Medical Report of Carl Savory by Anthony Magdalinski, DO, Alliance Cancer Specialists, dated April 8, 2020.

Deposition of Carl Savory, United States District Court, Northern District of California, Case No3:20-cv-02403-VC, dated June 22, 2020.

**References Reviewed and Considered**

_____

DECLARATION OF RONALD J. KENDALL, Ph.D.

Andreotti, G., Koutros, S., Hofmann, J.N., Sandler, D.P., Lubin, J.H., Lynch, C.F., Lerro, C.C., De Roos, A.J., Parks, C.G., Alavanja, M.C., Silverman, D.T. 2018. Glyphosate use and cancer incidence in the agricultural health study. Journal of the National Cancer Institute. 110(5):djx233.

Casarett and Doull's Toxicology: The Basic Science of Poisons, Ninth Edition. 2018, pp. 1648.

Eriksson, M., Hardell, L., Carlberg, M., Akerman, M. 2008. Pesticide exposure as risk factor for non-Hodgkin lymphoma including histopathological subgroup analysis. International Journal of Cancer. 123:1657-1663.

George, J., Prasad, S., Mahmood, Z., Shukla, Y. 2010. Studies on glyphosate-induced carcinogenicity in mouse skin: A proteomic approach. Journal of Proteomics. 73:951-964.

Jameson, Dr. Charles W. Expert Report in Support of General Causation on Behalf of Plaintiffs in the United States District Court, Northern District of California. Date Filed 10/06/2017.

McDuffie, H.H., Pahwa, P., McLaughlin, J.R., Spinelli, J.J., Finchman, S., Dosman, J.A., Robson, D., Skinnider, L.F., Choi, N.W. 2001. Non-Hodgkin's lymphoma and specific pesticide exposures in men: Cross-Canada study of pesticide and health[1]. Cancer Epidemiology, Biomarkers & Prevention. 10:1155-1163.

Pahwa, M., Freeman, L.E.B., Spinelli, J.J., Blair, A., McLaughlin, J.R., Zahm, S.H., Cantor, K.P., Weisenburger, D.D., Pahwa, P., Dosman, J.A., Demers, P.A., Harris, S.A. 2019. Glyphosate use and associations with non-Hodgkin lymphoma major histological sub-types: Findings from the North American Pooled Project. Scandinavian Journal of Work, Environment & Health. 45(6):600-609.

Photographs of Plaintiff Carl Savory's Residence and Sprayers Utilized for Application of Roundup®.

Ritz, Dr. Beate. Expert Report in Support of General Causation on Behalf of Plaintiffs in the United States District Court, Northern District of California. Date Filed 10/06/017.

Wozniak, E., Sicinska, P., Michaelowicz, J., Wozniak, K., Reszka, E., Huras, B., Zakrzewski, J., Bukowska, B. 2018. The mechanism of DNA damage induced by Roundup 360 PLUS, glyphosate and AMPA in human peripheral blood mononuclear cells – genotoxic risk assessment. Food and Chemical Toxicology. 120:510-522.

Zhang, L, Rana, I., Shaffer, R.M., Taioli, E., Sheppard, L. 2019. Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence. Mutation Research – Reviews in Mutation Research. 781:186-206.

_____

**EXHIBIT 1**

*Curriculum vitae* of Ronald J. Kendall, Ph.D.

**EXHIBIT 2**

List of Materials Reviewed

_____

Andreotti, G., Koutros, S., Hofmann, J.N., Sandler, D.P., Lubin, J.H., Lynch, C.F., Lerro, C.C., De Roos, A.J., Parks, C.G., Alavanja, M.C., Silverman, D.T. 2018. Glyphosate use and cancer incidence in the agricultural health study. Journal of the National Cancer Institute. 110(5):djx233.

Carl Savory and Karen Savory v. Monsanto Company, Civil Action Complaint and Demand for Jury Trail In the United States District Court for the Eastern District of Pennsylvania, Case No. 2-20-cv-01327-PD, filed March 6, 2020, pages 1-44.

Casarett and Doull's Toxicology: The Basic Science of Poisons, Ninth Edition. 2018, pp. 1648.

Deposition of Carl Savory, United States District Court, Northern District of California, Case No3:20-cv-02403-VC, dated June 22, 2020.

Eriksson, M., Hardell, L., Carlberg, M., Akerman, M. 2008. Pesticide exposure as risk factor for non-Hodgkin lymphoma including histopathological subgroup analysis. International Journal of Cancer. 123:1657-1663.

George, J., Prasad, S., Mahmood, Z., Shukla, Y. 2010. Studies on glyphosate-induced carcinogenicity in mouse skin: A proteomic approach. Journal of Proteomics. 73:951-964.

Jameson, Dr. Charles W. Expert Report in Support of General Causation on Behalf of Plaintiffs in the United States District Court, Northern District of California. Date Filed 10/06/2017.

Medical Reports of Carl Savory from Grand View Health Clinical Laboratories, dated October 28, 2019.

21

Medical Reports of Carl Savory from Grand View Health Clinical Laboratories for Dr. Martin C. Hightower, dated November 21, 2019 and November 26, 2019.

Medical Report of Carl Savory by Anthony Magdalinski, DO, Alliance Cancer Specialists, dated April 8, 2020.

McDuffie, H.H., Pahwa, P., McLaughlin, J.R., Spinelli, J.J., Finchman, S., Dosman, J.A., Robson, D., Skinnider, L.F., Choi, N.W. 2001. Non-Hodgkin's lymphoma and specific pesticide exposures in men: Cross-Canada study of pesticide and health[1]. Cancer Epidemiology, Biomarkers & Prevention. 10:1155-1163.

Pahwa, M., Freeman, L.E.B., Spinelli, J.J., Blair, A., McLaughlin, J.R., Zahm, S.H., Cantor, K.P., Weisenburger, D.D., Pahwa, P., Dosman, J.A., Demers, P.A., Harris, S.A. 2019. Glyphosate use and associations with non-Hodgkin lymphoma major histological sub-types: Findings from the North American Pooled Project. Scandinavian Journal of Work, Environment & Health. 45(6):600-609.

Plaintiff Fact Sheet, United States District Court, Northern District of California, filed September 26, 2018, Case No. 16-md-02741-VC.

Photographs of Plaintiff Carl Savory's Residence and Sprayers Utilized for Application of Roundup®.

Ritz, Dr. Beate. Expert Report in Support of General Causation on Behalf of Plaintiffs in the United States District Court, Northern District of California. Date Filed 10/06/017.

Wozniak, E., Sicinska, P., Michaelowicz, J., Wozniak, K., Reszka, E., Huras, B., Zakrzewski, J., Bukowska, B. 2018. The mechanism of DNA damage induced by Roundup 360 PLUS, glyphosate and AMPA in human peripheral blood mononuclear cells – genotoxic risk assessment. Food and Chemical Toxicology. 120:510-522.

Zhang, L, Rana, I., Shaffer, R.M., Taioli, E., Sheppard, L. 2019. Exposure to glyphosate-based herbicides and risk for non-Hodgkin lymphoma: A meta-analysis and supporting evidence. Mutation Research – Reviews in Mutation Research. 781:186-206.