**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:    202-847-4030
Fax:    202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel: 202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 232339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel: 310-576-2100
Fax: 310 -576-2200

*Attorneys for Defendant Monsanto Company*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741<br><br>Case No.: 3:16-md-02741-VC |
| *Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | **DEFENDANT MONSANTO COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER**<br><br>Hearing date: TBD<br>Time: TBD |

In response to Monsanto's motion to exclude testimony of Dr. William Sawyer (the "Motion"), Plaintiff makes several key concessions regarding Dr. Sawyer's anticipated testimony.  First, Plaintiff concedes that Dr. Sawyer will not offer "any general causation opinions."  *See* Plaintiff's Opposition at 3; *see also id.* at 4 (noting again that Dr. Sawyer is not offering an opinion on general causation). Second, in response to Monsanto's argument that Dr. Sawyer should not be permitted to opine on Monsanto company documents and regulatory duties, Plaintiff did not directly respond and instead incorporated by reference other filings in this litigation, whereby past plaintiffs specifically conceded that Dr. Sawyer would not offer opinions about the "intent or state of mind of Monsanto," "regulatory opinions," or opinions about "labeling requirements."  *See* Opposition at 8-9 (incorporating by reference two past plaintiffs' Oppositions—ECF Nos. 8342, 8692); *see also* ECF No. 8342 at 19 ("Plaintiff agrees that Dr. Sawyer will not testify about the intent or state of mind of Monsanto."); ECF No. 8692 at 13 (same); ECF No. 8342 at 20 ("Dr. Sawyer will not be offering regulatory opinions or opine about labeling requirements.").  At a minimum, the Court should grant Monsanto's motion to exclude testimony of Dr. William Sawyer to the full extent of Plaintiff's many concessions: Dr. Sawyer should be precluded from offering any opinion on (1) general causation; (2) Monsanto's intent or state of mind; (3) the relevant regulations and regulatory structure (i.e., "regulatory opinions"); and (4) labeling requirements.  Furthermore, for the reasons discussed below and in Monsanto's Motion, Dr. Sawyer's flawed opinions regarding causation, the George study, trace chemicals, and Monsanto company documents should be excluded in their entirety.

## I. The Court Should Exclude Dr. Sawyer's General Causation Opinions.

As discussed above, Plaintiff concedes that Dr. Sawyer will not offer "any general causation opinions."  *See* Opposition at 3-4.  Accordingly, the Court should grant Monsanto's Motion to exclude Dr. Sawyer's opinions on general causation (i.e., that Roundup generally is capable of causing Non-Hodgkin's Lymphoma ("NHL")) and enter an order preventing Dr. Sawyer from offering any general causation opinions during the trial in this case.

Plaintiff nevertheless asserts that Dr. Sawyer should be permitted to testify, generally, about various other topics such as "how glyphosate based formulations ("GBFs") are absorbed through the skin; how much glyphosate is absorbed through the skin; how protective clothing can help limit the

exposure to GBFs; and how different equipment can affect exposure." Opposition at 4. But these are not opinions on "general cause." Moreover, as discussed in more detail in the Motion and below, because Dr. Sawyer has not conducted a calculation of the amount of Roundup that Plaintiff actually absorbed, all of these topics are entirely irrelevant in this case. *See* White Decl.,[1] Ex. 1, Sawyer *Seidl* Rpt. at 4-6 (Dr. Sawyer admitting that he did not determine the amount of Roundup that Plaintiff absorbed, and instead only determined the number of days Plaintiff was "exposed" to Roundup); Ex. 11, Sawyer *Cervantes* Dep. at 93:22-25; 94:1-99:23 (Dr. Sawyer admitting that exposure and absorption are not equivalent concepts and that Roundup exposure can be harmful, even under his flawed theory, only if it is absorbed into the body). Thus, Dr. Sawyer should be precluded from offering these so-called "general" opinions as well.

