**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M St. NW
10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH LLP**
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
1350 I St. NW
Washington, DC 20005
Tel:  202-898-5843
Fax: 202-682-1639

**COVINGTON & BURLING LLP**
Michael X. Imbroscio (*pro hac vice*)
(mimbroscio@cov.com)
One City Center
850 10th St. NW
Washington, DC 20001
Tel: 202-662-6000

**BRYAN CAVE LEIGHTON PAISNER LLP**
K. Lee Marshall (CA Bar No. 277092)
(klmarshall@bclplaw.com)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel:  415-675-3400
Fax: 415-675-3434

Jed P. White (CA Bar No. 2392339)
(jed.white@bclplaw.com)
120 Broadway, Suite 300
Santa Monica, CA 90401
Tel:  310-576-2100
Fax: 310-576-2200

*Attorneys for Defendant Monsanto Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION, | MDL No. 2741 |
| | Case No.: 3:16-md-02741-VC |
| *Randall Dean Seidl v. Monsanto Co.*, 3:17-cv-00519-VC | **DEFENDANT MONSANTO COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DR. BARRY BOYD ON RULE 702 GROUNDS** |
| | Hearing date: TBD<br>Time: TBD |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.   Dr. Boyd Failed To Properly Assess Potential Alternative Causes Of Mr. Seidl's NHL. .............................................................................................................................1

II.  Dr. Boyd Has Not Reliably Ruled Out Unknown Causes Of Mr. Seidl's NHL And Instead Always Points to Roundup. ....................................................................4

CONCLUSION .....................................................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) ............................................................................................ 1, 2

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ............................................................................................... 2, 4

Pretrial Order 85 ........................................................................................................... passim

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) .................................................................................................. 2

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................... 4, 5

# INTRODUCTION

Plaintiff Randall Seidl's Response Brief confirms that his specific causation expert Dr. Barry Boyd falls far short of the admissibility standard this Court established in Pretrial Order 85 ("PTO 85") (MDL ECF No. 2799). Contrary to what Plaintiff claims, Dr. Boyd has not followed the same methodology as the experts previously admitted in the initial federal trials. Even in those cases, the Court characterized the admissibility of the experts as a "close question." Yet despite the clear roadmap the Court provided in PTO 85, Plaintiff and Dr. Boyd have strayed far from the methodology the Court previously held "barely" admissible.

Critically, unlike the specific causation opinions the Court previously admitted, Dr. Boyd does not rule out or weigh other potential risk factors. Instead, for him, the only relevant question is whether Plaintiff was exposed to some threshold amount of Roundup®-branded products ("Roundup") and later developed non-Hodgkin's lymphoma ("NHL"). Dr. Boyd openly admits he could not rule certain alternative causes, including Mr. Seidl's age at the time he was diagnosed with NHL and his family's history of cancer (including a mother, grandmother, and uncle with cancer). Nor does Dr. Boyd have any means to address idiopathy—*i.e.*, "differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless," PTO 85 at 4—which the Court previously held is required for admissibility.

Plaintiff's Response Brief doubles down on Dr. Boyd's methodological flaws, insisting specific causation experts are not required to rule out alternative causes or account for idiopathy despite the Court's rulings and clearly-established law to the contrary. The methodology Dr. Boyd offers falls below the standard set by the Court's prior rulings. The Court should exclude his opinions.

# ARGUMENT

**I.     Dr. Boyd Failed To Properly Assess Potential Alternative Causes Of Mr. Seidl's NHL.**

In its Motion, Monsanto established that Mr. Seidl has at least two other known risk factors—his age and his family history of cancer—that Dr. Boyd lacks any principled reason to rule out. *See* Mot. at 2, 6. As a result, Dr. Boyd has not performed a reliable differential etiology/diagnosis, and he lacks a foundation to conclude that Roundup is the "most likely cause" of Mr. Seidl's NHL. *Id.* at 2-3 (quoting *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003)).

In response, Plaintiffs do not dispute that both age and a family history of cancer are associated with an elevated risk of NHL. *See* Mot. at 6 (citing Dr. Boyd's deposition concessions that Mr. Seidl's age and family history of cancer are NHL risk factors). Unable to do so, Plaintiffs makes various arguments about the applicable legal standard and the nature of Dr. Boyd's analysis. Plaintiff's arguments have no merit.