## II.     The Court Should Exclude Dr. Sawyer's Specific Causation Opinions.

The Court should likewise enter an order preventing Dr. Sawyer from offering any opinions on specific causation. During Wave 1, Plaintiffs conceded that Dr. Sawyer would not "offer a differential diagnosis opinion as to any individual plaintiff," so this Court found that "[Dr. Sawyer] may not opine that a plaintiff's 'exposure to Roundup was sufficient to cause NHL.'" *See* MDL Doc. No. 9142, Amended Pretrial Order No. 201. Despite the Court's prior ruling, Plaintiff contends here that Dr. Sawyer should be permitted to opine that Plaintiff's Roundup exposure "was sufficient to cause" his cancer. Opposition at 2. Plaintiff's argument fails for several reasons.

***First***, an opinion on specific causation cannot be based solely on the available epidemiological data. As Plaintiff's experts have conceded, causation (whether general or specific) cannot be established with epidemiology alone. *See* White Decl. Ex. 10, Tr. of Proceedings, Testimony of Dr. Christopher J. Portier, *Pilliod v. Monsanto Co.,* No. RG-170862702 (Cal. Sup. Ct. Alameda Cnty. Apr. 3, 2019) at 1893:3-8 ("Q: And so in terms of the human data we have in this case, you agree that you cannot make a firm statement that Roundup causes NHL from the epidemiology data alone, true? A: Correct. I can't do it from the epidemiology data alone."); *In re Roundup Prods. Liab. Lit.*, 390 F. Supp. 3d 1102, 1116 (N.D. Cal. 2018); *see also* White Decl., Ex. 8, Reference Manual on Scientific

---

[1] The "White Decl." refers to the Declaration of Jed P. White, file contemporaneously with Monsanto's Motion. All Exhibits referred to herein were attached to that declaration.

Evidence at 598-99.  Yet that is precisely what Dr. Sawyer has done with his specific causation analysis: he has concluded that Roundup caused Plaintiff's NHL merely because Plaintiff was exposed to Roundup for a number of days that exceeds the minimal "number-of-days" threshold presented by certain epidemiological data points.

**Second**, even if specific causation could be established with epidemiology alone, the studies relied upon by Dr. Sawyer are insufficient to do so here.  As discussed in more detail in Monsanto's Motion, the primary studies on which Dr. Sawyer relies for his specific causation analysis—Eriksson and McDuffie—are unreliable because the relevant data was not adjusted for the use of other pesticides.  *See* Motion at 9-10.  As this Court has already determined, "[f]ailing to take account of likely confounders by presenting and relying upon only unadjusted (or minimally adjusted) estimates is a serious methodological concern."  *In re Roundup*, 390 F. Supp. 3d at 1140.  Moreover, the Andreotti and Leon studies did not find a statistically significant association between glyphosate and NHL, so those studies do not support Dr. Sawyer's ultimate conclusions on causation.  *See* White Decl., Ex. 1, Sawyer *Seidl* Rpt. at 26-27; Ex. 13, *Memorandum: Glyphosate: Epidemiology Review of Zhang et al. (2019) and Leon et al. (2019) publications for Response to Comments on the Proposed Interim Decision* (Jan. 6, 2020) at 13-17.  And the Zhang study has been sharply criticized for its faulty methodologies and flawed conclusions.  *See* White Decl., Ex. 13 at 2-13.  Plaintiff's Opposition fails to address any of these deficiencies, implicitly conceding that Dr. Sawyer's specific causation opinions lack scientific support.[2]

**Third**, Dr. Sawyer's specific causation opinion should be excluded because the epidemiology studies on which he relies do not support his opinions that Roundup caused Plaintiff's specific subtype of NHL – follicular lymphoma.  *See* Motion at 10.  In his opposition, Plaintiff concedes that the data

---

[2] Plaintiff further contends that Dr. Sawyer's testimony on the epidemiology studies will be helpful to describe to the jury the details and nuances of those studies and to explain to the jury how to compare the Plaintiff's exposure to the exposures of the participants in those studies.  *See* Opposition at 5 ("[H]ere, Dr. Sawyer will only make use of the epidemiology studies as a means of comparing Seidl's dose to the dose in the epidemiology studies.").  However, Dr. Sawyer has repeatedly deferred the detailed analysis, interpretation, and meaning of the epidemiology studies to other experts in this case.  Opposition at 5 (admitting that Dr. Sawyer "will be deferring detailed opinions on the epidemiology studies to epidemiologists").  Thus, to the extent any expert is permitted to guide the jury through the nuances of the epidemiology studies, it should be one of the experts to which Dr. Sawyer has deferred, not Dr. Sawyer himself.

on which Dr. Sawyer relies did not show a statistically significant increased risk between follicular lymphoma and glyphosate use.  *See* Opposition at 7.  Thus, Dr. Sawyer's specific causation opinion is fundamentally unreliable and should be excluded for this reason as well.