First, Plaintiff argues that Monsanto misstated the applicable legal standard by relying on out-of-circuit precedent. Resp. Br. at 2-3. Plaintiff claims "[i]t is sufficient for a qualified expert, in reliance on his clinical experience, review of a plaintiffs' medical records, and evaluation of the general causation evidence, to conclude that an 'obvious and known risk factor[]'is the cause of that plaintiff's disease." *Id.* at 2.[1] Plaintiffs' argument is misplaced and does not accurately summarize of the governing legal standard. The cases in the Ninth Circuit and elsewhere uniformly hold that a specific causation expert must have a reliable basis to conclude that the product at issue is the *most likely cause* of the plaintiff's illness, otherwise he or she lacks a basis to opine that the product was a substantial cause of the illness. *See* Mot. at 2-5 (citing numerous cases); *Clausen*, 339 F.3d at 1057 (in the second step of a differential etiology, an expert must "engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the *most likely cause* of the findings in that particular case) (emphasis added); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 966 (9th Cir. 2021) ("To establish specific causation, experts needed to show that [the plaintiff's] NHL was caused by glyphosate, *rather than some other factor*.") (emphasis added); *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017) (explaining that a differential diagnosis involves ruling out alternative causes "as to which there is no plausible evidence of causation, and then determin[ing] the *most likely cause* among those that cannot be excluded") (emphasis added).

To be sure, this Court did find the first round of specific causation experts had admissible opinions because they conducted a differential diagnosis/etiology in reliance on their "clinical

---

[1] Plaintiff attributes this quote to *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017), but the quote is not contained in *Wendell*. It is to PTO 85, which cited *Wendell* as supporting the statement. *See* PTO 85 at 5.

2

experience, review of plaintiffs' medical records, and evaluation of the general causation evidence." PTO 85 at 5. But the Court also made clear that experts had to "adequately assess[] all of the potential causes of the plaintiffs' NHL" and "properly rule[] out factors other than glyphosate, while at the same time declining to rule out glyphosate itself." *Id.* at 4 & 6. This Court concluded that the first round of experts met this standard because, among other reasons, the plaintiffs "had no other significant risk factors," *Id.* at 6.

The same reasoning does not apply to Dr. Boyd's analysis in this case. Unlike the first round of experts, Dr. Boyd did not purport to apply a differential diagnosis/etiology. *See* Mot. at 2 (citing White Decl., Ex. 1 Boyd (*Seidl*) Dep. at 77:15-78:13, 78:24-80:4). Nor did he purport to conduct a Bradford Hill assessment. White Decl., Ex. 1 Boyd (*Seidl*) Dep. at 89:4-6. Moreover, Dr. Boyd admitted he had no basis to rule out age or hereditary risk (Mr. Seidl's mother, uncle, and grandmother died of cancer) as the cause of Mr. Seidl's NHL. Mot. at 6 (citing White Decl., Ex. 1 Boyd (*Seidl*) Dep. at 80:8-16, 92:11-14). Thus, in stark contrast to the first round of experts, Dr. Boyd has no reliable methodology to conclude that Mr. Seidl's exposure to Roundup caused his NHL, rather than his other risk factors.

Plaintiff next argues that Dr. Boyd did analyze a host of other risk factors. *See* Resp. Br. at 2-3 (citing White Decl., Ex. 3, Boyd Report at 11-14). But Dr. Boyd did not have any basis to rule out at least two of those risk factors: age and hereditary risk. Dr. Boyd acknowledged that "[i]ncreased age is a risk factor for many lymphomas, with lymphoma most commonly occurring in people over the age of 60." White Decl., Ex. 3, Boyd Report at 11; *see also id* at 12-13 ("Based on his age and ethnic background [Mr. Seidl] had a very slight increase in risk of developing NHL."). Dr. Boyd further recognized that "NHL is more common in those with a first-degree relative with NHL." *Id.* Dr. Boyd, however, did not discuss in his report whether a family history of other cancers increases the risk of NHL, but he acknowledged in his deposition that it does. *See id*; White Decl., Ex. 1, Boyd (*Seidl*) Dep. at 84:6-14. Despite stating that age and first-degree relatives who had cancer is an NHL risk factor, Dr. Boyd provided no reason to rule out these risk factors for Plaintiff.