**Fourth**, Dr. Sawyer's specific causation opinion should be excluded because Dr. Sawyer did not consider numerous alternative risk factors for Plaintiff's NHL.  Although Plaintiff contends that Dr. Sawyer considered *some* of Plaintiff's alternative risk factors, *see* Opposition at 7-8, Dr. Sawyer admitted during his deposition that he simply ignored other occupational and environmental exposures that may have contributed to Plaintiff's NHL.  White Decl., Ex. 4, Sawyer *Seidl* Dep. at 15:8-17:13; 19:24-20:22; 21:25-23:16; 24:22-25; 29:8-30:10; 47:10-52:11 (ignoring Mr. Seidl's other occupational and environmental exposures).  Moreover, it is undisputed that Dr. Sawyer deferred the analysis of genetic predisposition to other experts in this case.  *See* White Decl., Ex. 1, Sawyer *Seidl* Rpt. at 19 n. 78.  By omitting a fulsome analysis of Plaintiff's potential risk factors or deferring such an analysis to other experts, Dr. Sawyer relinquished any ability to offer a specific causation opinion.  *See, e.g., Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming district court's exclusion of toxicologist where toxicologist "did not exclude confounding factors, which 'leaves open the possibility of competing causes of the disease' and raises questions about the competency of expert testimony.").

**Fifth**, Dr. Sawyer's other miscellaneous opinions do not support his conclusions on specific causation.  As discussed above, Plaintiff's Opposition focuses on various other opinions that Dr. Sawyer is expected to offer in the trial in this case, including opinions regarding how different types of spray equipment and the use of personal protective equipment can impact Plaintiff's exposures.  *See* Opposition at 3-4.  As Dr. Sawyer has expressly conceded, however, the actual amount of Roundup allegedly absorbed in Plaintiff's body, the intensity of any exposure, the type of equipment Plaintiff used to apply Roundup, Plaintiff's use of any personal protective equipment, and Plaintiff's efforts to clean Roundup off of his skin after exposure events are all irrelevant to his counting-of-days, specific causation "analysis."  *See, e.g.,* White Decl., Ex. 3, Sawyer *Schafer* Dep. at 44:5-24; 47:1-9; 50:2-18; 52:10-53:8;  Ex. 1, Sawyer *Seidl* Rpt. at 5; *see also* White Decl., Ex. 4, Sawyer *Seidl* Dep. at 34:23-38:3 (admitting he has not analyzed Mr. Seidl's spraying equipment).  Thus, these miscellaneous

opinions are irrelevant for purposes of this case, and they cannot save Dr. Sawyer's unsupported and improper conclusions on specific causation.

### III.   The Court Should Exclude Dr. Sawyer's Opinions Regarding the George Study, Trace Chemicals, and Monsanto Company Documents and Regulatory Duties.

As discussed above, Plaintiff did not directly address in his Opposition in this case Monsanto's arguments with respect to Dr. Sawyer's opinions regarding the George Study, *see* Motion at 11-12; trace chemicals in Roundup, *see* Motion at 12-13; or Monsanto company documents and regulatory duties, *see* Motion at 13-14.  Instead, Plaintiff incorporated by reference previously filed oppositions in this litigation, which addressed these arguments. *See* Opposition at 9 (incorporating by reference ECF Nos. 8342 and 8692).  Monsanto briefly addresses the arguments raised in those previously filed oppositions here.  For the reasons discussed below, Dr. Sawyer should be precluded from offering any of these opinions in this case.