In sum, Plaintiff takes the position that any acknowledgment of a potential risk factor—no matter how casual or cursory—is sufficient to insulate their experts from scrutiny. That is not the

3

law, and is not consistent with this Court's rulings in PTO 85. The Court should reject Plaintiff's attempt to turn the Rule 702 analysis into a box-checking exercise devoid of serious scrutiny.

## II. Dr. Boyd Has Not Reliably Ruled Out Unknown Causes Of Mr. Seidl's NHL And Instead Always Points to Roundup.

Plaintiff does not meaningfully defend Dr. Boyd's failure to address the undisputed fact that the vast majority of NHL cases have no known cause. *See* Mot at 6-7. Plaintiff argues that Dr. Boyd did, in fact, consider idiopathy. Resp. Br. at 5 (citing Sutton Decl., Ex. 2, Boyd Dep. at 76:11-77:14). But Plaintiff concedes that Dr. Boyd's report ignored idiopathy altogether. Mot. at 11 (citing White Decl., Ex. 3, Boyd Report). And the deposition testimony Plaintiff quotes is silent about idiopathy and unknown causes. It just suggests that Dr. Boyd did not identify any other known causes. Sutton Decl., Ex. 2, Boyd Dep. at 76:11-77:14. Putting aside the fact that this is untrue (as demonstrated above), the testimony does not address the considerable possibility that Plaintiff's NHL has an unidentifiable cause. *Id.*

Plaintiff essentially argues that Dr. Boyd can automatically exclude idiopathy by determining that Plaintiff was exposed to Roundup. *See* Resp. Br. at 5 ("Dr. Boyd considered whether this cancer was idiopathic in nature. However, based on his evaluation of Mr. Seidl's exposure history, he ruled out idiopathy."). This is contrary to the Court's clear instruction in PTO 85 that "an expert *must* have a way to differentiate Roundup users who developed NHL because they used the product from Roundup users who would have developed NHL regardless." *See* PTO 85 at 4 (emphasis added). Contrary to the Court's directive in PTO 85, Dr. Boyd improperly concluded that the mere fact that a plaintiff was a Roundup user itself automatically excludes idiopathy. Dr. Boyd's reasoning would imply that there specific causation for all Roundup users who developed NHL, which cannot be the case as this Court already noted in PTO 85.

At the same time, Plaintiff cannot ignore idiopathy simply because the Court has previously found different opinions from different experts regarding different plaintiffs to be admissible. It is true that the Court concluded the Bellwether experts had "provided a basis for their conclusions that the [prior] plaintiffs f[e]ll into the category of Roundup users who developed NHL" because they used the product. PTO 85 at 6. Plaintiff apparently believes the Court's prior ruling means that the

issue of idiopathy is resolved for all future plaintiffs in this MDL, even if they offer different experts who have failed to address idiopathy entirely. That is not the case. *See Hardeman*, 997 F.3d at 976 ("Different Roundup cases may present different considerations, leading to different results. . . . much of this expert testimony was unique to Hardeman's specific case. Thus, it would not be unreasonable for the district court to revisit the admissibility of expert testimony based upon the facts raised in future cases."). Dr. Boyd has no means to address idiopathy, which is an additional reason why his opinions are unreliable and inadmissible.

## CONCLUSION

For the foregoing reasons, the Court should grant Monsanto's motion to exclude Plaintiff's specific causation expert Dr. Boyd on Rule 702 and *Daubert* grounds and grant summary judgment in Monsanto's favor because Plaintiff has failed to present at least one admissible expert opinion to support specific causation in each of their cases.

Dated:  October 25, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Jed P. White*
　　　　　　　　　　　　　　　　　　　　Jed P. White
　　　　　　　　　　　　　　　　　　　　Attorney for Defendant Monsanto Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of October, 2021, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

　　　　　　　　　　　　　　　　　　　　*/s/ Jed P. White*
　　　　　　　　　　　　　　　　　　　　Jed P. White