#### A.   The Court Should Exclude Dr. Sawyer's Opinions Regarding the George Study

Plaintiff does not dispute that due to multiple flaws in the George study's design (including that the study lacked a histopathological examination; involved a small number of animals, all of which were male, that were given a short duration of treatment; and failed to control for solvents), the study has been found by several national and international regulatory agencies—including EPA, IARC, and Germany's BAuA—to be an inadequate study for scientific analysis.  Nevertheless, Dr. Sawyer relies on that inadequate study to support his opinions that Roundup can cause or even promote cancer.  In making an assessment under *Daubert*, trial courts must look beyond the expert's testimony to ensure that the sources relied upon by the expert in reaching his opinions are reliable.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (affirming district court's exclusion of expert after finding expert's testimony to be "inherently unreliable and unsupported by the facts."); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.") (internal quotations omitted).  Because Dr. Sawyer's opinions regarding the George study run counter to the scientific analyses of that study, his opinion must be rejected as not scientifically reliable.

1          B.  <u>The Court Should Exclude Dr. Sawyer's Opinions Regarding Trace Chemicals</u>

2         Plaintiffs in past cases have claimed that it is "necessary" for Dr. Sawyer to consider the trace

3   chemicals in Roundup.  *See* ECF 8342 at 18; ECF 8692 at 14.  Yet those same plaintiffs have not

4   disputed that Dr. Sawyer did not calculate any doses of these chemicals to which any plaintiffs in the

5   MDL were allegedly exposed.  Nor have those plaintiffs pointed to any scientific evidence suggesting

6   that exposure to Roundup is a cancer risk *because of these trace chemicals*.  As discussed in more detail

7   in Monsanto's opening brief (and as demonstrated by Dr. Sawyer's testimony during the Pilliod trial),

8   the only purpose for this testimony is to distract, confuse, and provoke fear in the jury.  *See* Motion at

9   12-13.   Dr. Sawyer's unsupported comments on these trace chemicals are entirely speculative,

10  inappropriate, and inadmissible.  *See Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th

11  Cir. 2001) ("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized

12  knowledge, which does not include unsupported speculation and subjective beliefs."); *Chesebrough-*

13  *Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) (noting that it would be "well within

14  the discretion of the trial judge to exclude" expert opinions that would not be "of any real assistance to

15  the trier of fact.").

16         C.  <u>The Court Should Exclude Dr. Sawyer's Opinions on Monsanto Company</u>

17            <u>Documents and Regulatory Duties</u>

18        As discussed above, in the oppositions that Plaintiff incorporates by reference here, plaintiffs

19  in past Roundup cases have conceded that Dr. Sawyer will not "testify about the intent or state of mind

20  of Monsanto" and that Dr. Sawyer will not "be offering regulatory opinions or opine about labeling

21  requirements."  ECF 8342 at 19-20.  Those same plaintiffs claim, however, that Dr. Sawyer should be

22  permitted to discuss internal Monsanto Company documents, for which he has no personal knowledge,

23  "to provide proper context to corporate emails and memoranda."  *Id.* at 19.  This argument is unavailing.

24        Having an expert narrate company documents, under the guise of explaining terminology or

25  providing context, is improper expert testimony because it invades the province of the jury.  *See*

26  *Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29,

27  2014) ("The majority of this section of Dr. Slack's report is simply a narrative review of corporate

28  documents, which is not helpful to the jury."); *City of New York v. FedEx Ground Package Sys., Inc.*,

No. 13 Civ. 9173 (ER), 2018 WL 4961455, at *4 (S.D.N.Y. Oct. 10, 2018) (excluding expert opinion where expert "relied on the same types of evidence that a jury traditionally relies upon to answer the sort of questions that a jury traditionally answers."). Dr. Sawyer's toxicological expertise affords him no special skill in interpreting a Monsanto employee's use of scientific terms or studies, and there is no need for an expert to interpret Monsanto company documents that speak for themselves. Accordingly, the Court should preclude Dr. Sawyer from offering any opinions related to Monsanto company documents.

## CONCLUSION

For the reasons set forth above, the Court should grant Monsanto's Motion to Exclude Testimony of Dr. William Sawyer.

Dated:  October 25, 2021                    Respectfully submitted,

/s/ *Jed P. White*
Jed P. White
Attorneys for Defendant Monsanto Company

MONSANTO'S REPLY ISO MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Jed P. White
Jed P. White

MONSANTO'S REPLY ISO MOTION TO EXCLUDE TESTIMONY OF DR. WILLIAM SAWYER